**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                  Debtors.[1] | PROMESA<br>Title III<br><br><br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                 Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' SUPPLEMENTAL RESPONSIVE**
**BRIEF REGARDING STANDING AND TIMING ISSUES IN**
**CONNECTION WITH OBJECTION TO PROOF OF CLAIM NUMBER 18449**
**FILED BY U.S. BANK NATIONAL ASSOCIATION, IN ITS CAPACITY AS**
**<u>TRUSTEE FOR NON-RECOURSE PREPA BONDS</u>**

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

I.     Committee Has Direct Standing to Bring Objection...................................................1

II.    If Necessary, Committee Should Be Granted Standing to Bring Objection ...............................4

III.   Government Parties May Not Use 9019 Motion to Moot Objection...........................................5

IV.   Committee Is Not Estopped From Asserting Its Timely Objection............................................8

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
    361 B.R. 337 (S.D.N.Y. 2007) ............................................................................................... 8

*In re C.P. Hall Co.*,
    513 B.R. 540 (Bankr. N.D. Ill. 2014) ..................................................................................... 6

*In re Catwil Corp.*,
    175 B.R. 362 (Bankr. E.D. Cal. 1994) .................................................................................... 5

*In re Chi. Invs., LLC*,
    470 B.R. 32 (Bankr. D. Mass. 2012) ...................................................................................... 4

*In re Cty. of Orange*,
    219 B.R. 543 (Bankr. C.D. Cal. 1997) .................................................................................... 3

*In re Dow Corning Corp.*,
    244 B.R. 721 (Bankr. E.D. Mich. 1999) ......................................................................... 2, 3, 4

*In re DVR, LLC*,
    582 B.R. 507 (Bankr. D. Colo. 2018) ............................................................................. 6, 7, 8

*Employees Retirement System v. Andalusian Global Designated*,
    Case No 19-1699 (1st Cir. Nov. 25, 2019) ........................................................................... 10

*Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*,
    No. 18-1334, 2019 WL 3408805 (U.S. July 25, 2019) ......................................................... 3

*In re First Capital Holdings Corp.*,
    146 B.R. 7 (Bankr. C.D. Cal. 1992) ....................................................................................... 5

*In re Heritage Org., L.L.C.*,
    375 B.R. 230 (Bankr. N.D. Tex. 2007) ................................................................................... 6

*In re Ludwig Honold Mfg. Co.*,
    30 B.R. 790 (Bankr. E.D. Pa. 1983) ....................................................................................... 4

*In re Mechanicsburg Fitness, Inc.*,
    592 B.R. 798 (Bankr. M.D. Pa. 2018) ................................................................................ 3, 6

*In re Nat'l Forge Co.*,
    326 B.R. 532 (W.D. Pa. 2005) ............................................................................................... 5

*In re Smart World Techs., LLC,*
    423 F.3d 166 (2d Cir. 2005) ................................................................................. 7

*In re Thompson,*
    965 F.2d 1136 (1st Cir. 1992) ...................................................................... 1, 2, 7, 8

*United States v. Fernandez-Jorge,*
    894 F.3d 36 (1st Cir. 2018) .................................................................................. 10

*In re Valley Health Sys.,*
    429 B.R. 692 (Bankr. C.D. Cal. 2010) .................................................................. 3

**Statutes**

11 U.S.C. 1107(a) ........................................................................................................ 3

11 U.S.C. § 101 ........................................................................................................... 3

To the Honorable United States District Court Judge Laura Taylor Swain:

1.     Pursuant to this Court's November 13, 2019 order (the "Order"),[2] the Committee

respectfully submits this supplemental responsive brief in response to the supplemental briefs filed by

the Government Parties[3] and the Responding Bondholder Parties (the "Bondholders").[4]  Their position

boils down to this: notwithstanding the plain language of sections 502(a) and (b) of the Bankruptcy

Code, a debtor may settle an objection to a claim brought by an official committee (or an individual

creditor),  even where the debtor has no statutory obligation to object to claims or otherwise protect the

interests of its creditors and has repeatedly disavowed any such obligation, willfully ignored the claims

asserted by the committee (and the individual creditors), and intentionally excluded the committee and

the affected creditors from any settlement negotiations regarding such claim.  As discussed below, no

authority exists for this position, as it runs contrary to the fundamental principles of the Bankruptcy

Code.  The Bondholders' position that the Objection is not timely is also without basis.

## I.     Committee Has Direct Standing to Bring Objection

2.     The Government Parties do not even attempt to dispute that the plain and unambiguous

language of section 502(a) grants the Committee, as a "party-in-interest," direct standing to file its

Objection.[5]  Instead, they argue that the Committee's standing should be restricted because the First

Circuit, in *In re Thompson,* limited standing to bring a claim objection to the chapter 7 trustee, and such

limitation is unrelated to either section 704 of the Bankruptcy Code or the trustee's fiduciary duties

imposed thereby.  The Government Parties further argue that the Committee has not fulfilled the First

---

[2]     *See* Docket No. 1734 in Case No. 17-4780.  Capitalized terms used but not otherwise defined herein shall have
the meanings given to them in the Order or in the Status Report (as defined in the Order).
[3]     *See* Docket No. 1769 in Case No. 17-4780 (the "GP Supp. Brief").
[4]     *See* Docket No. 1783 in Case No. 17-4780 (the "BH Supp. Brief").
[5]     The Bondholders do make such an argument, asserting that a "straightforward reading" of section 502(b)—
which says that a bankruptcy court "shall determine" a claim objection and then allow the claim in the
determined amount—does not preclude a court from allowing the claim pursuant to a settlement.  BH Suppl.
Brief, at 1.  This reading ignores (i) the plain meaning of the imperative "shall determine" and (ii) that a
settlement under Rule 9019 is, by definition, not a determination of the underlying merits.

Document    Page 6 of 15

Circuit's standing requirements, and "nor could it."  Each of these arguments lacks merit.

3.       The Government Parties have not, and cannot, cite a single case holding that section

502(a)'s direct grant of standing to parties in interest to bring a claim objection is somehow limited

even when there is no fiduciary, such as a chapter 7 or 11 trustee, who has a statutory duty to pursue

such an objection.  To the contrary, as explained in the Committee's initial brief, any good-faith reading

of *Thompson*, as well as the cases it relies on and those that come after it, makes clear that (in chapter 7

or chapter 11 in the First Circuit or any other circuit) any policy-based restriction on a party in interest's

standing to bring a claim objection is predicated on the existence of a fiduciary—specifically, one

charged by statute[6] to object to claims and protect the interests of **__all__** creditors—that can (and is willing

to) pursue the objection.

4.       That any judicially-created limitation on standing is predicated on the presence of a

statutory fiduciary was made explicit in one of the cases cited by the Government Parties, *In re Dow

Corning Corp.*, 244 B.R. 721, 750 (Bankr. E.D. Mich. 1999).  In that case, the court explained that the

"rule requiring that the trustee initially object to the allowance of a claim in ordinary bankruptcies is a

procedural rule evolved by the courts.  Since the trustee is the representative of the creditors, it is a rule

developed for the orderly administration of estates."  *In re Dow Corning Corp.*, 244 B.R. at 750

(internal citations omitted) (subsequent history omitted).[7]  The Government Parties' claim that the

---

[6]     Specifically, section 704 or 1106 and 1107 of the Bankruptcy Code.

[7]     The court further explained that some courts "have limited the right of a general creditor to object to the claim
of another creditor *in certain instances* in order to promote a more orderly administration of the estate, *i.e., in
cases where a trustee has been appointed to represent the interests of all general unsecured creditors*"
(emphasis added).  244 B.R. at 750.  Presumably because they are not the equivalent of a debtor-in-possession
or a chapter 7 or 11 trustee, the Government Parties ignore this explicit link between the policy of expeditious
administration and the trustee's role as a statutory fiduciary and characterize the absence from PROMESA of
section 704, and its codification of the trustee's fiduciary obligations, as a "red herring."  GP Suppl. Brief, ¶ 7.
While the Government Parties may find section 704 irrelevant, the cases they rely on clearly do not.  In addition
to *Dow Corning*, cited above, this link was explicitly part of *In re Thompson*'s holding, as the court cited to
section 704 and explained that "[a]s the chapter 7 trustee is charged with the fiduciary duty to administer the
chapter 7 estate expeditiously . . . the important policy favoring efficient bankruptcy administration normally
will warrant judicial recognition that the chapter 7 trustee, as the duly appointed or elected representative of *all*
unsecured creditors" should pursue claim objections.  *In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)

Oversight Board serves "the same role as a bankruptcy trustee," but this assertion is demonstrably

untrue.[8]  The issue is not whether the Oversight Board is tasked with "objecting to creditor claims," or

whether it has done so.[9]  Instead, the issue is whether it "represent[s] the interests of all general

unsecured creditors," *In re Dow Corning Corp.*, 244 B.R. at 750, and the Oversight Board indisputably

does not.[10]  To the contrary, as explained in the supplemental briefs filed by the Committee and by the

Fuel Line Lenders, the Government Parties have repeatedly disavowed any such obligation.[11]

5.      The Government Parties also argue that the Objection should be dismissed because, in

light of the Lien Challenge, there would be no useful purpose in allowing the Committee to continue

---

(emphasis in original).  Similarly, cases that restrict standing do so in reliance on "policy considerations
described in . . . a 1983 Advisory Committee Note to Federal Rule of Bankruptcy Procedure 3007 . . . as sources
of support for the decision to limit a creditor's right to object to a claim pursuant to section 502(a)."  *In re
Mechanicsburg Fitness, Inc.*, 592 B.R. 798, 809 (Bankr. M.D. Pa. 2018).  However, this advisory committee
note actually supports the Committee's position, as it also links the policy of expeditious administration to the
trustee's duty, under section 704 of the Bankruptcy Code, to object to claims.

[8]      GP Suppl. Brief, ¶ 7.

[9]      *Id.*  In fact, the Government Parties are **not** "tasked with" objecting to claims.  Because section 704 is not
incorporated into PROMESA, neither the Oversight Board nor AAFAF is **obligated** to object to claims.  That
that they have done so when it was consistent with their own parochial interests is irrelevant.  A debtor has
obvious motivations to object to claims.  But, as this case illustrates, a debtor's self-interested motivation to
object to certain claims is far different from an obligation to do so as the fiduciary for all of its creditors.

[10]     The Committee notes the incongruity of the Government Parties equating the Oversight Board's appointment
under PROMESA as "representative of the debtor" with a trustee's appointment under section 323 of the
Bankruptcy Code as "representative of the estate" and that the Oversight Board is, therefore, analogous to a
debtor in possession.  GP Suppl. Brief, at 5 n.13.  The Oversight Board has taken the exact opposite position in
prior pleadings, explaining as the "representative of the debtor," it "stands in the shoes of the debtor
government entity."  *Opening Brief for Petitioner the Financial Oversight and Management Board for Puerto
Rico* at *51, *Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*, No. 18-1334, 2019 WL 3408805 (U.S.
July 25, 2019).  A "debtor government entity," however, is **not** the equivalent of a debtor in possession; to the
contrary, "[u]nlike chapter 11, there is no concept of a debtor in possession in chapter 9."  *In re Valley Health
Sys.*, 429 B.R. 692, 714 (Bankr. C.D. Cal. 2010); *see also In re Cty. of Orange*, 219 B.R. 543, 557 (Bankr. C.D.
Cal. 1997) ("chapter 9 debtor does not assume the same fiduciary responsibilities that a trustee has under the
Code").  This is also consistent with the statutory scheme of the Bankruptcy Code, under which a debtor in
possession is defined term relevant only to chapter 11, see 11 U.S.C. § 101, and is expressly subject to the
statutory directive that it "shall perform all the functions and duties as a chapter 11 trustee."  *See* 11 U.S.C.
1107(a) (emphasis added).

[11]     The Government Parties also argue that their ability to pay creditors (such as the Bondholders) without Court
interference is further basis to restrict the Committee's standing.  GP Suppl. Brief, ¶ 7.  Just the opposite, this is
a further concession that the Government Parties do not consider themselves obligated to act in the best interests
of all of PREPA's creditors, leaving the Committee as the only entity ready and able to do so.  In any event, in
this case the Government Parties have sought Court approval of their proposed payments, and cannot avoid
Court supervision at this time.

with the Objection.[12]  Cases restricting standing where the debtor has already filed an objection provide

the Government Parties no support for two reasons.  First, the debtor in these cases had a statutory

fiduciary obligation to protect the interests of all unsecured creditors.  Second, in these cases the

debtor's objection addressed the same issues raised by the creditor or the official committee, as

applicable.[13]  Here, the Objection raises the non-recourse issue that the Government Parties have

chosen to ignore both in filing and settling the Lien Challenge, and thus is not duplicative of the Lien

Challenge.[14]

## II.     If Necessary, Committee Should Be Granted Standing to Bring Objection

6.     The Government Parties claim that the Committee made no demand on the Oversight

Board, did not ask leave of Court before filing the Objection, and "could not have obtained leave even

if it had asked for it."[15]  This argument is a red herring that should be rejected at the outset.  Application

of the caselaw of derivative standing to the Committee's Objection conflates two entirely distinct

scenarios, as no "demand" requirement or requirement for leave of Court exists for an official

committee under section 502.  In any event, even if such a requirement did apply to the Committee's

Objection, it has been satisfied here.

7.     As an initial matter, it is not appropriate for the Government Parties to complain they

did not receive a demand from the Committee to object to the bond claims on the grounds that they are

non-recourse.  In February of 2019 (almost six months prior to the filing of the Lien Challenge), the

Committee's counsel explained to the Oversight Board's counsel that the treatment provided to the

---

[12]   GP Suppl. Brief, ¶ 4.
[13]   *See Dow Corning Corp.*, 244 B.R. at 751 (noting that tort committee "filed its own objection to these same
       claims on the same basis"); *In re Chi. Invs., LLC*, 470 B.R. 32, 92 (Bankr. D. Mass. 2012) (creditor's objection
       was "almost entirely duplicative" of debtor's objection); *In re Ludwig Honold Mfg. Co.*, 30 B.R. 790, 792
       (Bankr. E.D. Pa. 1983) (creditor sought "identical relief" to relief sought by trustee).
[14]   Moreover, the Lien Challenge—which was filed after the RSA was signed—is, at best, a mere placeholder that
       was never intended to be prosecuted and whose sole purpose was to "occupy the field" in an attempt to block
       the Committee and other creditors from asserting their own, valid, objections.
[15]   GP Suppl. Brief, ¶ 5.

4

Bondholders under the RSA was especially troubling in light of the non-recourse nature of the bonds.

After the Lien Challenge was filed, at the July 11, 2019 status conference, the Committee again

explained that it was considering filing its own objection because the Lien Challenge did not address

the non-recourse issue.[16]

8.      In any event, the Court may, and should, grant standing even if the Committee did not

make a formal demand.  *See, e.g.*, *In re First Capital Holdings Corp.*, 146 B.R. 7, 12 (Bankr. C.D. Cal.

1992) (demand requirement "is excused, however, if the facts pleaded demonstrate that such a demand

would have been futile").[17]  There can be no greater proof of the futility of a demand than the facts of

this case: it is clear that the Oversight Board would not have included the non-recourse claim in the

Lien Challenge because it ***did not do so***, despite being on notice of the issue.  Similarly, the Oversight

Board failed to include even a passing reference to the non-recourse issue in its three separate briefs

filed in support of the 9019 Motion.[18]

### III.     Government Parties May Not Use 9019 Motion to Moot Objection

9.      The Government Parties rely entirely on a line of cases allowing a trustee or debtor-in-

---

[16]   July 11, 2019 Hr'g Tr. at 36:13-19.  A copy of this transcript is attached hereto as **Exhibit A**.

[17]   The Court may, and should, also grant the Committee standing (if necessary) retroactively.  *See In re Nat'l
Forge Co.*, 326 B.R. 532, 545-46 (W.D. Pa. 2005) (recognizing that the requirement for prior leave should not
be applied "formalistically" and that "[n]umerous federal courts have allowed retroactive grants of standing
under appropriate circumstances").  Courts that have required a prior hearing on a committee's request for
authority to bring a derivative claim have done so to give advance notice to the debtor and the potential
defendant of the committee's intent to bring the claims.  *In re Catwil Corp.*, 175 B.R. 362, 364-65 (Bankr. E.D.
Cal. 1994).  Here, however, there is no such concern, as the Committee publicly stated its intentions to file the
Objection at the July 11, 2019 status conference, separately informed the Oversight Board of the need to include
the non-recourse argument, and intervened in the Fuel Line Lenders' adversary proceeding, which raises the
same issues.  Further. retroactive standing is especially appropriate here, where the Committee did not seek
prior leave because it had (and continues to have) a good faith belief that it has direct standing under the plain
language of section 502(a) of the Bankruptcy Code and did not need to do so.

[18]   This also demonstrates the weakness of the Government Parties' claim that they are "still evaluating" a claim
based on the non-recourse nature of the Bondholders' claims. GP Suppl. Brief, at 5 n.10.  For one, the
Government Parties have had literally years to "evaluate" this issue.  Moreover, the absence of even a passing
reference to this claim in the three separate briefs in support of the 9019 Motion means that it was not even part
of the settlement calculus, which, in turn, means that the Government Parties' assertion that they are
"evaluating" the non-recourse claim can be true only if they have attributed literally no value to it.

possession to settle claim objections brought by another creditor.[19]  These cases, all of which are inconsistent with the plain statutory language of section 502, are not binding on this Court.  Moreover, these decisions should not even be seen as persuasive authority because they "are based not so much on an analysis of the Code as on the courts' own policy views."  *In re C.P. Hall Co.*, 513 B.R. 540, 544 (Bankr. N.D. Ill. 2014).[20]  More importantly, as explained in the Committee's supplemental brief, under PROMESA the Court need not choose among these competing authorities because the decisions permitting a trustee to settle creditors' objections have expressly relied on the fact that "the debtor, ***as a fiduciary under the Code***, ***has the duty to all creditors*** to resolve claims in the best interest of the estate."  *In re Heritage Org., L.L.C.*, 375 B.R. 230, 285 (Bankr. N.D. Tex. 2007) (quoting *In re Kaiser Aluminum*, 339 B.R. 91, 94-95 (D. Del. 2006)) (emphasis added).  In other words, the cases that have allowed a debtor or trustee to settle a claim objection without the objecting party's consent have followed the same reasoning as those cases, discussed above, holding that only a trustee has standing to pursue the objection in the first instance.

10.     This is best illustrated by *In re DVR*, the most thoroughly reasoned of the cases relied on by the Government Parties.  In that case, the court explained that to determine whether the "estate's representative may usurp the claim objection process with a settlement"[21] requires consideration of the "Bankruptcy Code as a whole and the role it has assigned to the trustee or DIP."  *In re DVR, LLC*, 582 B.R. 507, 514 (Bankr. D. Colo. 2018).  The court proceeded to explain that a trustee has two primary overarching duties: to "maximize the value of the estate" and to "foster the equitable distribution of the

---

[19]     *In re Futterman*, *In re Kaiser Aluminum Corp.*, *In re Heritage Org. LLC*, and *In re DVR, LLC*.

[20]     *See also In re Mechanicsburg Fitness, Inc.*, 592 B.R. 798, 808 (Bankr. M.D. Pa. 2018) (holding that chapter 7 trustee failed to satisfy "exceptionally heavy" burden of convincing court to rule contrary to plain and unambiguous statutory language where "Trustee does not rely upon the language of 502(a) to carry his burden [and i]nstead, the Trustee relies upon 'the way this section has been interpreted by the case law' to support his position").

[21]     The Committee notes that the *DVR* court explained that while it understands the "real problems that can arise [with] estate administration" that have moved some courts to limit standing notwithstanding the plain language of section 502(a), the "Court does not believe that this approach is supported by the Code, which expressly grants broad standing."  *In re DVR*, 582 B.R. at 518.

debtor's assets amongst his creditors." *Id.* at 515. To allow, and ensure, that the trustee fulfills these

goals, the Bankruptcy Code gives the trustee certain powers and duties, including that a trustee "must"

object to proofs of claim under section 704 of the Bankruptcy Code. *Id.* Ultimately "[u]nderlying

these statutory duties and powers are the fiduciary duties owed by a trustee to beneficiaries of the

bankruptcy estate." *Id.* at 516.

11.     The court then applied its extensive analysis of the fundamental nature of a trustee's

obligations to the possibility of allowing a trustee to use Rule 9019 to usurp an objection brought by a

party in interest, concluding that the power to settle "***must be reserved for the person who has the duty***

***of administering the entire estate in such a way as to maximize the recovery of all creditors***." *Id.* at

518 (emphasis added).[22]   Additionally, because it makes clear that allowing the trustee to settle all

claim objections would actually "usurp" the rights of parties in interest, *DVR* also rebuts the opposite

contention of the Government Parties that the Committee is seeking to "displace" the Oversight

Board's role.[23]

12.     The Government Parties' argument that the Committee is not entitled to prosecute the

Objection because the Committee is not asserting its own lien rights suffers from the same flaws.[24]   An

individual creditor's assertion of lien rights is only one example of a circumstance in which the trustee

is incapable of protecting (or has decided not to protect) the interests of all creditors. Just because this

---

[22]   The Committee notes that just as *Thompson* and the 1983 committee advisory note explicitly cite to the trustee's
role as a statutory fiduciary under section 704 in the context of standing, in the context of settling creditor
claims *DVR* cites repeatedly to section 704, as well as its chapter 11 analogs, sections 1106 and 1107.

[23]   This also explains why the Second Circuit's ruling in *Smart World*, cited by the Government Parties, is
irrelevant. The Second Circuit held that an official committee could not utilize section 1109(b) of the
Bankruptcy Code to "take ownership" of a cause of action belonging to the estate. *In re Smart World Techs.,
LLC*, 423 F.3d 166, 182 (2d Cir. 2005). The court also relied on the debtor's fiduciary obligation—imposed by
sections 704 and 1106—to pursue its legal claims "in a way that maximizes the estate's value." *Id.* at 175. In
other words, a committee may not take control of a debtor's claims (i.e., causes of action under the Bankruptcy
Code's avoidance powers) where that debtor is acting in a manner consistent with the fiduciary obligations
imposed on it by the Bankruptcy Code. Applied here, this same reasoning means that the Government Parties
cannot be permitted to take ownership of (i.e. usurp) the Committee's statutory rights (i.e., the absolute right to
bring a claim objection under section 502), especially when they are not (and have declined to act as) a
fiduciary for all of PREPA's creditors.

[24]   GP Suppl. Brief, ¶¶ 13-14.

distinction (*i.e.*, when a trustee can and cannot represent the interests of all creditors or classes) comes up "most often" when an objecting creditor is asserting lien (or priority) rights, it can come up in other circumstances as well.  *See In re DVR*, 582 B.R. at 513 (explaining that even though "a trustee acts on behalf of all creditors generally, the trustee cannot always adequately represent [all creditors]", and that "[t]his distinction comes *most often* in the context of competing secured claims") (emphasis added). The key question is not the nature of the claim objection, but rather only whether the trustee or debtor is protecting the creditor (or class of creditors) asserting the objection.

13.     Here, because it is based in large part on a critical issue (the non-recourse issue) that the Government Parties unjustifiably failed to include in the Lien Challenge, it would make no sense to allow the Government Parties to settle the Objection without the Committee's consent.[25]

## IV.     Committee Is Not Estopped From Asserting Its Timely Objection

14.     The Bondholders assert that the Committee should be estopped from pursuing its Objection because of the Committee's purported "prejudicial delay" in its filing.[26]  Yet, they cite no case law or other legal authority in support of such a drastic argument, and nor could they.  To the contrary, the First Circuit has explicitly held that "an objection to a proof of claim may be filed *at any time*."  *In re Thompson*, 965 F.2d 1136, 1147 (1st Cir. 1992) (emphasis added).  The Committee, therefore, had no obligation to file its Objection earlier than it did, regardless of the Bondholders' belief of what the Committee "could have" done.[27]

15.     Additionally, the Bondholders' core argument—that the Committee "sprung" the Objection on the Government Parties and the Bondholders—is false.  The Bondholders (and all other parties in interest) have been on notice of the non-recourse issue since at least July 11, 2019, when the

---

[25]   *See In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 355 (S.D.N.Y. 2007) (where noteholders' committee had been granted standing "it is beyond cavil that this includes the authority to settle those disputes" such that even if the committee's consent to settlement was not sufficient basis for approval it "*certainly was necessary*") (emphasis added).

[26]   BH Suppl. Brief, at 2.

[27]   *Id.*

Committee advised the Court that it was considering filing the Objection to raise the non-recourse issue

ignored by the Oversight Board's Lien Challenge.[28]  Thus, that the Committee waited until after

receiving relevant discovery in connection with the 9019 Motion to ultimately file the Objection did not

prejudice the Bondholders.[29]  Indeed, the Committee's conduct in this regard was entirely reasonable.

16.     Nor have the Bondholders been prejudiced by the Committee's filing of the Objection

on October 30.  The Bondholders attempt to manufacture prejudice where there is none by contending

that detailed discovery is necessary for the Objection and that such discovery could have been obtained

over the last several months, had the Objection been filed earlier.  This argument is a red herring.  As

an initial matter, the Objection asks the Court to find that the Bondholders' claims are limited to the

value of certain accounts—whether that is true is a pure legal matter, and the value of those accounts is

easily resolved by a printout of account statements.  There is simply no need for the "substantial

discovery" the Bondholders allege they need.[30]  Further, any discovery that would be necessary to

---

[28]    July 11, 2019 Hr'g Tr. at 36:13-19.  Nor did any party—be it the Government Parties or the Bondholders—
assert at that hearing that the Committee would, or should, be obligated to file their Objection by a date certain.
At that hearing, there was also extended discussion of the distinction between the causes of action asserted in
the Lien Challenge and section "502 of the Bankruptcy Code, [which] on its face allows any party in interest to
bring a claim objection."  July 11, 2019 Hr'g Tr. at 44:13-15.  Indeed, precisely because of this issue, the
Committee and the Fuel Line Lenders made certain that the stipulation the Court approved making the
Oversight Board and AAFAF joint plaintiffs to bring the Lien Challenge was explicit that it "has no bearing" on
creditor challenges under section 502 of the Bankruptcy Code.  *Stipulation & Agreed Order by and Among the
Oversight Bd. & AAFAF Related to Joint Prosecution of Lien Challenge*, ¶ 7 [Docket No. 1405 in Case No. 17-
4780].  As the Court will recall, this stipulation was approved over the Committee's objection, which argued
that it (and not AAFAF) should be the joint-plaintiff.  Accordingly, the Government Parties' references to the
Committee's assertions that it would not pursue the lien challenge prior to the 9019 Motion misrepresent the
record.  GP Suppl. Brief.  For one, those assertions were in the context of the Committee's request to bring the
Lien Challenge—which would have made it a party to the litigation and therefore to the negotiations of its
settlement.  Moreover, all parties were clear that the claims the Committee would have brought had it been
appointed as trustee under section 926, but agreed not to prosecute until after the 9019 Motion, were entirely
separate from the claims based on section 502 of the Bankruptcy Code and asserted in the Objection.
[29]    In fact, through this discovery the Committee was able to learn that the accounts at issue in the Objection
contained significantly less cash than originally believed.  Moreover, the Committee continues to receive and
review information relating to the bank accounts at issue in the Objection and, in fact, received a declaration
from U.S. Bank relating to the accounts on November 26, 2019.
[30]    For example, questions regarding whether funds in other accounts are traceable proceeds become relevant only
if the Bondholders' lien extends to post-petition revenues not deposited in accounts subject to the Bondholders'
liens.  This is a purely legal issue and, for the reasons recently, and very clearly, set forth by the Oversight
Board's brief before the First Circuit in connection with ERS, unlikely to be decided in the Bondholders' favor.
*See* Sur-Reply Brief for Plaintiff-Appellee, *Employees Retirement System v. Andalusian Global Designated*,

resolve the issues regarding the non-recourse nature of the Bondholders' claims and the value of their

collateral would be narrow, and certainly not broader than the discovery that has already occurred in

connection with the 9019 Motion.  In any event, the Bondholders do not explain why they did not (or

could not have) sought this allegedly necessary discovery over the past several months in connection

with the Lien Challenge or the complaint of the Fuel Line Lenders, both of which raise similar

arguments and have been on file since July 2019.  Nor do they offer any explanation for why—even

though the Committee's March 27, 2019 objection to the Receivership Motion[31] raises the same non-

recourse issues set forth in the Objection—they did not (or could not have) sought this discovery as part

of the extensive discovery that was done in connection with the Receivership Motion.

17.     The fact is, both the Bondholders and the Government Parties were aware of the

Committee's objection to the Receivership Motion, the Fuel Line Lenders' complaint, the Committee's

intention to potentially file its own Objection, and the carve-out for such challenges in the stipulation

regarding prosecution of the Lien Challenge could not be more clear.[32]  The Bondholders and the

Government Parties nevertheless decided to press on with their settlement and simply ignore the non-

recourse issue and the rights of other parties in interest to object to claims under section 502(a) of the

Bankruptcy Code.[33]  They cannot now feign ignorance of these rights as a means to create a *de facto*

statute of limitations for bringing claims objections.

---

Case No 19-1699 (1st Cir. Nov. 25, 2019).  Other aspects of the Bondholders' laundry list of discovery are
unrelated to the non-recourse issue.  For example, PREPA's failure to comply with various provisions of the
Trust Agreement and the Bondholders' damages caused by breaches of the agreement have no bearing on the
non-recourse nature of the bonds purchased by the Bondholders.

[31]   As defined in the 9019 Motion.

[32]   Additionally, because the 502(a) and (b) issues have been raised and briefed by the Fuel Line Lenders and the
Government Parties any "delay" in the Committee's filing of the Objection is not a basis for dismissal.  *See
United States v. Fernandez-Jorge*, 894 F.3d 36, 54 n.16 (1st Cir. 2018) (explaining that it is inequitable to apply
a waiver doctrine to a party that did not raise a given issue or argument when that same issue was raised by
other parties in the case).

[33]   The Committee notes that the Fuel Line Lenders' complaint specifically explained that it was brought to
vindicate the Fuel Line Lenders' legal rights "as parties in interest entitled to seek relief under section[s] 502(a)
and 506(a) of the Bankruptcy Code"—the exact same statutory rights at issue now.

Dated:   December 4, 2019

PAUL HASTINGS LLP

By:  _/s/ Luc A. Despins_

Luc. A. Despins, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors*

By:  _/s/ Juan J. Casillas Ayala_

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR
218312)
Israel Fernández Rodríguez, Esq. (USDC - PR
225004)
Juan C. Nieves González, Esq. (USDC - PR
231707)
Cristina B. Fernández Niggemann, Esq. (USDC
- PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of
Unsecured Creditors*