# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>**Re: ECF Nos. 1691, 1731, 1734, 1767, 1769, 1782, 1784.**<br><br>Case No. 17-BK-4780-LTS<br><br>**This Pleading relates only to PREPA, and shall be filed in the lead Case No. 17-BK-3283-LTS, and PREPA's Title III case (Case No. 17-BK-4780-LTS)** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO, as
representative of PUERTO RICO ELECTRIC POWER
AUTHORITY, and PUERTO RICO FISCAL
AGENCY AND FINANCIAL ADVISORY
AUTHORITY,

      Movants,

v.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, *et al.*,

      Respondents.

**SUPPLEMENTAL REPLY BRIEF OF GOVERNMENT PARTIES
IN CONNECTION WITH OBJECTION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO PROOF OF CLAIM NUMBER 18449 FILED BY U.S.
BANK N.A., IN ITS CAPACITY AS TRUSTEE FOR NON-RECOURSE PREPA BONDS**

ii

## **TABLE OF CONTENTS**

**Page**

REPLY ................................................................................................................................1

    I.      The Committee Lacks Standing to Object to the Master Bond Claim ................... 2

    II.     The Court Should Not Hear the Committee Objection Before the 9019 Motion ... 6

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*APS Tech., Inc. v. Brant Oilfield Mgmt. & Sales, Inc.*,
 2014 WL 12539360 (S.D.N.Y. 2014) ................................................................................... 6

*Clinton v. Jones*,
 520 U.S. 681 (1997) .............................................................................................................. 6

*Hamon v. DVR, LLC (In re DVR, LLC)*,
 606 B.R. 80 (D. Colo. 2019) ................................................................................................. 8

*In re Briggs Transp. Co.*,
 780 F.2d 1339 (8th Cir. 1985) .............................................................................................. 6

*In re C.P. Hall Co.*,
 513 B.R. 540 (Bankr. N.D. Ill. 2014) ................................................................................... 9

*In re Chi. Invs., Inc.*,
 470 B.R. 32 (Bankr. D. Mass. 2012) ................................................................................ 4, 6

*In re City of Stockton*,
 486 B.R. 194 ......................................................................................................................... 5

*In re CS Mining, LLC*,
 574 B.R. 259 (Bankr. D. Utah 2017) .................................................................................... 9

*In re Dow Corning Corp.*,
 244 B.R. 721 (Bankr. E.D. Mich. 1999) ............................................................................... 4

*In re DVR, LLC*,
 582 B.R. 507 (Bankr. D. Colo. 2018) ........................................................................... 3, 8, 9

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
 872 F.3d 57 (1st Cir. 2017) ................................................................................................... 6

*In re Futterman*,
 2019 Bankr. LEXIS 1872 (Bankr. S.D.N.Y. Jun. 20, 2019) ............................................. 3, 8

*In re Heritage Org., LLC*,
 375 B.R. 230 (Bankr N.D. Tex. 2007) .............................................................................. 8, 9

*In re Richmond Unified Sch. Dist.*,
 133 B.R. 221 (Bankr. N.D. Cal. 1991) ................................................................................. 5

*In re Simon*,
    179 B.R. 1 (Bankr. D. Mass. 1995) ................................................................................5

*In re Thompson*,
    965 F.2d at 1147 ..................................................................................................... passim

*In re Trusted Net Media Holdings, LLC*,
    334 B.R. 470 (Bankr. N.D. Ga. 2005) ...........................................................................4

*Law Debenture Tr. Comp. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*,
    339 B.R. 91 (D. Del. 2006) ..........................................................................................8, 9

*Prin Corp. v. Altman (In re Altman)*,
    265 B.R. 652 (Bankr. D. Conn. 2001) ...........................................................................8

**STATUTES**

11 U.S.C. § 323 ........................................................................................................................1

11 U.S.C. § 363 ........................................................................................................................5

11 U.S.C. § 502 ................................................................................................................3, 8, 9

11 U.S.C. § 502(a) ............................................................................................................3, 6, 8

11 U.S.C. § 502(b) .........................................................................................................2, 7, 8, 9

11 U.S.C. § 704 .................................................................................................................1, 4, 5

11 U.S.C. § 704(a)(5) ...............................................................................................................2

11 U.S.C. § 904 ........................................................................................................................5

11 U.S.C. § 1109(b) .................................................................................................................6

PROMESA § 303 ..................................................................................................................2, 5

PROMESA § 305 ...............................................................................................................1, 2, 5

PROMESA § 315 .....................................................................................................................5

PROMESA § 315(b) ............................................................................................................1, 10

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 3007 ............................................................................................................5

Fed. R. Bankr. P. 9019 ....................................................................................................5, 8, 9

To The Honorable United States District Court Judge Laura Taylor Swain:

The Government Parties[1] respectfully submit this reply brief and aver as follows in response to the Committee's supplemental brief [ECF No. 1767] ("UCC Supp. Brief"):[2]

**REPLY**

1. The Committee's arguments should be rejected. First, they fail to pass the common sense test: the two parties to the bondholders' claim against PREPA are the bondholders and PREPA, and they have proposed to settle it. The notion any third party can force litigation of the claim on its merits before the Court considers the settlement contravenes the parties' rights, the Court's power over settlements, and the entire purpose of settling, which is to avoid merits litigation. Second, the Committee's attempt to avoid consistent First Circuit jurisprudence limiting standing to prosecute claim objections is unconvincing. The First Circuit case law relies, first and foremost, on the need for an efficient administration of the restructuring case. It should be applied even more vigorously here, given the debtor's freedom to enter settlements and pay claims without court interference under PROMESA section 305. Third, the Committee is wrong its claim

---

[1] All capitalized terms used but not defined herein shall have the meaning given them in the *Supplemental Brief of Government Parties*, Case No. 17-BK-4780-LTS, ECF No. 1769 (the "Government Parties' Supplemental Brief").

[2] The Fuel Line Lenders [ECF No. 1782] and, jointly, SREAEE and UTIER [ECF No. 1784] submitted supplemental briefs. To the extent they assert they hold particularized claims different to the Committee's (ECF No. 1782 at ¶¶ 8-10; ECF No. 1784 at ¶ 3) the Government Parties will respond to their (erroneous) assertions in connection with the 9019 Motion and the motions to dismiss their adversary proceeding complaints. In summary, however, neither the Fuel Line Lenders nor UTIER and SREAEE have particularized claims that either grant them standing or are relevant to the RSA: the lien challenge and nonrecourse arguments contained in their adversary proceedings are general to all parties-in-interest (as indicated by the Committee's and the Oversight Board's materially identical objections) and their priority claims, even if particularized, are not affected by the RSA, which does not affect their claims to priority nor does it otherwise settle their rights, including any turnover rights the Fuel Line Lenders or UTIER/SREAEE may have against the bondholders. To the extent the Fuel Line Lenders' brief argues that the First Circuit's standing rules are dependent on a trustee owing fiduciary duties to creditors (at ¶¶ 5-6), it is duplicative of the Committee's supplemental brief and should be stricken from the record. Regardless, it is wrong for the reasons stated herein and in the Government Parties' Supplemental Brief—the First Circuit case law on standing is not dependent on the trustee owing duties to creditors or on Bankruptcy Code section 704, and, in any event, the Oversight Board is "representative of the debtor" under PROMESA section 315(b), a role materially identical to a chapter 7 trustee's. *Compare* 11 U.S.C. § 323.

objection must be heard before the 9019 Motion. Nothing in section 502(b) or relevant case law requires the Court to adjudicate a claim objection filed **five months after** a settlement motion before hearing the settlement motion. Even if the Committee Objection had been filed first, the settlement would be heard first, as settlements are strongly favored in bankruptcy and settlements arrived at during a trial take precedence over the merits litigation. The Committee's position goes against the vast majority of jurisprudence and would allow the Title III case to be held hostage to an improper committee "veto" power. The Committee's position is just not the law.

### I. The Committee Lacks Standing to Object to the Master Bond Claim

2. As detailed in the Government Parties' Supplemental Brief, First Circuit law is clear that without leave of the Court creditors cannot interpose claim objections—only the trustee or debtor in possession can.[3] Instead of trying to meet the First Circuit's requirements, however, the Committee argues that case law does not apply here because the Government Parties do not owe fiduciary duties to creditors and Bankruptcy Code section 704(a)(5) is not incorporated into PROMESA. UCC. Supp. Brief at ¶¶ 3-11. Neither argument has merit.

3. Contrary to the Committee's contentions (at ¶¶ 5-8), the First Circuit standing restrictions do not hinge on fiduciary duties but, foremost, on the need for efficient administration. *In re Thompson* involved two issues: (i) whether an unsecured claimholder and debtor could appeal an order approving the trustee's settlement (the court held they could not), 965 F.2d 1136, 1140-46, and (ii) whether the claimholder and debtor had standing to interpose claim objections in the first place (the court held they did not). *Id.* at 1147. The Committee, however, ignores the fact two **different** issues were discussed in *Thompson*, and misleadingly quotes statements the First

---

[3] *See* Gov't Parties Supp. Brief, ¶¶ 2-7.

2

Circuit made in its discussion of the first issue as if they were dispositive of or relevant to the second—they are not.[4] In connection with the second issue—standing to bring a claim objection—the First Circuit made clear the need for an orderly administration of the estate was the predominant consideration. Specifically, the First Circuit quoted section 502(a) and then stated "**the needs of orderly and expeditious administration do not permit** the full and unfettered exercise of [a creditor's] right to object to the allowance of another creditor's claim." 965 F.2d at 1147 (internal quotes and cites omitted) (emphasis added). While the First Circuit then noted the trustee acts as "spokesman for all the creditors," *id.*, the need for a restriction on standing—and the need to view the trustee as the entity responsible to bring claim objections—was rooted in the "needs of orderly and expeditious administration."[5] Indeed, the First Circuit did not even mention fiduciary duties in connection with this issue. Similarly, section 704 is only mentioned by the First Circuit once

---

[4] *See* UCC Supp. Brief at ¶ 5 (quoting and citing to 965 F.2d at 1145 (discussing the deference that should be shown to chapter 7 trustee's decision to settle claims, **not** discussing standing to bring claims objections)); *id.* at ¶ 6 (quoting 965 F.2d at 1145 (same)). The issue of appellate standing is not before the Court. The Committee also cites a number of out-of-circuit cases from jurisdictions that do not apply *In re Thompson*. *See* UCC Supp. Brief, ¶ 3, n. 5. These do not reflect the law of the First Circuit, nor do they properly weigh the needs of an orderly administration of the estate. The Committee's attempt to rely on them should be rejected. Moreover, two of the cases cited demonstrate why the Committee must lose either on standing or on the argument that its claim objection must be heard before the 9019 Motion, as these cases only accorded standing to object to claims on the condition that the trustee be permitted to settle those objections without a hearing on the claim objections' merits. *See In re DVR, LLC*, 582 B.R. 507, 521 (Bankr. D. Colo. 2018) ("Rather than restricting standing, a better safeguard against unnecessary claims litigation is found in recognizing the role of the trustee to settle claim objections initiated by a creditor."); *In re Futterman*, 2019 Bankr. LEXIS 1872, *13-14 (Bankr. S.D.N.Y. Jun. 20, 2019) ("the fact that Mr. Futterman was allowed to raise an objection to the RWN deficiency claim does not mean that Mr. Futterman himself has the right to veto a settlement, or to insist on continuing a litigation that would have the effect of vetoing the Trustee's settlement, or that, by virtue of his objection, Mr. Futterman now personally owns the right to control the disposition of the deficiency claim").

[5] Similarly, the First Circuit's summary of one of the cases it relied on stated: "although a creditor is a 'party in interest' under section 502, 'needs of efficient administration' require that [the] trustee control." *Id.* (citing *In re Fox*, 64 Bankr. 148, 151 (Bankr. N.D. Ohio 1986)). This again demonstrates the First Circuit's concerns related to efficiency. The Committee argues that the cases cited by *In re Thompson* all hinge on the trustee's fiduciary duties (at ¶ 7, n.7), not the "orderly administration of the estate." Even if correct (it is not), it could not change the fact the First Circuit itself relied predominantly on the need to ensure the orderly administration of the estate. Moreover, the Committee misrepresents the holdings of the cases cited—most notably, the First Circuit itself did not mention fiduciary duties once in its treatment (in a string cite) of these cases, but does highlight the "needs of efficient administration." *See In re Thompson*, 965 F.2d at 1147 (citing cases and noting *In re Fox*, 64 Bankr. at 151 restricted standing for the 'needs of efficient administration'").

3

as part of a string cite—it defies belief to argue the First Circuit's opinion hinged on it.[6]

4. First Circuit jurisprudence applying *Thompson* underscores that orderly administration of the estate is the paramount concern in restricting standing.[7] Specifically, in *In re Chi. Invs., Inc.*, 470 B.R. 32, 92 (Bankr. D. Mass. 2012), the court quoted *In re Dow Corning Corp.*, 244 B.R. 721, 751 (Bankr. E.D. Mich. 1999), stating that:

> once the Chapter 11 debtor-in-possession filed an objection to the creditor's claim, no useful purpose would be served in allowing [another creditor] to pursue its own objections to these claims. Conversely, allowing such a course of action would waste judicial resources and delay administration of the bankruptcy estate to its and its creditors' detriment with no corresponding benefit to the estate. This would undermine the articulated policy concern of an orderly and efficacious administration of the bankruptcy estate.
>
> **These concerns echo those raised by the First Circuit [in *In re Thompson*] in the context of chapter 7.**

*In re Chi. Invs.*, LLC, 470 B.R. at 92 (emphasis added).[8] The Bankruptcy Court of Massachusetts then ruled that a creditor lacked standing to object to a claim the debtor sought to settle, because

---

[6] *See also* Gov't Parties' Supplemental Brief at ¶ 7.

[7] The Committee argues that cases discussing *In re Thompson* have emphasized fiduciary duties (at ¶ 7, n.8), but only cites two out-of-circuit bankruptcy court decisions. As discussed in the main text, this is certainly not true of the First Circuit case law. Moreover and notably, *In re DVR, LLC* did not follow *In re Thompson* on standing but, as discussed below, does contradict the Committee's position that its claim objection must be heard before the 9019 Motion. Similarly, *In re Trusted Net Media Holdings, LLC*, 334 B.R. 470, 476-77 (Bankr. N.D. Ga. 2005), also cited by the Committee, does not mention fiduciary duties in its discussion of *In re Thompson*. Finally, the Committee's contention that court restrictions on standing for "avoidance actions" are based solely on fiduciary duties (at ¶ 7, n. 8), ignores the fact this Court has already held the Committee lacks standing to bring avoidance actions in this Title III case. *See, e.g.,* Case No. 17-BK-3283-LTS, ECF No. 7750 (denying Committee's motion to bring avoidance actions on behalf of PREPA). Notably, the Court denied the Committee standing because the Oversight Board and AAFAF committed to filing their own avoidance action and claim objection, and in fact, did file such (the Lien Challenge).

[8] The Committee argues *In re Chi. Invs., LLC*, 470 B.R. 32, 91 (Bankr. D. Mass. 2012) is distinguishable because there the creditors were receiving, under the debtor's reorganization plan, full payment. UCC Supp. Brief at ¶ 11 n. 14. But this is a red herring—*In re Chi. Invs., LLC* involved a settlement contained in a plan, and the court was therefore able to add an additional reason based on the unsecured claimholders' recoveries as to why the claim objection should be dismissed, in addition to the court's main reason—the need for an orderly administration of the estate. Here, unsecured claimholders' recovery is not relevant, as the 9019 Motion does not affect the unsecured claimholders' claims—it only settles and approves a reduction in the asserted claims of the Supporting Holders. Moreover, the Committee ignores the fact *In re Chi. Invs., LLC*, also relied on *In re Dow Corning Corp.*, which applied the *In re Thompson* rule to a chapter 11 case that did not have a surplus.

4

the objection "is procedurally improper as it seeks to undermine the value of that settlement." This application of *In re Thompson* did not hinge on fiduciary duties or section 704.

5. Similarly, *In re Simon*, 179 B.R. 1, 7 (Bankr. D. Mass. 1995), stated that the restriction placed on standing by the First Circuit "**upholds the policy of maintaining the orderly administration of the estate**." *Id.* at 7.[9] Again, contrary to the Committee's contentions, concerns relating to the "orderly administration of the estate" are the true basis for the First Circuit's standing rules, and apply with full force here. The Committee's attempt to obfuscate the issue by cherry-picking quotations and using them out of context should be rejected.

6. Indeed, the First Circuit's requirements should be applied even more vigorously here. Like chapter 9, PROMESA guards the debtor's sovereignty (*see* PROMESA §§ 303, 305). The Committee's position defies this Congressionally-protected sovereignty by forcing litigation of claims the debtor desires to settle. The combined effect of PROMESA sections 303 and 305 and the absence of Bankruptcy Code section 363 means a Title III debtor does not need court approval to settle or pay claims, or otherwise dispose of property.[10] "[U]nlike the other chapters, chapter 9 does not attempt to balance the rights of the debtor and its creditors, but rather, to meet the special needs of a municipal debtor." *In re Richmond Unified School Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991). The Oversight Board is thus given very significant autonomy to control

---

[9] *In re Simon* also quoted the Editor's Comment to Bankruptcy Rule 3007: "The Editors' Comment to Bankruptcy Rule 3007 astutely recognizes that "**if every creditor were entitled to challenge the claim of another creditor filed in a particular case, an orderly administration could degrade to chaos**.' Fed. R. Bankr. P. 3007." *Id.* at 7 (emphasis added) (citing NORTON BANKRUPTCY CODE PAMPHLET 1994-95 ed., Editors' Comment).

[10] *In re City of Stockton*, 486 B.R. 194, 195 ("11 U.S.C. § 904 gives a chapter 9 debtor freedom to decide whether to ignore or to follow the Rule 9019 compromise-approval procedure . . . ."); Case No. 17-BK-3283-LTS, ECF No. 3941 (PROMESA Title III "does not expressly prohibit the Title III Debtor from entering into negotiated resolutions of disputes over property rights or otherwise taking actions to dispose of its property . . . It is evident that Congress intended to preserve governmental debtors' ability to initiate transactions affecting their assets given, for example, the inclusion of Section 303, 304(i) and 305 of PROMESA."); *see also* ECF No. 8886 at 2-3 (holding Court had no authority over payments to creditors pursuant to section 315).

5

the Title III case and resolve claims against the debtor—autonomy that would be thwarted if any creditor could interpose its own claims objection and then hold the debtor's restructuring hostage, providing yet another reason to apply *In re Thompson* here.

7. Moreover, application of the *Thompson* rule would not harm creditors. *Cf.* UCC Supp. Brief at ¶¶ 1, 11. If the Committee thinks the settlement is bad and the claim objection should be litigated, it is free to make a demand to the Oversight Board and seek leave of the Court. Moreover, while the Committee (and the Fuel Line Lenders [ECF No. 1782 at ¶ 7]) complain the Government Parties' "main goals in pursuing a settlement with bondholders were not the best interests of PREPA's unsecured creditors" (UCC Supp. Brief ¶ 12), this is at most a (baseless) objection to the 9019 Motion—not a reason to grant them standing to object to claims—and, moreover, they fail to recognize the Court must consider all interests cognizable in Title III, not just the Committee's interests.[11] For these reasons, the Court should follow the First Circuit's consistent jurisprudence and dismiss the Committee Objection for lack of standing.

## II. The Court Should Not Hear the Committee Objection Before the 9019 Motion

8. The Committee argues its objection must be determined before the 9019 Motion

---

[11] The Committee cites to Bankruptcy Code section 1109(b) and *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 872 F.3d 57, 61 (1st Cir. 2017) (UCC Supp. Brief at ¶ 11, n. 15) but neither help its case. Section 502(a) is the specific provision that governs the right to bring claims objections, and First Circuit courts have held section 502(a) does not generally give creditors the absolute right to object to claims in either chapter 7 or chapter 11 cases. *In re Thompson*, 965 F.2d at 1147; *In re Chi. Invs., LLC*, 470 B.R. at 91. Section 1109(b) does not lend any support to their claim they have standing to file their own claim objection—at most, it could support an argument the Committee could appear and be heard in the litigation of the Oversight Board's Lien Challenge were it to proceed. Moreover, *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 872 F.3d 57, 61 (1st Cir. 2017), had nothing to do with claim objections, but rather intervention as of right in an adversary proceeding. Further, the fact that section 502(a) allows a creditor to object to a claim does not mean that this right is absolute: the Court has the power to balance this right with other considerations, including by demanding that the creditor first ask the debtor to bring the objection. *See e.g., In re Briggs Transp. Co.*, 780 F.2d 1339, 1347 (8th Cir. 1985) (bankruptcy involves a balancing of interests between the debtor and creditors). Similarly, it does not mean that the court does not have the inherent powers to control its own docket—including by delaying the claim objection until after the adjudication of the proposed settlement. *See APS Technology, Inc. v. Brant Oilfield Management & Sales, Inc.*, 2014 WL 12539360, at *1 (S.D.N.Y. 2014) (Swain, J.); *see also Clinton v. Jones*, 520 U.S. 681, 706-07 (1997).

6

because "the 9019 Motion seeks to settle the claims raised in the [Committee] Objection" and the "9019 Motion, if approved, would moot the [Committee] Objection." UCC Supp. Brief, ¶¶ 2, 12. In a sense, the Committee is right: if the Court approves the settlement, it will moot the Committee Objection, but it will also mean: (i) the Court has upheld the Government Parties' determination of the reasonableness of the settlement; and (ii) that avoiding the litigation of a claim objection is in the debtor's best interest. It cannot be then, that mooting the objection is problematic. Moreover, the 9019 Motion was filed on May 10, 2019, and seeks to settle the Supporting Holders' claims in return for significant benefits—the Committee Objection was filed **five months after the 9019 Motion** and in substance almost entirely duplicates the Lien Challenge the Government Parties wish to settle. The Committee's claim that the 9019 Motion somehow seeks to impermissibly "settle" and "moot" something filed five months **after** the 9019 Motion is unavailing. What the Committee really seeks to do is to moot the 9019 Motion—which it has objected to—by either (i) forcing litigation of the very objections to the Supporting Holders' claims the 9019 Motion seeks to settle or (ii) "forc[ing]" the Government Parties to include the Committee in any settlement they wish to make, presumably for a variety of concessions (UCC Supp. Brief ¶ 15, n. 20).

9. The Committee argues that the Committee Objection must be heard and decided before the 9019 Motion because the "plain language" of Bankruptcy Code section 502(b) "entitles objecting creditors to a judicial determination on the **merits** of their claim." *See* UCC Supp. Brief, ¶¶ 14 (emphasis in original); *see also id.* ¶¶ 12-14. While several times noting that the "plain language" of section 502(b) demands the Court adopt their position (at ¶¶ 12, 16), curiously the Committee fails to quote section 502(b)'s "plain language" **once**. That is not surprising since the "plain language" does not actually support their position. Bankruptcy Code section 502(b) provides: "if such objection [under section 502(a)] is made, **the court, after notice and hearing,**

7

**shall determine the amount of such claim** . . . **and shall allow such claim in such amount** . . . ." 11 U.S.C. § 502(b). As the vast majority of courts have held (even the majority of courts the Committee itself cites[12]), the Court satisfies the requirements of section 502(b) by hearing a settlement under Rule 9019—section 502 does not require a hearing on the claim objection itself.[13] Thus, there is no justification for reading section 502(b), contrary to its own wording, to require a hearing on the merits of a claims objection before a hearing on a settlement.[14]

10. Not only is there no textual mandate to require determination of an objection before a settlement, such a rule would discourage or even eliminate settlements. As the Court in *In re DVR, LLC* stated, the trustee must be empowered to settle claims objections, otherwise "the delay that litigation entails may hold up the trustee's distribution to creditors interminably," the estate may be deprived of "tangible benefits that rolling the dice in litigation would . . . jeopardize" and

---

[12] In its brief, the Committee cites *Kaiser Aluminum Corp.* (UCC Supp. Brief at ¶¶ 13, 15, 16), *In re DVR, LLC* (at ¶¶ 3 n.5, 13, 16), *In re Futterman* (at ¶ 3, n.5), *In re Heritage Org., LLC* (at ¶¶ 13, 16), and *In re Thompson* (at ¶ 17). All of these cases held that the court could approve a settlement without hearing a creditor's claim objection first.

[13] *See, e.g., In re DVR, LLC*, 582 B.R. 507, 512 (Bankr. D. Colo. 2018) ("this Court does not read the phrase 'shall determine the amount' in § 502(b) as precluding a settlement. If parties settle a claim objection by agreeing that a creditor will have a claim in a certain amount, and the court, after applying the Rule 9019 standard, approves the settlement, then it has 'determined' and 'allowed' the claim."); *Law Debenture Tr. Comp. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 96 (D. Del. 2006) (finding no conflict between section 502 and Rule 9019); *In re Heritage Org., LLC*, 375 B.R. 230, 285 (Bankr N.D. Tex. 2007) ("Like the *Kaiser* court, this Court believes that the better way to harmonize § 502 and Rule 9019 is to read the 'notice and a hearing' requirement of Rule 9019 as satisfying the right to be heard with respect to a claim objection."); *RWNIH-DL 122nd St. 1 LLC v. Futterman (In re Futterman)*, 2019 Bankr. LEXIS 1872, *12-13 (Bankr. S.D.N.Y. Jun. 20, 2019) (allowing trustee to settle objection filed by creditor); *Prin Corp. v. Altman (In re Altman)*, 265 B.R. 652, 659 (Bankr. D. Conn. 2001) (approving a proposed settlement between the chapter 11 trustee and a creditor resolving the creditor's proof of claim, where the chapter 11 debtor had objected to the claim); *Hamon v. DVR, LLC (In re DVR, LLC*, 606 B.R. 80, 87 (D. Colo. 2019) (agreeing with bankruptcy court that court could approve Rule 9019 settlement of claims objection without first resolving creditor's objection); *In re Thompson*, 965 F.2d 1136 (1st Cir. 1992) (affirming court approval of settlement other other creditors' objections).

[14] For the same reasons, the Committee's suggestion that Bankruptcy Rule 9019 is invalid as it abridges rights under Bankruptcy Code section 502(b), UCC Supp. Brief, ¶ 15, is wrong. There is no conflict between the provisions. *See, e.g., In re Kaiser Aluminum Corp.*, 339 B.R. at 94 ("While it is true that the Bankruptcy Code trumps related Bankruptcy Rules implementing the Bankruptcy Code, this proposition is typically used when there is a direct conflict or contradiction between the applicable Rule and the Code section it is implementing. In this case, the Court concludes that there is no direct conflict between Section 502(a) and Rule 9019 which would require the Bankruptcy Court to resolve claim objections before approving a settlement."); *In re DVR, LLC*, 582 B.R. at 522 ("Section 502(a) and Rule 9019 do not conflict but instead work together harmoniously.").

it "would permit a creditor to hold the estate hostage to protracted litigation." 582 B.R. at 522. Moreover, "such a procedure would undermine the important policy of promoting settlements in bankruptcy proceedings by requiring the parties to litigate the very issues that the settlement seeks to resolve." *In re Kaiser Aluminum Corp.*, 339 B.R. at 94.[15] The Committee has no answer to these significant concerns.

11. The only two cases the Committee discusses that refused to hear a settlement before deciding a creditor's objection, *In re C.P. Hall Co.*, 513 B.R. 540, 544 (Bankr. N.D. Ill. 2014) and *In re CS Mining, LLC*, 574 B.R. 259, 282 (Bankr. D. Utah 2017), do not support its case for the reasons explained in the Government Parties' Supplemental Brief (at ¶¶ 13-14): they both involved settlements that would have directly, adversely affected third party secured creditors' lien rights. Here, the Committee has no lien rights, and cannot credibly contend a party-in-interest can file a duplicative claims objection **after** the trustee's settlement motion is on the docket and either insist on litigating it or on being brought into the settlement. That is not law; it is daylight robbery.[16]

---

[15] While the Committee states that its rule would actually "promote true compromises" by "forc[ing]" the trustee to engage with objecting creditors, UCC Supp. Brief, ¶ 15 n. 20, this argument is clearly incorrect. Instead of allowing the Oversight Board to settle the claim of a creditor against the debtor, it would allow **any** party-in-interest to file its own objection at any time before settlement approval and force concessions on the debtor to settle its claim objection. Any creditor or other party-in-interest could ascertain "veto" powers and halt all progress in the case until their demands are met. Such a rule would eviscerate settlements in bankruptcy because every claimant would realize there is no purpose served by settling as long as another creditor can still object to the claim

[16] While both *In re C.P. Hall Co.* and *In re CS Mining* are distinguishable and understandable on their facts, to the extent they hold that section 502(b) requires that the court rule on a claims objection before a settlement they are wrong. As noted above, section 502(b) by its express terms does not require that the court hear the claims objection—it provides that the court must "allow" the claim in the appropriate amount after notice and a hearing—something satisfied by approval of a settlement after notice and hearing under Rule 9019. The court in *Heritage Org.* was right when it said that "[t]aken to its logical conclusion, the . . . argument that § 502 confers not only a right to object to a claim but also a right to a ruling would mean that the Court could never permit a settlement of a claim objection . . . even though both the claimant and the objectant desired a different result." *In re Heritage Org., LLC*, 375 B.R. 230, 285 (Bankr. N.D. Tex. 2007). While the Committee contends it is not seeking to "hold the estate hostage" (at ¶ 17), it is hard to see what else would be the result of the Committee winning on this issue—it could either force litigation, potentially to the great detriment of the debtor, on a claim objection the Oversight Board has determined to settle, or it could "force" (at ¶ 15, n.20) its inclusion in the settlement, presumably for a variety of concessions. If that is not holding the estate hostage, it is hard to see what is.

12. Moreover, the Committee's argument about fiduciaries (UCC Supp. Brief at ¶¶ 16-18) is wrong. None of the Committee's cases hinge on the existence of fiduciary duties.[17] Moreover, the Oversight Board as the sole Title III representative of PREPA is the only party that can settle claims—the Committee cannot.[18] If the Committee had its way, the debtor would be deadlocked, with apparently no one able to settle claims and the court locked in endless litigation. The Committee's position is especially absurd considering that under PROMESA Title III the Oversight Board can settle claims without even seeking court approval.[19]

13. For all the foregoing reasons, the Court should (i) dismiss the Committee Objection for lack of standing, or (ii) in the alternative, decline to hear the Committee Objection until after it adjudicates the 9019 Motion, and then only if the 9019 Motion is denied with prejudice.

---

[17] The Committee quotes *In re Heritage Org.*, 375 B.R. 230, 285 (Bankr. N.D. Tex. 2007), as having held the debtor can settle claims because it is a fiduciary. UCC Supp. Brief at ¶ 16. However, the Court was actually summarizing the holding of *In re Kaiser Aluminum*, 339 B.R. at 94-95, and listed the debtor's fiduciary duties as the fourth of four different reasons why the Court could approve a settlement over a creditor's objection, after: "(i) there is no direct conflict between § 502 and Rule 9019, (ii) the rules do not dictate that claim objections be heard before settlement motions, (iii) requiring litigation on the merits would undermine the policy of promoting settlements in bankruptcy . . . ." *Id.* The *Heritage* court's own analysis did not mention fiduciary duties once. *Id.* ("this Court believes that the better way to harmonize § 502 and Rule 9019 is to read the 'notice and a hearing' requirement of Rule 9019 as satisfying the right to be heard with respect to a claim objection . . . While any party in interest has a statutory right to object to a claim, the Trustee, as the representative of the estate [*c.f.* PROMESA § 315(b)], has the ability to compromise that objection, as long as the objectant is given notice and an opportunity to be heard with respect to the fairness and wisdom of the compromise . . . Rule 9019's requirement of court approval of a compromise after notice and a hearing provides protection to the party whose claim objection is being compromised."). Similarly, the statement that the Committee quotes from *In re DVR, LLC* is misleading—it comes from the court's background description of the role of a trustee, not from its decision on the issue before this Court. Notably, *In re Futterman* and the other cases cited by the Oversight Board do not even mention fiduciary duties, demonstrating the Committee is wrong.

[18] Fed. R. Bankr. P. 9019(a) ("On motion **by the trustee** . . . the court may approve a compromise or settlement") (emphasis added); *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166 (2d Cir. 2005) ("the language of Rule 9019, [] authorizes only the trustee, or debtor-in-possession to bring a motion for settlement . . . ."); *RWNIH-DL 122nd St. 1 LLC v. Futterman (In re Futterman)*, 2019 Bankr. LEXIS 1872, *12-13 (Bankr. S.D.N.Y. Jun. 20, 2019) ("it is the Trustee who is the primary representative of the estate and who has the authority to take action on behalf of the estate. That primary authority includes the right, on behalf of the estate, to settle any claims that are made against the estate.").

[19] *See, e.g., In re City of Stockton*, 486 B.R. 194, 195 ("11 U.S.C. § 904 gives a chapter 9 debtor freedom to decide whether to ignore or to follow the Rule 9019 compromise-approval procedure . . . .").

10

| | |
|---|---|
| Dated: December 4, 2019<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>*/s/ Martin J. Bienenstock*<br><br>Martin J. Bienenstock (*pro hac vice*)<br>Paul V. Possinger (*pro hac vice*)<br>Ehud Barak (*pro hac vice*)<br>Daniel S. Desatnik (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br><br>*Attorneys for the Financial Oversight and Management Board as representative for the Debtor*<br><br>**LUIS F. DEL VALLE-EMMANUELLI**<br><br>By: */s/ Luis F. Del Valle-Emmanuelli*<br>By: Luis F. del Valle-Emmanuelli<br>USDC-PR No. 209514<br>P.O. Box 79897<br>Carolina, Puerto Rico 00984-9897 |

*/s/ Elizabeth L. McKeen*
John J. Rapisardi
Nancy A. Mitchell
(Admitted *Pro Hac Vice*)

**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

-and-

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

-and-

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority*

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC NO. 222301

**MARINI PIETRANTONI MUÑIZ, LLC**
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-Attorneys for Puerto Rico Fiscal Agency and Financial Advisory Authority*

*/s Katiuska Bolaños*
Katiuska Bolaños
USDC-PR 231812

**DÍAZ & VÁZQUEZ LAW FIRM**

*/s/ Katiuska Bolaños-Lugo*
Katiuska Bolaños-Lugo
USDC No. 231812

290 Jesús T. Piñero Ave.
Scotiabank Tower, Suite 11-E
San Juan, PR 00918
PO Box 11689
San Juan, PR 00922-1689
Tel: (787) 395-7133
Fax: (787) 497-9664

*Co-Attorneys for Puerto Rico Electric Power Authority*