# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-4780 (LTS) |

## BRIEF OF CHRISTIAN SOBRINO PURSUANT TO COURT'S ORDER GRANTING MOTION TO SEAL FOR LIMITED DURATION AND FOR SUPPLEMENTAL BRIEFING

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523- LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

6855299 v3
6855299 v3

Christian Sobrino, through his attorneys, pursuant to the Order Granting Motion to Seal for Limited Duration and for Supplemental Briefing, entered by this Court on November 8, 2019, respectfully states:

**RELEVANT BACKGROUND**

1. Christian Sobrino was, until his resignation in July 2019, the Chief Executive Officer of the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), a member of the Governing Board of PREPA, and an ex officio member of the Financial Oversight and Management Board for Puerto Rico ("FOMB").

2. Prior to his resignation, Mr. Sobrino executed a Definitive Restructuring Support Agreement (the "RSA") on behalf of AAFAF. *See* Docket No. 1235 in 17-4780 (LTS). Thereafter, AAFAF and PREPA filed in this Court their *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement*. *See* Docket No. 1235 in 17-4780 (LTS) (the "9019 Motion"). Also prior to his resignation, Mr. Sobrino executed a declaration in connection with a supplemental memorandum filed by AAFAF and PREPA in support of the 9019 Motion. *See* Docket No. 1429 in 17-4780 (LTS).

3. On July 5, 2019, the Official Committee of Unsecured Creditors (the "Committee")[2] noticed the deposition of Mr. Sobrino in connection with its discovery regarding the Joint Motion. *See* Docket No. 1645 at ¶ 5 and n. 5. Upon information and belief, the Committee sought to depose Mr. Sobrino as a Rule 30(b)(6) witness of AAFAF due to his role with AAFAF and the fact that he executed both the RSA on behalf of AAFAF and a fact declaration in support of the 9019 Motion. Following Mr. Sobrino's resignation, on or about August 5, 2019, the Committee served him with third-party subpoenas seeking to depose him, as well as for the production of certain documents in his possession.

---

[2] Upon information and belief, the Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

4. In or about August 2019, it was publicly announced that Mr. Sobrino, among other former government officials, had become the subject of a preliminary investigation by the Puerto Rico Department of Justice (the "PRDOJ"), initiated by the Puerto Rico Attorney General pursuant to P.R. Laws Ann. tit. 3, § 99k. As a result of the preliminary investigation, if the Attorney General concludes there is probable cause to believe any of the crimes referred to in the statute were committed, the matter may be referred to the Office of the Panel of the Special Independent Prosecutor (the "OPFEI"). *Id*. The OPFEI would then determine whether a special prosecutor should be appointed to file charges. *See* P.R. Laws Ann. tit. 3, § 99r.

5. The preliminary investigation by the PRDOJ has not been concluded and, to date no decision has been announced about whether the matter will be referred to the OPFEI. As of today, the specific date on which the PRDOJ will formally conclude its inquiry is unknown. Likewise, it is unknown if a Special Prosecutor will be designated by the OPFEI or whether any charges will be filed against Mr. Sobrino. As long as any criminal investigation remains open, Mr. Sobrino faces a concrete possibility of being charged with a crime.

6. Mr. Sobrino was prepared to comply with the third-party subpoenas by testifying at a deposition and producing responsive, non-privileged documents in his possession. However, due to the on-going preliminary investigation and in order to adequately protect his constitutional rights, Mr. Sobrino, through counsel, advised the Committee that any discovery would have to be conducted pursuant to mutually agreeable terms that would mitigate any potential risk related to the criminal probe and preserve the constitutional rights of Mr. Sobrino. Otherwise, Mr. Sobrino indicated he would file a motion for a protective order or other appropriate relief from the Court. The intended purpose of a protective order was to preserve the constitutional rights of Mr. Sobrino and to protect against inadvertent disclosure of information by Mr. Sobrino that could be used by the PRDOJ in its continuing preliminary investigation, by the OPFEI should the matter be referred to it, or by a special prosecutor should one be appointed. In other words, Mr. Sobrino was willing to testify at a deposition and produce documents in his possession, but not at the expense of his constitutional rights or unwitting self-incrimination in a parallel, unrelated criminal investigation.

7. The parties met and conferred in good faith about Mr. Sobrino's deposition, the production of documents and a protective order, resulting in an agreement on all matters including the terms of a protective order. Accordingly, on or about October 21, 2019, the Committee filed with the Court a proposed Stipulated Protective Order, which the court entered. *See* Docket No. 1675 in Case No. 17-BK-4780. On the basis of the protections afforded to him by the Stipulated Protective Order, on October 22, 2019, Mr. Sobrino appeared at a full-day deposition conducted by the 9019 Parties.[3]

8. Among other important protections for Mr. Sobrino, the Stipulated Protective Order (a) limited attendance at the deposition of Mr. Sobrino to twelve parties in interest in these cases (along with their counsel, financial advisors or retained consultants) (collectively, the "9019 Parties"); (b) until further order of the Court, limited disclosure of the transcript of the deposition only to the 9019 Parties; (c) permitted any 9019 Party to cite to or quote from the deposition transcript provided that any pleading or exhibit containing such citations or quotations is filed under seal. *See* Stipulated Protective Order at ¶¶ 2-4.

## ARGUMENT

**A. There was "Good Cause" for the Court to Enter the Stipulated Protective Order**

9. The Court, for good cause, may enter an order to protect a person from the almost unlimited right of discovery granted by Rule 26(b)(1) of the Federal Rules of Civil Procedure. *See González-Berrios v. Mennonite Gen. Hosp., Inc.*, 2019 U.S. Dist. LEXIS 171104, *5 (D. P.R. Sep. 30 2019). Protective orders are governed by Rule 26(c) of the Federal Rules of Civil Procedure, which provides in relevant part that:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> …

---

[3] Mr. Sobrino produced responsive, non-privileged documents in his possession prior to the Court's entry of the Stipulated Protective Order, in good faith reliance on the parties' agreement on the terms of that order.

>    (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>    
>    …
>    
>    (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>    
>    (E) designating the persons who may be present while the discovery is conducted;
>    
>    (F) requiring that a deposition be sealed and opened only on court order …

Fed. R. Civ. P. 26(c)(1); see also Fed. R. Bankr. P. 9018; 11 U.S.C. § 107.

10. The party seeking a protective order bears the burden of establishing good cause and a specific need for protection. *See González-Berrios v. Mennonite Gen. Hosp., Inc.*, 2019 U.S. Dist. LEXIS 171104, *6 (D. P.R. Sep. 30 2019) (citing *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 779 (1st Cir. 1988)). "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986).

11. Rule 26(c) is "highly flexible, having been designed to accommodate all relevant interests as they arise." *Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959-60 (D.C. Cir. 1999)). Therefore, the "good cause" standard established by Rule 26(c) "is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *Id.* Courts may enter a protective order even if it finds only an "unreasonable" or "slight inconvenience" to the producing party. *See Mennonite Gen. Hosp. Inc.*, 2019 U.S. Dist. LEXIS 171104, *6 (quoting 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Fed. Prac. & Proc. Civ. § 2036 (3d ed. 2019)).

12. Good cause existed for the Court to enter the Stipulated Protective Order in this case. In particular and as discussed above, Mr. Sobrino is the subject of a preliminary criminal investigation by the PRDOJ that could result in a formal investigation by the OPFEI and, potentially, in the filing of criminal charges against him and other individuals. A protective order

was required to protect his constitutional rights and interests during his deposition. *See* Stipulated Protective Order at p. 2. The Stipulated Protective Order protects Mr. Sobrino's rights in several ways. First, by restricting attendance at the deposition to only those parties involved in taking discovery in connection with the 9019 Motion, the order prevented, to the greatest extent possible, any attempt to use the deposition to further the PRDOJ's ongoing investigation at the expense of the constitutional rights of Mr. Sobrino. *See id*. at ¶ 2. Second, the order permitted Mr. Sobrino "to privately confer with his attorneys prior to answering any question that implicates his Fifth Amendment rights…". *Id*. at ¶ 5. Attorney-client conferences occurring while a question is pending during a deposition is a generally frowned upon practice. *See*, *e.g.*, *ARP v. Amezaga (In re Amezaga)*, 195 B.R. 221, 227 ("A deposition is a 'question-and-answer conversation' between the witness and deposing attorney to garner facts in relation to that witness' actions and experiences." (quoting *Hall v. Clifton Precision, A Division of Litton Systems, Inc.*, 150 F.R.D. 525, 528 (E.D.Pa. 1993)). In light of legitimate concerns about giving testimony regarding the 9019 Motion that could, however inadvertently, be self-incriminating the parties agreed to permit Mr. Sobrino to confer with his attorneys as necessary before answering a question that touched on his constitutional rights. Third, and importantly, the order permits 9019 Parties to use Mr. Sobrino's testimony only in connection with the 9019 Motion, and provided that any pleading quoting or citing his testimony is filed under seal pursuant to the Court's procedures for filing documents under seal. *See* Stipulated Protective Order at ¶ 4. This afforded Mr. Sobrino continuing assurances that his testimony would not be used against him in the PRDOJ investigation or any ensuing criminal proceeding, without seeking to take the sealing inquiry out of the purview of the Court. *See*, *e.g.*, *United States CTFC v. Banc De Binary, Ltd.*, 2015 U.S. Dist. LEXIS 36839, *3 (D. NV Mar. 23, 2015) ("A federal court cannot abdicate the sealing inquiry to the parties or decide at the outset of litigation whether a document, which it has not reviewed, should be sealed." (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

13. Finally, the Stipulated Protective Order obviated the need for Mr. Sobrino to request the entry of a protective order by filing a stand-alone motion on notice to the relevant

parties. By agreeing to the terms of a protective order, Mr. Sobrino's deposition took place as scheduled on October 22, 2019, and neither the Committee nor any other party was compelled to seek further extensions of the briefing schedule relating to the 9019 Motion to accommodate their wish to depose him.

14. For the foregoing reasons, Mr. Sobrino respectfully submits that good cause existed for the Court to enter the Stipulated Protective Order.

**B.  Continued Sealing of Mr. Sobrino's Redacted Testimony is Warranted**

15. There is at common law "a general right to inspect and copy public records and documents." *Nixon v. Warner Communications*, 435 U.S. 589, 597, (1978). This right, however, is not absolute. *Id*. at 598. Instead, "judicial documents are presumptively available to the public, but may be sealed if the right to access is outweighed by the interests favoring nondisclosure." *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) (citing *Nixon*, 435 U.S. at 602)).

16. Among the factors favoring nondisclosure considered by courts are: (i) prejudicial pretrial publicity; (ii) the danger of impairing law enforcement or judicial efficiency; and (iii) the privacy interests of third parties. *See Amodeo*, 71 F.3d at 1050; see also *McVeigh*, 119 F.3d at 813-14; *In re Globe Newspaper Co.*, 729 F.2d 47, 32, 59 (1st Cir. 1984) (concluding the "combined threat to defendants' fair trial right and their right to privacy is sufficient"). These factors strongly favor the continued sealing of any currently redacted information from Mr. Sobrino's deposition or document production.

17. First, while Mr. Sobrino remains only the subject of a preliminary investigation, that investigation and the circumstances leading to it are, and have been, the subject of much publicity in newspapers and on social media. And, the restructuring cases of the Title III debtors has understandably garnered much attention among the press and residents of Puerto Rico and elsewhere. Importantly, the full scope of the investigation being conducted by the PRDOJ has never been disclosed. Given these facts, there is significant risk that any disclosure of Mr. Sobrino's testimony will prejudice his ability to get a fair trial, in the unfortunate circumstance that the investigation ultimately results in the filing of criminal charges.

18. Continued sealing of Mr. Sobrino's testimony, and excerpts thereof, will not impair law enforcement or judicial efficiency. Perhaps more important, the right of any law enforcement agency to seek access to the redacted testimony of Mr. Sobrino in the future is not foreclosed. The PRDOJ may file an appropriate motion for access to unredacted documents if that information is subsequently determined to be relevant to its investigation. Notably, no party has filed a motion to access Mr. Sobrino's redacted testimony.

19. The final factor – Mr. Sobrino's privacy interests – also militates against unsealing redacted documents. Mr. Sobrino is not a party to this case. He is a private citizen from whom third party discovery was sought based on his prior role as a government official. Taking reasonable steps, in consideration of the constitutional rights of Mr. Sobrino, to avoid the public disclosure of his testimony that could be useful to investigators probing alleged criminal conduct, and most assuredly will be published in the media, is warranted, especially since Mr. Sobrino relied on the protections of the Stipulated Protective Order when he appeared for a deposition in October 2019.

20. Finally, the Court should balance the equities when considering the continued sealing of Mr. Sobrino's redacted testimony. The potential harm to Mr. Sobrino is considerable, and includes: a forced waiver of his right against self-incrimination, by releasing information given to a limited amount of people in a civil deposition in a case Mr. Sobrino is not a party to; potentially confirming or denying information in the PRDOJ investigation, which is significant since Mr. Sobrino is unaware of the full scope of the ongoing probe; and exposing Mr. Sobrino, and potentially others, to public embarrassment, annoyance or humiliation if the media publishes or mischaracterizes information that is currently redacted. On the other hand, no person or party, including any law enforcement agency, is prejudiced by continuing the seal because their right to seek access to such information is not foreclosed and, upon information and belief, no request to unseal the information has been presented to the Court.

## CONCLUSION

16. For the foregoing reasons, Mr. Sobrino respectfully requests that the Court continue the seal on his testimony, including the excerpts that are currently redacted in pleadings filed with the Court, until the conclusion of the pending investigation and any subsequent proceedings relating thereto that may be initiated.

Dated: December 5, 2019

Respectfully submitted,

/s/ *Carlos J. Sagardía-Abreu*
Carlos J. Sagardía-Abreu, Esq.
**CARLOS J. SAGARDÍA-ABREU, ESQ.**
954 Ave. Ponce de León
Miramar Plaza, 5th Floor
San Juan, Puerto Rico 00907
Tel. (787) 360-7924
Email. cjsa@sagardialaw.com

- and -

**SILLS CUMMIS & GROSS, P.C.**
One Riverfront Plaza
Newark, New Jersey 07110
Richard H. Epstein, Esq.
S. Jason Teele, Esq.
Tel. (973) 643- 7000
Email. repstein@sillscummis.com
　　　　 steele@sillscummis.com

*Attorneys for Christian Sobrino*