## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>               Debtors.[1] | PROMESA<br>Title III<br><br><br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>               Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, as<br>representative of PUERTO RICO ELECTRIC POWER<br>AUTHORITY, and PUERTO RICO FISCAL AGENCY AND<br>FINANCIAL ADVISORY AUTHORITY,<br><br>               Movants,<br><br>       v.<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br>*et al.*<br><br>               Respondents. | **This filing relates only to<br>PREPA, and shall be filed in<br>the lead Case No. 17-BK-<br>3283-LTS, and PREPA's Title<br>III case (Case No. 17-BK-<br>4780-LTS)** |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**RESPONSE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,
THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,
AND CITIGROUP CAPITAL MARKETS INC. TO THE COURT'S ORDER
GRANTING MOTION TO SEAL FOR LIMITED DURATION AND FOR
<u>SUPPLEMENTAL BRIEFING</u>**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................5

    I.      Negotiation-Related Documents Should Remain Under Seal .................................7

    II.     Transformation-Related Documents Should Remain Under Seal. .......................12

    III.    Board Documents...................................................................................................13

RELIEF REQUESTED.......................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott v. Lockheed Martin Corp.*,
    No. 06-cv-0701-MJR, 2009 WL 1973545 (S.D. Ill. July 8, 2009) ............................................6

*Anderson v. Cryovac, Inc.*,
    805 F.2d 1 (1st Cir. 1986) ...........................................................................................................6

*Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective
    Ass'n*,
    532 U.S. 1 (2001) .......................................................................................................................15

*Dunkin Donuts Franchised Rests., LLC v. Agawam Donuts, Inc.*,
    Civ. No. 07-11444-RWZ, 2008 WL 427290 (D. Mass. Feb. 13, 2008) ....................................6

*FTC. v. OSF Healthcare Sys.*,
    No. 11 C 50344, 2012 WL 1144620 (N.D. Ill. Apr. 5, 2012) ....................................................6

*FTC v. Qualcomm Inc.*,
    No. 17-cv-00220-LHK, 2019 WL 95922 (N.D. Cal. Jan. 3, 2019) ............................................7

*Hodgson Law Firm, LLC v. Kingston*,
    No. 17-2730-DDC-JPO, 2018 WL 3127163 (D. Kan. Mar. 14, 2018) ....................................16

*Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*,
    102 F. Supp. 2d 6 (D.D.C. 2000) .............................................................................................15

*Powertech Tech., Inc. v. Tessera, Inc.*,
    No. C 10-945 CW, 2013 WL 12324116 (N.D. Cal. Apr. 15, 2013) ..........................................6

*Safouane v. Hassett*,
    No. C00-0621-JCC, 2009 WL 10723270 (W.D. Wash. Oct. 13, 2009) ..................................16

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    No. 07-cv-2014 (SWK), 2008 WL 199537 (S.D.N.Y. Jan. 22, 2008).......................................7

*Wis. Alumni Research Found. v. Apple, Inc.*,
    No. 14-cv-062-WMC, 2015 WL 6453837 (W.D. Wis. Oct. 26, 2015) ....................................6

**STATUTES**

11 U.S.C. § 107(b)(1) ........................................................................................................................5

PROMESA § 101(a) ...........................................................................................................................3

P.R. Act 2-2017 § 5(a) ................................................................................................4

P.R. Act 2-2017 § 6 ...................................................................................................16

P.R. Act 83-1941 § 6 ..................................................................................................4

P.R. Act 83-1941 § 194(b) .........................................................................................15

### OTHER AUTHORITIES

Fed. R. Civ. P. 26(c)(1)(G) .........................................................................................6

**To The Honorable United States Magistrate Judge Judith G. Dein**:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), on its own behalf, and on behalf of the Puerto Rico Electric Authority ("PREPA" or the "Debtor") in its capacity as the Debtor's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF", and together with PREPA and the Oversight Board, the "Government Parties"), and Citigroup Global Markets Inc. ("Citi", and together with the Oversight Board, PREPA, and AAFAF, the "Producing Parties") respectfully submit this brief in support of the continued sealing of certain documents and deposition transcript excerpts that were included either as exhibits in the *Objection to Joint Motion of Puerto Rico Electric Power Authority and AAFAF for Order Approving Settlements Embodied in Restructuring Support Agreement* [ECF No. 1701] (the "UCC Objection"), filed by the Official Committee of Unsecured Creditors (the "Committee") or in the *Objection to PREPA Bondholder Settlement* [ECF No. 1700] (the "FLL Objection"), filed by Cortland Capital Market Services LLC, SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC (collectively, the "Fuel Line Lenders").

## INTRODUCTION

1.    On October 30, 2019, the Committee and the Fuel Line Lenders filed their Objections to the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Section 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* (the "9019 Motion"). Because certain exhibits to the Objections had

---

[2]      PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

been designated "Confidential" or "Professional Eyes Only" by the producing parties under the terms of the parties' Protective Order (as defined below), the Committee filed its *Urgent Motion to File Under Seal Official Committee of Unsecured Creditors Objection to Joint Motion of Puerto Rico Electric Power Authority and AAFAF for Order Approving Settlements Embodied in Restructuring Support Agreement* (the "UCC Motion to Seal") [ECF No. 1705], and the Fuel Line Lenders filed their *Urgent Motion to File Under Seal Unredacted Version of Objection Filings of Cortland Capital Market Services LLC, as Administrative Agent, and Solus to PREPA Bondholder Settlement* (the "FLL Motion to Seal") [ECF No. 1704].

2.      On November 8, 2019, the Court entered orders temporarily granting the Motions to Seal, permitting the Committee and the Fuel Line Lenders to file unredacted versions of the Objections under seal, and directing the producing parties to submit briefs explaining why certain exhibits to the Objections should remain sealed [ECF Nos. 1723, 1724].

3.      The Producing Parties submit this brief to justify the continued sealing or partial sealing of Exhibits 2, 4, 5, 8, 10, 12, 25, 27-29, 41, and 52-55 to the UCC Objection, which are documents that were produced by the Oversight Board, AAFAF, PREPA, the Ad Hoc Group of PREPA Bondholders (the "Ad Hoc Group"), or Citigroup Inc. ("Citigroup"), as well as excerpts from the deposition transcripts of Frederic Chapados, Natalie Jaresko, Christian Sobrino, David Brownstein, Fernando Batlle, and David Skeel.  Additionally, the Oversight Board submits this brief to justify the continued sealing of Exhibits 2, 14, and 15 to the FLL Objection, which are documents produced by PREPA.

4.      Exhibit 1 to the *Stipulation and Order in Connection with Discovery Regarding the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(I) and 9019 for Order*

2

*Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [ECF No. 1322-1] (the "Protective Order"), provides that:

> "'Confidential'" or 'Confidential Material' shall mean and refer to any Material produced by any Party or non-party (each referred to herein as a "Producing Party") that the Producing Party considers in good faith to contain commercial, financial, trade secret, research and development, or personal information of a proprietary nature that is not known to, or has not generally been made available to, the public or other information the disclosure of which, in the good faith judgment of the Producing Party, would be detrimental to the conduct of the Producing Party's business or official functions."

5.     The *Stipulation and Order in Connection with Discovery Regarding the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(I) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [ECF No. 1322] (the "Stipulated Order") further provides that:

> "Professional Eyes Only" or "Professional Eyes Only Material" shall mean Confidential Material that a Producing Party considers in good faith to (a) contain or reflect highly confidential and sensitive proprietary information related to the Producing Party's previous, existing or ongoing operations for which restricted access is necessary to prevent a risk of competitive or financial harm to the Producing Party in the ongoing operation of its business; (b) contain or reflect the Producing Party's analyses regarding the treatment or valuation of the debt, assets or securities of PREPA, other Title III debtors and other public corporations of the Commonwealth of Puerto Rico, to the extent restricted access to such analyses is reasonably necessary to prevent a risk of competitive or financial harm to the Producing Party or harm to PREPA's proposed privatization transaction; (c) contain or reflect an individual's financial or personal information; or (d) be documents or information that are otherwise subject to confidentiality agreements with third parties that require such documents to be designated Professional Eyes Only."

6.     The exhibits listed above meet at least one of these definitions because public dissemination of these materials would impair the Government Parties' official functions. Pursuant to Section 101(a) of PROMESA, the Oversight Board's mission is to provide a method for the Commonwealth to "achieve fiscal responsibility and access to the capital markets." AAFAF acts "as fiscal agent, financial advisor, and reporting agent of all entities of the Government of Puerto Rico and to assist such entities in facing the serious fiscal and economic

crises that Puerto Rico is currently undergoing." Act 2-2017 § 5(a). Pursuant to Act 83-1941, the purpose of PREPA is to develop water and energy resources for use by inhabitants of the Commonwealth and to thereby "promote the general welfare and increase commerce and prosperity." Act 83-1941 § 6. To fulfill those responsibilities, the Oversight Board, together with AAFAF and PREPA, regularly negotiate with creditors in an effort to reach agreements with respect to PREPA's financial obligations. The Oversight Board and AAFAF also regularly negotiate with creditors of the Commonwealth and certain of its other instrumentalities. The definitive RSA, the subject of the 9019 Motion currently pending before this Court, is only one example of the agreements the Government Parties, collectively or otherwise, have reached as a result of these ongoing negotiations. Furthermore, the Government Parties, together with the Puerto Rico Public-Private Partnerships Authority (the "P3 Authority"), have solicited and are currently evaluating bids from potential operators (sometimes referred to as concessionaires) of PREPA's transmission and distribution assets. These bids are an important step towards PREPA's Transformation,[3] which the Government Parties view as essential to PREPA's and the Commonwealth's ability to achieve fiscal responsibility. Maintaining confidentiality over documents related to these highly sensitive negotiations is essential.

       7.     The Producing Parties seek to retain under seal the following exhibits to the UCC Objection: (1) internal communications between members of the Government Parties and their advisors regarding the preliminary Restructuring Support Agreement ("RSA") (UCC Exs. 8 & 55); (2) communications between the Government Parties, their advisors, and the creditors, including presentations regarding the negotiation of the preliminary and definitive RSAs (UCC Exs. 12, 28, and 52); (3) excerpts from the deposition transcripts in which the deponents discuss

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the 9019 Motion.

the negotiation of the RSA as well as PREPA's Transformation (UCC Exs. 2, 5, 10, 25, 27, and 41); and (4) documents reflecting the deliberations of AAFAF's Board of Directors and PREPA's Governing Board as to whether to approve the RSA (UCC Exs. 4, 29, 53, and 54).[4] These exhibits reflect the negotiation strategies of the Government Parties and the Supporting Holders, as well as the positions taken by the parties during the negotiations and then-non-final deal terms that were considered and discussed.  The public disclosure of these documents would be detrimental to the Government Parties' ability to negotiate with other creditor groups in the future, and would therefore impede their core official functions of providing a path to restored fiscal health for the Commonwealth and its instrumentalities, including PREPA.

8. The Producing Parties also seek to retain under seal exhibits to the FLL Objection that relate to amendments to financing agreements between PREPA and Citigroup (FLL Exs. 2, 14, and 15).  These exhibits likewise reveal confidential non-public information regarding PREPA's negotiating positions and negotiating strategies, and their public disclosure will therefore impair PREPA's future negotiating positions for the same reasons.

## ARGUMENT

9. Although there is a general presumption of public access to court records, 11 U.S.C. § 107(b)(1) provides that information in public filings can be protected where necessary to "protect an entity with respect to a trade secret or confidential research, development, or commercial information[.]"  11 U.S.C. § 107(b)(1) (2010).

---

[4] The Government Parties have agreed to waive confidentiality as to the following portions of the exhibits that are currently filed under seal: Exhibit 2, Excerpts from the Deposition Transcript of Natalie Jaresko, pages 34:22-41:25, Exhibit 10, Excerpts from the Deposition Transcript of David Brownstein, pages 28:10-30:24; and Exhibit 27, Excerpts from the Deposition Transcript of Mr. David A. Skeel, pages 59:6-22; 76:16-77:16; 128:8-134:14; 139:9-140:10; and 175:20-22.

10.    Additionally, Fed. R. Civ. P. 26(c)(1)(G) provides courts authority to enter a protective order sealing "confidential . . . commercial information."  A party seeking a protective order sealing documents must demonstrate good cause, which requires a "particularized factual showing of the harm that would be sustained" if the documents were not sealed.  *Dunkin Donuts Franchised Rests., LLC v. Agawam Donuts, Inc.*, Civ. No. 07-11444-RWZ, 2008 WL 427290, at *1 (D. Mass. Feb. 13, 2008).  However, the burden to show good cause is lower when the documents for which sealed treatment is requested relate to discovery matters, because there is no tradition of public access to discovery materials.  *See Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986) (declining to extend the common law presumption that the public may view judicial records to discovery materials because "there is no tradition of public access to discovery").

11.    Courts have regularly permitted parties to file documents relating to contract negotiations under seal, particularly where the disclosure of the information relates to an ongoing negotiation or in any way puts the party at a competitive disadvantage.  *See Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701-MJR, 2009 WL 1973545, at *2 (S.D. Ill. July 8, 2009) (holding there was good cause to file exhibits containing information relating to an ongoing bidding process under seal because public disclosure would cause competitive harm to the parties); *FTC. v. OSF Healthcare Sys.*, No. 11 C 50344, 2012 WL 1144620, at *3 (N.D. Ill. Apr. 5, 2012) (sealing contract terms, negotiation strategies, and discussions related to ongoing contract negotiations, where disclosure of the information would have put the party at a competitive disadvantage); *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 10-945 CW, 2013 WL 12324116, at *19 (N.D. Cal. Apr. 15, 2013) (granting motion to seal draft of a license agreement between movant and third party); *Wis. Alumni Research Found. v. Apple, Inc.*, No. 14-cv-062-WMC,

6

2015 WL 6453837, at *2 (W.D. Wis. Oct. 26, 2015) (sealing movant's manufacturing agreements with third party companies because release of the information would "provide a competitive advantage" to movant's counterparts in future negotiations); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07-cv-2014 (SWK), 2008 WL 199537, at *7 (S.D.N.Y. Jan. 22, 2008) (sealing documents that reveal party's negotiating strategies where their release would harm the party in future transactions); *FTC v. Qualcomm Inc.*, No. 17-cv-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) (granting motion to seal because information would harm third parties' "competitive standing" by "divulg[ing] terms of confidential contracts, contract negotiations, or trade secrets").

## I.   Negotiation-Related Documents Should Remain Under Seal

12.     Exhibits 5, 8, 10, 12, 27, 28, 52, and 55 to the UCC Objection relate to the negotiations between the Government Parties and PREPA's creditors, and their disclosure would reveal confidential, non-public information regarding non-final deal terms and the negotiating positions taken by the parties.  Likewise, Exhibits 2, 14 and 15 to the FLL Objection relate to negotiations between PREPA and Citigroup ("Citi"), a lender to PREPA, regarding amendments to the parties' financing agreement, and reflect non-public information regarding the negotiations surrounding those amendments and the Government's consideration when deciding to approve such amendments.

13.     For example, UCC Exhibit 8 is a series of text messages exchanged by two of the Oversight Board's members, David Skeel and Ana Matosantos, between July 14, 2018 and August 6, 2018.  In the text messages, Mr. Skeel and Ms. Matosantos discuss the status of the negotiations of the preliminary RSA and the definitive RSA, as well as their thoughts and impressions regarding the terms then under consideration.  The text messages contain material,

non-public information regarding non-final deal points, as well as the opinions of two Board members regarding those non-final deal points.  Likewise, UCC Exhibit 27 is an excerpt from the transcript of Mr. Skeel's deposition that contains direct quotes from these same text messages.[5]  Accordingly, because these text messages would provide a direct window into the thought processes and impressions of two of the Oversight Board's key decision makers, their release would harm the Government Parties in future negotiations with other creditors.

14.     UCC Exhibits 12 and 52 are communications between the Government Parties and the Ad Hoc Group in which the parties are directly negotiating the terms of the Preliminary RSA.  UCC Exhibit 12 is a July 20, 2018 email chain between Proskauer Rose, Kramer Levin (counsel for the Ad Hoc Group), and Citigroup, in which the parties discuss the Government Parties' latest draft of the preliminary RSA.  The email chain also attaches a July 20, 2018 presentation titled "PREPA Discussion Materials on AHG Proposal."  In one email in this chain, a Kramer Levin attorney summarizes a conversation with the Government Parties regarding the terms of the RSA, and writes that the numbers discussed in the conversation are still being finalized.  In addition, the presentation details the terms of the Ad Hoc Group's latest offer as well as the terms that the Government Parties were considering in their counteroffer.  Likewise, UCC Exhibit 52 is a July 28, 2018 email chain between O'Melveny, Proskauer Rose, and Kramer Levin in which O'Melveny gives its initial comments on the Ad Hoc Group's July 27, 2018 draft of the Preliminary RSA.  These documents therefore reveal non-final deal terms and open points of negotiations between the parties, including the parties' negotiating positions at the time the documents were prepared.  They also highlight terms the parties viewed as important and reveal key points of disagreement between the parties.

---

[5] The excerpts of Mr. Skeel's deposition that are at issue are pages 201:11-25.

15.     UCC Exhibit 5 contains excerpts from the deposition of former AAFAF
Executive Director Christian Sobrino in which he discusses: (1) communications regarding RSA
negotiations, (2) the development of the RSA generally, and specifically, the development of the
demand protection provisions in the RSA, and (3) details about RSA negotiations and individuals
involved in the negotiation of the RSA. These excerpts, much like Exhibits 12 and 52, therefore
reveal non-final deal terms and open points of negotiations between the parties, including the
parties' negotiating positions at the time discussed in the excerpts.  They also highlight terms the
parties viewed as important and reveal key points of disagreement between the parties.

16.     UCC Exhibit 28 is an April 25 and 26, 2019 email chain between Ankura
Consulting Group ("Ankura") and Citigroup ("Citi"), financial advisors for the Oversight Board
and PREPA, respectively.  The email chain attaches a presentation prepared by Citigroup titled
"PREPA Discussion Materials."  That presentation gives an overview of the key points of a draft
of the definitive RSA, including benefits of the RSA, key terms that remained open between the
parties, and other important considerations as the parties finalized the agreement.  As with the
other presentations, public disclosure of UCC Exhibit 28 would reveal sensitive non-public
information about the parties' negotiating positions, which would negatively impact the ability of
the Government Parties to negotiate and reach agreements with future counterparties.

17.     UCC Exhibit 10 consists of excerpts from the deposition transcript of David
Brownstein.[6] Mr. Brownstein is the Managing Director and Head of Municipal Banking at Citi,
and was one of the lead negotiators of the RSA.  In the excerpts at issue, Mr. Brownstein
testified about confidential, non-public discussions between the Oversight Board and the Ad Hoc
Group, which would also reveal sensitive, non-public information about the parties' negotiating

---

[6] The excerpts of Mr. Brownstein's transcript at issue are pages 111:11-115:15; and 142:2-
145:25.

positions.  He also testified regarding the Government Parties' rationale for the structure of the

demand protections in the RSA, which would likewise reveal non-public information about the

Government Parties' negotiating position and the rationale behind its decision to agree to a

certain term in the RSA, all of which would likewise negatively impact the Government Parties'

future negotiation efforts.

18.     UCC Exhibit 27 consists of excerpts from the deposition transcript of Oversight

Board member David Skeel.[7]  These excerpts contain material, non-public information regarding

the negotiation of the preliminary and definitive RSAs.  Mr. Skeel testified regarding the parties'

negotiating positions with respect to non-final deal terms, including the recovery rate of the

bondholders, the transition charge, post-petition interest, and the risk of litigation with the

bondholders.  Mr. Skeel further testified regarding internal communications among Oversight

Board members, communications between the Government Parties and creditors of PREPA's

debt, and presentations prepared by the Government Parties' advisors in preparation for

negotiations with creditors.  Unsealing these portions of Mr. Skeel's and Mr. Brownstein's

transcripts would provide a direct window into the Oversight Board's negotiation process and

strategy, which will be detrimental to future negotiations on the Oversight Board's behalf.

19.     Exhibit 55 is a memo from the executive director of AAFAF to the PREPA Board

recommending approval of the preliminary RSA.  This document reveals portions of the

preliminary RSA, a non-final document, the Government Parties found most beneficial and

reveals the chief considerations and concerns of the Government Parties as they entered

definitive RSA negotiations.   Accordingly,  this  document  contains  material,  non-public

---

[7] The excerpts of Mr. Skeel's transcript at issue are pages 55:23-56:25; 70:4-71:11; 73:3-74:2;
141:7-11; 141:16-142:21; 152:2-164:8; 173:3-175:19; 177:24-179:25; 191:11-194:9; 194:14-25;
195:8-197:16; 201:11-25; 229:2-25; and 226:2-228:8

information regarding issues of primary concern to the Government Parties during definitive RSA negotiation.  The public disclosure of these documents will therefore impair PREPA's future negotiating positions as PREPA is currently engaged with creditors in negotiations over debt restructuring.

20.     FLL Exhibit 2 contains two letters from Citi to PREPA describing amendments to the Trade Finance Facility Agreement, FLL Exhibit 14 is a Certificate of Determination from the PREPA Director permitting PREPA to enter into a credit agreement with Citi, and FLL Exhibit 15 is an internal memo from GDB executive officers to the Board of Directors regarding the extension of the credit agreement with Citi, with its corresponding attachments. These exhibits reveal confidential non-public information regarding PREPA's negotiating positions and negotiating strategies as they reached an agreement with creditors regarding changes to debt terms.  The public disclosure of these documents will therefore impair PREPA's future negotiating positions as PREPA is currently engaged with creditors in negotiations over debt restructuring.  Public disclosure of these documents would permit other creditors engaged in negotiations with PREPA to understand PREPA's considerations and strategy when negotiating with creditors.

21.     Ultimately, all of these exhibits should be kept under seal because they provide insight into the Government's opinions and key positions taken during negotiations with creditors.  The Government Parties are currently engaged in ongoing litigation and negotiations with other creditor constituencies.  Public dissemination of the Government Parties' negotiation communications could put the Government Parties at a disadvantage in future negotiations. Documents revealing the Government Parties' in-depth considerations regarding the settlement of litigation and restructuring of debt hurts the Government Parties' negotiating position.  Such

11

disclosure gives parties adverse to the Government Parties, as well as PREPA's creditors, an unfair advantage as PREPA's deliberations, concerns, and analyses of matters related to litigation and restructuring will be disclosed.

## II.   Transformation-Related Documents Should Remain Under Seal.

22.    Exhibits 2, 41, and 25 to the UCC Objection relate to ongoing, highly sensitive negotiations between the Government Parties and the P3 Authority, on the one hand, and potential future operators of PREPA's transmission and distribution assets, on the other hand. Disclosure of these documents will reveal confidential, non-public information regarding the parties' negotiating positions as well as non-public details of the potential transaction, all of which could imperil the parties' negotiations and jeopardize PREPA's Transformation.

23.    UCC Exhibit 2 consists of excerpts from the deposition transcript of Natalie Jaresko,[8] the Executive Director of the Oversight Board, in which Ms. Jaresko testifies about her communications with other senior officials, including her communications regarding the implementation of the RSA, as well as her role as the co-head of PREPA's transformation supervisory committee.   She describes the activities of the committee, her role on that committee, and the determinations the committee has made with respect to PREPA's Transformation.   Public disclosure of this testimony would reveal the nonpublic, confidential impressions formed by key government decision-makers in reaching decisions with respect to the timing and scope of PREPA's Transformation.

24.    UCC Exhibit 41 contains excerpts from the deposition of Mr. Frederic Chapados,[9] a Citi Director who is charged with overseeing PREPA's Transformation.   Mr. Chapados's

---

[8] The excerpts of Ms. Jaresko's deposition at issue are pages 30:6-34:21.

[9] The excerpts of Mr. Chapados's deposition at issue are pages 66:1-77:25 and 210:1-221:25.

testimony provides detailed information regarding the proposed transactions, including the role the Government Parties envision for the private operator, how the Government Parties intend to structure any privatization transaction, what factors the Government Parties understand to be of concern to potential operators, and what feedback the Government Parties have received from potential operators.  The testimony therefore reveals highly sensitive details regarding ongoing negotiations, and its disclosure could put at risk the Government Parties' ability to consummate the transaction.

25.     Similarly, UCC Exhibit 25 contains excerpts from the deposition of Fernando L. Batlle, a Senior Managing Director at Ankura, which also contains nonpublic information regarding the ongoing Transformation transaction.[10]  Exhibit 25 likewise reveals the parties' negotiation strategy, the priorities of the Government Parties and the potential bidders, and other material non-public information regarding PREPA's Transformation.   Negotiations with potential concessionaires remain ongoing, and disclosure of nonpublic information about non-final deal terms and open points of negotiation would harm those ongoing discussions.  Exhibit 25, like the other exhibits described above, contains the detailed opinions of Mr. Batlle, who is heavily involved in the process, on multiple elements of the bidding and Transformation process as a whole.  If these documents are made public, it could harm ongoing negotiations that are vital to PREPA's efforts to successfully modernize as a utility company, achieve fiscal health, and provide reliable electric service to Puerto Rico.

**III.     Board Documents Should Remain Under Seal.**

---

[10] The excerpts of Mr. Batlle's deposition at issue are 79:9-81:25 and 209:23-212:7.

26. The Committee has also submitted materials in support of its objection that contain nonpublic information disclosing the deliberations of AAFAF's Board of Directors and PREPA's Governing Board considering whether to approve the RSA. Specifically:

27. UCC Exhibit 4 consists of the minutes of the April 17, 2019 PREPA Board meeting where the Board met to consider and analyze whether or not to approve the definitive RSA, UCC Exhibit 29 contains documents provided to the Board to review before the April 17, 2019 PREPA Board meeting and emails disseminating these materials, UCC Exhibit 53 is the explanation of a Board member's vote at the Board meeting, UCC Exhibit 54 is a letter from a Board member to Elí Díaz, the Board Chairman, advising that the PREPA Board take further action with regard to the definitive RSA and discussing details about what was or was not considered at the Board meeting, UCC Exhibits 8 and 27 contain, respectively, text messages reflecting confidential deliberations between Mr. Skeel and Ms. Matosantos, two Board members, and excerpts directly quoting from those text messages,[11] and UCC Exhibit 25 is an excerpt of the transcript from Mr. Batlle's deposition which contains direct quotes from and discussion of these other documents relating to Board deliberations.[12]

28. These exhibits, all of which relate to sensitive deliberations of the boards of AAFAF, PREPA, and the Oversight Board, should remain confidential. Exhibits 4, 29, 53, 54, and 25 each pertain to internal discussions or statements made by AAFAF and PREPA Board members during a closed joint session on April 17, 2019, where the board members considered and ultimately approved the RSA. Exhibits 8 and 27 contain internal discussions or statements between members of the Oversight Board that reflect the members' deliberations. The

---

[11] The excerpts of Mr. Skeel's deposition at issue are 201:11-25.
[12] The excerpts of Mr. Batlle's deposition at issue are 156:19-23, 157:15-21, 162:13-163:20, 173:25.

Government Parties recognize that this Court ruled the Government Parties may not withhold these materials from production on deliberative process grounds. *Order Granting in Part Renewed Motion to Compel*, ECF No. 1556 ¶¶ 7-8. However, the Government Parties submit that public dissemination of these materials would be harmful to the Government Parties for the same reasons that animate the deliberative process privilege. Making the confidential deliberations of AAFAF and PREPA's Board members public would chill candid debate. *Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9, (2001) ("officials will not communicate candidly among themselves if each remark is a potential item of . . . front page news."); *see also Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*, 102 F. Supp. 2d 6, 14 (D.D.C. 2000) ("the purpose of the deliberative privilege is to afford government officials not only the freedom to debate alternative approaches in private, but also the freedom to deliberate.") (internal quotations omitted).

29. The Government Parties in the future will need to consider complex public policy issues of the utmost importance, including, but not limited to other restructuring agreements. The chilling effect public dissemination of these confidential board materials would have on those critical future debates would cause significant harm to the Government Parties.

30. Moreover, Puerto Rico law recognizes that PREPA and AAFAF have the right to maintain confidentiality over Board materials pertaining to contract negotiations. For instance, while PREPA's Enabling Act requires PREPA to publicly broadcast its board meetings, the law carves out an exception for meetings involving, among other things, "ideas with regard to the negotiation of potential PREPA contracts," or "information of strategies regarding lawsuits of PREPA." Act 83-1941 § 194(b). More importantly, PREPA's Enabling Act requires all individuals (board members and other participants) at such meetings exempted from public

15

broadcast to "keep the matters discussed in said meetings confidential until there is no longer a need for confidentiality or they are required by law to disclose such information." *Id.*  AAFAF's Enabling Act has no corresponding requirement to publicize board meetings, and AAFAF maintains confidentiality over board materials.  *See* Act 2-2017 § 6 (section governing Board of Directors has no meeting publication requirement, and that the board may protect confidentiality of the information it receives).  Courts recognize that where a document is confidential under local law, such protection is a strong indicator that the document should be filed under seal.  *See, e.g.*, *Hodgson Law Firm, LLC v. Kingston*, No. 17-2730-DDC-JPO, 2018 WL 3127163, at *2 (D. Kan. Mar. 14, 2018) ("The information discussing the parties' settlement negotiations is deemed confidential by state law, and, the court agrees, the interest recognized by the state law is adequate to disturb the presumption of public access."); *Safouane v. Hassett*, No. C00-0621-JCC, 2009 WL 10723270, at *1 (W.D. Wash. Oct. 13, 2009) (granting motion to seal in part because "State law provides for the confidentiality" of the documents at issue).

## RELIEF REQUESTED

31.    For the reasons set forth above, the Producing Parties respectfully request that the Court grant this motion and permit the entirety of Exhibits 4, 5, 8, 10, 12, 27-29, 41, and 52-55 as well as the designated portions of Exhibits 2, 10, 25, and 27, to the Committee's Objection to remain under seal.  The Producing Parties further respectfully request that the Court grant this motion and permit the entirety of Exhibits 2, 14, and 15 to the Fuel Line Lenders' Objection to remain under seal.

16

Dated: December 5, 2019

**PROSKAUER ROSE, LLP**

*/s/* Margaret A. Dale

Martin J. Bienenstock
Ehud Barak
Margaret A. Dale
Gregg M. Mashberg
Eleven Times Square
New York, NY 10036-8299
Tel:  (212) 969-3000
Fax:  (212) 969-2900
mbienenstock@proskauer.com
ebarak@proskauer.com
mdale@proskauer.com
gmashberg@proskauer.com

-and-

Paul V. Possinger
70 W. Madison St., Suite 3800
Chicago, IL 60602
Tel:  (312) 962-3550
Fax:  (312) 962-3551
ppossinger@proskauer.com

-and-

DEL VALLE EMMANUELLI LAW
OFFICES

Luis F. del Valle Emmanuelli
PO Box 79897
Carolina, PR 00984-9897
Tel: (787) 977-1932
Fax: (787) 722-1932
devlawoffices@gmail.com

*Attorneys for The Financial Oversight and
Management Board for Puerto Rico, as
representative of The Commonwealth of
Puerto Rico and the Puerto Rico Electric
Power Authority*

**O'MELVENY & MYERS LLP**

*/s/ Elizabeth L. McKeen*

John J. Rapisardi
Nancy A. Mitchell
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
nmitchell@omm.com

-and-

Peter Friedman
1625 I Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: pfriedman@omm.com

-and-

Elizabeth L. McKeen
Ashley M. Pavel
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com

*Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory
Authority and Puerto Rico Electric Power
Authority*

17

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913

250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel:  (787) 705-2171
Fax:  (787) 936-7494

*Co-Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

**DÍAZ & VÁZQUEZ LAW FIRM**

*/s/ Katiuska Bolaños-Lugo*
Katiuska Bolaños-Lugo
USDC No. 231812

P.S.C. 290 Jesús T. Piñero Ave.
Scotiabank Tower, Suite 11-E
San Juan, PR 00918
PO Box 11689
San Juan, PR 00922-1689
Tel: (787) 395-7133
Cel. (787) 497-9664
kbolanos@diazvaz.law

*Co-Attorneys for Puerto Rico Electric Power Authority*

**GOODWIN PROCTER LLP**

By: _____

Marshall H. Fishman
Meghan K. Spillane
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800
mfishman@goodwinlaw.com
mspillane@goodwinlaw.com

*Counsel to Citigroup Global Markets Inc.*