Hearing Date: December 11, 2019

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>Debtors.[1] | PROMESA<br><br>Title III<br><br>Case No. 17 BK 3283 (LTS)<br><br>(Jointly Administered)<br><br>Re: ECF Nos. 8244, 9016, 9365 |

### RESPONSE, LIMITED OBJECTION, AND RESERVATION OF RIGHTS OF FINANCIAL GUARANTY INSURANCE COMPANY WITH RESPECT TO THE INTERIM REPORT AND RECOMMENDATION OF THE MEDIATION TEAM

Financial Guaranty Insurance Company ("FGIC"), by and through its attorneys Rexach & Picó, CSP and Butler Snow LLP, responds to the *Interim Report and Recommendation of the Mediation Team* [ECF No. 9365] (the "Interim Report") pursuant to the *Order Regarding Stay Period and Mandatory Mediation* [ECF No. 8244] (the "Order"), raises limited objections and reservation of rights, and states as follows:

### PRELIMINARY STATEMENT

1. The Interim Report identifies issues regarding the ownership and use of revenues pledged to public corporations as "complicated" matters that merit the advanced attention of the

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

1

Court. *See* Interim Report at 5-6. These are gating issues that must be resolved before any plan of adjustment can be developed consistent with the requirements of the law and rights of all parties. To reach that resolution, the Mediation Team proposes a schedule for certain lift stay motions and adversary proceedings in which these issues may be litigated.

2. FGIC agrees that pledged revenue issues must be timely adjudicated to final judgment with appellate rights fully exhausted prior to confirmation of any plan of adjustment. Lift stay motions regarding HTA and PRIFA are currently pending, and a CCDA motion will be filed shortly after the Order's stay terminates.

3. FGIC files this response for two reasons. *First*, the Interim Report indicates that the Oversight Board intends to move to consolidate the lift stay motions with the adversary proceedings. Such consolidation would be inappropriate. The lift stay motions require the Court's immediate attention and should remain unconsolidated so that the questions they address regarding the ownership and use of pledged revenues may be timely adjudicated through appeal prior to confirmation. *Second*, one of the adversary proceedings addressed in the Interim Report is Adv. Proc. No. 19-363. The Mediation Team notes that the claims and counterclaims raised in this proceeding must either be addressed in the forthcoming adversary proceedings to be filed by the Oversight Board or Adv. Proc. No. 19-363 should be timely litigated alongside the forthcoming adversary proceedings. FGIC strongly agrees with this recommendation as it has filed a Counterclaim in Adv. Proc. No. 19-363 and the issues raised by it must be resolved.

## BACKGROUND

4. Unsurprisingly, resolution of an entire territory's financial condition, including approximately $70 billion of outstanding public bonds, gives rise to "disparate views exceedingly difficult" to reconcile. *See* Interim Report at 2. Indeed, the substantive purpose of

the Order was to harmonize these disparate views to the extent possible so that the prominent legal issues that "gate" this Court's consideration and adjudication of plans of adjustment can be timely, efficiently, and fairly adjudicated. The Mediation Team's Interim Report begins the process of aligning disparate views so that the parties may safely rely upon the fair adjudication of their rights. Procedures unfairly weighted towards the Commonwealth and the Oversight Board will give rise to disdain and litigation from the creditors while similar favor given to creditors will result in strong objection and contempt from the Commonwealth and its people. As Alexander Hamilton wisely recognized, where "neither can CONTROL the other, each will have an obvious and sensible interest in [] reciprocal forbearance. And where there is an IMMEDIATE common interest, we may safely count upon [the system's] operation." Federalist No. 36 (emphasis original). Neither the Oversight Board nor creditors should control the applicable procedures in these cases. The procedures must foster fair litigation of genuine and material issues.

5. Among the goals of the Order addressed by the Interim Report is Exhibit 2, *[Proposed] Interim Case Management Order for Revenue Bonds* (the "Revenue Bond Order"). The Mediation Team correctly identifies the "rights of holders of revenue bonds issued by HTA, PRIFA, and CCDA against the Commonwealth" as one of the primary gating issues to be resolved by the Court. *See* Interim Report at 5. To date the Commonwealth and the Oversight Board have wholly ignored statutory and constitutional mandates regarding revenues pledged to bondholders by using such pledged revenues for general Commonwealth purposes. Revenue bondholders, like FGIC, contend that this taking of pledged revenues is unlawful, unconstitutional, and injurious to their property rights. Whether the Commonwealth or the Oversight Board possess statutory, contractual, and constitutional authority to permanently

3

deprive bondholders of pledged revenues has not yet been litigated. The Mediation Team's Interim Report rightfully recognizes the sincere, material dispute regarding the ownership and use of pledged revenues justifies advanced attention by the Court.

6. The Revenue Bond Order proposes procedures by which this Court can squarely address the competing legal theories raised by the Oversight Board and the revenue bondholders regarding the ownership and use of pledged revenues. Proposing procedures to address revenue bond disputes while remaining silent with respect to a confirmation schedule is an entirely appropriate approach by the Mediation Team. Ownership of and property rights in the pledged revenue are gating issues that must be resolved before confirmation, because the Commonwealth cannot distribute assets it does not own. If the Commonwealth does not have a property interest in the pledged revenues or its interest in such revenues is merely nominal or as a fiduciary, conduit, fiscal agent, or trustee, any plan of adjustment that purports to distribute pledged revenues inconsistent with the mechanisms, obligations, duties, and accounts established by law will be unlawful, *ultra vires*, and *per se* unconfirmable.

7. Moreover, the pledged revenues are material to the feasibility of any plan of adjustment. The current proposed plan of adjustment for the Commonwealth contemplates the taking of substantially all revenues pledged to secure debt issued by separate public corporations, regardless whether such revenues were collected by the Commonwealth or reside in Commonwealth accounts, and to use such funds for Commonwealth purposes, in exchange for which the creditors of non-Title III debtors such as PRIFA and CCDA will receive nominal distributions and otherwise forfeit their rights. It should not surprise the Court that FGIC and other bondholders do not consent to such treatment. Moreover, they contend it is illegal. If the

revenue bondholders are correct, the assumptions and proposed dividends under the currently proposed plan of adjustment must be substantially amended and modified.

8. The Revenue Bond Order proposes two channels for addressing the ownership and use of pledged revenues: (1) the lift stay motions and (2) four new adversary proceedings (the "Revenue Bond Adversary Proceedings"). It also contemplates the currently stayed adversary proceedings remaining stayed so long as the Revenue Bond Adversary Proceedings adequately address all claims raised in the current adversary proceedings. Finally, it recognizes without deciding an ongoing dispute regarding whether the lift stay motions should proceed to timely adjudication or be consolidated with the new Revenue Bond Adversary Proceedings.

9. The Revenue Bond Order schedules the completion of briefing on the lift stay motions for February 13, 2020. Presumably, a hearing could be scheduled on the lift stay motions shortly thereafter. As the Court is aware, lift stay motions are entitled to expedited hearings under 11 U.S.C.§ 362(e). *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 939 F.3d 340, 352 fn. 4 (1st Cir. 2019) ("Section 362(e) of the bankruptcy code requires the bankruptcy court to hold a preliminary hearing within thirty days and to conclude and issue a final hearing and determination within sixty days of a movant's request for stay relief absent 'consent of the parties in interest' or 'compelling circumstances.' 11 U.S.C. § 362(e)(1)."); *see also In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 899 F.3d 13 (1st Cir. 2018) (holding that PROMESA, Sections 305 and 306(b), and the title III processes are not valid bases for abstaining from determining stay relief motions); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 931 F.3d 111, 117 (1st Cir. 2019) (holding, where the debtor is misusing collateral, "the statute and the case law direct the creditor to seek and obtain relief from the stay to protect its interests.").

## ARGUMENT

10. The Interim Report identifies the Oversight Board's desire to consolidate the lift stay motions with the new Revenue Bond Adversary Proceedings, and the Revenue Bond Order includes a placeholder for a hearing on one or motions to consolidate, if such motions are filed. FGIC believes that any such consolidation of revenue bond lift stay motions and yet to be filed adversary proceedings is inappropriate. FGIC intends to object to and fully brief consolidation when and if that issue is before the Court. With respect to the currently proposed Revenue Bond Order, FGIC suggests that the lift stay motions, which will be fully briefed by February 13, 2020, be scheduled for hearing on a date certain no later than the March 4, 2020, omnibus hearing.

11. The Revenue Bond Order proposes a July 2020 hearing on any Rule 12(b) and Rule 12(c) motions in Revenue Bond Adversary Proceedings. The Revenue Bond Order does not even contemplate a scheduling conference to discuss discovery, summary judgments,[2] or trials, until after rulings in the Rule 12(b) and Rule 12(c) motions, meaning the new adversary proceedings likely will not be ripe for trial until late 2020 or 2021.

12. If the lift stay motions are determined in February/March 2020, as contemplated by the Revenue Bond Order, the appellate process could be substantially complete by the time of confirmation. This procedure and final determination would answer for the parties and the Court some or all of the pledged revenue questions that require resolution before a plan of adjustment can be found feasible and lawful. Indeed, such certainty may facilitate a consensual plan. The pledged revenue questions merit full and fair adjudication through the appellate processes. The Court must accord due process to the parties, including enjoining ongoing injuries and assuring appellate rights are not procedurally foreclosed. FGIC reserves all rights to object to and oppose

---

[2] FGIC asserts that cross-motions for summary judgment are likely the best procedural vehicle for a just, speedy, and inexpensive determination of all relevant questions regarding the pledged revenues. FGIC does not believe that all revenue bond issues can be resolved on Rule 12 motions.

any consolidation motions that would foreclose its due process rights and further the ongoing injuries to its property rights

13. Meanwhile, the Revenue Bond Order proposes that the pending HTA Adversary Proceedings will remain stayed "on the understanding that all issues raised in the Complaints and Counterclaims will be addressed" in the Revenue Bond Adversary Proceedings. Revenue Bond Order at ¶ 4. The HTA Adversary Proceedings, as defined in the Revenue Bond Order, are four pending, substantively identical adversary proceedings with four different sets of defendants. That there are four HTA Adversary Proceedings rather than one is solely the function of the number of defendants that the Oversight Board could name in one adversary proceeding under applicable rules and orders. FGIC and the other Claimants listed on Appendix A to the Revenue Bond Order are all defendants in Adv. Proc. No. 19-363.

14. The critical issues relating to HTA Bonds, including many of which are also critical to the other revenue bonds, have already been joined in Adv. Proc. No. 19-363, in which the Oversight Board as plaintiff has filed and served eleven different counts against the defendants, and FGIC has answered and filed and served thirteen counterclaims against the Oversight Board. Adv. Proc. No. 19-363 should remain stayed only if the new Revenue Bond Adversary Proceedings in fact assert all of the counts asserted in Adv. Proc. No. 19-363 complaint. If they do not, then the stay should terminate as to Adv. Proc. No. 19-363 and it should proceed on the same schedule as the Revenue Bond Adversary Proceedings, without need for FGIC to file a motion, as contemplated in the Revenue Bond Order. *See id*.

15. Accordingly, FGIC respectfully requests that the Revenue Bond Order be entered subject to its limited objections and reservations of rights, including: (1) the questions regarding the ownership and use of pledged revenues be timely adjudicated to final judgment with

7

appellate rights fully exhausted prior to confirmation of any plan of adjustment, (2) the lift stay motions remain unconsolidated to the extent necessary to have the questions regarding the ownership and use of pledged revenues timely adjudicated to final judgment with appellate rights fully exhausted prior to confirmation of any plan of adjustment; (3) the claims and counterclaims raised in Adv. Proc. No. 19-363 either be addressed in the Revenue Bond Adversary Proceedings or Adv. Proc. No. 19-363 be unstayed and consolidated with Revenue Bond Adversary Proceedings.

Dated: December 6, 2019

Respectfully submitted,

| | |
|---|---|
| REXACH & PICÓ, CSP | BUTLER SNOW LLP |
| By: /s/ *María E. Picó* | By: /s/ *Martin A. Sosland* |
|    María E. Picó |    Martin A. Sosland (pro hac vice) |
|    USDC-PR 123214 |    5430 LBJ Freeway, Suite 1200, |
|    802 Ave. Fernández Juncos |    Dallas, TX 75240 |
|    San Juan PR 00907-4315 |    Telephone: (469) 680-5502 |
|    Telephone: (787) 723-8520 |    Facsimile: (469) 680-5501 |
|    Facsimile: (787) 724-7844 |    E-mail: martin.sosland@butlersnow.com |
|    E-mail: mpico@rexachpico.com | |
| |    Jason W. Callen (pro hac vice) |
| |    150 3rd Avenue, South, Suite 1600 |
| |    Nashville, TN 37201 |
| |    Telephone: (615) 651-6774 |
| |    Facsimile: (615) 651-6701 |
| |    E-mail: jason.callen@butlersnow.com |

*Attorneys for Financial Guaranty Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned cases.

Dated: December 6, 2019.

By: */s/ Martin A. Sosland*

50426605.v5