# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>               Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## RESPONSE OF THE FINANCIAL OVERSIGHT
## AND MANAGEMENT BOARD FOR PUERTO RICO TO
## INTERIM REPORT AND RECOMMENDATION OF THE MEDIATION TEAM

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

INTRODUCTION ................................................................................................................. 1

PROPOSED MODIFICATIONS TO REVENUE BONDS PROPOSED ORDER ...................... 2

      I.      Ambac's Pending Motion to Lift the Stay with Respect to PRIFA
            Bonds Should Be Heard Immediately in New York as Previously
            Directed by the Court. ........................................................................................ 2

      II.     Compelling Circumstances Exist for the Continuance of Hearings
            Regarding the HTA and CCDA Lift Stay Motions Until Resolution
            of Motions to Dismiss Directed to the Revenue Bond Complaints. ...................... 6

      III.    The Order Should Clarify the Scope of the Oversight Board's
            Consent to Submit Issues to the Court's Jurisdiction Pursuant to
            Section 305. ...................................................................................................... 11

      IV.    The Order Should Provide Reasonable Limitations on the Page
            Length and Number of Briefs. ............................................................................ 12

TO CONSERVE RESOURCES AND PROMOTE EFFICIENCY, THE ERS
SCHEDULING ORDER SHOULD BE MODIFIED TO INCLUDE BRIEFING
ON THE MOTIONS BY THE BONDHOLDERS AND THE BANK OF NEW
YORK MELLON, AS FISCAL AGENT, FOR ALLOWANCE OF
ADMINISTRATIVE EXPENSE CLAIMS .................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Gracia Gracia v. Fin. Oversight & Mgmt. Bd. for P.R.*,
    939 F.3d 340 (1st Cir. 2019) ................................................................................5, 6

*In re City of San Bernardino*,
    545 B.R. 14 (C.D. Cal. 2016) ...................................................................................8

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    899 F.3d 13 (1st Cir. 2018) ....................................................................................10

*In re Sonnax*,
    907 F.2d 1280 (2d Cir. 1990) ..................................................................................9

*Simpkins-Bey v. Henderson*,
    932 F.2d 975 (10th Cir. 1991) ...............................................................................13

*Watts v. Thompson*,
    116 F.3d 220 (7th Cir. 1997) .................................................................................13

STATUTES

11 U.S.C. § 362 ..........................................................................................................7, 8

11 U.S.C. § 362(e)(1) .....................................................................................................7

11 U.S.C. § 552(b) ........................................................................................................16

48 U.S.C. § 2165 ...........................................................................................................11

PROMESA § 407 ..............................................................................................12, 17, 18

OTHER AUTHORITIES

Fed. R. Bankr. P. 7001(2) ..............................................................................................9

Fed. R. Civ. P. 12(b) ......................................................................................................7

Fed. R. Civ. P. 12(b)(6) ..................................................................................................6

Fed. R. Civ. P. 12(c) ..................................................................................................6, 7

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), on its own behalf and as sole representative, pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] for the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System for the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, and ERS, the "Debtors") hereby submits this response (the "Response") to the *Interim Report and Recommendation of the Mediation Team* (the "Interim Report")[3] [ECF No. 9365]:

## INTRODUCTION

1.      The Mediation Team worked tirelessly, alongside creditors, the Oversight Board and the Government, to resolve difficult issues concerning the revenue and general obligation bonds or, alternatively, to develop a framework by which certain matters could be presented for resolution to this Court.   The Interim Report also notes the progress attained in connection with the consensual scheduling of ERS litigation and the entry of an order establishing a timeframe for such litigation (the "ERS Order").   The Oversight Board recognizes and appreciates the efforts of all parties and the Mediation Team's dedication to working through all the complex issues in the months since this Court entered its Stay Order.

2.      As the Mediation Team acknowledges in the Interim Report, substantive negotiations regarding a possible amended plan of adjustment are ongoing and are expected to

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.
[3]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Mediation Team's Interim Report.

continue through the weeks preceding the filing of the Mediation Team's anticipated Amended Report on January 10, 2020.  The Oversight Board looks forward to continuing to participate in the mediation process, both formally with the assistance of the Mediation Team and informally through direct settlement communications with creditors and other parties.

3.     The Oversight Board recognizes the Proposed Interim Case Management Orders (collectively, the "Interim Orders"), attached as exhibits to the Interim Report, do not require the parties to submit any pleadings pending issuance of the Mediation Team's Amended Report. Nevertheless, the Oversight Board believes the proposed Interim Orders, as submitted, should be revised in certain respects prior to their potential entry by this Court.  The Oversight Board's proposed revisions to the *[Proposed] Interim Case Management Order for Revenue Bonds* (the "Revenue Bonds Proposed Order") [ECF No. 9365-2] are attached hereto as **Exhibit A**.[4]   A brief explanation justifying each proposed revision is set forth below.

### PROPOSED MODIFICATIONS TO REVENUE BONDS PROPOSED ORDER

**I.     Ambac's Pending Motion to Lift the Stay with Respect to PRIFA Bonds Should Be Heard Immediately in New York as Previously Directed by the Court.**

4.     The Oversight Board respectfully requests the Revenue Bonds Proposed Order be revised to schedule oral argument on Ambac Assurance Corporation's ("Ambac") *Motion And Memorandum Of Law In Support Of Its Motion Concerning Application Of The Automatic Stay To The Revenues Securing PRIFA Rum Tax Bonds* [ECF No. 7176] (the "PRIFA Lift Stay

---

[4] The Oversight Board reserves all its rights with respect to those portions of the Interim Report and the Interim Orders not expressly addressed by this response. That said, the Oversight Board does not currently propose any modifications to the *[Proposed] Interim Case Management Order* [Regarding GO Bonds].

Motion")[5] as soon as possible after the December 31, 2019 expiration of the stay, and no later than January 16, 2020, in New York.

5.     This Court already determined, in its June 13, 2019 *Order Regarding Argument and Discovery in Connection with Ambac Assurance Corporation's Motion Concerning Application of the Automatic Stay* [ECF No. 7420] (the "June 13, 2019 Order"), that initial argument on the PRIFA Lift Stay Motion should be limited to the threshold "legal issues of standing and secured status only."[6]  Nothing since the issuance of the June 13, 2019 Order has changed the factual or legal presentation of those issues or their need for expeditious resolution.

6.     The two legal issues the Court identified for the July 24, 2019 hearing on the PRIFA Lift Stay Motion—standing and secured status—were fully briefed by the parties and scheduled to be argued on July 24, 2019.[7]  Ambac contends it has standing and either the Commonwealth has no interest in the rum excise taxes or the Commonwealth's interest is encumbered by a lien securing bonds issued by PRIFA.  If the latter, Ambac seeks adequate protection or stay relief.

---

[5] On June 26, 2019, Financial Guaranty Insurance Company ("FGIC") filed a joinder in the PRIFA Lift Stay Motion [ECF No. 7675].

[6] For that reason, the Court also ordered that "[f]actual submissions must be limited to legal documents (statutes, agreements and the like) relevant to the parties' standing and collateral security arguments."  *See* June 13, 2019 Order at 1.  The Court further held that "[a]ny automatic stay motion-related discovery will be addressed in connection with the Court's decision on the legal issues argued on" the PRIFA Lift Stay Motion.  *Id.* at 22.  Ambac nevertheless pressed for discovery regarding these exact issues through its *Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxes* [ECF No. 7328], and the Oversight Board requested remedies for breach of the June 13, 2019 Order and other orders.

[7] The Oversight Board and the Commonwealth filed their Opposition to the PRIFA Lift Stay Motion on July 3, 2019 [ECF No. 7827].  The Committee of Unsecured Creditors filed a partial joinder [ECF No. 7831].  Oppositions to the PRIFA Lift Stay Motion also were filed by AAFAF [ECF No. 7829] and by Bacardi International Limited and Bacardi Corporation [ECF No. 7897].  Ambac and FGIC filed a joint reply on July 16, 2019 [ECF No. 8022].  On July 17, 2019, the Court *sua sponte* issued an *Order Authorizing Sur-reply* [ECF No. 8060].  The Oversight Board and the Commonwealth filed their sur-reply on July 19, 2019 [ECF No. 8164] in which AAFAF joined [ECF No. 8169].

3

The Oversight Board, as representative of the Commonwealth, contends the Commonwealth owns the rum excise taxes and there is no lien against them.   Thus, even if Ambac had standing (which it does not), Ambac would not be entitled to adequate protection or stay relief in the Commonwealth case.   Those issues were scheduled for argument at the July 24, 2019 Omnibus Hearing, but, at Ambac's request, and with the Oversight Board's consent, the Court added the PRIFA Lift Stay Motion to the list of stayed matters.

7.     Because the Court already bifurcated issues regarding the existence and scope of the PRIFA lien from issues regarding adequate protection and the need to lift the stay (distinct from the posture of the HTA and CCDA Lift Stay Motions described in the Revenue Bonds Proposed Order)—and the threshold matters isolated by the Court were briefed based on the documents—argument on the threshold issues remains a perfect vehicle to determine the threshold issues respecting any lien claimed by Ambac and could result in massive savings of time, money, and efforts.   These issues should be heard and decided at the earliest possible date, because their prompt resolution will promote the efficient resolution of these Title III Cases.   For that reason, the Oversight Board supports scheduling the PRIFA Lift Stay Motion (on the threshold issues already identified by the Court) for hearing at the earliest possible opportunity in New York, and no later than January 16, 2020—and the attached revisions to the Revenue Bonds Proposed Order reflect this request.

8.     To the extent Ambac, in its response to the Interim Report, seeks to delay the hearing on the fully briefed PRIFA Lift Stay Motion by seeking permission for amendment or additional briefing, the Oversight Board submits any such effort should be rejected.   As described above, the June 13, 2019 Order limited oral argument to "the legal issues of standing and secured status only," and directed that "[f]actual submissions must be limited to legal documents (statutes,

4

agreements and the like) relevant to the parties' standing and collateral security arguments." *See* June 13, 2019 Order at 1. As the parties previously represented to the Court, those issues were primed for argument on July 24, 2019. As noted, nothing affecting the legal issues or material submissions has changed in the interim. Moreover, if Ambac has somehow acquired standing since July, the Oversight Board will be delighted to acknowledge standing and limit the argument to the lien issue.

9.      Ambac may also contend that, based on the First Circuit's decision in *Gracia Gracia v. Financial Oversight and Management Board for Puerto Rico*, 939 F.3d 340 (1st Cir. 2019), there is "new" guidance on stay relief that requires Ambac to amend its motion. But, Ambac unsuccessfully tried this gambit once already. Specifically, Ambac effectively sought leave to amend the PRIFA Lift Stay Motion in light of the *Gracia Gracia* decision. *See Supplemental Objection of Ambac Assurance Corporation and Financial Guaranty Insurance Corporation to the Urgent Joint Motion of the Oversight Board and AAFAF for Order Extending (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* [ECF No. 9004]. This Court rejected Ambac's previous request. *See Order Granting Urgent Joint Motion of the Oversight Board and AAFAF for Order Extending (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* [ECF No. 9016] at paragraph 7 ("Any requests for relief raised in the Urgent Motion Responses [defined to include ECF No. 9004] and not specifically addressed in this Order are DENIED."). More importantly, this Court already fashioned a hearing on the precise issue the First Circuit ruled should be determined on a preliminary basis. In *Gracia Gracia*, the First Circuit ruled the Court should make at least a preliminary determination of whether the insurance premiums the Commonwealth was allegedly holding are the Commonwealth's property or property belonging to the Gracia plaintiffs. *Gracia*,

5

939 F.3d 340.   Here, Ambac requested stay relief in the Commonwealth case asserting that, if the Commonwealth owns the rum excise taxes, they are encumbered by a lien.   The Court ordered that those precise issues be resolved in the pending motion previously scheduled by the Court, and there is no reason for amendment or delay.

**II.    Compelling Circumstances Exist for the Continuance of Hearings Regarding the HTA and CCDA Lift Stay Motions Until Resolution of Motions to Dismiss Directed to the Revenue Bond Complaints.**

10.    The Revenue Bonds Proposed Order contemplates that Lift Stay Motions will be filed (or amended) regarding HTA and CCDA revenue bonds.   If filed, the HTA and CCDA Lift Stay Motions will substantially overlap with the Revenue Bond Complaints (also scheduled to be filed at the same time pursuant to the Revenue Bonds Proposed Order).   Motions to dismiss the Revenue Bond Complaints and motions for judgment on the pleading are the most appropriate vehicles for resolving threshold questions regarding the existence and scope of any liens held by bondholders on HTA and CCDA revenues.   Moreover, two separate briefing tracks on these threshold issues—Rule 12(b)(6) and 12(c) motions, on the one hand, and Lift Stay Motions, on the other hand—would be unnecessary, wasteful, burdensome and a drain on available resources of the Debtors and the parties filing the Lift Stay Motions, in addition to the Court.   The Oversight Board respectfully submits that parties filing such Lift Stay Motions should be requested to consent to a continuance of the automatic stay until after the Court's rulings on the contemplated dispositive legal motions.   Conversely, and in the absence of such consent, the Oversight Board submits the Court should schedule preliminary hearings limited to determining whether, based on the lien challenges and other material factors, there is a reasonable likelihood the debtors would prevail and there are compelling circumstances warranting the adjournment of the final hearings regarding any HTA or CCDA Lift Stay Motions until such time as the Court rules on any Rule 12(b) and Rule 12(c) motions filed with respect to the Revenue Bond Complaints.   For that reason,

6

the Oversight Board proposes that paragraph 1(d) of the Revenue Bonds Proposed Order be

replaced with the following (and paragraph 1(e) deleted):

> d. Within two days after filing the Lift Stay Motion(s) (other than the PRIFA Lift Stay
> Motion, which is provided for above) and the Revenue Adversary Proceedings (as defined
> below), the parties shall meet and confer regarding whether a consensual resolution can be
> reached on the Lift Stay Motion(s), including the scheduling of a hearing on same and
> extension thereof beyond the time parameters established by 11 U.S.C. § 362.  If no
> consensual resolution can be reached regarding, among other things, the scheduling of a
> hearing(s) on the Lift Stay Motion(s), the parties shall jointly notify the Court of same, and
> the Court shall schedule a preliminary hearing pursuant to 11 U.S.C. § 362(e)(1) to
> determine whether (i) there is a reasonable likelihood the debtors will prevail and (ii) there
> are compelling circumstances to justify (or consent to allow) delaying the final hearing(s)
> through the Court's resolution of the Rule 12(b) and/or Rule 12(c) motions filed in
> connection with the Revenue Adversary Proceedings described herein.  The Court shall
> schedule briefing on any preliminary hearing described herein, such that the resolution of
> the issues at the preliminary hearing is completed in advance of any obligation to otherwise
> oppose the Lift Stay Motion(s) as provided above.

11.    As the Interim Report explains, the Oversight Board intends to initiate new

adversary proceedings that will object to claims asserted by some of the largest holders of revenue

bonds issued by HTA, the Puerto Rico Infrastructure Financing Authority ("PRIFA"), and the

Puerto Rico Convention Center District Authority ("CCDA").[8]  These Revenue Bond Complaints

will initiate litigation that will determine the existence and scope of any liens held by the holders

of revenue bonds.   Pursuant to the Revenue Bonds Proposed Order, the Revenue Bond

Complaints must be filed by January 16, 2020, and any responsive pleadings to those Complaints

must be filed by February 27, 2020.

---

[8] Whether the PRIFA Lift Stay Motion is heard and decided promptly may impact whether the
Oversight Board files three Revenue Bond Complaints or four.  As explained in section I *supra*,
the briefing in the pending PRIFA Lift Stay Motion, as defined by the Court, provides an adequate
vehicle through which to determine the nature and scope of any lien held by Ambac.   If the Court
rules Ambac lacks standing to seek relief with respect to the PRIFA bonds and does not have a
claim as to the PRIFA bonds, that complaint would be moot.   Accordingly, if the Ambac PRIFA
Lift Stay Motion is heard and resolved as soon as possible (and if the Court can do so, prior to
January 16, 2020—the date by which the Revenue Bond Complaints must be filed), then the
Oversight Board may not file a complaint with respect to the PRIFA bonds.

12.     The Interim Report and the Revenue Bonds Proposed Order, however, further contemplate that any amendments to the HTA Lift Stay Motion, as well as any CCDA Lift Stay Motion, must be filed by January 16, 2020 (the same day as new Revenue Bond Complaints are filed), with any hearing on the HTA and CCDA Lift Stay Motions scheduled for late February. In other words, the Revenue Bonds Proposed Order would require the parties to fully brief the HTA and CCDA Lift Stay Motions before or at the same time as responsive pleadings to the Revenue Bond Complaints are filed.   Both the Lift Stay Motions and the Revenue Bond Complaints will require the parties and the Court to address identical issues regarding the existence and scope of any liens held by holders of HTA or CCDA bonds.   In light of this substantial overlap, the Oversight Board submits the Court should schedule a preliminary hearing on the HTA and CCDA Lift Stay Motions at which **only two issues** would be considered and determined: (1) whether there is a reasonable likelihood the debtors will prevail on the Lift Stay Motions, and (2) whether compelling circumstances justify an extension for any final hearing beyond the statutory limit contemplated by § 362 (or any movant has consented to such an extension).   If the Court finds that "compelling circumstances" exist or consent to enlargement has been provided, and there is a reasonable likelihood the Debtor will prevail, the Court should extend the stay on the Lift Stay Motion(s) until after it has resolved any 12(b) or 12(c) motions on the Revenue Bond Complaints.

13.     Aside from whether the Debtors are likely to prevail at any final hearing, it is apparent that "compelling circumstances" will exist.   A court may find "compelling circumstances" justifying extending a final hearing pursuant to § 362(e) where, as here, the court must first adjudicate other issues prior to resolving a stay motion.   *See In re City of San Bernardino, California*, 545 B.R. 14, 17 (C.D. Cal. 2016) (compelling circumstances existed where two issues "would have a substantial impact on the disposition of" a motion to lift the stay

8

and therefore, it was appropriate for the court to delay consideration of the lift stay motion because the court "needed to adjudicate those two issues first").

14.     The entire purpose of the Revenue Bond Complaints is to provide a speedy, efficient mechanism for the parties to determine the dispositive legal issues of the existence and scope of the bondholders' liens.  Although both the HTA and CCDA Lift Stay Motions could resolve these issues, the Revenue Bond Complaints are by far the better vehicle for those determinations to be made.  Federal Rule of Bankruptcy Procedure 7001 specifically provides that adversary proceedings are the appropriate vehicles for determining "validity, priority, or extent of a lien or other interest in property," *i.e.*, the existence and scope of a party's liens.   Fed. R. Bankr. P. 7001(2).  Moreover, as this Court is aware, Lift Stay Motions may be resolved on any number of grounds, including adequate protection, and the creditor parties herein refused to agree to limit the Lift Stay Motions to the key gating issues.   In fact, the twelve factors which this Court must consider when determining whether to lift the stay, set forth in *In re Sonnax*, 907 F.2d 1280 (2d Cir. 1990), do not require the court to address threshold issues of the existence and scope of the lien, although the need for that determination is likely implicit because there is no right to adequate protection if the lien is defective or voidable.  On its own, a serious challenge to the validity of the asserted lien may constitute a reasonable likelihood the debtor will prevail.  The HTA and CCDA Lift Stay Motions, then, would require the parties and the Court to invest significant resources, but may not address the existence and scope of any liens held by HTA and CCDA bondholders. Therefore, the Lift Stay Motions may not materially advance resolution of these Title III Cases.   The need to prioritize and resolve gating issues and avoid wasteful litigation are compelling circumstances that, standing alone, justify sequencing any final hearing on the HTA

9

and CCDA Lift Stay Motions such that it takes place only after the Court first resolves issues concerning the existence and scope of liens.

15.     Sequencing the HTA and the CCDA Lift Stay Motions in such a fashion is also consistent with this Court's previous ruling that the PRIFA Lift Stay Motion should be bifurcated such that the existence and scope of any liens are determined first, and issues regarding adequate protection and the need to lift the stay determined later, if necessary.[9]   It is also consistent with the First Circuit's instruction that, in assessing a lift stay motion, the extent of a party's security interests must be ascertained before determining whether the stay should be lifted.  *See, e.g.*, *Gracia v. FOMB*, No. 18-1463, Document No. 00117494023, at 13 (1st Cir. Sept. 25, 2019) ("We agree with the plaintiffs that, in order to properly weigh the *In re Sonnax* factors, the Title III Court first needed to make at least a preliminary determination of the parties' respective property interests in the disputed funds."); *In re Financial Oversight and Management Board for Puerto Rico*, 899 F.3d 13, 22-23 (1st Cir. 2018) ("[O]ne of the predicate legal issues was whether and to what extent the bondholders possessed property interests.").

16.     Resolving the existence and scope of the bondholders' liens first will also avoid the need for the parties and the Court to consume their scarce resources engaging in the potential pursuit of expensive and time-consuming discovery associated with issues related to adequate protection, while simultaneously litigating key gating issues. As this Court is aware, litigation

---

[9] In connection with the HTA Lift Stay Motion, this is not the first time Assured consented or otherwise agreed to extend the time by which any final hearing could be held.  When Assured agreed to place this proceeding under the auspices of the Stay Order, Assured knowingly consented to and understood that any final hearing on its lift stay motion would be extended far beyond the 30 day requirement. *See Order Granting Urgent Motion to Set Schedule with Respect to Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corporation for Adequate Protection or, in the Alternative, for Relief from the Automatic Stay* (August 28, 2019) [ECF 8567 in Case No. 17 BK 3567-LTS].  Certainly, there are other compelling circumstances that exist under which the Court could and should determine the stay remain in place beyond the statutory limit.

regarding adequate protection and lift stay in PREPA's and ERS's Title III Cases resulted in extensive, time-consuming litigation involving the production of thousands of documents over a period of many months.   Requiring the parties to engage in such discovery when they are already litigating threshold issues relating to lien nature and scope through the Revenue Bond Complaints would be wasteful and unnecessary—particularly when the result of the Revenue Bond Complaints may be that the bondholders have no lien at all (or a narrow lien).   It is for this reason the Revenue Bonds Proposed Order expressly provides discovery should only occur following the Court's ruling on any 12(b) or 12(c) motions.   Simply put, the magnitude of the litigation the parties and the Court must already address is a compelling circumstance justifying postponing consideration of the HTA and CCDA Lift Stay Motions until after the resolution of 12(b) and 12(c) motions filed with respect to the Revenue Bond Complaints.

### III.    The Order Should Clarify the Scope of the Oversight Board's Consent to Submit Issues to the Court's Jurisdiction Pursuant to Section 305.

17.    For the reasons discussed below, the second sub-bullet in paragraph 2 of the Revenue Bonds Proposed Order should be revised to state as follows:

> By filing the Revenue Bond Complaints, the Oversight Board shall be deemed to consent, pursuant to Section 305 of PROMESA, 48 U.S.C. § 2165, to the granting or denial of the relief it requests, which may include rulings on (*i*) the validity of the liens asserted by the Claimants; (*ii*) the scope of the liens asserted by the Claimants; (*iii*) whether the liens asserted by the Claimants have been perfected and the effects of such perfection or lack thereof; (*iv*) whether the liens asserted by the Claimants are avoidable; (*v*) whether the Claimants' asserted interests in any revenues securing the Revenue Bonds has been preempted; (*vi*) whether the Claimants' asserted interests in any revenues securing the Revenue Bonds continues to attach post-petition; (*vii*) whether the Claimants' asserted interests in the liens are special revenues and/or assert non-recourse claims; (*viii*) whether Claimants have standing (including derivative standing) to assert claims against the Commonwealth and/or HTA; (ix) whether Claimants' claims against the Commonwealth and/or HTA assert a cognizable claim under the United States and/or Puerto Rico Constitutions; (*x*) whether Claimants' claims are dischargeable; (*xi*) the relative priority of Claimants' claims against the Commonwealth and/or HTA; and (*xii*) whether Claimants' claims against the Commonwealth and/or HTA are barred pursuant to PROMESA § 407 or any other provision of PROMESA.

The Oversight Board expressly does not consent pursuant to Section 305, to orders interfering with the validity of fiscal plans or budgets certified by the Oversight Board for the Commonwealth and/or its territorial instrumentalities, the validity of Commonwealth statutes or executive orders (including the Moratorium Laws and the Fiscal Compliance Act), and orders interfering with or ordering the turnover of revenue or other property to Claimants or any other party.

18.     It is critical that the Revenue Bonds Proposed Order leave no ambiguity with respect to the limit of the Oversight Board's consent, pursuant to PROMESA § 305, to this Court's jurisdiction.   The Oversight Board does not consent to the resolution of counterclaims (whether denominated as counterclaims or affirmative defenses) requesting interference with assets, revenues, or political or governmental powers.

### IV.     The Order Should Provide Reasonable Limitations on the Page Length and Number of Briefs.

19.     To promote the efficient, streamlined presentation of the issues, and to preserve the resources of the parties and the Court, it is necessary to set reasonable limits on the length and number of briefs the parties to the Revenue Bond Complaints may submit.   Specifically, the Oversight Board proposes paragraph 2 of the Revenue Bonds Proposed Order be revised to include the following additional bullet:

- With respect to any motions contemplated herein, parties opposing or supporting such motions shall be limited to filing a single consolidated opening brief, not to exceed 35 pages.    To the extent any party raises issues that cannot be consolidated into a single opening brief, such party may submit a supplemental brief, not to exceed 7 pages, but only with respect to issues not raised in the single, consolidated brief. Parties filing replies in support of such motions shall likewise be limited to filing a single consolidated reply brief, not to exceed 15 pages.    To the extent any party raises issues that cannot be consolidated into a single reply brief, such party may submit a supplemental reply brief, not to exceed 5 pages, but only with respect to issues not raised in the single, consolidated brief.   This limitation is without prejudice to any party's right to seek leave to file additional pages.

20.     Currently, the Oversight Board anticipates the Revenue Bond Complaints will be filed against at least five Claimants.   Without the above limitation, each Claimant could be

permitted to file briefs of up to 35 pages in support of any motions filed,[10] potentially burdening

the Court and the Oversight Board with responding to 175 pages of briefing—even though the

arguments raised by the Claimants are likely to raise duplicative issues.   While the Revenue

Bonds Proposed Order does require the parties to certify they have taken "reasonable efforts to

avoid duplication," that limitation alone is insufficient to prevent parties from filing multiple briefs

addressing similar or overlapping issues. Requiring the parties to instead submit a single,

consolidated brief will ensure such issues are efficiently presented, and exceptions may be

considered to that general rule.   A court's authority to impose limits on the number or length of

briefs stems from the applicable federal or state rules.   *See, e.g.*, *Watts v. Thompson*, 116 F.3d

220, 224 (7th Cir. 1997) ("Next, taxpayers argue that the supreme court should have waived the

page limits; that it did not is said to be another due process violation. Not surprisingly, we disagree.

*Enforcing page limits and other restrictions on litigants is rather ordinary practice. This court has*

*a page limit which is rather strictly, and cheerfully, enforced.*") (emphasis added); *Simpkins-Bey*

*v. Henderson*, 932 F.2d 975 (10th Cir. 1991) ("Reduced to its pure form, petitioner's argument is

that due process entitles him to file a brief of whatever length he believes is necessary to argue his

case… *Page limitations are common in both state and appellate courts, and they require litigants*

*to structure their briefs to a conforming length.*") (emphasis added).

21.     Similarly, by requiring oppositions to any motion be presented in a single,

consolidated brief also avoids the need for the movants to prepare and file—or the Court to

consider—duplicative reply briefs.   Permitting parties to present issues unique to them in short

supplemental briefs will further assist the parties and the Court in identifying and addressing these

additional issues.   Moreover, a movant's due process rights are preserved, because each party has

---

[10] *See Tenth Amended Notice, Case Management and Administrative Procedures*, paragraph I.E
[ECF No. 8027-1].

a right to seek reasonable enlargements of the limitations set forth herein.   Because the proposed

limitations will balance the parties' due process rights with the need for streamlined, coordinated,

efficient briefing, the Oversight Board urges the Court to amend the Revenue Bonds Proposed

Order to incorporate the reasonable limitations describe above.   Indeed, this Court recently

entered a similar order limiting the briefing to be submitted, for precisely the reasons articulated

here—to relieve the burden on the Court and the parties of reviewing and responding to multiple

briefs raising similar or overlapping issues. *See Order Requiring Supplemental Briefing In*

*Connection With Objection of the Official Committee of Unsecured Creditors to Proof of Claim*

*Number 18449 Filed by U.S. Bank N.A., in its Capacity as Trustee for Non-Recourse PREPA*

*Bonds*, at 2 (November 13, 2019) [ECF 1734 in Case No. 17 BK 4780-LTS].

### TO CONSERVE RESOURCES AND PROMOTE EFFICIENCY, THE ERS SCHEDULING ORDER SHOULD BE MODIFIED TO INCLUDE BRIEFING ON THE MOTIONS BY THE BONDHOLDERS AND THE BANK OF NEW YORK MELLON, AS FISCAL AGENT, FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIMS

22.      As the Interim Report notes, with the Mediation Team's assistance, the active ERS

litigation parties have made strides towards streamlining and simplifying contested matters and

adversary proceedings.   To that end, the Court already has entered (i) the agreed order [ECF No.

8818] approving the procedures for objections to claims by holders of bonds issued by ERS (the

"ERS Procedures Order") and (ii) the agreed scheduling order [ECF No. 8962] to address matters

pending before the Court that relate to the validity of ERS bonds and the scope of liens by the ERS

bondholders (the "ERS Scheduling Order").

23.      The ERS Procedures Order established November 21, 2019 as the deadline for the

assertion of any post-petition claim (including a request for an administrative expense) against

ERS on account of or related to the bonds.   [ECF No. 8818, Ex. 2, ¶ 7.]   On November 21, 2019,

(i) certain ERS bondholders filed the *ERS Bondholders' Motion and Request for Allowance and*

14

*Payment of Post-Petition and Administrative Expense Claims* [ECF No. 9285 in Case No. 17-3283 and ECF No. 707 in Case No. 17-3566], (ii) certain ERS bondholders filed the *ERS Bondholders' Motion and Request for Allowance and Payment of Post-Petition and Administrative Expense Claims* [ECF No. 9294 in Case No. 17-3283 and ECF No. 710 in Case No. 17-3566] (collectively, the "Bondholder Administrative Expense Motions"), (iii) Bank of New York Mellon, as Fiscal Agent, filed a *Joinder in ERS Bondholders' Motion for Allowance of Administrative Expense Claim* [ECF No. 9298 in Case No. 17-3283 and ECF No. 712 in Case No. 17-3566] (the "BNYM Joinder"), and (iv) Bank of New York Mellon, as Fiscal Agent, filed a *Motion for Allowance of Administrative Expense Claims* [ECF No. 9299 in Case No. 17-3283 and ECF No. 713 in Case No. 17-3566] (the "Fiscal Agent Administrative Expense Motion" and, together with the Bondholder Administrative Expense Motions and the BNYM Joinder, the "Administrative Expense Claims Motions").   On November 25, 2019, the Court entered an *Order Scheduling Briefing on Motions of ERS Bondholders and Fiscal Agent for Allowance and Payment of Post-Petition Administrative Expense Claims* [ECF No. 9322 in Case No. 17-3283 and ECF No. 721 in Case No. 17-03566] (the "Administrative Expense Scheduling Order").   According to that Order, opposition to the Bondholder Administrative Expense Motions and the Fiscal Agent Expense Motion must be filed by January 21, 2020 and the motions are to set be heard at the Omnibus Hearing scheduled for January 29, 2020.

24.   Substantial overlap exists between the Administrative Expense Claims Motions and the portions of the Retiree Committee's and FOMB's claim objections that are stayed as reflected in paragraphs 4 and 5 of the ERS Scheduling Order.   Paragraphs 4 and 5 of the ERS Scheduling Order stay Parts I, II, and VI ¶¶ 98-109 of the Retiree Committee's Objection[11] and Parts I.A.ii,

---

[11]  The "Retiree Committee's Objection" means *Omnibus Objection of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, Pursuant to Bankruptcy Code Section*

I.B, II, and III of the FOMB Objection[12] (the issues raised therein, the "Stayed Issues") until the

United States Court of Appeals for the First Circuit enters a decision in Case Nos. 19-1699 and

19-1700 (consolidated for briefing and argument). Consequently, the following issues are thus

stayed:

a) whether ERS bondholders cannot assert claims against the Commonwealth in connection with the ERS bonds (*see* Retiree Committee's Objection Part I);

b) whether ERS bondholders improperly assert post-petition claims against ERS and the Commonwealth (*see id.* Part II);

c) whether employer contributions are not "special revenues" (*see id.* ¶¶ 98-105);

d) whether section 552(b) of the Bankruptcy Code is inapplicable to the ERS bondholders' security interest (*see id.* ¶¶ 106-109);

e) whether, even if the funds remitted by the fiscal agent to ERS were subject to the fiscal agent's security interest when held by ERS, the Commonwealth received those funds free and clear of such security interest (*see* FOMB Objection Part I.A.ii.);

f) whether the fiscal agent has no secured claim against the Commonwealth arising from the cessation of the employers' contributions and the commencement of paygo payments (*see id.* Part I.B.);

g) whether the post-petition legislation did not violate the Contracts Clause of the U.S. or Puerto Rico Constitutions (*see id.* Part II.A.);

h) whether the post-petition legislation did not violate the Takings Clause of the U.S. or Puerto Rico Constitutions (*see id.* Part II.B.);

i) whether the transfer of the pledged property to the Commonwealth did not unjustly enrich the Commonwealth. (*see id.* Part III.A.); and

j) whether the Commonwealth did not violate section 407 of PROMESA in enacting the post-petition legislation (*see id.* Part III.B.).

The allegations contained in the Bondholder Administrative Expense Motions and BNYM Joinder

by reference[13] address many of the same issues. For example, such allegations take positions with

---

[12] *502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of ERS Bonds Against ERS and The Commonwealth* [ECF No. 6482].

[12] The "FOMB Objection" means *Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by The Bank of New York Mellon, as Fiscal Agent (Claim No. 16775)* [ECF No. 7075].

[13] The BNYM Joinder asserts that it "incorporates by reference the factual and legal arguments made by the movants [of the Bondholder Administrative Expense Motions] as if fully set forth herein." BNYM Joinder ¶ 12.

respect to lien existence and survival (*see* Bondholder Administrative Expense Motions ¶ 36),

contracts clause issues (*see id.* ¶ 38), takings clause issues (*see id.* ¶ 37), unjust enrichment issues

(*see id.* ¶¶ 39, 34), and PROMESA section 407 issues (*see id.* ¶ 40). The following chart

illustrates this substantial overlap of issues:

| Stayed Issue | Allegation In Bondholder Administrative Expense Motions |
|---|---|
| No Lien Existence Nor Survival (*see* Retiree Committee's Objection Part VI ¶¶ 98-109; FOMB Objection Parts I.A.ii., I.B.) | "The Post-Petition Legislation transfers the Pledged Property from ERS to the Commonwealth. As decided by the First Circuit, these secured, perfected liens remain on the Pledged Property acquired by the Commonwealth and therefore Movants hold secured claims against the Commonwealth with respect to any Pledged Property in the Commonwealth's possession." (Bondholder Administrative Expense Motions ¶ 36). |
| No Contracts Clause Violations (*see* FOMB Objection Part II.A.) | "The Commonwealth's Violation of the United States and Puerto Rico Contracts Clauses." (Bondholder Administrative Expense Motions ¶ 38). |
| No Takings Clause Violations (*see* FOMB Objection Part II.B.) | "The Commonwealth's Taking of the ERS Bondholders' Property Without Just Compensation." (Bondholder Administrative Expense Motions ¶ 37) |
| No Unjust Enrichment of Commonwealth (*see* FOMB Objection Part III.A.) | "Unjust Enrichment of the Commonwealth." (Bondholder Administrative Expense Motions ¶ 39); "Unjust Enrichment of ERS." (*Id.* ¶ 34) |
| No Violation of PROMESA Section 407 (*see* FOMB Objection Part III.B.) | "The Commonwealth's Violation of Section 407 of PROMESA." (Bondholder Administrative Expense Motions ¶ 40). |

25.    Aside from this overlap of issues, the Fiscal Agent Administrative Expense Motion

is a mere reservation of rights and not intended to be scheduled for hearing at this time. This

motion is intended to preserve the Fiscal Agent's "right to assert, at the appropriate time and only

if necessary" an administrative expense for its fees and expenses. Fiscal Agent Administrative

Expense Motions ¶ 3.   The Fiscal Agent did not set an objection deadline or notice its motion for a hearing but merely reserves its right to do so "if and when it becomes appropriate." *Id.* ¶ 4.   The Fiscal Agent has agreed to not have a determination at this time.

26.     The ERS Scheduling Order provides that the parties "shall meet and confer to discuss the schedule for discovery and briefing" of the Stayed Issues upon entry of the First Circuit's decision in Case Nos. 19-1699 and 19-1700.   ERS Scheduling Order, ¶6.   To avoid premature or duplicative adjudication of overlapping issues and to preserve judicial resources and efficient administration of these Title III cases, the Administrative Expense Claims Motions should be rescheduled in a manner to be determined by the parties under the meet and confer process consistent with paragraph 6 of the ERS Scheduling Order.[14]   Accordingly, the Oversight Board respectfully requests the Court (i) vacate the Administrative Expense Scheduling Order and (ii) modify the ERS Scheduling Order to stay the Administrative Expense Claims Motions consistent with paragraphs 4-5 of the ERS Scheduling Order, and subject any further scheduling of the Administrative Expense Claims Motions to the meet and confer process set forth in paragraph 6 of the ERS Scheduling Order.

---

[14] Counsel for the Fiscal Agent and Bondholders agree with this approach.

Dated:  December 6, 2019
        San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García Benítez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:   (787) 764-8181
Fax:   (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Chantel L. Febus (*pro hac vice*)
Julia A. Alzono (*pro hac vice*)
Laura Stafford (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:   (212) 969-3000
Fax:   (212) 969-2900

Michael A. Firestein (*pro hac vice*)
Lary Alan Rappaport (*pro hac vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suit 2400
Los Angeles, CA 90067-3010
Tel:   (310) 557-2900
Fax:   (310) 557-2193

*Co-Attorneys for the Financial Oversight
and Management Board for Puerto Rico, on
its own behalf and as representative for the
Commonwealth of Puerto Rico, the Puerto
Rico Highways and Transportation
Authority, the Employees Retirement System
for the Government of the Commonwealth of
Puerto Rico, and the Puerto Rico Public
Buildings Authority*

19