UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---

| | | |
|---|---|---|
| *In re* | : | |
| | : | |
| THE FINANCIAL OVERSIGHT AND | : | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : | Title III |
| | : | |
| as representative of | : | |
| | : | Case No. 17-BK-3283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO, | : | |
| *et al.*,* | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |

---

| | | |
|---|---|---|
| *In re* | : | |
| | : | |
| THE FINANCIAL OVERSIGHT AND | : | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : | Title III |
| | : | |
| as representative of | : | |
| | : | Case No. 17-BK-4780 (LTS) |
| PUERTO RICO ELECTRIC POWER | : | |
| AUTHORITY (PREPA), | : | **Court Filing Relates Only to PREPA** |
| | : | |
| Debtor. | : | |

---

**FUEL LINE LENDERS' SUPPLEMENTAL REPLY BRIEF REGARDING
COMMITTEE OBJECTION TO BOND TRUSTEE'S PROOF OF CLAIM**

---

\* The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

Pursuant to this Court's order of November 13, 2019,[1] the Fuel Line Lenders[2] respectfully submit this supplemental reply brief to address discrete points beyond what the Creditors' Committee has addressed.

1. The supplemental briefing ordered by the Court has served to highlight just how extreme a position the Government Parties have taken in seeking approval of their settlement with PREPA's bondholders. Their position is that, despite having *no* fiduciary duties to creditors in general or the Fuel Line Lenders in particular, they alone can pursue and settle any and all objections to the bondholders' claims and liens under Sections 502(a) and 506(a) of the Bankruptcy Code, even to the extent those objections seek to vindicate the Fuel Line Lenders' particular priority position vis-à-vis the bondholders. The Government Parties are wrong.

### A. *In re Thompson*

2. The Government Parties say it is "common sense" that the debtor and the bondholders can resolve the bondholders' claim without interference from third parties. Dkt. No. 1800 at ¶ 1. Not so. In bankruptcy, it is *not* the debtor who is empowered to settle creditor claims. Indeed, that is precisely the holding of *Thompson*: in that case, one of the parties denied the right to object to claims was the debtor herself. The First Circuit made clear that the interests of a chapter 7 trustee and the debtor are "not coextensive," and that the claim objection process must be controlled by the party on whom the Bankruptcy Code imposes the *duty* to protect not the debtor but "all creditors" — the chapter 7 trustee. *Id.* at 1147. Here, the Oversight Board is

---

[1] Dkt. 1734 in Case No. 17-4780 (the "November 13 Order"). Capitalized terms not defined have the same meanings as in the November 13 Order. Except where noted, emphases are added.

[2] The Fuel Line Lenders are Cortland Capital Market Services LLC ("Cortland"), as successor administrative agent under a Credit Agreement, dated May 4, 2012, among PREPA, Scotiabank de Puerto Rico and certain lenders, and SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC (collectively, "Solus"), as lenders under the Scotiabank Credit Agreement and under a Trade Finance Facility Agreement, dated July 20, 2012, between PREPA and Citibank, N.A.

the "representative of *the debtor*" (48 U.S.C. § 2175(b)) and not of an estate or creditors. The Board is completely different from a chapter 7 trustee or a debtor-in possession, both of which have statutory and fiduciary duties to object to claims on behalf of creditors.

3. The Government Parties make extraordinary efforts to try to show that *Thompson* and similar cases do not turn on the existence of fiduciary duties. In addition to being inaccurate in their descriptions of the relevant cases,[3] the Government Parties have taken a fundamentally untenable position. The Government Parties posit that the First Circuit would disregard a statutory provision granting "parties in interest" the right to object to claims solely because of the "need for efficient administration." To the contrary, the Court in *Thompson* determined that because Congress enacted a regime in chapter 7 under which a trustee is appointed to "represent" the interests of creditors as a "fiduciary," the trustee can discharge his or her duty to creditors without the administrative inconvenience of multiple parties objecting to claims. The Court stated in clear terms that the "policy favoring efficient bankruptcy administration" could be achieved by centralizing authority in a chapter 7 trustee precisely because the trustee is the "representative of *all* unsecured creditors" and, unlike the debtor, is "an appropriate arbiter of the 'best interests' of the chapter 7 estate." *Id.* at 1145 (emphasis in original).

### B. The Fuel Line Lenders' Particularized Objections

4. The Government Parties' simple paradigm, under which the only parties that matter are PREPA and the bondholders, also totally ignores the particularized nature of the Fuel Line Lenders' objections to the bondholders' claims. In objecting to the bondholders' claims and liens in Counts II and III of their adversary proceeding, the Fuel Line Lenders are seeking to

---

[3] In their opposition to the Government Parties' motion to dismiss, the Fuel Line Lenders address the cases cited by the Government Parties in detail. Adv. Pro. No. 19-396, Dkt. 62 ¶¶ 79-84.

vindicate their *individual* rights and interests as creditors whose claims are "Current Expenses" under the Trust Agreement. The crux of the Fuel Line Lenders' objection is that, because the bondholders' liens and claims are limited at most to PREPA's "Net Revenues" (revenues *after* "Current Expenses"), the bondholders have no lien or recourse absent payment of Current Expenses, including the Fuel Lines.

5. The Government Parties have *no* interest in enforcing that priority structure for the benefit of the Fuel Lines, as evidenced by recent submissions in which they have reneged on their many representations and agreements that the Fuel Lines are Current Expenses with priority over the bonds. Indeed, from the Government Parties' standpoint, it would be better if the Fuel Lines did *not* have to be paid before the bonds, and could instead be treated as general unsecured debt. Given the particular interests of the Fuel Line Lenders, the Oversight Board could not release the Fuel Line Lenders' objections *even if* it were a creditor fiduciary. The Fuel Line Lenders do not require leave of Court to pursue their particularized objections, just as they and the Committee do not require leave of Court to file objections in a context where there is no fiduciary protecting them.[4] But if any permission were needed, the Fuel Line Lenders respectfully submit that it should be granted.

**C. Other Points**

6. The Government Parties claim that, despite having *lesser* responsibilities to creditors than a bankruptcy trustee, they should be given *greater* authority than a bankruptcy trustee to settle claim objections, because sections 303 and 305 of PROMESA allow them to take

---

[4] *Thompson* itself recognizes that objections predicated on particular rights and interests, such as those of secured creditors, can be pursued by an individual creditor. 965 F.2d at 1147 (citing *In re Parker Montana Co.*, 47 B.R. 419, 421-22 (D. Mont. 1985)). Other cases, such as *In re DVR*, support that conclusion. *See* 582 B.R. 507, 512-13, 522 (Bankr. D. Colo. 2018) (Rule 9019 does not allow settlement of a "non-consenting objector's individual claims and rights").

certain actions without Court permission. That is not at all persuasive. In this case, the Government Parties have asked the Court to approve their settlement in order to insulate payments to bondholders from later challenges, including under section 549 of the Bankruptcy Code or at confirmation. They also seek approval of wide-ranging releases, plus allowance of huge administrative expenses that indisputably require Court approval. The Government Parties cannot seek the benefits of judicial approval of their settlement and yet also claim that the Court should apply different standards because they (wrongly) assert that the approval is not needed.

7. The Government Parties also suggest that Rule 9019 can eliminate the right of a creditor to object to claims even when that creditor has standing to object. But, as shown in other submissions, the trustee's power to *settle* claim objections, like the power to preempt others' objections, is predicated on the trustee's fiduciary responsibilities to creditors.[5] Thus, even if section 502(b)'s requirement that the Court "determine" a claim objection could be satisfied by a Rule 9019 hearing,[6] that is only true in a context where "a trustee or DIP can step in and halt *another party's* claim objection with a settlement." *In re DVR*, 582 B.R. at 512. The power to halt *another party's* claim objection with a settlement has to depend, and does depend, on "the fiduciary duties owed by a trustee to beneficiaries of the bankruptcy estate." *Id*. at 516.

---

[5] The Court is respectfully referred to the Fuel Line Lenders' opposition to the Government Parties' motion to dismiss for further discussion of the relevant cases, including *In re Futterman*. Adv. Pro. No. 19-396, Dkt. 62 ¶¶ 81-84. One point here: In footnote 17 of their December 4 brief, the Government Parties write that the Court in *Heritage* was merely "summarizing" the holding of *In re Kaiser Aluminum*. In fact, as shown by language the Government Parties omitted, *Heritage* fully embraced *Kaiser*. *See In re Heritage Organization, L.L.C.*, 375 B.R. 230, 285 (Bankr. N.D. Tex. 2007) ("The [*Kaiser*] Court rejected these arguments, finding that . . . (iv) the debtor, as a fiduciary under the Code, has the duty to all creditors to resolve claims in the best interest of the estate. *Id.* at 94–95. This Court agrees with the *Kaiser* court's analysis." (underlined portion omitted by Government Parties with ellipses). *Kaiser* itself, moreover, relies heavily on the debtor's "fiduciary responsibilities to all creditors." 339 B.R. at 95.

[6] The statutory language does not support that result. Section 502(b) not only requires the Court to "determine" the amount of a claim following an objection, but also to *disallow* the claim to the extent "such claim is unenforceable against the debtor . . . under any agreement or applicable law." Those matters are simply not addressed on a Rule 9019 motion.

| | |
|---|---|
| Dated: December 6, 2019 | Respectfully submitted, |

| | |
|---|---|
| /s/ Rosamar García-Fontán | /s/ Emil A. Kleinhaus |
| Rosamar García-Fontán | Richard G. Mason (admitted *pro hac vice*) |
| USDC-PR No. 221004 | Amy R. Wolf (admitted *pro hac vice*) |
| MCCONNELL VALDÉS LLC | John F. Lynch (admitted *pro hac vice*) |
| 270 Muñoz Rivera Avenue, Suite 7 | Emil A. Kleinhaus (admitted *pro hac vice*) |
| Hato Rey, Puerto Rico 00918 | Angela K. Herring (admitted *pro hac vice*) |
| P.O. Box 364225 | WACHTELL, LIPTON, ROSEN & KATZ |
| San Juan, Puerto Rico 00936-4225 | 51 West 52nd Street |
| Telephone: (787) 250-5612 | New York, New York 10019 |
| Facsimile: (787) 759-9225 | Telephone: (212) 403-1000 |
| Email: rgf@mcvpr.com | Facsimile: (212) 403-2000 |
| | Email: rgmason@wlrk.com |
| | arwolf@wlrk.com |
| | jlynch@wlrk.com |
| | eakleinhaus@wlrk.com |
| | akherring@wlrk.com |
| | |
| | *Attorneys for Cortland Capital Market Services LLC, as Administrative Agent* |

| | |
|---|---|
| /s/ Jose L. Ramirez-Coll | /s/ Bryce L. Friedman |
| Jose L. Ramirez-Coll | Bryce L. Friedman (admitted *pro hac vice*) |
| USDC-PR No. 221702 | Nicholas Baker (admitted *pro hac vice*) |
| ANTONETTI, MONTALVO | Sarah E. Phillips (admitted *pro hac vice*) |
| & RAMIREZ-COLL | SIMPSON THACHER & BARTLETT LLP |
| P.O. Box 13128 | 425 Lexington Avenue |
| San Juan, Puerto Rico 00908 | New York, New York 10017 |
| Telephone: (787) 977-0303 | Telephone: (212) 455-2000 |
| Facsimile: (787) 977-0323 | Facsimile: (212) 455-2502 |
| Email: jramirez@amrclaw.com | Email: bfriedman@stblaw.com |
| | nbaker@stblaw.com |
| | sarah.phillips@stblaw.com |
| | |
| | *Attorneys for SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC* |