# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re*<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### AMBAC ASSURANCE CORPORATION'S RESPONSE AND RESERVATION OF RIGHTS WITH RESPECT TO THE INTERIM REPORT AND RECOMMENDATION OF THE MEDIATION TEAM

Ambac Assurance Corporation ("Ambac") hereby submits this response and reservation of rights with respect to the *Interim Report and Recommendation of the Mediation Team* (Dkt. No. 9365, the "Interim Report").[2] In support hereof, Ambac respectfully states as follows:

1. Ambac is broadly supportive of the interim case management orders proposed by the Mediation Team in the Interim Report, and appreciates the efforts undertaken by the Mediation Team in developing them to ensure that critical gating issues for these Title III proceedings are

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); ), and (vi) Puerto Rico Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Unless otherwise stated, all capitalized terms used herein are as defined in the Interim Report.

presented to the Court in a timely and efficient manner. Notwithstanding that general support, however, Ambac has concerns regarding three features of the *[Proposed] Interim Case Management Order for Revenue Bonds* (Interim Report Ex. 2, the "Proposed Revenue Bond Order"). These concerns relate to (1) the continued delay of discovery that would result from the Proposed Revenue Bond Order and the proposed extension of the stay related to Ambac's Rum Tax 2004 Motion, (2) the Proposed Revenue Bond Order's reference to a forthcoming motion to consolidate certain to-be-filed adversary proceedings with stay-related motions, and (3) the relationship between the additional schedules included in the Mediation Team's anticipated Amended Report and the schedule set forth in the Proposed Revenue Bond Order. While the latter two topics can be litigated (if necessary) in due course, and are discussed herein solely to apprise the Court of Ambac's concerns and likely future objections, the discovery issue is urgent and calls for modification of the Proposed Revenue Bond Order in substantially the form attached hereto as **Exhibit A**.

2. ***Discovery Matters.*** Ambac is one of the Commonwealth's largest revenue bond creditors, with exposures to bonds issued by PRIFA, HTA, and CCDA totaling approximately $1.35 billion. January 7, 2020 will mark the four-year anniversary of Ambac's (along with other monoline insurers') first lawsuit to remedy the Commonwealth's unlawful diversion of the special revenue streams securing those bonds—a scheme that began in 2015 and continues today. Despite the significant passage of time, and strenuous efforts by Ambac to seek legal redress through a variety of means, Ambac has no better idea today than when it initiated legal action in January 2016 as to what has happened (and is happening) to its collateral—the so-called "clawback funds." Ambac also lacks any meaningful visibility into the financial condition of the Commonwealth, whether the issue is what cash and assets are available to repay creditors, or more localized topics

2

such as the Commonwealth's questionable transfers of hundreds of millions of dollars to politically-favored rum producers while PRIFA, the rightful owner of those monies, is starved of cash to make payments to its bondholders.

3. This lack of transparency appears to be part of a larger strategy of the Oversight Board. At every stage of these Title III cases, whether in response to adversary proceedings, contested matters, or efforts to obtain basic Rule 2004 discovery, the Oversight Board has acted to thwart meaningful inquiry into the treatment and whereabouts of Ambac's collateral, as well as more general facts concerning the financial condition of the Commonwealth.[3] This hostility to informational transparency flies in the face of the very statute that created the Oversight Board, which points to the Commonwealth's "lack of transparency" as one of the factors leading to Puerto Rico's financial emergency and need for federal oversight. *See* 48 U.S.C. § 2194(m).

4. Unfortunately, the Proposed Revenue Bond Order runs the risk of perpetuating this unacceptable state of affairs by, at least implicitly, providing that no discovery will take place until after a ruling on any Rule 12(b) and Rule 12(c) motions—which are not scheduled to even be heard for another six or seven months. (*See* Proposed Revenue Bond Order at 7 ("In conjunction with the Court's ruling on the Rule 12(b) motions to dismiss and the Rule 12(c) motions for judgment on the pleadings . . . the court will set a Rule 16 scheduling conference that will trigger the parties' meeting, reporting and disclosure requirements of Rule 26.").) Ambac objects to this limitation on discovery and respectfully requests that it be stricken in the manner set forth in **Exhibit A** attached hereto—namely, by removing the last bullet point in paragraph 2 and the entirety of paragraph 3 of the Proposed Revenue Bond Order.

---

[3] The Oversight Board recently took its stonewalling to a new level, moving to ***strike in their entirety*** (rather than simply oppose) Ambac's most recent Rule 2004 requests and to ***sanction*** Ambac for even asking for information. (Dkt. No. 9131.)

3

5. At a minimum, even if this Court were to adhere to the proposed discovery stay pending Rule 12 motions on the Revenue Bond Complaints, the Court should make clear that that limitation does not extend to the Lift Stay Motions.[4] As the First Circuit recently reiterated in concluding that a movant had failed to carry its initial burden to demonstrate a *prima facie* legal right to certain monies, a movant asserting a right as a trust beneficiary (as Ambac does) to monies held in a commingled account (as the Oversight Board alleges the clawback monies are) must sufficiently trace the funds, including by application of the "lowest intermediate balance rule." *See Gracia-Gracia*, 939 F.3d at 351 (*quoting Conn. Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 619 (1st Cir. 1988)). That rule will require the Court to consider whether the amount on deposit in the account has "'at all times since the commingling of the funds equaled or exceeded the amount of the trust fund.'" *Id.* This is but one example of a factual prerequisite to a determination by the Court of the revenue bondholders' rights in the pledged collateral. The Oversight Board and AAFAF's continued refusal to provide Ambac with basic information about the clawback monies may preclude Ambac from making a necessary showing and carrying its burden. Factual issues concerning the flow of funds and account balances must be explored ***before*** the Court proceeds to rule on Ambac's and other revenue bond creditors' secured status.

6. Finally, Ambac objects to the proposed extension of the stay of its *Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxes* (Dkt. No. 7328, the "Rum Tax 2004 Motion") beyond December 31, 2019. The Interim Report

---

[4] Ambac appreciates that, in the PRIFA Lift Stay Motion, the Court, before having the benefit of the Oversight Board's arguments in opposition, or the First Circuit's decision in *Gracia-Gracia v. Fin. Oversight and Mgmt. Bd. for Puerto Rico (In re Fin. Oversight and Mgmt. Bd. for Puerto Rico)*, 939 F.3d 340 (1st Cir. 2019), bifurcated the questions of standing and secured status from other matters presented by that motion, and held discovery in abeyance until after the conclusion of the first phase of litigation. (*See* Dkt. No. 7420.) Ambac respectfully disagrees with the Court's ruling and asks the Court, in light of the developments since the Court's initial order, to refrain from extending that holding to other revenue bond stay-related motions. Ambac further reserves the right to seek reconsideration of the Court's ruling in connection with an amended PRIFA Lift Stay Motion.

proposes that the Rum Tax 2004 Motion (among certain other adversary proceedings and contested matters) "remain stayed pending the Court's consideration of the Amended Report." (Interim Report at 9-10.) Ambac objects to the extension of the stay without any motion by a party or any substantive explanation by the Mediation Team as to why the stay should be extended with respect to the Rum Tax 2004 Motion. Respectfully, this feature of the Interim Report is improper. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255–56 (1936) (holding that "the burden of making out the justice and wisdom of a departure from the beaten track lay heavily" on the party seeking a stay); *see also CFTC v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (the "underlying principle clearly is that the right to proceed in court should not be denied except under the most extreme circumstances") (internal quotation marks and citation omitted).

7. The information sought in the Rum Tax 2004 Motion is targeted at understanding the treatment and use of a narrow, but key, revenue stream—the federal rum excise taxes. Whether or not the Court concludes that these monies are PRIFA bondholders' collateral (as Ambac contends they are), as a creditor of the Commonwealth, Ambac is entitled, through Rule 2004, to understand the scope and use of the revenues, including the ongoing flow of "incentive" payments to rum producers and whether they are in fact "stimulative" of the Puerto Rico economy. There is no reason why AAFAF and the Oversight Board should not be providing this information.

8. ***Consolidation of Proceedings and Amendment of Pleadings.*** The Interim Report contemplates that the Oversight Board and/or AAFAF will move to consolidate the Lift Stay Motions with the Revenue Bond Complaints. (Interim Report at 7.) Ambac is unable to assess the propriety of any such consolidation request in the abstract, and appreciates that the Proposed Revenue Bond Order builds in a schedule for motion practice concerning consolidation. That said, it is evident today that such motions to consolidate could, depending on the nature of the relief

5

sought, materially delay the resolution of the substantive issues presented by the Lift Stay Motions. A motion for stay relief must be heard within 30 days absent "compelling circumstances." 11 U.S.C. § 362(e)(1). Yet the Revenue Bond Complaints that the Oversight Board or AAFAF will apparently seek to have consolidated with the Lift Stay Motions will not be heard for 6 months. While Ambac appreciates the interest of judicial efficiency in tackling the enormous slate of litigation, that interest cannot be used to place the Lift Stay Motions in a holding pattern while the Revenue Bond Complaints proceed through Rule 12 motion practice. Accordingly, Ambac reserves the right to object to any consolidation of proceedings at the appropriate time.

9. Ambac does not object to, and in fact favors, the synchronization of the Lift Stay Motions such that overarching issues may be presented in a coordinated fashion to the Court. The Oversight Board's opposition to Ambac's PRIFA Lift Stay Motion (Dkt. No. 7827) makes plain that significant overlapping issues extending far beyond the language of a particular bond document or trust agreement will be advanced, including, among others, whether PROMESA has preempted all Puerto Rico appropriation statutes. Given the Oversight Board's stated intention to object to Ambac filing an amended PRIFA Lift Stay Motion to address standing and guidance from the First Circuit's recent decision in *Gracia-Gracia*, among other things, it is possible that the Lift Stay Motions will not remain on the same schedule. Ambac respectfully requests that the Court clarify that all three Lift Stay Motions be heard together.

10. ***Potential Impact of the Amended Report on Consideration of the Proposed Revenue Bond Order.*** As noted, the Interim Report proposes that the Mediation Team will file an Amended Report concerning the schedule and sequencing of litigation on particular matters not addressed by the Interim Report—the most obvious of which are the Oversight Board's anticipated requests for approval of a disclosure statement and confirmation of a plan of adjustment. (Interim

6

Report at 7-10.) Setting aside whether such a bifurcation is appropriate or justified by developments in plan-related negotiations, this structure means that Ambac's general (albeit qualified) support for the Proposed Revenue Bond Order is necessarily provisional. Ambac believes that the issues anticipated to be presented in the matters addressed in the Proposed Revenue Bond Order are threshold gating issues that must be decided by the Court *before* the Court can consider the propriety of the disclosure statement (and certainly before any confirmation hearing). Ambac therefore reserves its right to object to the Proposed Revenue Bond Order should the Amended Report propose that disclosure statement and/or plan confirmation proceedings commence before the Court will reasonably have had the opportunity to rule on the issues presented by the Lift Stay Motions and Revenue Bond Complaints. Under the Mediation Team's framework, before any such objection to the Amended Report can be heard (currently scheduled for January 29, 2020), Ambac will have been required by the Proposed Revenue Bond Order to file Lift Stay Motions on or before January 16, 2020. Ambac intends to comply with any deadline set by the Court, but, if the Court enters the Proposed Revenue Bond Order without modification of the January 16 deadline, such filings should not be construed as acquiescence to the Proposed Revenue Bond Order should the Amended Report, to be heard at the January omnibus hearing, raise issues that make the Proposed Revenue Bond Order's schedule untenable (whether by virtue of disclosure statement and/or plan-related proceedings or otherwise).

## CONCLUSION

11. For the reasons set forth above, Ambac respectfully requests that the Proposed Revenue Bond Order be modified in substantially the form set forth as **Exhibit A** attached hereto. In addition, Ambac reserves its rights (i) to object to the Oversight Board's anticipated motion to consolidate; (ii) to oppose any efforts by the Oversight Board to strike or otherwise impede

7

Ambac's amendment of its pleadings relating to the PRIFA Lift Stay Motion; and (iii) to object to the schedules proposed, and anticipated to be proposed, in both the Interim and Amended Reports to the extent they contemplate disclosure statement and/or plan-related proceedings before the issues presented in the Revenue Bond Complaints, Lift Stay Motions, and other key litigations have been adjudicated.

Dated: December 6, 2019
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
           scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne
    Atara Miller
    Grant R. Mainland
    (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5770
    Facsimile: (212) 822-5770
    Email: ddunne@milbank.com
           amiller@milbank.com
           gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com