IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al., | (Jointly Administered) |
| Debtors.¹ | |

-----------------------------------------------------------------------x

## MEMORANDUM OF DECISION AND ORDER
## REGARDING COPI'S RULE 2004 REQUEST

### I.  INTRODUCTION

On May 8, 2019, the Cuerpo Organizado de la Policia, Inc. ("COPI") filed a Rule 2004 Request (Dkt. No. 6871) (the "Rule 2004 Request") seeking information about the amount of pay raises due to its member police officers (the "Police Officers"). After producing some information in response, the Commonwealth of Puerto Rico (the "Debtor") filed a *Motion*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Informing Compliance with Rule 2004 Request* (Dkt. No. 8842) (the "Compliance Motion"). Therein, the Debtor contends that it has produced all information in response to the Rule 2004 Request. In contrast, COPI contends that additional information is due. After careful consideration of the parties' arguments, the Rule 2004 Request and Compliance Motion are ALLOWED IN PART and DENIED IN PART, in accordance with this Order. While the Debtor does not need to produce additional information with respect to the individual Police Officers who have settled and signed waivers releasing their claims, the parties must meet and confer to identify which Police Officers have not released their claims against the Debtor. The Debtor must produce the requested Rule 2004 information for those officers who have not released their claims as detailed more fully below.

## II.   STATEMENT OF FACTS

### Law Number 227

COPI represents certain Commonwealth police officers. (See *Opposition to Debtor's Motion Informing Compliance with Rule 2004 Request* (Dkt. No. 9092) (the "Opposition") ¶ 6). Law Number 227 of August 23, 2004 established new pay scales for Puerto Rico police officers, but the Commonwealth never adjusted the officers' salaries as required by the Law. (Opposition ¶ 6). As a result, COPI filed a complaint against the Debtor, the Puerto Rico Police Department, and the Department of Treasury, at the Court of First Instance of the Commonwealth of Puerto Rico, Superior Court, Mayaguez Part, seeking to recover the money owed to the police officers pursuant to Law Number 227. (Id.). On June 16, 2008, the case was consolidated and transferred to the Court of First Instance of the Commonwealth of Puerto Rico, Superior Court, San Juan Part. (Id. ¶ 7) (the "Superior Court Action"). The Superior Court

2

Action was stayed on June 28, 2017 when the Commonwealth filed for bankruptcy. (Id. ¶ 9).

The parties do not dispute that the police officers' salaries were not adjusted pursuant to Law Number 227 when it went into effect on October 1, 2004. (Id. ¶¶ 6, 8, 11). Indeed, on October 30, 2018, the Oversight Board issued its "Certified Fiscal Plan Information," in which it provided that $122 million would be paid to Commonwealth police officers that year, and that a total of $366 million is due for past promotions that were never paid. (Id. at ¶ 11).

<u>The Rule 2004 Request</u>

Each COPI Police Officer filed a proof of claim in the instant Title III case against the Commonwealth, and estimated the amount owed "to the best of their knowledge, since they lacked the necessary information to determine with specificity the correct amounts owed by the Debtor." (Id. at ¶ 21). On May 8, 2019, COPI filed the Rule 2004 Request in which it sought information related to wages owed for the promotions granted in Law Number 227. Specifically, COPI asked for (1) the Pay Scales created by Law Number 227, (2) a brief description of the methodology used to compute the amounts owed to each officer COPI represents, and (3) the Personnel Record for the officers "which indicates years of service with the Agency and rank held by each officer during their years of service." (Id. at ¶ 1).

The Debtor requested several extensions to respond to the Rule 2004 Request. (Id. at ¶ 1). Since COPI agreed to each of the extensions, they were allowed by the Court. (See Dkt. Nos. 7084, 7312, 7534, 7845, 8207, 8383, 8496, 8587, 8709, and 8788). On October 11, 2019, the Debtor produced some documentation for two Police Officers the Debtor contends had still not received payment of owed salaries from the Commonwealth, including a "Transaction History" (Human Resources PACE Sheet) and Accumulative Cards ("Targets Acumulativas"). (Compliance

Motion ¶ 4). On the same date, the Debtor filed its Compliance Motion, indicating that all of the other Police Officers "received payment of salaries owed to them; some of which signed a waiver or accepted the payment as an accord and satisfaction; thus, are not creditors." (Compliance Motion ¶ 3). COPI contends that the Debtor's production was incomplete, both as to the number of officers for whom information should have been produced, and the documents provided. (Opposition ¶ 2).

### The Settlements

Both before the Rule 2004 Request was filed, and while its response to the Rule 2004 Request was outstanding, the Debtor entered into settlement agreements with many of the individual Police Officers. As of May 8, 2019, the date the Rule 2004 Request was filed, fifty-three (53) Police Officers had received payment from the Debtor and executed waivers "which prohibited them from objecting [to] the amount received later on; even if they then became aware that the amount owed to them was more than originally received."[2] (Opposition at ¶ 17). Thirty (30) Police Officers had not yet received payment as of May 8, 2019. (Id. at ¶¶ 17, 24).

On July 19, 2019, the Secretary of the Department of Public Security called for a new pay-out process that was designed to be fairer towards the police officers by changing the waiver that had been used initially, and implementing an appeals process to protect officers' due process. (Id. at ¶ 25). After the appeals process took effect on August 30, 2019, another eighteen (18) Police Officers received payment and did not request an appeal of the amount

---

[2] COPI filed Exhibit 2, the waiver, on December 4, 2019 in Spanish (Dkt. No. 9426) and on December 10, 2019 in English (Dkt. No. 9524). The parties do not dispute that Police Officers who accepted payment prior to July 19, 2019 signed waivers.

they received from the Commonwealth. (Id. at ¶ 26). COPI contends that twelve (12) Police Officers remain who have not received payment from the Debtor. (Id.). COPI argues that these twelve (12) officers "have no knowledge of the correct amount owed and they do not have the required information to make an informed decision when they are called to receive their pay-out check on whether to accept the sum of money or object [to] the amount being offered by the Debtor, as is their right." (Id.). COPI also argues that those officers who accepted payments did so blindly, without full information as to the amount they were due. (Id. at 23). The Debtor argues that only two Police Officers remain who have not received payment from the Commonwealth, and that it has produced all responsive information as to these two Police Officers. (*Response to Movant's Opposition to Debtor's Motion Informing Compliance with Rule 2004 Request*, Dkt. No. 9143 (the "Response") at 6-7).

## Status Report and Nature of the Dispute

In the Compliance Motion, the Debtor provided no information as to whether COPI agreed that the Rule 2004 Request had been satisfied by the Debtor's production. Accordingly, the Court requested a status report as to COPI's position. (See Dkt. No. 8905).

In the Status Report filed by the parties on October 24, 2019, the parties represented that they do, in fact, disagree as to the scope of the Rule 2004 Request, and whether the Debtor fully complied with the Rule 2004 Request. (See Dkt. No. 8950, the "Status Report"). Specifically, the parties disagree as to whether the Debtor must produce information as to all Police Officers who were owed money as of the date of filing of the Rule 2004 Request, including those who have received settlement payments from the Debtor, and in many cases signed releases in exchange for payment, or whether the Debtor is only required to produce

5

Case:17-03283-LTS  Doc#:9530  Filed:12/10/19  Entered:12/10/19 13:53:05  Desc: Main
Document  Page 6 of 12


information as to the Police Officers who have not received payment from the Debtor. (See Status Report ¶¶ 7, 8). The Court thereafter requested briefing on the Compliance Motion (see Dkt. No. 8995), which is now complete.

### III. POSITIONS OF THE PARTIES

The Debtor argues that "it has complied with [the Rule 2004 Request] by producing the information and documentation of the police agents that are currently creditors [of the Commonwealth]." (Response at 3). The Debtor contends that at the time the Rule 2004 Request was filed on May 8, 2019, fifty-five (55) police officers had already received payments from the Commonwealth.[3] (Id.). It is undisputed that these officers each "signed a waiver accepting that the received payment was the total amount of the debt." (Id. at 5). Additional officers have been paid since that date and some of them have signed waivers. Consequently, according to the Debtor, of the sixty-seven (67) Police Officers that COPI represents, only two of those officers are currently creditors of the Commonwealth. (Id. at 7). Thus, the Debtor argues, "by accepting the payment made by Debtor as final, these police agents are no longer creditors of the Debtor entitled to a Rule 2004 examination." (Id. at 5).

The Debtor also argues that COPI is not entitled to Rule 2004 discovery related to the Police Officers who received payment because COPI's purpose in obtaining such discovery is to "challeng[e] the payment proceedings implemented by the [Puerto Rico Police Bureau] in state court for alleged violations of due process [and] a bankruptcy examination is not the proper

---

[3] Debtor cites the number of Police Officers who received payment from the Commonwealth as fifty-five (55) on page 3 of the Response, and fifty-three (53) on page 5 of the Response. As ordered herein, the parties must meet and confer and determine the identity and number of Police Officers who have not received payment from the Commonwealth.

mechanism to achieve the same." (Id. at 5-6).  Moreover, the Debtor argues that "some of these police agents may be appealing the payment and could use the examination to gain benefits in pending litigation outside bankruptcy court." (Id. at 6).

COPI contends that it is a party in interest entitled to conduct a Rule 2004 examination of the Debtor because it "represents police officers who at the time of the filing of this bankruptcy petition were creditors." (Opposition at ¶ 27).  It is COPI's position that there are twelve (12) Police Officers who have not yet received payment from the Debtor, and they do not have sufficient information to make an educated decision as to whether to accept the amount offered. (Id. ¶ 26).   In addition, COPI argues that the Debtor did not produce complete information as to the two Police Officers the Debtor claims are still currently creditors of the Commonwealth (Id. ¶ 2).  Specifically, COPI claims that the Debtor only produced a "Transaction History" and incomplete "Tarjets Acumulativas" rather than the information specifically requested by COPI. (Id.).

Moreover, COPI argues that the fifty-five (55) Police Officers who have already received payment "might still be creditors if it is determined that the amount payed to any one of them was incorrect and less than the true amount owed." (Id. at 27).  COPI objects that "[b]efore each officer was even informed of the amount of money they would receive and said amount owed was computed, they had to sign an absolute waiver that prohibited them from objecting to the amount received later on." (Id. at ¶ 23).  COPI thus argues that both it and the individual officers are parties in interest entitled to Rule 2004 discovery. (Id. ¶ 28).  Moreover, COPI argues that as of the date of the Rule 2004 Motion, the first $122 million of the $360 million allocated to police officers by the Oversight Board to compensate them for past promotions

7

had already been paid out. The discovery sought by COPI is "even more important in order to resolve this matter before the next $122 million disbursement be[gins]." (Id. at ¶ 16).

Last, COPI argues that the document requests are narrowly tailored and will cause no undue hardship to the Debtor, as the Police Department has already calculated the amounts owed to the officers, and the Debtor claims those amounts are correct. (Id. ¶ 28). COPI notes that "the Debtor requested eleven (11) deadline extensions since the filing of [the Rule 2004 Request] alleging that the documents and information requested was taking a long time to gather. However, in the interim, twenty (22) [sic] officers received a check for salaries owed. So, logically, the documents and information requested . . . were readily available and the extension of deadlines . . . were not warranted and were clearly requested in order to prejudice officers represented by Movant." (Id.).

## IV.     ANALYSIS

### A. Rule 2004 Standard

"The decision to grant or deny a request for a Rule 2004 examination is committed to the discretion of the bankruptcy court and requires the determination of closely intertwined factual and legal issues." In re Hammond, 140 B.R. 197, 200 (Bankr. S.D. Ohio 1992); see also In re GHR Energy Corp., 35 B.R. 534, 538 (Bankr. D. Mass. 1983). "Legitimate goals of Rule 2004 examinations include 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" In re Wash. Mut., Inc., 408 B.R. 45, 50 (Bankr. Del. 2009) (citing In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)). "The purpose of a Rule 2004 examination is to discover the nature and extent of the bankruptcy estate in order to distribute

8

the debtor's assets for the benefit of its creditors." In re Bibhu LLC, 2019 WL 171550, at *2 (Bankr. S.D.N.Y. Jan. 10, 2019) (internal citations and quotations omitted).

"In granting a Rule 2004 examination request, the bankruptcy court is required to make a finding of good cause for the examination." In re MF Global Inc., 2013 WL 74580 at *1 (Bankr. S.D.N.Y. Jan. 8, 2013). "'Good cause is established if the one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests.'" In re Hammond, 140 B.R. at 201.

The scope of Rule 2004 examinations is broad, but not limitless. "Rule 2004(a) authorizes the court to 'order the examination of any entity,' and under Rule 2004(b) such examination may extend to 'the acts, conduct, or property or to the liabilities and financial condition of the debtor . . . .'" In re Int'l Fibercom, Inc., 283 B.R. 290, 292 (Bankr. D. Ariz. 2002). Thus, a Rule 2004 request must relate to the financial condition of the debtor, and not to a claim outside of the bankruptcy court that a party may want to pursue. In re MF Global Inc., 2013 WL 74580 at *1 (Bankr. S.D.N.Y. Jan. 8, 2013) ("[Rule 2004] does not permit parties in interest to investigate their private (non-estate) claims.").

B. **Police Officers Who Have Not Received Payment to Date**

The parties do not dispute that COPI is entitled to some discovery as to each Police Officer who has not received payment from the Commonwealth. The parties do dispute, however, the number of officers who have not received payment and the scope of the information that must be produced. The Court hereby ORDERS the parties to meet and confer to determine the identity and number of officers who have not received payment from the Commonwealth. The Court further ORDERS the parties to meet and confer to determine which

9

documents will be produced to satisfy COPI's request for information regarding the Pay Scales created by Law Number 227, the methodology used to compute the amounts owed to each officer COPI represents, and the Personnel Record for the officers "which indicates years of service with the Agency and rank held by each officer during their years of service." (Opposition at ¶ 1). The requests are narrowly and appropriately tailored to provide COPI with relevant information. The documents produced by the Debtor to date do not appear to be fully responsive to COPI's specific requests, and the Debtor has not explained why it is unable to provide COPI with the requested information.

### C. Police Officers Who Have Received Payment and Executed Waivers

The parties dispute whether COPI is entitled to discovery concerning Police Officers who have received payment from the Commonwealth and signed waivers indicating that their proofs of claim have been satisfied and that they will not challenge the accuracy of the amount received since the Rule 2004 Request was filed. The Court concludes that COPI is not entitled to discovery concerning Police Officers who have already received payment from the Debtor and have signed waivers. The Police Officers who received payment and signed releases have no proof of claim pending before the bankruptcy court. Accordingly, discovery concerning these officers is not directed at "discover[ing] the nature of the bankruptcy estate in order to distribute the debtor's assets for the benefit of its creditors." In re Bibhu LLC, 2019 WL 171550 at *2. Rather, discovery would only serve some future "claim [they] may want to pursue," which is not a proper purpose for a Rule 2004 examination which "must relate to the financial condition of the debtor." MF Global Inc., 2013 WL 74580 at *1. Moreover, to the extent these officers are part of the Superior Court Action, Rule 2004 discovery cannot be used to obtain

information pertaining to a pending non-bankruptcy court action. See In re Enron Corp., 281 B.R. 836, 842 (Bankr. S.D.N.Y. Aug. 15, 2002) (Rule 2004 examination not appropriate "where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee.").[4]

### D. Police Officers Who Have Received Payment and Who Have Not Executed Waivers

As to the Police Officers who have received payment from the Debtor but who have not executed waivers, the Court finds that the Debtor must produce the requested discovery concerning these officers, regardless of whether the individual officers have appealed the Debtor's calculation of their payment. Officers who have received payment but who have not agreed that such payment satisfies their proof of claim still have active claims before the Title III court, are still creditors of the Commonwealth, and are parties in interest entitled to a Rule 2004 examination. Moreover, COPI has established good cause for Rule 2004 discovery concerning these Police Officers because the second disbursement of $122 million allocated by the Oversight Board to police officers is forthcoming. The requested discovery will allow the officers to calculate the amounts owed to them and to verify that the amounts paid by the Debtor are correct. Thus, the discovery is reasonably necessary to protect these officers' legitimate interests in this Title III case.

---

[4] Because the Court holds that COPI is not entitled to discovery as to the Police Officers who have signed waivers because they have no claim pending before the Title III Court, the Court will not address COPI's argument that it and the Police Officers are parties in interest entitled to a Rule 2004 examination.

## V.     CONCLUSION

As provided herein, the Debtor must produce information sufficient to satisfy COPI's request for (1) the Pay Scales created by Law Number 227, (2) a brief description of the methodology used to compute the amounts owed to each officer COPI represents, and (3) the Personnel Record for the officers which indicates years of service with the Agency and rank held by each officer during their years of service for each Police Officer who has not received payment from the Commonwealth, and for each Police Officer who has received payment from the Commonwealth but who has not executed a waiver. The parties are ORDERED to meet and confer to determine which documents the Debtor will produce to provide this information. The parties are further ORDERED to meet and confer to determine the number and identity of the Police Officers who have not received payment from the Commonwealth, and those who have received payment but have not executed a waiver. The Debtor is not required to produce any information concerning Police Officers who have received payment from the Commonwealth and executed a waiver. The parties are ORDERED to file a status report within fourteen (14) days detailing the outcome of the meet and confer sessions.

This Order resolves Dkt. Nos. 8842 and 6871.

    SO ORDERED.

                                                                             / s / Judith Gail Dein
                                                                             Judith Gail Dein
                                                                             United States Magistrate Judge

DATED: December 10, 2019