UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| AMBAC ASSURANCE CORPORATION,<br><br>Movants,<br><br>-v-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; and THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>Respondents. | No. 17-BK-3283-LTS<br><br>**Re: ECF Nos. 9022, 9023** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Case:17-03283-LTS Doc#:9531 Filed:12/10/19 Entered:12/10/19 14:29:00 Desc: Main
Document Page 2 of 17

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO
RICO; and THE PUERTO RICO FISCAL
AGENCY AND FINANCIAL ADVISORY
AUTHORITY,

        Cross-Movants,

        -v-

AMBAC ASSURANCE CORPORATION,

        Cross-Respondent.

**REPLY IN SUPPORT OF URGENT MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO AND PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY FOR ORDER DENYING OR STRIKING (A) AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING COMMONWEALTH ASSETS [ECF NO. 9022] AND (B) AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING COMMONWEALTH CASH RESTRICTION ANALYSIS [ECF NO. 9023], AND FOR SANCTIONS**

ii

# **TABLE OF CONTENTS**

Preliminary Statement ................................................................................................................... 1

I.      Ambac Ignores the Court's Authority to Enforce Its Own Orders. ................................... 4

II.     Ambac Violated the Stay Order by Filing the Rule 2004 Motions. .................................... 5

III.    The Court Should Enter Sanctions Against Ambac. ........................................................... 9

Conclusion .................................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**STATUTES**

11 U.S.C. § 105 ................................................................................................................................4

PROMESA § 301(a) .......................................................................................................................4

PROMESA § 315(b) .......................................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 2004 ............................................................................................................ passim

Fed. R. Bankr. P. 9011 ....................................................................................................................9

Fed. R. Civ. P. 12(f) ........................................................................................................................5

Fed. R. Civ. P. 26. ...........................................................................................................................3

To the Honorable United States Magistrate Judge Judith Dein:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), through the Oversight Board as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and collectively with the Oversight Board, "Cross-Movants"), respectfully submit this reply (the "Reply") in support of Cross-Movants' *Urgent Motion to Strike (A) Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets [ECF No. 9022] and (B) Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis [ECF No. 9023] and for Sanctions* [ECF No. 9131] (the "Motion") and in response to Ambac Assurance Corporation's ("Ambac") objection to the Motion [ECF No. 9409] (the "Objection").

## Preliminary Statement

1. The Court provided all parties a preview of the Stay Order[3] it contemplated issuing, and at Ambac's plea the Court added to its Stay Order Ambac's PRIFA Stay Motion. Over one month earlier, the Court had already issued its June 13, 2019 order expressly ruling Ambac's requested discovery regarding the PRIFA Stay Motion would not be allowed prior to the Court's ruling on the threshold issues it had designated for argument on July 24, 2019. *See Order Regarding Argument and Discovery in Connection with Ambac Assurance Corporation's Motion Concerning Application of the Automatic Stay* [ECF No. 7420] (the "PRIFA Order"). Thus,

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.
[3] Capitalized terms not defined herein shall have the same definitions as provided in the Motion.

Ambac's plea was to defer oral argument and its plea was granted. Nevertheless, Ambac has now propounded its Rule 2004 Motions requesting broad discovery circumventing all the stay orders. Indeed, all the discovery Ambac demands directly relates to the matters already stayed, including the disclosure statement and confirmation issues the Mediation Team's recent report proposes to schedule in connection with the Oversight Board's recently proposed disclosure statement and proposed plan of adjustment. Notably, all creditors want discovery, but none has proceeded to defy the stay orders like Ambac.

2. In response, Ambac offers two defenses so remarkable that they are self-refuting – (1) that the Stay Order stays adversary proceedings and stay relief motions, but not Rule 2004 motions seeking discovery on the Commonwealth's "financial condition, its ability to pay its debts, or any other matter implicated in the proposed plan" (Obj. ¶ 8), and (2) in 2018 (before any proposed plan and disclosure statement existed), the Court granted Rule 2004 motions seeking financial information (*id.* ¶ 34). Ambac's defense to being sanctioned for flouting the Court's stay orders is that "bad faith" is a prerequisite for sanctions. *Id.* ¶ 9. But, Ambac's own Supreme Court authority provides "willful disobedience" is sufficient to warrant sanctions (*id.* ¶ 37), and besides, Ambac nowhere explains how its intentional attempted circumventions of the Court's stay orders is not bad faith. To deflect attention from its obvious and willful violations, Ambac accuses the Oversight Board of deploying "*in terrorem*" and "bullying tactics" (*id.* ¶¶ 4, 10), which is also a self-refuting defense. Not only would it be impossible for one litigant to bully the most sophisticated hedge funds, insurance companies, and other financial institutions in the country and their armies of the most powerful law firms in existence, but the Oversight Board's Motion would have no effect whatsoever if it were not meritorious. Moreover, Ambac's multiple offers to stay certain discovery effectively admit its knowing violation of the stay orders. Ambac concedes

2

certain Requests in the Rule 2004 Motions overlap with proceedings expressly stayed in the Stay Order. *Id.* ¶ 27 n.9. And, once again, Ambac admits the purpose of the Rule 2004 Motions is to obtain documents to evaluate the Commonwealth's plan of adjustment, while the stay, and its attendant court-ordered mediation, is still ongoing. *Id.* ¶ 1.

3. Ambac attempts to excuse its conduct through indignant rhetoric and to justify itself under the guise of its purported need to review the requested information to evaluate the Commonwealth Plan, again implicitly admitting how inappropriate its discovery is under Rule 2004. Ambac also attempts a hyper-technical parsing of the individual terms of the Stay Order to try to avoid the inescapable conclusion that its Rule 2004 Motions violate it. All Ambac's "after the fact" excuses, however, are unavailing. Ambac conveniently ignores the current context in which it filed the two blockbuster Rule 2004 Motions: in the midst of a stay in which the Court ordered multiple parties – including Ambac – to comply with the Mediation Team's schedule to work towards resolving substantive and procedural issues relating to the Commonwealth Plan. With these tactics, Ambac seeks to jump the line in front of other creditors and stakeholders who were abiding by the Stay Order in order to obtain virtually unlimited Plan-related discovery outside the parameters of Federal Rule of Civil Procedure 26, *et seq.*, which sets parameters for discovery aimed at contested matters and adversary proceedings. Indeed, Rule 2004 does not even require Ambac to serve other creditors involved in the same disputes and to provide them access. Moreover, Ambac unashamedly sought to have its motions briefed, heard and decided weeks before the stay was scheduled to expire.

4. In its Objection (¶ 4), Ambac contends the Motion is an attempt to "stonewall" creditors from obtaining plan-related discovery. Not so. Since the Court entered the Stay Order, the Oversight Board and AAFAF (along with many creditors) have worked under the Mediation

3

Team Leader's direction to draft or revise various proposed scheduling orders for contested matters and adversary proceedings, and to identify gating issues relating to the Plan and Disclosure Statement. They have also engaged in substantive negotiations regarding the terms of a possible amended plan of adjustment. *See Interim Report and Recommendation of the Mediation Team* [ECF No. 9365] ("Interim Report"), at 3-4. Indeed, as the Interim Report notes in considerable detail, those efforts remain ongoing, with several weeks (at least) of discussions remaining. Thus, contrary to Ambac's contention, by filing the Motion, Cross-Movants (*i.e.*, the Oversight Board and AAFAF) are attempting to preserve the process the Court initiated and ordered. Certainly, there will be a time and place for Plan-related discovery, and perhaps corresponding objections and motion practice. This is assuredly not that time and when the time arrives the discovery will be under the Federal Rules of Civil Procedure, not Bankruptcy Rule 2004.

5. More importantly, the Motion was well-grounded in sound legal principles, including the Court's authority to control its own docket and ensure compliance with its prior orders. Ambac, in contrast, has acted in utter disregard of the Court's unambiguous instructions. In light of these actions, Cross-Movants gave Ambac the opportunity – on multiple occasions – to rectify its mistake and withdraw the Rule 2004 Motions. Ambac repeatedly refused. Obj. ¶¶ 9, 38. Instead, Ambac turns the equities on their head, first by ignoring a clear Court order and then by arguing the Cross-Movants have the burden to stop Ambac's wrongful conduct. These arguments not only warrant denying the Rule 2004 Motions, they also demonstrate Ambac's continued willful violations and bad faith. Under any analysis, the Motion should be granted.

**I.  Ambac Ignores the Court's Authority to Enforce Its Own Orders.**

6. The Objection ignores the legal basis stated in the Motion that a bankruptcy court (or in this case, a Title III Court) may issue any order necessary or appropriate to enforce its own orders or rules. Motion ¶ 26 (citing 11 U.S.C. § 105(a)). Thus, this Court has authority under §

4

105 of the Bankruptcy Code (made applicable here by PROMESA § 301(a)) to deny or strike the Rule 2004 Motions because they were filed in violation of the Stay Order (and the Stay Extension Order).

7. Ambac's citation to Federal Rule of Civil Procedure 12(f) (Obj. ¶ 20 n.6) is misplaced because Cross-Movants are not seeking relief pursuant to that Rule. Courts regularly strike motions – often *sua sponte* – made in violation of an existing court order, as this Court did recently in an adversary proceeding brought within the Commonwealth Title III case. *See Order on Motion to Strike*, Adv. Proc. No. 18-00041-LTS [ECF No. 54]. In that order, this Court correctly observed "District Courts have discretion to strike procedurally improper motions." *Id.* at 5 (quoting *Laboy v. Ontario Cnty., N.Y.*, 56 F. Supp. 3d 255, 259-60 (W.D.N.Y. 2014)).

**II.     Ambac Violated the Stay Order by Filing the Rule 2004 Motions.**

8. By acknowledging, and effectively requesting, that the Rule 2004 Motions should be folded into the Stay Order or added to Appendix I therein, Ambac has conceded the Rule 2004 Motions present issues that should not be substantively addressed until after the stay expires. Nevertheless, Ambac suggests Cross-Movants have the responsibility to move the Court to add the Rule 2004 Motions to the Stay Order, rather than to address Ambac's improper filing through a motion to strike. Obj. ¶¶ 3, 27. Ambac is attempting to shift its burden to comply with the Stay Order to the Oversight Board to prove an entitlement to the Stay Order already in effect. Ambac is wrong for two reasons. First, since the Stay Order only covered matters pending when the Stay Order was entered, Ambac is pretending its Rule 2004 Motions are new matters not covered by the Stay Order. But Ambac knows its motions seek discovery applicable to stayed matters. Second, Ambac ignores that creditors desiring to commence subsequent litigation cooperated in making it part of the stayed matters. Lift stay motions, and entire adversary proceedings in these

5

Title III Cases, have been directed into mediation at the request of the moving/complaining party.[4] Ambac's resort to its hyper-technical arguments demonstrates Ambac understands it was caught red-handed.

9. In Ambac's view, because the Stay Order does not *expressly* prohibit a bondholder from filing a motion pursuant to Bankruptcy Rule 2004 seeking broad discovery on aspects of the plan of adjustment while the stay is in place, Ambac's conduct is excusable.[5] Ambac relies on the fact that the Rule 2004 Motions were not listed in Appendix I to the Stay Order (Obj. ¶ 6). That misses the point. The Rule 2004 Motions are really not separate from the matters subject to the Stay Order, as Ambac well knows. Ambac deployed its Rule 2004 Motions to masquerade as new actions when they relate to discovery on pending matters.

10. Ambac's argument that the Stay Order does not *explicitly* bar a party from filing Plan-related discovery is similarly spurious. *Id.* ¶ 26. The point of the Stay Order was to allow the parties and the Mediation Team to work out, if possible, a schedule for virtually all the hotly contested matters bearing on confirmation, of which the proceedings involving Ambac were clearly included—as well as to be active participants in comprehensive settlement discussions. Allowing plan discovery for Ambac untethered by the Federal Rules of Civil Procedure in the

---

[4] For example, the plaintiffs in a separate adversary proceeding recently sought – in an unopposed motion that they filed – to have their proceeding made subject in all respects to the Stay Order, as if it were listed on Appendix I therein. *See Unopposed Urgent Motion of Plaintiffs Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Financial Guaranty Insurance Company to Set Schedule With Respect to Adversary Proceeding*, Adv. Proc. No. 18-00059-LTS [ECF No. 46].

[5] Ambac notes it had other Rule 2004 motions filed prior to entry of the Stay Order regarding pension-related liabilities that are not barred by the Stay Order. But those motions were in place long before the Court ordered the stay, and the parties were already working to resolve the requests propounded therein. *See* Motion ¶ 9 n.5. Moreover, Ambac has recently attempted to expand the scope of its pension-related Rule 2004 motions to include topics similar to those asserted in the Rule 2004 Motions at issue here; the Oversight Board has taken the position that, just like in this set of Rule 2004 Motions, such an effort is improper given the ongoing stay. *See Fourth Joint Status Report of Movant Ambac Assurance Corporation and Respondents the Financial Oversight and Management Board for Puerto Rico, the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority With Respect to the Pensions Discovery Motions*, Case No. 17-03283-LTS [ECF No. 9496], ¶¶ 12-13.

midst of these conversations would be counterproductive, at best. Notably, Ambac never raised its desire to seek Plan discovery at the time the Stay Order was entered. It was clear to all litigants the whole purpose of the Stay Order was to allocate confirmation discovery to be sequenced and resolved as a product of the mediation.

11. Contrary to Ambac's strained reading of the Stay Order, the Rule 2004 Motions flatly conflict with the purpose of the Stay Order, and violate the express provisions therein. *See* Motion ¶¶ 27-30. As to the former, Ambac repeatedly cites to the transcript of the July 24, 2019 omnibus hearing, at which the Court said the purpose of the stay is to identify "key and gating issues." Obj. ¶¶ 7, 12, 23 (citing July 24, 2019 Hr'g. Tr. at 56:4-5). In Ambac's view, because "key and gating issues" do not apparently include informational requests about the key and gating issues, the Rule 2004 Motions do not violate the Stay Order. This argument mischaracterizes the Court's rationale for entering the Stay Order in two respects. First, Ambac ignores the preamble of the Stay Order, in which the Court explained the purpose of the stay was not just to identify issues but to "avoid piecemeal litigation," "prioritize . . . issues and develop efficient approaches to the resolution of such issues . . . that must be litigated or otherwise resolved to achieve confirmation of a plan of adjustment for the Commonwealth." Stay Order at 1. As Ambac admits, discovery of the Commonwealth's financial condition is critical to confirmation of the Commonwealth Plan. Obj. ¶¶ 1-2. Second, the Court made clear at the July 24 hearing that the "key and gating issues" to be identified and analyzed during the stay included the issues subsequently listed in paragraph B of the Stay Order. *See* July 24, 2019 Hr'g. Tr. at 58:11-59:24. As explained in the Motion (¶¶ 29-32), the Rule 2004 Motions seek information directly related to several of those items.[6]

---

[6] Ambac appears to concede, as argued in the Motion (¶¶ 30-32), that there is significant overlap between the discovery sought through the Rule 2004 Motions and the items listed in paragraph B of the Stay Order. Obj. ¶

7

12. The Rule 2004 Motions violate the express language of the Stay Order, for the reasons explained in the Motion (¶¶ 29-32). Rather than restate each of the provisions of the Stay Order that the Rule 2004 Motions violate, Cross-Movants simply wish to emphasize the mandatory nature of compliance with the Stay Order and with the mediation ordered therein. More particularly, paragraph A.1 of the Stay Order "*require[s]*" the parties – including Ambac – to participate in discussions and communications "facilitated by the Mediation Team Leader to address the concerns identified in" the preamble of the Stay Order.[7] Stay Order ¶ A.1 (emphasis added). Filing a Rule 2004 motion on the same topics covered in the Stay Order – which Ambac concedes the Rule 2004 Motions do – must therefore be a violation of paragraph A.1, if that paragraph is to have any meaning at all. Similarly, paragraph A.3 of the Stay Order states that the Mediation Team Leader "*shall* facilitate" the filing of scheduling orders on, *inter alia*, "the process for considering approval of a disclosure statement and/or confirmation of any such plans of adjustment." *Id.* ¶ A.3 (emphasis added). An orderly process for approval of the Disclosure Statement and Plan confirmation necessarily includes discovery. Indeed, this has been borne out by the views expressed by the Mediation Team in their Interim Report, which provides for no meaningful discovery to take place until dispositive motions on threshold pre-confirmation issues

---

26. Its only defense is that the Stay Order does not explicitly bar parties from filing motions relevant to the litigation and resolution of those issues. *Id.* For the reasons stated above, this is unavailing. The Mediation Team is in the process of determining procedures for the resolution of these very issues; for Ambac to file the Rule 2004 Motions seeking the exact information covered in paragraph B—and to consciously seek to have them briefed and heard before the stay expires—is necessarily upending the procedures currently being evaluated by the Mediation Team.

[7] Ambac's assertion (Obj. ¶ 26 n.8) that Cross-Movants violated mediation confidentiality is completely without foundation. The Motion said nothing more about the mediation process than what has already been made public—that the Cash Restriction Analysis was presented during mediation proceedings. Not only is that obvious from the face of the presentation, which Ambac appended to the Cash Rule 2004 Motion (*see* Cash Rule 2004 Motion, Ex. B at 1), but was also reported in press reports to which Ambac cited in the Cash Rule 2004 Motion (*id.* ¶ 13). Moreover, merely reciting that the parties participated in mediation is not a violation of mediation confidentiality, especially when the non-confidential Stay Order requires the parties to do so. *See* Stay Order ¶ A.1.

8

are addressed. Interim Report, Ex. 1 at 5. Ambac's Rule 2004 Motions seek to undermine that proposal at the outset.

13. Whether the specific discovery sought in the Rule 2004 Motions is proper under Rule 2004 (Obj. ¶ 28) is another truthful irrelevancy. Ambac's argument that Cross-Movants should have "simply fil[ed] objections to the Rule 2004 Motions and request[] they be denied or referred to mediation" (*id.* ¶ 21) misses the point, and assumes the "timing" propriety of the 2004 Motions in the first place. This Motion is not about the appropriateness (or not) of the Rule 2004 Motions or the Requests made therein *under Rule 2004*. Should the Rule 2004 Motions go forward or be refiled when permitted by Court order, the responding parties will comprehensively address the inappropriateness of the Requests, including the point made in the Motion (¶ 34) that they are improper under the pending proceeding rule. But at *this* time, and in *this* Motion, it is merely the procedural impropriety of the Rule 2004 Motions, and Ambac's violation of a pending court order *with which all other parties are complying*, that Cross-Movants are asking the Court to rectify.

**III. The Court Should Enter Sanctions Against Ambac.**

14. Ambac's filing of the Rule 2004 Motions was clearly a willful attempt to violate the Stay Order and the PRIFA Order. It was bad faith too. *See* Motion ¶ 37. But as described above, the positions taken in the Objection clearly brings the point home.[8]

15. As previously noted, Ambac effectively admits the wrongful nature of its conduct when it seeks to blame Cross-Movants for not correcting Ambac's actions and asking that the Rule 2004 Motions be made a subject of the Stay Order or the mediation. By having made that

---

[8] Ambac is correct (Obj. ¶ 36 n.10) that the Motion does not seek sanctions under Fed. R. Bankr. P. 9011, which would require a 21-day waiting period. But the Motion did not have to seek sanctions on that basis; courts have inherent authority to issue sanctions separate and apart from the authority to do so pursuant to Rule 9011. *See* Motion ¶¶ 36-37. Cross-Movants therefore "did not adhere to the requirements of Rule 9011" because it is not seeking sanctions under that Rule. In any case, as is obvious, Ambac would not have withdrawn its Rule 2004 Motions within the 21-day period even if Cross-Movants had sought relief under Rule 9011.

9

suggestion in its Opposition (after Ambac ignored Cross-Movants' demand for it to withdraw the 2004 Motions), Ambac concedes the Rule 2004 Motions are connected with the very adversary proceedings, contested matters and scheduling and procedural issues covered by the Stay Order. Thus, even Ambac knows this is where its discovery requests should have been discussed, if at all, from the very beginning.

16.     Furthermore, Ambac's sharp tactics become abundantly clear when the above behavior is combined with the timing of the Rule 2004 Motions. The Rule 2004 Motions were filed within hours of the issuance of the Court's Extended Stay Order (an order issued over Ambac's objection). Apparently dissatisfied with this result, Ambac took matters into its own hands, and endeavored to ignore the express reach of the Stay Order (and this entire process) by promulgating blockbuster discovery requests that it intended be briefed and heard by the Court weeks before the expiration of the stay. There is no ambiguity about this tactic. To escape this predicament, Ambac claims that it "carefully reviewed the Stay Extension Order and determined that the Rule 2004 Motions were consistent with it, given that the Stay Extension Order by its terms simply maintained the status quo as set forth in the Stay Order." Obj. ¶ 38. This incredulous explanation ignores the multiple violations of the Stay Order described above, and can only be interpreted as Ambac's view that it is somehow not bound by the Stay Order's terms.[9] Simply put, Ambac's own conduct, as further amplified by the arguments made in opposition to the Motion, illustrates the very type of bad faith that this Court should not condone. That said, bad faith is

---

[9]   This explanation also begs the question of why – if it was so clear that the Stay Order did not prohibit Ambac from doing what it did – Ambac did not file its Rule 2004 Motions before the Stay Order was extended. The answer appears obvious, especially given that the Rule 2004 Motions were filed just a few hours after the entry of the Extended Stay Order. Unhappy with the Court's extension of the Stay Order over its objections, Ambac decided to take matters into its own hands. That is precisely the kind of bad faith that warrants sanctions.

10

unnecessary. Ambac's own authority shows willful disobedience is sufficient (*id.* ¶ 37) and Ambac's acts fit that parameter perfectly.

## Conclusion

For these reasons and those articulated in the Motion, Cross-Movants respectfully request the Court strike or deny the Rule 2004 Motions, enter sanctions against Ambac for attorneys' fees, and grant Cross-Movants all other relief as is just and proper.

*[Remainder of page intentionally left blank]*

Dated: December 10, 2019  
San Juan, Puerto Rico

Respectfully submitted,

/s/ Luis C. Marini-Biaggi
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave., Suite 500
San Juan, Puerto Rico 00918
Tel: 787-705-2171
Fax: 787-936-7494
Email: lmarini@mpmlawpr.com
Email: cvelaz@mpmlawpr.com

/s/ Peter Friedman
John J. Rapisardi
Suzzanne Uhland
(admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Peter Friedman
(admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
Carla García Benítez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com
Email: carla.garcia@oneillborges.com

Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Michael T. Mervis (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
Email: sratner@proskauer.com
Email: tmungovan@proskauer
Email: mmervis@proskauer.com

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer