**Estimated Hearing Date**: March 4, 2020 at 9:30 a.m. (Atlantic Standard Time)
**Estimated Objection Deadline**: January 9, 2020 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>    Debtor. | PROMESA<br>Title III<br>Case No. 17-BK-3567-LTS<br><br>**This Application relates only to HTA, and shall be filed in the lead Case No. 17-BK-3283-LTS, and HTA's Title III Case (Case No. 17-BK-3567-LTS)** |

# SUMMARY SHEET TO
## SEVENTH INTERIM FEE APPLICATION OF
## PROSKAUER ROSE LLP FOR COMPENSATION
## FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES
## INCURRED AS ATTORNEYS FOR THE FINANCIAL OVERSIGHT AND
## MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE
## OF THE DEBTOR, THE PUERTO RICO HIGHWAYS & TRANSPORTATION
## AUTHORITY, FOR THE PERIOD JUNE 1, 2019 THROUGH SEPTEMBER 30, 2019

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.).

## Schedule 1

**Summary of Fees and Expenses Paid to Date and the Balance of Fees and
Expenses for which Allowance and Payment is Requested for the Compensation Period**

| | |
|---|---|
| Name of Applicant: | Proskauer Rose LLP ("Proskauer") |
| Retained to Provide Professional Services to: | The Financial Oversight and Management Board for Puerto Rico as Representative of the Debtor Pursuant to PROMESA section 315(b) |
| Period for Which Compensation is Sought: | June 1, 2019 through September 30, 2019 (the "Compensation Period") |
| Amount of Fees Sought excluding Gross-Up Amount: | $491,537.70 |
| Gross-Up Amount[2]: | $44,238.38 |
| Amount of Expense Reimbursement Sought: | $13,238.66 |
| Total Fees and Expenses Sought for Compensation Period including the Gross-Up Amount: | $549,014.74 |

This is a(n)   ____ Monthly   _X_ Interim   __ Final Fee Application

This is the seventh interim fee application filed by Proskauer in the Debtor's Title III case.  The total time expended in connection with the preparation of this interim application is not included herein, as additional time was expended after the Compensation Period.

---

[2]  Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by the Commonwealth legislation (Act 257-2018) starting December 10, 2018 (the "Withholding").  But Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not requested payment of the Gross-Up Amount.

1

**Seventh Interim Compensation Period**
**June 1, 2019 – September 30, 2019**

| Statement and Date Served | Period Covered | Total Fees Incurred | Total Fees Requested (90%) | Expenses Requested | Fees Paid (90%) | Expenses Paid |
|---|---|---|---|---|---|---|
| **Twenty-Seventh** 8/1/2019 | 6/1/19 to 6/30/19 | $101,614.80 | $91,453.32 | $0.00 | $91,453.32 | $0.00 |
| **Twenty-Eighth** 8/28/2019 | 7/1/19 to 7/31/19 | $89,011.80 | $80,110.62 | $7,090.96 | $80,110.62 | $7,090.96 |
| **Twenty-Ninth** 9/17/2019 | 8/1/19 to 8/31/19 | $60,480.30 | $54,432.27 | $341.10 | $54,432.27 | $341.10 |
| **Thirtieth** 10/4/2019 | 9/1/19 to 9/30/19 | $240,430.80 | $216,387.72 | $5,806.60 | $216,387.72 | $5,806.60 |
| **Totals:** | | **$491,537.70** | **$442,383.93** | **13,238.66** | **$442,383.93** | **13,238.66** |

2

Additional information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee:

| | |
|---|---|
| Blended Rate in This Application for All Attorneys | $783.61[3] |
| Blended Rate in This Application for All Timekeepers | $694.95 |
| Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed | $442,383.93 |
| Expenses Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed | $13,238.66 |
| Number of Professionals Included in this Application[4] | 40 |
| Number of Professionals in This Application NOT Included in Staffing Plan Approved by Client[5] | N/A |
| If Applicable, the Difference Between Fees Budgeted and Compensation Sought for This Application Period | $181,316.01[6] |

---

[3]  This rate excludes non-attorneys (*e.g.*, paralegals).

[4]  As used herein, the term "professionals" includes all timekeepers.  The term "paraprofessionals," as used in this Application, only includes non-attorneys.

[5]  As noted in the Staffing Plan for the Compensation Period at Exhibit D-2 in the Application, the number of timekeepers expected to work on the matter during the Compensation Period was 49, and thus the actual number of timekeepers was 9 fewer than anticipated.

[6]  The total fees sought in this Application exceeded the total budgeted fees for the time period by more than 10% (fees sought in the Application are 58.4% above budgeted fees).  It is worth noting that Proskauer billed $181,316.01 over its budgeted fees, which represents a modest overage when viewed from the larger context of HTA's Title III case. Proskauer billed more time than expected due to (1) significantly increased activity at the direction of the Oversight Board, including relating to the drafting of a future proposed plan of adjustment and disclosure statement for HTA, and (2) preparing HTA's opposition to the Assured Guaranty Corporation, Assured Guaranty Municipal Corporation, and National Public Finance Guarantee Corporation's Motion [ECF No. 8536] seeking a court order protecting the movants' interests in the Debtors' certain pledged revenues, or, in the alternative, lifting the automatic stay to permit enforcement of the movants' liens.  Negotiating and drafting the future proposed HTA joint plan of adjustment and related legal analysis and strategy required significant efforts, which are often difficult to anticipate. Given direct client instruction and the importance of the lift stay matter to HTA's Title III Case, it was necessary and beneficial for Proskauer to bill more hours than anticipated.

| Number of Professionals Billing Fewer than 15 Hours to the Case During This Application Period | 27 |
|---|---|
| Any Rates Higher than Those Approved or Disclosed when Retained?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed at retention. | No. As explained in Proskauer's Fifth Interim Application (as defined below), rates increased in accordance with Proskauer's Engagement Letter on January 1, 2019. Rates have not increased during the Compensation Period. |

**Schedule 2**

**Summary of Professional Services Rendered by
Timekeeper for the Period June 1, 2019 through September 30, 2019**

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| *PARTNERS* | | | | |
| Barak, Ehud | BSGR&B[8] – 2010 | $789 | 11.30 | $8,915.70 |
| Bienenstock, Martin J. | BSGR&B  – 1978 | $789 | 8.50 | $6,706.50 |
| Ferrara, Ralph C. | Litigation – 1970 | $789 | 3.50 | $2,761.50 |
| Firestein, Michael A. | Litigation – 1983 | $789 | 74.60 | $58,859.40 |
| Harris, Mark | Litigation – 1992 | $789 | 0.90 | $710.10 |
| Levitan, Jeffrey W. | BSGR&B – 1983 | $789 | 26.70 | $21,066.30 |
| Mungovan, Timothy W. | Litigation – 1994 | $789 | 11.70 | $9,231.30 |
| Piccirillo, Antonio N. | Corporate  – 1996 | $789 | 1.50 | $1,183.50 |
| Possinger, Paul V. | BSGR&B – 1993 | $789 | 1.90 | $1,499.10 |
| Ramachandran, Seetha | Litigation – 2001 | $789 | 13.40 | $10,572.60 |
| Rappaport, Lary Alan | Litigation – 1979 | $789 | 51.10 | $40,317.90 |
| Ratner, Stephen L. | Litigation – 1975 | $789 | 3.50 | $2,761.50 |
| Rosen, Brian S. | BSGR&B – 1983 | $789 | 5.10 | $4,023.90 |
| Triggs, Matthew | Litigation – 1990 | $789 | 6.50 | $5,128.50 |

---

[7]  In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other conditions and apply to matters in and out of bankruptcy cases.  Pursuant to the Appendix B Guidelines, "rate increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion." Appendix B Guidelines ¶ B.2.d, n.2. Annual step increases are awarded by Proskauer in the ordinary course throughout the firm on May 1.  Proskauer's November 25, 2016 engagement letter with the Oversight Board (a copy of which is available on the Oversight Board's website at https://oversightboard.pr.gov/documents/) (the "Engagement Letter") provides that Proskauer's rates are increased on January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and four percent.  As detailed in the Fifth Interim Application, as of January 1, 2019, Proskauer's rates under the Engagement Letter increased from $759 per hour for attorneys and $260 per hour for paraprofessionals to $789 per hour for attorneys and $270 per hour for paraprofessionals. Additionally at that time, with the client's knowledge and permission, Proskauer created a new rate class, e-Discovery Attorney, with the rate of $390 per hour. Rates have not increased during this Compensation Period.

[8]  Business Solutions, Governance, Restructuring & Bankruptcy ("BSGR&B").

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Weise, Steven O. | Corporate – 1974 | $789 | 53.60 | $42,290.40 |
| **Total for Partners:** | | | **273.80** | **$216,028.20** |
| *SENIOR COUNSEL* | | | | |
| Roberts, John E. | Litigation – 2009 | $789 | 3.20 | $2,524.80 |
| Roche, Jennifer L. | Litigation – 2007 | $789 | 47.80 | $37,714.20 |
| **Total for Senior Counsel:** | | | **51.00** | **$40,239.00** |
| *ASSOCIATES* | | | | |
| Assi, Christina | Litigation – 2016 | $789 | 32.30 | $25,484.70 |
| Blackwell, Brooke H. | Corporate – 2018 | $789 | 4.40 | $3,471.60 |
| Carino, Elisa M. | Litigation  – 2019 | $789 | 27.30 | $21,539.70 |
| Chalett, Zachary | Litigation  – 2017 | $789 | 3.80 | $2,998.20 |
| Cushing, Blake R. | Litigation  – 2018 | $789 | 38.50 | $30,376.50 |
| Deming, Adam L. | Litigation – 2018 | $789 | 13.40 | $10,572.60 |
| Desatnik, Daniel S. | BSGR&B – 2016 | $789 | 3.90 | $3,077.10 |
| Friedman, Amelia | Litigation – 2013 | $789 | 16.40 | $12,939.60 |
| Kowalczyk, Lucas | Litigation – 2017 | $789 | 10.50 | $8,284.50 |
| Ma, Steve | BSGR&B – 2014 | $789 | 12.40 | $9,783.60 |
| Omorogbe, Philip | Corporate  – 2019 | $789 | 14.80 | $11,677.20 |
| Stafford, Laura | Litigation – 2012 | $789 | 16.50 | $13,018.50 |
| Stevens, Elliot R. | BSGR&B  – 2018 | $789 | 54.30 | $42,842.70 |
| Zerjal, Maja | BSGR&B – 2012 | $789 | 4.00 | $3,156.00 |
| **Total for Associates:** | | | **252.50** | **$199,222.50** |
| *E-DISCOVERY ATTORNEYS* | | | | |
| Kay, James | Professional Resources – 1978 | $390 | 7.90 | $3,081.00 |
| **Total for e-Discovery Attorneys:** | | | **7.90** | **$3,081.00** |

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| *PARAPROFESSIONALS* | | | | |
| Golinder, Olga A. | Litigation Paralegal – N/A | $270 | 1.20 | $324.00 |
| Henderson, Laurie A. | Professional Resources – N/A | $270 | 0.80 | $216.00 |
| Monforte, Angelo | Litigation Paralegal – N/A | $270 | 3.80 | $1,026.00 |
| Neuberger, Scarlett | BSGR&B Paralegal – N/A | $270 | 8.20 | $2,214.00 |
| Petrov, Natasha | BSGR&B Paralegal – N/A | $270 | 37.40 | $10,098.00 |
| Schaefer, Shealeen E. | Labor & Employment Paralegal – N/A | $270 | 11.90 | $3,213.00 |
| Singer, Tal J. | Litigation Paralegal – N/A | $270 | 14.00 | $3,780.00 |
| Tarrant, Christopher M. | BSGR&B Paralegal – N/A | $270 | 44.80 | $12,096.00 |
| **Totals for Paraprofessionals:** | | | **122.10** | **$32,967.00** |

| PROFESSIONALS | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|
| **Attorneys, Law Clerks, and Paraprofessional Totals:** | **707.30** | **$491,537.70** |

**Schedule 3**

**Summary of Professional Services Rendered by Project
Category for the Period June 1, 2019 through September 30, 2019**

| PROJECT CATEGORY | DESCRIPTION | HOURS | FEES SOUGHT |
|---|---|---|---|
| 201 | Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants | 1.20 | $946.80 |
| 202 | Legal Research | 13.90 | $10,967.10 |
| 204 | Communications with Claimholders | 3.70 | $2,919.30 |
| 205 | Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities | 1.50 | $1,183.50 |
| 206 | Documents Filed on Behalf of the Board | 102.50 | $80,042.10 |
| 207 | Non-Board Court Filings | 26.00 | $20,514.00 |
| 208 | Stay Matters | 84.90 | $66,986.10 |
| 210 | Analysis and Strategy | 237.40 | $185,193.90 |
| 211 | Non-Working Travel Time | 4.50 | $3,550.50 |
| 212 | General Administration | 74.10 | $20,007.00 |
| 215 | Plan of Adjustment and Disclosure Statement | 28.80 | $21,685.80 |
| 218 | Employment and Fee Applications | 56.70 | $20,654.70 |
| 219 | Appeal | 72.10 | $56,886.90 |
| | **Total for All Project Categories:** | **707.30** | **$491,537.70** |

**Schedule 4**

**Summary of Actual and Necessary Expenses Incurred
for the Period June 1, 2019 through September 30, 2019**

| EXPENSE CATEGORY | AMOUNTS |
|---|---:|
| Lexis/Westlaw | $9,778.00 |
| Other Database Research | $0.60 |
| Out Of Town Meals | $2.33 |
| Out Of Town Transportation | $33.47 |
| Reproduction | $50.20 |
| Taxi, Carfare, Mileage And Parking | $44.13 |
| Translation Service | $3,329.93 |
| **Total:** | **$13,238.66** |

9

**Schedule 5**

**Blended Rate Chart**

| CATEGORY OF TIMEKEEPER | BLENDED HOURLY RATE | |
|---|---|---|
| | BILLED<br><br>Domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the application period, for preceding year, *excluding bankruptcy* | BILLED<br><br>In this fee application[9] |
| Partners | $1,187 | $789.00 |
| Senior Counsel | $1,000 | $789.00 |
| Associates (7 or more years since first admission) | $895 | $789.00 |
| Associates (4-6 years since first admission) | $877 | $789.00 |
| Associates (1-3 years since first admission) | $704 | $789.00 |
| e-Discovery Attorneys | $711 | $390.00 |
| Law Clerks | $541 | N/A |
| Paraprofessionals | $329 | $270.00 |
| **All Timekeepers Aggregated:** | **$877** | **$694.95** |

---

[9]  As detailed in the Fifth Interim Application, as of January 1, 2019, Proskauer's rates under the Engagement Letter increased from $759 to $789 per hour for attorneys, and from $260 to $270 per hour for paraprofessionals. Additionally at that time, with the client's knowledge and permission, Proskauer created a new rate class, e-Discovery Attorney, with the rate of $390 per hour. Rates have not increased during this Compensation Period.

**Estimated Hearing Date**: March 4, 2020 at 9:30 a.m. (Atlantic Standard Time)
**Estimated Objection Deadline**: January 9, 2020 at 4:00 p.m. (Atlantic Standard Time)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>    Debtor. | PROMESA<br>Title III<br>Case No. 17-BK-3567-LTS<br><br>**This Application relates only to HTA, and shall be filed in the lead Case No. 17-BK-3283-LTS, and HTA's Title III Case (Case No. 17-BK-3567-LTS)** |

## SEVENTH INTERIM FEE APPLICATION
## OF PROSKAUER ROSE LLP FOR COMPENSATION
## FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES
## INCURRED AS ATTORNEYS FOR THE FINANCIAL OVERSIGHT AND
## MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE
## OF THE DEBTOR, THE PUERTO RICO HIGHWAYS & TRANSPORTATION
## AUTHORITY, FOR THE PERIOD JUNE 1, 2019 THROUGH SEPTEMBER 30, 2019

Proskauer Rose LLP ("Proskauer"), attorneys for the Financial Oversight and

Management Board for Puerto Rico (the "Oversight Board" or "FOMB") as representative of the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.).

Puerto Rico Highways & Transportation Authority (the "Debtor" or "HTA") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] hereby submits this seventh interim application (the "Application"),[3] pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4] Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee, 28 CFR Part 58, Appendix B (the "Guidelines"), and in accordance with this Court's *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Case No. 17 BK 3283-LTS, ECF No. 3269] (the "Interim Compensation Order"), for (a) allowance of interim compensation for professional services performed by Proskauer for the period commencing June 1, 2019 through and including September 30, 2019 (the "Compensation Period") in the amount of **$535,776.08**, which is comprised of (i) fees for professional services rendered in the amount of $491,537.70, and (ii) the Gross-Up Amount in the amount of $44,238.38;[5] and (b) reimbursement of its actual and

---

[2]   PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]   The Application solely pertains to fees and expenses incurred with respect to the Debtor's Title III Case and does not address fees or expenses incurred with respect to other services performed for the Oversight Board (a) on behalf of other Title III debtors, or (b) outside the Title III process.

[4]   The Bankruptcy Rules are made applicable to the Debtor's Title III Case by PROMESA section 310.

[5]   Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not requested payment of the Gross-Up Amount.

necessary expenses in the amount of **$13,238.66** incurred during the Compensation Period.   In

support of the Application, Proskauer respectfully avers as follows:[6]

## Jurisdiction

1.       The United States District Court for the District of Puerto Rico (the "Court") has

subject matter jurisdiction over this Application pursuant to PROMESA section 306(a).

2.       Venue is proper in this district pursuant to PROMESA section 307(a).

3.       The statutory predicates for the relief requested herein are PROMESA sections 316

and 317.

## Background

4.       On June 30, 2016, the Oversight Board was established under PROMESA section

101(b).   On August 31, 2016, President Obama appointed the Oversight Board's seven voting

members.

5.       Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this

subchapter is the representative of the debtor" and "may take any action necessary on behalf of

the debtor to prosecute the case of the debtor, including filing a petition under section [304] of

[PROMESA] . . . or otherwise generally submitting filings in relation to the case with the court."

PROMESA § 315(a), (b).

---

[6] PROMESA § 317 provides "[a] debtor's attorney . . . may apply to the court not more than once every 120 days after
an order for relief in a case under this subchapter, or more often if the court permits, for such compensation for
services rendered before the date of such an application or reimbursement for expenses incurred before such date as is
provided under section 2176 of this title."   PROMESA § 317.

Proskauer filed its Sixth Interim Fee Application for the period February 1, 2019 through May 31, 2019 on
September 20, 2019, 91 days before this Application.   While Proskauer files this Application less than 120 days after
it filed its Sixth Fee Application, Proskauer believes this Application complies with PROMESA § 317, as it seeks
compensation for fees and reimbursement for expenses for the 120 day period subsequent to the Sixth Interim Fee
Application, which was filed late with the consent of the Fee Examiner.   The 120-day period in PROMESA § 317
refers to the interim period for which fees are sought.   Thus this Application complies with PROMESA § 317
because the Application concerns the period between June 1, 2019 through September 30, 2019, the interim period
following the period for Proskauer's Sixth Fee Interim Application.   In the alternative, Proskauer seeks leave from
the Court to file this Application now, in accordance with PROMESA § 317.   Notably, no benefit would abound to
any party if Proskauer was required to wait 120 days from the filing of the Sixth Interim Fee Application.

6.       On September 30, 2016, the Oversight Board designated the Debtor as a "covered entity" under PROMESA section 101(d).

7.       On November 25, 2016, the Oversight Board retained Proskauer at substantial discounts to its normal hourly rates, as shown by the Engagement Letter and by **Schedule 5** above.

8.       On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Debtor's Title III Case"). Pursuant to PROMESA section 315(b), the Oversight Board is the Debtor's representative in the Debtor's Title III Case.

9.       Background information regarding the Debtor and the commencement of the Debtor's Title III Case is contained in the *Notice of Filing of Statement of Oversight Board in Connection with PROMESA Title III Petition* [Case No. 17 BK 3283-LTS, ECF No. 1], attached to the Commonwealth of Puerto Rico's Title III petition.

10.      On December 15, 2017, Proskauer filed the *First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Highways and Transportation Authority, for the Period May 21, 2017 through September 30, 2017* [Case No. 17 BK 3283-LTS, ECF No. 2066] (the "First Interim Application").

11.      On April 9, 2018, Proskauer filed the *Second Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Highways and Transportation Authority, for the Period October 1,*

4

*2017 through January 31, 2018* [Case No. 17 BK 3283-LTS, ECF No. 2874] (the "<u>Second Interim Application</u>").

12.       On July 16, 2018, Proskauer filed the *Third Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Highways and Transportation Authority, for the Period February 1, 2018 through May 31, 2018* [Case No. 17 BK 3283-LTS, ECF No. 3576] (the "<u>Third Interim Application</u>").

13.       On November 16, 2018, Proskauer filed the *Fourth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Highways and Transportation Authority, for the Period June 1, 2018 through September 30, 2018* [Case No. 17 BK 3283-LTS, ECF No. 4284] (the "<u>Fourth Interim Application</u>").

14.       On May 21, 2019, Proskauer filed the *Fifth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Highways and Transportation Authority, for the Period October 1, 2018 through January 31, 2019* [Case No. 17 BK 3283-LTS, ECF No. 7047] (the "<u>Fifth Interim Application</u>").

15.       On September 20, 2019, Proskauer filed the *Sixth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Highways and Transportation Authority, for the*

*Period February 1, 2019 through May 31, 2019* [Case No. 17 BK 3283-LTS, ECF No. 8739] (the

"Sixth Interim Application").

16.     On August 1, 2019, Proskauer served on the Notice Parties (as defined in the

Interim Compensation Order) its twenty-seventh monthly fee statement for the period June 1,

2019 through June 30, 2019.  On August 28, 2019, Proskauer served on the Notice Parties its

twenty-eighth monthly fee statement for the period July 1, 2019 through July 31, 2019.  On

September 17, 2019, Proskauer served on the Notice Parties its twenty-ninth monthly fee

statement for the period August 1, 2019 through August 31, 2019.  On October 4, 2019, Proskauer

served on the Notice Parties its thirtieth monthly fee statement for the period September 1, 2019

through September 30, 2019.

17.     In accordance with the Interim Compensation Order and as reflected in the

foregoing summary, Proskauer has requested an aggregate payment of **$455,622.59** (payment of

ninety percent (90%) of the compensation sought and reimbursement of one-hundred percent

(100%) of expenses incurred) and has received **$455,622.59** with respect to fee statements filed

during the Compensation Period.

### **Summary of Services Rendered by Proskauer During the Compensation Period**

18.     The instant Application is Proskauer's seventh application for interim

compensation in the Debtor's Title III Case.  To make the review of Proskauer's fee applications

in all the pending Title III cases more efficient for the Court and other readers, paragraphs 19

through 22 of the instant Application, and the corresponding paragraphs in each of Proskauer's

seventh interim fee applications in the other pending Title III cases, are identical and cover the

principal activities in all the Title III cases.

19.     Since the commencement of these Title III cases, Proskauer has achieved

significant progress on the behalf of the Oversight Board.  As a brief overview:

6

- In the first interim period, Proskauer transitioned the Commonwealth and certain of its instrumentalities to Title III, and, among other things, proposed and negotiated a mechanism to resolve the Commonwealth-COFINA dispute over which entity owns billions of dollars of sales and use tax revenues, and successfully defended against attempts by creditors to (a) seize the toll revenues HTA needed to maintain the Commonwealth's transportation system and (b) seize PREPA and its revenues by putting PREPA in the hands of a receiver.

- In the second interim period, in the face of the devastation wrought by Hurricanes Irma and Maria, Proskauer worked with the Oversight Board's officers and other professionals to assess the situation, take actions to ensure the provision of basic services, and reformulate restructuring initiatives to reflect the changing economic landscape. Proskauer also successfully defended against numerous creditor efforts to enjoin the Oversight Board from proceeding toward a plan of adjustment based on the certified fiscal plan and to seize many revenue streams.

- In the third interim period, Proskauer secured emergency authorization for the Commonwealth to lend $300 million to PREPA on a superpriority basis, despite significant opposition by creditor groups, and continued its leading role in assisting the Oversight Board with the development, certification, and defense of revised fiscal plans that provide the blueprint for Puerto Rico's future prosperity and fiscal responsibility. Proskauer also successfully defended against numerous creditor efforts to delay or frustrate the debtors' restructurings during these periods.

- In the fourth interim period, Proskauer continued forging paths to restructure Puerto Rico's debt, representing the Oversight Board as the Administrative Supervisor of the Government Development Bank for Puerto Rico's ("GDB") Title VI qualifying modification, representing the Oversight Board in negotiations seeking to restructure a major portion of PREPA's debt, and continuing to work through negotiations related to (and eventually resolving) the Commonwealth-COFINA dispute. COFINA and GDB alone account for over $20 billion of Puerto Rico's $74 billion in bond debt, and their successful restructuring are significant building blocks for the Oversight Board to accomplish its overall mandate to achieve fiscal responsibility and access to capital markets for Puerto Rico. Proskauer also vigorously and successfully protected the Oversight Board's fiscal plan and budgetary powers in adversary proceedings commenced by the Governor and Legislature challenging the Oversight Board's authority, among other critical efforts in litigation during the fourth interim period.

- In the fifth interim period, Proskauer continued its leading role in assisting the Oversight Board with the development and certification of revised fiscal plans. Proskauer also represented the Oversight Board in PREPA's Title III case, leading the defense against a renewed motion seeking to lift the stay to allow for the appointment of a receiver for PREPA, and dedicating significant effort to forward negotiations with a substantial number of PREPA bondholders to draft and finalize a definitive restructuring support agreement.  Proskauer also drafted appellate briefs and presented oral argument before the United States Court of Appeals for the First Circuit concerning creditors' appeals seeking to reverse decisions protecting HTA and PREPA from creditor attempts to seize their revenues.

7

Proskauer also worked with several of the Title III Debtors and their related advisors in opposing a multitude of motions seeking to lift the automatic stay and otherwise hamper the debtors' restructuring. Lastly, Proskauer counseled the Oversight Board as it engaged with the Commonwealth's various creditors, stakeholders and professionals in mediations and negotiations related to the Commonwealth's restructuring, and has devoted significant time to research and develop strategies to ensure the debtors exit Title III as soon as possible.

- In the sixth interim period, Proskauer continued its role to defend against the (now former) Governor's appeal to the First Circuit in *Rosello-Nevares v. FOMB*, Case No. 18-AP-80, and researched and prepared for new litigation to nullify Commonwealth legislation enacted in violation of PROMESA. Proskauer also negotiated new restructuring agreements with various creditor groups and unions, and drafted major portions of the proposed plan of adjustment and proposed disclosure statement for the Commonwealth, ERS, and PBA. In the Commonwealth's Title III case, among many other achievements, Proskauer counseled the Oversight Board through many statutory and constitutional issues related to the development and certification of a fiscal plan and various budgets for the Commonwealth and its instrumentalities. Moreover, Proskauer advised the Oversight Board as it brought, jointly with the UCC, a challenge to alleged liens asserted by holders of general obligation bonds of the Commonwealth. Additionally, Proskauer counseled the Oversight Board as it brought, together with the UCC, a challenge to alleged liens asserted by holders of general obligation bonds of the Commonwealth.  Within the ERS Title III case, Proskauer defended against efforts by secured creditors to lift the automatic stay to seize its revenues. In the PREPA Title III case, Proskauer made headway in defending against a renewed motion created by monoline insurers of PREPA bonds to lift PREPA's stay to appoint a receiver, while negotiation with some of the moving parties at the same time. In addition, Proskauer negotiated and entered into the Definitive Restructuring Support Agreement (the "PREPA RSA") for PREPA with a majority of PREPA's bondholders, and pursued court approval of certain settlements contained in the PREPA RSA by filing a motion under Bankruptcy Rule 9019 and two supplemental memoranda of law in support of it.  In the HTA Title III case, among other matters, Proskauer represented the Oversight Board in its joint filing with the UCC of a challenge to the nature, extent and scope of purported liens securing HTA bondholders' claims.

20.    In the instant Compensation Period, Proskauer serviced many new Oversight Board projects, while maintaining momentum gained from the preceding periods.  Chief among these, Proskauer counseled the Oversight Board in its pivotal role negotiating and drafting a proposed Title III joint plan of adjustment (the "Plan") for the Commonwealth, ERS and the Puerto Rico Public Buildings Authority ("PBA") and a proposed disclosure statement (the "Disclosure Statement") explaining the Plan and pertinent facts concerning the debtors affected

8

by the Plan.  Concurrently with the Plan and Disclosure Statement, Proskauer represented the
Oversight Board as it commenced a Title III case for PBA, preparing and filing PBA's petition
and other first day pleadings and seamlessly transitioning PBA into Title III.  The Plan and
Disclosure Statement address over $35 billion of debt and other claims against these Debtors, and
more than $50 billion of pension liabilities, and brings Puerto Rico closer its emergence from
Title III.  Additionally, Proskauer continued to defend the Oversight Board and Title III Debtors'
interests in numerous, multi-billion-dollar adversary proceedings, contested matters and appeals
brought by various bondholders, monoline insurers, unions and other parties in interest.  Many of
these challenges are of first impression, and involve, among other things, the constitutionality of
various PROMESA provisions, the correct interpretation of various sections of PROMESA and
the Bankruptcy Code, and the validity of certain creditors' asserted liens.  Furthermore, Proskauer
also guided the Oversight Board as it exercised its powers and responsibilities certifying fiscal
plans and budgets, and issuing restructuring certifications.

21.    Throughout the Compensation Period, Proskauer continued to object to defective
claims against the debtors, provided on-going legal assistance to the Oversight Board, and
negotiated with various creditors, stakeholders, government parties and other parties in interest in
furtherance of each of the Debtors' respective restructurings, and, ultimately, helped the
Oversight Board progress toward its PROMESA prescribed mandate of returning the
Commonwealth to fiscal responsibility and access to capital markets.  Some of Proskauer's
notable undertakings during this Compensation Period include:

- Certification of New Fiscal Plans and Budgets.  Proskauer continued to counsel the
  Oversight Board as it, along with its financial advisors, rigorously analyzed data
  and assessed the economic and structural impact of proposed fiscal plans and
  budgets.  Throughout, Proskauer provided on-going assistance with emergent legal
  issues, and helped with the drafting of the new fiscal plans and budgets to achieve
  PROMESA's mandate to restore Puerto Rico to fiscal responsibility and access to
  capital markets.

- <u>Claim Objections</u>. Pursuant to the Bar Date Orders [ECF Nos. 2521 and 3160], approximately 171,374 claims were filed against the Debtors and logged by Prime Clerk. Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors. Of the proofs of claim filed, over 3,000 claims were filed in relation to COFINA, totaling approximately $10.1 trillion in asserted claims; approximately 55,000 claims were filed in relation to, or reclassified to be asserted against, ERS, totaling approximately $10.2 trillion in asserted claims; over 2,000 claims were filed in relation to HTA, totaling approximately $83.1 billion in asserted claims; and approximately 109,000 claims were filed against the Commonwealth, totaling approximately $33.2 trillion in asserted claims. Upon review and further assessment by Proskauer, in consultation with other advisors to the Oversight Board, it became clear that many of these claims need not have been filed at all, or suffered from some other flaw, such as improperly identifying one of the Debtors, or being duplicative of other proofs of claim. In connection with these claims, Proskauer, working with other professionals, filed a total of 40 omnibus objections and 17 individual objections between June 1, 2019 and September 30, 2019. Proskauer spent a significant amount of time and effort preparing and filing these objections, as well as reviewing responses to various objections, negotiating resolutions to the objections with creditors, preparing and filing replies in support of their objections, and attending several related hearings. As a result of Proskauer's efforts, between June 1, 2019 and September 30, 2019, thousands of claims were fully or partially expunged.

- <u>Joint Title III Plan of Adjustment and Disclosure Statement, and PBA Title III Filing</u>. Proskauer devoted significant manpower counseling the Oversight Board through its critical role in negotiating and drafting the Plan, Case No. 17-3283, ECF No. 8765, to restructure $35 billion of debt and other claims against the Commonwealth, the PBA, and ERS, and more than $50 billion of pension liabilities. Proskauer devoted a substantial and well-measured amount of resources and hours formulating, researching, drafting, negotiating, and filing (i) a proposed disclosure statement, and (ii) a proposed plan of adjustment. In addition, Proskauer counseled the Oversight Board as it commenced an additional Title III case for a new debtor, PBA, as contemplated by the Plan [Case No. 19-5523].

  The Plan is the culmination of the agreements the Oversight Board reached with several major creditor groups on the treatments of their claims. At the time of the filing of the plan of adjustment, three stakeholder groups supported the plan including (a) the Official Committee of Retired Employees, whose constituency is owed over $50 billion for their pension claims, (b) the American Federation of State, County, and Municipal Employees, which represents more than 10,900 current employees of the Commonwealth and its instrumentalities, and (c) a bondholder group owning (I) bonds issued by PBA ("<u>PBA Bondholders</u>" or "<u>PBA Bonds</u>") and guaranteed by the Commonwealth, and (II) GO bonds issued by the Commonwealth. The group holding PBA Bonds and GO bonds issued by the Commonwealth agreed on a framework for a plan of adjustment. Critically, the agreement includes the compromise and settlement of a key dispute between the Commonwealth and PBA regarding the characterization of leases between the two entities, and the optional settlement of certain challenges to GO bonds. Support for

10

this agreement includes holders of approximately 54% of Vintage PBA Bond Claims, and approximately 11% of GO Bond Claims.

Given the various, complex issues surrounding the treatment of various claims, and the myriad of adversary actions filed in the Title III cases, a substantial amount of time was required to draft the Disclosure Statement, Case No. 17-3283, ECF No. 8766, to ensure it provided adequate information pursuant to Bankruptcy Code section 1125(b). The Disclosure Statement includes, among other things, an overview of the Commonwealth, PBA, and ERS; a summary of significant events leading to the commencement of the Title III cases; an overview of significant events during the Title III cases; summaries of material adversary proceedings filed in the Title III cases; comprehensive best interest test analyses, a summary of the Plan; certain risk factors to be considered; and material income tax considerations.

- ERS Lift Stay. Proskauer continued to conduct research and analyses, as well as draft objections, responses and discovery requests in connection with the ERS Lift Stay Motion, *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* [Case No. 17-3566, ECF No. 289], and related motions to compel and discovery motions. Additionally, Proskauer (i) communicated with counsel and other advisors to AAFAF on multiple adequate protection related discovery issues and developed further discovery strategy; (ii) communicated with bondholders' counsel on multiple discovery related issues, including motions to compel production of documents, confidentiality and privilege, search terms for document collection and review, and depositions scope and scheduling, (iii) prepared for and participated in meet-and-confer sessions with bondholders' counsel on multiple adequate protection related discovery issues as well as attended various hearings in connection with discovery issues, and (iv) expended significant hours preparing for and conducting depositions, reviewing exports reports and preparing privilege logs.

- First Circuit Appeals. Proskauer defended and litigated several matters before the Court of Appeals for the First Circuit. The following briefly summarizes major appeals in which Proskauer served as lead counsel for the Title III Debtors, and describing Proskauer's activities this Compensation Period:

  (1) Rene Pinto-Lugo et al. and Manuel Natal-Albelo v. Commonwealth, Case No. 19-1181; Elliott, Hein and Dvores v. Commonwealth, Case No. 19-1182; and Cooperativas v. COFINA, Case No. 19-1391:[7] During this Compensation Period, Proskauer, on behalf of the Oversight Board, filed pleadings responsive to these appeals, including a motion to dismiss the Cooperativas appeal as equitably moot filed on June 28, 2019. The motion argues that since the COFINA Plan of Adjustment has been fully consummated and relied upon by innocent third

---

[7] On February 22, 2019, three sets of appellants filed appeals of the order confirming the COFINA Plan of Adjustment including: (i) Rene Pinto-Lugo and Manuel Natal-Albelo (Rene Pinto-Lugo et al. and Manuel Natal-Albelo v. Commonwealth, Case No. 19-1181 (1st Cir.)) ("Pinto-Lugo"), (ii) Mark Elliott, Lawrence B. Dvores, and Peter C. Hein (Elliott, Hein and Dvores v. Commonwealth, Case No. 19-1182 (1st Cir.)) (the "Elliott"), and (iii) Cooperativa de Ahorro y Credito Dr. Manuel Zeno Gandia, Cooperativa de Ahorro y Credito de Juana Diaz, and Cooperativa de Ahorro y Credito de Rincon (Cooperativas v. COFINA, Case No. 19-1391 (1st Cir.) (the "Cooperativas").

11

parties, granting the appellants' request to overturn the confirmation of the plan would be impractical and inequitable. The appeals remain ongoing and Proskauer continues to review pleadings filed by the various parties and research the issues to prepare appropriate responses.

(2)   <u>Centro de Salud Familiar J.P.F., et al., v. Commonwealth of Puerto Rico</u>, Case No. 19-1189:[8] On September 23, 2019, Proskauer, on behalf of the Oversight Board, filed a motion to dismiss the appeal for lack of subject-matter jurisdiction. Briefing on the appeal remains ongoing.

(3)   <u>Atlantic Medical Center, Inc., et al. v. Commonwealth of Puerto Rico, et al.</u>, Case No. 18-2228 and <u>Corporacion de Servicios v. Commonwealth of Puerto Rico, et al.</u>, Case No. 19-1202:[9] Plaintiffs filed their opening brief on appeal on April 18, 2019, and Proskauer, on behalf of the Oversight Board, filed its answering brief on July 11, 2019. Plaintiffs' filed their reply brief on July 31, 2019.

(4)   <u>Employees Retirement System, et al. v. Andalusian Global Designated, et al.</u>, Case No. 19-1699 and <u>Employees Retirement System, et al. v. PR AAA Portfolio Target, et al.</u>, Case No. 19-1700: On July 9, 2019, ERS bondholders filed notices of appeals of an order by the Title III Court regarding the application of Section 552 of the Bankruptcy Code to certain ERS postpetition revenue streams. The appeals were consolidated on July 26, 2019. On July 29, 2019, appellants filed their opening brief. On August 28, 2019, Proskauer, on behalf of the Oversight Board and ERS, filed their answering briefs, while the UCC filed its answering brief on August 29, 2019. On September 11, 2019, Appellants filed their reply briefs.

- In addition, the below is a summary of major appeals in which Proskauer received favorable judgments before the First Circuit for the Debtors and the Oversight Board during the Compensation Period:

    o   <u>Gracia Gracia et al. v. Commonwealth of Puerto Rico</u>, Case No. 18-1463:[10] The appeal was argued to the First Circuit on June 5, 2019, and on September 25, 2019

---

[8]   On April 2, 2018, Magistrate Judge Dein, at ECF No. 55 in Adv. Proc. No. 17-00227, issued a report and recommendation on a motion by the Commonwealth for abstention and remand of the matter. Magistrate Judge Dein recommended the motion be granted, the case be remanded back to the Commonwealth Court and the stay be lifted to allow plaintiffs to proceed to judgment in the Commonwealth Court. Plaintiffs objected to the recommendation and report. On July 10, 2018, the Title III Court entered a memorandum order overruling objections to and adopting the April 2, 2018 report and recommendation, and granting the Commonwealth's motion for abstention and directed the case to be remanded. On August 8, 2018, plaintiffs appealed the Title III Court's order to the First Circuit, which was docketed on February 25, 2019.

[9]   In connection with Adv. Proc. No. 17-278, on August 7, 2018, Magistrate Judge Dein issued a report and recommendation on the Commonwealth's motion to dismiss, recommending that the motion to dismiss be granted and both complaints be dismissed without prejudice to refiling when a plan of adjustment for the Commonwealth has been proposed, or to allege specific impairment due to PROMESA. On November 27, 2018, the Title III Court issued an order overruling objections to and adopting the report and recommendation. On December 10, 2018, Plaintiffs appealed to the First Circuit.

[10]   On February 7, 2018, Gracia-Gracia filed a motion to modify the automatic stay to allow the enforcement of the entered settlements. *See Motion Requesting Relief of Stay under 362 (d)(1) of the Bankruptcy Code* [Case No. 17-

the First Circuit issued an opinion affirming in part and vacating in part the Court's partial denial of the plaintiffs' requested stay relief and remanded back to the Court the issues related to the segregated funds claimed by Plaintiffs.

o  AMP v. Commonwealth of Puerto Rico, et al., Case No. 18-2194: This appeal stems from a notice of appeal of the *Memorandum Order Denying Motion of Official Committee of Unsecured Creditors for Entry of an Order Enforcing the Automatic Stay* [Case No. 17-3283, ECF No. 3941], denying the Autonomous Municipality of Ponce's ("AMP") request to modify the stay because AMP failed to demonstrate cause. AMP filed its opening brief on March 18, 2019. Proskauer researched, prepared and filed a brief in opposition, on behalf of the Oversight Board, on May 1, 2019. On June 5, 2019, AMP filed its reply. Oral argument was conducted on September 11, 2019, and on September 25, 2019, the First Circuit issued an opinion upholding the Court's order denying AMP's request to modify the automatic stay.

- PREPA 9019 Motion.[11] During the Compensation Period, Proskauer concentrated its efforts on three areas: (i) discovery related motions, including motions to strike and motions to compel filed by various respondents to the PREPA 9019 Motion, (ii) preparation for and attendance of a hearing in connection with the discovery motions; and (iii) supplemental research and drafting supplemental briefs in support of the PREPA 9019 motion. Additionally, Proskauer also communicated with the various Supporting

---

3283, ECF No. 2434]. The Title III Court granted the request in part, modifying the automatic stay to permit the notice and claim submission and review process, but denying the request in all other respects, including the payment of reimbursements and attorneys' fee awards. Plaintiffs appealed and argued the duplicate premiums held in the Commonwealth's reserve account, and subject to the automatic stay, belong to the class members and are not the property of the Commonwealth. The Commonwealth disputes this contention.

[11] On May 10, 2019, Proskauer filed the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, And 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Case No. 17-4780, ECF No. 1235] (the "PREPA 9019 Motion"). The PREPA 9019 Motion seeks approval of certain settlements embodied in the Definitive Restructuring Support Agreement dated as of May 3, 2019 (the "RSA" or "PREPA RSA", by and among (1) PREPA, (2) the Oversight Board, (3) AAFAF (PREPA, the Oversight Board, and AAFAF are sometimes collectively referred to herein as the "Government Parties"), (4) the members of the Ad Hoc Group of PREPA Bondholders, (5) any other persons who beneficially own or control Uninsured Bonds that are party to the RSA or execute a joinder to the RSA (the "Uninsured Supporting Holders"), and (5) Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively "Assured," Assured and the Uninsured Supporting Holders are collectively referred to herein as the "Supporting Holders," and the Supporting Holders collectively with Government Parties, the "RSA Parties"). Such settlements resolve, as and to the extent set forth in the RSA and the proposed order granting the PREPA 9019 Motion, (a) the claims asserted by the Supporting Holders and objections of the Government Parties thereto, (b) certain bondholder litigation against PREPA by all Supporting Holders, (c) the Supporting Holders' ability to exercise rights under the Trust Agreement or other applicable law, and (d) the Supporting Holders' right to receive any current payments on their PREPA bonds. The proposed settlements represent a significant milestone in PREPA's Title III case and the overall restructuring of PREPA. Pursuant to the RSA, the creditors (absent future defaults) settle their alleged secured claims and rights asserted thereunder, including requests for stay relief, in exchange for PREPA agreeing to allow their claims in less than their full face amounts. In addition, the creditors agree to support, and PREPA agrees to propose, a plan under which Supporting Holders will exchange their bonds for securitization bonds that are secured by a fixed and predictable transition charge. In an amendment to the RSA dated as of September 9, 2019, National Public Finance Guarantee Corporation ("National") and Syncora Guarantee Inc. ("Syncora") joined the PREPA RSA.

Parties and negotiated extended briefing and discovery related deadlines which culminated in the filing of several motions extending said deadlines.

- PRIFA/AMBAC Stay Relief Motion: On May 30, 2019, Ambac Assurance Corp. ("Ambac") filed a motion requesting an order that the Title III automatic stay does not apply to certain anticipated lawsuits relating to bonds issued by the Puerto Rico Infrastructure Financing Authority ("PRIFA"). In the alternative, Ambac sought (i) relief from the stay to allow Ambac to pursue those lawsuits in different courts, or (ii) an order compelling the Commonwealth to provide adequate protection for Ambac's purported collateral. Ambac holds and insures bonds issued by PRIFA. On June 6, 2019, Proskauer, on behalf of the Oversight Board, filed, amongst other things, a motion to dismiss Ambac's motion for lack of standing. On June 7, 2019, the Court denied the motion to dismiss without prejudice to the Oversight Board raising the same arguments in its response to Ambac's motion. On July 3, 2019, the Oversight Board and AAFAF filed oppositions to Ambac's motion for relief, inclusive of the arguments raised in its motion to dismiss. Ambac and the Financial Guaranty Insurance Company ("FGIC") filed a joint reply on July 16, 2019. On July 17, 2019, the Court issued an order directing the Oversight Board to file a sur-reply to Ambac and FGIC's reply by July 19, 2019. On July 19, 2019, the Oversight Board filed its sur-reply together with an objection to a joinder motion filed by monoline insurers Assured Guaranty Corp. and Assured Guaranty Municipal Corp. On July 24, 2019, the Court issued an order staying the matter through November 30, 2019. Following the end of this Compensation Period, on October 28, 2019, the Court issued an order further staying the matter through December 31, 2019.

- UTIER v. PREPA. In connection with Adversary Case No. 17-229 (UTIER v. P.R. Elec. Power Auth., et al., Adv. Proc. No. 17-0229), Proskauer continued to conduct extensive discovery with UTIER, the Puerto Rico Department of Justice, and the Puerto Rico Electric Power Authority. The matter required additional efforts to gather and analyze documents from multiple sources in order to evaluate UTIER's claims and the Commonwealth's and PREPA's defenses. Over the period covered by the application, Proskauer also continued to analyze factual and expert discovery that may be needed to defend the case.

22.    In addition to the above, Proskauer has defended against numerous litigations against the Title III Debtors. The following is a summary of major litigation matters in which Proskauer served as lead counsel for the Title III Debtors during this Compensation Period:

- Sciemus Limited et al. v. The Financial Oversight and Management Board for Puerto Rico, Adv. Proc. No. 19-00369: On June 6, 2019, Sciemus Limited, Markel Europe, Lloyd's Syndicates, Indian Harbor Insurance Company and PartnerRe Ireland Insurance filed an adversary complaint against PREPA regarding the proper amount of insurance payment owed to PREPA in connection with a collapse of the roof of an insured fuel storage tank at a PREPA facility. Plaintiffs seek a declaratory judgement that damage to the tank happened over multiple occurrences, that PREPA failed to notify insurers of the incidents, that PREPA failed to mitigate damage to the tank, and that PREPA is entitled to

14

$1,276,000 in insurance payment under the policy terms instead of $25,481,131.30 as
asserted by PREPA. On July 12, 2019, the plaintiffs filed an amended complaint. The
Court has granted two motions for extension of time to respond to the adversary
complaint, with an answer due on November 25, 2019.

- <u>Financial Oversight & Management Board for Puerto Rico, et al. v. U.S. Bank National
  Association, as Trustee</u>, Adv. Proc. No. 19-00391: On July 1, 2019, the Oversight Board,
  jointly with AAFAF, filed a complaint against U.S. Bank National Association, as trustee
  for the PREPA bonds, seeking judgments (i) declaring that the security interest securing
  the PREPA bonds is limited to funds deposited to the credit of PREPA's "Sinking Fund"
  under the Trust Agreement, (ii) in the alternative, avoiding any security interests that
  were granted for the benefit of PREPA bondholders beyond funds deposited to the credit
  of the "Sinking Fund" under Bankruptcy Code section 544 for lack of perfection, and (iii)
  disallowing the Trustee's master proof of claim to the extent it asserts such security
  interests.  On July 16, 2019, the Court entered an order staying Adv. Proc. No. 19-391
  until the earlier of (a) 60 days after the Court denies the PREPA 9019 Motion, (b) the
  consummation of a plan of adjustment for PREPA, (c) 60 days after the filing by
  plaintiffs of a notice seeking to resume litigation, or (d) further order of the Court and
  without prejudice to further extensions.

- <u>Puerto Rico Horse Owners Association, Inc. v. Commonwealth of Puerto Rico, et al.</u>,
  Adv. Proc. No. 19-00392: On July 2, 2019, a non-profit organization, Puerto Rico Horse
  Owners Association, filed an action against the Commonwealth, the Oversight Board and
  its executive director (in her official capacity), and the Governor of Puerto Rico and
  certain government officials (in their official capacities) seeking declaratory relief that
  funds from uncashed winning tickets bet on horse races are not property of the
  Commonwealth, and should be paid to the Racing Administrator for distribution to
  certain Puerto Rico horse breeders. On July 3, 2019, Plaintiff filed an amended complaint
  purporting to correct a clerical error. On September 3, 2019, Commonwealth government
  officials Ricardo Rosselló-Nevares, Francisco Parés-Alicea and Alberto Maymó-Azize
  filed a motion to dismiss the amended complaint. The Commonwealth, Oversight Board,
  and Natalie Jaresko also filed a motion to dismiss the amended complaint on September
  3, 2019. On September 4, 2019, AAFAF filed a motion to dismiss the amended
  complaint.

- <u>Financial Oversight & Management Board for Puerto Rico v. Hon. Vazquez Garced et
  al.</u>, Adv. Proc. No. 19-00393: On July 3, 2019, the Oversight Board filed a complaint
  against then-Governor Rosselló and AAFAF largely challenging Act 29-2019, which
  eliminates the obligation of municipalities to reimburse the Commonwealth for pension
  payments to municipality retirees. Specifically, the complaint alleges that (i) Act 29-
  2019, including its enactment and enforcement, violates PROMESA section 204(a); (ii)
  Act 29-2019, including its enactment and enforcement, violates PROMESA section 207;
  (iii) the Oversight Board is entitled to a permanent injunction prohibiting defendants
  from implementing Act 29-2019; (iv) Act 29-2019 and the joint resolutions, including
  their enactment and enforcement, violate PROMESA Section 204(c); (v) the Oversight
  Board is entitled to an injunction compelling the Governor to submit PROMESA section
  204(a) certifications for the new laws and non-certified joint resolutions; (vi) Act 29-

2019 violates PROMESA section 108(a) and is not enforceable and is of no effect because it impairs and/or defeats the purposes of PROMESA, as determined by the Oversight Board; (vii) the joint resolutions violate PROMESA section 108(a) because they impair and/or defeat the purposes of PROMESA, as determined by the Oversight Board; and (viii) the Governor's alleged policy of not providing certifications as required under PROMESA section 204 violates PROMESA section 108(a) because it impairs and/or defeats the purposes of PROMESA, as determined by the Oversight Board.

Defendants filed a motion to dismiss on July 15, 2019, which was fully briefed and oral argument was heard on August 15, 2019. Also on August 15, 2019, in light of former-Governor Rosselló's resignation, the case was re-captioned to name current Governor Vázquez as a Defendant. On August 22, 2019, the Title III Court denied the motion to dismiss. Defendants answered the complaint on September 10, 2019.

- Cortland Capital Market Services LLC, et al., v. Financial Oversight & Management Board for Puerto Rico, et al., Adv. Proc. No. 19-00396: Lenders to PREPA (the "Fuel Line Lenders") filed an action on July 9, 2019 against the Oversight Board, PREPA, AAFAF and U.S. Bank.  The Fuel Line Lenders allegedly lent PREPA $700 million since 2012, which PREPA then used to purchase fuel needed to operate its system.  The complaint alleges that (i) their loans were deemed "Current Expenses" under the PREPA Trust Agreement and that under the agreement, PREPA is to pay all "current expenses" before the bonds, (ii) the PREPA bondholders' lien and recourse are limited only to net revenues deposited to the credit of specified accounts, (iii) PREPA bondholders are entitled to nothing until "Current Expenses" are paid, and (iv) the RSA reached between the PREPA bondholders, the Oversight Board and the other Defendants violates the Fuel Line Lenders' rights.  The Fuel Line Lenders seek declaratory relief stating that the amounts they are owed are "Current Expenses" and thus they are entitled to payment before any payments are made to PREPA bondholders.  On October 1, 2019, Plaintiffs filed an amended complaint.  During the Compensation Period, Proskauer researched and drafted a motion to dismiss Plaintiffs' complaint on the ground, among others, that Plaintiffs lacked standing to interpose their claims objections to the bondholders' claims and failed to state a claim establishing their asserted seniority.

- Cooperativa de Ahorro y Crédito Abraham Rosa, et al. v. Public Corporation for the Supervision and Insurance of Cooperatives of Puerto Rico, et al., Adv. Proc. No. 19-00389: On July 1, 2019, Plaintiffs, a group of credit unions, filed a complaint against the Public Corporation for the Supervision and Insurance of Cooperatives of Puerto Rico ("COSSEC"), seeking declaratory and injunctive relief in connection with share and deposit insurance.  Plaintiffs claim COSSEC is undercapitalized and unable to provide adequate share and deposit insurance, and thus, seek injunctions commanding COSSEC to request funds from the Puerto Rico Treasury Department.  Plaintiffs filed their complaint under seal, and filed a motion to seal the proceedings.  On July 15, 2019, Plaintiffs filed an urgent motion for a preliminary injunction seeking to order the Commonwealth to provide funds to COSSEC.  The Oversight Board filed an opposition to the motion for a preliminary injunction on July 18, 2019.  On July 25, 2019, the Oversight Board filed a motion to stay all responses to the complaint until 30 days after the Court issued a ruling on Plaintiffs' motion for a preliminary injunction hearing.  On

July 26, 2019, the Court issued an order denying (i) Plaintiffs' motion to seal and (ii) Plaintiffs' motion for a preliminary injunction hearing. On July 29, 2019, Plaintiffs filed a notice of appeal of the order denying their motion to seal and motion for a preliminary injunction hearing. On August 2, 2019, in the First Circuit, Plaintiffs filed a motion to stay the order denying their motion to seal in Case No. 19-1755. On August 7, 2019, Defendants (and Appellees) filed their response. Also on August 7, 2019, the Oversight Board filed a motion to have all defendants' responses to Plaintiffs' complaint stayed until 30 days after the First Circuit decides Plaintiffs' appeal from the denial of its motion for a preliminary injunction. The Court granted this motion on August 8, 2019. On August 9, 2019, the First Circuit issued an order temporarily staying the Title III Court's order to unseal the adversary proceeding, but withdrew the interim stay on August 14, 2019. On August 16, 2019, Plaintiffs filed a motion to temporarily extend the stay in the Title III Court, which the Court denied.

23.     As part of Proskauer's involvement in the above matters, Proskauer (a) prepared and filed numerous pleadings and briefs in litigation matters; (b) participated in and prepared for hearings; (c) researched jurisprudence regarding legal and factual issues, including bankruptcy and U.S. Constitutional issues; and (d) performed a myriad of other professional services as described in this Application and reflected in **Schedule 3** and **Exhibit B**.

24.     By this Application, Proskauer seeks an allowance, pursuant to the Interim Compensation Order, of (a) **$535,776.08**, as (i) compensation for professional services rendered in the amount of $491,537.70, and (ii) the Gross-Up Amount in the amount of $44,238.38;[12] and (b) **$13,238.66** as reimbursement for actual and necessary expenses incurred during the Compensation Period in connection with such professional services. Notably, the Application reflects aggregate voluntary reductions made during the Compensation Period to Proskauer's requests for compensation and for reimbursement of expenses in the amount of $6,957.90 and $2,496.10, respectively, on top of the sizeable discount embedded in its engagement letter with

---

[12] Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount. As of the date of hereof, Proskauer has not requested payment of the Gross-Up Amount.

the Oversight Board, in which it fixed hourly rates at levels providing up to 45% discounts on the hourly rates of its most senior partners.

25.     Proskauer maintains computerized records of the time spent by all Proskauer attorneys and paraprofessionals in connection with the firm's representation of the Oversight Board as representative of the Debtor.   Subject to redaction where necessary to preserve mediation confidentiality, copies of the computerized records for the Compensation Period are attached hereto as **Exhibit B**.

26.     Proskauer's budget and staffing plan for the Compensation Period are attached hereto as **Exhibit D**.

27.     Proskauer's summary of itemized time records for professionals and paraprofessionals performing services for the Oversight Board with respect to the Debtor during the Compensation Period is set forth on **Schedule 2**.   During the Compensation Period, Proskauer billed the Oversight Board for time expended by attorneys based on a set rate of $789 per hour. The professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor, during the Compensation Period required an aggregate expenditure of 324.80 recorded hours by Proskauer's partners and senior counsel; 252.50 recorded hours by associates; 7.90 recorded hours by e-Discovery attorneys; and 122.10 recorded hours by paraprofessionals.   As required by the Guidelines, **Exhibit C** to this Application shows, for each Project Category (as defined below), a list of professionals who performed services in each Project Category and the aggregate recorded hours each professional incurred.   In accordance with Guidelines paragraph C.3, Proskauer's blended hourly rates are disclosed in **Schedules 1** and **5**.   The fees charged by Proskauer, as set forth in **Schedule 2**, are in accordance with the firm's existing billing rates and procedures in effect during the Compensation Period, as revised to reflect Proskauer's arrangement with the Oversight Board.   The standard rates Proskauer charges

18

for the services rendered by its professionals and paraprofessionals in these Title III cases have been reduced to reflect the unique circumstances of PROMESA and the position of the Commonwealth of Puerto Rico, its instrumentalities, and its residents.  **Schedules 2** and **5** show the rates Proskauer charges on an hourly basis are below the competitive market rates for bankruptcy and non-bankruptcy matters, charged by the other professionals representing the Commonwealth and statutory committees.  No Proskauer rates are increased as a result of the geographic location of a bankruptcy case.

28.     All entries itemized in Proskauer's time records comply with the requirements set forth in the Guidelines, including, without limitation, (a) the utilization of project categories (each a "Project Category"), (b) a description of each activity or service that each individual performed, and (c) the number of hours (in increments of one-tenth of an hour) spent by each individual providing the services.  Each Project Category is organized in accordance with Guidelines paragraph C.8.b.  If a Project Category does not appear in a particular application, Proskauer did not bill time or expenses for that Project Category during the Compensation Period, but may bill time for that Project Category in the future.

**Applicant Statement In Compliance with Appendix B Guidelines Paragraph C.5**

29.     The following answers are provided in response to the questions set forth in Guidelines paragraph C.5:

| | |
|---|---|
| **Question**: | Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain. |
| Response: | No. |
| **Question**: | If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client? |
| Response: | The total fees sought in this Application exceeded the total budgeted fees for the time period by more than 10% (fees sought in the Application are |

19

58.4% above budgeted fees). It is worth noting that Proskauer billed $181,316.01 over its budgeted fees, which represents a modest overage when viewed from the larger context of HTA's Title III case. Proskauer billed more time than expected due to (1) significantly increased activity at the direction of the Oversight Board, including relating to the drafting of a future proposed plan of adjustment and disclosure statement for HTA, and (2) preparing HTA's opposition to the Assured Guaranty Corporation, Assured Guaranty Municipal Corporation, and National Public Finance Guarantee Corporation's Motion [ECF No. 8536] seeking a court order protecting the movants' interests in the Debtors' certain pledged revenues, or, in the alternative, lifting the automatic stay to permit enforcement of the movants' liens. Negotiating and drafting the future proposed HTA Title III joint plan of adjustment and related legal analysis and strategy required significant efforts, which are often difficult to anticipate. Given direct client instruction and the importance of the lift stay matter to HTA's Title III Case, it was necessary and beneficial for Proskauer to bill more hours than anticipated.

**Question**: Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response: No.

**Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response: No, the Application does not include time or fees related to reviewing time records or preparing, reviewing or revising invoices in connection with the preparation of monthly fee statements.

**Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response: No time was spent redacting time records on account of privilege concerns. However, the Application does include time related to reviewing time records to redact time entries pursuant to Court-ordered mediation confidentiality.

**Question**: If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response: Yes. The Engagement Letter provides that Proskauer's rates are increased on January 1 (rather than on November 1, the beginning of Proskauer's

20

fiscal year) by the lower of the percentage rate increase announced as of November 1 and four percent.  As Proskauer's announced percentage rate increase exceeded four percent as of November 1, 2018, Proskauer's rates with respect to its representation of the Oversight Board were increased by four percent as of January 1, 2019.

### Gross-Up Amount

30.     Prior to December 10, 2018, Puerto Rico taxed Proskauer's fees differently depending on whether Proskauer's timekeepers performed work while physically present in Puerto Rico or off-island.  Specifically, a 7% withholding tax was assessed (at time of payment) on fees derived from work performed while the timekeeper was physically present in Puerto Rico, but not on fees derived from work performed outside of Puerto Rico.

31.     On December 10, 2018, Puerto Rico enacted Act 257-2018, amending the Puerto Rico tax code and eliminating the differences in tax treatment based on where work was performed.  Under Act 257-2018, all Proskauer fees incurred on or after December 10, 2018—regardless of the timekeepers' physical location—are assessed with a 10% withholding tax at the time of payment.

32.     Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by Act 257-2018 starting December 10, 2018 (the "Withholding"), in the amount of **$44,238.38**.  But Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not requested payment of the Gross-Up Amount.

### Professionals Billing Fewer Than Five Hours per Month

33.     The following chart indicates, solely with respect to the Debtor's Title III Case,

21

(a) professionals who billed fewer than five hours per month, (b) the months for which fewer than five hours were billed by the professional, and (c) an explanation of why the use of such professional was reasonable and necessary. As a general matter, because of the size and complexity of the Debtor's Title III Case, it was reasonable and necessary to consult with professionals with specific practice area expertise to assist Proskauer's core restructuring professionals in providing the Debtor with necessary and beneficial professional services. Moreover, it was often necessary to consult with professionals more familiar with other aspects of the restructuring of Puerto Rico and with specific adversary proceedings to deal with global strategic issues and ensure that positions taken by the Oversight Board are consistent across all the Title III cases.  Furthermore, occasionally the urgency of certain briefing schedules required pulling in professionals from different work streams to assist on time-sensitive matters.[13]

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Barak, Ehud | July | Mr. Barak is a partner in Proskauer's BSGR&B group who advised on the Debtor's strategy related to the DRA Parties' Lift Stay Motion. |
| Bienenstock, Martin J. | June | Mr. Bienenstock is a partner in Proskauer's BSGR&B group who prepared for the Oversight Board a detailed analysis of the First Circuit Court's decision in the *Ambac* appellate proceeding and its impact on the Debtor's Title III case. |
| Blackwell, Brooke H. | September | Ms. Blackwell is an associate in Proskauer's BSGR&B group who assisted with the research for and drafting a future proposed disclosure statement in connection with the development of a future proposed plan of adjustment for the Debtor. |

---

[13] Many of the professionals listed below have billed substantially more time on other matters related to Proskauer's representation of the Oversight Board, including matters within and outside of PROMESA Title III.

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Chalett, Zachary | June, July | Mr. Chalett is an associate in Proskauer's litigation department who assisted with further developing the Debtor's litigation strategy in the HTA Lien Avoidance Actions and drafting related status reports. |
| Desatnik, Daniel S. | August | Mr. Desatnik is an associate in Proskauer's BSGR&B group who assisted with drafting the Board's response to the Assured and National's urgent motion to set briefing schedule for their Lift Stay Motion. |
| Ferrara, Ralph C. | June - September | Mr. Ferrara is a partner in Proskauer's litigation department who analyzed the HTA fiscal plan and other financial materials in connection with bondholders' claims and with the DRA Parties' Lift Stay Motion. |
| Friedman, Amelia A. | July - September | Ms. Friedman is an associate in Proskauer's litigation department who assisted with analysis and classification of creditors' claims and with drafting multiple Debtor's omnibus objections to claims. |
| Golinder, Olga | August | Ms. Golinder is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Harris, Mark D. | July, September | Mr. Harris is a partner in Proskauer's litigation department who advised on developing the Debtor's further appellate strategy in the *Assured* appellate proceeding. |
| Henderson, Laurie A. | August, September | Ms. Henderson is a docketing administrator in Proskauer's litigation department who assisted with docket research and electronic filing. |
| Ma, Steve | July - September | Mr. Ma is an associate in Proskauer's BSGR&B group who assisted with developing the Debtor's litigation strategy and drafting the joint stipulation in connection with the DRA Parties' Lift Stay Motion. |
| Monforte, Angelo | July, September | Mr. Monforte is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Mungovan, Timothy W. | July, August | Mr. Mungovan is a partner in Proskauer's litigation department who advised on a variety of issues further developing the Debtor's litigation and appellate strategy in the HTA adversary proceedings. |

23

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Neuberger, Scarlett A. | July - September | Ms. Neuberger is a paralegal in Proskauer's BSGR&B group who assisted with various case management related tasks. |
| Omorogbe, Philip | August | Mr. Omorogbe is an associate in Proskauer's BSGR&B group who assisted with analysis and classification of creditors' claims and developing further strategy for the Debtor's claims administration and reconciliation. |
| Petrov, Natasha | July | Ms. Petrov is a paralegal in Proskauer's BSGR&B group who assisted with drafting Proskauer's sixth interim fee application. |
| Piccirillo, Antonio N. | June | Mr. Piccirillo is a partner in Proskauer's corporate department who advised on developing the Debtor's litigation strategy in connection with the DRA Parties' Lift Stay Motion. |
| Possinger, Paul V. | August, September | Mr. Possinger is a partner in Proskauer's BSGR&B group who advised on a variety of issues in connection with the development of a future proposed plan of adjustment for the Debtor. |
| Ramachandran, Seetha | July, August | Ms. Ramachandran is a partner in Proskauer's litigation department who advised on developing the Debtor's litigation strategy in connection with  the DRA Parties' Lift Stay Motion. |
| Ratner, Stephen L. | June - September | Mr. Ratner is a partner in Proskauer's litigation department who advised on a variety of issues further developing the Debtor's litigation and appellate strategy in the HTA adversary proceedings. |
| Roberts, John E. | August, September | Mr. Roberts is a senior counsel in Proskauer's litigation department who advised on further developing the Debtor's appellate strategy in the *Assured* and *Ambac* appellate proceedings. |
| Roche, Jennifer L. | June, August | Ms. Roche is a senior counsel in Proskauer's litigation department who advised on the Debtor's strategy for opposing plaintiffs' motion for reconsideration in the *Western Surety* adversary  proceeding and on a variety of litigation issues in other HTA adversary proceedings. |

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Rosen, Brian S. | June - August | Mr. Rosen is a partner in Proskauer's BSGR&B group who advised on developing the Debtor's litigation strategy in connection with the DRA Parties' Lift Stay Motion. |
| Singer, Tal J. | September | Mr. Singer is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Stafford, Laura | June, August, September | Ms. Stafford is an associate in Proskauer's litigation department who advised on developing the Debtor's litigation strategy in connection with the HTA Lien Avoidance Actions. |
| Tarrant, Christopher M. | September | Mr. Tarrant is a paralegal in Proskauer's BSGR&B group who assisted with various case management related tasks. |
| Triggs, Matthew | July- September | Mr. Triggs is a partner in Proskauer's litigation department who analyzed impact of the recent First Circuit appellate opinions on the Debtor's litigation and appellate strategy. |
| Zerjal, Maja | July - September | Ms. Zerjal is an associate in Proskauer's BSGR&B group who assisted with developing the Debtor's further litigation strategy in the *CD Builders* Adversary Matter and with drafting a future proposed disclosure statement in connection with the development of a future proposed plan of adjustment for the Debtor. |

## Summary Description of Professional Services

34.    The following is a brief narrative summary, listed by Project Category, of the professional services rendered by Proskauer during the Compensation Period. Only Project Categories for which Proskauer billed more than 10 hours during the Compensation Period are summarized below.

## I.    Matter No. 33260/009 (PROMESA Title III: HTA)

35.    This matter number covers time spent relating to the core HTA Title III case, including, for example, time spent regarding mediation, fiscal plan issues, and working on disclosure statements or plans of adjustment.

25

(a)   Documents Filed on Behalf of the Board (Project Category 206)
        (Fees:  $9,189.00; Hours:  12.70)

36.     This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conducting research and analysis and drafting the Oversight Board's response to Assured and National's motion requesting to set briefing schedule for their motion to lift the automatic stay and for adequate protection; and
- Conducting research and analysis of claims and drafting additional omnibus objections to claims filed against the Debtor.

(b)   Stay Matters (Project Category 208)
        (Fees: $11,598.30; Hours: 14.70)

37.     This Project Category includes time spent analyzing and researching stay issues in the Debtor's Title III case and drafting various pleadings related to stay issues.  Specifically, Proskauer attorneys and paraprofessionals spent time conferring with the Board's other advisors, conducting legal research and analyzing stay related issues, developing litigation strategy for opposition, and drafting the Board's responses to Assured and National's motion to lift the automatic stay and for adequate protection and related urgent motion to set a briefing schedule.

(c)   Analysis and Strategy (Project Category 210)
        (Fees: $51,063.90; Hours: 67.40)

38.     This Project Category includes time spent related to (a) legal analysis in, and strategic approach to, the Debtor's Title III Case, including meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

(d)   Plan of Adjustment and Disclosure Statement (Project Category 215)
        (Fees: $21,685.80; Hours: 28.80)

39.     This Project Category includes time spent on issues related to the terms of the proposed Title III plan.  Specifically, Proskauer attorneys and paraprofessionals spent time:

26

- Reviewing and analyzing a wide variety of materials, further developing the strategy for the proposed transformation and restructuring of the Debtor, and drafting the Debtor's plan of adjustment and disclosure statement; and

- Analyzing and categorizing claims filed against the Debtor and drafting additional omnibus objections to claims.

(e)  Employment and Fee Applications (Project Category 218)
     (Fees: $20,654.70; Hours: 56.70)

40.     This Project Category includes time spent on issues related to the compensation of

Proskauer, and the retention and compensation of other Oversight Board professionals, including

the preparation of monthly fee statements and interim fee applications.  Specifically, Proskauer

attorneys and paraprofessionals spent time analyzing monthly statements and drafting Proskauer's

sixth and seventh interim fee applications.

## II.  Matter No. 33260/049 (HTA Title III – Ambac)

41.     This matter number covers time spent working on the *Ambac Assurance v.*
*Commonwealth* adversary proceeding, Case No. 17-AP-159, and any appeals related thereto.

(a)  Appeal (Project Category 219)
     (Fees: $27,457.20; Hours: 34.80)

42.     This Project Category includes time spent on preparing appeals and participating in

appellate proceedings, to the extent not expressly covered by another Project Category.

Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing the First Circuit's judgement affirming Judge Swain's decision and its impact on the Debtor's Title III Case, and drafting memorandum to the Oversight Board; and

- Conducting legal research on issues presented by the Ambac's petition for a writ of certiorari to the U.S. Supreme Court, developing the Board's strategy for the opposition, and drafting related brief.

## III.  Matter No. 33260/050 (HTA Title III – Assured)

43.     This matter number covers time spent working on the *Assured Guaranty v.*
*Commonwealth* adversary proceedings, Case Nos 17-AP-155 and 17-AP-156, and any appeals

27

related thereto.

    (a)   <u>Appeal (Project Category 219)</u>
           (Fees: $<u>29,429.70</u>; Hours: <u>37.30</u>)

      44.    This Project Category includes time spent on preparing appeals and participating in appellate proceedings, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing the First Circuit's decision denying the Assured's petition for panel rehearing and rehearing en banc, its impact on the Debtor's Title III Case, and drafting memorandum to the Oversight Board;
- Conducting legal research on issues presented by the Assured's petition for a writ of certiorari to the U.S. Supreme Court, developing the Board's strategy for the opposition, and drafting related brief.

## IV.    <u>Matter No. 33260/053 (HTA Title III – Miscellaneous)</u>

      45.    This matter number covers time spent working on miscellaneous motions and adversary proceedings, including, motions for relief from the Title III stay, and any appeals related thereto. In this Compensation Period, items billed to this matter included, among other things, work on  the *Western Surety Co. v. HTA* adversary proceeding, Case No. 18-AP-065 (the "*Western Surety* Adversary Proceeding"), and the Debt Recovery Authority (the "DRA") Parties' Motion for Relief from the Automatic Stay, or in the Alternative, Ordering Payment of Adequate Protection [Case No. 17 BK 3283-LTS, ECF No. 7643, and Case No. 17-03567, ECF  No. 591] (the "<u>DRA Parties' Lift Stay Motion</u>").

    (a)   <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
           (Fees:  $<u>14,675.40</u>; Hours:  <u>18.60</u>)

      46.    This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing Judge Swain's order dismissing the complaint in the *Western Surety* Adversary Proceeding, conducting research and analysis,

developing further litigation strategy, and drafting the Oversight Board's opposition to the plaintiffs' motion for reconsideration;

- Reviewing and analyzing Judge Swain's order denying motion for reconsideration in the *Western Surety* Adversary Proceeding, its impact on the Debtor's Title III Case, and drafting memorandum to the Oversight Board.

(b)  Stay Matters (Project Category 208)
     (Fees: $26,510.40; Hours: 33.60)

47.    This Project Category includes time spent analyzing and researching stay issues in the Debtor's Title III case and drafting various pleadings related to stay issues.  Specifically, Proskauer attorneys and paraprofessionals spent time conferring with the Board's other advisors, analyzing pleadings and proposed drafts by other parties, conducting legal research, and drafting revisions to two joint stipulations between the Oversight Board, AAFAF, and the DRA Parties in connection with  the DRA Parties' Lift Stay Motion.

**V.    Matter No. 33260/074 (HTA Title III – HTA Lien Avoidance and Secured Status Complaints)**

48.    This matter number covers time spent relating to the HTA Title III avoidance actions challenging the validity, enforceability, and extent of prepetition security interests of certain bondholders in the Debtor's revenues, including *FOMB v. Valdivieso,* Case No. 2019-AP-0362, *FOMB v. Ambac Assurance Corporation*, Case No. 2019-AP-0363, *FOMB v. Davidson Kempner Capital Management LP,* Case No. 2019-AP-0364, *Special Claims Committee v. Banco Popular de Puerto Rico,* Case No. 2019-AP-0365, (the "HTA Lien Avoidance Actions") and on any appeals related thereto.

(a)  Documents Filed on Behalf of the Board (Project Category 206)
     (Fees: $21,460.80; Hours: 27.20)

49.    This Project includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time conducting research and analysis, further developing

the Debtor's litigation strategy, and drafting the Debtors' motion for an order approving proposed form of notice and service of process in connection with the GO and HTA lien challenges and the joint Debtors' and certain defendants status report and proposed case management order related to the HTA Lien Avoidance Actions.

   (b)  <u>Non-Board Court Filings (Project Category 207)</u>
       (Fees: $<u>10,099.20</u>; Hours: <u>12.80</u>)

50.    This Project Category includes time spent reviewing and commenting on Court orders and filings made by other parties in the Debtor's Title III case, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing multiple answers to the HTA lien avoidance complaints, including among others, the FGIC's answer and counterclaim;
- Reviewing and analyzing court orders related to service of lien avoidance complaints.

   (c)  <u>Analysis and Strategy (Project Category 210)</u>
       (Fees: $<u>51,758.40</u>; Hours: <u>65.60</u>)

51.    This Project Category includes time spent related to (a) legal analysis in, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

   (d)  <u>General Administration (Project Category 212)</u>
       (Fees: $<u>18,360.00</u> Hours: <u>68.00</u>)

52.    This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c)

internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

## VI.    Matter No. 33260/082 (HTA Title III – Assured Motion to Lift Stay)

53.    This matter number covers time spent relating to the Debtor's opposition to the *Assured Guaranty Corporation, Assured Guaranty Municipal Corporation, and National Public Finance Guarantee Corporation's Motion for Adequate Protection or, in the Alternative, for Relief from Automatic Stay* seeking a court order protecting the movants' interests in the Debtors' certain pledged revenues, or, in the alternative, lifting the automatic stay to permit enforcement of the movants' liens [ECF No. 8536] (the "Assured Lift Stay Motion"), and on any appeals related thereto.

(a)    Documents Filed on Behalf of the Board (Project Category 206)
(Fees:  $27,615.00; Hours:  35.00)

54.    This Project includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time conducting research and analysis and drafting the Oversight Board's opposition to the Assured Lift Stay Motion and response in support of the movants' urgent request that the Court extends its Stay and Mediation Order to the  Assured Lift Stay Motion.

(b)    Stay Matters (Project Category 208)
(Fees:  $26,668.20; Hours: 33.80)

55.    This Project Category includes time spent analyzing and researching stay issues in the Debtor's Title III case and drafting various pleadings related to stay issues.  Specifically, Proskauer attorneys and paraprofessionals spent time analyzing Assured Lift Stay Motion and issues raised by the movants, conducting legal research and factual investigation, and developing the Oversight Board's strategy for opposition to the Motion.

31

   (c)   <u>Analysis and Strategy (Project Category 210)</u>
       (Fees: $<u>72,351.30</u>; Hours: <u>91.70</u>)

56.    This Project Category includes time spent related to (a) legal analysis in, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

*     *     *     *

57.    The foregoing professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period were reasonable, necessary, appropriate, and beneficial when rendered, facilitated the effective administration of the Debtor's Title III Case, and were in the best interests of the Oversight Board and the Debtor's creditors, residents, and other stakeholders.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and time-sensitive nature of the problems, issues, and tasks involved.  The professional services were performed with expedition and in an efficient manner.

58.    In accordance with the factors enumerated in the Bankruptcy Code, the amount of fees requested is fair and reasonable given: (a) the complexity of the Debtor's Title III Case; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; (e) Proskauer's established expertise in the bankruptcy field; and (f) the costs of comparable services other than in a case under the Bankruptcy Code.

**<u>Actual and Necessary Expenses of Proskauer</u>**

59.    Pursuant to the Guidelines, **<u>Schedule 4</u>** is Proskauer's summary of actual and necessary expenses incurred on behalf of the Oversight Board as representative of the Debtor

32

during the Compensation Period.

60.    In accordance with paragraph C.13 of the Appendix B Guidelines, and as more fully itemized in **Schedule 4**, Proskauer seeks reimbursement for its necessary and reasonable expenses, including: (a) reproduction, (b) online research, (c) local travel to and from airports, (d) out-of-town travel and lodging, (e) out-of-town meals, and (f) professional services.  All expense entries detailed in **Exhibit B** comply with the requirements set forth in the Guidelines, including an itemization of the expenses by category, the date the expense was incurred, and the individual incurring the expense, where available.  The reasons for the expenses are self-explanatory.  In compliance with Appendix B Guidelines paragraph C.13, the requested expenses are of the kind customarily charged to Proskauer's non-bankruptcy clients and by other comparable professionals.

61.    Proskauer generally charges from $0.10 (black and white) to $0.30 (color) per page for photocopying expenses. The rates charged by the firm for Westlaw and Lexis computerized research vary according to the type of research conducted and the specific files researched, but, in any event, Proskauer does not profit from the use of computer assisted legal research, as set forth in **Schedule 4**.  As per the Appendix B Guidelines, Proskauer has not requested reimbursement of expenses related to overhead charges, such as secretarial services and proofreading.  The expenditures Proskauer is seeking reimbursement for and which are detailed on **Schedule 4** are all of the type customarily billed to clients.

62.    During the Compensation Period, Proskauer has disbursed **$13,238.66** as necessary and reasonable expenses.  These charges cover Proskauer's direct operating costs, which costs are not incorporated into the firm's hourly billing rates (because to do so would impose that cost upon clients who do not require extensive photocopying and other facilities and services).  Only clients who actually benefit from services of the kind set forth in **Exhibit B** are separately charged for

33

such services.  Proskauer has made every effort to minimize its expenses in the Debtor's Title III

Case.   The actual expenses incurred in providing professional services were necessary,

reasonable, and justified under the circumstances to effectively serve the needs of the Debtor in

its Title III case.

### Compensation Paid and Its Source

63.    All services for which Proskauer seeks compensation, and expenses for which it

seeks reimbursement, were performed on behalf of the Oversight Board as representative of the

Debtor.   In connection with the matters covered by this Application, Proskauer received no

payment and no promises of payment for services rendered, or to be rendered, from any source

other than the Debtor.  There is no agreement or understanding between Proskauer and any other

person, other than members of the firm, for the sharing of compensation received for services

rendered in this Title III case.

64.    PROMESA sections 316 and 317 provide for interim compensation of

professionals and govern the Court's award of such compensation.   PROMESA section 316

provides that a court may award a professional person employed by the Debtor or the Oversight

Board under PROMESA "(1) reasonable compensation for actual, necessary services rendered by

the professional person, or attorney and by any paraprofessional person employed by any such

person; and (2) reimbursement for actual, necessary expenses."  PROMESA § 316(a).  Section

316 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be
> awarded … the court shall consider the nature, the extent, and the
> value of such services, taking into account all relevant factors,
> including—
>
> (1) the time spent on such services;
>
> (2) the rates charged for such services;

(3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;

(4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this subchapter or title 11.

PROMESA § 316(c).

65.     As noted above, the professional services and expenditures for which Proskauer seeks compensation and reimbursement in this Application were necessary and beneficial to the Oversight Board as representative of the Debtor, and included, among other things, anticipating or responding to the Oversight Board's needs and assisting in the Oversight Board's navigation of the Debtor's very complex Title III case.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Oversight Board.  The Oversight Board has reviewed and approved this Application.

## **Reservations**

66.     To the extent time or disbursement charges for services rendered or expenses incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, or Proskauer has for any other reason not yet sought compensation or reimbursement of expenses herein with respect to any services rendered or expenses incurred during the Compensation Period, Proskauer reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

35

## Notice

67.     Pursuant to the Interim Compensation Order, notice of this Application has been

filed in the Debtor's Title III Case and the jointly-administered Commonwealth of Puerto Rico's

Title III case and served upon:

(a) the Financial Oversight and Management Board, 40 Washington Square South, Office 314A, New York, NY 10012, Attn: Professor Arthur J. Gonzalez, Oversight Board Member;

(b) attorneys for the Financial Oversight and Management Board as representative of The Commonwealth of Puerto Rico, O'Neill & Borges LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, Attn: Hermann D. Bauer, Esq. (hermann.bauer@oneillborges. com);

(c) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq. (jrapisardi@omm.com), Suzzanne Uhland, Esq. (suhland@omm.com), and Diana M. Perez, Esq. (dperez@omm.com);

(d) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, Marini Pietrantoni Muniz LLC, MCS Plaza, Suite 500, 255 Ponce de León Ave., San Juan P.R. 00917, Attn.: Luis C. Marini-Biaggi, Esq. (lmarini@mpmlawpr.com) and Carolina Velaz-Rivero Esq. (cvelaz@mpmlawpr.com);

(e) the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Commonwealth of Puerto Rico*);

(f) attorneys for the Official Committee of Unsecured Creditors, Paul Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc A. Despins, Esq. (lucdespins@paulhastings.com);

(g) attorneys for the Official Committee of Unsecured Creditors, Casillas, Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street, Ste. 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala, Esq. (jcasillas@cstlawpr.com) and Alberto J.E. Añeses Negrón, Esq. (aaneses@cstlawpr.com);

(h) attorneys for the Official Committee of Retired Employees, Jenner & Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert Gordon, Esq. (rgordon@jenner.com) and Richard Levin, Esq. (rlevin@jenner.com); and Jenner & Block LLP, 353 N. Clark Street,

Chicago, IL 60654, Attn: Catherine Steege, Esq. (csteege@jenner.com) and Melissa Root, Esq. (mroot@jenner.com);

(i) attorneys for the Official Committee of Retired Employees, Bennazar, García & Milián, C.S.P., Edificio Union Plaza, PH-A, 416 Ave. Ponce de León, Hato Rey, PR 00918, Attn: A.J. Bennazar-Zequeira, Esq. (ajb@bennazar.org);

(j) the Puerto Rico Department of Treasury, PO Box 9024140, San Juan, PR 00902-4140, Attn: Reylam Guerra Goderich, Deputy Assistant of Central Accounting (Reylam.Guerra@hacienda.pr.gov); Omar E. Rodríguez Pérez, CPA, Assistant Secretary of Central Accounting (Rodriguez.Omar@hacienda.pr.gov); Angel L. Pantoja Rodríguez, Deputy Assistant Secretary of Internal Revenue and Tax Policy (angel.pantoja@hacienda.pr.gov); Francisco Parés Alicea, Assistant Secretary of Internal Revenue and Tax Policy (francisco.pares @hacienda.pr.gov); and Francisco Peña Montañez, CPA, Assistant Secretary of the Treasury (Francisco.Pena@hacienda. pr.gov);

(k) attorneys for the Fee Examiner, EDGE Legal Strategies, PSC, 252 Ponce de León Avenue, Citibank Tower, 12th Floor, San Juan, PR 00918, Attn: Eyck O. Lugo (elugo@edgelegalpr.com); and

(l) attorneys for the Fee Examiner, Godfrey & Kahn, S.C., One East Main Street, Suite 500, Madison, WI 53703, Attn: Katherine Stadler (KStadler@gklaw.com).

Proskauer submits that, in light of the foregoing, no other or further notice need be provided.

WHEREFORE Proskauer respectfully requests that the Court issue an order (a) allowing interim compensation for professional services rendered during the Compensation Period in the amount of **$535,776.08**, which is comprised of (i) fees for professional services rendered in the amount of $491,537.70, and (ii) the Gross-Up Amount in the amount of $44,238.38;[14] and allowing reimbursement for actual and necessary expenses Proskauer incurred in connection with such services during the Compensation Period in the amount of **$13,238.66**; (b) authorizing and directing the Debtor to pay promptly to Proskauer the difference between (i) the amount of

---

[14] Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount. As of the date of hereof, Proskauer has not requested payment of the Gross-Up Amount.

interim compensation for professional services rendered and reimbursement of expenses incurred during the Compensation Period allowed hereunder, and (ii) the amounts for such compensation and expenses previously paid to Proskauer, consistent with the provisions of the Interim Compensation Order; (c) allowing such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred without prejudice to Proskauer's right to seek additional compensation for services performed and expenses incurred during the Compensation Period, which were not processed at the time of this Application; and (d) granting Proskauer such other and further relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: December 20, 2019
    San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Maja Zerjal (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
     ppossinger@proskauer.com
     ebarak@proskauer.com
     mzerjal@proskauer.com

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205

*/s/ Ubaldo M.  Fernández*
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and
Management Board as Representative of the
Debtor*

39