**Objection Deadline: TBD**
**Hearing Date and Time: TBD**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) Title III |
| MANAGEMENT BOARD FOR PUERTO RICO | ) |
| | ) Case No. 17-BK-03283 (LTS) |
| as representative of | ) |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) |
| | ) |
| Debtors.[1] | ) |
| | ) |
| | ) |
| In re: | ) |
| | ) PROMESA |
| | ) Title III |
| THE FINANCIAL OVERSIGHT AND | ) |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) Case No. 17-BK-03566 (LTS) |
| | ) |
| as representative of | ) |
| | ) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) |
| GOVERNMENT OF THE COMMONWEALTH OF | ) |
| PUERTO RICO, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| | ) |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK- 4780) (Last Four Digits of Federal Tax ID: 3747).

THE SPECIAL CLAIMS COMMITTEE OF THE )
FINANCIAL OVERSIGHT AND MANAGEMENT )       Adv. Proc. No. 19-00356 (LTS)
BOARD FOR PUERTO RICO, ACTING BY AND )
THROUGH ITS MEMBERS, )
)
        and )
)
THE OFFICIAL COMMITTEE OF UNSECURED )
CREDITORS OF ALL TITLE III DEBTORS )
(OTHER THAN COFINA), )
)
        as co-trustees of )
)
THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO, )
)
        Plaintiff, )
)
v. )
)
DEFENDANT 1M, *et al.*, )
)
        Defendants. )
)
_____ )
)
THE SPECIAL CLAIMS COMMITTEE OF THE )
FINANCIAL OVERSIGHT AND MANAGEMENT )       Adv. Proc. No. 19-00357 (LTS)
BOARD FOR PUERTO RICO, ACTING BY AND )
THROUGH ITS MEMBERS, )
)
        and )
)
THE OFFICIAL COMMITTEE OF UNSECURED )
CREDITORS OF ALL TITLE III DEBTORS )
(OTHER THAN COFINA), )
)
        as co-trustees of )
)
THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO, )
)
        Plaintiff, )
)
v. )

STOEVER GLASS & CO., *et al.*,

  Defendant.

---

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, ACTING BY AND
THROUGH ITS MEMBERS,

  and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS
(OTHER THAN COFINA),

  as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF PUERTO RICO,

  Plaintiff,

v.

DEFENDANT 1H-78H,

  Defendants.

Adv. Proc. No. 19-00359 (LTS)

---

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, ACTING BY AND
THROUGH ITS MEMBERS,

  and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS
(OTHER THAN COFINA),

Adv. Proc. No. 19-00361 (LTS)

|                                                              |     |
|--------------------------------------------------------------|-----|
| as co-trustees of                                            | )   |
|                                                              | )   |
|                                                              | )   |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE                       | )   |
| GOVERNMENT OF PUERTO RICO,                                   | )   |
|                                                              | )   |
|     Plaintiff,                           | )   |
|                                                              | )   |
| v.                                                           | )   |
|                                                              | )   |
| DEFENDANT 1G-50G, *et al.*,                                  | )   |
|                                                              | )   |
|     Defendants.                          | )   |
|                                                              | )   |

-------------------------------------------------------------------- X

**MOTION OF CERTAIN ERS BONDHOLDERS TO COMPEL THE EMPLOYEES
RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF
<u>PUERTO RICO TO PROVIDE COMPLETE ANSWERS TO INTERROGATORIES</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

    A.    The *Ultra Vires* Proceedings ................................................................. 3

    B.    The Discovery At Issue ......................................................................... 5

ARGUMENT ....................................................................................................................... 8

    A.    ERS Must Amend Its Responses Either to Identify Specific People by Name or to Admit That It Does Not Know of Any ......................... 9

    B.    ERS Must Amend Its Responses to State When It First Learned of the Contentions Asked About .......................................................... 11

    C.    ERS Must Provide Complete Responses to Interrogatory Nos. 2 and 11 ............ 12

CONCLUSION .................................................................................................................. 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*,
    319 F.R.D. 422 (D.P.R. 2016) ...............................................................................10

*Bramante v. McClain*,
    No. SA-06-CA-0010 WWJ, 2007 WL 102314 (W.D. Tex. Jan. 8, 2007) ...........................10

*Clark v. Berkshire Med. Ctr., Inc.*,
    No. CV 17-30186-MGM, 2019 WL 78994 (D. Mass. Jan. 2, 2019) .........................................9

*Mancia v. Mayflower Textile Servs. Co.*,
    253 F.R.D. 354 (D. Md. 2008) ................................................................................10

*Moreno Rivera v. DHL Glob. Forwarding*,
    272 F.R.D. 50 (D.P.R. 2011) ..................................................................................10

STATUTES

48 U.S.C. § 2170 ...........................................................................................................1

3 L.P.R.A. § 779 (2008) ................................................................................................4

19 L.P.R.A. § 1752 .....................................................................................................2, 5

UCC § 8-202 ......................................................................................................5, 10, 11, 12

OTHER AUTHORITIES

Fed. R. Bankr. P. 7026 ...................................................................................................1

Fed. R. Bankr. P. 7037 ...................................................................................................1

Fed. R. Bankr. P. 9014 ...................................................................................................1

Fed. R. Civ. P. 26 .........................................................................................................1

Fed. R. Civ. P. 37 .........................................................................................................1

To the Chambers of the Honorable Laura Taylor Swain and the Honorable Judith G. Dein:

Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7037, and 9014, and Federal Rules of Civil Procedure 26 and 37, made applicable to these proceedings by 48 U.S.C. § 2170, movants (the "Bondholders"),[2] all of whom are secured creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), move to compel ERS to provide full and complete responses to certain of the Bondholders' interrogatories. In support of the Motion, the Bondholders state as follows:

## INTRODUCTION

1. This Motion arises out of proceedings in which ERS, along with the Unsecured Creditors Committee and the Retiree Committee (the "Committees") contend that the nearly $3 billion in bonds that ERS sold in 2008 (the "ERS Bonds") were void from the start and are

---

[2] Movants are: Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico Fixed Income Fund VI, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., Tax-Free Puerto Rico Target Maturity Fund, Inc., and UBS IRA Select Growth & Income Puerto Rico Fund.

Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., and Oaktree Opportunities Fund IX (Parallel 2), L.P. hold through Opps Culebra Holdings, L.P. Oaktree Huntington Investment Fund II, L.P. holds through Oaktree Opportunities Fund X Holdings (Delaware), L.P. Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., and Oaktree Opportunities Fund X (Parallel 2), L.P. hold through Oaktree Opps X Holdco Ltd.

unenforceable because ERS supposedly did not have authority to issue them. The respondents make this claim despite the fact that ERS delivered contemporaneous legal opinions attesting to the legality of the bonds, the ERS Board passed resolutions affirming that it had the legal authority to issue the bonds, and the ERS Bonds traded freely for over a decade, during which time no one questioned their validity.

2.      The stakes of this dispute are enormous, both in financial terms and in terms of Puerto Rico's future access to the capital markets. ERS seeks not only to avoid any further liability to repay the $3 billion it borrowed (about two-thirds of which the Bondholders hold), but also to claw back past payments already made to bondholders. And the issues are both legal and factual, turning not only on the scope of ERS's borrowing authority under the ERS Enabling Act, but also on who knew what and when they knew it. This is because the Uniform Commercial Code makes even *invalid* debt enforceable by investors who lack notice of the particular defect, *see* 19 L.P.R.A. § 1752(b), and because the Bondholders have raised equitable claims and defenses that may turn at least in part on ERS's knowledge.

3.      The parties are presently engaged in discovery on a highly expedited schedule, and they have been able to narrow substantially their disputes over the scope of that discovery. But on one issue the parties have reached an impasse: ERS has refused to provide complete answers to four of the Bondholders' interrogatories about the core issues in this case (and refused to provide any answer at all to two of them). These interrogatories ask ERS to identify persons with knowledge of ERS's contentions that, *e.g.*, the ERS Bonds are invalid, as well as to identify when it reached those contentions. ERS originally interposed blanket objections on grounds of relevance, burden, breadth, and privilege. Then, when challenged, ERS asserted that it was not withholding responsive information, but simply "does not have additional information to supplement the

-2-

responses at this time." But this makes no sense. Some of the information ERS refused to provide, such as the dates when it reached certain conclusions, by definition *must* be information that ERS has. And for other information (such as the identities of persons with knowledge of underlying facts), if ERS knows of no such persons, it should amend its responses to say so.

4.      ERS's evasive answers mean that the interrogatories will not serve their purpose of narrowing the issues in dispute, and the parties and the Court will waste time and resources on avoidable issues. The Court should order ERS to provide competent answers.

## **BACKGROUND**

### A.      **The *Ultra Vires* Proceedings**

5.      This Court and the First Circuit have previously addressed disputes between ERS and the Bondholders concerning the nature and extent of the collateral securing the debt underlying the nearly $3 billion in ERS Bonds. However, ERS has now raised yet another defense to the enforceability of the ERS Bonds—namely that the ERS Bonds were invalid from the start because they were *ultra vires* under the ERS Enabling Act.[3]

6.      There is much in the factual record to undermine ERS's arguments. When ERS borrowed $3 billion in 2008 by issuing the ERS Bonds, it had express approval from the ERS Board of Trustees (via the "Bond Resolution") and the Government Development Bank. In addition, there were supporting legal opinions from ERS's in-house and outside counsel, and the bond issue was made with the knowledge and conspicuous support of the Puerto Rico legislature. No one asserted that the ERS Bonds were *ultra vires* for the next 10 years. In the meantime, ERS

---

[3] ERS's new contention raises complicated legal and factual issues that have been briefed in more detail elsewhere. *See, e.g.*, Resp. of Certain Secured Creditors of ERS to the Omnibus Claim Objs. of the Official Committee of Unsecured Creditors and the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, ECF No. 9012 in 17-bk-03283-LTS (the "Claim Objection Response").

paid interest on the ERS Bonds without any suggestion of invalidity, and both ERS and the legislature had repeatedly acknowledged that the ERS Bonds were existing, valid obligations. That recognition continued into the present proceedings; for example, in opposing the Bondholders' motions for stay relief or adequate protection, ERS conceded that the ERS Bonds were valid. *See, e.g.*, Joint Stip. of Movants, the Commonwealth Resp'ts, and ERS ¶¶ 6, 11, No. 3:16-cv-02696, ECF No. 65 (D.P.R. Nov. 2, 2016) (stipulating that that the ERS Bonds were "authorized" by ERS "[p]ursuant to the authority granted to it under the Enabling Act," and that "[t]he ERS Bond Resolution adopted on January 24, 2008, is a valid and binding contract between the ERS and holders of ERS Bonds"); ERS Opp'n to Mot. to Lift Stay, No. 3:16-cv-02696, ECF No. 52 (D.P.R. Oct. 26, 2016) (arguing that the ERS Bonds gave rise to "valid and enforceable liens over hundreds of millions of dollars of ERS revenue, which will continue to grow").

7.      This consistent recognition of the ERS Bonds' validity is hardly surprising. The ERS Enabling Act as it existed in 2008 plainly authorized ERS to issue the ERS Bonds. Properly translated from the controlling Spanish text, the ERS Enabling Act authorized ERS to borrow—not just seek a loan—from any financial institution, from the Puerto Rico Government, from the U.S. Government, or through direct placements of debt. 3 L.P.R.A. § 779(d) (2008). That provision authorized the issuance of the ERS Bonds both as a direct placement of debt and as borrowing from a financial institution which, of course, is exactly what happens when an issuer places its bonds with a syndicate of underwriters. ERS and the Committees' argument that the ERS Bonds are *ultra vires* ignores this controlling Spanish text and is instead based entirely on an obviously inaccurate "official" English translation of the ERS Enabling Act, which describes ERS's borrowing authority too narrowly.

8.      Moreover, even if the ERS Bonds would otherwise be invalid, they are enforceable by the Bondholders under UCC revised § 8-202(b), 19 L.P.R.A. § 1752(b). Section 8-202(b) provides that otherwise invalid government securities remain enforceable where, among other things, the government issuer had the authority to borrow money for the stated purpose, received substantial consideration in exchange for the security, and the investor purchased the securities for value without notice of the alleged particular defect. All of those conditions are met here.

9.      Notwithstanding the factual record and this legal authority, the Committees objected to the Bondholders' claims, contending that the ERS Bonds are *ultra vires* and therefore void. *See* ECF Nos. 5580 and 6482 in 17-bk-03283 (collectively, the "Claim Objections"). In addition, the Oversight Board on behalf of ERS has filed multiple adversary proceedings (collectively, the "Clawback Actions") against current and former holders of ERS Bonds, seeking to claw back payments previously made on the ERS Bonds on the ground that the ERS Bonds were void. *See* 19-ap-00356; 19-ap-00357; 19-ap-00359; and 19-ap-00361. The Bondholders have filed a Response to the Claim Objections, and have filed Answers and Counterclaims in the Clawback Actions. Pursuant to a scheduling order entered by Judge Swain on October 24, 2019, only the first count of each of the Clawback Actions, seeking a declaratory judgment that the ERS Bonds are invalid, is presently unstayed and subject to discovery. *See* ECF No. 687 in Case No. 17-bk-03566-LTS.

**B.      The Discovery At Issue**

10.      On November 1, 2019, the Bondholders served ERS with twelve interrogatories related to the *ultra vires* actions. *See* Ex. A to Decl. of Matthew Papez (Jan. 3, 2019). Four of those interrogatories are at issue in this motion:

- **Interrogatory No. 1:** "(a) State with specificity (i) the basis for Your contention that the 2008 issuance of bonds by ERS was *ultra vires* or null and void and (ii) when You first learned that anyone had made that contention, and (b) Identify all persons with knowledge of, and all Documents that Concern, the factual basis for that contention."

- **Interrogatory No. 2:** "(a) State when You first determined that, if the 2008 issuances of bonds by ERS were *ultra vires* or null and void, You and/or ERS would allegedly have grounds to avoid and recover payments made with respect to those bonds, and (b) Identify all persons with knowledge of, and all Documents that Concern, the factual basis for that contention."

- **Interrogatory No. 8:** "State whether You contend the statement in Interrogatory No. 7 [the statement in the Bond Resolution that "[t]he System is duly authorized under the Act to create and issue the Bonds and to adopt this Resolution and to create a security interest on the Pledged Property in the manner and to the extent provided in this Resolution"] is false. If You contend the statement is false, identify when You came to the conclusion that it was false and Identify all persons with knowledge of, and all Documents that Concern, the factual basis for that contention."

- **Interrogatory No. 11:** "If You contend that any person acted contrary to any law or rule in connection with the issuance of the ERS Bonds, please (a) Identify that person, (b) state what law or rule You contend that person violated, (c) state when and how You contend that violation occurred, (d) state the facts that constituted that violation, (e) state when You learned of the violation; (f) state all steps You or anyone took to remedy or correct that violation, and (g) Identify any notice You provided to anyone concerning the violation."

*See id.*

11.     ERS responded in part to Interrogatory No. 1, providing citations to other pleadings in which it describes "the basis for [its] contention that the 2008 issuance of bonds by ERS was *ultra vires* or null and void." *See* Ex. B to Papez Decl., at 7–8. But it provided no answer at all to part (a)(ii), asking "when [it] first learned that anyone had made that contention." *Id.* And in response to part (b), ERS stated only that "[u]pon information and belief, persons with factual knowledge that the ERS Bonds were issued *ultra vires* include former ERS officials, members of the Puerto Rico Legislative Assembly, and ERS Bondholders." *Id.* ERS did not identify any such persons. *Id.*

12.     ERS refused entirely to respond to Interrogatory No. 2, concerning when it first determined that it could pursue clawback actions and all persons with knowledge of, and

documents concerning, the factual basis for its contention that it could do so. *Id.* at 8–9. ERS raised

objections on grounds of overbreadth, burden, and privilege. *Id.*

13.     ERS's response to Interrogatory No. 8 was similar to its response to Interrogatory

No. 1: ERS provided "[t]he System is duly authorized under the Act to create and issue the Bonds

and to adopt this Resolution and to create a security interest on the Pledged Property in the manner

and to the extent provided in this Resolution" is false, but ERS refused to state when it reached

that conclusion, and refused to identify any specific persons with knowledge that the statement

was false. *Id.* at 7–8. Instead, ERS again stated that "Upon information and belief, persons with

knowledge that the ERS Bonds were issued *ultra vires* include former ERS officials, members of

the Puerto Rico Legislative Assembly, and ERS Bondholders." *Id.* at 8.

14.     Finally, ERS refused entirely to respond to Interrogatory No. 11, based solely on

an objection that the information sought was irrelevant. *Id.* at 15.

15.     The parties held extensive meet-and-confer teleconferences. *See* Papez Decl. ¶ 6.

During the meet-and-confer process, the Bondholders pressed ERS for complete responses to these

interrogatories. The Bondholders explained that the information sought was relevant to whether

the Bondholders had notice of the alleged invalidity and to the Bondholders' equitable defenses to

the Clawback Actions. Ex. C to Papez Decl., at 11–12. The Bondholders further explained the

inadequacy of ERS's vague reference "[u]pon information and belief" to categories of people

("former ERS officials, members of the Puerto Rico Legislative Assembly, and ERS

Bondholders") who supposedly knew the ERS Bonds were *ultra vires* and the statement in the

Bond Resolution was false, and asked ERS to either concede that it did not know of anyone with

such knowledge or else identify the relevant persons by name. *Id.* Finally, with respect to

Interrogatory No. 11, the Bondholders explained that the identity of persons who ERS contended

violated the law in connection with the ERS Bond issuance, the nature of the legal violations, and what ERS did about it was all directly relevant to ERS's contention that the ERS Bond issuance was undertaken unlawfully. *Id.* at 12. After ERS stood on its objections in a December 17 letter, *see* Ex. D to Papez Decl., the Bondholders reiterated these arguments during a meet and confer session on December 18, explaining that if ERS had no responsive information to disclose, it should simply amend its interrogatory responses to say so. *See* Papez Decl. ¶ 6.

16.     On December 23, counsel for the Oversight Board, on behalf of ERS, stated that ERS would not supplement its interrogatory answers in response to the Bondholders' requests. *See* Ex. E to Papez Decl. In doing so, counsel stated that "ERS does not have additional information to supplement the responses at this time. To be clear, ERS is not withholding responsive information and reserves the right to amend the responses as discovery progresses." *Id.* But despite that statement ERS still refused to amend its responses to admit, for example, that it does not know the identities of any persons with the knowledge asked about in Interrogatory Nos. 1, 2, 8, and 11. And it did not explain how it could possibly lack information about, for example, when ERS itself first reached the conclusions asked about in Interrogatory Nos. 1, 2, and 8.  *See* Ex. F to Papez Decl. (December 30 letter from the Bondholders to ERS making these arguments).

## ARGUMENT

17.     The interrogatories at issue go to the core issues in these proceedings of whether the ERS Bonds are *ultra vires* and when, if ever, a reasonable investor would have been placed on notice of that fact. The Court should compel ERS to provide complete answers to the Bondholders' interrogatories, including by stating expressly that it does not know of any responsive information if that is indeed the case.

A.   **ERS Must Amend Its Responses Either to Identify Specific People by Name or to Admit That It Does Not Know of Any**

18.   ERS did not identify a single individual in response to the portions of Interrogatory Nos. 1 and 8 that asked ERS to "Identify all persons with knowledge of . . . the factual basis for" ERS's contentions that the ERS Bonds are *ultra vires* and that the Bond Resolution's statement that ERS "is duly authorized under the [ERS Enabling] Act to create and issue the Bonds and to adopt this Resolution and to create a security interest on the Pledged Property in the manner and to the extent provided in this Resolution" is false. Ex. B to Papez Decl., at 7–8, 13. Rather, ERS stated in each case that "Upon information and belief, persons with knowledge that the ERS Bonds were issued ultra vires include former ERS officials, members of the Puerto Rico Legislative Assembly, and ERS Bondholders," without identifying any such individuals. *Id.* And ERS refused entirely to respond to similar portions of Interrogatory Nos. 2 and 11. *Id.* at 8–9, 15. When the Bondholders objected that this was inadequate, ERS responded that it "does not have additional information to supplement the responses" and "is not withholding responsive information." Ex. D to Papez Decl.

19.   A request "to identify individuals with relevant knowledge . . . is a standard interrogatory." *Clark v. Berkshire Med. Ctr., Inc.*, No. CV 17-30186-MGM, 2019 WL 78994, at *2 (D. Mass. Jan. 2, 2019). Among other things, "a party responding to an 'individuals with knowledge' interrogatory must separately list each individual whom the responding party knows or believes possesses relevant knowledge (whether or not the disclosing party expects to use the information to support a claim or defense)." *Id.* ERS's vague reference in response to Interrogatory Nos. 1 and 8 to categories of people it contends have knowledge, without any identifying information for any individual, entirely fails to meet that standard. So too, of course, does ERS's complete refusal to respond to these portions of Interrogatory Nos. 2 and 11.

20.   ERS initially objected to these interrogatories on grounds of relevance, burden, breadth, and privilege. But they ask ERS to identify persons with knowledge of ERS's core allegations in these proceedings, and a request to identify individuals with knowledge of a party's claims "is a standard interrogatory" that plainly concerns relevant evidence. *Id.* Among other things, information about who knew the ERS Bonds were *ultra vires* and when is directly relevant both to whether the Bondholders had notice of the ERS Bonds' alleged invalidity for purposes of UCC § 8-202 and to the Bondholders' equitable claims and defenses in the Clawback Actions. As for burden and breadth, ERS provided no supporting detail to explain why the requests are overbroad and unduly burdensome, and a party resisting discovery must specifically show how each interrogatory is vague, overly broad, or unduly burdensome. *See, e.g.*, *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 430–31 (D.P.R. 2016) (overruling general objections where party "did not provide any additional information to establish a colorable claim of overbreadth"); *Moreno Rivera v. DHL Glob. Forwarding*, 272 F.R.D. 50, 55 (D.P.R. 2011) ("A party may not state bald and generic reasons for its objections; specificity is required."); *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008) ("[B]oilerplate objections that a request for discovery is overbroad and unduly burdensome . . . are improper unless based on particularized facts.") (internal quotation marks and citations omitted). And ERS's privilege objections are equally conclusory and improper, particularly given that this is a request for factual, identifying information that cannot possibly be privileged. *E.g.*, *Bramante v. McClain*, No. SA-06-CA-0010 WWJ, 2007 WL 102314, at *1 (W.D. Tex. Jan. 8, 2007) (stating that a party asserting privilege in response to an interrogatory must invoke the privilege with specificity and bears the burden of demonstrating that the information sought is privileged).

Case:17-03283-LTS   Doc#:9697   Filed:01/03/20   Entered:01/03/20 21:20:38   Desc: Main
Document    Page 17 of 22

21.     In any event, ERS does not appear to be resting on these objections, because it stated in its December 23 message that it was "not withholding responsive information" to these interrogatories, but simply "does not have additional information to supplement the responses" to these interrogatories. Ex. E to Papez Decl. This is, of course, puzzling: either ERS does or does not have information and, either way, it is required to say so. Presumably, ERS knows of no individuals who know either that the ERS Bonds were *ultra vires* or that the Bond Resolution's statement to the contrary was false. If that is the case, this fact is highly relevant: it tends to prove that the ERS Bondholders could not have been on notice that the ERS Bonds were invalid, since even ERS does not know of a single person anywhere who thought so. In contrast, if ERS is aware of any person who "knows" that the ERS Bonds are *ultra vires*, then the Bondholders need to know who it is so they can depose that person. Either way, ERS should be compelled to provide a complete answer.

**B.      ERS Must Amend Its Responses to State When It First Learned of the Contentions Asked About**

22.     Interrogatory Nos. 1, 2, 8, and 11 each also asked ERS to state when it first reached a particular conclusion—that the ERS Bonds were *ultra vires*, that it could pursue the Clawback Actions, that statements in the Bond Resolution were false, and that individuals violated the law in connection with the ERS Bond Issuance. ERS refused to answer that portion of any of those interrogatories. There is no basis for this refusal.

23.     ERS objected to each interrogatory on grounds of relevance, burden, breadth, and privilege. But when ERS reached the conclusions in question is directly relevant both to whether the Bondholders had notice of the ERS Bonds' alleged invalidity for purposes of UCC revised § 8-202 and to the Bondholders' equitable claims and defenses in the Clawback Actions. If even ERS itself did not conclude that the ERS Bonds were *ultra vires* until very recently (which appears to

-11-

be the case), then that would badly undercut ERS's argument that the Bondholders should have known years ago that the ERS Bonds were invalid. In contrast, if ERS believed that the ERS Bonds were *ultra vires* when it issued them, but did so anyways and then waited a decade before raising the issue, that would obviously be relevant to the Bondholders' unjust enrichment and laches arguments, among other issues. Either way, when ERS reached the contentions in question is relevant. And ERS's generalized burden, breadth, and privilege objections are inadequate as already explained. *Supra* ¶¶ 18–21.

24.     Regardless, here too ERS does not appear to be standing on its objections, but instead has asserted that it is "not withholding responsive information" to these interrogatories, but simply "does not have additional information to supplement the responses" to these interrogatories. Ex. E to Papez Decl. But this makes no sense. ERS plainly knows, or can find out, when it first reached particular conclusions. It should be required to respond to this portion of the interrogatories, also.

## C.     ERS Must Provide Complete Responses to Interrogatory Nos. 2 and 11

25.     Finally, ERS objected in full to Interrogatory Nos. 2 and 11 and provided no responses at all to them. The Court should order it to respond in full.

26.     Interrogatory No. 2 solely concerned issues already addressed above in Parts A and B, asking when ERS first determined that if the ERS Bonds were *ultra vires*, it could pursue clawback actions, and the identities of persons with knowledge of that determination. As already explained, *supra* ¶¶ 22–24, the dates that ERS reached that conclusion are relevant to whether the Bondholders had notice of invalidity under UCC § 8-202 and to the Bondholders' equitable claims and defenses. For example, if ERS "knew" that payments on the ERS Bonds would supposedly be subject to clawback at the time that it made the payments that it now seeks to claw back, yet did

-12-

not act until now, that would be relevant to the Bondholders' laches defense. And the request for persons with knowledge of a contention is a standard, proper interrogatory. *Supra* ¶¶ 18–21.

27.     Interrogatory No. 11 asks ERS to identify the persons who violated the law when ERS issued its bonds, and for information about when and how ERS learned of those violations and what it did in response. ERS again objected to relevance. But the answers to these questions are certainly relevant and discoverable. The issuance of the ERS Bonds in supposed violation of law is the foundation of ERS's contention that the ERS Bonds are *ultra vires*. The identity of persons who purportedly violated the law is an important subject for further discovery, since these individuals presumably thought the ERS Enabling Act allowed them to act as they did, an issue relevant both to the merits of whether the ERS Bonds are valid and to the question of notice and equitable claims and defenses.

28.     As for ERS's other objections to these interrogatories—breadth, burden, and privilege—as already explained, *supra* ¶¶ 18–21, a request to identify persons with knowledge is a proper, standard interrogatory, and the boilerplate burden and privilege objections are inadequate to justify ERS's refusal to answer.

29.     ERS again does not appear to be resting on these objections, but rather takes the position that it "does not have additional information to supplement the responses" to these interrogatories. Ex. E to Papez Decl. But ERS has not responded to these two interrogatories at all, and it surely has *some* information. ERS must know the date it first determined that it could pursue clawback actions, the subject of part (a) of Interrogatory 2. As for part (b), which asks ERS to identify persons with knowledge of that contention (and documents concerning it), as discussed above, if ERS does not know of any such persons it should be required to say so in its response. *Supra* ¶¶ 18–21. Similarly, Interrogatory No. 11 is a contention interrogatory: it asks, "[i]f You

contend that any person acted contrary to any law or rule in connection with the issuance of the

ERS Bonds;" requests certain information about the nature of that contention; and asks who has

knowledge about it and what ERS did in response to it. If ERS makes that contention, it plainly

knows the basis for it, and it should be required to disclose it in response. Conversely, if ERS does

not make that contention, it can simply say so and thereby narrow the issues in this case. Either

way, the Bondholders are entitled to a straight answer, and in neither case would it be burdensome

for ERS to provide one.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should compel ERS to provide complete

responses to the Bondholders' interrogatories.

-14-

In San Juan, Puerto Rico, today January 3, 2020.

| | |
|---|---|
| */s/ Alfredo Fernández-Martínez* | */s/ Geoffrey S. Stewart* |
| Alfredo Fernández-Martínez | Bruce Bennett (*pro hac vice*) |
| DELGADO & FERNÁNDEZ, LLC | JONES DAY |
| PO Box 11750 | 555 South Flower Street |
| Fernández Juncos Station | Fiftieth Floor |
| San Juan, Puerto Rico 00910-1750 | Los Angeles, CA 90071 |
| Tel. (787) 274-1414 | Tel. (213) 489-3939 |
| Fax: (787) 764-8241 | Fax: (213) 243-2539 |
| afernandez@delgadofernandez.com | bbennett@jonesday.com |
| USDC-PR 210511 | |
| | Benjamin Rosenblum (*pro hac vice*) |
| | JONES DAY |
| | 250 Vesey Street |
| | New York, New York 10281 |
| | Tel. (212) 326-3939 |
| | Fax: (212) 755-7306 |
| | brosenblum@jonesday.com |
| | Geoffrey S. Stewart (*pro hac vice*) |
| | Matthew E. Papez (*pro hac vice*) |
| | Sparkle L. Sooknanan (*pro hac vice*) |
| | JONES DAY |
| | 51 Louisiana Ave. N.W. |
| | Washington, DC 20001 |
| | Tel. (202) 879-3435 |
| | Fax: (202) 626-1700 |
| | gstewart@jonesday.com |
| | mpapez@jonesday.com |
| | ssooknanan@jonesday.com |

*Counsel for Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, and SV Credit, L.P.*

/s/ Alicia I. Lavergne-Ramírez
  José C. Sánchez-Castro
  USDC-PR 213312
  jsanchez@sanpir.com

  Alicia I. Lavergne-Ramírez
  USDC-PR 215112
  alavergne@sanpir.com

  SÁNCHEZ PIRILLO LLC
  270 Muñoz Rivera Avenue, Suite 1110
  San Juan, PR 00918
  Tel. (787) 522-6776
  Fax: (787) 522-6777

/s/ Jesse L. Green

Glenn M. Kurtz (*pro hac vice*)
John K. Cunningham (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
gkurtz@whitecase.com
jcunningham@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
Jesse L. Green (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com

*Counsel for Defendants Puerto Rico AAA Portfolio
Bond Fund, Inc.; Puerto Rico AAA Portfolio Bond
Fund II, Inc., Puerto Rico AAA Portfolio Target
Maturity Fund, Inc.; Puerto Rico Fixed Income
Fund, Inc.; Puerto Rico Fixed Income Fund II,
Inc.; Puerto Rico Fixed Income Fund III, Inc.;
Puerto Rico Fixed Income Fund IV, Inc.; Puerto
Rico Fixed Income Fund V, Inc.; Puerto Rico Fixed
Income Fund VI, Inc.; Puerto Rico GNMA & U.S.
Government Target Maturity Fund, Inc.; Puerto
Rico Mortgage-Backed & U.S. Government
Securities Fund, Inc.; Tax-Free Puerto Rico Fund,
Inc.; Tax-Free Puerto Rico Fund II, Inc.; Tax-Free
Puerto Rico Target Maturity Fund, Inc.; and UBS
IRA Select Growth & Income Puerto Rico Fund*