# Exhibit 3

Proskauer Proskauer Rose LLP One International Place Boston, MA 02110-2600

December 11, 2019

William D. Dalsen
Attorney at Law
d 617.526.9429
f 617.526.9899
wdalsen@proskauer.com
www.proskauer.com

**Via Email**

David Fox, Esq.
Jones Day
100 High Street, 21st Floor
Boston, MA 02110-1781
(617) 449-6925
drfox@jonesday.com

**Re: *In Re The Employees Retirement System of the Government of the Commonwealth of Puerto Rico (ERS)* (Nos. 17 BK 3566-LTS, 17 BK 3283-LTS, 3:17-cv-1685-LTS, Adv. Proc. No. 19-366-LTS) – Objections and Responses to Discovery Requests**

Dear David:

I write in an attempt to resolve, without court intervention, numerous issues raised by responses and objections of purported ERS bondholders (the "ERS Bondholders") to the Requests for Production, Requests for Admission, and Interrogatories served by the Committees and Government Parties[1] in the above-referenced matter on November 1, 2019. We request a meet-and-confer regarding the discovery issues identified below.

## I. Requests for Production

### A. Incorporation of Non-Existent, Non-Served Responses to Interrogatories and Requests for Admission

In response to several of the Requests,[2] the ERS Bondholders purport to incorporate objections and responses to certain Interrogatories and Requests for Admission even though such responses and objections did not exist and had not been served on the Committees and Government Parties when objections and responses to the Requests were due. The ERS

[1] The Committees and Government Parties are: the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retiree Committee" and, together with the Creditors' Committee, the "Committees"), the Financial Oversight and Management Board for Puerto Rico (the "FOMB"), the Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico (the "SCC"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" and, together with the FOMB and the SCC, the "Government Parties").

[2] E.g., Request Nos. 20, 25, 26, 27, 28, 29, 31, 32, 33, 34, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 55, and 56.

Bondholders also did not state whether they will withhold responsive material as a result of their purported incorporation of those non-existent and non-served objections and responses, contrary to Rule 34(b)(2)(C).

The ERS Bondholders' attempt to incorporate non-existent and non-served responses and objections is improper. The deadline to serve objections and responses to the Requests for Production was November 22, 2019, and any objections and responses not served on that date have been waived. Further, the ERS Bondholders' apparent strategy of relying on non-existent and non-served responses and objections has already significantly delayed the conference process.

To the extent the ERS Bondholders attempt to rely on "incorporated" objections and responses not timely served under the Court's schedule, the Committees and Government Parties reserve all rights to seek appropriate relief.

**B. Unspecified Incorporation of Objections and Responses to Other Requests**

In response to multiple Requests,[3] the ERS Bondholders purport to incorporate responses and objections to other Requests for Production, without elaboration. It is unclear what the purported incorporation by reference is intended to mean. Among other things, the ERS Bondholders have not stated they are withholding documents responsive to one Request on the basis of a response and objection to another Request, but the point of incorporating other responses and objections is unclear unless the ERS Bondholders intend to withhold responsive documents.

Please confirm the ERS Bondholders are not withholding any responsive documents on the basis of these supposedly "incorporated" responses and objections to other Requests. Alternatively, please (1) identify what the ERS Bondholders are withholding due to the incorporated responses and objections as to each such incorporated response and objection and (2) the legal basis for doing so.

**C. "Publicly Available" Documents**

The ERS Bondholders appear to object to producing publicly available documents that are also within their possession, custody, or control, whether through specific objections[4] or to qualify their statement that they will produce responsive documents (i.e., will only produce documents "not otherwise publicly available").

The Committees and Government Parties do not understand what is being withheld, and how the ERS Bondholders have identified documents to be withheld, on the basis of those

[3] E.g., Request Nos. 2, 3, 4, 5, 7, 10, 40, and 41.

[4] E.g., Responses to Request Nos. 1, 17, 35, 48, 49, 50, 51, 52, 53, and 54.





objections and statements. Please confirm the ERS Bondholders will withdraw these objections and qualifications. Alternatively, please (i) describe what is being withheld on the basis of these objections for each Request; (ii) explain whether the ERS Bondholders will withhold documents in their possession, custody, or control that are publicly available; (iii) explain their basis for believing such withheld documents are publicly available; and (iv) if the ERS Bondholders are withholding documents on the grounds they are publicly available, how they have identified documents they will withhold on that basis.[5]

**D. Request for Production Nos. 1 and 2**

These Requests seek documents relating to the 2008 ERS Bond Issuance (Request No. 1) and, specifically, documents relating to the ERS Bondholders' (or the Fiscal Agent's) alleged security interest in specific alleged collateral (Request No. 2). In response to Request No. 1, the ERS Bondholders have agreed to produce specific categories of documents. In response to Request No. 2, the ERS Bondholders state they will produce "UCC-1 and UCC-3 financing statements [sic]."

It is unclear what responsive documents, if any, the ERS Bondholders intend to withhold on the grounds of identifying specific documents and categories of documents for production. Please confirm the ERS Bondholders will not rely on any documents relating to the 2008 ERS Bond Issuance other than the specific documents they have agreed to produce in response to Request No. 1. Additionally, please confirm the ERS Bondholders will not rely on any documents relating to their (or the Fiscal Agent's) alleged security interest in ERS collateral other than UCC-1 financing statements and UCC-3 financing statement amendments they will produce.

**E. Request for Production Nos. 11, 12, 13, and 14**

These Requests seek documents concerning any actions the Fiscal Agent took or any responses the ERS Bondholders had to specific legislative and executive actions. In response, the ERS Bondholders object on the grounds the terms "actions" and "responses" are vague and ambiguous, and because the Committees and Government Parties did not "specify" which responsive documents the ERS Bondholders have in their possession, custody, or control.

To the extent the ERS Bondholders intend to withhold responsive documents on the basis of those objections, the objections would be meritless. The terms "actions" and "responses" have plain ordinary meanings. The Committees and Government Parties cannot "specify" which

---

[5] A similar issue arises concerning Responses to Request Nos. 6, 9, and 15, in which the ERS Bondholders object on the grounds responsive documents "would be in the possession of ERS," without identifying whether the ERS Bondholders are withholding responsive documents on the grounds ERS has them, or how the ERS Bondholders know what ERS has. Please confirm the ERS Bondholders are not withholding any documents on the basis of this objection as to Request Nos. 6, 9, and 15.

of the ERS Bondholders' documents they seek because it is incumbent upon the ERS Bondholders to identify and produce documents responsive to the Requests.

Please confirm the ERS Bondholders will withdraw those objections to Request Nos. 11, 12, 13, and 14, and will produce responsive documents.

**F. Request for Production No. 16**

This Request seeks documents concerning any tracing analysis performed for the ERS Bondholders or on their behalf with respect to any ERS assets in which they allege they have (or the Fiscal Agent has) a security interest. The ERS Bondholders object on the grounds it seeks premature expert discovery, and discovery into expert- and attorney-produced work product.

The ERS Bondholders construe this Request too narrowly to encompass only the present discovery schedule, which the Committees and Government Parties do not seek to modify, and with which they expect the ERS Bondholders will comply. Instead, the Committees and Government Parties also seek documents concerning any tracing analysis *other than* any performed for the Lien Scope Proceeding with respect to ERS assets in which the ERS Bondholders claim (or the Fiscal Agent claims) a security interest.

Please confirm the ERS Bondholders will produce documents concerning tracing analyses during document discovery that pertain to tracing analyses other than those performed specifically for purposes of the Lien Scope Proceeding. Alternatively, please confirm no such documents exist, and no other such tracing analyses have ever been performed.

**G. Request for Production No. 18**

This Request seeks documents and communications concerning whether the ERS Bonds are ultra vires or otherwise illegal or invalid. In response, the ERS Bondholders object on the basis of privilege, and apparently refuse to review and produce documents responsive to this Request.

The ERS Bondholders' objection is misplaced. A wholesale refusal to *review* documents responsive to a request on the grounds that such documents may be privileged is improper. While some responsive documents may be subject to privilege claims, some responsive documents may not be privileged, or may have been privileged at one time but that privilege may have been subsequently waived. The ERS Bondholders have identified no reason why internal communications at each of the respective ERS Bondholders—particularly those prior to the ERS Title III case, including at the time of issuance of the ERS Bonds—would uniformly be subject to privilege. Further, the ERS Bondholders would not know the extent that privilege extends to documents responsive to this Request without first reviewing such documents. In any event, even if all such communications were privileged (and the ERS Bondholders have not so contended), the ERS Bondholders have an obligation to log responsive documents in accordance with the Federal Rules, as the existence of such communications themselves is evidence the ERS Bondholders were aware the issuance of ERS Bonds was ultra vires.





The ERS Bondholders cannot satisfy their obligation without reviewing documents responsive to this Request. Further, the ERS Bondholders have not specifically objected to this Request on the grounds a search for responsive documents would be unduly burdensome. Please confirm the ERS Bondholders will withdraw their objections to this Request; conduct a review of documents potentially responsive to this Request; produce responsive, non-privileged documents responsive to this Request; and produce an appropriate privilege log.

**H. Request for Production Nos. 19 and 21**

Request No. 19 seeks documents relating to the ERS Bondholders' acquisition and disposition of ERS Bonds—specifically, documents the ERS Bondholders used and had in their possession, custody, and control at the time they acquired or disposed of ERS Bonds. In response to this Request, the ERS Bondholders object on the grounds certain terms are vague and ambiguous (viz. "advisors," "reviewed," "considered," and "relied on"), and claim the Request is overbroad insofar as it seeks "all" documents for each instance where an ERS Bondholder acquired ERS Bonds. The ERS Bondholders state they will produce "due diligence files" produced in connection with the Lift Stay Motion.

Request No. 21 seeks documents relating to ERS Bonds the ERS Bondholders knew of or had in their possession at the time they, or their advisors, performed any evaluation or analysis of the ERS Bonds. The ERS Bondholders object on the grounds certain terms are vague and ambiguous (viz. "advisors," "evaluation," "analysis," and "ERS Bond-related information"), and claim this Request seeks "every single document about the ERS bonds at any time" and is duplicative of "multiple" but unspecified other Requests. The ERS Bondholders' objections miss the mark.

As for Request No. 19, the supposedly vague and ambiguous terms have plain ordinary meanings. The objection that the Request is overbroad makes little sense, as there are identifiable and discrete points where the ERS Bondholders chose to acquire or sell ERS Bonds, and therefore identifiable and discrete points where the ERS Bondholders reviewed documents relating to ERS Bonds to decide whether to acquire or dispose of them. Additionally, the proposed limitation of producing "due diligence files" produced in other litigation begs the question as to what the ERS Bondholders are withholding in response to this Request.

Similarly, as to Request No. 21, the supposedly vague and ambiguous terms have plain ordinary meanings.[6] The Request does not seek "every single document" about ERS bonds; instead, it seeks the documents the ERS Bondholders could have used in their evaluations and analyses of ERS bonds at the time of those evaluations and analyses. Without limitation as to the scope of this Request, an example of such documents would be a work file for an evaluation or

---

[6] Additionally, the ERS Bondholders use the term "ERS Bond-related communications or contractual agreements" in its response to Request No. 23 (emphasis added), suggesting they understand the meaning of "ERS Bond-related information."





analysis of ERS Bonds, which would contain documents the ERS Bondholders had at the time of an evaluation, and therefore would identify documents the ERS Bondholders knew about.

Please confirm the ERS Bondholders will withdraw their objections to these Requests.

**I. Request for Production Nos. 22 and 24**

These Requests seek two types of documents concerning the municipal and government securities the ERS Bondholders have purchased since 2007 in amounts exceeding (a) $10 million or (b) 1 percent of the market or other value of each ERS Bondholders' portfolio at the time of purchase.

Request No. 22 seeks bond resolutions and similar documents, including supporting documentation, for those securities. In response, the ERS Bondholders object on relevance grounds, and state the request is overly burdensome or disproportionate, without elaboration.

Request No. 24 seeks documents concerning any "private placement" or "direct placement" of those same securities. In response, the ERS Bondholders again object on relevance grounds. The ERS Bondholders also object that the terms "private placement" and "direct placement" are undefined, vague, and ambiguous. Finally, the ERS Bondholders again object on the grounds this Request is overly burdensome or disproportionate, without elaboration.

The ERS Bondholders' objections are meritless and must be withdrawn.

Both Requests seek relevant factual discovery into whether any of the other municipal and government securities it purchased used the terms "direct placement" or "private placement" to support a bond issuance. To that end, the Committees and Government Parties are entitled to see both (1) the universe of municipal or government securities the ERS Bondholders have purchased, and (2) documents and communications concerning the specific municipal or government securities that purport to be a "private placement" or "direct placement."

Refusing to provide this discovery would, among other things, deprive the parties of factual information that will show the terms "private placement" and "direct placement" do not authorize the issuance of bonds, and thereby would deprive the Court of factual information to inform its decision in the Ultra Vires Proceedings.

Further, the ERS Bondholders' "burden" objections are unfounded, as the ERS Bondholders have supplied no information to support any claim of burden or that these Requests are disproportionate as written. Additionally, even if the terms "private placement" and "direct placement" were vague and ambiguous (and they are not), the ERS Bondholders have identified no reason why it cannot identify documents and communications in which those terms appear, or why doing so would be unduly burdensome.

Please confirm the ERS Bondholders will withdraw their objections to these Requests.





**J. Request for Production Nos. 48-52**

These Requests seek documents concerning specific contentions the ERS Bondholders have made in these disputes. In response, the ERS Bondholders object on the grounds the Requests fail to "specify" which documents they seek. The ERS Bondholders further object to producing documents that "support" their contentions because doing so would require a legal determination as to relevance and as to which documents support those contentions. The ERS Bondholders state they will only produce materials "specifically referenced" in the documents identified in the Requests.

The ERS Bondholders' objections are misplaced. As with Request Nos. 11-14, the Committees and Government Parties cannot "specify" which documents the ERS Bondholders must produce because the obligation to identify and produce responsive documents is incumbent upon the ERS Bondholders. The ERS Bondholders' objection to producing documents that "support" its contentions is baseless. The disclosure of information and materials that a party may use to "support" its contentions or claims or defenses is not only common practice but required by the discovery rules. Indeed, pursuant to the discovery schedule set forth in Docket No. 8962, on November 1, 2019, the ERS Bondholders served Rule 26 Disclosures, which necessarily included certain information that the Fiscal Agent "may use to support its claims or defenses". FRCP 26(1)(A)(i) (emphasis added); *see, e.g.,* Bondholders' Initial Disclosures, at 4 ("providing list of "Individuals That May Have Discoverable Information *Supporting* the Bondholders' Defenses and Counterclaims" (emphasis added)). Moreover, the ERS Bondholders have not specifically objected to producing documents that "relat[e] to" its contentions, which necessarily include documents that "support" its contentions. Further, the ERS Bondholders supply no reason to produce only documents "specifically referenced" as opposed to documents that concern their contentions: to the extent the ERS Bondholders relied upon documents as a basis for their contentions, those documents are discoverable.

Please confirm the ERS Bondholders will withdraw their objections to these Requests.

**K. Request for Production No. 58**

This Request seeks all documents the ERS Bondholders receive in response to subpoenas they serve relating to the ERS Title III case. The ERS Bondholders object to this Request, contending it seeks irrelevant information, is overbroad, and seeks documents that are not within their possession, custody, or control. The ERS Bondholders also only agree to produce documents relating to subpoenas relating to the Ultra Vires Proceedings.

Those objections are meritless. The Committees and Government Parties are entitled to receive copies of any documents the ERS Bondholders receive in response to subpoenas they serve, however irrelevant and overbroad the ERS Bondholders' subpoenas may be. The ERS Bondholders likewise have no basis to limit their production to documents received in response to subpoenas in the Ultra Vires Proceeding. Finally, the ERS Bondholders have already made a first production of documents received from third parties responding to subpoenas.

Please confirm the ERS Bondholders will withdraw their objections to this Request.

## II. Requests for Admission

### A. Request for Admission No. 1

This Request asks whether the ERS Bondholders reviewed the ERS Enabling Act before they purchased any ERS Bonds. In response, the ERS Bondholders object on the grounds this Request is "vague and ambiguous" and, on that basis, deny the Request.

The ERS Bondholders' objection and denial are improper. The Request is not vague and ambiguous: it asks whether the ERS Bondholders reviewed a specific statute before purchasing ERS Bonds. In any event, the ERS Bondholders have not said why the Request is vague and ambiguous as required by Fed. R. Civ. P. 36(a)(5). Further, the ERS Bondholders' denial on the grounds this simple Request is "vague and ambiguous" does not "fairly respond to the substance of the matter" as required by Fed. R. Civ. P. 36(a)(4), and in fact does not respond to the Request at all. As such, this Request is deemed admitted. Fed. R. Civ. P. 36(a)(3).

### B. Request for Admission No. 2

This Request—like Request Nos. 3, 4, and 5, discussed below—seeks an admission concerning the ERS Bondholders' *awareness*. Here, Request No. 2 seeks an admission about the ERS Bondholders' awareness of authority under which ERS could issue bonds. In response, the ERS Bondholders' object on the grounds the Request "impermissibly seeks an admission of a legal conclusion," and thereby deny the Request.

The ERS Bondholders' objection and denial are improper because they do not respond to the Request. Whether the ERS Bondholders were aware of other authority under which ERS could issue bonds is not a "legal conclusion," but a factual question about what the ERS Bondholders knew. Even assuming the Request did not seek admission of a fact, it would seek the ERS Bondholders' opinion about the application of law to fact in accordance with Fed. R. Civ. P. 36(a)(1)(A). Further, the ERS Bondholders' denial on the basis of their objection does not "fairly respond to the substance of the matter" as required by Fed. R. Civ. P. 36(a)(4). In view of the above, the ERS Bondholders have failed to respond to Request No. 2, and it is thereby deemed admitted. Fed. R. Civ. P. 36(a)(3).

### C. Requests for Admission Nos. 3, 4, and 5

Request Nos. 3, 4, and 5 seek admissions concerning the ERS Bondholders' awareness of certain facts. In response to these Requests, the ERS Bondholders state they can neither admit nor deny these Requests "because they are without sufficient information to determine *whether ERS*" took the asserted actions (emphasis added), and deny the Requests.

The ERS Bondholders' responses to Request Nos. 3, 4, and 5 are improper. None of the ERS Bondholders' answers respond to the Requests: each seeks an admission concerning the

ERS Bondholders' *awareness*, not admissions concerning what ERS did. The ERS Bondholders nowhere state they made reasonable inquiry before stating they could neither admit nor deny these Requests as required by Fed. R. Civ. P. 36(a)(4). Further, the ERS Bondholders' denials in the alternative on the grounds they cannot admit or deny do not "fairly respond to the substance of the matter" as required by Fed. R. Civ. P. 36(a)(4).

In view of the above, the statement the ERS Bondholders are without sufficient information to answer questions the Committees and Government Parties did not ask are not "responses" to the Requests in any reasonable sense of the term, and these Requests are thereby deemed admitted. Fed. R. Civ. P. 36(a)(3).

**D. Request for Admission No. 6**

This Request—like Request Nos. 2, 3, 4, and 5, discussed above—again seeks an admission concerning the ERS Bondholders' awareness of a fact. Specifically, this Request asks the ERS Bondholders to admit they are not aware of loans from a financial institution made as part of the 2008 ERS Bond Issuance. In response, the ERS Bondholders object on the grounds the Request is vague and ambiguous without elaboration, and on that basis deny the Request.

The ERS Bondholders' objection and denial are improper. The Request is not vague and ambiguous, but asks a plain question about the ERS Bondholders' awareness using terms that have plain and ordinary meanings; further, the ERS Bondholders' allegation following its objection and denial suggests they understand the Request well enough to aver additional facts. As such, the ERS Bondholders' denial on the basis of their objection does not "fairly respond to the substance of the matter" as required by Fed. R. Civ. P. 36(a)(4). The ERS Bondholders have therefore failed to respond to Request No. 6, and it is thereby deemed admitted. Fed. R. Civ. P. 36(a)(3).

**E. Request for Admission No. 8**

This Request asks the ERS Bondholders to admit members of the public purchased ERS Bonds in 2008. In response, the ERS Bondholders object claiming the Request is vague and ambiguous, without elaboration. There is nothing vague or ambiguous about this Request, which seeks an admission using plain language. Further, as such, the ERS Bondholders' denial on the basis of their objection does not "fairly respond to the substance of the matter" as required by Fed. R. Civ. P. 36(a)(4). Please confirm the ERS Bondholders will withdraw their objection and provide a proper response to this Request.

**F. Request for Admission No. 9**

This Request asks the ERS Bondholders to admit the original owner of record for each ERS Bond never transferred record ownership to any party. In response, the ERS Bondholders object they lack sufficient information to admit or deny this Request, and deny the Request on the basis of that objection.

The ERS Bondholders' response is improper at least because the ERS Bondholders, for themselves and the bonds they say they own, would know whether they are the original record owners of the ERS Bonds or whether record ownership was transferred to them. Further, in response to Interrogatory No. 16, the ERS Bondholders identify the registered owner of ERS Bonds. Please confirm the ERS Bondholders will withdraw their objection and provide a proper response to this Request.

**III. Interrogatories**

**A. Interrogatory No. 6**

This Interrogatory asks the ERS Bondholders to identify each document provided to them, and relied upon by them, in connect with their purchase of any ERS Bonds. In response, the ERS Bondholders state this Interrogatory is overbroad, vague, and ambiguous, without elaboration. The ERS Bondholders then "respond…on the assumption" the Interrogatory only inquired about "documents authored by or on behalf of ERS," without explanation. The ERS Bondholders then respond they relied on public documents, and that "[c]ertain Bondholders may also have considered and relied upon press releases and other publicly available information."

The ERS Bondholders' response to Interrogatory No. 6 is deficient in multiple respects. As a threshold matter, the ERS Bondholders do not say why Interrogatory No. 6 is "overbroad, vague, and ambiguous"; it is none of those things, as it asks a straightforward question about which documents were provided to and relied upon by each ERS Bondholder in connection with any purchase of ERS Bonds.

The ERS Bondholders' limitation of their response to Interrogatory No. 6 to "documents authored by or on behalf of ERS" is improper. The Interrogatory asks for documents provided to or relied upon by ERS Bondholders—without limitation—in connect with the purchase of ERS Bonds. To the extent any ERS Bondholder was provided with *or relied upon* documents other than documents ERS created, the Committees and Government Parties are entitled to know what those documents are.

The ERS Bondholders' limited response is itself vague and ambiguous, particularly the final sentence, which states "certain" unidentified ERS Bondholders "may" have relied on "other" publicly available documents. Among other things, this limited response does not identify which ERS Bondholders "may" have relied on other documents or the basis for that assertion, and it does not identify the press releases and "other" information on which they "may" have relied. Further, this vague and ambiguous response suggests that a proper, non-limited response to Interrogatory No. 6 may reveal other categories of documents on which "certain" ERS Bondholders "may" have relied.

Please confirm the ERS Bondholders will withdraw their objections and proposed limitation to this Interrogatory, and provide a proper answer to it.





**B. Interrogatory No. 17**

This Interrogatory asks the ERS Bondholders to identify the dates on which they purchased ERS Bonds. In response, the ERS Bondholders claim *the dates* on which they purchased ERS Bonds is "confidential, proprietary information" that will only be provided upon entry of a protective order.

While the Committees and Government Parties are amenable to discussing an appropriate confidentiality order to govern discovery in this case, the information requested by Interrogatory No. 17—purchase dates—is not "confidential, proprietary information." Please confirm the ERS Bondholders will withdraw this objection and supply the requested information not subject to any confidentiality restrictions.

**C. Interrogatory No. 18**

This Interrogatory asks the ERS Bondholders to identify any assignment of claims they received when they purchased ERS Bonds. In response, the ERS Bondholders object that the phrase "assignment of claims" is "vague and ambiguous" without elaboration, and then propose limiting their response to "formal" assignments of claim for which they will produce documents pursuant to Fed. R. Civ. P. 33(d).

The ERS Bondholders' objections and proposed limitations are improper. There is nothing vague or ambiguous about the phrase "assignment of claims." This Interrogatory seeks information on any assignment of claims that the ERS Bondholders received and are currently aware of—not just "formal" assignments—rendering the offer to produce documents pursuant to Rule 33(d) regarding "formal" assignments of claims inadequate.

Please confirm the ERS Bondholders will withdraw their objections to this Interrogatory and respond to it as written as to any assignment of claims, "formal" or otherwise.

**D. Interrogatory Nos. 20 and 21**

These Interrogatories ask the ERS Bondholders for the legal and factual bases for any partial or full denial of any Request for Admission. In response, the ERS Bondholders direct the Committees and Government Parties to the responses and objections to the Requests for Admission.

The ERS Bondholders' responses to these Interrogatories are evasive and unacceptable. The ERS Bondholders' responses and objections to the Requests for Admission provide no basis, at all, for any partial or full denial of any such Request. The Committees and Government Parties are entitled to know the bases for any denial of those Requests, both in response to these Interrogatories pursuant to Fed. R. Civ. P. 33, and to understand whether the ERS Bondholders' denials "fairly respond[ed]" to the subject-matter of the Requests for Admission pursuant to Fed. R. Civ. P. 36.





Please confirm the ERS Bondholders will provide a supplemental response that answers these Interrogatories.

**E. Interrogatory No. 23**

This Interrogatory asks the ERS Bondholders to identify the source of all funds or interests in property they contend ERS held on the Title III petition date. In response, the ERS Bondholders recite portions of the definitions of "Pledged Property," "Revenues," and "Employers' Contributions" from the ERS Bond Resolution.

The ERS Bondholders' answer is deficient because it neither identifies any source of funds or interest in property nor states the ERS Bondholders have no information concerning the same. For example, the ERS Bondholders appear to claim ERS held "Pledged Property" on the petition date, but do not identify what any of that "Pledged Property" is. That response makes little sense given the ERS Bondholders' response to Interrogatory No. 24, in which they state the types of assets identified in that Interrogatory are "encompassed within the definition of Pledged Property[.]" If the ERS Bondholders have no information responsive to this Interrogatory, the Committees and Government Parties are entitled to know that.

Please confirm the ERS Bondholders will provide a supplemental response that answers this Interrogatory.

**F. Interrogatory No. 24**

This Interrogatory asks the ERS Bondholders to state the basis for their contention they have an attached security interest in certain specifically identified sources of funds or proceeds thereof—namely, ERS's pre-2008 assets, additional uniform contributions, employee contributions, funds not deposited with the Fiscal Agent, funds ERS remitted to the Fiscal Agent, Employee Loans, Employee Loan Payments, funds transferred pursuant to Act 106-2017, and ERS's investments. In response, the ERS Bondholders state each identified source of funds is "encompassed within the definition of Pledged Property" or "proceeds" thereof without elaboration, and claim on that basis to have an attached security interest in those assets.

The ERS Bondholders' answer to this Interrogatory is wholly deficient. Interrogatory No. 24 does not ask for an abstract explanation about a perfected security interest in Pledged Property, but instead seeks the basis for the contention the ERS Bondholders have a perfected security interest in the *specifically identified sources of funds* listed in the Interrogatory.

The response the ERS Bondholders provided says nothing concerning the specific sources of funds identified in the Interrogatory, other than the single conclusory statement those sources are Pledged Property. But, the point of this Interrogatory is to go beyond the ERS Bondholders' conclusory statement and inquire into the basis for it. Further, as with Interrogatory No. 23, if the ERS Bondholders have no responsive information to this Interrogatory and no basis to assert an attached security interest as to the specifically identified sources of funds, the Committees and Government Parties are entitled to know that.

Please confirm the ERS Bondholders will provide a supplemental response that answers this Interrogatory.

* * * * *

In view of the Omnibus hearing occurring today and the multiple members of our teams involved with that hearing, we are available to confer this coming Monday, December 16, 2019 concerning these matters. Please advise if that would work for you.

Finally, this letter is not intended to be a comprehensive statement of each and every issue the Committees and Government Parties have with the ERS Bondholders' responses and objections to the Requests for Production, Requests for Admissions, and/or Interrogatories. The Committees and Government Parties reserve all of their rights.

Very truly yours,

William D. Dalsen

Copies:

Margaret A. Dale, Esq. (via email) (mdale@proskauer.com)
Jennifer Roche, Esq. (via email) (jroche@proskauer.com)
Cathy Steege, Esq. (via email) (csteege@jenner.com)
Madhu Pocha, Esq. (via email) (mpocha@omm.com)
Tristan Axelrod, Esq. (via email) (taxelrod@brownrudnick.com)
Danielle D'Aquila, Esq. (via email) (dd'aquila@brownrudnick.com)
Nicholas Bassett, Esq. (via email) (nicholasbassett@paulhastings.com)