# Exhibit 4

**Proskauer**  Proskauer Rose LLP   One International Place   Boston, MA 02110-2600

January 2, 2020

William D. Dalsen
Attorney at Law
d 617.526.9429
f 617.526.9899
wdalsen@proskauer.com
www.proskauer.com

**Via Email**

Matthew Papez
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
mpapez@jonesday.com

Re:   *In Re The Employees Retirement System of the Government of the Commonwealth of Puerto Rico (ERS)* – Objections and Responses to Discovery Requests

Dear Matt:

I write to follow up on my letter of December 11, 2019 and our conferences of December 18, 2019; December 31, 2019; and January 2, 2020, concerning the issues raised by the responses and objections of the purported ERS bondholders (the "ERS Bondholders") to the Requests for Production, Requests for Admission, and Interrogatories served by the Committees and Government Parties[1] in the above-referenced matter on November 1, 2019.

While the parties have made progress on most of the issues I identified in my letter of December 11, 2019, at least three areas of dispute remain as discussed on our call earlier today. The Committees and Government Parties intend, in accordance with the schedule entered in these actions, to move to compel the ERS Bondholders to produce the information that is the subject of those disputed requests if we cannot resolve these disputes by **5:00 p.m. Eastern tomorrow**.

I.   **Request for Production Nos. 19 and 21**

Request No. 19 seeks documents relating to the ERS Bondholders' acquisition and disposition of ERS Bonds—specifically, documents the ERS Bondholders used and had in their possession, custody, and control at the time they acquired or disposed of ERS Bonds. Request No. 21 seeks documents relating to ERS Bonds the ERS Bondholders knew of or had in their possession at the time they, or their advisors, performed any evaluation or analysis of the ERS Bonds.

---

[1] The Committees and Government Parties are: the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retiree Committee" and, together with the Creditors' Committee, the "Committees"), the Financial Oversight and Management Board for Puerto Rico (the "FOMB"), the Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico (the "SCC"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" and, together with the FOMB and the SCC, the "Government Parties").

**Proskauer**

Mr. Matthew Papez, Esq.
January 2, 2020
Page 2

      Following our conferences, our understanding is that the ERS Bondholders do not intend to stand on their objections these Requests are "vague" or "ambiguous." Further, the ERS Bondholders intend to produce (a) documents responsive to these requests that are identified through search terms to be discussed and finalized, (b) diligence files, (c) work files, and (d) investment committee memoranda (or similar documents) and supporting materials—but only if such documents "touch upon ultra vires issues."

      As I noted on our call earlier today, the proposed limitation of producing documents that "touch upon ultra vires issues" is not acceptable. We do not understand what that limitation means or how it would be implemented in practice. Further, as you noted on our call, what your clients believed and knew at the time they acquired ERS Bonds is relevant at least to notice issues the ERS Bondholders intend to raise.

      The ERS Bondholders must therefore withdraw the proposed limitation that such documents "touch upon ultra vires issues" for purposes of producing responsive documents, and produce the categories of documents identified above.

**II.     Request for Production Nos. 22 and 24**

      These Requests seek documents concerning municipal and government securities other than the ERS Bonds that the ERS Bondholders have purchased, including specifically documents relating to the "private placement" or "direct placement" of any such securities.

      As I noted in my December 11, 2019 letter and during our conferences, we seek this discovery to avoid surprise and to rebut the ERS Bondholders' positions. For example, to the extent the ERS Bondholders would rely on their "experience" or what they claim to be "commercial practice" to advance interpretations of the ERS Enabling Act, the Committees and Government Parties would be entitled to the documents underlying those claims. Further, to the extent the ERS Bondholders' experts would opine, among other things, that "private placements" or "direct placements" are "*economically* similar" or "*commercially* similar" to bond issuances, we are entitled to understand whether the ERS Bondholders' documents would support such opinions.

      In short, the ERS Bondholders' refusal to provide this discovery would, among other things, deprive the parties of factual information that will show the terms "private placement" and "direct placement" do not authorize the issuance of bonds.[2] Further, as you noted on our call, what your clients believed and knew at the time they acquired ERS Bonds is relevant at least to notice issues the ERS Bondholders intend to raise.

---

[2] To be clear, we do not concede the interpretation of the ERS Enabling Act is a factual issue. Instead, as noted repeatedly, we seek this discovery because the ERS Bondholders either do not agree the interpretation of the ERS Enabling Act is a pure question of law, or because they will not take a definitive position on that issue.

**Proskauer**

Mr. Matthew Papez, Esq.
January 2, 2020
Page 3

On our call today, I noted we would consider deferring a motion to compel the ERS Bondholders to produce documents in response to these Requests if the ERS Bondholders agreed:

(a) The construction of the ERS Enabling Act, including but not limited to the interpretation of the terms "private placement" and "direct placement," were questions of law that did not implicate factual issues;

(b) The ERS Bondholders would not rely on their experience or their understanding of commercial practice or what is commercially reasonable (or the like) to argue interpretations of the ERS Enabling Act or those terms; and

(c) The ERS Bondholders' experts would not offer any opinion that the terms "direct placement" and "private placement" are "economically similar" or "commercially similar" or the like to a bond issuance.

The ERS Bondholders did not agree, and stated they would not limit the positions they may take in these actions at this time.

The Committees and Government Parties also offered to limit these Requests, at least initially, to (1) offering statements, (2) indentures or resolutions, and (3) CUSIPs for the municipal and government securities the ERS Bondholders purchased within the timeframe identified in the Requests for Production.

The ERS Bondholders also did not agree to those limitations. Instead, the ERS Bondholders claim the burden of performing any search is too great—even though they have provided no information to substantiate any "burden" argument (e.g., any metrics or client-specific burdens), and have done nothing more than describe in general terms the steps they would take to identify responsive documents.

The Committees and Government Parties intend to move to compel the production of documents responsive to these Requests should the ERS Bondholders not agree to do so.

**III.    Request for Admission No. 2**

This Request seeks an admission concerning the ERS Bondholders' *awareness* of other authority (i.e., beyond the ERS Enabling Act) under which ERS could engage in debt financing. Following our conference of December 18, the ERS Bondholders supplemented their response, stating that whether an "authority" "permits" ERS to engage in debt financing is a legal question inappropriate for a Request for Admission, citing *McConkie v. Nichols*, 392 F. Supp. 2d 1, 7 n.6 (D. Me. 2005).

As noted on our call, this straightforward request should simply be denied if the ERS Bondholders are not aware of other authority under which ERS could engage in debt financing. As I noted in my letter of December 11, 2019, Rule 36 permits inquiry into the application of law to fact in accordance with Fed. R. Civ. P. 36(a)(1)(A). Further, the *McConkie* case is inapposite,

**Proskauer**

Mr. Matthew Papez, Esq.
January 2, 2020
Page 4

as the unusual admission there not only concerned the ultimate issue in the case (viz. incarceration "as a result of Nichols' violation of McConkie's due process rights"), but was inconsistent with the law of the case. *McConkie*, 392 F. Supp. 2d at 7 n.6.

The Committees and Government Parties intend to move to deem this Request admitted or, in the alternative, compel a proper supplemental response to this Request should the ERS Bondholders not agree to do so.[3]

\*   \*   \*   \*   \*

Please advise no later than 5:00 p.m. tomorrow, January 3, 2020, whether the ERS Bondholders will produce the information requested above. The Committees and Government Parties otherwise intend to file a motion to compel to seek that information.

Very truly yours,

William D. Dalsen

Copies:

Margaret A. Dale, Esq. (via email) (mdale@proskauer.com)
Jennifer Roche, Esq. (via email) (jroche@proskauer.com)
Cathy Steege, Esq. (via email) (csteege@jenner.com)
Madhu Pocha, Esq. (via email) (mpocha@omm.com)
Tristan Axelrod, Esq. (via email) (taxelrod@brownrudnick.com)
Danielle D'Aquila, Esq. (via email) (dd'aquila@brownrudnick.com)
Nicholas Bassett, Esq. (via email) (nicholasbassett@paulhastings.com)

---

[3] The ERS Bondholders have agreed to further supplement their responses to Request for Admission No. 1 to deny the Request on behalf of each ERS Bondholder. We will evaluate the sufficiency of that further supplemental response when we receive it.