# EXHIBIT D

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------X

IN RE:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF
PUERTO RICO,

              Debtor.

PROMESA
Title III

No. 17 CV 1685-LTS
No. 17 BK 3566-LTS
(Jointly Administered)

---------------------------------------------------------------X

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF
PUERTO RICO,

     and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS
(OTHER THAN COFINA),

     as section 926 trustee of

THE COMMONWEALTH OF PUERTO RICO

     Plaintiffs,[1]
          v.

Adversary No: _____

PROMESA
Title III

---

[1] The Official Committee of Unsecured Creditors serves as section 926 trustee and co-plaintiff in the prosecution of this adversary proceeding pursuant to that certain Stipulation (defined below), which is incorporated herein by reference.

ANDALUSIAN GLOBAL DESIGNATED
ACTIVITY COMPANY; THE BANK OF NEW
YORK MELLON CORPORATION; MASON
CAPITAL MASTER FUND LP; OCHER ROSE,
L.L.C.; SV CREDIT, L.P.; CROWN MANAGED
ACCOUNTS FOR AND ON BEHALF OF
CROWN/PW SP; LMA SPC FOR AND ON
BEHALF OF MAP 98 SEGREGATED
PORTFOLIO; OCEANA MASTER FUND LTD.;
PENTWATER MERGER ARBITRAGE MASTER
FUND LTD.; AND PWCM MASTER FUND LTD,

Defendants.

-------------------------------------------------------------X

## **ADVERSARY COMPLAINT**

Pursuant to Federal Rule of Bankruptcy Procedure 7001(1), (2), and (9), made applicable

to these Title III cases by section 310 of the *Puerto Rico Oversight, Management, and Economic*

*Stability Act* ("PROMESA"),[2] and the *Stipulation and Agreed Order by and Among Financial*

*Oversight and Management Board, Its Special Claims Committee, and Official Committee of*

*Unsecured Creditors Related to Joint Prosecution of Certain Causes of Action of Puerto Rico*

*Highways and Transportation Authority and Employees Retirement System of the Government of*

*the Commonwealth of Puerto Rico* [Docket No. 6990] (the "Stipulation"), the Employees

Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS," "System,"

or the "Debtor"), by and through (i) the Financial Oversight and Management Board for Puerto

Rico (the "FOMB"), as the Debtor's representative pursuant to section 315(b) of PROMESA,

and (ii) the Official Committee of Unsecured Creditors of all Title III Debtors (other than

COFINA) (the "Committee", and together with the FOMB and ERS, the "Plaintiffs"), as section

926 trustee and co-plaintiff pursuant to the Stipulation, in each case by and through undersigned

---

[2] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

2

counsel, allege as follows for their *Adversary Complaint* against Defendants Andalusian Global Designated Activity Company, Mason Capital Master Fund LP, Ocher Rose, L.L.C., SV Credit, L.P, Crown Managed Accounts for and on behalf of Crown/PW SP, LMA SPC for and on behalf of Map 98 Segregated Portfolio, Oceana Master Fund Ltd., Pentwater Merger Arbitrage Master Fund Ltd., and PWCM Master Fund Ltd. (collectively, the "Bondholders") and The Bank of New York Mellon Corporation (the "Fiscal Agent", and together with the Bondholders, "Defendants").

## NATURE OF THE ACTION[3]

1.      This proceeding arises following the United States Court of Appeals for the First Circuit's decision in *Altair Global Credit Opp., et al. v. Employees Retirement System, et al.*, 914 F.3d 694 (1st Cir. 2019), and out of a dispute between ERS and the Defendants regarding the extent and enforceability of asserted security interests in Pledged Property (as defined below).

2.      As of the ERS Petition Date, ERS had assets with a face value of over $2 billion. These assets consisted of (i) collections of Employers' Contributions (approximately $200 million) being held in a segregated account pursuant to order of this Court, (ii) ERS's right to receive unpaid Employers' Contributions owed by covered employers on account of pre-petition work performed by their employees to the extent any such right arose pre-petition (the "Accounts Receivable") (approximately $105.5 million), (iii) collections of and amounts owed to ERS respecting Additional Uniform Contributions that all participating employers were required to make beginning in 2013 ("AUC") (approximately $715 million), (iv) Employee Loans and Employee Loan Payments (approximately $531.7 million), and (v) other cash and investments, which may include assets held by ERS prior to the issuance of ERS Bonds or proceeds thereof ("Pre-2008 Assets"), private equity investments, stocks, bonds, bond proceeds, employee

---

[3] All undefined terms herein shall have the meaning ascribed to them below.

Case:17-03283-LTS Doc#:7004-1 Filed:05/06/20 Entered:05/06/20 15:00:46 Desc:
Exhibit 1 Page 5 of 32

contributions, and bonds issued by other Puerto Rico instrumentalities, such as COFINA (approximately $958 million).

3.      In light of the First Circuit's decision regarding the Bondholders' UCC-1 filings, a determination is sought regarding the scope and extent of the Bondholders' asserted security interest and in which collateral (if any) that security interest is perfected by those UCC-1 filings.[4] For the reasons set forth below, the Bondholders' asserted security interest extends only to (a) the Employers' Contributions, to the extent they have already been paid to Defendants pursuant to the July Stipulation (described further below), and (b) the Accounts Receivable.[5]

4.      Defendants' original collateral as described in section 501 of the pension funding bond resolution adopted by the board of trustees of ERS on January 24, 2008 (the "Resolution," attached as Appendix VI to the Offering Statement) includes neither the Pre-2008 Assets nor the AUC, nor any other funds that are not Employers' Contributions. And, neither the Pre-2008 Assets nor any funds that were not Employers' Contributions, including the AUC, are proceeds of Defendants' original collateral. Defendants' original collateral consists of certain Employers' Contributions made to ERS under three specific provisions of the Enabling Act. Defendants' security interest covers only assets ERS acquired after the date of the Resolution in 2008, and thus the Pre-2008 Assets cannot constitute proceeds of any of Defendants' collateral. In the case of the AUC, Puerto Rico's Legislative Assembly amended ERS's Enabling Act in 2013, creating a new supplemental contribution owed by participating employers to address the dire underfunding crisis at ERS. The AUC is owed under a separate and distinct statutory provision,

---

[4] On April 30, 2019, ERS filed a petition for certiorari with the United States Supreme Court seeking to reverse the First Circuit's determination that the Bondholders' properly perfected their security interests, to the extent any such security interests could be perfected by the filing of a financing statement and the financing statement has a description of the collateral in which the Bondholders have a security interest.
[5] The Committee does not believe that the Bondholders' asserted security interest extends to Accounts Receivable. See Count VIII below.

which is not included in the Resolution's definitions of "Employers' Contributions,"
"Revenues," and "Pledged Property." Specifically, the AUC, which is expressly provided for
under section 5-117 of the Enabling Act, does not fall within the definition of Employers'
Contributions, which is limited to contributions made by employers pursuant to Enabling Act
sections 2-116, 3-105, or 4-113.

5. Additionally, while the Defendants' security interest may attach to Employers'
Contributions upon transfer by ERS to the Bank of New York Mellon, as fiscal agent (the "Fiscal
Agent") under the Resolution, such interest does not remain attached to funds that the Fiscal
Agent remits to ERS. The Resolution requires that ERS transfer all Employers' Contributions to
the Fiscal Agent on a monthly basis. The Fiscal Agent then applies those funds to debt service
and reserve accounts. Once certain reserve requirements are satisfied, the Resolution permits the
Fiscal Agent to remit funds above specified thresholds to ERS. Whatever security interest
Defendants had in such funds did not survive the transfer to ERS. This is because the senior and
subordinate pension funding bonds (the "ERS Bonds") are payable *solely* from "Pledged
Property," and not any other assets of ERS. The definition of Pledged Property does not include
any funds remitted to ERS by the Fiscal Agent. Due to the nonrecourse nature of the ERS Bonds,
the Resolution and disclosure documents make clear that the Bondholders cannot look to funds
remitted to ERS for repayment because they would not be "Pledged Property." As a result,
Defendants' security interest (if any) does not remain attached to funds remitted to ERS by the
Fiscal Agent in accordance with the Resolution.

6. In addition, while no security interest attaches to the funds remitted to ERS by the
Fiscal Agent, any alleged security interest in the funds remitted to ERS would remain perfected
only to the extent the funds are identifiable. Funds remitted to ERS by the Fiscal Agent were

5

deposited in ERS's operating account where they were commingled with ERS's other assets, including employee contributions, AUC collections, Pre-2008 Assets and Employee Loan Payments, none of which are subject to Defendants' security interest. Thus, funds remitted to ERS are not identifiable cash proceeds if they cannot be traced and Defendants' security interest in such funds is not otherwise perfected. As a result, Defendants' asserted security interest in funds remitted to ERS is precluded under Puerto Rico Uniform Commercial Code ("UCC") section 9-315 and 19 L.P.R.A. section 2265.

7. Because Defendants have neither an effective nor a perfected security interest in Pre-2008 Assets, the AUC, employee contributions, funds remitted to ERS by the Fiscal Agent, or proceeds thereof, including the Employee Loans and Employee Loan Payments, Defendants do not have any enforceable security interest in any of ERS's remaining assets.

8. Through this adversary proceeding, ERS seeks a judgment declaring that: (i) Defendants' asserted security interests did not attach to Pre-2008 Assets (defined above) and therefore also did not attach to any proceeds thereof; (ii) Defendants' asserted security interest did not attach to funds that were not Employers' Contributions, including the AUC, and also did not attach to any proceeds thereof; (iii) Defendants' asserted security interest did not attach to Employee Loans and Employee Loan Payments and also did not attach to any proceeds thereof; (iv) Defendants' asserted security interest, if attached, did not remain attached to funds remitted to ERS by the Fiscal Agent in accordance with the Resolution, because those funds were commingled with funds not subject to Defendants' security interest and are not identifiable, and also did not attach to any proceeds thereof; (v) any security interest in funds remitted to ERS by the Fiscal Agent or any proceeds thereof, including the Employee Loans and Employee Loan Payments, are unperfected and thus invalid and unenforceable under section 544(a) of the

6

Bankruptcy Code[6] and section 9-317 of the UCC and 19 L.P.R.A. section 2267(a); (vi) Defendants' asserted security interest is not perfected with respect to any deposit accounts as to which the Fiscal Agent does not have control, and such security interest should be avoided, recovered for ERS pursuant to section 550 of the Bankruptcy Code, and/or automatically preserved for the benefit of ERS pursuant to section 551 of the Bankruptcy Code; (vii) ERS's interest in deposit accounts not held by the Fiscal Agent and funds credited to such deposit accounts is entitled to priority over any security interests in such accounts and such funds held by Defendants pursuant to L.P.R.A. section 2267(a)(2), and all Defendants' claims to such security interests should be disallowed; (viii) Defendants have no security interest in the right to receive employers' contributions or any employers' contributions that have not yet been received by ERS (except for the Accounts Receivable);[7] and (ix) if the Supreme Court reverses the First Circuit's determination in *Altair Global Credit Opp.*, the Defendants do not have, and are not beneficiaries of, properly perfected security interests in the Pledged Property, and thus any and all security interests in such property asserted by the Defendants are invalid and unenforceable against ERS pursuant to section 544(a) of the Bankruptcy Code. ERS also seeks an order directing all funds on deposit in the postpetition segregated account established in accordance with the Adequate Protection Motion be remitted to ERS.[8]

## PARTIES

9. ERS is a trust established by the Commonwealth of Puerto Rico (the "Commonwealth") in 1951 for the economic well-being of public employees. *See* Act No. 447-

---

[6] All sections of the Bankruptcy Code referenced in this Adversary Complaint are made applicable to this proceeding pursuant to 48 U.S.C. § 2161.
[7] As mentioned above in footnote 5, the Committee does not believe that the Bondholders' asserted security interest extends to Accounts Receivable. *See* Count VIII below.
[8] ERS reserves its rights to avoid any alleged security interest and recover amounts due pursuant to applicable law, including (without limitation) under sections 544, 547, 548, 549, 550, and 551 of the Bankruptcy Code.

1951 (codified, as amended, at 3 L.P.R.A. §§ 761–788 (the "Enabling Act")). ERS's principal place of business is located in Puerto Rico.

10. Congress created the FOMB as an entity within the Commonwealth government pursuant to PROMESA.

11. Co-Plaintiff the FOMB is an entity within the Commonwealth government established pursuant to PROMESA that serves as ERS's sole representative in its Title III case, pursuant to PROMESA section 315(b).

12. Co-Plaintiff the Committee is the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA). The Committee was appointed by the United States Trustee on June 15, 2017.

13. Defendant Andalusian Global Designated Activity Company is a designated activity company organized and existing under the laws of Ireland with its principal place of business at 70 Sir John Rogerson's Quay, Dublin, Ireland.

14. Defendant the Bank of New York Mellon Corporation is a corporation organized and existing under the laws of New York with its principal place of business at 240 Greenwich Street, New York, NY 10007.

15. Defendant Mason Capital Master Fund LP is a limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business at Ugland House, George Town, Grand Cayman, Cayman Islands, KY1-1104.

16. Defendant Ocher Rose, L.L.C. is a limited liability company organized and existing under the laws of Delaware with its principal place of business at New York, NY.

17. Defendant SV Credit, L.P. is a limited partnership organized and existing under the laws of Delaware.

18.     Defendant Crown Managed Accounts for and on behalf of Crown/PW SP is a segregated portfolio company organized and existing under the laws of the Cayman Islands, with its principal place of business at Grand Pavilion, Commercial Centre, 1st Floor, 802 West Bay Road, George Town, Grand Cayman KY 1-1207, Cayman Islands.

19.     Defendant LMA SPC for and on behalf of Map 98 Segregated Portfolio is a segregated portfolio company organized and existing under the laws of the Cayman Islands with its principal place of business at Cayman Corporate Centre, 27 Hospital Road, George Town, Grand Cayman KY1-9008, Cayman Islands.

20.     Defendant Oceana Master Fund Ltd. is an investment fund organized and existing under the laws of the Cayman Islands with its principal place of business at 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands.

21.     Defendant Pentwater Merger Arbitrage Master Fund Ltd. is an investment fund organized and existing under the laws of the Cayman Islands with its principal place of business at 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands.

22.     Defendant PWCM Master Fund Ltd. is an investment fund with its principal place of business at 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to 48 U.S.C. § 2166 because this action arises in or relates to ERS's underlying Title III PROMESA proceeding.

24.     This Court has personal jurisdiction over Defendants pursuant to 48 U.S.C. § 2166(c).

25.     Venue is proper in this District pursuant to 48 U.S.C. § 1391 because all or a substantial part of the events giving rise to ERS's claims occurred in this District. Venue is also

proper under 48 U.S.C. § 2167 because this adversary proceeding is brought in a Title III PROMESA proceeding.

26.     This adversary proceeding is brought pursuant to rule 7001 of the Federal Rules of Bankruptcy Procedure, made applicable to this proceeding pursuant to 48 U.S.C. § 2170.

27.     This is an appropriate action for declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. There currently exists an actual, justiciable controversy between the parties regarding the extent, enforceability, perfection and priority of the security interests asserted by Defendants in certain of ERS's property.

## FACTS

### I.      ERS

28.     ERS is a trust established by the Commonwealth in 1951 for the economic well-being of public employees. ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities. *See* 3 L.P.R.A § 775. ERS was established to administer the payment of pensions and other benefits to officers and employees of the Commonwealth government, members and employees of Puerto Rico's Legislative Assembly (the "Legislature"), and officers and employees of public corporations and municipalities. *See* 3 L.P.R.A § 761.

29.     There were over 260,000 active retirees and employees who participated in ERS and relied on it for retirement and other benefits. Many of these beneficiaries relied on payments from ERS as their primary source of income.

30.     Under the Enabling Act, all government employees whose retirement benefits were administered by ERS were to receive defined benefits calculated based on a statutory formula that considered factors including the employee's salary and years of service. *See* 3 L.P.R.A. § 761, *et seq.*

31.     ERS was funded primarily by contributions from employers, the amount of which was determined by statute. Employers covered by ERS included the Commonwealth, its instrumentalities, and municipalities, excluding, among others, the Commonwealth's school system and the Commonwealth judiciary. Historically, the Commonwealth's contributions amounted to 59% of the Employers' Contributions ERS received, with municipalities and public corporations contributing the remaining 41%. *See* Commonwealth of Puerto Rico Financial Information and Operating Data Report at 228 (Dec. 18, 2016), available at http://www.gdb.pr.gov/documents/CommonwealthofPuertoRicoFinancialInfoFY2016-12-18-16.pdf.

32.     From the time the bonds were issued in 2008 until July 1, 2017, employees also contributed to ERS. Employee contributions were withheld from paychecks and deposited into ERS's operating account.

33.     In addition to paying out benefits, ERS was authorized to, and did, make personal and home mortgage loans ("Employee Loans") to employee participants and retirees. *See* 3 L.P.R.A § 779. ERS has approximately 100,000 Employee Loans outstanding with a principal amount outstanding of approximately $500 million as of the date of the filing of ERS's Title III Petition. ERS received funds from the repayment of Employee Loans (such payments, "Employee Loan Payments"). As described above, a significant amount of funds held by ERS constitute Employee Loan Payments. The Employee Loans were not made with proceeds of Defendants' collateral. The Fiscal Agent never took possession of the notes evidencing Employee Loans, nor did any financing statement cover Employee Loans.

34.     ERS stopped making new Employee Loans in 2016.

## II.     ERS Fiscal Crisis and Attempts at Reform

35.     As of June 30, 1998, ERS's defined benefit plan was "in critical condition with an actuarial deficit that exceed[ed] five point nine billion dollars, according to the projections of [ERS's] actuaries." *See* Act 305 of September 24, 1999, Statement of Legislative Intent, ("Act 305"). Act 305 was one of the first attempts to reform Puerto Rico's retirement system. Act 305 sought to address structural underfunding at ERS by establishing a hybrid defined contribution model for both (a) new employees hired on or after January 1, 2000 and (b) previously hired employees who elected to transfer from the existing defined benefit plan ("System 2000"). Act 305, Statement of Legislative Intent. Under System 2000, a "savings account" was established for each participant that enrolled in the retirement system on or after January 1, 2000. Act 305, § 3-101(a).[9] Each System 2000 participant was required to make contributions to ERS. *Id.* § 3-104(a).

36.     Notwithstanding the System 2000 reforms, ERS's financial condition and the health of Puerto Rico's public employee retirement and pension system continued to deteriorate. Structural deficits led to further underfunding as "the annual benefit payments and administrative expenses of [ERS] were significantly larger than the member and employer contributions made to [ERS]." Commonwealth of Puerto Rico Financial Information and Operating Data Report at 73–74 (Nov. 6, 2015) ("2015 Commonwealth Report"), available at www.gdb.pr.gov/documents/CommonwealthReport11-06-15.pdf. For several fiscal years, actual contributions to ERS were less than ERS's basic benefit obligations and administrative expenses. *See* Commonwealth of Puerto Rico Financial Information and Operating Data Report at 145 (Oct. 30, 2014), available at www.gdb.pr.gov/documents/CommonwealthReport-

---

[9] ERS does not take any position with respect to the rights of ERS participants and retirees relating to their contributions and retirement benefits.  Nothing herein should be deemed or construed as taking a position regarding the rights of ERS participants and retirees.  ERS reserves all rights with respect to such issues.

October302014.pdf. The deterioration in the value of ERS's invested assets relating to the 2008 financial crisis also contributed to its current fiscal crisis. *See id.* at 145–46. Upon information and belief, ERS used investment income and its assets to address negative cash flow resulting from obligations to retirees and, as a result, its "total (gross) assets were projected to be exhausted by fiscal year 2019." *Id.* at 74.

37.    In 2013, additional measures were taken to address ERS's dire financial situation. Act 3 of April 4, 2013 ("Act 3-2013") adopted a comprehensive reform of ERS. Among other measures, Act 3-2013 (i) increased the retirement age; (ii) increased contributions to the system; and (iii) in the case of active employees who were participants in the defined benefit plan, froze all retirement benefits accrued through June 30, 2013, and provided that thereafter the benefits of such participants would accrue under a hybrid defined contribution formula.

38.    As part of the 2013 reforms, the Legislature further amended the Enabling Act to create the AUC, which required all participating employers to make supplemental contributions to ERS intended to "make up the System's cash flow deficit." 3 L.P.R.A. § 787q(a). The AUC was payable in an amount based "on the percentage of the total employer contributions corresponding to such employer during the current year." *Id.* § 787q(b).

39.    Notwithstanding such efforts and measures, ERS's financial condition continued to worsen. *See* 2015 Commonwealth Report at 159. As the Congressional Task Force on Economic Growth in Puerto Rico ("Task Force") found in its report to Congress, as of June 30, 2015, ERS was "in a negative funded position" and "at risk of becoming insolvent." *See* Congressional Task Force on Economic Growth in Puerto Rico, Report to the House and Senate at 12 (Dec. 20, 2016).[10]   The Task Force further reported that as of June 30, 2015, ERS had a

---

[10] The Task Force report is available at:

"net pension liability of $33.2 billion with a funded ratio of [negative] 1.8 percent." *Id.* at 12; *see also* 2015 Commonwealth Report at 40 ("The assets of the Commonwealth's retirement systems will be completely depleted within the next few years unless the Commonwealth makes significant additional contributions to the retirement systems.").

40.     Responding to the imminent liquidity crisis at ERS, on April 6, 2016, Governor García Padilla signed the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, Act 21-2016 (the "Moratorium Act"). The Moratorium Act authorized the Governor to prioritize essential government services over the financial obligations of the Commonwealth and its instrumentalities by imposing a moratorium on debt service payments. Act 21-2016, §§ 108, 201(a).

41.     On June 30, 2016, Governor García Padilla signed an Executive Order (E.O. 2016-031) declaring a "state of emergency" at ERS and announcing the commencement of an emergency period for ERS. *See* E.O. 2016-031 at 2, attached hereto at **Exhibit A**. The ERS Executive order suspended "any obligation of ERS pursuant to [the ERS Bond Resolution] to transfer contributions made by employers that participate in ERS, and any assets in lieu thereof or derived thereunder paid to ERS under [the ERS Enabling Act] to the [Fiscal Agent]." *Id.* at 2–3.

### III.     2017 Pension Reform

42.     In 2017, the Rosselló administration and the FOMB moved to address the financial crisis at ERS and safeguard retirement benefits.

---

https://www.finance.senate.gov/imo/media/doc/Bipartisan%20Congressional%20Task%20Force%20on%20Economic%20Growth%20in%20Puerto%20Rico%20Releases%20Final%20Report.pdf.

43.     On June 25, 2017, the Legislature passed the Joint Resolution for Other
Allocations for Fiscal Year 2017-2018 ("Joint Resolution 188" or "J.R. 188"). On August 23,
2017, the Legislature passed and Governor Rosselló signed into law Act 106-2017 ("Act 106").

44.     As described in the Statement of Legislative Intent accompanying Act 106:

> Despite the fact that the reforms implemented in the past have not
> been effective, doing nothing is not an option. The wellbeing of
> public servants and our retirees is a priority for this
> Administration.
>
>                             . . .
>
> This being the case, all available viable options for dealing with
> the current crisis in the Retirement Systems have been carefully
> analyzed. . . . [D]ue to the imminent insolvency of the Retirement
> Systems, this Legislative Assembly considers it reasonable and
> necessary that the General Fund would assume responsibility to
> cover the payments that the Retirement Systems are unable to
> make to our pensioners. . . . This demonstrates the commitment of
> this Administration to our pensioners. To do otherwise would
> deprive our retirees of their pensions, with all the consequences
> this would involve for them, as well as for the Government and
> society in general.

Act 106, Statement of Legislative Intent.

45.     Together, Act 106 and Joint Resolution 188 reformed Puerto Rico's retirement
systems by having covered employers assume the pension obligations corresponding to their
respective pensioners.  Employers are obligated to reimburse the Commonwealth for Pay-Go
payments the Commonwealth advances to the employers' current pensioners.  Because ERS
would no longer be responsible for paying benefits, Act 106 eliminated employers' obligations to
make Employers' Contributions to ERS.  See Act 106, §§ 2.1(b), 2.4(e); J.R. 188, § 4. As part of
these reforms, and in partial exchange for the Commonwealth's assumption of ERS's obligation
to pay retirement benefits, ERS was required to sell its assets and transfer the proceeds of sale, in
addition to any existing available funds, to the Puerto Rico Department of Treasury's general

15

fund to offset a portion of the Commonwealth's assumed pension liabilities. *See* Act 106, § 1.4; J.R. 188, § 2.

46.     Prior to Act 106's enactment, ERS did not negotiate employer contribution rates. Rather, the rates were set by the Legislature.

47.     Prospective bondholders were expressly placed on notice that potential employer contributions to ERS were subject to change and there was no assurance that the employers would be obligated to continue making the contributions going forward. For example, the offering statement for the first series of the ERS Bonds (the "Offering Statement", available at www.gdb.pr.gov/pdfs/public_corp/PensionBondsOS-Jan08-final.pdf) states that "*[t]he Legislature of the Commonwealth could reduce the Employer Contribution rate or make other changes in existing law that adversely affect the amount of Employer Contributions*." Offering Statement at 26 and 37 (emphasis in original). The Offering Statement further states that there is no covenant by the Legislature of the Commonwealth "not to amend the [Enabling Act] in a way adverse to Bondholders." *See id.* at 26. Further, under the UCC, any modification or elimination of obligations to make payments to ERS are enforceable against a secured party who claims a security interest in those obligations.  UCC § 9-404(a); 19 L.P.R.A. § 2204.

**IV.     The ERS Bonds**

48.     The Enabling Act authorized ERS to (i) "seek a loan from any financial institution of the Government of Puerto Rico or the Federal Government of the United States of America or through the direct placement of debts" if authorized by its Board of Trustees, and (ii) secure issued debt with the assets of the System. 3 L.P.R.A. § 779(d). The Enabling Act does not create any debt or any security interests.

49. On January 24, 2008, ERS issued the first series of the ERS Bonds purportedly pursuant to the Resolution, in the aggregate original principal amount of approximately $2.9 billion.[11]

50. The Resolution contemplates that the ERS Bonds would be secured, nonrecourse obligations of ERS. *See* Resolution § 201. Specifically, the Resolution provides that the ERS Bonds are "special obligations of the System payable solely from the Pledged Property without recourse against other assets of the System" and no ERS Bond "shall . . . be payable out of any funds or assets other than the Pledged Property." *Id.* The Resolution further provides that:

> The pledge and assignment of, and the grant of a security interest in and over, the Pledged Property, subject to Section 804 [pertaining to compensation and indemnification of the Fiscal Agent], in favor of the Fiscal Agent for the benefit of the Bondholders and for the payment and as security for the payment of the Principal Installments and Redemption Price of and interest on the Bonds . . . is hereby authorized, created and granted in accordance with the terms and provisions of this Resolution and subject to the provisions of this Resolution permitting the application of the Pledged Property for the purposes and on the terms and conditions set forth in this Resolution . . . .

Resolution § 501.1. The term "Pledged Property" is defined by the Resolution as:

    i.    All Revenues.

    ii.    All right, title and interest of the System in and to Revenues, and all rights to receive the same.

    iii.    The Funds, Accounts, and Subaccounts held by the Fiscal Agent, and moneys and securities and, in the case of the Debt Service Reserve Account, Reserve Account Cash Equivalents, from time to time held by the Fiscal Agent under the terms of this Resolution,, subject to the application thereof as provided in this Resolution

---

[11] On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS*, Case No. 17-3566, ECF No. 381, on the ground the bond issuance exceeded ERS's statutory authority and was thus *ultra vires,* rendering the ERS Bonds null and void. ERS reserves its rights to challenge the bond issuance, including on the ground that the ERS bonds were *ultra vires.* On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth*, Case No. 17-3283, ECF No. 6482, on the ground, among others, that the bond issuance was *ultra vires.* Obviously, if the Court determines that the ERS Bonds are null and void no security interest with respect thereto could exist. *See* 11 U.S.C. § 506(a)(1) (reflecting that a secured claim must be first be an "allowed" claim).

17

and subject to Sections 1301 and 1303 [pertaining to the defeasance of Bonds and the setting aside of moneys for the payment of particular ERS Bonds].

    iv.    Any and all other rights and personal property of every kind and nature from time to time hereafter pledged and assigned by the System to the Fiscal Agent as and for additional security for the Bonds and Parity Obligations.

    v.    Any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property mentioned described in paragraphs [(i)] through [(iv)] above, including, without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

Resolution, Exhibit B at VI-36. The Resolution has not been amended or supplemented to add

any additional property to the definition of "Pledged Property."

    51.    "Revenues" make up a significant portion of the Pledged Property. The term

Revenues is defined by the Resolution as:

    i.    All Employers' Contributions received by the System or the Fiscal Agent.

    ii.    With respect to any particular Bonds, the proceeds of any draw on or payment under any Credit Facility which is intended for the payment of such Bonds, but only for purposes of such payment and not for other purposes of this Resolution.

    iii.    Net amounts received by the System pursuant to a Qualified Hedge.

    iv.    Income and interest earned and gains realized in excess of losses suffered by any Fund, Account, or Subaccount held by the Fiscal Agent under the terms of this Resolution, subject to the provisions of Sections 1301 and 1303 [pertaining to the defeasance of Bonds and the setting aside of moneys for the payment of particular Bonds].

    v.    Any other revenues, fees, charges, surcharges, rents, proceeds or other income and receipts received by or on behalf of the System or by the Fiscal Agent, lawfully available for the purposes of this Resolution and deposited by or on behalf of the System or by the Fiscal Agent in any Fund, Account, or Subaccount held by the Fiscal Agent under the terms of this Resolution, subject to the provisions of Sections 1301 and 1303 [pertaining to the defeasance of Bonds and the setting aside of moneys for the payment of particular ERS Bonds.

*Id.*, Exhibit B at V-37.

    52.    The term "Employers' Contributions" is defined by the Resolution as

"contributions paid from and after the date hereof that are made by Employers and any assets in

18

lieu thereof or derived thereunder which are payable to the System pursuant to Sections 2-116, 3-105 and 4-113 of the [Enabling] Act." *Id.*, Exhibit B at V-33. The term "Employers" means "pursuant to the [Enabling] Act, the government of Puerto Rico, or any Public Enterprise, or municipality, but shall exclude, however, those subsidiary enterprises of government instrumentalities whose employees, in the judgment of the Board of Trustees of the System, may not have a clear relationship of employee and employer with regard to the Commonwealth." *Id.* The term "Public Enterprise" means any government instrumentality or public corporation of the Commonwealth. *Id.*, Exhibit B at VI-36. The Enabling Act was amended by Act 106 after the date of the Resolution to repeal Section 2-116, Section 3-105, and Section 4-113, eliminating any further Employers' Contributions to ERS.

53. The risk of amendments to the Enabling Act that might have an adverse effect on the amount of contributions available to the Bondholders was fully disclosed to the Bondholders in the offering statements pertaining to each series of the ERS Bonds; and such amendments are not prohibited by the Resolution. *See, e.g.*, Offering Statement at 26 and 37.

54. The Resolution establishes a "Project Fund" and certain accounts and subaccounts therein, including a "Revenue Account," a "Debt Service Account," a "Debt Service Reserve Account," a "General Reserve Account," and a "Redemption Account." *Id.* § 502.1. Separate Debt Service Accounts and Debt Service Reserve Accounts are established within the Revenue Account for senior ERS Bonds and subordinate ERS Bonds (although ERS did not issue any subordinate ERS Bonds). *Id.* § 504. The Resolution provides that, on the last business day of each month, ERS "will transfer the Employers' Contributions to the Fiscal Agent" and "[i]mmediately thereafter . . . all Revenues shall be deposited [by the Fiscal Agent] into the Revenue Account . . . ." *Id.* § 504.1. The Resolution requires that amounts deposited into the

19

Revenue Account "shall be withdrawn and deposited as follows in the following order of priority":

> a.    *First*, "to the Senior Bonds Debt Service Account . . . all amounts until the amount on deposit in the Senior Bonds Debt Service Account shall equal the Accrued Payment Obligation related to all Senior Bonds and Parity Obligations";

> b.    *Second*, "to the Senior Bonds Debt Service Reserve Account, the amount required to cause the amount on deposit therein to be equal to the Debt Service Reserve Requirement related to the Senior Bonds";

> c.    *Third*, "to the Subordinated Bonds Debt Service Account . . . all amounts until the amount on deposit in the Subordinated Bonds Debt Service Account shall equal the Accrued Payment Obligation related to all Subordinated Bonds and Parity Obligations";

> d.    *Fourth*, "to the Subordinate Bonds Debt Service Reserve Account, the amount required to cause the amount on deposit therein to be equal to the Debt Service Reserve Requirement related to the Subordinated Bonds";

> e.    *Fifth*, "to the payment of Operating Expenses"; and

> f.    *Sixth*, "to the General Reserve Account subject to the requirements established in Section 509, the balance of the amount so withdrawn."

*Id.* § 504.

55.    The Resolution provides that if certain conditions are satisfied, once per year (and as of the last business day of the year), "[t]he Fiscal Agent may withdraw from the General Reserve Account and transfer to the System the amount in excess of ten percent (10%) of [the] Accrued Payment Obligation." *Id.* § 509.6. Such conditions include, *inter alia*, that (i) no withdrawals have been made from the Debt Service Reserve Account to fund debt service during the year, (ii) the balances in the Debt Service Accounts and the Debt Service Reserve Accounts are not less than the requirements under the Resolution, (iii) no amounts are due to the Fiscal Agent under the Resolution, and (iv) "the balance in the General Reserve Account is not less than ten percent (10%)" of the next year's accrued payment obligations for all outstanding ERS Bonds. *Id.*

20

56.     The Resolution also permits ERS to request that the Fiscal Agent transfer funds from the General Reserve Account to ERS, and requires the Fiscal Agent to so transfer such funds, if the balance in the General Reserve Fund exceeds twenty-five percent (25%), or if any subordinated ERS Bonds are outstanding, fifty percent (50%), of the next year's accrued payment obligations for all ERS Bonds, provided that no transfer is allowed if such transfer would reduce the General Reserve Fund balance below twenty-five percent (25%) of such accrued payment obligations. *Id.* § 509.8.

57.     In furtherance of the security interest granted pursuant to the Resolution, ERS executed a Security Agreement, dated June 2, 2008 (the "Security Agreement," a copy of which is attached hereto as **Exhibit B**). The Security Agreement grants to the Fiscal Agent, for the benefit of holders of ERS Bonds, "a security interest in (i) the Pledged Property, and (ii) all proceeds thereof and all after-acquired property of the types included as Pledged Property, subject to application as permitted by the Resolution."

### V.     The Pre-Petition Proceeding and Joint Stipulations

58.     Before the filing of ERS's Title III PROMESA proceeding, on September 21, 2016, certain of the Bondholders, and not the Fiscal Agent, which, if at all, possesses a lien or security interest, filed a motion (the "Section 405 Motion") with the United States District Court for the District of Puerto Rico seeking to lift the initial PROMESA stay (the "Section 405 Stay") asserting their alleged security interests in certain property of ERS lacked adequate protection. *Altair Global Credit Opportunities Fund (A), L.L.C. v. Garcia-Padilla*, No. 16-cv-2696, ECF No. 1 (Sept. 21, 2016) (J. Besosa) (the "Pre-Petition Proceeding").

59.     Judge Besosa did not make any factual or legal findings with respect to (i) the attachment or perfection of the movants' alleged security interests, or (ii) the application of section 552(a) of the Bankruptcy Code to the moving Bondholders' alleged security interests.

21

60.     On appeal of Judge Besosa's decision, the First Circuit did not make any holdings with respect to (i) the attachment or perfection of the moving Bondholders' asserted security interests, or (ii) the application of section 552(a) of the Bankruptcy Code to the moving Bondholders' asserted security interests. *Peaje Investments LLC, v. Garcia-Padilla,* 845 F.3d 505 (1st Cir. 2017).

61.     On January 17, 2017, certain parties (including ERS) entered into a joint stipulation to resolve the Section 405 Motion, which the District Court subsequently entered as an order (the "January Stipulation," *see* Pre-Petition Proceeding at ECF Nos. 82 & 83). Under the January Stipulation, "Employers' Contributions" (as defined in the Resolution) received by ERS (from employers other than the Commonwealth, as Commonwealth contributions were suspended in June 2016) during the pendency of the Section 405 Stay would be transferred by ERS to a segregated account for the benefit of the movants, but "[a]ll other rights, claims and remedies of the ERS Bondholders, the Commonwealth and the ERS are expressly reserved." *Id.* at 2. Such transfers were to be made on a monthly basis, no later than the last business day of the month for contributions received as of such date during such month. *Id.* at 3.

62.     On April 11, 2017, the parties entered into a second joint stipulation regarding interest payments during the Section 405 Stay, which the District Court subsequently ordered (the "April Stipulation," *see* Pre-Petition Proceeding, ECF Nos. 85 & 86, and, together with the January Stipulation, collectively, the "Joint Stipulations"). The April Stipulation similarly provides (i) "[a]ll other rights, claims and remedies of the ERS Bondholders, the Commonwealth and the ERS are expressly reserved," and (ii) "[n]othing in this Joint Stipulation and Order is intended to or shall prejudice whatever rights the Parties have pursuant to Title III of PROMESA if a Title III proceeding is commenced." Pre-Petition Proceeding, ECF No. 85 at 4.

63.     As this Court previously found, ERS complied with its obligations to deposit Employers' Contributions received from the date of the January Stipulation through May 21, 2017, the date ERS's Title III PROMESA proceeding was filed. August 17, 2018 *Order Granting and Denying In Part Cross Motions For Summary Judgment*, Adv. Proc. No. 17-00213 (LTS) (D.P.R.) ECF No. 215 at 31.  Specifically, all contributions received during the month of April 2017 were duly deposited into the prepetition segregated account. None of the contributions received during May 2017 were deposited into the prepetition segregated account because the due date for such deposit, the last business day of that month (May 31, 2017), occurred after ERS's title III petition date.

**VI.     The ERS Title III Case**

64.     The Section 405 Stay expired on May 1, 2017.

65.     On May 3, 2017, a petition under title III of PROMESA was filed on behalf of the Commonwealth with the United States District Court for the District of Puerto Rico.

66.     On May 21, 2017 (the "ERS Petition Date"), a petition under title III of PROMESA was filed on behalf of ERS with the United States District Court for the District of Puerto Rico (the "Title III Case").  The commencement of the ERS Title III Case triggered the automatic stay of creditor remedies against ERS. 48 U.S.C. § 2161(a) (incorporating 11 U.S.C. §§ 362 and 922 into PROMESA).

67.     On May 31, 2017, certain Bondholders filed a motion (the "Adequate Protection Motion") seeking relief from the Title III automatic stay.

68.     ERS opposed the Adequate Protection Motion asserting, among other things, that: (i) the security interests in the Pledged Property asserted by the Bondholders were not properly perfected because the 2008 Financing Statements were deficient; (ii) the submissions of the 2015 Amendments and the 2016 Amendments did not remedy the deficiency because the UCC

requires a new UCC-1 financing statement to be filed; (iii) even if the Bondholders' asserted prepetition security interests were perfected, section 552(a) of the Bankruptcy Code prevents any security interest from attaching to Revenues received by ERS after the ERS Petition Date; and (iv) the Bondholders are not entitled to adequate protection.

69.     The Court held a hearing on the Adequate Protection Motion on June 28, 2017. The Court deferred ruling on the Adequate Protection Motion to provide ERS and the Bondholders an opportunity to resolve the Adequate Protection Motion.

70.     ERS and the Bondholders ultimately agreed to the *Joint Stipulation Regarding (I) Motion of Certain Secured Claimholders of Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Adequate Protection and Stay Relief and Reservation of Rights and (II) Motion of Debtors Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365, and 922 For Entry of an Order Confirming Application of the Automatic Stay, Stay of Prepetition Lawsuits and Actions and Application of Contract Provisions*, dated July 14, 2017 (the "July Stipulation") [Case No. 17-bk-03823, ECF No. 652 and Case No. 17-bk-03566, ECF No. 170], and so ordered by the Court on July 17, 2017 [Case No. 17-bk-03823, ECF No. 655 and Case No. 17-bk-03566, ECF No. 171], which provided for adequate protection of the Bondholders' alleged security interests, established a postpetition segregated account and which contemplated, among other things, that ERS file an Adversary Complaint by July 21, 2017.  Accordingly, ERS filed an Adversary Complaint on July 21, 2017 [Adv. Proc. No. 17-00213] (the "17-213 Action").

71.     ERS has fully complied with the July Stipulation, and approximately $200 million was paid to Bondholders pursuant thereto, subject to a reservation of ERS's rights. Under the

July Stipulation, ERS has deposited approximately $92 million in the postpetition segregated account.

72.     On November 3, 2017, ERS and Bondholders filed cross-motions for summary judgment in the 17-213 Action [17-213 Action, ECF Nos. 91 and 94]. The Court conducted a hearing on the cross-motions on December 13, 2017, and thereafter took the motions under advisement [17-213 Action, ECF No. 168].

73.     On July 3, 2018, prior to the Court rendering its determination with respect to the Summary Judgment Motions, the Bondholders filed the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* [Case No. 17-bk-03283, ECF No. 3418 and Case No. 17-bk-03566, ECF No. 289] (the "Second Adequate Protection Motion"), requesting relief from the automatic stay imposed pursuant to Title III of PROMESA or, in the alternative, for adequate protection of their liens on property of ERS, in which the Commonwealth claims an interest.

74.     On August 17, 2018, the Court issued its *Opinion and Order Granting and Denying in Part Cross Motions for Summary Judgment*, 17-213 Action, ECF No. 215 (the "MSJ Order"), determining that Bondholders' liens were unperfected and that there had been no violation of the January Stipulation.  In light of the nature of its ruling, the Court did not determine other issues raised in the complaint, including (i) whether Bondholders' asserted security interests with respect to the Employee Loans are effective and enforceable and (ii) whether Section 552(a) of the Bankruptcy Code operates to cut off the attachment of Bondholders' asserted security interest on postpetition Employers' Contributions.  The Court did not address the nature or extent of the security interests alleged.

75. On August 21, 2018, and based upon the MSJ Order, the Court denied the Second Adequate Protection Motion.

76. The Bondholders appealed the MSJ Order, and on January 30, 2019, the First Circuit issued an opinion affirming in part, reversing in part, and vacating in part the MSJ Order. *Altair Global Credit Opp.*, 914 F.3d 694. The First Circuit determined the Bondholders met the requirements for perfection of the alleged security interests in "Pledged Property" as of December 17, 2015 to the extent the filing of a financing statement is an approved method of perfection under the UCC with respect to collateral in which Bondholders have an attached security interest and remanded to the district court for further consideration of certain of Bondholders' counterclaims. The First Circuit affirmed dismissal of the claims regarding the January Stipulation. The Court did not address the nature or extent of the security interests alleged or the proper method of perfection of any security interest, and thus did resolve the issues raised in this Complaint.

77. On April 2, 2019, ERS filed the *Motion of Debtor for Leave to File an Amended and Supplemented Adversary Complaint and Requesting Determination of Count Briefed But Not Decided By Title III Court's Order On Motions for Summary Judgment* (the "Motion to Amend"), requesting the Court grant the Debtor leave to file an amended adversary complaint to raise issues concerning the nature or extent of the security interests alleged and the proper method of perfection of any security interest, and that it determine whether section 552(a) of the Bankruptcy Code operates to cut off Bondholders' asserted lien on Employers' Contributions received post-petition (the "Undecided Issue") [17-213 Action, ECF No. 236].

78. On April 30, 2019, ERS filed a petition for certiorari with the United States Supreme Court, seeking to overturn the First Circuit's determination in *Altair Global Credit Opp.*, 914 F.3d 694, holding that the Bondholders' security interests were properly perfected.

79. On May 6, 2019, the Court denied in part and granted in part the Motion to Amend [17-213 Action, ECF No. 248]. The Court granted the Debtor's request to determine the Undecided Issue. It denied, however, the Debtor's motion "insofar as it seeks leave to amend the Complaint in the above-captioned adversary proceeding, without prejudice to assertion in a separate adversary proceeding of the claims proffered in the proposed Amended Complaint and without prejudice to the position of any party concerning the propriety or viability of those claims." *Id.* at 3. The Debtor files this Adversary Complaint as a result of the Court's order on the Motion to Amend.

80. The issue of the attachment or perfection (including the applicable method of perfection) of Defendants' asserted security interests has not been fully litigated or decided.

## COUNT I

DECLARATORY JUDGMENT THAT DEFENDANTS' ASSERTED SECURITY
INTERESTS DID NOT ATTACH TO PRE-2008 ASSETS OR ANY PROCEEDS THEREOF
(28 U.S.C. §§ 2201, 2202)

81. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–80.

82. Other than the Accounts Receivable, ERS's remaining assets are predominately comprised of (i) Pre-2008 Assets, (ii) bond proceeds, (iii) employee contributions, (iv) AUC, (v) Employee Loans, and (vi) cash and investments. Defendants' asserted security interest does not attach to any of those assets.[12]

---

[12] ERS's assets also include buildings, vehicles, office equipment, and certain repossessed property of relatively minor value.

83. Defendants' original collateral (if any) does not include Pre-2008 Assets. Neither the Resolution nor the Security Agreement describes, by general type, category or specific description, the Pre-2008 Assets as original collateral. "Employers' Contributions" include (at most) only those contributions made "from and after" January 24, 2008 pursuant to Sections 2-116, 3-105 and 4-113 of the Enabling Act. *See* Resolution, Exhibit B at VI-33. Therefore, the definition of "Pledged Property" (which consists principally of "Revenues," which, in turn, consist principally of "Employers' Contributions" and which, in turn, comprise Defendants' original collateral, if any, under the Resolution and the Security Agreement) does not encompass Pre-2008 Assets (which, by definition, arose prior to January 24, 2008). In addition, the Pre-2008 Assets cannot be proceeds of Defendants' collateral because they predate any such collateral.

84. The Pre-2008 Assets are therefore not subject to Defendants' asserted security interests.

85. An actual, substantial, and justiciable controversy exists between ERS and Defendants concerning the extent, enforceability, perfection and priority of the security interest asserted by Defendants in the Pre-2008 Assets.

86. Plaintiffs are entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as further relief pursuant to 28 U.S.C. § 2202, that Defendants do not have an effective or perfected security interest in the Pre-2008 Assets or any proceeds thereof.

## COUNT II

**DECLARATORY JUDGMENT THAT DEFENDANTS' ASSERTED SECURITY INTERESTS DID NOT ATTACH TO FUNDS THAT WERE NOT EMPLOYERS' CONTRIBUTIONS, INCLUDING ADDITIONAL UNIFORM CONTRIBUTIONS, OR ANY PROCEEDS THEREOF**
(28 U.S.C. §§ 2201, 2202)

87. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–86.

88.    Defendants assert that the AUC is either their original collateral or proceeds thereof.

89.    Defendants' original collateral (if any) does not include funds that were not Employers' Contributions, including the AUC. Neither the Resolution nor the Security Agreement describes, by general type, category or specific description, the AUC as original collateral because the AUC does not fall within the Resolution's definition of "Employers' Contributions," "Revenues" or "Pledged Property" (which comprises Defendants' original collateral, if any, under the Resolution and the Security Agreement).

90.    The term "Employers' Contributions" is defined by the Resolution as "contributions paid from and after the date hereof that are made by Employers and any assets in lieu thereof or derived thereunder which are payable to the System pursuant to Sections 2-116, 3-105 and 4-113 of the [Enabling] Act." *Id.*, Exhibit B at VI-33.

91.    Because the AUC is payable to ERS pursuant to Section 5-117 of the Enabling Act—not the sections of the Enabling Act listed in the definition of "Employers' Contributions" in the Resolution (Sections 2-116, 3-105, and 4-113)—the AUC does not fall within the Resolution's definitions of "Employers' Contributions," "Revenues" and "Pledged Property." Thus, neither the Resolution nor the Security Agreement (which refers to the Resolution for the definition of "Pledged Property" as used in the Security Agreement) grants a security interest in the AUC or the proceeds thereof.

92.    ERS's treatment of the AUC is consistent with this understanding. Historically, ERS never transferred the AUC to the Fiscal Agent with Employers' Contributions. Instead, ERS deposited the AUC directly in its operating account. As a result, the AUC has never been applied to payment of the ERS Bonds.

93.     An actual, substantial, and justiciable controversy exists between ERS and Defendants concerning the extent, enforceability, perfection and priority of the security interest asserted by Defendants in funds that were not Employers' Contributions, including the AUC and its proceeds.

94.     Plaintiffs are entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as further relief pursuant to 28 U.S.C. § 2202, that Defendants' do not have an effective or perfected security interest in funds that were not Employers' Contributions, including the AUC or any proceeds thereof.

## COUNT III

### DECLARATORY JUDGMENT THAT DEFENDANTS' ASSERTED SECURITY INTERESTS DID NOT ATTACH TO EMPLOYEE LOANS OR EMPLOYEE LOAN PAYMENTS OR ANY PROCEEDS THEREOF
(28 U.S.C. §§ 2201, 2202)

95.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–94.

96.     Defendants assert that the Employee Loans and Employee Loan Payments are either their original collateral or proceeds thereof.

97.     Defendants' original collateral (if any) does not include the Employee Loans or Employee Loan Payments. Neither the Resolution nor the Security Agreement describes, by general type, category or specific description, the Employee Loans or Employee Loan Payments as collateral because the Employee Loans or Employee Loan Payments do not fall within the Resolution's definitions of "Employers' Contributions," "Revenues" and "Pledged Property" (which comprises Defendants' original collateral, if any, under the Resolution and the Security Agreement).  Neither are Employee Loans traceable proceeds of original collateral. Because the Employee Loans were generated using cash proceeds (of moneys remitted to ERS pursuant to the Resolution), any security interest in the Employee Loans is not perfected.

30

98.  An actual, substantial, and justiciable controversy exists between ERS and Defendants concerning the extent, enforceability, perfection, and priority of the security interest asserted by Defendants in the Employee Loans and Employee Loan Payments and any proceeds thereof.

99.  Plaintiffs are entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as further relief pursuant to 28 U.S.C. § 2202, that Defendants do not have an effective or a perfected security interest in the Employee Loans or Employee Loan Payments or any proceeds thereof.

## COUNT IV

DECLARATORY JUDGMENT THAT DEFENDANTS' ASSERTED SECURITY
INTERESTS DID NOT REMAIN ATTACHED TO THE FUNDS REMITTED TO ERS BY
THE FISCAL AGENT IN ACCORDANCE WITH THE RESOLUTION OR ANY PROCEEDS
THEREOF
(28 U.S.C. §§ 2201, 2202)

100.  Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–99.

101.  Funds remitted to ERS by the Fiscal Agent in accordance with the Resolution are not Defendants' collateral.

102.  The ERS Bonds are nonrecourse, special obligations of ERS "payable solely from the Pledged Property without recourse against other assets of the System." Resolution § 201. Indeed, the Resolution specifies that the ERS Bonds "shall [not] be payable out of any funds or assets other than the Pledged Property." *Id.*

103.  The Resolution and the Security Agreement each state that Pledged Property is "subject to the application thereof as provided in the Resolution." Security Agreement at 1; *see also* Resolution § 501. The Resolution provides that the Fiscal Agent must deposit Employers' Contributions received by the Fiscal Agent in the Project Fund established and held by the Fiscal Agent in accordance with the Resolution and transfer them to various accounts in the Project

Fund established and held by the Fiscal Agent in accordance with the Resolution, including the General Reserve Account. *See* Resolution §§ 502.1 and 504. Once reserve requirements are satisfied, the Fiscal Agent may transfer funds on deposit in the General Reserve Account to ERS. *See id.* §§ 509.6, 509.8.

104. The Resolution's reserve requirements ensure that the Fiscal Agent maintains a substantial cushion above what is required to satisfy yearly debt service before transferring any funds to ERS. *Id.*

105. Neither the Resolution nor the Security Agreement provides that funds transferred to ERS by the Fiscal Agent are subject to Defendants' asserted security interest. Further, neither the Resolution nor the Security Agreement requires that such funds be segregated from ERS's other assets. Funds remitted to ERS are deposited in ERS's operating account where they are commingled with all other funds of ERS, which are not subject to Defendants' asserted security interest, including employee contributions, the AUC, and Employee Loan Payments. Funds transferred to ERS by the Fiscal Agent and commingled with all other funds of ERS in ERS's operating account are not traceable or identifiable. Funds in ERS's operating account have been used by ERS to pay operating expenses, make investments, fund loans to employees and retirees, and pay benefits.

106. Defendants' alleged security interest (if any) is expressly subject to the effect of the Fiscal Agent's transfers to ERS in accordance with section 509 of the Resolution. *See* Resolution § 501 (the "grant of a security interest in and over the Pledged Property . . . is hereby authorized, created and granted . . . *subject to the provisions of this Resolution permitting the application of the Pledged Property for the purposes and on the terms and conditions set forth in this Resolution*") (emphasis added); Security Agreement at 1 (granting "a security interest in (i)

the Pledged Property, and (ii) all proceeds thereof and all after-acquired property of the types included as Pledged, Property, *subject to application as permitted by the Resolution*.") (emphasis added).

107.    Defendants' security interest (if any) in any funds held by the Fiscal Agent does not remain attached to funds that were in the possession of the Fiscal Agent but have been remitted to ERS. Upon transfer to ERS, such funds become "other assets of the System," which Defendants have no recourse against. Resolution § 201.

108.    As repayment of the ERS Bonds is nonrecourse to ERS, the Fiscal Agent and the holders of the ERS Bonds have no reasonable expectation that funds released to ERS and commingled with ERS's other assets such that they cannot be traced or identified among ERS' other assets will be available to pay the ERS Bonds. The Offering Statement makes clear that Defendants cannot rely on funds remitted by the Fiscal Agent to ERS for payment of the ERS Bonds, stating that "[t]he Bonds are not general obligations of the System and are not payable from . . . Employer Contributions released by the Fiscal Agent to the System after funding required reserves, or from any other assets of the System." Offering Statement at 37.

109.    Even if funds remitted to ERS remain subject to Defendants' asserted security interest, Defendants released their asserted security interest in those funds by authorizing the Fiscal Agent to transfer the funds to ERS free of any security interest. *See* 19 L.P.R.A. § 2265(a)(1), UCC § 9-315(a)(1). Moreover, none of the funds remitted to ERS were deposited in a deposit account with respect to which Defendants have control, and therefore (as described further in Count V), were not subject to a perfected security interest of Defendants as of the ERS Petition Date.

110.    An actual, substantial, and justiciable controversy exists between ERS and Defendants concerning the extent, enforceability, perfection and priority of the security interest asserted by Defendants in the funds remitted by the Fiscal Agent to ERS and any proceeds thereof.

111.    ERS is entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as further relief pursuant to 28 U.S.C. § 2202, that Defendants do not have an effective or perfected security interest in funds remitted by the Fiscal Agent to ERS in accordance with the Resolution or any proceeds thereof.

## COUNT V

**DECLARATORY JUDGMENT THAT DEFENDANTS' ASSERTED SECURITY INTERESTS IN REMITTED TO ERS BY THE FISCAL AGENT IN ACCORDANCE WITH THE RESOLUTION OR ANY PROCEEDS THEREOF, INCLUDING EMPLOYEE LOANS AND EMPLOYEE LOAN PAYMENTS ARE UNPERFECTED, INVALID, AND UNENFORCEABLE**
(48 U.S.C. § 2161; 11 U.S.C. § 544; UCC § 9-317; 19 L.P.R.A. § 2267; 28 U.S.C. §§ 2201, 2202)

112.    Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–111.

113.    Defendants do not have an effective or perfected security interest in ERS's remaining assets, including but not limited to Employee Loans or Employee Loan Payments, even if such assets constitute proceeds of "Revenues" (and, therefore, proceeds of "Pledged Property").

114.    A perfected security interest in proceeds becomes unperfected under UCC section 9-315, 19 L.P.R.A. section 2265, unless one of three conditions is satisfied. *First,* a security interest in proceeds becomes unperfected on the twenty-first day after the security interest attaches unless (i) a filed financing statement covers the original collateral, (ii) the proceeds are collateral in which a security interest may be perfected by filing in the office in which the financing statement has been filed, and (iii) the proceeds are not acquired with cash proceeds.

34

*See* UCC § 9-315(d)(1), 19 L.P.R.A. § 2265. *Second*, a security interest in identifiable cash proceeds of collateral in which the secured party has a perfected security interest remains perfected. *See id.* § 9-315(d)(2), 19 L.P.R.A. § 2265. *Third*, a security interest in the proceeds of collateral in which the secured party has a perfected security interest is perfected other than under section 9-315(c) when the security interest attaches to the proceeds or within 20 days thereafter. *See id.* § 9-315(d)(3), 19 L.P.R.A. § 2265.

115.    Defendants' asserted security interests in funds remitted to ERS by the Fiscal Agent did not remain perfected under UCC section 9-315(d)(1), 19 L.P.R.A. § 2265.

116.    Defendants have not otherwise taken action to perfect a security interest in funds remitted to ERS or funds or investments held by ERS and therefore any asserted security interest in such funds or investments is not perfected under UCC section 9-315(d)(3), 19 L.P.R.A. § 2265.

117.    In particular, Defendants do not have a deposit account control agreement ("DACA") with any bank with which ERS maintains a deposit account (and have not taken any other actions which would given Defendants control with respect to any such deposit account) and, therefore, do not have the requisite control to perfect a security interest in any cash (that is not identifiable cash proceeds) maintained with any such bank. *See* UCC § 9-315(d)(3), 19 L.P.R.A. § 2265.

118.    Under Article 9 of the UCC, as adopted in Puerto Rico, subject to one exception for "proceeds" not applicable here, the *only* way to perfect a security interest in funds in a deposit account is by "control" of the deposit account.  19 L.P.R.A. § 2262(b)(1) ("a security interest in a deposit account may be perfected *only* by control") (emphasis added); *see also* 19

L.P.R.A. § 2264(a) ("A security interest in . . . deposit accounts . . . may be perfected by control of the collateral under § 2214 . . . .").

119. Under Article 9 of the UCC, a secured party has "control" of a deposit account where (a) the secured party is the bank with which the deposit account is maintained, (b) the secured party is the customer of the bank with which the deposit account is maintained, or (c) a DACA is executed among the secured party, the depositary bank, and the borrower/debtor giving the secured party requisite "control" over the deposit account (by providing that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the borrower/debtor). 19 L.P.R.A. § 2214(a)(1)–(3).

120. Any investments or other property acquired with funds remitted to ERS at most are proceeds of cash proceeds. A security interest in proceeds perfected by a financing statement does not extend to proceeds acquired by the use of cash proceeds of the original collateral. *See* UCC § 9-315(d)(1)(C), 19 L.P.R.A. § 2265. And as described above, no ERS assets were held in a deposit account with respect to which Defendants had control. *See* UCC § 9-315(d)(3), 19 L.P.R.A. § 2265.

121. In particular, the Employee Loans and Employee Loan Payments are assets generated by using funds remitted to ERS that Defendants assert are either their original collateral or proceeds thereof. Defendants' asserted security interests do not attach to Employee Loans and Employee Loan Payments because such loans were extended using cash proceeds. And further, those cash proceeds are not subject to a perfected security interest, as described above.

122. Under sections 544(a)(1) and (2) of the Bankruptcy Code, ERS has, as of the commencement of ERS's Title III Case, and without regard to any knowledge of a trustee (or

debtor) or of any creditor, the rights and powers of, or may avoid any transfer of its property or

any obligation it incurred that is avoidable by:

> (a) A creditor that extends credit to the debtor at the time of the commencement
> of the case, and that obtains, at such time and with respect to such credit, a
> judicial lien on all property on which a creditor on a simple contract could have
> obtained such a judicial lien, whether or not such a creditor exists; or

> (b) a creditor that extends credit to the debtor at the time of the commencement of
> the case, and obtains, at such time and with respect to such credit, an execution
> against the debtor that is returned unsatisfied at such time, whether or not such a
> creditor exists.

123. Under UCC § 9-317(a)(2) and 19 L.P.R.A. § 2267, an unperfected security

interest is subordinate to the rights of ERS, through the FOMB as a lien creditor. UCC § 9-

317(a)(2) and 19 L.P.R.A. § 2267 (a security interest is subordinate to the rights of a person that

becomes a lien creditor before the security interest is perfected); UCC § 9-102(a)(52) and 19

L.P.R.A. § 2212(a)(52) (defining "lien creditor" to include a trustee in bankruptcy, from the date

of the filing of a petition); PROMESA § 301(c)(7) ("trustee" means the FOMB).

124. Any purported security interest in funds remitted to ERS is unperfected for the

reasons explained above and is ineffective and unenforceable against ERS pursuant to section

544(a) of the Bankruptcy Code and UCC § 9-317(a)(2) and 19 L.P.R.A. § 2267.

125. An actual, substantial, and justiciable controversy exists between ERS and

Defendants concerning the extent, enforceability, perfection and priority of the security interests

asserted by Defendants in any cash of ERS, including funds remitted to ERS by the Fiscal Agent

and any proceeds thereof, including Employee Loans and Employee Loan Payments.

126. Plaintiffs are entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as

well as further relief pursuant to 28 U.S.C. § 2202, that Defendants do not have an enforceable or

perfected security interest in any cash of ERS, including funds remitted to ERS by the Fiscal

Agent or any proceeds thereof, including Employee Loans and Employee Loan Payments, and

thus any and all security interests in such property asserted by the Fiscal Agent or any holders of ERS Bonds are unperfected, avoidable and unenforceable against ERS pursuant to section 544(a) of the Bankruptcy Code and UCC § 9-317 and 19 L.P.R.A. § 2267.

## COUNT VI

JUDGMENT AVOIDING AND PRESERVING FOR BENEFIT OF ERS ANY SECURITY INTERESTS OF DEFENDANTS IN ANY DEPOSIT ACCOUNTS NOT CONTROLLED BY THE FISCAL AGENT OR IN ANY OF THE FUNDS IN ANY SUCH DEPOSIT ACCOUNTS PURSUANT TO BANKRUPTCY CODE SECTIONS 544 AND 551
(48 U.S.C. § 2161; 11 U.S.C. §§ 544, 550, 551; 19 L.P.R.A. §§ 2214, 2262, 2264, 2267)

127.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–126.

128.     As explained above in Count V, pursuant to section 544(a) of the Bankruptcy Code, ERS has, as of the commencement of ERS's Title III case, and without regard to any knowledge of a trustee, debtor, or creditor, the rights and powers of, or may avoid any transfer of its property or any obligation it incurred that is voidable by, a judicial lien creditor, among other things.  11 U.S.C. § 544(a).

129.     Pursuant to 19 L.P.R.A. § 2267(a)(2), under Puerto Rico law a judicial lien creditor has priority over unperfected security interests.

130.     Under Article 9 of the UCC, subject to one exception for "proceeds" not applicable here, the *only* way to perfect a security interest in funds in a deposit account is by "control" of the deposit account.  19 L.P.R.A. § 2262(b)(1) ("a security interest in a deposit account may be perfected *only* by control") (emphasis added); *see also* 19 L.P.R.A. § 2264(a) ("A security interest in . . . deposit accounts . . . may be perfected by control of the collateral under § 2214 . . . .").

131.     Under Article 9 of the UCC, a secured party has "control" of a deposit account where (a) the secured party is the bank with which the deposit account is maintained, (b) the secured party is the customer of the bank with which the deposit account is maintained, or (c) a

38

DACA is executed among the secured party, the depositary bank, and the borrower/debtor giving the secured party requisite "control" over the deposit account (by providing that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the borrower/debtor). 19 L.P.R.A. § 2214(a)(1)–(3).

132.    No DACA exists with respect to any of ERS's deposit accounts.

133.    The Fiscal Agent does not have control of any of ERS's deposit accounts that are not held with the Fiscal Agent by any other method of control.

134.    If the Resolution or the Security Agreement grants the Fiscal Agent or the Bondholders a security interest in any of ERS's deposit accounts, or in any of the funds in any such deposit account, that are not controlled by the Fiscal Agent, such security interest is unperfected, and therefore invalid, unenforceable, and subject to avoidance and preservation for ERS pursuant to sections 544 and 551 of the Bankruptcy Code.

135.    Nonetheless, Defendants assert perfected security interests in moneys *not* deposited with the Fiscal Agent.  *See, e.g.*, Proof of Claim No. 16775.

136.    An actual, substantial, and justiciable controversy exists between ERS and Defendants concerning the validity, priority, extent, and enforceability of the security interests asserted in ERS's deposit accounts that are not controlled by the Fiscal Agent.

137.    Accordingly, pursuant to sections 544(a) and 551 of the Bankruptcy Code, and 19 L.P.R.A. § 2267(a)(2), any security interests of Defendants in any of ERS's deposit accounts, or in any of the funds in any such deposit account, that are not controlled by the Fiscal Agent should be avoided, recovered for ERS pursuant to section 550 of the Bankruptcy Code, and/or automatically preserved for the benefit of ERS pursuant to section 551 of the Bankruptcy Code.

## COUNT VII

DECLARATORY JUDGMENT THAT UNDER PUERTO RICO LAW ERS'S INTEREST IN DEPOSIT ACCOUNTS NOT HELD BY THE FISCAL AGENT AND FUNDS CREDITED TO SUCH DEPOSIT ACCOUNTS IS ENTITLED TO PRIORITY OVER ANY SECURITY INTERESTS IN SUCH ACCOUNTS AND SUCH FUNDS GRANTED BONDHOLDERS UNDER THE RESOLUTION AND/OR THE SECURITY AGREEMENT AND DISALLOWING CLAIMS TO SUCH SECURITY INTERESTS
(48 U.S.C. § 2161; 19 L.P.R.A. §§ 2212(a)(52), 2267(a)(2) , 11 U.S.C. § 502(a))

138.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–137.

139.     Under Article 9 of the UCC, subject to one exception for "proceeds" not applicable here, the *only* way to perfect a security interest in funds credited to a deposit account is by "control" of the deposit account. 19 L.P.R.A. § 2262(b)(1) ("a security interest in a deposit account may be perfected *only* by control" (emphasis added)); *see also* 19 L.P.R.A. § 2264(a) ("A security interest in . . . deposit accounts . . . may be perfected by control of the collateral under § 2214 . . . .").

140.     Under Article 9 of the UCC, a secured party has "control" of a deposit account if (a) the secured party is the bank with which the deposit account is maintained, (b) the secured party is the customer of the bank with which the deposit account is maintained, or (c) the borrower/debtor, the secured party and the bank have executed a DACA that gives the secured party requisite "control" of the deposit account (by providing that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the borrower/debtor). 19 L.P.R.A. § 2214(a)(1)–(3).

141.     No DACA exists with respect to any of ERS's deposit accounts.

142.     Defendants do not have control of any of ERS's deposit accounts that are not held by the Fiscal Agent by any other method of control.

40

143. Any security interest of Defendants in ERS's deposit accounts that are not held by the Fiscal Agent (and in any funds credited to such deposit accounts) is unperfected because the Fiscal Agent does not have control of such deposit accounts.

144. Under Article 9 of the UCC, a "lien creditor" has priority over unperfected security interests. 19 L.P.R.A. § 2267(a)(2).

145. Under Article 9 of the UCC, "lien creditor" means, among other things, "a trustee in bankruptcy from the date of the filing of the petition." 19 L.P.R.A. § 2212(a)(52).

146. Pursuant to PROMESA section 301(c)(7), "the term 'trustee', when used in [the Bankruptcy Code], means the FOMB . . . ." PROMESA § 301(c)(7).

147. ERS's interest in any of ERS's property has priority over unperfected security interests in such property, including any purported but unperfected security interests of Defendants in deposit accounts of ERS that are not held by the Fiscal Agent and any funds therein.

148. Plaintiffs are entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as all further appropriate relief pursuant to 28 U.S.C. § 2202, that pursuant to 19 L.P.R.A. § 2267(a)(2) ERS's interests in ERS's deposit accounts not held by the Fiscal Agent and in funds credited to such deposit accounts have priority over any security interests in such deposit accounts and such funds held by Defendants.

149. Pursuant to Bankruptcy Code section 502(a), Plaintiffs are entitled to an order disallowing claims to such security interests.

## COUNT VIII

DECLARATORY JUDGMENT THAT NO RIGHT TO RECEIVE EMPLOYERS'
CONTRIBUTIONS EXISTS AND THAT DEFENDANTS HAVE NO SECURITY INTEREST
IN THE RIGHT TO RECEIVE EMPLOYERS' CONTRIBUTIONS OR ANY EMPLOYERS'
CONTRIBUTIONS THAT HAVE NOT YET BEEN RECEIVED BY ERS (EXCEPT FOR
THE ACCOUNTS RECEIVABLE)
(28 U.S.C. §§ 2201, 2202)

150.    Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–149.

151.    In accordance with the Resolution and the Security Agreement: (i) ERS purportedly granted a security interest to the Fiscal Agent, for the benefit of the holders of the ERS Bonds, in the "Pledged Property," Resolution § 501.1, Security Agreement at 1; (ii) the "Pledged Property" includes (a) "Revenues" and (b) the right of ERS to receive "Revenues," Resolution, Exhibit B at VI-36; and (iii) "Revenues" consist principally of "Employers' Contributions *received by [ERS]* or the Fiscal Agent," *id.* at V-37 (emphasis added).

152.    Any right of ERS to receive Employers' Contributions (through any right to receive Revenues) is limited to services performed prepetition.  Any such right came into existence only if and when an employee performed services for his or her employers.

153.    As set forth in the Resolution, any right to receive Revenues means only the right to receive Employers' Contributions already received.

154.    Any right to receive Employers' Contributions that have not been already received is not Pledged Property, and there is no security interest in a general right to receive Employers' Contributions.

155.    An actual, substantial, and justiciable controversy exists between ERS and Defendants concerning the existence of any right to receive Employers' Contributions and the validity, priority, extent, and enforceability any and all security interests in any right to receive Employers' Contributions or any Employers' Contributions that have not yet been received by ERS.

156. Accordingly, ERS is entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as further relief pursuant to 28 U.S.C. § 2202, that no right to receive Employers' Contributions exists and that the Fiscal Agent has no security interest in any right to receive Employers' Contributions or any Employers' Contributions that have not yet been received by ERS (except for the Accounts Receivable).[13]

## COUNT IX

**DECLARATORY JUDGMENT THAT, IF THE UNITED STATES SUPREME COURT REVERSES THE FIRST CIRCUIT'S DECISION IN *ALTAIR GLOBAL CREDIT OPP.*, 914 F.3D 694, THE DEFENDANTS' ASSERTED SECURITY INTERESTS IN "PLEDGED PROPERTY" ARE UNPERFECTED, INVALID, AND UNENFORCEABLE**
(48 U.S.C. § 2161; 11 U.S.C. § 544; 19 L.P.R.A. § 2267; 28 U.S.C. §§ 2201, 2202)

157. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1–156.

158. To the extent Defendants' purported security interests in the Pledged Property attached to such the Pledged Property, including Employers' Contributions, such security interests are unperfected. Accordingly, any such security interests should be invalidated and declared to be unenforceable.

159. The Defendants' purported security interests in the Pledged Property were not perfected because a UCC-1 financing statement was not filed that sufficiently described the collateral. A description of the collateral must be determinable from the financing statement itself and must "reasonably identify" the collateral. UCC § 9-108(a) and 19 L.P.R.A. § 2218.

---

[13] In accordance with paragraph 13 of the Stipulation, the Committee exercises its right to add to this Count VIII the allegation that Pledged Property also does not include Accounts Receivable. Accordingly, the Committee submits that the requested judicial declaration in paragraph 156 of this Complaint shall include a declaration that the Fiscal Agent has no security interest in the Accounts Receivable. The Oversight Board does not join in this portion of the requested judicial declaration.

160.    As described above, however, the First Circuit determined in *Altair Global Credit Opp.* that the Bondholders met the requirements for perfection of the alleged security interests in "Pledged Property" as of December 17, 2015. 914 F.3d at 719.

161.    As a result, ERS has filed a petition for certiorari with the United States Supreme Court concerning the First Circuit's determination in *Altair Global Credit Opp.*, 914 F.3d 694.

162.    As explained above in Count V, pursuant to section 544(a) of the Bankruptcy Code, ERS has, as of the commencement of this Title III case, and without regard to any knowledge of a trustee, debtor, or creditor, the rights and powers of, or may avoid any transfer of its property or any obligation it incurred that is voidable by, a judicial lien creditor, among other things.  11 U.S.C. § 544(a).

163.    Pursuant to 19 L.P.R.A. § 2267(a)(2), under Puerto Rico law a judicial lien creditor has priority over unperfected security interests.

164.    If the United States Supreme Court reverses the First Circuit's decision in *Altair Global Credit Opp.*, 914 F.3d 694, and finds that the Defendants did not properly perfect their security interests in the Pledged Property, the Defendants' security interests in the Pledged Property are unperfected, and invalid and unenforceable against ERS.

165.    An actual, substantial, and justiciable controversy exists between ERS and the Defendants concerning the validity, priority, extent, and enforceability of the security interests asserted by Defendants in the Pledged Property.

166.    Accordingly, if the Supreme Court reverses the First Circuit as described in paragraph 164, ERS is entitled to a judicial declaration pursuant to 28 U.S.C. § 2201, as well as further relief pursuant to 28 U.S.C. § 2202, that the Defendants do not have, or are not beneficiaries of, properly perfected security interests in the Pledged Property, and thus any and

all security interest in the Pledged Property asserted by the Fiscal Agent or any holders of ERS Bonds are invalid and unenforceable against ERS pursuant to section 544(a) of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that Judgment be entered for ERS and against Defendants as follows:

A.      Declaring that any and all security interests asserted by the Fiscal Agent or any holders of ERS Bonds did not attach to Pre-2008 Assets or any proceeds thereof and thus such security interests are unenforceable against ERS;

B.      Declaring that any and all security interests asserted by the Fiscal Agent or any holders of ERS Bonds did not attach to funds that were not Employers' Contributions, including the AUC, or any proceeds thereof and thus such security interests are unenforceable against ERS;

C.      Declaring that any and all security interests asserted by the Fiscal Agent or any holders of ERS Bonds did not attach to Employee Loans or Employee Loan Payments or any proceeds thereof and thus such security interests are unenforceable against ERS;

D.      Declaring that any and all security interests asserted by the Fiscal Agent or any holders of ERS Bonds did not remain attached to funds remitted to ERS by the Fiscal Agent in accordance with the Resolution or any proceeds thereof and thus such security interests are unenforceable against ERS;

E.      Declaring that any and all security interests in funds remitted to ERS by the Fiscal Agent in accordance with the Resolution or any proceeds thereof, including the Employee Loans and Employee Loan Payments, are unperfected, avoidable and unenforceable pursuant to section 544(a) of the Bankruptcy Code and UCC section 9-317 and L.P.R.A. section 2267;

F.     Avoiding and preserving for the benefit of ERS any security interests of the Fiscal Agent or any holders of ERS Bonds in any deposit accounts not controlled by the Fiscal Agent, or in any of the funds in any of such deposit accounts, pursuant to sections 544 and 551 of the Bankruptcy Code;

G.     Declaring that no right to receive Employers' Contributions exists and that any and all security interests of the Fiscal Agent or any holders of ERS Bonds do not include the right to receive Employers' Contributions or any Employers' Contributions that have not yet been received by ERS (except for the Accounts Receivable);[14]

H.     Declaring that if the Supreme Court reverses the First Circuit's determination in *Altair Global Credit Opp.*, any and all security interests in the Pledged Property asserted by the Fiscal Agent or any holders of ERS Bonds are unperfected and thus invalid and unenforceable against ERS pursuant to section 544(a) of the Bankruptcy Code;

I.     Declaring that, pursuant to 19 L.P.R.A. section 2267(a), ERS's interests in ERS's deposit accounts not held by the Fiscal Agent and in funds credited to such deposit accounts have priority over any security interests in such deposit accounts and such funds held by the Fiscal Agent or the Bondholders;

J.     Disallowing all claims to security interests herein avoided, preempted, and/or declared subordinate to ERS's status.

K.     Directing all funds on deposit in the postpetition segregated account established pursuant to the July Stipulation to be remitted to the Commonwealth; and

L.     Granting ERS such further relief, in law and/or equity, as the Court deems just and proper.

---

[14] In accordance with paragraph 13 of the Stipulation, the Committee also prays that the Court declare that any and all security interests of the Fiscal Agent or any holders of ERS Bonds do not include the Accounts Receivable. *See* Count VIII above.

[*Remainder of page intentionally left blank*]

Dated: May 20, 2019
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*

Martin J. Bienenstock
Brian S. Rosen
Jeffrey W. Levitan
Margaret A. Dale
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*/s/ Luis F. del Valle*

Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel. 787.977.1932
Fax. 787.722.1932
dvelawoffices@gmail.com

OF COUNSEL FOR
A&S LEGAL STUDIO, PSC
434 Avenida Hostos
San Juan, PR 00918
Tel: (787) 751-6764/ 763-0565
Fax: (787) 763-8260

*Attorneys for the Financial Oversight and
Management Board for Puerto Rico, as
representative of the Employees Retirement
System of the Government of the
Commonwealth of Puerto Rico*

and

*/s/ Luc A. Despins*

PAUL HASTINGS LLP[15]
Luc. A. Despins, Esq. *(Pro Hac Vice)*

---

[15] Due to circumstances outside of its control, and despite its best efforts, the Committee's counsel Paul Hastings LLP was unable to finish a comprehensive conflicts review with respect to all defendants prior to the filing of this

200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of*
*Unsecured Creditors for all Title III Debtors*
*(except for COFINA)*

- and -

*/s/ Juan J. Casillas Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR
218312)
Alberto J. E. Añeses Negrón, Esq. (USDC -
PR 302710)
Israel Fernández Rodríguez, Esq. (USDC - PR
225004)
Juan C. Nieves González, Esq. (USDC - PR
231707)
Cristina B. Fernández Niggemann, Esq.
(USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
aaneses@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of*
*Unsecured Creditors for all Title III Debtors*
*(except for COFINA)*

---

Complaint. The Committee's counsel reserves the right to withdraw from this action as to certain defendants
without prejudice to Plaintiffs if necessary to resolve any conflicts that may arise.

50

Case:19-00366-LTS Doc#:1 Filed:05/20/19 Entered:05/20/19 20:21:04 Desc:Main Document Page 51 of 52

**Exhibit A**

**ERS Executive Order (E.O. 2016-031)**

Case:19-00366-LTS Doc#:1 Filed:05/20/19 Entered:05/20/19 20:21:04 Desc:Main
Document Page 52 of 52

## **Exhibit B**

**Security Agreement**

COMMONWEALTH OF PUERTO RICO
LA FORTALEZA
SAN JUAN, PUERTO RICO

Administrative Bulletin Num. EO-2016-31

**EXECUTIVE ORDER ISSUED BY THE GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO, HON. ALEJANDRO J. GARCÍA PADILLA, PURSUANT TO ACT NO. 21-2016, AS AMENDED, KNOWN AS THE "PUERTO RICO EMERGENCY MORATORIUM AND REHABILITATION ACT," TO DECLARE AN EMERGENCY PERIOD FOR CERTAIN GOVERNMENT ENTITIES, TO DEFER CERTAIN DEBT SERVICE OBLIGATIONS OF THOSE ENTITIES, TO SUSPEND TRANSFERS OF REVENUES, AND TO ORDER THE IMPLEMENTATION OF OTHER MEASURES THAT ARE REASONABLE AND NECESSARY TO ALLOW FOR THE CONTINUED PROVISION OF ESSENTIAL SERVICES TO PROTECT THE HEALTH, SAFETY AND WELFARE OF THE RESIDENTS OF THE COMMONWEALTH OF PUERTO RICO**

**WHEREAS:** On April 6, 2016, I signed into law Act 21-2016, as amended, known as the "Puerto Rico Emergency Moratorium and Rehabilitation Act" (the "Act"). Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Act.

**WHEREAS:** The Act declared a state of emergency in recognition of the fiscal crisis faced by the Commonwealth and related Government Entities—namely, that both are threatened with the prospect of disorderly default on outstanding obligations.

**WHEREAS:** The Secretary of the Treasury has advised me that, after paying for the necessary expenses to protect the public health, safety, education, and welfare of the residents of Puerto Rico, the Commonwealth (1) will have insufficient funds to make the total debt service payments on the Public Debt (as defined in the Act), and (2) will remain in a fragile liquidity position during fiscal year 2016-2017, during which time it will be required to take extraordinary measures, including those provided herein and in Section 108 of the Act, to ensure the continuation of essential government operations.

**WHEREAS:** The Commonwealth of Puerto Rico has the responsibility and the duty to ensure the public health, safety, education, and welfare of its residents through the exercise of its police power.

**WHEREFORE:**   I, ALEJANDRO J. GARCÍA PADILLA, Governor of the Commonwealth, by virtue of the inherent powers of my position and the authority vested in me by the Constitution and the laws of the Commonwealth of Puerto Rico, do hereby order as follow:

**FIRST:**   Pursuant to Sections 201 and 202 of the Act, I hereby declare the Puerto Rico Convention Center District Authority ("CCDA") to be in a state of emergency and announce the commencement, as of the date of this Executive Order, of an Emergency Period for CCDA. I further hereby declare that debt obligations of CCDA shall be Covered Obligations under the Act. I further declare any obligation of CCDA to transfer hotel occupancy tax revenues (the "Hotel Tax Revenues") pursuant to Article 31 of Act 272-2003 or the Trust Agreement, dated as of March 24, 2006, as amended, to the Government Development Bank for Puerto Rico ("GDB") or any Trustee (as defined in such Trust Agreement) is an Enumerated Obligation, and is hereby suspended. This Executive Order does not suspend the payment of other obligations of CCDA other than as provided for in this paragraph.

**SECOND:**   Administrative Bulletin Nos. OE-2016-10, OE-2016-14, and OE-2016-30, as they relate to GDB, shall continue in effect, except that GDB's obligation to transfer Hotel Tax Revenues to the Trustee (each, as defined in the FIRST paragraph of this Executive Order) is declared an Enumerated Obligation, and is hereby suspended.

**THIRD:**   Pursuant to Section 201(d) of the Act, I hereby declare that the Puerto Rico Tourism Company's obligation to transfer Hotel Tax Revenues (as defined in the FIRST paragraph of this Executive Order) to GDB is hereby suspended as it relates to payment of Covered Obligations of CCDA.

**FOURTH:**   Pursuant to Sections 201 and 202 of the Act, I hereby declare the Employees Retirement System of the Government of the Commonwealth of Puerto Rico and its Instrumentalities ("ERS") to be in a state of emergency and announce the commencement, as of the date of this Executive Order, of an Emergency Period for ERS. I further declare that any obligation of ERS, pursuant to the Pension Funding Bond Resolution, dated as of January 24, 2008, as amended, to transfer contributions made by employers that participate in ERS, and any assets in lieu thereof or derived thereunder paid to ERS under Sections 2-116, 3-105, and 4-113 of Act No. 447 of May 15, 1951, as amended, to the Trustee (as defined in such Pension Funding Bond

2

Resolution) is an Enumerated Obligation, and is hereby suspended. This Executive Order does not suspend payment of other obligations of ERS other than as provided for in this paragraph.

FIFTH:    Administrative Bulletin Nos. OE-2016-18 and OE-2016-30, as they relate to the Puerto Rico Highways and Transportation Authority ("HTA"), shall continue in effect, except that HTA's obligations to transfer pledged funds under Resolution No. 68-18, dated as of June 13, 1968, as amended, and Resolution No. 98-06, dated as of February 26, 1998, as amended, including Existing Toll Facilities Revenues and Toll Revenues, to the Fiscal Agent (each, as defined in such Resolutions) are hereby declared Enumerated Obligations, and are hereby suspended. I further hereby declare that any obligation of HTA to transfer revenues pledged for the payment of outstanding loans owed to GDB, is hereby modified solely to the extent necessary to provide HTA with the revenues it requires to fund operating expenses or essential services. This Executive Order does not suspend payment of other obligations of HTA other than as provided for in this paragraph.

SIXTH:    Administrative Bulletin No. OE-2016-30, as it relates to the Commonwealth of Puerto Rico, shall continue in effect, except that (a) the Commonwealth's obligations to (i) make or transfer Employer Contributions to ERS up to the amount of debt service payable by ERS during fiscal year 2016-2017, (ii) transfer revenues to HTA pursuant to Section 3060.11 of the Puerto Rico Internal Revenue Code of 2011, as amended, and Section 23.01 of Act No. 22-2000, as amended, other than those revenues referred to in paragraph FIFTH, which have been pledged for the payment of outstanding loans owed to GDB, and (iii) transfer revenues to the Puerto Rico Infrastructure Finance Authority ("PRIFA") pursuant to Articles 25 and 25-A of Act No. 44 of June 21, 1988, as amended, and (b) the Puerto Rico Ports Authority obligation to transfer revenues to the Trustee of the Puerto Rico Infrastructure Financing Authority Revenue Bonds (Ports Authority Project), Series 2011, are declared Enumerated Obligations, and are hereby suspended.

SEVENTH:    Administrative Bulletin No. OE-2016-14 related to PRIFA shall continue in effect, except that any debt obligations of PRIFA are declared Covered Obligations under the Act.

**EIGHTH:** Pursuant to Sections 201 and 202 of the Act, I hereby declare the Puerto Rico Industrial Development Company ("PRIDCO") to be in a state of emergency and announce the commencement, as of the date of this Executive Order, of an Emergency Period for PRIDCO. I further hereby declare that any obligation of PRIDCO, pursuant to the Trust Indenture, dated as of July 1, 1964, as amended, to transfer revenues from the Trusteed Properties to the Trustee (each, as defined in such Trust Indenture) is an Enumerated Obligation, and is hereby suspended. Notwithstanding the declaration of the Emergency Period for PRIDCO pursuant to this Executive Order, this Executive Order does not suspend payment of other obligations of PRIDCO.

**NINTH:** Pursuant to Sections 201 and 202 of the Act, I hereby declare the University of Puerto Rico ("UPR") to be in a state of emergency and announce the commencement, as of the date of this Executive Order, of an Emergency Period for UPR. I further declare that any obligation of UPR, pursuant to the Trust Agreement, dated as of June 1, 1971, as amended, to transfer Pledged Revenues to the Trustee (each, as defined in such Trust Agreement) is an Enumerated Obligation, and is hereby suspended. I further declare that any obligation of UPR pursuant to the Lease Agreement with Desarrollos Universitarios Inc., dated as of December 21, 2000, is a Covered Obligation under the Act. This Executive Order does not suspend payment of other obligations of UPR other than as provided for in this paragraph.

**TENTH:** Pursuant to Sections 201 and 202 of the Act, I hereby declare the Puerto Rico Public Finance Corporation ("PFC") to be in a state of emergency and announce the commencement, as of the date of this Executive Order, of an Emergency Period for PFC. I further declare that any obligation of PFC to request the inclusion of an appropriation in the proposed budget submitted to the Legislative Assembly for the payment of bonds issued by PFC and any obligation of PFC to cause the Secretary of the Treasury to transfer such appropriation to the relevant bond trustee are Enumerated Obligations under the Act, and are hereby suspended.

**ELEVENTH:** Pursuant to Section 103(l)(ii) of the Act,[1] I hereby clarify that debt service payments, but solely to the extent that such debt service payment shall become due and owing according to their scheduled terms, that can be made from funds on deposit with a trustee, are not Covered Obligations.

---

[1] [Spanish Provision: Section 103(x)(ii)].

4

**TWELFTH:** Pursuant to Section 201(b) of the Act, no act shall be done, and no action or proceeding shall be commenced or continued in any court of any jurisdiction that is related to or arises under any Covered Obligation of Government Entities, including actions or proceedings related to or arising under such obligations listed in the FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH, SEVENTH, EIGHTH, NINTH and TENTH paragraphs of this Executive Order.

**THIRTEENTH:** Notwithstanding any provision herein, this Executive Order does not suspend or prohibit the payment of the loans or other indebtedness of any Government Entity owed to GDB, the proceeds of which shall be used to disburse funds deposited at GDB to ensure the provision of essential services, consistent with Executive Order 2016-10.

**FOURTEENTH:** SEVERABILITY. This Executive Order shall be interpreted in a manner to render it valid to the extent practicable in accordance with the Constitution of the Commonwealth of Puerto Rico and otherwise applicable federal law. If any clause, paragraph, subparagraph, provision or part of this Executive Order were to be preempted or declared unconstitutional or unlawful by a competent court, the order to such effect issued by such court will neither affect nor invalidate the remainder of this Executive Order. The effect of such preemption or order shall be limited to the clause, paragraph, subparagraph, provision or part of this Executive Order preempted or declared unconstitutional or unlawful and only with respect to the application thereof to the particular obligation subject to such challenge.

**FIFTEENTH:** REPEAL. This order shall prevail over any other Executive Order that may, in whole or in part, be inconsistent with this Executive Order, to the extent of such incompatibility.

**SIXTEENTH:** EFFECTIVENESS AND PUBLICATION. This Executive Order shall take effect immediately. Its widest publication and dissemination are hereby ordered. This Executive Order shall be enacted in both English and Spanish. If in the interpretation or application of this Executive Order any conflict arises as between the English and Spanish texts, the English text shall govern.

**SEVENTEENTH:** TERMINATION. This Executive Order shall remain in full force and effect until the earlier of (i) expiration of the Covered Period or (ii) revocation of this Executive Order as provided by the Governor in writing. Any

Case:19-30866-LTS Doc#:22-1 Filed:05/20/19 Entered:05/20/19 20:51:04 Desc:
Exhibit Page 3 of 6

suspension of payment, transfer, or otherwise directed by this Executive Order shall remain in effect until the termination of this Executive Order according to this paragraph or the revocation by the Governor in writing of the particular suspension.

IN TESTIMONY BY WHICH, I issue this order under my signature and I stamp on it the Great Seal of the Commonwealth of Puerto Rico, in the city of San Juan, today, the _30_ day of June, 2016.



_____
ALEJANDRO J. GARCÍA PADILLA
GOVERNOR

Enacted pursuant to applicable law, on _June 30_, 2016.

_____
VÍCTOR A. SUÁREZ MELÉNDEZ
DESIGNATED SECRETARY OF STATE

## SECURITY AGREEMENT

This SECURITY AGREEMENT, dated as of June 2, 2008, is by and between the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "Debtor") and Owners from time to time of the Pension Funding Bonds of the Debtor (the "Pension Funding Bonds") issued from time to time pursuant to the Debtor's Pension Funding Bond Resolution adopted by the Debtor's Board of Trustees on January 24, 2008, as amended and supplemented from time to time (the "Resolution"), and other Beneficiaries under the Resolution, which Owners and Beneficiaries are represented for purposes of this Security Agreement by The Bank of New York, as fiscal agent under the Resolution (the "Secured Party"). All capitalized words not defined herein shall have the meanings ascribed to them in the Resolution.

In order to provide security for the Debtor's payment of principal of, premium (if any) and interest on its Pension Funding Bonds and its payment of amounts due to the Owners of the Pension Funding Bonds and other Beneficiaries in accordance with the terms of the Pension Funding Bonds and the terms of the Resolution, Debtor hereby grants to the Secured Party a security interest in (i) the Pledged Property, and (ii) all proceeds thereof and all after-acquired property, subject to application as permitted by the Resolution. Remedies for failure of the Debtor to make timely payment of principal of, premium (if any) and interest on the Pension Funding Bonds or failure of the Debtor to fulfill its other covenants contained in the Resolution for the benefit of the Owners of the Pension Funding Bonds and the other Beneficiaries are as set forth in the Resolution.

The Debtor shall cause UCC financing statements and continuation statements to be filed, as appropriate, and the Secured Party shall not be responsible for any UCC filings.

EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO

By _____

Name:

Title:

THE BANK OF NEW YORK, as Fiscal Agent under the Resolution

By _____

Name:

Title:

## SECURITY AGREEMENT

This SECURITY AGREEMENT, dated as of June 2, 2008, is by and between the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "Debtor") and Owners from time to time of the Pension Funding Bonds of the Debtor (the "Pension Funding Bonds") issued from time to time pursuant to the Debtor's Pension Funding Bond Resolution adopted by the Debtor's Board of Trustees on January 24, 2008, as amended and supplemented from time to time (the "Resolution"), and other Beneficiaries under the Resolution, which Owners and Beneficiaries are represented for purposes of this Security Agreement by The Bank of New York, as fiscal agent under the Resolution (the "Secured Party"). All capitalized words not defined herein shall have the meanings ascribed to them in the Resolution.

In order to provide security for the Debtor's payment of principal of, premium (if any) and interest on its Pension Funding Bonds and its payment of amounts due to the Owners of the Pension Funding Bonds and other Beneficiaries in accordance with the terms of the Pension Funding Bonds and the terms of the Resolution, Debtor hereby grants to the Secured Party a security interest in (i) the Pledged Property, and (ii) all proceeds thereof and all after-acquired property, subject to application as permitted by the Resolution. Remedies for failure of the Debtor to make timely payment of principal of, premium (if any) and interest on the Pension Funding Bonds or failure of the Debtor to fulfill its other covenants contained in the Resolution for the benefit of the Owners of the Pension Funding Bonds and the other Beneficiaries are as set forth in the Resolution.

The Debtor shall cause UCC financing statements and continuation statements to be filed, as appropriate, and the Secured Party shall not be responsible for any UCC filings.

**EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

By _____
Name:
Title:

**THE BANK OF NEW YORK,** as Fiscal Agent under the Resolution

By _____
Name: Steven Vaccarello
Title: Vice President

DPR MODIFIED PROMESA B1040 (FORM 1040) (05/17)

| **PROMESA COVER SHEET**<br>(Instructions on Reverse) | **CASE NUMBER**<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS (DEBTOR, if Title III Petition; ISSUER, if Title VI Application)**<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") | **DEFENDANTS**<br>ANDALUSIAN GLOBAL DESIGNATED ACTIVITY COMPANY; THE BANK OF NEW YORK MELLON CORPORATION; MASON CAPITAL MASTER FUND LP; OCHER ROSE, L.L.C.; SV CREDIT, L.P.; CROWN MANAGED ACCOUNTS FOR AND ON BEHALF OF CROWN/PW SP; LMA SPC FOR AND ON BEHALF OF MAP 98 SEGREGATED PORTFOLIO; OCEANA MASTER FUND LTD.; PENTWATER MERGER ARBITRAGE MASTER FUND LTD.; AND PWCM MASTER FUND LTD, |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Proskauer Rose LLP, Eleven Times Square, New York, NY 10036. Tel. 212.969.3000; Luis F. del Valle-Emmanuelli; P.O. Box 79897; Carolina, Puerto Rico 00984-9897. | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☑ Debtor<br>☐ Creditor<br>☐ Trustee<br>☐ U.S. Trustee/Bankruptcy Admin<br>☐ Other | **PARTY** (Check One Box Only)<br>☐ Debtor<br>☑ Creditor<br>☐ Trustee<br>☐ U.S. Trustee/Bankruptcy Admin<br>☐ Other |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

(i) 28 U.S.C. §§ 2201, 2202 (Declaration Defendants' asserted security interests did not attach to pre-2008 assets); (ii) 28 U.S.C. §§ 2201, 2202 (Declaration Defendants' asserted security interests did not attach to funds that were not employers' contributions); (iii) 28 U.S.C. §§ 2201, 2202 (Declaration Defendants' asserted security interests did not remain attached to the funds remitted to ERS by the fiscal agent); (iv) 48 U.S.C. § 2161; 11 U.S.C. § 544; UCC § 9-317; 19 L.P.R.A. § 2214, 2262, 2264, 2267 (Declaration Defendants' asserted security interests in remitted to ERS by the fiscal agent are unperfected, invalid, and unenforceable); (vi) 48 U.S.C. § 2161; 11 U.S.C. §§ 544, 550, 551; 19 L.P.R.A. §§ 2214, 2262, 2264, 2267 (Judgment avoiding and preserving for benefit of ERS any security interests of Defendants in any deposit accounts not controlled by the fiscal agent or in any of the funds in any such deposit accounts pursuant to bankruptcy code sections 544 and 551); (vii) 48 U.S.C. § 2161; 19 L.P.R.A. §§ 2212(a) (52), 2267(a)(2) , 11 U.S.C. § 502(a) (Judgment that under Puerto Rico law ERS's interest in deposit accounts not held by the fiscal agent and funds credited to such accounts is entitled to priority over any security interests in such accounts and disallowing claims to such security interests); (viii) 28 U.S.C. §§ 2201, 2202 (Declaratory judgment Defendants' have no right to receive employers' contributions); (ix) 48 U.S.C. § 2161; 11 U.S.C. § 544; 19 L.P.R.A. § 2267; 28 U.S.C. §§ 2201, 2202 (Declaratory judgment Defendants' asserted security interests in "pledged property" are unperfected, invalid, and unenforceable

## NATURE OF SUIT

☐ PROMESA Title III Petition ☐ PROMESA Title VI Application for Approval of Modifications<br>☐ Other Federal Question ☑ Adversary Proceeding ☐ Demand $ _____

*If Adversary Proceeding is checked, number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc., below:*

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☑ 14-Recovery of money/property – other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
☑ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief - imposition of stay
☐ 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☑ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

## TITLE III CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR<br>ERS | CASE NO.<br>17-BK-3566 (LTS) | |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>United States District Court for the District of Puerto Rico | DIVISION OFFICE | NAME OF JUDGE<br>Laura Taylor Swain |

DPR MODIFIED PROMESA B1040 (FORM 1040) (05/17)

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>5/20/2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>LUIS F. DEL VALLE-EMMANUELLI | |

THIS FORM IS TO BE USED EXCLUSIVELY FOR FILINGS RELATING TO THE PUERTO RICO OVERSIGHT MANAGEMENT AND ECONOMIC STABILITY ACT (PROMESA). FOR ADMINISTRATION PURPOSES **ONLY**, THE PUBLIC DOCKETS FOR PROMESA PROCEEDINGS UNDER TITLE III AND ADVERSARY PROCEEDINGS WILL BE MAINTAINED ON THE CASE MANAGEMENT/ELECTRONIC CASE FILING (CM/ECF) SYSTEM OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF PUERTO RICO. THESE CASES ARE UNDER THE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO.