# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------- x
                                                                    :
In re:                                                              :
                                                                    :
THE FINANCIAL OVERSIGHT AND                                         :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                   :  Title III
                                                                    :
        as representative of                                        :  Case No. 17-BK-3283 (LTS)
                                                                    :
THE COMMONWEALTH OF PUERTO RICO et al.,                             :  (Jointly Administered)
                                                                    :
        Debtors.[1]                                                 :
------------------------------------------------------------------- x
                                                                    :
In re:                                                              :
                                                                    :
THE FINANCIAL OVERSIGHT AND                                         :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                   :  Title III
                                                                    :
        as representative of                                        :  Case No. 17-BK-3566 (LTS)
                                                                    :
THE EMPLOYEES RETIREMENT SYSTEM OF THE                              :
GOVERNMENT OF THE COMMONWEALTH OF                                   :
PUERTO RICO,                                                        :
                                                                    :
        Debtor.                                                     :
------------------------------------------------------------------- x
```

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**ADDITIONAL OMNIBUS OBJECTION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO CLAIMS ASSERTED BY HOLDERS OF
BONDS ISSUED BY EMPLOYEES RETIREMENT SYSTEM OF
GOVERNMENT OF PUERTO RICO**

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee"),[2] hereby files this additional omnibus objection (the "Objection") to all claims asserted against ERS and the Commonwealth based on the approximately $3.1 billion of outstanding bonds issued by ERS in 2008 (the "ERS Bonds"). In support of this Objection, the Committee respectfully states as follows.

## BACKGROUND

1. On March 12, 2019, the Committee filed its *Omnibus Objection of Official Committee of Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Puerto Rico* [Docket No. 5580 in Case No. 17-03283 (LTS)] (the "Committee's *Ultra Vires* Objection"), in which it objected to all ERS bond-related claims on the grounds that the ERS Bonds were issued *ultra vires*.

2. On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of Puerto Rico filed its *Omnibus Objection of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted By Holders of ERS Bonds Against ERS and the Commonwealth* [Docket No. 6482 in Case No. 17-03283 (LTS)] (the "Retirees' Objection"), in which it objected to all ERS bond-related claims on *ultra vires* grounds and on additional grounds (the "Non-*Ultra Vires* Grounds") including, without limitation, that (i) the ERS

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

Bondholders (as defined therein) cannot assert claims against the Commonwealth for payment of the ERS Bonds because the ERS Bonds are limited, non-recourse obligations of ERS with respect to which the Commonwealth has no, and the ERS Bondholders disclaimed any, liability for payment of the ERS Bonds, (ii) the ERS Bondholders are improperly asserting postpetition claims against ERS and the Commonwealth, and (iii) the Court should disallow the ERS Bondholders' claims to the extent that they allege a security interest in (a) property of the Commonwealth (because claims impermissibly asserted by the ERS Bondholders cannot be secured claims), (b) property of ERS other than prepetition employer contributions (because no security interest was granted to ERS in any such property), or (c) postpetition assets of ERS (because employer contributions are not "special revenues" and section 552(b) of the Bankruptcy Code, as incorporated by PROMESA, is inapplicable to the ERS Bondholders' purported security interest).

## PROCEDURAL BACKGROUND

3. This Objection is filed in accordance with the *Order Establishing Initial Procedures with Respect to (I) Objections of Official Committee of Unsecured Creditors and Official Committee of Retired Employees, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Commonwealth of Puerto Rico, (II) Count One of Certain Complaints Alleging That Such Bonds Were Issued Ultra Vires and (III) Establishing Claim Objection Deadline for Certain ERS Bond Claims* [Docket No. 8818 in Case No. 17-03283 (LTS)] (the "ERS Procedures Order") entered by the Court on October 7, 2019. The ERS Procedures Order sets January 6, 2020 as the deadline for additional objections to any ERS Bond Claims (as defined therein).

**RELIEF REQUESTED**

4. By this Objection, the Committee seeks the disallowance of the ERS Bondholder claims against ERS and against the Commonwealth in their entirety on certain of the Non-*Ultra Vires* Grounds, as specified below, pursuant to section 502(b)(1) of the Bankruptcy Code.[3] As set forth in the Retirees' Objection, these claims are void and unenforceable claims against the Commonwealth, and because the ERS Bondholders do not hold a claim against the Commonwealth, the ERS Bondholders do not have a basis to assert a secured claim against any property of the Commonwealth. In addition, even if the ERS Bondholder claims are not void, the ERS Bondholders' asserted secured claim against ERS's property is limited to only employer contributions in ERS's possession as of its petition date (and proceeds of those employer contributions) that are identifiable from other ERS assets—a showing that the ERS Bondholders have not and will not be able to make. Furthermore, the Committee seeks the disallowance of the ERS Bondholder claims against the Commonwealth on the ground that the ERS Bonds were issued *ultra vires*, as detailed in the Committee's *Ultra Vires* Objection. Finally, as more fully detailed in Sections I and II below, the Committee asserts additional arguments in support of this Objection.

**BASIS FOR RELIEF**

5. The Committee hereby adopts and incorporates by reference the following Non-*Ultra Vires* Grounds asserted in paragraphs 33-38, 47-48, 52-56, and 64 of the Retirees' Objection. Moreover, while the arguments raised in paragraphs 94-109 of the Retirees' Objection have already been addressed in the Court's *Opinion and Order Granting Plaintiff's*

---

[3] As this Court is aware, the ERS Bondholders' and fiscal agent's motions (and related joinders) for allowance and payment of postpetition and administrative expense claims [Docket Nos. 9285, 9294, 9298, and 9299 in Case No. 17-3283 (LTS)] are currently stayed, and the related briefing schedule will be determined after a meet and confer process in accordance with the ERS scheduling order, dated October 24, 2019 [Docket No. 8962 in Case No. 17-3283 (LTS)] (as amended). The Committee reserves all its rights in regard to these motions.

3

*Motion for Summary Judgment as to Count III and Counterclaims II and III, and Denying Defendants' Motion for Summary Judgment*, dated June 27, 2019 (which decision is currently pending on appeal before the First Circuit), the Committee joins in these paragraphs out of an abundance of caution. Furthermore, in further support of this Objection, the Committee adopts and incorporates by reference the arguments set forth in the Committee's *Ultra Vires* Objection.

6. The Committee also asserts the following grounds for objection.

I. **Alternatively, ERS Bondholders Can Have No Greater Claims Against the Commonwealth Than ERS Itself, Which Has, at Most, Unsecured Claims for Unpaid Prepetition Employer Contributions**

7. **If**, as a result of pending appeals, it is eventually determined that (a) notwithstanding this Court's June 27, 2019 ruling [Docket No. 251 in Adv. Proc. No. 17-213 (LTS)] that section 552 of the Bankruptcy Code cuts off the ERS Bondholders' security interest in postpetition employer contributions, the ERS Bondholders' security interests are sufficiently broad to encompass all employer contributions (and, therefore, (i) the ERS Bondholders are entitled to receive all employer contributions and (ii) ERS's unsecured creditors are not entitled to receive employer contributions) and (b) ERS Bondholders are the sole beneficiaries of any constitutional claims by ERS against the Commonwealth (instead of such claims inuring to the benefit of ERS's unsecured creditors), then the ERS Bondholders' claims against the Commonwealth should also be disallowed for the reasons set forth in this Section I. If it is eventually determined that the ERS Bondholders do not have a security interest in all employer contributions or that the ERS Bondholders are not the sole beneficiaries of any constitutional claims by ERS against the Commonwealth, then the Committee takes no position, at this time, with respect to (i) the Unpaid Employer Contributions (as defined below) or their disposition or (ii) the constitutional claims set forth in Section I.B below.

4

**A.      ERS Has, at Most, Unsecured Claim Against the Commonwealth for Unpaid Preprepetition Employer Contributions**

8.      To the extent the Commonwealth breached a purported statutory obligation by failing to pay employer contributions to ERS in accordance with the Enabling Act, that breach gives rise, if at all, only to an unsecured prepetition claim of ERS against the Commonwealth. ERS has no property interest in prepetition employer contributions not paid by the Commonwealth (the "Unpaid Employer Contributions").

9.      The ERS Bondholders have no secured claims in the Unpaid Employer Contributions because the Commonwealth did not grant them a security interest in any Commonwealth property. Thus, they can have no claim against the Commonwealth superior to that of ERS, which issued the ERS Bonds and which allegedly has the right to receive the Unpaid Employer Contributions. Accordingly, any purported breach by the Commonwealth of obligations to ERS with respect to the Unpaid Employer Contributions gives rise, at best, to no more than an unsecured claim of ERS, which will be dealt with and paid under the terms of a confirmed plan of adjustment applicable to all unsecured claims against the Commonwealth.

**B.      ERS Cannot Bring Constitutional Claims Against the Commonwealth With Respect to Unpaid Prepetition Employer Contributions and Other ERS Property in Which ERS Bondholders Have No Security Interest**

10.     As a creature of the Commonwealth, ERS cannot bring constitutional Takings Clause (or Contract Clause) claims against the Commonwealth for any alleged unconstitutional taking of the Unpaid Employer Contributions (or other ERS property in which no security interest was granted to the ERS Bondholders). This is true under both the Puerto Rico and U.S. Constitutions, which are construed in harmony. *See Trinidad Hernández v. E.L.A.*, 188 D.P.R. 828 (2013); *Domínguez Castro v. E.L.A.*, 178 D.P.R. 1 (2010).

11.     Originally developed in cases involving constitutional claims by a city or town

5

against its creator state, the "creature of the state" doctrine has also been applied to claims by state agencies and instrumentalities. For example, the Puerto Rico Telephone Company was held to be a "municipal corporation" and thus a "political subdivision of the state" that lacked Fourteenth Amendment rights *vis-à-vis* the Commonwealth. *Laborde-Garcia v. Puerto Rico Tel. Co.*, 734 F. Supp. 46, 47 (D.P.R. 1990). Likewise, in a case involving claims by the Puerto Rico Office of the Ombudsman for the Elderly against the Commonwealth and other Commonwealth agencies, the court held that "[s]tate political subdivisions [such as the Ombudsman for the Elderly] have 'no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.'" *P.R. Office of the Ombudsman for the Elderly v. Commonwealth*, 665 F. Supp. 2d 74, 82 (D.P.R. 2009) (*quoting Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009)).

12. Under the Enabling Act, ERS is unquestionably an agency of the Commonwealth. 3 L.P.R.A. § 775. Control over ERS (within the legislative grant of its authority) is vested in its board of trustees. The board members are appointed, directly or indirectly, by the Commonwealth governor and include the Secretary of the Treasury, the President of the Government Development Bank for Puerto Rico, the Commissioner of Municipal Affairs, and the Director of the Human Resources Office. *Id.* As a result, ERS has no constitutional rights under the Contract Clause or substantive rights under the Fourteenth Amendment, including the Takings Clause, against its creator, the Commonwealth. *See Ysura*, 555 U.S. at 362 ("State political subdivisions are 'merely . . . department[s] of the State, and the State may withhold, grant or withdraw powers and privileges as it sees fit.'" (alterations in original) (quoting *City of Trenton v. State of New Jersey*, 262 U.S. 182, 187 (1923)).

13. This is in contrast to the Compulsory Liability Joint Underwriting Association of Puerto Rico (the "JUA"), which has been permitted to bring constitutional claims against the

6

Commonweath.  As the First Circuit noted in *Association De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F. 3d 1 (1st Cir. 2007), the JUA "is 'private in nature' and is therefore 'not an agency of the commonwealth.'"  *Id*. at 20 (*citing Arroyo-Melecio v. Puerto Rican Am. Ins. Co.*, 398 F. 3d 56, 62 (1st Cir. 2005)).  Although created by law and operating under some direction by the Commonwealth, the JUA is essentially an insurance business engaged in commercial activity in the same manner as a private company with no connection to the Commonwealth.  *See* 26 L.P.R.A. § 8055 (the JUA was "created as a private association . . .").  Moreover, the Insurance Commissioner is not a member of the JUA's board and does not actively supervise the JUA's day-to-day affairs.  *Arroyo-Melecio*, 398 F. 3d at 62.

II. **ERS Bondholders Have No Secured Claim Against the Commonwealth for Employer Payments Under Postpetition Legislation or Other Cash Allegedly Transferred by ERS to the Commonwealth Under Postpetition Legislation**

14. While the Committee expresses no view, at this time, as to the validity or enforceability of Joint Resolution 188 of the Puerto Rico Legislature passed on June 25, 2017 or Act 106 adopted by the Puerto Rico Legislature on August 18, 2017, commonly known as the "pay-go legislation" (collectively, the "Postpetition Legislation"), employer payments under the Postpetition Legislation and cash allegedly transferred by ERS to the Commonwealth under such legislation are not part of the ERS Bondholders' collateral.[4]

    A. **ERS Bondholders Have No Security Interest in ERS's Right to Receive Future Employer Contributions Under Enabling Act, and Employer Payments Under Postpetition Legislation Are Not the Same as, or Identifiable Proceeds of, Such Employer Contributions**

15. The ERS Bondholders allege a secured claim against the Commonwealth for

---

[4] To be clear, at this time, the Committee takes no position in this Objection with respect to the Commonwealth's and ERS's respective ownership rights to the employer payments or the Other Cash (as defined below) as a result of the Postpetition Legislation.

7

employer payments under the Postpetition Legislation on the basis that, in substance: (a) the Postpetition Legislation transferred ERS's right to receive future employer contributions from ERS to the Commonwealth; (b) the transfer constituted a disposition of the their collateral (*i.e.*, ERS's right to receive future employer contributions) without their authorization; and (c) under section 9-315 of the Uniform Commercial Code as adopted in Puerto Rico (the "UCC"), their security interest continues in that collateral and attaches to its identifiable proceeds. Each of these assertions is flawed.

16. First, the Postpetition Legislation could not have transferred ERS's right (if any) to receive future employer contributions from ERS to the Commonwealth because Employers' Contributions (as defined in the ERS Bond Resolution) are simply not the same as employer payments under the Postpetition Legislation. The ERS Bond Resolution defines "Employers' Contributions" as amounts that are **payable to ERS under specified sections of the Enabling Act (as amended)**. Employer payments under the Postpetition Legislation are not payable to ERS, and the specified sections of the ERS Enabling Act are no longer in effect. The Postpetition Legislation, which established a new retirement system under which the Commonwealth is responsible for disbursing accrued pension benefits to pension beneficiaries, requires employers to make **payments to the Commonwealth based on retired employees (of those employers) who are receiving retirement benefits from the Commonwealth**. *See* Act 106-2017, § 2.1(b). Under the Enabling Act (as in effect prior to the Postpetition Legislation), employers made **contributions to ERS based on current employees working for employers participating in the ERS system**. *See* 3 L.P.R.A. § 786-5 (repealed).

17. Second, the purported transfer was not an unauthorized disposition of the ERS Bondholders' collateral because the ERS Bondholders have no security interest in ERS's right (if any) to receive future employer contributions. Consistent with the basic legal maxim that "one

8

cannot give what one does not have" (or, in a common variation of the Latin, "*nemo dat qui non habet*"), if a security interest is granted in a potential future right to receive property (under circumstances in which that potential future property may never arise), that security interest cannot attach and become enforceable until the future property comes into existence and the debtor "has rights in the collateral." *See* UCC § 9-203. Therefore, there could be no security interest in ERS's right (if any) to receive future employer contributions unless and until the employer became obligated to make those contributions. *See also* 3 L.P.R.A. § 787f. In addition, as explained in the adversary complaint filed by ERS and the Committee,[5] the language of the ERS Bond Resolution and the ERS Security Agreement constituting the grant of security interests to the ERS Bondholders (including the definitions of terms used in the granting language) and the language of the Enabling Act pertaining to employer contributions make clear that no such security interest was granted. Even assuming the ERS Bondholders were granted such a security interest, the issue of whether any such security interest was cut off by section 552 of the Bankruptcy Code is currently on appeal in *Emps. Ret. Sys. v. Andalusian Glob. Designated Activity Co.*, Case No. 19-1699 (1st Cir. July 22, 2019).

18. Third, the ERS Bondholders have not alleged, much less demonstrated, that, as required under section 9-315(b) of the UCC, the employer payments under the Postpetition Legislation are not commingled with other property of the Commonwealth or, if commingled, are nonetheless identifiable as proceeds of ERS's purported right to receive them.

19. Accordingly, the ERS Bondholders can have no secured claim against the Commonwealth for employer payments under the Postpetition Legislation.

---

[5] *See Fin. Oversight & Mgmt.Bd. for P.R., ex rel. Emps. Ret. Sys. of the Government of the Commonwealth v. Andalusian Glob. Designated Activity Co.*, Adv. Proc. No 19-00366 (LTS) (D.P.R. May 20, 2019).

9

  **B. Cash Allegedly Transferred by ERS to the Commonwealth is Neither Collateral nor Identifiable Proceeds of Collateral**

20. The ERS Bondholders allege a secured claim against the Commonwealth for cash (other than employer payments under the Postpetition Legislation) transferred to the Commonwealth under the Postpetition Legislation (the "<u>Other Cash</u>") on the basis that, in substance, (a) the transfer was a disposition of their collateral (*i.e.*, prepetition employer contributions received by ERS or proceeds of such contributions) without their authorization and (b) under section 9-315 of the UCC, their alleged security interest continues in that collateral and attaches to its identifiable proceeds.

21. However, the ERS Bondholders have not demonstrated that, as required under section 9-315(b) of the UCC, the Other Cash was employer contributions previously received by ERS or identifiable proceeds of such contributions. In particular, the ERS Bondholders have not demonstrated (a) how, given the severe financial constraints under which ERS was operating, employer contributions remained unspent and available for transfer to the Commonwealth or (b) that the Other Cash was proceeds of employer contributions previously received by ERS that (i) were not commingled with other property of ERS or, if commingled, were nonetheless identifiable as such proceeds and (ii) were not commingled with other property of the Commonwealth or, if commingled, were nonetheless identifiable as such proceeds.

22. Because these conditions have not been satisfied, the ERS Bondholders can claim no security interest in the Other Cash allegedly transferred by ERS to the Commonwealth under the Postpetition Legislation.

**III. <u>Unmatured Postpetition Interest</u>**

23. Finally, the Committee objects to the ERS Bondholder claims to the extent they include claims for unmatured interest, as of the petition date. *See* 11 U.S.C. § 502(b)(2).

## **NOTICE**

24. Notice of this Objection has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Puerto Rico; (iii) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (iv) the Official Committee of Retirees; (v) the insurers of the bonds issued or guaranteed by the Debtors; (vi) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors; (vii) holders of ERS Bonds who are parties to any group that has filed a statement under Bankruptcy Rule 2019; (viii) parties that have filed a Notice of Participation as set forth in the ERS Procedures Order; (ix) The Bank of New York Mellon, N.A., as Fiscal Agent for the ERS Bonds; (x) DTC; and (xi) all parties that have filed a notice of appearance in the above-captioned Title III cases.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that the Court enter an order substantially in the form attached hereto granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated: January 6, 2020  /s/ Luc A. Despins

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212)318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to Official Committee of Unsecured Creditors for all Title III Debtors*

- and -

/s/ Juan J. Casillas

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Luis F. Llach Zúñiga, Esq. (USDC-PR 223112)
Israel Fernández Rodríguez, Esq. (USDC-PR 225004)
Juan C. Nieves González, Esq. (USDC- PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC-PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
lllach@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to Official Committee of Unsecured Creditors for all Title III Debtors*