UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO
et al.,

                  Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE EMPLOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO,

                  Debtor.

PROMESA
Title III

No. 17 BK 3566-LTS

------------------------------------------------------------x

MEMORANDUM OPINION AND ORDER DENYING RENEWED MOTION OF CERTAIN
SECURED CREDITORS OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF
THE COMMONWEALTH OF PUERTO RICO FOR APPOINTMENT AS TRUSTEES UNDER 11 U.S.C. § 926

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Before the Court is the *Renewed Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Appointment as Trustees Under 11 U.S.C. § 926* (Docket Entry No. 9260 in Case No. 17-3283, the "Motion").[2] The Motion was filed by certain holders of bonds (the "Bondholders") issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"). It requests entry of an order appointing the Bondholders as trustees of ERS under Section 926(a) of the Bankruptcy Code, 11 U.S.C. § 926(a),[3] for the purpose of prosecuting certain avoidance claims. In the alternative, the Motion seeks appointment of a third party as trustee to pursue those claims, with the trustee's fees and expenses to be paid by ERS.

The Court has subject matter jurisdiction of this contested matter pursuant to 48 U.S.C. § 2166(a). The Court heard oral argument on the Motion on December 11, 2019 (the "Hearing"). Having considered carefully all of the submissions and arguments made in connection with the Motion, the Court denies the Motion for the following reasons.

## BACKGROUND

The Motion arises against a backdrop of extensive litigation by the Bondholders related to their assertion that certain public pension-related legislation (the "Pay-Go Legislation") enacted by the Commonwealth of Puerto Rico (the "Commonwealth") after the commencement of the above-captioned Title III Cases, "at the . . . behest" of the Financial

---

[2] All docket entry references herein are to entries in Case No. 17-3283, unless otherwise specified.

[3] The sections of the Bankruptcy Code cited in this Memorandum Opinion and Order are made applicable in the above-captioned cases by Section 301(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2161(a).

Oversight and Management Board for Puerto Rico (the "Oversight Board"), wrongfully "purport[ed] to dismantle ERS and transfer all of ERS's assets, including its revenues and its right to receive revenues, to the Commonwealth." (Motion at 2.) According to the Bondholders, the Pay-Go Legislation left ERS insolvent and unable to fulfill its obligations to the Bondholders. (Motion at 15.) Those and related allegations underpin the Bondholders' positions in several past and current adversary proceedings, contested matters, and civil actions brought in this Court and elsewhere. (See, e.g., Altair Global Credit Opportunities Fund (A), LLC v. Commonwealth of Puerto Rico, Adv. Proc. No. 17-219-LTS; Altair Global Credit Opportunities Fund (A), LLC v. Commonwealth of Puerto Rico, Adv. Proc. No. 17-220-LTS; *ERS Bondholders' Motion and Request for Allowance and Payment of Post-Petition and Administrative Expense Claims*, Docket Entry No. 9294.)

On February 19, 2019, the Bondholders filed a motion substantially similar to the instant Motion. (*Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Appointment as Trustees Under 11 U.S.C. § 926*, Docket Entry No. 5169, the "First Section 926 Motion"). Prior to the hearing on the First Section 926 Motion, the Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority entered into a stipulation tolling for 270 days the statutes of limitations applicable to certain Commonwealth avoidance claims pursuant to sections 546(a) and 549(d) of the Bankruptcy Code. (*Stipulation Between the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico Regarding the Tolling of Statute of Limitations and Order*, Docket Entry No. 5271, the "Tolling Stipulation"). The Bondholders subsequently withdrew the First Section 926 Motion. (*Notice of Withdrawal Without Prejudice of Motion of Certain Secured Creditors of the Employees*

*Retirement System of the Government of the Commonwealth of Puerto Rico for Appointment as Trustees Under 11 U.S.C. § 926*, Docket Entry No. 5273.)

On November 19, 2019, the Bondholders filed the instant renewed Motion. The Motion alleges that ERS and its creditors have been financially disadvantaged by the willingness of the Oversight Board to "enact and defend" the Pay-Go Legislation. (Motion at 19.) The Bondholders contend that the Oversight Board's simultaneous representation of both the Commonwealth and ERS[4] constitutes an "unresolvable" conflict of interest that is demonstrated by the Oversight Board's willingness to support and defend the Pay-Go Legislation notwithstanding its duties to ERS. (Motion at 16-19.) The Bondholders further argue that time for commencement of litigation challenging asset transfers in connection with the Pay-Go Legislation is of the essence because the Tolling Stipulation only extends the applicable statute of limitations periods by 270 days. (*Reply in Support of Renewed Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Appointment as Trustees Under 11 U.S.C. § 926* at 15, Docket Entry No. 9391.)

As Exhibit A to the Motion, the Bondholders filed a proposed *Adversary Complaint* (Docket Entry No. 9260-1) pleading two causes of action arising out of the Pay-Go Legislation. The two proposed claims for relief seek avoidance pursuant to Section 549(a) of the Bankruptcy Code, 11 U.S.C. § 549(a), and Section 544(a) of the Bankruptcy Code, 11 U.S.C. § 544(a), respectively, of alleged transfers effected by the Pay-Go Legislation.

---

[4] The Oversight Board is the representative of the Debtors in the above-captioned Title III cases. 48 U.S.C. § 2175(b).

The Puerto Rico Fiscal Agency and Financial Advisory Authority, the Oversight Board, and the Official Committee of Retired Employees of the Commonwealth of Puerto Rico filed objections to the Motion (Docket Entry Nos. 9342, 9345, and 9346, respectively).

DISCUSSION

Section 926(a) of the Bankruptcy Code provides that, "[i]f the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of [the Bankruptcy Code], then on request of a creditor, the court may appoint a trustee to pursue such cause of action." 11 U.S.C.A. § 926(a) (West 2016).

As the Court explained in connection with a prior motion seeking appointment of a Commonwealth trustee pursuant to Section 926 of the Bankruptcy Code in these cases, it must consider the particular circumstances of the case in determining whether the appointment of a trustee is appropriate. (See Tr. of April 24, 2019 Hr'g at 161:3-11, Docket Entry No. 6538.) Decisions analyzing the authority of creditors of private entities to initiate adversary proceedings on behalf of a chapter 11 estate are instructive in this regard. See, e.g., In re STN Enters., 779 F.2d 901, 904 (2d Cir. 1985); In re Sabine Oil & Gas Corp., 547 B.R. 503, 514-15 (Bankr. S.D.N.Y. 2016). Generally, to obtain derivative standing to sue on a private debtor's behalf, courts require a movant to establish that: (i) there are colorable claims for relief that on appropriate proof would support a recovery, and (ii) the debtor unjustifiably failed to bring suit.

These considerations are important in the PROMESA context as well. Even more important here are the structure and purpose of PROMESA which, like Chapter 9 of the Bankruptcy Code, affords a degree of protection and respect to the decisions of governmental entities that is not afforded to the decisions of private debtors, who are subject to more extensive

court control.  In the context of a municipal bankruptcy case, at least one court has cautioned that "[c]ourts should be loath to appoint a trustee [under Section 926] given that the court's limited powers in a chapter 9 case are best understood as operating within the context of constitutional and federalism concerns."  In re New York City Off-Track Betting Corp., No. 09-17121 MG, 2011 WL 309594, at *4 (Bankr. S.D.N.Y. Jan. 25, 2011).  Moreover, Collier on Bankruptcy warns that, in addressing a motion under Section 926, courts should not "permit a motion for a trustee to be used by creditors as a bargaining lever in negotiations over the plan . . . [and] the process should not be taken out of the debtor's hands by the appointment of a trustee to upset the delicate balance among competing interests that must be preserved for successful plan negotiation, formulation, and solicitation."  6 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 926.02 (16th ed. 2019).  Caution in this regard is particularly warranted in these cases brought under Title III of PROMESA, which gives the Oversight Board sole authority to propose a plan of adjustment.  48 U.S.C. § 2172(a).

As noted above, the instant Motion for the appointment of a trustee to pursue ERS claims relies in significant part on allegations that the Oversight Board operates under an unresolvable conflict of interest due to its representation of both the Commonwealth and ERS in these Title III Cases.  The Bondholders allege that the Oversight Board's conflicting roles have resulted in choices by the Oversight Board that favor the Commonwealth and its creditors at the expense of ERS and its creditors and assert that appointment of a trustee pursuant to Section 926 would permit actors who adequately represent the interests of ERS and its creditors to challenge postpetition acts of the Commonwealth that the Bondholders allege have injured their interests.

The Bondholders' argument does not, however, recognize the significance of the unique statutory scheme crafted by Congress to govern these proceedings and the unique nature

of the debtors that are the subject of these Title III cases. PROMESA provides for the appointment of a single Oversight Board that will act as the sole statutory representative of a territory and each of its covered territorial instrumentalities in their Title III cases. 48 U.S.C. §§ 2162, 2175. PROMESA provides for significant deference to the prerogatives of the governmental debtors and of their statutory representative and makes clear that Congress intended to preserve governmental debtors' ability to initiate transactions affecting their assets.[5] PROMESA borrows many provisions from Chapter 9 of the Bankruptcy Code, which "was drafted to assure that application of the federal bankruptcy power would not infringe upon the sovereignty, powers and rights of the states, including, presumably, states alleged to have a conflict of interest." In re Richmond Unified Sch. Dist., 133 B.R. 221, 226 (Bankr. N.D. Cal. 1991) (footnote omitted).

Section 303 of PROMESA—which is modeled on Section 903 of the Bankruptcy Code—preserves the authority of territories to exercise "political or governmental powers," 48 U.S.C. § 2163. Section 305 of PROMESA—which is modeled on Section 904 of the Bankruptcy Code—prohibits the Court from interfering with Title III debtors' property and political or governmental powers absent the Oversight Board's consent, 48 U.S.C. § 2165. Section 312(a) of PROMESA provides the Oversight Board with exclusive authority to file plans of adjustment with respect to Title III debtors, 48 U.S.C. § 2172(a).

This Court and others have recognized that, unlike the commercial focus of bankruptcy cases of private entities, the "primary purpose" of governmental insolvency proceedings "is not future profit, but rather continued provision of public services." In re Mount

---

[5] Among other things, PROMESA does not incorporate Section 363 of the Bankruptcy Code. See 48 U.S.C. § 2161(a).

Carbon Metro. Dist., 242 B.R. 18, 34 (Bankr. D. Colo. 1999). The goal of these PROMESA cases thus is not merely to maximize creditors' recoveries. Rather, these restructuring cases require a more holistic approach that focuses on the continuation and future of a government and its instrumentalities and their ability to meet the needs of the Commonwealth's residents as well as provide proper recompense of creditors.

Against that backdrop, and taking into account the potentially strong defenses to the Bondholders' claims laid out in the briefs opposing the Motion, the Oversight Board's unwillingness to pursue the claims pleaded in the Bondholders' proposed complaint is neither unjustified nor unreasonable. Specifically, it is not unreasonable for the Oversight Board—which has been established as an entity within the Commonwealth government[6]—to decline to cause ERS to challenge the authority of the Commonwealth government to enact legislation restructuring and reforming its pension system in aid of the reorganization of the government of Puerto Rico and its instrumentalities. The Oversight Board is designated, in the first instance, as the entity that makes important strategic and tactical judgments in managing these restructuring proceedings, and it necessarily does so in a holistic manner. While pursuing returns for creditors of each debtor is an important element of those judgments, it is not the exclusive end point of the Oversight Board's task. The needs, concerns and future of a political entity that is the home of millions of American citizens, as well as the needs, concerns and rights of a broad range of parties in interest and the ability to propose confirmable plans of adjustment, are all implicated here. The Oversight Board has been given the responsibility of balancing and prioritizing the relevant issues and concerns in developing fiscal arrangements and plans of adjustment, and it is entitled to a measure of deference in carrying out this responsibility. Accordingly, the Court

---

[6] See 48 U.S.C. § 2121(c)(1).

declines to exercise any power it might have under Section 926 of the Bankruptcy Code to grant the relief sought by the moving Bondholders.

This decision does not foreclose the creditors' abilities to pursue claims on account of the actions and decisions of the Commonwealth, the Oversight Board, and ERS with which they disagree. The Bondholders have vigorously sought to protect their financial interests and have challenged the Commonwealth's Pay-Go Legislation on multiple fronts and on a wide range of theories. Those proceedings will continue in due course.

## CONCLUSION

For the foregoing reasons, the Motion is denied. This Memorandum Order resolves Docket Entry No. 9260 in Case No. 17-3282 and Docket Entry No. 704 in Case No. 17-3566.

SO ORDERED.

Dated: January 7, 2020

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge