# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: ) | |
| ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO ) | |
| ) | Case No. 17-BK-03283 (LTS) |
| as representative of ) | |
| ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, ) | |
| ) | |
| Debtors.[1] ) | |
| ) | |
| ) | |
| In re: ) | |
| ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, ) | |
| ) | Case No. 17-BK-03566 (LTS) |
| as representative of ) | |
| ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE ) | |
| GOVERNMENT OF THE COMMONWEALTH OF ) | |
| PUERTO RICO, ) | |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| ) | |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK- 4780) (Last Four Digits of Federal Tax ID: 3747).

THE SPECIAL CLAIMS COMMITTEE OF THE )
FINANCIAL OVERSIGHT AND MANAGEMENT )     Adv. Proc. No. 19-00356 (LTS)
BOARD FOR PUERTO RICO, ACTING BY AND )
THROUGH ITS MEMBERS, )

     and )

THE OFFICIAL COMMITTEE OF UNSECURED )
CREDITORS OF ALL TITLE III DEBTORS )
(OTHER THAN COFINA), )

     as co-trustees of )

THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO, )

     Plaintiff, )

v. )

DEFENDANT 1M, *et al.*, )

     Defendants. )

_____ )

THE SPECIAL CLAIMS COMMITTEE OF THE )
FINANCIAL OVERSIGHT AND MANAGEMENT )     Adv. Proc. No. 19-00357 (LTS)
BOARD FOR PUERTO RICO, ACTING BY AND )
THROUGH ITS MEMBERS, )

     and )

THE OFFICIAL COMMITTEE OF UNSECURED )
CREDITORS OF ALL TITLE III DEBTORS )
(OTHER THAN COFINA), )

     as co-trustees of )

THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO, )

     Plaintiff, )

v. )

STOEVER GLASS & CO., *et al.*,

    Defendant.

---

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, ACTING BY AND
THROUGH ITS MEMBERS,

    and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS
(OTHER THAN COFINA),

    as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF PUERTO RICO,

    Plaintiff,

v.

DEFENDANT 1H-78H,

    Defendants.

Adv. Proc. No. 19-00359 (LTS)

---

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, ACTING BY AND
THROUGH ITS MEMBERS,

    and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS
(OTHER THAN COFINA),

Adv. Proc. No. 19-00361 (LTS)

|  | ) |  |
| --- | --- | --- |
| as co-trustees of | ) |  |
|  | ) |  |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) |  |
| GOVERNMENT OF PUERTO RICO, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| DEFENDANT 1G-50G, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |
|  | ) |  |
| ———————————————————— | ) |  |
|  | ) |  |
| THE FINANCIAL OVERSIGHT AND | ) |  |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) |  |
|  | ) |  |
| as representative of | ) | Adv. Proc. No. 19-00366 (LTS) |
|  | ) |  |
| EMPLOYEES RETIREMENT SYSTEM OF THE | ) |  |
| GOVERNMENT OF THE COMMONWEALTH OF | ) |  |
| PUERTO RICO, | ) |  |
|  | ) |  |
| and | ) |  |
|  | ) |  |
| THE OFFICIAL COMMITTEE OF UNSECURED | ) |  |
| CREDITORS OF ALL TITLE III DEBTORS (OTHER | ) |  |
| THAN COFINA), | ) |  |
|  | ) |  |
| as section 926 trustee of | ) |  |
|  | ) |  |
| THE COMMONWEALTH OF PUERTO RICO | ) |  |
|  | ) |  |
| Plaintiffs,[2] | ) |  |
|  | ) |  |
| against | ) |  |
|  | ) |  |
| ANDALUSIAN GLOBAL DESIGNATED ACTIVITY | ) |  |
| COMPANY; THE BANK OF NEW YORK MELLON; | ) |  |

---

[2] The Official Committee of Unsecured Creditors serves as section 926 trustee and co-plaintiff in the prosecution of this adversary proceeding pursuant to Docket No. 6990, which is incorporated herein by reference.

MASON CAPITAL MASTER FUND LP; OCHER )
ROSE, L.L.C.; SV CREDIT, L.P.; CROWN MANAGED )
ACCOUNTS FOR AND ON BEHALF OF CROWN/PW )
SP; LMA SPC FOR AND ON BEHALF OF MAP 98 )
SEGREGATED PORTFOLIO; OCEANA MASTER )
FUND LTD.; PENTWATER MERGER ARBITRAGE )
MASTER FUND LTD.; AND PWCM MASTER FUND )
LTD, )
                                                )
            Defendants. )
_____ )
                                                )
THE FINANCIAL OVERSIGHT AND )
MANAGEMENT BOARD FOR PUERTO RICO, )
                                                )
    as representative of )
                                                )  Adv. Proc. No. 19-00367 (LTS)
EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF THE COMMONWEALTH OF )
PUERTO RICO, )
                                                )
    and )
                                                )
THE OFFICIAL COMMITTEE OF UNSECURED )
CREDITORS OF ALL TITLE III DEBTORS (OTHER )
THAN COFINA), )
                                                )
    as section 926 trustee of )
                                                )
THE COMMONWEALTH OF PUERTO RICO )
                                                )
    Plaintiffs,[3] )
                                                )
    against )
                                                )
GLENDON OPPORTUNITIES FUND, L.P.; )
OAKTREE-FORREST MULTI-STRATEGY, LLC )
(SERIES B); OAKTREE OPPORTUNITIES FUND IX, )
L.P.; OAKTREE OPPORTUNITIES FUND IX )
(PARALLEL 2), L.P.; OAKTREE VALUE )
OPPORTUNITIES FUND, L.P.; PUERTO RICO AAA )

_____

[3] The Official Committee of Unsecured Creditors serves as section 926 trustee and co-plaintiff in the prosecution of this adversary proceeding pursuant to Docket No. 6990, which is incorporated herein by reference.

PORTFOLIO BOND FUND, INC.; PUERTO RICO )
AAA PORTFOLIO BOND FUND II, INC.; PUERTO )
RICO AAA PORTFOLIO TARGET MATURITY )
FUND, INC.; PUERTO RICO FIXED INCOME FUND, )
INC.; PUERTO RICO FIXED INCOME FUND II, INC.; )
PUERTO RICO FIXED INCOME FUND III, INC.; )
PUERTO RICO FIXED INCOME FUND IV, INC.; )
PUERTO RICO FIXED INCOME FUND V, INC.; )
PUERTO RICO GNMA & U.S. GOVERNMENT )
TARGET MATURITY FUND, INC.; PUERTO RICO )
INVESTORS BOND FUND I; PUERTO RICO )
INVESTORS TAX-FREE FUND, INC.; PUERTO RICO )
INVESTORS TAX-FREE FUND II, INC.; PUERTO )
RICO INVESTORS TAX-FREE FUND III, INC.; )
PUERTO RICO INVESTORS TAX-FREE FUND IV, )
INC.; PUERTO RICO INVESTORS TAX-FREE FUND )
V, INC.; PUERTO RICO INVESTORS TAX-FREE )
FUND VI, INC.; PUERTO RICO MORTGAGE- )
BACKED & U.S. GOVERNMENT SECURITIES )
FUND, INC.; TAX-FREE PUERTO RICO FUND, INC.; )
TAX-FREE PUERTO RICO FUND II, INC.; TAX- )
FREE PUERTO RICO TARGET MATURITY FUND, )
INC.; UBS IRA SELECT GROWTH & INCOME )
PUERTO RICO FUND, )
 )
           Defendants. )

------------------------------------------------------------------- X

**OPPOSITION TO URGENT MOTION OF THE OFFICIAL COMMITTEE OF
RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO FOR A
PROTECTIVE ORDER QUASHING THE SUBPOENA *AD TESTIFICANDUM*
SERVED UPON HECTOR MAYOL KAUFFMANN**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

ARGUMENT ...................................................................................................................... 7

I.    DISCOVERY IS APPROPRIATE AND NECESSARY .................................................. 7

II.   MR. MAYOL DID NOT BECOME THE RETIREE COMMITTEE'S
      COUNSEL UNTIL YEARS AFTER THE EVENTS IN QUESTION .............................. 9

      A.   The *Bogosian/Shelton* Factors Do Not Apply ............................................ 10

      B.   The Bondholders' Subpoena Satisfies the *Bogosian* Factors ..................... 11

           1.   The Bondholders Have a Demonstrable Need for Mr. Mayol's
                Testimony ........................................................................................... 12

           2.   There Is No Viable Alternative Source of this Evidence ..................... 12

           3.   Examination of Mr. Mayol Would Not Intrude Upon Privileged Matters .......... 13

      CONCLUSION .......................................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alomari v. Ohio Dep't of Pub. Safety*,
    Civ. No. 11-613, 2013 WL 5180811 (S.D. Ohio Sept. 13, 2013) ..........................11

*Bogan v. Nw. Mut. Life Ins. Co.*,
    152 F.R.D. 9 (S.D.N.Y. 1993) ..........................................................................10

*Bogosian v. Woloohojian Realty Corp.*,
    323 F.3d 55 (1st Cir. 2003) ...................................................................10, 11, 12

*Confederate Motors, Inc. v. Terny*,
    No. 11-10213-JGD, 2012 WL 612506 (D. Mass. Feb. 24, 2012) ....................10, 11

*Emhart Indus. Inc. v. New England Container Co., Inc.*,
    No. 06-218 S, 2013 WL 6001076 (D.R.I. Nov. 12, 2013) ....................................13

*Fish v. Kobach*,
    320 F.R.D. 566 (D. Kan. 2017)..........................................................................11

*González Segarra v. CFSE*,
    188 D.P.R. 252 (2013) .......................................................................................8

*Ira Green, Inc. v. Military Sales & Serv. Co.*,
    No. 10-207-M, 2013 WL 12316017 (D.R.I. Sep. 4, 2013)...................................13

*Nisus Corp. v. Perma-Chink Sys., Inc.*,
    No. 3:03-CV-120, 2004 U.S. Dist. LEXIS 29387 (E.D. Tenn. Sep. 17, 2004)......13

*Pamida, Inc. v. E.S. Originals*,
    281 F.3d 726 (8th Cir. 2002) .............................................................................10

*U.S. v. Philip Morris Inc.*,
    209 F.R.D. 13 (D.D.C. 2002)..............................................................................10

*U.S.I. Props. Corp. v. M.D. Constr. Co.*,
    860 F.2d 1 (1st Cir. 1988)...............................................................................8, 9

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
    164 F.R.D. 245 (D. Kan. 1995)......................................................................10, 11

STATUTES

ERS' Enabling Act, 3 L.P.R.A. §§ 761–68 ............................................... *passim*

UCC § 8-202 ..........................................................................................2, 7, 9

OTHER AUTHORITIES

FED. R. BANKR. P. 7026 .........................................................................................8

FED. R. CIV. P. 26 .................................................................................................8

FED. R. CIV. P. 30.................................................................................................6

To the Chambers of the Honorable Judith G. Dein:

The Bondholders[4] respectfully submit this Opposition to the Urgent Motion of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico ("Retiree Committee") for a Protective Order Quashing the subpoena *ad testificandum* served upon Hector Mayol Kauffmann ("Motion to Quash"). Case No. 17-03566-LTS, ECF No. 766

## INTRODUCTION

1.      The Retiree Committee's motion skates over two pivotal issues.  First, the matters upon which the Bondholders seek to depose Mr. Mayol happened years before he became the Retiree Committee's counsel in June 2017.  Second, at no relevant time was Mr. Mayol acting as a lawyer.  Instead, he was first an investment banker helping to underwrite ERS' bonds (2008) and then Administrator of ERS (2009-2013).  Thus, the issue presented by the Retiree Committee motion is whether a person who was not acting as a lawyer at the time becomes an immunized witness if, as here, he becomes counsel of record years later.

---

[4] The Bondholders are: Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., and SV Credit, L.P.

Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., and Oaktree Opportunities Fund IX (Parallel 2), L.P. hold through Opps Culebra Holdings, L.P. Oaktree Huntington Investment Fund II, L.P. holds through Oaktree Opportunities Fund X Holdings (Delaware), L.P. Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., and Oaktree Opportunities Fund X (Parallel 2), L.P. hold through Oaktree Opps X Holdco Ltd.

2.      Mr. Mayol is a unique witness, with a set of experiences that make him particularly well-positioned to know whether the Employee Retirement System ("ERS") Bonds are valid.  He clearly thinks that they are.  As an investment banker, he was personally involved in the original issuance of the ERS Bonds in 2008, to the point of signing some of the transaction documents. The next year, he became the Administrator of ERS, a position he held until 2013, during which time ERS serviced the interest on the ERS Bonds without complaint or interruption.  In 2012, Mr. Mayol publicly urged Puerto Rico residents to buy ERS Bonds, assuring them that the bonds were "a great investment" and representing that he personally owned $50,000 of them.

3.      At some point after leaving ERS, Mr. Mayol went into the private practice of law, and his law firm first filed its appearance as co-counsel for the Retiree Committee on June 22, 2017. Case No. 17-03566-LTS, ECF No. 108.

4.      Mr. Mayol's personal knowledge and public views on the validity of the ERS Bonds are relevant for at least two reasons:  *First*, the Retiree Committee maintains that the ERS Bonds were issued *ultra vires* because the language of the ERS Enabling Act supposedly did not allow ERS to sell bonds through an underwriting syndicate.  To the extent that the language of the Enabling Act was ambiguous, ERS' contemporaneous understanding of its meaning is relevant as a matter of law.  Mr. Mayol, as the ERS Administrator in the years following the bonds' public sale, presumably has knowledge of that contemporaneous understanding.  *Second*, even if the bonds had been issued *ultra vires*, they would still be enforceable in the hands of third parties who purchased them for value and "without notice of the particular defect."  UCC § 8-202(b).  As an underwriter of the bonds and ERS Administrator, Mr. Mayol surely was in a position to know whether there was a "particular defect" in the issuance of the bonds and whether any steps were

taken by ERS to give notice of that defect.  The fact that Mr. Mayol was himself an investor in the bonds only underscores this point.

5.      It is a red herring that Mr. Mayol now is one of several co-counsel for the Retiree Committee.  The matters in question preceded by years Mr. Mayol's involvement in this Title III proceeding.  The Bondholders do not intend to ask Mr. Mayol about anything he has done since he was retained as co-counsel for the Retiree Committee, and we consent in advance to an order so confining his examination.[5]

## **BACKGROUND**

6.      This discovery motion arises in connection with a series of objections and challenges made by the Oversight Board, the Retiree Committee, and others seeking disallowance of the claims filed by holders of ERS Bonds (collectively, the "Committees & Government Parties").  On October 24, 2019, the Court modified its stay of proceedings to allow for adjudication of certain of these matters on a schedule the parties had proposed.  *See* Case No. 17--03566-LTS, ECF No. 687.  As relevant here, the issues to be decided include the argument that the ERS Bonds are unenforceable, null and void because they were issued *ultra vires*.  The schedule entered by the Court anticipates that this issue, among others, will be resolved by cross-motions for summary judgment later this year.  *Id*. ¶ 3.

### *Ultra Vires*

7.      The Retiree Committee and other objectors propound various reasons why they maintain the ERS Bonds were issued *ultra vires*.  The principal ground, though, is that the bonds were *ultra vires* because ERS' Enabling Act, 3 L.P.R.A. §§ 761–68, supposedly permitted ERS to incur debt in only four ways, and the issuance of bonds was not one of them.  *See, e.g.*, Retiree

---

[5] See the accompanying Declaration of Geoffrey S. Stewart, ¶ 12 ("Stewart Decl.").

Committee Objection, Case No. 17-03566-LTS, ECF No. 469 ¶¶ 65 *et seq.*  In particular, the Retiree Committee and other objectors argue that ERS could have borrowed money only by seeking a loan or through the "direct placement" of its debt, and that the Act specifically "exclude[d] bond offerings issued through an underwriter to the general public."  *Id.* ¶ 70.  In further support of their position, the objectors point out that in July 2011, three years after ERS issued its bonds, the Puerto Rico Legislative Assembly passed a law, Act No. 116-2011, that amended the ERS Enabling Act to prohibit ERS from issuing bonds in the future, and that contained a preamble describing the 2008 issuance of the ERS Bonds as "illegally made," evidently because it allegedly had injured, rather than helped, ERS.  *Id.* ¶¶ 26–27.

8.      There are many reasons why these arguments are baseless, including that they are based on a clear mistranslation of the ERS Enabling Act's controlling Spanish text and are contrary to contemporaneous legal opinions delivered by bond counsel and ERS's general counsel affirming the legality and enforceability of the bonds under the Enabling Act.  However, to the extent that the Committees & Government Parties press these claims, the Bondholders are entitled to resist them.

**Mr. Mayol's Personal Knowledge**

9.      Given the Retiree Committee's insistence that the Enabling Act explicitly enjoined the sale of bonds "through an underwriter to the general public," *id.* ¶ 70, Mr. Mayol's service as a Managing Director of one such underwriter, Samuel A. Ramirez & Co., Inc., gives him direct personal knowledge of the use of underwriters to issue the ERS Bonds.  Mr. Mayol was twice personally involved in the ERS Bond issuance.  On January 24, 2008, he executed an Acceptance of Agreement Among Underwriters on behalf of Samuel A. Ramirez & Co. in connection with ERS's sale of $700 million of bonds to its underwriting syndicate.  *See* Stewart Decl. Ex. A.  Again

on June 25, 2008, Mr. Mayol executed a second such Acceptance on behalf of the Samuel A.

Ramirez & Co., Inc. in connection with ERS' sale of another $300 million of bonds to the

underwriting syndicate.  *Id*. Ex. B.

10.     About one year later, Mr. Mayol became the Administrator of ERS.  Stewart Decl.

Ex. C.  During his tenure as Administrator, Mr. Mayol did nothing to indicate that ERS bonds were

anything other than perfectly legal and valid.  Indeed, during this entire period ERS serviced the

interest on its bonds without delay, protest or objection, both before and after Puerto Rico's

Legislative Assembly promulgated Act No. 116-2011.  We presume Mr. Mayol was involved in

that Act's consideration or drafting; regardless, although the Act purported to say that the issuance

of ERS bonds had been "illegally made," there is no evidence Mr. Mayol believed they had been

issued *ultra vires*.  He did not, for example, take steps to have them nullified or otherwise interfere

with the payment of interest on the bonds.

11.     To the contrary, in an interview Mr. Mayol gave to the press in October 2012, while

he was Administrator of the ERS, Mr. Mayol strongly supported the validity of the ERS Bonds

and the wisdom of the decision to issue them.  Acknowledging his work as an underwriter for the

ERS bonds at Samuel A. Ramirez & Co, he stated:

> The firm was one of the 10 or 12 underwriters that participated in this issuance ….my
> work also included personally buying around 50 thousand of those bonds, which I still
> have in my portfolio and I urge everyone who wants to buy them to do so because it is a
> great investment.

Stewart Decl. Ex. D, at 2.  Mr. Mayol also made the point that the issuance of the bonds had

been for a proper, if not essential, government purpose:

> And he seemed to change his mind regarding the adverse effect that the three bond
> issuances have had for the Retirement system by not having the expected yield.  In
> relation to that, he said that if they had not been done, the [ERS] would not have had
> sufficient funds to pay for pensions during the last three years.

*Id*.

12.     Mr. Mayol thus was a proponent at every turn of the legality and enforceability of the ERS Bonds.  He was Managing Director of one of the underwriters in two of the three bond issuances; he was the head of ERS at the time when the law was changed to prevent ERS from issuing bonds again; he refrained from taking any action to deny the enforceability of the bonds; he owned a substantial volume of bonds personally; and he encouraged others to buy them as well. Although the Retiree Committee complains that Mr. Mayol alone has been noticed to give an individual deposition, that is because it would be difficult to find anyone else with more direct and personal knowledge of the facts relevant to this proceeding.[6]

**Mr. Mayol's Service as Co-Counsel for the Retiree Committee**

13.     At some point after leaving his position at ERS, Mr. Mayol entered private law practice with the firm of Bennazar, García & Milián, C.S.P.  On June 22, 2017, that firm entered an appearance as counsel for the Retiree Committee.  Case No. 17-03566-LTS, ECF No. 108.

**Deposition of Mr. Mayol**

14.     The Court's October 24, 2019 order expressly provided for discovery, Case No. 17-03566-LTS, ECF No. 687, and the parties—including the Retiree Committee—served document requests, interrogatories and requests for admission, Stewart Decl. ¶ 6.  In addition, the Bondholders served notices pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure for depositions of ERS, the Puerto Rico Fiscal Agency & Financial Advisory Authority, and the Government of the Commonwealth of Puerto Rico specifically directed to the question whether the ERS bonds were issued *ultra vires*.  Stewart Decl. ¶ 7.  On December 18, 2019, the

---

[6] The Retiree Committee's point also is incorrect.  The Bondholders are in the process of noticing depositions of other Administrators of ERS besides Mr. Mayol.  Stewart Decl. ¶ 8.

Bondholders served a notice of subpoena *ad testificandum* for the deposition of Mr. Mayol, bearing a return date of January 17, 2020.  *Id.*

15.     This need for discovery is not surprising, since development of a factual record may be useful to address any ambiguities in the language of the ERS Enabling Act and unquestionably is required to determine the applicability of the safe harbor of UCC § 8-202(b).   *See infra* pp. 7-10.   This is acknowledged by the Retiree Committee itself.   In addition to serving written discovery, they (with the Committees & Government Parties) have served 22 deposition notices on the Bondholders.  Stewart Decl. ¶¶ 6, 10.

## ARGUMENT

16.     The Retiree Committee offers four arguments: (a) Mr. Mayol's testimony cannot possibly be relevant because there is no need for discovery in the first place, (b) the Bondholders have failed to explain why they need to take Mr. Mayol's deposition, (c) Mr. Mayol should not be required to testify because he is counsel for the Retiree Committee, and (d) it is likely that any knowledge Mr. Mayol has would be subject to claims of privilege.  None of these arguments is valid.

## I.   DISCOVERY IS APPROPRIATE AND NECESSARY

17.     At the outset, it is clear that there is a need for discovery.  Although the Retiree Committee now argues that the issues involved in its *ultra vires* argument are purely issues of law, Motion to Quash at 3, 9, this is hard to believe.  The stipulated scheduling order provided for discovery, and the Committees & Government Parties served extensive document requests, requests for admissions and interrogatories a few weeks ago.  On January 8, those parties—joined by the Retiree Committee itself—served notices to take 22 depositions of the Bondholders in the coming weeks.  Stewart Decl. ¶ 10.  Obviously, the Retiree Committee cannot have it both ways.

18.     Nor can there be a serious question whether Mr. Mayol has personal knowledge of matters that are "relevant to any party's claim or defense."  FED. R. CIV. P. 26(b)(1) (made applicable by FED. R. BANKR. P. 7026(b)(1)).  Indeed, he has had a Zelig-like presence throughout the case.

19.     ***Contemporaneous Understanding of ERS Enabling Act.***  Mr. Mayol's well-documented course of conduct shows unmistakably that he consistently believed ERS had the authority to issue the ERS Bonds.  Otherwise, of course, he and the other underwriters would have faced liability for securities fraud in 2008, and ERS would have violated its continuing disclosure obligations to the Fiscal Agent under the transaction documents while Mr. Mayol was ERS Administrator.  Stewart Decl. Ex. G.  During the years Mr. Mayol was ERS's Administrator, he did nothing to suggest that the ERS Bonds were invalid.  To the contrary, in October 2012, he not only stated publicly that he personally owned $50,000 of the ERS Bonds, but also encouraged others to invest in them.  *Id.* Ex. D, at 2.

20.     Mr. Mayol's understanding of the operation of the ERS Enabling Act is relevant. "[U]nder Puerto Rico law, great deference is due to an agency's construction of its powers pursuant to its organic act." *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 860 F.2d 1, 8 (1st Cir. 1988). "[I]f the agency's interpretation of the statute is reasonable, even if it is not the only reasonable one, the courts must defer to it." *González Segarra v. CFSE*, 188 D.P.R. 252 (2013) (quoting *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 D.P.R. 425, 436 (1997)). In *U.S.I. Properties*, the First Circuit sustained a Puerto Rico instrumentality's statutory authority, stressing that the instrumentality "had approval from its own counsel and from its finance committee" to take the challenged actions, and that the "Government Development Bank . . . approved [the instrumentality's] role. . . ." 860 F.2d at 8. Given those contemporaneous approvals, the First

Circuit remarked that "it may seem amazing that an ultra vires argument should arise at all," and upheld the instrumentality's authority "based on the statutory language and on the . . . agencies' reading of the statute."  *Id.*

21.     ***UCC § 8-202(b).***  As the Bondholders have pointed out before, the question whether the bonds were issued *ultra vires* is not the end of the matter.  UCC § 8-202(b), 19 L.P.R.A. § 1752(b), makes government securities enforceable even if they were invalidly issued.   The section provides that, where an investor purchases the security for value and without notice of the particular defect, the security remains enforceable—even if *ultra vires*—where "the issuer has received a substantial consideration for the issue as a whole or for that particular security and a stated purpose of the issue is one for which the issuer has power to borrow money or issue the security."  *Id.*  Mr. Mayol is an appropriate witness on these points.  First, he can testify whether he (or anyone else at ERS while he was there) provided notice to anyone of any "particular defect" in the ERS bonds.  Second, Mr. Mayol knows whether ERS received "substantial consideration" for selling the bonds, since he worked for one of the underwriters that bought the bonds from ERS. Third, Mr. Mayol can testify that the "stated purpose of the issue is one for which the issuer has power to borrow money" since, as the Administrator of ERS in the period immediately following the offering he knows why the money was borrowed and what it was used for.  Indeed, in his remarks to the press in October 2012, Mr. Mayol conceded this point: if ERS had not issued the bonds, he said, "the [ERS] would not have had sufficient funds to pay for pensions during the last three years."  Stewart Decl. Ex. D, at 2.

## II.  MR. MAYOL DID NOT BECOME THE RETIREE COMMITTEE'S COUNSEL UNTIL YEARS AFTER THE EVENTS IN QUESTION

22.     The Retiree Committee objects that Mr. Mayol should not be deposed because he is, today, one of its counsel.  Motion to Quash at 5–10.  But this is a red herring.  Mr. Mayol's

9

involvement with ERS happened years before he became the Committee's counsel and, in fact, during periods of time when Mr. Mayol was not practicing law at all. The Retiree Committee cannot prevent the Bondholders from deposing a key fact witness just because they have retained him as counsel.

### A. The *Bogosian*/*Shelton* Factors Do Not Apply

23. Mr. Mayol is "not exempt from being a source for discovery by virtue of [his] license to practice law or [his] employment by a party to represent them in litigation." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 248 (D. Kan. 1995). The Retiree Committee suggests that *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55 (1st Cir. 2003), holds otherwise, Motion to Quash at 5, but *Bogosian* is inapposite to the facts of this case.

24. Before reaching the *Bogosian* factors, a party moving to quash a deposition subpoena on an attorney must at least establish that the deponent was "acting in the capacity of a legal advisor with regard to all the matters at issue in [the] litigation" and that the subpoena seeks privileged information. *See Confederate Motors, Inc. v. Terny*, No. 11-10213-JGD, 2012 WL 612506 at *2 (D. Mass. Feb. 24, 2012) (denying motion to quash deposition subpoena on former counsel); *see also Pamida, Inc. v. E.S. Originals*, 281 F.3d 726, 730 (8th Cir. 2002) ("[T]he *Shelton* test [the Eighth Circuit's version of *Bogosian*] was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy."); *Bogan v. Nw. Mut. Life Ins. Co.*, 152 F.R.D. 9, 14 (S.D.N.Y. 1993) (*Shelton* "does not bar . . . depositions where attorneys take part in significant relevant pre-[litigation]events and the attorney-client privilege does not apply to the testimony sought"); *U.S. v. Philip Morris Inc.*, 209 F.R.D. 13, 16–18 (D.D.C. 2002) (*Shelton* factors did not apply when the party seeking to depose counsel was "only seeking testimony about non-privileged, pre-litigation factual matters separate and apart from [Defendants'] litigation strategy in this case"; "a careful review of [cases

10

considering depositions of counsel] reveals that the three criteria only apply to depositions of trial counsel—or counsel directly representing the party in the pending litigation—and then *only* if the deposition would reveal litigation strategy in the pending case"); *Alomari v. Ohio Dep't of Pub. Safety*, Civ. No. 11-613, 2013 WL 5180811, at *4 (S.D. Ohio Sept. 13, 2013) ("*Shelton* applies when: (1) the depo[nant] is either trial[ or ]litigation counsel in the instant case; and (2) the information sought would expose litigation strategy in the pending case.").

25. This limitation on the applicability of *Shelton* (and by extension *Bogosian*) makes sense, because "[w]hen a party employs counsel to represent it in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested." *United Phosphorus, Ltd.*, 164 F.R.D. at 249. That, of course, is what happened here. In such situations, "[t]he rationale for the heightened standard [for deposing counsel of record] simply does not apply to deposition topics regarding the attorney's role as a fact witness, rather than the attorney's role in representing the client." *Fish v. Kobach*, 320 F.R.D. 566, 578 (D. Kan. 2017).

26. That is precisely the circumstance here. The Bondholders seek to depose Mr. Mayol concerning actions that long predated Mr. Mayol's role as counsel for the Retiree Committee. *See supra* pp. 7-10. Mr. Mayol is uniquely in possession of facts that are relevant and non-privileged. The concerns underlying *Bogosian* are not present here, and there is no reason to deny the Bondholders discovery of Mr. Mayol.

**B.   The Bondholders' Subpoena Satisfies the *Bogosian* Factors**

27. Even if the *Bogosian* factors applied, they would not be an absolute bar. *See, e.g.*, *Confederate Motors, Inc.*, 2012 WL 612506 at *2. Counsel may be deposed if: (i) harassment was not the primary purpose of the subpoena, (ii) there are no other viable means of obtaining the evidence sought, and (iii) the information is sufficiently relevant, nonprivileged, and crucial to the

party that served the subpoena. *Bogosian*, 323 F.3d at 66. The Bondholders' subpoena on Mr. Mayol satisfies all three factors.

### 1.  The Bondholders Have a Demonstrable Need for Mr. Mayol's Testimony

28.     The Retiree Committee accuses the Bondholders of engaging in harassment, but that is obviously untrue. Mr. Mayol is a witness with unique knowledge of matters at issue here. In a case where the Committees & Government Parties' central contention is that ERS could not sell bonds to the public through an underwriter, it happens that Mr. Mayol was one of the underwriters. And where the Committees & Government Parties argue that Act 116, passed in July 2011, stated that the bonds had been unlawfully issued, Mr. Mayol was ERS Administrator at the time, and did nothing to suggest that he saw illegality. Moreover, the circumstances of the Bondholders' noticing of Mr. Mayol's deposition bear no resemblance to those in *Bogosian*. There, the plaintiff served her subpoena the day before trial, also served broad document requests, and made no effort to meet the other requirements for obtaining counsel's testimony, such as demonstrating that the evidence was crucial and unavailable from other sources. 323 F.3d at 67.

### 2.  There Is No Viable Alternative Source of this Evidence.

29.     The Committee suggests that there are other witnesses the Bondholders should depose instead of Mr. Mayol. Motion to Quash at 8–9. However, there is no one else with the breadth of involvement that Mr. Mayol had, nor the outspoken advocacy for the wisdom and validity of the ERS Bonds. Although it is true that there were other bankers besides Mr. Mayol who participated in the original underwriting of the bonds in 2008, Mr. Mayol and Mr. Mayol alone was ERS Administrator in the following four years. And it was Mr. Mayol, and not somebody else, who—after the Puerto Rico Legislative Assembly passed Act 116 in July 2011—recommended ERS Bonds as a "great investment." Confirming Mr. Mayol's central role, in recent negotiations with ERS concerning the Bondholders' document requests, ERS's lawyers have

determined that there are thousands of potentially responsive documents in the files Mr. Mayol

left behind at ERS.  *See* Stewart Decl. Ex. F.

30.     The evidence surrounding Mr. Mayol's activities can only be effectively explored

through a deposition.  This is not, in other words, a case where document discovery could supplant

deposition testimony.  Compare *Emhart Indus. Inc. v. New England Container Co., Inc.*, No. 06-

218 S, 2013 WL 6001076 (D.R.I. Nov. 12, 2013) (evidence more readily available through

document discovery and from other witnesses); *Ira Green, Inc. v. Military Sales & Serv. Co.*, No.

10-207-M, 2013 WL 12316017 (D.R.I. Sep. 4, 2013) (evidence repetitive of documentary

evidence) *with Nisus Corp. v. Perma-Chink Sys., Inc.*, No. 3:03-CV-120, 2004 U.S. Dist. LEXIS

29387 at *9 (E.D. Tenn. Sep. 17, 2004) (counsel of record could be deposed concerning their

"unique knowledge of the facts related to the allegations of fraud and inequitable conduct" in case

because of their pre-litigation role in prosecuting patent at issue).  And even if documents did tell

much of Mr. Mayol's story, the Bondholders would still need his deposition to explain the context

of the documents and their implications.[7]

### 3.     Examination of Mr. Mayol Would Not Intrude Upon Privileged Matters

31.     The Committee finally argues that a deposition would be futile because it would

intrude upon matters that are privileged.  But this is a make-weight.  As noted before, neither Mr.

Mayol's work as an investment banker nor his service as ERS' Administrator was a legal job at

all.  There would be no ethical basis to object to his fact-based testimony about his work in those

---

[7] The Retiree Committee offers the strained argument that the Bondholders are guilty of a
double standard because they opposed the deposition of their counsel—Bruce Bennett—in 2019
when the Oversight Board served a subpoena *ad testificandum* on him.  Motion to Quash at 8.  In
response, the Bondholders moved to quash *or modify* the subpoena of Mr. Bennett, and asked for
limitations upon the scope of the deposition to exclude inquiry into privileged matters.  Case No.
17-03566-LTS, ECF No. 489.  That, of course, is the same limitation the Bondholders have
offered here.  Stewart Decl. ¶ 12.

positions.  And the Bondholders do not seek to depose Mr. Mayol about his work as a lawyer to the Retiree Committee.  As mentioned, the Bondholders are willing to confine their questioning of Mr. Mayol to periods of time prior to June 22, 2017, when his firm entered its appearance as co-counsel for the Retiree Committee.  Case No. 17-03566-LTS, ECF No. 108.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Motion to Quash.

In San Juan, Puerto Rico, January 10, 2020.

*/s/ Alfredo Fernández-Martínez*
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*/s/ Geoffrey S. Stewart*
Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3435
Fax: (202) 626-1700
gstewart@jonesday.com
mpapez@jonesday.com

Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Sarah Podmaniczky McGonigle (application
for *pro hac vice* pending)
David Fox (*pro hac vice*)
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
Tel. (617) 449-6943
Fax: (617) 449-6999
smcgonigle@jonesday.com
drfox@jonesday.com

*Counsel for ERS Bondholders Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B),*

*Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., and SV Credit, L.P.*