# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-03566 (LTS) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, | Adv. Proc. No. 19-00356 (LTS) |

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK- 4780) (Last Four Digits of Federal Tax ID: 3747).

| | |
|---|---|
| and | ) |
| | ) |
| | ) |
| THE OFFICIAL COMMITTEE OF UNSECURED | ) |
| CREDITORS OF ALL TITLE III DEBTORS | ) |
| (OTHER THAN COFINA), | ) |
| | ) |
| as co-trustees of | ) |
| | ) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) |
| GOVERNMENT OF PUERTO RICO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEFENDANT 1M, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

_____

| | | |
|---|---|---|
| THE SPECIAL CLAIMS COMMITTEE OF THE | ) | Adv. Proc. No. 19-00357 (LTS) |
| FINANCIAL OVERSIGHT AND MANAGEMENT | ) | |
| BOARD FOR PUERTO RICO, ACTING BY AND | ) | |
| THROUGH ITS MEMBERS, | ) | |
| | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS OF ALL TITLE III DEBTORS | ) | |
| (OTHER THAN COFINA), | ) | |
| | ) | |
| as co-trustees of | ) | |
| | ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF PUERTO RICO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STOEVER GLASS & CO., *et al.*, | ) | |
| | ) | |

2

Defendant.                                                )
                                                          )
                                                          )
_____                   )
                                                          )
THE SPECIAL CLAIMS COMMITTEE OF THE                       )
FINANCIAL OVERSIGHT AND MANAGEMENT                        )
BOARD FOR PUERTO RICO, ACTING BY AND                      )    Adv. Proc. No. 19-00359 (LTS)
THROUGH ITS MEMBERS,                                      )
                                                          )
      and                                                 )
                                                          )
THE OFFICIAL COMMITTEE OF UNSECURED                       )
CREDITORS OF ALL TITLE III DEBTORS                        )
(OTHER THAN COFINA),                                      )
                                                          )
      as co-trustees of                                   )
                                                          )
THE EMPLOYEES RETIREMENT SYSTEM OF THE                    )
GOVERNMENT OF PUERTO RICO,                                )
                                                          )
      Plaintiff,                                          )
                                                          )
v.                                                        )
                                                          )
DEFENDANT 1H-78H,                                         )
                                                          )
      Defendants.                                         )
                                                          )
                                                          )
_____                   )
                                                          )
THE SPECIAL CLAIMS COMMITTEE OF THE                       )
FINANCIAL OVERSIGHT AND MANAGEMENT                        )
BOARD FOR PUERTO RICO, ACTING BY AND                      )    Adv. Proc. No. 19-00361 (LTS)
THROUGH ITS MEMBERS,                                      )
                                                          )
      and                                                 )
                                                          )
THE OFFICIAL COMMITTEE OF UNSECURED                       )
CREDITORS OF ALL TITLE III DEBTORS                        )
(OTHER THAN COFINA),                                      )
                                                          )
      as co-trustees of                                   )
                                                          )
                                                          )

3

THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO, )
)
    Plaintiff, )
)
v. )
)
DEFENDANT 1G-50G, *et al.*, )
)
    Defendants. )
)
_____ )
)
THE FINANCIAL OVERSIGHT AND )
MANAGEMENT BOARD FOR PUERTO RICO, )   Adv. Proc. No. 19-00366 (LTS)
)
    as representative of )
)
EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF THE COMMONWEALTH OF )
PUERTO RICO, )
)
    and )
)
THE OFFICIAL COMMITTEE OF UNSECURED )
CREDITORS OF ALL TITLE III DEBTORS (OTHER )
THAN COFINA), )
)
    as section 926 trustee of )
)
THE COMMONWEALTH OF PUERTO RICO )
)
    Plaintiffs,[2] )
)
       against )
)
ANDALUSIAN GLOBAL DESIGNATED ACTIVITY )
COMPANY; THE BANK OF NEW YORK MELLON; )
MASON CAPITAL MASTER FUND LP; OCHER )
ROSE, L.L.C.; SV CREDIT, L.P.; CROWN MANAGED )
ACCOUNTS FOR AND ON BEHALF OF CROWN/PW )
SP; LMA SPC FOR AND ON BEHALF OF MAP 98 )
SEGREGATED PORTFOLIO; OCEANA MASTER )

---

[2] The Official Committee of Unsecured Creditors serves as section 926 trustee and co-plaintiff in the prosecution of this adversary proceeding pursuant to Docket No. 6990, which is incorporated herein by reference.

FUND LTD.; PENTWATER MERGER ARBITRAGE )
MASTER FUND LTD.; AND PWCM MASTER FUND )
LTD, )
                                 )
        Defendants. )
_____ )
                                 )
THE FINANCIAL OVERSIGHT AND )
MANAGEMENT BOARD FOR PUERTO RICO, )
                                 )  Adv. Proc. No. 19-00367 (LTS)
      as representative of )
EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF THE COMMONWEALTH OF )
PUERTO RICO, )
                                 )
      and )
                                 )
THE OFFICIAL COMMITTEE OF UNSECURED )
CREDITORS OF ALL TITLE III DEBTORS (OTHER )
THAN COFINA), )
                                 )
      as section 926 trustee of )
THE COMMONWEALTH OF PUERTO RICO )
                                 )
      Plaintiffs,[3] )
                                 )
      against )
GLENDON OPPORTUNITIES FUND, L.P.; )
OAKTREE-FORREST MULTI-STRATEGY, LLC )
(SERIES B); OAKTREE OPPORTUNITIES FUND IX, )
L.P.; OAKTREE OPPORTUNITIES FUND IX )
(PARALLEL 2), L.P.; OAKTREE VALUE )
OPPORTUNITIES FUND, L.P.; PUERTO RICO AAA )
PORTFOLIO BOND FUND, INC.; PUERTO RICO )
AAA PORTFOLIO BOND FUND II, INC.; PUERTO )
RICO AAA PORTFOLIO TARGET MATURITY )
FUND, INC.; PUERTO RICO FIXED INCOME FUND, )
INC.; PUERTO RICO FIXED INCOME FUND II, INC.; )
PUERTO RICO FIXED INCOME FUND III, INC.; )
PUERTO RICO FIXED INCOME FUND IV, INC.; )

---

[3] The Official Committee of Unsecured Creditors serves as section 926 trustee and co-plaintiff in the prosecution of this adversary proceeding pursuant to Docket No. 6990, which is incorporated herein by reference.

PUERTO RICO FIXED INCOME FUND V, INC.;                  )
PUERTO RICO GNMA & U.S. GOVERNMENT                      )
TARGET MATURITY FUND, INC.; PUERTO RICO                 )
INVESTORS BOND FUND I; PUERTO RICO                      )
INVESTORS TAX-FREE FUND, INC.; PUERTO RICO )
INVESTORS TAX-FREE FUND II, INC.; PUERTO                )
RICO INVESTORS TAX-FREE FUND III, INC.;                 )
PUERTO RICO INVESTORS TAX-FREE FUND IV,                 )
INC.; PUERTO RICO INVESTORS TAX-FREE FUND )
V, INC.; PUERTO RICO INVESTORS TAX-FREE                 )
FUND VI, INC.; PUERTO RICO MORTGAGE-                    )
BACKED & U.S. GOVERNMENT SECURITIES                     )
FUND, INC.; TAX-FREE PUERTO RICO FUND, INC.; )
TAX-FREE PUERTO RICO FUND II, INC.; TAX-                )
FREE PUERTO RICO TARGET MATURITY FUND,                  )
INC.; UBS IRA SELECT GROWTH & INCOME                    )
PUERTO RICO FUND,                                       )
                                                        )
                    Defendants.

------------------------------------------------------------------------- X


**DECLARATION OF GEOFFREY S. STEWART
IN SUPPORT OF BONDHOLDERS' OPPOSITION TO THE OFFICIAL COMMITTEE
OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO'S
URGENT MOTION FOR A PROTECTIVE ORDER QUASHING THE DEPOSITION
<u>SUBPOENA SERVED ON RETIREE COMMITTEE'S COUNSEL</u>**

I, Geoffrey S. Stewart, hereby declare under penalty of perjury:

1.      I am of counsel to the law firm of Jones Day, located at 51 Louisiana Ave., N.W., Washington, D.C. 20001.[4] I am a member in good standing of the Bars of the State of New York and the District of Columbia. There are no disciplinary proceedings pending against me. I submit this declaration in support of the *Bondholders' Opposition To The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico's Urgent Motion For A Protective Order Quashing The Deposition Subpoena Served On Retiree Committee's Counsel* (the "Opposition"). I have personal knowledge of the matters stated herein.

2.      Attached hereto as Exhibit A is a true and correct copy of an Acceptance of Agreement Among Underwriters on behalf of Samuel A. Ramirez & Co., Inc. in connection with ERS's sale of $700 million of bonds to its underwriting syndicate, executed on January 24, 2008 by Hector Mayol Kauffmann.

3.      Attached hereto as Exhibit B is a true and correct copy of an Acceptance on behalf of the Samuel A. Ramirez & Co., Inc. in connection with ERS's sale of another $300 million of its bonds, executed on June 25, 2008 by Mr. Mayol.

4.      Attached hereto as Exhibit C is a true and correct copy of an excerpt of ERS's Annual Financial Information for Fiscal Year 2009, showing Mr. Mayol as Administrator of ERS.

5.      Attached hereto as Exhibit D is a true and correct copy and a certified translation of an October 7, 2012 article published on the website "Noticel," accessed on January 10, 2020 at https://www.noticel.com/ahora/mayol-invita-a-invertir-en-el-prcticamente-quebrado-sistema-de-retiro/608020244.

---

[4] Capitalized terms used but not otherwise defined herein will have the meaning as set forth in the Opposition.

6.     Since the Court modified its stay of proceedings on October 24, 2019, the Bondholders and the Committees and Government Parties (as defined below), including the Retiree Committee, have served document requests, interrogatories, and requests for admission.

7.     On December 18, 2019, in addition to serving notices for depositions on ERS, the Commonwealth, and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the Bondholders served a notice of subpoena *ad testificandum* for the deposition of Mr. Mayol, bearing a return date of January 17, 2020.  A true and correct copy of the subpoena is attached as Exhibit E hereto.

8.     The Bondholders have provided notice to the Oversight Board, the Official Committee of Unsecured Creditors, the Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico, AAFAF and the Retiree Committee (the "Committees and Government Parties") that they will be serving subpoenas *ad testificandum* on four other Administrators of ERS besides Mr. Mayol.

9.     On January 8, 2020, counsel for the Bondholders received a letter from counsel for ERS regarding ongoing discovery negotiations. In that letter, counsel for ERS stated that there are at least 2,608 potentially responsive documents in Mr. Mayol's files.  A true and correct copy of the letter is attached as Exhibit F hereto.

10.    Also on January 8, 2020, the Committees and Government Parties noticed 22 depositions of the Bondholders or individuals employed by the Bondholders.  The Committees and Government Parties amended certain of these deposition notices on January 9, 2020.

11.    Attached hereto as Exhibit G is a true and correct copy of the Master Continuing Disclosure Agreement, executed and delivered by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico and the Commonwealth of Puerto Rico in

connection with the issuance of the System's Senior Pension Funding Bonds, Series A, dated January 31, 2008.

12.     The Bondholders are willing to confine their questioning of Mr. Mayol to periods of time prior to June 22, 2017, which is the date when he entered his appearance as counsel of record to the Retiree Committee.


Dated:  January 10, 2020                           */s/ Geoffrey S. Stewart*
            Washington, D.C.                           Geoffrey S. Stewart

# EXHIBIT A

# EXHIBIT C
## TO AGREEMENT AMONG UNDERWRITERS
## (INSTRUCTIONS, TERMS AND ACCEPTANCE)

**$700,000,000**[*]
**Employees Retirement System of the Government of the**
**Commonwealth of Puerto Rico**
**Senior Pension Funding Bonds, Series A**

### ACCEPTANCE OF AGREEMENT AMONG UNDERWRITERS

UBS Financial Services Incorporated of Puerto Rico
250 Muñoz Rivera Avenue, 10th Floor
San Juan, Puerto Rico 00918
Attention: Rafael Pagán

Ladies and Gentlemen:

Reference is made to the Agreement Among Underwriters (Instructions, Terms and Acceptance), dated January 14, 2008 inviting us to participate as an Underwriter in the purchase and offering of the above-referenced Securities.

We agree to participate as an Underwriter with the original participation identified in the Agreement Among Underwriters and accept the provisions of the Agreement Among Underwriters. Upon the acceptance by other Underwriters whose participations, together with ours, comprise not less than 91% of the aggregate principal amount of the Securities, the Agreement Among Underwriters will become effective and constitute a binding agreement in accordance with its terms.

We understand that we are bound to the final terms of the offering unless we withdraw as provided in the Agreement Among Underwriters.

Very truly yours,

Samuel A. Ramirez +Co., Inc.
Underwriter

By:
Name: Hector Mayol
Title: Managing Director
Date: 1/24/2008

# EXHIBIT B

**EXHIBIT C**
**TO AGREEMENT AMONG UNDERWRITERS**
**(INSTRUCTIONS, TERMS AND ACCEPTANCE)**

$300,000,000*
**Employees Retirement System of the Government of the**
**Commonwealth of Puerto Rico**
**Senior Pension Funding Bonds, Series C**

**ACCEPTANCE OF AGREEMENT AMONG UNDERWRITERS**

UBS Financial Services Incorporated of Puerto Rico
250 Muñoz Rivera Avenue, 10th Floor
San Juan, Puerto Rico 00918
Attention: Rafael Pagán

Ladies and Gentlemen:

Reference is made to the Agreement Among Underwriters (Instructions, Terms and Acceptance), dated June 23, 2008 inviting us to participate as an Underwriter in the purchase and offering of the above-referenced Securities.

We agree to participate as an Underwriter with the original participation identified in the Agreement Among Underwriters and accept the provisions of the Agreement Among Underwriters. Upon the acceptance by other Underwriters whose participations, together with ours, comprise not less than 91% of the aggregate principal amount of the Securities, the Agreement Among Underwriters will become effective and constitute a binding agreement in accordance with its terms.

We understand that we are bound to the final terms of the offering unless we withdraw as provided in the Agreement Among Underwriters.

Very truly yours,

Samuel A. Ramirez & Co., Inc.
Underwriter

By: _____
Name: Hector Mayol
Title: Managing Director
Date: 6/25/2008

# EXHIBIT C

# Municipal Secondary Market Disclosure Information Cover Sheet
# Municipal Securities Rulemaking Board's (MSRB)
# Electronic Municipal Market Access (EMMA)

## IF THIS FILING RELATES TO A SINGLE BOND ISSUE:

Provide name of bond issue exactly as it appears on the cover of the Official Statement (please include name of state where issuer is located):

_____

_____

_____

_____

Provide nine-digit CUSIP* numbers if available, to which the information relates:

_____    _____    _____

## IF THIS FILING RELATES TO ALL SECURITIES ISSUED BY THE ISSUER OR ALL SECURITIES OF A SPECIFIC CREDIT OR ISSUED UNDER A SINGLE INDENTURE:

Issuer's Name (please include name of state where Issuer is located): **Employees Retirement System of the Government of the Commonwealth of Puerto Rico**

Other Obligated Person's Name (if any): _____
(Exactly as it appears on the Official Statement Cover)

Provide six-digit CUSIP* number(s), if available, of Issuer:_____ **29216M** _____

## WHAT TYPE OF INFORMATION ARE YOU PROVIDING? (Check all that apply)

A.  ☒ **Annual Financial Information and Operating Data pursuant to Rule 15c2-12**

**Fiscal Period Covered:** _____ **2008-2009** _____

B.  ☒ **Audited Financial Statements or CAFR pursuant to Rule 15c2-12**

**Fiscal Period Covered:** _____ **2008-2009** _____

C.  **Notice of a Material Event pursuant to Rule 15c2-12 (Check as appropriate)**

1. ☐ Principal and interest payment delinquencies

2. ☐ Non-payment related defaults

3. ☐ Unscheduled draws on debt service reserves reflecting financial difficulties

4. ☐ Unscheduled draws on credit enhancements reflecting financial difficulties

5. ☐ Substitution of credit or liquidity providers, or their failure to perform

6. ☐ Adverse tax opinions or events affecting the tax exempt status of the security

7. ☐ Modifications to the rights of security holders

8. ☐ Bond calls

9. ☐ Defeasances

10. ☐ Release, substitution, or sale of property securing repayment of the securities

11. ☐ Rating changes

D.  ☐ **Notice of Failure to Provide Annual Financial Information as Required**

E.  ☐ **Other Secondary Market Information (Specify):**_____



**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

COMMONWEALTH OF PUERTO RICO

PO Box 42001
San Juan, PR 00940-2001
Telephone (787) 722-2525

April 29, 2010

Municipal Securities Rulemaking Board's (MSRB)
Electronic Municipal Market Access (EMMA)

Re:   Employees Retirement System of the Government of the Commonwealth
of Puerto Rico (Base CUSIP No. 29216M)
<u>Audited Financial Statements and Certain Other Information</u>

In connection with the continuing disclosure obligations of the Employees
Retirement System of the Government of the Commonwealth of Puerto Rico
("System") under Rule 15c2-12(b)(5)(i)(A) under the Securities Exchange Act of
1934, as amended, we hereby file with you, on behalf of the System, its audited
financial statements for the fiscal year ended June 30, 2009, along with certain
financial and operating information.

Sincerely,

María de los Ángeles Trigo
Director
Oversight and Compliance Department

EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH
OF PUERTO RICO

ANNUAL FINANCIAL INFORMATION
Fiscal Year 2009

Introduction

In connection with the issuance by the Employees Retirement System of the Government
of the Commonwealth of Puerto Rico (the "System") of its Senior Pension Funding Bonds (Base
CUSIP No. 29216M) and in compliance with Rule 15c2-12, as amended, of the Securities and
Exchange Commission (the "SEC"), the System has covenanted to file within 305 days after the
end of each fiscal year with the Municipal Securities Rulemaking Board ("MSRB") through the
Electronic Municipal Market Access ("EMMA") System:

- Core financial information and operating data for the prior fiscal year, including
  audited financial statements, prepared in accordance with generally accepted
  accounting principles in effect from time to time.

- Material historical quantitative data, including financial information and operating
  data on the System and information as to revenues, expenditures, financial
  operations, and indebtedness generally found in the Official Statements prepared in
  connection with the issuances described above.

Appendix I

Included as Appendix I is the Corporation's Audited Financial Statements for the fiscal
year ended June 30, 2009.

Appendix II

Included in Appendix II is the Corporation's Annual Financial Information and
Operating Data Report containing data for the past five fiscal years ending on June 30, 2009,
consisting of material historical quantitative data, including financial information and operating
data on the Corporation. The financial and operating data in Appendix II sets forth only the
results of actual operations and does not reflect demographic information or forecasts regarding
operations, except when necessary to place operating results and other information in context.

Information herein should be read in conjunction with the Official Statements prepared
in connection with the issuance of said Bonds. The headings in this report are the same as the
headings in the corresponding sections and subsections of the Official Statements. All terms not
otherwise defined herein shall have the respective meanings given to them in said Official
Statements.

<u>APPENDIX II</u>

EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO

ANNUAL FINANCIAL INFORMATION AND OPERATING DATA REPORT

The Board currently consists of the following members:

| Name | Term Expires | Occupation |
|------|--------------|------------|
| Carlos M .Garcia (Chairman) | Ex-officio | President, Government Development Bank for Puerto Rico |
| Omar Negron Judice (Vice Chairman) | Ex-officio | Commissioner of Municipal Affairs of Puerto Rico |
| Juan Carlos Puig | Ex-officio | Acting Secretary of the Treasury of Puerto Rico |
| Samuel G. Dávila Cid | Ex-officio | Director, Office of Human Resources of the Commonwealth of Puerto Rico |
| José L. Carrasquillo | Member | Chairman of the Board, Puerto Rico Retirees Association |
| Emilio Torres | Member | Auxiliary Inspector, Inspector for Cooperatives of Puerto Rico |

## Management

Hector M. Mayol Kauffmann is the Acting Administrator of the System.  Mr. Mayol was appointed by the Board as Acting Administrator on March 2009.  Prior to his appointment, Mr. Mayol was acting as Managing Director of the San Juan office of Ramirez & Co., the nation's premier Hispanic-owned full-service investment banking and broker-dealer firm.

A graduate of Rensselaer Polytechnic Institute with both Bachelor's and Master's degrees, he has held many positions in the financial industry, including in institutional brokerage, banking and asset management.  He is also a recognized authority in regulatory matters, having served as Puerto Rico's Financial Institutions Commissioner, during which tenure the local mutual-fund market came into being.

Other accomplishments and positions include working as managing director of San Juan Capital Partners, a registered investment-advisory firm for institutional clients, of which he was a founding partner.  He also founded for the Santander Group its San Juan registered investment advisory and fund-administration division, which grew to ten mutual funds comprising $2 Billion in client assets under administration.  At Santander, he also worked as president and vice-chairman of Santander Asset Management.

Before joining Santander, he was senior vice president at Eagle Asset Management and Raymond James & Associates Puerto Rico.

Earlier in his career, he was appointed president of Credit Suisse First Boston Puerto Rico.

Mr. Mayol is past president of the Puerto Rico Financial Analysts Association and of the Securities Industries Association of Puerto Rico, which he helped found.  He is also a member of the National Advisory Council of the Small Business Administration.

# EXHIBIT D

CERTIFIED TRANSLATION

# NOTICEL

**Mayol urges people to invest in the practically bankrupt Retirement System**

**By:**

Ely Acevedo Denis
**Published:** Oct 07, 2012 01:30 PM AST
**Updated:** Oct 05, 2012 08:10 PM AST

The administrator of the Government Employees and Judiciary Retirement Systems Administration (ASR, acronym in Spanish), Héctor Mayol Kauffmann, guaranteed that the early retirement windows established by the current administration has helped to solve its deficit. As to other aspects, it admitted buying bonds from the three losing issuances carried out by the ASR in 2008 and refused to answer the representative from the New Progressive Party, Lourdes Ramos, who called him "problematic".

Mayol Kauffmann told NotiCel that this is the fifth opportunity to take advantage of Act 70 during the month of October, during which people can request the benefit through the web portal of the Office of Budget and Management (OGP, for its Spanish acronym). He pointed out that with this last window they expect that in total around 5,000 public employees were benefited.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

When asked how this helps the coffers of the Retirement System, he said that "number one the vast majority of the people who have decided to take advantage of it are people under Act 1, those people are going to receive immediately from now up to 50 percent of their salary, but it is not paid by the Retirement System, it is paid by their employer."

He reiterated that this represents savings in the Retirement System cash flow. However, he did say that only in public corporations will the employer continue to make both the employer contribution and the employee contribution.

He maintained that almost all Government workers can have access to this early retirement, including police officers who do administrative jobs or are under a sick leave.

As to other matters, he was asked whether it was true that he sold Retirement bonds, to which he answered that "that's public knowledge, my entire life people have known that. The firm for which I worked (Samuel A. Ramirez & Co., Inc.), I was the director in charge of that office in Puerto Rico. The firm was one of the 10 or 12 underwriters that participated in this issuance ….my work also included personally buying around 50 thousand of those bonds, which I still have in my portfolio and I urge everyone who wants to buy them to do so because it is a great investment."

And he seemed to change his mind regarding the adverse effect that the three bond issuances have had for the Retirement System by not having the expected yield. In relation to that, he said that if they had not been done, the ASR would not have had sufficient funds to pay for pensions during the last three years.

When asked to state his position regarding the statements made against him by representative Lourdes Ramos, who recently called him "problematic," he did not want to comment on the statements and only said that "well, she has her opinion, we have the freedom to express what we think. I feel that I must focus on doing my job and making sure that pensioners receive their check every two weeks."

The statements were made during the Pensioner Services Fair that was held on Friday at Pabellón de la Paz in Luis Muñoz Rivera Park, including exhibitions and presentations, and which was attended by dozens of pensioners.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

# Mayol invita a invertir en el prácticamente quebrado sistema de Retiro

**Por:**

Ely Acevedo Denis
**Publicado:** Oct 07, 2012 01:30 PM AST
**Actualizado:** Oct 05, 2012 08:10 PM AST

El administrador de la Administración de los Sistemas de Retiro del Gobierno y la Judicatura (ASR), Héctor Mayol Kauffmann, aseguró que las ventanas de retiro temprano que ha establecido la administración en turno ha ayudado a sanear su déficit. En otros aspectos, admitió haber comprado bonos de las tres perdidosas emisiones efectuadas por la ASR en el 2008 y declinó contestarle a la representante penepé, Lourdes Ramos, quien lo clasificó de "problemático".

**Mayol Kauffmann señaló a NotiCel que esta es la** quinta oportunidad para acogerse a la Ley 70 durante el mes de octubre, durante el que las personas pueden solicitar el beneficio a través del portal de la Oficina de Gerencia y Presupuesto (OGP). Apuntó que con esta última ventana esperan que en total se hayan beneficiado alrededor de 5,000 empleados públicos.

Cuando se le cuestionó cómo esto ayuda a las arcas del Sistema de Retiro, dijo que "número uno la inmensa mayoría de las personas que se han acogido son personas de Ley 1, esas personas van a recibir desde ahora inmediatamente hasta el 50 por ciento de su salario, per no lo paga el Sistema de Retiro, lo paga su patrono".

Reiteró que esto representa un ahorro en el flujo de efectivo del Sistema de Retiro. Aunque hizo la salvedad de que únicamente en las corporaciones públicas el patrono seguirá haciendo tanto la aportación patronal como la del empleado.

Sostiene que casi todo los trabajadores del Gobierno pueden acceder a este retiro temprano, incluso los policía que hacen trabajo administrativos o están bajo alguna licencia de enfermedad.

Por otra línea se le preguntó si era cierto que vendió bonos de Retiro, a lo que contestó que "eso es materia pública, eso se ha sabido toda la vida. La firma para la cuál yo trabajé (Samuel A. Ramirez & Co., Inc.), yo era el director a cargo para esa oficina en Puerto Rico. La firma fue uno de los 10 o 12 underwriters que participaron en esta emisión….mi gestión incluyó también comprar personalmente como 50 mil de esos bonos, que los tengo todavía en mi cartera y exhorto a todos lo que lo quieran comprar que los compren porque es una magnifica inversión".

Y pareció echarse para atrás sobre el efecto adverso que han tenido las tres emisiones de bono para Retiro al no tener el rendimiento esperado. En ese sentido, dijo que si no se hubiesen hecho, la ASR no hubiera tenido los fondos suficientes para sufragar las pensiones de los últimos tres años.

Al pedírsele una postura sobre las expresiones que han hecho en su contra la representante Lourdes Ramos, quién recientemente lo catalogó como un "problemático", no quiso entrar a aquilatar las declaraciones y se limitó a decir que "bueno, ella tiene su opinión, tenemos la libertad de expresarnos como entendamos. Yo creo que yo tengo que estar enfocado en hacer mi trabajo y asegurarme que los pensionados cada quincena reciban su cheque".

Las expresiones se dieron durante la Feria de Servicios al Pensionado que se efectuó el viernes en el Pabellón de la Paz del Parque Luis Muñoz Rivera, donde habían exhibiciones y presentaciones, y decenas de jubilados se dieron cita.

---

# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

as representative of

THE EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO,

Debtor.

-----------------------------------------------------------------X

PROMESA
Title III

Case No. 3:17-bk-03566 (LTS)

### <u>NOTICE OF SUBPOENA</u>

PLEASE TAKE NOTICE THAT, pursuant to Rule 45 of the Federal Rules of
Civil Procedure, JONES DAY will cause the enclosed subpoena to be served upon
Hector Mayol Kauffmann in the form appended hereto, for an in-person deposition.
Mr. Kauffmann is instructed to appear at 9:30 AM AST on January 17, 2020, at the
offices of Delgado & Fernandez, LLC Professional Office Park II, 1001 San Roberto Street,
Monacillos Ward, San Juan, 00927, Puerto Rico, or at another mutually agreeable location.

Dated:  Washington, DC
        December 18, 2019

JONES DAY

/s/ *Geoffrey S. Stewart*
Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W. Washington, DC
20001
Tel. (202) 879-3435
Fax: (202) 626-1700
gstewart@jonesday.com
mpapez@jonesday.com
ssooknanan@jonesday.com

*Attorneys for Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., and SV Credit, L.P.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------x
)
In re:                                                            )        PROMESA
                                                                  )        Title III
THE FINANCIAL OVERSIGHT AND                                       )
MANAGEMENT BOARD FOR PUERTO RICO                                  )        Case No. 3:17-bk-03566 (LTS)
                                                                  )
            as representative of                                  )
                                                                  )
THE EMPLOYEES RETIREMENT SYSTEM OF                                )
THE GOVERNMENT OF THE                                             )
COMMONWEALTH OF PUERTO RICO,                                      )
                                                                  )
            Debtor.                                               )
                                                                  )
------------------------------------------------------------------X

## CERTIFICATE OF SERVICE

I, Geoffrey S. Stewart, partner at JONES DAY, hereby certify that, on December 18, 2019,

a copy of the Notice of Subpoena (directed to Hector Mayol Kauffmann) was served on all

parties and counsel of record by e-mail.

Dated:  Washington, DC
            December 18, 2019            **JONES DAY**

                                         /s/ *Geoffrey S. Stewart*
                                         Geoffrey S. Stewart (*pro hac vice*)
                                         Matthew E. Papez (*pro hac vice*)
                                         Sparkle L. Sooknanan (*pro hac vice*)
                                         JONES DAY
                                         51 Louisiana Ave. N.W. Washington, DC
                                         20001
                                         Tel. (202) 879-3435
                                         Fax: (202) 626-1700
                                         gstewart@jonesday.com
                                         mpapez@jonesday.com
                                         ssooknanan@jonesday.com
                                         *Attorneys for Altair Global Credit Opportunities Fund (A),*
                                         *LLC, Andalusian Global Designated Activity Company,*
                                         *Crown Managed Accounts for and on behalf of Crown/PW*
                                         *SP, Glendon Opportunities Fund, L.P., LMA SPC for and*

*on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., and SV Credit, L.P.*

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### District of Puerto Rico

| | |
|---|---|
| In re: Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico, et al., and as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, Debtors. | ) ) ) ) ) ) |
| *Plaintiff* | ) |
| v. | ) |
| *Defendant* | ) |

Civil Action No.   17-bk-3283; 17-bk-3566

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                              Hector Mayol Kauffmann

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | DELGADO & FERNÁNDEZ, LLC 1001 San Roberto Street, Moncillos Ward San Juan, Puerto Rico | Date and Time: 01/17/2020 9:30 am |
|---|---|---|

The deposition will be recorded by this method:   Videotape and stenographer

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/18/19

CLERK OF COURT

OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Parties identified in Exhibit A
_____ , who issues or requests this subpoena, are:
Geoffrey S. Stewart, 51 Louisiana Ave NW, Washington DC 20001, gstewart@jonesday.com, (202) 879-5445

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   17-bk-3283; 17-bk-3566

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A

Altair Global Credit Opportunities Fund (A), LLC
Andalusian Global Designated Activity Company
Crown Managed Accounts for and on behalf of Crown/PW SP
Glendon Opportunities Fund, L.P.
LMA SPC for and on behalf of Map 98 Segregated Portfolio
Mason Capital Master Fund LP
Oaktree-Forrest Multi-Strategy, LLC (Series B)
Oaktree Opportunities Fund IX, L.P.
Oaktree Opportunities Fund IX (Parallel), L.P.
Oaktree Opportunities Fund IX (Parallel 2), L.P.
Oaktree Huntington Investment Fund II, L.P.
Oaktree Opportunities Fund X, L.P.
Oaktree Opportunities Fund X (Parallel), L.P.
Oaktree Opportunities Fund X (Parallel 2), L.P.
Oaktree Value Opportunities Fund Holdings, L.P.[1]
Oceana Master Fund Ltd.
Ocher Rose, L.L.C.
Pentwater Merger Arbitrage Master Fund Ltd.
PWCM Master Fund Ltd.
Redwood Master Fund, Ltd.
SV Credit, L.P.

---

[1] Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., and Oaktree Opportunities Fund IX (Parallel 2), L.P. hold through Opps Culebra Holdings, L.P. Oaktree Huntington Investment Fund II, L.P. holds through Oaktree Opportunities Fund X Holdings (Delaware), L.P. Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., and Oaktree Opportunities Fund X (Parallel 2), L.P. hold through Oaktree Opps X Holdco Ltd.

1

# EXHIBIT F

**O'Melveny**

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

File Number:

January 8, 2020

**Madhu Pocha**
D: +1 310 246 8588
mpocha@omm.com

**BY EMAIL**

Matthew E. Papez, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

Re:    *Bondholders' Lien Tracing and Ultra Vires Document Requests - Proposed Custodians and Search Terms*

Matt:

This responds to your January 6, 2019 letter regarding search terms for the ERS and GDB email review. While we appreciate your proposals, they do not fully address our concerns regarding the review burden. As we explained in our December 23, 2019 and January 3, 2020 letters, based on our experience in multiple prior reviews in related actions (including the ERS lift-stay proceedings last year), and given the time remaining in the expedited schedule, we have the resources to review roughly 20,000 electronic documents. Like prior document discovery in these related actions, most documents are in Spanish and will therefore take more time to review and prepare for production. When we raised this concern with the ERS bondholders in the lift stay proceedings last year, you worked with us to identify a search term and custodian set that could be reviewed within the lift stay schedule. We will need to take a similar approach here and have several proposals that we believe would achieve that goal.

For ERS and GDB custodians, we accept your proposal not to review family members of documents hit by the search terms except for those documents deemed responsive—the protocol to which the parties agreed for the lift-stay discovery. While this protocol could accelerate the review, we cannot know how much it will reduce the overall volume of documents. If there is even a modestly high responsiveness rate above 50%, then the volume will be too great to review in the short time the current schedule allows. As indicated in our January 3, 2020 letter, there were a combined total of **22,459** hits that expanded to **63,263** with family members just for the ERS custodians alone. If we assume, for example, that we have to review only half that universe using your review protocol, we are still looking at more than **31,000** documents. But because this is based on responsiveness assumptions, the actual number could be higher and this does not take into consideration the separate review of GDB documents. Thus, your proposed review protocol, while helpful, does not ensure that our review and production can be timely completed without additional search term, date range or custodian modifications to reduce the universe of documents for review.

As to GDB custodians, your revisions to the GDB ultra vires search strings that you proposed on January 6 reduced the volume to **5,547** hits and **26,739** total documents once families are

O'Melveny

included.[1]  When combined with your proposed ERS set (22,459 hits and 63,263 families),[2] even reviewing only documents hit by the search terms (and no family members) exceeds what we feasibly can complete within the expedited schedule.  And if we were to apply your proposed protocol, depending on the responsiveness rate, we believe such a review of a document set of roughly **90,000** documents would not be complete until mid-February (and possibly later).

We have tested additional search term, date range, and custodian combinations that will yield a review set that may more realistically fit within the current schedule (although even these proposals are ambitious).  Please see the proposals and hit results in Attachment A and let us know whether any of these present an acceptable compromise or if you have other suggestions to reduce the review volume.

Relatedly, we should discuss the timing for the depositions of the government parties that you unilaterally set for next week.  We assume that you would like depositions to occur after the document productions, but we should have a global discussion with all the parties regarding logistics and the sequencing of depositions.

Sincerely,

*/s/ Madhu Pocha*

Madhu Pocha

---

[1] As indicated in our January 3, 2020 letter, the GDB email files that we have collected range approximately from January 2003 to January 2018.

[2] As indicated in our January 3, 2020 letter, the ERS email files we have collected range approximately from January 2005 to September 2017.



---

**Attachment A**

<u>**Search Proposals**</u>

**Proposal 1 (revised lien scope terms)**:  This proposal uses the entire set of ERS custodians with your proposed lien scope terms but modifies the limiter to w/10, instead of w/25.  As noted, the ERS custodian set that we have collected ranges from January 2005 to September 2017.[3]

- o ("security interest" or collateral* or pledge* or lien* or proceed*) w/10 (account or (remit* w/5 fund*) or AUC or "Additional Uniform Contribution*" or (employ* w/3 loan*) or "Act 106" or investment* or (employer* w/2 contribut*))

- o ((garantía* or colateral or pignora* or "derecho de reten*" or producto* or beneficio* or ingreso* or ganancia*) w/10 (cuenta or (remit* w/5 fondo*) or AAU or (aportación w/2 adicional w/2 uniforme*) or (emplead* w/3 préstamo*) or "Acta 106" or inversión* or (aporta* w/2 patron*)))

> ERS Documents (lien scope)(using w/10 limiter):
> Hits:               7,929
> Hits + Family:  31,602

**Proposal 2 (revised ultra vires date range)**:  This proposal narrows the date range of the ultra vires searches but keeps the entire set of custodians.  It is our understanding that GDB was primarily involved in the lead up to the 2008 issuance.  To that end, this proposal uses your January 6 ultra vires search terms with a date range of Jan. 1, 2004 to Dec. 31, 2009 for GDB. For ERS, the date range of Jan. 1, 2004 to Dec. 31, 2014 for ERS stretches from four years before the bond issuance through the 2013 pension legislation.

> GDB Documents (ultra vires):
> Hits:               1,251
> Hits + Family:  3,984

> ERS Documents (ultra vires):
> Hits:               5,396
> Hits + Family:  12,948

**Proposal 3 (revised ultra vires search terms)**:  This proposal keeps the entire set of custodians, your January 6 ultra vires search terms for GDB and December 31 ultra vires terms for ERS, and your proposed date range (1/1/2004-11/17/2017) but adds "w/50 (bond* or bono*)" as a limiter to the search string in order to capture documents that are more likely related to the ERS bonds.

---

[3] For lien tracing, we have already started searching and producing ERS records up to November 2019. If you believe an email collection through May 20, 2019 is necessary for lien tracing, then we will have to discuss reducing the volume of the review in other areas to account for that and the additional time it will take to do another email collection from ERS.

**O'Melveny**

GDB Documents (ultra vires)(using w/50 limiter):
Hits:          5,408
Hits + Family:  16,322

ERS Documents (ultra vires)(using w/50 limiter):
Hits:          1,021
Hits + Family:  3,760

**Proposals 4-6 (ERS-GDB combined sets)**:  Using the results in proposals 1-3, there are several combinations that bring the total volume of documents to a number that could possibly be reviewed in the current schedule, assuming that no more than half of the documents need to be reviewed using your proposed review protocol.  With those assumptions in mind, the total set of documents would need to be less than roughly 40 thousand, including families.  If the responsiveness rate turns out to be lower, then it might be possible to start with a set as high as 50 thousand documents, including families.  If you prefer one of the combinations with over 40,000 total documents and the responsiveness rate ultimately exceeds these assumptions, then we would likely need to extend the case schedule or otherwise narrow the review to stay on schedule (and we reserve the right to do so if necessary).

| Proposal | Hits | Total (with families) |
|---|---|---|
| ERS lien scope Proposal 1 & ERS ultra vires Proposal 3 | 8,384 | 32,797 |
| GDB ultra vires Proposal 2 | 1,251 | 3,984 |
| **Total for Proposal 4** | **9,635** | **36,781** |
| ERS lien scope Proposal 1 & ERS ultra vires Proposal 2 | 12,436 | 40,915 |
| GDB ultra vires Proposal 2 | 1,251 | 3,984 |
| **Total for Proposal 5** | **13,687** | **44,899** |
| ERS lien scope Proposal 1 & ERS ultra vires Proposal 3 | 8,384 | 32,797 |
| GDB ultra vires Proposal 3 | 5,408 | 16,322 |
| **Total for Proposal 6** | **13,792** | **49,119** |

**Proposal 7 (priority custodians)**:  Another option is to take a targeted custodian approach, focusing on the most relevant custodians and time periods.  If the schedule permits and depending on how quickly the review goes using your proposed review protocol, additional custodians could be added.  On ultra vires, former officials who worked closer in time to the ERS bond issuance are likely priority custodians.  On lien tracing, we expect that current officials who have access to ERS financial information are more likely to have materials related to the disputed asset classes.

O'Melveny

GDB Documents (ultra vires):[4]
Custodians:    Luis Alfaro Martinez, Jorge Irizarry Herrans
Hits:           1,156
Hits + Family:  3,667

ERS Documents (ultra vires):
Custodians:    Ramon Miranda, Hector Mayol
Hits:           2,608
Hits + Family:  6,193

ERS Documents (lien scope):
Custodians:    Cecile Tirado, Luis Collazo
Hits:           4,217
Hits + Family:  16,381

This proposal puts the review volume at roughly 26,000 documents and additional custodians could be added as time permits and depending on the speed of the review.

---

[4] For GDB, we used your January 6 ultra vires search strings. For ERS (ultra vires and lien scope), we used your December 31 search strings, but we reduced the limiter to w/15 for the lien scope string. We used your proposed date ranges, but, as noted, the ERS collection set ends in September 2017. Because separate search strings were run on separate custodians, there is no combined ERS count.

# EXHIBIT G

(6)

## CERTIFICATE OF SECRETARY OF THE SYSTEM
## AS TO MASTER CONTINUING DISCLOSURE AGREEMENT


I, Rosa Castro Rivera, Secretary of the Board of Trustees of Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), **DO HEREBY CERTIFY** that attached hereto is a true and correct copy of the Master Continuing Disclosure Agreement, dated as of January 31, 2008, which form of Master Continuing Disclosure Agreement was approved by resolution duly adopted by the Board of Trustees of the System (the "Board") on January 24, 2008.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed the seal of said System this 31st day of January, 2008.

(SEAL)

Secretary of the Board of Trustees
Employees Retirement System of the Government
of the Commonwealth of Puerto Rico

# EMPLOYEES RETIREMENT SYSTEM
## OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO

## CONTINUING DISCLOSURE AGREEMENT

This Master Continuing Disclosure Agreement (the "Disclosure Agreement") is executed and delivered by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") and the Commonwealth of Puerto Rico (the "Commonwealth") in connection with the issuance of the System's Senior Pension Funding Bonds, Series A (the "Series A Bonds"), issued pursuant to a Pension Funding Bond Resolution (the "General Resolution") and an Amended and Restated First Supplemental Pension Funding Bond Resolution (the "First Supplemental Bond Resolution" and, together with the General Resolution, the "Resolution") adopted by the Board of Trustees of the System on January 24, 2008, and January 29, 2008, pursuant to which The Bank of New York will act as Fiscal Agent (the "Fiscal Agent").

The System and the Commonwealth hereby covenant and agree as follows:

SECTION 1.  Purpose of the Disclosure Agreement.  This Disclosure Agreement is being executed and delivered by the System for the benefit of the Holders of the Series A Bonds and all other bonds issued under the General Resolution (collectively, the "Bonds") in order to assist the Participating Underwriters in complying with the Rule.

SECTION 2.  Definitions.  The following terms shall have the following meanings for purposes of this Disclosure Agreement:

"Annual Report" shall mean any Annual Report provided by the System pursuant to, and as described in, Sections 3 and 4 of this Disclosure Agreement.

"Dissemination Agent" shall mean the System, acting in its capacity as Dissemination Agent hereunder, or any successor Dissemination Agent designated in writing by the System and which has filed with the System a written acceptance of such designation.

"Fiscal Year" shall mean the twelve-month period at the end of which the financial position of the System and results of its operations for such period are determined.  Currently, the System's Fiscal Year begins on July 1 and continues through June 30 of the next year.

"Holder" shall mean any person who is a record owner or beneficial owner of a Bond.

"National Repository" shall mean any Nationally Recognized Municipal Securities Information Repository for purposes of the Rule.

"Participating Underwriter" shall mean any of the original purchasers of the System's Bonds required to comply with the Rule in connection with the offering of such Bonds.

"Repository" shall mean each National Repository and any State Repository.

"Rule" shall mean Rule 15c2-12 adopted by the SEC under the Securities Exchange Act of 1934, as the same may be amended from time to time.

"SEC" means the United States Securities and Exchange Commission.

"State Repository" shall mean any public or private depository or entity designated by the System as a state information depository for purposes of the Rule.

SECTION 3.   <u>Provision of Annual Reports; Audited Financial Statements</u>.

(a)   Not later than 305 days following the end of each Fiscal Year of the System, commencing with the Fiscal Year ending June 30, 2008, each of the System and the Commonwealth shall, or shall cause the Dissemination Agent (if different from the System) to, provide to each Repository an Annual Report which is consistent with the requirements of Section 4 of this Disclosure Agreement. Not later than 10 days prior to said date, each of the System and the Commonwealth shall provide the Annual Report to the Dissemination Agent (if applicable). In each case, the Annual Report (i) may be submitted as a single document or as separate documents comprising a package, (ii) may cross-reference other information as provided in Section 4 of this Disclosure Agreement, and (iii) shall include the financial statements described in subsection (b).

(b)   The annual financial statements of the System and of the Commonwealth shall be prepared on the basis of generally accepted accounting principles and will be audited. Copies of the audited annual financial statements, which may be filed separately from the Annual Report, will be filed with each Repository when they become publicly available. If the audited annual financial statements have not been previously filed with each Repository when the Annual Report is due, copies of the unaudited financial statements will be filed with the Annual Report.

(c)   If the System or the Commonwealth fails to provide an Annual Report to each Repository by the date required in subsection (a) hereof or to file its audited annual financial statements with each Repository when they become publicly available, the System or the Commonwealth, as applicable, shall send, in a timely manner, an appropriate notice to each National Repository or the Municipal Securities Rulemaking Board and any State Repository in substantially the form attached hereto as <u>Exhibit A</u> hereto.

(d)   The Commonwealth expects to provide the information described above (excluding the audited financial statements) by delivering annually its first official statement that includes its Commonwealth Report for the relevant fiscal year, or, if no such official statement is delivered by the deadline set forth herein, by delivering a separate Commonwealth Report by such

deadline. The Commonwealth expects to provide its audited financial statements by filing its Comprehensive Annual Financial Report as a separate document by such deadline.

(e) The System covenants to file in a timely manner, with each National Repository or with the MSRB, and with the Fiscal Agent and any State Depository, notice of the occurrence of any of the following events with respect to the Bonds, if material:

1. principal and interest payment delinquencies;

2. non-payment related defaults;

3. unscheduled draws on debt service reserves reflecting financial difficulties;

4. unscheduled draws on credit enhancements reflecting financial difficulties;

5. substitution of credit or liquidity providers, or their failure to perform;

6. adverse opinions or events affecting the tax-exempt status of the Bonds;

7. modifications to rights of the holders (including beneficial owners) of the Bonds;

8. bond calls;

9. defeasances;

10. release, substitution, or sale of property securing repayment of the Bonds;

11. rating changes; and

12. any failure of the System or the Commonwealth to comply with paragraph (a) above.

(f) The System does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Bonds, unless the System applies for or participates in obtaining the enhancement.

(g) The System does not undertake to provide notice of the Listed Event in item (8) above with respect to any scheduled redemption, not otherwise contingent upon the occurrence of an event, if (i) the terms, dates and amounts of such redemption are set forth in the Official Statement relating to the Bonds, (ii) the only open issue is which Bonds will be redeemed in



3

the case of a partial redemption, (iii) notice of redemption is given to the Bondholders as required under the terms of the Bonds and the Resolution; and (iv) public notice of redemption is given pursuant to Securities Exchange Act of 1934 Release No. 34-2385 of the Securities and Exchange Commission even if the originally scheduled amounts are reduced by prior optional redemptions or purchases of Bonds.

(h) The System may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the System, such other events are material with respect to the Bonds, but the System does not undertake to provide any such notice of the occurrence of any material event except those events listed above.

SECTION 4. Content of Annual Reports. Each Annual Report required to be filed hereunder shall include, at a minimum, the information included in the System's Official Statement prepared in connection with the sale of the Series A Bonds as it relates to the System and the Commonwealth, updated to reflect events occurring and information available through the end of the fiscal year covered by the Annual Report. Any or all of such information may be incorporated by reference from other documents, including official statements containing information with respect to the System and the Commonwealth, which have been filed with each Repository or the SEC. No final official statement may be incorporated by reference in the Annual Report unless it is available from the Municipal Securities Rulemaking Board. The System shall clearly identify each such other document so incorporated by reference.

SECTION 5. Termination of Reporting Obligation. The obligations of the System and the Commonwealth under this Disclosure Agreement shall terminate upon the earlier to occur of the legal defeasance and the final retirement of the Bonds.

SECTION 6. Dissemination Agent. Each of the System and the Commonwealth may, from time to time, appoint or engage a Dissemination Agent to assist it in carrying out its obligations under this Disclosure Agreement and may discharge any such Agent, with or without appointing a successor Dissemination Agent. If at any time there is not any other designated Dissemination Agent, the System and the Commonwealth shall be their own Dissemination Agents.

SECTION 7. Amendment. Notwithstanding any other provision of this Disclosure Agreement, the System and the Commonwealth may amend this Disclosure Agreement, if (1) the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the System or the Commonwealth, respectively, or type of business conducted; this Agreement, as amended, would have complied with the requirements of the Rule at the date of the execution and delivery hereof, after taking into account any amendments or change in circumstances; and the amendment does not materially impair the interest of Holders, as determined by parties unaffiliated with the System or the Commonwealth; or (2) all or any part of the Rule ceases to be in effect for any reason, and the System or the Commonwealth, respectively, elects that this Agreement shall be deemed amended accordingly.

4

The System and the Commonwealth further agree that, in connection with any such amendment, the Annual Report will explain, in narrative form, the reasons for the amendment and the impact of the change on the information being provided.

SECTION 8.  Additional Information.  Nothing in this Disclosure Agreement shall be deemed to prevent the System or the Commonwealth from disseminating any other information, using the means of dissemination set forth in this Disclosure Agreement or any other means of communication, or including any other information in any Annual Report, in addition to that which is required by this Disclosure Agreement.  If the System or the Commonwealth chooses to include any information in any Annual Report not specifically required by this Disclosure Agreement, the System or the Commonwealth, as the case may be, shall not have any obligation under this Disclosure Agreement to update such information, and the System or the Commonwealth, as the case may be, shall have no obligation to include it in any future Annual Report.

SECTION 9.  Default.  (a) Any person referred to in Section 10 of this Disclosure Agreement (other than the System or the Commonwealth) may take such action as may be permitted by law or in equity against the appropriate public official to secure compliance with the obligations of the System and the Commonwealth to file its Annual Report.  In addition, holders of not less than a majority in aggregate principal amount of Bonds outstanding may take such actions as may be permitted by law, to challenge the adequacy of any information provided pursuant to this Disclosure Agreement, or to enforce any other obligation of the System or the Commonwealth hereunder.  A default under this Disclosure Agreement shall not be deemed an event of default under any applicable resolution, trust agreement, indenture or other debt authorization of the System or the Commonwealth.  Nothing in this Section shall be deemed to restrict the rights or remedies of any Holder pursuant to the Securities Exchange Act of 1934, the rules and regulations promulgated thereunder, or other applicable laws.

(b)  No Holder may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of this Disclosure Agreement or for any remedy for breach thereof, unless such Holder shall have filed with the System or the Commonwealth, as the case may be, written notice of any request to cure such breach, and the System or the Commonwealth shall have refused to comply within a reasonable time.  All Proceedings shall be instituted only in a court of the Commonwealth of Puerto Rico located in the Municipality of San Juan, Puerto Rico, for the equal benefit of all Holders from time to time of the Bonds benefited by this Disclosure Agreement, and no remedy shall be sought or granted other than the specific performance of this Disclosure Agreement.

SECTION 10. Beneficiaries.  This Disclosure Agreement shall inure solely to the benefit of the parties, the Participating Underwriters, and Holders from time to time of the Bonds, and shall create no rights in any other person or entity.

5

In witness whereof, the parties have executed this agreement as of the date first written above.

**EMPOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

By:
Name:
Title:

**COMMONWEALTH OF PUERTO RICO**

By:
Name:
Title:

Acknowledged as of the date set forth below

**BANK OF NEW YORK**

By:
Name:
Title:        JOANNE ADAMIS
             VICE PRESIDENT

Date:  January 31, 2008

6

# EXHIBIT A

## NOTICE OF FAILURE TO FILE ANNUAL REPORT
## [AUDITED ANNUAL FINANCIAL STATEMENTS]

## EMPOYEES RETIREMENT SYSTEM
## OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
in connection with its
Senior Pension Funding Bonds, Series A

CUSIP NO. ____ __

Dated: ___ ___ ___

NOTICE IS HEREBY GIVEN that [the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System")] [the Commonweal of Puerto Rico] has not provided an Annual Report [Audited Annual Financial Statements] as required by Section 3 of the certain Continuing Disclosure Agreement, which was delivered in connection with the above-named bonds issued by the System on January 31, 2008.  The [System] [Commonwealth] anticipates that the Annual Report [Audited Annual Financial Statements] will be filed by ___ ___ ___ ___.

Dated: ___ ___ ___

> **[EMPOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO]**
> **[COMMONWEALTH OF PUERTO RICO]**
>
> By: ___ ___ ___ ___ ___ ___ ___ ___ ___
> Name:
> Title:

A-1