# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-03566 (LTS) |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK- 4780) (Last Four Digits of Federal Tax ID: 3747).

| | | |
|---|---|---|
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, | ) ) ) ) ) | Adv. Proc. No. 19-00356 (LTS) |
| and | ) ) | |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), | ) ) ) ) | |
| as co-trustees of | ) ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| DEFENDANT 1M, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, | ) ) ) ) ) ) ) | Adv. Proc. No. 19-00357 (LTS) |
| and | ) ) | |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), | ) ) ) ) | |
| as co-trustees of | ) ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | | |

| | |
|---|---|
| STOEVER GLASS & CO., *et al.*, <br><br> Defendant. | ) ) ) ) ) ) ) ) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, <br><br> and <br><br> THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), <br><br> as co-trustees of <br><br> THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, <br><br> Plaintiff, <br><br> v. <br><br> DEFENDANT 1H-78H, <br><br> Defendants. | Adv. Proc. No. 19-00359 (LTS) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, <br><br> and <br><br> THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), | Adv. Proc. No. 19-00361 (LTS) |

|  |  |
|---|---|
| as co-trustees of | ) |
|  | ) |
|  | ) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| DEFENDANT 1G-50G, *et al.*, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |
| ------------------------------------------------------------------ X |  |

**OPPOSITION TO URGENT MOTION OF COMMITTEES
AND GOVERNMENT PARTIES TO COMPEL
<u>PRODUCTION OF DOCUMENTS FROM ERS BONDHOLDERS</u>**

-i-

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii
INTRODUCTION ............................................................................................................................... 1
BACKGROUND ................................................................................................................................. 3
ARGUMENT ....................................................................................................................................... 5
CONCLUSION .................................................................................................................................. 10

-i-

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Amoah v. Mckinney*,
　No. 4:14-cv-40181-TSH, 2016 WL 1698267 (D. Mass. Apr. 27, 2016)...................................6

*Cutter v. HealthMarkets, Inc.*,
　No. 10-cv-11488-JLT, 2011 WL 613703 (D. Mass. Feb. 10, 2011) .........................................6

**STATUTES**

U.C.C. § 8-202..................................................................................................................4, 7

19 L.P.R.A. § 1752(b)........................................................................................................4, 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26................................................................................................................6

To the Chambers of the Honorable Judith G. Dein:

The Bondholders[2] respectfully submit this opposition to the *Urgent Motion of Committees and Government Parties to Compel Production of Documents from ERS Bondholders*, ECF No. 756 in Case No. 17-03566-LTS (the "Motion to Compel").

## **INTRODUCTION**

1. In response to the thirty-five broad requests for the production of documents that the Committees and Government Parties served in the Ultra Vires Proceedings, the Bondholders have already agreed to produce everything that is relevant to those proceedings, including all non-privileged documents addressing the validity or invalidity of the ERS Bonds, or ERS's authority

---

[2] Footnote 3 of the Motion to Compel contains an inaccurate list of the Bondholders who are parties to the Ultra Vires Proceedings. This response is submitted on behalf of the correct parties, who are: Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico Fixed Income Fund VI, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., Tax-Free Puerto Rico Target Maturity Fund, Inc., and UBS IRA Select Growth & Income Puerto Rico Fund.

Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., and Oaktree Opportunities Fund IX (Parallel 2), L.P. hold through Opps Culebra Holdings, L.P. Oaktree Huntington Investment Fund II, L.P. holds through Oaktree Opportunities Fund X Holdings (Delaware), L.P. Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., and Oaktree Opportunities Fund X (Parallel 2), L.P. hold through Oaktree Opps X Holdco Ltd.

The Bondholders object to the Motion to Compel to the extent that it names and seeks to require production from certain entities not party to the Ultra Vires Proceedings.

to issue them. None of those documents are at issue in the Motion to Compel, because the Bondholders have agreed to produce them all.

2. Instead, the Motion to Compel is devoted to documents that are by definition irrelevant to the Ultra Vires Proceedings, because they do not address the validity or invalidity of the ERS Bonds, or ERS's authority to issue them. The Committees and Government Parties seek to compel the production of "everything [the Bondholders] had at the time of their purchase decisions," including "documents that do not mention or discuss the validity of the ERS Bonds." Mot. to Compel at 9. The Committees and Government Parties have no legitimate need for such documents. Documents saying nothing about whether the ERS Bonds are valid and lawfully issued will do nothing to help the Committees and Government Parties show that the Bondholders were allegedly on notice that the ERS Bonds were invalid—the sole reason the Motion to Compel gives for needing such documents.

3. That the Motion to Compel seeks only irrelevant, non-discoverable documents is confirmed by the fact that, to resolve the Oversight Board's own overbreadth objections to the Bondholders' requests to it, the Board accepted precisely the limitation that the Committees and Government Parties challenge here, agreeing that it would limit its production to "documents that concern the legality or illegality of the ERS bond issuance, or ERS's authority to engage in borrowing." Letter from Jennifer L. Roche to Matthew E. Papez, at 1 (Jan. 7, 2020), Ex. A to Decl. of Matthew E. Papez filed herewith. Despite the Committees and Government Parties' supposed confusion over the scope of the Bondholders' limitation, and their suspicion over what the Bondholders are proposing, when it came to their own documents they had no trouble at all understanding the limitation or the reasons for it.

4. Requiring the Bondholders to produce documents that do not address the validity of the ERS Bonds or the lawfulness of their issuance would also be seriously prejudicial to the Bondholders. While such documents are irrelevant to the Ultra Vires Proceedings, some of them—including investment committee memoranda that the Committees and Government Parties seem particularly focused on—contain information about the strategy behind certain Bondholders' investments in the ERS Bonds and those Bondholders' expected returns on those investments. It is easy to see why the Committees and Government Parties might want that information in connection with settlement discussions, but there is no basis for giving it to them if it is contained in documents that have no relevance to the claims and defenses in these proceedings.

## BACKGROUND

5. The Motion to Compel concerns discovery served by the Committees and Government Parties, made up of the Oversight Board on behalf of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Official Committee of Unsecured Creditors, and the Official Committee of Retired Employees, in the Ultra Vires Proceedings in which the Committees and Government Parties contend that ERS does not need to repay any of the nearly $3 billion it borrowed more than a decade ago via the sale of the ERS Bonds—and, indeed, may recover payments previously made—on the grounds that ERS lacked statutory authority to issue the ERS Bonds and they were therefore void from the start. The Bondholders hold approximately $2 billion of the ERS Bonds that are the subject of the Ultra Vires Proceedings.

6. The issues in the Ultra Vires Proceedings fall largely into two categories.[3] First, did ERS have the statutory authority under the ERS Enabling Act to issue the ERS Bonds? ERS

---

[3] There are other issues as well, including equitable issues like unjust enrichment and laches, as well as the question whether any lack of statutory authority was a mere irregularity

-3-

certainly thought so: when it borrowed $3 billion by issuing the ERS Bonds, it did so with express approval from the ERS Board of Trustees and the Government Development Bank, and with supporting legal opinions from ERS's in-house and outside counsel that specifically confirmed ERS's statutory authority. Nevertheless, the Committees and Government Parties contend, over a decade later and based on a plainly erroneous English translation of the relevant statutory language, that everyone at the time was mistaken and in fact there was no such authority.

7. Second, even if ERS lacked statutory authority to issue the ERS Bonds, did the Bondholders purchase the ERS Bonds for value without notice of that alleged particular defect? If so, the ERS Bonds are enforceable even if they would otherwise be invalid. *See* U.C.C. § 8-202 (codified at 19 L.P.R.A. § 1752(b)). This rule reflects the fact that "it is the duty of the issuer, not of the purchaser, to make sure that the security complies with the law governing its issue." U.C.C. § 8-202, cmt. 3.

8. As a result of this second issue involving notice, the Bondholders do not dispute that their knowledge and beliefs at the time of purchase about ERS's authority to issue the ERS Bonds, the legality of the issuance, and the validity of the bonds, is all relevant, discoverable information (subject, of course, to any privileges). The Bondholders have agreed, repeatedly and in writing, to produce documents reflecting such knowledge and beliefs. In their final letter preceding the filing of the Motion to Compel, for example, the Bondholders confirmed that they would produce "non-privileged documents (if any) regarding the validity (or invalidity) of the bonds, the legality of their issuance, allegations about the validity or legality of the Bonds, and any other issues related to the claims in the Ultra Vires Proceedings." Mot. to Compel Ex. 5, at 2.

---

that does not render the ERS Bonds *ultra vires*. But for purposes of this Opposition, these two categories are what matter.

-4-

9. The Motion to Compel therefore necessarily does not concern any documents "regarding the validity (or invalidity) of the bonds, the legality of their issuance, allegations about the validity or legality of the Bonds, and any other issues related to the claims in the Ultra Vires Proceedings," *id.*, because the Bondholders have agreed to produce all such documents. Rather, in the Motion to Compel, the Committees and Government Parties seek the production of *all documents about the ERS Bonds in the Bondholders' possession*, even those that have nothing to do with the validity or invalidity of the ERS Bonds or anything else relevant to the Ultra Vires Proceedings.

## ARGUMENT

10. The document requests that are the subject of the Motion to Compel are stunningly broad:

- Request 19: "All Documents relating to each Your [sic] purchase or sale of, or decision to hold ERS Bonds, including all documents reviewed, considered, or relied on by You or any of Your advisors when making purchases, sales, or decisions to hold."

- Request 21: "All Documents relating to the ERS Bonds or ERS Bond-related information known to or in the possession of You or any of Your advisors at the time of any evaluation or analysis with respect to the ERS Bonds (including, without limitation, their validity), or any decision to purchase, sell or hold any ERS Bonds."

Mot. to Compel Ex. 1, at 11. As the Bondholders have repeatedly explained, these requests as written "encompass 'every single document about the ERS Bonds at any time' that the Bondholders owned the ERS Bonds." Mot. to Compel Ex. 5, at 2 (quoting Mot. to Compel Ex. 3, at 5). And the Motion to Compel makes clear that this vast overbreadth is intentional, and that the Committees and Government Parties seek to compel the production of all of it: they want "*everything* [*the Bondholders*] *had* at the time of their purchase decisions," including "documents

-5-

that do not mention or discuss the validity of the ERS Bonds." Mot. to Compel at 9 (emphasis added).

11. "[D]ocuments that do not mention or discuss the validity of the ERS Bonds" are not discoverable, however, because they are irrelevant to the Ultra Vires Proceedings. Discovery is limited to "nonprivileged matter *that is relevant to any party's claim or defense* and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). Discovery must therefore "focus on the actual claims and defenses involved in the action." *Id.*, advisory committee's note to 2000 amendment. Under that rule, courts refuse to enforce discovery requests that are not tied to the actual issues in the case. *See, e.g.*, *Amoah v. Mckinney*, No. 4:14-cv-40181-TSH, 2016 WL 1698267, at *3 (D. Mass. Apr. 27, 2016) (denying motion to compel medical records "concerning treatment for any accident, illness or disease," and restricting discovery to records that "concern the same organs, limbs or parts of plaintiff's body allegedly injured as a result of the subject accident"); *Cutter v. HealthMarkets, Inc.*, No. 10-cv-11488-JLT, 2011 WL 613703, at *2 (D. Mass. Feb. 10, 2011) (denying motion to compel where movants "have not explained how" the documents sought related to the claims and defenses).

12. The "actual claims and defenses" in the Ultra Vires Proceeding turn, as relevant here, on ERS's authority to issue the ERS Bonds and on what the Bondholders knew about that authority and the validity of the ERS Bonds when the Bondholders purchased them. The Bondholders agreed to produce all non-privileged documents that address those issues; any documents withheld do not address them. The withheld documents are by definition irrelevant and therefore beyond the scope of discovery under Rule 26(b)(1).

13. The Committees and Government Parties have no adequate explanation for why documents that say nothing about the validity of the ERS Bonds or ERS's authority to issue them—

-6-

the only documents withheld—are relevant in any way to the Ultra Vires Proceedings. The Motion to Compel's sole explanation is that "[e]ven the absence of discussion about the legality of the bonds could undermine the Bondholders' notice defense and establish that the particular Bondholders in this litigation failed to undertake the necessary analysis of the bonds' legality at the time of their purchases." Mot. to Compel at 9. But documents that say nothing about the ERS Bonds' validity are neither necessary nor helpful in making this point. Because the Bondholders have agreed to produce all non-privileged documents addressing the validity of the ERS Bonds, if the Bondholders do not produce any such documents for a particular holder, that will necessarily mean that such documents either do not exist or are privileged. The Committees and Government Parties will then be free to argue, for whatever it may be worth, that this means the Bondholders did not "undertake the necessary analysis."

14. The production of documents that discuss issues other than the validity of the ERS Bonds would do nothing to advance this point, because the existence of particular documents that do not discuss the validity or invalidity of the ERS Bonds means only that those documents do not discuss those issues. It does not and cannot mean that no other documents discuss those issues. To know whether or not the Bondholders undertook an assessment of validity before purchasing the ERS Bonds, what the Committees and Government Parties need are all documents assessing validity—and that is precisely what the Bondholders have agreed to produce. And in any event, the Committees and Government Parties' contention that the Bondholders were obliged to confirm the ERS Bonds' validity is directly contrary to the governing law, under which "it is the duty of the issuer, not of the purchaser, to make sure that the security complies with the law governing its issue." U.C.C. § 8-202, cmt. 3.

15. The Committees and Government Parties' hostility to the Bondholders' limitation on their productions in response to these requests is also an entirely one-way street. In response to the Bondholders' own subpoena to the Oversight Board for, *e.g.*, "All Documents Concerning the constitutional or statutory provisions governing ERS's authority to borrow money or issue bonds," Oversight Bd. Resps. & Objs. to the ERS Bondholders' Subpoena to Produce Docs., at 17, Ex. B to Papez Decl., the Oversight Board's counsel—the same lawyer who took the lead in negotiating over the Committees and Government Parties' requests to the Bondholders—objected that the requests were overbroad, complaining that it "appears to request every document that even mentions the ERS Enabling Act," Letter from William D. Dalsen to Matthew E. Papez, at 2 (Dec. 13, 2019), Ex. C to Papez Decl. To resolve that objection, the Bondholders proposed that the Oversight Board adopt *exactly the same limiting construction* that the Bondholders adopted for the Committees and Government Parties' requests to it, explaining that "the[] Requests were focused on documents that concern the legality or illegality of the ERS bond issuance, or ERS's authority to engage in borrowing," and that the Bondholders had no need or desire for, *e.g.*, "every instance of, or reference to, the ERS Enabling Act." Papez Decl. Ex. A, at 1. The Oversight Board accepted that narrowing construction as resolving its overbreadth objection to the requests directed to it. *See id.* Yet the Oversight Board continues to insist on behalf of the Committees and Government Parties that the Bondholders not impose that same limitation on the requests directed to them. There is no justification for this inconsistent approach to the scope of discovery.

16. The Committees and Government Parties also argue that they are confused by the scope of the Bondholders' limitation of their production to documents addressing the validity of the ERS Bonds and ERS's authority to issue them: they complain that they "do not understand what this limitation means." Mot. to Compel at 8–9. That is odd, to say the least, considering the

-8-

Oversight Board's acceptance of exactly the same limitation on the Bondholders' own document requests to the Oversight Board, which shows that the Oversight Board both understands what this limitation means and agrees with the Bondholders that such a limitation is appropriate. In any event, the meaning of the Bondholders' limitation is very simple—if a document discusses whether the ERS Bonds are valid and enforceable or whether ERS had the authority to issue them, the Bondholders will produce them in response to these requests. If not, then not.

17. The Motion to Compel also argues that the Bondholders have used "careful wording" in an "attempt[] to mask the relevant notice materials the Bondholders intend to withhold." *Id.* at 9. This is just not so. The Bondholders' limitation aims to cabin Requests 19 and 21 to documents that discuss whether the ERS Bonds are valid, enforceable, and lawfully issued. The Bondholders are happy with any reasonable verbal formulation that captures that concept, and the Committees and Government Parties have never proposed any alternative to address their supposed "careful wording" concern. If the Oversight Board's counsel prefers the phrasing it accepted on behalf of the Oversight Board with respect to the Oversight Board's documents ("documents that concern the legality or illegality of the ERS bond issuance, or ERS's authority to engage in borrowing," Papez Decl. Ex. A, at 1), the Bondholders would accept that phrasing, too. Notably, despite the "careful wording" charge, the Motion to Compel does not describe a single example of a document that addresses issues relevant to the Ultra Vires Proceedings but falls outside the Bondholders' limitation. The *only* examples given involve documents that are silent on the issues of validity and lawfulness of issue, and as explained above, such documents are irrelevant to the Ultra Vires Proceedings.

18. Finally, the Committees and Government Parties' dogged effort to obtain documents that say nothing at all about the issues in the Ultra Vires Proceedings might seem

-9-

puzzling, but in fact there is a very simple explanation for it. The Committees and Government Parties have focused specifically, both in the Motion to Compel and during the meet-and-confer process, on "investment committee memoranda (or similar documents) and supporting materials prepared at or around the time of acquisition" of the ERS Bonds. Mot. to Compel at 2. These are highly sensitive documents. In some cases they will contain information about the strategy behind certain Bondholders' investments in the ERS Bonds, potentially including the prices those Bondholders paid for the Bonds and the value that they expect to receive for them. (Other Bondholders do not have such documents at all.) It is easy to see why the Committees and Government Parties might want that inside information in connection with their settlement discussions with the Bondholders. And a protective order would do nothing to prevent that misuse of that sensitive information. But unless those documents say something about whether the ERS Bonds are valid and enforceable—and if they do and are not privileged, the Bondholders will produce them—they are simply not relevant to the Ultra Vires Proceedings, however much the Committees and Government Parties might want to see the Bondholders' strategic reasoning for their investments. There is no basis for the Court to order the Bondholders to produce them.

## CONCLUSION

For the reasons set forth above, the Court should deny the Motion to Compel.

In San Juan, Puerto Rico, today January 10, 2020.

*/s/Alfredo Fernández-Martínez*
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

Sarah Podmaniczky McGonigle
(application for *pro hac vice* pending)
David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
Tel. (617) 449-6943
Fax: (617) 449-6999
smcgonigle@jonesday.com
drfox@jonesday.com

*/s/ Geoffrey S. Stewart*
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3435
Fax: (202) 626-1700
gstewart@jonesday.com
mpapez@jonesday.com
ssooknanan@jonesday.com

*Counsel for Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, and SV Credit, L.P.*

| | |
|---|---|
| */s/ Alicia I. Lavergne-Ramírez* | */s/ Jesse L. Green* |
| José C. Sánchez-Castro<br>USDC-PR 213312<br>jsanchez@sanpir.com | Glenn M. Kurtz (*pro hac vice*)<br>John K. Cunningham (*pro hac vice*)<br>WHITE & CASE LLP<br>1221 Avenue of the Americas<br>New York, NY 10036<br>Tel. (212) 819-8200<br>Fax (212) 354-8113<br>gkurtz@whitecase.com<br>jcunningham@whitecase.com |
| Alicia I. Lavergne-Ramírez<br>USDC-PR 215112<br>alavergne@sanpir.com | |
| SÁNCHEZ PIRILLO LLC<br>270 Muñoz Rivera Avenue, Suite 1110<br>San Juan, PR 00918<br>Tel. (787) 522-6776<br>Fax: (787) 522-6777 | Jason N. Zakia (*pro hac vice*)<br>Cheryl T. Sloane (*pro hac vice*)<br>Jesse L. Green (*pro hac vice*)<br>WHITE & CASE LLP<br>200 S. Biscayne Blvd., Suite 4900<br>Miami, FL 33131<br>Tel. (305) 371-2700<br>Fax (305) 358-5744<br>jzakia@whitecase.com |
| | *Counsel for Defendants Puerto Rico AAA Portfolio Bond Fund, Inc.; Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc.; Puerto Rico Fixed Income Fund, Inc.; Puerto Rico Fixed Income Fund II, Inc.; Puerto Rico Fixed Income Fund III, Inc.; Puerto Rico Fixed Income Fund IV, Inc.; Puerto Rico Fixed Income Fund V, Inc.; Puerto Rico Fixed Income Fund VI, Inc.; Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc.; Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.; Tax-Free Puerto Rico Fund, Inc.; Tax-Free Puerto Rico Fund II, Inc.; Tax-Free Puerto Rico Target Maturity Fund, Inc.; and UBS IRA Select Growth & Income Puerto Rico Fund* |