## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-03566 (LTS) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, | Adv. Proc. No. 19-00356 (LTS) |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK- 4780) (Last Four Digits of Federal Tax ID: 3747).

and                                                          )
                                                             )
THE OFFICIAL COMMITTEE OF UNSECURED                          )
CREDITORS OF ALL TITLE III DEBTORS                           )
(OTHER THAN COFINA),                                         )
                                                             )
    as co-trustees of                    )
                                                             )
THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO,                                   )
                                                             )
    Plaintiff,                            )
                                                             )
v.                                                           )
                                                             )
DEFENDANT 1M, *et al.*,                                      )
                                                             )
    Defendants.                           )
                                                             )
_____                     )
                                                             )
THE SPECIAL CLAIMS COMMITTEE OF THE                          )
FINANCIAL OVERSIGHT AND MANAGEMENT                           )     Adv. Proc. No. 19-00357 (LTS)
BOARD FOR PUERTO RICO, ACTING BY AND                         )
THROUGH ITS MEMBERS,                                         )
                                                             )
                                                             )
    and                                   )
                                                             )
                                                             )
THE OFFICIAL COMMITTEE OF UNSECURED                          )
CREDITORS OF ALL TITLE III DEBTORS                           )
(OTHER THAN COFINA),                                         )
                                                             )
    as co-trustees of                    )
                                                             )
THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO,                                   )
                                                             )
    Plaintiff,                            )
                                                             )
v.                                                           )
                                                             )
STOEVER GLASS & CO., *et al.*,                               )
                                                             )

|  |  |  |
|---|---|---|
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| | ) | Adv. Proc. No. 19-00359 (LTS) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, | ) ) ) ) | |
| and | ) ) | |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), | ) ) ) | |
| as co-trustees of | ) ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DEFENDANT 1H-78H, | ) ) | |
| Defendants. | ) ) | |
| | ) | |
| _____ | ) | |
| | ) | Adv. Proc. No. 19-00361 (LTS) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, | ) ) ) ) | |
| and | ) ) | |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), | ) ) ) | |
| as co-trustees of | ) ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, | ) ) | |

|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| DEFENDANT 1G-50G, *et al.*, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |
|  | ) |

------------------------------------------------------------------- X


**DECLARATION OF MATTHEW E. PAPEZ IN SUPPORT OF
OPPOSITION TO URGENT MOTION OF COMMITTEES
AND GOVERNMENT PARTIES TO COMPEL
<u>PRODUCTION OF DOCUMENTS FROM ERS BONDHOLDERS</u>**

I, Matthew E. Papez, hereby declare under penalty of perjury:

1.      I am a partner at the law firm of Jones Day, located at 51 Louisiana Ave., N.W., Washington, D.C. 20001.  I am a member in good standing of the Bars of the State of Nevada and the District of Columbia.  There are no disciplinary proceedings pending against me.  I submit this declaration in support of the *Opposition to Urgent Motion of Committees and Government Parties to Compel Production of Documents from ERS Bondholders*.  I have personal knowledge of the matters stated herein.

2.      Attached hereto as Exhibit A is a true and correct copy of a January 7, 2020, letter from Jennifer L. Roche, counsel to the Oversight Board, to me.

3.      Attached hereto as Exhibit B is a true and correct copy of the Oversight Board's Responses and Objections to the ERS Bondholders' Subpoena to Produce Documents dated November 22, 2019.

4.      Attached hereto as Exhibit C is a true and correct copy of a December 13, 2019, letter from William D. Dalsen, counsel to the Oversight Board, to me.


Dated:  January 10, 2020                          */s/ Matthew E. Papez*
        Washington, D.C.                          Matthew E. Papez

# EXHIBIT A

 Proskauer Rose LLP 2029 Century Park East, Suite 2400 Los Angeles, CA 90067-3010

Jennifer L. Roche
Senior Counsel
d.310.284.5635
f. 310.557.2193
jroche@proskauer.com
www.proskauer.com

January 7, 2020

**Via Email**

Matthew E. Papez, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
mpapez@jonesday.com

**Re: Oversight Board Objections and Responses to Subpoena (Ultra Vires Proceedings)**

Dear Matt:

We are writing to follow up on our December 31, 2019 and January 2, 2020 calls concerning, among other things, the Oversight Board's Responses and Objections to the ERS Bondholders' Subpoena to Produce Documents concerning the Ultra Vires Proceedings (the "Subpoena"), and your January 6, 2020 letter regarding the search strings the Bondholders proposed by email on December 31.

During our December 31 call, Bondholders asked whether the Oversight Board would agree to search for documents responsive to Request Nos. 5, 6, 10, 13 and 19 in the Subpoena (the "Requests"), and agreed (a) to defer further discussion on Request Nos. 1 and 25, pending production of documents by ERS; and (b) that any search the Oversight Board would be asked to perform for documents responsive to the Requests would be limited in time from August 31, 2016 (i.e., when the members of the Oversight Board were appointed) to May 21, 2017 (i.e., when the Oversight Board filed the ERS Title III case). In response to our objection that the Requests, as drafted, were overly broad, Bondholders explained that these Requests were focused on documents that concern the legality or illegality of the ERS bond issuance, or ERS's authority to engage in borrowing. Bondholders explained they would not consider responsive, for example, every instance of, or reference to, the ERS Enabling Act. We agreed to take this narrowing of the Requests under advisement.

The Oversight Board's objections to the Subpoena notwithstanding, all of which are preserved, and as stated on the January 2 call, the Oversight Board is willing to conduct a reasonable search for documents in its possession that are responsive to the Requests as narrowed by your proposal identified above, subject to (a) discussion on search terms; and (b) adjusting the terms to be appropriate in view of the limitations you proposed. We have reviewed the Bondholders' proposed *ultra vires* search terms and the Oversight Board is willing to perform the following searches:

**Proskauer**»

Mr. Matthew Papez, Esq.
January 7, 2020
Page 2

Date range: August 31, 2016 to May 21, 2017
Search strings: 116-2011 or underwriter or (UBS w/2 Financial w/2 Service) or "direct placement" or "tomar prestado de cualquier institucion finaciera" or "ultra vires" or "colocación* directa*"

The Oversight Board's willingness to use these search strings is not an agreement that the terms are appropriately narrow, and is without prejudice to ERS's objections to use the same strings, as ERS is differently positioned with respect to the issues, date ranges, and number of search hits.

Please contact us if you have any further questions.

Sincerely,

Jennifer L. Roche

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.* ,<br><br>    Debtors. [1] | PROMESA<br>Title III<br><br>Case No.17-BK-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No.17-BK-03566 (LTS) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS,<br><br>    and | Adv.Proc.No.19-00356 (LTS) |

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474);  (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK- 4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS
(OTHER THAN COFINA),

     as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF PUERTO RICO,

     Plaintiff,

v.

DEFENDANT 1M, *et al.* ,

     Defendants.

---

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, ACTING BY AND
THROUGH ITS MEMBERS,

     and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS (OTHER
THAN COFINA),

     as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF PUERTO RICO,)

     Plaintiff,

v.

STOEVER GLASS & CO. , *et al.* ,

     Defendant.

Adv.Proc.No.19-00357 (LTS)

---

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, ACTING BY AND
THROUGH ITS MEMBERS,

Adv.Proc.No.19-00359 (LTS)

and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS
(OTHER THAN COFINA),

      as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF PUERTO RICO,

      Plaintiff,

v.

DEFENDANT 1H-78H,

      Defendants.

---

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, ACTING BY AND
THROUGH ITS MEMBERS,

      and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS (OTHER
THAN COFINA),

      as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF PUERTO RICO,

      Plaintiff,

v.

DEFENDANT 1G-50G,

      Defendants.

Adv.Proc.No.19-00361 (LTS)

**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO'S RESPONSES AND OBJECTIONS TO THE ERS
BONDHOLDERS' SUBPOENA TO PRODUCE DOCUMENTS**

Pursuant to Rules 26, 34, and 45 of the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure 7026, 7034, 9014 and 9016, made applicable to this proceeding by Section 310 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA") (48 U. S. C.§ 2170), the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS" or "Debtor") pursuant to PROMESA § 315(b) (48 U. S. C.§ 2175(b)), hereby responds and objects (collectively, the "Responses and Objections") to the *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action* (the "Subpoena"), including the Definitions, Instructions, and Document Requests (the "Requests," and each a "Request"), served on or about November 1, 2019.

## PRELIMINARY STATEMENT

The Oversight Board's Responses and Objections are made without prejudice to the Oversight Board's right to amend or supplement its responses herein if necessary at a later date. To the extent the Oversight Board has not objected to the Subpoena, it has made reasonable efforts to respond to each Request as understood and interpreted. By making the objections below, the Oversight Board does not waive and expressly reserves its right to make additional objections.

## GENERAL OBJECTIONS

The Oversight Board objects to the Subpoena, and to each and every Request on the following grounds. These General Objections are incorporated into the Responses and Objections to each individual Request.

1.      The Oversight Board objects to the Subpoena, and to each and every Request, to the extent they place an unreasonable burden on the Oversight Board, including without limitation

by seeking documents and information that are duplicative or cumulative of other discovery requests, or that are equally or more readily available from public sources or that are already available to the Bondholders.

2.     The Oversight Board objects to the Subpoena, and to each and every Request, to the extent they seek documents or information that are not in the Oversight Board's possession, custody or control. Subject to the other general and specific objections set forth herein, the Oversight Board will use reasonable diligence to obtain responsive documents in its possession, custody or control based on an examination of those files reasonably expected to yield responsive documents. Documents produced by the Oversight Board in response to specific Requests should not be construed as a representation that every document in its possession, custody, or control has been examined. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce.

3.     The Oversight Board objects to the Subpoena, and to each and every Request, to the extent they purport to require the Oversight Board to search archives, backup files, or any information that is not readily accessible, including without limitation the files of any person no longer employed with, a member of, or otherwise acting on behalf of the Oversight Board and whose files have been archived, destroyed, or released in connection with such person's departure from the Oversight Board.

4.     The Oversight Board objects to the Subpoena, and to each and every Request, to the extent it purports to require the Oversight Board to produce "all" documents that are the subject of a Request on the grounds such request is overly broad, unduly burdensome, and disproportionate to the needs of the case. The Oversight Board will use reasonable diligence to conduct a search

proportionate to the needs of the case to locate readily accessible documents in those files in which it reasonably expects to find responsive documents.

5.      The Oversight Board objects to the Subpoena, and to each and every Request, to the extent they purport to impose duties on the Oversight Board that are inconsistent with, not authorized by, or exceed those required by the Federal Rules of Civil Procedure as incorporated into the Federal Rules of Bankruptcy Procedure, the local rules for the United States Bankruptcy Court for District of Puerto Rico, or the presiding Court's chambers practices and case management orders (collectively, the "Governing Rules"). The Oversight Board further objects to the Subpoena to the extent it purports to incorporate by reference Local Rule 26. 2 and Local Rule 26. 3 of the United States District Court for the Southern District of New York or any specific definitions or requirements therein, as such Local Rule 26. 2 and Local Rule 26. 3 are not part of the Governing Rules. In responding to these Requests, and unless otherwise noted, the Oversight Board will construe all words in accordance with their ordinary English meaning, as informed by the Governing Rules.

6.      The Oversight Board objects to the Subpoena, and to each and every Request, to the extent they seek documents and information that are not "relevant to any party's claim or defense and proportional to the needs of the case." Fed.R.Civ.P.26(b)(1).

7.      The Oversight Board objects to each Definition, Instruction and Request, to the extent they expressly or impliedly seek documents or information protected by the Attorney-Client Privilege, the Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. Nothing in these Responses and Objections is intended as, nor shall in any way be deemed, a waiver of any of these privileges, doctrines, or immunities.

Documents and information protected by these privileges, doctrines, or immunities are not subject to disclosure, and the Oversight Board will not provide them. The inadvertent production of any such protected document or other item shall not constitute a waiver of any privilege or protection or any other ground for objection to discovery with respect to the information contained therein, nor shall such inadvertent production waive the Oversight Board's right to object to the use of any such document or the information contained therein in this action or during any subsequent proceeding. Upon notification that such disclosure was inadvertent, the document(s)/item(s) and any copies thereof shall be returned or destroyed immediately.

8.     The Oversight Board objects to each Definition, Instruction, and Request, to the extent they seek documents or information that are confidential or proprietary in nature, or otherwise constitute protected commercial, strategic, financial or competitively sensitive or trade secret information, including but not limited to information or models created by the Oversight Board's financial consultants. To the extent that such relevant and responsive documents or information exist, the Oversight Board will produce them only under an appropriate protective order.

9.     To the extent any term defined or used in the Subpoena is used in responding to the Subpoena, it is not accepted or conceded that any such term or definition is appropriate, descriptive, or accurate.

10.     The Oversight Board objects to the definition of the terms "Document" and "Documents" to the extent they seek to impose duties on the Oversight Board that differ from or exceed those imposed by the Governing Rules. The Oversight Board further objects to searching or producing any text messages or instant messages, which would be unduly burdensome and not proportionate to the needs of the case and the abbreviated time frame for discovery. The Oversight

4

Board will use reasonable diligence to conduct a search proportionate to the needs of the case to locate readily accessible documents in those files in which it reasonably expects to find responsive documents.

11.     The Oversight Board objects to the definition of the terms "<u>You</u>" and "<u>Your</u>" to the extent they are defined to include "<u>Affiliates</u>," as overbroad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the disclosure of information relevant to the pending case. In responding to these Requests, the Oversight Board will construe "<u>You</u>" and "<u>Your</u>" to mean ERS and its members and employees reasonably likely to possess information relevant to the pending case.

12.     The Oversight Board objects to the definition of the term "<u>Affiliate</u>" on the grounds that it is overly broad, vague, ambiguous, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Read broadly, this definition could be limitless because it includes "*any* person or entity" that is "related to or associated with" the person or entity in question. Furthermore, the definition of "Affiliate" includes a litany of different individuals, including "agents," "advisors, attorneys, accountants" and unspecified "representatives."  With respect to people or entities other than the Oversight Board, determining who may be an "Affiliate" under this definition would require an exhaustive investigation with no assurance that every "Affiliate" would be identified. Even for the Oversight Board itself, it would be unduly burdensome to include every "Affiliate," and that overbreadth is compounded by the fact that the definition of "You" and "Your" already includes "Affiliates" (so the Oversight Board would be required to include "Affiliates" of its "Affiliates"). In responding to the Subpoena, the Oversight Board will construe "Affiliate" to mean (i) any entity controlling, controlled by, or under common

control with the entity at issue, *see* 17 C.F.R. § 230.405, and (ii) any of the entity's officers, directors, and known agents.

13.     The Oversight Board objects to the definition of the term "<u>Analysis</u>" on the grounds that it is overly broad, vague, ambiguous, and unduly burdensome.

14.     The Oversight Board objects to the "<u>Scope</u>," on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case and extremely abbreviated time frame for discovery. The Oversight Board further objects to the extent the Scope purports to impose requirements or obligations on the Oversight Board beyond the scope of, or different from, those imposed by the Governing Rules. The Oversight Board further objects the term Scope is unintelligible because the definition requires the production of "all responsive Documents generated on or after January 1, 2004," which predates the creation of the Oversight Board in 2016.

15.     The Oversight Board objects to Instruction 2 on the grounds it is overly broad, unduly burdensome, and does not seek discovery proportionate to the needs of the case. The Oversight Board further objects to this Instruction on the ground that it seeks to impose requirements different than those of the Governing Rules. The Oversight Board is willing to meet and confer concerning a reasonable production format for any production of responsive, non-privileged documents in accordance with the General and Specific Objections and Responses herein.

16.     The Oversight Board objects to Instruction 3 on the grounds that it is vague, ambiguous, overbroad, unduly burdensome and would require The Oversight Board to produce documents that are outside its possession, custody, or control. In view of these actions' truncated schedules, the Oversight Board will search for and produce only documents uniquely within its possession, custody, or control that are not readily available from other sources. The Oversight

Board will not search for and produce documents from its attorneys, consultants, "representative" (whatever that is intended to mean), or agents. Nor will The Oversight Board search for and produce documents from its employees, officers, or directors that they maintain in their individual capacities. The Oversight Board further objects to Instruction 3's inclusion of "partners," as the Oversight Board is not a member of any legal entity in the form of a partnership.

17.     The Oversight Board objects to Instruction 4 on the grounds that Local Rule 26. 2 of the United States District Court for the Southern District of New York is not part of the Governing Rules. The Oversight Board further objects to this Instruction on the grounds that it is unduly burdensome and not proportional to the needs of the case to the extent it requires a written privilege log for each document withheld from production. Given the extremely abbreviated time frame for discovery in this matter, logging every document withheld from production would be unduly burdensome and oppressive. The Oversight Board reserves the right to produce a categorical privilege log if necessary and appropriate.

18.     The Oversight Board objects to Instruction 5 on the grounds that it is overly broad, unduly burdensome, and does not seek discovery proportionate to the needs of the case. The Oversight Board further objects to this Instruction to the extent it exceeds the scope of the Governing Rules. The Oversight Board will not comply with this Instruction.

19.     The Oversight Board objects to Instruction 7 on the grounds that it is vague and ambiguous and seeks to impose obligations different from those in the Governing Rules. It is unclear what is meant by construing each request "independently," and the Oversight Board reserves its rights to make any and all appropriate objections to the Requests, whether construing them separately or as a whole.

20.     The Oversight Board objects to Instruction 8 on the grounds that it is unduly burdensome, would call for the production of documents not within The Oversight Board's possession, custody, or control, and seeks the production of documents protected by the attorney-client privilege and the attorney work-product immunity—including documents from the law firm representing the Oversight Board in responding to the Subpoena. In responding to these Requests, the Oversight Board will search for and produce only documents within its possession, custody, or control (as defined by applicable law) that can be located by a reasonable search under the time constraints imposed in these actions. For the avoidance of any doubt, the Oversight Board will not search for and produce documents from third parties, including ERS, upon which duplicative requests were served, the Puerto Rico Legislative Assembly, the Commonwealth, O'Melveny & Myers LLP, Citibank, Rothschild & Co., Ankura, Proskauer Rose LLP, or DLA Piper LLP.

21.     The Oversight Board responds to the Subpoena as it interprets and understands it. If Defendants subsequently assert an interpretation of any Request that differs from the Oversight Board's understanding, the Oversight Board reserves the right to supplement its objections and responses.

22.     The Oversight Board objects to the stated time frame of the requests–January 1, 2004, to November 1, 2019, as overly broad, unduly burdensome, and not proportional to the needs of the case. This date range predates by one year the ERS bond issuance in January 2008 and extends more than two years beyond the filing of ERS's Title III case in May 2017. This date range also predates the creation of the Oversight Board, which occurred in 2016. Where the Oversight Board is able to produce documents, the Oversight Board will indicate in its response the date range that is appropriate in light of the relevance of the request and the likely burden, including the burden of having to review and log privileged materials.

23.     The Oversight Board objects to the stated time for production of documents—November 22, 2019 at 5 pm—as unduly burdensome, particularly given the scope of the Requests, and because it imposes a significantly greater burden on the Oversight Board than is established by the Scheduling Order governing discovery in these proceedings.  The Oversight Board will meet and confer with the parties to decide a mutually-agreeable timeline for any document productions.

24.     These Responses and Objections are made without waiving, or intending to waive, but, on the contrary, expressly reserving: (a) the right to object on the grounds of competency, privilege, relevancy, materiality, admissibility as evidence for any purpose, or any other proper grounds, to the use of any documents produced hereunder or the subject matter thereof, in whole or in part, at any trial or hearing related in the above-captioned case or in any related or subsequent action or proceeding; (b) the right to object on any and all grounds, at any time, to other demands for production or other discovery procedures involving or relating to the subject matter of the Subpoena or otherwise; and (c) the right at any time to revise, amend, correct, supplement, or clarify any of the Responses and Objections herein.

25.     These Responses and Objections should not be construed as: (a) an admission as to the propriety of any Request; (b) an agreement as to erroneous assumptions or incorrect factual predicates contained in any Request; (c) an acknowledgement that documents or other items responsive to any Request exist; (d) a waiver of the General Objections or the objections asserted in response to specific Requests; (e) an admission as to the relevance or admissibility into evidence of any documents, item or information; (f) an admission, concession, or waiver as to the validity of any claim or defense asserted in this litigation; or (g) an agreement that requests for similar documents, items or information will be treated in a similar manner.

## RESPONSES TO DOCUMENT REQUESTS

Each of the General Objections, Objections to Definitions, and Objections to Instructions

is incorporated into each response below as if fully set forth therein:

## REQUEST NO.1:

All Documents Concerning ERS's decision to issue the ERS Bonds.

## RESPONSE TO REQUEST NO.1:

In addition to its general objections, the Oversight Board objects to this Request as

overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently

tailored to the expedited discovery schedule. This Request seeks documents that are not relevant

to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require

fact discovery from the Oversight Board. Even if the requested documents had some marginal

relevance, requiring the Oversight Board to search for and review all documents within its

possession, custody, or control that are dated from January 1, 2004, through November 1, 2019,

for any scrap of paper concerning ERS's decision to issue the ERS Bonds would impose an

unnecessary burden and expense, and would be virtually impossible to complete within the two

month time frame for document productions. The Oversight Board further objects to this Request

to the extent it seeks documents that have already been produced or that are available to the

Bondholders from other sources; given the expedited schedule in this case, it would be an

unnecessary waste of time to require the Oversight Board to reproduce documents that have

already been produced or are equally accessible to the Bondholders. The Oversight Board objects

to this Request because it seeks documents that are duplicative of materials the Bondholders are

seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently

produce documents which ERS has already produced or agreed to produce. The Oversight Board

also objects to this Request to the extent it seeks documents protected by the attorney-client

privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.2:**

All Documents Concerning any other financing structures ERS considered as an alternative to issuing the ERS Bonds.

**RESPONSE TO REQUEST NO.2:**

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board also objects to this Request on the grounds that it is vague and ambiguous in its use of the terms "financing structures" and "alternatives." "Financing structure" is a term that has no fixed meaning, and the Oversight Board cannot (nor should it be required to) guess as to what the Bondholders mean by this term. Similarly, the term "alternatives" could have many meanings depending on the context, and the Bondholders could consider numerous actions as "alternatives" to the bond issuances that the ERS Board did not view as

alternatives. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.3:**

All Documents Concerning the possibility of raising funds for ERS by having ERS (a) issue bonds or other debt under a trust or through a conduit entity, (b) engage in a Private Placement of securities, or (c) otherwise issue debt in any form other than the ERS Bonds.

**RESPONSE TO REQUEST NO.3:**

In addition to its general objections, the Oversight Board objects to Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. The only documents that could have even marginal relevance to the issues in these actions would be documents concerning fund-raising alternatives actually considered by the ERS Board, which ERS has agreed to produce in response to the Request for Production served on it in this proceeding. Even if additional requested documents had some marginal relevance, requiring the Oversight Board to search for and review all

documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would also impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board objects to subpart (a) of this Request as vague because is unclear what the phrase "conduit entity" means, and the Oversight Board will not attempt to guess at Bondholders' meaning. For purposes of this RFP only, the Oversight Board does not object to the term "Private Placement," which is defined as "a non-public offering of securities," but the Oversight Board expressly reserves any and all rights regarding any arguments the Oversight Board has regarding the legality of the ERS Bonds and the interpretation of the ERS Enabling Act. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.4:**

All Documents Concerning the possibility of raising funds for ERS by having the Commonwealth issue general obligation bonds.

**RESPONSE TO REQUEST NO.4:**

In addition to its general objections, the Oversight Board objects this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. The only documents that could have even marginal relevance to the issues in these actions would be documents concerning fund-raising alternatives actually considered by the ERS Board, which ERS has agreed to produce in response to the Request for Production served on it in this proceeding. Even if additional requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would also impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

14

**REQUEST NO.5:**

All Documents Concerning any borrowings, other than issuance of the ERS Bonds, that ERS engaged in or contemplated engaging in at any time.

**RESPONSE TO REQUEST NO.5:**

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would also impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board objects to this Request because it is vague concerning the kinds of "borrowings" to which the Bondholders refer and, for example, could encompass the borrowing of property. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.6:**

All Documents Concerning the constitutional or statutory provisions governing ERS's authority to borrow money or issue bonds.

**RESPONSE TO REQUEST NO.6:**

In addition to its general objections, the Oversight Board objects to Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would also impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.7:**

All Documents Concerning ERS's legal authority to borrow money, including but not limited to ERS's authority to issue the ERS Bonds.

**RESPONSE TO REQUEST NO.7:**

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would also impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The only documents that could have even marginal relevance to the issues in these actions would be documents concerning ERS Board agendas, meeting minutes, presentations, and Board books and ERS policies and procedures within its possession, custody, or control related to the constitutional or statutory provisions governing ERS's authority to borrow money or issue bonds, which ERS has agreed to produce in response to the Request for Production served on it in this proceeding. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce

documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.8:**

All Documents Concerning whether the ERS Bonds fell within ERS's power under the ERS Enabling Act to "tomar prestado de cualquier institución financiera," or any English translation of that phrase.

**RESPONSE TO REQUEST NO.8:**

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The only documents that could have even marginal relevance to the issues in these actions would be documents concerning ERS Board agendas, meeting minutes, presentations, and Board books and ERS policies and procedures within its possession, custody,

or control related to the constitutional or statutory provisions governing ERS's authority to borrow money or issue bonds, which ERS has agreed to produce in response to the Request for Production served on it in this proceeding. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Oversight Board further objects to this Request on the grounds that the inclusion of the term "any English translation" renders this Request overly broad, vague, and ambiguous.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.9:**

All Documents Concerning whether the ERS Bonds fell within ERS's power under the ERS Enabling Act to "tomar prestado ...mediante colocaciones directas de la deuda," or any English translation of that phrase.

**RESPONSE TO REQUEST NO.9:**

In addition to its general objections, the Oversight Board objects to this Request because it seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1,

2004, through November 1, 2019, for any scrap of paper in response to this Request would also impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The only documents that could have even marginal relevance to the issues in these actions would be documents concerning ERS Board agendas, meeting minutes, presentations, and Board books and ERS policies and procedures within its possession, custody, or control related to the constitutional or statutory provisions governing ERS's authority to borrow money or issue bonds, which ERS has agreed to produce in response to the Request for Production served on it in this proceeding. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Oversight Board further objects to this Request on the grounds that the inclusion of the term "any English translation" renders this Request overly broad, vague, and ambiguous.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.10:**

All Documents Concerning Communications made by ERS or the Commonwealth of Puerto Rico to anyone about ERS's borrowing authority, including but not limited to ERS's authority to issue the ERS Bonds.

20

**RESPONSE TO REQUEST NO.10:**

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. What the ERS or the Commonwealth may have said to anyone about the ERS's borrowing authority does not alter the limitations on ERS's borrowing power set forth in the ERS Enabling Act. The Oversight Board objects to this Request to the extent it seeks documents that have already been produced or that are available to the Bondholders. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

21

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.11:**

All Documents Concerning any Communication made by or on behalf of ERS that the ERS Bonds were *ultra vires* or that ERS did not have authority to issue the ERS Bonds.

**RESPONSE TO REQUEST NO.11:**

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board objects to this Request to the extent it seeks documents that have already been produced or that are available to the Bondholders. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the

executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

## REQUEST NO.12:

All Documents Concerning any Communication made by anyone at any time that the ERS Bonds were *ultra vires* or that ERS did not have authority to issue the ERS Bonds.

## RESPONSE TO REQUEST NO.12:

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request is not limited to just the Oversight Board and encompasses any and all communications made by anyone in the world, which are even less relevant than communications made by the Oversight Board. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board objects to this Request to the extent it seeks documents that have already been produced or that are available to the Bondholders. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant

23

proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.13:**

All Documents Concerning whether the government of the Commonwealth either authorized or prohibited the issuance and delivery of the ERS Bonds.

**RESPONSE TO REQUEST NO.13:**

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board objects to this Request to the extent it seeks documents that have already been produced or that are available to the Bondholders. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the

Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to, and without waiving any of its specific objections, General Objections, Objections to Definitions, or Objections to Instructions, the Oversight Board states that the ERS Bondholders already have equally available to them the ERS Enabling Act, Act No.447 of May 15, 1951 (codified, as amended, at 3 L. P. R. A.§§ 761–788), which prohibited the ERS bonds' issuance and delivery.

**REQUEST NO.14:**

All Documents Concerning any Communications by the Legislative Assembly of Puerto Rico Concerning ERS's authority to borrow money or issue bonds.

**RESPONSE TO REQUEST NO.14:**

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for

document productions. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board further objects to this Request to the extent it seeks documents that have already been produced or that are available to the Bondholders. The Oversight Board objects to the Request to the extent it seeks documents that are in the possession of the Legislative Assembly of Puerto Rico, and not in the possession, custody, or control of the Oversight Board. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

## REQUEST NO.15:

All Documents Concerning ERS's decision to hire underwriters to assist in issuing the ERS Bonds.

## RESPONSE TO REQUEST NO.15:

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its

possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would also impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board further objects to this Request to the extent it seeks documents that have already been produced or that are available to the Bondholders. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.16:**

All Documents Concerning the role of underwriters in the issuance of the ERS Bonds.

**RESPONSE TO REQUEST NO.16:**

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004,

through November 1, 2019, for any scrap of paper in response to this Request would also impose
an unnecessary burden and expense, and would be virtually impossible to complete within the
two month time frame for document productions. The Oversight Board further objects to this
Request to the extent it seeks documents that have already been produced or that are available to
the Bondholders. The Oversight Board objects to this Request because it seeks documents that
are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant
proceedings. The Oversight Board will not independently produce documents which ERS has
already produced or agreed to produce. The Oversight Board also objects to this Request to the
extent it seeks documents protected by the attorney-client privilege, the attorney work-product
immunity, the executive and deliberative-process privileges, or any other applicable privileges,
doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will
not be producing documents in response to this Request. The Oversight Board is willing to meet
and confer concerning this Request.

**REQUEST NO.17:**

All Documents requested by or provided to the underwriters of the ERS Bonds Concerning
the authority of ERS to issue the ERS Bonds.

**RESPONSE TO REQUEST NO.17:**

In addition to its general objections, the Oversight Board objects to this Request because
it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently
tailored to the expedited discovery schedule. This Request seeks documents that are not relevant
to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require
fact discovery from the Oversight Board. Even if the requested documents had some marginal
relevance, requiring the Oversight Board to search for and review all documents within its

28

possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would also impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board further objects to this Request to the extent it seeks documents that have already been produced or that are available to the Bondholders. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.18:**

All Communications between ERS and any underwriter Concerning the ERS Bonds, including all agreements entered into with any underwriter.

**RESPONSE TO REQUEST NO.18:**

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal

relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would also impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board objects to this Request to the extent it seeks documents that have already been produced or that are available to the Bondholders. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

### REQUEST NO.19:

All Documents Concerning or supporting ERS's contention that any violation of the ERS Enabling Act was not "harmless."

### RESPONSE TO REQUEST NO.19:

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require

fact discovery from the Oversight Board. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

## REQUEST NO.20:

All minutes, agendas, and other Documents Concerning meetings of the ERS Board at which borrowing by or on behalf of ERS was discussed.

## RESPONSE TO REQUEST NO.20:

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would also impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board objects to this Request because it seeks documents

that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant

proceedings. The Oversight Board will not independently produce documents which ERS has

already produced or agreed to produce. The Oversight Board further objects to this Request to

the extent it seeks documents protected by the attorney-client privilege, the attorney work-

product immunity, the executive and deliberative-process privileges, or any other applicable

privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will

not be producing documents in response to this Request. The Oversight Board is willing to meet

and confer concerning this Request.

**REQUEST NO.21:**

All minutes, agendas, and other Documents Concerning meetings of the Government

Development Bank Board at which borrowing by or on behalf of ERS was discussed.

**RESPONSE TO REQUEST NO.21:**

In addition to its general objections, the Oversight Board objects to this Request because

it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently

tailored to the expedited discovery schedule. This Request seeks documents that are not relevant

to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require

fact discovery from the Oversight Board. Even if the requested documents had some marginal

relevance, requiring the Oversight Board to search for and review all documents within its

possession, custody, or control that are dated from January 1, 2004, through November 1, 2019,

for any scrap of paper in response to this Request would also impose an unnecessary burden and

expense, and would be virtually impossible to complete within the two month time frame for

document productions. The Oversight Board further objects to this Request because it seeks

documents that are duplicative of materials the Bondholders are seeking from AAFAF. The

Oversight Board refers to AAFAF's response to this request and the Oversight Board will not independently search for or produce documents responsive to this request. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.22:**

The ERS Bond transaction working paper files maintained by ERS.

**RESPONSE TO REQUEST NO.22:**

In addition to its general objections, the Oversight Board objects to this Request on the ground it seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. The Oversight Board further objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board further objects to this Request on the grounds that the inclusion of the term "working paper files" renders this Request overly broad, vague, and ambiguous.

33

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.23:**

The ERS Bond transaction working paper files maintained by the Government Development Bank.

**RESPONSE TO REQUEST NO.23:**

In addition to its general objections, the Oversight Board objects to this Request on the ground it seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. The Oversight Board further objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from AAFAF. The Oversight Board refers to AAFAF's response to this request and the Oversight Board will not independently search for or produce documents responsive to this request. The Oversight Board further objects to this Request on the grounds that the inclusion of the term "working paper files" renders this Request overly broad, vague, and ambiguous.  The Oversight Board further objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.24:**

All reports or correspondence from Mesirow Financial concerning the issuance of the ERS Bonds.

**RESPONSE TO REQUEST NO.24:**

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would also impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

At this time, the Oversight Board stands on its General and Specific Objections, and will not be producing documents in response to this Request. The Oversight Board is willing to meet and confer concerning this Request.

**REQUEST NO.25:**

All Documents Concerning any evidence that any person acted in violation of law or contravention of any rule in connection with the issuance of the ERS Bonds.

**RESPONSE TO REQUEST NO.25:**

In addition to its general objections, the Oversight Board objects to this Request because it is overbroad, unduly burdensome, not proportional to the needs of the case, and not sufficiently tailored to the expedited discovery schedule. This Request seeks documents that are not relevant to whether the ERS Bonds are *ultra vires*, which is purely a legal question that does not require fact discovery from the Oversight Board. Even if the requested documents had some marginal relevance, requiring the Oversight Board to search for and review all documents within its possession, custody, or control that are dated from January 1, 2004, through November 1, 2019, for any scrap of paper in response to this Request would also impose an unnecessary burden and expense, and would be virtually impossible to complete within the two month time frame for document productions. The Oversight Board further objects to this Request because it is vague as to the phrase "contravention of any rule" and what that entails separate from a violation of law, whether it is rules of grammar or any other rules. The Oversight Board objects to this Request because it seeks documents that are duplicative of materials the Bondholders are seeking from ERS, a party to the relevant proceedings. The Oversight Board will not independently produce documents which ERS has already produced or agreed to produce. The Oversight Board also objects to this Request to the extent it seeks documents protected by the attorney-client privilege, the attorney work-product immunity, the executive and deliberative-process privileges, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

36

At this time, the Oversight Board stands on its General and Specific Objections, and will
not be producing documents in response to this Request. The Oversight Board is willing to meet
and confer concerning this Request.

*[Remainder of Page Intentionally Left Blank]*

Dated: November 22, 2019          */s/ Margaret A. Dale*
New York, NY

Martin J.Bienenstock (*pro hac vice*)
Brian S.Rosen (*pro hac vice*)
Jeffrey W.Levitan (*pro hac vice*)
Margaret A.Dale (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email: mbienenstock@proskauer. com
Email: brosen@proskauer. com
Email: jlevitan@proskauer. com
Email: mdale@proskauer. com

Luis F.del Valle-Emmanuelli
USDC-PR No.209514
P. O.Box 79897
Carolina, Puerto Rico 00984-9897
Tel.787. 977. 1932
Fax.787. 722. 1932
dvelawoffices@gmail. com

OF COUNSEL FOR
A&S LEGAL STUDIO, PSC
434 Avenida Hostos
San Juan, PR 00918
Tel: (787) 751-6764/ 763-0565
Fax: (787) 763-8260

*Attorneys for the Financial Oversight and Management*
*Board for Puerto Rico, as representative of the*
*Employees Retirement System of the Government of the*
*Commonwealth of Puerto Rico*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 22, 2019, a true and correct copy of

the foregoing was served via electronic mail on the counsel for Defendants identified below.

*/s/ Jennifer L. Roche*
Jennifer L. Roche

Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com

Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
Stephen M. DeGenaro (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W. Washington, DC 20001
Tel. (202) 879-3435
Fax: (202) 626-1700
gstewart@jonesday.com
mpapez@jonesday.com
ssooknanan@jonesday.com
sdegenaro@jonesday.com

Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281 Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

David R. Fox (*pro hac vice*)
JONES DAY
100 High St
Boston, MA 02110
Tel. (617) 449-6925
Fax: (617) 960-3939
drfox@jonesday.com

José C. Sánchez-Castro
jsanchez@lsplawpr.com
Alicia I. Lavergne-Ramírez
alavergne@lsplawpr.com
LÓPEZ SÁNCHEZ & PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

Glenn M. Kurtz (*pro hac vice*)
John K. Cunningham (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas New
York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
gkurtz@whitecase.com
jcunningham@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
Jesse L. Green (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com

Elaine Maldonado-Matías
Albéniz Couret-Fuentes
304 Ponce de León Ave. – Suite 990
San Juan, PR 00918
Telephone: (787) 765-5656
Facsimile: (787) 294-0073
Email: emaldonado@smclawpr.com
Email: acouret@smclawpr.com

Eric A. Schaffer (*pro hac vice*)
Luke A. Sizemore (*pro hac vice*)
REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email: eschaffer@reedsmith.com
Email: lsizemore@reedsmith.com

C. Neil Gray (*pro hac vice*)
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: cgray@reedsmith.com

# EXHIBIT C

  Proskauer Rose LLP   One International Place   Boston, MA 02110-2600

December 13, 2019

William D. Dalsen
Attorney at Law
d 617.526.9429
f 617.526.9899
wdalsen@proskauer.com
www.proskauer.com

**Via Email**

Matthew Papez
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
mpapez@jonesday.com

Re:     *In Re The Employees Retirement System of the Government of the Commonwealth of Puerto Rico (ERS)* – **The Oversight Board's Objections and Responses to Subpoenas For Documents (Ultra Vires Proceedings)**

Dear Matt:

I write in response to your December 9, 2019 letter regarding Responses and Objections to ERS Bondholders' Discovery Requests (Ultra Vires Proceedings). This letter addresses only the issues raised in your letter with respect to the Oversight Board's Responses and Objections to the ERS Bondholders' Subpoena to Produce Documents concerning the Ultra Vires Proceedings (the "Subpoena").[1]

Your letter indicates the ERS Bondholders will defer discussion of the Oversight Board's responses to the Subpoena except as to Request Nos. 1, 5-13, 19, and 25 (the "Disputed Requests"). As such, this letter only addresses the Disputed Requests.

As the Oversight Board has already stated, the Disputed Requests seek documents irrelevant to whether the ERS Bonds were issued *ultra vires* and that, in any event, are duplicative of the materials the ERS Bondholders seek from ERS itself. The ERS Bondholders supply no basis to contest those assertions. The ERS Bondholders also provide no reason to seek discovery concerning the validity of a debtor's purported 2008 bond issuance from the debtor's representative, the members of which were only appointed 10 years later.

Despite those issues, the ERS Bondholders press the Disputed Requests but claim to compromise by narrowing some of them to documents created before the filing of the ERS Title III case (Request Nos. 1, 5, and 10-13) or created before the filing of any Title III case (Request Nos. 6-9). As for the Oversight Board, the ERS Bondholders' proposal would limit Request Nos. 1 and 5-13 to documents created between August 31, 2016 (when the Oversight Board's members were appointed) and, at latest, May 21, 2017 (the ERS Title III petition date).

---

[1] The ERS Bondholders state, via separate letter also dated December 9, 2019, that they will defer discussion of the Oversight Board's responses to the subpoena concerning the Lien Scope Adversary Proceedings. As such, this letter does not address that subpoena.

**Proskauer**》》

Mr. Matthew Papez, Esq.
December 13, 2019
Page 2

The ERS Bondholders' proposed time limitation alone cannot address the substantive problems with the Disputed Requests as written—particularly given the ERS Bondholders have not identified why any Oversight Board documents would be relevant and not duplicative of discovery sought from ERS.  Without waiving any of the Oversight Board's objections, the Oversight Board would point to at least the following substantive issues with the Disputed Requests:

- Request No. 1:  This Request seeks documents concerning ERS's "decision to issue the ERS Bonds," which occurred 10 years before the Oversight Board's members were appointed.  As such, at a minimum, the Oversight Board's view is that further discussion of this Request should be deferred pending discovery obtained from ERS.

- Request No. 5:  This Request seeks documents concerning any borrowings ERS made or contemplated at any time.  The Oversight Board is not presently aware of any borrowings ERS contemplated or made between August 31, 2016 and May 21, 2017.  As such, the Oversight Board believes it has no documents responsive to this Request, and will not search for documents responsive to this Request.

- Request Nos. 6 and 7:  These Requests seek documents "concerning" the constitutional or statutory provisions governing ERS's authority to borrow money or issue bonds, or the legal authority to do so.  We do not understand what bearing documents the Oversight Board has "concerning" the ERS Enabling Act could have upon the Court's interpretation of it, or why this Request—which, as written, appears to request every document that even mentions the ERS Enabling Act—is proper.  The Oversight Board maintains the question of "authority" to borrow money or issue bonds is a question of law for the Court to determine, but is willing to confer with the ERS Bondholders concerning these Requests.

- Request Nos. 8 and 9:  These Requests seek documents concerning whether the ERS Bonds "fell within" ERS's power under certain provisions of the ERS Enabling Act.  The meaning of the ERS Enabling Act is a question of law for the Court to determine.  Even if the ERS Enabling Act were ambiguous (which it is not), we do not understand what bearing the Oversight Board's documents would have upon the Court's interpretation of it.  The Oversight Board maintains the question of whether the ERS Bonds were properly issued pursuant to the ERS Enabling Act is a question of law for the Court to determine, but is willing to confer with the ERS Bondholders concerning these Requests.

- Request Nos. 10, 11, and 12:  These Requests seek documents "concerning" communications about ERS's borrowing authority (though apparently not the communications themselves).  As with Request Nos. 8 and 9, the meaning of the ERS Enabling Act is a question of law; and again, even assuming the ERS Enabling Act were ambiguous (which it is not), we do not understand what bearing documents concerning communications about that in the Oversight Board's possession can have

Proskauer »

Mr. Matthew Papez, Esq.
December 13, 2019
Page 3

upon the Court's statutory interpretation.  The Oversight Board maintains the question of "authority" to borrow money or issue bonds is a question of law for the Court to determine, but is willing to confer with the ERS Bondholders concerning these Requests.

- <u>Request No. 13</u>:   This Request seeks documents concerning whether the Commonwealth authorized the ERS Bonds.  It is unclear what this Request is intended to mean, as governments, including the Commonwealth government, authorize and prohibit acts through public legislation.  What is clear is that this Request, like Request Nos. 6 and 7, seeks every document that "concerns" the ERS Enabling Act, which renders this Request patently overbroad.  The Oversight Board continues to stand on its general and specific objections to this Request, but is willing to confer with the ERS Bondholders concerning it.

- <u>Request No. 19</u>:  This Request seeks documents concerning ERS's contention a violation of the ERS Enabling Act was not harmless.  Any request for that information, whether in the form of requests for production or an interrogatory asking ERS to state the basis for its contention, is appropriately directed to ERS, not its Title III representative.  The Oversight Board continues to stand on its general and specific objections to this Request, but is willing to confer with the ERS Bondholders concerning it.

- <u>Request No. 25</u>:  This Request seeks documents "concerning" evidence any person broke the law in connection with issuing the ERS Bonds (though apparently not the evidence itself).  As you know, the issuance of ERS Bonds occurred in 2008, which was 10 years before the Oversight Board's members were appointed.  As such, like Request No. 1, the Oversight Board's view is that further discussion of this Request should be deferred pending discovery obtained from ERS.

As to your email today (i.e., Friday) at 5:00 p.m. Eastern offering to confer on Monday morning at 10:30 a.m. Eastern / 7:30 a.m. Pacific, we are not available at that time.  We will work to find alternative conference times and propose them under separate cover.

Very truly yours,

William D. Dalsen

Proskauer》

Mr. Matthew Papez, Esq.
December 13, 2019
Page 4

Copies:

Margaret A. Dale, Esq. (via email) (mdale@proskauer.com)
Jennifer Roche, Esq. (via email) (jroche@proskauer.com)
Cathy Steege, Esq. (via email) (csteege@jenner.com)
Madhu Pocha, Esq. (via email) (mpocha@omm.com)
Tristan Axelrod, Esq. (via email) (taxelrod@brownrudnick.com)
Danielle D'Aquila, Esq. (via email) (dd'aquila@brownrudnick.com)
Nicholas Bassett, Esq. (via email) (nicholasbassett@paulhastings.com)