# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF
PUERTO RICO,

    Debtors.

PROMESA
Title III

No. 17 BK 3566-LTS

(Jointly Administered)

---------------------------------------------------------------x

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, ET AL.

                Movants,

        -against-

ANDALUSIAN GLOBAL DESIGNATED ACTIVITY
CO., ET AL.

               Respondents.
---------------------------------------------------------------x


**OPPOSITION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, AS REPRESENTATIVE OF DEBTOR, TO MOTION OF CERTAIN ERS BONDHOLDERS TO COMPEL THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO PROVIDE COMPLETE <u>ANSWERS TO INTERROGATORIES</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1
BACKGROUND ........................................................................................................................... 3
ARGUMENT ................................................................................................................................. 4
I. When ERS "First Learned" of Various Propositions is Irrelevant to Whether the Bondholders Had Notice the Bond Issuance Was *Ultra Vires* ............................................................ 4
   A. Interrogatory No. 1 ..................................................................................................... 4
   B. Interrogatory No. 2 ..................................................................................................... 7
   C. Interrogatory No. 8 ..................................................................................................... 8
   D. Interrogatory No. 11 ................................................................................................. 10
II. ERS Cannot Be Compelled to Provide Specified Substantive Responses Concerning Whether it Can Identify Persons in Response to Interrogatories ............................................. 11
CONCLUSION ............................................................................................................................ 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bramante v. McClain*,
  No. SA-06-CA-0010-WWJ, 2007 WL 102314 (W.D. Tex. Jan. 8, 2007) ..............................14

*Clark v. Berkshire Med. Ctr., Inc.*,
  No. 17-30186-MGM, 2019 WL 78994 (D. Mass. Jan. 2, 2019) .............................................12

*Mancia v. Mayflower Textile Servs. Co.*,
  253 F.R.D. 354 (D. Md. 2008)..................................................................................................13

*Moreno v. DHL Glob. Forwarding*,
  272 F.R.D. 50 (D.P.R. 2011) ....................................................................................................13

**STATUTES**

17 L.P.R.A. § 1752(b)(1) ....................................................................................................................4

19 L.P.R.A. § 451(25).........................................................................................................................5

48 U.S.C. §§ 2101-2241 .....................................................................................................................1

PROMESA § 315(b).............................................................................................................................1

UCC § 8-202(b) ........................................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26...........................................................................................................................6, 8, 12

To the Honorable United States Magistrate Judge Judith G. Dein:

The Financial Oversight and Management Board (the "Oversight Board"), as representative for debtor Employees' Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS" or "Debtor") pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*, codified at 48 U.S.C. §§ 2101-2241 ("PROMESA"), respectfully submits this opposition to the motion of certain groups of ERS bondholders (collectively, the "Bondholders")[2] to compel ERS to answer or supplement answers to certain interrogatories (ECF No. 755 in Case No. 17-3566)[3] (the "Motion" or "Mot.") in accordance with the Court's scheduling order (ECF No. 772).

## INTRODUCTION

1. The Bondholders ask the Court to compel ERS to answer certain interrogatories because, they say, the answers might determine whether the ERS Bonds were issued *ultra vires* or

---

[2] The Bondholders are: Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund II, Inc., Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., Tax-Free Puerto Rico Target Maturity Fund, Inc., UBS IRA Select Growth & Income Puerto Rico Fund, Crown Managed Accounts for and on behalf of Crown/PW SP, LMA SPC for and on behalf of Map 98 Segregated Portfolio, Oceana Master Fund Ltd., Pentwater Merger Arbitrage Master Fund Ltd., and PWCM Master Fund Ltd.

[3] Unless otherwise specified, all citations to ECF docket numbers are to docket numbers in Case No. 17-3566.

whether the Bondholders may rely on a claimed "notice" defense. Both propositions are false. Whether the ERS Bonds were issued *ultra vires* turns on the text of the ERS Enabling Act, which the Court will construe as a matter of law—not on discovery to be obtained in these Actions. As for the Bondholders' claimed "notice" defense, discovery does matter—but not discovery into what *ERS* knew, when it "first learned" it, or the persons with knowledge it could identify. Instead, under the Uniform Commercial Code ("UCC") as enacted in Puerto Rico, what matters is what *the purchasers* of an invalid security—here, the Bondholders—knew or had reason to know.

2. The Motion lays bare the Bondholders' improper approach to discovery in these Actions. On the one hand, they refuse to provide discovery into the facts and circumstances that would show what they had reason to know at the time of purchase or acquisition of the ERS Bonds, facts that are directly relevant to their claimed "notice" defense under the UCC. *See* ECF No. 756. On the other hand, the Bondholders seek to fill that void by pressing ERS for information about when it "first" reached certain legal determinations, none of which can matter under the law, and all of which would require ERS to disclose the substance of protected communications if it provided answers. Further, the Bondholders, despite being told ERS is unable at this time to identify persons with knowledge in response to certain of the interrogatories, ask the Court to order ERS to identify such persons anyway or to say they never can—either of which would improperly compel ERS to *substantively* answer an interrogatory, under oath, in a particular way.

3. The Court should deny the Motion in its entirety.

**BACKGROUND**

4. The Motion arises out of a discovery dispute in connection with challenges to the enforceability of the ERS bonds on grounds that the ERS acted beyond its authority by issuing them (the "Ultra Vires Issue").[4]

5. Specifically, ERS has argued the ERS Bonds were issued *ultra vires* because ERS lacked the statutory authority to issue them under the plain terms of the ERS Enabling Act. *See, e.g.*, ECF No. 5 in Case No. 19-AP-00356. The Bondholders claim that, even if the ERS Bonds were issued *ultra vires* and declared invalid, the ERS Bonds are nevertheless enforceable because they were purchasers for value without notice of that alleged defect (viz. the illegal issuance of ERS Bonds). *See* ECF No. 688 in Case No. 17-bk-03566 at 33.

6. On November 1, 2019, the Bondholders served interrogatories on ERS, including the four interrogatories at issue in the Motion (i.e., Interrogatory Nos. 1, 2, 8, and 11). ECF No. 755-1 in Case No. 17-3566, at 8.

7. On December 3, 2019, ERS objected and responded to the Bondholders' interrogatories. ECF No. 755-1 in Case No. 17-3566, at 22. Among other things, ERS objected to Interrogatory Nos. 1, 2, 8, and 11 on the grounds that the information they sought would not make any fact of consequence relating to the Ultra Vires Issue more or less probable. ECF No. 755-1 at 32, 33, 37, 40.

---

[4] The Ultra Vires Issue was raised in the Unsecured Creditors' Committee's objections to claims of ERS bondholders [17-bk-3283, ECF 5580 and 5586] (the "Creditors' Committee Objections"); the Retiree Committee's objection to claims of ERS bondholders [17-bk-3283, ECF 6482] (the "Retiree Committee Objection"); and in count one of the complaints in each of the ERS clawback adversary proceedings [19-ap-355, 19-ap-356, 19-ap-357, 19-ap-358, 19-ap-359, 19-ap-360 and 19-ap-361].

3

# ARGUMENT

**I.    When ERS "First Learned" of Various Propositions is Irrelevant to Whether the Bondholders Had Notice the Bond Issuance Was *Ultra Vires*.**

**A.    Interrogatory No. 1**

8.    In response to Interrogatory No. 1, ERS reiterated its position that the ERS Bonds were issued *ultra vires* and are null and void because ERS lacked the statutory authority to issue them under the ERS Enabling Act. ECF No. 755-1 at 32. The Bondholders, however, ask this Court to compel ERS to answer part (a)(ii) of Interrogatory No. 1, and identify when ERS "first learned" that "anyone" had made that contention. Specifically, the Bondholders assert—without citation—that under the law, when *ERS* first learned that *anyone* made that contention could "badly undercut ERS's argument that the Bondholders should have known years ago that the ERS Bonds were invalid." Mot. ¶ 23. The Bondholders are not only wrong, but ask the Court both to order discovery that is the *opposite* of what the law says matters.

9.    The Bondholders' argument misconstrues the statute on which they rely for their supposed "notice" defense. The Bondholders say ERS's knowledge is relevant to their "notice" defense to ERS's claims under UCC § 8-202(b) [19 L.P.R.A. § 1752(b)]. That is the opposite of what UCC § 8-202(b) says. Among other things—and on the assumption the Bondholders could satisfy the other elements of that statute—that provision states an invalid security could be enforceable if the Bondholders were "*purchaser[s] for value and without notice* of the particular defect…." *Id.* § 1752(b)(1) (emphasis added).

10.    The plain text of UCC § 8-202(b) therefore provides a potential defense where *the purchaser*—here, the Bondholders—purchased the ERS Bonds for value "and without notice of the particular defect." What anyone else knew, and when they "first learned" it, has no bearing on what *the Bondholders* had notice of when they purchased ERS Bonds. 17 L.P.R.A. § 1752(b)(1).

4

11. The UCC's definition of "notice" likewise makes clear that the only relevant inquiry under UCC § 8-202(b)(1) is what *the Bondholders* knew or had reason to know—not anyone else. As enacted in Puerto Rico, the UCC provides that a person has "notice" of a fact when (1) the person "has actual knowledge of it"; (2) the person "has received a notice or notification of it"; or (3) "from all the facts and circumstances known to [the person] at the time in question [the person] has reason to know that it exists." 19 L.P.R.A. § 451(25). Here, what ERS "learned" and when has nothing to do with whether *the Bondholders* (1) had actual knowledge of any fact, (2) were notified of any fact, or (3) had reason to know the ERS Bonds were *ultra vires* based on all of the facts and circumstances *known to the Bondholders* at the relevant time.[5]

12. The Bondholders attempt to flip UCC § 8-202(b)(1) on its head to compel discovery from ERS, while simultaneously denying the Committees and Government Parties—and ultimately, the Court—information relevant to the defense they assert. On the one hand, the Bondholders claim—not only without citation but, as demonstrated above, without basis—that when ERS, rather than the Bondholders, first learned "anyone" contended the ERS Bonds were issued without statutory authority is what matters. On the other hand, the Bondholders refuse to provide the documents and communications that show what they—the *purchasers*, the persons who need to be "without notice" to assert UCC § 8-202(b)(1)—knew or had reason to know under all the facts and circumstances available to them that the ERS Bonds were *ultra vires*. *See* ECF No. 756 (Committees and Government Parties' Motion to Compel). This "pincer" strategy is designed to deprive the parties and the Court of the information the law says is relevant by its plain

---

[5] As the above makes clear, and contrary to the Bondholders' contention (Mot. ¶ 17), UCC § 8-202(b) does not provide that notice can only exist where "a reasonable investor" has been "placed on notice." Instead, the Bondholders only need to have "reason to know" the ERS Bonds were *ultra vires* to lose their ability to rely on UCC § 8-202(b). At a minimum, the publicly available text of the ERS Enabling Act put the Bondholders on notice of the defect.

5

language, and to fill the void with information that cannot, as a matter of law, bear upon any fact of consequence in the case. The Court should not allow it.

13. Nor can the Bondholders rely on their unsupported statement that an answer to part (a)(ii) of Interrogatory No. 1 "would obviously be relevant to the Bondholders' unjust enrichment and laches arguments, among other issues." Mot. ¶ 23. Despite the "extensive meet-and-confer teleconferences" between the parties, Mot. ¶ 15, the Bondholders have never explained why what ERS heard about what *anyone*, anywhere, at any time, thought about the ERS Enabling Act could matter as a matter of law. Further, the Bondholders have never explained how their claimed defenses could be used, in effect, to ratify judicially an act the Puerto Rico Legislature did not authorize. The Bondholders' throwaway references to affirmative defenses and claims are not a panacea for their failure to identify—during the conference process, and now before the Court— why part (a)(ii) of Interrogatory No. 1 bears upon any fact of consequence in the case.

14. In any event, part (a)(ii) of Interrogatory No. 1 is improper and disproportionate under Rule 26. The plain language of part (a)(ii)—which the Bondholders have never sought to limit—asks the impossible: to turn ERS upside down, on an expedited schedule, to discover when it *first* heard *anyone* made a legal contention that the ERS Enabling Act did not provide the statutory authority to issue the ERS Bonds. In effect, the Bondholders ask ERS to review 12 years of documents and have someone from its current staff verify, under oath, when ERS "first learned" that "anyone" during those 12 years had made a legal contention about the ERS Bonds. Even if that were feasible (which it is not, particularly given multiple changes in administrations during the past 12 years), and even if an answer to the Bondholders' request could bear on facts of consequence in this case (which, again, it cannot), the value knowing when ERS first heard anyone, anywhere, at any time, made a legal contention about the ERS Bonds is miniscule compared to the

6

effort it would take to provide an answer a witness could verify under oath. Further, the impossibility of fulfilling the Bondholders' request makes clear that part (a)(ii) is an improper subject for an interrogatory, and should instead be the subject of document discovery to the extent the answer matters at all.

    **B.    Interrogatory No. 2**

15. As relevant here,[6] the Bondholders ask ERS to state when it "first determined that, if the 2008 issuances of bonds by ERS were ultra vires or null and void, You and/or ERS [sic] would allegedly have grounds to avoid and recover payments made with respect to those bonds." ECF No. 755-1 at 33. The Bondholders again claim—in summary fashion, and without citation or explanation—the answer to that question would "obviously" bear on their defenses. Mot. ¶ 23. The Bondholders, again, are wrong.

16. As noted above, when ERS "determined" anything has no bearing on whether the Bondholders were without notice the ERS Bonds were *ultra vires* under UCC § 8-202(b). Those same arguments apply with equal force to Interrogatory No. 2.

17. Beyond that, when ERS made a *legal determination* that it could seek certain specific relief if some other condition were true has no bearing on any fact of consequence in this case. The Bondholders ask ERS when it made a hypothetical determination based on a contingency: "*if* the 2008 issuances of bonds by ERS were *ultra vires* or null and void," then ERS "would allegedly have grounds to avoid and recover payments made with respect to those bonds." ECF No. 755-1 at 33 (first emphasis added). Even putting aside privilege issues, that academic question has no bearing on the Bondholders' claims and defenses, and the Bondholders supply no authority, and no reason, why it could.

---

[6] As noted below, Interrogatory No. 2 is wholly objectionable on additional independent grounds.

7

18. Independently of its irrelevance, the burden of identifying when ERS "first determined" that a hypothetical, contingent, legal determination was true is massive in comparison to the non-existent value of that information. Once again, the Bondholders apparently would require ERS to review 12 years of documents—including, specifically, communications with its in-house and outside counsel—to figure out when it posited and answered a hypothetical for the first time. It is plain that Interrogatory No. 2 exceeds the permissible scope of discovery under Rule 26(b)(1).

19. And, moreover, Interrogatory No. 2 on its face requests information about ERS's legal work and communications with its lawyers that not even a privilege log would contain. For example, under Rule 26(b)(5), ERS could not be compelled to describe an email about this subject "Email from counsel determining that, if ERS Bonds are *ultra vires*, ERS may avoid and recover payments," as such a description would result in "revealing information itself privileged or protected[.]" Fed. R. Civ. P. 26(b)(5).

20. Interrogatory No. 2 therefore seeks to circumvent any privileges, protections, and immunities—and to exceed what the Federal Rules of Civil Procedure require ERS to do[7]—by asking ERS to reveal the substance of protected documents and communications. As there is no way to answer Interrogatory No. 2 without revealing the contents of protected documents and communications, ERS should not be compelled to answer it in any respect.

**C.      Interrogatory No. 8**

21. The Bondholders begin this interrogatory by asking a question ERS can, and did, answer: whether ERS contends the statement in Interrogatory No. 7 is wrong. ECF No. 755-1 at

---

[7] ERS objected to the Interrogatories to the extent they purported to impose duties inconsistent with, not authorized by, or that exceeded what the Federal Rules of Civil Procedure (or other applicable governing rules) require. ECF No. 755-1 at 26-27.

8

37-38. ERS interpreted the "statement" at issue to be a quoted excerpt from the ERS Bond Resolution (as opposed to the entire text of the interrogatory),[8] and answered that the statement was incorrect. ECF No. 755-1 at 38. The Bondholders, however, now ask ERS (among other things) to identify when it determined that statement was false, and seek to compel an answer to that part of Interrogatory No. 8. The Court should deny the Bondholders' request.

22. As a threshold issue, Interrogatory No. 8 is poorly drafted and makes little sense on its face, but ERS tried to answer it anyway. It asks when ERS "first determined" that "the statement in Interrogatory No. 7 is false," ECF No. 755-1 at 37, not anything else. ERS did not receive Interrogatory No. 7 until the Bondholders served it on November 1, 2019, ECF No. 755-1 at 15, and could not evaluate any "statement in Interrogatory No. 7" until that time. ERS nevertheless answered what it could answer: ERS contends the proposition quoted in Interrogatory No. 7 is incorrect. ECF No. 755-1 at 38. The Bondholders apparently want to compel ERS to answer a different question—namely, when ERS concluded a statement in the ERS Bond Resolution was false, rather than when a "statement in Interrogatory No. 7" was false—and in effect ask the Court to rewrite their interrogatory and compel a response to it as rewritten.

23. Poor drafting aside, the answer to the question the Bondholders apparently wanted to ask—when ERS concluded a statement in the ERS Bond Resolution was false—would have no bearing on any fact of consequence in these Actions. As explained above, when ERS "determined" anything has no bearing on whether the Bondholders were without notice the ERS Bonds were *ultra vires* under UCC § 8-202(b). Similarly, as observed above, the Bondholders' throwaway

---

[8] The quoted statement from Interrogatory No. 7 reads: "[t]he System is duly authorized under the Act to create and issue the Bonds and to adopt this Resolution and to create a security interest on the Pledged Property in the manner and to the extent provided in this Resolution." ECF No. 755-1 at 36.

9

reference to laches, unjust enrichment, and "other issues" does not show, "obviously" or otherwise (Mot. ¶ 23), how an answer to this part of Interrogatory No. 8 would matter. Further, as with Interrogatory No. 2, the burden of reviewing 12 years of documents to see when ERS "first determined" a statement was false is massive compared to the non-existent benefit of the information, particularly to the extent such answer would need to be verified under oath. And, as with Interrogatory No. 2, this interrogatory on its face seeks to impinge upon ERS's privileges, protections, and immunities—and to exceed what the Federal Rules of Civil Procedure permit—by demanding information ERS could not be compelled to supply in a privilege log, as the answer to the interrogatory would reveal the contents of protected documents and communications.

### D. Interrogatory No. 11

24. The Bondholders asked ERS whether it contends any person "acted contrary to any law or rule in connection with the issuance of the ERS Bonds" and, as relevant here, asks ERS to "state when [ERS] learned of the violation[.]" ECF No. 755-1 at 39-40. In response, ERS did not identify any such persons because, as ERS has already explained to the Bondholders, it has no one to identify at this time. As ERS has no such persons to identify at this time, it cannot, by definition, identify "when" ERS contends such unknown persons committed unknown "act[s] contrary to any law or rule."

25. In any event, ERS should not be compelled to provide any further answer to Interrogatory No. 11 for two additional reasons.

26. *First*, the information sought by Interrogatory No. 11 cannot make any fact of consequence relating to the Ultra Vires Issue more or less probable. Whether any person "acted contrary to law" has no bearing on whether the ERS Bonds were issued *ultra vires* because, as noted above, that question turns on the text of the ERS Enabling Act. ERS has not claimed the ERS Bonds are *ultra vires* as the result of particular acts of particular persons that were "contrary

10

to law"; instead, ERS claims there was no statutory authority to issue the ERS Bonds. Put another way, the Bondholders ask ERS who "broke the law," whereas ERS's contention is not that the ERS Bonds are *ultra vires* because someone "broke the law" but because the ERS Bonds were not authorized by the ERS Enabling Act. As such, as ERS answered (ECF No. 755-1 at 40) and has reiterated to the Bondholders (*see, e.g.*, ECF No. 755-1 at 66), ERS does not have information responsive to this Interrogatory as to anyone it contends "broke the law" at this time.

27. In any event, when ERS "first learned" anyone "acted contrary to law" has no bearing on the Bondholders' claimed "notice" argument under UCC § 8-202(b); instead, the relevant question is what *the Bondholders* knew or had reason to know. Additionally, when ERS "first learned" anyone acted "contrary to law" has no apparent bearing on the Bondholders' other affirmative defenses—or if it does, the Bondholders have not told ERS why during the conference process, and have not told the Court why in the Motion. As such, Interrogatory No. 11 seeks information patently irrelevant to these Actions.

28. *Second*, regardless of relevance, Interrogatory No. 11 also seeks privileged information—namely, the substance of legal determinations ERS made concerning when persons acted "contrary to law" and all the supporting analysis. Again, the information sought exceeds what ERS could be compelled to provide in a privilege log, as the information sought necessarily would disclose the substance of protected communications.

II. **ERS Cannot Be Compelled to Provide Specified Substantive Responses Concerning Whether it Can Identify Persons in Response to Interrogatories**

29. The Bondholders demand that ERS either identify persons with knowledge in response to Interrogatory Nos. 1, 2, 8, and 11, or state there are no such persons. Mot. at 9. Specifically, the Bondholders contend ERS must identify such persons because the Bondholders claim (1) such persons would have "knowledge of ERS's core allegations in these proceedings,"

and (2) identification interrogatories are "standard interrogatories" that must be answered in all circumstances because they "plainly" seek relevant information. *Id.* Those propositions are overreaching and wrong for at least three reasons.

30. *First*, as a threshold matter, the Bondholders' request that ERS either identify persons or state it cannot do so is improper because it seeks to compel ERS to answer *substantively* in a way its representatives cannot verify under oath. Presently, ERS has no one to identify in response to Interrogatory Nos. 1, 2, 8, and 11, as ERS told the Bondholders before they filed the Motion. If ERS becomes aware of someone to identify, it can supplement its responses, if appropriate to do so, under Rule 26(e).[9] In the interim, however, ERS cannot be compelled to say—and its representative cannot be compelled to attest—that it *definitively* cannot identify anyone when its investigation is ongoing and the discovery process has only just begun.

31. *Second*, there is no such thing as a "standard interrogatory" a party may propound over any and all objections, as the Bondholders appear to contend. The Bondholders' reliance on *Clark* for that proposition is misplaced, not only because its remark about "a standard interrogatory" was *dicta*, but because the court there was addressing different issues (viz. collective responses rather than individual responses, and improper incorporation of initial disclosures to identify persons with knowledge). *See Clark v. Berkshire Med. Ctr., Inc.*, No. 17-30186-MGM, 2019 WL 78994, at *2 (D. Mass. Jan. 2, 2019). Put simply, the Bondholders cannot rely on *dicta* from a single, inapposite, unpublished discovery ruling to make up a new discovery rule and compel ERS to provide supplemental answers.

---

[9] For the reasons stated herein, however, ERS should not be compelled to do so given the total irrelevance of the answers to Interrogatory Nos. 1, 2, 8, and 11 to any fact of consequence concerning the Ultra Vires Issue.

12

32. *Third*, in any event, ERS should not be compelled to identify any persons in response to Interrogatory Nos. 1, 2, 8, and 11 because, in context of each of those interrogatories, the identity of persons does not bear upon any fact of consequence in these cases.

33. Contrary to the Bondholders' contention (Mot. ¶ 20), none of Interrogatory Nos. 1, 2, 8, and 11 concern *ERS's* "core allegations" relating to the Ultra Vires Issue. As ERS has reiterated, the ERS Bond issuance was *ultra vires* because ERS lacked the statutory authority to issue the ERS Bonds as a matter of law. As the plain language of the ERS Enabling Act shows ERS lacked that authority, the Ultra Vires Issue is a question of law for the Court.

34. Nor would the identification of persons in response to Interrogatory Nos. 1, 2, 8, or 11 support any of *the Bondholders'* stated claims or defenses. As noted above, what anyone other than the Bondholders had notice of cannot bear on their "notice" defense under UCC § 8-202, and the Bondholders' total failure to tie any of Interrogatory Nos. 1, 2, 8, and 11 to unjust enrichment, laches, or "other issues" (Mot. ¶ 23) during the conference process and in the Motion show these questions have no actual bearing on the Ultra Vires Issue.

35. The Bondholders' case citations (Mot. ¶¶ 19-20) are all inapposite. As noted above, *Clark* has no bearing on the objections and issues in this case. The *Moreno* case is inapposite, as the Bondholders cite it only for the generic proposition of law that objections to interrogatories must be specific, Mot. ¶ 20, but make no effort to compare ERS's specific objections to the cursory objections at issue in *Moreno*. *See Moreno v. DHL Glob. Forwarding*, 272 F.R.D. 50, 55-56 (D.P.R. 2011). The *Mancia* case is likewise inapposite, as it stands only for the proposition objections to overbreadth and burden require particularized facts. *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008). *Bramante*, on the other hand—to the extent a 13-year-old unreported decision from the Western District of Texas is persuasive authority—supports

13

ERS's position: each of Interrogatory Nos. 1, 2, 8, and 11 request on their face information that would far exceed any information ERS could be compelled to produce on a privilege log concerning when ERS made certain legal determinations. As the interrogatories themselves supply the specific basis for asserting a privilege objection, such objections are proper. *See Bramante v. McClain*, No. SA-06-CA-0010-WWJ, 2007 WL 102314, at *1 (W.D. Tex. Jan. 8, 2007).

## CONCLUSION

36. For the foregoing reasons, the Court should deny the Motion in its entirety.

*[Remainder of Page Intentionally Left Blank]*

Dated: January 10, 2020  
New York, NY

/s/ Margaret A. Dale

Martin J. Bienenstock (*pro hac vice*)  
Brian S. Rosen (*pro hac vice*)  
Jeffrey W. Levitan (*pro hac vice*)  
Margaret A. Dale (*pro hac vice*)  
**PROSKAUER ROSE LLP**  
Eleven Times Square  
New York, NY 10036  
Tel: (212) 969-3000  
Fax: (212) 969-2900  
Email: mbienenstock@proskauer.com  
Email: brosen@proskauer.com  
Email: jlevitan@proskauer.com  
Email: mdale@proskauer.com

*Attorneys for the Financial Oversight and Management Board for Puerto Rico as representative for the Debtors*

/s/ Luis F. del Valle-Emmanuelli

Luis F. del Valle-Emmanuelli  
USDC-PR No. 209514  
P.O. Box 79897  
Carolina, Puerto Rico 00984-9897  
Tel. 787.977.1932  
Fax. 787.722.1932  
dvelawoffices@gmail.com

OF COUNSEL FOR A&S LEGAL STUDIO, PSC  
434 Avenida Hostos  
San Juan, PR 00918  
Tel: (787) 751-6764/ 763-0565  
Fax: (787) 763-8260

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico*

15

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 10, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

                                                */s/ Luis F. del Valle-Emmanuelli*
                                                Luis F. del Valle-Emmanuelli