UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x
: 
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.*, : (Jointly Administered)
:
Debtors.[1] :
------------------------------------------------------------------------ x
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
as representative of : Case No. 17-BK-3567 (LTS)
:
THE PUERTO RICO HIGHWAYS AND : (Jointly Administered)
TRANSPORTATION AUTHORITY, :
:
Debtor. :
------------------------------------------------------------------------ x

**LIMITED RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO MOTIONS FOR RELIEF FROM AUTOMATIC STAY FILED BY FDR 1,500
CORP., S.E. [DOCKET NO. 9664] AND CENTRO DE ORIENTACIÓN Y AYUDA
PSIQUIÁTRICA, INC. [DOCKET NO. 9677]**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee")[2] hereby files this limited response (the "Limited Response") to the motions for relief from the automatic stay filed by FDR 1,500 Corp., SE [Docket No. 9664] and Centro de Orientación y Ayuda Psiquiátrica, Inc. [Docket No. 9677] (together, the "Stay Relief Motions"). In support of this Limited Response, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. To date, hundreds of motions seeking to lift the automatic stay have been filed in these Title III cases. In order to minimize costs to the Debtors, the Committee, in all but a few instances, has not filed responses or objections to such motions, instead deferring to AAFAF and/or the Oversight Board to handle such motions. However, in light of a number of recent stay relief motions which raise case-wide issues, the Committee files this Limited Response to address two specific concerns regarding the scope of issues to be addressed in connection with stay relief motions. In particular, the Committee submits that questions regarding the dischargeability of so-called "constitutional claims" and the ownership of allegedly segregated funds should not be determined in the narrow context of stay relief motions, including because these questions have far-reaching implications for all the Debtors in these Title III cases.

2. To the extent the Court is nevertheless inclined to determine, at this time and in the procedural context of lift stay motions, the dischargeability of constitutional claims or the ownership of certain funds, the Committee requests that the Court establish a separate briefing schedule on these matters so that all affected parties may be heard.

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

2

## BACKGROUND

3.      On December 30, 2019, FDR 1,500 Corp. ("FDR") moved for entry of an order modifying the automatic stay to allow the continued adjudication of an eminent domain action filed by HTA against real estate owned by FDR that is pending before the Puerto Rico Court of First Instance, Superior Court of San Juan (the "Local Court") [Docket No. 9664] (the "FDR Stay Relief Motion"). FDR states that the issues pending adjudication in the eminent domain action include (i) just compensation and damages in connection with the expropriation of real property and (ii) the withdrawal of funds deposited by HTA with the Local Court for the benefit of FDR. FDR further alleges, among other things, that the judgment that may arise in the eminent domain action will not be subject to a discharge because it "would constitute a money award . . . for a takings action under the Fifth Amendment of the U.S. Constitution."[3]

4.      On January 1, 2020, Centro de Orientación y Ayuda Psiquiátrica, Inc. ("COPA") filed a motion requesting that the Court modify the automatic stay to allow COPA to pursue its civil action before the Local Court in connection with amounts allegedly owed in connection with services provided by COPA pursuant to a contract with the Family Department of the Commonwealth of Puerto Rico [Docket No. 9677] (the "COPA Stay Relief Motion"). COPA asserts, among other things, that payment for the services it has provided is to be made from federal funds held in segregated accounts pursuant to the federal Child Abuse Prevention and Treatment Ac, which funds COPA alleges "are destined exclusively to provide the services contract to COPA."[4] COPA also asserts that its request for relief from the automatic stay is supported by section 7 of PROMESA (which provides that PROMESA shall not be construed as impairing or relieving the Debtors of compliance with certain federal laws or programs) and

---

[3]    FDR Stay Relief Motion ¶ 15.g.
[4]    COPA Stay Relief Motion ¶ 10.

section 304(h) of PROMESA (which provides that PROMESA not be construed to permit the discharge of obligations arising under federal police or regulatory laws).

**LIMITED RESPONSE TO FDR STAY RELIEF MOTION
AND COPA STAY RELIEF MOTION**

5. As noted, the Committee has generally not become involved in the numerous stay relief requests filed in these Title III cases and has opted instead, in the interest of preserving the Debtors' limited resources, to defer handling of these matters to AAFAF and/or the Oversight Board. Nor does the Committee intend to take a position in connection with the Stay Relief Motions, except to raise two larger concerns.

6. <u>First</u>, the question whether a claim based on a constitutional violation, such as a violation of the Takings Clause, is non-dischargeable (as asserted in the FDR Stay Relief Motion) should not be addressed within the narrow context of a stay relief request.[5] *See, e.g.*, *In re Neilsen*, 443 B.R. 718, 720 (Bankr. W.D. Va. 2011) (denying motion to reconsider denial of lift stay motion and explaining that "nondischargeability must be determined through an adversary proceeding" and, therefore, "Movant could not seek non-dischargeability through a motion"). Indeed, the only case relied upon by FDR in support of its argument that its purported takings claim is non-dischargeable, *i.e.*, *In re City of Detroit*, 524 B.R. 147, 270 (Bankr. E.D. Mich. 2014), addressed the dischargeability question in the context of plan confirmation, not a request for relief from the automatic stay.[6]

---

[5] The Committee raised the same point in August 2017 in response to a different stay relief motion. *See Limited Joinder of Official Committee of Unsecured Creditors to Objection of Puerto Rico Highways and Transportation Authority to Motion for Relief from Automatic Stay Filed By South Parcel of Puerto Rico, S.E. [ECF No. 180]* [Docket No. 851]. The Court did not rule on that stay relief motion as it was subsequently withdrawn by the movant. *See* Docket No. 993.

[6] The Committee further notes that *City of Detroit* is by no means the final word on the dischargeability of constitutional claims. *See In re City of Stockton, California*, 909 F.3d 1256, 1266, 1268 (9th Cir. 2018) (rejecting notion that takings claim exempted unsecured claim from reorganization, and noting, among other things, that "if purported property interest is, in reality, just a contractual or statutory right for monetary relief,

4

7. Moreover, as this Court is well aware, numerous creditors in these Title III cases have asserted, in adversary proceedings and elsewhere, that certain actions taken by the Puerto Rico government or the Oversight Board in connection with Puerto Rico's restructuring efforts violate the Takings, Contract, and/or Due Process Clauses of the U.S. Constitution. Among these pending adversary proceedings are:

- *Peaje Investments LLC v. Puerto Rico Highways & Transportation Authority, et al.*, Adv. Pro. Nos. 17-00151/17-00152 (alleging diversion of HTA toll revenues violated the Takings and Contracts Clauses of the U.S. Constitution);

- *Altair Global Credit Opportunities Fund (A), LLC v. Commonwealth of Puerto Rico, et al.,* Adv. Pro. Nos. 17-00219/17-00220 (alleging Joint Resolution 188 violated the Takings and Contracts Clauses of the U.S. Constitution);

- *Cooperativa de Ahorro y Crédito Abraham Rosa, et al. v. Commonwealth of Puerto Rico, et al.*, Adv. Pro. No. 18-00028 (alleging appropriation of moneys of Cooperatives violated, among other things, the Takings Clause of the U.S. Constitution);

- *Assured Guaranty Corp. v. Commonwealth of Puerto Rico,* Adv. Pro. No. 18-00059 (alleging revised fiscal plan violates, among other things, the Contracts, Takings, and Due Process Clauses of the U.S. Constitution); and

- *American Federation of Teachers v. Commonwealth of Puerto Rico*, Adv. Pro. No. 18-00134 (alleging that the Commonwealth violated the Takings Clause by misappropriating employee property without just compensation). [7]

8. Clearly, a ruling that a claim based on a constitutional violation is non-dischargeable would have far-reaching implications for all the Debtors in these Title III cases, and, accordingly, any such ruling should only be made after all parties in interest have had the opportunity to fully brief this important issue.

---

then the debt can be adjusted in bankruptcy," and that "constitutionally based lawsuits seeking money damages . . . are routinely adjusted in bankruptcy").

[7] *See also Ambac Assurance Corporation's Motion and Memorandum of Law in Support of Its Motion Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds*, [Docket No. 7176] (alleging taking of property by Commonwealth in connection with "clawback" of rum tax revenue).

9. <u>Second</u>, the Stay Relief Motions also raise issues related to the ownership of, or the Debtors' rights with respect to, federal funds allegedly held in segregated accounts (in the case of the COPA Stay Relief Motion) or certain funds deposited with the Local Court (in the case of the FDR Stay Relief Motion). The Committee does not take a position with respect to the granting or denial of the Stay Relief Motions, but notes that—regardless of their outcome—they should "not involve a full adjudication on the merits of claims, defenses, or counterclaims," such as questions of ownership or other, bankruptcy specific, claims. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 32 (1st Cir. 1994) (preference action under section 547 of the Bankruptcy Code was still available even after stay was lifted); *see also In re Smith*, No. 12-20458, 2015 WL 1262776, at *2 (Bankr. D. Me. Mar. 17, 2015) (citing *Grella* and clarifying that limited relief from stay was not "a determination that Ms. Smith has any separate [ownership in property at issue] as relief from stay hearing are not designed to determine" merits of claims, defenses, or counterclaims).[8]

10. Accordingly, the Committee believes that the questions of ownership of any specific funds, and in particular questions relating to the Debtors' ownership of, or property interest in, federal funds (including questions regarding the segregation and tracing of such funds), should not be determined in the context of the Lift Stay Motions. To the extent the Court is nevertheless inclined to address, at this time, the dischargeability of constitutional claims or

---

[8] The Committee notes that the First Circuit has explained that even though they need not be fully resolved at the lift stay stage, issues that go to the heart of the movant's asserted interest are certainly relevant to the bankruptcy court's analysis. *See Grella*, 42 F.3d at 34 ("Certainly, a court may take into account any matter that bears directly on the debtor's equity, or that clearly refutes a creditor's claim to the property. For example, if a trustee raises a defense to a creditor's claim at the relief from stay hearing, the court need not ignore this defense, but may consider it when deciding whether to lift the stay."). These issues are also relevant to the form and scope of relief a court may fashion (if inclined to lift the stay). *See In re Montgomery*, 262 B.R. 772, 775 (B.A.P. 8th Cir. 2001) ("Evidence of the alleged infirmity of the movant's secured position or ownership is relevant in a procedural sense, as well; it may aid the fashioning of relief that is best balanced among the competing interests . . . .").

the ownership of certain funds, the Committee requests that the Court establish a separate briefing schedule on these matters so that all affected parties may be heard.[9]

[*Remainder of page intentionally left blank.*]

---

[9] *See In re Inofin, Inc.*, 455 B.R. 19, 23 (Bankr. D. Mass. 2011) (resolving issues of ownership raised in lift stay motion only after parties "extensively briefed the issues" and court "conducted an evidentiary hearing" at which "six witnesses testified and 38 exhibits were accepted into evidence").

WHEREFORE, the Committee requests that the Court not determine, in the context of any particular stay relief motion, the dischargeability of constitutional claims and the ownership of allegedly segregated funds.

Dated: January 13, 2020

By: */s/ Luc A. Despins*

**PAUL HASTINGS LLP**
Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: */s/ Juan J. Casillas Ayala*

**CASILLAS, SANTIAGO & TORRES LLC**
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*