Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of THE COMMONWEALTH OF PUERTO RICO, *et al.* | No. 17 BK 3283-LTS |
| | (Jointly Administered) |
| Debtors. [1] | |

## CONSUL-TECH CARIBE INC.'S
## MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM[2]

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] As per the Tenth Amended Case Management Order, Dkt. 8027-1, the present motion was due on January 7, 2020. However, on January 8, 2020 the Clerk for the District Court of Puerto Rico issued Order No 20-03 extending all deadlines between January 7, 2020 and January 10, 2020 until January 13, 2020. See, https://www.prd.uscourts.gov/sites/default/files/documents/notices/Notice%2020-03%20Emergency%20Not%20Extending%20Time%201.8.pdf.

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

**Federal Statutes**

11 U.S.C. §105(a) ............................................................................................................ 17
Bankruptcy Code section 503(a), 11 U.S.C. § 503 ...................................................... 16
Bankruptcy Code section 503(b)(1)(A), 11 U.S.C. § 503 ........................................... 16
Bankruptcy Code section 507(a)(2), 11 U.S.C. § 507 ................................................. 17
Bankruptcy Code sections 503 and 507, 11 U.S.C. §503, § 507 ................................. 18
Section 301 of PROMESA, 48 U.S.C. § 2161 ............................................................. 16
Title III, section 304(a) of the Puerto Rico Oversight, Management, and Economic Stability Act,
    48 U.S.C. § 2164............................................................................................................. 4

**Local Statutes**

Act No. 211 of August 2, 1999 ..................................................................................... 10
Article 1206 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3371 ................................. 8
Article 1210 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3375 ................................. 8
Article 1213 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3391 ................................. 8

**Federal Cases**

*Hemingway Transp., Inc.*, 954 F.2d 1, 5 (1st Cir. 1991). ........................................... 16
*In re Babbs*, 265 B.R. 35 (Bankr. S.D.N.Y. 2001) ..................................................... 17
*In re Enron Corp.*, 279 B.R. 695 (Bankr. S.D.N.Y. 2002). ........................................ 17
*In re Garden Ridge Corp.*, 323 B.R. 136 (Bankr. D. Del. 2005 ................................. 16
*In re HQ Global Holdings, Inc.*, 282 B.R. 169 (Bankr. D. Del. 2002) ....................... 16
*In re Rare Coin Galleries, Inc.*, 72 B.R. 415 (Bankr. D. Mass. 1987)........................ 16
*Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d
    1132 (2d Cir. 1994) ....................................................................................................... 17

**Local Cases**

*López Tristani v. Maldonado*, 168 D.P.R. 838 (2006).................................................. 8
*Municipio de San Juan v. Professional Research*, 171 D.P.R. 219 (2007) ................. 8
*Pérez Rosa v. Morales*, 172 D.P.R. 216 (2007).......................................................... 8
*Sagardía de Jesús v. Hospital*, 177 D.P.R. 484 (2009) .............................................. 8

**Other Authorities**

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

Executive Order 2017-047 ................................................................................................................11
Executive Order 2017-053 ...........................................................................................................8, 9, 11

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

TO THE HONORABLE LAURA TAYLOR SWAIN,
UNITED STATES DISTRICT JUDGE:

COMES NOW Consul-Tech Caribe, Inc. ("Consul-Tech" or "Contractor"), represented by the undersigned attorneys, and in support of its motion for allowance of payment of its administrative expenses claims, very respectfully avers and prays as follows:

## PRELIMINARY STATEMENT

1.  Following the aftermath of Hurricanes Irma and Maria, and pursuant to its obligations under the Contract for Professional Services, Number 2018-000081, and its amendments, Consul-Tech rendered substantial technical and consulting services for several major state agencies and public corporations throughout the Island. Consul-Tech performed this work on an emergency basis as part of Puerto Rico's initial recovery efforts.

2.  The Contract for Professional Services ("Contract") under which Consul-Tech provided services, was signed by the Executive Director of the Puerto Rico Emergency Management Agency ("AEMEAD", for its Spanish acronym), who was, at the time, the designated Governor Authorized Representative ("GAR")[3].

3.  Since May 3, 2017, the Commonwealth of Puerto Rico ("Commonwealth")[4] has been the subject of a voluntary petition for relief pursuant to Title III, section 304(a) of the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2164.

---

[3] The Contract provided that "AEMEAD was designated by the Governor of Puerto Rico as the Governor's Authorized Representative (GAR), which has the power to execute, on behalf of the Government of Puerto Rico (hereinafter, the "Government", all necessary documents for disaster assistance and to administer all Federal disaster assistance programs on behalf of the Government".

[4] The terms "Commonwealth" and "Government" are used interchangeably throughout the motion.

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

4. On September 26, 2017, the Executive Director of AEMEAD, as the designated GAR, and Consul-Tech executed a post-petition indefinite delivery/indefinite quantity Contract under which Consul-Tech would be available to provide the Government consulting and technical services, "on an as needed basis." Contract, ¶FIRST.

5. The Commonwealth and Consul-Tech entered into an initial $800,000.00 post-petition Contract. Through four amendments, at the request of the Commonwealth, the contract amount was eventually increased to $16.4 million.

6. Through enormous effort and expense, and under extremely difficult circumstances, Consul-Tech successfully complied with its obligations under the Contract by providing technical assistance to more than 20 government agencies, and preparing over 300 project worksheets to support requests for federal disaster assistance. These worksheets demonstrated the potential for Puerto Rico to receive in excess of $2 billion from the Federal Government to support recovery efforts. Developing those worksheets required extraordinary skill and effort.

7. In contrast to Consul-Tech's dauntless efforts to comply with its contractual commitments, the Government has not reciprocated. Consul-Tech satisfactorily completed the works on December 6, 2017, yet invoices in excess of $5,120,772.50 remain unpaid.

8. Consul-Tech has patiently and diligently sought from the Government of Puerto Rico ("Government") the payments to which it is entitled, but payment has not been forthcoming.

9. Consul-Tech hereby requests that this Honorable Court enter an order (a) allowing an unpaid and outstanding balance of $5,120,772.50 to Consul-Tech as a post-petition administrative expense, and (b) directing the Commonwealth to pay $5,120,772.50 in full the first business day after it is allowed.

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

## FACTUAL BACKGROUND

10. On May 9, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") on behalf of the Commonwealth of Puerto Rico ("Puerto Rico," collectively the "Debtors") filed a voluntary petition for relief, pursuant to section 304(a) of PROMESA.

11. After the Petition Date, on September 6 and September 20, 2017, Puerto Rico was hit by Hurricanes Irma and Maria causing severe damages to infrastructure throughout the island. The Government, through its GAR, contracted with Consul-Tech and others to aid in the assessment and restoration of the damages caused by the devastating hurricanes.

12. Soon after Hurricane Maria hit the island, the Government, through AEMEAD's Executive Director and designated GAR, engaged in discussions with Consul-Tech for the purposes of Consul-Tech providing professional services to assist AEMEAD and other government agencies with damage assessment and initial recovery efforts.

### A. The Contract

13. On September 19, 2017, as part of its recovery efforts, the Government requested that Consul-Tech provide the following services: "identification, formulation, estimation, preparation, and submission of emergency work project worksheets" for 20 major state agencies and public corporations. The preparation of "project worksheets" is an important step to secure funding under FEMA's public assistance program to carry out emergency protective measures, such as removing debris and conducting inspections for building integrity. These worksheets identify the eligible scope of work and estimate the costs.

14. Pursuant to said discussions, on September 26, 2017, AEMEAD and Consul-Tech executed an indefinite delivery indefinite quantity Contract under which Consul-Tech would be available to

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

provide the Government consulting and technical services, "on an as needed basis." Contract, ¶FIRST.

15. As per the Contract, "AEMEAD was designated by the Governor of Puerto Rico as the Governor's Authorized Representative (GAR), which has the power to execute, on behalf of the Government of Puerto Rico (hereinafter, the "Government"), all necessary documents for disaster assistance and to administer all Federal disaster assistance programs on behalf of the Government". Contract, at p. 1.

16. The Contract recognized that Consul-Tech had demonstrated "experience and expertise in the areas in which services would be required." Contract, at p. 1.

17. As per the Contract, "[w]henever services that can be performed by the CONTRACTOR are required by AEMEAD, AEMEAD shall send a REQUEST ORDER to the CONTRACTOR" under which Consul-Tech would perform the services. Contract, ¶SECOND.

18. In performing those services, Consul-Tech was to be paid on an hourly basis. The Contract established firm-fixed labor rates to provide those services. Further, AEMEAD expressly agreed that it would "prompt[ly] pay" Consul-Tech for services rendered. Contract, ¶THIRD.

19. In awarding the Contract, AEMEAD also simultaneously issued a Task Order 1 which authorized Consul-Tech to commence initial work that would enable Puerto Rico to facilitate its recovery efforts. This included tasks such as setting up and integrating Puerto Rico's project and grants management system, and financial reconciliation of emergency work, scope of work, and damage description for preparation of initial emergency work Project Worksheets. The initial budget for this work was $677,120.00, subject to amendment upon request from the Government. Contract, ¶EIGHTH.

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

20. In Puerto Rico, "a contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service". Article 1206 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3371. "Contracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfilment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law." Article 1210 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3375.

21. For a contract to exist, the following requisites must be met: 1) the consent of the contracting parties; 2) a definite object which may be the subject of the contract; and 3) the cause for the obligation which may be established. Article 1213 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3391. See, Sagardía de Jesús v. Hospital, 177 D.P.R. 484 (2009); Pérez Rosa v. Morales, 172 D.P.R. 216 (2007) Municipio de San Juan v. Professional Research, 171 D.P.R. 219 (2007); López Tristani v. Maldonado, 168 D.P.R. 838 (2006).

22. The Contract complied with the previously mentioned Civil Code requirements. It also complied with Executive Order 2017-053 (OE-2017-053), which exempted contractors from complying with the formal requirements established by law, regulations, executive orders or ruling that govern contracts with the Government. See, OE-2017-053, Section 1. Said executive order required only that the agreements with the Government: (1) Be in writing, (2) Be dated, (3) Indicate the object of the obligation, (4) Reference the total value, and (5) Be signed by the persons authorized by law.

## B.  The Task Orders as Contract Amendments

23. The Contract provided that it could be "extended, renewed or amended by mutual agreement of the parties". Contract, ¶EIGHTH. Accordingly, the Government of Puerto Rico, duly

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

represented by the Governor Authorized Representative ("GAR"), approved Task orders 001.1, 003, 006 and 010 which validly amended the Contract by (1) including the services to be provided by Consul Tech and (2) the total amount involved, which exceeded the $800,000.00 initial contract amount. These amendments in turn also complied with the Civil Code requirements for a valid contract and with the requirements of OE-2017-053 for emergency contracts with the Government.

24. Consul-Tech consented to the obligations stipulated on each of said amendments, and performed all services arising from them. Those services were, thus, both required and accepted by the Government. Therefore, the Contract was validly amended by mutual agreement of the Parties, as required by the same.

25. In accordance with the Contract, the Government and Consul-Tech had discussions about additional work under the Contract, expanding the scope of the project management and support services provided by Consul Tech to various agencies.

26. The Government issued task orders 001.1, 003, 006 and 010 which validly amended the Contract, increasing the initial $800,000.00 contract amount.

27. Task Order 1.1 was recommended for approval by Jorge Aponte Assistant to the Executive Director and signed by Jose Marrero, the Executive Director of Puerto Rico's Office of Management and Budget ("OMB") and the GAR at the time, directing Consul-Tech to proceed with this expanded emergency work, with an increased cap of $7,590,050.00. Under Task Order 1.1, Consul-Tech was requested to provide services for approximately 20 state agencies in the identification, formulation, estimation, preparation and submission of emergency work project worksheets.

28. Under Task Order 003, the Government requested Consul-Tech to perform school inspections, specifically Consul-Tech was to "conduct a health and safety inspection of public

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

schools throughout Puerto Rico, in order to determine if they are safe to be occupied". It was
signed by José Marrero on behalf of the GAR and Julia Keleher, as the agency representative.

29. Pursuant to Task Order 003, Consul-Tech performed inspections of 907 public schools
throughout the island, along with members of the Corps of Engineers ("USACE"). As opposed to
the works performed by USACE, which the Government certified and paid, the Government has
yet to certify and pay on Consul-Tech's invoices. However, the fact that the Government certified
and paid USACE's for the work is an indication that the same was in accordance with the terms of
the Contract.

30. Task Order 003 used the same firm-fixed labor rates established under the Contract and
budgeted up to $4,307,600.00 for this emergency and critical work.

31.  Task order 006 was signed by José Marrero on behalf of the GAR and Elí Díaz Atienza,
as the agency representative, and task order 10 was signed by José Marrero, on behalf of the GAR.
Consequently, the task orders that amended the Contract were signed by the persons authorized by
law to so act, as required by the agreement.

## C.  The Task Orders As Individual Agreements

32. Act No. 211 of August 2, 1999, as amended ("Act 211-1999") provides that the Governor
of Puerto Rico ("Governor") may declare a state of emergency in connection with a natural disaster
such as a hurricane. While such emergency declaration is in place, under Act 211-1999, the
Governor shall have the power to issue, amend, and revoke such orders and regulations as he
deems convenient to govern during the state of emergency. Likewise, the Governor may give effect
to those regulations, orders, plans or measures to manage situations associated with the emergency
or disaster.

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

33. On September 17, 2017, by virtue of his authority vested under Act 211-1999, Governor Ricardo Rossello ("Governor Rossello") issued Administrative Bulletin Number OE-2017-047 ("OE-2017-047"), an executive order declaring a state of emergency due to impending Hurricane Maria.

34. On September 20, 2017, Hurricane Maria struck Puerto Rico, becoming the most devastating atmospheric event to affect local lives, infrastructure and the provision of essential services to the people of Puerto Rico. To address the ensuing crisis in Puerto Rico, Governor Rossello issued a series of executive orders pursuant to Act 211-1999, including Administrative Bulletin Number OE-2017-053 ("OE-2017-053") issued on September 28, 2017[5]

35. According to the powers conferred by Act 211-1999 (and the emergency declared in OE-2017-047), under OE-2017-053, Governor Rossello mandated a series of measures with the purpose of enabling and accelerating the recovery of Puerto Rico after Hurricane Maria. As provided under Section 1 of OE-2017-053, contractors and agencies, instrumentalities, public corporations and/or entities attached to the executive branch of the Government were exempted from complying with any requirement imposed by statute, regulation, administrative order or directive governing the Government's procurement process. Furthermore, pursuant to Section 5 of OE-2017-053, any obligation that the Government assumed after OE-2017-047 (but until the end of emergency declared under OE-2017-047) shall be exempted from complying with any requirement set forth by statute, regulation, administrative order or applicable guideline governing the Government's procurement process.

---

[5] Act 211 validly and constitutionally delegated upon the Governor the rule making power during the declaration of emergency. See, Sánchez v. Dpto. de Vivienda, 184 D.P.R. 95, 12-22 (2011); López v. Junta de Planificacion, 80 D.P.R. 646, 661 (1958).

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

36. As discussed above, OE-2017-053, however, required that, during the emergency period, the agreements with the Government complied with the following: (1) be in writing, (2) be dated, (3) indicate the object of the obligation, (4) reference the total value, and (5) be signed by the persons authorized by law.

37. Here, all task orders complied with the specific requirements set forth by OE-2017-053. Therefore, all of them by themselves, can also be considered as separate valid contracts.

**C.  The Termination**

38. On November 6, 2017, the Government notified Consul-Tech of its decision to terminate the Contract through a letter issued by the Secretary of the Department of Public Safety, purportedly at the direction of the Chief of Staff of the Governor.

39. The letter provided that the termination would be effective 30 days after the date of the letter, and instructed Consul-Tech to "continue to finish the already started work in order to effect a smooth transition."

40. On December 1, 2017, Consul-Tech, through a company representative, attempted to arrange a transition meeting with Mr. Jose Marrero.  Mr. Marrero, however, did not attend the meeting.

41. Consul-Tech provided the Government a Project Worksheet Report dated November 30, 2017 detailing Consul-Tech's efforts of providing technical assistance to 20 government agencies, and preparing over 300 project worksheets to support requests for Federal disaster assistance. These worksheets demonstrated the potential for Puerto Rico to receive in excess of $2 billion from the Federal Government to support recovery efforts.

**D.  The Commonwealth's Failure to Pay and CSA's Efforts to Obtain Payment**

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

42. The Government directed and requested Consul-Tech to perform work during a very critical period for the people of Puerto Rico.  Hurricane Maria was an unprecedented event for Puerto Rico causing damages that affect the lives of its citizens to this day.  The Presidential declaration of an emergency (FEMA-3391-EM) prior to Puerto Rico being hit by Hurricane María, immediately followed by a Presidential declaration of a major disaster (FEMA-4339-DR) not only acknowledged the catastrophic nature of the damages to the Island and its residents from the storm, but also allowed for the implementation of immediate measures to protect the health and safety of the people of Puerto Rico. These measures allowed the Government to tap into the resources of the Federal government through its designated agencies.  In addition, then Governor of Puerto Rico, Ricardo Rossello, also implemented several executive orders declaring a state of emergency and suspending many of the government contracting practices for a period of 90 days, with a subsequent extension of an additional 90 days.  This allowed agencies to contract the services of the private sector to support Puerto Rico in stabilizing its government and providing assistance to its citizens.

43. The termination of the Contract does not preclude payment for the work rendered thereunder. On the contrary, Consul-Tech is entitled to payment for the work that it performed. Contract, ¶NINTH.

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

44. Consul-Tech submitted invoices in accordance with the terms of the Contract. Nonetheless, the Government has not paid the full amounts due and owing to Consul-Tech under the Contract and its Task Orders.

45. Specifically, Consul-Tech's invoices comply with the Contract's requirements because they:

- Include the required written certification that no officers or employees of AEMEAD will obtain or derive any benefit from the Contract;

- Include written certification that all services for which payment is requested have been performed in compliance with the requirements and that such services have not been billed previously; and

- Detail the services rendered, and the hours spent on each matter.

46. Moreover, the works performed by Consul-Tech were audited by two accounting firms (Soria and Associated and Deloitte) which were hired by the Central Office of Recovery, Reconstruction and Resiliency of Puerto Rico and directed by the current GAR, Mr. Omar Marrero.  Both of these audits have been shared with the Government to answer its questions on hours charged to the program. All questions have been answered.

47. Consul-Tech has made every reasonable effort to obtain payment without resorting to legal action.  In addition to the documentation required by the Contract, Consul-Tech has provided reams of additional information to the Government to address the questions raised by its representatives, to facilitate discussions and to expedite the payment process.  In order to address any issues or concerns delaying payment to Consul-Tech or approvals of such payments, Consul-Tech has undertaken additional efforts to coordinate discussions with Jose Marrero, the Governor's

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

Authorized Representative and Director of the Office of Management and Budget; Omar Marrero,

Governor's Authorized Representative and Director of the Central Office for Recovery,

Reconstruction and Resiliency("COR3"); Raul Maldonado, Chief of Staff of the Governor,

Secretary of the Treasury and Chief Financial Officer of the Commonwealth; and, Carlos Acevedo,

Commissioner of AEMEAD.  Each of these individuals were directly and intimately involved in

addressing the resolution of this payment for services rendered. Nonetheless, the Government has

failed to pay the amounts due and owing to Consul-Tech.

48. Consul-Tech has not received any payment from the Government since February 23, 2018.

Despite promises made by Government officials, payments have not been forthcoming, even for

invoices that the Government does not dispute in any way.

49. Where the Government has provided reasons for failing to pay Consul-Tech's invoices,

Consul-Tech has thoroughly responded to those concerns.

50. Consul-Tech has submitted invoices totaling $5,120,772.50.  The Government has

acknowledged in discussions that payment is due for these invoices and, for several months, has

represented to Consul-Tech that payment of these invoices is forthcoming.  Nonetheless, the

Government has neither paid these invoices nor offered any explanation for its failure to do so.  As

a result, the Government is in breach of the Contract. See, Exhibit A, Account Statement.

## DISCUSSION

51. Bankruptcy Code section 503(b)(1)(A), 11 U.S.C. § 503, applicable to this case under

Section 301 of PROMESA, 48 U.S.C. § 2161 provides that "[a]fter notice and a hearing, there

shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses

of preserving the estate."  Generally, a request for payment of an administrative expense pursuant

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

to Bankruptcy Code section 503(a), 11 U.S.C. § 503 may qualify if (i) the right to payment arose

from a post-petition transaction with the debtor estate (rather than from a prepetition transaction

with the debtor) and (ii) the consideration supporting the right to payment was beneficial to the

estate of the debtor. *See In re Hemingway Transp., Inc.*, 954 F.2d 1, 5 (1st Cir. 1991).

52. Nothing prohibits immediate payment of an allowed administrative expense, either, as the

timing of payment is within a court's discretion. *See In re HQ Global Holdings, Inc.*, 282 B.R.

169, 173 (Bankr. D. Del. 2002); *In re Rare Coin Galleries, Inc.*, 72 B.R. 415, 417 (Bankr. D. Mass.

1987) ("In general, the timing of the payment of ordinary administrative claims is in the discretion

of the Court."). Courts look to a variety of factors in determining whether to order immediate

payment, including, but not limited to, prejudice to the debtor, hardship to the claimant, potential

detriment to other creditors, and the length and expense of the case's administration. *See id.*; *see*

*also In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005.

53. It is abundantly clear that Consul-Tech's $5,120,772.50 Claim qualifies for administrative

expense priority. The Contract is post-petition. The Commonwealth entered into bankruptcy in

May of 2017. The Contract was entered into in September of 2017. Consul-Tech rendered all

appropriate services under the Contract and completed the work requested in December 6, 2017.

Such services undoubtedly benefited the Commonwealth's estate. Consul-Tech provided a

necessary service to the Government on a post-petition basis. To deny the claim administrative

expense priority would be unfounded.

54. Additionally, the facts of this case warrant immediate payment. It was critical for the

Government to enter into these types of contracts and prioritize disaster relief efforts.

Consequently, per the Bankruptcy Code, the Government also prioritized payment of services

rendered under the Contract. As a court in equity, this Court has the ability to issue orders

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

necessary or appropriate to carry out provisions of the Bankruptcy Code. *See* 11 U.S.C. §105(a). Immediate payment is not contrary to the demands of the Bankruptcy Code but consistent with it. Administrative expense claims are afforded high priority pursuant to Bankruptcy Code section 507(a)(2), 11 U.S.C. § 507, for many, if not all, of the reasons stated above. This favorable treatment induces parties to continue doing business with a debtor-in-possession, and thus, in turn, facilitate a debtor's reorganization efforts. *See In re Babbs*, 265 B.R. 35, 37 (Bankr. S.D.N.Y. 2001); *see also In re Enron Corp.*, 279 B.R. 695, 704 (Bankr. S.D.N.Y. 2002).

55. Principles of fairness and justice only solidify Consul-Tech's entitlement to immediate payment. *See Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process"). If a debtor utilizes services of a third-party post-petition and leaves this party uncompensated, immediate payment is the only just solution. Parties rely on debtors to fulfill their post-petition obligations pursuant to the terms of the contract. Otherwise, no party would contract with a debtor going through reorganization if payment were delayed to an indefinite date in the future. Consul-Tech rendered post-petition services for the benefit of the Commonwealth's estate and anything short of immediate payment would be unjust and contravene clear mandates of Bankruptcy Code sections 503 and 507, 11 U.S.C. §503, § 507.

56. This bankruptcy proceeding has been ongoing since May 2017. More than two and a half (2½) years later, the Commonwealth has yet to set forth any plan of adjustment. Moreover, the record before the Court reveals a high level of litigation and adverse interests between the numerous participants and classes of interests involved in this proceeding. Therefore, it is readily apparent that any plan of adjustment proposed by the Commonwealth will be subject to multiple

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

objections and amendments, leading to a considerable delay in its confirmation. Consul-Tech

would be adversely affected if it has to wait for these issues to be resolved before collecting on its

post-petition Claim. Consul-Tech has repeatedly reached out to Government official regarding its

$5,120,772.50 Claim, only to be rebuffed.  Payment of the $5,120,772.50 Claim is not forthcoming

in the foreseeable future. Continued delay in payment creates a crucial detrimental hardship to

Consul-Tech that, frankly, only worsens each day. *See Garden Ridge*, 323 B.R. at 143 (noting that

hardship to the administrative claimants is a factor that warrants immediate payment of an

administrative expense claim).   Immediate payment not only alleviates the continuous and

mushrooming burden that Consul-Tech incurred at the behest of the Commonwealth and to its sole

benefit, but alleviates the growing burden on the Commonwealth and its estate.

57. Moreover, and maybe most importantly, payment of the Claim will not prejudice the

Commonwealth or other creditors.  On October 26, 2017, the Court entered the *Order Granting*

*Urgent Joint Motion of the Commonwealth of Puerto Rico, Puerto Rico Highways and*

*Transportation Authority, and Puerto Rico Electric Power Authority, and the Puerto Rico Fiscal*

*Agency and Financial Advisory Authority for Order Concerning Receipt and Use of Anticipated*

*Federal Disaster Relief Funds and Preserving Rights of Parties* [Docket No. 1547] (the "Disaster

Relief Funds Order").  The Disaster Relief Funds Order makes certain funds available solely for

emergency assistance and disaster relief efforts.  The Disaster Relief Funds Order most notably

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

ordered that all Federal Disaster Relief Funds,[6] Commonwealth Disaster Relief Advances,[7] and

Disaster Relief Accounts[8] were not subject to any liens, encumbrances, priorities, or other claims

by preexisting creditors, and such funds and accounts are not considered available funds, revenues,

or resources for distribution in any restructuring under Title III of PROMESA. *See Disaster Relief*

*Funds Order* at ¶2.

58. The Disaster Relief Funds Order anticipates this exact situation. FEMA funds have been

specifically segregated to protect parties that have entered into contracts with the Government,

post-petition, to assist in disaster relief efforts. Consul-Tech's work directly benefited the

Government in its attempt to reorganize and the Court undeniably realized the need for funding

---

[6] As defined in the Disaster Relief Funds Order, "Federal Disaster Relief Funds" means "federal assistance as defined in 2 C.F.R. § 200.40(a) made available, disbursed by, and/or otherwise earmarked or provided by the Federal Emergency Management Agency ("FEMA"), or any other federal agency, to the Commonwealth and Non-Federal Entities, whether directly or indirectly, and related program income, that may be used for the purpose of providing emergency assistance, disaster relief, and/or recovery and restorative assistance, in the form of grants; *provided, however*, that Federal Disaster Relief Funds shall not include funds received by the Commonwealth as reimbursement for Commonwealth Disaster Relief Advances; and *provided further*, for avoidance of doubt, that Federal Disaster Relief Funds shall not include any Reimbursement Claim or any funds received by the Commonwealth on account of any Reimbursement Claim."

[7] As defined in the Disaster Relief Funds Order, "Commonwealth Disaster Relief Advances" means "advances by the Commonwealth to Non-Federal Entities of, or expenditures by the Commonwealth from, funds other than Federal Disaster Relief Funds, to pay the costs of a project approved by FEMA or another federal agency entitled to approve the use of Federal Disaster Relief Funds, and to be reimbursed by funds made available by, disbursed by, and/or otherwise provided by FEMA or any other federal agency to the Commonwealth and Non-Federal Entities for the purpose of providing emergency assistance, disaster relief, and/or recovery and restorative assistance in the form of grants; *provided* for the avoidance of doubt, that Commonwealth Disaster Relief Advances shall not include any Reimbursement Claim or any funds received by the Commonwealth on account of any Reimbursement Claim."

[8] As defined in the Disaster Relief Funds Order, "Disaster Relief Accounts" means "new, segregated, non-commingled, unencumbered accounts held in the name of the Commonwealth or of the instrumentality to whom the funds have been allocated according to a governing Project Worksheet or otherwise under applicable law."

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

these efforts when it entered the Disaster Relief Funds Order.  Although Consul-Tech's entitlement

to payment from the Government is in no way contingent upon payment by FEMA, the Disaster

Reliefs Funds Order ensures that the Commonwealth has FEMA funds for the sole purpose of

compensating parties who provide, or provided, emergency assistance and disaster relief.  And, as

an added benefit, the funds subject to the Disaster Relief Funds Order are not subject to any claim

by any preexisting creditor or privy to any distribution under a plan of reorganization – their sole

use is to compensate these claimants, which rightfully include Consul-Tech.

## **REQUEST FOR EVIDENTIARY HEARING**

59. Consul-Tech respectfully requests that an evidentiary hearing be scheduled, if deemed

appropriate by this Honorable Court.

## **NOTICE**

60. Notice has hereby been served by CM/EF and on the Master Service List posted on the

website of the Debtors' claims and noticing agent, by e-mail or by first-class mail.

61. No prior request for the relief sought herein has been made to this Court or to any other

court.

WHEREFORE, Consul-Tech respectfully requests that this Court allow Consul-Tech's

claim as an administrative expense claim, and order the immediate payment of the same, with any

other appropriate relief.

RESPECTFULLY SUBMITTED.

Estimated Hearing Date: January 29, 2020 at 9:30 (AST)
Objection Deadline: January 14, 2019 at 4:00 p.m. (AST)

Dated:  January 13, 2020

Respectfully submitted,

REICHARD & ESCALERA, LLC
*/s/ Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

*/s/Sylvia M. Arizmendi*
Sylvia M. Arizmendi
USDC-PR No. 210714
arizmendis@reichardescalera.com

/s/Fernando Van Derdys
Fernando Van Derdys
USDC-PR 201913
fvander@reichardescalera.com

*/s/ Alana Vizcarrondo-Santana*
Alana Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888