# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | ) | Title III |
| | ) | |
| | ) | Case No. 17-BK-03283 (LTS) |
| as representative of | ) | |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | |
| | ) | |
| Debtors.[1] | ) | |
| | | |
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | ) | Title III |
| | ) | Case No. 17-BK-03566 (LTS) |
| as representative of | ) | |
| | ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, | ) | |
| | ) | |
| Debtor. | ) | |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK- 4780) (Last Four Digits of Federal Tax ID: 3747).

| | |
|---|---|
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, <br><br> and <br><br> THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), <br><br>     as co-trustees of <br><br> THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, <br><br>     Plaintiff, <br><br> v. <br><br> DEFENDANT 1M, *et al.*, <br><br>     Defendants. | Adv. Proc. No. 19-00356 (LTS) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, <br><br> and <br><br> THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), <br><br>     as co-trustees of <br><br> THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, <br><br>     Plaintiff, <br><br> v. | Adv. Proc. No. 19-00357 (LTS) |

| | |
|---|---|
| STOEVER GLASS & CO., *et al.*, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| ———————————————— | ) |
| | ) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, | ) Adv. Proc. No. 19-00359 (LTS) |
| and | ) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), | ) |
| as co-trustees of | ) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, | ) |
| Plaintiff, | ) |
| v. | ) |
| DEFENDANT 1H-78H, | ) |
| Defendants. | ) |
| ———————————————— | ) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, | ) Adv. Proc. No. 19-00361 (LTS) |
| and | ) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), | ) |

|  |  |
|---|---|
| as co-trustees of | ) |
|  | ) |
|  | ) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) |
| GOVERNMENT OF PUERTO RICO, | ) |
|  | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| DEFENDANT 1G-50G, *et al.*, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |
| ------------------------------------------------------------------ X |  |

**REPLY IN SUPPORT OF MOTION OF CERTAIN ERS BONDHOLDERS
TO COMPEL THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
TO PROVIDE COMPLETE ANSWERS TO INTERROGATORIES**

## **TABLE OF CONTENTS**

                                                                       **Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 3

       A.       When ERS First Learned of the Contention that the ERS Bonds are *Ultra Vires*, and Related Issues, Is Relevant to Validity, Notice and Equitable Issues ............................................................................................... 3

       B.       The Oversight Board's Other Justifications for ERS's Refusal to Say When It First Learned of Key Contentions Are Unavailing .................................. 7

       C.       ERS Must Identify Persons with Knowledge of the Factual Bases for its Contentions, or Admit It Knows of None ......................................................... 9

CONCLUSION ....................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Clark v. Berkshire Med. Ctr., Inc.*,
  No. CV 17-30186-MGM, 2019 WL 78994 (D. Mass. Jan. 2, 2019) ........................................10

*In re Rivera Figueroa*,
  No. 16-cv-02956 BKT, 2018 WL 576745 (Bankr. D.P.R. Jan. 26, 2018) ................................6

*In re Textron, Inc.*,
  No. 09-383ML, 2012 WL 12876091 (D.R.I. Apr. 11, 2012) ......................................................8

*Medina & Medina v. Country Pride Foods Ltd.*,
  631 F. Supp. 293 (D.P.R. 1986) .................................................................................................6

*U.S.I. Props. Corp. v. M.D. Constr. Co.*,
  860 F.2d 1 (1st Cir. 1988) ......................................................................................................2, 4

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ...................................................................................................................8

*Wiley v. Stipes*,
  595 F. Supp. 2d 179 (D.P.R. 2009) ............................................................................................6

**STATUTES**

19 L.P.R.A. § 1752 .............................................................................................................................4

31 L.P.R.A. § 2992 .............................................................................................................................6

**OTHER AUTHORITIES**

UCC § 8-202 ...........................................................................................................................2, 4, 5

To the Chambers of the Honorable Judge Judith G. Dein:

The Bondholders[2] respectfully submit this Reply in support of their *Motion of Certain ERS Bondholders to Compel the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Provide Complete Answers to Interrogatories*, ECF No. 755 in Case No. 17-bk-03566 (the "Motion to Compel").

## INTRODUCTION

1. In 2008 ERS collected nearly $3 billion from a syndicate of underwriters in exchange for bonds that it assured investors were valid and authorized. Today, ERS's representative, the Oversight Board, maintains that a mere glance at the ERS Enabling Act would

---

[2] Footnote 2 of the Opposition contains an inaccurate list of the Bondholders who are parties to the Ultra Vires Proceedings. This response is submitted on behalf of the correct parties, who are: Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico Fixed Income Fund VI, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., Tax-Free Puerto Rico Target Maturity Fund, Inc., and UBS IRA Select Growth & Income Puerto Rico Fund.

Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., and Oaktree Opportunities Fund IX (Parallel 2), L.P. hold through Opps Culebra Holdings, L.P. Oaktree Huntington Investment Fund II, L.P. holds through Oaktree Opportunities Fund X Holdings (Delaware), L.P. Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., and Oaktree Opportunities Fund X (Parallel 2), L.P. hold through Oaktree Opps X Holdco Ltd.

have told even the casual reader that the bonds were worthless from the start. Yet when the Bondholders sought, in their interrogatories, to ask basic questions about this abrupt about-face—*e.g.*, who knew about the purported illegality of the bonds, what they knew, and when they knew it—ERS refused to answer. The Oversight Board now seeks to defend ERS's stonewalling on the ground that none of these matters conceivably could meet Bankruptcy Rule 7026(b)'s low threshold for discovery. Instead, the Board says that it is somehow only the Bondholders who hold relevant information.

2. That is just not so. There are at least three categories of disputed issues in these Ultra Vires Proceedings: (1) whether the issuance of the ERS Bonds was authorized by the ERS Enabling Act; (2) if not, whether the ERS Bonds are nonetheless valid and enforceable because the Bondholders are purchasers for value without notice of the particular (alleged) defect; and (3) if not, whether the ERS Bonds are enforceable in equity, and whether the Bondholders' equitable defenses bar ERS's efforts to claw back previously made payments. Each of the interrogatories that is the subject of the Motion to Compel is relevant to one or more of those issues.

3. First, each of the interrogatories asks when ERS first learned of particular contentions or alleged facts: that the ERS Bonds are *ultra vires*, that ERS could seek to claw back previously made payments, that the Bond Resolution's assurance that the bonds were authorized was false, and that persons had violated laws or rules in connection with the ERS Bond issuance. When ERS first learned of the contention that the ERS Bonds are *ultra vires* may be relevant to the validity of the Bonds, because "under Puerto Rico law, great deference is due to an agency's construction of its powers pursuant to its organic act." *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 860 F.2d 1, 8 (1st Cir. 1988). And certainly those dates are relevant to the Bondholders' contention that the ERS Bonds are enforceable under UCC § 8-202(b) even if they would otherwise be invalid,

because the Bondholders are purchasers for value without notice of the particular defect. The Oversight Board argues that the Bondholders were on notice because the "the publicly available text of the ERS Enabling Act put the Bondholders on notice of the defect." Opp. at 5 n. 5, ECF No. 779 in Case No. 17-03566. But if the publicly available text of the Enabling Act put the Bondholders on notice, it put everyone on notice. So the Bondholders are fully justified in asking when ERS itself first became aware of the contention that the ERS Bonds were *ultra vires*, when it first concluded that the contrary statement in the Bond Resolution was false, and when it first concluded that it might be able to claw back previous payments. Finally, the dates are also relevant to the Bondholders' equitable defenses and arguments, which turn in part on what ERS knew and when it knew it. And the Oversight Board's other objections to these portions of the interrogatories are equally unavailing.

4. Second, each of the interrogatories asks ERS to identify particular individuals: individuals with knowledge of the basis for three of ERS's central contentions, and the particular individuals who ERS contends violated the law in connection with the ERS Bond issuance. Strangely, the Oversight Board asserts that ERS does not know *anyone* with knowledge of the factual basis for its contentions. That is hard to credit, but if true, then ERS should simply say so under oath. And contrary to the Oversight Board's position, this information is discoverable, because individuals with knowledge of the basis for ERS's contentions, and individuals who ERS contends broke the law, will, of course, be clear subjects for further discovery.

## ARGUMENT

### A. When ERS First Learned of the Contention that the ERS Bonds are *Ultra Vires*, and Related Issues, Is Relevant to Validity, Notice and Equitable Issues

5. The circumstances of when ERS first learned of the contentions that are the subject of Interrogatory Nos. 1, 2, and 8, and when it first learned of the (alleged) violations of laws and

rules that are the subject of Interrogatory No. 11, are relevant, discoverable information that bears on the validity of the ERS Bonds, on the question of notice of the particular defect under UCC § 8-202(b), and on the Bondholders' equitable claims and defenses.

6. *First*, when ERS first learned of the contention that the ERS Bonds were *ultra vires* is relevant to the validity of the ERS Bonds, because it may affect the construction of the ERS Enabling Act. "[U]nder Puerto Rico law, great deference is due to an agency's construction of its powers pursuant to its organic act." *U.S.I. Props. Corp.*, 860 F.2d at 8. If—as seems apparent—ERS did not learn even of the contention that the ERS Bonds were *ultra vires* until long after the ERS Bonds were issued, that fact would support the Bondholders' argument that the Court should defer to ERS's construction of the ERS Enabling Act in the Bond Resolution as authorizing the issuance of the ERS Bonds.

7. *Second*, the dates requested are also relevant to notice. The Oversight Board concedes, as it must, that UCC § 8-202(b) may render the ERS Bonds enforceable, even if they would otherwise be invalid, if the Bondholders were "purchaser[s] for value and without notice of the particular defect." 19 L.P.R.A. § 1752(b). Opp. at 4–5. But the Oversight Board attempts to limit the scope of discovery on the notice issue to only direct evidence of what the Bondholders themselves knew and believed about the validity of the ERS Bonds.[3] Opp. at 4. If the Board were willing to limit its own arguments about notice in the same way, so that it would rely solely on direct evidence of the Bondholders' own knowledge and beliefs about the ERS Bonds' validity,

---

[3] To be clear, the Bondholders agree that evidence of what they knew and believed about the validity of the ERS Bonds is also relevant and discoverable. Contrary to the Oversight Board's suggestion, Opp. at 5, the Bondholders are not withholding documents addressing that question. Rather, the Board's motion to compel is, somewhat inexplicably, directed entirely at documents that do *not* address the validity of the ERS Bonds. *See Opposition To Urgent Motion Of Committees And Government Parties To Compel Production Of Documents From ERS Bondholders*, ECF No. 778 in Case No. 17-bk-03566.

-4-

that would be one thing. But the Board makes clear that it will by no means cabin its argument in that way. Rather, the Board states that it will argue from circumstantial evidence that "at a minimum, the publicly available text of the ERS Enabling Act put the Bondholders on notice of the defect." Opp. at 5 n. 5.

8. By making a circumstantial notice argument based on "the publicly available text of the ERS Enabling Act," instead of limiting itself to documents directly addressing the Bondholders' own knowledge and beliefs, the Board has significantly expanded the universe of information that is relevant to the question of notice under § 8-202(b). That is because for purposes of the circumstantial argument, there is nothing special about the Bondholders: If "the publicly available text of the ERS Enabling Act" in fact placed the Bondholders on notice of the supposed invalidity of the ERS Bonds, then it placed *everyone* on notice of the supposed invalidity. That includes ERS, which is of course deeply familiar both with the ERS Enabling Act that governs its operations and with the ERS Bonds that it issued. So in response to the Oversight Board's argument that the ERS Enabling Act itself placed the Bondholders on notice that the ERS Bonds are invalid, it is perfectly reasonable for the Bondholders to ask ERS: if it was so obvious, when did *you* figure it out? That, at bottom, is what the interrogatories at issue do.

9. Equally puzzling is the Board's statement that the publicly available text of the ERS Enabling Act provided notice "at a minimum." We assume the Board's lawyers crafted this language carefully and for a reason, which leads to the perfectly reasonable question of what else there is besides the "publicly available text of the ERS Enabling Act" that would have notified the Bondholders of the supposed invalidity of the ERS Bonds. Fairness and demands of adequate notice mean that the Bondholders are entitled to discovery about what other facts there are besides the plain text of the Act that provided this notice—and the interrogatories are relevant to that issue,

-5-

too, because the Board is likely to argue that whatever brought the *ultra vires* contention to ERS's attention was also sufficient to place the Bondholders on notice.

10. *Third*, the dates when ERS first learned of these matters are relevant to the Bondholders' equitable claims and defenses. For example, if ERS was aware of the contention that the ERS Bonds were *ultra vires* when it issued the ERS Bonds, and nevertheless proceeded to issue them, that would be relevant to the "absence of justification" element of an unjust enrichment claim under Puerto Rico law. *Wiley v. Stipes*, 595 F. Supp. 2d 179, 188 (D.P.R. 2009); *see also* 31 L.P.R.A. § 2992 (providing that legal obligations are created under Puerto Rico law by, *e.g.*, "illicit acts and omissions or by those in which any kind of fault or negligence occurs"); *Medina & Medina v. Country Pride Foods Ltd.*, 631 F. Supp. 293, 302 (D.P.R. 1986) (unjust enrichment available in "all situations where its nonapplication would perpetuate the inequity that someone may unjustly enrich himself at the expense of another" (internal quotation marks omitted)). Similarly, if ERS was aware that it might have cause to claw back interest payments on the ERS Bonds, yet said and did nothing about it for years while investors purchased the bonds and relied on the receipt of payments, that would support the Bondholders' laches defense, which requires the Bondholders to show that ERS unreasonably delayed in seeking to recover payments previously made, to the Bondholders' prejudice. *E.g.*, *In re Rivera Figueroa*, No. 16-cv-02956 BKT, 2018 WL 576745, at *2 (Bankr. D.P.R. Jan. 26, 2018).

11. For these reasons, when ERS first learned of the contentions that the ERS Bonds are *ultra vires* (Interrogatory No. 1), that it might have cause to claw back payments previously made (Interrogatory No. 2), and that statements in the ERS Bond Resolution were false (Interrogatory No. 8) are relevant to issues of validity, notice, and the Bondholders' equitable claims and defenses. The same is true of when ERS first discovered that anyone acted contrary to

any law or rule in connection with the issuance of the ERS Bonds (Interrogatory No. 11), which relates to those same issues.

> B. **The Oversight Board's Other Justifications for ERS's Refusal to Say When It First Learned of Key Contentions Are Unavailing**

12. The Oversight Board's other justifications for ERS's refusal to say when it first learned of the matters covered by Interrogatory Nos. 1, 2, 8, and 11, are equally weak.

13. First, the Board argues that these questions are unduly burdensome, because they would supposedly require "ERS to review 12 years of documents and have someone from its current staff verify, under oath, when ERS 'first learned' that 'anyone' during those 12 years had made a legal contention about the ERS Bonds." Opp. at 6. Notably, this contention about undue burden was never raised in the meet and confer process, and it is flatly inconsistent with the Oversight Board's representation during that process that "ERS does not have additional information to supplement the responses at this time" and "is not withholding responsive information." Declaration of Matthew E. Papez, Ex. E (Jan. 3, 2020). If, as is now apparent, ERS has not undertaken the work the Board says would be required to answer the interrogatory one way or another, then it is plain that the Oversight Board's written assurances during the meet-and-confer process were untrue. The Board should not be permitted to use its own sharp practices as a defense against a proper discovery request.

14. In any event, the argument about burden is strange. The allegation that ERS fraudulently raised $3 billion by issuing bonds that it had no authority to issue was surely a big deal for ERS, not some minor detail that would be buried in an email and quickly forgotten. After all, if true, then countless officers of ERS may have committed securities fraud. And these facts surely are knowable: ERS, via the Oversight Board, is *currently* contending that the ERS Bonds

-7-

are *ultra vires*, so at a minimum it can state when, so far as its current officers know, ERS first learned of it.

15. The Oversight Board also claims that Interrogatory Nos. 2, 8, and 11 ask about privileged information, but that is an invented argument. Opp. at 8, 10, 11. None of those questions asks ERS for the content of privileged communications between ERS and its lawyers. Rather, Interrogatory Nos. 2 and 8 focus on legal contentions that the Oversight Board has publicly made on ERS's behalf—that ERS can pursue clawback actions, and that a key statement in the Bond Resolution is false—and ask when first ERS learned about or reached those conclusions. Such circumstantial facts are not privileged. *See, e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."). Even if ERS first learned about those conclusions from a confidential communication with its attorneys—and notably, ERS has not said that is so—the interrogatories would not require disclosure of the content of anything the attorneys said, only of the date on which ERS first learned about the contention. Disclosure of such facts—the dates, subject matter, and parties to a privileged communication—are, of course, a standard part of every privilege log.

16. Interrogatory No. 11 also is not privileged for yet another reason. It is in substantial part a permissible contention interrogatory: It asks whether ERS contends that anyone violated the law or a rule in connection with the issuance of the ERS Bonds, and if so, for information about the nature of ERS's contentions. *See, e.g.*, *In re Textron, Inc.*, No. 09-383ML, 2012 WL 12876091, at *2 (D.R.I. Apr. 11, 2012) (contention interrogatories are an appropriate form of discovery). ERS failed to answer these parts of Interrogatory No. 11, but the Oversight Board's Opposition provides no justification for it. And as for privilege, Interrogatory No. 11 does not require ERS to disclose

-8-

any confidential communications, but merely to clarify what it does and does not contend in these proceedings, and when it learned the basis for those contentions.

17. Finally, the Oversight Board complains that Interrogatory No. 8 is "poorly drafted." Opp. at 9. But this is a throwaway line. The Board never complained during the meet and confer process that it did not understand what Interrogatory No. 8 was asking, and it does not make that contention now.

### C. ERS Must Identify Persons with Knowledge of the Factual Bases for its Contentions, or Admit It Knows of None

18. Interrogatory Nos. 1, 2, and 8 also asked ERS to identify persons with knowledge of the factual bases for many of ERS's central contentions in these proceedings—that the ERS Bonds are *ultra vires* (Interrogatory No. 1), that ERS can pursue clawbacks of past payments (No. 2), and that the Bond Resolution's statement that ERS had authority to issue the ERS Bonds was false (No. 8). And Interrogatory No. 11 asked ERS to identify persons who it contends violated the law in connection with the ERS Bond issuance. ERS refused entirely to respond to this part of Interrogatory Nos. 2 and 11, and in response to this part of Nos. 1 and 8 said only that "[u]pon information and belief, persons with factual knowledge that the ERS Bonds were issued *ultra vires* include former ERS officials, members of the Puerto Rico Legislative Assembly, and ERS Bondholders." Papez Decl. Ex. B, at 7–8, 13.

19. The Oversight Board does not attempt to defend ERS's "information and belief" responses as adequate under the Bankruptcy Rules. Instead, the Board implicitly acknowledges that ERS failed to adequately respond, but attempts to justify that failure by contending that "ERS has no one to identify in response to Interrogatory Nos. 1, 2, 8, and 11." Opp. at 12. That is puzzling. It is difficult to see how ERS can possibly not know of *anyone* with knowledge of, *e.g.*, the factual basis for its contention that the ERS Bonds were *ultra vires*. The Oversight Board

-9-

protests that the contention is based on "the plain language of the ERS Enabling Act." Opp. at 13. But even if so, the Enabling Act indisputably authorized ERS to engage in many forms of borrowing, so the issue in these proceedings is whether the form that the ERS Bonds in fact took falls within or outside that authorization. That is a question on which there are surely persons with factual knowledge—such as the persons involved in the bond issuance—yet ERS has refused to identify them. The same is true of Interrogatory Nos. 2 and 8. As for Interrogatory No. 11, ERS either does or does not contend that persons violated the law or rules in connection with the ERS Bond issuance—either way, it can and must answer the question.

20. The Oversight Board also argues that the identity of persons with knowledge of the factual bases for ERS's contentions is irrelevant. But this is obviously wrong. ERS certainly will rely on the factual bases for its contentions in these proceedings. The Bondholders are entitled to know who has that information, and that is all this interrogatory asks. It is for this reason that a request "to identify individuals with relevant knowledge . . . is a standard interrogatory." *Clark v. Berkshire Med. Ctr., Inc.*, No. CV 17-30186-MGM, 2019 WL 78994, at *2 (D. Mass. Jan. 2, 2019). Such individuals are a clear subject for proper discovery.

## CONCLUSION

21. For the reasons set forth above, the Court should compel ERS to provide complete responses to the Bondholders' interrogatories.

In San Juan, Puerto Rico, today January 14, 2020.

| | |
|---|---|
| */s/ Alfredo Fernández-Martínez* | */s/ Geoffrey S. Stewart* |
| Alfredo Fernández-Martínez | Bruce Bennett (*pro hac vice*) |
| DELGADO & FERNÁNDEZ, LLC | JONES DAY |
| PO Box 11750 | 555 South Flower Street |
| Fernández Juncos Station | Fiftieth Floor |
| San Juan, Puerto Rico 00910-1750 | Los Angeles, CA 90071 |
| Tel. (787) 274-1414 | Tel. (213) 489-3939 |
| Fax: (787) 764-8241 | Fax: (213) 243-2539 |
| afernandez@delgadofernandez.com | bbennett@jonesday.com |
| USDC-PR 210511 | |
| | Benjamin Rosenblum (*pro hac vice*) |
| | JONES DAY |
| | 250 Vesey Street |
| | New York, New York 10281 |
| | Tel. (212) 326-3939 |
| | Fax: (212) 755-7306 |
| | brosenblum@jonesday.com |
| | |
| | Geoffrey S. Stewart (*pro hac vice*) |
| | Matthew E. Papez (*pro hac vice*) |
| | Sparkle L. Sooknanan (*pro hac vice*) |
| | JONES DAY |
| | 51 Louisiana Ave. N.W. |
| | Washington, DC 20001 |
| | Tel. (202) 879-3435 |
| | Fax: (202) 626-1700 |
| | gstewart@jonesday.com |
| | mpapez@jonesday.com |
| | ssooknanan@jonesday.com |

*Counsel for Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, and SV Credit, L.P.*

| | |
|---|---|
| /s/ Alicia I. Lavergne-Ramírez | /s/ Jesse L. Green |

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

Glenn M. Kurtz (*pro hac vice*)
John K. Cunningham (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
gkurtz@whitecase.com
jcunningham@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
Jesse L. Green (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com

*Counsel for Defendants Puerto Rico AAA Portfolio Bond Fund, Inc.; Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc.; Puerto Rico Fixed Income Fund, Inc.; Puerto Rico Fixed Income Fund II, Inc.; Puerto Rico Fixed Income Fund III, Inc.; Puerto Rico Fixed Income Fund IV, Inc.; Puerto Rico Fixed Income Fund V, Inc.; Puerto Rico Fixed Income Fund VI, Inc.; Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc.; Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.; Tax-Free Puerto Rico Fund, Inc.; Tax-Free Puerto Rico Fund II, Inc.; Tax-Free Puerto Rico Target Maturity Fund, Inc.; and UBS IRA Select Growth & Income Puerto Rico Fund*