# EXHIBIT 1

Case:17-03283-LTS Doc#:9932-1 Filed:01/14/20 Entered:01/14/20 17:34:31 Desc: Exhibit 1 Page 2 of 8

Goss, Inc. v. Cycrex Const. & Co., S.E., 1996 JTS 103 (1996)
141 D.P.R. 342, 1996 P.R.-Eng. 499,344, P.R. Offic. Trans.

[Texto original en espanol](...)

1996 JTS 103, 141 D.P.R. 342, 1996 WL 499344
(P.R.), 1996 P.R.-Eng. 499,344, P.R. Offic. Trans.

EDWIN V. GOSS, INC., Plaintiff and petitioner

v.

DYCREX CONSTRUCTION & CO.,
S.E., Defendant and respondent
PUERTO RICO DREDGING & MARINA
CONTRACTORS, INC., Cross-claimant

v.

DYCREX CONSTRUCTION
& CO., S.E., Cross- defendant

Supreme Court of Puerto Rico.
No. CE–95–89
San Juan, Puerto Rico, July 9, 1996

JUSTICE FUSTER BERLINGERI delivered the opinion of the Court.

**Synopsis**
Certiorari

We must decide whether the Civil Code sec. 1489 action ([31 L.P.R.A. § 4130](...)) in favor of materialmen and workers –in a project agreed by the contractor– and against the project owner, accrues as of the moment the supplier or worker makes an *out-of-court* claim to the owner.

**I**

Around March 1992, Dycrex Construction & Co., S.E. (Dycrex) was general contractor in the project known as "Teodoro Moscoso Bridge," in the San José Lagoon, Carolina. Dycrex sought quotations from several companies to dredge up approximately 24,000 cubic meters of sludge and sand from the lagoon. Andrew Marine Services, Inc. (Andrew Marine) and Puerto Rico Dredging and Marina Contractors, Inc. (Dredging) were among the quoting companies. On May 1, 1992, after examining the quotations, Dycrex selected, and contracted with Andrew Marine, but not before advising said company that the dredging had to be done as quickly as possible because the hired pile-driving barges would be arriving in mid-July. Approximately one-and-a-half months after Andrew Marine began to dredge the lagoon, Dycrex, sure that Andrew Marine would not finish the job within the agreed term, contacted Dredging to ask for a new quotation. This time Dycrex required a larger dredge.

On June 15, 1992, Dredging sent Dycrex its quotation. Dredging said that it would use an "Ellicot" dredge measuring 14 inches in diameter to dredge up the 24,000 cubic meters of sludge and sand, and that it would install approximately 6,500 feet of polyethylene pipe measuring 14 inches in diameter. The job included assembling and disassembling the necessary equipment. Dredging's price for moving the dredging equipment was $100,000, plus $10 per cubic foot dredged.

By letter of June 19, 1992, Dycrex informed Dredging of its plans to award it the dredging contract. Dycrex further advised Dredging to begin making arrangements to obtain the insurance and bond necessary for the subcontract.

In this task, Dredging, on June 25, 1992, requested a quotation from Edwin V. Goss, Inc. (Goss) for the transportation of the dredge. Goss's $25,850 quotation included removing the dredge from the Pozuelos Bay in Guayama, securing it to a platform, transporting it to the San José Lagoon, and removing it from the platform. The quotation did not include assembling the dredge, which was unassembled. According to the quotation and the agreement reached by both parties, Dredging would pay half the sum agreed at the commencement of the work, and the balance upon completion of the same.

On June 27, 1992, Dredging issued Goss a check for $12,900. With this check in hand, Goss proceeded to remove and transport the dredge from the Pozuelos Bay to the San José Lagoon. At the San José Lagoon, Dredging asked Goss to assemble the dredge and place it in the water. Goss finished this job on July 8, 1992. For this service, Goss billed an additional $25,709.50. At this point, Dredging owed Goss the $12,950 balance for the first bill and the $25,709.50 additional bill. Thus, by letter sent directly to Dycrex on July 29, 1992, Goss informed the amount owed by Dredging and asked its help to collect the same. Dycrex replied that since July 16, 1992, it had paid Dredging $100,000 for the transportation of the dredge and, therefore, had no further obligation with said company. This notwithstanding, on July 31, 1992, and on August 12, 1992, following Goss's out-of-court claim, Dycrex paid Dredging $14,970 and $50,000.

Case:17-03283-LTS Doc#:9932-1 Filed:01/14/20 Entered:01/14/20 17:34:31 Desc: Exhibit 1 Page 3 of 8

Goss, Inc. v. Cycrex Const. & Co., S.E., 1996 (JTS 103 (1996))
141 D.P.R. 342, 1996 P.R.-Eng. 499,344, P.R. Offic. Trans.

On August 14, 1992, Goss filed an action for collection of money against Dredging and against Dycrex, as general contractor, to claim the amount owed.

After this action was filed, Dycrex and Dredging clashed over their performance of the dredging contract. Dredging abandoned the project, Dycrex rescinded the contract, and, on January 15, 1993, Dredging filed a cross-claim against Dycrex in Goss's action.

On March 23, 1994, the District Court, Carolina Part, found for cross-claimant Dredging. According to the court findings, the agreement between Dycrex and Dredging involved the dredging of 24,000 cubic meters of material, not the smaller amount left in the lagoon following Andrew Marine's dredging, at the time of the second quotation. Thus, the court concluded that Dycrex had deceived Dredging with regard to the amount of cubic meters for the sole purpose of obtaining a better quotation.

On the other hand, the court found that Dredging and Dycrex were solidarily liable for the $38,659.50 owed to Goss. To such effect, the court ruled that the initial contract between Goss and Dredging solely included removing the dredge from the water in the Jobos Bay, transporting it by road to the San José Lagoon, and taking it down from the platform. The dredge was unassembled. Consequently, Goss had to be paid the $12,950 balance of the original contract, plus $25,709.50 for the additional work: lifting the dredge parts, assembling the dredge, and placing it in the water. The trial court further ruled that the amount paid by Dycrex to Goss as a result of the judgment was in addition to the amount it had to pay Dredging.

On April 22, 1994, Dycrex filed a notice of appeal with the Superior Court, Carolina Part, essentially alleging that the District Court erred in ruling that Dredging's breach of contract was due to Dycrex's consent or fault. Dycrex further alleged that for it to be held liable, the balance owed Goss had to be included in the amount presumably owed Dredging, and, therefore, the trial court erred in ruling that the amount to be paid to Goss was additional to the amount it would have to pay Dredging for the same work.

On December 28, 1994, the Superior Court partially reversed the judgment of the District Court and ruled that Dycrex never induced Dredging to believe that it would dredge 24,000 cubic meters. The court ruled further that Dredging breached the terms of the contract by not completing the dredging within the agreed term and by not depositing the sludge, sand and clay at the designated site. Consequently, the court dismissed Dredging's cross-claim, accepted Dycrex's evidence of the damages as a counterclaim, found for Dycrex, and remanded the case to the District Court for a hearing to receive evidence of Dycrex's liquidated damages.

Regarding Goss's action, the court upheld the judgment against Dredging, but dismissed the claim against Dycrex. The Superior Court ruled that under Civil Code sec. 1489, Dycrex's liability was subject to the debt existing between said company and Dredging at the time the *judicial claim* was filed, regardless of the debt existing when the out-of-court claim was made. Since on the date the complaint was filed the liquidation of the contract showed a balance in favor of Dycrex, the court dismissed Goss's action against Dycrex. A copy of the notice of this judgment was filed in the record of the case on January 12, 1995.

Aggrieved by this decision, on February 6, 1995, Goss filed a petition for certiorari with this Court. Insofar as it is pertinent, it assigned the following error:

1. The Honorable Superior Court erred in concluding, as a question of law, that Goss's July 29, 1992 out-of-court notice to Dycrex about the debt of its subcontractor has absolutely no legal value and, therefore, does not turn it into Dycrex's creditor.

We issued the writ of certiorari and required the pertinent briefs.

On October 30, 1995, Goss appeared before this Court, essentially alleging that since Civil Code sec. 1489 is not clear as to what constitutes a claim, such vagueness must be construed, according to the spirit of said provision, to include both in-court and out-of-court claims.

Dycrex essentially alleged (November 21, 1995) that the Civil Code sec. 1489 protection cannot be extended to a worker or materialman merely on the basis of a notice given to the owner of the work, without taking into consideration the rights of the owner under the contract and without a judicial determination as to the amount, if any, that the owner owes the contractor, and since when. Dycrex also alleged that this Court has repeatedly recognized that the direct action of the worker

Case:17-03283-LTS Doc#:9932-1 Filed:01/14/20 Entered:01/14/20 17:34:31 Desc: Exhibit 1 Page 4 of 8

Goss, Inc. v. Cycrex Const. & Co., S.E., 1996 JTS 103 (1996)
141 D.P.R. 342, 1996 P.R.-Eng. 499,344, P.R. Offic. Trans.

or materialman arises when the in-court claim is filed, and not by a mere notice. In support of this contention, Dycrex cited our decisions in *R. Román & Cía. v. J. Negrón Crespo, Inc.,* 109 d.p.r. 26 [9 P.R. Offic. Trans. 36] (1979), *Amer. Surety Co. v. Superior Court,* 97 P.R.R. 440 (1969), and *Armstrong, etc. v. Inter–Amer. Builders, Inc.,* 98 P.R.R. 720 (1970).

Both parties have appeared, and we adjudicate.

## II

Civil Code sec. 1489 (31 L.P.R.A. § 4130), at issue here, provides:

> Those who furnish their labor and materials in a work agreed upon for a lump sum by a contractor have no action against the owner, except for the amount the latter may owe the former *when the action is brought.* (Emphasis added.)

As we recognized in *R. Román & Cía.,* the protection that sec. 1489 grants to workers (those who furnish their labor) was adopted by the Spanish codification movement from sec. 1798 of the French Civil Code. See also XXIV–2 Q.M. Scaevola, *Código Civil* 158, Madrid (2$^d$ ed.1951); IV–2 F. Puig Peña, *Tratado de Derecho Civil español* 359, Madrid (2$^d$ ed.1973); R. De A. Yagüez, *Los créditos derivados del contrato de obra: su protección legal en la legislación civil* 11–12, Madrid (1969); 26 Laurent, *Principios de Derecho Civil francés* 95, Puebla (1900).

As we know, sec. 1489 establishes a clear exception to the general principle of contractual obligations under which contracts can only be effective between the contracting parties and their successors. Civil Code sec. 1209 (31 L.P.R.A. § 3374); *C. Armstrong e Hijos v. Díaz,* 95 P.R.R. 800, 804 (1968); *Amer. Surety Co. v. Superior Court,* 97 P.R.R. at 443; *R. Román & Cía. v. J. Negrón Crespo, Inc.,* 109 d.p.r. at 30 [9 P.R. Offic. Trans. at 42]; 3 Valverde y Valverde, *Tratado de Derecho Civil español* 600, Valladolid (4th ed.1937). As an exception to the general rule, our sec. 1489 gives workers and materialmen an opportunity to file a claim against the owner of the work even if they are not bound to said owner through a previous contractual relationship. *Amer. Surety Co. v. Superior Court,* 97 P.R.R. 440 (1969); 2 Santamaría, *Comentarios al Código Civil* 641, Madrid (1958); III–1 Prieto Cobos, *Ejercicio de las acciones civiles* 683, Pamplona (5th ed.1984).

This claim has been classified by this Court as a true direct action in favor of the materialman or worker, which action is not subject to the limitations of the action for subrogation that would protect him as creditor under Civil Code sec. 1064.[1] *C. Armstrong e Hijos v. Díaz,* 95 P.R.R. at 804; *Amer. Surety Co. v. Superior Court,* 97 P.R.R. at 443–444; *Empresas Capote, Inc. v. Tribunal Superior,* 103 D.P.R. 765, 770 [3 P.R. Offic. Trans. 1067, 1073–1074] (1975); *The Comm. Ins. Co. v. Cía. de Fomento Ind.,* 123 D.P.R. 150, 159 (1989); 2 De Diego y Gutiérrez, *Instituciones de Derecho Civil español* 326–327, Madrid (1959); J. Santos Briz, *El contrato de ejecución de obra y su problemática jurídica,* 56 Rev. Der. Priv. 379, 407 (1972); II–2 M. Albaladejo, *Derecho Civil* 316, Barcelona (8th ed.1989); 4 J. Castán Tobeñas, *Derecho Civil español, común y foral* 517, Madrid (14th ed.1988). Under sec. 1489, and contrary to the requirements of the action for subrogation, workers or materialmen are not required to proceed first against the property of the principal debtor. *R. Román & Cía. v. J. Negrón Crespo, Inc.,* 109 d.p.r. at 30 [9 P.R. Offic. Trans. at 42–43]; Scaevola, *supra, at* 161; II–2 J. Puig Brutau, *Fundamentos de Derecho Civil* 474, Barcelona (2$^d$ ed.1982). Likewise, the owner of the project cannot raise against the workers or materialmen any claim against the contractor –for compensation or otherwise– for a different work, not related to the contract. *C. Armstrong e Hijos v. Díaz,* 95 P.R.R. at 807; *R. Román & Cía. v. J. Negrón Crespo, Inc.,* 109 d.p.r. at 31 [9 P.R. Offic. Trans. at 43]; Scaevola, *supra, at* 164.

From the very moment the claim is made, the owner of the work turns into the debtor of the workers and materialmen and is no longer the debtor of the contractor, to the point that the creditors of the contractor cannot share with the workers and materialmen in the sum owed by the owner. *Amer. Surety Co. v. Superior Court,* 97 P.R.R. at 444–445; *Empresas Capote, Inc. v. Tribunal Superior,* 103 D.P.R. at 770 [3 P.R. Offic. Trans. at 1073–1074]. Thus, by virtue of said section, workers and materialmen would be protected from the contractor's insolvency or bankruptcy if, prior to such event, they had claimed the amount owed them from the owner of the work. *Amer. Surety Co. v. Superior Court,* 97 P.R.R. at 444–445; X–2 J.M. Manresa, *Comentarios al Código Civil español* 735, Madrid (6th ed.1969).

Case:17-03283-LTS Doc#:9932-1 Filed:01/14/20 Entered:01/14/20 17:34:31 Desc: Exhibit 1 Page 5 of 8

Goss, Inc. v. Cycrex Const. & Co., S.E., 1996 JTS 103 (1996)
141 D.P.R. 342, 1996 P.R.-Eng. 499,344, P.R. Offic. Trans.

In light of the above, we define the nature of this action as a "true measure for execution, and a means of payment [that confers] a preferential right to [workers and materialmen] and provides that no exceptions can be raised unless they stem from the very judicial approach which initially gave rise to the credit." *R. Román & Cía. v. J. Negrón Crespo, Inc.,* 109 d.p.r. at 31 [9 P.R. Offic. Trans. at 43]; *The Comm. Ins. Co. v. Cía. de Fomento Ind.,* 123 D.P.R. at 159; Santos Briz, *supra, at* 408.

The scope of the privileges acknowledged above has been limited by this Court solely for purposes of establishing that the action created by this section in favor of workers and materialmen does not entail the modification of the substantive situation that governs the relationship between the owner of the work and the contractor. *R. Román & Cía. v. J. Negrón Crespo, Inc.,* 109 d.p.r. at 31 [9 P.R. Offic. Trans. at 43].

To such effect, we have held that the right of the worker and materialman to claim from the owner of the work the amount owed them by the contractor on account of materials supplied and used in the project, is limited in two aspects:

a. to the amount the owner of the work may owe the contractor under the contract of said construction when the claim is made through the filing of the action;

b. the materialman does not acquire more rights before the owner than those the contractor had, so that the amount owed is necessarily subject to settlement by reason of readjustments or possible cross claims which might arise regarding the work agreed upon between the contractor employer and the owner thereof. However, said readjustments do not include the variation of the price of the construction contract by private covenant between the contractor and the owner of the work in prejudice of those who furnish materials.

*Armstrong, etc. v. Inter–Amer. Builders, Inc.,* 98 P.R.R. at 727; *El Toro Electric Corp. v. Zayas,* 106 D.P.R. 98, 101–102 [6 P.R. Offic. Trans. 133, 137] (1977).

We have also held that the privileges resulting from this action may be affected in cases in which the contractor assigns his credit against the owner of the work to a third person before the workers and materialmen file their action against the owner. *Armstrong, etc. v. Inter–Amer. Builders, Inc.,* 98 P.R.R. at 727–728; Scaevola, *supra, at* 170. In these cases, we have recognized that "[the] credit [of workers and materialmen] shall not have priority or preference over that of the assignee." *The Comm. Ins. Co. v. Cía. de Fomento Ind.,* 123 D.P.R. at 159.

Notwithstanding the mentioned doctrine, and contrary to Dycrex's allegations, the issue raised in this case –whether an in-court or out-of-court claim creates a direct action against the owner of the work under sec. 1489– has not been settled by this Court.

The cases cited by Dycrex, in which this Court allegedly settled this controversy, did not actually raise that issue. Thus, for instance, the controversies raised in *R. Román & Cía* were limited to two issues: (1) whether the funds withheld by the owner of a work to guarantee the faithful performance of the contract were subject to a sec. 1489 claim filed by the workers and materialmen regardless of the outcome of the work; and (2) if, following a complaint against the owner, the latter could make a payment to the surety that was in charge of the work.

We answered these queries in the negative when we held that the supplier or worker does not acquire, *vis à-vis* the owner of the work, more rights than those acquired by the contractor, and that the owner may raise against them any damage suffered as a result of the contractor's breach of the work contract. With regard to the second controversy, we held that "*the filing of the complaint* and the service of notice thereof on the principal turns the materialman filing the action into a direct creditor of the principal, giving him preference over the very contractor." *R. Román & Cía. v. J. Negrón Crespo, Inc.,* 109 d.p.r. at 36 [9 P.R. Offic. Trans. at 49]. (Emphasis added.) We also held that "from the time on which *action is brought against the owner* by the laborers, he becomes the latter's debtor." *Id.* at 35 [9 P.R. Offic. Trans. at 48–49]. (Emphasis added.) Our expressions in *R. Román & Cía.* solely sought to sanction the payment made by the owner to the surety-contractor after the complaint was filed, and not to establish that the filing of the complaint was the *only* way to activate the provisions of sec. 1489. We must also note that the controversy in that case did not require a ruling on whether an out-of-court claim turned the owner into a direct debtor of the workers, inasmuch as, contrary to the case under our consideration today, the payments made by the owner of the work to the contractor in that case were made after the subcontractor filed his action.

Likewise, in *Amer. Surety Co.* there was no need to address said query, inasmuch as the issue raised before us merely

Case:17-03283-LTS Doc#:9932-1 Filed:01/14/20 Entered:01/14/20 17:34:31 Desc: Exhibit 1 Page 6 of 8

Goss, Inc. v. Cycrex Const. & Co., S.E., 1996 JTS 103 (1996)
141 D.P.R. 342, 1996 P.R.-Eng. 499,344, P.R. Offic. Trans.

questioned whether the trial court erred in ruling that an income tax credit in favor of the Commonwealth of Puerto Rico for which a withholding order was issued on July 8, 1965, to secure effectiveness of the judgment, had preference over a sec. 1489 judicial claim filed on April 26, 1962, but adjudicated on October 10, 1966.

Since the tax lien in that case was recorded after the filing date of the complaint, we held that "petitioner became the direct creditor of the owner of the works from the very moment when it filed its *judicial claim*." *Amer. Surety Co. v. Superior Court,* 97 P.R.R. at 445. (Emphasis added.)

Finally, the issue in *Armstrong, etc. v. Inter–Amer. Builders, Inc.,* 98 P.R.R. 720 (1970), was whether a supplier's claim against the owner of a work was valid, even though the contractor assigned his credit to a third person after the complaint was filed. We answered said query in the affirmative, holding that since *"the filing* [date] *of the action,"* the owner of the work became the debtor of the materialmen and, thus, the supplier was not affected by the assignments made after the complaint was filed. *Armstrong, etc. v. Inter–Amer. Builders, Inc.,* 98 P.R.R. at 728. (Emphasis added.) Contrary to Dycrex's allegations, in that case we did not address the issue under our consideration today, because the credit assignment was made after the supplier filed the complaint.

In short, the issue before this Court today was not among the issues raised in the mentioned cases. Reference was made in those cases to court claims or actions merely because such claims or actions were at issue in those cases, and not to address the issue raised before us for the first time in this case.

### III

Obviously, the wording of Civil Code sec. 1489 does not define or specify which type of claim must workers or materialmen file in order to benefit from said provision. The lack of specificity in this section as to what constitutes a claim moves us to consider the intent, cause or motives that led the Legislature to adopt sec. 1489 directly from the Spanish Civil Code. When the wording of a statute is ambiguous or vague, we have the obligation to lean "towards the solution which best captures the impact of the statute in terms of the general welfare, and which best perceives the legislative intent of adopting the rule which best promotes the public interest." Civil Code sec. 19 (31 L.P.R.A. § 19); *Díaz Marín v. Mun. de San Juan,* 117 D.P.R. 334 [17 P.R. Offic. Trans. 403] (1986); *Asoc. Médica de P.R. v. Cruz Azul,* 118 D.P.R. 669 [18 P.R. Offic. Trans. 772] (1987); *Ind. Cortinera, Inc. v. P.R. Telephone Co.,* 132 D.P.R. (1993); *Col. Int'l Sek P.R., Inc. v. Escribá,* 135 D.P.R. (1994).

This Court, like some commentators, believes that Civil Code sec. 1489's right of action to workers and materialmen is a legacy based on considerations of public policy, morals, and equity. *Amer. Surety Co. v. Superior Court,* 97 P.R.R. at 443; *Empresas Capote, Inc. v. Tribunal Superior,* 103 D.P.R. at 770 [3 P.R. Offic. Trans. at 1073–1074]; *The Comm. Ins. Co. v. Cía. de Fomento Ind.,* 123 D.P.R. at 159. To such ends, the doctrine also admits that the action enshrined in the provision in question arises because it is unfair "that the owner or contractor, or both, even by fraudulent conspiracy, may unlawfully enrich themselves with the unpaid labor and contribution of the workers and materialmen." *C. Armstrong e Hijos v. Díaz,* 95 P.R.R. at 805; *Amer. Surety Co. v. Superior Court,* 97 P.R.R. at 443; Scaevola, *supra, at* 159; Puig Peña, *supra, at* 359; Castán Tobeñas, *supra, at* 517; 3 Espín Cánovas, *Manual de Derecho Civil español* 644, Madrid (6th ed.1983). The claim at issue has been described as an "authentic, true, exemplary, intrinsically direct action of unjust enrichment; it is a clear case of the *actio in rem verso* at play: the principal enriches himself through the property of the contractor, while the workers or suppliers, not related by any legal cause, are correlatively impoverished." I. Nart, *Contrato de obra y empresa,* 35 Rev. Der. Priv. 814, 825 (1951); Castán Tobeñas, *supra, at* 517.

As we pointed out in *Amer. Surety Co.,* this action seeks to facilitate prompt payment to workers and materialmen who helped perform another person's work.

On the other hand, Scaevola points out that there is a similarity between the workers and suppliers protected by this action and the builders in good faith in accession cases. Scaevola, *supra, at* 159; *Amer. Surety Co. v. Superior Court,* 97 P.R.R. at 445. In both situations there is a third person in good faith who has a right to the materials, another who supplies the materials, and an owner who benefits from the building. Thus, the same principles that allow the builder in good faith to recover from the owner the value of the supplied materials should apply to the materialmen and workers who worked for the owner of the work. After all, as Scaevola points out, "*[t]he work and industry of some*

Case:17-03283-LTS Doc#:9932-1 Filed:01/14/20 Entered:01/14/20 17:34:31 Desc:
Exhibit 1 Page 7 of 8

Goss, Inc. v. Cycrex Const. & Co., S.E., 1996 JTS 103 (1996)
141 D.P.R. 342, 1996 P.R.-Eng. 499,344, P.R. Offic. Trans.

*shall never be squandered [by others]*." Scaevola, *supra, at* 160. (Emphasis added.) It is only fair, then, that those whose labor and materials produced the work obtain an exclusive right over their credit. Laurent, *supra,* at 96.

Neither in the wording nor in the history of sec. 1489 do we find any requirement that may lead us to believe that the claim mentioned there solely refers to an in-court claim. On the contrary, the purposes of sec. 1489 would be clearly thwarted if we were to construe that the worker or materialman must always claim his credit from the owner of the work through a court action.[2] Always requiring the filing of a court claim would be tantamount to imposing an additional burden on workers and materialmen who are usually at a disadvantage in this type of contractual relationship. Also, it may lead the owner of the work, possibly in collusion with the contractor, to pay the latter the amount owed –after the out-of-court claim was made, but before the judicial claim was filed– in clear detriment to the guarantee which this section sought to provide to workers and suppliers.

Our task is to look for the most fair interpretation of the law: that which best advances its meaning and purpose. *Román Mayol v. Tribunal Superior,* 101 D.P.R. 807, 811 [1 P.R. Offic. Trans. 1095, 1099–1100] (1973); *Pueblo v. Tribunal Superior,* 104 D.P.R. 363, 366 [4 P.R. Offic. Trans. 504, 508] (1975); *Col. Int'l Sek P.R., Inc. v. Escribá,* 135 D.P.R. (1994); *Silva Iglecia v. F.E.I.,* 137 D.P.R. (1995).

Therefore, we conclude that the owner of a work turns into the debtor of the workers or materialmen and ceases to be the debtor of the contractor as of the very moment on which the workers or materialmen claim their credit from the owner of the work, either in or out of court.

This conclusion finds support in Scaevola's comments, which expressly recognize the out-of-court claim:

> [B]ecause the right conferred by section 1.597 upon workers and materialmen –which right arises from an eventual circumstance that may or may not take place– is not a condition of the work contract, and must not curtail the free development and novation of the same as long as such right is not asserted by those who may exercise it through an *in-court or out-of-court* claim.

Q.M. Scaevola, *supra, at* 164. (Emphasis added.)

In cases such as the one under our consideration, when the claim is made and a dispute arises between the worker or materialman and the contractor with regard to the amount owed by the latter to the former, the owner may file an action for consignation under Civil Code sec. 1130 (31 L.P.R.A. § 3180 *et seq.*) and Civil Procedure Rule 19 (32 L.P.R.A.App. III), giving notice of the same to the contractor and to the worker or materialman. For instance, the owner of a work may deposit with the court the amount claimed out of court in those cases in which he is informed by the contractor that, according to the latter, the amount owed to the worker or materialman is less than the amount claimed. Deposit thus made will prevent the owner of a work, who does not know the true amount owed by the contractor to the worker or materialman, from paying twice, that is, to the contractor and to the worker or materialman.

IV

On July 29, 1992, Goss claimed out of court from Dycrex the amount owed by Dredging. Although Dycrex received notice of said claim, it made two payments to Dredging totalling $64,970, to the detriment of the claim already made by Goss.

There is no doubt that the payments made by Dycrex to Dredging after the out-of-court claim was made were not justified, because from the moment the claim was made Dycrex ceased to be Dredging's debtor to become Goss's debtor for the amount owed it by Dredging. This notwithstanding, the trial court erroneously ruled that Goss was not covered by the Civil Code sec. 1489 provisions because when the action was filed the liquidation of the dredging contract showed a balance in favor of Dycrex. Considering, in view of the above, that the benefits of sec. 1489 were activated on the date on which the out-of-court claim was made, and not on the filing date of the complaint, we must remand the case to the Court of First Instance, Superior Court of Carolina, which, in keeping with our decision, shall hold an evidentiary hearing to determine whether, on the date Goss made its out-of-court claim, Dycrex owed money to Dredging on account of the dredging contract.

*The judgment rendered by the Court of First Instance, Superior Court of Carolina, on January 12, 1995, is reversed, and the case remanded for further proceedings consistent with this opinion.*

**Goss, Inc. v. Cycrex Const. & Co., S.E.,** 1996 JTS 103 (1996)
141 D.P.R. 342, 1996 P.R.-Eng. 499,344, P.R. Offic. Trans.

Case:17-03283-LTS Doc#:9932-1 Filed:01/14/20 Entered:01/14/20 17:34:31 Desc:
Exhibit 1 Page 8 of 8

Footnotes

1 Civil Code sec. 1064 (31 L.P.R.A. § 3028), provides:
> "Creditors, after having attached the property of which the debtor may be in possession, in order to collect all that is due them, may exercise all the rights and actions of the latter for the same purpose, excepting those inherent in his person; they may also impugn the acts which the debtor may have performed in fraud of their right."

2 The intent of the Legislative Assembly to thoroughly protect the interests of the worker evidences the capital importance and the principles of social justice embodied in the section under our consideration. The Legislature not only promulgated sec. 1489 at issue here; it also passed Act No. 73 of May 4, 1931 (29 L.P.R.A. § 186 *et seq.*), which gave construction workers or employees an opportunity to encumber said property with a preferred lien up to the total amount of their wages.

> The lien in these cases, unlike the sec. 1489 action, is subject, among other things, to a request for payment made by the worker to the owner or grantee of said property, or to his agent or representative, through the Department of Labor and Human Resources; and to the subsequent filing of a judicial claim in which the worker must state under oath the facts related to his claim and describe the property encumbered by the lien. 29 L.P.R.A. §§ 187 and 188. This act also requires that such claim be filed no later than one (1) year following completion of the work for which payment is claimed. 29 L.P.R.A. § 189.

> Obviously the lawmaker conditioned the protection of Act No. 73 on certain proceedings that had to be carried out by the worker. The Legislative Assembly, however, did not require similar proceedings to provide the sec. 1489 benefits; it only provided that by simply bringing action, the worker or materialman became a direct creditor of the owner up to the amount owed him by the owner when such action was brought.

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.