# EXHIBIT 2

Gonzalez Segarra v. CFSE, 188 D.P.R. 252 (2013)
2013 TSPR 34, P.R. Offic. Trans.

Case:17-03283-LTS Doc#:9932-2 Filed:01/14/20 Entered:01/14/20 17:34:31 Desc:
Exhibit 2 Page 2 of 21

Texto original en espanol

📄 KeyCite Yellow Flag - Negative Treatment

Declined to Extend by Aponte-Ramos v. Alvarez-Rubio, 1st Cir.(Puerto Rico), April 3, 2015

188 D.P.R. 252, 2013 WL 1395853
(P.R.), 2013 TSPR 34, P.R. Offic. Trans.

Wanda I. GONZÁLEZ SEGARRA, Ana I. Nieves Santiago, Zilka I. Moll Molina, Emelda Pizarro Cámara et al., Respondents

v.

STATE INSURANCE FUND CORPORATION, Petitioner.

En El Tribunal Supremo De Puerto Rico.
No. CC-2011-1051.
March 19, 2013.

Justice MARTÍNEZ TORRES delivered the opinion of the Court.

For the past several years, public agencies and corporations used to post internal job notices exclusively for their employees. This action, which was allowed by law or regulation in specific circumstances, ceased to be the exception and became the rule. This has spawned many questions about how that practice violates the merit principle that governs public service.

The instant case allows us to determine whether respondents' appointments through internal job posting violated the public policy embodied in the merit principle. [1]

**I**

The facts that led to this case arose when the Administratrix of the State Insurance Fund Corporation (SIFC), Atty. Zoimé Álvarez Rubio, annulled the appointments and promotions of 232 SIFC employees. Those appointments had been made by two former administrators through internal job notices posted during the 2001-2004 and 2005-2008 terms.

The annulment of those appointments and promotions was the result of an audit ordered by Atty. Álvarez Rubio on SIFC personnel files and human resources administration transactions made between January 2001 and December 2008. The purpose of this audit was to determine compliance with the standards and procedures that govern that field,

especially personnel transactions to which the merit principle applies.

After an analysis and review of personnel files and other related documents, the audit revealed the following:

> Pursuant to the Personnel Regulations of the State Insurance Fund Corporation of January 11, 2000, the managerial personnel recruitment procedures should be based on open competition in which State Insurance Fund Corporation employees and external candidates may participate. Between 2003 and 2008, the job posting procedures for vacant managerial positions changed from open competition to the posting of internal job notices exclusively for State Insurance Fund Corporation employees.
>
> ....
>
> Out of a total of 3,835 audited files, 232 of these were found to contain information that revealed this failure to comply with Article 14, Section 14.1 [of the SIFC Personnel Regulations] because no qualified candidate outside the State Insurance Fund Corporation was allowed to compete for those positions. Of the 232 files, 165 belonged to State Insurance Fund Corporation employees who had attained regular employee status prior to the cited personnel transaction, and 67 belonged to employees who had not attained permanent status in the Corporation at the time of the transaction.

Appendix at 174-175.

The audit also examined the provisions of Act No. 184 of 2004, as amended, known as the "Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico," specifically secs. 6.3 and 6.4 (3 L.P.R.A. §§ 1462b-1462c). The analysis of those provisions led to the conclusion that the recruitment process must allow all candidates to compete regardless of whether they work in the SIFC. Likewise, the audit found that Act No. 184 of 2004 and the Personnel Regulations for Managerial Employees of the State Insurance Fund Corporation, Regulation 6226, adopted on January 11, 2000 (Personnel Regulations), limited internal recruitment to a need for a specific type of expertise. In other words, the recruitment exception was to be allowed only after a technical analysis justified the posting of internal job openings exclusively for SIFC employees.

Gonzáléz Segarra v. CFSE, 188 D.P.R. 252 (2013)
2013 TSPR 34, P.R. Offic. Trans.

The report also stated that the 232 files contained no technical analysis or grounds that would justify an internal job posting procedure. The only thing found was a memorandum sent by former Administrative Director Olga Grajales Méndez to the SIFC Administrator at the time, Atty. Nicolas López Peña. The memorandum listed several positions for which, *"given their location,"* it was desirable to recruit personnel with competency or knowledge in the specific area.

The memorandum dated June 26, 2003, stated the following:

Pursuant to [Section 14.1 of the Personnel Regulations], we have determined that for certain positions, *given their location,* it is desirable to recruit personnel with competency in and/or knowledge of the procedures in the specific area.

For that reason, we request your authorization to post internal notices for these positions so that only Corporation employees may apply. Enclosed is a list of positions identified.

Appendix at 164.

The memorandum included an enclosure that listed the positions for which Grajales Méndez found it necessary to recruit personnel through internal job notices ("List of Positions Suggested for Internal Job Notices"). The then Administrator initialed the memo with a written comment: *Conforme* [Agreed]. *However, of the 23 respondent employees, only the number corresponding to Ramón J. Rodríguez González's position is mentioned (Position Number 3087, Investments Supervisor). The position numbers of the remaining respondent employees are not in that list. In other words, there is no other reason on record to justify the recruitment of the other 22 respondent employees through internal job postings.*

The audit states the following with regard to that practice:

The analysis conducted shows that several positions were included, such as: Executive Secretary, Administrative Officers, Investments Supervisors, Technical Assistants, Human Resources Management Analysts, Personnel Affairs Officers, Administrative and Operational Development Specialist, Cleaning Supervisor, among others; these are classes that, according to the classification plan currently in force, do not demand special requirements or a specific experience. In order to determine whether a position has specific functions that could only be acquired

in the Corporation, a market study or a technical study must be made to determine if the functions of a position are exclusive to it, and thus we may determine which positions can be excluded in order to issue an internal job notice and limit the competition to Corporation employees.

Appendix at 176-177.

The audit also took into consideration the fact that according to the Central Administration Personnel Procedures Handbook, the type of competency must be included in the recruitment standard. Specifically, the report cited the following:

"The Technician who prepares the draft of the Recruitment Standard shall preliminarily establish the type of competency. It may be either an entry-level or promotion competency. In the case of a promotion competency, it must be specified whether it is limited to the agency or to the career service in general.

In making this determination, the nature of the work, the minimum standards established, the class specialization level, projected vacancies, candidate qualifications, the job market, and the recommendations made by specialists in the field, associations, and professional associations, shall be taken into consideration."

We must conclude that because of the failure to conduct the technical analysis required to amend the Recruitment Standards in order to determine whether the job notices in question would be for promotion and not for entry-level recruitment, the Administrator's decision was based on absolutely no supporting technical or regulatory grounds.

Appendix at 177-178. (Emphasis suppressed.)

On the other hand, the audit report found that the provisions of art. 9, sec. 9.5 of the Personnel Regulations, at 23-24, which govern changes in job categories from confidential to career positions, were not followed. The auditor reasoned that the change in category established therein is an exception whereby an employee may obtain a permanent appointment to a career position without having to compete. Consequently, any variance would deprive other qualified candidates of the right to compete on equal footing for those positions. The report concluded that the analysis showed that there was a change in the category of three positions: Contracting Director, Risk Management Director, and Education and Development Director. It further stated that an analysis of those changes showed that the requirements of sec. 9.5 of

2013 TSPR 34, P.R. Offic. Trans.

the Personnel Regulations (which are crucial in category change cases) had not been met.[2] There was also a failure to comply with the Personnel Regulations requirements for the application of the exception mechanism. Consequently, the report recommended the annulment of the classification changes made in the positions of Contracting Director, Education and Development Director, and Risk Management Director, as well as the dismissal of those who held these positions, since in the absence of a property right, they were not entitled to reinstatement.

After studying the recommendations made in the report, Atty. Alvarez Rubio sent individual letters to the affected employees to inform them of the intent to annul their appointments. All the letters contained a general explanation of the audit and the finding that the appointment had been made through an internal job notice. She stated that appointments made by way of internal job posting procedures constitute an extreme exception to the general publicity principle that underlies the merit principle, and explained that in order to resort to internal job posting procedures for personnel recruitment, it was necessary to show that the methodology employed was well grounded and set forth the reasons for excluding the position from an open job announcement, general publicity, and public notices of job opportunities.

Moreover, each letter informed the employee that the pertinent technical analysis had not been made in his or her specific case, and that this contravened the provisions of art. 14, sec. 14.1 of the Personnel Regulations. The letter stressed the importance of publicizing job opportunities to ensure that all citizens may compete for public service jobs as required by Act No. 32 of 2006 (3 L.P.R.A. §§ 1461b-1462c),[3] which is applicable to the SIFC. Finally, the parties were informed that they had the right to seek an informal administrative hearing.

The parties in this case timely sought the customary informal hearing and appeared before the appointed examining officer. After holding the corresponding hearings, the examiner recommended that the nullity of all the appointments be ratified. Attorney Alvarez Rubio adopted the recommendation and notified the employees about the annulment of their respective appointments. As a result, the employees who previously held regular managerial career positions were reinstated in those positions and their salaries were adjusted to the new pay scales, but they retained the merit-based increases they had received while they held the annulled positions. In turn, the merit-based increases received

by the employees who were reinstated to their union jobs were eliminated, and they were granted the pay hikes already stipulated in the bargaining agreements. Lastly, a last group of employees was dismissed because they had not held a regular career position prior to their annulled appointments.

Finally, the aggrieved employees were informed of their right to appeal from the decision to the SIFC Board of Appeals. Twenty-three employees appealed individually from the decision. Since the Managerial Employees Association and the Managerial Employees Federation also appealed, the Board consolidated all the appeals.

In their appeals, the employees argued that their due process rights were violated in the filing of charges and the informal hearing. They also argued that: 1) their appointments were legal; 2) administrative actions enjoy a presumption of correctness; 3) the doctrines of res judicata and collateral estoppel of the decisions of the current administrator were applicable; and 4) there was political discrimination.

On April 14, 2011, the Board issued its final decision, which was signed by its Chairman, Atty. Godwin Aldarondo Girald, and Atty. Fernando Font Lee, the Administration's representative, who also issued a concurring resolution. In turn, Atty. Myriam M. Perez Stuart, representative of the managerial employees, signed a dissenting resolution. First of all, the Board's decision stated that since the appeal involved an interpretation of regulatory provisions (issue of law), the case was summarily resolved *with the consent of the parties.*

Initially, the Board determined that the notice sent to the employees met due process requirements, and it specifically found that the letter of notice expressly stated the adverse actions that would be taken against the employee (that is, the annulment of the appointment and the intent to demote or separate from service), and gave the reasons for such action. The Board also reasoned that the letter included a description of the evidence in the agency's hands-- which was, essentially, the audit findings. It also stated that since the employee was advised of his or her right to an informal hearing, the letter constituted adequate notice to the employee. Finally, the Board stressed that based on this notice, the employees asserted their right to seek the informal hearing.

Likewise, the Board found that the decision to deny discovery and cross-examination of witnesses conformed to due process, since it deemed that the informal hearing met the minimum due process required in those circumstances.

Gonzalez Segarra v. CFSE, 188 D.P.R. 252 (2013),
2013 TSPR 34, P.R. Offic. Trans.

The Board reasoned that the examining officer heard the employees and examined the documentary evidence they presented. Based on that evidence, the examining officer submitted a report and made his recommendations to Atty. Alvarez Rubio, who made the final decision.

Regarding the merit principle and the legality of the appointments, the Board stated that public service personnel laws and the provisions of arts. 13 and 14 of the Personnel Regulations make it mandatory to amply publicize job openings for the purpose of attracting the best qualified people. The Board recognized that the statutes and the SIFC Personnel Regulations empower the appointing authority to limit the type of competition in specific position classes, but clarified that this is an exception that demands strict compliance with the regulatory requirements that justify such action.

The Board addressed the question whether the former SIFC Administrator, within his delegated authority, exercised his executive discretion to appoint his employees, establish recruitment standards, and determine the type of competition recommended in each case. The Board concluded that once the standards and procedures to be followed in this administrative process are established by regulation, the Administrator's executive powers are restricted and he must abide by them. Consequently, if he should overstep his authority and fail to follow those standards and procedures, his acts are deemed *ultra* vires.

Furthermore, the Board stated that the problem was that in the period between 2001 and 2008, internal job postings became routine and were used to fill positions that did not need to be filled exclusively by people with vast experience or knowledge of SIFC affairs. Accordingly, the Board concluded that the regulatory provision that limited job competition to experienced SIFC employees and former employees was an exceptional rule that must be decided on a case-by-case basis.

On the other hand, the Board rejected the argument that the Personnel Regulations required a technical analysis to justify the art. 14 exception, and argued that although this was desirable and advisable, the article only required that the Administrator exercise his discretion knowingly and intentionally. That is, the Administrator must indicate what specific experience in the SIFC a candidate must have for a specific "position class." In other words, the Administrator is only required to put forth a well-founded business reason for narrowing his discretion to select from a broad spectrum

of candidates and preferring instead to recruit exclusively from among agency employees. According to the Board: 1) a decision must be made by the Administrator; 2) there must be a specific situation or case; and 3) a position class that, because of its very nature, requires a specific and not generalized experience, must be identified. Finally, the Board concluded that the only reason that may justify the exclusion of persons interested in applying for posted job notices must be based on the needs of service. In other words, the very nature of the position must make it mandatory for the candidate to have a specific experience in the SIFC related to the functions he or she is to perform.

Likewise, the Board found that there is a substantial difference between giving preference to current agency employees for promoted positions and providing appointment opportunities exclusively for them. Thus, the grant of preference requires uniform, transparent, and precise standards. For instance, additional points or percentage may be awarded to employees when evaluating their qualifications for a position. This would help employees enter the registry of eligible candidates. The appointing authority can then choose the candidate deemed most suitable from that registry. On those grounds, the Board rejected the argument raised by some employees who contended that, regardless of the qualifications, experience, academic background or special attributes a candidate may possess, once a SIFC employee meets the minimum requirements for a position, he or she must be chosen over any external candidate. The Board explained that although this interpretation may seem reasonable, it does not best serve the public interest, inasmuch as the State has an interest in attracting the best talent to the public service.

With regard to the promotions, the Board held that the fact that the Personnel Regulations provide promotion opportunities and mechanisms does not mean that positions that could entail a promotion must be given to agency employees. It also stated that what the Regulations aim to do is to have the SIFC create training programs, pay for studies, or provide work experience that would allow employees to acquire new skills that would better qualify them for promoted positions. Consequently, the Board held that said wording could not be construed as an obligation of the agency to grant an employee a position just because it represents a promotion, and neither may this mean that the agency must exclude qualified candidates from the community at large. The Board deemed that the employee must compete with the rest of the candidates on equal footing, except when a compelling state

Gonzalez Segarra v. CFSE, 188 D.P.R. 252 (2013)
2013 TSPR 34, P.R. Offic. Trans.

interest is at stake. The Board concluded that a system of free competition can best protect the merit principle established by legislation and caselaw.

Likewise, the Board dismissed the SIFC's argument that for an internal job announcement to be valid, former employees must be afforded an opportunity to compete. Its conclusion rested on the term employed in Personnel Regulations sec. 14.1, at 71, which provides: "[C]ompetition *may* be limited to employees and former employees who possess such experience in the Corporation." (Emphasis added.) The Board deemed that the use of that term gave the Administrator *discretion* to include former employees. The Board believed that although Personnel Regulations sec. 13.7 requires that a re-entry registry be kept for former employees, the agency failed to show that one such registry existed on the date of the job postings. Since no list of former employees exists, it was not necessary to require the SIFC to inform these employees. Thus, the Board concluded that Personnel Regulations sec. 14.1 empowers the Administrator to identify the position classes for which the competition is limited to employees, to former employees, or to both simultaneously.

The Board also refused to adopt the SIFC's argument that the internal job posting mechanism that was used contravened the general publicity requirement under Act No. 32 of 2006. It concluded that said act is not controlling in this case for appointments made prior to its effective date, although it certainly is for subsequent appointments. Nonetheless, the Board specified that since the SIFC Regulations contain the publicity and competition requirements, Act No. 32 of 2006 merely broadened the scope of the rule that existed prior to the passage of said act.

The Board concluded that Personnel Regulations sec. 14.1 does not authorize the identification of individual positions, but rather of a position class. To arrive at this conclusion, the Board employed the definition of "classes" in Personnel Regulations art. 7[4] and explained that class specifications were the result of a technical study made by the SIFC and a work tool in the human resources management field as an essential element of the merit principle. It also stated that every agency has position classes that demand a type of knowledge that is only acquired through work experience gained within the organization, and that is why organizations have discretion to make decisions of this type within a reasonable framework. Thus, experience and academic background are requirements that apply to all positions within a class. For that reason, the Board held that

the Administrator's exercise of his discretion is valid insofar as his decision applies to a position class, since this is the only manner of protecting the public interest, guaranteeing equal treatment, and avoiding favoritism, arbitrariness and capricious decisions in the management of human resources. Consequently, the Board stated that it is not possible to require experience for one position and not require it for another. A position is the same regardless of its location.

The Board found that the wording of the memorandum sent by Olga Grajales Mendez did not meet the requirements of Personnel Regulations sec. 14.1 because it was too ambiguous, and that absent any other official justification, it lacked validity to limit the competition to current employees because of its arbitrariness. The Board also deemed that the reason given to justify the internal job postings--the location of the positions--was erred, inasmuch as there was nothing special about the locations (San Juan, Bayamón, Carolina, Ponce, Caguas, Arecibo, and Mayagüez). These places were not remote, hard to reach, or so dangerous that it was hard to recruit interested personnel. Finally, the Board ruled that the use of the phrase "it is desirable" in the memorandum as the reason for the internal job postings contravenes the words of Personnel Regulations sec. 14.1, at 71, which "require a specific type of experience." Thus, the Board concluded that the memorandum alone did not justify the limitation imposed on the competition and would only have weight and validity if additional evidence arose that the identified classes require broad knowledge of the SIFC, its operations, standards, regulations, and procedures.

The Board also denied the contentions raised by a group of employees that the vacancies were filled with existing personnel in response to the cost-control policy established by Act No. 111 of 2006 (3 L.P.R.A. § 8763 nt.), "Act to Control the Government's Payroll Expenses for the Fiscal Reform of the Government of Puerto Rico of 2006," and Act No. 103 of 2006, "Commonwealth of Puerto Rico Government Fiscal Reform Act," 3 L.P.R.A. § 8751 *et seq.* The Board examined those acts and explained that the purpose of Act No. 111 of 2006 was to control government payroll expenses charged to the General Fund in order to reach a balanced budget. On the other hand, the purpose of Act No. 103 of 2006 was to prevent the creation of new positions in order to reduce the payroll expenses of the central government. The Board stated that Management and Budget Office Memorandum 82-07 of August 30, 2006,[5] could not extend these payroll expense control standards and guidelines, without legislative approval, to public corporations that do not depend on

the Government's General Fund. The Board accepted that although the letter was not binding upon the SIFC, nothing barred the Administrator from adopting that policy as a protective measure, and explained that the Budget Division recommended this standard to the Administrator in order to avoid exceeding the percent allowed and authorized for SIFC administrative costs. This arose from a memorandum dated June 26, 2006, sent to the Administrator by Budget Director Lydia Correa Gomez. The Board stated that there was no evidence on record that the Administrator at the time or the SIFC Governing Board had adopted the terms of that memorandum. Thus, since Correa Gomez was not the appointing authority, it could not be assumed that the SIFC had adopted this policy.

As for the argument raised by other employees based on our decision in *Laboy v. E.L.A.,* 115 D.P.R. 190 [15 P.R. Offic. Trans. 257] (1984), the Board held that said case was not applicable because the SIFC Personnel Regulations were amended to eliminate the obligation to favor an employee over an external candidate.

Lastly, the Board dismissed the allegations of political discrimination because the employees could not establish a prima facie case. The Board reasoned that even assuming that the allegations were true, the SIFC proved that it had nondiscriminatory reasons for its actions, such as the uncontroverted audit findings.

In his concurrence, Atty. Fernando Font Lee agreed with the Board's conclusion that there had been no due process violation. He likewise agreed with the Administratrix's annulment of the job postings because these were internal or closed and, therefore, illegal and erred, since that practice of posting this type of job notice had become the rule rather than the exception, all in violation of the merit principle. Nonetheless, he stated that when closed or internal job announcements are made, regardless of the position classes or groups, a technical analysis was necessary, and that since Grajales Méndez's letter to the Administrator was far from being the required technical analysis, other factors alien to the Personnel Regulations were taken into account to authorize and post the internal job notices.

Aggrieved, 20 employees resorted to the Court of Appeals in four separate petitions for judicial review that said court then consolidated.[6] After examining the case, the intermediate appellate court reversed after concluding as follows:

*[L]egislation applicable to this case does not expressly require the use of a job notice open to the general public* in order to attract personnel more capable and suitable to fill managerial positions in the public service. On the contrary, the law precisely contemplates the use of an internal job notice as a means to *ensure* the competition that is to take place to fill the position in question, especially at higher levels, such as the positions held by managerial personnel. Therefore, in recruitment, selection or promotion processes, agencies are not always obligated to post *open competition* job notices in order to comply with the merit principle embodied in these laws. On the contrary, what is sought is the retention and professional growth of its own personnel.

Judgment of the Court of Appeals, Appendix, at 44.

Citing *Laboy,* at 194 [15 P.R. Offic. Trans. at 263], the intermediate appellate court concluded that the Administratrix's interpretation of Personnel Regulations secs. 13.2 and 14.1 was too strict.

Consequently, the Court of Appeals deemed that the SIFC Administrator had ample discretion to determine the type of competition to be established for job notices posted for promotion or recruitment purposes.

On the other hand, the Court of Appeals held, as the Board had done, that the employees' fundamental rights were not violated at the first stage of the proceedings. Said court also deemed that the employees were not deprived of the formal hearing required by due process for career employees before affecting their property rights.

The Court of Appeals also held that the Board did not err in summarily deciding the case because what was at issue was an interpretation of legal provisions. Likewise, it stated that the employees were not victims of political discrimination because there were objective facts--such as the audit--that justified the contested administrative action. The appellate court concurred with the Board of Appeals that the employees failed to establish a prima facie case of political discrimination.

In gist, the Court of Appeals held:

(1) compliance with the merit principle does not require a strict recruitment, selection or promotion process that may be attained only through open competition; (2) the

Gonzalez Segarra v. CFSE, 188 D.P.R. 252 (2013)
2013 TSPR 34, P.R. Offic. Trans.

Case:17-03283-LTS Doc#:9932-2 Filed:01/14/20 Entered:01/14/20 17:34:31 Desc:
Exhibit 2 Page 8 of 21

decision of the Administrator who made the appointments is protected by a presumption of correctness that was not rebutted in this case; and (3) both the Administratrix and the Board of Appeals determined that the appointments were void because of their failure to meet some legal requirements that were not set forth in either the public personnel laws or the Fund's Personnel Regulations.

Judgment of the Court of Appeals at 64, Appendix at 71.

Aggrieved, the SIFC appeals to this Court, essentially alleging that the Court of Appeals violated the merit principle by declaring valid the internal job postings based on the liberal nature of the recruitment process. The SIFC further argues that the intermediate appellate court erred in holding that the internal job postings complied with the mandate of Act No. 111 of 2006. Likewise, the SIFC believes that the appellate court erred in concluding that the grounds invoked by the SIFC to annul the appointments were insufficient in law. Finally, it contends that the Court of Appeals erred in weighing the evidence because it established arbitrary parameters for examining an administrative decision without resting on the evidence examined by the administrative forum.

On March 30, 2012, we issued the writ of certiorari. With the benefit of the parties' briefs, we are ready to decide.

## II

[1-2] We have reiterated on countless occasions "that the decisions of administrative forums enjoy a presumption of regularity and correctness. The conclusions of these agencies deserve the deference of the courts, and we must be cautious in disturbing administrative findings." *Empresas Loyola v. Com. Ciudadanos,* 186 D.P.R. 1033, 1041 [86 P.R. Offic. Trans. ___, ___ ] (2012). See: *Acarón et al v. D.R.N.A,* 186 D.P.R. 564 [86 P.R. Offic. Trans. ___ ] (2012); *Calderón Otero v. C.F.S.E.,* 181 D.P.R. 386, 395 [81 P.R. Offic. Trans. ___, ___ ] (2011); *Asoc. Fcias. v. Caribe Specialty et al II,* 179 D.P.R. 923, 940 [79 P.R. Offic. Trans. ___, ___ ] (2010); *Otero v. Toyota,* 163 D.P.R. 716, 727 [63 P.R. Offic. Trans. ___, ___ ] (2005). See also sec. 4.5 of Act No. 170 of August 12, 1988, known as the "Uniform Administrative Procedure Act" (UAPA), as amended, 3 L.P.R.A. § 2175. The reason for this rule is clear: it "is based on the vast experience and expert knowledge these bodies have of the matters entrusted to them." *Hernández, Álvarez v. Centro Unido,* 168 D.P.R. 592, 614 [68 P.R. Offic. Trans. ___, ___ ] (2006). See also:

*P.C.M.E. v. J.C.A.,* 166 D.P.R. 599, 616-617 [66 P.R. Offic. Trans. ___, ___ ] (2005); *Otero v. Toyota,* 163 D.P.R. at 727 [63 P.R. Offic. Trans. at ___ ]. For that reason, the guiding principle for courts when reviewing administrative decisions shall be the reasonableness of the agency's action. *Id.* Based on that deference and reasonableness, the courts shall then examine the findings of fact of administrative bodies.

In keeping with the above:

[T]he courts should not disturb or alter the findings of fact of an administrative body "if these are supported by substantial evidence contained in the totality of the administrative record." As we have defined it on numerous occasions, *substantial evidence* "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Otero v. Toyota,* 163 D.P.R. at 727-728 [63 P.R. Offic. Trans. at ___ ]. (Citations omitted and emphasis added.)

[3] Therefore, an aggrieved party that wishes to rebut administrative findings must prove the existence of other evidence that shows that the administrative action is not supported by substantial evidence, or that reduces or detracts from the weight of the contested evidence. *Id.* at 728 [63 P.R. Offic. Trans. at ___ ]. See also *Domínguez v. Caguas Expressway Motors,* 148 D.P.R. 387, 397-398 [48 P.R. Offic. Trans. ___, ___ ] (1999). If the party fails to do so, the court shall defer to the findings and shall not substitute its judgment for that of the agency. *Id.*

[4] However, when it comes to conclusions of law, the story is quite different: "the court may review them in all respects without being subject to any rule or standard." *Pereira Suárez v. Jta. Dir. Cond.,* 182 D.P.R. 485, 513 [82 P.R. Offic. Trans. ___, ___ ] (2011) (citing *Rebollo v. Yiyi Motors,* 161 D.P.R. 69, 77 [61 P.R. Offic. Trans. ___, ___ ] (2004)). See also UAPA sec. 4.5. "When reviewing agency decisions, courts ordinarily accord great deference and respect to the interpretation of statute made by the body empowered by law to oversee its implementation and enforcement." *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425, 436 [44 P.R. Offic. Trans. ___, ___ ] (1997). Thus, "[i]f the agency's interpretation of the statute is reasonable, even if it is not the only reasonable one, *the courts must defer to it." Hernández, Álvarez v. Centro Unido,* 168 D.P.R. at 616 [68 P.R. Offic. Trans. at ___ ].

Gonzalez Segarra v. CFSE, 188 D.P.R. 252 (2013)
2013 TSPR 34, P.R. Offic. Trans.

[5] In short, when exercising their reviewing function, courts cannot freely discard agency conclusions and interpretations of the statute and substitute their interpretation for that of the agency. "Such judicial deference to administrative expertise, however, yields in the face of an unreasonable or illegal action. The agency's interpretation also yields when it leads to results that are incompatible with or contrary to the purpose of the statute construed and its public policy." *Pacheco v. Estancias,* 160 D.P.R. 409, 433 [60 P.R. Offic. Trans. ___, ___ ](2003). (Citations omitted.) In light of this fact, judicial deference shall yield only in these circumstances:

(1) When [the agency decision] is not supported by substantial evidence; (2) when the administrative body has erred in the application of the law; and (3) when there has been an unreasonable or illegal action. If the court does not face any of these situations, and even if there is more than one reasonable interpretation of the facts, the interpretation chosen by the agency concerned must be upheld.

*Otero v. Toyota,* 163 D.P.R. at 729 [63 P.R. Offic. Trans. at ___ ].

### III

[6] Our Constitution and the United States Constitution recognize the fundamental right to due process of law. U.S. Const. amends. V and XIV (L.P.R.A., vol. 1); P.R. Const. art. II, § 7 (L.P.R.A., vol. 1); *Domínguez Castro et al. v. E.L.A. I,* 178 D.P.R. 1, 35 [78 P.R. Offic. Trans. 1, ___ ] (2010); *Rivera Santiago v. Srio. de Hacienda,* 119 D.P.R. 265, 273 [19 P.R. Offic. Trans. 282, 292] (1987).

The constitutional guarantee of due process "imposes on the State the obligation to guarantee that any interference with individual liberty and property interests will take place through a fair and equitable procedure." *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 D.P.R. 881, 887-888 [33 P.R. Offic. Trans. ___, ___ ] (1993). See also *López Vives v. Policía de P.R.,* 118 D.P.R. 219, 230-231 [18 P.R. Offic. Trans. 264, 277-278] (1987). Now then, the protection afforded by due process comes into play when an individual liberty or property interest is at stake. *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 D.P.R. at 888 [33 P.R. Offic. Trans. at ___ ]. See also: *Board of Regents v. Roth,* 408 U.S. 564, 569-570 (1972); *Domínguez Castro et al. v. E.L.A. I,* 178 D.P.R. at 46 [78 P.R. Offic. Trans. at ___ ]; *Rivera Santiago v. Srio. de Hacienda,* 119 D.P.R. at 273-274 [19 P.R. Offic. Trans. 292-293].

[7] "Career public employees in Puerto Rico have a property interest in their positions and, therefore, are entitled to due process." *Vázquez González v. Mun. de San Juan,* 178 D.P.R. 636, 643 [78 P.R. Offic. Trans. ___, ___ ] (2010). See also *Domínguez Castro et al. v. E.L.A. I,* 178 D.P.R. at 46-47 [78 P.R. Offic. Trans. at ___ ]. The following requirements must be met to fulfill constitutional due process guarantees: "(1) adequate notice of process; (2) proceedings before an impartial judge; (3) opportunity to be heard; (4) right to cross-examine witnesses and examine evidence presented against the individual; (5) right to be represented by counsel, and (6) a decision based on the record." *Vázquez González v. Mun. de San Juan,* 178 D.P.R. at 643 [78 P.R. Offic. Trans. at ___ ]. See also *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 D.P.R. at 889 [33 P.R. Offic. Trans. at ___ ]. In the same vein, in order to interfere with the property rights of public employees, "it is necessary to hold an informal pretermination hearing at which the employee is afforded an opportunity to be heard." *Vázquez González v. Mun. de San Juan,* 178 D.P.R. at 643-644 [78 P.R. Offic. Trans. at ___ ].

In its judgment, the intermediate appellate court held that the employees' fundamental rights were not violated during the first stage of the proceedings. This encompassed a reevaluation of the notification process, the content of the letter of intent to annul their appointments, the timely informal hearings, and the notice given to the aggrieved employees regarding their right to appeal from the Administrator's final decision. This is not at issue. We need only determine whether, as the Court of Appeals held, respondents' appointments were made in accordance with the discretionary powers of the SIFC Administrator.

### IV

[8] "The 'merit principle' affirms that public employees must be selected and retained exclusively on the basis of their merits and fitness." Antonio Cuevas Viret, *La negociación colectiva y el sistema de mérito en Puerto Rico* 16, San Juan, Governor's Committee on the Study of Labor Relations in Puerto Rico Public Service (1974). To achieve this goal, it is necessary "that it [be] the fittest who serve the Government and that every employee be selected, trained, promoted and retained in his employment in consideration of his merit and ability, without discrimination by reason of race, color, sex, birth, age, origin or social condition or political or religious ideas." *Rodríguez v. Bco. Gub. de Fom. P.R.,* 151 D.P.R. 383, 410 [51 P.R. Offic. Trans. ___, ___ ] (2000) (citing 3 L.P.R.A.

2013 TSPR 34, P.R. Offic. Trans.

§ 1311(1)). See also 3 L.P.R.A. § 1461(42). The protection of these selection standards results in a labor force composed of the most suitable and competent public employees.

Now then, the merit principle is a personnel selection procedure unique to public service. Cuevas Viret at 17. It arose in response to the "need to curb the practice of political patronage and its effect on the morality and efficiency of the government." *Id.* With the passage of time, "[i]nstead of barring the entry of political favorites, the purpose became to facilitate the entry of the most capable." *Id.* at 19. The advent of the scientific management movement soon gave rise to "employment classification and systematically fixed wage scales." *Id.* The development of an administrative theory triggered the acknowledgement of the personnel function as one of the most important elements of management in both the private and public sector. *Id.* To those ends, the merit principle sought to "offer all citizens equal opportunities to perform public functions." *Id.* at 16. In gist, it paved the way for efficiency in the public service career and marked the beginning of the goal to provide equal opportunities to all in the performance of public functions. *Id.* at 16.

The merit principle went from an ideal to a reality in 1947. That year, after many attempts at change, Act No. 345 of May 12, 1947, known as the "Personnel Act," was passed. This legislative piece inaugurated the merit system in the administration of Puerto Rico government personnel. "Its approval represented a significant step forward in the historical evolution of our public administration." Statement of Motives of the Public Service Personnel Act, Act No. 5 of October 14, 1975. It was, without doubt, a "significant moment in the effort of our people to provide themselves with a personnel administration system based on the merit principle." *Id.* [7]

On October 14, 1975, almost three decades after the passage of Act No. 345, Act No. 5 was passed. "Its approval constituted a major advancement in the definition of a public policy that was to consolidate the merit principle and extend it to other sectors of public employment which, until that time, were not governed by said principle." Statement of Motives of Act No. 184 of 2004. Although an analysis of the operational history of the system that created the Personnel Act of 1947 reflected a favorable balance of accomplishments, our Legislature deemed it necessary to "reassert its basic principles and modernize the system, by adjusting it to the most effective and dynamic concepts of personnel administration." Statement of Motives of Act No.

5. Accordingly, the greatest efforts in the passage of Act No. 5 were aimed at "the preciseness of a public policy that reasserts the merit principle and extends said principle to all sectors of the public employment to which it has not heretofore been extended." *Id.* See also: *Vázquez Cintrón v. Banco Desarrollo,* 171 D.P.R. 1, 15-16 [71 P.R. Offic. Trans. ___, ___ ] (2007); *Torres Ponce v. Jiménez,* 113 D.P.R. 58, 70 [13 P.R. Offic. Trans. 77, 93] (1982); *Delgado Rivera v. Alcalde de Carolina,* 109 D.P.R. 5, 9 [9 P.R. Offic. Trans. 8, 13] (1979). Moreover, by extending these aims to the entire government, "[t]he Legislature . . . advanced standards of greater uniformity, equity, and justice, while also promoting the provision of public services that would insure the full enjoyment of the rights enshrined in the Bill of Rights of our Constitution." *Cintrón Santana v. Supte. Policía de P.R.,* 131 D.P.R. 1, 6 [31 P.R. Offic. Trans. ___, ___ ] (1992).

Act No. 184 of 2004 repealed Act No. 5. Like the former law, Act No. 184 established as public policy the reaffirmation of the merit principle as the guiding principle of public service. Act No. 184, sec. 5.1 (3 L.P.R.A. § 1461c). Now then, although this law was made extensive to many agencies, many others were excluded. *Aut. de Puertos v. Mun. de San Juan,* 123 D.P.R. 496, 502 [23 P.R. Offic. Trans. 437, 442] (1989). The act excluded: (1) the Legislative Branch; (2) the Judicial Branch; (3) employees of government agencies or instrumentalities that operate as private enterprises or businesses; (4) employees of government agencies or instrumentalities entitled to bargain collectively through special laws, and (5) the University of Puerto Rico. *Id.* Act No. 184 retained the same exceptions and added the Office of the Governor, the Commonwealth Elections Commission, and the Office of Government Ethics. It also provided that some of the provisions of the law would apply to the employees of the Judicial Branch, but that the categories of assistant marshals and stenographers would be excluded. See Act No. 184, sec. 5.3 (3 L.P.R.A. § 1461e).

In spite of these exceptions, however, Act No. 5 specified that the excluded groups had to "adopt, with the advice of the Personnel Office . . . personnel regulation[s] . . . incorporating the merit principle." *Torres Ponce v. Jiménez,* 113 D.P.R. at 69 [13 P.R. Offic, Trans. at 92]. See also *Vázquez Cintrón v. Banco Desarrollo,* 171 D.P.R. at 15-16 [71 P.R. Offic. Trans. at ___ ]. Section 5.3 of Act No. 184 made the same clarification by stating: "In the case of public or public-private corporations, these shall adopt personnel regulations that incorporate the merit principle within the administration of their human resources, pursuant to the provisions of this

Gonzalez Segarra v. CFSE, 188 D.P.R. 252 (2013)
2013 TSPR 34, P.R. Offic. Trans.

Case:17-03283-LTS Doc#:9932-2 Filed:01/14/20 Entered:01/14/20 17:34:31 Desc:
Exhibit 2 Page 11 of 21

chapter." 3 L.P.R.A. § 1461e. As this Court held in *Reyes Coreano v. Director Ejecutivo,* 110 D.P.R. 40, 47-48 [10 P.R. Offic. Trans. 51,60-61] (1980), this proviso:

> [D]oubtlessly reveals the clear legislative intent of harmonizing one of the main objectives of the act: to extend the benefits of a personnel administration based on the merit principle to the largest possible number of public sectors. To this end, said agencies were imposed the indefectible obligation of administering their non-union employees in accordance with the merit principle, even when paying heed to their particular circumstances, they were excluded from the other statutory provisions.
>
> ....
>
> [T]he background of the act emphasizes how important the merit principle [,] and its extension to all sectors of the public service, was for its objectives, as a governing rule in personnel administration. Thus the Explanatory Report of the draft bill submitted by the Governor to the Legislative Assembly clearly underlined the purpose of extending the merit principle "to all sectors of the public service: state employees--including those of public corporations--municipal employees." In her Report on S.B. No. 142, the then Director of Personnel, Mrs. Milagros Guzman, also emphasized this purpose when she said:
>
> ....
>
> [I]n the Government, its application is not only directed to improve the services we render, *but we, the Government, also have the moral obligation of giving the citizen the opportunity to freely compete, to show his capacities.* [Emphasis added.]

[9]] Sections 1B-4 and 6 of the SIFC enabling act, Act No. 45 of April 18, 1935, as amended, known as the Compensation System for Work-Related Accidents Act, 11 L.P.R.A. §§ lb-4 [8] and 8, "authorized the Fund Administrator to organize and manage its own personnel system without being subject to the personnel law applicable to public employees, *yet subject to the merit principle" Ríos Colón v. F.S.E.,* 139 D.P.R. 167, 173 [39 P.R. Offic. Trans. ___, ___ ] n.6 (1995). See also *Laboy v. E.L.A.,* 115 D.P.R. at 192-193 [15 P.R. Offic. Trans. at 261-262]. Although the SIFC is an instrumentality that operates as a private enterprise or business and, as such, is excluded from public service personnel laws, the administration of its personnel system is governed by personnel regulations adopted to that end.

Section 1B-4 of Act No. 45. Throughout the years, the SIFC has adopted different regulations to meet the legislative mandate and guarantee the merit principle. The regulation currently in force is Regulation No. 6226 of January 11, 2000 (Personnel Regulations), which is applicable to the resolution of the instant case. The regulation provides that its purpose is to "lay down the rules that will govern the administration of the personnel system of the Corporation." Personnel Regulations art. 4. Those rules *"would be designed, applied, and construed within the scope of the merit principle so that it may always be safeguarded." Id.* at 3. (Emphasis added.)

[10-11] Specifically, the Personnel Regulations authorize the Administrator to "manage his own personnel system and appoint all officers, agents, and employees needed for the efficient and economical operation of said Corporation." Personnel Regulations art. 2, at 1. In the discharge of that function, of course, the appointing authority must always respect the merit principle and the areas to which it applies: (1) classification of positions; (2) recruitment and selection; (3) promotions, transfers, and demotions; (4) training; and (5) retention. Personnel Regulations art. 7(4), at 6. The policy on "recruitment and selection" was that "[t]he Corporation [shall] guarantee the recruitment of the most adequate human resources, *on the basis of merit,* prohibiting discrimination by reason of race, color, sex, birth, age, social origin or condition, political or religious beliefs, or disabilities." Personnel Regulations art. 5(7), at 4.

[12] Personnel Regulations sec. 13.1, at 49, set down the following rule:

> The Corporation shall establish recruitment standards for each position class geared at attracting and retaining the best human resources available. The standards shall establish recruitment requirements based on the content of class specifications. The requirements must be directly related at all times to the essential functions of the position. Said requirements shall take into consideration any available information on the employment market and human resources. The standards shall establish the class or classes of examination and the type or types of recommended competencies in each case. The standards shall be revised periodically to adapt them to any changes that may take place.

[13] Likewise, sec. 13.2 demands that job opportunities be publicly posted. In that regard, it provides:

In order to attract and retain for public service the most adequate candidates through open competition, employment opportunities shall be announced through the most appropriate media for each case. Adequate media shall be: radio, television, press (local or regional), professional publications and journals, electronic information systems, communications with professional, labor, civic, and educational organizations, official inter-agency communications, bulletin boards, and other means that may reasonably reach interested persons. The frequency and priority of such announcements shall be determined taking into consideration if they are effective, economical, and if they help interested citizens to timely submit their applications to the Corporation.

Personnel Regulations sec. 13.2, at 49-50.

[14] On the other hand, Personnel Regulations sec. 14.1 governs the policy on promotions, transfers, and demotions. A promotion is defined as a "[c]hange from one position to another whose functions are at a higher level and for which a higher type of minimum remuneration has been estabalished." Personnel Regulations sec. 7(5), at 6. Section 14.1 provides:

As a general rule, *in order to strengthen the merit principle* through the recruitment of the fittest candidates, *positions will be filled through open competition.* The competition is open to Corporation employees as well as outside candidates according to their qualifications. *The Administrator shall identify those position classes that because of their very nature require a specific type of experience, and in such cases the competition may be limited to employees and former employees who possess such experience in the Corporation.*

Personnel Regulations sec. 14.1, at 71. (Emphasis added.)

[15] Personnel Regulations sec. 14.2 provides the following on promotions:

(1) Procedures shall be established to allow the promotion of managerial employees to afford them ample opportunities for improvement. These procedures will serve as a mechanism for the effective use of human resources and as a stimulus for employees to excel in the discharge of their duties.

(2) The Corporation's Classification Plan shall be organized in such manner as to allow for the upward mobility of employees according to their acquired knowledge and experience. It shall also identify the logical lines of promotion between the different position classes.

(3) An employee who is promoted but fails the probationary period will return to a position equal or similar to the position held at the time of promotion.

(4) Non-Competitive Promotion: The Administrator of the Corporation, by way of exception, may authorize promotions through individual exams when the special and exceptional needs of service and the special qualifications of the employees so warrant. The Administrator, through the establishment of the corresponding standards, shall regulate non-competitive promotions to insure that the merit principle existing in the Corporation is not violated.

Personnel Regulations sec. 14.2, at 71-72. (Emphasis added.)

[16] As may be observed, the cited regulatory provisions grant the appointing authority broad discretion to manage its personnel system and to appoint all SIFC officers, agents, and employees in order to guarantee the efficient and economical operation of the SIFC. Likewise, the regulations contemplated the possibility of limiting competition and departing from the ordinary recruitment procedure in certain specific circumstances. However, a comprehensive analysis of all the cited provisions clearly reveals the existence of a policy of giving wide publicity to employment opportunities so that the most capable people are attracted to public service jobs and the merit principle is, above all, respected. What we must decide in this case is whether the exercise of discretion here was within the authority delegated to the Administrator by the SIFC Personnel Regulations.

## V

The SIFC assigns four errors to the intermediate appellate court. Since they are closely related, we shall discuss the first, third, and fourth errors jointly. In gist, the SIFC alleges that the intermediate appellate court erred in finding valid the posting of internal job notices based on a liberal interpretation of the recruitment process established in Personnel Regulations sec. 14.1.

In summing up the facts of this case, we find that the respondent employees were appointed through job notices limited to SIFC employees. Thus, it is an uncontroverted fact that these employment notices were not publicized

Case:17-03283-LTS Doc#:9932-2 Filed:01/14/20 Entered:01/14/20 17:34:31 Desc:
Exhibit 2 Page 13 of 21

González Segarra v. CFSE, 188 D.P.R. 252 (2013)
2013 TSPR 34, P.R. Offic. Trans.

through radio, television, the press, or other advertising media outside the SIFC, as required by Personnel Regulations sec. 13.2. Appendix at 104. Likewise, the Board's findings show that during its hearings, several employees brought as evidence the memorandum sent by Grajales Méndez to the then Administrator, in which she stated that under Personnel Regulations sec. 14.1, and for certain specific positions, *given their location,* it was *desirable* to recruit personnel with knowledge of the procedures conducted in the area in question. However, when examining the position numbers listed in the document attached to the memorandum sent by Grajales Mendez, we notice that out of the 41 position numbers listed, only Rodríguez González's position is mentioned in the list. In fact, the position number mentioned in the list corresponds to a previous promotion received by Rodríguez González. He subsequently received another promotion, but the new position number is not on the list. The same happens with the position numbers of the other respondent employees. None is listed. Neither is there on record any document that may justify the posting of internal job notices in the case of the other respondent employees.

In their brief before this Court, respondent employees González Segarra, Martínez Calderón and Fuentes Ortiz argue that Act No. 45 grants the Administrator broad discretion in the management of the personnel system. Act No. 45, sec. 1B-4 (11 L.P.R.A § 1b-4). Likewise, they argue that adding the requirement of a technical analysis or of a written justification to the text of Personnel Regulations sec. 14.1 "is tantamount to amending, by interpretative fiat, the clear letter of the regulations, adding what is not said and, worse yet, applying such interpretation retroactively." Brief for respondents González Segarra, Martínez Calderón and Fuentes Ortiz, at 15. They argue that if a written justification for the internal job postings had been required, the regulations would have included such requirement, as was done in the case of the justification required for appointments during the electoral prohibition period. Personnel Regulations sec. 20. In their view, an Administrator complies with the spirit of the regulatory mandate if, while at home, he "begins to think about the workplace and about some positions of Secretary I and II that must be filled, and given the nature of the functions they will carry out in the offices to which they will be assigned, he believes that competition in those cases must be limited to employees with secretarial experience within the Corporation," and on the following day he orders the posting of an internal job notice. Brief for respondents González Segarra, Martínez Calderón and Fuentes Ortiz, at 15-16.

In turn, respondent employees Santiago Cruz and Díaz Vélez, as well as the group of 15 respondent employees who appeared jointly, argue that the letter in which the Administratrix notified them of the annulment of their appointments contravenes the text of the regulatory standard established in Personnel Regulations sec. 14.1 and, moreover, ignores our decision in *Laboy v. E.L.A.* They further argue that personnel recruitment through internal job postings was not foreign to Act No. 5 or to Act No. 184 of 2004, and that both laws left the decision of what positions would be subject to that type of recruitment to the discretion of the appointing authority. They allege, as did the other respondent employees, that Personnel Regulations sec. 14.1 does not demand a technical analysis as strict as the one proposed. In their view, it is only necessary to identify the positions to be considered for internal recruitment. They argue that to affirm otherwise is to straitjacket the appointing authority in a manner not contemplated by the law or by the regulations.

We cannot agree with these contentions. An examination of the text of Personnel Regulations sec. 14.1 forcibly leads us to agree with the conclusions of the Board of Appeals. First, the cited section begins by affirming that "in order to strengthen the merit principle through the recruitment of the fittest candidates, *positions will befitted through open competition."* (Emphasis added.) From the outset one is advised that personnel recruitment, including for promotions, must respect the merit principle and allow the participation of qualified external candidates. It is not limited exclusively to SIFC employees.

[17-18] Second, the appointing authority indeed has discretion to limit the competition in some cases. However, the exercise of administrative discretion does not operate in a vacuum. We must remember that "[a]dministrative discretion is not absolute. No court should be willing to convert the administrative discretion into [a] magic term that would allow arbitrariness. Judgment is discreet, if, in addition to being based on reasonability, it is supported by a clear notion of justice in its plain sense." *Belmonte v. Mercado Reverón, Admr.,* 95 P.R.R. 250, 269 (1967) (citing *Rodríguez v. Sec. of Public Works,* 86 P.R.R. 245, 252 (1962)). In examining Personnel Regulations sec. 14.1, it comes forth quite clearly that this section does not authorize the identification of an isolated position so as to limit the competition, but rather of an entire "position class." No power is granted to appoint someone in particular to a position. The job notice is for a category and not for a particular position. We must bear in mind that it is well settled that the powers and authority

of public officers and employees must stem from some specific legal provision, be it the Constitution, a law or some regulation promulgated under authority of a law, but they cannot arrogate to themselves powers that were not granted to them. *ASG v. Mun. San Juan,* 168 D.P.R. 337, 343 [68 P.R. Offic. Trans. ___, ___ ] (2006).

[19] Third, Personnel Regulations sec. 14.1 requires that prior to limiting the competition, a study be made to specify the nature of the position and the experience needed to fill it. Based on this analysis, the Administrator may decide if that particular position class makes it imperative to condition the type of competition in the job notice. The record does not reveal the existence of any such analysis on the need to have those positions filled through internal notices because of the particularities of the job. On the contrary, as an examination of the record shows, it was only for position 3087 (Investments Supervisor), to which Rodríguez González was appointed, that a justification was given for limiting the competition in the job notice as prescribed by Personnel Regulations sec. 14.1. However, an examination of the memorandum that contains the justification reveals that the reason for limiting the competition was the *location* of the position. There was no indication as to why that reason would allow the SIFC to limit an open competition for this position under Personnel Regulations sec. 14.1 and to invoke an exception to such an important practice that protects the merit principle in personnel recruitment.

*Worse yet, as we stated above, we find no other reason for limiting the competition in the recruitment of the other 19 respondent employees.* Accordingly, we cannot endorse the posting of limited, internal job notices in this case if there is nothing in the record to justify it. Out of respect for the merit principle, it would be unwise, and even dangerous, to invoke location as a subterfuge or, worse yet, to have no grounds for limiting competition in job notices. As the Board of Appeals stated, the only way to protect the public interest and guarantee equal treatment, while also avoiding personal favoritism, arbitrariness and capricious actions in the administration of human resources, is to respect the regulatory provisions that govern the exercise of discretion by the appointing authority.

There is not on record any decision by the appointing authority that would justify why external competition for the positions at issue here was ruled out.[9] What is more, when we examine the eligibility requirements in the job notices posted for the cited positions, we must inevitably conclude

that none actually demands a particular type of experience in connection with the specific functions that would be performed. Moreover, it is quite evident that considering the entire gamut of possible job seekers, there must be at least one or two with the necessary qualifications to apply for these positions. *We must reiterate that there is no other source on record that would prove that the identified classes required broad knowledge of SIFC matters, operations, standards, requirements, and procedures.*

Lastly, several of the respondent employees invoke our decision in *Laboy v. E.L.A.* in support of their contention that the internal job notices were valid. The Court of Appeals, based on that case, likewise stated that "in recruitment, selection or promotion processes, agencies are not always obliged to post positions for *open competition* in order to comply with the merit principle embodied in these statutes." Appendix at 44. The appellate court's reasoning is correct. In fact, at no time has the SIFC affirmed that posting open, competitive job notices is the only manner of filling job vacancies. Neither has it argued, as respondent employees Santiago Cruz and Díaz Vélez allege, that sec. 14.1 defeats the publicity principle and bars the recruitment of suitable candidates outside the SIFC. Petitioner's contention is that what was ignored here is the text of the regulatory provision under which the Administrator, in order to limit the competition to only SIFC employees, must identify the *position classes* that because of their very nature, require a specific type of previous experience.

## VI

In its second assignment, the SIFC argues that the Court of Appeals erred in finding that the appointments made through internal job postings complied with the mandate of Act No. 111 of 2006.

Act No. 111 of 2006 was passed in order to "establish the framework of norms and principles to control the payroll expenses of the Government, *chargeable to the General Fund,* as part of a sound administration and fiscal reform . . . ." Statement of Motives of Act 111 of 2006, *http://www.oslpr.org/org/download/en/2006/A-0111-2006.pdf.* This act was passed in response to the fiscal crisis faced by the Government of Puerto Rico. Accordingly, the Legislative Assembly deemed it necessary to establish payroll expense controls in the Government, among other measures of sound public administration. To achieve this goal, confidential positions in the Government chargeable to the General Fund

were reduced by 10% annually for a term of five years, beginning in fiscal year 2006-07, so as to reach a 50% reduction. Act No. 111 of 2006, sec. 2 (3 L.P.R.A. § 8763 nt). Likewise, the law ordered a reduction of 6.6% annually in the confidential employee payroll of the Government chargeable to the General Fund until reaching a 33% reduction.

On the other hand, sec. 3 of Act No. 111 of 2006 (3 L.P.R.A. § 8763 nt) ordered a freeze in government positions. In particular, that section provided:

> Of the total positions vacated in the Government of Puerto Rico during the fiscal year whose cost is chargeable to the General Fund, one third shall remain vacant and shall be eliminated from the Classification Plan of the Agency after an assessment of the position's nature and notification to that effect to the Human Resources Office of the Commonwealth of Puerto Rico, to the Office of the Management and Budget. Forty (40%) percent of the savings generated in each agency during the fi[r]st three years by this position freezing policy shall be covered into a special fund of the agency to finance salary increases to employees according to the collective bargaining agreements of each entity. The Office of the Management and Budget shall establish controls for the implementation of this provision. *In case the need arises to fill a vacant position it should be preferably filled by promoting a lower or equivalent rank employee of the same agency and has to be authorized by the Office of the Management and Budget.*

*Id.* (Emphasis added.)

Act No. 103 of 2006, passed for the same purpose, implemented the Fiscal Reform of the Government, which included, among other things, the restructuring of the budgetary process and a prohibition against using debts, loans or any financing mechanism to cover operational expenses, in order to balance the general budget of government expenses. Section 14 of Act No. 103 of 2006 (3 L.P.R.A. § 8763) specifically provides, in pertinent part, what to do with vacant positions:

> Any vacancy in a career personnel position at the time of effectiveness of this Act or that becomes vacant after the approval thereof and whose cost is defrayed chargeable to the General Fund, shall remain vacant. After a term that shall never be less than six (6) months, if it is necessary to fill the position, it shall be required that the agency establish a justification to fill the position and that the Office of

the Budget and Management authorizes it in writing. The following order of priority shall be followed at the time of recruiting personnel to fill the vacancy:

> (a) The vacancy shall be filled due to the promotion or transfer of another person who is a career employee of the same agency whose position shall, in turn, become vacant.

In their brief before this Court, respondent employees Santiago Cruz and Díaz Vélez argue that the SIFC's interpretation makes a total abstraction of what was the public policy of the Puerto Rico Government at the time the appointments at issue here were made. They further allege that through Circular Letter No. 82-07 of August 30, 2006, the Director of the Office of Management and Budget issued the expense control standards for the Government, and that this circular letter, which was sent out to all secretaries, agency heads, office directors, and public corporations in the Government, stated that its provisions would be applicable to all government agencies and instrumentalities. The respondent employees stress that Part VII, Sec. C of the document states:

> The governmental entity, provided that it does not affect the merit principle under Act No. 184, shall give a certain degree of preference to the promotion of a person active in the agency with a lower or equivalent rank at the moment of filling the vacancy.

Circular Letter No. 82-07 of August 30, 2006, at 4. Brief for respondents Santiago Cruz and Díaz Vélez at 24.

They argue that this expense control policy was set forth in the memorandum sent by Correa Gómez to the then Administrator, advising him about the executive orders, administrative bulletins, and circular letters about the expense control and reduction policy. The respondent employees make reference to a paragraph in the memorandum sent by Correa Gomez that states: "In the spirit of collaborating and complying with the provisions of the regulations cited herein, we recommend that guidelines be issued for the new fiscal year consistent with the established goal of reducing expenses." *Id.*

The respondent employees allege that as a result of the above, the mechanism employed was that of favoring the promotion of agency employees as a measure to control payroll expenses and to avoid exceeding the percent allowed and authorized for SIFC administrative expenses. We believe, as the Board of Appeals did, that the employees failed to show that the

Case:17-03283-LTS Doc#:9932-2 Filed:01/14/20 Entered:01/14/20 17:34:31 Desc:
Exhibit 2 Page 16 of 21

Gonzalez Segarra v. CFSE, 188 D.P.R. 252 (2013)
2013 TSPR 34, P.R. Offic. Trans.

SIFC adopted the expense control policy established in Acts Nos. 111 and 103 of 2006. First, those laws did not apply to public corporations that did not depend on the Government's General Fund, such as the SIFC. Second, the laws in question did not set aside the merit principle. Third and last, as the Board of Appeals correctly stated, Correa Gomez was not the appointing authority.

[20] In the absence of evidence to the contrary, we must conclude that the governing provisions at the time of the promotions at issue here were those of the Personnel Regulations. A circular letter, as is well known, is a nonlegislative rule, inasmuch as it does not have the force of law attributed to regulations. "Unlike nonlegislative [rules, such as a Circular Letter], legislative rules have the same weight as a law passed by the Legislative Assembly." Hiram A. Meléndez Juarbe, *Derecho administrativo,* 73 Rev. Jur. U.P.R. 509, 510-511 (2004).

The expense limitations invoked here did not set aside the merit principle. In any event, if, for argument's sake, we were to adopt the respondent employees' position, the result would be the same, inasmuch as the record of the case contains no evidence that the personnel transactions were approved by the Office of Management and Budget as required by sec. 3 of Act No. 111 of 2006. This is clearly because that law is not applicable. Consequently, respondents' argument is meritless.

Thus, in conclusion, the appointments received by the respondent employees through the posting of internal job notices violated the SIFC Personnel Regulations and contravened the merit principle. It was not shown that there was a need to sidestep the open competition mechanism that would have guaranteed that appointments and promotions were based on merit and not favoritism. Positions such as secretary, administrative officer, and cleaning supervisor are not positions of difficult recruitment; neither do they involve any particular characteristic that would require a limited competition. This was not justified by the record. Consequently, the former Administrators abused their discretion in allowing and validating promotions through the unjustified posting of internal job notices.

**VII**

For the foregoing reasons, *the Judgment of the Court of Appeals is hereby reversed and the "Decision and Order on Internal Job Notices" issued by the SIFC Board of Appeals shall stand.*

Chief Justice HERNÁNDEZ DENTON, with whom Justices FIOL MATTA and RODRÍGUEZ RODRÍGUEZ joined, issued a dissenting opinion.

**Certiorari**

Chief Justice HERNÁNDEZ DENTON, with whom JUSTICES FIOL MATTA and RODRÍGUEZ RODRÍGUEZ join, dissenting.

After determining that former State Insurance Fund Corporation (SIFC) Administrators abused their discretion by allowing and validating promotions granted through the posting of unjustified internal job notices, a majority of this Court has concluded that the merit principle and the provisions of the Personnel Regulations for Managerial Employees of the State Insurance Fund Corporation, Regulation No. 6226, adopted on January 11, 2000 (Personnel Regulations), have been violated in this case. Consequently, the Court majority upholds the revocation of the appointments received by respondents here. Since we believe that the Personnel Regulations do not have the scope attributed to it by the Court majority, that the posting of internal job notices in respondents' cases was made in accordance with the Personnel Regulations, and that the merit principle was not violated here, we dissent.

**I**

In short, the facts that give rise to this controversy are as follows. After assuming office, the SIFC Administratrix, Atty. Zoimé Álvarez Rubio, ordered an audit on SIFC personnel records and human resources transactions conducted from January 2001 through December 2008. The aim of the audit was to determine the SIFC's compliance with the merit principle in its appointments and promotions. In all, 3,835 files were audited.

According to the audit, the managerial personnel recruitment process should be carried out through the posting of open employment notices. However, the auditor concluded that since 2003, the process had been changed to one of internal job postings. Specifically, the auditor found 232 files that reflected this practice and for which, according to him, no

technical analysis had been made to justify this type of exceptional job posting.

Following the audit, Atty. Álvarez Rubio sent letters to the 232 affected employees, informing them of her intent to annul their appointments. The employees exercised their right to an administrative hearing. After the hearing, the examining officer recommended that the nullity of all the appointments be ratified. Attorney Álvarez Rubio adopted the recommendation and gave the employees notice of the annulment.

Twenty-three employees, the Managerial Employees Association, and the Management Employees Federation appealed to the SIFC Board of Appeals, which, in a 2 to 1 majority decision, upheld the annulments. However, since there were discrepancies between the two majority votes, the Board members stated their positions separately.

Aggrieved, 20 employees resorted to the Court of Appeals, [1] which reversed the Board's decision because:

> 1) compliance with the merit principle does not require a strict recruitment, selection or promotion process that may be attained only through open competition; 2) the decision of the Administrator who made the appointments is protected by a presumption of correctness that was not rebutted in this case; and 3) both the Administratrix and the Board of Appeals determined that the appointments were void because of their failure to meet some legal requirements that were not set forth in either the public personnel laws or the Fund's Personnel Regulations.

Judgment of the Court of Appeals at 64, Appendix at 71.

Aggrieved by that decision, the SIFC appealed to this Court.

## II

The majority opinion reversed the appellate court's decision. From the outset, it refers to internal job postings as an exception that has become the rule. However, we believe that the facts of this case do not allow us to reach that conclusion, inasmuch as there were only 232 appointments, out of the 3,835 files that were examined, whose validity was questioned after the audit; that is, six percent of the total files. This, in turn, represents an average of 29 out of 479 annual transactions. This definitely is not a routine practice.

Moreover, a majority of this Court indicates that internal job postings are a strict exception and, consequently, concludes that the merit principle and the Personnel Regulations were violated because no justification was given for requiring that the competition for the positions in question be limited solely to SIFC employees. Despite acknowledging that the appointing authority has discretion to limit competition in certain circumstances, the majority requires: 1) that the decision be based on a previous analysis that specifies the nature of the position and the experience needed to fill it; and 2) that the reasons justifying the decision be on record.

More specifically, the majority opinion points out that the record of the instant case does not show that any analysis had been made on the need to fill these positions internally. Furthermore, the majority opinion states *"that there is no other source on record that would prove that the identified classes required broad knowledge of SIFC matters, operations, standards, requirements, and procedures."* Majority opinion at ___.

We also disagree with the imposition of these requirements because they are not contained in the regulations.

Section 14.1 of the Personnel Regulations, at 71, provides:

> *As a general rule,* in order to strengthen the merit principle through the recruitment of the fittest candidates, positions will be filled through open competition. The competition is open to Corporation employees as well as outside candidates according to their qualifications. The Administrator *shall identify* those position classes that because of their very nature require a specific type of experience, and in such cases the competition may be limited to employees and former employees who possess such experience in the Corporation. [Emphasis added.]

An examination of the provision shows that the SIFC Administrator indeed has discretion to limit the job announcement. However, at no time does this section state that this is a strict exception, that the decision to limit the competition requires a particular procedure or analysis, or that this must be stated in the record. Moreover, it does not require ample knowledge of SIFC operations, standards, requirements or procedures. Likewise, this provision allows internal job postings, though always observing the merit principle.

We reach the same conclusion by comparing this wording with the one used in other provisions of the Personnel

Regulations. For instance, sec. 14.2(4), at 72, provides the following on non-competitive promotions:

> The Administrator of the Corporation, *by way of exception,* may authorize promotions through individual exams when *special and exceptional needs of service and the special qualifications of the employees so warrant.* The Administrator, *through the establishment of the corresponding standards,* shall regulate non-competitive promotions to insure that the merit principle existing in the Corporation is not violated. [Emphasis added.]

In turn, art. 20, at 105, which concerns prohibited personnel transactions, provides in pertinent part:

> For every exception made, the corresponding work area shall submit to the Auxiliary Human Resources Administration a *report indicating a justification* for the adverse effects that should be averted through the exception. This justification shall be submitted to the Administrator for approval. *A record of every exception shall be kept in the Auxiliary Human Resources Administration.* [Emphasis added.]

As may be seen, these provisions make specific reference to the justification needed to apply the exceptions and the manner of keeping a record of them. Such reference is not made in the cited sec. 14.1, which was construed in this case.

Last, we cannot concur with the majority's pronouncement that the internal job notices at issue here violated Personnel Regulations sec. 13.2, at 49-50, because they were not publicized through radio, television, the press or other advertising media outside the SIFC, inasmuch as what the cited section provides is that "employment opportunities shall be announced *through the most appropriate media for each case." Id.* Precisely, among the adequate means listed in this provision is the one used in this case: the SIFC bulletin boards.

### III

For the foregoing reasons, we dissent from the course of action taken by the majority of this Court; consequently, we would have affirmed the Judgment of the Court of Appeals.

Footnotes

1    For examples of other cases in which internal job notices were posted to the detriment of the merit principle, see: *Casiano-Montañez v. State Ins. Fund Corp.,* 852 F. Supp.2d 177 (2012); *Joubert-Vázquez v. Álvarez-Rubio,* 820 F. Supp.2d 289 (2011); *Feliciano v. Puerto Rico State Ins. Fund,* 818 F. Supp. 2d 482 (2011); *Corcino-Rodríguez v. State Ins. Fund Corp.,* 2011 WL 1259834 (D.P.R. 2011).

2    Section 9.5 of the Personnel Regulations for Managerial Employees of the State Insurance Fund Corporation, Regulation 6226, adopted on January 11, 2000 (Personnel Regulations), demands strict compliance with the following requirements:
      1) Hold the position for a period of no less than that corresponding to the probationary period for the class of position.
      2) Pass the test established for the position class.
      3) Meet all requirements for the position class.
      4) The Administrator or his/her authorized representative must certify that the employee's services have been satisfactory.

3    This act amended secs. 4.3, 6.3, 6.4, and 6.5 of Act No. 184 of 2004 (3 L.P.R.A. §§ 1461b and 1462b-1462d), to create a "Central Register of Calls for Applications" for recruitment, selection, and promotions, and to provide an electronic version on the Internet.

4    The Personnel Regulations define "classes" as:
      "Group of positions whose duties, nature, authority and responsibilities are similar to such an extent that these may reasonably be designated with the same title, and to which the same minimum requirements and the same salary scale may be equitably applied under substantially similar working conditions."
      Personnel Regulations, art. 7, at 7.

5    *Normas relacionadas sobre controles de gastos en el Gobierno del Estado Libre Asociado relacionadas con la OE-2006-27* [Standards Related to the Commonwealth Government Payroll Costs Controls Regarding OE-2006-27].

6    The first action (KLRA201100611) was filed by Julio Edwin Santiago Cruz and Ivette Díaz Vélez. Santiago Cruz began working in the SIFC on July 14, 1993, by temporary appointment as Clerk I in the Office of the Head of the Insurance and Audit Division, Caguas Region. For 17 years he held union positions until July 16, 2008, when he was appointed through internal job notice 198-08 to managerial position No. 1561 of the Administrative Officer I Class, in the Operations Area, Regional Services, Employer Status, Central Office. This position belongs to a class that is part of the career managerial

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.                    17

Case:17-03283-LTS   Doc#:9932-2   Filed:01/14/20   Entered:01/14/20 17:34:31   Desc:
Exhibit 2   Page 19 of 21

service. Once this position was annulled, he was reinstated in position 477 of the Insurance Officer IV Class, in the Operations Area, Government Policies, Central Office.

Ivette Díaz Vélez, in turn, was appointed on September 2, 2004, through internal job notice 101-05, to position 3162, Audit Advisor, in the Audit Office, Central Office. On April 29, 2010, the SIFC Administratrix annulled her appointment and separated her from service.

The second action (KLRA201100616) was filed by Ivette Fuentes Ortiz, who held the position of Confidential Secretary in the SIFC Confidential Service. The SIFC posted internal job notices 90-07 and 93-70 in order to set up a list of eligible candidates for several positions in the Executive Secretary I and Executive Secretary HI Classes, respectively. Fuentes Ortiz was on the list of eligible candidates for both job notices. The SIFC selected Fuentes Ortiz through job notice 90-07 and, on March 16, 2008, appointed her Executive Secretary I, a career managerial position. On September 3, 2008, the SIFC selected her through job notice 93-07 and appointed her Executive Secretary III, a career managerial position. She was separated from service on April 14, 2010.

The third action (KLRA201100619) was filed by Wanda González Segarra and Abigail Martínez Calderón. González Segarra was appointed on May 16, 2008, through internal managerial job notice 90-07, to position 228 of the Executive Secretary I Class, in Administrative Services, Arecibo Regional Office, Manatí Dispensary. Her appointment was annulled on April 5, 2010, and she was separated from service.

Abigail Martínez Calderón, in turn, was appointed to position 6215 of the Managerial Physical Therapist II Class, in Medical Services, Physical Therapy, San Juan Regional Office. She was appointed on April 16, 2008, through internal managerial job notice 5-08, to position 0162 of the Managerial Physical Therapist III Class, in Medical Services, Physical Therapy, Bayamón Regional Office. Her appointment was annulled on May 25, 2010, and she was reinstated in position 6215 of the Managerial Physical Therapist II Class, in Medical Services, Physical Therapy, San Juan Regional Office.

The last of the actions (KLRA201100668) was filed jointly by 15 employees: Ana I. Nieves, Santiago, Zilka I. Moll Molina, Emelda Pizarro Cámara, Claudine Lewis Rivera, Edgardo Torres Cabrera, Elizabeth de Jesús Afanador, Gabriel Martes Pagán, Ramón J. Rodríguez González, Mayra Almodóvar Cortés, Rafael Zayas Morales, Wanda I. Santiago Serrano, José Toral Muñoz, David Pérez Vázquez, Abraham Pérez Valentín, and Orlando Aldebol Borrero.

Ana I. Nieves Santiago was appointed on September 2, 2004, through internal managerial job notice 168-05, to position 3212 of the Claims and Compensation Specialist I Class, in Compensations, Bayamón Regional Office. On August 1, 2008, she was appointed, through internal job notice 40-08, to position 2731 of the Claims and Compensations Specialist HI Class, in Claims and Compensations, Bayamón Regional Office. Her appointment was annulled on April 22, 2010, and she was reinstated in position 0724 of the Employer Status Officer IV Class, in the Operations Area, Employer Status, Central Office.

Zilka I. Moll Molina was appointed on April 3, 2006, through internal managerial job notice 37-06, to position 3239 of the Executive Secretary I Class, in Insurance and Audits, Humacao Regional Office. Her appointment was annulled on April 22, 2010, and she was separated from service.

Emelda Pizarro Cámara was appointed on May 1, 2008, through internal managerial job notice 138-08, to position 2297 of the Administrative Officer I Class, in Claims, Information, and Citizen Assistance, Carolina Regional Office. Her appointment was annulled on April 29, 2010, and she was separated from service.

Claudine Lewis Rivera was appointed on September 1, 2004, through internal managerial job notice 229-04, to position 3363 of the Executive Secretary IV Class, in the Contracting Office, Central Office. On April 29, 2010, the SIFC Administratrix annulled her appointment and reinstated her in position 3363 of the Executive Secretary III Class, in the Contracting Office, Central Office.

Edgardo Torres Cabrera was appointed on March 16, 2006, through internal managerial job notice 74-06, to position 2323 of the Administrative Officer I Class, in Outpatient Services, Medical Appointments, Industrial Hospital. His appointment was annulled on April 29, 2010, and he was separated from service.

Elizabeth de Jesús Afanador was appointed on February 16, 2006, through internal managerial hiring call 15-06, to position 1681 of the Administrative Officer I Class, in Secretarial Affairs, Utuado Dispensary, Arecibo Regional Office. Her appointment was annulled on April 29, 2010, and she was separated from service.

Gabriel Martes Pagán was appointed on August 16, 2004, through internal managerial job notice 235-04, to position 6629 of the Administrative Officer I Class, in the Office of the Head of Administrative Services, Corozal Dispensary, Bayamón Regional Office. His appointment was annulled on May 4, 2010, and he was reinstated in position 1537 of the Budget Technician V Class, in the Finance, Accounting and Budget Office, Central Office.

Ramón J. Rodríguez González was appointed on December 1, 2003, through internal managerial job notice 272-03, to position 3087 of the Investments Supervisor Class, in Claims and Investments, San Juan Regional Office. On

Case:17-03283-LTS  Doc#:9932-2  Filed:01/14/20  Entered:01/14/20 17:34:31  Desc:
Exhibit 2  Page 20 of 21

Gonzalez Segarra v. CFSE, 188 D.P.R. 252 (2013)
2013 TSPR 34, P.R. Offic. Trans.

September 4, 2008, he was appointed, through internal managerial job notice 38-08, to position 1093 of the Claims and Compensations Specialist I Class, in Claims and Compensations, San Juan Regional Office. On May ll, 2010, his appointment was annulled and he was reinstated in position 0322 of the Compensations Officer III Class, in Claims and Compensations, San Juan Regional Office.

Mayra Almodóvar Cortés was appointed on July 2, 2008, through internal managerial job notice 173-08, to position 5666 of the Administrative Officer I Class, in the Administrative Services Division, Yauco Dispensary, Ponce Regional Office. Her appointment was annulled on May 7, 2010, and she was separated from service.

Rafael Zayas Morales was appointed on September 4, 2008, through internal managerial job notice 41-09, to position 6822 of the Administrative Officer II Class, in Admissions and Medical Records, Industrial Hospital. His appointment was annulled on May 11, 2010, and he was separated from service.

Wanda I. Santiago Serrano was appointed on August 16, 2008, through internal managerial job notice 299-08, to position 3244 of the Administrative Officer II Class, in the Legal Consultation Area, Legal Services, Risk Management Office, Central Office. Her appointment was annulled on May 11, 2010, and she was separated from service.

José Toral Muñoz was appointed on September 2, 2004, through internal managerial job notice 231-04, to position 2718 of the Executive Officer I Class, in the Finance, Information Systems, Actuarial Affairs, Planning, Statistics and Studies, Strategic Planning, Central Office. His appointment was annulled on May 11, 2010, and he was separated from service.

David Pérez Vázquez was appointed on December 18, 2006, through internal managerial job notice 228-06, to position 6233 of the Cleaning Supervisor Class, in Administrative Services, Property and Services, Manati Dispensary, Arecibo Regional Office. His appointment was annulled on May 14, 2010, and he was separated from service.

Abraham Pérez Valentín was appointed on September 2, 2004, through internal job notice 244-04, to position 2308 of the Rehabilitation Specialist Class of the Industrial Hospital, in Vocational Rehabilitation, Industrial Hospital. On May 14, 2010, the SIFC Administratrix annulled his appointment and separated him from service.

Lastly, Orlando Aldebol Borrero was appointed on May 29, 2008, through internal managerial job notice 142-08, to position 5513 as Regional Executive Deputy Director, Aguadilla Regional Office. This appointment was annulled on May 20, 2010, and Aldebol Borrero was reinstated in position 1480 of the Executive Officer I Class, in Administrative Services, Mayaguez Regional Office.

7   For an extensive survey of the historical development of Puerto Rico public service personnel selection statutes, see Irma García de Serrano, *La selección de personal en el servicio público de Puerto Rico,* San Juan, Ed. Universitaria (1969).

8   Section 1B-4 of Act No. 45 of 1935 provides, in pertinent part:

"(g) Administer the Corporation's own personnel system and appoint all its officials, agents and employees, who shall be public employees entitled to membership with the Government Employees Association of Puerto Rico and to the benefits under the Retirement System of the Government of Puerto Rico, to confer the powers and assign the duties that may be deemed appropriate, as well as to set their remuneration subject to the personnel regulations established by the Board of Directors of the Corporation. The Corporation shall be exempt from the provisions of Act No. 5 of October 14, 1975, known as 'Puerto Rico Public Service Personnel Act,' and from the personnel regulations adopted by virtue thereof. *However, the Personnel System to be established shall be based on the merit principle and shall conform to the rules and regulations adopted to such effects by the Administrator."*

11 L.P.R.A. § 1b-4(g). (Emphasis added.)

9   Below are the qualification requirements set forth in the job notices. An examination of these requirements will allow us to determine if the nature of the position required a specific type of experience that would justify a limited competition.

The job posting for the position of *Audit Advisor* required a bachelor's degree from a recognized university with a major in accounting that would include 15 credits in accounting, plus eight years' experience in fiscal audits.

In turn, the job posting for a position within the *Managerial Physical Therapist III Class* required at least a bachelor's degree in physical therapy from an accredited college or university and six years of progressive experience in the practice of the profession, including supervisory experience. Other indispensable requirements that were added were a permanent license as physical therapist issued by the Physical Therapy Examining Board of Puerto Rico and being currently listed in the registry of health care professionals.

The job posting for the *Administrative Officer I position* required a high school diploma and four years of progressive experience in office or admmistrative functions. Also eligible were those who had 60 credits from an accredited university and two years' experience in office or administrative functions. A last alternative option was a bachelor's degree from an accredited university.

Case:17-03283-LTS   Doc#:9932-2   Filed:01/14/20   Entered:01/14/20 17:34:31   Desc:
Exhibit 2   Page 21 of 21

Gonzalez Segarra v. CFSE, 188 D.P.R. 252 (2013)
2013 TSPR 34, P.R. Offic. Trans.

The minimum requirements for the position of *Administrative Officer II* were a high school diploma and five years of progressive experience in office or administrative functions, one of them comparable to an Administrative Officer I in functions related to the area within which the position was located and that would include supervision. In the alternative, also eligible were those who had 60 credits from an accredited university and three years' experience in office or administrative functions, one of them comparable to an Administrative Officer I in functions related to the area within which the position was located and that would include supervision. As a third possibility, also eligible were those who had a bachelor's degree from an accredited university and one year's experience in office or administrative functions comparable to an Administrative Officer I in functions related to the area within which the position was located and that would include supervision.

The minimum requirements for the position of *Executive Secretary I* were an accredited high school diploma, supplemented by a secretarial course or its equivalent that would include shorthand or rapid writing in Spanish, as well as five years' experience in secretarial work, one of them in functions similar in nature and complexity to those performed by a Secretary IV or Itinerant Secretary in the SIFC. As second option, also eligible were those with an associate degree in secretarial sciences or its equivalent that would include shorthand or rapid writing in Spanish from an accredited college or university and three years' experience in secretarial work that would include taking and transcribing dictation in Spanish, one of them in functions similar in nature and complexity to those performed by a Secretary IV or Itinerant Secretary in the SIFC. As a third alternative, also eligible were those with a bachelor's degree in secretarial sciences or its equivalent from an accredited college or university. Thirty approved credits from an accredited college or university that included 12 credits in secretarial sciences could be accepted in lieu of up to maximum of one year of secretarial experience established in the minimum requirement of high school diploma.

The requirements for the position of *Executive Secretary III* included in the job notice were an accredited high school diploma supplemented by a secretarial course or its equivalent that would include shorthand or rapid writing in Spanish and seven years' experience in secretarial work, one of them in functions similar in nature and complexity to those performed by an Executive Secretary II in the SIFC. In the alternative, also eligible were those with an associate degree in secretarial sciences or its equivalent that would include shorthand or rapid writing in Spanish from an accredited college or university and five years' experience in secretarial work, one of them in functions similar in nature and complexity to those performed by an Executive Secretary II in the SIFC. As a third option, also eligible were those who had a bachelor's in secretarial sciences or its equivalent from an accredited college or university and three years' experience in secretarial work, one of them in functions similar in nature and complexity to those performed by an Executive Secretary II in the SIFC. Finally, it was stated that 30 approved credits from an accredited college or university that would include 12 credits in secretarial sciences could be accepted in lieu of up to one year of secretarial experience established in the minimum requirement of a high school diploma.

The position of *Rehabilitation Specialist of the Industrial Hospital* required a master's degree in rehabilitation counseling from an accredited university, 18 post-graduate credits in Vocational Assessment from an accredited university, and three years of progressive experience related to the field of rehabilitation counseling. Finally, a vocational assessment certification was required, as well as a rehabilitation counselor license.

For the position of *Investments Supervisor,* the requirement was a high school diploma supplemented by courses in real estate and four years' experience in the field of real estate. In the alternative, also eligible were those with a bachelor's degree from a recognized university supplemented by a course in real estate.

Finally, the minimum requirements for the position of *Claims and Compensations Specialist I* were a bachelor's degree from a recognized university or college and four years of progressive experience in the field of work accident claims and compensation. In the alternative, also eligible were those with a master's degree from a recognized university or college and two years of progressive experience in the work accident claims and compensation field. The job notices for the positions of Cleaning Supervisor, Executive Officer, and Regional Executive Deputy Director are not on record.

1   It bears noting that another group of employees filed a political discrimination and due process violation action over the same facts in the United States District Court for the District of Puerto Rico. Although this action was initially dismissed, on February 7, 2013, the First Circuit Court of Appeals in Boston reversed the dismissal and remanded the case to the District Court with instructions to stay proceedings pending our decision in this case. See *Casiano-Montañez v. State Ins. Fund Corp.,* 707 F.3d 124 (2013); *Casiano-Montañez v. State Ins. Fund Corp.,* 852 F. Supp. 2d 177(2012).

**End of Document**
© 2020 Thomson Reuters. No claim to original U.S. Government Works.