## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br>v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., FINANCIAL GUARANTY INSURANCE COMPANY, and U.S. BANK TRUST NATIONAL ASSOCIATION, as Trustee,<br><br>    Defendants. | Adv. Proc. No. 20-_____-LTS<br><br>PROMESA<br>Title III |

## COMPLAINT OBJECTING TO DEFENDANTS' CLAIMS AND SEEKING <u>RELATED RELIEF</u>

---

[1] The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number (listed as a bankruptcy case number due to software limitations) and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (*i*) Commonwealth of Puerto Rico (Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (*ii*) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (*iii*) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (*iv*) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (*v*) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (*vi*) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy numbers due to software limitations).

Pursuant to (*i*) Rules 3007, 7001(1), (2), (8), and (9) of the Federal Rules of Bankruptcy Procedure, made applicable to these Title III cases by section 310 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] and (*ii*) the *Interim Case Management Order for Revenue Bonds*, dated December 19, 2019 [ECF No. 9620] (the "Interim Order"), the Commonwealth of Puerto Rico (the "Commonwealth" or "Plaintiff"), by and through the Financial Oversight and Management Board for Puerto Rico, as the sole representative of the Commonwealth pursuant to section 315(b) of PROMESA (and solely in that capacity, the "Oversight Board"), brings this complaint (the "Complaint") against Defendants.[3]

This Complaint is being filed by the Oversight Board and the Commonwealth to comply with paragraph 2 of the Interim Order, and is without prejudice to the Oversight Board's and the Commonwealth's rights under the Court's June 13, 2019 *Order Regarding Argument and Discovery in Connection with AMBAC Assurance Corporation's Motion Concerning Application of the Automatic Stay* [ECF No. 7420] (the "*June 13, 2019 Order*"), all of which are expressly reserved.  Among other things, and without limitation, the filing of this Complaint is without prejudice to the Oversight Board's and the Commonwealth's rights under the June 13, 2019 Order to: (i) have Ambac's interest, if any, in Commonwealth assets, litigated promptly in any stay relief motion by Ambac; (ii) have the hearing on any stay relief motion by Ambac limited to legal issues of standing and secured status only; and (iii) have factual submissions for any stay relief motion by Ambac limited to legal documents (statutes, agreements and the like) relevant to the parties' standing and collateral security arguments.

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

[3] Defendants in this action are Ambac Assurance Corp. ("Ambac"), Assured Guaranty Corp. ("AGC"), Financial Guaranty Insurance Company ("FGIC"), and U.S. Bank Trust National Association, as Trustee for the Bonds (as defined below) ("U.S. Bank" or the "Trustee," and together with Ambac, AGC, and FGIC, "Defendants").

## NATURE OF ACTION

1.      The Oversight Board brings this Complaint to object to certain proofs of claim and priorities asserted therein and to object to the validity and priority of certain liens or security interests asserted therein regarding the Commonwealth's retention of certain revenues previously, but no longer, appropriated to the Puerto Rico Infrastructure Financing Authority ("PRIFA").[4]

2.      PRIFA was established by the Legislative Assembly of Puerto Rico (the "Legislative Assembly") pursuant to Act No. 44-1988 (as amended, the "PRIFA Enabling Act"), codified at 3 L.P.R.A. §§ 1901-1923.  PRIFA was created to provide financial, administrative, consulting, technical, advisory, and other assistance to public corporations, governmental instrumentalities, political subdivisions and municipalities authorized to develop infrastructure facilities and establish alternate means for their financing.  3 L.P.R.A. §§ 1901, 1903.  PRIFA funded these activities partly through bonds backed by certain monies the Commonwealth historically appropriated to PRIFA, subject to the Commonwealth's retention powers under Section 8 of Article VI of the Puerto Rico Constitution ("Retention Powers").

3.      PRIFA issued several series of bonds pursuant to two resolutions:  Series 2005A, 2005B and 2005C bonds issued by PRIFA pursuant to Resolution No. 2005-17 (the "2005 Bonds") and Series 2006 bonds issued by PRIFA pursuant to Resolution No. 2006-55 (the "2006 Bonds," and collectively with the 2005 Bonds, the "Bonds").  Payments on the Bonds are funded expressly and exclusively through amounts deposited by PRIFA in a segregated Sinking Fund (defined below)[5] held by the Trustee.[6]

---

[4] Plaintiff reserves its right to raise additional objections to any other claims asserted by Defendants in their Proofs of Claim or otherwise, and reserves its right to commence additional proceedings or file objections on any basis to any claims filed in connection with the Bonds.

[5] Capitalized terms not defined in the Nature of Action are defined below.

[6] While PRIFA issued other debt for different purposes, such issuances have other sources of payment and are irrelevant to this Complaint.

4.      The Bonds are non-recourse.  In addition, the Commonwealth is neither an issuer nor a guarantor of the Bonds, and, as the PRIFA Enabling Act and the PRIFA Bond Materials expressly state, the Commonwealth has no liability with respect to the Bonds.

5.      This proceeding arises out of a dispute regarding the Retained Rum Tax Remittances (as defined below).  Since November 30, 2015, none of the Retained Rum Tax Remittances have been transferred to PRIFA by the Commonwealth.  PRIFA is not a Title III debtor.

6.      Defendants filed Proofs of Claim in the Commonwealth Title III Case asserting the Commonwealth is liable to them for not appropriating and transferring the Retained Rum Tax Remittances to PRIFA, and alleging various constitutional, statutory and contractual theories in an attempt to substantiate their claims.  Defendants' claims should be disallowed in their entirety.

**PARTIES**

7.      The Oversight Board is an entity within the Commonwealth government established pursuant to PROMESA.  The Oversight Board serves as the Commonwealth's sole representative in its PROMESA Title III case pursuant to PROMESA section 315(b), and is acting only in that capacity herein.

8.      Defendant Ambac is a Wisconsin-domiciled stock insurance corporation with its principal place of business at One State Street Plaza, New York, New York 10004.  Ambac filed Claim Nos. 50420, 83010 and 122277 in the Commonwealth Title III Case on June 26, 27 and 28, 2018, respectively, for the Bonds it allegedly holds and/or insures (the "Ambac Claim").[7]

9.      The Ambac Claim asserts a secured claim against the Commonwealth and  alleges, among other things, (*i*) a statutory lien against the Retained Rum Tax Remittances, (*ii*) perfected

---

[7] Because the three proofs of claim filed by Ambac appear to be identical and duplicative, this Complaint treats them as a single proof of claim.  All references to the "Ambac Claim" refer to all three separately filed proofs of claim.

security interests in the Retained Rum Tax Remittances, (*iii*) breaches of contract and tort arising from the Commonwealth not appropriating and transferring the Retained Rum Tax Remittances to PRIFA, (*iv*) the Ambac Claim should be afforded first priority status, (*v*) violations of the Takings Clause, (*vi*) violations of the Contract Clause, (*vii*) violations of the Due Process Clause, (*viii*) violations of PROMESA section 407, (*ix*) subrogation to the claims of holders of Bonds ("Bondholders"), (*x*) claims to ownership of the Retained Rum Tax Remittances, and (*xi*) a reservation of Ambac's right to assert administrative expense priority.

10.    Defendant AGC is a Maryland insurance company with its principal place of business at 1633 Broadway, New York, New York 10019.  On May 25, 2018, AGC filed Claim Nos. 33081 and 57622 in the Commonwealth Title III Case on May 25, 2018 for the Bonds it allegedly holds and/or insures (the "AGC Claim").[8]

11.    The AGC Claim asserts a secured claim against the Commonwealth and alleges, among other things, (*i*) a statutory lien against the Retained Rum Tax Remittances, (*ii*) perfected security interests in the Retained Rum Tax Remittances, (*iii*) the Retained Rum Tax Remittances are special revenues, (*iv*) breaches of contract and tort arising from the Commonwealth not appropriating and transferring the Retained Rum Tax Remittances to PRIFA, (*v*) violations of the Takings Clause, (*vi*) violations of the Contract Clause, (*vii*) violations of the Due Process Clause, (*viii*) violations of PROMESA section 407, (*ix*) subrogation to the claims of Bondholders, (*x*) claims to ownership of the Retained Rum Tax Remittances, and (*xi*) a reservation of AGC's rights to assert administrative expense priority.

12.    Defendant FGIC is a New York stock insurance corporation with its principal place of business at 463 Seventh Avenue, 16th Floor, New York, New York 10018.  FGIC filed Claim

---

[8] Because the two proofs of claim filed by AGC appear to be identical and duplicative, this Complaint treats them as a single proof of claim.  All references to the "AGC Claim" refer to both separately filed proofs of claim.

No. 101243 in the Commonwealth Title III Case on June 28, 2018 for the Bonds it allegedly holds and/or insures (the "FGIC Claim").

13.    The FGIC Claim asserts a secured claim against the Commonwealth and alleges (*i*) a statutory lien against the Retained Rum Tax Remittances, (*ii*) perfected security interests in the Retained Rum Tax Remittances, (*iii*) the Retained Rum Tax Remittances are special revenues, (*iv*) breaches of contract and tort arising from the Commonwealth not appropriating and transferring the Retained Rum Tax Remittances to PRIFA, (*v*) violations of the Takings Clause, (vi) violations of the Contract Clause, (*vii*) violations of the Due Process Clause, (*viii*) violations of PROMESA section 407, (*ix*) subrogation to the claims of Bondholders, (*x*) claims to ownership of the Retained Rum Tax Remittances, and (*xi*) a reservation of FGIC's rights to assert administrative expense priority.

14.    Defendant U.S. Bank is a bank organized under the laws of the State of New York having its principal place of business at 100 Wall Street, New York, New York, 10005. U.S. Bank is the successor to Citibank, N.A. as Trustee for the Bonds under the Trust Agreement between PRIFA and Citibank, N.A. dated as of October 1, 1988, as amended (the "Trust Agreement").[9] U.S. Bank filed Claim No. 13386 in the Commonwealth Title III Case on May 18, 2018 (the "Master Proof of Claim").

15.    The Master Proof of Claim asserts a secured claim against the Commonwealth and alleges, among other things, (*i*) a statutory lien against the Retained Rum Tax Remittances, (*ii*) perfected security interests in the Retained Rum Tax Remittances, (*iii*) the Retained Rum Tax Remittances are special revenues, (*iv*) priority should be afforded to Defendants' claims to the Retained Rum Tax Remittances, (*v*) breaches of contract and tort arising from the Commonwealth

---

[9] A copy of the Trust Agreement is attached hereto as **Exhibit A**.

not appropriating and transferring the Retained Rum Tax Remittances to PRIFA, (*vi*) violations of the United States and Commonwealth Constitutions, (*vii*) violations of PROMESA section 407, and (*viii*) a reservation of U.S. Bank's rights to assert subrogation and administrative expense priority.

## JURISDICTION AND VENUE

16.     This Court has subject-matter jurisdiction over this adversary proceeding pursuant to PROMESA sections 306(a) and 306(b) because it arises under PROMESA Title III, in a Title III case, relates to the Commonwealth's underlying Title III case, and/or involves disputes over property of the Commonwealth.

17.     This Court has personal jurisdiction over each Defendant pursuant to PROMESA section 306(c).

18.     Venue is proper under PROMESA section 307 because this adversary proceeding is brought in a PROMESA Title III case pending in the District of Puerto Rico.

19.     This adversary proceeding is brought pursuant to  Rules 3007, 7001(1), (2), (8), and (9) of the Federal Rules of Bankruptcy Procedure and Bankruptcy Code sections 502, 506, 509, 544(a), 550, 551, 552, 902, 927, and 928(b), made applicable to this proceeding pursuant to PROMESA section 301(a).

## FACTS

**I.      The PRIFA Enabling Act and the Rum Taxes**

20.     PRIFA is a public corporation established by the Legislative Assembly pursuant to the PRIFA Enabling Act.

21.     PRIFA is a covered instrumentality under PROMESA § 101(d)(1)(A).  PRIFA is not a Title III debtor.

7

22.     To partly fund PRIFA's activities, the Commonwealth historically made appropriations to PRIFA from the general fund, on a conditional basis, of certain tax revenues remitted to the Commonwealth by the United States government.

23.     The United States government imposes certain excise taxes on rum produced in Puerto Rico and sold on the United States mainland (the "Rum Taxes").  26 U.S.C. § 7652.  The Rum Taxes are collected by the United States Treasury and then "covered into" (*i.e.*, deposited into) the "treasury of Puerto Rico" (and, once remitted to the Commonwealth, the "Rum Tax Remittances").  *Id.*

24.     The PRIFA Enabling Act authorizes the Commonwealth to conditionally appropriate to PRIFA up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury each year, subject to the Commonwealth's Retention Powers.  3 L.P.R.A. § 1914.

25.     Historically, up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury each year were deposited into the Treasury Single Account ("TSA"), which is the Commonwealth's main operational account, and then transferred by the Commonwealth to PRIFA, subject to the Commonwealth's Retention Powers, and conditionally deposited into a special fund designated as the "Puerto Rico Infrastructure Fund" (the "PRIFA Infrastructure Fund") to be used by PRIFA for its corporate purposes pursuant to 3 L.P.R.A. § 1914.

26.     3 L.P.R.A. § 1914 of the PRIFA Enabling Act authorizes PRIFA to:

> [S]egregate a portion of [the Rum Tax Remittances transferred to PRIFA by the Commonwealth and conditionally deposited into the PRIFA Infrastructure Fund] into one (1) or more sub-accounts, subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico for the payment of the principal and interest on bonds or other obligations of

> [PRIFA], or for the payment of bonds and other obligations issued
> by a benefited entity, or for any other legal purpose of [PRIFA].

3 L.P.R.A. § 1914; *see also* 3 L.P.R.A. § 1906(m) (authorizing PRIFA to "mortgage or pledge any

property for the payment of the principal of and interest on any bonds issued by [PRIFA] . . . and

pledge all or a portion of such revenues as [PRIFA] may receive including, but not limited to, and

subject to the provisions of § 8 of Article VI of the Constitution of the Commonwealth of Puerto

Rico, all or any portion of the [Rum Tax Remittances]").

27.     Approximately 46% of the remaining Rum Tax Remittances are disbursed to

various sources, including various on-island rum manufacturers and producers (the "Rum

Producers") to promote the continued production of rum.  Rum Tax Remittances distributed to

Rum Producers are *not* deposited into the TSA, but rather they are directly transferred to the Rum

Producers after the federal government sends the Rum Tax Remittances to Puerto Rico.

**II.     PRIFA's Authority to Issue Bonds Pursuant to the PRIFA Enabling Act**

28.     The PRIFA Enabling Act authorizes PRIFA to issue bonds as it deems necessary

to provide sufficient funds for PRIFA's corporate purposes:

> [PRIFA] is hereby authorized to issue bonds from time to time  for
> such principal amounts which, in the opinion of [PRIFA], are
> necessary to provide sufficient funds to finance infrastructure
> including, but not limited to, . . . expenses of [PRIFA] or such other
> benefited entities . . . which are incidental, necessary or convenient
> to execute its or their corporate purposes and powers . . . .  The bonds
> issued by [PRIFA] may be payable from all or any part of the gross
> or net revenues and other income derived by [PRIFA] which, subject
> to the provisions of § 8 of Article VI of the Constitution of the
> Commonwealth of Puerto Rico, may include the proceeds of any tax
> or other funds which may be made available to [PRIFA] by the
> Commonwealth as provided in the trust agreement or resolution
> whereby the bonds are issued.  The principal of, and interest on, the
> bonds issued by [PRIFA] may be secured by a pledge of all or part
> of any of its revenues which, subject to the provisions of § 8 of
> Article VI of the Constitution of the Commonwealth of Puerto Rico,
> may include the proceeds of any tax or other funds which may be
> made available to [PRIFA] by the Commonwealth, all as provided

in the trust agreement or resolution under which the bonds are
issued.

3 L.P.R.A. §§ 1907, 1907(a).

29.    The PRIFA Enabling Act authorizes PRIFA to grant a security interest (but cannot,
and does not, itself actually grant a security interest) as security for bonds, subject to the
Commonwealth's Retention Powers, and pursuant to the terms of an applicable trust agreement,
in funds received by PRIFA that the Commonwealth may appropriate from the TSA and transfer
to the PRIFA Infrastructure Fund.  See 3 L.P.R.A. §§ 1906(m), 1907(a).

30.    Although PRIFA has the power to issue bonds based on the revenue it anticipates
may be appropriated to it by the Commonwealth, the PRIFA Enabling Act does not give PRIFA
the power to obligate the Commonwealth or otherwise make the Commonwealth liable on bonds
issued by PRIFA.  3 L.P.R.A. § 1910 provides:

> The bonds issued by [PRIFA] shall not constitute an indebtedness
> of the Commonwealth nor of any of its political subdivisions, and
> neither the Commonwealth nor any of its political subdivisions shall
> be liable therefor, and such bonds shall be payable solely out of
> those funds pledged for the payment thereof.
>
> [PRIFA] shall not be deemed to be acting on behalf of or to have
> incurred any obligation to the holders of any indebtedness of the
> Commonwealth or any benefited entity or to third parties . . . ."

3 L.P.R.A. § 1910.

31.    The Commonwealth does not have any obligation to the Bondholders on account
of the Bonds.

32.    The PRIFA Enabling Act, as alleged above, empowers PRIFA to do certain things.
3 L.P.R.A.  § 1906.  As relevant herein, 3 L.P.R.A. § 1906(l) empowers PRIFA to borrow money
and issue bonds for any of its corporate purposes.  3 L.P.R.A. § 1906(m) empowers PRIFA to
mortgage or pledge any property for the payment of the principal of and interest on any bonds

10

issued by PRIFA, and pledge all or a portion of such revenues as PRIFA may receive, subject to Article VI, Section 8 of the Commonwealth Constitution.  None of the rights and powers conferred on PRIFA by the PRIFA Enabling Act (or any other Commonwealth law) give rise to any liability of the Commonwealth with respect to bonds issued by PRIFA.  As described above, 3 L.P.R.A § 1910 states "bonds issued by [PRIFA] shall not constitute an indebtedness of the Commonwealth nor of any of its political subdivisions, and neither the Commonwealth nor any of its political subdivisions shall be liable therefor, and such bonds shall be payable solely out of those funds pledged for the payment thereof."  The PRIFA Enabling Act, at 3 L.P.R.A § 1913 (the "<u>PRIFA Non-Impairment Provision</u>"), provides the Commonwealth "shall not limit or alter the rights hereby conferred to [PRIFA] until such bonds and the interest thereon are paid in full and such contracts are fully performed and honored on the part of [PRIFA]."

33.    The PRIFA Enabling Act reinforces that a trust agreement for bond issuances "shall contain all such provisions as [PRIFA] may deem reasonable and proper for the protection of the bondholders."  3 L.P.R.A. § 1911.

## III.    The Trust Agreement and the Bonds

34.    Pursuant to the PRIFA Enabling Act, PRIFA issued approximately $1.612 billion in Bonds under the Trust Agreement.

35.    In accordance with 3 L.P.R.A. § 1914 and section 401 of the Trust Agreement, PRIFA established a segregated "sinking fund" held by the Trustee (the "<u>Sinking Fund</u>").  PRIFA is contractually obligated under the Trust Agreement to deposit funds from the PRIFA Infrastructure Fund into the Sinking Fund for the payment of principal and interest on the Bonds. *See* Trust Agreement § 401.

36.    The PRIFA Enabling Act, which authorizes PRIFA to grant a security interest against certain revenues pursuant to a trust agreement or resolution, cannot, and does not, itself

11

create or grant a security interest against any funds.  The Trust Agreement effectuates, at most, a
grant to the Bondholders of a security interest only against the "Pledged Revenues" – defined in
section 101 of the Trust Agreement at 17– on deposit in the Sinking Fund.  Section 601 of the
Trust Agreement provides the principal, interest and premium, if any, on Bonds are to be paid
solely from "Pledged Revenues":

> [PRIFA] covenants that it will promptly pay the principal of and the
> interest on every Bond issued hereunder and secured hereby at the
> places, on the dates and in the manner specified herein and in said
> bonds and any premium required for the retirement of said bonds by
> purchase or redemption, according to the true intent and meaning
> thereof.  Except as in this Agreement otherwise provided, such
> principal, interest and premium, if any, are payable solely from the
> Pledged Revenues, which Pledged Revenues are hereby pledged to
> the payment thereof in the manner and to the extent hereinabove
> particularly specified.

Trust Agreement § 601.

37.     The Trust Agreement defines "Pledged Revenues" as "Special Tax Revenues and
any other moneys that have been deposited to the credit of the Sinking Fund."  Trust Agreement §
101.  "Special Tax Revenues" are defined as the "Offshore Excise Taxes deposited to the credit of
the [PRIFA] Infrastructure Fund pursuant to the [PRIFA Enabling] Act."  *Id.*  "Offshore Excise
Taxes" are defined as "the federal excise taxes on rum and other articles produced in Puerto Rico
and sold in the United States that are collected by the United States government and remitted to
the Puerto Rico Treasury Department pursuant to the Code and other provisions of law."  *Id.*  Thus,
"Pledged Revenues" under the Trust Agreement are limited to: (*i*) Rum Tax Remittances
transferred to PRIFA by the Commonwealth and deposited into the PRIFA Infrastructure Fund,
and then deposited in the Sinking Fund by PRIFA, and (*ii*) any other moneys deposited in the
Sinking Fund by PRIFA.

38.     Rum Tax Remittances not transferred to PRIFA by the Commonwealth (the "Retained Rum Tax Remittances") are not "deposited to the credit of the Sinking Fund," and are not "Pledged Revenues" under the Trust Agreement.  Neither PRIFA nor its Bondholders has any property interest in the Retained Rum Tax Remittances.

39.     Article IV of the Trust Agreement sets forth the manner and extent to which a security interest against the Pledged Revenues (if any) is created in favor of the Bondholders. Section 401 contractually obligates PRIFA to transfer moneys from the PRIFA Infrastructure Fund, which is held by PRIFA, to the Sinking Fund:

> [PRIFA] shall maintain with a Qualified Depositary the [PRIFA] Infrastructure Fund.  [PRIFA] shall not pledge or create any liens upon any moneys in the [PRIFA] Infrastructure Fund.  As promptly as practicable upon the receipt of Special Tax Revenues or other moneys deposited to the credit of the [PRIFA] Infrastructure Fund, [PRIFA] shall withdraw an amount of such Special Tax Revenues and other moneys to make the following deposits . . . (a) to the credit of the Bond Service Account . . .

Trust Agreement § 401.  Pursuant to section 402, moneys in the Bond Service Account, a sub-account of the Sinking Fund, are used to pay interest and principal.  *Id.* § 402.

40.     Section 601 of the Trust Agreement expressly provides the Bonds and the Trust Agreement do not constitute a debt or obligation of the Commonwealth, and neither the Commonwealth nor any of its political subdivisions shall be liable for the payment of the principal of or the interest on the Bonds:

> Nothing in the Bonds or in this Agreement shall be deemed to constitute the Bonds a debt or obligation of the Commonwealth of Puerto Rico or any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable for the payment of the principal of or the interest on the Bonds.

*Id.* § 601.

13

IV.    **The Resolutions and Official Statements**

41.    The 2005 Resolution and 2006 Resolution authorize PRIFA's issuance of the 2005 Bonds and the 2006 Bonds, respectively.

42.    The Resolutions cannot (and do not) give PRIFA any property interest in the Retained Rum Tax Remittances.  The Resolutions also cannot (and do not) grant Bondholders a security interest against the Retained Rum Tax Remittances or any other moneys not deposited in the Sinking Fund.  Any security interest held by Bondholders is limited to funds deposited by PRIFA in the Sinking Fund (*i.e.*, the Pledged Revenues).

43.    The Official Statements for each series of Bonds issued by PRIFA under the Trust Agreement (collectively, the "Official Statements," and with the Trust Agreement and the Resolutions, the "PRIFA Bond Materials")[10] inform bondholders: "the Federal Excise Taxes securing the Bonds are subject to a number of factors, including the continued imposition and remittance by the United States of such taxes to the Commonwealth and conditions affecting the Puerto Rico rum industry."  *See* 2005 Official Statement at S-2; 2006 Official Statement at S-2.

44.    The Official Statements provide "[t]he Federal Excise Taxes and other revenues received from the Commonwealth and deposited in the [PRIFA Infrastructure Fund] are subject to being applied first to the payment of general obligation debt or debt guaranteed by the Commonwealth, if other Commonwealth revenues are not sufficient therefor."  *See* 2005 Official Statement at S-2; 2006 Official Statement at S-3.

45.    The Official Statements specify the Commonwealth is not liable on any of the Bonds.  *See* 2005 Official Statement at IV-2 ("The [B]onds issued under the provisions of the Trust

---

[10] A true and correct copy of the Official Statement for the Series 2005 Bonds (the "2005 Official Statement") is attached hereto as **Exhibit B**.  A true and correct copy of the Official Statement for the Series 2006 Bonds (the "2006 Official Statement") is attached hereto as **Exhibit C**.

Agreement . . . do not constitute an indebtedness of the Commonwealth of Puerto Rico or of any

of its political subdivisions, other than [PRIFA], and neither the Commonwealth of Puerto Rico

nor any of its political subdivisions, other than [PRIFA], are liable therefor . . . ."); *see also* 2006

Official Statement at II-2 (same).

## V.   Security Interests, if any, Securing the Bonds Are Limited to Funds Actually Received by PRIFA and Deposited in the Sinking Fund

46.   The PRIFA Enabling Act does not create a statutory lien.  The Resolutions are not

statutes, and cannot create a statutory lien.

47.   The Trust Agreement and Resolutions also do not grant Bondholders a security

interest against the Retained Rum Tax Remittances, or in any other moneys not deposited in the

Sinking Fund.  Any security interest is limited to monies actually received by PRIFA and deposited

by PRIFA into the Sinking Fund.

48.   Any claim that a Bondholder has a security interest against Retained Rum Tax

Remittances also fails because such purported security interest has not been perfected as to the

Commonwealth.

## VI.   The Commonwealth's Acts and Obligations with Respect to the Bonds

49.   The Commonwealth is neither an issuer nor a guarantor of the Bonds.   The

Commonwealth did not enact the Resolutions, and is not a party to the Trust Agreement.  Neither

the Trust Agreement nor the Resolutions grants a security interest against any property in which

the Commonwealth has an interest or otherwise contains any undertakings by the Commonwealth.

50.   The PRIFA Enabling Act, the Trust Agreement, and the Official Statements

expressly exclude any Commonwealth obligation or liability with respect to payment of the Bonds.

3 L.P.R.A. § 1911; Trust Agreement § 601; 2005 Official Statement at IV-2; 2006 Official

Statement at II-2.

15

A.    *The Retention of the Retained Rum Tax Remittances under the Commonwealth Constitution*

51.    Any obligation to appropriate and transfer to PRIFA up to the first $117 million in Rum Tax Remittances, or deposit funds in the PRIFA Infrastructure Fund – were always expressly subject to Section 8 of Article VI of the Commonwealth Constitution:

> In case the available resources including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law.

P.R. Const. art. VI, § 8.   The PRIFA Enabling Act recognizes this constitutional limit by authorizing PRIFA to "segregate a portion of [the Rum Tax Remittances covered into the PRIFA Infrastructure Fund] into one (1) or more sub-accounts, subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico for the payment of the principal and interest on bonds and other obligations of [PRIFA]." 3 L.P.R.A. § 1914.

52.    The Commonwealth Constitution allows the Commonwealth to use its resources when necessary to protect the life, health, and general welfare of the people of Puerto Rico. Pursuant to Section 19, Article II of the Commonwealth Constitution, "[t]he power of the Legislative Assembly to enact laws for the protection of the life, health and general welfare of the people shall likewise not be construed restrictively."  P.R. Const. art. II, § 19.

53.    Section 18 of the Commonwealth Constitution establishes the authority of the Legislative Assembly to approve laws for grave emergency situations when there is a clear danger to public health and safety or to the delivery of essential services.  *Id.* art. II, § 18.

54.    All Commonwealth statutory or contractual duties (including any obligations with respect to the Bonds) are either expressly or impliedly subject to Article VI, Section 8, Article II, Section 18 and Article II, Section 19 of the Commonwealth Constitution.

16

B.   *The Suspension of Appropriations and Transfers to PRIFA under the Commonwealth Constitution and Ensuing Emergency Orders*

55.     Pursuant to Section 8 of Article VI of the Commonwealth Constitution, on November 30, 2015, the then-Governor of the Commonwealth (the "Governor") issued the Administrative Bulletin OE-2015-046 (the "First Emergency Order," a true and correct copy of which is attached hereto as **Exhibit D**).

56.     The First Emergency Order ordered "the Secretary of the Treasury . . . to withhold the revenue allocated to [PRIFA]."  *See* First Emergency Order at 2.

57.     Under the First Emergency Order, the Commonwealth authorized the use of its own funds to "safeguard" the public welfare and, to the extent any funds remain available, pay down public debt.

58.     The First Emergency Order was made pursuant to the Commonwealth's constitutional authority, and superseded any Commonwealth obligation to appropriate and transfer to PRIFA up to the first $117 million in Rum Tax Remittances "covered into" the Puerto Rico Treasury, subject to the Commonwealth's Retention Powers.  The Commonwealth's actions pursuant to the First Emergency Order were in accordance with any contractual, statutory, or other obligations, if any, it had with respect to the Bonds.

59.     On December 8, 2015, the Governor issued Administrative Bulletin OE-2015-49 (the "Second Emergency Order," a true and correct copy of which is attached hereto as **Exhibit E**, and together with the First Emergency Order, the "Emergency Orders").  The Second Emergency Order implemented the First Emergency Order.

60.     On April 6, 2016, pursuant to Article II, Section 19 of the Commonwealth Constitution, the Governor signed into law the *Puerto Rico Emergency Moratorium and Financial Rehabilitation Act* (the "Moratorium Act," a true and correct copy of which is attached hereto as

**Exhibit F**).  *See* Moratorium Act at 5.  The Moratorium Act, among other things, authorized the Governor to declare a temporary hold on debt service payments, stay creditor remedies resulting from the hold, and allow the Governor to order the suspension or modification of statutory or other obligations to transfer funds to pay or secure any covered obligation.  *See id*. at 6.

61.    Subsequently, the Governor issued Moratorium Order 18 (Administrative Bulletin OE-2016-18), Moratorium Order 30 (Administrative Bulletin EO-2016-30) and Moratorium Order 31 (Administrative Bulletin EO-2016-31) (together the "Moratorium Orders," true and correct copes of which are attached hereto as **Exhibits G**, **H**, and **I**, respectively).[11]  The Moratorium Orders facilitated effective management of the Commonwealth's ongoing fiscal emergency by declaring a state of emergency and prioritizing the provision of essential services for the health, safety and welfare of the residents of the Commonwealth over debt service.  To that end, through the Moratorium Orders, the Governor ordered the retention of certain revenues from, among other entities, PRIFA, in order to provide essential services for the people of Puerto Rico.  *See* OE-2016-18 at 5; *see also* EO-2016-30 at 2-3; *see also* EO-2016-31 at 2-3.

62.    Pursuant to the Emergency Orders, the Moratorium Act and the Moratorium Orders, the Commonwealth has not appropriated or transferred any of the Retained Rum Tax Remittances to PRIFA since November 30, 2015.

C.    ***The Preemption of Commonwealth Law Conditionally Allocating Rum Tax Remittances to PRIFA***

i.    ***PROMESA***

63.    PROMESA became effective on June 30, 2016, and created the Oversight Board. PROMESA § 101(b).

---

[11] The Emergency Orders, the Moratorium Act, and the Moratorium Orders are collectively referred to herein as the "Pre-PROMESA Retention Actions."

64.     PROMESA section 201 gives the Oversight Board the exclusive power to develop and certify fiscal plans for the Commonwealth and its instrumentalities.  PROMESA § 201.

65.     PROMESA section 202 gives the Oversight Board the exclusive power to certify budgets for the Commonwealth and its instrumentalities over all appropriations, which shall be deemed to be "in full force and effect" once certified.  PROMESA § 202(e)(3)(C).

66.     PROMESA section 4 provides "[t]he provisions of [PROMESA] shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with [PROMESA]."  PROMESA § 4.

67.     All Commonwealth statutes impacting payment of the Bonds which statutes appropriate or transfer monies without Oversight Board certification are preempted.

68.     PROMESA section 405 provides, among other things, (*i*) there is a fiscal emergency in Puerto Rico, (*ii*) the Commonwealth is unable to provide its citizens with effective services, and (*iii*) the fiscal emergency has contributed to the accelerated outmigration of residents and businesses.  PROMESA § 405(m)(1)-(3).

**ii.     *The Commonwealth Title III Case***

69.     On May 3, 2017 (the "Petition Date"), the Oversight Board, at the request of the Governor, issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof (the "Commonwealth Title III Case").

70.     Pursuant to PROMESA, the Oversight Board is the sole representative of each Title III debtor (including the Commonwealth) in the Title III cases, and has certain powers of a chapter 11 trustee.  *See* PROMESA §§ 301(c)(7), 315(b).  Additionally, only the Oversight Board may propose a plan of adjustment of the debts of the Commonwealth.  PROMESA § 312.

19

iii.   *The Fiscal Plans, Budgets, and the Post-PROMESA Treatment of the Retained Rum Tax Remittances*

71.    Between March 13, 2017 and May 9, 2019, the Oversight Board certified eight fiscal plans for the Commonwealth.  None of the fiscal plans provided the Commonwealth would appropriate and transfer Retained Rum Tax Remittances to PRIFA.

72.    On June 30, 2018, the Oversight Board certified a budget for the Commonwealth for Fiscal Year 2019 (the "Certified FY19 Budget").  The Certified FY19 Budget did not include an appropriation or transfer of Retained Rum Tax Remittances by the Commonwealth to PRIFA.

73.    On May 9, 2019, the Oversight Board certified the current fiscal plan for the Commonwealth (the "May 2019 Fiscal Plan"), a true and correct copy of which is attached hereto as **Exhibit J**.  The May 2019 Fiscal Plan provided the Commonwealth would retain the Retained Rum Tax Remittances to meet the May 2019 Fiscal Plan's cash flow projections and fund required expenditures.  May 2019 Fiscal Plan at 27, Ex. 13.  The May 2019 Fiscal Plan contains a "Revenue Breakdown" that lists Retained Rum Tax Remittances as available for the Commonwealth's use. *Id.* at 146, Ex. 84.

74.    On June 30, 2019, the Oversight Board certified a budget for the Commonwealth for the current Fiscal Year 2019-2020 (the "Certified FY2020 Budget"), a true and correct copy of which is attached hereto as **Exhibit K**.  The Certified FY2020 Budget does not include an appropriation or transfer of Retained Rum Tax Remittances by the Commonwealth to PRIFA. Certified FY2020 Budget at 102, 105.

iv.   *The Commonwealth Plan of Adjustment*

75.    On September 27, 2019, the Oversight Board filed a proposed *Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* in the Commonwealth Title III Case (the "Commonwealth Plan").  Case No. 17-BK-3283-LTS, ECF No. 8765.

20

76.    The Commonwealth Plan proposes to pay certain claims based on the Commonwealth's general obligation bonds at a level less than the full amount of their claims, even after taking into account the retention of the Retained Rum Tax Remittances. *See* Plan Arts. X-XXVIII (providing for varied levels of impairment to general obligation bond claims).

## V.    Defendants' Proofs of Claim Filed in the Commonwealth Title III Case

77.    On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (b) Approving Form and Manner of Notice Thereof* (the "Bar Date Motion").  Case No. 17-BK-3283-LTS, ECF No. 2255.  In the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established the deadlines and procedures for filing proofs of claim in the Title III Cases.  Case No. 17-BK-3283-LTS, ECF No. 2521.  Upon the informative motion of certain creditors, and the support of the Debtor, the Court subsequently entered an order (the "Extension Order," and together with the Initial Bar Date Order, the "Bar Date Orders") extending those deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).  Case No. 17-BK-3283-LTS, ECF No. 3160 ¶ 2.

78.    Pursuant to the Bar Date Orders, the "indenture trustees, fiscal agents, or any similar agent or nominee . . . for each respective series of bonds issued by a Debtor or non-Debtor . . . may file a master proof of claim . . . against the applicable Debtor on behalf of themselves and all holders of bond claims for the respective series of bonds . . . ."  Initial Bar Date Order ¶ 5.a.

79.    Pursuant to the Bar Date Orders, U.S. Bank filed the Master Proof of Claim in the Commonwealth Title III Case.

80.    Defendants filed their respective Proofs of Claim in the Commonwealth Title III Case.

## VI.   Defendants' Lack of Standing to Assert their Proofs of Claim

81.   No Defendant has a right to payment of the Bonds from the Commonwealth. Pursuant to the PRIFA Enabling Act, the Trust Agreement, and the Offering Statements, the Bonds are not a debt of the Commonwealth and the Commonwealth has no liability thereon.  *See* 3 L.P.R.A. § 1910 ("The bonds issued by PRIFA shall not constitute an indebtedness of the Commonwealth nor of any of its political subdivisions, and neither the Commonwealth nor any of its political subdivisions shall be liable therefor, and . . . [PRIFA] shall not be deemed to be acting on behalf of or to have incurred any obligation to the holders of any indebtedness of the Commonwealth . . . ."); Trust Agreement § 601; 2005 Official Statement at IV-2 (same); 2006 Official Statement at II-2 (same).

82.   The Bonds are non-recourse bonds, and payment for the Bonds is exclusively limited to disbursements from the Sinking Fund.  The Bonds do not grant any security interest against the Rum Taxes, the Rum Tax Remittances or the Retained Rum Tax Remittances, and the Commonwealth has no obligations itself to fund the Sinking Fund.

83.   Pursuant to the PRIFA Enabling Act, only PRIFA is given a conditional right to receive up to the first $117 million in Rum Tax Remittances "covered into" the Puerto Rico Treasury each year; creditors of PRIFA do not have any such right.  A creditor of PRIFA does not hold any right to payment of Retained Rum Tax Remittances from the Commonwealth.

84.   With respect to the Bonds, a creditor of PRIFA is, at most, only a creditor of a creditor of the Commonwealth.  Any rights in the Retained Rum Tax Remittances *vis-à-vis* the Commonwealth would belong only to PRIFA, not PRIFA's creditors, under both Commonwealth law and Bankruptcy Code section 501.

85.   Bankruptcy Code section 501, which authorizes the filing of proofs of claim, does not authorize a creditor of a creditor of the debtor to file a proof of claim.  Parties that are creditors

of a creditor of a debtor have no claim against the debtor within the meaning of Bankruptcy Code section 101(5).

## VII.   The PRIFA Enabling Act Does Not Create a Statutory Lien

86.   The PRIFA Enabling Act does not create a statutory lien in favor of the Bondholders.

87.   The PRIFA Enabling Act does not specify any Rum Tax Remittances appropriated and transferred to PRIFA by the Commonwealth (subject to the Commonwealth's Retention Powers) are subject to any rights of the Bondholders.

88.   The PRIFA Enabling Act authorizes PRIFA to grant security interests in any Rum Tax Remittances appropriated and transferred to PRIFA by the Commonwealth subject to the Commonwealth's Retention Powers, and deposited by PRIFA into the Sinking Fund, without requiring PRIFA to do so.  3 L.P.R.A. § 1907(a) ("the principal of, and interest on, the bonds issued by [PRIFA] may be secured by a pledge of all or part of any of its revenues.").

89.   The PRIFA Enabling Act specifies any Rum Tax Remittances appropriated and transferred to PRIFA by the Commonwealth subject to the Commonwealth's Retention Powers are conditionally allocated to PRIFA for PRIFA's benefit and for PRIFA's corporate purposes.  3 L.P.R.A. § 1914.

## VIII.   There Is No Equitable Lien Securing the Retained Rum Tax Remittances

90.   The Commonwealth does not recognize the doctrine of equitable liens.

91.   The Uniform Commercial Code applicable in Puerto Rico precludes the existence of an equitable lien where a security interest could have been created under Article 9.

92.   Even if the Commonwealth did recognize equitable liens, the requirements for the creation of an equitable lien have not been met.

23

## IX.     Defendants Do Not Have an Ownership Interest in Any Retained Rum Tax Remittances or Other Commonwealth Property

93.     The PRIFA Enabling Act's conditional allocation of up to the first $117 million in Rum Tax Remittances "covered into" the Puerto Rico Treasury each year and transferred by the Commonwealth to PRIFA subject to the Commonwealth's Retention Powers,  recognizes that the Rum Tax Remittances (*i*) are property of the Commonwealth until they are transferred to PRIFA and deposited in the Sinking Fund, (*ii*) are subject to retention by the Commonwealth if the Commonwealth's available resources are insufficient to meet the appropriations made for a given fiscal year, and (*iii*) once transferred to PRIFA, can be used for PRIFA's corporate purposes.  3 L.P.R.A. § 1907(a) ("The bonds issued by [PRIFA] may be payable from all or any part of the gross or net revenues and other income derived by [PRIFA] which, subject to the provisions of § 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico, may include the proceeds of any tax or other funds which may be made available to [PRIFA] by the Commonwealth as provided in the trust agreement or resolution whereby the bonds are issued."); 3 L.P.R.A. § 1914 (Rum Tax Remittances appropriated and transferred to PRIFA by the Commonwealth subject to the Commonwealth's Retention Powers "shall be covered into a Special Fund to be maintained by or on behalf of [PRIFA], designated as the [PRIFA Infrastructure Fund], and be used by [PRIFA] for its corporate purposes.").

94.     The Commonwealth continues to have the ownership interest in the Retained Rum Tax Remittances; Defendants do not have any ownership interest in the Retained Rum Tax Remittances.  No language in the PRIFA Enabling Act, the Resolutions or the Trust Agreement gives Defendants an ownership interest.  The Commonwealth has the power to retain the Retained Rum Tax Remittances.

95.     Because the Retained Rum Tax Remittances remain "available resources" pursuant to Article VI, Section 8 of the Commonwealth Constitution, and independently due to preemption, the Commonwealth retains the ownership interest in the Retained Rum Tax Remittances.  The Commonwealth did not appropriate or transfer the Retained Rum Tax Remittances to PRIFA or convey any property interests in the Retained Rum Tax Remittances to PRIFA or the Bondholders. 3 L.P.R.A. § 1907(a).    Moreover, Retained Rum Tax Remittances on deposit in the Commonwealth's Treasury Single Account are not funds belonging to Defendants.

96.     The Puerto Rico legislature could not require appropriations be approved by future Puerto Rico legislatures.  Future legislatures retain the right and freedom to repeal or otherwise change any appropriation.  The Legislative Assembly enacted a statute conditionally appropriating to PRIFA up to the first $117 million in Rum Tax Remittances "covered into" the Puerto Rico Treasury, subject to the Commonwealth's Retention Powers, but kept the power to amend or repeal the statute.  The PRIFA Enabling Act's conditional allocation provisions are inconsistent with PROMESA and preempted.

97.     Neither the PRIFA Enabling Act, the Resolutions nor the Trust Agreement creates a trust in favor of Defendants.  Any trust also would not be enforceable, because no deed of trust was executed and the Retained Rum Tax Remittances were not transferred to PRIFA or placed in a segregated account.

**X.    Any Security Interest Held by Defendants is Limited to Rum Tax Remittances Transferred to PRIFA and Deposited in the Sinking Fund; Defendants Do Not Hold Any Security Interests Against the Retained Rum Tax Remittances**

98.     Any security interest granted by section 101 of the Trust Agreement is limited to the "Pledged Revenues" "that have been deposited to the credit of the Sinking Fund"—that is, Rum Tax Remittances appropriated and transferred to PRIFA by the Commonwealth (subject to the Commonwealth's Retention Powers) and deposited by PRIFA into the Sinking Fund.  Trust

Agreement § 101; *see also id.* § 601 ("the principal, interest and premium [on the Bonds], if any, are payable solely from the Pledged Revenues, which Pledged Revenues are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified.").

99.     Article IV of the Trust Agreement sets forth the manner and the extent to which the Pledged Revenues are pledged to Bondholders.  Section 401 creates the Sinking Fund held by the Trustee and contractually obligates PRIFA to transfer moneys form the PRIFA Infrastructure Fund (held by PRIFA) to the Sinking Fund.  Pursuant to section 402 of the Trust Agreement, moneys in a sub-account of the Sinking Fund are to be used to pay interest and principal on the Bonds.  The manner and extent to which the moneys are to be applied to the payment of interest and principal on the Bonds under the Trust Agreement demonstrates any security interest against "Pledged Revenues" is limited to, if anything, moneys both actually received by PRIFA and deposited to the credit of the Sinking Fund held by the Trustee.

100.     The Trust Agreement could not, and does not, grant any security interest against the Retained Rum Tax Remittances because the Retained Rum Tax Remittances were not appropriated to PRIFA, transferred to PRIFA, or deposited by PRIFA to the credit of the Sinking Fund, and are not Pledged Revenues.

## XI.     Any Claimed Security Interest Against the Retained Rum Tax Remittances Is Unperfected

101.     Defendants do not have any security interest against the Retained Rum Tax Remittances. Defendants have not perfected any claimed security interest against the Retained Rum Tax Remittances.

102.     Commonwealth law governs the effectiveness and perfection of security interests. *See* 19 L.P.R.A. § 2251.

26

103.     Under Article 9 of the Uniform Commercial Code ("UCC"), a financing statement may not be filed to perfect any purported security interest against the Commonwealth in deposit accounts.  19 L.P.R.A. § 2262(b)(1).

104.     None of the Defendants has control over any such accounts as required by Article 9 of the UCC.

105.     No financing statements were filed against the Commonwealth regarding the Bonds.

106.     Pursuant to Bankruptcy Code section 544(a), the Commonwealth has, as of the commencement of the Commonwealth Title III Case, and without regard to any knowledge of a trustee, debtor, or creditor, the rights and powers of, or may avoid any transfer of its property or any obligation it incurred that is voidable by, a judicial lien creditor, among other things.  11 U.S.C. § 544(a).

107.     Pursuant to Bankruptcy Code section 502(d), "the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under section . . . 544 . . ." subject to certain conditions.  11 U.S.C. § 502(d).

108.     Pursuant to Bankruptcy Code sections 544(a) and 551, and 19 L.P.R.A. § 2267(a)(2), Defendants' unperfected security interests (if any) should be avoided.

109.     Under Article 9, the Commonwealth, as a "lien creditor" has priority over unperfected security interests.  19 L.P.R.A. § 2267(a)(2).

110.     Under Article 9, "lien creditor" means, among other things, "a trustee in bankruptcy from the date of the filing of the petition."  19 L.P.R.A. § 2212(a)(52).

111.    Pursuant to PROMESA section 301(c)(7), "the term 'trustee,' when used in [Bankruptcy Code provisions incorporated into PROMESA Title III], means the Oversight Board . . . ." PROMESA § 301(c)(7).

112.    The Commonwealth's lien creditor interest in any of the Commonwealth's property has priority over unperfected security interests against such property, including any purported but unperfected security interests of any Defendants against any of the Commonwealth's property.

## XII.    The Retained Rum Tax Remittances Are Not Special Revenues

113.    The Rum Taxes are levied by the United States government, collected by the United States Treasury, and "covered into" the Puerto Rico Treasury pursuant to federal statute, 26 U.S.C. section 7652.

## XIII.    Subordination of Any Subrogation, Reimbursement, or Contribution Rights

114.    Under Bankruptcy Code section 509(c), Defendants' subrogation, reimbursement, or contribution claims are disallowed for all amounts Defendants have not paid to Bondholders and to the extent paid, subordinated to the unpaid claims of the holders of Bonds insured by Defendants.

## XIV.    The Pre-PROMESA Retention of the Retained Rum Tax Remittances Was Permitted by Commonwealth Law and the PRIFA Bond Materials

115.    Article VI, Section 8 of the Commonwealth Constitution provides that, if the available revenues including surplus for any fiscal year are insufficient to meet the appropriations made for that year, "interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."

116.    The PRIFA Enabling Act specifies any allocation of the Retained Rum Tax Remittances was conditional and subject to the Commonwealth's Retention Powers.

28

117.    All of the Retained Rum Tax Remittances were subject to the Commonwealth's
Retention Powers as provided in Article VI, Section 8 of the Commonwealth Constitution.

118.    The Commonwealth was authorized to retain the Retained Rum Tax Remittances
pursuant to its Retention Powers.  The retention of the Retained Rum Tax Remittances was not in
violation of Commonwealth law.

119.    Similarly, the Official Statements provide the Commonwealth can retain the
Retained Rum Tax Remittances pursuant to Article VI, Section 8 of the Commonwealth
Constitution.  2005 Official Statement at S-2; 2006 Official Statement at S-3.

**XV.  Commonwealth Laws Inconsistent with PROMESA Cited by Defendants as a
Challenge to the Commonwealth's Retention of Retained Rum Tax Remittances Are
Preempted by PROMESA**

120.    Once PROMESA was enacted, which included the Oversight Board's power to
control any appropriations by certifying budgets for the Commonwealth pursuant to PROMESA
section 202, any Commonwealth laws inconsistent with PROMESA, or that do not comply with
the appropriation procedure set forth in PROMESA, were preempted.  PROMESA § 4.

121.    The interpretation of the PRIFA Enabling Act asserted by Defendants in their
claims – that the PRIFA Enabling Act requires the Commonwealth to unconditionally allocate the
Retained Rum Tax Remittances to PRIFA – not only is incorrect, but it also is inconsistent with
PROMESA section 202 and the Budgets certified by the Oversight Board thereunder, and therefore
is preempted.

122.    Any provision of the PRIFA Enabling Act interpreted as requiring an unconditional
allocation of Rum Tax Remittances to PRIFA is inconsistent with PROMESA section 202 and the
Budgets certified by the Oversight Board thereunder, and therefore preempted.

123.    The Commonwealth Plan proposes to pay certain claims based on the
Commonwealth's general obligation bonds at a level less than the full amount of those claims,

29

even after taking into account the retention of the Retained Rum Tax Remittances.  *See* Plan Arts.

X-XXVIII.

## XVI.   The Commonwealth's Retention of the Retained Rum Tax Remittances Is Not a Breach of Contract

124.    The Commonwealth is not a party to any of the PRIFA Bond Materials.   The

Commonwealth did not adopt either the 2005 Resolution or the 2006 Resolution.

125.    Because the Commonwealth was not a party to any of the documents governing the

Bonds, and it is expressly exempted from liability by the terms of the documents governing the

Bonds, the Commonwealth does not owe any contractual obligations to, or enforceable by, any

Bondholder, including each Defendant herein, regarding payment on the Bonds.

126.    The Commonwealth's retention of the Retained Rum Tax Remittances did not

constitute a breach of contract.

## XVII.  The Commonwealth's Retention of the Retained Rum Tax Remittances Is Not a Tort

127.    The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to

the Pre-PROMESA Retention Actions was lawful pursuant to Article VI, Section 8 and Article II,

Sections 18 and 19 of the Commonwealth Constitution.   The Commonwealth's retention of the

Retained Rum Tax Remittances pursuant to the fiscal plans and budgets certified by the Oversight

Board was lawful pursuant to PROMESA sections 201 and 202 (and any Commonwealth statute

inconsistent with such retention is preempted by PROMESA section 4).   Because such conduct

was lawful, it does not give rise to a tort claim against the Commonwealth.

128.    Each tort claim asserted by any Defendant also fails to allege the required elements

of the tort asserted.   The Defendants' tortious interference with contract claims fail because (*i*) the

Commonwealth acted properly and lawfully in authorizing the retention of the Retained Rum Tax

Remittances, (*ii*) there was no breach of contract with respect to any alleged failure to make

30

payment on the Bonds because the Commonwealth had no obligation on the Bonds and the monies at issue were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, (iii) the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution, and (iv) the Commonwealth's retention of the Retained Rum Tax Remittances was authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

129.    Defendants' unjust enrichment claims fail because (*i*) Commonwealth law does not recognize a cause of action for unjust enrichment against the Commonwealth; and (*ii*) the documents governing the Bonds specify the rights and obligations of the parties and therefore there could be no separate claim for unjust enrichment apart from any claim for breach of contract, which does not exist in this case.

130.    Defendants' conversion claims fail because (*i*) the Bondholders do not have a security interest against any funds beyond moneys actually received by PRIFA from the Commonwealth and deposited in the Sinking Fund, (*ii*) the Commonwealth's retention of Retained Rum Tax Remittances not appropriated and transferred to PRIFA prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the Bondholders do not have any other property interest in the Retained Rum Tax Remittances, and (*iv*) the Commonwealth's retention of Retained Rum Tax Remittances not appropriated and transferred to PRIFA after the enactment of PROMESA was proper because all laws appropriating moneys without Oversight Board certification were preempted.

131.    Defendants' fraud-based claims fail because the Commonwealth has not made any material misstatements of fact or engaged in any fraudulent conduct.  Statements made in the

31

PRIFA Enabling Act are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim. Statements made in the PRIFA Bond Materials were truthful when made. Defendants also fail to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (i) the date, amount, transferor and transferee of any purported fraudulent conveyance, (ii) whether the transferor was solvent, (iii) whether the transferor received reasonably equivalent value, (iv) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (v) whether the transferor acted in good faith.

## XVIII. The Commonwealth's Retention of Retained Rum Tax Remittances Does Not Violate the Contracts Clause

### A.    *No Impairment of Contractual Relationship*

132.    The Commonwealth did not violate the Contracts Clause of the United States or Commonwealth Constitutions (collectively, the "Contracts Clause") in retaining Retained Rum Tax Remittances that were not appropriated or transferred to PRIFA. The relevant contracts allow for the Commonwealth's retentions of the Retained Rum Tax Remittances and once PROMESA was enacted all requirements to appropriate or transfer such monies to PRIFA were preempted.

133.    The PRIFA Enabling Act discloses the Retained Rum Tax Remittances are subject to retention if the Commonwealth's other available resources are insufficient to meet its expenses (and the Commonwealth would not be liable under any circumstances).

### B.    *No State or Territory Legislative Action*

134.    The Commonwealth's retention of the Retained Rum Tax Remittances, as provided in the fiscal plans and budgets certified by the Oversight Board, were exclusively authorized by PROMESA, a federal statute. *See* PROMESA §§ 101(a)(1), 201(e), 304(a).

135.    The Oversight Board does not legislate.  Because the Oversight Board does not enact laws, its actions cannot be the basis for an alleged violation of the Contracts Clause.

136.    Governmental actions that are exercises of executive, rather than legislative authority, cannot be the basis for an alleged violation of the Contracts Clause.

137.    The Commonwealth's executive orders, including the Emergency Orders and Moratorium Orders, were issued by the Governor as exercises of the Governor's executive authority, and cannot be the basis for an alleged violation of the Contracts Clause.

C.    *The Retention of Retained Rum Tax Remittances Was Reasonable and Necessary Because Retention Was in Accordance with PROMESA*

138.    Pursuant to PROMESA, the Oversight Board certified fiscal plans and budgets for the Commonwealth that did not transfer and appropriate the Retained Rum Tax Remittances to PRIFA.  The statutes that would have done so were preempted.  The failure to appropriate and transfer such funds in accordance with law was reasonable and necessary.

XIX.  **The Commonwealth's Retention of the Retained Rum Tax Remittances Does Not Violate the Takings Clause**

139.    Defendants have no property right in the Retained Rum Tax Remittances. Defendants have no allowable claim under the Takings Clauses United States or Commonwealth Constitutions (collectively, the "Takings Clause").

140.    The Trust Agreement authorizes PRIFA to grant a security interest, if at all, only against revenues actually received by PRIFA and then deposited by PRIFA into the Sinking Fund. The Trust Agreement specifies the Trustee's security interest—to the extent one has been granted at all—is limited to "Pledged Revenues" (Trust Agreement § 601) that have been "deposited to the credit of the Sinking Fund" (*id.* § 101).

141.    The Trust Agreement does not provide that any interest was granted in any right PRIFA may have to receive the Retained Rum Tax Remittances – which were never received by

PRIFA nor deposited in the Sinking Fund.  The Trust Agreement, the PRIFA Enabling Act, and the Resolutions do not provide Defendants with any interests in amounts held by the Commonwealth.

142.    Any property interest any of the Defendants herein may have only applies to funds *received* by PRIFA and *deposited* in the Sinking Fund.

143.    The Commonwealth lawfully retained the Retained Rum Tax Remittances for its own use.  Such funds were not appropriated or transferred to PRIFA, received by PRIFA or deposited by PRIFA into the Sinking Fund.

144.    Defendants do not have any security interest or other property interest in the Retained Rum Tax Remittances.

145.    Defendants knew or should have known the Retained Rum Tax Remittances are subject to the Commonwealth's Retention Powers, and the Commonwealth's police power.  Their takings claims are not allowable because, among other things, the retention of the Retained Rum Tax Remittances did not interfere with their investment-backed expectations.

146.    Alternatively, if Defendants have an allowable takings claim, it is a dischargeable claim.

## XX.    The Commonwealth's Retention of Retained Rum Tax Remittances Does Not Violate the Due Process Clause

147.    Defendants filed their proofs of claim pursuant to a court-supervised process in which they can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.  Defendants do not have allowable Due Process Clause claims under those circumstances.

## XXI.   Defendants Do Not Have a Claim Under PROMESA Section 407

148.   PROMESA section 407(a) provides "if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest against, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property."

149.   No Defendant has a valid claim arising under PROMESA section 407(a) because no transfer, and no transfer in violation of applicable law, occurred.

150.   No "property of any territorial instrumentality" has been "transferred," because the Retained Rum Tax Remittances retained by the Commonwealth were not appropriated or transferred to PRIFA and are not property of PRIFA.

151.   The Commonwealth's retention of the Retained Rum Tax Remittances did not violate applicable law.  Prior to the passage of PROMESA, the retention of the Retained Rum Tax Remittances was lawful pursuant to the Commonwealth Constitution and the PRIFA Enabling Act. Following the passage of PROMESA, the Commonwealth's retention of the Retained Rum Tax Remittances was lawful pursuant to PROMESA and any laws requiring transfer of the Retained Rum Tax Remittances were preempted.

152.   No Defendant has a valid security interest against the Retained Rum Tax Remittances.  A Defendant could have a security interest against Rum Tax Remittances actually appropriated and transferred to PRIFA, received by PRIFA, and then deposited by PRIFA into the Sinking Fund with the Trustee.

153.   The PRIFA Enabling Act expressly provides any transfer to PRIFA of up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury, subject to the

35

Commonwealth's Retention Powers, is for the benefit of PRIFA's corporate purposes, not for the benefit of PRIFA's creditors.

154.    Even if there were a valid claim under PROMESA section 407(a), no Defendant has standing to assert PROMESA section 407(a) claims during the Title III case, as only the territorial instrumentality (here, PRIFA) has a claim for the property in dispute.

## XXII.  Defendants Do Not Have a Priority Claim Against the Commonwealth

155.    There is no Puerto Rico law granting any Defendant a priority claim with respect to Retained Rum Tax Remittances.

156.    Any Commonwealth laws purporting to recognize priority claims other than those included in PROMESA Title III (and the incorporated Bankruptcy Code provisions) are preempted pursuant to PROMESA section 4.

157.    None of Defendants' claims qualify for priority under PROMESA Title III's sole priority claim in Bankruptcy Code section 507(a)(2) for administrative expenses.  None of Defendants' claims were necessary to preserve the postpetition property of the Commonwealth.

## XXIII. Defendants Do Not Have Allowable Claims for Postpetition Revenues

158.    Any Retained Rum Tax Remittances received by the Commonwealth since the Petition Date constitute "property acquired by the estate . . . after the commencement of the case" for purposes of 11 U.S.C. § 552(a).  Such remittances are not subject to any lien of Defendants.

159.    The Retained Rum Tax Remittances are not "special revenues" as defined in Bankruptcy Code section 902 and any claim under Bankruptcy Code section 928 for a security interest on Retained Rum Tax Remittances received by the Commonwealth since the Petition Date fails because Bankruptcy Code section 928 is only applicable to "special revenues."

160.    Any Defendant's claim under section 928 for a security interest on Retained Rum Tax Remittances received by the Commonwealth since the Petition Date fails because Defendants'

security interest, if any, is limited to amounts actually received by PRIFA, deposited in the PRIFA

Infrastructure Fund, and then deposited into the Sinking Fund.

## OBJECTIONS TO THE AMBAC CLAIM

### COUNT I

JUDGMENT DISALLOWING AMBAC CLAIM AS DUPLICATIVE OF THE MASTER
PROOF OF CLAIM
(11 U.S.C. § 502)

161.   Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

162.   The Ambac Claim seeks principal, prepetition interest, postpetition interest, and

fees against the Commonwealth based on the same Bonds that are the subject of the Master Proof

of Claim asserted by the Trustee because they both make claims for the same exact funds owned

under the Bonds.

163.   In support of the Ambac Claim, Ambac alleges (*i*) a statutory lien against the

Retained Rum Tax Remittances, (*ii*) perfected security interests in the Retained Rum Tax

Remittances, (*iii*) the Retained Rum Tax Remittances are special revenues, (*iv*) the Commonwealth

not appropriating the HTA Allocable Revenues to HTA was unlawful and a breach of contract

and/or gave rise to various tort claims, (*v*) violations of the U.S. and Commonwealth Constitutions

in failing to appropriate the Retained Rum Tax Remittances to PRIFA, (*vi*) violations of

PROMESA section 407, and (*vii*) an entitlement to administrative expense priority.   All of these

allegations are duplicative of claims made by the Trustee in the Master Proof of Claim.

164.   A failure to disallow the Ambac Claim will result in Ambac potentially receiving

an unwarranted double recovery against the Debtor to the detriment of other stakeholders.

165.    Ambac will not be prejudiced by the disallowance of its claims because they are subsumed within the Master Proof of Claim.

166.    Pursuant to Bankruptcy Code section 502, Plaintiff is entitled to a judgment disallowing the Ambac Claim regarding the Bonds as duplicative of the Master Proof of Claim. In the alternative, if the Ambac Claim is not disallowed as duplicative, Plaintiff is entitled to an offset to be determined by the Court for any amount recovered by the Trustee against Plaintiff.

### COUNT II

JUDGMENT DISALLOWING AMBAC CLAIM BECAUSE AMBAC LACKS STANDING
TO ASSERT A CLAIM AGAINST THE COMMONWEALTH
(11 U.S.C. §§ 501, 502)

167.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

168.    The Ambac Claim must be disallowed because Ambac does not have any "right to payment" from the Commonwealth, or any interest in any right to payment, and therefore does not have or possess an allowable claim against the Commonwealth under the Bankruptcy Code or Commonwealth law.  Without an enforceable obligation against the Commonwealth as to the Retained Rum Tax Remittances, Ambac does not have standing to assert a claim against the Commonwealth.

169.    Ambac lacks derivative standing to assert any claim in PRIFA's name against the Commonwealth for its alleged retention of the Retained Rum Tax Remittances.

170.    Plaintiff is entitled to a judgment disallowing the Ambac Claim regarding the Bonds, as Ambac does not have standing to assert a claim against the Commonwealth because it lacks any interest in an enforceable obligation from the Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code section 101(5).

## COUNT III

### JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON ASSERTION THAT THE BONDS INSURED OR HELD BY AMBAC ARE SECURED BY A STATUTORY LIEN
(11 U.S.C. § 502)

171.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

172.    The Ambac Claim asserts the Bonds insured or held by Ambac are secured by a statutory lien against the Retained Rum Tax Remittances.

173.    The PRIFA Enabling Act does not create a statutory lien in favor of Ambac.

174.    Plaintiff is entitled to judgment disallowing the Ambac Claim regarding the Bonds because Ambac's interest in the Bonds is not secured by a statutory lien.

## COUNT IV

### JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON ASSERTION THAT THE BONDS INSURED OR HELD BY AMBAC ARE SECURED BY AN EQUITABLE LIEN
(11 U.S.C. § 502)

175.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

176.    The Ambac Claim asserts the Bonds insured or held by Ambac are secured by and/or Ambac holds an equitable lien against the Retained Rum Tax Remittances.

177.    Commonwealth law does not recognize the doctrine of equitable liens, and even if it did, the requirements for an equitable lien have not been met.

178.    The Uniform Commercial Code precludes the existence of an equitable lien where a security interest could have been created under Article 9.

179.    Plaintiff is entitled to judgment disallowing the Ambac Claim regarding the Bonds because Ambac's interest in the Bonds is not secured by and Ambac does not hold an equitable lien against the Retained Rum Tax Remittances.

## COUNT V

### JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON ASSERTION THAT AMBAC HAS AN OWNERSHIP INTEREST IN THE RETAINED RUM TAX REMITTANCES
(11 U.S.C. § 502)

180.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

181.    To the extent the Ambac Claim asserts Ambac holds an ownership interest in the Rum Tax Remittances and/or the Retained Rum Tax Remittances, including any form of beneficial interest or interest under a trust, the Ambac Claim should be disallowed.

182.    The PRIFA Enabling Act specifies the Commonwealth owns the Rum Tax Remittances, and any Rum Tax Remittances transferred to PRIFA subject to the Commonwealth's Retention Powers and deposited into the Sinking Fund are held for PRIFA's corporate purposes, not the benefit of the Bondholders.  *See* 3 L.P.R.A. § 1914 (Rum Tax Remittances "shall be covered into a Special Fund to be maintained by or on behalf of [PRIFA], designated as the [PRIFA Infrastructure Fund], and be used by [PRIFA] for its corporate purposes").

183.    The PRIFA Enabling Act further provides that only up to the first $117 million in Rum Tax Remittances "covered into" the Puerto Rico Treasury are conditionally allocated to PRIFA, subject to the Commonwealth's Retention Powers.

184.    The Commonwealth did not use any language to evidence an intent to exclude the Retained Rum Tax Remittances from the "available resources" of the Commonwealth, or convey any property interests to the Bondholders.  Even if the PRIFA Enabling Act intended to create any

40

property rights for the Bondholders in these funds (which it did not), the Retained Rum Tax Remittances are remitted by the United States to the Commonwealth, not to PRIFA or the Bondholders.

185.    The Legislative Assembly enacted a statute conditionally appropriating to PRIFA up to the first $117 million in Rum Tax Remittances "covered into" the Puerto Rico Treasury, subject to the Commonwealth's Retention Powers, but kept the power to amend or repeal the statute.  PROMESA preempted the statute.

186.     Pursuant to Bankruptcy Code section 502, Plaintiff is entitled to a judgment disallowing the Ambac Claim asserting Ambac has any ownership interest in the Retained Rum Tax Remittances.

## COUNT VI

### JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON ASSERTION OF ANY SECURITY INTEREST BEYOND MONIES DEPOSITED BY PRIFA IN THE SINKING FUND
### (11 U.S.C. § 502)

187.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

188.    The Ambac Claim asserts Ambac holds a security interest against the Retained Rum Tax Remittances.

189.    Any security interest against the Rum Tax Remittances necessarily is at most limited to moneys actually received by PRIFA and deposited by PRIFA to the credit of the Sinking Fund with the Trustee.

190.    Plaintiff is entitled to judgment disallowing the Ambac Claim regarding the Bonds because Ambac does not hold any security interest against the Retained Rum Tax Remittances.

## COUNT VII

JUDGMENT DISALLOWING AND AVOIDING AMBAC CLAIM ASSERTING A
PERFECTED SECURITY INTEREST PURSUANT TO BANKRUPTCY CODE SECTION
502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

191.   Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

192.   The Ambac Claim asserts the Bonds it holds and/or insures are secured by a
perfected security interest against the Retained Rum Tax Remittances held by the Commonwealth.

193.   Ambac does not have control over any deposit accounts, TSA, or in any other funds
held by the Commonwealth.

194.   No financing statements were filed against the Commonwealth regarding the
Bonds.

195.   Plaintiff is entitled to judgment disallowing Ambac's claim for a perfected security
interest against the Bonds as against the Commonwealth.

## COUNT VIII

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON ASSERTION THE
RETAINED RUM TAX REMITTANCES ARE SPECIAL REVENUES
(11 U.S.C. §§ 502, 902, 928; 26 U.S.C. § 7652)

196.   Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

197.   The Ambac Claim asserts the Retained Rum Tax Remittances are special revenues
under Bankruptcy Code section 902.

198.   The Retained Rum Tax Remittances are not special revenues of the Commonwealth
pursuant to Bankruptcy Code section 902 and are outside the scope of Bankruptcy Code section
928(a).

199.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the Retained Rum Tax Remittances are not special revenues of the Commonwealth.

## COUNT IX

JUDGMENT DISALLOWING AMBAC CLAIM ASSERTING SUBROGATION RIGHTS THAT EXCEED THE AMOUNTS PAID BY AMBAC TO BONDHOLDERS OR OTHERWISE SUBORDINATING THE AMBAC CLAIM TO THE CLAIMS OF BONDHOLDERS PURSUANT TO BANKRUPTCY CODE SECTION 509(c) (28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2104, 2141, 2142, 2161; 11 U.S.C. §§ 502, 509)

200.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

201.    The Ambac Claim asserts claims based on subrogation, reimbursement, or contribution rights arising from payments to Bondholders holding Bonds allegedly insured by Ambac.

202.    Plaintiff is entitled to judgment disallowing the Ambac Claim for subrogation, reimbursement, and contribution rights exceeding the amount Ambac has paid to Bondholders and otherwise subordinating such portions of the Ambac Claim to the unpaid claims of insured Bondholders.

## COUNT X

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF UNLAWFUL RETENTION OF THE RETAINED RUM TAX REMITTANCES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE COMMONWEALTH CONSTITUTION (11 U.S.C. § 502)

203.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

204.    The Ambac Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the Retained Rum Tax Remittances pursuant to Commonwealth law.

43

205.   The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the PRIFA Enabling Act, which provides the Rum Tax Remittances, including up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury subject to the Commonwealth's Retention Powers, are "available resources" of the Commonwealth.

206.   The obligation of the Commonwealth, if any, to appropriate up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury subject to the Commonwealth's Retention Powers, to PRIFA, as well as any other obligations related to the Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

207.   Plaintiff is entitled to judgment disallowing the Ambac Claim regarding the Bonds because the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution.

## <u>COUNT XI</u>

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF
UNLAWFUL RETENTION OF THE RETAINED RUM TAX REMITTANCES BECAUSE OF
PREEMPTION BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

208.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

209.   The Ambac Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the Retained Rum Tax Remittances pursuant to Commonwealth law.

210.   The Commonwealth's retention of the Retained Rum Tax Remittances following the passage of PROMESA does not give rise to a claim against the Commonwealth because

PROMESA provides for the Oversight Board to certify all budget appropriations and fiscal plans, and the Puerto Rico statute Ambac relies on is an appropriation not certified by the Oversight Board.

211.   Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's retention of the Retained Rum Tax Remittances was authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

## COUNT XII

### JUDGMENT DISALLOWING AMBAC CLAIM FOR BREACH OF THE PRIFA NON-IMPAIRMENT PROVISION
### (11 U.S.C. § 502)

212.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

213.   The Ambac Claim asserts the Commonwealth's retention of the Retained Rum Tax Remittances constitutes a breach of the PRIFA Non-Impairment Provision.

214.   The Commonwealth has not breached the PRIFA Non-Impairment Provision because it has not limited or altered any rights conferred to PRIFA.  The Commonwealth never repealed or amended the PRIFA Enabling Act, or passed any legislation that conflicts with the powers granted to PRIFA.

215.   The Commonwealth's retention of the Retained Rum Tax Remittances does not limit or alter PRIFA's rights to up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury as such rights always were expressly conditional and subject to Article VI, Section 8 of the Commonwealth Constitution.

216.   The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to the fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption

of the PRIFA Enabling Act's conditional appropriation of certain Rum Tax Remittances and does

not constitute an action of the Commonwealth that limits or alters PRIFA's rights.

217.    Plaintiff is entitled to judgment disallowing the Ambac Claim because there has

been no breach of the PRIFA Non-Impairment Provision.

## **COUNT XIII**

### JUDGMENT DISALLOWING AMBAC CLAIM FOR BREACH OF CONTRACT
PREDICATED ON THE RETENTION OF THE RETAINED RUM TAX REMITTANCES
(11 U.S.C. § 502)

218.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

219.    The Ambac Claim asserts a breach of contract claim against the Commonwealth

based on the Commonwealth's retention of the Retained Rum Tax Remittances.

220.    The Commonwealth is not liable for any breach of contract to Ambac.   The

Commonwealth is not a party to any contract with Ambac (including the PRIFA Bond Materials).

The Commonwealth does not owe any contractual obligations to, or enforceable by, Ambac

regarding payment on the Bonds.

221.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the

Commonwealth's retention of the Retained Rum Tax Remittances did not constitute a breach of

contract.

## **COUNT XIV**

### JUDGMENT DISALLOWING AMBAC CLAIM FOR COMMON LAW TORTS
PREDICATED ON THE RETAINED RUM TAX REMITTANCES
(11 U.S.C. § 502)

222.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

223.    The Ambac Claim asserts various tort-based claims—including common law fraud, conversion, misrepresentation, unjust enrichment, fraudulent conveyance, tortious interference with contract, and fraudulent inducement—which all purportedly arise out of the Commonwealth's retention of the Retained Rum Tax Remittances.

224.    The Commonwealth's retention of the Retained Rum Tax Remittances was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to Ambac for any tort claims under any theory.

225.    The Ambac Claim's conversion claim fails because (i) any security interest held by Ambac necessarily is at most limited to moneys actually received by PRIFA and deposited by PRIFA to the credit of the Sinking Fund with the Trustee, (ii) Ambac does not have any security interest or  property interest in the Retained Rum Tax Remittances, (iii) the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution, and (iv) the Commonwealth's retention of the Retained Rum Tax Remittances was authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

226.    The Ambac Claim's tortious interference with contract claim fails because (*i*) the Commonwealth acted properly and lawfully in authorizing the retention of the Retained Rum Tax Remittances, (*ii*) there was no breach of contract with respect to any alleged failure to make payment on the Bonds because the Commonwealth had no obligation on the Bonds and the monies at issue were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, (iii) the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution, and (iv) the Commonwealth's retention of the Retained Rum Tax Remittances was

47

authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

227.    Ambac's unjust enrichment claims fail because (*i*) Commonwealth law does not recognize a cause of action for unjust enrichment against the Commonwealth; and (*ii*) the documents governing the Bonds specify the rights and obligations of the parties and therefore there could be no separate claim for unjust enrichment apart from any claim for breach of contract, which does not exist in this case.

228.    The Ambac Claim's claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation fail because (*i*) the Commonwealth has not made any material misstatements of fact or engaged in any fraudulent conduct, (*ii*) statements made in the PRIFA Enabling Act are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim, and (*iii*) statements made in the PRIFA Bond Materials were truthful when made.  The Ambac Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

229.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's retention of the Retained Rum Tax Remittances did not constitute tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, or misrepresentation.

## COUNT XV

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON THE RETAINED RUM
TAX REMITTANCES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE
II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

230.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

231.    The Ambac Claim asserts a claim against the Commonwealth based on the
Commonwealth's retention of the Retained Rum Tax Remittances pursuant to Commonwealth
law.

232.    The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to
the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by
operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the
Commonwealth Constitution.

233.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the
Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was
authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the
Commonwealth Constitution.

## COUNT XVI

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF
VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

234.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

235.    Ambac alleges the Commonwealth's retention of the Retained Rum Tax Remittances violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

236.    The Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the Commonwealth was authorized to retain them under Commonwealth and federal law, and no contractual right of Ambac's was impaired.

237.    Plaintiff is entitled to judgment disallowing the Ambac Claim because there has been no impairment of Ambac's contractual rights.

238.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable claim.

## <u>COUNT XVII</u>

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF
VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE NO COMMONWEALTH LEGISLATION CREATED AN
IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

239.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

240.    Ambac alleges the Commonwealth's retention of the Retained Rum Tax Remittances violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

241.    The Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because no Commonwealth legislation was passed that impaired Ambac's contract rights, if any.

242.     Plaintiff is entitled to judgment disallowing the Ambac Claim because there is no Commonwealth legislation that impaired Ambac's contract rights, if any.

243.     In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable claim.

## COUNT XVIII

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE RETAINED RUM TAX REMITTANCES WAS REASONABLE AND NECESSARY BECAUSE IT WAS IN ACCORDANCE WITH PROMESA
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

244.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

245.     Ambac alleges the Commonwealth's retention of the Retained Rum Tax Remittances violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

246.     The Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the Commonwealth's retention of the Retained Rum Tax Remittances was in accordance with PROMESA and therefore reasonable and necessary.

247.     In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable claim.

51

## COUNT XVIX

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF
VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE AMBAC DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

248.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

249.     Ambac asserts the Commonwealth's lawful retention of the Retained Rum Tax Remittances constitutes a taking.

250.     The Commonwealth's retention of the Retained Rum Tax Remittances does not constitute a taking because Ambac has no property interest in the Retained Rum Tax Remittances.

251.     Plaintiff is entitled to judgment disallowing the Ambac Claim because Ambac has no property interest in the Retained Rum Tax Remittances and therefore cannot assert a takings claim.

252.     In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Takings Clause is—at most—a prepetition, unsecured, dischargeable claim.

## COUNT XX

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON VIOLATIONS OF THE
TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE
AMBAC HAD A REASONABLE EXPECTATION THE COMMONWEALTH WOULD
RETAIN THE RETAINED RUM TAX REMITTANCES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

253.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

254.     Ambac asserts the Commonwealth's lawful retention of the Retained Rum Tax Remittances constitutes a taking.

255.    The Commonwealth's retention of the Retained Rum Tax Remittances does not constitute an impermissible taking because such retention did not interfere with Ambac's reasonable expectations.

256.    Ambac knew or should have known, pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the PRIFA Enabling Act, and the PRIFA Bond Materials, that the Retained Rum Tax Remittances were subject to the Commonwealth's retention.

257.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's retention of the Retained Rum Tax Remittances did not interfere with Ambac's reasonable expectations regarding the Retained Rum Tax Remittances.

258.    In the alternative, Plaintiff is entitled to a judgment declaring any allowable claim held by Ambac based on the Takings Clause is a dischargeable claim.

## COUNT XXI

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF
VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

259.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

260.    Ambac alleges the Commonwealth's retention of Retained Rum Tax Remittances constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violation.

261.    The Ambac Claim does not assert any additional basis on which the Commonwealth's retention of Retained Rum Tax Remittances constitutes a violation of the Due

Process Clause of the Commonwealth and U.S. Constitutions separate from its Takings Clause claim.

262.    Because the Ambac Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, Ambac's Due Process claim should be disallowed because it has no property rights or security interests in the Retained Rum Tax Remittances retained by the Commonwealth.

263.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Due Process Clause of the Commonwealth or U.S. Constitutions.

## COUNT XXII

### JUDGMENT DISALLOWING AMBAC CLAIM BASED ON PROMESA SECTION 407
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

264.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

265.    The Ambac Claim asserts claims under PROMESA section 407(a).

266.    Ambac does not have a claim under PROMESA section 407(a) because the Retained Rum Tax Remittances were not property of any territorial instrumentality transferred in violation of applicable law, nor does Ambac have any security interest against the Retained Rum Tax Remittances.

267.    Ambac also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only PRIFA has a claim for the transferred property against the transferee.

268.    Plaintiff is entitled to judgment disallowing the Ambac Claim based on PROMESA section 407(a).

## COUNT XXIII

JUDGMENT DISALLOWING AMBAC CLAIM FOR POSTPETITION INTEREST AND
OTHER POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE SECTION
502(b)(2)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

269.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

270.    The Ambac Claim asserts claims for postpetition interest and other postpetition

costs.

271.    Pursuant to Bankruptcy Code section 502(b)(2), upon objection to a claim, the court

is required to disallow such claim to the extent it asserts claims "for unmatured interest." 11 U.S.C.

§ 502(b)(2).

272.    Plaintiff is entitled to judgment disallowing the Ambac Claim for postpetition

interest.

273.    Plaintiff's claim for costs or expenses should be disallowed as a secured claim to

the extent no valid contract supports it and/or there is insufficient collateral value beyond principal

and interest to pay it, and should be disallowed as a prepetition, unsecured claim to the extent no

valid contract supports it.

## COUNT XXIV

JUDGMENT DISALLOWING AMBAC'S SECURED CLAIM
(11 U.S.C. § 502)

274.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

275.    Ambac has no valid secured claim against the Commonwealth as it was neither

granted any security interest nor holds any statutory or other liens against any property in which

the Commonwealth has an interest, nor has Ambac perfected any alleged security interest, if any, as against the Commonwealth.

276.   Plaintiff is entitled to judgment disallowing Ambac's secured claim.

## COUNT XXV

### JUDGMENT DISALLOWING AMBAC'S PRIORITY CLAIM
### (48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

277.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

278.   The Ambac Claim asserts amounts due to Ambac are entitled to priority over other unsecured claims.

279.   Ambac does not have a priority claim under Commonwealth law.  Moreover, even if Ambac had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

280.   Ambac does not have an administrative expense claim pursuant to PROMESA section 507.  None of Ambac's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

281.   Plaintiff is entitled to judgment disallowing all priorities asserted for the Ambac Claim regarding the Bonds.

## COUNT XXVI

### JUDGMENT DISALLOWING AMBAC CLAIM ASSERTING A SECURITY INTEREST ON REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE SECTION 552
### (28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

282.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-9 and 14-160, inclusive, as if fully set forth herein.

283.    The Ambac Claim asserts Retained Rum Tax Remittances collected postpetition are subject to Ambac's purported security interest.

284.    Ambac does not have a valid or perfected security interest against the Retained Rum Tax Remittances.  Even if it did, such security interest would not attach to moneys collected postpetition.

285.    Plaintiff is entitled to judgment disallowing the Ambac Claim regarding its purported security interest against any and all postpetition Retained Rum Tax Remittances retained by the Commonwealth.

## OBJECTIONS TO AGC CLAIM

### COUNT XXVII

JUDGMENT DISALLOWING AGC CLAIM AS DUPLICATIVE OF THE MASTER PROOF OF CLAIM
(11 U.S.C. § 502)

286.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, inclusive, as if fully set forth herein.

287.    The AGC Claim seeks principal, prepetition interest, postpetition interest, and fees against the Commonwealth based on the same Bonds that are the subject of the Master Proof of Claim asserted by the Trustee because they both make claims for the same exact funds owned under the Bonds.

288.    In support of the AGC Claim, AGC alleges (*i*) a statutory lien against the Retained Rum Tax Remittances, (*ii*) perfected security interests in the Retained Rum Tax Remittances, (*iii*) the Retained Rum Tax Remittances are special revenues, (*iv*) the Commonwealth not appropriating the HTA Allocable Revenues to HTA was unlawful and a breach of contract and/or gave rise to tort claims, (*v*) violations of the U.S. and Commonwealth Constitutions in failing to appropriate

the Retained Rum Tax Remittances to PRIFA, (*vi*) violations of PROMESA section 407, and (*vii*) an entitlement to administrative expense priority. All of these allegations are duplicative of claims made by the Trustee in the Master Proof of Claim.

289. A failure to disallow the AGC Claim will result in AGC potentially receiving an unwarranted double recovery against the Debtor to the detriment of other stakeholders.

290. AGC will not be prejudiced by the disallowance of its claims because they are subsumed within the Master Proof of Claim.

291. Pursuant to Bankruptcy Code section 502, Plaintiff is entitled to a judgment disallowing the AGC Claim as duplicative of the Master Proof of Claim. In the alternative, if the AGC Claim is not disallowed as duplicative, Plaintiff is entitled to an offset to be determined by the Court for any amount recovered by the Trustee against Plaintiff.

**COUNT XXVIII**

JUDGMENT DISALLOWING AGC CLAIM BECAUSE AGC LACKS STANDING TO
ASSERT A CLAIM AGAINST THE COMMONWEALTH
(11 U.S.C. §§ 501, 502)

292. Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

293. The AGC Claim must be disallowed because AGC does not have any "right to payment" from the Commonwealth, or any interest in any right to payment, and therefore does not have or possess an allowable claim against the Commonwealth under the Bankruptcy Code or Commonwealth law. Without an enforceable obligation against the Commonwealth as to the Retained Rum Tax Remittances, AGC does not have standing to assert a claim against the Commonwealth.

294. AGC lacks derivative standing to assert any claim in PRIFA's name against the Commonwealth for its alleged retention of the Retained Rum Tax Remittances.

58

295.     Plaintiff is entitled to a judgment disallowing the AGC Claim regarding the Bonds, as AGC does not have standing to assert a claim against the Commonwealth because it lacks any interest in an enforceable obligation from the Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code section 101(5).

## COUNT XXIX

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON ASSERTION THAT THE
BONDS INSURED OR HELD BY AGC ARE SECURED BY A STATUTORY LIEN
(11 U.S.C. § 502)

296.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

297.     The AGC Claim asserts the Bonds insured or held by AGC are secured by a statutory lien against the Retained Rum Tax Remittances.

298.     The PRIFA Enabling Act does not create a statutory lien in favor of AGC.

299.     Plaintiff is entitled to judgment disallowing the AGC Claim regarding the Bonds because AGC's interest in the Bonds is not secured by a statutory lien.

## COUNT XXX

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON ASSERTION THAT THE
BONDS INSURED OR HELD BY AGC ARE SECURED BY AN EQUITABLE LIEN
(11 U.S.C. § 502)

300.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

301.     The AGC Claim asserts the Bonds insured or held by AGC are secured by and/or AGC holds an equitable lien against the Retained Rum Tax Remittances.

302.     Commonwealth law does not recognize the doctrine of equitable liens, and even if it did, the requirements for an equitable lien have not been met.

303.     Plaintiff is entitled to judgment disallowing the AGC Claim regarding the Bonds because AGC's interest in the Bonds is not secured by and AGC does not hold an equitable lien against the Retained Rum Tax Remittances.

## COUNT XXXI

### JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON ASSERTION THAT AGC HAS AN OWNERSHIP INTEREST IN THE RETAINED RUM TAX REMITTANCES
(11 U.S.C. § 502)

304.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

305.     To the extent the AGC Claim asserts AGC holds an ownership interest in the Rum Tax Remittances and/or the Retained Rum Tax Remittances, including any form of beneficial interest or interest under a trust, the AGC Claim should be disallowed.

306.     The PRIFA Enabling Act specifies the Commonwealth owns the Rum Tax Remittances, and any Rum Tax Remittances transferred to PRIFA subject to the Commonwealth's Retention Powers and deposited into the Sinking Fund are held for PRIFA's corporate purposes, not the benefit of the Bondholders.  *See* 3 L.P.R.A. § 1914 (Rum Tax Remittances "shall be covered into a Special Fund to be maintained by or on behalf of [PRIFA], designated as the [PRIFA Infrastructure Fund], and be used by [PRIFA] for its corporate purposes").

307.     The PRIFA Enabling Act further provides that only up to the first $117 million in Rum Tax Remittances "covered into" the Puerto Rico Treasury are conditionally allocated to PRIFA, subject to the Commonwealth's Retention Powers.

308.     The Commonwealth did not use any language to evidence an intent to exclude the Retained Rum Tax Remittances from the "available resources" of the Commonwealth, or convey any property interests to the Bondholders.  Even if the PRIFA Enabling Act intended to create any property rights for the Bondholders in these funds (which it did not), the Retained Rum Tax

Remittances are remitted by the United States to the Commonwealth, not to PRIFA or the Bondholders.

309.    The Legislative Assembly enacted a statute conditionally appropriating to PRIFA up to the first $117 million in Rum Tax Remittances "covered into" the Puerto Rico Treasury, subject to the Commonwealth's Retention Powers, but kept the power to amend or repeal the statute.  PROMESA preempted the statute.

310.    Pursuant to Bankruptcy Code section 502, Plaintiff is entitled to a judgment disallowing the AGC Claim asserting AGC has any ownership interest in the Retained Rum Tax Remittances.

## COUNT XXXII

### JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON ASSERTION OF ANY SECURITY INTEREST BEYOND MONIES DEPOSITED BY PRIFA IN THE SINKING FUND
### (11 U.S.C. § 502)

311.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

312.    The AGC Claim asserts AGC holds a security interest against the Retained Rum Tax Remittances.

313.    Any security interest against the Rum Tax Remittances necessarily is at most limited to moneys actually received by PRIFA and deposited by PRIFA to the credit of the Sinking Fund with the Trustee.

314.    Plaintiff is entitled to judgment disallowing the AGC Claim regarding the Bonds because AGC does not hold any security interest against the Retained Rum Tax Remittances.

## COUNT XXXIII

JUDGMENT DISALLOWING AND AVOIDING AGC CLAIM ASSERTING A PERFECTED
SECURITY INTEREST PURSUANT TO BANKRUPTCY CODE SECTION 502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

315.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

316.    The AGC Claim asserts the Bonds it holds and/or insures are secured by a perfected

security interest against the Retained Rum Tax Remittances held by the Commonwealth.

317.    AGC does not have control over any deposit accounts, TSA, or in any other funds

held by the Commonwealth.

318.    No financing statements were filed against the Commonwealth regarding the

Bonds.

319.    Plaintiff is entitled to judgment disallowing AGC's claim for a perfected security

interest against the Bonds as against the Commonwealth.

## COUNT XXXIV

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON ASSERTION THE
RETAINED RUM TAX REMITTANCES ARE SPECIAL REVENUES
(11 U.S.C. §§ 502, 902, 928; 26 U.S.C. § 7652)

320.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

321.    The AGC Claim asserts the Retained Rum Tax Remittances are special revenues

under Bankruptcy Code section 902.

322.    The Retained Rum Tax Remittances are not special revenues of the Commonwealth

pursuant to Bankruptcy Code section 902 and are outside the scope of Bankruptcy Code section

928(a).

323.    Plaintiff is entitled to judgment disallowing the AGC Claim because the Retained Rum Tax Remittances are not special revenues of the Commonwealth.

## COUNT XXXV

**JUDGMENT DISALLOWING AGC CLAIM ASSERTING SUBROGATION RIGHTS THAT EXCEED THE AMOUNTS PAID BY AGC TO BONDHOLDERS OR OTHERWISE SUBORDINATING THE AGC CLAIM TO THE CLAIMS OF BONDHOLDERS PURSUANT TO BANKRUPTCY CODE SECTION 509(c)**
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2104, 2141, 2142, 2161; 11 U.S.C. §§ 502, 509)

324.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

325.    The AGC Claim asserts claims based on subrogation, reimbursement, or contribution rights arising from payments to Bondholders holding Bonds allegedly insured by AGC.

326.    Plaintiff is entitled to judgment disallowing the AGC Claim for subrogation, reimbursement, and contribution rights exceeding the amount AGC has paid to Bondholders and otherwise subordinating such portions of the AGC Claim to the unpaid claims of insured Bondholders.

## COUNT XXXVI

**JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF UNLAWFUL RETENTION OF THE RETAINED RUM TAX REMITTANCES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE COMMONWEALTH CONSTITUTION**
(11 U.S.C. § 502)

327.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

328.    The AGC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the Retained Rum Tax Remittances pursuant to Commonwealth law.

329.    The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the PRIFA Enabling Act, which provides the Rum Tax Remittances, including up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury subject to the Commonwealth's Retention Powers, are "available resources" of the Commonwealth.

330.    The obligation of the Commonwealth, if any, to appropriate up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury subject to the Commonwealth's Retention Powers, to PRIFA, as well as any other obligations related to the Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

331.    Plaintiff is entitled to judgment disallowing the AGC Claim regarding the Bonds because the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution.

## COUNT XXXVII

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF UNLAWFUL
RETENTION OF THE RETAINED RUM TAX REMITTANCES BECAUSE OF
PREEMPTION BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

332.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

333.    The AGC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the Retained Rum Tax Remittances pursuant to Commonwealth law.

334.    The Commonwealth's retention of the Retained Rum Tax Remittances following the passage of PROMESA does not give rise to a claim against the Commonwealth because

PROMESA provides for the Oversight Board to certify all budget appropriations and fiscal plans, and the Puerto Rico statute AGC relies on is an appropriation not certified by the Oversight Board.

335.    Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the Retained Rum Tax Remittances was authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

## COUNT XXXVIII

JUDGMENT DISALLOWING AGC CLAIM FOR BREACH OF THE PRIFA NON-IMPAIRMENT PROVISION
(11 U.S.C. § 502)

336.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

337.    The AGC Claim asserts the Commonwealth's retention of the Retained Rum Tax Remittances constitutes a breach of the PRIFA Non-Impairment Provision.

338.    The Commonwealth has not breached the PRIFA Non-Impairment Provision because it has not limited or altered any rights conferred to PRIFA.  The Commonwealth never repealed or amended the PRIFA Enabling Act, or passed any legislation that conflicts with the powers granted to PRIFA.

339.    The Commonwealth's retention of the Retained Rum Tax Remittances does not limit or alter PRIFA's rights to up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury as such rights always were expressly conditional and subject to Article VI, Section 8 of the Commonwealth Constitution.

340.    The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to the fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption

of the PRIFA Enabling Act's conditional appropriation of certain Rum Tax Remittances and does

not constitute an action of the Commonwealth that limits or alters PRIFA's rights.

341.    Plaintiff is entitled to judgment disallowing the AGC Claim because there has been

no breach of the PRIFA Non-Impairment Provision.

### COUNT XXXIX

JUDGMENT DISALLOWING AGC CLAIM FOR BREACH OF CONTRACT PREDICATED
ON THE RETENTION OF THE RETAINED RUM TAX REMITTANCES
(11 U.S.C. § 502)

342.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

343.    The AGC Claim asserts a breach of contract claim against the Commonwealth

based on the Commonwealth's retention of the Retained Rum Tax Remittances.

344.    The Commonwealth is not liable for any breach of contract to AGC.    The

Commonwealth is not a party to any contract with AGC (including the PRIFA Bond Materials).

The Commonwealth does not owe any contractual obligations to, or enforceable by, AGC

regarding payment on the Bonds.

345.    Plaintiff is entitled to judgment disallowing the AGC Claim because the

Commonwealth's retention of the Retained Rum Tax Remittances did not constitute a breach of

contract.

### COUNT XL

JUDGMENT DISALLOWING AGC CLAIM FOR COMMON LAW TORTS PREDICATED
ON THE RETAINED RUM TAX REMITTANCES
(11 U.S.C. § 502)

346.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

347.    The AGC Claim asserts tort-based claims, which purportedly arise out of the Commonwealth's retention of the Retained Rum Tax Remittances.

348.    The Commonwealth's retention of the Retained Rum Tax Remittances was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to AGC for any tort claims under any theory.

349.    A conversion claim asserted by AGC fails because (i) any security interest held by AGC necessarily is at most limited to moneys actually received by PRIFA and deposited by PRIFA to the credit of the Sinking Fund with the Trustee, (ii) AGC does not have any security interest or property interest in the Retained Rum Tax Remittances, (iii) the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution, and (iv) the Commonwealth's retention of the Retained Rum Tax Remittances was authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

350.    A tortious interference with contract claim asserted by AGC fails because (*i*) the Commonwealth acted properly and lawfully in authorizing the retention of the Retained Rum Tax Remittances, (*ii*) there was no breach of contract with respect to any alleged failure to make payment on the Bonds because the Commonwealth had no obligation on the Bonds and the monies at issue were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, (iii) the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution, and (iv) the Commonwealth's retention of the Retained Rum Tax Remittances was authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

351.    An unjust enrichment claim asserted by AGC fails because (*i*) Commonwealth law does not recognize a cause of action for unjust enrichment against the Commonwealth; and (*ii*) the documents governing the Bonds specify the rights and obligations of the parties and therefore there could be no separate claim for unjust enrichment apart from any claim for breach of contract, which does not exist in this case.

352.    Claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation asserted by AGC fail because (*i*) the Commonwealth has not made any material misstatements of fact or engaged in any fraudulent conduct, (*ii*) statements made in the PRIFA Enabling Act are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim, and (*iii*) statements made in the PRIFA Bond Materials were truthful when made.  The AGC Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

353.    Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the Retained Rum Tax Remittances did not constitute a tort.

## COUNT XLI

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON THE RETAINED RUM TAX REMITTANCES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

354.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

355.    The AGC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the Retained Rum Tax Remittances pursuant to Commonwealth law.

356.    The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

357.    Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

## COUNT XLII

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

358.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

359.    AGC alleges the Commonwealth's retention of the Retained Rum Tax Remittances violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

360.    The Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the Commonwealth was authorized to retain them under Commonwealth and federal law, and no contractual right of AGC's was impaired.

69

361.     Plaintiff is entitled to judgment disallowing the AGC Claim because there has been

no impairment of AGC's contractual rights. In the alternative, Plaintiff is entitled to a judgment

declaring any valid claim held by AGC based on the Contracts Clause is—at most—a prepetition,

unsecured, dischargeable claim.

## **COUNT XLIII**

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE NO COMMONWEALTH LEGISLATION CREATED AN
IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

362.     Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

363.     AGC alleges the Commonwealth's retention of the Retained Rum Tax Remittances

violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim

against the Commonwealth as a result of the alleged violations.

364.     The Commonwealth's retention of the Retained Rum Tax Remittances did not

violate the Contracts Clause of the Commonwealth or U.S. Constitutions because no

Commonwealth legislation was passed that impaired AGC's contract rights, if any.

365.     Plaintiff is entitled to judgment disallowing the AGC Claim because there is no

Commonwealth legislation that impaired AGC's contract rights, if any.  In the alternative, Plaintiff

is entitled to a judgment declaring any valid claim held by AGC based on the Contracts Clause

is—at most—a prepetition, unsecured, dischargeable claim.

## COUNT XLIV

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE
RETAINED RUM TAX REMITTANCES WAS REASONABLE AND NECESSARY
BECAUSE IT WAS IN ACCORDANCE WITH PROMESA
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

366.     Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

367.     AGC alleges the Commonwealth's retention of the Retained Rum Tax Remittances
violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim
against the Commonwealth as a result of the alleged violations.

368.     The Commonwealth's retention of the Retained Rum Tax Remittances did not
violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the
Commonwealth's retention of the Retained Rum Tax Remittances was in accordance with
PROMESA and therefore reasonable and necessary.

369.     In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held
by AGC based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable
claim.

## COUNT XLV

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS
BECAUSE AGC DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

370.     Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

371.     AGC asserts the Commonwealth's lawful retention of the Retained Rum Tax
Remittances constitutes a taking.

372.     The Commonwealth's retention of the Retained Rum Tax Remittances does not constitute a taking because AGC has no property interest in the Retained Rum Tax Remittances.

373.     Plaintiff is entitled to judgment disallowing the AGC Claim because AGC has no property interest in the Retained Rum Tax Remittances and therefore cannot assert a takings claim.

374.     In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGC based on the Takings Clause is—at most—a prepetition, unsecured, dischargeable claim.

## **COUNT XLVI**

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON VIOLATIONS OF THE
TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE
AGC HAD A REASONABLE EXPECTATION THE COMMONWEALTH WOULD RETAIN
THE RETAINED RUM TAX REMITTANCES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

375.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

376.     AGC asserts the Commonwealth's lawful retention of the Retained Rum Tax Remittances constitutes a taking.

377.     The Commonwealth's retention of the Retained Rum Tax Remittances does not constitute an impermissible taking because such retention did not interfere with AGC's reasonable expectations.

378.     AGC knew or should have known, pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the PRIFA Enabling Act, and the PRIFA Bond Materials, that the Retained Rum Tax Remittances were subject to the Commonwealth's retention.

379.     Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the Retained Rum Tax Remittances did not interfere with AGC's reasonable expectations regarding the Retained Rum Tax Remittances.

380.    In the alternative, Plaintiff is entitled to a judgment declaring any allowable claim held by AGC based on the Takings Clause is a dischargeable claim.

## COUNT XLVII

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

381.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

382.    AGC alleges the Commonwealth's retention of Retained Rum Tax Remittances constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violation.

383.    The AGC Claim does not assert any additional basis on which the Commonwealth's retention of Retained Rum Tax Remittances constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions separate from its Takings Clause claim.

384.    Because the AGC Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, AGC's Due Process claim should be disallowed because it has no property rights or security interests in the Retained Rum Tax Remittances retained by the Commonwealth.

385.    Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Due Process Clause of the Commonwealth or U.S. Constitutions.

## COUNT XLVIII

**JUDGMENT DISALLOWING AGC CLAIM BASED ON PROMESA SECTION 407**
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

386.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

387.    The AGC Claim asserts claims under PROMESA section 407(a).

388.    AGC does not have a claim under PROMESA section 407(a) because the Retained Rum Tax Remittances were not property of any territorial instrumentality transferred in violation of applicable law, nor does AGC have any security interest against the Retained Rum Tax Remittances.

389.    AGC also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only PRIFA has a claim for the transferred property against the transferee.

390.    Plaintiff is entitled to judgment disallowing the AGC Claim based on PROMESA section 407(a).

## COUNT XLIX

**JUDGMENT DISALLOWING AGC CLAIM FOR POSTPETITION INTEREST AND OTHER
POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE SECTION 502(b)(2)**
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

391.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

392.    The AGC Claim asserts claims for postpetition interest and other postpetition costs.

393.    Pursuant to Bankruptcy Code section 502(b)(2), upon objection to a claim, the court is required to disallow such claim to the extent it asserts claims "for unmatured interest." 11 U.S.C. § 502(b)(2).

74

394.    Plaintiff is entitled to judgment disallowing the AGC Claim for postpetition interest.

395.    Plaintiff's claim for costs or expenses should be disallowed as a secured claim to the extent no valid contract supports it and/or there is insufficient collateral value beyond principal and interest to pay it, and should be disallowed as a prepetition, unsecured claim to the extent no valid contract supports it.

## COUNT L

### JUDGMENT DISALLOWING AGC'S SECURED CLAIM
### (11 U.S.C. § 502)

396.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

397.    AGC has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory or other liens against any property in which the Commonwealth has an interest, nor has AGC perfected any alleged security interest, if any, as against the Commonwealth.

398.    Plaintiff is entitled to judgment disallowing AGC's secured claim.

## COUNT LI

### JUDGMENT DISALLOWING AGC'S PRIORITY CLAIM
### (48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

399.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

400.    The AGC Claim asserts amounts due to AGC are entitled to priority over other unsecured claims.

401.    AGC does not have a priority claim under Commonwealth law.  Moreover, even if AGC had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

402.    AGC does not have an administrative expense claim pursuant to PROMESA section 507.  None of AGC's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

403.    Plaintiff is entitled to judgment disallowing all priorities asserted for the AGC Claim regarding the Bonds.

### COUNT LII

JUDGMENT DISALLOWING AGC CLAIM ASSERTING A SECURITY INTEREST ON REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

404.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7, 10-11, and 14-160, as if fully set forth herein.

405.    The AGC Claim asserts Retained Rum Tax Remittances collected postpetition are subject to AGC's purported security interest.

406.    AGC does not have a valid or perfected security interest against the Retained Rum Tax Remittances.  Even if it did, such security interest would not attach to moneys collected postpetition.

407.    Plaintiff is entitled to judgment disallowing the AGC Claim regarding its purported security interest against any and all postpetition Retained Rum Tax Remittances retained by the Commonwealth.

## <u>OBJECTIONS TO FGIC CLAIM</u>

### <u>COUNT LIII</u>

JUDGMENT DISALLOWING FGIC CLAIM AS DUPLICATIVE OF THE MASTER PROOF
OF CLAIM
(11 U.S.C. § 502)

408.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

409.     The FGIC Claim seeks principal, prepetition interest, postpetition interest, and fees against the Commonwealth based on the same Bonds that are the subject of the Master Proof of Claim asserted by the Trustee because they both make claims for the same exact funds owned under the Bonds.

410.     In support of the FGIC Claim, FGIC alleges (*i*) a statutory lien against the Retained Rum Tax Remittances, (*ii*) perfected security interests in the Retained Rum Tax Remittances, (*iii*) the Retained Rum Tax Remittances are special revenues, (*iv*) the Commonwealth not appropriating the HTA Allocable Revenues to HTA was unlawful and a breach of contract and/or gave rise to tort claims, (*v*) violations of the U.S. and Commonwealth Constitutions in failing to appropriate the Retained Rum Tax Remittances to PRIFA, (*vi*) violations of PROMESA section 407, and (*vii*) an entitlement to administrative expense priority.  All of these allegations are duplicative of claims made by the Trustee in the Master Proof of Claim.

411.     A failure to disallow the FGIC Claim will result in FGIC potentially receiving an unwarranted double recovery against the Debtor to the detriment of other stakeholders.

412.     FGIC will not be prejudiced by the disallowance of its claims because they are subsumed within the Master Proof of Claim.

413.    Pursuant to Bankruptcy Code section 502, Plaintiff is entitled to a judgment disallowing the FGIC Claim as duplicative of the Master Proof of Claim.  In the alternative, if the FGIC Claim is not disallowed as duplicative, Plaintiff is entitled to an offset to be determined by the Court for any amount recovered by the Trustee against Plaintiff.

## COUNT LIV

### JUDGMENT DISALLOWING FGIC CLAIM BECAUSE FGIC LACKS STANDING TO ASSERT A CLAIM AGAINST THE COMMONWEALTH
(11 U.S.C. §§ 501, 502)

414.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

415.    The FGIC Claim must be disallowed because FGIC does not have any "right to payment" from the Commonwealth, or any interest in any right to payment, and therefore does not have or possess an allowable claim against the Commonwealth under the Bankruptcy Code or Commonwealth law.  Without an enforceable obligation against the Commonwealth as to the Retained Rum Tax Remittances, FGIC does not have standing to assert a claim against the Commonwealth.

416.    FGIC lacks derivative standing to assert any claims in PRIFA's name against the Commonwealth for its alleged retention of the Retained Rum Tax Remittances.

417.    Plaintiff is entitled to a judgment disallowing the FGIC Claim regarding the Bonds, as FGIC does not have standing to assert a claim against the Commonwealth because it lacks any interest in an enforceable obligation from the Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code section 101(5).

## COUNT LV

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON ASSERTION THAT THE
BONDS INSURED OR HELD BY FGIC ARE SECURED BY A STATUTORY LIEN
(11 U.S.C. § 502)

418.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

419.   The FGIC Claim asserts the Bonds insured or held by FGIC are secured by a statutory lien against the Retained Rum Tax Remittances.

420.   The PRIFA Enabling Act does not create a statutory lien in favor of FGIC.

421.   Plaintiff is entitled to judgment disallowing the FGIC Claim regarding the Bonds because FGIC's interest in the Bonds is not secured by a statutory lien.

## COUNT LVI

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON ASSERTION THAT THE
BONDS INSURED OR HELD BY FGIC ARE SECURED BY AN EQUITABLE LIEN
(11 U.S.C. § 502)

422.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

423.   The FGIC Claim asserts the Bonds insured or held by FGIC are secured by and/or FGIC holds an equitable lien against the Retained Rum Tax Remittances.

424.   Commonwealth law does not recognize the doctrine of equitable liens, and even if it did, the requirements for an equitable lien have not been met.

425.   Plaintiff is entitled to judgment disallowing the FGIC Claim regarding the Bonds because FGIC's interest in the Bonds is not secured by and FGIC does not hold an equitable lien against the Retained Rum Tax Remittances.

## <u>COUNT LVII</u>

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON ASSERTION THAT FGIC
HAS AN OWNERSHIP INTEREST IN THE RETAINED RUM TAX REMITTANCES
(11 U.S.C. § 502)

426.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

427.    To the extent the FGIC Claim asserts FGIC holds an ownership interest in the Rum
Tax Remittances and/or the Retained Rum Tax Remittances, including any form of beneficial
interest or interest under a trust, the FGIC Claim should be disallowed.

428.    The PRIFA Enabling Act specifies the Commonwealth owns the Rum Tax
Remittances, and any Rum Tax Remittances transferred to PRIFA subject to the Commonwealth's
Retention Powers and deposited into the Sinking Fund are held for PRIFA's corporate purposes,
not the benefit of the Bondholders.  *See* 3 L.P.R.A. § 1914 (Rum Tax Remittances "shall be
covered into a Special Fund to be maintained by or on behalf of [PRIFA], designated as the [PRIFA
Infrastructure Fund], and be used by [PRIFA] for its corporate purposes").

429.    The PRIFA Enabling Act further provides that only up to the first $117 million in
Rum Tax Remittances "covered into" the Puerto Rico Treasury are conditionally allocated to
PRIFA, subject to the Commonwealth's Retention Powers.

430.    The Commonwealth did not use any language to evidence an intent to exclude the
Retained Rum Tax Remittances from the "available resources" of the Commonwealth, or convey
any property interests to the Bondholders.  Even if the PRIFA Enabling Act intended to create any
property rights for the Bondholders in these funds (which it did not), the Retained Rum Tax
Remittances are remitted by the United States to the Commonwealth, not to PRIFA or the
Bondholders.

431.     The Legislative Assembly enacted a statute conditionally appropriating to PRIFA up to the first $117 million in Rum Tax Remittances "covered into" the Puerto Rico Treasury, subject to the Commonwealth's Retention Powers, but kept the power to amend or repeal the statute.  PROMESA preempted the statute.

432.     Pursuant to Bankruptcy Code section 502, Plaintiff is entitled to a judgment disallowing the FGIC Claim asserting FGIC has any ownership interest in the Retained Rum Tax Remittances.

## COUNT LVIII

### JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON ASSERTION OF ANY SECURITY INTEREST BEYOND MONIES DEPOSITED BY PRIFA IN THE SINKING FUND
### (11 U.S.C. § 502)

433.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

434.     The FGIC Claim asserts FGIC holds a security interest against the Retained Rum Tax Remittances.

435.     Any security interest against the Rum Tax Remittances necessarily is at most limited to moneys actually received by PRIFA and deposited by PRIFA to the credit of the Sinking Fund with the Trustee.

436.     Plaintiff is entitled to judgment disallowing the FGIC Claim regarding the Bonds because FGIC does not hold any security interest against the Retained Rum Tax Remittances.

## COUNT LIX

JUDGMENT DISALLOWING AND AVOIDING FGIC CLAIM ASSERTING A PERFECTED
SECURITY INTEREST PURSUANT TO BANKRUPTCY CODE SECTION 502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

437.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

438.    The FGIC Claim asserts the Bonds it holds and/or insures are secured by a perfected
security interest against the Retained Rum Tax Remittances held by the Commonwealth.

439.    FGIC does not have control over any deposit accounts, TSA, or in any other funds
held by the Commonwealth.

440.    No financing statements were filed against the Commonwealth regarding the
Bonds.

441.    Plaintiff is entitled to judgment disallowing FGIC's claim for a perfected security
interest against the Bonds as against the Commonwealth.

## COUNT LX

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON ASSERTION THE
RETAINED RUM TAX REMITTANCES ARE SPECIAL REVENUES
(11 U.S.C. §§ 502, 902, 928; 26 U.S.C. § 7652)

442.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

443.    The FGIC Claim asserts the Retained Rum Tax Remittances are special revenues
under Bankruptcy Code section 902.

444.    The Retained Rum Tax Remittances are not special revenues of the Commonwealth
pursuant to Bankruptcy Code section 902 and are outside the scope of Bankruptcy Code section
928(a).

445.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the Retained Rum Tax Remittances are not special revenues of the Commonwealth.

## COUNT LXI

JUDGMENT DISALLOWING FGIC CLAIM ASSERTING SUBROGATION RIGHTS THAT EXCEED THE AMOUNTS PAID BY FGIC TO BONDHOLDERS OR OTHERWISE SUBORDINATING THE FGIC CLAIM TO THE CLAIMS OF BONDHOLDERS PURSUANT TO BANKRUPTCY CODE SECTION 509(c)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2104, 2141, 2142, 2161; 11 U.S.C. §§ 502, 509)

446.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

447.    The FGIC Claim asserts claims based on subrogation, reimbursement, or contribution rights arising from payments to Bondholders holding Bonds allegedly insured by FGIC.

448.    Plaintiff is entitled to judgment disallowing the FGIC Claim for subrogation, reimbursement, and contribution rights exceeding the amount FGIC has paid to Bondholders and otherwise subordinating such portions of the FGIC Claim to the unpaid claims of insured Bondholders.

## COUNT LXII

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF UNLAWFUL RETENTION OF THE RETAINED RUM TAX REMITTANCES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

449.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

450.    The FGIC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the Retained Rum Tax Remittances pursuant to Commonwealth law.

451.    The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the PRIFA Enabling Act, which provides the Rum Tax Remittances, including up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury subject to the Commonwealth's Retention Powers, are "available resources" of the Commonwealth.

452.    The obligation of the Commonwealth, if any, to appropriate up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury subject to the Commonwealth's Retention Powers, to PRIFA, as well as any other obligations related to the Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

453.    Plaintiff is entitled to judgment disallowing the FGIC Claim regarding the Bonds because the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution.

## **COUNT LXIII**

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF UNLAWFUL
RETENTION OF THE RETAINED RUM TAX REMITTANCES BECAUSE OF
PREEMPTION BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

454.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

455.    The FGIC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the Retained Rum Tax Remittances pursuant to Commonwealth law.

456.    The Commonwealth's retention of the Retained Rum Tax Remittances following the passage of PROMESA does not give rise to a claim against the Commonwealth because

PROMESA provides for the Oversight Board to certify all budget appropriations and fiscal plans, and the Puerto Rico statute FGIC relies on is an appropriation not certified by the Oversight Board.

457.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's retention of the Retained Rum Tax Remittances was authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

## COUNT LXIV

JUDGMENT DISALLOWING FGIC CLAIM FOR BREACH OF THE PRIFA NON-IMPAIRMENT PROVISION
(11 U.S.C. § 502)

458.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

459.    The FGIC Claim asserts the Commonwealth's retention of the Retained Rum Tax Remittances constitutes a breach of the PRIFA Non-Impairment Provision.

460.    The Commonwealth has not breached the PRIFA Non-Impairment Provision because it has not limited or altered any rights conferred to PRIFA. The Commonwealth never repealed or amended the PRIFA Enabling Act, or passed any legislation that conflicts with the powers granted to PRIFA.

461.    The Commonwealth's retention of the Retained Rum Tax Remittances does not limit or alter PRIFA's rights to up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury as such rights always were expressly conditional and subject to Article VI, Section 8 of the Commonwealth Constitution.

462.    The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to the fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption

of the PRIFA Enabling Act's conditional appropriation of certain Rum Tax Remittances and does

not constitute an action of the Commonwealth that limits or alters PRIFA's rights.

463.    Plaintiff is entitled to judgment disallowing the FGIC Claim because there has been

no breach of the PRIFA Non-Impairment Provision.

## **COUNT LXV**

### JUDGMENT DISALLOWING FGIC CLAIM FOR BREACH OF CONTRACT PREDICATED
ON THE RETENTION OF THE RETAINED RUM TAX REMITTANCES
(11 U.S.C. § 502)

464.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

465.    The FGIC Claim asserts a breach of contract claim against the Commonwealth

based on the Commonwealth's retention of the Retained Rum Tax Remittances.

466.    The Commonwealth is not liable for any breach of contract to FGIC.    The

Commonwealth is not a party to any contract with FGIC (including the PRIFA Bond Materials).

The Commonwealth does not owe any contractual obligations to, or enforceable by, FGIC

regarding payment on the Bonds.

467.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the

Commonwealth's retention of the Retained Rum Tax Remittances did not constitute a breach of

contract.

## **COUNT LXVI**

### JUDGMENT DISALLOWING FGIC CLAIM FOR COMMON LAW TORTS PREDICATED
ON THE RETAINED RUM TAX REMITTANCES
(11 U.S.C. § 502)

468.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

469.    The FGIC Claim asserts tort-based claims, which purportedly arise out of the Commonwealth's retention of the Retained Rum Tax Remittances.

470.    The Commonwealth's retention of the Retained Rum Tax Remittances was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to FGIC for any tort claims under any theory.

471.    A conversion claim asserted by FGIC fails because (i) any security interest held by FGIC necessarily is at most limited to moneys actually received by PRIFA and deposited by PRIFA to the credit of the Sinking Fund with the Trustee, (ii) FGIC does not have any security interest or  property interest in the Retained Rum Tax Remittances, (iii) the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution, and (iv) the Commonwealth's retention of the Retained Rum Tax Remittances was authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

472.    A tortious interference with contract claim asserted by FGIC fails because (*i*) the Commonwealth acted properly and lawfully in authorizing the retention of the Retained Rum Tax Remittances, (*ii*) there was no breach of contract with respect to any alleged failure to make payment on the Bonds because the Commonwealth had no obligation on the Bonds and the monies at issue were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, (iii) the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution, and (iv) the Commonwealth's retention of the Retained Rum Tax Remittances was authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

473.     An unjust enrichment claim asserted by FGIC fail because (*i*) Commonwealth law does not recognize a cause of action for unjust enrichment against the Commonwealth; and (*ii*) the documents governing the Bonds specify the rights and obligations of the parties and therefore there could be no separate claim for unjust enrichment apart from any claim for breach of contract, which does not exist in this case.

474.     Claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation asserted by FGIC fail because (*i*) the Commonwealth has not made any material misstatements of fact or engaged in any fraudulent conduct, (*ii*) statements made in the PRIFA Enabling Act are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim, and (*iii*) statements made in the PRIFA Bond Materials were truthful when made.  The FGIC Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

475.     Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's retention of the Retained Rum Tax Remittances did not constitute a tort.

## COUNT LXVII

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON THE RETAINED RUM
TAX REMITTANCES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE
II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

476.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

477.     The FGIC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the Retained Rum Tax Remittances pursuant to Commonwealth law.

478.     The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

479.     Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

## COUNT LXVIII

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

480.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

481.     FGIC alleges the Commonwealth's retention of the Retained Rum Tax Remittances violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

482.     The Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the Commonwealth was authorized to retain them under Commonwealth and federal law, and no contractual right of FGIC's was impaired.

483.    Plaintiff is entitled to judgment disallowing the FGIC Claim because there has been

no impairment of FGIC's contractual rights. In the alternative, Plaintiff is entitled to a judgment

declaring any valid claim held by FGIC based on the Contracts Clause is—at most—a prepetition,

unsecured, dischargeable claim.

## COUNT LXIX

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE NO COMMONWEALTH LEGISLATION CREATED AN
IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

484.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

485.    FGIC alleges the Commonwealth's retention of the Retained Rum Tax Remittances

violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim

against the Commonwealth as a result of the alleged violations.

486.    The Commonwealth's retention of the Retained Rum Tax Remittances did not

violate the Contracts Clause of the Commonwealth or U.S. Constitutions because no

Commonwealth legislation was passed that impaired FGIC's contract rights, if any.

487.    Plaintiff is entitled to judgment disallowing the FGIC Claim because there is no

Commonwealth legislation that impaired FGIC's contract rights, if any.

488.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held

by FGIC based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable

claim.

## COUNT LXX

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE
RETAINED RUM TAX REMITTANCES WAS REASONABLE AND NECESSARY
BECAUSE IT WAS IN ACCORDANCE WITH PROMESA
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

489.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

490.    FGIC alleges the Commonwealth's retention of the Retained Rum Tax Remittances violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

491.    The Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the Commonwealth's retention of the Retained Rum Tax Remittances was reasonable and necessary.

492.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's retention of the Retained Rum Tax Remittances was in accordance with PROMESA and therefore was reasonable and necessary.

493.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by FGIC based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable claim.

## COUNT LXXI

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS
BECAUSE FGIC DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

494.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

495.    FGIC asserts the Commonwealth's lawful retention of the Retained Rum Tax
Remittances constitutes a taking.

496.    The Commonwealth's retention of the Retained Rum Tax Remittances does not
constitute a taking because FGIC has no property interest in the Retained Rum Tax Remittances.

497.    Plaintiff is entitled to judgment disallowing the FGIC Claim because FGIC has no
property interest in the Retained Rum Tax Remittances and therefore cannot assert a takings claim.

498.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held
by FGIC based on the Takings Clause is—at most—a prepetition, unsecured, dischargeable claim.

## COUNT LXXII

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON VIOLATIONS OF THE
TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE
FGIC HAD A REASONABLE EXPECTATION THE COMMONWEALTH WOULD RETAIN
THE RETAINED RUM TAX REMITTANCES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

499.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

500.    FGIC asserts the Commonwealth's lawful retention of the Retained Rum Tax
Remittances constitutes a taking.

501.    The Commonwealth's retention of the Retained Rum Tax Remittances does not
constitute an impermissible taking because such retention did not interfere with FGIC's reasonable
expectations.

502.    FGIC knew or should have known, pursuant to Article VI, Section 8 and Article II,
Sections 18 and 19 of the Commonwealth Constitution, the PRIFA Enabling Act, and the PRIFA
Bond Materials, that the Retained Rum Tax Remittances were subject to the Commonwealth's
retention.

503.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's retention of the Retained Rum Tax Remittances did not interfere with FGIC's reasonable expectations regarding the Retained Rum Tax Remittances.

504.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by FGIC based on the Takings Clause is—at most—a dischargeable claim.

### COUNT LXXIII

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

505.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

506.    FGIC alleges the Commonwealth's retention of Retained Rum Tax Remittances constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violation.

507.    The FGIC Claim does not assert any additional basis on which the Commonwealth's retention of Retained Rum Tax Remittances constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions separate from its Takings Clause claim.

508.    Because the FGIC Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, FGIC's Due Process claim should be disallowed because it has no property rights or security interests in the Retained Rum Tax Remittances retained by the Commonwealth.

509.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Due Process Clause of the Commonwealth or U.S. Constitutions.

## COUNT LXXIV

**JUDGMENT DISALLOWING FGIC CLAIM BASED ON PROMESA SECTION 407**
**(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)**

510.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

511.    The FGIC Claim asserts claims under PROMESA section 407(a).

512.    FGIC does not have a claim under PROMESA section 407(a) because the Retained Rum Tax Remittances were not property of any territorial instrumentality transferred in violation of applicable law, nor does FGIC have any security interest against the Retained Rum Tax Remittances.

513.    FGIC also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only PRIFA has a claim for the transferred property against the transferee.

514.    Plaintiff is entitled to judgment disallowing the FGIC Claim based on PROMESA section 407(a).

## COUNT LXXV

**JUDGMENT DISALLOWING FGIC CLAIM FOR POSTPETITION INTEREST AND OTHER**
**POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE SECTION 502(b)(2)**
**(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)**

515.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

516.    The FGIC Claim asserts claims for postpetition interest and other postpetition costs.

517.    Pursuant to Bankruptcy Code section 502(b)(2), upon objection to a claim, the court is required to disallow such claim to the extent it asserts claims "for unmatured interest."  11 U.S.C. § 502(b)(2).

518.    Plaintiff is entitled to judgment disallowing the FGIC Claim for postpetition interest.

519.    Plaintiff's claim for costs or expenses should be disallowed as a secured claim to the extent no valid contract supports it and/or there is insufficient collateral value beyond principal and interest to pay it, and should be disallowed as a prepetition, unsecured claim to the extent no valid contract supports it.

## COUNT LXXVI

### JUDGMENT DISALLOWING FGIC'S SECURED CLAIM
(11 U.S.C. § 502)

520.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

521.    FGIC has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory or other liens against any property in which the Commonwealth has an interest, nor has FGIC perfected any alleged security interest, if any, as against the Commonwealth.

522.    Plaintiff is entitled to judgment disallowing FGIC's secured claim.

## COUNT LXXVII

### JUDGMENT DISALLOWING FGIC'S PRIORITY CLAIM
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

523.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

524.    The FGIC Claim asserts amounts due to FGIC are entitled to priority over other unsecured claims.

525.    FGIC does not have a priority claim under Commonwealth law.  Moreover, even if FGIC had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

526.    FGIC does not have an administrative expense claim pursuant to PROMESA section 507.  None of FGIC's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

527.    Plaintiff is entitled to judgment disallowing all priorities asserted for the FGIC Claim regarding the Bonds.

## COUNT LXXVIII

**JUDGMENT DISALLOWING FGIC CLAIM ASSERTING A SECURITY INTEREST ON REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE SECTION 552**
**(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)**

528.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-7 and 12-160, inclusive, as if fully set forth herein.

529.    The FGIC Claim asserts Retained Rum Tax Remittances collected postpetition are subject to FGIC's purported security interest.

530.    FGIC does not have a valid or perfected security interest against the Retained Rum Tax Remittances.  Even if it did, such security interest would not attach to moneys collected postpetition.

531.    Plaintiff is entitled to judgment disallowing the FGIC Claim regarding its purported security interest against any and all postpetition Retained Rum Tax Remittances retained by the Commonwealth.

## OBJECTIONS TO MASTER PROOF OF CLAIM

### COUNT LXXIX

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM BECAUSE U.S. BANK, AS
TRUSTEE, LACKS STANDING TO ASSERT A CLAIM AGAINST THE
COMMONWEALTH
(11 U.S.C. §§ 501, 502)

532.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-160, inclusive, as if fully set forth herein.

533.    The Master Proof of Claim must be disallowed because U.S. Bank, as Trustee, does
not have any "right to payment" from the Commonwealth, or any interest in any right to payment,
and therefore does not have or possess an allowable claim against the Commonwealth under the
Bankruptcy Code or Commonwealth law.   Without an enforceable obligation against the
Commonwealth as to the Retained Rum Tax Remittances, U.S. Bank, as Trustee, does not have
standing to assert a claim against the Commonwealth.

534.    Further, U.S. Bank, as Trustee, lacks derivative standing to assert any claim in
PRIFA's name against the Commonwealth for its alleged retention of the Retained Rum Tax
Remittances.

535.    Plaintiff is entitled to a judgment disallowing the Master Proof of Claim in its
entirety, as U.S. Bank, as Trustee, does not have standing to assert a claim against the
Commonwealth because it lacks any interest in an enforceable obligation from the
Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code
section 101(5).

## COUNT LXXX

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON
ASSERTION THAT THE BONDS HELD BY U.S. BANK, AS TRUSTEE, ARE SECURED
BY A STATUTORY LIEN
(11 U.S.C. § 502)

536.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

537.    The Master Proof of Claim asserts the Bonds held by U.S. Bank, as Trustee, are secured by a statutory lien against the Retained Rum Tax Remittances.

538.    The PRIFA Enabling Act does not create a statutory lien in favor of U.S. Bank, as Trustee.

539.    Plaintiff is entitled to judgment disallowing the Master Proof of Claim in its entirety because the interest of U.S. Bank, as Trustee, in the Bonds is not secured by a statutory lien.

## COUNT LXXXI

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON
ASSERTION THAT THE BONDS HELD BY U.S. BANK, AS TRUSTEE, ARE SECURED
BY AN EQUITABLE LIEN
(11 U.S.C. § 502)

540.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

541.    The Master Proof of Claim asserts the Bonds held by U.S. Bank, as Trustee, are secured by and/or U.S. Bank, as Trustee, holds an equitable lien against the Retained Rum Tax Remittances.

542.    Commonwealth law does not recognize the doctrine of equitable liens, and even if it did, the requirements for an equitable lien have not been met.

543.   Plaintiff is entitled to judgment disallowing the Master Proof of Claim in its entirety because the interest of U.S. Bank, as Trustee in the Bonds is not secured by and U.S. Bank, as Trustee, does not hold an equitable lien against the Retained Rum Tax Remittances.

## COUNT LXXXII

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON
ASSERTION THAT U.S. BANK, AS TRUSTEE, HAS AN OWNERSHIP INTEREST IN THE
RETAINED RUM TAX REMITTANCES
(11 U.S.C. § 502)

544.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

545.   To the extent the Master Proof of Claim asserts U.S. Bank, as Trustee, holds an ownership interest in the Rum Tax Remittances and/or the Retained Rum Tax Remittances, including any form of beneficial interest or interest under a trust, the Master Proof of Claim should be disallowed.

546.   The PRIFA Enabling Act specifies the Commonwealth owns the Rum Tax Remittances, and any Rum Tax Remittances transferred to PRIFA subject to the Commonwealth's Retention Powers and deposited into the Sinking Fund are held for PRIFA's corporate purposes, not the benefit of the Bondholders.  *See* 3 L.P.R.A. § 1914 (Rum Tax Remittances "shall be covered into a Special Fund to be maintained by or on behalf of [PRIFA], designated as the [PRIFA Infrastructure Fund], and be used by [PRIFA] for its corporate purposes").

547.   The PRIFA Enabling Act further provides that only up to the first $117 million in Rum Tax Remittances "covered into" the Puerto Rico Treasury are conditionally allocated to PRIFA, subject to the Commonwealth's Retention Powers.

548.   The Commonwealth did not use any language to evidence an intent to exclude the Retained Rum Tax Remittances from the "available resources" of the Commonwealth, or convey

any property interests to the Bondholders or the Trustee.  Even if the PRIFA Enabling Act intended to create any property rights for the Bondholders or the Trustee in these funds (which it did not), the Retained Rum Tax Remittances are remitted by the United States to the Commonwealth, not to PRIFA, the Bondholders or the Trustee.

549.   The Legislative Assembly enacted a statute conditionally appropriating to PRIFA up to the first $117 million in Rum Tax Remittances "covered into" the Puerto Rico Treasury, subject to the Commonwealth's Retention Powers, but kept the power to amend or repeal the statute.  PROMESA preempted the statute.

550.   Pursuant to Bankruptcy Code section 502, Plaintiff is entitled to a judgment disallowing the Master Proof of Claim asserting U.S. Bank, as Trustee, has any ownership interest in the Retained Rum Tax Remittances.

## COUNT LXXXIII

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON
ASSERTION OF ANY SECURITY INTEREST BEYOND MONIES DEPOSITED BY PRIFA
IN THE SINKING FUND
(11 U.S.C. § 502)

551.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

552.   The Master Proof of Claim asserts U.S. Bank, as Trustee, holds a security interest against the Retained Rum Tax Remittances.

553.   Any security interest against the Rum Tax Remittances necessarily is at most limited to moneys actually received by PRIFA and deposited by PRIFA to the credit of the Sinking Fund with the Trustee.

554.    Plaintiff is entitled to judgment disallowing the Master Proof of Claim in its entirety because U.S. Bank, as Trustee, does not hold any security interest against the Retained Rum Tax Remittances.

## **COUNT LXXXIV**

### JUDGMENT DISALLOWING AND AVOIDING MASTER PROOF OF CLAIM ASSERTING A PERFECTED SECURITY INTEREST PURSUANT TO BANKRUPTCY CODE SECTION 502(d)
### (48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

555.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

556.    The Master Proof of Claim asserts the Bonds are secured by a perfected security interest against the Retained Rum Tax Remittances held by the Commonwealth.

557.    U.S. Bank, as Trustee, does not have control over any deposit accounts, TSA, or in any other funds held by the Commonwealth.

558.    No financing statements were filed against the Commonwealth regarding the Bonds.

559.    Plaintiff is entitled to judgment disallowing U.S. Bank, as Trustee's claim for a perfected security interest against the Bonds as against the Commonwealth.

## **COUNT LXXXV**

### JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON ASSERTION THE RETAINED RUM TAX REMITTANCES ARE SPECIAL REVENUES
### (11 U.S.C. §§ 502, 902, 928; 26 U.S.C. § 7652)

560.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

561.    The Master Proof of Claim asserts the Retained Rum Tax Remittances are special revenues under Bankruptcy Code section 902.

101

562.    The Retained Rum Tax Remittances are not special revenues of the Commonwealth pursuant to Bankruptcy Code section 902 and are outside the scope of Bankruptcy Code section 928(a).

563.    Plaintiff is entitled to judgment disallowing the Master Proof of Claim because the Retained Rum Tax Remittances are not special revenues of the Commonwealth.

## COUNT LXXXVI

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON CLAIMS OF UNLAWFUL RETENTION OF THE RETAINED RUM TAX REMITTANCES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

564.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

565.    The Master Proof of Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the Retained Rum Tax Remittances pursuant to Commonwealth law.

566.    The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the PRIFA Enabling Act, which provides the Rum Tax Remittances, including up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury subject to the Commonwealth's Retention Powers, are "available resources" of the Commonwealth.

567.    The obligation of the Commonwealth, if any, to appropriate up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury subject to the Commonwealth's Retention Powers, to PRIFA, as well as any other obligations related to the Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

568.     Plaintiff is entitled to judgment disallowing the Master Proof of Claim in its entirety because the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution.

## COUNT LXXXVII

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON CLAIMS
OF UNLAWFUL RETENTION OF THE RETAINED RUM TAX REMITTANCES BECAUSE
OF PREEMPTION BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

569.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

570.     The Master Proof of Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the Retained Rum Tax Remittances pursuant to Commonwealth law.

571.     The Commonwealth's retention of the Retained Rum Tax Remittances following the passage of PROMESA does not give rise to a claim against the Commonwealth because PROMESA provides for the Oversight Board to certify all budget appropriations and fiscal plans, and the Puerto Rico statute U.S. Bank, as Trustee, relies on is an appropriation not certified by the Oversight Board.

572.     Plaintiff is entitled to judgment disallowing the Master Proof of Claim because the Commonwealth's retention of the Retained Rum Tax Remittances was authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

## COUNT LXXXVIII

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM FOR BREACH OF THE PRIFA
NON-IMPAIRMENT PROVISION
(11 U.S.C. § 502)

573.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, as if fully set forth herein.

574.    The Master Proof of Claim asserts the Commonwealth's retention of the Retained Rum Tax Remittances constitutes a breach of the PRIFA Non-Impairment Provision.

575.    The Commonwealth has not breached the PRIFA Non-Impairment Provision because it has not limited or altered any rights conferred to PRIFA.  The Commonwealth never repealed or amended the PRIFA Enabling Act, or passed any legislation that conflicts with the powers granted to PRIFA.

576.    The Commonwealth's retention of the Retained Rum Tax Remittances does not limit or alter PRIFA's rights to up to the first $117 million of Rum Tax Remittances "covered into" the Puerto Rico Treasury as such rights always were expressly conditional and subject to Article VI, Section 8 of the Commonwealth Constitution.

577.    The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to the fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption of the PRIFA Enabling Act's conditional appropriation of certain Rum Tax Remittances and does not constitute an action of the Commonwealth that limits or alters PRIFA's rights.

578.    Plaintiff is entitled to judgment disallowing the Master Proof of Claim because there has been no breach of the PRIFA Non-Impairment Provision.

## COUNT LXXXIX

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM FOR BREACH OF
CONTRACT PREDICATED ON THE RETENTION OF THE RETAINED RUM TAX
REMITTANCES
(11 U.S.C. § 502)

579.   Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-160, inclusive, as if fully set forth herein.

580.   The Master Proof of Claim asserts a breach of contract claim against the
Commonwealth based on the Commonwealth's retention of the Retained Rum Tax Remittances.

581.   The Commonwealth is not liable for any breach of contract to U.S. Bank, as
Trustee.  The Commonwealth is not a party to any contract with U.S. Bank, as Trustee (including
the PRIFA Bond Materials).  The Commonwealth does not owe any contractual obligations to, or
enforceable by, U.S. Bank, as Trustee, regarding payment on the Bonds.

582.   Plaintiff is entitled to judgment disallowing the Master Proof of Claim because the
Commonwealth's retention of the Retained Rum Tax Remittances did not constitute a breach of
contract.

## COUNT XC

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM FOR COMMON LAW TORTS
PREDICATED ON THE RETAINED RUM TAX REMITTANCES
(11 U.S.C. § 502)

583.   Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-160, inclusive, as if fully set forth herein.

584.   The Master Proof of Claim asserts various tort-based claims—including common
law fraud, conversion, and fraudulent conveyance,—which all purportedly arise out of the
Commonwealth's retention of the Retained Rum Tax Remittances.

585.    The Commonwealth's retention of the Retained Rum Tax Remittances was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to U.S. Bank, as Trustee, for any tort claims under any theory.

586.    A conversion claim asserted by U.S. Bank, as Trustee, fails because (i) any security interest held by U.S. Bank, as Trustee, necessarily is at most limited to moneys actually received by PRIFA and deposited by PRIFA to the credit of the Sinking Fund with the Trustee, (ii) U.S. Bank, as Trustee, does not have any security interest or property interest in the Retained Rum Tax Remittances, (iii) the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution, and (iv) the Commonwealth's retention of the Retained Rum Tax Remittances was authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

587.    TA tortious interference with contract claim asserted by U.S. Bank, as Trustee, fails because (*i*) the Commonwealth acted properly and lawfully in authorizing the retention of the Retained Rum Tax Remittances, (*ii*) there was no breach of contract with respect to any alleged failure to make payment on the Bonds because the Commonwealth had no obligation on the Bonds and the monies at issue were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, (iii) the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution, and (iv) the Commonwealth's retention of the Retained Rum Tax Remittances was authorized pursuant to PROMESA sections 201 and 202 and any inconsistent Commonwealth law is preempted by PROMESA.

588.   An unjust enrichment claim asserted by U.S. Bank, as Trustee, fails because (*i*) Commonwealth law does not recognize a cause of action for unjust enrichment against the Commonwealth; and (*ii*) the documents governing the Bonds specify the rights and obligations of the parties and therefore there could be no separate claim for unjust enrichment apart from any claim for breach of contract, which does not exist in this case.

589.   Claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation asserted by U.S. Bank, as Trustee, fail because (*i*) the Commonwealth has not made any material misstatements of fact or engaged in any fraudulent conduct, (*ii*) statements made in the PRIFA Enabling Act are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim, and (*iii*) statements made in the PRIFA Bond Materials were truthful when made.  The Master Proof of Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

590.   Plaintiff is entitled to judgment disallowing the Master Proof of Claim because the Commonwealth's retention of the Retained Rum Tax Remittances did not constitute a tort.

## COUNT XCI

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON THE
RETAINED RUM TAX REMITTANCES BECAUSE SUCH RETENTION WAS
AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH
CONSTITUTION
(11 U.S.C. § 502)

591.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

107

592.    The Master Proof of Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the Retained Rum Tax Remittances pursuant to Commonwealth law.

593.    The Commonwealth's retention of the Retained Rum Tax Remittances pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

594.    Plaintiff is entitled to judgment disallowing the Master Proof of Claim because the Commonwealth's retention of the Retained Rum Tax Remittances prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

## <u>COUNT XCII</u>

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON CLAIMS
OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

595.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

596.    U.S. Bank, as Trustee alleges the Commonwealth's retention of the Retained Rum Tax Remittances violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

597.    The Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the Commonwealth was authorized to retain them under Commonwealth and federal law, and no contractual right of U.S. Bank, as Trustee, was impaired.

598.    Plaintiff is entitled to judgment disallowing the Master Proof of Claim because there has been no impairment of any contractual rights of U.S. Bank, as Trustee.

599.     In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by U.S. Bank, as Trustee, based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable claim.

## COUNT XCIII

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO COMMONWEALTH LEGISLATION CREATED AN IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

600.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

601.    U.S. Bank, as Trustee, alleges the Commonwealth's retention of the Retained Rum Tax Remittances violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

602.    The Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because no Commonwealth legislation was passed that impaired the contract rights of U.S. Bank, as Trustee, if any.

603.    Plaintiff is entitled to judgment disallowing the Master Proof of Claim because there is no Commonwealth legislation that impaired contract rights of U.S. Bank, as Trustee, if any.

604.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by U.S. Bank, as Trustee, based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable claim.

## COUNT XCIV

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON CLAIMS
OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE
RETAINED RUM TAX REMITTANCES WAS REASONABLE AND NECESSARY
BECAUSE IT WAS IN ACCORDANCE WITH PROMESA
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

605.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

606.    U.S. Bank, as Trustee, alleges the Commonwealth's retention of the Retained Rum Tax Remittances violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

607.    The Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the Commonwealth's retention of the Retained Rum Tax Remittances was in accordance with PROMESA and therefore reasonable and necessary.

608.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by U.S. Bank, as Trustee, based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable claim.

## COUNT XCV

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON CLAIMS
OF VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE U.S. BANK, AS TRUSTEE, DOES NOT HOLD A
PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

609.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

110

610.     U.S. Bank, as Trustee, asserts the Commonwealth's lawful retention of the Retained Rum Tax Remittances constitutes a taking.

611.     The Commonwealth's retention of the Retained Rum Tax Remittances does not constitute a taking because U.S. Bank, as Trustee, has no property interest in the Retained Rum Tax Remittances.

612.     Plaintiff is entitled to judgment disallowing the Master Proof of Claim because U.S. Bank, as Trustee, has no property interest in the Retained Rum Tax Remittances and therefore cannot assert a takings claim.

613.     In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by U.S. Bank, as Trustee, based on the Takings Clause is—at most—a prepetition, unsecured, dischargeable claim.

## **COUNT XCVI**

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON
VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE U.S. BANK, AS TRUSTEE, HAD A REASONABLE
EXPECTATION THE COMMONWEALTH WOULD RETAIN THE RETAINED RUM TAX
REMITTANCES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

614.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

615.     U.S. Bank, as Trustee, asserts the Commonwealth's lawful retention of the Retained Rum Tax Remittances constitutes a taking.

616.     The Commonwealth's retention of the Retained Rum Tax Remittances does not constitute an impermissible taking because such retention did not interfere with the reasonable expectations of U.S. Bank, as Trustee.

617.    U.S. Bank, as Trustee, knew or should have known, pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the PRIFA Enabling Act, and the PRIFA Bond Materials, that the Retained Rum Tax Remittances were subject to the Commonwealth's retention.

618.    Plaintiff is entitled to judgment disallowing the Master Proof of Claim because the Commonwealth's retention of the Retained Rum Tax Remittances did not interfere with the reasonable expectations of U.S. Bank, as Trustee, regarding the Retained Rum Tax Remittances

619.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by U.S. Bank, as Trustee, based on the Takings Clause is—at most—a prepetition, unsecured, dischargeable claim.

## COUNT XCVII

### JUDGMENT DISALLOWING MASTER PROOF OF CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

620.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

621.    U.S. Bank, as Trustee, alleges the Commonwealth's retention of Retained Rum Tax Remittances constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violation.

622.    The Master Proof of Claim does not assert any additional basis on which the Commonwealth's retention of Retained Rum Tax Remittances constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions separate from its Takings Clause claim.

112

623.     Because the Master Proof of Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, U.S. Bank's Due Process claim should be disallowed because it has no property rights or security interests in the Retained Rum Tax Remittances retained by the Commonwealth.

624.     Plaintiff is entitled to judgment disallowing the Master Proof of Claim because the Commonwealth's retention of the Retained Rum Tax Remittances did not violate the Due Process Clause of the Commonwealth or U.S. Constitutions.

## COUNT XCVIII

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM BASED ON PROMESA
SECTION 407
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

625.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

626.     The Master Proof of Claim asserts claims under PROMESA section 407(a).

627.     U.S. Bank, as Trustee, does not have a claim under PROMESA section 407(a) because the Retained Rum Tax Remittances were not property of any territorial instrumentality transferred in violation of applicable law, nor does U.S. Bank, as Trustee, have any security interest against the Retained Rum Tax Remittances.

628.     U.S. Bank, as Trustee, also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only PRIFA has a claim for the transferred property against the transferee.

629.     Plaintiff is entitled to judgment disallowing the Master Proof of Claim based on PROMESA section 407(a).

## COUNT XCIX

JUDGMENT DISALLOWING MASTER PROOF OF CLAIM FOR POSTPETITION
INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE
SECTION 502(b)(2)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

630.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-160, inclusive, as if fully set forth herein.

631.    The Master Proof of Claim asserts claims for postpetition interest and other
postpetition costs.

632.    Pursuant to Bankruptcy Code section 502(b)(2), upon objection to a claim, the court
is required to disallow such claim to the extent it asserts claims "for unmatured interest." 11 U.S.C.
§ 502(b)(2).

633.    Plaintiff is entitled to judgment disallowing the Master Proof of Claim for
postpetition interest.

634.    Plaintiff's claim for costs or expenses should be disallowed as a secured claim to
the extent no valid contract supports it and/or there is insufficient collateral value beyond principal
and interest to pay it, and should be disallowed as a prepetition unsecured claim to the extent no
valid contract supports it.

## COUNT C

JUDGMENT DISALLOWING U.S. BANK, AS TRUSTEE'S SECURED CLAIM
(11 U.S.C. § 502)

635.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-160, inclusive, as if fully set forth herein.

636.    U.S. Bank, as Trustee has no valid secured claim against the Commonwealth as it
was neither granted any security interest nor holds any statutory or other liens against any property

in which the Commonwealth has an interest, nor has U.S. Bank, as Trustee perfected any alleged security interest, if any, as against the Commonwealth.

637.    Plaintiff is entitled to judgment disallowing U.S. Bank, as Trustee's secured claim.

## COUNT CI

### JUDGMENT DISALLOWING U.S. BANK, AS TRUSTEE'S PRIORITY CLAIM
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

638.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-160, inclusive, as if fully set forth herein.

639.    The Master Proof of Claim asserts amounts due to U.S. Bank, as Trustee are entitled to priority over other unsecured claims.

640.    U.S. Bank does not have a priority claim under Commonwealth law.  Moreover, even if U.S. Bank, as Trustee had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

641.    U.S. Bank, as Trustee does not have an administrative expense claim pursuant to PROMESA section 507.  None of the claims of U.S. Bank, as Trustee, are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

642.    Plaintiff is entitled to judgment disallowing all priorities asserted for the Master Proof of Claim in its entirety.

## COUNT CII

**JUDGMENT DISALLOWING MASTER PROOF OF CLAIM ASSERTING A SECURITY
INTEREST ON REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO
RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE
SECTION 552**
**(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)**

643.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-160, inclusive, as if fully set forth herein.

644.    The Master Proof of Claim asserts Retained Rum Tax Remittances collected
postpetition are subject to a purported security interest of U.S. Bank, as Trustee.

645.    U.S. Bank, as Trustee does not have a valid or perfected security interest against
the Retained Rum Tax Remittances.  Even if it did, such security interest would not attach to
moneys collected postpetition.

646.    Plaintiff is entitled to judgment disallowing the Master Proof of Claim regarding
its purported security interest against any and all postpetition Retained Rum Tax Remittances
retained by the Commonwealth.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays that judgment be entered in its favor and against Defendants,
and each of them, as follows:

A.    Disallowing each and every one of Defendants' Proofs of Claim regarding the
Bonds other than the Trustee's Master Proof of Claim as duplicative of the Master Proof of Claim;

B.    Disallowing each and every one of Defendants' Proofs of Claim as Defendants lack
standing to assert claims against the Commonwealth with respect to the Bonds;

C.    Disallowing each and every one of Defendants' Proofs of Claim asserting the
Bonds are secured by a statutory lien;

116

D.      Disallowing each and every one of Defendants' Proofs of Claim asserting the Bonds are secured by an equitable lien;

E.      Disallowing each and every one of Defendants' Proofs of Claim regarding the Bonds asserting ownership in the Retained Rum Tax Remittances;

F.      Disallowing each and every one of Defendants' Proofs of Claim asserting a security interest regarding the Bonds beyond moneys received by PRIFA and deposited by PRIFA in the Sinking Fund;

G.      Disallowing each and every one of Defendants' Proofs of Claim asserting perfected security interests against the Commonwealth pursuant to Bankruptcy Code section 502(d);

H.      Disallowing each and every one of Defendants' Proofs of Claim asserting the Retained Rum Tax Remittances are "special revenues" of the Commonwealth as defined in Bankruptcy Code section 902(2);

I.      Disallowing each and every one of Defendants' Proofs of Claim asserting subrogation rights exceeding the amount paid by Defendants to Bondholders or otherwise subordinating Defendants' Proofs of Claims to the claims of Bondholders pursuant to Bankruptcy Code section 509(c);

J.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth based on retention of the Retained Rum Tax Remittances;

K.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth regarding the Bonds predicated on the Contracts Clause of the Commonwealth and/or U.S. Constitutions;

117

L.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth regarding the Bonds predicated on the Takings Clause of the Commonwealth and/or U.S. Constitution;

M.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth regarding the Bonds predicated on the Due Process Clause of the Commonwealth and/or U.S. Constitutions;

N.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth regarding the Bonds pursuant to PROMESA section 407(a);

O.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims for postpetition interest and other postpetition costs pursuant to Bankruptcy Code section 502(b)(2);

P.      Disallowing each and every one of Defendants' Proofs of Claim asserting secured claims against the Commonwealth related to the Retained Rum Tax Remittances;

Q.      Disallowing each and every one of Defendants' Proofs of Claim asserting priority claims against the Commonwealth related to the Retained Rum Tax Remittances;

R.      Disallowing each and every one of Defendants' Proofs of Claim asserting a security interest against the Commonwealth based on revenues collected postpetition and/or rights to receive revenues arising postpetition pursuant to Bankruptcy Code section 552; and

S.      Granting such other and further relief as the Court deems just and proper.

*[Remainder of page intentionally left blank]*

Dated: January 16, 2020     Respectfully submitted,
  San Juan, Puerto Rico

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 15205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Jeffrey Levitan
Timothy W. Mungovan
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
   jlevitan@proskauer.com
   tmungovan@proskauer.com
   ebarak@proskauer.com

Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 557-2900
Fax: (310) 557-2193
Email: mfirestein@proskauer.com
   lrappaport@proskauer.com

*Attorneys for the Financial*
*Oversight and Management Board,*
*as Representative of the Commonwealth*

119

120