## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>     Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION,<br>ASSURED GUARANTY CORPORATION,<br>FINANCIAL GUARANTY INSURANCE<br>COMPANY, and THE BANK OF NEW YORK<br>MELLON, as Fiscal Agent,<br><br>     Defendants. | Adv. Proc. No. 20-_____-LTS<br><br>PROMESA<br>Title III |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## COMPLAINT OBJECTING TO DEFENDANTS'
## CLAIMS AND SEEKING RELATED RELIEF

Pursuant to (*i*) Rules 3007, 7001(1), (2), (8), and (9) of the Federal Rules of Bankruptcy Procedure, made applicable to these Title III cases by section 310 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] and (*ii*) the Interim Case Management Order for Revenue Bonds, dated December 19, 2019 [ECF No. 9620], the Commonwealth of Puerto Rico (the "Commonwealth" or "Plaintiff"), by and through the Financial Oversight and Management Board for Puerto Rico, as the sole representative of the Commonwealth pursuant to section 315(b) of PROMESA (and solely in that capacity, the "Oversight Board"), brings this complaint ("Complaint") against Defendants:[3]

## NATURE OF ACTION

1.     The Oversight Board brings this complaint on behalf of the Commonwealth objecting to certain proofs of claim and priorities asserted therein and objecting to the validity and priority of certain liens or security interests asserted therein regarding certain revenues that have not been appropriated to the Puerto Rico Convention Center District Authority ("CCDA"), as they historically had been.[4]

2.     The CCDA built the Puerto Rico Convention Center.  It financed the center partly through the issuance of bonds (the "CCDA Bonds") backed by and exclusively payable through a

---

[2]   PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

[3]   Defendants in this action are Ambac Assurance Corp. ("Ambac"), Assured Guaranty Corp. ("AGC"), Financial Guaranty Insurance Company ("FGIC"), and The Bank of New York Mellon as Fiscal Agent ("BNYM" or the "Fiscal Agent," and together with Ambac, AGC, and FGIC, "Defendants").

[4]   Plaintiff reserves its right to raise additional objections to any other claims asserted by Defendants in their Proofs of Claim or otherwise, and reserves its right to commence additional proceedings or file objections on any basis to any claims filed in connection with the CCDA Bonds (as defined herein).

specific, limited portion of Occupancy Tax Revenues[5] levied by the Tourism Company (a public corporation) and conditionally allocated to CCDA.

3.     The CCDA Bonds are non-recourse; the Commonwealth is neither an issuer nor a guarantor of the CCDA Bonds; and, as the Enabling Act and CCDA Debt Documents expressly state, the Commonwealth has no liability thereon.

4.     This proceeding arises out of a dispute regarding Retained Occupancy Tax Revenues (as defined below).  Beginning November 30, 2015, the Tourism Company stopped depositing the Occupancy Tax Revenues with GDB in a specific account called the "Transfer Account," and instead has since retained the majority of the those revenues in a separate Tourism Company account at FirstBank.  Neither the Tourism Company nor CCDA are Title III debtors.

5.     Defendants, each claiming rights derived from CCDA Bondholders, have filed Proofs of Claim in the Commonwealth Title III Case asserting the Commonwealth has liability arising from the Tourism Company no longer depositing Occupancy Tax Revenues with GDB or CCDA, asserting various constitutional, statutory and contractual theories to render them allowable.

6.     Defendants' Proofs of Claim must be disallowed in their entirety because the Commonwealth is not a party to any agreement related to the Occupancy Tax Revenue, Defendants do not have any right to payment from the Commonwealth in connection with the CCDA Bonds, and do not possess an allowable claim against the Commonwealth.

## **PARTIES**

7.     The Oversight Board is an entity within the Commonwealth government established pursuant to PROMESA.    In this action, the Oversight Board serves as the

---

[5]  Capitalized terms not defined in the Nature of Action are defined below.

Commonwealth's sole representative pursuant to PROMESA section 315(b), and is acting only in that capacity herein.

8.     Defendant Ambac is a Wisconsin-domiciled stock insurance corporation with its principal place of business at One State Street Plaza, New York, New York 10004.  Ambac filed Claim Nos. 50420, 83010, and 122277 in the Commonwealth Title III Case on June 26, 27, and 28, 2018, respectively, for the CCDA Bonds it allegedly insures (the "Ambac Claim").[6]

9.     The Ambac Claim asserts a secured claim against the Commonwealth and alleges, among other things, (*i*) statutory liens against the Occupancy Tax Revenues, (*ii*) perfected security interests against the Occupancy Tax Revenues, (*iii*) breaches of contract and tort arising from the Commonwealth not appropriating and transferring the Occupancy Tax Revenues to CCDA, (*iv*) Ambac's Claim should be afforded first priority status, (*v*) violations of the Takings Clause, (*vi*) violations of the Contract Clause, (*vii*) violations of the Due Process Clause, (*viii*) violations of PROMESA section 407, (*ix*) subrogation to the claims of CCDA Bondholders, (*x*) claims to ownership of the Occupancy Tax Revenues, and (*xi*) a reservation of Ambac's right to assert administrative expense priority.

10.    Defendant AGC is a Maryland insurance company with its principal place of business at 1633 Broadway, New York, New York 10019.  AGC filed Claim Nos. 33081 and 57622 in the Commonwealth Title III Case on May 25, 2018 for the CCDA Bonds it allegedly insures (the "AGC Claim").[7]

---

[6] Because the three proofs of claim filed by Ambac are identical and duplicative, this complaint treats them as a single proof of claim.  All references to the "Ambac Claim" refer to all three separately filed proofs of claim.

[7] Because the proofs of claim filed by AGC are identical and duplicative, this Complaint treats them as a single proof of claim.  All references to the "AGC Claim" refer to both separately filed proofs of claim.

11.    The AGC Claim asserts a secured claim against the Commonwealth and alleges, among other things, (*i*) a statutory lien against the Occupancy Tax Revenues, (*ii*) perfected security interests against the Occupancy Tax Revenues, (*iii*) the Occupancy Tax Revenues are special revenues, (*iv*) breaches of contract and tort arising from the Commonwealth not appropriating and transferring the Occupancy Tax Revenues to CCDA, (*v*) violations of the Takings Clause, (*vi*) violations of the Contract Clause, (*vii*) violations of the Due Process Clause, (*viii*) violations of PROMESA section 407, (*ix*) subrogation to the claims of CCDA Bondholders, (*x*) claims to ownership of the Occupancy Tax Revenues, and (*xi*) a reservation of AGC's rights to assert administrative expense priority.

12.    Defendant FGIC is a New York stock insurance corporation with its principal place of business at 463 Seventh Avenue, 16th Floor, New York, New York 10018.  FGIC filed Claim No. 101243 in the Commonwealth Title III case on June 28, 2018 for the CCDA Bonds it allegedly insures (the "FGIC Claim").

13.    The FGIC Claim asserts a secured claim against the Commonwealth and alleges, (*i*) a statutory lien against the Occupancy Tax Revenues, (*ii*) perfected security interests against the Occupancy Tax Revenues, (*iii*) the Occupancy Tax Revenues are special revenues, (*iv*) breaches of contract and tort arising from the Commonwealth not appropriating and transferring the Occupancy Tax Revenues to CCDA, (*v*) violations of the Takings Clause, (*vi*) violations of the Contract Clause, (*vii*) violations of the Due Process Clause, (*viii*) violations of PROMESA section 407, (*ix*) subrogation to the claims of CCDA Bondholders, (*x*) claims to ownership of the Occupancy Tax Revenues, and (*xi*) a reservation of FGIC's rights to assert administrative expense priority.

14.     Defendant BNYM is a bank organized under the laws of the State of New York having its principal place of business at 225 Liberty Street, New York, New York 10007.  BNYM acts as the Fiscal Agent for the CCDA Bonds under the Trust Agreement.  Pursuant to the Bar Date Orders, BNYM filed a proof of claim in the Commonwealth Title III Case for the CCDA Bonds as a contingent and unliquidated claim, which was logged by Prime Clerk LLC ("Prime Clerk") as Claim No. 37319 (the "Bond Master Proof of Claim," and collectively with the other Defendants' proofs of claim, the "Proofs of Claim").

15.     The Bond Master Proof of Claim asserts a secured claim against the Commonwealth and alleges, (*i*) statutory liens against the Occupancy Tax Revenues, (*ii*) security interests against the Occupancy Tax Revenues, (*iii*) violations of the U.S. and Commonwealth Constitutions, (*iv*) violations of PROMESA section 407, (*v*) breaches of contract and tort arising from the Commonwealth not appropriating and transferring the Occupancy Tax Revenues to CCDA, and (*vi*) administrative expense priority.

**JURISDICTION AND VENUE**

16.     This Court has subject-matter jurisdiction over this adversary proceeding pursuant to PROMESA sections 306(a) and 306(b) because it arises under PROMESA Title III, in a Title III case, relates to the Commonwealth's underlying Title III case, and/or involves disputes over property of the Commonwealth.

17.     This Court has personal jurisdiction over each Defendant pursuant to PROMESA section 306(c).

18.     Venue is proper under PROMESA section 307 because this adversary proceeding is brought in a PROMESA Title III case pending in the District of Puerto Rico.

19.     This adversary proceeding is brought pursuant to Rules 3007, 7001(1), (2), (8), and (9) of the Federal Rules of Bankruptcy Procedure and Bankruptcy Code sections 502, 506, 509,

544(a), 550, 551, 552, 902, 927, and 928(b), made applicable to this proceeding pursuant to PROMESA section 301(a).

## FACTS

**A.**   ***The CCDA Enabling Act and the Hotel Occupancy Tax Act***

20.    CCDA is a public corporation created by Act 351-2000 (as codified at 23 L.P.R.A. §§ 6401-6475, the "Enabling Act") in order to support the development, administration, operation and maintenance of the Puerto Rico Convention Center.  *See* 23 L.P.R.A. § 6404.

21.    To finance the cost of the Puerto Rico Convention Center, the Enabling Act provides CCDA with powers and rights to "make and issue negotiable Bonds . . . [and] secure the payment of said Bonds . . . through the pledge, mortgage, assignment, trust indentures of . . . [among others] occupancy tax revenues."  *See* 23 L.P.R.A. §§ 6412(h), 6412(i).

22.    The Occupancy Tax Revenues consist of certain proceeds derived from Act No. 272-2003 (as codified at 13 L.P.R.A. § 2271-2272v, the "Room Occupancy Tax Act," also referred to as the "Hotel Occupancy Tax Act"), which imposes a hotel room occupancy tax (the "Occupancy Tax," and receipts from the Occupancy Tax, "Occupancy Tax Revenues") on all persons who operate any accommodation or facility regularly used by paying guests on a daily, weekly, or fractional basis.  *See* 13 L.P.R.A. § 2271o.

23.    As relevant here, the Hotel Occupancy Tax Act provides that:

a.    The Occupancy Tax shall be levied, charged and collected by the Puerto Rico Tourism Company (the "Tourism Company"), a public corporation of the Commonwealth.  *See* 13 L.P.R.A. § 2271o.

b.    Before the start of every fiscal year, the Government Development Bank of Puerto Rico ("GDB") shall determine and certify the amount necessary for the payment of the principal and interest due on the CCDA Bonds for the upcoming fiscal year. *See* 13 L.P.R.A. § 2271v(a).

c. The "sum determined and certified by the [GDB] . . . shall be deposited in a special account to be maintained by the [GDB] in the name of the [CCDA] for the benefit of bondholders . . . through monthly transfers." *See* 13 L.P.R.A. § 2271v(a).

d. The CCDA may "pledge . . . [the] tax collected which is to be deposited in [such] special account . . . as security for the payment of the principal and interest on the bond," so long as such "pledge or obligation [is] subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth . . . ." *See* 13 L.P.R.A. § 2271v(a).

24. Pursuant to these provisions, the Hotel Occupancy Tax Act specifies that (*i*) the Tourism Company levies and collects the Occupancy Tax, (*ii*) after collecting the Occupancy Tax Revenues, the Tourism Company is then required to transfer a certain portion of the Occupancy Tax Revenues to "a special account to be maintained by the [GDB] in the name of the [CCDA] for the benefit of the bondholders," and, (*iii*) thereafter, the GDB shall "transfer the amounts deposited in such special account to the trustees of the bondholders." *See* 13 L.P.R.A. § 2271v(a).

25. The Commonwealth is neither an issuer nor a guarantor of the CCDA Bonds. The Commonwealth is not a party to any of the CCDA Debt Documents (defined below). The CCDA Debt Documents do not grant a security interest against any property in which the Commonwealth has an interest.

26. The Enabling Act, the Trust Agreement, and the Supplemental Trust Agreement exclude any Commonwealth liability with respect to the payment of the CCDA Bonds. Specifically, the Enabling Act provides:

> The bonds issued by the Authority [CCDA] do not constitute a debt of the Government of the Commonwealth of Puerto Rico or any of its political subdivisions, and neither the Government of the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable for them, and said bonds shall be payable solely from those funds that have been set aside for their payment. The Authority [CCDA] shall not be deemed to be acting on behalf of, or that it has incurred any obligation to holders of any debt of the Government of the Commonwealth of Puerto Rico.

23 L.P.R.A. § 6446.

27.     The Trust Agreement similarly specifies:

"[The CCDA Bonds] shall be payable solely from Hotel Occupancy Tax Funds [which in turn is defined as "all Hotel Occupancy Tax Revenues that are deposited in the Transfer Account" by the Tourism Company] … that are received by the [CCDA] or the Trustee…."

"The Owners may not look to any other revenues of the [CCDA] for the payment of the Bonds…."

"[The CCDA Bonds] are special, limited obligations of the [CCDA] … and shall not constitute nor give rise to a pecuniary liability or a charge against the general credit of the [CCDA] or the Commonwealth….

[The CCDA Bonds] shall not be deemed or construed as creating a debt, liability or obligation of the Commonwealth, or any political subdivision of the Commonwealth, nor a pledge of the faith and credit of the Commonwealth…."

Trust Agreement § 2.03.

28.     Under this express exclusion of liability, the Commonwealth has no liability to the CCDA Bondholders (or others, including Defendants, who derive rights from the CCDA Bondholders) under any breach of contractual, statutory, or common law duties.  Nor may the Defendants or CCDA Bondholders obtain damages, or any monetary award, from the Commonwealth Treasury as a result of any alleged non-payment of the CCDA Bonds.

29.     Under the Hotel Occupancy Tax Act, however, the Commonwealth "agree[d] and [made] a commitment" with any bondholder that it will "make sure that the amounts that must be deposited in the special account . . . are deposited in such special account."  13 L.P.R.A. § 2271v(a).  That same commitment is included in the Trust Agreement (defined below).  Trust Agreement § 6.01(n)(iii).

30.     The commitment to "make sure" the Tourism Company deposits the required amounts in the Transfer Account, however, does not override the Commonwealth's express exclusion of liability, including any "pecuniary liability."  Moreover, the Commonwealth has no obligation itself to deposit any money in any special account.  The only entity required to deposit

funds into the special account (i.e., the Transfer Account) is the Tourism Company, since the Commonwealth has no such direct obligation.

31.     Even the obligation to "make sure" the Tourism Company satisfies its obligation to fund the Transfer Account is subject to Section 8 of Article VI of the Constitution of the Commonwealth, which allowed retention of the Occupancy Tax Revenues and, post-PROMESA, the purported obligations were preempted by PROMESA.   Moreover, to the extent CCDA Bondholders have a cognizable claim against the Commonwealth for its alleged breach of its purported obligation to "make sure" the Tourism Company fully funded the Transfer Account, the claim is unsecured because the Commonwealth did not make any pledge of property to support its purported obligation, and in fact, expressly excluded all liability on the CCDA Bonds.

**B.      The CCDA Bonds and the CCDA Debt Documents**

32.     Pursuant to the authority granted to the CCDA by the Enabling Act, CCDA issued CCDA Bonds in the amount of $468,800,000.   There is currently approximately $439,678,619 outstanding on such Bonds, including $6,288,548 in interest that accrued as of May 3, 2017 (the Petition Date), and $37,135,000 in matured and unpaid principal that has accrued on the CCDA Bonds between May 3, 2017 and the date of this Complaint.

33.     The Bonds are governed by four agreements:   (*i*) the March 24, 2006 Assignment and Coordination Agreement between GDB and the Tourism Company (the "Assignment Agreement"); (*ii*) the March 24, 2006 Pledge and Assignment Agreement among the CCDA, GDB, and the bond trustee (the "Pledge Agreement"); (*iii*) the March 24, 2006 Trust Agreement between CCDA and the bond trustee (the "Trust Agreement"); and (*iv*) the March 24, 2006 First Supplemental Trust Agreement between the CCDA and the bond trustee (the "Supplemental Trust Agreement").   These four documents are referred to herein collectively as the "CCDA Debt Documents."   The Commonwealth is not a party to any of the CCDA Debt Documents.   The

Assignment Agreement, Pledge Agreement, Trust Agreement, and Supplemental Trust Agreement are attached hereto as **Exhibits A**, **B**, **C**, and **D**, respectively.

34.    As detailed below, the CCDA Debt Documents provide for the following flow of funds: (1) the Tourism Company—not the Commonwealth—levies and collects the Occupancy Tax Revenues, (2) the Tourism Company transfers a specified amount of the Occupancy Tax Revenues to the Transfer Account (defined below) held by the GDB, (3) the GDB transfers moneys deposited in the Transfer Account to the Pledge Account (defined below), (4) the GDB then transfers moneys deposited in the Pledge Account to a series of accounts created by the Trust Agreement and held by the bond trustee.  The CCDA Debt Documents do not (and could not) provide for security interests against any of the Commonwealth's property.

## 1.    *The Assignment Agreement*

35.    The Assignment Agreement was entered into by and between the Puerto Rico Tourism Company and GDB.

36.    Section 1 of the Assignment Agreement provides: "[t]he Tourism Company hereby creates a special fund called the Assignment and Coordination Agreement Holding Fund" (the "Holding Fund").  The Agreement states "[a]ll Hotel Occupancy Tax Revenues will be deposited, as collected, into the Holding Fund."  Assignment Agreement, § 1.

37.    Section 2 of the Assignment Agreement segregates the Holding Fund into two accounts:  the Transfer Account (the "Transfer Account") and the Surplus Account (the "Surplus Account").  As reflected in the remainder of the Assignment Agreement, no rights are conveyed to the GDB, the CCDA, CCDA Bondholders, or other persons or entities with respect to Retained Occupancy Tax Revenues

38.    Section 3 of the Assignment Agreement provides that, "[o]n or before May 30th of each Fiscal Year, GDB will determine and certify to the [CCDA], the Tourism Company and the

Trustee . . . the amount necessary" to enable the CCDA to pay principal and interest on the CCDA Bonds, among other obligations of the CCDA, for the upcoming year. *Id.* § 3.

39.     Section 4 of the Assignment Agreement provides that, "[o]n a monthly basis, all Hotel Occupancy Tax Funds received by the Tourism Company shall be deposited into the Transfer Account until (i) 1/10 of the Required Payments has been met and (ii) any deficiencies in prior payment periods have been met . . . ." *Id.* § 4.  Section 4 also specifies that "the Tourism Company shall deposit any excess funds into the Surplus Account." *Id.*

40.     Section 5 of the Assignment Agreement states that "[t]he Tourism Company hereby acknowledges, and agrees to comply with, its obligations under the Occupancy Tax Act" to deposit the required sums in the Transfer Account.  Section 5 does not purport to create a trust relationship, or otherwise purport to convey any interest in Occupancy Tax Revenues the Tourism Company levies and collects but does not deposit in the Transfer Account with the GDB.  Section 5 of the Assignment Agreement may (if improper actions take place) give rise, at most, to a claim for damages against the Tourism Company, but it does not purport to convey any property interest— not from the Tourism Company and certainly not from the Commonwealth. *Id.* § 5.

41.     Section 6 of the Assignment Agreement specifies that the only property rights the Tourism Company purports to grant to GDB are interests in the amounts deposited in the Transfer Account.  Specifically, Section 6, which sets forth the Assignment Agreement's sole purported granting language, provides that:

> The Tourism Company hereby irrevocably pledges, assigns, transfers, conveys, grants, and sets over to GDB all rights it may legally have in amounts deposited in the Transfer Account collected by the Tourism Company as required under the provisions of Section 31 of the Occupancy Tax Act up to the amounts certified by GDB . . . .

*Id.* § 6.  Section 6 limits its scope to amounts that have actually been deposited in the Transfer Account.

42.     Neither Section 6 nor any other provision of the Assignment Agreement grants GDB *property* rights in Retained Occupancy Tax Revenues.

43.     The Assignment Agreement reflects that the Tourism Company only consents to property actually deposited in the Transfer Account and transferred to the GDB being further pledged to the CCDA Bondholders.  Section 7 of the Assignment Agreement provides that: "[t]he Tourism Company hereby expressly acknowledges and consents to GDB entering into [the] Pledge Agreement . . . under which the Hotel Occupancy Tax Funds transferred to GDB hereunder will be further pledged by" the CCDA.  *Id*. § 7.  Section 7 provides only that funds actually deposited in the Transfer Account may be further pledged to CCDA Bondholders.

44.     The term "Hotel Occupancy Tax Funds" is defined in the Trust Agreement, as made applicable to the Assignment Agreement pursuant to the second preambular paragraph of the Assignment Agreement, as "all Hotel Occupancy Tax Revenues that are deposited in the Transfer Account on and after the date hereof."  Assignment Agreement at 1; Trust Agreement § 1.01.

45.     Neither Section 7 nor any other provision of the Assignment Agreement permits the pledging to CCDA Bondholders of: (*i*) Occupancy Tax Revenues not actually deposited in the Transfer Account; (*ii*) the Tourism Company's (or any other entity's) rights in any other deposit accounts, including the Surplus Account; or (*iii*) GDB's rights in any account other than the Transfer Account.

46.     The Assignment Agreement provides "[n]otwithstanding anything herein to the contrary, the assignment, transfer and pledge of the Hotel Occupancy Tax Funds is made subject to the rights of the Commonwealth of Puerto Rico under Section 8 Article VI of the Constitution of the Commonwealth of Puerto Rico."  Assignment Agreement § 11.

47.     Any property interest conveyed by the Assignment Agreement, if any, is limited to funds actually deposited in the Transfer Account, and those funds are subject to the Commonwealth's superseding right to use the funds pursuant to Section 8 Article VI of the Commonwealth Constitution.

48.     The Commonwealth is not a party to the Assignment Agreement, the Commonwealth is not required to transfer any money to GDB or CCDA, and the Assignment Agreement does not (and could not) grant a security interest against any property in which the Commonwealth has an interest.

**2.    *The Pledge Agreement***

49.     The Pledge Agreement was entered into by and among CCDA, GDB, and JPMorgan Chase Bank, N.A. as bond trustee.

50.     Pursuant to Section 2(a) of the Pledge Agreement, "GDB hereby creates and establishes a special and irrevocable account designated as the 'Hotel Occupancy Tax Pledge Account'" (the "Pledge Account") "to be held in trust by GDB on behalf of [CCDA] for the benefit of the Owners of the Bonds . . . ."  Pledge Agreement § 2(a).

51.     Section 2(b) of the Pledge Agreement states that it grants a "security interest" against the Pledge Account.  Specifically, Section 2(b) provides that:

> Each of GDB and [CCDA] does hereby grant, bargain, convey, assign, mortgage and pledge a security interest to the Trustee . . . subject to the provisions of section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico . . . (i) all Hotel Occupancy Tax Funds received from the Tourism Company, (ii) all moneys deposited in or required to be deposited in the Pledge Account pursuant to the provisions of this Pledge Agreement, and (iii) all right title and interest of GDB in the Assignment Agreement.

Pledge Agreement § 2(b).

52.     None of the provisions of Section 2(b) of the Pledge Agreement purport to create a security interest against Retained Occupancy Tax Revenues (nor could they).

53.     With respect to the Section 2(b)(i), the term "Hotel Occupancy Tax Funds" is defined in the Trust Agreement, as made applicable to the Pledge Agreement pursuant to Section 1 of the Pledge Agreement, as "all Hotel Occupancy Tax Revenues that are deposited in the Transfer Account on and after the date hereof."  Pledge Agreement § 1; Trust Agreement at 7. Section 2(b)(i) is limited in scope to funds the GDB or the CCDA "receive" from the Tourism Company, which is likewise limited to amounts actually deposited in the Transfer Account. Section 2(b)(i) of the Trust Agreement does not purport to create a security interest against any funds not actually deposited in the Transfer Account.

54.     With respect to Section 2(b)(ii), the Pledge Agreement only requires that funds actually deposited in the Transfer Account be deposited into the Pledge Account.  *See* Pledge Agreement § 3 (The "GDB . . . agrees . . . to deposit or cause to be deposited into the Pledge Account . . . all Hotel Occupancy Tax Funds received from the Tourism Company.").  Accordingly, Section 2(b)(ii) does not create a security interest against any funds not actually deposited in the Transfer Account or Pledge Account.

55.     With respect to Section 2(b)(iii), any security interest is limited to GDB's right, title and interest in the Assignment Agreement, which is discussed above, and does not include a security interest against Retained Occupancy Tax Revenues.

56.     Section 3(a) of the Pledge Agreement sets forth the sole obligation of the GDB to fund the Pledge Account.  GDB is contractually obligated to transfer amounts deposited in the Transfer Account to the Pledge Account:

> GDB hereby agrees . . . to deposit or cause to be deposited into the Pledge Account, all Hotel Occupancy Tax Funds received from the Tourism Company as received but in no event later than . . . the next Business Day immediately following the Business Day on which such Hotel Occupancy Tax Funds are received by GDB.

Pledge Agreement § 3(a).

57.     The pledge contained in the Pledge Agreement is "subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico."   Pledge Agreement § 2(b).

58.     The Commonwealth is not a party to the Pledge Agreement, the Commonwealth is not required to transfer any money t to GDB or CCDA, and the Pledge Agreement does not grant a security interest against any property in which the Commonwealth has an interest.

**3.     *The Trust Agreement***

59.     The Trust Agreement was entered into by and between CCDA and JPMorgan Chase Bank, N.A. as the bond trustee for the CCDA Bondholders.

60.     The Trust Agreement provides the CCDA Bonds does not (and could not) provide a security interest against Retained Occupancy Tax Revenues,  Specifically, the Granting Clause of the Trust Agreement provides the CCDA grants and conveys "all . . . title or interest" it has (if any) in the "following described property":

I.      [A]ll Hotel Occupancy Tax Funds;

II.     All funds, accounts and all money from time to time held by the Trustee under this Trust Agreement or any Supplemental Trust Agreement and any fund or account other than (i) the Rebate Fund, (ii) any Defeasance Escrow Account and (iii) any fund or account created by a Supplemental Trust Agreement that is expressly excluded from the Trust Estate;

III.    [A]ll right, title and interest of the Authority [CCDA] acquired by the Trustee for the benefit of the Owners from GDB with respect to its rights under the Pledge Agreement, and any money from time to time held thereunder including the Pledge Account created thereunder;

IV.     [A]ll right, title and interest of GDB acquired by the Trustee for the benefit of the Owners from GDB with respect to its rights under the Assignment Agreement, including the Transfer Account created thereunder, and any money from time to time held therein;

V.      [A]ny and all other property, revenues or funds from time to time hereafter by delivery or by writing of any kind specially granted, assigned or pledged as and for additional security hereunder, by the Authority or anyone else, in

16

favor of the Trustee, which is hereby authorized to receive any and all such property at any and all times and to hold and apply the same subject to the terms hereof.

Trust Agreement at 1-2 (the "Granting Clause").

61.    Because CCDA does not obtain rights to Retained Occupancy Tax Revenues, the Granting Clauses do not—and cannot—convey any interests in such amounts.  CCDA does not levy, charge, or collect Occupancy Tax Revenues.  Nor do any of the CCDA Debt Documents purport to grant CCDA any property interest in any Occupancy Tax Revenues before they are transferred to at least the Transfer Account.

62.    The terms of the Granting Clause limit the security interest granted CCDA Bondholders, and does not (and could not) reach the Retained Occupancy Taxes:

a.    Granting Clause I only conveys a security interest against CCDA's rights in "Hotel Occupancy Tax Funds," which is defined as "all Hotel Occupancy Tax Revenues that are deposited in the Transfer Account on and after [March 24, 2006]."  Trust Agreement § 1.01.  Granting Clause I does not create a security interest against funds not actually deposited in the Transfer Account.

b.    Granting Clause II only conveys a security interest against "[a]ll funds, accounts, and all money from time to time held by the Trustee under the Trust Agreement." *Id.* at 2.  The Trustee does not hold or have possession, custody, or control over any Retained Occupancy Tax Revenues.  Granting Clause II does not (and could not) grant a security interest against Retained Occupancy Tax Revenues.

c.    Granting Clause III only conveys a security interest against "right, title and interest of [CCDA] acquired by the Trustee . . . from GDB with respect to its rights under the Pledge Agreement . . . including the Pledge Account created thereunder." *Id.* The Pledge Agreement, however, does not convey any rights in Retained

Occupancy Tax Revenues (nor could it).  Granting Clause III does not (and could

not) create a security interest against Retained Occupancy Tax Revenues.

d.  Granting Clause IV only conveys a security interest against "right, title [or] interest

of GDB acquired by the Trustee . . . under the Assignment Agreement, including

the Transfer Account."  *Id.*  Since the GDB does not acquire rights (if any) in

Retained Occupancy Tax Revenues, Granting Clause IV does not create a security

interest against Retained Occupancy Tax Revenues.  In addition, because the GDB

is not a party to the Trust Agreement, the purported grant by CCDA of any rights

of GDB is ineffective.

e.  Granting Clause V only conveys a security interest against CCDA property subject

to an express, written grant or pledge by the CCDA as "additional security."  There

is no "additional security" pledged under the Trust Agreement.

63.  The second "Further Witnesseth" clause following the Granting Clause specifies

"that (i) the Hotel Occupancy Tax Funds pledged pursuant to Granting Clauses I, II, III, IV, and

V of this Trust Agreement shall be valid and binding from the time such funds are transferred to

GDB . . . ."  Trust Agreement at 2.  The Trust Agreement recognizes that no security interests

attach against any property until it is transferred to GDB.

64.  Trust Agreement section 2.03(a) specifies that the CCDA Bonds are non-recourse

and can only be paid from the specific, pledged accounts detailed above:

> Notwithstanding any other provision of this Trust Agreement (a) The Bond
> Payments shall be payable solely from Hotel Occupancy Tax Funds and earnings
> on the funds and accounts established under this Trust Agreement that are received
> by the Authority or the Trustee and moneys held in the Bond Payment Fund. The
> Owners may not look to any other revenues of the Authority for the payment of the
> Bonds. *Id.* § 2.03(a).

Similarly, section 2.03(b) provides:

> All financial obligations of the Authority under this Trust Agreement, every
> Supplemental Trust Agreement and the Bonds (i) are special, limited obligations of
> the Authority payable solely from the Trust Estate[8] and shall not constitute nor give
> rise to a pecuniary liability or a charge against the general credit of the Authority
> or the Commonwealth and (ii) shall not be deemed or construed as creating a debt,
> liability or obligation of the Commonwealth, or any political subdivision of the
> Commonwealth, nor a pledge of the faith and credit of the Commonwealth or any
> political subdivision or municipality of the Commonwealth within the meaning of
> the Constitution or the laws of the Commonwealth concerning or limiting the
> creation of indebtedness by the Commonwealth or any political subdivision of the
> Commonwealth.

*Id*. § 2.03(b).  CCDA Bondholders are only entitled to seek payment from the specific funds and

accounts against which they are granted a security interest by the Granting Clause, and cannot seek

payment on their CCDA Bonds from either (*i*) any other property of CCDA or (*ii*) any property of

the Commonwealth.

65.    Section 5.01 of the Trust Agreement, entitled "Application of Hotel Occupancy Tax

Funds," provides that "[a]ll Hotel Occupancy Tax Funds received by the Trustee shall be subject

to the assignment and lien hereof upon receipt thereof as set forth in the Granting Clauses hereof."

*Id*. § 5.01.  This provision limits the scope of any "assignment and lien" to Hotel Occupancy Tax

Funds received by the Trustee.

66.    The Commonwealth is not a party to the Trust Agreement, nor does the Trust

Agreement grant a security interest against any property in which the Commonwealth has an

interest (nor could it).

### 4.    *The Supplemental Trust Agreement*

67.    The Supplemental Trust Agreement was entered into by and between CCDA and

JPMorgan Chase Bank, N.A. as bond trustee to facilitate the issuance of the Series A Bonds.  The

Supplemental Trust Agreement authorizes the issuance of the Series A Bonds (§ 2), specifies the

---

[8]    Trust Estate "means the property granted to the Trustee the Granting Clauses" of the Trust Agreement.  *See* Trust
Agreement § 1.01.

maturity dates and interest rates of the Series A Bonds (§ 3), and specifies the form of bond to be used for the Series A Bonds (§ 4), among other things.  The Supplemental Trust Agreement does not alter the scope of the security interest granted by the Trust Agreement, if any, or otherwise impose any liability with respect to the Commonwealth on the CCDA Bonds.

68.     The Supplemental Trust Agreement contains the form of the Series A Bonds that were ultimately issued.  The form bond provides (*i*) the "Trust Agreement constitutes the contract between the registered owner of [the] bond and the [CCDA]," and (*ii*) the "Bond is only evidence of such contract and, as such, it is subject in all respects to the terms of the Trust Agreement." Supplemental Trust Agreement at 7.

69.     The form bond provides that:

a.   All bond payments are "payable solely from the Trust Estate," and are "subject to Section 8 of Article VI of the Constitution of the Commonwealth."

b.   CCDA Bondholders "may not look to any other revenues of the [CCDA] for the payment of the Bonds."

c.   The bonds "shall not be deemed to constitute a debt of the Commonwealth of Puerto Rico or any of its political subdivisions."

d.   "[N]either the Commonwealth of Puerto Rico nor any such political subdivisions shall be liable thereon."

e.   The bond shall not be "payable out of any funds of the [CCDA] other than those pledged for the payment thereof pursuant to the Trust Agreement."

f.   "All financial obligations of the [CCDA] … (i) are special, limited obligations of the Authority payable solely from the Trust Estate and shall not constitute nor give rise to a pecuniary liability or a charge against the general credit of the

[CCDA] or the Commonwealth, and (ii) shall not be deemed or construed as
creating a debt, liability or obligation of the Commonwealth, or any political
subdivision of the Commonwealth."

*Id*.

## C.   *No Security Interests or Statutory Liens Against the Commonwealth*

70.     Neither the Enabling Act nor the Room Occupancy Tax Act gives rise to a statutory
lien.  Rather, the Enabling Act permits CCDA to pledge the Hotel Occupancy Tax Revenues it
receives without requiring that it grant a security interest against them.  *See* 23 L.P.R.A. §
6441(e)(1)-(2).

71.     23 L.P.R.A. § 6441(d) provides:

Any pledge of the Authority shall be binding from the moment that it was made,
and any funds or property thus pledged shall be subject to the lien of the pledge
without the need of its actual delivery.  The lien on the pledge of the Authority shall
be binding on any party that has a claim for damages, contracts or other claims
against the Authority, regardless of the fact they have been duly served.  No
instrument that creates the pledge shall have to be recorded in a registry to be
effective against third parties.

*See also* 23 L.P.R.A. § 6441(e)(1)-(2) (authorizing, but not requiring, bond resolutions to grant
security interests in revenues).  Any "pledge of [CCDA]" did not (and could not) extend to
Retained Occupancy Tax Revenues.  Even if any funds of the Commonwealth, the Tourism
Company, or the GDB were pledged they are not subject to 23 L.P.R.A. § 6441(d).

72.     The Enabling Act, the Hotel Occupancy Act, and the CCDA Debt Documents do
not convey a statutory lien on, or a security interest against, Retained Occupancy Tax Revenues,
including any funds that allegedly should have been, but were not, deposited in the Transfer
Account.  The CCDA Debt Documents do not grant a security interest against Retained Occupancy
Tax Revenues, including any funds that allegedly should have been, but were not, deposited in the
Transfer Account.

21

73.     The Commonwealth did not grant a security interest against any of its property to CCDA Bondholders.  Any claim that a CCDA Bondholder has a security interest against property of the Commonwealth also fails because such purported security interest has not been perfected.

74.     Commonwealth law governs the effectiveness and perfection of security interests.  *See* 19 L.P.R.A. § 2251.

75.     Under Article 9, a financing statement must also be filed to perfect any purported security interest against the Commonwealth, the Tourism Company's or GDB's rights to receive Occupancy Tax Revenues.  19 L.P.R.A. § 2260(a).

76.     Any property of the Commonwealth, Tourism Company and GDB is outside the scope of Section 6441(d) of the Enabling Act.  Defendants have no control over any of the Commonwealth's accounts, and no financing statements were filed against the Commonwealth regarding the CCDA Bonds.  Any security interest against the Commonwealth's property is unperfected.

**D.      *The Retention of Occupancy Tax Revenues under the Commonwealth Constitution***

77.     All obligations related to the CCDA Bonds—including any alleged obligation to "make sure" the Tourism Company appropriated and transferred Occupancy Tax Revenues into the Transfer Account—were always expressly subject to Section 8 of Article VI of the Commonwealth Constitution.[9]

---

[9]  *See, e.g.,* 13 L.P.R.A. § 2271v(a) ("Such a pledge or obligation [of the Occupancy Tax Revenues] shall be subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico."); Assignment Agreement § 11 ("Notwithstanding anything herein to the contrary, the assignment, transfer and pledge of the Hotel Occupancy Tax Funds is made subject to the rights of the Commonwealth of Puerto Rico under Section 8 Article VI of the Constitution of the Commonwealth of Puerto Rico"); Pledge Agreement § 2(b) ("Each of GDB and the Authority hereby grant, bargain, convey, assign, mortgage and pledge a security interest to the Trustee, as trustee under the Trust Agreement and for the benefit of the Owners of the Bonds, free and clear of all prior or parity liens, pledges and security interests, subject to the provisions of Section 8 Article VI of the Constitution of the Commonwealth of Puerto Rico . . . ."); Trust Agreement § 5.01 ("The assignment and pledge of Hotel Occupancy Tax Funds to the Trustee for the benefit of the Owners under the Granting Clauses of this Trust Agreement are

78.     The Commonwealth Constitution allows the Commonwealth to use its resources when necessary to protect the life, health, and general welfare of the people of Puerto Rico.  Section 19, Article II of the Commonwealth Constitution provides, "[t]he power of the Legislative Assembly [of Puerto Rico (the "Legislative Assembly")] to enact laws for the protection of the life, health and general welfare of the people shall likewise not be construed restrictively."  P.R. Const. art. II, § 19.  Section 18 of Article II of the Commonwealth Constitution grants the Legislative Assembly with authority to approve laws for grave emergency situations when there is a clear danger to public health and safety or to the delivery of essential services.  P.R. Const. art. II, § 18.

79.     All Commonwealth statutory or contractual duties (including any obligations with respect to the CCDA Bonds), if any, are subject to Article VI, Section 8, Article II, Section 18, and Article II, Section 19 of the Commonwealth Constitution.

80.     Pursuant to Section 8 Article VI of the Commonwealth Constitution, on November 30, 2015, the then-Governor of the Commonwealth issued Administrative Bulletin OE-2015-046 (the "First Emergency Order," attached hereto as **Exhibit E**).

81.     The First Emergency Order ordered the "Tourism Company . . . to transfer all monies collected [under the Hotel Occupancy Tax Act that would otherwise be used to fund the Transfer Account] to the Treasury Department."  *See* First Emergency Order at 3.   The Treasury was then instructed to "retain only those funds necessary to make . . . payments on the public debt, while continuing to provide essential services to safeguard the public health, safety, education and

---

intended to and shall constitute a first priority lien on such Hotel Occupancy Tax Funds; provided, however, that such assignment and pledge of Hotel Occupancy Tax Funds is subject to the provisions of Section 8 of Article VI of the Constitution"); Supplemental Trust Agreement § 4 ("The Bond Payments shall be payable solely from the Trust Estate, including moneys held in the Bond Payment Fund, subject to Section 8 of Article VI of the constitution of the Commonwealth.").

welfare of the residents of Puerto Rico." *Id*.  The First Emergency Order, however, makes clear that the Occupancy Tax Revenues transferred to the Treasury must "be kept in a separate account and shall be used only to make public debt payments as they become due," and as such, these revenues "constitute[] available resources subject to Article VI, Section 8. of the Constitution of the Commonwealth of Puerto Rico." *Id*.

82.     Under the First Emergency Order, the Commonwealth authorized the use of its own funds to "safeguard" the public welfare and, to the extent any funds remain available, pay down public debt.

83.     The First Emergency Order was an exercise of Commonwealth Constitutional authority, and superseded any Commonwealth obligation to "make sure" the Transfer Account was fully funded.  The Commonwealth's actions pursuant to the First Emergency Order were in accordance with any contractual, statutory, or other obligations, if any, it had with respect to the CCDA Bonds.

84.     Beginning November 30, 2015, the Tourism Company stopped depositing the Occupancy Tax Revenues with GDB in a specific account called the "Transfer Account," and instead has since retained the majority of the those revenues in a separate Tourism Company account at FirstBank (such retained Occupancy Tax Revenues, together with any other Occupancy Tax Revenues not transferred to GDB or CCDA, the "Retained Occupancy Tax Revenues").

85.     On December 8, 2015, the Governor issued Administrative Bulletin OE-2015-49 (the "Second Emergency Order," attached hereto as **Exhibit F**, and together with the First Emergency Order, the "Emergency Orders").  The Second Emergency Order implemented the First Emergency Order.

24

86.    On April 6, 2016, pursuant to Article II, Section 19 of the Commonwealth Constitution, the Governor signed into law the *Puerto Rico Emergency Moratorium and Financial Rehabilitation Act* (the "Moratorium Act," attached hereto as **Exhibit G**).  The Moratorium Act, among other things, authorized the Governor to declare a temporary hold on debt service payments, stay creditor remedies resulting from the hold, and allow the Governor to order the suspension or modification of statutory or other obligations to transfer funds to pay or secure any covered obligation.  *See id.* at 6.

87.    Subsequently, the Governor issued Moratorium Order 18 (Administrative Bulletin OE-2016-18), Moratorium Order 30 (Administrative Bulletin EO-2016-30) and Moratorium Order 31 (Administrative Bulletin EO-2016-31) (together the "Moratorium Orders," attached hereto as **Exhibits H**, **I**, and **J**, respectively).[10]  The Moratorium Orders facilitated the effective management of the Commonwealth's ongoing fiscal emergency by declaring a state of emergency and prioritizing the provision of essential services for the health, safety and welfare of the residents of the Commonwealth over debt service.  Through the Moratorium Orders, the Governor ordered the retention of certain funds, including, but not limited to, the Occupancy Tax Revenues, to provide essential services for the people of Puerto Rico.  *See* OE-2016-18 at 5; *see also* EO-2016-30 at 2-3; *see also* EO-2016-31 at 2-3.

## E.    *Preemption of Commonwealth Law Conditionally Allocating the Occupancy Tax Revenues to CCDA*

88.    Any statutory obligation the Tourism Company had to deposit Occupancy Tax Revenues in the Transfer Account, and any obligation the Commonwealth may have had to "make

---

[10] The Emergency Orders, the Moratorium Act, and the Moratorium Orders are collectively referred to herein as the "Pre-PROMESA Retention Actions."

sure" the Tourism Company made any required deposits, after June 30, 2016 are preempted by PROMESA.

### 1.    *PROMESA*

89.    PROMESA became effective on June 30, 2016.  PROMESA section 4 provides "[t]he provisions of [PROMESA] shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with [PROMESA]."

90.    PROMESA section 405(m)(1), (2) and (3) provide, among other things, (*i*) there is a fiscal emergency in Puerto Rico, (*ii*) the Commonwealth is unable to provide its citizens with effective services, and (*iii*) the fiscal emergency has contributed to the accelerated outmigration of residents and businesses.

### 2.    *The Commonwealth Title III Case*

91.    On May 3, 2017 (the "Petition Date"), the Oversight Board, at the request of the Governor, issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof (the "Commonwealth Title III Case").

92.    Pursuant to PROMESA, the Oversight Board is the sole representative of each Title III debtor (including the Commonwealth), and has certain powers of a chapter 11 trustee.  *See* PROMESA §§ 301(c)(7), 315(b).  Only the Oversight Board may propose a plan of adjustment of the debts of the Commonwealth.  PROMESA § 312.  Neither the CCDA nor the Tourism Company have commenced their own title III cases under PROMESA.

### 3.    *The Fiscal Plans and the Retention of the Occupancy Tax Revenues*

93.    PROMESA section 201 gives the Oversight Board the exclusive power to certify fiscal plans for the Commonwealth and its instrumentalities.  PROMESA section 202(e)(3)(C) gives the Oversight Board the exclusive power to certify budgets for the Commonwealth and its

instrumentalities over all appropriations, which shall be deemed "in full force and effect" once certified.

94.     Between March 13, 2017 and May 9, 2019, the Oversight Board certified eight fiscal plans for the Commonwealth.   None of the fiscal plans permitted the transfer of the Occupancy Tax Revenues to GDB or CCDA.

95.     On June 30, 2018, the Oversight Board certified a budget for the Commonwealth for Fiscal Year 2019 (the "Certified FY19 Budget").  The Certified FY19 Budget did not include an appropriation or transfer of Occupancy Tax Revenues to GDB or the CCDA.

96.     On May 9, 2019, the Oversight Board certified the current fiscal plan for the Commonwealth ("May 2019 Fiscal Plan"), attached hereto as **Exhibit K**.  The May 2019 Fiscal Plan did not provide for the transfer of the Occupancy Tax Revenues to CCDA or GDB.

97.     On June 30, 2019, the Oversight Board certified a budget for the Commonwealth for the current Fiscal Year 2020 (the "Certified FY20 Budget," and together with the Certified FY19 Budget, the "Budgets").  The Certified FY20 Budget did not include an appropriation or transfer of Occupancy Tax Revenues to CCDA or the GDB.

98.     On September, 27, 2019, the Oversight Board filed a proposed *Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* in the Commonwealth Title III Case (the "Commonwealth Plan").  Case No. 17-BK-3283-LTS, ECF No. 8765.

99.     The Commonwealth Plan proposes to pay certain claims based on the Commonwealth's general obligation bonds at a level less than the full amount of their claims, even after taking into account the retention of the Occupancy Tax Revenues.  *See* Plan Arts. X-XXVIII (providing for varied levels of impairment to general obligation bond claims).

## DEFENDANTS' PROOFS OF CLAIM

100.     On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* (the "Bar Date Motion").  Case No. 17-BK-3283-LTS, ECF No. 2255.  In the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Case No. 17-BK-3283-LTS, ECF No. 2521.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered an order (the "Extension Order," and together with the Initial Bar Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).  Case No. 17-BK-3283-LTS, ECF No. 3160 ¶ 2.

101.     Pursuant to the Bar Date Orders, the "indenture trustees, fiscal agents, or any similar agent or nominee . . . for each respective series of bonds issued by a Debtor or non-Debtor . . . may file a master proof of claim . . . against the applicable Debtor on behalf of themselves and all holders of bond claims for the respective series of bonds . . . ."  Initial Bar Date Order ¶ 5.a.

102.     Pursuant to the Bar Date Orders, BNYM filed the Bond Master Proof of Claim in the Commonwealth Title III Case.  The other defendants also filed their respective Proofs of Claim in the Commonwealth Title III Case.

## A.     *Disallowance of All Proofs of Claim Because of the CCDA Bonds' Express Exclusion of Commonwealth Liability*

103.     Defendants' Proofs of Claim must be disallowed in their entirety because Defendants do not have any right to payment from the Commonwealth in connection with the CCDA Bonds, and do not possess an allowable claim against the Commonwealth.

28

104.    Pursuant to the terms of the Enabling Act and the CCDA Debt Documents, the

CCDA Bonds are not a debt of the Commonwealth and the Commonwealth has no liability thereon.

23 L.P.R.A. § 6446 ("The bonds . . . do not constitute a debt of the Commonwealth . . . and said

bonds shall be payable solely from those funds that have been set aside for their payment."); Trust

Agreement §§ 2.03, 6.02 ("All financial obligations of [CCDA] under this Trust Agreement, every

Supplemental Trust Agreement and the Bonds . . . shall not be deemed or construed as creating a

debt, liability, or obligation of the Commonwealth . . . "); Supplemental Trust Agreement at 7 ("All

financial obligations of [CCDA] under this Trust Agreement, every Supplemental Trust

Agreement [and] the Bonds . . . are special, limited obligations of [CCDA] . . . and shall not

constitute nor give rise to a pecuniary liability or charge against the general credit of . . . the

Commonwealth . . . .").

105.    The CCDA Bonds are non-recourse bonds, and payment for such bonds is

exclusively limited to disbursements from the "Trust Estate" in which the CCDA Bondholders

were granted a security interest (if a security interest was granted at all) pursuant to the Trust

Agreement.  The CCDA Debt Documents do not grant any security interest against Retained

Occupancy Tax Revenue, and the Commonwealth has no obligation itself to fund the Transfer

Account.  None of the Commonwealth's property is subject to a security interest in favor of

Defendants.

106.    The Commonwealth is not a party to the Assignment Agreement, the Pledge

Agreement, the Trust Agreement or any other agreement related to the Occupancy Tax Revenue.

The Commonwealth is not liable for breach of any contractual, statutory, or common law duty

owed by the Tourism Company, the CCDA, the GDB, or other entities other than the

Commonwealth itself.

107.     The Commonwealth did not breach any obligation it owed with respect to the funding of the Transfer Account.  As relevant to the Proofs of Claim, the only obligation owed by the Commonwealth is the obligation to "make sure" funds required to be deposited in the Transfer Account by the Tourism Company were deposited.  The Commonwealth, however, did not breach that obligation.  All amounts required to be deposited in the Transfer Account were deposited in such account because the obligation to make such deposits was subject to the Commonwealth Constitution and, after June 30, 2016, preempted by PROMESA.

108.     Any instruction to cease funding of the Transfer Account was a valid exercise of governmental power, and superseded any obligation to "make sure" additional funds were deposited in the Transfer Account.  If funds were not deposited into the Transfer Account, the Commonwealth had no pecuniary liability to the CCDA Bondholders due to the express statutory and contractual exclusion of Commonwealth liability.  Even if CCDA bondholders have a valid claim against the Commonwealth, and they do not, it is merely a prepetition unsecured claim.

**B.**     ***Defendants' Lack of Subrogation, Reimbursement, or Contribution Rights***

109.     Under Bankruptcy Code section 509(a), an insurer of the CCDA Bonds only has an allowable subrogation claim for CCDA Bond claims in the amount that such insurer has paid to CCDA Bondholders.

110.     Pursuant to Bankruptcy Code section 509(c), Defendants' allowable subrogation claims are subordinated to remaining unpaid CCDA Bondholders' claims

**C.**     ***The Pre-PROMESA Retention of Occupancy Tax Revenues was Permitted by Commonwealth Law and the CCDA Debt Documents***

111.     The Proofs of Claim assert breaches of the CCDA Debt Documents, claims based on alleged violations of the U.S. and Commonwealth Constitutions, Commonwealth statutory law, and other common law claims, based on the Tourism Company not funding the Transfer Account

30

with Occupancy Tax Revenues.  None of these alleged breaches or violations give rise to a secured or unsecured claim against the Commonwealth.

112.    The obligation of the Tourism Company to deposit funds into the Transfer Account, as well as all other obligations related to the CCDA Bonds, were expressly subject to Article VI, Section 8 of the Commonwealth Constitution.

113.    Pre-PROMESA, pursuant to the Emergency Orders, including the November 30, 2015 First Emergency Order, and the Moratorium Act, not funding the Transfer Account was permissible under applicable law, and no further funding of the Transfer Account was required.

114.    The Commonwealth was authorized to have the Tourism Company cease transferring the Occupancy Tax Revenues to GDB pursuant to the retention powers provided in Article VI, Section 8 of the Commonwealth Constitution.  Such retention of the Occupancy Tax Revenues was not in violation of Commonwealth law.

**D.**     ***PROMESA Pre-Empts Any Commonwealth Law Requiring Transfer of the Retained Occupancy Tax Revenues to GDB or CCDA***

115.    Once PROMESA was enacted into law, any Commonwealth laws inconsistent with PROMESA, or that do not comply with the appropriation procedure set forth in PROMESA, are preempted.  *See* PROMESA § 4.

116.    The Tourism Company and the CCDA were each designated by the Oversight Board as covered territorial instrumentalities.  They are each included in the fiscal plan and budget for the Commonwealth certified by the Oversight Board.  The requirement in 13 L.P.R.A. § 2271v(a) for the Tourism Company to transfer Occupancy Tax Revenues to the account of CCDA is an appropriation of tax revenues preempted by PROMESA. Any obligation of the Commonwealth to make sure the Occupancy Tax Revenues are transferred is also preempted because that requirement is inconsistent with PROMESA's requirements that fiscal plans and

budgets be certified by the Oversight Board.  The Oversight Board has never certified a budget or fiscal plan providing for the transfer of Occupancy Tax Revenues to the account of CCDA.

117.    The interpretation of the Hotel Occupancy Tax Act asserted by Defendants—that the Hotel Occupancy Tax Act continues to require the Tourism Company to deposit funds into the Transfer Account and require the Commonwealth to "make sure" the Transfer Account was funded post-PROMESA—is inconsistent with PROMESA because PROMESA grants the Oversight Board the exclusive power to certify fiscal plans and budgets, and the preexisting obligations to appropriate and transfer the Hotel Occupancy Taxes arising after PROMESA was enacted were not certified by the Oversight Board.

118.    Congress gave the Oversight Board the sole power to certify fiscal plans and budgets for the Commonwealth and its instrumentalities (including the Tourism Company, GDB and CCDA), *see* PROMESA §§ 201, 202, and provided "[t]he provisions of [PROMESA] shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with [PROMESA]."  PROMESA § 4.

119.    Budgets certified by the Oversight Board are deemed "in full force and effect" upon certification.  PROMESA § 202(e)(1)(C).

120.    If the Hotel Occupancy Tax Act required the continued appropriation of the Occupancy Tax Revenues to CCDA post-PROMESA, such laws are inconsistent with PROMESA because they appropriate without Oversight Board certification.

121.    The Commonwealth Plan proposes to pay certain claims based on the Commonwealth's general obligation bonds at a level less than the full amount of those claims, even after taking into account the retention of the Occupancy Tax Revenues.  *See* Plan Arts. X-XXVIII.

122.    The Enabling Act and the Hotel Occupancy Tax Act are preempted pursuant to PROMESA section 4 to the extent they require the appropriation and transfer of the Occupancy Tax Revenues to CCDA.

**E.**    ***The Tourism Company's Failure to Fund Transfer Account is not a Breach of Contract by the Commonwealth***

123.    Defendants assert claims for breach of contract against the Commonwealth, while failing to identify the specific contractual obligation owed by the Commonwealth to CCDA Bondholders.  The Commonwealth is not liable for any breach of contract.

124.    The Commonwealth is not a party to any of the CCDA Debt Documents.  CCDA was authorized to represent the Commonwealth will "make sure" the amounts that must be deposited in the Pledge Account are deposited in the accounts as provided in the Trust Agreement. Trust Agreement § 6.01(n)(iii).

125.    The Commonwealth did not breach any duty to "make sure" the Tourism Company properly funded the Transfer Account.  Both the Commonwealth's duty to "make sure" the Tourism Company funded the Transfer Account, and the Tourism Company's duty to fund the account, are expressly subject to Article VI, Section 8 of the Commonwealth Constitution, and as a matter of law, are subject to PROMESA.  The Tourism Company cessation of deposits into the Transfer Account pre-PROMESA was in accordance with applicable law.

126.    Post-PROMESA, the purported obligation of the Tourism Company to fund the Transfer Account (and the purported obligation of the Commonwealth to "make sure" the Transfer Account was fully funded) were pre-empted by PROMESA.  The Commonwealth did not breach any contractual obligation owed to CCDA Bondholders.

127.    If the Commonwealth is liable for a breach of any obligation to "make sure" the Tourism Company deposited required funds into the Transfer Account that breach would, at most,

33

create an unsecured claim, not a secured claim against the Commonwealth.  The Commonwealth never pledged any collateral to secure that alleged obligation.

128.     The CCDA Debt Documents plainly state payments on the CCDA Bonds shall be payable solely from Hotel Occupancy Tax Funds received by the CCDA.  CCDA Bondholders may not look to the Commonwealth for payment of the CCDA Bonds under a breach of contract theory or otherwise.

**F.**     ***The Tourism Company Not Funding the Transfer Account Does Not Give Rise to any Tort Claim***

129.     Defendants assert various claims—including tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, and misrepresentation—which claims all purportedly arise out of the Commonwealth not "making sure" the Transfer Account was fully funded.

130.     The Tourism Company's actions of not funding the Transfer Account with the Occupancy Tax Revenues pursuant to the Pre-PROMESA Retention Actions was lawful pursuant to Article VI, section 8 and Article II, sections 18 and 19 of the Commonwealth Constitution.  The retention of the Occupancy Tax Revenues pursuant to fiscal plans and budgets certified by the Oversight Board, the Hotel Occupancy Tax Act's statutes appropriating those same funds to CCDA were no longer in effect because they were preempted by PROMESA.  The retention does not give rise to a tort claim against the Commonwealth.

131.     Each tort claim asserted by each Defendant fails because such claim lacks any legal bases.  The only act asserted by the Commonwealth concerns the retention of the Occupancy Tax Revenues pursuant to the Emergency Orders, the Moratorium Act, and PROMESA.  Such conduct was lawful and does not give rise to a tort claim against the Commonwealth.

34

132.    Each tort claim fails because each Defendant does not allege the elements of the tort asserted.  Defendants' tortious interference with contract claims fail because (*i*) from the enactment of PROMESA, the Commonwealth acted properly and lawfully in authorizing the retention of the Occupancy Tax Revenues due to the preemption of the Hotel Occupancy Tax Act, (*ii*) before enactment of PROMESA, there was no breach of contract with respect to any alleged failure to make payment on the CCDA Bonds because payments were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, and (*iii*) even if there were a breach of contract, any such breach did not meet the requirements for liability for tortious interference with contracts under Commonwealth tort law.

133.    Defendants' unjust enrichment claims fail because (*i*) Commonwealth law does not recognize a cause of action for unjust enrichment against the Commonwealth; and (*ii*) the documents governing the CCDA Bonds specify the rights and obligations of the parties and there could be no separate claim for unjust enrichment apart from any claim for breach of contract.

134.    Defendants' conversion claims fail because (*i*) the CCDA Bondholders do not have a security interest or other property interest in any Retained Occupancy Tax Revenues or property of the Commonwealth (if they have any security interests at all), (*ii*) the Tourism Company's actions in not fully funding the Transfer Account prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, and (*iii*)  the Tourism Company's actions in not fully funding the Transfer Account after the enactment of PROMESA was proper because the Hotel Occupancy Tax Act was preempted.

135.    Defendants' fraud-based claims fail because they are not alleged with specificity, and because the Commonwealth did not make any material misstatements of fact or engage in any fraudulent conduct.  Statements made in the Hotel Occupancy Tax Act and Enabling Act are

legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim

or a misrepresentation claim. Statements made in the CCDA Debt Documents were truthful when

made.

136.    The Defendants also fail to allege any facts regarding the required elements of

fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee

of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the

transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent

to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

**G.     The Pre-PROMESA Retention of Occupancy Tax Revenues Was Permitted by
         Commonwealth Law and the CCDA Debt Documents**

137.    The obligation of the Tourism Company to deposit funds into the Transfer Account,

as well as all other obligations related to the CCDA Bonds, were subject at all relevant times to

the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the

Commonwealth Constitution.

138.    Pre-PROMESA, pursuant to the Emergency Orders, including the November 30,

2015 First Emergency Order, and the Moratorium Act, not funding the Transfer Account was

permissible under applicable law, including the Commonwealth's powers under Article II,

Sections 18 and 19 of the Commonwealth Constitution, and no further funding of the Transfer

Account was required.

139.    The Commonwealth was authorized to have the Tourism Company cease

transferring the Occupancy Tax Revenues to GDB pursuant to the powers provided in Article II,

Sections 18 and 19 of the Commonwealth Constitution. Such retention of the Occupancy Tax

Revenues was not in violation of Commonwealth law.

H.    ***The Tourism Company's Actions in No Longer Funding the Transfer Account Does Not Violate the Contracts Clause***

      1.    ***No Impairment of Contractual Relationship***

140.    The Commonwealth did not violate the Contracts Clause in causing the retention of Occupancy Tax Revenues.  A party's contractual relationship cannot be impaired when the relevant contracts allow for the purported action or inaction comprising the alleged impairment.

141.    Prior to the passage of PROMESA, the Tourism Company not fully funding the Transfer Account was authorized by Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, as well as the Hotel Occupancy Tax Act itself.  Following the passage of PROMESA, the laws appropriating Occupancy Tax Revenues to GDB or CCDA were preempted and the Occupancy Tax Revenues were retained in compliance with PROMESA, thereby rendering the retention reasonable and necessary.

142.    The Hotel Occupancy Tax Act and the CCDA Debt Documents disclose the Occupancy Tax Revenues are subject to retention if the Commonwealth's other available resources are insufficient to meet its expenses (and the Commonwealth would not be liable under any circumstances).

143.    The CCDA Debt Documents and the Trust Agreement, specifically, disclosed the fact that any rights granted to CCDA Bondholders under the relevant contracts were "limited only by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting creditors' rights generally . . . by the exercise by the Commonwealth and its governmental bodies of the police power inherent in the sovereignty of the Commonwealth . . . ."  Trust Agreement § 6.01(a).

      2.    ***No State or Territory Legislative Action***

144.    The Commonwealth did not pass any law impairing contractual obligations owing to Defendants.  Prior to enactment of PROMESA, the Commonwealth laws enacted solely carried

out the terms of the Commonwealth Constitution, and the CCDA Bonds were all expressly subject to the constitution.

145.    After enactment of PROMESA, each Commonwealth statute requiring appropriations to CCDA without Oversight Board certification were preempted.

146.    Commonwealth actions that were exercises of executive, rather than legislative authority, were neither subject to the Contracts Clauses in the United States and Puerto Rico Constitutions nor causes of impairment of any contractual obligations owing to Defendants as CCDA Bondholders.

147.    The Commonwealth's executive orders, including the Emergency Orders and Moratorium Orders, were issued by the Governor as exercises of the Governor's executive authority, and were not legislative actions.

### 3.    *The Retention of Occupancy Tax Revenues Was Due to PROMESA, Not Legislation*

148.    The retention of the Occupancy Tax Revenues pursuant to the pre-PROMESA Retention Actions or, post-PROMESA, pursuant to PROMESA, was reasonable and necessary before enactment of PROMESA because the retention was in compliance with preexisting Commonwealth law (its Constitution) and after enactment of PROMESA because PROMESA grants the Oversight Board the exclusive power to certify budget appropriations.

149.    Moreover, even where a creditor asserts a substantial impairment of its contractual rights sufficient to violate the Contracts Clause, the remedy is a general unsecured, dischargeable claim against the debtor.

### I.    *The Commonwealth's Retention of Occupancy Tax Revenues Does Not Violate the Takings Clause*

150.    A Takings Clause claim can arise only after a creditor's property right has been independently established.  If a creditor does not have an unavoidable lien, there is no takings

claim.  Unsecured claims (including breach of contract claims) are not property for purposes of the Takings Clause.

151.    If a creditor does not have a property right in the Occupancy Tax Revenues, it has no claim under the Takings Clause.

152.    No security interest is granted against the Commonwealth's property.  The CCDA Debt Documents did not grant (and could not have granted) any security interest against any property or accounts held by the Commonwealth.

153.    The CCDA Debt Documents do not grant any interest in the Retained Occupancy Tax Revenues.

154.    Defendants have no property interest in Retained Occupancy Tax Revenues.  Such funds were neither appropriated nor transferred to GDB, nor deposited into the Transfer Account.  Neither the CCDA Debt Documents nor CCDA granted CCDA Bondholders a security interest against the Retained Occupancy Tax Revenues, or in any other property of the Commonwealth.

155.    The Commonwealth has not taken any property in which the CCDA Bondholders have a security interest.

156.    CCDA Bondholders knew or should have known the Occupancy Tax Revenues were subject to retention.  The Occupancy Tax Revenues were rendered expressly subject to Section 8 of Article VI of the Commonwealth Constitution and were always subject to the Commonwealth's police power.

157.    The Trust Agreement expressly states it is "limited only by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting creditors' rights generally, . . . by the exercise by the Commonwealth and its governmental bodies of the police power inherent in the sovereignty of the Commonwealth . . . ."  Trust Agreement § 6.01.

**J.**    *The Retention of Occupancy Tax Revenues Does Not Violate the Due Process Clause*

158.    Each Defendant filed a proof of claim pursuant to a court-supervised process in which it can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.  That process negates the allowability of any Due Process Clause claim.

159.    No Defendant has an allowable Due Process Clause claim.

**K.**    *Defendants do Not Have Allowable Claims Under PROMESA § 407*

160.    The Proofs of Claim asserts claims under PROMESA section 407(a).

161.    Such claims are, at most, unsecured claims.

162.    No Defendant has a valid claim arising under PROMESA section 407(a) because: (*i*) the Tourism Company has retained the vast majority of Occupancy Tax Revenues in its own accounts, as opposed to transferring such funds to the Commonwealth; and (*ii*) any transfer of property to the Commonwealth was not in violation of applicable law.

163.    *First*, since the enactment of PROMESA, Tourism Company has retained the vast majority of Occupancy Tax Revenues in their own accounts, as opposed to transferring such funds to the Commonwealth.  Claims under PROMESA section 407(a) do not reach money that has not been "transferred."  Only a "transferee" is liable pursuant to section 407(a).

164.    *Second*, regardless of whether there has been any transfer of Occupancy Tax Revenues to the Commonwealth, any such transfer was not "in violation of applicable law."  Prior to the passage of PROMESA, the retention of the Occupancy Tax Revenues was lawful pursuant to the Commonwealth Constitution and the Hotel Occupancy Tax Act.  Following the enactment of PROMESA, the Tourism Company's retention of the Occupancy Tax Revenues and any transfers of Occupancy Tax Revenue to the Commonwealth were lawful pursuant to PROMESA.

165.    Even if there were a valid claim under PROMESA section 407(a), no Defendant has standing to assert PROMESA section 407(a) claims during the Title III case, as only the territorial instrumentality (here, CCDA) has a claim for the transferred property against the transferee that "shall be liable for the value of such property."

L.    ***Defendants Do Not Have a Perfected Security Interest Against the Occupancy Tax Revenues Retained by the Commonwealth***

166.    No Defendant has a perfected security interest against any Retained Occupancy Tax Revenues.

167.    No Defendant has a perfected security interest against any of the Commonwealth's property.

168.    Only funds pledged by CCDA are subject to 23 L.P.R.A. § 6441(d) (discussing "Any pledge of the Authority").  Occupancy Tax Revenues retained by the Tourism Company or the Commonwealth are not subject to 23 L.P.R.A. § 6441(d).

169.    Commonwealth law governs the effectiveness and perfection of security interests against the Commonwealth.  *See* 19 L.P.R.A. § 2251.

170.    None of the Defendants has control over any accounts holding Retained Occupancy Tax Revenue for perfection purposes as required by Article 9 of the UCC.

171.    Further, no financing statements were filed against the Commonwealth regarding the CCDA Bonds.

172.    Pursuant to Bankruptcy Code section 544(a), the Commonwealth has, as of the commencement of the Commonwealth Title III Case, and without regard to any knowledge of a trustee, debtor, or creditor, the rights and powers of, or may avoid any transfer of its property or any obligation it incurred that is voidable by, a judicial lien creditor, among other things.

173.    Pursuant to Bankruptcy Code section 502(d), "the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under section . . . 544 . . ." subject to certain conditions.  11 U.S.C. § 502(d).

174.    Pursuant to Bankruptcy Code sections 544(a) and 551, and 19 L.P.R.A. § 2267(a)(2), Defendants' unperfected security interests (if any) should be avoided based on the Commonwealth's status as a judicial lien creditor.

175.    Pursuant to PROMESA section 301(c)(7), "[t]he term 'trustee', when used in [Bankruptcy Code provisions incorporated into PROMESA Title III], means the Oversight Board . . . ."  PROMESA § 301(c)(7).

176.    The Commonwealth's interest in any of the Commonwealth's property has priority over unperfected security interests against such property, including any of Defendants' purported and unperfected security interests in any of the Commonwealth's property.

**M.    *Defendants Do Not Have a Priority Claim Against the Commonwealth***

177.    There is no Puerto Rico law that grants any Defendant a priority claim with respect to Occupancy Tax Revenues.  Any Commonwealth laws purporting to recognize priority claims other than those recognized in PROMESA Title III (and the incorporated Bankruptcy Code provisions) are inconsistent with PROMESA and preempted pursuant to PROMESA.

178.    CCDA Bondholders claims are not administrative expenses recognized in Bankruptcy Code section 507(a) because they are prepetition claims and not reasonable and necessary expenses for preserving Commonwealth property.

**N.    *Defendants Do Not Have a Claim for Postpetition Revenues***

179.    Any Occupancy Tax Revenues subject to the Commonwealth's control since the petition date for the Commonwealth Title III Case constitute "property acquired by the estate . . . after the commencement of the case" for purposes of 11 U.S.C. § 552(a).  Defendants' liens, if

42

they existed, would not cover the Occupancy Tax Revenues arising after the Commonwealth's Title III petition date.

180.    The Occupancy Tax Revenues are not "special revenues" as defined in Bankruptcy Code section 902, and any claim under Bankruptcy Code section 928 for a security interest against Occupancy Tax Revenues received by the Commonwealth since the Petition Date fails because Bankruptcy Code section 928 is only applicable to "special revenues."

181.    Any claim under section 928 for a security interest on Occupancy Tax Revenues received by the Commonwealth since the Petition Date fails because the Commonwealth's property is not subject to a lien resulting from a security agreement entered into by the Commonwealth before the commencement of the Commonwealth Title III Case.

## O.    *Defendants Lack Any Ownership Interest in, or Right to an Equitable or Constructive Trust on, Any Retained Occupancy Tax Revenues*

182.    CCDA Bondholders do not have any property interest in any Retained Occupancy Tax Revenues.

183.    As such, Retained Occupancy Tax Revenues never became the property of any CCDA Bondholder.   Additionally, nothing in the CCDA Debt Documents gives CCDA Bondholders a security interest or any other property interest in funds that should have been, but were not, deposited in the Transfer Account, if any such funds exist.   Because CCDA Bondholders do not have a security interest (or other property interest) in Retained Occupancy Tax Revenues, they cannot make a claim against the Retained Occupancy Tax Revenues under an equitable or constructive trust theory.

184.    CCDA Bondholders do not have a trust relationship between themselves and the Commonwealth.   The Enabling Act, the Hotel Occupancy Tax Act, and the CCDA Debt Documents do not create a trust relationship between the Commonwealth and any CCDA

43

Bondholder, or otherwise make the Commonwealth an agent of the CCDA Bondholders with respect to the collection and disposition of Occupancy Tax Revenues.  The Tourism Company is neither a trustee nor agent of CCDA Bondholders, as CCDA Bondholders never obtained any property interest with respect to Retained Occupancy Tax Revenues.  The CCDA and the GDB do not themselves obtain property rights in, or obtain possession, custody, or control of, any Retained Occupancy Tax Revenues.  Neither the CCDA nor the GDB are trustees or agents with respect to the Occupancy Tax Revenues not deposited into the Transfer Account (if they are trustees or agents in any capacity or with respect to any property).

185.    The Retained Occupancy Tax Revenues do not belong to CCDA Bondholders and the Commonwealth has no liability to them under a trust relationship.  Funds that have been transferred to the Treasury, if any, and used to pay public debt or for other purposes are not subject to any constructive or equitable trust.  Funds that remain in the possession, custody, and control of the Tourism Company do not give rise to a constructive or equitable trust claim against the Commonwealth.

## **OBJECTIONS TO THE AMBAC CLAIM**

### **COUNT I**

JUDGMENT DISALLOWING AMBAC CLAIM AS
DUPLICATIVE OF THE BOND MASTER PROOF OF CLAIM
(11 U.S.C. § 502)

186.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

187.    The Ambac Claim seeks principal, prepetition interest, postpetition interest and fees against the Commonwealth based on the same CCDA Bonds that are the subject of the Bond Master Proof of Claim.  The Ambac Claim is duplicative of the Bond Master Proof of Claim

asserted by the Fiscal Agent because they both make claims for the same exact funds owed under the CCDA Bonds.

188.    Ambac alleges (*i*) statutory liens against the Occupancy Tax Revenues, (*ii*) security interests in the Occupancy Tax Revenues, (*iii*) violations of the U.S. and Commonwealth Constitutions in failing to appropriate the Occupancy Tax Revenues to CCDA, (*iv*) violations of PROMESA section 407, (*v*) the Commonwealth's failure to appropriate the Occupancy Tax Revenues to CCDA was unlawful and a breach of contract and/or gave rise various tort claims, and (*vi*) entitlement to administrative expense priority.  All these allegations are duplicative of claims made by the Fiscal Agent in the Bond Master Proof of Claim.

189.    A failure to disallow the Ambac Claim will result in Ambac potentially receiving an unwarranted double recovery against the Commonwealth to the detriment of other stakeholders.

190.    Ambac will not be prejudiced by the disallowance of its duplicative claims because they are subsumed within the Bond Master Proof of Claim.

191.    Pursuant to Bankruptcy Code section 502, Plaintiff is entitled to judgment disallowing the Ambac Claim as duplicative of the Bond Master Proof of Claim.  In the alternative, if the Ambac Claim is not disallowed as duplicative, Plaintiff is entitled to an offset to be determined by the Court for any amount recovered by the Fiscal Agent against Plaintiff.

## COUNT II

### JUDGMENT DISALLOWING AMBAC CLAIM
### BECAUSE OF THE CCDA BOND'S EXPRESS EXCLUSION OF LIABILITY
(11 U.S.C. §§ 501, 502)

192.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

193.    The Ambac Claim must be disallowed because Ambac does not have any right to payment from the Commonwealth, and does not possess an allowable claim against the Commonwealth.

194.    Pursuant to the express terms of the Enabling Act and the CCDA Debt Documents, the CCDA Bonds are not a debt of the Commonwealth and the Commonwealth has no liability thereon.

195.    The CCDA Bonds are non-recourse bonds, and payment for such bonds is exclusively limited by the Trust Agreement to property in which the CCDA Bondholders have a security interest.  The CCDA Debt Documents do not grant any security interest against Retained Occupancy Tax Revenues, and the Commonwealth has no obligation itself to fund the Transfer Account.  The Commonwealth is not liable for breach of any contractual, statutory, or common law duty owned by the Tourism Company, the CCDA, the GDB, or other entities other than the Commonwealth itself.

196.    Even if funds were not deposited in the Transfer Account, the Commonwealth has no pecuniary liability to the CCDA Bondholders due to the express statutory and contractual exclusion of Commonwealth liability.

197.    Plaintiff is entitled to judgment disallowing the Ambac Claim regarding the Bonds, as the Commonwealth is not liable for any debt owed on the CCDA Bonds or with respect to deposits not made by the Tourism Company to the Transfer Account (or any other account).

## COUNT III

**JUDGMENT DISALLOWING AMBAC CLAIM ASSERTING SUBROGATION RIGHTS
THAT EXCEED THE AMOUNT PAID BY AMBAC TO BONDHOLDERS AND
OTHERWISE SUBORDINATING THE AMBAC CLAIM TO THE CLAIMS OF
BONDHOLDERS PURSUANT TO BANKRUPTCY CODE SECTION 509(c)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2104, 2141, 2142, 2161; 11 U.S.C. §§ 502, 509)**

198.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

199.    The Ambac Claim asserts claims based on subrogation, reimbursement or
contribution rights arising from payments to CCDA Bondholders holding CCDA Bonds allegedly
insured by Ambac.

200.    Plaintiff is entitled to judgment disallowing the Ambac Claim for subrogation,
reimbursement, and contribution rights exceeding the amount Ambac has paid to CCDA
Bondholders and otherwise subordinating such portions of the Ambac Claim for the amounts it
did pay Bondholders to the remaining unpaid claims of insured CCDA Bondholders.

## COUNT IV

**JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON UNLAWFUL
RETENTION OF THE OCCUPANCY TAX REVENUES BECAUSE SUCH RETENTION
WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE COMMONWEALTH
CONSTITUTION
(11 U.S.C. § 502)**

201.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

202.    The Ambac Claim asserts a claim against the Commonwealth based on the retention
of the Occupancy Tax Revenues pursuant to Commonwealth law.

203.    The retention of the Occupancy Tax Revenues pursuant to the Pre-PROMESA
Retention Actions does not give rise to a claim against the Commonwealth by operation of Article

VI, Section 8 of the Commonwealth Constitution, and pursuant to the Hotel Occupancy Tax Act, which provide the Occupancy Tax Revenues are "available resources" of the Commonwealth.

204.    The obligation of the Commonwealth, if any, to appropriate the Occupancy Tax Revenues to CCDA, as well as all other obligations, if any, related to the CCDA Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

205.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's retention of the Occupancy Tax Revenues prior to PROMESA was authorized by the CCDA Debt Documents, the Hotel Occupancy Tax Act, and Article VI, Section 8 of the Commonwealth Constitution.

## COUNT V

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON UNLAWFUL
RETENTION OF THE OCCUPANCY TAX REVENUES BECAUSE THE HOTEL
OCCUPANCY TAX ACT WAS PREEMPTED BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

206.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

207.    The Ambac Claim asserts a claim against the Commonwealth based on the retention of the Occupancy Tax Revenues pursuant to Commonwealth law.

208.    The retention of the Occupancy Tax Revenues following the passage of PROMESA does not give rise to a claim against the Commonwealth because all laws requiring transfer of Occupancy Tax Revenues were preempted by PROMESA because they are inconsistent with PROMESA's requirement that only appropriations certified by the Oversight Board are effective.

209.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the retention of the Occupancy Tax Revenues was authorized pursuant to PROMESA and any inconsistent Commonwealth law is preempted by PROMESA section 4.

## COUNT VI

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON UNLAWFUL
RETENTION OF THE OCCUPANCY TAX REVENUES FOR BREACH OF CONTRACT
(11 U.S.C. § 502)

210.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

211.    The Ambac Claim asserts a breach of contract claim against the Commonwealth based on the Commonwealth's retention of the Occupancy Tax Revenues.

212.    The Commonwealth is not liable for any breach of contract to Ambac.

213.    The Commonwealth is not a party to the CCDA Debt Documents.   The Commonwealth also did not make any contractual commitment to the CCDA Bondholders, and at most statutorily committed in the Hotel Occupancy Tax Act to "make sure that the amounts that must be deposited in [the] special account … are deposited in such special account."  13 L.P.R.A. § 2227v(a).

214.    The Commonwealth did not breach its duty (if any) to "make sure" the Tourism Company properly funded the Transfer Account.  Both the Commonwealth's duty (if any) to "make sure" the Tourism Company funded the Transfer Account, and the Tourism Company's duty to fund the account, were subject to Article VI, Section 8 of the Commonwealth Constitution. Not funding the Transfer Account was permissible pursuant to the Pre-PROMESA Retention Actions and does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

215.    The Tourism Company's failure fund the Transfer Account following the passage of PROMESA does not give rise to a claim against the Commonwealth because such retention is consistent with PROMESA and because any Commonwealth laws that required the

Commonwealth or Tourism Company to appropriate the Occupancy Tax Revenues to CCDA
(including the Hotel Occupancy Tax Act) are inconsistent with PROMESA and preempted by
PROMESA.

216.    The Commonwealth did not breach any contractual obligation owed to CCDA
Bondholders.

217.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the
Commonwealth's retention of the Occupancy Tax Revenues did not constitute a breach of contract.

### COUNT VII

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON UNLAWFUL
RETENTION OF THE OCCUPANCY TAX REVENUES FOR COMMON LAW TORT
CLAIMS
(11 U.S.C. § 502)

218.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

219.    The Ambac Claim asserts various claims—including common law fraud,
conversion, misrepresentation, unjust enrichment, fraudulent conveyance, tortious interference
with contract, and fraudulent inducement—which all purportedly arise out of the retention of the
Occupancy Tax Revenues.

220.    The retention of the Occupancy Tax Revenues was lawful under pre-PROMESA
laws and PROMESA, and the Commonwealth is not liable to Ambac for any tort claims under any
theory.

221.    The Ambac Claim's conversion claim fails because (*i*) Ambac does not have a
security interest against any Commonwealth funds and any Occupancy Tax Revenues beyond
moneys actually deposited in Transfer Account, (*ii*) the retention of Retained Occupancy Tax
Revenues not appropriated and transferred to the Transfer Account prior to the passage of

PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the CCDA Bondholders do not have any other property interest in the Occupancy Tax Revenues, and (*iv*) the retention of the Retained Occupancy Tax Revenues not appropriated and transferred to the Transfer Account after the enactment of PROMESA was proper because the Hotel Occupancy Tax Act was preempted.

222.    The Ambac Claim's tortious interference with contract claim fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the Retained Occupancy Tax Revenues due to preemption of the Hotel Occupancy Tax Act, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to "make sure" the Transfer Account was fully funded because that obligation was subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

223.    Ambac's unjust enrichment claims fail because (*i*) Commonwealth law does not recognize a cause of action for unjust enrichment against the Commonwealth; and (*ii*) the CCDA Debt Documents specify the rights and obligations of the parties and therefore there could be no separate claim for unjust enrichment apart from any claim for breach of contract.

224.    The Ambac Claim's claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth has not made any material misstatements of fact or engaged in any fraudulent conduct, (*iii*) statements made in the Enabling Act and Hotel Occupancy Tax Act are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim, and (iv) statements made in the CCDA Debt Documents were truthful when made.

225. The Ambac Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

226. Plaintiff is entitled to judgment disallowing the Ambac Claim because the retention of the Occupancy Tax Revenues did not constitute tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, or misrepresentation.

## COUNT VIII

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON UNLAWFUL
RETENTION OF THE OCCUPANCY TAX REVENUES BECAUSE SUCH RETENTION
WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH
CONSTITUTION
(11 U.S.C. § 502)

227. Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

228. The Ambac Claim asserts a claim against the Commonwealth based on the retention of the Occupancy Tax Revenues pursuant to Commonwealth law.

229. The retention of the Occupancy Tax Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

230. Plaintiff is entitled to judgment disallowing the Ambac Claim because the retention of the Occupancy Tax Revenues prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

## COUNT IX

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF
VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

231.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

232.    Ambac alleges the retention of the Occupancy Tax Revenues violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

233.    The retention of the Occupancy Tax Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because prior to enactment of PROMESA the retention was authorized under Commonwealth law existing when the Bonds were issued, and after enactment of PROMESA the law requiring transfer of the Occupancy Tax Revenues was preempted.

234.    Plaintiff is entitled to judgment disallowing the Ambac Claim because there has been no impairment of Ambac's contractual rights. In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT X

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF
VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE NO LEGISLATION CREATED AN IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

235.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

236.    Ambac alleges the retention of the Occupancy Tax Revenues violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

237.    The retention of the Occupancy Tax Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because no Commonwealth legislation was passed that impaired Ambac's contract rights, if any.

238.    Plaintiff is entitled to judgment disallowing the Ambac Claim because there is no Commonwealth legislation enacted after the CCDA Bonds were issued that impaired Ambac's contract rights, if any.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable claim.

## COUNT XI

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF
VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE
OCCUPANCY TAX REVENUES WAS DUE TO PROMESA, NOT LEGISLATION
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

239.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

240.    Ambac alleges the retention of the Occupancy Tax Revenues violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

241.    The retention of the Occupancy Tax Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the Commonwealth's retention of the Occupancy Tax Revenues was effectuated in accordance with PROMESA, rendering it reasonable and necessary.

242.     Plaintiff is entitled to judgment disallowing the Ambac Claim.

243.     In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT XII

**JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE AMBAC DOES NOT HOLD A PROPERTY INTEREST**
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

244.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

245.     Ambac asserts the lawful retention of Occupancy Tax Revenues constitutes a taking.

246.     The retention of the Occupancy Tax Revenues does not constitute a taking because Ambac has no property interest in the Occupancy Tax Revenues.

247.     Plaintiff is entitled to judgment disallowing the Ambac Claim because Ambac has no property interest in the Retained Occupancy Tax Revenues and therefore cannot assert a takings claim.   In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Takings Clause is a dischargeable claim.

## COUNT XIII

**JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE AMBAC HAD A REASONABLE EXPECTATION THE COMMONWEALTH WOULD RETAIN THE OCCUPANCY TAX REVENUES**
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

248.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

249.     Ambac asserts the lawful retention of Occupancy Tax Revenues constitutes a taking.

250.     The retention of the Occupancy Tax Revenues does not constitute an impermissible taking because such retention did not interfere with Ambac's reasonable expectations.

251.     Ambac knew or should have known, pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the Hotel Occupancy Tax Act, and the CCDA Debt Documents, that the Occupancy Tax Revenues were subject to retention.

252.     Plaintiff is entitled to judgment disallowing the Ambac Claim because the retention of the Occupancy Tax Revenues did not interfere with Ambac's reasonable expectations regarding the Occupancy Tax Revenues.

253.     In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Takings Clause is a dischargeable claim.

## **COUNT XIV**

JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF
VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

254.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

255.     Ambac alleges the retention of Occupancy Tax Revenues constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violation.

256.     Ambac filed a proof of claim pursuant to a court-supervised process in which it can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.

257.    The Ambac Claim does not assert any additional basis on which the retention of Occupancy Tax Revenues constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions separate from its Takings Clause claim.

258.    Because the Ambac Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, Ambac's Due Process claim should be disallowed because it has no property rights in the Occupancy Tax Revenues retained by the Tourism Company.

259.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the retention of the Occupancy Tax Revenues did not violate the Due Process Clause of the Commonwealth or U.S. Constitutions.

## **COUNT XV**

### JUDGMENT DISALLOWING AMBAC CLAIM BASED ON PROMESA SECTION 407
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

260.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

261.    The Ambac Claim asserts claims under PROMESA section 407(a).

262.    Ambac does not have a claim under PROMESA section 407(a) because the Occupancy Tax Revenues were not property of any territorial instrumentality transferred in violation of applicable law, nor does Ambac have any security interest against the Retained Occupancy Tax Revenues.  The Commonwealth is not a "transferee" of any property under section 407(a).

263.    Ambac also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only CCDA has a claim for the transferred property against the transferee.

264.    Plaintiff is entitled to judgment disallowing the Ambac Claim based on PROMESA section 407(a).

## COUNT XVI

### JUDGMENT DISALLOWING AMBAC CLAIM FOR POSTPETITION INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE SECTION 502(b)(2)
### (28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

265.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

266.    The Ambac Claim asserts claims for postpetition interest and other postpetition costs.

267.    Pursuant to Bankruptcy Code section 502(b)(2), Ambac's claims "for unmatured interest" must be disallowed.  11 U.S.C. § 502(b)(2).

268.    Ambac's claims for costs and expenses must be disallowed because they are not supported by any contractual right to reimbursement for costs and expenses from the Commonwealth.

269.    Plaintiff is entitled to judgment disallowing the Ambac Claim for postpetition interest or other postpetition costs.

## COUNT XVII

### JUDGMENT DISALLOWING AMBAC'S SECURED CLAIM
### (11 U.S.C. § 502)

270.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

271.    Ambac has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory liens against any property in which the

Commonwealth has an interest, nor has Ambac perfected any alleged security interest if any, as against the Commonwealth.

272.    No Retained Occupancy Tax Revenues are funds belonging to Ambac.

273.    Plaintiff is entitled to judgment disallowing Ambac's claim that Ambac possess a secured claim against the Commonwealth and Retained Occupancy Tax Revenues.

## COUNT XVIII

JUDGMENT DISALLOWING AND AVOIDING AMBAC CLAIM ASSERTING
PERFECTED SECURITY INTERESTS PURSUANT TO BANKRUPTCY CODE SECTION
502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

274.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

275.    The Ambac Claim asserts the CCDA Bonds it insures are secured by a perfected security interest against the Retained Occupancy Tax Revenues.

276.    Ambac does not have control over any deposit accounts or in any other funds held by the Commonwealth.

277.    No financing statements were filed against the Commonwealth regarding the CCDA Bonds.

278.    Plaintiff is entitled to judgment disallowing Ambac's claim for a perfected security interest against the CCDA Bonds as against the Commonwealth.

## COUNT XIX

JUDGMENT DISALLOWING AMBAC'S PRIORITY CLAIM
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

279.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

280.    The Ambac Claim asserts amounts due to Ambac are entitled to priority over other unsecured claims.

281.    Ambac does not have a priority claim under Commonwealth law.  Moreover, even if Ambac had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

282.    Ambac does not have an administrative expense claim pursuant to PROMESA section 507(a)(2).  None of Ambac's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

283.    Plaintiff is entitled to judgment disallowing all priorities asserted for the Ambac Claim.

## **COUNT XX**

JUDGMENT DISALLOWING AMBAC CLAIM TO A SECURITY INTEREST AGAINST
REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO RECEIVE REVENUES
ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

284.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

285.    The Ambac Claim asserts Occupancy Tax Revenues collected postpetition are subject to Ambac's purported security interest.

286.    Ambac does not have a valid or perfected security interest against the Retained Occupancy Tax Revenues.  Even if it did, such security interest would not attach to moneys collected after the Commonwealth Title III petition was filed.

287.    Plaintiff is entitled to judgment disallowing the Ambac Claim regarding its purported security interest against any and all postpetition Occupancy Tax Revenues retained by the Tourism Company.

## COUNT XXI

### JUDGMENT DISALLOWING AMBAC CLAIM OF
### OWNERSHIP INTEREST IN OR EQUITABLE OR CONSTRUCTIVE TRUST ON
### OCCUPANCY TAX REVENUES
### (28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

288.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

289.    The Ambac Claim asserts the Occupancy Tax Revenues are owned by the CCDA Bondholders and also asserts claims for an equitable or constructive trust.

290.    None of the Hotel Occupancy Tax Act statutes or CCDA Debt Documents provide Defendants an ownership interest in Retained Occupancy Tax Revenues, including under any trust or agency theory.

291.    There is no trust relationship between Ambac and the Commonwealth, and the Retained Occupancy Tax Revenues are not sufficiently identifiable to allow Ambac to establish a right as a trust beneficiary to such funds.

292.    Plaintiff is entitled to judgment disallowing Ambac's claims to an ownership interest or equitable or constructive trust asserted in the Ambac Claim.

## OBJECTIONS TO THE AGC CLAIM

### COUNT XXII

### JUDGMENT DISALLOWING AGC CLAIM AS
### DUPLICATIVE OF THE BOND MASTER PROOF OF CLAIM
### (11 U.S.C. § 502)

293.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

294.     The AGC Claim seeks principal, prepetition interest, postpetition interest and fees against the Commonwealth based on the same CCDA Bonds that are the subject of the Bond Master Proof of Claim.  The AGC Claim is duplicative of the Bond Master Proof of Claim asserted by the Fiscal Agent because they both make claims for the same exact funds owed under the CCDA Bonds.

295.     AGC alleges (*i*) statutory liens against the Occupancy Tax Revenues, (*ii*) security interests in the Occupancy Tax Revenues, (*iii*) violations of the U.S. and Commonwealth Constitutions in failing to appropriate the Occupancy Tax Revenues to CCDA, (*iv*) violations of PROMESA section 407, (*v*) the Commonwealth's failure to appropriate the Occupancy Tax Revenues to CCDA was unlawful and a breach of contract and/or gave rise various tort claims, and (*vi*) entitlement to administrative expense priority.  All these allegations are duplicative of claims made by the Fiscal Agent in the Bond Master Proof of Claim.

296.     A failure to disallow the AGC Claim will result in AGC potentially receiving an unwarranted double recovery against the Commonwealth to the detriment of other stakeholders.

297.     AGC will not be prejudiced by the disallowance of its duplicative claims because they are subsumed within the Bond Master Proof of Claim.

298.     Pursuant to Bankruptcy Code section 502, Plaintiff is entitled to judgment disallowing the AGC Claim as duplicative of the Bond Master Proof of Claim.  In the alternative, if the AGC Claim is not disallowed as duplicative, Plaintiff is entitled to an offset to be determined by the Court for any amount recovered by the Fiscal Agent against Plaintiff.

## COUNT XXIII

### JUDGMENT DISALLOWING AGC CLAIM
### BECAUSE OF THE CCDA BOND'S EXPRESS EXCLUSION OF LIABILITY
### (11 U.S.C. §§ 501, 502)

299.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

300.    The AGC Claim must be disallowed because AGC does not have any right to payment from the Commonwealth, and does not possess an allowable claim against the Commonwealth.

301.    Pursuant to the express terms of the Enabling Act and the CCDA Debt Documents, the CCDA Bonds are not a debt of the Commonwealth and the Commonwealth has no liability thereon.

302.    The CCDA Bonds are non-recourse bonds, and payment for such bonds is exclusively limited by the Trust Agreement to property in which the CCDA Bondholders have a security interest.  The CCDA Debt Documents do not grant any security interest against Retained Occupancy Tax Revenues, and the Commonwealth has no obligation itself to fund the Transfer Account.  The Commonwealth is not liable for breach of any contractual, statutory, or common law duty owned by the Tourism Company, the CCDA, the GDB, or other entities other than the Commonwealth itself.

303.    Even if funds were not deposited in the Transfer Account, the Commonwealth has no pecuniary liability to the CCDA Bondholders due to the express statutory and contractual exclusion of Commonwealth liability.

304.    Plaintiff is entitled to judgment disallowing the AGC Claim regarding the Bonds, as the Commonwealth is not liable for any debt owed on the CCDA Bonds or with respect to deposits not made by the Tourism Company to the Transfer Account (or any other account).

## COUNT XXIV

JUDGMENT DISALLOWING AGC CLAIM ASSERTING SUBROGATION RIGHTS THAT
EXCEED THE AMOUNT PAID BY AGC TO BONDHOLDERS AND OTHERWISE
SUBORDINATING THE AGC CLAIM TO THE CLAIMS OF BONDHOLDERS PURSUANT
TO BANKRUPTCY CODE SECTION 509(c)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2104, 2141, 2142, 2161; 11 U.S.C. §§ 502, 509)

305.     Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

306.     The AGC Claim asserts claims based on subrogation, reimbursement or
contribution rights arising from payments to CCDA Bondholders holding CCDA Bonds allegedly
insured by AGC.

307.     Plaintiff is entitled to judgment disallowing the AGC Claim for subrogation,
reimbursement, and contribution rights exceeding the amount AGC has paid to CCDA
Bondholders and otherwise subordinating such portions of the AGC Claim for the amounts it did
pay Bondholders to the remaining unpaid claims of insured CCDA Bondholders.

## COUNT XXV

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON UNLAWFUL RETENTION
OF THE OCCUPANCY TAX REVENUES BECAUSE SUCH RETENTION WAS
AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE COMMONWEALTH
CONSTITUTION
(11 U.S.C. § 502)

308.     Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

309.     The AGC Claim asserts a claim against the Commonwealth based on the retention
of the Occupancy Tax Revenues pursuant to Commonwealth law.

310.     The retention of the Occupancy Tax Revenues pursuant to the Pre-PROMESA
Retention Actions does not give rise to a claim against the Commonwealth by operation of Article

VI, Section 8 of the Commonwealth Constitution, and pursuant to the Hotel Occupancy Tax Act, which provide the Occupancy Tax Revenues are "available resources" of the Commonwealth.

311.    The obligation of the Commonwealth, if any, to appropriate the Occupancy Tax Revenues to CCDA, as well as all other obligations, if any, related to the CCDA Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

312.    Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the Occupancy Tax Revenues prior to PROMESA was authorized by the CCDA Debt Documents, the Hotel Occupancy Tax Act, and Article VI, Section 8 of the Commonwealth Constitution.

## COUNT XXVI

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON UNLAWFUL RETENTION
OF THE OCCUPANCY TAX REVENUES BECAUSE THE OCCUPANCY TAX ACT WAS
PREEMPTED BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

313.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

314.    The AGC Claim asserts a claim against the Commonwealth based on the retention of the Occupancy Tax Revenues pursuant to Commonwealth law.

315.    The retention of the Occupancy Tax Revenues following the passage of PROMESA does not give rise to a claim against the Commonwealth because all laws requiring transfer of Occupancy Tax Revenues were preempted by PROMESA because they are inconsistent with PROMESA's requirement that only appropriations certified by the Oversight Board are effective.

316.    Plaintiff is entitled to judgment disallowing the AGC Claim because the retention of the Occupancy Tax Revenues was authorized pursuant to PROMESA and any inconsistent Commonwealth law is preempted by PROMESA section 4.

## **COUNT XXVII**

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON UNLAWFUL RETENTION
OF THE OCCUPANCY TAX REVENUES FOR BREACH OF CONTRACT
(11 U.S.C. § 502)

317.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

318.    The AGC Claim asserts a breach of contract claim against the Commonwealth
based on the Commonwealth's retention of the Occupancy Tax Revenues.

319.    The Commonwealth is not liable for any breach of contract to AGC.

320.    The Commonwealth is not a party to the CCDA Debt Documents.    The
Commonwealth also did not make any contractual commitment to the CCDA Bondholders, and at
most statutorily committed in the Hotel Occupancy Tax Act to "make sure that the amounts that
must be deposited in [the] special account … are deposited in such special account."  13 L.P.R.A.
§ 2227v(a).

321.    The Commonwealth did not breach its duty (if any) to "make sure" the Tourism
Company properly funded the Transfer Account.   Both the Commonwealth's duty (if any) to
"make sure" the Tourism Company funded the Transfer Account, and the Tourism Company's
duty to fund the account, were subject to Article VI, Section 8 of the Commonwealth Constitution.
Not funding the Transfer Account was permissible pursuant to the Pre-PROMESA Retention
Actions and does not give rise to a claim against the Commonwealth by operation of the
Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth
Constitution.

322.    The Tourism Company's failure fund the Transfer Account following the passage
of PROMESA does not give rise to a claim against the Commonwealth because such retention is
consistent with PROMESA section 202 and the fiscal plans and budgets certified by the Oversight

Board thereunder.  Any Commonwealth laws that could have required the Commonwealth or Tourism Company to appropriate the Occupancy Tax Revenues to CCDA (including the Hotel Occupancy Tax Act) are inconsistent with PROMESA and preempted by PROMESA.

323.    The Commonwealth did not breach any contractual obligation owed to CCDA Bondholders.

324.    Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the Occupancy Tax Revenues did not constitute a breach of contract.

### COUNT XXVIII

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON UNLAWFUL RETENTION
OF THE OCCUPANCY TAX REVENUES FOR COMMON LAW TORT CLAIMS
(11 U.S.C. § 502)

325.    The AGC Claim asserts tort-based claims, which purportedly arise out of the retention of the Occupancy Tax Revenues.

326.    The retention of the Occupancy Tax Revenues was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to AGC for any tort claims under any theory.

327.    A conversion claim asserted by AGC fails because (*i*) AGC does not have a security interest against any Commonwealth funds and any Occupancy Tax Revenues beyond moneys actually deposited in Transfer Account, (*ii*) the retention of Retained Occupancy Tax Revenues not appropriated and transferred to the Transfer Account prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the CCDA Bondholders do not have any other property interest in the Occupancy Tax Revenues, and (*iv*) the retention of the Retained Occupancy Tax Revenues not appropriated and transferred to the Transfer Account after the enactment of PROMESA was proper because the Hotel Occupancy Tax Act was preempted.

328.     A tortious interference with contract claim by asserted AGC fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the Retained Occupancy Tax Revenues due to preemption of the Occupancy Tax Act, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to "make sure" the Transfer Account was fully funded because that obligation was subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

329.     The AGC Claims' claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth has not made any material misstatements of fact or engaged in any fraudulent conduct, (*iii*) statements made in the Enabling Act and Hotel Occupancy Tax Act are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim, and (*iv*) statements made in the CCDA Debt Documents were truthful when made.

330.     The AGC Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

331.     Plaintiff is entitled to judgment disallowing the AGC Claim because the retention of the Occupancy Tax Revenues did not constitute a tort.

## COUNT XXIX

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON UNLAWFUL RETENTION
OF THE OCCUPANCY TAX REVENUES BECAUSE SUCH RETENTION WAS
AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH
CONSTITUTION
(11 U.S.C. § 502)

332.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

333.    The AGC Claim asserts a claim against the Commonwealth based on the retention of the Occupancy Tax Revenues pursuant to Commonwealth law.

334.    The retention of the Occupancy Tax Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

335.    Plaintiff is entitled to judgment disallowing the AGC Claim because the retention of the Occupancy Tax Revenues prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

## COUNT XXX

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

336.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

337.    AGC alleges the retention of the Occupancy Tax Revenues violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

69

338.    The retention of the Occupancy Tax Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because prior to enactment of PROMESA the retention was authorized under Commonwealth law existing when the Bonds were issued, and after enactment of PROMESA the law requiring transfer of the Occupancy Tax Revenues was preempted.

339.    Plaintiff is entitled to judgment disallowing the AGC Claim because there has been no impairment of AGC's contractual rights. In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGC based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT XXXI

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO LEGISLATION CREATED AN IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

340.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

341.    AGC alleges the retention of the Occupancy Tax Revenues violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

342.    The retention of the Occupancy Tax Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because no Commonwealth legislation was passed that impaired AGC's contract rights, if any.

343.    Plaintiff is entitled to judgment disallowing the AGC Claim because there is no Commonwealth legislation enacted after the CCDA Bonds were issued that impaired AGC's contract rights, if any.  In the alternative, Plaintiff is entitled to a judgment declaring any valid

claim held by AGC based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable claim.

## **COUNT XXXII**

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE
OCCUPANCY TAX REVENUES WAS DUE TO PROMESA, NOT LEGISLATION
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

344.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

345.    AGC alleges the retention of the Occupancy Tax Revenues violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

346.    The retention of the Occupancy Tax Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the Commonwealth's retention of the Occupancy Tax Revenues was effectuated in accordance with PROMESA, rendering it reasonable and necessary.

347.    Plaintiff is entitled to judgment disallowing the AGC Claim.

348.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGC based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## **COUNT XXXIII**

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON VIOLATIONS OF THE
TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE
AGC DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

349.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

350.    AGC asserts the lawful retention of Occupancy Tax Revenues constitutes a taking.

351.    The retention of the Occupancy Tax Revenues does not constitute a taking because AGC has no property interest in the Occupancy Tax Revenues.

352.    Plaintiff is entitled to judgment disallowing the AGC Claim because AGC has no property interest in the Retained Occupancy Tax Revenues and therefore cannot assert a takings claim.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGC based on the Takings Clause is a dischargeable claim.

## COUNT XXXIV

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON VIOLATIONS OF THE
TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE
AGC HAD A REASONABLE EXPECTATION THE COMMONWEALTH WOULD RETAIN
THE OCCUPANCY TAX REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

353.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

354.    AGC asserts the lawful retention of Occupancy Tax Revenues constitutes a taking.

355.    The retention of the Occupancy Tax Revenues does not constitute an impermissible taking because such retention did not interfere with AGC's reasonable expectations.

356.    AGC knew or should have known, pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the Hotel Occupancy Tax Act, and the CCDA Debt Documents, that the Occupancy Tax Revenues were subject to retention.

357.    Plaintiff is entitled to judgment disallowing the AGC Claim because the retention of the Occupancy Tax Revenues did not interfere with AGC's reasonable expectations regarding the Occupancy Tax Revenues.

358.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGC based on the Takings Clause is a dischargeable claim.

## **COUNT XXXV**

JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE DUE PROCESS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

359.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

360.    AGC alleges the retention of Occupancy Tax Revenues constitutes a violation of
the Due Process Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against
the Commonwealth as a result of the alleged violation.

361.    AGC filed a proof of claim pursuant to a court-supervised process in which it can
receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of
adjustment.

362.    The AGC Claim does not assert any additional basis on which the retention of
Occupancy Tax Revenues constitutes a violation of the Due Process Clause of the Commonwealth
and U.S. Constitutions separate from its Takings Clause claim.

363.    Because the AGC Claim does not assert any independent basis for its Due Process
claim beyond the basis for its Takings Clause claim, AGC's Due Process claim should be
disallowed because it has no property rights in the Occupancy Tax Revenues retained by the
Tourism Company.

364.    Plaintiff is entitled to judgment disallowing the AGC Claim because the retention
of the Occupancy Tax Revenues did not violate the Due Process Clause of the Commonwealth or
U.S. Constitutions.

## COUNT XXXVI

JUDGMENT DISALLOWING AGC CLAIM BASED ON PROMESA SECTION 407
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

365.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

366.   The AGC Claim asserts claims under PROMESA section 407(a).

367.   AGC does not have a claim under PROMESA section 407(a) because the Occupancy Tax Revenues were not property of any territorial instrumentality transferred in violation of applicable law, nor does AGC have any security interest against the Retained Occupancy Tax Revenues.  The Commonwealth is not a "transferee" of any property under section 407(a).

368.    AGC also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only CCDA has a claim for the transferred property against the transferee.

369.   Plaintiff is entitled to judgment disallowing the AGC Claim based on PROMESA section 407(a).

## COUNT XXXVII

JUDGMENT DISALLOWING AGC CLAIM FOR POSTPETITION INTEREST AND OTHER
POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE SECTION 502(b)(2)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

370.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

371.   The AGC Claim asserts claims for postpetition interest and other postpetition costs.

372.   Pursuant to Bankruptcy Code section 502(b)(2), AGC's claims "for unmatured interest" must be disallowed.  11 U.S.C. § 502(b)(2).

74

373.   AGC's claims for costs and expenses must be disallowed because they are not supported by any contractual right to reimbursement for costs and expenses from the Commonwealth.

374.   Plaintiff is entitled to judgment disallowing the AGC Claim for postpetition interest or other postpetition costs.

## COUNT XXXVIII

### JUDGMENT DISALLOWING AGC'S SECURED CLAIM
### (11 U.S.C. § 502)

375.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

376.   AGC has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory liens against any property in which the Commonwealth has an interest, nor has AGC perfected any alleged security interest if any, as against the Commonwealth.

377.   No Retained Occupancy Tax Revenues are funds belonging to AGC.

378.   Plaintiff is entitled to judgment disallowing AGC's claim that AGC possess a secured claim against the Commonwealth and Retained Occupancy Tax Revenues.

## COUNT XXXIX

### JUDGMENT DISALLOWING AND AVOIDING AGC CLAIM ASSERTING PERFECTED SECURITY INTERESTS PURSUANT TO BANKRUPTCY CODE SECTION 502(d)
### (48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

379.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

380.   The AGC Claim asserts the CCDA Bonds it insures are secured by a perfected security interest against the Retained Occupancy Tax Revenues.

381.    AGC does not have control over any deposit accounts or in any other funds held by the Commonwealth.

382.    No financing statements were filed against the Commonwealth regarding the CCDA Bonds.

383.    Plaintiff is entitled to judgment disallowing AGC's claim for a perfected security interest against the CCDA Bonds as against the Commonwealth.

## COUNT XL

JUDGMENT DISALLOWING AGC'S PRIORITY CLAIM
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

384.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

385.    The AGC Claim asserts amounts due to AGC are entitled to priority over other unsecured claims.

386.    AGC does not have a priority claim under Commonwealth law.  Moreover, even if AGC had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

387.    AGC does not have an administrative expense claim pursuant to PROMESA section 507(a)(2).  None of AGC's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

388.    Plaintiff is entitled to judgment disallowing all priorities asserted for the AGC Claim.

## **COUNT XLI**

JUDGMENT DISALLOWING AGC CLAIM TO A SECURITY INTEREST AGAINST
REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO RECEIVE REVENUES
ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

389.     Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-185, as if fully set forth herein.

390.     The AGC Claim asserts Occupancy Tax Revenues collected postpetition are subject

to AGC's purported security interest.

391.     AGC does not have a valid or perfected security interest against the Retained

Occupancy Tax Revenues.  Even if it did, such security interest would not attach to moneys

collected after the Commonwealth Title III petition was filed.

392.     Plaintiff is entitled to judgment disallowing the AGC Claim regarding its purported

security interest against any and all postpetition Occupancy Tax Revenues retained by the Tourism

Company.

## **COUNT XLII**

JUDGMENT DISALLOWING AGC CLAIM OF
OWNERSHIP INTEREST IN OR EQUITABLE OR CONSTRUCTIVE TRUST ON
OCCUPANCY TAX REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

393.     Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-185, as if fully set forth herein.

394.     The AGC Claim asserts the Occupancy Tax Revenues are owned by the CCDA

Bondholders and also asserts claims for an equitable or constructive trust.

395.     None of the Hotel Occupancy Tax Act statutes or CCDA Debt Documents provide

Defendants an ownership interest in Retained Occupancy Tax Revenues, including under any trust

or agency theory.

396.    There is no trust relationship between AGC and the Commonwealth, and the Retained Occupancy Tax Revenues are not sufficiently identifiable to allow AGC to establish a right as a trust beneficiary to such funds.

397.    Plaintiff is entitled to judgment disallowing AGC's claims to an ownership interest or equitable or constructive trust asserted in the AGC Claim.

## OBJECTIONS TO THE FGIC CLAIM

### COUNT XLIII

JUDGMENT DISALLOWING FGIC CLAIM AS
DUPLICATIVE OF THE BOND MASTER PROOF OF CLAIM
(11 U.S.C. § 502)

398.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

399.    The FGIC Claim seeks principal, prepetition interest, postpetition interest and fees against the Commonwealth based on the same CCDA Bonds that are the subject of the Bond Master Proof of Claim.  The FGIC Claim is duplicative of the Bond Master Proof of Claim asserted by the Fiscal Agent because they both make claims for the same exact funds owed under the CCDA Bonds.

400.    FGIC alleges (*i*) statutory liens against the Occupancy Tax Revenues, (*ii*) security interests in the Occupancy Tax Revenues, (*iii*) violations of the U.S. and Commonwealth Constitutions in failing to appropriate the Occupancy Tax Revenues to CCDA, (*iv*) violations of PROMESA section 407, (*v*) the Commonwealth's failure to appropriate the Occupancy Tax Revenues to CCDA was unlawful and a breach of contract and/or gave rise various tort claims, and (*vi*) entitlement to administrative expense priority.  All these allegations are duplicative of claims made by the Fiscal Agent in the Bond Master Proof of Claim.

401.    A failure to disallow the FGIC Claim will result in FGIC potentially receiving an unwarranted double recovery against the Commonwealth to the detriment of other stakeholders.

402.    FGIC will not be prejudiced by the disallowance of its duplicative claims because they are subsumed within the Bond Master Proof of Claim.

403.    Pursuant to Bankruptcy Code section 502, Plaintiff is entitled to judgment disallowing the FGIC Claim as duplicative of the Bond Master Proof of Claim.  In the alternative, if the FGIC Claim is not disallowed as duplicative, Plaintiff is entitled to an offset to be determined by the Court for any amount recovered by the Fiscal Agent against Plaintiff.

**COUNT XLIV**

JUDGMENT DISALLOWING FGIC CLAIM
BECAUSE OF THE CCDA BOND'S EXPRESS EXCLUSION OF LIABILITY
(11 U.S.C. §§ 501, 502)

404.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

405.    The FGIC Claim must be disallowed because FGIC does not have any right to payment from the Commonwealth, and does not possess an allowable claim against the Commonwealth.

406.    Pursuant to the express terms of the Enabling Act and the CCDA Debt Documents, the CCDA Bonds are not a debt of the Commonwealth and the Commonwealth has no liability thereon.

407.    The CCDA Bonds are non-recourse bonds, and payment for such bonds is exclusively limited by the Trust Agreement to property in which the CCDA Bondholders have a security interest.  The CCDA Debt Documents do not grant any security interest against Retained Occupancy Tax Revenues, and the Commonwealth has no obligation itself to fund the Transfer Account.  The Commonwealth is not liable for breach of any contractual, statutory, or common

law duty owned by the Tourism Company, the CCDA, the GDB, or other entities other than the Commonwealth itself.

408.    Even if funds were not deposited in the Transfer Account, the Commonwealth has no pecuniary liability to the CCDA Bondholders due to the express statutory and contractual exclusion of Commonwealth liability.

409.    Plaintiff is entitled to judgment disallowing the FGIC Claim regarding the Bonds, as the Commonwealth is not liable for any debt owed on the CCDA Bonds or with respect to deposits not made by the Tourism Company to the Transfer Account (or any other account).

## COUNT LXV

JUDGMENT DISALLOWING FGIC CLAIM ASSERTING SUBROGATION RIGHTS THAT
EXCEED THE AMOUNT PAID BY FGIC TO BONDHOLDERS AND OTHERWISE
SUBORDINATING THE FGIC CLAIM TO THE CLAIMS OF BONDHOLDERS PURSUANT
TO BANKRUPTCY CODE SECTION 509(c)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2104, 2141, 2142, 2161; 11 U.S.C. §§ 502, 509)

410.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

411.    The FGIC Claim asserts claims based on subrogation, reimbursement or contribution rights arising from payments to CCDA Bondholders holding CCDA Bonds allegedly insured by FGIC.

412.    Plaintiff is entitled to judgment disallowing the FGIC Claim for subrogation, reimbursement, and contribution rights exceeding the amount FGIC has paid to CCDA Bondholders and otherwise subordinating such portions of the FGIC Claim for the amounts it did pay Bondholders to the remaining unpaid claims of insured CCDA Bondholders.

## COUNT XLVI

**JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE OCCUPANCY TAX REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE COMMONWEALTH CONSTITUTION**
(11 U.S.C. § 502)

413.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

414.     The FGIC Claim asserts a claim against the Commonwealth based on the retention of the Occupancy Tax Revenues pursuant to Commonwealth law.

415.     The retention of the Occupancy Tax Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the Hotel Occupancy Tax Act, which provide the Occupancy Tax Revenues are "available resources" of the Commonwealth.

416.     The obligation of the Commonwealth, if any, to appropriate the Occupancy Tax Revenues to CCDA, as well as all other obligations, if any, related to the CCDA Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

417.     Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's retention of the Occupancy Tax Revenues prior to PROMESA was authorized by the CCDA Debt Documents, the Occupancy Tax Act, and Article VI, Section 8 of the Commonwealth Constitution.

## COUNT XLVII

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON UNLAWFUL RETENTION
OF THE OCCUPANCY TAX REVENUES BECAUSE THE OCCUPANCY TAX ACT WAS
PREEMPTED BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

418.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

419.    The FGIC Claim asserts a claim against the Commonwealth based on the retention
of the Occupancy Tax Revenues pursuant to Commonwealth law.

420.    The retention of the Occupancy Tax Revenues following the passage of PROMESA
does not give rise to a claim against the Commonwealth because all laws requiring transfer of
Occupancy Tax Revenues were preempted by PROMESA because they are inconsistent with
PROMESA's requirement that only appropriations certified by the Oversight Board are effective.

421.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the retention
of the Occupancy Tax Revenues was authorized pursuant to PROMESA and any inconsistent
Commonwealth law is preempted by PROMESA section 4.

## COUNT XLVIII

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON UNLAWFUL RETENTION
OF THE OCCUPANCY TAX REVENUES FOR BREACH OF CONTRACT
(11 U.S.C. § 502)

422.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

423.    The FGIC Claim asserts a breach of contract claim against the Commonwealth
based on the Commonwealth's retention of the Occupancy Tax Revenues.

424.    The Commonwealth is not liable for any breach of contract to FGIC.

425.    The Commonwealth is not a party to the CCDA Debt Documents.    The Commonwealth also did not make any contractual commitment to the CCDA Bondholders, and at most statutorily committed in the Hotel Occupancy Tax Act to "make sure that the amounts that must be deposited in [the] special account … are deposited in such special account."  13 L.P.R.A. § 2227v(a).

426.    The Commonwealth did not breach its duty (if any) to "make sure" the Tourism Company properly funded the Transfer Account.  Both the Commonwealth's duty (if any) to "make sure" the Tourism Company funded the Transfer Account, and the Tourism Company's duty to fund the account, were subject to Article VI, Section 8 of the Commonwealth Constitution. Not funding the Transfer Account was permissible pursuant to the Pre-PROMESA Retention Actions and does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

427.    The Tourism Company's failure fund the Transfer Account following the passage of PROMESA does not give rise to a claim against the Commonwealth because such retention is consistent with PROMESA section 202 and the fiscal plans and budgets certified by the Oversight Board thereunder.  Any Commonwealth laws that could have required the Commonwealth or Tourism Company to appropriate the Occupancy Tax Revenues to CCDA (including the Hotel Occupancy Tax Act) are inconsistent with PROMESA and preempted by PROMESA.

428.    The Commonwealth did not breach any contractual obligation owed to CCDA Bondholders.

429.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's retention of the Occupancy Tax Revenues did not constitute a breach of contract.

## COUNT XLIX

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON UNLAWFUL RETENTION
OF THE OCCUPANCY TAX REVENUES FOR COMMON LAW TORT CLAIMS
(11 U.S.C. § 502)

430.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

431.    The FGIC Claim asserts tort-based claims, which purportedly arise out of the retention of the Occupancy Tax Revenues.

432.    The retention of the Occupancy Tax Revenues was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to FGIC for any tort claims under any theory.

433.    A conversion claim asserted by FGIC fails because (*i*) FGIC does not have a security interest against any Commonwealth funds and any Occupancy Tax Revenues beyond moneys actually deposited in Transfer Account, (*ii*) the retention of Retained Occupancy Tax Revenues not appropriated and transferred to the Transfer Account prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the CCDA Bondholders do not have any other property interest in the Occupancy Tax Revenues, and (*iv*) the retention of the Retained Occupancy Tax Revenues not appropriated and transferred to the Transfer Account after the enactment of PROMESA was proper because the Occupancy Tax Act was preempted.

434.    A tortious interference with contract claim asserted by AGC fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the Retained Occupancy Tax Revenues due to preemption of the Occupancy Tax Act, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to "make sure" the Transfer Account was fully funded because that obligation was subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

435.    The FGIC Claims' claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth has not made any material misstatements of fact or engaged in any fraudulent conduct, (*iii*) statements made in the Enabling Act and Occupancy Tax Act are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim, and (*iv*) statements made in the CCDA Debt Documents were truthful when made.

436.    The FGIC Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

437.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the retention of the Occupancy Tax Revenues did not constitute a tort.

## COUNT L

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE OCCUPANCY TAX REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

438.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

439.    The FGIC Claim asserts a claim against the Commonwealth based on the retention of the Occupancy Tax Revenues pursuant to Commonwealth law.

440.    The retention of the Occupancy Tax Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the

Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

441.     Plaintiff is entitled to judgment disallowing the FGIC Claim because the retention of the Occupancy Tax Revenues prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

## COUNT LI

**JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED**
**(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)**

442.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

443.     FGIC alleges the retention of the Occupancy Tax Revenues violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

444.     The retention of the Occupancy Tax Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because prior to enactment of PROMESA the retention was authorized under Commonwealth law existing when the Bonds were issued, and after enactment of PROMESA the law requiring transfer of the Occupancy Tax Revenues was preempted.

445.     Plaintiff is entitled to judgment disallowing the FGIC Claim because there has been no impairment of FGIC's contractual rights. In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by FGIC based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT LII

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE NO LEGISLATION CREATED AN IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

446.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

447.    FGIC alleges the retention of the Occupancy Tax Revenues violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

448.    The retention of the Occupancy Tax Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because no Commonwealth legislation was passed that impaired FGIC's contract rights, if any.

449.    Plaintiff is entitled to judgment disallowing the FGIC Claim because there is no Commonwealth legislation enacted after the CCDA Bonds were issued that impaired FGIC's contract rights, if any.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by FGIC based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable claim.

## COUNT LIII

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE
OCCUPANCY TAX REVENUES WAS DUE TO PROMESA, NOT LEGISLATION
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

450.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

451.   FGIC alleges the retention of the Occupancy Tax Revenues violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

452.   The retention of the Occupancy Tax Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the Commonwealth's retention of the Occupancy Tax Revenues was effectuated in accordance with PROMESA, rendering it reasonable and necessary.

453.   Plaintiff is entitled to judgment disallowing the FGIC Claim.

454.   In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by FGIC based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## **COUNT LIV**

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE FGIC DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

455.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

456.   FGIC asserts the lawful retention of Occupancy Tax Revenues constitutes a taking.

457.   The retention of the Occupancy Tax Revenues does not constitute a taking because FGIC has no property interest in the Occupancy Tax Revenues.

458.   Plaintiff is entitled to judgment disallowing the FGIC Claim because FGIC has no property interest in the Retained Occupancy Tax Revenues and therefore cannot assert a takings claim.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by FGIC based on the Takings Clause is a dischargeable claim.

## COUNT LV

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON VIOLATIONS OF THE
TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE
FGIC HAD A REASONABLE EXPECTATION THE COMMONWEALTH WOULD RETAIN
THE OCCUPANCY TAX REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

459.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

460.    FGIC asserts the lawful retention of Occupancy Tax Revenues constitutes a taking.

461.    The retention of the Occupancy Tax Revenues does not constitute an impermissible
taking because such retention did not interfere with FGIC's reasonable expectations.

462.    FGIC knew or should have known, pursuant to Article VI, Section 8 and Article II,
Sections 18 and 19 of the Commonwealth Constitution, the Hotel Occupancy Tax Act, and the
CCDA Debt Documents, that the Occupancy Tax Revenues were subject to retention.

463.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the retention
of the Occupancy Tax Revenues did not interfere with FGIC's reasonable expectations regarding
the Occupancy Tax Revenues.

464.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held
by FGIC based on the Takings Clause is a dischargeable claim.

## COUNT LVI

JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS
OF THE DUE PROCESS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

465.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

466.   FGIC alleges the retention of Occupancy Tax Revenues constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violation.

467.   FGIC filed a proof of claim pursuant to a court-supervised process in which it can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.

468.   The FGIC Claim does not assert any additional basis on which the retention of Occupancy Tax Revenues constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions separate from its Takings Clause claim.

469.   Because the FGIC Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, FGIC's Due Process claim should be disallowed because it has no property rights in the Occupancy Tax Revenues retained by the Tourism Company.

470.   Plaintiff is entitled to judgment disallowing the FGIC Claim because the retention of the Occupancy Tax Revenues did not violate the Due Process Clause of the Commonwealth or U.S. Constitutions.

## COUNT LVII

JUDGMENT DISALLOWING FGIC CLAIM BASED ON PROMESA SECTION 407
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

471.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

472.   The FGIC Claim asserts claims under PROMESA section 407(a).

473.   FGIC does not have a claim under PROMESA section 407(a) because the Occupancy Tax Revenues were not property of any territorial instrumentality transferred in

violation of applicable law, nor does FGIC have any security interest against the Retained Occupancy Tax Revenues.  The Commonwealth is not a "transferee" of any property under section 407(a).

474.    FGIC also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only CCDA has a claim for the transferred property against the transferee.

475.    Plaintiff is entitled to judgment disallowing the FGIC Claim based on PROMESA section 407(a).

## <u>COUNT LVIII</u>

JUDGMENT DISALLOWING FGIC CLAIM FOR POSTPETITION INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE SECTION 502(b)(2)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

476.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

477.    The FGIC Claim asserts claims for postpetition interest and other postpetition costs.

478.    Pursuant to Bankruptcy Code section 502(b)(2), FGIC's claims "for unmatured interest" must be disallowed.  11 U.S.C. § 502(b)(2).

479.    FGIC's claims for costs and expenses must be disallowed because they are not supported by any contractual right to reimbursement for costs and expenses from the Commonwealth.

480.    Plaintiff is entitled to judgment disallowing the FGIC Claim for postpetition interest or other postpetition costs.

## COUNT LIX

JUDGMENT DISALLOWING FGIC'S SECURED CLAIM
(11 U.S.C. § 502)

481.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

482.   FGIC has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory liens against any property in which the Commonwealth has an interest, nor has FGIC perfected any alleged security interest if any, as against the Commonwealth.

483.   No Retained Occupancy Tax Revenues are funds belonging to FGIC.

484.   Plaintiff is entitled to judgment disallowing FGIC's claim that FGIC possess a secured claim against the Commonwealth and Retained Occupancy Tax Revenues.

## COUNT LX

JUDGMENT DISALLOWING AND AVOIDING FGIC CLAIM ASSERTING PERFECTED
SECURITY INTERESTS PURSUANT TO BANKRUPTCY CODE SECTION 502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

485.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

486.   The FGIC Claim asserts the CCDA Bonds it insures are secured by a perfected security interest against the Retained Occupancy Tax Revenues.

487.   FGIC does not have control over any deposit accounts or in any other funds held by the Commonwealth.

488.   No financing statements were filed against the Commonwealth regarding the CCDA Bonds.

489.     Plaintiff is entitled to judgment disallowing FGIC's claim for a perfected security interest against the CCDA Bonds as against the Commonwealth.

## COUNT LXI

### JUDGMENT DISALLOWING FGIC'S PRIORITY CLAIM
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

490.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

491.     The FGIC Claim asserts amounts due to FGIC are entitled to priority over other unsecured claims.

492.     FGIC does not have a priority claim under Commonwealth law.  Moreover, even if FGIC had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

493.     FGIC does not have an administrative expense claim pursuant to PROMESA section 507(a)(2).  None of FGIC's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

494.     Plaintiff is entitled to judgment disallowing all priorities asserted for the FGIC Claim.

## COUNT LXII

### JUDGMENT DISALLOWING FGIC CLAIM TO A SECURITY INTEREST AGAINST REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

495.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

496.     The FGIC Claim asserts Occupancy Tax Revenues collected postpetition are subject to FGIC's purported security interest.

93

497.    FGIC does not have a valid or perfected security interest against the Retained Occupancy Tax Revenues.  Even if it did, such security interest would not attach to moneys collected after the Commonwealth Title III petition was filed.

498.    Plaintiff is entitled to judgment disallowing the FGIC Claim regarding its purported security interest against any and all postpetition Occupancy Tax Revenues retained by the Tourism Company.

## COUNT LXIII

JUDGMENT DISALLOWING FGIC CLAIM OF
OWNERSHIP INTEREST IN OR EQUITABLE OR CONSTRUCTIVE TRUST ON
OCCUPANCY TAX REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

499.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

500.    The FGIC Claim asserts the Occupancy Tax Revenues are owned by the CCDA Bondholders and also asserts claims for an equitable or constructive trust.

501.    None of the Hotel Occupancy Tax Act statutes or CCDA Debt Documents provide Defendants an ownership interest in Retained Occupancy Tax Revenues, including under any trust or agency theory.

502.    There is no trust relationship between FGIC and the Commonwealth, and the Retained Occupancy Tax Revenues are not sufficiently identifiable to allow FGIC to establish a right as a trust beneficiary to such funds.

503.    Plaintiff is entitled to judgment disallowing FGIC's claims to an ownership interest or equitable or constructive trust asserted in the FGIC Claim.

## OBJECTIONS TO THE BOND MASTER PROOF OF CLAIM

### COUNT LXIV

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM
BECAUSE OF THE CCDA BOND'S EXPRESS EXCLUSION OF LIABILITY
(11 U.S.C. §§ 501, 502)

504.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

505.    The Bond Master Proof of Claim must be disallowed because BNYM, as Fiscal Agent, does not have any right to payment from the Commonwealth, and does not possess an allowable claim against the Commonwealth.

506.    Pursuant to the express terms of the Enabling Act and the CCDA Debt Documents, the CCDA Bonds are not a debt of the Commonwealth and the Commonwealth has no liability thereon.

507.    The CCDA Bonds are non-recourse bonds, and payment for such bonds is exclusively limited by the Trust Agreement to property in which the CCDA Bondholders have a security interest.  The CCDA Debt Documents do not grant any security interest against Retained Occupancy Tax Revenues, and the Commonwealth has no obligation itself to fund the Transfer Account.  The Commonwealth is not liable for breach of any contractual, statutory, or common law duty owned by the Tourism Company, the CCDA, the GDB, or other entities other than the Commonwealth itself.

508.    Even if funds were not deposited in the Transfer Account, the Commonwealth has no pecuniary liability to the CCDA Bondholders due to the express statutory and contractual exclusion of Commonwealth liability.

509.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim regarding the Bonds, as the Commonwealth is not liable for any debt owed on the CCDA Bonds or with respect to deposits not made by the Tourism Company to the Transfer Account (or any other account).

## COUNT LXV

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE OCCUPANCY TAX REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

510.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

511.    The Bond Master Proof of Claim asserts a claim against the Commonwealth based on the retention of the Occupancy Tax Revenues pursuant to Commonwealth law.

512.    The retention of the Occupancy Tax Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the Hotel Occupancy Tax Act, which provide the Occupancy Tax Revenues are "available resources" of the Commonwealth.

513.    The obligation of the Commonwealth, if any, to appropriate the Occupancy Tax Revenues to CCDA, as well as all other obligations, if any, related to the CCDA Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

514.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim because the Commonwealth's retention of the Occupancy Tax Revenues prior to PROMESA was authorized by the CCDA Debt Documents, the Occupancy Tax Act, and Article VI, Section 8 of the Commonwealth Constitution.

## COUNT LXVI

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM PREDICATED ON
UNLAWFUL RETENTION OF THE OCCUPANCY TAX REVENUES BECAUSE THE
OCCUPANCY TAX ACT WAS PREEMPTED BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

515.     Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

516.     The Bond Master Proof of Claim asserts a claim against the Commonwealth based
on the retention of the Occupancy Tax Revenues pursuant to Commonwealth law.

517.     The retention of the Occupancy Tax Revenues following the passage of PROMESA
does not give rise to a claim against the Commonwealth because all laws requiring transfer of
Occupancy Tax Revenues were preempted by PROMESA because they are inconsistent with
PROMESA's requirement that only appropriations certified by the Oversight Board are effective.

518.     Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim
because the retention of the Occupancy Tax Revenues was authorized pursuant to PROMESA and
any inconsistent Commonwealth law is preempted by PROMESA section 4.

## COUNT LXVII

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM PREDICATED ON
UNLAWFUL RETENTION OF THE OCCUPANCY TAX REVENUES FOR BREACH OF
CONTRACT
(11 U.S.C. § 502)

519.     Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

520.     The Bond Master Proof of Claim asserts a breach of contract claim against the
Commonwealth based on the Commonwealth's retention of the Occupancy Tax Revenues.

521.     The Commonwealth is not liable for any breach of contract to BNYM, as Fiscal
Agent.

522.    The Commonwealth is not a party to the CCDA Debt Documents.   The Commonwealth also did not make any contractual commitment to the CCDA Bondholders, and at most statutorily committed in the Hotel Occupancy Tax Act to "make sure that the amounts that must be deposited in [the] special account … are deposited in such special account."  13 L.P.R.A. § 2227v(a).

523.    The Commonwealth did not breach its duty (if any) to "make sure" the Tourism Company properly funded the Transfer Account.  Both the Commonwealth's duty (if any) to "make sure" the Tourism Company funded the Transfer Account, and the Tourism Company's duty to fund the account, were subject to Article VI, Section 8 of the Commonwealth Constitution. Not funding the Transfer Account was permissible pursuant to the Pre-PROMESA Retention Actions and does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

524.    The Tourism Company's failure fund the Transfer Account following the passage of PROMESA does not give rise to a claim against the Commonwealth because such retention is consistent with PROMESA section 202 and the fiscal plans and budgets certified by the Oversight Board thereunder.  Any Commonwealth laws that could have required the Commonwealth or Tourism Company to appropriate the Occupancy Tax Revenues to CCDA (including the Hotel Occupancy Tax Act) are inconsistent with PROMESA and preempted by PROMESA.

525.    The Commonwealth did not breach any contractual obligation owed to CCDA Bondholders.

526.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim because the Commonwealth's retention of the Occupancy Tax Revenues did not constitute a breach of contract.

## **COUNT LXVIII**

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE OCCUPANCY TAX REVENUES FOR COMMON LAW TORT CLAIMS
(11 U.S.C. § 502)

527.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

528.    The Bond Master Proof of Claim asserts various claims—including tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, unjust enrichment, equitable or constructive trust, equitable subordination, breach of contract, indemnification, reimbursement, and contribution—which all purportedly arise out of the retention of the Occupancy Tax Revenues.

529.    The retention of the Occupancy Tax Revenues was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to BNYM, as Fiscal Agent, for any tort claims under any theory.

530.    The Bond Master Proof of Claim's conversion claim fails because (*i*) BNYM, as Fiscal Agent, does not have a security interest against any Commonwealth funds and any Occupancy Tax Revenues beyond moneys actually deposited in Transfer Account, (*ii*) the retention of Retained Occupancy Tax Revenues not appropriated and transferred to the Transfer Account prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the CCDA Bondholders do not have any other property interest in the Occupancy Tax Revenues, and (*iv*) the retention of the Retained Occupancy Tax Revenues not appropriated

and transferred to the Transfer Account after the enactment of PROMESA was proper because the Occupancy Tax Act was preempted.

531.    The Bond Master Proof of Claim's tortious interference with contract claim fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the Retained Occupancy Tax Revenues due to preemption of the Occupancy Tax Act, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to "make sure" the Transfer Account was fully funded because that obligation was subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

532.    The Bond Master Proof of Claim's claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth has not made any material misstatements of fact or engaged in any fraudulent conduct, (*iii*) statements made in the Enabling Act and Occupancy Tax Act are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim, and (*iv*) statements made in the CCDA Debt Documents were truthful when made.

533.    The Bond Master Proof of Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

534.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim because the retention of the Occupancy Tax Revenues did not constitute tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, unjust enrichment, equitable or constructive trust, equitable subordination, breach of contract, indemnification, reimbursement, or contribution.

## COUNT LXIX

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE OCCUPANCY TAX REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

535.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

536.    The Bond Master Proof of Claim asserts a claim against the Commonwealth based on the retention of the Occupancy Tax Revenues pursuant to Commonwealth law.

537.    The retention of the Occupancy Tax Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

538.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim because the retention of the Occupancy Tax Revenues prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

## COUNT LXX

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH
AND U.S. CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

539. Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

540. BNYM, as Fiscal Agent, alleges the retention of the Occupancy Tax Revenues violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

541. The retention of the Occupancy Tax Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because prior to enactment of PROMESA the retention was authorized under Commonwealth law existing when the Bonds were issued, and after enactment of PROMESA the law requiring transfer of the Occupancy Tax Revenues was preempted.

542. Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim because there has been no impairment of BNYM's contractual rights, as Fiscal Agent. In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal Agent, based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT LXXI

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH
AND U.S. CONSTITUTIONS BECAUSE NO LEGISLATION CREATED AN IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

543. Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

544.    BNYM, as Fiscal Agent, alleges the retention of the Occupancy Tax Revenues violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

545.    The retention of the Occupancy Tax Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because no Commonwealth legislation was passed that impaired BNYM's contract rights, as Fiscal Agent, if any.

546.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim because there is no Commonwealth legislation enacted after the CCDA Bonds were issued that impaired BNYM's contract rights, as Fiscal Agent, if any.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal Agent, based on the Contracts Clause is—at most—a prepetition, unsecured, dischargeable claim.

## COUNT LXXII

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH
AND U.S. CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE
OCCUPANCY TAX REVENUES WAS DUE TO PROMESA, NOT LEGISLATION
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

547.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

548.    BNYM, as Fiscal Agent, alleges the retention of the Occupancy Tax Revenues violates the Contracts Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violations.

549.    The retention of the Occupancy Tax Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the Commonwealth's retention of the Occupancy Tax Revenues was effectuated in accordance with PROMESA, rendering it reasonable and necessary.

103

550.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim.

551.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal Agent, based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT LXXIII

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM PREDICATED ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE BNYM, AS FISCAL AGENT, DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

552.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

553.    BNYM, as Fiscal Agent, asserts the lawful retention of Occupancy Tax Revenues constitutes a taking.

554.    The retention of the Occupancy Tax Revenues does not constitute a taking because BNYM, as Fiscal Agent, has no property interest in the Occupancy Tax Revenues.

555.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim because BNYM, as Fiscal Agent, has no property interest in the Retained Occupancy Tax Revenues and therefore cannot assert a takings claim.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal Agent, based on the Takings Clause is a dischargeable claim.

## **COUNT LXXIV**

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM PREDICATED ON
VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE BNYM, AS FISCAL AGENT, HAD A REASONABLE
EXPECTATION THE COMMONWEALTH WOULD RETAIN THE OCCUPANCY TAX
REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

556.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

557.    BNYM, as Fiscal Agent, asserts the lawful retention of Occupancy Tax Revenues
constitutes a taking.

558.    The retention of the Occupancy Tax Revenues does not constitute an impermissible
taking because such retention did not interfere with BNYM's reasonable expectations, as Fiscal
Agent.

559.    BNYM, as Fiscal Agent, knew or should have known, pursuant to Article VI,
Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the Hotel
Occupancy Tax Act, and the CCDA Debt Documents, that the Occupancy Tax Revenues were
subject to retention.

560.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim
because the retention of the Occupancy Tax Revenues did not interfere with BNYM's reasonable
expectations, as Fiscal Agent, regarding the Occupancy Tax Revenues.

561.    In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held
by BNYM, as Fiscal Agent, based on the Takings Clause is a dischargeable claim.

## COUNT LXXV

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

562.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

563.    BNYM, as Fiscal Agent, alleges the retention of Occupancy Tax Revenues constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions, and asserts a claim against the Commonwealth as a result of the alleged violation.

564.    BNYM, as Fiscal Agent, filed a proof of claim pursuant to a court-supervised process in which it can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.

565.    The Bond Master Proof of Claim does not assert any additional basis on which the retention of Occupancy Tax Revenues constitutes a violation of the Due Process Clause of the Commonwealth and U.S. Constitutions separate from its Takings Clause claim.

566.    Because the Bond Master Proof of Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, BNYM's Due Process claim should be disallowed because, as Fiscal Agent, it has no property rights in the Occupancy Tax Revenues retained by the Tourism Company.

567.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim because the retention of the Occupancy Tax Revenues did not violate the Due Process Clause of the Commonwealth or U.S. Constitutions.

## COUNT LXXVI

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM BASED ON PROMESA
SECTION 407
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

568.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

569.    The Bond Master Proof of Claim asserts claims under PROMESA section 407(a).

570.    BNYM, as Fiscal Agent, does not have a claim under PROMESA section 407(a) because the Occupancy Tax Revenues were not property of any territorial instrumentality transferred in violation of applicable law, nor does BNYM, as Fiscal Agent, have any security interest against the Retained Occupancy Tax Revenues.  The Commonwealth is not a "transferee" of any property under section 407(a).

571.     BNYM, as Fiscal Agent, also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only CCDA has a claim for the transferred property against the transferee.

572.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim based on PROMESA section 407(a).

## COUNT LXXVII

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM FOR POSTPETITION
INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE
SECTION 502(b)(2)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

573.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

574.    The Bond Master Proof of Claim asserts claims for postpetition interest and other postpetition costs.

575.    Pursuant to Bankruptcy Code section 502(b)(2), BNYM's claims, as Fiscal Agent, "for unmatured interest" must be disallowed.  11 U.S.C. § 502(b)(2).

576.    BNYM's claims, as Fiscal Agent, for costs and expenses must be disallowed because they are not supported by any contractual right to reimbursement for costs and expenses from the Commonwealth.

577.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim for postpetition interest or other postpetition costs.

### COUNT LXXVIII

JUDGMENT DISALLOWING BNYM'S SECURED CLAIM, AS FISCAL AGENT
(11 U.S.C. § 502)

578.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

579.    BNYM, as Fiscal Agent, has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory liens against any property in which the Commonwealth has an interest, nor has BNYM, as Fiscal Agent, perfected any alleged security interest if any, as against the Commonwealth.

580.    No Retained Occupancy Tax Revenues are funds belonging to BNYM, as Fiscal Agent.

581.    Plaintiff is entitled to judgment disallowing BNYM's claim that BNYM, as Fiscal Agent, possess a secured claim against the Commonwealth and Retained Occupancy Tax Revenues.

## COUNT LXXIX

JUDGMENT DISALLOWING AND AVOIDING BOND MASTER PROOF OF CLAIM
ASSERTING PERFECTED SECURITY INTERESTS PURSUANT TO BANKRUPTCY
CODE SECTION 502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

582.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

583.    The Bond Master Proof of Claim asserts the CCDA Bonds it insures are secured by a perfected security interest against the Retained Occupancy Tax Revenues.

584.    BNYM, as Fiscal Agent, does not have control over any deposit accounts or in any other funds held by the Commonwealth.

585.    No financing statements were filed against the Commonwealth regarding the CCDA Bonds.

586.    Plaintiff is entitled to judgment disallowing BNYM's claim, as Fiscal Agent, for a perfected security interest against the CCDA Bonds as against the Commonwealth.

## COUNT LXXX

JUDGMENT DISALLOWING BNYM'S PRIORITY CLAIM, AS FISCAL AGENT
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

587.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

588.    The Bond Master Proof of Claim asserts amounts due to BNYM, as Fiscal Agent, are entitled to priority over other unsecured claims.

589.    BNYM, as Fiscal Agent, does not have a priority claim under Commonwealth law. Moreover, even if BNYM, as Fiscal Agent, had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

590.    BNYM, as Fiscal Agent, does not have an administrative expense claim pursuant to PROMESA section 507(a)(2).  None of BNYM's claims, as Fiscal Agent, are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

591.    Plaintiff is entitled to judgment disallowing all priorities asserted for the Bond Master Proof of Claim.

### COUNT LXXXI

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM TO A SECURITY
INTEREST AGAINST REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO
RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE
SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

592.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-185, as if fully set forth herein.

593.    The Bond Master Proof of Claim asserts Occupancy Tax Revenues collected postpetition are subject to BNYM's purported security interest, as Fiscal Agent.

594.    BNYM, as Fiscal Agent, does not have a valid or perfected security interest against the Retained Occupancy Tax Revenues.  Even if it did, such security interest would not attach to moneys collected after the Commonwealth Title III petition was filed.

595.    Plaintiff is entitled to judgment disallowing the Bond Master Proof of Claim regarding its purported security interest against any and all postpetition Occupancy Tax Revenues retained by the Tourism Company.

## COUNT LXXXII

JUDGMENT DISALLOWING BOND MASTER PROOF OF CLAIM OF
OWNERSHIP INTEREST IN OR EQUITABLE OR CONSTRUCTIVE TRUST ON
OCCUPANCY TAX REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

596.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-185, as if fully set forth herein.

597.    The Bond Master Proof of Claim asserts the Occupancy Tax Revenues are owned
by the CCDA Bondholders and also asserts claims for an equitable or constructive trust.

598.    None of the Hotel Occupancy Tax Act statutes or CCDA Debt Documents provide
Defendants an ownership interest in Retained Occupancy Tax Revenues, including under any trust
or agency theory.

599.    There is no trust relationship between BNYM, as Fiscal Agent, and the
Commonwealth, and the Retained Occupancy Tax Revenues are not sufficiently identifiable to
allow BNYM, as Fiscal Agent, to establish a right as a trust beneficiary to such funds.

600.    Plaintiff is entitled to judgment disallowing BNYM's claims, as Fiscal Agent, to an
ownership interest or equitable or constructive trust asserted in the Bond Master Proof of Claim.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays that judgment be entered in its favor and against Defendants,
and each of them, as follows:

A.    Disallowing each and every one of Defendants' Proofs of Claim regarding the
bonds other than the Fiscal Agents' Bond Master Proof of Claim as duplicative of the Fiscal
Agent's Bond Master Proof of Claim;

B.    Disallowing each and every one of Defendants' Proofs of Claim asserting claims
against the Commonwealth for any alleged liability under the CCDA Bonds;

C.     Disallowing each and every one of Defendants' Proofs of Claim asserting subrogation rights exceeding the amount paid by Defendants to CCDA Bondholders or otherwise subordinating Defendants' Proofs of Claim to the claims of CCDA Bondholders pursuant to Bankruptcy Code section 509(c);

D.     Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth for retention of the Occupancy Tax Revenues;

E.     Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth predicated on the Contracts Clause of the Commonwealth and U.S. Constitutions;

F.     Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth predicated on the Takings Clause of the Commonwealth and U.S. Constitutions;

G.     Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth predicated on the Due Process Clause of the Commonwealth and U.S. Constitutions;

H.     Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth pursuant to PROMESA section 407(a);

I.     Disallowing each and every one of Defendants' Proofs of Claim asserting claims for postpetition interest and other postpetition costs pursuant to Bankruptcy Code section 502(b)(2);

J.     Disallowing each and every one of Defendants' Proofs of Claim asserting secured claims against the Commonwealth related to the Occupancy Tax Revenues;

K.      Disallowing each and every one of Defendants' Proofs of Claim asserting perfected security interests pursuant to Bankruptcy Code section 502(d);

L.      Disallowing each and every one of Defendants' Proofs of Claim asserting priority claims against the Commonwealth related to the Occupancy Tax Revenues;

M.      Disallowing each and every one of Defendants' Proofs of Claim asserting a security interest against revenues collected postpetition and/or rights to receive revenues arising postpetition pursuant to Bankruptcy Code section 552;

N.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims to an ownership interest or equitable or constructive trust in the Retained Occupancy Tax Revenues; and

O.      Granting such other and further relief as the Court deems just and proper.

*[Remainder of page intentionally left blank]*

Dated: January 16, 2020
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:    (787) 764-8181
Fax:    (787) 753-8944
Email: hermann.bauer@oneillborges.com

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Jeffrey Levitan
Timothy W. Mungovan
Ehud Barak
 (Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:    (212) 969-3000
Fax:    (212) 969-2900
Email: mbienenstock@proskauer.com
      jlevitan@proskauer.com
      tmungovan@proskauer.com
      ebarak@proskauer.com

Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:    (310) 557-2900
Fax:    (310) 557-2193
Email: mfirestein@proskauer.com
      lrappaport@proskauer.com

Colin R. Kass
(Admitted *Pro Hac Vice)*
**PROSKAUER ROSE LLP**
1001 Pennsylvania Ave, N.W.
Washington, DC 20004
Tel: (202) 416-6800

114

Fax: (202) 416-6899
Email:  ckass@proskauer.com

*Attorneys for the Financial
Oversight and Management Board
as Representative of the Commonwealth*