UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO et al.,<br><br>   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA),<br><br>   Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |

MEMORANDUM ORDER GRANTING IN PART OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION IN LIMINE TO STRIKE AND EXCLUDE IMPROPER LAY OPINION TESTIMONY OF FREDRIC CHAPADOS REGARDING ALLEGED EFFECT OF 9019 SETTLEMENT ON PREPA TRANSFORMATION

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Before the Court is the *Official Committee of Unsecured Creditors' Motion In Limine to Strike and Exclude Improper Lay Opinion Testimony of Fredric Chapados Regarding Alleged Effect of 9019 Settlement on PREPA Transformation* (Docket Entry No. 9258 in Case No. 17-3283 and Docket Entry No. 1752 in Case No. 17-4780,[2] the "Motion"), filed by the Official Committee of Unsecured Creditors (the "Committee"). In the Motion, the Committee seeks entry of an order striking and excluding the entirety of the declaration submitted by Frederic Chapados (Docket Entry No. 1427, the "Chapados Declaration") and precluding Mr. Chapados from offering similar testimony at the hearing on the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* (Docket Entry No. 1235, the "9019 Motion") (the "9019 Hearing"). In the alternative, the Committee seeks entry of an order striking a number of specific opinions set forth in the Chapados Declaration and precluding Mr. Chapados from offering testimony on those specific opinions at the 9019 Hearing. The Court has jurisdiction of this contested matter pursuant to Section 306 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2166.[3]

The Court has reviewed carefully the parties' submissions.[4] Familiarity with the 9019 Motion practice is assumed. For the reasons that follow, the Motion is granted in part and denied in part.

---

[2] All docket entry references are to entries in Case No. 17-4780, unless otherwise indicated.

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[4] In addition to the Motion, the Court has thoroughly reviewed the following submissions: the *Opposition of the Financial Oversight and Management Board for Puerto Rico to the*

BACKGROUND

On July 2, 2019, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and the Puerto Rico Electric Power Authority ("PREPA" and, collectively with the Oversight Board and AAFAF, the "Government Parties") submitted the Chapados Declaration in support of the 9019 Motion. (Mot. ¶ 13.) Mr. Chapados is a Director of Citigroup Global Markets Inc. ("Citi") who works with and advises Citi's Power and Utilities clients. (Chapados Decl. ¶¶ 1, 4.) The Government Parties rely on the Chapados Declaration in support of their argument that the restructuring of PREPA's legacy debt and settlement of related litigation pursuant to the Definitive Restructuring Support Agreement (the "RSA") will facilitate PREPA's planned transformation process (the "Transformation") by "removing significant uncertainty regarding factors a potential private operator of PREPA's system would assess," thereby aiding PREPA's efforts to find an operator for its transmission and distribution ("T&D") system. (Opp. ¶ 1; see also Mot. ¶ 1.)

On July 9, 2019, after the Committee served subpoenas on four potential operators for PREPA's T&D system, the Committee, Unión de Trabajadores de la Industria Eléctrica y Riego, Inc., and the parties to the RSA (the "RSA Parties," including the Government Parties) executed a stipulation (the "Stipulation") whereby the RSA Parties "expressly agreed not

---

*Committee's Motion In Limine to Exclude the Testimony of Frederic Chapados* (Docket Entry No. 1785, the "Opposition"), the *Official Committee of Unsecured Creditors' Reply in Support of Motion In Limine to Strike and Exclude Improper Lay Opinion Testimony of Frederic Chapados Regarding Alleged Effect of 9019 Settlement on PREPA Transformation* (Docket Entry No. 1793, the "Reply"), and the *Joinder of Cortland Capital Market Services LLC, as Administrative Agent, and Solus to Motion In Limine to Strike and Exclude Improper Lay Opinion Testimony of Frederic Chapados Regarding Alleged Effect of 9019 Settlement on PREPA Transformation* (Docket Entry No. 1754).

to rely, either directly or indirectly, on any actions, statements or other behaviors of potential bidders in the Transformation in exchange for the Committee's agreement to withdraw subpoenas it had issued to such bidders." (Mot. ¶ 4.) Specifically, Paragraph 3 of the Stipulation provides in relevant part that, in exchange for the Committee's agreement to withdraw its subpoenas:

> [T]he RSA Parties agree that they will not, in connection with the 9019 Motion, (i) present the testimony of (whether by deposition, declaration, live in-court testimony, or otherwise) any employee or other representative of any [bidder] or any other potential investor or partner in the Proposed Transformation [(any "Transformation Party")] . . . , or (ii) otherwise attempt to rely upon, either directly or indirectly, any statements, assertions, opinions, actions taken, actions not taken, or views expressed by a Transformation Party to support any allegation, argument, request for relief, or other position in connection with the 9019 Motion. For the avoidance of doubt, the foregoing means, by way of illustration only and without limitation, that no pleadings filed by the RSA Parties and no witness or expert providing testimony on behalf of or called by the RSA Parties may use or refer to information acquired from or attributed to a Transformation Party to support the assertion in the 9019 Motion that the settlement of PREPA bond claims will help facilitate the Proposed Transformation; *provided, however,* nothing herein shall prevent or restrict the RSA Parties from offering evidence (whether by deposition, declaration, live in-court testimony, or otherwise) based upon a declarant's/witness' general knowledge of or experience in the marketplace and with participants in the marketplace, in all cases unrelated to the Proposed Transformation, regarding a potential investor or partner's concern regarding the disposition or repayment of prepetition debt, but without reference to any statement (oral or written) by any particular person or entity.

(Id. Ex. A, ¶ 3.)

The Committee filed its Motion on November 19, 2019, arguing that the testimony proffered in the Chapados Declaration fails to satisfy the requirements for lay opinion testimony set forth in Federal Rule of Evidence 701, is inconsistent with this Court's previous determinations as to the scope of matters to be considered at the 9019 Hearing, and violates the

foregoing Stipulation, and must therefore be excluded. The Committee argues that the entirety of the Chapados Declaration should be stricken because, "once stripped of its inadmissible opinions, the declaration is neither relevant nor helpful to the Court's analysis of the 9019 Motion." (Mot. ¶ 6.) In the alternative, the Committee asks that the Court strike a number of specific paragraphs of the Chapados Declaration and prevent Mr. Chapados from offering testimony on those specific opinions at the 9019 Hearing. (Id.)

## DISCUSSION

Federal Rule of Evidence 701 requires that, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. For lay witness testimony to be admissible under Rule 701, each requirement of the rule must be satisfied. In the First Circuit, Rule 701 is understood as authorizing the admission of testimony "based on the lay expertise a witness personally acquires through experience, often on the job" and, although not all job-based knowledge should be considered nontechnical or nonspecialized, "lay experiential expertise refers to those processes that are well founded on personal knowledge and susceptible to cross-examination." United States v. Vega, 813 F.3d 386, 394 (1st Cir. 2016) (internal quotations and citations omitted). Such lay expertise is the product of reasoning processes familiar to the average person in everyday life. Id.

The Committee contends that the testimony proffered in the Chapados Declaration fails to satisfy the requirements of Rule 701. The Committee first asserts that the

opinions offered by Mr. Chapados are not common-sense conclusions that a lay witness without specialized training and experience could draw, but are instead based on his alleged expertise as an investment banker in the utilities industry.  (Mot. ¶ 3.)  The Committee, citing Bank of China v. NBM LLC, 359 F.3d 171, 181-82 (2d Cir. 2004), argues that the testimony of bankers and other finance professionals regarding transactions or practices in their fields falls within the scope of expert evidence and is therefore impermissible lay opinion testimony.  (Id. at ¶ 32.)  Pointing specifically to Paragraph 17 of the Chapados Declaration, the Committee asserts that Mr. Chapados's application of his "education, experience, and training as an investment banker in the utilities industry" to the proposed settlement cannot be considered the product of reasoning processes familiar to the average person in everyday life.  (Id. at ¶ 33 (citing Vega, 813 F.3d at 394).)

The Committee also argues that, to the extent that Mr. Chapados's testimony is based on his personal knowledge specific to PREPA's Transformation, the Government Parties are precluded from relying upon such testimony by the terms of the Stipulation, which prevents the Government Parties from relying upon, "either directly or indirectly, [any] statements, assertions, opinions, actions taken, actions not taken, or views expressed by a Transformation Party to support any allegation, argument, request for relief, or other position in connection with the 9019 Motion."  (Mot. ¶ 38 (citing Stip. ¶ 3).)

Finally, the Committee contends that, even if Mr. Chapados's opinions were otherwise admissible, his testimony falls outside the scope of evidence permitted by this Court's *Memorandum Order Regarding Official Committee of Unsecured Creditors' Urgent (I) Objections to Magistrate Judge's August 2, 2019 Order on Motion to Compel and (II) Alternative Motion to Strike and to Exclude Out-of-Scope Declaration Testimony and Related*

*Evidence* (Docket Entry No. 1652, the "October Order"). (Mot. ¶ 5.) The October Order states that, "[a]lthough the Committee is correct that the Chapados Declaration discusses the proposed transformation almost exclusively, the Court has made it clear that the details of implementation, and the prospects for the ultimate success, of the proposed transformation are not being litigated in the context of the 9019 Motion." (Oct. Ord. at 12.) The Committee argues that Mr. Chapados's testimony regarding the effect of the proposed settlement on the interests of potential bidders in the Transformation relates to the Transformation's prospects for ultimate success, and is therefore not helpful to the Court's analysis in connection with the 9019 Motion. (Mot. ¶ 5.)

The Oversight Board asserts in its Opposition that the opinions offered by Mr. Chapados in his Declaration are permissible lay opinions within the allowable scope of Rule 701. (Opp. ¶ 2.) Additionally, the Oversight Board argues that Mr. Chapados's testimony consists of common-sense inferences based on "his own general knowledge and experience in the marketplace," and that such testimony is expressly permitted by the terms of the Stipulation. (Id. at ¶ 3.)

The Court concludes that the testimony offered by the Government Parties in the Chapados Declaration is admissible as lay witness testimony under Federal Rule of Evidence 701. The opinions offered by Mr. Chapados in his Declaration involve the effect of the proposed settlement on the Transformation, including the effect that the resolution of the 9019 Motion may have on the interest and expectations of potential operators interested in operating PREPA's T&D system. As expressed, these opinions are sufficiently anodyne that they do not draw upon

Mr. Chapados's scientific, technical, or other specialized knowledge that might otherwise fall within the scope of Federal Rule of Evidence 702.

The Committee's invocation of Bank of China v. NBM LLC in characterizing the Chapados Declaration as based on technical or specialized knowledge within the meaning of Rule 702 is unavailing. In Bank of China, the witness testified in relevant part about the business community's understanding of specific types of financial transactions and the meaning of specialized banking terms. 359 F.3d at 181. Here, Mr. Chapados opines on general areas of financial concern and potential exposure to risk that might be of interest to a potential operator. Indeed, his opinions stand for the entirely unremarkable proposition that an entity interested in participating in PREPA's Transformation would want a clear picture of PREPA's legal and financial challenges. The notion that the elimination of uncertainty regarding PREPA's legacy debt liabilities and future financial challenges will be important to potential bidders falls within the logical perception familiar to the average person and requires no specialized investment banking or industry knowledge.

Furthermore, Mr. Chapados's testimony is not precluded by the Court's October Order. The October Order excluded, in relevant part, detailed analyses of particular long term financial features of the proposed settlement, which is complex, as well as macroeconomic projections as to the ultimate success of the RSA if fully implemented. Although the "details of implementation, and the prospects for the ultimate success, of the proposed transformation are not being litigated in the context of the 9019 Motion," Mr. Chapados's limited testimony regarding the potential effect of the settlement embodied in the 9019 Motion on PREPA's

Transformation is generally relevant to the Court's assessment of the reasonableness of the proposed settlement.

Although Mr. Chapados's testimony is consistent with the requirements for lay witness testimony set forth in Rule 701 and does not fall outside of the scope of evidence permitted by the October Order, the Government Parties are precluded by the Stipulation from relying on one portion of the Chapados Declaration. The Stipulation plainly states that "no witness or expert providing testimony on behalf of or called by the RSA Parties may use or refer to information acquired from or attributed to a Transformation Party to support the assertion in the 9019 Motion that the settlement of PREPA bond claims will help facilitate the Proposed Transformation." (Mot. at Ex. A, ¶ 3.) Thus, Mr. Chapados may not testify to conclusions reached on the basis of comments made by potential operators. The Committee has proffered uncontroverted evidence that the opinion expressed by Mr. Chapados in Paragraph 17 of his Declaration is based on comments by potential operators as well as Mr. Chapados's general knowledge of the industry. (Reply ¶ 15 (citing Mot. at Ex. B, 114:21-115:15).) The Stipulation precludes the introduction of such evidence. The Committee's Motion is, accordingly, granted to the extent that it seeks to strike Paragraph 17 of the Chapados Declaration as well as any related testimony to the extent that such testimony is based on comments by potential operators.

The Committee has not demonstrated that any of the other opinions expressed in the Declaration are based on sources barred by the Stipulation. Accordingly, the Motion is denied in all other respects.

CONCLUSION

The Motion is granted in part and denied in part. Paragraph 17 of the Chapados Declaration is stricken in its entirety, and Mr. Chapados is barred from offering related testimony based on conversations with potential private operators of PREPA's T&D system. The Motion is denied in all other respects.

This Order resolves Docket Entry No. 9258 in Case No. 17-3283 and Docket Entry No. 1752 in Case No. 17-4780.

SO ORDERED.

Dated: January 16, 2020

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge