## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br>v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, PEAJE INVESTMENTS LLC, and THE BANK OF NEW YORK MELLON, as Fiscal Agent,<br><br>    Defendants. | Adv. Proc. No. 20-_____-LTS<br><br>PROMESA<br>Title III |

## COMPLAINT OBJECTING TO DEFENDANTS' CLAIMS AND SEEKING RELATED RELIEF

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Pursuant to (*i*) Rules 3007, 7001(1), (2), (8), and (9) of the Federal Rules of Bankruptcy Procedure, made applicable to these Title III cases by section 310 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] and (*ii*) the Interim Case Management Order for Revenue Bonds, dated December 19, 2019 [ECF No. 9620], the Commonwealth of Puerto Rico (the "Commonwealth" or "Plaintiff"), by and through the Financial Oversight and Management Board for Puerto Rico, as the sole representative of the Commonwealth pursuant to section 315(b) of PROMESA (and solely in that capacity, the "Oversight Board"), brings this complaint ("Complaint") against Defendants:[3]

## NATURE OF ACTION

1.    The Oversight Board brings the Complaint objecting to certain proofs of claim and priorities asserted therein and objecting to the validity and priority of certain liens or security interests asserted therein regarding the Commonwealth's retention of certain revenues previously, but no longer, appropriated to the Puerto Rico Highways and Transportation Authority (as defined above, "HTA").[4]

2.    HTA funded some of its activities with bonds.  Certain taxes and fees levied and collected by the Commonwealth were historically appropriated and transferred to HTA (the "HTA Allocable Revenues").  HTA granted a security interest against (*i*) the HTA Allocable Revenues, and (*ii*) specified tolls levied by HTA itself (the "HTA Toll Revenues") to secure the bonds.

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

[3] Defendants in this action are Ambac Assurance Corp. ("Ambac"), Assured Guaranty Corp. ("AGC"), Assured Guaranty Municipal Corp. ("AGMC"), National Public Finance Guarantee Corporation ("National"), Financial Guaranty Insurance Company ("FGIC"), Peaje Investments LLC ("Peaje"), and The Bank of New York Mellon as Fiscal Agent ("BNYM" or the "Fiscal Agent," and together with Ambac, AGC, AGMC, National, FGIC, and Peaje, "Defendants").

[4] Plaintiff reserves its right to raise additional objections to any other claims asserted by Defendants in their Proofs of Claim (as defined below) or otherwise, and reserves its right to commence additional proceedings or file objections on any basis to any claims filed in connection with the Bonds (as defined herein).

3.      HTA issued several series of bonds pursuant to two resolutions:  bonds issued by HTA pursuant to Resolution No. 68-18 (the "1968 Resolution," and the bonds issued thereunder, the "1968 Bonds"), and bonds issued by HTA pursuant to Resolution No. 98-06 (the "1998 Resolution," and the bonds issued thereunder, the "1998 Bonds," and collectively with the 1968 Bonds, the "Bonds," and the 1968 Resolution with the 1998 Resolution, the "Resolutions"). Pursuant to the Resolutions, payments on the Bonds are funded expressly and exclusively through amounts deposited in two accounts.  Payments on the 1968 Bonds are funded through amounts deposited into the 1968 Sinking Fund (defined below)[5] and payments on the 1998 Bonds are funded through amounts deposited into the 1998 Sinking Funds.

4.      The Bonds are non-recourse.  In addition, the Commonwealth is neither an issuer nor a guarantor of the Bonds, and, as the Enabling Act and HTA Bond Materials state, the Commonwealth has no liability with respect to the Bonds.

5.      Defendants filed Proofs of Claim in the Commonwealth Title III Case asserting the Commonwealth has liability for not appropriating and transferring HTA Allocable Revenues to HTA, asserting various constitutional, statutory and contractual theories to render them allowable.  Defendants' claims should all be disallowed in their entirety.

## PARTIES

6.      The Oversight Board is an entity within the Commonwealth government established pursuant to PROMESA.   In this action, the Oversight Board serves as the Commonwealth's sole representative pursuant to PROMESA section 315(b), and is acting only in that capacity herein.

---

[5] Capitalized terms not defined under the Nature of Action are defined below.

7.     Defendant Ambac is a Wisconsin-domiciled stock insurance corporation with its principal place of business at One State Street Plaza, New York, New York 10004.  Ambac filed Claim Nos. 50420, 83010, and 122277 in the Commonwealth Title III Case on June 26, 27, and 28, 2018, respectively, for the 1968 and 1998 Bonds it allegedly holds and/or insures (the "Ambac Claim").[6]

8.     The Ambac Claim asserts a secured claim against the Commonwealth and alleges, among other things, (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) perfected security interests against the HTA Allocable Revenues, (*iii*) the Commonwealth's purported failure to appropriate and transfer the HTA Allocable Revenues to HTA was unlawful and a breach of contract and/or gave rise to various tort claims, (*iv*) the Ambac Claim should be afforded first priority status, (*v*) violations of the Takings Clause, (*vi*) violations of the Contract Clause, (*vii*) violations of the Due Process Clause, (*viii*) violations of PROMESA section 407, (*ix*) subrogation to the claims of holders of Bonds (the "Bondholders"), and (*x*) a reservation of Ambac's right to assert administrative expense priority.

9.     Defendant AGC is a Maryland insurance company with its principal place of business at 1633 Broadway, New York, New York 10019.  AGC filed Claim Nos. 33081 and 57622 in the Commonwealth Title III Case on May 25, 2018 for the 1968 and 1998 Bonds it allegedly holds and/or insures (the "AGC Claim").[7]

10.    The AGC Claim asserts a secured claim against the Commonwealth and alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) perfected security interests against

---

[6] Because the three proofs of claim filed by Ambac are identical and duplicative, this Complaint treats them as a single proof of claim.  All references to the "Ambac Claim in the Commonwealth Title III Case" refer to all three separately filed proofs of claim.

[7] Because both proofs of claim filed by AGC in the Commonwealth Title III Case are identical and duplicative, this Complaint treats them as a single proof of claim.  All references to the "AGC Claim" refer to both separately filed proofs of claim.

the HTA Allocable Revenues, (*iii*) violations of PROMESA section 407, (*iv*) violations of the
Takings Clause, (*v*) violations of the Contract Clause, (*vi*) violations of the Due Process Clause,
(*vii*) breaches of contract and tort claims arising from the Commonwealth's purported failure to
appropriate and transfer HTA Allocable Revenues to HTA, (*viii*) subrogation to the claims of
Bondholders, (*ix*) claims to ownership of the HTA Allocable Revenues, and (*x*) administrative
expense priority.

11.     Defendant AGMC is a New York insurance company with its principal place of
business at 1633 Broadway, New York, New York 10019.  AGMC filed Claim No. 27427 in the
Commonwealth Title III Case on May 25, 2018 for the 1968 and 1998 Bonds it allegedly holds
and/or insures (the "AGMC Claim").

12.     The AGMC Claim asserts a secured claim against the Commonwealth and alleges
(*i*) statutory liens against the HTA Allocable Revenues, (*ii*) perfected security interests against
the HTA Allocable Revenues, (*iii*) violations of PROMESA section 407, (*iv*) violations of the
Takings Clause, (*v*) violations of the Contract Clause, (*vi*) violations of the Due Process Clause,
(*vii*) breaches of contract and tort claims arising from the Commonwealth's purported failure to
appropriate and transfer HTA Allocable Revenues to HTA, (*viii*) subrogation to the claims of
Bondholders, (*ix*) claims to ownership of the HTA Allocable Revenues, and (*x*)  administrative
expense priority.

13.     Defendant National is a New York insurance company with its principal place of
business at 1 Manhattanville Road, Purchase, New York 10577.  National filed Claim No. 30114
in the Commonwealth Title III Case on May 25, 2018 for the 1968 and 1998 Bonds it allegedly
holds and/or insures (the "National Claim").

14.     The National Claim asserts a secured claim against the Commonwealth and alleges, among other things, (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) perfected security interests against the HTA Allocable Revenues, (*iii*) the HTA Allocable Revenues are special revenues, (*iv*) the Toll Revenues and excise tax revenues constitute trust funds that are property of HTA held for the benefit of Bondholders, (*v*) the Commonwealth's retention of the HTA Allocable Revenues was unlawful, (*vi*) violations of the Takings Clause, (*vii*) violations of the Contract Clause, (*viii*) violations of the Due Process Clause, and (*ix*) violations of PROMESA section 407.

15.     Defendant FGIC is a New York stock insurance corporation with its principal place of business at 463 Seventh Avenue, 16th Floor, New York, New York 10018.  FGIC filed Claim No. 101243 in the Commonwealth Title III Case on June 28, 2018 for the 1968 and 1998 Bonds it allegedly holds and/or insures (the "FGIC Claim").

16.     The FGIC Claim asserts a secured claim against the Commonwealth and alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) the HTA Allocable Revenues are special revenues, (*iii*) violations of the Takings Clause, (*iv*) violations of the Contract Clause, (*v*) violations of the Due Process Clause, (*vi*) violations of PROMESA section 407, (*vii*) the Commonwealth's retention of the HTA Allocable Revenues was unlawful, and (*viii*) subrogation to the claims of Bondholders.[8]

17.     Defendant Peaje is a Delaware limited liability company with its principal place of business in New York, New York.  Peaje filed Claim No. 101312 in the Commonwealth Title

---

[8] The answer, counterclaim, and third-party claim filed by FGIC against HTA and the Commonwealth in Adv. Proc. No. 19-00363-LTS [ECF No. 4], involves the 1998 Bonds and alleges, among other things, (*i*) equitable liens against the HTA Allocable Revenues, (*ii*) the conditions precedent for retaining the HTA Allocable Revenues do not exist and any transfers are *ultra vires* and void *ab initio*, (*iii*) statutory liens against the HTA Allocable Revenues, (*iv*) security interests against the HTA Allocable Revenues, (*v*) the liens are perfected, (*vi*) the Revenues are special revenues, (*vii*) violations of the Takings Clause, and (*viii*) violations of the Due Process Clause. [CONFORM]

III Case for the 1998 Bonds it allegedly holds (the "Peaje 1998 Claim") and Claim No. 92706 for

the 1968 Bonds it allegedly holds (the "Peaje 1968 Claim").

18.   The Peaje 1968 Claim asserts secured claims against the Commonwealth and

alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) perfected security interests

against the HTA Allocable Revenues, (*iii*) the statutory liens and security interests against the

HTA Allocable Revenues are perfected, (*iv*) the HTA Allocable Revenues are special revenues,

(*v*) the HTA Allocable Revenues are held in a trust for the benefit of Bondholders, (*vi*) the

Commonwealth's retention of the HTA Allocable Revenues was unlawful, (*vii*) violations of the

Takings Clause, (*viii*) violations of the Contract Clause, and (*ix*) violations of PROMESA section

407.

19.   The Peaje 1998 Claim asserts secured claims against the Commonwealth and

alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) perfected security interests

against the HTA Allocable Revenues, (*iii*) the statutory liens and security interests against the

HTA Allocable Revenues are perfected, (*iv*) the HTA Allocable Revenues are special revenues,

(*v*) the HTA Allocable Revenues are held in a trust for the benefit of Bondholders, (*vi*) the

Commonwealth's retention of the HTA Allocable Revenues was unlawful, (*vii*) violations of the

Takings Clause, (*viii*) violations of the Contract Clause, and (*ix*) violations of PROMESA section

407.

20.   Defendant BNYM is a bank organized under the laws of the State of New York

having its principal place of business at 225 Liberty Street, New York, New York 10007.

BNYM acts as the Fiscal Agent for the Bonds under the Resolutions. Pursuant to the Bar Date

Orders, BNYM filed a proof of claim in the Commonwealth Title III Case for the 1968 Bonds as

a contingent and unliquidated claim, which was logged by Prime Clerk LLC ("Prime Clerk") as

Claim No. 26541 (the "1968 Bond Master Proof of Claim").

21.     BNYM filed a proof of claim in the Commonwealth Title III Case for the 1998

Bonds as a contingent and unliquidated claim, which was logged by Prime Clerk as Claim No.

21286 (the "1998 Bond Master Proof of Claim," and together with the 1968 Bond Master Proof

of Claim, the "Master Proofs of Claim" and collectively with the other Defendants' proofs of

claim, the "Proofs of Claim")."

22.     The 1968 Master Proof of Claim asserts a secured claim against the

Commonwealth and alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) security

interests against the HTA Allocable Revenues, (*iii*) violations of the U.S. and Commonwealth

Constitutions, (*iv*) violations of PROMESA section 407, (*v*) the Commonwealth's retention of

the HTA Allocable Revenues was unlawful, and (*vi*) administrative expense priority.

23.     The 1998 Master Proof of Claim asserts a secured claim against the

Commonwealth and alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) security

interests against the HTA Allocable Revenues, (*iii*) violations of the U.S. and Commonwealth

Constitutions, (*iv*) violations of PROMESA section 407, (*v*) the Commonwealth's retention of

the HTA Allocable Revenues was unlawful, and (*vi*) administrative expense priority.

**JURISDICTION AND VENUE**

24.     This Court has subject-matter jurisdiction over this adversary proceeding pursuant

to PROMESA sections 306(a) and 306(b) because it arises under PROMESA Title III, in a Title

III case, relates to the Commonwealth's underlying Title III case, and/or involves disputes over

property of the Commonwealth and/or HTA.

25.     This Court has personal jurisdiction over each Defendant pursuant to PROMESA

section 306(c).

26.     Venue is proper under PROMESA section 307 because this adversary proceeding is brought in a PROMESA Title III case pending in the District of Puerto Rico.

27.     This adversary proceeding is brought pursuant to Rules 3007, 7001(1), (2), (8), and (9) of the Federal Rules of Bankruptcy Procedure and Bankruptcy Code sections 502, 506, 509, 544(a), 550, 551, 552, 902, 927, and 928(b), made applicable to this proceeding pursuant to PROMESA section 301(a).

## FACTS

### I.      The HTA Enabling Act and the Revenues Conditionally Allocated to HTA

28.     HTA is a public corporation established by the Legislative Assembly pursuant to Act No. 74-1965 (as amended, the "Enabling Act"), codified at 9 L.P.R.A. §§ 2001–2035. To partially fund HTA's activities, the Commonwealth historically appropriated to HTA, on a conditional basis, certain tax and license revenues for HTA to use for its corporate purposes (defined above as the HTA Allocable Revenues). 9 L.P.R.A. § 2004(l); *see also* 13 L.P.R.A. § 31751(a)(1).

29.     The HTA Allocable Revenues consist of certain proceeds from Gas Taxes, Cigarette Taxes, and Vehicle License Fees. 13 L.P.R.A. § 31751(a)(1) and (a)(3) provide the "sum of the tax collected on gasoline and four cents (4¢) of the gas oil or diesel oil tax," and "revenues collected from the tax on cigarettes . . . up to twenty million dollars [annually] . . . shall be covered into a special deposit account in favor of [HTA] for its corporate powers and purposes." 9 L.P.R.A. § 5681 provides motor vehicle license fees shall "be covered in its entirety into a Special Deposit Account in the name and for the benefit of [HTA]." These statutes are referred to collectively herein as the "HTA Allocable Revenue Statutes," and individually as the "Gas Tax," the "Cigarette Tax," and the "Vehicle License Fee," respectively.

30.     The Enabling Act provides HTA the ability to issue bonds.  The Enabling Act provides HTA the power to "issue bonds . . . and to secure payment of bonds . . . by pledge of, or other lien on, all or any of its properties, revenues or other income, and subject to the provisions of § 8 of Art. VI of the Constitution of the Commonwealth, pledge to the payment of said bonds and interest thereon, the proceeds of any tax or other funds which may be made available to [HTA] by the Commonwealth."  9 L.P.R.A. § 2004.

31.     The Enabling Act provides HTA is authorized to, among other things, issue bonds secured by revenue it anticipates may be appropriated to it by the Commonwealth.  The Enabling Act does not provide HTA with the power to indebt the Commonwealth or otherwise make it liable on those Bonds.  The Enabling Act states:

> [T]he bonds issued by [HTA] shall not be a debt of the Commonwealth of Puerto Rico or any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any such political subdivision shall be liable thereon, nor shall such bonds or the interest thereon be payable out of any funds other than those pledged for the payment of such bonds and interest thereon pursuant to the provisions of § 2004(l) of this title.

9 L.P.R.A. § 2015.

32.     As described in the Resolutions, the template bonds described therein, and the official statements prepared in connection with HTA's bond issuances (collectively referred to herein as the "HTA Bond Materials"), the Resolutions provide the Commonwealth is not liable under the Bonds.   *See, e.g.,* 1968 Resolution at 2 ("neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable for the payment of the principal of or interest on any bonds issued by the Authority . . ."); *id*. § 203 (template bond) ("This bond shall not be deemed to constitute a debt of the Commonwealth of Puerto Rico or of any of its political subdivisions . . . ); 1998 Resolution at 2, Second Whereas Clause, sub-clause (xi) (same); *id.* §

10

204 (template bond) (same); Official Statement for Highway Revenue Refunding Bonds Series AA, dated June 17, 2010 at 1 (same).

33.    The HTA Allocable Revenue Statutes and the Enabling Act state any appropriation and transfer to HTA of the HTA Allocable Revenues is subject to Article VI, Section 8 of the Commonwealth Constitution.[9]

34.    Section 8 of Article VI of the Commonwealth Constitution provides: "In case the available revenues including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."

## II.    The Bonds and the Bond Resolutions

35.    Pursuant to the authority granted to HTA by the Enabling Act, HTA issued several series of Bonds governed by the 1968 Resolution and the 1998 Resolution.

### A.    *The 1968 Resolution*

36.    The 1968 Resolution provides the 1968 Bonds would be secured by a security interest against certain revenues of HTA ("1968 HTA Revenues") both received by HTA and deposited in a special fund created and designated by the 1968 Resolution as the "Sinking Fund" (the "1968 Sinking Fund") with the Fiscal Agent.

37.    Section 601 of the 1968 Resolution provides:

[T]he principal, interest and premiums [on the 1968 Bonds] are payable solely from Revenues and from any funds received by the Authority for that purpose from the Commonwealth which Revenues and funds are hereby pledged to the

---

[9] 13 L.P.R.A. § 31751 provides "[s]uch pledge or encumbrance [of the Gas Tax and Cigarette Tax] shall be subject to the provisions of Section 8 of Article VI of the Constitution of Puerto Rico.) 9 L.P.R.A. § 5681 provides "[s]uch pledge or encumbrance [of the Vehicle License Fee] shall be subject to the provisions of Section 8 of Article VI of the Constitution of Puerto Rico."

payment thereof in the manner and to the extent hereinabove particularly specified.

1968 Resolution § 601.

38.     The 1968 Resolution defines Revenues as follows:

The word "Revenues" shall mean (a) all moneys received by the Authority on account of gasoline tax allocated to the [HTA] . . . ; (b) Toll Revenues; (c) the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico has allocated . . . to the [HTA] and expressly authorize the [HTA] to pledge to the payment of [the] Bonds . . . ; and (d) investment earnings on deposit to the credit of the funds and accounts established hereunder . . . .

*Id.* § 101 (at 11).

39.     "Toll Revenues" are defined as "tolls . . . imposed by the Authority for the use of any of its Traffic Facilities."  *Id*. § 101 (at 12).

40.     The term "Traffic Facilities" is defined in the 1968 Resolution as:

any of [enumerated types of] facilities for which bonds or other obligations shall be issued by [HTA] under the provisions of this Resolution the cost of which facilities paid from the proceeds of such bonds or other obligations shall not have been reimbursed to [HTA] from funds not encumbered by this Resolution.

*Id.* § 101 (at 12-13).

41.     Section 401 of the 1968 Resolution "particularly specif[ies]" the manner and extent to which the 1968 HTA Revenues and other funds (if any) allegedly secure the payment of the 1968 Bonds.  Section 401 provides that "all of the Revenues (other than investment earnings on deposits to the credit of funds and accounts established hereunder), and any other funds of the Commonwealth allocated to [HTA] for the payment of principal and interest on bonds of [HTA] . . . which it receives will be deposited monthly with the Fiscal Agent . . . ." into the various accounts that make up the 1968 Sinking Fund.  *Id.* § 401.

42.     Under section 401 of the 1968 Resolution, it is only the moneys deposited to the credit of the 1968 Sinking Fund that are allegedly subject to a security interest for the benefit of the holders of the 1968 Bonds (the "1968 Bondholders"):

> A special fund is hereby created and designated "Puerto Rico Highway Authority Highway Revenue Bonds Interest and Sinking Fund" (herein sometimes called the "Sinking Fund").  There are hereby created in the Sinking Fund three separate accounts designated "Bond Service Account", "Redemption Account" and "Reserve Account", respectively.
>
> The moneys in said Funds and Accounts shall be held by the Fiscal Agent in trust and applied as hereinafter provided with regard to each such Fund and Account and, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Resolution and for the further security of such holders until paid out or transferred as herein provided.

*Id.*

43.     The 1968 Resolution granted the 1968 Bondholders a security interest against only those Revenues both received by HTA and deposited to the credit of the 1968 Sinking Fund held by the Fiscal Agent.  The 1968 Resolution does not grant a security interest (*i*) against any right of HTA to receive 1968 HTA Revenues, or (*ii*) against funds in accounts not held by the Fiscal Agent.  Every reference to the granting of a security interest against the revenues limits the security interest to moneys HTA received and deposited in deposit accounts held by the Fiscal Agent.  *See id.* §§ 401, 406 (referring to "moneys held" in the accounts in the 1968 Sinking Fund as pledged to 1968 Bonds); 407 (referring to moneys withdrawn from the 1968 Sinking Fund for the payment of particular 1968 Bonds after having been deposited in the 1968 Sinking Fund as subject to a property interest in favor of the holders of those 1968 Bonds); 501 (stating "moneys deposited with the Fiscal Agent under the provisions of this Resolution shall be held in trust").

44.     The template bond detailed in the 1968 Resolution provides HTA "hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth [principal on the Bond] . . . and to pay, solely from said special fund, interest thereon . . . ." *Id.* § 203.  The template bond states the 1968 Resolution contains "provisions, among others, with respect to . . . the fund charged with and pledged to the payment of the interest on and the principal of the bonds . . . ." *Id*.  The template bond provides this "special fund" is the 1968 Sinking Fund and is the Bondholders' sole collateral. *Id*. ("The Resolution provides for the creation of a special fund . . . herein called the "Sinking Fund"[] which special fund is pledged to and charged with the payment of the principal of and the interest on all bonds issued under the provisions of the Resolution.").

45.     The scope of the purported collateral in which security interests are granted to the 1968 Bondholders is limited to the 1968 HTA Revenues both received by HTA and deposited to the credit of the 1968 Sinking Fund held by the Fiscal Agent.

**B.     *The 1998 Resolution***

46.     The 1998 Resolution provides the 1998 Bonds would be secured by a security interest against certain revenues of HTA (the "1998 HTA Revenues," and together with the 1968 HTA Revenues, the "Revenues") both received by HTA and deposited in a special fund created and designated by the 1998 Resolution as the "Revenue Fund" (the "Revenue Fund") with the Fiscal Agent.

47.     Section 601 of the 1998 Resolution specifies:

> Except as in this Resolution otherwise provided, such principal, interest and premiums [on the 1998 Bonds] are payable solely from Revenues and other moneys deposited to the credit of the Revenue Fund and from any funds received by the Authority for that purpose from the Commonwealth, which Revenues, moneys and funds are hereby pledged (with such priorities with respect to the use and disposition of Revenues as are in this Resolution specified)

14

to the payment thereof in the manner and to the extent hereinabove particularly specified.

1998 Resolution § 601.

48.     The 1998 Resolution defines "Revenues" as follows:

The word "Revenues" shall mean

[a]     all moneys received by the Authority on account of the crude oil tax allocated to the [HTA] . . .

[b]     all Existing Tax and Fee Revenues upon the repeal and cancellation of the 1968 Resolution

[c]     any tolls . . . imposed by [HTA] for the use of any of the Toll Facilities other than [those pledged at issue in the 1968 Resolution] . . .

[d]     the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico may hereafter allocate to [HTA] and expressly authorize the Authority to pledge to the payment of the principal of and interest on bonds .  .  . , and

[e]     investment earnings on deposits to the credit of funds and accounts established hereunder . . . .

*Id*. § 101 (at 13).

49.      "Toll Facilities" are defined in the 1998 Resolution as "any Traffic Facilities for the use of which [HTA] imposes tolls." *Id.* § 101 (at 15). "Existing Toll Facilities Revenues" is defined as "the tolls or other charges imposed by [HTA] for the use of any Traffic Facilities financed in whole or in part by the issuance of 1968 Resolution Bonds." *Id.* § 101 (at 7). "Traffic Facilities" are defined by the 1998 Resolution as follows:

The term "Traffic Facilities" shall mean any of [enumerated types of] facilities for which 1968 Resolution Bonds or bonds or other obligations shall be issued by [HTA] under the provisions of this Resolution the cost of which facilities paid from the proceeds of such bonds or other obligations shall not have been reimbursed to [HTA] from funds not encumbered by this Resolution or the 1968 Resolution.

*Id.* § 101 (at 15).

15

50.     Section 401 of the 1998 Resolution "particularly specifies" the manner and extent to which the 1998 HTA Revenues and other funds (if any) allegedly secure the payment of the 1998 Bonds.  Section 401 provides for the creation of the Revenue Fund and related sinking funds and accounts in such sinking funds (collectively, the "1998 Sinking Funds" and, together with the Revenue Fund, the "1998 Resolution Funds") for the payment, or the provision for payment, of 1998 Bonds (with segregated funds and accounts for senior 1998 Bonds and subordinate 1998 Bonds), and then states that "all Revenues (except investment earnings [on] deposits to the credit of funds and accounts established hereunder) will be deposited when received to the credit of the Revenue Fund."  *Id.* § 401.

51.     Section 401 provides further that:

> The moneys in said Funds and Accounts shall be held by the Fiscal Agent in trust and applied as hereinafter provided with regard to each such Fund and Account and, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Resolution and for the further security of such holders until paid out or transferred as herein provided.

*Id.*

52.     The 1998 Resolution granted the holders on the 1998 Bonds (the "1998 Bondholders") a security interest against only those Revenues both received by HTA and deposited to the credit of the 1998 Resolution Funds.  The 1998 Resolution has no language granting a security interest against any right of HTA to receive 1998 HTA Revenues, or in other deposit accounts (or the monies deposited in deposit accounts not held by the Fiscal Agent).  Every reference to the granting of a security interest against the revenues limits the security interest to moneys HTA received and deposited in deposit accounts held by the Fiscal Agent.  *See id.* §§ 401, 410 (stating "moneys held" in the various accounts established for the senior

1998 Bonds "shall be held in trust" and are "pledged" to the payment of such 1998 Bonds), 411 (stating "moneys held" in the various accounts established for the subordinated 1998 Bonds "shall be held in trust" and are "pledged" to the payment of such 1998 Bonds), 501 (stating "[a]ll moneys deposited with the Fiscal Agent . . . shall be held in trust and applied only in accordance with the provisions of this Resolution").

53.     The template bond contained in the 1998 Resolution states HTA "hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth [principal on the Bond] . . . and to pay, solely from said special fund, interest thereon . . . ."   1998 Resolution § 204.  The template bond provides the "special fund" (the fund from which payment is made on the 1998 Bonds) is the applicable 1998 Sinking Fund.  The template bond goes on to refer the 1998 Bondholders to the 1998 Resolution "for the provisions, among others, with respect to . . . the funds charged with and pledged to the payment of the interest on and the principal of the bonds . . . ."  *Id.*

54.     The scope of the purported collateral in which security interests are granted to the 1998 Bondholders is limited to 1998 HTA Revenues both received by HTA and deposited in deposit accounts held by the Fiscal Agent.

55.     In a security agreement signed by HTA, dated as of February 7, 2002 (the "1998 Security Agreement," attached hereto as **Exhibit A**), HTA purported to grant to the Fiscal Agent a security interest against (*i*) the 1998 Resolution Funds, and (*ii*) all amounts required to be on deposit therein by the terms of the 1998 Resolution.

56.     The 1998 Security Agreement does not grant a security interest against all 1998 HTA Revenues, or in any right of HTA to receive 1998 HTA Revenues.  The 1998 Security Agreement restricts the security interest to only the 1998 Resolution Funds and the Revenues

that are deposited to the credit of those funds.  The scope of the security interest granted pursuant to the 1998 Security Agreement can be no greater than the scope of the security interest authorized by and granted pursuant to the 1998 Resolution.

**III.   Security Interests, if any, Regarding the Bonds Are Limited to Funds Actually Received by HTA and Deposited in the 1968 Sinking Fund or the 1998 Resolution Funds**

      **A.**    *Article 9 of the Uniform Commercial Code*

57.    Commonwealth law governs the effectiveness and perfection of security interests against HTA's property.  *See* 19 L.P.R.A. § 2251.

58.    Under Article 9 of the Uniform Commercial Code (the "UCC"), as adopted in the Commonwealth, a security interest can only attach to property that the Commonwealth has rights in or the power to transfer rights in.  19 L.P.R.A. § 2233(b)(2).

59.    Under Article 9, provisions purportedly providing that the Commonwealth funds are to be held "in trust" in these circumstances only create a security interest against whatever is held "in trust."  Any such security interest is subject to the UCC perfection (and other) rules applicable to security interests.

60.    Under Article 9, subject to one exception for "proceeds" not applicable here, the only way to perfect a security interest against the Commonwealth funds credited to a deposit account is by "control" of the deposit account.  19 L.P.R.A. § 2262(b)(1) ("[a] security interest in a deposit account may be perfected only by control"); *see also* 19 L.P.R.A. § 2264(a) ("[a] security interest in . . . deposit accounts . . . may be perfected by control of the collateral under § 2214 . . . .").

61.    Under Article 9, a secured party has "control" of the Commonwealth deposit account only if (*i*) the secured party is the bank with which the deposit account is maintained, (*ii*) the secured party is the customer of the bank (and the holder of the deposit account), or (*iii*) the

borrower/debtor, the secured party, and the bank have executed a deposit account control agreement that gives the secured party requisite "control" of the deposit account (by providing that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the borrower/debtor).  19 L.P.R.A. § 2214(a)(1)-(3).

62.     Under Article 9, a financing statement must be filed to perfect any purported security interest against the Commonwealth's rights to receive Revenues.   19 L.P.R.A. § 2260(a).

63.     A Commonwealth financing statement is not a security agreement and does not create a new security interest or enlarge any security interests granted by the Resolutions (or, in the case of the 1998 Bonds, by the 1998 Security Agreement).

64.     Under Article 9, a Commonwealth "financing statement is sufficient only if it . . . provides the name of the secured party or a representative of the secured party."   19 L.P.R.A. § 2322(a).

65.     Under Article 9, a Commonwealth "financing statement is sufficient only if it . . . indicates the collateral covered by the financing statement."  *Id.*

66.     Under Article 9, the Commonwealth, as a "lien creditor," has priority over unperfected security interests.  19 L.P.R.A. § 2267(a)(2).

67.     Under Article 9, the Commonwealth, as a "lien creditor," has the status of a trustee in bankruptcy from the date of the filing of the petition.  19 L.P.R.A. § 2212(a)(52).

**B.     *The 1968 Bond Financing Statements***

68.     Four financing statements were filed regarding the 1968 Bonds that name HTA as the debtor.

69.     On May 16, 2014, a financing statement was filed that names as the secured party
"Holders of all Bonds issued under the 1968 Resolution (as defined below)."  *See* Dep't of State
Doc. No. 2014002566 ("FS 2566").  FS 2566 describes the 1968 Bondholders' purported
collateral as "[p]ursuant to that certain Resolution 69-18 [(sic)] adopted on June 13, 1968 (the
'1968 Resolution'), all of [HTA's] right, title, and interest in and to 'Revenues,'" and includes a
description of certain 1968 HTA Revenues taken from the 1968 Resolution's definition of
"Revenues."  FS 2566 states that "[c]apitalized terms used herein and not otherwise defined
herein will have the meanings given to such terms in the 1968 Resolution."  The 1968 Resolution
is not attached to FS 2566.  FS 2566 does not indicate any right of HTA to receive 1968 HTA
Revenues as purported collateral.  19 L.P.R.A. § 2322(a)(3).

70.     On May 16, 2014, a second financing statement was filed that names as the
secured party "Assured for the benefit of Holders of all Bonds issued under the 1968 Resolution
(as defined below)."  *See* Dep't of State Doc. No. 2014002568 ("FS 2568").  FS 2568 indicates
the 1968 Bondholders' purported collateral as "[p]ursuant to that certain Resolution 69-18 [(sic)]
adopted on June 13, 1968 (the '1968 Resolution'), all of [HTA's] right, title, and interest in and
to 'Revenues,'" and includes an indication of certain 1968 HTA Revenues taken from the 1968
Resolution's definition of "Revenues."  FS 2568 states that "[c]apitalized terms used herein and
not otherwise defined herein will have the meanings given to such terms in the 1968 Resolution."
The 1968 Resolution is not attached to FS 2568.  FS 2568 does not indicate any right of HTA to
receive 1968 HTA Revenues as purported collateral.  19 L.P.R.A. § 2322(a)(3).

71.     On August 4, 2014, a financing statement was filed that names as the secured
party "Holders of all bonds ('1968 Resolution Bonds') issued under Resolution 68-18."  *See*
Dep't of State Doc. No. 2014003808 ("FS 3808").  FS 3808 indicates the 1968 Bondholders'

purported collateral as "[a]ll of [HTA's] rights, title, and interest in and to" various 1968 HTA
Revenues.  The 1968 Resolution is not attached to FS 3808.  FS 3808 does not indicate any right
of HTA to receive 1968 HTA Revenues as purported collateral.

72.     On August 4, 2014, a second financing statement was filed that names as the
secured party "Ambac Assurance Corporation ('Ambac') for benefit of holders of all bonds
('1968 Resolution Bonds') issued under Resolution 68-18."  *See* Dep't of State Doc. No.
2014003807 ("FS 3807," and with FS 2566, FS 2568, and FS 3808, the "1968 Financing
Statements").[10]  FS 3807 has an identical indication of the purported collateral as FS 3808.  FS
3807 indicates the 1968 Bondholders' purported collateral as "[a]ll of [HTA's] rights, title, and
interest in and to" various 1968 HTA Revenues.  The 1968 Resolution is not attached to FS
3807.  FS 3807 does not indicate any right of HTA to receive 1968 HTA Revenues as purported
collateral.

73.     None of the 1968 Financing Statements (*i*) sufficiently name the secured party to
perfect a security interest or (*ii*) indicate any right of HTA to receive Revenues as purported
collateral.

C.     ***The 1998 Bond Financing Statements***

74.     Six financing statements were filed regarding the 1998 Bonds that name HTA as
the debtor.

75.     On August 4, 2014, a financing statement was filed that names as the secured
party "Holders of all bonds ('1998 Resolution Bonds') issued under Resolution 98-06."  *See*
Dep't of State Doc. No. 2014003809 ("FS 3809").  FS 3809 indicates the 1998 Bondholders'
purported collateral as "[a]ll of [HTA's] rights, title, and interest in and to" various Revenues.

---

[10] The 1968 Financing Statements are attached hereto as **Exhibit B**.

*Id.* The 1998 Resolution is not attached to FS 3809.  FS 3809 does not indicate any right of HTA to receive Revenues as purported collateral.

76.     On August 4, 2014, a second financing statement was filed that names as the secured party "Ambac Assurance Corporation ('Ambac') for benefit of holders of all bonds ('1998 Resolution Bonds') issued under Resolution 98-06."  *See* Dep't of State Doc. No. 2014003810 ("FS 3810").  FS 3810 has an identical indication of the purported collateral as FS 3809.  FS 3810 indicates the 1998 Bondholders' purported collateral as "[a]ll of [HTA's] rights, title, and interest in and to" various Revenues.  The 1998 Resolution is not attached to FS 3810. FS 3810 does not indicate any right of HTA to receive Revenues as purported collateral.

77.     On September 9, 2014, a financing statement was filed that names as the secured party "HOLDERS OF ALL BONDS ISSUED UNDER THE 1998 RESOLUTION."  *See* Dep't of State Doc. No. 2014004845 ("FS 4845").  FS 4845 attached a two page indication of the 1998 Bondholders' purported collateral, which indicates the purported collateral as "all of [HTA's] right, title and interest in and to (a) all 'Revenues'" (as well as all of HTA's right, title and interest in and to the 1998 Resolution Funds).  *Id.*  The 1998 Resolution is not attached to FS 4845.  FS 4845 does not indicate any right of HTA to receive Revenues as purported collateral.

78.     On September 9, 2014, a second financing statement was filed that names as the secured party "HOLDERS OF ALL BONDS ISSUED UNDER THE 1998 RESOLUTION." *See* Dep't of State Doc. No. 2014004847 ("FS 4847").  FS 4847 attached a two page indication of the 1998 Bondholders' purported collateral, which indicates the purported collateral as "all of [HTA's] right, title and interest in and to (a) all 'Revenues'" (as well as all of HTA's right, title and interest in and to the 1998 Resolution Funds).  *Id.*  The 1998 Resolution is not attached to FS 4847.  FS 4847 does not indicate any right of HTA to receive Revenues as purported collateral.

79.     On September 9, 2014, a third financing statement was filed that names as the secured party "HOLDERS OF ALL BONDS ISSUED UNDER THE 1998 RESOLUTION." *See* Dep't of State Doc. No. 2014004848 ("FS 4848").  FS 4848 attached a one page indication of the 1998 Bondholders' purported collateral, which refers to the 1998 Security Agreement and indicates the 1998 Bondholders' purported collateral as "all Revenues (as defined in the Resolution)" (as well as the 1998 Resolution Funds and all amounts on deposit and required to be on deposit therein).  The 1998 Security Agreement is not attached to FS 4848.  FS 4848 does not indicate any right of HTA to receive Revenues as purported collateral.

80.     On September 9, 2014, a fourth financing statement was filed that names as the secured party "HOLDERS OF ALL BONDS ISSUED UNDER THE 1998 RESOLUTION." *See* Dep't of State Doc. No. 2014004846 ("FS 4846," and collectively with FS 3809, FS 3810, FS 4845, FS 4847, FS 4848, the "1998 Financing Statements," and the 1998 Financing Statements together with the 1968 Financing Statements, the "Financing Statements").[11]  FS 4846 attached a one page indication of the 1998 Bondholders' purported collateral, which refers to the 1998 Security Agreement and indicates the 1998 Bondholders' purported collateral as "all Revenues (as defined in the Resolution)" (as well as the 1998 Resolution Funds and all amounts on deposit and required to be on deposit therein).  The 1998 Security Agreement is not attached to FS 4846.  FS 4846 does not indicate any right of HTA to receive Revenues as purported collateral.

81.     None of the 1998 Financing Statements (*i*) sufficiently name the secured party to perfect a security interest or (*ii*) indicate any right of HTA to receive Revenues as purported collateral.

---

[11] The 1998 Financing Statements are attached hereto as **Exhibit C**.

**IV.     The Commonwealth's Acts and Obligations with Respect to the Bonds**

82.     The Commonwealth is neither an issuer nor a guarantor of the Bonds.   The Commonwealth did not enact either the 1968 Resolution or the 1998 Resolution.   Neither Resolution grants a security interest against any property in which the Commonwealth has an interest or otherwise contains any undertakings by the Commonwealth.

83.     The Enabling Act, the 1968 Resolution, and the 1998 Resolution exclude any Commonwealth liability with respect to the payment of the Bonds, as described in the official statements prepared in connection with HTA's bond issuances.   9 L.P.R.A. § 2015; 1968 Resolution at 2; 1968 Resolution § 203 (template bond); 1998 Resolution at 2, Second Whereas Clause, sub-clause (xi); 1998 Resolution § 204 (template bond); Official Statement for Highway Revenue Refunding Bonds Series AA, dated Jun. 17, 2010 at 1.

84.     The Commonwealth does not have any obligations to the Bondholders on account of the Bonds.

85.     The Enabling Act, as alleged above, empowers HTA to do certain things.   9 L.P.R.A. § 2004.   As relevant herein, 9 L.P.R.A. § 2004(l) empowers HTA to borrow money for any of its corporate purposes, to issue bonds in evidence of such indebtedness and to secure payment of bonds and interest by pledge or other lien on properties, revenues and other income, subject to Article VI, Section 8 of the Commonwealth Constitution.   9 L.P.R.A. § 2004(m) empowers HTA to issue bonds for the purpose of funding, refunding, purchasing, paying or discharging any of its outstanding bonds.   None of the rights and powers conferred on HTA by the Enabling Act (or any other Commonwealth law) give rise to any liability of the Commonwealth with respect to bonds issued by HTA.   As described above, 9 L.P.R.A. § 2004(q) states "neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable for the payment of the principal of or interest on any bonds issued by the

24

Authority and such principal and interest shall be payable only from the funds of the Authority pledged for such payment pursuant to" Section 2004(l). The Enabling Act, at 9 L.P.R.A. § 2019 (the "HTA Non-Impairment Provision"), provides the Commonwealth  "will not limit or restrict the rights or powers hereby vested in [HTA] until all such bonds at any time issued, together with the interest thereon, are fully met and discharged."

A.   *The Retention of HTA Allocable Revenues under the Commonwealth Constitution*

86.    All obligations related to the Bonds – including any alleged obligation to appropriate and transfer the HTA Allocable Revenues or to deposit funds in the 1968 Sinking Fund or the 1998 Resolution Funds – were always subject to Section 8 of Article VI of the Commonwealth Constitution.  That section provides:

> In case the available revenues including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law.

P.R. Const. art. VI, § 8.

87.    The Commonwealth Constitution allows the Commonwealth to use its resources when necessary to protect the life, health, and general welfare of the people of Puerto Rico. Section 19, Article II of the Commonwealth Constitution provides "[t]he power of the Legislative Assembly [of Puerto Rico (the "Legislative Assembly")] to enact laws for the protection of the life, health and general welfare of the people shall likewise not be construed restrictively."

88.    Section 18 of Article II of the Commonwealth Constitution grants the Legislative Assembly with authority to approve laws for grave emergency situations when there is a clear danger to public health and safety or to the delivery of essential services.

89.     All Commonwealth statutory or contractual duties (including any obligations with respect to the Bonds) are subject to Article VI, Section 8, Article II, Section 18, and Article II, Section 19 of the Commonwealth Constitution.

**B.**     ***The Suspension of Appropriations and Transfers to HTA under the Commonwealth Constitution and Ensuing Emergency Orders***

90.     Pursuant to Article VI, Section 8 of the Commonwealth Constitution, on November 30, 2015, the then-Governor of the Commonwealth issued Administrative Bulletin OE-2015-046 (the "First Emergency Order," attached hereto as **Exhibit D**).

91.     The First Emergency Order ordered the "Secretary of the Treasury . . . to withhold the revenue allocated to [HTA]" under the HTA Allocable Revenue Statutes.  *See* First Emergency Order at 2.   The Treasury was instructed to "retain only those funds necessary to make … payments on the public debt, while continuing to provide essential services to safeguard the public health, safety, education and welfare of the residents of Puerto Rico."  *Id.* at 3.  The First Emergency Order directed that the retained HTA Allocable Revenues must "be kept in a separate account and shall be used only to make public debt payments as they become due," and as such, these revenues "constitute[] available resources subject to Article VI, Section 8 of the Constitution of the Commonwealth."  *Id.*

92.     Under the First Emergency Order, the Commonwealth authorized the use of its own funds to "safeguard" the public welfare and, to the extent any funds remain available, pay down public debt.

93.     The Commonwealth's actions pursuant to the First Emergency Order were in accordance with any contractual, statutory, or other obligations, if any, it had with respect to the Bonds.

94.     On December 8, 2015, the Governor issued Administrative Bulletin OE-2015-49 (the "Second Emergency Order," attached hereto as **Exhibit E**, and together with the First Emergency Order, the "Emergency Orders").  The Second Emergency Order implemented the First Emergency Order.

95.     On April 6, 2016, pursuant to Article II, Section 19 of the Commonwealth Constitution, the Governor signed into law the *Puerto Rico Emergency Moratorium and Financial Rehabilitation Act* (the "Moratorium Act," attached hereto as **Exhibit F**).  The Moratorium Act, among other things, authorized the Governor to declare a temporary hold on debt service payments, stay creditor remedies resulting from the hold, and allow the Governor to order the suspension or modification of statutory or other obligations to transfer funds to pay or secure any covered obligation.  *See id*. at 6.

96.     Subsequently, the Governor issued Moratorium Order 18 (Administrative Bulletin OE-2016-18), Moratorium Order 30 (Administrative Bulletin EO-2016-30) and Moratorium Order 31 (Administrative Bulletin EO-2016-31) (collectively, the "Moratorium Orders," attached hereto as **Exhibits G**, **H**, and **I**, respectively).[12]  The Moratorium Orders facilitated effective management of the Commonwealth's ongoing fiscal emergency by declaring a state of emergency and prioritizing the provision of essential services for the health, safety and welfare of the residents of the Commonwealth over debt service.  Through the Moratorium Orders, the Governor ordered the retention of certain funds, including, but not limited to, the HTA Allocable Revenues, to provide essential services for the people of Puerto Rico.  *See* OE-2016-18 at 5; *see also* EO-2016-30 at 2-3; *see also* EO-2016-31 at 2-3.

---

[12] The Emergency Orders, the Moratorium Act, and the Moratorium Orders are collectively referred to herein as the "Pre-PROMESA Retention Actions."

C.   ***Preemption of Commonwealth Law Conditionally Allocating the HTA Allocable Revenues to HTA***

    i.   ***PROMESA***

97.   PROMESA became effective on June 30, 2016, and it created the Oversight Board.  PROMESA § 101(b).

98.   PROMESA section 201 gives the Oversight Board the power to certify fiscal plans for the Commonwealth and its instrumentalities.

99.   PROMESA section 202(e)(3)(C) gives the Oversight Board the power to certify budgets for the Commonwealth and its instrumentalities over all appropriations, which shall be deemed to be "in full force and effect" once certified.

100.   PROMESA section 4 provides "[t]he provisions of [PROMESA] shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with [PROMESA]."

101.   PROMESA section 405(m)(1), (2) and (3) provide, among other things, (*i*) there is a fiscal emergency in Puerto Rico, (*ii*) the Commonwealth is unable to provide its citizens with effective services, and (*iii*) the fiscal emergency has contributed to the accelerated outmigration of residents and businesses.

    ii.   ***The Commonwealth Title III Case***

102.   On May 3, 2017 (the "Petition Date"), the Oversight Board, at the request of the Governor, issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof (the "Commonwealth Title III Case").

103.   Pursuant to PROMESA, the Oversight Board is the sole representative of each Title III debtor (including the Commonwealth and HTA), and has certain powers of a chapter 11

28

trustee.  PROMESA §§ 301(c)(7), 315(b).  Only the Oversight Board may propose a plan of adjustment of the debts of the Commonwealth.  PROMESA § 312.

### iii.    *The HTA Title III Case*

104.    On May 21, 2017, the Oversight Board, at the request of the Governor, issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to PROMESA section 304(a), commencing a case under title III thereof (the "HTA Title III Case").

105.    On June 1, 2017, the Court entered an order granting the joint administration of HTA Title III Case with the Commonwealth Title III Case, for procedural purposes only.  *See* Case No. 17-BK-3283-LTS, ECF No. 242.

### iv.    *The Fiscal Plans, Budgets and the Post-PROMESA Treatment of the HTA Allocable Revenues*

106.    Between March 13, 2017 and May 9, 2019, the Oversight Board certified eight fiscal plans for the Commonwealth.  None of the fiscal plans provided the Commonwealth would appropriate and transfer the HTA Allocable Revenues to HTA.

107.    On June 30, 2018, the Oversight Board certified a budget for the Commonwealth for Fiscal Year 2019 (the "Certified FY19 Budget").  The Certified FY19 Budget did not include an appropriation or transfer of HTA Allocable Revenues by the Commonwealth to HTA.

108.    On May 9, 2019, the Oversight Board certified the current fiscal plan for the Commonwealth ("May 2019 Fiscal Plan"), attached hereto as **Exhibit J**.  The May 2019 Fiscal Plan did not provide for the Commonwealth to appropriate or transfer the HTA Allocable Revenues to HTA.  *Id.* at 28, 40, and 122.  The May 2019 Fiscal Plan contains a "Revenue Breakdown" that lists HTA Allocable Revenues as available for the Commonwealth's use.  *Id.* at 146, Ex. 84.

109.    On June 30, 2019, the Oversight Board certified a budget for the Commonwealth for the current Fiscal Year 2020 (the "Certified FY20 Budget," and together with the Certified FY19 Budget, the "Budgets").  The Certified FY20 Budget did not include an appropriation or transfer of HTA Allocable Revenues by the Commonwealth to HTA.

110.    On June 5, 2019, the Oversight Board certified the current fiscal plan for HTA (the "HTA Fiscal Plan"), attached hereto as **Exhibit K**.  The HTA Fiscal Plan does not provide for the appropriation or transfer of any of the HTA Allocable Revenues to HTA (or the receipt by HTA of such HTA Allocable Revenues).  *Id.* at 50.

### v.    *The Commonwealth Plan of Adjustment*

111.    On September, 27, 2019, the Oversight Board filed a proposed *Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* in the Commonwealth Title III Case (the "Commonwealth Plan").  Case No. 17-BK-3283-LTS, ECF No. 8765.

112.    The Commonwealth Plan proposes to pay certain claims based on the Commonwealth's general obligation bonds at a level less than the full amount of their claims, even after taking into account the retention of the HTA Allocable Revenues.  *See* Plan Arts. X-XXVIII (providing for varied levels of impairment to general obligation bond claims).

## V.    Defendants' Proofs of Claim Filed in the Commonwealth Title III Case

113.    On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* (the "Bar Date Motion").  Case No. 17-BK-3283-LTS, ECF No. 2255.  In the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Case No. 17-BK-3283-LTS, ECF No. 2521.  Upon the

informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered an order (the "Extension Order," and together with the Initial Bar Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).  Case No. 17-BK-3283-LTS, ECF No. 3160 ¶ 2.

114.   Pursuant to the Bar Date Orders, the "indenture trustees, fiscal agents, or any similar agent or nominee . . . for each respective series of bonds issued by a Debtor or non-Debtor . . . may file a master proof of claim . . . against the applicable Debtor on behalf of themselves and all holders of bond claims for the respective series of bonds . . . ."  Initial Bar Date Order ¶ 5.a.

115.   Pursuant to the Bar Date Orders, BNYM, as Fiscal Agent, filed the Master Proofs of Claim in the Commonwealth Title III Case.

116.   Defendants filed their respective Proofs of Claim in the Commonwealth Title III Case.

## VI.   Defendants' Lack of Standing to Assert Their Proofs of Claim

117.   Defendants have no rights to payment from the Commonwealth for the claims asserted in their Proofs of Claim.

118.   Pursuant to the Enabling Act and the HTA Bond Materials, the Bonds are not a debt of the Commonwealth and the Commonwealth has no liability thereon.  9 L.P.R.A. § 2015, among other things, provides: "The bonds issued by [HTA] shall not be a debt of the Commonwealth of Puerto Rico . . .  and neither the Commonwealth of Puerto Rico nor any such political subdivision shall be liable thereon, nor shall such bonds or the interest thereon be payable out of any funds other than those pledged for the payment of such bonds." *See also* 1968 Resolution at 2 (same); 1998 Resolution at 2 (same); Official Statement for Highway Revenue Refunding Bonds Series AA, dated Jun. 17, 2010 at 1 (same).

31

119.    The Bonds are non-recourse bonds, and payment for the Bonds is exclusively limited to disbursements from the 1968 Sinking Fund and 1998 Resolution Funds.  The Bonds do not grant a security interest against the HTA Allocable Revenues, and the Commonwealth has no obligation to fund the 1968 Sinking Fund and 1998 Resolution Funds.

120.    The HTA Allocable Revenue Statutes provide HTA with a conditional right to receive the HTA Allocable Revenues collected by the Commonwealth.  Creditors of HTA do not have any such right.   A creditor of HTA does not hold any right to payment of the HTA Allocable Revenues from the Commonwealth.

121.    With respect to the Bonds, a creditor of HTA is, at most, a creditor of a creditor of the Commonwealth.   If any rights arise in the HTA Allocable Revenues *vis-à-vis* the Commonwealth, such rights belong to HTA, not HTA's creditors.

122.    Defendants that are creditors of a creditor of a debtor have no claim against the debtor.

**VII.    Defendants' Lack of Subrogation, Reimbursement, or Contribution Rights**

123.    Insurers of the Bonds only have allowable subrogation claims for amounts the insurer has paid to Bondholders.

124.    Defendants-insurers' subrogation, reimbursement or contribution claims are subordinated to the unpaid claims of the holders of Bonds insured by the insurer.

**VIII.    The Pre-PROMESA Retention of HTA Allocable Revenues was Permitted by Commonwealth Law and the HTA Bond Materials**

125.    The HTA Enabling Act and the HTA Allocable Revenue Statutes provide any allocation of the HTA Allocable Revenues was conditional and subject to the Commonwealth's retention powers pursuant to Article VI, Section 8 of the Commonwealth Constitution.  *See* 9 L.P.R.A. § 2004; 9 L.P.R.A. § 5681; 13 L.P.R.A. § 31751.

126.    All of the HTA Allocable Revenues were subject to the Commonwealth's retention powers as provided in Article VI, Section 8 of the Commonwealth Constitution.

127.    The Commonwealth was authorized to retain the HTA Allocable Revenues pursuant to the retention powers provided in Article VI, Section 8 of the Commonwealth Constitution.   Such retention of the HTA Allocable Revenues was not in violation of Commonwealth law.

128.    Both the 1968 Resolution and the 1998 Resolution provide the Commonwealth can retain the HTA Allocable Revenues pursuant to Article VI, Section 8 of the Commonwealth Constitution.  *See* 1968 Resolution, second and fifth Whereas clauses; 1998 Resolution, second and fifth Whereas clauses.

## IX.    Commonwealth Laws Inconsistent With PROMESA Cited by Defendants as a Challenge to the Commonwealth's Retention of HTA Allocable Revenues Are Preempted by PROMESA

129.    Once PROMESA was enacted into law, which included the Oversight Board's power to control any appropriations by certifying budgets for the Commonwealth pursuant to PROMESA section 202, any Commonwealth laws inconsistent with PROMESA, such as Commonwealth laws appropriating moneys without Oversight Board certifications, were preempted.

130.    Defendants' claims that the HTA Allocable Revenue Statutes require the Commonwealth to unconditionally allocate the HTA Allocable Revenues to HTA are inconsistent with PROMESA section 202 and the budgets certified by the Oversight Board thereunder, and therefore are not allowable because such statutes are preempted by PROMESA.

131.    The Commonwealth Plan proposes to pay certain claims based on the Commonwealth's general obligation bonds at a level less than the full amount of those claims,

even after taking into account the retention of the HTA Allocable Revenues. *See* Plan Arts. X-XXVIII.

## X.   The Commonwealth's Retention of the HTA Allocable Revenues Is Not a Breach of Contract

132.   The Commonwealth is not a party to any of the HTA Bond Materials.   The Commonwealth did not adopt either the 1968 Resolution or the 1998 Resolution, nor is it a party to the 1998 Security Agreement.

133.   Because the Commonwealth was not a party to any of the contracts and agreements governing the Bonds, and it is exempted from liability by the terms of the documents governing the Bonds, the Commonwealth does not owe any contractual obligations to any Bondholder, including each Defendant herein, regarding payment on the Bonds.

134.   The Commonwealth's retention of the HTA Allocable Revenues not appropriated and transferred to HTA did not constitute a breach of contract.

## XI.   The Commonwealth's Retention of the HTA Allocable Revenues Is Not a Tort

135.   The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions was lawful pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

136.   The Commonwealth's retention of the HTA Allocable Revenues pursuant to the fiscal plans and budgets certified by the Oversight Board was lawful pursuant to PROMESA sections 201 and 202 (and any Commonwealth statute inconsistent with such retention was preempted by PROMESA).   Because such conduct was lawful, it does not give rise to a tort claim against the Commonwealth.

137.   Each tort claim asserted by each Defendant does not allege the required elements of the tort asserted.   Defendants' tortious interference with contract claims fail because (*i*) from

the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the HTA Allocable Revenues due to preemption of the HTA Allocable Revenue Statutes, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to make payment on the Bonds because payments were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

138.    Defendants' unjust enrichment claims fail because (*i*) Commonwealth law does not recognize a cause of action for unjust enrichment against the Commonwealth, and (*ii*) the documents governing the Bonds specify the rights and obligations of the parties and therefore there could be no separate claim for unjust enrichment apart from any claim for breach of contract, which does not exist in this case.

139.    Defendants' conversion claims fail because (*i*) the Bondholders do not have a security interest (if any) in any Commonwealth funds and any HTA funds beyond moneys actually received by HTA from the Commonwealth and deposited in the 1968 Sinking Fund and the 1998 Resolution Funds, (*ii*) the Commonwealth's retention of the HTA Allocable Revenues not appropriated and transferred to HTA prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the Bondholders do not have any other property interest in the HTA Allocable Revenues, and (*iv*) the Commonwealth's retention of the HTA Allocable Revenues not appropriated and transferred to HTA after the enactment of PROMESA was proper because the HTA Allocable Revenue Statutes were preempted.

140.    Defendants' fraud-based claims fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth did not make any material misstatements of fact, (*iii*) the Commonwealth did not engage in any fraudulent conduct, and (*iii*) the required elements of such fraud-based claims are not alleged.  Statements made in the HTA Bond Materials were truthful

when made.  Defendants also fail to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

141.    The HTA Allocable Revenue Statutes are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim.

**XII.    The Commonwealth's Retention of the HTA Allocable Revenues Does Not Violate the Contracts Clause**

**A.    *No Impairment of Contractual Relationship***

142.    The Commonwealth did not violate the Contracts Clauses of the United States Constitution or the Commonwealth Constitution (collectively, the "Contracts Clause") in retaining the HTA Allocable Revenues that were not transferred to HTA.  The HTA Bond Materials allowed for the retention of the HTA Allocable Revenues.

143.    Prior to the passage of PROMESA, the Commonwealth's retention of the HTA Allocable Revenues was authorized by Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, as well as the HTA Allocable Revenue Statutes.  Following the passage of PROMESA, the HTA Allocable Revenue Statutes were preempted.

**B.    *No State or Territory Legislative Action***

144.    The Commonwealth did not pass any law impairing contractual obligations owing to Defendants.  Prior to enactment of PROMESA, the Commonwealth laws enacted solely carried out the terms of the Commonwealth Constitution, and the Bonds were all expressly subject to the Commonwealth Constitution.

36

145.    After enactment of PROMESA, each Commonwealth statute requiring appropriations to HTA without Oversight Board certification was preempted.

146.    Commonwealth actions that were exercises of executive, rather than legislative authority were neither subject to the Contracts Clause nor causes of impairment of any contractual obligations owing to Defendants as Bondholders.

147.    The Commonwealth's executive orders, including the Emergency Orders and Moratorium Orders, were issued by the Governor as exercises of the Governor's executive authority, and were not legislative actions.

**C.      *The Retention of HTA Allocable Revenues Was in Accordance with PROMESA's Grant to the Oversight Board of an Unreviewable Decision to Certify the Commonwealth and HTA's Budgets and Fiscal Plans***

148.    The Commonwealth retained the HTA Allocable Revenues in compliance with PROMESA pursuant to the Oversight Board's certification of the Commonwealth and HTA's respective fiscal plans and budgets.

149.    The Oversight Board's certifications of all fiscal plans and budgets are unreviewable on any standard of review pursuant to PROMESA section 106(e), including a reasonable and necessary standard of review.

150.    Alternatively, to the extent the Commonwealth's retention of the HTA Allocable Revenues is determined with valid subject matter jurisdiction not to be reasonable and necessary, the Bondholders' sole remedy is a prepetition, unsecured, dischargeable claim against the Commonwealth.

**XIII.   The Commonwealth's Retention of the HTA Allocable Revenues Does Not Violate the Takings Clause**

151.    No Defendant holds a property right in the HTA Allocable Revenues retained by the Commonwealth.

37

152.    The Resolutions authorize HTA to grant a security interest only against revenues actually received by HTA from the Commonwealth and deposited in certain accounts held by the Fiscal Agent, and specified tolls charged directly by HTA and deposited in certain accounts held by the Fiscal Agent.  The Fiscal Agent's security interest is limited to revenues received by HTA (1968 Resolution § 601; 1998 Resolution § 601) and deposited in certain, specified accounts held by the Fiscal Agent (1968 Resolution § 401; 1998 Resolution § 401).

153.    The Resolutions did not grant any Defendant any interest in any right HTA may have to receive the HTA Allocable Revenues retained by the Commonwealth and not appropriated and transferred to HTA and deposited into the 1968 Sinking Fund or the 1998 Resolution Funds, or any moneys received by HTA and deposited into any account not held by the Fiscal Agent.  None of the HTA Bond Materials provides Defendants with any interests against amounts held by the Commonwealth.

154.    Defendants' only interest in the HTA Allocable Revenues are in such revenues both received by HTA and deposited in the 1968 Sinking Fund or the 1998 Resolution Funds.

155.    The Commonwealth lawfully retained the HTA Allocable Revenues for its own use.  Such funds were not appropriated or transferred to HTA, received by HTA, or deposited into the 1968 Sinking Fund or the 1998 Resolution Funds.  Neither the Resolutions nor HTA granted Bondholders a security interest against the HTA Allocable Revenues retained by the Commonwealth, or in any other property of the Commonwealth, and Defendants have no property interest in them.

156.    Even if any Defendant holds a property interest for takings purposes, no Defendant has an allowable takings claim against the Commonwealth because the taking would

be a permissible regulatory taking for a public purpose because it does not interfere with any Defendant's investment-backed expectations.

157.    Bondholders knew or should have known that the HTA Allocable Revenues were subject to the Commonwealth's retention.  The HTA Allocable Revenues, if any, were rendered expressly subject to Section 8 of Article VI of the Commonwealth Constitution, and were always subject to the Commonwealth's police power.

158.    Alternatively, if any Defendant holds an allowable takings claim the claim would be a prepetition general unsecured, dischargeable claim against the Commonwealth.

## XIV.    The Commonwealth's Retention of HTA Allocable Revenues Does Not Violate the Due Process Clause

159.    A claim brought under the Due Process Clause of the Commonwealth and U.S. Constitutions (the "Due Process Clause") on the same basis and with no additional factual allegations separate from a claim brought under the Takings Clause of the Commonwealth and U.S. Constitutions ("Takings Clause") fails if the Takings Clause claim fails.

160.    Each Defendant filed a proof of claim pursuant to a court-supervised process in which it can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.

161.    No Defendant has an allowable Due Process Clause claim.

## XV.    Defendants Do Not Have Allowable Claims Under PROMESA Section 407

162.    PROMESA section 407(a) provides "if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of

such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property."  PROMESA § 407(a).

163.    No Defendant has a valid claim arising under PROMESA section 407(a) because no transfer of property of a territorial instrumentality, and no transfer in violation of applicable law, occurred.

164.    No "property of any territorial instrumentality" has been "transferred," because the HTA Allocable Revenues retained by the Commonwealth were not appropriated or transferred to HTA and are not property of HTA.

165.    The Commonwealth's retention of the HTA Allocable Revenues did not violate applicable law.  Prior to the passage of PROMESA, the retention of the HTA Allocable Revenues was lawful pursuant to the Commonwealth Constitution and the HTA Allocable Revenue Statutes.  Following the passage of PROMESA, the Commonwealth's retention of the HTA Allocable Revenues any Commonwealth law inconsistent with such retention – including, if they require an unconditional appropriation of the HTA Allocable Revenues to HTA – was preempted by PROMESA.

166.    No Defendant has a valid security interest against the HTA Allocable Revenues beyond, at most, moneys actually appropriated and transferred to HTA, received by HTA and deposited to the credit of the 1968 Sinking Fund or the 1998 Resolution Funds with the Fiscal Agent.

167.    Applicable law does not assure the transfer of the HTA Allocable Revenues for the benefit of HTA's creditors, but instead provides for a transfer, if any, to be for HTA's corporate purposes.

168.    Even if there were a valid claim under PROMESA section 407(a), no Defendant has standing to assert PROMESA section 407(a) claims during the Title III case, as only the territorial instrumentality (here, HTA) has a claim for the transferred property against the transferee (here, the Commonwealth) that "shall be liable for the value of such property."

## XVI. Defendants Do Not Have a Perfected Security Interest against the HTA Allocable Revenues Retained by the Commonwealth

169.    No Defendant has a perfected security interest against the HTA Allocable Revenues retained by the Commonwealth.

170.    None of the Defendants has control over any accounts holding the HTA Allocable Revenues for perfection purposes as required by Article 9 of the UCC.

171.    No financing statements were filed on any Defendant's behalf against the Commonwealth regarding collateral security for the Bonds.

172.    Pursuant to Bankruptcy Code section 544(a), the Commonwealth has, as of the commencement of the Commonwealth Title III Case, and without regard to any knowledge of a trustee, debtor, or creditor, the rights and powers of, or may avoid any transfer of its property or any obligation it incurred that is voidable by, a judicial lien creditor, among other things.

173.    Pursuant to Bankruptcy Code section 502(d), "the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under section . . . 544 . . ." subject to certain conditions.  11 U.S.C. § 502(d).

174.    Defendants' unperfected security interests against the HTA Allocable Revenues are junior to the Commonwealth's status as a judicial lien creditor and should be avoided pursuant to Bankruptcy Code sections 544(a) and 551, and 19 L.P.R.A. § 2267(a)(2).

175.    The Commonwealth's interest in any of the Commonwealth's property has priority over unperfected security interests against such property, including any of Defendants' purported and unperfected security interests against any of the Commonwealth's property.

**XVII.  Defendants Do Not Have a Priority Claim Against the Commonwealth**

176.    There is no Commonwealth law that grants any Defendant a priority claim with respect to HTA Allocable Revenues.

177.    Neither PROMESA nor the Bankruptcy Code provisions incorporated into Title III grant any of Defendants' unsecured claims any priority over general unsecured claims against the Commonwealth.

178.    None of the Bondholders' purported claims against the Commonwealth have administrative expense priority or any priority over general unsecured claims against the Commonwealth.

**XVIII. Defendants Do Not Have a Claim for Postpetition Revenues**

179.    Any HTA Allocable Revenues received by the Commonwealth since the Petition Date constitute "property acquired by the estate . . . after the commencement of the case" for purposes of 11 U.S.C. § 552(a).

180.    The HTA Allocable Revenues are not "special revenues" as defined in Bankruptcy Code section 902.

181.    None of the Bonds are secured by a security interest against any "special revenues."

182.    Any claim under Bankruptcy Code section 928 for a security interest against the HTA Allocable Revenues received by the Commonwealth since the Petition Date fails because Bankruptcy Code section 928 is only applicable to "special revenues."

183.   Any claim under Bankruptcy Code section 928 for a security interest against the HTA Allocable Revenues received by the Commonwealth since the Petition Date fails because Defendants' security interest, if any, is limited to amounts actually received by the HTA, and transferred to the 1968 Sinking Fund or the 1998 Resolution Funds.

184.   The amounts deposited in the accounts controlled by the Fiscal Agent are substantially less than the principal amount of either the 1968 Bonds or the 1998 Bonds. Defendants do not meet the requirements of Bankruptcy Code section 506(b)

## XIX.   Defendants Do Not Have an Ownership Interest in Any HTA Allocable Revenues or Other Commonwealth Property

185.   The HTA Allocable Revenue Statutes conditionally appropriating the HTA Allocable Revenues to HTA recognized the HTA Allocable Revenues (i) are property of the Commonwealth until they are transferred to HTA, (ii) are subject to retention by the Commonwealth if the Commonwealth's available resources are insufficient to cover its expenses in a given fiscal year, and (iii) once transferred to HTA can be used for HTA's corporate purposes.

186.   The Commonwealth has an ownership interest in the retained HTA Allocable Revenues—and Defendants do not have any ownership interests therein.  No language in any of the HTA Allocable Revenue Statutes or HTA Bond Materials gives Defendants ownership interests.

187.   Because, among other reasons, the HTA Allocable Revenues remain "available resources" pursuant to Article VI, Section 8 of the Commonwealth Constitution, the Commonwealth has been authorized to retain its ownership interest in the HTA Allocable Revenues and did not convey any property interests to HTA or the Bondholders since November 30, 2015.  9 L.P.R.A. § 2004(l) (authorizing HTA to issue bonds that "subject to the provisions

of § 8 of Art. VI of the Constitution of the Commonwealth, pledge to the payment of said bonds and interest thereon, the proceeds of any tax or other funds which may be made available to the Authority by the Commonwealth.").

188.    The HTA Allocable Revenues are in the Commonwealth's Treasury Single Account and are not funds belonging to Defendants.

189.    No Legislature can require appropriations be approved by future Legislatures. Future Legislatures retain the right and freedom to repeal or otherwise change any appropriation. The Commonwealth's powers to retain those revenues pursuant to the Commonwealth Constitution and to repeal the statute are indicia of the Commonwealth's ownership of the HTA Allocable Revenues.[13]

190.    Neither the HTA Allocable Revenue Statutes nor the HTA Bond Materials governing the Bonds or the HTA Allocable Revenues create a trust in favor of Defendants, and any trust would not be enforceable, because no deed of trust was executed and the moneys were not placed in a segregated account.

191.    Neither the HTA Allocable Revenue Statutes nor the HTA Bond Materials specifies the Commonwealth collects the HTA Allocable Revenues as Defendants' agent, nor is an agency relationship created by any other means.

192.    Under any circumstance, HTA would continue to be the owner of the HTA Allocable Revenues until enforcement of any security interest or statutory lien is completed.

---

[13] In any event, PROMESA preempts any inconsistent legislative appropriations made by the Commonwealth without an Oversight Board certification.

## **OBJECTIONS TO THE AMBAC CLAIM**

### **COUNT I**

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AMBAC CLAIM AS DUPLICATIVE
OF THE MASTER PROOFS OF CLAIM
(11 U.S.C. § 502)

193.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

194.    The Ambac Claim seeks principal, prepetition interest, postpetition interest and fees against the Commonwealth based on the same Bonds that are the subject of the Master Proofs of Claim.  The Ambac Claim is duplicative of the Master Proofs of Claim asserted by the Fiscal Agent because they both make claims for the same exact funds owed under the Bonds.

195.    Ambac alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) security interests against the HTA Allocable Revenues, (*iii*) violations of the U.S. and Commonwealth Constitutions in failing to appropriate the HTA Allocable Revenues to HTA, (*iv*) violations of PROMESA section 407, (*v*) the Commonwealth's failure to appropriate the HTA Allocable Revenues to HTA was unlawful and a breach of contract and/or gave rise various tort claims, and (*vi*) entitlement to administrative expense priority.

196.    A failure to disallow the Ambac Claim will result in Ambac potentially receiving an unwarranted double recovery against the Commonwealth to the detriment of other stakeholders.

197.    Ambac will not be prejudiced by the disallowance of its duplicative claims because they are subsumed within the Master Proofs of Claim.

198.    Plaintiff is entitled to judgment disallowing the Ambac Claim as duplicative of the Master Proofs of Claim.  In the alternative, if the Ambac Claim is not disallowed as

duplicative, Plaintiff is entitled to an offset from the Ambac Claim to be determined by the Court for any amount recovered by the Fiscal Agent against Plaintiff.

## COUNT II

1968 & 1998 BONDS: JUDGMENT DISALLOWING AMBAC CLAIM BECAUSE AMBAC LACKS STANDING TO ASSERT A CLAIM AGAINST THE COMMONWEALTH AS TO THE BONDS
(11 U.S.C. §§ 501, 502)

199.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

200.    The Ambac Claim must be disallowed because Ambac does not have any "right to payment" from the Commonwealth, or any interest in any right to payment, and therefore does not have or possess an allowable claim against the Commonwealth under the Bankruptcy Code or Commonwealth law.  Without an enforceable obligation against the Commonwealth as to the HTA Allocable Revenues, Ambac does not have standing to assert a claim against the Commonwealth.

201.    Further, Ambac lacks derivative standing to assert any claims against the Commonwealth for its retention of the HTA Allocable Revenues.

202.    Plaintiff is entitled to judgment disallowing the Ambac Claim in its entirety, as Ambac does not have standing to assert a claim against the Commonwealth because it lacks any interest in an enforceable obligation from the Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code section 101(5).

## COUNT III

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AMBAC CLAIM ASSERTING
SUBROGATION RIGHTS THAT EXCEED THE AMOUNT PAID BY AMBAC TO
BONDHOLDERS OR OTHERWISE SUBORDINATING THE AMBAC CLAIM TO THE
CLAIMS OF BONDHOLDERS PURSUANT TO BANKRUPTCY CODE SECTION 509(c)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2104, 2141, 2142, 2161; 11 U.S.C. §§ 502, 509)

203.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

204.    The Ambac Claim asserts claims based on subrogation, reimbursement or
contribution rights arising from payments to Bondholders holding Bonds allegedly insured by
Ambac.

205.    Plaintiff is entitled to judgment disallowing the Ambac Claim for subrogation,
reimbursement, and contribution rights exceeding the amount Ambac has paid to Bondholders
and otherwise subordinating such portions of the allowable Ambac Claim for money actually
paid to the unpaid claims of insured Bondholders.

## COUNT IV

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON
UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH
RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE
COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

206.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

207.    The Ambac Claim asserts a claim against the Commonwealth based on the
Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

208.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the
Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by
operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the HTA

Allocable Revenue Statutes, which provide the HTA Allocable Revenues are "available resources" of the Commonwealth.

209.    The obligation of the Commonwealth, if any, to appropriate the HTA Allocable Revenues to HTA, as well as all other obligations related to the Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

210.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution.

## COUNT V

1968 & 1998 BONDS: JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE THE HTA ALLOCABLE REVENUE STATUTES WERE PREEMPTED BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

211.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

212.    The Ambac Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

213.    The Commonwealth's retention of the HTA Allocable Revenues following the passage of PROMESA does not give rise to a claim against the Commonwealth because the statutes creating an obligation of the Commonwealth to appropriate and transfer the HTA Allocable Revenues were preempted by PROMESA.  Appropriations under Commonwealth law were inconsistent with PROMESA's provisions granting the Oversight Board complete power over fiscal plans and budget appropriations

214.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's obligation to appropriate and transfer the HTA Allocable Revenues was preempted.

## COUNT VI

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR BREACH OF CONTRACT
(11 U.S.C. § 502)

215.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

216.    The Ambac Claim asserts a breach of contract claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues.

217.    The Commonwealth is not liable for any breach of contract to Ambac.  The Commonwealth is not a party to any contract with Ambac (including the HTA Bond Materials). The Commonwealth does not owe any contractual obligations to or enforceable by Ambac regarding payment on the Bonds.

218.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute a breach of a Commonwealth contract.

## COUNT VII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR COMMON LAW TORT CLAIMS
(11 U.S.C. § 502)

219.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

220.    The Ambac Claim asserts various tort-based claims—including common law fraud, conversion, misrepresentation, unjust enrichment, fraudulent conveyance, tortious interference with contract, and fraudulent inducement—which all purportedly arise out of the Commonwealth's retention of the HTA Allocable Revenues.

221.    The Commonwealth's retention of the HTA Allocable Revenues was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to Ambac for any tort claims under any theory.

222.    The Ambac Claim's conversion claim fails because (*i*) Ambac does not have a security interest against any Commonwealth funds and any HTA funds beyond moneys actually received by HTA from the Commonwealth and deposited in the 1968 Sinking Fund and the 1998 Resolution Funds, (*ii*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the Bondholders do not have any other property interest in the HTA Allocable Revenues, and (*iv*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA after the enactment of PROMESA was proper because the HTA Allocable Revenue Statutes were preempted.

223.    The Ambac Claim's tortious interference with contract claim fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the HTA Allocable Revenues due to preemption of the HTA Allocable Revenue Statutes, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to make payment on the Bonds because payments were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

224.    The Ambac Claim's claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth did not make any material misstatements of fact, (*iii*) the Commonwealth did not engage in any fraudulent conduct, and (*iv*) the required elements of such fraud-based claims are not alleged.  Statements made in the HTA Bond Materials were truthful when made.  The Ambac Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

225.    The Ambac Claim's claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation also fail because the HTA Allocable Revenue Statutes are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim.

226.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, or misrepresentation.

## **COUNT VIII**

**1968 & 1998 BONDS**: JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

227.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

51

228.    The Ambac Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

229.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

230.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

231.    To the extent Ambac has an allowable claim for such retention, the claim is a prepetition general unsecured claim and all assertions of priority and/or secured status should be disallowed.

### COUNT IX

**1968 & 1998 BONDS**: JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH
AND U.S. CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

232.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

233.    Ambac alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

234.     The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth was authorized to retain them under Commonwealth and federal law, and no contractual right of Ambac's was impaired.

235.     Any legislation enacted by the Commonwealth to support retention of the HTA Allocable Revenues did not originate the Commonwealth's power to retain the revenues.  The legislation carried out the Commonwealth's preexisting rights and duties to retain the HTA Allocable Revenues.

236.     Plaintiff is entitled to judgment disallowing the Ambac Claim because there has been no impairment of Ambac's contractual rights. In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT X

1968 & 1998 BONDS: JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO LEGISLATION CREATED AN IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

237.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

238.     Ambac alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

239.     The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because no Commonwealth legislation was passed that impaired Ambac's contract rights, if any.

240.     Plaintiff is entitled to judgment disallowing the Ambac Claim because there is no Commonwealth legislation that impaired Ambac's contract rights, if any.   In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT XI

1968 & 1998 BONDS: JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE HTA ALLOCABLE REVENUES WAS DUE TO PROMESA, NOT LEGISLATION
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

241.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

242.     Ambac alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

243.     The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.

244.     Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT XII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON
VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE AMBAC DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

245.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

246.    Ambac asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

247.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute a taking because Ambac has no property interest in the HTA Allocable Revenues.

248.    Plaintiff is entitled to judgment disallowing the Ambac Claim because Ambac has no property interest in the HTA Allocable Revenues and therefore cannot assert a takings claim. In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT XIII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON
VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE AMBAC HAD A REASONABLE EXPECTATION THE
COMMONWEALTH WOULD RETAIN THE HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

249.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

250.    Ambac asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

251.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute an impermissible taking because such retention did not interfere with Ambac's reasonable expectations.

252.    Ambac knew or should have known, pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the HTA Allocable Revenue Statutes, and the HTA Bond Materials, that the HTA Allocable Revenues were subject to the Commonwealth's retention.

253.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's retention of the HTA Allocable Revenues did not interfere with Ambac's reasonable expectations regarding the HTA Allocable Revenues.   In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Ambac based on the Takings Clause is a prepetition, unsecured, dischargeable claim.

## COUNT XIV

1968 & 1998 BONDS: JUDGMENT DISALLOWING AMBAC CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

254.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

255.    Ambac alleges the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause, and asserts a claim against the Commonwealth as a result of the alleged violation.

256.    Ambac filed a proof of claim pursuant to a court-supervised process in which it can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.

257.    The Ambac Claim does not assert any additional basis on which the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause separate from its Takings Clause claim.

258.    Because the Ambac Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, Ambac's Due Process claim should be disallowed because it has no property rights in the HTA Allocable Revenues retained by the Commonwealth.

259.    Plaintiff is entitled to judgment disallowing the Ambac Claim because the Commonwealth's retention of the HTA Allocable Revenues did not violate the Due Process Clause.

## **COUNT XV**

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AMBAC CLAIM BASED ON
PROMESA SECTION 407
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

260.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

261.    The Ambac Claim asserts claims under PROMESA section 407(a).

262.    Ambac does not have a claim under PROMESA section 407(a) because the HTA Allocable Revenues were not property of any territorial instrumentality transferred in violation of applicable law, nor does Ambac have any security interest against the HTA Allocable Revenues.

263.    Ambac also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only HTA has a claim for the transferred property against the transferee.

264.    Plaintiff is entitled to judgment disallowing the Ambac Claim based on PROMESA section 407(a).

## COUNT XVI

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AMBAC CLAIM FOR POSTPETITION
INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE
SECTION 502(b)(2)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

265.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

266.    The Ambac Claim asserts claims for postpetition interest and other postpetition
costs.

267.    Pursuant to Bankruptcy Code section 502(b), Ambac's claims for postpetition
interest must be disallowed.

268.    Pursuant to section 506, Ambac's claims for costs and expenses must be
disallowed to the extent not provided for by the 1968 Resolution, 1998 Resolution or other
applicable agreement, and to the extent provided for, must be allowed as prepetition general
unsecured claims to the extent its collateral value does not exceed all unpaid principal and
interest on the bonds it owns and insures.

## COUNT XVII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AMBAC'S SECURED CLAIM
(11 U.S.C. § 502)

269.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

270.    Ambac has no valid secured claim against the Commonwealth as it was neither
granted any security interest nor holds any statutory liens against any property in which the
Commonwealth has an interest, nor has Ambac perfected any alleged security interest if any, as
against the Commonwealth.

271.     Plaintiff is entitled to judgment disallowing Ambac's claim that Ambac possesses a secured claim against the HTA Allocable Revenues.

## COUNT XVIII

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AND AVOIDING AMBAC CLAIM ASSERTING PERFECTED SECURITY INTERESTS PURSUANT TO BANKRUPTCY CODE SECTION 502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

272.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

273.     The Ambac Claim asserts the Bonds it holds and/or insures are secured by a perfected security interest against the HTA Allocable Revenues held by the Commonwealth.

274.     Ambac does not have control over any deposit accounts, including the 1968 Sinking Fund or the 1998 Resolution Funds, or in any other funds held by the Commonwealth.

275.     No financing statements were filed against the Commonwealth regarding the Bonds.

276.     Plaintiff is entitled to judgment disallowing Ambac's claim for a perfected security interest against the Bonds as against the Commonwealth.

## COUNT XIX

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AMBAC'S PRIORITY CLAIM
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

277.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

278.     The Ambac Claim asserts amounts due to Ambac are entitled to priority over other unsecured claims.

279.     Ambac does not have a priority claim under Commonwealth law.  Moreover, even if Ambac had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

280.     Ambac does not have an administrative expense claim pursuant to PROMESA section 507.  None of Ambac's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

281.     Plaintiff is entitled to judgment disallowing all priorities asserted for the Ambac Claim.

## COUNT XX

1968 & 1998 BONDS: JUDGMENT DISALLOWING AMBAC CLAIM TO A SECURITY INTEREST AGAINST REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

282.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

283.     The Ambac Claim asserts HTA Allocable Revenues collected postpetition are subject to Ambac's purported security interest.

284.     Ambac does not have a valid or perfected security interest against the HTA Allocable Revenues.  Even if it did, such security interest would not attach to moneys collected postpetition.

285.     Plaintiff is entitled to judgment disallowing the Ambac Claim regarding its purported security interest against any and all postpetition HTA Allocable Revenues retained by the Commonwealth.

## COUNT XXI

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AMBAC CLAIM ASSERTING BONDS
ARE SECURED AGAINST SPECIAL REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 902)

286.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

287.    The Ambac Claim asserts all HTA Allocable Revenues allegedly securing the
Bonds are "special revenues" as defined in Bankruptcy Code section 902(2).

288.    The HTA Allocable Revenues are not "special revenues" as defined in
Bankruptcy Code section 902(2).

289.    None of the Bonds allegedly held or insured by Ambac are secured by a security
interest against any "special revenues."

290.    The Oversight Board is entitled to judgment disallowing the Ambac Claim
asserting the Bonds Ambac allegedly holds or insures are secured against "special revenues" as
defined in Bankruptcy Code section 902(2).

## COUNT XXII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AMBAC CLAIM OF OWNERSHIP IN
HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

291.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

292.    The Ambac Claim asserts the HTA Allocable Revenues are owned by the
Bondholders.

293.    None of the HTA Allocable Revenue Statutes or HTA Bond Materials provide
Defendants an ownership interest in HTA Allocable Revenues possessed by the Commonwealth,
including under any trust or agency theory.

61

294.    Plaintiff is entitled to judgment disallowing claims to an ownership interest asserted in the Ambac Claim, including an ownership interest based on trust or agency theories.

## COUNT XXIII

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AMBAC CLAIM FOR BREACH OF THE HTA NON-IMPAIRMENT PROVISION
(11 U.S.C. § 502)

295.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

296.    The Ambac Claim asserts the Commonwealth's retention of the HTA Allocable Revenues constitutes a breach of the HTA Non-Impairment Provision.

297.    The Commonwealth has not breached the HTA Non-Impairment Provision because it has not limited or altered any rights conferred to HTA.  The Commonwealth never repealed or amended the Enabling Act, or passed any legislation that conflicts with the powers granted to HTA.

298.    The Commonwealth's retention of the HTA Allocable Revenues does not limit or alter HTA's rights to the HTA Allocable Revenues as such rights were always conditional and subject to Section 8 Article VI of the Commonwealth Constitution.

299.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption of the Enabling Act's conditional appropriation of the HTA Allocable Revenues and does not constitute an action of the Commonwealth that limits or alters HTA's rights.

300.    Plaintiff is entitled to judgment disallowing the Ambac Claim because there has been no breach of the HTA Non-Impairment Provision.

## OBJECTIONS TO AGC CLAIM

### COUNT XXIV

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM AS DUPLICATIVE OF
THE MASTER PROOFS OF CLAIM
(11 U.S.C. § 502)

301.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

302.    The AGC Claim seeks principal, prepetition interest, postpetition interest and fees against the Commonwealth based on the same Bonds that are the subject of the Master Proofs of Claim.  The AGC Claim is duplicative of the Master Proofs of Claim asserted by the Fiscal Agent because they both make claims for the same exact funds owed under the Bonds.

303.    AGC alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) security interests against the HTA Allocable Revenues, (*iii*) violations of the U.S. and Commonwealth Constitutions in failing to appropriate the HTA Allocable Revenues to HTA, (*iv*) violations of PROMESA section 407, (*v*) the Commonwealth's failure to appropriate the HTA Allocable Revenues to HTA was unlawful and a breach of contract and/or gave rise various tort claims, and (*vi*) entitlement to administrative expense priority.

304.    A failure to disallow the AGC Claim will result in AGC potentially receiving an unwarranted double recovery against the Commonwealth to the detriment of other stakeholders.

305.    AGC will not be prejudiced by the disallowance of its duplicative claims because they are subsumed within the Master Proofs of Claim.

306.    Plaintiff is entitled to judgment disallowing the AGC Claim as duplicative of the Master Proofs of Claim.  In the alternative, if the AGC Claim is not disallowed as duplicative,

Plaintiff is entitled to an offset from the AGC Claim to be determined by the Court for any amount recovered by the Fiscal Agent against Plaintiff.

## **COUNT XXV**

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGC CLAIM BECAUSE AGC LACKS STANDING TO ASSERT A CLAIM AGAINST THE COMMONWEALTH AS TO THE BONDS
(11 U.S.C. §§ 501, 502)

307.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

308.    The AGC Claim must be disallowed because AGC does not have any "right to payment" from the Commonwealth, or any interest in any right to payment, and therefore does not have or possess an allowable claim against the Commonwealth under the Bankruptcy Code or Commonwealth law.  Without an enforceable obligation against the Commonwealth as to the HTA Allocable Revenues, AGC does not have standing to assert a claim against the Commonwealth.

309.    Further, AGC lacks derivative standing to assert any claims against the Commonwealth for its retention of the HTA Allocable Revenues.

310.    Plaintiff is entitled to judgment disallowing the AGC Claim in its entirety, as AGC does not have standing to assert a claim against the Commonwealth because it lacks any interest in an enforceable obligation from the Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code section 101(5).

## COUNT XXVI

**1968 & 1998 BONDS**: JUDGMENT DISALLOWING AGC CLAIM ASSERTING
SUBROGATION RIGHTS THAT EXCEED THE AMOUNT PAID BY AGC TO
BONDHOLDERS OR OTHERWISE SUBORDINATING THE AGC CLAIM TO THE
CLAIMS OF BONDHOLDERS PURSUANT TO BANKRUPTCY CODE SECTION 509(c)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2104, 2141, 2142, 2161; 11 U.S.C. §§ 502, 509)

311.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

312.    The AGC Claim asserts claims based on subrogation, reimbursement or
contribution rights arising from payments to Bondholders holding Bonds allegedly insured by
AGC.

313.    Plaintiff is entitled to judgment disallowing the AGC Claim for subrogation,
reimbursement, and contribution rights exceeding the amount AGC has paid to Bondholders and
otherwise subordinating such portions of the allowable AGC Claim for money actually paid to
the unpaid claims of insured Bondholders.

## COUNT XXVII

**1968 & 1998 BONDS**: JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON
UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH
RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE
COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

314.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

315.    The AGC Claim asserts a claim against the Commonwealth based on the
Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

316.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the
Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by
operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the HTA

Allocable Revenue Statutes, which provide the HTA Allocable Revenues are "available resources" of the Commonwealth.

317. The obligation of the Commonwealth, if any, to appropriate the HTA Allocable Revenues to HTA, as well as all other obligations related to the Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

318. Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution.

## COUNT XXVIII

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE THE HTA ALLOCABLE REVENUE STATUTES WERE PREEMPTED BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

319. Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

320. The AGC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

321. The Commonwealth's retention of the HTA Allocable Revenues following the passage of PROMESA does not give rise to a claim against the Commonwealth because the statutes creating an obligation of the Commonwealth to appropriate and transfer the HTA Allocable Revenues were preempted by PROMESA. Appropriations under Commonwealth law were inconsistent with PROMESA's provisions granting the Oversight Board complete power over fiscal plans and budget appropriations

322.     Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's obligation to appropriate and transfer the HTA Allocable Revenues was preempted.

## COUNT XXIX

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR BREACH OF CONTRACT
(11 U.S.C. § 502)

323.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

324.     The AGC Claim asserts a breach of contract claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues.

325.     The Commonwealth is not liable for any breach of contract to AGC.   The Commonwealth is not a party to any contract with AGC (including the HTA Bond Materials). The Commonwealth does not owe any contractual obligations to or enforceable by AGC regarding payment on the Bonds.

326.     Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute a breach of Commonwealth contract.

## COUNT XXX

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR COMMON LAW TORT CLAIMS
(11 U.S.C. § 502)

327.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

328.    The AGC Claim asserts tort-based claims, which purportedly arise out of the Commonwealth's retention of the HTA Allocable Revenues.

329.    The Commonwealth's retention of the HTA Allocable Revenues was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to AGC for any tort claims under any theory.

330.    A conversion claim asserted by AGC fails because (*i*) AGC does not have a security interest against any Commonwealth funds and any HTA funds beyond moneys actually received by HTA from the Commonwealth and deposited in the 1968 Sinking Fund and the 1998 Resolution Funds, (*ii*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the Bondholders do not have any other property interest in the HTA Allocable Revenues, and (*iv*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA after the enactment of PROMESA was proper because the HTA Allocable Revenue Statutes were preempted.

331.    A tortious interference with contract claim asserted by AGC fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the HTA Allocable Revenues due to preemption of the HTA Allocable Revenue Statutes, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to make payment on the Bonds because payments were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

332.    Claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation asserted by AGC fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth did not make any material misstatements of fact, (*iii*) the Commonwealth did not

engage in any fraudulent conduct, and (*iv*) the required elements of such fraud-based claims are not alleged.  Statements made in the HTA Bond Materials were truthful when made.  The AGC Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

333.    Claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation asserted by AGC fail because the HTA Allocable Revenue Statutes are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim.

334.    Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute a tort.

## **COUNT XXXI**

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
### (11 U.S.C. § 502)

335.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

336.    The AGC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

337.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by

operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

338.    Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

339.    To the extent AGC has an allowable claim for such retention, the claim is a prepetition general unsecured claim and all assertions of priority and/or secured status should be disallowed.

## COUNT XXXII

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

340.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

341.    AGC alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

342.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth was authorized to retain them under Commonwealth and federal law, and no contractual right of AGC's was impaired.

343.    Any legislation enacted by the Commonwealth to support retention of the HTA Allocable Revenues did not originate the Commonwealth's power to retain the revenues.  The

legislation carried out the Commonwealth's preexisting rights and duties to retain the HTA Allocable Revenues.

344.    Plaintiff is entitled to judgment disallowing the AGC Claim because there has been no impairment of AGC's contractual rights. In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGC based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT XXXIII

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO LEGISLATION CREATED AN IMPAIRMENT (28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

345.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

346.    AGC alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

347.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because no Commonwealth legislation was passed that impaired AGC's contract rights, if any.

348.    Plaintiff is entitled to judgment disallowing the AGC Claim because there is no Commonwealth legislation that impaired AGC's contract rights, if any.   In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGC based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT XXXIV

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH
AND U.S. CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE
HTA ALLOCABLE REVENUES WAS DUE TO PROMESA, NOT LEGISLATION
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

349.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

350.    AGC alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

351.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.

352.    Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGC based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT XXXV

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON
VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE AGC DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

353.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

354.    AGC asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

355.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute a taking because AGC has no property interest in the HTA Allocable Revenues.

356.    Plaintiff is entitled to judgment disallowing the AGC Claim because AGC has no property interest in the HTA Allocable Revenues and therefore cannot assert a takings claim.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGC based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT XXXVI

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON
VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE AGC HAD A REASONABLE EXPECTATION THE
COMMONWEALTH WOULD RETAIN THE HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

357.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

358.    AGC asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

359.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute an impermissible taking because such retention did not interfere with AGC's reasonable expectations.

360.    AGC knew or should have known, pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the HTA Allocable Revenue Statutes, and the HTA Bond Materials, that the HTA Allocable Revenues were subject to the Commonwealth's retention.

361.    Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the HTA Allocable Revenues did not interfere with AGC's reasonable expectations regarding the HTA Allocable Revenues.  In the alternative, Plaintiff is

entitled to a judgment declaring any valid claim held by AGC based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT XXXVII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

362.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

363.    AGC alleges the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause, and asserts a claim against the Commonwealth as a result of the alleged violation.

364.    AGC filed a proof of claim pursuant to a court-supervised process in which it can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.

365.    The AGC Claim does not assert any additional basis on which the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause separate from its Takings Clause claim.

366.    Because the AGC Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, AGC's Due Process claim should be disallowed because it has no property rights in the HTA Allocable Revenues retained by the Commonwealth.

367.    Plaintiff is entitled to judgment disallowing the AGC Claim because the Commonwealth's retention of the HTA Allocable Revenues did not violate the Due Process Clause.

## COUNT XXXVIII

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM BASED ON PROMESA
SECTION 407
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

368.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

369.   The AGC Claim asserts claims under PROMESA section 407(a).

370.   AGC does not have a claim under PROMESA section 407(a) because the HTA Allocable Revenues were not property of any territorial instrumentality transferred in violation of applicable law, nor does AGC have any security interest against the HTA Allocable Revenues.

371.   AGC also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only HTA has a claim for the transferred property against the transferee.

372.   Plaintiff is entitled to judgment disallowing the AGC Claim based on PROMESA section 407(a).

## COUNT XXXIX

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM FOR POSTPETITION
INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE
SECTION 502(b)(2)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

373.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

374.   The AGC Claim asserts claims for postpetition interest and other postpetition costs.

375.   Pursuant to Bankruptcy Code section 502(b), AGC's claims for postpetition interest must be disallowed.

376.     Pursuant to section 506, AGC's claims for costs and expenses must be disallowed to the extent not provided for by the 1968 Resolution, 1998 Resolution or other applicable agreement, and to the extent provided for, must be allowed as prepetition general unsecured claims to the extent its collateral value does not exceed all unpaid principal and interest on the bonds it owns and insures.

## COUNT XL

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC'S SECURED CLAIM
(11 U.S.C. § 502)

377.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

378.     AGC has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory liens against any property in which the Commonwealth has an interest, nor has AGC perfected any alleged security interest if any, as against the Commonwealth.

379.     Plaintiff is entitled to judgment disallowing AGC's claim that AGC possesses a secured claim against the HTA Allocable Revenues.

## COUNT XLI

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AND AVOIDING AGC CLAIM ASSERTING PERFECTED SECURITY INTERESTS PURSUANT TO BANKRUPTCY CODE SECTION 502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

380.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

381.     The AGC Claim asserts the Bonds it holds and/or insures are secured by a perfected security interest against the HTA Allocable Revenues held by the Commonwealth.

382.    AGC does not have control over any deposit accounts, including the 1968 Sinking Fund or the 1998 Resolution Funds, or in any other funds held by the Commonwealth.

383.    No financing statements were filed against the Commonwealth regarding the Bonds.

384.    Plaintiff is entitled to judgment disallowing AGC's claim for a perfected security interest against the Bonds as against the Commonwealth.

## COUNT XLII

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC'S PRIORITY CLAIM
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

385.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

386.    The AGC Claim asserts amounts due to AGC are entitled to priority over other unsecured claims.

387.    AGC does not have a priority claim under Commonwealth law.  Moreover, even if AGC had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

388.    AGC does not have an administrative expense claim pursuant to PROMESA section 507.  None of AGC's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

389.    Plaintiff is entitled to judgment disallowing all priorities asserted for the AGC Claim.

## COUNT XLIII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGC CLAIM TO A SECURITY
INTEREST AGAINST REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO
RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE
SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

390.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

391.    The AGC Claim asserts HTA Allocable Revenues collected postpetition are subject to AGC's purported security interest.

392.    AGC does not have a valid or perfected security interest against the HTA Allocable Revenues.  Even if it did, such security interest would not attach to moneys collected postpetition.

393.    Plaintiff is entitled to judgment disallowing the AGC Claim regarding its purported security interest against any and all postpetition HTA Allocable Revenues retained by the Commonwealth.

## COUNT XLIV

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGC CLAIM ASSERTING BONDS
ARE SECURED AGAINST SPECIAL REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 902)

394.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

395.    The AGC Claim asserts all HTA Allocable Revenues allegedly securing the Bonds are "special revenues" as defined in Bankruptcy Code section 902(2).

396.    The HTA Allocable Revenues are not "special revenues" as defined in Bankruptcy Code section 902(2).

397.    None of the Bonds allegedly held or insured by AGC are secured by a security interest against any "special revenues."

398.    The Oversight Board is entitled to judgment disallowing the AGC Claim asserting the Bonds AGC allegedly holds or insures are secured against "special revenues" as defined in Bankruptcy Code section 902(2).

### COUNT XLV

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM OF OWNERSHIP IN
HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

399.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

400.    The AGC Claim asserts the HTA Allocable Revenues are owned by the Bondholders.

401.    None of the HTA Allocable Revenue Statutes or HTA Bond Materials provide Defendants an ownership interest in HTA Allocable Revenues possessed by the Commonwealth, including under any trust or agency theory.

402.    Plaintiff is entitled to judgment disallowing claims to an ownership interest asserted in the AGC Claim, including an ownership interest based on trust or agency theories.

### COUNT XLVI

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGC CLAIM FOR BREACH OF THE
HTA NON-IMPAIRMENT PROVISION
(11 U.S.C. § 502)

403.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

404.    The AGC Claim asserts the Commonwealth's retention of the HTA Allocable Revenues constitutes a breach of the HTA Non-Impairment Provision.

405.    The Commonwealth has not breached the HTA Non-Impairment Provision because it has not limited or altered any rights conferred to HTA.  The Commonwealth never repealed or amended the Enabling Act, or passed any legislation that conflicts with the powers granted to HTA.

406.    The Commonwealth's retention of the HTA Allocable Revenues does not limit or alter HTA's rights to the HTA Allocable Revenues as such rights were always conditional and subject to Section 8 Article VI of the Commonwealth Constitution.

407.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption of the Enabling Act's conditional appropriation of the HTA Allocable Revenues.

408.    Plaintiff is entitled to judgment disallowing the AGC Claim because there has been no breach of the HTA Non-Impairment Provision.

## OBJECTIONS TO AGMC CLAIM

### COUNT XLVII

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGMC CLAIM AS DUPLICATIVE OF THE MASTER PROOFS OF CLAIM
(11 U.S.C. § 502)

409.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

410.    The AGMC Claim seeks principal, prepetition interest, postpetition interest and fees against the Commonwealth based on the same Bonds that are the subject of the Master Proofs of Claim.  The AGMC Claim is duplicative of the Master Proofs of Claim asserted by the Fiscal Agent because they both make claims for the same exact funds owed under the Bonds.

411.    AGMC alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) security interests against the HTA Allocable Revenues, (*iii*) violations of the U.S. and Commonwealth Constitutions in failing to appropriate the HTA Allocable Revenues to HTA, (*iv*) violations of PROMESA section 407, (*v*) the Commonwealth's failure to appropriate the HTA Allocable Revenues to HTA was unlawful and a breach of contract and/or gave rise various tort claims, and (*vi*) entitlement to administrative expense priority.

412.    A failure to disallow the AGMC Claim will result in AGMC potentially receiving an unwarranted double recovery against the Commonwealth to the detriment of other stakeholders.

413.    AGMC will not be prejudiced by the disallowance of its duplicative claims because they are subsumed within the Master Proofs of Claim.

414.    Plaintiff is entitled to judgment disallowing the AGMC Claim as duplicative of the Master Proofs of Claim.  In the alternative, if the AGMC Claim is not disallowed as duplicative, Plaintiff is entitled to an offset from the AGMC Claim to be determined by the Court for any amount recovered by the Fiscal Agent against Plaintiff.

## COUNT XLVIII

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AGMC CLAIM BECAUSE AGMC LACKS STANDING TO ASSERT A CLAIM AGAINST THE COMMONWEALTH AS TO THE BONDS
(11 U.S.C. §§ 501, 502)

415.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

416.    The AGMC Claim must be disallowed because AGMC does not have any "right to payment" from the Commonwealth, or any interest in any right to payment, and therefore does not have or possess an allowable claim against the Commonwealth under the Bankruptcy Code

or Commonwealth law.  Without an enforceable obligation against the Commonwealth as to the HTA Allocable Revenues, AGMC does not have standing to assert a claim against the Commonwealth.

417.    Further, AGMC lacks derivative standing to assert any claims against the Commonwealth for its retention of the HTA Allocable Revenues.

418.    Plaintiff is entitled to judgment disallowing the AGMC Claim in its entirety, as AGMC does not have standing to assert a claim against the Commonwealth because it lacks any interest in an enforceable obligation from the Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code section 101(5).

## COUNT XLIX

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGMC CLAIM ASSERTING
SUBROGATION RIGHTS THAT EXCEED THE AMOUNT PAID BY AGMC TO
BONDHOLDERS OR OTHERWISE SUBORDINATING THE AGMC CLAIM TO THE
CLAIMS OF BONDHOLDERS PURSUANT TO BANKRUPTCY CODE SECTION 509(c)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2104, 2141, 2142, 2161; 11 U.S.C. §§ 502, 509)

419.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

420.    The AGMC Claim asserts claims based on subrogation, reimbursement or contribution rights arising from payments to Bondholders holding Bonds allegedly insured by AGMC.

421.    Plaintiff is entitled to judgment disallowing the AGMC Claim for subrogation, reimbursement, and contribution rights exceeding the amount AGMC has paid to Bondholders and otherwise subordinating such portions of the allowable AGMC Claim for money actually paid to the unpaid claims of insured Bondholders.

## COUNT L

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGMC CLAIM PREDICATED ON
UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH
RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE
COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

422.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

423.    The AGMC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

424.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the HTA Allocable Revenue Statutes, which provide the HTA Allocable Revenues are "available resources" of the Commonwealth.

425.    The obligation of the Commonwealth, if any, to appropriate the HTA Allocable Revenues to HTA, as well as all other obligations related to the Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

426.    Plaintiff is entitled to judgment disallowing the AGMC Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution.

## COUNT LI

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AGMC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE THE HTA ALLOCABLE REVENUE STATUTES WERE PREEMPTED BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

427.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

428.    The AGMC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

429.    The Commonwealth's retention of the HTA Allocable Revenues following the passage of PROMESA does not give rise to a claim against the Commonwealth because the statutes creating an obligation of the Commonwealth to appropriate and transfer the HTA Allocable Revenues were preempted by PROMESA.  Appropriations under Commonwealth law were inconsistent with PROMESA's provisions granting the Oversight Board complete power over fiscal plans and budget appropriations

430.    Plaintiff is entitled to judgment disallowing the AGMC Claim because the Commonwealth's obligation to appropriate and transfer the HTA Allocable Revenues was preempted.

## COUNT LII

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AGMC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR BREACH OF CONTRACT
(11 U.S.C. § 502)

431.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

432.    The AGMC Claim asserts a breach of contract claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues.

433.     The Commonwealth is not liable for any breach of contract to AGMC.    The

Commonwealth is not a party to any contract with AGMC (including the HTA Bond Materials).

The Commonwealth does not owe any contractual obligations to or enforceable by AGMC

regarding payment on the Bonds.

434.     Plaintiff is entitled to judgment disallowing the AGMC Claim because the

Commonwealth's retention of the HTA Allocable Revenues did not constitute a breach of a

Commonwealth contract.

## **COUNT LIII**

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGMC CLAIM PREDICATED ON
UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR COMMON LAW
TORT CLAIMS
(11 U.S.C. § 502)

435.     Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-192, as if fully set forth herein.

436.     The AGMC Claim asserts tort-based claims, which purportedly arise out of the

Commonwealth's retention of the HTA Allocable Revenues.

437.     The Commonwealth's retention of the HTA Allocable Revenues was lawful under

pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to AGMC for any

tort claims under any theory.

438.     A conversion claim asserted by AGMC fails because (*i*) AGMC does not have a

security interest against any Commonwealth funds and any HTA funds beyond moneys actually

received by HTA from the Commonwealth and deposited in the 1968 Sinking Fund and the 1998

Resolution Funds, (*ii*) the Commonwealth's retention of HTA Allocable Revenues not

appropriated and transferred to HTA prior to the passage of PROMESA was proper under the

Pre-PROMESA Retention Actions, (*iii*) the Bondholders do not have any other property interest

in the HTA Allocable Revenues, and (*iv*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA after the enactment of PROMESA was proper because the HTA Allocable Revenue Statutes were preempted.

439.    A tortious interference with contract claim asserted by AGMC fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the HTA Allocable Revenues due to preemption of the HTA Allocable Revenue Statutes, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to make payment on the Bonds because payments were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

440.    Claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation asserted by AGMC fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth did not make any material misstatements of fact, (*iii*) the Commonwealth did not engage in any fraudulent conduct, and (*iv*) the required elements of such fraud-based claims are not alleged.  Statements made in the HTA Bond Materials were truthful when made.  The AGMC Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

441.    Claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation asserted by AGMC fail because the HTA Allocable Revenue Statutes are

legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim.

442.    Plaintiff is entitled to judgment disallowing the AGMC Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute a tort.

## **COUNT LIV**

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGMC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

443.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

444.    The AGMC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

445.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

446.    Plaintiff is entitled to judgment disallowing the AGMC Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

447.    To the extent AGMC has an allowable claim for such retention, the claim is a prepetition general unsecured claim and all assertions of priority and/or secured status should be disallowed.

## COUNT LV

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGMC CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH
AND U.S. CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

448.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

449.    AGMC alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

450.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth was authorized to retain them under Commonwealth and federal law, and no contractual right of AGMC's was impaired.

451.    Any legislation enacted by the Commonwealth to support retention of the HTA Allocable Revenues did not originate the Commonwealth's power to retain the revenues.  The legislation carried out the Commonwealth's preexisting rights and duties to retain the HTA Allocable Revenues.

452.    Plaintiff is entitled to judgment disallowing the AGMC Claim because there has been no impairment of AGMC's contractual rights. In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGMC based on the Contracts Clause is a prepetition unsecured claim that is dischargeable.

## COUNT LVI

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGMC CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH
AND U.S. CONSTITUTIONS BECAUSE NO LEGISLATION CREATED AN IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

453.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

454.    AGMC alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

455.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because no Commonwealth legislation was passed that impaired AGMC's contract rights, if any.

456.    Plaintiff is entitled to judgment disallowing the AGMC Claim because there is no Commonwealth legislation that impaired AGMC's contract rights, if any.   In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGMC based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT LVII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGMC CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH
AND U.S. CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE
HTA ALLOCABLE REVENUES WAS DUE TO PROMESA, NOT LEGISLATION
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

457.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

458.    AGMC alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause of the, and asserts a claim against the Commonwealth as a result of the alleged violations.

459.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.

460.    Plaintiff is entitled to judgment disallowing the AGMC Claim because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGMC based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT LVIII

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGMC CLAIM PREDICATED ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE AGMC DOES NOT HOLD A PROPERTY INTEREST (28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

461.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

462.    AGMC asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

463.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute a taking because AGMC has no property interest in the HTA Allocable Revenues.

464.    Plaintiff is entitled to judgment disallowing the AGMC Claim because AGMC has no property interest in the HTA Allocable Revenues and therefore cannot assert a takings claim.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by AGMC based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT LIX

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGMC CLAIM PREDICATED ON
VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE AGMC HAD A REASONABLE EXPECTATION THE
COMMONWEALTH WOULD RETAIN THE HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

465.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

466.    AGMC asserts the Commonwealth's lawful retention of HTA Allocable
Revenues constitutes a taking.

467.    The Commonwealth's retention of the HTA Allocable Revenues does not
constitute an impermissible taking because such retention did not interfere with AGMC's
reasonable expectations.

468.    AGMC knew or should have known, pursuant to Article VI, Section 8 and Article
II, Sections 18 and 19 of the Commonwealth Constitution, the HTA Allocable Revenue Statutes,
and the HTA Bond Materials, that the HTA Allocable Revenues were subject to the
Commonwealth's retention.

469.    Plaintiff is entitled to judgment disallowing the AGMC Claim because the
Commonwealth's retention of the HTA Allocable Revenues did not interfere with AGMC's
reasonable expectations regarding the HTA Allocable Revenues.  In the alternative, Plaintiff is
entitled to a judgment declaring any valid claim held by AGMC based on the Takings Clause is a
prepetition unsecured, dischargeable claim.

## COUNT LX

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AGMC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

470.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

471.    AGMC alleges the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause, and asserts a claim against the Commonwealth as a result of the alleged violation.

472.    AGMC filed a proof of claim pursuant to a court-supervised process in which it can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.

473.    The AGMC Claim does not assert any additional basis on which the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause separate from its Takings Clause claim.

474.    Because the AGMC Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, AGMC's Due Process claim should be disallowed because it has no property rights in the HTA Allocable Revenues retained by the Commonwealth.

475.    Plaintiff is entitled to judgment disallowing the AGMC Claim because the Commonwealth's retention of the HTA Allocable Revenues did not violate the Due Process Clause..

## COUNT LXI

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AGMC CLAIM BASED ON PROMESA SECTION 407
### (28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

476.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

477.    The AGMC Claim asserts claims under PROMESA section 407(a).

478.    AGMC does not have a claim under PROMESA section 407(a) because the HTA Allocable Revenues were not property of any territorial instrumentality transferred in violation of applicable law, nor does AGMC have any security interest against the HTA Allocable Revenues.

479.     AGMC also does not have standing to assert a claim—if a valid claim existed— under PROMESA section 407(a), because only HTA has a claim for the transferred property against the transferee.

480.    Plaintiff is entitled to judgment disallowing the AGMC Claim based on PROMESA section 407(a).

## COUNT LXII

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AGMC CLAIM FOR POSTPETITION INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE SECTION 502(b)(2)
### (28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

481.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

482.    The AGMC Claim asserts claims for postpetition interest and other postpetition costs.

483.    Pursuant to Bankruptcy Code section 502(b), AGMC's claims for postpetition interest must be disallowed.

484.    Pursuant to section 506, AGMC's claims for costs and expenses must be disallowed to the extent not provided for by the 1968 Resolution, 1998 Resolution or other applicable agreement, and to the extent provided for, must be allowed as prepetition general unsecured claims to the extent its collateral value does not exceed all unpaid principal and interest on the bonds it owns and insures.

## COUNT LXIII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGMC'S SECURED CLAIM
(11 U.S.C. § 502)

485.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

486.    AGMC has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory liens against any property in which the Commonwealth has an interest, nor has AGMC perfected any alleged security interest if any, as against the Commonwealth.

487.    Plaintiff is entitled to judgment disallowing AGMC's claim that AGMC possesses a secured claim against the HTA Allocable Revenues.

## COUNT LXIV

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AND AVOIDING AGMC CLAIM
ASSERTING PERFECTED SECURITY INTERESTS PURSUANT TO BANKRUPTCY
CODE SECTION 502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

488.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

489.    The AGMC Claim asserts the Bonds it holds and/or insures are secured by a perfected security interest against the HTA Allocable Revenues held by the Commonwealth.

490.    AGMC does not have control over any deposit accounts, including the 1968 Sinking Fund or the 1998 Resolution Funds, or in any other funds held by the Commonwealth.

491.    No financing statements were filed against the Commonwealth regarding the Bonds.

492.    Plaintiff is entitled to judgment disallowing AGMC's claim for a perfected security interest against the Bonds as against the Commonwealth.

## COUNT LXV

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGMC'S PRIORITY CLAIM
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

493.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

494.    The AGMC Claim asserts amounts due to AGMC are entitled to priority over other unsecured claims.

495.    AGMC does not have a priority claim under Commonwealth law.  Moreover, even if AGMC had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

496.    AGMC does not have an administrative expense claim pursuant to PROMESA section 507.  None of AGMC's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

497.    Plaintiff is entitled to judgment disallowing all priorities asserted for the AGMC Claim.

### COUNT LXVI

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGMC CLAIM TO A SECURITY
INTEREST AGAINST REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO
RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE
SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

498.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

499.    The AGMC Claim asserts HTA Allocable Revenues collected postpetition are subject to AGMC's purported security interest.

500.    AGMC does not have a valid or perfected security interest against the HTA Allocable Revenues.  Even if it did, such security interest would not attach to moneys collected postpetition.

501.    Plaintiff is entitled to judgment disallowing the AGMC Claim regarding its purported security interest against any and all postpetition HTA Allocable Revenues retained by the Commonwealth.

### COUNT LXVII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AGMC CLAIM ASSERTING BONDS
ARE SECURED AGAINST SPECIAL REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 902)

502.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

503.    The AGMC Claim asserts all HTA Allocable Revenues allegedly securing the Bonds are "special revenues" as defined in Bankruptcy Code section 902(2).

504.    The HTA Allocable Revenues are not "special revenues" as defined in Bankruptcy Code section 902(2).

505.    None of the Bonds allegedly held or insured by AGMC are secured by a security interest against any "special revenues."

506.    The Oversight Board is entitled to judgment disallowing the AGMC Claim asserting the Bonds AGMC allegedly holds or insures are secured against "special revenues" as defined in Bankruptcy Code section 902(2).

## COUNT LXVIII

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGMC CLAIM OF OWNERSHIP IN HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

507.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

508.    The AGMC Claim asserts the HTA Allocable Revenues are owned by the Bondholders.

509.    None of the HTA Allocable Revenue Statutes or HTA Bond Materials provide Defendants an ownership interest in HTA Allocable Revenues possessed by the Commonwealth, including under any trust or agency theory.

510.    Plaintiff is entitled to judgment disallowing claims to an ownership interest asserted in the AGMC Claim, including an ownership interest based on trust or agency theories.

## COUNT LXIX

1968 & 1998 BONDS: JUDGMENT DISALLOWING AGMC CLAIM FOR BREACH OF THE HTA NON-IMPAIRMENT PROVISION
(11 U.S.C. § 502)

511.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

512.    The AGMC Claim asserts the Commonwealth's retention of the HTA Allocable Revenues constitutes a breach of the HTA Non-Impairment Provision.

513.    The    Commonwealth    has    not    breached    the    HTA    Non-Impairment
Provisionbecause it has not limited or altered any rights conferred to HTA.  The Commonwealth
never repealed or amended the Enabling Act, or passed any legislation that conflicts with the
powers granted to HTA.

514.    The Commonwealth's retention of the HTA Allocable Revenues does not limit or
alter HTA's rights to the HTA Allocable Revenues as such rights were always conditional and
subject to Section 8 Article VI of the Commonwealth Constitution.

515.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the
fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption
of the Enabling Act's conditional appropriation of the HTA Allocable Revenues.

516.    Plaintiff is entitled to judgment disallowing the AGMC Claim because there has
been no breach of the HTA Non-Impairment Provision.

## OBJECTIONS TO NATIONAL CLAIM

### COUNT LXX

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING NATIONAL CLAIM AS DUPLICATIVE OF THE MASTER PROOFS OF CLAIM
### (11 U.S.C. § 502)

517.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

518.    The National Claim seeks principal, prepetition interest, postpetition interest and
fees against the Commonwealth based on the same Bonds that are the subject of the Master
Proofs of Claim.  The National Claim is duplicative of the Master Proofs of Claim asserted by
the Fiscal Agent because they both make claims for the same exact funds owed under the Bonds.

519.    National alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*)

security interests against the HTA Allocable Revenues, (*iii*) violations of the U.S. and

Commonwealth Constitutions in failing to appropriate the HTA Allocable Revenues to HTA, (*iv*)

violations of PROMESA section 407, (*v*) the Commonwealth's failure to appropriate the HTA

Allocable Revenues to HTA was unlawful and a breach of contract and/or gave rise various tort

claims, and (*vi*) entitlement to administrative expense priority.

520.    A failure to disallow the National Claim will result in National potentially

receiving an unwarranted double recovery against the Commonwealth to the detriment of other

stakeholders.

521.    National will not be prejudiced by the disallowance of its duplicative claims

because they are subsumed within the Master Proofs of Claim.

522.    Plaintiff is entitled to judgment disallowing the National Claim as duplicative of

the Master Proofs of Claim.   In the alternative, if the National Claim is not disallowed as

duplicative, Plaintiff is entitled to an offset from the National Claim to be determined by the

Court for any amount recovered by the Fiscal Agent against Plaintiff.

## COUNT LXXI

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING NATIONAL CLAIM BECAUSE NATIONAL LACKS STANDING TO ASSERT A CLAIM AGAINST THE COMMONWEALTH AS TO THE BONDS
(11 U.S.C. §§ 501, 502)

523.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-192, as if fully set forth herein.

524.    The National Claim must be disallowed because National does not have any

"right to payment" from the Commonwealth, or any interest in any right to payment, and

therefore does not have or possess an allowable claim against the Commonwealth under the

Bankruptcy Code or Commonwealth law.  Without an enforceable obligation against the Commonwealth as to the HTA Allocable Revenues, National does not have standing to assert a claim against the Commonwealth.

525.    Further, National lacks derivative standing to assert any claims against the Commonwealth for its retention of the HTA Allocable Revenues.

526.    Plaintiff is entitled to judgment disallowing the National Claim in its entirety, as National does not have standing to assert a claim against the Commonwealth because it lacks any interest in an enforceable obligation from the Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code section 101(5).

## COUNT LXXII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING NATIONAL CLAIM ASSERTING SUBROGATION RIGHTS THAT EXCEED THE AMOUNT PAID BY NATIONAL TO BONDHOLDERS OR OTHERWISE SUBORDINATING THE NATIONAL CLAIM TO THE CLAIMS OF BONDHOLDERS PURSUANT TO BANKRUPTCY CODE SECTION 509(c)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2104, 2141, 2142, 2161; 11 U.S.C. §§ 502, 509)

527.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

528.    The National Claim asserts claims based on subrogation, reimbursement or contribution rights arising from payments to Bondholders holding Bonds allegedly insured by National.

529.    Plaintiff is entitled to judgment disallowing the National Claim for subrogation, reimbursement, and contribution rights exceeding the amount National has paid to Bondholders and otherwise subordinating such portions of the allowable National Claim for money actually paid to the unpaid claims of insured Bondholders.

## COUNT LXXIII

**1968 & 1998 BONDS**: JUDGMENT DISALLOWING NATIONAL CLAIM PREDICATED
ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH
RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE
COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

530.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

531.    The National Claim asserts a claim against the Commonwealth based on the
Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

532.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the
Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by
operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the HTA
Allocable Revenue Statutes, which provide the HTA Allocable Revenues are "available
resources" of the Commonwealth.

533.    The obligation of the Commonwealth, if any, to appropriate the HTA Allocable
Revenues to HTA, as well as all other obligations related to the Bonds, were subject to Article
VI, Section 8 of the Commonwealth Constitution.

534.    Plaintiff is entitled to judgment disallowing the National Claim because the
Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized
by Article VI, Section 8 of the Commonwealth Constitution.

## COUNT LXXIV

1968 & 1998 BONDS: JUDGMENT DISALLOWING NATIONAL CLAIM PREDICATED
ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE THE
HTA ALLOCABLE REVENUE STATUTES WERE PREEMPTED BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

535.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-192, as if fully set forth herein.

536.    The National Claim asserts a claim against the Commonwealth based on the

Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

537.    The Commonwealth's retention of the HTA Allocable Revenues following the

passage of PROMESA does not give rise to a claim against the Commonwealth because the

statutes creating an obligation of the Commonwealth to appropriate and transfer the HTA

Allocable Revenues were preempted by PROMESA.  Appropriations under Commonwealth law

were inconsistent with PROMESA's provisions granting the Oversight Board complete power

over fiscal plans and budget appropriations

538.    Plaintiff is entitled to judgment disallowing the National Claim because the

Commonwealth's obligation to appropriate and transfer the HTA Allocable Revenues was

preempted.

## COUNT LXXV

1968 & 1998 BONDS: JUDGMENT DISALLOWING NATIONAL CLAIM PREDICATED
ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR BREACH OF
CONTRACT
(11 U.S.C. § 502)

539.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-192, as if fully set forth herein.

540.    The National Claim asserts a breach of contract claim against the Commonwealth

based on the Commonwealth's retention of the HTA Allocable Revenues.

541.     The Commonwealth is not liable for any breach of contract to National.  The Commonwealth is not a party to any contract with National (including the HTA Bond Materials). The Commonwealth does not owe any contractual obligations to or enforceable by National regarding payment on the Bonds.

542.     Plaintiff is entitled to judgment disallowing the National Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute a breach of a Commonwealth contract.

## COUNT LXXVI

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING NATIONAL CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR COMMON LAW TORT CLAIMS
(11 U.S.C. § 502)

543.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

544.     The National Claim asserts tort-based claims, which purportedly arise out of the Commonwealth's retention of the HTA Allocable Revenues.

545.     The Commonwealth's retention of the HTA Allocable Revenues was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to National for any tort claims under any theory.

546.     A conversion claim asserted by National fails because (*i*) National does not have a security interest against any Commonwealth funds and any HTA funds beyond moneys actually received by HTA from the Commonwealth and deposited in the 1968 Sinking Fund and the 1998 Resolution Funds, (*ii*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the Bondholders do not have any other property interest

in the HTA Allocable Revenues, and (*iv*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA after the enactment of PROMESA was proper because the HTA Allocable Revenue Statutes were preempted.

547.    A tortious interference with contract claim asserted by National fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the HTA Allocable Revenues due to preemption of the HTA Allocable Revenue Statutes, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to make payment on the Bonds because payments were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

548.    Claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation asserted by National fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth did not make any material misstatements of fact, (*iii*) the Commonwealth did not engage in any fraudulent conduct, and (*iv*) the required elements of such fraud-based claims are not alleged.  Statements made in the HTA Bond Materials were truthful when made.  The National Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

549.    Claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation asserted by National fail because the HTA Allocable Revenue Statutes are

legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim.

550.    Plaintiff is entitled to judgment disallowing the National Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute a tort.

## COUNT LXXVII

1968 & 1998 BONDS: JUDGMENT DISALLOWING NATIONAL CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

551.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

552.    The National Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

553.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

554.    Plaintiff is entitled to judgment disallowing the National Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

555.    To the extent National has an allowable claim for such retention, the claim is a prepetition general unsecured claim and all assertions of priority and/or secured status should be disallowed.

## COUNT LXXVIII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING NATIONAL CLAIM PREDICATED
ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO CONTRACT WAS
IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

556.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

557.    National alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

558.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth was authorized to retain them under Commonwealth and federal law, and no contractual right of National's was impaired.

559.    Any legislation enacted by the Commonwealth to support retention of the HTA Allocable Revenues did not originate the Commonwealth's power to retain the revenues.  The legislation carried out the Commonwealth's preexisting rights and duties to retain the HTA Allocable Revenues.

560.    Plaintiff is entitled to judgment disallowing the National Claim because there has been no impairment of National's contractual rights. In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by National based on the Contracts Clause is a prepetition unsecured claim that is dischargeable.

## COUNT LXXIX

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING NATIONAL CLAIM PREDICATED
ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO LEGISLATION
CREATED AN IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

561.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

562.    National alleges the Commonwealth's retention of the HTA Allocable Revenues
violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the
alleged violations.

563.    The Commonwealth's retention of the HTA Allocable Revenues did not violate
the Contracts Clause because no Commonwealth legislation was passed that impaired National's
contract rights, if any.

564.    Plaintiff is entitled to judgment disallowing the National Claim because there is
no Commonwealth legislation that impaired National's contract rights, if any.  In the alternative,
Plaintiff is entitled to a judgment declaring any valid claim held by National based on the
Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT LXXX

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING NATIONAL CLAIM PREDICATED
ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE THE COMMONWEALTH'S
RETENTION OF THE HTA ALLOCABLE REVENUES WAS DUE TO PROMESA, NOT
LEGISLATION
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

565.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

566.    National alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

567.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.

568.    Plaintiff is entitled to judgment disallowing the National Claim because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by National based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

### COUNT LXXXI

1968 & 1998 BONDS: JUDGMENT DISALLOWING NATIONAL CLAIM PREDICATED ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NATIONAL DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

569.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

570.    National asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

571.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute a taking because National has no property interest in the HTA Allocable Revenues.

572.    Plaintiff is entitled to judgment disallowing the National Claim because National has no property interest in the HTA Allocable Revenues and therefore cannot assert a takings claim.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by National based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT LXXXII

1968 & 1998 BONDS: JUDGMENT DISALLOWING NATIONAL CLAIM PREDICATED
ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE NATIONAL HAD A REASONABLE EXPECTATION THE
COMMONWEALTH WOULD RETAIN THE HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

573.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

574.    National asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

575.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute an impermissible taking because such retention did not interfere with National's reasonable expectations.

576.    National knew or should have known, pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the HTA Allocable Revenue Statutes, and the HTA Bond Materials, that the HTA Allocable Revenues were subject to the Commonwealth's retention.

577.    Plaintiff is entitled to judgment disallowing the National Claim because the Commonwealth's retention of the HTA Allocable Revenues did not interfere with National's reasonable expectations regarding the HTA Allocable Revenues.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by National based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT LXXXIII

1968 & 1998 BONDS: JUDGMENT DISALLOWING NATIONAL CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

578.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

579.     National alleges the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause, and asserts a claim against the Commonwealth as a result of the alleged violation.

580.     National filed a proof of claim pursuant to a court-supervised process in which it can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.

581.     The National Claim does not assert any additional basis on which the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause separate from its Takings Clause claim.

582.     Because the National Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, National's Due Process claim should be disallowed because it has no property rights in the HTA Allocable Revenues retained by the Commonwealth.

583.     Plaintiff is entitled to judgment disallowing the National Claim because the Commonwealth's retention of the HTA Allocable Revenues did not violate the Due Process Clause.

## COUNT LXXXIV

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING NATIONAL CLAIM BASED ON
PROMESA SECTION 407
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

584.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

585.    The National Claim asserts claims under PROMESA section 407(a).

586.    National does not have a claim under PROMESA section 407(a) because the HTA Allocable Revenues were not property of any territorial instrumentality transferred in violation of applicable law, nor does National have any security interest against the HTA Allocable Revenues.

587.     National also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only HTA has a claim for the transferred property against the transferee.

588.    Plaintiff is entitled to judgment disallowing the National Claim based on PROMESA section 407(a).

## COUNT LXXXV

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING NATIONAL CLAIM FOR
POSTPETITION INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO
BANKRUPTCY CODE SECTION 502(b)(2)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

589.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

590.    The National Claim asserts claims for postpetition interest and other postpetition costs.

591.    Pursuant to Bankruptcy Code section 502(b), National's claims for postpetition interest must be disallowed.

592.    Pursuant to section 506, National's claims for costs and expenses must be disallowed to the extent not provided for by the 1968 Resolution, 1998 Resolution or other applicable agreement, and to the extent provided for, must be allowed as prepetition general unsecured claims to the extent its collateral value does not exceed all unpaid principal and interest on the bonds it owns and insures.

## COUNT LXXXVI

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING NATIONAL'S SECURED CLAIM
(11 U.S.C. § 502)

593.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

594.    National has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory liens against any property in which the Commonwealth has an interest, nor has National perfected any alleged security interest if any, as against the Commonwealth.

595.    Plaintiff is entitled to judgment disallowing National's claim that National possesses a secured claim against the HTA Allocable Revenues.

## COUNT LXXXVII

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING AND AVOIDING NATIONAL CLAIM ASSERTING PERFECTED SECURITY INTERESTS PURSUANT TO BANKRUPTCY CODE SECTION 502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

596.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

597.    The National Claim asserts the Bonds it holds and/or insures are secured by a perfected security interest against the HTA Allocable Revenues held by the Commonwealth.

598.    National does not have control over any deposit accounts, including the 1968 Sinking Fund or the 1998 Resolution Funds, or in any other funds held by the Commonwealth.

599.    No financing statements were filed against the Commonwealth regarding the Bonds.

600.    Plaintiff is entitled to judgment disallowing National's claim for a perfected security interest against the Bonds as against the Commonwealth.

## COUNT LXXXVIII

1968 & 1998 BONDS: JUDGMENT DISALLOWING NATIONAL'S PRIORITY CLAIM
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

601.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

602.    The National Claim asserts amounts due to National are entitled to priority over other unsecured claims.

603.    National does not have a priority claim under Commonwealth law.  Moreover, even if National had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

604.    National does not have an administrative expense claim pursuant to PROMESA section 507.  None of National's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

605.    Plaintiff is entitled to judgment disallowing all priorities asserted for the National Claim.

## COUNT LXXXIX

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING NATIONAL CLAIM TO A SECURITY
INTEREST AGAINST REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO
RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE
SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

606.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

607.    The National Claim asserts HTA Allocable Revenues collected postpetition are subject to National's purported security interest.

608.    National does not have a valid or perfected security interest against the HTA Allocable Revenues.  Even if it did, such security interest would not attach to moneys collected postpetition.

609.    Plaintiff is entitled to judgment disallowing the National Claim regarding its purported security interest against any and all postpetition HTA Allocable Revenues retained by the Commonwealth.

## COUNT XC

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING NATIONAL CLAIM ASSERTING
BONDS ARE SECURED AGAINST SPECIAL REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 902)

610.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

611.    The National Claim asserts all HTA Allocable Revenues allegedly securing the Bonds are "special revenues" as defined in Bankruptcy Code section 902(2).

612.    The HTA Allocable Revenues are not "special revenues" as defined in Bankruptcy Code section 902(2).

613.    None of the Bonds allegedly held or insured by National are secured by a security interest against any "special revenues."

614.    The Oversight Board is entitled to judgment disallowing the National Claim asserting the Bonds National allegedly holds or insures are secured against "special revenues" as defined in Bankruptcy Code section 902(2).

## COUNT XCI

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING NATIONAL CLAIM OF OWNERSHIP
IN HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

615.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

616.    The National Claim asserts the HTA Allocable Revenues are owned by the Bondholders.

617.    None of the HTA Allocable Revenue Statutes or HTA Bond Materials provide Defendants an ownership interest in HTA Allocable Revenues possessed by the Commonwealth, including under any trust or agency theory.

618.    Plaintiff is entitled to judgment disallowing claims to an ownership interest asserted in the National Claim, including an ownership interest based on trust or agency theories.

## COUNT XCII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING NATIONAL CLAIM FOR BREACH OF
THE HTA NON-IMPAIRMENT PROVISION
(11 U.S.C. § 502)

619.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

620.    The National Claim asserts the Commonwealth's retention of the HTA Allocable Revenues constitutes a breach of the HTA Non-Impairment Provision.

621.    The Commonwealth has not breached the HTA Non-Impairment Provision because it has not limited or altered any rights conferred to HTA.  The Commonwealth never repealed or amended the Enabling Act, or passed any legislation that conflicts with the powers granted to HTA.

622.    The Commonwealth's retention of the HTA Allocable Revenues does not limit or alter HTA's rights to the HTA Allocable Revenues as such rights were always conditional and subject to Section 8 Article VI of the Commonwealth Constitution.

623.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption of the Enabling Act's conditional appropriation of the HTA Allocable Revenues.

624.    Plaintiff is entitled to judgment disallowing the National Claim because there has been no breach of the HTA Non-Impairment Provision.

## OBJECTIONS TO FGIC CLAIM

### COUNT XCIII

1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM AS DUPLICATIVE OF THE MASTER PROOFS OF CLAIM
(11 U.S.C. § 502)

625.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

626.    The FGIC Claim seeks principal, prepetition interest, postpetition interest and fees against the Commonwealth based on the same Bonds that are the subject of the Master Proofs of Claim.  The FGIC Claim is duplicative of the Master Proofs of Claim asserted by the Fiscal Agent because they both make claims for the same exact funds owed under the Bonds.

627.    FGIC alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) security interests against the HTA Allocable Revenues, (*iii*) violations of the U.S. and Commonwealth Constitutions in failing to appropriate the HTA Allocable Revenues to HTA, (*iv*) violations of PROMESA section 407, (*v*) the Commonwealth's failure to appropriate the HTA Allocable Revenues to HTA was unlawful and a breach of contract and/or gave rise various tort claims, and (*vi*) entitlement to administrative expense priority.

628.    A failure to disallow the FGIC Claim will result in FGIC potentially receiving an unwarranted double recovery against the Commonwealth to the detriment of other stakeholders.

629.    FGIC will not be prejudiced by the disallowance of its duplicative claims because they are subsumed within the Master Proofs of Claim.

630.    Plaintiff is entitled to judgment disallowing the FGIC Claim as duplicative of the Master Proofs of Claim.  In the alternative, if the FGIC Claim is not disallowed as duplicative, Plaintiff is entitled to an offset from the FGIC Claim to be determined by the Court for any amount recovered by the Fiscal Agent against Plaintiff.

## COUNT XCIV

1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM BECAUSE FGIC LACKS
STANDING TO ASSERT A CLAIM AGAINST THE COMMONWEALTH AS TO THE
BONDS
(11 U.S.C. §§ 501, 502)

631.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

632.    The FGIC Claim must be disallowed because FGIC does not have any "right to payment" from the Commonwealth, or any interest in any right to payment, and therefore does not have or possess an allowable claim against the Commonwealth under the Bankruptcy Code or Commonwealth law.  Without an enforceable obligation against the Commonwealth as to the

HTA Allocable Revenues, FGIC does not have standing to assert a claim against the Commonwealth.

633.     Further, FGIC lacks derivative standing to assert any claims against the Commonwealth for its retention of the HTA Allocable Revenues.

634.     Plaintiff is entitled to judgment disallowing the FGIC Claim in its entirety, as FGIC does not have standing to assert a claim against the Commonwealth because it lacks any interest in an enforceable obligation from the Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code section 101(5).

## **COUNT XCV**

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING FGIC CLAIM ASSERTING SUBROGATION RIGHTS THAT EXCEED THE AMOUNT PAID BY FGIC TO BONDHOLDERS OR OTHERWISE SUBORDINATING THE FGIC CLAIM TO THE CLAIMS OF BONDHOLDERS PURSUANT TO BANKRUPTCY CODE SECTION 509(c) (28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2104, 2141, 2142, 2161; 11 U.S.C. §§ 502, 509)

635.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

636.     The FGIC Claim asserts claims based on subrogation, reimbursement or contribution rights arising from payments to Bondholders holding Bonds allegedly insured by FGIC.

637.     Plaintiff is entitled to judgment disallowing the FGIC Claim for subrogation, reimbursement, and contribution rights exceeding the amount FGIC has paid to Bondholders and otherwise subordinating such portions of the allowable FGIC Claim for money actually paid to the unpaid claims of insured Bondholders.

**COUNT XCVI**

1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON
UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH
RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE
COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

638.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

639.    The FGIC Claim asserts a claim against the Commonwealth based on the
Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

640.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the
Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by
operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the HTA
Allocable Revenue Statutes, which provide the HTA Allocable Revenues are "available
resources" of the Commonwealth.

641.    The obligation of the Commonwealth, if any, to appropriate the HTA Allocable
Revenues to HTA, as well as all other obligations related to the Bonds, were subject to Article
VI, Section 8 of the Commonwealth Constitution.

642.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the
Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized
by Article VI, Section 8 of the Commonwealth Constitution.

## COUNT XCVII

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE THE HTA ALLOCABLE REVENUE STATUTES WERE PREEMPTED BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

643.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

644.     The FGIC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

645.     The Commonwealth's retention of the HTA Allocable Revenues following the passage of PROMESA does not give rise to a claim against the Commonwealth because the statutes creating an obligation of the Commonwealth to appropriate and transfer the HTA Allocable Revenues were preempted by PROMESA.  Appropriations under Commonwealth law were inconsistent with PROMESA's provisions granting the Oversight Board complete power over fiscal plans and budget appropriations

646.     Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's obligation to appropriate and transfer the HTA Allocable Revenues was preempted.

## COUNT XCVIII

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR BREACH OF CONTRACT
(11 U.S.C. § 502)

647.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

648.     The FGIC Claim asserts a breach of contract claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues.

649.    The Commonwealth is not liable for any breach of contract to FGIC.   The Commonwealth is not a party to any contract with FGIC (including the HTA Bond Materials). The Commonwealth does not owe any contractual obligations to or enforceable by FGIC regarding payment on the Bonds.

650.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute a breach of a Commonwealth contract.

## COUNT XCIX

1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR COMMON LAW TORT CLAIMS
(11 U.S.C. § 502)

651.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

652.    The FGIC Claim asserts tort-based claims, which purportedly arise out of the Commonwealth's retention of the HTA Allocable Revenues.

653.    The Commonwealth's retention of the HTA Allocable Revenues was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to FGIC for any tort claims under any theory.

654.    A conversion claim asserted by FGIC fails because (*i*) FGIC does not have a security interest against any Commonwealth funds and any HTA funds beyond moneys actually received by HTA from the Commonwealth and deposited in the 1968 Sinking Fund and the 1998 Resolution Funds, (*ii*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the Bondholders do not have any other property interest

in the HTA Allocable Revenues, and (*iv*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA after the enactment of PROMESA was proper because the HTA Allocable Revenue Statutes were preempted.

655.   A tortious interference with contract claim asserted by FGIC fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the HTA Allocable Revenues due to preemption of the HTA Allocable Revenue Statutes, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to make payment on the Bonds because payments were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

656.   Claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation asserted by FGIC fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth did not make any material misstatements of fact, (*iii*) the Commonwealth did not engage in any fraudulent conduct, and (*iv*) the required elements of such fraud-based claims are not alleged.  Statements made in the HTA Bond Materials were truthful when made.  The FGIC Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

657.   Claims of fraud, fraudulent inducement, fraudulent conveyance and misrepresentation asserted by FGIC fail because the HTA Allocable Revenue Statutes are

legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim.

658.     Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute a tort.

## **COUNT C**

**1968 & 1998 BONDS**: JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

659.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

660.     The FGIC Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

661.     The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

662.     Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

663.     To the extent FGIC has an allowable claim for such retention, the claim is a prepetition general unsecured claim and all assertions of priority and/or secured status should be disallowed.

## COUNT CI

1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH
AND U.S. CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

664.     Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

665.     FGIC alleges the Commonwealth's retention of the HTA Allocable Revenues
violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the
alleged violations.

666.     The Commonwealth's retention of the HTA Allocable Revenues did not violate
the Contracts Clause because the Commonwealth was authorized to retain them under
Commonwealth and federal law, and no contractual right of FGIC's was impaired.

667.     Any legislation enacted by the Commonwealth to support retention of the HTA
Allocable Revenues did not originate the Commonwealth's power to retain the revenues.  The
legislation carried out the Commonwealth's preexisting rights and duties to retain the HTA
Allocable Revenues.

668.     Plaintiff is entitled to judgment disallowing the FGIC Claim because there has
been no impairment of FGIC's contractual rights. In the alternative, Plaintiff is entitled to a
judgment declaring any valid claim held by FGIC based on the Contracts Clause is a prepetition
unsecured claim that is dischargeable.

## COUNT CII

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO LEGISLATION CREATED AN IMPAIRMENT (28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

669.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

670.    FGIC alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

671.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because no Commonwealth legislation was passed that impaired FGIC's contract rights, if any.

672.    Plaintiff is entitled to judgment disallowing the FGIC Claim because there is no Commonwealth legislation that impaired FGIC's contract rights, if any.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by FGIC based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT CIII

### 1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE HTA ALLOCABLE REVENUES WAS DUE TO PROMESA, NOT LEGISLATION (28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

673.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

674.     FGIC alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

675.     The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.

676.     Plaintiff is entitled to judgment disallowing the FGIC Claim because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by FGIC based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT CIV

1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON
VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE FGIC DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

677.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

678.     FGIC asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

679.     The Commonwealth's retention of the HTA Allocable Revenues does not constitute a taking because FGIC has no property interest in the HTA Allocable Revenues.

680.     Plaintiff is entitled to judgment disallowing the FGIC Claim because FGIC has no property interest in the HTA Allocable Revenues and therefore cannot assert a takings claim.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by FGIC based on the Takings Clause is a prepetition unsecured, dischargeable claim.

126

## COUNT CV

1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON
VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE FGIC HAD A REASONABLE EXPECTATION THE
COMMONWEALTH WOULD RETAIN THE HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

681.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-192, as if fully set forth herein.

682.    FGIC asserts the Commonwealth's lawful retention of HTA Allocable Revenues

constitutes a taking.

683.    The Commonwealth's retention of the HTA Allocable Revenues does not

constitute an impermissible taking because such retention did not interfere with FGIC's

reasonable expectations.

684.    FGIC knew or should have known, pursuant to Article VI, Section 8 and Article

II, Sections 18 and 19 of the Commonwealth Constitution, the HTA Allocable Revenue Statutes,

and the HTA Bond Materials, that the HTA Allocable Revenues were subject to the

Commonwealth's retention.

685.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the

Commonwealth's retention of the HTA Allocable Revenues did not interfere with FGIC's

reasonable expectations regarding the HTA Allocable Revenues.  In the alternative, Plaintiff is

entitled to a judgment declaring any valid claim held by FGIC based on the Takings Clause is a

prepetition unsecured, dischargeable claim.

## COUNT CVI

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING FGIC CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

686.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

687.    FGIC alleges the Commonwealth's retention of HTA Allocable Revenues
constitutes a violation of the Due Process Clause, and asserts a claim against the Commonwealth
as a result of the alleged violation.

688.    FGIC filed a proof of claim pursuant to a court-supervised process in which it can
receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of
adjustment.

689.    The FGIC Claim does not assert any additional basis on which the
Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due
Process Clause separate from its Takings Clause claim.

690.    Because the FGIC Claim does not assert any independent basis for its Due
Process claim beyond the basis for its Takings Clause claim, FGIC's Due Process claim should
be disallowed because it has no property rights in the HTA Allocable Revenues retained by the
Commonwealth.

691.    Plaintiff is entitled to judgment disallowing the FGIC Claim because the
Commonwealth's retention of the HTA Allocable Revenues did not violate the Due Process
Clause.

## COUNT CVII

1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM BASED ON PROMESA
SECTION 407
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

692.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

693.   The FGIC Claim asserts claims under PROMESA section 407(a).

694.   FGIC does not have a claim under PROMESA section 407(a) because the HTA Allocable Revenues were not property of any territorial instrumentality transferred in violation of applicable law, nor does FGIC have any security interest against the HTA Allocable Revenues.

695.    FGIC also does not have standing to assert a claim—if a valid claim existed— under PROMESA section 407(a), because only HTA has a claim for the transferred property against the transferee.

696.   Plaintiff is entitled to judgment disallowing the FGIC Claim based on PROMESA section 407(a).

## COUNT CVIII

1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM FOR POSTPETITION
INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE
SECTION 502(b)(2)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

697.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

698.   The FGIC Claim asserts claims for postpetition interest and other postpetition costs.

699.   Pursuant to Bankruptcy Code section 502(b), FGIC's claims for postpetition interest must be disallowed.

700.     Pursuant to section 506, FGIC's claims for costs and expenses must be disallowed to the extent not provided for by the 1968 Resolution, 1998 Resolution or other applicable agreement, and to the extent provided for, must be allowed as prepetition general unsecured claims to the extent its collateral value does not exceed all unpaid principal and interest on the bonds it owns and insures.

## COUNT CIX

### <u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING FGIC'S SECURED CLAIM
### (11 U.S.C. § 502)

701.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

702.     FGIC has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory liens against any property in which the Commonwealth has an interest, nor has FGIC perfected any alleged security interest if any, as against the Commonwealth.

703.     Plaintiff is entitled to judgment disallowing FGIC's claim that FGIC possesses a secured claim against the HTA Allocable Revenues.

## COUNT CX

### <u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING AND AVOIDING FGIC CLAIM ASSERTING PERFECTED SECURITY INTERESTS PURSUANT TO BANKRUPTCY CODE SECTION 502(d)
### (48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

704.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

705.     The FGIC Claim asserts the Bonds it holds and/or insures are secured by a perfected security interest against the HTA Allocable Revenues held by the Commonwealth.

706.   FGIC does not have control over any deposit accounts, including the 1968 Sinking Fund or the 1998 Resolution Funds, or in any other funds held by the Commonwealth.

707.   No financing statements were filed against the Commonwealth regarding the Bonds.

708.   Plaintiff is entitled to judgment disallowing FGIC's claim for a perfected security interest against the Bonds as against the Commonwealth.

### **COUNT CXI**

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING FGIC'S PRIORITY CLAIM
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

709.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

710.   The FGIC Claim asserts amounts due to FGIC are entitled to priority over other unsecured claims.

711.   FGIC does not have a priority claim under Commonwealth law.  Moreover, even if FGIC had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

712.   FGIC does not have an administrative expense claim pursuant to PROMESA section 507.  None of FGIC's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

713.   Plaintiff is entitled to judgment disallowing all priorities asserted for the FGIC Claim.

## COUNT CXII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING FGIC CLAIM TO A SECURITY
INTEREST AGAINST REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO
RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE
SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

714.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

715.    The FGIC Claim asserts HTA Allocable Revenues collected postpetition are
subject to FGIC's purported security interest.

716.    FGIC does not have a valid or perfected security interest against the HTA
Allocable Revenues.  Even if it did, such security interest would not attach to moneys collected
postpetition.

717.    Plaintiff is entitled to judgment disallowing the FGIC Claim regarding its
purported security interest against any and all postpetition HTA Allocable Revenues retained by
the Commonwealth.

## COUNT CXIII

<u>1968 & 1998 BONDS</u>: JUDGMENT DISALLOWING FGIC CLAIM ASSERTING BONDS
ARE SECURED AGAINST SPECIAL REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 902)

718.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

719.    The FGIC Claim asserts all HTA Allocable Revenues allegedly securing the
Bonds are "special revenues" as defined in Bankruptcy Code section 902(2).

720.    The HTA Allocable Revenues are not "special revenues" as defined in
Bankruptcy Code section 902(2).

721.    None of the Bonds allegedly held or insured by FGIC are secured by a security interest against any "special revenues."

722.    The Oversight Board is entitled to judgment disallowing the FGIC Claim asserting the Bonds FGIC allegedly holds or insures are secured against "special revenues" as defined in Bankruptcy Code section 902(2).

## COUNT CXIV

1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM OF OWNERSHIP IN HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

723.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

724.    The FGIC Claim asserts the HTA Allocable Revenues are owned by the Bondholders.

725.    None of the HTA Allocable Revenue Statutes or HTA Bond Materials provide Defendants an ownership interest in HTA Allocable Revenues possessed by the Commonwealth, including under any trust or agency theory.

726.    Plaintiff is entitled to judgment disallowing claims to an ownership interest asserted in the FGIC Claim, including an ownership interest based on trust or agency theories.

## COUNT CXV

1968 & 1998 BONDS: JUDGMENT DISALLOWING FGIC CLAIM FOR BREACH OF THE HTA NON-IMPAIRMENT PROVISION
(11 U.S.C. § 502)

727.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

728.    The FGIC Claim asserts the Commonwealth's retention of the HTA Allocable Revenues constitutes a breach of the HTA Non-Impairment Provision.

729.    The Commonwealth has not breached the HTA Non-Impairment Provision because it has not limited or altered any rights conferred to HTA.  The Commonwealth never repealed or amended the Enabling Act, or passed any legislation that conflicts with the powers granted to HTA.

730.    The Commonwealth's retention of the HTA Allocable Revenues does not limit or alter HTA's rights to the HTA Allocable Revenues as such rights were always conditional and subject to Section 8 Article VI of the Commonwealth Constitution.

731.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption of the Enabling Act's conditional appropriation of the HTA Allocable Revenues.

732.    Plaintiff is entitled to judgment disallowing the FGIC Claim because there has been no breach of the HTA Non-Impairment Provision.

## OBJECTIONS TO PEAJE 1968 CLAIM

### COUNT CXVI

1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM AS DUPLICATIVE OF
THE MASTER PROOFS OF CLAIM
(11 U.S.C. § 502)

733.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

734.    The Peaje 1968 Claim seeks principal, prepetition interest, postpetition interest and fees against the Commonwealth based on the same Bonds that are the subject of the Master Proofs of Claim.  The Peaje 1968 Claim is duplicative of the Master Proofs of Claim asserted by the Fiscal Agent because they both make claims for the same exact funds owed under the Bonds.

735.     Peaje alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) security interests against the HTA Allocable Revenues, (*iii*) violations of the U.S. and Commonwealth Constitutions in failing to appropriate the HTA Allocable Revenues to HTA, (*iv*) violations of PROMESA section 407, (*v*) the Commonwealth's failure to appropriate the HTA Allocable Revenues to HTA was unlawful and a breach of contract and/or gave rise various tort claims, and (*vi*) entitlement to administrative expense priority.

736.     A failure to disallow the Peaje 1968 Claim will result in Peaje potentially receiving an unwarranted double recovery against the Commonwealth to the detriment of other stakeholders.

737.     Peaje will not be prejudiced by the disallowance of its duplicative claims because they are subsumed within the Master Proofs of Claim.

738.     Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim as duplicative of the Master Proofs of Claim.  In the alternative, if the Peaje 1968 Claim is not disallowed as duplicative, Plaintiff is entitled to an offset from the Peaje 1968 Claim to be determined by the Court for any amount recovered by the Fiscal Agent against Plaintiff.

## **COUNT CXVII**

### 1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM BECAUSE PEAJE LACKS STANDING TO ASSERT A CLAIM AGAINST THE COMMONWEALTH AS TO THE BONDS
(11 U.S.C. §§ 501, 502)

739.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

740.     The Peaje 1968 Claim must be disallowed because Peaje does not have any "right to payment" from the Commonwealth, or any interest in any right to payment, and therefore does not have or possess an allowable claim against the Commonwealth under the Bankruptcy Code

or Commonwealth law.  Without an enforceable obligation against the Commonwealth as to the HTA Allocable Revenues, Peaje does not have standing to assert a claim against the Commonwealth.

741.   Further, Peaje lacks derivative standing to assert any claims against the Commonwealth for its retention of the HTA Allocable Revenues.

742.   Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim in its entirety, as Peaje does not have standing to assert a claim against the Commonwealth because it lacks any interest in an enforceable obligation from the Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code section 101(5).

## COUNT CXVIII

1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

743.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

744.   The Peaje 1968 Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

745.   The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the HTA Allocable Revenue Statutes, which provide the HTA Allocable Revenues are "available resources" of the Commonwealth.

746.     The obligation of the Commonwealth, if any, to appropriate the HTA Allocable Revenues to HTA, as well as all other obligations related to the Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

747.     Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution.

## **COUNT CXIX**

**1968 BONDS**: JUDGMENT DISALLOWING PEAJE 1968 CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE THE HTA ALLOCABLE REVENUE STATUTES WERE PREEMPTED BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

748.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

749.     The Peaje 1968 Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

750.     The Commonwealth's retention of the HTA Allocable Revenues following the passage of PROMESA does not give rise to a claim against the Commonwealth because the statutes creating an obligation of the Commonwealth to appropriate and transfer the HTA Allocable Revenues were preempted by PROMESA.  Appropriations under Commonwealth law were inconsistent with PROMESA's provisions granting the Oversight Board complete power over fiscal plans and budget appropriations

751.     Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim because the Commonwealth's obligation to appropriate and transfer the HTA Allocable Revenues was preempted.

## COUNT CXX

1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM PREDICATED ON
UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR BREACH OF
CONTRACT
(11 U.S.C. § 502)

752.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

753.    The Peaje 1968 Claim asserts a breach of contract claim against the
Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues.

754.    The Commonwealth is not liable for any breach of contract to Peaje.   The
Commonwealth is not a party to any contract with Peaje (including the HTA Bond Materials).
The Commonwealth does not owe any contractual obligations to or enforceable by Peaje
regarding payment on the Bonds.

755.    Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim because the
Commonwealth's retention of the HTA Allocable Revenues did not constitute a breach of a
Commonwealth contract.

## COUNT CXXI

1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM PREDICATED ON
UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR COMMON LAW
TORT CLAIMS
(11 U.S.C. § 502)

756.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

757.    The Peaje 1968 Claim asserts various tort-based claims—including breach,
common law fraud, and misrepresentation—which all purportedly arise out of the
Commonwealth's retention of the HTA Allocable Revenues.

758.   The Commonwealth's retention of the HTA Allocable Revenues was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to Peaje for any tort claims under any theory.

759.   A conversion claim asserted by Peaje fails because (*i*) Peaje does not have a security interest against any Commonwealth funds and any HTA funds beyond moneys actually received by HTA from the Commonwealth and deposited in the 1968 Sinking Fund and the 1998 Resolution Funds, (*ii*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the Bondholders do not have any other property interest in the HTA Allocable Revenues, and (*iv*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA after the enactment of PROMESA was proper because the HTA Allocable Revenue Statutes were preempted.

760.   A tortious interference with contract claim asserted by Peaje fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the HTA Allocable Revenues due to preemption of the HTA Allocable Revenue Statutes, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to make payment on the Bonds because payments were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

761.   The Peaje 1968 Claim's claims of breach, common law fraud, and misrepresentation fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth did not make any material misstatements of fact, (*iii*) the Commonwealth did not engage in any fraudulent conduct, and (*iv*) the required elements of such fraud-based claims are not alleged.

The Commonwealth has not made any material misstatements of fact or engaged in any fraudulent conduct. Statements made in the HTA Bond Materials were truthful when made.

762. The Peaje 1968 Claim's claims of breach, common law fraud, and misrepresentation also fail because the HTA Allocable Revenue Statutes are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim.

763. Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute breach, common law fraud, or misrepresentation.

## COUNT CXXII

1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

764. Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

765. The Peaje 1968 Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

766. The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

767. Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized

by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

768.    To the extent Peaje has an allowable claim for such retention, the claim is a prepetition general unsecured claim and all assertions of priority and/or secured status should be disallowed.

## COUNT CXXIII

1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

769.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

770.    Peaje alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

771.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth was authorized to retain them under Commonwealth and federal law, and no contractual right of Peaje's was impaired.

772.    Any legislation enacted by the Commonwealth to support retention of the HTA Allocable Revenues did not originate the Commonwealth's power to retain the revenues.  The legislation carried out the Commonwealth's preexisting rights and duties to retain the HTA Allocable Revenues.

773.    Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim because there has been no impairment of Peaje's contractual rights. In the alternative, Plaintiff is entitled to a

judgment declaring any valid claim held by Peaje based on the Contracts Clause is a prepetition unsecured claim that is dischargeable.

## COUNT CXXIV

<u>1968 BONDS</u>: JUDGMENT DISALLOWING PEAJE 1968 CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO LEGISLATION CREATED AN IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

774.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

775.    Peaje alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

776.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because no Commonwealth legislation was passed that impaired Peaje's contract rights, if any.

777.    Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim because there is no Commonwealth legislation that impaired Peaje's contract rights, if any.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Peaje based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT CXXV

<u>1968 BONDS</u>: JUDGMENT DISALLOWING PEAJE 1968 CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE HTA ALLOCABLE REVENUES WAS DUE TO PROMESA, NOT LEGISLATION
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

778.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

779.    Peaje alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

780.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause of the Commonwealth or U.S. Constitutions because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.

781.    Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Peaje based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT CXXVI

1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM PREDICATED ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE PEAJE DOES NOT HOLD A PROPERTY INTEREST (28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

782.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

783.    Peaje asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

784.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute a taking because Peaje has no property interest in the HTA Allocable Revenues.

785.    Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim because Peaje has no property interest in the HTA Allocable Revenues and therefore cannot assert a takings claim.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Peaje based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT CXXVII

<u>1968 BONDS</u>: JUDGMENT DISALLOWING PEAJE 1968 CLAIM PREDICATED ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE PEAJE HAD A REASONABLE EXPECTATION THE COMMONWEALTH WOULD RETAIN THE HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

786.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

787.    Peaje asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

788.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute an impermissible taking because such retention did not interfere with Peaje's reasonable expectations.

789.    Peaje knew or should have known, pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the HTA Allocable Revenue Statutes, and the HTA Bond Materials, that the HTA Allocable Revenues were subject to the Commonwealth's retention.

790.    Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim because the Commonwealth's retention of the HTA Allocable Revenues did not interfere with Peaje's reasonable expectations regarding the HTA Allocable Revenues.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Peaje based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT CXXVIII

1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

791.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

792.    Peaje alleges the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause, and asserts a claim against the Commonwealth as a result of the alleged violation.

793.    Peaje filed a proof of claim pursuant to a court-supervised process in which it can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.

794.    The Peaje 1968 Claim does not assert any additional basis on which the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause separate from its Takings Clause claim.

795.    Because the Peaje 1968 Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, Peaje's Due Process claim should be disallowed because it has no property rights in the HTA Allocable Revenues retained by the Commonwealth.

796.    Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim because the Commonwealth's retention of the HTA Allocable Revenues did not violate the Due Process Clause.

## COUNT CXXIX

### 1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM BASED ON PROMESA SECTION 407
### (28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

797.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

798.    The Peaje 1968 Claim asserts claims under PROMESA section 407(a).

799.    Peaje does not have a claim under PROMESA section 407(a) because the HTA Allocable Revenues were not property of any territorial instrumentality transferred in violation of applicable law, nor does Peaje have any security interest against the HTA Allocable Revenues.

800.    Peaje also does not have standing to assert a claim—if a valid claim existed— under PROMESA section 407(a), because only HTA has a claim for the transferred property against the transferee.

801.    Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim based on PROMESA section 407(a).

## COUNT CXXX

### 1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM FOR POSTPETITION INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE SECTION 502(b)(2)
### (28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

802.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

803.    The Peaje 1968 Claim asserts claims for postpetition interest and other postpetition costs.

804.    Pursuant to Bankruptcy Code section 502(b), Peaje's claims for postpetition interest must be disallowed.

805.     Pursuant to section 506, Peaje's claims for costs and expenses must be disallowed to the extent not provided for by the 1968 Resolution, 1998 Resolution or other applicable agreement, and to the extent provided for, must be allowed as prepetition general unsecured claims to the extent its collateral value does not exceed all unpaid principal and interest on the bonds it owns.

## COUNT CXXXI

### 1968 BONDS: JUDGMENT DISALLOWING PEAJE'S SECURED CLAIM
(11 U.S.C. § 502)

806.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

807.     Peaje has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory liens against any property in which the Commonwealth has an interest, nor has Peaje perfected any alleged security interest if any, as against the Commonwealth.

808.     Plaintiff is entitled to judgment disallowing Peaje's claim that Peaje possesses a secured claim against the HTA Allocable Revenues.

## COUNT CXXXII

### 1968 BONDS: JUDGMENT DISALLOWING AND AVOIDING PEAJE 1968 CLAIM ASSERTING PERFECTED SECURITY INTERESTS PURSUANT TO BANKRUPTCY CODE SECTION 502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

809.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

810.     The Peaje 1968 Claim asserts the Bonds it holds are secured by a perfected security interest against the HTA Allocable Revenues held by the Commonwealth.

811.    Peaje does not have control over any deposit accounts, including the 1968 Sinking Fund or the 1998 Resolution Funds, or in any other funds held by the Commonwealth.

812.    No financing statements were filed against the Commonwealth regarding the Bonds.

813.    Plaintiff is entitled to judgment disallowing Peaje's claim for a perfected security interest against the Bonds as against the Commonwealth.

## COUNT CXXXIII

### 1968 BONDS: JUDGMENT DISALLOWING PEAJE'S PRIORITY CLAIM
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

814.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

815.    The Peaje 1968 Claim asserts amounts due to Peaje are entitled to priority over other unsecured claims.

816.    Peaje does not have a priority claim under Commonwealth law.  Moreover, even if Peaje had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

817.    Peaje does not have an administrative expense claim pursuant to PROMESA section 507.  None of Peaje's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

818.    Plaintiff is entitled to judgment disallowing all priorities asserted for the Peaje 1968 Claim.

## COUNT CXXXIV

1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM TO A SECURITY
INTEREST AGAINST REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO
RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE
SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

819.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

820.    The Peaje 1968 Claim asserts HTA Allocable Revenues collected postpetition are
subject to Peaje's purported security interest.

821.    Peaje does not have a valid or perfected security interest against the HTA
Allocable Revenues.  Even if it did, such security interest would not attach to moneys collected
postpetition.

822.    Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim regarding its
purported security interest against any and all postpetition HTA Allocable Revenues retained by
the Commonwealth.

## COUNT CXXXV

1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM ASSERTING BONDS
ARE SECURED AGAINST SPECIAL REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 902)

823.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

824.    The Peaje 1968 Claim asserts all HTA Allocable Revenues allegedly securing the
Bonds are "special revenues" as defined in Bankruptcy Code section 902(2).

825.    The HTA Allocable Revenues are not "special revenues" as defined in
Bankruptcy Code section 902(2).

826.    None of the Bonds allegedly held by Peaje are secured by a security interest against any "special revenues."

827.    The Oversight Board is entitled to judgment disallowing the Peaje 1968 Claim asserting the Bonds Peaje allegedly holds are secured against "special revenues" as defined in Bankruptcy Code section 902(2).

## COUNT CXXXVI

1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM OF OWNERSHIP IN HTA
ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

828.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

829.    The Peaje 1968 Claim asserts the HTA Allocable Revenues are owned by the Bondholders.

830.    None of the HTA Allocable Revenue Statutes or HTA Bond Materials provide Defendants an ownership interest in HTA Allocable Revenues possessed by the Commonwealth, including under any trust or agency theory.

831.    Plaintiff is entitled to judgment disallowing claims to an ownership interest asserted in the Peaje 1968 Claim, including an ownership interest based on trust or agency theories.

## COUNT CXXXVII

1968 BONDS: JUDGMENT DISALLOWING PEAJE 1968 CLAIM FOR BREACH OF THE
HTA NON-IMPAIRMENT PROVISION
(11 U.S.C. § 502)

832.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

150

833.    The Peaje 1968 Claim asserts the Commonwealth's retention of the HTA Allocable Revenues constitutes a breach of the HTA Non-Impairment Provision.

834.    The Commonwealth has not breached the HTA Non-Impairment Provision because it has not limited or altered any rights conferred to HTA.  The Commonwealth never repealed or amended the Enabling Act, or passed any legislation that conflicts with the powers granted to HTA.

835.    The Commonwealth's retention of the HTA Allocable Revenues does not limit or alter HTA's rights to the HTA Allocable Revenues as such rights were always conditional and subject to Section 8 Article VI of the Commonwealth Constitution.

836.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption of the Enabling Act's conditional appropriation of the HTA Allocable Revenues.

837.    Plaintiff is entitled to judgment disallowing the Peaje 1968 Claim because there has been no breach of the HTA Non-Impairment Provision.

## OBJECTIONS TO PEAJE 1998 CLAIM

### COUNT CXXXVIII

1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM AS DUPLICATIVE OF
THE MASTER PROOFS OF CLAIM
(11 U.S.C. § 502)

838.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

839.    The Peaje 1998 Claim seeks principal, prepetition interest, postpetition interest and fees against the Commonwealth based on the same Bonds that are the subject of the Master

Proofs of Claim.  The Peaje 1998 Claim is duplicative of the Master Proofs of Claim asserted by the Fiscal Agent because they both make claims for the same exact funds owed under the Bonds.

840.    Peaje alleges (*i*) statutory liens against the HTA Allocable Revenues, (*ii*) security interests against the HTA Allocable Revenues, (*iii*) violations of the U.S. and Commonwealth Constitutions in failing to appropriate the HTA Allocable Revenues to HTA, (*iv*) violations of PROMESA section 407, (*v*) the Commonwealth's failure to appropriate the HTA Allocable Revenues to HTA was unlawful and a breach of contract and/or gave rise various tort claims, and (*vi*) entitlement to administrative expense priority.

841.    A failure to disallow the Peaje 1998 Claim will result in Peaje potentially receiving an unwarranted double recovery against the Commonwealth to the detriment of other stakeholders.

842.    Peaje will not be prejudiced by the disallowance of its duplicative claims because they are subsumed within the Master Proofs of Claim.

843.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim as duplicative of the Master Proofs of Claim.  In the alternative, if the Peaje 1998 Claim is not disallowed as duplicative, Plaintiff is entitled to an offset from the Peaje 1998 Claim to be determined by the Court for any amount recovered by the Fiscal Agent against Plaintiff.

## **COUNT CXXXIX**

### 1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM BECAUSE PEAJE LACKS STANDING TO ASSERT A CLAIM AGAINST THE COMMONWEALTH AS TO THE BONDS
### (11 U.S.C. §§ 501, 502)

844.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

845.    The Peaje 1998 Claim must be disallowed because Peaje does not have any "right to payment" from the Commonwealth, or any interest in any right to payment, and therefore does not have or possess an allowable claim against the Commonwealth under the Bankruptcy Code or Commonwealth law.  Without an enforceable obligation against the Commonwealth as to the HTA Allocable Revenues, Peaje does not have standing to assert a claim against the Commonwealth.

846.    Further, Peaje lacks derivative standing to assert any claims against the Commonwealth for its retention of the HTA Allocable Revenues.

847.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim in its entirety, as Peaje does not have standing to assert a claim against the Commonwealth because it lacks any interest in an enforceable obligation from the Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code section 101(5).

## COUNT CXL

1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

848.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

849.    The Peaje 1998 Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

850.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the HTA

Allocable Revenue Statutes, which provide the HTA Allocable Revenues are "available resources" of the Commonwealth.

851.    The obligation of the Commonwealth, if any, to appropriate the HTA Allocable Revenues to HTA, as well as all other obligations related to the Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

852.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution.

## **COUNT CXLI**

**1998 BONDS**: JUDGMENT DISALLOWING PEAJE 1998 CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE THE HTA ALLOCABLE REVENUE STATUTES WERE PREEMPTED BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

853.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

854.    The Peaje 1998 Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

855.    The Commonwealth's retention of the HTA Allocable Revenues following the passage of PROMESA does not give rise to a claim against the Commonwealth because the statutes creating an obligation of the Commonwealth to appropriate and transfer the HTA Allocable Revenues were preempted by PROMESA.  Appropriations under Commonwealth law were inconsistent with PROMESA's provisions granting the Oversight Board complete power over fiscal plans and budget appropriations

856.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim because the Commonwealth's obligation to appropriate and transfer the HTA Allocable Revenues was preempted.

## COUNT CXLII

### 1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR BREACH OF CONTRACT
(11 U.S.C. § 502)

857.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

858.    The Peaje 1998 Claim asserts a breach of contract claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues.

859.    The Commonwealth is not liable for any breach of contract to Peaje.  The Commonwealth is not a party to any contract with Peaje (including the HTA Bond Materials). The Commonwealth does not owe any contractual obligations to or enforceable by Peaje regarding payment on the Bonds.

860.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute a breach of a Commonwealth contract.

## COUNT CXLIII

### 1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR COMMON LAW TORT CLAIMS
(11 U.S.C. § 502)

861.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

862.    The Peaje 1998 Claim asserts various tort-based claims—including breach, common law fraud, and misrepresentation—which all purportedly arise out of the Commonwealth's retention of the HTA Allocable Revenues.

863.    The Commonwealth's retention of the HTA Allocable Revenues was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to Peaje for any tort claims under any theory.

864.    A conversion claim asserted by Peaje fails because (*i*) Peaje does not have a security interest against any Commonwealth funds and any HTA funds beyond moneys actually received by HTA from the Commonwealth and deposited in the 1998 Sinking Funds and the 1998 Resolution Funds, (*ii*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the Bondholders do not have any other property interest in the HTA Allocable Revenues, and (*iv*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA after the enactment of PROMESA was proper because the HTA Allocable Revenue Statutes were preempted.

865.    A tortious interference with contract claim asserted by Peaje fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the HTA Allocable Revenues due to preemption of the HTA Allocable Revenue Statutes, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to make payment on the Bonds because payments were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

866.    The Peaje 1998 Claim's claims of breach, common law fraud, and misrepresentation fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth

did not make any material misstatements of fact, (*iii*) the Commonwealth did not engage in any fraudulent conduct, and (*iv*) the required elements of such fraud-based claims are not alleged. Statements made in the HTA Bond Materials were truthful when made.

867.   The Peaje 1998 Claim's claims of breach, common law fraud, and misrepresentation also fail because the HTA Allocable Revenue Statutes are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim.

868.   Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute breach, common law fraud, or misrepresentation.

## **COUNT CXLIV**

1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

869.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

870.   The Peaje 1998 Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

871.   The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

872.   Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized

by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

873.    To the extent Peaje has an allowable claim for such retention, the claim is a prepetition general unsecured claim and all assertions of priority and/or secured status should be disallowed.

## **COUNT CXLV**

<u>1998 BONDS</u>: JUDGMENT DISALLOWING PEAJE 1998 CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH
AND U.S. CONSTITUTIONS BECAUSE NO CONTRACT WAS IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

874.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

875.    Peaje alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

876.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth was authorized to retain them under Commonwealth and federal law, and no contractual right of Peaje's was impaired.

877.    Any legislation enacted by the Commonwealth to support retention of the HTA Allocable Revenues did not originate the Commonwealth's power to retain the revenues.  The legislation carried out the Commonwealth's preexisting rights and duties to retain the HTA Allocable Revenues.

878.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim because there has been no impairment of Peaje's contractual rights. In the alternative, Plaintiff is entitled to a

judgment declaring any valid claim held by Peaje based on the Contracts Clause is a prepetition

unsecured claim that is dischargeable.

## COUNT CXLVI

1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH
AND U.S. CONSTITUTIONS BECAUSE NO LEGISLATION CREATED AN IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

879.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-192, as if fully set forth herein.

880.    Peaje alleges the Commonwealth's retention of the HTA Allocable Revenues

violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the

alleged violations.

881.    The Commonwealth's retention of the HTA Allocable Revenues did not violate

the Contracts Clause because no Commonwealth legislation was passed that impaired Peaje's

contract rights, if any.

882.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim because there is

no Commonwealth legislation that impaired Peaje's contract rights, if any.  In the alternative,

Plaintiff is entitled to a judgment declaring any valid claim held by Peaje based on the Contracts

Clause is a prepetition, unsecured, dischargeable claim.

## COUNT CXLVII

1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH
AND U.S. CONSTITUTIONS BECAUSE THE COMMONWEALTH'S RETENTION OF THE
HTA ALLOCABLE REVENUES WAS DUE TO PROMESA, NOT LEGISLATION
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

883.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-192, as if fully set forth herein.

884.    Peaje alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

885.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.

886.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Peaje based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT CXLVIII

1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM PREDICATED ON
VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE PEAJE DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

887.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

888.    Peaje asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

889.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute a taking because Peaje has no property interest in the HTA Allocable Revenues.

890.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim because Peaje has no property interest in the HTA Allocable Revenues and therefore cannot assert a takings claim.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Peaje based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## <u>COUNT CXLIX</u>

<u>1998 BONDS</u>: JUDGMENT DISALLOWING PEAJE 1998 CLAIM PREDICATED ON
VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S.
CONSTITUTIONS BECAUSE PEAJE HAD A REASONABLE EXPECTATION THE
COMMONWEALTH WOULD RETAIN THE HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

891.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

892.    Peaje asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

893.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute an impermissible taking because such retention did not interfere with Peaje's reasonable expectations.

894.    Peaje knew or should have known, pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the HTA Allocable Revenue Statutes, and the HTA Bond Materials, that the HTA Allocable Revenues were subject to the Commonwealth's retention.

895.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim because the Commonwealth's retention of the HTA Allocable Revenues did not interfere with Peaje's reasonable expectations regarding the HTA Allocable Revenues.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by Peaje based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT CL

1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM PREDICATED ON
CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

896.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

897.    Peaje alleges the Commonwealth's retention of HTA Allocable Revenues
constitutes a violation of the Due Process Clause, and asserts a claim against the Commonwealth
as a result of the alleged violation.

898.    Peaje filed a proof of claim pursuant to a court-supervised process in which it can
receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of
adjustment.

899.    The Peaje 1998 Claim does not assert any additional basis on which the
Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due
Process Clause separate from its Takings Clause claim.

900.    Because the Peaje 1998 Claim does not assert any independent basis for its Due
Process claim beyond the basis for its Takings Clause claim, Peaje's Due Process claim should
be disallowed because it has no property rights in the HTA Allocable Revenues retained by the
Commonwealth.

901.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim because the
Commonwealth's retention of the HTA Allocable Revenues did not violate the Due Process
Clause.

## COUNT CLI

### 1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM BASED ON PROMESA SECTION 407
### (28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

902.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

903.   The Peaje 1998 Claim asserts claims under PROMESA section 407(a).

904.   Peaje does not have a claim under PROMESA section 407(a) because the HTA Allocable Revenues were not property of any territorial instrumentality transferred in violation of applicable law, nor does Peaje have any security interest against the HTA Allocable Revenues.

905.   Peaje also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only HTA has a claim for the transferred property against the transferee.

906.   Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim based on PROMESA section 407(a).

## COUNT CLII

### 1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM FOR POSTPETITION INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE SECTION 502(b)(2)
### (28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

907.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

908.   The Peaje 1998 Claim asserts claims for postpetition interest and other postpetition costs.

909.   Pursuant to Bankruptcy Code section 502(b), Peaje's claims for postpetition interest must be disallowed.

910.     Pursuant to section 506, Peaje's claims for costs and expenses must be disallowed to the extent not provided for by the 1998 Resolution, 1998 Resolution or other applicable agreement, and to the extent provided for, must be allowed as prepetition general unsecured claims to the extent its collateral value does not exceed all unpaid principal and interest on the bonds it owns.

## COUNT CLIII

### 1998 BONDS: JUDGMENT DISALLOWING PEAJE'S SECURED CLAIM
(11 U.S.C. § 502)

911.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

912.     Peaje has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory liens against any property in which the Commonwealth has an interest, nor has Peaje perfected any alleged security interest if any, as against the Commonwealth.

913.     Plaintiff is entitled to judgment disallowing Peaje's claim that Peaje possesses a secured claim against the HTA Allocable Revenues.

## COUNT CLIV

### 1998 BONDS: JUDGMENT DISALLOWING AND AVOIDING PEAJE 1998 CLAIM ASSERTING PERFECTED SECURITY INTERESTS PURSUANT TO BANKRUPTCY CODE SECTION 502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

914.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

915.     The Peaje 1998 Claim asserts the Bonds it holds are secured by a perfected security interest against the HTA Allocable Revenues held by the Commonwealth.

916.    Peaje does not have control over any deposit accounts, including the 1998 Sinking Funds or the 1998 Resolution Funds, or in any other funds held by the Commonwealth.

917.    No financing statements were filed against the Commonwealth regarding the Bonds.

918.    Plaintiff is entitled to judgment disallowing Peaje's claim for a perfected security interest against the Bonds as against the Commonwealth.

## COUNT CLV

1998 BONDS: JUDGMENT DISALLOWING PEAJE'S PRIORITY CLAIM
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

919.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

920.    The Peaje 1998 Claim asserts amounts due to Peaje are entitled to priority over other unsecured claims.

921.    Peaje does not have a priority claim under Commonwealth law.  Moreover, even if Peaje had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

922.    Peaje does not have an administrative expense claim pursuant to PROMESA section 507.  None of Peaje's claims are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

923.    Plaintiff is entitled to judgment disallowing all priorities asserted for the Peaje 1998 Claim.

## COUNT CLVI

1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM TO A SECURITY
INTEREST AGAINST REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO
RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE
SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

924.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

925.    The Peaje 1998 Claim asserts HTA Allocable Revenues collected postpetition are
subject to Peaje's purported security interest.

926.    Peaje does not have a valid or perfected security interest against the HTA
Allocable Revenues.  Even if it did, such security interest would not attach to moneys collected
postpetition.

927.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim regarding its
purported security interest against any and all postpetition HTA Allocable Revenues retained by
the Commonwealth.

## COUNT CLVII

1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM ASSERTING BONDS
ARE SECURED AGAINST SPECIAL REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 902)

928.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

929.    The Peaje 1998 Claim asserts all HTA Allocable Revenues allegedly securing the
Bonds are "special revenues" as defined in Bankruptcy Code section 902(2).

930.    The HTA Allocable Revenues are not "special revenues" as defined in
Bankruptcy Code section 902(2).

931.    None of the Bonds allegedly held by Peaje are secured by a security interest against any "special revenues."

932.    The Oversight Board is entitled to judgment disallowing the Peaje 1998 Claim asserting the Bonds Peaje allegedly holds are secured against "special revenues" as defined in Bankruptcy Code section 902(2).

## COUNT CLVIII

1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM OF OWNERSHIP IN HTA
ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

933.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

934.    The Peaje 1998 Claim asserts the HTA Allocable Revenues are owned by the Bondholders.

935.    None of the HTA Allocable Revenue Statutes or HTA Bond Materials provide Defendants an ownership interest in HTA Allocable Revenues possessed by the Commonwealth, including under any trust or agency theory.

936.    Plaintiff is entitled to judgment disallowing claims to an ownership interest asserted in the Peaje 1998 Claim, including an ownership interest based on trust or agency theories.

## COUNT CLIX

1998 BONDS: JUDGMENT DISALLOWING PEAJE 1998 CLAIM FOR BREACH OF THE
HTA NON-IMPAIRMENT PROVISION
(11 U.S.C. § 502)

937.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

167

938.    The Peaje 1998 Claim asserts the Commonwealth's retention of the HTA
Allocable Revenues constitutes a breach of the HTA Non-Impairment Provision.

939.    The Commonwealth has not breached the HTA Non-Impairment Provision
because it has not limited or altered any rights conferred to HTA.  The Commonwealth never
repealed or amended the Enabling Act, or passed any legislation that conflicts with the powers
granted to HTA.

940.    The Commonwealth's retention of the HTA Allocable Revenues does not limit or
alter HTA's rights to the HTA Allocable Revenues as such rights were always conditional and
subject to Section 8 Article VI of the Commonwealth Constitution.

941.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the
fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption
of the Enabling Act's conditional appropriation of the HTA Allocable Revenues.

942.    Plaintiff is entitled to judgment disallowing the Peaje 1998 Claim because there
has been no breach of the HTA Non-Impairment Provision.

## OBJECTIONS TO 1968 BOND MASTER PROOF OF CLAIM

### COUNT CLX

1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM
BECAUSE BNYM, AS FISCAL AGENT, LACKS STANDING TO ASSERT A CLAIM
AGAINST THE COMMONWEALTH AS TO THE BONDS
(11 U.S.C. §§ 501, 502)

943.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

944.    The 1968 Bond Master Proof of Claim must be disallowed because BNYM, as
Fiscal Agent, does not have any "right to payment" from the Commonwealth, or any interest in
any right to payment, and therefore does not have or possess an allowable claim against the

Commonwealth under the Bankruptcy Code or Commonwealth law. Without an enforceable obligation against the Commonwealth as to the HTA Allocable Revenues, BNYM, as Fiscal Agent, does not have standing to assert a claim against the Commonwealth.

945.     Further, BNYM, as Fiscal Agent, lacks derivative standing to assert any claims against the Commonwealth for its retention of the HTA Allocable Revenues.

946.     Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim in its entirety, as BNYM, as Fiscal Agent, does not have standing to assert a claim against the Commonwealth because it lacks any interest in an enforceable obligation from the Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code section 101(5).

## **COUNT CLXI**

<u>1968 BONDS</u>: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM
PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES
BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF
THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

947.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

948.     The 1968 Bond Master Proof of Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

949.     The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the HTA Allocable Revenue Statutes, which provide the HTA Allocable Revenues are "available resources" of the Commonwealth.

169

950.    The obligation of the Commonwealth, if any, to appropriate the HTA Allocable Revenues to HTA, as well as all other obligations related to the Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

951.    Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution.

## **COUNT CLXII**

<u>1968 BONDS</u>: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE THE HTA ALLOCABLE REVENUE STATUTES WERE PREEMPTED BY PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

952.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

953.    The 1968 Bond Master Proof of Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

954.    The Commonwealth's retention of the HTA Allocable Revenues following the passage of PROMESA does not give rise to a claim against the Commonwealth because the statutes creating an obligation of the Commonwealth to appropriate and transfer the HTA Allocable Revenues were preempted by PROMESA.  Appropriations under Commonwealth law were inconsistent with PROMESA's provisions granting the Oversight Board complete power over fiscal plans and budget appropriations

955.    Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim because the Commonwealth's obligation to appropriate and transfer the HTA Allocable Revenues was preempted.

170

## COUNT CLXIII

### 1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR BREACH OF CONTRACT
### (11 U.S.C. § 502)

956.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

957.    The 1968 Bond Master Proof of Claim asserts a breach of contract claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues.

958.    The Commonwealth is not liable for any breach of contract to BNYM, as Fiscal Agent.  The Commonwealth is not a party to any contract with BNYM (including the HTA Bond Materials), as Fiscal Agent. The Commonwealth does not owe any contractual obligations to or enforceable by BNYM, as Fiscal Agent, regarding payment on the Bonds.

959.    Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute a breach of a Commonwealth contract.

## COUNT CLXIV

### 1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES FOR COMMON LAW TORT CLAIMS
### (11 U.S.C. § 502)

960.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

961.    The 1968 Bond Master Proof of Claim asserts various tort-based claims—including tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, unjust enrichment, equitable or constructive trust, equitable subordination, breach of contract, indemnification, reimbursement, and contribution—

which all purportedly arise out of the Commonwealth's retention of the HTA Allocable Revenues.

962.    The Commonwealth's retention of the HTA Allocable Revenues was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to BNYM, as Fiscal Agent, for any tort claims under any theory.

963.    The 1968 Bond Master Proof of Claim's conversion claim fails because (*i*) BNYM, as Fiscal Agent, does not have a security interest against any Commonwealth funds and any HTA funds beyond moneys actually received by HTA from the Commonwealth and deposited in the 1968 Sinking Fund and the 1998 Resolution Funds, (*ii*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the Bondholders do not have any other property interest in the HTA Allocable Revenues, and (*iv*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA after the enactment of PROMESA was proper because the HTA Allocable Revenue Statutes were preempted.

964.    The 1968 Bond Master Proof of Claim's tortious interference with contract claim fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the HTA Allocable Revenues due to preemption of the HTA Allocable Revenue Statutes, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to make payment on the Bonds because payments were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

965.    The 1968 Bond Master Proof of Claim's claims of tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, unjust enrichment, equitable or constructive trust, equitable subordination, breach of contract, indemnification, reimbursement, and contribution fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth did not make any material misstatements of fact, (*iii*) the Commonwealth did not engage in any fraudulent conduct, and (*iv*) the required elements of such fraud-based claims are not alleged.  Statements made in the HTA Bond Materials were truthful when made.  The 1968 Bond Master Proof of Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

966.    The 1968 Bond Master Proof of Claim's claims of tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, unjust enrichment, equitable or constructive trust, equitable subordination, breach of contract, indemnification, reimbursement, and contribution also fail because the HTA Allocable Revenue Statutes are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim.

967.    Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent

conveyance, misrepresentation, unjust enrichment, equitable or constructive trust, equitable

subordination, breach of contract, indemnification, reimbursement, or contribution.

## COUNT CLXV

1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM
PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES
BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND
19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

968.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-192, as if fully set forth herein.

969.    The 1968 Bond Master Proof of Claim asserts a claim against the Commonwealth

based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to

Commonwealth law.

970.    The Commonwealth's retention of the HTA Allocable Revenues pursuant to the

Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by

operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the

Commonwealth Constitution.

971.    Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim

because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was

authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of

the Commonwealth Constitution.

972.    To the extent BNYM, as Fiscal Agent, has an allowable claim for such retention,

the claim is a prepetition general unsecured claim and all assertions of priority and/or secured

status should be disallowed.

## COUNT CLXVI

1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM
PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO CONTRACT WAS
IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

973.    Plaintiff repeats and incorporates by reference each allegation contained in

paragraphs 1-192, as if fully set forth herein.

974.    BNYM, as Fiscal Agent, alleges the Commonwealth's retention of the HTA

Allocable Revenues violates the Contracts Clause, and asserts a claim against the

Commonwealth as a result of the alleged violations.

975.    The Commonwealth's retention of the HTA Allocable Revenues did not violate

the Contracts Clause because the Commonwealth was authorized to retain them under

Commonwealth and federal law, and no contractual right of BNYM's was impaired, as Fiscal

Agent.

976.    Any legislation enacted by the Commonwealth to support retention of the HTA

Allocable Revenues did not originate the Commonwealth's power to retain the revenues.  The

legislation carried out the Commonwealth's preexisting rights and duties to retain the HTA

Allocable Revenues.

977.    Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim

because there has been no impairment of BNYM's contractual rights, as Fiscal Agent. In the

alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal

Agent, based on the Contracts Clause is a prepetition unsecured claim that is dischargeable.

## COUNT CLXVII

1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM
PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO LEGISLATION
CREATED AN IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

978.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

979.    BNYM, as Fiscal Agent, alleges the Commonwealth's retention of the HTA
Allocable Revenues violates the Contracts Clause of the, and asserts a claim against the
Commonwealth as a result of the alleged violations.

980.    The Commonwealth's retention of the HTA Allocable Revenues did not violate
the Contracts Clause because no Commonwealth legislation was passed that impaired BNYM's
contract rights, as Fiscal Agent, if any.

981.    Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim
because there is no Commonwealth legislation that impaired BNYM's contract rights, as Fiscal
Agent, if any.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held
by BNYM, as Fiscal Agent, based on the Contracts Clause is a prepetition, unsecured,
dischargeable claim.

## COUNT CLXVIII

1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM
PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE THE COMMONWEALTH'S
RETENTION OF THE HTA ALLOCABLE REVENUES WAS DUE TO PROMESA, NOT
LEGISLATION
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

982.    Plaintiff repeats and incorporates by reference each allegation contained in
paragraphs 1-192, as if fully set forth herein.

983.    BNYM, as Fiscal Agent, alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

984.    The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.

985.    Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal Agent, based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT CLXIX

### 1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM PREDICATED ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE BNYM, AS FISCAL AGENT, DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

986.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

987.    BNYM, as Fiscal Agent, asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

988.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute a taking because BNYM, as Fiscal Agent, has no property interest in the HTA Allocable Revenues.

989.    Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim because BNYM, as Fiscal Agent, has no property interest in the HTA Allocable Revenues and

therefore cannot assert a takings claim.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal Agent, based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT CLXX

**1968 BONDS**: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM PREDICATED ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE BNYM, AS FISCAL AGENT, HAD A REASONABLE EXPECTATION THE COMMONWEALTH WOULD RETAIN THE HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

990.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

991.    BNYM, as Fiscal Agent, asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

992.    The Commonwealth's retention of the HTA Allocable Revenues does not constitute an impermissible taking because such retention did not interfere with BNYM's reasonable expectations, as Fiscal Agent.

993.    BNYM, as Fiscal Agent, knew or should have known, pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the HTA Allocable Revenue Statutes, and the HTA Bond Materials, that the HTA Allocable Revenues were subject to the Commonwealth's retention.

994.    Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues did not interfere with BNYM's reasonable expectations, as Fiscal Agent, regarding the HTA Allocable Revenues.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal Agent, based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT CLXXI

1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM
PREDICATED ON CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

995.    Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

996.    BNYM, as Fiscal Agent, alleges the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause, and asserts a claim against the Commonwealth as a result of the alleged violation.

997.    BNYM, as Fiscal Agent, filed a proof of claim pursuant to a court-supervised process in which it can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.

998.    The 1968 Bond Master Proof of Claim does not assert any additional basis on which the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause separate from its Takings Clause claim.

999.    Because the 1968 Bond Master Proof of Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, BNYM's Due Process claim should be disallowed because it has no property rights in the HTA Allocable Revenues retained by the Commonwealth.

1000.   Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues did not violate the Due Process Clause.

## COUNT CLXXII

### 1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM BASED ON PROMESA SECTION 407
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

1001.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1002.   The 1968 Bond Master Proof of Claim asserts claims under PROMESA section 407(a).

1003.   BNYM, as Fiscal Agent, does not have a claim under PROMESA section 407(a) because the HTA Allocable Revenues were not property of any territorial instrumentality transferred in violation of applicable law, nor does BNYM, as Fiscal Agent, have any security interest against the HTA Allocable Revenues.

1004.   BNYM, as Fiscal Agent, also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only HTA has a claim for the transferred property against the transferee.

1005.   Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim based on PROMESA section 407(a).

## COUNT CLXXIII

### 1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM FOR POSTPETITION INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO BANKRUPTCY CODE SECTION 502(b)(2)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

1006.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1007.   The 1968 Bond Master Proof of Claim asserts claims for postpetition interest and other postpetition costs.

1008.   Pursuant to Bankruptcy Code section 502(b), BNYM's claims, as Fiscal Agent, for postpetition interest must be disallowed.

1009.   Pursuant to section 506, BNYM's claims, as Fiscal Agent, for costs and expenses must be disallowed to the extent not provided for by the 1968 Resolution, 1998 Resolution or other applicable agreement, and to the extent provided for, must be allowed as prepetition general unsecured claims to the extent its collateral value does not exceed all unpaid principal and interest on the bonds it owns.

## COUNT CLXXIV

<u>1968 BONDS</u>: JUDGMENT DISALLOWING BNYM'S SECURED CLAIM, AS FISCAL AGENT
(11 U.S.C. § 502)

1010.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1011.   BNYM, as Fiscal Agent, has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory liens against any property in which the Commonwealth has an interest, nor has BNYM, as Fiscal Agent, perfected any alleged security interest if any, as against the Commonwealth.

1012.   Plaintiff is entitled to judgment disallowing BNYM's claim that BNYM, as Fiscal Agent, possesses a secured claim against the HTA Allocable Revenues.

## COUNT CLXXV

<u>1968 BONDS</u>: JUDGMENT DISALLOWING AND AVOIDING 1968 BOND MASTER PROOF OF CLAIM ASSERTING PERFECTED SECURITY INTERESTS PURSUANT TO BANKRUPTCY CODE SECTION 502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

1013.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1014.  The 1968 Bond Master Proof of Claim asserts the Bonds it holds are secured by a perfected security interest against the HTA Allocable Revenues held by the Commonwealth.

1015.  BNYM, as Fiscal Agent, does not have control over any deposit accounts, including the 1968 Sinking Fund or the 1998 Resolution Funds, or in any other funds held by the Commonwealth.

1016.  No financing statements were filed against the Commonwealth regarding the Bonds.

1017.  Plaintiff is entitled to judgment disallowing BNYM's claim, as Fiscal Agent, for a perfected security interest against the Bonds as against the Commonwealth.

## <u>COUNT CLXXVI</u>

<u>1968 BONDS</u>: JUDGMENT DISALLOWING BNYM'S PRIORITY CLAIM, AS FISCAL
AGENT
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

1018.  Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1019.  The 1968 Bond Master Proof of Claim asserts amounts due to BNYM, as Fiscal Agent, are entitled to priority over other unsecured claims.

1020.  BNYM, as Fiscal Agent, does not have a priority claim under Commonwealth law.  Moreover, even if BNYM, as Fiscal Agent, had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

1021.  BNYM, as Fiscal Agent, does not have an administrative expense claim pursuant to PROMESA section 507.  None of BNYM's claims, as Fiscal Agent, are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

1022.   Plaintiff is entitled to judgment disallowing all priorities asserted for the 1968 Bond Master Proof of Claim.

## COUNT CLXXVII

1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM TO A SECURITY INTEREST AGAINST REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

1023.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1024.   The 1968 Bond Master Proof of Claim asserts HTA Allocable Revenues collected postpetition are subject to BNYM's purported security interest, as Fiscal Agent.

1025.   BNYM, as Fiscal Agent, does not have a valid or perfected security interest against the HTA Allocable Revenues.  Even if it did, such security interest would not attach to moneys collected postpetition.

1026.   Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim regarding its purported security interest against any and all postpetition HTA Allocable Revenues retained by the Commonwealth.

## COUNT CLXXVIII

1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM ASSERTING BONDS ARE SECURED AGAINST SPECIAL REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 902)

1027.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1028.   The 1968 Bond Master Proof of Claim asserts all HTA Allocable Revenues allegedly securing the Bonds are "special revenues" as defined in Bankruptcy Code section 902(2).

183

1029.  The HTA Allocable Revenues are not "special revenues" as defined in Bankruptcy Code section 902(2).

1030.  None of the Bonds allegedly held by BNYM, as Fiscal Agent, are secured by a security interest against any "special revenues."

1031.  The Oversight Board is entitled to judgment disallowing the 1968 Bond Master Proof of Claim asserting the Bonds BNYM allegedly holds, as Fiscal Agent, are secured against "special revenues" as defined in Bankruptcy Code section 902(2).

## COUNT CLXXIX

1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM OF
OWNERSHIP IN HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

1032.  Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1033.  The 1968 Bond Master Proof of Claim asserts the HTA Allocable Revenues are owned by the Bondholders.

1034.  None of the HTA Allocable Revenue Statutes or HTA Bond Materials provide Defendants an ownership interest in HTA Allocable Revenues possessed by the Commonwealth, including under any trust or agency theory.

1035.  Plaintiff is entitled to judgment disallowing claims to an ownership interest asserted in the 1968 Bond Master Proof of Claim, including an ownership interest based on trust or agency theories.

## COUNT CLXXX

1968 BONDS: JUDGMENT DISALLOWING 1968 BOND MASTER PROOF OF CLAIM
FOR BREACH OF THE HTA NON-IMPAIRMENT PROVISION
(11 U.S.C. § 502)

1036.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs [   ] – [   ], as if fully set forth herein.

1037.   The 1968 Bond Master Proof of Claim asserts the Commonwealth's retention of the HTA Allocable Revenues constitutes a breach of the HTA Non-Impairment Provision.

1038.   The Commonwealth has not breached the HTA Non-Impairment Provision because it has not limited or altered any rights conferred to HTA.  The Commonwealth never repealed or amended the Enabling Act, or passed any legislation that conflicts with the powers granted to HTA.

1039.   The Commonwealth's retention of the HTA Allocable Revenues does not limit or alter HTA's rights to the HTA Allocable Revenues as such rights were always conditional and subject to Section 8 Article VI of the Commonwealth Constitution.

1040.   The Commonwealth's retention of the HTA Allocable Revenues pursuant to the fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption of the Enabling Act's conditional appropriation of the HTA Allocable Revenues.

1041.   Plaintiff is entitled to judgment disallowing the 1968 Bond Master Proof of Claim because there has been no breach of the HTA Non-Impairment Provision.

## OBJECTIONS TO 1998 BOND MASTER PROOF OF CLAIM

### COUNT CLXXXI

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
BECAUSE BNYM, AS FISCAL AGENT, LACKS STANDING TO ASSERT A CLAIM
AGAINST THE COMMONWEALTH AS TO THE BONDS
(11 U.S.C. §§ 501, 502)

1042.  Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1043.  The 1998 Bond Master Proof of Claim must be disallowed because BNYM, as Fiscal Agent, does not have any "right to payment" from the Commonwealth, or any interest in any right to payment, and therefore does not have or possess an allowable claim against the Commonwealth under the Bankruptcy Code or Commonwealth law.  Without an enforceable obligation against the Commonwealth as to the HTA Allocable Revenues, BNYM, as Fiscal Agent, does not have standing to assert a claim against the Commonwealth.

1044.  Further, BNYM, as Fiscal Agent, lacks derivative standing to assert any claims against the Commonwealth for its retention of the HTA Allocable Revenues.

1045.  Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim in its entirety, as BNYM, as Fiscal Agent, does not have standing to assert a claim against the Commonwealth because it lacks any interest in an enforceable obligation from the Commonwealth, a corresponding right to payment, and a claim as defined by Bankruptcy Code section 101(5).

## <u>COUNT CLXXXII</u>

<u>1998 BONDS</u>: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES
BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE VI, SECTION 8 OF
THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

1046.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1047.   The 1998 Bond Master Proof of Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

1048.   The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of Article VI, Section 8 of the Commonwealth Constitution, and pursuant to the HTA Allocable Revenue Statutes, which provide the HTA Allocable Revenues are "available resources" of the Commonwealth.

1049.   The obligation of the Commonwealth, if any, to appropriate the HTA Allocable Revenues to HTA, as well as all other obligations related to the Bonds, were subject to Article VI, Section 8 of the Commonwealth Constitution.

1050.   Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by Article VI, Section 8 of the Commonwealth Constitution.

## COUNT CLXXXIII

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES
BECAUSE THE HTA ALLOCABLE REVENUE STATUTES WERE PREEMPTED BY
PROMESA
(48 U.S.C. §§ 2103, 2141, 2142; 11 U.S.C. § 502)

1051.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1052.   The 1998 Bond Master Proof of Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

1053.   The Commonwealth's retention of the HTA Allocable Revenues following the passage of PROMESA does not give rise to a claim against the Commonwealth because the statutes creating an obligation of the Commonwealth to appropriate and transfer the HTA Allocable Revenues were preempted by PROMESA.  Appropriations under Commonwealth law were inconsistent with PROMESA's provisions granting the Oversight Board complete power over fiscal plans and budget appropriations

1054.   Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim because the Commonwealth's obligation to appropriate and transfer the HTA Allocable Revenues was preempted.

## COUNT CLXXXIV

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES
FOR BREACH OF CONTRACT
(11 U.S.C. § 502)

1055.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1056.   The 1998 Bond Master Proof of Claim asserts a breach of contract claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues.

1057.   The Commonwealth is not liable for any breach of contract to BNYM, as Fiscal Agent.  The Commonwealth is not a party to any contract with BNYM (including the HTA Bond Materials), as Fiscal Agent. The Commonwealth does not owe any contractual obligations to or enforceable by BNYM, as Fiscal Agent, regarding payment on the Bonds.

1058.   Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute a breach of a Commonwealth contract.

## COUNT CLXXXV

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES
FOR COMMON LAW TORT CLAIMS
(11 U.S.C. § 502)

1059.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1060.   The 1998 Bond Master Proof of Claim asserts various tort-based claims—including tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, unjust enrichment, equitable or constructive trust, equitable subordination, breach of contract, indemnification, reimbursement, and contribution—which all purportedly arise out of the Commonwealth's retention of the HTA Allocable Revenues.

1061.   The Commonwealth's retention of the HTA Allocable Revenues was lawful under pre-PROMESA laws and PROMESA, and the Commonwealth is not liable to BNYM, as Fiscal Agent, for any tort claims under any theory.

1062. The 1998 Bond Master Proof of Claim's conversion claim fails because (*i*) BNYM, as Fiscal Agent, does not have a security interest against any Commonwealth funds and any HTA funds beyond moneys actually received by HTA from the Commonwealth and deposited in the 1998 Sinking Funds and the 1998 Resolution Funds, (*ii*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA prior to the passage of PROMESA was proper under the Pre-PROMESA Retention Actions, (*iii*) the Bondholders do not have any other property interest in the HTA Allocable Revenues, and (*iv*) the Commonwealth's retention of HTA Allocable Revenues not appropriated and transferred to HTA after the enactment of PROMESA was proper because the HTA Allocable Revenue Statutes were preempted.

1063. The 1998 Bond Master Proof of Claim's tortious interference with contract claim fails because (*i*) from the enactment of PROMESA the Commonwealth acted properly and lawfully in authorizing the retention of the HTA Allocable Revenues due to preemption of the HTA Allocable Revenue Statutes, and (*ii*) before enactment of PROMESA there was no breach of contract with respect to any alleged failure to make payment on the Bonds because payments were subject to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution.

1064. The 1998 Bond Master Proof of Claim's claims of tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, unjust enrichment, equitable or constructive trust, equitable subordination, breach of contract, indemnification, reimbursement, and contribution fail because (*i*) they are not alleged with specificity, (*ii*) the Commonwealth did not make any material misstatements of fact, (*iii*) the Commonwealth did not engage in any fraudulent conduct, and (*iv*) the required elements of such

fraud-based claims are not alleged.  Statements made in the HTA Bond Materials were truthful when made.  The 1998 Bond Master Proof of Claim also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

1065.  The 1998 Bond Master Proof of Claim's claims of tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, unjust enrichment, equitable or constructive trust, equitable subordination, breach of contract, indemnification, reimbursement, and contribution also fail because the HTA Allocable Revenue Statutes are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim.

1066.  Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues did not constitute tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, unjust enrichment, equitable or constructive trust, equitable subordination, breach of contract, indemnification, reimbursement, or contribution.

## COUNT CLXXXVI

<u>1998 BONDS</u>: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM PREDICATED ON UNLAWFUL RETENTION OF THE HTA ALLOCABLE REVENUES BECAUSE SUCH RETENTION WAS AUTHORIZED BY ARTICLE II, SECTIONS 18 AND 19 OF THE COMMONWEALTH CONSTITUTION
(11 U.S.C. § 502)

1067.  Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1068.   The 1998 Bond Master Proof of Claim asserts a claim against the Commonwealth based on the Commonwealth's retention of the HTA Allocable Revenues pursuant to Commonwealth law.

1069.   The Commonwealth's retention of the HTA Allocable Revenues pursuant to the Pre-PROMESA Retention Actions does not give rise to a claim against the Commonwealth by operation of the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

1070.   Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues prior to PROMESA was authorized by the Commonwealth's police powers as stated in Article II, Sections 18 and 19 of the Commonwealth Constitution.

1071.   To the extent BNYM, as Fiscal Agent, has an allowable claim for such retention, the claim is a prepetition general unsecured claim and all assertions of priority and/or secured status should be disallowed.

## COUNT CLXXXVII

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO CONTRACT WAS
IMPAIRED
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

1072.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1073.   BNYM, as Fiscal Agent, alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

1074.   The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth was authorized to retain them under Commonwealth and federal law, and no contractual right of BNYM's was impaired, as Fiscal Agent.

1075.   Any legislation enacted by the Commonwealth to support retention of the HTA Allocable Revenues did not originate the Commonwealth's power to retain the revenues.  The legislation carried out the Commonwealth's preexisting rights and duties to retain the HTA Allocable Revenues.

1076.   Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim because there has been no impairment of BNYM's contractual rights, as Fiscal Agent. In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal Agent, based on the Contracts Clause is a prepetition unsecured claim that is dischargeable.

## COUNT CLXXXVIII

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE NO LEGISLATION CREATED AN IMPAIRMENT
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

1077.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1078.   BNYM, as Fiscal Agent, alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

1079.   The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because no Commonwealth legislation was passed that impaired BNYM's contract rights, as Fiscal Agent, if any.

1080.   Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim because there is no Commonwealth legislation that impaired BNYM's contract rights, as Fiscal Agent, if any.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal Agent, based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT CLXXXIX

<u>1998 BONDS</u>: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
PREDICATED ON CLAIMS OF VIOLATIONS OF THE CONTRACTS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE THE COMMONWEALTH'S
RETENTION OF THE HTA ALLOCABLE REVENUES WAS DUE TO PROMESA, NOT
LEGISLATION
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

1081.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1082.   BNYM, as Fiscal Agent, alleges the Commonwealth's retention of the HTA Allocable Revenues violates the Contracts Clause, and asserts a claim against the Commonwealth as a result of the alleged violations.

1083.   The Commonwealth's retention of the HTA Allocable Revenues did not violate the Contracts Clause because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.

1084.   Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues was due to PROMESA and not legislation.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal Agent, based on the Contracts Clause is a prepetition, unsecured, dischargeable claim.

## COUNT CXC

<u>1998 BONDS</u>: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
PREDICATED ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE BNYM, AS FISCAL AGENT,
DOES NOT HOLD A PROPERTY INTEREST
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

1085.  Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1086.  BNYM, as Fiscal Agent, asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

1087.  The Commonwealth's retention of the HTA Allocable Revenues does not constitute a taking because BNYM, as Fiscal Agent, has no property interest in the HTA Allocable Revenues.

1088.  Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim because BNYM, as Fiscal Agent, has no property interest in the HTA Allocable Revenues and therefore cannot assert a takings claim.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal Agent, based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT CXCI

<u>1998 BONDS</u>: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
PREDICATED ON VIOLATIONS OF THE TAKINGS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS BECAUSE BNYM, AS FISCAL AGENT,
HAD A REASONABLE EXPECTATION THE COMMONWEALTH WOULD RETAIN THE
HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

1089.  Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1090.  BNYM, as Fiscal Agent, asserts the Commonwealth's lawful retention of HTA Allocable Revenues constitutes a taking.

1091.  The Commonwealth's retention of the HTA Allocable Revenues does not constitute an impermissible taking because such retention did not interfere with BNYM's reasonable expectations, as Fiscal Agent.

1092.  BNYM, as Fiscal Agent, knew or should have known, pursuant to Article VI, Section 8 and Article II, Sections 18 and 19 of the Commonwealth Constitution, the HTA Allocable Revenue Statutes, and the HTA Bond Materials, that the HTA Allocable Revenues were subject to the Commonwealth's retention.

1093.  Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues did not interfere with BNYM's reasonable expectations, as Fiscal Agent, regarding the HTA Allocable Revenues.  In the alternative, Plaintiff is entitled to a judgment declaring any valid claim held by BNYM, as Fiscal Agent, based on the Takings Clause is a prepetition unsecured, dischargeable claim.

## COUNT CXCII

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
PREDICATED ON CLAIMS OF VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE
COMMONWEALTH AND U.S. CONSTITUTIONS
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

1094.  Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1095. BNYM, as Fiscal Agent, alleges the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause, and asserts a claim against the Commonwealth as a result of the alleged violation.

1096.  BNYM, as Fiscal Agent, filed a proof of claim pursuant to a court-supervised process in which it can receive a distribution based on any allowed claim in due course pursuant to a confirmed plan of adjustment.

1097.  The 1998 Bond Master Proof of Claim does not assert any additional basis on which the Commonwealth's retention of HTA Allocable Revenues constitutes a violation of the Due Process Clause separate from its Takings Clause claim.

1098.  Because the 1998 Bond Master Proof of Claim does not assert any independent basis for its Due Process claim beyond the basis for its Takings Clause claim, BNYM's Due Process claim should be disallowed because it has no property rights in the HTA Allocable Revenues retained by the Commonwealth.

1099.  Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim because the Commonwealth's retention of the HTA Allocable Revenues did not violate the Due Process Clause.

### COUNT CXCIII

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
BASED ON PROMESA SECTION 407
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. §§ 2161, 2195; 11 U.S.C. § 502)

1100.  Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1101.  The 1998 Bond Master Proof of Claim asserts claims under PROMESA section 407(a).

1102.  BNYM, as Fiscal Agent, does not have a claim under PROMESA section 407(a) because the HTA Allocable Revenues were not property of any territorial instrumentality transferred in violation of applicable law, nor does BNYM, as Fiscal Agent, have any security interest against the HTA Allocable Revenues.

197

1103.   BNYM, as Fiscal Agent, also does not have standing to assert a claim—if a valid claim existed—under PROMESA section 407(a), because only HTA has a claim for the transferred property against the transferee.

1104.   Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim based on PROMESA section 407(a).

## COUNT CXCIV

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
FOR POSTPETITION INTEREST AND OTHER POSTPETITION COSTS PURSUANT TO
BANKRUPTCY CODE SECTION 502(b)(2)
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

1105.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1106.   The 1998 Bond Master Proof of Claim asserts claims for postpetition interest and other postpetition costs.

1107.   Pursuant to Bankruptcy Code section 502(b), BNYM's claims, as Fiscal Agent, for postpetition interest must be disallowed.

1108.   Pursuant to section 506, BNYM's claims, as Fiscal Agent, for costs and expenses must be disallowed to the extent not provided for by the 1998 Resolution, 1998 Resolution or other applicable agreement, and to the extent provided for, must be allowed as prepetition general unsecured claims to the extent its collateral value does not exceed all unpaid principal and interest on the bonds it owns.

## COUNT CXCV

1998 BONDS: JUDGMENT DISALLOWING BNYM'S SECURED CLAIM, AS FISCAL
AGENT
(11 U.S.C. § 502)

1109.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1110.   BNYM, as Fiscal Agent, has no valid secured claim against the Commonwealth as it was neither granted any security interest nor holds any statutory liens against any property in which the Commonwealth has an interest, nor has BNYM, as Fiscal Agent, perfected any alleged security interest if any, as against the Commonwealth.

1111.   Plaintiff is entitled to judgment disallowing BNYM's claim that BNYM, as Fiscal Agent, possesses a secured claim against the HTA Allocable Revenues.

## COUNT CXCVI

1998 BONDS: JUDGMENT DISALLOWING AND AVOIDING 1998 BOND MASTER
PROOF OF CLAIM ASSERTING PERFECTED SECURITY INTERESTS PURSUANT TO
BANKRUPTCY CODE SECTION 502(d)
(48 U.S.C. § 2161; 11 U.S.C. §§ 502, 544)

1112.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1113.   The 1998 Bond Master Proof of Claim asserts the Bonds it holds are secured by a perfected security interest against the HTA Allocable Revenues held by the Commonwealth.

1114.   BNYM, as Fiscal Agent, does not have control over any deposit accounts, including the 1998 Sinking Funds or the 1998 Resolution Funds, or in any other funds held by the Commonwealth.

1115.   No financing statements were filed against the Commonwealth regarding the Bonds.

1116.   Plaintiff is entitled to judgment disallowing BNYM's claim, as Fiscal Agent, for a perfected security interest against the Bonds as against the Commonwealth.

### COUNT CXCVII

1998 BONDS: JUDGMENT DISALLOWING BNYM'S PRIORITY CLAIM, AS FISCAL AGENT
(48 U.S.C. §§ 2103, 2161; 11 U.S.C. § 502)

1117.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1118.   The 1998 Bond Master Proof of Claim asserts amounts due to BNYM, as Fiscal Agent, are entitled to priority over other unsecured claims.

1119.   BNYM, as Fiscal Agent, does not have a priority claim under Commonwealth law.  Moreover, even if BNYM, as Fiscal Agent, had a priority under Commonwealth law (not based on a lien), such a priority is not recognized in PROMESA Title III.

1120.   BNYM, as Fiscal Agent, does not have an administrative expense claim pursuant to PROMESA section 507.  None of BNYM's claims, as Fiscal Agent, are for the actual and necessary expenses of preserving the Commonwealth's property for purposes of Bankruptcy Code sections 507(a)(2) and 503(b).

1121.   Plaintiff is entitled to judgment disallowing all priorities asserted for the 1998 Bond Master Proof of Claim.

### COUNT CXCVIII

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM TO A SECURITY INTEREST AGAINST REVENUES COLLECTED POSTPETITION AND/OR RIGHTS TO RECEIVE REVENUES ARISING POSTPETITION PURSUANT TO BANKRUPTCY CODE SECTION 552
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. §§ 502, 552)

1122.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1123.   The 1998 Bond Master Proof of Claim asserts HTA Allocable Revenues collected postpetition are subject to BNYM's purported security interest, as Fiscal Agent.

1124.   BNYM, as Fiscal Agent, does not have a valid or perfected security interest against the HTA Allocable Revenues.  Even if it did, such security interest would not attach to moneys collected postpetition.

1125.   Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim regarding its purported security interest against any and all postpetition HTA Allocable Revenues retained by the Commonwealth.

### COUNT CXCIX

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
ASSERTING BONDS ARE SECURED AGAINST SPECIAL REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 902)

1126.   Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1127.   The 1998 Bond Master Proof of Claim asserts all HTA Allocable Revenues allegedly securing the Bonds are "special revenues" as defined in Bankruptcy Code section 902(2).

1128.   The HTA Allocable Revenues are not "special revenues" as defined in Bankruptcy Code section 902(2).

1129.   None of the Bonds allegedly held by BNYM, as Fiscal Agent, are secured by a security interest against any "special revenues."

1130.   The Oversight Board is entitled to judgment disallowing the 1998 Bond Master Proof of Claim asserting the Bonds BNYM allegedly holds, as Fiscal Agent, are secured against "special revenues" as defined in Bankruptcy Code section 902(2).

## COUNT CC

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM OF
OWNERSHIP IN HTA ALLOCABLE REVENUES
(28 U.S.C. §§ 2201, 2202; 48 U.S.C. § 2161; 11 U.S.C. § 502)

1131. Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1132. The 1998 Bond Master Proof of Claim asserts the HTA Allocable Revenues are owned by the Bondholders.

1133. None of the HTA Allocable Revenue Statutes or HTA Bond Materials provide Defendants an ownership interest in HTA Allocable Revenues possessed by the Commonwealth, including under any trust or agency theory.

1134. Plaintiff is entitled to judgment disallowing claims to an ownership interest asserted in the 1998 Bond Master Proof of Claim, including an ownership interest based on trust or agency theories.

## COUNT CCI

1998 BONDS: JUDGMENT DISALLOWING 1998 BOND MASTER PROOF OF CLAIM
FOR BREACH OF THE HTA NON-IMPAIRMENT PROVISION
(11 U.S.C. § 502)

1135. Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1-192, as if fully set forth herein.

1136. The 1998 Bond Master Proof of Claim asserts the Commonwealth's retention of the HTA Allocable Revenues constitutes a breach of the HTA Non-Impairment Provision.

1137. The Commonwealth has not breached the HTA Non-Impairment Provision because it has not limited or altered any rights conferred to HTA. The Commonwealth never repealed or amended the Enabling Act, or passed any legislation that conflicts with the powers granted to HTA.

1138.   The Commonwealth's retention of the HTA Allocable Revenues does not limit or alter HTA's rights to the HTA Allocable Revenues as such rights were always conditional and subject to Section 8 Article VI of the Commonwealth Constitution.

1139.   The Commonwealth's retention of the HTA Allocable Revenues pursuant to the fiscal plans and budgets certified by the Oversight Board is a result of PROMESA's preemption of the Enabling Act's conditional appropriation of the HTA Allocable Revenues.

1140.   Plaintiff is entitled to judgment disallowing the 1998 Bond Master Proof of Claim because there has been no breach of the HTA Non-Impairment Provision.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays that judgment be entered in its favor and against Defendants, and each of them, as follows:

A.      Disallowing each and every one of Defendants' Proofs of Claim regarding the bonds other than the Fiscal Agents' Master Proofs of Claim as duplicative of the Fiscal Agent's Master Proofs of Claim;

B.      Disallowing each and every one of Defendants' Proofs of Claim as Defendants lack standing to assert claims against the Commonwealth with respect to the Bonds;

C.      Disallowing each and every one of Defendants' Proofs of Claim asserting subrogation rights exceeding the amount paid by Defendants to Bondholders or otherwise subordinating Defendants' Proofs of Claim to the claims of Bondholders pursuant to Bankruptcy Code section 509(c);

D.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth based on retention of the HTA Allocable Revenues;

E.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth predicated on the Contracts Clause of the Commonwealth and U.S. Constitutions;

F.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth predicated on the Takings Clause of the Commonwealth and U.S. Constitutions;

G.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth predicated on the Due Process Clause of the Commonwealth and U.S. Constitutions;

H.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims against the Commonwealth pursuant to PROMESA section 407(a);

I.      Disallowing each and every one of Defendants' Proofs of Claim asserting claims for postpetition interest and other postpetition costs pursuant to Bankruptcy Code section 502(b)(2);

J.      Disallowing each and every one of Defendants' Proofs of Claim asserting secured claims against the Commonwealth related to the HTA Allocable Revenues;

K.      Disallowing each and every one of Defendants' Proofs of Claim asserting perfected security interests against the Commonwealth pursuant to Bankruptcy Code section 502(d);

L.      Disallowing each and every one of Defendants' Proofs of Claim asserting priority claims against the Commonwealth related to the HTA Allocable Revenues;

M.      Disallowing each and every one of Defendants' Proofs of Claim asserting a security interest against the Commonwealth based on revenues collected postpetition and/or rights to receive revenues arising postpetition pursuant to Bankruptcy Code section 552;

N.      Disallowing each and every one of Defendants' Proofs of Claim asserting Bonds are secured against "special revenues" as defined in Bankruptcy Code section 902(b);

O.      Disallowing each and every one of Defendants' Proofs of Claim regarding the Bonds asserting an ownership interest in the HTA Allocable Revenues;

P.      Disallowing each and every one of Defendants' Proofs of Claim asserting a breach of the HTA Non-Impairment Provision; and

Q.      Granting such other and further relief as the Court deems just and proper.

*[Remainder of page intentionally left blank]*

Dated: January 16, 2020
       San Juan, Puerto Rico

Respectfully submitted,


*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:   (787) 764-8181
Fax:   (787) 753-8944
Email: hermann.bauer@oneillborges.com


*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Jeffrey Levitan
Timothy W. Mungovan
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:   (212) 969-3000
Fax:   (212) 969-2900
Email: mbienenstock@proskauer.com
       jlevitan@proskauer.com
       tmungovan@proskauer.com
       ebarak@proskauer.com


Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:   (310) 557-2900
Fax:   (310) 557-2193
Email: mfirestein@proskauer.com
       lrappaport@proskauer.com


*Attorneys for the Financial
Oversight and Management Board
as Representative of the Commonwealth*