# **EXHIBIT 4**

# PLEDGE AND ASSIGNMENT AGREEMENT
## by and among

### PUERTO RICO CONVENTION CENTER DISTRICT AUTHORITY,
### GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO

and

### JPMORGAN CHASE BANK, N.A.

Dated March 24, 2006

relating to:

**Puerto Rico Convention Center District Authority
Hotel Occupancy Tax Revenue Bonds**

DM3\321190.13

## PLEDGE AGREEMENT

**THIS PLEDGE AND ASSIGNMENT AGREEMENT** (this "Pledge Agreement"), dated March 24, 2006, by and among GOVERNMENT DEVELOPMENT BANK for PUERTO RICO ("GDB"), PUERTO RICO CONVENTION CENTER DISTRICT AUTHORITY (the "Authority"), and JPMORGAN CHASE BANK, N.A., as Trustee under the Trust Agreement (as hereinafter defined) (the "Trustee");

In consideration of the foregoing and of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

**Section 1.** All capitalized terms used herein shall have the meanings set forth in the Trust Agreement, dated March 24, 2006 (the "Trust Agreement") by and between Authority and the Trustee, unless otherwise indicated.

**Section 2.** (a) In furtherance of the pledges set forth in the Assignment Agreement and the Occupancy Tax Act, GDB hereby creates and establishes a special and irrevocable account designated as the "Hotel Occupancy Tax Pledge Account" (the "Pledge Account") to be held in trust by GDB on behalf of the Authority for the benefit of the Owners of the Bonds, separate and apart from other funds of GDB.

(b) Each of GDB and the Authority does hereby grant, bargain, convey, assign, mortgage and pledge a security interest to the Trustee, as trustee under the Trust Agreement and for the benefit of the Owners of the Bonds, free and clear of all prior or parity liens, pledges and security interests, subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico, to be used solely for the payment of the interest and the amortization of the public debt, as provided in Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico, but only to the degree to which the other

available resources to which reference is made in said Section are insufficient for such purposes, (i) all Hotel Occupancy Tax Funds received from the Tourism Company, (ii) all moneys deposited in or required to be deposited in the Pledge Account pursuant to the provisions of this Pledge Agreement, and (iii) all right title and interest of GDB in the Assignment Agreement.

(c) Each of GDB and the Authority hereby agrees that it will not grant, assign, or pledge, nor allow, permit or suffer to exist any prior or parity lien on or security interest in the items pledged pursuant to Section 2(b) above or any investments thereof or earnings thereon in favor of any creditor of GDB, the Authority or any other Person other than (1) the liens created by this Pledge Agreement and (2) the pledge set forth in Section 2(b) above.

**Section 3.** (a) GDB hereby agrees that, so long as there are any Bonds Outstanding under the Trust Agreement, to deposit or cause to be deposited into the Pledge Account, all Hotel Occupancy Tax Funds received from the Tourism Company as received but in no event later than 12:00 noon, New York time, on the next Business Day immediately following the Business Day on which such Hotel Occupancy Tax Funds are received by GDB.

(b) Amounts deposited in the Pledge Account are to be held by GDB to provide for the following deposits (in order of priority):

(1) GDB will make payments to the Commonwealth of Puerto Rico as set forth in Section 2(b) above when required in accordance with Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico;

(2) GDB shall on each calendar month no later than 12:00 noon, New York time on the third Business Day immediately following the Business Day on which Hotel Occupancy Tax Funds are received by it, transfer or cause to be transferred to the Trustee, all Hotel Occupancy Tax Funds then deposited to the Pledge Account. The Trustee shall

3

DM3\321190.13

promptly deposit such funds into the Accounts established in Sections 5.02, 5.04, 5.05 and 5.06 of the Trust Agreement (in accordance with and in the order of priority set forth in Section 5.01 of the Trust Agreement) as set forth in the GDB Certificate authorized in Section 3(b)(3) hereof.

(c) The GDB Certificate, in the form attached hereto as Exhibit A, is hereby authorized.

**Section 4.** In the event that, as of the close of business on the last Business Day of any calendar month, the aggregate of the monthly amounts transferred by the Tourism Company to GDB during the related Fiscal Year is less than the aggregate of the monthly amounts required to be transferred under the GDB Certificate for such period, GDB and the Trustee shall promptly and in any event no later than the next Business Day send a written notice of such deficiency (the "Deficiency Notice") and the amount thereof to the Authority, the Tourism Company and the Trustee which notice shall be sent by telecopier and be promptly confirmed via first class mail.

**Section 5.** (a) GDB agrees with the Authority that it will comply with the direction to it set forth in Section 31 of the Occupancy Tax Act including without limitation the obligation to make the required certifications to the Company and the Authority as required by Subsection (a) of Section 31 of the Occupancy Tax Act.

(b) GDB will diligently enforce its rights under the Assignment Agreement including its enforcement of the Hotel Occupancy Tax Funds transfer obligation of the Company

**Section 6.** This Pledge Agreement, the Pledge Account and the security interest in the moneys in the items set forth in Section 2(b) hereof shall remain in full force and effect and shall not be terminated or revoked so long as there are any Bonds Outstanding under the terms of the Trust Agreement and any Supplemental Trust Agreement. Upon all Bonds having been paid

DM3\321190.13

or deemed paid, in accordance with Section 10.01 of the Trust Agreement, this Agreement shall terminate and any moneys remaining in the Pledge Account at the time of such termination shall be released to the Authority.

**Section 7.** So long as GDB applies the moneys as provided herein, and complies fully with the terms of this Agreement, GDB shall not be liable for any deficiencies in the amounts necessary to pay the Bonds.

**Section 8.** If any one or more of the covenants or agreements provided in this Pledge Agreement by or on behalf of GDB, the Authority or the Trustee to be performed should be determined by a court of competent jurisdiction to be contrary to law, such covenant or agreement shall be deemed and construed to be severable from the remaining covenants and agreements herein contained and shall in no way affect the validity of the remaining provisions of this Agreement.

**Section 9.** If any section, paragraph, sentence, clause or provision of this Pledge Agreement shall for any reason be held to be invalid or unenforceable, the invalidity or unenforceability of such section, paragraph, sentence, clause or provision shall not affect any of the remaining provisions of this Pledge Agreement. GDB shall provide the Company, the Authority and the Trustee with written notice if any section, paragraph, sentence, clause or provision of the Pledge Agreement should be held to be invalid or unenforceable. Such written notices shall be mailed at the addresses set forth below:

**Section 10.** All the covenants, promises and agreements contained in this Agreement by or on behalf of GDB, the Authority or the Trustee shall bind and inure to the benefit of their respective successors and assigns, whether so expressed or not. Any successor trustee under the Trust Agreement and any Supplemental Trust Agreement without further act

5

shall be successor Trustee hereunder unless GDB or the Authority has otherwise appointed a successor Trustee. The predecessor Trustee shall pay over or transfer to the successor Trustee any moneys or Government Obligations at the time held by it or on its behalf.

**Section 11.** Except insofar as the duties, powers and authority of the Authority and GDB, its officers and employees are governed by the laws of the Commonwealth of Puerto Rico, this Agreement shall be governed by the applicable law of New York; provided that the venue of any judicial action commenced by the parties other than the Trustees shall be in the Commonwealth of Puerto Rico.

**Section 12.** This Agreement may be executed in several counterparts, all or any of which shall be regarded, for all purposes as one original, and shall constitute and be but one and the same instrument.

**Section 13.** This Agreement may be amended, modified or supplemented only by written instrument executed by GDB, the Authority and the Trustee, and only in accordance with Section 9.04 of the Trust Agreement.

**Section 14.** GDB and the Authority acknowledge and agree that the Agreement shall be part of the Trust Estate under the Trust Agreement, pledged to the Owners of the Bonds and any credit or liquidity provider or interest rate counter party secured under the Trust Agreement.

**Section 15.** The laws of the Commonwealth shall be applied in the interpretation and enforcement of this Pledge Agreement.

**Section 16.** Unless otherwise stated herein, any notice, demand, direction, request or other instrument authorized or required by this Pledge Agreement to be given to or filed with the Authority, GDB or Trustee shall be deemed to have been sufficiently given or filed for all

purposes of this Pledge Agreement if sent by registered mail, return receipt requested (i) to the respective addresses set forth in the Trust Agreement if such notice is being sent to the Trustee or the Authority; (ii) as follows if such notice is being sent to GDB: to Government Development Bank for Puerto Rico, Minillas Government Center, DeDiego Avenue, Stop 22, Santurce, Puerto Rico, 00940; or (iii) to such other address as may hereinafter be provided by written notice given by the Authority, GDB or the Trustee to the other parties.

DM3\321190.13

**IN WITNESS WHEREOF,** the parties hereto have each caused the Pledge Agreement to be executed by their duly authorized officers or elected officials and GDB and the Authority have caused their respective seals to be hereunder affixed and attested as of the date first above written.

GOVERNMENT DEVELOPMENT BANK FOR
PUERTO RICO

By: _____
Jorge Irizarry Herrans
Executive Vice President

PUERTO RICO CONVENTION CENTER
DISTRICT AUTHORITY

By: _____
Manuel Sánchez Biscombe
Executive Director

JPMORGAN CHASE BANK, N.A.,
as Trustee

By: _____
Joanne Adamis
Vice President

8

Affidavit No. 491

Subscribed before me by Jorge Irizarry Herrans, of legal age, married, and resident of San Juan, Puerto Rico, in his capacity as Executive Vice President of Government Development Bank for Puerto Rico, personally known to me; Manuel Sánchez Biscombe, of legal age, married, and resident of San Juan, Puerto Rico, in his capacity as Executive Director of the Puerto Rico Convention Center District Authority, personally known to me; and Joanne Adamis, of legal age, single, and resident of New York, New York, in her capacity as a Vice President of JPMorgan Chase Bank, N.A., personally known to me. In San Juan, Puerto Rico, this 24th day of March 2006.

NOTARY PUBLIC

Affidavit No. 4044 (copy)

Subscribed before me by Manuel Sánchez Biscombe, of legal age, married, and resident of San Juan, Puerto Rico, in his capacity as Executive Director of the Puerto Rico Convention Center District Authority, personally known to me. In San Juan, Puerto Rico, this 24th day of March 2006.



NOTARY PUBLIC

9

DM3\350062.1

# EXHIBIT A

## GDB CERTIFICATE

DM3\321190.13

[Form of]
## Government Development Bank for Puerto Rico Certificate

The undersigned [Authorized Representative] of the Government Development Bank for Puerto Rico ("GDB"), a public corporation of the Commonwealth of Puerto Rico created by Act No. 17 of September 23, 1948, HEREBY CERTIFIES to the Puerto Rico Convention Center District Authority (the "Authority"), the Puerto Rico Tourism Company (the "Tourism Company") and JPMorgan Chase Bank, as Trustee (the "Trustee") under the Trust Agreement, dated March 24, 2006 (the "Trust Agreement") between the Authority and the Trustee (all capitalized terms used but not defined herein shall have the respective meanings set forth in the Trust Agreement) the following.

This Certificate is issued in connection with the payments required for fiscal year ___-___ and the first day of the succeeding fiscal year.

1. The following are the total sums necessary for the Authority to make the following payments, during the upcoming fiscal year and the first day of the second succeeding fiscal year:

I.     (a)   Payments equal to the amount set forth below (after taking into account any amounts then on deposit in the Bond Payment Fund and the Capitalized Interest Account of the Proceeds Fund available therefor) for the full and timely payment, or the amortization, of the principal and interest on the Bonds due on July 1st and January 1st of the immediately succeeding fiscal year and July 1st of the second succeeding fiscal year (including any amounts due in connection with prior payments for which there were insufficient funds):

    Amount necessary for Principal and Interest      $_____

    Offsets due to amounts held in the Earnings Account of the Proceeds Fund (-)

    Offsets due to amounts held in the Bond Payment Fund (-)

    Offsets due to Capitalized Interest in the Proceeds Fund[†] (-)

    Shortfalls due to Hotel Occupancy Tax Funds used pursuant to the provisions of Section 8 Article VI of the Constitution (+)

    Other shortfalls from prior years(+)      $_____

    Total Amount due (the "Total Amount")      $_____

---
[†] First year only

DM3\339975.5

The Total Amount will be paid in monthly installments as set forth below:[*]

| Month | Amount |
|---|---|
| July | $ |
| August | |
| September | |
| October | |
| November | |
| December | |
| January | |
| February | |
| March | |
| April | |
| May | |
| June | |

(b) Full and timely payment of the obligations of the Authority under any Credit Facilities or any Interest Rate Exchange Agreements, which in the future may be entered into by the Authority with the prior written authorization of the Tourism Company;[*]

| Month | Amount |
|---|---|
| July | $ |
| August | |
| September | |
| October | |
| November | |
| December | |
| January | |
| February | |
| March | |
| April | |
| May | |
| June | |

(c) The deposits required to replenish the Debt Service Reserve Fund established under the Trust Agreement;[*] and

| Month | Amount |
|---|---|
| July | $ |
| August | |

---

[*] All amounts set forth in paragraph 1 will be adjusted upward to take into account any shortfalls occurring during the Fiscal Year. This may include payments in May and June of such Fiscal Year together with future Fiscal Years

2

September
October
November
December
January
February
March
April
May
June

    (d) Any other expenses incurred in connection with (i) the issuance of the Bonds, or (ii) with any Credit Facilities or Interest Rate Exchange Agreements.[*]

July
August
September
October
November
December
January
February
March
April
May
June

    2. The total amount due for all amounts set forth in paragraph 1 is $_____.

    3. Amounts set forth in paragraph 1 are in accordance with the provisions set forth in the Trust Agreement and the Assignment and Coordination Agreement, dated as of _____, 2006, by and between the Tourism Company and GDB.

    4. GDB will deposit all Hotel Occupancy Tax Funds as set forth in this Certificate in accordance with the Pledge Agreement.

    5. The Trustee will deposit into the Bond Payment Fund promptly upon receipt but in no event later than the third Business Day after receipt thereof, beginning on the first month of the next suceeding Fiscal Year, an amount sufficient, together (in the case of interest only) with any capitalized interest and accrued interest as set forth in the Proceeds Fund, to pay the amount of interest and principal payable for the year in the amounts set forth below (such annual deposit

---

[*] All amounts set forth in paragraph 1 will be adjusted upward to take into account any shortfalls occurring during the Fiscal Year. This may include payments in May and June of such Fiscal Year together with future Fiscal Years

3

being first satisfied with respect to interest on the Bonds and then with respect to principal on the Bonds):

|  | Principal | Interest |
|---|---|---|
| July |  |  |
| August |  |  |
| September |  |  |
| October |  |  |
| November |  |  |
| December |  |  |
| January |  |  |
| February |  |  |
| March |  |  |
| April |  |  |
| May |  |  |
| June |  |  |

**IN WITNESS WHEREOF**, the undersigned has hereunto set [his][her] official signature and the corporate seal of Government Development Bank for Puerto Rico this May __, _____.

GOVERNMENT DEVELOPMENT
BANK FOR PUERTO RICO

By:_____
   Name:
   Title:

4