# **EXHIBIT P**



**IXIS FINANCIAL GUARANTY**

CDC IXIS Financial Guaranty North America, Inc.
825 Third Avenue, Sixth Floor
New York, NY 10022
For information, contact (212) 909-3939
Toll-free (866) 243-4212

# FINANCIAL GUARANTY INSURANCE POLICY

ISSUER: Puerto Rico Highways and Transportation Authority

Policy No.: CIFG NA-562

CUSIP: 745190TW8, 745190TX6, 745190TY4, 745190TZ1, 745190UA4, 745190UB2, 745190UC0, 745190UD8, 745190UE6, 745190UF3, 745190UR7

Effective Date: October 4, 2005

OBLIGATIONS: $187,785,000 Transportation Revenue Refunding Bonds (Series L)

CDC IXIS FINANCIAL GUARANTY NORTH AMERICA, INC. ("CIFG NA"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY GUARANTEES to each Policyholder, subject only to the terms and conditions of this Policy (which includes each endorsement hereto), the full and complete payment by or on behalf of the Issuer of Regular Payments of principal of and interest on the Obligations.

For the further protection of each Policyholder, CIFG NA irrevocably and unconditionally guarantees:

(1) payment of any amount required to be paid under this Policy by CIFG NA following CIFG NA's receipt of notice and instruments of assignment as described in Endorsement No. 1 hereto and

(2) payment of the amount of any distribution of principal of and interest on the Obligations made during the Term of this Policy to such Policyholder that is subsequently avoided in whole or in part as a preference payment under applicable law, all as described in Endorsement No. 1 hereto.

CIFG NA shall be subrogated to the rights of each Policyholder to receive payments under the Obligations to the extent of any payment by CIFG NA hereunder.

The following terms shall have the meanings specified below, subject to and including any modifications set forth in any endorsement hereto, for all purposes of this Policy.. "Effective Date", "Issuer" and "Obligations" mean, respectively, the Effective Date, Issuer and Obligations referenced above. "Policyholder" means, if the Obligations are in book-entry form, the registered owner or holder of any Obligation as indicated on the registration books maintained by or on behalf of the Issuer for such purpose or, if the Obligations are in bearer form, the holder of any Obligation; provided, however, that any trustee acting on behalf of and for the benefit of such registered owner or holder shall be deemed to be the Policyholder to the extent of such trustee's authority. "Regular Payments" means payments of interest and principal which are agreed to be made during the Term of this Policy in accordance with the original terms of the Obligations when issued and without regard to any amendment or modification of such Obligations thereafter; payments which become due on an accelerated basis as a result of (a) a default by the Issuer or any other person, (b) an election by the Issuer to pay principal or other amounts on an accelerated basis or (c) any other cause, shall not constitute "Regular Payments" unless CIFG NA shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration. "Term of this Policy" has the meaning set forth in Endorsement No. 1 hereto.

This Policy sets forth in full the undertaking of CIFG NA, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto or to the Obligations (except a contemporaneous or subsequent agreement or instrument given by CIFG NA or to which CIFG NA has given its written consent) or by the merger, consolidation or dissolution of the Issuer. The premiums paid in respect of this Policy are nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Obligations prior to maturity. This Policy may not be cancelled or revoked during the Term of this Policy, including for nonpayment of premium due to CIFG NA. Payments under this Policy may not be accelerated except at the sole option of CIFG NA.

In witness whereof, CDC IXIS FINANCIAL GUARANTY NORTH AMERICA, INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

CDC IXIS FINANCIAL GUARANTY NORTH AMERICA, INC.

By _____

Authorized Officer
Robert M. Drillings
**Managing** Director and Assistant Secretary

CIFGNA Bonds-1 (8-04)



**IXIS FINANCIAL GUARANTY**

ENDORSEMENT NO. 1
TO FINANCIAL GUARANTY INSURANCE POLICY NO. CIFG NA-562

CDC IXIS FINANCIAL GUARANTY NORTH AMERICA, INC.

1.      <u>Definitions</u>. For all purposes of this Policy, the terms specified below shall have the meanings or constructions provided below. Capitalized terms used without definition herein shall have the meanings provided in the documents governing the Obligations unless the context shall otherwise require.

"<u>Business Day</u>" means any day (other than a Saturday or Sunday) that in the City of New York is neither a legal holiday nor a day on which banking institutions are authorized or obligated by law or executive order to be closed.

"<u>CIFG NA</u>" means CDC IXIS Financial Guaranty North America, Inc. and its successors and permitted assigns.

"<u>Policy</u>" means this Financial Guaranty Insurance Policy and includes each endorsement thereto.

"<u>Receipt</u>" and "<u>Received</u>" mean actual delivery to each of CIFG NA and the Fiscal Agent (as defined below), if any, prior to 12:00 noon, New York City time, on a Business Day; delivery either on a day that is not a Business Day, or after 12:00 noon, New York City time, shall be deemed to be Receipt on the next succeeding Business Day. If any notice or certificate given hereunder by the Policyholder is not in proper form or is not properly completed, executed or delivered in all material respects, it shall be deemed not to have been Received, and CIFG NA or its Fiscal Agent shall promptly so advise the Policyholder and the Policyholder may submit an amended notice.

"<u>Regular Payment Date</u>" means (i), when referring to interest on an Obligation, the stated date for payment of interest and (ii), when referring to the principal of an Obligation, the stated final maturity date thereof or the date on which the same shall have been duly called for mandatory redemption (by sinking fund or otherwise) and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by such mandatory redemption), acceleration or other advancement of maturity unless CIFG NA shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration.

"<u>Regular Payments</u>" means any and all regularly scheduled payments of principal of and interest on the Obligations required to be made in accordance with their original terms and without regard to any subsequent amendment or modification thereof except amendments or modifications to which CIFG NA has given its prior written consent. Regular Payments shall not include, nor shall coverage be provided under this Policy in respect of: (1) payments which become due on an accelerated basis as a result of (a) a default by the Issuer or any other person,

CIFG NA Endorse-1 (8-04)



Policy Number CIFG NA-562
Effective Date: October 4, 2005

(b) an election by the Issuer to make payment on an accelerated basis, or (c) any other cause, unless CIFG NA shall elect, in its sole discretion, to pay any amount due upon such acceleration together with any accrued interest to the date of acceleration; (2) any amounts due in respect of the Obligations attributable to any increase in interest rate, penalty or other sum payable by the Issuer by reason of any default or event of default in respect of the Obligations, whether by the Issuer or any other person, or by reason of any deterioration of the creditworthiness of the Issuer or any other person, or (3) any taxes, withholding or other charge imposed by any governmental authority due in connection with the payment of any Regular Payment to the Policyholder.

"Term of this Policy" means the period from and including the Effective Date to and including the date on which (i) all Regular Payments have been paid and the Obligations have been terminated in accordance with their terms; (ii) any period during which any Regular Payment could have been avoided in whole or in part as a preference payment under applicable bankruptcy, insolvency, receivership or similar law shall have expired; and (iii) if any proceedings requisite to avoidance as a preference payment have been commenced prior to the occurrence of (i) and (ii), a final and nonappealable order in resolution of each such proceeding has been entered.

2. <u>Notices and Conditions to Payment in Respect of Regular Payments</u>. Following Receipt by CIFG NA of a notice of claim and certificate from the Policyholder in the form attached as Exhibit A to this Endorsement (a "Notice of Claim and Certificate"), CIFG NA will pay any amount payable hereunder in respect of Regular Payments on the Obligations on (i) in respect of the first Regular Payment Date after Receipt by CIFG NA of such Notice of Claim and Certificate, the later to occur of (a) 10:00 a.m., New York City time, on the Business Day following such Receipt and (b) 10:00 a.m., New York City time, on the Regular Payment Date on which such payment is due on the Obligations and (ii) in respect of each subsequent Regular Payment Date after Receipt by CIFG NA of such Notice of Claim and Certificate, 10:00 a.m., New York City time, on the Regular Payment Date on which such payment is due on the Obligations. Payments due hereunder in respect of Regular Payments will be disbursed to the Policyholder by wire transfer of immediately available funds to such account as the Policyholder shall specify in writing at the time of or prior to the delivery of the Notice of Claim and Certificate in respect of such Regular Payment.

CIFG NA shall be entitled to pay any amount hereunder in respect of Regular Payments on the Obligations, including any amount payable upon its election on the Obligations on an accelerated basis, whether or not any notice and certificate shall have been Received by CIFG NA as provided above; <u>provided, however</u>, that by acceptance of this Policy the Policyholder agrees to provide upon request to CIFG NA a Notice of Claim and Certificate in respect of any such payments or deliveries made by CIFG NA. CIFG NA's obligation hereunder in respect of Regular Payments shall be discharged to the extent funds are disbursed by CIFG NA as provided herein whether or not such funds are properly applied by any custodian or agent appointed by the Policyholder.

3. <u>Notices and Conditions to Payment in Respect of Regular Payments Avoided as Preference Payments</u>. If any Regular Payment paid in respect of the Obligations during the Term

2

 **CIFG**

IXIS FINANCIAL GUARANTY

Policy Number CIFG NA-562
Effective Date: October 4, 2005

of this Policy is avoided as a preferential transfer or similar payment (a "Preference Payment") under applicable bankruptcy, insolvency, receivership or similar law ("Insolvency Law"), CIFG NA will pay such amount out of the funds of CIFG NA on the later of (a) the date when due to be paid pursuant to the Order referred to below or (b) the first to occur of (i) the fourth Business Day following Receipt by CIFG NA from the Policyholder of (A) a certified copy of the order (the "Order") of the court or other governmental body of competent jurisdiction to the effect that the Policyholder is required to return all or part of such Regular Payment because such payment was avoidable as a Preference Payment under applicable Insolvency Law, (B) a certificate of the Policyholder that the Order has been entered and is not subject to any stay and (C) an assignment duly executed and delivered by the Policyholder in such form as is reasonably required by CIFG NA, and provided to the Policyholder by CIFG NA, irrevocably assigning to CIFG NA all rights and claims of the Policyholder relating to or arising under the Obligations against the Issuer or its estate or otherwise with respect to such Preference Payment or (ii) the date of Receipt by CIFG NA from the Policyholder of the items referred to in clauses (A), (B) and (C) above if, at least four Business Days prior to such date of Receipt, CIFG NA shall have Received written notice from the Policyholder that such items were to be delivered on such date and such date was specified in such notice. Such payment shall be disbursed to the receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Order, and not the Policyholder directly (unless the Policyholder has previously paid such amount to the receiver, conservator, debtor-in-possession or trustee in bankruptcy named in the Order, in which case such payment shall be disbursed to the Policyholder upon proof of such payment reasonably satisfactory to CIFG NA).

4.    _Fiscal Agent_. At any time during the Term of this Policy, CIFG NA may appoint a fiscal agent (the "Fiscal Agent") for purposes of this Policy by written notice to the Policyholder at the notice address specified in the documents governing the Obligations specifying the name and notice address of the Fiscal Agent. From and after the date of receipt of such notice by the Policyholder, (i) copies of all notices and documents required to be delivered to CIFG NA pursuant to this Policy shall be simultaneously delivered to the Fiscal Agent and CIFG NA and shall not be deemed Received until Received by each, and (ii) all payments required to be made by CIFG NA under this Policy may be made directly by CIFG NA or by the Fiscal Agent on behalf of CIFG NA. The Fiscal Agent is the agent of CIFG NA only and the Fiscal Agent shall in no event be liable to any Policyholder for any acts of the Fiscal Agent or any failure of CIFG NA to deposit, or cause to be deposited, sufficient funds to make payments due under the Policy.

5.    _Notices_. All notices to be given hereunder shall be in writing (except as otherwise specifically provided herein) and shall be mailed by registered mail or personally delivered or telecopied to CIFG NA as follows:

> CDC IXIS Financial Guaranty North America, Inc.
> 825 Third Avenue, Sixth Floor
> New York, New York 10022
> Attention: General Counsel
> Telecopy No.: (212) 909-3959

3



Policy Number CIFG NA-562
Effective Date: October 4, 2005

CIFG NA may specify a different address or addresses by writing mailed or delivered to the Policyholder.

6.      Priorities. In the event that any term or provision of the face of this Policy is inconsistent with the provisions of this Endorsement, the provisions of this Endorsement shall take precedence and shall be binding.

7.      Assignment of CIFG NA Obligations. The obligations of CIFG NA hereunder may be assigned to any affiliate of CIFG NA that is licensed as a financial guaranty insurance corporation, provided that at the time of such assignment the insurance strength or insurance financial strength of such affiliate is rated at least equal to the insurance strength or insurance financial strength of CIFG NA, and that the rating of the Obligations shall not have been reduced as a result of such assignment, by Moody's Investors Service and Standard & Poor's Ratings Group or their respective successors as nationally recognized statistical rating organizations.

8.      Surrender of Policy. The Policyholder shall surrender this Policy to CIFG NA for cancellation upon expiration of the Term of this Policy.

IN WITNESS WHEREOF, CDC IXIS FINANCIAL GUARANTY NORTH AMERICA, INC. has caused this Endorsement No. 1 to be executed by its Authorized Officer.

CDC IXIS FINANCIAL GUARANTY NORTH AMERICA, INC.

By _____
                    Authorized Officer

                    Robert M. Drillings
            Managing Director and Assistant Secretary

4

Exhibit A
To Endorsement No. 1

## NOTICE OF CLAIM AND CERTIFICATE

CDC IXIS Financial Guaranty North America, Inc.
825 Third Avenue, Sixth Floor
New York, NY 10022

      The undersigned, a duly authorized officer of [Policyholder] (or any permitted successor or assignee of its rights under the Obligations defined below) (the "Policyholder"), hereby certifies to CDC IXIS Financial Guaranty North America, Inc. ("CIFG NA"), with reference to Financial Guaranty Insurance Policy No. CIFG NA-562 having an Effective Date of October 4, 2005 (the "Policy") issued by CIFG NA in respect of the Obligations (capitalized terms used without definition herein having the meanings provided in the Policy unless the context shall otherwise require), that:

      (i)     The Policyholder is the Policyholder under the Policy.

      (ii)     [The Policyholder has not been timely advised in writing by the Issuer as to a source of funds reasonably satisfactory to the Policyholder sufficient to make payment in full of a Regular Payment required to be made on the immediately following Regular Payment Date] [The Regular Payment required to be made on the Regular Payment Date falling on [date] has not been paid in full]. The Regular Payment has been calculated as follows: [show calculation].

      (iii)     Accordingly, the Policyholder is hereby making a claim under the Policy for the amount of the foregoing Regular Payment and, when due, any subsequent Regular Payments. The Policyholder will withdraw this Notice of Claim and Certificate, or submit a restated Notice of Claim and Certificate reducing the amount of the claim hereunder, if the required amount of any Regular Payment has been reduced (including reduction to zero) on or prior to any date on which CIFG NA is required to make payment or delivery under the Policy.

      (iv)     If the Policyholder receives from the Issuer and CIFG NA an amount in excess of a Regular Payment, the Policyholder shall immediately return the excess amount to CIFG NA.

      (v)     In consideration of the payments made and to be made to the Policyholder by CIFG NA under the Policy, the Policyholder hereby assigns to CIFG NA all of its interest in and rights with respect to the Obligations (including the documents governing the Obligations). The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to CIFG NA in respect of such payments. Payments to CIFG NA in respect of the foregoing assignment

A-1

shall in all cases be subject to and subordinate to the rights of the Policyholder to receive all Regular Payments in respect of the aforementioned Obligations. The Policyholder shall take such action and deliver such instruments as may be reasonably requested or required by CIFG NA to effectuate the purpose or provisions of this clause (v).

(vi)     The Policyholder hereby agrees that, so long as no CIFG NA Termination Event (as defined below) shall have occurred and be continuing, CIFG NA may at any time during the continuation of any proceeding by or against the Issuer under any applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to such Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Obligations (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of CIFG NA and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, so long as no CIFG Termination Event shall have occurred and be continuing, the Policyholder hereby agrees that CIFG NA shall be subrogated to, and the Policyholder hereby assigns, to the fullest extent permitted by law, the rights of the Policyholder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding. A "CIFG NA Termination Event" shall be any event of default specified in the documents governing the Obligations with respect to CIFG NA as insurer of the Obligations or, if none is so specified, either: (i) CIFG NA's failure to make a payment required under the Policy in accordance with its terms or (ii) its institution of a proceeding seeking a judgment of insolvency or bankruptcy; the institution against it of such a proceeding or petition that is not dismissed, discharged or stayed within 180 days of the institution of such a proceeding or petition; or the appointment of an administrator, provisional liquidator, conservator, receiver, trustee, custodian or other similar official for it or for all or substantially all of its assets.

(vii)     Payment should be made by wire transfer directed to the following account in [city]:

[Policyholder's wire transfer information]

A-2

IN WITNESS WHEREOF, the Policyholder has executed and delivered this Notice of Claim and Certificate as of the _____ day of _____, _____

[POLICYHOLDER]

By_____

Title_____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

For CIFG NA or
Fiscal Agent Use Only

Wire transfer sent on _____ by _____

Confirmation Number _____

A-3



**IXIS FINANCIAL GUARANTY**

## ENDORSEMENT NO. 2
## TO FINANCIAL GUARANTY INSURANCE POLICY NO. CIFG NA-562

### CDC IXIS FINANCIAL GUARANTY NORTH AMERICA, INC.

Notwithstanding the terms and provisions contained in this Policy, it is further understood that any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

IN WITNESS WHEREOF, CDC IXIS FINANCIAL GUARANTY NORTH AMERICA, INC. has caused this Endorsement No. 2 to be executed by its Authorized Officer.

CDC IXIS FINANCIAL GUARANTY NORTH AMERICA, INC.

By _____
                    Authorized Officer

                    Robert M. Drillings
            Managing Director and Assistant Secretary

CIFGNA Fraud Endorse-2 (8-04)



**IXIS FINANCIAL GUARANTY**

ENDORSEMENT NO. 3
TO FINANCIAL GUARANTY INSURANCE POLICY NO. CIFGNA-562

CDC IXIS FINANCIAL GUARANTY NORTH AMERICA, INC.


THIS POLICY IS NOT COVERED BY THE PUERTO RICO INSURANCE GUARANTY FUND SPECIFIED IN § 3803 OF TITLE 26 OF THE LAWS OF PUERTO RICO ANNOTATED.

IN WITNESS WHEREOF, CDC IXIS FINANCIAL GUARANTY NORTH AMERICA, INC. has caused this Endorsement No. 3 to be executed by its Authorized Officer.

CDC IXIS FINANCIAL GUARANTY NORTH AMERICA, INC.


By _____
                    Authorized Officer

                    Robert M. Drillings
        Managing Director and Assistant Secretary

CIFGNA Bonds Endorse-3-NY (8-04)

## AGREEMENT REGARDING BOND INSURANCE

THIS AGREEMENT REGARDING BOND INSURANCE, dated October 4, 2005, is entered into by and between the Puerto Rico Highways and Transportation Authority (the "Authority") and JPMorgan Chase Bank, N.A., as Fiscal Agent under Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended (the "1998 Resolution"), pursuant to which the Authority is issuing $598,285,000 aggregate principal amount of Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series L) (the "Series L Bonds").

### WITNESSETH:

WHEREAS, the Authority has determined to issue the Series L Bonds and, in connection therewith, to obtain a financial guaranty insurance policy (the "Financial Guaranty Insurance Policy") to be issued by CDC IXIS Financial Guaranty North America, Inc., ("CIFGNA"), insuring the payment when due of principal of and interest on the Series L Bonds maturing July 1 of the years 2011 through 2020, inclusive, and 2041 (collectively, the "CIFGNA Insured Bonds").

WHEREAS, as a condition to the issuance of the Financial Guaranty Insurance Policy, CIFGNA has requested that the Authority and the Fiscal Agent agree to certain provisions; and

WHEREAS, the Authority and the Fiscal Agent are willing to abide by the requirements of CIFGNA for so long as the Financial Guaranty Insurance Policy is in effect and CIFGNA is not in default thereunder, all as more specifically provided in this Agreement;

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants herein set forth, the Authority and the Fiscal Agent hereby agree as follows:

Section 1.     Defined Terms.  All terms used herein in capitalized form and not defined shall have the meanings ascribed to such terms in the 1998 Resolution or, if not defined therein, in Resolution No. 2005-28 adopted by the Authority on September 22, 2005 (the "1998 Series Resolution").

Section 2.     Notice and Other Information to be Given to CIFGNA.  (a) Any notice that is required to be given to the holders of the CIFGNA Insured Bonds, nationally recognized municipal securities information repositories or state information depositories pursuant to Rule 15c2-12(b)(5) adopted by the Securities and Exchange Commission or to the Fiscal Agent pursuant to the 1998 Resolution shall also be provided to CIFGNA. All notices required to be given to CIFGNA shall be in writing and shall be sent by registered or certified mail addressed to CDC IXIS Financial Guaranty North America, Inc., 825 Third Avenue, 6th Floor, New York, New York 10022, Attn: General Counsel.

Miami/17151.1

(b)      (i) Within one hundred eighty (180) days after the end of the Authority's fiscal year or as soon thereafter as practicable, a copy of the audited financial statements of the Authority and a copy of an annual budget of the Authority shall be sent to CIFGNA and (ii) within sixty (60) days after the close of each quarter of the Authority's fiscal year, a copy of the unaudited financial statements of the Authority shall be sent to CIFGNA.  In each case such items shall be addressed as follows:  CDC IXIS Financial Guaranty North America, Inc., 825 Third Avenue, 6th Floor, New York, New York 10022, Attn: Surveillance.

(c)      CIFGNA shall have the right to receive such additional information as it may reasonably request.

(d)      The Authority will permit CIFGNA to discuss the affairs, finances and accounts of the Authority or any information CIFGNA may reasonably request regarding the security for the CIFGNA Insured Bonds with appropriate officers of the Authority, and will grant CIFGNA access to the facilities, books and records of the Authority on any business day upon reasonable prior notice.

(e)      CIFGNA shall have the right to direct an accounting at the Authority's expense and the Authority's failure to comply with such direction within thirty (30) days after written notice of the direction from CIFGNA shall be deemed a default hereunder.

Section 3.      <u>Amendments or Supplements</u>.  (a) With respect to amendments or supplements to the 1998 Resolution which do not require the consent of the holders of the CIFGNA Insured Bonds, CIFGNA shall receive notice of any such amendment or supplement.

(b)      With respect to amendments or supplements to the 1998 Resolution which require the consent of the holders of the CIFGNA Insured Bonds, CIFGNA shall have the right to consent to such amendment in lieu of the owners of the CIFGNA Insured Bonds, as long as CIFGNA is not in default on its obligations under the Financial Guaranty Insurance Policy.

(c)      Copies of any amendments to the 1998 Resolution consented to by CIFGNA shall be provided to the rating agencies which have assigned a rating to the CIFGNA Insured Bonds.

(d)      Notwithstanding any other provision of the 1998 Resolution on this Agreement, in determining whether the rights of the holders of the CIFGNA Insured Bonds will be adversely affected by any action taken pursuant to the terms and provisions of the 1998 Resolution, the Fiscal Agent shall consider the effect on the holders of the CIFGNA Insured Bonds as if there were no Financial Guaranty Insurance Policy.

Section 4.      <u>Events of Defaults and Remedies</u>.  CIFGNA shall be recognized as the registered owner of each CIFGNA Insured Bond for purposes of exercising all rights and privileges available to the registered owners of the CIFGNA Insured Bonds.  With respect to any CIFGNA Insured Bonds, CIFGNA shall have the right to institute any suit, action or

2

proceeding at law or in equity under the same terms as a holder of the CIFGNA Insured Bonds in accordance with the applicable provisions of the 1998 Resolution.

Section 5.     Fiscal Agent. (a) CIFGNA shall receive prior written notice of any name change of the Fiscal Agent or the resignation or removal of the Fiscal Agent.

(b)     No removal, resignation or termination of the Fiscal Agent shall take effect until a successor shall be appointed in accordance with the provisions of the 1998 Resolution.

Section 6.     Third Party Beneficiary. CIFGNA is explicitly recognized as being a third party beneficiary under the 1998 Resolution and may enforce any right, remedy or claim conferred, given or granted thereunder or hereunder to the holders of the CIFGNA Insured Bonds.

Section 7.     Payment of CIFGNA Insured Bonds by CIFGNA; Subrogation. In the event that the principal and/or interest due on the CIFGNA Insured Bonds shall be paid by CIFGNA pursuant to the Financial Guaranty Insurance Policy, such CIFGNA Insured Bonds shall:

(i)     remain outstanding for all purposes,

(ii)     not be defeased or otherwise satisfied,

(iii)     not be considered paid by the Authority,

(iv)     the assignment and pledge under the 1998 Resolution and all covenants, agreements and other obligations of the Authority to the registered owners shall continue to exist and shall run to the benefit of CIFGNA, and

(v)     CIFGNA shall be subrogated to the rights of such registered owners including, without limitation, any rights that such owners may have in respect of securities laws violations arising from the offer and sale of the CIFGNA Insured Bonds.

Section 8.     Defeasance of the CIFGNA Insured Bonds. In the event that the CIFGNA Insured Bonds are to be defeased, the following conditions shall apply:

(a)     There shall be delivered to the Fiscal Agent an opinion of bond counsel to the effect that the refunding and defeasance will not adversely impact the exclusion from gross income for federal income tax purposes of interest on the CIFGNA Insured Bonds to be refunded.

(b)     There shall be delivered to the Fiscal Agent an opinion of counsel to the effect that (i) the escrow deposit will not constitute a voidable preference or transfer under the Federal Bankruptcy Code, as amended, or any other similar state or federal statutes in the event the Authority becomes a debtor within the meaning of the Federal Bankruptcy Code, as amended, or comes within the protection of such similar state or federal statutes

3

("Insolvency Event"), and (ii) in such Insolvency Event, the escrow deposit will not be treated as part of the estate of the Authority. Notwithstanding the foregoing, CIFGNA acknowledges that the opinion of counsel required by this paragraph (b) may exclude amounts to be transferred to a defeasance escrow from the Sinking Fund established under the 1998 Resolution, to the extent that Section 209 of the 1998 Resolution requires that amounts on deposit in the Sinking Fund for the payment of the next regularly scheduled interest and principal payments on CIFGNA Insured Bonds to be refunded must be withdrawn from the Sinking Fund and deposited in the defeasance escrow.

(c)     The escrow agreement shall provide that:

(i)     Any substitution of securities shall require a CPA verification.

(ii)     The Authority will not exercise any optional redemption of CIFGNA Insured Bonds secured by the escrow agreement or any other redemption unless (i) the right to make any such redemption has been expressly reserved in the escrow agreement and such reservation has been disclosed in detail in the official statement for the refunding bonds, and (ii) as a condition of any such redemption there shall be provided to CIFGNA a CPA verification as to the sufficiency of escrow receipts without reinvestment to meet the escrow requirements remaining following such redemption.

(iii)     The Authority shall not amend the escrow agreement or enter into a forward purchase agreement or other agreement with respect to rights in the escrow without the prior written consent of CIFGNA.

Section 9.     Consent Rights.     (a) Any provision of the 1998 Resolution expressly recognizing or granting rights in or to CIFGNA may not be amended in any manner which affects the rights of CIFGNA hereunder without the prior written consent of CIFGNA.

(b)     So long as the Financial Guaranty Insurance Policy is in full force and effect and CIFGNA has not failed to perform any of its obligations thereunder, CIFGNA shall be deemed the sole owner of the CIFGNA Insured Bonds for purposes of giving any consent that may be required under the 1998 Resolution. Upon the occurrence and continuance of an event of default under the 1998 Resolution, CIFGNA shall be entitled to vote on behalf of all bondholders who hold CIFGNA Insured Bonds for purposes of directing the enforcement of the rights and remedies granted to the holders of CIFGNA Insured Bonds or to the Fiscal Agent for the benefit of such bondholders, in the manner provided in the 1998 Resolution.

(c)     In the event of any reorganization or liquidation plan with respect to the Authority, CIFGNA shall have the right to vote on behalf of all bondholders who hold CIFGNA Insured Bonds absent a default by CIFGNA under the Financial Guaranty Insurance Policy.

Section 10.     Payment Procedure.     (a) In the event that on the second (2nd) business day prior to the payment date on the CIFGNA Insured Bonds, the Fiscal Agent

4

has not received sufficient moneys to pay all principal of and interest on the CIFGNA Insured Bonds due on the second (2nd) following business day, the Fiscal Agent shall immediately notify CIFGNA or its designee on the same business day by telephone or electronic mail, confirmed in writing by registered or certified mail, of the amount of the deficiency.

(b)     If the deficiency is made up in whole or in part prior to or on the payment date, the Fiscal Agent shall so notify CIFGNA or its designee.

(c)     In addition, if the Fiscal Agent has notice that any bondholder has been required to disgorge payments of principal or interest on the CIFGNA Insured Bonds pursuant to a final non-appealable order by a court of competent jurisdiction that such payment constitutes an avoidable preference to such bondholder within the meaning of any applicable bankruptcy laws, then the Fiscal Agent shall notify CIFGNA or its designee of such fact by telephone or electronic notice, confirmed in writing by registered or certified mail.

(d)     The Fiscal Agent is hereby irrevocably designated, appointed, directed and authorized to act as attorney-in-fact for holders of the CIFGNA Insured Bonds as follows:

(i)     If and to the extent there is a deficiency in amounts required to pay interest on the CIFGNA Insured Bonds, the Fiscal Agent shall (A) execute and deliver to CIFGNA, in form satisfactory to CIFGNA, an instrument appointing CIFGNA as agent for such holders in any legal proceeding related to the payment of such interest and an assignment to CIFGNA of the claims for interest to which such deficiency relates and which are paid by CIFGNA, (B) receive as designee of the respective holders (and not as paying agent) in accordance with the tenor of the Financial Guaranty Insurance Policy payment from CIFGNA with respect to the claims for interest so assigned, and (C) disburse the same to such respective holders; and

(ii)     If and to the extent of a deficiency in amounts required to pay principal of the CIFGNA Insured Bonds, the Fiscal Agent shall (A) execute and deliver to CIFGNA, in form satisfactory to CIFGNA, an instrument appointing CIFGNA as agent for such holder in any legal proceeding related to the payment of such principal and an assignment to CIFGNA of the CIFGNA Insured Bonds surrendered to CIFGNA in an amount equal to the principal amount thereof as has not previously been paid or for which moneys are not held by the Fiscal Agent and available for such payment (but such assignment shall be delivered only if payment from CIFGNA is received), (B) receive as designee of the respective holders (and not as paying agent) in accordance with the tenor of the Financial Guaranty Insurance Policy payment therefor from CIFGNA, and (C) disburse the same to such holders.

(e)     Payments with respect to claims for interest on and principal of CIFGNA Insured Bonds disbursed by the Fiscal Agent from proceeds of the Financial Guaranty

5

Insurance Policy shall not be considered to discharge the obligation of the Authority with respect to such CIFGNA Insured Bonds, and CIFGNA shall become the owner of such unpaid CIFGNA Insured Bonds and claims for the interest in accordance with the tenor of the assignment made to it under the provisions of this subsection or otherwise.

(f)     Irrespective of whether any such assignment is executed and delivered, the Authority and the Fiscal Agent hereby agree for the benefit of CIFGNA that:

(i)     They recognize that to the extent CIFGNA makes payments directly or indirectly (e.g. by paying through the paying agent), on account of principal of or interest on the CIFGNA Insured Bonds, CIFGNA will be subrogated to the rights of such holders to receive the amount of such principal and interest from the Authority, with interest thereon as provided and solely from the sources stated in the 1998 Resolution and the CIFGNA Insured Bonds; and

(ii)     They will accordingly pay to CIFGNA the amount of such principal and interest, with interest thereon as provided in the 1998 Resolution and the CIFGNA Insured Bonds, but only from the sources and in the manner provided in the 1998 Resolution for the payment of principal of and interest on the CIFGNA Insured Bonds to holders, and will otherwise treat CIFGNA as the owner of such rights to the amount of such principal and interest.

(g)     To the extent permitted by law, the Authority hereby agrees to pay or reimburse CIFGNA any and all charges, damages, losses, penalties, fees, costs and expenses which CIFGNA or its officers, directors, employees, shareholders and each Person, if any, who controls CIFGNA within the meaning of either Section 15 of the Securities Act of 1933 or Section 20 of the Securities Exchange Act of 1934 may reasonably pay or incur, including, but not limited to, reasonable fees and expenses of attorneys, accountants, consultants and auditors and reasonable costs of investigations, in connection with (i) any accounts established to facilitate payments under the Financial Guaranty Insurance Policy, (ii) the administration, enforcement, defense or preservation of any rights in respect of the 1998 Resolution or any other financing document including defending, monitoring or participating in any litigation or proceeding (including any bankruptcy proceeding in respect of the Authority or any affiliate thereof) relating to the 1998 Resolution, this Agreement or any other financing document (the "Transaction"), (iii) the foreclosure against, sale or other disposition of any collateral securing any obligations under this agreement or any other financing document, or the pursuit of any remedies under the 1998 Resolution or any other financing document, to the extent such costs and expenses are not recovered from such foreclosure, sale or other disposition, or (iv) any amendment, waiver or other action with respect to, or related to the 1998 Resolution, this Agreement or any other financing document whether or not executed or completed; costs and expenses shall include a reasonable allocation of compensation and overhead attributable to the time of employees of CIFGNA spent in connection with the actions described in clauses (ii) - (iv) above; and CIFGNA reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver or consent proposed in respect of the 1998 Resolution or any other financing document.

6

(h)     CIFGNA shall be entitled to pay principal or interest on the CIFGNA Insured Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Authority (as such terms are defined in the Financial Guaranty Insurance Policy) and any amounts due on the CIFGNA Insured Bonds as a result of acceleration of the maturity thereof in accordance with this Agreement, whether or not CIFGNA has received a Notice (as defined in the Financial Guaranty Insurance Policy) of Nonpayment or a claim upon the Financial Guaranty Insurance Policy.

Section 11.     Applicability of this Agreement. Notwithstanding anything to the contrary contained herein, the Authority and the Fiscal Agent shall be bound by, and required to comply with the provisions of, this Agreement only for so long as the Financial Guaranty Insurance Policy is in effect and CIFGNA is not in default thereunder.

Section 12.     Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute one and the same instrument.

[Balance of Page Intentionally Left Blank]

7

IN WITNESS WHEREOF, the Puerto Rico Highways and Transportation Authority and JPMorgan Chase Bank, N.A., as Fiscal Agent, have caused this Agreement to be executed by their authorized officers, all as of the day and year first above written.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

By: _____
Executive Director

JPMORGAN CHASE BANK, N.A.,
as Fiscal Agent

By: _____
Authorized Officer

Acknowledged and agreed
to by CDC IXIS FINANCIAL GUARANTY
    NORTH AMERICA, INC.
this 4th day of October, 2005.

CDC IXIS FINANCIAL GUARANTY
    NORTH AMERICA, INC.

By: _____
    Name:
    Title:

Miami 17151.1

8

IN WITNESS WHEREOF, the Puerto Rico Highways and Transportation Authority and JPMorgan Chase Bank, N.A., as Fiscal Agent, have caused this Agreement to be executed by their authorized officers, all as of the day and year first above written.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

By: _____
    Executive Director

JPMORGAN CHASE BANK, N.A.,
as Fiscal Agent

By: _____
    Authorized Officer

Acknowledged and agreed
to by CDC IXIS FINANCIAL GUARANTY
  NORTH AMERICA, INC.
this 4ᵗʰ day of October, 2005.

CDC IXIS FINANCIAL GUARANTY
  NORTH AMERICA, INC.

By: _____
  Name:     Robert M. Drillings
  Title:   Managing Director and Assistant Secretary

8