# **EXHIBIT U**

## AGREEMENT REGARDING BOND INSURANCE

THIS AGREEMENT REGARDING BOND INSURANCE, dated as of April 29, 2003, by and between Puerto Rico Highways and Transportation Authority (the "Authority") and JPMorgan Chase Bank, as Fiscal Agent (the "Fiscal Agent"), under Resolution No. 68-13, adopted by the Authority on June 13, 1968, as amended (the "Resolution"),

W I T N E S S E T H:

WHEREAS, the Authority has determined to issue its Puerto Rico Highways and Transportation Authority Highway Revenue Refunding Bonds (Series AA) (the "Series AA Bonds") and to obtain a municipal bond insurance policy (the "FGIC Bond Insurance Policy") to be issued by Financial Guaranty Insurance Company ("FGIC") to secure the payment of the principal of and interest on the Series AA Bonds maturing July 1, 2008 through and including July 1, 2016 (the "Insured Bonds"), subject to the terms of the FGIC Bond Insurance Policy; and

WHEREAS, as a condition to the issuance of the FGIC Bond Insurance Policy, FGIC has requested that the Authority and the Fiscal Agent agree to certain provisions; and

WHEREAS, the Authority and the Fiscal Agent have agreed to said provisions for the benefit of FGIC to induce FGIC to issue the FGIC Bond Insurance Policy;

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants herein set forth, the Authority and the Fiscal Agent hereby agree as follows:

Section 1.  Any Reserve Account Insurance Policy or Reserve Account Letter of Credit, other than one provided by FGIC, shall conform to FGIC's requirements attached hereto in Appendix A.

Section 2.  (a)  FGIC shall receive immediate notice of any payment default and notice of any other default known to the Fiscal Agent or the Authority within 30 days of the Fiscal Agent's or the Authority's knowledge thereof.

(b) FGIC shall be included as a party in interest and as a party entitled to request the Fiscal Agent or receiver to intervene in judicial proceedings that affect the Bonds or the security therefor. The Fiscal Agent or receiver shall be required to accept notice of default from FGIC.

(c) FGIC shall have the right to consent in lieu of the owners of Insured Bonds to all amendments to the Resolution to which the Fiscal Agent and the owners of Insured Bonds have the right to consent, as long as FGIC is not in default on its obligations under the FGIC Bond Insurance Policy. Copies of any such amendments which have been consented to by FGIC shall be sent to Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. FGIC shall be recognized as the registered owner of each Insured Bond for the purposes of exercising all rights and privileges available to bondholders under the Resolution. FGIC shall have the right to institute any suit, action, or proceeding

NY1 5359946v3

at law or in equity under the same terms as a holder of an Insured Bond in accordance with applicable provisions of the Resolution.

(d) FGIC shall receive notice of the resignation or removal of the Fiscal Agent and the appointment of any successor thereto.

Section 3. Only cash, direct non-callable obligations of the United States of America and securities fully and unconditionally guaranteed as to the timely payment of principal and interest by the United States of America, to which direct obligation or guarantee the full faith and credit of the United States of America has been pledged, Refcorp interest strips, CATS, TIGRS, STRPS, or defeased municipal bonds rated AAA by S&P or Aaa by Moody's (or any combination of the foregoing) shall be used to effect defeasance of the Insured Bonds unless FGIC otherwise approves. In the event of an advance refunding, the Authority shall cause to be delivered a verification report of an independent nationally recognized certified public accountant. If a forward supply contract is employed in connection with the refunding, (i) such verification report shall expressly state that the adequacy of the escrow to accomplish the refunding relies solely on the initial escrowed investments and the maturing principal thereof and interest income thereon and does not assume performance under or compliance with the forward supply contract, and (ii) the applicable escrow agreement shall provide that in the event of any discrepancy or difference between the terms of the forward supply contract and the escrow agreement (or the authorizing document, if no separate escrow agreement is utilized), the terms of the escrow agreement or authorizing document, if applicable, shall be controlling.

Section 4. FGIC shall be provided with the following information:

(a) Notice from the Fiscal Agent of any drawing upon or deficiency due to market fluctuation in the amount, if any, on deposit, in the Reserve Account;

(b) Notice from the Fiscal Agent of the redemption, other than mandatory sinking fund redemption, of any of the Insured Bonds, or of any advance refunding of the Insured Bonds, including the principal amount, maturities and CUSIP numbers thereof;

(c) Notice from the Authority of any material events pursuant to Rule 15c2-12 under the Securities Exchange Act of 1934; and

(d) Such additional information as FGIC may reasonably request from time to time.

Section 5. All reports, notices and correspondence to be delivered to FSA shall be delivered to FGIC at the following address: Financial Guaranty Insurance Company, 125 Park Avenue, New York, New York 10017, Attention: Risk Management. All reports, notices and correspondence to be delivered to FSA's insurance agent shall be delivered to the following address: U.S. Bank Trust National Association, 100 Wall Street, 19th Floor, New York, New York 10005, Attention: Corporate Trust Department.

Section 6. The form of the Insured Bonds shall include the following statement of insurance:

2

## STATEMENT OF INSURANCE

Financial Guaranty Insurance Company ("Financial Guaranty") has issued a policy containing the following provisions with respect to this bond, such policy being on file at the principal office of JPMorgan Chase Bank, as fiscal agent (the "Fiscal Agent"):

Financial Guaranty hereby unconditionally and irrevocably agrees to pay for disbursement to the holder of this bond that portion of the principal or accreted value (if applicable) of and interest on this bond which is then due for payment and which Puerto Rico Highways and Transportation Authority (the "Issuer") shall have failed to provide. Due for payment means, with respect to principal or accreted value (if applicable), the stated maturity date thereof, or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which the payment of principal or accreted value (if applicable) of this bond is due by reason of call for redemption (other than mandatory sinking fund redemption), acceleration or other advancement of maturity, and with respect to interest, the stated date for payment of such interest.

Upon receipt of telephonic or telegraphic notice, subsequently confirmed in writing, or written notice by registered or certified mail, from the holder of this bond or the Fiscal Agent to Financial Guaranty that the required payment of principal, accreted value or interest (as applicable) has not been made by the Issuer to the Fiscal Agent, Financial Guaranty on the due date of such payment or within one business day after receipt of notice of such nonpayment, whichever is later, will make a deposit of funds, in an account with U.S. Bank Trust National Association, or its successor as its agent (the "Insurance Agent"), sufficient to make the portion of such payment not paid by the Issuer. Upon presentation to the Insurance Agent of evidence satisfactory to it of the bondholder's right to receive such payment and any appropriate instruments of assignment required to vest all of such bondholder's right to such payment in Financial Guaranty, the Insurance Agent will disburse such amount to the bondholder.

As used herein the term "holder of this bond" or "bondholder" means the person other than the Issuer who at the time of nonpayment of this bond is entitled under the terms of such bond to payment thereof.

The policy is non-cancellable for any reason.

**FINANCIAL GUARANTY INSURANCE COMPANY**

3

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority and JPMorgan Chase Bank, as Fiscal Agent, have caused this Resolution Regarding Bond Insurance to be executed by their authorized officers, all as of the day and year first above written.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

By: _____
Executive Director

JPMORGAN CHASE BANK, as Fiscal Agent

By: _____
Vice President

4

NY1 5359946v3

## RESERVE FUND SURETY GUIDELINES

The Issuer may satisfy the requirement (the "Reserve Fund Requirement") to deposit a specified amount in the debt service reserve fund (the "Reserve Fund") by the deposit of a surety bond, insurance policy or letter of credit as set forth below. The following requirements shall be incorporated in the authorizing document for the Bonds (the "Authorizing Document") in the event the Reserve Fund Requirement is fulfilled by a deposit of a credit instrument (other than a credit instrument issued by Financial Guaranty) in lieu of cash:

1. A surety bond or insurance policy issued to the entity serving as trustee or paying agent (the "Fiduciary"), as agent of the bondholders, by a company licensed to issue an insurance policy guaranteeing the timely payment of debt service on the Bonds (a "municipal bond insurer") may be deposited in the Reserve Fund to meet the Reserve Fund Requirement if the claims paying ability of the issuer thereof shall be rated "AAA" or "Aaa" by S&P or Moody's, respectively.

2. A surety bond or insurance policy issued to the Fiduciary, as agent of the bondholders, by an entity other than a municipal bond insurer may be deposited in the Reserve Fund to meet the Reserve Fund Requirement if the form and substance of such instrument and the issuer thereof shall be approved by Financial Guaranty.

3. An unconditional irrevocable letter of credit issued to the Fiduciary, as agent of the bondholders, by a bank may be deposited in the Reserve Fund to meet the Reserve Fund Requirement if the issuer thereof is rated at least "AA" by S&P. The letter of credit shall be payable in one or more draws upon presentation by the beneficiary of a sight draft accompanied by its certificate that it then holds insufficient funds to make a required payment of principal or interest on the bonds. The draws shall be payable within two days of presentation of the sight draft. The letter of credit shall be for a term of not less than three years. The issuer of the letter of credit shall be required to notify the Issuer and the Fiduciary, not later than 30 months prior to the stated expiration date of the letter of credit, as to whether such expiration date shall be extended, and if so, shall indicate the new expiration date.

4. If such notice indicates that the expiration date shall not be extended, the Issuer shall deposit in the Reserve Fund an amount sufficient to cause the cash or permitted investments on deposit in the Reserve Fund together with any other qualifying credit instruments, to equal the Reserve Fund Requirement on all outstanding Bonds, such deposit to be paid in equal installments on at least a semi-annual basis over the remaining term of the letter of credit, unless the Reserve Fund credit instrument is replaced by a Reserve Fund credit instrument meeting the requirements in any of 1-3 above. The letter of credit shall permit a draw in full not less than two weeks prior to the expiration or termination of such letter of credit if the letter of credit has not been replaced or renewed. The Authorizing Document shall, in turn, direct the Fiduciary to draw upon the letter of credit prior to its expiration or termination unless an acceptable replacement is in place or the Reserve Fund is fully funded in its required amount.

NY1 5359946v3

5. The use of any Reserve Fund credit instrument pursuant to this Paragraph shall be subject to receipt of an opinion of counsel acceptable to Financial Guaranty and in form and substance satisfactory to Financial Guaranty as to the due authorization, execution, delivery and enforceability of such instrument in accordance with its terms, subject to applicable laws affecting creditors' rights generally, and, in the event the issuer of such credit instrument is not a domestic entity, an opinion of foreign counsel in form and substance satisfactory to Financial Guaranty. In addition, the use of an irrevocable letter of credit shall be subject to receipt of an opinion of counsel acceptable to Financial Guaranty and in form and substance satisfactory to Financial Guaranty to the effect that payments under such letter of credit would not constitute avoidable preferences under Section 547 of the U.S. Bankruptcy Code or similar state laws with avoidable preference provisions in the event of the filing of a petition for relief under the U.S. Bankruptcy Code or similar state laws by or against the issuer of the bonds (or any other account party under the letter of credit).

6. The obligation to reimburse the issuer of a Reserve Fund credit instrument for any fees, expenses, claims or draws upon such Reserve Fund credit instrument shall be subordinate to the payment of debt service on the bonds. The right of the issuer of a Reserve Fund credit instrument to payment or reimbursement of its fees and expenses shall be subordinated to cash replenishment of the Reserve Fund, and, subject to the second succeeding sentence, its right to reimbursement for claims or draws shall be on a parity with the cash replenishment of the Reserve Fund. The Reserve Fund credit instrument shall provide for a revolving feature under which the amount available thereunder will be reinstated to the extent of any reimbursement of draws or claims paid. If the revolving feature is suspended or terminated for any reason, the right of the issuer of the Reserve Fund credit instrument to reimbursement will be further subordinated to cash replenishment of the Reserve Fund to an amount equal to the difference between the full original amount available under the Reserve Fund credit instrument and the amount then available for further draws or claims. If (a) the issuer of a Reserve Fund credit instrument becomes insolvent or (b) the issuer of a Reserve Fund credit instrument defaults in its payment obligations thereunder or (c) the claims-paying ability of the issuer of the insurance policy or surety bond falls below a S&P "AAA" or a Moody's "Aaa" or (d) the rating of the issuer of the letter of credit falls below a S&P "AA", the obligation to reimburse the issuer of the Reserve Fund credit instrument shall be subordinate to the cash replenishment of the Reserve Fund.

7. If (a) the revolving reinstatement feature described in the preceding paragraph is suspended or terminated or (b) the rating of the claims paying ability of the issuer of the surety bond or insurance policy falls below a S&P "AAA" or a Moody's "Aaa" or (c) the rating of the issuer of the letter of credit falls below a S&P "AA", the Issuer shall either (i) deposit into the Reserve Fund an amount sufficient to cause the cash or permitted investments on deposit in the Reserve Fund to equal the Reserve Fund Requirement on all outstanding Bonds, such amount to be paid over the ensuing five years in equal installments deposited at least semi-annually or (ii) replace such instrument with a surety bond, insurance policy or letter of credit meeting the requirements in any of 1-3 above within six months of such occurrence. In the event (a) the rating of the claims-paying ability of the issuer of the surety bond or insurance policy falls below "A" or (b) the

2

rating of the issuer of the letter of credit falls below "A" or (c) the issuer of the Reserve Fund credit instrument defaults in its payment obligations or (d) the issuer of the Reserve Fund credit instrument becomes insolvent, the Issuer shall either (i) deposit into the Reserve Fund an amount sufficient to cause the cash or permitted investments on deposit in the Reserve Fund to equal to Reserve Fund Requirement on all outstanding Bonds, such amount to be paid over the ensuing year in equal installments on at least a monthly basis or (ii) replace such instrument with a surety bond, insurance policy or letter of credit meeting the requirements in any of 1-3 above within six months of such occurrence.

8. Where applicable, the amount available for draws or claims under the Reserve Fund credit instrument may be reduced by the amount of cash or permitted investments deposited in the Reserve Fund pursuant to clause (i) of the preceding subparagraph 6.

9. If the Issuer chooses the above described alternatives to a cash-funded Reserve Fund, any amounts owed by the Issuer to the issuer of such credit instrument as a result of a draw thereon or a claim thereunder, as appropriate, shall be included in any calculation of debt service requirements required to be made pursuant to the Authorizing Document for any purpose, *e.g.*, rate covenant or additional bonds test.

10. The Authorizing Document shall require the Fiduciary to ascertain the necessity for a claim or draw upon the Reserve Fund credit instrument and to provide notice to the issuer of the Reserve Fund credit instrument in accordance with its terms not later than three days (or such longer period as may be necessary depending on the permitted time period for honoring a draw under the Reserve Fund credit instrument) prior to each interest payment date.

11. Cash on deposit in the Reserve Fund shall be used (or investments purchased with such cash shall be liquidated and the proceeds applied as required) prior to any drawing on any Reserve Fund credit instrument. If and to the extent that more than one Reserve Fund credit instrument is deposited in the Reserve Fund, drawings thereunder and repayments of costs associated therewith shall be made on a pro rata basis, calculated by reference to the maximum amounts available thereunder.

## AGREEMENT REGARDING BOND INSURANCE

THIS AGREEMENT REGARDING BOND INSURANCE, dated as of April 29, 2003, by and between Puerto Rico Highways and Transportation Authority (the "Authority") and JPMorgan Chase Bank, as Fiscal Agent (the "Fiscal Agent"), under Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended (the "Resolution"),

W I T N E S S E T H:

WHEREAS, the Authority has determined to issue its Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds (Series G) (the "Series G Bonds"), Transportation Revenue Refunding Bonds (Series H) (the "Series H Bonds") and Subordinated Transportation Revenue Bonds (Series 2003) (the "Subordinated Bonds"; the Series G Bonds, the Series H Bonds and the Subordinated Bonds are herein collectively called the "Bonds") and to obtain separate municipal bond insurance policies (collectively, the "FGIC Bond Insurance Policy") to be issued by Financial Guaranty Insurance Company ("FGIC") to secure the payment of the principal of and interest on the Series G Bonds maturing July 1, 2011 through and including July 1, 2022, the Series H Bonds maturing July 1, 2009 through and including July 1, 2021 and the Subordinated Bonds maturing July 1, 2010 through and including July 1, 2018 (collectively, the "Insured Bonds"), subject to the terms of the FGIC Bond Insurance Policy; and

WHEREAS, as a condition to the issuance of the FGIC Bond Insurance Policy, FGIC has requested that the Authority and the Fiscal Agent agree to certain provisions; and

WHEREAS, the Authority and the Fiscal Agent have agreed to said provisions for the benefit of FGIC to induce FGIC to issue the FGIC Bond Insurance Policy;

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants herein set forth, the Authority and the Fiscal Agent hereby agree as follows:

Section 1. Any Reserve Account Insurance Policy or Reserve Account Letter of Credit, other than one provided by FGIC, shall conform to FGIC's then applicable requirements

Section 2. (a) FGIC shall receive immediate notice of any payment default and notice of any other default known to the Fiscal Agent or the Authority within 30 days of the Fiscal Agent's or the Authority's knowledge thereof.

(b) FGIC shall be included as a party in interest and as a party entitled to request the Fiscal Agent or receiver to intervene in judicial proceedings that affect the Bonds or the security therefor. The Fiscal Agent or receiver shall be required to accept notice of default from FGIC.

(c) FGIC shall have the right to consent in lieu of the owners of Insured Bonds to all amendments to the Resolution to which the Fiscal Agent and the owners of Insured Bonds have the right to consent, as long as FGIC is not in default on its obligations under the FGIC Bond Insurance Policy. Copies of any such amendments which have been consented to by FGIC shall be sent to Standard &

Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. FGIC shall be recognized as the registered owner of each Insured Bond for the purposes of exercising all rights and privileges available to bondholders under the Resolution. FGIC shall have the right to institute any suit, action, or proceeding at law or in equity under the same terms as a holder of an Insured Bond in accordance with applicable provisions of the Resolution.

(d) FGIC shall receive notice of the resignation or removal of the Fiscal Agent and the appointment of any successor thereto.

Section 3. Only cash, direct non-callable obligations of the United States of America and securities fully and unconditionally guaranteed as to the timely payment of principal and interest by the United States of America, to which direct obligation or guarantee the full faith and credit of the United States of America has been pledged, Refcorp interest strips, CATS, TIGRS, STRPS, or defeased municipal bonds rated AAA by S&P or Aaa by Moody's (or any combination of the foregoing) shall be used to effect defeasance of the Insured Bonds unless FGIC otherwise approves. In the event of an advance refunding, the Authority shall cause to be delivered a verification report of an independent nationally recognized certified public accountant. If a forward supply contract is employed in connection with the refunding, (i) such verification report shall expressly state that the adequacy of the escrow to accomplish the refunding relies solely on the initial escrowed investments and the maturing principal thereof and interest income thereon and does not assume performance under or compliance with the forward supply contract, and (ii) the applicable escrow agreement shall provide that in the event of any discrepancy or difference between the terms of the forward supply contract and the escrow agreement (or the authorizing document, if no separate escrow agreement is utilized), the terms of the escrow agreement or authorizing document, if applicable, shall be controlling.

Section 4. FGIC shall be provided with the following information:

(a) Notice from the Fiscal Agent of any drawing upon or deficiency due to market fluctuation in the amount, if any, on deposit, in the Reserve Account;

(b) Notice from the Fiscal Agent of the redemption, other than mandatory sinking fund redemption, of any of the Insured Bonds, or of any advance refunding of the Insured Bonds, including the principal amount, maturities and CUSIP numbers thereof;

(c) Notice from the Authority of any material events pursuant to Rule 15c2-12 under the Securities Exchange Act of 1934; and

(d) Such additional information as FGIC may reasonably request from time to time.

Section 5. All reports, notices and correspondence to be delivered to FSA shall be delivered to FGIC at the following address: Financial Guaranty Insurance Company, 125 Park Avenue, New York, New York 10017, Attention: Risk Management. All reports, notices and correspondence to be delivered to FSA's insurance agent shall be delivered to the following address: U.S. Bank Trust National Association, 100 Wall Street, 19th Floor, New York, New York 10005, Attention: Corporate Trust Department.

2

## STATEMENT OF INSURANCE

Financial Guaranty Insurance Company ("Financial Guaranty") has issued a policy containing the following provisions with respect to this bond, such policy being on file at the principal office of JPMorgan Chase Bank, as fiscal agent (the "Fiscal Agent"):

Financial Guaranty hereby unconditionally and irrevocably agrees to pay for disbursement to the holder of this bond that portion of the principal or accreted value (if applicable) of and interest on this bond which is then due for payment and which Puerto Rico Highways and Transportation Authority (the "Issuer") shall have failed to provide. Due for payment means, with respect to principal or accreted value (if applicable), the stated maturity date thereof, or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which the payment of principal or accreted value (if applicable) of this bond is due by reason of call for redemption (other than mandatory sinking fund redemption), acceleration or other advancement of maturity, and with respect to interest, the stated date for payment of such interest.

Upon receipt of telephonic or telegraphic notice, subsequently confirmed in writing, or written notice by registered or certified mail, from the holder of this bond or the Fiscal Agent to Financial Guaranty that the required payment of principal, accreted value or interest (as applicable) has not been made by the Issuer to the Fiscal Agent, Financial Guaranty on the due date of such payment or within one business day after receipt of notice of such nonpayment, whichever is later, will make a deposit of funds, in an account with U.S. Bank Trust National Association, or its successor as its agent (the "Insurance Agent"), sufficient to make the portion of such payment not paid by the Issuer. Upon presentation to the Insurance Agent of evidence satisfactory to it of the bondholder's right to receive such payment and any appropriate instruments of assignment required to vest all of such bondholder's right to such payment in Financial Guaranty, the Insurance Agent will disburse such amount to the bondholder.

As used herein the term "holder of this bond" or "bondholder" means the person other than the Issuer who at the time of nonpayment of this bond is entitled under the terms of such bond to payment thereof.

The policy is non-cancellable for any reason.

**FINANCIAL GUARANTY INSURANCE COMPANY**

3

NY1 5361366v2

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority and JPMorgan Chase Bank, as Fiscal Agent, have caused this Resolution Regarding Bond Insurance to be executed by their authorized officers, all as of the day and year first above written.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

By: _____
Executive Director

JPMORGAN CHASE BANK, as Fiscal Agent

By: _____
Vice President

4