## **EXHIBIT BB - PART 2**

(H. B. 1133)

**(No. 46-2017)**

(Approved July 19, 2017)

# AN ACT

To amend Sections 4042.03 and 4042.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico"; amend Sections 2, 26, and 27 of Act No. 272-2003, as amended, known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act"; amend Section 103 of Act No. 5-2017, known as the "Puerto Rico Financial Emergency and Fiscal Responsibility Act of 2017"; amend Sections 12 and 26 of Act No. 3-2017, better known as the "Act to Address the Economic, Fiscal, and Budget Crisis to Guarantee the Operations of the Government of Puerto Rico," in order to establish additional revenue and liquidity measures for the Government of Puerto Rico; establish that certain merchants are required to remit the Sales and Use Tax in semimonthly installments; clarify the responsibility of certain merchant intermediaries with respect to the collection of the Room Occupancy Rate Tax; extend the period of emergency established in the "Puerto Rico Financial Emergency and Fiscal Responsibility Act of 2017"; modify the report requirement provided for in Act No. 3-2017 from quarterly reports to semiannual reports, within ninety (90) days as of the approval of this Act and during its effectiveness; and for other related purposes.

## STATEMENT OF MOTIVES

Puerto Rico is currently undergoing a serious fiscal and social crisis. Said crisis was caused, in part, by a lack of expenditure controls, sustainable development measures, as well as management information systems that promote clarity and transparency in government affairs.

According to data provided by the U.S. Department of the Treasury, Puerto Rico is suffering a 14.6% cumulative economic contraction in the Gross State Product (actual GSP) with a forecast of an additional 3% contraction in the next two years. For years, the Government of Puerto Rico has operated with a structural deficit

that has been financed with bond issues and loans from the Government Development Bank. The Government of Puerto Rico has been lacking liquidity for over a year, and the tax refunds, the payments to contractors, pensioners' funds, and intra-governmental loans have been used to substitute sources of liquidity. The Government Development Bank has failed to meet its obligations to bondholders since May 1, 2016, and is no longer fulfilling its duty to provide liquidity. Moreover, retirement systems are practically insolvent.

Bad past decisions combined with our defenselessness as a colony led the United States Congress to promulgate the Puerto Rico Oversight, Management, and Economic Stability Act, known as PROMESA, Public Law 114-187, which delegated vast powers to the Financial Oversight Board (hereinafter the "Oversight Board"). Pursuant to PROMESA, any ongoing fiscal, budget, legislative, or executive actions taken in Puerto Rico, as well as any debt restructuring, whether consensual or not, as well as any debt issue, guarantee, exchange, modification, repurchase, or redemption is subject to oversight.

Through Section 4 of PROMESA, the Congress expressly stated its intent that said Act shall prevail over any state legislation that is in conflict with PROMESA. Section 8(2) likewise reasserts this provision by providing that the Government of Puerto Rico may not enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of PROMESA, as determined by the Oversight Board. Hence, we cannot promulgate legislation to defeat or impair PROMESA, its provisions, and its scope. It is evident therefore that we must work within the parameters of PROMESA to initiate the financial and fiscal recovery of Puerto Rico and, in turn, solve our political status issue.

At the beginning of our Administration, we found a cash deficit of over $7 billion as certified by the Federal Treasury and the Oversight Board. In other words, what was passed on to us was a Government with no access to capital markets, with

a "junk" credit rating, with no liquidity and no transparency in public finances, where public spending was excessive, and the public debt amounted to billions of dollars. Furthermore, the Governor had the enormous task of restoring the credibility of the Island in the market and before the Oversight Board. We must guarantee therefore a Government that spends in accordance with the actual revenues generated.

Since January 2nd, we have been implementing a systematic plan to control government spending, reactivate our economy, and allow for the conditions to create more and better jobs in the private sector. We are showing the world that Puerto Rico is open to do business in an environment of government stability and security. We have worked nonstop, and the approval of over twenty reform measures during the first three (3) months of this Administration proves it. Undoubtedly, our efforts have changed the course of Puerto Rico and have set it on a path of fiscal responsibility.

On February 28, 2017, the Governor submitted a Fiscal Plan that is complete, thorough, real, and also sensible to the needs of our People. On March 13, 2017, the Oversight Board accepted and certified our Fiscal Plan together with a series of contingencies to guarantee that government employees shall not be dismissed, the workweek shall not be affected, the People's access to healthcare services shall be maintained, and the pensions of those who are most vulnerable shall be protected.

The Fiscal Plan's approved measures are geared toward achieving the fiscal goals, promoting the economic development and our capacity to restore our credibility, allowing the change to translate into a long-term benefit rather than a mere cutback and, most of all, ensuring that those who are most vulnerable and those who work hard every day have a better quality of life. The validation of the Fiscal Plan represents the recognition of the credibility of the new Government. We have shown that the times of incoherence and improvisation are over to give way to working as a team and obtaining results that inure to the benefit of Puerto Rico.

The changes we are implementing are not easy and will take time, but they will also yield results within the first two years. Under the certified Fiscal Plan, we shall be able to strike a balance between revenues and expenditures by Fiscal Year 2019. Now is the time to execute these changes. The contingencies of the Fiscal Plan require the Government's compliance. Liquidity must be ensured in order to avoid any impact on the salary of government employees, the health of the People, and the income of pensioners.

Even though there are many obstacles that we must overcome in our journey toward a definite recovery, there is hope and optimism among our people. We must seize this moment and rise to the challenges in order to successfully achieve the significant changes that Puerto Rico needs.

In view of our dire liquidity situation, we need to adopt measures to improve the treasury's condition. This Act provides therefor in two instances:

Currently, Sections 1061.20 and 1061.23 of the Internal Revenue Code of 2011, as amended, better known as the "Internal Revenue Code for a New Puerto Rico," (the Code) establishes the requirement for individuals and corporations alike to pay an estimated income tax, provided for in Subtitle A of the Code, in four installments during a taxable year. This estimated tax mechanism assists the Government in maintaining its liquidity throughout the fiscal year in lieu of relying on the payment of taxes after the fifteenth day of the fourth month following the close of the taxpayer's fiscal year. This amendment provides for certain taxpayers to remit the payment of the SUT to the Department of the Treasury in semimonthly installments. In doing so, a greater cash flow is achieved and the constant receipt of revenues is thus allowed.

In keeping with the foregoing, this Legislative Assembly deems it meritorious to include the Sales and Use tax in the estimated tax system for the purpose of improving the liquidity of the Island's treasury and meeting the obligations of the Government of Puerto Rico responsibly and timely.

Moreover, the tourism industry has experienced great changes over the last decade, specifically upon the birth of the sharing economy and the online marketplace. The popularity of these platforms that serve as intermediaries between hoteliers and potential guests has a significant impact on Puerto Rico's tourism industry. The increase in reservations using these intermediaries coupled with the lack of clarity of Act No. 272-2003, as amended, better known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act," in terms of the process to be followed in the case of these new scenarios may potentially prevent the Government of Puerto Rico from collecting large amounts of revenues on account of the room occupancy rate.

During Fiscal Year 2016-2017, the proceeds from the room occupancy rate tax were reduced by over $10,000,000.00 compared to Fiscal Year 2015-2016. This decrease is the result of the effects of the ZIKA virus, among other issues, in addition to the fact that many visitors are resorting to these new platforms and business models to reserve their stays.

The Puerto Rico Tourism Company argues that a significant number of lodging providers of these new models and platforms are not registered as required by law due to the existing lack of clarity of the current definition of Hotelier of Act No. 272-2003. Based on the latest figures on the number of lodgings registered in certain platforms (average rate and occupancy percentage), it is estimated that the room occupancy rate tax to be collected from these platforms amounts to around $560,000 a month. From this monthly total, it is estimated that 50% is not being reported by Hoteliers. This represents losses of approximately $280,000 monthly

and $3,360,000 annually. These numbers shall increase exponentially as the popularity of these new business models continues to increase and visitors choose them to reserve their stays rather than resorting to the traditional lodging reservation system.

The definition of Hotelier of Act No. 272-2003 is comprehensive but lacks specificity for purposes of addressing technological innovations and, in turn, requiring these new business models that have made their way into the market and serve as intermediaries between hoteliers and guests to collect the room occupancy rate. This ambiguity has led many of these intermediaries to disengage from their responsibility to collect the room occupancy rate arguing that such legislation cannot be applied to their specific business models. To clarify this juridical loophole, these amendments modify certain definitions and descriptions of Act No. 272-2003 so as to adjust them to the modern reality, which now includes these new online business platforms and models created in recent years, and for which the Act does not explicitly provides. Likewise, the manner in which the room occupancy rate shall be computed in the specific case of the intermediaries' business model is clarified in order to meet the obligations currently imposed on Hoteliers by legislation.

As shown, the Tourism Company faces great challenges posed by the practices of some intermediaries who evidently seek to avoid complying with the collection and payment of such tax. Such practice not only affects the activities of the Tourism Company and the economy of Puerto Rico in general, but also is illegal. Hence, this Legislative Assembly believes that approving the amendments to the aforementioned Act is warranted in order to ensure that the Government of Puerto Rico collects such important revenues and that consumers are able to use these platforms, intermediaries, and/or new business models at their leisure. In this manner, local hoteliers and the aforementioned platforms shall be on an equal footing. These amendments shall allow for the oversight of all hoteliers as well as

the fair competition in this market for all those who are subject to the requirements of Act No. 272-2003 as of this date. Thus, the collection, withholding, and subsequent payment of the room occupancy rate is guaranteed in connection with transactions conducted through these platforms, intermediaries, and/or new business models that serve as intermediaries between the Hotelier and the Occupant or Guest.

The Government of Puerto Rico is in the process of implementing the measures included in the Fiscal Plan. In turn, the Government is undergoing a debt restructuring process under Title III of the "Puerto Rico Oversight, Management, and Economic Stability Act," (PROMESA). Such processes shall lead the way toward the economic and fiscal recovery of Puerto Rico. For such reason, this Legislative Assembly deems it necessary to provide the Government of Puerto Rico with the tools and room necessary to allow for the implementation of the measures included in the Fiscal Plan and the completion of the debt restructuring process.

On January 29, 2017, this Legislative Assembly approved Act No. 5-2017, known as the "Puerto Rico Financial Emergency and Fiscal Responsibility Act of 2017" (the Fiscal Responsibility Act). Such Act declared an emergency period (the "Emergency Period") until May 1, 2017, which may be extended for three additional months through an executive order of the Governor. On April 30, 2017, the Governor issued Executive Order 2017-31 whereby the Emergency Period was extended for three additional months, until August 1st, 2017, among other things. This Legislative Assembly, however, believes that the Government needs additional time to implement successfully the measures included in the Fiscal Plan and to complete the debt restructuring. Therefore, this bill extends the Emergency Period until December 31, 2017, and allows the Government to extend it, if necessary, for additional periods of not more than six months each, while a Financial Oversight Board for Puerto Rico is still constituted under PROMESA.

This Administration believes that this legislative proposal is necessary especially in view of the fiscal situation that we are currently undergoing.

This Act provides different measures that this Administration is taking to comply with and further the implementation of the Fiscal Plan certified in accordance with the provisions of PROMESA. The matters addressed herein are all germane since they are geared toward compliance with the Fiscal Plan.

Section 17 of Article III of the Constitution of Puerto Rico provides that: "Every bill, […] shall be confined to one subject, which shall be clearly expressed in its title, and any part of an act whose subject has not been expressed in the title shall be void." Said Section establishes the rule of only one subject, which requires that every law approved by the Legislative Assembly embraces no more than one subject. On this matter, the Supreme Court of Puerto Rico has held that said provision "does not require the title to be a detailed account of the contents of the law, but rather a mere indicator of the subject matter covered thereunder." [Translation supplied]. *Herrero v. Emmanuelli*, 179 D.P.R. 277, 295 (2010); *Rodríguez v. Corte*, 60 D.P.R. 919, 922 (1942).

Moreover, the case law has been consistent in establishing that only when a case is clear and conclusive it is thus warranted to void a law that violates said constitutional provision. *Dorante v. Wrangler of P.R.,* 145 D.P.R. 408, 429-431 (1998) and cases cited therein. Our highest court has "adopted a stance understandably lax not to curtail lawmakers." [Translation supplied]. *Herrero v. Emmanuelli, supra. See also*, J.J. Álvarez-González, *Derecho Constitucional de Puerto Rico y Relaciones Constitucionales con los Estados Unidos* [Constitutional Law of Puerto Rico and Constitutional Relationships with the United States], Bogotá, Editorial Temis, S.A., 2009, p. 244. In this sense, the Supreme Court has held that "**a strict interpretation of the constitutional provision may impair and hinder the legislative process, since it will compel the lawmaker to enact**

**multiple laws to regulate one general subject or matter**." *Herrero v. Emmanuelli*, *supra*, [Emphasis added]. *See also*, M. H. Ruud, No Law Shall Embrace More Than One Subject, 42 Minn. L. Rev. 389,393-394 (1958). That is,

> The requirement is not intended as a subterfuge to destroy valid legislation, but rather as a guarantee that the legislative process is to be carried out with transparency and that each bill is to be discussed and analyzed in depth before it is approved.

*Herrero v. Emmanuelli, supra*, pp. 295-296.

Therefore, upon examining the validity of an act in light of the one subject rule, it is necessary to consider all of the provisions of a law in order to determine whether these have a correlation or not and if they pertain to the subject expressed in the title. *Id.* What constitutes "only one subject" is construed liberally without neglecting the purpose and objective of the constitutional requirement. In this regard, "a statute may address all the topics related to the subject matter and all of the means that may be fairly considered to be supplementary and necessary or appropriate to fulfill the purposes inherent to the general subject."[Translation supplied] *Id. See also*, R. E. Bernier & J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico* [Approval and Interpretation of the Laws of Puerto Rico], Segunda Edición, San Juan, Publicaciones JTS, 1987, p. 81.

This Act addresses one subject: to achieve full compliance with the Fiscal Plan certified by the Board and, within such context, allow additional time to successfully implement the measures of the Fiscal Plan and complete the debt restructuring. For such reason, we promulgate this Act, which addresses several topics geared to complying with the Fiscal Plan and our current financial situation.

Once again, we reassert our commitment to set Puerto Rico on a path of fiscal responsibility and economic development in order to be able to overcome the current crisis. We will stop at nothing to restore our Island's economic and fiscal stability which is necessary for the welfare of our People.

***BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:***

Section 1.- Subsection (a) of Section 4042.03 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 4042.03.- Time to Remit the Sales and Use Tax

(a)      The taxes imposed in this Subtitle shall be payable to the Secretary by the person liable for issuing the payment, on the dates set in this Section.

(1)      …

(2)      Sales and Use Tax.- In general, the sales tax imposed in this Subtitle shall be payable to the Secretary by the person liable for issuing the payment not later than the twentieth (20th) day of the month following the month in which said tax was collected, or on that other date or manner, as established by the Secretary regarding the manner, time, and conditions that shall govern the payment or deposit of said withheld taxes.

(A)      Payment of Sales Tax in Semimonthly Installments.- Effective on July 2017, any person who complies with the provisions of clause (i) of this subparagraph (A) shall remit the sales tax in semimonthly installments in accordance with this subparagraph.

(i)      Person subject to the payment of the Sales Tax in Semimonthly Installments.- In the following cases, the sales tax shall be payable to the Secretary in two semimonthly installments during the month in which the event that caused the imposition and payment of the sales tax occurs:

(I)     when the person is a Large Taxpayer, as this term is defined in Section 1010.01(a)(35) of this Code; or

(II)     when the person is a merchant whose average sales tax deposited monthly during the previous calendar year exceeds two thousand dollars ($2,000).

(ii)     Semimonthly Installment.- For purposes of this subparagraph (A) the first semimonthly installment shall be due on the fifteenth (15th) day of every calendar month. The second semimonthly installment shall be due on the last day of the calendar month.

(iii)     Computation of the Payment of Sales Tax in Semimonthly Installments.- It shall be understood that the merchant subject to the payment of the sales tax under this subparagraph (A) fulfilled his obligation to deposit the sales tax in semimonthly installments as established in clause (ii) above, if during the calendar month in which the event that caused the imposition and payment of the sales tax occurs the merchant deposited the lesser of the following amounts:

(I)     eighty percent (80%) of the sales tax determined for such month; or

(II)     seventy percent (70%) of the total sales tax remitted during the same month of the previous calendar year.

(iv)     Penalty for failure to deposit the Sales Tax in Semimonthly Installments.- Any person required to deposit the sales tax in semimonthly installments shall be subject to the imposition of a penalty of ten percent (10%) of the tax amount that he should have, but failed to deposit in semimonthly installments as provided in this subparagraph (A).This penalty shall be in addition to any other penalty imposed under this Code. The Secretary may exempt any person, whether in whole or in part, from the penalty provided herein when it is

shown that a noncompliance with the provisions of this subparagraph (A) was for a reasonable cause or circumstances out of his control.

        (3)    Reserved.

    (b)    …

        …"

Section 2.- Subsection (e) of Section 4042.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," is hereby amended to read as follows:

"Section 4042.04.- Payment Method

    (a)    …

…

    (e)    Regarding any payment of sales and use tax, the Secretary shall accept all payments as remitted on time if they are postmarked, or if the date on the electronic payment receipt is not later than the tenth (10th) or twentieth (20th) day of the month following the month in which said taxes are collected or the month following the month in which the transaction subject to taxation was carried out, as the case may be, in accordance with Section 4042.03 of this Code, or not later than the last day of the appropriate semimonthly period, in accordance with Section 4042.03(a)(2)(A)(ii) of this Code. Should the day of payment fall on a Saturday, Sunday, or Federal or Commonwealth holiday, the payments shall be accepted if they are postmarked on, or if the date of electronic payment receipt is the following business day. Provided, that those payments that the Secretary requires to be electronically transferred must be received not later than the day of payment established in Section 4042.03 of this Code, subject to the provisions of this Section, or on the date, or on the date established by the Secretary through regulations, pursuant to Section 4042.03 of this Subtitle, as applicable."

Section 3.- Section 2 of Act No. 272-2003, as amended, better known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act," is hereby amended to read as follows:

"Section 2.- Definitions

For purposes of this Act, the following terms shall be defined as follows:

(1)      Entry…

(2)      Short-term Rentals. — Means every facility, building or part of a building leased for a period of less than ninety (90) days, devoted to the lodging of people for pay, which facility, building or part thereof is not a hotel, condohotel, all-inclusive hotel, motel, Parador, inn, guesthouse, and/or apartment hotel. Said term shall include, without limitation, any type of proposed alternative lodging such as houses, apartments, cottages, villas, mobile homes, floating homes, boats, among other types of rentals, for a period of less than ninety (90) days.

(3)      Compulsory Procedure…

(4)      Audit…

(5)      Authority…

(6)      Bank…

(7)      Guesthouse…

(8)      Room Occupancy Rate. — Means the Rate charged by an Hotelier to an Occupant or Guest for the occupancy of any room of a Lodging, valued in terms of money, whether received in cash or otherwise, including, without limitation, all the income in cash, manager's check, or credit. The definition of Room Occupancy Rate shall include, without limitation, the money received by the Lodging on account of Paid but Unused Rooms, Room Penalties and any other charge, rate, or additional tax ('fees,' 'resort fees,' and/or 'taxes') that a hotelier charges to an Occupant or Guest for a stay in a lodging. In the event of offers, specials, stay packages, or discount programs, sold or offered by any means including, but not limited to,

internet or any application software, any refundable items such as security deposits, charged to an occupant or guest as well as any commission on account of the services rendered by the intermediary shall be exempt from the room occupancy rate, provided that said Commissions are disclosed to the Company at the time of filing the monthly return and are duly evidenced by the Hotelier to the Company. If the commissions are paid to the intermediary as part of the Rate charged by the Hotelier to the Occupant or Guest, then, such Commission shall be subject to the room occupancy rate. In the event that the amount charged to the Occupant or Guest is different from that received by the Hotelier, it shall be understood that the Room Occupancy Rate shall be the higher of the two amounts.

(9)     Rate for paid but unused room…

(10)    Center…

(11)    Room cost…

(12)    Commission – Any payment or compensation that the Intermediary receives on account of agreed or rendered services.

(13)    Company…

(14)    National Parks Company…

(15)    Taxpayer…

(16)    Corporation…

(17)    Declaration…

(18)    Deficiency…

(19)    Debt…

(20)    Director…

(21)    Mathematical or clerical error…

(22)    Room…

(23)   Hotelier. — Means any natural or juridical person that operates a Lodging in Puerto Rico including, without limitation, the owner, agent, proprietor, operator, lessee, mortgagor sublessee or the holder thereof, providers, Intermediaries, owners, or operators of properties used as Short-term Rentals. For purposes of this Act, the term agent shall include those individuals including, without limitation, real estate brokers that collect the room occupancy rate for Short-term Rentals for the lodging of guests.

(24)   Lodging. — Means any furnished building or facility, commonly used and maintained open for the lodging of guests for a rental rate, which derives revenues from the rental of rooms, and that within its offerings provides rental rates computed daily, weekly, fractionally, or by a global rent on account of an all-inclusive concept. The term Lodging shall also include hotels, condohotels, all-inclusive hotels, motels, Paradores, bed and breakfast, Short-term Rentals, inns, guesthouses, apartment hotels, and recreational facilities operated by the agencies or instrumentalities of the Government of Puerto Rico.

(25)   All-inclusive hotel…

(26)   Tax…

(27)   Intermediary. — Means any natural or juridical person that by any means, including the internet and application software, offers or facilitates occupancy between guests and providers, owners, or operators of property used as Short-term Rentals, even when such intermediary does not operate, directly or indirectly, such property used as a Short-term Rental. The term also includes natural or juridical persons who promote or sell offers, specials, stay packages, or discount programs to stay at a Lodging by any means, including, but not limited to, the internet and any application software.

(28)   Bureau…

(29)   Notification…

(30)   Taxpayer Identification Number. — Means the number the Company shall assign to the Taxpayer, and that must be used by said Taxpayer in the Declaration, as shall be established by this Act or the regulations approved hereunder. In the case of Intermediaries between guests and providers, owners, or operators of property used as Short-term Rentals, such Intermediaries shall require said providers, owners, or operators of property used as Short-term Rentals to register with the Company and obtain a Taxpayer Identification Number prior to doing business with them.

(31)   Occupancy…

(32)   Occupant or Guest…

(33)   Room Penalty…

(34)   Review…

(35)   Rate…

(36)   Daily Average Rate…

(37)   Assessment…"

Section 4.- Section 26 of Act No. 272-2003, as amended, better known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act," is hereby amended to read as follows:

"Section 26.- Tax Identification Number

Every Lodging and/or Hotelier subject to the provisions of this Act shall apply for and obtain a Tax Identification Number from the Company, and for this purpose shall follow the procedures adopted by the Company through regulations approved to such effect. Any natural or juridical person who is an intermediary between guests and providers, owners, or operators of property used as Short-term Rentals shall require said providers, owners, or operators of property used as Short-term Rentals to register with the Company as a Taxpayer to obtain a Taxpayer Identification Number prior to doing business with them."

Section 5.- Section 27 of Act No. 272-2003, as amended, better known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act," is hereby amended to read as follows:

"Section 27.- Responsibility of the Hotelier to Withhold and Remit the Tax to the Company

A.      Every Hotelier shall be required to collect, withhold, and remit to the Company the Tax established in Section 24 of this Act. Every Intermediary shall be required to collect, withhold, and remit said Tax to the Company. In the case of natural or juridical persons who promote or sell offers, specials, stay packages, or discount programs to stay at a Lodging by any means, including, but not limited to, the internet and any application software, such natural or juridical persons shall be required to collect, withhold, and remit said Tax to the Company.

B.      …

C.      …

D.      …

E.      …"

Section 6.- Rulemaking Authority

The Secretary of the Treasury shall establish through regulations, circular letter, or other administrative determination of a general nature, the rules necessary for the application of this Act.

Section 7.- Subsection (q) of Section 103 of Act No. 5-2017 is hereby amended to read entirely as follows:

"Article 103.– Definitions

The following words and terms, when used in this Act, shall have the meaning stated below:

...

(q)     'Emergency Period' shall mean the period beginning on the effective date of this Act and ending on December 31, 2017, provided, that so long as the Oversight Board is constituted for Puerto Rico pursuant to PROMESA, the Governor may, if necessary, extend such period for additional terms of no more than six (6) months each through executive order.

...."

Section 8.- Section 12 of Act No. 3-2017, better known as the "Act to Address the Economic, Fiscal, and Budget Crisis to Guarantee the Operations of the Government of Puerto Rico," is hereby amended to read as follows:

"Section 12.- Fiscal Control and Economic Reconstruction.-

…

SEMIANNUAL REPORT.- Every Entity of the Executive Branch shall have the ministerial duty to draft and file with the Governor and the Offices of the Clerk of the House of Representatives and of the Secretary of the Senate of Puerto Rico a semiannual report within ninety (90) days after the approval of this Act and during the effective term thereof, stating separately and in detail the measures taken, as well as the results and any other pertinent information to show and assess compliance with the provisions of this Act.

…"

Section 9.- Section 26 of Act No. 3-2017, better known as the "Act to Address the Economic, Fiscal, and Budget Crisis to Guarantee the Operations of the Government of Puerto Rico," is hereby amended to read a follows:

"Section 26.- Fiduciary Duty.-

…

The Office of Management and Budget shall be responsible for regulating and implementing the provisions of this Section pertaining to the imposition of administrative fines. Moreover, the Office of Management and Budget shall have

the ministerial duty to draft and file with the Governor and with the Offices of the Secretary of the Senate and of the Clerk of the House of Representatives a semiannual report within ninety (90) days after the approval of this Act and during the effective term thereof, stating separately and in detail the measures taken, as well as the results and any other pertinent information to show and assess compliance with the provisions of this Act.

…"

Section 10.- Severability

If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the holding, ruling, or judgment to such effect shall not affect, impair, or invalidate the remainder of this Act. The effect of such holding shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act thus held to be null or unconstitutional. If the application of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act to any person or circumstance were held to be null or unconstitutional, the holding, ruling, or judgment to such effect shall not affect or invalidate the application of the remainder of this Act to such persons or circumstances where it may be validly applied. It is the express and unequivocal will of this Legislative Assembly that the courts enforce the provisions and application thereof to the greatest extent possible, even if it renders ineffective, nullifies, invalidates, impairs, or holds to be unconstitutional any part thereof, or even if it renders ineffective, invalidates, or holds to be unconstitutional the application thereof to any person or circumstance. This Legislative Assembly would have approved this Act regardless of any determination of severability that the Court may make.

Section 11.- Effectiveness

This Act shall take effect immediately after its approval.

# CERTIFICATION

I hereby certify to the Secretary of State that the following **Act No. 46-2017 (H. B. 1133)** of the **1st Regular Session** of the **18th Legislative Assembly of Puerto Rico:**

**AN ACT** to amend Sections 4042.03 and 4042.04 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico"; amend Sections 2, 26, and 27 of Act No. 272-2003, as amended, known as the "Commonwealth of Puerto Rico Room Occupancy Rate Tax Act"; amend Section 103 of Act No. 5-2017, known as the "Puerto Rico Financial Emergency and Fiscal Responsibility Act of 2017"; amend Sections 12 and 26 of Act No. 3-2017, better known as the "Act to Address the Economic, Fiscal, and Budget Crisis to Guarantee the Operations of the Government of Puerto Rico," in order to establish additional revenue and liquidity measures for the Government of Puerto Rico; establish that certain merchants are required to remit the Sales and Use Tax in semimonthly installments; […]

has been translated from Spanish to English and that the English version is correct.

In San Juan, Puerto Rico, on this 12th day of February, 2018.

Orlando Pagán-Ramírez
Acting Director