**Opposition Deadline: January 22, 2020 12:00 PM AST**
**Reply Deadline: January 25, 2020 12:00 PM AST**
**Hearing Date: January 29, 2020 9:30 AM AST**

### UNITED STATES DISTRICT COURT
### DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re*<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### MOTION FOR LEAVE TO AMEND MOTION OF AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AND FINANCIAL GUARANTY INSURANCE COMPANY CONCERNING APPLICATION OF THE AUTOMATIC STAY TO THE REVENUES SECURING PRIFA RUM TAX BONDS

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747), and (vi) Puerto Rico Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT FACTUAL BACKGROUND ..............................................................................3

RELIEF REQUESTED...............................................................................................................8

JURISDICTION AND VENUE ................................................................................................ 8

ARGUMENT...............................................................................................................................8

     I.      THE STANDARD FOR AMENDMENT UNDER RULE 15 IS A
LIBERAL ONE. ............................................................................................... 8

     II.     THE AMENDED MOTION EASILY MEETS THE LIBERAL RULE 15
STANDARD........................................................................................... 9

CONCLUSION..................................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Christopher v. Mobil Oil Corp.*,
    149 F.R.D. 539 (E.D. Tex. 1993).........................................................................................11

*Foman v. Davis*,
    371 U.S. 178 (1962)...............................................................................................................8

*Forward Fin. LLC v. Maxx Powersport LLC*,
    2017 WL 5892198 (D. Mass. Nov. 29, 2017) .......................................................13

*Gracia-Gracia v. Fin. Oversight & Mgmt. Bd.*,
    939 F.3d 340 (1st Cir. 2019)............................................................................... *passim*

*Gutman v. Equidyne Extractive Indus. 1980 Petro/Coal Program I*,
    769 F. Supp. 121 (S.D.N.Y. 1991).......................................................................11

*Hesterman v. RPM Int'l Inc.*,
    2019 WL 3219377 (W.D. Wash. July 17, 2019) ..................................................13

*Hill v. Mitchell*,
    2005 WL 8162499 (S.D. Ohio Dec. 30, 2005) .....................................................11

*McFadyen v. Duke Univ.*,
    2010 WL 11468631 (M.D.N.C. Feb. 16, 2010) ....................................................11

*Sanchez v. KHBJR Enters. LLC*,
    2018 WL 7350679 (W.D. Tex. Apr. 12, 2018)........................................................9

*SEC v. McGinnis*,
    2014 WL 12717668 (D. Vt. Mar. 3, 2014) ...........................................................14

*Torres-Álamo v. Puerto Rico*,
    502 F.3d 20 (1st Cir. 2007)........................................................................1, 3, 8, 13

**Statutes**

11 U.S.C. § 362(d)(1)-(2) ..........................................................................................10

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) ...............................................................................................8

Ambac Assurance Corporation ("Ambac"), Assured Guaranty Corp. ("AGC"), Assured Guaranty Municipal Corp. (together with AGC, "Assured"), and Financial Guaranty Insurance Company ("FGIC" and, collectively with the foregoing, the "Movants") hereby move this Court for an order, substantially in the form and substance attached as **Exhibit A** hereto, granting the Movants leave to amend *Ambac Assurance Corporation's Motion and Memorandum of Law in Support of Its Motion Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* (ECF No. 7176, the "PRIFA Stay Motion") and to file an amended motion in substantially the form and substance attached as **Exhibit B** hereto (the "Amended Motion").[2] In support of this motion, the Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1. The standard for granting leave to amend under Rule 15 is a "liberal" one, and there are only "limited reasons for denying a pre-judgment motion to amend[,]" including "undue delay, bad faith, futility and the absence of due diligence on the movant's part." *Torres-Álamo v. Puerto Rico*, 502 F.3d 20, 25 (1st Cir. 2007). Under this liberal standard, the Movants should be permitted to amend the PRIFA Stay Motion to address a number of significant legal and factual developments since the completion of briefing on that motion in July 2019.

2. *First*, amendment is warranted to allow the Trustee[3] to join the Amended Motion. In their opposition to the PRIFA Stay Motion, the Government Parties'[4] leading argument was

---

[2] A redline showing the changes from the PRIFA Stay Motion to the Amended Motion is attached hereto as **Exhibit C**.

[3] The "Trustee" refers to the trustee under the Trust Agreement dated October 1, 1988 between the Puerto Rico Infrastructure Financing Authority ("PRIFA") and Citibank N.A., as Trustee (the "Trust Agreement"). Ambac notes that under the Trust Agreement, Citibank N.A. was designated as the original trustee, but U.S. Bank Trust National Association has since been named the successor trustee.

[4] The "Government Parties" refers to the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF").

that the Movants lacked standing to seek relief from the stay, on the purported basis that only the
Trustee could seek such relief.  While the Movants do not agree with the Government Parties'
position, in an effort to streamline the issues before the Court, and pursuant to their rights under
the Trust Agreement, Ambac and FGIC—who together insure a majority of the PRIFA bonds—
have directed the Trustee to enforce bondholders' rights under the Trust Agreement by joining as
a signatory to the Amended Motion, and the Trustee has agreed to join.  The Trustee's joinder in
the Amended Motion would ensure the protection of the rights of all bondholders to pursue the
recovery of the Pledged Rum Taxes,[5] would cure any purported defect of standing in the PRIFA
Stay Motion that the Government Parties asserted (to the extent one existed at all), and would
reduce the scope of disputed issues before the Court.  That is plainly a valid basis for amendment.

3.     *Second*, amendment should be permitted to allow the Movants to address, and
present their arguments in light of, the First Circuit's intervening—and directly controlling—
decision in *Gracia-Gracia v. Financial Oversight & Management Board*, 939 F.3d 340 (1st
Cir. 2019).  As discussed herein, the First Circuit's holdings in *Gracia-Gracia* are directly relevant
to the Movants' argument that they are entitled to stay relief on the basis of the Commonwealth's
lack of a property interest in the Pledged Rum Taxes, as well as the Movants' ability to identify
the trust *res* on which they assert a lien.  Justice requires that the Movants be permitted to present
their arguments in light of this new controlling authority.[6]

---

[5] The "Pledged Rum Taxes" refers to the first $117 million of federal excise taxes on sales of Puerto Rican
rum, which are remitted to the Commonwealth and in turn pledged by PRIFA to PRIFA bondholders.

[6] Moreover, in light of *Gracia-Gracia*'s articulation of the scope of the automatic stay under PROMESA,
the Amended Motion would consolidate into a footnote, and preserve for appeal, the contention previously
advanced by Ambac in the PRIFA Stay Motion that the automatic stay does not apply to the Pledged Rum
Taxes.  The proposed amendment would thereby further reduce the number of issues to be decided by the
Court.

4.      *Third*, amendment is warranted to address significant factual developments since the completion of briefing on the PRIFA Stay Motion.  The newly-obtained information supports the Movants' contention that they have a colorable claim to a lien on the Pledged Rum Taxes, and the Movants should be permitted to address that information in the Amended Motion.

5.      *Fourth*, the Amended Motion would consolidate arguments from the prior round of briefing on the PRIFA Stay Motion so that they would appear in a single brief, thereby further streamlining the presentation of the issues to the Court.

6.      *Finally*, none of the "limited reasons for denying a pre-judgment motion to amend[,]" *Torres-Álamo*, 502 F.3d at 25, are present here.  The Government Parties cannot credibly assert undue delay or bad faith since the Movants sought to amend the PRIFA Stay Motion at their first opportunity consistent with the mediation stay.  Nor can there be any legitimate argument that amendment would prejudice the Government Parties.  The Government Parties will simply respond to the Amended Motion on the same schedule as the CCDA and HTA lift-stay motions, and will respond to many of the same legal arguments in those motions, including arguments regarding the Commonwealth's lack of a property interest in certain funds in light of *Gracia-Gracia*.

## RELEVANT FACTUAL BACKGROUND

7.      Ambac filed the PRIFA Stay Motion on May 30, 2019.  In the PRIFA Stay Motion, Ambac sought a declaration that the automatic stay did not apply to two lawsuits: (1) an already-filed action against the U.S. Department of Treasury and Treasury Secretary Steven Mnuchin for an equitable lien on and escrowing of the Pledged Rum Taxes before they are transferred to the Commonwealth; and (2) an action against the Commonwealth to enforce Ambac's lien and halt the ongoing appropriation of the Pledged Rum Taxes.   (ECF No. 7176, ¶¶ 10-11, 31.) Alternatively, Ambac sought an order lifting the automatic stay under Section 362(d) so that

Ambac could pursue those actions in alternative fora.  (*Id.* ¶ 31.)  Further in the alternative, Ambac
sought an order that the Commonwealth provide adequate protection for Ambac's lien on the
Pledged Rum Taxes.  (*Id.*)[7]

8.      On June 6, 2019, the Oversight Board filed a motion to dismiss the PRIFA Stay
Motion for lack of standing, on the purported basis that only the Trustee under the Trust Agreement
has standing to institute or maintain proceedings relating to PRIFA bonds.  (ECF No. 7262.)  The
next day, the Court entered an order denying the Oversight Board's motion to dismiss, "without
prejudice to the ability of parties in interest to raise the arguments therein in connection with the
briefing of" the PRIFA Stay Motion.  (ECF No. 7324.)

9.      On July 3, 2019, the Oversight Board and AAFAF filed their oppositions to the
PRIFA Stay Motion.  (ECF Nos. 7827 & 7829, the "Oppositions.")  On July 16, 2019, Ambac and
FGIC filed a reply in further support of the PRIFA Stay Motion.  (ECF No. 8022.)  With permission
of the Court (ECF No. 8060), the Oversight Board filed a sur-reply on July 19, 2019 (ECF
No. 8164.)

10.     Five days later, at the July 24, 2019 omnibus hearing during which oral argument
on the PRIFA Stay Motion had been scheduled to occur, the Court informed the parties that it
intended to issue a stay of certain proceedings and direct the parties to participate in mediation on
certain procedural issues, but did not identify the PRIFA Stay Motion as one of the matters that
would be stayed.  (July 24, 2019 Hr'g Tr., ECF No. 8266, at 54:18-61:12.)  During the hearing,
however, counsel for Ambac and the Oversight Board informed the Court that they consented to

---

[7] On June 21, 2019, FGIC filed a joinder with respect to the PRIFA Stay Motion.  (ECF No. 7546.)  On
July 3, 2019, Assured filed a reservation of rights with respect to the PRIFA Stay Motion (ECF No. 7824),
and on July 16, 2019, Assured filed a limited joinder as to the PRIFA Stay Motion (ECF No. 8024).   On
July 23, 2019, the Trustee filed a statement reserving all rights with respect to the PRIFA Stay Motion.
(ECF No. 8221.)

making the PRIFA Stay Motion subject to the mediation stay contemplated by the Court.  (*Id.* at 80:10-82:5, 108:2-25.)   On July 24, 2019, the Court entered an order staying through November 30, 2019 certain "adversary proceedings and contested matters" set forth in Appendix I to the Stay Order, including the PRIFA Stay Motion (the "Mediation Stay"), and directing the parties in those adversary proceedings and contested matters to engage in mediation before the Mediation Team Leader to develop a procedural framework for addressing the "key issues."  (ECF No. 8244, the "Stay Order.")

11.    On October 24, 2019, the Government Parties filed a motion seeking to extend the Mediation Stay to December 31, 2019.  (ECF No. 8972, the "Stay Extension Motion.")   On October 25, 2019, the Movants filed an objection to the Mediation Stay Extension Motion.  (ECF No. 9001.)  In addition, on the same day, Ambac and FGIC filed a supplemental objection seeking, in the alternative (in the event the Court was inclined to extend the Mediation Stay), an order permitting the parties to brief the permissibility of amendment of the PRIFA Stay Motion before the expiration of the Mediation Stay.  (ECF No. 9004, the "Supplemental Objection.")   On October 28, 2019, the Court entered an order granting the Stay Extension Motion and extending the stay of "the proceedings and contested matters listed in Appendix I of the Stay Order[,]" including the PRIFA Stay Motion, until December 31, 2019.  (ECF No. 9016.)

12.    On November 27, 2019, the Mediation Team filed the *Interim Report and Recommendation of the Mediation Team*.  (ECF No. 9365, the "Interim Mediation Report.")  The Interim Mediation Report stated that "the Mediation Team understands that [Ambac] and the [Oversight Board] disagree on whether Ambac may amend the PRIFA Lift Stay Motion."  (*Id.* at 6 n.7.)  The Interim Mediation Report further stated the Oversight Board "takes the position that a hearing on the PRIFA Lift Stay Motion should take place as soon as possible, as briefed[,]" while

Ambac "takes the position that it has a right to file an amended lift stay motion and proceed forward

fully on the amended motion[,]" but that "[t]he Court will likely have to decide how and when the

PRIFA Lift Stay Motion (or an amended version of that motion) should be heard." (*Id.*)

13.     Thereafter, at the omnibus hearing on December 11, 2019, in addressing the

Mediation Team's recommendations in the Interim Mediation Report, the Court explained that it

intended to "permit Ambac to make a motion to amend its [PRIFA Stay Motion] on the same

schedule provided for new lift stay motions in terms of initiation of the motion." (Dec. 11, 2019

Hr'g Tr. (attached hereto as **Exhibit D**) at 105:18-20.)

14.     On December 19, 2019, the Court entered a scheduling order governing litigation

relating to PRIFA and other revenue bonds upon the expiration of the Mediation Stay.  (ECF

No. 9620, the "Revenue Bond Scheduling Order.")  The Revenue Bond Scheduling Order set forth

a briefing schedule on the instant motion, and indicated that the motion will be heard in connection

with the January 29, 2020 omnibus hearing, "unless the Court resolves the motion prior to the

hearing."  (*Id.* at 4.)   The Revenue Bond Scheduling Order directed that Federal Rule of

Bankruptcy Procedure 7015, incorporating Federal Rule of Civil Procedure 15, would govern this

motion. (*Id.*)

15.     Since the filing of the PRIFA Stay Motion on May 30, 2019, there also have been

several factual developments relevant to this motion.  First, on September 12, 2019, in response to

a specific discovery request propounded by Ambac in connection with its *Motion for Entry of

Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxes* (ECF

No. 7328, the "Rum Tax 2004 Motion") to which AAFAF agreed to respond,[8] AAFAF confirmed

that the Pledged Rum Taxes—which are initially deposited in a "[l]ockbox" account upon receipt

---

[8] The Rum Tax 2004 Motion is, and has been, otherwise subject to the Mediation Stay, and the Movants
have been unable to seek any other discovery on that motion.  (*See* Stay Order, App'x I.)

from the federal government—contain "transmittal information" when subsequently deposited into the Commonwealth's Treasury Single Account ("TSA").  (Email from J. Spina to A. Miller (Sept. 12, 2019) (attached hereto as **Exhibit E**).)   The Movants believe, but would require discovery to confirm, that the transmittal information associated with such deposits designates PRIFA and/or the Puerto Rico Infrastructure Fund—to which PRIFA bondholders' collateral must be transferred by statute, 3 L.P.R.A. § 1914—as the intended recipient.  As discussed below, this information is relevant to the arguments in the Amended Motion.

16.      Second, on December 5, 2019, AAFAF issued a press release indicating that funds deposited in the TSA are held in various sub-accounts subject to different financial terms, rather than some unitary pool of money.  (*See* Press Release, Puerto Rico Fiscal Agency and Financial Advisory Authority, Government Has Earned $49 Million in Interest Fiscal Year-to-Date (Dec. 5, 2019) (attached hereto as **Exhibit F**).)  That representation undermines the Oversight Board's prior contention that the Pledged Rum Taxes are unidentifiably "commingled with other Governmental public funds" by virtue of their passage through the TSA.  (*Opp'n to Ambac's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxes*, ECF No. 7891, at 5).  As discussed below, this information highlights the factual issues that will attend the Court's analysis of the existence and scope of the Movants' liens.

17.      Third, pursuant to their rights under the Trust Agreement, Ambac and FGIC (who together own or insure a majority of the PRIFA bonds) have directed the Trustee to join the Amended Motion, and the Trustee has agreed to join the Amended Motion in substantially the form and substance attached hereto as Exhibit B.

## RELIEF REQUESTED

18.     The Movants seek an order of this Court, substantially in the form and substance attached hereto as Exhibit A, granting the Movants leave to amend the PRIFA Stay Motion and to file the Amended Motion in substantially the form and substance attached hereto as Exhibit B.

## JURISDICTION AND VENUE

19.     The United States District Court for the District of Puerto Rico has subject matter jurisdiction over this matter pursuant to PROMESA § 306(a).

20.     Venue is proper pursuant to PROMESA § 307(a).

## ARGUMENT

## I.     THE STANDARD FOR AMENDMENT UNDER RULE 15 IS A LIBERAL ONE.

21.     Under Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  The First Circuit has explained that the standard for granting leave to amend under Rule 15 is a "liberal" one.  *Torres-Álamo*, 502 F.3d at 25.  Indeed, the First Circuit has held that there are only "limited reasons for denying a pre-judgment motion to amend" which include "undue delay, bad faith, futility and the absence of due diligence on the movant's part."  *Id.* (reversing district court's denial of motion to amend where the motion to amend "harbored none of these defects"); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").[9]

---

[9] Unless otherwise indicated, internal citations and quotation marks are omitted from case citations.

## II.   THE AMENDED MOTION EASILY MEETS THE LIBERAL RULE 15 STANDARD.

22.     The amendments proposed by the Movants easily meet the liberal standard permitting amendment under Rule 15.  As described below, the proposed amendments are directed at addressing several significant developments since the completion of briefing on the PRIFA Stay Motion, including the Trustee's agreement to join the Amended Motion, an intervening decision of the First Circuit, and new relevant factual information.  Amendment will also have the benefit of streamlining the issues before the Court.

23.     *First*, amendment is warranted to allow the Trustee to join the motion.  In their Oppositions to the PRIFA Stay Motion, the Government Parties' leading argument was that the Movants lacked standing to seek stay relief, on the purported basis that only the Trustee could bring such an action.  (ECF No. 7827 at 20–23; ECF No. 7829 at 2-6.)  While the Movants do not agree with the Government Parties' position, in an effort to avoid needless litigation over procedural issues, and pursuant to their rights under the Trust Agreement, Ambac and FGIC (who together own or insure a majority of the PRIFA bonds) have directed the Trustee to enforce bondholders' rights under the Trust Agreement, including by joining as a signatory to the Amended Motion, and the Trustee has agreed to join the Amended Motion.  The Trustee's joinder in the Amended Motion would cure any purported defect of standing in the PRIFA Stay Motion that the Government Parties asserted (to the extent one existed at all), obviating the need for any litigation over the issue and focusing the Court's and the parties' attention on substance.  This alone warrants allowing amendment.  *See, e.g.*, *Sanchez v. KHBJR Enters. LLC*, 2018 WL 7350679, at *1, 4 (W.D. Tex. Apr. 12, 2018) (granting plaintiffs' motion for leave to amend their complaint to add a

defendant, assert a new claim, and add additional facts under Rule 15 because the proposed amendment raised a limited number of new facts and enough time remained for discovery).[10]

24.      *Second*, amendment should be permitted to allow the Movants to address, and present their arguments in light of, *Gracia-Gracia*.  In that case, the First Circuit, addressing an appeal by a class of motor vehicle owners and operators of this Court's denial of stay relief in these Title III proceedings, observed that where a creditor asserts a property interest in contested funds, seeking stay relief under Section 362(d)(1) (which requires a grant of such relief "for cause, including the lack of adequate protection of an interest in property of such party in interest") would be "more arduous" than seeking stay relief under Section 362(d)(2) (which requires a grant of such relief if the debtor does not have any equity interest in the property and such property is not necessary to an effective reorganization).  *Gracia-Gracia*, 939 F.3d at 350; *see also* 11 U.S.C. § 362(d)(1)-(2).  Thus, *Gracia-Gracia* effectively recognized that analysis of a debtor's property interest under Section 362(d)(2) should be a threshold issue for district courts in considering requests for stay relief.  The Movants respectfully submit that they are entitled to present their arguments in light of that framing in the Amended Motion.

25.      In addition, *Gracia-Gracia* set forth a clear test for determining whether a creditor holds a property interest in contested funds, and specifically applied that test to funds that had been transferred by the Commonwealth to segregated and non-segregated accounts.  The First Circuit observed that "[i]n order to establish . . . a right as trust beneficiary, a claimant must make two showings:  first, the claimant must prove the existence and legal source of a trust relationship; second, the claimant must identify the trust fund or property and, where the trust fund has been

---

[10] Indeed, if the instant motion were denied, the Movants could seek to direct the Trustee to file its own motion to lift the stay to enforce remedies under the Trust Agreement.  Allowing amendment would avoid largely duplicative and overlapping motions.

commingled with general property of the bankrupt, sufficiently trace the property or funds." *Id.* at 350-51 (emphasis omitted). The First Circuit clarified that the "lowest intermediate balance rule" should be used to trace funds pursuant to this test. *Id.* at 351. Applying this test, the First Circuit concluded that this Court had properly denied stay relief as to "non-segregated funds" that were intermixed with other Commonwealth funds because the plaintiffs had not shown that such funds could be traced. *Id.* However, as to "segregated funds" that were held in a separate account, the plaintiffs had "made a prima facie showing of traceability and the existence of a trust relationship" based on statutory language "requir[ing] the Secretary of Treasury to hold duplicate premiums 'in its fiduciary capacity' prior to their escheatment to the Commonwealth." *Id.* Accordingly, the First Circuit remanded the case to allow this Court to make "at least a preliminary determination of the parties' respective property interests in the segregated funds" and to "reapply the *In re Sonnax* factors to [the segregated] funds in light of that preliminary determination." *Id.* at 352.

26.     Amendment is warranted to allow the Movants to present their stay-relief arguments in light of *Gracia-Gracia*, which sets forth guidance for parties to establish entitlement to stay relief on the basis of the debtor's lack of a property interest in contested funds under PROMESA—exactly the issue presented here. Indeed, courts routinely permit amendment under Rule 15 based on an intervening relevant judicial decision. *See, e.g.*, *McFadyen v. Duke Univ.*, 2010 WL 11468631, at *1 (M.D.N.C. Feb. 16, 2010) (granting plaintiffs' motion for leave to amend their complaint to assert a new cause of action based on an intervening decision from the North Carolina Supreme Court); *Hill v. Mitchell*, 2005 WL 8162499, at *1 (S.D. Ohio Dec. 30, 2005) (granting plaintiff leave to amend to add "new citations to recent case law"); *Christopher v. Mobil Oil Corp.*, 149 F.R.D. 539, 543 (E.D. Tex. 1993) (permitting plaintiffs to amend their

complaint to assert a new cause of action "after the emergence of new case law"); *Gutman v. Equidyne Extractive Indus. 1980 Petro/Coal Program I*, 769 F. Supp. 121, 124-25 (S.D.N.Y. 1991) (granting defendant's motion to amend its answer because of new case law which impacted jurisdiction over the case).

27.     Moreover, in light of *Gracia-Gracia*'s articulation of the scope of the automatic stay under PROMESA, 939 F.3d at 348-49, the Amended Motion would consolidate into a footnote, and preserve for appeal, the contention previously advanced by Ambac in the PRIFA Stay Motion that the automatic stay does not apply to the Pledged Rum Taxes.  (*See* PRIFA Stay Motion ¶¶ 32-39.)   Thus, the proposed amendment would further streamline the issues to be decided by the Court.

28.     *Third*, and relatedly, amendment is warranted to address significant factual developments since the conclusion of briefing on the PRIFA Stay Motion.  In particular, AAFAF has confirmed that the Pledged Rum Taxes—which are initially deposited in a "[l]ockbox" account upon receipt from the federal government—contain "transmittal information" when subsequently deposited into the TSA.  (Ex. E.)  In addition, AAFAF issued a press release indicating that funds deposited in the TSA are held in various sub-accounts subject to varying financial terms (*e.g.*, different rates of interest), rather than an undifferentiated pool of money, as the term "Treasury Single Account" confusingly suggests.  (Ex. F.)  As discussed in the Amended Motion, this information is relevant to whether the Movants have a lien on the Pledged Rum Taxes because it supports the Movants' argument that PRIFA, rather than the Commonwealth, is the beneficial owner of the Pledged Rum Taxes and that there is an identifiable trust *res* of Pledged Rum Taxes that the Commonwealth has received but failed to turn over to PRIFA.[11]  Courts routinely grant

---

[11] There is additional factual information solely in the possession of the Government Parties that may be relevant to the Court's determination of the scope and nature of PRIFA bondholders' lien.  Discovery of

leave to amend under Rule 15 when new facts arise that go to the core facts at issue, such as the new factual information relevant to the status of the Movants' lien. *See, e.g.*, *Hesterman v. RPM Int'l Inc.*, 2019 WL 3219377, at *1 (W.D. Wash. July 17, 2019) (permitting the plaintiffs to amend their products liability complaint where they identified additional products containing the ingredient at issue in the complaint); *Forward Fin. LLC v. Maxx Powersport LLC*, 2017 WL 5892198, at *1-3 (D. Mass. Nov. 29, 2017) (granting defendants' leave to amend their counterclaims to include new factual allegations "recently discovered by counsel [through depositions and document discovery that relate] to the arguments advanced by the parties in the motion-to-dismiss papers").

29.     *Fourth*, the Amended Motion would consolidate arguments from the prior briefing on the PRIFA Stay Motion, so that they would appear in a single brief.  Doing so would streamline the issues and ease the burden on the Court, presenting all of the "live" issues in a single brief.

30.     *Finally*, none of the "limited reasons for denying a pre-judgment motion to amend[,]" *Torres-Álamo*, 502 F.3d at 25, are present here.  The Government Parties cannot credibly assert undue delay or bad faith by the Movants.  To the contrary, the Movants sought to amend the PRIFA Stay Motion at their first opportunity.  Five days after briefing on the PRIFA Stay Motion concluded, the Court entered the Stay Order commencing the Mediation Stay on July 24, 2019.  While the Mediation Stay was in effect, on September 12, 2019, AAFAF confirmed that the Pledged Rum Taxes contain "transmittal information" when transferred from the lockbox account to the TSA (Ex. E), and on September 25, 2019, the First Circuit issued its decision in *Gracia-Gracia*.  One day after the Government Parties filed the Stay Extension Motion on

---

said information has been foreclosed by the Court's June 13, 2019 order postponing any discovery on the PRIFA Stay Motion.  (ECF No. 7420.)  Specifically, information regarding the flow of funds, the account balances at each relevant point in time, and the lowest intermediate balance, and documentation evidencing the transfer account designations and transfer notations, are all relevant under *Gracia-Gracia*.

October 24, 2019, Ambac and FGIC filed the Supplemental Objection seeking limited relief from

the Mediation Stay to brief the permissibility of amendment of the PRIFA Stay Motion (ECF

No. 9004), but that request was denied by the Court in its Stay Extension Order that extended the

Mediation Stay until December 31, 2019. (ECF No. 9016.) On December 5, 2019, AAFAF issued

the press release reflecting the differential treatment afforded to funds deposited in the TSA.

(Ex. F.) Thus, all of the new developments that the Movants seek to address by amendment to the

PRIFA Stay Motion transpired during the Mediation Stay. The Movants are now seeking to amend

the PRIFA Stay Motion with these new developments at their earliest opportunity pursuant to the

Court-ordered schedule. Accordingly, the Movants' efforts to amend have been the opposite of

dilatory—they have acted diligently and in good faith.

31.     Nor can there be any legitimate argument that amendment would prejudice the

Government Parties. They will simply respond to the Amended Motion on the same schedule as

the CCDA and HTA lift-stay motions, and will respond to many of the same legal arguments in

those motions, including arguments regarding the Commonwealth's lack of a property interest in

certain funds in light of *Gracia-Gracia*. Moreover, although the need for a party to prepare

additional briefing is not a reason to deny amendment,[12] in light of the directive in the Revenue

Bond Scheduling Order permitting the Government Parties to file a "supplemental opposition on

the issues of standing and secured status" (ECF No. 9620 at 4), there will be no need for the

Government Parties to duplicate their arguments from their Oppositions to the PRIFA Stay

Motion, further reducing any burden on the Government Parties.

---

[12] *See, e.g.*, *SEC v. McGinnis*, 2014 WL 12717668, at *4 (D. Vt. Mar. 3, 2014) (granting leave to amend and noting that "[t]o the extent Defendant McGinnis 'complains about added time and cost, [a]llegations that an amendment will require the expenditure of some additional time, effort, or money do not constitute undue prejudice'" (quoting *Sroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 153 (S.D.N.Y. 2012) (also granting leave to amend and rejecting the same argument)).

## CONCLUSION

32.     For the foregoing reasons, the Movants respectfully request that the Court enter an

order, substantially in the form and substance attached hereto as Exhibit A, granting the Movants

leave to amend the PRIFA Stay Motion and to file the Amended Motion in substantially the form

and substance attached hereto as Exhibit B.

Dated: January 16, 2020
    San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: */s/ Robert Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
        scolon@ferraiuoli.com

**MILBANK LLP**

By: */s/ Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile: (212) 530-5219
    Email: ddunne@milbank.com
        amiller@milbank.com
        gmainland@milbank.com
        johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: */s/ María E. Picó*
    María E. Picó
    USDC-PR 123214
    802 Ave. Fernández Juncos
    San Juan PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*
    Martin A. Sosland (admitted *pro hac vice*)
    5430 LBJ Freeway, Suite 1200
    Dallas, TX 75240
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    Email: martin.sosland@butlersnow.com

    Jason W. Callen (admitted *pro hac vice*)
    150 3rd Ave., S., Suite 1600
    Nashville, TN 37201
    Telephone: 615-651-6774
    Facsimile: 615-651-6701
    Email: jason.callen@butlersnow.com

*Attorneys for Financial Guaranty Insurance Company*

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: *_/s/ Heriberto Burgos Pérez_*
     Heriberto Burgos Pérez
     USDC-PR 204809
     Ricardo F. Casellas-Sánchez
     USDC-PR 203114
     Diana Pérez-Seda
     USDC-PR 232014
     P.O. Box 364924
     San Juan, PR 00936-4924
     Telephone: (787) 756-1400
     Facsimile: (787) 756-1401
     Email: hburgos@cabprlaw.com
          rcasellas@cabprlaw.com
          dperez@cabprlaw.com

**CADWALADER, WICKERSHAM & TAFT LLP**

By: *_/s/ Mark C. Ellenberg_*
     Howard R. Hawkins, Jr. (admitted *pro hac vice*)
     Mark C. Ellenberg (admitted *pro hac vice*)
     William J. Natbony (admitted *pro hac vice*)
     Ellen M. Halstead (admitted *pro hac vice*)
     Thomas J. Curtin (admitted *pro hac vice*)
     Casey J. Servais (admitted *pro hac vice*)
     200 Liberty Street
     New York, NY 10281
     Telephone: (212) 504-6000
     Facsimile: (212) 504-6666
     Email: howard.hawkins@cwt.com
          mark.ellenberg@cwt.com
          bill.natbony@cwt.com
          ellen.halstead@cwt.com
          thomas.curtin@cwt.com
          casey.servais@cwt.com

***Attorneys for Assured Guaranty Corp. and Assured
Guaranty Municipal Corp.***

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF

participants in this case.

<div style="margin-left:40%">

*/s/ Robert Cámara-Fuertes*

Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com

</div>