UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- x
: 
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
    as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.*, : (Jointly Administered)
:
    Debtors.[1] :
---------------------------------------------------------------------- x

**LIMITED RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES, (B) APPROVING ADDITIONAL FORMS OF NOTICE, AND (C) GRANTING RELATED RELIEF**

    The Official Committee of Unsecured Creditors (the "Committee")[2] respectfully files this limited response (the "Response") to the Debtors' *Amended Motion for Entry of an Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [Docket No. 9718] (the "Motion").[3] In support of this Response, the Committee states as follows:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**PRELIMINARY STATEMENT**

1. The Committee is pleased that the Oversight Board has resolved a number of the issues that were present in the ADR procedures proposed in its previous ADR motion [Docket No. 7224] filed in June 2019, and which motion the Court, echoing a number of concerns raised by the Committee in its limited objection thereto, rejected at the July 24, 2019 omnibus hearing. For example, creditors are no longer "deemed" to consent to ADR process adjudication merely by failure to return a timely form, and creditors can now participate in the Offer Exchange without waiving procedural rights in connection with the resolution of claims. In addition, the Oversight Board's amended ADR process offers the possibility of resolving claims through binding arbitration, a dispute resolution mechanism that was part of the ADR process first proposed by the Committee to the Oversight Board more than two years ago.

2. Nevertheless, while the Committee views many of the Oversight Board's amendments to the ADR proposal as positive, the Committee believes that the Oversight Board's proposed ADR process can be improved in a number of ways. Therefore, the Committee requests that the Court consider approval of the Motion with a few modifications to the ADR procedures as proposed herein.

**RESPONSE**

3. As the Committee has stated before, the goal of the ADR procedures should be the implementation of an efficient, cost-effective, and speedy process that is convenient and accessible for the thousands of unsecured creditors that have asserted claims against the Debtors. Moreover, the ADR procedures should account for the unique nature of these Title III cases, in which many creditors are *pro se* Puerto Rico residents who only speak Spanish and have little or no experience with respect to litigation, let alone the nuances of bankruptcy matters. Moreover, the ADR procedures need to address the reality that numerous claimants have been attempting to

have the allowance of their claims against the Commonwealth adjudicated by Puerto Rico courts for many years, without success. Given these considerations, the Committee believes that the ADR procedures should be modified for the benefit of unsecured creditors by (i) opening up the initial phase of the ADR process (*i.e.*, Offer Exchange and Evaluative Mediation) to more creditors (not only those selected by the Oversight Board in its discretion), (ii) improving the arbitration provisions so that, among other things, creditors can request to be included in arbitration and to obtain a waiver or modification of the costs of arbitration, and the Committee can exercise consultation rights with respect to the selection of an arbitration services Provider, and (iii) modifying the Evaluative Mediation procedures to allow creditors to submit additional information to the Mediator.

I. **Initial Phase of ADR Should Be Opened Up to More Creditors**

4. The Oversight Board's amended ADR procedures provide the Oversight Board with nearly complete control over participation in the ADR process. Essentially, the Oversight Board can pick and choose which claims are designated for ADR and which claims are not, except where the Court designates a creditor's claim for ADR following the filing of an omnibus claim objection and the creditor's opposition thereto.

5. The Committee believes that this framework is too restrictive and that all unsecured creditors that have filed claims should be designated to participate in the initial Offer Exchange and Evaluative Mediation phase of the ADR process, unless their claims are of a type that is explicitly excluded, such as claims based on bond ownership. The Committee notes that the Offer Exchange and Evaluative Mediation phase of the ADR process does not involve any binding adjudication and is structured so as to be carried out "on paper" and, therefore, including more creditors should not present an overwhelming administrative burden to the Debtors. Indeed, excluding creditors from this streamlined and nonbinding part of the ADR process seems

3

rather offensive to creditors given how long many creditors have waited for resolution of their claims. To the extent the Court believes that certain restrictions should nevertheless be imposed to limit access to the Offer Exchange and Evaluative Mediation process, the Committee submits that, at a minimum, claimants who have had litigation pending with respect to their claims should automatically be allowed access to such process.

**II.     Arbitration Provisions Should Be Modified for the Benefit of Creditors**

6.     The arbitration provisions in the amended ADR procedures present several issues of concern to the Committee. First, because arbitration is subject to the Debtors' consent, the Debtors may effectively exclude creditors who would prefer to arbitrate from the arbitration process. Another serious issue is that creditors must shoulder half the costs of arbitration, which are to be divided evenly between the parties instead of being assumed by the Debtors, as the Committee suggested in its initial January 2018 proposal. Moreover, the Motion and ADR procedures provide no information regarding the costs of arbitration, or the identity or qualifications of the arbitration services Provider or the Arbitrators (which have not yet been selected). In light of these issues, the Committee proposes that creditors be allowed to request (i) that the Court order the arbitration of their specific claims and/or (ii) that their share of arbitration costs be waived or modified in certain circumstances. This modification would not apply to all claimants, as the Court would evaluate such requests on a case by case basis. In addition, the Committee proposes it be granted consultation rights in connection with the selection of the Provider so that it can ensure (to the greatest degree possible) that arbitration costs are reasonable and that Arbitrators are familiar with applicable law and speak Spanish.

        **A.**        **Creditors Should Be Allowed to Request, On a Case by Case Basis, Inclusion in Arbitration and Waiver or Modification of Costs**

7.        Creditors' ability to participate in affordable arbitration is of critical concern to the Committee. Puerto Rico creditors have already endured years of uncertainty regarding whether they will receive payments on their claims, and some have faced financial crisis themselves because the Puerto Rico government has not paid claims in a timely fashion. Creditors seeking a fast and affordable way to liquidate their claim amounts should not be excluded from arbitration or forced to pay unaffordable arbitration costs.

8.        Moreover, excessive arbitration costs may deter many creditors from participating in arbitration, especially given the tremendous uncertainty with respect to the actual payment of allowed claims under a plan of adjustment. The Oversight Board has broadcast, through the filing of the proposed Commonwealth plan of adjustment (the "Proposed Plan") and related disclosure statement, that it intends to provide unsecured creditors with miniscule recoveries in connection with their claims—for example, under the Proposed Plan it is predicted that Commonwealth unsecured creditors will be paid up to 1.8% of their allowed claims.[4] In this scenario, arbitration costs could result in creditors being priced out of the process.[5]

---

[4]    *See* Disclosure Statement, at 13 [Docket No. 8766] (listing approximate recovery percentage of Commonwealth general unsecured claims as "up to 1.8%").

[5]    To be clear, the Committee believes the proposed 1.8% recovery for general unsecured creditors is neither appropriate nor legally supportable, particularly given the recovery that other unsecured creditors are proposed to receive, and it intends to fight to improve those terms, but this is the proposal that is currently on file and that will influence creditors' determinations regarding what they can afford to spend to pursue their claims. Indeed, the Oversight Board has indicated that it believes that the estimated plan recovery "will enable people to assess their positions and be a big spur towards getting things resolved more quickly and efficiently than might otherwise be the case." Sept. 11, 2019 Hr'g Tr. at 12:21-23. As discussed further below, the Motion provides no information regarding the likely cost of arbitration, though counsel to the Oversight Board suggested at the October 30, 2019 hearing that the minimum cost of arbitration could be $5,000 per claim, Oct. 30, 2019 Hr'g Tr. at 14:8, fifty percent of which would be $2,500.

9. Creditors should be allowed to request that the Court exercise its discretion to order (i) that claims be arbitrated, whether or not the Debtors have consented to arbitration, and/or (ii) that creditor arbitration costs be waived or modified.

### B. Committee Should Be Given Consultation Rights in Connection with Choosing an Arbitration Provider

10. Complicating matters further, the Debtors have not yet chosen a Provider of arbitration services and cannot supply information regarding the costs of arbitration, or the identity and qualifications of the Provider and Arbitrators. This presents significant concerns, as the costs should be reasonable, and Arbitrators should (to the degree possible) speak Spanish and be familiar with Puerto Rico law. To ensure that the appropriate Provider and Arbitrators are selected, the Committee proposes that it be given consultation rights in connection with the Debtors' selection of an arbitration Provider.

### III. Evaluative Mediation Procedures Should Allow Creditors to Submit Additional Information to Mediator

11. Under paragraph 3(c) of the proposed ADR procedures, the Debtors are to provide the Mediator with the information exchanged between the parties during the Offer Exchange process, after which the Mediator issues an Evaluation without additional communication from the parties (unless the Mediator decides to hold a settlement conference). The parties have no ability to supply the Mediator with additional documents or pleadings.

12. The Committee believes that the ADR procedures should be modified to give parties the opportunity to present additional documents to the Mediator, or, at the very least, the Mediator should be given the authority to, at the request of one of the parties or *sua sponte*, allow the parties to submit additional documents. This is an important modification because there may be factual or legal contentions not raised in the Offer Exchange process that will be of assistance to the Mediator who, unlike the Debtor or the creditor, is new to the dispute. Moreover, opening

6

up communication with the Mediator is consistent with typical mediation procedures in which parties submit mediation statements and attend mediation hearings or conferences.

## **CONCLUSION**

13. For the reasons stated above, the Committee requests that the relief granted by the Court be modified to reflect the issues raised herein.

14. Finally, the Committee wishes to inform the Court that, given the unique nature of these Title III cases and the complexity of the ADR process, the Committee believes that Puerto Rico based unsecured creditors may require additional guidance in order to understand and fully participate in the ADR process. For this reason, the Committee intends to hold tutorial sessions in Puerto Rico (as it did with respect to the proof of claim filing process) in order to educate creditors with respect to the ADR process. For the avoidance of doubt, this outreach effort would provide general information only, not legal advice to particular creditors.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that the relief granted by the Court be modified to reflect the issues raised herein.

| | |
|---|---|
| Dated:  January 17, 2020 | By:  */s/ Luc A. Despins*  |

**PAUL HASTINGS LLP**
Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By:  */s/ Juan J. Ayala*  

**CASILLAS, SANTIAGO & TORRES LLC**
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*