**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>　　as representative of<br><br>The Commonwealth of Puerto Rico, et al.,<br><br>　　　　　　Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**REPLY IN SUPPORT OF URGENT MOTION OF LAWFUL CONSTITUTIONAL DEBT COALITION UNDER BANKRUPTCY CODE SECTIONS 105(a) AND 502 AND BANKRUPTCY RULE 3007, FOR ENTRY OF AN ORDER APPROVING NOTICE PROCEDURES WITH RESPECT TO OMNIBUS OBJECTION TO CLAIMS FILED OR ASSERTED BY HOLDERS OF CERTAIN BONDS ISSUED OR <u>GUARANTEED BY THE COMMONWEALTH</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Lawful Constitutional Debt Coalition (the "LCDC"),[2] hereby submits this reply (the "Reply") in support of its *Urgent Motion of Lawful Constitutional Debt Coalition Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, for Entry of an Order Approving Notice Procedures With Respect to Omnibus Objection to Claims Filed or Asserted by Holders of Certain Bonds Issued or Guaranteed by the Commonwealth* (Dkt No. 9731) (the "Motion")[3] and in opposition to the *Response and Objection of Individual Bondholder to Supposed "Urgent" Motion of Self-Described "Lawful" Constitutional Debt Coalition and Related Filing of UCC* (Dkt. No. 10029) (the "Hein Opposition"),[4] and respectfully states as follows:

## RESPONSE TO COURT'S INQUIRY

1. In its Scheduling Order, the Court provided that the LCDC's Reply "must address the basis for their request that the Court direct Prime Clerk LLC to effect service of the Objection Notice annexed to Exhibit A of the Motion, including whether Movants have retained Prime Clerk LLC for that purpose." Scheduling Order at 1-2. In response, the LCDC states that prior to filing the Motion, the LCDC had been in contact with Prime Clerk, the retained noticing agent in the Title III Cases, to inquire if they would agree to handle service of the Objection Notice in the manner set forth in the Motion, given that they had handled similar service with respect to prior omnibus objections to claims. By the time of the filing of the Motion, Prime Clerk had agreed to

---

[2] The members of the LCDC and their respective holdings are set forth in the *Fourth Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure 2019* ("Fourth Verified Statement") (Dkt. 9732).

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the *Omnibus Objection of the Lawful Constitutional Debt Coalition, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* (Dkt. No 9730) (the "Objection").

[4] In this Reply, the LCDC also responds to the Court's inquiry set forth in its *Order Scheduling Briefing of Motion* (Dkt. No. 9757) (the "Scheduling Order").

2

handle service of the Objection Notice and the LCDC had agreed to certain conditions required by Prime Clerk and the Oversight Board, namely the execution of a waiver and the provision of payment to Prime Clerk for effectuating service.

2. Subsequently, on the evening of January 8, 2020, counsel to the UCC reached out to the LCDC and proposed an amended joint form of notice that provided notice of both the Objection and the UCC's Miscellaneous Debt Limit Claim Objection (defined below). Given their familiarity with the process, the UCC also agreed to work directly with Prime Clerk to handle the service of the joint notice.[5] The LCDC agreed to this proposal and the UCC filed the *Limited Response of Official Committee of Unsecured Creditors to Urgent Motion of Lawful Constitutional Debt Coalition Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007 for Entry of an Order Approving Notice Procedures with Respect to Omnibus Objection to Claims Filed or Asserted by Holders of Certain Bonds Issued or Guaranteed by the Commonwealth* (Dkt. No. 9753) (the "UCC Response"), informing the Court of this arrangement. Attached to the UCC Response was a proposed joint form of notice (the "Joint Notice") that combined notice of the Objection and the Miscellaneous Debt Limit Claim Objection. The UCC has informed the LCDC that it will be providing the Court with a further revised form of notice (the "Amended Joint Notice") that contains non-substantive revisions to some of the Spanish translation in the Joint Notice.

---

[5] The Court has already approved the UCC's retention of Prime Clerk. *See Order, Under Bankruptcy Code Sections 105(a), 107(b), 1102(b)(3) and 1103 and Bankruptcy Rule 9018, (I) Clarifying Scope of and Establishing Procedures in Connection With Creditor Access to Information and (II) Retaining Prime Clerk LLC as Information Services Agent in Connection Therewith* (Dkt. No. 998).

**RELEVANT BACKGROUND**

3. On July 24, 2019, the Court entered its Stay Order, which stayed, among other things, all litigation concerning GO and PBA claim objections. On October 28, 2019, the Stay Order was extended until December 31, 2019. On December 19, 2020, the Court entered the *Interim Case Management Order* (Dkt. No. 9619) (the "Interim Order"). Among other things, the Interim Order set forth a schedule for litigating the omnibus claim objections. The Interim Order provided that parties could file additional omnibus objections disputing the validity of claims related to general obligation bonds issued by the Commonwealth, bonds guaranteed by the Commonwealth, and/or bonds issued by the PBA ("Future Claim Objections") provided that such objections were filed by January 8, 2020. Under the same schedule, motions to dismiss any omnibus claim objection, including any Future Claim Objections, are due by February 5, 2020 for Identified Parties (as that term is defined in the Interim Order), and by February 19, 2020 for all other bondholders or interested parties. The Interim Order also approved the form of notice submitted by the UCC and set forth certain notice requirements that the UCC must follow in connection with its 2011 GO Bond Objection.

4. Pursuant to the schedule set forth in the Interim Order, the LCDC filed the Objection on January 8, 2020. In connection with the Objection, the LCDC filed the Motion in which it asked for urgent relief in the form of an order approving certain notice procedures based on notice procedures that the Court approved in the Interim Order. The LCDC proceeded by urgent motion simply because of the relatively short amount of time between January 8, 2020 and the motion to dismiss deadlines set forth in the Interim Order. Other than seeking approval of the form and manner of notice, substantially in accordance with prior Court-approved notice procedures, the Motion sought no substantive or other relief

5. Also on January 8, 2020, the UCC filed its Miscellaneous Debt Limit Claim Objection,[6] which objects to some of the same guarantee claims that are the subject of the LCDC's Objection.

6. Shortly after the LCDC filed its Motion, the UCC reached out to the LCDC and proposed a joint form of notice that provided notice of both the Objection and the Miscellaneous Debt Limit Claim Objection. The UCC also proposed that it would manage the process of service. Given the higher efficiency and lower costs associated with the UCC's proposals, the LCDC agreed, and the UCC filed the UCC Response on January 9, 2020, informing the Court of this arrangement.

7. On January 15, 2020, Peter C. Hein filed the Hein Opposition, in which he set forth a plethora of complaints, only some of which concerned the relief requested in the Motion. These complaints included the following: (1) urgent relief is not necessary; (2) the Objection Notice should include more explicit instructions for responding to the Objection; (3) the LCDC should change its name; (4) the LCDC should be subject to heightened disclosure requirements; (5) the notice should not be combined with notice for the Miscellaneous Debt Limit Claim Objection; (6) publication notice should be sent to the *Wall Street Journal*; and (7) Quinn Emanuel should not be listed as the contact for further information.[7]

---

[6] *Official Committee of Unsecured Creditors' Omnibus Objection on Constitutional Debt Limit Grounds to (I) Claim of Government Development Bank for Puerto Rico [Claim Number 29485] Based on Certain Commonwealth-Issued Notes and on Commonwealth Guaranty of Certain Bond Issued by Port of Americas Authority, (II) Claim of Scotiabank De Puerto Rico [Claim Number 47658] Based on Full Faith and Credit Note Issued by Puerto Rico General Services Administration, and (III) Claims Filed or Asserted Against Commonwealth Based on Commonwealth Guaranty of Certain Notes Issued by Puerto Rico Infrastructure Authority* (Dkt. No. 9757) (the "Miscellaneous Debt Limit Claim Objection").

[7] The Opposition included numerous other complaints that do not relate to the Motion, including (1) arguments that go to the merits of the Objection; (2) a request to appoint an individual bondholder committee; and (3) general complaints about the treatment of individual bondholders. Because these complaints do not relate to the relief requested in the Motion, the LCDC does not respond to these points.

8. On January 2020, the UCC provided the LCDC with the Amended Joint Notice, which contained certain non-substantive revisions to one of the Spanish translations within the Joint Notice. The LCDC understands that the UCC will be filing the Amended Joint Notice with the Court.

**REPLY**

9. By its Motion, the LCDC seeks only approval of the form and manner of notice of its Objection (as amended by the Amended Joint Notice). No other relief, substantive or otherwise, is requested by the Motion. And while the LCDC is certainly willing to make whatever adjustments to the Amended Joint Notice the Court deems appropriate,[8] the LCDC notes that the Amended Joint Notice is modeled off of, and is substantively identical to, forms of notice previously approved by the Court, namely the form of notice for the 2011 GO Bond Objection approved in the Court's Interim Order. The LCDC therefore respectfully submits that the Amended Joint Notice complies with all notice requirements and should be approved by the Court without further modification. The LCDC also responds to certain specific objections to the notice procedures raised by Mr. Hein below.

### I. THE LCDC SOUGHT URGENT RELIEF FOR THE BENEFIT OF BONDHOLDERS LIKE MR. HEIN

10. The Opposition begins by arguing that the LCDC inappropriately filed an urgent motion because it could have filed the Objection "long ago" and obviated the need for urgent relief. Opp. at 1. This is factually incorrect. The LCDC is a relatively recent party in interest, having

---

[8] Mr. Hein purports that the current form of notice is "incomprehensible" and that numerous changes must be made to address certain of his specific questions on page five of the Opposition. Mr. Hein also suggests that the notice should be published in the *Wall Street Journal*, (Opp. at 6), and Quinn Emanuel should be removed as contact person (Opp. at 4). While the LCDC is willing to make any changes the Court deems appropriate, it does not believe that any of these changes are necessary.

6

only formed in February, 2019.[9] Moreover, by July of 2019, all litigation concerning GO and PBA bond claim objections was stayed by the Court. *See* Stay Order. That stay remained in effect until January 1, 2020, by which time the Court had issued its Interim Order specifically providing that Future Claim Objections must be filed by January 8, 2020. The LCDC fully complied with the Court's Interim Order.

11. However, because the motion to dismiss deadlines for Future Claim Objections are February 5, 2020 (for Identified Parties) and February 19, 2020 (for all other parties), the LCDC determined that it was in the best interests of all parties—and particularly in the best interests of individual holders of bonds subject to the Objection—to receive notice of the Objection as promptly as possible. The LCDC therefore sought urgent relief. In filing the Motion, the LCDC complied with the procedures governing urgent motions set forth in the Case Management Procedures.

II. **THE LCDC HAS COMPLIED WITH ALL REQUIREMENTS SET FORTH IN THE BANKRUPTCY CODE, THE BANKRUPTCY RULES, AND THIS COURT'S ORDERS**

12. The Opposition also objects to the Objection on the basis that the use of "Lawful" in the LCDC's identifying moniker is inappropriate, (Opp. at 2), and that the LCDC should be required to provide significant additional disclosures to the Court (Opp. at 3). But nothing in the Bankruptcy Code, Bankruptcy Rules, or any prior order of this Court limits or prohibits what an ad hoc group may call itself, and the Opposition points to no such authority. Additionally, the LCDC has complied, and continues to comply, with all disclosure requirements set by the Bankruptcy Rules and this Court.[10] It should be noted that the Court has previously considered

---

[9] *See* Fourth Verified Statement ¶ 1.

[10] The LCDC filed the Fourth Verified Statement in connection with the Objection and Motion.

7

imposing disclosure requirements upon creditors,[11] and chose to adopt the requirements set forth in the Case Management Procedures.

### III. COMBINING NOTICE WITH THE UCC MAXIMIZES EFFICIENCY AND LIMITS CONFUSION

13. Finally, Mr. Hein objects to the Amended Joint Notice on the basis that combining notice of the Objection and the Miscellaneous Debt Limit Bond Claim Objection "compounds the incomprehensible nature of the notice." Opp. at 4. Mr. Hein provides no explanation of why this is so or why a notice understandable to him would be beyond the comprehension of other individual bondholders. In any case, the LCDC disagrees that a combined notice would cause confusion. To the contrary, by receiving the Amended Joint Notice, bondholders subject to both the Objection and the Miscellaneous Debt Limit Claim Objection will have to look to only one document to understand the nature of all Future Claim Objections that were filed against them. And the Amended Joint Notice describes exactly which bond claims are subject to which objection (including listing the objected to bonds by CUSIP). There will be no material confusion caused by the Amended Joint Notice.

14. Moreover, the Amended Joint Notice provides the most efficient means for these bondholders to receive notice of the objections by obviating largely duplicative service. The Amended Joint Notice should be approved.

### CONCLUSION

15. WHEREFORE, the LCDC respectfully requests that the Court enter an order approving the Amended Joint Notice.

---

[11] *See Motion of Official Committee of Unsecured Creditors to Clarify or Amend Fourth Amended Notice, Case Management and Administrative Procedures Regarding Disclosure Requirements Pursuant to Federal Rule of Bankruptcy Procedure 2019* (Dkt No. 3432).

DATED: January 20, 2020

Respectfully submitted,

| REICHARD & ESCALERA | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
| By : */s/ Rafael Escalera* <br> **Rafael Escalera** <br> USDC No. 122609 <br> escalera@reichardescalera.com <br><br> **Sylvia M. Arizmendi** <br> USDC-PR 210714 <br> arizmendis@reichardescalera.com <br><br> **Carlos R. Rivera-Ortiz** <br> USDC-PR 303409 <br> riverac@reichardescalera.com <br><br> 255 Ponce de León Avenue <br> MCS Plaza, 10th Floor <br> San Juan, Puerto Rico 00917-1913 | **Susheel Kirpalani** (*pro hac vice*) <br> susheelkirpalani@quinnemanuel.com <br><br> **K. John Shaffer** (*pro hac vice*) <br> johnshaffer@quinnemanuel.com <br><br> **Daniel Salinas** <br> USDC-PR 224006 <br> danielsalinas@quinnemanuel.com <br><br> **Matthew Scheck** (*pro hac vice*) <br> matthewscheck@quinnemanuel.com <br><br> **Eric Kay** (*pro hac vice*) <br> erickay@quinnemanuel.com <br><br> **Zachary Russell** (*pro hac vice*) <br> zacharyrussell@quinnemanuel.com <br><br> 51 Madison Avenue, 22nd Floor <br> New York, New York 10010-1603 |

*Co-Counsel for the Lawful Constitutional Debt Coalition*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

/s/ *Carlos R. Rivera-Ortiz*
USDC-PR 303409