Case:17-03283-LTS Doc#:10274 Filed:01/22/20 Entered:01/22/20 11:02:41 Desc: Main
Document Page 1 of 33
Hearing: January 22, 2020 at 9:30 a.m. (AST) (San Juan)
Opposition to Motion to Amend PRIFA Bondholder Lift Stay Motion

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, AMBAC ASSURANCE CORPORATION, AND FINANCIAL GUARANTY INSURANCE COMPANY,<br><br>    Movants,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Respondent. | Case No. 17-BK-4780-LTS<br><br>**Re: ECF No. 10109** |

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**OPPOSITION OF THE COMMONWEALTH OF PUERTO RICO TO
MOTION TO AMEND PRIFA BONDHOLDER LIFT STAY MOTION [ECF NO. 10109]**

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

PRELIMINARY STATEMENT .................................................................................. 1

FACTUAL BACKGROUND.................................................................................... 9

PROCEDURAL HISTORY...................................................................................... 12

LEGAL STANDARDS ............................................................................................ 14

ARGUMENT............................................................................................................ 14

   I.    THE PROPOSED AMENDMENTS CANNOT CHANGE THE STATUTORY AND
   CONTRACTUAL LANGUAGE THAT GOVERN THE PARTIES' INTERESTS...................14

   II.   THE PROPOSED AMENDMENTS DO NOT CHANGE MOVANTS' STATUS AS
   CREDITORS OF A CREDITOR WITHOUT STANDING. .........................................................16

   III.  MOVANTS' GRACIA-GRACIA AMENDMENTS SERVE NO PURPOSE AND DO
   NOT AFFECT THE PROPERTY INTEREST ANALYSIS.........................................................17

   IV.  MOVANTS' "FACTUAL DEVELOPMENTS" AMENDMENTS SERVE NO
   PURPOSE..........................................................................................................................................21

   V.   THE PROPOSED AMENDMENTS WOULD PREJUDICE THE COMMONWEALTH. .23

CONCLUSION......................................................................................................... 25

iii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Acevedo v. Solivellas & Co.*,
    49 D.P.R. 633 (P.R. 1936) .................................................................................20

*Aponte-Torres v. Univ. of Puerto Rico*,
    445 F.3d 50 (1st Cir. 2006) ..........................................................................4, 14

*Assured Guar. Corp v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight &
    Mgmt. Bd. for P.R.)*,
    582 B.R. 579 (D.P.R. 2018) .............................................................................21

*Atl. Coast Line R. Co. v. Florida*,
    295 U.S. 301 (1935) (Cardozo, J.) ...................................................................21

*Correa–Martinez v. Arrillaga–Belendez*,
    903 F.2d 49 (1st Cir. 1990) ...............................................................................14

*Debreceni v. Bru-Jell Leasing Corp.*,
    710 F. Supp. 15 (D. Mass. 1989) ........................................................................8

*Diehl v. Money Source, Inc.*,
    2018 U.S. Dist. LEXIS 105843 (S.D. Ala. June 13, 2018) ..............................4

*Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight &
    Mgmt. Bd. for P.R.)*,
    939 F.3d 340 (1st Cir. 2019) ..........................................................3, 5, 17, 18

*Hill v. Mitchell*,
    2005 WL 8162499 (S.D. Ohio Dec. 30, 2005) ..............................................18

*In re Breitburn Energy Partners LP*,
    2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017) .......................................3

*In re Comcoach Corp.*,
    19 B.R. 231 (Bankr. S.D.N.Y. 1982) ..........................................................4, 17

*In re Einhorn*,
    59 B.R. 179 (Bankr. E.D.N.Y. 1986) ...............................................................19

*In re Growth Dev. Corp.*,
    168 B.R. 1009 (Bankr. N.D. Ga. 1994) .......................................................3, 17

*Krueger v. Synetgy LLC*,
    2009 WL 10691341 (M.D. Tenn. Jan. 20, 2009) ..........................................18

iv

*Leased Pet Dep'ts, Inc. v. Cook United, Inc. (In re Cook United, Inc.)*,
   50 B.R. 559 (Bankr. N.D. Ohio 1985) ........................................................................19

*Méndez-Núñez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight &*
   *Mgmt. Bd. for P.R.)*,
   916 F.3d 98 (1st Cir. 2019) ........................................................................................7

*Morin v. Univ. of Massachusetts*,
   2011 WL 7767948 (D. Mass. 2011), *adopted*, 2012 WL 1415914 (D. Mass.
   2012) ..........................................................................................................................22

*Palmer v. Champion Mortg.*,
   465 F.3d 24 (1st Cir. 2006) ......................................................................................14

*Parker v. Landry*,
   935 F.3d 9 (1st Cir. 2019) ........................................................................................14

*Rivera Velez v. Puerto Rico Elec. Power Auth.*,
   201 F.R.D. 289 (D.P.R. 2001) .............................................................................14, 24

*Rivera-Muñiz v. Horizon Lines Inc.*,
   737 F. Supp. 2d 57 (D.P.R. 2010) ............................................................................20

*Rivera-Schatz v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt.*
   *Bd. for P.R.)*,
   327 F. Supp. 3d 364 (D.P.R. 2018) ............................................................................7

*Superintendent of Ins. v. First Cent. Fin. Corp. (In re First Cent. Fin. Corp.)*,
   269 B.R. 481 (Bankr. E.D.N.Y. 2001) ......................................................................19

*Vázquez-Garced v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight &*
   *Mgmt. Bd. for P.R.)*,
   945 F.3d 3 (1st Cir. 2019) .....................................................................................5, 16

**STATUTES**

3 L.P.R.A. § 1906(m) ......................................................................................................10

3 L.P.R.A. § 1907 ........................................................................................................7, 10

3 L.P.R.A. § 1913 ......................................................................................................15, 16

3 L.P.R.A § 1914 ...................................................................................................... passim

3 L.P.R.A. § 1923(b) ......................................................................................................20

11 U.S.C. § 362(d)(2) ........................................................................................................3

26 U.S.C. § 7652 ..............................................................................................................10

11 USC § 101(53) ................................................................................................................23

P.R. Laws Ann. Title 31, § 7 ...........................................................................................20

PROMESA § 201 ...............................................................................................................11

PROMESA § 202 ...............................................................................................................11

UCC Reporter-Digest (2019), former UCC § 9-203, Comment 5 ...............................20

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 15 .................................................................................................1, 14

P.R. Const., art. VI, § 8 ......................................................................................................6

*Restatement (Third) of Restitution and Unjust Enrichment,* pt. II, Chapter 2, Topic 3,
   Introductory Note ........................................................................................................20

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole representative of Debtor and Respondent the Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this opposition (the "Opposition") to the *Motion for Leave to Amend Motion Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* [ECF No. 10109] (the "Motion to Amend" or "M.Br.") of Assured Guaranty Corp., Assured Guaranty Municipal Corp. (together, "Assured"), Ambac Assurance Corporation ("Ambac"), and Financial Guaranty Insurance Company ("FGIC", and together with Assured, National, and Ambac, the "Movants").

The Motion to Amend should be disallowed under Fed. R. Civ. P. Rule 15 because it would be futile, serve no useful purpose, and prejudice the Commonwealth.  But, with or without the amendments, the threshold issues remain the same: standing, whether the Commonwealth has an interest in the rum excise taxes, and whether the PRIFA Bondholders hold a secured interest in the Commonwealth's interest.  Accordingly, if the Court allows the amendment, the Commonwealth requests the Court schedule oral argument at the earliest possible date on the same threshold issues it set for early determination in its June 13, 2019 Order [ECF No. 7420] – standing and secured status – after the briefing the Court has already scheduled.

## PRELIMINARY STATEMENT

1.      The PRIFA Trust Agreement[3] is the only contract pledging assets to secure PRIFA

---

2      PROMESA is codified at 48 U.S.C. §§ 2101-2241.

3      ECF No. 10109-4.  Unless otherwise noted, capitalized terms are the same as defined in the Commonwealth's prior briefs.  [*E.g.*, ECF Nos. 7827, 8164].

bonds.  It pledges only the "Pledged Revenues," defined to mean moneys deposited into the "Sinking Fund."  The original source of the moneys is the United States.  It levies and collects rum excise taxes.  In turn, the United States transfers some of the taxes – the Rum Tax Remittances – to the Commonwealth Treasury with no strings attached.   Pursuant to a pre-PROMESA Commonwealth statute (3 L.P.R.A. § 1914), the Commonwealth was to appropriate some of the Rum Tax Remittances to PRIFA for its "corporate purposes," subject to the retention provisions of the Puerto Rico Constitution.[4]  PRIFA then funded the Sinking Fund.  Under PROMESA, the Oversight Board has never certified a budget appropriating to PRIFA any of the Rum Tax Remittances.   Movants' current motion arises from Ambac's effort to deploy preempted Commonwealth appropriation statutes and the Commonwealth's cash management system as sources of PRIFA Bondholder liens and "equitable" ownership interests in the Retained Rum Tax Remittances.  The bottom line is simple: preempted appropriations and cash management systems neither create liens nor transfer ownership interests.

2.     Ambac insures some PRIFA bonds.  Unhappy with PRIFA's failure to receive appropriations usable to pay debt service on the bonds Ambac insures, Ambac brought its first stay relief motion against the Commonwealth for an order providing it can prosecute two lawsuits (the "PRIFA Lift Stay Motion").  One lawsuit is against the United States to grab the rum excise taxes it levies, collects, and appropriates to the Commonwealth, on the theory the PRIFA Bondholders or PRIFA, as opposed to the Commonwealth, is somehow entitled to them.  The other lawsuit is against the Commonwealth to compel a turnover to PRIFA or to PRIFA Bondholders of the Rum Tax Remittances.  For Ambac to procure this relief, it must show both (i) the Commonwealth has

---

[4]   Whether 3 L.P.R.A. § 1914 provides for a mandatory or permissive appropriation is arguable.  Either way, it is preempted by PROMESA, as explained below.

2

no interest in the rum excise taxes in the hands of the Commonwealth and the United States, and (ii) the PRIFA Bondholders hold a lien against the Commonwealth's interest in the taxes and are entitled to stay relief to enforce the lien.[5]

3.      Though Movants have rewritten their original brief almost entirely, the amendments for which they seek leave to propound are narrow: (1) add the bond Trustee as a moving party; (2) drop Movants' argument that the Commonwealth's automatic stay does not apply; (3) argue the First Circuit's decision in *Gracia-Gracia v. Financial Oversight & Management Board for Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 939 F.3d 340 (1st Cir. 2019) impacts resolution of Movants' lift stay motion; and (4) add two "factual developments" about (i) "transmittal instructions" in the Commonwealth's cash management system that accompany Rum Tax Remittances transferred from the Commonwealth's lockbox account into the Commonwealth Treasury's Treasury Single Account ("TSA") and (ii) sub-accounts within the TSA.  M.Br. at 9-13.

4.      The Oversight Board does not object to the addition of the bond Trustee as a moving party, nor to Movants' abandonment of their argument the automatic stay does not apply.  Both can be accomplished with a simple joinder and notice to the Court.  No amendment is required. Notably, if the Trustee joins, Movants' standing problem under the Trust Agreement's "no-action clause" may be solved, but Movants' standing to assert purported rights of PRIFA against the Commonwealth, or rights of the Commonwealth against the United States, is still lacking.

---

[5]  Movants have the burden of proving the debtor lacks equity in the property and that they have a valid security interest in the property.  *See In re Growth Dev. Corp.*, 168 B.R. 1009, 1017 (Bankr. N.D. Ga. 1994) (an unsecured creditor has "no interest in property to be protected, so relief provided for by § 362(d)(2) is not applicable"); *In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017) ("[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay….").

Therefore, the hearing on the threshold issue of standing will turn on whether Movants can show they have a security interest or property interest in property of the Commonwealth.  The issues of standing and the security interest remain intertwined.

5.      The remaining requested amendments (the "Proposed Amendments"), however, are improper.[6]  Rule 15 is not a "do-over" and "is not intended to allow [Movants] a second bite at the apple to start over and re-plead [a motion] whose defects have already been laid bare…." *Diehl v. Money Source, Inc.*, 2018 U.S. Dist. LEXIS 105843, at *10 (S.D. Ala. June 13, 2018).  Rule 15 also prohibits amendments that are futile, serve no useful purpose, or cause prejudice.  *E.g.*, *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006).  These criteria aptly describe the Proposed Amendments, which add nothing to the threshold, dispositive issues of alleged standing and secured status.  The Court has already ordered that these issues be decided first in the initial hearing [ECF Nos. 7420, 9620], and they have been ready for argument since July 24, 2019.  Movants do not even mention this fact, and make no effort to explain how their amendments cure their lack of standing and secured status (because they do not).[7]  Instead, the defects in Movants' motion have already been fully briefed and laid bare.  [*E.g.*, ECF Nos. 7176, 7827, 8022, 8164 (the "Prior Briefing")].  Movants' motion amounts to nothing more than impermissible "sur-sur-reply," and should be denied because it prejudices the formulation of the

---

[6]   Even if allowed, amendment could be accomplished with a few additional paragraphs to the motion, at most.

[7]   Movants insincerely argue joinder of the bond Trustee solves all issues relating to standing.  Motion to Amend ¶¶ 2, 23. It does not.  As briefed in the Commonwealth's opposition to the lift stay [ECF No. 7827 at 24], Movants lack prudential standing because they are attempting to stand in PRIFA's shoes and assert PRIFA's rights against the Commonwealth, not their own.  "A noncreditor of a debtor, even though owed a debt by a creditor of the debtor, does not have standing to seek relief from the automatic stay for the purpose of recovering on its claim." *In re Comcoach Corp.*, 19 B.R. 231, 234 (Bankr. S.D.N.Y. 1982).

4

Commonwealth's plan and frustrates the briefing schedule already entered by the Court.

6.    **The Amendments are Futile**.  As explained above, preempted statutes and cash management systems do not transfer interests in assets.  Movants' reliance on the First Circuit's *Gracia-Gracia* opinion as a basis for amendment is misplaced.  M.Br. at 10-12.  This Court already provided for what *Gracia-Gracia* requires, namely "first … make at least a preliminary determination of the parties' respective property interests in the disputed funds" before turning to whether the stay should be lifted.  939 F.3d at 348; ECF No. 7420.  That is precisely what the Prior Briefing did.

7.    While Movants make much of *Gracia-Gracia* – which does not require any change to the Court's original June 13, 2019 Order providing for an initial hearing on Ambac's standing and alleged property interests – Movants omit any mention of the Court's June 13th Order or of the First Circuit's opinion in *Vázquez-Garced v. Financial Oversight & Management Board for Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 945 F.3d 3 (1st Cir. 2019).[8]  The First Circuit affirmed this Court's ruling "that PROMESA subsection 202(e)(4)(C) itself precludes the territorial government from reprogramming funds from prior fiscal years except to the extent such reprogrammed expenditures are authorized in a subsequent budget approved by the Board, ***and any Puerto Rico law to the contrary is preempted by virtue of PROMESA section 4***…. Simply put, if a certified budget is to have 'full force and effect,' subsection 202(e)(3)(C), there can be no spending from sources not listed in that budget, regardless of what any territorial laws say."  *Id.* at

---

[8]    To the extent Movants claim *Gracia-Gracia* also impacts the instant litigation due to its observations about trust moneys, Movants can make the legal arguments it thinks *Gracia-Gracia* supports without any need for an amendment.  As a practical matter, *Gracia-Gracia* issued no ruling on whether a trust existed.  It involved contentions by the persons who paid duplicate auto-insurance premiums that their duplicate premiums were held in trust pursuant to a statute referring to the premiums being held in a "fiduciary" capacity.  Here, the moneys do not come from the PRIFA Bondholders.  It is third party money.  And no statute provides for the moneys to be held in a fiduciary capacity.

8 (emphasis added).  Accordingly, the purported requirements of 3 L.P.R.A. § 1914 that the Commonwealth transfer the Rum Tax Remittances to PRIFA's Infrastructure Fund once received[9] are preempted because it is inconsistent with PROMESA's requirement that appropriations can only be made with Oversight Board certification.[10]

8.    Simply put, if statutes purporting to appropriate moneys to instrumentalities are not preempted, they would become nondischargeable, specifically enforceable obligations blocking any possible restructuring.  Those statutes would also create the absurd result that creditors of Commonwealth instrumentalities have superior rights than Commonwealth creditors who hold the Commonwealth's promise to pay them.  Non-bankruptcy law always requires that debts be paid in full.  That is quintessentially what is preempted by Title III and the Bankruptcy Code.  Here, Movants do not point to a Commonwealth statute promising to pay PRIFA bonds.  They point to

---

[9]   The Enabling Act does not mandate any appropriation of Rum Tax Remittances.  Instead it makes clear that the Rum Tax Remittances are at all times available resources of the Commonwealth, that the Commonwealth may "*appropriate*" in an amount up to $117 million in each fiscal year, and that, if any appropriation is made, it is always conditional and subject to the Commonwealth's Retention Powers pursuant to Puerto Rico Constitution, Article VI, § 8. *See* 3 L.P.R.A. § 1914,

[10]   3 L.P.R.A. § 1914 provides, in relevant part:

"[T]he first proceeds of the federal excise taxes remitted to the Department of the Treasury of Puerto Rico on each fiscal year, pursuant to Section 7652(a) (3) of the United States Internal Revenue Code of 1986, as amended, **for up to a *maximum* amount** of thirty million dollars ($30,000,000),…in the case of Fiscal Years 2006-07 to 2008-09, and in subsequent years until Fiscal Year 2056-57, **the participation shall be for an amount of *up to* one hundred and seventeen million dollars** ($117,000,000), which when received by the Department of the Treasury of Puerto Rico, shall be covered into a Special Fund to be maintained by or on behalf of the Authority, designated as the 'Puerto Rico Infrastructure Fund', and be used by the Authority for its corporate purposes, which shall include the development of the infrastructure necessary and convenient for holding the Mayaguez 2010 Central American and Caribbean Games. In case the funds collected from said federal excise taxes are insufficient to cover **the amounts herein appropriated**, the Secretary of the Treasury is authorized to cover said deficiency with any funds available and the Director of the Office of Management and Budget, at the request of the Puerto Rico Infrastructure Financing Authority shall include for the budget recommended for the corresponding fiscal year the appropriations needed to cover said deficiencies.

The Authority is hereby empowered to segregate a portion of said Funds into one (1) or more sub-accounts, **subject to the provisions of** Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico for the payment of the principal and interest on bonds and other obligations of the Authority…".

(emphasis added).

6

something less – a Commonwealth statute providing for the Commonwealth to appropriate its money (subject to its Retention Powers) to PRIFA.  Movants do not dispute that a prepetition promise to pay is preempted.  Thus, a prepetition obligation to appropriate money can fare no better.[11]

9.      Thus, Movants rely on preempted appropriations in the Enabling Act (3 L.P.R.A. § 1901 *et seq*.) to assert the Rum Tax Remittances are PRIFA's property and pledged to the Bondholders as soon as they are deposited to the credit of the PRIFA Infrastructure Fund.  Motion to Amend, Ex. B (the "Amended Lift Stay") ¶¶ 15-18.  Movants' argument is refuted by Trust Agreement § 401, which provides "[t]he Authority [i.e. PRIFA] shall not pledge or create any liens upon any moneys in the Puerto Rico Infrastructure Fund."  Further, the Trust Agreement – which is the only legal instrument, pursuant to the Enabling Act, through which PRIFA may pledge property[12] – limits Movants' interest to funds "payable ***solely*** from the Pledged Revenues" which are "moneys that have been deposited to the credit of the Sinking Fund."  Trust Agreement §§ 101, 601 (emphasis added).  The Trust Agreement therefore makes clear Movants' property interests are confined to the Sinking Fund, do not travel up to the PRIFA Infrastructure Fund, and certainly

---

[11]  *Vázquez-Garced* is just the latest in a series of decisions showing all pre-PROMESA obligations and appropriations are preempted.  The First Circuit previously held, "Under PROMESA's preemption provision, the grants of authority to the Board at §§ 201 and 202 to approve Fiscal Plans and Budgets 'prevail over ***any*** general or specific provisions of territory law' … that are 'inconsistent….'"  *Méndez-Núñez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 916 F.3d 98, 116 (1st Cir. 2019) (citation omitted).  Similarly, this Court held in 2018 that "Congress' determination, in PROMESA, to empower the Oversight Board to accept, reject, develop and certify budgets, and to render certified budgets effective by operation of law, prevails over the general allocation of budgetary power to Puerto Rico's legislature."  *Rivera-Schatz v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 327 F. Supp. 3d 364, 372 (D.P.R. 2018)).

[12]  *See* 3 L.P.R.A. § 1907 ("The principal of, and interest on, the bonds issued by the Authority may be secured by a pledge of all or part of any of its revenues which, subject to the provisions of § 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico, may include the proceeds of any tax or other funds which may be made available to the Authority by the Commonwealth, **all as provided in the trust agreement** or resolution under which the bonds are issued…") (emphasis added).

do not extend to moneys in the Commonwealth's TSA.

10.     To convolute a straightforward analysis based on the Trust Agreement's plain language, Movants concoct several "Hail Mary" theories of ownership that are internally contradictory and without merit.  They first argue the Rum Taxes morph from United States tax collections into PRIFA Bondholder collateral as if the federal statutes transferring them to the Commonwealth, and the Commonwealth appropriations to PRIFA for PRIFA's corporate purposes, do not exist.  But they do exist, and the statutes make clear the federal government remits the Rum Taxes to the Commonwealth with "no strings attached," the Commonwealth appropriates moneys to PRIFA, and such appropriations would at all times be subject to the Commonwealth's Retention Powers.  Second, Movants argue that even if the Commonwealth owns an interest in the Retained Rum Tax Remittances, its ownership is only as trustee of a trust in which PRIFA or the Bondholders (Movants do not make their mind up as to which) are the beneficiaries.  But no statute or agreement mentions or creates any trust, no trust has been created under Puerto Rico law, and as shown below, the *Gracia-Gracia* decision does not alter the law regarding trusts.  Third, Movants argue the supposed unfairness of the law provides them an "equitable lien" on the Rum Taxes.  But equitable liens are not recognized under Puerto Rico law.  Even if they were, an equitable lien cannot remedy the effects of a statute.  As shown below, a statute, by definition, is never "unfair" because it represents the judgment of the legislative and executive branches of the state.  Manifestly, the law rejects such attempts to circumvent the Uniform Commercial Code requirements for perfected security interests with allegations of equitable liens and trusts.

11.     **The Proposed Amendments Serve No Purpose**.  Where "the legal sufficiency of the proposed amendment has been fully briefed by the parties," denial of leave to amend is proper. *Debreceni v. Bru-Jell Leasing Corp.*, 710 F. Supp. 15, 19 (D. Mass. 1989).  Here, the Court has

8

already limited briefing on the issues of standing and security interest to "legal documents," namely the Trust Agreement and PRIFA's Enabling Act. Movants' two new factual allegations reach beyond that scope, but even if they were permissible, they are irrelevant – a fact Movants admit in their Amended Lift Stay ¶ 66 (conceding the factual assertions are "not necessary" to consideration of the merits of the lift stay).

12.     **The Proposed Amendments are Prejudicial to the Commonwealth**.  Movants' allegations impact nearly $2 billion, plus interest, of Commonwealth revenues.  Delay in resolving those allegations delays the Commonwealth's overall ability to formulate its own plan of adjustment impacting, among other things, thousands of employees and over $20 billion of debt plus pension payments.  Additionally, after agreeing to a condensed schedule on the premise the issues have already been fully briefed, Movants rewrote their entire motion and extended it to sixty pages – all with full awareness the Commonwealth is simultaneously responding to Movants' other lift stay motions.

13.     Accordingly, the PRIFA Lift Stay Motion should be considered without further discovery or motion practice.  The bond Trustee can join the pending motion.  The Court should hear the issues of standing and secured status up front – as it ordered and was prepared to do on July 24, 2019 – to spare the parties, and the Court, from needless litigation.  If Movants are allowed to amend, the Court should again order an early hearing on standing and secured status, for which no discovery is warranted.

## FACTUAL BACKGROUND

14.     The factual background concerning the Rum Taxes, PRIFA, and the PRIFA bonds has already been extensively briefed for the Court.  *See, e.g.*, *Opposition of the Commonwealth of Puerto Rico to Ambac Assurance Corporation's Motion Concerning Application of the Automatic*

9

*Stay* [ECF No. 7827] (the "<u>Lift Stay Opposition</u>").  Accordingly, we briefly recount key facts

demonstrating the futility of the Proposed Amendments.  These facts are based in the statutes and

contracts applicable to the Rum Taxes and the PRIFA bonds, and are unchanged by any of the

Proposed Amendments.

15.     Rum produced in Puerto Rico and sold on the mainland is subject to a federal excise

tax collected by the United States Treasury – the Rum Taxes.  The United States Treasury deposits

the Rum Taxes into the "treasury of Puerto Rico" – the Rum Tax Remittances – without any strings

attached.  26 U.S.C. § 7652.  The United States can amend that appropriation statute at any time.

16.     The Enabling Act allows or requires the Commonwealth to appropriate to PRIFA

a portion of the Rum Tax Remittances in the TSA subject to its Retention Powers under the

Commonwealth Constitution.  *See* 3 L.P.R.A. § 1914.  Since Fiscal Year 2006-07, the annual

amount permitted to be appropriated to PRIFA has been capped at $117 million, all subject to the

Commonwealth's Retention Powers.  *Id.*  When the Commonwealth deposited any appropriations

to PRIFA, it did so in the PRIFA Infrastructure Fund to be used for PRIFA's "corporate purposes."

*Id.*

17.     PRIFA, for its part, is authorized to issue bonds and to pledge PRIFA's funds,

including tax proceeds it "may" receive from the Commonwealth, as payment for those bonds.  3

L.P.R.A. §§ 1906(m), 1907.  Any pledge would be "as provided in the trust agreement … under

which the bonds are issued."  *Id.*  The use of the word "may" and the conditional appropriation of

"up to" $117 million make clear that there may be situations where the Commonwealth does not

make any appropriations to PRIFA.

18.     In 1988, PRIFA entered into a Trust Agreement that governs the bonds it has issued.

Section 601 of the Trust Agreement provides that the principal, interest, and premium on Bonds

10

issued by PRIFA are to be paid "solely from Pledged Revenues." "Pledged Revenues" are "moneys that have been deposited to the credit of the Sinking Fund." Trust Agreement § 101. The Trust Agreement does not grant Bondholders a security interest in the Infrastructure Fund and in fact *prohibits* PRIFA from "pledg[ing] or creat[ing] any liens upon *any* moneys" in the PRIFA Infrastructure Fund. Trust Agreement § 401 (emphasis added). Because Bondholders have no lien on moneys in the PRIFA Infrastructure Fund, PRIFA covenanted in section 401 that, upon ___***receipt* of**___ Rum Tax Remittances to the PRIFA Infrastructure Fund, it would transfer such moneys ***as promptly as practicable*** to the Sinking Fund. If the Bondholders had a lien on moneys in the PRIFA Infrastructure Fund or such funds were held in trust for their benefit, such language would be unnecessary to protect their interest. Thus, the Trust Agreement shows the reach of any security interest granted by PRIFA is limited to moneys actually deposited in the Sinking Fund.[13]

19.     Since 2015, the Commonwealth has exercised its powers to retain the Rum Tax Remittances that could be appropriated to PRIFA to help manage the ongoing fiscal crisis. When PROMESA became effective on June 30, 2016, the Oversight Board was given the final word on the development of, and exclusive power to certify, fiscal plans and budgets for the

---

[13] Section 401 provides, in relevant part:

**SECTION 401. Sinking Fund and Accounts**. A special fund is hereby created and designated "Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds Sinking Fund" (herein sometimes called the "Sinking Fund") __**to be held by the Trustee**__. There are hereby created three separate accounts in the Sinking Fund designated "Bond Service Account", "Redemption Account" and "Reserve Account". Subject to the terms and conditions set forth in this Agreement, moneys held to the credit of the Sinking Fund shall be held **in trust** and disbursed by the Trustee for the purposes set forth below.

The Authority shall maintain with a Qualified Depositary the Puerto Rico Infrastructure Fund. __**The Authority shall not pledge or create any liens upon any moneys in the Puerto Rico Infrastructure Fund**__. __**As promptly as practicable upon the receipt of Special Tax Revenues**__ or other moneys deposited to the credit of the Puerto Rico Infrastructure Fund, the Authority shall withdraw an amount of such Special Tax Revenues and other moneys to make the following deposits in the following order: ….

(emphasis added).

11

Commonwealth and its covered instrumentalities. PROMESA §§ 201, 202. Consistent with the Commonwealth's certified fiscal plan and budget, and as permitted by the Enabling Act, the Commonwealth has not appropriated or transferred any of the Retained Rum Tax Remittances to PRIFA since November 30, 2015; none have been deposited into the Sinking Fund; and none are subject to any Bondholder lien.

## PROCEDURAL HISTORY

20.     Ambac wants to continue two actions it commenced before the Commonwealth filed its Title III case: the "U.S. Treasury Action" and the "PRIFA Clawback Action." Through those actions, Ambac is attempting to grab Rum Tax Remittances either before they are deposited with the Commonwealth or once the Commonwealth has received them. Both are automatically stayed because they both involve money the Commonwealth holds or money the United States has appropriated to the Commonwealth. As explained in the Prior Briefing, the District Court presiding over Ambac's action against the United States already entered an order ruling the action is automatically stayed. Ambac did not appeal and cannot now assert the Commonwealth has no interest in rum excise taxes.

21.     Still, on May 30, 2019, Ambac filed its *Motion Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* [ECF No. 7176] (the "PRIFA Lift Stay Motion"). FGIC joined the motion, as did Assured. [ECF Nos. 7546, 8024].

22.     Movants purport to provide a complete procedural history, but neglect to mention the Court's June 13, 2019 Order setting a hearing "on the legal issues of standing and secured status only." [ECF No. 7420]. The June 13th Order limited factual submissions "to legal documents (statutes, agreements and the like) relevant to the parties' standing and collateral security arguments." *Id*. The Order also provided any discovery, if needed, would await determination of

12

the threshold legal issues of standing and secured status.

23.    By July 19, 2019, the PRIFA Lift Stay Motion was fully briefed through a sur-reply filed by the Oversight Board [ECF No. 8164], and oppositions filed by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") [ECF No. 7896].  Oral argument was set for July 24, 2019.

24.    On July 24, 2019, based upon the Court's pronouncement in court regarding its mediation stay order, Movants requested, and the Oversight Board consented, to the PRIFA Lift Stay Motion being stayed pending a period of mandatory mediation.  [ECF Nos. 8244, 9016].

25.    Despite requesting the PRIFA Lift Stay Motion be subject to the mediation stay and the Court's order limiting discovery to legal documents, Ambac sought to serve 26 document requests on the Oversight Board, AAFAF, PRIFA, and the Puerto Rico Industrial Development Company.  [ECF No. 7328].  The Oversight Board opposed the motion for discovery and requested sanctions because the discovery violates the Court's June 13th Order [ECF No. 7891], and Ambac agreed to include the motion in the mediation stay.

26.    Then, on October 25, 2019, Ambac advised the Court that it wished to amend its Lift Stay Motion in light of the First Circuit's *Gracia-Gracia* decision.  [ECF No. 9004].  The Oversight Board opposed the request, and the Court denied it.  [ECF No. 9016].

27.    In December 2019, after the Mediation Team Leader filed an interim report, the Court set a schedule for the PRIFA Lift Stay Motion, allowing a motion to amend by January 16, 2020, oppositions to it by January 22, 2020, and a reply by January 25, 2020.

28.    The issues are to be limited to "standing and secured status, and on the preliminary hearing issues [of] (i) [whether] there is a reasonable likelihood the debtors will prevail and (ii) there are compelling circumstances to justify (or consent to allow) delaying the final hearing(s)

through the Court's resolution of the Rule 12(b) and/or Rule 12(c) motions filed in connection

with the Revenue Bond Adversary Proceedings" commenced by the Oversight Board.  [ECF No.

9620].

## **LEGAL STANDARDS**

29.     Pursuant to Fed. R. Civ. P. 15, amendments that "would be an exercise in futility,

or otherwise would serve no useful purpose" should not be allowed.  *Aponte-Torres*, 445 F.3d at

58; *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 59 (1st Cir. 1990) (affirming denial

where amendments provided "nothing which would repair the holes in [movant's] case")

(overruled on other grounds).  Importantly, an "assertion of a need for discovery" is not legitimate

grounds for amendment.  *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019).

30.     Amendment is further inappropriate where, as here, it would "result in additional

and unwarranted burdens on an opponent and the courts."  *Rivera Velez v. Puerto Rico Elec. Power

Auth.*, 201 F.R.D. 289, 291 (D.P.R. 2001).  In considering a request to amend, the Court should

consider "the totality of the circumstances … to exercise its informed discretion in constructing a

balance of pertinent considerations."  *Palmer v. Champion Mortg.*, 465 F.3d 24, 30–31 (1st Cir.

2006).

## **ARGUMENT**

## I.     *THE PROPOSED AMENDMENTS CANNOT CHANGE THE STATUTORY AND CONTRACTUAL LANGUAGE THAT GOVERN THE PARTIES' INTERESTS.*

31.     None of the amendments change the scope of the parties' interest (or, in Movants'

case, lack thereof) in the Rum Tax Remittances.  That determination depends entirely on the Trust

Agreement and the Enabling Act.  While the Commonwealth's ownership of the Rum Tax

Remittances and the PRIFA Bondholders' lack of a security interest in any moneys outside the

Sinking Fund is fully briefed and ready for decision, we summarize the grounds here, all of which

14

remain unchanged by the Proposed Amendments.

32.     Two aspects of 3 L.P.R.A. § 1914's appropriation to PRIFA (subject to the Retention Powers) show the futility of the proposed amendments.  ***First***, the Enabling Act does not pledge any money to Bondholders or grant Bondholders any security interest whatsoever.[14] Rather, it provides any Rum Tax Remittances actually received by PRIFA are to be used for PRIFA's "corporate purposes" – not necessarily to pay Bondholders, and PRIFA may only pledge property through the Trust Agreement.  *Id.*  ***Second***, the statute specifies that all Rum Tax Remittances received by PRIFA remain subject to the Commonwealth's Retention Powers.  Thus, not only are the Rum Tax Remittances Commonwealth property in the first instance (if they were not, the Commonwealth would not have been able to appropriate them or attach its Retention Powers to them), through its Retention Powers, the Commonwealth maintains, at the very least, a reversionary property interest in any Rum Tax Remittances actually received by PRIFA.  This was discussed thoroughly in the Prior Briefing.  [*E.g.*, ECF No. 7827 at 41-55].

33.     There is no legal instrument, statutory or contractual, that extends Movants' security interest beyond the provisions of the Trust Agreement.  The Trust Agreement limits Movants' security interest to funds "payable ***solely*** from the Pledged Revenues," which are "moneys that have been deposited to the credit of the Sinking Fund."  Trust Agreement §§ 101, 601 (emphasis added).

34.     The Proposed Amendments do not speak to this.  Rather, Movants' proposed amended brief replicates their previous arguments that the Enabling Act obligates the

---

[14] The only direct rights Bondholders' may have under the Enabling Act is a "non-impairment" covenant providing that the Commonwealth will "not limit or alter the rights … conferred to" PRIFA.  3 L.P.R.A. § 1913.  PRIFA has all the rights it has always had, and when PROMESA impacts any of those rights, PROMESA preempts the Enabling Act and controls.

Commonwealth to send the Rum Tax Remittances to PRIFA.  Even if it does, it is preempted by

PROMESA and unenforceable, a point Movants ignore.   As the First Circuit recently held

(affirming this Court's prior order and the Oversight Board's long-held position): "[I]f a certified

budget is to have 'full force and effect,' subsection 202(e)(3)(C), **there can be no spending from

sources not listed in that budget, regardless of what any territorial laws say**."  *Vázquez-

Garced*, 945 F.3d at 8, *aff'g Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin.

Oversight & Mgmt. Bd. for P.R.)*, 330 F. Supp. 3d 685, 701 (D.P.R. 2018) ("a budget approved

and adopted by the Oversight Board as compliant with a certified fiscal plan becomes law … and

inconsistent Commonwealth laws are preempted").

> 35.     Thus, Movants' proposed amendments are futile.

## II.     THE PROPOSED AMENDMENTS DO NOT CHANGE MOVANTS' STATUS AS CREDITORS OF A CREDITOR WITHOUT STANDING.

> 36.     Movants are PRIFA Bondholders, insurers purportedly subrogated to PRIFA

Bondholders, and the Trustee.  In short, subject to the Trust Agreement limitations, PRIFA

Bondholders and the Trustee would have standing to lift the stay only if they have secured claims.

They do not have standing to assert PRIFA's rights against the Commonwealth, nor the

Commonwealth's rights against the United States.  They are in contractual privity with PRIFA,

not the Commonwealth, and statutes entitling PRIFA to appropriations from the Commonwealth

do not render the PRIFA Bondholders creditors of the Commonwealth.[15]  Thus, none of Movants

---

[15] Movants' have previously pointed to 3 L.P.R.A. § 1913, which contains a covenant between the Commonwealth bondholders that the Commonwealth "shall not limit or alter the rights hereby conferred to the Authority" as providing them standing.  But Section 1913 is not triggered by the Commonwealth's retention of Rum Tax Remittances because whatever PRIFA's "rights" are under the Enabling Act, they still exist.  No portion of the Enabling Act has been repealed or amended.  Moreover, § 1913 would only provide standing to pursue an unsecured claim for breach of covenant, not standing to seek to lift the stay regarding property of the Commonwealth to which they have no rights.

are a "party-in-interest," and they lack standing to seek relief from the stay. *In re Comcoach Corp.*, 19 B.R. at 234 ("A noncreditor of a debtor, even though owed a debt by a creditor of the debtor, does not have standing *to seek relief from the automatic stay* for the purpose of recovering on its claim.") (emphasis added).[16]

37.     Movants claim to have solved standing by adding the Trustee, but the Trustee too is at best a creditor of a creditor.  Because the Proposed Amendments do not change Movants' status as creditors of a creditor without party-in-interest standing to seek relief from the stay, the amendments serve no purpose and are futile to grant standing except to the extent Movants can show they have property interests in property of the Commonwealth.

### III.     MOVANTS' GRACIA-GRACIA *AMENDMENTS SERVE NO PURPOSE AND DO NOT AFFECT THE PROPERTY INTEREST ANALYSIS.*

38.     Movants claim a right to amend to "present their stay-relief arguments in light of *Gracia-Gracia*…."  M.Br. ¶ 26.  As Movants recount, the First Circuit held that *if* a claimant "first … prove[s] the existence and legal source of a trust relationship," the claimant must *then* "identify the trust fund or property and, where the trust fund has been commingled with general property of the bankrupt, sufficiently trace the property or funds."  939 F.3d at 350-51 (quoting *Conn. Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 618 (1st Cir. 1988)).

39.     There is no need to amend in light of *Gracia-Gracia* because this Court already imposed a briefing framework under which the issue of secured status was determined first.  As such, the Prior Briefing is entirely consistent with the *Gracia-Gracia* construct and amendment serves no purpose.

---

[16] Certainly, Movants are not secured claimholders of the Commonwealth, and as unsecured claimholders at best, and non-creditors at worst, cannot move to lift the stay.  *See In re Growth Dev. Corp.*, 168 B.R. at 1017 (an unsecured creditor has "no interest in property to be protected, so relief provided for by § 362(d)(2) is not applicable").

40.    Movants' cases on this point are inapposite.  Each dealt with a change in the law that opened "a new cause of action" or "impacted jurisdiction."[17]  *See* M.Br. ¶ 26.  *Gracia-Gracia* is not such a case.  It involved the Commonwealth's possession of a third party's funds (duplicate auto-insurance premiums), not the Commonwealth's own funds.  It also involved a statute providing the duplicate premiums were held in a fiduciary capacity.  No such statute exists here. Indeed, the First Circuit did not determine a trust existed.  That the Commonwealth allegedly created accounts only for PRIFA creates neither a trust nor a security interest.  It demonstrates a means of cash management.  If it created a trust or security interest, the Uniform Commercial Code's system of public filing and perfection requirements would be meaningless.  *Gracia-Gracia* merely affirms the construct this Court set out for the PRIFA Lift Stay Motion six months ago and reaffirmed in December.  [ECF Nos. 7420, 9620].  Where new, intervening caselaw does not change analysis of the issues, amendment should be denied.  *See Krueger v. Synetgy LLC*, 2009 WL 10691341, at *5 (M.D. Tenn. 2009) (denying leave to amend based on new caselaw where the new cases "did not significantly change the case law in this matter").

41.    As has already been briefed, Movants cannot meet the first threshold requirement of *Gracia-Gracia*: "the existence and legal source of a trust relationship."  939 F.3d at 350; *see also, e.g.*, ECF No. 7827 at 31-41].  Yet Movants cite to *Gracia-Gracia* in their attempt to add a new theory that the Commonwealth holds the Rum Tax Remittances in trust.  *See* Amended Lift Stay at 26 ("The Commonwealth, at most, holds the Pledged Rum Taxes in trust for PRIFA and its Bondholders").  But *Gracia-Gracia* does not change trust law.  It does not create a trust where

---

[17] The one exception is *Hill v. Mitchell*, 2005 WL 8162499 (S.D. Ohio 2005), where the court allowed a habeas petitioner to update his petition with new caselaw from the seven years since he had originally filed, as "the substantive pleadings … would have to be updated anyway…."  That is not this case, where barely six months have passed, and the intervening caselaw is entirely consistent with all Prior Briefing and the Court's bifurcation of the proceedings.

18

none existed before.  Indeed, it did not decide whether a trust existed.  It remanded for the District

Court to determine.  Thus, it provides no basis for amendment.  The new theory has no merit in

any event.

42.    *First,* Movants cannot identify any trust fund property other than moneys in the

Sinking Fund.  Consistent with the Enabling Act, the Commonwealth may choose to appropriate

no Rum Tax Remittances.  And as noted, even if the Enabling Act is read to require appropriation,

any such requirement is preempted.  Thus, the appropriation on which Movants' entire case relies

is either not in the statute or is preempted.  Without an appropriation, the Retained Rum Tax

Remittances remain property of the Commonwealth and are not held for the benefit of PRIFA or

its Bondholders.  This is another reason to prioritize the secured status issue as the Court had

already done and was prepared to hear argument on July 24, 2019.

43.    Further, no trust was created and no trust beneficiary was identified.  The Rum Tax

Remittances transferred to PRIFA are deposited in the PRIFA Infrastructure Fund for PRIFA's

"corporate purposes," and not for the benefit of the Bondholders.  *See* 3 L.P.R.A. § 1914.

Moreover, even if Movants could establish a trust, which they have not, they would have to identify

a trust *res* beyond the Sinking Fund.  A trust should not be found where the funds are commingled.

Courts have found that whether funds are segregated is a critical factor in determining the existence

of a trust.[18]  The Retained Rum Tax Remittances are commingled with other funds in TSA sub-

---

[18] *In re Einhorn*, 59 B.R. 179, 184 (Bankr. E.D.N.Y. 1986) (finding that crucial factor in determining whether a trust
relationship is created is the duty to segregate funds; court found no trust where agreement, among other things, did
not require segregation of funds); *Superintendent of Ins. v. First Cent. Fin. Corp. (In re First Cent. Fin. Corp.)*, 269
B.R. 481, 495 (Bankr. E.D.N.Y. 2001) (no trust where, among other things, under tax allocation agreement, no
requirement for funds to be placed in separate account, and amounts payable to asserted beneficiary be made in cash
or securities eligible for investment); *Leased Pet Dep'ts, Inc. v. Cook United, Inc. (In re Cook United, Inc.)*, 50 B.R.
559, 561 (Bankr. N.D. Ohio 1985) (finding that an alleged trustee that commingles funds does not create a trust in a
department store context).

accounts.  Even when transferred to PRIFA, they are commingled in the PRIFA Infrastructure

Fund as required by 3 L.P.R.A. § 1914.  Thus, they are not earmarked for the repayment of PRIFA

Bonds, but are instead commingled.

44.    Nothing in 3 L.P.R.A. § 1914 purports to create a trust.  But where the

Commonwealth has attempted to create a trust relationship, it has done so explicitly.  Section

1923(b) of the Enabling Act, for example, creates a "special fund … ***to be held in trust***."  3

L.P.R.A. § 1923(b) (emphasis added).  No equivalent language is used regarding the TSA or the

PRIFA Infrastructure Fund.[19]

45.    Because the Enabling Act lacks any language creating a statutory trust,[20] Movants

resort to asserting they have "equitable liens" on the Retained Rum Tax Remittances.  But

equitable liens do not exist under Puerto Rico law.[21]  Even if they did, the effect of a *statute* cannot

create any equitable right because an equitable lien is a remedy to address unfair transactions.

*Restatement (Third) of Restitution and Unjust Enrichment,* Part II, Chapter 2, Topic 3, Introductory

Note (transfers made under "legal compulsion" are not appropriate for an equitable remedy unless

---

[19] As another example, when the Legislature created the Puerto Rico Children's Trust, it did so explicitly: "A public *trust fund* is hereby created, attached to the [Government Development Bank for Puerto Rico], which shall maintain said fund as fiduciary, apart from other public funds under its custody." 24 L.P.R.A. § 3122.  Arguably, and with no need to get into this issue in this pleading, even the mention of a trust in a statute is insufficient to create a trust under Commonwealth law.

[20] If needed, the Commonwealth will show that numerous other requirements to create a trust under Commonwealth law are also missing.

[21] *See Acevedo v. Solivellas & Co.*, 49 D.P.R. 633 (P.R. 1936).  An unjust enrichment claim is a required predicate for an equitable lien.  The Commonwealth, as a ***civil*** law jurisdiction does not recognize a claim for unjust enrichment where there is a contract or a statute that covers the transaction. *See* P.R. Laws Ann. tit. 31, § 7; *Rivera-Muñiz v. Horizon Lines Inc.,* 737 F. Supp. 2d 57 (D.P.R. 2010).  Here, there is a trust agreement and a statute.  Thus, even if recognized under Puerto Rico law, equitable liens would be "displace[d]" by the Uniform Commercial Code (which Puerto Rico has adopted) because the lender could have created a security interest under Article 9.  *See* 6AP3 UCC Reporter-Digest (2019), former UCC § 9-203, Comment 5 ("Unless the secured party is in possession of the collateral, his security interest, absent a writing which satisfies paragraph (1)(a), is not enforceable even against the debtor, and ***cannot be made so on any theory of equitable mortgage or the like***.").  Accordingly, Movants cannot simultaneously argue their lien extends to the Rum Tax Remittances and they have an equitable lien on them.

the statute is mistakenly applied); *Atl. Coast Line R. Co. v. Florida*, 295 U.S. 301 (1935) (Cardozo, J) (transfer made under "color of legal right" generally not subject to equitable remedy). A valid constitutional statute, by definition, is never "unfair" because it represents the judgment of the legislative and executive branches of the state. For the same reason, Movants' theory relating to a "constructive trust" (Amended Lift Stay ¶ 60) fails because it is an equitable remedy, and there can be no inequity arising from the Enabling Act's structure.

46.     Additionally, Movants cannot simultaneously be equitable owners of the Retained Rum Tax Remittances and have a lien on them. Under Movants' theory, the trustee (here the Commonwealth) holds "bare legal title" (Amended Lift Stay ¶ 6) to the Retained Rum Tax Remittances in the TSA while PRIFA and/or its Bondholders holds all equitable interest in the trust *res*. As this Court previously observed in granting the Oversight Board's motion to dismiss various bondholders' complaint (including PRIFA Bondholders): "[t]he existence of a trust is equally inconsistent with full, outright ownership because a trust divides ownership of property, placing legal title with trustee while the beneficiary enjoys an equitable interest." *Assured Guar. Corp v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 582 B.R. 579, 597 (D.P.R. 2018) (citing *U.S. Fid. & Guar. Co. v. Guzman*, 2012 WL 4790314, at *5 (D.P.R. Sept. 20, 2012)). Put simply, "the assertion of a lien is inconsistent with the assertion of a title interest." *Id.* (citing *William W. Bierce, Ltd. v. Hutchins*, 205 U.S. 340 (1907)).

47.     One cannot have a lien on something one equitably owns. Movants cannot have it both ways, but in pursuing both, they make clear they have neither.

## IV.     MOVANTS' "FACTUAL DEVELOPMENTS" AMENDMENTS SERVE NO PURPOSE.

48.     Movants claim they need to amend to add information on (i) unspecified "transmittal information" included when the trustee for the Commonwealth's lockbox account

21

transfers Rum Tax Remittances to the TSA and (ii) the existence of sub-accounts in the TSA, because "it supports the Movants' argument that PRIFA … is the beneficial owner of the Pledged Rum Taxes and … there is an identifiable trust *res* of Pledged Rum Taxes…." M.Br. ¶ 28. False. Movants' contention is belied by their own Amended Lift Stay, which concedes these amendments are "not necessary." Amended Lift Stay ¶ 66.[22] Amendment should be denied where new facts would not change the outcome. *See Morin v. Univ. of Massachusetts*, 2011 WL 7767948 (D. Mass. 2011), *adopted*, 2012 WL 1415914 (D. Mass. 2012) (leave to amend denied because the newly discovered facts did not change that the claims were barred).

49.     Further, this "new" information has no bearing whatsoever on the issue of bondholders' claimed property interest. Whether Movants can trace the Retained Rum Tax Remittances into particular sub-accounts in the TSA is irrelevant to the issues at hand for the initial hearing: secured status and standing. Put differently, even if the Commonwealth deposited funds into an account labeled to be in favor of PRIFA, and/or created a subaccount to hold only funds appropriated to PRIFA, those facts show orderly cash management. They do not transfer ownership, create security interests, or create trusts. Movants cannot use orderly cash management techniques to create property interests.

50.     Fundamentally, "transmittal information," whatever it is, does not create a lien. There are three recognized types of liens: "statutory lien[s] … security interest[s] or judicial lien[s]." 11 USC § 101(53). There is no such thing as a "transmittal information lien." Nor does it create any type of ownership interest because the Commonwealth, not the lockbox Trustee, owns

---

[22] For this reason, cases Movants cite allowing amendment "when new facts arise that go to the core facts at issue" do not apply. M.Br. ¶ 28. Movants concede, in the Amended Lift Stay, that their new "factual developments" do not go to the core of any of the issues to be addressed at the initial hearing.

the Rum Tax Remittances.  How the lockbox Trustee may determine to describe certain funds when it transmits them to the Commonwealth does not, and cannot, effectuate any ownership or trust relationship in the funds.  Movants do not argue otherwise and instead acknowledge in the Amended Lift Stay it is immaterial.

51.     The Commonwealth legislature went as far as it desired by enacting a statute purporting to appropriate to PRIFA future years' rum tax receipts from the United States.  Not only is that appropriation preempted, it is also not binding on any legislature because each legislature can repeal it at will.  Manifestly, the Commonwealth's cash management officials have no authority to grant security interests or property interests the legislature did not grant.

## V.      THE     PROPOSED     AMENDMENTS     WOULD     PREJUDICE     THE COMMONWEALTH.

52.     The work on the PRIFA Lift Stay Motion has been done.  The gating issues of standing and secured status are briefed, and have been ready for argument since July.  The parties and the Court have already expended substantial resources in preparing these issues for a hearing.

53.     As aforesaid, Movants are putting billions of dollars of Commonwealth present and future revenues under a cloud.  Delay in resolution of the cloud is prejudicial to formulation of the Commonwealth's plan of adjustment.

54.     The Court's December 19, 2019 Order provided for a "supplemental" opposition and "supplemental" reply to Movants' PRIFA Lift Stay Motion.  [ECF No. 9620].  If there was going to be amendment, the Oversight Board would address those discrete amendments, and the Court could consider them in conjunction with the Prior Briefing.  But Movants did something far different.  They seek a 60-page rewrite of their brief, as if the Prior Briefing does not exist.  If allowed to do so, the Oversight Board will be forced to respond to an entire, newly written brief, far from the "supplemental opposition" contemplated by the Court.  There is no reason to impose

23

the "additional and unwarranted burden" on the Oversight Board or the Court.  *See Rivera Velez*, 201 F.R.D. at 291 (denying leave to amend where it would unnecessarily burden the parties and the court).

55.     Under the current schedule, the Oversight Board would have little more than 24 hours to finalize its opposition to the new PRIFA Lift Stay Motion, from the January 29, 2020 conference at 9:30am AST to the deadline at 5:00pm AST the next day.  If Movants are allowed to rewrite their entire brief, the Oversight Board requests the Court allow fourteen days following an order on the Motion to Amend for the Oversight Board to oppose the new brief, and Movants ten days to reply.  Oral argument on the threshold issues that were set for early determination in the June 13, 2019 Order should then be set at the earliest available date.[23]

56.     Movants' bid to disrupt the procedures and schedule this Court carefully set out should be denied.  The Motion to Amend does not request a rewrite, yet that is what Movants did. Movants cannot argue the Prior Briefing was insufficient.  In opposing the Oversight Board's previous request to extend pages for its opposition, Movants proclaimed that their original PRIFA Lift Stay Motion fully briefed "all of the issues implicated by Ambac's motion [including] standing and whether Ambac is a secured creditor."  [ECF No. 7785 ¶ 2].  Movants have not demonstrated why their proposed amendments would change the calculus on the issues of standing or security interest.  Accordingly, Movants should be held to their prior statements, and the Motion to Amend should be denied.

---

[23] The Court has already determined that Movants waived their right for a hearing pursuant to section 362(e) of the Bankruptcy Code.  [*See* ECF No. 7215].  Accordingly, the Court may use its discretion pursuant to Rule 9006 to stay its consideration of the Motion to Amend.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Commonwealth respectfully submits the Motion to Amend the PRIFA Lift Stay Motion should be denied, or alternatively, if the motion is granted, the Court schedule oral argument on the issues of secured status and standing at the earliest possible date without further discovery.

*[Remainder of page intentionally left blank.]*

25

Dated: January 22, 2020
San Juan, Puerto Rico

Respectfully submitted,


/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Michael Mervis (*pro hac vice*)
Daniel S. Desatnik (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
Email: brosen@proskauer.com
Email: ebarak@proskauer.com
Email: ddesatnik@proskauer.com

Michael A. Firestein (*pro hac vice*)
Lary Alan Rappaport (*pro hac vice*)
PROSKAUER ROSE LLP
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 557-2900
Fax: (310) 557-2193
Email: mfirestein@proskauer.com
lrappaport@proskauer.com

*Attorneys for the Financial Oversight and
Management Board for Puerto Rico, as
representative of the Commonwealth of
Puerto Rico*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer
