UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**REPLY IN SUPPORT OF AMENDED MOTION FOR ENTRY OF AN ORDER
(A) AUTHORIZING ALTERNATIVE DISPUTE RESOLUTION PROCEDURES,
(B) APPROVING ADDITIONAL FORMS OF NOTICE,
AND (C) GRANTING RELATED RELIEF**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................................. 2

    I.    The UCC's Proposed Change to the Selection of Claims Subject to the Proposed ADR Procedures Should Be Denied. .................................................................................. 3

    II.   The Proposed Changes to the Evaluative Mediation Procedures Are Not Necessary. ........................................................................................................................ 4

    III.  The Proposed Changes to the Binding Arbitration Procedures Are Inappropriate and Unnecessary. ............................................................................................................. 6

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643 (1986) ............................. 7

*Bekele v. Lyft, Inc.*, 918 F.3d 181 (1st Cir. 2019) .......................................................................... 6

*In re City of Detroit*, Case No. 13-53846-tjt (Bankr. E.D. Mich. Dec. 24, 2013) ......................... 7

*In re Garrido Jimenez*, 455 B.R. 51 (D.P.R. 2011) ...................................................................... 7

*Soto v. State Chemical Sales Co. Int'l, Inc.*, 719 F. Supp. 2d 189 (D.P.R. 2010) ......................... 7

*Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960).......................................... 7

**Statutes**

11 U.S.C. § 105(a) ........................................................................................................................ 5

48 U.S.C. §§ 2101-2241 ............................................................................................................... 1

**Other Authorities**

D.P.R. R. 83J(b).............................................................................................................................. 5

**To the Honorable United States District Judge Laura Taylor Swain**:

The Commonwealth of Puerto Rico (the "Commonwealth"), Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), Puerto Rico Highways and Transportation Authority ("HTA"), Puerto Rico Electric Power Authority ("PREPA"), and Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, ERS, HTA, and PREPA, the "Debtors," and each individually, a "Debtor"),[2] by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] respectfully submit this reply (the "Reply") in support of their *Amended Motion for Entry of an Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* (the "Amended ADR Motion")[4] [ECF No. 9718] and in response to (1) the *Limited Opposition to Entry of Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Form of Notice, and (C) Granting Related Relief Filed by the Financial Oversight and Management Board for Puerto Rico*, filed by Salud Integral de la Montaña, Inc. ("SIM") [ECF No. 9880] (the "SIM Limited Objection") and (2) the *Limited Response of Official Committee of Unsecured Creditors to Debtors' Amended Motion for Entry of an Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Form of Notice, and (C)*

---

[2] For purposes of this Motion only, and because the Puerto Rico Sales Tax Financing Corporation ("COFINA") has already reconciled substantially all of its proofs of claim, COFINA is not included among the Debtors seeking relief herein. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[4] Capitalized terms used but not defined herein shall have the meanings ascribed in the Amended ADR Motion.

1

*Granting Related Relief,* filed by the Official Committee of Unsecured Creditors ("UCC") [ECF No. 10146] (the "UCC Limited Objection," and together with the SIM Objection, the "Limited Objections"):

## ARGUMENT

1. Both of the Limited Objections recognize that the Debtors' Amended ADR Motion is an important step towards reconciliation of the high volume of claims filed against the Debtors. Indeed, neither of the Limited Objections disputes the need for speedy, cost-effective reconciliation of claims filed against the Debtors or challenges the three-step structure the Debtors propose in an effort to efficiently resolve such claims. That is not surprising because, prior to filing the Amended ADR Motion, counsel for the Debtors engaged in multiple conversations with counsel for the UCC and counsel for SIM to develop the proposed procedures and to address remaining concerns. The Amended ADR Motion reflects much of the input the Debtors received.

2. Subsequent to filing the Amended ADR Motion, the Debtors continued to engage in productive discussions with the UCC regarding the ADR Procedures. To resolve certain concerns raised during those discussions, the Debtors have agreed to make several additional changes to the proposed ADR Procedures. A modified version of the ADR Procedures is attached hereto as Exhibit A, and a redline illustrating the changes is attached hereto as Exhibit B.

3. Notwithstanding, the Objectors continue to press for a number of additional, unwarranted modifications to the proposed ADR Procedures. UCC Lim. Obj. at 2. Specifically, the UCC seeks: (1) to permit *all* creditors to participate in the Offer Exchange and Evaluative Mediation phases of the proposed ADR Procedures, unless their claims are specifically excluded from the ADR Procedures (such as bond claims), and even though such creditors would not participate in the subsequent phases of the ADR Procedures; (2) with respect to Evaluative Mediation, to provide that either creditors have "the opportunity to present additional documents

2

to the Mediator," or the Mediator has the authority to permit the parties to submit additional documents; and (3) with respect to Binding Arbitration, (*i*) to permit creditors to request the waiver or modification of their share of arbitration costs on a case-by-case basis, UCC Lim. Obj. at 4; (*ii*) to permit creditors to request "the Court order the arbitration of their specific claims," regardless of "whether or not the Debtors have consented to arbitration," *id.*; and (*iii*) to grant the UCC "consultation rights in connection with the Debtors' selection of an arbitration Provider," *Id.* at 6.

4. SIM, for its part, asserts that it is "supportive of [the Amended ADR Motion] in principle" but "objects to some of the procedures present in their present form." SIM Lim. Obj. at 2. Specifically, SIM asks this Court to: (1) utilize Puerto Rico's Commonwealth court judges to serve as mediators in the Evaluative Mediation stage of the ADR Procedures; (2) provide parties an opportunity to submit memoranda to the mediators during Evaluative Mediation; and (3) eliminate the use of Binding Arbitration in favor of permitting "state judges trying the case or [] Commonwealth mediators to conduct arbitration." *Id.* at 2.

5. Further modifying the Amended ADR Motion to accommodate these additional proposals is not warranted.

**I.   The UCC's Proposed Change to the Selection of Claims Subject to the Proposed ADR Procedures Should Be Denied**

6. The UCC's proposed modification to the claimants eligible for the ADR Procedure—which, if implemented, would mean *all* claimants not specifically exempted under the ADR Procedures could participate in the Offer Exchange and Evaluative Mediation phases, regardless of participation in the balance of the ADR procedures—should be denied because it would impose significant additional burdens on the resources of the Debtors and this Court.

7. At present, the Debtors contemplate approximately 12,000 claims will be designated for the ADR Procedures. The UCC's proposed change would permit tens of thousands

3

of additional claims to participate in the preliminary phases. But, multiplying the number of claims subject to the ADR Procedures would render them inadministrable. The ADR Procedures impose strict timelines for making and responding to offers and for conducting an Evaluative Mediation. Requiring the Debtors to formulate and respond to offers and Evaluations on the timeframes required by the ADR Procedures, but for vastly more claimants than the Debtors currently contemplate, would require a significant investment of resources far beyond the substantial commitment the Debtors already intend to make.

8. This approach would also impose significant additional burdens on the resources of the Title III Court. Under the proposed ADR Procedures, the Title III Court may select, in its sole and absolute discretion, the Mediators who will administer the Evaluative Mediation process. Permitting many tens of thousands of additional claimants to participate in the ADR Procedures would greatly complicate this process as well, potentially overburdening the Mediators selected or even requiring the Title III Court to identify numerous additional individuals to serve as Mediators.

9. At bottom, the UCC's proposed approach appears intended to ensure that more creditors have an opportunity to participate in negotiations to settle their claims against the Debtors. While laudable, including such an obligation in the ADR Procedures is unnecessary. The Debtors routinely seek to consensually reconcile claims and, on the flip side, welcome opportunities to engage in claim settlement discussions, including the exchange of offers. But, this is the Debtors' prerogative and the UCC should not infringe upon a process designed to address and reconcile the largest number of claims in the most expeditious, cost-effective, non-burdensome manner.

II. **The Proposed Changes to the Evaluative Mediation Procedures Are Unecessary**

10. The Limited Objections request that the Evaluative Mediation procedures be modified to (1) utilize current Commonwealth court judges as mediators, and (2) permit the parties

4

to submit mediation statements, either upon the request of the mediators or upon the request of the parties. Neither modification is appropriate.

11. SIM requests that the Mediators who will conduct the Evaluative Mediations be selected from the Commonwealth court's judges. Although SIM asserts that the Commonwealth judges' offer to assist in the resolution of claims has been "ignored" by the Debtors, that is not the case. On the contrary, the Debtors' proposal contemplates permitting many claimants to proceed with litigation before the Commonwealth courts, which the Debtors submit is the best use of the Commonwealth judges' skills. Moreover, it is most appropriate for the individuals who will serve as mediators to be selected by the Title III Court in its sole and absolute discretion. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"); *see also* D.P.R. R. 83J(b) ("All civil cases arising under the jurisdiction of this Court are eligible for mediation. A case may be selected for mediation: (1) By the Court at its discretion; (2) By the Court on the motion of one of the parties; or (3) By the stipulation of all parties to a case."). That is what the ADR Procedures currently contemplate, and the Debtors defer to the Title III Court's discretion in selecting the Mediators.

12. In addition, compulsory mediation statements are unnecessary to effectuate the goals of the Evaluative Mediation process. Evaluative Mediation is designed to enable the speedy, cost-effective evaluation of claims that are designated for ADR, but are not successfully resolved by the proposed Offer Exchange. Specifically, through the Offer Exchange, the parties will exchange all relevant information necessary to determine the value of a creditor's claim. If the parties do not resolve the claim through the Offer Exchange, the Debtors will submit all information exchanged between the parties to the Mediator assigned to a particular claim [ECF No. 9718 at 8-10]. It is expected that, in many, if not all, circumstances, the information

5

exchanged between the parties will be sufficient to permit the Mediators to conduct a thorough evaluation of the claim. Consequently, there is no need to require either the Debtors or the claimants to expend valuable time and resources drafting mediation statements, and accordingly, modifying the ADR Procedures to require the submission of such statements is unnecessary. It must be noted that in the event that the Mediators determine that written mediation statements would be beneficial, the proposed ADR Procedures do not preclude the Mediators from requesting such a statement.

### III. The Proposed Changes to the Binding Arbitration Procedures Are Inappropriate and Unnecessary

13. The UCC's three proposed changes to the Binding Arbitration procedures are either inappropriate or unnecessary.

14. *First*, the ADR Procedures should not be modified to permit claimants to request modifications to cost-sharing between Debtors and claimants. Claimants are *not* obligated to participate in binding arbitration, which is only one of several options claimants have available to liquidate and resolve their claim. If claimants are unable or unwilling to pay the costs of binding arbitration, they may instead opt to liquidate and resolve their claim through litigation before the Commonwealth courts or continued litigation before the Title III Court. Claimants therefore do not lose any of their due process rights as a result of the cost-sharing requirement.

15. Moreover, it is undisputed that cost-sharing between parties to an arbitration is permissible under controlling First Circuit law. *See Bekele v. Lyft, Inc.*, 918 F.3d 181, 189 (1st Cir. 2019) (declining to hold that a "cost-sharing requirement is substantively unconscionable" and declining to adopt a rule that a cost-splitting provision is "unenforceable whenever it would have the 'chilling effect' of deterring a substantial number of potential litigants from seeking to vindicate their statutory rights." (internal citations omitted)). Indeed, requiring parties to evenly

6

divide the cost of arbitration is consistent with the procedures followed in other large municipal bankruptcies. *See In re City of Detroit*, Case No. 13-53846-tjt, ECF No. 2302, at 31 (Bankr. E.D. Mich. Dec. 24, 2013) ("as part of an agreement to submit Designated Claims to binding arbitration, the fees and costs charged by the arbitrator and the MTA shall be shared equally among the parties . . .").

16. Here, splitting costs evenly between Debtors and claimants fairly allocates burdens between the parties while preserving the Debtors' scarce resources. In light of the sheer volume of pending claims, the alternative—obligating the Debtors to shoulder the burden of paying arbitrators itself—would impose potentially crippling additional costs on the Debtors, to the detriment of other stakeholders in these Title III Cases.

17. *Second*, the UCC's request that the Court enter an order compelling the Debtors to participate in arbitration—even when the Debtors have expressly refused to consent to certain arbitrations—is plainly inconsistent with due process. It is well-settled that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (citing *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Accordingly, parties may only be compelled to participate in arbitration when they have "*consent[ed]* . . . to arbitrate at least some of their claims and thereby forego a judicial remedy for those claims." *Soto v. State Chemical Sales Co. Int'l, Inc.*, 719 F. Supp. 2d 189, 191 (D.P.R. 2010) (emphasis added); *see also In re Garrido Jimenez*, 455 B.R. 51, 71 (D.P.R. 2011). The UCC's request for an order compelling the Debtors to submit certain claims to arbitration when it has not consented to do so violates these principles, and the Court should reject this proposed modification.

7

18. *Lastly*, there is no need for the Court to order that the UCC is entitled to "consultation rights" with respect to the selection of an arbitration services provider because the Debtors have already agreed to consult with the UCC as they solicit and evaluate proposals. Indeed, the revised proposed ADR Procedures expressly state that the Debtors "shall consult" with the UCC with respect to the selection of an arbitration provider. *See* ADR Procedures, ¶ 5(c). Moreover, as the Debtors have already informed the UCC, the concerns that purportedly animate its request for "consultation rights"—the need for arbitrators who are familiar with local Puerto Rico law and have Spanish language capabilities—are also factors the Debtors plan to take into account when selecting a provider. Accordingly, the modification proposed by the UCC is unnecessary and should be rejected.

## **CONCLUSION**

19. For the foregoing reasons, the Debtors respectfully request that the Amended ADR Motion be granted and that the Court grant such other relief as is just and proper.

| | |
|---|---|
| Dated: January 22, 2020<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>/s/ Martin J. Bienenstock<br>Martin J. Bienenstock (*pro hac vice*)<br>Brian S. Rosen (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br><br>*Attorneys for the Financial Oversight and Management Board for Puerto Rico as representative for the Debtors*<br><br>/s/ Hermann D. Bauer<br>Hermann D. Bauer<br>USDC No. 215205<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*Co-Attorneys for the Financial Oversight and Management Board for Puerto Rico as representative for the Debtors* |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record, and all CM/ECF participants in the case.

/s/ *Hermann D. Bauer*

Hermann D. Bauer

10