## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | ) PROMESA |
| | ) Title III |
| THE FINANCIAL OVERSIGHT AND | ) |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) No. 17 BK 3283-LTS |
| | ) |
| as representative of | ) (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, | ) |
| *et al.* | ) |
| | ) |
| Debtors. | ) |
| | ) |
| In re: | ) |
| | ) PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) |
| | ) No. 17 BK 4780-LTS |
| as representative of | ) |
| PUERTO RICO ELECTRIC POWER | ) |
| AUTHORITY ("PREPA") | ) |
| | ) |
| Debtor.[1] | ) **Re: 17-BK-3283-LTS, ECF Nos.** |
| | ) **8789, 8838, 8850, 8886** |

## JOINT INFORMATIVE MOTION
## PURSUANT TO ORDER OF OCTOBER 17, 2019
## REGARDING COBRA ACQUISITION LLC'S MOTION FOR
## ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura T. Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial

Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtor's

representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and*

*Economic Stability Act* ("PROMESA"), the Puerto Rico Fiscal Agency and Financial Advisory

Authority ("AAFAF," and together with PREPA and the Oversight Board, the "Government

Parties"), and Cobra Acquisitions LLC ("Cobra") (collectively, the "parties"), respectfully

submit this joint informative motion pursuant to the Court's *Order Granting Joint Urgent Motion*

*of the Oversight Board, PREPA, and AAFAF to Extend All Applicable Deadlines to Cobra*

*Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims*, dated

October 17, 2019 (Docket Entry No. 8886) (the "Stay Order"), which ordered as follows:

> The parties are directed to file, by January 22, 2020, a joint informative motion (i)
> addressing the status of the pending criminal matter; (ii) addressing the status of
> FEMA's review of Cobra's contracts with PREPA; (iii) providing a summary of
> potential factual disputes that the parties anticipate will need to be tried; (iv)
> proposing a consensual pretrial schedule for discovery and briefing; and (v)
> notifying the Court of any additional issues pertaining to the Administrative
> Expense Motion that have arisen.

Stay Order at 3.

The parties respectfully state as follows:

## I.      Status of the Pending Criminal Matter

As the Court is aware, on September 3, 2019, a federal grand jury sitting in the District of

Puerto Rico returned a 15-count indictment in the matter of *U.S.A. v. Tribble*, Case No. 19-CR-

541-FAB, Docket Entry No. 3 (D.P.R. Sept. 3, 2019) (the "Indictment"), alleging criminal

charges against Ahsha Tribble, former Federal Emergency Management Agency ("FEMA")

FEMA Region II Deputy Regional Administrator and Sector Lead for Power and Infrastructure

in Puerto Rico, Keith Ellison, a former President of Cobra, and Jovanda Patterson, former FEMA

Deputy Chief of Staff assigned to San Juan, Puerto Rico. Cobra is not a defendant in the case.[2]

The defendants have each been arraigned on the Indictment and bail was set. On October

18, 2019, the government and the defendants appeared before the Court for a pretrial conference,

during which the government was ordered to produce discovery, which the government

described as "voluminous." Given the volume of discovery, and the defendants' needs to review

such discovery to decide whether to file pretrial motions, the Court excluded time pursuant to the

Speedy Trial Act until the next pretrial conference, finding that such exclusion was in the

interests of justice.

After initially issuing a scheduling order setting a trial date of December 9, 2019, the

Court presiding over the pending criminal matter set aside that scheduling order. *U.S.A. v.*

*Tribble*, Case No. 19-CR-541-FAB, Docket Entry No. 59 (D.P.R. Oct. 18, 2019).

A status conference is scheduled for February 13, 2020. No trial date or deadlines for

motions have been set.

## II.     Status of FEMA's Review of Cobra's Contracts with PREPA

As the Court is aware, the Office of the Inspector General of the Department of

Homeland Security issued a report entitled "FEMA's Eligibility Determination of Puerto Rico

Electric Power Authority's Contract with Cobra Acquisitions LLC" (OIG-19-52), dated July 3,

2019 ("OIG Report").  The OIG Report addressed the process FEMA used to approve the rates

PREPA agreed to pay Cobra.  Pursuant to the OIG Report, FEMA and the Department of

Homeland Security Operational Analysis Center agreed to "analyze the time and quantities

claimed by PREPA for cost reasonableness" and disallow reimbursement to PREPA of any costs

---

[2] A copy of the Indictment is at Docket Entry No. 8838-2.

PREPA agreed to pay Cobra that were unreasonable (the "FEMA Analysis"). FEMA estimated it

would complete the further analysis by May 29, 2020. See OIG Report at 5.  The parties are

unaware of any new developments with regard to the FEMA Analysis.

### III.     Summary of Potential Factual Disputes Anticipated for Trial

#### A.  Cobra's List

Because PREPA has not responded substantively to Cobra's claims set forth in its *Motion

for Allowance and Payment of Administrative Expense Claims,* Docket Entry No. 8789, Cobra is

unable to identify what factual disputes, if any, may need to be tried. Based on extensive

discussions directly with PREPA officials prior to the filing of its administrative expense claims,

Cobra believes that the vast majority of the material facts are not in dispute. Among the

undisputed facts are that Cobra and PREPA entered into two post-petition contracts for the

restoration of Puerto Rico's devastated power grid (one on or about October 19, 2017 and

thereafter amended (the "First Contract") and a second on May 26, 2018 (the "Second

Contract")), that Cobra performed all of the work required by those Contracts, and that PREPA

has failed to pay in excess of $200 million of the invoices Cobra submitted for its work.

Cobra believes that many, if not all, of its claims for payment can be resolved by

summary judgment. For example, PREPA failed to pay Cobra $61,668,083.34 due under the First

Contract for reimbursement of Puerto Rico taxes in excess of 8.5% in 2018. *See* Docket Entry

No. 8789 at 20. PREPA has not explained its failure to reimburse Cobra for these taxes as

required and there do not appear to be any facts in dispute. Similarly, no known factual issues

need to be resolved regarding the invoices Cobra submitted to PREPA totaling $20,137,138.94 to

which PREPA did not raise any objections, either during the period allowed by the Contracts or

in the months of discussions that followed. *Id.* at 15. Indeed, PREPA acknowledged that payment

is due for these invoices and, for several months preceding Cobra's filing in this Court,

represented to Cobra that payment was forthcoming, but no payment was made. *Id.* Also, there

do not appear to be any factual issues regarding the $7,551,956.01 in payments that PREPA

withheld based on a claimed prompt payment discount – the issue appears to be one of contract

interpretation. *Id.* at 15-16.

There also appear to be few or no factual disputes with respect to those invoices for

which PREPA has offered some reason for its failure to pay. For example, PREPA has withheld

payments on invoices totaling $86,965,033.06 because PREPA demands further proof of the

number of workers reflected on those invoices (the "headcount"), even though Cobra has

submitted all of the documentation required by the Contracts (and more) to establish entitlement

to payment. *See* Docket Entry No. 8789 at 16-17. Because the Contract terms alone establish

Cobra's right to be paid on these invoices (the authenticity of which has not been questioned), no

disputed issues of material fact need to be resolved in order for Cobra's claims to be allowed and

payment remitted therewith. Likewise, whether PREPA was entitled to reject invoices in the

amount of $19,967,796.20 on the grounds that they relate to work Cobra performed that was

beyond the scope of work under the Contracts, *id.* at 17-19, is a matter of contract interpretation

because the fact that Cobra completed the work is not in dispute.

To the extent any material factual issues arise when PREPA states its position on Cobra's

claims in an answering pleading or during discovery, they likely are to be relatively minor in

scope. For example, two of Cobra's claims relate to work Cobra performed at PREPA's direction

that PREPA now contends was unnecessary. *See* Docket Entry No. 8789 at 19 (claim for

$4,307,491.88 relating to work Cobra performed in preparation for Hurricane Beryl) and 19-20

(claim for $3,080,426.54 for mapping work). These claims may involve factual disputes as to

5

whether PREPA directed Cobra to perform the work in question, while the fact that Cobra

performed the invoiced work does not appear to be in dispute.

Cobra submits that the Government Parties' list of factual disputes ignores the extensive

discussions between Cobra and PREPA that preceded the filing of Cobra's administrative

expense claims. During those months-long discussions, the parties narrowed many of the issues

on the Government Parties' list. Indeed, some issues were resolved completely, but PREPA

simply failed to pay.

### B.  Government Parties' List

PREPA contends that there are hundreds of Cobra invoices in dispute and disputes

Cobra's assertions, set forth above, that there are few, if any, material facts in dispute.  The

hundreds of disputed invoices have a face value of over $200 million.  The basis of these

disputed invoices includes accuracy of headcounts, authorization of underlying work,

verification of work performed as billed, and the merits of earned discounts for promptly paid

invoices.  Specifically, the preliminary categories of factual disputes are:

1.  The accuracy of the headcounts as invoiced;

2.  Billing of non-restoration issues;

3.  Inappropriate billing of access mapping;

4.  Pending inspection reports;

5.  Alleged accrued interest on unauthorized or disputed work;

6.  Incorrect demobilization billing;

7.  Tax gross-up amount;

8.  Prompt payment discount for amounts withheld from payment by PREPA;

9.  Unauthorized work on Vieques and Roosevelt Road; and

10.    Miscellaneous billing issues.

In addition, the disposition of the criminal matter and results set forth in the FEMA
Analysis may impact the enforceability of Cobra's contracts with PREPA, or at a minimum,
increase the scope of the factual disputes to include issues such as Cobra's bidding and pricing
practices and the reasonableness of the costs charged by Cobra.

### IV.    Consensual Pretrial Schedule for Discovery and Briefing

#### A.    <u>Cobra's Position</u>

Cobra contends that the stay should be lifted and its administrative expense claims should
proceed forthwith. Cobra's interest in receiving payment for more than $200 million on
outstanding invoices for work it indisputably performed outweighs the Government Parties'
speculation that developments in the criminal proceeding or the results of the FEMA Analysis
may affect the claims. Cobra disagrees that the criminal proceedings or the FEMA Analysis will
have any impact on Cobra's right to payment for work it indisputably completed at rates that
PREPA agreed to pay and that FEMA contemporaneously found to be reasonable.

Even if the outcome of those other proceedings are assumed to have some bearing on
Cobra's claims, much can be accomplished toward resolution of the claims in the meantime. An
indefinite delay of any progress toward a decision on Cobra's claims in excess of $200 million
would be prejudicial, unfair and unjust.

| Date | Event | Requirements |
|---|---|---|
| January 30, 2020 | PREPA Answer to Claims set forth in Administrative Expense Motion | Sufficiently detailed to permit Cobra to identify any matters in genuine dispute and conduct focused discovery on those issues |
| February 6, 2020 | Initial Disclosures | Consistent with FRCP 26(f) |

7

| February 14, 2020 | Last day to issue document requests, interrogatories, requests to admit ("written discovery") | No more than 10 interrogatories and 10 requests to admit |
|---|---|---|
| March 6, 2020 | Last day to respond to written discovery, produce documents and provide privilege logs | |
| March 27, 2020 | Completion of depositions and all other fact discovery | |
| April 3, 2020 | Disclosure of any expert witnesses and their reports | |
| April 10, 2020 | Disclosure of any rebuttal experts and their reports | |
| April 24, 2020 | Close of expert discovery | |
| May 8, 2020 | Exchange pretrial briefs, pretrial motions, and witness and exhibit lists | |
| Date set by Court | Hearing | |
| 1 week after hearing | Post-trial briefs | No replies |

Any party may move for full or partial summary judgment at any time. Responses to such motions shall be filed within seven days.

Cobra notes that the Government Parties' proposed schedule omits any requirement that PREPA answer Cobra's claims before fact discovery begins. Even setting aside the unfairness of requiring Cobra to conduct discovery before PREPA has disclosed its position on the relevant issues, the discovery process will be far more focused and efficient if PREPA has disclosed the factual and/or legal bases for its refusal to pay Cobra in accordance with the Contracts.

### B. **Government Parties' Position**

The premise of Cobra's position that the stay should be lifted, to allow Cobra's claim to

be resolved and paid "forthwith," is mistaken.  As the Court stated in its Stay Order, "PROMESA

does not require PREPA to remit any such funds prior to the effective date of a confirmed plan of

adjustment . . . ." Stay Order at 2–3. Thus, Cobra has no entitlement to get paid before the effective

date of the plan and it is not prejudiced by the continuation of the stay.

Because neither the criminal matter nor the FEMA Analysis has yet been concluded, the

Government Parties submit that the Court should continue the stay in this matter.  The grounds

on which this Court granted the stay in October 2019 still apply with equal force today.  Both the

criminal matter and the FEMA Analysis of Cobra's contracts have the potential to significantly

impact the merits and outcome of Cobra's Administrative Expense Motion and the Court should

have the benefit of the results of those proceedings before moving forward with Cobra's motion.

As the Court found in its Stay Order, "[s]ignificant factual and legal questions that could bear

upon the Administrative Expense Motion will likely be addressed in connection with the

anticipated criminal trial of Cobra's former president and two former Federal Emergency

Management Agency ("FEMA") officials" and "FEMA's ongoing analysis of Cobra's contracts

with PREPA similarly weighs in favor of a stay."  Stay Order at 2. Both of those conclusions are

as true today as they were on October 17, 2019 when the Court issued its Stay Order.

Adjudication of this contested matter, if it were to occur now, would involve extensive

fact discovery, including document requests, interrogatories, requests for admission and

depositions.[3]  Many prospective deponents from Cobra and PREPA are likely witnesses in the

---

[3] Cobra also is mistaken that it is entitled to the equivalent of an "answer" to its Administrative Expense
Motion. No such pleading is required and PREPA's identification of subjects in dispute set forth above and in
PREPA's urgent motion to stay (Docket Entry No. 8838) provide Cobra with sufficient information to conduct
discovery when it is appropriate to do so.

9

criminal trial, including Keith Ellison.  The relevant documents to be collected and produced,

including invoices, back-up documentation and related email correspondence, are anticipated to

be voluminous.  In addition, certain issues, such as the tax gross-up dispute, likely require expert

discovery.  The expected costs associated with engaging in those activities may never become

necessary depending upon the outcome of the criminal proceedings and/or FEMA Analysis.

Even if all of that were not true, the accelerated schedule Cobra proposes below would be

highly inappropriate.  It ignores the important potential impact of the criminal trial and FEMA

investigation and seeks to push the Court's consideration of its $250 million claim forward

before all of the relevant facts can be available.  In all events, Cobra's proposed schedule is

unfairly truncated.  It proposes, for instance, that the Government Parties be required to respond

to Cobra's claims by January 30, the day after the January 29, 2020 Omnibus Hearing; that

written discovery be heavily restricted and concluded in slightly over four weeks in total; that all

fact depositions be conducted in just three weeks thereafter; the entirety of the expert process be

conducted in under a month; and, pretrial papers be filed three weeks later.  It also proposes that

full or partial motions for summary judgment can be filed at any time with responses due just

seven days later.  Such a rushed schedule is unfair and unwarranted, especially under the

circumstances of this claim, and not calculated to lead to a just determination based on all of the

relevant facts. Moreover, PREPA is focused on responding to the power emergency caused by

the recent earthquakes.

The Government Parties propose a second status conference to be conducted at the June

2020 omnibus hearing, at which time the criminal trial and FEMA Analysis are likely to have

been concluded and the parties will be in a better position to project a reasonable pre-hearing

schedule.  Alternatively, the Government Parties propose the following pre-evidentiary hearing

schedule, which is triggered by the later of a resolution of the criminal matter, or the completion
of the FEMA Analysis:

1. Initial Disclosures: 30-days from later of a disposition of the criminal charges
   (through guilty plea, trial verdict or dismissal of the Indictment) or FEMA Analysis
   release

2. Written Discovery: 14-days from Initial Disclosure

3. Responses to Written Discovery: 30-days from issuance

4. Fact Depositions: 90-days from Written Discovery deadline

5. Experts and Expert Reports: 30 days from close of fact discovery

6. Rebuttal Experts and Expert Reports: 30-days from Expert Reports deadline

7. Close of Expert Discovery: 30-days from Rebuttal Expert Reports deadline

8. Summary or Partial Summary Judgment: 30-days from close of Expert Discovery

9. Responses to SJ Motions: 21-days from filing of motions

10. Reply Briefs: 7-days from filing of responses

11. Dispositive Motions Hearing: 14-days from close of briefing

12. Pretrial Briefs, Pretrial Motions, Witness Lists and Exhibit Lists: 30-days from later
    of Summary Judgment Motions ruling or close of Expert Discovery

13. Hearing Commencement Date: No less than 14-days from Pretrial Briefing/
    Disclosures

14. Post-Trial Briefs: 30-days from close of evidentiary hearing

15. Post-Trial Reply Briefs: 14-days from Post-Trial Briefing

**V.      Additional Issues Pertaining to the Administrative Expense Motion that have
          Arisen**

      **A.   <u>Cobra's Position</u>**

Neither the criminal proceeding nor the FEMA Analysis are going to resolve how much PREPA owes Cobra for its work in restoring Puerto Rico's electrical grid. Indefinitely postponing Cobra's administrative expense claims because of the *potential* that the outcome of those proceedings could affect Cobra's claims does not promote the interests of justice, especially because neither Cobra nor PREPA are parties to or have any right to participate in those proceedings.

Cobra and its parent company, Mammoth Energy Services, Inc., continue to suffer greatly due to PREPA's failure to pay Cobra the more than $250 million it is owed and on which interest is accruing at approximately $2.5 million per month.  Since the Court's October 17, 2019 Order staying Cobra's administrative claims, Mammoth's market capitalization has fallen by another 20% to less than $80 million, based on the closing price of its common stock on Nasdaq on January 20, 2020.  For a company of this size, further uncertainty over when it will receive payment of a receivable that is triple its market capitalization is harmful to its ability to attract capital and acquire additional revenue-generating business. It is imperative to Cobra's financial health that it receive the amounts it is due (and it is undisputed that it is owed at least tens of millions of dollars) as early as possible. As the Court indicated in its October 17, 2019 Order, PREPA can be required to remit any funds due once a confirmed plan of adjustment becomes effective. Docket Entry No. 8886 at 2-3. Cobra will be prejudiced to the extent that the amounts it is owed have not been established before the effective date of a confirmed plan of adjustment.

As the Court has set a hearing for the 9019 Motion[4] for March 31 and April 1, 2020, Cobra

submits that its motion for allowance and payment of administrative claims should proceed

immediately so that it may be resolved by the time the Court approves a plan of adjustment.

### A. <u>Government Parties' Position</u>

PREPA entered into its contracts with Cobra with the reasonable expectation that costs it

incurred for power restoration services would be subject to FEMA reimbursement.  The contracts

with Cobra provide that PREPA has no obligation to pay Cobra on account of invoices for which

FEMA rejects reimbursement if such rejection is due to the sole fault of Cobra. With hundreds of

millions of dollars in asserted administrative liability at stake, PREPA is entitled to determine

whether and to what extent the actions of Cobra and its indicted CEO have been improper or

criminal, or led or might lead to FEMA denying payment of any or all of the remaining

invoices.  This process cannot be completed without the conclusion of the criminal trial, and a

reasonable opportunity for discovery and to review the results of FEMA's reasonable cost

analysis of the First Contract, which is expected in May 2020.  PREPA believes there will be

ample time between now and the commencement of a confirmation hearing on any plan of

adjustment to determine its liability on the remaining Cobra invoices without resorting to

Cobra's proposed pretrial schedule, as it does not expect to file a proposed plan or disclosure

statement until after the conclusion of the hearing on the pending 9019 Motion.

---

[4] *See Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Case No. 17-BK-4780-LTS, ECF No. 1235], filed May 10, 2019 (the "9019 Motion"). The 9019 Motion seeks Court approval of settlements embodied in a definitive Restructuring Support Agreement between the Government Parties, certain holders of PREPA's bonds and Assured Guaranty Municipal Corp. Cobra objected to certain provisions in the 9019 Motion and the RSA that it believed prejudiced other administrative creditors.  *See Cobra Acquisitions LLC's Objection to Amended Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928 and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in Restructuring Support Agreement* [Case No. 17-BK-4780-LTS, ECF No. 1682].

13

Moreover, it is unnecessary to resort to Cobra's proposed pretrial schedule as the Court has already determined it lacks the power to require PREPA pay any funds to Cobra prior to the effective date of a confirmed plan of adjustment.  Docket Entry No. 8886.  Cobra is therefore not prejudiced by any delay.

[*Remainder of page intentionally left blank*]

New York, New York
January 22, 2020

Respectfully submitted,

**O'NEILL & BORGES LLC**

By: /s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944
Email: hermann.bauer@oneillborges.com

**PROSKAUER ROSE LLP**

By: /s/ *Martin J. Bienenstock*
Martin J. Bienenstock*
Paul V. Possinger*
Ehud Barak*
Gregg M. Mashberg*
Eleven Times Square New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: mbienenstock@proskauer.com
        ppossinger@proskauer.com
        ebarak@proskauer.com
        gmashberg@proskauer.com

* admitted *pro hac vice*

*Attorneys for the Financial Oversight and
Management Board and as representative of
the Puerto Rico Electric Power Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C.**

By: /s/ *Katiuska Bolaños*
Katiuska Bolaños
kbolanos@diazvaz.com
USDC-PR 231812

290 Jesús T. Piñero Ave.

**REICHARD & ESCALERA, LLC**
/s/ *Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

/s/*Sylvia M. Arizmendi*
Sylvia M. Arizmendi
USDC-PR No. 210714

/s/ *Alana Vizcarrondo-Santana*
Alana Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888

**AKIN GUMP STRAUSS HAUER & FELD
LLP**

/s/ *Thomas P. McLish*
Thomas P. McLish (*pro hac vice*)
tmclish@akingump.com
Scott M. Heimberg (*pro hac vice*)
sheimberg@akingump.com
Allison S. Thornton (*pro hac vice*)
athornton@akingump.com
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000
Fax: (202) 887-4288

Scotiabank Tower, Suite 11-E
San Juan, PR 00918                                    and
PO Box 11689
San Juan, PR  00922-1689                     Ira S. Dizengoff (*pro hac vice*)
Tel. (787) 395-7133                                   Philip C. Dublin (*pro hac vice*)
Fax. (787) 497-9664                                  Stephen M. Baldini (*pro hac vice*)
                                                              idizengoff@akingump.com
*Co-Attorneys for Puerto Rico Electric*    pdublin@akingump.com
*Power Authority*                                    sbaldini@akingump.com
                                                              Akin Gump Strauss Hauer & Feld LLP
**O'MELVENY & MYERS LLP**              One Bryant Park
                                                              New York, New York 10036
By: /s/ *John J. Rapisardi*                        Telephone: (212) 872-1000
John J. Rapisardi*                                    Facsimile: (212) 872-1002
Nancy A. Mitchell*
7 Times Square                                        *Attorneys for Cobra Acquisitions LLC*
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email:  jrapisardi@omm.com
            nmitchell@omm.com


* admitted pro hac vice

*Attorneys for the Puerto Rico Fiscal*
*Agency and Financial Advisory*
*Authority and Puerto Rico Electric Power*
*Authority*


**GREENBERG TRAURIG, LLP**

By: /s/ *Joseph P. Davis III*
Joseph P. Davis III*
davisjo@GTLAW.com
One International Place, Suite 2000
Boston, MA 02110
Telephone: (617) 310-6000
Facsimile: (617) 279- 8403


* admitted *pro hac vice*

*Co-Attorneys for Puerto Rico Fiscal Agency*
*and Financial Advisory Authority*

16