# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO, et al.,

Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

---

**AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AND FINANCIAL GUARANTY INSURANCE COMPANY'S REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR MOTION CONCERNING APPLICATION OF THE AUTOMATIC STAY TO THE REVENUES SECURING PRIFA RUM TAX BONDS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .......................................................................................................................... 3

I.   THE OVERSIGHT BOARD'S CONCESSION THAT THE TRUSTEE CAN JOIN
     MEANS THAT LEAVE TO AMEND IS WARRANTED............................................. 3

II.  THE COURT SHOULD REJECT THE OVERSIGHT BOARD'S FUTILITY
     ARGUMENTS........................................................................................................... 4

III. THE OVERSIGHT BOARD HAS FAILED TO DEMONSTRATE ANY
     PREJUDICE. ........................................................................................................... 7

CONCLUSION...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acosta-Mestre v. Hilton Int'l of P.R., Inc.*,
  156 F.3d 49 (1st Cir. 1998)..................................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................6

*Grella v. Salem Five Cent Sav. Bank*,
  42 F.3d 26 (1st Cir. 1994)..................................................................................7

*Hill v. Mitchell*,
  2005 WL 8162499 (S.D. Ohio Dec. 30, 2005) ..................................................7

*Kader v. Sarepta Therapeutics, Inc.*,
  2017 WL 723961 (D. Mass. Jan. 6, 2017) ..........................................................5

*Parker v. Landry*,
  935 F.3d 9 (1st Cir. 2019)..................................................................................6

*Pendley v. Komori Printing Mach. Co.*,
  1990 WL 17152 (D.R.I. Feb. 8, 1990)................................................................8

*Santiago v. WHM Carib, LLC*,
  126 F. Supp. 3d 211 (D.P.R. 2015).....................................................................8

*Strahan v. AT&T Mobility LLC*,
  270 F. Supp. 3d 535 (D. Mass. 2017) .................................................................5

*United States v. Fleet Bank (In re Calore Exp. Co.)*,
  288 F.3d 22 (1st Cir. 2002)................................................................................7

OTHER AUTHORITIES

Fed. R. Civ. P. 12 ....................................................................................................6

Fed. R. Civ. P. 15 ................................................................................................1, 3

Ambac, Assured, and FGIC respectfully submit this reply in further support of the *Motion for Leave to Amend Motion of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Financial Guaranty Insurance Company Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* (ECF No. 10109) (the "Motion to Amend") and in response to the *Opposition of the Commonwealth of Puerto Rico to Motion to Amend PRIFA Bondholder Lift Stay Motion* filed by the Oversight Board (ECF No. 10274) (the "Opposition").[2]  Capitalized terms not defined herein shall have the same definitions as set forth in the Motion to Amend.

## PRELIMINARY STATEMENT

1.     Faced with the liberal standard for amendment under Rule 15 and several compelling, straightforward grounds for amendment set forth in the Motion to Amend, the Oversight Board has chosen to submit a 25-page Opposition that improperly attempts to litigate the merits of the proposed Amended Motion under the guise of "futility."  In so doing, the Oversight Board invites the Movants and the Court to address the merits of the critical issues raised in the Amended Motion under a standard that is inconsistent with the showing required on a motion to amend, and on an artificially compressed schedule that is contrary to what is required by the Revenue Bond Scheduling Order.  The Movants decline the invitation, and the Court should, too.

2.     *First*, the Opposition's concession that the Trustee should be permitted to join the lift-stay arguments as a moving party necessarily means that the Court should grant the Motion to Amend.  The Trustee was not a signatory to the original PRIFA Stay Motion, was not involved in its preparation, and had no say as to the arguments advanced.  The Trustee cannot be forced to sign

---

[2] AAFAF filed a limited joinder in the Opposition, but states that it "does not agree with the Oversight Board's sweeping view of preemption" in the context of whether bondholders' lien on the Pledged Rum Taxes is a property right that can be repealed or preempted, and reserves its rights on those issues.  (ECF No. 10277 at 3.)

on to that brief; it has the right to sign on to a brief, or submit its own, that reflects its input and is designed to ensure that its interests, and the rights of the bondholders it represents, are adequately represented.  Indeed, the Oversight Board does not dispute that if leave to amend were denied, the Trustee could file its own motion to lift the stay—which would presumably raise the same issues as the Amended Motion.  Consistent with the Court's directive in the Revenue Bond Scheduling Order, the Movants have endeavored to avoid that inefficiency by consolidating all arguments, including those of the Trustee and the Movants, into a single Amended Motion so that the Court and the parties need not grapple with duplicative motions.

3.      *Second*, even if the Trustee's involvement did not justify granting the Motion to Amend, the Oversight Board's attempt to argue the merits of the Amended Motion under the guise of "futility" is an improper procedural tactic that should be rejected by the Court.  The "futility" jurisprudence relied on by the Oversight Board has no application here, where, unlike in a situation where a plaintiff is seeking to amend a complaint that the court had previously found deficient, this Court has never ruled on the original PRIFA Stay Motion, and thus lacks a benchmark to evaluate the purported "futility" of the Movants' proposed amendments.  Rather, a "futility" analysis in these circumstances would require the Court to consider the briefing on **both** the original PRIFA Stay Motion **and** the Amended Motion—a wholly inefficient and unnecessary exercise given that the Court is scheduled to receive full briefing on the Amended Motion by February 13, 2020.

4.      Moreover, in arguing the merits of the Amended Motion, the Oversight Board essentially seeks to force the Movants to prepare a *de facto* reply brief on the Amended Motion, addressing substantive issues of critical importance, in three days—11 fewer days than contemplated by the Revenue Bond Scheduling Order.  Worse yet, the Oversight Board seeks to

- 2 -

force the Court to engage in a full-blown merits analysis of those same weighty issues within a matter of days and on a reduced record.  But even if the Court were to entertain the Oversight Board's futility arguments, under any proper application of the "futility" standard, the Amended Motion easily passes the test.

5.    *Finally*, the Oversight Board has failed to identify any actual prejudice that would result from amendment, let alone the "undue prejudice" required to deny amendment.  The Oversight Board clearly is prepared to file its opposition to the Amended Motion on January 30, 2020, given that its Opposition to the Motion to Amend is essentially just that—a merits brief arguing why stay relief should be denied.  The Oversight Board cannot be heard to complain of any prejudice based on delay, since the Motion to Amend is being heard now only because the Oversight Board objected to the Movants' efforts to have it heard in December 2019.  In any event, permitting amendment would result in no delay at all, since it would simply result in the Amended Motion being heard with the CCDA and HTA lift-stay motions on February 27, 2020—the schedule set by the Court in the Revenue Bond Scheduling Order—which would be no different than the schedule for the original PRIFA Stay Motion if leave to amend were denied.

6.    In sum, the Motion to Amend clearly meets the liberal Rule 15 standard, and the Oversight Board's lengthy contentions that the Amended Motion itself should be denied do not alter that conclusion.  The Motion to Amend should be granted.

## **ARGUMENT**

## I.   **THE OVERSIGHT BOARD'S CONCESSION THAT THE TRUSTEE CAN JOIN MEANS THAT LEAVE TO AMEND IS WARRANTED.**

7.    The Oversight Board's concession that the Trustee can join as a moving party (Opp'n, ¶ 4) is, in fact, a concession that leave to amend is warranted.  The Trustee is a separate party and has the right to join the Amended Motion, which reflects its input and to which it is a

signatory.  The Trustee cannot be forced to join the original PRIFA Stay Motion when it was not

a signatory to that motion, was not involved in its preparation, and had no say as to the arguments

advanced or how they were advanced.

8.      Additionally, in light of the Oversight Board's concession that the Trustee may join,

refusal to allow the Amended Motion would result in the very waste and multiplication of

proceedings about which the Oversight Board purports to express concern.  If the Motion to Amend

were denied, the Trustee would need to file its own motion to lift the stay to enforce remedies

under the Trust Agreement—which presumably would take the form of the Amended Motion.

Thus, permitting amendment would eliminate the need for briefing on a duplicative motion.[3]

## II.    THE COURT SHOULD REJECT THE OVERSIGHT BOARD'S FUTILITY ARGUMENTS.

9.      Nearly the entirety of the Oversight Board's Opposition is spent arguing that

amendment would be futile.  The Court should reject this improper attempt to apply the futility

standard to amendment of a motion that the Court has not previously ruled on.

10.     All of the cases the Oversight Board cites in support of its "futility" argument

(*see* Opp'n, ¶ 29) arose under completely different circumstances:  the cases concerned whether

leave to file a proposed amended complaint should be granted ***following an order that dismissed***

***a prior complaint as deficient***.  In that situation, leave to amend may be denied as "futile" where

the proposed amended complaint fails to cure the specific deficiencies that the court previously

---

[3] As discussed in the Motion to Amend (at 2 n.6), the Amended Motion would further streamline the issues to be decided by the Court because, in light of *Gracia-Gracia*'s articulation of the scope of the automatic stay under PROMESA, the Amended Motion would consolidate into a footnote, and preserve for appeal, the contention previously advanced by Ambac in the PRIFA Stay Motion that the automatic stay does not apply to the Pledged Rum Taxes.  The Oversight Board's suggestion that the Movants are "abandon[ing]" that argument (Opp'n, ¶ 4) is incorrect.   The Movants are simply incorporating their prior argument on the issue and choosing not to present full briefing on the issue again because the Movants acknowledge that *Gracia-Gracia* constrains this Court's ability to engage on that point.

identified.  *See, e.g.*, *Kader v. Sarepta Therapeutics, Inc.*, 2017 WL 72396, at *1 (D. Mass. Jan. 6, 2017) (concluding that, "because Plaintiffs' Proposed Second Amended Complaint ('PSAC') fails to address the shortcomings in the Amended Complaint . . . granting leave to amend would be futile"), *aff'd*, 887 F.3d 48 (1st Cir. 2018); *Strahan v. AT&T Mobility LLC*, 270 F. Supp. 3d 535, 544 (D. Mass. 2017) (denying leave to amend as futile where a proposed second amended complaint "otherwise fail[ed] to cure the fatal defects with the § 1983 claims").

11.    Here, by contrast, the Oversight Board raises "futility" even though the Court has never ruled on the PRIFA Stay Motion or identified any deficiencies in it.  Accordingly, there is no basis for the Oversight Board to argue that amendment would be "futile."

12.    It is unsurprising that the Oversight Board could not cite a single case in which a court has suggested that an amendment to a not-yet-adjudicated motion should be reviewed for "futility."  Given that there has been no determination on the merits of the original PRIFA Stay Motion, accepting the Oversight Board's invitation to engage in a futility analysis would actually ***increase*** the complexity of the issues before the Court, requiring the Court to first consider the merits of the PRIFA Stay Motion—the very motion that the Movants are seeking to amend—and to ***then*** consider the merits of the Amended Motion.  That makes no sense and would double the work of the Court.

13.    Moreover, accepting the Oversight Board's invitation to have the Court engage in a full-blown merits analysis under the pretext of "futility" would short-circuit the Movants' rights to fully brief the issue by circumventing the Revenue Bond Scheduling Order.  The Revenue Bond Scheduling Order—issued after this Court's careful consideration of the parties' objections to the Interim Mediation Report—afforded the Movants with 14 days to file their reply brief in further support of the Amended Motion after the Oversight Board files its supplemental opposition.

(Revenue Bond Scheduling Order at 4.)   Through its Opposition to the Motion to Amend, the
Oversight Board is now trying to force the Movants to prepare a reply on those same issues in 72
hours, and to force the Court to consider (and presumably decide) those weighty issues in four
days and on a shortened record.[4]  This tactic should be rejected.  Under the Revenue Bond
Scheduling Order, the Court will receive the Oversight Board's supplemental opposition one day
after the January 29, 2020 omnibus hearing and will receive the Movants' reply 14 days thereafter.
There is no reason for the Court to accelerate that schedule and decide the merits of the Amended
Motion on an abbreviated schedule and record.

14.    Finally, even if the Court were to engage in a futility analysis—and it should not at
this stage—the Amended Motion easily passes.   In determining whether leave to amend a
complaint would be futile, courts "view futility through the lens of Federal Rule of Civil Procedure
12(b)(6)[,]" and "[s]o viewed, a proposed amendment is futile if it fails to 'state a claim to relief
that is plausible on its face.'"  *Parker v. Landry*, 935 F.3d 9, 13 (1st Cir. 2019) (quoting *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Thus, the ultimate merits of a claim in a proposed
amended complaint are not determined on a motion to amend, and the test is simply whether,
accepting "all of the complaint's allegations [as] true," the plaintiff has pled "a right to relief above
the speculative level." *Twombly*, 550 U.S. at 555.  Applying a similar test here, the question before
the Court, if conducting a futility analysis on the Motion to Amend, is ***not*** whether the ***Amended
Motion ultimately will be granted***—which itself requires only satisfying the low standard of
establishing a "colorable" claim for relief under Section 362(d).[5]  Rather, any proper application

---

[4] The Revenue Bond Scheduling Order contemplates that the Motion to Amend will be heard at the January
29, 2020 omnibus hearing, "unless the Court resolves the motion prior to the hearing[,]" and that any
supplemental oppositions to the Amended Motion would be due on January 30, 2020.  (Revenue Bond
Scheduling Order at 4.)

[5] *See United States v. Fleet Bank (In re Calore Exp. Co.)*, 288 F.3d 22, 35 (1st Cir. 2002) ("[T]he question
for the bankruptcy court at [a Section 362(d)] hearing is generally whether the creditor's claim to the estate's

of a futility standard to the Motion to Amend would instead consider whether, accepting the

Movants' assertions and arguments in their Amended Motion as correct, it is "plausible" that the

Movants have at least a "colorable claim" to the property.  For the reasons set forth in the Amended

Motion, the Amended Motion easily satisfies that burden—and any ruling on the merits of the

Amended Motion should await the full briefing contemplated by the Court.  *See Hill v. Mitchell*,

2005 WL 8162499, at \*5 (S.D. Ohio Dec. 30, 2005) ("In any event, the Court is not persuaded that

'futility' has been demonstrated at this point in the proceedings; the issue of whether any new

claims or facts asserted by petitioner are defaulted is best decided after full briefing by both

parties."). [6]

## III.   THE OVERSIGHT BOARD HAS FAILED TO DEMONSTRATE ANY PREJUDICE.

15.    The Opposition fails to cogently explain how amendment would cause any

prejudice whatsoever, let alone the type of ***undue*** prejudice necessary to deny leave to amend.  *See*

*Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 51 (1st Cir. 1998) ("Among the adequate

reasons for denying leave to amend are . . . '***undue*** prejudice to the opposing party by virtue of

allowance of the amendment.'" (emphasis added) (quoting *Foman v. Davis*, 371 U.S. 178, 182

---

property is ***colorable***, not whether the creditor can ultimately recover in light of all relevant legal issues." (emphasis added) (citation omitted); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir. 1994) (the court "seek[s] only to determine whether the party seeking relief has a ***colorable claim*** to property of the estate") (emphasis added).

[6] The Oversight Board is wrong to suggest that the Amended Motion must be restricted to the issues of "standing and secured status."  (Opp'n, ¶ 5.)  The Movants are entitled to present the full panoply of arguments that they believe are relevant to lifting of the stay under Section 362(d).  The fact that the Court has ordered (on an interim basis) that the preliminary hearing will be limited to certain issues does not constrain the arguments that the Movants may advance in the Amended Motion.  Even if that were the case, the issues currently set to be considered at the preliminary hearing are broader than those identified in the June 13, 2019 order (ECF No. 7420) to which the Oversight Board so doggedly clings.  As the Oversight Board concedes (Opp'n, ¶ 28), by the terms of the Revenue Bond Scheduling Order, the issues currently scheduled to be heard relate not only to "standing and secured status," but also (among other things) whether "there is a reasonable likelihood the debtors will prevail" on the PRIFA Lift Stay Motion (as amended or originally filed), which necessarily implicates a suite of merits issues beyond standing and secured status.

(1962))); *Santiago v. WHM Carib, LLC*, 126 F. Supp. 3d 211, 214 (D.P.R. 2015) ("The proposed amendments, furthermore, do not 'substantially change' the theory on which the case has been proceeding; they merely augment the theory.  In short, no ***undue*** prejudice will accrue, so that ground is insufficient to block the proposed amendments." (emphasis added)); *Pendley v. Komori Printing Mach. Co.*, 1990 WL 17152, at *3 (D.R.I. Feb. 8, 1990) ("Furthermore, the prejudice to the opposing party must be more than 'unfair.'  It must be 'substantial,' so as to create a 'grave injustice' to defendants." (citing cases)).

16.     The Oversight Board complains that it has "already expended substantial resources in preparing these issues for a hearing" (Opp'n, ¶ 52), and that it "will be forced to respond to an entire, newly written brief" (*id.* ¶ 54).  But the Oversight Board does not attempt to rebut the well-established principle, set forth in the Motion to Amend, that the need for an opposing party to submit amended or supplemental briefing is not a basis for denying leave to amend.  (*See* Motion to Amend at 14 n.12 (citing cases).)  Indeed, if the Oversight Board's argument were accepted, amendment after briefing could never be permitted.

17.     In any event, the Oversight Board's complaint rings hollow in light of the fact that it clearly has ***already*** prepared its supplemental briefing on the merits of the Amended Motion, as evidenced by its Opposition.  Moreover, the Oversight Board remains free to stand on the briefs it has already filed or to file a supplemental opposition brief addressing any new arguments or evidence that it believes need addressing, rather than responding to the Movants' arguments from the PRIFA Stay Motion that it contends were "futile."

18.     The Oversight Board's conclusory assertion of "delay" should be rejected since any "delay" was of the Oversight Board's own making.  In ***October 2019***, Ambac and FGIC sought an order seeking relief from the Mediation Stay to permit the parties to brief the permissibility of

amendment of the PRIFA Stay Motion.  (ECF No. 9004.)  The Oversight Board opposed that request (ECF No. 9015), and the Court then denied it (ECF No. 9016).  The Oversight Board cannot now complain about "delay," given that the Movants filed the Motion to Amend as soon as they were permitted to do so following the expiration of the Mediation Stay.

19.     In any event, there will in fact be ***no delay*** caused by amendment.  The Court has already directed that the Amended Motion will be briefed and heard on the same schedule as the CCDA and HTA lift-stay motions.  (Revenue Bond Scheduling Order at 4-5.)  Indeed, even if the Court were to deny leave to amend, the PRIFA Stay Motion would be heard at the same hearing at which the Amended Motion would be heard.  Thus, granting leave to amend would cause no delay at all.

20.     In fact, it is the Oversight Board that is asking for a delay by requesting that it be given fourteen days following an order on the Motion to Amend to oppose the Amended Motion. (Opp'n, ¶ 55.)  The Oversight Board's argument that it would have "little more than 24 hours to finalize its opposition" to the Amended Motion (*id.*) obviously mischaracterizes the intention underlying the Revenue Bond Scheduling Order.  The Oversight Board has been on notice of the schedule since December 19, 2019, and by the time its opposition to the Amended Motion will be due, it will have been able to use the full two weeks since the filing of the Amended Motion to prepare its responsive arguments.  Indeed, the Oversight Board has obviously already prepared those arguments, as evidenced by the Opposition.  Moreover, the Oversight Board never objected to the schedule set by the Court in the Revenue Bond Scheduling Order, despite being given the opportunity to submit any objections to the schedule.[7]

---

[7] *See Amended and Restated Order Addressing the Filing of an Amended Report by the Mediation Team and Extending (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* (ECF

21.     Notwithstanding that the Oversight Board has provided no legitimate basis for an extension of its time to file an opposition to the Amended Motion, the Movants do not object to a modest extension, so long as (i) the Amended Motion remains scheduled to be heard with the CCDA and HTA lift-stay motions on February 27, 2020 (or another date agreed to by the Movants), and (ii) the Movants continue to have 14 days to file a reply in support of the Amended Motion (rather than the 10 days proposed by the Oversight Board)—each as contemplated by the Revenue Bond Scheduling Order.[8]

## **CONCLUSION**

22.     For the foregoing reasons, and those articulated in the Motion to Amend, the Movants respectfully request that the Court enter an order, substantially in the form and substance attached to the Motion to Amend as Exhibit A, granting the Movants leave to amend the PRIFA Stay Motion and to file the Amended Motion in substantially the form and substance attached to the Motion to Amend as Exhibit B.

---

No. 9661), ¶ 7 (requiring any objections or proposed amendments to the Revenue Bond Scheduling Order to be filed by January 21, 2020).

[8] For the reasons set forth in the Movants' objection to the Revenue Bond Scheduling Order, the Movants continue to urge this Court to promptly hold a ***final*** hearing, rather than a preliminary hearing, on all the lift-stay motions.  (*See* ECF No. 10251, Section I.)  Additionally, contrary to the Oversight Board's suggestion (*see* Opp'n at 24 n.23), the Movants have not indefinitely "waived their right to a hearing pursuant to Section 362(e)[,]" and the Oversight Board's attempt to end-run the statutory requirements of Section 362(e) should be rejected.  As set forth in the Amended Motion, Ambac and FGIC, at most, waived their right to a hearing on the original PRIFA Stay Motion—to which the Trustee and Assured were not even a party—only through November 30, 2019.  (*See* Amended Motion at 55 n.33 (reserving all rights under Section 362(e)).)  The Movants respectfully reserve all rights under Section 362(e).

Dated:  January 25, 2020
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email:  rcamara@ferraiuoli.com
scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
Dennis F. Dunne (admitted *pro hac vice*)
Atara Miller (admitted *pro hac vice*)
Grant R. Mainland (admitted *pro hac vice*)
Jonathan Ohring (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
amiller@milbank.com
gmainland@milbank.com
johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
María E. Picó
USDC-PR 123214
802 Ave. Fernández Juncos
San Juan PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
Martin A. Sosland (admitted *pro hac vice*)
5430 LBJ Freeway, Suite 1200
Dallas, TX 75240
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com

Jason W. Callen (admitted *pro hac vice*)
150 3rd Ave., S., Suite 1600
Nashville, TN 37201
Telephone: 615-651-6774
Facsimile: 615-651-6701
Email: jason.callen@butlersnow.com

*Attorneys for Financial Guaranty Insurance Company*

- 11 -

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: */s/ Heriberto Burgos Pérez*
      Heriberto Burgos Pérez
      USDC-PR 204809
      Ricardo F. Casellas-Sánchez
      USDC-PR 203114
      Diana Pérez-Seda
      USDC-PR 232014
      P.O. Box 364924
      San Juan, PR 00936-4924
      Telephone: (787) 756-1400
      Facsimile: (787) 756-1401
      Email: hburgos@cabprlaw.com
           rcasellas@cabprlaw.com
           dperez@cabprlaw.com

**CADWALADER, WICKERSHAM & TAFT LLP**

By: */s/ Mark C. Ellenberg*
      Howard R. Hawkins, Jr. (admitted *pro hac vice*)
      Mark C. Ellenberg (admitted *pro hac vice*)
      William J. Natbony (admitted *pro hac vice*)
      Ellen M. Halstead (admitted *pro hac vice*)
      Thomas J. Curtin (admitted *pro hac vice*)
      Casey J. Servais (admitted *pro hac vice*)
      200 Liberty Street
      New York, NY 10281
      Telephone: (212) 504-6000
      Facsimile: (212) 504-6666
      Email: howard.hawkins@cwt.com
           mark.ellenberg@cwt.com
           bill.natbony@cwt.com
           ellen.halstead@cwt.com
           thomas.curtin@cwt.com
           casey.servais@cwt.com

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
