# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>   Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>   as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>   Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of PUERTO RICO ELECTRIC POWER AUTHORITY, and PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>   Movants,<br>   v.<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS, *et al.*<br><br>   Respondents. | **This Court Filing Relates Only to PREPA and Shall Only Be Filed in Case No. 17 BK 4780-LTS** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

**URGENT MOTION FOR AN ORDER *IN LIMINE* PRECLUDING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FROM ENTERING EXPERT REPORT <u>INTO EVIDENCE AT THE 9019 MOTION HEARING</u>**

To The Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico ("FOMB"), in its capacity as representative of the Puerto Rico Electric Power Authority ("PREPA") pursuant to Section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") (collectively, the "Government Parties"), pursuant to Federal Rules of Evidence 401 and 403, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 9017 and Section 310 of PROMESA (48 U.S.C. § 2170), hereby move for an order *in limine* to preclude the Official Committee of Unsecured Creditors (the "Committee") from offering into evidence at the hearing on the 9019 Motion[2] the *Critique of Government Parties' Assertions that the 9019 Settlement Will Not Affect Non-settling Creditors and Will Avoid a Subsequent Title III Filing by PREPA*, served October 30, 2019 (the "LEI Report"). In support of this Motion the Government Parties state as follows:

## PRELIMINARY STATEMENT

At the July 11, 2019 pretrial conference, this Court instructed the parties that "evidence and argument at the 9019 hearing ought to be focused tightly on identification of the range of reasonable outcomes and whether aspects of the agreement currently submitted for approval fall within that range and facts directly relevant to any legal injury that a party contends it would suffer as a direct result of the granting of the specific relief sought." *Transcript of July 11, 2019 Renewed Pretrial Conference* (Docket Entry No. 1459, the "July 11 Hr'g Tr."), 13:15-21. This

---

[2] "9019 Motion" refers collectively to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods [ECF No. 12356 ], as supplemented by the amended proposed order filed on June 18, 2019 (the "Amended Proposed Order" [ECF No. 1361, Ex. A]), and the supplemental memorandum of law and facts and supporting declarations the Government Parties filed on July 2, 2019 (the "Supplemental Submissions," [ECF No. 1425, 1426, 1427, 1428, 1429]). All citations herein to the docket are to Case No. 17-BK-4780-LTS unless otherwise specified.

1

Court has reaffirmed that holding in multiple orders, repeatedly excluding evidence pertaining to macroeconomic, public policy, and plan confirmation issues. *See, e.g.*, *id.* at 9:15-11:12; *Memorandum Order Granting Motion for Protective Order and Order in Limine Precluding Evidence in Connection with 9019 Motion*, ECF No. 1543 (the "Wolfe Limine Order"); *Order Excluding Testimony Proffered by UTIER and SREAEE in Connection with the 9019 Motion Practice*, ECF No 1586 (the "Union Limine Order"); *Memorandum Order Regarding Official Committee of Unsecured Creditors' Urgent (I) Objections to Magistrate Judge's August 2, 2019 Order on Motion to Compel and (II) Alternative Motion to Strike and to Exclude Out-of-Scope Declaration Testimony and Related Evidence*, ECF No. 1652 (the "Committee Objections Order").

Nevertheless, on October 30, 2019, the Committee served the Government Parties with the LEI Report, which presents testimony exclusively concerning issues this Court has already deemed beyond the scope of the 9019 Motion. *See* Declaration of Ashley Pavel ¶ 2 & Ex. 1. For the reasons set forth herein, the Court should exclude this evidence from the record.

LEI describes itself as "a global economic, financial, and strategic advisory professional services firm specializing in energy, water, and infrastructure." LEI Report at 1. Julia Frayer, the Managing Director at LEI who oversaw the preparation of LEI's analysis represents that she "specializes in the analysis and economic issues related to energy infrastructure assets" and, along with "her team of economists, mathematicians, engineers, and policy analysts," in "issues related to wholesale power market analysis, evaluation of electric generation assets, distribution, and transmission infrastructure, and regulatory rate design." *Id.* at 7. Consistent with these advertised areas of expertise, the LEI Report presents analysis regarding the dynamics of the Puerto Rico electricity market, the impact of electricity rates on PREPA's customers, policy and

2

regulatory goals surrounding the electric utility sector in Puerto Rico, the alleged effects of the RSA, specifically the Transition Charge, on electricity rates and electricity demand, and the amount that the RSA would purportedly leave PREPA able to pay to unsecured creditors.

This testimony falls squarely within the categories of evidence this Court has said repeatedly are beyond the scope of the 9019 Motion. Under the current scheduling order, the Government Parties must provide rebuttal reports by November 25, 2019 and depose the Committee's proffered expert by December 11, 2019. ECF No. 1716. In light of this Court's multiple orders excluding the very categories of testimony the Committee now seeks to offer, the Government Parties should not be required to undergo the expense of responding to the substance of the LEI Report.

## RELIEF REQUESTED

The Government Parties respectfully request that this Court enter an order, on an urgent and expedited basis, precluding the Committee from offering the LEI Report in connection with the 9019 Motion.

## LEGAL STANDARD

As the First Circuit has made clear, courts enjoy "considerable discretion in calibrating the Rule 403 scales." *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 6 (1st Cir. 2001). Even if evidence has some marginal relevance, "the Court is empowered to exclude evidence whose probative value is substantially outweighed by added complexity and time requirements associated with discovery and lengthier court proceedings that would be associated with consideration of the evidence on this 9019 motion practice." July 11 Hrg. Tr. 11:13-18; Fed. R. Evid. 403 (permitting Court to exclude evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, . . . wasting time, or

3

needlessly presenting cumulative evidence.").

## ARGUMENT

I. **EVIDENCE CONCERNING MACROECONOMIC ISSUES, SUSTAINABILITY OF RATE INCREASES, AND VALUE AVAILABLE TO OTHER CREDITORS UNDER A POTENTIAL PLAN OF ADJUSTMENT IS BEYOND THE SCOPE OF THE 9019 MOTION.**

The Court's narrow task in deciding a Rule 9019 motion is to "[a]ssess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995). A compromise should be approved as long as it meets or exceeds the *lowest point* in the range of reasonableness in terms of benefits to the debtor. *See Allied Waste Serves. Of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."). The lowest point in the range of reasonableness is assessed solely by reference to four factors: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience, and delay attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. *See Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995). In analyzing these factors, deference should be afforded to the judgment of the trustee or debtor in possession, absent evidence of fraud, collusion, or similar misconduct that would undo a contract. *See In re Receivership Estate of Indian Motorcycle Mfg.*, Inc., 299 B.R. 8, 21 (D. Mass. 2003) (the court should give "substantial deference to the business judgment of a bankruptcy trustee when deciding whether to approve a settlement"); *Hill v. Burdick (In re Moorhead Corp.)*, 2008 B.R. 87, 89 (B.A.P. 1st Cir. 1997) ("The [bankruptcy] judge . . . is not to substitute her judgment for

4

that of the trustee, and the trustee's judgment is to be accorded some deference."). None of these factors touch on the macroeconomic issues contained in the LEI Report.

At the July 11, 2019 Pretrial Conference, this Court issued the following ruling regarding the scope of issues to be considered at the hearing on the 9019 Motion:

> In light of the limited scope of the questions presented by the Rule 9019 motion, the deferential decisional standard, and the judicial efficiency and economy concerns that have been discussed in these remarks, the Court is of the view that evidence and argument at the 9019 hearing ought to be focused tightly on identification of the range of reasonable settlement outcomes and whether the aspects of the agreement currently submitted for approval fall within the range and facts directly relevant to any legal injury that a party contends it would suffer as a direct result of the granting of the specific relief sought. **Evidence and arguments that go only to the confirmability of a potential plan based on the full scope of the RSA and to whether the matters requiring further action by Puerto Rico's elected government officials and agencies of the Puerto Rico government ought to be approved should not be offered at this juncture.**

July 11 Hrg. Tr. 13:11-14:1 (emphasis added).

Accordingly, this Court excluded witnesses proffered by nonprofit groups in part because "the evidence that these groups seek to proffer relates primarily to macroeconomic and energy policy issues that are of limited potential probative value in the 9019 motion practice and are peripheral to the specific questions that are currently before the Court." *Id.* 9:15-11:4. The Court also excluded testimony disclosed by Windmar Renewable Energy, UTIER, and SREAEE "concerning the anticipated demographic and macroeconomic effects of full implementation of the RSA." *Id.* at 11:5-12.

A few weeks later, this Court entered an order precluding the Committee from entering Dr. Wolfe's July 2017 declaration into evidence at the hearing on the 9019 Motion because "[t]he factual macroeconomic issues attendant to full implementation and confirmation of a plan

5

based on the agreements embodied in the RSA . . . are outside the evidentiary parameters that the Court has, in the excursive of its discretion, set in connection with the Motion" and "evidence going to macroeconomic projections of the future state of Puerto Rico's economy and the long-term impact of full implementation of the RSA is outside the scope of the 9019 Motion . . . ." Wolfe Limine Order at 3-5.

On August 13, 2019, this Court excluded evidentiary proffers from UTIER and SREAEE "concerning the 'magnitude or intensity' of the damage they would incur if the RSA were to be approved." Union Limine Order at 4. The Court explained that the evidence "pertain[ed] to alleged macroeconomic effects that are outside the scope of these narrowly focused proceedings" and "[a]ny probative value of such evidentiary material in connection with the Court's assessment of the interest of creditors, or otherwise, is substantially outweighed by the delay of proceedings and attendant costs associated with its admission . . . ." *Id.*

Then on October 10, 2019, this Court rejected the Committee's demand for discovery relating to the sustainability of rate increases and feasibility of the proposed settlement into the 9019 Motion. *See generally* Committee Objections Order. In overruling the Committee's objection to Judge Dein's order denying its motion to compel, this Court explained:

> Initially, **the Committee has made no showing that the Court must consider the information requested concerning the sustainability of rate increases and the overall feasibility of the settlement as a whole or of any eventual Title III plan of adjustment** to evaluate whether the aspects of the settlement that the Court has been asked to approve fall below the lowest point in the range of reasonableness. The Committee, moreover, has submitted no authority establishing that a plan of adjustment would have to provide a distribution to unsecured creditors in order to be confirmable, or relatedly, that the Court's assessment of the 'paramount interests of the creditors' . . . requires consideration of detailed evidentiary materials with respect to the value that would potentially remain for unsecured creditors under the terms of the proposed settlement.

6

*Id.* at 11 (citation omitted) (emphasis added). Accordingly, this Court held that "[i]nsofar as the documents relating to issues of rate increase sustainability and plan feasibility are at all relevant to the Court's assessment of the 9019 Motion, the burden and expense associated with permitting such additional discovery significantly outweighs any likely benefit." *Id.* at 11-12.

II. **THE LEI REPORT PERTAINS SOLELY TO ISSUES THIS COURT HAS HELD ARE BEYOND THE SCOPE OF CONSIDERATION IN CONNECTION WITH THE 9019 MOTION.**

The analysis in the LEI Report addresses topics that are precisely of the sort that this Court has held are outside the scope of its consideration in connection with the 9019 Motion. LEI contends that it reviewed PREPA's current financial condition and "the elasticity of electricity demand," and purports to have prepared "an independent forecast of PREPA's rates in the long term" to allegedly "capture how PREPA's expected costs of service and the Transition Charge . . . would affect consumers' electricity consumption and the longer term financial viability of PREPA's utility business." *Id.* at 1-2. LEI contends these alleged inquiries would "help us understand whether the Transition Charge is affordable and sustainable over the long term for PREPA." *Id.* at 2. The LEI Report then offers opinions regarding: whether PREPA will need to raise electricity rates; the effect of the Transition Charge on electricity demand; and whether any income or value is available at PREPA to provide for recovery to unsecured creditors. LEI Report at 69-72.

In other words, the proffered expert testimony covers macroeconomic effects, rate sustainability, and the value that would potentially remain for the Committee under a potential plan of adjustment — exactly what this Court has repeatedly held is beyond the scope of the proceedings on the 9019 Motion. The Committee should therefore be precluded from offering the LEI report into evidence. Moreover, because the LEI Report is so squarely beyond the scope

7

of the issues before the Court on the 9019 Motion, the Government Parties should not be required to (i) prepare an expert rebuttal report by November 25, 2019, as the current case schedule contemplates, or (ii) engage in expert discovery with respect to the LEI report and any rebuttal report. Accordingly, the interest of judicial economy strongly favors resolving the Government Parties' motion on an expedited basis to ensure they do not have to expend time and money rebutting the LEI Report when it is clearly beyond the scope of the 9019 motion inquiry.

## CONCLUSION

The Government Parties respectfully request that this Court preclude the Committee from entering the LEI Report into evidence at the hearing on the 9019 Motion because the opinions offered therein are beyond the scope of the narrow issues before the Court.

Dated: November 8, 2019

Respectfully submitted,

| **O'MELVENY & MYERS LLP** | **MARINI PIETRANTONI MUÑIZ LLC** |
|---|---|
| */s/ Elizabeth L. McKeen* | */s/ Luis C. Marini-Biaggi* |
| | Luis C. Marini-Biaggi |
| John J. Rapisardi | USDC No. 222301 |
| Nancy A. Mitchell | Carolina Velaz-Rivero |
| 7 Times Square | USDC No. 300913 |
| New York, NY 10036 | |
| Telephone: (212) 326-2000 | 250 Ponce de León Ave., Suite 900 |
| Facsimile: (212) 326-2061 | San Juan, Puerto Rico 00918 |
| Email: jrapisardi@omm.com | Tel: (787) 705-2171 |
| nmitchell@omm.com | Fax: (787) 936-7494 |
| | |
| -and- | *Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |
| Peter Friedman | |
| 1625 Eye Street, NW | |
| Washington, DC 20006 | |
| Telephone: (202) 383-5300 | |
| Facsimile: (202) 383-5414 | |
| Email: pfriedman@omm.com | |

8

-and-

Elizabeth L. McKeen
Ashley M. Pavel
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority*

**PROSKAUER ROSE, LLP**

*/s/ Margaret A. Dale*

Martin J. Bienenstock
Margaret A. Dale
Gregg M. Mashberg
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900
mbienenstock@proskauer.com
mdale@proskauer.com
gmashberg@proskauer.com

-and-

Paul V. Possinger
70 W. Madison St., Suite 3800
Chicago, IL 60602
Tel: (312) 962-3550
Fax: (312) 962-3551
ppossinger@proskauer.com

-and-

**DEL VALLE EMMANUELLI LAW OFFICES**

*/s/ Luis F. del Valle Emmanuelli*

Luis F. del Valle Emmanuelli
PO Box 79897
Carolina, PR 00984-9897
Tel: (787) 977-1932
Fax: (787) 722-1932
devlawoffices@gmail.com

*Attorneys for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority*

9