# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>              Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>      as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>             Debtor. | PROMESA<br>Title III<br><br><br>Case No. 17 BK 4780-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of PUERTO RICO ELECTRIC POWER AUTHORITY, and PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>              Movants,<br>       v.<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS, *et al.*<br><br>             Respondents. | **This Court Filing Relates Only to PREPA and Shall Only Be Filed in Case No. 17 BK 4780-LTS** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

**REPLY IN SUPPORT OF URGENT MOTION FOR AN ORDER *IN LIMINE*
PRECLUDING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FROM
ENTERING EXPERT REPORT INTO EVIDENCE AT THE 9019 MOTION HEARING**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT .............................................................................................. 3

    I.     THE COURT'S PRIOR ORDERS MAKE CLEAR THAT THE LEI
          REPORT SHOULD BE EXCLUDED FROM EVIDENCE. ................................ 3

    II.    THE GOVERNMENT PARTIES' DECLARATIONS DO NOT
          WARRANT INCLUSION OF THE LEI REPORT IN LIGHT OF THE
          COURT'S PRIOR RULINGS. ............................................................. 6

CONCLUSION ............................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Drexel Burnham Lambert Group, Inc.*,
  134 B.R. 493 (Bankr. S.D.N.Y. 1991) .................................................................................. 2

*Jeffrey v. Desmond*,
  70 F.3d 183 (1st Cir. 1995) ................................................................................................... 9

To The Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico ("FOMB"), in its capacity as representative of the Puerto Rico Electric Power Authority ("PREPA") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") (collectively, the "Government Parties"), hereby submit this reply in support of their *Urgent Motion for an Order* in Limine *Precluding the Official Committee of Unsecured Creditors from Entering Expert Report into Evidence at the 9019 Motion Hearing* (the "Motion to Exclude"). In support of this Reply the Government Parties state as follows:

## PRELIMINARY STATEMENT

The *Objection of Official Committee of Unsecured Creditors to Government Parties' Motion in Limine to Exclude Expert Report Submitted in Connection With PREPA Bonds 9019 Motion Hearing*, ECF No. 1736 (the "Objection") makes clear the Committee's refusal to accept this Court's direction that the "evidence and argument at the 9019 hearing ought to be focused tightly." July 11 Hr'g Tr.[2] 13:14-16. The stated purpose of the LEI Report is to examine macroeconomic theory concerning the effect of rate increases and to assess the value that would potentially remain for the unsecured creditors of PREPA. *See* LEI Report at 1-2, 67-79. In so doing, the LEI Report focuses exclusively on the feasibility, sustainability, and macroeconomic issues this Court has held to be beyond the scope of the 9019 Hearing, ignoring the Court's admonition that it does not "expect to entertain or have an attempt to set up … a full Monty

---

[2] Unless otherwise stated, defined terms have the same meaning as defined in the *Urgent Motion for Order in Limine Precluding the Official Committee of Unsecured Creditors from Entering Expert Report into Evidence at the 9019 Motion  Hearing* ECF. No. 1725.

confirmation hearing." July 11 Hr'g Tr. 32:4-6.[3]  The Committee's attempts to avoid

straightforward application of this Court's prior orders are unpersuasive.

 While the Committee argues that the LEI Report offers analysis that is fundamentally

different from the evidence this Court has previously excluded, the LEI Report's own

explanation of the scope of its analysis belies such characterizations:

> As a final step, LEI prepared an independent forecast of PREPA's
> rates in the long term, based on a set of integrated projections for
> cost of service (revenue requirement) and future grid-connected
> electricity demand.  The purpose of this long term forecast of rates
> was to capture how PREPA's expected costs of service and the
> Transition Charge . . . would affect consumers' electricity
> consumption and the longer term financial viability of PREPA's
> utility business, both of which help us understand whether the
> Transition Charge, is affordable and sustainable over the long term
> for PREPA.

LEI Report at 2.  The LEI Report plainly concerns the very macroeconomic and plan feasibility

issues the Court has repeatedly excluded.   Similarly, this Court's order precluding discovery

regarding "the value that would potentially remain for unsecured creditors under the terms of the

proposed settlement," (Committee Objections Order, ECF No. 1652 at 11) leaves no room for

the LEI report's assertion that no value would remain for the Committee and it should be

excluded.  The Committee's attempt to distinguish that order on the ground that it was made in

the context of a discovery dispute is nonsensical.  Objection, ECF No. 1736 at ¶ 13.  The Court's

earlier ruling on a discovery dispute in the same matter, concerning the same parties, and similar

issues is not distinguishable, but rather highly instructive.

 In an attempt to avoid the preclusive effect of the Court's prior orders, the Committee

contends that the LEI Report should be allowed as a response to the Government Parties'

---

[3] The obligation of the court is to "canvass the issues and see whether the settlement 'falls below the lowest point in
the range of reasonableness.'" *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493 at 496-97 (Bankr.
S.D.N.Y. 1991).

evidence and argument that: (1) the RSA will help avoid a future Title III filing and (2) the RSA

will limit future rate increases.  Objection, ECF No. 1736 at ¶¶ 10-11 & 14.  The Committee

attempts to characterize the LEI Report's macroeconomic and feasibility analyses as directly

responsive to statements in the Government Parties' declarations.  But this Court has already

carefully reviewed these declarations and concluded they are not as broad as the Committee

represents:

> As a general matter, the Declarations identify the key structural
> components of the proposed settlement (e.g., capping and isolating
> in a remote entity the legacy bond liability) and explain the
> relationship between those structural components and the goals
> motivating the Government Parties to enter the RSA.  They do not,
> however, purport to establish the feasibility of the settlement or a
> resulting plan of adjustment, the sustainability of rate increases, the
> feasibility of the proposed transformation, or the anticipated
> macroeconomic effects of the RSA.

Committee Objections Order, ECF No. 1652 at 17.

Any supposed function the LEI report might have in rebutting the Government Parties'

Declarations represents no more than a manufactured justification to try to re-open a door the

Court already has closed.  The Committee cannot avoid this Court's multiple, clear orders

defining the scope of the litigation on the 9019 Motion by putting old wine into new bottles.  The

Government Parties respectfully request that this Court enter an order precluding the Committee

from offering the LEI Report into evidence.

## **ARGUMENT**

## I.    **THE COURT'S PRIOR ORDERS MAKE CLEAR THAT THE LEI REPORT SHOULD BE EXCLUDED FROM EVIDENCE.**

This Court has made abundantly clear that evidence regarding: (1) the confirmability of

any potential plan based on the RSA, (2) anticipated demographic and macroeconomic effects of

full implementation of the RSA, and (3) the economic impact of the RSA on non-settling

creditors' recovery (apart from alleged impairment of legal rights), are all beyond the scope of

the issues before the Court on the 9019 Motion.  *See* Motion to Exclude, ECF No. 1725 at 5-7

(reciting prior orders).

The Committee attempts to re-cast the analysis in the LEI Report to avoid straightforward

application of this Court's orders first by arguing that this Court's Union Limine Order and

Wolfe Limine Order are not applicable here because they "dealt with altogether different

evidence and issues."  Objection, ECF No. 1736 at ¶ 12.  Even a cursory review of the LEI

Report reveals that the Union Limine Order and the Wolfe Limine Order squarely apply.  The

Committee argues that the Union Limine Order is distinguishable because the proffered evidence

concerned "impacts of the RSA on PREPA's economy in general, on workers and retirees, and

on solar energy development in Puerto Rico."  *Id.*  But the LEI Report offers essentially the same

analysis, tailored to the Committee's particular interests—namely, the impact of energy rate

increases on the economy, and on potential recovery available to unsecured creditors.  *See, e.g.*,

LEI Report at 69-72 (conclusions).  Similarly, the Committee argues that the Wolfe Limine

Order is distinguishable because the Wolfe Declaration "dealt solely with the issue of whether, in

the abstract, PREPA's rates could reach a threshold level that would be unsustainable by

PREPA." Objection, ECF No. 1736 ¶ 12.   This is precisely the analysis the LEI Report purports

to offer.  Indeed, five of the six conclusions in the LEI report concern LEI's projection of rate

increases and LEI's view of the sustainability of those increases.  *See* LEI Report at 69-72.  This

Court's prior orders *in limine* necessarily warrant exclusion of this evidence for the same

reasons.

The Committee nonetheless contends the LEI Report should be allowed into evidence

because its final remaining conclusion, that "PREPA will have no material assets or revenue-

generating capacity that it can use to provide a recovery for non-settling creditors" is relevant to the fourth *Jeffrey* factor, the "paramount interests of the creditors."  Objection, ECF No. 1736 at ¶ 9.  The Committee is wrong.  This Court has made clear it will entertain evidence and argument regarding whether the RSA impacts any non-settling creditor's *legal* rights as part of the *Jeffrey* analysis.  July 11 Hr'g. Tr. at 13:15-21 (9019 hearing ought to be "focused tightly" on identification of the range of reasonable settlement outcomes and "facts directly relevant to any legal injury that a party contends it would suffer as a direct result of the grating of the specific relief sought.").

The LEI Report offers no analysis regarding any purported legal right belonging to the Committee or any other creditor that is impaired by the RSA.  Instead, the LEI Report relies on macroeconomic analysis and a competing rate forecast to argue that PREPA's customer base will allegedly be unable to afford to pay other claims if the RSA is approved.  *See* LEI Report at 72 ("[T]here is no additional bandwidth to further raise rates to provide for recovery of amounts owed to unsecured creditors.").  This Court already has made clear that evidence regarding the dollar amount that may be available to non-settling creditors under any future plan of adjustment is a confirmation issue beyond the scope of the 9019 Motion.  *See, e.g.*, Union Limine Order, ECF No. 1586 at 4 (excluding evidence from UTIER and SREAEE "concerning the 'magnitude or intensity' of the damage they would incur if the RSA were to be approved.").  Importantly, when the Committee sought discovery **on this very issue**, and then sought review of its loss on the point, this Court affirmed Judge Dein's determination that the dollar amount the Committee may recover under a potential plan of adjustment if the RSA is approved was beyond the scope of the 9019 Motion:

> The Committee, moreover, has submitted no authority establishing
> that a plan of adjustment would have to provide a distribution to

5

> unsecured creditors in order to be confirmable, or relatedly, that the
> Court's assessment of the 'paramount interests of the creditors' . . .
> requires consideration of detailed evidentiary materials with respect
> to the value that would potentially remain for unsecured creditors
> under the terms of the proposed settlement.

Committee Objections Order, ECF No. 1652 at 11.  The Committee argues that this order "dealt

with whether the Committee was entitled to *discovery* on certain issues and thus has no relevance

to whether any particular *evidence* is admissible at the 9019 Hearing."  (Objection, ECF No.

1736 at ¶ 13). But this Court (and Judge Dein) denied discovery to the Committee precisely

because the Committee's discovery requests concerned issues beyond the scope of the 9019

Motion.  Committee Objections Order, ECF No. 1652 at 11-12 ("Insofar as documents relating

to issues of rate increase sustainability and plan feasibility are at all relevant to the Court's

assessment of the 9019 Motion, the burden and expense associated with permitting such

additional discovery significantly outweighs any likely benefit.").  The Committee's latest

attempt to inject these same issues into the litigation on the 9019 Motion should be rejected.

## II.   THE GOVERNMENT PARTIES' DECLARATIONS DO NOT WARRANT INCLUSION OF THE LEI REPORT IN LIGHT OF THE COURT'S PRIOR RULINGS.

The Committee attempts to justify its proffer of the very type of macroeconomic and plan

feasibility evidence this Court repeatedly has excluded under the guise of responding to the

Government Parties' declarations.  While the Government Parties do not contest that objectors,

including the Committee, have a right to respond to the declarations, the LEI Report does no

such thing.

*First*, the Committee contends that it is entitled to submit evidence on macroeconomic

issues and projections of PREPA's future performance to respond to the Government Parties'

argument and declarations showing that the RSA will help PREPA avoid a future Title III filing.

Objection at ¶¶ 3, 7-8.  But on this point, the LEI Reports states only that because the

Government Parties did not produce a rate sustainability analysis, "it is difficult for LEI to understand how the Government Parties can believe, as they state in their submissions, that PREPA is not likely to reenter Title III in the future if the settlement is approved."  LEI Report at 7.

The Committee and the LEI Report ignore that the Government Parties' argument is based on the structural protections of the RSA that do not exist under the current Trust Agreement, not the type of macroeconomic analysis that LEI offers.  Specifically, the Jaresko Declaration explains that, under the RSA, "PREPA will not be faced with the prospect of re-entering Title III as a result of its legacy bond debt or the provisions of the RSA by which the RSA Parties have agreed to resolve their disputes," for three reasons:

(1) "holders of Securitization Bonds cannot declare a payment default if the Transition Charge is not sufficient to pay debt service"

(2) "[e]ven if the issuer of new Securitization Bonds (which will not be PREPA) does not make scheduled debt service payments to holders of Securitization Bonds, neither PREPA, it Transformation successor, nor the securitization vehicle/issuer will be in default" and

(3) "[h]olders of the Securitization Bonds will not be able to invoke a rate covenant (as there will not be any rate covenant), seek receivership (there will be no receiver remedy), or seek other default remedies."

Jaresko Decl., ECF No. 1428, ¶ 27 (emphasis added).

The LEI Report does not address any of these points.  Instead, it offers the unremarkable truism that agreeing to the RSA would require PREPA's customers to pay more than they otherwise would if the legacy debt did not exist, and then speculates regarding the potential

sustainability of the Transition Charge and demographic issues surrounding potential grid defections.  LEI Report at 64-65.  This is the very type of evidence that this Court repeatedly has held is beyond the scope of the 9019 Motion.  *See, e.g.*, July 11 Hrg. Tr. 11:5-12 (excluding potential expert testimony disclosed by Windmar Renewable Energy, UTIER, and SREAEE "concerning the anticipated demographic and macroeconomic effects of full implementation of the RSA."); Wolfe Limine Order, ECF No. 1543 at 3-5 ("[E]vidence going to macroeconomic projections of the future state of Puerto Rico's economy and the long-term impact of full implementation of the RSA is outside the scope of the 9019 Motion . . . ."); *see also* Committee Objections Order, ECF No. 1652 at 11 ("[T]he Committee has made no showing that the Court must consider the information requested concerning the sustainability of rate increases and the overall feasibility of the settlement as a whole or of any eventual Title III plan of adjustment to evaluate whether the aspects of the settlement that the Court has been asked to approve fall below the lowest point in the range of reasonableness.").

It is simply not credible for the Committee to argue that the LEI Report's detailed macroeconomic analysis is necessary to respond to the above arguments by the Government Parties.

**Second**, the Committee argues that the LEI Report should be allowed into evidence because it offers a response to the Government Parties' argument that "unrestrained rate increases will be avoided."  Objection, ECF No. 1736 at ¶ 7.  This misrepresents both the Government Parties' arguments and the LEI Report.

The Government Parties' argument that the RSA will provide protection against rate increases is based on a comparison of what rate increases may be required under the Trust Agreement to pay debt service obligations on the PREPA bonds against what may be required

under the RSA.  Specifically, the Trust Agreement, like most public debt, contains a "rate

covenant" that requires PREPA (outside Title III) to increase electricity rates if revenues are

insufficient to meet operating expenses and annual debt service requirements.  Jaresko Decl,

ECF No. 1428 at ¶ 25.  In other words, the existing Trust Agreement provides for "unrestrained

rate increases" to ensure full payment of debt service.  By contrast, the RSA eliminates the rate

covenant and replaces it with a predictable, fixed Transition Charge.  *Id.* at ¶ 26 ("Instead, the

RSA militates against unknown and uncertain potential rate increases by establishing a

securitization structure by means of the fixed and predictable Transition Charge that increase

gradually from 2.76a c/kWh for the first five years to a maximum of 4.552 c/kWh from fiscal

year 2043 onwards.")

The LEI Report does not challenge these statements, nor could it.  Even the Committee

cannot dispute that a fixed, predictable transition charge stabilizes the rate increases that may be

required to cover debt service as compared to an unrestrained rate covenant.  What the LEI

Report offers, rather, is a critique of the PREPA Certified Fiscal Plans' projections of the base

rate levels that would be required to fund PREPA's operations, independent of debt service

requirements that would be met by the Transition Charge.  *See* LEI Report at 14-37, App'x C-D.

This ratemaking analysis is completely irrelevant to the narrow issues before the Court on the

9019 motion — whether the Government Parties' settlement of the Bondholders' claims falls

within the range of reasonable outcomes.  *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995).

Because the LEI Report is not offering a critique of the Government Parties' statements

regarding the benefits of the Transition Charge under the RSA as compared to the rate covenant

under the Trust Agreement but instead offers analysis regarding what LEI and the Committee

contend would be the larger macroeconomic effect of implementation of the RSA, it must be

excluded.  *See* July 11 Hr'g. Tr. at 11:9-12 ("[P]roffers of evidence . . . concerning the

anticipated demographic and macroeconomic effects of full implementation of the RSA are

precluded."); Wolfe Limine Order, ECF No. 1543 at 5 ("The factual macroeconomic issues

attendant to full implementation and confirmation of a plan based on the agreements embodied in

the RSA, while not entirely irrelevant to the question of reasonableness of the measures the

Court has been asked to approve, are outside of the evidentiary parameters that the Court has, in

the exercise of its discretion, set in connection with the 9019 Motion."); Committee Objections

Order (rejecting Committee's argument that the Court must consider information concerning the

sustainability of rate increases).[4]

## **CONCLUSION**

For the reasons stated above and in their opening motion, the Government Parties

respectfully request that this Court preclude the Committee from entering the LEI Report into

evidence at the hearing on the 9019 Motion.

---

[4] The Committee also argues (Objection, ECF No. 1736 at ¶ 13) that because PREPA's June 2019 fiscal plan is
attached to the Jaresko Declaration as an exhibit, that should also make admissible "the LEI Report's analysis based
on that plan."  But the Jaresko Declaration discusses the June 2019 fiscal plan for specific and limited purposes.  *See*
ECF No. 1428, at ¶¶ 9, 23, 47 and n.15.  To state the obvious, the Government Parties' reliance on a document for
limited purposes does not somehow render admissible the opinions set forth in the LEI Report on entirely different
issues, especially ones this Court has already found to be not probative of the issues to be determined in the 9019
Hearing.

Dated: November 15, 2019

Respectfully submitted,

**O'MELVENY & MYERS LLP**

*/s/ Elizabeth L. McKeen*

John J. Rapisardi
Nancy A. Mitchell
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
nmitchell@omm.com

-and-

Peter Friedman
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: pfriedman@omm.com

-and-

Elizabeth L. McKeen
Ashley M. Pavel
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994
Email: emckeen@omm.com

*Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory
Authority and Puerto Rico Electric Power
Authority*

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913

250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

**PROSKAUER ROSE, LLP**

*/s/ Margaret A. Dale*

Martin J. Bienenstock
Margaret A. Dale
Gregg M. Mashberg
Eleven Times Square
New York, NY 10036-8299
Tel:   (212) 969-3000
Fax:   (212) 969-2900
mbienenstock@proskauer.com
mdale@proskauer.com
gmashberg@proskauer.com

-and-

Paul V. Possinger
70 W. Madison St., Suite 3800
Chicago, IL 60602
Tel:   (312) 962-3550
Fax:   (312) 962-3551
ppossinger@proskauer.com

-and-

**DEL VALLE EMMANUELLI LAW OFFICES**

*/s/ Luis F. del Valle Emmanuelli*

Luis F. del Valle Emmanuelli
PO Box 79897
Carolina, PR 00984-9897
Tel: (787) 977-1932
Fax: (787) 722-1932
devlawoffices@gmail.com

*Attorneys for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority*