*Amended Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank Trust National Association, Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds*

# **EXHIBIT 10**

*Execution Version*

## **LOCKBOX AGREEMENT**

This Lockbox Agreement (this "Lockbox Agreement") is dated as of May 5, 2015, and entered into by and among Citibank, N.A., a national banking association (the "Lockbox Bank"), Banco Popular de Puerto Rico, a Puerto Rico banking entity (not in its individual capacity but as trustee under the Trust Agreement (as defined below), the "Trustee"), Citibank, N.A., a national banking association (not in its individual capacity but as Paying Agent under the Trust Agreement (in each case as defined below)) and the Government of Puerto Rico (the "Government"), acting through the Secretary of Treasury, the Secretary of Economic Development and Commerce, the Secretary of Agriculture, the President of the Government Development Bank for Puerto Rico, the Executive Director of the Office of Management and Budget and the Executive Director of the Puerto Rico Industrial Development Company as authorized by Act No. 178 of December 1, 2010, as amended, Act No. 1 of January 31, 2011 and any successor legislation (the "Enabling Act").

### **RECITALS**

**WHEREAS**, pursuant to the Enabling Act, the Government has entered or may enter into agreements (as amended from time to time, the "Rum Producer Agreements") with various Puerto Rico rum producers (the "Rum Producers") to provide incentives with the objective of maintaining, promoting and growing the production of rum in Puerto Rico;

**WHEREAS**, under the Rum Producer Agreements, the Government is or will be obligated to make certain payments to the Rum Producers relating to the sale in the United States of proof gallons of rum attributable to the rum manufacturing operations of the Rum Producers in Puerto Rico;

**WHEREAS**, on the date hereof, the Government, the Trustee and Citibank N.A., as paying agent (the "Paying Agent") and collateral agent (the "Collateral Agent"), are entering into a Trust Agreement (the "Trust Agreement") to effect the Government's required payments to the Rum Producers (each Rum Producer that may become a beneficiary of the trust created by the Trust Agreement, a "Beneficiary");

**WHEREAS**, the Government has established a deposit account at the Puerto Rico branch of the Lockbox Bank to provide a source of payment from which the Paying Agent can effect such required payments to the Beneficiaries, and on the date hereof wishes to enter into this Lockbox Agreement with the Government, the Trustee and the Paying Agent with respect to such deposit account;

**WHEREAS**, on the date hereof, the Government, as pledgor, and the Trustee and the Collateral Agent (the "Secured Parties") are entering into a Security Agreement in order to grant the Secured Parties a security interest, on the terms set forth therein, in the collateral described therein (the "Security Agreement");

# 2015 - 000876
20 - may - 15 DRA

**WHEREAS**, on the date hereof, the Government, the Trustee, the Collateral Agent and the Lockbox Bank are entering into a Deposit Account Control Agreement (the "Deposit Account Control Agreement") in order to perfect the security interest granted under the Security Agreement; and

**WHEREAS,** the Government has determined that the above described transactions are in the best public interest and the terms of the above agreements are necessary and convenient to effect such transactions;

**NOW THEREFORE**, in consideration of the foregoing recitals, the covenants, representations, warranties, commitments and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Government, the Trustee, the Paying Agent and the Lockbox Bank agree as follows, effective as of the date of this Lockbox Agreement:

**Section 1. Certain Terms**. Capitalized terms when used in this Lockbox Agreement, including its preamble, recitals, annexes and schedules, shall have the meanings set forth in Annex A attached hereto.

**Section 2. Account**.

(a) The Secretary of Treasury has established at the Lockbox Bank, and the Lockbox Bank hereby confirms that the Lockbox Bank has established, an account at its Puerto Rico branch in the name of the Secretary of Treasury of Puerto Rico bearing account number 0400109028 (the "Account").

(b) The Lockbox Bank shall not close the Account or change the name or account number of the Account without the prior written consent of the Secretary of Treasury and the Paying Agent. The Paying Agent shall not withhold its consent to such change provided that (i) any amendments or modifications to this Lockbox Agreement, the Security Agreement or the Deposit Account Control Agreement that may be necessary or convenient to preserve the validity, priority or perfection of the security interest granted under the Security Agreement shall be executed in form and substance satisfactory to the Paying Agent, and (ii) that the Government shall file (or shall provide such cooperation as may be required to enable the Paying Agent to file or to cause the Collateral Agent to file) such financing statements, continuation statements and other amendments describing all or part of the collateral subject to such security interest as may be requested by the Paying Agent to be filed in order to reflect such change.

(c) The parties hereto acknowledge and agree that the Account is a "deposit account" within the meaning of Section 9-102(a)(29) of the PRCTA and that the Lockbox Bank's jurisdiction for purposes of the Account under the PRCTA shall be the Commonwealth of Puerto Rico.

(d) Deposit Funds held in, or credited to, the Account shall not be invested.

**Section 3.** **Lockbox Bank's Obligations with respect to the Account.**

(a) The Account shall be used for the deposit by the U.S. Government of Cover Over Revenues payable to the Government on a periodic basis pursuant to Section 7652 of the Code. The Secretary of Treasury hereby grants to the Lockbox Bank exclusive and unrestricted access to and use of the Account for the purpose of administering such deposits in accordance with this Lockbox Agreement subject to the terms of the Deposit Account Control Agreement.

(b) The Lockbox Bank shall maintain the Account as contemplated by this Lockbox Agreement and shall not commingle the Deposit Funds in or credited to, or designated for deposit in, the Account with any other Deposit Funds otherwise held on behalf of the Government, the Collateral Agent, the Trustee or any other Person. The Lockbox Bank acknowledges that the Account and any Deposit Funds in or credited to or designated for deposit in the Account are subject to security interests in favor of the Trustee and the Collateral Agent to the extent set forth in the Security Agreement. The Lockbox Bank shall not apply any Deposit Funds in the Account or make any disbursement from or debit to the Account other than in accordance with this Lockbox Agreement and, if applicable, the Deposit Account Control Agreement.

(c) Not later than one (1) Business Day after the deposit by the U.S. Government of a Cover Over Payment in the Account, the Lockbox Bank shall notify the Secretary of Treasury, PRIDCO, the Trustee and the Paying Agent of the amount of such Cover Over Payment and the date of receipt.

(d) Not later than one (1) Business Day after disbursement of any funds from the Account, the Lockbox Bank shall notify the Secretary of Treasury, PRIDCO, the Trustee and the Paying Agent of the amount disbursed and the date and recipient of the disbursement. Such notification shall include a breakdown of amounts disbursed, if any, and remaining balances after giving effect to such disbursements, in respect of a Conservation Trust Tax Extender Amount, Unpaid Conservation Trust Amount, Unpaid Beneficiaries' Amount and Unpaid Other Rum Producers' Amount.

(e) Any transfer of funds from the Account shall be made by wire transfer or similar method of transfer of immediately available funds to the account set forth on Schedule 1 of the recipient designated by this Lockbox Agreement or such other account of a recipient set forth in a written instruction from such recipient to the Lockbox Bank.

**Section 4.** **Cover Over Report; Certification.**

(a) From and after the Waiver Date, the Secretary of Treasury shall deliver to the Lockbox Bank a copy of each Cover Over Report not later than three (3) Business Days after the Government's receipt of such Cover Over Report. No later than one (1) Business Day after receipt of such Cover Over Report the Lockbox Bank shall deliver a copy of such Cover Over Report to the Paying Agent and PRIDCO.

(b) Not later than four (4) Business Days after the Government receives a Cover Over Report from the U.S. Government, the Secretary of Treasury shall deliver to the Lockbox

3

Bank, the Paying Agent and PRIDCO a Government Certification relating to such Cover Over Report and to the applicable Cover Over Payment to which such Cover Over Report relates.

(c) No later than one (1) Business Day after receipt of a Cover Over Report or Government Certification, the Lockbox Bank shall notify the Secretary of Treasury, PRIDCO, the Trustee and the Paying Agent of (i) any discrepancy between the amount of the corresponding Cover Over Payment and the amount that should have been received in the Account based on the applicable Cover Over Report or Government Certification and (ii) any Reduction set forth in such Government Certification.

**Section 5. Disposition of Cover Over Payments in the Account.** The Lockbox Bank shall make disbursements of Cover Over Payments deposited by the U.S. Government in the Account during each Fiscal Year by making the following payments from the Account in the following order of priority, **solely to the extent of funds available in the Account**:

(a) First, subject to Section 15, no later than one (1) Business Day after such deposit of the Cover Over Payment, to the Secretary of Treasury for deposit to the credit of PRIFA, the first $117 million of aggregate Cover Over Payments received for credit to the Account during each Fiscal Year commencing with the Fiscal Year beginning July 1, 2015, *minus* the aggregate disbursements previously made pursuant to this Section 5(a) during such Fiscal Year;

(b) Second, subject to Section 15, no later than one (1) Business Day after such deposit of the Cover Over Payment, to the Secretary of Treasury for deposit to the credit of the S&T Trust, the next $5 million of Cover Over Payments received for credit to the Account during each Fiscal Year commencing with the Fiscal Year beginning July 1, 2015, *minus* the aggregate disbursements previously made pursuant to this Section 5(b) during such Fiscal Year;

(c) Third, if the Lockbox Bank has received a Government Certification by the fourth (4th) Business Day following such deposit of the Cover Over Payment, not later than one (1) Business Day after receipt by the Lockbox Bank of such Government Certification, to the Secretary of Treasury, the remaining amount of Non-Rum COR included in such Cover Over Payment;

(d) Fourth, if the Lockbox Bank has received a Government Certification by the fourth (4th) Business Day following such deposit of the Cover Over Payment, not later than one (1) Business Day after receipt by the Lockbox Bank of such Government Certification, to the Secretary of Treasury, the remaining amount of Other Rum COR included in such Cover Over Payment;

(e) Fifth, subject to Section 15, if the Lockbox Bank has received a Government Certification by the fourth (4th) Business Day following such deposit of the Cover Over Payment, not later than one (1) Business Day after receipt by the Lockbox Bank of such Government Certification, to the Conservation Trust, an amount equal to the Unpaid Conservation Trust Amount;

4

(f) <u>Sixth</u>, no later than five (5) Business Days after such deposit of the Cover Over Payment, the following amounts on a Pro Rata Basis:

> (i) to the Paying Agent, an amount equal to the Unpaid Beneficiaries' Amount; and

> (ii) to PRIDCO, for credit to the Other Rum Producers, an amount equal to the Unpaid Other Rum Producers' Amount;

(g) <u>Seventh</u>, no later than one (1) Business Day following receipt by the Lockbox Bank of a Government Certification that is received after the fourth (4th) Business Day following such deposit of the Cover Over Payment, the following amounts in the following priority:

> (i) to the Secretary of Treasury, the remaining amount of Non-Rum COR included in such Cover Over Payment;

> (ii) to the Secretary of Treasury, the remaining amount of Other Rum COR included in such Cover Over Payment; and

> (iii) subject to <u>Section 15</u>, to the Conservation Trust, an amount equal to the Unpaid Conservation Trust Amount; and

(h) <u>Eighth</u>, no later than one (1) Business Day after the Lockbox Bank has made all payments required to be made pursuant to <u>Sections 5(a)</u> through <u>5(g)</u>, to the Secretary of Treasury, the remaining balance in the Account (exclusive of Cover Over Payments deposited in the Account on or after the Business Day referred to in Section 5(a)).

Amounts payable under <u>Sections 5(a) and 5(b)</u> shall in all cases be paid <u>first</u> out of Non-Rum COR, <u>second</u> out of Other Rum COR, and <u>third</u> out of Puerto Rico Rum COR, in each case to the extent of funds available in the Account.

**Section 6.** **Subordination of Lien; Waiver of Set-Off**. In the event that the Lockbox Bank has obtained or subsequently obtains by agreement, by operation of law or otherwise a security interest in, lien on, or encumbrance, claim or (except as provided in the next sentence) right of set-off against, the Account or any Deposit Funds therein or credited thereto, the Lockbox Bank hereby agrees that such security interest, lien, encumbrance, claim and right of set-off shall be subordinate to any interest of the Government or the Trustee, including the security interest created pursuant to the Security Agreement. The Lockbox Bank agrees not to exercise any present or future right of recoupment or set-off against the Account or to assert against the Account any present or future security interest, banker's lien or any other lien or claim (including claim for penalties) that the Lockbox Bank may at any time have against the Account or any Deposit Funds therein or credited thereto. The Lockbox Bank shall have no right

5

of set-off against, or other recourse to, the Account in respect of any fees payable for its services hereunder.

**Section 7. Delegation of Duties**. The Lockbox Bank may execute any of the powers of this Lockbox Agreement and perform any duty under this Lockbox Agreement either directly or by or through agents or attorneys-in-fact; provided that the Lockbox Bank shall be responsible for the gross negligence and willful misconduct of any agents or attorneys-in-fact selected by it. The Lockbox Bank shall be entitled to advice of counsel concerning all matters pertaining to such powers and duties.

**Section 8. Reliance by Lockbox Bank**.

(a)    Whenever in the administration of the Account the Lockbox Bank shall deem it necessary or desirable that a factual matter be proved or established in connection with the Lockbox Bank taking, suffering or omitting any action under this Lockbox Agreement, such matter (unless other evidence in respect thereof is specifically prescribed in this Lockbox Agreement) may be deemed to be conclusively proved or established by a joint Account Instruction of the Government and the Paying Agent, and such Account Instruction shall be full warrant to the Lockbox Bank for any action taken, suffered or omitted in reliance thereon, subject, however, to the provisions of Section 9.

(b)    The Lockbox Bank may consult with counsel, and any opinion or advice of such counsel shall be full and complete authorization and protection in respect of any action taken or suffered by the Lockbox Bank under this Lockbox Agreement that is the subject of such opinion or advice.

(c)    The Lockbox Bank may rely, and shall be fully protected in acting, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, bond or other paper or document which it has no reason to believe to be other than genuine and to have been signed or presented (or, in the case of telecopies, to have been sent) by the proper party or parties. In the absence of its own gross negligence or willful misconduct, the Lockbox Bank may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates, authorizations or opinions furnished to the Lockbox Bank and conforming to the requirements of this Lockbox Agreement.

**Section 9. Limitations on Duties of Lockbox Bank**.

(a)    The Lockbox Bank shall be obligated to perform such duties and only such duties as are specifically set forth in this Lockbox Agreement (each of which is ministerial and shall not be considered fiduciary), and no implied covenants or obligations shall be read into this Lockbox Agreement against the Lockbox Bank.

(b)    The Lockbox Bank shall be under no obligation to take any action which is discretionary under the provisions of this Lockbox Agreement.

(c)    The Lockbox Bank shall not be liable for any special loss, or indirect, punitive or consequential damages, however caused or arising (including loss of business,

6

goodwill, opportunity or profit) even if advised of the possibility of such loss or damage and regardless of whether the claim for loss or damage is made in negligence, for breach of contract, for breach of trust or otherwise.

(d) The Lockbox Bank shall not be liable for any action it takes or omits to take in good faith hereunder that it believes to be authorized or within its rights or powers herein; provided that such conduct does not constitute gross negligence or willful misconduct (as finally adjudicated by an arbitral tribunal or court of competent jurisdiction).

(e) The Lockbox Bank shall not be required to incur any out-of-pocket expenses in the performance of its duties hereunder (other than any expenses for which the Lockbox Bank is being indemnified or reimbursed hereunder or under the applicable Fee Agreement).

(f) Notwithstanding anything contained in this Lockbox Agreement to the contrary, the Lockbox Bank shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, without limitation, any provision of any present or future law or regulation or any act of any Governmental Authority, any act of god or war or terrorism, or the unavailability of the Federal Reserve Bank wire services or any electronic communication facility).

**Section 10. Resignation and Removal of Lockbox Bank.** The Lockbox Bank may at any time, by giving written notice to the Government, the Trustee and the Paying Agent, resign and be discharged of the responsibilities hereby created, such resignation to become effective upon (a) the appointment of a successor lockbox bank by the Paying Agent, with the prior written consent of the Government (not to be unreasonably withheld, delayed or denied), and (b) the acceptance of such appointment by such successor lockbox bank. If no successor lockbox bank shall be appointed and shall have accepted such appointment within thirty (30) days after the Lockbox Bank gives the aforesaid notice of resignation, the Lockbox Bank, the Government or the Paying Agent may apply to any court of competent jurisdiction to appoint a successor lockbox bank to act until such time, if any, as a successor lockbox bank shall have been appointed as provided in this Section 10. The Paying Agent, with the prior written consent of the Government (not to be unreasonably withheld, delayed or denied), may remove the Lockbox Bank and appoint a successor lockbox bank, such removal to be effective upon the acceptance of such appointment by the successor lockbox bank.

**Section 11. Merger of Lockbox Bank.** Any corporation or entity into which the Lockbox Bank may be merged, or with which it may be consolidated, or any corporation or entity resulting from any merger or consolidation to which the Lockbox Bank shall be a party, shall be the Lockbox Bank under this Lockbox Agreement without the execution or filing of any paper or any further act on the part of the parties hereto unless such corporation does not meet the qualifications set forth in Section 13.

**Section 12. Books and Records.** The Lockbox Bank shall be responsible for the keeping of all appropriate books and records relating to the receipt and disbursement of all monies under this Lockbox Agreement, including all Cover Over Reports received by the Lockbox Bank and all calculations performed by the Lockbox Bank. The Lockbox Bank shall not be personally liable for any taxes due and payable in connection with this Lockbox

Agreement except for any such tax based on or measured by amounts paid to the Lockbox Bank as fees or compensation in connection with this Lockbox Agreement pursuant to the Fee Agreement.

**Section 13. Qualifications**. The Lockbox Bank under this Lockbox Agreement, including any successor lockbox bank, shall at all times (i) be a financial institution that is recognized in the industry as a leading provider of the types of services being provided under this Lockbox Agreement, (ii) have a net worth of at least $500,000,000, if there be such an institution willing, able and legally qualified to perform the duties of the lockbox bank under this Lockbox Agreement upon reasonable or customary terms and (iii) be able to comply with the provisions of Act 69 of August 14, 1991, as amended, with respect to the Account; provided, however, that such new Lockbox Bank shall resign in accordance with Section 10 if the Government certifies to the Lockbox Bank or the new Lockbox Bank, not later than 30 days after the succession of the new Lockbox Bank, that the new Lockbox Bank is a Person with whom the Commonwealth of Puerto Rico is at the time engaged in a material litigation or other significant legal controversy or dispute.

**Section 14. Conflict with Other Agreements; Adverse Claims**. The Lockbox Bank hereby confirms and agrees that:

(a) there are no agreements entered into between the Lockbox Bank and any other Person with respect to the Account except for this Lockbox Agreement and the Deposit Account Control Agreement;

(b) it has not entered into, and until the termination of this Lockbox Agreement shall not enter into, any agreement with any Person (other than the Government, the Paying Agent and the Trustee) relating to the Account and/or any Deposit Funds therein or credited thereto, other than the Deposit Account Control Agreement; and

(c) except for the claims and interests of the Government and the Trustee in the Account and the Deposit Funds therein or credited thereto, the Lockbox Bank does not know of any security interest in, lien on, claim to, or interest in the Account or in any "financial asset" (as defined in Section 8-102(a)(9) of the PRCTA), funds, monies, checks or other items in or credited to the Account. If any Person asserts any security interest, lien, encumbrance or adverse claim (including any writ, garnishment, judgment, warrant of attachment, execution or similar process) against the Account or in any Deposit Funds therein or credited thereto, other than the security interest of the Trustee and the Collateral Agent therein, the Lockbox Bank shall promptly notify the Government, the Paying Agent and the Trustee thereof in writing.

**Section 15. Legal Adjustments; Change in Federal Law; Amounts Payable to PRIDCO**.

(a) If, at any time after the date of this Lockbox Agreement, Act No. 119 of July 9, 2006 of the Commonwealth of Puerto Rico or any successor legislation is amended, modified, repealed or otherwise changed to reduce the amount payable to PRIFA from Cover Over Revenues or to eliminate any priority that PRIFA may have with respect to such amounts, the payments from the Lockbox Account set forth in Section 5(a) shall be adjusted accordingly to

8

reflect such reduction or the elimination of such priorities. If, at any time after the date of this Lockbox Agreement, Act No. 214 of August 19, 2004 of the Commonwealth of Puerto Rico or any successor legislation is amended, modified, repealed or otherwise changed to reduce the amount payable to the S&T Trust from Cover Over Revenues or to eliminate any priority that PRIFA may have with respect to such amounts, the payments from the Lockbox Account set forth in Section 5(b) shall be adjusted accordingly to reflect such reduction or the elimination of such priorities. If, at any time after the date of this Lockbox Agreement, Act No. 108 of August 7, 2002 of the Commonwealth of Puerto Rico or any successor legislation is amended, modified, repealed or otherwise changed to reduce the amount payable to the Conservation Trust from Cover Over Revenues, the payments from the Lockbox Account set forth in Section 5(e) and Section 5(g)(iii) shall be adjusted accordingly to reflect such reduction. Either the Paying Agent or the Government shall have the right to deliver a written notice to the other and to the Lockbox Bank identifying such amendment, modification, repeal or other change and setting forth the corresponding adjustment to be made to Section 5(a), (b), (e) or (g)(iii), as the case may be. Such adjustment shall become effective within ten (10) Business Days of receipt by the Lockbox Bank and either the Government or the Paying Agent, as the case may be, unless either the Government or the Paying Agent delivers a written notice to the other and to the Lockbox Bank prior to the end of such ten (10) Business Day period indicating that it is disputing such adjustment. In the event of any such dispute, no adjustment shall be made to Section 5 until such dispute is resolved pursuant to Section 27(b) or otherwise. Promptly upon resolution of any dispute, the Paying Agent and the Government shall deliver to the Lockbox Bank a joint Account Instruction setting forth the adjustments to be made to Section 5.

(b) If, at any time after the date of this Lockbox Agreement, any change in federal law, regulation or administrative practice would result in the payment of Cover Over Revenues into the Account with respect to any Applicable Month in excess of the Cover Over Revenues that would have been paid with respect to such Applicable Month if the payment had been determined by reference to the Cover Over Rate then in effect for such Applicable Month (an "Excess COR Payment"), the Paying Agent or the Government may deliver a written notice to the other and to the Lockbox Bank proposing an amendment or other modification to this Lockbox Agreement that will adjust the provisions hereof accordingly. Such adjustment shall assure that the Excess COR Payment is disbursed in accordance with the priority of payments set forth in Section 5, including disbursement of any portion of the Excess COR Payment to the Government only after all other Persons entitled to receive disbursements of the Excess COR Payment pursuant to Section 5, whether entitled to receive such disbursements at the time of the Excess COR Payment or with the passage of time, have received such disbursements. Pending the execution and delivery by all parties hereto of such amendment or other modification, the Lockbox Bank shall retain the Excess COR Payment. If the parties hereto cannot agree upon such amendment or other modification, the dispute regarding the adjustment may be submitted to arbitration pursuant to Section 27.

(c) Any amounts payable to PRIDCO from Cover Over Revenues pursuant to Act No. 108 of July 23, 2014 shall be paid to PRIDCO by the Government from amounts received pursuant to Section 5(h).

**Section 16. Notices; Authorized Representatives.**

9

(a) All notices and other communications under this Lockbox Agreement shall be in writing and shall be sent by registered first class mail, postage prepaid, by an internationally recognized overnight courier for delivery on the following Business Day or by telecopy to the address set forth on Schedule 2, or to such other addresses as shall be designated from time to time by the applicable party hereto in accordance with this Section 16. All notices and other communications under this Lockbox Agreement shall be effective upon receipt.

(b) Each individual designated as an authorized representative of the Government or the Paying Agent, respectively (an "Authorized Representative"), is authorized to give and receive notices, requests and instructions and to deliver certificates and documents in connection with this Lockbox Agreement on behalf of the Government or the Paying Agent, respectively. The specimen signature for each Authorized Representative of the Government initially authorized hereunder is set forth on Schedule 3. The specimen signature for each Authorized Representative of the Paying Agent initially authorized hereunder is set forth on Schedule 4. From time to time, the Government or the Paying Agent may, by delivering to each other and the Lockbox Bank a revised Schedule 3 or 4 (as applicable), change the information previously given pursuant to this Section 16, but each party hereto shall be entitled to rely conclusively on the then current Schedule until receipt of a superseding Schedule.

**Section 17. Binding Effect**. This Lockbox Agreement shall be binding on the parties hereto and their successors and permitted assigns.

**Section 18. Termination of this Lockbox Agreement**. This Lockbox Agreement shall terminate upon termination of the Trust Agreement. Upon termination of this Lockbox Agreement the Lockbox Bank shall disburse all payments then required to be paid from the Account in accordance with the terms of this Lockbox Agreement.

**Section 19. Entire Agreement**. This Lockbox Agreement, the Security Agreement, the Deposit Account Control Agreement and the Fee Agreement constitute the entire agreement among the parties hereto with respect to the subject matter of this Lockbox Agreement and supersede all prior or contemporaneous agreements (other than the Rum Producer Agreements), understandings, discussions or negotiations (written or oral) among the parties hereto with respect to the subject matter of this Lockbox Agreement.

**Section 20. Amendment**. This Lockbox Agreement may only be amended in writing signed by all of the parties hereto.

**Section 21. Counterparts**. This Lockbox Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Lockbox Agreement by email (e.g., with "PDF" attachment) or facsimile shall be effective as delivery of a manually executed counterpart of this Lockbox Agreement.

**Section 22. Waiver**.

(a) No failure of any party hereto to exercise, and no delay by it in exercising, any right, power or remedy in connection with this Lockbox Agreement (each a "Remedy") shall

10

operate as a waiver thereof, nor shall any single or partial exercise of any Remedy preclude any other or further exercise of such Remedy or the exercise of any other Remedy. The Remedies provided in this Lockbox Agreement are cumulative and not exclusive of any other Remedies (whether provided at law or in equity). Any express waiver of any breach of this Lockbox Agreement shall not be deemed to be a waiver of any subsequent breach.

(b) No provision of this Lockbox Agreement may be interpreted to be a waiver of any provision of the laws (including the Constitution) of the Commonwealth of Puerto Rico that are not waivable under such laws, including any applicable laws relating to the payment priorities of the obligations of the Commonwealth, including without limitation Section 8 of Article VI of the Constitution and Article 4(c) of Act 147 of June 18, 1980, as amended.

**Section 23.  Severability**. Any provision of this Lockbox Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Lockbox Agreement, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

**Section 24.  Rights of Third Parties**. This Lockbox Agreement shall not create any right or cause of action in or on behalf of any Person other than the parties hereto.

**Section 25.  Assignment**. No party hereto may assign this Lockbox Agreement or any right, title or interest in or under this Lockbox Agreement, or delegate any duty or obligation under this Lockbox Agreement (other than pursuant to Sections 10 or 11), and any such attempted assignment or delegation shall be void, except with the prior written consent of the other parties hereto.

**Section 26.  Binding Effect**. This Lockbox Agreement shall be binding on the parties hereto and their successors and permitted assigns.

**Section 27.  Governing Law; Arbitration; Waiver of Sovereign Immunity**.

(a) This Lockbox Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Puerto Rico (without giving effect to applicable principles of conflicts of laws), including, to the extent applicable, all laws of the Commonwealth of Puerto Rico (including the Constitution) relating to the payment priorities of the obligations of the Commonwealth of Puerto Rico, including without limitation, Section 8 of Article VI of the Constitution and Article 4(c) of Act No. 147 of June 18, 1980, as amended.

(b) Any disputes arising out of or in connection with this Lockbox Agreement, including any questions regarding its existence, validity or termination, shall be determined by arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules, as modified by this Section 27(b) and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. The number of arbitrators shall be three (3). Within thirty (30) days after the commencement of arbitration, all claimants shall jointly appoint one (1) arbitrator and all respondents shall jointly appoint one (1) arbitrator. The two (2) arbitrators thus appointed shall choose the third arbitrator, who shall act as chairman. If the two (2) appointed arbitrators

11

do not reach an agreement within fifteen (15) days of their appointment on the appointment of a third arbitrator, the AAA shall appoint the third arbitrator. If more than one arbitration is begun under any Transaction Document and any party contends that two or more arbitrations are substantially related and that the issues should be heard in one proceeding, the arbitrators selected in the first filed of such proceedings shall determine whether, in the interests of justice and efficiency, the proceedings should be consolidated before those arbitrators. The seat of the arbitration shall be San Juan, Puerto Rico. The language of the arbitration shall be English. The award shall be rendered within six (6) months of the commencement of the arbitration, unless otherwise agreed by the parties to the arbitration. A judgment upon any award(s) rendered by the arbitrators may be entered in any court having jurisdiction thereof, including any federal or state court of the United States or the Commonwealth of Puerto Rico. Nothing in this Lockbox Agreement shall prevent the parties hereto from seeking provisional measures from any court of competent jurisdiction, and any such request shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(c) The Government hereby waives any right, forum, defense or limitation based upon its sovereign immunity for purposes of any action for breach of its obligations under this Lockbox Agreement, it being recognized that pursuant to Section 27(b), the parties to this Lockbox Agreement have agreed to arbitration as the exclusive forum for dispute resolution.

**Section 28. Construction; Interpretation; Application of Payments.**

(a) References to a statutory provision include that provision as from time to time modified, amended, supplemented or replaced whether before or after the date of this Lockbox Agreement so far as such modification, amendment, supplement or replacement applies or is capable of applying to this Lockbox Agreement.

(b) In this Lockbox Agreement, unless the context otherwise requires, a reference to a document includes any amendment or supplement to, or replacement or novation of, that document; a reference to the singular includes the plural and *vice versa*; and the words "include," "includes," and "including" mean include, includes, and including "without limitation" and "without limitation by specification," and any list or series following any such term is: (i) not exhaustive and (ii) not meant to be limited to elements or items of the same or similar kind.

(c) In determining the effect of any payment or disbursement on any calculation required to be made pursuant to this Lockbox Agreement, such payment or disbursement shall be credited to the applicable obligation in the order in which such obligation became due and payable.

(d) In the event of a conflict between this Lockbox Agreement and any other agreement between the Lockbox Bank and the Government relating to the Account, the terms of this Lockbox Agreement shall prevail.

**Section 29. Rights of the Paying Agent.** In acting or refraining from acting hereunder, the Paying Agent shall be afforded all of the rights, protections and immunities given to it under the Trust Agreement.

## Section 30.    Confidentiality.

(a)    The Lockbox Bank shall preserve the confidentiality of all information delivered to the Lockbox Bank by a counterparty hereunder, including all information contained in a Cover Over Report (all such information "Confidential Information"), and shall not disclose Confidential Information other than pursuant to the terms of this Lockbox Agreement; provided, however, that the Lockbox Bank may disclose Confidential Information to its directors, officers, employees, counsel, advisors, agents and attorneys-in-fact (including the agents and attorneys-in-fact referred to in Section 7) (together, "Representatives") as required in connection with the performance of the obligations of the Lockbox Bank under this Lockbox Agreement, provided that the Lockbox Bank shall notify its Representatives of the non-disclosure obligations of this Section 30 with respect to such Confidential Information and shall be liable for any breach by its Representatives of such non-disclosure obligations.

(b)    In addition to the disclosures permitted by Section 30(a), the Lockbox Bank shall be authorized to disclose Confidential Information where such disclosure is made (i) in connection with the exercise of the rights of the Lockbox Bank under the Lockbox Agreement or the Fee Agreement, (ii) with the consent of the applicable counterparty, (iii) in order to comply with any subpoena, order, regulation, ruling or request of any judicial, administrative or legislative body or committee or any self-regulatory body (including any securities or commodities exchange or the National Association of Securities Dealers, Inc.), or (iv) otherwise as required by applicable law or regulation.

(c)    In the event the Lockbox Bank receives a request to disclose Confidential Information by order from a court or other formal legal process pursuant to Section 30(b)(iii), it shall (i) exercise commercially reasonable efforts to notify the applicable counterparty of such request, to the extent not prohibited by law; (ii) if the applicable counterparty requests, cooperate with the counterparty at the counterparty's expense; and (iii) disclose only the portion of the counterparty's Confidential Information that is required to be disclosed under such law, regulation or order.

(d)    For purposes of this Section 30, Confidential Information shall not include information which (i) is or becomes part of the public domain other than as a result of breach of this Lockbox Agreement by the Lockbox Bank or its Representatives, (ii) was known or acquired by the Lockbox Bank prior to receipt from the applicable counterparty, (iii) is subsequently obtained by the Lockbox Bank from a third party not known by the Lockbox Bank to have an obligation to the applicable counterparty to maintain the confidentiality of the information, (iv) is developed independently by or for the Lockbox Bank, without reference to Confidential Information, or (v) is generally known by persons in the banking, technology, securities or financial services industries.

## Section 31.    Government Contract Clauses.

(a)    The Lockbox Bank undertakes to obey the laws, regulations, opinions, circulars, executive orders or any other norms promulgated by the Commonwealth of Puerto Rico which are applicable to it.

(b)     The Lockbox Bank certifies that no official or employee of the Government has a direct or indirect economic interest in its rights under this Lockbox Agreement, as mandated by the Law of Governmental Ethics, Act No. 1 of January 3, 2012.

(c)     The Lockbox Bank certifies that, as of the effective date of this Lockbox Agreement, it is not aware of any relationship which would constitute a conflict of interest with respect to this Lockbox Agreement.

(d)     PRIDCO shall remit a copy of this Lockbox Agreement to the Office of the Comptroller of Puerto Rico within fifteen (15) days following the date of execution of this Lockbox Agreement. No provision or consideration under this Lockbox Agreement may be demanded until the same has been filed for registration in the Office of the Comptroller of Puerto Rico, in accordance with the mandate of Act No. 18 of October 30, 1975, as amended.

[SIGNATURE PAGES FOLLOW]

14

**IN WITNESS WHEREOF**, the parties hereto have caused this Lockbox Agreement to be duly executed as of the date first written above.

LOCKBOX BANK:

CITIBANK, N.A., as Lockbox Bank
EIN:
By:

Name: **Marion O'Connor**
Title: Vice President

PAYING AGENT:

CITIBANK, N.A., as Paying Agent
EIN:
By:

Name: **Marion O'Connor**
Title: Vice President

GOVERNMENT OF PUERTO
RICO:

DEPARTMENT OF THE TREASURY
E1N:

By: ＿ Zaregoz665

Name: Juan Zaragoza Gómez
Title: Secretary

DEPARTMENT OF ECONOMIC DEVELOPMENT AND
COMMERCE

By:_____

Name: Alberto Bacó Bagué
Title: Secretary

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

By:_____

Name: Antonio L. Medina Comas
Title: Executive Director

DEPARTMENT OF AGRICULTURE

By:_____

Name: Myrna Comas Pagan
Title: Secretary

OFFICE OF MANAGEMENT AND BUDGET

By:_____

Name: Luiz F. Cruz Batista
Title: Executive Director

GOVERNMENT DEVELOPMENT BANK FOR PUERTO
RICO

By:_____

Name: Melba I. Acosta Febo
Title: President

GOVERNMENT OF PUERTO
RICO:

DEPARTMENT OF THE TREASURY

By:_____

Name: Juan Zaragoza Gómez

Title: Secretary

DEPARTMENT OF ECONOMIC DEVELOPMENT AND
COMMERCE - EIN:

By:_____

Name: Alberto Bacó Bagué

Title: Secretary

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

By:_____

Name: Antonio L. Medina Comas

Title: Executive Director

DEPARTMENT OF AGRICULTURE

By:_____

Name: Myrna Comas Pagan

Title: Secretary

OFFICE OF MANAGEMENT AND BUDGET

By:_____

Name: Luiz F. Cruz Batista

Title: Executive Director

GOVERNMENT DEVELOPMENT BANK FOR PUERTO
RICO

By:_____

Name: Melba I. Acosta Febo

Title: President

GOVERNMENT OF PUERTO RICO:

DEPARTMENT OF THE TREASURY

By:_____
Name: Juan Zaragoza Gómez
Title: Secretary

DEPARTMENT OF ECONOMIC DEVELOPMENT AND COMMERCE

By:_____
Name: Alberto Bacó Bagué
Title: Secretary

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY
E/N.

By:_____
Name: Antonio L. Medina Comas
Title: Executive Director

DEPARTMENT OF AGRICULTURE

By:_____
Name: Myrna Comas Pagan
Title: Secretary

OFFICE OF MANAGEMENT AND BUDGET

By:_____
Name: Luiz F. Cruz Batista
Title: Executive Director

GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO .

By:_____
Name: Melba I. Acosta Febo
Title: President

GOVERNMENT OF PUERTO RICO:

DEPARTMENT OF THE TREASURY

By:_____

Name: Juan Zaragoza Gómez

Title: Secretary

DEPARTMENT OF ECONOMIC DEVELOPMENT AND COMMERCE

By:_____

Name: Alberto Bacó Bagué

Title: Secretary

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

By:_____

Name: Antonio L. Medina Comas

Title: Executive Director

DEPARTMENT OF AGRICULTURE

EIN:

By: *Myrna Comas Pagan*

Name: Myrna Comas Pagan

Title: Secretary

OFFICE OF MANAGEMENT AND BUDGET

By:_____

Name: Luiz F. Cruz Batista

Title: Executive Director

GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO

By:_____

Name: Melba I. Acosta Febo

Title: President

GOVERNMENT OF PUERTO RICO:

DEPARTMENT OF THE TREASURY

By:_____

Name: Juan Zaragoza Gómez

Title: Secretary

DEPARTMENT OF ECONOMIC DEVELOPMENT AND COMMERCE

By:_____

Name: Alberto Bacó Bagué

Title: Secretary

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

By:_____

Name: Antonio L. Medina Comas

Title: Executive Director

DEPARTMENT OF AGRICULTURE

By:_____

Name: Myrna Comas Pagan

Title: Secretary

OFFICE OF MANAGEMENT AND BUDGET
EIN·

By:_____

Name: Luis F. Cruz Batista

Title: Director

GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO

By:_____

Name: Melba I. Acosta Febo

Title: President

[Signature Page to Lockbox Agreement]

GOVERNMENT OF PUERTO RICO:

DEPARTMENT OF THE TREASURY

By:_____

Name: Juan Zaragoza Gómez
Title:  Secretary

DEPARTMENT OF ECONOMIC DEVELOPMENT AND COMMERCE

By:_____

Name: Alberto Bacó Bagué
Title:  Secretary

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

By:_____

Name: Antonio L. Medina Comas
Title:  Executive Director

DEPARTMENT OF AGRICULTURE

By:_____

Name: Myrna Comas Pagan
Title:  Secretary

OFFICE OF MANAGEMENT AND BUDGET

By:_____

Name: Luiz F. Cruz Batista
Title:  Executive Director

GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO  E/N.

By:_____

Name: Melba I. Acosta Febo
Title:  President

TRUSTEE:                    BANCO POPULAR DE PUERTO RICO, as Trustee
                            $E I N$

                            By:_____
                            Name: Héctor Rivera Rivera
                            Title: Vice President and Trust Officer

ANNEX A
to Lockbox Agreement

**DEFINITIONS**

"AAA" shall have the meaning given to it in Section 27(b).

"Account" shall have the meaning given to it in Section 2(a).

"Account Instruction" shall mean, with respect to the Account, any order, direction or instruction concerning or directing the disposition, transfer, withdrawal, disbursement or redemption of any Deposit Funds in or credited to the Account, or otherwise relating to any matters pertaining to or concerning the Account or any Deposit Funds therein or credited thereto.

"Applicable Month" shall mean the month in which occurred the sale of rum produced in Puerto Rico, as reported in TTB Form 5110.28, or any substitute form providing substantially the same information, that produced excise tax revenue collected by the U.S. Government.

"Authorized Representative" shall have the meaning given to it in Section 16(b).

"Beneficiary" shall have the meaning given to it in the recitals of this Lockbox Agreement.

"Beneficiary Invoice" shall mean a Monthly Beneficiary Invoice or a Tax Extender Beneficiary Invoice.

"Business Day" shall mean any day that is not a Saturday, Sunday or other day on which commercial banks in New York City or San Juan, Puerto Rico are authorized or required by law to remain closed.

"Code" shall mean the United States Internal Revenue Code of 1986, as amended.

"Collateral Agent" shall have the meaning given to it in the recitals of this Lockbox Agreement.

"Confidential Information" shall have the meaning given to it in Section 30(a).

"Conservation Trust" shall mean the Puerto Rico Conservation Trust Fund.

"Conservation Trust Monthly Amount" shall mean, with respect to each Cover Over Payment that is not a Tax Extender Payment, a positive amount equal to one-sixth (1/6) of the difference of (x) the number of proof gallons used in calculating the Puerto Rico Rum COR included in such Cover Over Payment as set forth in the applicable Government Certification, *multiplied* by the lesser of (A) the Cover Over Rate then in effect as set forth in the applicable Government Certification and (B) $13.25, *minus* (y) such number of proof gallons *multiplied* by $10.50.

A-1

"Conservation Trust Tax Extender Amount" shall mean, with respect to any Tax Extender Payment, a positive amount equal to one-sixth (1/6) of the Puerto Rico Rum COR included in such Tax Extender Payment, as set forth in the applicable Government Certification.

"Cover Over Payment" shall mean the payment by the U.S. Government to the Account of Cover Over Revenues, including any Tax Extender Payment, from and after March 1, 2015.

"Cover Over Rate" shall mean (i) with respect to any Cover Over Revenue attributable to rum, the maximum rate at which such Cover Over Revenue is covered into the treasuries of Puerto Rico and the U.S. Virgin Islands pursuant to Section 7652(f) of the Code, and (ii) with respect to any Cover Over Revenue attributable to articles of merchandise other than rum, the rate of tax imposed on the article of merchandise pursuant to Section 7652(a)(1) of the Code.

"Cover Over Report" shall mean the report of collections of federal excise tax revenues pursuant to Section 7652 of the Code and the amount thereof remitted by the U.S. Government to the Department of the Treasury of Puerto Rico, in substantially the form of Exhibit A hereto. "Cover Over Report" shall also mean any written communication setting forth the amount of any Tax Extender Payment if the amount of such Tax Extender Payment is not included in a Cover Over Report in substantially the form of Exhibit A hereto.

"Cover Over Revenues" or "COR" shall mean the federal excise tax revenues payable to the Government by the U.S. Government pursuant to Section 7652 of the Code or any other statute or regulation which may be substituted for Section 7652 in the future.

"Deposit Account Control Agreement" shall have the meaning given to it in the recitals of this Lockbox Agreement.

"Deposit Funds" shall mean cash or checks.

"Enabling Act" shall have the meaning given to it in the preamble to this Lockbox Agreement.

"Enforcement Expenses" shall mean expenses incurred by the United States Department of Treasury in connection with the enforcement in Puerto Rico of the provisions of Subtitle E (Sections 5001 through 5891) and Section 7652(a) of the Code and reimbursed from Cover Over Revenues pursuant to Section 5314(a)(4) of the Code.

"Excess COR Payment" shall have the meaning given to it in Section 15(b).

"Fee Agreement" shall mean the agreement between the Lockbox Bank and one or more Rum Producers, dated the date hereof, with respect to the payment of fees for the Lockbox Bank's services under this Lockbox Agreement.

"Fiscal Year" shall mean the Government's fiscal year of July 1 through June 30.

"Government" shall have the meaning given to it in the preamble to this Lockbox Agreement.

"Government Certification" shall mean a certificate delivered by the Secretary of Treasury to the Lockbox Bank pursuant to Section 4(b) in substantially the form of Exhibit B.

"Government Other Rum Producers' Certification" shall mean a certificate in substantially the form of Exhibit E delivered by PRIDCO to the Lockbox Bank (i) in respect of an Other Rum Producer Invoice (or an amendment thereto) attached to such certificate, certifying, with respect to such Other Rum Producer Invoice or amendment, that the amounts set forth thereon have been calculated in a manner consistent with the Rum Producer Agreement between the Government and the applicable Other Rum Producer and are due and payable by the Government to such Other Rum Producer or (ii) certifying as to any adjustments that may have been made pursuant to "true up" or similar provisions contained in the applicable Rum Producer Agreement with an Other Rum Producer, including amounts that may have been paid by the Government to an Other Rum Producer in respect of an outstanding Other Rum Producer Invoice from funds not received in the Lockbox Account.

"Governmental Authority" shall mean any federal, Puerto Rico, commonwealth, state, municipal or local governmental entity, authority or agency, department, instrumentality, court, tribunal, regulatory commission or other body, whether legislative, judicial or executive (or a combination or permutation thereof).

"Lockbox Agreement" shall have the meaning given to it in the preamble to this Lockbox Agreement.

"Lockbox Bank" shall have the meaning given to it in the preamble to this Lockbox Agreement.

"Monthly Beneficiary Invoice" shall mean an invoice in substantially the form of Exhibit C delivered by a Beneficiary to PRIDCO and (following the date hereof) the Lockbox Bank with respect to rum sales reportable on TTB Form 5110.28, or any substitute form providing substantially the same information, for each Applicable Month beginning with the month of November 2014, calculated at the Cover Over Rate in effect during such Applicable Month, and including evidence of the payment of the applicable rum excise taxes by such Beneficiary for such Applicable Month, as such invoice may be amended from time to time.

"Monthly Other Rum Producer Invoice" shall mean an invoice delivered by an Other Rum Producer to PRIDCO and (following the date hereof) to the Lockbox Bank by PRIDCO together with a Government Other Rum Producers' Certification, with respect to rum sales reportable on TTB Form 5110.28, or any substitute form providing substantially the same information, for each Applicable Month beginning with the month of November 2014, calculated at the Cover Over Rate in effect during such Applicable Month, and including evidence of the payment of the applicable rum excise taxes by such Other Rum Producer for such Applicable Month, as such invoice may be amended from time to time.

"Non-Rum COR" shall mean, with respect to each Cover Over Payment, the portion of such Cover Over Payment that is not (i) Other Rum COR or (ii) Puerto Rico Rum COR.

A-3

"Other Rum COR" shall mean with respect to each Cover Over Payment, the portion of such Cover Over Payment comprised of Cover Over Revenue payable by the U.S. Government to the Government pursuant to Section 7652(e) of the Code.

"Other Rum Producer" shall mean any Rum Producer that is a party to a Rum Producer Agreement as of the date hereof but is not a Beneficiary as of the date hereof.

"Other Rum Producer Invoice" shall mean a Monthly Other Rum Producer Invoice or a Tax Extender Other Rum Producer Invoice.

"Parent" shall mean a corporation, company or other entity which owns, possesses or controls, directly or indirectly, now or hereafter, (a) all or substantially all of the assets of another corporation, company or other entity, (b) securities representing more than fifty percent (50%) of the voting power of another corporation, company or other entity, and (c) the power to direct or cause the direction of management or policies (whether through ownership of securities or partnership or other ownership interests, by contract, or otherwise) of another corporation, company or other entity.

"Paying Agent" shall have the meaning given to it in the recitals of this Lockbox Agreement.

"Person" shall mean any individual or entity (including any corporation, limited partnership, joint venture, limited liability company, estate, trust or other body).

"PRCTA" shall mean the Puerto Rico Commercial Transactions Act as in effect from time to time in the Commonwealth of Puerto Rico.

"PRIDCO" shall mean the Puerto Rico Industrial Development Company or any successor entity.

"PRIFA" shall mean the Puerto Rico Infrastructure Financing Authority.

"Pro Rata Basis" shall mean, with respect to a disbursement pursuant to Section 5(f), an amount with respect to each of the Paying Agent and the Government equal to (i) in the case of the Paying Agent, the Unpaid Beneficiaries' Amount and (ii) in the case of the Government, the Unpaid Other Rum Producers' Amount, in each such case *multiplied* by the Factor. For purposes of this definition, the "Factor" is equal to the lesser of (A) the quotient of (x) the total amount of funds available for disbursement pursuant to Section 5(f) *divided* by (y) the sum of the Unpaid Beneficiaries' Amount and the Unpaid Other Rum Producers' Amount and (B) 1.0.

"Puerto Rico" shall mean the Commonwealth of Puerto Rico.

"Puerto Rico Rum COR" shall mean, with respect to each Cover Over Payment, the portion of such Cover Over Payment comprised of Cover Over Revenue payable by the U.S. Government to the Government pursuant to Section 7652(a)(3) of the Code in respect of rum produced in Puerto Rico.

A-4

"Reduction" shall mean any offset or other reduction in the amount of Cover Over Revenues paid to the Government by the U.S. Government, including as a result of amounts owed, or alleged to be owed, to any United States Governmental Authority by the Government or any Governmental Authority or affiliated entity thereof; provided, however, that a "Reduction" shall not include any reduction that is made by the TTB as an adjustment to the amount of Cover Over Revenues previously paid due to a calculation error determined by an audit or other administrative review.

"Remedy" shall have the meaning given to it in Section 22(a).

"Representatives" shall have the meaning given to it in Section 30(a).

"Rum COR" shall mean Other Rum COR *plus* Puerto Rico Rum COR.

"Rum Producer Agreements" shall have the meaning given to it in the recitals of this Lockbox Agreement.

"Rum Producers" shall have the meaning given to it in the recitals of this Lockbox Agreement.

"S&T Trust" means the Puerto Rico Science and Technology Trust.

"Secured Parties" shall have the meaning given to it in the recitals of this Lockbox Agreement.

"Security Agreement" shall have the meaning given to it in the recitals of this Lockbox Agreement.

"Tax Extender Beneficiary Invoice" shall mean an invoice in substantially the form of Exhibit D delivered by a Beneficiary to PRIDCO and the Lockbox Bank on or after the date hereof, with respect to rum sales reportable on TTB Form 5110.28 for each Applicable Month to be included in a Tax Extender Payment and calculated using the Cover Over Rate to be used in calculating such Tax Extender Payment, as such invoice may be amended from time to time.

"Tax Extender Other Rum Producer Invoice" shall mean an invoice delivered by an Other Rum Producer to PRIDCO on or after the date hereof, and forwarded by PRIDCO to the Lockbox Bank together with a Government Other Rum Producers' Certification, with respect to rum sales reportable on TTB Form 5110.28 for each Applicable Month to be included in a Tax Extender Payment and calculated using the Cover Over Rate to be used in calculating such Tax Extender Payment, as such invoice may be amended from time to time.

"Tax Extender Payment" shall mean the payment by the U.S. Government to the Account of Cover Over Revenues resulting from a retroactive increase in the Cover Over Rate above the Cover Over Rate specified in Section 7652(f) of the Code (such Cover Over Rate being $10.50 per proof gallon as of the date of this Lockbox Agreement) with respect to any Applicable Month from and after January 1, 2015.

"Trust Agreement" shall have the meaning given to it in the recitals of this Lockbox Agreement.

"Trustee" shall have the meaning given to it in the preamble to this Lockbox Agreement.

"TTB" shall mean the U.S. Alcohol and Tobacco Tax and Trade Bureau.

"Transaction Documents" means this Lockbox Agreement, the Trust Agreement, the Security Agreement and the Deposit Account Control Agreement.

"United States" shall mean the continental United States, Hawaii and Alaska.

"Unpaid Beneficiaries' Amount" shall mean, as of any date of determination, an amount equal to (i) the aggregate amount set forth as due to a Beneficiary pursuant to Beneficiary Invoices delivered by the Beneficiaries to PRIDCO and (following the date hereof) the Lockbox Bank as of the fifth (5th) Business Day immediately preceding the date of determination, *minus* (ii) the sum of (x) all amounts previously paid to the Paying Agent pursuant to Section 5(f)(i), *plus* (y) all amounts that the Government and the Paying Agent have certified in joint Account Instructions as of such Business Day as having been paid by the Government to a Beneficiary in respect of an outstanding Beneficiary Invoice, *plus* (iii) any amounts that the Government and the Paying Agent certify in a joint Account Instruction are to be added to the Unpaid Beneficiaries' Amount on account of a Rum Producer having entered into a new Rum Producer Agreement and become a Beneficiary or an Other Rum Producer having become a Beneficiary. The "Unpaid Beneficiaries' Amount" shall reflect (i) all amendments of Beneficiary Invoices delivered to PRIDCO and the Lockbox Bank not later than the fifth (5th) Business Day immediately preceding the date of determination and (ii) all adjustments that may be made pursuant to "true up" or similar provisions contained in the Rum Producer Agreements and the Trust Agreement (including Sections 4.3.2 and 4.5 thereof) jointly certified to the Lockbox Bank by PRIDCO and the applicable Beneficiary, including any amounts that have been paid by the Government to a Beneficiary in respect of an outstanding Beneficiary Invoice from funds not received in the Account. As of the date hereof, the Unpaid Beneficiaries' Amount is $26,030,156.

"Unpaid Conservation Trust Amount" shall mean, as of any date of determination, an amount equal to (i) the sum of, without duplication, (x) the aggregate Conservation Trust Monthly Amounts calculated with respect to Cover Over Payments beginning May 2015, *plus* (y) the aggregate Conservation Trust Tax Extender Amounts relating to Tax Extender Payments received by the Government after March 2015, *minus* (ii) the sum of all amounts previously paid to the Conservation Trust pursuant to Section 5(e) and Section 5(g)(iii).

"Unpaid Other Rum Producers' Amount" shall mean, as of any date of determination, an amount equal to (i) the aggregate amount set forth as due to an Other Rum Producer pursuant to Other Rum Producer Invoices delivered by the Other Rum Producers to PRIDCO and (following the date hereof) to the Lockbox Bank by PRIDCO together with a Government Other Rum Producers' Certification as of the fifth (5th) Business Day immediately preceding the date of determination *minus* (ii) the sum of (x) all amounts previously paid to the Paying Agent pursuant to Section 5(f)(ii) *plus* (y) all amounts that the Government has certified in Government Other

A-6

Rum Producers' Certifications as of such Business Day as having been paid by the Government to an Other Rum Producer in respect of an Other Rum Producer Invoice, *minus* (iii) any amounts that the Government and the Paying Agent have certified in joint Account Instructions as of such Business Day as having been added to the Unpaid Beneficiaries Amount as a result of an Other Rum Producer having become a Beneficiary. The "Unpaid Other Rum Producers' Amount" shall reflect (i) all amendments of Other Rum Producer Invoices set forth in a Government Other Rum Producers' Certification not later than the fifth (5th) Business Day immediately preceding the date of determination and (ii) all adjustments that may be made pursuant to "true up" or similar provisions contained in the Rum Producer Agreements with Other Rum Producers, including any amounts that have been paid by the Government to an Other Rum Producer in respect of an outstanding Other Rum Producer Invoice from funds not received in the Account, as certified to the Lockbox Bank by PRIDCO in a Government Other Rum Producers' Certification. As of the date hereof, the Unpaid Other Rum Producers' Amount is $4,499,415.10.

"U.S. Government" shall mean the federal government of the United States.

"Waiver Date" shall mean the date on which the Government obtains the waiver of the U.S. Government to allow disclosure of the information contained in the Cover Over Report to the Lockbox Bank.

SCHEDULE 1
to Lockbox Agreement

WIRE TRANSFER INSTRUCTIONS

(c) Wire instructions for each of the Secretary of Treasury, the Paying Agent and the Conservation Trust are as follows:

| Entity | Bank Name | ABA# | Account Name | Account Number | Reference |
|--------|-----------|------|--------------|----------------|-----------|
| Secretary of Treasury | Government Development Bank of Puerto Rico | 0215-0211-8 | Department of Treasury | 32520006 | |
| Paying Agent | CITIBANK, NA. | 0210-0008-9 | Escrow Concentration Account | 36855852 | FFC Trust Account No. 11451000 |
| Conservation Trust | Merrill Lynch, Guaynabo, PR | 026-00959-3 | Puerto Rico Conservation Trust | 5PR-02298 | |
| PRIDCO | Citibank Puerto Rico | 0215-0204-0 | PRIDCO Puerto Rican Rums | 0/400017/212 | |

1-1

SCHEDULE 2
to Lockbox Agreement

## NOTICES

### Government

Notice Address:

Department of the Treasury
Intendente Ramírez Building
10 Paseo Covadonga, 8th Floor
San Juan, Puerto Rico 00902
Attention: Secretary
Fax: (787) 725-7303

With a copy to:

Department of the Treasury
Legal Department
Intendente Ramírez Building
10 Paseo Covadonga, Office 801
San Juan, Puerto Rico 00902
Attention: Assistant Secretary for Legal Affairs
Fax: (787) 721-0957

### Trustee

Notice Address:

Banco Popular de Puerto Rico
Fiduciary Service Division
209 Muñoz Rivera Avenue
North Building 4th Floor
San Juan, Puerto Rico 00918
Attention: Hector Rivera, Esq./Jorge Velez
Fax: (787) 281-4099

### Lockbox Bank

Notice Address:

Citibank, N.A.
480 Washington Boulevard, 18th Floor
Jersey City, NJ 07310
Attn: Marion O'Connor

Fax: (973) 461-7191 or (973) 461-7192

SCHEDULE 3
to Lockbox Agreement

**Government**
**Authorized Representatives and Telephone Number(s) for Call-Backs**

**Solely with respect to the Department of the Treasury:**

| Authorized Representative Name | Specimen Signature | Telephone Number |
|---|---|---|
| Ana García Noya | | |
| | | |

**Solely with respect to the Puerto Rico Industrial Development Company:**

| Authorized Representative Name | Specimen Signature | Telephone Number |
|---|---|---|
| Julio López | | 787-637-8448 |
| Julio Benítez | | 787-366-3105 |

## SCHEDULE 3
## to Lockbox Agreement

### Government
### Authorized Representatives and Telephone Number(s) for Call-Backs

### Solely with respect to the Department of the Treasury:

| Authorized Representative Name | Specimen Signature | Telephone Number |
|---|---|---|
| Ana García Noya | | |
| | | |
| | | |
| | | |

### Solely with respect to the Puerto Rico Industrial Development Company:

| Authorized Representative Name | Specimen Signature | Telephone Number |
|---|---|---|
| Julio C. López Iglesias | | 787-637-8448 |
| Julio R. Benítez Torres | | 787-366-3105 |
| | | |
| | | |

## SCHEDULE 4
to Lockbox Agreement

## Paying Agent
**Authorized Representatives and Telephone Number(s) for Call-Backs**

| Authorized Representative Name | Specimen Signature | Telephone Number |
|---|---|---|
| Marion O'Connor | Marion aconos | (201) 763-3055 |
| Jenny Cheng | | (212) 816-5648 |
| Camille Tomao | | (212) 816-5859 |

4-1

# EXHIBIT A

## FORM OF COVER OVER REPORT

COVER OVER WORKSHEET
COVER OVER TO PUERTO RICO AND THE VIRGIN ISLANDS
[Month] [Year]

| COLLECTIONS: | PUERTO RICO | | VIRGIN ISLANDS | |
|---|---|---|---|---|
| (1) Bulk Rum | $_____ | | $_____ | |
| (2) Cased Rum | $_____ | | $_____ | |
| (3) Other Rum | $_____ | | $_____ | |
| (2) Beer | $_____ | | $_____ | |
| (2) Wine | $_____ | | $_____ | |
| (4) Customs | $_____ | | $_____ | |
| Adjustment: Customs | $_____ | | $_____ | Adjustment: Customs |
| Adjustment: Bulk | $_____ | | $_____ | Adjustment: Bulk (2/14") |
| Adjustment: Estimated Payment | $_____ | | $_____ | Dept of Interior Data Sent |
| Adjustment: Other Rum | $_____ | | $_____ | Adjustment: Other Rum |
| Adjustment: Estimated Payment | $_____ | | $_____ | Other Rum From TTB |

| TOTAL COLLECTIONS: | | $ | | $ |
|---|---|---|---|---|

| DEDUCTIONS: | | | TOTAL TO INTERIOR | $ |
|---|---|---|---|---|
| Enf. Exp (A7) | $___ | | TOTAL OTHER RUM | $ |
| Deduction | $___ | | | |
| Deduction | $___ | | | |

| TOTAL DEDUCTIONS: | | $ | |
|---|---|---|---|
| TOTAL COVER OVER: | | $ | $ |
| TOTAL COLLECTIONS: | | $ | |

| (A1) BULK RUM IN PROOF GALLONS | | | |
|---|---|---|---|
| ATF F 5600.8 | Puerto Rico | Virgin Islands | Other Imp. Rum |
| (5) Total Prf Gals | | | |

| (1) TOTAL @ $10.50 | $ | $ | $ |
|---|---|---|---|
| TOTAL @ $13.50 | $ | $ | $ |
| TOTAL @ $13.25 | $ | $ | $ |

| OTHER RUM DATA WITH PERCENTAGES FOR PUERTO RICO & THE VIRGIN ISLANDS | | | |
|---|---|---|---|
| [Month and Year] | | | |
| COLLECTIONS: | OTHER RUM (pg) | Puerto Rico | Virgin Islands |
| (5) Bulk @ 10.50 | $ | $ | $ |
| (A5) Census @ 10.50 | $ | $ | $ |
| Subtotal | $ | $ | $ |

A-1

| DEDUCTIONS | $ |
|---|---|

| | | | |
|---|---|---|---|
| TOTAL p.g. | $ | $ | $ |

| | | | |
|---|---|---|---|
| (3) TOTAL @ $10.50 | | $ | $ |
| TOTAL @ $13.50 | | $ | $ |
| TOTAL @ $13.25 | | $ | $ |

| (2) PR CASED GOODS: | Distilled Spirits | Wine | Beer |
|---|---|---|---|
| proof gallons @ 10.50 | $ | $ | $ |

| (4) CUSTOMS FIGURES | Puerto Rico | Virgin Islands |
|---|---|---|
| Dollars | $ | $ |

A-2

## EXHIBIT B

## FORM OF GOVERNMENT CERTIFICATION

## [DATE]

## GOVERNMENT CERTIFICATION PURSUANT TO SECTION 4(b) OF THE LOCKBOX AGREEMENT

I, [representative], being a duly authorized representative of the Secretary of Treasury of Puerto Rico (the "Secretary"), hereby certify, pursuant to Section 4(b) of the Lockbox Agreement, dated as of May 5, 2015 (the "Lockbox Agreement"), by and among Citibank, N.A., a national banking association (the "Lockbox Bank"), Banco Popular de Puerto Rico, a Puerto Rico banking entity (not in its individual capacity but as trustee under the Trust Agreement (as defined in the Lockbox Agreement), the "Trustee"), Citibank, N.A., a national banking association (not in its individual capacity but as paying agent under the Trust Agreement, the "Paying Agent") and the Government of Puerto Rico (the "Government") as follows:

## Part A[1]

The Cover Over Report for net excise tax collections due to the Government (the "Report") for the month of [insert month and year on the cover letter accompanying the Report], was received by the Secretary of Treasury on [date].

As set forth in the Report, (i) the amount of Other Rum COR due to the Government and the number of proof gallons of rum used in determining such Other Rum COR, (ii) the amount of Non-Rum COR included in the Cover Over Payment to which such Report relates and the customs figures, Cover Over Revenues attributable to beer sales and Cover Over Revenues attributable to wine sales that constitute such Non-Rum COR and (iii) the amount of Puerto Rico Rum COR due to the Government and the number of proof gallons of rum and the Cover Over Rate used in determining such Puerto Rico Rum COR, is in each case, prior to any adjustments or deductions, as set forth in the table below:

---

[1] Part A to be included (i) in connection with a Cover Over Report that does not reflect a Tax Extender Payment or (ii) in connection with a Cover Over Report that reflects a Tax Extender Payment, but in such case only with respect to the portion of such Cover Over Report that does not relate to such Tax Extender Payment.

| Product | Number of Proof Gallons | Cover Over Rate | COR |
|---|---|---|---|
| Other Rum | [●] pg | $[●] ppg | Other Rum COR: $[●] |
| Non-Rum | N/A | N/A | Non-Rum COR: $[●] |
| | | | Customs figures: $[●] : |
| | | | COR attributable to beer sales: $[●] |
| | | | COR attributable to wine sales: $[●] |
| Puerto Rico Rum | [●] pg | $[●] ppg | Puerto Rico Rum COR: $[●] |

As set forth in the Report, the total amount of Cover Over Revenues (after adjustments and deductions) due to the Government equals **$[●]**.

[No Reduction is reflected in the total amount of Cover Over Revenues due to the Government as set forth in the Report.][A Reduction in the amount of $_____ is reflected in the total amount of Cover Over Revenues due to the Government as set forth in the Report.][2]

### Part B[3]

As set forth in the Report, a Tax Extender Payment in the amount of $[●] has been or will be made.

(i) The amount of Other Rum COR included or to be included in such Tax Extender Payment and the Cover Over Rate for such Other Rum COR and (ii) the amount of Puerto Rico Rum COR included or to be included in such Tax Extender Payment and the Cover Over Rate for such Puerto Rico Rum COR are in each case as set forth in the table below:

---

[2] First sentence to be included unless the Cover Over Report reflects a Reduction. In that case the second sentence should be included, indicating the amount of the Reduction.

[3] Part B to be included solely in connection with the portion of any Cover Over Report that relates to a Tax Extender Payment.

| Product | Cover Over Rate | Amount of COR included in Tax Extender Payment |
|---|---|---|
| Other Rum | $[●] ppg | Other Rum COR: $[●] |
| Puerto Rico Rum | $[●] ppg | Puerto Rico Rum COR: $[●] |

## Part C

As set forth in the Report, the Enforcement Expenses deducted from Cover Over Revenues as reimbursement to the United States Department of Treasury equals **$[●].**

All capitalized terms not defined herein shall have the meaning ascribed to them in the Lockbox Agreement.

IN WITNESS WHEREOF, the Secretary has caused this Government Certification to be executed by [representative] as of the date first written above.

DEPARTMENT OF THE TREASURY

By:_____
    Name: [representative]
    Title: [position]

B-3

## EXHIBIT C

## FORM OF MONTHLY BENEFICIARY INVOICE

[Rum Producer Letterhead]

### INVOICE

Executive Director
Puerto Rico Industrial Development Company
[address]

DATE: [date]
NUMBER: [number]

---

[Agreement] between [Rum Producer] (the "Rum Producer") and the Government of Puerto Rico
(the "Government") dated as of [date] (the "Agreement"). All capitalized terms not defined
herein shall have the meaning ascribed to them in the Agreement.

| | | |
|---|---|---|
| (a) | Proof gallons of [Rum Producer] Rum Sales in month of [month][year] | [●] pg |
| (b) | Applicable Cover Over Rate | $[●] ppg[1] |
| (c) | Cover Over Revenues attributable to [Rum Producer] Rum Sales at applicable Cover Over Rate | $[●][2] |
| (d) | Applicable percentage of Cover Over | [●]%[3] |

---

[1] To be Cover Over Rate in effect for Applicable Month to which Monthly Beneficiary Invoice
relates.

[2] To equal proof gallons in line item (a) multiplied by applicable Cover Over Rate in line item
(b).

C-1

Revenues under Section [●] of the
Agreement

(e) Amount due and payable to [Rum                    $[●][4]
Producer]

I, being a duly authorized representative of [Rum Producer], hereby certify that the amount
requested above represents amounts due relating to Cover Over Revenues under the Agreement.

By: _____
[Name]
[Title]

cc:    Citibank, N.A.
       [address]

_____

(Cont'd from preceding page)

[3] To equal applicable percentage to be applied to Cover Over Revenues attributable to rum sales
of the applicable Rum Producer under the applicable Rum Producer Agreement.

[4] To equal dollar amount resulting from application of applicable percentage of Cover Over
Revenues in line item (d) to Cover Over Revenues in line item (c).

C-2

## REQUEST FOR DISBURSEMENT

Executive Director
Puerto Rico Industrial Development Company
[address]

DATE:    [date]

---

[Agreement] between [Rum Producer] (the "Rum Producer") and the Government of Puerto Rico
(the "Government") dated as of [date] (the "Agreement"). All capitalized terms not defined
herein shall have the meaning ascribed to them in the Agreement.

|  | **Invoice Number** | **Invoice Date** | **Invoice Amount** |
|---|---|---|---|
| Amount due and payable to [Rum Producer], [●]% of Cover Over Revenues attributable to [Rum Producer] Rum Sales under Section [●] of the Agreement | [●] | [date] | $[●] |

I, being a duly authorized representative of [Rum Producer], hereby certify that the above is true
and correct.

By: _____
[Name]
[Title]

C-3

## CERTIFICATION UNDER PENALTY OF ABSOLUTE NULLITY

Executive Director
Puerto Rico Industrial Development Company
[address]

DATE:      [date]

REFERENCE: Invoice [●]

[Agreement] between [Rum Producer] the ("Rum Producer") and the Government of Puerto Rico (the "Government") dated as of [date] (the "Agreement").

I, being a duly authorized representative of [Rum Producer], hereby certify under penalty of nullity that no public servant of the Government, its respective subsidiaries or affiliates, will derive or obtain any benefit or profit of any kind from the contractual relationship which is the basis of this invoice. If such benefit or profit exists, the required waiver has been obtained prior to entering into the Agreement. The only consideration to be received in exchange for the delivery of goods or for services provided is the agreed upon price that has been negotiated with an authorized representative of the Government. The total amount shown on Invoice [●] is true and correct. The services have been rendered, and no payment has been received.

By: _____
[Name]
[Title]

Attachments:

- Copy of online confirmation of payments made by Rum Producer to the Internal Revenue Service in respect of excise taxes payable for the Applicable Month
- Copy of TTB Form 5110.28 filed with the U.S. Department of Treasury for the Applicable Month
- Copy of TTB Form 5110.31 for shipments received in the United States in the Applicable Month (unless provided to PRIDCO electronically)

C-4

## EXHIBIT D

## FORM OF TAX EXTENDER BENEFICIARY INVOICE

[Rum Producer Letterhead]

## INVOICE FOR TAX EXTENDER AMOUNTS FOR PERIOD FROM [MONTH], [YEAR] TO [MONTH], [YEAR]
i

Executive Director
Puerto Rico Industrial Development Company
[address]

DATE: [date]
NUMBER: [number]

[Agreement] between [Rum Producer] (the "Rum Producer") and the Government of Puerto Rico (the "Government") dated as of [date] (the "Agreement"). All capitalized terms not defined herein shall have the meaning ascribed to them in the Agreement.

| | | |
|---|---|---|
| (a) | Proof gallons of [Rum Producer] Rum Sales during period from [month] [year] to [month] [year] (the "Applicable Period") as detailed on Schedule A attached hereto | [•] pg |
| (b) | Cover Over Revenues for Applicable Period calculated at $[•]$^2$ ppg | $[•]$^3$ |
| (c) | Cover Over Revenues for Applicable Period calculated at $[•]$^4$ ppg | $[•]$^5$ |

---

[1] Period to reflect Applicable Months to which Tax Extender retroactively applies.

[2] To equal Cover Over Rate previously in effect during Applicable Period.

[3] To equal Cover Over Rate previously in effect during Applicable Period, multiplied by proof gallons in line item (a).

D-1

| | | |
|---|---|---|
| (d) | Difference in Cover Over Revenues (the "Tax Extender COR") | $[●][6] |
| (e) | Applicable percentage of Tax Extender COR under Section [●] of the Agreement | [●]%[7] |
| (f) | Amount due and payable to [Rum Producer] | $[●][8] |

I, being a duly authorized representative of [Rum Producer], hereby certify that the amount requested above represents amounts due relating to Tax Extender COR to be retroactively paid for the Applicable Period under the Agreement based on an amendment to Section 7652(f) of the United States Internal Revenue Code of 1986, as amended, that became effective on [date].

By: _____
[Name ]
[Title]

cc: Citibank, N.A.
    [address]

---

(Cont'd from preceding page)

[4] To equal Cover Over Rate retroactively in effect for Applicable Period following amendment to Section 7652(f) of the United States Internal Revenue Code of 1986, as amended.

[5] To equal Cover Over Rate retroactively in effect for Applicable Period, multiplied by proof gallons in line item (a).

[6] To equal Cover Over Revenues in line item (c) minus Cover Over Revenues in line item (b).

[7] To equal applicable percentage to be applied to Cover Over Revenues attributable to rum sales of the applicable Rum Producer under the applicable Rum Producer Agreement.

[8] To equal dollar amount resulting from application of applicable percentage of Cover Over Revenues in line item (e) to Tax Extender COR in line item (d).

D-2

## SCHEDULE A

### Schedule of Rum Producer Invoices for the Applicable Period

| Month / Year | Proof Gallons | Claim | Invoice |
|---|---|---|---|
| [Month] [Year] | [●] pg | $[●] | No. [●] |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Total for [●] to [●]⁹** | [Total] pg | $[Total] | N/A |

---

⁹ To be the Applicable Period.

D-3

## REQUEST FOR DISBURSEMENT

Executive Director
Puerto Rico Industrial Development Company
[address]

DATE: [date]

_____

[Agreement] between [Rum Producer] (the "Rum Producer") and the Government of Puerto Rico
(the "Government") dated as of [date] (the "Agreement"). All capitalized terms not defined
herein shall have the meaning ascribed to them in the Agreement.

|  | Invoice Number | Invoice Date | Invoice Amount |
|---|---|---|---|
| Amount due and payable to [Rum Producer], [●]% of Tax Extender COR under Section [●] of the Agreement | [●] | [date] | $[●] |

I, being a duly authorized representative of [Rum Producer], hereby certify that the above is true
and correct.

By: _____
[Name]
[Title]

D-4

## CERTIFICATION UNDER PENALTY OF ABSOLUTE NULLITY

Executive Director
Puerto Rico Industrial Development Company
[address]

DATE:     [date]

REFERENCE: Invoice [●]

[Agreement] between [Rum Producer] (the "Rum Producer") and the Government of Puerto Rico
(the "Government") dated as of [date] (the "Agreement")

I, being a duly authorized representative of [Rum Producer], hereby certify under penalty of
nullity that no public servant of the Government, its respective subsidiaries or affiliates, will
derive or obtain any benefit or profit of any kind from the contractual relationship which is the
basis of this invoice. If such benefit or profit exists, the required waiver has been obtained prior
to entering into the Agreement. The only consideration to be received in exchange for the
delivery of goods or for services provided is the agreed upon price that has been negotiated with
an authorized representative of the Government. The total amount shown on Invoice [●] is true
and correct. The services have been rendered, and no payment has been received.

By: _____
[Name ]
[Title]

Attachments:

- Copies of online confirmation of payments made by Rum Producer to the Internal
  Revenue Service in respect of excise taxes payable for the Applicable Period
- Copies of TTB Forms 5110.28 filed with the U.S. Department of Treasury for the
  Applicable Period

D-5

## **EXHIBIT E**

## **FORM OF GOVERNMENT OTHER RUM PRODUCERS' CERTIFICATION**

### [DATE]

### GOVERNMENT CERTIFICATION

I, [representative], being a duly authorized representative of the Puerto Rico Industrial Development Company ("PRIDCO"), hereby certify, pursuant to the Lockbox Agreement, dated as of May 5, 2015 (the "Lockbox Agreement"), by and among Citibank, N.A., a national banking association (the "Lockbox Bank"), Banco Popular de Puerto Rico, a Puerto Rico banking entity (not in its individual capacity but as trustee under the Trust Agreement (as defined in the Lockbox Agreement), the "Trustee"), Citibank, N.A., a national banking association (not in its individual capacity but as paying agent under the Trust Agreement, the "Paying Agent") and the Government of Puerto Rico (the "Government") as follows:

(1) with respect to each Other Rum Producer Invoice (or amendment thereto) attached hereto and set forth on Schedule 1 hereto, the amounts set forth thereon have been calculated in a manner consistent with the Rum Producer Agreement between the Government and the applicable Other Rum Producer and are due and payable by the Government to such Other Rum Producer; and

(2) the adjustments set forth on Schedule 2 hereto with respect to amounts payable to an Other Rum Producer have been made pursuant to "true up" or similar provisions contained in the Rum Producer Agreement with the applicable Other Rum Producer, as identified on Schedule 2, and are true and accurate calculations of such amounts.

All capitalized terms not defined herein shall have the meaning ascribed to them in the Lockbox Agreement.

IN WITNESS WHEREOF, PRIDCO has caused this Government Certification to be executed by [representative] as of the date first written above.

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

By:_____
Name: [representative]
Title: [position]

E-1

Schedule 1

to Government Certification

Schedule of Other Rum Producer Invoices

| Other Rum Producer | Invoice # | Date | Amount of Invoice |
|---|---|---|---|
| | | | $[•] |

Schedule 2

to Government Certification

Schedule of Adjustments

| Other Rum Producer | Rum Producer Agreement | Date of Adjustment | Amount of Adjustment | Reason for Adjustment |
|---|---|---|---|---|
| [Name] | | | $\pm \$[\bullet]$ | |

E-3

SCHEDULE 3
to Lockbox Agreement

**Government**
**Authorized Representatives and Telephone Number(s) for Call-Backs**

**Solely with respect to the Department of the Treasury:**

| Authorized Representative Name | Specimen Signature | Telephone Number |
|---|---|---|
| Ana García Noya | | 787-781-88 80 x 3760 |
| | | |

**Solely with respect to the Puerto Rico Industrial Development Company:**

| Authorized Representative Name | Specimen Signature | Telephone Number |
|---|---|---|
| Julio López | | |
| Julio Benitez | | |