## FIRST AMENDMENT TO THE DECEMBER 31, 2011 AGREEMENT BETWEEN THE GOVERNMENT OF PUERTO RICO AND DESTILERIA SERRALLES

This First Amendment to the Agreement of December 31, 2011 (the "Amendment"), is made on this 20th day of July 2012, by and between Destilería Serrallés, Inc. ("Serrallés") and the Government of Puerto Rico ("the Government"), acting through the Secretary of Treasury, the Secretary of Economic Development and Commerce, the Secretary of Agriculture, the President of the Government Development Bank for Puerto Rico ("GDB"), as fiscal agent for the Government, the Executive Director of the Office of Management and Budget, and the Executive Director of the Puerto Rico Industrial Development Company ("PRIDCO") as authorized by the Puerto Rico Tax Code . The Government and Serrallés are collectively referred to as the "Parties" and individually as a "Party".

### RECITALS

WHEREAS, the Parties executed an Agreement on December 31, 2011 ("the Agreement") to ensure the continuance of the benefits generated by the Cover Over Revenues Program to Puerto Rico;

WHEREAS, the Parties now understand that it is necessary to make an amendment to the Agreement to clarify the powers of the Secretary of the Treasury with respect to the labeling requirements established in Article 4.5 of the Agreement;

NOW, THEREFORE, in consideration of the foregoing recitals, the covenants, representations, warranties, and commitments agreed upon in the Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Article 4.5 of the Agreement, titled Labeling, is hereby amended and restated in its entirety and shall hereafter be and read as follows:

**4.5 Labeling**

The Government will develop a quality seal of approval, or other written reference to Puerto Rico that complies with the Puerto Rico Tax Code and that will be included by Serrallés on the back labels of the Branded Rum Products bottled with a minimum volume of two hundred milliliters made in Puerto Rico to promote Puerto Rico. In addition, those bottled Branded Rum Products which qualify as "Puerto Rican Rum" under Puerto Rico law will be identified as such on their front labels. The Government and Serrallés shall cooperate with each other to develop a seal that meets, in terms of size and design, the reasonable marketing needs of Serrallés and its Strategic Third-Party Branded Products customers. Notwithstanding the foregoing, if the Government and Serrallés cannot agree on a seal within 180 days from the Effective Date, either Party

may request the intervention of a mutually acceptable third party which will make a final decision as to the appropriate seal to be used by Serrallés for its Branded Rum Products and its Strategic Third-Party Branded Products taking into consideration the reasonable marketing needs of Serrallés and its Strategic Third-Party Branded Products customers. Any seal implemented under this Section must meet any requirements imposed by law or the TTB.  In the case of Strategic Third-Party Branded Products, the Secretary of the Treasury and the Secretary of Economic Development and Commerce (the "Secretaries") will have the discretion and authority to waive upon request, either permanently or for a specific period of time, any requirement to include the quality seal of approval or other written reference to Puerto Rico described in this article on any particular brand or product if the Secretaries  deem it to be to the benefit of the public interest.  The request of any such waiver must be made in writing and hand delivered to the Secretaries. Any waiver granted must be in writing and its effects shall not be retroactive for any period prior to date of Serralles petition, or applicable to any other product not specifically included in such waiver. Notwithstanding the foregoing, any waiver requested pursuant to this section which has not been rejected by both Secretaries for fifteen (15) calendar days after such waiver request in writing has been hand delivered by Serralles to the Secretaries(the "Consideration Period"),  shall be deemed approved by the Secretaries without the need of further action unless prior to the expiration of the Consideration Period a written notification signed by both Secretaries, is submitted to Serralles notifying that the Consideration Period shall be extended for an additional fifteen (15) calendar days, at their sole discretion.

2. Except as otherwise provided in this Amendment, all terms used in this Amendment that are not otherwise defined shall have the respective meanings ascribed to such terms in the Agreement.

3. This Amendment embodies the entire agreement between Serrallés and the Government with respect to the amendment of the Agreement. In the event of any conflict or inconsistency between the provisions of the Agreement and this Amendment, the provisions of this Amendment shall control and govern.

4. Except as specifically modified and amended herein, all of the terms, provisions, requirements and specifications contained in the Agreement remain in full force and effect. Except as otherwise expressly provided herein, the parties do not intend to, and the execution of this Amendment shall not, in any manner impair the Agreement, the purpose of this Amendment being simply to amend and ratify the Agreement, as hereby amended and ratified, and to confirm and carry forward the Agreement, as hereby amended, in full force and effect.

5. As required by Article 8.21.7 the Government shall remit a copy of this Amendment to the Office of the Comptroller within fifteen (15) days following the date of the execution of this Amendment.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**
**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the Parties have executed this Amendment as of the date first written above.

**DESTILERÍA SERRALLÉS, INC.**

By: _____
Name: Félix J. Serrallés, Jr.
Title: President

**THE GOVERNMENT OF PUERTO RICO**

By: _____
Name: Jesús Méndez
Title: Secretary
Department of Treasury

By: _____
Name: José R. Pérez-Riera
Title: Secretary
Department of Economic Development and Commerce

By: _____
Name: José R. Pérez-Riera
Title: Executive Director
Puerto Rico Industrial Development Company

By: _____
Name: ~~Miguel Santiago Córdova~~  Neftali Sot Santiago
Title: ~~Acting~~ Secretary
Department of ~~Agriculture~~

By: _____
Name: Juan Carlos Pavía
Title: Executive Director of Office of Management and Budget

By: _____
Name: Juan Carlos Batlle   Jose Otero   EVP
Title: President of Government Development Bank for Puerto Rico

FIRST AMENDMENT TO THE DECEMBER 31, 2011 AGREEMENT BETWEEN THE
GOVERNMENT OF PUERTO RICO AND DESTILERIA SERRALLES

This First Amendment to the Agreement of December 31, 2011 (the "Amendment"), is made on this ___ day of May  2012, by and between Destilería Serrallés, Inc. ("Serrallés") and the Government of Puerto Rico ("the Government"), acting through the Secretary of Treasury, the Secretary of Economic Development and Commerce, the Secretary of Agriculture, the President of the Government Development Bank for Puerto Rico ("GDB"), as fiscal agent for the Government, the Executive Director of the Office of Management and Budget, and the Executive Director of the Puerto Rico Industrial Development Company ("PRIDCO") as authorized by the Puerto Rico Tax Code . The Government and Serrallés are collectively referred to as the "Parties" and individually as a "Party".

## RECITALS

WHEREAS, the Parties executed an Agreement on December 31, 2011 ("the Agreement") to ensure the continuance of the benefits generated by the Cover Over Revenues Program to Puerto Rico;

WHEREAS, the Parties now understand that it is necessary to make an amendment to the Agreement to clarify the powers of the Secretary of the Treasury with respect to the labeling requirements established in Article 4.5 of the Agreement;

NOW, THEREFORE, in consideration of the foregoing recitals, the covenants, representations, warranties, and commitments agreed upon in the Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:



1.  Article 4.5 of the Agreement, titled Labeling, is hereby amended and restated in its entirety and shall hereafter be and read as follows:

### 4.5 Labeling

The Government will develop a quality seal of approval, or other written reference to Puerto Rico that complies with the Puerto Rico Tax Code and that will be included by Serrallés on the back labels of the Branded Rum Products bottled with a minimum volume of two hundred milliliters made in Puerto Rico to promote Puerto Rico. In addition, those bottled Branded Rum Products which qualify as "Puerto Rican Rum" under Puerto Rico law will be identified as such on their front labels. The Government and Serrallés shall cooperate with each other to develop a seal that meets, in terms of size and design, the reasonable marketing needs of Serrallés and its Strategic Third-Party Branded Products customers. Notwithstanding the foregoing, if the Government and Serrallés cannot agree on a seal within 180 days from the Effective Date, either Party

may request the intervention of a mutually acceptable third party which will make a final decision as to the appropriate seal to be used by Serrallés for its Branded Rum Products and its Strategic Third-Party Branded Products taking into consideration the reasonable marketing needs of Serrallés and its Strategic Third-Party Branded Products customers. Any seal implemented under this Section must meet any requirements imposed by law or the TTB.   In the case of Third-Party Branded Rum Products, the Secretary of the Treasury and the Secretary of Economic Development and Commerce (the "Secretaries") will have the discretion and authority to waive upon request, either permanently or for a specific period of time, any requirement to include the quality seal of approval or other written reference to Puerto Rico described in this article on any particular brand or product if the Secretaries  deem it to be to the benefit of the public interest.  The request of any such waiver must be made in writing and hand delivered to the Secretaries. Any waiver granted must be in writing and its effects shall not be retroactive for any period prior to date of Serralles petition, or applicable to any other product not specifically included in such waiver. Notwithstanding the foregoing, any waiver requested pursuant to this section which has not been rejected by both Secretaries for fifteen (15) calendar days after such waiver request in writing has been hand delivered by Serralles to the Secretaries(the "Consideration Period"),   shall be deemed approved by the Secretaries without the need of further action unless prior to the expiration of the Consideration Period a written notification signed by both Secretaries, is submitted to Serralles notifying that the Consideration Period shall be extended for an additional fifteen (15) calendar  days, at their sole discretion.

2. Except as otherwise provided in this Amendment, all terms used in this Amendment that are not otherwise defined shall have the respective meanings ascribed to such terms in the Agreement.

3. This Amendment embodies the entire agreement between Serrallés and the Government with respect to the amendment of the Agreement. In the event of any conflict or inconsistency between the provisions of the Agreement and this Amendment, the provisions of this Amendment shall control and govern.

4. Except as specifically modified and amended herein, all of the terms, provisions, requirements and specifications contained in the Agreement remain in full force and effect. Except as otherwise expressly provided herein, the parties do not intend to, and the execution of this Amendment shall not, in any manner impair the Agreement, the purpose of this Amendment being simply to amend and ratify the Agreement, as hereby amended and ratified, and to confirm and carry forward the Agreement, as hereby amended, in full force and effect.



5. As required by Article 8.21.7 the Government shall remit a copy of this Amendment to the Office of the Comptroller within fifteen (15) days following the date of the execution of this Amendment.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**
**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the Parties have executed this Amendment as of the date first written above.

**DESTILERÍA SERRALLÉS, INC.**

By: _____
Name: Félix J. Serrallés, Jr.
Title: President

**THE GOVERNMENT OF
PUERTO RICO**

By: _____
Name: Jesús Méndez
Title: Secretary
Department of Treasury


By: _____
Name: José R. Pérez-Riera
Title: Secretary
Department of Economic Development
and Commerce


By: _____
Name: José R. Pérez-Riera
Title: Executive Director
Puerto Rico Industrial Development
Company


By: _____
Name: Miguel Santiago Córdova
Title: Acting Secretary
Department of Agriculture


By: _____
Name: Juan Carlos Pavía
Title: Executive Director of Office of
Management and Budget


By: _____
Name: Juan Carlos Batlle
Title: President of Government
Development Bank for Puerto Rico

## SECOND AMENDMENT TO AGREEMENT BETWEEN
## DESTILERIA SERRALLES AND THE GOVERNMENT OF PUERTO RICO

This Second Amendment to the Agreement of December 31, 2011 (the "Amendment"), is made on this _18_ day of February 2014, by and between Destilería Serrallés, Inc. ("Serrallés") and the Government of Puerto Rico ("the Government"), acting through the Secretary of Treasury, the Secretary of Economic Development and Commerce, the Secretary of Agriculture, the President of the Government Development Bank for Puerto Rico ("GDB"), as fiscal agent for the Government, the Executive Director of the Office of Management and Budget, and the Executive Director of the Puerto Rico Industrial Development Company ("PRIDCO") as authorized by the Puerto Rico Tax Code . The Government and Serrallés are collectively referred to as the "Parties" and individually as a "Party".

## RECITALS

WHEREAS, the Government and Serrallés entered into an Agreement on December 31, 2011 ("the Agreement") whereby the Government agreed to provide certain incentives to Serrallés from the Cover Over Revenues that the Government will receive that are attributable to Serralles Aggregate Rum Sales;

WHEREAS, the Government and Serrallés entered into a First Amendment to the Agreement  on July 20, 2012 (the "First Amendment");

WHEREAS, Serrallés expects to sell approximately 2,300,000 proof gallons of Bulk Rum during Fiscal Year 2013-2014 under supply contracts in existence on January 1, 2014;

WHEREAS, the Government desires to promote further the production of Bulk Rum in Puerto Rico.

NOW, THEREFORE, for and in consideration of the mutual covenants herein contained and other good and valuable consideration, the adequacy and receipt of which are hereby acknowledged, the Parties agree as follows:

1.      **Definitions.** All capitalized terms used herein shall have the meanings ascribed to them in the Agreement unless otherwise specifically set forth herein to the contrary.

2.      **Amendments to the Agreement.** The Agreement is hereby amended as follows:

a.      The following definition is added to Section 2.1 of the Agreement, in its corresponding alphabetical order, to read in its entirety as follows:

"Secretaries" shall mean the Secretary of the Treasury and the Secretary of Economic Development and Commerce."

b.        Section 4.1.3 (d) (iv)  of the Agreement is hereby amended to read in its entirety as follows:

"(iv) make Molasses Subsidy Payments to Serrallés as provided in Section 4.1.4 hereof an in amount equal to ten percent (10%) of the Cover Over Revenues attributable to Serrallés Branded Rum Sales and Serrallés Bulk Rum Sales for such Fiscal Year.

c.        Section 4.1.4 of the Agreement is hereby amended to read in its entirety as follows:

"Assuming that the USVI Incentives remain above ten percent (10%) of the Cover Over Revenues attributable to any rum producer in the USVI and so long as the Cover Over Revenues are paid or transferred to the Government, for Fiscal Years following June 30, 2013 and during the Term of this Agreement, the Government agrees to make molasses subsidy payments to Serrallés (the "Molasses Subsidy Payments") in the amounts obtained by multiplying  the aggregate Cover Over Revenues attributable to Serrallés Branded Rum Sales and Serrallés Bulk Rum Sales for each Fiscal Year by ten percent (10%).   The Molasses Subsidy Payments shall be used by Serrallés (i) to purchase molasses to be utilized in Puerto Rico in the production of Rum in Puerto Rico, or (ii) to grant sales discounts on Serrallés Bulk Rum Sales made with molasses fermented in Puerto Rico. Notwithstanding the foregoing, with respect to Serrallés Rum Bulk Sales made pursuant to Bulk Rum supply agreements in effect on January 1, 2014, Molasses Subsidy Payments for any given Fiscal Year relating to Serrallés Bulk Rum Sales shall be due and payable only upon Serrallés Rum Bulk Sales for such Fiscal Year exceeding the volume of 2,726,000 proof gallons; provided, however, that this volume requirement shall not apply to Serrallés Bulk Rum Sales made pursuant to Bulk Rum supply agreements entered after January 1, 2014.

d.        Section 4.1.2 (b) of the Agreement is hereby amended to read in its entirety  as follows:

"(b) Serrallés' Production Activities shall be in furtherance of its production of Serrallés' Rum products or any other third party products or brands utilizing Rum produced by Serrallés in Puerto Rico for sale in the United States. Notwithstanding anything to the contrary set forth herein, Production Activities shall be deemed to include sales discounts granted by Serrallés with respect to sales of Bulk Rum.

e.        Section 4.2.2 of the Agreement is amended to read in its entirety as follows:

"With respect to the Marketing and Production Support Payments, (i) any and all Marketing Activities and Production Activities funded with Marketing and Production Support Payments will be disbursed to Serrallés by the Government, PRIDCO or any other designated agency, and (ii) Serrallés shall file with the Government through PRIDCO or any other designated agency, an annual plan for the Marketing Activities for each Fiscal Year which shall include, without limitation, a description of the strategic marketing activities which are part of such plan.

f.      Sections 4.2.3 and 4.2.4 of the Agreement are repealed and left without effect.

3.   Except as otherwise provided in this Amendment, all terms used in this Amendment that are not otherwise defined shall have the respective meanings ascribed to such terms in the Agreement.

4.   This Amendment embodies the entire agreement between Serrallés and the Government with respect to the amendment of the Agreement and it shall be effective as of the date hereof. In the event of any conflict or inconsistency between the provisions of the Agreement and this Amendment, the provisions of this Amendment shall control and govern.

5.   Except as specifically modified and amended herein, all of the terms, provisions, requirements and specifications contained in the Agreement remain in full force and effect. Except as otherwise expressly provided herein, the parties do not intend to, and the execution of this Amendment shall not, in any manner impair the Agreement, the purpose of this Amendment being simply to amend and ratify the Agreement, as hereby amended and ratified, and to confirm and carry forward the Agreement, as hereby amended, in full force and effect.

6.   As required by Article 8.21.7 the Government shall remit a copy of this Amendment to the Office of the Comptroller within fifteen (15) days following the date of the execution of this Amendment.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**
**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the Parties have executed this Amendment as of the date first written above.

DESTILERÍA SERRALLÉS, INC.

By: _____
Name: Félix J. Serrallés, Jr.
Title: President

THE GOVERNMENT OF
PUERTO RICO

By: _____
Name: Melba Acosta Febo
Title:   Secretary Department of Treasury

By: _____
Name: Alberto Bacó Bagué
Title:   Secretary Department of Economic Development
        and Commerce

By: _____
Name: Antonio L. Medina Comas
Title:   Executive Director Puerto Rico Industrial Development Company

By: _____
Name: Myrna Comas Pagán
Title: Secretary Department of Agriculture

By: _____
Name: Carlos D. Rivas Quiñones
Title: Executive Director of Office of Management and Budget

By: _____
Name: Jose Pagán Beauchamp
Title: Interim President of Government Development Bank for Puerto Rico

*(Execution Version)*

## Supplemental Agreement

This **Supplemental Agreement** (this "*Agreement*"), entered into as of the 30th day of June, 2015 (the "*Effective Date*"), is made by and among Destilería Serrallés, Inc. ("Serrallés") and the Government of Puerto Rico (the "*Government*"), acting through the Secretary of Treasury, the Secretary of Economic Development and Commerce, the Secretary of Agriculture, the President of the Government Development Bank for Puerto Rico, the Executive Director of the Office of Management and Budget and the Executive Director of the Puerto Rico Industrial Development Company ("PRIDCO"), as authorized by Act No. 178 of December 1, 2010, as amended, and the Puerto Rico Internal Revenue Code of 2011.  The Government and Serrallés are collectively referred to as the "*Parties*" and each individually as a "*Party*".

**WHEREAS**, the Parties are party to that certain Agreement, dated as of December 31, 2011, as amended on July 20, 2012, and February 15, 2014 (the "*Existing Agreement*"), which provides for the payment of Incentives (as hereinafter defined) to Serrallés;

**WHEREAS**, the Parties wish to supplement the Existing Agreement to provide for the payment of certain amounts due as of the Effective Date  from the Government to Serrallés under the Existing Agreement and to establish a method for future payments of Incentives under the Existing Agreement;

**WHEREAS**, the Parties share the objective of maintaining, promoting and growing the production of Serrallés Rum in Puerto Rico; and

**WHEREAS,** the Government has determined that the transactions contemplated in this Agreement are in the best interest of the Commonwealth of Puerto Rico.

**NOW THEREFORE**, in consideration of the foregoing recitals, the covenants, representations, warranties, commitments and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows, effective as of the Effective Date:

## ARTICLE I

## DEFINITIONS; INTERPRETATION

**Defined Terms.**  For purposes of this Agreement, (i) capitalized terms not defined shall have the meanings set forth in the Existing Agreement and (ii) the following terms shall have the following meanings:

"*Business Day*" shall mean any day that is not a Saturday, Sunday or other day on which commercial banks in New York City or San Juan, Puerto Rico are authorized or required by law to remain closed.

"*Collateral Agent*" shall mean Citibank, N.A., a national banking association, as collateral agent under the Trust Agreement, or a duly appointed successor.

*Confirmation Date*" shall mean the date on which the Lockbox Bank has sent a written notice to the Government, the Trustee and the Paying Agent that it has received from the U.S. Government Cover Over Revenues for deposit into the Lockbox Account.

"*Deposit Account Control Agreement*" shall mean the Deposit Account Control Agreement dated May 5, 2015 among the Trustee, the Collateral Agent, the Lockbox Bank and the Government.

"*Designated Agreements*" shall mean the Trust Agreement, the Lockbox Agreement, the Security Agreement and the Deposit Account Control Agreement.

"*Enforcement Expenses*" shall mean expenses incurred by the United States Department of Treasury in connection with the enforcement in Puerto Rico of the provisions of Subtitle E (Sections 5001 through 5891) and Section 7652(a) of the Code and reimbursed from Cover Over Revenues pursuant to Section 5314(a)(4) of the Code.

"*Incentives*" shall mean the Refurbishment and Production Initiatives, Molasses Subsidy Payments, Marketing and Production Support Payments and Strategic Third-Party Marketing Support Payments under the Existing Agreement.

"*Lockbox Account*" shall mean the deposit account referred to as the "Account" in the Lockbox Agreement.

"*Lockbox Agreement*" shall mean the Lockbox Agreement dated May 5, 2015 among the Government, the Trustee, the Paying Agent and the Lockbox Bank.

"*Lockbox Bank*" shall mean Citibank, N.A., a national banking association, as lockbox bank under the Lockbox Agreement, or a duly appointed successor.

"*Paying Agent*" shall mean Citibank, N.A., a national banking association, as paying agent under the Trust Agreement, or a duly appointed successor.

"*Reduction*" shall mean any offset or other reduction in the amount of Cover Over Revenues paid to the Government by the United States Department of Treasury, including as a result of amounts owed, or alleged to be owed, to any United States Governmental Authority by the Government or any Governmental Authority or affiliated entity thereof; provided, however, that a "Reduction" shall not include any reduction that is made by the TTB as an adjustment to the amount of Cover Over Revenues previously paid due to an error determined by an audit or other administrative review.

"*Security Agreement*" shall mean the Security Agreement dated May 5, 2015 between the Trustee and the Collateral Agent, as secured parties, and the Government, as pledgor.

"*Serrallés Agreements*" shall mean this Agreement and the Existing Agreement.

"*Trust Agreement*" shall mean the Trust Agreement dated May 5, 2015 between the Government, the Trustee, the Paying Agent and the Collateral Agent.

"*Trustee*" shall mean Banco Popular de Puerto Rico, a Puerto Rico banking entity, as trustee under the Trust Agreement, or a duly appointed successor.

**1.1    Interpretation**.  It is not the intention of the Parties to this Agreement to make a novation of the Existing Agreement, but only to agree on the terms and conditions of a one-time payment by PRIDCO of certain amounts due under the Existing Agreement as herein specifically indicated and to establish a method for future payments of Incentives under the Existing Agreement.  Except to the extent expressly modified by this Agreement, the terms of the Existing Agreement shall remain in full force and effect.  To the extent that there are any conflicts or inconsistencies between the terms and conditions of the Existing Agreement and the terms and conditions of this Agreement, the terms and conditions of this Agreement shall prevail.

**1.2    Confirmation Date**. The effectiveness of Section 2.4, Section 2.7, Section 2.8, and Section 2.9, shall be subject to the condition that the Confirmation Date has occurred.

## ARTICLE II

## EXISTING AGREEMENT

**2.1    Payment of Amounts Due**.  Upon the execution of this Agreement by Serrallés and the Government, PRIDCO will pay Serrallés the amount of $10,000,000.00 by wire transfer of immediately available funds, in full satisfaction of certain Incentives that were due and payable as of the Effective Date, as more specifically described in Exhibit A, leaving a balance due also as specifically described in Exhibit A, as provided by Section 3.2(ii) hereof.

**2.2    Cover Over Revenues**. The definition of "Cover Over Revenues" shall be determined without regard to any Reduction.

**2.3    Marketing and Production Activities.** The following text in Section 4.2.1 of the Existing Agreement shall be of no further force and effect: "Subject to the limitations of Sections 4.2.2 and 4.2.3".  Section 4.2.2 of the Existing Agreement is amended and restated to read in its entirety as follows:

> "With respect to the Marketing and Production Support Payments, Serrallés shall file with the Government through PRIDCO or any other designated agency an annual plan for the Marketing Activities for each Fiscal Year."

**2.4    True-Up Adjustments**.  Section 4.6.4(b) of the Existing Agreement shall be of no further force and effect.  Adjustments relating to the amounts in respect of Cover Over Revenues paid, or to be paid, to Serrallés shall be determined in accordance with Section 4.5 of the Trust Agreement.  In order to permit PRIDCO to prepare the "True-Up Calculations" under Section 4.5 of the Trust Agreement, no later than September 30 of each year PRIDCO and Serrallés shall undertake a review and reconciliation of all the invoices for Incentives submitted by Serrallés during the prior Fiscal Year (including all federal tax forms and amendments thereto filed with the TTB evidencing Serrallés Rum Sales and Cover Over Revenues generated by such

sales) and the actual Incentives payments made by the Paying Agent and the Government to Serrallés during such Fiscal Year.

    **2.5**    **Annual Reports**.  Within ninety (90) days after the end of each Fiscal Year, Serrallés will provide to the Government the reports required to be delivered pursuant to Sections 4.1.1(c) and 4.1.2(c) of the Existing Agreement.  In addition to including the information contained in the reports Serrallés submitted pursuant to such Sections before the Effective Date, reports submitted after the Effective Date shall contain information as to the volume of rum sold during such Fiscal Year that generated Cover Over Revenues from Forms TTB F 5000.25 and F 5110.51 for shipments of tax paid bottled rum to the USA and Forms TTB F 5110.28 and F 5110.31 for shipments of bulk rum to the USA and Serrallés' use of the Incentives payments made by the Paying Agent and the Government to Serrallés during such Fiscal Year. In the case of bulk rum sold to third parties, if Form 5110.28 which is filed by such third party with the TTB is or becomes unavailable, for reasons beyond the control of Serrallés, a certification under oath from Serrallés providing the information included in such Form may be substituted instead.

    **2.6**    **Application of Payments**.  All Incentives payments shall be credited to invoices submitted by Serrallés in the order in which such invoices became due and payable.

    **2.7**    **Payment of Future Amounts.**  All Incentives payments shall be paid (i) to the Paying Agent by the Lockbox Bank and (ii) to Serrallés by the Paying Agent to the extent funds administered by the Paying Agent are sufficient to make such Incentives payments in accordance with the Trust Agreement.  Section 3.2 of the Existing Agreement shall be of no further force and effect, and all the Incentives that would become payable thereunder have been included and are reflected on Exhibit A as of the date provided therein.

    **2.8**    **Pledged Cover Over Requirement**.  Any amount that would have been payable to Serrallés in any given month but for the Pledged Cover Over Requirement shall be deemed to be payable in the months immediately succeeding the month in which the Pledged Cover Over Requirement for the then current Fiscal Year has been satisfied in full, to the extent of funds available to the Paying Agent from its receipt of Cover Over Revenues.  Notwithstanding the immediately preceding sentence, this provision shall not modify in any respect Sections 4.1.5 or 6.3.3 of the Existing Agreement.

    **2.9**    **Enforcement Expenses**.  Serrallés shall pay a share of Enforcement Expenses pursuant to Section 4.7 of the Trust Agreement.

    **2.10**    **Allocation.** Serrallés may apply any portion of the Marketing and Production Support Payments it receives after the Confirmation Date to fund Refurbishment and Production Initiatives. Serrallés will determine in its sole discretion whether to make such application and the amount of any such application.

    **2.11**    **Tax Treatment.** Any allocation of Marketing and Production Support Payments pursuant to <u>Section 2.10</u> shall be subject to Section 5.2 of the Existing Agreement.

    **2.12**    **Invoices.** All invoices for Incentives submitted by Serrallés shall be substantially in the form of Exhibits C and D to the Lockbox Agreement, as appropriate. Such invoices shall be submitted to PRIDCO with a copy to the Lockbox Bank. Each monthly invoice for Incentives

submitted by Serrallés must include, as an offset for the amount of Incentives claimed by Serrallés for that month, the amounts of any permitted tax credits taken by Serrallés during such month.

## ARTICLE III

## REPRESENTATIONS, WARRANTIES, COVENANTS AND ACKNOWLEDGEMENTS

**3.1     Representations, Warranties and Acknowledgements**.

**3.2     Joint Representation**.     Serrallés hereby represents and warrants to the Government, and the Government hereby represents and warrants to Serrallés, in each case as of the  Effective Date, that Exhibit A to this Agreement accurately sets forth the Incentives that, based on the assumptions set forth in such Exhibit, (i) were payable under the Existing Agreement immediately prior to the payment by the Government described in Section 2.1, and (ii) remain unpaid as of the Effective Date after application of the payment by the Government described in Section 2.1

**3.3     Designated Agreements**.  After the execution and delivery of this Agreement by the Parties, (i) PRIDCO covenants and agrees, upon the direction and at the request of Serrallés, to execute and deliver to the Trustee and the Paying Agent a "Government Certificate to Add Beneficiary" adding Serrallés as a Beneficiary under the Trust Agreement pursuant to section 14.2 thereof, and (ii) the Government shall provide a copy of each of the executed Designated Agreements to Serrallés.  The Government shall at all times comply in all material respects with its obligations under the Designated Agreements.

**3.4     _Cover Over Reports**.  As promptly as practicable, the Government shall use its best efforts following the Confirmation Date to obtain a waiver from the United States Department of Treasury that would permit the Government to deliver the Cover Over Reports (as such term is defined in the Lockbox Agreement) to the Lockbox Bank, the Paying Agent and PRIDCO.

**3.5     No Adverse Actions**.  Without the prior written consent of the Government, Serrallés, to the extent permitted by law and unless otherwise required by law, shall not take or fail to take any action if such action or failure to act, as the case may be, is reasonably likely to adversely affect, diminish or impair the beneficial use, operation, utility of, or the ability of the Government to beneficially use, occupy, obtain, receive or otherwise enjoy, any of the obligations or other commitments of Serrallés contemplated by, or set forth in, this Agreement and the Designated Agreements.  Without the prior written consent of Serrallés, the Government, to the extent permitted by law and unless otherwise required by law, shall not take or fail to take any action, if such action or failure to act, as the case may be, is reasonably likely to (i) adversely affect, diminish or impair the beneficial use, operation, utility of, or the ability of Serrallés to beneficially use, occupy, obtain, receive or otherwise enjoy, any of the obligations or other commitments of the Government contemplated by, or set forth in, this Agreement and the Designated Agreements, (ii) result in the U.S. Department of Treasury not remitting all Cover

Over Revenues to the Lockbox Account or (iii) result in a lien on the Collateral (as defined in the Security Agreement) or any portion thereof.

## ARTICLE IV

## BREACH

**4.1     Breach**.  Any breach by the Government of <u>Section 3.5</u> shall constitute a Material Default under the Existing Agreement and shall give rise to the same remedies and rights (including rights of termination) with respect to this Agreement as does a Material Default by the Government under the Existing Agreement.

## ARTICLE V

## MISCELLANEOUS

**5.1     Counterparts**.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original.

**5.2     Governing Law; Waiver of Sovereign Immunity.**  The governing law of this Agreement shall be the law of the Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") without giving effect to the applicable principles of conflicts of laws. The Commonwealth hereby waives any right, forum, defense or limitation based upon its sovereign immunity for purposes of any action for breach of its obligations under this Agreement.

**5.3     Entire Agreement.**  The Serrallés Agreements and the Designated Agreements constitute the entire agreement among the parties hereto with respect to the subject matter of this Agreement and supersede all prior or contemporaneous agreements, understandings, discussions or negotiations (written or oral) among the parties hereto with respect to the subject matters of this Agreement.

**5.4     Binding Effect**.  This Agreement and all terms, provisions and obligations set forth herein shall be binding upon and shall inure to the benefit of the Government and Serrallés and their respective successors and assigns.

**5.5     No Waiver.**  No provision of this Agreement may be interpreted to be a waiver of any provision of the laws (including the Constitution) of the Commonwealth that are not waivable under such laws, including any applicable laws relating to the payment priorities of the obligations of the Commonwealth, including without limitation Section 8 of Article VI of the Constitution and Article 4(c) of Act 147 of June 18, 1980, as amended.

**5.6     Government Contract Clauses.**  Serrallés hereby ratifies all its representations contained in Section 8.21 of the Existing Agreement, regarding Government Contract Clauses.

**5.7     Business Documents; Evidence of Authority.**  Prior to the execution of this Agreement, Serrallés has provided to the Government copies of its articles of incorporation and

by-laws, Serrallés has delivered to the Government an original certificate of resolution evidencing the authorization to enter into this Agreement.

      **5.8**    **Registration of this Agreement**.  The Government shall remit a copy of this Agreement to the Office of the Comptroller within fifteen (15) days following the date of the execution of this Agreement and any subsequent amendment of this Agreement.  No provision or consideration of services under this Agreement may be demanded until the same has been filed for registration with the Office of the Comptroller pursuant to Act No. 18 of October 30, 1975, as amended and Act Number 127 of May 31, 2004, as amended.  The Government undertakes to register this Agreement pursuant to such Act as soon as practicable after the execution of this Agreement.

*[Signature Pages Follow]*

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the Effective Date.

DESTILERIA SERRALLES, INC.

By: _____

Name:  Felix Serrallés
Title:    President and Chief Executive Officer

_____

_____

_____

00265129; 1                    *[Signature Page to Supplemental Agreement]*

**THE GOVERNMENT OF PUERTO RICO**

Department of the Treasury

By:     _____
         Name:   Juan Zaragoza Gómez
         Title:     Secretary

Department of Economic Development and
Commerce

By:     _____
         Name:   Alberto Bacó Bagué
         Title:     Secretary

Puerto Rico Industrial Development Company

By:     _____
         Name:   Antonio L. Medina Comas
         Title:     Executive Director

Department of Agriculture

By:     _____
         Name:   Myrna Comas Pagan
         Title:     Secretary

Office of Management and Budget

By:     _____
         Name:   Luis F. Cruz Batista
         Title:     Director

Government Development Bank for Puerto Rico

By:     _____
         Name:   Melba I. Acosta Febo
         Title:     President

*[Signature Page to Supplemental Agreement]*

**THE GOVERNMENT OF PUERTO RICO**

Department of the Treasury

By: _____
      Name:  Juan Zaragoza Gómez
      Title:   Secretary

Department of Economic Development and
Commerce

By: _____
      Name:  Alberto Bacó Bagué
      Title:   Secretary

Puerto Rico Industrial Development Company

By: _____
      Name:  Antonio L. Medina Comas
      Title:   Executive Director

Department of Agriculture

By: _____
      Name:  Myrna Comas Pagan
      Title:   Secretary

Office of Management and Budget

By: _____
      Name:  Luis F. Cruz Batista
      Title:   Director

Government Development Bank for Puerto Rico

By: _____
      Name:  Melba I. Acosta Febo
      Title:   President

*[Signature Page to Supplemental Agreement]*

**THE GOVERNMENT OF PUERTO RICO**

Department of the Treasury

By: _____
   Name:  Juan Zaragoza Gómez
   Title:    Secretary

Department of Economic Development and Commerce

By: _____
   Name:  Alberto Bacó Bagué
   Title:    Secretary

Puerto Rico Industrial Development Company

By: _____
   Name:  Antonio L. Medina Comas
   Title:    Executive Director

Department of Agriculture

By: _____
   Name:  Myrna Comas Pagan
   Title:    Secretary

Office of Management and Budget

By: _____
   Name:  Luis F. Cruz Batista
   Title:    Director

Government Development Bank for Puerto Rico

By: _____
   Name:  Melba I. Acosta Febo
   Title:    President

00265129; 1                *[Signature Page to Supplemental Agreement]*

**THE GOVERNMENT OF PUERTO RICO**

Department of the Treasury

By: _____
     Name:  Juan Zaragoza Gómez
     Title:   Secretary

Department of Economic Development and
Commerce

By: _____
     Name:  Alberto Bacó Bagué
     Title:   Secretary

Puerto Rico Industrial Development Company

By: _____
     Name:  Antonio L. Medina Comas
     Title:   Executive Director

Department of Agriculture

By: _____
     Name:  Myrna Comas Pagan
     Title:   Secretary

Office of Management and Budget

By: _____
     Name:  Luis F. Cruz Batista
     Title:   Director

Government Development Bank for Puerto Rico

By: _____
     Name:  Melba I. Acosta Febo
     Title:   President

*[Signature Page to Supplemental Agreement]*

**THE GOVERNMENT OF PUERTO RICO**

Department of the Treasury

By: _____
     Name:  Juan Zaragoza Gómez
     Title:    Secretary

Department of Economic Development and
Commerce

By: _____
     Name:  Alberto Bacó Bagué
     Title:    Secretary

Puerto Rico Industrial Development Company

By: _____
     Name:  Antonio L. Medina Comas
     Title:    Executive Director

Department of Agriculture

By: _____
     Name:  Myrna Comas Pagan
     Title:    Secretary

Office of Management and Budget

By: _____
     Name:  Luis F. Cruz Batista
     Title:    Director

Government Development Bank for Puerto Rico

By: _____
     Name:  Melba I. Acosta Febo
     Title:    President

*[Signature Page to Supplemental Agreement]*

**THE GOVERNMENT OF PUERTO RICO**

Department of the Treasury

By: _____
     Name:  Juan Zaragoza Gómez
     Title:   Secretary

Department of Economic Development and
Commerce

By: _____
     Name:  Alberto Bacó Bagué
     Title:   Secretary

Puerto Rico Industrial Development Company

By: _____
     Name:  Antonio L. Medina Comas
     Title:   Executive Director

Department of Agriculture

By: _____
     Name:  Myrna Comas Pagan
     Title:   Secretary

Office of Management and Budget

By: _____
     Name:  Luis F. Cruz Batista
     Title:   Director

Government Development Bank for Puerto Rico

By: _____
     Name:  Melba I. Acosta Febo
     Title:   President

*[Signature Page to Supplemental Agreement]*

**EXHIBIT A**

**Application of Amounts**

Amounts due to Destileria Serrallés for claims made for Marketing and Production Support payments and Refurbishment
and Production Initiative Payments as at April 30, 2015

| Month of production | Claim Number | Total Balance | Amounts payable pursuant to Section 1.3.1 | Balance outstanding at April 30, 2015 $10.50 after settlement |
|---|---|---|---|---|
| Nov-14 | MA0000168 | $ 646,209.41 | $ (646,209.41) | |
| Dec-14 | MA0000170 | $ 7,008,614.93 | $ (7,008,614.93) | |
| Nov-14 | MA0000172 | $ 7,576.09 | $ (7,576.09) | |
| Dec-14 | MA0000174 | $ 6,064.53 | $ (6,064.53) | |
| Capex | MA0000177 | $ 772,380.31 | $ (772,380.31) | |
| Capex | MA0000183 | $ 1,559,154.73 | $ (1,559,154.73) | |
| Jan-15 | MA0000173 | $ 1,561,871.35 | | $ 1,561,871.35 |
| Feb-15 | MA0000178 | $ 2,237,099.07 | | $ 2,237,099.07 |
| Mar-15 | MA0000180 | $ 3,114,447.61 | | $ 3,114,447.61 |
| Apr-15 | MA0000182 | $ 3,355,653.03 | | $ 3,355,653.03 |

| | | | | |
|---|---|---|---|---|
| | | $ 20,269,071.06 | $ (10,000,000.00) | $ 10,269,071.07 |