# EXHIBIT C

# TRUST AGREEMENT

between

## PUERTO RICO CONVENTION CENTER DISTRICT AUTHORITY

and

## JPMORGAN CHASE BANK, N.A., AS TRUSTEE

Dated as of March 24, 2006

PUERTO RICO CONVENTION CENTER DISTRICT AUTHORITY
HOTEL OCCUPANCY TAX REVENUE BONDS

DM3\339573.16

**TABLE OF CONTENTS**

**Page**

ARTICLE I.

DEFINITIONS

Section 1.01 Definitions.................................................................................................... 3

ARTICLE II.

SECURITY FOR BONDS

Section 2.01 Discharge of Trust Agreement................................................................ 12
Section 2.02 Bonds Secured on a Parity Unless Otherwise Provided ...................... 13
Section 2.03 Limited Obligations ................................................................................. 13

ARTICLE III.

AUTHORIZATION, ISSUANCE, DELIVERY OF AND FORM OF THE BONDS

Section 3.01 Authorization, Purpose, Name and Compliance with this Article......... 13
Section 3.02 Issuance of Bonds. ................................................................................... 14
Section 3.03 Conditions to Issuance of Additional Bonds ......................................... 15
Section 3.04 Execution and Authentication of Bonds ................................................ 17
Section 3.05 Delivery of Bonds and Application of Proceeds.................................... 17
Section 3.06 Subordinated Loans ................................................................................. 17

ARTICLE IV.

TERMS OF BONDS

Section 4.01 Applicability of this Article ..................................................................... 18
Section 4.02 Registered Form, Denominations and Numbering of Bonds............... 18
Section 4.03 Negotiability ............................................................................................. 18
Section 4.04 Registration of Bonds; Persons Treated as Owners; Transfer and
              Exchange of Bonds. ................................................................................ 18
Section 4.05 Mutilated, Lost, Stolen or Destroyed Bonds.......................................... 19
Section 4.06 Payment of Bond Payments and Redemption Price. ............................ 19
Section 4.07 Book-Entry Registration ......................................................................... 20
Section 4.08 Notice of Redemption. ............................................................................. 20
Section 4.09 Optional Redemption Payments. ............................................................ 21
Section 4.10 Delivery of New Bonds Upon Partial Redemption of Bonds............... 21
Section 4.11 Nonpresentment of Bonds....................................................................... 21
Section 4.12 Cancellation of Bonds ............................................................................. 22

DM3\339573.16

## ARTICLE V.

### FUNDS AND ACCOUNTS

| Section 5.01 | Application of Hotel Occupancy Tax Funds | 22 |
| Section 5.02 | Bond Payment Fund | 23 |
| Section 5.03 | Proceeds Fund | 24 |
| Section 5.04 | Financial Agreements Fund | 25 |
| Section 5.05 | Debt Service Reserve Fund | 25 |
| Section 5.06 | Rebate Fund | 26 |
| Section 5.07 | Moneys to be Held in Trust | 27 |
| Section 5.08 | Investment of Moneys | 27 |

## ARTICLE VI.

### COVENANTS OF THE AUTHORITY

| Section 6.01 | Representations, Covenants and Warranties | 28 |
| Section 6.02 | Payment of Bond Payments | 30 |
| Section 6.03 | Rebate Payments | 30 |
| Section 6.04 | Other Payments by the Authority | 30 |
| Section 6.05 | Credit Facilities and Interest Rate Exchange Agreements | 30 |
| Section 6.06 | Tax Covenant | 31 |
| Section 6.07 | Defense of Trust Estate | 32 |

## ARTICLE VII.

### DEFAULTS AND REMEDIES

| Section 7.01 | Events of Default | 32 |
| Section 7.02 | Remedies Following an Event of Default | 32 |
| Section 7.03 | Use of Moneys Received From Exercise of Remedies | 33 |
| Section 7.04 | Owners of Majority in Aggregate Principal Amount of Bonds May Control Proceedings | 34 |
| Section 7.05 | Limitations on Rights of Owners Acting Individually | 34 |
| Section 7.06 | Trustee May Enforce Rights Without Bonds | 34 |
| Section 7.07 | Trustee to File Proofs of Claim in Receivership, Etc. | 35 |
| Section 7.08 | Delay or Omission No Waiver | 35 |
| Section 7.09 | Discontinuance of Proceedings on Event of Default; Position of Parties Restored | 35 |
| Section 7.10 | Waivers of Events of Default | 35 |

## ARTICLE VIII.

### CONCERNING THE TRUSTEE

| Section 8.01 | Appointment of Trustee; Acceptance of Duties | 36 |

ii

DM3\339573.16

| | | |
|---|---|---|
| Section 8.02 | Limitations on Responsibilities of Trustee | 36 |
| Section 8.03 | Trustee Not Liable For Failure Of Authority To Act | 36 |
| Section 8.04 | Quarterly Statements from Trustee | 36 |
| Section 8.05 | Trustee Protected in Relying on Certain Documents | 37 |
| Section 8.06 | Qualification of Trustee | 37 |
| Section 8.07 | Resignation of Trustee | 38 |
| Section 8.08 | Removal of Trustee | 38 |
| Section 8.09 | Appointment of Successor Trustee | 38 |
| Section 8.10 | Vesting of Rights in Successor Trustee | 39 |
| Section 8.11 | Compensation and Indemnification of Trustee | 39 |
| Section 8.12 | Trustee Under No Duty to Investigate | 40 |
| Section 8.13 | Trustee May Employ Agents | 40 |
| Section 8.14 | Trustee May Own Bonds | 40 |
| Section 8.15 | Rights of the Trustee | 40 |
| Section 8.16 | Trustee Notice to GDB | 41 |

## ARTICLE IX.

## SUPPLEMENTAL TRUST AGREEMENTS

| | | |
|---|---|---|
| Section 9.01 | Supplemental Trust Agreements Not Requiring Consent of Owners | 41 |
| Section 9.02 | Supplemental Trust Agreements Requiring Consent of Owners | 42 |
| Section 9.03 | Conditions to Effectiveness of Supplemental Trust Agreements | 43 |
| Section 9.04 | Amendment of Assignment Agreement or Pledge Agreement | 43 |

## ARTICLE X.

## DEFEASANCE

| | | |
|---|---|---|
| Section 10.01 | Discharge of Trust Agreement | 44 |
| Section 10.02 | Defeasance of Bonds | 44 |
| Section 10.03 | Defeasance of Less than all Bonds of a Particular Series or Maturity | 45 |

## ARTICLE XI.

## MISCELLANEOUS

| | | |
|---|---|---|
| Section 11.01 | Authority | 45 |
| Section 11.02 | Table of Contents, Titles and Headings | 46 |
| Section 11.03 | Interpretation and Construction | 46 |
| Section 11.04 | Further Assurances and Corrective Instruments | 46 |
| Section 11.05 | Evidence of Signature of Owners and Ownership of Bonds | 46 |
| Section 11.06 | Authorization of Officers and Employees | 47 |
| Section 11.07 | Parties Interested Herein | 47 |
| Section 11.08 | The Authority and Responsible Officers | 47 |

DM3\339573.16

| Section 11.09 | Manner of Giving Notices | 47 |
| Section 11.10 | Notices to Rating Agencies | 48 |
| Section 11.11 | No Individual Liability | 48 |
| Section 11.12 | Events Occurring on Days that are not Business Days | 48 |
| Section 11.13 | Severability | 48 |
| Section 11.14 | Applicable Law | 48 |

DM3\339573.16

# TRUST AGREEMENT

THIS **TRUST AGREEMENT** is made and entered into as of the date set forth on the cover page hereof, by and between the Puerto Rico Convention Center District Authority (the "Authority"), a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth") and JPMorgan Chase Bank, N.A., as trustee, a national banking association organized under the laws of the United States of America and authorized to accept and execute trusts of the character herein set out, and its permitted successors and assigns (the "Trustee").

**WHEREAS,** the Authority was created by Act No. 351 of the Legislature of Puerto Rico, approved September 2, 2000, as amended (hereinafter sometimes called the "Authority Act"), for the purpose of, among other things, possessing, financing, acquiring, developing, constructing, and operating the Puerto Rico Convention Center; and

**WHEREAS,** by virtue of the Authority Act, the Authority has, among others, the power to issue the Bonds (as defined herein).

**WHEREAS,** the Authority has determined that it is advisable to issue the Bonds, in one or more series, to finance or refinance a portion of the capital costs of certain projects and improvements constituting Construction Projects (defined herein);

**WHEREAS,** the Authority has further determined that it is appropriate to pledge the Hotel Occupancy Tax Funds (defined herein) pursuant to the Occupancy Tax Act (defined herein), to secure the Bonds; and

**WHEREAS,** the Authority deems it advisable to make provision for the issuance from time to time of revenue bonds on a parity with the Bonds issued initially under the provisions of this Trust Agreement for the purpose of financing and refinancing a portion of the capital costs of additional projects and improvements constituting Construction Projects; now, therefore,

## GRANTING CLAUSES

**NOW, THEREFORE,** The Authority, in consideration of the premises, the purchase of the Bonds by the Owners and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, in order to secure the payment of the Bond Payments on all Bonds at any time Outstanding hereunder, to secure the performance and observance of all the covenants and conditions set forth in the Bonds, this Trust Agreement and any Supplemental Trust Agreement, and to declare the terms and conditions upon and subject to which the Bonds are issued and secured, has entered into this Trust Agreement and has granted, assigned, pledged, bargained, sold, alienated, remised, released, conveyed, set over and confirmed, and by these presents does grant, assign, pledge, bargain, sell, alienate, remise, release, convey, set over and confirm unto the Trustee and to its successors and assigns forever, subject to the provisions of Section 8 of Article VI of the Constitution, all and singular the following described property, franchises and income, including any title or interest therein acquired after these presents (referred to herein as the "Trust Estate"):

I.

DM3\3339573.16

all Hotel Occupancy Tax Funds;

II.

All funds, accounts and all money from time to time held by the Trustee under this Trust Agreement or any Supplemental Trust Agreement and any fund or account other than (i) the Rebate Fund, (ii) any Defeasance Escrow Account and (iii) any fund or account created by a Supplemental Trust Agreement that is expressly excluded from the Trust Estate;

III.

all right, title and interest of the Authority acquired by the Trustee for the benefit of the Owners from GDB with respect to its rights under the Pledge Agreement, and any money from time to time held thereunder including the Pledge Account created thereunder;

IV.

all right, title and interest of GDB acquired by the Trustee for the benefit of the Owners from GDB with respect to its rights under the Assignment Agreement, including the Transfer Account created thereunder, and any money from time to time held therein;

V.

any and all other property, revenues or funds from time to time hereafter by delivery or by writing of any kind specially granted, assigned or pledged as and for additional security hereunder, by the Authority or anyone else, in favor of the Trustee, which is hereby authorized to receive any and all such property at any and all times and to hold and apply the same subject to the terms hereof.

**THIS TRUST AGREEMENT FURTHER WITNESSETH** that the proceeds from the issuance of Bonds that are pledged pursuant this Trust Agreement shall be used only for the purpose or purposes for which such funds are pledged;

**THIS TRUST AGREEMENT FURTHER WITNESSETH** that (i) the Hotel Occupancy Tax Funds pledged pursuant to Granting Clauses I, II, III, IV, and V of this Trust Agreement shall be valid and binding from the time such funds are transferred to GDB, (ii) any pledge of the proceeds of any Bonds that are pledged pursuant to Granting Clause II of this Trust Agreement shall be valid and binding from the date of the first issuance of the Bonds, and (iii) any pledge of the right, title, or interest in the Pledge Agreement and the Assignment Agreement that are pledged pursuant to Granting Clauses III and IV of this Trust Agreement shall be valid and binding from the date of the first issuance of the Bonds and of any pledge of the funds and accounts hereunder, under the Pledge Agreement, or under the Assignment Agreement shall be valid and binding from the date of the first issuance of the Bonds; and

**THIS TRUST AGREEMENT FURTHER WITNESSETH** that any Authority Representative is hereby authorized and directed, in the name and on behalf of the Authority, to execute and file with the appropriate office such financing statements as the person signing such

2

DM3\U39573.16

statements determines (with the advice of counsel) are necessary to preserve under applicable Commonwealth law, the lien on and pledge of Trust Estate for the benefit of the holders of the Bonds.

## ARTICLE I.

## DEFINITIONS

**Section 1.01    Definitions.**  Unless the context shall otherwise require, the terms defined in the recitals shall have such meanings throughout this Trust Agreement and the following terms shall have the following meanings in this Trust Agreement:

"*Accreted Value*" means any amount defined as such in a Supplemental Trust Agreement for purposes of determining the Redemption Price of, certain rights of the Owner of or certain other matters with respect to a Capital Appreciation Bond.

"*Accretion Date*" means any date defined as such in a Supplemental Trust Agreement for purposes of determining the Accreted Value or Maturity Value of a Capital Appreciation Bond.

"*Additional Bonds*" shall mean one or more series of Bonds of the Issuer issued pursuant to Section 3.02 or 3.03 hereof, other than the Series A Bonds issued on the date hereof pursuant to a first Supplemental Trust Agreement.

"*Assignment Agreement*" means the Assignment Agreement dated as of March 24, 2006, between the Tourism Company and GDB, pursuant to which the Tourism Company has irrevocably assigned to GDB its rights, duties and powers with respect to the receipt of Hotel Occupancy Tax Funds for the benefit of the bondholders.

"*Authority*" means the Puerto Rico Convention Center District Authority.

"*Authority Act*" means Act No. 351 of the Legislature of Puerto Rico, approved September 2, 2000, as the same shall be amended from time to time or any successor legislation by which the Authority shall be created and from which it shall derive its powers.

"*Authority Representative*" means the Executive Director or any other officer or employee of the Authority authorized by law to act as an Authority Representative under this Trust Agreement or any Supplemental Trust Agreement.

"*Authorized Denomination*" means the denomination or denominations defined as such in a Supplemental Trust Agreement for purposes of determining the denominations of a Series of Bonds.

"*Bond Counsel*" means (a) as of the date of issuance of the first Series of Bonds, Duane Morris LLP, and (b) as of any other date, Duane Morris LLP or other attorneys selected by the Authority who have nationally recognized expertise in the issuance of municipal securities, the interest on which is excluded from gross income for federal income tax purposes.

3

DM3\139573.16

"*Bond Payment Date*" means each date on which Bond Payments are due and includes, but is not limited to, the maturity date of any Bond; each Interest Payment Date on each Current Interest Bond; and the mandatory sinking fund redemption dates of term Bonds that are subject to mandatory sinking fund redemption in accordance with a mandatory sinking fund redemption schedule set forth in a Supplemental Trust Agreement.

"*Bond Payment Fund*" means the special fund created by Section 5.02 hereof.

"*Bond Payments*" means (a) with respect to a Current Interest Bond, the interest due on such Bond on each Interest Payment Date and the principal and interest due on such Bond at maturity; (b) with respect to a Capital Appreciation Bond, the Maturity Value due on such Bond at maturity; and (c) with respect to term Bonds that are subject to mandatory sinking fund redemption in accordance with a schedule set forth in a Supplemental Trust Agreement, the principal and interest or the Accreted Value payable on such Bonds on the date on which they are subject to mandatory sinking fund redemption in accordance with such schedule. "Bond Payments" does not include the Redemption Price of any Bond.

For purposes of this definition:

(i)      Bond Payments due on any Interest Payment Date that are payable from accrued interest or capitalized interest held in the Bond Payment Fund pursuant to Section 5.02 hereof will be excluded in determining the amount of Bond Payments due in the Fiscal Year in which such Interest Payment Date occurs for purposes of determining the annual Bond Payments for the certificate required by Section 3.03(b).

(ii)     If any Bonds bear interest at an adjustable or variable interest rate such that the Bond Payments due in a Fiscal Year or on a Bond Payment Date cannot be determined with certainty on the date on which Hotel Occupancy Tax Funds are to be paid to the Trustee pursuant to the Pledge Agreement, or in determining the amount of Bond Payments becoming due during a Fiscal Year for purposes of preparing the certificate required by Section 3.03(b), the amount of interest included in the Bond Payments due on such Bonds in such Fiscal Year or on such Bond Payment Date shall be based on the interest rate estimated by the Authority, or as stated in any Supplemental Trust Agreement relating thereto.

(iii)    If the Authority purchases or arranges for a Credit Facility or an Interest Rate Exchange Agreement with respect to any Bonds pursuant to Section 6.05 hereof, (A) moneys paid or payable to the provider of the Credit Facility to reimburse the provider for moneys paid by the provider that are used to make Bond Payments (as defined in the first two sentences of this definition) and (B) moneys paid or payable to the provider of the Interest Rate Exchange Agreement for moneys paid by the provider that are used to make Bond Payments (as defined in the first two sentences of this definition) may, but in each case if and to the extent provided in a Supplemental Trust Agreement or in a separate agreement between the Authority and the Credit Facility or Interest Rate Exchange Agreement provider entered into pursuant to Section 6.05 hereof, be treated as Bond Payments on the Bonds to which the Credit Facility or Interest Rate Exchange Agreement relates.

4

"*Bonds*" means any bond or bonds, as the case may be, authenticated under, and issued pursuant to, the Trust Agreement.

"*Business Day*" means any day other than a Saturday, a Sunday or a day on which banks in New York, New York, San Juan, Puerto Rico or any city identified in a Supplemental Trust Agreement are authorized by law to remain closed.

"*Capital Appreciation Bond*" means a Bond on which no payments are due until maturity or redemption prior to maturity.

"*Code*" means the Internal Revenue Code of 1986, as amended, and regulations thereunder.

"*Commonwealth*" means the Commonwealth of Puerto Rico.

"*Constitution*" means the Constitution of the Commonwealth.

"*Construction Account*" means the Construction Account within the Proceeds Fund created by Section 5.03 hereof.

"*Construction Costs*" means all costs and expenses paid or incurred or to be paid or incurred (including the reimbursement of the Authority for any such costs and expenses originally paid or incurred by the Authority) in connection with:

     (a)    the design of, acquisition of the site for, construction of, and improvements made as part of, the Construction Projects;

     (b)    financing costs, including, but not limited to, costs and expenses that the Authority deems necessary or advantageous in connection with the sale of the Bonds and the administration of the Bonds, the Trust Estate, this Trust Agreement and any Supplemental Trust Agreement, including, but not limited to, costs and expenses relating to the engagement of consultants, financial advisors, underwriters, bond insurers, letter of credit banks, rating agencies, attorneys, trustees, paying agents, registrars, other agents and other Persons in connection with the issuance of the Bonds, the Trust Estate, this Trust Agreement or any Supplemental Trust Agreement;

     (c)    payment of interest on the Bonds during the construction of any Construction Projects;

     (d)    the funding of the Debt Service Reserve Fund; and

     (e)    working capital on or before the completion of any Construction Projects.

"*Construction Project*" means a project which may be financed, in whole or in part, with Hotel Occupancy Tax Funds in accordance with the Occupancy Tax Act, the Authority Act and the Tourism Company Administrative Determination No. 05-01, dated May 4, 2005.

5

"*Credit Facility*" means any letter of credit, insurance, stand-by credit or liquidity agreement or other forms of credit ensuring timely payment of any Bonds, including the Bond Payments on or the Redemption Price or purchase price of such Bonds, that is entered into in accordance with Section 6.05 hereof. References to "Credit Facility" with respect to any Series of Bonds shall be ineffective when such Bonds are not supported by a Credit Facility.

"*Current Interest Bond*" means a Bond on which interest is payable on Interest Payment Dates prior to maturity or redemption prior to maturity.

"*Debt Service Reserve Fund*" means the special fund created by Section 5.05 hereof.

"*Defeasance Escrow Account*" means any trust account into which money and/or Defeasance Securities are deposited for the purpose of defeasing any Bonds in accordance with Section 10.02 hereof.

"*Defeasance Security*" means Government Obligations that, at the time they are deposited into a Defeasance Escrow Account either (i) cannot be redeemed prior to maturity at the option of any Person other than the owner thereof or (ii) the redemption date of which has been irrevocably fixed by an irrevocable exercise of an option to redeem on such date or an irrevocable covenant to exercise an option to redeem on such date (in which case the fixed redemption date shall be treated as the maturity date for purposes of Article X hereon).

"*Earnings Account*" means the earnings account within the Proceeds Fund created by Section 5.03 hereof.

"*Event of Default*" means an event described in Section 7.01 hereof.

"*Executive Director*" means the Executive Director or any Assistant Executive Director of the Authority for the time being, or if there is no Executive Director or Assistant Executive Director, then any person designated by the Authority to perform the functions of the Authority.

"*Financial Agreements Fund*" means the special fund created by Section 5.04 hereof.

"*Fiscal Year*" means the period commencing on July 1st in each calendar year and ending on the last day of June of the next succeeding calendar year.

"*Government Obligations*" means (i) direct obligations of, or obligations the principal of and the interest on which are unconditionally guaranteed by, the United States Government, (ii) bonds, debentures or notes issued by any of the following Federal Agencies: Banks for Cooperatives, Federal Intermediate Credit Banks, Federal Home Loan Banks, Export-Import Bank of the United States, Government National Mortgage Association or Federal Land Banks, (iii) obligations issued or guaranteed by an agency of the United States of America or person controlled or supervised by and acting as an instrumentality of the United States of America pursuant to authority granted by the Congress, (iv) municipal obligations, the payment of the principal of and interest and redemption premium, if any on which are irrevocably secured by obligations described in clause (i) of this definition and which obligations are not subject to redemption prior to the date on which the proceeds attributable to the principal of the obligations are to be used and have been deposited in an escrow account which is irrevocably pledged to the

6

payment of the principal of and interest and redemption premium, if any, on such municipal obligations, and (v) evidences of ownership of proportionate interests in future interest or principal payments on obligations specified in clauses (i), (ii), (iii) and (iv) of this definition held by a bank (including the Trustee) or trust company as custodian and which underlying obligations are not available to satisfy any claim of the custodian or any person claiming through the custodian or to whom the custodian may be obligated.

*"GDB"* means Government Development Bank for Puerto Rico, a public corporation of the Commonwealth created by Act No. 17 of the Legislature of Puerto Rico, approved September 23, 1948, as the same shall be amended from time to time or any successor legislation by which the shall be created and from which it shall derive its powers.

*"GDB Certificate"* means the annual certificate delivered on or before May 30 of each Fiscal Year by GDB to the Authority, the Tourism Company and the Trustee, setting forth the total monthly amounts to be delivered by GDB to the Trustee to pay principal and interest due on the Bonds for the upcoming Fiscal Year.

*"Hotel Occupancy Tax"* means the tax set forth in Section 24 of the Occupancy Tax Act.

*"Hotel Occupancy Tax Funds"* means all Hotel Occupancy Tax Revenues that are deposited in the Transfer Account on and after the date hereof.

*"Hotel Occupancy Tax Revenues"* means all revenues derived by the Tourism Company from the Hotel Occupancy Tax, including all penalties, surcharges and interest thereon.

"*Interest Payment Date*" means any date defined as such in a Supplemental Trust Agreement for purposes of paying the interest on a Series of Current Interest Bonds.

"*Interest Rate Exchange Agreement*" means any interest rate exchange agreement authorized by law and entered into with respect to the Bonds or any portion of the Trust Estate that is entered into in accordance with Section 6.05 hereof.

"*Letter of Representations*" means the Letter of Representations between the Authority and The Depository Trust Company, New York, New York or any successor depository with respect to the book-entry registration system for the Bonds.

*"Loan"* means any loan as set forth in the Supplemental Trust Agreement made by GDB or any other entity to the Authority.

*"Loan Payment Account"* means the Loan Payment Account within the Proceeds Fund created by Section 5.03 hereof.

*"Maturity Value"* means any amount defined as such in a Supplemental Trust Agreement for purposes of determining the amount payable to the Owner of a Capital Appreciation Bond at the maturity of such Capital Appreciation Bond.

*"Maximum Annual Debt Service Requirement"* means the greatest total amount of principal and interest due on the Bonds in any calendar year.

DM3\339573.16

"*Moody's*" means Moody's Investor Service and its successors.

"*New Money Bonds*" means Bonds issued for the purpose of funding the Proceeds Fund.

"*Occupancy Tax Act*" means Act No. 272 of the Legislature of Puerto Rico, approved September 9, 2003, as amended and supplemented from time to time and any successor or replacement provision of law.

"*Operations Center*" means the operations center of the Trustee in Dallas, Texas or at such other location as the Trustee may designate from time to time by written notice to the Authority.

"*Original Principal Amount*" means any amount defined as such in a Supplemental Trust Agreement for purposes of determining certain rights of the Owner of, or certain other matters with respect to, a Capital Appreciation Bond.

"*Original Purchaser*" means the Person defined as such in a Supplemental Trust Agreement for purposes of purchasing a Series of Bonds from the Authority.

"*Outstanding*" means all Bonds that have been executed and delivered, except:

(a)   any Bond on which all Bond Payments due or to become due have been paid at maturity;

(b)   any Bond on which the Redemption Price due or to become due has been paid in accordance with the redemption provisions applicable to such Bond;

(c)   Bonds in lieu of which other Bonds have been executed and delivered pursuant to the provisions of this Trust Agreement or any Supplemental Trust Agreement relating to the transfer and exchange of Bonds or the replacement of mutilated, lost, stolen or destroyed Bonds:

(d)   Bonds that have been canceled by the Trustee or that have been surrendered to the Trustee for cancellation;

(e)   Bonds on which all Bond Payments or the Redemption Price is due and for which the Trustee holds moneys sufficient to pay the Bond Payments or Redemption Price for the benefit of the Owner thereof pursuant to Section 4.11 hereof; and

(f)   Bonds that have been defeased pursuant to Article X hereof.

"*Owner*" of a Bond means the registered owner of such Bond as shown in the registration records of the Trustee.

"*Permitted Investments*" means:

(a)   Government Obligations;

8

DM3\339573.16

(b) direct and general obligations of any state or territory of the United States of America to the payment of the principal of and interest on which the full faith and credit of such state or territory is pledged, provided that such obligations are rated, on the date of investment therein, in any of the three highest rating categories (without regard to any graduations, within any such category) by both Moody's or any successors thereto and S&P or any successors thereto;

(c) bankers' acceptances, certificates of deposit or time deposits of any bank or national banking association (including the Trustee), trust company or savings and loan association (including any investment in pools of such bankers' acceptances, certificates of deposit or time deposits), which to the extent that such obligations are not insured by the Federal Deposit Insurance Corporation, are either (A) issued by a bank, trust company or savings and loan association having a combined capital and surplus aggregating at least $50,000,000 or (B) collateralized at all times by such securities as are described in clauses (a) or (b) above and (i) below, having a market value at least equal to the principal amount of such bankers' acceptances, certificates of deposit or time deposits (or portion thereof not so insured); provided that the Trustee has a perfected first security interest in the collateral and that such collateral is held free and clear of claims by third parties;

(d) any repurchase, reverse repurchase, forward purchase or investment agreement with any bank or trust company organized under the laws of any state of the United States or the Commonwealth or any national banking association (including the Trustee), insurance company, or government bond dealer reporting to, trading with, and recognized as a primary dealer by the Federal Reserve Bank of New York and a member of the Security Investors Protection Corporation, which agreement is secured by any one or more of the securities described in clauses (a) and (b) above and (i) below, provided that the Trustee has a perfected first security interest in the collateral and that such collateral is held free and clear of claims by third parties;

(e) obligations, whether or not insured, issued by any state or territory of the United States, or any political subdivision, agency or, instrumentality thereof which are rated, on the date of investment therein, in one of the three highest rating categories (without regard to any gradations within any such category) by both Moody's or any successors thereto and S&P or any successors thereto;

(f) participating shares in a mutual fund or investment pool for local government investment; provided that the investments of such mutual fund or investment pool are rated in one of the three highest rating categories (without regard to any graduations within any such category) by both Moody's or any successors thereto, and S&P or any successors thereto;

(g) (1) shares of stock in a corporation rated in the highest rating category by Moody's or any successors thereto and S&P or any successors thereto (without regard to graduations within such category) that (A) is a regulated investment company within the meaning of Section 851(a) of the Internal Revenue Code of 1986, as amended, and, meets the requirements of Section 852(a) of said Code for the calendar year; (B) invests all of

9

its assets in obligations described in clauses (a) and (b) above; and (C) has at least 98% of (I) its gross income derived from interest on, or gain from the sale of or other disposition of, such obligations or (II) the weighted average of its assets is represented by investments in such obligations or (2) money market accounts of the Trustee or any state or federally chartered bank, banking associations, trust company or subsidiary trust company that is rated or whose parent state bank is rated in the highest short-term rating category or in one of the two highest long-term rating categories by Moody's or any successors thereto and S&P or any successors thereto (without regard to any gradations within such category);

(h)    any other obligations permitted under the laws of the Commonwealth which are rated, or which are issued by issuers which are rated, on the date of investment therein, in any of the three highest rating categories (without regard to any gradations within any such category) by both Moody's or any successors thereto and S&P or any successors thereto, or which are collateralized by Permitted Investments;

(i)    Commercial paper, rated "P-1" by Moody's or "A-1" by S&P, issued by a corporation or banking institution organized under the laws of the United States or any state or territory thereof; and

(j)    money market accounts of any state, Commonwealth or federally chartered bank, banking association, trust company or subsidiary trust company, including the Trustee, that is rated or whose parent bank is rated in the highest short-term rating category or in the highest long-term rating category by Moody's Investors Service or Standard & Poor's (without regard to any gradations within such category) or money market funds registered under the Investment Company Act of 1940, as amended, whose shares are registered under the Securities Act of 1933, as amended, and having a rating by Standard & Poor's of "AAAm-G" or "AAAm".

"*Person*" means any natural person, firm, corporation, partnership, limited liability company, state (including the Commonwealth), political subdivision of any state, other public body or other organization or association.

"*Pledge Account*" means the Pledge Account established under the Pledge Agreement.

"*Pledge Agreement*" means the Pledge and Assignment Agreement dated as of March __, 2006, by and among GDB, the Trustee and the Authority, pursuant to which GDB will deposit Hotel Occupancy Tax Funds received from the Tourism Company into the Pledge Account, which Hotel Occupancy Tax Funds will be transferred by GDB to, and applied by, the Trustee in accordance with the terms of this Trust Agreement.

"*Principal Amount*" means (a) with respect to any Outstanding Current Interest Bond, the principal amount of such Bond; (b) with respect to any Outstanding Capital Appreciation Bond, the Accreted Value of such Bond as of the date on which the Bond is being determined; and (c) with respect to all the Outstanding Bonds together, the sum of the amounts determined pursuant to clauses (a) and (b).

"*Proceeds Fund*" means the special fund created by Section 5.03 hereof.

10

DM3\339573.16

"*Program Costs*" means the costs and expenses set forth in items (b) and (c) included in the definition of Construction Costs.

"*Puerto Rico Convention Center*" means the Puerto Rico Convention Center which shall be developed and operated on the real property owned or leased by the Authority, or by the people or entities designated by the Authority, and which shall be suitable for the following purposes and events: congresses, conventions, conferences, trade shows, exhibitions, meetings and other business, entertainment, public assemblies, social, cultural, historic and scientific events.

"*Rating Agency*" means, with respect to the Bonds, each nationally recognized securities rating service that has, at the request of the Authority, a rating then in effect for the unenhanced Bonds.

"*Rating Confirmation*" means, with respect to the Bonds, written evidence from a Rating Agency that no underlying Bond rating then in effect from such Rating Agency will be withdrawn, reduced or suspended solely as a result of an action to be taken hereunder.

"*Rebate Fund*" means the special fund created by Section 5.06 hereof.

"*Record Date*" means (a) with respect to any Interest Payment Date that is the first day of a month, the fifteenth day of the month (whether or not a Business Day) preceding the month in which the Interest Payment Date occurs: (b) with respect to any Interest Payment Date that is the fifteenth day of a month, the first day of such month (whether or not a Business Day); and (c) with respect to any other Interest Payment Date, the date designated as the Record Date for such Interest Payment Date in a Supplemental Trust Agreement.

"*Redemption Price*" means the amount due on a Bond on the date on which it is redeemed prior to maturity pursuant to the redemption provisions applicable to such Bond. Such term does not include the principal and interest or Accreted Value due on term Bonds on the dates such Bonds are to be redeemed in accordance with a mandatory sinking fund redemption schedule set forth in a Supplemental Trust Agreement.

"*Refunding Bonds*" means Bonds issued for the purpose of refunding, and proceeds of which are used to refund, New Money Bonds or other Refunding Bonds.

"*Reserve Account Credit Facility*" means any letter of credit, surety bond or insurance policy meeting the criteria set forth in a Supplemental Trust Agreement authorizing the issuance of a Series of Bonds.

"*Responsible Officer*" means any officer in the corporate trust department of the Trustee and any other person authorized by a writing signed by an officer of the Trustee to act as a Responsible Officer under this Trust Agreement or any Supplemental Trust Agreement.

"*Series*" means the Bonds designated as a separate series in a Supplemental Trust Agreement and any Bonds authenticated and delivered in lieu of or in substitution for such Bonds pursuant to this Trust Agreement or any Supplemental Trust Agreement.

11

"*Series Debt Service Reserve Requirement*" means for each Series of Bonds, the Series Debt Service Reserve Requirement as prescribed in the Supplemental Trust Agreement authorizing such Series of Bonds.

"*Supplemental Trust Agreement*" means any trust agreement supplementing or amending this Trust Agreement entered into pursuant to Article IX hereof.

"*S&P*" means Standard & Poor's Ratings Services, a division of the McGraw–Hill Companies, Inc., and its successors.

"*Special Record Date*" means a special date fixed to determine the names and addresses of Owners of Bonds for purposes of paying defaulted interest on Current Interest Bonds in accordance with Section 4.06 hereof.

"*Tax Certificate*" means with respect to each Series of Bonds on which the Authority intends the interest to be excluded from gross income for federal income tax purposes, (a) the arbitrage and use of proceeds certificate or other instrument that sets forth the Authority's expectations regarding the investment and use of proceeds of such Bonds and other matters relating to Bond Counsel's opinion regarding the federal income tax treatment of interest on such Bonds, including any instructions delivered by Bond Counsel in connection with such certificate, instrument or opinion; and (b) any amendment or modification of any such certificate, instrument or instructions that is accompanied by an opinion of Bond Counsel stating that the amendment or modification will not adversely affect the exclusion of interest on such Bonds from gross income for federal income tax purposes.

"*Tourism Company*" means the Puerto Rico Tourism Company, a public corporation of the Commonwealth.

"*Transfer Account*" means the Transfer Account established pursuant to the Assignment Agreement.

"*Trust Agreement*" means this Trust Agreement as amended or supplemented by any Supplemental Trust Agreements.

"*Trust Estate*" means the property granted to the Trustee the Granting Clauses hereof.

"*Trustee*" means JPMorgan Chase Bank, N.A., acting in its capacity as trustee hereunder, and in the event of a merger or an acqustion of the Trustee, such successor thereto, or any successor Trustee appointed hereunder.

## ARTICLE II.

## SECURITY FOR BONDS

**Section 2.01     Discharge of Trust Agreement.**    If this Trust Agreement is discharged in accordance with Section 10.01 hereof, the right, title and interest of the Trustee and the Owners in and to the Trust Estate shall terminate and be discharged; otherwise this Trust Agreement is to be and remain in full force and effect.

DM3\339573.16

**Section 2.02    Bonds Secured on a Parity Unless Otherwise Provided**. The Trust Estate shall be held by the Trustee for the equal and proportionate benefit of the Owners of all Outstanding Bonds, and any of them, without preference, priority or distinction as to lien or otherwise, except as expressly set forth in this Trust Agreement or any Supplemental Trust Agreement.

**Section 2.03    Limited Obligations**. Notwithstanding any other provision of this Trust Agreement:

(a)    The Bond Payments shall be payable solely from Hotel Occupancy Tax Funds and earnings on the funds and accounts established under this Trust Agreement that are received by the Authority or the Trustee and moneys held in the Bond Payment Fund. The Owners may not look to any other revenues of the Authority for the payment of the Bonds.

(b)    All financial obligations of the Authority under this Trust Agreement, every Supplemental Trust Agreement and the Bonds (i) are special, limited obligations of the Authority payable solely from the Trust Estate and shall not constitute nor give rise to a pecuniary liability or a charge against the general credit of the Authority or the Commonwealth and (ii) shall not be deemed or construed as creating a debt, liability or obligation of the Commonwealth, or any political subdivision of the Commonwealth, nor a pledge of the faith and credit of the Commonwealth or any political subdivision or municipality of the Commonwealth within the meaning of the Constitution or the laws of the Commonwealth concerning or limiting the creation of indebtedness by the Commonwealth or any political subdivision of the Commonwealth.

(c)    The provisions of this Section are hereby expressly incorporated into each Supplemental Trust Agreement. The Bonds shall contain statements substantially to the effect of subsections (a) and (b) of this Section.

## ARTICLE III.

## AUTHORIZATION, ISSUANCE, DELIVERY OF AND FORM OF THE BONDS

**Section 3.01    Authorization, Purpose, Name and Compliance with this Article**. The Authority hereby authorizes the issuance of the Bonds pursuant to the Authority Act for the purpose of financing any Loans, any Construction Projects or Refunding Bonds that were issued to finance any Loans or any Construction Projects. The Bonds may be issued in one or more separate Series pursuant to one or more Supplemental Trust Agreements and shall be named "Puerto Rico Convention Center District Authority Hotel Occupancy Tax Revenue Bonds." The Bonds of each Series may also include the name of, or other information identifying, the Series of which they are a part, together with such further or different designations as may be deemed appropriate, as provided by a Supplemental Trust Agreement. The aggregate principal amount of Bonds which may be issued shall not be limited except as provided herein or as may be limited by law provided that the aggregate principal amount of Bonds of each Series shall not exceed the amount specified in the Supplemental Trust Agreement

13

authorizing each such Series of Bonds.  Bonds may only be issued in accordance with this Article and the Authority Act.

### Section 3.02    Issuance of Bonds.

(a)    The initial Series of Bonds may not be issued until (i) receipt by the Trustee of executed copies of each of the Pledge Agreement, the Assignment Agreement and resolutions of each of the Authority, the Tourism Company and GDB approving the transaction and (ii) the provisions set forth in 3.02(b) are satisfied.

(b)    No Series of Bonds may be issued until receipt by the Trustee of

(i)    Except with respect to the issuance of the first series of Bonds, reaffirmations of the Pledge Agreement and the Assignment Agreement from each of the Authority, the Tourism Company and GDB;

(ii)    A written opinion of Bond Counsel in form and substance satisfactory to the Trustee to the effect (which may be subject to customary assumptions and limitations) that (I) the Bonds have been duly authorized, executed and delivered by the Authority and are valid and binding special, limited obligations of the Authority, payable from the sources provided in this Trust Agreement together with the related Supplemental Trust Agreement and the applicable Supplemental Trust Agreement; (II) this Trust Agreement creates a valid pledge of and lien on the Trust Estate, subject to the terms hereof; (III) the Trust Agreement, the Supplemental Trust Agreement and the Pledge Agreement have been duly authorized executed and delivered by the Authority; and (IV) if the interest on the Bonds is intended by the Authority to be excluded from gross income for federal income tax purposes, interest on the Bonds is excluded from gross income for federal income tax purposes;

(iii)    The written order to the Trustee executed by an Authority Representative to authenticate and deliver the Bonds to the purchaser(s) therein identified upon payment to the Trustee for the account of the Authority of the purchase price therein specified, plus accrued interest, if any; and

(iv)    An original executed counterpart of all other documents required under the terms hereof, or any Supplemental Trust Agreement.

(c)    Before any series of Bonds is issued, the Authority and the Trustee shall enter into a Supplemental Trust Agreement authorizing the issuance of each Series of Bonds, which Supplemental Trust Agreement specifies the following:

(i)    The Series designation, the name, the aggregate principal amount, the Authorized Denominations, the dated date, the maturity date or dates and the form of the Bonds, as bonds or notes, and, if the Bonds are Capital Appreciation Bonds, the aggregate Original Principal Amount of each Series and of each Authorized Denomination of such Series.

14

DM3\39573.16

(ii)    If the Bonds are Current Interest Bonds, the interest rate or rates, or the method for determining the interest rate or rates on the Bonds, which rates may be fixed, adjustable or variable or any combination thereof, and, if any such rate is adjustable or variable, the standard, index, method or formula to be used to determine the interest rate and the maximum interest rate applicable to the Bonds; and the Interest Payment Date or Dates for the payment of such interest.

(iii)   If the Bonds are Capital Appreciation Bonds, the Maturity Value, Accreted Value and Accretion Dates, or the manner of determining the same.

(iv)    The redemption provisions, if any, for the Bonds.

(v)     The form of the Bonds.

(vi)    The manner in which the proceeds of the Bonds are to be applied.

(vii)   Other provisions required hereunder to be set forth in the Supplemental Trust Agreement.

(viii)  Any variations from the terms set forth in this Trust Agreement with respect to the Bonds.

(ix)    Any other provisions deemed to be advisable or desirable to be included in such Supplemental Trust Agreement that do not violate and are not in conflict with this Trust Agreement or any previous Supplemental Trust Agreement.

**Section 3.03    Conditions to Issuance of Additional Bonds.** Additional Bonds may be issued under a Supplemental Trust Agreement and delivered pursuant to this Section 3.03 to pay or provide for the payment of all or part of the Construction Costs of any Construction Project or the improvement, reconstruction or rehabilitation of one or more Construction Projects. No Series of Additional Bonds may be issued under a Supplemental Trust Agreement unless each of the following conditions applicable thereto has been satisfied:

(a)     Before any Additional Bonds are issued, all of the following conditions shall be satisfied:

(i)     There is no Event of Default under this Trust Agreement or in the event there is an Event of Default under this Trust Agreement, the Event of Default will be cured upon the issuance of the Bonds and the application of the proceeds of the Bonds in accordance with the Supplemental Trust Agreement authorizing the issuance of the Additional Bonds.

(ii)    All accumulations required to be made into the Bond Payment Fund or other similar account, and each account in the Debt Service Reserve Fund, for Outstanding Bonds, are current.

(iii)   All assignments or deposits required to be made in accordance with the terms the Authority Act and the Occupancy Tax Act are current.

15

(iv)   A certificate has been delivered showing compliance with all applicable provisions of the Occupancy Tax Act.

(v)   Bond Counsel has delivered a written opinion, satisfying the requirements of Section 3.02(a)(ii), in form and substance satisfactory to the Trustee with respect to the issuance of the Additional Bonds.

(vi)   GDB shall have consented in writing to the issuance of such Additional Bonds.

(vii) The Tourism Company shall have consented in writing to the issuance of such Additional Bonds.

(b)   Before any Additional Bonds constituting New Money Bonds are issued or incurred, it shall be determined that for the preceding Fiscal Year or any 12 consecutive months out of the preceding 24 months, the Hotel Occupancy Tax Funds for such period, will equal not less than 140% of the Maximum Annual Debt Service Requirement for all outstanding Bonds, after giving effect to the series of Additional Bonds to be issued, as certified by an Authority Representative or GDB; provided, that if there has been an increase in the amount of Hotel Occupancy Tax Funds available for transfer into the Transfer Account, the foregoing coverage calculation may be computed based upon the amount of the Hotel Occupancy Tax Funds that would have been realized had such an increase in Hotel Occupancy Tax Funds had been pledged during the period of such calculation.

(c)   Before any Additional Bonds constituting Refunding Bonds are issued, all of the following additional conditions shall be satisfied:

(i)   Either the requirements of Subsection (b) of this Section 3.03 shall have been met (as if such Refunding Bonds were New Money Bonds) or a certificate of an Authority Representative shall be provided stating that following the issuance of the Refunding Bonds (including Bond Payments with respect to the Refunding Bonds, but excluding Bond Payments with respect to the refunded Bonds), (i) the aggregate amount of Bond Payments due in any Fiscal Year, through and including the latest maturity of any Bonds then Outstanding, shall be no greater than immediately prior to the issuance of such Refunding Bonds and (ii) there will be no increase in the Maximum Annual Debt Service Requirement.

(ii)   If any of the Bonds to be refunded are to be redeemed prior to their scheduled maturity date, an Authority Representative has directed the Trustee in writing to deliver redemption notices and to redeem the Bonds to be refunded in accordance with the provisions of this Trust Agreement and any applicable provisions of any Supplemental Trust Agreement.

(d)   A written certification or opinion by or on behalf of an Authority Representative that the requirements of this Section have been satisfied shall be conclusively presumed to be accurate in determining the right to authorize, issue, sell and deliver the Series of Bonds proposed to be issued.

16

DM3\339573.16

(e)    Until all Bond Payments and Program Costs are paid in full and while any Bonds are Outstanding, no bonds, notes, debentures or other obligations shall be issued or incurred having a lien on the Trust Estate prior and superior to the lien thereon of the Bonds.

**Section 3.04    Execution and Authentication of Bonds.** The Bonds shall be signed by, or bear the facsimile signatures of the Executive Director, or any other Authority Representative designated in a Supplemental Trust Agreement, and a facsimile of the corporate seal of the Authority shall be imprinted on the Bonds. In case any officer whose signature or facsimile shall appear on any Bonds shall cease to be such officer before the delivery of such Bonds, such signature or facsimile shall nevertheless be valid and sufficient for all purposes the same as if such officer had remained in office until such delivery, and also any Bond may be signed or bear the facsimile signature of such persons as at the actual time of the execution of such Bond shall be the proper officers to execute such Bond although at the date of such Bond such persons may not have been such officers.

Only such of the Bonds as shall have been endorsed thereon a certificate of authentication duly executed by the Trustee, shall be entitled to any benefit or security under this Trust Agreement. No Bond shall be valid or become obligatory for any purpose unless and until such certificate of authentication shall have been duly executed by the Trustee, and such certificate of the Trustee upon any such Bond shall be conclusive evidence that such Bond has been duly authenticated and delivered under this Trust Agreement. The Trustee's certificate of authentication on any Bond shall be deemed to have been duly executed if signed by a Responsible Officer, but it shall not be necessary that the same Responsible Officer sign the certificate of authentication on all of the Bonds that may be issued hereunder at any one time.

**Section 3.05    Delivery of Bonds and Application of Proceeds.** Upon the execution and delivery by the Authority and the Trustee of the Trust Agreement prior to the issuance of the first Series of Bonds and execution and delivery by the Authority and the Trustee the Supplemental Trust Agreement relating to such Series of Bonds, the Trustee shall deliver the Bonds of the Series authorized by such Supplemental Trust Agreement to the Original Purchaser in exchange for the purchase price thereof and the purchase price shall be applied as provided in the Supplemental Trust Agreement relating to such Series of Bonds.

**Section 3.06    Subordinated Loans.** Subordinated loans or other subordinated bonds, notes or other obligations may be incurred by, and the proceeds thereof be applied by, the Authority for Construction Projects permitted under the Authority Act and under this Trust Agreement, provided, however, that any items of the Trust Estate pledged to the payment of such subordinated loans or other subordinated bonds, notes or other obligations shall be subordinate in all respects to the pledge of revenues, moneys, securities and funds pledged under this Trust Agreement.

17

DM3\339573.16

## ARTICLE IV.

## TERMS OF BONDS

**Section 4.01 Applicability of this Article.** The terms set forth in this Article shall apply to all Bonds unless, and except to the extent, provided otherwise by the Supplemental Trust Agreement.

**Section 4.02 Registered Form, Denominations and Numbering of Bonds.** The Bonds shall be issued only as fully registered Bonds in Authorized Denominations (provided that no Bond may be in a denomination which exceeds the principal or Maturity Value coming due on any maturity date of the Series of which it is a part and no individual Bond may be issued for more than one maturity) and shall be numbered in such manner as shall be determined by the Trustee.

**Section 4.03 Negotiability.** The Bonds are hereby declared to be negotiable instruments. The Bonds shall, subject to the registration provisions hereof, be fully negotiable and shall have all the qualities of negotiable paper, and the Owners thereof shall possess all rights enjoyed by the holders or owners of negotiable instruments under the provisions of the Uniform Commercial Code-Investment Securities. The Bond Payments on and Redemption Price of the Bonds shall be paid, and the Bonds shall be transferable, free from and without regard to any equities, set-offs or cross-claims between the Trustee and the original or any intermediate owner of any Bonds.

**Section 4.04 Registration of Bonds; Persons Treated as Owners; Transfer and Exchange of Bonds.**

(a) Records for the registration and transfer of Bonds shall be kept by the Trustee which is hereby appointed the registrar for the Bonds. The Bond Payments on and Redemption Price of any Bond shall be payable only to or upon the order of the Owner or his legal representative (except as otherwise herein provided with respect to Record Dates and Special Record Dates for the payment of interest). Upon surrender for transfer of any Bond at the Operations Center of the Trustee, duly endorsed for transfer or accompanied by an assignment duly executed by the Owner or his attorney duly authorized in writing, the Trustee shall enter such transfer on the registration records and shall execute and deliver in the name of the transferee or transferees a new fully registered Bond or Bonds of a like Series, maturity, aggregate principal amount and interest rate or Maturity Value, bearing a number or numbers not previously assigned.

(b) Fully registered Bonds may be exchanged at the Operations Center of the Trustee for an equal aggregate principal amount or Maturity Value of Bonds of the same Series, maturity and interest rate but of other Authorized Denominations. The Trustee shall execute and deliver Bonds for which the Owner making the exchange is entitled to receive, bearing numbers not previously assigned.

(c) The Trustee may require the payment, by the Owner of any Bond requesting exchange or transfer, of any reasonable charges as well as any taxes, transfer

DM3\339573.16

fees or other governmental charges required to be paid with respect to such exchange or transfer.

(d) The Trustee shall not be required to transfer or exchange (i) all or any portion of any Bond during the period beginning at the opening of business fifteen days before the day of the mailing by the Trustee of notice calling any of the Bonds of such Series for prior redemption and ending at the close of business on the day of such mailing, or (ii) all or any portion of a Bond after the mailing of notice calling such Bond or any portion thereof for prior redemption.

(e) Except as otherwise herein provided with respect to Record Dates and Special Record Dates for the payment of interest, the person in whose name any Bond shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes, and payment of or on account of the Bond Payments on or Redemption Price of any Bond shall be made only to or upon the written order of the Owner thereof or his legal representative, but such registration may be changed as herein provided. All such payments shall be valid and effectual to satisfy and discharge such Bond to the extent of the sum or sums paid.

Section 4.05 Mutilated, Lost, Stolen or Destroyed Bonds. In the event that any Bond is mutilated, lost, stolen or destroyed, a new Bond of like Series, date, maturity, interest rate and denomination as that mutilated, lost, stolen or destroyed shall be executed, authenticated and delivered to the Owner of such Bond upon receipt by the Trustee of such evidence, information or indemnity from the Owner of the Bond as the Trustee may reasonably require and, in case of any mutilated Bond, upon the surrender of the mutilated Bond to the Trustee. If any such Bond shall have matured, instead of issuing a duplicate Bond, the Trustee may pay the same without surrender thereof. The Trustee may charge the Owner of the Bond with its reasonable fees and expenses in this connection and require payment of such fees and expenses as a condition precedent to the delivery of a new Bond.

Section 4.06 Payment of Bond Payments and Redemption Price.

(a) The principal or Maturity Value and Redemption Price, if any, of any Bond shall be payable to the Owner thereof as shown on the registration records of the Trustee upon maturity or prior redemption thereof and upon presentation and surrender at the Operations Center of the Trustee.

(b) Payment of interest on the Bonds (other than interest paid as part of the Redemption Price of a Bond) shall be made by check or draft of the Trustee mailed, on or before each Interest Payment Date, to the Owner thereof at his address as it last appears on the registration records of the Trustee at the close of business on the Record Date. Any such interest not so timely paid shall cease to be payable to the person who is the Owner thereof at the close of business on the Record Date and shall be payable to the person who is the Owner thereof at the close of business on a Special Record Date for the payment of such defaulted interest. Such Special Record Date shall be fixed by the Trustee whenever moneys become available for payment of the defaulted interest, and notice of the Special Record Date shall be given by the Trustee to the Owners of the

19

DM3\339573.16

Bonds, not less than ten days prior to the Special Record Date, by first-class mail to each such Owner as shown on the Trustee's registration records on a date selected by the Trustee, stating the date of the Special Record Date and the date fixed for the payment of such defaulted interest. Alternative means of payment of interest may be used if mutually agreed to in writing between the Owner of any Bond and the Trustee.

**Section 4.07     Book-Entry Registration.** Except as otherwise provided by Supplemental Trust Agreement, notwithstanding any other provision hereof the Bonds shall be delivered only in book-entry form registered in the name of Cede & Co as nominee of The Depository Trust Company ("DTC") New York, New York acting as securities depository of the Bonds and the Bond Payments on and Redemption Price of the Bonds shall be paid by wire transfer to DTC; provided, however, if at any time the Authority determines and notifies the Trustee of its determination that DTC is no longer able to act as, or is no longer satisfactorily performing its duties as, securities depository for the Bonds, the Authority may, at its discretion, either (a) designate a substitute securities depository for DTC and reregister the Bonds as directed by such substitute securities depository or (b) terminate the book-entry registration system and reregister the Bonds in the names of the beneficial owners thereof provided to it by DTC. Neither the Authority nor the Trustee shall have any liability to DTC, Cede & Co., any substitute securities depository, any Person in whose name the Bonds are reregistered at the direction of any substitute securities depository, any beneficial owner of the Bonds or any other Person for (i) any determination made by the Trustee pursuant to the proviso at the end of the immediately preceding sentence or (ii) any action taken to implement such determination and the procedures related thereto that is taken pursuant to any direction of or in reliance on any information provided by DTC, Cede & Co., any substitute securities depository or any Person in whose name the Bonds are reregistered. DTC is solely responsible for disbursement of Bond Payments and transmission of notices to its participants, and DTC participants are solely responsible for making those payments and transmitting any notices to beneficial owners.

**Section 4.08     Notice of Redemption.**

(a)     When Bonds (or portion thereof) are to be redeemed at the option of the Authority and as authorized or provided for in any Supplemental Trust Agreement, the Authority shall give or shall cause to be given written notice of redemption of Bonds to the Trustee no later than 45 Days prior to the redemption date or such shorter time as may be acceptable to the Trustee. Notice of the call for any redemption, identifying the Bonds or portions thereof to be redeemed and specifying the terms of such redemption, shall be given by the Trustee by mailing a copy of the redemption notice by United States first-class (pre-paid) mail, at least thirty days prior to the date fixed for redemption, to the Owner of each Bond to be redeemed at the address shown on the registration books; provided, however, that failure to give such notice by mailing, or any defect therein, shall not affect the validity of any proceedings of any Bonds as to which no such failure has occurred.

(b)     Any notice mailed as provided in this Section shall be conclusively presumed to have been duly given, whether or not the Owner receives the notice.

20

(c)     If at the time of mailing of notice of any redemption of Bonds at the option of the Authority there shall not have been deposited with the Trustee moneys sufficient to redeem all the Bonds called for redemption, which moneys are or will be available for redemption of Bonds, such notice may state that it is conditional upon the deposit of the redemption moneys with the Trustee not later than the opening of business on the redemption date, and such notice shall be of no effect unless such moneys are so deposited.

### Section 4.09     Optional Redemption Payments.

(a)     On or prior to the Business Day immediately preceding the date fixed for redemption of any Bonds at the option of the Authority, the Authority shall pay or cause to be paid to either (i) the Trustee, moneys which, together with other moneys then on deposit in the Bond Payment Fund that are not required to pay Bond Payments due in such Fiscal Year on Bonds that are not being redeemed, are sufficient to pay the Redemption Price of the Bonds to be redeemed on the date fixed for redemption or (ii) to an escrow agent (for deposit into an escrow fund (including a Defeasance Escrow Account) created for such purpose in the name of the Trustee for the benefit of the Owners of the related Series of Bonds), moneys which are sufficient, together with other moneys then available, are sufficient to pay the Redemption Price of the Bonds to be redeemed on the date fixed for redemption. The Authority may make such payment from any legally available moneys. The Trustee shall use the moneys paid to it for such purposes and such other available moneys in the Bond Payment Fund to pay the Redemption Price due on the Bonds to be redeemed on the date fixed for redemption. Upon the giving of notice and the deposit of such funds as may be available for redemption pursuant to this Trust Agreement or an escrow deposit agreement, interest and Accreted Value on the Bonds or portions thereof thus called for redemption shall no longer accrue or accrete after the date fixed for redemption.

(b)     The Trustee or escrow agent, as applicable, shall pay to the Owners of Bonds so redeemed, the amounts due on their respective Bonds, at the Operations Center of the Trustee upon presentation and surrender of the Bonds.

### Section 4.10     Delivery of New Bonds Upon Partial Redemption of Bonds. Upon surrender and cancellation of a Bond for redemption in part only, a new Bond or Bonds of the same Series, maturity and interest rate and in an Authorized Denomination equal to the unredeemed portion thereof, shall be executed by the Authority and authenticated and delivered by the Trustee.

### Section 4.11     Nonpresentment of Bonds. If any Bond is not presented for payment when due, whether at maturity or on redemption prior to maturity, and if the Trustee holds moneys sufficient to pay the Bond Payments or Redemption Price due on such Bond for the benefit of the Owner thereof, the Trustee shall hold such moneys, without liability for interest thereon, for the benefit of the Owner of such Bond, who shall be restricted exclusively to such moneys for any claim of whatever nature on his part under this Trust Agreement or on or with respect to such Bond. The Trustee shall from time to time deliver such unclaimed funds to or as directed by pertinent escheat authority, as identified by the Trustee in its sole discretion, pursuant

DM3\3395731.16

21

to and in accordance with applicable unclaimed property laws, rules or regulations. Any such delivery shall be in accordance with the customary practices and procedures of the Trustee and the escheat authority. Any money held by the Trustee pursuant to this paragraph shall be held uninvested and without any liability for interest.

Section 4.12 **Cancellation of Bonds**. Whenever any Outstanding Bonds have been paid or redeemed or are otherwise delivered to the Trustee for cancellation, upon payment or redemption thereof or for or after replacement, the new Bonds shall be promptly cancelled by the Trustee.

## ARTICLE V.

## FUNDS AND ACCOUNTS

Section 5.01 **Application of Hotel Occupancy Tax Funds**. The assignment and pledge of Hotel Occupancy Tax Funds to the Trustee for the benefit of the Owners under the Granting Clauses of this Trust Agreement are intended to and shall constitute a first priority lien on such Hotel Occupancy Tax Funds; provided, however, that such assignment and pledge of Hotel Occupancy Tax Funds is subject to the provisions of Section 8 of Article VI of the Constitution. All Hotel Occupancy Tax Funds received by the Trustee shall be subject to the assignment and lien hereof upon receipt thereof as set forth in the Granting Clauses hereof.

Each Fiscal Year starting July 1, 2006, Hotel Occupancy Tax Funds and any earnings set forth in 5.07 received by the Trustee shall be deposited and used only in the manner and order of priority specified below:

(a) Deposits shall be made into the Bond Payment Fund promptly upon receipt of funds from and receipt of notice from GDB that such funds have been transferred to the Trustee, but in no event later than the third Business Day after receipt thereof, beginning on July 1, 2006, in an amount sufficient, together (in the case of interest only) with capitalized interest and accrued interest as set forth in Section 5.02(b)(i) and (b)(ii) hereof, to pay the amount of interest and principal payable as set forth in the GDB Certificate, all as more fully set forth in Section 5.02;

(b) Deposits shall be made into the Financial Agreements Fund, to be established under a Supplemental Trust Agreement, in the event the Authority purchases or arranges for a Credit Facility or an Interest Rate Exchange Agreement pursuant to Section 6.05 in an amount as set forth in, or as determined in accordance with, such Supplemental Trust Agreement;

(c) Deposits shall be made into the Debt Service Reserve Fund as required by Section 5.05 hereof;

(d) Deposits shall be made into the Rebate Fund as required by Section 6.03 hereof;

(e) Subject to the preceding paragraphs of this Section 5.01 and the Granting Clauses hereof, Hotel Occupancy Tax Funds received by the Trustee and any earnings set

22

forth in 5.08(c) and (d) need not be deposited as set forth in (a), (b), (c) and (d) above and may be released to the Tourism Company free and clear of the lien of this Trust Agreement, if and to the extent (i) not required for payment of amounts set forth in the GDB Certificate and not expected to be needed for any subsequent Bond Payments and (ii) as provided in a certificate of the Authority Representative.

### Section 5.02    Bond Payment Fund.

(a)    *Creation of Bond Payment Fund.* A special fund is hereby created with the Trustee to be designated the "Puerto Rico Convention Center District Authority Hotel Occupancy Tax Revenue Bonds Bond Payment Fund", which shall be used to pay the Bond Payments on and Redemption Price, if any, of the Bonds. The Trustee shall create and maintain separate accounts identified by the appropriate Series designation within the Bond Payment Fund to account for the receipt of moneys to pay, and the payment of, the Bond Payments on and Redemption Price, if any, of each Series of Bonds, but such separate accounts shall not affect the rights of the Owners of the Bonds with respect to moneys in the Bond Payment Fund.

(b)    *Deposits into Bond Payment Fund.* There shall be deposited into the appropriate account of the Bond Payment Fund (i) all accrued interest received at the time of the issuance of any Bonds; (ii) any capitalized interest from the proceeds of a Series of Bonds unless deposited in the Proceeds Fund pursuant to a Supplemental Trust Agreement; (iii) to the extent necessary and as more fully set forth in the GDB Certificate, amounts to make the next Bond Payment including amounts paid to the Trustee pursuant to Section 6.05 hereof from any Credit Facilities or Interest Rate Exchange Agreements; (iv) any moneys paid or caused to be paid by the Authority with respect to the Redemption Price of Bonds pursuant to Section 4.09 hereof: (v) any moneys transferred to the Bond Payment Fund from the Proceeds Fund pursuant to Section 5.03(c) hereof; (vi) moneys deposited into the Bond Payment Fund pursuant to Section 7.02 hereof following an Event of Default; and (vii) all other moneys received by the Trustee accompanied by written directions from the Authority that such moneys are to be deposited into the Bond Payment Fund.

(c)    *Use of Moneys in Bond Payment Fund.* Moneys on deposit in the Bond Payment Fund shall be used solely for the payment of the Bond Payments on and Redemption Price of the Bonds. Moneys on deposit in the Bond Payment Fund shall be used to make the following payments or for the following purposes:

(i)    Interest Component. To pay interest due on the Bonds;

(ii)    Principal Payments.    To pay maturing principal payment or mandatory sinking fund redemption payments on the Bonds; and

(iii)    Redemption Price. To pay the Redemption Price of the Bonds pursuant to redemption prior to maturity;

Moneys on deposit in the Bond Payment Fund shall be used solely for payments on a parity with Bond Payments; provided that (i) moneys representing accrued interest

23

DM3\339573.16

received at the time of the issuance of any Series of Bonds shall be used to pay the first interest payment due on such Bonds; (ii) moneys paid by the Authority with respect to the Redemption Price of Bonds pursuant to Section 4.09 hereof shall be used to pay the Redemption Price of the Bonds to be redeemed; (iii) moneys held in the Bond Payment Fund following an Event of Default shall be used as provided in Section 7.03 hereof and (vi) moneys on deposit in the Bond Payment Fund may also be used to make payments for the purposes permitted by Section 6.03 hereof.

Section 5.03    Proceeds Fund.

(a)    *Creation of Proceeds Fund*.  A special fund is hereby created with the Trustee to be designated the Puerto Rico Convention Center District Authority Hotel Occupancy Tax Revenue Bonds Proceeds Fund.  The Trustee shall create and maintain separate accounts identified as the Capitalized Interest Account, the Earnings Account, the Construction Account and the Loan Payment Account within the Proceeds Fund.  The Trustee shall create and maintain separate sub-accounts identified by the appropriate Series designation within each account of the Proceeds Fund to account for the receipt and disbursement of proceeds of each Series of Bonds.

(b)    *Deposits into Proceeds Fund*.   There shall be deposited into the appropriate account of the Proceeds Fund, proceeds of each Series of Bonds as provided in the applicable Supplemental Trust Agreement.

(c)    *Use of Moneys in Proceeds Fund*.  Upon the written direction of an Authority Representative, any amounts on deposit in the Proceeds Fund shall be transferred to, or upon the order of, the Authority for the payment of, or reimbursement for, costs of issuance relating to any Bonds.  So long as no Event of Default described in Section 7.01(a) then exists, moneys held in the Proceeds Fund (including the Earnings Account, Construction Account and the Loan Payment Account) shall be disbursed to the Authority (or the payee indicated by the Authority) to pay Capitalized Interest, or Construction Costs, or to reimburse such costs, upon receipt of a requisition signed by the Authority Representative in substantially the form attached hereto as Appendix A. Moneys held in the Proceeds Fund following such an Event of Default may be transferred at the written direction of the Authority Representative to the Bond Payment Fund in accordance with Section 7.02 hereof.  In the event of a transfer pursuant to the preceding sentence followed by the transfer of sufficient amounts to the Trustee from Hotel Occupancy Tax Funds or other sources in excess of any amount necessary to make any Bond Payments then due, such excess amount up to the amount transferred from the Proceeds Fund to the Bond Payment Fund shall be transferred to the Proceeds Fund upon the direction of the Authority Representative.  Upon the receipt by the Trustee of a certificate from the Authority Representative stating that all the Construction Projects have been completed and all required amounts have been deposited into the Rebate Fund, the remaining moneys in the Proceeds Fund, minus any amount estimated by the Authority Representative necessary to pay Construction Costs that have not yet been paid, shall be transferred by the Trustee to the Authority.  The Authority may use any such remaining moneys in the Proceeds Fund to (i) redeem any outstanding Bonds or (ii),

24

subject to a tax opinion of Bond Counsel in form and substance satisfactory to the Trustee, pay any Construction Costs.

(d) Capitalized Interest shall be transferred from the Proceeds Fund as set forth in the Supplemental Trust Agreement and the GDB Certificate.

(e) Funds in the Loan Payment Account will be used to repay any Loans as more fully set forth in the Supplemental Trust Agreement.

**Section 5.04    Financial Agreements Fund.**

(a) *Creation of Financial Agreements Fund.* A special fund is hereby created with the Trustee to be designated the Puerto Rico Convention Center District Authority Hotel Occupancy Tax Revenue Bonds Financial Agreements Fund. The Trustee shall create and maintain separate accounts identified by the appropriate Series designation within the Financial Agreements Fund to account for the payment of any amounts due to the provider of any Credit Facility or any Interest Rate Exchange Agreement in accordance with Section 6.05 hereof and the Supplemental Trust Agreement authorizing the Credit Facility or the Interest Rate Exchange Agreement.

(b) *Deposits into Financial Agreements Fund.* There shall be deposited into the appropriate account of the Financial Agreements Fund, amounts due as provided in the applicable Supplemental Trust Agreement.

(c) *Use of Moneys in Financial Agreements Fund.* Upon the written direction of an Authority Representative, any amounts on deposit in the Financial Agreements Fund shall be transferred to, or upon the order of, the Authority for the payment of, or reimbursement for, costs incurred by any provider of a Credit Facility or an Interest Rate Exchange Agreement.

**Section 5.05    Debt Service Reserve Fund.**

(a) *Creation of Debt Service Reserve Fund.* A special fund is hereby created with the Trustee to be designated the Puerto Rico Convention Center District Authority Hotel Occupancy Tax Revenue Bonds Debt Service Reserve Fund. Any Supplemental Trust Agreement may establish an account in the Debt Service Reserve Fund related to the Series of Bonds authorized thereby, identified by the appropriate Series designation, which shall be funded pursuant to the terms of such Supplemental Trust Agreement. The Series Debt Service Reserve Requirement shall be deposited in the account related to such Series of Bonds. Amounts in each account in the Debt Service Reserve Fund shall be used to pay debt service on the related Series of Bonds on the date such debt service is due when insufficient funds for that purpose are available in the Bond Payment Fund; provided, however, that all amounts in an account in the Debt Service Reserve Fund shall be used, together with other amounts available for such purpose hereunder, to provide for payment of the related Series of Bonds when the aggregate of such amounts is sufficient for such purpose. Amounts in each account of the Debt Service Reserve Fund shall be pledged to Owners of Bonds of the related Series.

25

(b)     *Reserve Account Credit Facilities*.  In lieu of or in substitution for any moneys on deposit in an account in the Debt Service Reserve Fund, the Authority may, in the manner provided, and in compliance with the conditions set forth in, the Supplemental Trust Agreement authorizing such Series of Bonds, deposit or cause to be deposited with the Trustee such Reserve Account Credit Facility meeting the criteria set forth in such Supplemental Trust Agreement.

(c)     *Restoration of the Debt Service Reserve Fund*.  If after the transfer of moneys on deposit in the Debt Service Reserve Fund to the Bond Payment Fund, the amount left on deposit in any account in the Debt Service Reserve Fund shall be less than the applicable Series Debt Service Reserve Requirement, or, if after a draw under any Reserve Account Credit Facility on deposit in an account in the Debt Service Reserve Fund, the amount available to be paid thereunder shall be less than the applicable Series Debt Service Reserve Requirement, the Authority shall cause to be deposited in the appropriate account in the Debt Service Reserve Fund, in accordance with Section 5.01, Hotel Occupancy Tax Funds in an amount necessary to cause the amount of moneys on deposit therein, or the amount available to be paid under any Reserve Account Credit Facility, to be equal to the applicable Series Debt Service Reserve Requirement. Amounts so deposited in the Debt Service Reserve Fund may be used to make payments to any provider of a Reserve Account Credit Facility in order to reinstate such Reserve Account Credit Facility to the applicable Series Debt Service Reserve Requirement.

**Section 5.06     Rebate Fund.**

(a)     *Creation of Rebate Fund*.  A special fund is hereby created with the Trustee to be designated Puerto Rico Convention Center District Authority Hotel Occupancy Tax Revenue Bonds Rebate Fund (the "Rebate Fund").  The Trustee shall create and maintain separate accounts identified by the appropriate Series designation within the Rebate Fund to account for rebate payments due on each Series of Bonds.

(b)     *Deposits into Rebate Fund*.  There shall be deposited into the appropriate account of the Rebate Fund moneys paid to the Trustee pursuant to Section 6.03 hereof.

(c)     *Use of Moneys in Rebate Fund*.  The Trustee at the written direction of and on behalf of the Authority shall use moneys in the Rebate Fund to make rebate payments to the United States in accordance with the Tax Certificates.  If the amount on deposit in the Rebate Fund at any time is greater than the amount required under the Tax Certificates, the excess shall be transferred to the Bond Payment Fund, to the Proceeds Fund, the Debt Service Reserve Fund or to the Authority, as directed by an Authority Representative to the Trustee, in writing, unless an Event of Default has occurred and is continuing, in which case the excess shall be transferred to the Bond Payment Fund.

(d)     *Administration of Rebate Fund*.  The Trustee at the written direction of an Authority Representative shall invest the Rebate Fund in accordance with the Tax Certificates and shall deposit earnings from the investment of moneys in the Rebate Fund into the Rebate Fund immediately upon receipt thereof.  Records with respect to the

26

deposits to, payments from and administration of the Rebate Fund shall be retained by the Authority and the Trustee until six years after the final retirement of the Bonds.

**Section 5.07    Moneys to be Held in Trust.** The Bond Payment Fund, the Debt Service Reserve Fund and, except for the Proceeds Fund and the Rebate Fund, any other fund or account created hereunder that is not expressly excluded from the Trust Estate shall be held by the Trustee, for the benefit of the Owners as specified in this Trust Agreement, subject to the terms of this Trust Agreement and any Supplemental Trust Agreement. The Proceeds Fund shall be held for the purposes specified therefor, including payments, if any, to the Bond Payment Fund as directed by the Authority Representative and the Rebate Fund shall be held by the Trustee for the purpose of making payments to the United States pursuant to Section 5.06 hereof. Any Defeasance Escrow Account shall be held for the benefit of the Owners of the Bonds to be paid therefrom as provided in the agreement governing such Defeasance Escrow Account.

**Section 5.08    Investment of Moneys.**

(a)    The Authority and the Trustee agree that all moneys held as part of any fund or account created hereunder shall be deposited or invested and reinvested by the Trustee, at the written direction of an Authority Representative, in Permitted Investments.

(b)    Earnings and losses from the investment of moneys held in the Proceeds Fund or any account thereof shall be deposited into or charged against the Proceeds Fund, with any earnings being deposited into the Earnings Account thereof.

(c)    Earnings and losses from the investment of moneys held in any account in the Debt Service Reserve Fund shall be deposited into or charged against such account, with any earnings being transferred at the written direction of an Authority Representative in accordance with the provisions of Section 5.01 hereof.

(d)    Earnings and losses from the investment of moneys held in the Bond Payment Fund or any account thereof shall, except as otherwise provided by a Supplemental Trust Agreement, be deposited into or charged against the fund or account in which realized in accordance with the provisions of Section 5.01 hereof.

(e)    Earnings and losses from the investment of moneys held in any account of the Rebate Fund or any account thereof shall, except as otherwise provided in the Tax Certificate, be deposited into or shall be charged against the account in which realized.

(f)    Earnings and losses from the investment of moneys held in any Defeasance Escrow Account shall be deposited or charged as provided in the escrow agreement governing such account.

(g)    The Trustee shall, when and as directed in writing by an Authority Representative, sell and reduce to cash a sufficient amount of the investments held in any fund or account whenever the cash balance therein is insufficient to make any payment to be made therefrom.

27

(h)     In computing the amount in any fund or account for any purpose hereunder, investments shall be valued by the Trustee at cost (exclusive of accrued interest) or par, whichever is less.

## ARTICLE VI.

## COVENANTS OF THE AUTHORITY

**Section 6.01     Representations, Covenants and Warranties**.     The Authority represents, covenants and warrants that:

(a)     The execution of this Trust Agreement by the Authority and the performance of its obligations thereunder is authorized by the Authority Act and, upon the execution of this Trust Agreement by the Executive Director, this Trust Agreement will be enforceable against the Authority in accordance with its terms, limited only by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting creditors' rights generally, by equitable principles, whether considered at law or in equity, by the exercise by the Commonwealth and its governmental bodies of the police power inherent in the sovereignty of the Commonwealth and by the exercise by the United States of the powers delegated to it by the Constitution of the United States.

(b)     The Authority is duly authorized by Commonwealth law to enter into agreements with GDB with respect thereto and the Authority is duly authorized to enter into the Pledge Agreement.

(c)     The execution, delivery and performance of its obligations under this Trust Agreement by the Authority does not and will not conflict with or result in violation or a breach of any law or the terms, conditions or provisions of any restriction or any agreement or instrument to which the Authority is now a party or by which the Authority is bound, or constitute a default under any of the foregoing, or, except as specifically provided in this Trust Agreement, result in the creation or imposition of any lien or encumbrance whatsoever upon any of the property or assets of the Authority.

(d)     There is no litigation or proceeding pending or threatened against the Authority or any other Person affecting the right of the Authority to execute, deliver or perform their respective obligations under this Trust Agreement.

(e)     The amount of funds borrowed pursuant to each Supplemental Trust Agreement will not exceed the sum of (i) the Construction Costs of the Construction Projects to be financed, (ii) an amount necessary to pay any applicable Program Costs and (iii) the amount necessary to pay fund the Debt Service Reserve Fund.

(f)     The execution of this Trust Agreement, the fulfillment of or compliance with the terms and conditions in this Trust Agreement and the consummation of the transactions contemplated herein do not conflict with or result in a breach of the terms, conditions or provisions of any restriction or any agreement or instrument to which the Authority is a party or by which the Authority is bound or any laws, ordinances,

28

DM3039573.16

governmental rules or regulations or court or other governmental orders to which the Authority or its properties are subject or constitute a default under any of the foregoing.

(g)     So long as Bonds are Outstanding, the pledge by the Authority of the Hotel Occupancy Tax Funds received by the Trustee for the payment of Bond Payments and Program Costs shall be irrevocable until all Bond Payments and Program Costs have been paid in full.

(h)     The Authority will reasonably cooperate with GDB in order to receive sufficient amounts of Hotel Occupancy Tax Revenues reasonably available to the Authority, including amounts sufficient for payment of the Bond Payments and Program Costs.

(i)     The deposit of Hotel Occupancy Tax Funds with the Trustee for the payment of Bond Payments is unconditional and the Authority is not entitled to offset any such payment as a result of the failure to perform by any contractor of any of its obligations relating to the Construction Projects or for any other reason; provided, however, that such payment of Hotel Occupancy Tax Funds is subject to the provisions of Section 8 of Article VI of the Constitution.

(j)     The Authority covenants, to the extent within its reasonable power and authority, to ensure that each Construction Project will be constructed expeditiously.

(k)     The Authority covenants that it will enforce all terms and conditions of the Pledge Agreement and adhere to all applicable provisions related hereto required under the Authority Act and the Occupancy Tax Act.

(l)     The Authority shall at all times comply with the Authority Act and the provisions of the Occupancy Tax Act, the regulations promulgated thereunder, all other laws and regulations, the Constitution and all other Commonwealth laws relating to the Bonds, the Construction Projects and the subject matter of this Trust Agreement and each Supplemental Trust Agreement.

(m)     The Authority covenants that, to the extent it is drawing funds in the Construction Account, it shall submit requisitions in substantially the form of **Appendix A** as such form may be revised from time to time by the Authority, that such requisitions shall be true, correct and complete in all material respects, and that the Authority shall not submit any requisition or otherwise apply proceeds of Bonds in a manner that would cause any limitation contained in this Trust Agreement to be exceeded.

(n)     The Authority, as an agent of the Commonwealth, is authorized to include the representation of the Commonwealth herein, that the Commonwealth will:

(i)     not reduce the Hotel Occupancy Tax and not decrease its rates, as fixed in the Occupancy Tax Act;

29

(ii)  not eliminate or reduce the Hotel Occupancy Tax to an amount lower than that established in the Occupancy Tax Act, or eliminate or reduce the rates of the tax fixed in the Hotel Occupancy Tax;

(iii)  make sure that the amounts that must be deposited in the Pledge Account are deposited in the accounts as provided in the Trust Agreement, and

(iv)  not alter or limit the rights acquired by the Authority under the Occupancy Tax Act to encumber or pledge the collections from the Hotel Occupancy Tax required to be deposited in the accounts set forth herein and under the Supplemental Trust Agreement and comply with the terms of any agreement entered into with, or for the benefit of the bondholders or holders of other obligations of the Authority or the other subscribing parties under any Credit Facility, Interest Rate Exchange Agreement, or bond insurance policy, until such time as such bonds, notes or other obligations issued, assumed or incurred at any time, including the interest thereon and any obligation under any Credit Facility, Interest Rate Exchange Agreement, or bond insurance policy have been paid in full.

(o)  The Authority, as an agent of the Commonwealth, is authorized to include the representation of the Commonwealth herein, that the Commonwealth pledges and agrees with the holders of the Bonds, and with those persons or entities that enter into contracts with the Authority pursuant to the Authority Act, that it shall not limit nor alter the rights conferred to the Authority under the Authority Act until the Bonds and the interest thereon are paid in full and said contracts are fully executed and honored by the Authority; provided, however, that nothing provided in the Authority Act shall affect or alter said limitation if adequate measures are provided by law for the protection of the holders of the Bonds, or of those who have entered into contracts with the Authority.

**Section 6.02    Payment of Bond Payments.**

The Authority covenants to pay, when due, solely from Hotel Occupancy Tax Funds or other funds available in the Trust Estate, the Bond Payments. Nothing in this Trust Agreement shall be construed as obligating the Authority to pay Bond Payments from any general or other funds of the Authority, the Commonwealth, GDB or the Tourism Company other than amounts pledged hereunder.

**Section 6.03    Rebate Payments.** The Authority shall deposit with the Trustee, to the extent permitted by law, from moneys requisitioned from the Proceeds Fund pursuant to Section 5.03 hereof, or paid pursuant to Section 5.01 hereof, at the times and in the amounts required to make rebate payments due to the United States in accordance with Section 5.06 hereof and the Tax Certificates.

**Section 6.04    Other Payments by the Authority.** Nothing herein shall be interpreted to restrict the Authority's right, to the extent permitted by law, to make any payment due to the Trustee under Section 6.03 or any other provision hereof or any provision of any Supplemental Trust Agreement from any other available moneys.

**Section 6.05    Credit Facilities and Interest Rate Exchange Agreements.**

30

DM3\339573.16

(a)     The Authority may purchase or arrange for a Credit Facility with respect to any Bonds and may agree to reimburse the provider of such Credit Facility for moneys paid by the provider that are used to make Bond Payments on such Bonds, which reimbursement may be made from any moneys in the Trust Estate that are available for the payment of Bond Payments on such Bonds on a parity with or on a basis subordinate to the payment of such Bond Payments.

(b)     To the extent permitted by law, the Authority may purchase or arrange for an Interest Rate Exchange Agreement with respect to any Bonds and may agree to make payments to the provider of such Interest Rate Exchange Agreement, which may be made from any moneys in the Trust Estate that are available for payment of Bond Payments on such Bonds on a parity with or on a basis subordinate to the payment of such Bond Payments.

(c)     All or any portion of the agreement between the Authority and the provider of any Credit Facility or Interest Rate Exchange Agreement or provisions to put into effect such an arrangement, may be included in any Supplemental Trust Agreement or in a separate agreement between or among the Authority, the Credit Facility or Interest Rate Exchange Agreement provider and/or the Trustee, and the Trustee is hereby directed to agree to the provisions regarding such Credit Facility or Interest Rate Exchange Agreement contained in any Supplemental Trust Agreement or separate agreement agreed to by the Authority and the Credit Facility or Interest Rate Exchange Agreement provider. Notwithstanding anything to the contrary contained herein, the Trustee shall not be required to agree to or be bound by any provision that adversely affects its rights, duties, indemnities, privileges or obligations contained herein or under any Supplemental Trust Agreement.

**Section 6.06    Tax Covenant**. The Authority shall not take any action or omit to take any action with respect to the Bonds, the proceeds of the Bonds, the Trust Estate, the Construction Projects or any other funds or property of the Authority and, to the extent within its reasonable control, it will not permit any other Person to take any action or omit to take any action with respect to the Bonds, the Trust Estate, the Construction Projects or any other funds or property of the Authority if such action or omission would cause interest on any of the Bonds to be included in gross income for federal income tax purposes or to be an item of tax preference for purposes of the federal alternative minimum tax imposed on individuals and corporations (except, with respect to corporations, as such interest is required to be taken into account in determining "adjusted net book earnings" for the purpose of computing the alternative minimum tax imposed on such corporations). In furtherance of this covenant, the Authority agrees to comply with the procedures set forth in the Tax Certificate for each Series of Bonds. The covenants set forth in this Section shall remain in full force and effect notwithstanding the payment in full or defeasance of the Bonds until the date on which all of the Authority obligations in fulfilling such covenants have been met. The covenants set forth in this Section shall not, however, apply to any Series of Bonds if, at the time of issuance, the Authority intends the interest on such Series of Bonds to be subject to federal income tax or to the federal minimum tax.

DM3\339573.16

**Section 6.07     Defense of Trust Estate**. The Authority shall at all times, to the extent permitted by law, defend, preserve and protect its title to the Trust Estate, the grant of the Trust Estate to the Trustee under this Trust Agreement and all the rights of the Owners under this Trust Agreement against all claims and demands of all Persons whomsoever; provided, however, that the pledge of Hotel Occupancy Tax Funds hereunder is subject to the provisions of Section 8 of Article VI of the Constitution.

## ARTICLE VII.

### DEFAULTS AND REMEDIES

**Section 7.01     Events of Default**. Any of the following shall constitute an "Event of Default" under this Trust Agreement:

(a)     Default in the payment of any portion of the Bond Payments on, or Redemption Price of, any Bond when due.

(b)     Failure by the Authority to observe and perform any covenant, condition or agreement on its part to be observed or performed under this Trust Agreement, other than as referred to in paragraph (a), for a period of sixty days after written notice specifying such failure and requesting that it be remedied is given to the Authority by the Trustee, unless the Trustee shall agree in writing to an extension of such time prior to its expiration; provided, however, if the failure stated in the notice can be wholly cured within a period of time not materially detrimental to the rights of the owners of Bonds but cannot be cured within the applicable sixty-day period, the Trustee will not unreasonably withhold its consent to an extension of such time if corrective action is instituted by the Authority within the applicable period and diligently pursued until the failure is corrected; and provided, further, that if by reason of force majeure the Authority is unable to carry out the agreements on its part herein contained, the Authority shall not be deemed in default under this paragraph (b) during the continuance of such inability (but force majeure shall not excuse any other Event of Default).

(c)     Any breach of covenants or requirements described in the Assignment Agreement or the Pledge Agreement.

(d)     Any breach of covenants described in the Continuing Disclosure Agreement to be delivered by the Authority and the Commonwealth in connection with the issuance of the Bonds.

**Section 7.02     Remedies Following an Event of Default**.

(a)     Upon the occurrence of any Event of Default described in Section 7.01(a) hereof, (i) the Trustee shall, if and to the extent directed in writing by the Authority Representative, transfer all or any moneys held in the Proceeds Fund to the Bond Payment Fund and (ii) any Owner of a Bond on which payment has not been paid when due shall have the right to institute any action permitted under Commonwealth law to enforce such payment as provided in the Trust Agreement, as supplemented.

32

(b)     Upon the occurrence of any Event of Default, the Trustee may, by mandamus or other action or proceeding or suit at law or in equity, enforce any of its rights hereunder against the Authority and compel the Authority to perform or carry out its duties under the law and the agreements and covenants required to be performed by it hereunder.

(c)     Upon the occurrence of any Event of Default, the Trustee may, by mandamus or other action or proceeding or suit at law or in equity, enforce any of its rights under the Pledge Agreement against the Authority or GDB and compel the Authority or GDB, as the case may be, to perform or carry out their respective duties under the law and the agreements and covenants required to be performed by either of them under the Pledge Agreement.

(d)     Upon the occurrence of any Event of Default, the Trustee may, by mandamus or other action or proceeding or suit at law or in equity, enforce any of its rights under the Assignment Agreement against the Tourism Company or GDB and compel the Tourism Company or GDB, as the case may be, to perform or carry out their respective duties under the law and the agreements and covenants required to be performed by either of them under the Assignment Agreement.

(e)     Upon the occurrence of any Event of Default, the Trustee may take whatever action at law or in equity may appear necessary or desirable to enforce the rights of the Owners and shall deposit any moneys received as a result of such action in the Bond Payment Fund.

(f)     No right or remedy is intended to be exclusive of any other right or remedy, but each and every such right or remedy shall be cumulative and in addition to any other remedy given hereunder or now or hereafter existing at law or in equity or by statute; provided, however, that neither the Trustee nor any Owners of Bonds shall have the right to declare all Bond Payments to be immediately due and payable.

(g)     A judgment requiring a payment of money entered against the Authority in connection with the Bonds and other obligations hereunder may be satisfied only from the Trust Estate.

**Section 7.03     Use of Moneys Received From Exercise of Remedies.** Moneys received by the Trustee resulting from the exercise of remedies following an Event of Default shall be deposited in the Bond Payment Fund and shall, together with other moneys in the Bond Payment Fund and other moneys available for such purpose, be applied in the following order of priority:

(a)     *First,* to the payment of the reasonable and proper fees and expenses of the Trustee determined in accordance with Section 8.11 hereof.

(b)     *Second,* to the payment of interest due on the Bonds, including interest on past due interest on any Bond at the interest rate borne by such Bond, compounded on each Interest Payment Date. If more than one installment of interest is due on the Bonds, such installments shall be paid in the order in which they were due, with the first

33

installment being paid first. If the amount available is insufficient to pay all of any particular installment of interest due on the Bonds (including interest on the past due interest), the amount available shall be paid ratably, based on the ratio of the amount due on each such Bond to the amount due on all such Bonds. For purposes of this Section, the difference between the Original Principal Amount and the Accreted Value of a Capital Appreciation Bond shall be treated as interest, the Accretion Date for a Capital Appreciation Bond shall be treated as an Interest Payment Date and the interest rate determined by straight-line interpolation between Accretion Dates shall be treated as the interest rate on a Capital Appreciation Bond.

(c)     *Third*, to the payment of principal due on the Bonds. If principal is due that was to have been paid on more than one date, the amount due on the earliest dates shall be paid first. If the amount available is insufficient to pay all the principal due on any particular date, the amount available shall be paid ratably, based on the ratio of the amount due on each such Bond to the amount due on all such Bonds. For purposes of this Section, the Original Principal Amount of a Capital Appreciation Bond shall be treated as principal.

**Section 7.04    Owners of Majority in Aggregate Principal Amount of Bonds May Control Proceedings.** Notwithstanding any other provision hereof, the Owners of a majority in aggregate principal amount of Bonds shall always have the right, at any time, to the extent permitted by law, by an instrument or instruments in writing executed and delivered to the Trustee, to direct the time, method and place of conducting all proceedings to be taken in pursuit of remedies following an Event of Default or otherwise in connection with the enforcement of the terms of this Trust Agreement. The Trustee is not liable for acts directed by a majority of bondholders or a credit provider.

**Section 7.05    Limitations on Rights of Owners Acting Individually.**    No Owner shall have any right to institute any suit, action or proceeding at law or in equity for the enforcement of any remedy hereunder or for the enforcement of the terms of this Trust Agreement, unless an Event of Default under this Trust Agreement has occurred and the Owners of not less than a majority in aggregate principal amount of Bonds then Outstanding have made a written request to the Trustee, have offered the Trustee indemnity satisfactory to it against its costs, expenses and liabilities reasonably anticipated to be incurred, and have given the Trustee a reasonable opportunity, to take such action in its capacity as Trustee. The purpose of the preceding sentence is to assure that no Owner or Owners shall have the right to affect, disturb or prejudice the lien of this Trust Agreement by his, her, its, or their action or to enforce any right hereunder except in the manner herein provided and that all proceedings at law or in equity shall be instituted and maintained in the manner herein provided and for the equal benefit of the Owners of all Outstanding Bonds. Nothing contained herein shall, however, affect or impair the right of any Owner to enforce the payment of the Bond Payments on or Redemption Price of any Bond at and after the date of such payment is due.

**Section 7.06    Trustee May Enforce Rights Without Bonds.** All rights of action and claims under this Trust Agreement or any of the Outstanding Bonds may be enforced by the Trustee without the possession of any of the Bonds or the production thereof in any trial or proceedings relative thereto; any suit or proceeding instituted by the Trustee shall be brought

34

in its name as Trustee, without the necessity of joining as plaintiffs or defendants any Owners; and any recovery of judgment shall be for the ratable benefit of the Owners, subject to the provisions hereof.

**Section 7.07    Trustee to File Proofs of Claim in Receivership, Etc.** In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial proceedings affecting the Trust Estate, the Trustee shall, to the extent permitted by law, be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have claims of the Trustee and of the Owners allowed in such proceedings for the entire amount due on the Bonds under this Trust Agreement, at the date of the institution of such proceedings and for any additional amounts which may become due by it after such date, without prejudice, however, to the right of any Owner to file a claim in its own behalf.

**Section 7.08    Delay or Omission; No Waiver.** No delay or omission of the Trustee or of any Owner to exercise any remedy, right or power accruing upon any Event of Default or otherwise shall exhaust or impair any such remedy, right or power or be construed to be a waiver of any such Event of Default, or acquiescence therein; and every remedy, right and power given by this Trust Agreement may be exercised from time to time and as often as may be deemed expedient.

**Section 7.09    Discontinuance of Proceedings on Event of Default; Position of Parties Restored.** In case the Trustee or any Owner shall have proceeded to enforce any right under this Trust Agreement and such proceedings shall have been discontinued or abandoned for any reason, or shall have been determined adversely to the Trustee or such Owner, then and in every such case the Authority, the Trustee and the Owners shall be restored to their former positions and rights, and all rights, remedies and powers of the Trustee and the Owner shall continue as if no proceedings had been taken.

**Section 7.10    Waivers of Events of Default.** The Trustee may in its discretion waive any Event of Default and its consequences hereunder, and notwithstanding anything else to the contrary contained in this Trust Agreement, shall do so upon the written request of the Owners of a majority in aggregate principal amount of Bonds then Outstanding; provided, however, that there shall not be waived without the consent of the Owners of 100% of the Bonds any Event of Default in the payment of the Bond Payments and Redemption Price when due, unless, prior to such waiver, all such amounts (with interest on amounts past due on any Bond at the interest rate on such Bond or, in the case of a Capital Appreciation Bond, the interest rate determined by straight-line interpolation between Accretion Dates) and all expenses of the Trustee in connection with such Event of Default have been paid or provided for. In case of any such waiver, then and in every such case the Authority, the Trustee and the Owners shall be restored to their former positions and rights hereunder, but no such waiver shall extend to any subsequent or other Event of Default, or impair any right consequent thereon.

**ARTICLE VIII.**

**CONCERNING THE TRUSTEE**

35

**Section 8.01    Appointment of Trustee; Acceptance of Duties**.  JPMorgan Chase Bank, N.A., City of New York and State of New York, is the Trustee under this Trust Agreement.  The Trustee shall have only such duties and obligations as are expressly specified by this Trust Agreement, and no other duties or obligations of said bank shall be implied by, or read into, this Trust Agreement.

**Section 8.02    Limitations on Responsibilities of Trustee**.  The recitals of fact, statements and representations herein and in the Bonds are made by the Authority, and the Trustee assumes no responsibility in respect thereof.  The Trustee shall not have any responsibility and makes no representation in respect of the validity or sufficiency of this Trust Agreement or of the Bonds or the due execution or issuance thereof or in respect of the security afforded by this Trust Agreement and the Trustee shall not have any responsibility or duty and makes no representation with respect to the issuance of the Bonds for value.  The Trustee shall not have any responsibility or duty as to the amount of Bonds issued or outstanding at any time, and the Trustee shall have no responsibility and makes no representation as to whether the signatures or facsimile signatures on any Bond are genuine or as to whether any Bond is in the form authorized by the Authority or as to whether any Bond is within the amount the Authority is authorized to issue.  The Trustee shall not be under any obligation to see that any duties herein imposed upon the Authority or on any party other than itself, or any covenants herein contained on the part of any party other than itself to be performed shall be done or performed, and the Trustee shall not be under any obligation for failure to see that any such duties or covenants are so done or so performed.  The Trustee shall have no obligation or duty to perform any act which would involve it in expense or liability or to institute or defend any suit in respect hereof, or to make or to advance any of its own monies, unless properly indemnified to its satisfaction.  The Trustee shall not be liable in connection with any action taken, suffered or omitted hereunder, except for its own negligence or willful misconduct.  The Trustee shall have no duty, obligation, responsibility or liability to independently examine the requisitions filed with it pursuant to Section 5.03(c) of this Trust Agreement or to take any action with respect to such requisitions or in any other respect whatsoever, except that the Trustee shall retain such requisitions in its possession pursuant to Section 11.09 of this Trust Agreement.  The Trustee is not liable for acts directed by a majority of bondholders or a credit provider.

**Section 8.03    Trustee Not Liable For Failure Of Authority To Act**.  The Trustee shall not be liable or responsible because of the failure of the Authority or any of its employees or agents to make collections or deposits or to perform any act herein required of them.  The Trustee shall not be responsible for the application of any of the proceeds of the Bonds or any other moneys deposited with it which are paid out, withdrawn or transferred in accordance with the provisions of this Trust Agreement.  The immunities and exemptions from liability of the Trustee hereunder shall extend to its directors, officers, employees and agents.

**Section 8.04    Quarterly Statements from Trustee**.  It shall be the duty of the Trustee on or before the 15th day of January, April, July and October of each year to file with the Authority and GDB a statement setting forth in respect of the preceding three (3) month period:

(a)    the amount deposited with it and the amount withdrawn or transferred by it on account of each fund and account held by it under the provisions of this Trust Agreement,

36

DM3\339573.16

(b)     the amount on deposit with it at the end of each such three (3) month period to the credit of each such fund and account,

(c)     a brief description of all obligations held by it as an investment of moneys in each such fund and account,

(d)     the amount, if any, applied to the purchase or redemption of Bonds under the Trust Agreement and a description of the Bonds so purchased or redeemed, and

(e)     any other information which the Authority may reasonably request.

**Section 8.05    Trustee Protected in Relying on Certain Documents.**   The Trustee shall be protected and shall incur no liability in acting or proceeding, or in not acting or not proceeding, in good faith, and in accordance with the terms of this Trust Agreement, upon any resolution, order, notice, request, consent, waiver, certificate, statement, affidavit, requisition, bond or other document which it shall in good faith believe to be genuine and to have been adopted or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of this Trust Agreement. The Trustee may consult with counsel, who may or may not be counsel to the Authority or the Trustee or any engineer, consultant or accountant and the written opinion of such counsel, engineer, consultant or accountant shall be full and complete authorization and protection in respect of any action taken or suffered by it hereunder in accordance therewith. Whenever the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by a certificate signed by an Authority Representative; but in its discretion the Trustee may in lieu thereof accept other evidence of such fact or matter or may require such further or additional evidence as to it may seem reasonable. Except as otherwise expressly provided herein, any request, order, notice, consent or other direction required or permitted to be furnished pursuant to any provision hereof by the Authority to the Trustee shall be sufficient if executed by an Authority Representative.

**Section 8.06    Qualification of Trustee.**   There shall be at all times a Trustee hereunder which shall be a corporation organized and doing business under the laws of the United States of America, the Commonwealth or any state, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $100,000,000 (or whose obligations hereunder are guaranteed by a bank or trust company duly authorized to exercise corporate trust powers and subject to examination by Commonwealth or state authority, of good standing, and having at the time of the appointment of such Trustee, a combined capital and surplus of at least such amount), subject to supervision or examination by Commonwealth or state authority, and having its principal corporate trust office in the Commonwealth or in one of the states of the United States of America. If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section, the combined capital and surplus and the reported deposits of such corporation shall be deemed to be its combined capital and surplus and reported deposits, respectively, as set forth in its most recent report of condition so published. If at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section, it shall resign immediately in the manner and with the effect specified in Section 8.07(b) hereof.

37

**Section 8.07    Resignation of Trustee.** (a)   No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article shall become effective until the acceptance of appointment by the successor Trustee under Section 8.09 hereof.

(b)    The Trustee may resign at any time by giving written notice thereof to the Authority. If an instrument of acceptance by a successor Trustee shall not have been delivered to the Trustee within thirty days after the giving of such notice of resignation, the retiring Trustee may petition any court of competent jurisdiction for the appointment of a successor Trustee.

**Section 8.08    Removal of Trustee.** The Trustee may be removed at any time by an instrument or concurrent instruments in writing, signed by the holders of not less than a majority in principal amount of the Bonds hereby secured and then Outstanding, signed in person by such holders or by their attorneys, legal representatives or agents and delivered to the Trustee, the Authority and GDB (such demand to be only when received by the Trustee in writing, the Authority and GDB). The Trustee may also be removed at any time for any breach of trust or for acting or proceeding in violation of, or for failing to act or proceed in accordance with, any provision of this Trust Agreement with respect to the duties and obligations of the Trustee by any court of competent jurisdiction upon the application of the Authority or the holders of not less than five per centum in aggregate principal amount of the Bonds then outstanding hereunder.

**Section 8.09    Appointment of Successor Trustee.**

(a)  If at any time:

(i)    the Trustee shall cease to be eligible under Section 8.06 hereof and shall fail to resign after written request therefore by the Authority or by any bondholder who shall have been a bona fide bondholder for at least six months, or

(ii)   the Trustee shall become incapable of acting or shall be adjudged a bankrupt or insolvent or a receiver of the Trustee or of its property shall be appointed or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation,

then in any such case, (i) the Authority may remove the Trustee, or (ii) any bondholder who has been a bona fide bondholder for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

(b)    If the Trustee shall resign, be removed or become incapable of acting, or if a vacancy shall occur in the office of the Trustee for any cause, the Authority shall promptly appoint a successor Trustee.

(c)    If, within one year after any resignation, removal or incapability, or the occurrence of any vacancy, a successor Trustee shall be appointed by the Authority, the holders of a majority in principal amount of the Bonds then Outstanding by an instrument or concurrent instruments in writing delivered to the Authority and GDB and the retiring Trustee, shall appoint a successor Trustee, the successor Trustee so appointed shall,

DM3\339573.16

forthwith upon its acceptance of such appointment, become the successor Trustee and supersede the successor Trustee appointed by the Authority. If no successor Trustee shall have been so appointed by the Authority or the bondholders and accepted appointment in the manner hereinafter provided, any bondholder who has been a bona fide holder of a Bond for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Trustee.

(d) The Authority shall give written notice by first-class mail, postage prepaid, of each resignation and each removal of the Trustee and each appointment of a successor Trustee to all bondholders. Each notice shall include the name and address of the principal corporate trust office of the successor Trustee.

**Section 8.10 Vesting of Rights in Successor Trustee.** Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to its predecessor, and also to the Authority, an instrument in writing accepting such appointment hereunder, and thereupon such successor, without any further act, shall become fully vested with all the rights, immunities powers and trusts, and subject to all the duties and obligations, of its predecessors; but such predecessor shall, nevertheless, on the written request of its successor or of the Authority, and upon payment of the expenses, charges and other disbursements of such predecessor which are payable pursuant to the provisions of Section 8.11 hereof, execute and deliver an instrument transferring to such successor all the rights, immunities, powers and trusts of such predecessor hereunder; and every predecessor Trustee shall deliver all property and moneys held by it hereunder to its successor. Should any instrument in writing from the Authority be required by any successor Trustee for more fully and certainly vesting in such Trustee the rights, immunities, powers and trusts hereby vested or intended to be vested in its predecessor, any such instrument in writing shall and will, on request, be executed, acknowledged and delivered by an Authority Representative.

Notwithstanding any of the foregoing provisions of this Article, any bank or trust company having power to perform the duties and execute the trusts of this Trust Agreement and otherwise qualified to act as Trustee hereunder with or into which the bank or trust company acting as Trustee may be merged, consolidated or converted, or to which the corporate trust business assets as a whole or substantially as a whole of such bank or trust company may be sold, shall be deemed the successor of the Trustee.

**Section 8.11 Compensation and Indemnification of Trustee.** Subject to the provisions of any contract between the Authority and the Trustee, the Authority shall, from unencumbered moneys to the credit of the Proceeds Fund or any other moneys available therefore, pay to the Trustee reasonable compensation for all services rendered by it hereunder and also all its reasonable expenses, charges and other disbursements and those of its attorneys, agents and employees incurred in and about the administration and execution of the trusts hereby created, and the performance of its powers and duties hereunder. The Authority shall indemnify, defend and hold harmless the Trustee, its directors, employees, agents and affiliates (the "Indemnitees") from all loss, liability, claims, proceedings, suits, demands, penalties, costs and expenses, including without limitation the costs and expenses of outside and in house counsel and experts and their staffs and all expenses of document location, duplication and shipment and of preparation to defend any of the foregoing ("Losses"), that may be imposed on, incurred by or

39

asserted against any Indemnitee in respect of (a) the Trust Agreement, the Supplemental Trust Agreement and the Pledge Agreement, (b) the Trustee's execution, delivery and performance of the Trust Agreement, except in respect of any Indemnitee to the extent such Indemnitee's negligence or bad faith primarily caused the Loss, and (c) any instruction or other direction upon which the trustee may rely under the Trust Agreement. The obligation of the Authority under this Section shall survive payment of the bonds issued under this Trust Agreement and the resignation or removal of the Trustee.

Section 8.12     Trustee Under No Duty to Investigate.  The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond or other paper or document.

Section 8.13     Trustee May Employ Agents.  The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through affiliates, agents or attorneys, and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

Section 8.14     Trustee May Own Bonds.  The Trustee and any officer, director or employee thereof may become the owner or pledgee of bonds issued under this Trust Agreement and may otherwise deal with the Authority with the same rights it would have were it not such Trustee.

Section 8.15     Rights of the Trustee.  (a)  The Trustee shall be under no liability for interest on any money received by it hereunder except as otherwise agreed to in writing with the Authority and the Trustee shall not be liable for any gains or losses on investments (Permitted Investments or otherwise) made in connection with this Trust Agreement.

(b)     The Trustee shall not be liable for any action taken, suffered, or omitted to be taken by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Trust Agreement.

(c)     The Trustee shall not be required to take notice and shall not be deemed to have notice of any Default or Event of Default unless written notice of such Default or Event of Default is received by the Responsible Officer at the Operation Center of the Trustee.

(d)     The Trustee may request that the Authority deliver a certificate setting forth the names of individuals and/or titles of officers authorized at such time to take specified actions pursuant to this Trust Agreement, which certificate may be signed by any person authorized to sign a certificate, including any person specified as so authorized in any such certificate previously delivered and not superseded.

(e)     Notwithstanding any other provision of this Trust Agreement, the Trustee shall not be obligated to perform any obligation hereunder and shall not incur any liability for any failure or delay in the performance of its obligations under this Trust Agreement arising out of or caused, directly or indirectly, by circumstances beyond its reasonable control, including, without limitation, acts of God; earthquakes; fire; flood;

40

DM3439573.16

terrorism: wars; similar military disturbances; sabotage; epidemic; riots; interruptions; loss or malfunctions of utilities, computer (hardware or software) or communication services; accidents; labor disputes; terrorist act; acts of civil or military authority or governmental action.

(f)    In no event shall the Trustee be liable for special, indirect or consequential loss or damages of any kind whatsoever (including but not limited to loss of profit), even if the Trustee has been advised as to the likelihood of such loss or damage and regardless of the form of action.

**Section 8.16    Trustee Notice to GDB.** During the month of April of each Fiscal year, the Trustee shall inform GDB of the amounts on deposit in each fund or account held hereunder.

## ARTICLE IX.

## SUPPLEMENTAL TRUST AGREEMENTS

**Section 9.01    Supplemental Trust Agreements Not Requiring Consent of Owners.** The Authority and the Trustee may, without the consent of, or notice to, the Owners, enter into a Supplemental Trust Agreement for any one or more or all of the following purposes:

(a)    to facilitate the receipt or use of Hotel Occupancy Tax Funds to pay Bond Payments;

(b)    to add additional covenants to the covenants and agreements of the Authority set forth herein or to add to the limitations and restrictions herein, and other limitations and restrictions to be observed by the Authority which are not contrary to or inconsistent with the Trust Agreement as theretofore in effect;

(c)    to add additional revenues, properties or collateral to the Trust Estate, subject to the Authority maintaining the prevailing rating of the Bonds by Moody's and S&P;

(d)    to cure any ambiguity, or to cure, correct or supplement any defect or omission or inconsistent provision contained herein, provided such action shall not adversely affect the interest of the Owners;

(e)    to amend any existing provision hereof or to add additional provisions which, in the opinion of Bond Counsel, are necessary or advisable (i) to qualify, or to preserve the qualification of, the interest on any Bonds for exclusion from gross income for federal income tax purposes or for exclusion from federal alternative minimum tax calculations; (ii) to qualify, or to preserve the qualification of, any Bonds for exemption from taxation and assessment in the Commonwealth; or (iii) to qualify, or preserve the qualification of, any Bonds for an exemption from registration or other limitations under the laws of any state or territory of the United States;

DM3\339573.16

(f)     to amend any provision hereof relating to the Rebate Fund if in the opinion of Bond Counsel, such amendment does not adversely affect the exclusion of interest on any Bonds from gross income for federal income tax purposes;

(g)     to provide for or eliminate book-entry registration of any of the Bonds;

(h)     to obtain or maintain a rating of the Bonds by a nationally recognized securities rating agency;

(i)     to authorize the issuance of any Series of Bonds in accordance with Article III hereto;

(j)     to facilitate the provision of a Credit Facility or an Interest Rate Exchange Agreement in accordance with Section 6.05 hereof;

(k)     to establish additional funds, accounts or subaccounts necessary or useful in connection with any Supplemental Trust Agreement authorized by any other provision of this section;

(l)     to make any amendment with Rating Confirmation from each Rating Agency then maintaining an uninsured, underlying rating on the Bonds, that such amendment will not, in itself, result in such uninsured, underlying rating on the Bonds following such amendment being lower than such rating on the Bonds immediately prior to such amendment;

(m)     to modify any of the provisions in any other respect whatever, provided that (i) such modification shall be, and be expressed to be, effective only after all Bonds of each Series Outstanding at the date of the execution of such Supplemental Trust Agreement shall cease to be Outstanding and (ii) such Supplemental Trust Agreement shall be specifically referred to in the text of all Bonds of any Series authenticated and delivered after the date of the execution of such Supplemental Trust Agreement and of Bonds issued in exchange therefor or in place thereof; or

(n)     for any other purpose, provided that Bond Counsel has delivered a written opinion stating that the provisions of the Supplemental Trust Agreement do not materially adversely affect the rights of the Owners of any Bonds.

**Section 9.02    Supplemental Trust Agreements Requiring Consent of Owners**. Except as expressly provided in Section 9.02 hereof, the Authority and Trustee may not enter into a Supplemental Trust Agreement without the written consent of the Owners of not less than a majority in aggregate principal amount of Bonds then Outstanding; provided, however, that no Supplemental Trust Agreement described below may be entered into without the written consent of the Owner of each Bond affected thereby for one or more of all of the following purposes:

(a)     a reduction of the interest rate, Bond Payments or Redemption Price payable on any Bond, a change in the maturity date of any Bond, a change in the Original Principal Amount of any Capital Appreciation Bond, a change in any Interest Payment

42

DM3\3395573.16

Date for any Current Interest Bond or any Accretion Date for any Capital Appreciation Bond or a change in the redemption provisions applicable to any Bond;

(b)     the deprivation of an Owner to the lien on the Trust Estate granted in this Trust Agreement;

(c)     the creation of a priority right in the Trust Estate of another Bond over the right of the affected Bond, except as permitted herein;

(d)     a reduction in the percentage of the aggregate principal amount of the Bonds required for consent to any Supplemental Trust Agreement;

**Section 9.03     Conditions     to     Effectiveness     of     Supplemental     Trust Agreements.**

(a)     No Supplemental Trust Agreement shall be effective until (i) the Authority and the Trustee have received the written consent of the Tourism Company and GDB to enter into such Supplemental Trust Agreement, (ii) it has been duly executed and delivered by the Authority and the Trustee, and (iii) Bond Counsel has delivered a written opinion to the effect that the Supplemental Trust Agreement complies with the provisions of this Article and will not adversely affect the exclusion from gross income for federal income tax purposes of interest on, or the exemption from taxation and assessment in the Commonwealth of the income from, any Outstanding Bonds.

(b)     No Supplemental Trust Agreement entered into pursuant to Section 9.02 hereof shall be effective until, in addition to the conditions set forth in subsection (a) of this Section, (i) a notice prepared by the Authority has been mailed to the Owners of the Outstanding Bonds, at the addresses last shown on the registration records of the Trustee, which notice describes the nature of the proposed Supplemental Trust Agreement and states that copies of it are on file at the office of the Trustee for inspection by the Owners of Outstanding Bonds and (ii) Owners of the required percentage in aggregate principal amount of the Bonds have consented to the Supplemental Trust Agreement. *Notwithstanding anything in this Section or the Trust Agreement to the contrary, the consent of the Owner of any Series of Additional Bonds to be issued hereunder, shall be deemed irrevocably given if the Original Purchaser thereof, whether or not for sale, consents in writing to any modification or amendment and, if such Series of Additional Bonds is expected to be resold, such modification or amendment, as well as such consent, is disclosed in the official statement or other offering document pursuant to which such Series of Additional Bonds is sold.*

**Section 9.04     Amendment of Assignment Agreement or Pledge Agreement**

No amendment, change or modification of the Pledge Agreement or the Assignment Agreement shall be effected without mailing of notice and written approval or consent of (i) the holders of not less than a majority in aggregate principal amount of the Bonds then Outstanding, (ii) GDB, and (iii) the Tourism Company and (iv) an opinion of counsel to the effect that amendment is authorized by governing documents and that all conditions precedent have been complied with.

43

DM3\039573.16

## ARTICLE X.

## DEFEASANCE

**Section 10.01    Discharge of Trust Agreement.** If 100% of the Bond Payments and Redemption Price due, or to become due, on all the Bonds and, all amounts payable to the United States pursuant to Section 5.06 hereof, have been paid, or provision shall have been made for the payment thereof in accordance with Section 10.02 hereof and the fees and expenses due to the Trustee and all other amounts payable hereunder have been paid, or provision for such payment shall have been made in a manner satisfactory to the Trustee, then (a) the right, title and interest of the Trustee in and to the Trust Estate shall terminate and be discharged (referred to herein as the "discharge" of this Trust Agreement); (b) the Trustee shall transfer and convey to or upon the written order of the Authority all property that was part of the Trust Estate, including but not limited to any moneys held in any fund or account hereunder, except any escrow account created pursuant to Section 10.02 hereof (which escrow account shall continue to be held in accordance with the agreement governing the administration thereof); and (c) the Trustee shall execute any instrument requested by the Authority to evidence such discharge, transfer and conveyance.

Outstanding Bonds or Bond Payments or Redemption Price or any portions thereof for the payment or redemption of which money shall have been set aside and shall be held in trust by the Trustee shall at the respective maturity or redemption dates thereof be deemed to have been paid within the meaning and with the effect expressed in the first paragraph of this Section.

**Section 10.02    Defeasance of Bonds.**

(a)    All or any portion of the Outstanding Bonds or Bond Payments shall be deemed to have been paid (referred to herein as "defeased") prior to their maturity or redemption if:

(i)    the defeased Bonds are to be redeemed prior to their maturity, an Authority Representative has irrevocably instructed the Trustee to give notice of redemption of such Bonds in accordance with this Trust Agreement and any applicable Supplemental Trust Agreement;

(ii)    there has been deposited in trust in a Defeasance Escrow Account either moneys in an amount which shall be sufficient, or Defeasance Securities, the principal of and the interest on which when due, and without any reinvestment thereof will provide moneys which, together with the moneys, if any, deposited into or held in the Defeasance Escrow Account, shall be sufficient to pay when due the Bond Payments or Redemption Price, as applicable, due and to become due on the defeased Bonds on and prior to the redemption date or maturity date thereof, as the case may be;

(iii)    the Authority shall have given the Trustee in a form satisfactory to it irrevocable instructions to mail, as soon as practicable, a notice to the Owners of such Bonds that the deposit required by (ii) of this subsection has been made with the Trustee and that said Bonds are deemed to have been paid in accordance with this

44

DM3\339573.16

Article X and stating the date on which money is to be available for the payment of the principal or Redemption Price; and

(iv)    a certified public accountant or other nationally recognized expert respecting verification of escrows has delivered a verification report verifying the deposit described in clause (ii) of this subsection.

(b)    The Defeasance Securities and moneys deposited in a Defeasance Escrow Account pursuant to this Section and the principal and interest payments on such Defeasance Securities shall not be withdrawn or used for any purpose other than, and shall be held in trust solely for, the payment of the Bond Payments on and Redemption Price of the defeased Bonds; provided, however, that (i) any moneys received from principal and interest payments on such Defeasance Securities that are not required to pay the Bond Payments on or Redemption Price of the defeased Bonds on the date of receipt shall, to the extent practicable, be reinvested in Defeasance Securities maturing at the times and in amounts sufficient to pay when due the Bond Payments on and Redemption Price to become due on the defeased Bonds on or prior to the redemption date or maturity date thereof, as the case may be; and (ii) any moneys or Defeasance Securities may be withdrawn from a Defeasance Escrow Account if (A) the moneys and Defeasance Securities that are on deposit in the Defeasance Escrow Account, including any moneys or Defeasance Securities that are substituted for the moneys or Defeasance Securities that are withdrawn from the Defeasance Escrow Account, satisfy the conditions stated in subsection (a)(ii) of this Section, (B) a verification report is delivered that complies with subsection (a)(iii) of this Section and (C) an opinion of Bond Counsel is delivered to the effect that such withdrawal or substitution complies with this Section and will not of itself adversely affect the federal tax status of interest on either the related Refunding Bonds or the Bonds being refunded.

(c)    Any Bonds that are defeased as provided in this Section shall no longer be secured by or entitled to any right, title or interest in or to the Trust Estate, and the Bond Payments on and Redemption Price thereof shall be paid solely from the Defeasance Securities and money held in the Defeasance Escrow Account.

**Section 10.03   Defeasance of Less than all Bonds of a Particular Series or Maturity.** If less than all the Bonds of any particular Series, any particular maturity of any Series or any particular interest rate within a maturity of a Series are defeased, the Trustee shall institute or cause to be instituted a system to preserve the identity of the individual Bonds or portions thereof that are defeased, regardless of changes in Bond numbers attributable to transfers and exchanges of Bonds.

## ARTICLE XI.

## MISCELLANEOUS

**Section 11.01   Authority.** This Trust Agreement and the Bonds are authorized by the Authority Act.

45

**Section 11.02 Table of Contents, Titles and Headings.** The table of contents, titles and headings of the Articles and Sections of this Trust Agreement have been inserted for convenience of reference only, are not to be considered a part hereof, shall not in any way modify or restrict any of the terms or provisions hereof and shall never be considered or given any effect in construing this Trust Agreement or any provision hereof or in ascertaining intent, if any question of intent should arise.

**Section 11.03 Interpretation and Construction.** This Trust Agreement and all terms and provisions hereof shall be liberally construed to effectuate the purposes set forth herein to sustain the validity of this Trust Agreement. For purposes of this Trust Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a) All references in this Trust Agreement to designated "Articles," "Sections," "subsections," "paragraphs," "clauses" and other subdivisions are to the designated Articles, Sections, subsections, paragraphs, clauses and other subdivisions of this Trust Agreement. The words "herein," "hereof," "hereto," "hereby," "hereunder" and other words of similar import refer to this Trust Agreement as a whole and not to any particular Article, Section or other subdivision.

(b) The terms defined in Article I hereof have the meanings assigned to them in that Article.

(c) Words of one gender shall be deemed and construed to include correlative words of any other gender. Except where the context otherwise requires, words importing the singular number shall include the plural number and vice versa, and words importing persons shall include firms, associations and corporations.

(d) All accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles as in effect from time to time.

(e) The term "money" includes any cash, check, deposit, investment security or other form in which any of the foregoing are held hereunder.

(f) In the computation of a period of time from a specified date to a later specified date, the word "from" means "from and including" and each of the words "to" and "until" means "to but excluding."

**Section 11.04 Further Assurances and Corrective Instruments.** The Authority and the Trustee agree that so long as this Trust Agreement is in full force and effect, the Authority and the Trustee shall have full power to carry out the acts and agreements provided herein and they will from time to time, execute, acknowledge and deliver or cause to be executed, acknowledged and delivered such supplements hereto and such further instruments as may be required for correcting any inadequate or incorrect description of the Trust Estate, or for otherwise carrying out the intention of or facilitating the performance of this Trust Agreement.

**Section 11.05 Evidence of Signature of Owners and Ownership of Bonds.**

DM3\339573.16

(a)     Any request, consent or other instrument which this Trust Agreement may require or permit to be signed and executed by Owners may be in one or more instruments of similar tenor, and shall be signed or executed by such Owners in person or by their attorneys appointed in writing, and proof of the execution of any such instrument or of an instrument appointing any such attorney, or the ownership of Bonds, shall be sufficient (except as otherwise herein expressly provided) if made in the following manner, but the Trustee may, nevertheless, in its discretion require further or other proof in cases where it deems the same desirable:

(i)     The fact and date of the execution by any Owner or his attorney of such instrument may be proved by the certificate of any officer authorized to take acknowledgments in the jurisdiction in which he purports to act that the person signing such request or other instrument acknowledged to him the execution thereof, or by an affidavit of a witness of such execution, duly sworn to before a notary public; and

(ii)    The fact of the ownership by any person of Bonds and the amounts, numbers and date of ownership of such Bonds may be proved by the registration records of the Trustee.

(b)     Any request or consent of the Owner of any Bond shall bind all transferees of such Bond in respect of anything done or suffered to be done by the Authority or the Trustee in accordance therewith.

**Section 11.06    Authorization of Officers and Employees**.   The officers and employees of the Authority are hereby authorized and directed to take all actions that are necessary, convenient and in conformity with the Authority Act, the Constitution and other laws of the Commonwealth and this Trust Agreement, to carry out the provisions of this Trust Agreement.

**Section 11.07    Parties Interested Herein**.  This Trust Agreement shall be for the sole and exclusive benefit of the Authority, the Trustee and the Owners and their respective successors and assigns.  Nothing in this Trust Agreement expressed or implied is intended or shall be construed to confer upon, or to give to, any person other than the Authority, the Trustee and the Owners, any right, remedy or claim under or by reason of this Trust Agreement or any terms hereof.

**Section 11.08    The Authority and Responsible Officers**.  Whenever under the provisions hereof or of any Supplemental Trust Agreement the approval of the Authority or the Trustee is required, or the Authority or the Trustee is required to take some action at the request of the other, unless otherwise provided, such approval or such request shall be given for the Authority by an Authority Representative and for the Trustee by a Responsible Officer, and the Authority and the Trustee shall be authorized to act on any such approval or request.

**Section 11.09    Manner of Giving Notices**.  All notices, certificates or other communications hereunder or under any Supplemental Trust Agreement shall be in writing and shall be deemed sufficiently given when mailed by certified or registered mail, postage prepaid, or by any other independent delivery service providing written evidence of receipt, addressed as

DM3\339573.16

follows: if to the Authority, to Puerto Rico Convention Center District Authority, Antigua Base Naval, Edif. W-9, Avenida Isla Grande, Miramar, Puerto Rico, 00907, Attention: Executive Director; and if to the Trustee, to JPMorgan Chase Bank, N.A., 4 New York Plaza, 15th Floor, New York, New York 10004, Attention: Joanne Adamis. The entities listed above may, by written notice, designate any further or different addresses to which subsequent notices, certificates or other communications shall be sent. Notices to Trustee shall be deemed given when received by the Trustee.

Section 11.10    Notices to Rating Agencies.  If additional property, revenues or funds are granted, assigned or pledged as and for additional security hereunder pursuant to Section 2.0l(d) hereof, the Trustee shall notify Moody's and S&P in writing, of such grant, assignment or pledge and the nature of such additional security.

Section 11.11    No Individual Liability.  None of the members of the Authority or any person executing Bonds shall be liable personally on the Bonds or be subject to any personal liability or accountability by reason of the issuance thereof.  All covenants, stipulations, promises, agreements and obligations of the Authority or the Trustee, as the case may be, contained herein, in any Supplemental Trust Agreement or in the Bonds shall be deemed to be the covenants, stipulations, promises, agreements and obligations of the Authority or the Trustee, as the case may be, and not of any member, director, officer, employee, servant or other agent of the Authority or the Trustee in his or her individual capacity, and no recourse shall be had on account of any such covenant, stipulation, promise, agreement or obligation, or for any claim based thereon or hereunder, against any member, director, officer, employee, servant or other agent of the Authority or the Trustee or any natural person executing this Trust Agreement, any Supplemental Trust Agreement, the Bonds or any related document or instrument.

Section 11.12    Events Occurring on Days that are not Business Days.  If the date for making any payment or the last day for performance of any act or the exercising of any right under this Trust Agreement, any Supplemental Trust Agreement or the Bonds is a day that is not a Business Day, such payment may be made, such act may be performed or such right may be exercised on the next succeeding Business Day, with the same force and effect as if done on the date provided in such instrument.

Section 11.13    Severability.  In the event that any provision of this Trust Agreement, other than the grant of the Trust Estate to the Trustee, shall be held invalid or unenforceable by any court of such holding shall not invalidate or render unenforceable any other.

Section 11.14    Applicable Law. The laws of the Commonwealth shall be applied in the interpretation, execution and enforcement of this Trust Agreement.

*[Remainder of page intentionally left blank]*

48

IN WITNESS WHEREOF, the Authority and the Trustee have caused this Agreement to be duly executed by their duly authorized officers as of the day and year first above written.

PUERTO RICO CONVENTION CENTER
DISTRICT AUTHORITY

By: _____
Manuel Sánchez Biscombe
Executive Director

JPMORGAN CHASE BANK, N.A.,

By: _____
Joanne Adamis
Vice President

49

DMJ\339573.16

**APPENDIX _**

**FORM OF PROCEEDS FUND REQUISITION**

**PROCEEDS FUND REQUISITION NO. _____**

JPMorgan Chase Bank, N.A., Trustee
4 New York Plaza, Floor 15
New York, New York 10004-2413
Attention:

Re:   Direction to Make Payments from the Proceeds Fund created under the Trust
      Agreement connection with the Puerto Rico Convention Center District Authority
      $468,800,000 Hotel Occupancy Tax Revenue Bonds, Series A (the "Bonds")

As Trustee under the Trust Agreement dated March 1, 2006 between the Puerto Rico
Convention Center District Authority (the "Authority") and you, as Trustee (the "Trust
Agreement"), you are hereby directed to pay the following from the identified account of the
Proceeds Fund created by the Trust Agreement to the Payee indicated below, for the payment or
reimbursement of the Construction Costs (as defined in the Trust Agreement) set forth in **Exhibit
One** hereto.

The undersigned hereby certifies that (a) the items for which payment is sought are
Construction Costs (as defined in the Trust Agreement) and are proper charges against the
Proceeds Fund for which no prior payment or reimbursement has been sought from the proceeds
of the Bonds or any other bonds of the Authority, (b) no Event of Default (as defined in the Trust
Agreement) has occurred or is continuing or will occur as a result of payment pursuant to this
Requisition, and (c) the undersigned is an Authority Representative (as defined in the Trust
Agreement) and is authorized to execute and deliver this Requisition on behalf of the Authority.

Dated this ____ day of _____, 200_.

                              **PUERTO RICO CONVENTION CENTER
                              DISTRICT AUTHORITY**

              By:   _____
                    Name:
                    Title:

                    [Additional signature, if applicable]

              By:   _____
                    Name:
                    Title:

DM3\350002.1

## EXHIBIT ONE

| (a) | (b) | (c) | (d) | (e) |
|---|---|---|---|---|
| Account | Fund | Amount | Use/Payee | Sign off from Bond Counsel |

DM3\350002.1

2