**EXHIBIT C**
**Supplemental Agreement No. 2**

*Execution Version*

SUPPLEMENTAL AGREEMENT NO. 2

by and among

BACARDI INTERNATIONAL LIMITED,

BACARDI LIMITED,

BACARDI CORPORATION

and

THE GOVERNMENT OF PUERTO RICO

dated as of May 5, 2015

**Table of Contents**

**ARTICLE I     DEFINITIONS; INTERPRETATION; EFFECTIVENESS** ...................... 3

1.1   Defined Terms .......................................................................................... 3
1.2   Interpretation ............................................................................................ 5
1.3   Effectiveness ............................................................................................ 5
    1.3.1   Government Payment ...................................................................... 5
    1.3.2   Designated Agreements .................................................................. 5
    1.3.4   Instruction ...................................................................................... 5
1.4   Confirmation Date ..................................................................................... 5

**ARTICLE II     EXISTING AGREEMENT** ................................................................ 6

2.1   Bulk and Bottled Rum .............................................................................. 6
2.2   Cover Over Revenues ............................................................................... 6
2.3   Marketing and Production Activities ........................................................ 6
2.4   Permitted Debt Service Reduction ........................................................... 6
2.5   True-Up Adjustments................................................................................ 6
2.6   Annual Reports ......................................................................................... 6
3.4   No Further Obligations ............................................................................. 6

**ARTICLE III     MARKETING AND PRODUCTION SUPPORT PAYMENTS** ................ 7

3.1   Past and Payable Amounts ....................................................................... 7
3.2   Payment of Future Amounts ..................................................................... 7
3.3   Pledged Cover Over Requirement ............................................................ 7

**ARTICLE IV     CAPEX PAYMENTS** ...................................................................... 7

4.1   Infrastructure Support .............................................................................. 7
4.2   Allocation ................................................................................................. 7
4.3   Tax Treatment .......................................................................................... 7

**ARTICLE V     REPRESENTATIONS, WARRANTIES, COVENANTS AND
ACKNOWLEDGEMENTS** ....................................................................................... 7

5.1   Representations, Warranties and Acknowledgements ............................. 7
    5.1.1   Government.................................................................................... 8
    5.1.2   Bacardi .......................................................................................... 9
    5.1.3   Joint Representation ....................................................................... 9
5.2   Covenants.................................................................................................. 9
    5.2.1   Designated Agreements .................................................................. 9
    5.2.2   Cover Over Reports ..................................................................... 10
    5.2.3   Reimbursement ............................................................................ 10
5.3   Negative Covenants ................................................................................ 10
    5.3.1   No Adverse Actions ..................................................................... 10

**ARTICLE VI     BREACH; FIRST SUPPLEMENTAL AGREEMENT** ........................... 10

6.1   Breach ..................................................................................................... 10
6.2   First Supplemental .................................................................................. 11

**ARTICLE VII   MISCELLANEOUS**........................................................................................... 11

7.1      Counterparts. ................................................................................................... 11
7.2      Governing Law; Waiver of Sovereign Immunity. ............................................ 11
7.3      Term of Agreement; Survival .......................................................................... 11
7.4       Entire Agreement. ........................................................................................... 11
7.5      Expenses. .......................................................................................................... 11
7.6      No Waiver. ........................................................................................................ 11
7.7      Government Contract Clauses .......................................................................... 12
7.8      Other Existing Agreement Provisions. ............................................................ 17

## Supplemental Agreement No. 2

This **Supplemental Agreement No. 2** (this "*Agreement*"), entered into this fifth day of May, 2015, is made by and among Bacardi International Limited ("*BIL*"), Bacardi Corporation ("*Corp*") and their parent company Bacardi Limited ("*BL*") and the Government of Puerto Rico (the "*Government*"), acting through the Secretary of Treasury, the Secretary of Economic Development and Commerce, the Secretary of Agriculture, the President of the Government Development Bank for Puerto Rico, the Executive Director of the Office of Management and Budget and the Executive Director of the Puerto Rico Industrial Development Company ("*PRIDCO*") as authorized by Act No. 178 of December 1, 2010, as amended, Act No. 1 of January 31, 2011 and any successor legislation (the "*Enabling Act*"). BIL, and any affiliate of BIL (including BL or Corp) that is designated by BIL to perform obligations under the applicable agreement, are collectively referred to as "*Bacardi*". The Government, BIL, Corp and BL are collectively referred to as the "*Parties*" and each individually as a "*Party*".

**WHEREAS**, the Parties are party to that certain Agreement, dated as of December 31, 2010 (the "*2010 Agreement*");

**WHEREAS**, the 2010 Agreement has been modified by the Supplemental Agreement No. 1 dated as of June 27, 2014, as currently extended pursuant to the Sixth Extension of Supplemental Agreement and Amendment of Letter of Intent (the "*Sixth Extension*") dated as of April 9, 2015 (as so extended, and as amended and further extended pursuant to <u>Section 6.2</u>, the "*First Supplemental*", with such 2010 Agreement as so modified by the First Supplemental, the "*Existing Agreement*");

**WHEREAS**, the Parties share the objective of maintaining, promoting and growing the production of Bacardi rum in Puerto Rico;

**WHEREAS**, the Parties wish to supplement the Existing Agreement as set forth in this Agreement; and

**WHEREAS,** the Government has determined that the transactions described in this Agreement are in the best public interest;

**NOW THEREFORE**, in consideration of the foregoing recitals, the covenants, representations, warranties, commitments and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows, effective as set forth below:

## ARTICLE I

## DEFINITIONS; INTERPRETATION; EFFECTIVENESS

**1.1    Defined Terms**. For purposes of this Agreement, (i) capitalized terms not defined shall have the meanings set forth in the Existing Agreement and (ii) the following terms shall have the following meanings:

"*Bacardi Agreements*" shall mean this Agreement and the Existing Agreement.

3

"*Business Day*" shall mean any day that is not a Saturday, Sunday or other day on which commercial banks in New York City or San Juan, Puerto Rico are authorized or required by law to remain closed.

"*CapEx Payments*" shall mean Refurbishment and Production Initiatives payments and Treatment Plant Grant payments.

"*Code*" shall mean the United States Internal Revenue Code of 1986, as amended.

"*Collateral Agent*" shall mean Citibank, N.A., a national banking association, as collateral agent under the Trust Agreement.

"*Confirmation Date*" shall mean the date on which the Lockbox Bank has sent a written notice to the Government, the Trustee and the Paying Agent that it has received from the U.S. Government Cover Over Revenues for deposit into the Lockbox Account.

"*Deposit Account Control Agreement*" shall mean the Deposit Account Control Agreement of even date herewith among the Trustee, the Collateral Agent, the Lockbox Bank and the Government.

"*Designated Agreements*" shall mean the Trust Agreement, the Lockbox Agreement, the Security Agreement and the Deposit Account Control Agreement.

"*Effective Date*" shall mean the first date on which all of the conditions precedent set forth in <u>Section 1.3</u> have been satisfied.

"*Enforcement Expenses*" shall mean expenses incurred by the United States Department of Treasury in connection with the enforcement in Puerto Rico of the provisions of Subtitle E (Sections 5001 through 5891) and Section 7652(a) of the Code and reimbursed from Cover Over Revenues pursuant to Section 5314(a)(4) of the Code.

"*Lockbox Account*" shall mean the deposit account referred to as the "Account" in the Lockbox Agreement.

"*Lockbox Agreement*" shall mean the Lockbox Agreement of even date herewith among the Government, the Trustee, the Paying Agent and the Lockbox Bank.

"*Lockbox Bank*" shall mean Citibank, N.A., a national banking association, as lockbox bank under the Lockbox Agreement.

"*Paying Agent*" shall mean Citibank, N.A., a national banking association, as paying agent under the Trust Agreement.

"*P&I Agreement*" shall mean the Payment and Indemnification Agreement of even date herewith by and between BIL and Citibank, N.A. with respect to its role as Paying Agent, Collateral Agent and Lockbox Bank.

"*Reduction*" shall mean any offset or other reduction in the amount of Cover Over Revenues paid to the Government by the United States Department of Treasury, including as a result of amounts owed, or alleged to be owed, to any United States Governmental Authority by the Government or any Governmental Authority or affiliated entity thereof; provided, however, that a "Reduction" shall not include any reduction that is made by the TTB as an adjustment to the amount of Cover Over Revenues previously paid due to an error determined by an audit or other administrative review.

"*Security Agreement*" shall mean the Security Agreement of even date herewith between the Trustee and the Collateral Agent, as secured parties, and the Government, as pledgor.

"*Trust Agreement*" shall mean the Trust Agreement of even date herewith between the Government, the Trustee, the Paying Agent and the Collateral Agent.

"*Trustee*" shall mean Banco Popular de Puerto Rico, a Puerto Rico banking entity, as trustee under the Trust Agreement.

1.2     **Interpretation**.  It is not the intention of the Parties to this Agreement to effect a novation of the Existing Agreement but only to supplement and modify the Existing Agreement as herein specifically indicated.  Except to the extent expressly modified by this Agreement, the terms of the Existing Agreement shall remain in full force and effect.  To the extent that there are any conflicts or inconsistencies between the terms and conditions of the Existing Agreement and the terms and conditions of this Agreement, the terms and conditions of this Agreement shall prevail.

1.3     **Effectiveness.**  The effectiveness of this Agreement between the Parties shall be subject to the satisfaction of each of the following conditions:

1.3.1     Government Payment.  PRIDCO shall have paid to BIL, on the date hereof, the amount of $32,000,000, by wire transfer of immediately available funds, in full satisfaction of certain Marketing and Production Support Payments that were due and payable as of the date hereof, as more specifically described in Exhibit A .

1.3.2     Designated Agreements.  Each of the Designated Agreements shall have been executed by the applicable representatives of the Government and the other parties thereto pursuant to Section 5.2.1 and shall be in full force and effect.

1.3.3     Instruction.  The Government shall have delivered to the United States Department of Treasury an instruction to remit all Cover Over Revenues to the Lockbox Account.

1.4     **Confirmation Date.**  The effectiveness of Section 2.5 and Article III of this Agreement shall be subject, in addition to the satisfaction of the conditions listed in Section 1.3, to the condition that the Confirmation Date shall have occurred.

## ARTICLE II

## EXISTING AGREEMENT

**2.1     Bulk and Bottled Rum**.   The reference to "bulk rum" in the definition of "Bacardi Rum Sales" in the Existing Agreement shall instead refer to "bulk rum (and, after June 30, 2014, bottled rum)" for rum produced in Puerto Rico.

**2.2     Cover Over Revenues**.   The definition of "Cover Over Revenues" shall be determined without regard to any Reduction.

**2.3     Marketing and Production Activities**.   Sections 4.2.2(i), 4.2.3 and 4.2.4 of the Existing Agreement shall be of no further force and effect and the following text in Section 4.2.1 of the Existing Agreement shall be of no further force and effect:   "Subject to the limitations in Sections 4.2.2 and 4.2.3,".

**2.4     Permitted Debt Service Reduction**.   Marketing and Production Support Payments shall not be reduced by Permitted Debt Service Reductions.

**2.5     True-Up Adjustments**.   Section 4.6.4(b) of the Existing Agreement shall be of no further force and effect.   Adjustments relating to the amounts in respect of Cover Over Revenues paid, or to be paid, to Bacardi shall be determined in accordance with Section 4.5 of the Trust Agreement.   In order to permit PRIDCO to prepare the "True-Up Calculations" under Section 4.5 of the Trust Agreement, no later than September 30 of each year PRIDCO and Bacardi shall undertake a review and reconciliation of all the invoices for Marketing and Production Support Payments submitted by Bacardi during the prior Fiscal Year (including all federal tax forms and amendments thereto filed with the TTB evidencing Bacardi Rum Sales and Cover Over Revenues generated by such sales) and the actual Marketing and Production Support Payments made by the Government to Bacardi during such Fiscal Year.

**2.6     Annual Reports**.   The reports required to be delivered by Bacardi under Sections 4.1.1(c) and 4.1.2(c) of the Existing Agreement shall be delivered within ninety (90) days after the end of each Fiscal Year.   In addition to including the information contained in the reports Bacardi submitted pursuant to such Sections before the Effective Date, reports submitted after the Effective Date shall contain information as to the volume of rum sold during such Fiscal Year that generated Cover Over Revenues and Bacardi's use of the Marketing and Production Support Payments it received during such Fiscal Year.

**2.7     Application of Payments**.   Marketing and Production Support Payments shall be credited to invoices submitted by Bacardi in the order in which such invoices became due and payable.

**2.8     No Further Obligations**.   Bacardi shall have no further obligation under Section 4.8 of the Existing Agreement.

## ARTICLE III

## MARKETING AND PRODUCTION SUPPORT PAYMENTS

**3.1    Past and Payable Amounts**.  The Government shall have no further obligation to pay BIL (or any Affiliate of BIL) $30,000,000 of Marketing and Production Support Payments which were due and payable as of the date hereof, such amount to be applied as set forth on <u>Exhibit A</u> to this Agreement.

**3.2    Payment of Future Amounts**.  All Marketing and Production Support Payments shall be paid (i) to the Paying Agent by the Lockbox Bank and (ii) to BIL by the Paying Agent to the extent funds administered by the Paying Agent are sufficient to make such Marketing and Production Support Payments in accordance with the Trust Agreement.

**3.3    Pledged Cover Over Requirement**.  Any amount that would have been payable to BIL in any given month but for the Pledged Cover Over Requirement shall be deemed to be payable in the months immediately succeeding the month in which the Pledged Cover Over Requirement for the then current Fiscal Year has been satisfied in full, to the extent of funds available to the Paying Agent from its receipt of Cover Over Revenues.  Notwithstanding the immediately preceding sentence, this Section 3.3 shall not modify in any respect Sections 4.1.4 or 6.3.3 of the Existing Agreement.

**3.4    Enforcement Expenses**.  BIL shall pay a share of Enforcement Expenses pursuant to Section 4.7 of the Trust Agreement.

## ARTICLE IV

## CAPEX PAYMENTS

**4.1    Infrastructure Support.** The Government shall have no further obligation to make the CapEx Payments required under Sections 3.1, 3.3 and 3.4 of the Existing Agreement, whether such CapEx Payments accrued before, or would accrue after, the Effective Date.

**4.2    Allocation**.  Bacardi may apply any portion of the Marketing and Production Support Payments it receives after the Confirmation Date to fund Refurbishment and Production Initiatives and the construction and operation of the Treatment Plant.  Bacardi may determine in its sole discretion whether to make such application and the amount of any such application.

**4.3    Tax Treatment**.  Any allocation of Marketing and Production Support Payments pursuant to <u>Section 4.2</u> shall be subject to Section 5.2 of the Existing Agreement.

## ARTICLE V

## REPRESENTATIONS, WARRANTIES, COVENANTS AND ACKNOWLEDGEMENTS

**5.1    Representations, Warranties and Acknowledgements**.

**5.1.1** <u>Government</u>.  The Government hereby represents and warrants to Bacardi as of the date of this Agreement and as of the Effective Date that:

(A)     The  Government is not prohibited from consummating the transactions contemplated in this Agreement or the Designated Agreements by any law, regulation, agreement, instrument, restriction, order or judgment.

(B)     The  Government has: (i) the legal power and due authority to execute and deliver this Agreement and the Designated Agreements and to make the representations and perform its obligations set forth in this Agreement and the Designated Agreements; and (ii) duly obtained such approvals, authorizations or consents in accordance with applicable law and procedures to the extent that the approval, authorization or consent of any Governmental Authority or any third party to make the representations and perform its obligations contained in this Agreement and the Designated Agreements is required.

(C)     The execution and delivery by the Government of this Agreement and the Designated Agreements, and the performance by the Government of this Agreement and the Designated Agreements, does not violate or conflict with, or result in a default under, any material contract or agreement to which it is bound or any law, regulation, agreement, instrument, restriction, order or judgment.

(D)     Assuming due authorization, execution and delivery of this Agreement and the Designated Agreements by all other parties thereto, this Agreement and the Designated Agreements are the legal, valid and binding obligation of the Government, enforceable against the Government in accordance with its terms, subject to the effects of laws affecting creditors' rights generally, including such laws relating to insolvency or debt restructuring and, to the extent applicable, the laws affecting the payment priorities of the obligations of the Commonwealth of Puerto Rico.

(E)     There are no actions, suits or proceedings pending or, to the best of the Government's knowledge, threatened against or affecting the Government before any court or administrative body or arbitral tribunal that could reasonably be expected to have a material adverse effect on the ability of the Government to meet and carry out its obligations under this Agreement and the Designated Agreements, except for those actions, suits or proceedings pending, threatened or anticipated that have become public knowledge.

(F)     The Cover Over Revenues payable to the Government are not subject to any lien, mortgage, encumbrance, charge or other security interest other than the Pledged Cover Over Requirement and the security interest created under the Security Documents on the "Collateral" as defined therein.  The Government has not received any notice stating that it is currently, or may in the future be, subject to the Treasury Offset Program administered by the United States Department of Treasury.

**5.1.2**  Bacardi.  Each of BIL, BL and Corp hereby represents and warrants to the Government as of the date of this Agreement and as of the Effective Date that:

> (A)  BIL, BL and Corp are corporations duly organized and validly existing under the laws of their respective jurisdictions and have the corporate power and authority, and have taken all necessary action to authorize them, to execute and deliver this Agreement and to perform their obligations under this Agreement and the Trust Agreement (to the extent such Bacardi entities are party thereto).

> (B)  The execution and delivery by BIL, BL and Corp of this Agreement, and the performance by BIL, BL and Corp of this Agreement and the Trust Agreement (to the extent such Bacardi entities are party thereto), does not violate or conflict with, or result in a default under, any material contract or agreement to which they are bound or any of their respective organizational documents or any law, regulation, agreement, instrument, restriction, order or judgment.

> (C)  Assuming due authorization, execution and delivery of this Agreement and the Trust Agreement by the other parties thereto, this Agreement and the Trust Agreement are the legal, valid and binding obligation of each of BIL, BL and Corp (to the extent such Bacardi entities are party thereto), enforceable against each of them in accordance with its terms, subject to the effects of bankruptcy or insolvency or laws affecting creditors' rights generally.

> (D)  There are no actions, suits or proceedings pending or, to the best of BIL, BL and Corp's knowledge, threatened against or affecting BIL, BL and Corp before any court or administrative body or arbitral tribunal that could reasonably be expected to have a material adverse effect on the ability of BIL, BL and Corp to meet and carry out their obligations under this Agreement and the Trust Agreement (to the extent such Bacardi entities are party thereto).

> (E)  Each of BIL, BL and Corp know of no material impediment which would prevent, impede, diminish or delay its timely performance of its obligations under this Agreement and the Designated Agreements.

**5.1.3**  Joint Representation.  Bacardi hereby represents and warrants to the Government, and the Government hereby represents and warrants to Bacardi, in each case as of the date of this Agreement and as of the Effective Date, that Exhibit A to this Agreement accurately sets forth the Marketing and Production Support Payments that, based on the assumptions set forth in such Schedule, (i) were payable under the Existing Agreement immediately prior to the payment by the Government described in Section 1.3.1, (ii) remain unpaid as of the date of this Agreement after application of the payment by the Government described in Section 1.3.1, and (iii) that will remain unpaid as of the Effective Date, after giving effect to the agreement described in Section 3.1.

**5.2**  **Covenants**.

**5.2.1**  Designated Agreements.  Concurrently with the execution and delivery of this Agreement by the Parties and the execution and delivery of the Designated Agreements by each

of the other parties thereto, the Government shall execute and deliver the Designated Agreements and provide a copy of each such fully executed Designated Agreement to BIL.  The Government shall at all times comply in all material respects with its obligations under the Designated Agreements.

      **5.2.2**  <u>Cover Over Reports</u>.  As promptly as practicable, the Government shall use its best efforts following the Confirmation Date to obtain a waiver from the United States Department of Treasury that would permit the Government to deliver the Cover Over Reports (as such term is defined in the Lockbox Agreement) to the Lockbox Bank, the Paying Agent and PRIDCO.

      **5.2.3**  <u>Reimbursement</u>.  PRIDCO shall, within ten (10) Business Days of demand therefor, reimburse BIL for any amount that BIL has become obligated to pay to the Lockbox Bank, the Paying Agent or the Collateral Agent pursuant to the terms of the P&I Agreement. For purposes of this <u>Section 5.2.3</u>, the terms of the P&I Agreement shall be those in effect on the date hereof unless PRIDCO has consented to any amendment, supplement or modification to the P&I Agreement that would have the effect of increasing the payment obligations of BIL thereunder.

      **5.3**    **Negative Covenants**.

      **5.3.1**  <u>No Adverse Actions</u>.  Without the prior written consent of the Government, Bacardi, to the extent permitted by law and unless otherwise required by law, shall not take or fail to take any action if such action or failure to act, as the case may be, is reasonably likely to adversely affect, diminish or impair the beneficial use, operation, utility of, or the ability of the Government to beneficially use, occupy, obtain, receive or otherwise enjoy, any of the obligations or other commitments of Bacardi contemplated by, or set forth in, this Agreement and the Designated Agreements.  Without the prior written consent of Bacardi, the Government, to the extent permitted by law and unless otherwise required by law, shall not take  or fail to take any action, if such action or failure to act, as the case may be, is reasonably likely to (i) adversely affect, diminish or impair the beneficial use, operation, utility of, or the ability of Bacardi to beneficially use, occupy, obtain, receive or otherwise enjoy, any of the obligations or other commitments of the Government contemplated by, or set forth in, this Agreement and the Designated Agreements, (ii) result in the U.S. Department of Treasury not remitting all Cover Over Revenues to the Lockbox Account or (iii) result in a lien on the Collateral (as defined in the Security Agreement) or any portion thereof.

**ARTICLE VI**

**<u>BREACH; FIRST SUPPLEMENTAL</u>**

      **6.1**    **Breach**.  Any breach by the Government of <u>Section 5.3.1</u> shall constitute a Material Default under the Existing Agreement and shall give rise to the same remedies and rights (including rights of termination) with respect to this Agreement as does a Material Default by the Government under the Existing Agreement.

10

**6.2** **First Supplemental**. Pursuant to Section 3.6 of the First Supplemental, (i) the proviso in Section 3.6 of the First Supplemental is hereby amended to delete the phrase "in each case by no more than sixty (60) days", (ii) the date of May 8, 2015 set forth in Section 2.1 of the First Supplemental pursuant to the Sixth Extension, is hereby extended to the Confirmation Date and (iii) the date of April 24, 2015 set forth in Section 2.2 of the First Supplemental pursuant to the Sixth Extension, is hereby extended to June 26, 2015. If the Confirmation Date occurs at any time after Bacardi has commenced arbitration seeking to enforce obligations under the Existing Agreement that are extinguished by Section 3.1 hereof, Bacardi shall promptly after the Confirmation Date dismiss such arbitration.

## ARTICLE VII

## MISCELLANEOUS

**7.1** **Counterparts**. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original.

**7.2** **Governing Law; Waiver of Sovereign Immunity**. The governing law of this Agreement shall be the law of the Commonwealth of Puerto Rico (the "Commonwealth"), without giving effect to applicable principles of conflicts of laws. The Government hereby waives any right, forum, defense or limitation based upon its sovereign immunity for purposes of any action for breach of its obligations under this Agreement.

**7.3** **Term of Agreement; Survival**. The term of this Agreement shall be the same as the Term. The provisions of this Agreement that have not become effective or that have not been fully performed (i) shall automatically terminate upon termination or expiration of the Existing Agreement (or, if the Existing Agreement is extended, upon the termination or expiration of such extension) and (ii) if the Confirmation Date has not occurred on or before June 26, 2015, may be terminated by BIL giving written notice to the Government, such termination to become effective upon the Government's receipt of such notice; provided, however, that Section 5.2.3 shall survive any such termination or expiration.

**7.4** **Entire Agreement.** The Bacardi Agreements, the Designated Agreements and the P&I Agreement constitute the entire agreement among the parties hereto with respect to the subject matter of this Agreement and supersede all prior or contemporaneous agreements, understandings, discussions or negotiations (written or oral) among the parties hereto with respect to the subject matter of this Agreement.

**7.5** **Expenses**. Except as otherwise expressly provided herein or in the Designated Agreements, each Party shall be responsible for all of the costs, fees and expenses incurred in performing its obligations under this Agreement and the Designated Agreements and shall pay the fees and expenses of its attorneys and other advisors and consultants and all other costs, fees and expenses incurred by such Party in connection with the negotiation, preparation, execution and delivery of this Agreement and the Designated Agreements.

**7.6** **No Waiver**. No provision of this Agreement may be interpreted to be a waiver of any provision of the laws (including the Constitution) of the Commonwealth that are not

11

waivable under such laws, including any applicable laws relating to the payment priorities of the obligations of the Commonwealth, including without limitation Section 8 of Article VI of the Constitution and Article 4(c) of Act 147 of June 18, 1980, as amended.

**7.7    Government Contract Clauses**.

**7.7.1**    Lobbying Certification.    Each of BIL, BL and Corp certifies that none of the funds from this Agreement will be paid to any person for lobbying before a member, an official or employee of any Government agency, the federal government and/or the Commonwealth Legislature in connection with this Agreement.

If any funds, other than funds provided by this Agreement, have been paid or will be paid to any person for lobbying before a member, an official or employee of the Commonwealth Legislature in connection with this Agreement, each of BIL, BL and Corp shall complete and submit to PRIDCO Standard Form LLL "Disclosure Form To Report Lobbying" in accordance with its instructions, and Standard Form LLL.

Each of BIL, BL and Corp shall require that this lobby certification clause be included in all contracts and sub-contracts entered into in the Commonwealth as a result of this Agreement. Each of BIL, BL and Corp acknowledges that a false certification by any of them constitutes a material default and may be grounds for termination of this Agreement.

**7.7.2**    No Payments or Gratuities.    Neither BIL, BL or Corp nor their officers, directors or employees has made any payment, gift or anything of value to any Government employee or official to obtain a favorable evaluation or the execution of this Agreement.  If a violation of this Section 7.7.2 occurs, in addition to the remedies available to the Government pursuant to applicable laws and regulations, the Government shall be entitled to recover any payments made or gratuities given.  No fee or gratuity will be paid to any such person in connection with this Agreement (except to attorneys and consultants engaged to advise Bacardi) to meet the requirements of this Agreement and any violation of this prohibition may be grounds for termination of this Agreement.

**7.7.3**    Conflicts of Interest.    Each of BIL, BL and Corp hereby certifies that neither BIL, BL or Corp nor their directors, officers, members, partners or employees, has any interest nor shall they acquire any interest, directly or indirectly, in cases or issues which may conflict in any manner with its performance under this Agreement.

To the best knowledge of BIL, BL and Corp (i) no public official or employee of the Government or employee of the Legislative and Judicial branches of the Government has participated in any decision relating to this Agreement which affects such official's or employee's personal interest or the interest of any entity or business in which such officer or employee or any member of his family has or has had an economic interest, directly or indirectly, and (ii) no official or employee of the Government or of the Legislative and Judicial branches of the Government has any interest, direct or indirect, in this Agreement or any proceeds thereof.

Each of BIL, BL and Corp hereby certifies that neither it nor any of its shareholders, directors, executives, officers and employees receives a salary or any kind of compensation for

the delivery of regular services by appointment in any agency, instrumentality, public corporation, or municipality of the Commonwealth of Puerto Rico.

Each of BIL, BL and Corp agrees to request the Government's consent or waiver to any agreement described in this Section 7.7.3 prior to its execution which consent or waiver will not be unreasonably denied.

It is acknowledged that the certifications as to the non-existence of a conflict of interest are essential conditions of this Agreement, and if found to be intentionally false, misleading, altered or forged, such finding may be grounds for termination of this Agreement.

**7.7.4** Full Disclosure.  To the best of its knowledge, each of BIL, BL and Corp has furnished to the Government all material facts necessary to make the statements contained herein.  To the best of its knowledge, as of the Effective Date, there are no issues, facts or matters that materially adversely affect, or which could materially adversely affect, the properties, business, operations or condition (financial or otherwise) of any of them or that will hinder their ability to perform their obligations under this Agreement.

**7.7.5** Compliance with Tax Laws.  Each of BIL, BL and Corp shall be responsible for retention, proper filing and payment of all social security, income tax, worker's compensation, unemployment insurance, disability insurance, and all other labor requirements arising under this Agreement, if applicable.  Each of BIL, BL and Corp agrees that it will comply with the Commonwealth tax laws, rules and regulations.  Each of BIL, BL and Corp will be responsible for filing its income tax returns and any other tax or related filings for making any necessary payments to the Department of the Treasury and the Internal Revenue Service of the United States of America, if applicable.

Corp certifies that it has filed all of its Tax returns for the past five (5) years, owes no Taxes and/or is up to date in any payment plan for such Taxes.  Corp also certifies that it does not have outstanding debts regarding its treatment of unemployment insurance premiums, workers' compensation payments, social security for chauffeurs in Puerto Rico or the Administration for the Sustenance of Minors (known by its Spanish acronym "ASUME").  Prior to the execution of this Agreement, Corp has submitted to the Government the following certifications and documents:

(a)     A certification of filing of income tax returns for the past five (5) years, issued by the Department of the Treasury.

(b)     A negative debt certificate, or payment plan and compliance therewith, issued by the Commonwealth's Department of the Treasury.

(c)     A negative certificate of debt, or payment plan and compliance therewith, with respect to real and personal property taxes issued by the Municipal Revenue Collection Center (known by its Spanish acronym "CRIM").

(d)     A negative certificate of debt, or payment plan and compliance therewith, for unemployment insurance, temporary disability insurance and chauffeur's social security issued by the Puerto Rico Department of Labor and Human Resources.

(e)     A copy of the Workmen's Compensation Insurance policy issued by the State Insurance Fund.

(f)     A negative certificate of debt, or payment plan and compliance therewith, issued by the State Insurance Fund.

(g)     A good standing certificate from the Puerto Rico Department of State.

(h)     A negative certificate of account or debt, or payment plan and compliance therewith, with respect to ASUME.

BIL and BL are not engaged in trade or business in Puerto Rico.   Prior to the execution of this Agreement, BIL and BL submitted to PRIDCO a good standing certificate issued by the Department of State of their place of organization and a notarized sworn statement in which each of BIL and BL certifies that:

(a)     During the five (5) taxable years prior to the year of execution of this Agreement (the "*Five Year Period*"), it was not engaged in the conduct of trade or business in Puerto Rico, it did not derive any income effectively connected with a trade or business in Puerto Rico, it was not required to file, and did not file, any income tax returns in Puerto Rico and it does not owe income taxes to the Puerto Rico Department of the Treasury.

(b)     During the Five Year Period it did not have any personal property in Puerto Rico and it was not required to file, and did not file, any personal property tax returns in Puerto Rico and it does not owe the CRIM any taxes.

(c)     During the Five Year Period it did not have, and it currently does not have any real property in Puerto Rico and it does not owe any real property taxes to the CRIM.

(d)     It does not have any employees in Puerto Rico.  Therefore, it does not (1) owe any payments to the Puerto Rico Department of Labor and Human Resources in connection with unemployment, disability, or chauffeur's insurance; (2) have to obtain and maintain an insurance policy from the Puerto Rico State Insurance Fund; and (3) have the obligation as an employer to withhold and remit child support payments to ASUME.  Certificates issued by the Puerto Rico Department of Labor and Human Resources to the effect that BIL and BL are not registered as employers in Puerto Rico are attached hereto and made a part hereof.

(e)     It is not required to withhold or pay any other taxes to the Government.

It is acknowledged that the certifications and sworn statements above are essential conditions of this Agreement, and if found to be intentionally false, misleading, altered or forged, such finding shall constitute a material default under this Agreement and the Government shall have the right to terminate this Agreement.

**7.7.6**   Business Documents; Evidence of Authority.   Prior to the execution of this Agreement, each of BIL, BL and Corp has provided to the Government copies of its articles of incorporation, by-laws, or partnership or joint venture agreement, as applicable.   Each of BIL, BL and Corp has delivered to the Government an original certificate of resolution evidencing the authorization to enter into this Agreement.

**7.7.7**   Registration of this Agreement.   PRIDCO shall remit a copy of this Agreement to the Office of the Comptroller of Puerto Rico within thirty (30) days following the date of the execution of this Agreement and any subsequent amendment of this Agreement.   No provision or consideration of services under this Agreement may be demanded until the same has been filed for registration with the Office of the Comptroller of Puerto Rico pursuant to Act No. 18 of October 30, 1975, as amended and Act No. 127 of May 31, 2004 (collectively, the "*Acts*"), as amended.   The Government undertakes to register this Agreement pursuant to such Acts as soon as practicable after the execution of this Agreement.

**7.7.8**   Certification on Criminal Proceedings.   Each of BL, BIL and Corp certifies that as of the date of this Agreement and for the preceding ten (10) years, neither it nor any of its shareholders, directors, employees or agents, subsidiaries or parent companies have been convicted, entered a guilty plea or probable cause found for arrest, and that it has no knowledge that any of them is or are the subject of any investigation in either a civil or criminal procedure in a state or federal court for charges related to acts of corruption, the public treasury, the public trust, a public function, or a fault that involves public funds or property, or has no knowledge of being indicted in a criminal procedure for offenses against public integrity, embezzlement of public funds or for the felonies or misdemeanors mentioned in Act No. 458 of December 29, 2000, as amended, in the courts of the Commonwealth, federal courts, or any other court with jurisdiction.   It is acknowledged by the Parties that this certification is an essential condition of this Agreement.   If the certification is not correct in its entirety or in any of its parts, it shall constitute a material default under this Agreement and a cause for the Government to terminate this Agreement without prior notice and to the extent required by Act No. 458 of December 29, 2000, if applicable with respect to this Agreement, each of BL, BIL and Corp will have to reimburse the Government any amount of money received under this Agreement.   Each of BL, BIL and Corp have submitted to the Government a sworn statement as required by Act No. 428, approved on September 22, 2004.

If the status of each of BL, BIL and Corp with regards to the charges previously mentioned should change at any time during the term of this Agreement, each of BL, BIL and Corp shall immediately notify in writing the Government after acquiring knowledge thereof if it, or any of its shareholders, officers and directors becomes indicted, convicted or becomes the subject of an investigation in a criminal procedure for any type of offense mentioned above. Failure to comply with this notice constitutes a material default under this Agreement and a cause for the Government to terminate this Agreement and shall result in the remedies mentioned previously.

Corp will require compliance with the clauses described above to any consultant and/or subcontractor hired in the Commonwealth with the funds provided under this Agreement.   If said certification is false, Corp will have just cause for terminating the agreement with the consultant or sub-contractor, and to the extent required by applicable law with respect to this Agreement,

the consultant or sub-contractor will have to reimburse the Government any and all amounts received for services performed under this Agreement.

If the circumstances of the consultant or sub-contractor related to child support payments change at any time during this Agreement, the consultant or sub-contractor shall obtain the necessary certification, inform Corp, immediately obtain the certification from ASUME and provide a copy to Corp.

**7.7.9** _Ethics Representations_.  In addition to any of the foregoing warranties and representations, each of BL, BIL and Corp acknowledges, represents and warrants that no official or employee of the Government has a direct or indirect economic interest in Bacardi's rights under this Agreement, the Existing Agreement or the Designated Agreements as required by (a) Act No. 84 of June 18, 2002, as amended, also known as the Code of Ethics for Contractors (the _"Ethics Code"_) and Act No. 68 of February 20, 2004, as amended, and (b) the Government's Ethics Law, Act No. 1, enacted on January 3, 2012, as amended from time to time, and its implementing regulations (the "Ethics Law and Regulations").  Each of BIL, BL and Corp certifies that it has received a copy of the Ethics Code and the Ethics Law and Regulations, read, understood, has complied and will subsequently continue to comply with them in their entirety.  A violation of this Section 7.7.9 shall constitute a material default under this Agreement and the Existing Agreement and a cause for the Government to terminate this Agreement and the Existing Agreement to the extent required by the Ethics Laws and Regulations, if applicable.

**7.7.10** _Invoice Certification_.  All invoices under the Existing Agreement must include a written and signed certification stating that no officer or employee of the Government, and its respective subsidiaries or affiliates, will personally derive or obtain any benefit or profit of any kind from this Agreement, with the acknowledgement that invoices which do not include this certification will not be paid.  This certification must read as follows:

> "We certify under penalty of nullity that no public servant of the Government, its respective subsidiaries or affiliate, will derive or obtain any benefit or profit of any kind from the contractual relationship which is the basis of this invoice.  If such benefit or profit exists, the required waiver has been obtained prior to entering into the Agreement.  The only consideration to be received in exchange for the delivery of goods or for services provided is the agreed upon price that has been negotiated with an authorized representative of the Government.  The total amount shown on this invoice is true and correct.  The services have been rendered, and no payment has been received."

**7.7.11** _Non Discrimination Clauses_.  Each of BL, BIL and Corp agrees that it will not discriminate against any employees or applicant for employment on account of race, color, religion, sex, sexual orientation, disability or national origin in compliance with all applicable Commonwealth and federal laws and regulations regarding non-discrimination.  The provisions of this Section 7.7.11 shall be applicable to any sub-contractor or Person acting on behalf of each of BL, BIL and Corp and/or a sub-contractor.

16

Each of BL, BIL and Corp shall include the provisions of this <u>Section 7.7.11</u> in every subcontract so that such provisions will be binding upon each contractor.

**7.7.12** <u>Local Goods and Services</u>.   Pursuant to Article 10 of Act No. 14 of the Legislative Assembly of Puerto Rico, enacted on January 8, 2004, 3 P.R. Laws Ann. § 930 et seq., each of BL, BIL and Corp shall use, to the extent available and applicable hereunder, and to the extent permitted by applicable law, goods extracted, produced, assembled, packaged, bottled or distributed in the Commonwealth by businesses operating in the Commonwealth or distributed by agents established in the Commonwealth.

**7.7.13** <u>Enabling Act</u>.  This Agreement is entered into pursuant to the Enabling Act.

**7.8** **Other Existing Agreement Provisions**.  The following provisions of the Existing Agreement shall apply to this Agreement as fully as if set forth herein, and any references therein to the "Agreement" or any provision thereof shall instead refer to this Agreement or the applicable provision hereof for purposes of this <u>Section 7.8</u>:  Article V, Section 6.3, Sections 8.3 through 8.8, Sections 8.10 through 8.14, Section 8.16, Section 8.17, Section 8.19 and Section 8.20.

[*Signature Pages Follow*]

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the date hereof.

**BACARDI INTERNATIONAL LIMITED**

By: _____

Name:  D. Jane Hulse
Title:   Finance Director

By: _____

Name:  Michelle Hajek
Title:   Assistant Secretary

**BACARDI LIMITED**

By: _____

Name:  Douglas Mello
Title:   Vice President – Corporate Secretary
          & Shareholder Relations

By: _____

Name:  Kevin McNamara
Title:   Senior Vice President & Chief
          Financial Officer

**BACARDI CORPORATION**

By: _____

Name:  Joaquin E. Bacardí
Title:   President

By: _____

Name:  Carlos H. Dobal
Title:   Vice President and Director

[Signature Page to Supplemental Agreement No. 2]

**IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the date hereof.

BACARDI INTERNATIONAL LIMITED

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

BACARDI LIMITED

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

BACARDI CORPORATION

By: _____
    Name:   Joaquin E. Bacardí
    Title:   President

By: _____
    Name:   Carlos H. Dobal
    Title:   Vice President and Director

[Signature Page to Supplemental Agreement No. 2]

       **IN WITNESS WHEREOF**, the Parties have duly executed this Agreement as of the date hereof.

**BACARDI INTERNATIONAL LIMITED**

By: _____

      Name:
      Title:

By: _____

      Name:
      Title:

**BACARDI LIMITED**

By: _____

      Name:
      Title:

By: _____

      Name:
      Title:

**BACARDI CORPORATION**

By: _____

      Name:  Joaquin E. Bacardí
      Title:   President

By: _____

      Name:  Carlos H. Dobal
      Title:   Vice President and Director

[Signature Page to Supplemental Agreement No. 2]

**THE GOVERNMENT OF PUERTO RICO**

Department of the Treasury

By: _____
       Name:  Juan Zaragoza Gómez
       Title:    Secretary

Department of Economic Development and
Commerce

By: _____
       Name:  Alberto Bacó Bagué
       Title:    Secretary

Puerto Rico Industrial Development Company

By: _____
       Name:  Antonio L. Medina Comas
       Title:    Executive Director

Department of Agriculture

By: _____
       Name:  Myrna Comas Pagan
       Title:    Secretary

Office of Management and Budget

By: _____
       Name:  Luiz F. Cruz Batista
       Title:    Executive Director

Government Development Bank for Puerto Rico

By: _____
       Name:  Melba I. Acosta Febo
       Title:    President

[Signature Page to Supplemental Agreement No. 2]

**THE GOVERNMENT OF PUERTO RICO**

Department of the Treasury

By: _____
        Name:  Juan Zaragoza Gómez
        Title:   Secretary

Department of Economic Development and
Commerce

By: _____
        Name:  Alberto Bacó Bagué
        Title:   Secretary

Puerto Rico Industrial Development Company

By: _____
        Name:  Antonio L. Medina Comas
        Title:   Executive Director

Department of Agriculture

By: _____
        Name:  Myrna Comas Pagan
        Title:   Secretary

Office of Management and Budget

By: _____
        Name:  Luiz F. Cruz Batista
        Title:   Executive Director

Government Development Bank for Puerto Rico

By: _____
        Name:  Melba I. Acosta Febo
        Title:   President

[Signature Page to Supplemental Agreement No. 2]

**THE GOVERNMENT OF PUERTO RICO**

Department of the Treasury

By: _____
    Name:  Juan Zaragoza Gómez
    Title:  Secretary

Department of Economic Development and
Commerce

By: _____
    Name:  Alberto Bacó Bagué
    Title:  Secretary

Puerto Rico Industrial Development Company

By: _____
    Name:  Antonio L. Medina Comas
    Title:  Executive Director

Department of Agriculture

By: _____
    Name:  Myrna Comas Pagan
    Title:  Secretary

Office of Management and Budget

By: _____
    Name:  Luiz F. Cruz Batista
    Title:  Executive Director

Government Development Bank for Puerto Rico

By: _____
    Name:  Melba I. Acosta Febo
    Title:  President

[Signature Page to Supplemental Agreement No. 2]

**THE GOVERNMENT OF PUERTO RICO**

Department of the Treasury

By: _____
     Name:  Juan Zaragoza Gómez
     Title:   Secretary

Department of Economic Development and
Commerce

By: _____
     Name:  Alberto Bacó Bagué
     Title:   Secretary

Puerto Rico Industrial Development Company

By: _____
     Name:  Antonio L. Medina Comas
     Title:   Executive Director

Department of Agriculture

By: *Myrna Comas Pagan*
     Name:  Myrna Comas Pagan
     Title:   Secretary

Office of Management and Budget

By: _____
     Name:  Luiz F. Cruz Batista
     Title:   Executive Director

Government Development Bank for Puerto Rico

By: _____
     Name:  Melba I. Acosta Febo
     Title:   President

[Signature Page to Supplemental Agreement No. 2]

**THE GOVERNMENT OF PUERTO RICO**

Department of the Treasury

By: _____

    Name:  Juan Zaragoza Gómez
    Title:   Secretary

Department of Economic Development and
Commerce

By: _____

    Name:  Alberto Bacó Bagué
    Title:   Secretary

Puerto Rico Industrial Development Company

By: _____

    Name:  Antonio L. Medina Comas
    Title:   Executive Director

Department of Agriculture

By: _____

    Name:  Myrna Comas Pagan
    Title:   Secretary

Office of Management and Budget

By: _____

    Name:  Luiz F. Cruz Batista
    Title:   Executive Director

Government Development Bank for Puerto Rico

By: _____

    Name:  Melba I. Acosta Febo
    Title:   President

[Signature Page to Supplemental Agreement No. 2]

**THE GOVERNMENT OF PUERTO RICO**

Department of the Treasury

By: _____
      Name:  Juan Zaragoza Gómez
      Title:   Secretary

Department of Economic Development and
Commerce

By: _____
      Name:  Alberto Bacó Bagué
      Title:   Secretary

Puerto Rico Industrial Development Company

By: _____
      Name:  Antonio L. Medina Comas
      Title:   Executive Director

Department of Agriculture

By: _____
      Name:  Myrna Comas Pagan
      Title:   Secretary

Office of Management and Budget

By: _____
      Name:  Luiz F. Cruz Batista
      Title:   Executive Director

Government Development Bank for Puerto Rico

By: _____
      Name:  Melba I. Acosta Febo
      Title:   President

[Signature Page to Supplemental Agreement No. 2]