# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico, et al.,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## NOTICE OF HEARING ON OMNIBUS MOTION TO DISMISS OF THE LAWFUL CONSTITUTIONAL DEBT COALITION, PURSUANT TO BANKRUPTCY RULE 7012, OF CLAIM OBJECTIONS FILED OR ASSERTED BY THE FINANCIAL MANAGEMENT OVERSIGHT BOARD FOR PUERTO RICO AND THE OFFICIAL <u>COMMITTEE OF UNSECURED CREDITORS</u>

---

[1] The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**Hearing Date: April 30, 2020 at 10:00 a.m. (AST) / (ET)**
**Objection Deadline: March 18, 2020 at 5:00 p.m. (AST) / (ET)**

**PLEASE TAKE NOTICE** that a hearing on the *Omnibus Motion to Dismiss of the Lawful Constitutional Debt Coalition, Pursuant to Bankruptcy Rule 7012, of Claim Objections Filed or Asserted by the Financial Management Oversight Board for Puerto Rico and The Official Committee of Unsecured Creditors*, dated February 5, 2020 (the "Motion to Dismiss"), will be held before the Honorable Judge Laura Taylor Swain, United States District Court Judge, at the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., Suite No. 3212, New York, New York 10007-1312 on **April 30, 2020 at 10:00 a.m. (Atlantic Standard Time).**

**PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court (a) by attorneys practicing in the District Court, including attorneys admitted *pro hac vice*, electronically in accordance with Rule 5 of the Local Rules for the District of Puerto Rico (the "Local District Court Rules"), and (b) by all other parties in interest, on a CD-ROM, in textsearchable portable document format (PDF), to the extent applicable, and shall be served in accordance with the Tenth Amended Case Management Procedures, Dkt. No. 8027-1, so as to be so filed and received no later than **March 18, 2020 at 5:00 p.m. (Atlantic Standard Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the District Court may enter an order granting the relief sought without a hearing pursuant to the Tenth Amended Case Management Procedures, Dkt. No. 8027-1.

2

DATED: February 5, 2020

Respectfully submitted,

| REICHARD & ESCALERA | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
| By : */s/ Rafael Escalera*<br>**Rafael Escalera**<br>USDC No. 122609<br>escalera@reichardescalera.com<br><br>**Sylvia M. Arizmendi**<br>USDC-PR 210714<br>arizmendis@reichardescalera.com<br><br>**Carlos R. Rivera-Ortiz**<br>USDC-PR 303409<br>riverac@reichardescalera.com<br><br>255 Ponce de León Avenue<br>MCS Plaza, 10th Floor<br>San Juan, Puerto Rico 00917-1913 | **Susheel Kirpalani** (*pro hac vice*)<br>susheelkirpalani@quinnemanuel.com<br><br>**K. John Shaffer** (*pro hac vice*)<br>johnshaffer@quinnemanuel.com<br><br>**Daniel Salinas**<br>USDC-PR 224006<br>danielsalinas@quinnemanuel.com<br><br>**Matthew Scheck** (*pro hac vice*)<br>matthewscheck@quinnemanuel.com<br><br>**Eric Kay** (*pro hac vice*)<br>erickay@quinnemanuel.com<br><br>**Zachary Russell** (*pro hac vice*)<br>zacharyrussell@quinnemanuel.com<br><br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010-1603 |

*Co-Counsel for the Lawful Constitutional Debt Coalition*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico, et al.,<br><br>    Debtors.[2] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## OMNIBUS MOTION TO DISMISS OF THE LAWFUL CONSTITUTIONAL DEBT COALITION, PURSUANT TO BANKRUPTCY RULE 7012, OF CLAIM OBJECTIONS FILED OR ASSERTED BY THE FINANCIAL MANAGEMENT OVERSIGHT BOARD FOR PUERTO RICO AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

---

[2] The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Lawful Constitutional Debt Coalition (the "LCDC"),[3] hereby files this motion to dismiss (the "Motion to Dismiss") pursuant to Rule 7012 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to these Title III cases by section 310 of PROMESA, requesting entry of an order, substantially in the form attached hereto as **Exhibit A**, dismissing certain omnibus objections to claim that have been filed by Financial Oversight and Management Board, Acting Through Its Special Claims Committee (the "FOMB"), and/or the Official Committee of Unsecured Creditors (the "UCC") in the Commonwealth Title III case seeking to disallow claims based on certain general obligation bonds issued by the Commonwealth and certain bonds guaranteed by the Commonwealth.[4] In support of this Motion to Dismiss, the LCDC respectfully states as follows:

---

[3] The members of the LCDC and their respective holdings are set forth in the *Fourth Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure 2019* (Dkt. No. 9732).

[4] See Omnibus Objection of (I) Financial Oversight and Management Board, Acting Through Its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds (Dkt. No. 4784) (the "2012-2014 GO Bond Objection"); Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant To Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bonds (Dkt. No. 7057) (the "2011 GO Bond Objection"); Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of Certain Puerto Rico Public Buildings Authority Bonds (Dkt. No. 8141) (the "PBA Bond Objection"); Official Committee of Unsecured Creditors' Omnibus Objection on Constitutional Debt Limit Grounds to (I) Claim of Government Development Bank for Puerto Rico [Claim Number 29485] Based on Certain Commonwealth-Issued Notes and on Certain Commonwealth-Issued Notes and Commonwealth Guaranty of Certain Bond Issued by Port of Americas Authority, (II) Claim of ScotiaBank de Puerto Rico [Claim Number 47658] Based on Full Faith and Credit Note Issued by Puerto Rico General Service Administration, and (III) Claims Filed or Asserted Against Commonwealth Based on Commonwealth Guaranty of Certain Notes Issued by Puerto Rico Infrastructure Authority (Dkt. No. 9735) (the "Miscellaneous Debt Limit Claim Objection") (collectively, the "Claim Objections")).

**PRELIMINARY STATEMENT**

1. The Constitutional Debt Limit prohibits the Commonwealth of Puerto Rico (the "Commonwealth") from directly issuing bonds or guaranteeing bonds backed by its full faith, credit, and taxing power if the sum of (i) the amount of principal and interest due on the bonds proposed to be issued together with all similar "*direct obligations of the Commonwealth for money borrowed directly by the Commonwealth evidenced by bonds*" previously issued by the Commonwealth and still outstanding, payable in any fiscal year (the "First Prong"), plus (ii) any amounts *paid by the Commonwealth* in the fiscal year immediately preceding the then current fiscal year "*for principal and interest on account of any outstanding obligations evidenced by bonds or notes guaranteed by the Commonwealth*," (the "Second Prong"), exceeds 15 percent of the average annual revenues deposited into the Treasury of Puerto Rico over the two previous years.[5] In other words, the Constitutional Debt Limit applies both to direct obligations for bonds issued by the Commonwealth and to obligations for bonds guaranteed by the Commonwealth provided that the Commonwealth made debt service payments on account of such guaranteed obligations.

2. On January 8, 2020, the LCDC filed the *Omnibus Objection of the Lawful Constitutional Debt Coalition, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Bonds Issued or Guaranteed by the Commonwealth* (Dkt. No. 9730) (the "LCDC Claim Objection").[6] The FOMB and UCC Claim Objections assert that certain bonds issued or guaranteed by the Commonwealth breached the Constitutional Debt Limit. Some of the Claim Objections attack the same bonds that are the

---

[5] P.R. CONST. art. VI, § 2 (emphasis added).

[6] Capitalized terms not defined herein shall have the meanings ascribed to them in the LCDC Claim Objection.

2

subject of the LCDC Claim Objection.[7] Each of the Claim Objections, however, are based on mistaken interpretations of the Puerto Rico Constitution that render them legally flawed. *First*, all of the Claim Objections are based on the central theory that the bonds issued by the PBA and guaranteed by the Commonwealth ("PBA Bonds") constitute "direct objections of the Commonwealth" and should have been included in the First Prong of the Constitutional Debt Limit.[8] The LCDC respectfully submits, however, that such theory expands the First Prong beyond its plain meaning (*i.e.,* "direct obligations of the Commonwealth for money borrowed directly by the Commonwealth").[9] By definition, bonds issued by the PBA, an independent instrumentality of the Commonwealth, are neither "*direct* obligations of the Commonwealth nor money borrowed *directly* by the Commonwealth, under any meaning of the word "direct."

3. *Second*, the UCC asserts that certain general obligations bonds ("GO Bonds") were issued in violation of the Commonwealth Constitution's Balanced Budget Clause (as defined in 2012-2014 GO Bond Objection) because those bonds were issued for deficit financing.[10] The UCC interprets the Balanced Budget Clause's prohibition against a fiscal deficit in a given year as a prohibition against deficit financing.[11] But this reading is mistaken because it assumes that the

---

[7] The 2012-2014 GO Bond Objection objects to substantially the same GO bonds that are the subject of LCDC Claim Objection; the PBA Bond Objection objects to, *inter alia*, the 2012 PBA Bonds that are subject of LCDC Claim Objection; and the Miscellaneous Debt Limit Claim Objection objects to, *inter alia*, the same PRIFA BANS and Ports Bonds that are the subject of the LCDC Claim Objection.

[8] The Claim Objections assert that the PBA is a sham entity and the PBA Bonds should be considered direct obligations of the Commonwealth. *See* 2012-2014 GO Bond Objection ¶¶ 63-86; 2011 GO Bond Objection ¶ 27; PBA Bond Objection ¶ 19; Miscellaneous Debt Limit Claim Objection ¶ 26. For the reasons set forth in the LCDC Claim Objection, this argument fails.

[9] The LCDC also disagrees with Ambac Assurance Corporation's position that even though the PBA is a validly created separate instrumentality of the Commonwealth, the rental payments made by the Commonwealth to the PBA should be counted in the First Prong. *See Ambac Assurance Corporation's Statement of Position in Omnibus Objection to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* (Dkt. No. 6171) ¶¶ 5-11.

[10] 2012-2014 GO Bond Objection ¶¶ 91-98; 2011 GO Bond Objection ¶ 29.

[11] *Id.*

3

translated English version, rather than the original Spanish version, of the Balanced Budget Clause controls.

4. In an effort to streamline the claims objection and resolution process, the LCDC brings this Motion to Dismiss based upon a faithful reading of both prongs of the Constitutional Debt Limit and the intended meaning of the Balanced Budget Clause. The LCDC submits that the rental payments made by the Commonwealth to the PBA that were then used to pay debt service on bonds the Commonwealth guaranteed fall squarely within the Second Prong of the Constitutional Debt Limit because they were payments made on account of the Commonwealth's guarantee. With respect to the Balanced Budget Clause, the LCDC submits that the Spanish version is controlling, which allows issuance of bonds to finance a fiscal deficit, and, in any event, federal law allows deficit financing, and the UCC fails to explain how the issuance of GO Bonds caused any fiscal deficit in the first place.

5. Once the Commonwealth's debt service rental payments to PBA are accurately accounted for within the Second Prong of the Constitutional Debt Limit and the Balanced Budget Clause is properly construed, it is clear that the Commonwealth breached the Constitutional Debt Limit beginning on March 29, 2012, when it issued the series 2012 B GO Bonds followed by the 2012 A GO Bonds pursuant to a bond resolution adopted on March 7, 2012. While the LCDC objected to the some of the same bonds that are the subject of the FOMB's and UCC's Claim Objections, the LCDC moves to dismiss those Claim Objections because of their mistaken reading of the Constitutional Debt Limit and the Balanced Budget Clause.

## BACKGROUND

I. **THE CLAIM OBJECTIONS**

6. On January 14, 2019, the FOMB and the UCC filed the 2012-2014 GO Bond Objection. The 2012-2014 GO Bond Objection argues that debt service on PBA bonds should be

included as "direct obligations" of the Commonwealth in the First Prong of the Commonwealth's Constitutional Debt Limit because the PBA structure is a sham that merely serves as an intermediary between the Commonwealth and PBA bondholders. Accordingly, the FOMB and the UCC conclude that the Constitutional Debt Limit was exceeded in March 2012 and all GO bonds issued thereafter should be invalidated. In addition, the UCC asserts that some GO Bonds are invalid because they were issued in violation of the Commonwealth's constitutional Balanced Budget Clause, which, in the UCC's view, prohibits deficit financing.

7. On May 21, 2019, the UCC filed the 2011 GO Bond Objection, asserting that based on the interpretation of the Constitutional Debt Limit articulated in the 2012-2014 GO Bond Objection, approximately $1 billion of GO Bonds issued in 2011 also violated the Constitutional Debt Limit. In addition, the UCC argues that some of the 2011 GO Bonds were issued in violation of the Balanced Budget Clause.

8. On July 18, 2019, the UCC filed the PBA Bond Objection, seeking to disallow claims based on PBA Bonds issued after March 2011 based on the same theories advanced in the 2012-2014 GO Bond Objection and the 2011 GO Bond Objection.

## II. THE CLAIM OBJECTION LITIGATION SCHEDULE

9. Upon the FOMB and the UCC's *Urgent Motion Establishing Procedures with Respect to Omnibus Objection to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds and Requesting Related Relief* (Dkt. No. 4788) (the "Procedures Motion"), the Court entered the *Order Establishing Initial Procedures With Respect to the 2012-2014 GO Bond Objection* (Dkt. No. 5143) (the "Procedures Order"), which set forth comprehensive procedures with respect to the 2012-2014 GO Bond Objection. Among other things, the Procedures Order required holders of 2012-2014 GO Bonds that wished to participate

5

in the litigation of the 2012-2014 GO Bond Objection to submit a notice of participation by April 16, 2019.

10. On April 16, 2019 the LCDC filed its *Notice of Participation* (Dkt. No. 6179) and supporting *Statement of Position* (Dkt. No. 6180).

11. On July 24, 2019, the Court entered its *Order Regarding Stay Period and Mandatory Mediation* (Dkt. No. 8244) (the "Stay Order"), which stayed, among other things, all litigation concerning the 2012-2014 GO Bond Objection and the PBA Bond Objection. On October 28, 2019, the Court extended the stay until December 31, 2019.

12. On November 27, 2019, the Mediation Team appointed by the Court in these Title III Cases (the "Mediation Team") filed its *Interim Report and Recommendation of the Mediation Team* (Dkt. No. 9365) (the "Interim Report"). In connection with the Interim Report, the Court entered the *Interim Case Management Order* (Dkt. No. 9619) (the "Interim Order"). The Interim Order set forth an omnibus claim objections schedule whereby any additional omnibus claim objections disputing the validity of claims related to general obligation bonds issued by the Commonwealth, bonds guaranteed by the Commonwealth, or bonds issued by the PBA must be filed by January 8, 2020. On January 8, 2020, the UCC filed the Miscellaneous Debt Limit Claim Objection (Dkt. No. 9735) and the LCDC filed the LCDC Claim Objection. The Interim Order further sets February 5, 2020 as the deadline for the Identified Parties (as defined in the Interim Order) to file motion-to-dismiss Opening Brief(s).

13. The LCDC files this Motion to Dismiss in accordance with the Interim Order.[12]

---

[12] For the avoidance of doubt, the LCDC moves to dismiss the Claim Objections because of their legal flaws, despite having objected to some of the same bonds as the Claim Objections. *See supra* note 5.

6

**LEGAL STANDARD**

14. Pursuant to the Interim Order, Bankruptcy Rule 7012, which applies Rule 12 of the Federal Rules of Civil Procedure, is incorporated in the litigation of the Claim Objections. For purposes of a motion to dismiss under Bankruptcy Rule 7012, a claim objection is treated like a complaint in an adversary matter.[13] Questions of law are properly considered at the motion-to-dismiss stage.[14]

**ARGUMENT**

15. The Claim Objections should be dismissed because their conclusions are based on two incorrect legal theories. The Claim Objections seek to invalidate 2012-2014 GO Bonds, 2011 GO Bonds and certain PBA Bonds issued after March 2011 because (1) the issuance of those bonds exceeded the Constitutional Debt Limit when debt service on PBA Bonds is included as "direct obligations" in the First Prong of the Constitutional Debt Limit and (2) certain GO Bonds were issued in violation of the constitutional Balanced Budget Clause. These theories both fail. *First*, the PBA is a valid, independent legal entity, and debt service on PBA Bonds does not belong in the First Prong of the Constitutional Debt Limit because they are not "direct obligations" of the Commonwealth. However, debt service payments made by the Commonwealth to the PBA should be considered as payments on account of the Commonwealth's guarantee of the PBA Bonds and included in the Second Prong of the Constitutional Debt Limit. *Second*, the Balanced Budget Clause is not a valid basis to disallow any GO Bonds because the controlling Spanish version of

---

[13] *See In re Black, Davis & Shue Agency, Inc.*, 460 B.R. 407, 415–16 (Bankr. M.D. Pa. 2011).

[14] *United States v. Caceres-Prado*, 601 F. Supp. 468, 470 (D.P.R. 1984) ("If a motion to dismiss raises a question of law, rather than fact, then the motion would be properly considered."). *See also In re Mbazira*, 518 B.R. 11, 14 (Bankr. D. Mass. 2014) (ruling on a motion to dismiss that presents a pure question of law).

7

the Balanced Budget Clause does not prohibit deficit financing; in any event, any such prohibition would be superseded by federal law, and the UCC fails to explain how the issuance of GO Bonds caused the deficit in the first place.

### I. THE PBA IS NOT A SHAM ENTITY AND THE CLAIM OBJECTIONS RELY ON AN INCORRECT INTERPRETATION OF THE CONSTITUTIONAL DEBT LIMIT

16. As set forth in paragraphs 1-4, 18-22, and 39-44 of the LCDC Claim Objection, the PBA is not a sham entity, and the plain language of the Puerto Rico Constitution require that debt service rental payments made by the Commonwealth to the PBA be included in the Second Prong of the Constitutional Debt Limit as payments made on account of the Commonwealth guarantee.[15] Once the Constitutional Debt Limit is applied plainly as written, it is clear that the Constitutional Debt Limit was breached when the Commonwealth issued the 2012 A and 2012 B GO Bonds on April 3, 2012 and March 29, 2012, respectively. All GO and Commonwealth-guaranteed issuances that predate March 29, 2012 do not violate the Constitutional Debt Limit.

### II. THE BALANCED BUDGET CLAUSE IS NOT A VALID BASIS TO INVALIDATE CERTAIN GO BONDS

17. The Claim Objections assert that certain GO Bonds should be invalidated because they were issued in violation of Article VI, Section 7 of the Commonwealth Constitution (the "Balanced Budget Clause"). The Balanced Budget Clause states in English: "The appropriations made for any fiscal year shall not exceed the total revenues, including available surplus, estimated for said fiscal year unless the imposition of taxes sufficient to cover said appropriations is provided by law."[16] The Spanish version of the Balanced Budget Clause does not use the term "total revenues," but instead "*recursos totales*," meaning "total resources," which, as the UCC

---

[15] The LCDC hereby incorporates by reference the LCDC Claim Objection and all arguments and assertions set forth therein.

[16] P.R. CONST. art. VI, § 7.

8

concedes,[17] was meant to include, among other things beyond tax revenues, the "issuance of bonds" (translated from Spanish). However, the UCC argues that the English version of the Commonwealth Constitution controls because that is the version that Congress approved.[18] It argues that since borrowed funds are not "revenues," the Balanced Budget Clause prohibits deficit financing (*i.e.*, borrowing money to cover ordinary operating expenses and debt service payments that the Commonwealth is unable to fund from its total revenues, including available surplus).[19]

There are several flaws with the UCC's reasoning. First, the UCC errs in arguing that the English version of the Puerto Rico Constitution, which translates "*recursos totales*" as "total revenues," controls. If there is any discrepancy between the original Spanish language debated at the constitutional convention and the English translation, the Spanish version should prevail. *See* P.R. LAWS ANN. tit. 31, § 13 ("In case of discrepancy between the English and Spanish texts of a statute passed by the Legislative Assembly of Puerto Rico, the text in which the same originated in either house, shall prevail in the construction of said statute…"). There is no rational basis for applying a different rule for the Puerto Rico Constitution than for its statutes.

The UCC argues that Public Law 600 of July 3, 1950 and Public Law 447 of July 3, 1952 adopted the English translation of the Puerto Rico Constitution as the controlling document.[20] However, the plain language of those Public Laws do not provide so. Public Law 600 merely authorized the "Legislature of the Puerto Rico … to call a constitutional convention to draft a constitution."[21] Public Law 447 also did not adopt the English translation, but rather approved

---

[17] 2012-2014 GO Bond Objection ¶ 95.

[18] *Id*. ¶¶ 97-98.

[19] *Id.* ¶¶ 17-19.

[20] *Id*. ¶ 96.

[21] Public Law 600, 64 Stat. 319, 48 U.S.C. § 731d (1950).

9

"the constitution of the Commonwealth … which was drafted by the selected delegates to the Constitutional Convention of Puerto Rico …."[22] The Constitutional Convention conducted its proceedings in Spanish and produced a Spanish-language draft of the Constitution. The Spanish version of the Constitution was voted on and approved first, with the English translation following. *See, e.g.*, Constitutional Assembly Diaries (originally recorded in Spanish).[23]

18.  *Second*, even if the Puerto Rico Constitution purported to prohibit debt financing (which it does not), such prohibition would be superseded by federal law. Section 38 of the Foraker Act[24] and Section 3 of the Jones Act[25] both granted the Commonwealth and its municipalities authority to issue bonds and other obligations not only when "necessary to anticipate taxes and revenues" but also "to protect the public credit." This authorization survives to this day in the Federal Relations Act (48 U.S.C. § 741).[26] These federal statutes authorized the Commonwealth to issue debt, anticipate taxes and revenues not yet available, and issue bonds to protect its public credit. Simply put, the Puerto Rico Constitution cannot be interpreted to prohibit issuance of debt that federal statutes allow.

---

[22]  Pub. L. No. 82-447, 66 Stat. 327-328 (1952).

[23]  *See* excerpts of certified English translation at Kirpalani Decl. Ex. 43 (Case No. 17-00257, Dkt. No. 309-44).

[24]  Act of April 12, 1900, ch. 191, 31 Stat. 77, Section 38, provides that: "where necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Porto Rico [*sic*] or any municipal government therein as may be provided by law to provide for expenditures authorized by law, and to protect the public credit, and to reimburse the United States for any moneys…."

[25]  Act of March 2, 1917, ch. 145, 39 Stat. 951, Section 3, provides that: "when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Porto Rico [*sic*] or any municipal government therein as may be provided by law, and to protect the public credit …."

[26]  The referenced provision of the Federal Relations Act provides that: "[W]hen necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Puerto Rico or any municipal government therein as may be provided by law, and to protect the public credit."

19. *Third*, even if the Balanced Budget Clause referred to "total revenues" rather than "total resources," as the UCC argues, the issuance of the GO Bonds does not in any way cause total revenues to be less than appropriations. The only thing prohibited by the Balanced Budget clause is for total appropriations to exceed total revenues in any particular year; the issuance of GO Bonds neither decrease total revenues nor increase appropriations. While the UCC describes how the GO Bonds were used to finance deficit spending, nothing in the Claim Objections identifies how or when the GO Bonds caused any budget unbalancing in the first place. Therefore, the UCC's Balanced Budget Clause argument fails.

## RESERVATION OF RIGHTS

20. The LCDC hereby reserves all rights with respect to other motions to dismiss the Claim Objections or any other objections, responses, joinders, or replies thereto, to the extent not inconsistent with the arguments herein.

## CONCLUSION

21. WHEREFORE, the LCDC respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

DATED: February 5, 2020

Respectfully submitted,

| REICHARD & ESCALERA | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
|---|---|
| By : */s/ Rafael Escalera*<br>**Rafael Escalera**<br>USDC No. 122609<br>escalera@reichardescalera.com<br><br>**Sylvia M. Arizmendi**<br>USDC-PR 210714<br>arizmendis@reichardescalera.com<br><br>**Carlos R. Rivera-Ortiz**<br>USDC-PR 303409<br>riverac@reichardescalera.com<br><br>255 Ponce de León Avenue<br>MCS Plaza, 10th Floor<br>San Juan, Puerto Rico 00917-1913 | **Susheel Kirpalani** (*pro hac vice*)<br>susheelkirpalani@quinnemanuel.com<br><br>**K. John Shaffer** (*pro hac vice*)<br>johnshaffer@quinnemanuel.com<br><br>**Daniel Salinas**<br>USDC-PR 224006<br>danielsalinas@quinnemanuel.com<br><br>**Matthew Scheck** (*pro hac vice*)<br>matthewscheck@quinnemanuel.com<br><br>**Eric Kay** (*pro hac vice*)<br>erickay@quinnemanuel.com<br><br>**Zachary Russell** (*pro hac vice*)<br>zacharyrussell@quinnemanuel.com<br><br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010-1603 |

*Co-Counsel for the Lawful Constitutional Debt Coalition*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

*/s/ Carlos R. Rivera-Ortiz*
USDC-PR 303409