# EXHIBIT 2

**COMMONWEALTH OF PUERTO RICO**

---

**BOND RESOLUTION**

Adopted March 7, 2012

---

Authorizing and Securing

$2,318,190,000
COMMONWEALTH OF PUERTO RICO
PUBLIC IMPROVEMENT REFUNDING BONDS, SERIES 2012 A

And

$415,270,000
COMMONWEALTH OF PUERTO RICO
PUBLIC IMPROVEMENT REFUNDING BONDS, SERIES 2012 B

**TABLE OF CONTENTS**

                                                                                              **Page**
Section 1.   Definitions...................................................................................................2
Section 2.   Interpretation. ...............................................................................................3
Section 3.   Authorization, Designation and Details of Refunding Bonds....................3
Section 4.   Redemption of Refunding Bonds.................................................................6
Section 5.   Notice of Redemption .................................................................................7
Section 6.   Partial Redemption......................................................................................8
Section 7.   Effect of Calling for Redemption................................................................8
Section 8.   Payment of Refunding Bonds ......................................................................9
Section 9.   Execution, Issuance, Form and Delivery of Refunding Bonds...................9
Section 10.  Concerning the Registrar; Acceptance of Duties ......................................10
Section 11.  Registrar Entitled to Indemnity..................................................................10
Section 12.  Registrar Not Liable for Failure of the Commonwealth to Act. ...............10
Section 13.  Compensation and Indemnification of Registrar. ......................................11
Section 14.  Registrar May Be Bondholder. ..................................................................11
Section 15.  Registrar Not Responsible for Recitals......................................................11
Section 16.  Certain Rights of Registrar. .......................................................................11
Section 17.  Exchange and Registration of Transfer of Refunding Bonds. ...................12
Section 18.  Ownership of Refunding Bonds..................................................................13
Section 19.  Pledge of Good Faith and Credit. ..............................................................13
Section 20.  Approval of Purchase Contract. .................................................................13
Section 21.  Award and Delivery of Refunding Bonds...................................................13
Section 22.  Deposit and Application of Moneys ...........................................................13
Section 23.  Application of Remainder of Refunding Bond Proceeds............................14
Section 24.  Appointment of Escrow Agent....................................................................14
Section 25.  Deposit and Application of Moneys in Escrow Fund. ................................14
Section 26.  Notification of Refunded Bondholders .......................................................14
Section 27.  Authorization to Act...................................................................................14
Section 28.  Approval of Escrow Deposit Agreements, Investments and Redemption Fund
             Agreement. ..................................................................................................15
Section 29.  Legal Opinion.............................................................................................15
Section 30.  Preliminary Official Statement. .................................................................16
Section 31.  Official Statement. ......................................................................................16
Section 32.  Continuing Disclosure................................................................................16
Section 33.  Amendments. ..............................................................................................19
Section 34.  Parties Interested Herein. ..........................................................................19
Section 35.  Tax Covenant. .............................................................................................19
Section 36.  Payments Due on Non-Business Day. ........................................................21
Section 37.  Bond Insurance...........................................................................................21
Section 38.  Severability of Invalid Provisions..............................................................25
Section 39.  Effectiveness. ............................................................................................S-1
Exhibit A - The Refunded Bonds
Exhibit A-1 - The Refunding Bonds
Exhibit B - Forms of Refunding Bond
Exhibit C - Series A Purchase Contract
Exhibit D - Series B Purchase Contract
Exhibit E - Series A Preliminary Official Statement
Exhibit F - Series B Preliminary Official Statement
Exhibit G - Series A Official Statement
Exhibit H - Series B Official Statement
Exhibit I - Insurance Commitment

**A RESOLUTION PROVIDING FOR THE ISSUANCE OF
$2,318,190,000 COMMONWEALTH OF PUERTO RICO
PUBLIC IMPROVEMENT REFUNDING BONDS, SERIES
2012 A AND $415,270,000 COMMONWEALTH OF PUERTO
RICO PUBLIC IMPROVEMENT REFUNDING BONDS,
SERIES 2012 B IN CONNECTION WITH THE
REFINANCING OF CERTAIN OBLIGATIONS OF THE
COMMONWEALTH OF PUERTO RICO; APPROVING
PURCHASE CONTRACTS WITH THE UNDERWRITERS OF
SAID BONDS; AWARDING SAID BONDS TO THE
UNDERWRITERS THEREOF; APPOINTING AN ESCROW
AGENT FOR THE REFUNDED BONDS; APPROVING AN
ESCROW DEPOSIT AGREEMENT; AND DETERMINING
AND PROVIDING FOR CERTAIN OTHER MATTERS IN
CONNECTION THEREWITH.**

**WHEREAS,** by virtue of Act No. 33 of the Legislative Assembly of Puerto Rico, approved December 7, 1942, as amended (the "Act"), the Secretary of the Treasury of Puerto Rico (the "Secretary") is authorized to issue and sell at any one time or from time to time, with the approval of the Governor of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico"), refinancing bonds or notes of the Commonwealth for the purpose of refinancing any or all bond issues or certificates of indebtedness of the Commonwealth; and

**WHEREAS,** the Commonwealth has heretofore issued the public improvement bonds and the public improvement refunding bonds and notes set forth on **Exhibit A** hereto (collectively, the "Refunded Bonds"); and

**WHEREAS,** the Secretary has determined that it is desirable at this time to provide for the issuance of: (A) Two Billion Three Hundred Eighteen Million One Hundred Ninety Thousand Dollars ($2,318,190,000) total principal amount of refinancing bonds of the Commonwealth denominated the "Public Improvement Refunding Bonds, Series 2012 A" (the "Series A Bonds") pursuant to the Act to provide funds that shall be sufficient to (i) refund the Refunded Bonds identified in Part I of **Exhibit A** hereto, (ii) repay certain advances made by Government Development Bank for Puerto Rico ("Development Bank") to the Commonwealth under certain outstanding credit facilities, (iii) fund interest on a portion of the Series A Bonds through April 3, 2015; and (iv) pay termination fees due under a certain investment agreement and certain interest rate hedge agreements and other expenses related to the issuance and sale of the Series A Bonds; and (B) the issuance of Four Hundred Fifteen Million Two Hundred Seventy Thousand Dollars ($415,270,000) total principal amount of refinancing bonds of the Commonwealth denominated the "Public Improvement Refunding Bonds, Series 2012 B" (the "Series B Bonds," and collectively with the Series A Bonds, the "Refunding Bonds") pursuant to the Act to provide funds that shall be sufficient to (i) refund the Refunded Bonds identified in Part II of **Exhibit A** hereto, (ii) repay certain advances made by Development Bank to the Commonwealth under a certain outstanding credit facility, (iii) fund interest on the Series B Bonds through July 1, 2015; and (iv) pay a termination fee due under a certain investment agreement and other expenses related to the issuance and sale of the Series B Bonds; and

**WHEREAS,** the underwriters named in the Purchase Contracts (hereinafter mentioned) have agreed to purchase the Series A Bonds in an aggregate principal amount of $2,318,190,000, as described below, and the Series B Bonds in an aggregate principal amount of $415,270,000, as described below, on the terms and conditions contained in the Purchase Contract relating to the Series A Bonds (the "Series A Purchase Contract") and the Purchase Contract relating to the Series B Bonds (the "Series B Purchase Contract," and together with the Series A Purchase Contract, the "Purchase Contracts"), each dated March 7, 2012 and by and among the Commonwealth and the respective underwriters named therein;

**NOW THEREFORE, I, JESÚS F. MÉNDEZ RODRÍGUEZ**, Secretary of the Treasury of the Commonwealth of Puerto Rico, DO HEREBY RESOLVE AND DETERMINE as follows:

Section 1.    Definitions. Capitalized words and terms defined in this Section, unless a different meaning clearly appears from the context, for all purposes of this Resolution and any resolution supplemental hereto, shall have the respective meanings specified in this Section. Words defined in the preamble of this Resolution and not otherwise defined in this Section shall have the respective meanings given to such words in said preamble.  Capitalized words and terms which are not defined in this Section or in said preamble shall have the respective meanings specified in the applicable Purchase Contract, unless a different meaning clearly appears from the context.

"Amortization Requirement" as applied to any term bonds for any fiscal year, means the principal amount fixed or computed for such fiscal year as set forth in this Resolution for the retirement of such term bonds by purchase or redemption.

"Bondholder," "Holder," "Holder of Bonds" or "Owner" or any similar term, when used with reference to a Refunding Bond, means any person who shall be the registered owner thereof.

"Business Day" means a day when the banks located in The City of New York or the Municipality of San Juan, Puerto Rico are not required or authorized to remain closed and when the New York Stock Exchange is not closed.

"DTC" means The Depository Trust Company, New York, New York, a limited purpose trust company organized under the laws of the State of New York, in its capacity as securities repository for the Refunding Bonds, or any successor repository for any Refunding Bonds.

"Person" shall mean any individual, partnership, association, corporation, joint venture, joint-stock company, unincorporated organization or government or any agency or political subdivision thereof.

"Puerto Rican Federal Relations Act" means the Act of the Congress of the United States entitled: "An Act to provide a civil government for Puerto Rico, and for other purposes," approved March 2, 1917, as amended, as continued in effect by Public Law 600, approved July 3, 1950.

2

"Registrar" means Banco Popular de Puerto Rico, in the Municipality of San Juan, Puerto Rico.

"Resolution" means this resolution as the same may be supplemented from time to time as herein permitted.

Section 2.    Interpretation. Words of the masculine gender are deemed and construed to include correlative words of the feminine and neuter genders. "Person" shall mean any individual, partnership, association, corporation, joint venture, joint-stock company, unincorporated organization or government or any agency or political subdivision thereof. Words importing the singular number include the plural and vice versa.

(a)    The terms "herein", "hereunder", "hereby", "hereto", "hereof" and any similar terms refer to this Resolution; and the term "heretofore" means before, and the term "hereafter" means after the effective date of this Resolution.

(b)    Sections and subsections mentioned by number and letter only are the respective Sections and subsections of this Resolution so numbered or lettered.

(c)    Whenever any time of day or particular hour is specified herein, such time or hour shall be determined on the basis of Eastern Standard Time or Eastern Daylight Savings Time, whichever is then in effect in New York, New York.

Section 3.    Authorization, Designation and Details of Refunding Bonds.

(a)    For the purpose of providing funds to (i) refund the Refunded Bonds identified in Part I of **Exhibit A** hereto, (ii) repay certain advances made to the Commonwealth by Development Bank under certain credit facilities, (iii) fund interest on a portion of the Series A Bonds through April 3, 2015, and (iv) pay termination fees due under a certain investment agreement and certain interest rate hedge agreements and other expenses related to the issuance and sale of the Series A Bonds, there shall be issued at this time under the authority of the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth, including the Act, refinancing bonds of the Commonwealth in the aggregate principal amount of Two Billion Three Hundred Eighteen Million One Hundred Ninety Thousand Dollars ($2,318,190,000).

For the purpose of providing funds to (i) refund the Refunded Bonds identified in Part II of **Exhibit A** hereto, (ii) repay certain advances made to the Commonwealth by Development Bank under a certain credit facility, (iii) fund interest on the Series B Bonds through July 1, 2015, and (iv) pay a termination fee due under a certain investment agreement and other expenses related to the issuance and sale of the Series B Bonds, there shall be issued at this time under the authority of the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth, including the Act, refinancing bonds of the Commonwealth in the aggregate principal amount of Four Hundred Fifteen Million Two Hundred Seventy Thousand Dollars ($415,270,000).

(b)    The Series A Bonds shall be designated "Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2012 A," shall be issued as registered bonds without coupons in denominations of $5,000 or any multiple thereof, shall be numbered consecutively

3

from RA-1 upwards, shall be dated their date of delivery, shall mature on July 1, of the years and in the principal amounts and shall bear interest at the rate or rates per annum, all as set forth in Part I of **Exhibit A-1** hereto.

The following Series A Bonds shall be entitled to the benefits of a municipal bond insurance policy to be issued by Assured Guaranty Municipal Corp. (the "Bond Insurer"):

| Year of Maturity (July 1) | Principal Amount |
|---|---|
| 2022 | $ 20,000,000 |
| 2023 | 5,000,000 |
| 2024 | 5,000,000 |
| 2025 | 5,000,000 |
| 2027 | 11,250,000 |
| 2035 | 322,925,000 |

The Amortization Requirements for the Series A Bonds maturing on July 1 of the years 2035, 2037, 2039 and 2041 are as set forth below.

### Amortization Requirements for Insured Series A Bonds Maturing July 1, 2035

| Year (July 1) | Amortization Requirement |
|---|---|
| 2033 | $105,000,000 |
| 2034 | 107,925,000 |
| 2035* | 110,000,000 |

### Amortization Requirements for Series A Bonds Maturing July 1, 2037

| Year (July 1) | Amortization Requirement |
|---|---|
| 2034 | $80,620,000 |
| 2035 | 32,275,000 |
| 2036 | 71,030,000 |
| 2037* | 79,615,000 |

_____

* Maturity

4

**Amortization Requirements for Series A Bonds Maturing July 1, 2039**

| Year (July 1) | Amortization Requirement |
|---|---|
| 2038 | $223,505,000 |
| 2039* | 235,800,000 |

**Amortization Requirements for Series A Bonds Maturing July 1, 2041**

| Year (July 1) | Amortization Requirement |
|---|---|
| 2040 | $308,770,000 |
| 2041* | 324,205,000 |

---

* Maturity

(c)     The Series B Bonds shall be designated "Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2012 B," shall be issued as registered bonds without coupons in denominations of $5,000 or any multiple thereof, shall be numbered consecutively from RB-1 upwards, shall be dated their date of delivery, shall mature on July 1, of the years and in the principal amounts and shall bear interest at the rate or rates per annum, all as set forth in Part II of **Exhibit A-1** hereto.

There are no Amortization Requirements for the Series B Bonds maturing on July 1, 2033.

(d)     Interest on the Series A Bonds shall be payable commencing on January 1, 2013 and semi-annually thereafter on January 1 and July 1 in each year.  Interest on the Series B Bonds shall be payable commencing on May 1, 2012 and monthly thereafter on the first day of each month.  Each Refunding Bond shall bear interest from the interest payment date next preceding the date on which it is authenticated, unless authenticated on an interest payment date, in which case it shall bear interest from such interest payment date, or, unless authenticated prior to the first interest payment date, in which case it shall bear interest from its date; provided, however, that if at the time of authentication of any such Refunding Bond interest is in default, such Refunding Bond shall bear interest from the date to which interest shall have been paid or duly provided for.  Interest on the Refunding Bonds shall be computed on the basis of a 360-day year of twelve 30-day months.

(e)     Book-Entry Only Bonds.  The Refunding Bonds shall be initially issued through the book-entry system maintained by DTC, which will act as Securities Depository for the Refunding Bonds, and the Refunding Bonds will be initially registered in the name of DTC or its nominee.  Notwithstanding any other provisions of this Resolution to the contrary, so long as the Refunding Bonds are held in DTC's book-entry system and registered in the name of DTC or its nominee, all payments with respect to principal of and interest on the Refunding Bonds and all notices with respect to the Refunding Bonds shall be made and given, respectively, to DTC as provided in the Blanket Issuer Letter of Representations, dated May 4, 1995 (the "DTC

5

Agreement"), by and between the Commonwealth and DTC. If DTC discontinues providing its services as Securities Depository with respect to the Refunding Bonds, and the Commonwealth decides no longer to use the services of a Securities Depository, definitive Refunding Bonds will be executed, authenticated and delivered to the beneficial owners thereof. If the Commonwealth determines not to continue use of the system of book-entry transfers through DTC (or a successor Securities Depository) with respect to the Refunding Bonds, definitive Refunding Bonds will be executed, authenticated and delivered to the beneficial owners thereof.

Section 4.    Redemption of Refunding Bonds.  The Refunding Bonds are subject to redemption prior to maturity as follows:

(a)    Optional Redemption.

(i)    The Series A Bonds maturing on or prior to July 1, 2022 shall not be subject to redemption prior to their maturity. The Series A Bonds maturing after July 1, 2022 (other than certain Series A Bonds maturing on July 1, 2026, as described below) shall be subject to redemption prior to their maturity, at the option of the Secretary, from any moneys that may be available for that purpose, at any time on or after July 1, 2022, either in whole or in part (and if in part, in such order of maturity or amortization requirement within a maturity, as directed by the Secretary) at a redemption price equal to the principal amount of the Series A Bonds to be redeemed, without premium, together with accrued interest to the date fixed for redemption.

The Series A Bonds maturing on July 1, 2026, bearing interest a 5.5%, with an initial offering yield of 4.5% shall be subject to redemption prior to their maturity, at the option of the Secretary, from any moneys that may be available for that purpose, at any time on or after July 1, 2018, either in whole or in part at a redemption price equal to the principal amount of such Series A Bonds to be redeemed, without premium, together with accrued interest to the date fixed for redemption.

(ii)    The Series B Bonds maturing on or prior to July 1, 2016 shall not be subject to redemption prior to their maturity. The Series B Bonds maturing after July 1, 2016 (other than the Series B Bonds maturing on July 1, 2033) shall be subject to redemption prior to their maturity, at the option of the Secretary, from any moneys that may be available for that purpose, at any time on or after July 1, 2015, either in whole or in part (and if in part, in such order of maturity as directed by the Secretary) at a redemption price equal to the principal amount of the Series B Bonds to be redeemed, without premium, together with accrued interest to the date fixed for redemption.

The Series B Bonds maturing on July 1, 2033 shall be subject to redemption prior to their maturity, at the option of the Secretary, from any moneys that may be available for that purpose, at any time on or after July 1, 2022, either in whole or in part at a redemption price equal to the principal amount of such Series B Bonds to be redeemed, without premium, together with accrued interest to the date fixed for redemption.

(b)    Mandatory Redemption.  The Secretary shall, on or before July 1, 2033 in respect of the Series A Bonds, and on or before each July 1 thereafter in respect of each fiscal year for which there is an Amortization Requirement for any of the Series A Bonds, as set forth above,

apply to the retirement, by purchase or redemption, of Series A Bonds an amount at least equal to the Amortization Requirement for the Series A Bonds for the immediately preceding fiscal year.  If the Secretary elects to purchase any Series A Bonds, the Secretary shall endeavor to purchase such Series A Bonds or portions thereof secured hereby and then outstanding, whether or not such Series A Bonds or portions thereof shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, such price not to exceed the principal of such Series A Bonds.

The Secretary shall call for redemption on each July 1 on which Series A Bonds are subject to redemption in accordance with this paragraph (b), a principal amount of Series A Bonds equal to the aggregate principal amount of such Series A Bonds to be redeemed pursuant to the Amortization Requirements therefore, less the aggregate principal amount of such Series A Bonds, if any, purchased by the Secretary in accordance with this paragraph (b) since the preceding July 1.

If the principal amount of Series A Bonds so retired on or before July 1 of any year exceeds the Amortization Requirement for the Series A Bonds for such date, the Amortization Requirements for the Series A Bonds for any succeeding date or dates may, at the option of the Secretary, be decreased by the amount of such excess.

No such purchase shall be made by the Secretary within the period of forty-five (45) days immediately preceding any July 1 on which Series A Bonds are subject to call for redemption under the provisions of this paragraph (b), except from moneys other than the moneys set aside or deposited for the redemption of such Series A Bonds.

Section 5.     Notice of Redemption.  At least thirty (30) days prior to the date upon which any such redemption is to be made, a notice of such redemption, signed by the Registrar, designating the redemption date and the principal amount, redemption premium, if any, and accrued interest on the Refunding Bonds to be paid and, if less than all of the Refunding Bonds of a series then outstanding shall be called for redemption, the particular Refunding Bonds of such series or portions of such Refunding Bonds to be redeemed, shall be given by registered or certified mail, postage prepaid, return receipt requested to all registered owners of such Refunding Bonds or portions thereof to be redeemed, at their addresses as they appear on the Bond Register (hereinafter provided for), provided, that, if such Refunding Bonds are then held in DTC's book-entry system and registered in the name of DTC or its nominee, such notice shall be given by any means that may be acceptable to DTC.  Any defect in or the failure to give such notice to the owner of any Refunding Bond designated for redemption shall not affect the validity of the proceedings for the redemption of any other Refunding Bonds.  In case any Refunding Bond of a series is to be redeemed in part only, the notice of redemption which relates to such Refunding Bond shall state also that on or after the redemption date, upon presentation and surrender of such Refunding Bond at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico, a new Refunding Bond or Refunding Bonds of the same series and maturity, bearing interest at the same rate, of authorized denominations and in principal amount equal to the unredeemed portion of such Refunding Bond will be issued.  All Refunding Bonds so presented and surrendered shall be cancelled by the Registrar.

Any notice of optional redemption may state that the redemption is conditional and, if so, the notice shall state what the conditions are.  If at the time of giving a notice of redemption there

shall not have been deposited with the Registrar moneys sufficient to redeem the Refunding Bonds called for redemption, such notice may state that it is conditional upon the deposit of the redemption moneys with the Registrar not later than the opening of business on the redemption date, and such notice shall be of no effect unless such moneys are so deposited. Any notice of optional redemption may be rescinded by written notice given to the Registrar by the Secretary no later than two (2) Business Days prior to the date specified for redemption. The Registrar shall give notice of such rescission as soon thereafter as practicable in the same manner, and to the same persons, as notice of such redemption was given pursuant to this Resolution.

So long as DTC or its nominee is the Bondholder, the Secretary and the Registrar will recognize DTC or its nominee as the Bondholder for all purposes, including redemption notices. Conveyance of notices and other communications by DTC to its participants and to beneficial owners of the Refunding Bonds will be governed by arrangements among them, subject to any statutory and regulatory requirements as may be in effect from time to time.

Section 6.    Partial Redemption. If less than all of the Refunding Bonds of a maturity within a series shall be called for redemption, the particular Refunding Bonds of such series and maturity to be redeemed shall be selected by the Registrar by such method as it shall deem fair and appropriate; provided, however, that the portion of any Refunding Bond to be redeemed shall be in the principal amount of $5,000 or a multiple thereof, and that, in selecting Refunding Bonds for redemption, the Registrar shall treat each Refunding Bond as representing that number of Refunding Bonds which is obtained by dividing the principal amount of such Bond by $5,000.

In case part but not all of an outstanding Refunding Bond of a maturity within a series shall be selected for redemption, the registered owner thereof or such owner's attorney or legal representative shall present and surrender such Refunding Bond for payment of the principal amount thereof so called for redemption at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico. Thereupon, the Commonwealth shall execute in the manner provided in Section 9 of this Resolution and the Registrar shall authenticate and deliver to or upon the order of such registered owner or such owner's legal representative, without charge therefor, for the unredeemed portion of the Refunding Bond so surrendered, a Refunding Bond or Bonds, at the option of such registered owner or such owner's attorney or legal representative, of the same series and maturity, bearing interest at the same rate, of authorized denominations and in principal amount equal to the unredeemed portion of such Refunding Bond so surrendered.

Section 7.    Effect of Calling for Redemption. Notice having been given in the manner and under the conditions hereinabove provided, the Refunding Bonds or portions of Refunding Bonds so called for redemption shall, on the redemption date designated in such notice, become and be due and payable at the principal amount, redemption premium, if any, and accrued interest provided for redemption of such Refunding Bonds on such date. On the date so designated for redemption, notice having been given and moneys for payment of the principal of and the redemption premium, if any, and accrued interest on the Refunding Bonds so called for redemption being held by the Registrar, interest on the Refunding Bonds or portions of Refunding Bonds so called for redemption shall cease to accrue. Refunding Bonds or portions of Refunding Bonds which have been duly called for redemption under the provisions of this Resolution, or with respect to which irrevocable instructions to call for redemption or to pay at or prior to maturity have been given to the Registrar in form satisfactory to it, and for the payment

8

of the principal of and the redemption premium, if any, and the accrued interest on which, sufficient available moneys, or investments permitted by law which investments shall not contain provisions permitting redemption thereof at the option of the issuer, the principal of and interest on which when due, and without any reinvestment thereof, will provide sufficient moneys, shall be held in trust for the owners of the Refunding Bonds or portions thereof to be paid or redeemed, shall not be deemed to be outstanding under this Resolution, and the registered owners thereof shall have no rights in respect thereof except to receive payment of the principal of and the redemption premium, if any, and the accrued interest on such Refunding Bonds or portions thereof and in the case of a Refunding Bond to be redeemed in part only, to receive a Refunding Bond for any unredeemed portion thereof as herein provided.

Section 8.    Payment of Refunding Bonds.    The principal or maturity of each Refunding Bond is payable only to the registered owner or its registered assigns at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico, upon the presentation and surrender of such Refunding Bond, in any coin or currency of the United States of America which, at the date of payment thereof, is legal tender for the payment of public and private debts. Payment of the interest on any Refunding Bond shall be made to the person appearing on the registration books of the Commonwealth hereinafter mentioned as the registered owner thereof (or the previous Refunding Bond or Bonds evidencing the same debt as that evidenced by such Refunding Bond) at the close of business on the record rate for such interest, which, in the case of the Series A Bonds, shall be the June 15 or December 15 (whether or not a Business Day) next preceding the applicable interest payment date in respect of the Series A Bonds, and in the case of the Series B Bonds, shall be the 15th day of the month next preceding the applicable interest payment date in respect of the Series B Bonds.  Such interest shall be paid in like coin or currency by check mailed to such person at his address as it appears on such registration books, all as provided in this Resolution.

Section 9.    Execution, Issuance, Form and Delivery of Refunding Bonds.    The Refunding Bonds authorized by this Resolution shall bear the facsimile signatures of the Governor of Puerto Rico and the Secretary, and a facsimile of the official seal of the Commonwealth shall be imprinted upon each of the Refunding Bonds and attested by the facsimile signature of the Secretary of State of Puerto Rico.

Subject to provisions of Section 6 of Act No. 20 of the Legislative Assembly of Puerto Rico, approved May 22, 1956, in case any officer of the Commonwealth whose signature or whose facsimile signature shall appear on any Refunding Bonds shall cease to be such officer before the delivery of such Refunding Bonds, such signature or such facsimile shall nevertheless be valid and sufficient for all purposes the same as if he had remained in office until such delivery, and also any Refunding Bond may be executed by such persons as at the actual time of the execution of such Refunding Bond shall be the proper officers to sign such Refunding Bond although at the date of such Refunding Bond such persons may not have been such officers.

The Refunding Bonds shall be executed substantially in the forms and manner set forth in **Exhibit B** hereto and delivered to the Registrar for authentication.

When the Refunding Bonds shall have been executed and authenticated as required by this Resolution, the Registrar shall deliver the Refunding Bonds as directed by the Secretary but only upon receipt of written notice from the Secretary of receipt of the purchase price of the

Refunding Bonds. The Registrar shall be entitled to rely conclusively upon such notice as to the amount of such purchase price.

The Secretary shall apply the proceeds received from the sale of the Refunding Bonds in accordance with the provisions of Sections 22 and 23 hereof.

No Refunding Bond shall be entitled to any benefit under this Resolution or be valid or become obligatory for any purpose, unless there appears on such Refunding Bond a certificate of authentication substantially in the forms provided in **Exhibit B** hereto, executed by the Registrar, and such executed certificate upon any Refunding Bond shall be conclusive evidence that such Refunding Bond has been duly authenticated and delivered hereunder. The Registrar's certificate of authentication on any Refunding Bond shall be deemed to have been duly executed if signed by an authorized officer of the Registrar, but it shall not be necessary that the same officer sign the certificate of authentication on all of the Refunding Bonds that may be issued hereunder at any one time.

Section 10.    Concerning the Registrar; Acceptance of Duties. Banco Popular de Puerto Rico, in the Municipality of San Juan, Puerto Rico, is hereby appointed as Registrar under this Resolution. Prior to the issuance of the Refunding Bonds under the provisions of this Resolution, the Secretary shall obtain from a duly authorized officer of said bank a written acceptance of the duties, obligations and trusts imposed upon said bank by this Resolution.

The Registrar undertakes to perform such duties and only such duties as are specifically set forth in this Resolution, and no implied covenants or obligations shall be read into this Resolution against the Registrar.

Section 11.    Registrar Entitled to Indemnity. The Registrar shall be under no obligation to do anything in its judgment proper to be done by it as such Registrar without indemnity, and in such case the Commonwealth shall reimburse the Registrar for all reasonable costs and expenses, outlays and counsel fees and other reasonable disbursements properly incurred in connection therewith.

Section 12.    Registrar Not Liable for Failure of the Commonwealth to Act. The Registrar shall not be liable or responsible because of the failure of the Commonwealth or of any of its employees or agents to make any collections or deposits or to perform any act herein required of the Commonwealth or because of the loss of any moneys arising through the insolvency or the act or default or omission of any other depositary in which such moneys shall have been deposited under the provisions of this Resolution. The Registrar shall not be responsible for the application of any moneys deposited with it and paid out, withdrawn or transferred hereunder if such application, payment, withdrawal or transfer shall be made in accordance with the provisions of this Resolution. The immunities and exemptions from liability of the Registrar hereunder shall extend to its directors, officers, employees and agents.

None of the provisions of this Resolution shall be construed to relieve the Registrar from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

(a)      the Registrar shall not be liable for any error of judgment made in good faith by any one of its officers, unless it shall be established that the Registrar was negligent in ascertaining the pertinent facts;

(b)      no provision of this Resolution shall require the Registrar to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it; and

(c)      this paragraph shall not be construed to limit the effect of Sections 11 and 13 hereof.

Section 13.     <u>Compensation and Indemnification of Registrar.</u> The Commonwealth shall pay to the Registrar compensation as agreed upon between the Registrar and the Commonwealth for all services performed by it hereunder (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust) and also all its reasonable expenses, disbursements and advances and those of its attorneys, agents and employees incurred in and about the administration and execution of the trusts hereby created and the performance of its powers and duties hereunder, and, subject to the provisions of Section 12 hereof, the Commonwealth shall indemnify and save the Registrar harmless against any loss, liability or expenses which it may incur without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of the trusts hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise and performance of its powers and duties hereunder.

Section 14.     <u>Registrar May Be Bondholder.</u> The Registrar, and its directors, officers, employees or agents, may buy, sell, own, hold and deal in any of the Refunding Bonds, may engage, as principal or agent, or be interested, in any financial or other transaction with the Commonwealth, may maintain any and all other general banking and business relations with the Commonwealth with like effect and in the same manner as if the Registrar were not Registrar under this Resolution, and may act as depositary, trustee or agent for any committee or body of holders of the Refunding Bonds issued under and secured by this Resolution or other obligations of the Commonwealth with like effect and in the same manner as if the Registrar were not Registrar under this Resolution; and no implied covenant shall be read into this Resolution against the Registrar in respect of such matters.

Section 15.     <u>Registrar Not Responsible for Recitals.</u> The recitals contained herein and in the Refunding Bonds, except the certificate of authentication endorsed thereon, shall be taken as the statements of the Commonwealth, and the Registrar assumes no responsibility for their correctness.  The Registrar makes no representations as to the validity or sufficiency of this Resolution or of the Refunding Bonds.

Section 16.     <u>Certain Rights of Registrar.</u> The Registrar may rely and shall be protected in acting or refraining from acting upon any resolution, order, notice, request, direction, consent, waiver, certificate, statement, instrument, requisition, bond or other paper or document believed by it to be genuine and to have been adopted or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of this Resolution, or upon the

11

written advice of any attorney, accountant or other expert believed by the Registrar to be qualified in relation to the subject matter, and the Registrar shall be under no duty to make any investigation or inquiry as to any statements contained or matters referred to in any such document.  Except as expressly provided herein, the Registrar shall not be under any obligation to see to the recording or filing of this Resolution or any other document or otherwise to the giving to any person of notice of the provisions hereof or thereof.

The Registrar may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys, and the Registrar shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

Section 17.   Exchange and Registration of Transfer of Refunding Bonds. The Commonwealth shall cause books (collectively, the "Bond Register") for the exchange and for the registration of transfers of each series of Refunding Bonds as provided in this Resolution to be kept at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico.

Refunding Bonds, upon surrender thereof to the Registrar, together with an assignment duly executed by the registered owner or such owner's attorney or legal representative in such form as shall be satisfactory to the Registrar, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of Refunding Bonds of the same series and maturity, of any denomination or denominations authorized by this Resolution, and bearing interest at the same rate.

The transfer of any Refunding Bond may be registered upon the Bond Register only upon surrender thereof to the Registrar together with an assignment duly executed by the registered owner or such owner's attorney or legal representative in such form as shall be satisfactory to the Registrar.  Upon any such registration of transfer the Commonwealth shall execute in the manner provided by Section 9 of this Resolution and the Registrar shall authenticate and deliver in exchange for such Refunding Bond a new Refunding Bond or Bonds registered in the name of the transferee or transferees, of any denomination or denominations authorized by this Resolution, in an aggregate principal amount equal to the principal amount of such Refunding Bond, of the same series and maturity and bearing interest at the same rate.

In all cases in which Refunding Bonds shall be exchanged or the transfer of Refunding Bonds shall be registered hereunder, the Commonwealth shall execute in the manner provided by Section 9 of this Resolution and the Registrar shall authenticate and deliver at the earliest practicable time Refunding Bonds in accordance with the provisions of this Resolution.  All Refunding Bonds surrendered in any such exchange or registration of transfer shall forthwith be cancelled by the Registrar.  The Registrar may make a charge for every such exchange or registration of transfer of Refunding Bonds sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer, but no other charge shall be made to any Bondholder for the privilege of exchanging or registering the transfer of Refunding Bonds under the provisions of this Resolution.  The Registrar shall not be required to make any such exchange or registration of transfer of Refunding Bonds during the fifteen (15) days immediately preceding the date of mailing of notice of redemption, or after such Refunding Bond or any portion thereof has been selected for redemption.

Section 18.    Ownership of Refunding Bonds.  As to any Refunding Bond, the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes and payment of or on account of the principal of or interest on any such Refunding Bond shall be made only to or upon the order of the registered owner thereof or such owner's registered assigns or legal representative, and neither the Commonwealth nor the Registrar shall be affected by any notice to the contrary.

Section 19.    Pledge of Good Faith and Credit.  The good faith, credit and taxing power of the Commonwealth are irrevocably pledged for the prompt payment of the principal of and the interest on the Refunding Bonds authorized by this Resolution.  The Secretary is authorized and directed to pay the principal of and the premium, if any, and the interest on the Refunding Bonds as the same shall fall due from any funds in the Treasury of the Commonwealth available for such purpose in the fiscal year for which said payment is required.  Such funds in the Treasury of the Commonwealth available for such purpose shall be deposited by the Secretary in trust with the Registrar in the amounts required for payment of the interest on any Refunding Bonds by the Registrar on any interest payment date and the principal of and premium, if any, on any Refunding Bonds by the Registrar on any principal payment date.

Section 20.    Approval of Purchase Contract.  The form of the Series A Purchase Contract presented to me this day and attached hereto as **Exhibit C** is hereby approved.  The form of the Series B Purchase Contract presented to me this day and attached hereto as **Exhibit D** is hereby approved.  The Purchase Contracts shall be executed and delivered by me with such appropriate changes as I may approve, such execution and delivery to be conclusive evidence of my approval of such changes.

Section 21.    Award and Delivery of Refunding Bonds.  The offer submitted by Barclays Capital Inc., as the representative of the underwriters named in the Series A Purchase Contract, presented to me on the date hereof offering to purchase the Series A Bonds at a purchase price equal to $2,299,205,037.11 (representing the par amount of the Series A Bonds ($2,318,190,000.00), less net original issue discount of $4,261,946.70, less underwriter's discount of $14,723,016.19) without accrued interest, is hereby accepted, and the Series A Bonds are hereby awarded to said underwriters (which underwriters have been recommended by the management of and approved by the Board of Directors of Development Bank) (the "Series A Underwriters"), subject to the terms and conditions of the Series A Purchase Contract.

The offer submitted by UBS Financial Services Incorporated of Puerto Rico, as the representative of the underwriters named in the Series B Purchase Contract, presented to me on the date hereof offering to purchase the Series B Bonds at a purchase price equal to $412,621,363.25 (representing the par amount of the Series B Bonds ($415,270,000.00), less original issue discount of $315,023.50, less underwriter's discount of $2,333,613.25) without accrued interest, is hereby accepted, and the Series B Bonds are hereby awarded to said underwriters (which underwriters have been recommended by the management of and approved by the Board of Directors of Development Bank) (the "Series B Underwriters"), subject to the terms and conditions of the Series B Purchase Contract.

Section 22.    Deposit and Application of Moneys.  The proceeds of the sale of the Series A Bonds and of the Series B Bonds shall be applied as set forth in the certificates of the

Secretary filed on or before the respective dates of delivery of the Series A Bonds and the Series B Bonds with the Registrar.

Section 23.   Application of Remainder of Refunding Bond Proceeds.  The remainder of the proceeds from the sale of the Series A Bonds and the Series B Bonds not applied as specified in Section 22 above, shall be applied to the payment of the expenses related to the issuance and sale of the respective series of Refunding Bonds, as may be set forth in one or more certificates signed by the Secretary and filed with the Registrar upon or after the issuance of applicable series of Refunding Bonds, except that moneys received as accrued interest on the Refunding Bonds, if any, shall be deposited in the Commonwealth Debt Redemption Fund (formerly, the Special Fund for the Amortization and Redemption of General Obligations Evidenced by Bonds and Promissory Notes).

Section 24.   Appointment of Escrow Agent.

Banco Popular de Puerto Rico, San Juan, Puerto Rico is appointed as Escrow Agent under the terms of the Escrow Deposit Agreements, hereinafter mentioned.

Section 25.   Deposit and Application of Moneys in Escrow Fund.

Proceeds of the sale of the Series A Bonds and of the Series B Bonds in the amounts set forth in the applicable Escrow Deposit Agreement shall be transferred to the Escrow Agent on the respective dates of delivery of the Series A Bonds and the Series B Bonds for deposit to the credit of the Escrow Fund (as defined in the applicable Escrow Deposit Agreement).   Such proceeds shall be applied as provided in the applicable Escrow Deposit Agreement.

Section 26.   Notification of Refunded Bondholders.  The Secretary shall notify the owners of the Refunded Bonds to be redeemed or cause such owners to be notified and to take all other steps necessary for said redemption, as provided in and in accordance with the applicable provisions of the Refunded Bonds authorizing resolutions.

Section 27.   Authorization to Act.  The Secretary, the Registrar, and the officers and agents of the Commonwealth, the Registrar, and Development Bank, in its capacity as Fiscal Agent for the Commonwealth, are hereby authorized and directed to do all acts and things required of or deemed advisable by them, including, without limitation, the execution and delivery of any other agreements, instruments and certificates (including the execution of confirmations and amendments with respect to the termination of investment agreements and interest rate hedge agreements by the Secretary and any officers of Development Bank designated by the Secretary), required or deemed advisable for the full, punctual and complete performance of all the terms, covenants, provisions and agreements contained in the Refunding Bonds, the Refunded Bonds, this Resolution, the resolutions authorizing the issuance of the Refunded Bonds (the "Refunded Bond Resolutions"), and any other documents executed and delivered in connection therewith.

Section 28.     Approval of Escrow Deposit Agreements, Investments and Redemption Fund Agreement.

(a)     The execution and delivery by me or the President or any Executive Vice President of Development Bank, as agent of the Commonwealth, of an escrow deposit agreements by and between the Commonwealth and the Escrow Agent with respect to the Series A Bonds and with respect to the Series B Bonds are hereby authorized, and said escrow deposit agreements (the "Escrow Deposit Agreements") shall be in form and substance acceptable to the person executing the same, his or her execution of an Escrow Deposit Agreement to be conclusive evidence of any such approval.

(b)     The execution and delivery in the name and on behalf of the Commonwealth by the President or any Executive Vice President of Development Bank of the subscription forms relating to United States Treasury Time Deposit Securities-State and Local Government Series ("SLGS") are hereby authorized, requested and approved. The officers, agents and employees of Development Bank, the Escrow Agent and J.P. Morgan Securities LLC, are hereby authorized and directed to execute and deliver, in the name and on behalf of the Commonwealth, to the Division of Special Investments of the Bureau of the Public Debt of the United States Treasury Department such subscription forms as may be necessary to purchase timely any SLGS listed in a written direction from the Commonwealth, as may be required to be deposited to the credit of the Escrow Funds established pursuant to the Escrow Deposit Agreements for the Series A Bonds and the Series B Bonds to effect the refunding of the Refunded Bonds in accordance with the provisions of this Resolution, the Refunded Bonds Resolutions, or for any other purpose, including to enable the Commonwealth to comply with its covenant in Section 35 of this Resolution.

(c)     The execution and delivery by me or the President or any Executive Vice President of Development Bank, as agent of the Commonwealth, of an Redemption Fund Agreement by and among the Commonwealth, Development Bank and Barclays Bank PLC with respect to the investment of the monthly principal and interest deposits required with respect to the Commonwealth's general obligation bonds are hereby authorized, and said Redemption Fund Agreement (the "Redemption Fund Agreement") shall be in form and substance acceptable to the person executing the same, his or her execution of the Redemption Fund Agreement to be conclusive evidence of any such approval.

Section 29.     Legal Opinion. In the event either the Series A Bonds or the Series B Bonds are no longer registered in the name of a Securities Depository or its nominee, there shall be printed on the reverse of each Refunding Bond the legal opinion of Greenberg Traurig, LLP, Bond Counsel to the Commonwealth, with respect to the validity of such Refunding Bonds, and immediately following such legal opinion a certificate signed with the facsimile signature of the Secretary of State of Puerto Rico substantially as follows:

"I HEREBY CERTIFY that the foregoing is a true and correct copy of the legal opinion upon the bonds therein described which was manually signed by Greenberg Traurig, LLP, Boston, Massachusetts, and was dated the date of delivery of and payment for said bonds.

[Facsimile signature]

15

Secretary of State of Puerto Rico".

Section 30.    Preliminary Official Statement. The Preliminary Official Statement, dated February 28, 2012, of the Commonwealth in connection with the issuance of the Series A Bonds (the "Series A Preliminary Official Statement") in the form presented to me this day and attached hereto as **Exhibit E**, is hereby approved and the distribution and use of the Series A Preliminary Official Statement by the Series A Underwriters in connection with the offering of the Series A Bonds is hereby in all respects ratified, confirmed and approved.

The Preliminary Official Statement, dated February 28, 2012, of the Commonwealth in connection with the issuance of the Series B Bonds (the "Series B Preliminary Official Statement") in the form presented to me this day and attached hereto as **Exhibit F**, is hereby approved and the distribution and use of the Series B Preliminary Official Statement by the Series B Underwriters in connection with the offering of the Series B Bonds is hereby in all respects ratified, confirmed and approved.

Section 31.    Official Statement. The Official Statement, dated March 7, 2012, of the Commonwealth in connection with the issuance of the Series A Bonds (the "Series A Official Statement"), in the form presented to me or to the President or any Executive Vice President of Development Bank acting as my agent, on the date of the adoption of this Resolution and attached hereto as **Exhibit G**, is hereby approved with such appropriate changes, insertions and omissions as may be approved by me as evidenced by my signing the Series A Official Statement, and the Series A Underwriters are hereby authorized to distribute the Series A Official Statement in connection with the offering and sale of the Series A Bonds.

The Official Statement, dated March 7, 2012, of the Commonwealth in connection with the issuance of the Series B Bonds (the "Series B Official Statement," and together with the Series A Official Statement, the "Official Statement"), in the form presented to me or to the President or any Executive Vice President of Development Bank acting as my agent, on the date of the adoption of this Resolution and attached hereto as **Exhibit H**, is hereby approved with such appropriate changes, insertions and omissions as may be approved by me as evidenced by my signing the Series B Official Statement, and the Series B Underwriters are hereby authorized to distribute the Series B Official Statement in connection with the offering and sale of the Series B Bonds.

Section 32.    Continuing Disclosure.

(a)    In accordance with the requirements of Rule 15c2-12, as amended (the "Rule"), promulgated by the Securities and Exchange Commission (the "Commission"), the Commonwealth hereby covenants for the benefit of the persons who from time to time are the owners of the Series A Bonds for federal income tax purposes and the owners of the Series B Bonds for Puerto Rico income tax purposes (collectively, the "beneficial owners"):

(i)    to file, within 305 days after the end of each fiscal year, commencing with the fiscal year ending June 30, 2011, with the Municipal Securities Rulemaking Board (the "MSRB") through its Electronic Municipal Market Access system ("EMMA"), core financial information and operating data for the prior fiscal year, including (i) the Commonwealth's audited financial

16

statements, prepared in accordance with generally accepted accounting principles in effect from time to time, and (ii) material historical quantitative data (including financial information and operating data) on the Commonwealth and revenues, expenditures, financial operations and indebtedness generally found in the Official Statement; and

(ii)     to file, in a timely manner, not in excess of 10 business days after the occurrence of the event, with the MSRB through EMMA, notice of the occurrence of any of the following events with respect to the Series A Bonds or the Series B Bonds, as applicable:

(A)     principal and interest payment delinquencies;

(B)     non-payment related defaults, if material;

(C)     unscheduled draws on debt service reserves reflecting financial difficulties;

(D)     unscheduled draws on credit enhancements reflecting financial difficulties;

(E)     substitution of credit or liquidity providers, or their failure to perform;

(F)     adverse tax opinions, the issuance by the IRS of proposed or final determinations of taxability, Notices of Proposed Issue (IRS Form 5701-TEB) or other material notices or determinations with respect to the tax status of the Refunding Bonds, or other material events affecting the tax status of the Refunding Bonds;

(G)     modifications to rights of the holders (including beneficial owners) of the Rending Bonds, if material;

(H)     bond calls, if material;

(I)     defeasances;

(J)     release, substitution, or sale of property securing repayment of the Refunding Bonds, if material;

(K)     rating changes;

(L)     tender offers;

(M)     bankruptcy, insolvency, receivership, or similar proceeding of the Commonwealth;

(N)     the consummation of a merger, consolidation or acquisition involving the Commonwealth or the sale of substantially all of the assets of the

Commonwealth, other than in the ordinary course of business, the entry into a definitive agreement to undertake such action or the termination of a definitive agreement relating to any such actions, other than pursuant to its terms, if material; and

(O) the appointment of a successor or additional trustee, or the change of name of a trustee, if material.

The Commonwealth does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Refunding Bonds, unless the Commonwealth applies for or participates in obtaining the enhancement.

The Commonwealth does not undertake to provide the above-described event notice of a mandatory scheduled redemption, not otherwise contingent upon the occurrence of an event, if the terms, dates and amounts of redemption are set forth in detail in the applicable Official Statement, the only open issue is which Refunding Bonds will be redeemed in the case of a redemption of less than all of the Refunding Bonds of the applicable series, or of a maturity within the applicable series, and notice of redemption is given in accordance with the terms of this Resolution and the applicable Refunding Bonds being redeemed.

The Commonwealth may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the Commonwealth, such other events are material with respect to the Refunding Bonds, but the Commonwealth does not undertake to provide any such notice of the occurrence of any material event except those events listed above.

The Commonwealth acknowledges that its undertaking pursuant to the Rule is intended to be for the benefit of the beneficial owners of the Refunding Bonds, and shall be enforceable by any such beneficial owners, provided that the right to enforce the provisions of its undertaking shall be limited to a right to obtain specific performance of the Commonwealth's obligations hereunder.

(b) No beneficial owner may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of the foregoing covenant (the "Covenant") or for any remedy for breach thereof, unless such beneficial owner shall have filed with the Commonwealth written notice of any request to cure such breach, and the Commonwealth shall have refused to comply within a reasonable time. All Proceedings shall be instituted only in a Commonwealth court located in the Municipality of San Juan for the equal benefit of all beneficial owners of the outstanding Refunding Bonds benefited by the Covenant, and no remedy shall be sought or granted other than specific performance of the Covenant at issue.

(c) Notwithstanding the provisions of Section 33 hereof, the Covenant may only be amended if:

(i) the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the Commonwealth, or type of business conducted; the Covenant, as amended, would have complied with the

18

requirements of the Rule at the time of award of the Refunding Bonds, after taking into account any amendments or change in circumstances; and the amendment does not materially impair the interest of beneficial owners, as determined by parties unaffiliated with the Commonwealth; or

(ii)     all or any part of the Rule, as interpreted by the staff of the Commission at the date of the adoption of such Rule, ceases to be in effect for any reason, and the Commonwealth elects that the Covenant shall be deemed amended accordingly.

The Commonwealth further agrees in conjunction with any such amendment that the annual financial information containing the amended operating data or financial information will explain, in narrative form, the reasons for the amendment and the impact of the change in the type of operating data or financial information being provided.

(d)     Any assertion of beneficial ownership must be filed, with full documentary support, as part of the written request described above.

Section 33.     Amendments. Subject to the limitations contained in Section 32 hereof, without the consent of any Bondholders, the Secretary, with the approval of the Governor of Puerto Rico, may, from time to time and at any time, adopt such resolutions supplemental hereto as shall not be inconsistent with the terms and provisions hereof (which supplemental resolutions shall thereafter form a part hereof):

(a)     to cure any ambiguity or formal defect or omission to correct or supplement any provision herein which may be inconsistent with any other provision herein or to make any other provisions with respect to matters or questions arising under this Resolution which may not be inconsistent with the provisions of this Resolution, provided such action shall not adversely affect the interests of the holders of the Refunding Bonds, or to correct any inconsistent provisions or errors in this Resolution; or

(b)     to modify, amend or supplement this Resolution or any supplement or amendment hereto in such manner as to permit the Refunding Bonds to be rated by any nationally recognized securities rating service.

Section 34.     Parties Interested Herein. Except as otherwise expressly provided in this Resolution, nothing in this Resolution expressed or implied is intended or shall be construed to confer upon, or to give to, any person, other than the Commonwealth, the owners of the Refunding Bonds, the Series A Underwriters and the Series B Underwriters any right, remedy or claim under or by reason of this Resolution or any covenant, stipulation, obligation, agreement or condition herein. Except as otherwise expressly provided in this Resolution, all the covenants, stipulations, obligations, promises and agreements in this Resolution by and on behalf of the Commonwealth shall be for the sole and exclusive benefit of the Commonwealth, the owners of the Refunding Bonds, the Series A Underwriters and the Series B Underwriters.

Section 35.     Tax Covenant. The Commonwealth shall comply with the requirements of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, to the extent permitted by the Constitution and laws of the Commonwealth, so that interest on the

19

Series A Bonds shall remain excludable from gross income for federal income tax purposes of the recipients thereof to the same extent that such interest was excludable on the date of initial delivery of the Series A Bonds.

(a) General. The Commonwealth hereby covenants with the holders of the Series A Bonds that, notwithstanding any other provisions of this Resolution, it shall not take any action, or fail to take any action, if any such action or failure would adversely affect the exclusion from gross income of interest on the Series A Bonds under Section 103 of the Internal Revenue Code of 1986, and the regulations issued thereunder, as the same may be amended from time to time, and any successor provisions of law (the "Code"). The Commonwealth shall not, directly or indirectly, use or permit the use of proceeds of the Series A Bonds or any of the property financed or refinanced with proceeds of the Series A Bonds, or any portion thereof, by any person other than a governmental unit (as such term is used in Section 141 of the Code) in such manner or to such extent as would result in the loss of exclusion from gross income for federal income tax purposes of interest on the Series A Bonds.

(b) Use of Proceeds. The Commonwealth shall not take any action, or fail to take any action, if any such action or failure would cause the Series A Bonds to be "private activity bonds" within the meaning of Section 141 of the Code, and in furtherance thereof, shall not make any use of the proceeds of the Series A Bonds or any of the property financed or refinanced with proceeds of the Series A Bonds, or any portion thereof, or any other funds of the Commonwealth, that would cause the Series A Bonds to be "private activity bonds" within the meaning of Section 141 of the Code. So long as any Series A Bonds are outstanding, the Commonwealth, with respect to such proceeds and property and such other funds, will comply with applicable requirements of the Code and all regulations of the United States Department of the Treasury issued thereunder. The Commonwealth shall establish reasonable procedures necessary to ensure continued compliance with the Code and the continued qualification of the Series A Bonds as "governmental bonds."

(c) Arbitrage. The Commonwealth shall not, directly or indirectly, use or permit the use of any proceeds of the Refunding Bonds, or of any property financed or refinanced thereby, or other funds of the Commonwealth, or take or omit to take any action, that would cause the Series A Bonds to be "arbitrage bonds" within the meaning of Section 148 of the Code. The Commonwealth shall comply with all requirements of Section 148 of the Code and all regulations of the United States Department of the Treasury issued thereunder to the extent such requirements are, at the time, in effect and applicable to the Series A Bonds.

(d) Federal Guarantee. The Commonwealth shall not make any use of the proceeds of the Series A Bonds or any other funds of the Commonwealth, or take or omit to take any other action, that would cause the Series A Bonds to be "federally guaranteed" within the meaning of Section 149(b) of the Code.

(e) Compliance with Tax Certificate. The Commonwealth covenants that it will comply with the provisions of the Tax Certificate of the Commonwealth executed in connection with the issuance of the Series A Bonds, which is incorporated herein by reference as if fully set forth herein. These covenants shall survive payment in full or defeasance of the Series A Bonds.

Section 36. <u>Payments Due on Non-Business Day.</u> In any case where the date of payment of interest or principal of any of the Refunding Bonds shall not be a Business Day, then payment of interest or principal need not be made on such date but may be made on the next succeeding Business Day with the same force and effect as if made on such date, and no interest on such payment shall accrue for the period after such date. The Commonwealth shall not be required to take any action on any day which is a public holiday in the Commonwealth but may take such action on the next day which is not a public holiday.

Section 37. <u>Bond Insurance.</u>

(a) The Insured Bonds are hereby designated as having the benefit of the financial guaranty insurance policy to be issued by the Bond Insurer (the "<u>Policy</u>") simultaneously with the delivery of and payment for the Series A Bonds, guaranteeing the scheduled payment of principal of and interest on the respective Insured Bonds when due. The execution and delivery by me or the President or any Executive Vice President of Development Bank, as agent of the Commonwealth, of the commitment relating to the Policy (the "<u>Insurance Commitment</u>") are hereby authorized, and said Insurance Commitment shall be substantially in the form presented to me on the date of this Resolution and attached hereto as **Exhibit I** and shall be executed in the manner therein set forth, subject to such changes, insertions and omissions as may be approved by the person executing the same, his or her execution of said Insurance Commitment to be conclusive evidence of any such approval. The Secretary and any such persons mentioned in the preceding sentence are hereby authorized to take such further actions, file such other applications and enter into any such additional agreements as may be necessary to incorporate any covenants under the provisions of the Insurance Commitment, as shall be necessary for the Insured Bonds to be insured as described above.

The Commonwealth shall include on each of the Insured Bonds the statement of insurance set forth in the Insurance Commitment with only such changes as shall be approved by the Bond Insurer.

(b) So long as the Policy shall be in full force and effect, and the Bond Insurer is not in default thereunder, with respect to the Insured Bonds, the Secretary and the Registrar shall comply with the following provisions.

(i) The Bond Insurer shall be deemed to be the sole Holder of the Insured Bonds for the purpose of giving any consent or direction or taking any other action that the Holders of the Insured Bonds are entitled to take pursuant to the provisions of this Resolution. Mandamus is available as a remedy to the Bond Insurer in such capacity.

(ii) Any Insured Bonds purchased by or on behalf of the Commonwealth shall be immediately cancelled unless the Bond Insurer consents otherwise.

(iii) With respect to the Insured Bonds, the prior written consent of the Bond Insurer shall be required, and shall be sufficient in lieu of consent of the Holders of Insured Bonds, for any amendment, supplement, modification to, or waiver of, this Resolution or any other transaction document (a "<u>Related Document</u>").

21

(iv)     The rights granted to the Bond Insurer under this Resolution or any other Related Document to request, consent to or direct any action are rights granted to the Bond Insurer in consideration of its issuance of the Policy. Any exercise by the Bond Insurer of such rights is merely an exercise of the Bond Insurer's contractual rights and shall not be construed or deemed to be taken for the benefit, or on behalf, of the Bondholder and such action does not evidence any position of the Bond Insurer, affirmative or negative, as to whether the consent of the Bondholders or any other person is required in addition to the consent of the Bond Insurer.

(v)     Amounts paid by the Bond Insurer under the Policy shall not be deemed paid for purposes of this Resolution and the Insured Bonds relating to such payment shall remain outstanding and continue to be due and owing until paid by the Commonwealth in accordance with this Resolution.

(vi)     If, on the third Business Day prior to the related scheduled interest payment date or principal payment date (a "Payment Date") there is not on deposit with the Registrar, after making all transfers and deposits required under this Resolution, moneys sufficient to pay the principal of and interest on the Insured Bonds due on such Payment Date, the Registrar shall give notice to the Bond Insurer and to its designated agent (if any) (the "Bond Insurer's Fiscal Agent") by telephone or telecopy of the amount of such deficiency by 12:00 noon, New York City time, on such Business Day. If, on the second Business Day prior to the related Payment Date, there continues to be a deficiency in the amount available to pay the principal of and interest on the Insured Bonds due on such Payment Date, the Registrar shall make a claim under the Policy and give notice to the Bond Insurer and the Bond Insurer's Fiscal Agent (if any) by telephone of the amount of such deficiency, and the allocation of such deficiency between the amount required to pay interest on the Insured Bonds and the amount required to pay principal of the Insured Bonds, confirmed in writing to the Bond Insurer and the Bond Insurer's Fiscal Agent by 12:00 noon, New York City time, on such second Business Day by filling in the form of Notice of Claims and Certificates delivered with the Policy.

The Registrar shall designate any portion of payment of principal on Insured Bonds paid by the Bond Insurer, on its books as a reduction in the principal amount of Insured Bonds registered to the then-current Bondholder, whether DTC or its nominee or otherwise, and shall issue a replacement Refunding Bond to the Bond Insurer, registered in the name of Assured Guaranty Municipal Corp. (formerly known as Financial Security Assurance Inc.), in a principal amount equal to the amount of principal so paid (without regard to authorized denominations); provided that the Registrar's failure to so designate any payment or issue any replacement Refunding Bonds shall have no effect on the amount of the principal or interest payable by the Commonwealth on any Insured Bond or the subrogation rights of the Bond Insurer.

The Registrar shall keep a complete and accurate record of all funds deposited by the Bond Insurer into the Policy Payments Account (defined below) and the allocation of such funds to payment of interest on and principal of any Insured Bond. The Bond Insurer shall have the right to inspect such records at reasonable times upon reasonable notice to the Registrar.

Upon payment of a claim under the Policy, the Registrar shall establish a separate special purpose trust account for the benefit of Bondholders referred to herein as the "Policy Payments Account" and over which the Registrar shall have exclusive control and sole right of withdrawal. The Registrar shall receive any amount paid under the Policy in trust on behalf of the Bondholders and shall deposit any such amount in the Policy Payments Account and distribute such amount only for the purposes of making the payments for which a claim was made. Such amounts shall be disbursed by the Registrar to Bondholders in the same manner as principal and interest payments are to be made with respect to the Insured Bonds under the sections hereof regarding payments of Insured Bonds. It shall not be necessary for such payments to be made by checks or wire transfers separate from the check or wire transfer used to pay debt service with other funds available to make such payments. Notwithstanding anything herein to the contrary, the Commonwealth agrees to pay the Bond Insurer (i) a sum equal to the total of all amounts paid by the Bond Insurer under the Policy (the "Bond Insurer Advances"); and (ii) interest on such Bond Insurer Advances from the date paid by the Bond Insurer until payment thereof in full, payable to the Bond Insurer at the Late Payment Rate per annum (collectively, the "Bond Insurer Reimbursement Amounts"). "Late Payment Rate" means the lesser of (a) the greater of (i) the per annum rate of interest, publicly announced from time to time by JPMorgan Chase Bank at its principal office in The City of New York, as its prime or base lending rate (any change in such rate of interest to be effective on the date of such change is announced by JPMorgan Chase Bank) plus 3%, and (ii) the then-applicable highest rate of interest on the Insured Bonds, and (b) the maximum rate permissible under applicable Puerto Rico usury or similar laws limiting interest rates. The Late Payment Rate shall be computed on the basis of the actual number of days elapsed over a year of 360 days. The Commonwealth hereby covenants and agrees that the Bond Insurer Reimbursement Amounts, if any, shall be a general obligation of the Commonwealth.

(vii)   The Bond Insurer shall, to the extent it makes any payment of principal of or interest on the Insured Bonds, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Policy. Each obligation of the Commonwealth to the Bond Insurer under this Resolution shall survive discharge or termination of this Resolution.

(viii)   The Commonwealth shall pay or reimburse the Bond Insurer any and all charges, fees, costs and expenses that the Bond Insurer may reasonably pay or incur in connection with (A) the administration, enforcement, defense or preservation of any rights under this Resolution; (B) the pursuit of any remedies afforded by law or equity; (C) any amendment, waiver or other action with respect to, or related to, this Resolution or any other Related Document whether or not executed or completed; or (D) any litigation or other dispute in connection with this Resolution or any other Related Document or the transactions contemplated thereby, other than costs resulting from the failure of the Bond Insurer to honor its obligations under the Policy. The Bond Insurer reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver or consent proposed in respect of this Resolution or any other Related Document.

(ix)   The Bond Insurer shall be entitled to pay principal or interest on the Insured Bonds that shall become Due for Payment but shall be unpaid by reason of

Nonpayment by the Commonwealth (as such terms are defined in the Policy) and any amounts due on the Insured Bonds as a result of acceleration of the maturity thereof in accordance with this Resolution, whether or not the Bond Insurer has received a Notice of Nonpayment (as such terms are defined in the Policy) or a claim upon the Policy.

(x) The notice address of the Bond Insurer is: Assured Guaranty Municipal Corp. (formerly known as Financial Security Assurance Inc.), 31 West 52nd Street, New York, New York 10019, Attention: Managing Director – Surveillance, Re: Policy No. 213131-N, Telephone: (212) 826-0100; Telecopier: (212) 339-3556. In each case in which notice or other communication refers to an Event of Default, then a copy of such notice or other communication shall also be sent to the attention of the General Counsel and shall be marked to indicate "URGENT MATERIAL ENCLOSED."

(xi) The Bond Insurer shall be provided with the following information by the Commonwealth or Registrar, as the case may be:

(A) Annual audited financial statements within 305 days after the end of the fiscal year of the Commonwealth and the Commonwealth's annual budget within thirty (30) days after the approval thereof together with such other information, data or reports as the Bond Insurer shall reasonably request from time to time;

(B) Prior notice of the advance refunding or redemption of any of the Insured Insured Bonds, including the principal amount, maturities and CUSIP numbers thereof;

(C) Notice of the resignation or removal of the Registrar and the appointment of, and acceptance of duties by, any successor thereto;

(D) Notice of the commencement of any proceeding by or against the Commonwealth commenced under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding");

(E) Notice of the making of any claim in connection with any Insolvency Proceeding seeking the avoidance as preferential transfer of any payment of principal of, or interest on, the Insured Bonds;

(F) A full original transcript of all proceedings relating to the execution of any amendment, supplement, or waiver under this Resolution;

(G) All reports, notices and correspondence to be delivered to Bondholders under the terms of this Resolution; and

(H) All information to be furnished pursuant to Section 32 also shall be provided to the Bond Insurer, simultaneously with the furnishing of such information.

(xii) The Bond Insurer shall have the right to receive such additional information as it may reasonably request.

(xiii) The Commonwealth will permit the Bond Insurer to discuss the affairs, finances and accounts of the Commonwealth, respectively, and any other information the Bond Insurer may reasonably request regarding the security for the Insured Bonds with appropriate officers of the Commonwealth.

(xiv) The Commonwealth shall notify the Bond Insurer of any failure of the Commonwealth to provide notices, certificates and other information under this Resolution.

(xv) In determining whether any amendment, consent, waiver or other action to be taken, or any failure to take action, under this Resolution would adversely affect the security for the Insured Bonds or the rights of the Bondholders, the Commonwealth and Registrar shall consider the effect of any such amendment, consent, waiver, action or inaction as if there were no Policy.

No contract shall be entered into or any action taken by which the rights of the Bond Insurer or the sources of payment of the Insured Bonds may be impaired or prejudiced in any material respect, except upon obtaining the prior written consent of the Bond Insurer.

Section 38. Severability of Invalid Provisions. If any one or more of the provisions, covenants or agreements in this Resolution on the part of the Commonwealth to be performed should be contrary to law, then such provision or provisions, covenant or covenants, agreement or agreements, shall be deemed separable from the remaining provisions, covenants and agreements, and shall in no way affect the validity of the other provisions of this Resolution or of the Refunding Bonds or the Refunded Bonds.

*[Signature page follows]*

Section 39.    Effectiveness.

This Resolution shall take effect upon its approval by the Governor of Puerto Rico.

Adopted on March 7, 2012

_____
Secretary of the Treasury of Puerto Rico

The foregoing Resolution and the issuance of the Refunding Bonds authorized thereby as therein set forth are hereby approved this 7th day of March, 2012.

_____
Governor of the Commonwealth of Puerto Rico

Attest:

_____
Secretary of State

S-1

# EXHIBIT A

## THE REFUNDED BONDS

## PART I

| Series of Bond | Maturity (July 1) | Principal Amount Outstanding | Refunded Par Amount | Date of Redemption | Price |
|---|---|---|---|---|---|
| Public Improvement Refunding Bonds, Series 1998 | 2023 | $125,590,000 | $ 58,850,000 | 5/3/2012 | 100% |
| Public Improvement Refunding Bonds, Series 1998 | 2026 | 28,240,000 | 28,240,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, Series 1999 | 2023 | 84,150,000 | 84,150,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, Series 1999 | 2028 | 26,655,000 | 15,210,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, 2001B | 2014 | 7,345,000 | 7,345,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, 2001B | 2015 | 4,165,000 | 4,165,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, 2001B | 2016 | 1,585,000 | 1,585,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, 2001B | 2017 | 2,665,000 | 2,665,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, 2001B | 2018 | 5,810,000 | 5,810,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, 2001B | 2019 | 1,385,000 | 1,385,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, 2001B | 2020 | 2,675,000 | 2,675,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, 2001B | 2021 | 5,580,000 | 5,580,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, 2001B | 2021 | 3,865,000 | 3,865,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, 2001B | 2023 | 5,415,000 | 5,415,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, 2001B | 2023 | 12,285,000 | 12,285,000 | 5/3/2012 | 100 |
| Public Improvement Refunding Bonds, Series 2001 | 2024 | 13,575,000 | 13,575,000 | 5/3/2012 | 100 |
| Public Improvement Refunding Bonds, Series 2001 | 2027 | 50,905,000 | 50,905,000 | 5/3/2012 | 100 |
| Public Improvement Refunding Bonds, Series 2001 | 2030 | 65,535,000 | 24,895,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, Series 2002A | 2028 | 33,860,000 | 33,860,000 | 5/3/2012 | 100 |
| Public Improvement Refunding Bonds, Series 2003C-4 | 2018 | 46,385,000 | 46,385,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, Series 2004A | 2014 | 8,035,000 | 8,035,000 | 7/1/2013 | 100 |
| Public Improvement Bonds, Series 2004A | 2015 | 11,580,000 | 11,580,000 | 7/1/2013 | 100 |
| Public Improvement Bonds, Series 2004A | 2016 | 12,185,000 | 12,185,000 | 7/1/2013 | 100 |
| Public Improvement Bonds, Series 2004A | 2018 | 13,500,000 | 13,500,000 | 7/1/2013 | 100 |
| Public Improvement Bonds, Series 2004A | 2019 | 2,200,000 | 2,200,000 | 7/1/2013 | 100 |
| Public Improvement Bonds, Series 2004A | 2020 | 14,955,000 | 14,955,000 | 7/1/2013 | 100 |
| Public Improvement Bonds, Series 2004A | 2021 | 15,740,000 | 15,740,000 | 7/1/2013 | 100 |
| Public Improvement Bonds, Series 2004A | 2022 | 16,565,000 | 16,565,000 | 7/1/2013 | 100 |
| Public Improvement Bonds, Series 2004A | 2023 | 17,435,000 | 17,435,000 | 7/1/2013 | 100 |
| Public Improvement Refunding Bonds, Series 2004A | 2030 | 187,760,000 | 187,760,000 | 7/1/2012 | 100 |
| Public Improvement Refunding Bonds, Series 2004A | 2031 | 29,165,000 | 29,165,000 | 7/1/2012 | 100 |
| Public Improvement Refunding Bonds, Series 2004A | 2031 | 40,000,000 | 40,000,000 | 7/1/2012 | 100 |
| Public Improvement Refunding Bonds, Series 2004A | 2031 | 22,315,000 | 22,315,000 | 7/1/2012 | 100 |
| Public Improvement Refunding Bonds, Series 2004B-1 | 2021 | 41,950,000 | 41,950,000 | 4/18/2012 | 100 |
| Public Improvement Refunding Bonds, Series 2004B-2 | 2024 | 56,000,000 | 56,000,000 | 5/3/2012 | 100 |
| Public Improvement Refunding Bonds, Series 2004B-3 | 2027 | 56,000,000 | 56,000,000 | 5/3/2012 | 100 |
| Public Improvement Bonds, Series 2005A | 2018 | 14,985,000 | 14,985,000 | 7/1/2014 | 100 |
| Public Improvement Refunding Bonds, Series 2007A-2 | 2029 | 99,450,000 | 84,535,000 | 5/3/2012 | 100 |
| Public Improvement Refunding Bonds, Series 2007A-3 | 2029 | 99,500,000 | 84,575,000 | 4/18/2012 | 100 |
| Public Improvement Refunding Bonds, Series 2011B | 2034 | 67,650,000 | 67,650,000 | 4/18/2012 | 100 |

A-1

## EXHIBIT A

## THE REFUNDED BONDS

## PART II

| Bond | Maturity (July 1) | Principal Amount Outstanding | Refunded Par Amount | Date of Redemption | Redemption Price |
|---|---|---|---|---|---|
| Public Improvement Bonds, Series 2003B | 2012 | $   855,000 | $   250,000 | 4/28/2012 | 101  % |
| Public Improvement Bonds, Series 2003B | 2013 | 895,000 | 895,000 | 4/28/2012 | 101 |
| Public Improvement Bonds, Series 2003B | 2014 | 935,000 | 935,000 | 4/28/2012 | 101 |
| Public Improvement Bonds, Series 2003B | 2019 | 3,305,000 | 3,305,000 | 4/28/2012 | 101 |
| Public Improvement Bonds, Series 2003B | 2021 | 4,825,000 | 4,825,000 | 4/28/2012 | 101 |
| Public Improvement Bonds, Series 2003B | 2026 | 8,000,000 | 8,000,000 | 4/28/2012 | 101 |
| Public Improvement Bonds, Series 2003B | 2033 | 15,600,000 | 15,600,000 | 4/28/2012 | 101 |
| Special Obligation Bonds, Series 2003 | 2013 | 6,230,000 | 6,230,000 | 4/28/2012 | 101 |
| Special Obligation Bonds, Series 2003 | 2019 | 27,005,000 | 27,005,000 | 4/28/2012 | 101 |
| Special Obligation Bonds, Series 2003 | 2021 | 36,020,000 | 36,020,000 | 4/28/2012 | 101 |
| Public Improvement Bonds, Series 2004B | 2013 | 1,850,000 | 1,850,000 | 4/28/2012 | 101 |
| Public Improvement Bonds, Series 2004B | 2014 | 1,940,000 | 1,940,000 | 4/28/2012 | 101 |
| Public Improvement Bonds, Series 2004B | 2019 | 6,835,000 | 6,835,000 | 4/28/2012 | 101 |
| Public Improvement Bonds, Series 2004B | 2021 | 10,000,000 | 10,000,000 | 4/28/2012 | 101 |
| Public Improvement Bonds, Series 2004B | 2026 | 16,570,000 | 16,570,000 | 4/28/2012 | 101 |
| Public Improvement Bonds, Series 2004B | 2033 | 32,300,000 | 32,300,000 | 4/28/2012 | 101 |
| Public Improvement Bonds, Series 2005B | 2013 | 11,790,000 | 11,790,000 | 7/1/2012 | 101 |
| Public Improvement Bonds, Series 2005B | 2014 | 3,735,000 | 3,735,000 | 7/1/2012 | 101 |
| Public Improvement Bonds, Series 2006C | 2012 | 23,405,000 | 13,000,000 | 4/28/2012 | 101.5 |
| Public Improvement Bonds, Series 2006C | 2013 | 24,635,000 | 24,635,000 | 4/28/2012 | 101.5 |
| Public Improvement Bonds, Series 2006C | 2016 | 52,965,000 | 6,000,000 | 4/28/2012 | 101.5 |
| Public Improvement Bonds, Series 2006C | 2015 | 6,000,000 | 52,965,000 | 4/28/2012 | 101.5 |
| Public Improvement Bonds, Series 2006D | 2016 | 12,000,000 | 12,000,000 | 4/28/2012 | 101.5 |
| Public Improvement Bonds, Series 2007B | 2013 | 9,500,000 | 9,500,000 | 7/1/2012 | 101.5 |
| Public Improvement Bonds, Series 2007B | 2014 | 10,050,000 | 10,050,000 | 7/1/2012 | 101.5 |
| Public Improvement Bonds, Series 2007B | 2015 | 10,600,000 | 10,600,000 | 7/1/2012 | 101.5 |
| Public Improvement Bonds, Series 2007B | 2016 | 11,200,000 | 11,200,000 | 7/1/2012 | 101.5 |
| Public Improvement Bonds, Series 2007B | 2017 | 11,850,000 | 11,850,000 | 7/1/2012 | 101.5 |
| Public Improvement Bonds, Series 2007B | 2018 | 4,500,000 | 4,500,000 | 7/1/2012 | 101.5 |

A-2

# EXHIBIT A-1

## THE REFUNDING BONDS

## PART I - THE SERIES A BONDS

| Maturity | Principal Amount | Interest Rate |
|---|---|---|
| 2020 | $ 10,000,000 | 4.000% |
| 2020 | 35,345,000 | 5.000% |
| 2021 | 49,400,000 | 4.000% |
| 2021 | 52,895,000 | 5.000% |
| 2022 | 20,000,000 | 4.000% |
| 2022 | 32,110,000 | 4.125% |
| 2022 | 21,285,000 | 5.000% |
| 2023 | 5,000,000 | 4.125% |
| 2023 | 7,290,000 | 4.375% |
| 2023 | 68,500,000 | 5.250% |
| 2024 | 10,000,000 | 4.000% |
| 2024 | 5,000,000 | 4.125% |
| 2024 | 11,050,000 | 5.250% |
| 2025 | 5,000,000 | 4.250% |
| 2025 | 22,030,000 | 4.500% |
| 2026 | 4,455,000 | 4.500% |
| 2026 | 60,000,000 | 5.500% |
| 2026 | 69,740,000 | 5.500% |
| 2027 | 11,520,000 | 4.250% |
| 2027 | 17,945,000 | 5.500% |
| 2028 | 64,795,000 | 5.750% |
| 2029 | 6,665,000 | 5.000% |
| 2030 | 7,000,000 | 4.750% |
| 2031 | 7,335,000 | 4.750% |
| 2032 | 7,685,000 | 5.000% |
| 2033 | 27,400,000 | 5.000% |
| 2035 | 322,925,000 | 5.000% |
| 2037 | 263,540,000 | 5.125% |
| 2039 | 459,305,000 | 5.500% |
| 2041 | 632,975,000 | 5.000% |

## EXHIBIT A-1

### THE REFUNDING BONDS

### PART II - THE SERIES B BONDS

| Maturity | Principal Amount | Interest Rate |
|----------|------------------|---------------|
| 2013 | $55,605,000 | 2.250% |
| 2014 | 68,500,000 | 2.950% |
| 2014 | 1,490,000 | 2.950% |
| 2015 | 62,250,000 | 3.250% |
| 2015 | 5,050,000 | 3.250% |
| 2016 | 54,500,000 | 3.650% |
| 2016 | 1,670,000 | 3.650% |
| 2017 | 25,250,000 | 3.900% |
| 2017 | 2,135,000 | 3.900% |
| 2018 | 50,000,000 | 4.100% |
| 2018 | 1,925,000 | 4.100% |
| 2019 | 20,000,000 | 4.250% |
| 2019 | 160,000 | 4.250% |
| 2020 | 10,000,000 | 4.400% |
| 2020 | 7,125,000 | 4.400% |
| 2033 | 49,610,000 | 5.300% |

A-4

## EXHIBIT B

## [FORM OF SERIES A BOND]

**UNLESS THIS BOND IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK LIMITED PURPOSE TRUST COMPANY ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY BOND ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE OF THIS BOND FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**

No. RA-___                                                                                    $_____

United States of America
Commonwealth of Puerto Rico

COMMONWEALTH OF PUERTO RICO
PUBLIC IMPROVEMENT REFUNDING BONDS, SERIES 2012 A

| Interest Rate | Maturity Date | CUSIP No. |
|---|---|---|
| % | July 1, ____ | |

Registered Owner:   Cede & Co.

Principal Amount:   Dollars

The Commonwealth of Puerto Rico is justly indebted and for value received hereby promises to pay to the Registered Owner named above or registered assigns or legal representatives, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof, the Principal Amount specified above and to pay interest thereon from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case from such date, at the Interest Rate per annum specified above, until payment of such Principal Amount, such interest to the payment hereof being payable on January 1, 2013 and semi-annually thereafter on the first (1st) day of each January and July.  The Principal Amount of this bond is payable upon presentation and surrender hereof at the corporate trust office of Banco Popular de Puerto Rico, Registrar, in the Municipality of San Juan, Puerto Rico.  Payment of the interest on this bond shall be paid by check mailed to the person appearing on the registration books of the Commonwealth of Puerto Rico (kept at the above office of the Registrar) as the registered owner hereof (or of the previous bond or bonds evidencing the same debt as that evidenced by this bond) at the close of business on the record

date for such interest, which shall be the June 15 or December 15 (whether or not a business day) next preceding such interest payment date.  Both the principal of and interest on this bond are payable in such coin or currency of the United States of America which, at the respective dates of payment thereof, is legal tender for the payment of public and private debts.  The good faith, credit and taxing power of the Commonwealth of Puerto Rico are irrevocably pledged for the prompt payment of the principal of and the interest on this bond.

This bond is one of a duly authorized issue of bonds of the Commonwealth of Puerto Rico issued in the aggregate principal amount of $2,318,190,000, known as "Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2012 A" issued under the authority of and in full compliance with an Act of the Senate and House of Representatives of the United States in Congress assembled entitled, "An Act to provide a civil government for Puerto Rico, and for other purposes", approved March 2, 1917, as amended, as continued in effect by Public Law 600, approved July 3, 1950, as amended, and now known as the "Puerto Rican Federal Relations Act", and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 33 of the Legislative Assembly of Puerto Rico, approved December 7, 1942, as amended (the "Act"), and pursuant to a resolution of determination to issue said bonds (the "Resolution") duly adopted by the Secretary of the Treasury of Puerto Rico (the "Secretary") and approved by the Governor of Puerto Rico, for the purpose of refunding certain outstanding public improvement bonds and notes of the Commonwealth of Puerto Rico (collectively, the "Refunded Bonds"), funding interest on a portion of the bonds, and paying certain expenses related to the refunding of the Refunded Bonds and the issuance and sale of the bonds and, by the acceptance of this bond, the owner hereof assents to all the provisions of the Resolution.

The bonds are issuable as registered bonds without coupons in denominations of $5,000 or any multiple thereof.  At the corporate trust office of the Registrar, in the Municipality of San Juan, Puerto Rico, in the manner and subject to the limitations and conditions provided in the Resolution and without cost except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of the same maturity, of authorized denominations and bearing interest at the same rate.

The bonds maturing on or prior to July 1, 2022 shall not be subject to redemption prior to their maturity.  The bonds maturing after July 1, 2022 (other than certain bonds maturing on July 1, 2026, as described below) shall be subject to redemption prior to their maturity, at the option of the Commonwealth, from any moneys that may be available for that purpose, at any time on or after July 1, 2022, either in whole or in part (and if in part, in such order of maturity or amortization requirement within a maturity, as directed by the Secretary) at a redemption price equal to the principal amount of the bonds to be redeemed, without premium, together with accrued interest to the date fixed for redemption.

The bonds maturing on July 1, 2026, bearing interest at 5.5% and with an initial offering yield of 4.5% shall be subject to redemption prior to their maturity, at the option of the Secretary, from any moneys that may be available for that purpose, at any time on or after July 1, 2018, either in whole or in part, at a redemption price equal to the principal amount of such bonds to be redeemed, without premium, together with accrued interest to the date fixed for redemption.

Any such redemption, either in whole or in part, may be made upon at least thirty (30) days' prior notice by registered or certified mail to all registered owners and otherwise as provided in the Resolution, and shall be made in the manner and under the terms and conditions provided in the Resolution. On the date designated for redemption, notice having been given as provided in the Resolution and available moneys for payment of the principal of and the redemption premium, if any, and accrued interest on the bonds so called for redemption being held by the Registrar, interest on the bonds so called for redemption shall cease to accrue. Bonds and portions of bonds which have been duly called for redemption under the provisions of the Resolution, or with respect to which irrevocable instructions to call for redemption or to pay at or prior to maturity have been given to the Registrar in form satisfactory to it, and for the payment of the principal of and the redemption premium, if any, and the accrued interest on which sufficient available moneys or investments permitted by law (determined in accordance with the Resolution) shall be held in trust for the owners of the bonds or portions thereof to be paid or redeemed, shall not be deemed to be outstanding under the Resolution, and the registered owners thereof shall have no rights in respect thereof except to receive payment of the principal of and the redemption premium, if any, and the accrued interest thereon. If a portion of this bond shall be called for redemption, a new bond or bonds in principal amount equal to the unredeemed portion hereof will be issued to the registered owner upon the surrender hereof in accordance with the provisions of the Resolution.

Any notice of redemption may state that the redemption is conditional and, if so, the notice shall state what the conditions are. Any notice of redemption may be rescinded by written notice given to the Registrar by the Secretary no later than two (2) Business Days prior to the date specified for redemption. The Registrar shall give notice of such rescission as soon thereafter as practicable in the same manner, and to the same persons, as notice of such redemption was given pursuant to this Resolution.

In addition, the bonds maturing on July 1 in the years 2035, 2037, 2039 and 2041 shall be redeemed, to the extent provided in the Resolution, commencing on July 1, 2033, July 1, 2034, July 1, 2038 and July 1, 2040, respectively, and on July 1 in each year thereafter in principal amounts equal to the respective Amortization Requirements for such bonds, as defined in the Resolution, plus accrued interest, without premium.

If less than all of the bonds of any one maturity shall be called for redemption, the particular bonds or portions thereof to be redeemed from such maturity shall be selected by such manner as the Registrar deems fair and appropriate as provided in the Resolution.

The transfer of this bond is registrable by the registered owner hereof in person or by such owner's attorney or legal representative at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico, but only in the manner and subject to the limitations and conditions provided in the Resolution and upon surrender and cancellation of this bond. Upon any such registration of transfer the Commonwealth of Puerto Rico shall execute and the Registrar shall authenticate and deliver in exchange for this bond a new bond or bonds registered in the name of the transferee or transferees, of the same maturity, bearing interest at the same rate, in any authorized denominations and in principal amount equal to the principal amount of this bond.

This bond shall be governed and construed in accordance with the laws of the Commonwealth of Puerto Rico.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit under the Resolution until this bond shall have been authenticated by the execution by the Registrar of the certificate of authentication endorsed hereon.

It is hereby certified and recited that all acts, conditions and things required to happen, exist and be performed precedent to and in the issuance of this bond have happened, exist and have been performed in due time, form and manner as required by the Constitution and laws of the Commonwealth of Puerto Rico, and the total indebtedness of the Commonwealth of Puerto Rico, including this bond, does not exceed any debt or other limitation prescribed by law.

[Signature page follows]

IN WITNESS WHEREOF, the Commonwealth of Puerto Rico has caused this bond to be executed with the facsimile signatures of the Governor of Puerto Rico and the Secretary of the Treasury of Puerto Rico and a facsimile of the official seal of the Commonwealth of Puerto Rico to be imprinted hereon and attested by the facsimile signature of the Secretary of State of Puerto Rico, all as of the ___ day of _____, 20__

[Facsimile signature]_____
Governor of Puerto Rico

[Facsimile signature]_____
Secretary of the Treasury
of Puerto Rico

(SEAL)

Attest:

[Facsimile signature]_____
Secretary of State

B-5

CERTIFICATE OF AUTHENTICATION

This is one of the bonds issued under the provisions of the Resolution mentioned herein.

BANCO POPULAR DE PUERTO RICO,
as Registrar

By:_____
      Authorized Officer

Date of authentication: _____

FORM OF ASSIGNMENT

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto

_____

[please print or type name and address of Transferee]

the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ attorney to register the transfer of the within bond
on the books kept for registration thereof, with full power of substitution in the premises.

Signature: _____

Dated: _____   Guaranteed by: _____

NOTICE: The signature to this assignment must correspond with the name as it appears upon the face of the within Bond in every particular, without alteration or enlargement or any change whatever and must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Registrar which requirements will include membership or participation in the Securities Transfer Agents Medallion Program or such other "signature guarantee program" as may be determined by the Registrar in addition to, or in substitution for the Securities Transfer Agents Medallion Program, all in accordance with the Securities Exchange Act of 1934, as amended.

STATEMENT OF INSURANCE

Assured Guaranty Municipal Corp. ("AGM"), New York, New York, has delivered its municipal bond insurance policy (the "Policy") with respect to the scheduled payments due of principal of and interest on the bonds listed below (the "Insured Bonds"), to Banco Popular de Puerto Rico, San Juan, Puerto Rico, or its successor, as paying agent for the Insured Bonds (the "Paying Agent"). Said Policy is on file and available for inspection at the principal office of the Paying Agent and a copy thereof may be obtained from AGM or the Paying Agent. All payments required to be made under the Policy shall be made in accordance with the provisions thereof. The owner of this bond acknowledges and consents to the subrogation rights of AGM as more fully set forth in the Policy.

**Insured Bonds**

| Year of Maturity (July 1) | Principal Amount |
|---|---|
| 2022 | $ 20,000,000 |
| 2023 | 5,000,000 |
| 2024 | 5,000,000 |
| 2025 | 5,000,000 |
| 2027 | 11,520,000 |
| 2035 | 322,925,000 |

**[FORM OF SERIES B BOND]**

**UNLESS THIS BOND IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK LIMITED PURPOSE TRUST COMPANY ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY BOND ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE OF THIS BOND FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**

No. RA-___                                                                                    $_____

United States of America
Commonwealth of Puerto Rico

COMMONWEALTH OF PUERTO RICO
PUBLIC IMPROVEMENT REFUNDING BONDS, SERIES 2012 B

| Interest Rate | Maturity Date | Interest Payment Date | CUSIP No. |
|---|---|---|---|
| % | July 1, ___ | May 1, 2012 and the first day of each month thereafter | |

Registered Owner:          Cede & Co.

Principal Amount:          Dollars

The Commonwealth of Puerto Rico is justly indebted and for value received hereby promises to pay to the Registered Owner named above or registered assigns or legal representatives, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof, the Principal Amount specified above and to pay interest thereon from the date hereof or from the Interest Payment Date next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is an Interest Payment Date, in which case from such date, at the Interest Rate per annum specified above, until payment of such Principal Amount, such interest to the payment hereof being payable on each Interest Payment Date. The Principal Amount of this bond is payable upon presentation and surrender hereof at the corporate trust office of Banco Popular de Puerto Rico, Registrar, in the Municipality of San Juan, Puerto Rico. Payment of the interest on this bond shall be paid by check mailed to the person appearing on the registration books of the

B-8

Commonwealth of Puerto Rico (kept at the above office of the Registrar) as the registered owner hereof (or of the previous bond or bonds evidencing the same debt as that evidenced by this bond) at the close of business on the record date for such interest, which shall be the 15th day of the month next preceding such interest payment date.  Both the principal of and interest on this bond are payable in such coin or currency of the United States of America which, at the respective dates of payment thereof, is legal tender for the payment of public and private debts.  The good faith, credit and taxing power of the Commonwealth of Puerto Rico are irrevocably pledged for the prompt payment of the principal of and the interest on this bond.

This bond is one of a duly authorized issue of bonds of the Commonwealth of Puerto Rico issued in the aggregate principal amount of $415,270,000, known as "Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2012 B", issued under the authority of and in full compliance with an Act of the Senate and House of Representatives of the United States in Congress assembled entitled, "An Act to provide a civil government for Puerto Rico, and for other purposes", approved March 2, 1917, as amended, as continued in effect by Public Law 600, approved July 3, 1950, as amended, and now known as the "Puerto Rican Federal Relations Act", and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 33 of the Legislative Assembly of Puerto Rico, approved December 7, 1942, as amended (the "Act"), and pursuant to a resolution of determination to issue said bonds (the "Resolution") duly adopted by the Secretary of the Treasury of Puerto Rico and approved by the Governor of Puerto Rico, for the purpose of refunding certain outstanding public improvement bonds and notes of the Commonwealth of Puerto Rico (the "Refunded Bonds"), funding interest on the bonds, and paying expenses related to the refunding of the Refunded Bonds and the issuance and sale of the bonds and, by the acceptance of this bond, the owner hereof assents to all the provisions of the Resolution.

The bonds are issuable as registered bonds without coupons in denominations of $5,000 or any multiple thereof.  At the corporate trust office of the Registrar, in the Municipality of San Juan, Puerto Rico, in the manner and subject to the limitations and conditions provided in the Resolution and without cost except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of the same maturity, of authorized denominations and bearing interest at the same rate.

The outstanding bonds maturing prior to July 1, 2016 shall not be subject to redemption prior to maturity.  The bonds maturing on or after July 1, 2016 (other than the bonds maturing on July 1, 2033) shall be subject to redemption prior to their maturity, at the option of the Secretary, from any moneys that may be available for that purpose, at any time on or after July 1, 2015, either in whole or in part (and if in part, in such order of maturity as directed by the Secretary), at a redemption price equal to the principal amount of the bonds to be redeemed, without premium, together with accrued interest to the date fixed for redemption.

The bonds maturing on July 1, 2033 shall be subject to redemption prior to their maturity, at the option of the Secretary, from any moneys that may be available for that purpose, at any time on or after July 1, 2022, either in whole or in part, at a redemption price equal to the principal amount of the bonds to be redeemed, without premium, together with accrued interest to the date fixed for redemption.

Any such redemption, either in whole or in part, may be made upon at least thirty (30) days' prior notice by registered or certified mail to all registered owners and otherwise as provided in the Resolution, and shall be made in the manner and under the terms and conditions provided in the Resolution. On the date designated for redemption, notice having been given as provided in the Resolution and available moneys for payment of the principal of and the redemption premium, if any, and accrued interest on the bonds so called for redemption being held by the Registrar, interest on the bonds so called for redemption shall cease to accrue. Bonds and portions of bonds which have been duly called for redemption under the provisions of the Resolution, or with respect to which irrevocable instructions to call for redemption or to pay at or prior to maturity have been given to the Registrar in form satisfactory to it, and for the payment of the principal of and the redemption premium, if any, and the accrued interest on which sufficient available moneys or investments permitted by law (determined in accordance with the Resolution) shall be held in trust for the owners of the bonds or portions thereof to be paid or redeemed, shall not be deemed to be outstanding under the Resolution, and the registered owners thereof shall have no rights in respect thereof except to receive payment of the principal of and the redemption premium, if any, and the accrued interest thereon. If a portion of this bond shall be called for redemption, a new bond or bonds in principal amount equal to the unredeemed portion hereof will be issued to the registered owner upon the surrender hereof in accordance with the provisions of the Resolution.

Any notice of redemption may state that the redemption is conditional and, if so, the notice shall state what the conditions are. Any notice of redemption may be rescinded by written notice given to the Registrar by the Secretary no later than two (2) Business Days prior to the date specified for redemption. The Registrar shall give notice of such rescission as soon thereafter as practicable in the same manner, and to the same persons, as notice of such redemption was given pursuant to this Resolution.

If less than all of the bonds of any one maturity shall be called for redemption, the particular bonds or portions thereof to be redeemed from such maturity shall be selected by such manner as the Registrar deems fair and appropriate as provided in the Resolution.

There are no amortization requirements for the bonds maturing on July 1, 2033.

The transfer of this bond is registrable by the registered owner hereof in person or by such owner's attorney or legal representative at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico, but only in the manner and subject to the limitations and conditions provided in the Resolution and upon surrender and cancellation of this bond. Upon any such registration of transfer the Commonwealth of Puerto Rico shall execute and the Registrar shall authenticate and deliver in exchange for this bond a new bond or bonds registered in the name of the transferee or transferees, of the same maturity, bearing interest at the same rate, in any authorized denominations and in principal amount equal to the principal amount of this bond.

This bond shall be governed and construed in accordance with the laws of the Commonwealth of Puerto Rico.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit under the Resolution until this bond shall have been authenticated by the execution by the Registrar of the certificate of authentication endorsed hereon.

It is hereby certified and recited that all acts, conditions and things required to happen, exist and be performed precedent to and in the issuance of this bond have happened, exist and have been performed in due time, form and manner as required by the Constitution and laws of the Commonwealth of Puerto Rico, and the total indebtedness of the Commonwealth of Puerto Rico, including this bond, does not exceed any debt or other limitation prescribed by law.

IN WITNESS WHEREOF, the Commonwealth of Puerto Rico has caused this bond to be executed with the facsimile signatures of the Governor of Puerto Rico and the Secretary of the Treasury of Puerto Rico and a facsimile of the official seal of the Commonwealth of Puerto Rico to be imprinted hereon and attested by the facsimile signature of the Secretary of State of Puerto Rico, all as of the ___ day of _____, 20__

[Facsimile signature] _____
Governor of Puerto Rico

[Facsimile signature] _____
Secretary of the Treasury
of Puerto Rico

(SEAL)

Attest:

[Facsimile signature] _____
Secretary of State

B-11

CERTIFICATE OF AUTHENTICATION

This is one of the bonds issued under the provisions of the Resolution mentioned herein.

BANCO POPULAR DE PUERTO RICO,
as Registrar


By:_____
        Authorized Officer


Date of authentication: _____

FORM OF ASSIGNMENT

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto

_____

[please print or type name and address of Transferee]

the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints _____ attorney to register the transfer of the within bond on the books kept for registration thereof, with full power of substitution in the premises.

Signature: _____

Dated: _____    Guaranteed by: _____

NOTICE: The signature to this assignment must correspond with the name as it appears upon the face of the within Bond in every particular, without alteration or enlargement or any change whatever and must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Registrar which requirements will include membership or participation in the Securities Transfer Agents Medallion Program or such other "signature guarantee program" as may be determined by the Registrar in addition to, or in substitution for the Securities Transfer Agents Medallion Program, all in accordance with the Securities Exchange Act of 1934, as amended.

## EXHIBIT C

### SERIES A PURCHASE CONTRACT

Included in the transcript for the Series A Bonds as Item 12

----------------------

## EXHIBIT D

### SERIES B PURCHASE CONTRACT

Included in the transcript for the Series B Bonds as Item 12

----------------------

## EXHIBIT E

### SERIES A PRELIMINARY OFFICIAL STATEMENT

See the Preliminary Official Statement, dated February 28 2012, relating to the $1,500,000,000 Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2012 A, included in the transcript for the Series A Bonds as Item 16.

----------------------

## EXHIBIT F

### SERIES B PRELIMINARY OFFICIAL STATEMENT

See the Preliminary Official Statement, dated February 28, 2012, relating to the $400,000,000 Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2012 B, included in the transcript for the Series B Bonds as Item 16.

----------------------

## EXHIBIT G

### SERIES A OFFICIAL STATEMENT

See certified copy of the Official Statement, dated March 7, 2012, relating to the $2,318,190,000 Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2012 A, included in the transcript for the Series A Bonds as Item 17.

## EXHIBIT H

### SERIES B OFFICIAL STATEMENT

See certified copy of the Official Statement, dated March 7, 2012, relating to the $415,270,000 Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2012 B, included in the transcript for the Series B Bonds as Item 17.

## EXHIBIT I

### INSURANCE COMMITMENT

Included in the transcript for the Series A Bonds as Item 32.

*BOS46,892,896 3*