# EXHIBIT 3

**EXECUTION VERSION**

**COMMONWEALTH OF PUERTO RICO**

_____

**BOND RESOLUTION**

Adopted March 11, 2014

_____

Authorizing and Securing

$3,500,000,000
COMMONWEALTH OF PUERTO RICO
GENERAL OBLIGATION BONDS OF 2014, SERIES A

# TABLE OF CONTENTS

**Page**

Section 1:     Definitions. ................................................................................................................3
Section 2:     Interpretation ...........................................................................................................4
Section 3:     Authorization, Designation and Details of Bonds.............................................4
Section 4:     Redemption of Bonds..............................................................................................6
Section 5:     Notice of Redemption .............................................................................................6
Section 6:     Partial Redemption ...................................................................................................7
Section 7:     Effect of Calling for Redemption..........................................................................8
Section 8:     Payment of Bonds ...................................................................................................8
Section 9:     Execution, Issuance, Form and Delivery of Bonds...........................................8
Section 10:    Concerning the Registrar; Acceptance of Duties ..............................................9
Section 11:    Registrar Entitled to Indemnity ...........................................................................9
Section 12:    Registrar Not Liable for Failure of the Commonwealth to Act ...............9
Section 13:    Compensation and Indemnification of Registrar ..........................................10
Section 14:    Registrar May Be Bondholder..............................................................................10
Section 15:    Registrar Not Responsible for Recitals ..............................................................10
Section 16:    Certain Rights of Registrar ...................................................................................11
Section 17:    Exchange and Registration of Transfer of Bonds ..........................................11
Section 18:    Ownership of Bonds ..............................................................................................12
Section 19:    Pledge of Good Faith and Credit ........................................................................12
Section 20:    Action by Bondholders..........................................................................................12
Section 21:    Appointment of Escrow Agent ...........................................................................13
Section 22:    Deposit and Application of Moneys in Escrow Fund ....................................13
Section 23:    Approval of Escrow Deposit Agreement ..........................................................13
Section 24:    Approval of Purchase Contract ...........................................................................13
Section 25:    Award and Delivery of Bonds .............................................................................13
Section 26:    Deposit and Application of Moneys....................................................................13
Section 27:    Application of Remainder of Bond Proceeds ...................................................14
Section 28:    Notification of Refunded Bondholders .............................................................14
Section 29:    Authorization to Act ..............................................................................................14
Section 30:    Legal Opinion .........................................................................................................14
Section 31:    Preliminary Official Statement............................................................................14
Section 32:    Official Statement ...................................................................................................15
Section 33:    Continuing Disclosure...........................................................................................15
Section 34:    Amendments ...........................................................................................................17
Section 35:    Parties Interested Herein ......................................................................................18
Section 36:    Tax Covenant ..........................................................................................................18
Section 37:    Governing Law; Jurisdiction and Venue............................................................19
Section 38:    Waiver of Immunity...............................................................................................20
Section 39:    Payments Due on Non-Business Day..................................................................20
Section 40:    Severability of Invalid Provisions .......................................................................20
Section 41:    Effectiveness. ............................................................................................................2

Exhibit A – The Refunded Bonds
Exhibit B – Form of Bonds
Exhibit C – Purchase Contract
Exhibit D – Preliminary Official Statement
Exhibit E – Official Statement

**A RESOLUTION PROVIDING FOR THE ISSUANCE OF UP TO $3,500,000,000 COMMONWEALTH OF PUERTO RICO GENERAL OBLIGATION BONDS OF 2014, SERIES A; APPROVING A PURCHASE CONTRACT WITH THE UNDERWRITERS OF SAID BONDS; AWARDING SAID BONDS TO THE UNDERWRITERS THEREOF; APPOINTING AN ESCROW AGENT AND APPROVING AN ESCROW DEPOSIT AGREEMENT; AND DETERMINING AND PROVIDING FOR CERTAIN OTHER MATTERS IN CONNECTION THEREWITH.**

**WHEREAS**, by virtue of Act No. 33 of the Legislative Assembly of Puerto Rico, approved December 7, 1942, as amended ("Act No. 33"), Act No. 242-2011 of the Legislative Assembly of Puerto Rico, approved December 13, 2011 ("Act No. 242"), Act No. 45-2013 of the Legislative Assembly of Puerto Rico, approved June 30, 2013 ("Act No. 45"), and Act No. 34-2014 of the Legislative Assembly of Puerto Rico, approved March 4, 2014 ("Act No. 34" and together with Act No. 33, Act No. 242, and Act No. 45, the "Acts"), the Secretary of the Treasury (the "Secretary") of the Commonwealth of Puerto Rico (the "Commonwealth") is authorized to sell and issue at any one time or from time to time, upon resolution for that purpose and with the approval of the Governor of the Commonwealth (the "Governor"), bonds and bond anticipation notes of the Commonwealth in an aggregate amount not to exceed Three Billion Five Hundred Millions Dollars ($3,500,000,000), in order to (i) refinance principal and interest on any indebtedness or other obligations of the Commonwealth, including but not limited to any debt or obligation payable to Government Development Bank for Puerto Rico ("Development Bank") from budgetary appropriations approved by the Legislative Assembly, (ii) refinance principal and interest on any indebtedness incurred by any public corporation for the purpose of financing working capital of the Commonwealth, (iii) finance or refinance any obligations of the Commonwealth due under any interest rate swap agreements, basis swap agreements, interest rate capitation agreements, or debt service deposit agreements, including but not limited to any termination payments pursuant to such agreements, (iv) finance or refinance indebtedness or other obligations of the Puerto Rico Public Buildings Authority ("PBA"), (v) finance or refinance certain necessary public improvements identified in Act No. 242, (vi) finance or refinance working capital of the Commonwealth for Fiscal Year 2014 pursuant to Act No. 45, and (vii) refinance any bond issues or indebtedness of the Commonwealth pursuant to which its good faith, credit and taxing power are pledged pursuant to Act No. 33; and

**WHEREAS**, pursuant to Act No. 242, the Secretary, with the approval of the Governor, previously issued bond anticipation notes to Development Bank, currently outstanding in the aggregate principal amount of $221,850,921 (the "GDB BANs"), the proceeds of which have been used to finance and/or refinance on an interim basis a portion of the costs of certain necessary public improvements, until such time as bonds could be issued pursuant to Act No. 242; and

**WHEREAS**, pursuant to Act No. 45, the Secretary, with the approval of the Governor, previously issued notes to Development Bank, currently outstanding in the aggregate principal amount of $92,500,000 (the "GDB Notes"), the proceeds of which were applied in accordance with the provisions of Act No. 45; and

**WHEREAS**, pursuant to Act No. 33, the Secretary, with the approval of the Governor, previously issued public improvement refinancing notes to Development Bank, (i) currently outstanding in the aggregate principal amount of $215,936,841 ("Notes I"), the proceeds of which were used to finance monthly interest deposits to the Redemption Fund (as hereinafter defined) required during Fiscal Year 2013 with respect to outstanding public improvement bonds and public improvement refunding bonds of the Commonwealth (the "Outstanding GO Bonds"), (ii) currently outstanding in the aggregate principal amount of $516,090,251 ("Notes II"), the proceeds of which were used to finance monthly principal deposits required during Fiscal Year 2013 and certain monthly principal deposits required during Fiscal Year 2014, and certain monthly interest deposits required during Fiscal Year 2014 to the Redemption Fund with respect to the Outstanding GO Bonds, (iii) currently outstanding in the aggregate principal amount of $313,959,628 ("Notes III"), the proceeds of which were used to finance certain monthly interest deposits required to the Redemption Fund during Fiscal Year 2014 with respect to the Outstanding GO Bonds, and (iv) currently outstanding in the aggregate principal amount of $77,637,839 ("Notes IV," and together with Notes I, Notes II and Notes III, the "Refunded Notes"), the proceeds of which were used to finance certain monthly principal deposits to the Redemption Fund required during Fiscal Year 2014 with respect to the Outstanding GO Bonds, in each case, until such time as bonds could be issued pursuant to Act No. 33; and

**WHEREAS**, the Commonwealth has issued to Development Bank from time to time notes as evidence of borrowings used to fund the working capital needs of the Commowealth, which notes are outstanding under various lines of credit from and loan agreements with Development Bank in the aggregate principal amount of $234,274,074 (the "Working Capital Notes"); and

**WHEREAS**, pursuant to Act No. 91 of the Legislature of Puerto Rico, approved May 13, 2006, as amended, the Puerto Rico Sales Tax Financing Corporation ("COFINA") previously issued its bond anticipation notes (the "COFINA BANs"), currently outstanding in the aggregate principal amount of $330,300,000, the proceeds of which have been used to finance operational expenses of the Commonwealth for Fiscal Year 2013; and

**WHEREAS,** the Commonwealth has heretofore issued the public improvement refunding bonds set forth on **Exhibit A** hereto (collectively, the "Refunded Bonds"); and

**WHEREAS**, the Commonwealth has executed certain interest rate exchange agreements and confirmations thereunder relating to certain of the Refunded Bonds with Morgan Stanley Capital Services LLC, FMS Wertmanagement AöR, The Bank of New York Mellon, and Merrill Lynch Capital Services, Inc. (collectively, the "interest rate hedges"), in order, in part, to manage the Commonwealth's risk of interest rate changes with respect to the Refunded Bonds and other indebtedness of the Commonwealth; and

**WHEREAS**, PBA previously issued notes to Development Bank, (i) currently outstanding in the aggregate principal amount of $103,652,602 ("PBA Note I"), the proceeds of which were used to finance and/or refinance certain monthly interest deposits required during Fiscal Year 2013 with respect to certain outstanding obligations of PBA, and (ii) currently outstanding in the aggregate principal amount of $71,110,000 ("PBA Note II," and together with PBA Note I, the "PBA Notes"), the proceeds of which were used to finance and/or refinance

certain monthly principal deposits required during Fiscal Year 2013 with respect to certain outstanding obligations of PBA; and

**WHEREAS**, the Board of Directors of Development Bank has provided a report and recommendation to the Secretary and the Governor regarding the issuance and sale of bonds pursuant to the Act No. 34, including with respect to the proposed use of proceeds of such bonds and the terms and conditions of the sale of such bonds, as set forth in the Purchase Contract (as hereinafter defined); and

**WHEREAS,** the Secretary has determined, based in part on the recommendation of the Board of Directors of Development Bank, that it is desirable at this time to provide for the issuance of up to Three Billion Five Hundred Million Dollars ($3,500,000,000) total principal amount of general obligation bonds of the Commonwealth (the "Bonds") pursuant to the Acts, to (i) repay to Development Bank the GDB BANs, the GDB Notes, a portion of the Refunded Notes, a portion of the Working Capital Notes, and a portion of the PBA Notes, (ii) repay the COFINA BANs, (iii) refund the Refunded Bonds, (iv) pay certain fees in connection with the termination of the interest rate hedges, (v) fund interest on a portion of the Bonds through July 1, 2016, and (vi) pay expenses related to the issuance and sale of the Bonds; and

**WHEREAS,** the underwriters named in the Purchase Contract (hereinafter defined) have agreed to purchase the Bonds in an aggregate principal amount of $3,500,000,000, on the terms and conditions contained in the Purchase Contract relating to the Bonds, dated March 11, 2014 (the "Purchase Contract"), by and among the Commonwealth and the respective underwriters named therein;

**NOW THEREFORE, I, MELBA ACOSTA-FEBO**, Secretary of the Treasury of the Commonwealth of Puerto Rico, DO HEREBY RESOLVE AND DETERMINE as follows:

Section 1:    Definitions.  Capitalized words and terms defined in this Section, unless a different meaning clearly appears from the context, for all purposes of this Resolution and any resolution supplemental hereto, shall have the respective meanings specified in this Section. Words defined in the preamble of this Resolution and not otherwise defined in this Section shall have the respective meanings given to such words in said preamble.  Capitalized words and terms which are not defined in this Section or in said preamble shall have the respective meanings specified in the Purchase Contract, unless a different meaning clearly appears from the context.

"Amortization Requirement" as applied to any term bonds for any fiscal year, means the principal amount fixed or computed for such fiscal year as set forth in this Resolution for the retirement of such term bonds by purchase or redemption.

"Bondholder," "Holder," "Holder of Bonds" or "Owner" or any similar term, when used with reference to a Bond, means any person who shall be the registered owner thereof.

"Business Day" means a day when the banks located in The City of New York or the Municipality of San Juan, Puerto Rico are not required or authorized to remain closed and when the New York Stock Exchange is not closed.

3

"DTC" means The Depository Trust Company, New York, New York, a limited purpose trust company organized under the laws of the State of New York, in its capacity as securities depository for the Bonds, or any successor depository for any Bonds.

"Electronic Means" means telecopy, facsimile transmission, email transmission or other similar electronic means of communication providing evidence of transmission, including a telephone communication confirmed by any other method set forth in this definition.

"Person" shall mean any individual, partnership, association, corporation, joint venture, joint-stock company, unincorporated organization or government or any agency or political subdivision thereof.

"Puerto Rican Federal Relations Act" means the Act of the Congress of the United States entitled: "An Act to provide a civil government for Puerto Rico, and for other purposes," approved March 2, 1917, as amended, as continued in effect by Public Law 600, approved July 3, 1950.

"Registrar" means Banco Popular de Puerto Rico, in the Municipality of San Juan, Puerto Rico.

"Resolution" means this resolution as the same may be supplemented from time to time as herein permitted.

Section 2:    Interpretation.  Words of the masculine gender are deemed and construed to include correlative words of the feminine and neuter genders.  Words importing the singular number include the plural and vice versa.

(a)    The terms "herein", "hereunder", "hereby", "hereto", "hereof" and any similar terms refer to this Resolution; and the term "heretofore" means before, and the term "hereafter" means after the effective date of this Resolution.

(b)    Sections and subsections mentioned by number and letter only are the respective Sections and subsections of this Resolution so numbered or lettered.

(c)    Whenever any time of day or particular hour is specified herein, such time or hour shall be determined on the basis of Eastern Standard Time or Eastern Daylight Savings Time, whichever is then in effect in New York, New York.

Section 3:    Authorization, Designation and Details of Bonds.

(a)    For the purpose of providing funds to (i) repay to Development Bank the GDB BANs, the GDB Notes, a portion of the the Refunded Notes and the Working Capital Notes, and a portion of the PBA Notes, (ii) repay the COFINA BANs, (iii) refund the Refunded Bonds, (iv) pay certain termination payments due under the interest rate hedges, either through reimbursement to the Commonwealth or repayment of lines of credit used to finance such termination payments, (v) fund interest on a portion of the Bonds through July 1, 2016, and (vi) pay expenses related to the issuance and sale of the Bonds, there shall be issued at this time under the authority of the Puerto Rican Federal Relations Act and the Constitution and laws of

4

the Commonwealth, including the Acts, the Bonds in the aggregate principal amount of Three Billion Five Hundred Million Dollars ($3,500,000,000).   The Bonds shall be designated "Commonwealth of Puerto Rico General Obligation Bonds of 2014, Series A," shall be dated their date of delivery, shall be number from R-1 upwards, and shall be issuable as registered bonds without coupons in the minimum denomination of $100,000, with integral multiples of $5,000 in excess thereof; provided, however, that upon receipt by the Registrar from the Secretary of written evidence from any of Fitch Ratings, Moody's Investors Service, or Standard & Poor's Rating Services that the Bonds have been rated "BBB-," "Baa3," or "BBB-," or higher, respectively, then the minimum authorized denomination of the Bonds shall be reduced to $5,000.

The Bonds shall mature on July 1, 2035, and shall bear interest at the rate of 8% per annum.

The Amortization Requirements for the Bonds are as set forth below.

| Year (July 1) | Amortization Requirement | Year (July 1) | Amortization Requirement |
|---|---|---|---|
| 2021 | $  15,900,000 | 2029 | $245,900,000 |
| 2022 | 74,000,000 | 2030 | 263,700,000 |
| 2023 | 158,200,000 | 2031 | 299,200,000 |
| 2024 | 176,200,000 | 2032 | 427,400,000 |
| 2025 | 137,900,000 | 2033 | 360,000,000 |
| 2026 | 88,900,000 | 2034 | 458,700,000 |
| 2027 | 177,200,000 | 2035[*] | 428,700,000 |
| 2028 | 188,100,000 | | |

_____
[*] Maturity

(b)    Interest on the Bonds shall be payable on January 1 and July 1 in each year, commencing on July 1, 2014.  Each Bond shall bear interest from the interest payment date next preceding the date on which it is authenticated, unless authenticated on an interest payment date, in which case it shall bear interest from such interest payment date, or, unless authenticated prior to the first interest payment date, in which case it shall bear interest from its date; provided, however, that if at the time of authentication of any such Bond interest is in default, such Bond shall bear interest from the date to which interest shall have been paid or duly provided for. Interest on the Bonds shall be computed on the basis of a 360-day year of twelve 30-day months.

(c)    Book-Entry Only Bonds. The Bonds shall be initially issued through the book-entry system maintained by DTC, which will act as Securities Depository for the Bonds, and the Bonds will be initially registered in the name of DTC or its nominee.  Notwithstanding any other provisions of this Resolution to the contrary, so long as the Bonds are held in DTC's book-entry system and registered in the name of DTC or its nominee, all payments with respect to principal of and interest on the Bonds and all notices with respect to the Bonds shall be made and given, respectively, to DTC as provided in the Blanket Issuer Letter of Representations, dated May 4, 1995 (the "DTC Agreement"), by and between the Commonwealth and DTC.   If DTC

5

discontinues providing its services as Securities Depository with respect to the Bonds, and the Commonwealth decides no longer to use the services of a Securities Depository, definitive Bonds will be executed, authenticated and delivered to the beneficial owners thereof.  If the Commonwealth determines not to continue use of the system of book-entry transfers through DTC (or a successor Securities Depository) with respect to the Bonds, definitive Bonds will be executed, authenticated and delivered to the beneficial owners thereof.

Section 4:      Redemption of Bonds.  The Bonds are subject to redemption prior to maturity as follows:

(a)      Optional Redemption.  The Bonds shall be subject to redemption prior to maturity, at the option of the Secretary, from any moneys that may be available for that purpose, at any time on or after July 1, 2020, either in whole or in part (and if in part, in such order of annual Amortization Requirements as directed by the Secretary), on any Business Day, at a redemption price equal to the principal amount of the Bonds to be redeemed, without premium, together with accrued interest to the date fixed for redemption.

(b)      Mandatory Redemption.  The Secretary shall, on or before July 1, 2021, and on or before each July 1 thereafter in respect of each fiscal year for which there is an Amortization Requirement for the Bonds as set forth above, apply to the retirement, by purchase or redemption, of such Bonds an amount at least equal to the Amortization Requirement for such Bonds for the immediately preceding fiscal year.  If the Secretary elects to purchase the Bonds, the Secretary shall endeavor to purchase such Bonds or portions thereof secured hereby and then outstanding, whether or not such Bonds or portions thereof shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, such price not to exceed the principal of such Bonds.

The Secretary shall call for redemption on each July 1 on which Bonds are subject to redemption in accordance with this paragraph (b), a principal amount of Bonds equal to the aggregate principal amount of the Bonds to be redeemed pursuant to the Amortization Requirements therefor, less the aggregate principal amount of the Bonds, if any, purchased by the Secretary in accordance with this paragraph (b) since the preceding July 1.

If the principal amount of Bonds so retired on or before July 1 of any year exceeds the Amortization Requirement for the Bonds for such date, the Amortization Requirements for the Bonds for any succeeding date or dates may, at the option of the Secretary, be decreased by the amount of such excess.

No such purchase shall be made by the Secretary within the period of 35 days immediately preceding any July 1 on which the Bonds are subject to call for redemption under the provisions of this paragraph (b), except from moneys other than the moneys set aside or deposited for the redemption of the Bonds.

Section 5:      Notice of Redemption.  At least 20 days prior to the date upon which any such redemption is to be made, a notice of such redemption, signed by the Registrar, designating the redemption date and the principal amount and accrued interest on the Bonds to be paid and, if less than all of the Bonds then outstanding shall be called for redemption, the particular Bonds or

portions thereof to be redeemed, shall be given by registered or certified mail, postage prepaid, return receipt requested to the Owners of the Bonds or portions thereof to be redeemed, at their addresses as they appear on the Bond Register (hereinafter provided for).  Any defect in or the failure to mail such notice to the Owner of any Bond designated for redemption shall not affect the validity of the proceedings for the redemption of any other Bonds.  In case any Bond is to be redeemed in part only, the notice of redemption which relates to such Bond shall state also that on or after the redemption date, upon presentation and surrender of such Bond at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico, a new Bond or Bonds in authorized denominations and in an aggregate principal amount equal to the unredeemed portion of such Bond will be issued.  All Bonds so presented and surrendered shall be cancelled by the Registrar.

Any notice of optional redemption may state that the redemption is conditional and, if so, the notice shall state what the conditions are.  If at the time of giving a notice of redemption there shall not have been deposited with the Registrar moneys sufficient to redeem the Bonds called for redemption, such notice shall state that it subject to the deposit of the redemption moneys with the Registrar not later that the opening of business on the redemption date, and such notice and the corresponding optional redemption shall be of no effect unless such moneys are so deposited.  Any conditional notice of optional redemption may be rescinded by notice given to the Registrar by the Secretary by Electronic Means no later than two Business Days prior to the date specified for redemption.  The Registrar shall give notice of such rescission as soon thereafter as practicable in the same manner, and to the same persons, as notice of such redemption was given pursuant to this Resolution.

Section 6:    Partial Redemption.  If less than all of the Bonds are to be redeemed or paid prior to maturity, the specific Amortization Requirements to be redeemed shall be selected by the Commonwealth, and within such Amortization Requirement, (a) if DTC is acting as securities depository for the Bonds at the time of such redemption, any partial redemption of the Bonds shall be effected by DTC on a pro rata basis in accordance with DTC's rules and procedures and neither the Commonwealth nor the Registrar shall have any responsibility to ensure that DTC properly selects such Bonds for redemption, and (b) if DTC is not acting as securities depository for the Bonds at the time of such redemption, any redemption of less than all of the Bonds shall be effected by the Registrar among the registered owners of the Bonds on a pro-rata basis, provided that that in no event shall any partial redemption reduce the remaining outstanding principal amount of any Bond to below $100,000 (or $5,000, if the conditions set forth in Section 3(a) have been met for the reduction in the minimum authorizied denomination of the Bonds).

In case part but not all of an outstanding Bond shall be selected for redemption, the Owner thereof or such Owner's attorney or legal representative shall present and surrender such Bond for payment of the principal amount thereof so called for redemption at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico.  Thereupon, the Commonwealth shall execute in the manner provided in Section 9 of this Resolution and the Registrar shall authenticate and deliver to or upon the order of such Owner or such Owner's legal representative, without charge therefor, for the unredeemed portion of the Bond so surrendered, a Bond or Bonds, at the option of such Owner or such Owner's attorney or legal representative, of

the same maturity, bearing interest at the same rate, of authorized denominations and in principal amount equal to the unredeemed portion of such Bond so surrendered.

Section 7:    Effect of Calling for Redemption.   Notice having been given in the manner and under the conditions hereinabove provided, the Bonds or portions thereof so called for redemption shall, on the redemption date designated in such notice, become and be due and payable at the principal amount, redemption premium, if any, and accrued interest provided for redemption of such Bonds on such date.  On the date so designated for redemption, notice having been given and moneys for payment of the principal of and accrued interest on the Bonds so called for redemption being held by the Registrar, interest on the Bonds or portions thereof so called for redemption shall cease to accrue.  Bonds or portions thereof which have been duly called for redemption under the provisions of this Resolution, or with respect to which irrevocable instructions to call for redemption or to pay at or prior to maturity have been given to the Registrar in form satisfactory to it, and for the payment of the principal of and the accrued interest on which, sufficient available moneys, or investments permitted by law which investments shall not contain provisions permitting redemption thereof at the option of the issuer, the principal of and interest on which when due, and without any reinvestment thereof, will provide sufficient moneys, shall be held in trust for the Owners of the Bonds or portions thereof to be paid or redeemed, shall not be deemed to be outstanding under this Resolution, and the Owners thereof shall have no rights in respect thereof except to receive payment of the principal of and the accrued interest on such Bonds or portions thereof and in the case of a Bond to be redeemed in part only, to receive a Bond for any unredeemed portion thereof as herein provided.

Section 8:    Payment of Bonds.  Principal of the Bonds is payable only to the Owner or its registered assigns at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico, upon the presentation and surrender of such Bond, in any coin or currency of the United States of America which, at the date of payment thereof, is legal tender for the payment of public and private debts.  Payment of the interest on any Bond shall be made to the person appearing on the registration books of the Commonwealth hereinafter mentioned as the Owner thereof (or the previous Bond or Bonds evidencing the same debt as that evidenced by such Bond) at the close of business on the record rate for such interest, which shall be the June 15 or December 15 (whether or not a Business Day) next preceding the applicable interest payment date in respect of the Bonds, such interest to be paid in like coin or currency by check mailed to such person at his address as it appears on such registration books, all as provided in this Resolution.

Section 9:    Execution, Issuance, Form and Delivery of Bonds.  The Bonds authorized by this Resolution shall bear the manual or facsimile signatures of the Governor and the Secretary, and the official seal of the Commonwealth, or a facsimile thereof, shall be imprinted upon each of the Bonds and attested to by the manual or facsimile signature of the Secretary of State of Puerto Rico.

In case any officer of the Commonwealth whose signature or whose facsimile signature shall appear on any Bonds shall cease to be such officer before the delivery of such Bonds, such signature or such facsimile signature shall nevertheless be valid and sufficient for all purposes the same as if he had remained in office until such delivery, and also any Bond may be executed

by such persons as at the actual time of the execution of such Bond shall be the proper officers to sign such Bond although at the date of such Bond such persons may not have been such officers.

The Bonds shall be executed substantially in the form and manner set forth in **Exhibit B** hereto and delivered to the Registrar for authentication.

When the Bonds shall have been executed and authenticated as required by this Resolution, the Registrar shall deliver the Bonds as directed by the Secretary but only upon receipt of written notice from the Secretary of receipt of the purchase price of the Bonds. The Registrar shall be entitled to rely conclusively upon such notice as to the amount of such purchase price.

The Secretary shall apply the proceeds received from the sale of the Bonds in accordance with the provisions of Sections 26 and 27 hereof.

No Bond shall be entitled to any benefit under this Resolution or be valid or become obligatory for any purpose, unless there appears on such Bond a certificate of authentication substantially in the form provided in **Exhibit B** hereto, executed by the Registrar, and such executed certificate upon any Bond shall be conclusive evidence that such Bond has been duly authenticated and delivered hereunder. The Registrar's certificate of authentication on any Bond shall be deemed to have been duly executed if signed by an authorized officer of the Registrar, but it shall not be necessary that the same officer sign the certificate of authentication on all of the Bonds that may be issued hereunder at any one time.

Section 10:     Concerning the Registrar; Acceptance of Duties. Banco Popular de Puerto Rico, in the Municipality of San Juan, Puerto Rico is hereby appointed as Registrar under this Resolution. Prior to the issuance of the Bonds under the provisions of this Resolution, the Secretary shall obtain from a duly authorized officer of said bank a written acceptance of the duties, obligations and trusts imposed upon said bank by this Resolution.

The Registrar undertakes to perform such duties and only such duties as are specifically set forth in this Resolution, and no implied covenants or obligations shall be read into this Resolution against the Registrar.

Section 11:     Registrar Entitled to Indemnity. The Registrar shall be under no obligation to do anything in its judgment proper to be done by it as such Registrar without indemnity, and in such case the Commonwealth shall reimburse the Registrar for all reasonable costs and expenses, outlays and counsel fees and other reasonable disbursements properly incurred in connection therewith.

Section 12:     Registrar Not Liable for Failure of the Commonwealth to Act. The Registrar shall not be liable or responsible because of the failure of the Commonwealth or of any of its employees or agents to make any collections or deposits or to perform any act herein required of the Commonwealth or because of the loss of any moneys arising through the insolvency or the act or default or omission of any other depositary in which such moneys shall have been deposited under the provisions of this Resolution. The Registrar shall not be responsible for the application of any moneys deposited with it and paid out, withdrawn or transferred hereunder if such application, payment, withdrawal or transfer shall be made in

accordance with the provisions of this Resolution. The immunities and exemptions from liability of the Registrar hereunder shall extend to its directors, officers, employees and agents.

None of the provisions of this Resolution shall be construed to relieve the Registrar from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

(a)     the Registrar shall not be liable for any error of judgment made in good faith by any one of its officers, unless it shall be established that the Registrar was negligent in ascertaining the pertinent facts;

(b)     no provision of this Resolution shall require the Registrar to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it; and

(c)     this paragraph shall not be construed to limit the effect of Sections 11 and 13 hereof.

Section 13:     <u>Compensation and Indemnification of Registrar</u>. The Commonwealth shall pay to the Registrar compensation as agreed upon between the Registrar and the Commonwealth for all services performed by it hereunder (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust) and also all its reasonable expenses, disbursements and advances and those of its attorneys, agents and employees incurred in and about the administration and execution of the trusts hereby created and the performance of its powers and duties hereunder, and, subject to the provisions of Section 12 hereof, the Commonwealth shall indemnify and save the Registrar harmless against any loss, liability or expenses which it may incur without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of the trusts hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise and performance of its powers and duties hereunder.

Section 14:     <u>Registrar May Be Bondholder</u>. The Registrar, and its directors, officers, employees or agents, may buy, sell, own, hold and deal in any of the Bonds, may engage, as principal or agent, or be interested, in any financial or other transaction with the Commonwealth, may maintain any and all other general banking and business relations with the Commonwealth with like effect and in the same manner as if the Registrar were not Registrar under this Resolution, and may act as depositary, trustee or agent for any committee or body of holders of the Bonds issued under and secured by this Resolution or other obligations of the Commonwealth with like effect and in the same manner as if the Registrar were not Registrar under this Resolution; and no implied covenant shall be read into this Resolution against the Registrar in respect of such matters.

Section 15:     <u>Registrar Not Responsible for Recitals</u>. The recitals contained herein and in the Bonds, except the certificate of authentication endorsed thereon, shall be taken as the statements of the Commonwealth, and the Registrar assumes no responsibility for their

correctness.  The Registrar makes no representations as to the validity or sufficiency of this Resolution or of the Bonds.

Section 16:    Certain Rights of Registrar.  The Registrar may rely and shall be protected in acting or refraining from acting upon any resolution, order, notice, request, direction, consent, waiver, certificate, statement, instrument, requisition, bond or other paper or document believed by it to be genuine and to have been adopted or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of this Resolution, or upon the written advice of any attorney, accountant or other expert believed by the Registrar to be qualified in relation to the subject matter, and the Registrar shall be under no duty to make any investigation or inquiry as to any statements contained or matters referred to in any such document.  Except as expressly provided herein, the Registrar shall not be under any obligation to see to the recording or filing of this Resolution or any other document or otherwise to the giving to any person of notice of the provisions hereof or thereof.

The Registrar may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys, and the Registrar shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

Section 17:    Exchange and Registration of Transfer of Bonds.  The Commonwealth shall cause books (collectively, the "Bond Register") for the exchange and for the registration of transfers of Bonds as provided in this Resolution to be kept at the corporate trust office of the Registrar in the Municipality of San Juan, Puerto Rico.

Bonds, upon surrender thereof to the Registrar, together with an assignment duly executed by the Owner or such Owner's attorney or legal representative in such form as shall be satisfactory to the Registrar, may, at the option of the Owner thereof, be exchanged for an equal aggregate principal amount of Bonds of the same maturity, of any denomination or denominations authorized by this Resolution, and bearing interest at the same rate.

The transfer of any Bond may be registered upon the Bond Register only upon surrender thereof to the Registrar together with an assignment duly executed by the Owner or such Owner's attorney or legal representative in such form as shall be satisfactory to the Registrar.  Upon any such registration of transfer the Commonwealth shall execute in the manner provided by Section 9 of this Resolution and the Registrar shall authenticate and deliver in exchange for such Bond a new Bond or Bonds registered in the name of the transferee or transferees, of any denomination or denominations authorized by this Resolution, in an aggregate principal amount equal to the outstanding principal amount of such Bond.

In all cases in which Bonds shall be exchanged or the transfer of Bonds shall be registered hereunder, the Commonwealth shall execute in the manner provided by Section 9 of this Resolution and the Registrar shall authenticate and deliver at the earliest practicable time Bonds in accordance with the provisions of this Resolution.  All Bonds surrendered in any such exchange or registration of transfer shall forthwith be cancelled by the Registrar.  The Registrar may make a charge for every such exchange or registration of transfer of Bonds sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such

exchange or registration of transfer, but no other charge shall be made to any Bondholder for the privilege of exchanging or registering the transfer of Bonds under the provisions of this Resolution.  The Registrar shall not be required to make any such exchange or registration of transfer of Bonds during the 15 days immediately preceding the date of mailing of notice of redemption, or after such Bond or any portion thereof has been selected for redemption.

Section 18:     Ownership of Bonds.  As to any Bond, the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes and payment of or on account of the principal of or interest on any such Bond shall be made only to or upon the order of the Owner thereof or such Owner's registered assigns or legal representative, and neither the Commonwealth nor the Registrar shall be affected by any notice to the contrary.

Section 19:     Pledge of Good Faith and Credit; Bonds Constitute Public Debt.  The good faith, credit and taxing power of the Commonwealth are irrevocably pledged for the prompt payment of the principal of and the interest on the Bonds authorized by this Resolution.  The Bonds constitute public debt, as described in and for the purposes of Section 2 and Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico (the "Constitution").  The Secretary is authorized and directed to pay the principal of and the interest on the Bonds as the same shall fall due from any funds in the Treasury of the Commonwealth available for such purpose in the fiscal year for which said payment is required.  Such funds in the Treasury of the Commonwealth available for such purpose shall be deposited by the Secretary in trust with the Registrar in the amounts required for payment of the interest on any Bonds by the Registrar on any interest payment date and the principal of any Bonds by the Registrar on any principal payment (including any redemption) date.

Section 20:     Action by Bondholders.   In the event that the Commonwealth does not make any payment of principal of or interest on the Bonds when due in accordance with the provisions of this Resolution, a Bondholder may:

(a) bring an action against the Secretary, in accordance with the provisions of Section 2 of Article VI of the Constitution, to compel the Secretary of the Treasury to apply available Commonwealth resources to the payment of the Bonds, as constituting public debt of the Commonwealth, in accordance with the provisions of Section 8 of Article VI of the Constitution; and

(b) seek any other remedies that are available under applicable law or in equity to any other holder of a Commonwealth bond to which its good faith, credit and taxing power are pledged.

The remedies set forth in this Section 20 are the only remedies available to a Bondholder in the event that the Commonwealth does not make any payment of principal of or interest on the Bonds when due in accordance with the provisions of this Resolution.  The principal of the Bonds is not subject to acceleration in the event of any such non-payment.

Section 21:   <u>Appointment of Escrow Agent</u>.   Banco Popular de Puerto Rico, San Juan, Puerto Rico is appointed as Escrow Agent under the terms of the Escrow Deposit Agreement, hereinafter mentioned.

Section 22:   <u>Deposit and Application of Moneys in Escrow Fund</u>.   The proceeds of the sale of the Bonds in the amounts set forth in the Escrow Deposit Agreement shall be transferred to the Escrow Agent on the date of delivery of the Bonds for deposit to the credit of the Escrow Fund (as defined in the Escrow Deposit Agreement), in accordance with the provisions of the Escrow Deposit Agreement.   Such proceeds shall be held and applied as provided in the Escrow Deposit Agreement.

Section 23:   <u>Approval of Escrow Deposit Agreement</u>.   The execution and delivery by me or the President or any Executive Vice President of Development Bank, as agent of the Commonwealth, of an escrow deposit agreement by and between the Commonwealth and the Escrow Agent with respect to those Refunded Bonds that will not be redeemed on the date of issuance of the Bonds are hereby authorized, and said escrow deposit agreement (the "<u>Escrow Deposit Agreement</u>") shall be in form and substance acceptable to the person executing the same, his or her execution of the Escrow Deposit Agreement to be conclusive evidence of any such approval.

Section 24:   <u>Approval of Purchase Contract</u>. The form of the Purchase Contract presented to me this day and attached hereto as **Exhibit C** is hereby approved.   The Purchase Contract shall be executed and delivered by me substantially in the form of **Exhibit C**, with such changes as I determine to be necessary or appropriate and in the best interest of the Commonwealth, such execution and delivery to be conclusive evidence of my approval of such changes.

Section 25:   <u>Award and Delivery of Bonds</u>.   The offer submitted by Barclays Capital, as the representative of the underwriters named in the Purchase Contract (the "<u>Underwriters</u>"), presented to me on the date hereof offering to purchase the Bonds at an aggregate purchase price equal to $3,226,869,539.33 (representing the par amount of such Bonds ($3,500,000,000), less original issue discount of $245,000,000, less underwriters' discount of $28,130,460.67) without accrued interest, is hereby accepted, and such Bonds are hereby awarded to the Underwriters (which underwriters have been recommended by management and approved by the Board of Directors of Development Bank), subject to the terms and conditions of the Purchase Contract.

Section 26:   <u>Deposit and Application of Moneys</u>.   The proceeds of the sale of the Bonds shall be applied as follows: a portion of the proceeds of the Bonds shall be deposited as set forth in Section 22 and the Escrow Deposit Agreement and used to refund the Refunded Bonds identified therein, a portion of such proceeds shall be deposited to the Commonwealth Debt Redemption Fund (formerly, the Special Fund for the Amortization and Redemption of General Obligations Evidenced by Bonds and Promissory Notes) (the "<u>Redemption Fund</u>") and used to pay a portion of the interest due during Fiscal Years 2014, 2015 and 2016 on the Bonds, a portion of the proceeds of the Bonds shall be applied to refund certain of the Refunded Bonds on the date of issuance of the Bonds, a portion of the proceeds of the Bonds shall be applied to repay to Development Bank the GDB BANs, the GDB Notes, a portion of the Refunded Notes and the Working Capital Notes, and a portion of the PBA Notes, and a portion of the proceeds of

13

the Bonds shall be applied to pay certain fees in connection with the termination of the interest rate hedges, in each case, as set forth in one or more certificates of the Secretary filed on or before the date of delivery of the Bonds with the Registrar.

Section 27:    Application of Remainder of Bond Proceeds. The remainder of the proceeds from the sale of the Bonds not applied as specified in Section 26 above shall be applied to the payment of the expenses related to the issuance and sale of the Bonds as may be set forth in one or more certificates signed by the Secretary and filed with the Registrar and Development Bank upon or after the issuance of the Bonds.

Section 28:    Notification of Refunded Bondholders.  The Secretary shall notify or cause to be notified, as applicable, the Owners of the Refunded Bonds and the COFINA BANs to be repaid or redeemed and to take all other steps necessary for said repayment or redemption, as provided in and in accordance with the applicable provisions of the resolutions authorizing the the Refunded Bonds and the COFINA BANs, and in accordance with the provisions of the Escrow Deposit Agreement with respect to the Refunded Bonds identified therein.

Section 29:    Authorization to Act.  The Secretary, the Registrar, and the officers and agents of the Commonwealth, the Registrar, and Development Bank, in its capacity as Fiscal Agent for the Commonwealth, are hereby authorized and directed to do all acts and things required of or deemed advisable by them, including, without limitation, the execution and delivery of any other agreements, instruments and certificates, required or deemed advisable for the full, punctual and complete performance of all the terms, covenants, provisions and agreements contained in the Bonds, this Resolution, the resolutions authorizing the issuance of the Refunded Bonds, the GDB BANs, the GDB Notes, the Refunded Notes, the Working Capital Notes, the PBA Notes, the COFINA BANs, the Escrow Deposit Agreement, and any other documents executed and delivered in connection with any of the foregoing.

Section 30:    Legal Opinion. In the event any Bonds are no longer registered in the name of a Securities Depository or its nominee, there shall be printed on the reverse of each such Bond the legal opinion of Greenberg Traurig, LLP, Bond Counsel to the Commonwealth, with respect to the validity of such Bonds, and immediately following such legal opinion a certificate signed with the facsimile signature of the Secretary of State of Puerto Rico substantially as follows:

"I HEREBY CERTIFY that the foregoing is a true and correct copy of the legal opinion upon the bonds therein described which was manually signed by Greenberg Traurig, LLP, Boston, Massachusetts, and was dated the date of delivery of and payment for said bonds.

[Facsimile signature]

Secretary of State of Puerto Rico"

Section 31:    Preliminary Official Statement. The Preliminary Official Statement of the Commonwealth, dated March 6, 2014, as supplemented by the Supplement to Preliminary Offical Statement, dated March 10, 2014 (together, the "Preliminary Official Statement"), relating to the Bonds in the form presented to me this day and attached hereto as **Exhibit D**, is

14

hereby approved and the distribution and use of said Preliminary Official Statement by the Underwriters in connection with the offering of said Bonds is hereby in all respects ratified, confirmed and approved.

Section 32:    Official Statement.  The Official Statement, dated March 11, 2014, of the Commonwealth relating to the issuance and sale of the Bonds, in the form presented to me, or to the President or any Executive Vice President of Development Bank acting as my agent on the date of the adoption of this Resolution, and attached hereto as **Exhibit E**, is hereby approved with such appropriate changes, insertions and omissions as may be approved by me as evidenced by my signing said Official Statement, and the Underwriters are hereby authorized to distribute said Official Statement in connection with the offering and sale of said Bonds.

Section 33:    Continuing Disclosure.

(a)    In accordance with the requirements of Rule 15c2-12, as amended (the "Rule"), promulgated by the Securities and Exchange Commission (the "Commission"), the Commonwealth hereby covenants for the benefit of the persons who from time to time are the owners of the Bonds for federal income tax purposes (collectively, the "beneficial owners"):

(i)    to file, within 305 days after the end of each fiscal year, commencing with the fiscal year ended June 30, 2013, with the Municipal Securities Rulemaking Board (the "MSRB") through its Electronic Municipal Market Access system ("EMMA"), core financial information and operating data for the prior fiscal year, including (i) the Commonwealth's audited financial statements, prepared in accordance with generally accepted accounting principles in effect from time to time, and (ii) material historical quantitative data (including financial information and operating data) on the Commonwealth and revenues, expenditures, financial operations and indebtedness generally found in the Official Statement; and

(ii)    to file, in a timely manner, not in excess of 10 business days after the occurrence of the event, with the MSRB through EMMA, notice of the occurrence of any of the following events with respect to the Bonds:

(A)    principal and interest payment delinquencies;

(B)    non-payment related defaults, if material;

(C)    unscheduled draws on debt service reserves reflecting financial difficulties;

(D)    unscheduled draws on credit enhancements reflecting financial difficulties;

(E)    substitution of credit or liquidity providers, or their failure to perform;

(F)    adverse tax opinions, the issuance by the IRS of proposed or final determinations of taxability, Notices of Proposed Issue (IRS Form 5701-TEB) or

15

other material notices or determinations with respect to the tax status of the Bonds, or other material events affecting the tax status of the Bonds;

(G)     modifications to rights of the holders (including beneficial owners) of the Bonds, if material;

(H)     Bond calls, if material;

(I)     defeasances;

(J)     release, substitution, or sale of property securing repayment of the Bonds, if material;

(K)     rating changes;

(L)     tender offers;

(M)     bankruptcy, insolvency, receivership, or similar proceeding of the Commonwealth;

(N)     the consummation of a merger, consolidation or acquisition involving the Commonwealth or the sale of substantially all of the assets of the Commonwealth, other than in the ordinary course of business, the entry into a definitive agreement to undertake such action or the termination of a definitive agreement relating to any such actions, other than pursuant to its terms, if material; and

(O)     the appointment of a successor or additional trustee, or the change of name of a trustee, if material.

Unless otherwise required by law, all notices, documents and information provided to the MSRB shall be provided in electronic format as prescribed by the MSRB and shall be accompanied by identifying information as prescribed by the MSRB.

The Commonwealth will also covenant to file in a timely manner with the MSRB through EMMA, notice of a failure to provide the required annual financial information on or before the specified period.

The Commonwealth does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Bonds, unless the Commonwealth applies for or participates in obtaining the enhancement.

The Commonwealth does not undertake to provide the above-described event notice of a mandatory scheduled redemption, not otherwise contingent upon the occurrence of an event, if the terms, dates and amounts of redemption are set forth in detail in the Official Statement, the only open issue is which Bonds will be redeemed in the case of a redemption of less than all of the Bonds of a maturity, and notice of redemption is given in accordance with the terms of this Resolution and the applicable Bonds being redeemed.

16

The Commonwealth may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the Commonwealth, such other events are material with respect to the Bonds, but the Commonwealth does not undertake to provide any such notice of the occurrence of any event except those events listed above.

The Commonwealth acknowledges that its undertaking pursuant to the Rule is intended to be for the benefit of the beneficial owners of the Bonds, and shall be enforceable by any such beneficial owners, provided that the right to enforce the provisions of its undertaking shall be limited to a right to obtain specific performance of the Commonwealth's obligations hereunder.

(b)     No beneficial owner may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of the foregoing covenant (the "Covenant") or for any remedy for breach thereof, unless such beneficial owner shall have filed with the Commonwealth written notice of any request to cure such breach, and the Commonwealth shall have refused to comply within a reasonable time.  Notwithstanding the provisions of Section 37(b) hereof, all Proceedings shall be instituted only in a Commonwealth court located in the Municipality of San Juan for the equal benefit of all beneficial owners of the outstanding Bonds benefited by the Covenant, and no remedy shall be sought or granted other than specific performance of the Covenant at issue.

(c)     Notwithstanding the provisions of Section 34 hereof, the Covenant may only be amended if:

(i)     the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the Commonwealth, or type of business conducted; the Covenant, as amended, would have complied with the requirements of the Rule at the time of award of the Bonds, after taking into account any amendments or change in circumstances; and the amendment does not materially impair the interest of beneficial owners, as determined by parties unaffiliated with the Commonwealth; or

(ii)     all or any part of the Rule, as interpreted by the staff of the Commission at the date of the adoption of such Rule, ceases to be in effect for any reason, and the Commonwealth elects that the Covenant shall be deemed amended accordingly.

The Commonwealth further agrees in conjunction with any such amendment that the annual financial information containing the amended operating data or financial information will explain, in narrative form, the reasons for the amendment and the impact of the change in the type of operating data or financial information being provided.

(d)     Any assertion of beneficial ownership must be filed, with full documentary support, as part of the written request described above.

Section 34:     Amendments. Subject to the limitations contained in Section 33 hereof, without the consent of any Bondholders, the Secretary, with the approval of the Governor, may, from time to time and at any time, adopt such resolutions supplemental hereto as shall not be

inconsistent with the terms and provisions hereof (which supplemental resolutions shall thereafter form a part hereof):

(a)     to cure any ambiguity or formal defect or omission to correct or supplement any provision herein which may be inconsistent with any other provision herein or to make any other provisions with respect to matters or questions arising under this Resolution which may not be inconsistent with the provisions of this Resolution, provided such action shall not adversely affect the interests of the Holders of the Bonds, or to correct any inconsistent provisions or errors in this Resolution; or

(b)     to modify, amend or supplement this Resolution or any supplement or amendment hereto in such manner as to permit the Bonds to be rated by any nationally recognized securities rating service.

Section 35:     Parties Interested Herein.  Except as otherwise expressly provided in this Resolution, nothing in this Resolution expressed or implied is intended or shall be construed to confer upon, or to give to, any person, other than the Commonwealth, the owners of the Bonds, and the Underwriters any right, remedy or claim under or by reason of this Resolution or any covenant, stipulation, obligation, agreement or condition herein.  Except as otherwise expressly provided in this Resolution, all the covenants, stipulations, obligations, promises and agreements in this Resolution by and on behalf of the Commonwealth shall be for the sole and exclusive benefit of the Commonwealth, the Owners of the Bonds, and the Underwriters.

Section 36:     Tax Covenant.  The Commonwealth shall comply with the requirements of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, to the extent permitted by the Constitution and laws of the Commonwealth, so that interest on the Bonds shall remain excludable from gross income for federal income tax purposes of the recipients thereof to the same extent that such interest was excludable on the date of initial delivery of the Bonds.

(a)     General.  The Commonwealth hereby covenants with the holders of the Bonds that, notwithstanding any other provisions of this Resolution, it shall not take any action, or fail to take any action, if any such action or failure would adversely affect the exclusion from gross income of interest on the Bonds under Section 103 of the Internal Revenue Code of 1986, and the regulations issued thereunder, as the same may be amended from time to time, and any successor provisions of law (the "Code").  The Commonwealth shall not, directly or indirectly, use or permit the use of proceeds of the Bonds or any of the property financed or refinanced with proceeds of the Bonds, or any portion thereof, by any person other than a governmental unit (as such term is used in Section 141 of the Code) in such manner or to such extent as would result in the loss of exclusion from gross income for federal income tax purposes of interest on the Bonds.

(b)     Use of Proceeds.  The Commonwealth shall not take any action, or fail to take any action, if any such action or failure would cause the Bonds to be "private activity bonds" within the meaning of Section 141 of the Code, and in furtherance thereof, shall not make any use of the proceeds of the Bonds or any of the property financed or refinanced with proceeds of the Bonds, or any portion thereof, or any other funds of the Commonwealth, that would cause the Bonds to be "private activity bonds" within the meaning of Section 141 of the Code.  So long as any

18

Bonds are outstanding, the Commonwealth, with respect to such proceeds and property and such other funds, will comply with applicable requirements of the Code and all regulations of the United States Department of the Treasury issued thereunder.  The Commonwealth shall establish reasonable procedures necessary to ensure continued compliance with the Code and the continued qualification of the Bonds as "governmental bonds."

(c)   Arbitrage.  The Commonwealth shall not, directly or indirectly, use or permit the use of any proceeds of the Bonds, or of any property financed or refinanced thereby, or other funds of the Commonwealth, or take or omit to take any action, that would cause the Bonds to be "arbitrage bonds" within the meaning of Section 148 of the Code.  The Commonwealth shall comply with all requirements of Section 148 of the Code and all regulations of the United States Department of the Treasury issued thereunder to the extent such requirements are, at the time, in effect and applicable to the Bonds.

(d)   Federal Guarantee.  The Commonwealth shall not make any use of the proceeds of the Bonds or any other funds of the Commonwealth, or take or omit to take any other action, that would cause the Bonds to be "federally guaranteed" within the meaning of Section 149(b) of the Code.

(e)   Compliance with Tax Certificate. The Commonwealth covenants that it will comply with the provisions of the Tax Certificate of the Commonwealth executed in connection with the issuance of the Bonds, which is incorporated herein by reference as if fully set forth herein.  These covenants shall survive payment in full or defeasance of the Bonds.

Section 37:   Governing Law; Jurisdiction and Venue.

(a)   This Resolution shall be governed and construed in accordance with the laws of the State of New York, and the laws of the State of New York shall apply to any action or proceeding arising out of the Bonds or this Resolution, except with respect to the adoption and execution hereof by the Commonwealth, which shall be governed by the laws of the Commonwealth.

(b)   The Commonwealth hereby irrevocably submits to the exclusive jurisdiction of any New York state or U.S. federal court sitting in the Borough of Manhattan, The City of New York, New York, and any Commonwealth court or U.S. federal Court sitting in San Juan, Puerto Rico, and any appellate court from any thereof (each an "applicable court"), in any action or proceeding arising out of or relating to the Bonds or this Resolution, and the Commonwealth hereby irrevocably agrees that all claims in respect of such action or proceeding (other than a Proceeding instituted in accordance with Section 33(b) hereof, which shall only be instituted in accordance with the provisions of such Section) may be heard and determined in any such applicable court.  The Commonwealth hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding and any right of jurisdiction in such action or proceeding brought in any applicable court on account of the place of domicile of the Commonwealth.  The Commonwealth hereby initially appoints Corporation Service Company as its agent (the "Process Agent") to receive on behalf of itself and its property service of copies of the summons and complaint and any other process that may be served in any such action or proceeding.  The Secretary may replace the

19

Process Agent with a substitute agent, and if so will provide notice of such replacement as an "event" in accordance with Section 33, if the Secretary determines that the Process Agent can no longer adequately provide the services required hereunder.

Section 38:    Waiver of Immunity.

In accordance with the provisions of Act No. 34, the Commonwealth waives immunity from the jurisdiction of any of the applicable courts only in a suit brought to compel the Secretary to comply with the provisions of Sections 2 and 8 of Article VI of the Constitution with respect to its obligations on the Bonds, or to enforce other remedies with respect to the Bonds provided in Section 20 of this Resolution; provided, however, that this waiver constitutes a limited and specific waiver by the Commonwealth solely for the purposes of the Bonds, and under no circumstances shall it be construed as a general waiver by the Commonwealth or a waiver with respect to proceedings unrelated to the exercise of remedies available under this Resolution.

Section 39:    Payments Due on Non-Business Day. In any case where the date of payment of interest or principal of any of the Bonds shall not be a Business Day, then payment of interest or principal need not be made on such date but may be made on the next succeeding Business Day with the same force and effect as if made on such date, and no interest on such payment shall accrue for the period after such date.  The Commonwealth shall not be required to take any action on any day which is a public holiday in the Commonwealth but may take such action on the next day which is not a public holiday.

Section 40:    Severability of Invalid Provisions.  If any one or more of the provisions, covenants or agreements in this Resolution on the part of the Commonwealth to be performed should be contrary to law, then such provision or provisions, covenant or covenants, agreement or agreements, shall be deemed separable from the remaining provisions, covenants and agreements, and shall in no way affect the validity of the other provisions of this Resolution or of the Bonds.

*[Signature page follows.]*

20

Section 41:   _Effectiveness._  This Resolution shall take effect upon its approval by the Governor of Puerto Rico.

Adopted on March 11, 2014

_____
Secretary of the Treasury of Puerto Rico

The foregoing Resolution and the issuance of the Bonds authorized thereby as therein set forth are hereby approved this 11th day of March, 2014.

_____
Governor of Puerto Rico

(Seal)

Attest:

_____
Secretary of State of Puerto Rico

CONSENTED TO AS TO SECTIONS 37 AND 38 HEREOF:

_____
Secretary of Justice of Puerto Rico

[Signature Page to Bond Resolution]

# EXHIBIT A

## REFUNDED BONDS

| Series of Bond | Maturity (July 1) | Principal Amount Outstanding | Redemption Price | Redemption Date |
|---|---|---|---|---|
| Public Improvement Refunding Bonds, Series 2003 C-5-1 | 2021 | $ 44,905,000 | 100% | March 17, 2014 |
| Public Improvement Refunding Bonds, Series 2003 C-5-2 | 2020 | 188,710,000 | 100 | April 10, 2014 |
| Public Improvement Refunding Bond, Series 2003 C-6-1 | 2024 | 98,695,000 | 100 | March 17, 2014 |
| Public Improvement Refunding Bond, Series 2003 C-6-2 | 2024 | 98,690,000 | 100 | March 17, 2014 |
| Public Improvement Refunding Bonds, Series 2007A-2 | 2029 | 14,915,000 | 100 | April 10, 2014 |
| Public Improvement Refunding Bonds, Series 2007A-3 | 2029 | 14,925,000 | 100 | March 17, 2014 |

**EXHIBIT B**

**[FORM OF BONDS]**

**UNLESS THIS BOND IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK LIMITED PURPOSE TRUST COMPANY ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY BOND ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE OF THIS BOND FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**

No. R-___                                                                                           $_____

United States of America

COMMONWEALTH OF PUERTO RICO

GENERAL OBLIGATION BONDS OF 2014, SERIES A

| Interest Rate | Maturity Date | CUSIP No. |
|:---:|:---:|:---:|
| 8% | July 1, 2035 | 74514LE86 |

Registered Owner:   Cede & Co.

Principal Amount:   Dollars

The Commonwealth of Puerto Rico (the "Commonwealth") is justly indebted and for value received hereby promises to pay to the Registered Owner named above or registered assigns or legal representatives, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof, the Principal Amount specified above and to pay interest thereon from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case from such date, at the Interest Rate per annum specified above, until payment of such Principal Amount, such interest to the payment hereof being payable semi-annually on the first (1st) day of each January and July, commencing on July 1, 2014.  The Principal Amount of this bond is payable upon presentation and surrender hereof at the corporate trust office of Banco Popular de Puerto Rico, Registrar, in the Municipality of San Juan, Puerto Rico.  Payment of the interest on this bond shall be paid by check mailed to the person appearing on the registration books of the Commonwealth (kept at the above office of the Registrar) as the registered owner hereof (or of the previous bond or bonds evidencing the same debt as that evidenced by this bond) at the close of business on the

record date for such interest, which shall be the June 15 or December 15 (whether or not a business day) next preceding such interest payment date. Both the principal of and interest on this bond are payable in such coin or currency of the United States of America which, at the respective dates of payment thereof, is legal tender for the payment of public and private debts. The good faith, credit and taxing power of the Commonwealth of Puerto Rico are irrevocably pledged for the prompt payment of the principal of and the interest on this bond.

This bond is one of a duly authorized issue of bonds of the Commonwealth issued in the aggregate principal amount of $3,500,000,000, known as "Commonwealth of Puerto Rico General Obligation Bonds of 2014, Series A", issued under the authority of and in full compliance with an Act of the Senate and House of Representatives of the United States in Congress assembled entitled, "An Act to provide a civil government for Puerto Rico, and for other purposes," approved March 2, 1917, as amended, as continued in effect by Public Law 600, approved July 3, 1950, as amended, and now known as the "Puerto Rican Federal Relations Act," and the Constitution and laws of the Commonwealth, including Act No. 33 of the Legislative Assembly of Puerto Rico, approved December 7, 1942, as amended ("Act No. 33"), Act No. 242-2011 of the Legislative Assembly of Puerto Rico, approved December 13, 2011 ("Act No. 242"), Act No. 45-2013 of the Legislative Assembly of Puerto Rico, approved June 30, 2013 ("Act No. 45"), and Act No. 34-2014 of the Legislative Assembly of Puerto Rico, March 4, 2014 ("Act No. 34" and together with Act No. 33, Act No. 242, and Act No. 45, the "Acts"), and pursuant to a resolution of determination to issue said bonds (the "Resolution") duly adopted by the Secretary of the Treasury of Puerto Rico (the "Secretary of the Treasury"), approved by the Governor of Puerto Rico, and consented to by the Secretary of Justice of Puerto Rico with respect to certain matters only, as set forth therein, for the purpose of funding certain necessary public improvements, refunding the principal component of and interest on certain outstanding bonds and notes of the Commonwealth and certain of its public corporations, refunding certain outstanding bonds and notes of the Commonwealth, funding interest on a portion of such bonds, paying fees in connection with the termination of certain interest rate exchange agreements, and paying certain expenses related to the issuance and sale of the bonds and, by the acceptance of this bond, the owner hereof assents to all the provisions of the Resolution. The bonds constitute public debt as described in and for the purposes of Section 2 and Section 8 of Article VI of the Constitution of the Commonwealth. Reference is made to the Resolution for a description of the rights, limitations of rights, duties, obligations and immunities of the Commonwealth and the bondholders, as applicable. The Resolution may be amended to the extent and in the manner provided therein.

The bonds are issuable as registered bonds without coupons in a minimum denomination of $100,000, and any multiple of $5,000 in excess thereof; provided, however, that the minimum denomination of the bonds may be reduced to $5,000, if the conditions set forth in the Resolution are met with respect to such reduction. At the corporate trust office of the Registrar, in the Municipality of San Juan, Puerto Rico, in the manner and subject to the limitations and conditions provided in the Resolution and without cost except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of authorized denominations.

The bonds are subject to redemption prior to maturity, at the option of the Secretary, from any moneys that may be available for that purpose, at any time on or after July 1, 2020, either in

B-2

whole or in part (and if in part, in such order of annual Amortization Requirements as directed by the Secretary) on any Business Day, at a redemption price equal to the principal amount of the bonds to be redeemed, without premium, together with accrued interest to the date fixed for redemption.

In addition, the bonds of this issue shall be redeemed, to the extent provided in the Resolution, commencing on July 1, 2021 and on July 1 in each year thereafter in principal amounts equal to the Amortization Requirements for such bonds, as defined in the Resolution, plus accrued interest, without premium.

Any such optional redemption, either in whole or in part, may be made upon at least 20 days' prior notice by registered or certified mail to all registered owners and otherwise as provided in the Resolution, and shall be made in the manner and under the terms and conditions provided in the Resolution.  Any notice of optional redemption may state that the redemption is conditional and, if so, the notice shall state what the conditions are, as set forth in the Resolution. If at the time of giving a notice of redemption there shall not have been deposited with the Registrar moneys sufficient to redeem the bonds called for redemption, such notice shall state that it is subject to the deposit of the redemption moneys with the Registrar not later than the opening of business on the redemption date, and such notice and the corresponding optional redemption shall be of no effect unless such moneys are so deposited.  Any conditional notice of optional redemption may be rescinded by notice given to the Registrar by the Secretary of the Treasury by Electronic Means no later than two Business Days prior to the date specified for redemption.  The Registrar shall give notice of such rescission as soon thereafter as practicable in the same manner, and to the same persons, as notice of such redemption was given pursuant to the Resolution.

On the date designated for redemption, notice having been given as provided in the Resolution and available moneys for payment of the principal of and accrued interest on the bonds so called for redemption being held by the Registrar, interest on the bonds so called for redemption shall cease to accrue.  Bonds and portions of bonds which have been duly called for redemption under the provisions of the Resolution, or with respect to which irrevocable instructions to call for redemption or to pay at or prior to maturity have been given to the Registrar in form satisfactory to it, and for the payment of the principal of and the accrued interest on which sufficient available moneys or investments permitted by law (determined in accordance with the Resolution) shall be held in trust for the owners of the bonds or portions thereof to be paid or redeemed, shall not be deemed to be outstanding under the Resolution, and the registered owners thereof shall have no rights in respect thereof except to receive payment of the principal of and the accrued interest thereon.  If a portion of this bond shall be called for redemption, a new bond or bonds in an aggregate principal amount equal to the unredeemed portion hereof will be issued to the registered owner upon the surrender hereof in accordance with the provisions of the Resolution.

If less than all of the bonds shall be called for redemption, the portions thereof to be redeemed shall be selected in such manner as provided in the Resolution.

The transfer of this bond is registrable by the registered owner hereof in person or by such owner's attorney or legal representative at the corporate trust office of the Registrar in the

Municipality of San Juan, Puerto Rico, but only in the manner and subject to the limitations and conditions provided in the Resolution and upon surrender and cancellation of this bond. Upon any such registration of transfer the Commonwealth shall execute and the Registrar shall authenticate and deliver in exchange for this bond a new bond or bonds registered in the name of the transferee or transferees, of the same maturity, bearing interest at the same rate, in any authorized denominations and in principal amount equal to the principal amount of this bond.

This bond shall be governed and construed in accordance with the laws of the State of New York, and the laws of the State of New York shall apply to any action or proceeding arising out of the bonds and the Resolution, other than as to authorization and execution, which shall be governed by the laws of the Commonwealth.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit under the Resolution until this bond shall have been authenticated by the execution by the Registrar of the certificate of authentication endorsed hereon.

It is hereby certified and recited that all acts, conditions and things required to happen, exist and be performed precedent to and in the issuance of this bond have happened, exist and have been performed in due time, form and manner as required by the Constitution and laws of the Commonwealth of Puerto Rico, and the total indebtedness of the Commonwealth, including this bond, does not exceed any debt or other limitation prescribed by law.

*[Remainder of this page intentionally left blank.]*

B-4

IN WITNESS WHEREOF, the Commonwealth of Puerto Rico has caused this bond to be executed with the facsimile signatures of the Governor of Puerto Rico and the Secretary of the Treasury of Puerto Rico and a facsimile of the official seal of the Commonwealth of Puerto Rico to be imprinted hereon and attested by the facsimile signature of the Secretary of State of Puerto Rico, all as of the ___ day of _____, 20_____.

[Facsimile signature]_____
Governor of Puerto Rico

[Facsimile signature]_____
Secretary of the Treasury of Puerto Rico

(SEAL)

Attest:

[Facsimile signature]_____
Secretary of State of Puerto Rico

B-5

CERTIFICATE OF AUTHENTICATION

This is one of the bonds issued under the provisions of the Resolution mentioned herein.

BANCO POPULAR DE PUERTO RICO,
as Registrar


By:_____
    Authorized Officer


Date of authentication: _____

B-6

FORM OF ASSIGNMENT

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto

_____
[please print or type name and address of Transferee]

the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ attorney to register the transfer of the within bond
on the books kept for registration thereof, with full power of substitution in the premises.

Signature: _____

Dated: _____   Guaranteed by: _____

NOTICE:  The signature to this assignment must correspond with the name as it appears upon the face of the within bond in every particular, without alteration or enlargement or any change whatever and must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Registrar which requirements will include membership or participation in the Securities Transfer Agents Medallion Program or such other "signature guarantee program" as may be determined by the Registrar in addition to, or in substitution for the Securities Transfer Agents Medallion Program, all in accordance with the Securities Exchange Act of 1934, as amended.

B-7

**EXHIBIT C**

**PURCHASE CONTRACT**

Included in this transcript as Item 15

———————————————————————

**EXHIBIT D**

**PRELIMINARY OFFICIAL STATEMENT**

See copy of the Preliminary Official Statement, dated March 6, 2014, as supplemented by a Supplement to Preliminary Official Statement, dated March 10, 2014, relating to the $3,000,000,000 (preliminary) Commonwealth of Puerto Rico General Obligation Bonds of 2014, included in this transcript as Item 19

———————————————————————

**EXHIBIT E**

**OFFICIAL STATEMENT**

See copy of the Official Statement, dated March 11, 2014, relating to the $3,500,000,000 Commonwealth of Puerto Rico General Obligation Bonds of 2014, included in this transcript as Item 20

———————————————————————

*BOS 47359304v10*