# EXHIBIT 9

**Rodríguez v. Supt. Policía, 1985 JTS 144 (1995)**
139 D.P.R. 272

Key Cite Yellow Flag-Negative Treatment
Distinguished by Fernández Pola v. Estado Libre Asociado de Puerto Rico,
TCA, June 18, 2003

1995 JTS 144, 139 D.P.R. 272, 1994 WL 905601
(P.R.)

PEDRO QUILES-RODRÍGUEZ, Appellant and Respondent,
v.
SUPERINTENDENT OF THE POLICE, Appellee and Petitioner.

At the Supreme Court of Puerto Rico
Number:  CE-94-952
Resolved:  November 2, 1995
Nov. 02, 1995

1.      STATUTES, CUSTOMS AND EQUITY–INTERPRETATION AND APPLICATION
OF   THE   LAW–RETROACTIVE   EFFECT–RETROACTIVE   EFFECT   OR
RETROSPECTIVE APPLICATION OF THE LAWS–-JUDICIAL DECISIONS.
It is the court themselves the ones called to determine if a judicial decision will
be applied or not in a retroactive manner. In the exercise of this discretion, the
considerations of public policy and of social order are fundamental, since the
North must be the concession of fair and equitable remedies that respond to the
best social  coexistence.

2.      ID.–--ID.–--ID.–--ID.--–ID.
The following have been recognized as guiding criteria at the time of declaring
the retroactivity or prospectiveness of a jurisprudential standard:   (1) the
purpose that the new rule pursues in order to determine if its retroactivity
advances it; (2) the trust that was deposited in the previous standard, and (3)
the effect of the new rule in the administration of justice.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

3.    ADMINISTRATIVE  LAW——POWERS  AND  PROCEDURES OF AGENCIES, OFFICIALS AND ADMINISTRATIVE AGENTS----IN GENERAL—--IN GENERAL—-DISMISSAL OF PUBLIC EMPLOYEES.

In cases where the continuity in the employment creates a dangerous situation for the State or the interests protected by the Government, a public employee can be summarily suspended from employment without the celebration of a prior hearing, provided the same continues to receive the salary and is offered within a reasonable period of time the opportunity to be heard in an informal hearing or in one in which the controversy is adjudicated. (Díaz Martínez v. Policía de P.R., 134:144, followed.)

4.    ID.----ID.----DUE PROCESS----CAREER EMPLOYEE----IN GENERAL.

A policeman, a career employee of the uniformed police, is summary deprived of his salary.   This is without first giving him the opportunity to be heard in an informal hearing, which is held within a reasonable period of time.

5.    ID.----ID.----ID.—-SANCTIONS  AND  PENALTIES----PERSONNEL REGULATION OF THE PUERTO RICO POLICE.

In the past neither the Public Service Personnel Act of Puerto Rico nor that of the Police or their regulations required that a police agent be provided the opportunity to be heard in an informal hearing before a summary suspension from employment and salary.   The celebration of an informal hearing was required only before the dismissal of **273** a public career employee; that way they sought to prevent that the administrative agency take with a definitive character an erroneous decision. (Torres Solano v. P.R.T.C., 127:499, followed.)

**Synopsis**

JUDGMENT of Antonio J. Amadeo Murga, J. (San Juan), that revokes an interlocutory resolution and orders the Superintendent of the Police to pay to the appellee the salaries not perceived since his suspension from employment until he is reinstated or definitively expelled.  Revoked.

Carlos Lugo Fiol, General Sub-Prosecutor, and María Astrid Hernández Martín, attorneys for the petitioner; Nilka Marrero García and Ramón Crespo Nieves, attorneys for the appellee.

**Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488**

3

# PER CURIAM

## (In reconsideration)

The only issue that we have to resolve today is if the standard that we established in Díaz Martínez v. Policía de P.R., 134 D.P.R. 144 (1993), has or not a retroactive effect.  Let us see.

## I

On November 6, 1991 a complaint was formulated against Pedro Quiles Rodríguez, an Auxiliary Investigation Agent assigned to the Criminal Investigations Corps of Bayamón, for allegedly having disconnected, without authorization of any nature whatsoever, the electrical energy system of the Casa Protegida Julia de Burgos, where his wife was being sheltered at that time, which provoked the interruption of the electrical service at the location.

That same day there was presented against him an accusation for having committed an infraction to Art. 182 of the Penal Code of Puerto Rico, 33 L.P.R.A. Sec. 4288; the crime of sabotage of essential public services.  On November 20, 1991 a competent court determined probable cause for his arrest and established a bond that he could not render, wherefore he was admitted to the State Penitentiary. **\*274**

On February 19, 1992, a Police captain conducted an administrative investigation of the events stated above, which included an interview with Quiles Rodríguez, who refused to testify.  It was concluded that he had committed some acts in violation of the Personnel Regulation of the Puerto Rico Police of 1981, wherefore the Superintendent of the Police (hereinafter Superintendent), through a written communication of February 27, 1992, summarily suspended Quiles Rodríguez from employment and salary, effective as of the moment when he received it.  In said communication, also, he notified him of the charges that existed against him, advised him of the intention to expel him from the Police Corps and advised him of his right to request an informal hearing before an Examining Officer within the following fifteen (15) days.  In a timely manner, Agent Quiles requested the informal hearing.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

4

...here appellee on June 15, 1993, the Superintendent expelled Agent Quiles from the Police, retroactive to February 27, 1992, the date when he was notified about his summary suspension from employment and salary.  He was informed that, having the administrative hearing been held, there had been proven the violations to the Personnel Regulations of the Puerto Rico Police of 1981 which had been announced to him previously.  He was notified of his right to appeal before the Committee of Investigation, Processing and Appeal (hereinafter C.I.P.A.).

With regard to said determination, Quiles Rodríguez appealed on July 30, 1993 before the C.I.P.A.  On that occasion, the appellant denied the facts attributed to him as a basis for the dismissal and alleged, also, that an informal hearing had been held before his definitive expulsion.

Pending this appeal before the C.I.P.A., on July 22, 1993, we resolved the case of Díaz Martínez v. Policía de P.R., supra.  There we established that, due to a constitutional imperative, **275** a public career employee is entitled to an informal hearing prior to his summary suspension from salary.  In light of this new jurisprudential standard, on October 11, 1993, the appellant requested permission to amend the appeal to the effect of alleging that, pursuant to Díaz Martínez v. Policía de P.R., supra, "the summary suspension from employment and salary dated February 27, 1992, is null insofar as it refers to the suspension from salary".  Appendix, page 69.  As a result of this, he requested the payment of the salary not perceived as of the moment when he was summarily suspended up until the date of his definitive expulsion or of his reinstatement.

In order to decide the factual controversy regarding whether or not the informal hearing before the definitive expulsion of Quiles Rodríguez had been held, the C.I.P.A. held hearings on November 15 and December 15, 1993, and on February 8, 1994.  After assessing the evidence presented, on February 9, 1994 the C.I.P.A. issued an interlocutory resolution, in which it determined that the appellant had been given "ample opportunity for an informal hearing by the nominating authority".[1]  The appellant requested a reconsideration, which was denied.

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

5

Not in agreement, Quiles Rodríguez resorted to the Superior Court through a request for review filed on March 28, 1994.  In the same, the appellant requested from the court **\*276** that, pursuant to Cleveland Bd. of Ed v. Loudermill, 470 U.S. 532 (1985) and Díaz Martínez v. Policía de P.R., supra: (1) it revoke the determination of the C.I.P.A.; (2) it annul all of the disciplinary proceedings against him;  (3)  order the payment of the salaries that he had not earned since the date of his summary suspension from employment and salary, and (4) order his reinstatement to the job.

The instant forum issued an order addressed to the appellee so that he show cause why "having examined the decision in the case of Díaz Martínez v. Policía de Puerto Rico, ... the decision of the C.I.P.A. should not be revoked.  Appendix, page 108.  The Superintendent appeared to request the dismissal of the appeal on the basis that the court lacked jurisdiction to attend the reviews of resolutions of an interlocutory nature.  This being the case, on October 5, 1994, the lower court issued a revocatory judgment of  the resolution of the C.I.P.A., on the basis that the suspension from employment and salary without a prior hearing was contrary to the doctrine established in Díaz Martínez v. Policía de P.R., supra.

The Superintendent requested the reconsideration. The court of first instance accepted it and issued a resolution in which it determined that the allegation of the appellee, regarding the prospective application of Díaz Martínez v. Policía de P.R., supra, lacked any basis.

Of said determination, the Superintendent resorted before us to argue, in essence, that the standard of Díaz Martínez v. Policía de P.R., supra, could be applied in a retroactive manner.  On March 14, 1995, we denied the request for certiorari.  Having the corresponding request for reconsideration been filed, on April 28, 1995, by unanimous decision, we granted a term to the respondent herein to appear and show cause why we should not reconsider our prior ruling and revoke the judgment appealed. In attention to what was ordered, Quiles Rodríguez appeared.  We resolve as intimated.  **\*277**

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

6

## II

A judicial decision can have a retroactive as well as a prospective effect.  This because "the absolute retroactivity would be the death of the safety and the… public trust, and the absolute lack of retroactivity would be the death of the development of the law." R. Calderón Jiménez, Retroactividad o prospectividad de las decisiones de los tribunales, 53 (Nos. 23) Rev. C. Abo. P.R. 107, 115 (1992).

**[1]**  We have already established that it is the court themselves the ones called to determine if a judicial decision will be applied or not in a retroactive manner. In the exercise of this discretion, the considerations of a public policy and social order are fundamental, since our North should be "to grant fair and equitable remedies that respond to the best social co-existence".  Gorbea Vallés v. Registrador, 131 D.P.R. 10 (1992).

**[2]**  Previously we have recognized as guiding criteria at the time of declaring the retroactivity or prospectivity of a jurisprudential standard, the following:  (1) the purpose that the new rule pursues in order to determine if its retroactivity advances it; (2) the trust that was deposited in the former standard, and (3) the effect of the new rule in the administration of justice. Notwithstanding this, the last determination will rely on the considerations of a social nature, in light of the facts and the particular circumstances of each case.  Gorbea Vallés v. Registrador, supra; Pueblo v. Báez Cintrón, 102 D.P.R. 30 (1974); Pueblo v. Cruz Jiménez, 90 D.P.R. 565 (1971).

## III

**[3]**  In Díaz Martínez v. Policía de P.R., supra, page 153, we stated that **\*278**:

> "… the cases where the continuity in the employment creates a dangerous situation for the State or the interests protected by the Government, a public employee can be summarily suspended from employment without the celebration of a prior hearing

**Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488**

7

provided the same continues to receive the salary and
is offered —within a reasonable period of time– the
opportunity to be heard in an informal hearing or in
one where the controversy is adjudicated.

**[4]**  In harmony with the above, we established that a policeman –a uniformed
career employee– is deprived of his property of salary without first giving him
the opportunity to be heard in an informal hearing, that is held within a
reasonable period of time.   The payment of the salaries and benefits that were
not perceived were ordered as of the date of the summary suspension of salary
up until the date of the definitive expulsion.

The Superintendent accepts that the current state of the law requires, in a case
such as this one, the celebration of an informal hearing prior to the summary
suspension of salary.   Nevertheless, it argues in its brief before us that the
instant court erred in applying in a retroactive manner the standard alluded in
this case because at the time that Agent Quiles committed the facts that
motivated the administrative process against him, as well as at the moment
when he was suspended and expelled, and even at the time that the appeal was
filed, the state of law in effect was another one.  According to the positive law
at that time, the petitioner alleges that it acted pursuant to law and complied
with all of the requirements that the law and the applicable regulations imposed,
providing the  legal process applicable at that time.   The Superintendent is
correct.

**[5]**  Before Díaz Martínez v. Policiá de P.R., supra, neither the Public Service
Personnel Act of Puerto Rico nor that of the Police, or their regulations required
that there be provided **\*279** to a policeman the opportunity to be heard in an
informal hearing prior to a summary suspension from employment and salary.
At that time, the celebration of an informal hearing was required only prior to
the dismissal  of the public career employee; that way it sought to prevent that
the administrative agency make in a definitive nature an erroneous decision.
Torres Solano v. P.R.T.C. 127 D.P.R. 499 (1990).  Thus, we had stated in Torres
Solano v. P.R.T.C., supra, that the informal hearing served as a minimum initial

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

8

scrutiny to determine if there existed a reasonable justification to believe that the charges against the employee were true and that the dismissal was justified.

In this case, it is not in controversy that Quiles Rodríguez was provided the opportunity to be heard before his definitive expulsion from the Police Corps. This was found proven by the C.I.P.A. Notice, also, that the Superintendent had suspended him based on an administrative investigation and in the simultaneous judicial determination of probable cause for the crime of sabotage. In both proceedings he was informed of the charges that weighed against him and he was given the opportunity to defend himself.

There is no reason whatsoever to believe that had the standard of Díaz Martínez v. Policía de P.R., supra, been in effect at that time, Quiles Rodríguez would not have been granted the informal hearing before suspending him summarily from employment.

It seems to us, also, extremely convincing the argument of the Superintendent that applying the standard in question in a retroactive manner "[would] cause a grave impairment of the economic resources of the Police'D', since we would have to order the reinstatement of a "substantial amount of police agents that were summarily suspended the same as the respondent." (Petition for certiorari, page 17) before Díaz Martínez v. Policía de P.R. supra was decided. It is necessary to advise, however, that before expelling these police agents they were given the opportunity to be heard **\*280** in an informal hearing, in which the charges against them were proven. Certainly, applying the standard in question in a retroactive manner would mean the substantial erogation of the limited public funds of the Puerto Rico Police, "who would [be] obligat[ed] to pay the salaries not received by officials who did not honor their uniform and the assignment that the People of Puerto Rico gave them and they had to be suspended from employment and salary precisely to guarantee the security and welfare of the citizens that they were obligated to protect, under a proceeding that the Police understood was correct." Request for reconsideration of the petitioner, page 56.

**Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488**

9

In summary, then, the Police directors had acted, in cases such as this one, relying on the state of law in effect.  It processed numerous cases as required by the laws, the regulations and the jurisprudence in effect.   To give a retroactive effect to cases that were administratively decided before our decision in Díaz Martínez v. Policía de P.R., supra, would seriously diminish the resources of the Police, that are greatly needed to protect the community.  Numerous public funds would have to be destined to pay in a retroactive manner numerous salaries and obventions to agents suspended for the period of the suspension, even though said agents did not render services during that time.   On the other hand, to give a prospective effect to Díaz Martínez v. Policía de P.R., supra, will not have more adverse effects over those affected, since they had occasion under the current regime at that time to decide the facts and present the defense before their suspensions.  In consideration to the above, we resolve today that the standard established in Díaz Martínez v. Policía de P.R., supra, only has a prospective effect.

Having established the prospectivity of the standard in question by the grounds that are stated above, we issue judgment to revoke the one of the Superior Court, San Juan Part  *281.

Judgment will be issued accordingly.

Associate Justices Messrs. Negrón García and Fuster Berlingeri issued separate consenting opinions.   Associate Judge Mister Hernández Denton issued a dissident opinion, which was joined by Presiding Justice Mister Andréu García and Associate Justice Mrs. Naveira de Rodón.

—O---

Conforming opinion of Associate Justice Mister Negrón García.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

10

(**In reconsideration**)

**I**

Against Police Agent Pedro Quiles Rodríguez there was formulated a complaint in which it was alleged that on November 6, 1991 he went to the Casa Protegida Julia de Burgos and, without any authorization whatsoever, he disconnected and interrupted totally the electrical power system of said institution.  The case was investigated, and on November 20 a judge determined probable cause for his arrest for the crime of sabotage.  Art. 182 of the Penal Code, 33 L.P.R.A. Sec. 4288.  Since he did not post the bond required of Five Thousand Dollars ($5,000), Quiles Rodríguez was admitted to the State Penitentiary.

As a result of said incident and of the judicial proceeding, the Commander of the San Juan Area, through a Memorandum of November 22, 1991, requested the summary suspension of Quiles.  On that date he continued in jail.

This being the case, the administrative investigation was conducted within the Police.  Quiles Rodríguez was summoned and appeared **\*282** on February 19, 1992 before Captain Rafael Rivera, the Investigating Officer of the Assistant Superintendent of Inspection and Disciplinary Affairs.  On that occasion, said official informed him in a specific manner the facts that were attributed to him, the filing of the complaint and the criminal judicial process pending, and of his right to not testify and to be assisted by an attorney.  Quiles Rodríguez, under oath, admitted he understood the administrative investigation that was practiced and knew his rights, he denied the facts attributed to him and, by instructions of his attorney, Atty. Ramón Andino Nevárez, decided not to testify "at this stage of the investigation for the moment, until the trial on the merits [of the criminal case] is seen".  (Emphasis supplied.)  Appendix, page 112.

In view of his refusal to testify, and having discarded the possibility of Captain Rivera of being able to know the version of the facts through the voice of Quiles Rodríguez, on February 27 –eight (8) days later– the Police Superintendent suspended him from employment and salary.  This was based on the facts

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

11

originally stated.  He communicated to him, also, his intention to expel him from the Police and advised him of his right to request an informal hearing before an Examining Officer within the next fifteen (15) labor days.  Which two (2) days later he requested the aforementioned hearing.

Said hearing was scheduled and postponed on four (4) occasions due to the reiterated non-appearance of the attorneys contracted by Quiles Rodríguez; this occurred  during a period that extended for more than seven (7) months.

Finally, on October 14, is last legal representative ---who also did not appear--- communicated via telephone to the Examining Officer that he was submitting the case through the "file", and he requested thirty (30) days to present a writ. Even after he was granted this extension, he never presented it. Interlocutory Resolution, Appendix, page 33.  Having all this time elapsed, the Examining Officer **283** rendered a report that recommended the expulsion.  Therefore, Quiles Rodríguez was expelled on June 15, 1993.

Not being in agreement, Quiles Rodríguez resorted to the Commission of Investigation, Processing and Appeal (hereinafter C.I.P.A.) to allege, in synthesis, that his suspension from employment and salary was not subject to the applicable constitutional standards since it had not been preceded by any hearing whatsoever.

After evaluating the documentary and oral evidence presented, the C.I.P.A. interlocutorily denied the allegation.  The organism concluded that the nominating authority had complied with the requirement of the informal hearing. With the reconsideration denied, Quiles Rodríguez resorted on review to the Superior Court, San Juan Part.  The Superintended requested the dismissal of the appeal since he considered that said forum lacked jurisdiction.  He alleged that the resolution appealed was interlocutory in nature, not reviewable, according to the Uniform Administrative Procedures Act of the Commonwealth of Puerto Rico, Law No. 170  of August 12, 1988 (31 L.P.R.A. sec. 2101 et seq.).

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

12

In attention to the arguments of the parties, the illustrious forum of first instance (Hon. Antonio J. Amadeo Murga, Judge) revoked by concluding that:

> "...the C.I.P.A. erred in resolving that the claimant was not correct in his allegation that he was deprived of his rights of being suspended from employment and salary without a prior hearing.  Even though in light of the facts of violence attributed to the claimant, a suspension from employment could be justified without a prior hearing, the doctrine established in Cleveland Board of Education v. Loudermill, 470 U[.S] 532 (1985), as explained by our Supreme Court within the context of disciplinary measures against members of the Puerto Rico Police, which requires a prior hearing in cases where the employee is suspended also from salary.  In this case the suspension from employment and salary was made without a prior hearing and therefore clearly contrary to the constitutional doctrine **\*284** stated in Loudermill, supra, as it was applied to the members of the Puerto Rico Police in Díaz Martínez [v. Policía de P.R., 134 D.P.R. 144 (1993)].  (Emphasis in the original suppressed and emphasis supplied.) Appendix page 4.]

Furthermore, it imposed on the appellee an economic sanction since it understood that the allegation of a jurisdictional nature was frivolous.  The Superintendent requested the reconsideration.  It alleged, in synthesis, an error in the sanction and that the decision of Díaz Martínez v. Policía de P.R., supra, should be retroactively applied.  Even though the court reiterated its ruling, it eliminated the sanction.

The Superintendent resorted before us to insist that the instant forum erred in assuming jurisdiction over an interlocutory order of the C.I.P.A. and, also, in questioning the retroactive application of Díaz Martínez v. Policía de P.R., supra.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

13

## II

Through a harmonious interaction of Secs. 4.2[2] and 3.15[3] of the Uniform Administrative Procedures Act of the Commonwealth of Puerto Rico, 3 L.P.R.A. Secs. 2172 and 2165, the court of first instance had the faculty to assume jurisdiction and revise the administrative organism (the C.I.P.A.), said motion must consider it.  If it is rejected outright or does not act within fifteen (15) days, the term to request a review will commence to run again since said denial is notified or since those fifteen (15) days expire, whichever the case.  If any determination is made in its consideration, the term to request a review will commence to be counted as of the date in which there is filed in the record a copy of the notification of the resolution of the agency definitively resolving the motion whose resolution must be issued and filed in the record within ninety (90) days following the filing of the motion.  If the agency fails to take any action with regard to the motion for reconsideration within the ninety (90) days of having a motion accepted for resolution been filed, it will lose jurisdiction over the same and the term to request judicial review will commence to be counted as of the expiration of said ninety (90 day term unless the court, for just cause, authorizes an extension to the agency to resolve, for a reasonable term.

Having clarified this point, we coincide that independent of our dissent in Díaz Martínez v. Policía de P.R., supra, the majority standard must have a prospective effectiveness, especially in the particular circumstances herein involved.  We explain.

It is an uncontradicted data that an informal hearing was established and scheduled that could not be heard because Quiles Rodríguez simply and sincerely –for reasons of forensic strategy– as of the first moment opted to remain quiet and "to not state his version of the facts".

How can this accommodating conduct be harmonized with the laudable purpose of the informal hearing, whose purpose is to reduce the dangers that the employee be erroneously deprived of the proprietary interest?

The same way we sustained in our dissent in Díaz Martínez v. Policía de P.R., supra, page 158, Policeman Quiles Rodríguez "knew the facts attributed, he

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

14

could very well have given his version and did not do so.  Why is it impertinent and unfair to recognize to him the retroactive payment of salaries and benefits?" **\*286.**


**--O--**


Conforming opinion issued by Associate Justice Mister Fuster Berlingeri.

I am in agreement with the per curiam opinion issued by the Court in this case. I fully share the result reached by the majority as well as the basis that are formulated in the same.  The Superintendent of the Police suspended Agent Quiles rigorously observing the law in effect at that time.  Said action of the Superintendent responded to the need to preserve the integrity of the Police Corps in view of the fact that Quiles was accused of having grievously abused the prerogatives of his position.  There is no public interest more important that requires favoring Quiles and retroactively giving him the benefit of what was resolved by a meager majority of this Court in Díaz Martínez v. Policía de P.R., 134 D.P.R. 144 (1993).  On the contrary, since there exists a substantial amount of police agents that were suspended in a similar manner before the decision of Díaz Martínez v. Policía de P.R., supra, it would be detrimental for the country to give a retroactive effect to said decision.  Particularly, at this time when we are suffering the ravages of a criminal wave that is assaulting us in an inclement manner, it is when the Police needs all of the resources available to effectively fight this grave social evil.  To give a retroactive effect to said decision would mean that the Police would have to spend numerous public funds in paying numerous salaries and obventions to the referred agents, for the period of their suspension, even though said agents were suspended from employment pursuant to the law in effect and during the time of the suspension, they did not render services.  Said funds would be best used in the fight against crime.

I take advantage of this occasion, however, to reiterate the pronouncements that I made in my dissidence in the case of Díaz Morales v. Policía de P.R., supra, and to expound on the same, **\*287** so that there can be no misinterpretation of what is exactly my position regarding this matter.

**Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488**

15

To commence, it should be noted that were are involved in this case, as well as in that of Díaz Martínez v. Policía de P.R. supra, with cases related to the Police. We are not examining here which should be the pertinent standards for all the persons in the public service in general, just those that concretely involve agents of the public order.

In second place, it should also be noted that the situations in question involve intolerable abuses of the prerogatives of the position. We are not examining here mere violations of any ordinary standard of a personnel regulation in the public service. Our examination does not involve common faults, as could be that of being absent from the job, negligence in the performance of the duties of the position, not heeding the directives of the superiors and others of a similar nature. What involves us here are acts that no only violate the applicable labor standards but that, also, constitute a grave criminal conduct.

The two distinctions succinctly formulated in the previous paragraphs are fundamental to the normative position that we sustain, the scope of which concerns us here, which presuppose weighing the public interest versus those of the persons affected by the state action contemplated. The higher the interest of the state, the higher will be what the State is allowed to do. United States v. Good Real Property, 510 U.S. 43 (1993); Zinermon v. Burch, 494 U.S. 113 (1990); Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532 (1985); Mathews v. Eldridge, 424 U.S. 319 (1976). It involves Connecticut v. Doehr, 501 U.S. 1 (1991); Pueblo v. Andreu González, 105 D.P.R. 315 (1976); Domínguez Talavera v. Tribunal Superior, 102 D.P.R. 423 (1974). **\*288**

In the cases in question, there is a pre-eminent public interest to expeditiously attend the situation of the aggressor police. It involves officials that are authorized to precisely exercise the most sensitive of the powers of the State: that of the use of force —-including that of mortal weapons—- to maintain the safety and the public order. When a police agent abuses these very special prerogatives, not only does the same gravely violate the duties of his position but, also, incurs in a dangerous abuse against the authority itself of the State.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

16

Its behavior converts into a crude violence the use of the official force.  In the instance that a police officer commits a criminal act, the maximum authority that the people has delegated to the Government is drastically distorted, to become in the most injurious harm that can be committed against a citizen.  The respect of the people for the public order and its support to the authority of the State are gravely at risk of being lost if one does not act quickly and rigorously against the aggressor police.  We have expressly recognized this before, by stating that "when under color of authority a policeman commits criminal acts ... there completely vanishes [the] public trust'D', a ruling that we precisely issued in a decision of ours, where we resolved that the State responds for damages when it does not take the necessary measures "to strictly supervise" or "discipline" the policemen susceptible of committing criminal acts. Leyva et al v. Aristud et al, 132 D.P.R. 489, 512 (1993).  It was these fundamental considerations, and my criteria that the Superintendent had adequately complied with what is required by due process, which motivated my dissent in Díaz Martínez v. Policía de P.R., supra.

On that occasion, in attention to some facts similar to those of the law, since at the time of the summary suspension **\*289** from employment and salary of the agent in question "there had bene a formal accusation for several crimes ... there existed a judicial determination of probable cause with regard to the accusation [issued after the corresponding hearing], and [also], an administrative investigation had been celebrated with regard to the criminal incident, during which the police agent was accompanied by an attorney, he was explained in detail the purpose of the same, he was advised about the possible consequences, and he was given the opportunity to express his version and justification of the incident, which the police agent refused to do." Díaz Martínez v. Policía de P.R., supra, page 159.  For me it is evident that there had been fully complied  formulated (sic) by the Supreme Court of the United States in Cleveland Bd. of Ed. v. Loudermill, supra.

In the case involved herein, in an analogous manner, at the time of summarily suspending Quiles Rodríguez from employment and salary for the alleged infractions to the Personnel Regulations of the Puerto Rico Police of 1981, there

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

17

was no violation whatsoever particular circumstances before us (sic), notice that since the beginning of the process, the Police investigated the facts attributed to Quiles Rodríguez and summoned him to give him the opportunity to defend himself.   Quiles made the informed decision to not cooperate with the investigation and to not give his version of the facts.  With this he refused to himself the opportunity to be heard before being suspended.  Notice, also, that the administrative investigation conducted by the Police was provoked by the fact that the agent was under investigation by officials of the Public Ministry, a formal accusation had been presented against him for the alleged commission of the crime of sabotage of essential public services, and a **\*290** competent court, after the corresponding hearing, had determined probable cause for his arrest and posted a bond against him that the agent could not render.

It clearly appears from the above, that Quiles Rodríguez was given even the requirements established by the Supreme Court of the United States in Cleveland Bd. of Ed. v. Loudermill, supra, for situations of summary dismissal, in which the procedural rights of the public employee evidently have a higher scope than the ones that he has in cases of suspension from employment, such as in this case. In Cleveland Bd. of Ed. v. Loudermill, supra, page 547, the maximum Federal judicial forum expressly resolved that:

> "We conclude that all the process that is due is provided by a pretermination opportunity to respond... (Emphasis provided.)

That is, what the Federal Supreme Court itself had previously defined in the following manner:

> "...[h]ere, the pretermination hearing need not definitively resolve the propriety of the discharge.  It should be an initial check against mistaken decisions —essentially, a determination of whether there are reasonable grounds to believe that the charges against the

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

18

employee are true and support the proposed action.

[1e]  The essential requirements of due process, ...are notice and
an opportunity to respond.  The opportunity to present reasons,
either in person or in writing, why proposed action should not be
taken is a fundamental due process requirement. ...  The tenured
public employee is entitled to oral or written notice of the charges
against him, an explanation of the employer's evidence, and an
opportunity to present his side of the story.  ... To require more
than this prior to termination would intrude in an unwarranted
extent on the government's interest in quickly removing an
unsatisfactory employee. (Citations omitted.) Id., pages 545546.

In the case of Agent Quiles, prior to his suspension, he was notified of the
charges against him and he was given the opportunity to defend himself.
Furthermore, there was investigated **\*291** in a preliminary manner the
complaint against him in an administrative as well as judicial manner, in a
sufficient degree as to assure that there existed a reasonable justification to
believe that the charges against the agent were true.  There had been carried
out with clarity the initial minimum scrutiny that constitutionally had to be
carried out  and which is the reason why otherwise there should be celebrated
an informal hearing prior to the suspension.  To insist that even in these
circumstances said hearing should have been held as some do, is to reduce the
juridical standards to a mechanical application, without consideration its
purposes nor the reason for its existence.  Certainly, in this case, the possibility
that the Police Superintendent had made an arbitrary decision had been
dispelled.  To pretend the retroactive application here of the erroneous standard
of Díaz Martínez v. Policía de P.R., supra, would only mean multiplying our prior
absurdity, at a greater social cost.   In those cases of policemen legally
suspended because they abused the prerogatives of their charges, we would be
causing an unnecessary waste of public funds, in the payment of salaries and
obventions for services that were not rendered.  It is necessary to emphasize
that it is not the cost that entails the celebration of an informal hearing what
concerns us.   When said hearings are authentically necessary to protect

Certified to be a true and correct
translation from its original.
Aida Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

19

constitutional rights, they must be celebrated regardless of what they cost in monetary terms.  Mostly, what concerns us is the insistence of some that there be retroactively paid some compensations to those who do not deserve it, because they did not work for the same, since they were validly suspended from their employment, pursuant to the standards we invoke erroneous decisions of the Law to award those who failed their duty, compensating them even while they were legally in jail.  I do not share this very extravagant and superfluous vision of our faculty to design alleged judicial remedies **\*292.**  In short it seems to me that our ruling now, applied to Díaz Martínez v. Policía de P.R., supra, only prospectively, lessens its excesses.


–O--

Dissident opinion issued by Associate Justice Mister Hernández Denton, which was joined by Presiding Justice Mister Andréu García and Associate Justice Mrs. Naveira de Rodón.

Since we understand that, at the time of being suspended, the respondent Quiles Rodríguez was protected by the right to a prior informal hearing depriving him of his salary before it was held, we dissent. This right of the public employees was expressly recognized by the federal Supreme Court in Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532 (1985) and on the date when Quiles Rodríguez was summarily suspended this Curia had still not adopted the exception to the requirement of a prior hearing for the cases where the retention of the employee could constitute a danger for the safety of other persons.

Since this exception was adopted in 1993 in Díaz Martínez v. Policía de P.R., 134 D.P.R. 144 (1993), up until that date the Police had to strictly comply with the standard approved by the Federal Supreme Court in the cases of suspension of employment and of salary of the public employees.  It is as of July 1993 when, through an exception, we have allowed a police agent to be summarily suspended from employment, but not of salary, without the celebration of a prior informal hearing, when the Superintendent considers that the continuity of the

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

20

same on the job constitutes a significant danger to the security of other persons
**\*293.**

# I

Against the respondent Pedro Quiles Rodríguez there was filed a denunciation for violation to Art. 182 of the Penal Code, 33 L.P.R.A. Sec. 4288: sabotage of essential public services.  According to the complaint, on November 6, 1991 Quiles Rodríguez went to the facilities of the Casa Protegida Julia de Burgos and disconnected the  electrical energy service of said location.  On November 20 a court determined probable cause for arrest against Quiles Rodríguez for the crime attributed to him.  At the time of the facts, the herein respondent was an agent of the public order assigned to the Criminal Investigations Corp. (C.I.C.) and a public career employee.

As a result of the above, the Commander of the San Juan Area requested the summary suspension of Quiles Rodríguez.  On February 27, 1992, the Police Superintendent (hereinafter the Superintendent) summarily suspended Quiles Rodríguez from employment and salary for violations to the regulation of this Body.  He was notified about the charges against him, of the intention to expel him from the Police and advised of his right to request an informal hearing before an Examining Officer within the term of fifteen (15) labor days.  If the punishment became final, he would be entitled to an appeal before the Commission of Investigation, Processing and Appeal (hereinafter C.I.P.A.).

The aforementioned informal hearing was requested by Quiles Rodríguez even though it was never celebrated for cause attributable to the employee himself.  On December 1, 2991, the Examining Officer deemed the case submitted and recommended the expulsion.

On June 15, 1993, Quiles Rodríguez received a communication from the Superintendent of May 3 in which he communication his expulsion from the Police, retroactive to February 27, 1992.   On June 30, 1993, Quiles used his right to appeal before the C.I.P.A.  There he denied the facts **\*294** attributed

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

21

to him and alleged an informal hearing before his definitive expulsion.  Pending the appeal before the C.I.P.A., on July 22, 1993 Díaz Martínez v. Policía de P.R., supra, was resolved, which recognized that a police agent could be summarily suspended without a prior hearing, from employment but not his salary.  On October 11, Quiles Rodríguez requested permission to amend the appeal and to allege, pursuant to Díaz Martínez, that his summary suspension from salary was null.  He requested the payment of the salary not received since the summary suspension up until the date of his definitive expulsion or reinstatement.

On February 9, 1994, the C.I.P.A. issued a resolution to determine that an ample opportunity had been granted to Quiles Rodríguez before his expulsion.  From the findings of fact of the C.I.P.A. there appears a lack of diligence and interest on the part of Quiles Rodríguez to process his appeal before said organism.  A request for reconsideration was denied.

Quiles Rodríguez resorted on review to the Superior Court and requested:  (1) the revocation of the determination of the C.I.P.A.; (2) the annulment of all of the disciplinary proceedings against him; (3) the restitution of the salaries not perceived, and (4) his reinstatement to the job.  The Superintendent requested the dismissal of the appeal when it alleged that the court lacked jurisdiction to attend the reviews of an interlocutory nature.  The instant forum revoked the resolution of the C.I.P.A. on the basis that "the suspension from employment and salary without a hearing was contrary to the doctrine established in Díaz Martínez'D'.  To that effect, it order that Quiles Rodríguez be paid the salaries not perceived since his suspension until he was reinstated or expelled from the Police.  In reconsideration the Superintendent alleged that Díaz Martínez v. Policía de P.R., supra, should not have a retroactive application.  The court sustained its decision. **\*295.**

The Superintendent resorted before this Court in a request for certiorari, whose issuance we denied on March 14, 1995.  Subsequently we accepted a request for reconsideration filed by the claimant.  In the same, it sustains that Díaz Martínez v. Policía de P.R., supra, should not have a retroactive application, since at the time of Quiles Rodríguez being suspended, the Superintendent followed an

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

22

administrative process that he understood complied with the doctrine of Cleveland Bd. of Ed. v. Loudermill, supra.


## II

A.      Our Constitution provides in its Art. II, Sec. 7, that "'[n]o person will be deprived of his property or liberty without the modalities: the procedural and the substantive.   While the substantive seeks the protection and protects the fundamental rights of the person, the procedural tendency requires a fair and equitable procedure at the time of the State intervening with the proprietary interest or of freedom of the persons.    Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562 (1992).  Not every interest, however, deserves the constitutional protection.  The existence of a proprietary interest must rely on a concrete right recognized under our juridical law.  C.E.S. U.P.R. v. Gobernador, 137 D.P.R. 83 (1994), concurrent opinion.

Once it is determined that there is a proprietary interest, it is pertinent imposes the State.  Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 274 (1987). Even though the fundamental characteristic is that the proceeding should be fair, through the normative justice there have been identified an adequate notification and the opportunity to be **\*296** heard and to defend oneself.  In this context it is precise to remember homologous in the guarantee recognized in amendments V and XIV of the Federal Constitution. Id., page 273.

The protection that the Federal clause grants operates in Puerto Rico in two (2) manners.  On one hand, the legal process of the Federal Supreme Court applies to the residents of Puerto Rico.  Examining Board v. Flores de Otero, 426 U.S. 572 (1976).[1]  In second place, on multiple occasions we have recognizes that the interpretations that the Federal Supreme Court makes with regard to the contents of the Federal guarantee constitute the minimum protection that we are called to recognize pursuant to our own Bill of Law.  Rodríguez Rodríguez v. E.L.A., supra.    We have reiterated this principle in interpreting those constitutional guarantees of our Constitution that have their counterpart on the Federal Constitution, in cases of a criminal nature (Pueblo v. Meléndez

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

23

Rodríguez, 136 D.P.R. 587 (1994); Pueblo v. Santos Vega, 115 D.P.R. 818, 823 (1984); Pueblo v. Lebrón, 108 D.P.R. 324, 327 (1979); Pueblo v. Dolce, 105 D.P.R. 422, 428 (1976) as well as in others within the civil scope (U.N.T.S. v. Srio. de Salud, 133 D.P.R. 153 (1993), freedom of expression; Bayrón Toro v. Serra, 119 D.P.R. 605, 619 (1987), impairment of contractual obligations.

The concession of constitutional guarantees made in the Federal jurisdiction has not been an impediment for us to grant a greater protection pursuant to the same laws according to our Constitution.  In several instances we have claimed the widest bill of our Bill of Law **\*297** E.L.A. V. Hermandad de Empleados, 104 D.P.R. 436, 440 (1975).  See, also, López Vives v. Policía de P.R., 118 D.P.R. 219, 226227 (1987).

With regard to this particular we are in an identical position to that of the states under the Federal system, which also can recognize broader guarantees than the Federal minimum.  Pruneyard Shopping Center v. Robins, 447 U.S. 74, 81 (1980); Cooper v. California, 386 U.S. 58, 62 (1967).[2]

B.   In the case of the public career employees, we have recognized that they posses a proprietary interest over the retention of their jobs and that, therefore, in the case of dismissal Orta v. Padilla Ayala, 131 D.P.R. 227 (1992).

At the time of deciding Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716, 730 (1982), we had resolved that all deprivation of a right or a proprietary interest". There we had to consider if the summary suspension from employment and salary of a mayor, decreed by the Governor, had violated the Constitution, as well as the Federal.  We stated that when the deprivation of employment was temporary **\*298** there only sufficed that, at some significant moment, the affected person have the opportunity to defend himself and to present his case in a process with adequate guarantees.  We recognized that there are occasions when the State has an interest of importance that requires the temporary intervention with the property or freedom of a person, before it can be provided the opportunity to be heard.  In function of the above, we identified the following factors that should be considered to determine when the right to a

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

24

prior hearing exists: (1) the interests that are affected by the official action; (2) the risk of making an erroneous determination that entails an impairment of the protected interest of the employee and the probable value of additional or different guarantees, and (3) the interest that the State seeks to protect through the summary suspension, in attention to the specific function as well as to the fiscal and administrative burdens that the concession of additional guarantees would suppose.  Id., pages 730737.

Posterior to this decision, in Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532 (1985), the Supreme Court of the United States recognized the right to an informal hearing prior to the dismissal of those public employees that have a proprietary interest in their positions and interpreted to that effect the Federal ones.  The Court resolved, in the first place, that the state law is the one that determines if there is a proprietary interest on the part of the employee in his position.  Having acquired said proprietary interest, there enter XIV of the Federal Constitution ... which prevent that said employee be dismissed without the prior opportunity to be heard.  The proprietary interest of the employee is not efficiently protected with the celebration of a hearing after the dismissal. **\*299**

According to the Court, the need for a preliminary hearing is clear when a balance of the interests at play is made.  These are:

> "... the private interest of retaining the job, the interest of the Government in quickly removing mediocre employees and avoiding administrative letters, and the risk of making an incorrect dismissal.

> In first place, it cannot be denied how important is the private interest of retaining the employment.  We have frequently recognized how difficult it is to deprive a person of his means to earn a living.

> In second place, it is obvious that providing the employee the opportunity to present his version of the facts has resulted, repetitively, of great value at the time of making a correct decision.  The dismissals for just cause are

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

25

generally based on controversies of facts.  Even though the facts are clear, the correction or the need for the dismissal may not be so clear; in said cases, it is probable that the only significant opportunity to invoke the discretion of the decisive authority is before the dismissal enters into effect. (Citations omitted and translation ours).  Cleveland Bd. of Ed. v. Loudermill, supra, pages 542543.

The Court did not ignore the legitimate interest that the Government may have that a person cease in his position in the promptest manner possible. Nevertheless, it considered that this concern cannot exceed the constitutional protection that the employee enjoys.   It concluded, in this sense, that granting the employee an opportunity to respond to the charges, before his dismissal, was not too onerous.  Cleveland Bd. of Ed. v. Loudermill, supra, page 544. Nevertheless, the opinion also provided the possibility of situation where the mere presence of the employee in his position can entail a factor of high risk and of danger for the public safety.  In these cases, a summary suspension of employment, but not of salary, would be permissible.

> "…In his resolution, the Examining Officer confirmed the removal of Torres Solano since he understood that the aggression implied just cause for the dismissal even though it had been his first offense. Nevertheless, the Examining Officer recognized him the right to retroactively recover his salary from the date of the dismissal up until the date of its decision.  It based its concession of retroactive payment on the fact that Torres Solano had been conferred the right to a hearing prior to his dismissal, pursuant to what was resolved by the Supreme Court of the United States in Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1988).  (Emphasis in the original.) Torres Solano v. P.R.T.C., supra, page 510.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

26

When describing what was decided by the Federal Supreme Court, we also recognized the exception to the requirement of a prior hearing for the cases of danger and risk to the public safety.  We state:

> "Cleveland Board of Education v. Loudermill, supra, also clearly established that the celebration of a prior hearing to the dismissal was not necessary in all cases.  In situations where the employer perceives a significant hazard (in keeping the employee on the job) to the governmental interest, if it maintains the employee in his position, the course to be followed is the suspension of the employee with salary. (Citations and scholiums omitted and emphasis suppressed.)  Torres Solano v. P.R.T.C., supra, page 524.

This last item was precisely what occurred in Díaz Martínez v. Policía de P.R., supra.  This Court sustained the summary suspension of employment of a policeman, a regular public employee, without the celebration of a prior informal hearing.  Based on the standard of Cleveland Bd. of Ed. v. Loudermill, supra, we resolved that the case was covered by the exception of public employees in positions that suppose a significant danger.  Nevertheless, attending that the summary suspension in this case was of employment and salary, we sustained the court of first instance in its determination to order the payment and the benefits not received by the policeman since he was suspended up until the date of his expulsion.  We summarize the general doctrine in the following manner. **\*302**

> "... Pursuant to the doctrines established in Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532 (1985) and in Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982), and considering the nature of the particular interests affected, the risk of an erroneous decision and the protected governmental interest, we conclude that ordinarily the celebration of an informal hearing  prior to the removal promoted the best interests of the

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

public administration.  The public career employee "has this right even when the statute or contract that entitles him to remain in his position does not provide for the celebration of a prior hearing and does for a formal hearing after the dismissal."  Torres Solano v. P.R.T.C., supra.

Similarly, a summary suspension deprives a public employee of his proprietary rights to receive a salary and fringe benefits, and to perform the functions of his position.  The suspension of employment and salary has some immediate negative effects on the employee, since it primarily affects his capacity to generate income and sustain his family.  (Emphasis provided.) Díaz Martínez v. Policía de P.R., supra, page 150.

Subsequently, in Marrero Caratini v. Rodríguez Rodríguez, 138 D.P.R. 215 (1995), we had the occasion to elaborate what is the scope of the informal hearing which the employee is entitled to.

### III

The opinion of the majority seeks to characterize what was decided in Díaz Martínez v. Policía de P.R., supra, as the adoption of a new standard of law, and then passes to analyze if what is resolved therein should have or not a retroactive effect.  According to the majority opinion, in Díaz Martínez we established "as a new jurisprudential standard" that "by constitutional imperative, a public career employee is entitled to an informal hearing prior to his summary suspension from salary."  (Emphasis in the original.)  Majority opinion, pages 275276.

There is no doubt whatsoever that our faculty to determine the prospective or retroactive application of the juridical doctrines that we adopt as the maximum interpreter **303** of the Puerto Rican law cannot be questioned.  Gorbea Vallés v. Registrador, 131 D.P.R. 10 (1992).  However, it is necessary to conclude that in this case it is impertinent to enter into an analysis on the possible retroactivity of what was decided in Díaz Martínez v. Policía de P.R., supra.  The nature of what was resolved therein and the context of the cases in which, in effect, we

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

28

have considered the retroactivity or prospectivity of a judicial decision are different matters.[4]

The truth is that in Díaz Martínez v. Policía de P.R., supra, we ratified the applicability in Puerto Rico of the standard adopted by the Federal Supreme Court in Cleveland Bd. of Ed. v. Loudermill, supra.  In the context of the protection that the public career employees deserve, Loudermill made the interpretation of constituting the minimum content of our own constitutional clause.  We recognized this in Brunet Justiniano v. Gobernador, 130 D.P.R. 248 (1992).

Since the Federal Supreme Court establishes the minimum content of the constitutional guarantees, since Cleveland Bd. of Ed v. Loudermill, supra, the suspension from employment and salary without the celebration of a prior informal hearing is an injury that the Federal as well as the state courts,[5] as well as those of Puerto Rico, are called to vindicate.  This was also recognized by the Executive Branch, **\*304** who sent a communication with regard to this addressed to the different agencies of the government.

> "On June 17, 1986, the Central Office of Personnel Administration (O.C.A.P. in Spanish) issued Normative Letter No. 1-86, addressed to the Secretaries of the Government (including the Secretary of Justice), Agency Heads, Directors of Public Corporations and Mayors, the Personnel System and Agencies excluded from the Public Service Personnel Act of Puerto Rico, that it provided an informal hearing in the cases of suspension of employment and salary or removal, and accepted what was resolved in the case of Cleveland Board of Education v. Loudermill, supra. Said action is a recognition by the Executive Branch of the constitutional defect of the  provisions [statutory and regulatory that do not provide for a prior hearing].  (Emphasis in the original.)  Torres Solano v. P.R.T.C., supra, page 525, sch. 9.

In light of the above, it is impossible to accept the allegation of the Superintendent that he acted in accordance to what he understood was the law in effect at the time of suspending Quiles Rodríguez.  On the date of the

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

29

suspension, February 1992, the doctrine of Cleveland Bd. of Ed. v. Loudermill, supra, had been in effect for seven (7) years and that of Torres Solano v. P.R.T.C., supra, for two (2).  Clearly on that date Quiles Rodríguez had the constitutional right to an informal hearing prior to his summary suspension and this Curia had still not adopted the exception of Díaz Martínez v. Policía de P.R., supra.

On the other hand, the per curiam opinion seems to distinguish between the right to a prior informal hearing in the case of the suspension from employment, from the one where there occurs a suspension from salary.  Said analysis confuses the measure in which  they employment and the salary are separable. Ordinarily, when a person is suspended from employment, this entails also the suspension from salary.  This occurred in Vélez Ramírez v. Romero Barceló, supra, Torres Solano v. P.R.T.C., supra, Díaz Martínez v. Policía de P.R., supra and in this case.  That is why one of the manners of justifying the proprietary interest that can be affected with a suspension of employment is through a recognition of the damage **\*305** that a person who is deprived of his principal means of support receives. Cleveland Bd. of Ed. f. Loudermill, supra, page 543; FDIC v. Mallen, 486 U.S. 230, 243 (1988).  The possibility of erroneously depriving a public career employee of his salary is one of the fundamental principals to require a prior informal hearing.  See the concurrent opinion of Judge Marshall in Loudermill, supra, pages 549550.

Contrary to what the majority opinion alleges, the ratio of Díaz Martínez v. Policía de P.R., supra, was not that an informal prior hearing was required before suspending a public career employee from his salary.  We resolved, following Cleveland Bd. of Ed. v. Loudermill, supra, and Torres Solano v. P.R.T.C., supra, that Police Agent Díaz Martínez deserved the constitutional guarantees of the informal prior to a suspension from employment and salary.  Nevertheless, given the particular public position that he performed and the nature of the allegations against him, for the first time we apply the exception stated as a dictum in Loudermill and Torres Solano, to those cases in which the agency considers that the retention of the employee can constitute a significant danger to the safety of other persons or to public property.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

30

In synthesis, contrary to the thesis of the per curiam, in Díaz Martínez v. Policía de P.R., supra, what we did was limit the rights of some police agents and not expand them.  As of that date the Superintendent was authorized to summarily suspend from employment, and not from salary, police agents without a prior informal hearing if he perceived that his continuity in the employment constituted a risk to the public safety.  In this manner we recognized the faculty of the Superintendent to suspend the police agent summarily, but only from employment in those cases.  This limitation is predicated on the fact that the element of dangerousness makes  an urgent and temporary retirement of the employee necessary, while there are attended **\*306** the charges against him, it does not have to have an effect on the right of the employee to conserve his employment, probably his only sustenance.   This requires that the Superintendent initially make a determination that, in view of the allegations against him, the police agent object of the investigation constitutes a danger for the safety of third parties.

The exception of Díaz Martínez v. Policía de P.R., supra, operates on the employment and does not affect, nor does it establish, a detriment to the proprietary interest of the employee over his salary.  As we stated therein:

> "...[A]s in [the cases of summary suspension of public employees], the suspension adversely affects the capacity of the employee to sustain his life, in Cleveland Bd. of Ed. v. Loudermill, supra, it was established that the summary action had to be limited to the employment itself.  Therefore, in the cases where the continuity in the employment creates a dangerous situation for the State or the interests protected by the Government, a public employee can be summary suspended from employment without the celebration of a prior hearing, provided he continues to receive the salary and is offered –-within a reasonable period of time— the opportunity to be heard in an informal hearing or in one where the

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

31

controversy is formally adjudicated.   Díaz Martínez v.
Policía de P.R., supra, page 153.  See, in an equal
sense, McMillen v. U.S.D., No. 380, 855 P.2d 896, 902
(Kan. 1993); Morton v. Beyer, 822 F.2d 364, 368369
sch. 5 (3rd. Cir. 1987).

In fact, our attention is called by the fact that, in the letter that notifies Quiles
Rodríguez of his summary suspension from employment and salary, the
Superintendent  used as a basis for the disciplinary action Sec. 9.2 of the
Personnel Regulation; Areas Essential to the Principle of Merit of the Central
Office of Personnel Administration.  This Letter of February 27, 1992, constitutes
an open violation to our ruling of November 20, 1990 in Torres Solano v.
P.R.T.C., supra, in which we decreed the unconstitutionality of said section of
the Personnel Regulations, supra, since it did not require the celebration of a
prior informal hearing  for the summary suspension of **\*307** employment and
salary.  The right of the employee to continue receiving his salary was clear at
the time of deciding in Díaz Martínez v. Policía de P.R., supra.  See with regard
to this and as a method of comparison:  Bass v. City of Albany, 968 F.2d 1067,
1069 (11th Cir. 1992)." 'the payment of the benefits cannot be suspended
without a prior hearing' " (translation ours); Everett v. Napper, 833 F.2d 1507,
1512 (11th Cir. 1987), "we recognize that 'when an employer perceives that there
is a significant danger, if he retains the employee in his employment', the
employer can suspend the employee with salary, even before granting him an
opportunity to be heard'D' (translation ours).   It was so clear that the court of
first instance in that case, as well as the forum of instance in this one, ordered
the payment of the salary not received by both police agents since their
suspension up until the date of their definitive expulsion.

Celebrating an informal hearing requires an minimum disbursement of funds
and, if it is held quickly, and it is determined that the policeman constitutes a
danger for  third parties, the State can proceed to the suspension of salary.  It
is up to the state to act quickly and to celebrate the informal hearing as quickly
as possible if it wants to avoid a substantial erogation of funds during the
disciplinary procedure.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

32

In this case, the Police waited more than three (3) months to summarily suspend Quiles Rodríguez since the facts that originated the allegation against him occurred.  This delay is incompatible with the argument of the State that he had to be summarily suspended and that the retroactive application of Díaz Martínez v. Policía de P.R., supra, would cost it a substantial amount of funds.  The Police could have acted with greater speed and diligence to avoid the expense that it now objects.

The scope of the constitutional rights of the public servants cannot depend only on the cost of the judicial remedy.   In Colón v. Municipio de Guayama, 114 D.P.R. 193, 201 (1983), we expressly rejected this argument **\*308** that is usually used by the State and its defenders to avoid that we design some remedies to protect the human rights.  There we affirmed that "the availability of public funds cannot be a determinant criteria to decide if a person is entitled to be protected from the application of a law that affects his constitutional rights". (Emphasis supplied).  Id., pages 201202.  Today we reaffirm this pronouncement.

## IV

On the other hand, even if failed to consider the minimum content that Cleveland Bd. of Ed. v. Loudermill, supra, conferred to us at an administrative level Quiles Rodríguez alleged the protection of the Federal Constitution. Appendix, page 71.  Given that our courts are obligated to heed said Constitution and the rulings of its maximum interpreter, the Federal Supreme Court, Quiles Rodríguez was entitled to have a court of the Commonwealth of Puerto Rico vindicate his injury in light of Loudermill and order, according to the Federal law, the payment of the salary not earned since his suspension up until the date of his expulsion.  Therefore, the opinion of the Court is totally contrary to the Federal constitutional normative.

## V

In conclusion, even though our Constitution is of a wider execution than the Federal one, this last one establishes the minimum of the legal procedures

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

33

cannot guarantee less rights than the Federal one.  IN this manner, once Cleveland Bd. of Ed. v. Loudermill, supra, was decided, what was resolved therein constitutes the minim of our own Constitution. **\*309.**  Torres Solano v. P.R.T.C., supra and Díaz Martínez v. Policía de P.R., supra, are cases that came to this court where we applied the standard as interpreted by the Federal Supreme Court.

As the court of first instance determined, Quiles Rodríguez is entitled to the payment of unearned salaries, since at the time he was suspended from salary he was assisted by a constitutional right to the celebration of a prior informal hearing.  Needless to say, the judge of the instant court, Hon. Amadeo Murga, resolved pursuant to the aforestated principles.  After considering the allegations of retroactivity presented in reconsideration by the Superintendent, he stated:

> "... Nevertheless, since 1985 Cleveland Board of Education v. Loudermill, supra, had made clear that [sic] the obligation of the governmental authority to grant a prior informal hearing to any suspension of employment and salary.  The decision of the Supreme Court of the United States in matters of constitutional law, under the Constitution of the United States of America, apply directly and immediately to the Commonwealth of Puerto Rico and do not have to pass by the crucible of the Supreme Court of Puerto Rico.  Therefore, the allegation that Díaz Martínez should be given a prospective application has no basis. (Emphasis suppressed.) Resolution of October 28, 1994, page 2, Appendix, page 11.

His decision correctly applied the constitutional normative that was in effect in Puerto Rico since Cleveland Bd. of Ed .v. Loudermill, supra, and Torres Solano v. P.R.T.C., supra, and should be confirmed.

For the reasons stated above, we dissent from the opinion of the Court.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

34

Footnotes

1       The Commission of Investigation, Processing and Appeal (hereinafter C.I.P.A.) made the following findings of fact: (1) the informal hearing was scheduled on three (3) occasions, which were suspended due to the non-appearance of the attorney of the appellant; (2) the first attorney, after his non-appearance, resigned the legal representation of the appellant by alleging a lack of interest of the client; (3) stated for the fourth time, it was also not celebrated because the legal representative of the appellant communicated with the Examining Officer by telephone to submit the case by the file; (4) the attorney of the appellant requested and obtained a period of thirty (30) days to submit a document; (5) this new attorney requested an extension which was granted to him, despite this, he never submitted the writ; (6) having studied the file, the Examining Officer recommended confirming the sanction, and (7) the attorney of the appellant denied at the hearing before the C.I.P.A. that he had agreed to submit the case by the file; similarly, he denied that the signature that appeared on the letter that requested the extension, in the letterhead of his office, was his.  The C.I.P.A., nevertheless "gives entire credit to the examining officer".

1       The Resolution denying the certiorari of March 14, 1995, did not originally enjoy the conformity of Associate Judges Messrs. Rebollo López, Fuster Berlingeri and of the undersigned, who would have issued the same. "The motion for reconsideration will be jurisdictional to be able to request the judicial review".  3 L.P.R.A. Sec. 2165 /footsCE

2       It provides in what is pertinent:
        "A party adversely affected by a final order or resolution of an agency and that has exhausted all of the remedies provided by the agency or by the corresponding administrative organism may file a request for review before the Superior Court with competence within a term of thirty (30) days counted as of the date of the filing in the record of the copy of the notification of the final order or resolution of the agency.  The party will

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

notify the filing of the request for review to the agency and to all of the parties within the term to request said review.  The notification may be made by mail." 3 L.P.R.A. Sec. 2172.

3    It provides the following:
"The party adversely affected by a resolution or a partial or final order may, within the term of twenty (20) days since the date of filing in the record of the notification of the resolution or order, present a motion for reconsideration of the resolution or order.  The agency within fifteen (15) days of its having been presented **\*285**

1    The Court, nevertheless, has avoided having to decide which guarantee in particular is applicable to Puerto Rico, if the one contained in Amendment V, originally adopted to limit the action of the Federal government, or if it applies through Amendment XIV, which is directed to the states.

2    The prerogative of granting rights in a broader manner than the Federal constitution has been the object of discussion in the United States due to a tendency of the state courts during the past two (2) decades, which consists in recognizing greater guarantees to the individuals through their own bill of rights.   This has responded to a reaction against more restrictive decisions by the Federal Supreme Court as well as an authentic interest to develop an autochthonous constitutional law.  Fulani de Tal v. Demandado A, 138 D.P.R. 610, 632 Sch. 1 (1965), concurrent and dissident opinion of Associate Judge Mister Fuster Berlingeri; López Vives v. Policía de P.R., 118 D.P.R. 219, 226227 (1987).  See: D. Toth Beasley, Emerging Issues in State Constitutional Law, 67 Temp. L. Rev. 25 et seq (1994); Symposium, "The Law of the Land", The North Carolina Constitution and State Constitutional Law, 70 N.C.L. Rev. 1699 (1992); Annual  Issue on State Constitutional Law, 22 Rutgers L.J. 815 (1991). Some criticize the tendency and advice caution on the part of the state courts.   T. Morawetz, Deviation and Autonomy: The Jurisprudence of Interpretation in State Constitutional Law, 26 Conn. L.Rev. 635 (1994);

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488

36

L.M. Martz, False Prophet-—Justice Brennan and the Theory of State Constitutional Law, 15 Hastings Const. L.Q. 429 (1988).
See, also, E. L. Chiesa Aponte, Los Derechos de los Acusados y la Factura mas Ancha (mimeo, November 1994).

3       In Torres v. P.R.T.C., 118 D.P.R. 198, 202 Sch. 5 (1987), we advised that it was necessary at that time to issue a judgment on the doctrine adopted in Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532 (1985).

4       Our decisions in Pueblo v. Báez Cintrón, 102 D.P.R. (1974); Pueblo v. París Medina, 101 D.P.R. 253 (1973); Pueblo v. Cruz Jiménez, 99 D.P.R. 565 (1971) and Rivera Escuté v. Jefe Penitenciaria, 92 D.P.R. 765 (1965), merely negate the retroactive application of standards related to the constitutional rights of persons subject to criminal proceedings in those cases already adjudicated and whose judgment had been final and biding at the time the new doctrine was incorporated.  On the other hand, Gorbea Vallés v. Registrador, 131 D.P.R. 10 (1992) and Correa Vélez v. Carrasquillo, 103 D.P.R. 912 (1975), evolve around the interpretation of a legislation, wherefore there was also not present a controversy of a constitutional nature such as the one herein presented.

5       In the case of the states, see:  Sedbrook v. Rouse, 894 P.2d 435 (Okla. App. 1994); Department of Institutions v. Kinchen, 886 P.2d 700, 707, Sch. 13 (Colo, 1994); Prue v. Hunt, 581 N.E.2d 1052 (1991); Swiger v. Civil Service Com'r., 365 S.E.2d 797 (1987).

End of Document          ©2019, Thomson Reuters. No claim to original U.S. Government Works.


WESTLAW       © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218
Fax: 787.723.9488