# EXHIBIT 10

KeyCite Yellow Flag - Negative Treatment
On Reconsideration Gorbea Valles v. Registrador, P.R., May 10, 1993
1992 JTS 112, 131 D.P.R. 10, 1992 WL 755578 (P.R.)

GLADYS DEL CARMEN GORBEA VALLÉS ET AL., appellants,
v.
SAN JUAN PROPERTY REGISTRAR, appellee.

In the Puerto Rico Supreme Court.
*Number:* RG-89-833

**Synopsis**
NOTE from *Oscar Olivencia Font*, R. (San Juan), Section II, which denies the registration pursuant to Arts. 1313 and 1604 of the Civil Code, 31 L.P.R.A. secs. 3672 and 4425, and based on his retroactive interpretation of *Zarelli v. Registrador*, 124 D.P.R. 543 (1989). *Revoked, and registration of the deed that is the object of this suit is ordered.*

*Arturo Aponte Parés*, attorney for the appellants; the *Property Registrar*, appellee, appeared in writing; *Francisco M. Vázquez Santoni*, of the *Puerto Rico Notaries Association, amicus curiae.*

ASSOCIATE JUSTICE, MR. NEGRÓN GARCÍA issued the opinion of the Court.

Opinion of the Court issued by Associate Justice Mr. Negrón García.

**I**

Milagros Teresa Josefina Gorbea Balseiro granted a *power-of-attorney* to Gladys Gorbea Vallés on June 23, 1987, in the city of New York. The following day, it was duly authenticated; subsequently, on July 30, it was recorded in a notarial record in Puerto Rico before the notary William J. Riefkohl in Public Instrument No. 18. That public instrument of its recording in a notarial record was accompanied as a supplementary document to Purchase Deed No. 14 executed on July 7, 1988, before the notary Arturo Aponte Parés,[1] and filed at the Property Registry on July 14, 1988.***13**

The Registrar (The Hon. Oscar Olivencia Font) refused to carry out the registration based on Arts. 1313 and 1604 of the Civil Code, 31 L.P.R.A. secs. 3672 and 4425, respectively, and on his retroactive interpretation of the opinion *Zarelli v. Registrador*, 124 D.P.R. 543 (1989). This case provides a detailed explanation of the elements needed in the drafting of a *power-of-attorney* for the mandate to be effective in our jurisdiction, to have access to the Property Registry, and to fulfill the purpose for which it was intended.[2] In the Registrar's judgment, the *power-of-attorney* in favor of Gladys, executed in New York, does not meet the prevailing legal standards and there is no margin for a prospective interpretation.

In opposition—the appellants Gorbea Vallés *et al.*—maintain that, due to the fact that the *power-of-attorney* was executed and recorded at a time when the doctrine in effect allowed it, we must give it validity; that is, to interpret *Zarelli v. Registrador*, supra, prospectively.

For their part, the Association of Notaries of Puerto Rico, in its capacity as *amicus curiae*, alludes to that same problem and also brings up what is posed as the main confusion: The phrase of reference, "it is indispensable that the power-of-attorney mention that the real property is located in Puerto Rico," gives the impression that all powers-of-attorney to be verified henceforth[,] even if the opinion does not state whether the ruling is prospective or retroactive[,] with regard to real properties, be they community or private, must contain a statement to the effect that *the real property is located in Puerto Rico.*

This might result in a formalism or an unnecessary limitation that will create huge obstacles and uncertainty in the verification of *thousands of powers-of-attorney that have already been granted* and are in effect in our legal circulation ***14**, as well as for any that may be granted in the future." (Emphasis ours.) *Amicus Curiae* Brief, pp. 1–2.

In summary, the core controversy comes down to determining whether the doctrine of *Zarelli v. Registrador*, supra, is retroactive; confirming the Registrar's position or not depends on this.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

## II

**[1–2]** Our current law is clear in demanding that an mandate complies with the requirements of the Civil Code. Art. 1604 of the Civil Code, *supra*, provides that "[t]he mandate conceived in general terms does not consist of anything more than acts of administration. An express mandate is needed in order to settle, alienate, mortgage, or execute any other act of full (legal) ownership. The power to settle is not authorization to compromise on arbitrations or arbiters." Where relevant, Art. 1313 of the Civil Code, *supra,* establishes that neither of the two [spouses] can gift, alienate, or bind for a consideration the personal or real property of the community property *without the written consent of the other spouse*...". (Emphasis ours.)

**[3-5]** In *Zarelli v. Registrador*, supra, pp. 553–555, we stated:

To summarize, the mandate can be: (1) general mandate "in general terms"; (2) general mandate "in specific terms'DD; (3) special mandate "in general terms" or; (4) special mandate, "in specific terms'DD'. If it is a mandate (whether general or special) prepared in general terms, it will only give rise to carrying out acts of administration. Art. 1604 of the Civil Code, *supra*. If, on the other hand, it is a mandate in specific terms, there will exist an authorization to carry out the process or the business detailed in the contract. To alienate, encumber, or mortgage a property, a mandate in specific terms is needed. M. Albaladejo, ***15** Derecho Civil*, Barcelona, Ed. Bosch, 1977, T. II, Vol. 2, p. 356.

Art. 1604 of the Civil Code, *supra*, establishes that an express mandate is needed for any act of full (legal) ownership. Acts of full (legal) ownership or of disposal are *those "that transcendentally affect a person's estate"*, such as encumbering, alienating, or mortgaging, etc.
J.R. León, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1986, T. XXI, Vol. 2, pp. 115–116.

The express mandate must contain a statement that reveals the intent to perform an act of specific disposal. A clear, concrete, and determined statement about the grantor's intention is required. *Madera v. Metropolitan Const. Corp.*, 95 D.P.R. 637, 648 (1967).

In cases of disposal of real properties, the mandate must be specific enough so that there is no room for doubts about the scope of the acts allowed, and so that the shares or interest on the affected real property can be determined. However, it is not necessary to give an exact description of the terms of the legal transactions allowed or the specific properties involved in the authorized transactions. The mandate is valid if it contains a general description of the transactions authorized and a reference to whether it includes personal or real properties. *Ribot v. Registrador*, 98 D.P.R. 497, 504 (1970). The specific expression is not required in writing either. *In re Feliciano Ruiz*, 117 D.P.R. 269, 277 (1986).

Yet, in the particular case of community property, the definition of an express mandate must be interpreted in a manner compatible with Art. 1313 of the Civil Code, *supra. Where relevant, said article requires that in order to alienate real properties of the community property partnership, written consent will be needed from the spouses. Therefore, an express mandate in this case must be written.* (Emphasis ours.)

**[6]** The principle that real properties are subject to the laws of the country where they are located —Art. 10 of the Civil Code, 31 L.P.R.A. sec. 10—Arts. 1313 and 1604 of the Civil Code, *supra*, and the aforementioned jurisprudence govern the solution at hand. With respect to *powers-of-attorney*, we shall apply the precepts of our notarial law and the mortgage and property registry law. We reiterate that the land registration legality principle ***16** shows that only valid and perfect titles are able to be included in the Property Registry, which is achieved through verification by the Registrar. See: *Casa Blanca Properties v. Registrador*, 130 D.P.R. 609 (1992); *U.S.I. Properties, Inc. v. Registrador*, 124 D.P.R. 448 (1989); *Mojica Sandoz v. Bayamón Federal Savs.*, 117 D.P.R. 110 (1986); *Kogan v. Registrador*, 125 D.P.R. 636 (1990). With this succinct explanation in mind, let us address the problem of retroactivity.

## III

We have taken on the task of giving prospective effectiveness to certain legal doctrines on countless occasions. *Correa Vélez v. Carrasquillo*, 103 D.P.R. 912, 918 (1975); *Rivera Escuté v. Jefe Penitenciaría*, 92 D.P.R. 765, 782 (1965). The criteria for selecting one or another alternative is often *ad hoc*, depending on the factual situation, the circumstances of the particular case, and considerations of equity and hermeneutics. The alternatives are many. We could refuse to impose a retroactive effect to a rule in order to, as an exception, protect only a particular interest See: *Pueblo v. Báez Cintrón*, 102 D.P.R. 30, 36–37 (1974), which in turn cites *Pueblo v. París Medina*, 101 D.P.R. 253 (1973), and

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

*Rivera Escuté v. Jefe Penitenciaría*, supra. Other times, we have recognized retroactivity, with the exception that it does not extend to other cases. *Pueblo v. Cruz Jiménez*, 99 D.P.R. 565 (1971).

Conversely, considerations of a social nature often play an important role. In *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378, 396 (1973), we said:

> The reasonability of the statute is determined mainly by taking into account the substantiality of the public interest it fosters and the extent of the damage caused by its retroactive application. See: *Home Building &* **\*17** *Loan Association v. Blaisdell*, 290 U.S. 398; Hochman, *The Supreme Court and the Constitutionality of Retroactive Leqislation*, 73 Harv. L. Rev. 701. The more serious the social issue the statute tries to remedy, the greater is the public interest involved, and, therefore, there is greater justification for its retroactive application.

In the specific area that we are addressing, there are several instances of this. Our Resolution of March 18, 1991, *In re Anotaciones Registro de Poderes*, 128 .P.R. 202 (1991), covers a situation in which we applied a prospective character to a norm for the registration of powers-of-attorney executed abroad. It appears to be the *mise en scène* of past experiences, in which it was necessary to clarify the scope and effectiveness of the disputed legislation. So is the case if we study in retrospective *In re Secretario Tribunal Supremo*, 104 D.P.R. 696 (1976), where we clarify, for the purposes of our Registry of Powers-of-Attorney, the process to be followed in order to record in notarial records and register *powers-of-*attorney executed abroad.

A situation similar to the one addressed here was examined in *Colón v. Registrador*, 87 D.P.R. 895 (1963). In that case, the Registrar held that the Registry of Powers-of-Attorney Act—Public Law No. 62 of May 8, 1937 (4 L.P.R.A. sec. 921 *et seq.*)—required that the *powers-of-attorney* executed *prior* to the law going into effect be registered at the Registry of Powers-of-Attorney as set forth in said law. Given the difficult interpretative conundrum, we said:
[Said law] did not expressly provide anything regarding the powers-of-attorney executed or entered into a notarial record prior to the law going into effect. The law specifically provides that notification be sent to the Supreme Court within a stipulated time frame. When would the notaries who executed powers-of-attorney prior to 1937 have the obligation to notify it Would the law go into effect immediately? What responsibility could be required of those who did not do it if there is no specific precept obliging them to do so? **\*18**

The law did not distinguish between the powers-of-attorney executed before it went into effect and those executed thereafter. Once the law went into effect, all powers-of-attorney executed outside of Puerto Rico that are not entered into a notarial record must be entered into a notarial record and registered at the Registry of Powers-of-Attorney so that they may be considered in order to give credence to the attorney-in-fact's powers.

It is clear that powers-of-attorney executed prior to August 6, 1937, the date on which the law went into effect, are not required to be notified to the Clerk of the Supreme Court in order for them to be registered at the Registry of Powers-of-Attorney. *Colón v. Registrador*, supra, p. 897. See, also, *Rosario v. Registrador*, 59 D.P.R. 428, 434 (1941).

The above casuistry reflects the inherent power of the Court to exercise its discretion and to grant just and equitable remedies that respond to the best contemporary social coexistence. It is imperative to weigh the purpose sought through the implementation of different norms and legal precepts with the practical conditions generated by the putting into motion of measures that advance that theoretical purpose which, in turn, served as a genesis of the norm or precept to be implemented. Therefore, it is of utmost importance that our reasoning be tempered to these practical principles.

**[7]** Examining the purpose sought by a rule to determine the retroactive application of same is one of the most important, though not exclusive, criterias. *Pueblo v. Cruz Jiménez*, supra, p. 567, and cases cited therein. Other criteria " 'are the reliance of the old rule' and *the effect of the new rule on the administration of justice."* (Emphasis ours.) Id.

IV

The arguments of the appellants and of the *amicus curiae* are extremely convincing. Giving retroactive effects to the *Zarelli v. Registrador*, supra, doctrine would inevitably lead to an injustice, foster multiple registral refusals, and


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

could mean the nullity of several transactions.

The power-of-attorney herein implied is very specific. When it was executed, *Zarelli v. Registrador*, supra, had not been ruled on. The appellants relied on and adhered to the legal practice of that time. It is more than logical and fair that its interpretive scope and binding precedent be prospective.

**[8]** What is left for us to do is to address the Registrar's and the *amicus curiae's* request regarding the following language—second paragraph, part IV—of *Zarelli v. Registrador*, supra, p. 556:

> While it is not necessary to provide a registral description of the community property, *it is indispensable that the power of attorney mention that the real property was located in Puerto Rico* and the type of transaction that can be performed. (Emphasis ours.)

They mention objections to it being imperative to include in powers-of-attorney information alluding to the location of the real property that is the object of the power-of-attorney, within the territory and jurisdictional term of Puerto Rico.

We have reflected on the matter. We do not believe that that requirement is a burdensome duty within the exercise of the notarial practice nor that it prevents the free circulation of legal transactions via *powers-of-attorney*. Prospectivity having been established, it is a matter of incorporating that language, which, at the end of the day, is a natural and logical consequence of the "purpose sought by our civil law tradition by requiring an [express] mandate…" into the practice. *Zarelli v. Registrador*, supra, p. 556. Such information, when included in the writing of *powers-of-attorney*, is a coessential element of the definition "express mandate" in line with the vision governing the disposition of community real property according to our Civil Code ***20**

Based on the above grounds, *a judgment of revocation shall be rendered.*

The Associate Judge Mr. Alonso Alonso issued a concurrent and dissenting opinion, which Associate Judge Mrs. Naveira de Rodón joined.

--O--

Concurrent and dissenting opinion issued by Associate Judge Mr. Alonso Alonso, joined by Associate Judge Mrs. Naveira de Rodón.

I agree with parts I, II, III, and IV of the Court's opinion, except what was expressed and decided upon in part IV, which requires that the power-of-attorney mention that the real property [is] located in Puerto Rico and the type of transaction that can be performed.

Based on the reasons I gave in my concurrent and dissenting opinion in the case of *Zarelli v. Registrador*, 124 D.P.R. 543 (1989), I believe that it is not indispensable that the power-of-attorney mention that the real property is located in Puerto Rico and the type of transaction that can be performed.

I continue to hold that a power-of-attorney, whether it be general or special, that includes a general description of the transaction or act to be performed can be executed without having to refer to the community property that is the object of this matter, and much less that the real property is located in Puerto Rico and the type of transaction that can be performed.

As seen in Art. 1604 of the Civil Code, 31 L.P.R.A. sec. 4425, what is required is that the mandate regarding the *act* of ownership be *express*. This does not require that the accuracy of the object or the specific real property that is going to be alienated, settled, mortgaged, or encumbered be identified.

Likewise, in the case of community property, Art. 1313 of the Civil Code, 31 L.P.R.A. sec. 3672, does not require that the specific property authorized to ***21** be alienated be identified unless there is *written and express* consent.

As I stated in my concurrent and dissenting opinion in the case of *Zarelli v. Registrador*, supra, Puerto Rico's economy is an open economy. There are thousands of financial transactions conducted between persons and entities from all countries around the world and between millions of compatriots living in the United States and in Puerto Rico. Also, many of the international financial transactions are done with persons or entities from countries whose provisions regarding the mandate are civilist, similar to ours, such as: Spain, Mexico, Brazil, Colombia, Costa Rica, Chile, Ecuador, El Salvador, Guatemala, Honduras, Nicaragua, Panama, Paraguay,

 © 2019 Thomson Reuters. No claim to original U.S. Government Works. 4

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Peru, Dominican Republic, Uruguay, Venezuela, Argentina, and Canada, to name a few.

Given this panorama, the contemporary trend is to adjust the legal norms of the mandate in order to achieve greater legal uniformity to make this international economic circulation viable.

We should not ignore this reality and some clear and precise provisions of the Civil Code that are in keeping with therewith, and make interpretations that do match the present and future juridical, social, and economic landscape.

Based on the reasons expressed therein and reiterated herein, I dissent the latest ruling by the Court

Footnotes

1   Gladys appeared (on her own behalf and as the attorney-in-fact of Milagros), José A. Gorbea Vallés and Angel Gorbea Vallés,  Otto J. Riefkohl Gorbea, Madelaine J. Riefkohl Gorbea, y Lorraine J. Riefkohl Gorbea, as sellers of a property to the spouses Jesús E. Marrero Vázquez and Gina De Lucca Juncos.

2   The opinion specifies the need for the mandate to be express and gives writing guidelines for this purpose.

**End of Document**                                      © 2019 Thomson Reuters. No claim to original U.S. Government Works.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate  translation, to the best of my abilities, of the document in Spanish which I have seen.