# EXHIBIT 12

McCONNELL VALDES
LIBRARY

JOSE TRIAS MONGE

Presiding Judge
Supreme Court of Puerto Rico
LL.B., A.M. Harvard University
J.S.D., Yale University

# CONSTITUTIONAL HISTORY OF PUERTO RICO

## VOLUME III

UNIVERSITY OF PUERTO RICO PRESS
1982

Certified to be a true and correct translation from its original.

*[signature]*
Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488
10/21/15

CONSTITUTIONAL HISTORY OF PUERTO RICO          Pages 223 to 225

6. **PROCEDURE IN CASE OF NON-APPROVAL OF THE BUDGET: SECTION 6 OF ARTICLE VI**

The recommendations regarding this matter also originated from the Commission of the Legislative Branch, which supported a text equal to the one contained in the Jones Act,[64] as amended by the Olmsted Act to resolve the *impasse* of 1909, with certain amendments.[65] The article drafted by the Commission read as follows:

"19. When at the termination of an economic year the necessary appropriations for the ordinary expenses of the operation of the government and the payment of the interest and amortization of the public debt in the following economic year have not been approved, there will govern during said economic year the items consigned in the last laws approved for the same goals and purposes, in everything that is applicable, and the Governor will authorize the necessary disbursements to that effect."[66]

Iriarte objected without success the variations that were being made to the Organic Act.[67] Miguel Angel García Méndez obtained, however, the correction of a defect of the recommended text. As the draft of the Commission read, it

---

[64] See first paragraph of Art. 34.
[65] *Infra*, 758 et seq.
[66] *Diary of Sessions,* Vol. IV, page 2587. The amendments made by the Commission to the Organic Act consisted principally in adding a very necessary reference, to the payment of interest and to the amortization of the public debt and in delegating only to the Governor, instead of to the Treasurer, prior consultation with the same, the function of authorizing the disbursements.
[67] *Ibid,* Vol. II, page 888.

Certified to be a true and correct translation from its original.

Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488
10/21/15

3

could conceivably be interpreted, even though said interpretation would have certainly been contrary to the history of the Olmsted Act, in the sense that it perpetuated the prior budget for one more year, regardless of what was the will of the Legislative Assembly. The amendment, as it was finally drafted by the Style Commission, consisted in adding the final phrase of the section, which reads: "until the corresponding appropriations are approved".[68] The power of the Legislative Assembly and of the Governor was left clearly in the record to suspend at any time an *impasse* that arose in any year regarding the approval of the budget through the adoption of the corresponding laws of appropriation.

## 7. LIMITATION TO THE APPROPRIATIONS: SECTION 7 OF ARTICLE VI

The exact language of the current section 7 of Article VI also originates from a recommendation contained in the proposition drafted by the Commission of the Legislative Branch, which reads as follows:

"20. The appropriations made for an economic year may not exceed the total resources calculated for said economic year, unless it is provided by law of the same legislative session for the imposition of sufficient taxes to cover said assignments."[69]

The source of this provision was the last paragraph of Article 34 of the Jones Act, which, as we have stated, had been derogated by the Bases Act. In this case, nevertheless, it was determined by the will of the popular majority to repeat the substance of the same, despite its limiting nature and even though its use was not very frequent

---

[68] *Ibid,* Vol. II, pages 890-891.
[69] *Ibid,* Vol. IV, page 2587.

Certified to be a true and correct translation from its original.

Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488
10/21/15

in the constitutions of the states,[70] in order to maintain the good credit of the bonds of the people of Puerto Rico, and of its agencies in the market of the United States, already accustomed to the restrictions that the Jones Act imposed on the government of Puerto Rico.[71] The same consideration would dictate the writing of the following section of Article VI, Section 8, which we will comment briefly. In the study of these and other sections which could affect the finances and the credit of Puerto Rico, there intervened in different phases Rafael Picó, Sol Luis Descartes, Rafael Buscaglia, Cándido Oliveras, Aida Martínez Schettini and other distinguished officials who usually advised the government in these matters. The same method was used in other instances with other types of matters, attempting as far as possible that the Constitution pass through the sieve, at least in its most technical aspects, of the persons with greater experience in the different matters involved.

The Commission of the Legislative Branch made a very important change in drafting the section which we now discuss in the old language of the Organic Act regarding this particular matter. What the last paragraph of Article 34 of said Law prohibited was that the appropriations made during any economic year exceed "the total rents provided pursuant to the law...", while in the text approved by the Convention it talks about not exceeding the "total resources

---

[70] Notes and Comments... page 103.
[71] The fear to the reaction of the buyers of bonds to the elimination of this type of restriction was a significant part of the constitution the existed in Puerto Rico in 1952.

**Certified to be a true and correct translation from its original.**

*Aida Torres, USCCI*
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488
10/21/15

5

calculated for said economic year." The difference was substantial. The concept of "total rents" used in the Jones Act, as explained by Luis Negrón López in the course of the debates,[72] had been interpreted as including only the tax income and the surpluses that could be available from prior economic exercises. The new phrase "total resources calculated" was much more comprehensive and included, in addition to those indicated, non-tax income, such as those originating from the sale of properties, federal aids, the proceeds of the issuance of bonds, the surplus from benefits obtained by public corporations, etc.

The section was not subject to greater debate, except that Iriarte attempted to also insert into the Constitution paragraph 15 of Article 34 of the Jones Act, which limited the matters that could be included in the general budget bill. Said paragraph was an example of the excessive detail of the Jones Act and this time the popular majority resisted the republican effort to make the new Constitution as similar as possible to the old Organic Act.[73]

## 8. PRIORITY OF THE DISBURSEMENTS: SECTION 8 OF ARTICLE VI

This section, as we have indicated, is intimately linked to the prior one and principally pursued the same purpose of protecting and even increasing the good credit of the bonds of Puerto Rico.[74] The text recommended by the Commission was the following:

---

[72] Diary of Sessions, Vol. II, Page 893.
[73] *Ibid,* pages 895-899.
[74] This was indicated by the Commission in its report when commenting on Art. 21 of its draft, *Ibid,* Vol. IV, page 2587.

Certified to be a true and correct translation from its original.

Alda Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488
10/21/15

"When the resources available for any economic year are not sufficient to cover the appropriations approved for the same year, in the first term there will be paid the interest and the amortization of the public debt and then it will proceed with the other disbursements according to the standard of priorities that the Legislative Assembly establishes by law."[75]

Only slight changes will be made to the style of the language cited.

This provision derives from paragraph 19 of Article 34 of the Jones Act, with the difference that it prescribed a complete order of priorities, alterable by the Governor, and placed in the first term, even though subject to said contingency, "The ordinary expenses of the legislative, executive and judicial departments of the Government of the State and the interests of any public debt...." As can be seen, the provision finally adopted by the Convention placed in absolute first term, and beyond the scope of the power of the Governor, the payment of interests and the amortization of the public debt. The circumstances of the real constitution dictated this measure. When the Jones Act was drafted, the public debt was extremely low. In 1952, however, it [the Government] already strongly depended on, Operation Bootstrap was in full swing, the maintenance and, preferably, the expansion of the public credit.[76]

There did not arise issues of importance in the debates on this section.[77] García Méndez, Ferré and other republican leaders supported in their original bill of constitution the

---

[75] *Loc Cit.*
[76] Thus the consideration since 1950 until it was achieved in 1962 of the expansion of the lending margin.
[77] Cf. *Diario de Sesiones,* Vol. III, pages 1961-1964.

exact repetition of what was provided in the Organic Act,[78]

Certified to be a true and correct translation from its original.

Aída Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488
10/21/15

7

exact repetition of what was provided in the Organic Act,[78] but they did not present said matter in the debates. The socialist sector originally supported the same solution, but it also had no objection to make to the popular proposal.[79]

### 9. RESTRICTIONS TO THE USE OF PROPERTIES AND PUBLIC FUNDS: SECTION 9 OF ARTICLE VI

This section has already been commented in discussing the freedom of religion and the principle of separation of Church and State.[80]

---

[78] See Prop. No. 103, Art. XXXIX.
[79] See Prop. No. 94, Art. X, Sec. 3
[80] Ante, Chapter XXXV, 4.

Certified to be a true and correct translation from its original.

Aida Torres, USCCI
Tel. 787.723.4644/787.225.8218
Fax: 787.723.9488
10/21/15