# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**SUPPLEMENTAL MEMORANDUM OF THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, AD HOC GROUP OF CONSTITUTIONAL DEBTHOLDERS, AND ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP. IN SUPPORT OF MOTION TO DISMISS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

The Ad Hoc Group of General Obligation Bondholders (the "<u>GO Group</u>"); the Ad Hoc Group of Constitutional Debtholders (the "<u>Constitutional Debtholders</u>")[2]; Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together "<u>Assured</u>," and collectively with the GO Group and the Constitutional Debtholders, "<u>Identified Movants</u>")[3] respectfully file this Supplemental Memorandum in support of their *Motion To Dismiss Omnibus Claim Objections To Claims Filed Or Asserted by Holders Of Certain Commonwealth General Obligation Bonds and Public Building Authority Bonds* (Dkt. No. 10702, the "<u>Joint Motion</u>").[4]

## INTRODUCTION

In their Joint Motion, filed today, Identified Movants (along with other creditors) have set forth the multiple, independent reasons that require dismissal of each of the Public Debt Claim Objections as a matter of law. In this Supplemental Memorandum, we set forth an alternative, independent reason requiring dismissal, this one particular to the 2012-2014 GO Claim Objection and the 2011 GO Claim Objection. In both of these objections, the Oversight Board and the UCC challenge GO Bonds issued by the Commonwealth based on the *PBA's* alleged status as a "sham." The core premise of their theory is that the PBA has always been a sham intended to end-run the Commonwealth's constitutional borrowing limit. The Board and the UCC contend that what were fraudulently advertised as bonds issued by the PBA, were really direct, primary obligations of the Commonwealth, which hence should be retroactively counted against the Commonwealth's

---

[2] The Ad Hoc Group of Constitutional Debtholders intends to file an amended verified statement in accordance with Federal Rule of Bankruptcy Procedure 2019 and the *Order Further Amending Case Management Procedures*, Dkt. No. 8027. First Pacific Advisors, LLC and VR Advisory Services, Ltd do not join in this Supplemental Memorandum, and take no position as to the arguments set forth herein.

[3] Identified Movants file this Motion exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

[4] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Joint Motion.

1

constitutional debt limit—something never done before in any state or territory. And the result of all this, they say, is that billions of dollars of *GO Bonds* must be invalidated.

There is no legitimate basis for that perverse result. As we have explained in the Joint Motion, the PBA is *not* a "sham," and the retroactive invalidation remedy sought in the Public Debt Claim Objections is unavailable as a matter of law. But even if there were any merit to the Objectors' constitutional challenge (which there is not), the only conceivable remedy would be against holders of those bonds issued through the alleged "sham" entity—*i.e.*, holders of *PBA Bonds*. The Objectors' contrary assumption—that GO Bonds should be invalidated—conflicts with basic principles of constitutional adjudication and the statutes under which the PBA issued its bonds. Thus, the 2012-2014 GO Claim Objection and the 2011 GO Claim Objection—both of which target *Commonwealth* GO Bonds based on a purported "sham" perpetrated though the *PBA*—fail for the additional reason that they are directed at the wrong issuer.

## ARGUMENT

**If Any Retroactive Remedy Were Appropriate As A Consequence Of Defects In The PBA Structure, It Would Necessarily Fall On The PBA And Holders Of PBA Bonds**

### A. The Consequences Of A Constitutional Violation (If Any) Must Be Borne By The Offending Parties

The core premise of the 2012-2014 GO Claim Objection is that the PBA is a "transparent sham[] designed to circumvent" the Commonwealth's "constitutional debt limit." 2012-2014 GO Claim Objection ¶ 5; see also, *e.g.*, *id.* ¶ 66 (describing the PBA's "purpose" as "circumvention of [the] constitutional debt limit[]"); *id.* ¶ 68 (referring to "public building authorities as a debt limit evasion device").

As the Joint Motion explains, that premise is profoundly mistaken. But even if it were correct, the result that Objectors seek—retroactive reclassification of the PBA Bonds into valid direct obligations of the Commonwealth—is unavailable to remedy that supposed constitutional

2

defect. To the contrary, if the Objectors are correct that a constitutional infirmity results from a fraud perpetrated through the PBA structure (and that the remedy for such a constitutional violation would be retroactive invalidation of debts), the only claims against the Commonwealth that should be invalidated are those created through the fraudulent and constitutionally infirm structure. That is, the only invalidated claims must be those against the Commonwealth asserted by or on behalf of (i) the holders of PBA Bonds (including any related guaranties) and (ii) the PBA itself (*e.g.*, the Commonwealth's obligation to pay or advance rent due under leases with the PBA).

That conclusion follows directly from case law featured prominently in the 2012-2014 GO Claim Objection itself. Consider, for example, *Ayer v. Commissioner of Administration*, 165 N.E.2d 885 (Mass. 1960) (cited at 2012-2014 GO Claim Objection ¶¶ 69-75). The court in that case concluded that the Massachusetts State Office Building Association was designed to evade constitutional restrictions on the incurrence of debt, reasoning that the "creation of the Association to execute the 'contract of lease' is merely one phase of an integrated plan of which the substantial result is constitutional evasion." *Id.* at 892. Thus, the court held that the statute creating the Association was "void upon its face," *id.*, and entered an injunction prohibiting government officials "from expending money, incurring obligations, or doing any act pursuant thereto," *id.* at 893. Applied here, that logic would establish that the PBA itself is unconstitutional, not (as the Objectors contend) that the PBA should be *rewarded* for its deception by granting PBA bonds status as direct Commonwealth obligations. To the extent that retroactive invalidation of claims were available to remedy that violation, therefore, claims against the Commonwealth relating to the PBA or its bonds would be invalidated—*not* claims on account of the Commonwealth's own GO Bonds.

3

The same conclusion follows from *Martin v. Oregon Building Authority*, 554 P.2d 126 (Or. 1976) (cited at 2012-2014 GO Claim Objection ¶¶ 76-79). There, the court held that the Oregon Building Authority Act was unconstitutional because, among other reasons, the Authority "lack[ed] . . . any real substance." *Id.* at 131. The court concluded that its "holding that for constitutional purposes we are going to look through the dummy corporation and that the bonds [issued by that corporation] are the debts of the state is sufficient to *invalidate the entire scheme*." *Id.* at 132-33 (emphasis added). Thus, the "purported leases" entered into with the state under the challenged law were "held invalid." *Id.* at 137.[5] Applied here, the court's holding that "the entire scheme" must be invalidated upon a finding of a constitutional violation would result in invalidation of the Commonwealth's obligations relating to leases with the PBA and its guaranty of the PBA Bonds, not in treating those bonds as valid and bestowing a windfall on them to the detriment of later-issued GO Bonds. Yet bestowing that windfall is precisely what Objectors propose to do, without citing *any* authority in support.

Indeed, the UCC *endorsed* the same position in its role as Commonwealth Agent in the Commonwealth-COFINA litigation: "If the purpose of a statute is to create a financing structure of which the substantial result is constitutional evasion, it is unconstitutional and void." Second Amended Complaint, Dkt. No. 221 in Adv. Proc. 17-257-LTS, ¶ 146; see also *id.* ¶ 154 (alleging that COFINA's enabling legislation was "unconstitutional on its face as an evasion of the Constitutional Debt Limits and Constitutional Debt Priority"); *id.* ¶ 155 (same allegations with respect to purported transfer of SUT revenues to COFINA); see also *id.* ¶ M of Prayer for Relief section (seeking declaration that "the purported transfer is unconstitutional on its face as an evasion

---

[5] See also, *e.g.*, *Bennett v. Commissioners of Rockingham Cty.*, 92 S.E. 603, 605 (N.C. 1917) (holding that "when an essential portion" of bond issuance structure is found to be invalid on grounds of unconstitutionality, "the *entire scheme must fail*") (emphasis added).

4

of the Constitutional Debt Limits and Constitutional Debt Priority"). The UCC reiterated this position throughout the course of the litigation. See UCC's Motion for Summary Judgment, Dkt. No. 322 in Adv. Proc. No. 17-257-LTS, at 34. The UCC thus argued that "the entirety of the Act 91 structure . . . effected a constitutional evasion," and that, as a consequence, "the entire structure is invalid." UCC's Omnibus Reply Memorandum in Support of Motion for Summary Judgment, Dkt. No. 400 in Adv. Proc. 17-257-LTS, at 27 n.19; *id.* at 28 n.20 ("If this court finds that Act 91 enabled the Commonwealth to evade the constitutional debt provisions, then no aspect of the COFINA structure . . . has an independent, constitutional purpose."). It explained that the "[t]he appropriate result following a finding that Act 91 is unconstitutional is to invalidate the entire structure . . . ." *Id.* at 28; see also UCC's Reply Brief in Support of Motion to File Revised Second Amended Complaint, Dkt. No. 218 in Adv. Proc. 17-257-LTS, at 1 (arguing that the purported transfer of SUT revenues to COFINA was subject to challenge because it was "integral to this evasion of the Puerto Rico constitution").[6]

Put simply, the UCC was right then and is wrong now. If the Objectors are otherwise correct, then it is the PBA that is constitutionally infirm because it amounts to an impermissible evasion of the debt limit. Accordingly, to the extent any retroactive remedy is available at all, the proper remedy would be to invalidate the claims owed to the PBA and the holders of the PBA Bonds. Because there is no legitimate basis for a remedy targeting *GO Bonds*, the 2012-2014 GO

---

[6] It requires little imagination to discern why the UCC abruptly changed its tune, and why the Oversight Board and its other allies have embraced the bizarre remedy of rewarding participants in the supposed PBA fraud instead of seeking to invalidate the PBA obligations. Simply put: ten is more than four. By targeting later-issued GO Bonds (and PBA Bonds guaranteed after the Objectors contend the Commonwealth has exceeded the debt limit), the Objectors purport to exert leverage over roughly $10 billion in bondholder claims. Pursuing the logically coherent remedy of attacking all PBA obligations, by contrast, would have affected less than $4 billion in bondholder claims. As with the larger claim objection enterprise, however, tactical preferences are no substitute for a valid legal basis.

5

Claim Objection and the 2011 GO Claim Objection are entirely misdirected. They should accordingly be dismissed.

### B. The PBA Had No Authority To Issue Direct Obligations Of The Commonwealth

Aside from the constitutional principles addressed above, Objectors' effort to transform bonds issued by the PBA into direct obligations of the Commonwealth is unavailing because any such obligations would be *ultra vires* as a matter of Puerto Rico statutory authority.

No statute authorized the Commonwealth to incur direct obligations to holders of PBA Bonds. Rather, the PBA Enabling Act authorizes the Commonwealth only to guarantee bonds issued *by the PBA*: "The Government of Puerto Rico hereby guarantees the payment of the principal of and interest on outstanding bonds . . . issued from time to time *by the Public Buildings Authority* for any of its purposes authorized by §§ 901 et seq. of this title." 22 L.P.R.A. § 907a (emphasis added). Not only does the statute limit the Commonwealth to guaranteeing the PBA debt, it provides that the Commonwealth's guaranty is expressly conditional—*i.e.*, the Commonwealth is responsible as guarantor only "[i]f at any time the revenues or income and any other monies of the [PBA], pledged for the payment of the principal of and interest on such bonds, are not sufficient for the payment of such principal and interest at their maturity date." *Id.* Moreover, the PBA Enabling Act is clear that the PBA and the Commonwealth lack authority to incur direct obligations on behalf of the Commonwealth: "[T]he Authority shall have no power whatsoever at any time or in any manner to pledge the credit . . . of the Commonwealth of Puerto Rico . . . ; neither shall the Commonwealth of Puerto Rico . . . be liable for the payment of the principal of or interest on any bonds issued by the Authority." 22 L.P.R.A. § 906(a)(16).

Under the Puerto Rico Constitution, "[t]he power of the Commonwealth of Puerto Rico to contract and to authorize the contracting of debts shall be exercised as determined by the

6

Legislative Assembly" (subject to the restrictions imposed by the constitutional debt limit). P.R. Const. art. VI, § 2. Without legislative authorization, any direct obligation would be *ultra vires*. And under Objectors' position that any obligation issued in excess of the Commonwealth's legal authority is "null and void" for all purposes (2012-2014 GO Claim Objection ¶ 99), a conclusion that the Commonwealth's guaranty of the PBA Bonds converts them into forbidden direct obligations would necessarily require that the guaranty be invalidated.

Yet again, the UCC's position is betrayed by its efforts to attack other creditors. On March 12, 2019, the UCC filed an omnibus objection to claims asserted by holders of bonds issued by the Commonwealth's Employees Retirement System ("ERS"). See Dkt. No. 5580. The UCC's objection contends that the bonds issued by ERS were *ultra vires* because ERS lacked statutory authorization to issue bonds to the public through underwriters. See *id.* ¶ 2. The UCC therefore contends that, "[b]ecause the ERS Bonds were issued *ultra vires*, they are null and void, and the bondholders have no remedy against ERS." *Id.* ¶ 3. The same logic would require invalidation of the Commonwealth's guaranty obligations with respect to the PBA Bonds insofar as the PBA Bonds are recharacterized as direct obligations of the Commonwealth—that is, a form of obligation that the Commonwealth lacked statutory authorization to incur. The statute does not permit the PBA to pledge the Commonwealth's full faith and credit, and that restriction cannot be avoided by the UCC's strategic litigation preferences.

The same conclusion extends to the Commonwealth's covenant to pay or advance rent due under the PBA Leases between the PBA and any "department, agency, instrumentality, authority or public corporation of the Commonwealth." 22 L.P.R.A. § 916. According to the Oversight Board and the UCC, the Commonwealth's obligation to pay or advance rent makes the PBA Bonds direct obligations of the Commonwealth. See 2012-2014 GO Claim Objection ¶ 86 ("Even if the

7

Commonwealth had not explicitly guaranteed the bonds, it did so implicitly by guaranteeing the rents . . . ."). If so, the Commonwealth's obligation to pay or advance rent would likewise be invalid, because it would otherwise illegally convert the PBA Bonds into direct Commonwealth obligations.

Thus, the Objectors' allegations and legal arguments are fundamentally self-defeating. If accepted, they would lead to the conclusion that the Commonwealth's obligations to the PBA and its bondholders are invalid and hence unenforceable. Under well-settled principles of law, there would thus be no basis for including debt service owed on the PBA Bonds in the constitutional debt-limit calculation. See Joint Motion pp. 59-61 (explaining that, if prior bonds are invalid and unenforceable, they are not included in a debt-limit calculation). Because Objectors' core challenge rests on the retroactive inclusion of the PBA's debt service in the constitutional calculation, the 2012-2014 GO Claim Objection and the 2011 GO Claim Objection fail as a matter of law and should be dismissed.

## CERTIFICATION

In accordance with paragraphs 4-5 of the *Interim Case Management Order* (Dkt No. 9619), Identified Movants certify that (i) they have taken reasonable efforts to avoid duplication and submit a brief that is no longer than necessary, and (ii) they have used reasonable efforts to draft a single brief and coordinate to minimize duplicative briefs.

## NOTICE

Notice of this Supplemental Memorandum has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Puerto Rico; (iii) the Oversight Board; (iv) the Official Committee of Unsecured Creditors; (v) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (vi) the Official Committee of Retired Employees of the Commonwealth of Puerto Rico; (vii) insurers of bonds

issued or guaranteed by the Commonwealth; (viii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Commonwealth; (ix) the PBA; (x) U.S. Bank Trust National Association and U.S. Bank National Association, as fiscal agents for the PBA Bonds, and (xi) all parties that have filed a notice of appearance in the above-captioned Title III cases.

## CONCLUSION

For the foregoing reasons, as well as those stated in the Joint Motion to Dismiss, the 2012-2014 GO Claim Objection and the 2011 GO Claim Objection should be dismissed.

Dated: February 5, 2020

Respectfully submitted,

/s/ Ramón Rivera Morales
J. Ramón Rivera Morales
USDC-PR Bar No. 200701
Andrés F. Picó Ramírez
USDC-PR Bar No. 302114
JIMÉNEZ, GRAFFAM & LAUSELL
P.O. Box 366104
San Juan, PR 00936
Telephone: (787) 767-1030
Facsimile: (787) 751-4068
Email: rrivera@jgl.com

/s/ Mark T. Stancil
Mark T. Stancil (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
Telephone: (202) 303-1133
Facsimile: (202) 303-2133
Email: mstancil@willkie.com

/s/ Andrew N. Rosenberg
Andrew N. Rosenberg (admitted *pro hac vice*)
Karen R. Zeituni (admitted *pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Email: arosenberg@paulweiss.com

/s/ Lawrence S. Robbins
Lawrence S. Robbins (admitted *pro hac vice*)
Gary A. Orseck (admitted *pro hac vice*)
Kathryn S. Zecca (admitted *pro hac vice*)
Donald Burke (admitted *pro hac vice*)
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
2000 K Street, N.W., 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: lrobbins@robbinsrussell.com

*Counsel to the Ad Hoc Group of General Obligation Bondholders*

| CASELLAS ALCOVER & BURGOS P.S.C. | CADWALADER, WICKERSHAM & TAFT LLP |
|---|---|
| By: */s/ Heriberto Burgos Pérez* | By: */s/ Howard R. Hawkins, Jr.* |
| Heriberto Burgos Pérez<br>USDC-PR 204809<br>Ricardo F. Casellas-Sánchez<br>USDC-PR 203114<br>Diana Pérez-Seda<br>USDC-PR 232014<br>P.O. Box 364924<br>San Juan, PR 00936-4924<br>Telephone: (787) 756-1400<br>Facsimile: (787) 756-1401<br>Email: hburgos@cabprlaw.com<br>rcasellas@cabprlaw.com<br>dperez@cabprlaw.com | Howard R. Hawkins, Jr.*<br>Mark C. Ellenberg*<br>William J. Natbony*<br>Ellen M. Halstead*<br>Thomas J. Curtin*<br>Casey J. Servais*<br>200 Liberty Street<br>New York, NY 10281<br>Telephone: (212) 504-6000<br>Facsimile: (212) 504-6666<br>Email: howard.hawkins@cwt.com<br>mark.ellenberg@cwt.com<br>bill.natbony@cwt.com<br>ellen.halstead@cwt.com<br>thomas.curtin@cwt.com<br>casey.servais@cwt.com |
| *Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* | \* Admitted *pro hac vice*<br><br>*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* |

| | |
|---|---|
| **G. CARLO-ALTIERI LAW OFFICES, LLC** | **MORRISON & FOERSTER LLP** |
| By: */s/ Gerardo A. Carlo* <br> Gerardo A. Carlo <br> USDC PR No. 112009 <br> Telephone: (787) 247-6680 <br> gacarlo@carlo-altierilaw.com | By: */s/ Gary S. Lee* <br> James M. Peck (admitted *pro hac vice*) <br> Gary S. Lee (admitted *pro hac vice*) <br> Lena H. Hughes <br> Andrew R. Kissner (admitted *pro hac vice*) <br> 250 West 55th Street |
| By: */s/ Mª Mercedes Figueroa y Morgade* <br> Mª Mercedes Figueroa y Morgade <br> USDC PR No. 207108 <br> Telephone: (787) 234-3981 <br> figueroaymorgadelaw@yahoo.com | New York, New York 10019 <br> Telephone: (212) 468-8000 <br> Facsimile: (212) 468-7900 <br> jpeck@mofo.com <br> glee@mofo.com <br> lhughes@mofo.com |
| 254 San Jose St., Third Floor <br> San Juan, Puerto Rico 00901 <br> Telephone: (787) 247-6680 <br> Facsimile: (787) 919-0527 | akissner@mofo.com <br><br> -and- <br><br> Joseph R. Palmore <br> 2000 Pennsylvania Avenue, NW <br> Washington, D.C. 20006 <br> Telephone: (202) 887-6940 <br> Facsimile: (202) 887-0763 <br> jpalmore@mofo.com |

*Counsel for the Ad Hoc Group of Constitutional Debtholders*