**Hearing Date: April 30, 2020 at 10:00 a.m. (AST) / (ET)**
**Objection Deadline: March 18, 2020 at 5:00 p.m. (AST) / (ET)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. | PROMESA<br>Title III<br><br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**THE QTCB NOTEHOLDER GROUP'S RESPONSE TO CERTAIN**
**OMNIBUS OBJECTIONS AND LIMITED JOINDER TO THE MOTION**
**OF THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, AD HOC**
**GROUP OF CONSTITUTIONAL DEBTHOLDERS, ASSURED GUARANTY CORP.**
**AND ASSURED GUARANTY MUNICIPAL CORP., AND THE INVESCO FUNDS**
**TO DISMISS OMNIBUS CLAIM OBJECTIONS TO CLAIMS FILED OR**
**ASSERTED BY HOLDERS OF CERTAIN COMMONWEALTH GENERAL**
**OBLIGATION BONDS AND PUBLIC BUILDINGS AUTHORITY BONDS**

To the Honorable United States District Court Judge Laura Taylor Swain:

The QTCB Noteholder Group[1] hereby joins, in part, the *Motion of the Ad Hoc Group of General Obligation Bondholders, Ad Hoc Group of Constitutional Debtholders, Assured Guaranty Corp. and Assured Guaranty Municipal Corp., and the Invesco Funds to Dismiss Omnibus Claim Objections to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds and Public Buildings Authority Bonds* [Dkt. No. 10702] (the "Motion") and responds to the following objections to the validity of bonds issued by the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Public Buildings Authority (the "PBA"): the (i) *Omnibus*

---

[1] The term, "QTCB Noteholder Group" is defined in the Notice of Appearance and Request for Notice [Dkt. No. 134]. In accordance with the *Interim Case Management Order* [Dkt. No. 9619], the QTCB Noteholder Group certifies that it used reasonable efforts to coordinate with the Identified Parties (as defined in the Interim Order) to minimize duplicative briefs.

*Objection of (I) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligations Bonds* [Dkt. No. 4784] (the "2012-2014 Objection"), (ii) *Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bonds* [Dkt. No. 7057] (the "2011 Objection"), and (iii) *Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of Certain Puerto Rico Public Buildings Authority Bonds* [Dkt. No. 8141] (the "PBA Objection").[2] We refer to the Financial Oversight and Management Board and the Official Committee of Unsecured Creditors as the "Objectors," and the three cited objections as the "Objections."

## LIMITED JOINDER

The QTCB Noteholder Group joins the following portions of the Motion:

- Section I.A (PBA Bonds Cannot be Recharacterized As Direct–Issued GO Debt)

- Section II.A (Even if the [Objections] Correctly Construed the Puerto Rico Constitution, They Provide No Basis for Granting the Extreme Remedy of Retroactive Invalidation).[3]

---

[2] The Objections challenge the following issuances: Public Improvement Refunding Bonds, Series 2012 A and Series 2012 B (GO Bonds); GO Bonds of 2014, Series A; Public Improvement Bonds of 2011; Series C, Series D, and Series E (GO Bonds) of 2011; Government Facilities Revenue Bonds, Series R (Qualified School Construction Bonds – Issuer Subsidy), Series S, Series T (Qualified Zone Academy Bonds – Direct Payment), and Series U (collectively, the "Challenged Bonds").

[3] The QTCB Noteholder Group takes no position with regard to the remaining arguments and bases set forth in the Motion.

To those arguments, the QTCB Noteholder Group adds the "Additional Arguments" set out below. The QTCB Noteholder Group does not waive, and expressly preserves all other factual and legal arguments that support allowance of its claims in these Title III Cases.

## ADDITIONAL ARGUMENTS

The Objectors do not dispute that (i) the Commonwealth and PBA issued bonds held by the members of the QTCB Noteholder Group; (ii) each respectively received and benefited from the proceeds of such bonds; and (iii) those bonds remain unpaid. They assert only that (a) the debt limit in Article VI of the Puerto Rico Constitution (the "PR Constitution") was violated because the Commonwealth guaranteed certain bonds issued by PBA, and (b) the appropriate remedy is complete forfeiture of any claim in respect to Challenged Bonds.

### A. No Bonds Were Issued in Violation of the Constitutional Debt Limit

As set forth in the Motion, the Objections fail summarily, because each relies on the same legally-flawed premise—that PBA's bond debt may be recharacterized as direct debt of the Commonwealth in calculating the PR Constitution's debt limit—and because PBA is not a sham or *alter ego* of the Commonwealth. *See* Motion at 12-28.

For the reasons more fully elaborated in Section I.A of the Motion, which is expressly incorporated herein by reference and in which the QTCB Noteholder Group joins, PBA bonds are not "money borrowed directly by the Commonwealth" that is "evidenced by bonds or notes for the payment of which the full faith, credit and taxing power of the Commonwealth shall be pledged[.]" P.R. Const. art. VI, § 2. Because PBA bonds are not direct debt of the Commonwealth and there is no legal basis to recharacterize PBA bonds as having been issued directly by the Commonwealth, nothing in Article VI affects the legality of their issuance. Accordingly, there has been no breach of the PR Constitution's debt limit and the Objections fail as a matter of law and should be summarily overruled.

### B. Even if Certain Bonds Were Issued in Violation of the Constitutional Debt Limit, Invalidation is Not the Remedy

The Objections urge on the Court a profound and legally-insupportable windfall: retroactive invalidation and total disallowance of the Challenged Bonds. The Objectors seek a remedy that offends long-settled principles of equity. As Section II.A of the Motion demonstrates, none of the cases cited in the Objections actually endorsed retroactive invalidation, and the only decision on point *rejected* it. The Additional Arguments highlight two points: the relevant structure of the PR Constitution's text and the practical impossibility of the burden that the Objectors would place on current and future purchasers in Commonwealth and PBA note issues.

> *i. The Constitutional Structure Shows that the Debt Limit Targets the Legislative Branch.*

Article I of the PR Constitution establishes the Commonwealth, and creates three branches of government to exercise its sovereign powers. *See* P.R. Const. art. I. Article III confers all legislative power upon the Legislative Assembly. *See* P.R. Const. art. III. Article VI contains general provisions. *See* P.R. Const. art. VI. Section 2 of Article VI provides for certain fiscal powers: among them, powers to levy taxes and to contract for debts. *See* P.R. Const. art. VI, § 2. These powers are expressly legislative—they "shall be exercised as determined by the Legislative Assembly." *Id.*

Having conferred on the Legislative Assembly the power to contract for debt, the PR Constitution then limits that power. It provides that no debts of a defined category "shall be issued by the Commonwealth," *id.*, if issuance would trigger a prescribed formula:

> [N]o direct obligations of the Commonwealth for money borrowed directly by the Commonwealth evidenced by bonds or notes for the payment of which the full faith, credit and taxing power of the Commonwealth shall be pledged ***shall be issued by the Commonwealth* if** . . . .

-4-

P.R. Const. art. VI, § 2 (emphasis added). Because the text is a limitation of legislative power, the obvious remedy for breach is *relief targeting the legislative branch*. That remedy may be political, or it may be a judicial decree enjoining an offending issuance, but nothing in the text suggests that the remedy for a *legislative* breach is to impose a penalty on the debt holder who, relying on that issuance, delivered valuable consideration.

This prospective textual limit—on issuance only—does not declare that debt actually issued in violation of Section 2 is invalid, nor limit the right of creditors to present such debt for payment, or even suggest that such debt would not enjoy the full faith and credit of the Commonwealth. In short, nothing in the text of the PR Constitution renders general obligation bonds unenforceable, even if issued or guaranteed in violation of the constitutional injunction.

> ii. *It Would Have Been Impossible for a Bondholder to Protect Itself From the Forfeiture Now Sought*

Consider the Series R PBA bonds, issued in 2011. Because the Commonwealth's guarantee of these bonds was subject to the constitutional debt limit, the bonds were sold with a certificate, executed by the Secretary of the Treasury of the Commonwealth on August 24, 2011, certifying that the guarantee complied with Art. VI, section 2 of the PR Constitution. *See* Certificate as to Borrowing Power of Commonwealth of Puerto Rico Under Section 2 of Article VI of the Commonwealth Constitution; *see also* Puerto Rico Public Buildings Authority Resolution No. 1596, adopted Aug. 10, 2011 at B-4 ("All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the resolutions of the Authority to happen, exist and be performed precedent to and in the issuance of this bond have happened, exist and have been performed as so required.").[4]

---

[4] A copy of the certificate is attached hereto as Exhibit A. In accordance with Rule 201(b) of Federal Rules of Evidence and the common law rule, the Court may take judicial notice of its own docket and publicly available documents and transcripts (including the bond resolutions, closing documents, and

The certificate includes a detailed calculation, which depends in part on these data points:

- The total paid by the Commonwealth under bond or note guaranties in the previous year;

- A schedule of the *total* outstanding principal on *38 then-outstanding bond and note issues*;

- The total principal and interest that might be paid by the Commonwealth on its 38 issues in any year (the Secretary did this by using the maximum payable under the 38 collective issues for any year); and

- The total revenues from "Internal Sources" for the relevant years.

Relying on the certificate, bondholders purchased bonds, and the proceeds were distributed to PBA for its use.[5]

The Objectors now contend that the Secretary's calculations were wrong, and the bond purchasers therefore forfeited their investment. They seek a judicial ruling instructing the capital markets that, in future, investors must reject official assurances and calculations provided by Puerto Rico's Secretary of the Treasury, and accurately perform the calculation themselves, on pain of forfeiture.

How would a prospective bond purchaser have done so in 2011? It would have to satisfy itself as to what the "Total Revenues from Internal Sources" were for each of the past two years. *See* Ex. A. It would have to locate from the Commonwealth the sums actually paid on guaranties in the previous year. *Id.* And it would have to review *38 bond indentures* to calculate the principal and interest paid in the previous year (or the maximum payable in any year). *Id.* Where it would

---

official statements) of the Challenged Bonds which are necessarily incorporated into the Objections by reference and widely available to the public). *See*, *e.g.*, *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of facts on government website).

[5] This approach was typical. *See*, *e.g.*, 2012 GO Bond Resolution at B-4, B-11 ("that . . . the total indebtedness of the Commonwealth of Puerto Rico, including this bond, does not exceed any debt or other limitation prescribed by law.");

find data of sufficient reliability to overcome the Secretary's certified calculation is not explained in the Objections.

But the prospective bond purchaser's efforts to avoid forfeiture would scarcely have begun. Because the Objectors say the error here lies in failing to discern that despite sixty years of operations, PBA is really an *alter ego* of the Commonwealth, all future bondholders would have to undertake *alter ego* analyses—not just of PBA, but of any affiliate that might later be argued to be an *alter ego*. Those analyses would be fact intensive—in PBA's case, the Motion shows that review involves legislative grants, the facts of governance, of lease terms, of corporate operations—much of which is not publicly available. *See generally* Motion at 18-28. And even *that* factual analysis would not be enough. For the prospective bond purchaser would have to identify (despite several published decisions to the contrary in PBA's case, *see* Motion at 20) the entities that a later court would consider to be *alter egos* of the Commonwealth.

In short, the Objections assert that the QTCB Noteholder Group and all similarly situated bondholders should suffer a total forfeiture because they were unable to do the impossible. But the law abhors a forfeiture—not simply to protect those who cannot do the impossible, and who reasonably rely on calculations that are peculiarly within government knowledge—it abhors a forfeiture to protect the Commonwealth as well. Were the Court's ruling to impose this jeopardy on bond purchasers, no sane investor would ever buy a Puerto Rico bond again.

To state the obvious, a rule forcing bondholders to do the impossible, on pain of forfeiture would not be equitable. That explains why courts hold that bonds that on their face purport to comply with applicable constitutional limitations cannot be retroactively nullified based on a later allegation of non-compliance. *See*, *e.g.*, *Bd. of Comm'rs of Gunnison Cty. v. E.H. Rollins & Sons*, 173 U.S. 255, 274-75 (1899) (refusing to invalidate bonds that incurred "an indebtedness not

authorized by the constitution" because "the recital in the bonds" stated "that they did not create a debt in excess of the constitutional limit"). This rule follows from "the sound principle" that "legal defects which might have application in a proceeding to prevent the issuance and negotiation of municipal bonds will not be allowed to authorize the repudiation of bonds which have come into the possession of bona fide holders." *Johns-Manville Corp. v. Vill. of DeKalb, Mo*., 439 F.2d 656, 660 n.6 (8th Cir. 1971) (recognizing that "bona fide purchasers" will prevail "where municipalities issue bonds containing recitals of compliance with governing constitutional and statutory provisions . . . .").

The Objections may summarily be overruled because the remedy they seek is unavailable as a matter of law.

## NOTICE

Notice of this Response and Limited Joinder has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Puerto Rico; (iii) the Oversight Board; (iv) the Official Committee of Unsecured Creditors; (v) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (vi) the Official Committee of Retired Employees of the Commonwealth of Puerto Rico; (vii) insurers of bonds issued or guaranteed by the Commonwealth; (viii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Commonwealth; (ix) the PBA; (x) U.S. Bank Trust National Association and U.S. Bank National Association, as fiscal agents for the PBA Bonds, and (xi) all parties that have filed a notice of appearance in the above-captioned Title III cases.

## CONCLUSION

For all of these reasons, and those set out in Sections I.A and II.A of the Motion, the Objections should be summarily overruled.

Dated: February 5, 2020
Guaynabo, Puerto Rico

**Morgan, Lewis & Bockius LLP**

*/s/ Kurt A. Mayr*
Kurt A. Mayr (admitted *pro hac vice*)
David L. Lawton (admitted *pro hac vice*)
Shannon B. Wolf (admitted *pro hac vice*)
One State Street
Hartford, CT 06103-3178
Tel. (860) 240-2700
Fax: (860) 240-2701
kurt.mayr@morganlewis.com
david.lawton@morganlewis.com
shannon.wolf@morganlewis.com

Sabin Willett (*pro hac vice pending*)
One Federal Street
Boston, MA 02110-1726
Tel: (617) 951-8775
sabin.willett@morganlewis.com

**Correa-Acevedo & Abesada Law Offices, PSC**

*/s/ Sergio Criado*
Sergio Criado
USDC-PR No. 226307
Roberto Abesada-Agüet
USDC-PR No. 216706
Centro Internacional de Mercadeo, Torre II
# 90 Carr. 165, Suite 407
Guaynabo, P.R. 00968
Tel. (787) 273-8300
Fax (787) 273-8379
ra@calopsc.com
scriado@calopsc.com

*Co-Counsel for the QTCB Noteholder Group*

**I HEREBY CERTIFY** that on February 5, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send automatic notifications of such filing to all attorneys of record.

*/s/ Sergio Criado*
Sergio Criado

Centro Internacional de Mercadeo II
#90 Carr. 165 Suite 407
Guaynabo, Puerto Rico 00968-8064
Tel. (787) 273- 8300
scriado@calopsc.com