# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

-----------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

## AMENDED REPORT AND RECOMMENDATION OF THE MEDIATION TEAM

## Background

Pursuant to the *Order Regarding Stay Period and Mandatory Mediation* dated July 24, 2019 [ECF No. 8244][2] (the "Order"),[3] the Mediation Team appointed in the Title III Cases concurrently performed two tasks.  First, the Mediation Team addressed the scheduling and

---

[1]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the  Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).  The Title III cases commenced by the Commonwealth, COFINA, HTA, ERS, PREPA, and PBA are referred to herein as the "Title III Cases."

[2]    All ECF numbers refer to filings in the Commonwealth's Title III Case, No. 17 BK 3283-LTS.

[3]    On October 28, 2019, the Court entered its *Order Granting Urgent Joint Motion of Oversight Board and AAFAF for Order Extending (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* [ECF No. 9016], pursuant to which the stay provided for in the July 24 Order was extended until December 31, 2019 and certain related dates, including the date for the filing of the Mediation Team's report, were also correspondingly extended.  On December 19, 2019, the Court entered the Bridge Order (defined below), further extending the stay as to certain contested matters and adversary proceedings through January 31, 2020.  On December 27, 2019, the Court entered the Amended Bridge Order (defined below), further extending the stay as to certain contested matters and adversary proceedings through March 11, 2020.

sequencing of issues identified in the Order or identified by the parties as issues relevant to

confirmation of plan(s) of adjustment for one or more of the Title III debtors.  Second, the

Mediation Team engaged the parties in substantive mediation sessions as the Order directed.

To address the scheduling issues initially raised in the Order, the Mediation Team

conducted meetings with virtually all of the principal parties to the relevant Title III Cases.  The

Mediation Team next solicited written scheduling recommendations.  The goal of this scheduling

exercise was to streamline and simplify the many contested matters and adversary proceedings

currently pending, and those that are anticipated to be commenced in the months to come absent

agreement on a plan(s) of adjustment.  Unfortunately, the parties' views with respect to

scheduling were quite diverse, making reconciling their disparate views exceedingly difficult.

But, after carefully considering all comments and views, the Mediation Team circulated a

preliminary scheduling proposal that attempted to balance the myriad of competing

considerations and categorized pending matters, and certain additional issues thought necessary

to be determined in order to conclude the relevant Title III Cases.

Once comments were received to the Mediation Team's preliminary scheduling proposal,

the Mediation Team carefully considered those comments and further revised its scheduling

proposal, again attempting to balance the parties' competing views and other considerations.

The Mediation Team then solicited the assistance of counsel for various parties to assist it in

drafting the required proposed scheduling orders.  The designated drafters were told that their

participation in the drafting process did not imply consent to, or any agreement with, the

Mediation Team's scheduling proposal.

On September 27, 2019, during the scheduling order drafting process, the Financial

Oversight and Management Board (the "FOMB") on behalf of the Commonwealth, ERS, and

PBA, filed the *Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*
[ECF No. 8765] (the "Plan") and a related disclosure statement [ECF No. 8766] (the "Disclosure
Statement").  Immediately prior to the filing of the Plan and Disclosure Statement, a Title III
petition for PBA was filed by the FOMB, with the consent of the Government of Puerto Rico.
To date, a plan of adjustment has not been filed for HTA, another Title III debtor (nor for its co-
debtor, PREPA, which is not addressed herein).

Early on in the Mediation Team's scheduling process, agreement was reached among the
active ERS litigation parties to accelerate consideration of the ERS issues.  The active ERS
litigation parties agreed to, and the Official Committee of Unsecured Creditors (the "UCC")
filed, with the Mediation Team's consent, a motion for approval of procedures for objections to
claims by holders of bonds issued by ERS [ECF No. 8761].  The Court later entered the agreed
order [ECF No. 8818] that was negotiated by the parties with the assistance of the Mediation
Team.

In addition, the active ERS litigation parties agreed to a scheduling order to address
matters pending before the Court that relate to the validity of ERS bonds and the scope of liens
held by the ERS bondholders.  An agreed urgent motion to approve the agreed ERS scheduling
order was filed with the Court on October 18, 2019, again with the consent of the Mediation
Team [ECF No. 8899].  On October 24, 2019, the Court entered an order [ECF No. 8962] (the
"ERS Scheduling Order") granting the agreed urgent motion.[4]  On November 21, 2019, certain
ERS bondholders and the trustee for the ERS bonds filed motions for allowance of
administrative expenses [ECF Nos. 9285, 9294, 9299] (the "Administrative Expense Motions").

---

[4]     On February 3, 2020, the parties filed an agreed motion requesting modification of the discovery and
briefing schedule set forth in the ERS Scheduling Order.  On February 6, 2020, the Court entered an order [ECF No.
10728] approving the modified schedule.  References to the "ERS Scheduling Order" are to the order, as modified.

The Court thereafter, with the consent of the relevant parties, entered an order [ECF No. 9688] staying such administrative expense motions consistent with paragraphs 4-6 of the ERS Scheduling Order.[5]

On January 30, 2020, the United States Court of Appeals for the First Circuit (the "First Circuit") issued an opinion in Case Nos. 19-1699 and 19-1700, affirming the Court's ruling that (i) the ERS bondholders' security interests did not fit within exceptions to section 552 of the Bankruptcy Code, (ii) the ERS bondholders were not entitled to the protections of the "special revenue" provisions of the Bankruptcy Code, and (iii) the Court was not required as a matter of constitutional avoidance to construe PROMESA prospectively.  Issuance of this opinion triggered meet and confer obligations of the parties with regard to certain portions of the Retiree Committee's Objection, the FOMB Objection (each as defined in the ERS Scheduling Order), and the Administrative Expense Motions, all of which had been stayed pending the First Circuit's decision.  *See* ERS Scheduling Order ¶¶ 4-6.

The parties' designated drafters and the Mediation Team continued to work on proposed scheduling orders for non-ERS contested matters, adversary proceedings, and identified issues relating to the Plan and Disclosure Statement, as well as matters and adversary proceedings related to HTA, leading up to the submission of the Interim Report (defined below).

---

[5]      Although not directly relevant to the Amended Report, on November 19, 2019, certain ERS bondholders filed a motion [ECF No. 9260] (the "Trustee Motion") under section 926 of PROMESA seeking appointment of such bondholders (or a third party) as trustee for ERS to prosecute avoidance claims against the Commonwealth. On January 7, 2020, the Court entered a memorandum opinion and order [ECF No. 9712] (the "Trustee Opinion") denying the Trustee Motion.  The ERS bondholders thereafter filed a notice of appeal of the Trustee Opinion.  The First Circuit has set the case (No. 20-1065) for expedited briefing and oral argument on March 3, 2020.

## **Interim Report and Subsequent Activities**

On November 27, 2019, the Mediation Team filed its *Interim Report and Recommendation of the Mediation Team* [ECF No. 9365] (the "Interim Report"). The Interim Report reflected the Mediation Team's determination that, rather than submitting a comprehensive report and recommendation regarding scheduling and sequencing of all relevant issues in the Title III Cases, it was appropriate to address the scheduling and sequencing of only certain disputed issues that the Mediation Team believed should be allowed to proceed in the near-term, pending the filing of an amended report. On December 19, 2019, the Court entered an order [ECF No. 9618] (the "Bridge Order") adopting this bifurcated report structure and generally requiring, subject to the Mediation Team's ability to request an extension of such deadline, that the Mediation Team file an amended report on or before January 10, 2020.

After notice to parties and a hearing on the matter, the Court further entered, with certain modifications, interim scheduling orders similar to the forms of order that had been attached to the Interim Report [ECF Nos. 9619, 9620, and 9622] (collectively, the "Interim Orders"). The Interim Orders, which reflect extensive input from parties involved in the drafting process, provide for the lifting of the litigation stay to allow for certain proceedings addressing the following critical issues to go forward: (i) the validity of certain challenged series of GO and PBA bonds, (ii) the secured or unsecured status of claims on GO and PBA bonds, and (iii) the rights, as against the Commonwealth, of holders of "revenue bonds" and other debt issued by certain Puerto Rico instrumentalities. The Interim Orders do not, however, address all phases of litigation in the subject adversary proceedings and contested matters; phases of the litigation not addressed in the Interim Orders were expressly reserved for consideration in the context of this Amended Report. Pursuant to the Bridge Order (and the Amended Bridge Order, discussed

below), the Interim Orders are also themselves subject to being modified following the hearing

on the Amended Report, set aside in their entirety following the hearing on the Amended Report,

or made final following the hearing on the Amended Report.

On December 23, 2019, the Mediation Team filed its *Urgent Motion for Extension of
Filing Deadline for Mediation Team Amended Report* [ECF No. 9638] (the "Continuance
Motion").  Through the Continuance Motion, the Mediation Team requested that, in light of

ongoing negotiations, family commitments over the holidays, and other factors, the deadline for

the filing of its Amended Report be pushed back to February 10, 2020, and that related

deadlines, along with the stay applicable to certain litigation, also be continued.  The

Continuance Motion contemplated that deadlines provided for in the Interim Orders would

remain effective pending a hearing on the Mediation Team's Amended Report, which the

Mediation Team proposed be held on March 4, 2020.  On December 23, 2019, the Court entered

an order granting the Continuance Motion and modifying the Bridge Order accordingly.

On December 26, 2019, two creditor parties filed a consolidated objection to the

Continuance Motion and motion for the Court to reconsider its December 23rd order [ECF No.

9655].  The creditor parties objected to the continuance of the general litigation stay into March

2020 and asked that the Court reconsider its order leaving deadlines under the Interim Orders,

including a preliminary hearing on certain motions for relief from stay, in place until the March

4, 2020 hearing on the Amended Report.  On December 27, 2019, in response to the concerns

raised by the two creditor parties, the Court entered a further amended order governing deadlines

related to the Mediation Team's Amended Report and litigation contemplated by the Interim

Orders [ECF No. 9661] (the "Amended Bridge Order").  The Amended Bridge Order also set a

hearing on January 29th to address any arguments, including those raised by the two objecting

creditor parties, concerning the continuation of the provisions of, and proposed amendments to, the *Interim Case Management Order for Revenue Bonds* [ECF No. 9620] (the "Interim Revenue Bonds Order") pending the March 4, 2020 hearing.

During the January 29th hearing, the Court heard argument regarding the above-referenced issues and on January 31st, the Court entered an *Amended Interim Case Management Order for Revenue Bonds* [ECF No. 10595] (the "Amended Interim Revenue Bonds Order"), which order modifies the initial Interim Revenue Bonds Order in certain material respects.  First, the Amended Interim Revenue Bonds Order clarifies that the preliminary hearing on the monoline creditors' motions for relief from stay (also referred to herein as the "lift stay motions") will be held "to determine whether the movants have standing to sue and security or other property interests in the relevant revenues."  Second, the Amended Interim Revenue Bonds Order establishes a revised briefing schedule and hearing date (March 5, 2020) for that determination.  Third, the Amended Interim Revenue Bonds Order makes clear that the Court will consider requests to certify appeals of any ruling following the preliminary lift stay hearing.  Fourth, the Amended Interim Revenue Bonds Order directs the parties to meet and confer regarding a schedule for necessary discovery and a final lift stay hearing.  Finally, the Amended Interim Revenue Bonds Order indicates that the monoline creditors are deemed to have waived the timetable set forth in section 362(e) of the Bankruptcy Code through the forty-fifth day after the preliminary hearing.

The Mediation Team facilitated a meeting among the FOMB, AAFAF, the monoline creditors, and other creditors interested in the outcome of the revenue bond disputes on February 6, 2019 to discuss the lift stay motions and how to proceed forward most productively with respect to the issues in dispute among the parties.  This meeting also constituted the Ordered

meet and confer as provided in the Amended Interim Revenue Bonds Order.  The outcome of this meeting will be discussed below.

### Significant Developments Since Filing of Interim Report

Since the filing of the Interim Report, certain parties holding substantial amounts of various issuances of GO/PBA bonds continued to engage in further negotiations with the FOMB that were facilitated by the Mediation Team regarding the treatment of their claims under a possible amended plan of adjustment.  After months of mediated negotiations, an agreement in principle was reached in mid-January among that group of GO/PBA bondholders and the FOMB. That agreement has now been reduced to writing in the form of a new Plan Support Agreement (the "New PSA"), which was signed by the holders of approximately $8 billion in claims of GO/PBA bonds and the FOMB (collectively, the "PSA Parties"), notice of which was made publicly available yesterday.  The New PSA requires the FOMB to file, not later than February 28, 2020, an amended plan of adjustment for the Commonwealth of Puerto Rico and PBA (when filed, the "Amended Plan") that contains terms consistent with the New PSA and through which the FOMB will propose a global settlement of all issues in dispute among all GO/PBA bondholders, holders of PRIFA BANs,[6] the FOMB, the Commonwealth of Puerto Rico, and the PBA, including the validity, priority, and secured status of GO/PBA/PRIFA BANs claims, in exchange for the consideration proposed in the Amended Plan.

The Mediation Team has been advised by the FOMB that, after the filing of the Amended Plan and an amended Disclosure Statement (when filed, the "Amended Disclosure Statement"), the FOMB intends to proceed forward towards confirmation of the Amended Plan.[7]  Moreover,

---

[6]      "PRIFA BANs" refer to that certain indebtedness issued by PRIFA pursuant to that certain Trust Agreement, dated March 1, 2015, between PRIFA and The Bank of New York Mellon, as trustee.

[7]      The FOMB's proposed confirmation schedule is discussed later in this Amended Report.

the FOMB has advised that it and the other PSA Parties believe that if the Amended Plan is

confirmed, no further litigation of any dispute regarding the validity, priority, or secured status of

GO/PBA/PRIFA BANs claims is appropriate, as the Amended Plan will effect a global

settlement of any such dispute that is binding on all parties in interest in the Title III Cases.

### Recommendation Regarding Interim GO/PBA Scheduling Order and Related Matters

In light of the mediated settlement reached with substantial GO/PBA/PRIFA BANs

holders as set forth in the New PSA, and as will be set forth in the Amended Plan when filed, the

Mediation Team believes that the FOMB should be given the opportunity to attempt to confirm

the Amended Plan before any party is required to expend further funds in litigation of the

disputes being settled.  To continue forward with the litigation schedule set forth in the interim

order concerning GO/PBA issues [ECF No. 9619] (the "Interim GO/PBA Order") under the

changed circumstances just discussed is a waste of both judicial and party resources.

Accordingly, the Mediation Team recommends that the Interim GO/PBA Order be set aside such

that no further deadlines set forth in such order—other than the February 19 deadline for the

filing of motions to dismiss the Claim Objections, Future Claim Objections (as defined in the

Interim GO/PBA Order), and the GO Lien Challenges, which deadline arises before the hearing

on this Amended Report—need be complied with by any party.[8]  The Mediation Team further

recommends that any other pending and not yet filed adversary proceedings and contested

---

[8]     The underlying claim objections and adversary proceedings that were unstayed or permitted to be filed by
the Interim GO/PBA Order but that the Mediation Team now recommends be stayed pending the Court's decision
on confirmation of the Amended Plan include (i) the Claim Objections, as defined in the Interim GO/PBA Order,
(ii) the GO Lien Challenges, as defined in the Interim GO/PBA Order, (iii) the omnibus claim objection filed on
January 8, 2020 by the Lawful Constitutional Debt Coalition [ECF No. 9730], and (iv) the miscellaneous debt limit
claim objection filed on January 8, 2020 by the Official Committee of Unsecured Creditors [ECF No. 9735] (the
"Miscellaneous Debt Limit Objection").  The Mediation Team understands that confirmation of the Amended Plan
will resolve the Miscellaneous Debt Limit Objection as to the PRIFA BANs claims.  In light of this and assuming
the Amended Plan is confirmed, the Mediation Team recommends that the stay be lifted post-confirmation as to the
non-PRIFA BANs claims.  If confirmation of the Amended Plan is denied, the stay may be lifted as to the entirety of
the Miscellaneous Debt Limit Objection.

matters relating to validity, priority, and secured status of the GO/PBA/PRIFA BANs claims be stayed pending a decision on confirmation of the Amended Plan.[9]

If the Amended Plan is confirmed, no further litigation will be required and the pending litigation that was unstayed or contemplated by the Interim GO/PBA Order will be dismissed. If the Amended Plan is not confirmed, the Mediation Team will work with the parties to develop an agreed schedule to move forward with the litigation.

### Recommendation Regarding Other Interim Orders and ERS Scheduling Order

Given the agreement of a substantial group of GO/PBA/PRIFA BANs holders and the Retiree Committee[10] to the treatment of their claims under the Amended Plan, the Title III Cases are in a substantially different position than they were in at the time of the filing of the Interim Report and the recommended entry of the Interim Orders. However, notwithstanding this significant step forward, the Mediation Team recognizes that there is much work that remains to be done to build further support, if possible, for confirmation of an even more consensual Commonwealth/PBA/ERS plan of adjustment.

Given the age of the Title III Cases, the Mediation Team believes that it is in the best interests of all parties in interest in the cases—*i.e.*, the people of Puerto Rico, their Government, the FOMB and all creditors—that the Title III Cases for the Commonwealth, PBA and, if possible, ERS, be concluded as soon as possible and, if possible, prior to the end of this year. Accomplishing the goal of getting to a full and fair confirmation hearing this year on the

---

[9]     For instance, the Mediation Team recommends that the recently filed *Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of General Obligation Bonds Asserting Priority Over Other Commonwealth Unsecured Creditors* [ECF No. 10638] (the "UCC Priority Objection") and the motion seeking approval of procedures for the UCC Priority Objection [ECF No. 10754] be so stayed.

[10]     The Mediation Team understands that (i) the treatment of retiree claims as set forth in the Plan will remain unchanged in the Amended Plan, and (ii) the Retiree Committee will support confirmation of the Amended Plan.

Amended Plan will require a focused approach to the resolution of certain key issues in dispute among the parties who are not currently supporting confirmation of the Amended Plan including, for example, certain holders of ERS bonds and revenue bonds issued by HTA, PRIFA and the CCDA.[11]  There are scheduling orders currently in effect with respect to both sets of disputes to which we now turn.

With respect to the ERS Scheduling Order, the Mediation Team recommends that it remain in effect.  As just noted, there is not yet an agreement among ERS bondholders, the FOMB, and the Government of Puerto Rico concerning the treatment of ERS bondholder claims in the Amended Plan.  While the Mediation Team intends to work with those parties in hopes of assisting in the negotiation of such an agreement, the parties' differences of opinion on certain issues have made that negotiation difficult.  Thus, the litigation contemplated in the ERS Scheduling Order should proceed forward, as the Mediation Team believes rulings from this Court and on appeal will be of assistance to the parties and the Mediation Team in further mediated negotiations regarding the treatment of ERS bondholder claims under the Amended Plan.[12]

With respect to the Amended Interim Revenue Bonds Order, the Mediation Team believes that the Court's ruling on certain key issues raised in the lift stay motions and/or the newly filed revenue bond adversary proceedings[13] will (i) be of assistance to it in the plan

---

[11]    Of course, the Mediation Team express no view on whether the Amended Plan is confirmable.  It simply believes that it is important to get to a full and fair confirmation hearing this year, if possible, during which this Court will address the issues that remain in dispute among the parties and determine the confirmability of the Amended Plan.

[12]    However, in the event of conflicts among the schedules set forth in the ERS Scheduling Order (or an order of the Court modifying the schedule set forth therein) and the proposed Final Revenue Bonds Scheduling Order, decisions by the Court on the revenue bond related issues should be prioritized because of the importance of those decisions with respect to confirmation of a Commonwealth/PBA plan of adjustment.

[13]    The newly filed revenue bond adversary proceedings are 20-AP-00003, 20-AP-00004, 20-AP-00005, and 20-AP-00007 (collectively, the "Revenue Bond Adversary Proceedings").  Three of the four Revenue Bond

mediation process, and (ii) streamline the anticipated confirmation hearing on the Amended Plan. The Court identified in the Amended Interim Revenue Bonds Order certain threshold issues that it will address at the March 5th preliminary lift stay hearing — *i.e.*, the movants' "standing to sue and security or other property interests in the relevant revenues." The Mediation Team agrees that these issues need to be decided on the merits as soon as possible, as the parties' disparate views on these issues have been a handicap to the negotiation of the treatment of the so-called "claw back" claims under a Commonwealth plan of adjustment. Thus, merits determinations on these key issues will be invaluable to both the mediation and plan confirmation processes.[14]

Moreover, the Mediation Team has identified two other potential "gating" issues on which merits rulings in advance of the approval of the Amended Disclosure Statement may facilitate the mediation process and streamline the hearing to consider confirmation of the Amended Plan. Those issues are: (1) if the lift stay movants have no security or other property interests in the relevant revenues, do they (as opposed to the government entities whose bonds they hold) have any allowed unsecured claim against the Commonwealth relating to those withheld revenues, and (2) are the FOMB and/or the Government of Puerto Rico operating under a conflict of interest in acting for both the Commonwealth and HTA, including, without limitation, acting for both entities in connection with the resolution of HTA's clawback claims

---

Adversary Proceedings object to claims filed against the Commonwealth; the fourth (20-AP-00007) addresses claims against HTA.

[14]     Merits rulings on these issues and any other "gating" issues will assist the parties in understanding this Court's views of their respective rights, if any. Rulings unfavorable to creditors will provide them with clarity on their rights as against the Commonwealth, if any. Conversely, rulings unfavorable to the FOMB could preclude confirmation of the Amended Plan or require the FOMB to propose a material modification to the Amended Plan to "fix" any problem this Court's merits rulings pinpoint. Of course, a material modification to the Amended Plan later in the confirmation process could require a re-solicitation of creditors, with the attendant delay and costs associated with such a re-solicitation. Thus, from the Mediation Team's perspective, it is highly preferable to proceed as the Court has ordered and obtain merits determinations of those issues and certain other important "gating" issues before (or contemporaneously with) approval of the Amended Disclosure Statement and before solicitation commences, if possible without a significant delay.

12

against the Commonwealth, voting or objecting to any plan of adjustment addressing such claims, and bringing or defending any avoidance or other claims under PROMESA affecting HTA?

The first issue identified above is significant because if the lift stay movants themselves (rather than the government instrumentality whose bonds they hold) have allowed unsecured claims against the Commonwealth, those claims will need to be addressed in the Amended Plan. This issue could be decided on a motion for partial summary judgment in the Revenue Bond Adversary Proceedings (other than 20-AP-00007, which concerns claims against HTA).  The second issue is significant because if the FOMB or the Government of Puerto Rico is determined to have an impermissible conflict, that conflict needs to be addressed prior to the Amended Disclosure Statement being approved and solicitation on the Amended Plan commencing because it could affect how claims of HTA against the Commonwealth may be settled or voted in connection with the Amended Plan.  This issue could be decided by setting a deadline by which an HTA revenue bond claimant must file a motion seeking relief addressing alleged continuing conflicts of interest of the FOMB and the Government of Puerto Rico acting for both the Commonwealth and HTA if it wishes to raise such issues and, if such a motion is timely filed, the schedule for responses, replies and a hearing on the motion.

Thus, from the Mediation Team's perspective, the Amended Interim Revenue Bonds Order should be modified to (i) incorporate a schedule for the filing of narrowly tailored motions for partial summary judgment in the relevant Revenue Bond Adversary Proceedings, and (ii) set a schedule for the filing of, and determination of, any motion seeking relief addressing alleged continuing conflicts of interest of the FOMB and the Government of Puerto Rico acting for both the Commonwealth and HTA.  Attached as Exhibit 1 to this Amended Report is the Mediation

Team's proposed final revenue bonds scheduling order (the "Final Revenue Bonds Scheduling Order"), which incorporates these proposed changes and recommends the counts of the relevant Revenue Bond Adversary Proceedings on which the parties should be permitted to file cross motions for partial summary judgment.

By way of summary, the Mediation Team's proposed schedule for potential "conflict" motion practice requires motions, if any,[15] to be filed by the earlier of (i) 14 days after the Court's ruling in connection with the preliminary hearing on the HTA-related lift stay motion [ECF No. 10102] (the "HTA Lift Stay Motion"), and (ii) April 22, 2020. Responses would be due 14 days following the motion filing deadline, with replies due seven days thereafter. The Mediation Team proposes that a hearing be scheduled approximately seven days after the reply deadline, and at least ten days prior to the disclosure statement hearing. The hearing on the "conflict" motion would likely be held in New York City, as there is no omnibus hearing scheduled in May 2020 in Puerto Rico.

Given the number and complexity of issues that could come before the Court, the proposed schedule for the summary judgment motion practice in the relevant Revenue Bond Adversary Proceedings builds in additional time for briefing and the Court's consideration of the various arguments. As set forth in the proposed Final Revenue Bonds Scheduling Order, the Mediation Team's suggested schedule contemplates cross-motions being filed (if a party wishes to so move)[16] on March 16, 2020, responses due April 14, 2020, replies due May 4, 2020, and a hearing scheduled the week of May 11, 2020, if possible.

---

[15]     No party has committed to file a "conflict" related motion at this juncture, and it is possible that none will be filed.

[16]     The Mediation Team is not recommending that a party be required to so move, but does understand that the FOMB intends to do so.

The claims[17] on which the Mediation Team recommends summary judgment motions be permitted in the relevant Revenue Bond Adversary Proceedings are those seeking the following relief:

1. Disallowance of claims for post-PROMESA unlawful retention of allocable revenues because allocable revenue statutes are preempted by PROMESA.

2. Disallowance of claims predicated on claims of violations of the Contracts Clause of the Commonwealth and the U.S. Constitutions because no contract was impaired.

3. Disallowance of claims predicated on claims of violations of the Contracts Clause of the Commonwealth and U.S. Constitutions because no legislation created an impairment.

4. Disallowance of claims predicated on claims of violations of the Contracts Clause of the Commonwealth and U.S. Constitutions because the Commonwealth's retention of the allocable revenues was due to PROMESA, not legislation.

5. Disallowance of claims premised on PROMESA § 407.

6. Disallowance of secured claims against the Commonwealth.

7. Disallowance of claims asserting perfected security interests against the Commonwealth.

8. Disallowance of claims of ownership in allocable revenues.

As the Court will note, many of these claims overlap, in whole or in part, with issues the Court may consider at the preliminary hearing on the lift stay motions and decide in that context. If the preliminary lift stay hearing results in merits rulings on those issues, that ruling will likely resolve the partial summary judgment motion on the applicable claim(s) as well.  In that event, such claim(s) will no longer need to be heard through summary judgment motion practice, as the prior determination will likely be binding on the parties in that context without further hearing.

---

[17]      As indicated above, the Mediation Team recommends that summary judgment motions be permitted on the above-listed eight claims. The specific counts of each complaint on which the Mediation Team recommends summary judgment motions be permitted are set forth in the attached proposed Final Revenue Bonds Scheduling Order.  That list appears more substantial because the same eight claims appear in different numbered counts against each adversary defendant in each of the three relevant adversary proceedings.

The eight claims are nevertheless all included in the proposed Final Revenue Bonds Scheduling Order because the Mediation Team recommends that those not resolved on the merits through the preliminary lift stay hearing process be addressed through summary judgment motion practice in the Revenue Bond Adversary Proceedings at or before the disclosure statement hearing.[18]  Certain of the claims listed above—specifically, those involving the Contracts Clause of the Commonwealth and U.S. Constitution and section 407 of PROMESA—do not appear likely to be addressed by the Court at the preliminary lift stay hearing but are significant and, in the Mediation Team's view, should be addressed on the same summary judgment schedule.[19]

At the Court ordered meet and confer on February 6, 2020, the parties agreed that it was exceedingly difficult to set a firm date for a final lift stay hearing at this time, or to attempt to address the structure and scope of such a hearing, as the need for a final lift stay hearing and the precise issues that will remain to be addressed, if any, depend on the nature and scope of the Court's decision following the preliminary lift stay hearing.  The Mediation Team agrees with the parties.  Thus, the Mediation Team recommends that the parties be directed to meet and confer regarding the schedule for any further discovery, briefing, and a final lift stay hearing within fourteen days following the entry of the Court's decision with respect to the preliminary hearing on the lift stay motions.  Of course, the parties may need to address the fact that the deadlines set forth in Section 362(e) of the Bankruptcy Code have been waived only through the forty-fifth day after the preliminary hearing.  The Mediation Team will facilitate this meet and confer.

---

[18]     The Mediation Team also recommends that following the Court's determination of the partial summary judgment motions, the Court entertain motions to sever those claims from the applicable Revenue Bond Adversary Proceedings in order that judgment could be entered on those claims and appeals could follow.  Alternatively, the Court could entertain motions to certify the issues for appeal.

[19]     Nothing in this recommendation should be construed as preventing a party to the Revenue Bond Adversary Proceedings from seeking relief under Rule 56(d) of the Federal Rules of Civil Procedure.

What, if anything, will remain to be adjudicated in the relevant Revenue Bond Adversary Proceedings after merits rulings following the preliminary hearing on the lift stay motions and any filed Rule 12 and 56 motions in the relevant Revenue Bond Adversary Proceedings will depend on the Court's rulings on those motions. Thus, the Mediation Team also recommends that the parties be directed to meet and confer within fourteen days following the entry of the last of the Court's decisions on those motions to see if agreement can be reached on how to proceed thereafter. The Mediation Team will facilitate this meet and confer. If agreement is reached, the Court will be notified of the parties' agreement. If no agreement is reached, the Mediation Team will supplement the Amended Report with its recommendations on how best to proceed. Parties should be permitted to respond to the Mediation Team's recommendations before the Court acts with respect to those recommendations.

The Mediation Team recognizes that adding the two additional "gating" issues to the pre-disclosure statement hearing period and providing for potential summary judgment motion practice will require the parties to brief and argue, and the Court to rule on, important issues on a fairly expedited basis. However, the Mediation Team believes that rulings on these additional issues prior to the disclosure statement hearing will facilitate (i) its efforts to build further support for confirmation of a Commonwealth plan, and (ii) the confirmation process itself.[20]

As a final matter, the Mediation Team recommends that the *Interim Order Approving Amended Joint Stipulation Regarding the DRA Parties' Motion and Memorandum of Law in*

---

[20] If the Court is unable to rule on all of these additional issues in advance of, or contemporaneously with, a disclosure statement hearing, they could be decided at confirmation. Of course, as noted above, the downside to delayed rulings is that if the rulings require a material modification to the Amended Plan in order for it to be confirmed, the FOMB might be required to re-solicit acceptances of the Amended Plan, which could delay the Commonwealth's emergence from Title III.

17

*Support of their Motion for Relief from the Automatic Stay, or in the Alternative, Ordering*

*Payment of Adequate Protection* [ECF No. 9622] (the "<u>Interim DRA Order</u>") be made final.[21]

## <u>Recommendations Regarding Other Litigation Subject to Stay</u>

While the Interim Orders unstayed certain contested matters and adversary proceedings, all of which are addressed above, they left many other matters and proceedings stayed and to be addressed in this Amended Report.  *See* Interim Report § 3.  The Mediation Team's recommendations regarding such currently stayed matters and proceedings are set forth in the chart below:

| Docket | Pleading Name / Adversary Proceeding Number | Mediation Team's Recommendation |
|---|---|---|
| Docket Entry No. 7328 in Case No. 17-3283 | *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxes* | Motion to be denied without prejudice in light of discovery being undertaken in connection with lift stay motion and pending adversary proceeding |
| Docket Entry No. 7640 in Case No. 17-3283 | *Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* | Consistent with Mediation Team's recommendations herein, this motion should be granted |
| Docket Entry No. 7814 in Case No. 17-3283 | *Renewed Motion of the Ad Hoc Group of General Obligation Bondholders, under Bankruptcy Code Sections 105(A) and 502 and Bankruptcy Rule 3007, Establishing Procedures with Respect to Omnibus Conditional Objection to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds* | Motion to remain stayed pending decision on confirmation of Amended Plan |

---

[21]     The Mediation Team understands that (i) the DRA Parties may seek to participate in briefing and the hearing on the HTA Lift Stay Motion, and (ii) there is currently disagreement among various parties regarding the scope and nature of the DRA Parties' participation, if any, with respect to that motion.

| Docket | Pleading Name / Adversary Proceeding Number | Mediation Team's Recommendation |
|---|---|---|
| Docket Entry No. 7882 in Case No. 17-3283 | *Urgent Motion for Stay of Adversary Proceeding Supplemental to Pending Motion to Stay GO Bond Proceedings Pending Confirmation of Commonwealth Plan of Adjustment* | Consistent with Mediation Team's recommendations herein, this motion should be granted |
| Docket Entry No. 8000 in Case No. 17-3283 | *Objection of Official Committee of Unsecured Creditors to Claim of Government Development Bank for Puerto Rico against Commonwealth of Puerto Rico [Claim Number 29,485]* | Objection to remain stayed pending decision on confirmation of Amended Plan; objection to be unstayed and go forward thereafter |
| Docket Entry No. 8020 in Case No. 17-3283 | *Ambac Assurance Corporation's Motion to Strike Certain Provisions of the Plan Support Agreement By and Among the Financial Oversight and Management Board for Puerto Rico, Certain GO Holders, and Certain PBA Holders* | Motion to be denied without prejudice given signing of New PSA |
| Docket Entry No. 99 in Adv. Proc. No. 18-149 | *Plaintiff Financial Oversight and Management Board for Puerto Rico's Motion to Stay PBA Adversary Proceeding Pending Confirmation of Commonwealth Plan of Adjustment* | Consistent with Mediation Team's recommendations herein, this motion should be granted |
| Adversary Proceeding | 18-AP-59 | AP to remain stayed pending decision on confirmation of Amended Plan |
| Adversary Proceeding | 19-AP-269 | AP to remain stayed pending decision on confirmation of Amended Plan |
| Adversary Proceeding | 19-AP-280 | AP to remain stayed pending decision on confirmation of Amended Plan and be unstayed if plan confirmed and becomes effective |
| Adversary Proceedings | 19-AP-281; 19-AP-282; 19-AP-283; 19-AP-284; 19-AP-285; 19-AP-286; 19-AP-287; 19-AP-288 | APs to remain stayed pending decision on confirmation of Amended Plan |
| Adversary Proceedings | 19-AP-362; 19-AP-363; 19-AP-364; 19-AP-365 | APs to remain stayed until such time as Court orders stay lifted or a plan is confirmed for HTA |

The Mediation Team further recommends that contested matters or adversary proceedings filed after the date of this Amended Report that address issues (i) being settled under the Amended Plan, or (ii) already joined in litigation that is stayed pending confirmation, also be stayed pending confirmation, unless otherwise ordered by the Court.

The foregoing recommendations are the basis for Exhibit 2, a proposed order that, among other things, continues the stay of certain matters and proceedings and lifts the stay on certain other matters and proceedings, all consistent with this Amended Report.  The Mediation Team recommends that the Court enter the proposed order attached hereto as Exhibit 2 following the hearing on this Amended Report.

### Possible Schedule for Other Issues and Confirmation Process

Below is an outline reflecting the Mediation Team's recommended schedule for all other issues identified by the Court in the Order that have not been previously addressed.  While this outline is thorough, it may not be exhaustive of all issues that could arise in a contested confirmation process.

### I.    Pre-Disclosure Statement Hearing

Once the Court has ruled in connection with the preliminary hearing on the lift stay motions, the parties should proceed forward with motion practice in the relevant Revenue Bond Adversary Proceedings as recommended above and, to the extent necessary, with a final lift stay hearing as recommended above.  Any decisions by the Court on the revenue bond issues that are available at the time of the hearing on the Amended Disclosure Statement should be disclosed in the Amended Disclosure Statement because, at a minimum, those rulings constitute material information that would inform creditor voting.  Moreover, the Court's merits rulings may require substantive modifications to the terms of the Amended Plan in order for such a plan to be

confirmable, which modifications should occur—if at all possible—before a disclosure statement is approved.

As noted previously, while it may be possible to defer merits rulings on some of these key issues to the confirmation hearing, that would be less helpful to both the parties and the Mediation Team.  The parties' respective views on the answers to the questions posed above are at the opposite ends of the spectrum.  While the creditors of HTA, PRIFA, and CCDA argue strenuously that they have property interests, other entitlements and/or direct claims against the Commonwealth, the FOMB and the Government of Puerto Rico vehemently disagree.  There is very little prospect of a negotiated resolution of the treatment of these so-called "clawback claims" under the Amended Plan when the parties opposite views are so strongly held.  While this Court's determination of the creditors' rights, if any, may not be the final word on the issue, obtaining this Court's determination—whether in connection with the preliminary lift stay hearing, motion practice in the relevant Revenue Bond Adversary Proceedings, or a final lift stay hearing—will facilitate the mediation process and streamline the confirmation hearing.

## II.    Disclosure Statement Hearing

The Mediation Team recommends that the hearing to consider approval of the Amended Disclosure Statement be set for June 3, 2020.  This date allows for (i) possible merits rulings on the revenue bond issues identified above, (ii) a new Commonwealth fiscal plan to be certified and attached to the Amended Disclosure Statement before solicitation occurs, and (iii) reasonable notice to parties in interest so that they may be heard on the issues of the adequacy of information contained in the Amended Disclosure Statement and any other issue relevant to this Court's consideration of approval of the Amended Disclosure Statement.

The Mediation Team understands that the FOMB will be filing a scheduling motion with respect to a hearing on the Amended Disclosure Statement.  The Mediation Team understands that motion will suggest that the schedule set forth below be approved by the Court.  The Mediation Team is satisfied with this schedule as it relates to a hearing to consider the adequacy of information contained in the Amended Disclosure Statement:

**February 28, 2020** - Deadline by which the FOMB must file the Amended Plan and the Amended Disclosure Statement;

**April 17, 2020** - Deadline for the filing of objections to the Amended Disclosure Statement;

**May 20, 2020** - Deadline for the filing of a revised Amended Disclosure Statement, if necessary, and to reply to unresolved objections;

**June 3, 2020** - Hearing to consider approval of the Amended Disclosure Statement.

Assuming a version of the Amended Disclosure Statement is approved, and specific solicitation protocols are also approved, the Amended Plan, the Amended Disclosure Statement, ballots, and related solicitation materials can be distributed to parties in interest in the relevant Title III Cases for their consideration.  For planning purposes, and given the complexity of the anticipated solicitation process, the Mediation Team believes that an appropriate solicitation period is at least 60 days following the mailing of the Court approved solicitation package. Moreover, the Mediation Team has been advised that it will take approximately 30 days from the solicitation agent's receipt of the Court approved solicitation package for the actual mailing of that package to parties in interest in the Title III Cases.

### III.   Confirmation Hearing

Given the current status of plan negotiations, the Mediation Team believes that the hearing to consider confirmation of the Amended Plan will be contested.  While the Mediation Team expects strong support for confirmation of the Amended Plan from substantial GO/PBA/PRIFA BANs holders, the Mediation Team currently anticipates that the holders of (i) revenue bond claims and other claims against the Commonwealth, including the claims of monoline insurers, and (ii) bond claims against ERS will be objecting to confirmation of the Amended Plan.  Thus, the Mediation Team recommends that the Court invoke application of Bankruptcy Rules 7000, *et seq* to the confirmation hearing.  And, while the Mediation Team expects to continue to engage the parties in substantive mediation of the remaining issues in dispute among them, it is impossible to know now what further settlements or agreements, if any, may be reached regarding the appropriate treatment of other claims under the Amended Plan prior to the commencement of the confirmation hearing.

Accordingly, for scheduling purposes, the Mediation Team recommends that the Court assume that the issues identified below may have to be determined on a contested basis and that the confirmation hearing could take 10 or more trial days.  While it is difficult to predict exactly what discovery will be required in connection with a contested confirmation hearing, for planning purposes the Court should assume that discovery, including expert discovery, will take approximately 75-90 days.  This estimate assumes significant cooperation among the parties and the agreed or court ordered reduction of time periods for such discovery pursuant to the applicable rules of civil and bankruptcy procedure.  The Mediation Team will work with the parties in an effort to (i) ensure cooperation among them, and (ii) streamline the confirmation hearing process to the extent reasonably practicable.

The Mediation Team has been advised that the FOMB will be filing a scheduling motion with the Court in which it will propose a specific schedule for the confirmation process.  With the FOMB's permission, a portion of that schedule is being shared here, to assist the Court in its understanding of a possible 2020 calendar:

**February 28, 2020** - Deadline by which the FOMB must file the Amended Plan and the Amended Disclosure Statement;

**April 17, 2020** - Deadline for the filing of objections to the Amended Disclosure Statement;

**May 20, 2020** - Deadline for the filing of a revised Amended Disclosure Statement and to reply to unresolved objections;

**June 3, 2020** - Hearing to consider approval of revised Amended Disclosure Statement;

**June 30, 2020** - Confirmation discovery commences;

**July 2, 2020** - Mailing of approved solicitation package by solicitation agent;

**July, August, part of September** – confirmation objections filed, discovery continues, etc.;

**September 16, 2020** - Final pre-trial conference with the Court regarding confirmation hearing;

**September 29, 2020** – Balloting deadline;

**October 13-23, 2020** - Confirmation hearing.

The Mediation Team expresses no view on the FOMB's proposed confirmation schedule other than to say it appears to satisfy technical requirements and is directionally correct.  The Mediation Team will be prepared to state its view at an appropriate time if requested by the Court to do so, but, to date, the Mediation Team does not believe that the FOMB's proposed

24

confirmation schedule has been shared with any party who is currently expected to oppose

confirmation of the Amended Plan.  Thus, the Mediation Team has not had the opportunity to

discuss the proposed schedule with them and would want to do so before making any scheduling

recommendations of its own.

The following issues, among others, will have to be decided at confirmation:

A.    Any challenges to the classification of claims in the Amended Plan.

B.    Any challenges to the reasonableness of the GO/PBA settlement(s) set forth in the

Amended Plan.

C.    Any challenges to the reasonableness of the settlements of the so-called

"clawback claims" against the Commonwealth set forth in the Amended Plan.

D.    Any challenges to the treatment of ERS bondholders' claims.

E.    Any challenges to treatment of pension and union claims, including issues of

unfair discrimination in relation to other Commonwealth creditors and ERS

bondholders.

F.    Any challenges to the treatment of administrative claims.

G.    Any disputes regarding the dischargeability of constitutional claims – *i.e.*, claims

under the Takings and Contract Clauses—under the Amended Plan?

H.    Any disputes regarding the satisfaction of the best interests and fair and equitable

tests under the Amended Plan.

I.    Feasibility of Amended Plan and whether that plan is consistent with the certified

fiscal plan for the Commonwealth.

J.    Any challenges to the accountability for essential services under the Amended

Plan.

K.  Relevant claims asserted in 18-AP-00059 that have not been previously adjudicated, mooted, or otherwise resolved.

IV.  **Post Confirmation –** Assuming the Court concludes that the Amended Plan satisfies the applicable requirements for confirmation, the following contested matters, adversary proceedings, and other issues should remain stayed until after an Order is entered confirming the Amended Plan and the Amended Plan goes effective:

A.  Any preference or fraudulent transfer actions.

B.  Final fee applications.

C.  Unless otherwise agreed by the parties, "underwriter and related party" litigation, including 19-AP-280.

D.  The *Objection of Official Committee of Unsecured Creditors to Claim of Government Development Bank of Puerto Rico Against Commonwealth of Puerto Rico [Claim Number 29,485]* [ECF No. 8000], unless previously resolved by Court-approved settlement.

E.  Other objections to claims not addressed prior to confirmation.

V.  **Conclusion**

In summary, the Mediation Team recommends that (i) the Interim GO/PBA Order be set aside, (ii) the ERS Scheduling Order and any other order applicable to ERS litigation remain in effect, (iii) all adversary proceedings and contested matters relating to the validity, priority, and secured status of the GO/PBA/PRIFA BANs claims be stayed in their entirety pending the outcome of the confirmation hearing on the Amended Plan, (iv) the Amended Interim Revenue Bonds Order be modified to conform with the proposed Final Revenue Bonds Scheduling Order

attached hereto as Exhibit 1 and entered on a final basis, and (v) the Interim DRA Order be made a final order.

Given the changed circumstances explained in this Amended Report, the Mediation Team now believes there is a path forward to possible emergence of the Commonwealth, PBA and ERS from their respective Title III Cases by the end of 2020.  While there is much work to be done to continue to attempt to build further support for confirmation of a plan of adjustment for these three debtors, the Mediation Team believes it is time to start down that path.  The Mediation Team also believes that continuing the Court ordered mandatory mediation process is appropriate, as mandatory mediation directed by the Mediation Team Leader may facilitate the building of further support for confirmation of a Commonwealth/PBA/ERS plan of adjustment and/or assist in the resolution of objections to confirmation of such a plan.

The Mediation Team Leader will be present at the March 4, 2020 hearing before the Court and will be available to answer the Court's questions at that time.

Dated: February 10, 2020                          Respectfully submitted,


                                                  /s/ Barbara J. Houser
                                                  Honorable Barbara J. Houser
                                                  Chief Judge, United States Bankruptcy
                                                  Court for the Northern District of Texas
                                                  Mediation Team Leader