# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ------------------------------------------------------------ x :<br>*In re* :<br>:<br>THE FINANCIAL OVERSIGHT AND :<br>MANAGEMENT BOARD FOR PUERTO RICO, :<br>:<br>     as representative of :<br>:<br>THE COMMONWEALTH OF PUERTO RICO, *et al.* :<br>:<br>     Debtor. :<br>:<br>------------------------------------------------------------ x | PROMESA<br><br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>**Court Filing Relates Only to PREPA** |
| *In re* :<br>:<br>THE FINANCIAL OVERSIGHT AND :<br>MANAGEMENT BOARD FOR PUERTO RICO, :<br>:<br>     as representative of :<br>:<br>PUERTO RICO ELECTRIC POWER :<br>AUTHORITY (PREPA),[*] :<br>:<br>     Debtor. :<br>------------------------------------------------------------ x | PROMESA<br>Title III<br><br>Case No. 17-04780-LTS<br><br>(Jointly Administered) |
| CORTLAND CAPITAL MARKET SERVICES LLC, as successor administrative agent for lenders under that certain Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank, and the lenders party thereto, and SOLA LTD, SOLUS OPPORTUNITIES FUND 5 LP, ULTRA MASTER LTD, and ULTRA NB LLC, | PROMESA<br>Title III<br><br>Adversary Proc. No. 19-00396-LTS |

---

[*] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

|  |  |  |
|---|---|---|
| Plaintiffs, | : | |
| v. | : | |
|  | : | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO, PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA), PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY (AAFAF), U.S. BANK NATIONAL ASSOCIATION, as successor Trustee under the trust agreement, as amended and supplemented, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, SYNCORA GUARANTEE INC. and AD HOC GROUP OF PREPA BONDHOLDERS, | : | |
| Defendants. | : | |
| ------------------------------------------------------------- - x | | |
| SISTEMA DE RETIRO DE LOS EMPLEADOS DE LA AUTORIDAD DE ENERGIA ELECTRICA, | : | Adversary. Proc. No. 19-00405-LTS |
| Plaintiffs, | : | |
| v. | : | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO, PUERTO RICO ELECTRIC POWER AUTHORITY, PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, THE COMMONWEALTH OF PUERTO RICO, JOHN DOE 1, as the Governor of Puerto Rico, JOHN DOE 2 as the Executive Director of AAFAF and U.S. BANK NATIONAL ASSOCIATION | : | |
| Defendants. | : | |
| ------------------------------------------------------------- x | | |

**JOINT RESPONSE OF FUEL LINE LENDERS AND UNION ENTITIES TO GOVERNMENT PARTIES' SCHEDULING MOTION AND URGENT MOTION TO ADJOURN MARCH 4, 2020 HEARING ON BONDHOLDERS' AND GOVERNMENT PARTIES' MOTIONS TO DISMISS IN ADVERSARY PROCEEDINGS**

The Fuel Line Lenders[1] and the Union Entities[2] respectfully submit this: (A) response to the *Urgent Motion of Government Parties for (1) Bridge Order Pending Determination of Their Motion for a Revised Scheduling Order; and (2) Eleventh Revised Order Modifying Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235]* (Docket Entry No. 1897 in Case No. 17-4780, the "Urgent Motion")[3]; and (B) urgent motion to adjourn the hearing scheduled for March 4, 2020 on the Bondholders' and Government Parties' Motions to Dismiss the Amended Complaints in the Fuel Line and SREAEE Adversary Proceedings.[4] To avoid duplication, the Fuel Line Lenders and Union Entities are filing this submission jointly given their common view of the particular scheduling issues before the Court.

## PRELIMINARY STATEMENT

1. The Fuel Line Lenders and the Union Entities (the "Creditor Objectors") have both objected to the 9019 Motion. They have both also brought adversary proceedings against the Government Parties and Bondholders that relate in various ways to the RSA. The Creditor Objectors do not oppose the adjournment of the 9019 Motion. However, if the 9019 Motion will

---

[1] The Fuel Line Lenders are Cortland Capital Market Services LLC ("Cortland"), as successor administrative agent under a Credit Agreement, dated May 4, 2012, among PREPA, Scotiabank de Puerto Rico and certain lenders (the "Scotiabank Credit Agreement"), and SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC (collectively, "Solus"), as lenders under the Scotiabank Credit Agreement and under a Trade Finance Facility Agreement, dated July 20, 2012, between PREPA and Citibank, N.A.

[2] The Union Entities are Sistema de Retiro de Los Empleados de la Autoridad de Energia Electrica ("SREAEE") and the Unión de Trabajadores de la Industria Eléctrica y Riego ("UTIER").

[3] Capitalized terms have the same meanings as in the Urgent Motion.

[4] Adv. Pro. No. 19-396 (the "Fuel Line Adversary Proceeding"), and Adv. Pro. No. 19-405 (the "SREAEE Adversary Proceeding").

be adjourned for several months, and possibly forever, the March 4 hearing on motions to dismiss the adversary proceedings should also be adjourned. Going forward on March 4, and otherwise devoting resources to the adversary proceedings right now, would be highly inefficient for the Court and for all parties. By far the better course is to pause the adversary proceedings until it is known whether the RSA will go forward and on what terms.

2. At this stage, the future of the RSA is plainly in doubt, including as a result of the legislative process. In seeking to delay the hearing on the 9019 Motion for the eleventh time, the Oversight Board has stated that the "timing" and "outcome" of the legislative process cannot be predicted.[5] Meanwhile, multiple news sources have reported that legislative leaders in Puerto Rico are not supportive of legislation needed to implement aspects of the RSA.[6] Other reports suggest that the Oversight Board is evaluating alternatives to the RSA.[7]

3. The Creditor Objectors do not object to the Government Parties' decision to adjourn their 9019 Motion in the current circumstances. But, given the status of the RSA, they *do* object to going forward on March 4 (or a date close to March 4) with the motions to dismiss the adversary proceedings. As explained below, many of the issues raised in the adversary

---

[5] *See* Transcript of January 29, 2020 Omnibus Hearing at 12:7-12:13 ([COUNSEL FOR THE OVERSIGHT BOARD:] "As the Court knows, the legislative process is an iterative one, and predicting legislative timing and outcomes is far from an exact science. Based on this uncertainty, the Oversight Board will seek an extension of the briefing schedule and then adjournment of the March 31 hearing on the PREPA RSA to allow time for the parties to make progress with respect to the legislation.").

[6] *E.g.*, https://www.bondbuyer.com/news/prepa-deal-obstacles-grow.

[7] While the Government Parties have cited the legislative process as the primary source of uncertainty regarding the RSA, recent legal developments create additional obstacles. For example, the First Circuit recently held, affirming this Court, that ERS's right to receive employer contributions based on as-yet unperformed work was not a "property" interest, but merely an "expectancy," and therefore the ERS bondholders have no lien on that right. *Financial Oversight & Management Bd. ex rel. Employees Retirement System* v. *Andalusian Global Designated Activity Co.*, -- F.3d --, 2020 WL 486163, at *6 & n.7 (1st Cir. Jan. 30, 2020). The decision of the First Circuit strongly supports the challenges that have been filed to the bondholders' liens in the PREPA case, where the bondholders have asserted that their lien extends to revenues that PREPA may earn in the future for electricity that it has not yet generated or sold. The Creditor Objectors will address the *Andalusian* decision in due course if the Government Parties go forward with the 9019 Motion.

-2-

proceedings are closely linked to issues raised by the 9019 Motion, including the treatment of bondholder claims and pre-plan payments to bondholders. If the 9019 Motion were withdrawn (or significantly altered), parts of the complaints may very well become moot, and the situation as a whole would be materially different, likely requiring amendments to the pleadings.

4. Going forward with motions to dismiss the adversary proceedings, while the 9019 Motion is being adjourned for months, would be quite inefficient. Since last May, when the Government Parties filed the 9019 Motion, the Creditor Objectors have been in stop-and-start-mode. They have devoted very considerable resources to their objections and to discovery, only to be told (multiple times) that the settlement hearing will not occur and that the prior urgency was misplaced. There is no sense in pushing forward with RSA-related litigation — and, in particular, in holding a March 4 hearing on a motion to dismiss the adversary proceedings — when the future and timing of the RSA are uncertain at best.

5. The Creditor Objectors have sought the consent of the Government Parties and the bondholders to adjourn the March 4 hearing. The Oversight Board has advised that it would agree to adjourn the hearing to a date between April 22 and May 6 if possible and in any case before the hearing on 9019 Motion on June 17-18.[8] The Ad Hoc Group of Bondholders has advised that it would agree to a shorter adjournment (to March 31 or April 1); however, that is only several weeks after March 4 and, in any event, counsel for the Union Entities is not available on those dates. The Creditor Objectors believe that, in the circumstances, the most efficient approach would be to schedule the motion-to-dismiss hearing on the same date as the hearing on the 9019 Motion[9]; however, to reach consensus, they do not oppose adjourning the

---

[8] The Government Parties have conditioned this agreement on the Creditor Objectors agreeing not to seek to amend their complaints prior to the new hearing date, unless the 9019 Motion were to be withdrawn. The Creditor Objectors are willing to adjourn on that basis.

[9] The Government Parties previously agreed with this position. They stated that "the Court should decide the

-3-

hearing to a date in the period suggested by the Government Parties, reserving all rights and subject to the Court's availability.

6. Accordingly, the Creditor Objectors respectfully submit that the adjournment of the RSA hearing should be accompanied by an adjournment of the March 4 hearing on the motions to dismiss the adversary proceedings. The Creditor Objectors will continue to seek consensual resolution of this motion while it is pending.

## ARGUMENT

7. The Fuel Line Lenders and the Union Entities have objected to the 9019 Motion on multiple grounds. Among many other points, they have both objected to aspects of the RSA that would undercut the priority of PREPA's "Current Expenses" over its obligations to bondholders. In their proof of claim, the bondholders have asserted a lien and claim against PREPA's "gross revenues" — essentially the entirety of PREPA's revenues now and into the future. The Creditor Objectors believe that the bondholders' lien is limited to the Sinking Fund, or *at most* to PREPA's "Net Revenues" — that is, any revenues remaining after the payment of all Current Expenses. As set forth in objections to the 9019 Motion filed on October 30, 2019, the RSA prejudices the Creditor Objectors by purporting to release their priority-based objections and challenges, including under sections 502 and 506 of the Bankruptcy Code, to the bondholders' liens and claims. The RSA also provides for hundreds of millions of dollars in payments to bondholders ahead of Current Expenses and prior to confirmation of a plan, thus departing from PREPA's pre-petition priority scheme.

---

Rule 9019 Motion before deciding the motions to dismiss the Amended Complaint" because some counts of the Amended Complaint would be mooted if the 9019 Motion was granted. Dkt. 54 in Adv. Pro. No. 19-396 at 10, n.13. National and Assured have likewise argued that "the 9019 Motion and the motions to dismiss should be heard on the same date." Dkt. 66 in Adv. Pro. No. 19-396.

8. To vindicate their own particular interests in limiting the bondholders' lien and claim to no more than "Net Revenues," and to vindicate their priority position, the Fuel Line Lenders filed an adversary proceeding against the bondholders on July 9, 2019. SREAEE filed a separate adversary proceeding on August 6, 2019. As detailed below, certain of the counts in the Amended Complaints are premised on the RSA, and others will be moot or substantially affected if the Government Parties take a different course.

9. In the Fuel Line Adversary Complaint, Counts Five and Seven arise directly from the RSA. Count Five alleges that the bondholders would be unjustly enriched if they receive the payments provided for under the RSA without paying the Fuel Line Lenders for the fuel that their loans purchased for PREPA. Dkt. 36 in Adv. Pro. No. 19-396 at ¶ 92.[10] Count Seven alleges that the RSA contains provisions that are specifically designed to impair the recovery of the Fuel Line Lenders, in violation of Puerto Rico law. *Id.* ¶¶ 101-108. Count Six alleges, among other things, that the Government Parties' and bondholders' litigation positions in support of the RSA have violated pre-petition forbearance agreements. *See* Dkt. 36 in Adv. Pro. No. 19-396 ¶¶ 62-65. Those counts are thus closely linked to the 9019 Motion going forward.

10. Litigation on other counts would also be affected if the RSA does not go forward. Counts Two and Three of the Fuel Line Adversary Complaint object to the bondholders' lien and claim under sections 502 and 506 of the Bankruptcy Code, and Count Four seeks a ruling, consistent with Section 510 of the Bankruptcy Code, that the bonds are subordinate to the Fuel

---

[10] Specifically, the count alleges that the Advances made under the Fuel Line Facilities were used to pay for items that are indisputably Current Expenses, such as fuel and purchased power. Under the Trust Agreement, the bondholders receive the revenues remaining after PREPA pays its Current Expenses. If the bondholders were to receive payments under the RSA while the Fuel Lines are left unpaid, the bondholders will have received the benefit of the fuel and purchased power paid for by the Fuel Lines (the expense of which would otherwise have been borne by PREPA and come ahead of the bondholders' recovery) essentially for free. That result would constitute unjust enrichment. Dkt. 36 in Adv. Pro. No. 19-396 ¶¶ 87-93.

-5-

Lines and should not receive payments (under the RSA) prior to the Fuel Lines. *Id.* ¶¶ 70-86. Count One serves as a predicate to Counts, Two, Three and Four, as it seeks a declaration of the Fuel Line Lenders' "Current Expense" status. *Id.* ¶¶ 66-69.[11]

11. If the RSA does not go forward, litigation regarding those causes of action would necessarily be affected. As to Counts Two and Three, the bondholders have argued that those causes of action should be dismissed "without prejudice" pending the delayed RSA hearing, since (according to the bondholders) that settlement hearing can serve as a substitute for a merits hearing on the causes of action. Dkt. 55 ¶¶ 104-112. While the Creditor Objectors strongly disagree that a settlement hearing can replace a merits hearing under sections 502 and 506 of the Bankruptcy Code, if the RSA does not go forward, that argument would no longer pertain. In addition, if the RSA does not go forward, it may not be necessary for the Court to decide certain issues, including whether *In re Thompson*, 965 F.2d 1136 (1st Cir. 1992), deprives the Creditor Objectors of standing to object to the bondholders' liens and claims, since in that context, the creditors' objections could be pursued side-by-side with the Government Parties' own objections. And finally, if the RSA does not go forward, Count Four (the subordination claim) would also be affected: in that case, there would be no payments to bondholders under the RSA, and a successful challenge to the bondholders' liens and claims may make it unnecessary to decide the extent to which those liens and claims are otherwise subordinate.

12. Because the status of the 9019 Motion is uncertain, and various causes of action in both adversary proceedings would be mooted or otherwise affected if the RSA does not go forward in its current form, litigation at this time on motions to dismiss the adversary proceedings would be a poor use of the parties' and the Court's resources. The Fuel Line

---

[11] The SREAEE Adversary asserts similar counts. Dkt. 25 in Adv. Pro. No. 19-405 ¶¶ 100-127.

Lenders and the Union Entities therefore respectfully request that the hearing scheduled for March 4 on the motions to dismiss the adversary proceedings be adjourned and rescheduled for a date convenient for the Court when the status and timing of the 9019 Motion will likely be clarified.

## Certification Of Compliance With Local Rule 9013-1 And
## The Tenth Amended Case Management Procedures

Pursuant to Local Rule 9013-1 and ¶ I.H of the Tenth Amended Notice, Case Management and Administrative Procedures, the undersigned counsel hereby certify they have (a) carefully examined the matter and concluded there is a true need for an urgent motion; (b) not created the urgency through any lack of due diligence; and (c) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court.

Dated: February 11, 2020 Respectfully submitted,

| | |
|---|---|
| /s/ Rosamar García-Fontán | /s/ Emil A. Kleinhaus |
| Nayuan Zouairabani | Richard G. Mason (admitted *pro hac vice*) |
| USDC-PR No. 226411 | Amy R. Wolf (admitted *pro hac vice*) |
| Rosamar García-Fontán | John F. Lynch (admitted *pro hac vice*) |
| USDC-PR No. 221004 | Emil A. Kleinhaus (admitted *pro hac vice*) |
| MCCONNELL VALDÉS LLC | WACHTELL, LIPTON, ROSEN & KATZ |
| 270 Muñoz Rivera Avenue, Suite 7 | 51 West 52nd Street |
| Hato Rey, Puerto Rico 00918 | New York, New York 10019 |
| P.O. Box 364225 | Telephone: (212) 403-1000 |
| San Juan, Puerto Rico 00936-4225 | Facsimile: (212) 403-2000 |
| Telephone: (787) 250-5604 | Email: rgmason@wlrk.com |
| Facsimile: (787) 759-9225 | arwolf@wlrk.com |
| Email: nzt@mcvpr.com | jlynch@wlrk.com |
| rgf@mcvpr.com | eakleinhaus@wlrk.com |

*Attorneys for Cortland Capital Market Services LLC, as Administrative Agent*

| | |
|---|---|
| /s/ Jose L. Ramirez-Coll | /s/ Bryce L. Friedman |
| Jose L. Ramirez-Coll | Bryce L. Friedman (admitted *pro hac vice*) |
| USDC-PR No. 221702 | Nicholas Baker (admitted *pro hac vice*) |
| ANTONETTI, MONTALVO | Sarah E. Phillips (admitted *pro hac vice*) |
| & RAMIREZ-COLL | SIMPSON THACHER & BARTLETT LLP |
| P.O. Box 13128 | 425 Lexington Avenue |
| San Juan, Puerto Rico 00908 | New York, New York 10017 |
| Telephone: (787) 977-0303 | Telephone: (212) 455-2000 |
| Facsimile: (787) 977-0323 | Facsimile: (212) 455-2502 |
| Email: jramirez@amrclaw.com | Email: bfriedman@stblaw.com |
| | nbaker@stblaw.com |
| | sarah.phillips@stblaw.com |

*Attorneys for Cortland Capital Market Services, LLC, as Administrative Agent (with respect to adversary proceeding), SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC*

-9-

 */s/ Jessica E. Méndez-Colberg*
Rolando Emmanuelli-Jiménez
USDC-PR No. 214105
Jessica E. Méndez-Colberg
USDC-PR: 302108
BUFETE EMMANUELLI, C.S.P.
472 Tito Castro Ave.,
Marvesa Building Suite 106
Ponce, PR 00716
Telephone: (787) 848-0666
Facsimile: (787) 977-0323
Email: rolando@bufete-emmanuelli.com
        jessica@bufete-emmanuelli.com