UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al., | (Jointly Administered) |
| Debtors.[1] | |

---------------------------------------------------------------x

NOTICE OF CORRESPONDENCE RECEIVED BY THE COURT

The Court has received and reviewed the attached correspondence, described below, from interested persons in the above-captioned cases. Although the Court cannot respond individually to all of those who have expressed their thoughts or concerns, the Court is deeply mindful of the impact of the fiscal crisis on lives, institutions, and expectations, and of the importance of the issues that are raised in these unprecedented cases.

1. Letter dated February 5, 2020 from Cate Long.

Dated: February 11, 2020

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

**To the Court:**
**From Cate Long**
**February 5, 2020**

**Coordinated leaks of material non public information regarding mediation between Financial Oversight Board and certain creditor groups.**

**Given that three media outlets were given this story there was obvious coordination and intent to preference certain parties in ongoing negotiation. And since small bondholders have never been allowed representation in mediation it is likely that once again their interests will be sacrificed in the rush for certain parties to achieve a deal.**

**+++++**

**Aires of agreement between the Fiscal Board and the bondholders of General Obligations; The mediation process would have served so that the JSF and certain constitutional bondholders have reached an understanding**, El Nuevodia, February 5, 2020, Joanisabel González

The Board of Fiscal Supervision (JSF) and certain bondholders of General Obligations (GOs), including certain investment funds that are disputed with the tax agency, would have reached a preliminary agreement that could end the litigation around the debt of the island and would allow to continue with the process of analysis and confirmation of a plan of adjustment of the central government, the New Day knew .

According to sources in this newspaper, the parties would have reached an initial understanding under the mediation process ordered by Judge Laura Taylor Swain , who presides over the cases of Title III of Puerto Rico.

To questions from El Nuevo Día, the JSF spokesman, Edward Zayas, indicated that the tax agency would not comment.

The information obtained by El Nuevo Día coincides with information recently published by the specialized newspaper The Wall Street Journal regarding a "tentative" agreement between the parties.

Just before Christmas, Judge Barbara Houser , who chairs the Mediation Team created by Swain, requested additional time to present a report on the ongoing negotiations. In that motion, Houser explained that the team of judges that he leads and the parties that interact in the bankruptcy process of Puerto Rico, were at a "critical juncture."

Then, Houser indicated that there was a possibility that the JSF and the holders of GOs could reach an understanding that would allow the tax agency to present a new adjustment plan. If the

parties did indeed find common ground, Judge Houser explained, it would be necessary to include other parties that are not participating in the process to date.

By provision of Houser and Swain's warning, the parties involved in the mediation process of Title III cases are prohibited from talking about the processes that take place.

During the January general hearing, Judge Houser indicated by telephone in open court that she would meet the deadline granted by the court to file an amended mediation report. This should be presented around February 10.

In the first mediation report filed by Houser last November, the judge suggested that her counterpart give way to litigation to challenge the constitutional debt and to deal separately with questions regarding the debt payable with special income such as the Authority's bonds of Roads and Transportation and other entities. This, given that the parties refused to give in their respective arguments.

According to The Wall Street Journal, the "tentative" agreement would have been reached with the funds that make up the Legitimate Debt Coalition (CDL), the organized group that has constitutional bonds issued by Puerto Rico before 2012, but also with bondholders GOs issued after that year and that the JSF seeks to repudiate in court.

In dollars and cents, the JSF seeks to repudiate about $ 6,000 million in GOs bonds and about $ 4,000 million in bonds of the Public Buildings Authority (AEP).

The specialized newspaper ensures that the tentative agreement includes Autonomy Capital and Aurelius Capital Management , the latter, one of the funds that brought the JSF to the United States Supreme Court, questioning its legitimacy.

The possible agreement between certain bondholders of GOs and the JSF arises at the time that the Unsecured Creditors Committee (UCC) has filed an objection in court stating that the constitutional bondholders requesting that all claims of GOs bondholders be Reclassify as general unsecured claims, since from their perspective, such claims do not have priority over other general claims held by the government with contractors and individuals.

**Fiscal board agrees to cuts to general obligation bonds. It represents the restructuring of most government debt,** Vocero, Feb 5, 2020

The creditors of the General Obligations (OG) bonds accepted a $ 23 billion cut to the $ 35 billion that the government owes them and that was proposed by the Federal Fiscal Control Board, which represents the restructuring of approximately 60% of the largest debt they hold.

THE VOICE contacted the spokesman for the regulatory body, Edward Zayas, but he refused to comment. However, sources of this newspaper close to the processes confirmed that the parties

reached an initial agreement and that there are no changes to the agreement that had been announced in June last year.

This is the largest amount of the $ 72 billion debt of the central government, which could represent the end of litigation related to the restructuring of this debt. The agreement resolves a dispute between OG holders that were issued prior to 2012, as well as with others that have been issued after the date and have been challenged by the regulatory body.

"Mediation is maintained because there are still some legal terms to be agreed, but the agreement sees significant debt cuts. The payments to the bondholders agreed in the June 2019 agreement do not change at the moment. It is a step further in the bankruptcy process and that could put an end to the litigation related to the restructuring of the $ 72 billion, "said one of the sources in this newspaper.

The information provided to EL VOCERO coincides with a report published by The Wall Street Journal, which alleges that the agreement - which still requires the approval of federal judge Laura Taylor Swain - will be announced next week.

According to the New York newspaper, the preliminary agreement was reached with the hedge funds that comprise Monarch Alternative Capital LP, GoldenTree Asset Management LP and Whitebox Advisors LLC. In addition, the regulatory body negotiated with a group that includes Aurelius Capital Management LP and Autonomy Capital recently issued bonds.

**Puerto Rico Bondholders Reach Tentative Deal With Oversight Board. Deal raises recovery for newer general obligation bonds, moving the U.S. territory closer to bankruptcy exit**, Wall Street Journal, February 5, 2020

Competing bondholder groups and the oversight board supervising Puerto Rico's debt restructuring have reached a tentative compromise that moves the U.S. territory closer to leaving bankruptcy, people familiar with the matter said.

The deal settles a dispute between holders of Puerto Rico general obligation bonds that were issued before 2012 and owners of general obligation bonds issued more recently. The oversight board has previously contested the validity of the newer debt and proposed owners of those bonds receive lower recoveries.

The agreement, which requires court approval, is expected to be announced next week. The board and the competing factions worked out the rough terms of their bargain during court-mandated mediation in recent months but are still discussing some legal points of disagreement, people familiar with the matter said.

Hedge funds including Monarch Alternative Capital LP, GoldenTree Asset Management LP and Whitebox Advisors LLC were part of a committee advocating for owners of the older—or

legacy—bonds while a group including Aurelius Capital Management LP and Autonomy Capital negotiated on behalf of investors in the newer bonds. Together, the older and newer bonds total more than $18 billion in debt.

Spokesmen for the oversight board, and both bondholder groups declined to comment.

An early agreement between the legacy group and the oversight board contemplated paying about 64 cents on the dollar for the older bonds and between 45 and 35 cents on the newer bonds. The new deal involves a higher payment on the more recently issued bonds, the people familiar with the matter said.

The price of the U.S. territory's $3.5 billion bond issued in 2014 has climbed about 11% this year to around 70 cents on the dollar in recent days, its highest valuation since the bankruptcy case began in 2017, according to data from Electronic Municipal Market Access.

Aurelius has waged a legal battle against Puerto Rico and its oversight board that has gone all the way to the U.S. Supreme Court in an effort to increase payouts on their debt.

++++++++

**Note I'm reporting this to the Securities Exchange Commission because releasing piecemeal information is exceptionally damaging to parties who have not been allowed access to mediation. Especially given the [court permitted notice](court permitted notice) of the "Lawful Constitutional Constitutional Group" motion to be filed in the Municipal Securities Rulemaking Board website. The motion included numerous factual errors in support of their claim that 2011 GO bonds were unconstitutionally invalid.**

**Posting the objection on the MSRB site reaches a substantially broader pool of investors than those who own the bonds and who are entitled by due process to receive notice. So the court allowed a factually invalid objection to be blasted to the entire universe of municipal bond investors. This should not be allowed without some opportunity for those representing the other side of the argument to present their information. The court has enabled predatory litigants to use a regulated securities platform to spread falsehoods.**

**Cate Long**