Hearing Date: **March 4, 2020 at 9:30 a.m. (Atlantic Standard Time)**
Objection Deadline: **February 18, 2020 at 4:00 p.m. (Atlantic Standard Time)**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

———————————————————X
                              :
In re:                        :
                              :
THE FINANCIAL OVERSIGHT AND   :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,  :  Title III
                              :
      as representative of   :  Case No. 17-BK-3283 (LTS)
                              :
THE COMMONWEALTH OF PUERTO RICO *et al.*,  :  (Jointly Administered)
                              :
Debtors.[1]                   :
                              :
———————————————————X

## DRA PARTIES' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THEIR (I) NOTICE THAT THE DRA IS A PARTY IN INTEREST AND CAN PARTICIPATE IN THE MONOLINES' AMENDED LIFT STAY LITIGATION AND REQUEST TO MODIFY THE AMENDED REVENUE BOND SCHEDULING ORDER OR, (II) IN THE ALTERNATIVE, MOTION TO PERMIT THE DRA PARTIES TO INTERVENE IN THE MONOLINES' AMENDED LIFT STAY LITIGATION

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................. 3

A.    HTA Is Significantly Indebted to the DRA and Pledges the Act 30-31 Revenues to the GDB ............................................................................................................ 3

B.    The FOMB and UCC Commence an Adversary Proceeding Against HTA Bondholders ...................................................................................................... 6

C.    The DRA Parties File a Motion Seeking Stay Relief, or in the Alternative, Adequate Protection .......................................................................................... 6

D.    The Court Stays Proceedings and Orders Mediation ........................................ 7

E.    Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corporation Subsequently File a Lift Stay Motion ............................. 8

F.    The Court Further Stays Proceedings and Enters Interim Litigation Schedules .............. 9

G.    The Monolines File the Amended Lift Stay Motion ......................................... 11

H.    The FOMB Files the Revenue Bond Adversary Proceedings .......................... 12

I.    The Court Amends the Revenue Bond Scheduling Order ............................... 13

J.    The Mediation Team Files the Amended Report ............................................ 13

RELIEF REQUESTED .................................................................................................. 13

ARGUMENT ................................................................................................................ 14

I.    The DRA Is a Party in Interest Under Section 1109(b) of the Bankruptcy Code and the DRA Parties Are Permitted to Participate in the Monolines' Amended Lift Stay Motion ................................................................... 14

II.    In the Alternative, the Court Should Permit the DRA Parties to Intervene Pursuant to Bankruptcy Rule 2018(a) ............................................................. 17

CONCLUSION ............................................................................................................. 19

i

4137-1725-0849

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Abijoe Realty Corp.*,
943 F.2d 121 (1st Cir. 1991)...................................................................................15

*In re Amatex Corp.*,
755 F.2d 1034 (3d Cir. 1985)................................................................................17

*Caterino v. Barry*,
922 F.2d 37 (1st Cir. 1990)...................................................................................17

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
872 F.3d 57 (1st Cir. 2017)...................................................................................14

*In re Glob. Indus. Techs., Inc.*,
645 F.3d 201 (3d Cir. 2011)..................................................................................14

*In re Horned Dorset Primavera, Inc.*,
No. 15-03837 (ESL), 2018 WL 3629952 (Bankr. D.P.R. July 27, 2018) ..............15

*In re Inesta Quinones*,
73 B.R. 333 (D.P.R. 1987)....................................................................................15

*In re James Wilson Assocs.*,
965 F.2d 160 (7th Cir. 1992) ................................................................................14

*In re La Sierra Fin. Servs., Inc.*,
290 B.R. 718 (B.A.P. 9th Cir. 2002).....................................................................17

*In re PM Cross, LLC*,
No. 13–11075–BAH, 2013 WL 6048810 (Bankr. D.N.H. Nov. 15, 2013) ............18

*In re Pub. Serv. Co. of New Hampshire*,
88 B.R. 546 (Bankr. D.N.H. 1988) ..................................................................17, 18

*S. Boulevard, Inc. v. Martin Paint Stores*,
207 B.R. 57 (S.D.N.Y. 1997)................................................................................17

*In re Smith*,
910 F.3d 576 (1st Cir. 2018)..................................................................................15

**Federal Statutes**

PROMESA § 301.................................................................................................1, 14

ii

4137-1725-0849

PROMESA § 310 ................................................................................................................1

Bankruptcy Code § 362(c)(3)(B) ....................................................................................15

Bankruptcy Code § 362(d) ..............................................................................................15

Bankruptcy Code § 1109(b) ...................................................................................... *passim*

Bankruptcy Code § 1112(b) ............................................................................................15

**Puerto Rico Statutes**

*Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No.
    109-2017, as amended by Act No. 147-2018 .................................................1, 5, 6

*Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No.
    30-2013 (2013).................................................................................................2, 4, 16

*Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No.
    31-2013 (2013).................................................................................................2, 4, 16

*Management and Budget Office Organic Act*, 23 L.P.R.A. § 104(c) .............................7

Puerto Rico Uniform Commercial Code.........................................................................12

**Rules**

Federal Rule of Bankruptcy Procedure 7024 ..............................................................2, 18

Federal Rule of Bankruptcy Procedure 9014 ..................................................................18

Federal Rule of Civil Procedure 24 ...........................................................................17, 18

Federal Rule of Bankruptcy Procedure 2018(a) ...................................................... *passim*

**Constitutional Provisions**

Puerto Rico Constitution Article VI, § 8 ...........................................................4, 6, 7, 9, 18

**Other Authorities**

7 Collier on Bankruptcy ¶ 1109.02[1] ...........................................................................15

8 Collier on Bankruptcy ¶ 2018.03[3] ...........................................................................18

9 Collier on Bankruptcy ¶ 2018.02[1] ...........................................................................14

9 Collier on Bankruptcy ¶ 2018.04[3] ...........................................................................17

iii

**COME NOW** AmeriNational Community Services, LLC (hereafter the "<u>Servicer</u>"), as

servicer for the GDB Debt Recovery Authority (the "<u>DRA</u>"), and Cantor-Katz Collateral

Monitor LLC, a Delaware limited liability company which serves as the collateral monitor for

Wilmington Trust, N.A. in connection with the new bonds issued by the DRA pursuant to the

*Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as

amended by Act No. 147-2018 and the approved Qualifying Modification for the Government

Development Bank for Puerto Rico[2] under Title VI of the *Puerto Rico Oversight, Management*

*and Economic Stability Act* (the "<u>Collateral Monitor</u>" and with the Servicer, the "<u>DRA Parties</u>"),

by and through the undersigned legal counsel, and respectfully (i) notify this Court and the

parties that the DRA is a party in interest pursuant to Section 1109(b) of the Bankruptcy Code

(as made applicable under Section 301 of 48 U.S.C. Chapter 20 ("<u>PROMESA</u>")) and that the

DRA Parties intend to participate in litigation concerning the Monolines' Amended Lift Stay

Motion (as defined below), or, (ii) in the alternative, move the Court for an order permitting the

DRA Parties to intervene with respect to the Monolines' Amended Lift Stay Motion under

Bankruptcy Rule 2018(a) (as made applicable under Section 310 of PROMESA).  In support of

this motion, the DRA Parties respectfully state as follows:

<u>**PRELIMINARY STATEMENT**</u>

The DRA is a party in interest in the Monolines' Amended Lift Stay Motion [Dkt. No.

10102] litigation currently pending before the Court and, therefore, the DRA Parties may

participate in this litigation.  The Court should modify the Amended Revenue Bond Scheduling

Order (and any final revenue bonds order) to reflect this participation.  Alternatively, the Court

---

[2] *See* Dkt. No. 270 of Civil Case No. 18-01561 (LTS).

should permit the DRA Parties to intervene in the Monolines' Amended Lift Stay Motion. Failure to permit the DRA Parties' participation would prejudice their due process rights and create the type of duplicative litigation this Court hopes to avoid.[3]

The DRA is a party in interest in the Monolines' Amended Lift Stay Motion under Bankruptcy Code Section 1109(b). The Monolines' Amended Lift Stay Motion pertains, in part, to the excise taxes referred to in Acts 30 and 31 that HTA pledged to the GDB (the DRA's predecessor) under an Assignment and Security Agreement dated August 28, 2013. The DRA's lien on such revenues does not appear to be in dispute. The DRA therefore is a party in interest because the DRA asserts a lien on some of the collateral at issue in the Monolines' Amended Lift Stay Motion.

Furthermore, the FOMB and the Official Committee of Unsecured Creditors have challenged the Monolines' purported liens over those same revenues. If the FOMB and/or the UCC succeed in their challenges (which the DRA Parties believe have merit), then part of the Monolines' Amended Lift Stay Motion pertains solely to collateral of the DRA, not of the Monolines/bondholders. Finally, the DRA holds approximately $200,000,000 in HTA bonds under the 1998 Bond Resolution with comparable rights as those held by the Monolines. Therefore, the DRA Parties are parties in interest with respect to certain issues at stake in the

---

[3] The DRA Parties file this motion as one of a series of interrelated briefs. Concurrent with this motion, the DRA Parties also have filed (a) the *DRA Parties' Motion and Memorandum of Law in Support of Their Motion to Intervene in HTA Revenue Bond Adversary Proceeding with Respect to the Lien Stripping Complaint* and (b) the *DRA Parties' Motion and Memorandum of Law in Support of Their Motion to Intervene in HTA Revenue Bond Adversary Proceeding with Respect to the Clawback Complaint*. Notwithstanding the overlapping factual background and arguments made, the DRA Parties are filing three separate motions (rather than one combined motion) for two reasons. First, the three motions pertain to three separate proceedings – Case No. 17-BK-3283-LTS, Adv. Proc. No. 20-00007-LTS, and Adv. Proc. No. 20-00005-LTS – which necessitated separate filings as a matter of procedure. Second, intervention in the two adversary proceedings is governed by Federal Rule of Bankruptcy Procedure 7024, whereas intervention in the litigation regarding the Monolines' Amended Lift Stay Motion is governed by Federal Rule of Bankruptcy Procedure 2018.

4137-1725-0849

Monolines' Amended Lift Stay Motion.  The Court should modify the Amended Revenue Bond Scheduling Order (and any final revenue bonds order) to reflect this.

In the alternative, if the DRA is not deemed a party in interest under Section 1109(b), the Court should permit the DRA Parties to intervene in the Monolines' Amended Lift Stay Motion for cause under Federal Rule of Bankruptcy Procedure 2018(a).  Cause includes an economic stake in the issue at hand and a lack of undue prejudice or delay to the original parties.  The DRA Parties have a significant stake in the outcome of the Monolines' Amended Lift Stay Motion for the reasons detailed in the prior paragraph.  Moreover, permitting intervention will create efficiencies in administering the case by grouping together overlapping legal issues into a common process.  This will ensure that the DRA Parties are not bound by precedent in which they had no voice and that the Court not address those same issues in two duplicative hearings (which would create delay).[4]

For these reasons and those set forth below, the Court should permit the DRA Parties to participate in or intervene in the Monolines' Amended Lift Stay Motion.

## BACKGROUND

**A.  HTA Is Significantly Indebted to the DRA and Pledges the Act 30-31 Revenues to the GDB**.

1.      Prior to the commencement of the Title III cases, GDB and HTA entered into 23 individual loan agreements.  Pursuant to each of these loans, HTA issued 23 separate promissory notes to GDB as evidence of HTA's indebtedness.  Those loans had, as of July 1, 2018, an aggregate outstanding principal balance in excess of $1.7 billion and not less than $537 million

---

[4] The DRA Parties have filed this intervention motion now because the mediation process related to the schedule detailed in *Interim Report and Recommendation of the Mediation Team* [Dkt. No. 9365] has wound down.  The DRA Parties have attempted for several months to address their concerns regarding potential prejudice to the DRA Parties' claims and lift stay motion [Dkt. No. 7643] for the duration of this process.

3

in outstanding interest, fees and expenses.  *See* Offering Memorandum for GDB Debt Recovery

Authority Bonds (Taxable) Due 2040, dated as of November 7, 2018, at 128–29.

2.       On August 28, 2013, GDB and HTA executed an Assignment and Security

Agreement (the "Security Agreement").  Pursuant to Section 1.1 of the Security Agreement,

HTA "absolutely, irrevocably, and unconditionally assign[ed], convey[ed] and transfer[red]

without recourse, to [GDB all of its] rights, title, obligations and interest in" certain tax and

revenue fees that were transferred from the Commonwealth to HTA so that HTA could pay debt

service under the loan agreements (collectively, the "Act 30-31 Revenues").  Security Agreement

§ 1.1, filed at Dkt. No. 7643, Ex. D; *see also* Act. No. 30-2013 (2013); Act. No. 31-2013 (2013).

The Act 30-31 Revenues consist of the following:

>    (a)       The motor vehicle license fees described by Act No. 30-2013 approved by
>              the Legislature of the Commonwealth on June 25, 2013 ("Act 30");
>
>    (b)       Up to $20,000,000 per fiscal year of the excise tax on cigarettes described
>              by Act No. 31-2013 approved by the Legislature of the Commonwealth on
>              June 25, 2013 ("Act 31");
>
>    (c)       The proceeds of the sixteen cents per gallon gasoline tax described by Act
>              31;
>
>    (d)       The proceeds of the first four cents of the gas and diesel oil excise tax
>              described by Act 31; and
>
>    (e)       The proceeds of the petroleum products excise tax described by Act 31.

*See* Act 30; Act 31.

3.       HTA's pledge of the Act 30-31 Revenues is subject to Article VI, Section 8 of the

Puerto Rico Constitution which may, under certain circumstances, allow the Commonwealth to

divert the Act 30-31 Revenues and use them for the payment of the interest on and amortization

of the public debt to the extent there are no other available resources to pay off such debt.  *See*

Act 30; Act 31; *see also* P.R. CONST. art. VI, § 8 ("In case the available revenues including

surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest

on the public debt and amortization thereof shall first be paid, and other disbursements shall
thereafter be made in accordance with the order of priorities established by law.").

4.      Under Section 1.2 of the Security Agreement, HTA also assigned, pledged and
granted to GDB "[a]s security for the prompt and complete payment and performance when due
of all of its Obligations … a continuing security interest … in all of the right, title and interest of
[HTA] in the [Act 30-31 Revenues], whether presently held or hereafter acquired and wherever
located."  Security Agreement § 1.2.

5.      HTA also issued bonds and other obligations under (a) Resolution No. 68-18,
adopted by HTA on June 13, 1968 (the "1968 Bond Resolution") and (b) Resolution No. 98-06,
adopted by HTA on February 26, 1998 (the "1998 Bond Resolution").  The DRA holds
$200,000,000 in aggregate original principal amount of Puerto Rico Highway and Transportation
Authority, Transportation Revenue Bonds (Series A), which HTA issued under the 1998 Bond
Resolution.  *See* Offering Memorandum for GDB Debt Recovery Authority Bonds (Taxable) due
2040, dated as of November 7, 2018, at 128–29.

6.      The GDB transferred the obligations under the 23 loan agreements and the 1998
Bond Resolution to the DRA pursuant to the GDB's Title VI restructuring under PROMESA and
Puerto Rico statute.  *See* Dkt. No. 270 of Civil Case No. 18-01561 (LTS); *see also* Act No. 109-
2017 (2017).  On November 5, 2018, the FOMB certified GDB's Qualifying Modification under
PROMESA, which Qualifying Modification this Court subsequently approved by Order dated
November 7, 2018.  *See* Dkt. No. 270 of Civil Case No. 18-01561 (LTS).

7.      Puerto Rico adopted the GDB Debt Restructuring Act, creating the DRA as a
statutory public trust and governmental instrumentality of the Commonwealth to facilitate the
restructuring of certain of GDB's indebtedness pursuant to the Qualifying Modification.  *See* Act

5

No. 109-2017 (2017) at arts. 201 and 204.  The DRA received GDB's transferred assets,
including the 23 loan agreements and the bonds issued under the 1998 Bond Resolution, and is
charged with liquidating them to pay debt service under new bonds issued pursuant to GDB's
Title VI restructuring.  *See id.*

### B.  The FOMB and UCC Commence an Adversary Proceeding Against HTA Bondholders.

8.      On May 20, 2019, the FOMB and the UCC filed a complaint against certain fiscal
agents, holders and/or insurers of bonds issued by HTA pursuant to 1968 and 1998 Bond
Resolutions regarding the extent and enforceability of certain security interests in certain HTA
revenues.  *See* Dkt. No. 1 of Civil Case No. 19-00363 (LTS) (the "<u>FOMB-HTA May Adversary
Proceeding</u>").  The defendants to the FOMB-HTA May Adversary Proceeding include Assured
Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National
Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company (the
"<u>Monolines</u>").  The Servicer is also named as a defendant in the FOMB-HTA May Adversary
Proceeding.

### C.  The DRA Parties File a Motion Seeking Stay Relief, or in the Alternative, Adequate Protection.

9.      On June 25, 2019, the DRA Parties filed *The DRA Parties' Motion and
Memorandum of Law in Support of Their Motion for Relief from the Automatic Stay, or in the
Alternative, Ordering Payment of Adequate Protection* (the "<u>DRA Lift Stay Motion</u>") [Dkt. No.
7643] in which they argue that the Commonwealth illegally diverted and retained the Act 30-31
Revenues that were earmarked for HTA's debts and used such funds to pay government
operations or other expenditures. *See* DRA Lift Stay Motion §§ IV, V.  The DRA Parties assert
that such actions violate the Puerto Rico Constitution and Puerto Rico statutes such as the

6

*Management and Budget Office Organic Act*, 23 L.P.R.A. § 104(c) (the "OMB Act").  *See* DRA

Lift Stay Motion ¶¶ 21–24; *see also* P.R. CONST. art. VI, § 8; 23 L.P.R.A. § 104(c) (creating a

waterfall of the priorities of payment for when the available fund for a specific fiscal year are not

sufficient to cover the appropriations approved for that year).  The DRA Parties further allege

that the diminution of their collateral remains in effect, as it continues to be unlawfully diverted

by the Commonwealth.  *See* DRA Lift Stay Motion ¶ 34.

10.    Accordingly, the DRA Parties seek relief from the automatic stay to exercise

remedies or, in the alternative, order the debtors to provide adequate protection for the

diminution of the Act 30-31 Revenues due to the Commonwealth's and/or HTA's actions, as

explained above.  *See generally* DRA Lift Stay Motion ¶¶ 43–44.

**D.  The Court Stays Proceedings and Orders Mediation**.

11.    At a hearing on July 24, 2019, the Court noted that "litigation in potentially

dozens of separate silos, each of which is jostling for the Court's attention and has numerous

potential intervenors concerned about collateral effects would be an inefficient use of judicial

and debtor resources."  July 24, 2019 Hr'g Tr. at 55:20–24 [Dkt. No. 8266].  Accordingly, the

Court stated that it would impose a 120-day litigation stay with respect to a number of issues and

adversary proceedings, including the FOMB-HTA May Adversary Proceeding.  *See id.* at 56:1–

19.  The Court directed the FOMB, AAFAF, the official committees and other litigants to work

with the Court-appointed mediation team during this time "to identify key and gating issues,

assess their crosscutting and collateral implications, seek to reach substantial consensus as to the

prioritization of matters for litigation or mediation, and formulate a proposed schedule and

appropriate notice and participation mechanisms that are as standardized and comprehensive as

possible."  *Id.* at 56:4–10.

7

12.     The Court then entered the *Order Regarding Stay Period and Mandatory Mediation* (as amended) (the "<u>Mediation Stay Order</u>") [Dkt. No. 8244], which—consistent with its comments at the hearing—provided that certain matters in the Title III cases would be stayed through November 30, 2019 (the "<u>Stay Deadline</u>") and subjected certain matters to mandatory mediation.  The Court asked the Mediation Team and the parties to develop an overarching litigation calendar that would, among other things, "avoid piecemeal litigation of potentially overlapping key issues."  Mediation Stay Order at 1.

13.     On August 16, 2019, the Court entered the *Stipulated Order Subjecting the DRA Parties' Lift Stay Motion to Mediation and 120-Day Stay* [Dkt. No. 8481], which provided that all issues related to the DRA Lift Stay Motion would be subject to mandatory mediation imposed by the Mediation Stay Order.

### E. Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corporation Subsequently File a Lift Stay Motion.

14.     On August 23, 2019, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corporation filed a motion for adequate protection or, in the alternative, for relief from the automatic stay with respect to bonds issued by HTA under the 1968 and 1998 Bond Resolutions.  *See* Dkt. No. 8536 (the "<u>Monolines' Lift Stay Motion</u>").

15.     In the Monolines' Lift Stay Motion, the movants allege that they have a perfected security interest in certain pledged special revenues, including some of the Act 30-31 Revenues. These revenues allegedly include (i) HTA toll revenues, (ii) excise taxes on gasoline, diesel, crude oil, cigarettes, and other products, and (iii) Commonwealth motor vehicle license fee revenues.  *See* Monolines' Lift Stay Motion ¶ 6.

8

4137-1725-0849

16.     Similar to the DRA Lift Stay Motion, the movants allege that adequate protection and stay relief are warranted because the Commonwealth unlawfully diverted payments of pledged revenues (specifically, the excise taxes) in violation of Article VI, Section 8 of the Puerto Rico Constitution.  *See generally* Monolines' Lift Stay Motion ¶¶ 63, 68.  The movants also claim that they are suffering an actual injury because the Commonwealth's diversion of the pledged revenues diminishes the value of their security interest and jeopardizes their right to repayment for the foreseeable future.  *See generally id.* ¶¶ 68, 75–77.

17.     On August 28, 2019, the Court entered an order subjecting the Monolines' Lift Stay Motion to mandatory mediation imposed by the Mediation Stay Order.  *See* Dkt. No. 8567.

### F.  The Court Further Stays Proceedings and Enters Interim Litigation Schedules.

18.     By order, dated October 28, 2019, the Court extended the Stay Deadline to December 31, 2019.  *See* Dkt. No. 9016.

19.     On November 27, 2019, the Mediation Team filed the *Interim Report and Recommendation of the Mediation Team* (the "Interim Report") [Dkt. No. 9365].  The Interim Report contains the Mediation Team's proposed interim scheduling orders governing procedures to litigate several matters, including the Monolines' Lift Stay Motion and the DRA Lift Stay Motion.  *See* Interim Report at Exs. 2, 3.  Under the *Proposed Interim Case Management Order for Revenue Bonds*, the Monolines would file any amendments to the Monolines' Lift Stay Motion by January 16, 2020, with oppositions due January 30, 2020, and replies due on February 13, 2020.  *See* Interim Report at Ex. 2.[5]  Additionally, the schedule contemplates the FOMB filing new adversary proceedings against the Monolines in January 2020, with briefing filed

---

[5] On January 31, 2020, the Court entered an order that extended the opposition and reply deadlines to February 3, 2020 and February 18, 2020, respectively.  *See* Dkt. No. 10595 ¶ 1(b) (the "Amended Revenue Bond Scheduling Order").

throughout the winter and spring of 2020, and provides that certain issues in the Monolines' Lift
Stay Motion may be consolidated with such proceedings.  *See id.*

20.     By contrast, the proposed schedule pertaining to the DRA Lift Stay Motion
contemplates the DRA Parties litigating their standing to file the DRA Lift Stay Motion in
February through April 2020, with merits briefing thereafter.  *See* Interim Report at Ex. 3.  Based
on these schedules, the Court could determine the merits of the Monolines' Lift Stay Motion
before even ruling on the DRA Parties' standing to address similar and overlapping substantive
issues.

21.     The DRA Parties filed the *DRA Parties' Response and Reservation of Rights with
Respect to the Interim Report and Recommendation of the Mediation Team* (the "Reservation of
Rights") [Dkt. No. 9503] because this potential scheduling conflict could prejudice the DRA
Parties in prosecuting their claims.  In their Reservation of Rights, the DRA Parties noted that
they are not a party to and were never made aware of the proposed scheduling order regarding
the Monolines' Lift Stay Motion.  *See* Reservation of Rights ¶ 2.  The DRA Parties expressed
their concern that, under the Interim Report's proposed schedules, the movants would be able to
address significant overlapping substantive issues while the Court is still considering the DRA
Parties' standing to address these same issues.  *See id.*  The DRA Parties asserted that the
conflicting timeframes between the two schedules could impact their rights with respect to both
the DRA Lift Stay Motion and potential arguments regarding confirmation of a plan in both the
Commonwealth and HTA Title III cases.  *See id.*  To address the economic and constitutional
injury that could result, the DRA Parties noted that they "may move to intervene and participate
in the [Monolines' Lift Stay Motion] litigation so that the Court may address the overlapping

10

topics covered by the [Monolines' Lift Stay Motion] and the DRA Lift Stay Motion concurrently." *Id.* ¶ 3.

22.     On December 19, 2019, the Court entered orders approving the proposed interim scheduling orders governing procedures to litigate the Monolines' Lift Stay Motion and the DRA Lift Stay Motion.  *See* Dkt. Nos. 9620 (the "Revenue Bond Scheduling Order"), 9622 (the "DRA Scheduling Order").

23.     By orders dated December 19, 2019, and December 23, 2019, the Court further extended the Stay Deadline to January 31, 2020, and then to March 11, 2020.  *See* Dkt. Nos. 9618, 9639.  Notwithstanding the extension of the Stay Deadline, litigation on the Monolines' Lift Stay Motion and the DRA Lift Stay Motion will continue to move forward under their respective scheduling orders.

**G.  The Monolines File the Amended Lift Stay Motion**.

24.     Consistent with the terms of the Revenue Bond Scheduling Order, on January 16, 2020, the Monolines filed the *Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection* [Dkt. No. 10102] (the "Monolines' Amended Lift Stay Motion").

25.     The arguments in the Monolines' Amended Lift Stay Motion largely echo those in the original motion (as well in the DRA Lift Stay Motion), with some additions and recharacterizations.  The Monolines again argue that the Commonwealth has wrongfully diverted pledged HTA funds, including certain Act 30-31 Revenues, and that this improper diversion has created a "permanent loss of collateral."  Monolines' Amended Lift Stay Motion ¶ 11; *see also*

11

*id.* ¶¶ 1, 20, 33, 39.  The Monolines request that the Court authorize a lifting of the stay with

respect to the pledged revenues so that they can pursue remedies in Commonwealth court due to

lack of adequate protection, or in the alternative that the Court authorize adequate protection

payments. *See, e.g.*, *id.* ¶ 2.

   **H. The FOMB Files the Revenue Bond Adversary Proceedings**.

   26.   Also on January 16, 2020 and pursuant to the Revenue Bond Scheduling Order,

the FOMB commenced two adversary proceedings (the "Revenue Bond Adversary

Proceedings") that seek to disallow the proofs of claim filed against HTA and the

Commonwealth by the Monolines, the Bank of New York Mellon as Fiscal Agent for the HTA

bonds (the "Fiscal Agent") and Peaje Investments LLC ("Peaje").  *See* Dkt. No. 1 of Adv. Proc.

No. 20-00007 (the "Lien Stripping Complaint"); Dkt. No. 1 of Adv. Proc. No. 20-00005 (the

"Clawback Complaint").

   27.   In the Lien Stripping Complaint, the FOMB objects to the proofs of claim on

substantially similar grounds as those that the FOMB and UCC initially raised in the FOMB-

HTA May Adversary Proceeding, namely the validity and enforceability of the Monolines'

security interests in certain HTA current and future revenues, including the Act 30-31 Revenues.

In the complaint, the FOMB argues, among other things, that (i) the Monolines do not have any

ownership in the pledged revenues, *see* Lien Stripping Compl. ¶¶ 114–16, (ii) the Monolines do

not have a security interest in the revenues pledged under the 1968 and 1998 Bond Resolutions

other than those received by HTA and deposited to the account held by the Fiscal Agent, *see id.*

¶¶ 117–21, (iii) the Monolines do not have a statutory lien on the revenues, *see id.* ¶¶ 106–10,

and (iv) the liens are not properly perfected under the Puerto Rico Uniform Commercial Code,

*see id.* ¶¶ 122–27.

12

28.     In the Clawback Complaint, the FOMB alleges that the diversion of the pledged

revenues is appropriate under Commonwealth law and that the Commonwealth's implementation

of the clawback is expressly contemplated by the 1968 and 1998 Bond Resolutions.  *See*

Clawback Compl. ¶¶ 125–28.  The FOMB also challenges the defendants' standing to obtain

recovery from the Commonwealth, arguing that rights with respect to the pledged revenues

belong to HTA, not HTA's creditors.  *See id.* ¶¶ 119–20.

29.     Shortly after the filing of the Monolines' Amended Lift Stay Motion and the

Revenue Bond Adversary Proceedings, the DRA Parties again expressed concerns about being

prejudiced by litigation of overlapping issues that could prejudice the DRA Parties without

participation from the DRA Parties in the context of both the Monolines' Amended Lift Stay

Motion and the Revenue Bond Adversary Proceedings.  *See* Dkt. No. 10421.

**I.   The Court Amends the Revenue Bond Scheduling Order**.

30.     On January 31, 2020, the Court entered the Amended Revenue Bond Scheduling

Order.

**J.   The Mediation Team Files the Amended Report**.

31.     On February 10, 2020, the Mediation Team filed the *Amended Report and

Recommendation of the Mediation Team* [Dkt. No. 10756].

**RELIEF REQUESTED**

32.     The DRA Parties respectfully (i) notify this Court and other parties that they are

parties in interest with respect to the Monolines' Amended Lift Stay Motion under Section

1109(b) of the Bankruptcy Code and request that the Court modify the Amended Revenue Bond

Scheduling Order (and any final revenue bonds order) to reflect this, or, in the alternative, (ii)

13

4137-1725-0849

request entry of an order, substantially in the form attached as <u>Exhibit A</u> hereto, permitting the

DRA Parties to intervene in such litigation pursuant to Bankruptcy Rule 2018(a).

## <u>ARGUMENT</u>

**I.   The DRA Is a Party in Interest Under Section 1109(b) of the Bankruptcy Code and the DRA Parties Are Permitted to Participate in the Monolines' Amended Lift Stay Motion**.

33.     Section 1109(b) of the Bankruptcy Code, which applies here pursuant to section

301 of PROMESA, provides that "[a] party in interest, including the debtor, the trustee, a

creditors' committee, an equity security holders' committee, a <u>creditor</u>, an equity security holder,

or any indenture trustee, may raise and may appear and be heard on any issue in a case under

[chapter 11 of the Bankruptcy Code]."  11 U.S.C. § 1109(b) (emphasis added).  A party in

interest has the right to be heard in a case without needing to request leave to intervene.  *See* 9

<u>Collier on Bankruptcy</u> ¶ 2018.02[1] (16th ed. rev. 2018) ("An entity given the right to be heard

under section 1109 is necessarily a party in interest in that case and need not seek leave under

Rule 2018(a) to intervene in the case."); *see also In re Fin. Oversight & Mgmt. Bd. for Puerto

Rico*, 872 F.3d 57, 63 (1st Cir. 2017) ("[W]e view the rights described in § 1109(b) to be entirely

consistent with intervention rights generally.").[6]

34.     Section 1109(b) "has been construed to create a broad right of participation in

Chapter 11 cases."  *In re Glob. Indus. Techs., Inc*., 645 F.3d 201, 210 (3d Cir. 2011).  The

Seventh Circuit has held that Section 1109(b) encompasses "anyone who has a legally protected

interest that could be affected by a bankruptcy proceeding."  *In re James Wilson Assocs*., 965

F.2d 160, 169 (7th Cir. 1992).  A person qualifies as a "party in interest" if that person has a

---

[6] While parties in interest do not need court approval to appear, the DRA Parties nonetheless file this motion out of an abundance of caution.

14

significant legal stake in the outcome of the case. *See In re Horned Dorset Primavera, Inc.*, No.
15-03837 (ESL), 2018 WL 3629952, at *7 (Bankr. D.P.R. July 27, 2018) (citing 7 <u>Collier on
Bankruptcy</u> ¶ 1109.02[1]).  For example, a "party in interest" under Section 1109(b) "comprises
... anyone holding a direct [stake in the] financial outcome of the case." *Id.*  Therefore, Section
1109(b) permits such parties to "participate in the adjudication of any issue that may ultimately
shape the disposition of his or her interests." *Id.*

35.    Case law makes clear that a creditor (such as the DRA here[7]) is a "party in
interest" under Section 1109(b) and therefore has the right to request various forms of relief
under the Bankruptcy Code.  *See In re Abijoe Realty Corp.*, 943 F.2d 121, 124–25 (1st Cir. 1991)
(noting that Section 1109(b) defines a "party in interest" to include "a creditor" and that a
"creditor" thus has standing to request dismissal of a chapter 11 case under Bankruptcy Code §
1112(b)); *In re Smith*, 910 F.3d 576, 588 (1st Cir. 2018) (". . . Congress allowed any 'party in
interest,' including a creditor, to move to extend the stay [under Section 362(c)(3)(B) of the
Bankruptcy Code]."); *In re Inesta Quinones*, 73 B.R. 333, 337 (D.P.R. 1987) ("The avenue for a
creditor that wants to pursue an action against the debtor or debtor's estate are found in § 362(d),
which states that: (d) *On request of a party in interest* and after notice and a hearing, the court
shall grant relief from the stay provided under subsection (a) of this section, such as by
terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of
adequate protection of an interest in property *of such party in interest*[.]") (emphasis added).

36.    The DRA, as a creditor, has a significant legal stake in the outcome of the
Monolines' Amended Lift Stay Motion.  The resolution of the Monolines' Amended Lift Stay

---

[7] *See* Proof of Claim No. 151,149 of Case No. 17-BK-3567 (LTS).

Motion will necessarily involve the Court making determinations regarding whether the Commonwealth improperly diverted funds which would otherwise be used to pay debt service under the loan agreements and the 1968 and 1998 HTA bonds. *See supra* ¶¶ 9, 25.

37.     In particular, and as stated above, the HTA pledged to the GDB significant excise tax revenue streams under Acts 30 and 31 that are the subject of both the DRA Parties' and the Monolines' Amended Lift Stay Motions. *See generally supra* ¶¶ 2–4, 9–10, 25. However, the FOMB and UCC have argued that the Monolines have no interest in the Act 30-31 Revenues in the FOMB-HTA May Adversary Proceeding and the Revenue Bond Adversary Proceedings. *See supra* ¶¶ 8, 26–28. Therefore, with respect to the Act 30-31 Revenues, the Commonwealth has diverted property that HTA likely only pledged to the GDB.[8] The DRA Parties thus have a significant (and potentially the sole) legal stake in the outcome of the Monolines' Amended Lift Stay Motion with respect to the Act 30-31 Revenues.

38.     Because of the DRA's status as a creditor and its economic stake in this case, the DRA Parties, as parties in interest, may participate in the proceedings surrounding the Monolines' Amended Lift Stay Motion. The DRA Parties will face prejudice if they are not permitted to participate in such proceedings because the Court may decide substantive and legal issues pertaining to the DRA's collateral without affording the DRA the opportunity to be heard.

39.     Accordingly, the Court should modify the Amended Revenue Bond Scheduling Order to expressly identify the DRA Parties' right to participate in litigating the Monolines' Amended Lift Stay Motion.

---

[8] The DRA Parties reserve all other arguments regarding the DRA's and the bondholders' respective liens in the Act 30-31 Revenues.

16

**II. In the Alternative, the Court Should Permit the DRA Parties to Intervene Pursuant to Bankruptcy Rule 2018(a)**.

40.      In the alternative, the Court should allow the DRA to intervene in the litigation for cause pursuant to Bankruptcy Rule 2018(a).

41.      Rule 2018(a) of the Federal Rules of Bankruptcy Procedure provides that "[i]n a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." Fed. R. Bankr. P. 2018(a); *see also S. Boulevard, Inc. v. Martin Paint Stores*, 207 B.R. 57, 62 (S.D.N.Y. 1997) ("Permissive intervention provides the Bankruptcy Courts with a mechanism to allow entities that do not technically qualify as 'parties in interest' [under Section 1109(b) of the Bankruptcy Code] to participate in proceedings when such participation is necessary to protect the entities' interests.").

42.      To obtain intervenor status under Rule 2018(a), the potential intervenor must have "a sufficient stake in the outcome of the proceeding so as to require representation." *In re Pub. Serv. Co. of New Hampshire*, 88 B.R. 546, 551 (Bankr. D.N.H. 1988) (citing *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)).

43.      Under Bankruptcy Rule 2018(a), a party must establish cause to intervene. "'Cause' may be an economic interest or the fact that no other entity exists to adequately protect the interested entity's position." *In re La Sierra Fin. Servs., Inc.*, 290 B.R. 718, 728 (B.A.P. 9th Cir. 2002) (citing 9 Collier on Bankruptcy ¶ 2018.04[3]).  In considering whether cause exists, courts look at whether the party is adequately represented in the litigation and whether intervention would result in undue delay or prejudice to the original parties.  *See In re Pub. Serv. Co. of New Hampshire*, 88 B.R. at 551; *see also Caterino v. Barry*, 922 F.2d 37, 39–40 (1st Cir. 1990) (interpreting Federal Rule of Civil Procedure 24, which governs intervention in adversary

17

proceedings, and stating that a putative intervenor must submit a timely motion to intervene in the adversary proceeding, demonstrate a direct and substantial interest which would be impaired were intervention not permitted, and establish that its interest is inadequately represented by existing parties).[9]

44.     Permissive intervention under Rule 2018(a) may also be granted to an entity based on that entity's concern with precedential ramifications of an aspect of a case. *See In re Pub. Serv. Co. of New Hampshire*, 88 B.R. at 551 (citing 8 Collier on Bankruptcy ¶ 2018.03[3]).

45.     Here, cause exists to permit the DRA Parties to intervene with respect to the Monolines' Amended Lift Stay Motion.  As noted above, the DRA Parties have a significant stake in the outcome of the Monolines' Amended Lift Stay Motion and perhaps the sole economic stake with respect to the Act 30-31 Revenues. *See generally supra* ¶¶ 2–4, 8–10, 25–28.

46.     Moreover, while the Monolines allege that their perfected security interest includes the Act 30-31 Revenues, their purported collateral also includes other instruments—namely, the toll revenues—which are not subject to Article VI, Section 8 of the Puerto Rico Constitution. *See* Monolines' Amended Lift Stay Motion ¶¶ 39, 50, 51.  Accordingly, the Monolines could manage or settle the proceeding differently than the DRA Parties would considering their different economic interests in the case.  Therefore, cause exists because the DRA's interests are not adequately represented by the Monolines.

---

[9] Although Federal Rule of Civil Procedure 24 (which is made applicable to bankruptcy cases under Bankruptcy Rule 7024) does not apply to contested matters, such as this proceeding, *see* Fed. R. Bankr. P. 9014, courts have found case law concerning Rule 24 to be helpful in construing whether cause for permissive intervention exists under Bankruptcy Rule 2018(a).  *See In re PM Cross, LLC*, No. 13–11075–BAH, 2013 WL 6048810, at *3 (Bankr. D.N.H. Nov. 15, 2013).

47.     Nor will the DRA's participation in the litigation unduly prejudice or delay the parties.  Indeed, the DRA Parties are familiar with the issues raised in the Monolines' Amended Lift Stay Motion and are prepared to participate under the same schedule already set forth in by the Court in the Amended Revenue Bond Scheduling Order.

48.     Permissive intervention also is warranted under Rule 2018(a) because of the precedential effects that the Court's decision in the Monolines' Amended Lift Stay Motion litigation could have on the DRA.  As explained above, the Amended Revenue Bond Scheduling Order and the DRA Scheduling Order contain conflicting timeframes insofar as the Monolines will have the opportunity to address significant substantive issues while the Court is still considering the DRA Parties' standing to address these same overlapping issues.  Should the Court find in the Monolines' litigation, for example, that the Commonwealth did not improperly divert the Act 30-31 Revenues, the DRA Parties might be bound by the Court's decision without the due process the law affords them.  This would also affect the DRA's potential arguments regarding confirmation of a plan in both the Commonwealth and HTA Title III cases. Accordingly, permissive intervention is necessary to avoid the prejudice that the DRA could face if not afforded its constitutional due process right to contest the overlapping issues in the Monolines' Amended Lift Stay Motion.

## <u>CONCLUSION</u>

49.     WHEREFORE, the DRA Parties respectfully request that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u> (i) confirming that the DRA Parties are parties in interest, and thus are permitted to participate in litigation with respect to the Monolines' Amended Lift Stay Motion in accordance with  the Amended Revenue Bond Scheduling Order, or, in the alternative, permitting the DRA Parties to intervene with respect to

such litigation pursuant to Bankruptcy Rule 2018(a), and (ii) granting any such order and further

relief as is just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today February 11, 2020.

20

4137-1725-0849

**MCCONNELL VALDÉS LLC**

270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
PO Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: 787-250-5632
Facsimile: 787-759-9225

By: */s/Arturo J. García-Solá*
Arturo J. García-Solá
USDC No. 201903
Email: ajg@mcvpr.com

By: */s/Nayuan Zouairabani*
Nayuan Zouairabani
USDC No. 226411
Email: nzt@mcvpr.com

*Attorneys for AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority*

**C. CONDE & ASSOC. LAW OFFICES**

By: */s/ Carmen D. Conde Torres*

Carmen D. Conde Torres
(USDC No. 207312)
254 San José Street
Suite 5
San Juan, PR 00901-1523
Tel. 787-729-2900
Fax. 787-729-2203
E-Mail: condecarmen@condelaw.com

*-and-*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: */s/ Douglas S. Mintz*
Douglas S. Mintz (admitted pro hac vice)
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
E-mail: dmintz@orrick.com

and

Laura Metzger (pro hac vice pending)
Peter Amend (admitted pro hac vice)
Monica Perrigino (admitted pro hac vice)
51 West 52nd Street
New York, N.Y. 10019
Telephone: (212) 506-5000
E-mail:      lmetzger@orrick.com
              pamend@orrick.com
              mperrigino@orrick.com

*Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for GDB Debt Recovery Authority*

21