## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

## URGENT MOTION OF ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AMBAC ASSURANCE CORPORATION, NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, AND FINANCIAL GUARANTY INSURANCE COMPANY TO ADJOURN HEARING ON MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY AND EXTEND DEADLINE FOR REPLIES IN SUPPORT OF MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation (collectively, the "Bondholders") respectfully submit this urgent motion (the "Urgent Motion") requesting entry of an order, substantially in the form of Exhibit A, (1) adjourning the current March 5, 2020 preliminary hearing date on the *Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay* [ECF No. 10102], *Amended Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank Trust National Association, Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* [ECF No. 10602] (the "PRIFA Lift-Stay Motion"), and *Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and the Bank of New York Mellon's Motion Concerning Application of the Automatic Stay to the Revenues Securing the CCDA Bonds* [ECF No. 10104] (the "Lift-Stay Motions") until the April 22, 2020 Omnibus hearing, (2) extending the Bondholders' deadline to file replies to the *Opposition of Financial Oversight Board for Puerto Rico to Motions for Relief from Automatic Stay* [ECF No. 10613], *Supplemental Opposition of Commonwealth of Puerto Rico to Amended PRIFA Bondholder Motion to Lift the Automatic Stay* [ECF 10611], *Opposition of Commonwealth of Puerto Rico to Motion Concerning Application of Automatic Stay* [ECF 10615] (the "Oppositions") until April 6, 2020, and (3) entering a bridge

2

order in the form of Exhibit B extending the Bondholders' deadline for filing replies to February 25, 2020.[2]

In support of this Urgent Motion, the Bondholders respectfully represent as follows:

**<u>INTRODUCTION</u>**

1.     The Bondholders have filed motions seeking relief from the automatic stay to pursue their rights with respect to revenue bonds issued by the Puerto Rico Highways and Transportation Authority ("<u>HTA</u>"), the Puerto Rico Infrastructure Financing Authority ("<u>PRIFA</u>"), and the Puerto Rico Convention Center District Authority ("<u>CCDA</u>"). In light of the significant factual issues raised in the FOMB's recent Oppositions to those motions, the Bondholders respectfully seek to adjourn the March 5, 2020 hearing on their lift-stay motions and to extend the impending February 18, 2020 deadline for filing their reply briefs in order to allow time for crucial discovery. At the time of the January 29, 2020 Omnibus Hearing, the Bondholders had hoped that the Government Parties' lift stay Oppositions would be limited in nature and that the parties could expeditiously address needed discovery on such limited issues in time to allow fulsome drafting of the reply briefs by February 18th and preserve the March 5, 2020 hearing date. However, the scope of the Oppositions and the inability of the parties to reach agreement on discovery has prevented that timeline. The Bondholders need time to resolve their discovery dispute with the Government Parties and to receive and review documents that are directly relevant to the factual issues raised in the FOMB's Opposition. Despite the Bondholders' efforts since January 29th, this cannot possibly happen before the March 5 hearing, let alone the February 18 deadline for the Bondholders' Replies to the Oppositions.

---

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion and the Amended Interim Case Management Order for Revenue Bonds, No. 17-3567, ECF No. 678.

2.      At the January 29, 2020 Omnibus Hearing, the FOMB had not yet filed its Oppositions to the Lift Stay Motions. The Bondholders nonetheless anticipated that resolution of the threshold issues in the Lift Stay Motions would require discovery. As the Bondholders informed the Court, they needed "discovery on the flow of funds, the use of funds, account ownership, [and] balance information" to address factual assertions they expected the FOMB to make in their Oppositions. Tr. 162:22–163:4, 163:9–16.

3.      The Court therefore ordered the parties to hold a meet-and-confer before February 7, 2020, recognizing that if any issues related to discovery needed for the lift-stay preliminary hearing arose, the parties would "have to ask . . . for a hearing the week of the 10th." Tr. 173:12–19.

4.      The FOMB filed its Oppositions on February 3. On February 5, the Bondholders served the Government Parties with informal document requests directed at the FOMB's factual assertions. The requests seek critical information regarding the flow of the Pledged Revenues, Pledged Rum Taxes, and the Pledged Hotel Taxes, Commonwealth account balances, and the Commonwealth's budgetary practices. For example, the requests related to HTA seek documents sufficient to show (1) the transfer or deposit of Pledged Revenues to the Commonwealth or HTA from January 1, 2015 to the present, (2) each transfer or deposit of funds from the Commonwealth to HTA, and (3) the total amount of Pledged Revenues held by HTA or the Commonwealth, including information sufficient to identify the accounts were Pledged Revenues are retained and the cash balance of the accounts. *See* Ex. C. The requests also seek certain communications and agreements involving HTA or the Commonwealth relating to the Pledged Revenues and their use, and documents showing the terms, scope, and effects of restrictions placed on HTA-related funds, including funds described as "restricted" in the Commonwealth's "Summary of Cash Restriction

Analysis" dated Oct. 2, 2019. *Id.* The requests related to PRIFA and CCDA sought similar documents. *See* Exs. G, H.

5.      In addition, in its opposition to the PRIFA Lift-Stay Motion, the FOMB confirmed, for the first time, that pursuant to a lockbox agreement, the Puerto Rico Treasury Department has, for years, been receiving the Pledged Rum Taxes with a "Disbursement Detail" document that "describes the disbursements" of "the first $117 million" as "**for deposit to the credit of PRIFA**." *Supplemental Opposition of Commonwealth of Puerto Rico to Amended PRIFA Bondholder Motion to Lift Automatic Stay* [ECF No. 10611] (the "PRIFA Opposition") ¶ 29. Movants had been asking for this information, and documents evidencing the disbursement information, for months, including during a colloquy at the January 29 Omnibus Hearing. Following the revelation in the Opposition, during an in-person meet-and-confer on February 5, 2020, Movants specifically requested the "Disbursement Detail" documents, which the FOMB clearly has collected and reviewed, as it made factual representations about these documents in its brief.

6.      Similarly, in the FOMB's opposition to the CCDA Lift-Stay Motion, the FOMB referenced that the "Transfer Account" was addressed as part of GDB's restructuring, and elsewhere conceded that Movants had collateral in the Transfer Account, thus giving rise to a factual issue of whether the Movants' collateral was improperly diverted from the Transfer Account. *See Opposition of Commonwealth of Puerto Rico to Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and the Bank of New York Mellon Concerning Application of Automatic Stay* [ECF No. 10104] ("CCDA Opposition"), ¶ 40, n.21.

7.      Following the February 5 meet-and-confer, the Bondholders further clarified certain requests via e-mail on February 7, and the Government Parties responded in writing to the

requests on February 9. But the Government Parties' vague response provided no indication of what documents the Government Parties would produce and when. The Government Parties set forth broad-based objections, offered a cursory production, limited in scope to minimal and immediately accessible information related to the flow of funds, and refused to provide other critical information. The Bondholders have continued to work with the Government Parties to resolve this dispute. However, the rapidly approaching February 18th deadline (which immediately follows a holiday weekend), along with the Government Parties' delay in response to the requests and extremely limited agreements to produce have made it clear that significant motion practice will be needed.

8.      The FOMB's Oppositions to the lift-stay motions raise arguments that turn on factual assertions about the Commonwealth's ownership of funds and the nature of the Excise Tax Statutes. The Government Parties' refusal to produce documents that are directly relevant to these issues leaves the Bondholders insufficient time to resolve the discovery dispute and to receive and review critical information before the February 18 reply deadline or the March 5 hearing. Without discovery, the Bondholders cannot adequately respond to the FOMB's factual assertions. Given the importance of these issues and the critical nature of the requested discovery, the Bondholders would be prejudiced if required to proceed under the current schedule.

9.      The Bondholders thus propose amending the schedule set forth in the Amended Interim Case Management Order for Revenue Bonds, No. 17-3283, ECF No. 10595, to extend the Bondholders' deadline for their reply to 5:00 p.m. on April 6, 2020, and adjourning the preliminary lift-stay hearing to the April 22, 2020 omnibus hearing. This new schedule is reasonable and will not unnecessarily delay resolution of the gating issues. The Bondholders consent to keeping the stay in place for 45 days following the April 22, 2020 preliminary hearing.

## ARGUMENT

10.     The discovery the Bondholders have requested from the Government Parties is critical to the Bondholders' three lift-stay motions and directly relevant to the arguments raised in the FOMB's Oppositions. Despite the upcoming February 18 deadline for filing their replies, the Bondholders have not yet received any discovery from the Government Parties in response to their requests, which the Bondholders presented to the Government Parties promptly after the January 29th Omnibus Hearing. Indeed, based on conversations and communications with Government Party representatives prior to January 29th, the Government Parties have long known the type of documents the Bondholders would be seeking. Unfortunately, the process of discussion and production has been slow and with much disagreement. The preliminary hearing and reply deadlines should be adjourned to facilitate the parties' resolution of discovery issues and to enable the Bondholders to fully respond to the FOMB's factual assertions on the important preliminary issues in the Lift-Stay Motions.

11.     The Oppositions present at least two crucial issues of fact that necessitate discovery. First, the Bondholders need discovery to rebut the FOMB's assertion that the Excise Tax Statutes are appropriations statutes. Second, they need information on the flow of funds—including discovery on the Commonwealth instrumentalities that hold Pledged Revenues and the accounts in which the revenues are held—to counter the FOMB's assertion that the Bondholders lack a property interest in the Pledged Revenues.

### A.     The Bondholders Need Discovery to Show the Excise Tax Statutes are Not Appropriations Statutes

12.     Using HTA as an example with equally applicable arguments for CCDA and PRIFA, the Oppositions rest on the FOMB's attempt to reclassify the Excise Tax Statutes as "appropriation" laws that create "merely an expectancy" that the Commonwealth would continue

transferring the Excise Taxes to HTA. Obj. ¶¶ 80, 83, 92. From this factual premise, the FOMB

argues that (1) this expectancy is insufficient to confer a property interest to the Bondholders or

HTA, and (2) section 202 of PROMESA preempts the Excise Tax Statutes because PROMESA

purportedly preempts all preexisting appropriation statutes. *Id.* ¶¶ 83–86.

13.     The FOMB's characterization of the Excise Tax Statutes raises issues that are

fundamentally factual. First, the FOMB argues that the Commonwealth is more than a mere

custodian of funds because the Commonwealth collects the Pledged Revenues under its taxing

authority and deposits them into the Treasury Single Account before transferring the funds to HTA.

Obj. ¶ 92. It also points to Exhibit A of the Opposition, an unattributed and unauthenticated "HTA

Flow of Funds Chart" that purports to illustrate the flow of Pledged Revenues and suggests that,

after the Commonwealth collects the revenues into its accounts, including the Commonwealth's

Treasury Single Account, it then makes "[a]ppropriations pursuant to HTA Allocable Revenue

Statutes." *See* Obj. ¶ 6; Obj. Ex. A. The Bondholders need information on the flow of funds to

evaluate and rebut the FOMB's factual assertions.

14.     Second, the FOMB asserts that the "Puerto Rico statutes governing the Allocable

Revenues appropriate the *Commonwealth's* tax revenues to HTA without regard to Oversight

Board certified budgets and fiscal plans." Obj. ¶ 86. This unsupported assertion assumes the truth

of their legal conclusion—that the Excise Taxes are indeed the Commonwealth's property. The

FOMB additionally maintains that while the term "allocated" is used in the English translation of

the Annotated Laws of Puerto Rico, "the Spanish version uses the word term [sic] 'asignados,'

which would be more accurately translated as 'appropriated.'" Obj. ¶ 86 n.36 (citing 13 L.P.R.A.

§ 31751(a)(1)(E)). In disputing the accuracy of the English translation of the statutes, the FOMB

has introduced another factual dispute that requires discovery and possibly expert testimony. *See*

*United States v. Gayle*, 406 F. App'x 352, 359 (11th Cir. 2010) (holding that correctness of a translation is a question of fact); *United States v. Gonzalez*, 319 F.3d 291, 296 (7th Cir. 2003) (same).

15.     Further, the Bondholders intend to show that the Commonwealth's long-standing budgetary practices defy the FOMB's interpretation of the Excise Tax Statutes, and that as a result, the statutes do not require annual appropriations for payment of revenue bonds. The contemporaneous practices of members of the executive and legislative branches of government may guide interpretation of the constitutional and statutory meaning of "appropriation" under Puerto Rico law. *See, e.g.*, *Commonwealth Ins. Co. v. Casellas*, 3 P.R. Offic. Trans. 750, 756 (1975) (turning to the "existing practice" of executive officials to shed light on the meaning of statutory provisions); *United Shoe Workers of Am., AFL-CIO v. Bedell*, 506 F.2d 174, 185 (D.C. Cir. 1974) ("Contemporaneous interpretation of a statute by those designed to oversee it commands great respect . . . ."). Public information, to the extent it is available, shows that dedicated revenue streams allocated to public corporations (such as the Excise Taxes allocated to HTA) are not subject to, and were never treated as, annual budgetary appropriations. For the Bondholders to respond fully to the assertion that the Commonwealth has never treated the Pledged Revenues as "appropriations" but rather as the public corporation's own revenues, the Bondholders need further discovery of budgetary practices. Because the information that the Commonwealth makes publicly available is spotty and incomplete, the Bondholders have made targeted requests for budgetary documentation relating to HTA and the Commonwealth, including internal agency rules, administrative manuals and official communications regarding the budgeting treatment of the Excise Taxes. Such documentation would enable an expert for the Bondholders to form an

informed and thorough opinion on Commonwealth budgetary practices as they relate to the treatment of the Excise Taxes.

16.     Thus, to refute the FOMB's factual assertions and demonstrate that the HTA bonds are in fact special revenue bonds whose repayment did not depend on annual appropriations by the Commonwealth, Bondholders need discovery concerning flow of funds and the Commonwealth's pre-PROMESA budgeting treatment of excise taxes, which will help to show that the Commonwealth has not treated the Excise Tax Statutes as appropriations statutes.

**B.     The Bondholders Need Discovery to Show that Pledged Revenues Are Held in Trust For Their Benefit**

17.     Again using HTA as an example, with similar arguments existing for PRIFA and CCDA, the FOMB raises additional fact questions in its effort to rebut the Bondholders' argument that the Commonwealth holds the Pledged Revenues in trust for the HTA Bondholders. As the FOMB argues, in the First Circuit, "no trust can exist where no 'specific restriction [is] placed upon [the debtor's] use of the supported trust funds,' and '[the debtor] was left free to use what it received for its own benefit rather than' hold it for the purported trust beneficiary." Obj. ¶ 94. This contention rests on a factual assumption that the Commonwealth has not restricted the use of the revenues in any way. Discovery is needed to test this assumption.

18.     The FOMB similarly contends that, while the Bondholders have drawn a distinction between Commonwealth cash that is available for any purpose and cash that is encumbered or otherwise restricted, "this term has no meaning in a bankruptcy case, where funds are either encumbered or unencumbered." Obj. ¶ 99. The FOMB then advances the unsupported factual assertion that "'[r]estricted funds' are not encumbered funds." *Id.* Discovery, however, may help to show that the Commonwealth understood these pledged funds to be "encumbered."

19.     Finally, given the potential commingling of the Pledged Revenues with other funds in Commonwealth accounts, the Bondholders need discovery related to the flow of funds and Commonwealth account balances to establish their right as a trust beneficiary. In *Gracia-Gracia*, the First Circuit held that to establish such a right, a "claimant must "identify the trust fund or property and, where the trust fund has been comingled with general property of the bankrupt, sufficiently trace the property or funds." *Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R.*, 939 F.3d 340, 351 (1st Cir. 2019). To trace intermixed funds, the court must apply the "lowest intermediate balance rule," through which it "follow[s] the trust fund and decree[s] restitution from an account where the amount on deposit has at all times since the commingling of the funds equaled or exceeded the amount of the trust fund." *Id.* (quoting *Conn. Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 619 (1st Cir. 1988)). The Bondholders thus need discovery to identify (1) where the Commonwealth has deposited the Excise Taxes and (2) the amounts deposited in those accounts.

## C.     Bondholders Are Entitled to Seek Parol Evidence

20.     While Movants contend that the Bond Documents relating to all three lift stay motions unambiguously support their position, it is well settled that, even where "both sides contend that the agreement is unambiguous (when read their way)," the Court nevertheless can find ambiguity. *Clinton Co. v. United States*, No. 88 C 2705, 1991 WL 95284, at *5 (N.D. Ill. May 24, 1991). If the Court does so here, it is entitled to consider evidence that bears on the ambiguity. And whether ambiguous or not, course-of-dealing evidence is admissible. *See* Restatement (Second) of Contracts § 223 (1981) ("There is no requirement that an agreement be ambiguous before evidence of a course of dealing can be shown, nor is it required that the course of dealing be consistent with the meaning the agreement would have apart from the course of dealing."). To the extent the FOMB is arguing the parties should go forward with a preliminary hearing regarding

secured status, at which it may consider only whether ambiguity exists, and only later can consider course-of-dealing or other evidence resolving that ambiguity, that is inconsistent with the FOMB's scheduling proposal for a Disclosure Statement hearing in June, before which it is seeking a resolution on these issues.

        **D.**      **Bondholders' Proposed Schedule Is Reasonable**

        21.     The seven-week extension that Bondholders are requesting is reasonable, because it allows sufficient time for any discovery disputes to be presented to the Court and ruled on, and for any discovery ordered to be completed in advance of the preliminary hearing. Given that it has become clear that there will be discovery disputes over at least certain issues (including, but not limited to, course of dealing evidence and parol evidence), a materially shorter extension would not allow sufficient time for the Court to address any disputes and for the parties to exchange any discovery that the Court orders in advance of the briefing deadlines. Bondholders' proposed schedule also preserves the same amount for the Court to review the reply briefs that is provided under the existing schedule.

        22.     This schedule also will not interfere with the schedule that the Oversight Board has proposed for the Disclosure Statement hearing (which Movants will respond to at the appropriate time). Under Bondholders' proposed schedule, the preliminary hearing would be held well in advance of the proposed Disclosure Statement hearing (specifically, 42 days in advance), allowing the parties time to address any preliminary ruling the Court may make. In addition, the schedule would allow the Court to hold a final hearing in advance of any Disclosure Statement hearing as appropriate.

**E.**     **The Government Parties Have Given No Indication that They Will Produce
Documents Critical to the Bondholders Lift-Stay Motions**

23.     The Bondholders have responded to any Government Party Requests for
clarification. During the February 5 meet-and-confer between the Bondholders and the
Government Parties, the Government Parties asked for clarification regarding HTA Request
Number 4, which seeks all "[d]ocuments, communications or Agreements . . . to which the
Commonwealth, and/or HTA is a party relating to the Pledged Revenues, the flow of funds for
HTA bonds, and/or the use of Pledged Revenues." *See* Ex. D at 3. On February 7, 2020, counsel
for the Monolines responded with a list of the specific types of documents encompassed by
Request Number 4. *See* Ex. E. The Monolines specified that the request included regulations,
internal agency rules, manuals, or official communications or memoranda regarding the budgeting
treatment of the Excise Taxes; communications between individuals at HTA responsible for
budgetary matters and their counterparts in the Commonwealth government, and other documents
and communications related to Commonwealth and HTA budgetary practices. *Id.*

24.     Despite the Bondholders' efforts to serve timely requests and to respond to the
Government Parties' request for clarification, the Government Parties have given no specific
indication of what documents they intend to produce and when they intend to do so. In their
February 9, 2020, response to the Bondholders' requests, the Government Parties at best indicated
that they have agreed to "work with AAFAF's consultants to determine what information relating
to the flow of funds, beyond what is already publicly available, they could efficiently provide given
the time constraints," and to "determine what responsive materials may exist and to consider
providing easily accessible materials." Ex. D at 2. The Government Parties stated that they
"anticipate providing a further update in the coming days." *Id.* at 3. Expediency and efficiency are

insufficient excuses for inadequate productions of documents long known by the Government Parties to be relevant on important issues.

25.     On February 11, 2020, the Government Parties informed the Bondholders that they anticipate producing an initial set of documents on February 12, and finalizing a production by the end of the week. *See* Ex. F. In their February 9 letter, however, the Government Parties emphasized that their production would be limited in scope, and outright refused to produce certain categories of documents. Their most recent correspondence gives no indication that the upcoming production will meet the Bondholders' needs. Indeed, all of the Government Parties' correspondence makes clear that they will not make a fulsome production, even on the limited categories requested.

## **CONCLUSION**

26.     In the ongoing discovery dispute, the Government Parties have refused to offer any assurance that the Bondholders will receive the crucial information they need to appropriately respond to factual issues raised in the FOMB's Oppositions before the preliminary lift-stay hearing on March 5, 2020. The current schedule also leaves the Bondholders no time to respond meaningfully to those fact issues in their Reply that is due February 18, 2020. Accordingly, the Bondholders respectfully request an order extend the Bondholders' deadline for their reply to 5:00 p.m. on April 6, 2020, and adjourning the preliminary lift-stay hearing to the April 22, 2020 omnibus hearing.

27.     In addition, while the Court is considering this Urgent Motion, the Bondholders respectfully request a bridge order extending their reply deadline by one week to 5:00 p.m. on February 25, 2020.

**Certification of Compliance with**
**Local Rule 9013-1 and Tenth Amended Case Management Procedures**

Pursuant to Local Rule 9013-1 and ¶ I.H of the *Tenth Amended Notice, Case Management and Administrative Procedures*, the undersigned counsel hereby certify that they have (a) carefully examined the matter and concluded that there is a true need for an urgent decision; (b) not created the urgency through any lack of due diligence; and (c) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court.

*[Remainder of page intentionally left blank]*

Dated: February 12, 2020
San Juan, Puerto Rico


CASELLAS ALCOVER & BURGOS P.S.C.    CADWALADER, WICKERSHAM & TAFT LLP


By: */s/ Heriberto Burgos Pérez*            By: */s/ Howard R. Hawkins, Jr.*
    Heriberto Burgos Pérez                    Howard R. Hawkins, Jr.*
    USDC-PR 204809                          Mark C. Ellenberg*
    Ricardo F. Casellas-Sánchez                William J. Natbony*
    USDC-PR 203114                          Ellen M. Halstead*
    Diana Pérez-Seda                        Thomas J. Curtin*
    USDC-PR 232014                          Casey J. Servais*
    P.O. Box 364924                         200 Liberty Street
    San Juan, PR 00936-4924                 New York, NY 10281
    Telephone: (787) 756-1400               Telephone:  (212) 504-6000
    Facsimile:  (787) 756-1401              Facsimile:  (212) 504-6666
    Email:  hburgos@cabprlaw.com            Email:  howard.hawkins@cwt.com
          rcasellas@cabprlaw.com                      mark.ellenberg@cwt.com
          dperez@cabprlaw.com                         bill.natbony@cwt.com
                                                      ellen.halstead@cwt.com
*Attorneys for Assured Guaranty Corp. and*          thomas.curtin@cwt.com
*Assured Guaranty Municipal Corp.*                  casey.servais@cwt.com

    * Admitted *pro hac vice*

    *Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

16

By: */s/ Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    USDC-PR 204809
    Ricardo F. Casellas-Sánchez
    USDC-PR 203114
    Diana Pérez-Seda
    USDC-PR 232014
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone:  (787) 756-1400
    Facsimile:  (787) 756-1401
    Email:  hburgos@cabprlaw.com
         rcasellas@cabprlaw.com
         dperez@cabprlaw.com

*Attorneys for Assured Guaranty Corp.
and Assured Guaranty Municipal Corp.*

By: */s/ Mark C. Ellenberg*
    Howard R. Hawkins, Jr.*
    Mark C. Ellenberg*
    William J. Natbony*
    Ellen M. Halstead*
    Thomas J. Curtin*
    Casey J. Servais*
    200 Liberty Street
    New York, NY 10281
    Telephone:  (212) 504-6000
    Facsimile:  (212) 504-6666
    Email:  howard.hawkins@cwt.com
         mark.ellenberg@cwt.com
         bill.natbony@cwt.com
         ellen.halstead@cwt.com
         thomas.curtin@cwt.com
         casey.servais@cwt.com

* Admitted *pro hac vice*

*Attorneys for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.*

ADSUAR MUNIZ GOYCO SEDA &
PEREZ-OCHOA PSC

By:/s/ *Eric Perez-Ochoa*
    Eric Pérez-Ochoa
    USDC-PR No. 206,314
    E-mail:    epo@amgprlaw.com


By:/s/*Luis A. Oliver-Fraticelli*
    Luis A. Oliver-Fraticelli
    USDC-PR NO. 209,204
    E-mail:    loliver@amgprlaw.com


By:/s/*Lourdes Arroyo-Portela*
    Lourdes Arroyo-Portela
    USDC-PR NO. 226,501
    E-mail:    larroyo@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Tel.:    (787) 756-9000
    Fax:    (787) 756-9010

*Attorneys for National Public Finance
Guarantee Corp.*

WEIL, GOTSHAL & MANGES LLP

By:/s/ *Robert Berezin*
    Jonathan Polkes*
    Gregory Silbert*
    Robert Berezin**
Kelly Diblasi*
Gabriel A. Morgan*
767 Fifth Avenue
    New York, New York 10153
    Tel.:    (212) 310-8000
    Fax:    (212) 310-8007
    Email:    jonathan.polkes@weil.com
        gregory.silbert@weil.com
        robert.berezin@weil.com
        kelly.diblasi@weil.com
        gabriel.morgan@weil.com

* admitted *pro hac vice*
***pro hac vice* application forthcoming

*Attorneys for National Public Finance
Guarantee Corp.*

FERRAIUOLI LLC

MILBANK LLP


By:/s/ *Roberto Cámara-Fuertes*
    ROBERTO CÁMARA-FUERTES
    USDC-PR NO. 219,002
    E-mail:    rcamara@ferraiuoli.com


By:/s/ *Sonia Colón*
    SONIA COLÓN
    USDC-PR NO. 213809
    E-mail:    scolon@ferraiuoli.com

    221 Ponce de Leon Ave., 5th Floor
    San Juan, PR 00917
    Tel.:    (787) 766-7000
    Fax:    (787) 766-7001

*Counsel for Ambac Assurance Corporation*

By:/s/ *Atara Miller*
    DENNIS F. DUNNE*
    ATARA MILLER*
    GRANT R. MAINLAND*
    JOHN J. HUGHES*
    55 Hudson Yards
    New York, New York 10001
    Tel.:    (212) 530-5000
    Fax:    (212) 530-5219
    Email:    ddunne@milbank.com
        amiller@milbank.com
        gmainland@milbank.com
        jhughes2@milbank.com

*admitted pro hac vice

*Counsel for Ambac Assurance Corporation*

ARENT FOX LLP


By: /s/ David L. Dubrow
    DAVID L. DUBROW*
    MARK A. ANGELOV*
    1301 Avenue of the Americas
    New York, New York 10019
    Tel.:      (212) 484-3900
    Fax:      (212) 484-3990
    Email:    david.dubrow@arentfox.com
              mark.angelov@arentfox.com


By: /s/ Randall A. Brater
    RANDALL A. BRATER*
    1717 K Street, NW
    Washington, DC 20006
    Tel.:      (202) 857-6000
    Fax:      (202) 857-6395
    Email:    randall.brater@arentfox.com

           *admitted pro hac vice

           *Counsel for Ambac Assurance Corporation*

20

REXACH & PICÓ, CSP

By: /s/ *María E. Picó*
    María E. Picó
    USDC-PR 123214
    802 Ave. Fernández Juncos
    San Juan PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    E-mail: mpico@rexachpico.com


*Attorneys for Financial Guaranty Insurance
Company*

BUTLER SNOW LLP

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (pro hac vice)
    5430 LBJ Freeway, Suite 1200,
    Dallas, TX 75240
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    E-mail: martin.sosland@butlersnow.com

    Jason W. Callen (pro hac vice)
    150 3rd Avenue, South, Suite 1600
    Nashville, TN 37201
    Telephone: (615) 651-6774
    Facsimile: (615) 651-6701
    E-mail: jason.callen@butlersnow.com

*Attorneys for Financial Guaranty
Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 12, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Puerto Rico by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

At New York, New York, on February 12, 2020.

By: _/s/ Robert Berezin_
Robert Berezin*
* Admitted _pro hac vice_

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>                    Debtor.[3] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),<br><br>                    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

## [PROPOSED] ORDER GRANTING URGENT MOTION
## TO ADJOURN HEARING ON MOTIONS FOR RELIEF FROM THE AUTOMATIC
## STAY AND EXTEND DEADLINE FOR REPLIES IN SUPPORT OF MOTION FOR
## RELIEF FROM THE AUTOMATIC STAY

---

[3] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THIS MATTER is before the Court on an Urgent Motion filed by Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation (collectively, the "Bondholders") to adjourn hearing on the Motions for Relief from the Automatic Stay and extend the deadline for replies in support of the Motions for Relief from the Automatic Stay.

UPON CONSIDERATION of the Urgent Motion, the relevant portions of the docket, and being otherwise fully advised in the matter it is hereby **ORDERED** that:

1.  The Urgent Motion is **GRANTED** as set forth herein.

2.  The Preliminary Hearing is adjourned to the April 22, 2020 Omnibus Hearing.

3.  The deadline for Bondholders' to file replies in support of their Motions for Relief from the Automatic Stay is extended to 5:00 p.m. on April 6, 2020.

Dated: _____, 2020

                          SO ORDERED:


                          _____
                          Honorable Laura Taylor Swain
                          United States District Court Judge

**EXHIBIT B**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>        as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>        Debtor.[4] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>        as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),<br><br>        Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

## [ALTERNATE PROPOSED] ORDER GRANTING URGENT MOTION TO ADJOURN HEARING ON MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY AND EXTEND DEADLINE FOR REPLIES IN SUPPORT OF MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY

---

[4] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THIS MATTER is before the Court on an Urgent Motion filed by Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation (collectively, the "Bondholders") to adjourn hearing on the Motions for Relief from the Automatic Stay and extend the deadline for replies in support of the Motions for Relief from the Automatic Stay.

UPON CONSIDERATION of the Urgent Motion, the relevant portions of the docket, and being otherwise fully advised in the matter it is hereby **ORDERED** that:

1.      The Urgent Motion is **GRANTED IN PART** as set forth herein.

2.      The deadline for Bondholders' to file replies in support of their Motions for Relief is extended by one week to 5:00 p.m. on February 25, 2020 pending the Court's decision on Bondholders' request to adjourn the hearing to April 22, 2020 and extend the reply deadline to April 6, 2020.

Dated: _____, 2020

SO ORDERED:

_____
Honorable Laura Taylor Swain
United States District Court Judge