# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, *et al.* <br><br> Debtors.[1] | PROMESA Title III <br><br> Case No. 17-BK-3283-LTS <br><br> (Jointly Administered) |
| In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, <br><br> Debtor. | Case No. 17-BK-3567-LTS |
| ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AMBAC ASSURANCE CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORP., AND FINANCIAL GUARANTEE INSURANCE COMPANY, <br><br> Movants, <br><br> v. <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, <br><br> Respondent. | |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**OPPOSITION OF THE OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO TO URGENT MOTION OF ASSURED GUARANTY CORP.,
ASSURED GUARANTY MUNICIPAL CORP., AMBAC ASSURANCE CORPORATION,
NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, AND FINANCIAL
GUARANTEE INSURANCE COMPANY TO ADJOURN HEARING ON MOTIONS
FOR RELIEF FROM AUTOMATIC STAY AND EXTEND DEADLINE FOR REPLIES
<u>IN SUPPORT OF MOTIONS FOR RELIEF FROM AUTOMATIC STAY</u>**

## <u>TABLE OF CONTENTS</u>

<strong><u>Page</u></strong>

INTRODUCTION ................................................................................................................... 1

RELEVANT BACKGROUND ............................................................................................... 6

ARGUMENT .......................................................................................................................... 7

I.   WHETHER THE RELEVANT STATUTES ARE APPROPRIATION STATUTES AND
     WHETHER THAT MATTERS ARE PURE LEGAL QUESTIONS. ................................ 7

II.  WHETHER CERTAIN MONIES ARE HELD IN TRUST IS A PURE QUESTION OF
     LAW. ....................................................................................................................... 11

III. CASH MANAGEMENT DETAILS ARE IRRELEVANT AND UNNECESSARY TO
     DETERMINATION OF SECURED STATUS AND STANDING. .................................. 13

IV.  MOVANTS HAVE NO BASIS TO SEEK DISCOVERY RELATING TO THE CCDA
     TRANSFER ACCOUNT. ............................................................................................ 14

V.   PAROL EVIDENCE HAS NO PLACE HERE. ................................................................ 14

VI.  DISCOVERY AND A SEVEN-WEEK EXTENSION IS PREJUDICE. ........................... 15

CONCLUSION ....................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alison H. v. Byard,*
    163 F.3d 2 (1st Cir. 1998)................................................................................14

*Assured Guaranty Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin.*
    *Oversight & Mgmt. Bd. for P.R.),*
    919 F.3d 121 (1st Cir. 2019)...............................................................................8

*Auto. Leasing Specialists, L.L.C. v. Little,*
    392 B.R. 222 (W.D. La. 2008)..............................................................................2

*Commonwealth Ins. Co. v. Casellas,*
    3 P.R. Offic. Trans. 750 (1975) ...........................................................................9

*Duckworth v. Pratt & Whitney, Inc.,*
    152 F.3d 1 (1st Cir. 1998).................................................................................14

*Fleet Nat'l Bank v. H&D Entm't,*
    96 F.3d 532 (1st Cir. 1996)...............................................................................15

*Fletcher v. Peck,*
    10 U.S. 87 (1810)..............................................................................................10

*Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R.,*
    939 F.3d 340 (1st Cir. 2019).............................................................................12

*Massachusetts Fin. Servs., Inc. v. Sec. Inv'r Prot. Corp.,*
    545 F.2d 754 (1st Cir. 1976).............................................................................11

*Paloian v. LaSalle Bank Nat'l Ass'n (In re Doctors Hosp. of Hyde Park, Inc.),*
    474 B.R. 576 (Bankr. N.D. Ill. 2012) ...............................................................12

*Puerto Rico Tel. Co. v. Advanced Cellular Sys., Inc. (In re Advanced Cellular*
    *Sys., Inc.),*
    483 F.3d 7 (1st Cir. 2007).................................................................................14

*Rosselló Nevares v. Fin. Oversight & Mgmt. (In re Fin. Oversight & Mgmt. Bd.),*
    330 F. Supp. 3d 685 (D.P.R. 2018), *aff'd, Vázquez-Garced v. Fin. Oversight*
    *& Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.),* 945 F.3d 3
    (1st Cir. 2019)....................................................................................................9

*Scotiabank de P.R. v. Burgos (In re Plaza Resort at Palmas, Inc.),*
    741 F.3d 269 (1st Cir. 2014)...............................................................................8

*United Shoe Workers of Am., AFL-CIO v. Bedell,*
   506 F.2d 174 (D.C. Cir. 1974) ..................................................................9, 12

*Vázquez-Garced v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight &*
   *Mgmt. Bd. for P.R.),*
   945 F.3d 3 (1st Cir. 2019) ...........................................................................9

*Weiss v. DHL Express, Inc.,*
   718 F.3d 39 (1st Cir. 2013) ........................................................................14

**STATUTES**

3 L.P.R.A. § 1914 .............................................................................................8, 10, 13

13 L.P.R.A. § 2271v ..........................................................................................8, 10

**OTHER AUTHORITIES**

P.R. Const. art. VI, § 8 .....................................................................................4, 5, 10

v

**To the Honorable United States District Judge Laura Taylor Swain:**

The Commonwealth of Puerto Rico (the "<u>Commonwealth</u>" or the "<u>Debtor</u>") by and through the Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), as the Debtors' sole representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("<u>PROMESA</u>"),[2] respectfully submits this opposition (the "<u>Opposition</u>") to the *Urgent Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company to Adjourn Hearing on Motions for Relief from the Automatic Stay and Extend Deadline for Replies in Support of Motions for Relief from the Automatic Stay* [ECF No. 10841] (the "<u>Motion</u>") filed by Assured Guaranty Corp., Assured Guaranty Municipal Corp. (together with Assured Guaranty Corp., "<u>Assured</u>"), Ambac Assurance Corporation ("<u>Ambac</u>"), National Public Finance Guarantee Corporation ("<u>National</u>"), and the Financial Guarantee Insurance Company ("<u>FGIC</u>," and together with Assured, Ambac, and National, "<u>Movants</u>").[3]  For its Opposition, the Commonwealth respectfully states as follows:

## <u>INTRODUCTION</u>

1.      Motions for relief from the automatic stay are to protect property interests the movants can prove.  They are not vehicles for movants to explore whether they have property interests in the first place.  Moreover, when the governing documents for the bonds do not grant security interests or other property interests in Commonwealth property or Tourism Company property, as they do not here, the internal cash management techniques used by the Commonwealth and Tourism Company to channel funds to the different bond issuers cannot, as a matter of law, grant any property interests

---

[2] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3] Unless otherwise noted, capitalized terms are the same as defined in the Oversight Board's lift stay prior briefs. [*E.g.*, ECF Nos. 10611, 10615, 10618].

not granted by the documents.  If they could, then every time a person deploys his or her bank account's 'auto-pay' feature to pay their monthly electric bill, the electric utility would be deemed to have a security interest in the person's bank account.  That is nonsense.

2.      In their lift stay motions, Movants assert various forms of alleged property interests – a security interest, statutory liens, and trusts – allegedly arising from the statutes and bond documents attached to their motions.  None of this requires fact discovery.  Whether a statute or agreement creates an interest entitled to adequate protection is a purely legal question.[4]  Whether a party filing a lift stay motion is a creditor of a creditor of the debtor (and thus lacks standing to seek stay relief) is also a purely legal question.  Yet, having filed three lift stay motions predicated on the assertion they are secured claimholders or owners with standing, Movants now seek discovery to answer the question they were required to answer in their opening briefs: whether they have a property interest in the first place.  This is improper.

3.      Likewise, Movants contend in the alternative that the Commonwealth has no property interest, or only a naked legal interest, in the Rum Taxes the United States statute requires to be paid to the Commonwealth, and the Commonwealth statute provides will be appropriated to PRIFA unless retained.  Either the United States statute grants the Commonwealth ownership of the funds or not.  Either the Commonwealth statute refers to funds of the Commonwealth or not.  The Commonwealth's internal instructions to transfer the funds to the credit of PRIFA no more create security interests or ownership in the Commonwealth's funds than the auto-pay instruction creates a security interest in the consumer's bank account.

4.      Movants' bid to delay resolution of threshold issues on their own motions is not the behavior of aggrieved secured claimholders seeking to vindicate their rights.  Having filed their

---

[4] *E.g.*, *Auto. Leasing Specialists, L.L.C. v. Little*, 392 B.R. 222, 228 (W.D. La. 2008) ("Whether the Lease Agreement creates a security interest—is a purely legal question.").

motions and asserted the time clock in Bankruptcy Code section 362(e) is ticking, Movants cannot now slam the brakes to see if they can find the protectable interest they claimed they had.[5]   The statutes determine whether the Commonwealth owns the already collected cash and future revenue streams at issue, and the statutes, bond resolutions, and contracts determine whether there is a security interest or other property interest, and whether a movant is a creditor of a creditor of a debtor.   Here, where there is no Commonwealth or Tourism Company agreement granting security interests or other property interests, and Movants have not contended otherwise, it is axiomatic that extrinsic evidence is inappropriate because the statutes govern.

5.   This Court implicitly recognized this in June 2019 when it bifurcated the issues in the original PRIFA lift stay motion to focus first on "the legal issues of standing and secured status only." [ECF No. 7420].   Because those issues are governed by statute and contract, the only relevant "[f]actual submissions," the Court held, would be "legal documents (statutes, agreements and the like)…."   *Id*.   Just as those issues were ready for argument as to PRIFA on July 24, 2019, they will be ready as to all three lift stay motions for the March 5, 2020 hearing, which is likewise limited to "whether the movants have standing to sue and security or other property interests in the relevant revenues." [ECF No. 10595].   No discovery is needed.

6.   To be sure, during the hearing on January 29, 2020, Movants argued they needed discovery.   The Court did not address the merits of that argument.   Rather, it directed the parties to meet and confer, which they did.   On February 5, 2020, Movants issued objectively unreasonable informal discovery requests seeking such things as all "[d]ocuments, communications, or Agreements … relating to the Pledged Revenues, the flow of funds. ... and/or the use of Pledged Revenues."   [ECF

---

[5] Indeed, the desire to delay is completely at odds with the notion Movants have valuable property interests in need of protection and strongly suggests Movants are motivated by different considerations that run contrary to the Mediation Team's clear recommendation that the gating issues of standing and secured status be determined expeditiously.   *Amended Report and Recommendation of the Mediation Team*, filed February 10, 2020 [ECF No. 10756] ("Amended Report"), at 12 n.14.

No. 10841-1].  While the Government Parties[6] maintained all the discovery requests were irrelevant to the issues to be heard on March 5th, AAFAF, as fiscal agent for the Commonwealth, CCDA, HTA, and PRIFA, nonetheless agreed to search for a core set of documents and produce them as quickly as practical.  That production began yesterday and is expected to conclude in a few days.  But the Government Parties' attempt to avoid needless motion practice by agreeing to provide documents does not mean any of the requested discovery is relevant to the issues of secured status or standing, nor does it entitle Movants to delay.

7.      This is easily demonstrated by reference to what Movants say are the "two crucial issues of fact that necessitate discovery."  (Motion ¶ 11).  First, Movants argue they "need discovery to rebut the FOMB's assertion that the Excise Tax Statutes are appropriations statutes."  *Id.*  But, as is obvious, what the statutes are, how they function, and what they mean, is determined ***from the language of the statutes themselves***.  Discovery about the government's budgeting process or what government employees may have thought about the meaning of the statutes will tell the Court nothing of relevance.  *See Mem. Order Granting Respondents' Urgent Mot. In Limine to Exclude Evidence and Argument Regarding an Alleged April 27, 2016 Meeting with Movants' Representatives*, No. 17-BK-3566, ECF No. 544 (D.P.R. June 5, 2019) (the "ERS Order").

8.      Movants' argument that they require discovery to determine whether the revenues they claim are "appropriations" exemplifies how disingenuous their bid for delay is.  Movants admit that each of the revenue streams they claim relative to PRIFA, HTA, and CCDA are expressly made subject to retention by the Puerto Rico Constitution.  The governing documents themselves make that clear.  The section of the Puerto Rico Constitution referred to by the governing documents that creates

---

[6] "Government Parties" refers to the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and the Oversight Board.

retention (art. VI, § 8) expressly refers to the uses of the revenues as "appropriations."[7]  Indeed, generically, disbursements of funds from the year's revenues are appropriations, as a matter of vocabulary.  But, perhaps even more importantly, it doesn't matter to the outcome of the motions to be heard March 5, 2020.  Whether the revenue streams are called "appropriations," or "statutory instructions to pay," or "potato chips," there is no document in which the Commonwealth or the Tourism Company grants Movants a security interest in them, and the requirement to send the revenue streams to PRIFA, HTA, and CCDA is inconsistent with the express priorities in Title III and the power of the Oversight Board in Title II to determine what to do with the revenues.  Thus, the statutes are preempted.  No discovery can change those basic facts.

9.       Second, Movants claim "they need information on the flow of funds … to counter the FOMB's assertion that the Bondholders lack a property interest in the Pledged Revenues."  (Motion ¶ 11).  As explained above, the Commonwealth's cash management techniques do not grant Movants anything, let alone property interests.  Moreover, given that the Uniform Commercial Code bars perfected security interests in cash without deposit account control agreements ("DACAs"), and Movants do not claim they have DACAs, their quest is dead on arrival.  Otherwise, millions of consumers utilizing auto-pay would be granting security interests in their bank accounts.  Protectable property interests are created by statute or contract.  That is what the Government Parties argued in opposition to the lift stay motions.  The Government Parties relied on legal documents – the statutes and agreements Movants contend create their liens or security interests.  Movants now mischaracterize this legal analysis as "factual assertions."  Nowhere did the Government Parties rely on or cite to the kind of factual documentation Movants now seek.  How funds move from a debtor

---

[7] Article VI, Section 8 of the Puerto Rico Constitution provides: "In case the available revenues including surplus for any fiscal year are insufficient to meet **the appropriations made for that year**, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."  (emphasis added).

to a creditor cannot create an ownership or security interest, nor can information about the flow of funds alter the meaning of legal documents that no party contends are ambiguous.

10.     Through the Motion, Movants once again try to disrupt the structure the Court has carefully established for adjudication of the lift stay motions.  They also seek to impose needless cost and, contrary to the clear recommendation of the Mediation Team in the Amended Report, seek to delay resolution of the critical gating issues of standing and the existence and extent of any property interest they claim to have.  Movants provide no valid reason to abruptly change course at this late stage, and each of their asserted grounds for delay do not hold up.

## RELEVANT BACKGROUND

11.     As noted, the threshold, purely legal questions of secured status and standing have been bifurcated since the original lift stay motion regarding PRIFA was set and ready for hearing on July 24, 2019.  [ECF No. 7420].  In its latest order on the revenue bond lift stay motions, the Court maintained that bifurcation.  The preliminary hearing on March 5, 2020, and the briefing leading up to it, is limited solely to the questions of "standing to sue and security or other property interests in the relevant revenues."  [ECF No. 10595].

12.     When, at the January 29, 2020 hearing, Movants expressed a desire for discovery, the Court directed the parties to meet and confer.  On February 5, 2020, Movants sent the Government Parties 25 "informal" document requests.  The parties held a telephonic meet and confer later that same day during which the Government Parties inquired as to the relevance of the requested documents to standing or secured status.  Despite Movants' inability to articulate a basis for relevance, AAFAF offered to search for and produce certain readily accessible documents regarding, among other things, account balances and the flow of funds.  The Government Parties explained that many of the requests were so broad as to be incomprehensible, and asked for clarification.  [*See* ECF No. 10841-2].  Rather than limit or narrow their requests, Movants responded with an *expanded* set of

6

requests on February 7, 2020. [ECF No. 10841-3].

13.    On February 10, 2020, Movants advised they planned to seek, on an urgent motion basis, a seven-week adjournment of the March 5th hearing and their deadline for reply briefs. [ECF No. 10841-4]. The next day, the Government Parties notified Movants they anticipated producing an initial set of documents on February 12th and the remainder by the end of the week. *Id.*[8] Again in an effort to avoid motion practice, the Government Parties suggested that if anything was produced that Movants wanted to bring to the Court's attention after their replies were filed, they could make a supplemental filing and the Government Parties could thereafter file a short sur-reply. *Id.* Movants did not respond to that proposal, instead opting to file their Motion.

## **ARGUMENT**

### I.    WHETHER THE RELEVANT STATUTES ARE APPROPRIATION STATUTES AND WHETHER THAT MATTERS ARE PURE LEGAL QUESTIONS.

14.    Movants claim they need discovery to see if the relevant statutes are actually appropriation statutes. (Motion ¶ 11). In paragraph 8 above, we explain why that is wrong. Movants add three grounds for discovery on this point: (i) the Oversight Board's demonstrative charts illustrating the flow of funds; (ii) the Spanish translation of "asignados" in the HTA statute; and (iii) Movants' speculation that the Commonwealth did not "treat" the relevant revenue streams as appropriations. (Motion ¶¶ 13-15).[9] Movants' asserted grounds for discovery are wholly divorced from the issues of standing and secured interest. We address them below, albeit as explained above, it does not matter in the first place whether the statutes conditionally providing for each year's

---

[8] On February 12, 2020, AAFAF made an initial production of documents, which included tourism bank account information and balances, HTA toll revenues, HTA retained revenues including Rum and Excise Tax revenues, reports HTA submitted to the Puerto Rico Legislature, data on the flow of funds for Rum Taxes as well as collection and deposit information, and reports PRIFA submitted to the Puerto Rico Legislature and others.

[9] In paragraph 15 of their Motion, Movants claim a need to "respond fully to the assertion that the Commonwealth has never treated the Pledged Revenues as 'appropriations,' but rather as the public corporation's own revenues." Movants do not cite the origin of this "assertion." It is not one the Oversight Board has made, so Movants do not need to respond to it. Again, the Oversight Board's arguments are based on **what the statutes say**.

7

revenues to be transferred are labelled "appropriations" or "potato chips."

15.     ***First***, Movants seek "budgetary documentation" for use by an "expert."  (Motion ¶ 15).  Budgetary information and expert testimony, however, have no bearing on the legal questions of secured status and standing.  The statutes govern.  As such, their construction begins and ends with the statutory text.  *Scotiabank de P.R. v. Burgos (In re Plaza Resort at Palmas, Inc.)*, 741 F.3d 269, 274 (1st Cir. 2014) ("Statutory construction in Puerto Rico begins with the text of the underlying statute, and ends there as well if the text is unambiguous."); *Assured Guaranty Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 919 F.3d 121, 128 (1st Cir. 2019) ("It is elementary that in resolving a dispute over the meaning of a statute we begin with the language of the statute itself.") (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985)).  As shown above, the Puerto Rico Constitution refers to them as appropriations.

16.     Movants do not argue ambiguity, but instead say "[p]ublic information … shows that dedicated revenue streams allocated to public corporations … were never treated as, annual budgetary appropriations."  (Motion ¶ 15).  They cite no such public information, and say discovery is needed for an unidentified "expert … to form [an] opinion on Commonwealth budgetary practices…."  *Id.* Again, they fail to explain why the Commonwealth's budgetary practices bear on the meaning of any applicable statute, or why experts or expert discovery is necessary, especially when the Puerto Rico Constitution and some of the statutes themselves refer to the revenues being appropriated.[10]

17.     Statutes are not interpreted through expert testimony about budgeting practices, and Movants' cases do not hold otherwise.  Both cases Movants cite merely reflect the usual deference courts give to administrative agencies charged with interpreting statutes.  (*See* Motion ¶ 15).  *Casellas* cited to official opinions of the Secretary of the Treasury, and *Bedell* cited to published opinions of

---

[10] *See* 3 L.P.R.A. § 1914 ("amounts herein appropriated"); 13 L.P.R.A. § 2271v ("The funds appropriated….").

the Tariff Commission – "the agency set up by Congress as its expert overseer of the Act" – on petitions for "adjustment assistance" under the statute at issue there.  *Commonwealth Ins. Co. v. Casellas*, 3 P.R. Offic. Trans. 750, 756 (1975); *United Shoe Workers of Am., AFL-CIO v. Bedell*, 506 F.2d 174, 184 (D.C. Cir. 1974).  That is not what Movants seek to do here.  None of the discovery Movants seek involves anything remotely like administrative decisions by an expert agency about the meaning of a statute in response to petitions for relief.  Indeed, Movants do not even suggest any Commonwealth agency has ever been asked to rule on a dispute involving the revenues at issue on the lift stay motions.

18.     ***Second***, plucking an argument from footnote 36 of the Oversight Board's HTA opposition brief, Movants say discovery "and possibly expert testimony" is required to respond to the Oversight Board's argument that the Spanish word "asignados" in the statute is better interpreted as "appropriated" than "allocated."  (Motion ¶ 14).  None of Movants' discovery requests, however, relate to translation issues.  Nor do Movants explain how or why it would matter to their security interest or standing if the statute "allocates" funds instead of "appropriating" them.  It does not.  Presumably, Movants are desperately attempting to avoid application of this Court's affirmed decision[11] ruling PROMESA preempts pre-PROMESA appropriations.  But, this Court referred to all "expenditures" of the year's revenues as being subject to a budget.[12]  The label "appropriations" is unnecessary to fit within the rationale of the Court's decision.

19.     ***Third***, the Oversight Board submitted demonstrative charts with its opposition briefs to illustrate its argument about the flow of funds as specified in the relevant statutes and contracts

---

[11] *Vázquez-Garced v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 945 F.3d 3 (1st Cir. 2019).

[12] *Rosselló Nevares v. Fin. Oversight & Mgmt. (In re Fin. Oversight & Mgmt. Bd.)*, 330 F. Supp. 3d 685, 704 (D.P.R. 2018), *aff'd, Vázquez-Garced v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 945 F.3d 3 (1st Cir. 2019).

Movants cited in their moving papers.  If Movants disagree with the argument, they will certainly say so in their replies.  The key fact that Movants overlook is that the Oversight Board did not create the charts based on document discovery unavailable to Movants.  It created the charts based on the credit documents and statutes Movants cited from the outset in their stay relief motions.  The charts are simply the Oversight Board's pictorial understanding of the documents and statutes supplied by Movants.  Movants say they need discovery about them, but if they wish to examine the basis for the demonstratives, they need only look to the authorities and credit agreements they cited.  Notably, Movants do not even claim the demonstrative charts inaccurately depict the flow of funds per the legal documents, nor do they explain how fact discovery (as opposed to just applying the plain text of the statutes and contracts) would show the depicted flow of funds to be inaccurate.

20.    At the end of the day, the semantics simply do not matter.  It makes no difference whether the statutes are appropriations or allocations or obligations to pay that somehow are not appropriations or allocations.  Substance governs over form.  The Commonwealth's preemption arguments will apply to the statutes all the same.  Preemption is based not on how a statute is described or what it is called, but on whether it is a prepetition obligation to pay.  Any prepetition obligations to pay are inconsistent with PROMESA's priorities in Title III and PROMESA's grant to the Oversight Board of power over uses of the Debtor's revenues in Title II.  Movants do not explain how the nomenclature for the relevant statutes would bear on their standing or secured status.

21.    The Oversight Board's interpretation of the statutes as prepetition obligations or authorizations to pay (whether labelled appropriations or otherwise) is based on the statutes

10

themselves,[13] the Constitution,[14] and general legal principles.[15]   Fact discovery is not needed to

address any of this.

## II.   WHETHER CERTAIN MONIES ARE HELD IN TRUST IS A PURE QUESTION OF LAW.

22.   Movants also claim they need fact discovery to see if they might be beneficiaries of a

trust.  But it was Movants who evidently felt they had sufficient basis in the statutes to claim the

existence of a trust in their moving papers.  *E.g.*, HTA Motion at 24 [ECF No. 10102].  This too is a

matter of statutory application.  Either the statutes create a trust or they do not.  None of them do.

23.   Movants try to get around this in two ways: by claiming (i) the issue of whether funds

are "encumbered" or "restricted" is a factual question; and (ii) a need to trace the flow of funds.

(Motion ¶¶ 17-19).  This is actually a restatement of Movants' erroneous premise that the Debtor's

internal cash management techniques can grant Movants property interests.   When the

Commonwealth 'restricts' funds for a given purpose, that is to enable the Commonwealth to carry out

its prepetition statutes.  It does not grant rights to Movants.  Encumbrance is a legal question, and

tracing is irrelevant to whether a trust exists in the first place.

24.   Movants claim the statutes create a trust to their benefit.  In response, the Oversight

Board argued the statutes cannot create a trust because, among numerous other reasons, they do not

actually restrict use of the funds.  *E.g.*, HTA Opp. at 42 [ECF No. 10618]; *see also* PRIFA Opp. at

50-51 [ECF No. 10611]; CCDA Opp. at 48-49 [ECF No. 10615].  This is straightforward textual

analysis of a statute.  It is not a "factual assertion."  Again, neither side even claims any statute is

---

[13] At least two of the relevant statutes explicitly refer to themselves as appropriations.  *See* 3 L.P.R.A. § 1914 ("amounts herein appropriated"); 13 L.P.R.A. § 2271v ("The funds appropriated….").

[14] The Puerto Rico Constitution treats obligations to pay debt as appropriations, noting "appropriations" are to be used towards paying Commonwealth debt if available revenues are insufficient in any given year.  P.R. Const. art. VI, § 8.

[15] For example, it is fundamental that a legislature lacks power to bind future legislatures.  *E.g.*, *Fletcher v. Peck*, 10 U.S. 87, 135 (1810) (Marshall, J.) ("[O]ne legislature cannot abridge the powers of a succeeding legislature. The correctness of this principle, so far as respects general legislation, can never be controverted.").  This principle is not restricted to appropriations.

ambiguous. *See Massachusetts Fin. Servs., Inc. v. Sec. Inv'r Prot. Corp.*, 545 F.2d 754, 757 (1st Cir. 1976) (applying the "well-established rule that a court 'will resort to the legislative history and other aids of statutory construction only when the literal words of the statute create ambiguity or lead to an unreasonable interpretation'").

25.     Despite the well-established doctrine prohibiting extrinsic evidence in interpreting statutes, Movants seek discovery into whether "the Commonwealth understood these … funds to be 'encumbered.'"  (Motion ¶ 18).  This Court has already rejected such requests for "state of mind" discovery.  Specifically, in addressing the ERS lift stay motions, this Court held that evidence regarding the Governments' intent or understanding has no real relevance to the question of whether bondholders are secured.  *See* ERS Order at 5 ("evidence of intent to circumvent rights in collateral is, at best, of marginal relevance to the central question to be considered at the Stay Relief Hearing: whether bondholders have any security interest in employer payments under the PayGo system"); *see also, e.g.*, *Paloian v. LaSalle Bank Nat'l Ass'n (In re Doctors Hosp. of Hyde Park, Inc.)*, 474 B.R. 576 (Bankr. N.D. Ill. 2012) (where, as here, "there is an otherwise valid security agreement, extraneous documents and indications of the parties' intention … are irrelevant to a determination of the extent of the security interest created by a formal security agreement").  Moreover, in the same paragraph Movants cite to in *Bedell*, the court noted the statutory language trumped any intent that could be demonstrated by the parties.  *Bedell*, 506 F.2d at 185 (noting that language in the statute warrants the rejection of other constructions of the statute).

26.     Movants also claim a need to trace any commingled funds to apply the "lowest intermediate balance rule."  (Motion ¶ 19) (citing *Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R.*, 939 F.3d 340 (1st Cir. 2019)).  But this puts the cart far before the horse, particularly in this bifurcated proceeding.  Under *Gracia-Gracia*, a movant need trace funds only *after* "first … prov[ing] the existence and legal source of a trust relationship[.]"  *Gracia-Gracia*, 939 F.3d at 350-51.  That is

precisely the legal question this Court set for determination on March 5 hearing. Only if Movants are first able to prove a trust exists, and only if trust funds are commingled, would there be any need for tracing. Even then, tracing only goes to the amount of money Movants might have an interest in and whether it is adequately protected, ***not whether they have any interest entitled to adequate protection in the first place***.

### III.   CASH MANAGEMENT DETAILS ARE IRRELEVANT AND UNNECESSARY TO DETERMINATION OF SECURED STATUS AND STANDING.

27.    Movants reference "Disbursement Detail" – what they called "transmittal instructions" in their motion to amend their PRIFA moving brief – as a basis for discovery. (Motion ¶ 5). As explained above, cash management techniques do not grant security interests any more than consumers' use of auto-pay grants utilities security interests in the customers' bank accounts. The Disbursement Detail accompanies Rum Taxes deposited into the Commonwealth's Treasury with a notation, Movants claim, "for deposit to the credit of PRIFA" pursuant to the lockbox agreement to which Movants and the bondholders are not parties. *Id.* In their replies, Movants can explain why the Commonwealth's instructions to get money to PRIFA grants them any rights. We submit they do not. But, Movants' requests to discovery about Disbursement Detail is a frolic having no utility for resolving the Court's two issues.

28.    That the Commonwealth had a lockbox agreement specifying certain rum excise taxes were to be deposited to the credit of PRIFA is unsurprising and of no moment. (Motion ¶ 5). Movants have the agreement and attached it to their lift stay motion. Notably, the agreement notes money was to be deposited for the benefit of PRIFA, not PRIFA's bondholders. Indeed, Movants are not party to or beneficiaries of any kind under the lockbox agreement. It was just part of the Commonwealth's money management mechanism designed to, while it was solvent, satisfy the statutory instruction to transfer certain monies to PRIFA. *See* 3 L.P.R.A. § 1914. A *system* implementing an appropriation does not create a security interest. Legal documents do.

13

29.     Disbursement details and transmittal instructions accompanying transfers of money do not alter the underlying statutes and contracts.  Movants misrepresent the Oversight Board's argument as to these cash management details as a "factual assertion."  To the contrary, the Oversight Board's position is a legal one: wiring instructions are not necessary or even relevant to the application of the relevant statutes and contracts.

## IV.    MOVANTS HAVE NO BASIS TO SEEK DISCOVERY RELATING TO THE CCDA TRANSFER ACCOUNT.

30.     As to CCDA, Movants argue because there is no dispute Movants have collateral in the Transfer Account, they are entitled to discovery about it.  (Motion ¶ 6).  But the CCDA lift stay motion is about Movants' claim to moneys *outside* of the Transfer Account.  There is no reason to delay decision on disputed legal issues so that Movants can take discovery about an undisputed one.

## V.    PAROL EVIDENCE HAS NO PLACE HERE.

31.     Movants argue the discovery they seek constitutes parol evidence.  (Motion ¶ 20).  As they concede, however, neither side contends there is any ambiguity in the bond documents.  *Id.*  That should end the inquiry.  *See, e.g.*, *Puerto Rico Tel. Co. v. Advanced Cellular Sys., Inc. (In re Advanced Cellular Sys., Inc.)*, 483 F.3d 7, 12 (1st Cir. 2007) ("Under Puerto Rico law, … a court may not consider extrinsic evidence at all, if it finds that the terms of an agreement are clear.") (citing P.R. Laws Ann. tit. 31, § 3471; *Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.*, 96 F.3d 10, 15 (1st Cir.1996); *Vulcan Tools of P.R. v. Makita U.S.A., Inc.*, 23 F.3d 564, 567 (1st Cir.1994)).

32.     But then Movants speculate: "*If* the Court" finds the bond documents ambiguous, parol evidence might be admissible.  (Motion ¶ 20).  Ambiguity, however, is a threshold question of law.  *Alison H. v. Byard*, 163 F.3d 2, 6 (1st Cir. 1998) ("The question of whether a contract term is ambiguous is one of law for the judge."); *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 6 (1st Cir. 1998) ("Whether the statute is ambiguous is a question of law for the court to decide….").  And ambiguity does not flow from the mere existence of competing interpretations.  *Byard*, 163 F.3d at 6;

14

*see also, e.g.*, *Weiss v. DHL Express, Inc.*, 718 F.3d 39, 44–45 (1st Cir. 2013) ("A contract is not ambiguous simply because litigants disagree about its proper interpretation.").[16]  There is thus no reason to rummage through "parol evidence" or delay the March 5 hearing.  In any event, any course-of-dealing evidence as to the bond documents entered into by PRIFA, HTA, or CCDA would have nothing to do with the Commonwealth, which is not a party to any of the contracts at issue and is expressly designated as not being liable for the bonds.

## VI.  DISCOVERY AND A SEVEN-WEEK EXTENSION IS PREJUDICE.

33.    The discovery and adjournment Movants seek would prejudice the Government Parties.  The time and expense will both be unnecessary if the Oversight Board is correct and the gating issues can be decided based on the agreements and statutes.  As this Court recognized in the ERS Order, discovery of the nature sought by Movants "would add work and expense in preparation for the [Preliminary] Hearing and prolong the [Preliminary] Hearing itself by requiring unwarranted evaluation of subsidiary issues, and would therefore run contrary to the principles of judicial economy and prudent stewardship of debtor resources."  ERS Order at 7.  Furthermore, the delay Movants seek runs directly counter to the stated goal of the Mediation Team to obtain merits determinations on the "gating issues" of standing and security or other property interest "before (or contemporaneously with) approval of the Amended Disclosure Statement and before solicitation commences, if possible without a significant delay."  Amended Report [ECF No. 10756] at 12, n.14.  To state the obvious, the *seven-week* adjournment sought by Movants is precisely the type of "significant delay" the Mediation Team recommended be avoided.

---

[16] Movants cite the Restatement (Second) of Contracts for the proposition that there is no requirement of ambiguity before course of dealing evidence can be considered, but no Puerto Rico or First Circuit law.  (Motion ¶ 20).  The First Circuit has clarified that even under the "modern" Restatement approach, course-of-dealing evidence may "not [be used] to vary or contradict [the contract's] terms."  *Fleet Nat'l Bank v. H&D Entm't*, 96 F.3d 532, 539 (1st Cir. 1996).  Movants want to use extrinsic evidence in an effort to contradict contractual and statutory terms they themselves argue are unambiguous, but those terms control.

## **CONCLUSION**

For the reasons stated herein, the Motion should be denied.


Dated: February 13, 2020
         San Juan, Puerto Rico

Respectfully submitted,


*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Paul V. Possinger
Brian S. Rosen
Ehud Barak
Michael Mervis
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 557-2900
Fax: (310) 557-2193

*Attorneys for the Financial Oversight and
Management Board as representative of the
Debtor*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative of the
Debtor*

16