# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY ("HTA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**REPLY OF ASSURED GUARANTY CORP.,
ASSURED GUARANTY MUNICIPAL CORP., AMBAC ASSURANCE
CORPORATION, NATIONAL PUBLIC FINANCE GUARANTEE
CORPORATION, AND FINANCIAL GUARANTY INSURANCE COMPANY
IN SUPPORT OF URGENT MOTION TO ADJOURN HEARING
ON MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY
AND EXTEND DEADLINE FOR REPLIES IN SUPPORT OF MOTIONS
<u>FOR RELIEF FROM THE AUTOMATIC STAY</u>**

To the Honorable United States District Judge Laura Taylor Swain:

Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation (collectively, the "Bondholders") respectfully submit this reply (the "Urgent Motion Reply") to the FOMB's Opposition to Urgent Motion (the "Urgent Motion Opposition") [ECF No. 10958] and in further support of the *Urgent Motion to Adjourn Hearing on Motions for Relief from the Automatic Stay and Extend Deadline for Replies in Support of Motions for Relief from the Automatic Stay* (the "Urgent Motion") [ECF No. 10841].[2]

## PRELIMINARY STATEMENT

1.      In its Objection, FOMB urges the Court to rule, without any factual investigation, on issues of profound importance not only to the bondholders and insurers of the billions of dollars at stake, but on issues that will directly impact how the Commonwealth will be able to fund its infrastructure projects going forward. Moreover, as this Court is no doubt aware from the decision regarding section 922(d), the decision of this Court in this case will have an impact **on the national bond market**, with cities such as Chicago, Dallas, and Cleveland facing downgrades as a result of the extreme positions taken by FOMB in this case. But FOMB apparently does not care about the impact of its scorched earth legal positions. Instead, FOMB's Objection offers the following smug assessment: "it does not matter whether the statutes…providing for each year's revenues to be transferred are labelled 'appropriations' or potato' chips." Urgent Mot. Opp. ¶¶ 14, 8.

---

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the Lift-Stay Motions, ECF Nos. 10102, 10602, and 10104, the Urgent Motion, ECF No. 10841, and the Amended Interim Case Management Order for Revenue Bonds (the "CMO"), No. 17-3567, ECF No. 678.

2.      FOMB's position rests entirely on the premise that the documents and statutes unambiguously dispose of every single issue pertaining to secured status or other property interest and standing.  However, none of FOMB's arguments are actually tethered to the language in the statutes and in the bond documents.  And that is why FOMB is forced to desperately argue that PROMESA preempts everything and eviscerates property interests.  The reality is that the Movants have made a more than adequate showing that the governing statutes assigned proceeds of the Excise Taxes and other pledged revenues to the instrumentalities, and did so as security for repayment of the bonds issued by them by, among other things, commanding that the Treasury deposit the funds in special deposits or other accounts for the benefit of the instrumentalities. Movants likewise demonstrated that the underlying bond documents create a security interest in the Revenues.

3.      In its opposition to the lift stay motions, however, FOMB argues that (i) the bondholders' security interests only attach to revenues *received* by the revenue bond authorities, and (ii) the underlying statutes merely "appropriate" certain taxes to those authorities.  These are both factual based arguments.  Movants are entitled to challenge the Board's factual assertions that these monies sit in General Fund commingled accounts owned by and for the benefit of the Commonwealth.  Movants do not believe this is true.  Movants believe that the funds, consistent with the language of the statutes, and, discovery will show, regulations, rules and official documents developed by those charged with the implementation of these laws, were required to be deposited into restricted accounts held in trust and for the benefit of the instrumentalities.  And moreover, the meager evidence produced with respect to HTA actually shows ***HTA is, in fact, receiving the Revenues.***  The Movants are entitled to basic flow of funds discovery, and this Court should see the evidence before ruling on such profoundly important issues.

4.      The FOMB also insists that the Excise Tax Statutes, which convey tax proceeds to the instrumentalities subject only to the Commonwealth's interest in the event that, in a given fiscal year, its revenues fall below budgeted amounts such that appropriations exceed its available resources, are mere appropriation laws just like the statutes in *ERS* and are analogous to annual budgetary appropriation expenditures addressed in *Rosselló Nevares*.  Yet FOMB's Opposition Briefs do not demonstrate that its statutory interpretation is so clearly correct that the Court need look no further.  If it had, then FOMB would never have had to stoop to advancing brand new interpretative arguments (which are wrong) in Objection.  All of these newly advanced theories are procedurally infirm because they appear nowhere in the oppositions to the lift stay motions and should be disregarded by this Court.  For example, the Board now claims that the Puerto Rico Constitution at Article VI Section 8 "expressly refers to the [Excise Tax] revenues as "appropriations."  That Section neither refers to the Excise Taxes nor characterizes as "appropriations" laws that require funds to be assigned and allocated to instrumentalities to raise and then repay billions in bond debt.  Excise Tax proceeds, in this analysis, are squarely viewed as "available resources", which can be redirected for payment of public debt in certain limited circumstances, not "appropriations". Accordingly, each of the revenue bonds at issue include the condition that the pledged revenues be used only for public debt service "but only to the degree to which the ***other available resources*** to which reference is made in [Section 8] are insufficient for such purposes."  *See, e.g.*, 13 L.P.R.A. § 2271v; see also 3 L.P.R.A. § 1914; 9 L.P.R.A. § 5681; 13 L.P.R.A. § 31751(a)(1)(C).  In any event, none of FOMB's arguments warrant blocking all discovery or a brief adjournment to allow it to occur.  A little sunlight to creditors should be something FOMB should welcome, but its conduct in these cases and the tenor of its brief suggest otherwise.

5.      Among other things, modest discovery of the budgetary practices, regulations, rules and official documents pertaining to the Excise Statute proceeds will support Movants' argument that the FOMB's statutory interpretation is wrong.   And, the parties have clearly proffered diametrically opposed interpretations of the same statutes. Under these circumstances, basic discovery of how the agencies charged with the implementation of these statutes implemented them, the rules and regulations they promulgated and their results are plainly relevant.  Also, given the parties' conflicting interpretations, discovery is warranted as it always is in advance of a hearing where the Court could determine that an ambiguity exists.  For example, the HTA Excise Tax Statutes provide that the proceeds shall be covered into a special deposit on a monthly basis. How were the funds held in the interim (e.g., in restricted accounts held in trust for HTA) and what were the "special deposit" accounts?   In sum, modest, but important, discovery and a brief extension of the deadlines to enable it are necessary to ensure that Movants' reply briefs will present the Court with all of the information it needs to render a just decision.  It is that simple.

6.      At the last Omnibus Hearing, ECF No. 10251, when Movants renewed their request for discovery in advance of the preliminary lift stay hearing, the Court expressly directed the parties to meet and confer about discovery and to do so quickly enough to allow disputed issues to be raised with Judge Dein this week—specifically cautioning the FOMB that the parties need to "get practical" on discovery issues if the Court is to move forward with the bifurcated approach to lift stay issues that FOMB favored.  Movants tried to work through the discovery issues on the timeframe set out by the Court, but as the Opposition Brief illustrates, the FOMB has thumbed its nose at the Court's directions to the parties and mostly focused on its contention that *no* discovery is needed.  To date, just one business day before Movants' reply brief would be due under the current schedule, the FOMB has not produced basic documents, such as PRIFA transmittal

information that the Court explicitly identified at the last omnibus hearing as an area where discovery might be needed.  Without key information Movants need to address issues of secured status and property rights, and with zero assurance that meaningful information will ever be produced, the parties cannot realistically move forward without time for the Court to address the discovery disputes. More critically for purposes of this Motion, days' delay in responding, no commitment as to when a production would be complete, and a demand for a "reasonable" schedule for briefing the Motion to Compel (being filed contemporaneously herewith) that ignores entirely their position that the current schedule for briefing the Lift Stay Motions should remain unchanged.

7.     The discovery could have been readily and timely produced, but it was deemed to be "irrelevant" by those opposing it (not a Court).  But, fundamental fairness and basic due process require a modest adjournment of the preliminary lift-stay hearing (and for the avoidance of doubt consent is given to extend the Section 362(e) waiver to maintain the stay during same 45-day post-hearing period that exists today).

## ARGUMENT

### A.     THE BONDHOLDERS HAVE A RIGHT TO FLOW OF FUNDS DISCOVERY

8.      The FOMB argues that Movants are not entitled to even the most elementary discovery on flow-of-funds issues—including which accounts and what type of accounts the Excise Tax proceeds are held in; whether the funds are restricted or held in trust and for the benefit of the instrumentalities and their bondholders; and whether the funds have been commingled. See Urgent Mot. Opp. ¶¶ 19, 22–26.  This is so, according to the FOMB, because the parties merely offer "competing interpretations," *id.* ¶ 32, and no party maintains that the statutes or the "legal documents are ambiguous," *id.* ¶ 9. Determining the existence and extent of property interests

often involves a mixed question of law and fact because courts must apply property law rules and principles to a certain set of facts. *See In re Henshaw*, 585 B.R. 605, 613 (D. Haw. 2018) (noting that whether "the circumstances are sufficient to require inquiry as to another's interest in property for the purposes of [state law] is a question of fact"); *Gerhardt v. City of Evansville*, 408 N.E.2d 1308, 1311 (Ind. Ct. App. 1980) (stating that existence of property interest is "at least in part" a question of fact, and remanding to trial court where case had been dismissed without any evidence on the issue).

9.      The FOMB has raised several arguments that turn not only on the meaning of the statutes but also on the satisfaction of certain factual conditions. For example, according to the FOMB's Lift-Stay Opposition, HTA "only has the power to, 'subject to the provisions of § 8 of Art. VI of the Constitution . . . pledge to the payment of [the bonds] and interest thereon, the proceeds of any tax or other funds which may be made available to the Authority by the Commonwealth." *See* Lift-Stay Opp. ¶ 81 (quoting 9 L.P.R.A. § 2004(l)).  This argument raises the factual question of whether the Pledged Revenues were "made available" to HTA, and the Bondholders need account information to determine whether funds were transferred to accounts to be held for HTA's benefit. Further, the FOMB asserts, without evidentiary support, that the Commonwealth holds the collected Excise Taxes in its own accounts and later makes "appropriations" of the funds from these accounts.  See HTA Opp. ¶ 6; id. Ex. A.; CCDA Opp., Ex. E; PRIFA Opp. ¶ 38; id. Ex. A; CCDA Opp., Ex. E; PRIFA Opp. ¶ 38; id. Ex. A. This assumes that the accounts in which the funds are held or pass through are indeed held by the Commonwealth for the Commonwealth's benefit. Yet it is Movants' understanding, based on information in their possession, that the accounts are designated for the benefit of the instrumentalities. The FOMB's factual assertions and assumptions must be tested in discovery.

10.     Moreover, FOMB's principal contention regarding the attachment of security interests of the bondholders is factual one.  For example, FOMB argues that HTA bondholders' security interests attach only to pledged revenues *received* by HTA from the Commonwealth. HTA Opp. ¶ 21, 24, 25 n. 12, 27, 64, 70-75.  From there, FOMB argues that the bondholders have no security interest because HTA is not receiving the revenues, and that section 928 is inapplicable because the revenues are not "acquired" by HTA.  *Id.* ¶ 107.  This begs the question:  is HTA, in fact, receiving the revenues?    While there is a legal component to this question, FOMB cannot deny that its own argument implicates a number of factual issues.  FOMB cannot complain about discovery when it consciously chose to make this argument.

11.     FOMB also asserts that the Movants' "quest is dead on arrival" because of perfection issues. Urgent Mot. Opp. ¶ 9.  Leaving aside that perfection is irrelevant and FOMB's confidence is severely misplaced (because as Movants will demonstrate, FOMB is not even relying on the correct parts of the Uniform Commercial Code), FOMB's argument again rests on a factual assertion:   whether or not there is an authenticated record that the Commonwealth holds the pledged taxes for the benefit of HTA and the bondholders.  That is directly relevant to perfection.

12.     For these same reasons, discovery is relevant to determining whether the Excise Tax Statutes require the Commonwealth to hold the Pledged Revenues in trust for the Bondholders. The FOMB's assertions about the "Commonwealth's money management mechanism," Urgent Mot. Opp. ¶¶ 27–29, illustrate why flow-of-fund discovery is necessary. In making its point, the FOMB essentially concedes that the account architecture implemented the mandates imposed by the Excise Tax Statutes and the Bond Resolutions.  But FOMB then admits that it did not bother conducting diligence before submitting its Opposition Brief.   Information about these accounts—

including detail about account beneficiaries, holdings, transmittal instructions—plainly provide
strong evidence of the very property rights Bondholders claim to have by statute and contract.

13.     Similarly, flow of funds information is required to support a tracing analysis to
establish a beneficial interest in commingled funds. In arguing that the Bondholders would need
this discovery only if Movants are "first able to prove a trust exists," Urgent Mot. Opp. ¶ 26, the
FOMB suggests a multi-hearing structure to determine property interest issues contrary to the
CMO.  CMO 5. The Bondholders are entitled to discovery to show that the funds are either held
in segregated accounts marked for HTA, PRIFA, CCDA or if the funds are commingled, conduct
a tracing analysis. Furthermore, the Bondholders are entitled to account information to show that
the relevant revenues were in fact deposited in accounts held for the benefit of these authorities
and their bondholders.

B.    **THE MOVANTS ARE ENTITLED TO DISCOVERY TO DEMONSTRATE
      THAT THE FOMB'S INTERPRETATIONS OF THE RESOLUTIONS
      AND STATUTES ARE UNREASONABLE AND TO CONFIRM THAT
      MOVANTS INDEED HOLD PROPERTY INTERESTS**

14.     Despite the FOMB's protests to the contrary, discovery is warranted because the
Court could find the bond resolutions to be ambiguous. *See Clinton Co. v. United States*, No. 88
C 2705, 1991 WL 95284, at *5 (N.D. Ill. May 24, 1991) (finding that where "both sides contend
that the agreement is unambiguous (when read their way)," the court nevertheless can find
ambiguity).  And discovery clearly is required to guide the Court's interpretation of any statutory
or contractual provision found to be ambiguous. *See Roig Commercial Bank v. Buscaglia*, 74 P.R.
919, 933 (1953) ("This Court has decided that in case that a provision of law is ambiguous, the
administrative practice is important, serving as an effective aid in the construction of a statute.");
*Brugal &Co. v. Buscaglia*, 64 P.R. 903 (1945) (approving of the principle that administrative
"practice has peculiar weight when it involves a contemporaneous construction of a statute by the

8

men charged with the responsibility" for administering it (quoting *Norwegian Nitrogen Prods. Co. v. United States*, 288 U.S. 294, 315 (1933))); *see also Banco Popular v. Mun. de Mayagüez*, 126 D.P.R. (P.R. Offic. Trans.) 653, 671 (1990) (Hernandez Denton, J., dissenting) (relying on the "administrative practice of the municipalities and of the Treasury Department since the Law was approved" to interpret the scope of the tax statute at issue).[3]

15.     The FOMB argues that Bondholders have cited cases that only show "the usual deference courts give to administrative agencies charged with interpreting statutes." Urgent Mot. Opp. ¶ 17. But the FOMB is plainly wrong in suggesting that "[n]one of the discovery Movants seek involves anything remotely like administrative decisions by an expert agency about the meaning of a statute . . . ." *Id.* ¶ 17.  The Bondholders specifically asked for *regulations, internal agency rules, manuals, or official communications or memoranda* regarding the implementation of the Excise Taxes in the annual appropriations process. *See* Urgent Mot. ¶ 23.

16.     The FOMB also cites this Court's decision in the *Rosselló Nevares* case for the proposition that "all 'expenditures' of the year's revenues [are] subject to a budget."  Urgent Mot. Opp. ¶ 18 (citing *Rosselló Nevares v. Fin. Oversight & Mgmt. (In re Fin. Oversight & Mgmt. Bd.)*, 330 F. Supp. 3d 685, 704 (D.P.R. 2018), *aff'd, Vázquez-Garced v. Fin. Oversight Bd. for P.R. (In re Oversight & Mgmt. Bd. for P.R.)*, 945 F.3d 3 (1st Cir. 2019)). The FOMB is raising mixed questions of fact and law: That the Excise Statutes are and should be treated as expenditures of the Commonwealth akin to the undisputed appropriations at issue in the *Rosselló Nevares* case. And,

---

[3] The FOMB cites ERS Order, No. 17 BK-3566, ECF No. 544 (D.P.R. June 5, 2019) for the proposition that evidence of the "Governments' intent or understanding has no real relevance to the question of whether the bondholders are secured." Urgent Mot. Opp. ¶ 25. But the ERS Order concerned the relevance of legislative intentions as to the impact on a set of bondholders when enacting a pension law, not on the relevance of regulations, rules and official documents developed and used by officials charged with implementing statutes the meaning of which are hotly contested.

as the FOMB well knows, the Court expressed no opinions in that case as to whether the Excise Taxes constitute "expenditures" of the Commonwealth.

17.     Moreover, as noted previously, FOMB's argument regarding security interests is that the revenue bond authorities are not receiving the pledged revenues.  That plainly is a *factual issue*.  And it is a factual issue relevant to virtually all of the defenses raised in FOMB's opposition papers.  FOMB cannot complain about discovery when it raised these defenses in the first instance. The discovery sought by Movants is directly relevant to these defenses and these specific factual issues to be addressed at the March 5 hearing.

18.     The FOMB also claims discovery is not required because the Puerto Rico Constitution or the Excise Taxes refer to uses of the Excise Tax proceeds as "appropriations." *See* Urgent Mot. Opp. ¶¶ 14–15.  They say no such thing.  The Puerto Rico Constitution requires a balanced budget at the start of each fiscal year, that is, an equalizing of "appropriations" and "resources," P.R. Const., art. VI, § 7.  Proceeds from the Excise Taxes otherwise assigned and dedicated to the instrumentalities are excluded from the determination of whether the Commonwealth's appropriations exceed available resources in a given year, and thus obviously are not "appropriations" of the Commonwealth.  Its interest in the Excise Tax proceeds is realized only under certain conditions, which the FOMB does not claim occurred for purposes of the preliminary hearing.

## C.     THE PRIFA "DISBURSEMENT DETAILS" ARE IMPORTANT TO THE BONDHOLDERS' SECURED STATUS

19.     The FOMB attempts to trivialize Movants' discovery requests into the PRIFA flow of funds, arguing that "cash management techniques do not grant security interests any more than consumers' use of auto-pay grants utilities security interests in the customers' bank accounts." Urgent Mot. Opp. ¶ 27.   But the FOMB's facetious analogy ignores the fact that PRIFA

bondholders have a security interest in all monies "deposited to the credit of the Puerto Rico Infrastructure Fund"—such that determining which monies are held "to the credit of" the Infrastructure Fund is indeed relevant to the scope of PRIFA bondholders' security interest.

20.     It is now apparent that there are hotly contested factual issues concerning which monies are in or otherwise deposited to the credit of the Puerto Rico Infrastructure Fund.  In its Opposition brief, the FOMB revealed for the first time that the first $117 million of Rum Taxes each year is transferred from a lockbox account to the Commonwealth Treasury with a "Disbursement Detail" document.  PRIFA Opp. ¶ 29.  FOMB was not specific in its brief about what exactly the "Disbursement Detail" documents say—merely granting that they use "similar language" to a provision of the lockbox agreement that requires that the first $117 million of Rum Taxes be made "for deposit to the credit of PRIFA."

21.     Movants believe this discovery is enormously important to the Court's consideration of issues of secured status.  If the Disbursement Detail documents show that the first $117 million of Rum Taxes has been transferred, literally with bank instructions marking those monies "for deposit to the credit of PRIFA" or the Infrastructure Fund, it is beyond cavil that those monies are subject to PRIFA bondholders' security interest.  The entire premise of FOMB's attack on PRIFA bondholders' liens—that monies were not deposited to the credit of a fund in which PRIFA bondholders have a security interest—could be undermined by the requested discovery.

22.     Notably, the Court itself expressly warned the FOMB that these were the types of issues on which discovery might be appropriate—and that a failure to provide discovery, or offer some practical alternative (such as stipulation) might affect the schedule, to ensure procedural fairness to Movants.  The court noted, at the last omnibus hearing:

> THE COURT: Let me jump ahead a little bit to the discovery issue.  It seemed to me, reading at least the amended PRIFA papers, that there are arguments about the transmittal

memorandum and subaccount facts being ones relevant to the stay relief went certainly to the quantification and tracing of a res but also it wasn't clear to me, but maybe was part of their argument for the existence of a security interest.

. . . . [*colloquy with FOMB counsel*]

THE COURT: Just hear what I just said as a warning that if I'm going to go with this bifurcated process, and they're going to say they'd be hobbled on their security interest claim if I bifurcated it that way without giving them discovery, I'm going to need you to respond to that in some procedurally meaningful way and factually meaningful way. So it's something you would need to work on.

. . . . [*colloquy with FOMB counsel*]

THE COURT: What I'm saying is I'm trying to hold the February 27 argument schedule. There are briefing deadlines, so somebody has to get practical on both sides around here if we're going to do at least a gating issues hearing on the 27th to move forward.

(Jan. 29, 2020 Omnibus Hearing Tr. 140-142.)

23.     Notwithstanding this express warning from the Court, the FOMB still has not yet produced the Disbursement Detail documents (*i.e.*, the "transmittal memorandum" that the Court was referring to in the colloquy quoted above)—even though FOMB's counsel plainly had collected and reviewed them weeks ago, since it made factual assertions about the "language" used in these documents in its PRIFA opposition brief. PRIFA Opp. ¶ 29. As the Opposition brief makes clear, the FOMB has instead tried to relitigate the Court's recognition that some discovery might be appropriate and that the parties should try to reach a compromise. Having chosen not to heed the Court's warnings about the need "to get practical" on discovery, the FOMB has only itself to blame for any delay the discovery motion practice will necessitate.

### D.     THE BONDHOLDERS ARE ENTITLED TO DISCOVERY REGARDING THE CCDA TRANSFER ACCOUNT

24.     The FOMB's only argument against Movants' request for discovery on the CCDA bonds (including the Transfer Account) was that "the CCDA lift stay motion is about Movants' claim to moneys *outside* of the Transfer Account." Urgent Mot. Opp. ¶ 30. In fact, however, the

limited discovery produced to date confirms that there are factual disputes about what monies comprise the Transfer Account and the Pledge Account—which FOMB concedes are subject to CCDA bondholders' security interest. The limited discovery that has been provided so far indicates that there is far more ambiguity than FOMB has acknowledged until now regarding which monies are part of the Transfer Account and the Pledge Account.  Movants anticipate that discovery into the accounts, transactions, and flow of funds could establish that monies that the FOMB contends should be excluded from Movants' security interest are in fact part of the Transfer Account and/or Pledge Account to which Movants' security interest attaches.

25.    In addition, the limited information the Oversight Board has provided suggests that the Commonwealth has funds in other accounts that may be subject to Movants' lien.  For example, the FOMB has asserted that the Transfer Account was addressed as part of GDB's restructuring. Assuming, *arguendo*, that is true, that gives rise to factual questions of whether funds subject to Movants' security interest were removed from the Transfer Account and are not held in other accounts subject to Movants' lien.  *See* CCDA Opp. ¶ 40 n.21.

**E.**     **THE PARTIES ARE ENTITLED TO DISCOVERY OF COURSE OF DEALING EVIDENCE AND PAROL EVIDENCE BEARING ON THE CONTRACTS AT ISSUE**

26.    For the foregoing reasons, course-of-dealing evidence is important here to understanding issues of secured status.  The Oversight Board did not dispute that course of dealing evidence can be considered even in the absence of any ambiguity in the contract.  Urgent Mot. Opp. ¶ 32 n.4.[4]  Discovery into the flow of funds will give texture to how the contractual

---

[4] The FOMB cited *Fleet Nat'l Bank v. H&D Entm't, Inc.*, 96 F.3d 532, 539 (1st Cir. 1996), for the proposition that "extrinsic evidence" cannot be used to "vary or contradict" the terms of an unambiguous contract, but it omitted to mention that the same case made clear that the modern approach "allows extrinsic evidence to 'interpret' even a seemingly unambiguous contract," *id.*, thus confirming that

commitments were in fact implemented, prior to any default, and how those provisions should be understood today.  Particularly where, as here, many of the disputes around the scope of security interests involve specific special funds and accounts, it would be impossible for the Court to make a reasoned decision in the absence of all the facts.  *F.W.F., Inc. v. Detroit Diesel Corp*., 494 F. Supp. 2d 1342, 1367 (S.D. Fla. 2007) ("There is generally no requirement that an agreement be ambiguous before evidence of trade usage or course of dealing can be used to establish, supplement or qualify terms or conditions of a contract."); *see also* Restatement (Second) of Contracts § 223 (1981) ("There is no requirement that an agreement be ambiguous before evidence of a course of dealing can be shown, nor is it required that the course of dealing be consistent with the meaning the agreement would have apart from the course of dealing."); *Reyes Ramis v. Serra Torres*, 195 D.P.R. 828, 844-45 n. 43 (P.R. 2016) (relying on the Restatement (Second) of Contracts).

27.     The FOMB alleges that Movants "want to use extrinsic evidence in an effort to contradict contractual and statutory terms."  Urgent Mot. Opp. 21 n.15 (citing *Fleet Nat'l Bank v. H&D Entm't, Inc.*, 96 F.3d 532, 539 (1st Cir. 1996)).  Quite the contrary, the discovery materials Movants have obtained to date already are entirely consistent with the plain language of the applicable bond documents.  Movants have no doubt the same would be true of evidence regarding the Commonwealth's pre-litigation conduct with respect to HTA and CCDA.  In such instances, *Fleet National* (the case cited by the FOMB) encourages courts to consult "solid extrinsic proof" to determine what "the parties mutually intended."  96 F.3d at 539.   This Court should do so here.

28.     Similarly, evidence of how the Commonwealth implemented other agreements around the Rum Taxes is probative course-of-dealing evidence that should factor in the Court's

---

FOMB's contention that the contract is unambiguous is no basis for precluding discovery of extrinsic evidence.

analysis. The various opposition briefs filed in PRIFA, for example, attached agreements with certain rum producers that contains statements (apparently drafted by the Commonwealth's counsel prior to default), reflecting the Commonwealth's understanding of its obligations under the PRIFA bond documents. This course of dealing evidence shows that the Commonwealth understood and acknowledged that the first $117 million in Rum Taxes that the Commonwealth receives had been pledged to PRIFA bondholders. Bondholders should have reasonable opportunities to inquire into the existence of similar evidence. While even the cherry-picked set of documents that Movants' opponents have put before the Court support Movants' arguments, having put certain facts and documents at issue, the opponents of the lift-stay motions should not be allowed to avoid discovery that can reveal other facts and documents that provide a more complete picture.[5] The Movants also need time for a reasonable opportunity to seek parol evidence. While both sides claim that the documents and statutes unambiguously support their reading, as the FOMB acknowledges, it is not up to the parties to decide whether the bond documents are ambiguous or not. *See* Urgent Mot. Opp. ¶ 32 ("Ambiguity, however, is a threshold question of law.") (collecting cases for the same proposition); *Clinton Co. v. United States*, No. 88 C 2705, 1991 WL 95284, at *5 (N.D. Ill. May 24, 1991). If the Court perceives any ambiguity in the bond documents, the Court should have available to it all evidence that bears on that ambiguity. There is no need to do twice what could be done once.

---

[5] ECF 10609-2, (Bacardi Agreement), § 4.6 ("*the first $117 million* of Cover Over Revenues *received by the Government* . . . *are pledged and have to be transferred to [PRIFA]* . . . ."); 10612-1 (Serralles Agreement), § 4.6 ("*the first $117 million* of Cover Over Revenues *received by the Government* . . . *are pledged and have to be transferred to [PRIFA]* . . . ." (emphasis added)). And by using the conjunctive—the "first $117 million . . . are pledged *and* have to be transferred to [PRIFA]"—the Commonwealth acknowledged that the moneys were pledged *and therefore "have to be transferred*."

15

**F.**      **THE FOMB'S PREJUDICE ARGUMENT TURNS DUE PROCESS ON ITS HEAD**

29.    The FOMB has failed to provide necessary discovery while simultaneously asking the Court to hold the Bondholders to a deadline of February 18th for filing replies and a March 5 preliminary hearing. The Bondholders are entitled to information on Commonwealth accounts and budgetary practices to defend their property interests.  Basic due process demands nothing less.

## CONCLUSION

30.    For these reasons, the Court should grant the Bondholders' Urgent Motion.

**Certification of Compliance with**
**Local Rule 9013-1 and Tenth Amended Case Management Procedures**

Pursuant to Local Rule 9013-1 and ¶ I.H of the *Tenth Amended Notice, Case Management and Administrative Procedures*, the undersigned counsel hereby certify that they have (a) carefully examined the matter and concluded that there is a true need for an urgent decision; (b) not created the urgency through any lack of due diligence; and (c) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court.

*[Remainder of page intentionally left blank]*

Dated: February 14, 2020
San Juan, Puerto Rico


CASELLAS ALCOVER & BURGOS P.S.C.     CADWALADER, WICKERSHAM & TAFT LLP


By: */s/ Heriberto Burgos Pérez*             By: */s/ Howard R. Hawkins, Jr.*
   Heriberto Burgos Pérez                        Howard R. Hawkins, Jr.*
   USDC-PR 204809                              Mark C. Ellenberg*
   Ricardo F. Casellas-Sánchez                 William J. Natbony*
   USDC-PR 203114                              Ellen M. Halstead*
   Diana Pérez-Seda                            Thomas J. Curtin*
   USDC-PR 232014                              Casey J. Servais*
   P.O. Box 364924                             200 Liberty Street
   San Juan, PR 00936-4924                     New York, NY 10281
   Telephone: (787) 756-1400                   Telephone:  (212) 504-6000
   Facsimile:  (787) 756-1401                  Facsimile:  (212) 504-6666
   Email:  hburgos@cabprlaw.com                Email:  howard.hawkins@cwt.com
         rcasellas@cabprlaw.com                     mark.ellenberg@cwt.com
         dperez@cabprlaw.com                        bill.natbony@cwt.com
                                                           ellen.halstead@cwt.com
*Attorneys for Assured Guaranty Corp. and*                 thomas.curtin@cwt.com
*Assured Guaranty Municipal Corp.*                         casey.servais@cwt.com

                                             * Admitted *pro hac vice*

                                             *Attorneys for Assured Guaranty Corp. and Assured
                                             Guaranty Municipal Corp.*

By: */s/ Heriberto Burgos Pérez*

Heriberto Burgos Pérez
USDC-PR 204809
Ricardo F. Casellas-Sánchez
USDC-PR 203114
Diana Pérez-Seda
USDC-PR 232014
P.O. Box 364924
San Juan, PR 00936-4924
Telephone:  (787) 756-1400
Facsimile:   (787) 756-1401
Email:      hburgos@cabprlaw.com
            rcasellas@cabprlaw.com
            dperez@cabprlaw.com

*Attorneys for Assured Guaranty Corp.*
*and Assured Guaranty Municipal Corp.*

By: */s/ Mark C. Ellenberg*

Howard R. Hawkins, Jr.*
Mark C. Ellenberg*
William J. Natbony*
Ellen M. Halstead*
Thomas J. Curtin*
Casey J. Servais*
200 Liberty Street
New York, NY 10281
Telephone:  (212) 504-6000
Facsimile:   (212) 504-6666
Email:      howard.hawkins@cwt.com
            mark.ellenberg@cwt.com
            bill.natbony@cwt.com
            ellen.halstead@cwt.com
            thomas.curtin@cwt.com
            casey.servais@cwt.com

* Admitted *pro hac vice*

*Attorneys for Assured Guaranty Corp. and*
*Assured Guaranty Municipal Corp.*

ADSUAR MUNIZ GOYCO SEDA &
PEREZ-OCHOA PSC

By:/s/ *Eric Perez-Ochoa*
  Eric Pérez-Ochoa
  USDC-PR No. 206,314
  E-mail:     epo@amgprlaw.com


By:/s/*Luis A. Oliver-Fraticelli*
  Luis A. Oliver-Fraticelli
  USDC-PR NO. 209,204
  E-mail:     loliver@amgprlaw.com

  208 Ponce de Leon Ave., Suite 1600
  San Juan, PR 00936
  Tel.:       (787) 756-9000
  Fax:        (787) 756-9010

*Attorneys for National Public Finance
Guarantee Corp.*

WEIL, GOTSHAL & MANGES LLP

By:/s/ *Robert Berezin*
  Jonathan Polkes*
  Gregory Silbert*
  Robert Berezin**
Kelly Diblasi*
Gabriel A. Morgan*
767 Fifth Avenue
  New York, New York 10153
  Tel.:       (212) 310-8000
  Fax:        (212) 310-8007
  Email:      jonathan.polkes@weil.com
              gregory.silbert@weil.com
              robert.berezin@weil.com
              kelly.diblasi@weil.com
              gabriel.morgan@weil.com

* admitted *pro hac vice*
**pro hac vice* application forthcoming

*Attorneys for National Public Finance
Guarantee Corp.*

FERRAIUOLI LLC

By: /s/ *Roberto Cámara-Fuertes*
    ROBERTO CÁMARA-FUERTES
    USDC-PR NO. 219,002
    E-mail:    rcamara@ferraiuoli.com

By: /s/ *Sonia Colón*
    SONIA COLÓN
    USDC-PR NO. 213809
    E-mail:    scolon@ferraiuoli.com

    221 Ponce de Leon Ave., 5th Floor
    San Juan, PR 00917
    Tel.:    (787) 766-7000
    Fax:    (787) 766-7001

*Counsel for Ambac Assurance Corporation*

MILBANK LLP

By: /s/ *Atara Miller*
    DENNIS F. DUNNE*
    ATARA MILLER*
    GRANT R. MAINLAND*
    JOHN J. HUGHES*
    55 Hudson Yards
    New York, New York 10001
    Tel.:    (212) 530-5000
    Fax:    (212) 530-5219
    Email:    ddunne@milbank.com
             amiller@milbank.com
             gmainland@milbank.com
             jhughes2@milbank.com

*admitted *pro hac vice*

*Counsel for Ambac Assurance Corporation*

ARENT FOX LLP


By: /s/ *David L. Dubrow*
      DAVID L. DUBROW*
      MARK A. ANGELOV*
      1301 Avenue of the Americas
      New York, New York 10019
      Tel.:      (212) 484-3900
      Fax:      (212) 484-3990
      Email:      david.dubrow@arentfox.com
                mark.angelov@arentfox.com


By: /s/ *Randall A. Brater*
      RANDALL A. BRATER*
      1717 K Street, NW
      Washington, DC 20006
      Tel.:      (202) 857-6000
      Fax:      (202) 857-6395
      Email:      randall.brater@arentfox.com

          *admitted pro hac vice

         *Counsel for Ambac Assurance Corporation*

REXACH & PICÓ, CSP

By: /s/ *María E. Picó*
    María E. Picó
    USDC-PR 123214
    802 Ave. Fernández Juncos
    San Juan PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    E-mail: mpico@rexachpico.com


*Attorneys for Financial Guaranty Insurance
Company*

BUTLER SNOW LLP

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (pro hac vice)
    5430 LBJ Freeway, Suite 1200,
    Dallas, TX 75240
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    E-mail: martin.sosland@butlersnow.com

    Jason W. Callen (pro hac vice)
    150 3rd Avenue, South, Suite 1600
    Nashville, TN 37201
    Telephone: (615) 651-6774
    Facsimile: (615) 651-6701
    E-mail: jason.callen@butlersnow.com

*Attorneys for Financial Guaranty
Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Puerto Rico by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.


At New York, New York, on February 14, 2020.

By: */s/ Robert Berezin*
Robert Berezin*
* Admitted *pro hac* v*ice*

24