**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>　　　　　　　　　　Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>　　as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>　　　　　　　　　　Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of PUERTO RICO ELECTRIC POWER AUTHORITY, and PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>　　　　　　　　　　Movants,<br><br>　　　　　　v.<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS, *et al.*<br>　　　　　　　　　　Respondents. | |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5532-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| CORTLAND CAPITAL MARKET SERVICES LLC, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, *et al.*, <br><br> Defendants. | PROMESA <br> Title III <br><br><br> Adv. Proc. No. 19-AP-396 |
| SISTEMA DE RETIRO DE LOS EMPLEADOS DE LA AUTORIDAD DE ENERGIA ELECTRICA, <br><br> Plaintiff, <br> v. <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, *et al.*, <br><br> Defendants. | PROMESA <br> Title III <br><br><br> Adv. Proc. No. 19-AP-405 |

**FINANCIAL OVERSIGHT AND MANAGEMENT BOARD'S SUBMISSION (A) IN FURTHER SUPPORT OF GOVERNMENT PARTIES' URGENT MOTION FOR AN ELEVENTH REVISED 9019 SCHEDULING ORDER; AND (B) IN RESPONSE TO THE URGENT MOTION OF THE FUEL LINE LENDERS AND UNION ENTITIES TO ADJOURN MARCH 4, 2020 HEARING ON BONDHOLDERS' AND GOVERNMENT PARTIES' MOTIONS TO DISMISS IN ADVERSARY PROCEEDINGS**

To the Honorable United States District Judge Laura T. Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submits this (A) reply in further support of the *Urgent Motion of Government Parties for (1) Bridge Order Pending Determination of Their Motion for a Revised Scheduling Order; and (2) Eleventh Revised Order Modifying Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF*

1

*Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235]* (the "9019 Motion") (ECF No. 1897 in Case No. 17-04780)[2] (the "9019 Scheduling Motion"); and (B) response to the Fuel Line Lenders and Union Entities' *Urgent Motion to Adjourn March 4, 2020 Hearing on Bondholders' and Government Parties' Motions to Dismiss in Adversary Proceedings* (ECF No. 82 in Adv. Proc. No. 19-396; ECF No. 56 in Adv. Proc. No. 19-405) (the "Adversary Proceedings Scheduling Motion").[3]

## PRELIMINARY STATEMENT

1. The Government Parties seek a revised schedule and hearing date for the 9019 Motion in light of recent events. These events include natural disasters that affected the island, and in particular the energy utility that is the subject of this title III case, and resistance by certain legislators to proposed legislation to facilitate the RSA.[4] As a result, the Oversight Board asserts additional time is required for the parties to the RSA to work together on the process for implementing the transactions contemplated under the RSA that is the subject of the 9019 Motion before proceeding to a hearing.

2. Based on discussions that the Government Parties have had with the Objectors since the filing of the 9019 Scheduling Motion, and as the Oversight Board informed the Court at the January omnibus hearing, the Oversight Board respectfully requests that the Court enter the revised proposed order attached hereto as Exhibit 1 (the "Amended Proposed Scheduling Order")[5] setting

---

[2] Unless otherwise noted, future references to the Docket refer to Case No. 17-04780.

[3] Capitalized terms not defined herein shall have the same meaning as they did in the 9019 Scheduling Motion.

[4] Reorg Research, *New Progressive Party Lawmakers Say No Legislation Required for Title III Court to Approve PREPA RSA* (January 30, 2020) (quoting various lawmakers).

[5] The Committee's argument that no deadlines for the 9019 Motion should be reset until a hearing date is established is moot because the Amended Proposed Scheduling Order includes a fixed hearing date. *See* Exhibit 1. This is the

2

the hearing on the 9019 Motion for June 17-18, 2020, and setting interim deadlines. The ad hoc group of uninsured PREPA bondholders (the "Ad Hoc Group"), the Fuel Line Lenders, the Union Entities, and the Committee[6] do not object to the proposed schedule in the Amended Proposed Order.

3. Objections to the 9019 Scheduling Motion have been limited, with the only opposition to adjournment of the 9019 hearing date coming from Assured and National, two signatories to the RSA. *See* ECF No. 1902 (the "Monoline Objection"). In essence, Assured and National argue they are harmed by further delay because they are trapped in limbo, with the forbearance obligations of the RSA and none of its benefits. While the Oversight Board does not want to lose key parties to the RSA, Assured and National are not trapped, as they retain the right to terminate or withdraw from the RSA. Because they retain this right, they are not unduly prejudiced.

4. With respect to the Adversary Proceedings Scheduling Motion filed by the Fuel Line Lenders and Union Entities, the Government Parties do not object to the Court rescheduling the hearing on the motions to dismiss, currently set for March 4, 2020 (the "March 4 Hearing"), to a date between April 27 and May 6, 2020 that is convenient for the Court, and, in any case, prior to the 9019 Hearing.

\* \* \*

---

same proposed order that the Government Parties circulated to counsel for the Fuel Line Lenders, Union Entities and the Committee on February 7, 2020. *See* Committee Objection at ¶ 4.

[6] The capitalized terms "Fuel Line Lenders", "Union Entities" and "Committee" are used herein as defined in their respective response ("Creditor Response", ECF No. 1905) and objection (the "Committee Objection" ECF No. 1904).

# ARGUMENT

## I. The Court Should Grant the Government Parties' Motion to Adjourn the 9019 Hearing to June

### A. Good Cause Exists for the Requested Extension, and Adjournment of the 9019 Hearing Does Not Prejudice Any Party

5. Good cause exists for the requested extension, and the adjournment of the 9019 hearing does not prejudice any party. The Government Parties have worked on proposed legislation required under the terms of the PREPA RSA, including the implementation of the transition charge to be used to pay the securitization bonds to be issued under the RSA, and demand protections. As reported to the Court by counsel to the Oversight Board at the January 29, 2020 omnibus hearing, while draft legislation was being evaluated by the government, "the legislative process is an iterative one, and predicting legislative timing and outcomes is far from an exact science." Jan. 29, 2020 Hr'g Tr. 12:7-12. The Oversight Board informed the Court the Government Parties would be seeking an extension of the briefing schedule and an adjournment of the March 31, 2020 to allow time for the parties to make progress with respect to the legislation. *Id*. The Government Parties have had discussions with members of the legislature over enactment of implementing legislation, but certain legislators have publicly stated they are not currently willing to support legislation to facilitate the RSA.[7] The Oversight Board requires time to continue

---

[7] *See supra n*.4.

4

conversations with legislators on one hand, and Supporting Holders on the other hand, on implementing the RSA.[8]

6. No moving or objecting party to the 9019 Motion opposes rescheduling the 9019 Hearing to June 17-18, 2020 as set forth in the Amended Proposed Scheduling Order, or any or any other aspect of the proposed amended briefing schedule on the 9019 Motion.

7. Only Assured and National, both parties to the RSA, object to the amended schedule. Assured and National assert they are trapped in limbo while continuing to pay principal and interest on PREPA insured bonds. This argument has no bearing on the 9019 Scheduling Motion because they would be obligated under the insurance policies regardless of whether the 9019 Motion is approved by the Court. Moreover, while the Oversight Board hopes that Assured and National continue to support the RSA, they are free to exercise their rights under the RSA to terminate or withdraw if they deem it necessary to "vindicate" their purported rights. But they should not be allowed, through motion practice on a scheduling order, to commandeer PREPA's restructuring to meet their timeline.

8. Assured and National also argue the Government Parties' statement regarding recent events "cannot even charitably be called an excuse for further delay, much less demonstrate 'good cause' necessary to justify an extension." Monoline Objection ¶ 20. In doing so, Assured and National ignore the recent earthquakes that have struck Puerto Rico,[9] and the subsequent

---

[8] The Oversight Board would prefer to reach a consensual resolution with the legislators, but, of necessity, must reserve all its rights to proceed otherwise.

[9] David Begnaud, Puerto Rico residents fear aftershocks after deadly 6.4 magnitude earthquake, CBS News (2020), https://www.cbsnews.com/news/puerto-rico-earthquake-residents-fear-aftershocks-after-deadly-6-4-magnitude-earthquake-2020-01-07/ (published Jan 7, 2020). PREPA, too, was severely impacted by the earthquakes. Most significantly, the Costa Sur power plant—which supplies over 20% of Puerto Rico's power generation—experienced "destruction on a grand scale," and is not expected to return to service until 2021. Talal Ansari, Arian Campo-Flores & Jennifer Calfas, PUERTO RICO POWER PLANT SUSTAINS 'DESTRUCTION ON A GRAND SCALE' THE WALL STREET JOURNAL (2020), https://www.wsj.com/articles/puerto-rico-power-plant-sustains-destruction-on-a-grand-scale-11578603996 (last visited Feb 12, 2020). This loss of Costa Sur will cause a material delay in upgrades

5

announced resistance of certain legislators to proposed legislation to implement the RSA. These developments have combined to create certain challenges to implementing the RSA. The Government Parties need time to address them.

9. Assured and National also ask that "at a minimum, if the Court chooses to grant the Motion, it should do so with a clear message that further motions to adjourn will not be considered." *Id.* ¶ 4. This request demonstrates a willful blindness to the unpredictable environment of Puerto Rico, and pushes an inflexible and imprudent standard whereby the 9019 Motion must proceed forward even where unforeseeable circumstances have intervened. The Court should not tie its own hands and cast aside its discretion under Fed. R. Bankr. P. 9006(b)(1) to enlarge deadlines, for good cause, in the future.[10]

10. The Oversight Board is in the process of determining whether legislation to support the RSA can be obtained prior to a hearing on the 9019 Motion. While the Oversight Board is not foreclosing the legislative route, time is required to work on implementing the RSA. Given the critical role the RSA will play in PREPA's restructuring, transformation, and eventual Title III exit, the Government Parties should not be forced to proceed forward imprudently. If at all possible, the Oversight Board wants to avoid a clash with the Legislature over the parties' respective powers.

---

not only to Costa Sur but other generation plants throughout the island that are an essential component of transformation, particularly lowering the cost of power generation.

[10] As this Court has recognized, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants." *In re Fin. Oversight & Mgmt. Bd. For Puerto Rico*, 335 F. Supp. 3d 256, 262 (D.P.R. 2018) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "Generally, courts have the discretionary power to stay an action in the interest of justice and efficiency." *Id.* (quoting *Total Petroleum P.R. Corp. v. T.C. Oil, Corp.*, CIVIL NO. 09-1105 (JP), 2010 WL 11545626, at *1 (D.P.R. May 7, 2010)). The court must balance the equities and potential prejudice to each party. *Id.* (internal quotations and citations omitted).

11. Moreover, contrary to Assured's and National's assertion, the Government Parties do not benefit from a delay in the 9019 Hearing. Monoline Objection ¶ 2. The Oversight Board has been consistent in its position that the sooner PREPA's transformation and Title III exit can be accomplished, the better for Puerto Rico and its stakeholders. But urgency must be balanced with prudence, and pressing forward before fully assessing the impact of intervening circumstances and alternative routes to achieving the settlement would not benefit PREPA, its customers, or the supporting holders.

12. For the same reason, the Committee's statement that "adjournment undermines the Government Parties' argument that PREPA had no choice but to reach a settlement with bondholders to avoid the lengthy delay associated with litigation" is without merit. *See* Committee Objection ¶ 2. As a preliminary manner, the Committee's argument is entirely irrelevant to the issue of whether "good cause" exists to amend the schedule, and is merely an attempt to reassert arguments regarding the reasonableness of the 9019 Motion in the context of a scheduling motion. Second, the statement mischaracterizes the Government Parties' position, as they argued that avoidance of litigation is a significant benefit of the RSA, not that they had "no choice but to reach a settlement." Third, the benefit of avoidance of litigation is as relevant today as it was on the day the RSA was signed, as litigation with the bondholders has been stayed, and any delay and uncertainty to PREPA's restructuring would be at least the same if it were to recommence in the future.

13. In sum, the Oversight Board believes that all of PREPA's constituencies are best served by allowing the legislative processes or the analysis of alternative paths to progress further prior to the 9019 Hearing. Assured's and National's frustration over the unanticipated delays does not justify pushing ahead with the hearing date prior to the optimal time for doing so, as determined

by the Government Parties, and without regard to the broader role the 9019 Motion plays in PREPA's overall restructuring and transformation.

### B. The Court Should Enter the Amended Proposed Scheduling Order Without Modification

14. Putting aside the Monoline Objection, which opposes *any* further adjournment regarding the 9019 Motion, there is consensus among the other parties regarding an adjourned 9019 Motion schedule. The Amended Proposed Scheduling Order proposes the 9019 Motion be reset for a hearing in June 17-18, 2020 and adjusts the intervening deadlines provided in the original proposed scheduling order (Exhibit B to the 9019 Scheduling Motion) by approximately two weeks.[11] The Fuel Line Lenders, the Union Entities, the Committee, and the Ad Hoc Group agree to these dates.

15. The Committee, however, raises two additional points. First, the Committee seeks to eliminate a restriction to which they (and all other parties) previously agreed, which mandates any new discovery requests be "based on new material developments or other new information disclosed in discovery."[12] Committee Objection ¶¶ 6, 13. Second, the Committee asks the Court to specify that any "good cause" finding is "inapplicable to the Committee" and "without prejudice to any objecting party's arguments on the merits of the 9019 Motion." Committee Objection ¶ 13. The Court should make neither modification.

16. First, the Committee Objection is devoid of any sound reasoning why the "new material developments" language should be omitted from the Amended Proposed Scheduling

---

[11] This schedule also provides a full six weeks for the objectors' sur-reply briefing, which is more than double the nineteen days original provided for sur-replies (*see* ECF No. 1826).

[12] *See* ¶ 2 of the *Fourth Revised Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235]* [ECF No. 1639] (the "Fourth Revised Order").

Order. Fact and expert discovery for this contested matter have closed. Thousands of pages of documents have been produced, numerous witnesses have been deposed, and the parties have even exchanged written direct testimony, deposition designations and exhibits and objections thereto. There is no reason at this pretrial stage to go back to the drawing board on discovery *unless* there are "new material developments" which warrant it. And the Committee has not articulated a need for more discovery absent new material developments, which by definition would be for the same subject matter and categories for which it has already obtained discovery.

17. Instead, the Committee asserts that the "new material developments" language was agreed to at a time when the expected 9019 hearing date was only weeks away. Committee Objection ¶ 7. But, it fails to illustrate why this fact warrants the removal of the language from the current scheduling order. Moreover, the Committee has not objected to inclusion of this language in the six scheduling orders that followed its first inclusion in the Fourth Revised Order.

18. There has been no need for additional discovery barring a new material development since September and the Committee has not provided a reason to expect one now. In fact, the Committee acknowledges that it has not even contemplated what discovery it might need that is not related to a "new material development." Committee Objection ¶ 9, n.5.

19. The only hypothetical discovery the Committee presents are (a) supplemental discovery that it does not believe to be limited by the "new material developments" language;[13] and (b) updating the Government Parties' calculations of total payments owed to bondholders. These calculations are basic math; they require a calculator, not additional discovery. If they were to change at all, such changes would be based on "material new developments." Thus, this reason

---

[13] The Oversight Board reserves all rights regarding whether any discovery the Committee might claim to be "supplemental" is actually a "new" request limited by paragraph 2 of the Fourth Revised Order.

9

cannot possibly warrant an invitation to open the floodgates on additional discovery at this late stage.

20. With respect to the Committee's second requested modification, as canvassed in detail above, there is good cause for this extension. And if there is good cause for the extension, it applies to *all parties* not just some. The Oversight Board does not contend that entry of the Amended Proposed Scheduling Order would preclude the Committee from making certain merits arguments, but there is no need to amend the order in that regard.

21. The Court should enter the Amended Revised Proposed Scheduling Order, attached as Exhibit 1, without modification.

## II. The Oversight Board Does Not Object to a Limited Adjournment of the March 4 Hearing in the Adversary Proceedings

22. As the Oversight Board informed counsel for the Fuel Line Lenders and the Union Entities, it is willing to agree to a limited adjournment of the March 4 Hearing in adversary proceeding No. 19-396 and No. 19-405 (the "Adversary Proceedings"). Since it originally advised that it was amenable to an adjournment to the April 22, 2020 omnibus hearing or another date between April 22 and May 6, 2020, the Oversight Board has learned that counsel for one of the parties is not available April 22 through April 24, 2020. Accordingly, the Oversight Board requests the Court adjourn the hearing to a date between April 27 and May 6, 2020.[14]

23. The Oversight Board does not agree that the "most efficient approach" would be to reschedule the March 4 Hearing to the same date as the 9019 hearing[15] and the Court has previously ruled as much. [Case No. 19-00396-LTS; ECF No. 76] at 3. It would instead be more efficient

---

[14] As noted (Creditor Response n.8), the Fuel Line Lenders and Union Entities have agreed that they will not amend the complaints in the Adversary Proceedings until after the motion to dismiss hearings.

[15] *Contra* Creditor Response ¶ 5.

10

for certain issues raised by the motions to dismiss to be heard *before* the 9019 Motion is heard, as it may narrow the issues for the 9019 hearing. Indeed, under the current scheduling orders, the March 4 Hearing is proceeding weeks before the 9019 hearing set to commence March 31, which schedule was the result of the Government Parties' previous request on precisely these grounds. In any event, the Court should not reschedule the March 4 Hearing to the same date as the 9019 Hearing. The Fuel Line Lenders and Union Entities did not object to a hearing proceeding in late April or early May 2020 (Creditor Response ¶ 5). If the Court adjourns the March 4 Hearing, the Oversight Board respectfully requests it be adjourned to a date between April 27 and May 6, 2020, subject to Court availability.[16]

## CONCLUSION

24. For the foregoing reasons, the Oversight Board respectfully requests the Court (a) grant the 9019 Scheduling Motion and enter the Amended Proposed Scheduling Order attached hereto as Exhibit 1 without modification and (b) set the hearing on the motions to dismiss pending in Adversary Proceeding Nos. 19-AP-396 and 19-AP-405 for a date between April 27 and May 6, 2020.

*[Remainder of page intentionally blank]*

---

[16] If none of these dates are convenient for the Court, the Oversight Board agrees to meet and confer regarding alternative dates. The Oversight Board is also available to proceed on the April 22, 2020 omnibus hearing, but understands that one of the parties is not available that day. Similarly, the Oversight Board is amenable to proceeding at the June 3 omnibus hearing if it works for the other parties and the Court. However, the Oversight Board will not consent to have the March 4 Hearing at the same time, or after the 9019 Hearing for the reasons stated in our previous filings [Case No. 19-00396-LTS; ECF No. 74] ¶¶ 13-15.

Dated: February 14, 2020

Respectfully submitted,

**PROSKAUER ROSE, LLP**

*/s/ Margaret A. Dale*

Martin J. Bienenstock
Ehud Barak
Margaret A. Dale
Gregg M. Mashberg
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900
mbienenstock@proskauer.com
ebarak@proskauer.com
mdale@proskauer.com
gmashberg@proskauer.com

-and-

Paul V. Possinger
70 W. Madison St., Suite 3800
Chicago, IL 60602
Tel: (312) 962-3550
Fax: (312) 962-3551
ppossinger@proskauer.com

-and-

**DEL VALLE EMMANUELLI LAW OFFICES**

Luis F. del Valle Emmanuelli
PO Box 79897
Carolina, PR 00984-9897
Tel: (787) 977-1932
Fax: (787) 722-1932
devlawoffices@gmail.com

*Attorneys for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Luis F. del Valle-Emmanuelli*
Luis F. del Valle-Emmanuelli