# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico, et al.,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**JOINT OBJECTION OF PSA CREDITORS TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 502 AND BANKRUPTCY RULE 3007, (A) SETTING BRIEFING SCHEDULE AND HEARING DATE FOR OMNIBUS OBJECTION TO CLAIMS FILED OR ASSERTED AGAINST COMMONWEALTH BY HOLDERS OF GENERAL OBLIGATION BONDS ASSERTING PRIORITY OVER OTHER COMMONWEALTH UNSECURED CREDITORS [DOCKET NO. 10638], (B) APPROVING FORM OF NOTICE AND (C) GRANTING RELATED RELIEF**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

BACKGROUND ..........................................................................................................................3
I. THE LITIGATION STAY AND INTERIM ORDER............................................................3
II. THE GO PRIORITY OBJECTION AND PROCEDURES MOTION ...............................4
III. THE PLAN SUPPORT AGREEMENT .............................................................................4
IV. THE AMENDED REPORT ................................................................................................6
ARGUMENT..................................................................................................................................7
I. THE GO PRIORITY OBJECTION AND PROCEDURES MOTION SHOULD
    BE STAYED....................................................................................................................7
CONCLUSION.............................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*In re Heritage Org., L.L.C.*,
 375 B.R. 230 (Bankr. N.D. Tex. 2007) .................................................................................. 9

*In re Kaiser Aluminum Corp.*,
 339 B.R. 91 (D. Del. 2006) ..................................................................................................... 9

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936) ................................................................................................................. 7

*Ramos-Martir v. Astra Merck, Inc.*,
 CIV. 05-2038(PG), 2005 WL 3088372 (D.P.R. Nov. 17, 2005) .............................................. 7

*Rivera v. Puerto Rico Tel. Co.*,
 CIV. 09-1723(JP), 2009 WL 3160839 (D.P.R. Sept. 29, 2009) ............................................... 7

*In re S. Side House, LLC*,
 470 B.R. 659 (Bankr. E.D.N.Y. 2012) .................................................................................... 7

*Taunton Gardens Co. v. Hills*,
 557 F.2d 877 (1st Cir. 1977) ............................................................................................. 7, 8

## **Rules and Regulations**

Bankruptcy Code Section 105(a) ................................................................................................ 1, 7

Bankruptcy Code Section 502 .................................................................................................... 1, 4

Bankruptcy Rule 3007 ................................................................................................................ 1, 4

PROMESA § 301(a) ...................................................................................................................... 7

PROMESA § 2121(a) .................................................................................................................. 10

To the Honorable United States District Court Judge Laura Taylor Swain:

The Ad Hoc Group of Constitutional Debtholders (the "Constitutional Debt Group"),[2] Ad Hoc Group of General Obligation Bondholders (the "GO Group"),[3] Lawful Constitutional Debt Coalition (the "LCDC"),[4] and the QTCB Noteholder Group (the "QTCB Group,"[5] and collectively with the Constitutional Debt Group, GO Group, and LCDC, the "PSA Creditors") hereby file this objection to the *Motion of Official Committee of Unsecured Creditors for Order, Pursuant to Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, to (A) Setting Briefing Schedule and Hearing Date for Omnibus Objection to Claims Filed or Asserted Against Commonwealth by Holders of General Obligation Bonds Asserting Priority Over Other Commonwealth Unsecured Creditors [Docket No. 10638], (B) Approving Form of Notice and (C) Granting Related Relief* (ECF No. 10754) (the "Procedures Motion"),[6] and respectfully state as follows:

1. After years of contentious, time-consuming and costly litigation, characterized by the Court more than two years ago as "a litigation machine unprecedented in the history of man [] and woman," (Aug. 9, 2017 Hr'g Tr. at 208:18-20), the Financial Oversight and Management

---

[2] The members of the Constitutional Debt Group and their respective holdings are set forth in the *Fifth Supplemental Verified Statement of the Ad Hoc Group of Constitutional Debtholders Pursuant to Federal Rule of Bankruptcy Procedure 2019* (ECF No. 10742).

[3] The members of the GO Group and their respective holdings are set forth in the *Fifth Supplemental Verified Statement of the Ad Hoc Group of General Obligation Bondholders Pursuant to Bankruptcy Rule 2019* (ECF No. 5444).

[4] The members of the LCDC and their respective holdings are set forth in the *Fifth Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure 2019* filed contemporaneously hereto.

[5] The members of the QTCB Group and their respective holdings are set forth in the *Fourth Supplemental Verified Statement of the QTCB Noteholder Group Pursuant Bankruptcy Rule 2019* (ECF No. 8618).

[6] Capitalized terms not defined herein shall have the meanings ascribed to them in the Procedures Motion.

1

Board for Puerto Rico (the "Oversight Board" or "FOMB") has, with the assistance and dedication of the mediation team appointed by the Court in these Title III Cases (the "Mediation Team"), reached agreement with creditors holding a majority of debt issued or guaranteed by the Commonwealth of Puerto Rico (the "Commonwealth," and such debt, the "Constitutional Debt Claims") that would see the Commonwealth emerge from Title III by year's end. The new Plan Support Agreement, dated February 9, 2020 (the "New PSA"), by and among the Oversight Board and holders of more than $8 billion in Constitutional Debt Claims, provides a framework for a confirmable plan of adjustment that settles all outstanding disputes in connection with the Constitutional Debt Claims, including the validity, priority, and secured status of such claims. The issues raised in the Committee's GO Priority Objection are among those that will be settled pursuant to the upcoming plan of adjustment (the "Amended Plan").

2.  In light of these developments, and consistent with the Mediation Team's *Amended Report and Recommendation* (ECF. No. 10756) (the "Amended Report"), the PSA Creditors respectfully request that the Court (i) stay Constitutional Debt Claims-related litigation identified in the Amended Report, including the Procedures Motion, and (ii) otherwise stay consideration of the Procedures Motion pending confirmation of the Amended Plan. The Mediation Team's recommendation is sound; to require parties to engage in voluminous briefing, provide notice to tens of thousands of parties (at great expense to the Commonwealth), and set a hearing on the Committee's GO Priority Objection (as defined herein) would be a misallocation of time and Commonwealth's, judicial, and private resources, especially when a confirmable plan of adjustment settling such issues will be filed in very short order.

**BACKGROUND**

**I.  THE LITIGATION STAY AND INTERIM ORDER**

3.  On July 24, 2019, the Court entered its *Order Regarding Stay Period and Mandatory Mediation* (ECF No. 8244) (the "Stay Order"), which stayed, among other things, all litigation concerning the validity, priority, and secured status of all Constitutional Debt Claims. On October 28, 2019, the Court entered its *Order Granting Urgent Joint Motion of Oversight Board and AAFAF for Order Extending (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* (ECF No. 9016), pursuant to which the stay was extended until December 31, 2019.

4.  On November 27, 2019, in its *Interim Report and Recommendation of the Mediation Team* (ECF No. 9365) (the "Interim Report"), the Mediation Team explained that it was appropriate at the time to address the scheduling and sequencing of only certain disputed issues, and that the Mediation Team would file a more extensive amended report at a later date. On December 19, 2019, the Court entered an order (ECF No. 9618) (the "Bridge Order") adopting the structure laid out in the Interim Report and requiring the Mediation Team to file an amended report by January 10, 2020. That deadline was subsequently extended to February 10, 2020. *See* ECF No. 9639.

5.  In connection with the Interim Report, the Court entered the *Interim Case Management Order* (ECF No. 9619) (the "Interim Order") on December 19, 2019. The Interim Order set forth a litigation schedule for: (i) all omnibus claim objections disputing the validity and priority of claims related to Constitutional Debt Claims (the "Constitutional Debt Claim Objections"); (ii) the Clawback Litigation and Underwriter Litigation (as those terms are defined in the Interim Order); and (iii) the adversary proceedings challenging the validity of liens issued by the Commonwealth in favor of the holders of Constitutional Debt Claims (the "GO Lien

Challenges").[7] Pursuant to the Interim Order, the stay was lifted on litigation of the Constitutional Debt Claim Objections and the GO Lien Challenges and various motions to dismiss such litigation have been filed.

## II. THE GO PRIORITY OBJECTION AND PROCEDURES MOTION

6. On February 3, 2020, the Official Committee of Unsecured Creditors (the "Committee") filed the *Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of General Obligation Bonds Asserting Priority Over Other Commonwealth Unsecured Creditors* (ECF No. 10638) (the "GO Priority Objection"). The GO Priority Objection seeks to reclassify all Constitutional Debt Claims as general unsecured claims by stripping the underlying bonds of their constitutional priority.

7. The Committee filed the Procedures Motion on February 9, 2020. It seeks an order (i) approving the form and manner of notice for the GO Priority Objection and (ii) setting a briefing schedule whereby the GO Priority Objection would be fully briefed by May 22, 2020, and would be heard by this Court on June 3, 2020. The Committee argues that the GO Priority Objection "raises a discrete issue of law" and that "[t]here is no need for discovery, or even any factual inquiry" regarding the issue. Proc. Mot. ¶ 4. Therefore, the Committee argues, "the GO Priority Objection is ripe for dispositive briefing at this time." *Id.*

## III. THE PLAN SUPPORT AGREEMENT

8. On February 9, 2020, the Oversight Board announced that it had reached agreement with the PSA Creditors on the terms of a New PSA, which will form a foundation for a plan of

---

[7] Also in connection with the Interim Report, the Court entered the *Interim Case Management Order For Revenue Bonds* (as amended on January 31, 2020, the "Interim Revenue Bonds Order") (ECF No. 10595) setting forth a litigation schedule for various litigations concerning the rights of holders of revenue bonds issued by Commonwealth instrumentalities.

4

adjustment for the Commonwealth of Puerto Rico and certain of its instrumentalities and facilitate the Commonwealth's emergence from Title III. *See Oversight Board Reaches New, More Favorable Agreement to Restructure $35 Billion of Liabilities*, https://oversightboard.pr.gov/oversight-board-reaches-new-more-favorable-agreement-to-restructure-35-billion-of-liabilities/.

9. The New PSA is the product of months of hard-fought negotiations between the FOMB and a critical mass of Commonwealth bondholders (who among themselves have litigated disputes concerning the relative rights between and among different issuances of bonds). The global settlement embodied in the New PSA, includes a settlement of one of the most contentious issues in these cases, *i.e.*, the priority of the public debt.

10. According to the Oversight Board's statement, the New PSA provides numerous significant benefits to the Commonwealth. It:

- Reduces $35 billion of the Commonwealth's debt and other liabilities by 70%, or $24 billion, to less than $11 billion;

- Reduces the Commonwealth's aggregate debt service (including principal and interest from the COFINA Senior Lien Bonds) by 56%, to $39.7 billion from $90.4 billion;

- Contemplates the complete extinguishment of the Commonwealth's legacy debt in 20 years;

- Provides for the compromise and settlement of certain complex, interrelated litigation, thereby allowing the Oversight Board and the affected creditors to eliminate the risk of costly and time-consuming litigation and focus their efforts on confirming and consummation of a plan of adjustment;

- Envisions emergence from Title III before the end of 2020, which will generate significant Title III-related expense savings and create opportunity for new business and capital formation for the Commonwealth.

**IV.  THE AMENDED REPORT**

11. On February 10, 2020, the Mediation Team filed its Amended Report hailing the New PSA as a "Significant Development" and noting that the agreement among the Oversight Board and holders of more than $8 billion in Constitutional Debt Claims "has now been reduced to writing in the form of" the New PSA. The Mediation Team explained that the Oversight Board will "file, not later than February 28, 2020, an amended plan of adjustment for the Commonwealth of Puerto Rico and PBA … that contains terms consistent with the New PSA and through which the FOMB will propose a global settlement of all issues in dispute among all GO/PBA bondholders, holders of PRIFA BANs, the FOMB, the Commonwealth of Puerto Rico, and the PBA, including the validity, priority, and secured status of GO/PBA/PRIFA BANs claims, in exchange for the consideration proposed in the Amended Plan." Amended Report at 8.

12. The Amended Report recommended that the Interim Order "be set aside such that no further deadlines set forth in such order … need be complied with by any party" and that "any other pending and not yet filed adversary proceedings and contested matters relating to validity, priority, and secured status of the GO/PBA/PRIFA BANs claims be stayed pending a decision on confirmation of the Amended Plan." *Id.* at 8-9. The Mediation Team explained that these litigations should be stayed to give the Oversight Board "the opportunity to attempt to confirm the Amended Plan before any party is required to expend further funds in litigation of the disputes being settled, " adding that "[t]o continue forward with the litigation schedule set forth in the [Interim Order] … under the changed circumstances just discussed is a waste of both judicial and party resources." *Id*. at 8. The Amended Report lists the GO Priority Objection and the Procedures Motion among matters that should be stayed, because the issues raised are to be compromised and settled under the Amended Plan. *Id.* at n.9.

6

13. The Amended Report outlines a comprehensive schedule for confirmation of the Amended Plan. The schedule proposes October 13-23, 2020 for confirmation, and lists among issues to be decided at confirmation "[a]ny challenges to the classification of claims in the Amended Plan" and "[a]ny challenges to the reasonableness of the GO/PBA settlement(s) set forth in the Amended Plan" *Id.* at 24-25. A hearing on the Amended Report is scheduled for March 4, 2020, the day that the Court is set to address the Procedures Motion.

## ARGUMENT

### I. THE GO PRIORITY OBJECTION AND PROCEDURES MOTION SHOULD BE STAYED

14. As the Mediation Team recommends, the Court should stay consideration of the GO Priority Objection and the Procedures Motion pending confirmation of the Amended Plan. A court's "inherent authority" to "control the disposition of its cases" includes the power to stay proceedings before it. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also In re S. Side House, LLC*, 470 B.R. 659, 684 (Bankr. E.D.N.Y. 2012) (Court's "inherent authority" to stay proceedings is also recognized by section 105(a) of the Bankruptcy Code, which is expressly incorporated into PROMESA § 301(a)). This Court has "considerable discretion in weighing the competing interests" in deciding whether to grant a stay, and should consider (i) the duration of the stay requested, (ii) the conservation of judicial resources, (iii) the prejudice faced by the parties if a stay is, or is not, entered, and (iv) the public interest. *See, e.g., Rivera v. Puerto Rico Tel. Co.*, CIV. 09-1723 (JP), 2009 WL 3160839, at *1 (D.P.R. Sept. 29, 2009) (citing *Taunton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977)); *Ramos-Martir v. Astra Merck, Inc.*, CIV. 05-2038 (PG), 2005 WL 3088372, at *1 (D.P.R. Nov. 17, 2005). Here, all factors militate in favor of a stay.

15. **First**, the requested stay is limited in time. As noted in the Amended Report, the New PSA requires the Oversight Board to file the Amended Plan within the next several weeks. Amended Report at 8. The Amended Plan "will propose a global settlement of" all disputes

7

concerning the "validity, priority, and secured status of GO/PBA/PRIFA BANs claims," including the dispute raised in the GO Priority Objection. *See id.* at 8-9 & n.9. Under the Amended Report and the FOMB's solicitation procedures motion (to be filed with the Amended Plan), a disclosure statement hearing will take place in early June with a confirmation hearing on the Amended Plan to occur by mid-October. At worst, a party in interest with standing to assert the GO priority litigation would have to wait approximately 8 months. *Taunton Gardens*, 557 F.2d at 879 (stay appropriate where "the duration … is adequately circumscribed").

16. **Second**, it would waste judicial and party resources to litigate GO-related issues, like the GO Priority Objection, while a plan of adjustment that seeks to settle such issues is prosecuted to confirmation. *See* Amended Plan at 8. The stay recommended by the Mediation Team would allow the parties to the New PSA to focus time and energy on resolving disputes critical to confirmation of the Plan,[8] and garnering additional support for the New PSA.

17. A stay will manifestly conserve the time and resources of the Court, while prosecuting the GO Priority Objection as proposed in the Procedures Motion would be an academic exercise, wasting resources litigating claims that the Oversight Board has agreed to settle as part of the New PSA and Amended Plan. *See Memorandum Order Terminating Objection of Official Committee of Unsecured Creditors to Proof of Claim Number 18499 Filed by U.S. Bank National Association, in Its Capacity as Trustee for Non-Recourse PREPA Bonds*, Case No. 17-4780 (ECF No. 1855) (the "PREPA Order") at 6 ("A requirement that the Court resolve claim objections prior to approving a settlement would 'undermine the important policy of promoting

---

[8] For instance, the Amended Report does not seek to set aside the litigation schedule set forth in the Interim Revenue Bonds Order, and in fact includes a more robust litigation schedule for certain of the threshold issues raised in those litigations as issues that must be resolved prior to confirmation of the Amended Plan because such issues are not settled under the Amended Plan, but may have a crucial impact on its confirmability.

8

settlements in bankruptcy proceedings by requiring the parties to litigate the very issues that the settlement seeks to resolve.'") (quoting *In re Kaiser Aluminum Corp.*, 339 B.R. 91, 94 (D. Del. 2006)).

18. **Third**, the stay will not prejudice the Committee, which can raise the issues in the GO Priority Objection in connection with confirmation of the Amended Plan. The Amended Report specifically includes among the issues to be addressed at confirmation (i) the classification of claims and (ii) the reasonableness of the settlement of all claims related to Constitutional Debt. *Id.* at 25. The GO Priority Objection falls squarely within both categories, as its challenge to the priority of Constitutional Debt is settled under the Amended Plan, and the constitutional priority that the GO Priority Objection seeks to contest will be reflected in the Amended Plan's classification provisions.

19. At bottom, the Committee cannot demonstrate prejudice to overcome the obvious efficiency of the Mediation Team's recommendation. As this Court recognized in PREPA, a party in interest does not suffer a cognizable harm when the trustee exercises its statutory prerogative to compromise disputes, provided that it receives an opportunity to object to that settlement in due course. *See* PREPA Order ("While any party in interest has a statutory right to object to a claim, the Trustee, as the representative of the estate, has the ability to compromise that objection, as long as the objectant is given notice and an opportunity to be heard with respect to the fairness and wisdom of the compromise.") (citing *In re Heritage Org., L.L.C.*, 375 B.R. 230, 285 (Bankr. N.D. Tex. 2007). The Committee will have an opportunity to challenge the settlement embodied in the Amended Plan in the context of confirmation.[9] All parties' rights are preserved and the proposed stay would terminate if the Amended Plan is not confirmed. *See id.* at 10.

---

[9] While the Committee is currently taking the position that its GO Priority Objection may be decided without discovery (Proc. Mot. ¶ 4), the Amended Report nevertheless provides a lengthy period

9

20. **Finally**, the stay is manifestly in the public interest. After nearly 3 years of contentious and costly litigation, the New PSA provides a framework for the Commonwealth and PBA to exit Title III by year's end. The FOMB and the PSA Creditors believe that the Amended Plan is in the best interests of Puerto Rico, its citizens and its creditors. It provides for fair distributions to creditors and will help Puerto Rico achieve fiscal responsibility and access the capital markets—the twin goals of PROMESA. PROMESA § 2121(a).

21. At the appropriate time, the PSA Creditors will demonstrate the merits of the New PSA and underlying settlements. For now it is sufficient to note that the Committee is seeking to litigate an issue out of turn. The Court referred these cases to mediation in order to streamline resolution of crucial issues and develop, if possible, a more consensual plan of adjustment. Now that such a consensus has been reached, it is time to proceed with solicitation, confirmation, and a potential exit from Title III. Any litigation that detracts from or interferes with efforts to prosecute the Amended Plan to a successful and consensual confirmation—including the GO Priority Objection—should be stayed pending the Court's consideration on confirmation of the Amended Plan.

---

(75-90 days) for potential plan objectors to seek discovery relevant to confirmation of the Plan. Amended Report at 23-24.

## **CONCLUSION**

WHEREFORE, the PSA Creditors respectfully request that the Court enter an Order staying the Procedures Motion and the GO Priority Objection in a manner consistent with the Amended Report, and grant any other and further relief as is just and proper.

DATED: February 18, 2020

Respectfully submitted,

| | |
|---|---|
| REICHARD & ESCALERA | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| **By :** */s/ Rafael Escalera*<br>**Rafael Escalera**<br>USDC No. 122609<br>escalera@reichardescalera.com | **Susheel Kirpalani** (*pro hac vice*)<br>susheelkirpalani@quinnemanuel.com |
| **Sylvia M. Arizmendi**<br>USDC-PR 210714<br>arizmendis@reichardescalera.com | **K. John Shaffer** (*pro hac vice*)<br>johnshaffer@quinnemanuel.com |
| | **Daniel Salinas**<br>USDC-PR 224006<br>danielsalinas@quinnemanuel.com |
| **Carlos R. Rivera-Ortiz**<br>USDC-PR 303409<br>riverac@reichardescalera.com | **Eric Kay** (*pro hac vice*)<br>erickay@quinnemanuel.com |
| 255 Ponce de León Avenue<br>MCS Plaza, 10th Floor<br>San Juan, Puerto Rico 00917-1913 | **Zachary Russell** (*pro hac vice*)<br>zacharyrussell@quinnemanuel.com |
| | 51 Madison Avenue, 22nd Floor<br>New York, New York 10010-1603 |

*Co-Counsel for the Lawful Constitutional Debt Coalition*

11

| | |
|---|---|
| **G. CARLO-ALTIERI LAW OFFICES, LLC** | **MORRISON & FOERSTER LLP** |
| By: */s/ Gerardo A. Carlo* <br> Gerardo A. Carlo <br> USDC PR No. 112009 <br> Telephone: (787) 247-6680 <br> gacarlo@carlo-altierilaw.com | By: */s/ Gary S. Lee* <br> James M. Peck (admitted *pro hac vice*) <br> Gary S. Lee (admitted *pro hac vice*) <br> James A. Newton (admitted *pro hac vice*) <br> Andrew R. Kissner (admitted *pro hac vice*) <br> 250 West 55th Street |
| By: */s/ Mª Mercedes Figueroa y Morgade* <br> Mª Mercedes Figueroa y Morgade <br> USDC PR No. 207108 <br> Telephone: (787) 234-3981 <br> figueroaymorgadelaw@yahoo.com | New York, New York 10019 <br> Telephone: (212) 468-8000 <br> Facsimile: (212) 468-7900 <br> jpeck@mofo.com <br> glee@mofo.com <br> jnewton@mofo.com |
| 254 San Jose St., Third Floor <br> San Juan, Puerto Rico 00901 <br> Telephone: (787) 247-6680 <br> Facsimile: (787) 919-0527 | akissner@mofo.com |

*Counsel for the Ad Hoc Group of Constitutional Debtholders*

Respectfully submitted,

| | |
|---|---|
| /s/ *Ramón Rivera Morales* | /s/ *Mark T. Stancil* |
| J. Ramón Rivera Morales | Mark T. Stancil (admitted *pro hac vice*) |
| USDC-PR Bar No. 200701 | WILLKIE FARR & GALLAGHER LLP |
| Andrés F. Picó Ramírez | 1875 K Street, N.W. |
| USDC-PR Bar No. 302114 | Washington, DC 20006 |
| JIMÉNEZ, GRAFFAM & LAUSELL | Telephone: (202) 303-1133 |
| P.O. Box 366104 | Facsimile: (202) 303-2133 |
| San Juan, PR 00936 | Email: mstancil@willkie.com |
| Telephone: (787) 767-1030 | |
| Facsimile: (787) 751-4068 | |
| Email: rrivera@jgl.com | |

| | |
|---|---|
| /s/ *Andrew N. Rosenberg* | /s/ *Lawrence S. Robbins* |
| Andrew N. Rosenberg (admitted *pro hac vice*) | Lawrence S. Robbins (admitted *pro hac vice*) |
| Karen R. Zeituni (admitted *pro hac vice*) | Gary A. Orseck (admitted *pro hac vice*) |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | Donald Burke (admitted *pro hac vice*) |
| 1285 Avenue of the Americas | ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP |
| New York, NY 10019 | 2000 K Street, N.W., 4th Floor |
| Telephone: (212) 373-3000 | Washington, DC 20006 |
| Email: arosenberg@paulweiss.com | Telephone: (202) 775-4500 |
| | Facsimile: (202) 775-4510 |
| | Email: lrobbins@robbinsrussell.com |

*Co-Counsel for the Ad Hoc Group of General Obligation Bondholders*

13

| | |
|---|---|
| Morgan, Lewis & Bockius LLP | Correa-Acevedo & Abesada Law Offices, PSC |
| | |
| */s/ Kurt A. Mayr* | Sergio Criado |
| Kurt A. Mayr (admitted pro hac vice) | USDC-PR No. 226307 |
| David L. Lawton (admitted pro hac vice) | |
| Shannon B. Wolf (admitted pro hac vice) | Roberto Abesada-Agüet |
| One State Street | USDC-PR No. 216706 |
| Hartford, CT 06103-3178 | Centro Internacional de Mercadeo, Torre II |
| Tel. (860) 240-2700 | # 90 Carr. 165, Suite 407 |
| Fax: (860) 240-2701 | Guaynabo, P.R. 00968 |
| kurt.mayr@morganlewis.com | Tel. (787) 273-8300 |
| david.lawton@morganlewis.com | Fax (787) 273-8379 |
| shannon.wolf@morganlewis.com | ra@calopsc.com |
| | scriado@calopsc.com |

Sabin Willett (pro hac vice pending)
One Federal Street
Boston, MA 02110-1726
Tel: (617) 951-8775
sabin.willett@morganlewis.com

*Co-Counsel for the QTCB Noteholder Group*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

*/s/Carlos R. Rivera-Ortiz*
USDC-PR 303409

15