**Hearing Date: March 4, 2020 at 9:30 a.m. (Atlantic Standard Time)**

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>Re: ECF Nos. 10756,<br>10808, and 10839<br><br>(Jointly Administered) |

## THE PUERTO RICO FISCAL AGENCY
## AND FINANCIAL ADVISORY AUTHORITY'S (I) OBJECTION TO THE
## FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO'S
## (A) MOTION TO SCHEDULE A DISCLOSURE STATEMENT HEARING
## [ECF NO. 10808] AND (B) MOTION TO ESTABLISH PRE-SOLICITATION
## PROCEDURES [ECF NO. 10839]; AND (II) RESPONSE TO THE AMENDED
## REPORT AND RECOMMENDATION OF THE MEDIATION TEAM [ECF NO. 10756]

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on its own behalf and as the entity authorized under Act No. 2 of January 18, 2017 to act on behalf of the government of Puerto Rico (the "Government") and all of Puerto Rico's governmental entities—including the Commonwealth, ERS, and PBA—respectfully submits this (I) objection (the "Objection") to (a) the *Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Spanish Translation of the Disclosure Statement, (III) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, and (IV) Granting Related Relief*, dated February 11, 2020 [ECF No. 10808] (the "Disclosure Statement Motion"),[2] filed by the Oversight Board, and (b) the *Motion of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for an Order (A) Establishing Pre-Solicitation Procedures for Certain Holders of Retirement Benefit Claims, (B) Establishing Procedures and Deadlines for Submission of Information Necessary for Solicitation of Acceptance or Rejection of Plan of Adjustment by Such Claimants, and (C) Approving Form and Manner of Notice Thereof*, dated February 11, 2020 [ECF No. 10839] (the "Pre-Solicitation Procedures Motion" and together with the Disclosure Statement Motion, the "Motions"), filed by the Oversight Board; and (II) response (the "Response") to the *Amended Report and Recommendation of the Mediation Team*, dated February 10, 2020 [ECF No. 10756] (the "Amended Report"), filed by The Honorable Barbara J. Houser on behalf of the Mediation Team. In support of this Objection and Response, AAFAF respectfully states as follows:

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement Motion.

## PRELIMINARY STATEMENT

1. On February 9, 2020, the Oversight Board disclosed that it reached a "global settlement" with holders of certain GO Bond Claims and PBA Bond Claims and that it had entered into the PSA. Although the Oversight Board touts its achievement as "a significant step towards the successful confirmation of a plan of adjustment for the Debtors and their exit from these Title III cases," *see* Disclosure Statement Motion ¶ 1, it does not mention that the elected Government of Puerto Rico does not support a plan based on the PSA because the Government has concluded that the current terms—standing alone—are not in the best interests of the people of Puerto Rico. And, without Government support for the PSA and Amended Plan, the Amended Plan cannot become reality.

2. Since the filing of the Initial Plan and Initial Disclosure Statement on September 27, 2019, Governor Wanda Vázquez-Garced and AAFAF have carefully evaluated and considered its terms and consequences for the people of Puerto Rico. Throughout the process, the Governor has been clear that if bondholders receive improved treatment under any agreement, then a group of Puerto Rico's most vulnerable citizens—its pensioners—should also receive improved benefits "as a matter of basic justice."[3] Under the current PSA, pensioners will not receive improved benefits as compared to their treatment in the Initial Plan. Instead, the Oversight Board has agreed to a PSA that enhances the legal and security package for bondholders without enhancing the treatment of pensioners in this Title III process. As a result, the Governor has concluded that supporting an Amended Plan based on the PSA, under its current terms, is not in the best interests of Puerto Rico.

---

[3] Press Release, "Declaraciones de la gobernadora Wanda Vázquez Garced sobre el acuerdo anunciado entre la Junta de Supervisión Fiscal y un grupo de bonistas," (Feb. 9, 2020), *available at* http://www.aafaf.pr.gov/assets/cp-declar-gob-wanda-vazquez-02-09-20.pdf (last visited Feb. 14, 2020).

2

3. The Oversight Board now seeks to prematurely begin a costly and time-consuming confirmation process on an Amended Plan (which has not yet been filed) that is simply not feasible without Government support. Unless the Oversight Board clearly articulates how it proposes to confirm the Amended Plan without Government support and cooperation, any confirmation schedule is patently premature. As such, the Court should reject the Oversight Board's disclosure statement and plan confirmation schedule and deny the relief sought in the Motions. For the same reasons, the Court should not adopt the schedule proposed in the Amended Report.

## OBJECTION AND RESPONSE

4. The Motions and Amended Report seek Court approval of a nine-month plan confirmation process that will require substantial time and resources of the Court and all parties in interest. It is a virtual certainty that the burden of information sharing and intense discovery during that process will fall directly on the Government. In the Pre-Solicitation Procedures Motion, the Oversight Board seeks to establish procedures for obtaining updated information from potential retirement benefit claimants so that the Oversight Board can prepare to solicit its yet-to-be-filed Amended Plan. In the Disclosure Statement Motion, the Oversight Board seeks a scheduling order to determine the adequacy of its yet-to-be-filed Amended Disclosure Statement. And in the Amended Report, the Mediation Team has proposed a scheduling order for certain outstanding contested creditor matters so that the issues can be resolved within the Oversight Board's recommended confirmation schedule, which proposes an October 2020 confirmation hearing.[4] In short, the relief sought in the Motions and the confirmation schedule contemplated in the Amended

---

[4] Although the Mediation Team "express[ed] no view on the [Oversight Board's] proposed confirmation schedule," the Mediation Team noted that it "has not had the opportunity to discuss the proposed schedule with [the Oversight Board] and would want to do so before making any scheduling recommendations of its own." Amended Report at 24-25.

3

Report would initiate a confirmation process for an Amended Plan that does not yet exist and is not feasible without the Government's support.

5. As discussed below, AAFAF objects to the Oversight Board's attempt to initiate this plan confirmation process because (i) the Amended Plan (once filed) will be facially unconfirmable; (ii) starting the confirmation process now with a fundamentally flawed Amended Plan is an inefficient use of time and resources; and (iii) the process is premature because the Amended Plan does not yet exist.

### A. The Plan is Facially Unconfirmable Under PROMESA Section 314(b).

6. The establishment of a plan confirmation schedule at this stage would be futile because the Amended Plan—which must be consistent with the PSA—cannot possibly be confirmed under PROMESA's plan confirmation requirements. PROMESA section 314(b)(5) expressly requires the Court to find that plan proponents have obtained "any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan." Because the Oversight Board does not have Government support to pass the new legislation contemplated in the PSA, the Oversight Board cannot show, and the Court thus could not find, that this confirmation requirement will be satisfied. The inquiry should stop there.

7. But the Amended Plan also cannot possibly be feasible without Government support. PROMESA section 314(b)(6) requires the Court to find that the plan is "feasible and in the best interests of creditors." A plan can only be feasible if, among other things, the debtor demonstrates a commitment to implementing the terms of the plan. *See In re City of Detroit*, 524 B.R. 147, 241-244 (Bankr. E.D. Mich. 2014) (finding that Detroit's plan of adjustment was feasible because, among other things, the city's elected officials were capable of and committed to implementing the terms of the plan of adjustment). This is especially true where implementation of the proposed plan of adjustment requires actions that can be completed exclusively by the

4

elected Government, such as the enactment of new legislation. As this Court has made clear, PROMESA section 303 preserved the Government's political and governmental powers over the Commonwealth, such that "PROMESA neither abrogated the Commonwealth government's power to legislate nor vested the Oversight Board with such legislative authority." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 390 F.Supp.3d 311, 321 (D.P.R. 2019); *see also In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 330 F.Supp.3d 685, 701 (D.P.R. 2018) (("[T]he Oversight Board has not been given power to affirmatively legislate. Thus, with respect to policy measures that would require the adoption of new legislation or the repeal or modification of existing Commonwealth law, the Oversight Board has only budgetary tools and negotiations to use to elicit any necessary buy-in from the elected officials and legislators."). Therefore, in order for any plan of adjustment to be feasible, the Court must find that the Government supports all legislative and public policy measures required to implement the plan.

8. Both the Initial Plan and the PSA expressly require affirmative legislation to issue the new bonds necessary to provide the plan compensation to certain creditor classes. For example, section 56.1(e) of the Initial Plan requires the Government to pass "New Bond Legislation necessary to implement the terms and provisions of the Plan" as a condition precedent to the effective date of the Plan. Similarly, section 4.2 of the PSA states that the Commonwealth must use "its reasonable best efforts to cause the Legislature to enact, and the Governor to execute, the legislation required for the issuance of the New GO Bonds and the COFINA Junior Lien Bonds and to facilitate confirmation and consummation of the Plan." In fact, at a press conference held on February 10, 2020, the Oversight Board's Executive Director Natalie Jaresko admitted that new legislation would be required to issue both the new GO bonds and the new COFINA junior bonds

5

contemplated under the PSA.[5] Because this new legislation must be enacted prior to the effective date, the Amended Plan cannot become effective without the Government's support.

9. Neither the Initial Plan, the PSA nor the Amended Plan have the support of the elected Government of Puerto Rico sufficient to achieve the required legislation. On February 9, 2020, the Governor indicated that she would not support the Amended Plan because the terms of the PSA are not in the best interests of Puerto Rico's most vulnerable residents.[6] The Government has made abundantly clear that it will not support any plan proposal that it concludes is not in the best interest of the people of Puerto Rico and, without Government support to enact necessary legislation, the Amended Plan simply cannot be feasible on its face. Thus, any Amended Plan that includes the terms of the PSA without addressing at least an enhanced treatment of pension claims will be fundamentally flawed and unconfirmable because it will fail PROMESA's feasibility requirement and the requirement to obtain necessary legislative approvals.

### B. Commencement of the Plan Confirmation Process with a Fundamentally Flawed Plan is an Inefficient Use of Time and Resources.

10. Embarking on a long, nine-month confirmation process based on a fundamentally flawed Amended Plan that cannot be confirmed without Government support would waste precious resources, time and energy. This is not a chapter 11 case where simply driving the confirmation process forward is often used as an effective debtor tactic to corral creditor support. In a Title III case, the cost to Puerto Rico of pressing forward on a plan of adjustment without Government support is significant. Unlike a chapter 11 case where the debtor-in-possession is

---

[5] *See* "The Board Sticks to its New Adjustment Plan," El Nuevo Dia (Feb. 11, 2020), *available at* https://www.elnuevodia.com/english/english/nota/theboardstickstoitsnewadjustmentplan-2546213/ (last visited Feb. 18, 2020) ("Jaresko acknowledged that to implement the central government's adjustment plan, it will be necessary to file a bill with the Legislative Assembly.").

[6] *See* "Puerto Rico Governor Rejects New Deal to Cut Debt by 70%," The Associated Press (Feb. 9, 2020), *available at* https://apnews.com/b2072a598b2a525720578e137f230f87 (last visited Feb. 18, 2020).

6

responsible for both funding the confirmation process and driving it forward, PROMESA gives the Oversight Board control of the process but the cost is borne by the people of Puerto Rico. The Court should not permit the Oversight Board to waste Puerto Rico taxpayer funds to seek confirmation of a fundamentally flawed Amended Plan that, as of now, is doomed to fail because it does not have Government support.

### C. Commencement of the Plan Confirmation Process at this Time is Also Premature Because the Amended Plan Does Not Exist.

11. The Oversight Board's desire to establish a disclosure statement hearing and pre-solicitation procedures as requested in the Motions and a broader plan confirmation timeline as requested in the Amended Report is premature. In its Motions, the Oversight Board notes that the PSA requires the filing of an Amended Plan and Amended Disclosure Statement on or before February 28, 2020 to reflect the terms of the PSA. *See* Disclosure Statement Motion ¶¶ 3, 6; Pre-Solicitation Procedures Motion at n.3; *see also* Amended Report at 22. However, as of the Motions' objection deadline, neither the Amended Plan nor Amended Disclosure Statement is on file. Instead of rushing to the Court to set a disclosure statement hearing before the subject disclosure statement is even on file, the Oversight Board should first file its Amended Plan and Amended Disclosure Statement so that parties in interest can consider its terms and more appropriately weigh whether the proposed schedule is reasonable under the circumstances.

12. To be clear, the Government does not object to keeping the Title III process moving forward and, like the Oversight Board, desires an expeditious resolution of these Title III cases. But the Government opposes an expensive, futile plan confirmation process without the Government's support for all required legislation under the PSA and without the Amended Plan on file for the parties to evaluate.

7

## CONCLUSION

13. For these reasons, the relief requested in each of the Motions should be denied and the scheduling of other contested matters in the Amended Report should not be based on the Oversight Board's flawed and inefficient plan confirmation schedule. The Court should not allow the plan confirmation process to begin until the Oversight Board and Government can agree on a plan proposal that serves the interests of the people of Puerto Rico—the most important constituency in these Title III cases.

[*Remainder of Page Intentionally Left Blank*]

Dated: February 19, 2020
San Juan, Puerto Rico

Respectfully submitted,

| | |
|---|---|
| */s/ John J. Rapisardi* | */s/ Luis C. Marini-Biaggi* |
| John J. Rapisardi | Luis C. Marini-Biaggi |
| Suzzanne S. Uhland | USDC No. 222301 |
| Nancy A. Mitchell | Email: lmarini@mpmlawpr.com |
| (Admitted *Pro Hac Vice*) | |
| **O'MELVENY & MYERS LLP** | Carolina Velaz-Rivero |
| 7 Times Square | USDC No. 300913 |
| New York, NY 10036 | Email: cvelaz@mpmlawpr.com |
| Telephone: (212) 326-2000 | |
| Facsimile: (212) 326-2061 | **MARINI PIETRANTONI MUÑIZ LLC** |
| Email: jrapisardi@omm.com | 250 Ponce de León Ave., Suite 900 |
| suhland@omm.com | San Juan, Puerto Rico 00918 |
| nmitchell@omm.com | Tel: (787) 705-2171 |
| | Fax: (787) 936-7494 |
| -and- | |
| | *Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |
| Peter Friedman | |
| (Admitted *Pro Hac Vice*) | |
| 1625 Eye Street, NW | |
| Washington, DC 20006 | |
| Telephone: (202) 383-5300 | |
| Facsimile: (202) 383-5414 | |
| Email: pfriedman@omm.com | |

*Attorneys for the Puerto Rico
Fiscal Agency and Financial
Advisory Authority*

9