**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br><br>*Debtors.*[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

<u>**NOTICE OF HEARING ON JOINT MOTION REQUESTING DISMISSAL OF "OMNIBUS OBJECTIONS" TO CLAIMS FILED OR ASSERTED BY HOLDERS OF CERTAIN COMMONWEALTH GENERAL OBLIGATION BONDS**</u>
**(Related Dockets No. 4784, and 9730)**

---

[1] The Debtors in these Title III Cases, along with each debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are 9i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of federal Tax ID: 3481); (ii) Puerto Rico Sales tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**Hearing Date: April 30, 2020 at 10:00 a.m. (AST) / (ET)**
**Objection Deadline: March 18, 2020 at 5:00 p.m. (AST) / (ET)**

**PLEASE TAKE NOTICE** that a hearing on the *Joint Motion Requesting Dismissal of Omnibus Objections to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* dated February 19, 2020 (the "Motion to Dismiss"), will be held before the Honorable Judge Laura Taylor Swain, United States District Court Judge, at the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., Suite No. 3212, New York, New York 10007-1312 on **April 30, 2020 at 10:00 a.m. (Atlantic Standard Time).**

**PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections") to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court (a) by attorneys practicing in the District Court, including attorneys admitted *pro hac vice*, electronically in accordance with Rule 5 of the Local Rules for the District of Puerto Rico (the "Local District Court Rules"), and (b) by all other parties in interest, on a CD-ROM, in text searchable portable document format (PDF), to the extent applicable, and shall be served in accordance with the Tenth Amended Case Management Procedures, Dkt. No. 8027-1, so as to be so filed and received no later than **March 18, 2020 at 5:00 p.m. (Atlantic Standard Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the District Court may enter an order granting the relief sought without a hearing pursuant to the Tenth Amended Case Management Procedures, Dkt. No. 8027-1.

Dated: February 19, 2020

Respectfully Submitted.



*Attorneys for Movants*
*Tel. 787-722-2500*
*PO Box 191757*
*San Juan, PR 00919-1757*

*/s/ Enrique M. Almeida, Esq.*
**Enrique M. Almeida, Esq.**
*USDC-PR 217701*
*enrique.almeida@almeidadavila.com*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br><br>*Debtors.[2]* | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**JOINT MOTION REQUESTING DISMISSAL OF "OMNIBUS OBJECTIONS" TO CLAIMS FILED OR ASSERTED BY HOLDERS OF CERTAIN COMMONWEALTH GENERAL OBLIGATION BONDS**
**(Related Dockets No. 4784, and 9730)**

---

[2] The Debtors in these Title III Cases, along with each debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are 9i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of federal Tax ID: 3481); (ii) Puerto Rico Sales tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ............................................................................ 1

II.   PROCEDURAL EVENTS AND LITIGATION SCHEDULE .............................................. 3

III.   RELEVANT FACTS .................................................................................... 5

   A.   Factual Background .............................................................................. 5

   B.   The Special Nature of the Cooperatives and the High Public Interest Surrounding
Cooperatives .................................................................................... 7

IV.   APPLICABLE STANDARD FOR DISMISSAL ................................................... 11

   A.   Standard of Review Under Fed. R. Civ. P. 12(b)(6) 1. ................................. 11

   B.   Pleading Standard under Fed. Rs. Civ. P. 8(a)(2) and (9)(b), (f). .................. 13

V.   ARGUMENTS FOR DISMISSAL AND DISCUSSION ...................................... 14

   A.   The Omnibus Objection at Docket #4784 does not contain particularized allegations as
to the Inexistence of the Public Buildings' Authority ................................. 14

   B.   The Omnibus Objection filed at docket #4784 does not contain particularized
allegations against the movants to disallow their claims as requested in the Objection. 15

   C.   The Omnibus Objections of the Claims are Unwarranted Inasmuch as there would be an
Unjust Enrichment From the Claimants If it were to be determined that the 2012-2014
General Obligation Bonds are Null and Invalid. ........................................ 17

      1.   The Unjust Enrichment Doctrine (*Enriquecimiento Injusto*) ...................... 17

   D.   The Omnibus Objections of the Claims are Unwarranted as to the Cooperatives. The
Objectors are Precluded from Requesting the Nullification of the GO Bonds as to
Movants .......................................................................................... 20

      1.   The Equitable Estoppel and "Actos Propios" Doctrines ........................... 20

      2.   The Equitable Doctrines Applied ....................................................... 24

VI.   RESERVATION OF RIGHTS .................................................................... 26

VII.  CONCLUSION ...................................................................................... 26

CERTIFICATION .......................................................................................... 27

CERTIFICATE OF SERVICE ............................................................................. 27

# **TABLE OF AUTHORITIES**

**Cases**

Alt Sys. Concepts, Inc. v. Synopsys, Inc., 374 F. 3d 23,29 (1st Cir. 2004). ................................. 15

Andujar v. Commonwealth, 122 D.P.R. 817 (1988). ............................................................. 18, 19

Ashcroft v. Iqbal, 556 US 662 (2009).......................................................................... 2, 12, 13, 14

Atlantic Corp. v. Twombly, 550 US 544 (2007) .................................................................... 2, 12

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).................................................... 11, 13

Berríos v. U.P.R., 116 D.P.R. 88, 99 (1985)................................................................................ 23

Betancourt v. García, 49 B.R. 620 (1985). ................................................................................. 21

Boylston Dev. Group, Inc. v. 22 Boylston St. Corp., 412 Mass. 531, 591 N.E. 2d 157 (1992)... 21

Burk v. Paulen, 2015 WL 1578704, at *4 (D.P.R. 2015) ........................................................... 12

Comisionado de Seguros de Puerto Rico v. Universal Insurance Company, Inc., 187 D.P.R. 164
(2012)................................................................................................................................. 23

Cooperativa Cafeteros de P.R. v. Colón Torres, 84 D.P.R. 278,281-282 (1961) ........................... 7

Dunkin' Donuts, Inc. v. Panaggakos, 5 F. Supp. 2d 57 (D. Mass. 1998). .................................... 22

Falcone v. Pierce, 864F.2d 226, 228 (1st Circ. 1988); ................................................................ 22

Granite Partners, L.P. v. Bear, Stearns & Co., 17 F.Supp.2d 275, 285–86 (S.D.N.Y.1998);....... 13

Guardarrama v. Municipality of Aguas Buenas, 2012 WL 1669413, at *2 (D.P.R. 2012).......... 12

In re Actrade Fin. Techs. Ltd., 337 B.R. 791, 801 (Bankr.S.D.N.Y.2005) ................................. 14

In re Colarusso, 295 B.R. 166, 177 (1st Cir. BAP 2003), ........................................................... 21

In re De Arakie, 199 B.R. 821, 827 (Bankr. S.D.N.Y. 1996)...................................................... 21

In re Spenlinhauer, 572 B.R. 18 (Bankr. D. Mass 2017)............................................................. 21

International General Electric Puerto Rico, Inc. v. Concrete Builders of P.R., Inc., 104 D.P.R.
871 (1976)......................................................................................................................... 22

Johnson v. Priceline .com, Inc., 711 F.3d 271, 275 (2nd Cir. 2013) ........................................... 13

Johnson v. Williford, 682 F.2d 868, 871 (9th Cir. 1982) ........................................................... 23

Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009). ...................................................... 12

Municipio de Quebradillas v. Corporación de Salud de Lares, 180 D.P.R. 1003 (2011)............. 18

N. Amer. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F. 3d 8,13 (1st Cir. 2009).
................................................................................................................................................ 15

New England Data Services v. Becher, 829 F.2d 286, 289 (1st Cir.1987).................................. 13

O'Brien v. Price Waterhouse, 740 F.Supp. 276, 279 (S.D.N.Y.1990), ........................................ 13

Ocasio-Hernández v. Fortuño-Burset, 640 F. 3d 1, 12 (1st Cir. 2011)......................................... 12

Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd., 85 F.Supp.2d 282, 293

   (S.D.N.Y.2000)).......................................................................................................................... 14

Quiles Hernández vs. Del Valle, 167 D.P.R. 458, 479 (2006). ................................................... 23

Schatz v. Republican State Leadership Comm., 669 F. 3d 50, 55 (1st Cir. 2012) ...................... 12

Shapiro v. Miami Oil Producers, Inc., 84 F.R.D. 234, 236 (D. Mass 1979). .............................. 15

Silva v. Industrial Commission, 91 D.P.R. 891 (1965). ............................................................... 17

Skinner v. Switzer, 562 U.S. 521 (2011) ..................................................................................... 11

United States v. City of Lawrence, 173 F. Supp. 307 (W.D. Pa. 1959); ..................................... 23

United States v. Georgia Pacific Co., 421 F. 2d 92 (1970).......................................................... 21

United States v. Standard Oil Company of California, 20 F. Supp. 427, 452 (S.D. Cal. 1937)... 23

Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 427 (1st Cir. 2007). ....................... 14

Velilla v. Pueblo Supermarkets, Inc., 111 D.P.R. 585, 588 (1981) .............................................. 23

Statutes

Art. 7 of the Puerto Rico Civil Code, 31 PR Laws Ann. §7 .......................................................... 22

Puerto Rico Act 114 of August 17, 2001 ........................................................................................ 9

Puerto Rico Act 220 of December 15, 2015 .................................................................................... 8

Puerto Rico Act 239 of September 1, 2004 ..................................................................................... 8

Puerto Rico Act 247 of August 10, 2008 ........................................................................................ 8

Puerto Rico Act 255 of October 28, 2002..................................................................................... 1, 9

Puerto Rico Act 5 of January 15, 1990 .......................................................................................... 9

Puerto Rico Act 6 of January 15, 1990 ......................................................................................... 10

Rules

Fed. R. Bankr. P. 7008 .................................................................................................................. 11

Fed. R. Bankr. P. 7012 .............................................................................................................. 2, 11

Fed. R. Civ. P. 12(b)(6).................................................................................................... 2, 11, 12, 13

Fed. R. Civ. P. 8(a)(2)................................................................................................................... 11

Fed. R. Civ. P. 9(b) ............................................................................................................ 12, 13, 14, 15

Treatises

JOSE PUIG BRUTAU, Fundamentos de Derecho Civil 57 Barcelona, Ed. Bosch (1983)............... 19

**To the Honorable United States District Court Judge Laura Taylor Swain:**

COME NOW, Cooperativa de Ahorro y Crédito Abraham Rosa; Cooperativa de Ahorro y Crédito de Rincón; Cooperativa de Ahorro y Crédito de Vega Alta; Cooperativa de Ahorro y Crédito Zeno Gandía; Cooperativa de Ahorro y Crédito de Lares; and Cooperativa de Ahorro y Crédito del Valenciano, through the undersigned counsel and respectfully state, allege and pray as follow:

## I.  PRELIMINARY STATEMENT

The appearing parties/movants are several state-chartered Credit Unions[3] who are part of a financial cooperative system in the island comprised of 116 Cooperatives and encompassing around 1.2 million members and depositors, the majority of whom are middle and low- income savers and elderly persons (vulnerable populations that need to be protected). Thus, as State Chartered cooperatives, the movants have a special nature. On one hand, they are regulated, supervised and insured by Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico ("COSSEC") a Public Corporation created by Commonwealth's Law. On the other hand, they are primary lenders and providers of cost-effective financial services to a multitude of people.

The Special Claims Committee ("SCC") and the Official Committee of Unsecured Creditors ("OCUC") filed an Omnibus Objection to Claims filed by holders of certain Commonwealth General Obligations Bonds (hereinafter, "the GO Bonds") seeking a determination from this Honorable Court to declare the nullity and invalidity of more than $6 billion of these GO bonds on account of the allegation that the debt was issued in violation of the Commonwealth's Constitutional Debt Service Limit. The "Lawful Constitutional Debt

---

[3] State Chartered credit unions in Puerto Rico are known as "Cooperativas de Ahorro y Crédito," or "Cooperatives." Movants are credit unions chartered under Puerto Rico Act 255 of October 28, 2002, as amended.

1

Coalition" ("the Coalition") also filed an Omnibus Objection, practically on the same grounds as the SCC and OCUC did. [4]

Movants are holders of several contested GO bonds and have filed claims supported *inter alia* on these debts. The appearing Credit Unions as holders of 2012 GO Bonds whose claims have been objected at docket #4784 and docket #9730 move to dismiss such requests on grounds that the objections fail to state a claim upon which relief can be granted.

As movants will show, this Honorable Court should dismiss the Omnibus Objections and their causes pursuant to Rule 12 (b) (6) of the Federal Rules of Civil Procedure, made applicable through Federal Rule of Bankruptcy Procedure 7012, which is applicable to these contested matters. Even if accepting as true all well-pleaded facts and drawing all reasonable inferences in the Objectors' favor, the Objections are insufficient and unwarranted. They do not pass muster under the plausibility standard of Iqbal and Twombly,[5] or the heightened pleading standard for actual fraud.

The Objections are devoid of factual allegations to sufficiently plead a cause of action to declare the invalidity of movant's claims, the nullity of the issuance of the GO Bonds, the invalidity of the Public Buildings Authority as a lawful entity, and to declare the unconstitutionality of a law or section of a law as requested or alleged in the objections.

Furthermore, as discussed below the Objectors' request to disallow movants' claims based on the alleged nullity of the GO bonds is unwarranted as a matter of equity. In particular, if the objectors' request is granted, movants would be left without any remedy. The objectors' request contravenes the unjust enrichment collateral estoppel, and "actos propios" doctrines,

---

[4] For purposes of the instant motion, the SCC and OCUC, together with the Coalition will be hereinafter referred to as "the Objectors".

[5] Ashcroft v. Iqbal, 556 US 662 (2009), and Atlantic Corp. v. Twombly, 550 US 544 (2007).

applicable to movants due to their nature as depository institutions for a multitude of people, and the public interests involved.

## II. **PROCEDURAL EVENTS AND LITIGATION SCHEDULE**

1.  On May 3, 2017 the Financial Oversight and Management Board ("FOMB") issued a restructuring certification for the Commonwealth of Puerto Rico and filed a voluntary petition for relief for the Commonweath pursuant to PROMESA, therefore commencing a case under Title III of PROMESA for the Commonwealth of Puerto Rico.

2.  According to the deadlines set in the case, on May 24, 2018 movants filed proof of claims: #53780 (Cooperativa de Ahorro y Crédito Abraham Rosa); #36224 (Cooperativa de Ahorro y Crédito de Rincón); #25601 (Cooperativa de Ahorro y Crédito de Vega Alta); #29458 (Cooperativa de Ahorro y Crédito Zeno Gandía); #52616 (Cooperativa de Ahorro y Crédito de Lares); and #28526 (Cooperativa de Ahorro y Crédito del Valenciano) in the Title III Commonwealth's Title III case.[6]

3.  On January 14, 2019, the SCC and the OCUC filed an Omnibus Objection to Claims filed by holders of 2012-2014 Commonwealth's GO Bonds. Docket #4784.

4.  On February 15, 2019 this Honorable Court entered and Order whereby it established the initial procedures with respect to such objection for the 2012-2014 GO Bonds. The procedures required holders of 2012-2014 GO Bonds that wish to participate in the litigation to file a Notice of Participation on or before April 16, 2019. Docket #5143.

5.  On April 12, 2019 movants filed Notices of Participation according to the procedures established by the Court. *See* dockets # 6221 #6222, #6223, #6224, #6225, and #6226.

---

[6] Thereafter, on July 3, 2019 most of these claims were amended , with proof of claims #169510 for Cooperativa de Ahorroy Crédito Abraham Rosa, #169512 for Cooperativa de Ahorro y Crédito de Rincón, #169494 for Cooperativa de Ahorro y Crédito de Vega Alta #169493 for Cooperativa de Ahorro y Crédito Zeno Gandía, #169511 for Cooperativa de Ahorro y Crédito de Lares.

6.  On July 24, 2019 this Honorable Court entered an *Order Regarding Stay period and Mandatory Mediation*, whereby it stayed all litigation regarding the 2012-2014 GO Omnibus Objection. Docket #8244.

7.  On October 28, 2019 this Honorable Court entered *Order Granting Urgent Joint Motion of Oversight Board and AFFAF for Order Extending (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto*, whereby the stay order was extended until December 31st, 2019. Docket #9016.

8.  On November 27, 2019, the Mediation Team appointed by the Court in the Title III cases, filed an *Interim Report and Recommendation of the Mediation Team*. Docket #9365.

9.  In connection with such report, on December 19, 2019 this Honorable Court entered an *Interim Case Management Order* setting forth a schedule whereby any additional objections regarding the validity of claims related to the GO Bonds had to be filed by January 8, 2020. The Interim Case Management Order additionally incorporated Federal Rule of Bankruptcy Procedure 7012, thereby allowing parties, holders of challenged claims and other interested parties to file motions seeking dismissal under Federal Rule of Civil Procedure 12 (b) of one or more of the Claim Objections and any future claim objection. The deadline for Opening briefs for motions to dismiss for all other bondholders or interested parties not denominated as identified parties was set for February 19, 2020. Docket #9619

10. On January 8, 2020, the Coalition filed an Omnibus Objection to Claims filed or Asserted by Holders of GO Bonds issued or guaranteed y the Commonwealth. Docket #9730.

11. Movants file the instant motion to dismiss the Omnibus Objections at dockets # 4784 and #9730 pursuant to the *Interim Case Management Order*.

4

### III. RELEVANT FACTS

#### A. Factual Background

12. Movants are part of a Cooperative Financial System, which, as of December 31, 2018, was comprised of 116 Cooperatives with total assets of $8,715,880,419.92, with 1,014,388 members and 300,000 non-member depositors, 2,915 full-time employees and 120 branches in all municipalities of the Commonwealth.

13. The Cooperatives are interconnected through significant inter-cooperative deposits, which, as of December 31, 2018, amounted to $596,940,399.47. This system serves over 1.2 million members and depositors, the majority of whom are middle and low-income savers and elderly persons (vulnerable populations that need to be protected).

14. Cooperatives are also primary lenders and providers of cost-effective financial services. In addition to their role of financing economic activity, for many decades the Cooperative Financial System has also served as a market driven price regulator for retail financial services.

15. As depository institutions movants are subject to governmental supervision and regulation as established and implemented by the Commonwealth through COSSEC.

16. For decades Cooperatives in Puerto Rico have maintained safe and sound financial conditions, even through the years of Financial Crisis from 2008 to 2016.

17. This financial soundness has allowed Cooperatives to deal with economic cycles through their own capitalization and funding of COSSEC, without expenditure of governmental funds.

18. This financial soundness of the Cooperatives was known by the Commonwealth, its instrumentalities and the Government Development Bank ("GDB"), who designed, oversaw, controlled and was in charge of all bond and debt issued by the Commonwealth.

19.   Given this financial soundness of the Cooperatives, between 2009 and 2012 the Commonwealth together with the GDB and COSSEC concerted efforts in a fraudulent scheme to offer and actually place upon Cooperatives (including movants), excessive amounts of unsound Puerto Rico Debt securities issued by the Commonwealth, COFINA, and other related issuers and to fund the GDB through the targeted offer and sale of GDB Bonds and Notes, intending to allow the GDB to finance the operations of the agencies and instrumentalities of the Commonwealth  through loans that did not have adequate sources of repayment. In doing so, the Commonwealth, the GDB and COSSEC actively and with malice sought funds from the Cooperatives while the GDB was insolvent or while driving it into insolvency.

20.   In particular, and just as an example on 2009 the Commonwealth through COSSEC issued circular letter 09-03 to offer the Cooperatives the purchase of Puerto Rico GO's. Such circular letter extolled the alleged virtues of the debt instruments with statements such as"…backed by the Government which guarantees 100% of interest and principal payments, as provided in the bonds", and "[t]hese bonds are excellent guarantees, which  allows investors to apply for loan against their investment". Movants trusted these statements and consequently purchase the debt instruments.

21.   In addition, the Commonwealth, the GDB and COSSEC knowingly misused the statutory framework and authority to regulate the Cooperatives to take material and ever-increasing amount of their moneys to use in governmental spending without a source or ability of repayment.

22.   The Commonwealth and its instrumentalities utilized their political and regulatory power to improperly avail of the Cooperatives assets by placing knowingly unsound Commonwealth

debt, defalcating them while acting in fiduciary capacities. As a result, the Cooperatives are heavily invested in securities issued by the Puerto Rico government and its instrumentalities.

23.  Consequently, movants as part of the Cooperatives in this situation became holders of Commonwealth's General Obligations Bonds issued on 2012, as a result of false pretenses, false representations, misleading information, misuse of regulatory power, material omissions and actual fraud of the Commonwealth and its instrumentalities.

**B.  The Special Nature of the Cooperatives and the High Public Interest Surrounding Cooperatives**

24.  The first cooperative entities in Puerto Rico were established in the middle of the 19th century. Modern statutory recognition of the high public interest in cooperatives goes back to 1926.

25.  In addition to their role as depository institutions, the cooperative nature of the credit unions entails an additional high public interest.  That interest is the result of cooperatives being able to "… contribute to greater production of wealth as well as to a more equitable distribution thereof. In order to ensure, for example, increased purchasing power for the limited resources of our people, so that there may be a larger quantity of consumer goods available, as well as the enjoyment of more and better social and economic services, the purchase of articles for daily consumption and the rendering of the various services to the community should be organized, to the extent that circumstances will permit, in cooperative form." Cooperativa Cafeteros de P.R. v. Colón Torres, 84 D.P.R. 278,281-282 (1961).

26.  The Commonwealth of Puerto Rico has a decades long public policy of fostering and strengthening cooperative institutions and its laws have consistently acknowledged and stated that cooperatives have always been vested with the highest public interest. Although this history

7

can be traced to the early twentieth century (an especially the 1940s and 1950s), the most recent line of legislative actions and policies begin in 1990 up to 2015, as described hereinbelow:

### a.  Puerto Rico Act 220 of December 15, 2015

Act 220-2015 was enacted to adopt emergency statutory accounting rules regarding the defaulted Puerto Rico bonds. Its Statement of Motives affirms that since 1926, the Commonwealth of Puerto Rico has maintained a clear public policy in favor of the development and strengthening of the Cooperatives. It further states that promoting the stability of the cooperative system is an essential part of that public policy. Furthermore, the Legislature recognized that Puerto Rico's credit unions have proven to be an extraordinary tool to provide financial services that are indispensable to the needs of our citizens. It was based on these public interests that Act 220 adopted special rules to protect the financial stability of Puerto Rico's credit unions in the context of the Commonwealth's fiscal crisis.

### b.  Puerto Rico Act 247 of August 10, 2008

Act 247-2008 was enacted to establish the Cooperative Development Commission and to reorganize the government agencies dealing with Cooperativism. Article 2 of Act 247 reaffirms the government's recognition of Cooperativism as a fundamental business model for the achievement of a sustainable and balanced social and economic development, centered on its citizens and communities. Based on that policy, the Legislature stated express mandates and intentions, including among others:

- The proactive integration of Cooperatives into the government's economic development initiatives.
- The integration of governmental and Cooperative resources with the purpose of strengthening cooperativism and increasing the economic and social activity carried out under the cooperative model.
- To promote the growth and interconnection of the different sectors of the Cooperative Movement.
- To ensure the integrity and financial strength of Cooperatives through a fair, equitable and effective supervision that promotes solvency, solidity and competitiveness.
- The preservation of the financial integrity and actuarial sufficiency of the share and deposit insurance provided by COSSEC.

### c.  Puerto Rico Act 239 of September 1, 2004

Act 239-2004, also known as the "General Law of Cooperative Societies of Puerto Rico of 2004", governs the chartering and operation of non-financial cooperatives. Its Statement of Motives acknowledges that the Cooperative Movement constitutes an integral piece and a strong pillar for Puero Rico's

8

economic and social development and that its growth and strengthening is vested with a high public interest.

### d. Puerto Rico Act 255 of October 28, 2002

Act 255-2002 is also known as the "Law of Cooperative Savings and Credit Union Societies of Puerto Rico of 2002". This is the statute under which Puerto Rico's state chartered credit unions are organized and operate. Its Statement of Motives affirms the Commonwealth's public policy of steering the social and economic development of Puerto Rico pursuant to the principles of social justice, self-effort and democratic control of Cooperativism. The Legislature expressly states that the Cooperative Movement constitutes an integral piece and a strong pillar for Puerto Rico's economic and social development and that its growth and strengthening is vested with a high public interest.

### e. Puerto Rico Act 114 of August 17, 2001

Act 114-2001, also known as the "Public Corporation for the Supervision and Insurance of Cooperatives in Puerto Rico Act" is COSSEC's organic law. Its Statement of Motives expressly indicates that the then existing redundant and inefficient government structure "is incompatible with the development of the Cooperative Movement of Puerto Rico, which is vested with great public interest." The Legislature further states that the public policy of the Commonwealth for the Cooperative Savings and Credit Unions, is founded on the following principles:

- To promote a fair, efficient, and effective oversight and supervision.
- To allow the free offering of products and services by the cooperatives.
- To enable the channeling of financial resources towards the financing of productive activity, particularly to small and medium-sized businesses, cooperative enterprises and self-management projects.
- To expedite the creation of corporate and cooperative structures to enable the entrance of Cooperative Savings and Credit Unions that enjoy a solid financial and managerial condition, in activities permitted to other participants of the financial market.
- To enable the economic integration of the savings and credit sector to other productive sectors.

### f. Puerto Rico Act 5 of January 15, 1990

Act 5-1990 is the predecessor to Act 114-2001. As indicated in its Statement of Motives, Act 5 was enacted to strengthen the government's share and deposit insurance program (established in 1980) by creating a public corporation with a solid capital structure and with the capacity of providing liquidity and economic support to Puerto Rico credit unions in the case of financial adversity. The new public entity was entrusted with ensuring the economic solvency of the credit

9

unions and taking the appropriate actions to deal with cases of insolvency and to reduce losses.

g. **Puerto Rico Act 6 of January 15, 1990**

Act 6-1990 is the predecessor of Act 255-2002. Its Statement of Motives acknowledges that since the 1940s - 1950s, the public policy of the Commonwealth of Puerto Rico has promoted cooperative activity as an economic model that enhances private initiative, fosters a more just and equitable society and improves and balances Puerto Rico's business environment. The Legislature highlights the achievements of Puerto Rico's credit unions and their contributions in promoting savings and reducing our dependence on external funds. Moreover, the statute recognizes that our savings and credit cooperatives constitute a significant part of Puerto Rico's financial sector, which provides a broader access to credit to finance basic needs, immediate economic problems, finance small businesses and improve housing and living conditions, thus actively contributing to the economic and social development of Puerto Rico.

27. Many of these attributes of the Cooperatives and their importance to Puerto Rico's social and economic development have also been recognized in the two iterations of COSSEC's fiscal plans, which acknowledge as follows:[7]

- *Instrumental in maintaining the supply of cash and providing essential financial services in Puerto Rico after the Hurricanes, Cooperativas reinforced their role as a key member of their community*
- *15 days after Hurricane Maria, 90% of Cooperativas were servicing members of their communities. One month after the Hurricane, there were 17 municipalities in Puerto Rico where the only functioning financial institution was a Cooperativa.*
- *Cooperativas located in rural and remote locations in Puerto Rico overcame severe communications and devastated infrastructure issues and helped members have access to cash needs to meet basic needs such as food, water, gasoline and medicines*
- *The Cooperative system is a pillar of the PR economy, serving as the main alternative to a highly concentrated commercial banking sector*

28. As can be seen, the high public interest surrounding the Cooperatives (movants in this case) is not a mere aspiration, but a concrete policy that has allowed the accumulation of over $8 billion of locally sourced wealth and capital without the need of governmental contributions or handouts. That capital includes the savings of close to one third of Puerto Rico's population.

---

[7] *See* page 5, COSSEC Fiscal Plan August 2018, and pages 7 and 11, COSSEC Proposed Fiscal Plan of April, 2018.

These are the life-long savings of moderate- and low-income citizens the protection of which were entrusted to the government and which the government took away by failing to comply with its own self defined and self-adopted statutory obligations. Moreover, these savings are the hard-earned family reserves to address the needs in the aftermath of two major hurricanes and the January 2020 earthquakes. Basic justice and humanity mandate their protection. Therefore, it should be protected by this Honorable Court and not allowed to be taken away by the Debtor/Objectors on grounds of statutory formalities and constitutional questionings that are at the least debatable.

## IV.    APPLICABLE STANDARD FOR DISMISSAL

### A.  Standard of Review Under Fed. R. Civ. P. 12(b)(6) 1.

To state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008. *See also* Skinner v. Switzer, 562 U.S. 521 (2011).

Although Fed. R. Civ. P. 8(a)(2) does not explicitly require "[d]etailed factual allegations", "the complaint must set forth sufficient facts to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. at 570) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertion devoid of further factual enhancement." Id. at 678 (internal quotation marks omitted). *See also* Guardarrama v. Municipality of Aguas Buenas,

2012 WL 1669413, at *2 (D.P.R. 2012); Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the First Circuit has adopted a two-prong approach. *See* Burk v. Paulen, 2015 WL 1578704, at *4 (D.P.R. 2015) (citing Schatz v. Republican State Leadership Comm., 669 F. 3d 50, 55 (1st Cir. 2012)); Ocasio-Hernández v. Fortuño-Burset, 640 F. 3d 1, 12 (1st Cir. 2011) (discussing Iqbal and Twombly).

First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause of action elements." Burk v. Paulen, 2015 WL 1578704, at *4 (citing Schatz v. Republican State Leadership Comm., 669 F. 3d at 55). Hence, "[a] complaint does not need detailed factual allegations, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id.

Second, the Court must also "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Burk v. Paulen, 2015 WL 1578704, at *4.

The U.S. Supreme Court decided in Iqbal that the guidelines of its earlier decision in Twombly applied "to all civil actions," regardless of the subject matter. *See* Ashcroft v. Iqbal, 556 U.S. at 684. Accordingly, this Honorable Court should follow the plausibility standard established in Iqbal and Twombly and require that Omnibus Objection go beyond mere conclusions by including factual allegations sufficient to show a plausible claim for the complete disallowance of the GO bonds claims. In light of the forgoing, the dismissal of the instant Omnibus Objections is even more apparent given the heightened standards to claims of fraud under Fed. R. Civ. P. 9(b), as applicable through Fed. R. Bankr. P. 7009.

Thus, to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint (in this case the objection) must contain sufficient factual allegations to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 at 678 (citing Bell Atlantic Corp. v. Twombly, 550 at 555) (internal quotation marks omitted); Johnson v. Priceline .com, Inc., 711 F.3d 271, 275 (2nd Cir. 2013) (a "complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."). While the Court must accept "well-pleaded factual allegations" as true, it cannot accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." Ashcroft v. Iqbal, 556 at 678-679. Simply put, a complaint is legally insufficient "if it tenders 'naked assertation[s]' devoid of "further factual enhancement." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 at 557).

### B.  Pleading Standard under Fed. Rs. Civ. P. 8(a)(2) and (9)(b), (f).

Under Fed. R. Civ. P. 9(b), made applicable by Fed. R. Bankr. P. 7009, the plaintiff, in this case **the party objecting the claim**, "must state with particularity the circumstances constituting fraud or mistake", but may plead (ii) the "[m]alice, intent, knowledge, and other conditions of a person's mind" generally. Fed. R. Civ. P. 9(b).

The purpose of Fed. R. Civ. P. 9(b)'s particularity requirement is threefold: (1) to place defendants on notice and allow them to prepare a meaningful response, (2) to preclude the use of groundless fraud claims as pretext for discovery or "strike suits", and (3) to safeguard defendants from the reputation damage of frivolous charges. *See* New England Data Services v. Becher, 829 F.2d 286, 289 (1st Cir.1987); Granite Partners, L.P. v. Bear, Stearns & Co., 17 F.Supp.2d 275, 285–86 (S.D.N.Y.1998); O'Brien v. Price Waterhouse, 740 F.Supp. 276, 279 (S.D.N.Y.1990), aff'd, 936 F.2d 674 (2nd Cir. 1991). Fed. R. Civ. P. 9(b)'s heightened pleading standard also

applies to state law fraud claims asserted in federal court. *See* Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 427 (1st Cir. 2007).

Correspondingly, to satisfy Fed. R. Civ. P. 9(b) 's pleading requirements "a complaint must allege with some specificity the acts constituting fraud ... conclusory allegations that the alleged conduct was fraudulent or deceptive are not enough." In re Actrade Fin. Techs. Ltd., 337 B.R. 791, 801 (Bankr.S.D.N.Y.2005) (quoting Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd., 85 F.Supp.2d 282, 293 (S.D.N.Y.2000)).

## V.   ARGUMENTS FOR DISMISSAL AND DISCUSSION

### A.   The Omnibus Objection at Docket #4784 does not contain particularized allegations as to the Inexistence of the Public Buildings' Authority

One of the arguments used by the Objectors in the Omnibus objection at docket #4784 to contest the GO Bonds issued after March 2012 is the alleged *de facto* inexistence or "*sham*" characterization of the Public Building's Authority ("PBA") for the calculation to exceed the constitutional debt service limit.

The Objection's conclusory allegations and arguments that the PBA is a *sham* because the PBA is allegedly a lessor and lessee [§§ 3-6 of the Omnibus Objection, at Dkt. #4784], and as such must not be considered as different entity for purposes of the calculation of the debt are insufficient to satisfy Rule 9 (b) of the Federal Rules of Civil Procedure. These allegations and arguments in the Omnibus objection suppose a fraud claim. However, these are not sufficient to communicate a plausible claim.  The Omnibus Objection's allegations at docket #4784 as to this particular cause are simply naked assertions devoid of further factual enhancement that cannot withstand a motion to dismiss under the general pleading standard or the heightened pleading standard for fraud claims. Iqbal, 556 U.S. at 678.

The allegations regarding the juridical situation of the PBA are subject to Rule 9(b)'s heightened pleading standard, as they are based in allegations of fraud. This rule extends to all claims of fraud, "whatever may be the theory of legal duty, statutory, tort, contractual, or fiduciary." Shapiro v. Miami Oil Producers, Inc., 84 F.R.D. 234, 236 (D. Mass 1979). The First Circuit applies Rule 9(b) "expansively", such that causes of action that normally do not rest upon fraud may trigger Rule 9(b)'s particularity requirement if the plaintiff's core allegation effectively charge fraud. N. Amer. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F. 3d 8,13 (1st Cir. 2009). Rule 9 (b) requires that for allegations of fraud, "a party must state with particularity the circumstances constituting fraud or mistake". Fed. R. Civ. P. 9(b). This standard is satisfied by averments of the who, what, where, and when of the allegedly false or fraudulent representation. Alt Sys. Concepts, Inc. v. Synopsys, Inc., 374 F. 3d 23,29 (1st Cir. 2004).

In the present case the objectors at docket #4784 when referring to the PBA insinuate fraud or a fraudulent scheme but fail to allege with particularity the facts surrounding such characterization. Therefore, the objectors' allegations as to the inexistency or illegality of the PBA are just conclusory statements and general averments that do not suffice to a cause for invalidity of the GO Bonds. Therefore, movants respectfully request that the Omnibus Objection filed at docket #4784 be dismissed or partially dismissed on these grounds.

**B. The Omnibus Objection filed at docket #4784 does not contain particularized allegations against the movants to disallow their claims as requested in the Objection.**

In the instant case, the Omnibus Objection filed at dockets #4784 seek to disallow in its entirety movants' proofs of claims based on arguments and allegations that: (i) the 2012-2014 GO Bonds were issued in violation of the Constitutional Debt Service Limit; and that  (ii) the

bonds were issued in violation of the constitutional budget clause. Such Objections aver and request that all claims filed or asserted against the Commonwealth based on invalid GO Bonds be disallowed in its entirety. *See* § 59 of Omnibus Objection at docket #4784 which makes reference to an Exhibit A attached thereto requesting that all claims be disallowed.

Movants' claims however are not only based on the breach of obligations generated by the contested bonds, or on the claim for damages and injuries provoked by the Commonwealth because of the sale of such unsound bonds.[8] Movants' claims are also based on actual fraud, omissions, failure to comply with statutory obligations, and the harms and damages this situation caused on movants. These claims included in movants' proof of claims are based on actual fraud, omissions, harm, damages and risks, are pled and form part of Adversary Proceeding 18-00028 filed under PROMESA's Title III cases and are not related to the contested GO bonds.[9] It is respectfully requested from this Honorable Court to take judicial notice of said pleadings.

The Omnibus objection filed at dockets #4784 is devoid of any factual allegation contesting the validity of such part of the claims, and thus are insufficient to request the disallowance of the claims as requested in the Objections. Such claims are not related to the contested Bonds and thus should not be disallowed. In light of the above the Objection (complaint) lacks sufficient allegations to request such remedy against movants herein and as such must be dismissed.

---

[8] However, Cooperativa de Ahorro y Crédito de Lares withdrew its claims as to these damages and causes of action. *See* amended proof of claim filed by Cooperativa de Ahorro y Crédito de Lares , registered by Prime Clerk as Claim #170916.

[9] Such claims would not be simply treated as subordinated to other claims in a plan, as section 510 (b) of the Bankruptcy Code would not be applicable.

**C. The Omnibus Objections of the Claims are Unwarranted Inasmuch as there would be an Unjust Enrichment From the Claimants If it were to be determined that the 2012-2014 General Obligation Bonds are Null and Invalid.**

**1.      The Unjust Enrichment Doctrine (*Enriquecimiento Injusto*)**

Movants, as cooperatives characterized with a high public interest by Law in Puerto Rico are entitled to remedies in equity even if there is a determination of invalidity of the GO Bonds. There would be an unjust enrichment from movants as cooperatives holding this debt instruments if it were to be determined that the contested GO Bonds are null and void and that their claims on such bonds are disallowed.

The doctrine of unjust enrichment is as old as the law itself. It is a corollary of the equity concept, which is tantamount to saying that it is a corollary of the concept of justice itself. Silva v. Industrial Commission, 91 D.P.R. 891 (1965). The unjust enrichment doctrine is a general principle of law based on the equity that is pervasive to the entire body of laws. It is applicable when the law has not foreseen a situation where a patrimonial shift occurs, which shift cannot be rationally explained by the entire body of laws. It "is a general doctrine or principle of law which may be applied to situations quite different from each other, provided they have an element in common: that its nonapplication would perpetuate the inequity that someone may unjustly enrich himself at the expense of another. Far from being a rule in the strict sense of the word, unjust enrichment is a refined and prudent standard of discernment that Courts as triers must bear in mind when exercising their rule making powers.

Although the doctrine of unjust enrichment is subsumed in the figure of quasi contracts and in other civil-law provisions, it is applied to other situations that may give rise to an enforceable obligation. The unjust enrichment doctrine may not be invoked by a plaintiff in bad faith or applied when it clashes with a clear public policy embodied in the Constitution or in a

17

statute. *See* <u>Andujar v. Commonwealth</u>, 122 D.P.R. 817 (1988). The application of the doctrine shall depend on the specific circumstances of each case. It may be invoked, among other circumstances, when some statutory formalities have not been observed which may easily be corrected or could have been executed with due advice.

The requirements for an unjust enrichment action are: (1) occurrence of an enrichment; (2) a correlative impoverishment; (3) a connection between the impoverishment and the enrichment; absence of cause to justify the enrichment; and lack of a legal provision which precludes application of an enrichment without cause.[10]

Although movants do not concede the Objectors allegations that the debt was issued in violation of the Commonwealth's Constitutional Debt Service Limit, or contrary to its budget clause, for the sake of the argument movants submit that if such was the case, the invalidity of the debt would entail an unjust enrichment against them as entities protected by a high public interest due to their nature and role in the economic and social development in the Country. Thus, the claims should not be disallowed. All doctrinal requirements for unjust enrichment as outlined above are met in the instant case.

First, in the instant case the first requirement of the doctrine is present inasmuch as the Debtor/Commonwealth and its instrumentalities (particularly GDB) enriched themselves from the movants' funds through a significant sale of unsound Puerto Rico debt securities in 2012. The Commonwealth and its instrumentalities' operations were financed through the sale to

---

[10] Caselaw has established that there exist two kinds of enrichment: the positive or increase in the patrimony (*lucrum emergens*) or the negative or decrease in the patrimony (*damnum cessans*). The negative type is premised on the fact that <u>zero expense</u> amounts to an income. <u>Municipio de Quebradillas v. Corporación de Salud de Lares</u>, 180 D.P.R. 1003 (2011). To the extent that someone suffers a loss which normally should be suffered by somebody else, the former spares the latter an expense. This situation has no place in a legal system based on justice like ours, and thus, must be redressed. <u>Andujar v. Commonwealth</u>, at 827.

movants of the contested GO bonds, while the GDB was insolvent, or while it was turning into insolvency.

The second requirement (correlative loss or impoverishment) is also present considering that if the movants GO Bonds claim would be disallowed, they would not be entitled to receive any repayment on the debt instruments.

Third, there is a correlation between the loss suffered by the movants and the enrichment although the impoverishment of the movants in this case would come to benefit third parties (general unsecured creditors). However, such situation does not make the doctrine inapplicable. In the case of *Andujar v. Commonwealth* where the Puerto Rico Supreme Court applied the unjust enrichment doctrine to the State (Commonwealth), the court stated, citing Puig Brutau that: "the necessary link between loss (impoverishment) and enrichment does not require that the effect results from a direct benefit from the impoverished to the enriched. The relevant factor is not the direct relation between them, but the existence of an adequate bond between the patrimony that has sustain the loss and the patrimony that has reaped the benefit. The shift does not have to occur through a circuitous tour through someone else's patrimony, but the same circumstance must have caused both, the loss and the enrichment. This requirement supposes the immediacy of the shift. However, such immediacy does not require that the situation occurs between the person experiencing the loss and the enriched party." Andujar v. Commonwealth, 122 D.P.R. 817, 828 (1988) *citing* JOSE PUIG BRUTAU, Fundamentos de Derecho Civil 57 Barcelona, Ed. Bosch (1983).

As to the fourth requirement (absence of cause) it is evident that in light of the allegations of the Objectors claiming to invalid the bonds there would not be a contractual obligation should their argument prevail. Thus, if it were to be declared that the GO Bonds are null and invalid

19

there would not be cause, contract or instrument for movants to claim. Therefore, this requirement is also met for the doctrine to be applied.

Finally, there is no law precluding the applicability of the doctrine of unjust enrichment. To the contrary, as expounded above, there are many Laws in our jurisdiction supporting the stability of the cooperatives in Puerto Rico due to their nature as depository institutions for millions of people in the country and due to the high public interest that surrounds cooperatives as a pillar in the economic and social development of the island, and its people.

In light of the above, movants submit the applicability of the unjust enrichment doctrine as a defense to the objectors' requests to invalidate the Contested GO Bonds and to request the disallowance of their claims. Therefore, the objectors are prevented from seeking the invalidity of the GO Bonds as to the cooperatives herein. As such, it is respectfully requested from this Honorable Court to deny as unwarranted the Omnibus objection as to movants herein.

### D. The Omnibus Objections of the Claims are Unwarranted as to the Cooperatives. The Objectors are Precluded from Requesting the Nullification of the GO Bonds as to Movants

#### 1. The Equitable Estoppel and "Actos Propios" Doctrines

In the instant case, due to their special nature, the high public policy surrounding the cooperative system, and the fraudulent behavior that the Commonwealth and its instrumentalities incurred against movants when issuing, offering and selling the objected bonds, the movants are entitled to defenses of equitable estoppel and "actos propios". Thus, the Objectors are precluded from requesting nullification of the bonds with regards to movants' claims.[11]

---

[11] Movants also support their position by adopting by reference and joining the applicability to the instant case the doctrine of "estoppel by recitals" as discussed in the motion to dismiss filed at Docket No. 10702 by the Ad Hoc Group of General Obligation Bondholders, Ad Hoc group of Constitutional Debtholders, Assured Guaranty, Corp., Assured Municipal, Corp. and Invesco Funds.

Similar to the unjust enrichment doctrine, the equitable estoppel is a sister doctrine adjusting the relative rights of parties based upon considerations of justice and good conscience.[12] United States v. Georgia Pacific Co., 421 F. 2d 92 (1970). Equitable estoppel has been defined as having the effect of absolutely precluding a party, both at law and equity "from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy as against another person, who has in good faith relied upon such conduct, and has been "led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." In re Colarusso, 295 B.R. 166, 177 (1st Cir. BAP 2003), citing Boylston Dev. Group, Inc. v. 22 Boylston St. Corp., 412 Mass. 531, 591 N.E. 2d 157 (1992). The purpose of the doctrine of equitable estoppel is to ensure that no one will be permitted to take advantage of his own wrong.

Estoppel requires that the Court find existence of: 1) a representation or conduct[13] amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; 2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; and 3) detriment to such person as a consequence of the act or omission. In re Spenlinhauer, 572 B.R. 18 (Bankr. D. Mass 2017); In re Colarusso, 295 B.R. 166, 177 (1st Cir. BAP 2003); see also

---

[12] The Puerto Rico Courts, and in particular the Bankruptcy Court for the District of Puerto Rico has recognized that the Puerto Rico Civil Concepts of "actos propios" and unjust enrichment are analogous to the common law equitable doctrine of estoppel. See Betancourt v. García, 49 B.R. 620 (1985).

[13] "Conduct" may include spoken words, written words, positive acts, silence, and negative omissions to do something. Id. To find estoppel, there need not be an actual intent to defraud or mislead. The estopped party need only have intended or expected that another would act based upon his representations. In re De Arakie, 199 B.R. 821, 827 (Bankr. S.D.N.Y. 1996). The "fraud" requirement is only unconscionable or inequitable behavior. Acquiescence consisting of mere silence may also operate as a true estoppel in equity to preclude a party from asserting rights.

Falcone v. Pierce, 864F.2d 226, 228 (1st Circ. 1988); Dunkin' Donuts, Inc. v. Panaggakos, 5 F.

Supp. 2d 57 (D. Mass. 1998).

*NEMO AUDITUR SUAM TURPITUDINEM ALLEGANS:* A party causing an illegality

cannot use it to raise a defense or cause of action.

Puerto Rico Civil law doctrine known as "actos propios" (own acts) is similar to the

common law estoppel doctrine as it also has roots in equity and consideration of justice. The

contents of the rule that nobody is allowed to go against his own acts is grounded and rooted in

the general principal of Law which orders that one should act in good faith in the judicial life.

Puerto Rico Courts have solved that contradictory behavior has no place in the field of Law and

should be prevented. *See* International General Electric Puerto Rico, Inc. v. Concrete Builders of

P.R., Inc., 104 D.P.R. 871 (1976).

The going against one's own acts ("*actos propios*") *venire contra factum propium non*

*valet* is a general principle of law of universal validity and arises from the provisions of Art 6 of

the Spanish Civil Code (Art. 7 of the Puerto Rico Civil Code, 31 PR Laws Ann. §7), instructing

Courts, including this Honorable Article III Court, that when there is no statute applicable to the

case, the court shall decide in accordance with equity, which means that natural justice, as

embodied in the general principles of jurisprudence and in accepted and established usages and

customs, shall be taken in consideration.

The necessary premises or constituting elements for the going against own acts ("*actos*

*propios*") doctrine to be applicable are: (a) a certain behavior of a subject; (b) the fact that he has

generated a situation contrary to reality, that is apparent, and that through such appearances he

might influence the behavior of others; and, (c) that it be the basis of the trust of another party

which has acted in good faith and that therefore, has acted in a manner which would prejudice

22

him if his trust was defrauded. <u>Comisionado de Seguros de Puerto Rico v. Universal Insurance Company, Inc.</u>, 187 D.P.R. 164 (2012).

As with the equitable estoppel, the going against own acts doctrine serves as a defense against a subject and an impediment to such subject seeking to be released from its obligation regarding a situation created through the appearance it gave and the trust gained from others who are now being prejudiced.  Contradictory conduct of a subject is not allowed as it is then a contravention to the good faith and trust deposited by the parties.

In our jurisdiction, as in many others, it has been recognized that in some instances where the public interest will not be affected and where there may be a clear injustice, the doctrines of one's own acts and equitable estoppel may be invoked against the State.  An equitable estoppel may be asserted and found against the government if (1) the Government is acting in its proprietary rather than sovereign capacity; and (2) if its representative has been acting within the scope of his authority. <u>United States v. City of Lawrence</u>, 173 F. Supp. 307 (W.D. Pa. 1959); <u>United States v. Standard Oil Company of California</u>, 20 F. Supp. 427, 452 (S.D. Cal. 1937).

Furthermore, "where justice and fair play require it, estoppel will be applied against the government even when the government acts in its sovereign capacity if the effects of estoppel do not unduly damage the public interest." <u>Johnson v. Williford</u>, 682 F.2d 868, 871 (9th Cir. 1982); <u>Quiles Hernández vs. Del Valle</u>, 167 D.P.R. 458, 479 (2006). Therefore "the ethical content of each act should be examined in the light of its particular circumstances, but a behavior based on good faith is a general rule that encompasses every juridical activity. <u>Velilla v. Pueblo Supermarkets, Inc.</u>, 111 D.P.R. 585, 588 (1981)". *See* <u>Berríos v. U.P.R.</u>, 116 D.P.R. 88, 99 (1985).

## 2.    The Equitable Doctrines Applied

In the present case, both, public interest and avoidance of a clear injustice, require that these equitable doctrines be applied against the Commonwealth, the Non-Commonwealth Debtors and against the Objectors.  First of all, the issue, offer and sale of Puerto Rico Bonds to cooperatives was carried out by the Commonwealth and non-Commonwealth Debtors, acting through their statutory fiscal agent, the GDB, pursuant to the undue exercise of regulatory authority of COSSEC.  Accordingly, in the case of movants herein, they not only relied in all of the express indications and representations of validity of the bonds at hand, they specifically relied and acted upon the specific expressions of COSSEC misleadingly endorsing Puerto Rico Bonds and using its regulatory power to facilitate the placement of unsafe instruments in manners and amounts that otherwise would not have been proper for depository institutions.

In the case of movants herein, the government's misrepresentation of the validity and safety of these bonds were carried out under the guise of COSSEC's regulatory authority and power to compel cooperatives to deliver to the government a material portion of their liquid assets in exchange for what the government knew were unsafe bonds and excessive investments therein. Movants trusted the Commonwealth and its instrumentalities but ultimately were defrauded and betrayed by their actions. Consequently, the constitutive elements of both doctrines as previously expounded are present in the instant case and can be opposed to the objectors' request as a defense.

Aside from being inherently unfair and unjust, these misrepresentations and misuse of regulatory power run counter to the high public interest of protecting and safeguarding movants as depository institutions.  That precise public interest is the foundation for the complex and far reaching governmental regulatory structures that operate at the State and federal levels.  The

need to ensure the safety and soundness of depository institutions (i.e., banks and credit unions) is the justification for:

- the establishment and functioning of federal regulators such as the Federal Reserve System, the FDIC, the Office of the Comptroller of the Currency and the National Credit Union Administration ("NCUA").

- The establishment and operation of deposit insurance by the FDIC and of share and deposit insurance by the NCUA.

- The adoption by Congress of the broad and far reaching statutory and regulatory framework governing banks and credit unions.

These public safety nets dating back to the early twentieth century have been established, maintained and updated to protect the savings of depositors, to maintain the capacity of depository institutions to carry out financial intermediation, to provide credit and to serve as payment system, all of which are essential functions for the stability of our economy. The best acknowledgment, validation and assertion of that high public interest was the active public policy actions of the federal government and Congress to address the financial crisis of 2008.

Allowing the Commonwealth and non-Commonwealth Debtors to abjure from their actions and omissions regarding the issue, offer and placement of excessive unsafe bonds in the Cooperatives is a governmental action that actively and affirmatively seeks to undermine depository institutions, and that does not have place in our justice system. This is an unprecedented repudiation by the government of a fundamental public function which is essential to the stability of the economy. It is also a miscarriage of justice, a monumental failure of public policy and a betrayal to movants depositors. As of the latest published statistics (September 2019), the cooperatives had a total of 1.3 million savers (comprised of 1,040,611

25

members and an estimated 300,000 non-member depositors).  The appearing cooperatives alone have 114,819 members and an estimated 33,000 non-member depositors, all of which rely on the government's compliance with the statutory obligations of safeguarding and insuring their savings.

On the other hand, allowing the Objectors to be able to obtain the disallowance of movants' bond claims on grounds on constitutional interpretations and technicalities when movants deposited their trust when purchasing the instruments and were defrauded by the Commonwealth through its instrumentalities is simply unacceptable and unwarranted. Due to this situation and to the particular nature of the movants, Objectors in this case are impeded from seeking the disallowance of movants claims even on constitutional grounds. Therefore, movants respectfully request that the Omnibus objections be denied and dismissed as to their claims.

## VI.  **RESERVATION OF RIGHTS**

The Movants hereby reserve their rights with respect to other motions to dismiss the Claim Objections or any other objections, responses, joinders, or replies thereto, to the extent not inconsistent with the arguments expressed herein. Furthermore, movants hereby reserve their rights to raise subsequent arguments for dismissal of the Omnibus Objections and/or their Amendments.

## VII.      **CONCLUSION**

In light of all the above the Omnibus objections to claims filed at dockets #4784 and #9730 should be dismissed.

## CERTIFICATION

In accordance with paragraphs 4-5 of the Interim Case Management Order (Dkt No. 9619), Movants certify that (i) they have taken reasonable efforts to avoid duplication and submit a brief that is no longer than necessary, and (ii) they have used reasonable efforts to draft a single brief and coordinate to minimize duplicative briefs.

WHEREFORE, it is respectfully requested from this Honorable Court to enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and dismissing the Omnibus Objections to Claims filed at docket #4784 and docket # 9730.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants, including all counsel for the parties of record.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico this 19th day of February, 2020.



*Attorneys for Movants*
*Tel. 787-722-2500*
*PO Box 191757*
*San Juan, PR 00919-1757*

*/s/ Enrique M. Almeida, Esq.*
**Enrique M. Almeida, Esq.**
*USDC-PR 217701*
enrique.almeida@almeidadavila.com

27

**<u>EXHIBIT  A</u>**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br><br>*Debtors.*[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**ORDER GRANTING JOINT MOTION REQUESTING DISMISSAL OF OMNIBUS OBJECTIONS TO CLAIMS FILED OR ASSERTED BY HOLDERS OF CERTAIN COMMOWEALTH GENERAL OBLIGATION BONDS**

Upon consideration of the *Joint Motion requesting Dismissal of Omnibus Objections to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* (the "Motion"), and the Court having found and determined that (i) it has jurisdiction to consider the Motion and te relief requested therein pursuant to Section 502 of the bankruptcy Code as incorporated by section 301 of PROMESA and bankruptcy Rule 3007, as incorporated by section 310 of PROMESA; (ii) venue is proper before this Court pursuant to PROMESA section 307 (a); (iii) due and proper notice of this Motion has been provided under the particular circumstances and no other or further notice need to be provided; (iv) based on the statements and arguments

---

[1] The Debtors in these Title III Cases, along with each debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are 9i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of federal Tax ID: 3481); (ii) Puerto Rico Sales tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

made in the Motion, the relief requested therein is in the best interest of the Commonwealth and

its creditors; (v) any objections to the relief requested in the Motion having been withdrawn or

overruled; and (vi) the Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted therein. Accordingly, it is ORDERED THAT:

1.      The relief requested in the Motion is GRANTED to the extent set forth herein.

2.      The *Omnibus Objection of (I) Financial Oversight and Management Board
Acting through its Special Claims Committee, (II) Official Committee of Unsecured Creditors,
Pursuant to Bankruptcy Code Section 502 and bankruptcy Rule 3007, to Claims Filed or
Asserted by Holders of Certain Commonwealth General Obligation Bonds* (Dkt. No. 4784) is
dismissed.

3.      The *Omnibus Objection of the Lawful Constitutional Debt Coalition, Pursuant to
Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by
Holders of Certain Bonds Issued or Guaranteed by the Commonwealth* (Dkt. No. 9730) is
dismissed.

4.      The terms and conditions of this Order shall be immediately effective and
enforceable upon its entry.

5.      This Court retains jurisdiction with respect to all matters arising from or related to
the implementation of this Order.

Dated:_____, 2020

_____
HONORABLE LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE