# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

———————————————————————X
                                        :
In re:                                  :
                                        :
THE FINANCIAL OVERSIGHT AND             :        PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,       :        Title III
                                        :
    as representative of                :        Case No. 17-BK-3283 (LTS)
                                        :
THE COMMONWEALTH OF PUERTO RICO *et al.*, :      (Jointly Administered)
                                        :
    Debtors.[1]                         :
                                        :
———————————————————————X

**DRA PARTIES' MOTION TO DISMISS (I) OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION ON CONSTITUTIONAL DEBT LIMIT GROUNDS TO CLAIM OF GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO [CLAIM NUMBER 29485] BASED ON CERTAIN COMMONWEALTH-ISSUED NOTES AND ON COMMONWEALTH GUARANTY OF CERTAIN BOND ISSUED BY PORT OF AMERICAS AUTHORITY [DKT. NO. 9735] AND (II) OMNIBUS OBJECTION OF THE LAWFUL CONSTITUTIONAL DEBT COALITION, PURSUANT TO BANKRUPTCY CODE SECTION 502 AND BANKRUPTCY RULE 3007, TO CLAIMS FILED OR ASSERTED BY HOLDERS OF CERTAIN BONDS ISSUED OR GUARANTEED BY THE COMMONWEALTH [DKT. NO. 9730]**

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

4130-2183-4530.19

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 2

BACKGROUND ................................................................................................... 3

    A.    The DRA Was Created Pursuant to the GDB Restructuring Act ........................ 3

    B.    The GDB and its Creditors Undergo a Title VI restructuring .............................. 3

    C.    The DRA Restructuring Act Creates the Debt Recovery Authority .................... 4

    D.    The GDB Restructuring Act Transferred to the DRA the GO Loans and
           PAA Guaranty ................................................................................................... 5

    E.    The GDB Files Its Proof of Claim ...................................................................... 7

    F.    The UCC and LCDC Each Object to the Proof of Claim ................................... 8

JOINDER TO MOTION TO DISMISS ................................................................. 9

SUPPLEMENTAL ARGUMENTS ........................................................................ 10

    A.    The Third Party Objections Seek to Unwind Releases Granted to the GDB
           and DRA As Part of the Court-Approved GDB Title VI and Under
           Commonwealth Legislation ............................................................................... 10

    B.    Even if the Release in the GDB Restructuring Act Does Not Bind Third
           Parties, the UCC and LCDC Do Not Have Standing to Object to the Proof
           of Claim ............................................................................................................. 12

    C.    The PAA Guaranty Did Not Exceed the Debt Service Limit ............................. 14

CERTIFICATION ................................................................................................. 15

RESERVATION OF RIGHTS ............................................................................... 16

CONCLUSION ..................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kowal v. Malkemus (In re Thompson)*,
    965 F.2d 1136 (1st Cir. 1992) ........................................................................................13

*In re Simon*,
    179 B.R. 1 (Bankr. D. Mass. 1995) ...............................................................................13

**Statutes**

Act No. 171 ..............................................................................................................................15

Act No. 21-2016 .........................................................................................................................5

Act No. 242-2011 .......................................................................................................................6

Act No. 33-1942 .........................................................................................................................6

Act No. 409 .............................................................................................................................6, 7

Act No. 409 Art. 1 .........................................................................................................7, 14, 15

Act No. 409 Art. 2 ....................................................................................................................15

Act No. 47-2013 .........................................................................................................................6

11 U.S.C. § 502 ......................................................................................................................1, 13

11 U.S.C. § 544 .........................................................................................................................13

11 U.S.C. § 545 .........................................................................................................................13

11 U.S.C. § 547 .........................................................................................................................13

11 U.S.C. § 548 .........................................................................................................................13

11 U.S.C. § 549(a) .....................................................................................................................13

11 U.S.C. § 550 .........................................................................................................................13

11 U.S.C. § 926 .........................................................................................................................13

4130-2183-4530.19

11 U.S.C. § 926(a) ................................................................................................13

Bankruptcy Rule 3007 ............................................................................................1

GDB Restructuring Act Article 102 .......................................................................4

GDB Restructuring Act Article 201 .......................................................................3

GDB Restructuring Act Article 204 ....................................................................3, 4

GDB Restructuring Act Article 207 .......................................................................4

GDB Restructuring Act Article 701 .......................................................................11

GDB Restructuring Act Article 702 .......................................................................11

GDB Restructuring Act Article 703 .......................................................................11

GDB Restructuring Act Article 103 .......................................................................11

GDB Restructuring Act Article 703 .......................................................................11

PROMESA § 101(c)(1)............................................................................................11

PROMESA § 301(c)(7)............................................................................................14

PROMESA § 305 ....................................................................................................12

PROMESA § 315(a) ...............................................................................................12

PROMESA § 315(b) ...........................................................................................12, 14

PROMESA § 601(m)(1)(D)......................................................................................3

**Other Authorities**

Puerto Rico Constitution Article VI, Section 2 .......................................................8

Puerto Rico Constitution Article VI, Section 8 .......................................................5

4130-2183-4530.19

**COME NOW** AmeriNational Community Services, LLC (hereafter the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company which serves as the collateral monitor for Wilmington Trust, N.A. in connection with the new bonds issued by the DRA pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018 and the approved Qualifying Modification for the Government Development Bank for Puerto Rico[2] under Title VI of the *Puerto Rico Oversight, Management and Economic Stability Act* (the "Collateral Monitor" and with the Servicer, the "DRA Parties"), by and through the undersigned legal counsel, and respectfully submit this Motion to Dismiss (i) the *Official Committee of Unsecured Creditors' Omnibus Objection on Constitutional Debt Limit Grounds to (I) Claim of Government Development Bank for Puerto Rico [Claim Number 29485] Based on Certain Commonwealth-Issued Notes and on Commonwealth Guaranty of Certain Bond Issued by Port of Americas Authority, (II) Claim of Scotiabank de Puerto Rico [Claim Number 47658] Based on Full Faith and Credit Note Issued by Puerto Rico General Services Administration, and (III) Claims Filed or Asserted Against Commonwealth Based on Commonwealth Guaranty of Certain Notes Issued by Puerto Rico Infrastructure Authority* [Dkt. No. 9735] (the "UCC Objection") and (ii) the *Omnibus Objection of the Lawful Constitutional Debt Coalition, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Bonds Issued or Guaranteed by the Commonwealth* [Dkt. No. 9730] (the "LCDC Objection," jointly the "Third Party Objections") insofar as each relate to the Proof of Claim (as defined herein).

---

[2] *See* Dkt. No. 270 of Civil Case No. 18-01561 (LTS).

1

## PRELIMINARY STATEMENT

The UCC's and LCDC's arguments that certain of DRA's Commonwealth issued or guaranteed debt violated the Constitutional debt limit lack substantive merit.  More troublingly, the LCDC and the UCC seek, by means of claims objections, to subvert Commonwealth law and the GDB's Title VI proceeding approved by this Court just fifteen months ago.  The Court should not permit this and should dismiss the Third Party Objections.

The debts in question are immune from challenge on the grounds asserted as they have been released and foreclosed by the GDB's Title VI restructuring and Commonwealth law.  As set forth in detail below, the Commonwealth passed legislation around the same time as the Title VI restructuring in which the FOMB and the Commonwealth granted broad releases that protected the GDB and DRA from liability for claims or causes of action that existed prior to the consummation of GDB's Title VI restructuring in 2018.  This legislation also validated all of the GDB's loans and bonds it held.

Despite the clear resolution by the Court and the Commonwealth legislation, and despite the heavily negotiated settlement among the parties embodied in the Title VI restructuring of the GDB, the UCC and LCDC look to take another shot at the GDB bondholders – for whose benefit the Commonwealth created the DRA.  They do so despite the fact that they lack any standing and have not sought and received approval from the Court of such standing.  As set forth in detail herein, this Court should prohibit the UCC and LCDC from taking such actions.

Finally, the Commonwealth's guaranty of bonds originally issued by the Port of the Americas Authority in 2005 should not be subject to challenge as causing the Commonwealth to exceed the constitutional debt service limit because the Commonwealth issued the guaranty years before it allegedly exceeded the constitutional debt service limit.

4130-2183-4530.19

## BACKGROUND

**A.  The DRA Was Created Pursuant to the GDB Restructuring Act**.

1.      On November 5, 2018, the Financial Oversight and Management Board of Puerto

Rico (the "FOMB") certified the Qualifying Modification under the *Puerto Rico Oversight,*

*Management, and Economic Stability Act* ("PROMESA")[3] for the Government Development

Bank of Puerto Rico (the "GDB"), which Qualifying Modification this Court subsequently

approved by Order dated November 7, 2018.  *See* Dkt. No. 270 of Civil Case No. 18-01561

(LTS).

2.      The DRA is a statutory public trust and governmental instrumentality of the

Commonwealth created by the Government Development Bank for Puerto Rico Debt

Restructuring Act, Act No. 109-2017 dated August 24, 2017, as amended by Act No. 147-2018

dated July 18, 2018 (the "GDB Restructuring Act") to facilitate the GDB's Title VI restructuring

of certain indebtedness pursuant to the Qualifying Modification.  *See* Act No. 109-2017 at Arts.

201 and 204.

**B.  The GDB and its Creditors Undergo a Title VI restructuring**.

3.      This Court effectuated the GDB's Title VI restructuring by an order approving the

Qualifying Modification dated November 7, 2018.  *See* Findings of Fact, Conclusions of Law,

and Order Approving Qualifying Modification for the Government Development Bank for

Puerto Rico Pursuant to Section 601(m)(1)(D) of the Puerto Rico Oversight, Management, and

Economic Stability Act, Dkt. No. 270 of Civil Case No. 18-01561 (LTS) (the "Approval

Order").  To solicit approval of the Qualifying Modification, the GDB's information and

---

[3] PROMESA is codified at 48 U.S.C. §§ 2101 – 2241.

3

calculation agent distributed a Solicitation Statement for the GDB (the "Solicitation Statement"),
dated as of Aug. 9, 2018, to the GDB's prepetition creditors to vote on the Qualifying
Modification.

4.      Pursuant to the Solicitation Statement, the GDB's prepetition creditors voted to
accept the GDB's Title VI Qualifying Modification, in which existing GDB bondholders
received new 7.50% GDB Debt Recovery Authority Bonds (Taxable) due 2040, which were
issued by the DRA.  *See* Ex. 1, Solicitation Statement at 8.[4]  The new bonds have a face amount
equal to 55% of the creditor's claim.  *See* Approval Order at ¶ 13; Ex. 1, Solicitation Statement
at 8.

**C. The DRA Restructuring Act Creates the Debt Recovery Authority**.

5.      The Solicitation Statement describes in detail the GDB Restructuring Act and its
creation of the DRA.  *See, e.g.*, Ex 1, Solicitation Statement at 10.  The GDB Restructuring Act
served to "establish the legislative framework for the" GDB restructuring.  GDB Restructuring
Act at Art. 102.

6.      The GDB Restructuring Act charged the DRA with receiving the property
transferred from the GDB and liquidating those assets to pay obligations under new bonds issued
by the DRA to GDB creditors on account of their GDB claims.  *See* GDB Restructuring Act at
Arts. 204 and 207.  As set forth in greater detail below, the GDB Restructuring Act also contains
a series of provisions that released the GDB and DRA from certain claims and confirmed that
validity of the debt assets held by the GDB.  *See infra* ¶¶ 19–23.

---

[4] All citations to "Ex. __" refers to exhibits to the Declaration of Arturo J. García-Solá submitted contemporaneously
with this Motion to Dismiss.

**D.  The GDB Restructuring Act Transferred to the DRA the GO Loans and PAA
Guaranty**.

7.        In connection with the GDB's Title VI Qualifying Modification, the GDB

transferred certain debt obligations owed by the Commonwealth to the GDB (the "GDB/GO

Obligations") to the DRA.  The GDB/GO Obligations include four bilateral loans (the "GO

Loans") made by GDB to the Commonwealth in 2012 and 2013, with an aggregate outstanding

principal balance of approximately $169.4 million evidenced by four separate notes (collectively,

the "GDB Notes").  *See* Ex. 2, Offering Memorandum for GDB Debt Recovery Authority Bonds

(Taxable), dated as of Nov. 7, 2018 (the "OM") at 126.

8.        In each GDB Note, the Commonwealth represented that it issued the note in

compliance with applicable law, including the Puerto Rico Constitution.  *See* Ex. 3,

Commonwealth of P.R. Public Improvement Refinancing Notes, Series 2012 B-2, dated as of

Dec. 2, 2013 ("It is hereby certified and recited that all acts, conditions and things required by

the . . . Constitution and Laws of the Commonwealth of Puerto Rico to happen, exist and be

performed precedent to and in the issuance of this Note have happened, exist and have been

performed in due time, form and manner as so required."); Ex. 4, Commonwealth of P.R. Public

Improvement Notes of 2012, Series B-6, dated as of May 15, 2015 (same); Ex. 5,

Commonwealth of P.R. Public Improvement Refinancing Note of 2013, Series B, dated as of

July 2, 2013 (same); Ex. 6, Commonwealth of P.R. Public Improvement Notes, Series 2013B-2,

dated as of May 15, 2015 (same).  Obligations under the GO Loans are "public debt" under

Article VI, Section 8 of the Puerto Rico Constitution because the Puerto Rico legislature passed

statutes providing that the debts are backed by a pledge of the Commonwealth's good faith, credit and taxing power. *See* Act Nos. 242-2011, Act 33-1942 and Act 47-2013.[5]

9. In 2005, the Port of the Americas Authority ("PAA") issued three series of bonds that were guaranteed by the Commonwealth (the "2005 PAA Bonds"). The 2005 PAA Bonds consist of (i) a $70,000,000 2005 Series A Bond (the "Series A Bond"), (ii) a $40,000,000 2005 Series B Bond (the "Series B Bond"), and (iii) a $140,000,000 2005 Series C Bond (the "Series C Bond"), for a total aggregate outstanding principal amount of $250,000,000. The GDB purchased the 2005 PAA Bonds pursuant to three separate bond purchase agreements. *See* Ex. 7, Bond Purchase Agreement for $70,000,000 2005 PAA Series A Bond, dated as of Apr. 20, 2005 between the GDB and PAA; Ex. 8, Bond Purchase Agreement for $40,000,000 2005 PAA Series B Bond, dated as of Aug. 31, 2005 between the GDB and PAA; and Ex. 9, Bond Purchase Agreement for $140,000,000 2005 PAA Series C Bond, dated as of Nov. 10, 2005.

10. The Commonwealth guaranteed the 2005 PAA Bonds pursuant to statute, *see* Act No. 2004-409 (Sept. 22, 2004) ("Act 409"), and each bond expressly states this guaranty, *see* Ex. 10, Series A Bond at 2 ("This Bond is covered by the guaranty of the Commonwealth of Puerto Rico provided under Act No. 409 of the Legislature of Puerto Rico, approved September 22, 2004."); Ex. 11, Series B Bond at 2 (same); Ex. 12, Series C Bond at 2 (same).

11. In 2014, the PAA refinanced obligations under the 2005 PAA Bonds through the issuance of a single bond in an aggregate principal amount of $233,630,826.29 (the "PAA Bond") which the PAA used to refinance the 2005 PAA Bonds. *See* Ex. 13, Bond Purchase Agreement (the "Bond Purchase Agreement"), dated December 31, 2014 between the GDB and

---

[5] Act No. 21-2016, the Puerto Rico Emergency Moratorium and Rehabilitation Act, defines "public debt" as "full faith and credit debt protected by the Constitution."

6

PAA at 1.  Similar to the 2005 PAA Bonds, the Commonwealth guaranteed the PAA Bond

through Act 409, and the PAA Bond expressly states this guaranty.  *See* Ex. 14, PAA Bond at 2

("This Bond has been designated by the [PAA] as a bond issued under Act 409 and it is therefore

covered by the guaranty of the Commonwealth under Act 409 and the Commonwealth is

accordingly obligated to pay the principal of this Bond and the interest thereon to the extent that

the revenues and other moneys of the [PAA] pledged to the payment of such principal and

interest are not sufficient for that purpose.").  As of the date hereof, the PAA Bond has an

outstanding principal balance of approximately $225.5 million.  *See* Ex. 2, OM at 101.

12.     Similar to the GDB Notes, the PAA Bond contains a representation that it was

issued in compliance with Commonwealth law, including the Puerto Rico Constitution.  *See* Ex.

14, PAA Bond at 1–2 ("This Bond is issued under the authority of and in full compliance with

the . . . Constitution and laws of the Commonwealth . . . .  It is hereby certified that all acts,

conditions, and things required to happen, exist, and be performed precedent to, and in the

issuance of, this Bond have happened, exist, and have been performed in due time, form, and

manner as required by the Constitution and laws of the Commonwealth.").  Moreover, the PAA

Bond constitutes public debt under the Puerto Rico Constitution because the Commonwealth

pledged its good faith and credit to guarantee payments under the PAA Bond.  *See* Act No. 409 §

1.

**E.  The GDB Files Its Proof of Claim**.

13.     On May 25, 2018, the GDB filed Proof of Claim Number 29485 (the "Proof of

Claim") against the Commonwealth.  The GDB transferred a portion of the Proof of Claim

relating to the GDB Notes and the PAA Guaranty to the DRA pursuant to the Qualifying

Modification following the effective date of the GDB's Qualifying Modification under Title VI

7

of PROMESA. *See* Approval Order ¶ 13; *Joint Motion to Clarify Transfer of Claim* [Dkt. No.
5628].

**F. The UCC and LCDC Each Object to the Proof of Claim**.

14. Prior to filing the UCC Objection, the UCC (either on its own or together with the
FOMB) filed other claim objections during the period from January through July 2019
challenging (i) the validity of the GO bonds issued by the Commonwealth in 2012 and 2014 and
seeking disallowance of all claims based on such bonds [Dkt. No. 4784] (the "2012-2014 GO
Claim Objection"), (ii) the validity of certain GO bonds issued by the Commonwealth in 2011
and seeking the disallowance of all claims based on such bonds [Dkt. No. 7057] (the "2011 GO
Claim Objection"), and (iii) the validity of bonds issued by the PBA in 2011 and 2012 and
seeking the disallowance of all claims filed or asserted against the Commonwealth based on such
bonds and the Commonwealth's guarantee thereof [Dkt. No. 8141] (the "PBA Claim Objection,"
and together with the 2012-2014 GO Claim Objection and the 2011 GO Claim Objection, the
"FOMB/UCC Debt Claim Objections"). The original FOMB/UCC Debt Claim Objections did
not challenge the GDB/GO Obligations.

15. On January 8, 2020, the UCC filed the UCC Objection, in which the UCC seeks
to disallow the portion of the Proof of Claim based on the GDB Notes and PAA Guaranty on the
grounds that the GDB Notes and PAA Guaranty were issued in violation of Article VI, Section 2
of the Puerto Rico Constitution, which (i) limits the amount that the Commonwealth may borrow
on the basis of the amount of debt service it would have to pay relative to its historical revenues
(the "Debt Service Limit") and (ii) prohibits the Commonwealth from guaranteeing any bonds or

8

notes if the Debt Service Limit has been exceeded.  *See* UCC Objection ¶¶ 25–28.[6]  The UCC

Objection incorporates arguments previously raised in the FOMB/UCC Debt Claim Objections

and makes them applicable to the GDB/GO Obligations, including arguments about the Debt

Service Limit.  *See id.* ¶¶ 6, 7.

16.     Also on January 8, 2020, the Lawful Constitutional Debt Coalition (the "<u>LCDC</u>")

filed the LCDC Objection.  The LCDC similarly argues that certain bonds were issued in

violation of the Debt Service Limit, including Commonwealth GO bonds issued in or after

March 2012 and PBA bonds issued in or after March 2012.  *See* LCDC Objection ¶ 4.  The

LCDC Objection likewise asserts that the Commonwealth lacked constitutional authority to issue

the PAA Guaranty.  *See id.* ¶ 50.

### <u>JOINDER TO MOTION TO DISMISS</u>

17.     The DRA Parties hereby join in the *Motion of the Ad Hoc Group of General*

*Obligation Bondholders, Ad Hoc Group of Constitutional Debtholders, Assured Guaranty Corp.*

*and Assured Guaranty Municipal Corp., and the Invesco Funds to Dismiss Omnibus Claim*

*Objections to Claims filed or Asserted by Holders of Certain Commonwealth General Obligation*

*Bonds and Public Buildings Authority Bonds* [Dkt. No. 10702] (the "<u>GO Group Motion to</u>

<u>Dismiss</u>") and the *Supplemental Memorandum of the Ad Hoc Group of General Obligation*

*Bondholders, Ad Hoc Group of Constitutional Debtholders, and Assured Guaranty Corp. and*

*Assured Guaranty Municipal Corp. in Support of Motion to Dismiss* [Dkt. No. 10704] (the "<u>GO</u>

<u>Group Supplemental Motion to Dismiss</u>") in all respects and incorporate by reference the

arguments set forth therein.

---

[6] The UCC also objected to claims filed by other creditors on the same grounds.  *See* UCC Objection ¶¶ 15–19.

4130-2183-4530.19

18.     In particular, the DRA Parties draw attention to the argument set forth in the GO Group Motion to Dismiss that the doctrine of estoppel by recitals precludes the objectors from retroactively invalidating the Challenged Bonds (as defined in the GO Group Motion to Dismiss).  *See* GO Group Motion to Dismiss at 54–59.  The doctrine of estoppel by recitals provides that when bonds on their face recite compliance with applicable constitutional limitations, they cannot be retroactively nullified based on alleged non-compliance with such limitation.  *See id.* at 54–55.  In this case, the GDB Notes and PAA Bond each contain an express representation that they were issued in compliance with applicable law and the Puerto Rico Constitution.  *See supra* at ¶¶ 8, 12.  Accordingly, these representations foreclose the UCC's and LCDC's ability to argue that the obligations under the GDB Notes and PAA Guaranty should be voided.  *See* GO Group Motion to Dismiss at 56 (stating that parties are entitled to rely on the validity of recitals made by the Commonwealth in its debt documents, and the Commonwealth's representations cannot now be disavowed in order to retroactively nullify the debt).

## **SUPPLEMENTAL ARGUMENTS**

### **A. The Third Party Objections Seek to Unwind Releases Granted to the GDB and DRA As Part of the Court-Approved GDB Title VI and Under Commonwealth Legislation**

19.     The GDB's Title VI restructuring effectively released the DRA from the claims asserted in the Third Party Objections.  Integral to the GDB's Title VI restructuring are a series of provisions in the GDB Restructuring Act that confirm the validity of the note and loan assets held by GDB (including those challenged here), release the GDB and DRA from certain liabilities, and prevent the unwinding of the GDB's Title VI restructuring.

10

20.     First, "Government Entities"[7] released all rights or claims against GDB or the DRA based on claims that existed on or prior to the consummation of the GDB's restructuring. *See* GDB Restructuring Act Art. 702.  Article 702 of the GDB Restructuring Act expressly provides that each Government Entity is "deemed to forever waive, release and discharge GDB [and] the [DRA] . . . from any and all such claims."  *Id.*  The releasing parties include the Commonwealth itself and AAFAF, as well as the FOMB.  *See* GDB Restructuring Act § 103 (defining "Government Entity"); PROMESA § 101(c)(1) (establishing FOMB as "an entity within the territorial government").  This release is sufficiently broad to capture challenges to the constitutional validity of the GDB and DRA's debt assets.

21.     Second, Article 701 of the GDB Restructuring Act confirmed that all bonds and notes issued by any Government Entity to the GDB and all loans made by GDB to a Government Entity prior to the GDB Restructuring Act's effectiveness are and continue to be valid and binding obligations of the applicable Government Entity.  *See* GDB Restructuring Act § 701. The GDB Restructuring Act became effective in 2017 (and then amended in 2018), years after the alleged breach of the Debt Service Limit.

22.     Finally, under Article 703, no Government Entity has the "authority or standing to challenge" the GDB Restructuring Act, the GDB's Title VI restructuring, or other transactions contemplated in the GDB Restructuring Act in any local or federal court.  GDB Restructuring Act § 703.

---

[7] The GDB Restructuring Act defines a "Government Entity" as "any agency, department, office, public corporation, trust, fund, system, instrumentality, political subdivision, taxing authority or municipality of the Government of Puerto Rico [….]"  GDB Restructuring Act Art. 103.  PROMESA establishes the FOMB as "an entity within the territorial government for which it is established . . . ."  PROMESA at § 101(c)(1).

11

23.     Based on the foregoing, the FOMB and the Commonwealth released the GDB and
DRA from any claims and causes of action that could have been brought in respect of the
constitutional validity of the GDB/GO Obligations through the Court-approved Title VI
restructuring.  Because only the FOMB may act as the representative of the Commonwealth in its
PROMESA Title III proceeding – and it has released the GDB and DRA – the release is binding,
and no third parties can take steps to circumvent it.  *See* PROMESA § 315(a) (providing that "the
Oversight Board may take any action necessary on behalf of the debtor to prosecute the case of
the debtor, including . . . generally submitting filings in relation to the case with the court"); *id.* §
315(b) ("The Oversight Board in a case under this subchapter is the representative of the
debtor.").

24.     Permitting the UCC or LCDC to sidestep the FOMB and the releases provided to
the DRA would unwind the heavily negotiated Title VI restructuring.  The Court should not
permit them to do so.

**B.  Even if the Release in the GDB Restructuring Act Does Not Bind Third Parties,
the UCC and LCDC Do Not Have Standing to Object to the Proof of Claim**.

25.     Even if the Court finds that the release set forth in GDB Restructuring Act is not
binding on the UCC and LCDC, the Court should still dismiss the portions of the Third Party
Objections relating to the Proof of Claim because neither party has (or can) obtain derivative
standing to object to the Proof of Claim.

26.     As this Court made clear in its ruling denying a prior request by the UCC to seek
derivative standing on behalf of the Commonwealth, *see* Dkt. No. 6325, "absent the express
consent of the Oversight Board, PROMESA's statutory framework [under Section 305] does not
allow the Court to grant derivative standing to a third party to bring actions that are not expressly

12

enumerated under section 926 of the Bankruptcy Code." *See* Ex. 15, Apr. 24, 2019 Hr'g. Tr. at

160:23-161:2.[8]  In so holding, the Court observed that if it "were to grant the Committee non-

consensual derivative standing to pursue claims that the Board has declined to assert, the Court

would not only be second guessing the Oversight Board's decision, but also potentially

obligating the Commonwealth to expend its own resources to fund such litigation, and

potentially complicating the Board's exclusive authority in respect of plans of adjustment." *Id.*

at 160:1-8.

27.    In this case, the FOMB has declined to object to the GDB's Proof of Claim, and

in fact, affirmatively chose to release the GDB from those potential objections. *See supra* ¶¶ 20,

22–23.  Accordingly, for this reason alone, the Court should dismiss the portions of the UCC's

and LCDC's respective objections pertaining to the Proof of Claim.

28.    Moreover, neither the UCC nor the LCDC has sought (or met) the standards for

derivative standing.  The First Circuit has stated that, "[a]s a general rule," the trustee is the only

party that may object to proofs of claim.  *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136,

1147 (1st Cir. 1992).  A creditor or creditors' committee may object under narrow circumstances

where they petition the trustee to object, the trustee refuses to object, and they obtain leave of the

court to object in the trustee's stead.  *See id.*; *see also In re Simon*, 179 B.R. 1, 6–7 (Bankr. D.

Mass. 1995) ("Several courts, including the First Circuit, have ruled that a creditor may seek

leave from the court to object to a proof of claim *only* if the trustee refuses to take any action . . .

The objecting creditor must also establish that if the objection to the proof of claim were

---

[8] Section 926(a) of the Bankruptcy Code permits the court to appoint a trustee to pursue causes of action under
sections 544, 545, 547, 548, 549(a), or 550 only if the debtor refuses to pursue such actions.  None of these sections
are implicated here as the UCC and LCDC have moved to disallow the GDB's claims under section 502 of the
Bankruptcy Code.  *See* UCC Objection ¶ 22; LCDC Objection ¶ 1.

sustained, there would be some benefit to the estate.") (citing *In re Thompson*, 965 F.2d at 1147). Under Section 301(c)(7) of PROMESA, the term "trustee," as used in a Bankruptcy Code section made applicable to PROMESA, refers to the FOMB. *See* PROMESA § 301(c)(7); *see also id.* § 315(b) (naming the FOMB as the debtor's representative in Title III).

29.     Here, neither the UCC nor the LCDC have sought leave to object.  Additionally, they have not attempted to satisfy the First Circuit's standard for derivative standing and have not obtained prior leave from the Court to file the Third Party Objections in the FOMB's stead.

### C. The PAA Guaranty Did Not Exceed the Debt Service Limit.

30.     The Court should not disallow the portion of the Proof of Claim relating to the PAA Guaranty because it was issued in 2005, prior to the alleged breach of the Debt Service Limit.  The UCC has challenged the validity of the PAA Guaranty on the grounds that it violates the Debt Service Limit established by the Puerto Rico Constitution.  *See* UCC Objection ¶¶ 25–28.  The UCC Objection incorporates arguments previously raised in the FOMB/UCC Debt Claim Objections, including arguments about the Debt Service Limit.  *See id.* ¶ 6.  The LCDC has also claimed that the Commonwealth lacked constitutional authority to issue the PAA Guaranty.  *See* LCDC Objection ¶ 50.  The UCC has alleged that the Commonwealth breached the Debt Service Limit at some point in 2011.  *See* 2011 GO Claim Objection ¶ 25.  The LCDC has asserted that the Commonwealth tripped the Debt Service Limit on March 29, 2012.  *See* LCDC Objection ¶ 4.  As set forth in detail below, however, the PAA Guaranty became effective in 2005 – years before the UCC and LCDC claim that the Debt Service Limit may have been breached.

31.     Act 409 created the PAA Guaranty.  Act 409 states that: "[t]he Commonwealth of Puerto Rico hereby guarantees to pay the principal and interest on bonds issued by the Port of the

14

Americas Authority for any of its purposes authorized by Act No. 171 of August 11, 2002, that

are outstanding at any given time for the total amount of the principal that does not exceed two

hundred fifty million (250,000,000) dollars." Act 409 § 1. The legislation passed in 2004 and

provides that "[t]his Act shall take effect immediately after its approval." *Id.* § 2.

32.     The Commonwealth's obligations under the PAA Guaranty arose in 2005, the

year the 2005 PAA Bonds were issued, long before the Commonwealth allegedly exceeded the

Debt Service Limit in 2011 and/or 2012. *See* Act 409 § 1. The 2005 PAA Bonds were

subsequently refinanced into a single, Commonwealth-guaranteed bond – the PAA Bond –

which the GDB agreed to purchase. *See* UCC Objection ¶ 14; Ex. 13, Bond Purchase Agreement

§ 2.

33.     The PAA Guaranty took effect in 2005 and has remained in effect

notwithstanding the refinancing of the 2005 PAA Bonds. In addition, such guaranty has

remained in effect from that date forward in the Commonwealth's books and records. There is

therefore no basis to disallow the portion of Proof of Claim that pertains to this obligation

because it was incurred several years before the alleged breach. Accordingly, the Court should

dismiss the UCC Objection and the LCDC Objection insofar as each relates to the PAA

Guaranty.

## **CERTIFICATION**

34.     The *Interim Case Management Order* [Dkt. No. 9619] (the "Interim CMO")

entered by the Court on December 19, 2019 requires that all parties filing briefs regarding the

Claim Objections (as defined therein) certify that they have taken reasonable efforts to avoid

duplication and submit briefs that are no longer than necessary. *See* Interim CMO ¶ 4. The

CMO further states that bondholders and interested parties in the Claims Objections must certify

to the Court that they have reviewed all briefs submitted by the Identified Parties or Certain Interested Defendants (as each is defined therein) and may only file additional briefs if they raise arguments or issues not addressed in the briefs filed by the Identified Parties. *See id.* ¶ 6.

35.     The DRA Parties hereby certify that (i) they have taken reasonable efforts to avoid duplication and submit a brief that is no longer than necessary, (ii) they have reviewed the briefs submitted by the Identified Parties and Certain Interested Defendants, and (iii) the arguments raised herein are not addressed in such briefs.

## RESERVATION OF RIGHTS

36.     The DRA Parties reserve all rights and remedies with respect to each of the Third Party Objections, including but not limited to, the right to file additional submissions or objections with the Court.

## CONCLUSION

37.     WHEREFORE, the DRA Parties respectfully request that the Court enter an order dismissing the Third Party Objections insofar as they each relate to the Proof of Claim.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today February 19, 2020.

16

4130-2183-4530.19

**MCCONNELL VALDÉS LLC**

270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
PO Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: 787-250-5632
Facsimile: 787-759-9225

By: */s/Arturo J. García-Solá*
Arturo J. García-Solá
USDC No. 201903
Email: ajg@mcvpr.com

By: */s/Nayuan Zouairabani*
Nayuan Zouairabani
USDC No. 226411
Email: nzt@mcvpr.com

*Attorneys for AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority*

**C. CONDE & ASSOC. LAW OFFICES**

By: */s/ Carmen D. Conde Torres*

Carmen D. Conde Torres
(USDC No. 207312)
254 San José Street
Suite 5
San Juan, PR 00901-1523
Tel. 787-729-2900
Fax. 787-729-2203
E-Mail: condecarmen@condelaw.com

*-and-*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: */s/ Douglas S. Mintz*
Douglas S. Mintz (admitted pro hac vice)
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
E-mail: dmintz@orrick.com

and

Laura Metzger (admitted pro hac vice)
Peter Amend (admitted pro hac vice)
Monica Perrigino (admitted pro hac vice)
51 West 52nd Street
New York, N.Y. 10019
Telephone: (212) 506-5000
E-mail:    lmetzger@orrick.com
           pamend@orrick.com
           mperrigino@orrick.com

*Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for GDB Debt Recovery Authority*

17