# **EXHIBIT 9**

Bond Purchase Agreement for $140,000,000 Port of the Americas Authority 2005 Series C Bond, dated as of Nov. 10, 2005 between the GDB and PAA.

BOND PURCHASE AGREEMENT

$140,000,000
PORT OF THE AMERICAS AUTHORITY
2005 SERIES C BOND

November 10, 2005

Port of the Americas
Authority
P.O. Box 362350
San Juan, Puerto Rico 00936-2350

Dear Sirs:

The Government Development Bank for Puerto Rico (the "Purchaser") hereby agrees, subject to the terms and conditions and upon the basis of the representations, warranties, and agreements set forth herein, to purchase from Port of the Americas Authority (the "Authority"), a government instrumentality and public corporation of the Commonwealth of Puerto Rico created by Act No. 171 of August 11, 2002, as amended (the "Act"), a bond with an aggregate principal amount of up to $140,000,000, designated as the "2005 Series C Bond" (the "Bond").

1. **Authorization of Bond.** The Board of Directors of the Authority has authorized the issuance and sale of the Bond pursuant to Resolution No. 2005-23, approved on August 18, 2005 (the "Bond Resolution").



Document #: 20767

2. **Maximum Aggregate Principal Amount.** The Purchaser agrees to disburse to the Authority, from time to time, a maximum aggregate principal amount of One Hundred and Forty Million Dollars ($140,000,000) (each such disbursement of Bond principal is defined as a "Bond Principal Advance"). The aggregate unpaid principal balance of all outstanding Bond Principal Advances shall be payable in full on January 1, 2015 (the "Maturity Date") or such earlier date as may be provided under this Bond Purchase Agreement (the "Principal Repayment Date").

3. **Interest.** The unpaid principal balance of each Bond Principal Advance shall bear interest at a rate per annum (the "Interest Rate") equal to: (i) in the event that such Bond Principal Advance is funded by tax-exempt commercial paper issued by the Purchaser, the interest rate borne by such tax-exempt commercial paper plus 150 basis points; or (ii) in the event that such Bond Principal Advance is funded by taxable commercial paper issued by the Purchaser, the interest rate borne by such taxable commercial paper plus 175 basis points.

Each Bond Principal Advance shall accrue interest on the amount outstanding thereof for the period commencing on the date such Bond Principal Advance is disbursed by the Purchaser until the entire principal amount of such Bond Principal Advance is paid in full. The Interest Rate applicable to each Bond Principal Advance during such period shall be determined on the day such Bond Principal Advance is disbursed and shall be adjusted on the first day of each successive calendar month thereafter.

The Authority shall pay interest on any outstanding Bond Principal Advances commencing on August 1 immediately following the disbursement of such Bond Principal Advance, on each August 1 thereafter, and on the Maturity Date or Principal Repayment Date, as applicable.

The Purchaser shall notify the Authority, on the date of disbursement of each Bond Principal Advance, the initial Interest Rate applicable to such Bond Principal Advance, and, thereafter, not later than the third day of each successive calendar month, the Interest Rate applicable to each outstanding Bond Principal Advance and the Interest Rate applicable to the aggregate outstanding principal amount of all Bond Principal Advances.



4. **Disbursement**.  The Purchaser agrees to disburse to the Authority, from time to time, upon request in the manner set forth herein, Bond Principal Advances in an aggregate amount not to exceed One Hundred Forty Million Dollars ($140,000,000). Such disbursements of Bond Principal Advance shall be funded from the proceeds of the issuance by the Purchaser of either taxable or tax-exempt commercial paper.

When the Authority's intended use of a Bond Principal Advance qualifies for tax-exempt status, such Bond Principal Advance shall be funded from the proceeds of the issuance by the Purchaser of tax-exempt commercial paper.

The Authority shall request each disbursement of Bond Principal Advance not later than three (3) business days prior to the proposed date of the disbursement of each such Bond Principal Advance. Such request shall include a brief description of the proposed use for such Bond Principal Advance. Each disbursement of Bond Principal Advance shall be recorded in the Bond in the manner set forth therein.

5. **Payment**.  The Authority hereby unconditionally promises to pay interest on the amounts and dates due, as provided hereunder, and principal on the Maturity Date or Principal Repayment Date, as applicable. The payment of interest and principal on the Bond shall be in accordance with the terms of this Bond Purchase Agreement and the Bond. All payments of principal shall be applied, unless otherwise expressly stated by the Authority, to the earliest outstanding Bond Principal Advance. Upon each payment by the Authority, the appropriate entry shall be recorded on the Bond, as provided therein.

The Authority shall have the right at any time and from time to time to prepay any Bond Principal Advance in whole or in part. In such event, the Authority shall notify the Purchaser by telephone (confirmed by telecopy) of any prepayment hereunder not later than one (1) business day before the date of prepayment. Each such notice shall specify the prepayment date and the principal amount of each Bond Principal Advance or portion thereof to be prepaid. Prepayments are to be made in the same manner as all other payments hereunder.

If the Authority issues any bond(s) to refinance the Bond, the Authority shall be required to prepay, on the date of issuance of such refinancing bond(s), the entire aggregate amount of Bond Principal Advances outstanding and any interest thereon.



6. **Conditions Precedent to Disbursement.** The obligations of the Purchaser to make Bond Principal Advances shall be subject to the following condition precedent:

(a) prior to the initial Bond Principal Advance, the Authority shall obtain from the Office of Management and Budget of the Commonwealth of Puerto Rico ("OMB") a written confirmation whereby OMB agrees and commits to include in the budget for the Commonwealth of Puerto Rico (the "Commonwealth"), for the fiscal year immediately following the execution of this Bond Purchase Agreement and for each fiscal year thereafter until the Maturity Date, budgetary assignments to the Authority sufficient to cover the payment of interest due on the Bond on each such fiscal year.

(b) the payment of principal and interest on the Bond shall be covered by the guarantee of the Commonwealth pursuant to Act No. 409 of the Legislature of Puerto Rico, approved on September 22, 2004 ("Act 409").

7. **Affirmative Covenant of the Authority.** The Authority hereby agrees to duly and promptly pay or cause to be paid the principal of and interest on the Bond, on the dates required and in accordance with the terms of the Bond and this Bond Purchase Agreement.

8. **Events of Default and Remedies.** The Purchaser will notify the Authority in writing of the occurrence of any event of default hereunder, and the Authority shall have a grace period of thirty (30) days from notice thereof to cure the default.

The occurrence of any one or more of the following events (regardless of the reason therefor) shall constitute an "Event of Default" hereunder:

(a) the Authority shall fail to pay any principal of or interest on the Bond when the same shall become due and payable, whether on the due date therefor or any accelerated due date or at any other date fixed for payment; or

(b) any representation or warranty of the Authority in this Bond Purchase Agreement shall prove to have been false in any material respect on the date when made.



In the event of the occurrence of any of the foregoing Events of Default, and after the Purchaser gives the Authority notice of default and such default is not cured within a grace period of thirty (30) days from the date of such notice, the Purchaser may accelerate the maturity of the Bond and declare all amounts owed with respect to the Bond and this Bond Purchase Agreement to be, and they shall thereupon forthwith mature and become, immediately due and payable without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived by the Authority.

9. **Representations, Warranties and Agreement of the Authority**. The Authority represents, warrants, and agrees as follows:

(a) The Authority is a public corporation and governmental instrumentality of the Commonwealth, duly constituted and existing under the laws of the Commonwealth, particularly the Act, with full legal right, power, and authority to enter into this Bond Purchase Agreement, to adopt the Bond Resolution, to issue, sell, and deliver the Bond to the Purchaser as provided herein and in the Bond Resolution, and to carry out and consummate all other transactions contemplated by this Bond Purchase Agreement and the Bond Resolution.

(b) The Bond Resolution and Act 409 are in full force and effect and have not been amended, modified, or rescinded.

(c) By official action of the Authority prior to or concurrently with its execution of this Bond Purchase Agreement, the Authority has duly adopted the Bond Resolution and has duly authorized and approved the execution and delivery of, and the performance by the Authority of the obligations contained in, the Bond, and this Bond Purchase Agreement.

(d) The execution and delivery of this Bond Purchase Agreement has been duly and validly authorized by the Authority and constitutes a legal, valid, and binding agreement of the Authority.

(e) When delivered in accordance with this Bond Purchase Agreement, the Bond will have been duly authorized, executed, and delivered and will constitute the legal, valid, and binding obligation of the Authority.

(f) There are no actions, suits, proceedings, or investigations at law or in equity before or by any court,



arbitration board or tribunal, public board, or body, pending or, to the best knowledge of the Authority, threatened, against or affecting the Authority, or, to the best knowledge of the Authority, there does not exist any basis therefore, (i) to restrain or enjoin the issuance or delivery of the Bond, (ii) which in any way question or affect the validity of the Bond, any provisions thereof, any provision of this Bond Purchase Agreement, the Bond Resolution, or Act No.409 or any proceedings taken with respect to the foregoing, (iii) which questions the creation of the Authority, or the organization or existence or the titles to office of any of its officers, or its powers to issue the Bond, or (iv) wherein an unfavorable decision, ruling, or finding would adversely affect the transactions contemplated by this Bond Purchase Agreement, or which, in any way, would adversely affect the validity or enforceability of the Bond, this Bond Purchase Agreement, the Bond Resolution, or any other agreement or instrument to which the Authority is a party and which is used or contemplated for use in consummation of the transaction contemplated by this Bond Purchase Agreement.

(g) No event has occurred and no condition exists which, upon the issuance of the Bond, or thereupon with notice and/or passage of time, would constitute a breach of this Bond Purchase Agreement. To the best of its knowledge, the Authority is not in default in any material respect under any term of any indenture, agreement, by-law, or other instrument to which it is a party or by which it may be bound.

(h) All consents, approvals, authorizations, and orders of, or filing, registration, or qualification with, any governmental or regulatory authorities that are required to be obtained by the Authority for consummation of the transactions contemplated by this Bond Purchase Agreement, the Bond, and the Bond Resolution, have been or will be duly and validly obtained or performed on or before the Closing Date and, as to those already obtained, are in full force and effect and no default exists thereunder. Neither the issuance and sale of the Bond nor the execution and delivery of this Bond Purchase Agreement, the consummation of the transaction herein and therein contemplated, nor compliance with the terms, conditions, or provisions of such instruments, will conflict with, or violate or result in a breach of, or constitute a default under, the by-laws of the Authority or the rules of procedure of the Authority, or any indenture, agreement, or other instrument by which the Authority or any of its properties may be bound or any statute, rule, regulation, order, decree, or ordinance of any court,



government, or governmental body having jurisdiction over the Authority or any of its property.

10. **Payment and Delivery of the Bond**. The Bond will be delivered to the Purchaser at the principal offices of the Purchaser in San Juan, Puerto Rico, on such date and time as may be agreed to by the Authority and the Purchaser (the "Closing Date").

The Authority will deliver the Bond to the Purchaser in definitive form, duly executed and authenticated. The disbursements of Bond Principal Advances to the Authority shall be made at the principal offices of the Authority or at such other place as may be agreed to by the Authority and the Purchaser. The Bond shall be in the form attached to the Bond Resolution.

11. **Expenses**. The Authority shall pay its own expenses and the fees and out-of-pocket expenses of its counsel. The Purchaser shall pay its own expenses and the fees and out-of-pocket expenses of its counsel.

12. **Conditions of the Obligations of the Purchaser**. The obligation of the Purchaser to purchase the Bond shall be subject to the following conditions precedent:

(a) All of the Authority's representations and warranties contained herein shall be true and correct in all material respects as of the date hereof and on the Closing Date;

(b) On the Closing Date, Act No. 409 and the Bond Resolution shall be in full force and effect;

(c) Any and all statements of the Authority's officers and/or directors made in connection with the issuance and sale of the Bond, pursuant to the provisions hereof, shall be true and correct in all material respects as of the date hereof and on the Closing Date;

(d) The Authority shall have performed all of its obligations hereunder;

(e) On the Closing Date, no order, directive, or communication suspending the sale of the Bond or materially adverse to the purchase shall have been issued and no proceedings for that purpose shall be pending before or



threatened by any governmental agency having jurisdiction over the Authority or the Bond;

(f) All necessary proceedings and related matters in connection with the matters contemplated by this Bond Purchase Agreement shall be satisfactory to the Purchaser, and the Purchaser shall have been furnished with such papers and information as it may reasonably have requested in connection herewith;

(g) The Purchaser shall have received, in form satisfactory to the Purchaser and its counsel, the following documents:

(1) Copy of the Bond Resolution, certified as of the Closing Date by the Secretary of the Authority as having been duly adopted by the Authority and as being in full force and effect;

(2) A certificate, satisfactory in form and substance to the Purchaser, of the Executive Director of the Authority dated the Closing Date, to the effect that (i) on and as of the Closing Date, each of the representations and warranties of the Authority set forth in Section 9 hereof is true, accurate, and complete and all agreements of the Authority herein provided and contemplated to be performed on or prior to the Closing Date have been so performed; (ii) the Bond has been duly authorized, executed, and delivered by the Authority; (iii) this Bond Purchase Agreement, and the Bond Resolution and any and all other agreements and documents required to be executed and delivered by the Authority in order to carry out, give effect to, and consummate the transaction contemplated hereby and by the Bond Resolution have each been duly authorized, executed, and delivered by the Authority, and as of the Closing Date each is in full force and effect; and (iv) no litigation is pending or threatened to restrain or enjoin the issuance or sale of the Bond or in any way contesting the validity of or affecting the Authority in connection with the issuance of the Bond, the authorization, execution, or performance of the Bond Resolution or the existence of powers of the Authority;

(3) Such additional certificates, opinions, instruments, or other documents as the Purchaser may reasonably require to evidence the accuracy, as of the Closing Date, of the representations and warranties herein contained, and the due performance and satisfaction by the Authority at or prior to such time of all agreements then to be performed and all conditions then to be satisfied in connection with the Bond, this Bond Purchase Agreement, or the Bond Resolution.



Any certificate signed by any official or officer of the Authority and delivered to the Purchaser or to counsel for the Purchaser shall be deemed a representation and warranty by the Authority to the Purchaser as to the statements made therein. If any of the conditions specified in this Section 12 shall not have been fulfilled when and as required by this Bond Purchase Agreement, or if any of the documents mentioned above or elsewhere in this Bond Purchase Agreement shall not be in all material respects reasonably satisfactory in form and substance to the Purchaser, the Purchaser may terminate this Bond Purchase Agreement at, or at any time prior to, the Closing Date, or, if the Purchaser so elects, waive any such conditions which have not been fulfilled or extend the time for their fulfillment.

13. **Termination.**

(a) The Purchaser shall have the right to terminate this Agreement at any time prior to the Closing Date, if any of the following shall occur and be continuing:

(1) Litigation shall be threatened or pending in any court (A) seeking to restrain or enjoin the issuance or delivery of the Bond, or (B) in any way questioning or affecting the validity of the Bond or any provisions of the Bond Resolution or this Bond Purchase Agreement or any proceedings taken by the Authority with respect to the foregoing, or (C) questioning the Authority's creation, organization, or existence of the titles to office of any of its officers.

(2) An order, ruling, regulation, decree, or injunction of any court of competent jurisdiction or of any governmental agency or authority shall have been issued or made, or judicial proceedings shall have been commenced, or any legislation shall have been enacted, with the purpose or effect of prohibiting the issuance or sale of the Bond as contemplated hereby.

(b) If the Purchaser elects to terminate this Bond Purchase Agreement as provided in this Section 13, the Authority shall be notified promptly by the Purchaser by telephone.

14. **Representations and Indemnities to Survive Delivery.** The respective agreements, representations, warranties, and other statements of the Authority and its officers and of the Purchaser set forth in or made pursuant to this Bond Purchase Agreement will remain in full force and effect, regardless of any investigation made by or on behalf of the Purchaser or the



Authority or any of its officers or directors, and will survive delivery of and payment for the Bond.

15. **Notices**. All communications hereunder shall be in writing, and shall be delivered at, or mailed or telegraphed or faxed to, the following address:

If to the Purchaser:

> Government Development Bank
> for Puerto Rico
> PO Box 42001
> San Juan, Puerto Rico 00940-2001
> Fax: (787) 721-1443
>
> Attention: President

or

If to the Authority:

> Port of the Americas Authority
> P.O. Box 362350
> San Juan, Puerto Rico 00936-2350
> Fax: (787) 763-4315
>
> Attention: Executive Director

16. **Successors**. This Agreement will inure solely to the benefit of, and be binding upon, the parties hereto and, to the extent provided herein, their respective successors and assigns and officers and directors and controlling persons, and no other person will acquire or have any right or obligation hereunder.

17. **Applicable Law and Counterparts**. This Bond Purchase Agreement will be governed by and construed in accordance with the laws of the Commonwealth of Puerto Rico and may be executed by any one or more of the parties hereto in any number of counterparts, each of which shall be deemed an original, but all such counterparts shall together constitute one and the same instrument.

18. **Timing**. Time shall be of the essence of this Bond Purchase Agreement.



If the foregoing is in accordance with your understanding of our agreement, please sign below and return four counterparts hereof, and upon the acceptance hereof by you, this letter and such acceptance hereof shall constitute a binding agreement between the Authority and the Purchaser.

Very truly yours,

GOVERNMENT DEVELOPMENT BANK
FOR PUERTO RICO

By    : _____
Name  :    Jorge Irizarry Herrans
Title:     Executive VicePresidente

The foregoing Bond Purchase Agreement is hereby confirmed, accepted, and entered into as of the date first above written.

**PORT OF THE AMERICAS AUTHORITY**

By    : _____
Name  :    Ramón Torres Morales
Title: Executive Director

