**EXHIBIT 15**

Pages 160-161 of the transcript for the hearing before the Court on Apr. 24, 2019 (ECF No. 6538).

1  property that the Commonwealth is effectively abandoning.  If
2  the Court were to grant the Committee non-consensual
3  derivative standing to pursue claims that the Board has
4  declined to assert, the Court would not only be second
5  guessing the Oversight Board's decision, but also potentially
6  obligating the Commonwealth to expend its own resources to
7  fund such litigation, and potentially complicating the Board's
8  exclusive authority in respect of plans of adjustment.  Nor is
9  the Committee's argument that the Oversight Board has
10 consented, for purposes of Section 305, to the Court
11 exercising its judicial power with respect to the Motion
12 availing.
13          The stipulation's provision stating that the UCC
14 could file the instant motion does not implicitly or
15 explicitly indicate that the Oversight Board has agreed that
16 the Court even has power to grant the relief sought in the
17 Motion to the extent it's outside of the scope of 926.  And
18 indeed, it is clear that the Oversight Board opposes the
19 Motion and contends that the Court has no authority to grant
20 it to the extent it extends outside 926.  And the Board
21 contends that the Court should not grant it to the extent it's
22 brought pursuant to Section 926.
23          The Court holds that absent the express consent of
24 the Oversight Board, PROMESA's statutory framework does not
25 allow the Court to grant derivative standing to a third party

1 to bring actions that are not expressly enumerated under
2 Section 926 of the Bankruptcy Code.
3             Turning now to Section 926, the Court must analyze
4 the circumstances of the case in determining whether the
5 appointment of a trustee is appropriate.  In determining which
6 standard to apply to this statutory provision, the Court finds
7 that cases that analyze the authority of a creditor's
8 committee to initiate adversary proceedings on behalf of the
9 estate are instructive.  See e.g., *In Re STN Enterprises,* 779
10 F.2d 901, at 904 (2d Cir. 1985).  See also, *In Re Sabine Oil &
11 Gas Corporation*, 547 B.R. 503, (Bankr. S.D.N.Y. 2016).
12             Generally, to obtain derivative standing, courts
13 require a creditor's committee to establish that, first, the
14 committee presents colorable claims for relief that, on
15 appropriate proof, would support a recovery; and two, that the
16 debtor, or in this case the Oversight Board, unjustifiably
17 failed to bring suit.
18             In determining whether a debtor's refusal to litigate
19 is justifiable, Courts in this circuit look at, among other
20 things, the costs and risks to the estate and the ability to
21 recover proceeds.  *In Re Pagnini*, number 09-17144-1-CH, 2010,
22 Westlaw 383941, (Bankr. D. Mass. Jan. 26, 2010).
23             In this case, it is important to consider the
24 legislative history of Section 926 and PROMESA's statutory
25 framework.  In the context of a municipal bankruptcy case, at