UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

RECEIVED & FILED
2020 FEB 18 PM 4: 05
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN P.R.

-------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

   as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

   Debtors.

-------------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

[Response to Docket #10756 and #10808]

**RESPONSE AND OBJECTION OF INDIVIDUAL BONDHOLDER TO (1) AMENDED REPORT AND RECOMMENDATION OF MEDIATION TEAM and (2) DEBTORS' PROPOSED SCHEDULE**

Dated: February 12, 2020

## TABLE OF CONTENTS

I. SPECIFIC OBJECTIONS TO DOCKET#10756 ................................................................1

    A. There should be no court-sanctioned "mediation"; all proceedings should be conducted as court adjudications on a public record. ...........................................1

    B. Recent developments underscore that participants in the confidential court-sanctioned mediation process have an improper information advantage. ......................................................................................................1

    C. If confidentiality restrictions are maintained by Court order, then there should be no use of, or references to, the mediation process in Court filings and proceedings. ........................................................................................3

    D. No further stays of litigation or adjudication should be ordered. ............................4

II. OBJECTIONS TO DOCKET #10808 (DEBTORS' PROPOSED SCHEDULE) ..............7

III. RE-ASSERTION OF PRIOR OBJECTIONS ...................................................................8

Peter C. Hein, pro se, submits this Response and Opposition to the Amended Report and Recommendation of the Mediation Team, dated February 10, 2020 (Docket#10756) and to Debtors' Proposed Schedule (Docket#10808).

I. **SPECIFIC OBJECTIONS TO DOCKET#10756**

Without waiving or limiting my prior objections, I note and highlight the following additional objections:

    A.    **There should be no court-sanctioned "mediation"; all proceedings should be conducted as court adjudications on a public record.**

I have previously asserted that all proceedings related to efforts to evade or avoid Puerto Rico's debt to the detriment of investors, including individual investors like me, must be conducted as court adjudications on a public record, subject to public access and scrutiny, and appellate review if necessary.[1]

- The court-sanctioned confidential mediation process that has been used excludes individual investors from meaningful and effective participation.
- The court-sanctioned confidential mediation process precludes individual investors from even following developments in the confidential mediation proceedings.
- The court-sanctioned confidential mediation provides no contemporaneous public record.
- The court-sanctioned confidential mediation is subject to abuse for the benefit of favored parties and to the detriment of nonparticipants, as occurred in the COFINA situation.

    B.    **Recent developments underscore that participants in the confidential court-sanctioned mediation process have an improper information advantage.**

Not only is it unfair to individual investors to use court-sanctioned confidential mediation in lieu of adjudication of legal rights on a public record, recent developments highlight the

---

[1] *E.g.*, Docket#9508-page-21-to-22-of-24.

1

improper information advantage selected persons have enjoyed as a result of the use of court-sanctioned confidential mediation:

- Recent media reports, attributed to "people familiar with the matter" and other unidentified sources, referring to what had assertedly transpired in the confidential mediation, appeared prior to the public announcement of the PSA on 2/9/2020. *See* Exhibits A and B, both dated 2/5/2020, and Docket#10821-page-3-to-4-of-5 (referencing a third media report on 2/5/2020). So some but not all bondholders had firsthand information about developments in the court-sanctioned mediation, while others only got secondhand reports from the media.

- Docket #10756 states that "[a]fter months of mediated negotiations, an agreement in principle was reached in mid-January among" a "group of GO/PBA bondholders" — apparently "certain parties holding substantial amounts of various issuances of GO/PBA bonds" — "and the FOMB." Docket#10256-page-8-of-27.

- Looking at the EMMA reported bond price action, one sees the 2012A bonds traded up from the 60s to the 70s in mid-January — crossing the line from the 60s to the 70s on 1/16/2020, on a huge trading volume day: over 40 times the volume traded compared to the day before. See Exhibit C at 0004. A similar upward price trend in January 2020 is evident in the 2014A bond trading, which moved from the 60s to the 70s on 1/31/2020. *See* Exhibit D at 0007. Both the 2012As and the 2014As also experienced increases of prices, on spurts of volume, on 2/5/2020 and 2/6/2020. *See* Exhibits C and D.

- Substantial quantities of the 2012As and 2014As had previously traded at prices in the low or mid 20s in the fall 2017 - winter 2018 time frame. *See* Exhibits E and F. Post-PROMESA purchasers who bought up significant portions of their holdings at distressed price levels have motivations to cut a deal with FOMB that are very different than the situation applicable to long-term investors who bought at or about

2

par in the ordinary course at the time Puerto Rico was selling bonds to the investing public pre-PROMESA.

- To this date, there has not been adequate disclosure by participants in the court-sanctioned mediation process, including a failure to disclose the particular series of bonds held and dates of purchase, as described in my prior filings, *e.g.*, Docket#10029-page-5-of-9. The PSA takes the lack of disclosure a step further: information on PSA signatory bond holdings is literally "blacked out," see 2/9/2020 PSA pp. 48-82.

The fact participants in court-sanctioned mediation have enjoyed an information advantage is just one more reason why use of a "vote" mechanism in connection with plan confirmation is irrevocably tainted. My property and contract rights may not properly be impacted by "votes", particularly "votes" of bondholders who have enjoyed an information advantage or who purchased post-PROMESA, post-FOMB Title III filing and post-FOMB posturing, at distressed prices.

The above developments further underscore why any court-sanctioned proceedings, including mediation proceedings, that may impact on the interests of any bondholders should be open to all bondholders, with actual notice of such proceedings to all bondholders — particularly those who have filed proofs of claim and/or notices of participation — in advance of such proceedings in order to afford them an opportunity to participate in a meaningful manner. All court-sanctioned mediation proceedings should be open to the public and the press. Transcripts of all proceedings — including court hearings as well as court-sanctioned mediation proceedings — should be promptly made publicly available on the court docket and not held back for 90 days (as is currently the case even for transcripts of proceedings in the courtroom).

  C. **If confidentiality restrictions are maintained by Court order, then there should be no use of, or references to, the mediation process in Court filings and proceedings.**

3

I continue to object to the use of confidential mediation instead of adjudication on a public record, as discussed in my prior filings. *E.g.* Docket#9508-page-14-of-24. However, if confidentiality restrictions are maintained by court order that restrict persons from disclosing what occurred in mediation, then at the very least the confidentiality must be maintained consistently and there should be no reference to what occurred in mediation, what resulted from the mediation or the asserted robust nature of the mediation process by anyone in any papers filed in court or in any hearing. If there are such references—as has already occurred (including in Docket#9365, and now again in Docket#10756)—all persons should be relieved of any confidentiality restrictions. Otherwise, as has occurred, mediation confidentiality is a one-way street and is used as both a sword and a shield by proponents of the confidential mediation process: The outcome or asserted robust nature of the mediation process is advanced to enhance its credibility, but the full facts of what transpired in that process and whether it in fact was robust are not knowable because confidentiality restrictions preclude a full revelation of the facts.

### D. No further stays of litigation or adjudication should be ordered.

I continue to object to any stays of litigation or adjudication.

Adjudication is required before any Plan can be confirmed because PROMESA requires that lawful priorities and lawful liens be respected at Plan confirmation:

- 48 U.S.C. §2174(b)(7) requires a plan be "consistent with the applicable Fiscal Plan," and §2141(b)(1)(N) provides a fiscal plan "shall" "respect" pre- 6/30/2016 "lawful priorities" and "lawful liens."
- The House Report discussion of § 2174 explains:

    > By incorporating consistency with the Fiscal Plan into the requirements of confirmation of a plan of adjustment, the Committee has *ensured lawful priorities and liens, as provided for by the territory's constitution, laws, and agreements, will be respected in any debt restructuring that occurs.*[2]

---

[2] H.Rep.page-114-602-*regarding*-§314-p.63/115 (emphasis added); H.R.Rep.114-602-*regarding*-§201-p.58/115. These pages are attached in Exhibit G.

4

Moreover, even a quick review of the February 9, 2019 Plan Support Agreement and related documents underscores why any court-sponsored mediation should not be conducted in secret and without the active and meaningful participation of individual bondholders.[3] By way of example only:

- The PSA reprises the "splinter bond" feature of the COFINA plan that compounded the damage to individual retail investors. Page 14 of FOMB's PowerPoint Presentation provides a "principal and coupon summary" that shows that a total of **16** different bond fragments will go to each current holder of **one** GO CUSIP: seven tax-exempt new GO coupon bonds, one taxable new GO coupon bond (individuals in the 50-states in most cases purchased exclusively tax exempt bonds, but nevertheless would receive taxable bonds as part of the distributions to them), seven "COFINA Jr." tax exempt coupon bonds and one "COFINA Jr." taxable COFINA coupon bond. Major institutional holders with existing large holdings are not adversely impacted by this splintering of current bonds into 16 fragments; however, individuals with modest current holdings are adversely impacted, as discussed inter alia in Docket#6283-page-3-to-7,8-to-12-of-13, #6283-11-page-2-to-10-of-18, #7211-page-13-of-24, #7211-1-page-27-to-43-of-146, #8427-page-17-to-18-of-20.
- Page 2 of FOMB's PowerPoint states "$50 million set aside so that retail holders are treated equally to PSA parties", but when one reads section 6.1(c) of the PSA (page 35) one sees that FOMB intends that the plan "provide for the separate classification of Retail GO Bonds and Retail PBA Bonds with respect to various series of GO Bonds and PBA Bonds," and that it is only if a class of Retail Investors votes to accept the plan that those individuals will receive an allocable share of the aggregate Retail Support Fee up to a maximum of $50 million. There is also

---

[3] Citations to the documents referenced in the text are to the copies now available on FOMB's website. See "Documents" tab on Financial Oversight & Management Board for Puerto Rico website, which lists, for 2/9/2020, Press Release –Revised PSA, PSA Announcement Presentation and Plan Support Agreement.

5

- provision for re-allocating the Retail Support Fee to PSA Restriction Fee Creditors if retail classes reject the plan. This coercive element of the plan impacting upon retail investors who were not included in the mediation of plan terms (*see* Docket #10756-page-8-of-27) is inappropriate.
- The PSA provides a potential $100,000,000 "administrative expense claim" payment to the "Initial PSA Creditors" in the event of termination for certain reasons. *See* Section 6.1(b) (p. 35).
- The FOMB PowerPoint touts the fact that consideration to creditors is actually reduced from that in FOMB's initial plan of adjustment on 9/27/2019 (PowerPoint page 2).
- Individual bondholders who bought at or about par pre-PROMESA are forced to suffer large losses under the proposed plan, despite the fact that Puerto Rico's TSA report as of 1/31/2020 on the AAFAF website shows over $9 billion cash on hand in the Commonwealth's TSA account alone – and this accumulated cash balance is despite the largely unrestrained spending that has continued since PROMESA was enacted. *See*, e.g., Docket#9508-page-15-to-19-of-24 and prior filings and exhibits cited therein.
- The effect of the proposed plan is to reverse the Constitutional priorities whereby GO and GO guaranteed bondholders were to be paid first, and instead have bondholders suffer huge haircuts (as well as getting 16 splinter bonds) while retired public employees are largely unaffected, and indeed may benefit even further from Commonwealth projected cash surpluses and any greater surpluses that may be enjoyed in the future (PowerPoint page 4). Whatever argument there might be to appeal to, *e.g.*, the federal government for assistance to assist retired public employees, or to make other provisions for retired public employees (for example, eliminating or reducing advertising, public relations and other consulting expenses, so there are more funds available to assist retired public employees), there is no

6

justification for using PROMESA to retroactively reverse the long-established priority for payment under Puerto Rico's Constitution that was used to sell the bonds to investors throughout the country prior to PROMESA's enactment. It is also inappropriate to predicate distributions in a plan on what are likely understated forecasts of future revenues — FOMB has an incentive in its plan structure to low-ball revenues forecasts.

- While use of the proposed plan to reverse Puerto Rico's Constitutional and statutory priorities for payment may be acceptable to hedge funds that purchased some (or all) of their holdings at distressed prices following the enactment of PROMESA, reversing Constitutional and statutory priorities is unfair to those who purchased at or about par, at or about the time of the original bond sales, long prior to PROMESA even becoming the subject of discussion, much less being enacted. Reversing Puerto Rico's Constitutional and statutory priorities is not permissible even under PROMESA at the Plan confirmation stage (48 U.S.C. §§ 2174(b)(3), (6), (7); 2141(b)(1)(N)), and would be a violation of the U.S. Constitution.

## II. OBJECTIONS TO DOCKET #10808 (DEBTORS' PROPOSED SCHEDULE)

Any disclosure statement will be inadequate until there are adjudications of the validity, secured status and priority issues Debtor apparently seeks to stay. Furthermore, at least two additional important contingencies should be resolved before any amended disclosure statement is distributed for review and potential objections by bondholders:

- The tax treatment of the new bonds needs to be settled with the IRS first, before the amended disclosure statement is circulated. Bondholders who bought all tax exempt bonds should know whether they will receive all tax exempt bonds. If FOMB plans a reprise of its COFINA gambit (disclosure statement first, IRS determination second) that should be nipped in the bud now. The proposed April 17, 2020 disclosure statement objection deadline should be pushed back until tax status is known. 11 U.S.C. § 1125(a) is express: "Adequate information" includes a "discussion of the

7

potential material Federal tax consequences of the plan to … a hypothetical investor typical of the holders of claims or interests in the case" "that would enable such a hypothetical investor of the relevant class to make an informed judgment."

- The new certified fiscal plan that is apparently contemplated (Docket#10756-page-21-of-27) should also be provided to bondholders with the proposed amended disclosure statement for their review and consideration.

I do not believe objections to the amended disclosure statement should be required until the validity, secured status and priority issues are resolved. However, even if the Court disagrees with my position in that regard, at the very least the deadline for filing objections to the proposed amended disclosure statement should be the later of (i) April 17, 2020, or (ii) 30 days following disclosure to bondholders of both the IRS determination as to the tax status of the new bonds and the contemplated new certified fiscal plan.

### III. RE-ASSERTION OF PRIOR OBJECTIONS

I have previously submitted both procedural and substantial objections to the mediation process, to the Court's stay orders and to the use of mediation instead of adjudication to resolve issues in this matter, and to other aspects of these proceedings. I re-assert these prior objections, including those filed at Docket#9683, #9508, #9096, #9038, #8308, #7961.

I also reiterate the need for steps to facilitate the ability of all pro se litigants—who do not enjoy the essentially unlimited litigation funding that FOMB and UCC are allowed—to participate in a meaningful way (as I have outlined in prior filings, including in Docket#9508-page-9-to-13-of-24;#7540-page-4-to-15-of-19;#7961-page-14-to-18-of-19; #7732-page-9-to-10-of-10;#6487;#6128).

And I reiterate my position that there should be no disbursements by the Commonwealth not in fact required for payment for truly essential current services until the contrived issues FOMB and UCC have raised are resolved and payment of the Commonwealth's GO debt resumes. There is simply no justification for the ongoing expenditures of funds on advertisement, representation and artistic services contracts, other consulting contracts,

8

Christmas bonuses to public employees, ongoing payment of fees of debtors and *un*secured creditors, and other non-essential spending, while Constitutional irrevocable pledge/first claim debt goes unpaid. These, and all other diversions of funds that the Commonwealth irrevocably pledged to bondholders, and on which bondholders have a first claim, must cease.[4]

Among other things, as previously noted, I object to any payment of any litigation expenses for counsel for FOMB, the Commonwealth or the UCC, until the default on the GO bonds (and Commonwealth guaranteed bonds) is cured and payments on the bonds are brought up to date.[5]

I refer the Court to my position stated on the record on July 24, 2019 (transcript filed July 25, 2019 #8266-Tr.-85:23-to-86:9), and my prior filings, including #10029,#9508,#9096,#8308,#8146,#7961,#7732,#7540,#6487,#6151,#6128,#5377,#5103,#4913, as well as #8626, #8487,#8427,#7211,#6283,#5041,#4934,#4911,#4673,#4606,#4595,#4585.

My objections include violations of the Takings, Due Process, Contract, Ex Post Facto, Equal Protection, Privileges and Immunities, Bankruptcy and Appointments Clauses of the U.S. Constitution and the First Amendment public right of access to court proceedings; violations of the similar provisions of the Puerto Rico Constitution as well as Article VI, § 8, thereof; and violations of 48 U.S.C. §§737, 2174(b)(3), (6), (7) and 2141(b)(1)(N) and 2163, other provisions of PROMESA and the Bankruptcy Code.

I assert and reserve all procedural and substantive rights and objections, including failure to serve, failure to properly serve, failure to serve motions, and my positions that the FOMB members were appointed in violation of the Appointments Clause (and thus FOMB's actions are void and these proceeding should be dismissed) and that PROMESA is unconstitutional because, among other reasons, it is not a "uniform" law "on the subject of bankruptcies throughout the United States".

---

[4] *See, e.g.*, Docket#9508-page-13-to-14, 15-to-19-of-24.
[5] *E.g.*, Docket#6128-1-page-6-of-11;#6151-page-2-of-3;#7540-page-10-to-11-of-19.

9

February 12, 2020

                                                      Respectfully Submitted,

                                                      */s/ Peter C. Hein*

                                                      Peter C. Hein, Pro Se
                                                      101 Central Park West, Apt. 14E
                                                      New York, NY 10023
                                                      petercheinsr@gmail.com