**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>Movants,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Respondents. | Re: ECF No. 10754. |

**OPPOSITION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A)
AND 502 AND BANKRUPTCY RULE 3007, (A) SETTING BRIEFING SCHEDULE AND
HEARING DATE FOR OMNIBUS OBJECTION TO CLAIMS FILED OR ASSERTED
AGAINST COMMONWEALTH BY HOLDERS OF GENERAL OBLIGATION
BONDS ASSERTING PRIORITY OVER OTHER COMMONWEALTH
UNSECURED CREDITORS [DOCKET NO. 10638], (B) APPROVING
<u>FORM OF NOTICE AND (C) GRANTING RELATED RELIEF</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ...................................................................................................................................4

    I.    THE UCC PRIORITY OBJECTION SHOULD BE STAYED PENDING THE CONSIDERATION OF THE OVERSIGHT BOARD'S SETTLEMENT—EMBODIED IN A COMMONWEALTH PLAN OF ADJUSTMENT—BY THE COURT ................................................................................................................... 4

    II.    THE UCC PRIORITY OBJECTION SHOULD BE DISMISSED AS THE COMMITTEE LACKS STANDING TO INTERPOSE CLAIMS OBJECTIONS ..... 8

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*APS Tech., Inc. v. Brant Oilfield Mgmt. & Sales, Inc.*,
  No. 13-civ-6500-LTS-KNF, 2014 WL 12539360 (S.D.N.Y. 2014)..........................................5

*Clinton v. Jones*,
  520 U.S. 681 (1997).................................................................................................................5

*Fred Reuping Leather Co. v. Ft. Greene Nat'l Bank*,
  102 F.2d 372 (3d Cir. 1939)...................................................................................................10

*Gras v. Smith (In re Global Envtl. Solutions)*,
  342 B.R. 116 (D.N.H. 2006).....................................................................................................9

*Hamon v. DVR, LLC (In re DVR, LLC)*,
  606 B.R. 80 (D. Colo. 2019).....................................................................................................7

*In re Briggs Transp. Co.*,
  780 F.2d 1339 (8th Cir. 1985) ................................................................................................10

*In re Chi. Invs., LLC*,
  470 B.R. 32 (Bankr. D. Mass. 2012) ...........................................................................9, 11, 12

*In re Choquette*,
  290 B.R. 183 (Bankr. D. Mass. 2003) ......................................................................................9

*In re City of Stockton*,
  486 B.R. 194 (Bankr. E.D. Cal. 2013).......................................................................................7

*In re Dow Corning Corp.*,
  244 B.R. 721 (Bankr. E.D. Mich. 1999), *rev'd on other grounds*, 255 B.R. 445
  (E.D. Mich. 2000), *aff'd*, 280 F.3d 648 (6th Cir. 2002) .......................................................9, 10

*In re DVR, LLC*,
  582 B.R. 507 (Bankr. D. Colo. 2018) ...............................................................................4, 5, 6

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  335 F. Supp. 3d 256 (D.P.R. 2018)...........................................................................................2

*In re Futterman*,
  17-12899 (MEW), 2019 WL 2553614 (Bankr. S.D.N.Y. Jun. 20, 2019)......................4, 5, 6, 7

*In re Heritage Org., LLC*,
  375 B.R. 230 (Bankr. N.D. Tex. 2007)..................................................................................5, 6

*In re Ludwig Honold Mfg. Co.*,
  30 B.R. 790 (Bankr. E.D. Pa. 1983) ...................................................................................10

*In re Simon*,
  179 B.R. 1 (Bankr. D. Mass 1995) .......................................................................................9

*In re Thompson*,
  965 F.2d 1136 (1st Cir. 1992)..................................................................................7, 9, 10

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936).............................................................................................................2

*Law Debenture Tr. Comp. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*,
  339 B.R. 91 (D. Del. 2006)................................................................................................4, 6

*Prin Corp. v. Altman (In re Altman)*,
  265 B.R. 652 (Bankr. D. Conn. 2001) ..............................................................................5, 6

*Renco Grp., Inc. v. Wilmington Trust, N. A. (In re Magnesium Corp. of Am.)*,
  583 B.R. 637 (Bankr. S.D.N.Y. 2018)...............................................................................10

*Total Petroleum P.R. Corp. v. T.C. Oil*,
  No. 09-1105 (JP), 2010 WL 11545626 (D.P.R. May 7, 2010)................................................2

**STATUTES**

Bankruptcy Code § 363 .................................................................................................................11

Bankruptcy Code § 502(a) ............................................................................................................10

Bankruptcy Code § 502(b) .............................................................................................................6

PROMESA § 301(c)(7).................................................................................................................9

PROMESA § 305(a) ....................................................................................................................11

PROMESA § 312(a) ......................................................................................................................4

PROMESA § 315(b) ..............................................................................................................1, 2, 9

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 9019(a) ....................................................................................................4, 6, 7

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), submits this opposition to the motion [ECF No. 10754] (the "Scheduling Motion") filed by the Official Committee of Unsecured Creditors (the "Committee" or the "UCC") seeking to set a briefing schedule on their recently filed omnibus objection challenging the priority of GO and PBA bond claims [ECF No. 10638] (the "UCC Priority Objection").[1] The Oversight Board respectfully avers as follows:

**PRELIMINARY STATEMENT**

1. On February 9, 2020, the Oversight Board disclosed that it has reached a global settlement in principle outlined in a plan support agreement (the "PSA") with holders of in excess of $8 billion of Commonwealth general obligation ("GO") and Public Building Authority ("PBA") bond claims. Through the execution of joinder or annex agreements, over $9.3 billion of GO and PBA bondholders now support the PSA and the various compromises and settlements embodied therein, including the exact issue that the UCC is now trying to attack—the priority of the GO and PBA bond claims *vis-à-vis* other creditor claims. The PSA contemplates the filing of a plan of adjustment which, if and when it is confirmed, will allow the Commonwealth, ERS, and PBA to exit Title III and facilitate the Commonwealth's return to fiscal responsibility and access to capital markets.[2]

2. The same day the Committee—which is not a party to the PSA—filed the Scheduling Motion, seeking to accelerate the briefing schedule on the UCC Priority Objection so that it can be

---

[1] The Committee has agreed to extend the deadline for the Oversight Board to file an objection to the Scheduling Motion to February 21, 2020.

[2] The PSA requires that the Oversight Board file a plan of adjustment and disclosure statement by February 28, 2020. *See* PSA § 4.1.

1

heard on June 3, 2020 (the very date suggested by the Mediation Team for a hearing to consider the adequacy of the disclosure statement for the Commonwealth plan of adjustment). The UCC Priority Objection objects to GO and PBA bond claims' asserted priority and seeks to reclassify them as general unsecured claims, in conflict with the compromise and settlement developed by the Mediation Team and embodied in the PSA. In addition to the fact that mediators appointed by this Court recommended that the UCC Priority Objection, among other adversary proceedings and motions, should be stayed, *see* ECF No. 10756 ("Amended Mediation Team Report") at 10 n.9,[3] the Committee's Scheduling Motion must be denied and the UCC Priority Objection stayed for at least two additional reasons.

3. First, the UCC Priority Objection should not be heard before a Commonwealth plan of adjustment because the Oversight Board, as the debtors' representative pursuant to PROMESA section 315(b), is settling the GO and PBA bond priority claims that are subject to attack in the UCC Priority Objection. The Committee cannot force an early hearing on its claim objection when doing so will undermine the Oversight Board's settlement and the progress obtained by the Mediation Team. As this Court has already determined (in connection with the Committee's objection to PREPA bondholders' claims), the Court should consider a proposed settlement before it entertains an objection that would undercut that settlement. ECF No. 9695. Any other rule would undermine the Bankruptcy Code's policy of promoting settlements, stalemate the Title III cases, and contravene the "substantial deference to the strategy and tactics of the Oversight Board" enshrined in PROMESA. *Id.* at 6.

---

[3] The Court has inherent powers to determine its schedule and hear motions whenever is most efficient for the case. As this Court has recognized, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 335 F. Supp. 3d 256, 262 (D.P.R. 2018) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "Generally, courts have the discretionary power to stay an action in the interest of justice and efficiency." *Id.* (quoting *Total Petroleum P.R. Corp. v. T.C. Oil, Corp.*, No. 09-1105 (JP), 2010 WL 11545626, at *1 (D.P.R. May 7, 2010)).

4. Here, after months of mediation and complex negotiation, the Oversight Board has reached a settlement in principle with holders of in excess of, now, $9.3 billion of GO and PBA bond claims, reaching consensus on how those claims will be treated in a soon-to-be-filed amended Commonwealth plan of adjustment, which will also settle objections to the GO and PBA bond claims. The UCC Priority Objection would interfere with this settlement by interposing objections to the very claims that the Oversight Board and creditors (with the guidance of the Mediation Team) now seek to settle, undermining the PSA and forcing the Debtors to risk the vagaries of litigation, contrary to the wishes of the Debtors' representative. This should not be permitted.

5. <u>Second</u>, the Scheduling Motion should be denied because the Committee lacks standing to file claims objections. First Circuit law is clear that a creditor (or creditors' committee) can seek leave to prosecute its own objection <u>only</u> if the Oversight Board refuses to take any action and the creditor can show its objection would benefit the estate. The Committee did not ask leave, and could not have obtained leave if it had, as prosecution of the UCC Priority Objection would not benefit the estate: instead, it would undermine a key settlement that will form the basis of the Commonwealth's plan of adjustment and exit from Title III. As a result, the Scheduling Motion must be denied and the UCC Priority Objection stayed (or dismissed without prejudice) pending consideration of the Commonwealth plan of adjustment.[4]

6. The UCC may be disgruntled that the proposed plan of adjustment structure does not include its constituency, and is now trying to upset the apple cart and present the UCC Priority Objection as leverage to prevent progress in these Title III cases. However, to the extent the UCC thinks that their constituency is being prejudiced by the settlement that will be embedded in the plan

---

[4] It should be noted that, with the permission and cooperation of the Oversight Board, the UCC filed an objection to certain GO and PBA bond claims. *See* ECF No. 4784 (the "<u>Joint Claim Objection</u>"). However, the Joint Claim Objection was limited to the validity of the bonds under the Puerto Rico Constitution, not the priority of the GO and PBA bonds, and did not authorize the UCC to raise the issues contained in the UCC Priority Objection.

3

of adjustment, it is free to object and/or encourage its constituency not to vote for the plan—but it should not be allowed to control the agenda of these Title III cases.

## ARGUMENT

**I. THE UCC PRIORITY OBJECTION SHOULD BE STAYED PENDING THE CONSIDERATION OF THE OVERSIGHT BOARD'S SETTLEMENT—EMBODIED IN A COMMONWEALTH PLAN OF ADJUSTMENT—BY THE COURT**

7. Pursuant to the UCC Priority Objection, the Committee seeks an order disallowing GO and PBA bondholders' claims to the extent they assert priority and reclassifying them as general unsecured claims. ECF No. 10693, Ex. A. The PSA, however, contemplates a plan of adjustment that will settle challenges to the claims of GO and PBA bondholders—including to their asserted priority. By filing the UCC Priority Objection and the Scheduling Motion, the Committee, after months of negotiations and mediation, is seeking to interfere with the proposed compromise and settlement contained in the PSA and litigate challenges to the GO and PBA bond claims that the Oversight Board has elected to settle and that the Amended Mediation Team Report recommends should be stayed. Pursuant to well-settled law and this Court's own rulings in these Title III cases, the Court should not let the Committee usurp the agenda of these Title III cases and delay progress.

8. In accordance with Bankruptcy Rule 9019, the trustee alone can settle claims,[5] and the Oversight Board alone is empowered to file a plan of adjustment. *See* PROMESA § 312(a). As many cases have held, "[s]o long as the Court approves, the Trustee has the authority to settle claims, and that is true even if other parties in interest have filed objections to those claims."[6] As one court

---

[5] *See* Fed. R. Bankr. P. 9019(a) ("On motion by the trustee . . . the court may approve a compromise and settlement . . . ."). *See also In re Futterman*, No. 17-12899 (MEW), 2019 WL 2553614, at *3 (Bankr. S.D.N.Y. Jun. 20, 2019) ("it is the Trustee who is the primary representative of the estate and who has the authority to take action on behalf of the estate. That primary authority includes the right, on behalf of the estate, to settle any claims that are made against the estate.").

[6] *In re Futterman*, 2019 WL 2553614, at *4 (Bankr. S.D.N.Y. Jun. 20, 2019); *see also Law Debenture Tr. Comp. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 96 (D. Del. 2006) (affirming bankruptcy court's approval of a settlement by a chapter 11 trustee of one creditor's proof of claim despite another creditor's objection to the claim); *In re DVR, LLC*, 582 B.R. 507, 521-522 (Bankr. D. Colo. 2018) (noting that a creditor who initiates a claim objection will act in its self-interest and, accordingly, the trustee is entitled to propose a settlement resolving that objection,

4

expressed, rejecting an argument the trustee could not settle a creditor's claim objection, "[t]o hold otherwise, would permit a creditor to hold the estate hostage to protracted litigation." *In re DVR, LLC*, 582 B.R. 507, 521 (Bankr. D. Colo. 2018). This is in line with the court's inherent powers to control its own docket—including by delaying the claim objection until after the adjudication of the proposed settlement. *See APS Tech., Inc. v. Brant Oilfield Mgmt.t & Sales, Inc*., No. 13-civ-6500-LTS-KNF, 2014 WL 12539360, at *1 (S.D.N.Y. 2014) (Swain, J.); *see also Clinton v. Jones*, 520 U.S. 681, 706-07 (1997).

9. The jurisprudence demonstrates that the trustee can settle claims objections filed by other parties, and those parties cannot insist on litigating their claims objections before settlement approval. For example, in *In re Futterman*, No. 17-12899 (MEW), 2019 WL 2553614, at *4 (Bankr. S.D.N.Y. Jun. 20, 2019), the chapter 11 debtor filed a claim objection to the certain creditors' claims. The chapter 11 trustee examined the objection and decided to settle it and provide those creditors with a recovery the debtor thought excessive. The debtor objected to the settlement, arguing it could not be approved without a hearing on his objection. The court rejected this argument, holding that the debtor's rights were limited to objecting to the settlement:

> Parties in interest have the right to object to the wisdom of a settlement if they do not think that the settlement makes sense. But as Mr. Futterman's attorneys have conceded in a prior hearing, **the fact that Mr. Futterman was allowed to raise an objection to the RWN deficiency claim does not mean that Mr. Futterman himself has the right to veto a settlement, or to insist on continuing a litigation that would have the effect of vetoing the Trustee's settlement, or that, by virtue of his objection, Mr. Futterman now personally owns the right to control the disposition of the deficiency claim. Instead, his rights are limited to the rights that a party in interest has to object to the wisdom of the Trustee's settlement decision under Rule 9019**. If the rule were otherwise, then bankruptcy cases routinely would be stalemated. Trustees would never be able to settle claims without

---

because only the trustee can "protect the interests of the overall estate," and because a contrary ruling would permit a creditor to hold the estate "hostage to protracted litigation"); *In re Heritage Org., LLC*, 375 B.R. 230, 285 (Bankr. N.D. Tex. 2007) (rejecting a creditor group's arguments that the Chapter 11 trustee lacked authority to settle their objections to certain proofs of claim); *Prin Corp. v. Altman (In re Altman)*, 265 B.R. 652, 659 (Bankr. D. Conn. 2001) (approving a proposed settlement between the chapter 11 trustee and a creditor resolving the creditor's proof of claim, where the chapter 11 debtor had objected to the claim).

5

>unanimous support for the settlement, because any dissatisfied party in interest could derail a compromise just by filing its own objection to a claim and demanding control over the disposition of its own objection. The effect would be to turn over control of certain parts of the estate (namely the resolution of claims) to parties other than the trustee, which is exactly the opposite of what the Bankruptcy Code envisions.

*In re Futterman,*, 2019 WL 2553614, at *4 (Bankr. S.D.N.Y. Jun. 20, 2019) (emphasis added). Similarly, in *In re Kaiser Aluminum Corp.*, 339 B.R. 91 (D. Del. 2006) the District of Delaware rejected the argument that a claim objection should be heard before a settlement resolving the same claim, stating "such a procedure would undermine the important policy of promoting settlements in bankruptcy proceedings by requiring the parties to litigate the very issues that the settlement seeks to resolve." *Id.* at 94.

10. Further, Bankruptcy Code section 502(b), which states that, "if [an] objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim" does not change this result or require the Court to hold a hearing specifically on the claims objection before it hears the settlement. A hearing on the settlement pursuant to which the Court "determine[s] the amount of such claim" fulfills the requirement of section 502(b). *In re DVR, LLC*, 582 B.R. 507, 512 (Bankr. D. Colo. 2018) ("this Court does not read the phrase 'shall determine the amount' in § 502(b) as precluding a settlement. If parties settle a claim objection by agreeing that a creditor will have a claim in a certain amount, and the court, after applying the Rule 9019 standard, approves the settlement, then it has 'determined' and 'allowed' the claim.").[7] A hearing to consider confirmation of the Commonwealth's plan of adjustment will more than satisfy this requirement.

---

[7] *See also Law Debenture Tr. Comp. v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 96 (D. Del. 2006) (finding no conflict between section 502 and Rule 9019); *In re Heritage Org., LLC*, 375 B.R. 230, 285 (Bankr N.D. Tex. 2007) ("Like the *Kaiser* court, this Court believes that the better way to harmonize § 502 and Rule 9019 is to read the 'notice and a hearing' requirement of Rule 9019 as satisfying the right to be heard with respect to a claim objection."); *In re Futterman*, 2019 WL 2553614 , at *4 (Bankr. S.D.N.Y. Jun. 20, 2019) (allowing trustee to settle objection filed by creditor); *Prin Corp. v. Altman (In re Altman)*, 265 B.R. 652, 659 (Bankr. D. Conn. 2001) (approving a proposed settlement between the chapter 11 trustee and a creditor resolving the creditor's proof of claim, where the chapter 11 debtor had objected to the claim); *Hamon v. DVR, LLC (In re DVR)*, 606 B.R. 80, 87 (D. Colo. 2019) (agreeing with bankruptcy court that court could approve Rule 9019 settlement of claims objection without first

11. This Court has applied this jurisprudence to terminate a claims objection filed by the Committee already in these Title III cases. On January 3, 2020, the Court entered an order terminating the Committee's objection to PREPA bondholders' claims [ECF No. 9060], holding that there was no need to hear the Committee's objection before resolving PREPA's Rule 9019 motion, which seeks to settle the claims of PREPA Bondholders that were the subject of the Committee's objection. Specifically, the Court held that the Committee's objection should be terminated because requiring that it be heard before the settlement "would 'undermine the important policy of promoting settlements in bankruptcy proceedings by requiring the parties to litigate the very issues that the settlement seeks to resolve.'" ECF No. 9695 at 6 (quoting *In re Kaiser Aluminum Corp.*, 339 B.R. 91, 95 (D. Del. 2006)). As the Court noted, "[i]f the rule were otherwise, then bankruptcy cases routinely would be stalemated." *Id.* (quoting *In re Futterman*, 2019 WL 2553614, at *4 (Bankr. S.D.N.Y. Jun. 20, 2019). This is even more so in a PROMESA Title III case where the Oversight Board can enter into settlement without bringing it for the Court's consideration and approval. *In re City of Stockton*, 486 B.R. 194, 195-200 (Bankr. E.D. Cal. 2013) (chapter 9 debtor can settle claims without court approval). As the Court noted recently noted in a similar context, "[s]ection 305 of PROMESA allows a Title III debtor to pay or otherwise resolve claims without court interference, and PROMESA provides substantial deference to the strategy and tactics of the Oversight Board." *See* ECF No. 9060. Here, of course, the Oversight Board will bring the proposed compromise and settlement for approval as part of the plan of adjustment, but, the fact remains that the Committee cannot prevent the Oversight Board from settling by filing a claim objection.

12. These decisions should be applied here to deny the Scheduling Motion. The Scheduling Motion seeks to have the UCC Priority Objection heard before a plan of adjustment for

---

resolving creditor's objection); *In re Thompson*, 965 F.2d 1136 (1st Cir. 1992) (affirming court approval of settlement of other creditors' objections).

7

the Commonwealth (reflecting the settlement contemplated by the PSA) is considered. Resolving the UCC Priority Objection on the schedule suggested in the Scheduling Motion and before the settlements contained in the PSA would undermine the value of the settlement reached by the Oversight Board, and would contravene the autonomy and deference enshrined in PROMESA, which permits the debtor to do what it sees fit with its property, revenues, and governmental powers. The Committee's proposal will prejudice the restructuring by forcing the litigation of issues that the parties have chosen to resolve and only further delay the resolution of these Title III cases. Notably, the Amended Mediation Team Report has recommended staying the UCC Priority Objection (at 10 n.9), stating that, "[i]n light of the mediated settlement reached with substantial GO/PBA/PRIFA BANs holders as set forth in the New PSA, and as will be set forth in the Amended Plan when filed, the Mediation Team believes that the FOMB should be given the opportunity to attempt to confirm the Amended Plan before any party is required to expend further funds in litigation of the disputes being settled." Amended Mediation Team Report at 9.

13. Notably, the Committee will not be prejudiced by the denial of the Scheduling Motion: it retains all its rights to object to the plan of adjustment and the settlements included therein if the Committee sees fit, and if the Commonwealth's plan of adjustment is denied confirmation then all parties will retain their rights with respect to the GO and PBA bond priority claims. To avoid (*i*) undermining the strong bankruptcy policy favoring settlements and (*ii*) locking the Commonwealth Title III case into yet more time-consuming litigation, the Court should decline to hear the UCC Priority Objection before it makes a determination on a Commonwealth plan of adjustment based on the PSA.

## II. THE UCC PRIORITY OBJECTION SHOULD BE DISMISSED AS THE COMMITTEE LACKS STANDING TO INTERPOSE CLAIMS OBJECTIONS

14. The Scheduling Objection must be denied because the Committee lacks standing to

8

prosecute claims objections. First Circuit law is clear that, "absent leave of court, the chapter 7 trustee alone may interpose objections to proofs of claim." *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1147 (1st Cir. 1992) ("Leave to object is not generally accorded an individual creditor unless the chapter 7 trustee refuses to object, notwithstanding a request to do so, and the bankruptcy court permits the creditor to object in the trustee's stead.").[8] A creditor can seek leave to prosecute its own objection <u>only</u> if the Oversight Board[9] refuses to take any action and the creditor can show its objection would benefit the estate.[10] This rule also applies in chapter 11 cases as well. *See In re Chi. Invs., LLC*, 470 B.R. 32, 92 (Bankr. D. Mass. 2012) (applying *In re Thompson* to chapter 11 case and dismissing creditors' claim, stating "[b]ecause the Debtors now seek to settle their dispute with Haymarket through the Fourth Amended Plan, the Franchisor's Objection to Haymarket's Claims is procedurally improper as it seeks to undermine the value of that settlement.") (internal cites and quotes omitted).[11] The First Circuit's standing restrictions do not depend on the

---

[8] *See also, e.g., In re Dow Corning Corp.*, 244 B.R. 721, 751 (Bankr. E.D. Mich. 1999), *rev'd on other grounds*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd*, 280 F.3d 648 (6th Cir. 2002) (dismissing claim objection filed by committee of unsecured creditors that was going to be settled pursuant to a reorganization plan as "no useful purpose would be served in allowing [another creditor] to pursue its own objections to these claims. Conversely, allowing such a course of action would waste judicial resources and delay administration of the bankruptcy estate to its and its creditors' detriment with no corresponding benefit to the estate. This would undermine the articulated policy concern of an orderly and efficacious administration of the bankruptcy estate."); *In re Choquette*, 290 B.R. 183, 188 n.9 (Bankr. D. Mass. 2003) ("a creditor may seek leave from the court to object to a proof of claim <u>only</u> if the trustee refuses to take any action.") (quoting *In re Simon*, 179 B.R. 1, 6-7 (Bankr. D. Mass 1995)) (emphasis in original); *Gras v. Smith (In re Global Envtl. Solutions)*, 342 B.R. 116, 119 (D.N.H. 2006) ("as a general rule, absent leave of court, the chapter 7 trustee alone may interpose objections to proofs of claim. Leave to object is not generally accorded an individual creditor unless the chapter 7 trustee refuses to object, notwithstanding a request to do so, and the bankruptcy court permits the creditor to object in the trustee's stead . . . The bankruptcy court stated that it was the court's practice not to allow third parties to interpose their opinions on claims filed by creditors, which is a matter decided between the trustee and the court. That is a sustainable position.") (internal cites and quotes omitted).

[9] The term "trustee," when used in a section of Title 11 made applicable to PROMESA refers to the Oversight Board. *See* PROMESA § 301(c)(7); *see also id.* § 315(b) (Oversight Board is debtor's representative in Title III).

[10] *See In re Simon*, 179 B.R. 1, 6-7 (Bankr. D. Mass. 1995) ("Several courts, including the First Circuit, have ruled that a creditor may seek leave from the court to object to a proof of claim *only* if the trustee refuses to take any action . . . The objecting creditor must also establish that if the objection to the proof of claim were sustained, there would be some benefit to the estate.") (emphasis in original).

[11] *See also In re Dow Corning Corp.*, 244 B.R. 721, 751 (Bankr. E.D. Mich. 1999), *rev'd on other grounds*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd*, 280 F.3d 648 (6th Cir. 2002) (dismissing creditors committee's claims objection in chapter 11 case that duplicated the debtor-in-possession's as "[t]he result is, of course, the same in a chapter 11 case where the debtor fills the role of trustee."). Moreover, First Circuit jurisprudence embraces the majority rule from other circuits on this issue, which holds that creditors cannot file claims objections unless the trustee refuses and they are granted

9

existence of fiduciary duties, but, foremost, on the need for efficient administration. *See In re Thompson*, 965 F.2d at 1147 ("'**the needs of orderly and expeditious administration do not permit** the full and unfettered exercise of [a creditor's] right to object to the allowance of another creditor's claim.") (internal quotes and cites omitted) (emphasis added); *see also* ECF No. 9425 (discussing Committee's lack of standing to bring claims objections). The fact that Bankruptcy Code section 502(a) permits creditors to object to a claim does not mean that this right is absolute: the Court has the power to balance this right with other considerations, including by demanding that the creditor first ask the debtor to bring the objection. *See e.g., In re Briggs Transp. Co.*, 780 F.2d 1339, 1347 (8th Cir. 1985) (bankruptcy involves a balancing of interests between the debtor and creditors).

15. For example, in *In re Dow Corning Corp.*, the unsecured claimholders' committee objected to the debtor's plan, which sought to settle tort victims' claims the committee had objected to, arguing the plan could not settle these claims without the court first ruling on the committee's objection. 244 B.R. at 749. The bankruptcy court overruled this objection, holding the committee did not have standing to bring its claims objections, as it had not sought leave of the court and the debtor had already filed its own objections against the same claims. *Id.* at 751. The court held that, "[u]nder these circumstances, no useful purpose would be served in allowing the [committee] to

---

leave of the court. *See, e.g., In re Dow Corning Corp.*, 244 B.R. at 750 ("For this policy reason [the demands of orderly and expeditious administration of the estate], **most courts** . . . hold that where a trustee is charged with administering a bankruptcy estate, a creditor can object to the claim of another creditor only if, upon demand, the trustee refuses to do so and the court grants the creditor the right to act on behalf of the trustee.") (emphasis added); *In re Ludwig Honold Mfg. Co.*, 30 B.R. 790, 792 (Bankr. E.D. Pa. 1983) ("**the overwhelming weight of authority** . . . is to the effect that a general creditor of a bankrupt has no right to contest another creditor's claim or to appeal from the refusal of the court to disallow it unless upon application the trustee has refused to do so and the district court has authorized the creditor to proceed in the trustee's name.") (quoting *Fred Reuping Leather Co. v. Ft. Greene Nat'l Bank,* 102 F.2d 372, 372-73 (3d Cir. 1939)) (emphasis added); *Renco Grp., Inc. v. Wilmington Trust, N. A. (In re Magnesium Corp. of Am.)*, 583 B.R. 637, 653 (Bankr. S.D.N.Y. 2018) ("Policy considerations, including the necessity for an orderly and expeditious administration of the estate, have led **the majority of courts** that have addressed the issue to conclude that as a general rule, absent leave of court, the chapter 7 trustee alone may interpose objections to individual proofs of claim.") (internal cites and quotes omitted) (emphasis added).

10

pursue its own objections to these claims. Conversely, allowing such a course of action would waste judicial resources and delay administration of the bankruptcy estate to its and its creditors' detriment with no corresponding benefit to the estate. This would undermine the articulated policy concern of an orderly and efficacious administration of the bankruptcy estate." *Id.*[12] The case law should be applied even more vigorously in a PROMESA Title III case, where the Commonwealth may pay or not pay claims without court interference under PROMESA section 305(a) (and given the absence of Bankruptcy Code section 363).

16. These considerations dictate denial of the Scheduling Motion (and, ultimately, the UCC Priority Objection). The Committee has not fulfilled the First Circuit's standing requirements, nor could it. The Committee made no demand on the Oversight Board, and did not ask leave of the Court before filing its objection. Moreover, the Committee could not have obtained leave even if it had asked for it. The Oversight Board has not refused to object to the GO and PBA bondholders' claims to priority—on the contrary, the Oversight Board has challenged such assertions when raised by GO bondholders, *see, e.g.,* Case No. 17-AP-189-LTS, ECF No. 78 at 1-2 (arguing the GO bondholders have, at most, a Commonwealth priority "not incorporated into Title III"), but—instead of litigating the Oversight Board's objections to such claims to court resolution and risking the vagaries of litigation—has elected to settle them as set forth in the PSA. As the Oversight Board has already taken action in connection with GO and PBA bondholders' priority assertions, the Committee has no basis to bring its own duplicative objection and usurp the Oversight Board's role. *See, e.g., In re Chi. Invs., LLC*, 470 B.R. at 92.

---

[12] The rule is also illustrated by *In re Chi. Invs., LLC*, where, in a chapter 11 case, one creditor filed an objection to the claim of another creditor ("Haymarket") that was "almost entirely duplicative" of the debtor's objection to the same claim. The debtor sought to approve a settlement (in its reorganization plan) that would allow Haymarket's claim (over the creditor's objection). Pursuant to this settlement, the debtor filed a motion to strike the creditor's claim objection, which the Bankruptcy Court for the District of Massachusetts granted, holding the claim objection was "procedurally improper as it seeks to undermine the value of that settlement." 470 B.R. at 92.

11

17. Nor will the UCC Priority Objection benefit the Debtors. To the contrary, it risks a settlement that advances key policies and will, if approved, resolve GO and PBA bond invalidation and priority challenges, and result in substantial discount of the Commonwealth's and PBA's liabilities. Consistent with the PSA, the Oversight Board has agreed to file a plan of adjustment consistent with the PSA by February 28, 2020. As noted in the Amended Mediation Report, the plan of adjustment will "propose a global settlement of all issues in dispute among all GO/PBA bondholders, holders of PRIFA BANs, the FOMB, the Commonwealth of Puerto Rico, and the PBA, including the validity, priority, and secured status of GO/PBA/PRIFA BANs claims." Amended Mediation Team Report at 8. The UCC Priority Objection seeks to undermine this global settlement by litigating the very claims the Oversight Board proposes to settle (and the Amended Mediation Team Report recommends should be stayed) as a key part of a plan of adjustment that will finally enable the Commonwealth, ERS and PBA to exit Title III. The Committee cannot show that such an action would benefit the debtors—it would not. Therefore, the Court should deny the Scheduling Motion and either stay the UCC Priority Objection or dismiss it without prejudice pending the Committee satisfying the First Circuit's standing requirements.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Oversight Board respectfully requests the Court deny the Scheduling Motion and grant such other relief as is just and proper.

Dated: February 21, 2020
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for PREPA*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
Email: Hermann.bauer@oneillborges.com
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as Representative for PREPA*