**EXHIBIT A**

**Common Interest and Cooperation Agreement Relating to Prosecution of Objection to Certain General Obligation Bond Claims**

This Common Interest and Cooperation Agreement (this "Agreement") is entered into by and among (i) the Official Committee of Unsecured Creditors of all Puerto Rico title III Debtors[1] (other than COFINA) (the "Committee"), and (ii) the Financial Oversight and Management Board for Puerto Rico acting through the Special Claims Committee (the "FOMB" and, together with the Committee, the "Parties") as of January 14, 2019.

WHEREAS, the Parties believe they share a common and mutual legal interest in prosecuting an objection (the "Objection") to one or more claims that have been or may be asserted against the Commonwealth in its title III case pending in the United States District Court for the District of Puerto Rico (the "Court") by holders of certain general obligation bonds issued by the Commonwealth; and

WHEREAS, in furtherance of the Objection, the Parties desire to exchange certain otherwise confidential and privileged information and work product, develop joint legal strategies, collaborate in the preparation of briefs and legal arguments, and otherwise cooperate in prosecuting the Objection (collectively, the "Common Interest Activities"); and

WHEREAS, in order to undertake the Common Interest Activities, it has been and will be advisable and necessary for the Parties and any attorneys, financial advisors, consultants, experts, and other professionals retained by the Parties to communicate freely with one another with respect to such Common Interest Activities, including exchanging confidential business, financial, and other information, as well as information that is otherwise protected as attorney-client communication or attorney work product, and in connection with such freely shared communications, to rely on the common interest exception to the waiver of attorney-client privilege and attorney work product protection; and

WHEREAS, the Parties wish to memorialize their respective rights to participate in the prosecution and resolution of the Objection; and

WHEREAS, the Parties have had access to information and resources sufficient to make fully informed decisions with regard to the terms of this Agreement, including the opportunity to consult with their own separate legal counsel.

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481) (the "Commonwealth"), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

NOW, THEREFORE, in consideration of the mutual terms and covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. <u>Exchange of Confidential Materials</u>. "Confidential Materials" collectively means all factual information, documents, opinions, legal research and analyses, strategies, theories, work product, or other materials relating to the Common Interest Activities, including any such materials subject to any claim of privilege, which have been or may be exchanged or communicated by any means and in any form between or among the Parties, their counsel or advisors, including any materials developed as a result of Common Interest Activities. Such materials, whether or not specifically identified as "Confidential" at the time of the exchange or communication, may include, without limitation, (i) verbal and written presentations, factual analyses, financial analyses, transcriptions, recordings, mental impressions, memoranda, opinions, outlines, notes, interviews, reports, draft correspondence and research, and the information contained in each of the foregoing, as well as oral communications among the Parties; (ii) all documentation and materials prepared by a Party containing or based in whole or in part on any information furnished by any Party or a Party's counsel or advisors pursuant to this Agreement; and (iii) drafts of briefs, pleadings, and other documents and information. Confidential Materials shall include all otherwise privileged or confidential information that the Parties or their counsel or advisors may have communicated between or among themselves prior to the signing of this Agreement.

This Agreement is intended as a written embodiment of the Parties' prior agreements (oral or written) concerning exchange of Confidential Materials. By exchanging Confidential Materials and engaging in Common Interest Activities, the Parties intend to further their common and mutual interests. In order to pursue their common and mutual interests effectively, the Parties have concluded that those interests will be served if each Party may share with the other Parties Confidential Materials. The Parties agree that: (i) the disclosure of Confidential Materials between the Parties shall not waive any applicable privilege against disclosure to non-parties; and (ii) each Party shall maintain the confidentiality of any Confidential Materials it receives from the other Party and shall not disclose Confidential Materials to a non-party. The Parties agree that, except as otherwise provided in this Agreement, Confidential Materials shall continue to be held confidential and subject to the attorney-client privilege, the work product doctrine, the common interest privilege, and all other applicable privileges and protections.

2. <u>Attorney-Client Relationships</u>. Without limiting the applicability of the attorney-client privilege or other privileges or protections, nothing in this Agreement shall establish a joint client relationship between the Parties, or create an attorney-client or fiduciary relationship or a duty of loyalty between any law firm or lawyer and either Party. Each Party understands and acknowledges that it is represented only by its own lawyers in this matter. No Party shall assert this Agreement, the exchange of Confidential Materials, or any other Common Interest Activities as a basis for the disqualification of another Party's counsel from any present or future matter. Nothing herein shall preclude either Party's counsel from representing its client in any matter, including matters adverse to the other Party to this Agreement. This Agreement does not limit either Party's ability to conduct its own independent defense or prosecution of any claim in connection with the title III cases, including the prosecution of an objection to claims asserted by holders of general obligation bonds.

3. <u>Control of a Party's Own Material</u>. Nothing in this Agreement shall restrict any Party from using or disclosing (in any manner) Confidential Materials that: (i) were or become publicly available, provided that such Confidential Materials did not become publicly available in violation of the terms of this Agreement or any other known confidentiality obligation owing to any Party; (ii) were or are obtained independently by either Party, including without limitation by due process of law, without any act contrary to any known obligation of confidentiality owing to any Party; or (iii) originated with the Party seeking to use it without reference to Confidential Materials protected under the terms hereof; provided, however, that any of the foregoing uses described in (i) through (iii) shall not waive the privileges or immunities sought to be protected by this Agreement.

4. <u>Third Party Requests for Confidential Materials</u>. To the extent not prohibited by applicable law, upon the request or demand to disclose Confidential Materials by a third party, the Party to whom such request or demand has been made shall (a) promptly notify the other Party in writing of any request or demand for Confidential Materials and (b) cooperate with the other Party in any attempt to, and use its own reasonable efforts to, prevent or limit disclosure of Confidential Materials through assertion of the attorney-client privilege, attorney work-product doctrine, common-interest doctrine or other applicable theories.

5. <u>Joint Prosecution</u>: The joint prosecution of the Objection will not diminish or deprive the FOMB or the Committee of any rights it would otherwise have under the Puerto Rico Oversight, Management, and Economic Stability Act or other applicable law, including either Party's independent right to object to general obligation bond claims. For the avoidance of doubt, as provided in Section 9 below, the FOMB reserves the right to settle all general obligation bond claims, and the Committee reserves the right to object to any such settlement, including by arguing that, among other things, the FOMB cannot settle the Committee's objection to general obligation bond claims without the Committee's consent.

6. <u>Financial Advisor</u>: The Committee's financial advisor, Zolfo Cooper, shall serve as lead financial advisor with respect to the Objection. The Parties agree and acknowledge that Zolfo Cooper's communications, analyses, and other work product shall constitute Confidential Materials developed by the Committee for purposes of this Agreement and therefore may be exchanged with the FOMB without waiver of any applicable privileges and protections, including without limitation the attorney-client privilege and work product doctrine. Although Zolfo Cooper will be assisting in the Parties' joint prosecution of the Objection, Zolfo Cooper's engagement will remain exclusively with the Committee.

7. <u>Committee and FOMB Participation Rights in Briefing, Discovery, and Court Hearings</u>: The Parties agree as follows concerning their respective participation in the prosecution of the Objection:

(a) Each Party shall have the right to file its own pleadings for any purpose and on any issue relating to the Objection.

(b) Each Party shall have the right to participate fully in any discovery relating to the Objection, including, without limitation, the right to propound discovery requests, receive all document productions, notice depositions, and question witnesses at depositions

3

noticed by other parties in interest. Each Party will promptly provide to the other Party any documents or information obtained outside of formal discovery from the Puerto Rico Fiscal Agency and Financial Advisory Authority or any other agencies, departments, or instrumentalities of the Commonwealth or any other government entity.

(c) Subject to any order of the Court, each Party shall have the right to participate fully in any proceedings relating to the Objection, including, without limitation, the right to argue motions, participate in any mediation, hearing or trial preparation, submit exhibit and witness lists, present evidence, and examine witnesses.

8. <u>Cooperation</u>: Notwithstanding the rights of the Parties to prepare separate briefs and otherwise participate independently in the prosecution of the Objection, the Parties agree to at all times cooperate in good faith to share drafts, outlines, analyses, and other work product and to otherwise take steps to avoid duplication of effort and undue burden on the Court or mediation team, as applicable, to the extent reasonably practicable. In addition, to the extent either Party is subject to a confidentiality, non-disclosure, or similar agreement that restricts its ability to share documents or information relevant to the Objection with the other Party, the Party subject to the agreement agrees to undertake reasonable efforts to obtain the approval of the counterparty to such agreement to permit the sharing of such documents or information with the other Party.

9. <u>Mediation and Settlement</u>: Each Party shall have the right to participate fully in the mediation of any general obligation bond claims to which the Objection relates with respect to issues raised by or bearing on the Objection, including, without limitation, the right to propose mediation, participate in all mediation sessions and calls or other communications with mediators, submit mediation statements, and receive all mediation statements shared with any other party in interest. The FOMB will consult with the Committee in good faith regarding any potential settlement of any claim to which the Objection relates, whether or not arising from mediation. If the Parties do not agree on a proposed settlement, the each Party reserves any and all rights under applicable law to object or otherwise respond to such proposed settlement.

10. <u>Withdrawal</u>. Either Party may withdraw from this Agreement upon three business days' written notice to the other Party in the event it concludes that the Parties no longer share a common and mutual interest in prosecuting the Objection. Such withdrawal shall not affect the withdrawing Party's obligations to maintain the confidentiality of all Confidential Materials provided prior to its withdrawal from this Agreement. Upon a Party's withdrawal from this agreement, the Parties shall meet and confer in good faith as to how the Objection shall be prosecuted going forwarded; <u>provided</u>, <u>however</u>, that such withdrawal shall not affect either Party's participation rights under paragraphs 7 and 9 of this Agreement or either Party's right to file and prosecute a separate, independent objection to any general obligation bond claims.

11. <u>Miscellaneous</u>.

(a) This Agreement may be amended only by a subsequent writing signed by the Parties hereto.

(b) This Agreement shall be governed and construed in accordance with the laws of the State of New York, and any conflicts of laws principles that would require reference to the laws of other jurisdictions shall be disregarded.

(c) This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same original instrument, and any Party may execute this Agreement by signing any such counterpart. Signatures to this Agreement transmitted by facsimile transmission, by electronic mail in "portable document format" (".pdf") form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing the original signature.

(d) Any dispute arising under this Agreement shall be brought solely in the Court.

(e) In the event that any provision of this Agreement shall be finally and conclusively determined to be illegal, void, or unenforceable, then such provision shall have no force or effect, but the illegality or unenforceability of such provision shall neither affect nor impair the legality and enforceability of any other provision of this Agreement.

(f) This Agreement contains the full, complete and integrated statements of each and every term and provision agreed to by and among the Parties regarding this Agreement.

(g) Notices and other communications provided for herein shall be in writing and shall be delivered by overnight courier service, mailed by certified or registered mail, or sent by fax to the address for each Party set forth beneath such Party's signature(s) on the signature pages hereto.

*[Signature Pages Follow]*

PARTIES:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL PUERTO RICO TITLE III DEBTORS (OTHER THAN COFINA),**

By: _/s/ Nicholas A. Bassett_
Name: Nicholas A. Bassett
Title: Counsel

Address: Paul Hastings LLP
875 15th St., N.W.
Washington, D.C. 20005

Email: nicholasbassett@paulhastings.com
Phone: (202) 551- 1902


**FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING THROUGH THE SPECIAL CLAIMS COMMITTEE**

By: _/s/ Jaime A. El Koury_
Name: Jaime A. El Koury
Title: General Counsel

Address: 222 Broadway, 19th Floor
New York, New York 10038

Email: jaime.elkoury@promesa.gov
Phone: (646) 932-6069