**<u>EXHIBIT B</u>**

**EXECUTION COPY**

## PLAN SUPPORT AGREEMENT

PLAN SUPPORT AGREEMENT, dated as of February 9, 2020, by and among (a) Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**"), as representative of the Commonwealth of Puerto Rico (the "**Commonwealth**"), the Puerto Rico Public Buildings Authority ("**PBA**"), and the Employee Retirement System of the Government of the Commonwealth of Puerto Rico ("**ERS**"), (b) holders of GO Bond Claims and/or CW Guarantee Bond Claims, each as defined below, which may include the advisors or managers who are advising or managing a holder of GO Bond Claims on behalf of such holder as set forth on Exhibit "A" hereto, (together with their respective successors and assigns with respect to transfers made in accordance with the terms hereof, the "**GO Holders**"), and (c) holders of PBA Bond Claims, as defined below, which may include the advisors or managers who are advising or managing a holder of PBA Bond Claims on behalf of such holder as set forth on Exhibit "B" hereto (together with their respective successors and assigns with respect to transfers made in accordance with the terms hereof, the "**PBA Holders**" and, collectively, with the GO Holders, the "**Initial PSA Creditors**" ). The signatories hereto are referred to hereafter collectively as the "**Parties**" or individually as a "**Party**". Capitalized terms used but not otherwise defined herein shall have the meanings set forth in Article I below.

## RECITALS

A.     The Commonwealth issued the series of general obligation bonds (the "**GO Bonds**") set forth on Exhibit "C" hereto, including, without limitation, those GO Bonds as to which the Monolines (as defined below) have insured the payment of principal and interest with respect thereto.

B.     Pursuant to the authority of Act 56 of the Legislative Assembly of Puerto Rico (the "**Legislative Assembly**"), approved July 19, 1958, as amended, PBA issued the series of bonds (collectively, the "**PBA Bonds**") set forth on Exhibit "D" hereto, guaranteed by the Commonwealth, including, without limitation, those PBA Bonds as to which the Monolines have insured the payment of principal and interest with respect thereto.

C.     On June 30, 2016, the Puerto Rico Oversight, Management, and Economic Stability Act was signed into law by the President of the United States (P.L. 114-187) ("**PROMESA**").

D.     PROMESA created the Oversight Board and provided the Oversight Board with certain powers over the finances and restructuring process with respect to, among others, the Commonwealth and its instrumentalities, all as provided for in PROMESA.

E.     Pursuant to Act 2-2017, Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**") was appointed as the agent of, and advisor to, the Government of the Commonwealth of Puerto Rico (the "**Government**"), and granted authority with respect to the restructuring of any indebtedness issued by the Commonwealth and any governmental entity of the Commonwealth.

F.     On May 3, 2017 (the "**Commonwealth Petition Date**"), the Oversight Board filed a Title III petition on behalf of the Commonwealth (the "**Commonwealth PROMESA**

109132810v14

**EXECUTION COPY**

**Proceeding**") in the United States District Court for the District of Puerto Rico (the "**Title III Court**").

       G.      On May 21, 2017 (the "**ERS Petition Date**"), the Oversight Board filed a Title III petition on behalf of ERS (the "**ERS PROMESA Proceeding**") in the Title III Court.

       H.      On September 27, 2019 (the "**PBA Petition Date**"), the Oversight Board filed a Title III petition on behalf of PBA (the "**PBA PROMESA Proceeding**") in the Title III Court.

       I.      The Oversight Board is the representative of the Commonwealth, ERS and PBA in the Commonwealth PROMESA Proceeding, the ERS PROMESA Proceeding and the PBA PROMESA Proceeding, respectively, pursuant to Section 315(b) of PROMESA.

       J.      On May 31, 2019, certain of the Parties executed a Plan Support Agreement (the "**Initial Agreement**"), regarding the restructuring of the GO Bonds and PBA Bonds, which agreement was subject to certain conditions precedent, including, without limitation, the negotiation and agreement as to the terms of securities to be issued in accordance with the Initial Agreement and pursuant to a corresponding plan of adjustment, and termination by the parties thereto.

       K.      On September 27, 2019, the Commonwealth, ERS and PBA filed that certain Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. (the "**Initial Plan**") [Dkt. No. 8765], in the Title III Court, which plan of adjustment contained the material terms set forth in the Initial Agreement but to which the parties to the Initial Agreement had yet to reach agreement with respect to the terms of the securities.

       L.      By notice, dated February 9, 2020, the Initial Agreement was terminated and is of no further force or effect.

       M.      The Parties have engaged in good faith, arm's-length negotiations, including, without limitation, with the assistance of the Title III Court-appointed mediation team, regarding the terms of a proposed restructuring of the GO Bonds, the PBA Bonds, claims against the Commonwealth based upon the Commonwealth's guarantee of payment of the PBA Bonds, and claims against the Commonwealth based upon the Commonwealth's guarantee of payment of the PRIFA BANs (as defined below) to be implemented in a manner as set forth in an Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al., as it may be amended, modified or supplemented (the "**Plan**"), which Plan shall be consistent with the terms and provisions of this Agreement, including, without limitation, Exhibit "I" annexed hereto, and be acceptable in form and substance to the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group with respect to the treatment of GO Bond Claims and PBA Bond Claims in the Commonwealth PROMESA Proceeding and the PBA PROMESA Proceeding, respectively, and the form of which shall be filed with the Title III Court as soon as practicable following the date hereof but in no event later than February 28, 2020, and, upon filing thereof, shall amend and supersede the Initial Plan.

       N.      The Oversight Board consents to the execution and delivery of this Agreement by the Commonwealth, ERS and PBA and to the Commonwealth's, ERS' and PBA's performance and exercise of their respective rights under this Agreement, including, without limitation, the

109132810v14

right to terminate this Agreement and right to consent to any waiver or amendment, in each case, in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, the Parties, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

ARTICLE I

DEFINITIONS

Section 1.1    Recitals.  The recitals set forth above are incorporated by reference and are explicitly made a part of this Agreement.

Section 1.2    Definitions.  The following definitions shall apply to and constitute part of this Agreement and all schedules, exhibits and annexes hereto:

*"Agreement"* shall mean, collectively, this Plan Support Agreement, and each exhibit annexed hereto or thereto, including, without limitation, upon its filing, the Plan, as each may be amended, supplemented, or otherwise modified in accordance with the terms hereof or thereof.

*"Appointments Related Litigation"* shall mean, collectively, the litigation styled (a) Financial Oversight and Management Board for Puerto Rico v. Aurelius Investment, LLC, et al., Nos. 18-1334, 18-1475, 18-1496, 18-1514 & 18-1521, currently pending before the United States Supreme Court, (b) Aurelius Investment, LLC, et al. v. Commonwealth of Puerto Rico, et al., Nos. 18-1671, 18-1746 & 18-1787, currently pending in the United States Court of Appeals for the First Circuit, (c) Union de Trabajadores de la Industria Electrica y Riego (UTIER) v. Puerto Rico Electric Power Authority, et al., Adv. Pro. No. 17-AP-228-LTS, currently pending in the Title III Court, (d) Rene Pinto Lugo, et al. v. The Government of the United States of America, et al., Adv. Pro. No. 18-041-LTS, currently pending in the Title III Court, (e) Hermandad De Empleados Del Fondo Del Seguro Del Estado, Inc., et al. v. Government of the United States of America, et al., Adv. Pro. No. 18-066-LTS, currently pending in the Title III Court, (f) Hon. Rafael Hernandez-Montanez, et al. v. The Financial Oversight and Management Board of Puerto  Rico, Adv. Pro. No. 18-090-LTS, currently pending in the Title III Court, and (g) such other litigation as may be currently pending or as may be commenced during the period from and after the date hereof up to and including the Effective Date wherein claims or causes of action consistent with or similar to those asserted or which could have been asserted in the above-referenced litigations have been asserted.

*"Bankruptcy Code"* shall mean Title 11 of the United States Code, as amended, §§ 101, *et seq*.

*"Bankruptcy Rules"* shall mean the Federal Rules of Bankruptcy Procedure.

*"Bond Recovery Caps"* shall mean, collectively, the specified percentages, as set forth in the Settlement Summary, for each class of allowed GO Bond Claims, allowed CW Guarantee

3

EXECUTION COPY

Bond Claims, or allowed PBA Bond Claims, which percentages shall represent the aggregate maximum recovery by a holder of an allowed GO Bond Claim, allowed CW Guarantee Bond Claim, or allowed PBA Bond Claim on account thereof; provided, however, that Consummation Costs and PSA Restriction Fees paid to a holder of any of the foregoing shall not be included for purposes of calculating the respective Bond Recovery Caps.

*"Business Day"* shall mean a day other than a Saturday, a Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

*"CCDA"* shall mean the Puerto Rico Convention Center District Authority.

*"CCDA Bonds"* shall mean the securities issued by CCDA prior to the Commonwealth Petition Date.

*"COFINA"* shall mean the Puerto Rico Sales Tax Financing Corporation.

*"COFINA Confirmation Order"* shall mean that certain Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation, dated February 5, 2019 [Dkt. No. 5055].

*"COFINA Junior Lien Bonds"* shall mean, collectively, the securities to be issued by COFINA on the Effective Date in accordance with the terms and conditions of the Plan, the Confirmation Order, the COFINA Junior Lien Bonds Indenture, and, to the extent enacted, the COFINA Junior Lien Bonds Legislation, including, without limitation, any refunding bonds which may be issued in accordance with the COFINA Junior Lien Bonds Indenture and the COFINA Junior Lien Bonds Legislation, which securities shall be payable from the Commonwealth Share and shall, in all respects be subject to the First Dollars Funding obligations with respect to the COFINA Senior Lien Bonds.

*"COFINA Junior Lien Bonds Indenture"* shall mean the trust indenture to be executed as of the Effective Date pursuant to which COFINA shall issue the COFINA Junior Lien Bonds, and including all of the terms and provisions in connection therewith, as it may be amended, supplemented or modified from time to time in accordance with its terms and conditions.

*"COFINA Junior Lien Bonds Legislation"* shall mean the legislation to be enacted on or prior to the Effective Date authorizing the transactions contemplated by, and consistent with the Plan, providing for the issuance of the COFINA Junior Lien Bonds, the transfer and assignment of the Commonwealth Share to COFINA, and the granting of a statutory lien on the COFINA Pledged Taxes, subordinate to the statutory lien granted pursuant to the COFINA Senior Lien Bonds Legislation, to the trustee pursuant to the COFINA Junior Lien Bonds Indenture, for the benefit of the COFINA Junior Lien Bonds, and incorporating such other terms as set forth in the Plan.

*"COFINA Plan"* shall mean that certain Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation, dated January 9, 2019 [Dkt. No. 439].

109132810v14

"*COFINA Pledged Taxes*" shall mean the present and future revenues and collections generated by the portion of the Sales Tax that corresponds to a tax rate of five and one-half percent (5.5%), or such lesser rate as permitted by the COFINA Plan, the COFINA Confirmation Order and the documents and instruments executed or delivered in connection therewith.

"*COFINA Senior Lien Bonds*" shall mean, collectively, the securities issued by COFINA pursuant to the COFINA Plan, the COFINA Confirmation Order, the COFINA Senior Lien Bonds Legislation and the COFINA Senior Lien Bonds Indenture.

"*COFINA Senior Lien Bonds Indenture*" shall mean the trust indenture executed pursuant to which COFINA issued the COFINA Senior Lien Bonds, as it may be amended, supplemented or modified from time to time, in accordance with its terms and conditions.

"*COFINA Senior Lien Bonds Legislation*" shall mean Act 241 of the Legislative Assembly of Puerto Rico, approved November 15, 2018, amending Act 91 of the Legislative Assembly of Puerto Rico, approved May 13, 2006, as amended.

"*Commonwealth Share*" shall mean an interest that is second in priority of payment, funding and collections, in all circumstances, subject and pursuant to the First Dollars Funding, in the COFINA Pledged Taxes and all rights thereto, as described in the COFINA Plan, the COFINA Confirmation Order and the documents and instruments executed or delivered in connection therewith, with such interest including the right to receive the COFINA Pledged Taxes after satisfaction of the First Dollars Funding in each fiscal year, in an amount up to forty-six and thirty-five one hundredths percent (46.35%) of the Fixed Income in any given fiscal year until the COFINA Junior Lien Bonds have been paid or satisfied in full in accordance with their terms.

"*Comprehensive Cap*" shall have the meaning ascribed thereto in the Debt Responsibility Act.

"*Confirmation Order*" shall mean the order of the Title III Court confirming the Plan in accordance with Section 314 of PROMESA and section 1129 of the Bankruptcy Code made applicable in the PROMESA Proceedings in accordance with Section 301 of PROMESA, which order shall be in form and substance reasonably satisfactory to each Party.

"*Constitutional Debt Group*" shall mean the Ad Hoc Group of Constitutional Debtholders comprised of the Constitutional Debt Group Members.

"*Constitutional Debt Group Members*" shall mean, collectively, BlackRock Financial Management Inc., Brigade Capital Management, Brookfield Asset Management Private Institutional Capital Adviser (Credit) LLC, Deutsche Bank Securities Inc., Emso Asset Management Limited, First Pacific Advisors, LP, Mason Capital Management, LLC, Silver Point Capital, L.P., and VR Advisory Services Ltd, each on behalf of itself or on behalf of its participating clients or certain of its respective managed funds and, in each case, their respective successors and assigns with respect to transfers made in accordance with the terms hereof.

"*Consummation Costs*" shall mean, collectively, the amounts to be paid, in cash, on the Effective Date, or as soon as practicable thereafter in accordance with the terms of the Plan, but

in no event later than ten (10) Business Days following the Effective Date, to the Initial PSA Creditors in accordance with the terms and provisions of this Agreement and the Plan.

*"Covered Borrowers"* shall mean, collectively, the Commonwealth, ERS and PBA.

*"CUSIP"* shall mean the nine-digit numeric or nine-digit character alphanumeric code which, for purposes of this Agreement, identifies the series of GO Bonds and PBA Bonds for the purposes of facilitating clearing and settlement of trades.

*"CW Fiscal Plan"* shall mean that certain Fiscal Plan of the Commonwealth certified by the Oversight Board on May 9, 2019.

*"CW Guarantee Bond Claims"* shall have the meaning set forth in the Plan with the amount of CW Guarantee Bond Claims calculated, as the case may be, as the outstanding principal amount of (a) the PBA Bonds plus accrued, but unpaid, interest during the period up to, but not including, the PBA Petition Date minus the amount of any distribution to be received from PBA on account of such PBA Bonds pursuant to the Plan, (b) the Ports of Americas Authority bond, plus accrued, but unpaid, interest during the period up to, but not including, the Commonwealth Petition Date, and (c) the PRIFA BANs plus accrued, but unpaid, interest during the period up to, but not including, May 1, 2017.

*"Debt Management Policy"* shall mean the policy developed by the Commonwealth relating to the issuance of indebtedness, as more fully described in the Plan and the Debt Responsibility Act.

*"Debt Policy Revenues"* shall mean, collectively, without duplication (a) revenues derived from taxes, fees, permits, licenses, fines or other charges imposed, approved or authorized by the Legislative Assembly, including, without limitation, any such revenue owned by, or assigned to, COFINA or any other instrumentality of the Government, (b) all other revenues or monies deposited in the General Fund or any debt service or other governmental fund of the Government, and (c) all other revenues or funds identified as Debt Policy Revenues in the Debt Management Policy; provided, however, that Debt Policy Revenues shall exclude such revenues and funds excluded from the Debt Policy Revenues pursuant to the Debt Management Policy; and, provided, further, that, for purposes of illustration, with respect to Fiscal Year 2019, and as reflected in the CW Fiscal Plan, "Debt Policy Revenues" were Sixteen Billion Seven Hundred Eight Million Seventy Thousand Dollars ($16,708,070,000.00).

*"Debt Related Objections"* shall mean, collectively, that certain (a) Omnibus Objection of (I) Financial Oversight and Management Board, Acting through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds, dated January 14, 2019 [Dkt. No. 4784], (b) Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bonds, dated May 21, 2019 [Dkt. No. 7057], (c) Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders

6

**EXECUTION COPY**

of Certain Puerto Rico Public Buildings Authority Bonds, dated July 18, 2019 [Dkt. No. 8141], (d) Omnibus Objection of the Lawful Constitutional Debt Coalition, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Bonds Issued or Guaranteed by the Commonwealth, dated January 8, 2020 [Dkt. No. 9731], (e) Official Committee of Unsecured Creditors' Omnibus Objection on Constitutional Debt Limit Grounds to (I) Claim of Government Development Bank for Puerto Rico [Claim Number 29485] Based on Certain Commonwealth-Issued Notes and on Commonwealth Guaranty of Certain Bonds Issued by Port of Americas Authority, (II) Claim of ScotiaBank de Puerto Rico [Claim Number 47658] Based on Full Faith and Credit Note Issued by Puerto Rico General Services Administration, and (III) Claims Filed or Asserted Against Commonwealth Based on Commonwealth Guaranty of Certain Notes Issued by Puerto Rico Infrastructure Authority, dated January 8, 2020 [Dkt. No. 9735], solely as it relates to the PRIFA BANs, (f) Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of General Obligation Bonds Asserting Priority Over Other Commonwealth Unsecured Creditors, dated February 3, 2020 [Dkt. No. 10638], and (g) any other objections or joinders to these or such other objections that may be filed pertaining to the same form and counts of requested relief challenging, among other things, the validity and related rights of the 2011 GO Bonds, the 2012 GO Bonds, the 2014 GO Bonds, the PBA Bonds, and/or the PRIFA BANs.

*"Debt Responsibility Act"* shall mean H.B. 2332, the Debt Responsibility Act for the Commonwealth of Puerto Rico, dated November 7, 2019, as the same be amended, modified or supplemented and enacted.

*"Debt Service Fund"* shall mean the fund to be created pursuant to the New GO Bonds Indenture, and held by the trustee for the New GO Bonds, into which the Commonwealth shall deposit monthly such amounts equal to (a) one-sixth (1/6) of the semi-annual obligation with respect to the payment of interest to accrue on the New GO Bonds and (b) one-twelfth of the annual obligation with respect to the payment of principal on the New GO Bonds.

*"Debt Service Reserve Fund"* shall mean the fund created pursuant to the New GO Bonds Indenture, and held by the trustee for the New GO Bonds, into which the Debt Service Reserve Fund Requirement shall be deposited.

*"Debt Service Reserve Fund Requirement"* shall mean Five Hundred Thirty-Three Million Four Hundred Twenty-Nine Thousand Five Hundred Dollars ($533,429,500.00), the amount to be deposited on the Effective Date or over a five-year period, which election shall be made in the joint and absolute discretion of the Oversight Board and the Commonwealth on or prior to the Effective Date, in accordance with the terms and conditions of the New GO Bonds Indenture.

*"Deemed Issuance Date"* shall mean March 1, 2020.

*"Definitive Documents"* shall mean, collectively, the documents, including, without limitation, any related agreements, instruments, schedules or exhibits, that are necessary or desirable to implement, or otherwise relate to, the terms and provisions set forth herein, in the Settlement Summary, the Plan (including any amendments, modifications and supplements

thereto), the Disclosure Statement, the Disclosure Statement Order, the Confirmation Order, and bond resolutions, as amended or as repealed and replaced, each having terms and conditions consistent with this Agreement, the Settlement Summary, and PROMESA, in all respects and otherwise be in form and substance reasonably satisfactory to each Party.

***"Disclosure Statement"*** shall mean the disclosure statement filed with respect to the Plan with the Title III Court by the Oversight Board in the PROMESA Proceedings in accordance with section 1125 of the Bankruptcy Code, made applicable in the PROMESA Proceedings in accordance with Section 301 of PROMESA, which disclosure statement shall be in form and substance reasonably satisfactory to each Party.

***"Disclosure Statement Order"*** shall mean the order of the Title III Court (a) approving the form of Disclosure Statement and the adequacy of the information contained therein in accordance with section 1125 of the Bankruptcy Code, made applicable in the PROMESA Proceedings in accordance with Section 301 of PROMESA, and (b) authorizing, among other things, the form and manner of solicitation of (i) acceptance and rejections to the Plan, and (ii) elections, if applicable, of distributions thereunder, which order shall be in form and substance reasonably satisfactory to each Party.

***"Effective Date"*** shall mean the date on which the transactions contemplated by the Plan and authorized by the Title III Court pursuant to the Confirmation Order have been substantially consummated, but, under all circumstances, shall be the date no later than the tenth (10th) calendar day following the date on which all conditions to the effectiveness of the Plan have been satisfied or waived in accordance with its terms.

***"EMMA"*** shall mean the website of the Municipal Securities Rulemaking Boards Electronic Municipal Market Access.

***"ERS Bonds"*** shall mean the securities issued by ERS and outstanding as of the ERS Petition Date.

***"Face Amount"*** shall mean, solely for purposes of Article II hereof and the signature pages affixed hereto, (a) with respect to current interest GO Bonds, insured or uninsured, the outstanding principal amount of such GO Bonds as of the date of this Agreement, (b) with respect to current interest PBA Bonds, insured and uninsured, the outstanding principal amount of such PBA Bonds as of the date of this Agreement, (c) with respect to capital appreciation GO Bonds, insured and uninsured, the accreted value of such GO Bonds during the period up to, but not including, the Commonwealth Petition Date and (d) with respect to the PRIFA BANs, the outstanding principal amount of such PRIFA BANs as of the date of this Agreement.

***"Final Order"*** shall mean an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, remand proceeding, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial reargument, or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed or reversed in part or in full, with no

further proceedings on remand, by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the applicable local Bankruptcy Rules.

*"Fir Tree"* shall mean, Fir Tree Capital Management, LP, on behalf of itself and funds for which it serves as investment manager or advisor, and/or in its capacity as Owner Representative, as such term is defined in that certain Noteholder Agreement, dated March 1, 2015, between PRIFA and RBC Municipal Products, LLC.

*"First Dollars Funding"* shall mean the allocation of "first dollars" collected from the COFINA Pledged Taxes, including, without limitation, the criteria set forth in Section 16.5 of the COFINA Plan required to be satisfied in order to permit, among other things, quarterly deposits of "first dollars" collected from COFINA Pledged Taxes.

*"Fiscal Plan"* shall mean a "Fiscal Plan" as defined by Section 5(10) of PROMESA.

*"Fiscal Year"* shall mean a fiscal year of the Commonwealth commencing on July 1st and concluding on June 30th of the following calendar year.

*"Fixed Income"* shall mean the annual dollar amount determined for each Fiscal Year in accordance with Act 241 of 2018 of the Legislative Assembly of Puerto Rico, approved November 15, 2018, as amended.

*"General Fund"* shall mean the Government's primary operating fund.

*"GO Bond Claims"* shall mean, collectively, (i) the claims against the Commonwealth arising from or relating to the GO Bonds, which shall be calculated, for purposes of distribution pursuant to the Plan, as the outstanding principal amount of the GO Bonds (which amount shall include accretion, if any, as of the Commonwealth Petition Date with respect to capital appreciation GO Bonds), plus accrued but unpaid interest up to, but not including, the Commonwealth Petition Date and (ii) the CW Guarantee Bond Claims.

*"GO Group"* shall mean the Ad Hoc Group of General Obligation Bondholders consisting of the GO Group Members.

*"GO Group Members"* shall mean, collectively, Aurelius Capital Management, LP and Autonomy Capital (Jersey) L.P., each on behalf of itself or on behalf of its participating clients or certain of its respective managed funds and, in each case, their respective successors and assigns with respect to transfers made in accordance with the terms hereof.

*"Government Parties"* shall mean, collectively, the Oversight Board, AAFAF, the Commonwealth, ERS and the PBA.

**EXECUTION COPY**

***"Government Released Claims"*** shall mean, collectively, any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, whether asserted or unasserted, which any Party, or anyone claiming through them, on their behalf or for their benefit have or may have or claim to have, now or in the future, against any Government Releasee arising from, related to, or in connection with PBA, the PBA Bonds, the PBA Bond Claims, the GO Bonds, the GO Bond Claims, the CW Guarantee Bond Claims, or the PBA Litigation, and arising prior to the Effective Date; provided, however, that "Government Released Claims" shall not include any and all rights, privileges, claims, demands, liabilities, or causes of action of any and every kind, character or nature whatsoever (a) against (i) the Commonwealth, COFINA, or PBA arising from or relating to the Plan, the securities to be issued pursuant to the Plan, or the securities issued pursuant to the COFINA Plan, or (ii) a Government Party unrelated to the GO Bonds, the GO Bond Claims, the CW Guarantee Bond Claims, the PBA Bonds, or the PBA Bond Claims, or (b) arising from or related to any act or omission that constitutes intentional fraud or willful misconduct.

***"Government Releasees"*** shall mean the Government Parties, together with their respective current or former board members, directors, principals, special committees, agents, officers, employees, advisors and professionals, in each case, in their capacities as such, including, without limitation, any and all advisors and professionals retained by the Government Parties in connection with the PROMESA Proceedings, in their respective capacities as such.

***"HTA"*** shall mean Puerto Rico Highways and Transportation Authority.

***"HTA Bonds"*** shall mean the securities issued by the HTA and outstanding as of the HTA Petition Date.

***"HTA Petition Date"*** shall mean May 21, 2017, the date the HTA Title III Case was commenced.

***"HTA Title III Case"*** shall mean the Title III case commenced by the Oversight Board on behalf of HTA.

***"Insured GO Bond Claims"*** shall mean, collectively, those GO Bond Claims, the principal and interest payments of which have been insured by a Monoline.

***"Insured PBA Bond Claims"*** shall mean, collectively, those PBA Bond Claims, the principal and interest payments of which have been insured by a Monoline.

***"Invalidity Actions"*** shall mean, collectively, those litigations set forth on Exhibit "E" hereto.

***"IRC"*** shall mean the Internal Revenue Code of 1986, as amended from time to time.

***"Joinder Creditors"*** shall mean, collectively, those entities holding GO Bonds or PBA Bonds that execute and deliver either the Joinder Agreement or the Annex Agreement, the forms of which are annexed hereto as Exhibits "F" and "G", respectively, prior to the Joinder Deadline.

**EXECUTION COPY**

*"Joinder Deadline"* shall mean February 28, 2020, at 11:59 p.m. (Eastern Standard Time), or such later date and time as agreed upon by the Oversight Board and the Initial PSA Creditors.

*"LCDC"* shall mean the Lawful Constitutional Debt Coalition, consisting of the LCDC Holders.

*"LCDC Holders"* shall mean, collectively, Aristeia Capital, LLC, Farmstead Capital Management, FCO Advisors LP, GoldenTree Asset Management LP, Marble Ridge Capital, Monarch Alternative Capital LP, Taconic Capital Advisors L.P., and Whitebox Advisors L.L.C., each on behalf of itself or certain of its respective managed funds and, in each case, their respective successors and assigns with respect to transfers made in accordance with the terms hereof.

*"Lien Challenge Actions"* shall mean, collectively, those litigations set forth on Exhibit "H" hereto.

*"Monolines"* shall mean Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, National Public Finance Guarantee Corporation, and Syncora Guarantee Inc., as insurers of GO Bonds, PBA Bonds, CCDA Bonds, HTA Bonds, and PRIFA Bonds, as applicable.

*"New GO Bonds"* shall mean, collectively, the general obligation bonds, the payment for which the Commonwealth has pledged its full faith, credit and taxing power, to be issued on the Effective Date by the Commonwealth in accordance with the terms and conditions of the Plan, the Confirmation Order, the New GO Bonds Indenture, and, to the extent enacted, the New GO Bonds Legislation, including, without limitation, any refunding bonds which may be issued in accordance with the New GO Bonds Indenture and the New GO Bonds Legislation.

*"New GO Bonds Indenture"* shall mean the indenture to be executed and delivered as of the Effective Date pursuant to which the Commonwealth shall issue the New GO Bonds, and including all of the terms and provisions in connection therewith, as it may be amended, supplemented or modified from time to time, in accordance with its terms and conditions.

*"New GO Bonds Legislation"* shall mean legislation to be enacted on or prior to the Effective Date authorizing the transactions contemplated by, and consistent with the Plan, including, without limitation, legislation authorizing the issuance of the New GO Bonds, and the Debt Responsibility Act.

*"PBA Bond Claims"* shall mean, collectively, the claims against the PBA arising from or relating to the PBA Bonds, which shall be calculated, for the purposes of the Plan, as the outstanding principal amount of the PBA Bonds (which amount shall include accretion, if any, as of the PBA Petition Date), plus accrued, but unpaid, interest up to, but not including, the PBA Petition Date.

*"PBA Litigation"* shall mean the litigation styled The Financial Oversight and Management Board for Puerto Rico v. Puerto Rico Public Building Authority, Adv. Pro. No. 18-AP-149-LTS, currently pending in the Title III Court.

109132810v14

"*Plan Supplement*" shall mean the volume(s) of documents, agreements and instruments, including, without limitation, the Definitive Documents, which shall be filed with the Title III Court in connection with the Plan and consummation of the transactions contemplated therein, and each of which shall be in form and substance reasonably satisfactory to each of the Parties.

"*PRIFA*" shall mean The Puerto Rico Infrastructure Financing Authority.

"*PRIFA BANs*" shall mean that certain indebtedness issued by PRIFA pursuant to that certain Trust Agreement, dated March 1, 2015, between PRIFA and The Bank of New York Mellon, as trustee.

"*PRIFA BANs Litigation*" shall mean the litigation styled <u>The Financial Oversight and Management Board for Puerto Rico v. The Bank of New York Mellon et al.</u>, Adv. Pro. No. 19-AP-269-LTS, currently pending in the Title III Court.

"*PRIFA Bonds*" shall mean the securities issued by PRIFA, other than the PRIFA BANs.

"*PRIFA Stipulation*" shall mean a stipulation to be executed by, among other parties, the Oversight Board and PRIFA, providing for the resolution of claims against the Commonwealth and PRIFA associated with the PRIFA BANs, including, without limitation, the escrow of Twelve Million Six Hundred Fifty-Seven Thousand Five Hundred Eight Dollars and Eighty-One Cents ($12,657,508.81) by PRIFA for the payment on account of the PRIFA BANs.

"*PROMESA Proceedings*" shall mean, collectively, the Commonwealth PROMESA Proceeding, the ERS PROMESA Proceeding and the PBA PROMESA Proceeding

"*PSA Creditors*" shall mean, collectively, the Initial PSA Creditors and those entities holding GO Bonds or PBA Bonds that execute and deliver either the Joinder Agreement or the Annex Agreement, the forms of which are annexed hereto as Exhibits "F" and "G", respectively.

"*PSA Restriction Fee*" shall mean, collectively, the fees payable in accordance with Article VI hereof, the Plan and the Confirmation Order, which fees, in the aggregate, shall not exceed Three Hundred Fifty Million Dollars ($350,000,000.00) <u>minus</u> such amount as may be payable on account of Consummation Costs; <u>provided</u>, <u>however</u>, that, notwithstanding the foregoing, in accordance with the provisions of Article VI hereof and the Plan, such aggregate amount may be increased on account of the Retail Support Fee Return, with such additional amount being redistributed in accordance with the provisions of Section 6.1(b) hereof and the Plan.

"*PSA Restriction Fee Creditors*" shall mean, collectively, the Initial PSA Creditors and the Joinder Creditors that execute this Agreement, the Joinder Agreement, or the Annex Agreement at or prior to the PSA Threshold Attainment.

"*PSA Restriction Fee Period*" shall mean the period from the date hereof up to and including the earlier to occur of (a) the PSA Threshold Attainment and (b) the Joinder Deadline.

109132810v14

**EXECUTION COPY**

*"PSA Threshold Attainment"* shall mean the date and time at which PSA Restriction Fee Creditors own or have due investment management responsibility and authority for funds or accounts which own seventy percent (70%) of the aggregate amount of GO Bond Claims, PBA Bond Claims, and CW Guarantee Bond Claims (without duplication and, to the extent any such claims are Insured GO Bond Claims or Insured PBA Bond Claims, to the extent a PSA Creditor is authorized to vote any such claim in accordance with the definitive insurance documents and applicable law).

*"QTCB Group"* shall mean the QTCB Noteholder Group, consisting of the QTCB Noteholders.

*"QTCB Noteholders"* shall mean, collectively, Canyon Capital Advisors LLC, Sculptor Capital LP, and Davidson Kempner Capital Management LP, each on behalf of itself or on behalf of its participating clients or certain of its respective managed funds and, in each case, their respective successors and assigns with respect to transfers made in accordance with the terms hereof.

*"Qualified Marketmaker"* shall mean an entity that (x) holds itself out to the market as standing ready in the ordinary course of its business to purchase from customers and sell to customers debt securities such as the GO Bonds or the PBA Bonds or enter with customers into long and short positions in debt securities such as the GO Bonds or the PBA Bonds, in its capacity as a dealer or market marker in such GO Bonds or PBA Bonds; (y) is in fact regularly in the business of making a market in debt securities; and (z) if transacting with respect to GO Bonds or PBA Bonds, is registered with Securities and Exchange Commission and financial institutions regulatory authority.

*"Restriction Fee Percentage"* shall mean the percentage of the aggregate amount of GO Bond Claims, PBA Bond Claims and CW Guarantee Bond Claims (without duplication) held by PSA Restriction Fee Creditors equal to (x) Three Hundred Fifty Million Dollars ($350,000,000.00) minus such amounts as may be payable on account of Consummation Costs divided by (y) the aggregate amount of GO Bond Claims, PBA Bond Claims, and CW Guarantee Bond Claims (without duplication) held by PSA Restriction Fee Creditors.

*"Restriction Fees"* shall mean, collectively, the PSA Restriction Fee and the Retail Support Fee.

*"Retail GO Bonds"* shall mean those GO Bonds held by a Retail Investor, wherein such holder's aggregate face amount of GO Bonds is equal to or less than One Million Dollars ($1,000,000.00).

*"Retail Investor"* shall mean an individual who purchased GO Bonds and/or PBA Bonds for his or her own brokerage account, trust account, custodial account or in a separately managed account rather than for or on behalf of an organization, institution or entity.

*"Retail PBA Bonds"* shall mean those PBA Bonds held by a Retail Investor, wherein such holder's aggregate face amount of PBA Bonds is equal to or less than One Million Dollars ($1,000,000.00).

109132810v14

*"Retail Support Fee"* shall mean, collectively, that portion of the fees to be made available to holders of Retail PBA Bonds and Retail GO Bonds, in accordance with the terms and provisions of Article VI hereof, the Plan and the Confirmation Order, which fees, in the aggregate, shall not exceed Fifty Million Dollars ($50,000,000.00), provided, however, that, notwithstanding the foregoing, in accordance with the provisions of Section 6.1(c) hereof, the Plan and the Confirmation Order, such aggregate amount may be decreased on account of the Retail Support Fee Return, with such aggregate amount of the Retail Support Fee Return being redistributed in accordance with the provisions of Article VI hereof, the Plan and the Confirmation Order.

*"Retail Support Fee Return"* shall mean that portion of the Retail Support Fee not allocated to classes of Retail Investors, which portion is then payable and reallocated to PSA Restriction Fee Creditors and members of Retail Investor classes that voted to accept the Plan in accordance with the provisions of Article VI hereof, the Plan and the Confirmation Order.

*"Sales Tax"* shall mean the sales and use taxes, including any replacement or similar sales and use tax, imposed by the government of Puerto Rico pursuant to Sections 4020.01 and 4020.02 of Subchapter D of Act No. 1-2011, as amended, and known as the Internal Revenue Code for a New Puerto Rico.

*"Settlement Summary"* shall mean the summary of the key economic terms to be included in the Plan as set forth in Exhibit "I" annexed hereto.

Section 1.3     Other Terms.  Other terms may be defined elsewhere in this Agreement and, unless otherwise indicated, shall have such meaning throughout this Agreement.  As used in this Agreement, any reference to any federal, state, local, or foreign law, including any applicable law, will be deemed also to refer to such law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise. The words "include", "includes", and "including" will be deemed to be followed by "without limitation." Pronouns in masculine, feminine or neutral genders will be construed to include any other gender, and words in the singular form will be construed to include the plural and vice versa, unless the context otherwise requires. The words "this Agreement", "herein", "hereof", "hereby", "hereunder", and words of similar impact refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited,

Section 1.4     Interpretations.  The Parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties hereto and no presumption or burden of proof will arise favoring or disfavoring any party hereto because of the authorship of any provision of this Agreement.

Section 1.5     Exhibits.  Each of the exhibits, annexes, signature pages and schedules annexed hereto are expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes and schedules.

**EXECUTION COPY**

## ARTICLE II

## GENERAL PROVISIONS

Section 2.1 <u>Financial Information.</u>  The Oversight Board acknowledges and agrees that (a) the financial information set forth on signature pages affixed to this Agreement and the CUSIP numbers for the GO Bonds, PBA Bonds, and PRIFA BANs provided by the Parties pursuant to Section 2.2 hereof are proprietary, privileged, and confidential, and (b) unless otherwise ordered by the Title III Court, shall not disclose to any third party and shall otherwise use its reasonable best efforts to protect the confidential nature of such financial information and CUSIP numbers, including, without limitation, in filings to be made in the Title III Court or any other public release.

Section 2.2 <u>CUSIP Information.</u>  Unless the then-current information has previously been provided to the Oversight Board, within five (5) Business Days after the date hereof, each Initial PSA Creditor shall provide the Oversight Board, in writing, the Face Amount and CUSIP numbers for each of the GO Bonds, PBA Bonds, and PRIFA BANs, if any, such Party owns or has due investment management responsibility and authority for funds or accounts which own such GO Bonds, PBA Bonds, or PRIFA BANs, as the case may be.  In addition, within five (5) Business Days of a request of the Oversight Board, which request shall be made no more frequently than monthly from and after the date hereof, each PSA Creditor shall provide the Oversight Board, in writing, the Face Amount and CUSIP numbers for each of the GO Bonds, PBA Bonds and PRIFA BANs, if any, such Party then owns or has due investment management responsibility and authority for funds or accounts which own such GO Bonds, PBA Bonds, or PRIFA BANs, as the case may be.

Section 2.3 <u>Additional Parties.</u>  Within three (3) Business Days from the date hereof, the Oversight Board shall request that AAFAF provide, through the prompt issuance on EMMA, a notice regarding the execution and delivery of this Agreement and the opportunity for all entities holding GO Bonds, PBA Bonds, and/or PRIFA BANs having a Face Amount, in each case, in excess of One Million Dollars ($1,000,000.00), to execute and deliver to counsel to the Oversight Board, the form of Joinder Agreement annexed hereto as Exhibit "F", and to become a party hereto in accordance with the terms and conditions set forth herein and in the Joinder Agreement.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

Section 3.1 <u>Representations and Warranties of the Oversight Board.</u>  The Oversight Board hereby represents and warrants that: (a) it is duly created in accordance with the terms and provisions of PROMESA with all requisite consent, approval, power and authority to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite, consent, approval, power and authority to execute and deliver and to perform its obligations under this Agreement and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and

15

validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it or any law, rules or regulations applicable to it; and (c) except with respect to the Appointments Related Litigation, no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 3.2    Representations and Warranties of the Commonwealth.  The Commonwealth, through its Title III representative, the Oversight Board, hereby represents and warrants that, subject to entry of an order of the Title III Court: (a) it is duly organized and validly existing under the laws of the jurisdiction of its organization with all requisite, consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby: (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; and (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 3.3    Representations and Warranties of ERS.  ERS, through its Title III representative, the Oversight Board, hereby represents and warrants that, subject to entry of an order of the Title III Court: (a) it is duly organized and validly existing under the laws of the jurisdiction of its organization with all requisite, consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; and (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder

Section 3.4    Representations and Warranties of PBA.  PBA, through its Title III representative, the Oversight Board, hereby represents and warrants that, subject to entry of an order of the Title III Court: (a) it is duly organized and validly existing under the laws of the jurisdiction of its organization with all requisite, consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are

16

not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; and (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

      Section 3.5    <u>Representations and Warranties of the GO Holders.</u>  Each of the GO Holders, severally and not jointly, hereby represents and warrants on behalf of itself that, as of the date hereof: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder; and (d) it owns or has due investment management responsibility and authority for funds or accounts which own the GO Bonds of no less than the Face Amounts set forth on the signature pages affixed to this Agreement as of the date hereof, which it would be entitled to vote in connection with the solicitation of acceptances and rejections to the Plan, other than potentially with respect to the Insured GO Bond Claims, and that, as of the date hereof, subject to any liens or encumbrances permitted by Section 4.5(a), it has not sold, transferred, pledged, hypothecated or assigned such GO Bonds or any voting, consent or direction rights related to such GO Bonds to any person or entity, that would prevent or adversely affect in any way such GO Holders' performance of its obligations contained in this Agreement at the time such obligations are required to be performed; <u>provided</u>, <u>however,</u> that each of the Parties acknowledges that each Insured GO Bonds Claim shall be voted in accordance with Section 301(c)(3) of PROMESA and such other applicable law and governing documents, so long as this Agreement remains in effect.

      Section 3.6    <u>Representations and Warranties of the PBA Holders.</u>  Each of the PBA Holders, severally and not jointly, hereby represents and warrants on behalf of itself that, as of the date hereof: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite consent, approval, power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any material agreements specifically applicable to it, or any law, rules or regulations applicable to it; (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it, or to its knowledge has been threatened against it, which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder;

**EXECUTION COPY**

and (d) it owns or has due investment management responsibility and authority for funds or accounts which own the PBA Bonds of no less than the Face Amounts set forth on the signature pages affixed to this Agreement as of the date hereof, which it would be entitled to vote in connection with the solicitation of acceptances and rejections to the Plan, other than potentially with respect to the Insured PBA Bond Claims, and that, as of the date hereof, subject to any liens or encumbrances permitted by Section 4.6(a), it has not sold, transferred, pledged, hypothecated or assigned such PBA Bonds or any voting, consent or direction rights related to such PBA Bonds to any person or entity, that would prevent or adversely affect in any way such PBA Holders' performance of its obligations contained in this Agreement at the time such obligations are required to be performed; provided, however, that each of the Parties acknowledges that each Insured PBA Bond Claim shall be voted in accordance with Section 301(c)(3) of PROMESA and such other applicable law and governing documents, so long as this Agreement remains in effect.

Section 3.7    Representations of the Parties to this Agreement.  Each Party, severally and not jointly, represents and acknowledges that: (a) in executing this Agreement, it does not rely, and has not relied, upon any representation or statement made by any other Party or any of such Party's representatives, agents or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as stated in this Agreement; (b) in executing this Agreement, it has relied entirely upon its own judgment, beliefs and interest and the advice of its counsel and that it has had a reasonable period of time to consider the terms of this Agreement before entering into it; and (c) it has reviewed this Agreement and that it fully understands and voluntarily accepts all of the provisions contained herein. Nothing contained herein shall limit or otherwise modify any commutation or other separate agreement or instrument entered into by one or more GO Holders or PBA Holders, on the one hand, and a Monoline, on the other hand.

## ARTICLE IV

## COVENANTS

Section 4.1    Covenants of the Oversight Board.  The Oversight Board shall take, and cause the Commonwealth, ERS and PBA to take, all actions necessary to obtain, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that the Disclosure Statement, the Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Plan, including, without limitation, that the Parties have acted in good faith in connection with the negotiation of the terms hereof and thereof.  Such actions shall include, but not be limited to, (a) filing the Plan and Disclosure Statement, in form and substance consistent with this Agreement and reasonably acceptable to the Parties, with the Title III Court by February 28, 2020, (b) prosecuting, in a timely and appropriate manner, the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the PROMESA Proceedings, (c) as soon as reasonably practicable, and to the extent not otherwise stayed by agreement or pursuant to an order of the Title III Court, seeking to re-calendar and prosecute its motions to stay the Debt Related Objections, the Invalidity Actions,

109132810v14

**EXECUTION COPY**

the Lien Challenge Actions, the PBA Litigation, and the PRIFA BANs Litigation to a date no earlier than one (1) Business Day following the date the Title III Court enters an order granting or denying confirmation of the Plan, (d) as soon as commercially practicable, in the joint and absolute discretion of the Government Parties, upon consultation with up to two (2) Initial PSA Creditors (jointly designated by the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group) each of which shall have executed a confidentiality agreement in form and substance satisfactory to the Oversight Board and restricting such Initial PSA Creditors from trading New GO Bonds and COFINA Junior Lien Bonds, seeking (or causing to be sought) ratings on the New GO Bonds and the COFINA Junior Lien Bonds by the applicable ratings agencies as contemplated in accordance with the terms and provisions of the Plan, (e) using its reasonable best efforts to cause the New GO Bonds and COFINA Junior Lien Bonds to be tax-exempt to the extent permitted by law, including, without limitation, providing, or causing to be provided, any and all information required or requested by federal and applicable local tax laws and federal and applicable local taxing authorities, and only if the Oversight Board and the Commonwealth determine in their joint and absolute discretion, upon consultation with up to two (2) legal representatives/advisors with Section 103 of the IRC expertise jointly designated by the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group (which representatives/advisors shall have executed a confidentiality agreement in form and substance satisfactory to the Oversight Board and otherwise not be a GO Holder or PBA Holder trading for or on behalf of its own account), to seek a determination from the Internal Revenue Service that interest on the New GO Bonds and the COFINA Junior Lien Bonds will be exempt from federal income taxes, (f) refraining from directly or indirectly commencing (or continuing to prosecute) any action or proceeding or asserting any claim or objection against any Initial PSA Creditors (or their respective trustees, fiscal agents, or paying agents) relating to the GO Bonds, the PBA Bonds, or the PRIFA BANs, as the case may be, and taking all reasonable efforts to prevent any other person or entity (private or governmental) from directly or indirectly commencing (or continuing to prosecute) any such action or proceeding or asserting any such claim or objection, (g) refraining from directly or indirectly commencing (or continuing to prosecute) or taking any legal position in any action or proceeding, including, without limitation, asserting any claim or objection, that is inconsistent with the compromises and settlements described herein or set forth in the Plan; provided, however, that except with respect to the petroleum tax revenues allocated for repayment of the PRIFA BANs and the claims of holders of the PRIFA BANs and the trustee for the PRIFA BANs, the foregoing is not intended, nor shall it be construed, to apply to any action taken or to be taken with respect to claims or objections with respect to "clawbacks" or other claims, in each case, asserted by holders or insurers of CCDA Bonds, HTA Bonds, and PRIFA Bonds, (h) absent exigent circumstances, shall consult with one (1) legal representative jointly designated by the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group, prior to taking any action challenging the priority of recovery and the preemption of applicable laws based upon the enactment of PROMESA and the effect thereof upon GO Bond Claims and CW Guarantee Bond Claims, (i) at least four (4) days prior to such filing, deliver to counsel for each of the Constitutional Debt Group, the GO Group, QTCB Group and the LCDC copies of the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, the other Definitive Documents and all other documents related to any of the foregoing, (j) as soon as practicable following the PSA Threshold Attainment, the Oversight Board shall use its reasonable best efforts to cause the publication of a notice on EMMA regarding the PSA Threshold Attainment, (k) in connection with the hearing to consider confirmation of the Plan,

109132810v14

**EXECUTION COPY**

certify a Fiscal Plan in accordance with the provisions of Section 314(b)(7) of PROMESA, and (l) in the event that a Title III case is filed with respect to PRIFA, causing PRIFA to assume and fulfill all of its obligations in accordance with the terms and conditions set forth in the PRIFA Stipulation.

Section 4.2    Covenants of the Commonwealth.  The Commonwealth shall take all actions necessary to obtain, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including, without limitation, the execution and delivery of the Definitive Documents, provided that the Disclosure Statement, the Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein, including, without limitation, that the Parties have acted in good faith in connection with the negotiation of the terms hereof and thereof.  Such actions shall include, but not be limited to, (a) prosecuting, in a timely and appropriate manner, the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the PROMESA Proceedings, (b) as soon as reasonably practicable, and to the extent not otherwise stayed by agreement or pursuant to an order of the Title III Court, seeking to re-calendar and prosecute its motions to stay the Debt Related Objections, the Invalidity Actions, the Lien Challenge Actions, the PBA Litigation, and the PRIFA BANs Litigation to a date no earlier than one (1) Business Day following the date the Title III Court enters an order granting or denying confirmation of the Plan, (c) as soon as commercially practicable, in the joint and absolute discretion of the Government Parties, upon consultation with up to two (2) Initial PSA Creditors (jointly designated by the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group) each of which shall have executed a confidentiality agreement in form and substance satisfactory to the Oversight Board and restricting such Initial PSA Creditors from trading New GO Bonds and COFINA Junior Bonds, seeking (or causing to be sought) ratings on the New GO Bonds and the COFINA Junior Lien Bonds by the applicable ratings agencies as contemplated in accordance with the terms and provisions of the Plan, (d) using its reasonable best efforts to cause the New GO Bonds and the COFINA Junior Lien Bonds to be tax-exempt to the extent permitted by law, including, without limitation, providing, or causing to be provided, any and all information required or requested by federal and applicable local tax laws and federal and applicable local taxing authorities, and only if the Oversight Board and the Commonwealth determine in their joint and absolute discretion, upon consultation with up to two (2) legal representatives/advisors with Section 103 of the IRC expertise jointly designated by the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group (which representatives/advisors shall have executed a confidentiality agreement in form and substance satisfactory to the Oversight Board and otherwise not be a GO Holder or PBA Holder trading for or on behalf of its own account), to seek a determination from the Internal Revenue Service that interest on the New GO Bonds and the COFINA Junior Lien Bonds will be exempt from federal income taxes, (e) using its reasonable best efforts to cause the Legislature to enact, and the Governor to execute, the legislation required for the issuance of the New GO Bonds and the COFINA Junior Lien Bonds and to facilitate confirmation and consummation of the Plan, (f) providing the Oversight Board with such financial information as shall be reasonably requested to be necessary to prosecute the Commonwealth PROMESA Proceeding, (g) refraining from directly or indirectly commencing (or continuing to prosecute) any action or proceeding or

20

asserting any claim or objection against any Initial PSA Creditor (or their respective trustees, fiscal agents or paying agents) relating to the GO Bonds, the PBA Bonds, or the PRIFA BANs, as the case may be, and taking all reasonable efforts to prevent any other person or entity (private or governmental) from directly or indirectly commencing (or continuing to prosecute) any such action or proceeding or asserting any such claim or objection, (h) refraining from directly or indirectly commencing (or continuing to prosecute) or taking any legal position in any action or proceeding, including, without limitation, asserting any claim or objection, that is inconsistent with the compromises and settlements described herein or set forth in the Plan; provided, however, that except with respect to the petroleum tax revenues allocated for repayment of the PRIFA BANs and the claims of holders of the PRIFA BANs and the trustee for the PRIFA BANs, the foregoing is not intended, nor shall it be construed, to apply to any action taken or to be taken with respect to claims or objections with respect to "clawbacks" or other claims, in each case, asserted by holders or insurers of CCDA Bonds, HTA Bonds, and PRIFA Bonds, (i) absent exigent circumstances, shall consult with one (1) legal representative jointly designated by the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group prior to taking any action challenging the priority of recovery and the preemption of applicable laws based upon the enactment of PROMESA and the effect thereof upon GO Bond Claims and CW Guarantee Bond Claims, and (j) as soon as practicable from and after the date hereof, but in no event later than July 1, 2020, with the assistance of AAFAF, and with the prior approval of the Oversight Board, shall release a request for proposals to entities nationally recognized as having expertise in serving as municipal market trustees and interested in serving as trustee and paying agent in connection with the New GO Bonds, the COFINA Junior Lien Bonds, or both as the case may be, and, upon receipt of responses to such request for proposals, the Commonwealth, together with the other Government Parties, shall consult with counsel for the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group prior to making such selection, which selection shall be made by the Government Parties in their joint and absolute discretion.

Section 4.3   Covenants of ERS.   ERS shall take all actions necessary to obtain, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that the Disclosure Statement, the Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Plan, including, without limitation, that the Parties have acted in good faith in connection with the negotiation of the terms hereof and thereof.  Such actions shall include, but not be limited to, (a) prosecuting, in a timely and appropriate manner, the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the PROMESA Proceedings, (b) providing the Oversight Board with such financial information as shall be reasonably requested to be necessary to prosecute the ERS PROMESA Proceeding, (c) refraining from directly or indirectly commencing (or continuing to prosecute) any action or proceeding or asserting any claim or objection against any GO Holder, PBA Holder, ERS Holder, or holder of PRIFA BANs relating to the GO Bonds, the PBA Bonds, the ERS Bonds or the PRIFA BANs, (or their respective trustees, fiscal agents or paying agents), as the case may be, and taking all reasonable efforts to prevent any other person or entity (private or governmental) from directly or indirectly commencing (or continuing to prosecute) any such action or proceeding or asserting any such claim or objection, and (d)

**EXECUTION COPY**

refraining from directly or indirectly commencing (or continuing to prosecute) or taking any legal position in any action or proceeding, including, without limitation, asserting any claim or objection, that is inconsistent with the compromises and settlements described herein or set forth in the Plan; provided, however, that except with respect to the petroleum tax revenues allocated for repayment of the PRIFA BANs and the claims of holders of the PRIFA BANs and the trustee for the PRIFA BANs, the foregoing is not intended, nor shall it be construed, to apply to any action taken or to be taken with respect to claims or objections with respect to "clawbacks" or other claims, in each case, asserted by holders or insurers of CCDA Bonds, HTA Bonds and PRIFA Bonds.

Section 4.4    Covenants of PBA.   PBA shall take all actions necessary to obtain, and shall not, nor encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the filing of the Plan and the Disclosure Statement, the approval of the Disclosure Statement and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that the Disclosure Statement, the Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and Plan, including, without limitation, that the Parties have acted in good faith in connection with the negotiation of the terms hereof and thereof.  Such actions shall include, but not be limited to, (a) prosecuting, in a timely and appropriate manner, the approval of the Disclosure Statement and confirmation of the Plan at hearings in accordance with applicable orders entered in the PROMESA Proceedings, (b) providing the Oversight Board with such financial information as shall be reasonably requested to be necessary to prosecute the PBA PROMESA Proceeding, (c) as soon as reasonably practicable, and to the extent not otherwise stayed by agreement or pursuant to an order of the Title III Court, seeking to re-calendar and prosecute its motions to stay the Debt Related Objections, the Invalidity Actions, the Lien Challenge Actions, the PBA Litigation, and the PRIFA BANs Litigation to a date no earlier than one (1) Business Day following the date the Title III Court enters an order granting or denying confirmation of the Plan, (d) refraining from directly or indirectly commencing (or continuing to prosecute) any action or proceeding or asserting any claim or objection against any Initial PSA Creditor (or their respective trustees, fiscal agents or paying agents) relating to the GO Bonds, the PBA Bonds or the PRIFA BANs, as the case may be, and taking all reasonable efforts to prevent any other person or entity (private or governmental) from directly or indirectly commencing (or continuing to prosecute) any such action or proceeding or asserting any such claim or objection and (e) refraining from directly or indirectly commencing (or continuing to prosecute) or taking any legal position in any action or proceeding, including, without limitation, asserting any claim or objection, that is inconsistent with the compromises and settlements described herein or set forth in the Plan; provided, however, that except with respect to the petroleum tax revenues allocated for repayment of the PRIFA BANs and the claims of holders of the PRIFA BANs and the trustee for the PRIFA BANs, the foregoing is not intended, nor shall it be construed, to apply to any action taken or to be taken with respect to claims or objections with respect to "clawbacks" or other claims, in each case, asserted by holders or insurers of CCDA Bonds, HTA Bonds and PRIFA Bonds.

Section 4.5    Covenants of the GO Holders.  Subject to the terms and conditions hereof, each of the GO Holders, severally and not jointly, hereby covenants and agrees as follows:

**EXECUTION COPY**

(a)      None of the GO Holders shall sell, transfer, pledge, hypothecate or assign (except as may be required in accordance with the definitive insurance documents and applicable law with respect to a Monoline-insured bond) (a "**Transfer**") any of the GO Bond Claims, or any voting, consent, or direction rights or participations or other interests therein (collectively, the "**GO Interests**") during the period from the date hereof up to and including the earlier to occur of (i) the Effective Date and (ii) the termination of this Agreement in accordance with the provisions of Section 7.1 hereof; provided, however, that, notwithstanding the foregoing, each of the GO Holders may transfer any GO Interests to (1) another PSA Creditor or (2) in the event that the transferee is not a PSA Creditor at the time of Transfer, such transferee that executes and delivers, within five (5) calendar days after execution thereof, to counsel for the Oversight Board and AAFAF, the Joinder Agreement attached hereto as Exhibit "F" (a "**Qualified Transferee**"), pursuant to which (y) such Qualified Transferee shall (i) assume all the rights and obligations of the transferor in accordance with the terms and conditions of this Agreement and (ii) such Qualified Transferee shall then be deemed a PSA Creditor for all purposes hereunder, including, without limitation, with respect to any additional GO Bonds held by such Qualified Transferee at the time it joins this Agreement, and shall assume all of the rights and obligations hereunder (other than the right to receive the Consummation Costs) and (z) on or after the effective date of the Transfer, such GO Holder shall be deemed to have relinquished its rights (other than the right to receive the Consummation Costs), and be released from its obligations (other than as set forth in Section 4.5(c) hereof) on or after the effective date of the Transfer under this Agreement solely to the extent of such transferred rights; and, provided, further, that, to the extent that a Transfer violates the provisions of this Section 4.5(a), it shall be void *ab initio* and the applicable GO Bond Claims or the CW Guarantee Bond Claims and the GO Holder attempting such Transfer shall continue to remain subject to the terms of this Agreement; and, provided, further, that nothing contained herein is intended, nor shall it be construed, to preclude any of the GO Holders from acquiring additional GO Bond Claims, PBA Bond Claims or CW Guarantee Bond Claims; provided, however, that any such GO Bond Claims, PBA Bond Claims, CW Guarantee Bond Claims acquired from and after the date hereof shall automatically and immediately upon acquisition by a GO Holder be deemed subject to all of the terms and provisions of this Agreement; and, provided, further, that the provisions of this Section 4.5(a) shall not apply to the grant of any liens or encumbrances in favor of a bank or broker-dealer holding custody of securities in the ordinary course of business and which lien or encumbrance is released upon the Transfer of such securities.  Notwithstanding the foregoing, nothing contained herein shall restrict or prohibit any party from taking any action required by the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, any rule or regulations promulgated thereunder, or by any other applicable law or regulation.

(b)      None of the GO Holders shall, except as expressly provided herein, (i) file any additional claims or proofs of claim, whatsoever, with the Title III Court against the Commonwealth (including secured, unsecured, administrative or substantial contribution claims), on account of any GO Bonds, GO Bond Claims or CW Guarantee Bond Claims, provided that the failure to file any additional proofs of claim as a result of its obligations under this clause (i) shall not prejudice, nor shall it be deemed to be a limitation of, such GO Holders' aggregate holdings of GO Bond Claims or CW Guarantee Bond Claims, (ii) except as permitted by Section 4.5(d) below solely with respect to the Monolines, file any additional claims, commence or prosecute any pending or additional litigation, proceeding, action or matter on account of its GO Bonds, GO Bond Claims or CW Guarantee Bond Claims (and each such GO

23

**EXECUTION COPY**

Holder agrees to stay all such pending litigations, proceedings, actions or matters) or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims, or (iii) aid any person in taking any action with respect to the Government Released Claims that is prohibited by this Section 4.5(b); provided, however, that, to the extent consistent with its obligations hereunder, a GO Holder may amend a proof of claim solely to change the claimant's name, address or similar information.

(c)     Each of the GO Holders, solely in its capacity as holder of GO Bonds, GO Bond Claims or CW Guarantee Bond Claims, severally and not jointly, shall (i) support, and otherwise not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein, or impede or preclude, the filing of the Plan, the administration of the PROMESA Proceedings, the approval of the Disclosure Statement, and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that such Disclosure Statement, Confirmation Order and Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein and the Plan, and (ii) in accordance with the provisions of Section 5.1 hereof, (A) not consent to or vote for any modification of the Plan unless such modification is proposed or supported by the Oversight Board, AAFAF, the Commonwealth, and the PBA and has been made in accordance with the provisions of Section 8.1 hereof, and (B) not vote for or support any PBA or Commonwealth plan of adjustment not proposed or supported by the Oversight Board, AAFAF, the Commonwealth, and PBA, so long as none of the Government Parties is in material breach of their obligations sets forth in this Agreement; provided, however, that each of the Parties acknowledges that each Insured GO Bond Claim shall be voted in accordance with Section 301(c)(3) of PROMESA and such other applicable law and governing documents, so long as this Agreement remains in effect.

(d)     Subject to the terms set forth herein, none of the GO Holders shall be limited or prohibited from (i) taking any action that any such GO Holder shall deem necessary or appropriate to preserve, protect or defend any of its rights under this Agreement, the Plan, or the other Definitive Documents, (ii) taking any action to defend itself against the claims and causes of action asserted in the Debt Related Objections, the Invalidity Actions, the Lien Challenge Actions, the PBA Litigation, or the PRIFA BANs Litigation to the extent such litigation is not otherwise stayed, or the claims and causes of action asserted in any other litigation that is not stayed, (iii) asserting any claims or causes of action against any Party that breaches this Agreement, or (iv) taking any action such holder shall deem necessary or appropriate as against a Monoline to preserve, protect or defend any of its rights under any policy of insurance issued by a Monoline with respect to any Monoline-insured bond.  Without in any way limiting the foregoing, to the extent the Plan and the Definitive Documents are consistent with this Agreement and the exhibits hereto, none of the GO Holders shall take any action to oppose confirmation of the Plan with respect to the Covered Borrowers, including, without limitation, voting to reject the Plan with respect to any other claims held against the Commonwealth or PBA (with respect to a Monoline-insured bond, to the extent such GO Holder is authorized to vote such claim in accordance with any definitive insurance documents and applicable law); provided, however, that nothing in this Agreement shall limit or prohibit a GO Holder from taking any action, or asserting any claims or causes of action, in connection with any matter relating to the

24

Monolines and with respect to any Monoline-insured bond (including, without limitation, voting of claims, subrogation or acceleration, commutation or any other act necessary to maintain the benefits of the applicable Monoline insurance policy). Notwithstanding anything in this Agreement to the contrary, the GO Holders may (1) act in their capacity as holders of bonds, claims, or related interests in the HTA Title III Case, and any Title III case filed by the Oversight Board on behalf of CCDA or PRIFA, but not the Commonwealth PROMESA Proceeding or the ERS PROMESA Proceeding (except to defend against any claims or causes of action brought against them or to respond to any objections to claims that they have filed), and take any action in such Title III cases in such capacity to file any additional claims, commence or prosecute any pending or additional litigation, proceeding, action, or matter on account of such bonds, claims, or related interests, and (2) to the extent that the Oversight Board and/or the Commonwealth seeks to disallow or expunge a claim in the Commonwealth PROMESA Proceeding relating to a guarantee of non-GO Bond indebtedness as to which the principal obligor is current on the payment of principal and interest of the underlying obligation as of the date hereof, take action to object to the disallowance or expungement thereof; provided, however, that, other than the above enumerated actions, no other action may be taken in the PROMESA Proceedings which may negatively impact or otherwise affect confirmation or consummation of the Plan; and, provided, further, that, notwithstanding the limitation on taking certain actions in the PROMESA Proceedings relating to claims arising from or related to the HTA Bonds, the ERS Bonds, the CCDA Bonds, the PRIFA BANs, and the PRIFA Bonds set forth in this Section 4.5(d), GO Holders holding any such claims shall be entitled to receive the same treatment, elections or economic consideration as any other holder or insurer of HTA Bonds, ERS Bonds, CCDA Bonds, the PRIFA BANs, or PRIFA Bonds, as applicable, pursuant to the Plan and to the extent any such holder has an allowed claim against a Covered Borrower.

Section 4.6    Covenants of PBA Holders.  Subject to the terms and conditions hereof, each of the PBA Holders, severally and not jointly, hereby covenants and agrees as follows:

(a)    None of the PBA Holders shall Transfer any of the PBA Bond Claims, or any voting, consent or direction rights or participations or other interests therein (collectively, the "**PBA Interests**") during the period from the date hereof up to and including the earlier to occur of (i) the Effective Date and (ii) the termination of this Agreement in accordance with the provisions of Section 7.1 hereof; provided, however, that, notwithstanding the foregoing, each of the PBA Holders may transfer any PBA Interests to (1) another PSA Creditor or (2) a Qualified Transferee pursuant to which (y) such Qualified Transferee shall (i) assume all the rights and obligations of the transferor in accordance with the terms and conditions of this Agreement and (ii) such Qualified Transferee shall then be deemed a PSA Creditor for all purposes herein, including, without limitation, with respect to any additional PBA Bonds held by such Qualified Transferee at the time it joins this Agreement, and shall assume all of the rights and obligations hereunder (other than the right to receive the Consummation Costs) and (z) on or after the effective date of the Transfer, such PBA Holder shall be deemed to have relinquished its rights (other than the right to receive the Consummation Costs), and be released from its obligations (other than as set forth in Sections 4.6(c) hereof) on or after the effective date of the Transfer under this Agreement solely to the extent of such transferred rights; and, provided, further, that, to the extent that a Transfer violates the provisions of this Section 4.6(a), it shall be void *ab initio* and the applicable PBA Bond Claims and the PBA Holder attempting such Transfer shall continue to remain subject to the terms of this Agreement; and, provided, further, that nothing

**EXECUTION COPY**

contained herein is intended, nor shall it be construed, to preclude any of the PBA Holders from acquiring additional PBA Bond Claims, GO Bond Claims, or CW Guarantee Bond Claims; provided, however, that any such PBA Bond Claims, GO Bond Claims, or CW Guarantee Bond Claims acquired from and after the date hereof shall automatically and immediately upon acquisition by a PBA Holder be deemed subject to all of the terms and provisions of this Agreement; and, provided, further, that the provisions of this Section 4.6(a) shall not apply to the grant of any liens or encumbrances in favor of a bank or broker-dealer holding custody of securities in the ordinary course of business and which lien or encumbrance is released upon the Transfer of such securities. Notwithstanding the foregoing, nothing contained herein shall restrict or prohibit any party from taking any action required by the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, any rule or regulations promulgated thereunder, or by any other applicable law or regulation.

(b)     None of the PBA Holders shall, except as expressly provided for herein, (i) file any additional claims or proofs of claim, whatsoever, with the Title III Court against the Commonwealth (including secured, unsecured, administrative or substantial contribution claims), on account of any PBA Bonds or PBA Bond Claims, provided that the failure to file any additional proofs of claim as a result of its obligations under this clause (i) shall not prejudice, nor shall it be deemed to be a limitation of, such PBA Holders' aggregate holdings of PBA Bond Claims, (ii) except in accordance with any claims bar date order entered in the PBA PROMESA Proceeding, or as permitted by Section 4.6(d) below solely with respect to the Monolines, file any additional claims, commence or prosecute any pending or additional litigation, proceeding, action or matter on account of its PBA Bonds or PBA Bond Claims (and each such PBA Holder agrees to stay all such pending litigations, proceedings actions or matters) or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims, or (iii) aid any person in taking any action with respect to the Government Released Claims that is prohibited by this Section 4.6(b); provided, however, that, to the extent consistent with its obligations hereunder, a PBA Holder may amend a proof of claim solely to change the claimant's name, address or similar information.

(c)     Each of the PBA Holders, solely in its capacity as holder of PBA Bonds and PBA Bond Claims, severally and not jointly, shall (i) support, and otherwise not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein or in the Plan, or impede or preclude, the filing of the Plan, the administration of the PROMESA Proceedings, the approval of the Disclosure Statement, and the entry of the Confirmation Order and the consummation, implementation and administration of the Plan, including the execution and delivery of the Definitive Documents, provided that such Disclosure Statement, Confirmation Order and Plan (and its consummation, implementation and administration) and the other Definitive Documents are consistent with the terms herein, and (ii) in accordance with the provisions of Section 5.1 hereof, (A) not consent to or vote for any modification of the Plan unless such modification is proposed or supported by the Oversight Board, AAFAF, the Commonwealth, and the PBA and was made in accordance with the provisions of Section 8.1 hereof, and (B) not vote for or support any PBA or Commonwealth plan of adjustment not proposed or supported by the Oversight Board, AAFAF, the Commonwealth, and PBA so long as none of the Government Parties is in material breach of their obligations set forth in this Agreement; provided, however, that each of the Parties

26

acknowledges that each Insured PBA Bond Claim shall be voted in accordance with Section 301(c)(3) of PROMESA and such other applicable law and governing documents, so long as this Agreement remains in effect.

(d)    Subject to the terms set forth herein, none of the PBA Holders shall be limited or prohibited from (i) taking any action that any such PBA Holder shall deem necessary or appropriate to preserve, protect or defend any of its rights under this Agreement, the Plan, or the other Definitive Documents, (ii) taking any action to defend itself against claims or causes of action asserted in the Debt Related Objections, the Invalidity Actions, the Lien Challenge Actions, the PBA Litigation, or the PRIFA BANs Litigation to the extent such litigation is not otherwise stayed, or the claims and causes of action asserted in any other litigation that is not stayed, (iii) asserting any claims or causes of action against any Party that breaches this Agreement, or (iv) taking any action such holder shall deem necessary or appropriate as against a Monoline to preserve, protect or defend any of its rights under any policy of insurance issued by a Monoline with respect to any Monoline-insured bond.  Without in any way limiting the foregoing, to the extent the Plan and the Definitive Documents are consistent with this Agreement and the exhibits hereto, none of the PBA Holders shall take any action to oppose confirmation of the Plan with respect to the Covered Borrowers, including, without limitation, voting to reject the Plan with respect to any other claims held against the Commonwealth or PBA (with respect to a Monoline-insured bond, to the extent such PBA Holder is authorized to vote such claim in accordance with any definitive insurance documents and applicable law); provided, however, that nothing in this Agreement shall limit or prohibit a PBA Holder from taking any action, or asserting any claims or causes of action, in connection with any matter relating to the Monolines and with respect to any Monoline-insured bond (including, without limitation, voting of claims, subrogation or acceleration, commutation or any other act necessary to maintain the benefits of the applicable Monoline insurance policy).  Notwithstanding anything in this Agreement to the contrary, the PBA Holders may (1) act in their capacity as holders of bonds, claims, or related interests in the HTA Title III Case and any Title III case filed by the Oversight Board on behalf of CCDA or PRIFA, but not the Commonwealth PROMESA Proceeding or the ERS PROMESA Proceeding (except to defend against any claims or causes of action brought against them or to respond to any objections to claims that they have filed), and take any action in such Title III cases in such capacity to file any additional claims, commence or prosecute any pending or additional litigation, proceeding, action, or matter on account of such bonds, claims, or related interests, and (2) to the extent that the Oversight Board and/or the Commonwealth seeks to disallow or expunge a claim in the Commonwealth PROMESA Proceeding relating to a guarantee of non-GO Bond indebtedness as to which the principal obligor is current on the payment of principal and interest of the underlying obligation as of the date hereof, take action to object to the disallowance or expungement thereof; provided, however, that, other than the above enumerated actions, no other action may be taken in the PROMESA Proceedings which may negatively impact or otherwise affect confirmation or consummation of the Plan; and, provided, further, that, notwithstanding the limitation on taking certain actions in the PROMESA Proceedings relating to claims arising from or related to the HTA Bonds, the ERS Bonds, the CCDA Bonds, the PRIFA BANs, and the PRIFA Bonds set forth in this Section 4.6(d), PBA Holders holding any such claims shall be entitled to receive the same treatment, elections and economic consideration as any other holder or insurer of HTA Bonds, ERS Bonds, CCDA Bonds, the PRIFA BANs, or PRIFA Bonds, as applicable, pursuant to the Plan and to the extent any such holder has an allowed claim against a Covered Borrower.

Section 4.7    Covenants of the Parties.  Subject to the terms and conditions hereof, each of the Parties, severally and not jointly, hereby covenants and agrees as follows:

(a)    Coordination.  The Parties shall coordinate and use their reasonable best efforts to obtain the consent and joinder of AAFAF prior to consummation of the transactions contemplated herein.  Any representations, warranties, covenants, or other obligations of AAFAF contemplated herein shall not be effective until an authorized signature for such entity has been affixed hereto.

(b)    Legal Protections.  The Plan, the Confirmation Order, the New GO Bonds Legislation, the COFINA Junior Bonds Legislation, the New GO Bonds Indenture and/or the COFINA Junior Lien Bonds Indenture, in a manner to be agreed to by the Parties, shall include the following legal protections:

(i)    From and after the Effective Date, each month any of the New GO Bonds remain outstanding, the Commonwealth shall deposit one-twelfth (1/12) of the annual principal payments and one-sixth (1/6) of the semi-annual interest payments to be due and owing with respect to the New GO Bonds in a Debt Service Fund, and such Debt Service Fund shall be held in trust for the benefit of holders of New GO Bonds; provided, however, that, on the Effective Date, the Commonwealth shall deposit such additional amounts as may be necessary to account for the issuance of the New GO Bonds from the Deemed Issuance Date;

(ii)    The Commonwealth shall create the Debt Service Reserve Fund, (1) funded either (a) on the Effective Date, or (b) in equal annual installments over an initial five-year period from and after the Effective Date (which election shall be made in the Government Parties' joint and absolute discretion), and (2) held in trust for the benefit of holders of New GO Bonds;

(iii)    For payment of the New GO Bonds, the Commonwealth shall pledge its full faith, credit and taxing power under the Puerto Rico Constitution and applicable Puerto Rico law;

(iv)    Pursuant to the New GO Bonds Legislation, there shall be statutory liens on the Debt Service Fund and the Debt Service Reserve Fund once funds are deposited therein for the purposes of securing the payment of the New GO Bonds, which statutory liens shall remain in full force and effect until the New GO Bonds have been paid or satisfied in full in accordance with their terms;

(v)    There shall be a separate instruction agreement with the depository bank governing the flow of funds from the Commonwealth to the trustee for the New GO Bonds for deposit in accordance with the New GO Bonds Indenture;

(vi)    Pursuant to the New GO Bonds Legislation and the New GO Bonds Indenture, the New GO Bonds trustee shall have a direct right of action to enforce the New GO Bonds Indenture, including with respect to funding deposits in the Debt Service Fund and Debt Service Reserve Fund and seeking specific performance remedy for any breach of covenants in the New GO Bonds Indenture, and, as of the commencement thereof, the automatic stay in any future insolvency proceeding commenced on behalf of the Commonwealth (whether under Title

**EXECUTION COPY**

III of PROMESA or otherwise) would be deemed waived with respect to monies on deposit in the Debt Service Fund and Debt Service Reserve Fund as of the commencement thereof; provided, however, that, upon an event of default under the New GO Bonds Indenture, as described therein, and in the absence of action by the New GO Bonds trustee, holders of not less than twenty-five percent (25%) in principal amount of the New GO Bonds then outstanding shall be entitled to institute any suit, action, mandamus or other proceeding in equity or at law, or for the protection or enforcement of any right or remedy under the New GO Bonds Indenture;

(vii)    Pursuant to the COFINA Junior Lien Bonds Legislation, upon the Effective Date, all of the Commonwealth's right, title and interest in the Commonwealth Share from and after the Effective Date will be sold, transferred and conveyed without recourse to COFINA such that COFINA will be the sole and exclusive owner of the Commonwealth Share with holders of the COFINA Junior Lien Bonds receiving legal protections and covenants substantially similar to those provided to the holders of COFINA Senior Lien Bonds, with the goal of ensuring similar adequate protection of property rights for holders of the COFINA Junior Lien Bonds; provided, however, that the Commonwealth shall retain the full residual, reversionary ownership interest in the Commonwealth Share (after payment and satisfaction in full of the COFINA Junior Lien Bonds in accordance with the terms and provisions of the COFINA Junior Lien Bonds Indenture), with such residual interest evidenced by a residual certificate and in accordance with and subject to the terms of the COFINA Junior Lien Bonds Legislation and the COFINA Junior Lien Bonds Indenture;

(viii)    Pursuant to the COFINA Junior Bonds Legislation, the COFINA Junior Lien Bonds will have been issued and the repayment thereof be secured by a statutory second lien on the COFINA Pledged Taxes, which statutory second lien shall remain in full force and effect until the COFINA Junior Lien Bonds have been paid or satisfied in full in accordance with the terms and provisions of the COFINA Junior Lien Bonds Indenture;

(ix)    The statutory second lien on, and pledges of, the COFINA Pledged Taxes, and all other provisions made to pay or secure payment of the COFINA Junior Lien Bonds will be valid, binding, legal and enforceable;

(x)    Pursuant to the New GO Bonds Legislation and the New GO Bonds Indenture, a Comprehensive Cap on all net tax-supported debt of 9.16% of Debt Policy Revenues shall be imposed for purposes of Article IV of the Debt Responsibility Act, including a secured and/or securitized debt sublimit of 0.25% of Debt Policy Revenues above and beyond the percentage of the Debt Policy Revenues required to pay the COFINA Senior Lien Bonds and the COFINA Junior Lien Bonds debt service shall be imposed;

(xi)    The Fiscal Plan certified as of the Effective Date, and any post-Effective Date Fiscal Plan will include provisions for payment of principal and interest of New GO Bonds;

(xii)    The COFINA Junior Lien Bonds and the New GO Bonds shall bear a stamp or similar legend stating that the United States District Court for the District of Puerto Rico has determined that such bonds are valid, legally binding and enforceable pursuant to the Confirmation Order;

109132810v14

(xiii)   The compromises and settlements embodied in this Agreement and set forth in the Plan and the Confirmation Order shall not be binding on any Party (including any successor to the Oversight Board) in a subsequent Title III (or other insolvency) proceeding with respect to the priority of the New GO Bonds under PROMESA, the Puerto Rico Constitution or other applicable law;

(xiv)   The Commonwealth shall covenant for the benefit of all initial and subsequent holders of COFINA Junior Lien Bonds, that, until all obligations with respect thereto have been paid or satisfied in full in accordance with their terms, the Commonwealth will not (a) take any action that would (A) impair the COFINA's right to receive the COFINA Pledged Taxes, including the Commonwealth Share, (B) limit or alter the rights vested in COFINA in accordance with the Plan and the Confirmation Order to fulfill the terms of any agreements with the holders of the COFINA Junior Lien Bonds, (C) materially and adversely impair the collection of the COFINA Pledged Taxes in any Fiscal Year, or (D) impair the rights and remedies of the holders of the COFINA Junior Lien Bonds or the COFINA Pledged Taxes;

(xv)   The Commonwealth shall covenant for the benefit of all initial and subsequent holders of New GO Bonds, that, until all obligations with respect thereto have been paid or satisfied in full in accordance with their terms, the Commonwealth will take no action that would impair the rights and remedies of the holders of the New GO Bonds;

(xvi)   The Confirmation Order shall include a determination that, for purposes of section 209 of PROMESA, the discharge of debt to occur as of the Effective Date is necessary for the Oversight Board to certify that expenditures do not exceed revenues for the Commonwealth as determined in accordance with modified accrual accounting standards;

(xvii)   The retention of jurisdiction of the Title III Court to enforce the provisions of the Plan, the New GO Bonds, the New GO Bonds Indenture, the COFINA Junior Lien Bonds, and the COFINA Junior Lien Bonds Indenture; and

(xviii)   The Confirmation Order is full, final, complete, conclusive and binding upon and shall not be subject to collateral attack or other challenge in any court or other forum by (1) the Commonwealth, (2) PBA, (3) COFINA, (4) each person or entity asserting claims or other rights against the Commonwealth, PBA, COFINA, or any of their respective instrumentalities or agencies, including a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of bonds by the Commonwealth or any of its instrumentalities or with respect to any trustee, collateral agent, indenture trustee, fiscal agent, and any bank that receives or holds funds related to such bonds, whether or not such claim or other rights of such person or entity are impaired pursuant to the Plan and, if impaired, whether or not such person or entity accepted the Plan, (5) any other person, and (6) each of the foregoing's respective heirs, successors, assigns, trusted, executors, officers, directors, agents, representatives, attorneys, beneficiaries or guardians.

(c)      Alternative Entity.  Notwithstanding anything contained herein to the contrary, and subject to the consent of each of the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group, the Government Parties reserve the right to consummate certain of the transactions contemplated herein (a) through the incorporation of an alternative entity, to receive

**EXECUTION COPY**

the Commonwealth Share, (b) to cause the issuance of securities containing the same terms and provisions as the COFINA Junior Lien Bonds, including, without limitation, the covenants to be provided in the COFINA Junior Bonds Indenture by such entity, and (c) to the extent elected, all references to the COFINA Junior Lien Bonds, the COFINA Junior Lien Bonds Indenture and the COFINA Junior Lien Bonds Legislation shall be deemed replaced by the name of such entity.

(d)     Sharing of Benefits Regarding Tax-Exempt Treatment of the Bonds.  In the event that the Government Parties obtain a determination from the Internal Revenue Service pursuant to Sections 4.1(e) and 4.2(d) of this Agreement or an opinion from Section 103 Bond Counsel (collectively, a "Favorable Determination") that the ratio of the aggregate amount of all taxable New GO Bonds and taxable COFINA Junior Lien Bonds to be issued on the Effective Date (the "New Ratio") to the total aggregate amount of all New GO Bonds and all COFINA Junior Lien Bonds is less than twelve percent (12%) (the "Existing Ratio"), the benefits of such determination shall be shared as follows: (i) if the Favorable Determination is obtained prior to the Effective Date, (A) the Commonwealth shall receive its share of the benefit in the form of a reduction of annual cash flow required to pay scheduled New GO Bond and COFINA Junior Lien Bond debt service that would result from reduction of the interest coupons on the portion of the Taxable Bonds shown in the Principal and Coupon Summary set forth in Exhibit "I" hereto that, due to the determination of the Internal Revenue Service or Section 103 Bond Counsel, may be issued instead on a tax-exempt basis, consisting of  a 0.50% reduction in the New GO Bonds Taxable Coupon and a 0.375% reduction in the COFINA Junior Lien Bonds Taxable Coupons set forth in such Exhibit "I" for the favorably affected portion of such bonds; and (B) the holders of any Claims receiving New GO Bonds or COFINA Junior Lien Bonds pursuant to the Plan shall receive the balance of the benefit of such favorable determinations; (ii) if the Favorable Determination is obtained subsequent to the Effective Date that the New Ratio is less than the Existing Ratio, then the holders of the Taxable Bonds affected by such determination  (the "Invited Bonds") shall be invited to exchange such bonds for converted bonds (the "Exchange Offer") and the interest rate on the converted bonds shall be adjusted to reflect a yield that is no more than twenty-five (25) basis points lower than the yield for Invited Bonds of the same type, interest rate, series and maturity, with such yield comparison determined in the manner specified in applicable U.S. Treasury Regulations (the "Treasury Regulations") promulgated under the IRC, as amended; provided, however, that, any such reduction shall only affect the portion of the New GO Bonds and COFINA Junior Lien Bonds affected by the Favorable Determination; provided, further, that, such converted bonds shall be accompanied by the favorable opinion of Section 103 Bond Counsel that the interest, other than pre-issuance accrued interest, on such converted bonds, and on the Invited Bonds exchanged for such converted bonds from the original date of delivery of such Invited Bonds so exchanged, is, in such counsel's opinion, excluded from gross income for federal income tax purposes and from U.S. state, Commonwealth and local income taxation; and (iii) in the event that neither of the foregoing determinations are obtained, the covenants to seek such determinations  pursuant to Sections 4.1(e) and 4.2(d) hereof shall terminate upon the earlier to occur of (1) August 1, 2021, (2) the Internal Revenue Service notifies the Commonwealth that it is unable to issue a favorable private letter ruling or closing agreement with respect to the matters addressed by this subsection, and (3) the amendment of the New GO Bonds Indenture and COFINA Junior Lien Bonds Indenture following receipt of a favorable determination and consummation of an Exchange Offer.

109132810v14

Section 4.8    <u>Qualified Marketmaker</u>.  Notwithstanding anything contained in this Article IV to the contrary, (a) a PSA Creditor may Transfer any GO Interests, PBA Interests, or the PRIFA BANs to a Qualified Marketmaker, acting in its capacity as a Qualified Marketmaker, without the requirement that such Qualified Marketmaker be or become a PSA Creditor; provided that such Qualified Marketmaker subsequently Transfers all such GO Interests, PBA Interests, or the PRIFA BANs to a PSA Creditor or a Qualified Transferee within the date that is twenty (20) Business Days after such Qualified Marketmaker's acquisition of such GO Interests, PBA Interests, or the PRIFA BANs, as the case may be; and (b) to the extent that a PSA Creditor is acting in its capacity as a Qualified Marketmaker, it may Transfer any GO Interests, PBA Interests, or the PRIFA BANs that the Qualified Marketmaker acquires from a holder of the GO Interests, PBA Interests, or the PRIFA BANs that is not a PSA Creditor without the requirement that the transferee be or become a PSA Creditor.  A Qualified Marketmaker may, with the consent of the Government Parties, which consent shall not be unreasonably withheld, join this Agreement solely on behalf of a specific trading desk.

Section 4.9    <u>Appointments Related Litigation</u>.  Except as expressly provided below, or unless otherwise required to comply with an order of a court of competent jurisdiction that has not been vacated, reversed, or otherwise stayed, no Party which is a plaintiff in an Appointments Related Litigation shall take further action in connection with such litigation but, under all circumstances, such Party hereby covenants and agrees (a) to perform all other duties and obligations as set forth in this Agreement, including, without limitation, the other duties and obligations set forth in Articles IV and V hereof, and (b) that, no matter the determination and the entry of a Final Order in connection with the Appointments Related Litigation, with such determination and Final Order being entered either prior to consideration of approval of, or confirmation of, the Plan by the Title III Court or subsequent to entry of the Confirmation Order, such Party (i) shall not urge or argue that such determination and Final Order reverses, affects, or otherwise modifies the transactions contemplated herein and in the Plan and (ii) in the event that such determination and Final Order (y) occurs prior to approval of, or confirmation of, the Plan and (z) causes or requires the reconstitution or reappointment of the Oversight Board, such Party shall urge and request, in writing, that such reconstituted or reappointed board (1) enforce the terms and conditions of this Agreement and the Plan and (2) promptly seek confirmation of the Plan by the Title III Court.  Notwithstanding the foregoing, during the period (i) prior to the Effective Date, a Party which is a plaintiff in an Appointments Related Litigation shall be under no obligation hereunder to inform a court considering such litigation of the execution and pendency of this Agreement, and (ii) from and after the Effective Date, any Party to the Appointments Related Litigation shall seek the dismissal, with prejudice, of such litigation.

<u>ARTICLE V</u>

<u>PLAN AND PLAN SUPPORT</u>

Section 5.1    <u>Plan Support Commitment.</u>  From and after the date hereof, provided that (a) this Agreement has not been terminated and (b) none of the Disclosure Statement, the Plan or any of the proposed Definitive Documents have been filed, amended or modified in a manner inconsistent with the provisions of Section 7.2 hereof, each of the PSA Creditors (to the extent remaining a Party), shall (i) support (A) approval of the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code, (B) confirmation of the Plan in accordance with section

**EXECUTION COPY**

1129 of the Bankruptcy Code, and (C) unless otherwise ordered by the Title III Court, upon a motion filed by Government Parties, not object to a stay of all proceedings and determinations in connection with the PBA Litigation, the Invalidity Actions, the Lien Challenge Actions, the Debt Related Objections, and the PRIFA BANs Litigation through a date no earlier than the Effective Date; provided, however, that a PSA Creditor shall only be required to support the Plan with respect to those GO Bond Claims and PBA Bond Claims that such PSA Creditor beneficially owns or controls; and, provided, further, that, nothing herein shall limit or prohibit any PSA Creditor from taking any action, or asserting any claims or causes of action, in connection with any matter relating solely to the Monolines (including, without limitation, voting of claims, subrogation, acceleration, commutation, or any act necessary to maintain the benefits of the applicable Monoline insurance policy), (ii) subject to receipt of the Disclosure Statement and/or other solicitation materials in respect of the Plan, to the fullest extent permitted by law, timely vote, or cause to be voted, to accept the Plan in its capacity as a GO Holder and/or PBA Holder, as applicable, with rights of acceptance in accordance with the Disclosure Statement Order, each as the case may be; provided, however, that a PSA Creditor shall only be required to vote, or cause to be voted, to accept the Plan with respect to those GO Bond Claims and PBA Bond Claims that such PSA Creditor beneficially owns or controls, (iii) not change or withdraw (or cause to be changed or withdrawn) any such vote, (iv) not consent to or vote for any modification of the Plan unless such modification is (Y) not adverse to the GO Holders and PBA Holders and (Z) not inconsistent with the terms provided herein and the Plan, and (v) not vote for or support any PBA or Commonwealth plan of adjustment not proposed to or supported by the Government Parties, so long as none of the Government Parties is in material breach of this Agreement; provided, however, that each of the Parties acknowledges that each Insured GO Bond Claim and Insured PBA Bond Claim shall be voted in accordance with the terms of Section 301(c)(3) of PROMESA and such other applicable law and governing documents, so long as this Agreement remains in effect.

Section 5.2    Solicitation Required in Connection with Plan.  Notwithstanding anything contained in this Article V or elsewhere in this Agreement to the contrary, this Agreement is not, and shall not be deemed to be, a solicitation of acceptances of the Plan.  Each of the Parties, severally and not jointly, acknowledges and agrees that (a) the votes on the Plan will not be solicited until the Title III Court has approved the Disclosure Statement and related solicitation materials, and such Disclosure Statement and solicitation materials have been transmitted to parties entitled to receive same and (b) this Agreement does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.  NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED HEREIN SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY PROMESA, THE SECURITIES ACT OF 1933, AS AMENDED, THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED, ANY RULE OR REGULATIONS PROMULGATED THEREUNDER, OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY ANY ORDER OR DIRECTION OF ANY COURT OR ANY STATE OR FEDERAL GOVERNMENTAL AUTHORITY.

109132810v14

**EXECUTION COPY**

## ARTICLE VI

## CONSUMMATION COSTS & RESTRICTION FEES

Section 6.1    Consummation Costs and PSA Restriction Fees.  Subject to the terms and conditions herein and in the Plan, (a) the Consummation Costs and the PSA Restriction Fees, each of which shall be fully earned as of the date hereof or the date of execution of a Joinder Agreement for Initial PSA Creditors or Joinder Creditors, as the case may be, shall be paid on the Effective Date in accordance with the terms and conditions set forth in the Plan and the Confirmation Order and (b) neither the Consummation Costs nor the PSA Restriction Fee shall be included for purposes of calculating the Bond Recovery Cap.

(a)    Consummation Costs.  In consideration for the fees and expense incurred by Initial PSA Creditors in connection with the negotiation and execution of this Agreement and the prosecution of approval of the Disclosure Statement and confirmation of the Plan, each Initial PSA Creditor shall be entitled to receive on the Effective Date, in the form of an allowed administrative expense claim, based upon its respective positions (insured or otherwise) as of 5:00 p.m. (EDT) on the date hereof, a pro rata share of cash in an amount equal to 1.25%, truncated to two decimal points, of the aggregate amount of PBA Bond Claims, GO Bond Claims and CW Guarantee Bond Claims (without duplication).

(b)    PSA Restriction Fee.  In exchange for executing this Agreement, and agreeing to all of its terms and conditions, including the agreement to "lock-up" their bonds in accordance with the terms of this Agreement, subject to the entry of the Confirmation Order, each PSA Restriction Fee Creditor (including, with respect to a holder of a Monoline-insured GO Bond or PBA Bond, to the extent such PSA Restriction Fee Creditor is authorized to vote the claim with respect to such Monoline-insured GO Bond or PBA Bond in accordance with definitive insurance documents and applicable law) shall be entitled to receive the PSA Restriction Fee in the form of an allowed administrative expense claim, payable in cash, at the time of consummation of the Plan in an amount equal to the Restriction Fee Percentage multiplied by the aggregate amount of GO Bond Claims, PBA Bond Claims, and CW Guarantee Bond Claims (without duplication and, to the extent any such claims are Monoline-insured, solely to the extent a PSA Restriction Fee Creditor is authorized to vote any such claim in accordance with the definitive insurance documents and applicable law) held by such PSA Restriction Fee Creditor as of the expiration of the PSA Restriction Fee Period; provided, however, that each PSA Restriction Fee Creditor who acquires any GO Bonds or PBA Bonds after the Joinder Deadline (including, with respect to a holder of a Monoline-insured GO Bond or PBA Bond, to the extent such PSA Restriction Fee Creditor is authorized to vote the claim with respect to such Monoline-insured GO Bond or PBA Bond in accordance with definitive insurance documents and applicable law) shall be entitled to receive such PSA Restriction Fee equal to the Restriction Fee Percentage multiplied by the aggregate amount of GO Bond Claims, PBA Bond Claims, and CW Guarantee Bond Claims (without duplication and, to the extent any such claims are Monoline-insured, solely to the extent a PSA Creditor is authorized to vote any such claim in accordance with the definitive insurance documents and applicable law) held by such PSA Restriction Fee Creditor as of the earlier to occur of the PSA Threshold Attainment and the entry of the Confirmation Order; and, provided, further, that, if a PSA Restriction Fee Creditor sells any GO Bonds, PBA Bonds, or PRIFA BANs for which it would have been entitled to receive the PSA

34

**EXECUTION COPY**

Restriction Fee, the purchasing party, and not the selling party, shall be entitled to receive the PSA Restriction Fee on account thereof; and, provided, further, that, in all circumstances, the sum of the aggregate PSA Restriction Fee plus the Consummation Costs shall not exceed Three Hundred Fifty Million Dollars ($350,000,000.00); and, provided, further, that, in the event this Agreement is terminated pursuant to the terms of Section 7.1(c)(i) thereof or the Oversight Board terminates this Agreement for any reason other than (i) a breach of this Agreement by a non-Governmental Party, (ii) the denial of confirmation of the Plan by the Title III Court, the aggregate PSA Restriction Fee and Consummation Costs, in the amount of One Hundred Million Dollars ($100,000,000.00), shall be paid, ratably, in cash, as an administrative expense claim under a plan of adjustment for the Commonwealth to the Initial PSA Creditors as of the date of termination; and, provided, further, that, in all other circumstances, upon termination of this Agreement, no Consummation Costs or PSA Restriction Fee shall be due and payable to the Party to this Agreement terminating this Agreement or against the Party to this Agreement as to which this Agreement is terminated.

(c)     Retail Support Fee.  The Plan shall provide for the separate classification of Retail GO Bonds and Retail PBA Bonds with respect to various series of GO Bonds and PBA Bonds. In the event that a class of Retail Investors votes to accept the Plan, the members of such class shall be entitled to their allocable share of the aggregate Retail Support Fee of up to Fifty Million Dollars ($50,000,000.00) in an amount equal to the Restriction Fee Percentage multiplied by the aggregate amount of GO Bond Claims, PBA Bond Claims, and CW Guarantee Bond Claims (without duplication) held by such Retail Investor as of the date the Title III Court enters the Confirmation Order.  In the event that, after allocating the Retail Support Fee to Retail Investors in the classes that voted to accept the Plan, the full Fifty Million Dollars ($50,000,000.00) is not fully allocated, the balance of the Retail Support Fee shall be reallocated and distributed on a pro rata basis to PSA Restriction Fee Creditors and those Retail Investors that are members of classes that voted to accept the Plan.  In addition, the Retail Support Fee allocated to any class of Retail GO Bonds or Retail PBA Bonds that fails to vote to accept the Plan shall be reallocated and distributed on a pro rata basis to PSA Restriction Fee Creditors and those Retail Investors that are members of classes that voted to accept the Plan.  Any portion of the Retail Support Fee Return so reallocated shall not be included for purposes of calculating the Bond Recovery Cap.

ARTICLE VII

TERMINATION

Section 7.1     Termination of Agreement.

(a)     This Agreement may be terminated by any PSA Creditor, solely as to itself, at its sole option and discretion and upon written notice to the other Parties, in the event that (i) any of the Government Parties fails to comply with any of its respective covenants in Article IV hereof or any of its undertakings in this Agreement if such failure to comply has or would have an adverse economic or legal impact on such PSA Creditor, including an adverse economic impact in the treatment afforded to such PSA Creditor under the Plan (including any applicable settlement under the Plan or changes to the legal protections set forth in Section 4.7(b) hereof), or change in the cash flows for the New GO Bonds or the COFINA Junior Lien Bonds

35

**EXECUTION COPY**

referenced in exhibits to the Plan or to the definition or calculation of Bond Recovery Caps, or PSA Restriction Fee that would have an adverse economic or legal impact on such PSA Creditor, (ii) the Oversight Board files any motion or pleading with the Title III Court, in each case, that is inconsistent with this Agreement, including the Plan, in any adverse economic or legal respect (including treatment under the Plan, any applicable settlement under the Plan, or change in cash flows for the New GO Bonds or the COFINA Junior Lien Bonds referenced in the Plan or to the definition or calculation of Bond Recovery Cap, or PSA Restriction Fee) and such motion or pleading has not been withdrawn before the earlier to occur of (y) five (5) Business Days after the Oversight Board receives written notice from another Party (in accordance with the notice provisions set forth in Section 8.11 hereof) that such motion or pleading is inconsistent with this Agreement in such adverse economic or legal respect and (z) entry of an order of the Title III Court approving such motion or pleading, (iii) the entry of a Final Order in the PROMESA Proceedings has a material adverse effect on the confirmability of the Plan, (iv) the order approving the Disclosure Statement is not entered by the Title III Court on or prior to August 31, 2020, (v) the COFINA Junior Lien Bonds Legislation and the New GO Bonds Legislation are not enacted prior to the commencement of the hearing to consider confirmation of the Plan, or (vi) the Confirmation Order is not entered by the Title III Court on or prior to December 15, 2020, and the Effective Date does not occur on or prior to December 31, 2020; provided, however, that, upon the joint instruction and notice provided by the Government Parties, and provided that the hearing to consider confirmation of the Plan is commenced on or prior to November 15, 2020, the dates set forth in subsection (vi) above shall be extended up to and including January 15, 2021 and February 15, 2021, respectively.

(b)     This Agreement may be terminated as to all Parties hereto by the Oversight Board, or by joint action of the Constitutional Debt Group, the GO Group, the LCDC, the QTCB Group, and Fir Tree in the event that (i) any other Party has failed to comply with any of its respective covenants set forth in Article IV hereof or any of its other undertakings in this Agreement, and such non-compliance has a material adverse effect on confirmability of the Plan (as determined jointly by the Government Parties and the Initial PSA Creditors), (ii) the entry of a Final Order in the PROMESA Proceedings has a material adverse effect on the confirmability of the Plan, (iii) the order approving the Disclosure Statement is not entered by the Title III Court on or prior to August 31, 2020, (iv) the Confirmation Order is not entered by the Title III Court on or prior to December 15, 2020, and the Effective Date does not occur on or prior to December 31, 2020, (v) the Title III Court or such other court of competent jurisdiction enters a Final Order denying confirmation of the Plan, (vi) the economic situation of the Commonwealth suffers a material adverse change which renders the confirmation of the Plan not feasible and consummation of the Plan impracticable, (vii) the Debt Responsibility Act, as enacted, does not contain the Comprehensive Cap, as set forth in the Plan, or (viii) a court of competent jurisdiction issues a ruling, judgment, or order making illegal or otherwise preventing or prohibiting the consummation of the Plan, which ruling, judgment, or order has not been reversed or vacated within sixty (60) calendar days after such issuance and is not subject to a stay; provided, however, that, upon the joint instruction and notice provided by the Government Parties, and provided that the hearing to consider confirmation of the Plan is commenced on or prior to November 15, 2020, the dates set forth in subsection (iv) above shall be extended up to and including January 15, 2021 and February 15, 2021, respectively.

(c)     Without limiting the rights of the Constitutional Debt Group, the GO Group, the LCDC or the QTCB Group and their respective members under any other provision in this Agreement, each of the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group may, in its sole discretion, terminate this Agreement as to all Parties if the Oversight Board (i) modifies any of the provisions in the Plan and any such modification adversely economically or legally impacts the treatment afforded any GO Holder or PBA Holder, as applicable, in the Plan, or (ii) files a plan of adjustment that is economically inconsistent with the treatment set forth in the Plan (including, without limitation, any modifications to the legal protections set forth in Section 4.7(b) hereof or the securities design features of the New GO Bonds and COFINA Junior Lien Bonds set forth in Exhibit "I" hereto), in each case, without the consent of the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group.

(d)     The automatic stay under Sections 362 and 922 of the Bankruptcy Code, made applicable to the PROMESA Proceedings pursuant to Section 301 of PROMESA, shall not prohibit a Party from taking any action necessary to effectuate the termination of this Agreement pursuant to and in accordance with the terms hereof.

(e)     This Agreement may be terminated as to all Parties hereto by the unanimous consent of the Initial PSA Creditors, in the event that the percentage of taxable New GO Bonds and COFINA Junior Lien Bonds exceeds thirteen percent (13%) of the total New GO Bonds and COFINA Junior Lien Bonds issued pursuant to the Plan.

(f)     This Agreement may be terminated by Fir Tree, solely as to itself and with respect to the GO Bond Claims, CW Guarantee Bond Claims, and PBA Bond Claims it beneficially owns or manages, at its sole option and discretion and upon written notice to the other Parties, upon the occurrence of any of the following events; (a) the PRIFA Stipulation is not executed by the parties thereto on or prior to February 28, 2020, or such later date as may be agreed to by the parties thereto, (b) the Title III Court denies the motion of the Commonwealth, by and through the Oversight as its Title III representative, filed in accordance with the terms of the PRIFA Stipulation, seeking entry of an order approving the PRIFA Stipulation, or (c) the Title III Court has not approved the Commonwealth's entry into the PRIFA Stipulation by the date that is ten (10) Business Days prior to the deadline to object to the adequacy of information set forth in the Disclosure Statement.

(g)     This Agreement shall automatically terminate as to all Parties upon the occurrence of the Effective Date except with respect to any actions of the Parties that are expressly set forth herein to occur after the Effective Date.

provided, however, that, for all purposes of this Section 7.1, the treatment to be afforded to all classes of claims other than those described in Exhibit "I" hereto shall not constitute an adverse economic or legal impact on any PSA Creditor.

Section 7.2     Effect of Termination.   Except as otherwise provided herein, in the event of the termination of this Agreement as to any Party, (a) this Agreement shall become null and void and be deemed of no force and effect, with no liability on the part of such Party or any of its affiliates (or of any of their respective directors, officers, employees, consultants, contractors, advisory clients, agents, legal and financial advisors or other representatives of such Party or its

37

**EXECUTION COPY**

affiliates), including, without limitation, in the event that Fir Tree terminates this Agreement solely as to itself pursuant to Section 7.1(f) hereof, all references applicable to Fir Tree, the PRIFA BANs, the PRIFA BANs Litigation, and the PRIFA Stipulation shall be deemed stricken from this Agreement and deemed of no force and effect, (b) such Party shall not have any obligations to any other Party arising out of, and shall have no further rights, benefits or privileges under, this Agreement (including, without limitation, any rights to Consummation Costs or the PSA Restriction Fee, except as provided in accordance with the provisions of the Plan), except for the obligations and/or provisions set forth in Sections 2.1, 7.3, 8.3, 8.4, 8.8, 8.13 and 8.15 hereof and this clause (b) of Section 7.2, which provisions are intended to survive the expiration or termination of this Agreement and shall continue in full force and effect in accordance with the terms hereof; provided, however, that any liability of a Party for failure to comply with the terms of this Agreement prior to the date of such expiration or termination shall survive such expiration or termination, and (c) such Party shall have all the rights and remedies that it would have had, and be entitled to take all actions that it would have been entitled to take, had it not entered into this Agreement and no such rights shall be deemed waived pursuant to a claim of laches or estoppel, and the Parties agree to waive, and not raise as a defense, the applicable statute of limitations for any claim, litigation, proceeding, action or matter against another Party barred by this Agreement as though such statute of limitations had been tolled during such time that this Agreement was binding on the Party then asserting such claim, litigation, proceeding, action, or matter; provided, however, that in no event shall any such termination relieve such Party from liability for its breach or non-performance of its obligations hereunder prior to the date of such expiration or termination; and, provided, further, that, unless otherwise ordered by the Title III Court, upon notice to such terminating Party, any and all consents, ballots and votes tendered by such Party prior to such expiration or termination shall be deemed to be, for all purposes, automatically null and void *ab initio,* and shall not be considered or otherwise used in any manner by the Parties in connection with the Plan, this Agreement or otherwise.  Except in connection with a dispute concerning a breach of this Agreement or the interpretation of the terms hereof upon termination, (y) neither this Agreement nor any terms or provisions set forth herein shall be admissible in any dispute, litigation, proceeding or controversy among the Parties and nothing contained herein shall constitute or be deemed to be an admission by any Party as to any matter, it being understood that the statements and resolutions reached herein were the result of negotiations and compromises of the respective positions of the Parties and (z) no Party shall seek to take discovery concerning this Agreement or admit this Agreement or any part of it into evidence against any other Party hereto.

Section 7.3    Post-Effective Date Obligations.  In addition to the surviving obligations and provisions listed in Section 7.2(b) hereof, the obligations and/or provisions set forth in Sections 4.1(e), 4.1(f), 4.2(d), and 4.2(e) shall survive the automatic termination of this Agreement pursuant to Section 7.1(e) hereof.

ARTICLE VIII

MISCELLANEOUS

Section 8.1    Amendments.  This Agreement, may not be modified, amended, or supplemented except by a written agreement executed by the Government Parties that are Parties hereto, the Constitutional Debt Group Members, the GO Group Members, the LCDC Holders,

38

and the QTCB Noteholders; provided, however, that any modification, amendment, or supplement that has an adverse economic or legal impact on a PSA Creditor, including by changing the treatment afforded to such PSA Creditor under the Plan (including any applicable settlement under the Plan) or changing the cash flows or proposed legal protections for the New GO Bonds or the COFINA Junior Lien Bonds or definition or calculation of the Bond Recovery Caps, Consummation Costs, or PSA Restriction Fee in a way that would have an adverse economic impact on such PSA Creditor, must be agreed to in writing by each of the Constitutional Debt Group Members, the GO Group Members, the LCDC Holders, QTCB Noteholders, and Fir Tree.  Notwithstanding the foregoing and the terms and provisions of Sections 4.5(a) and 4.6(a) hereof, and without the consent or approval of the Constitutional Debt Group Members, the GO Group Members, the LCDC Holders and the QTCB Noteholders, from and after the date hereof until the Joinder Deadline, the Oversight Board may solicit additional parties to become signatories hereto subject to all of the terms herein, including without limitation, the terms and conditions set forth in the exhibits, annexes and schedules hereto; provided, however, that, notwithstanding the provisions of this Section 8.1, unless a modification, amendment or supplement has an adverse economic or legal impact on a PSA Creditor, the Oversight Board may amend or otherwise modify the terms herein without the consent of such additional parties provided that the prior written consent of the Constitutional Debt Group Members, the GO Group Members, the LCDC Holders and the QTCB Noteholders is obtained; and, provided, further, that each additional party must execute and deliver to counsel to the Oversight Board the form of Annex Agreement attached hereto as Exhibit "G"; provided, further, that, under no circumstances may the provisions of Section 6.1(a) be modified, amended, or supplemented without the express written consent of the Initial PSA Creditors as of the date of this Agreement.

Section 8.2    Most Favored Nations.  Notwithstanding anything contained herein to the contrary, in the event that the Oversight Board enters into any agreements which provide (or the Plan does provide) for the settlement or Plan treatment that is more economically favorable (a) to any GO Bond Claim (for the avoidance of doubt, including, Insured GO Bond Claims) or CW Guarantee Bond Claim than the treatment set forth in the Settlement Summary for any other GO Bond Claims or CW Guarantee Bond Claims of the same vintage (i.e., pre-2011, 2011, 2012, or 2014, as applicable), then the treatment set forth in the Settlement Summary shall be modified to equal that provided to such GO Bond Claim or CW Guarantee Bond Claim, as applicable, or (b) to any PBA Bond Claim (for the avoidance of doubt, including, Insured PBA Bond Claims), than the treatment set forth in the Settlement Summary for any other PBA Bond Claim, regardless of vintage, then the treatment set forth in the Settlement Summary shall be modified to equal that provided to such PBA Bond Claim; provided, however, that treatment of (x) bonds (other than the PBA Bonds, for the avoidance of doubt) that are guaranteed by the Commonwealth, but which guarantee has not been triggered, (y) GO Bond Claims and PBA Bond Claims held by "Puerto Rico Investors", as defined in the Plan, and (z) customary "Convenience Claims", as defined in the Plan, shall be exempt from this provision.

Section 8.3    No Admission of Liability.

(a)    The execution of this Agreement is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or

defense) by any Party to any other Party or any other Person with respect to any of the matters addressed in this Agreement.

(b)     None of this Agreement (including, without limitation, the Recitals and Exhibits hereto), the settlement or any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim, or any allegation made in the Debt Related Objections, the Invalidity Actions, the Lien Challenge Actions, the PBA Litigation, or the PRIFA BANs Litigation, or of any wrongdoing or liability of any Party; (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Party in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (iii) is or may be deemed to be or used as an admission or evidence against the Commonwealth or PBA with respect to the validity of any of the GO Bond Claims, CW Guarantee Bond Claims, or PBA Bond Claims.  None of this Agreement, the settlement, or any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement herein shall be admissible in any proceeding for any purposes, except to enforce the terms of the Agreement.

Section 8.4     Good Faith Negotiations.  The Parties recognize and acknowledge that each of the Parties hereto is represented by counsel, and such Party received independent legal advice with respect to the advisability of entering into this Agreement; the negotiations related to this Agreement were conducted regularly and at arm's length; this Agreement is made and executed by and of each Party's own free will; each Party knows all of the relevant facts and his, her or its rights in connection therewith, and that he, she or it has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any party or employee, agent, attorney or representative of any party to this Agreement. The Parties further acknowledge that they entered into this Agreement because of their desire to avoid the further expense and inconvenience of litigation and other disputes, and to compromise permanently and settle the claims between the Parties settled by the execution of this Agreement. The Parties further acknowledge and agree that, in connection with the PROMESA Proceedings and the negotiation and consummation of this Agreement, including, without limitation, the Plan, the Parties, at all times, acted (a) in good faith and (b) solely for themselves and not on behalf of or in representation of any other creditors, bondholders or other parties in interest.

Section 8.5     Third Party Beneficiary.  Other than funds and/or accounts which are holders of the GO Bonds, PBA Bonds, or PRIFA BANs and whose advisors or managers are Parties hereto, nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or to give to, any person (including, without limitation, any Monoline) other than the Parties hereto, and their respective successors and assigns, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation thereof; and the covenants, stipulations and agreements contained in this Agreement are and shall be for the sole and exclusive benefit of the Parties hereto and their respective successors and assigns.

Section 8.6     Governing Law; Retention of Jurisdiction; Service of Process.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York and applicable federal law, without giving effect to the principles of conflicts of laws that would require the application of the law of any other jurisdiction. By its execution and

delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding between any or all of the foregoing with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, shall be brought in the Title III Court for that purpose only, and, by execution and delivery of this Agreement, each hereby irrevocably accepts and submits itself to the jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding, subject to a Party's rights pursuant to applicable law. In the event any such action, suit or proceeding is commenced, each of the Parties hereby (a) agrees and consents that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 8.11 hereof, unless another address has been designated by such Party in a notice given to the other Parties in accordance with Section 8.11 hereof and (b) waives to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising from or relating to this Agreement and the representations, covenants and other obligations set forth herein.

Section 8.7    Headings.  The headings of the sections, paragraphs and subsections of this Agreement are inserted for convenience only and are not part of this Agreement and do not in any way modify the terms or provisions of this Agreement and shall not affect the interpretation hereof.

Section 8.8    Binding Agreement; Successors and Assigns.  This Agreement is intended to, and shall be effective and binding only upon the execution and delivery of this Agreement by the Parties listed on the signature pages hereto. This Agreement is intended to, and shall be deemed to, bind and inure to the benefit of the Parties and their respective successors, assigns, administrators, constituents and representatives. The agreements, representations, covenants and obligations of the Parties under this Agreement are several only and not joint in any respect and none shall be responsible for the performance or breach of this Agreement by another. If any provision of this Agreement, or the application of any such provision to any person or entity or circumstance, shall be held invalid or unenforceable, in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and this Agreement shall continue in full force and effect so long as the economic and legal substance of the transactions contemplated herein or in the Plan are not affected in any manner materially adverse to any Party. Upon any such determination of invalidity, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner so that the transactions contemplated herein are consummated as originally contemplated to the greatest extent possible.  Notwithstanding the foregoing, unless otherwise agreed to by the Parties, provisions herein providing payment of the Consummation Costs and PSA Restriction Fees are integral parts of this Agreement and cannot be severed.

Section 8.9    Entire Agreement.  This Agreement, including, without limitation, the Plan, constitutes the full and entire agreement among the Parties with regard to the subject hereof and the Plan, and supersedes all prior negotiations, representations, promises or warranties (oral or otherwise) made by any Party with respect to the subject matter hereof. No Party has entered

into this Agreement in reliance on any other Party's prior representation, promise or warranty (oral or otherwise) except for those that may be expressly set forth in this Agreement.

Section 8.10    Counterparts.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original copy of this Agreement and all of which, when taken together, shall constitute one and the same Agreement. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of copies of such counterparts is confirmed.

Section 8.11    Notices.    All demands, notices, requests, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given (i) when personally delivered by courier service or messenger, (ii) upon actual receipt (as established by confirmation of receipt or otherwise) during normal business hours, otherwise on the first business day thereafter if transmitted electronically (by e-mail transmission), by facsimile or telecopier, with confirmation of receipt, or (iii) three (3) Business Days after being duly deposited in the mail, by certified or registered mail, postage prepaid- return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, to the following Parties:

> (a)    If to the Oversight Board, the Commonwealth, or PBA, to:
>
> PROSKAUER ROSE LLP
> Eleven Times Square
> New York, NY 10036
> Attn: Martin J. Bienenstock, Esq.
> Email: mbienenstock@proskauer.com
> Brian S. Rosen, Esq.
> Email: brosen@proskauer.com
> Facsimile: 212-969-2900
>
>
> (b)    If to AAFAF, to:
>
> O'MELVENY & MEYERS LLP
> Seven Times Square
> New York, NY 10036
> Attn: John Rapisardi, Esq.
> Email: jrapisardi@omm.com
> Suzzanne Uhland, Esq.
> Email: suhland@omm.com
> Maria J. DiConza, Esq.
> Email: mdiconza@omm.com
> Facsimile: 212-326-2061

**EXECUTION COPY**

(d)        If to the LCDC, to:

QUINN EMANUEL URQUHART & SULLIVAN,
LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Attn: Susheel Kirpalani, Esq.
Email: susheelkirpalani@quinnemanuel.com
Eric Kay, Esq.
Email: erickay@quinnemanuel.com
Facsimile: 212-849-7100

(e)        If to the QTCB Group, to:

MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT 06103
Attn: Kurt A. Mayr, Esq.
Email: kurt.mayr@morganlewis.com
David L. Lawton, Esq.
Email: david.lawton@morganlewis.com

–and–

DAVIS, POLK & WARDWELL, LLP
450 Lexington Avenue
New York, NY 10017
Attn: Donald Bernstein, Esq.
Email: Donald.bernstein@davispolk.com

(f)        If to the GO Group, to:

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON, LLP
1285 Avenue of the Americas
New York, NY 10019
Attn: Andrew Rosenberg, Esq.
Email: arosenberg@paulweiss.com
Karen Zeituni, Esq.
Email: kzeituni@paulweiss.com

–and–

109132810v14

WILLKIE, FARR & GALLAGHER
1875 K Street, NW
Washington, DC 20006
Attn: Mark Stancil, Esq.
Email: mstancil@willkie.com

–and–

ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER, LLP
2000 K Street, NW
Washington, DC 20006
Donald Burke, Esq.
Email: dburke@robbinsrussell.com

(g)        If to the Constitutional Debt Group, to:

MORRISON & FOERSTER, LLP
250 West 55th Street
New York, NY 10019
Attn: Gary Lee, Esq.
Email: glee@mofo.com
James Peck, Esq.
Email: jpeck@mofo.com
Andrew Kissner, Esq.
Email: akissner@mofo.com

(g)        If to Fir Tree, to:

FIR TREE CAPITAL MANAGEMENT, LP
55 West 46th Street, 29th Floor
New York, NY 10036
Attn: Evan Lederman
Email: elederman@firtree.com
Brian Meyer
Email: bmeyer@firtree.com

Section 8.12   Non-Waiver of Remedies.  Except as expressly provided in this
Agreement, nothing contained herein is intended, nor shall it be construed in any manner, to
waive, limit, impair or restrict any right or ability of the Parties to protect and preserve each of
their rights, remedies and interests, contractual or otherwise, under the Bond Resolutions, Title
III or any other provision of PROMESA or any other law or regulation.

**EXECUTION COPY**

Section 8.13    Several, Not, Joint Obligations.    The agreements, representations, covenants and other obligations of the Parties set forth in this Agreement are, in all respects, several and not joint.

Section 8.14    Remedies Cumulative.    All rights, powers and remedies provided in accordance with the terms and provisions of this Agreement or otherwise available in respect hereof of law or in equity shall be cumulative and not alternative, and the exercise of any right, power or remedy thereof by any Party shall not preclude the contemporaneous or later exercise of any other such right, power or remedy by any such Party.

Section 8.15    Specific Performance.    Each of the Parties agrees and understands that money damages are an insufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach of this Agreement, including, without limitation, an order of the Title III Court or such other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder. Notwithstanding anything contained in this Agreement to the contrary, specific performance and injunctive or other similar relief and the right to terminate this Agreement in accordance with the terms and provisions hereof shall be the sole and exclusive remedies for any breach of this Agreement by any Party (or any other person) and no Party (or any other person) shall be entitled to monetary damages for any breach of any provision of this Agreement.

Section 8.16    Further Assurances.    Each of the Parties hereto agrees to execute and deliver, or to cause to be executed and delivered, such instruments, and to take such action as the other Parties may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Agreement.

109132810v14

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

**FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**

By:  /s Natalie A. Jaresko
Name:  Natalie A. Jaresko
Title:  Executive Director

**THE COMMONWEALTH OF PUERTO RICO**

By: Financial Oversight and Management
Board for Puerto Rico, as representative
of the Commonwealth of Puerto Rico

By:  /s Natalie A. Jaresko
Name:  Natalie A. Jaresko
Title:  Executive Director

**THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY**

By: Financial Oversight and Management
Board for Puerto Rico, as representative
of the Puerto Rico Public Buildings Authority

By:  /s Natalie A. Jaresko
Name:  Natalie A. Jaresko
Title:  Executive Director

**THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

46

By: Financial Oversight and Management
Board for Puerto Rico, as representative
of the Employees Retirement System of the Government of
the Commonwealth of Puerto Rico


By:  /s Natalie A. Jaresko _____
Name:  Natalie A. Jaresko _____
Title:  Executive Director _____

109132810v14

**ARISTEIA CAPITAL, LLC**, on behalf of itself and certain funds under management


By:  /s/ William R. Techar
Name: William R. Techar
Title: Manager


By:  /s/ Andrew B. David
Name: Andrew B. David
Title: Chief Operating Officer


Holder of Face Amount of GO Bonds: ████████

Holder of Face Amount of PBA Bonds: ████████

109132810v14

**AURELIUS CAPITAL MANAGEMENT, LP**, on behalf of certain of its managed funds and not in its individual capacity


By:  /s/ Luc Dowling
Name:  Luc Dowling
Title:  Authorized Representative


Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

**AUTONOMY CAPITAL (JERSEY) L.P.**, on behalf of itself and certain funds under management

By:  /s/ Derek Goodman
Name:  Derek Goodman
Title:  Authorized Representative

Holder of Face Amount of GO Bonds: ████████

Holder of Face Amount of PBA Bonds: ████████

50

BlackRock Allocation Target Shares: Series E Portfolio

BlackRock California Municipal Opportunities Fund of BLK California Muni

BlackRock High Yield Municipal Fund

BlackRock New York Municipal Opportunities Fund of BLK Multi-State Muni

BlackRock Strategic Municipal Opportunities Fund of BlackRock Series Trust

BlackRock MuniAssets Fund, Inc.

By: **BLACKROCK ADVISORS, LLC**, as Investment Advisor


By:  /s/ Ryan McDonald
Name:  Ryan McDonald
Title:  Director


Holder of Face Amount of GO Bonds: ██████████

Holder of Face Amount of PBA Bonds: ██████████

Brighthouse Funds Trust II – BlackRock Bond Income Portfolio

Master Total Return Portfolio of Master Bond LLC

BlackRock Strategic Income Opportunities Portfolio

By: **BLACKROCK ADVISORS, LLC**, as Investment Advisor


By:  /s/ David Rogal
Name: David Rogal
Title: Managing Director


Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

Endurance Assurance Corporation

By: **BLACKROCK FINANCIAL MANAGEMENT INC.**, as Investment Advisor


By:  /s/ Peter Gailliot
Name:  Peter Gailliot
Title:  Managing Director


Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

109132810v14

Obsidian Master Fund – Trading Sleeve

Ford Motor Company Defined Benefit Master Trust

By: **BLACKROCK FINANCIAL MANAGEMENT INC.**, as Investment Advisor

By:  /s/ Stuart Spodek
Name:  Stuart Spodek
Title:  Managing Director

Holder of Face Amount of GO Bonds: ████████████

Holder of Face Amount of PBA Bonds: ████████████

54

**BRIGADE CAPITAL MANAGEMENT LP**, on behalf of funds and accounts under management


By:  /s/ Patrick Criscillo
Name:  Patrick Criscillo
Title:  Authorized Signatory (Chief Financial Officer)


Holder of Face Amount of GO Bonds: ████████████

Holder of Face Amount of PBA Bonds: ████████████

**BROOKFIELD ASSET MANAGEMENT PRIVATE INSTITUTIONAL CAPITAL
ADVISER (CREDIT) LLC**, on behalf of funds and accounts under management


By:  /s/ Anthony Bavaro
Name:  Anthony Bavaro
Title:  Authorized Signatory


Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

56

**CANYON CAPITAL ADVISORS LLC**, on behalf of itself and certain funds under management


By:  /s/ Jonathan M. Kaplan
Name:  Jonathan M. Kaplan
Title:  Authorized Signatory


Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

109132810v14

**COOPERATIVA DE AHORRO Y CREDITO GERENCIALES AEE**, on behalf of itself

By: /s/ Juan L. Carrasquillo
Name: Juan L. Carrasquillo
Title: Executive President

Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

**COOPERATIVA DE AHORRO Y CREDITO SAN JOSE**, on behalf of itself


By:  /s/ Ricky Berrios Figueroa
Name:  Ricky Berrios Figueroa
Title: Presidente Ejecutivo


Holder of Face Amount of GO Bonds: ██████████

Holder of Face Amount of PBA Bonds: ██████████

59

**COOPERATIVA DE AHORRO Y CREDITO DE CIDRA**, on behalf of itself

By:  /s/ Mayra Velázquez López
Name:  Mayra Velázquez López
Title:  Executive President

Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

60

**COOPERATIVA DE AHORRO Y CREDITO DE YAUCO**, on behalf of itself

By:   /s/ Ramon Torres Matos

Name:   Ramon Torres Matos

Title:   Presidente Ejecutivo

Holder of Face Amount of GO Bonds: ██████████

Holder of Face Amount of PBA Bonds: ██████████

61

**COOPERATIVA DE AHORRO Y CREDITO ASOCIACION DE MAESTROS DE PR**, on behalf of itself


By:  /s/ Jose Flecha
Name:  Jose Flecha
Title:  Executive President


Holder of Face Amount of GO Bonds: ████████████

Holder of Face Amount of PBA Bonds: ████████████

**COOPERATIVA DE AHORRO Y CREDITO DE ADJUNTAS**, on behalf of itself

By:  /s/ Miguel A. Jusino Martinez
Name:  Miguel A. Jusino Martinez
Title:  Executive President

Holder of Face Amount of GO Bonds: ████████████

Holder of Face Amount of PBA Bonds: ████████████

63

**DAVIDSON KEMPNER CAPITAL MANAGEMENT LP**, on behalf of itself and certain funds under management

By:  /s/ Gabriel Schwartz
Name:  Gabriel Schwartz
Title:  Co-Deputy Executive Managing Member

Holder of Face Amount of GO Bonds:  ███████████

Holder of Face Amount of PBA Bonds:  ███████████

109132810v14

**DEUTSCHE BANK SECURITIES INC.**, solely with respect to its Distressed Products Group


By:  /s/ Matthew Weinstein
Name:  Matthew Weinstein
Title:  Managing Director


By:  /s/ Shawn Faurot
Name:  Shawn Faurot
Title:  Managing Director


Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

65

**EMSO ASSET MANAGEMENT LIMITED**, as investment manager on behalf of its participating funds and accounts

By:  /s/ Rory McGregor
Name:  Rory McGregor
Title:  Director

Holder of Face Amount of GO Bonds: ████████████

Holder of Face Amount of PBA Bonds: ████████████

66

**FARMSTEAD CAPITAL MANAGEMENT**, on behalf of itself and certain funds under management

By:  /s/ Michael Scott _____
Name:  Michael Scott _____
Title:  Managing Member _____


Holder of Face Amount of GO Bonds:  ██████████

Holder of Face Amount of PBA Bonds:  ██████████

67

**FCO ADVISORS LP**, on behalf of itself and certain funds under management


By:  /s/ Hector Negroni
Name:  Hector Negroni
Title:  Chief Executive Officer


Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

68

**FIRST PACIFIC ADVISORS, LP**, on behalf of funds and accounts under management


By:  /s/ Eric R. Brown
Name:  Eric Brown
Title:  Secretary & Counsel of its general partner


Holder of Face Amount of GO Bonds: █████████

Holder of Face Amount of PBA Bonds: █████████

**FIR TREE CAPITAL MANAGEMENT, LP,** on behalf of itself and funds for which it serves
as investment manager or advisor


By:  /s/ Brian Meyer
Name:  Brian Meyer
Title:  Authorized Person


Holder of Face Amount of GO Bonds: ████████████

Holder of Face Amount of PBA Bonds: ████████████

Holder of Face Amount PRIFA BANs: ████████████

70

**GOLDENTREE ASSET MANAGEMENT, LP**, on behalf of itself and certain funds under management


By:  /s/ Sasha Linney
Name:  Sasha Linney
Title:  Associate General Counsel


Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

71

**GOLDMAN SACHS ASSET MANAGEMENT, L.P.,** on behalf of certain funds and accounts for which it serves as investment manager

By:  /s/ David Z. Alter
Name:  David Z. Alter
Title:  Managing Director

Investment Manager to Holder of Face Amount of GO Bonds: ███████████

Investment Manager to Holder of Face Amount of PBA Bonds: ███████████

72

**MARBLE RIDGE CAPITAL**, on behalf of itself


By:  /s/ Kamand Daniels
Name:  Kamand Daniels
Title:  General Counsel

Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

73

**MASON CAPITAL MANAGEMENT, LLC**, on behalf of certain funds under management


By:  /s/ Richard Engman
Name:  Richard Engman
Title:  Authorized Signatory


Holder of Face Amount of GO Bonds: ██████████

Holder of Face Amount of PBA Bonds: ██████████

74

**MONARCH ALTERNATIVE CAPITAL LP**, on behalf of itself and certain funds under management


By:  /s/ Adam R. Sklar
Name:  Adam R. Sklar
Title:  Managing Principal


Holder of Face Amount of GO Bonds: ████████████

Holder of Face Amount of PBA Bonds: ████████████

**OM FOUNDATION LIMITED,** on behalf of itself and certain funds under management

By:  /s/ Satish Karandikar
Name:  Satish Karandikar
Title:  Fund Manager


Holder of Face Amount of GO Bonds: ██████████

Holder of Face Amount of PBA Bonds: ██████████

76

**SCULPTOR CAPITAL LP**, on behalf of certain of its managed funds and not in its individual capacity

By: Sculptor Capital Holding Corporation, its General Partner

By:  /s/ Wayne Cohen
Name:  Wayne Cohen
Title:  President and Chief Operating Officer

Holder of Face Amount of GO Bonds: ████████

Holder of Face Amount of PBA Bonds: ████████

109132810v14

**SILVER POINT CAPITAL, L.P.**, as Investment Manager on behalf of certain affiliated funds

By:  /s/ Stephen P. Cho
Name:  Stephen P. Cho
Title:  Authorized Signatory

Holder of Face Amount of GO Bonds: ██████████

Holder of Face Amount of PBA Bonds: ██████████

**STONEHILL CAPITAL MANAGEMENT LLC**, acting as advisor/manager for Stonehill
Master Fund Ltd and Stonehill Institutional Partners, L.P., its managed funds


By:  /s/ Michael Thoyer
Name:  Michael Thoyer
Title:  Authorized Signatory


Holder of Face Amount of GO Bonds: ██████████

Holder of Face Amount of PBA Bonds: ██████████

**TACONIC CAPITAL ADVISORS L.P.**, on behalf of itself and certain funds under management

By:   /s/ Marc Schwartz
Name:  Marc Schwartz
Title: Principal

Holder of Face Amount of GO Bonds: ████████████

Holder of Face Amount of PBA Bonds: ████████████

**VR ADVISORY SERVICES LTD**, on behalf of certain funds under management

By:  /s/ Emile du Toit

Name:  Emile du Toit

Title:  Authorized Signatory

Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

81

**WHITEBOX ADVISORS LLC**, on behalf of itself and certain funds under management


By:  /s/ Luke Harris
Name:  Luke Harris
Title:  General Counsel – Corporate, Transactions & Litigation


Holder of Face Amount of GO Bonds: ███████████

Holder of Face Amount of PBA Bonds: ███████████

82

# EXHIBIT A

## LIST OF GO HOLDERS PARTY HERETO

Aristeia Capital, LLC, on behalf of itself and certain funds under management

Aurelius Capital Management, LP, on behalf of certain of its managed funds and not in its individual capacity

Autonomy Capital (Jersey) L.P., on behalf of itself and certain funds under management

BlackRock Advisors, LLC, as Investment Advisor

BlackRock Financial Management Inc., as Investment Advisor

Brigade Capital Management LP, on behalf of funds and accounts under management

Brookfield Asset Management Private Institutional Capital Adviser (Credit) LLC, on behalf of funds and accounts under management

Canyon Capital Advisors, LLC, on behalf of itself and certain funds under management

Coopperativa de Ahorro y Credito Gerenciales AEE, on behalf of itself

Coopperativa de Ahorro y Credito San Jose, on behalf of itself

Coopperativa de Ahorro y Credito de Cidra, on behalf of itself

Coopperativa de Ahorro y Credito Asociacion de Maestros de PR, on behalf of itself

Coopperativa de Ahorro y Credito de Adjuntas, on behalf of itself

Davidson Kempner Capital Management LP, on behalf of itself and certain funds under management

Deutsche Bank Securities Inc., solely with respect to its Distressed Products Group

Emso Asset Management Limited, as investment manager on behalf of its participating funds and accounts

Farmstead Capital Management, on behalf of itself and certain funds under management

FCO Advisors LP, on behalf of itself and certain funds under management

First Pacific Advisors, LP, on behalf of funds and accounts under management

Fir Tree Capital Management, LP, on behalf of itself and funds for which it serves as investment manager or advisor

109132810v14

**EXECUTION COPY**

Goldman Sachs Asset Management, L.P., on behalf of certain funds and accounts for which it serves as investment manager

GoldenTree Asset Management, LP, on behalf of itself and certain funds under management

Marble Ridge Capital, on behalf of itself

Mason Capital Management, LLC, on behalf of certain funds under management

Monarch Alternative Capital LP, on behalf of itself and certain funds under management

OM Foundation Limited, on behalf of itself and certain funds under management

Sculptor Capital LP, on behalf of certain of its managed funds and not in its individual capacity

Silver Point Capital, L.P., as Investment Manager on behalf of certain affiliated funds

Stonehill Capital Management LLC, acting as advisor/manager for Stonehill Master Fund Ltd and Stonehill Institutional Partners, L.P., its managed funds

Taconic Capital Advisors L.P., on behalf of itself and certain funds under management

VR Advisory Services Ltd, on behalf of certain funds under management

Whitebox Advisors LLC, on behalf of itself and certain funds under management

109132810v14

EXECUTION COPY

## EXHIBIT B

### LIST OF PBA HOLDERS PARTY HERETO

Aristeia Capital, LLC, on behalf of itself and certain funds under management

Aurelius Capital Management, LP, on behalf of certain of its managed funds and not in its individual capacity

BlackRock Advisors, LLC, as Investment Advisor

BlackRock Financial Management Inc., as Investment Advisor

Brigade Capital Management LP, on behalf of funds and accounts under management

Brookfield Asset Management Private Institutional Capital Adviser (Credit) LLC, on behalf of funds and accounts under management

Canyon Capital Advisors, LLC, on behalf of itself and certain funds under management

Coopperativa de Ahorro y Credito Gerenciales AEE, on behalf of itself

Coopperativa de Ahorro y Credito San Jose, on behalf of itself

Coopperativa de Ahorro y Credito de Cidra, on behalf of itself

Coopperativa de Ahorro y Credito Asociacion de Maestros de PR, on behalf of itself

Coopperativa de Ahorro y Credito de Adjuntas, on behalf of itself

Davidson Kempner Capital Management LP, on behalf of itself and certain funds under management

Deutsche Bank Securities Inc., solely with respect to its Distressed Products Group

Farmstead Capital Management, on behalf of itself and certain funds under management

FCO Advisors LP, on behalf of itself and certain funds under management

First Pacific Advisors, LP, on behalf of funds and accounts under management

Fir Tree Capital Management, LP, on behalf of itself and funds for which it serves as investment manager or advisor

Goldman Sachs Asset Management, L.P., on behalf of certain funds and accounts for which it serves as investment manager

GoldenTree Asset Management, LP, on behalf of itself and certain funds under management

109132810v14

**EXECUTION COPY**

Marble Ridge Capital on behalf of itself

Mason Capital Management, LLC, on behalf of certain funds under management

Monarch Alternative Capital LP, on behalf of itself and certain funds under management

OM Foundation Limited, on behalf of itself and certain funds under management

Sculptor Capital LP, on behalf of certain of its managed funds and not in its individual capacity

Silver Point Capital, L.P., as Investment Manager on behalf of certain affiliated funds

Stonehill Capital Management LLC, acting as advisor/manager for Stonehill Master Fund Ltd and Stonehill Institutional Partners, L.P., its managed funds

Taconic Capital Advisors L.P., on behalf of itself and certain funds under management

VR Advisory Services Ltd, on behalf of certain funds under management

Whitebox Advisors LLC, on behalf of itself and certain funds under management

109132810v14

EXECUTION COPY

# **EXHIBIT C**

GO BONDS

EXECUTION COPY

**GO Bonds**

| CUSIP | Series | Maturity | Issuance |
|-------|--------|----------|----------|
| 745145AU6 | Public Improvement Ref. Bonds, Series 1998 | 7/1/2016 | 1/29/1998 |
| 745145AV4 | Public Improvement Ref. Bonds, Series 1998 | 7/1/2017 | 1/29/1998 |
| 745145AW2 | Public Improvement Ref. Bonds, Series 1998 | 7/1/2018 | 1/29/1998 |
| 745145AX0 | Public Improvement Ref. Bonds, Series 1998 | 7/1/2023 | 1/15/1998 |
| 745145EK4 | Public Improvement Bonds of 1998 | 7/1/2016 | 3/15/1998 |
| 745145HN5 | Public Improvement Bonds of 1999 | 7/1/2016 | 12/1/1998 |
| 745145HP0 | Public Improvement Bonds of 1999 | 7/1/2017 | 12/1/1998 |
| 745145HQ8 | Public Improvement Bonds of 1999 | 7/1/2018 | 12/1/1998 |
| 74514LQK6 | Public Improvement Bonds of 1999 | 7/1/2028 | 12/1/1998 |
| 745145QE5 | Public Improvement Ref. Bonds, Series 2000 | 7/1/2019 | 4/5/2000 |
| 745145UZ3 | Public Improvement Bonds of 2001, Series A & B | 7/1/2016 | 6/7/2001 |
| 745145VB5 | Public Improvement Bonds of 2001, Series A & B | 7/1/2017 | 6/7/2001 |
| 745145VD1 | Public Improvement Bonds of 2001, Series A & B | 7/1/2018 | 6/7/2001 |
| 745145VF6 | Public Improvement Bonds of 2001, Series A & B | 7/1/2019 | 6/7/2001 |
| 745145VH2 | Public Improvement Bonds of 2001, Series A & B | 7/1/2020 | 6/7/2001 |
| 74514LBJ5 | Public Improvement Ref. Bonds, Series 2001 | 7/1/2030 | 6/7/2001 |
| 745145XZ0 | Public Improvement Bonds of 2002, Series A | 7/1/2029 | 10/25/2001 |
| 74514LBM8 | Public Improvement Bonds of 2002, Series A | 7/1/2031 | 10/25/2001 |
| 745145YN6 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YP1 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YQ9 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YR7 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YS5 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2017 | 10/25/2001 |
| 745145YT3 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2017 | 10/25/2001 |
| 745145YU0 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2017 | 10/25/2001 |
| 745145YV8 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2018 | 10/25/2001 |
| 745145YW6 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2018 | 10/25/2001 |
| 745145YX4 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2019 | 10/25/2001 |
| 745145YY2 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2019 | 10/25/2001 |
| 745145YZ9 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2019 | 10/25/2001 |
| 745145ZA3 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2019 | 10/25/2001 |
| 745145ZB1 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2020 | 10/25/2001 |
| 745145ZC9 | Public Improvement Ref. Bonds, Series 2002 A | 7/1/2021 | 10/25/2001 |
| 745145Q70 | Public Improvement Bonds of 2003, Series A | 7/1/2016 | 8/8/2002 |
| 745145Q88 | Public Improvement Bonds of 2003, Series A | 7/1/2017 | 8/8/2002 |
| 745145Q96 | Public Improvement Bonds of 2003, Series A | 7/1/2018 | 8/8/2002 |
| 745145R20 | Public Improvement Bonds of 2003, Series A | 7/1/2019 | 8/8/2002 |
| 745145R38 | Public Improvement Bonds of 2003, Series A | 7/1/2020 | 8/8/2002 |
| 745145R46 | Public Improvement Bonds of 2003, Series A | 7/1/2021 | 8/8/2002 |
| 745145R53 | Public Improvement Bonds of 2003, Series A | 7/1/2022 | 8/8/2002 |
| 745145T77 | Public Improvement Ref. Bonds, Series 2003 A | 7/1/2016 | 8/8/2002 |
| 745145T85 | Public Improvement Ref. Bonds, Series 2003 A | 7/1/2017 | 8/8/2002 |
| 74514LUR6 | Public Improvement Ref. Bonds, Series 2003 C | 7/1/2027 | 5/6/2003 |
| 74514LUS4 | Public Improvement Ref. Bonds, Series 2003 C | 7/1/2028 | 5/6/2003 |
| 7451455A6 | Public Improvement Bonds of 2004, Series A | 7/1/2024 | 10/16/2003 |
| 7451455B4 | Public Improvement Bonds of 2004, Series A | 7/1/2027 | 10/16/2003 |

EXECUTION COPY

**GO Bonds**

| CUSIP | Series | Maturity | Issuance |
|---|---|---|---|
| 74514LPT8 | Public Improvement Bonds of 2004, Series A | 7/1/2033 | 10/16/2003 |
| 74514LCU9 | Public Improvement Bonds of 2005, Series A | 7/1/2016 | 10/7/2004 |
| 74514LCX3 | Public Improvement Bonds of 2005, Series A | 7/1/2019 | 10/7/2004 |
| 74514LCY1 | Public Improvement Bonds of 2005, Series A | 7/1/2020 | 10/7/2004 |
| 74514LCZ8 | Public Improvement Bonds of 2005, Series A | 7/1/2021 | 10/7/2004 |
| 74514LDA2 | Public Improvement Bonds of 2005, Series A | 7/1/2022 | 10/7/2004 |
| 74514LDB0 | Public Improvement Bonds of 2005, Series A | 7/1/2023 | 10/7/2004 |
| 74514LDC8 | Public Improvement Bonds of 2005, Series A | 7/1/2024 | 10/7/2004 |
| 74514LDD6 | Public Improvement Bonds of 2005, Series A | 7/1/2025 | 10/7/2004 |
| 74514LDE4 | Public Improvement Bonds of 2005, Series A | 7/1/2029 | 10/7/2004 |
| 74514LPX9 | Public Improvement Bonds of 2005, Series A | 7/1/2034 | 10/7/2004 |
| 74514LHB6 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2016 | 6/23/2006 |
| 74514LHC4 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2017 | 6/23/2006 |
| 74514LHD2 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2018 | 6/23/2006 |
| 74514LHE0 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2019 | 6/23/2006 |
| 74514LHF7 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2020 | 6/23/2006 |
| 74514LHG5 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2021 | 6/23/2006 |
| 74514LHH3 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2022 | 6/23/2006 |
| 74514LHJ9 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2023 | 6/23/2006 |
| 74514LHK6 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2024 | 6/23/2006 |
| 74514LHL4 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2025 | 6/23/2006 |
| 74514LHM2 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2026 | 6/23/2006 |
| 74514LHN0 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2031 | 6/23/2006 |
| 74514LHP5 | Public Improvement Ref. Bonds, Series 2006 A | 7/1/2035 | 6/23/2006 |
| 74514LJQ1 | Public Improvement Bonds of 2006, Series A | 7/1/2017 | 8/10/2006 |
| 74514LJV0 | Public Improvement Bonds of 2006, Series A | 7/1/2021 | 8/10/2006 |
| 74514LJW8 | Public Improvement Bonds of 2006, Series A | 7/1/2022 | 8/10/2006 |
| 74514LJX6 | Public Improvement Bonds of 2006, Series A | 7/1/2023 | 8/10/2006 |
| 74514LJY4 | Public Improvement Bonds of 2006, Series A | 7/1/2024 | 8/10/2006 |
| 74514LJZ1 | Public Improvement Bonds of 2006, Series A | 7/1/2025 | 8/10/2006 |
| 74514LKA4 | Public Improvement Bonds of 2006, Series A | 7/1/2026 | 8/10/2006 |
| 74514LJR9 | Public Improvement Bonds of 2006, Series A | 7/1/2018 | 8/10/2006 |
| 74514LJS7 | Public Improvement Bonds of 2006, Series A | 7/1/2019 | 8/10/2006 |
| 74514LJT5 | Public Improvement Bonds of 2006, Series A | 7/1/2020 | 8/10/2006 |
| 74514LJU2 | Public Improvement Bonds of 2006, Series A | 7/1/2021 | 8/10/2006 |
| 74514LQA8 | Public Improvement Bonds of 2006, Series A | 7/1/2027 | 8/10/2006 |
| 74514LQB6 | Public Improvement Bonds of 2006, Series A | 7/1/2030 | 8/10/2006 |
| 74514LQE0 | Public Improvement Ref. Bonds, Series 2006 B | 7/1/2032 | 8/10/2006 |
| 74514LQF7 | Public Improvement Ref. Bonds, Series 2006 B | 7/1/2035 | 8/10/2006 |
| 74514LKH9 | Public Improvement Bonds of 2006, Series B | 7/1/2016 | 8/30/2006 |
| 74514LKJ5 | Public Improvement Bonds of 2006, Series B | 7/1/2017 | 8/30/2006 |
| 74514LLV7 | Public Improvement Bonds of 2007, Series A | 7/1/2018 | 10/4/2007 |
| 74514LLW5 | Public Improvement Bonds of 2007, Series A | 7/1/2019 | 10/4/2007 |
| 74514LLX3 | Public Improvement Bonds of 2007, Series A | 7/1/2020 | 10/4/2007 |
| 74514LLY1 | Public Improvement Bonds of 2007, Series A | 7/1/2021 | 10/4/2007 |
| 74514LLZ8 | Public Improvement Bonds of 2007, Series A | 7/1/2022 | 10/4/2007 |

EXECUTION COPY

**GO Bonds**

| CUSIP | Series | Maturity | Issuance |
|---|---|---|---|
| 74514LMA2 | Public Improvement Bonds of 2007, Series A | 7/1/2023 | 10/4/2007 |
| 74514LMB0 | Public Improvement Bonds of 2007, Series A | 7/1/2024 | 10/4/2007 |
| 74514LMC8 | Public Improvement Bonds of 2007, Series A | 7/1/2025 | 10/4/2007 |
| 74514LMD6 | Public Improvement Bonds of 2007, Series A | 7/1/2026 | 10/4/2007 |
| 74514LME4 | Public Improvement Bonds of 2007, Series A | 7/1/2027 | 10/4/2007 |
| 74514LMF1 | Public Improvement Bonds of 2007, Series A | 7/1/2028 | 10/4/2007 |
| 74514LMG9 | Public Improvement Bonds of 2007, Series A | 7/1/2029 | 10/4/2007 |
| 74514LMH7 | Public Improvement Bonds of 2007, Series A | 7/1/2030 | 10/4/2007 |
| 74514LMJ3 | Public Improvement Bonds of 2007, Series A | 7/1/2031 | 10/4/2007 |
| 74514LMK0 | Public Improvement Bonds of 2007, Series A | 7/1/2032 | 10/4/2007 |
| 74514LML8 | Public Improvement Bonds of 2007, Series A | 7/1/2033 | 10/4/2007 |
| 74514LMM6 | Public Improvement Bonds of 2007, Series A | 7/1/2034 | 10/4/2007 |
| 74514LMN4 | Public Improvement Bonds of 2007, Series A | 7/1/2037 | 10/4/2007 |
| 74514LMZ7 | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2016 | 10/16/2007 |
| 74514LNA1 | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2017 | 10/16/2007 |
| 74514LNB9 | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2017 | 10/16/2007 |
| 74514LNC7 | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2018 | 10/16/2007 |
| 74514LND5 | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2019 | 10/16/2007 |
| 74514LNE3 | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2020 | 10/16/2007 |
| 74514LNF0 | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2021 | 10/16/2007 |
| 74514LNG8 | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2022 | 10/16/2007 |
| 74514LVT1 | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2030 | 10/16/2007 |
| 74514LVU8 | Public Improvement Ref. Bonds, Series 2007 A | 7/1/2031 | 10/16/2007 |
| 74514LTJ6 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2016 | 5/7/2008 |
| 74514LTK3 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2016 | 5/7/2008 |
| 74514LTL1 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2016 | 5/7/2008 |
| 74514LTM9 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2018 | 5/7/2008 |
| 74514LTN7 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2019 | 5/7/2008 |
| 74514LTP2 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2020 | 5/7/2008 |
| 74514LTQ0 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2021 | 5/7/2008 |
| 74514LTR8 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2022 | 5/7/2008 |
| 74514LTS6 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2023 | 5/7/2008 |
| 74514LTT4 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2024 | 5/7/2008 |
| 74514LTU1 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2025 | 5/7/2008 |
| 74514LTV9 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2026 | 5/7/2008 |
| 74514LTW7 | Public Improvement Ref. Bonds, Series 2008 A | 7/1/2032 | 5/7/2008 |
| 74514LSQ1 | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2016 | 5/7/2008 |
| 74514LSR9 | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2017 | 5/7/2008 |
| 74514LSS7 | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2018 | 5/7/2008 |
| 74514LST5 | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2023 | 5/7/2008 |
| 74514LSV0 | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2023 | 5/7/2008 |
| 74514LSU2 | Public Improvement Ref. Bonds, Series 2008 C | 7/1/2028 | 5/7/2008 |
| 74514LVG9 | Public Improvement Bonds of 2008, Series A | 7/1/2016 | 9/18/2008 |
| 74514LVH7 | Public Improvement Bonds of 2008, Series A | 7/1/2017 | 9/18/2008 |
| 74514LVJ3 | Public Improvement Bonds of 2008, Series A | 7/1/2018 | 9/18/2008 |
| 74514LVK0 | Public Improvement Bonds of 2008, Series A | 7/1/2023 | 9/18/2008 |

109132810v14

**GO Bonds**

| CUSIP | Series | Maturity | Issuance |
|-------|--------|----------|----------|
| 74514LVL8 | Public Improvement Bonds of 2008, Series A | 7/1/2028 | 9/18/2008 |
| 74514LVM6 | Public Improvement Bonds of 2008, Series A | 7/1/2033 | 9/18/2008 |
| 74514LVN4 | Public Improvement Bonds of 2008, Series A | 7/1/2038 | 9/18/2008 |
| 74514LVV6 | Public Improvement Ref. Bonds, Series 2009 A | 7/1/2031 | 9/17/2009 |
| 74514LVX2 | Public Improvement Ref. Bonds, Series 2009 B | 7/1/2036 | 11/17/2009 |
| 74514LVY0 | Public Improvement Ref. Bonds, Series 2009 B | 7/1/2037 | 11/17/2009 |
| 74514LVZ7 | Public Improvement Ref. Bonds, Series 2009 B | 7/1/2038 | 11/17/2009 |
| 74514LVW4 | Public Improvement Ref. Bonds, Series 2009 B | 7/1/2039 | 11/17/2009 |
| 74514LWA1 | Public Improvement Ref. Bonds, Series 2009 C | 7/1/2039 | 12/16/2009 |
| 74514LWN3 | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2024 | 2/17/2011 |
| 74514LWJ2 | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2025 | 2/17/2011 |
| 74514LWP8 | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2027 | 2/17/2011 |
| 74514LWK9 | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2028 | 2/17/2011 |
| 74514LWL7 | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2033 | 2/17/2011 |
| 74514LWM5 | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2033 | 2/17/2011 |
| 74514LWQ6 | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2034 | 2/17/2011 |
| 74514LWT0 | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2034 | 2/17/2011 |
| 74514LWR4 | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2040 | 2/17/2011 |
| 74514LWS2 | Public Improvement Ref. Bonds, Series 2011 A | 7/1/2040 | 2/17/2011 |
| 74514LWY9 | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2026 | 3/17/2011 |
| 74514LXD4 | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2027 | 3/17/2011 |
| 74514LXE2 | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2028 | 3/17/2011 |
| 74514LXA0 | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2032 | 3/17/2011 |
| 74514LXB8 | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2032 | 3/17/2011 |
| 74514LXF9 | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2032 | 3/17/2011 |
| 74514LWZ6 | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2035 | 3/17/2011 |
| 74514LXC6 | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2036 | 3/17/2011 |
| 74514LXH5 | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2036 | 3/17/2011 |
| 74514LXG7 | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2037 | 3/17/2011 |
| 74514LWX1 | Public Improvement Ref. Bonds, Series 2011 C | 7/1/2040 | 3/17/2011 |
| 74514LYW1 | Public Improvement Bonds of 2011, Series A | 7/1/2041 | 7/12/2011 |
| 74514LZA8 | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2016 | 7/12/2011 |
| 74514LZB6 | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2017 | 7/12/2011 |
| 74514LZC4 | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2018 | 7/12/2011 |
| 74514LZD2 | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2019 | 7/12/2011 |
| 74514LZF7 | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2019 | 7/12/2011 |
| 74514LZH3 | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2019 | 7/12/2011 |
| 74514LZG5 | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2020 | 7/12/2011 |
| 74514LZE0 | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2020 | 7/12/2011 |
| 74514LZJ9 | Public Improvement Ref. Bonds, Series 2011 D | 7/1/2020 | 7/12/2011 |
| 74514LZK6 | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2029 | 7/12/2011 |
| 74514LZL4 | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2030 | 7/12/2011 |
| 74514LZM2 | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2031 | 7/12/2011 |
| 74514LZN0 | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2032 | 7/12/2011 |
| 74514LZP5 | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2033 | 7/12/2011 |
| 74514LZQ3 | Public Improvement Ref. Bonds, Series 2011 E | 7/1/2034 | 7/12/2011 |

**EXECUTION COPY**

**GO Bonds**

| CUSIP | Series | Maturity | Issuance |
|---|---|---|---|
| 74514LZV2 | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2016 | 3/29/2012 |
| 74514LZW0 | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2017 | 3/29/2012 |
| 74514LZX8 | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2018 | 3/29/2012 |
| 74514LZY6 | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2019 | 3/29/2012 |
| 74514LZZ3 | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2020 | 3/29/2012 |
| 74514LA23 | Public Improvement Ref. Bonds, Series 2012 B | 7/1/2033 | 3/29/2012 |
| 74514LA31 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2020 | 4/3/2012 |
| 74514LC47 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2020 | 4/3/2012 |
| 74514LA49 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2021 | 4/3/2012 |
| 74514LC54 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2021 | 4/3/2012 |
| 74514LA56 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2022 | 4/3/2012 |
| 74514LC62 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2022 | 4/3/2012 |
| 74514LD46 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2022 | 4/3/2012 |
| 74514LA64 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2023 | 4/3/2012 |
| 74514LC70 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2023 | 4/3/2012 |
| 74514LD53 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2023 | 4/3/2012 |
| 74514LA72 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2024 | 4/3/2012 |
| 74514LC88 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2024 | 4/3/2012 |
| 74514LD61 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2024 | 4/3/2012 |
| 74514LA80 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2025 | 4/3/2012 |
| 74514LD79 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2025 | 4/3/2012 |
| 74514LA98 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2026 | 4/3/2012 |
| 74514LC96 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2026 | 4/3/2012 |
| 74514LD38 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2026 | 4/3/2012 |
| 74514LB22 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2027 | 4/3/2012 |
| 74514LD87 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2027 | 4/3/2012 |
| 74514LB30 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2028 | 4/3/2012 |
| 74514LB48 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2029 | 4/3/2012 |
| 74514LB97 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2030 | 4/3/2012 |
| 74514LB55 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2031 | 4/3/2012 |
| 74514LC21 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2032 | 4/3/2012 |
| 74514LC39 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2033 | 4/3/2012 |
| 74514LD20 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2035 | 4/3/2012 |
| 74514LB63 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2037 | 4/3/2012 |
| 74514LB71 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2039 | 4/3/2012 |
| 74514LB89 | Public Improvement Ref. Bonds, Series 2012 A | 7/1/2041 | 4/3/2012 |
| 74514LE86 | General Obligation Bonds of 2014, Series A | 7/1/2035 | 3/17/2014 |

EXECUTION COPY

# EXHIBIT D

PBA BONDS

109132810v14

EXECUTION COPY

**PBA Bonds**

| CUSIP | Series | Maturity | Issuance |
|-------|--------|----------|----------|
| 745235GJ4 | Government Facilities Revenue Ref. Bonds, Series L | 7/1/2021 | 6/1/1993 |
| 745235G62 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2016 | 1/30/2002 |
| 745235G70 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2017 | 1/30/2002 |
| 745235G88 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2018 | 1/30/2002 |
| 745235G96 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2019 | 1/30/2002 |
| 745235H20 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2020 | 1/30/2002 |
| 745235H38 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2021 | 1/30/2002 |
| 745235H46 | Government Facilities Revenue Ref. Bonds, Series C | 7/1/2022 | 1/30/2002 |
| 745235D24 | Government Facilities Revenue Bonds, Series D | 7/1/2024 | 1/30/2002 |
| 745235VX6 | Government Facilities Revenue Bonds, Series D | 7/1/2027 | 1/30/2002 |
| 745235D32 | Government Facilities Revenue Bonds, Series D | 7/1/2030 | 1/30/2002 |
| 745235D40 | Government Facilities Revenue Bonds, Series D | 7/1/2031 | 1/30/2002 |
| 745235VY4 | Government Facilities Revenue Bonds, Series D | 7/1/2033 | 1/30/2002 |
| 745235VZ1 | Government Facilities Revenue Bonds, Series D | 7/1/2036 | 1/30/2002 |
| 745235RV5 | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2017 | 10/24/2002 |
| 745235RW3 | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2018 | 10/24/2002 |
| 745235RX1 | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2019 | 10/24/2002 |
| 745235RY9 | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2020 | 10/24/2002 |
| 745235RZ6 | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2021 | 10/24/2002 |
| 745235SA0 | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2023 | 10/24/2002 |
| 745235SB8 | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2024 | 10/24/2002 |
| 745235SC6 | Government Facilities Revenue Ref. Bonds, Series F | 7/1/2025 | 10/24/2002 |
| 745235SW2 | Government Facilities Revenue Bonds, Series G | 7/1/2026 | 10/24/2002 |
| 745235SX0 | Government Facilities Revenue Bonds, Series G | 7/1/2032 | 10/24/2002 |
| 745235TG6 | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2016 | 4/3/2003 |
| 745235TH4 | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2016 | 4/3/2003 |
| 745235TJ0 | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2017 | 4/3/2003 |
| 745235TK7 | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2018 | 4/3/2003 |
| 745235TL5 | Government Facilities Revenue Ref. Bonds, Series H | 7/1/2019 | 4/3/2003 |
| 745235D57 | Government Facilities Revenue Bonds, Series I | 7/1/2029 | 6/10/2004 |
| 745235D65 | Government Facilities Revenue Bonds, Series I | 7/1/2033 | 6/10/2004 |
| 745235VR9 | Government Facilities Revenue Bonds, Series I | 7/1/2036 | 6/10/2004 |
| 745235ZK0 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2016 | 12/20/2007 |
| 745235ZL8 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2017 | 12/20/2007 |
| 745235ZM6 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2018 | 12/20/2007 |
| 745235ZN4 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2019 | 12/20/2007 |
| 745235ZP9 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2020 | 12/20/2007 |
| 745235ZQ7 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2021 | 12/20/2007 |
| 745235ZR5 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2022 | 12/20/2007 |
| 745235ZS3 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2023 | 12/20/2007 |
| 745235ZT1 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2031 | 12/20/2007 |
| 745235S93 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2034 | 12/20/2007 |
| 745235B75 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2035 | 12/20/2007 |
| 745235J93 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2023 | 12/20/2007 |
| 745235K26 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2024 | 12/20/2007 |
| 745235K34 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2025 | 12/20/2007 |

109132810v14

EXECUTION COPY

**PBA Bonds**

| CUSIP | Series | Maturity | Issuance |
|---|---|---|---|
| 745235K42 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2026 | 12/20/2007 |
| 745235K59 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2027 | 12/20/2007 |
| 745235K67 | Government Facilities Revenue Ref. Bonds, Series M | 7/1/2028 | 12/20/2007 |
| 745235ZX2 | Government Facilities Revenue Bonds, Series N | 7/1/2016 | 12/20/2007 |
| 745235ZY0 | Government Facilities Revenue Bonds, Series N | 7/1/2017 | 12/20/2007 |
| 745235ZZ7 | Government Facilities Revenue Bonds, Series N | 7/1/2018 | 12/20/2007 |
| 745235A27 | Government Facilities Revenue Bonds, Series N | 7/1/2019 | 12/20/2007 |
| 745235A35 | Government Facilities Revenue Bonds, Series N | 7/1/2020 | 12/20/2007 |
| 745235A43 | Government Facilities Revenue Bonds, Series N | 7/1/2021 | 12/20/2007 |
| 745235A50 | Government Facilities Revenue Bonds, Series N | 7/1/2022 | 12/20/2007 |
| 745235A68 | Government Facilities Revenue Bonds, Series N | 7/1/2023 | 12/20/2007 |
| 745235A76 | Government Facilities Revenue Bonds, Series N | 7/1/2024 | 12/20/2007 |
| 745235A84 | Government Facilities Revenue Bonds, Series N | 7/1/2025 | 12/20/2007 |
| 745235A92 | Government Facilities Revenue Bonds, Series N | 7/1/2026 | 12/20/2007 |
| 745235B26 | Government Facilities Revenue Bonds, Series N | 7/1/2027 | 12/20/2007 |
| 745235B34 | Government Facilities Revenue Bonds, Series N | 7/1/2032 | 12/20/2007 |
| 745235B42 | Government Facilities Revenue Bonds, Series N | 7/1/2037 | 12/20/2007 |
| 745235K75 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2018 | 7/1/2009 |
| 745235K83 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2019 | 7/1/2009 |
| 745235K91 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2020 | 7/1/2009 |
| 745235L25 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2021 | 7/1/2009 |
| 745235L33 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2023 | 7/1/2009 |
| 745235L41 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2025 | 7/1/2009 |
| 745235L58 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2026 | 7/1/2009 |
| 745235L66 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2030 | 7/1/2009 |
| 745235L74 | Government Facilities Revenue Ref. Bonds, Series P | 7/1/2036 | 7/1/2009 |
| 745235L82 | Government Facilities Revenue Ref. Bonds, Series K (Remarketing) | 7/1/2027 | 5/27/2004 |
| 745235L90 | Government Facilities Revenue Ref. Bonds, Series Q | 7/1/2022 | 10/28/2009 |
| 745235M24 | Government Facilities Revenue Ref. Bonds, Series Q | 7/1/2037 | 10/28/2009 |
| 745235M32 | Government Facilities Revenue Ref. Bonds, Series Q | 7/1/2038 | 10/28/2009 |
| 745235M40 | Government Facilities Revenue Ref. Bonds, Series Q | 7/1/2039 | 10/28/2009 |
| 745235M57 | Government Facilities Revenue Bonds, Series R | 7/1/2028 | 8/24/2011 |
| 745235M65 | Government Facilities Revenue Bonds, Series R | 7/1/2028 | 8/24/2011 |
| 745235M73 | Government Facilities Revenue Bonds, Series R | 7/1/2028 | 8/24/2011 |
| 745235M81 | Government Facilities Revenue Bonds, Series R | 7/1/2028 | 8/24/2011 |
| 745235M99 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2022 | 8/24/2011 |
| 745235N23 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2023 | 8/24/2011 |
| 745235N31 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2024 | 8/24/2011 |
| 745235N49 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2025 | 8/24/2011 |
| 745235N56 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2026 | 8/24/2011 |
| 745235N64 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2027 | 8/24/2011 |
| 745235N72 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2028 | 8/24/2011 |
| 745235N80 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2029 | 8/24/2011 |
| 745235N98 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2030 | 8/24/2011 |
| 745235P21 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2031 | 8/24/2011 |
| 745235P39 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2032 | 8/24/2011 |

EXECUTION COPY

**PBA Bonds**

| CUSIP | Series | Maturity | Issuance |
|-------|--------|----------|----------|
| 745235P47 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2033 | 8/24/2011 |
| 745235P54 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2034 | 8/24/2011 |
| 745235P88 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2036 | 8/24/2011 |
| 745235P62 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2039 | 8/24/2011 |
| 745235P70 | Government Facilities Revenue Ref. Bonds, Series S | 7/1/2041 | 8/24/2011 |
| 745235Q20 | Government Facilities Revenue Bonds, Series T | 7/1/2030 | 12/22/2011 |
| 745235R52 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2016 | 6/21/2012 |
| 745235R60 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2017 | 6/21/2012 |
| 745235R78 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2018 | 6/21/2012 |
| 745235R86 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2019 | 6/21/2012 |
| 745235S69 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2019 | 6/21/2012 |
| 745235R94 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2020 | 6/21/2012 |
| 745235S28 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2021 | 6/21/2012 |
| 745235S36 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2022 | 6/21/2012 |
| 745235S44 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2023 | 6/21/2012 |
| 745235R37 | Government Facilities Revenue Ref. Bonds, Series U | 7/1/2042 | 6/21/2012 |

109132810v14

# **EXHIBIT E**

LIST OF INVALIDITY ACTIONS

EXECUTION COPY

## Invalidity Actions

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Jefferies LLC, Adv. Proc. No. 19-00281

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. BNY Mellon/POP Sec, Adv. Proc. No. 19-00282

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. First Southwest Co., Adv. Proc. No. 19-00283

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1E-59E , Adv. Proc. No. 19-00284

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1A-100A, Adv. Proc. No. 19-00285

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1B-100B, Adv. Proc. No. 19-00286

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1C-53C, Adv. Proc. No. 19-00287

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1D-73D, Adv. Proc. No. 19-00288

EXECUTION COPY

# **EXHIBIT F**

FORM OF JOINDER AGREEMENT

EXECUTION COPY

## FORM OF JOINDER AGREEMENT

JOINDER AGREEMENT TO THE PLAN SUPPORT AGREEMENT (modified from time to time, the "**PSA**" as amended, supplemented or otherwise), dated as of February 9, 2020, by and among (a) Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**"), as representative of the Commonwealth of Puerto Rico (the "**Commonwealth**"), the Puerto Rico Public Buildings Authority ("**PBA**"), and the Employee Retirement System of the Government of the Commonwealth of Puerto Rico ("**ERS**") (b) holders of GO Bond Claims and/or CW Guarantee Bond Claims, each as defined in the PSA, which may include the advisors or managers who are advising or managing a holder of GO Bond Claims and/or CW Guarantee Bond Claims on behalf of such holders as set forth on Exhibit "A" to the PSA, (together with their respective successors and assigns with respect to transfers made in accordance with the terms hereof, the "**GO Holders**"), (c) holders of PBA Bond Claims, as defined in the PSA, which may include the advisors or managers who are advising or managing a holder of PBA Bond Claims on behalf of such holders as set forth on Exhibit "B" to the PSA (together with their respective successors and assigns with respect to transfers made in accordance with the terms hereof, the "**PBA Holders**" and, collectively, with the GO Holders, the "**Initial PSA Creditors**"), and (d) the other PSA Creditors from time to time party thereto, is executed and delivered by _____ (the "**Joining PSA Creditors**") as of _____ 2020.  Capitalized terms used herein, but not defined herein, shall have the meanings ascribed thereto in the PSA.

1.      Agreement to be Bound.  The Joining PSA Creditor hereby agrees to be bound by all of the terms and provisions of the PSA.  The Joining PSA Creditor shall hereafter be deemed to be a "PSA Creditor," a "Party," a "GO Holder" (if it holds GO Bond Claims and/or CW Guarantee Bond Claims) and a "PBA Holder" (if it holds PBA Bond Claims) for all purposes under the PSA, including, without limitation, and for the avoidance of doubt, with respect to any GO Bond Claims and PBA Bond Claims held by the Joining PSA Creditor as of the date of this Joinder Agreement (other than any GO Bond Claims, CW Guarantee Bond Claims and PBA Bond Claims held in a Qualified Marketmaker capacity).

2.      Representations and Warranties and Covenants.  With respect to the aggregate principal amount of any GO Bond Claims, CW Guarantee Bonds Claims and PBA Bond Claims (without duplication) held by the Joining PSA Creditor, including, without limitation, upon consummation of any pending Transfer of any GO Bond Claims, CW Guarantee Bond Claims and PBA Bond Claims to the Joining PSA Creditor, the Joining PSA Creditor hereby (a) makes, as of the date hereof, the representations and warranties of the "GO Holder" (if it holds GO Bond Claims or the CW Guarantee Bond Claims) set forth in Section 3.5 of the PSA and a "PBA Holder" (if it holds PBA Bond Claims) set forth in Section 3.6 of the PSA and (b) covenants and agrees to perform all of the "Covenants" of the "GO Holder" (if it holds GO Bond Claims or CW Guarantee Bond Claims) set forth in Section 4.5 of the PSA, and a "PBA Holder" (if it holds PBA Bond Claims) set forth in Section 4.6 of the PSA, to each of the other Parties to the PSA.

109132810v14

EXECUTION COPY

3.      <u>Governing Law</u>. Section 8.5 of the PSA is incorporated by reference as if set forth fully herein, except that any references to "Agreement" or "PSA" shall be replaced with references to Joinder Agreement.

4.      <u>Notice of Joinder</u>.  The Joining PSA Creditor agrees to provide a copy of the Joinder Agreement to counsel to the Oversight Board and AAFAF in accordance with Section 4.5 of the PSA (if it holds GO Bond Claims or CW Guarantee Bond Claims), Section 4.6 of the PSA (if it holds PBA Bond Claims), and the notice provisions set forth in Section 8.11 of the PSA.

5.      <u>Acquisition of Non-PSA Bonds</u>.  To the extent that the Joining PSA Creditor (a) as of the date hereof, holds GO Bond Claims, CW Guarantee Bond Claims or PBA Bond Claims not subject to the PSA and/or (b) from and after the date hereof, acquires GO Bond Claims, CW Guarantee Bond Claims or PBA Bond Claims in addition to those GO Bond Claims, CW Guarantee Bond Claims or PBA Bond Claims acquired pursuant to this Joinder Agreement, the Joining PSA Creditor shall, within five (5) calendar days of the date hereof or, to the extent of after-acquired GO Bond Claims, CW Guarantee Bond Claims or PBA Bond Claims, from the date of such subsequent acquisition, deliver to counsel for the Oversight Board, financial information required in accordance with the provisions of  Section 2.2 of the PSA with respect to such GO Bond Claims, CW Guarantee Bond Claims and PBA Bond Claims.

IN WITNESS WHEREOF, the Joining PSA Creditor has caused this Joinder Agreement to be executed as of the date set forth above.

[NAME OF QUALIFIED TRANSFEREE]

By: _____
        Name:
        Title:

Holder of Face Amount of GO Bonds:

Holder of Face Amount of PBA Bonds:

109132810v14

EXECUTION COPY

# **EXHIBIT G**

FORM OF ANNEX AGREEMENT

EXECUTION COPY

## FORM OF ANNEX AGREEMENT

ANNEX AGREEMENT TO THE PLAN SUPPORT AGREEMENT (modified from time to time, the "**PSA**" as amended, supplemented or otherwise), dated as of February 9, 2020, by and among (a) Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**"), as representative of the Commonwealth of Puerto Rico (the "**Commonwealth**") the Puerto Rico Public Buildings Authority ("**PBA**"), and the Employee Retirement System of the Government of the Commonwealth of Puerto Rico ("**ERS**"), (b) holders of GO Bond Claims and/or CW Guarantee Bond Claims, each as defined in the PSA, which may include the advisors or managers who are advising or managing a holder of GO Bond Claims and/or CW Guarantee Bond Claims on behalf of such holders as set forth on Exhibit "A" to the PSA, (together with their respective successors and assigns with respect to transfers made in accordance with the terms hereof, the "**GO Holders**"),  (c) holders of PBA Bond Claims, as defined in the PSA, which may include the advisors or managers who are advising or managing a holder of PBA Bond Claims on behalf of such holders as set forth on Exhibit "B" to the PSA (together with their respective successors and assigns with respect to transfers made in accordance with the terms hereof, the "**PBA Holders**" and, collectively, with the GO Holders, the "**Initial PSA Creditors**"), and (d) the other PSA Creditors from time to time party thereto, is executed and delivered by _____(the "**Annex PSA Creditor**") as of _____ 2020.  Capitalized terms used herein, but not defined herein, shall have the meanings ascribed thereto in the PSA.

1. <u>Agreement to be Bound</u>.  The Annex PSA Creditor hereby agrees to be bound by all of the terms and provisions of the PSA.  The Annex PSA Creditor shall hereafter be deemed to be a "PSA Creditor," a "Party," a "GO Holder" (if it holds GO Bond Claims and/or CW Guarantee Bond Claims) and a "PBA Holder" (if it holds PBA Bond Claims) for all purposes under the PSA, including, without limitation, and for the avoidance of doubt, with respect to any GO Bond Claims and PBA Bond Claims held by the Annex PSA Creditor as of the date of this Annex Agreement (other than any GO Bond Claims, CW Guarantee Bond Claims and PBA Bond Claims held in a Qualified Marketmaker capacity).

2. <u>Representations and Warranties and Covenants</u>.  With respect to the aggregate principal amount of any GO Bond Claims, CW Guarantee Bonds Claims and PBA Bond Claims (without duplication) held by the Annex PSA Creditor, the Annex PSA Creditor hereby (a) makes, as of the date hereof, the representations and warranties of the "GO Holder" (if it holds GO Bond Claims or the CW Guarantee Bond Claims) set forth in Section 3.5 of the PSA and a "PBA Holder" (if it holds PBA Bond Claims) set forth in Section 3.6 of the PSA and (b) covenants and agrees to perform all of the "Covenants" of the "GO Holder" (if it holds GO Bond Claims or CW Guarantee Bond Claims) set forth in Section 4.5 of the PSA, and a "PBA Holder" (if it holds PBA Bond Claims) set forth in Section 4.6 of the PSA, to each of the other Parties to the PSA.

3. <u>Governing Law</u>. Section 8.5 of the PSA is incorporated by reference as if set forth fully herein, except that any references to "Agreement" or "PSA" shall be replaced with references to Annex Agreement.

109132810v14

**EXECUTION COPY**

4.      <u>Notice of Annex</u>.  The Annex PSA Creditor agrees to provide a copy of this Annex Agreement to counsel to the Oversight Board and in accordance with the notice provisions set forth in Section 8.11 of the PSA; <u>provided</u>, <u>however</u>, that, except with respect to counsel to the Oversight Board, the Annex PSA Creditor may delete the face amount of GO Bonds and PBA Bonds set forth below.

5.      <u>Rejection of Annex Agreement</u>.  Notwithstanding the execution and delivery of this Annex Agreement to counsel to the Oversight Board, the Oversight Board may, in its sole and absolute discretion, determine not to accept such Annex Agreement and, in such event, (a) the Oversight Board shall provide written notice of such determination to the Annex PSA Creditor within fifteen (15) Business Days of receipt of the Annex Agreement and (b) the Annex PSA Creditor shall have no rights or entitlements pursuant to the PSA including, without limitation, rights to receive a PSA Restriction Fee.

IN WITNESS WHEREOF, the Annex PSA Creditor has caused this Annex Agreement to be executed as of the date set forth above.

[NAME OF ANNEX PSA CREDITOR]

By: _____
       Name: _____
       Title: _____
       Address: _____
                _____
                _____

Holder of Face Amount of GO Bonds:

Holder of Face Amount of PBA Bonds:

109132810v14

# **EXHIBIT H**

LIST OF LIEN CHALLENGE ACTIONS

109132810v14

## Lien Challenge Actions

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Autonomy Master Fund Ltd., Adv. Proc. No. 19-00291

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Cooperativa de Ahorro t Credito de Rincon, Adv. Proc. No. 19-00292

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Ortiz de la Renta, Adv. Proc. No. 19-00293

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Martinez Sanchez, Adv. Proc. No. 19-00294

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Valdivieso, Adv. Proc. No. 19-00295

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Friedman, Adv. Proc. No. 19-00296

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Blackrock Fin. Mgmt., Adv. Proc. No. 19-00297

109132810v14

# **EXHIBIT I**

SETTLEMENT SUMMARY

**EXECUTION COPY**

## SUMMARY OF KEY ECONOMIC TERMS:

| TERM | DESCRIPTION |
|---|---|
| **Total Nominal Consideration** | <ul><li>$14,478 million<ul><li>$3,809 million of Cash</li><li>$10,669 million of New Bonds</li></ul></li></ul> |
| **New Bonds Structure** | <ul><li>50% GO ($5,334 million)</li><li>50% COFINA Jr. ($5,335 million)</li></ul> |
| **Call Option** | <ul><li>Call Schedule:<ul><li>July 1, 2030 to June 30, 2031: 103</li><li>July 1, 2031 to June 30, 2032: 102</li><li>July 1, 2032 to June 30, 2033: 101</li><li>July 1, 2033 onwards: 100</li></ul></li></ul> |
| **Nominal Consideration to GO / PBA / CW Guarantee Bond Claims** | <ul><li>$13,951 million<ul><li>$3,809 million of Cash</li><li>$10,142 million of New Bonds (50% GO / 50% COFINA Jr.)</li></ul></li></ul> |
| **Deemed Issuance Date** | <ul><li>3/1/2020</li></ul> |
| **Discounts For Post-Vintage GO Bonds** | <ul><li>2011 (Series D / E / PIB): 0.85%</li><li>2011 (Series C): 2.00%</li><li>2012: 5.00%</li><li>2014: 10.00%</li></ul> |

108

109132810v14

EXECUTION COPY

| TERM | DESCRIPTION |
|---|---|
| GO Recovery Cap[1] | <ul><li>Pre-2011: 74.874%</li><li>2011 (Series D / E / PIB): 73.800%</li><li>2011 (Series C): 70.401%</li><li>2012: 69.887%</li><li>2014: 68.000%</li></ul> |
| PBA Recovery Cap[2] | <ul><li>Pre-2011: 77.582%</li><li>2011: 76.810%</li><li>2012: 72.217%</li></ul> |
| Tax-Exempt / Taxable Status | <ul><li>In the event the Government Parties obtain a Favorable Determination from the IRS regarding the ratio of taxable bonds prior to the Effective Date, the taxable bonds determined to be tax-exempt will have a lower coupon by 50bps or 37.5 bps for GO and COFINA Jr. bonds, respectively.</li><li>If a Favorable Determination occurs subsequent to the Effective Date, the affected taxable bonds will be invited to exchange their bonds for converted bonds reflecting a yield of 25bps lower (similar mechanism to the prior exchange of COFINA Bonds in the summer of 2019).</li></ul> |

---

[1]  PSA Restriction Fees and Consummation Costs are not included in calculations of the GO Recovery Cap. References to 2012 and 2014 bonds (including in connection with Section 8.2 of the Agreement) also refer to CW Bond Guarantee Claims (including 2015 claims) that do not result from PBA Bond Claims.

[2]  PSA Restriction Fees and Consummation Costs are not included in calculations of the PBA Recovery Cap.

109132810v14

EXECUTION COPY

| TERM | DESCRIPTION |
|---|---|
| **Taxable Bond Waterfall** | <ul><li><u>First:</u> Puerto Rico Investors who elect to receive a taxable bond distribution</li><li><u>Second:</u> Pro rata to all GO / PBA / CW Guarantee Bond Claim (without duplication) holders</li></ul> |
| **GO / PBA / CW Guarantee Bond Claim**<br><br>**Treatment of OID[3]** | <ul><li>Class-level distributions made ratably according to claim including accrued interest to the relevant filing date and unmatured OID ("Par Claim")</li><li>Allocation within classes made ratably according to claim including accrued interest to the relevant filing date and excluding unmatured OID ("Accreted Claim")</li></ul> |
| **PBA Settlement** | <ul><li>$1,073 million of cash</li><li>PBA claim at the Commonwealth calculated as par <u>plus</u> accrued to the PBA petition date <u>less</u> the PBA Settlement amount</li></ul> |
| **Distribution Mechanics** | <ul><li>PBA Settlement distributed ratably among PBA classes according to Par Claim</li><li>Nominal Consideration to GO / PBA <u>less</u> PBA Settlement <u>less</u> PSA Restriction Fee and Consummation Costs distributed ratably among GO /PBA / CW Guarantee Bond Claim classes according to Par Claim, subject to the applicable discount by class</li><li>Discount Savings redistributed ratably among GO / PBA / CW Guarantee Bond Claim classes according to Par Claim, subject to the applicable recovery caps</li><li>Recovery Cap Savings redistributed ratably among GO / PBA / CW Guarantee Bond Claim classes according to Par Claim, subject to the applicable recovery cap</li></ul> |

---

[3] For the avoidance of doubt, capital appreciation bonds ("CABS") are accreted to the relevant petition date in all distributions.

109132810v14

EXECUTION COPY

| TERM | DESCRIPTION |
|------|-------------|
|      | ▪ Allocations within classes made according to Accreted Claim |

**EXECUTION COPY**

## PRINCIPAL AND COUPON SUMMARY:

*($ in USD)*

| | GO | | | | | | COFINA Jr. | | | | | |
| | Tax-Exempt | | | Taxable | | | Tax-Exempt | | | Taxable | | |
| Date | Maturity | Amort | Coupon | Maturity | Amort | Coupon | Maturity | Amort | Coupon | Maturity | Amort | Coupon |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/1/20 | | $551,600,000 | | | | | | $287,625,000 | | | | |
| 7/1/21 | 891,320,000 | 339,720,000 | 5.750% | | | | 424,925,000 | 137,300,000 | 5.000% | | | |
| 7/1/22 | | 325,360,000 | | | | | | 159,870,000 | | | | |
| 7/1/23 | 634,195,000 | 308,835,000 | 5.750% | | | | 344,070,000 | 184,200,000 | 5.000% | | | |
| 7/1/24 | | 289,945,000 | | | | | | 210,395,000 | | | | |
| 7/1/25 | 558,445,000 | 268,500,000 | 5.750% | | | | 448,975,000 | 238,580,000 | 5.000% | | | |
| 7/1/26 | | 244,300,000 | | | | | | 268,885,000 | | | | |
| 7/1/27 | 461,425,000 | 217,125,000 | 5.750% | | | | 570,320,000 | 301,435,000 | 5.000% | | | |
| 7/1/28 | | 186,730,000 | | | | | | 336,380,000 | | | | |
| 7/1/29 | 359,795,000 | 173,065,000 | 5.750% | | | | 690,060,000 | 353,680,000 | 5.000% | | | |
| 7/1/30 | | 183,020,000 | | | | | | 346,490,000 | | | | |
| 7/1/31 | | 193,995,000 | | | | | | 337,065,000 | | | | |
| 7/1/32 | | 205,640,000 | | | | | | 326,170,000 | | | | |
| 7/1/33 | 800,635,000 | 217,980,000 | 6.000% | | | | 1,323,405,000 | 313,680,000 | 4.750% | | | |
| 7/1/34 | | 139,575,000 | | | 91,480,000 | | | 205,680,000 | | | 93,795,000 | |
| 7/1/35 | | 147,430,000 | | | 97,995,000 | | | 185,435,000 | | | 99,540,000 | |
| 7/1/36 | | 156,355,000 | | | 104,980,000 | | | 162,355,000 | | | 105,640,000 | |
| 7/1/37 | | 165,865,000 | | | 112,460,000 | | | 136,815,000 | | | 112,110,000 | |
| 7/1/38 | | 176,010,000 | | | 120,470,000 | | | 108,635,000 | | | 118,975,000 | |
| 7/1/39 | 972,040,000 | 186,805,000 | 5.625% | 656,440,000 | 129,055,000 | 7.125% | 876,535,000 | 77,615,000 | 4.875% | 656,325,000 | 126,265,000 | 6.125% |
| **Total** | **$4,677,855,000** | **$4,677,855,000** | | **$656,440,000** | **$656,440,000** | | **$4,678,290,000** | **$4,678,290,000** | | **$656,325,000** | **$656,325,000** | |

112

109132810v14

EXECUTION COPY

## CONSIDERATION AND RECOVERY SUMMARY:[4]

| Class | Claim | Consideration | Recovery |
|---|---|---|---|
| Pre-2011 GO | $5,842,761,317.99 | $4,374,709,109.23 | 74.874% |
| 2011 GO (D / E / PIB) | 645,673,111.48 | 476,506,756.27 | 73.800% |
| 2011 GO (C) | 476,425,522.88 | 335,408,332.36 | 70.401% |
| 2012 GO | 2,938,901,920.90 | 2,053,910,385.46 | 69.887% |
| 2014 GO | 4,181,991,996.95 | 2,733,283,331.61 | 65.358% |
| Pre-2011 PBA | 2,661,239,877.05 | 2,064,643,121.42 | 77.582% |
| 2011 PBA | 1,335,422,892.78 | 1,025,738,323.94 | 76.810% |
| 2012 PBA | 674,308,470.06 | 486,965,347.82 | 72.217% |

---

[4] Consideration and Recovery figures set forth below do not include PSA Restriction Fees and Consummation Costs.

109132810v14