UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |

**RESPONSE OF FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO
AMENDED REPORT AND RECOMMENDATION OF MEDIATION TEAM**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1
RESPONSE.................................................................................................................................. 2
     I.     The GO, PBA, and PRIFA BAN Litigations Should Be Stayed, Including Certain Recently Filed Motions and Objections......................................................................2
     II.    The Amended Report's Proposals Provide a Path for Resolution of Gating Issues in the Revenue Bond Litigation. ...................................................................................7
     III.   The Parties Should Continue Litigation Pursuant to the ERS Scheduling Order. ........10
     IV.   The Amended Report's Proposed Calendar for Confirmation Is Appropriate. ...........10
CONCLUSION........................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Hewlett-Packard Co. v. Berg*,
   61 F.3d 101 (1st Cir. 1995) ................................................................................................... 4

*LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning)*,
   212 F.3d 632 (1st Cir. 2000) ................................................................................................. 4

*Ramos-Martir v. Astra Merck, Inc.*,
   No. Civ. 05-2038(PG), 2005 WL 3088372 (D.P.R. Nov. 17, 2005) ..................................... 4

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), on its own behalf and as sole representative, pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] of the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System for the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, and ERS, the "Debtors") hereby submits this response (the "Response") to the *Amended Report and Recommendation of the Mediation Team* (the "Amended Report")[3] [ECF No. 10756]. In support of this Response, the Oversight Board respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Oversight Board thoroughly supports the positions taken by the Mediation Team in the Amended Report, and recognizes the progress made among the parties—including the agreement achieved regarding the New PSA, with the current support of creditors holding in excess of $9.9 billion of GO/PBA claims—which would not have been possible without the Mediation Team's facilitation of procedural and substantive discussions during the last several months. Further, the Oversight Board is appreciative of the Amended Report's proposal of a pathway for the Commonwealth to procure a confirmed plan of adjustment in calendar year 2020, by efficiently teeing up issues critical to the determination of whether the proposed plan of adjustment is confirmable.

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Amended Report.

2. The Oversight Board files this Response to make limited observations regarding the Amended Report and to emphasize certain points made therein. In addition, while substantially supportive of the procedures and schedules set forth in the Amended Report, the Oversight Board proposes below certain minor changes to those schedules. In the Oversight Board's view, such changes, which relate to (*i*) ensuring several additional motions are stayed in light of their connection to the proposed compromise and settlement in the New PSA and the upcoming plan of adjustment, and (*ii*) the motion practice anticipated pursuant to Federal Rule of Civil Procedure ("FRCP") 12 in the Revenue Bond Adversary Proceedings, will allow the parties to focus on the resolution of critical gating issues in advance of a disclosure statement hearing and, ultimately, confirmation of an amended plan of adjustment for the Commonwealth.

## RESPONSE

**I.   The GO, PBA, and PRIFA BAN Litigations Should Be Stayed, Including Certain Recently Filed Motions and Objections.**

3. The Oversight Board fully supports the Amended Report's recommendation that the Court stay litigation the proposed plan settles. The Amended Report recommends—and the Oversight Board agrees—the Court should set aside all deadlines set forth in the Interim GO/PBA Order that occur after the March 4, 2020 hearing on the Amended Report and stay the Claim Objections (as defined in the Interim GO/PBA Order), the GO Lien Challenges (as defined in the Interim GO/PBA Order), the omnibus claim objection filed by the LCDC (the "LCDC Claim Objection"), the miscellaneous debt limit claim objection filed by the UCC (the "Miscellaneous Debt Limit Objection," and together with the Claim Objections, the GO Lien Challenges, and the LCDC Claim Objection, the "GO/PBA/PRIFA BAN Litigations"). Pursuing any of these proceedings at this time would needlessly waste judicial and party resources and impede the path to building a broader consensus and confirmation of the Amended Plan.

4. The Interim GO/PBA Order sets forth a schedule for litigating (*i*) the validity of certain challenged series of GO and PBA bonds, and (*ii*) the secured or unsecured status of claims on GO and PBA bonds. Interim Report at 4-5. Each of the GO/PBA/PRIFA BAN Litigations addresses aspects of these two issues. But, a critical component of the Amended Plan is a global compromise and settlement of all issues in dispute among all GO/PBA bondholders, holders of PRIFA BANs, the Oversight Board, the Commonwealth of Puerto Rico, and PBA—including a settlement of the validity and secured status of GO and PBA bonds. Amended Report at 8. The merits of a stay of those proceedings is self-evident. Moreover, any stay order entered with respect to the GO/PBA/PRIFA BAN Litigations should encompass any and all recent pleadings filed in any of the GO/PBA/PRIFA BAN Litigations, including the *Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corp. to Dismiss Adversary Complaint*, Adv. Proc. No. 19-291, and the *Motion of Individual Bondholder to Dismiss Complaints*, Adv. Proc. No. 19-292. A complete list of all adversary proceedings and contested matters relating to the GO/PBA/PRIFA BAN Litigations that the Oversight Board submits should be stayed is attached hereto as Exhibit A.[4]

5. In light of the global compromise and settlement proposed in the Amended Plan, the Oversight Board agrees with the Amended Report's recommendation that continued prosecution of the GO/PBA/PRIFA BAN Litigations would be counterproductive, and a stay is appropriate. As the Amended Report observes, staying the GO/PBA/PRIFA BAN Litigations while the Oversight Board pursues confirmation of the Amended Plan would avoid unnecessarily

---

[4] In addition to the adversary proceedings and contested matters identified in Exhibit A, the Oversight Board further supports the Mediation Team's recommendations regarding other proceedings subject to the *Order Regarding Stay Period and Mandatory Mediation* [ECF No. 8244], as set forth in Appendix A to the *[Proposed] Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* [ECF No. 10756-2].

3

consuming the resources of the parties and this Court. *See Hewlett-Packard Co. v. Berg*, 61 F.3d 101, 105 (1st Cir. 1995); *Ramos-Martir v. Astra Merck, Inc.*, No. Civ. 05-2038(PG), 2005 WL 3088372, at *1 (D.P.R. Nov. 17, 2005) ("A properly granted stay operates as an invaluable tool to conserve party and judicial resources…."). Numerous courts, including this one, have recognized the benefit of such a stay of litigation in promoting settlement. *See, e.g.*, *Official Comm. of Unsecured Creditors of Commonwealth of P.R. v. Whyte*, Adv. Proc. No. 17-00257 [ECF No. 492] (granting stay of issuance of decision in light of imminent settlement); [ECF NO. 544] (terminating, without prejudice, cross-motions for summary judgment); *In re Financial Oversight and Management Board for Puerto Rico*, Case No. 17-bk-4780 [ECF No. 1230] (granting motion to stay deadlines set in connection with certain monoline insurers' request to lift the automatic stay to appoint a receiver for PREPA in light of request to approve a settlement pursuant to Bankruptcy Rule 9019); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning)*, 212 F.3d 632, 635 (1st Cir. 2000) (citing, inter alia, 9 Collier on Bankruptcy ¶ 9019.01, at 9019-2 (15th ed 1995)) (noting preference for settlements in bankruptcy cases).

6. If the parties' settlements were approved and the Amended Plan confirmed, there will be no need for the parties to litigate, or for this Court to consider, the issues raised by the GO/PBA/PRIFA BAN Litigations. Neither the parties nor the Court should be required to expend time and valuable resources on the GO/PBA/PRIFA BAN Litigations while the Oversight Board works to build further consensus to help confirm an Amended Plan that would settle those very litigations. Equally important, if the GO/PBA/PRIFA BAN Litigations are allowed to move forward, a changing litigation landscape risks unraveling the hard fought settlement the Amended Plan represents. Without a stay, the PSA Parties, each of whom has made the decision to compromise and settle its claims, will be forced to take positions that run contrary to the

4

compromise and settlement to which they have agreed. Moreover, intervening litigation events may upset the delicate balance that has enabled the PSA Parties to enter into the New PSA in the first place, forcing the parties to resort to time-consuming and expensive litigation rather than pursuing confirmation of the Amended Plan. Indeed, no litigation touching upon the issues raised in the settlement should go forward. With the real prospect of settlement and a confirmed plan on the horizon, no party should be allowed to derail the opportunity for this prospect to succeed. Simply put, no individual claimholders' position should be permitted to hold the settlement hostage. Any other result would defeat the very purpose of allowing broader consensus to build and providing an expeditious exit from Title III.

7. For the same reasons, the Oversight Board supports the Mediation Team's proposal to stay the recently filed UCC Priority Objection (as defined in the Amended Report), and the motion seeking approval of procedures for the UCC Priority Objection (the "UCC Procedures Motion"). *See* Amended Report at 10 n.9. The UCC Priority Objection and the UCC Procedures Motion, like the GO/PBA/PRIFA BAN Litigations, seek to litigate issues settled by the Amended Plan. Requiring the parties to continue to litigate these matters would be counterproductive.

8. Indeed, this Court recently set aside a claim objection filed by the UCC in PREPA's Title III case under similar circumstances. There, the UCC filed an objection to a proof of claim filed by PREPA's bond trustee on behalf of holders of PREPA bonds, asserting that PREPA's bond trustee held, at most, a perfected security interest in only certain accounts. But, because the Oversight Board, in conjunction with both PREPA and AAFAF, sought to settle that very issue in their motion to approve a settlement with certain bondholders and monoline insurers pursuant to Bankruptcy Rule 9019, the Court terminated the UCC's objection without prejudice to its renewal following resolution of the 9019 motion. *See Memorandum Order Terminating Objection of*

5

*Official Committee of Unsecured Creditors to Proof of Claim Number 18499 Filed by U.S. Bank National Association, in Its Capacity as Trustee for Non-Recourse PREPA Bonds*, Case No. 17-04780-LTS [ECF No. 1855]. In reaching this conclusion, the Court held that "[a] requirement that the Court resolve claim objections prior to approving a settlement would undermine the important policy of promoting settlements in bankruptcy proceedings by requiring the parties to litigate the very issues that the settlement seeks to resolve." *Id.* at 6.

9. The same holds true here. The issues raised by the UCC Priority Objection and the related UCC Procedures Motion—that is, the priority of GO bonds, as well as related alleged property rights of GO claimholders—will be settled in the forthcoming Amended Plan as per the parties' agreement in the New PSA. Staying the UCC Priority Objection, including all briefing relating to the procedures therefor, as well as other pending motions to dismiss concerning lien challenges and claim objections, until approval of the proposed settlement and confirmation of the Amended Plan is considered the most efficient use of the parties' and the Court's time, and allows broader consensus to build—exactly as the Amended Report provides.

10. While a stay of the UCC Priority Objection may result in additional issues for resolution at confirmation of an Amended Plan, that possibility alone does not bar the requested stay. Indeed, the Amended Report recognizes the Amended Plan may not resolve all issues in their entirety, and thus provides procedures for addressing additional matters—such as issues related to non-PRIFA BAN claims, or the UCC's objection to certain GDB claims—following confirmation. To the extent any issues raised by the UCC Priority Objection are not finally resolved by the Amended Plan, the UCC can seek to reinstate its stayed motions following confirmation—if they remain relevant.

6

**II.  The Amended Report's Proposals Provide a Path for Resolution of Gating Issues in the Revenue Bond Litigation.**

11. The Oversight Board supports the Mediation Team's proposed schedule for "the filing of narrowly tailored motions for partial summary judgment in the relevant Revenue Bond Adversary Proceedings." Amended Report at 13. As the Oversight Board previously explained, a merits-based resolution of certain threshold issues is critical to the parties' ability to seek confirmation of a plan of adjustment on behalf of the Commonwealth.[5] Accordingly, the Oversight Board is in agreement with the Mediation Team that merits rulings on the specified issues listed in the Amended Report by means of partial summary judgment motions "will assist the parties in understanding this Court's view of their respective rights, if any," and *such an understanding is critical for the confirmation process*. Amended Report at 12 n.14.[6]

12. The Oversight Board also supports the Mediation Team's goal of obtaining merits-based rulings on the specific issues identified in the Amended Report (at 15) expeditiously and well in advance of the Disclosure Statement hearing proposed for June 3, 2020 (if the Court approves the schedule). To this end, the Oversight Board recognizes the protocol for resolution of

---

[5] *See, e.g.*, *Response of Financial Oversight and Management Board to (A) Objection of Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, Ambac Assurance Corporation, and Financial Guaranty Insurance Company to (I) Response of the Financial Oversight and Management Board for Puerto Rico to Interim Report and Recommendation of the Mediation Team (ECF No. 9493), as Incorporated in (II) Interim Case Management Order for Revenue Bonds (ECF No. 9620), and (B) Limited Response of Official Committee of Unsecured Creditors to Interim Case Management Order for Revenue Bonds* [ECF No. 10424], ¶ 1 (describing "the effectiveness, scope, and perfection of the alleged security interest or other property interests in Commonwealth revenues by the Monolines" as a key gating issue "present[ing a] material impediment[] to further consensual restructuring agreements and to confirmation of the pending proposed plan of adjustment").

[6] Of course, as the Amended Report further acknowledges, if certain key gating issues are resolved in the context of the currently pending Lift Stay Motions, one or more of the summary judgment motions may become moot. *See* Amended Report at 15.

7

the Lift Stay Motions outlined in the Amended Interim Revenue Bonds Order (and carried forward in the Amended Report's Proposed Final Case Management Order for Revenue Bonds, *see* Amended Report Ex. 1 at 4-5)—even as modified by the Court's Order dated February 14, 2020, adjourning the preliminary hearing on the Lift Stay Motions to April 2, 2020—is one possible way to obtain rulings on the merits of these issues. However, should the Lift Stay Motions not resolve some or all of those issues on the merits, or should impediments arise to the expeditious resolution of the Lift Stay Motions, the Oversight Board submits the schedule for partial summary judgment briefing in the Amended Report provides an alternative pathway for achieving that outcome.

13. Moreover, the Oversight Board agrees with the Amended Report's selection of counts to be briefed in partial summary judgment motions. *See* Proposed Final Case Management Order on Revenue Bonds at 7-8; *see also* Amended Report at 15. These counts overlap with the gating issues identified in the Amended Interim Revenue Bonds Order – namely, the defendants' claimed security or other property interests in Commonwealth assets historically appropriated to HTA, CCDA and PRIFA (colloquially referred to as "clawback revenues").

14. The Amended Report raises as an additional gating issue whether the defendants in the Revenue Bond Adversary Proceedings have "any allowed unsecured claim against the Commonwealth relating to . . . withheld revenues." *Id.* at 12. In order to address that question, at least preliminarily, the Amended Report includes discrete counts seeking disallowance of claims predicated on claims of violations of the Contract Clause of the Commonwealth and U.S. Constitutions (the "<u>Contract Clause</u>") for resolution by summary judgment. *Id.* at 15. There are numerous counts in the Revenue Bond Adversary Proceedings, in addition to the counts relating to claims premised on violations of the Contract Clause, addressing whether the defendants hold unsecured claims. However, the Oversight Board supports limiting summary judgment briefing

8

on the defendants' alleged unsecured claims to the Contract Clause-related counts at this time, which might obviate the need to litigate claims regarding non-dischargeability at confirmation. Including all other counts addressing the question of whether the defendants hold unsecured claims against the Commonwealth would unduly burden the Court and the parties and be detrimental to the goal of obtaining a merits-based decision on critical gating issues expeditiously and efficiently. After the Court decides the summary judgment motions contemplated in the Amended Report (if they are not otherwise resolved through the Lift Stay Motions), the parties can meet and confer regarding how to handle or resolve some or all of the remaining counts in the Revenue Bond Adversary Proceedings.[7]

15. Although the Amended Report provides a schedule for summary judgment briefing on the designated counts in the Revenue Bond Adversary Proceedings, it also maintains the same schedule it previously proposed regarding FRCP 12(b) and 12(c) motion practice. *See* Proposed Final Case Management Order on Revenue Bonds at 5-6. The Oversight Board believes those dual tracks are necessary because it is unclear what, or even when, rulings will be issued on the Lift Stay Motions, and when discovery on the limited gating issues directed by the Court will conclude. In fact, it may be that whatever discovery is permitted regarding the Lift Stay Motions will facilitate prompt resolution of the partial summary judgment motions on the currently anticipated schedule in the Amended Report. Accordingly, the Oversight Board recommends that the Court add to the scheduling order regarding revenue bonds that, after rulings are issued on the gating issues in the Lift Stay Motions (assuming they precede any rulings on the 12(b) or summary

---

[7] Possible options to be addressed during such a meet and confer could include discussions regarding (*i*) triaging the remaining counts prior to confirmation, (*ii*) folding the remaining counts into a forthcoming confirmation hearing, or (*iii*) using the Court's rulings as a further basis to reach a broader consensus on plan of adjustment treatments.

judgment motions), the parties should meet and confer as to whether Rule 12 motion practice and summary judgment motions on the Revenue Bond Adversary Proceedings should both be available, and what further discovery, if any, should be authorized, with the Court to resolve any disputes arising out of such conferences.

### III. The Parties Should Continue Litigation Pursuant to the ERS Scheduling Order.

16. The Oversight Board agrees with the Amended Report's proposal to proceed with the litigation contemplated in the ERS Scheduling Order. *See* Amended Report at 4, 11. To that end, the Oversight Board is in the process of complying with the ERS Scheduling Order's meet-and-confer obligations triggered by the recent decision issued by the First Circuit in Case Nos. 19-1699 and 19-1700 regarding ERS bondholders' security interests. *Id.* at 4.

### IV. The Amended Report's Proposed Calendar for Confirmation Is Appropriate.

17. The Oversight Board also supports the proposed calendar set forth by the Mediation Team for hearings on the Amended Disclosure Statement and the Amended Plan and the filing of objections and discovery related thereto (with one possible modification of the balloting deadline, from September 29 to September 18). The Oversight Board is already working to comply with this schedule, as evidenced by its recent filing in which it adopted the Amended Report's schedule up to and including a hearing on confirmation of the Amended Plan. *See Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (i) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (ii) Establishing the Deadline for Filing Spanish Translation of the Disclosure Statement, (iii) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, and (iv) Granting Related Relief* [ECF No. 10808].

## **CONCLUSION**

18. The Oversight reaffirms its support for the Amended Report and its recommended path forward. The above suggested edits are minor in nature and designed only to increase efficiencies, conservation of resources, and the best chance at achieving a broader consensus for the Plan—and to allow the Commonwealth to exit Title III.

*[Remainder of Page Intentionally Left Blank]*

Dated: February 21, 2020
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García Benítez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com
Email: carla.garcia@oneillborges.com

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Michael T. Mervis (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Chantel L. Febus (*pro hac vice*)
Julia D. Alonzo (*pro hac vice*)
Laura Stafford (*pro hac vice*)

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
Email: brosen@proskauer.com
Email: tmungovan@proskauer.com
Email: cfebus@proskauer.com
Email: jalonzo@proskauer.com
Email: lstafford@proskauer.com

Michael A. Firestein (*pro hac vice*)
Lary A. Rappaport (*pro hac vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 557-2900
Fax: (310) 557-2193
Email: mfirestein@proskauer.com
Email: lrappaport@proskauer.com

*Attorneys for the Financial Oversight and*

12

*Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority, the Employees Retirement System for the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer