# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>   Debtors.[1] | PROMESA<br><br>Title III<br><br>Case No. 17 BK 3283 (LTS)<br><br>(Jointly Administered) |

## OBJECTION OF ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, AMBAC ASSURANCE CORPORATION AND FINANCIAL GUARANTY INSURANCE COMPANY TO AMENDED REPORT AND RECOMMENDATION OF THE MEDIATION TEAM (ECF NO. 10756)

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID:  3481); (ii)  Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID:  3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No.  17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID:  3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID:  3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................5

ARGUMENT ..............................................................................................................6

I.    THE AMENDED REPORT'S PROPOSED SCHEDULE FOR THE REVENUE
BOND ADVERSARY PROCEEDINGS CURTAILS OBJECTORS' DUE
PROCESS RIGHTS.............................................................................................6

        A.    Early-Stage, Ultra-Expedited Summary Judgment Motions Are
Premature And Will Merely Spawn Unnecessary Litigation ...................10

        B.    The Proposed Revenue Bonds Order Is Unrealistic And Extreme ............15

II.    THE COURT LACKS ANY BASIS TO RESTRICT OBJECTORS' RIGHTS
UNDER SECTION 926 .....................................................................................16

III.    ANY FILING OF A PLAN OR DISCLOSURE STATEMENT IS
PREMATURE, AND THE COURT SHOULD NOT SET A SCHEDULE FOR A
DISCLOSURE STATEMENT HEARING ........................................................18

IV.    THE COURT SHOULD NOT DENY THE PRIFA 2004 MOTION...............................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>CASES:</u>

<u>BlueTarp Fin., Inc. v. Eastern Materials Corp.</u>,
    592 F. Supp. 2d 188 (D. Me. 2009) .............................................................................12

<u>Bobbett v. City of Portsmouth</u>,
    2018 WL 3079705 (D.N.H. June 21, 2018) ...................................................................13

<u>Commonwealth Aluminum Corp. v. Markowitz</u>,
    164 F.R.D. 117, 121 (D. Mass. 1995) ..........................................................................13

<u>Eastern Contractors Inc v. City of Worcester</u>,
    2005 WL 8175850 (D. Mass. Dec. 21, 2005) ...............................................................10

<u>Grella v. Salem Five Cent Sav. Bank</u>,
    42 F.3d 26 (1st Cir. 1994) ...............................................................................................7

<u>In re Bibhu LLC</u>,
    2019 WL 171550 (Bankr. S.D.N.Y. Jan. 10, 2019) ......................................................20

<u>In re DBSI, Inc.</u>,
    Case No. 08-12687 (Bankr. D.Del. Oct. 26, 2010) .......................................................17

<u>In re Int'l Diamond Exchange Jewelers, Inc.</u>,
    177 B.R. 265 (Bankr. S.D. Ohio) .................................................................................10

<u>In re MPF Holding US LLC</u>,
    Case No. 08-36084 (Bankr. S.D.Tex. June 14, 2010) ...................................................17

<u>In re PHC Inc. S'holder Litig.</u>,
    762 F.3d 138 (1st Cir. 2014) .....................................................................11, 12, 13, 14

<u>In re 2435 Plainfield Ave., Inc.</u>,
    223 B.R. 440, 456 (Bankr. D.N.J. 1998) ......................................................................21

<u>In re Sams</u>,
    106 B.R. 485 (Bankr. S.D. Ohio 1989) ..........................................................................9

<u>In re Toys "R" Us, Inc.</u>,
    Case No. 17-34665 (Bankr. E.D.Va. Dec. 17, 2018) ....................................................17

<u>Nelson v. Adams USA, Inc.</u>,
    529 U.S. 460 (2000) ........................................................................................................9

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriquena, Inc.,
    326 F.R.D. 363 (D.P.R. 2018) ........................................................................9

Reid v. State of NH,
    56 F.3d 332 (1st Cir. 1994) .........................................................................11

Resolution Tr. Corp. v. N.  Bridge Assocs, Inc.,
    22 F.3d 1198 (1st Cir. 1994) ...................................................................12, 13

SEC v. Elliott,
    953 F.2d 1560 (11th Cir. 1992) ..................................................................10

Turner v. Experian Information Solutions, Inc.,
    2013 WL 3995166, At *5 (D. Me. Aug. 5, 2013) ..........................................13

Watkins v. Monroe,
    2019 WL 1869864, AT *1 (E.D. Tex. Mar. 27, 2019) ....................................11

## STATUTES AND OTHER AUTHORITIES:

11 U.S.C. § 926(a) .......................................................................................17

11 U.S.C. § 1125(a)(1) .................................................................................19

Fed. R. Civ. P. 56(d) ...................................................................................11

Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured"),
National Public Finance Guarantee Corporation ("National"), Ambac Assurance Corporation
("Ambac"), and Financial Guaranty Insurance Company ("FGIC") (collectively, "Objectors")
hereby submit this objection (the "Objection") to the Amended Report and Recommendation of
the Mediation Team (ECF No. 10756, the "Amended Report"),[2] and respectfully state as follows:

## **PRELIMINARY STATEMENT**

1.      In its July 24, 2019 stay order (ECF No. 8244, the "Stay Order"), this Court
provided the Mediation Team with two important tasks.  On the procedural level, the Court tasked
the Mediation Team with "facilitating the filing of **agreed or substantially agreed** scheduling
order(s)" with respect to the various contested matters and adversary proceedings subject to the
Stay Order and, as appropriate, with respect to the "approval of a disclosure statement and/or
confirmation of [a] plan of adjustment."   Stay Order ¶ A.3 (emphasis added).   On a substantive
level, the Court tasked the Mediation Team with "commenc[ing] substantive mediation" on "issues
relating to the confirmation of a plan of adjustment," seemingly with the goal of arriving at a
consensual or largely consensual plan.  Stay Order ¶ C.  The Court set October 28, 2019 as the
deadline for the Mediation Team to complete at least the procedural aspect of its mission.

2.      After a number of deadline extensions and the filing of an "Interim Report"
(ECF No. 9365) not initially contemplated under the Stay Order, the Mediation Team on
February 10, 2020 delivered an Amended Report that fails to accomplish either of the assigned
tasks.  On the procedural level, whereas the Interim Report had proposed scheduling orders that
were in fact largely "agreed," with only a few open or disputed issues, the Amended Report now

---

[2]   Unless otherwise indicated, references to ECF numbers in this Objection refer to the docket in Case
No. 17-3283-LTS.  Capitalized terms not defined in this Objection shall have the meanings ascribed to them
in the Amended Report, in the *Amended Interim Case Management Order For Revenue Bonds* (ECF No.
10595), or in the Lift Stay Motions, as applicable.

makes new scheduling proposals that entirely upend the largely consensual process already commenced under the existing interim scheduling orders.  These new scheduling proposals are in no sense "agreed," as contemplated by the Stay Order, and, as detailed below, are both substantively and procedurally problematic.

3.      On the substantive front, in place of any consensual or largely consensual plan of adjustment, the Mediation Team has recommended that the Court move forward with a hearing on an as-yet-unfiled disclosure statement that, if approved, the Mediation Team admits will result in a "contested" confirmation hearing that will require "10 or more trial days." Amended Report at 23.  The Mediation Team also adopts FOMB's proposed schedule for a disclosure statement hearing, to which Objectors have already objected.  See ECF No. 11095.

4.      The failure of the Mediation Team to produce either agreed scheduling orders or a consensual plan of adjustment can be attributed to the same basic defect in the mediation process to date:  As the Mediation Team admits in the Amended Report, it included only "certain parties" in crucial phases of the mediation—necessarily meaning that it *excluded* other parties.  Amended Report at 8.  It should not be difficult for the Court to infer which "certain parties" the Mediation Team included and which it excluded, based on which parties have agreed to support FOMB's yet-to-be-filed plan, and which parties oppose both the plan itself and the unjust procedures the Amended Report proposes as a means to force the plan on them without their consent.  It is, indeed, stunning that the sole accomplishment of the Commonwealth mediation process is a PSA with a small group of low-basis vulture hedge funds, who seek to turn a quick profit at the expense of monoline insurers, retail bondholders, and other Puerto Rico stakeholders with a longer-term interest in the island's future.  The result is a reallocation of value away from par holders, who were systematically excluded from mediation and negotiations, all for the sake of expediency and at the cost of sustainability and fundamental fairness.

5.      The scheduling proposals reflected in the Amended Report represent a dramatic about face from the existing scheduling orders—which were the product of countless hours of negotiations and court-ordered mediation during a prolonged stay of litigation— Mediation Team recommendations to this Court, court hearings, and thoughtful modifications already made by this Court after significant discussion at the January 29 omnibus hearing. The Mediation Team's changes are atypical; at odds with this Court's recent modifications, common practice, and procedure; and, at bottom, fundamentally inconsistent with due process.  Several proposals cross the line from scheduling to substantive proposals that would drive outcomes, contrary to established precedent and accepted practice.   Further, under these proposals, substantive rights in the billions of dollars would be litigated and decided in a hailstorm of abbreviated deadlines across multiple fronts, all without basic discovery.  For that reason alone, the new scheduling proposals in the Amended Report should be rejected.

6.      The abrupt change of course reflected in the Amended Report purportedly aims to confirm a Commonwealth plan before the next election this fall.  But the current Governor of Puerto Rico does not even support the new plan, making it unclear why either the Mediation Team or FOMB believes the plan could be confirmed under the current administration, much less why they think there is any particular urgency to holding a confirmation hearing before the election.   As reflected in the very notice (attached hereto as "Exhibit A") in which AAFAF announced FOMB's entry into the current plan support agreement ("PSA"), "**The Government of Puerto Rico is not a party to the PSA and does not support it on its current terms.**"  Ex. A (emphasis added).  Indeed, AAFAF has already filed an objection to the Amended Report stating that "**the elected government of Puerto Rico does not support a plan based on the PSA.**"  ECF No. 11159 ¶ 1 (emphasis added).  AAFAF also notes that the plan would require legislation, for which the FOMB does not have adequate support.  Id.  The changes to the existing schedule

proposed in the Amended Report thus send the Court and the parties down a twisted, unworkable, unfair, and procedurally flawed path to nowhere.

7.     Objectors object to the Amended Report and the relief requested therein in its entirety.

8.     In particular, with respect to the proposed "Final Revenue Bonds Scheduling Order" (ECF No. 10756-1, the "Proposed Revenue Bonds Order") attached as Exhibit 1 to the Amended Report, and as set forth in greater detail below, Objectors first object to the Amended Report's proposal to permit "Limited Summary Judgment Motion Practice" before Objectors have even been permitted to pursue and obtain determinations on motions to dismiss or conduct basic discovery in connection with any remaining claims in the Revenue Bond Adversary Proceedings. Second, Objectors object to the Amended Report's proposal to curtail Objectors' right to file a motion for appointment of a trustee pursuant to Section 926(a) of the Bankruptcy Code (a "926 Motion") to pursue HTA's avoidance claims against the Commonwealth.  There is no statutory basis to impose such a restriction on Objectors' right to file a 926 Motion to address the clear conflict of interest inherent in FOMB's simultaneous representation of HTA and the Commonwealth, and such a restriction would violate Objectors' statutory and due process rights.

9.     Third, Objectors specifically object to the Amended Report's proposed schedule for a disclosure statement hearing ("Disclosure Statement Schedule").  The setting of such a Disclosure Statement Schedule is premature until crucial gating issues related to Objectors' rights under the Revenue Bonds (as defined below) have been resolved.

10.     Fourth, Objectors Assured, Ambac, and FGIC specifically object to the Amended Report's proposal to deny, without prejudice, Ambac's Motion for Entry of an Order Authorizing Discovery under Bankruptcy Rule 2004 Concerning PRIFA Rum Taxes (the "PRIFA 2004 Motion") "in light of discovery being undertaken in connection with lift stay motion and

pending adversary proceeding."[3]  See ECF No. 10756 at 18.  Contrary to the Mediation Team's assertion, the PRIFA 2004 Motion seeks information distinct from and broader than the "limited discovery" into certain specific topics the Court has authorized on the Lift Stay Motions.  See ECF No. 11057 at 2.  Allowing the PRIFA-specific Rule 2004 discovery to proceed in tandem with the already pending cash and assets Rule 2004 discovery would allow the parties to avoid needless duplication of efforts.[4]

11.     In light of these objections, the Court should reject the scheduling proposals set forth in the Amended Report and related proposed orders, and instead should reaffirm the existing scheduling orders (preferably while also staying the Revenue Bond Adversary Proceedings as previously requested at ECF No. 10251 ¶¶ 38-41).

## BACKGROUND

12.     Objectors are creditors of the Commonwealth of Puerto Rico and its public corporations with over $10 billion of claims arising from the securities issued by numerous Puerto Rico public entities, including, as relevant here, several or all of the following: (i) general obligation bonds ("GO Bonds") issued by the Commonwealth of Puerto Rico; (ii) bonds issued by the PBA and guaranteed by the Commonwealth; and (iii) secured special revenue bonds issued by (a) the Puerto Rico Highways and Transportation Authority ("HTA"), (b) the Puerto Rico Infrastructure Financing Authority ("PRIFA"), and (c) the Puerto Rico Convention Center District Authority ("CCDA").

---

[3] Objector National is not a PRIFA creditor and therefore takes no position on this issue.

[4]    In addition, Objectors all object to the Mediation Team's proposed stay of the GO/PBA litigation.  See Amended Report at 9-10.  Because Objectors' grounds for objecting to the stay of the GO/PBA litigation differ somewhat, however, certain Objectors may address this aspect of their objection to the Amended Report through separate, supplemental filings.

13.     Objectors collectively insure approximately $2.9 billion gross par of bonds issued by Debtor HTA ("HTA Bonds").  Assured, Ambac, and FGIC collectively insure or hold approximately $829 million gross par of bonds issued by PRIFA ("PRIFA Bonds").  Assured, Ambac, and FGIC collectively insure approximately $349 million gross par of bonds issued by CCDA ("CCDA Bonds", and together with HTA Bonds and PRIFA Bonds, the "Revenue Bonds").

14.     For a procedural history, Objectors respectfully refer the Court to the previous Orders, Interim Orders, Extension Orders, motions, objections, and hearings related to the scheduling and sequencing of issues identified in the Stay Order.

## ARGUMENT

I.   **The Amended Report's Proposed Schedule For The Revenue Bond Adversary Proceedings Curtails Objectors' Due Process Rights**

15.     As an initial matter, Objectors object to the Amended Report's proposal to permit "Limited Summary Judgment Motion Practice" in the context of the Revenue Bond Adversary Proceedings.  More generally, Objectors object to the Amended Report's continued—and unnecessary—insistence on pushing forward with the Revenue Bond Adversary Proceedings when, at this point, all the actual litigants appear to agree that the Lift Stay Motions can provide an adequate (and in Objectors' view, superior) litigation vehicle.

16.     Prior to the January 29, 2020 omnibus hearing, Objectors' understanding, based on court filings up to that time, was that Objectors and FOMB fundamentally disagreed about the appropriate litigation vehicle for addressing Revenue Bond issues.  Objectors viewed (and continue to view) the Lift Stay Motions as the only viable litigation vehicle in light of the limitations that Section 305 of PROMESA might place on Objectors' due process rights in the context of an adversary proceeding in the Title III Court.  See ECF No. 10251 ¶¶ 42-47.  By

contrast, FOMB—except in the case of PRIFA—appeared to prefer the Revenue Bond Adversary

Proceedings as a litigation vehicle.  See id. ¶ 3.

17.     At the January 29 omnibus hearing, FOMB acknowledged that, although

the Revenue Bond Adversary Proceedings remained its "preferred manner to obtain merits-based

rulings, . . . **the lift stay could serve as an alternative**."  Hearing Tr., January 29, 2020, at 133:18-

21 (emphasis added).  Admittedly, Objectors and FOMB may continue to disagree about the legal

significance of a ruling on the Lift Stay Motions.  It is clear to Objectors—based on First Circuit

precedent—that a ruling on the Lift Stay Motions will not "involve a full adjudication on the merits

of claims, defenses, or counterclaims, but simply a determination as to whether [Objectors have]

a *colorable claim* to property of the [Debtors]."  Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26,

32 (1st Cir. 1994). Accordingly, in Objectors' view, any final merits determinations with respect

to Objectors' property interests would need to be made in the context of the enforcement actions

commenced in a non–Title III forum following a grant of stay relief rather than in connection with

the Lift Stay Motions themselves.  To the extent Objectors and FOMB disagree about the import

of a ruling on the Lift Stay Motions, however, that issue can be addressed by this Court or the

appellate courts in due course.

18.     If stay relief is granted, Objectors will be commencing enforcement actions

with respect to the HTA, PRIFA, and CCDA Bonds in another forum. Those enforcement actions

will raise many of the same issues as—and therefore be largely duplicative of—the Revenue Bond

Adversary Proceedings, except that they will be conducted in a forum where Section 305 of

PROMESA does not apply and where due process can therefore be achieved.  Accordingly,

Objectors renew their previous request (see ECF No. 10251 ¶¶ 38-41) that the Revenue Bond

Adversary Proceedings be stayed pending resolution of the Lift Stay Motions.[5]   FOMB has
previously acknowledged that "the two separate briefing tracks" that have resulted from the
simultaneous prosecution of the Lift Stay Motions and the Revenue Bond Adversary Proceedings
are "**unnecessary, wasteful, burdensome, and a drain on available resources of the Debtors
and the parties filing the Lift Stay Motions, in addition to the Court.**"  See ECF No. 9493 ¶ 10
(emphasis added).

19.     In addition to Objectors' fundamental objection to being required to
participate at all in the Revenue Bond Adversary Proceedings in light of the limitations that Section
305 places on their due process rights in the Title III Court, Objectors agree that the Revenue Bond
Adversary Proceedings have to date been a major distraction and have wasted resources that could
have been put to better use on briefing and conducting discovery for the Lift Stay Motions.  The
Court and all parties would be best served—and the burden on the Court and all parties
significantly lessened—if they were permitted to focus their attention entirely on the Lift Stay
Motions in the near term.  To that end, the Adversary Proceedings should be stayed at least until
the Lift Stay Motions have been resolved and clarity has been achieved as to whether (and when)
Objectors will be permitted to commence enforcement actions in another forum.

20.     Even if the Court determines not to stay the Adversary Proceedings, the
Court should, at a minimum, refrain from artificially *accelerating* those Adversary Proceedings—
beyond what the Federal Rules of Civil Procedure and due process allow—by authorizing the
premature "Limited Summary Judgment Motion Practice" proposed in the Amended Report.  See

---

[5] FOMB appeared to indicate at the January 29 hearing that it was "agnostic" as to whether the Revenue
Bond Adversary Proceedings should be stayed.  See Hearing Tr., January 29, 2020, at 137:15-21 ("What
[Objectors] have come in and suggested is that **they want the adversaries to be stayed**.  If the Court is
prepared to make some kind of determination relative to the gating issues [at the preliminary hearing], in
conjunction with the accumulation of briefing material that the Court will have, **we are agnostic to the
notion of which process is necessary to get there . . . .**") (emphasis added).

ECF No. 10756-1 ¶ 2. Under the existing Revenue Bonds Order, answers or Rule 12 motions are due in the Adversary Proceedings by February 27, 2020. See ECF No. 10595 ¶ 2. The Proposed Revenue Bonds Order imposes an additional expedited summary judgment motion schedule on eight claims (the "Eight Claims") that the Amended Report plucks out of the larger factual, legal, and procedural context of the Adversary Proceedings. See Amended Report at p. 15. Practically speaking, this would mean that the Eight Claims would be briefed for summary judgment before any motions to dismiss are decided; before answers, affirmative defenses, and counterclaims are served; and before any discovery on the remaining claims takes place. This is plainly contrary to the Federal Rules of Civil Procedure as adopted by the Bankruptcy Rules and PROMESA,[6] and contrary to Objectors' due process rights.

21.     It is axiomatic that "the Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees." Nelson v. Adams USA, Inc., 529 U.S. 460, 465-466 (2000). "Parties named as litigants in existing actions are entitled to be heard, to conduct discovery, and to present a defense within the confines of the Federal Rules of Civil Procedure." See P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc., 326 F.R.D. 363, 365 (D.P.R. 2018). Where case management orders do not comport with the Federal Rules—as would be the case with the Proposed Revenue Bonds Order—they violate the constitutional guarantee of due process. Id.

22.     Furthermore, numerous courts have recognized that "[t]he entry of summary judgment is always subject to the requirements of due process concerning notice and an opportunity to be heard, the opportunity for discovery and the exercise of the court's discretion concerning the full presentation of evidence." In re Sams, 106 B.R. 485, 491 (Bankr. S.D. Ohio

---

[6] See PROMESA § 310 ("The Federal Rules of Bankruptcy Procedure shall apply to a case under this title and to all civil proceedings arising in or related to cases under this title.").

1989); see also In re Int'l Diamond Exchange Jewelers, Inc., 177 B.R. 265, 268 (Bankr. S.D. Ohio)

(same).  The Proposed Revenue Bonds Order's prioritization of "[s]ummary judgment proceedings

[is therefore] inappropriate," because under the Proposed Revenue Bonds Order Objectors "would

be deprived of a full and fair opportunity to present their claims and defenses."   SEC v. Elliott,

953 F.2d 1560, 1567 (11th Cir. 1992).

23.     Forcing Objectors to respond and cross-move for summary judgment prior

to obtaining a determination of their expected motions to dismiss prejudices their rights to *first* test

the factual and legal sufficiency of the complaints by filing motions to dismiss and to *then* interpose

counterclaims, answer the allegations, set forth affirmative defenses, and conduct discovery.  The

Proposed Revenue Bonds Order therefore denies Objectors "a full and fair opportunity to develop

the record before deciding whether to grant a motion for summary judgment." Eastern Contractors

Inc v. City of Worcester, 2005 WL 8175850, at *1 (D. Mass. Dec. 21, 2005).  On this basis alone,

the Proposed Revenue Bonds Order should be rejected.

A.     **Early-Stage, Ultra-Expedited Summary Judgment Motions Are Premature
And Will Merely Spawn Unnecessary Litigation**

24.     At this early point in the Revenue Bond Adversary Proceedings, Objectors

have not yet had the opportunity to exercise their *right*, under the Federal Rules, to file motions to

dismiss (and receive determinations as to what claims remain).  The Proposed Revenue Bonds

Order trivializes the motions to dismiss by moving forward with immediate summary judgment

without their resolution.  Worse, the Proposed Revenue Bonds Order contemplates motions for

summary judgment on multiple counts in the Revenue Bond Complaints at the earliest possible

stage—i.e., before the filing of answers (including affirmative defenses and counterclaims) and

without any discovery.  The Proposed Revenue Bonds Order's proposal to immediately commence

summary judgment motion practice is thus both premature and prejudicial to Objectors.

25.     Moreover, early summary judgment would be a fruitless exercise and a waste of judicial and party resources.  For starters, a party moving for summary judgment before the filing of an answer or discovery faces heightened standards.  It is axiomatic that the court "must not grant a summary judgment upon motion therefor[e] tendered before the service of an answer, unless in the situation presented, it appears to a certainty that no answer which the adverse party might properly serve could present a genuine issue of fact."  E.g., Watkins v. Monroe, No. 18-cv-347, 2019 WL 1869864, at *1 (E.D. Tex. Mar. 27, 2019).  And the threshold to deem a fact material at the pre-answer, pre-discovery stage is low.  See In re PHC Inc. S'holder Litig., 762 F.3d 138, 145 (1st Cir. 2014).  The proponents of early summary judgment have not shed light on how the applicable standards would be satisfied for any of the selected counts.  Nor has FOMB or anyone else explained how a movant could overcome Rule 56(d).  Under that provision,

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment, then the district] court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).[7]

26.     The First Circuit has explained that Rule 56(d) "provides a safety valve for claimants genuinely in need of further time to marshal facts, essential to justify their opposition to a summary judgment motion."  Reid v. New Hampshire, 56 F.3d 332, 341 (1st Cir. 1994); In re PHC, 762 F.3d at 143 (explaining that Rule 56(d) "serves a valuable purpose . . . [by] protect[ing] a litigant who justifiably needs additional time to respond in an effective manner to a summary

---

[7] Although the Amended Report recognizes that parties to the Revenue Bond Adversary Proceedings are permitted to respond to summary judgment motions by seeking relief under Fed. R. Civ. P. 56(d), ECF No. 10756 at 16 n.19, the proposed timetable for summary judgment motions does not account for relief under Rule 56(d) or the time for any necessary discovery.  This is yet another flaw in the proposed schedule that Objectors oppose.

judgment motion"). Where there is an inadequate opportunity for discovery, Rule 56(d) "offers a safeguard against judges swinging the judgment axe too hastily." BlueTarp Fin., Inc. v. E. Materials Corp., 592 F. Supp. 2d 188, 189 (D. Me. 2009).

27.    Rule 56(d) requires the party seeking relief to (i) show "good cause for the failure to have discovered the facts sooner; (ii) set forth a plausible basis for believing that specific facts probably exist; and (iii) indicat[e] how the emergent facts . . . will influence the outcome of the pending summary judgment motion." In re PHC, 762 F.3d at 143. The First Circuit has summarized these requirements as follows: "authoritativeness, timeliness, good cause, utility, and materiality." Id. (quoting Resolution Tr. Corp. v. N. Bridge Assocs, Inc., 22 F.3d 1198, 1203 (1st Cir. 1994)). The proponents of early summary judgment fail to explain how these standards could not easily be met. The following illustrates the significant hurdle proponents of pre-answer/discovery summary judgment must overcome to justify a change in the schedule:

- **Authoritativeness:** If forced to do so over this Objection, Objectors would submit an "authoritative" affidavit that is "signed by a person who possesses firsthand knowledge and who is competent to address the specifics of the matters discussed." Resolution Tr., 22 F.3d at 1204.

- **Timeliness:** If forced to do so over this Objection, Objectors will also timely identify topics on which discovery is needed related to the Eight Claims and the Revenue Bond Adversary Proceedings more generally. Indeed, in the related but more limited context of the Lift Stay Motions, Objectors have been unflaggingly diligent in seeking timely discovery. After the Court issued its *Interim Case Management Order for Revenue Bonds* (ECF No. 9620) on December 19, 2019, which appeared to contemplate that no discovery would take place until after a ruling on any Rule 12(b) and Rule 12(c) motions in the Revenue Bond Adversary Proceedings (id. at ¶ 2), Objectors promptly filed an objection to the Interim Revenue Bonds Order on January 21, 2020. See ECF No. 10251 ¶¶ 48-54. Notably, Objectors devoted an entire section of their January 21 submission to outlining their request for reasonable discovery in connection with the Lift Stay Motions, to the extent they were able to identify such discovery

needs prior to the filing of FOMB's oppositions to the Lift Stay Motions.[8] Objectors similarly argued to this Court at the January 29 omnibus hearing about their need for critical discovery. Once FOMB filed its oppositions to the Lift Stay Motions on February 3, Objectors timely filed informal discovery requests on FOMB and AAFAF, and when FOMB and AAFAF took significant time in responding to the requested discovery (and objecting to such discovery), Objectors promptly filed a motion to compel discovery. See ECF No. 10974. In sum, Objectors have been diligent in their discovery requests with respect to the Lift Stay Motions, and "in no respect slept on their rights." Turner v. Experian Information Solutions, Inc., 2013 WL 3995166, at *5 (D. Me. Aug. 5, 2013) (granting Rule 56(d) motion). Objectors would be similarly timely and diligent in seeking discovery in the Revenue Bond Adversary Proceedings. Resolution Tr., 22 F.3d at 1204 ("a party must invoke Rule [56(d)] within a reasonable time following receipt of a motion for summary judgment"). Here, if forced to comply with the Proposed Revenue Bonds Order, Objectors would proceed promptly with a Rule 56(d) motion.

- **Utility:** If forced to do so over this Objection, Objectors will be able to demonstrate that "specific facts . . . probably exist" (In re PHC, 762 F.3d at 142) that would raise issues of material fact with respect to the Eight Claims. The identified facts will constitute a "plausible basis for a belief that discoverable materials exist that would likely suffice to raise a genuine issue of material fact and, thus, defeat summary judgment." Commonwealth Aluminum Corp. v. Markowitz, 164 F.R.D. 117, 121 (D. Mass. 1995). While debtors may assert that the existing issues are pure issues of law, they said the same thing with respect to the Lift Stay Motions. The court, however, ruled that material facts were at issue, that discovery was necessary, and that the hearing date had to be moved to accommodate such discovery. See ECF No. 11057.

- **Good Cause:** If forced to do so over this Objection, Objectors will be able to make a showing of "good cause" as to why they had an "inability to [] discover[] or marshall[] the necessary facts earlier in the proceedings." In re PHC, 762 F.3d at 144. Here, it is undisputed that, under the terms of the existing Revenue Bonds Order, Objectors have to date been denied the opportunity to take any discovery in the Revenue Bond Adversary Proceedings, including with respect to the Eight Claims. See id. at 144 ("when the parties have no opportunity for discovery, denying the Rule 56[d] motion and ruling on a summary judgment motion is likely to be an abuse of discretion"); Bobbett v. City of Portsmouth, 2018 WL 3079705, at

---

[8] As Objectors anticipated, FOMB's oppositions to the Lift Stay Motions subsequently raised additional factual and therefore discovery issues beyond those that Objectors were able to identify in their January 21 submission. See ECF No. 10251 ¶ 51 n. 14 (reserving the right to "articulate additional discovery requests once [Objectors] receive notice of the basis, if any, on which FOMB or other parties intend to oppose the Lift Stay Motions").

*2-3 (D.N.H. June 21, 2018) (granting request for discovery based on plaintiff's Rule 56 proffer which demonstrated that a majority of discovery requests were outstanding when defendants made their motions for summary judgment).

- **Materiality:**  Finally, if forced to do so over this Objection, Objectors will be able to demonstrate the materiality of the facts they seek to discover. Significantly, regarding this last factor, the First Circuit has held that "evaluating the potential significance of unknown facts in regard to unadjudicated issues is something of a metaphysical exercise.  The threshold of materiality at this stage of a case is necessarily low."  In re PHC, 762 F.3d at 145.  When evaluating the facts set forth by Objectors in light of the low standard, Objectors will easily be able to "set forth enough to indicate that they *may* conceivably be able to make out a triable issue."  Id. (emphasis added).  But, again, experience with the Lift Stay Motions strongly suggests that material facts will be in issue.

28.    As each of the Eight Claims turns on material factual issues, Objectors would be entitled to the "safety valve" protections of Rule 56(d), particularly given the low threshold of materiality under the rule.  For example, the FOMB attacks the property interests of HTA and Objectors in the Excise Taxes, alleging that the Puerto Rico Constitution authorized the Commonwealth to "retain" the Excise Taxes.  ECF No. 10100 ¶¶ 127, 185–86.  Their challenge to Objectors' Contract Clause claim is partly based on similar grounds.  See id. ¶¶ 142–147.  This argument raises material factual questions, including whether the conditions precedent to the exercise of the "clawback" power were satisfied.  In this respect, Objectors would need discovery into the nature, scope, and amount of other available resources, as well as similar information about government expenditures.  The FOMB also contends that Objectors lack secured claims against the Commonwealth because bondholders' security interests and liens attach only to Excise Taxes "received" by HTA.  Id. ¶ 43.  This argument requires a factual inquiry into whether HTA is in fact "receiving" the Excise Taxes, including, via transfer to accounts held for HTA's benefit. Likewise, FOMB's challenge to Objectors' equitable interests in the Excise Taxes raises factual questions about the manner in which the proceeds of the Excise Taxes are held (including whether

-14-

the funds are segregated or commingled), the type of accounts at issue, transfer instructions, amounts held or transferred, and use of the funds. These examples, by no means exhaustive, are just a small sample of factual issues implicated by the Eight Claims, which Objectors would be entitled to probe under Rule 56(d).

29.     Because Objectors will be able to satisfy the requirements of Section 56(d) with respect to the Eight Claims, the summary judgment motion practice proposed in the Amended Report will not result in the swift resolution of Revenue Bond issues envisioned in the Amended Report. Instead, it will result, at best, in additional, unnecessary motion practice (on top of the Lift Stay Motions and the motions to dismiss already provided for in the Revenue Bonds Order) and an additional, likely contested discovery process (in addition to the discovery process that is already underway with respect to the Lift Stay Motions). Given the additional burden that the summary judgment practice proposed in the Amended Report will impose on the Court and the parties, its incompatibility with the Federal Rules of Civil Procedure and due process, and the fact that all parties appear to agree that a viable alternative process is already well underway by order of this Court and making progress in the form of the Lift Stay Motions and related discovery motions, there is no need for the Court to authorize premature summary judgment practice at this early stage of the Revenue Bond Adversary Proceedings. The Court should not adopt this proposal from the Amended Report.

**B.**     <u>**The Proposed Revenue Bonds Order Is Unrealistic And Extreme**</u>

30.     In addition, the schedule proposed in the Amended Report seeks to impose extreme deadlines that are simply unworkable. Given the litigation history to date, Objectors believe that it is unrealistic to coordinate a response to four summary judgment motions in April, a month with two holidays, and in which they will also need to prepare for at least the preliminary hearing on the Lift Stay Motions (scheduled for April 2), and possibly a final hearing.

31.     The notion that a year-end confirmation hearing is critical because of the potential for a new government is false, as the current government does not even support the deal. The reality is that **"The Government of Puerto Rico is not a party to the PSA and does not support it on its current terms."**  Ex. A (emphasis added); see also  ECF No. 11159 ¶ 1 (AAFAF objection to the Amended Report stating that "**the elected government of Puerto Rico does not support a plan based on the PSA.**") (emphasis added).  AAFAF also notes that the plan would require legislation, for which the FOMB does not have adequate support.  Id.  In any event, regardless of what administration is in office following the election this fall, that administration should have more "political capital" available to support a plan immediately following an election victory than a government would have in the period immediately prior to an election (assuming that a plan can be developed that would be deserving of such an administration's support).  And even if there were some urgency imposed by the political calendar, that cannot justify the abrogation of basic procedural and due process rights belonging to the parties that, at least at the moment, oppose confirmation.

## II.     The Court Lacks Any Basis To Restrict Objectors' Rights Under Section 926

32.     The Amended Report is also flawed in that it seeks to set an unduly expedited deadline for Objectors to file a "motion seeking relief addressing [the] continuing conflicts of interest of the FOMB and the Government of Puerto Rico acting for both the Commonwealth and HTA," i.e., a 926 Motion.  See Amended Report at 13-14.  Objectors believe that FOMB is in fact conflicted in purporting to simultaneously represent both the Commonwealth and HTA in connection with the Lift Stay Motions, the Revenue Bond Adversary Proceedings, and eventually a plan and disclosure statement, because the feasibility of the plan FOMB is going to file depends on the assumption that the excise tax revenues pledged to secure the HTA bonds are, instead, property of the Commonwealth.

33.     Given FOMB's failure to take any action to mitigate its conflicts of interest or to pursue avoidance actions on behalf of HTA against the Commonwealth, it may become necessary for Objectors or other HTA creditors to move for appointment of a trustee under Section 926 of the Bankruptcy Code[9] or otherwise challenge the FOMB's conflict of interest.  Section 926 sets no deadline for HTA creditors to make such a request for appointment of a trustee.  Indeed, avoidance actions under Sections 544-550 of the Bankruptcy Code are often pursued by a trustee only *after* a plan is confirmed.[10]  Nonetheless, the Mediation Team proposes that the Court set a deadline requiring a 926 Motion to be filed by the earlier of (i) 14 days after the Court's ruling in connection with the March 5 (now April 2) preliminary hearing on the Lift Stay Motions and (ii) April 22, 2020.

34.     The Lift Stay Motions are still pending, and Objectors do not know yet the scope of the stay relief that might be granted as a result of those motions.  If Objectors obtain the ability, through stay relief, to pursue recovery of HTA, PRIFA, and/or CCDA collateral misappropriated by the Commonwealth, this could lessen the need to pursue the recovery of such assets through avoidance actions brought by a Section 926 trustee.  Objectors should be permitted

---

[9] Section 926 authorizes the Court to "appoint a trustee" to "pursue…cause[s] of action under section 544, 545, 547, 548, 549(a) or 550 of [the Bankruptcy Code]" in the event "the debtor refuses" to pursue such avoidance causes of action.  See 11 U.S.C. § 926(a).

[10] See, e.g., In re Toys "R" Us, Inc., Case No. 17-34665 (Bankr. E.D.Va. Dec. 17, 2018), ECF No. 5979 ¶ 192 (describing transfer of "Avoidance Actions" to "Non-Released Claims Trust" for prosecution following the effective date of the plan); In re MPF Holding US LLC, Case No. 08-36084 (Bankr. S.D.Tex. June 14, 2010), ECF No. 401 ¶ 11 (transferring "all Causes of Action, including . . . any Avoidance Action" to a Litigation Trust as of the Effective Date of the plan); In re DBSI, Inc., Case No. 08-12687 (Bankr. D.Del. Oct. 26, 2010), ECF No. 5924-4 § VI.M(2) (plan provision creating a Litigation Trust to pursue "Estate Causes of Action," including avoidance actions, after Effective Date of the plan).  Similarly, the Commonwealth/ERS/PBA plan of adjustment filed by FOMB on September 27, 2019 (ECF No. 8766-1) purports to establish an "Avoidance Actions Trust" (art. 48.1) to which Debtors the Commonwealth, PBA, and ERS are supposed to transfer their avoidance actions "[o]n the Effective Date" of the plan (art. 48.3).

to determine, based on the nature and scope of the Court's rulings on the Lift Stay Motions,

whether a 926 Motion is needed.

35.     Moreover, a group of ERS bondholders recently brought a motion seeking

appointment of a trustee under Section 926; this Court denied that motion on January 7, 2020, and

the ERS bondholders' appeal from that denial is currently pending before the First Circuit, with

briefing scheduled to close on February 21, 2020 and oral argument scheduled for March 3, 2020.

There are important differences between the HTA case and the ERS case, such that appointment

of a Section 926 trustee would be justified with respect to HTA even if the Court's ERS ruling is

affirmed.  Nonetheless, both the parties and the Court may benefit from the First Circuit's guidance

as to the standards and considerations governing requests for relief under Section 926 before the

parties brief and the Court decides another 926 Motion.  Indeed, in the past this Court has actually

*stayed* proceedings in the Title III Court when it anticipated that a forthcoming decision by the

First Circuit might be "**informative, if not instructive, on important issues**" relevant to the

proceedings in the Title III court.  See Adv. Proc. No. 18-59-LTS, ECF No. 32 at p. 9 (emphasis

added).   By contrast, the Amended Report proposes that the Court actually *accelerate* the

consideration of issues with respect to which the Court may soon receive further guidance from

the First Circuit.  Either the Court should take no position on any 926 Motion deadline or, at a

minimum, set an alternate deadline within a reasonable period of time following the First Circuit's

decision.

## III.   Any Filing Of A Plan Or Disclosure Statement Is Premature, And The Court Should Not Set A Schedule For A Disclosure Statement Hearing

36.     The Amended Report also proposes a schedule for a hearing on a

supposedly forthcoming disclosure statement that has not actually been filed related to a plan of

adjustment that has also not been filed.  As previously indicated by Objectors in their objection

-18-

(ECF No. 11095) to FOMB's scheduling motion (ECF No. 10808) with respect to this as-yet-unfiled disclosure statement, any filing of a plan or disclosure statement now or in the near future would be premature in light of the essential gating issues that need to be resolved before a confirmable plan can be formulated and before a disclosure statement will be able to provide "adequate information" as required by 11 U.S.C. § 1125(b). As the Court knows, Objectors are currently seeking to enforce their rights with respect to the special revenues pledged to secure the Revenue Bonds through prosecution of the Lift Stay Motions. The heart of these litigations is a determination of who has an interest in the funds securing the Revenue Bonds. If FOMB is wrong in its view that it can use these funds for other purposes, as its fiscal plans and forthcoming proposed plan of adjustment purport to dictate, that plan would be dead and have to be materially revised. Thus, it will not be possible for a disclosure statement to provide "adequate information" with respect to Objectors' rights under the Revenue Bonds and the effect of those rights on other creditors' potential recoveries until, at a minimum, the Lift Stay Motions and any resulting enforcement actions have been concluded. Moreover, FOMB itself has acknowledged that the issues raised in its objection (ECF No. 4784) to GO Bond claims based on the debt limit provision of the Puerto Rico constitution constitute "gating issues for the Commonwealth's plan of adjustment process." ECF No. 4784 ¶ 10. Given the unresolved status of these basic gating issues and the resulting inability of any disclosure statement to provide information sufficient to "enable" Revenue Bondholders and others "to make an informed judgment about the plan" (11 U.S.C. § 1125(a)(1)), the Commonwealth's "plan of adjustment process" (ECF No. 4784 ¶ 10) is closer to its beginning than to its end. The Court and all parties should therefore remain focused on resolving the crucial gating issues before embarking on a confirmation process that cannot be completed until the gating issues are resolved, including through prosecution of the Lift Stay Motions and any resulting enforcement actions.

-19-

## IV.    **The Court Should Not Deny The PRIFA 2004 Motion**

37.    Objectors Assured, Ambac, and FGIC object to the Amended Report's proposal that the PRIFA 2004 Motion "be denied without prejudice in light of discovery being undertaken in connection with lift stay motion and pending adversary proceeding."  This proposal improperly conflates the limited lift-stay and adversary-proceeding discovery with the discovery creditors are entitled to under Rule 2004, and would lead to avoidable inefficiencies.[11]

38.    The Court's order on the Lift Stay Motions authorized only "limited discovery" into certain specific factual assertions that FOMB directly put at issue in connection with those motions.  See ECF No. 11057.  While the parties are meeting and conferring regarding the scope of appropriate lift-stay discovery, any limits the Court may have imposed to focus on a limited set of issues in the context of a preliminary hearing on specific Lift Stay Motions should not be applied to other pending discovery requests.

39.    Indeed, this Court has already rejected the argument—which was the basis for FOMB's previous objection to the PRIFA 2004 Motion (ECF No. 7891 § II.A.) and for its motion to strike (ECF No. 9131 ¶ 34)—that pending adversary or other proceedings justify putting off Rule 2004 discovery:

> [No authority] categorically precludes the use of Rule 2004 to gain general information regarding the debtor's financial condition (including information that may assist a creditor in evaluating a pending or anticipated plan proposal, or in formulating a negotiation or litigation strategy) while particular substantial litigation to which the Rule 2004 discovery may also be relevant is pending.

(ECF No. 10332 at 7-8 (collecting cases).).

40.    As this Court has previously stated, Rule 2004 is the proper vehicle to gain general information regarding the debtor's financial condition "at this stage of the Title III proceedings."  Id. at 8-9 (citing In re Bibhu LLC, 2019 WL 171550, at *2 (Bankr. S.D.N.Y. Jan.

---

[11] Objector National is not a PRIFA creditor and therefore takes no position on this issue.

10, 2019)).  Unlike discovery in adversary proceedings and other civil litigation, "[a] Rule 2004 exam has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the exposure of fraudulent conduct."  In re 2435 Plainfield Ave., Inc., 223 B.R. 440, 456 (Bankr. D.N.J. 1998) (collecting cases).

41.    The PRIFA 2004 Motion seeks targeted information about the general financial condition of the debtor, including its continued payment of hundreds of millions of dollars to rum producers.  Specifically, the PRIFA 2004 Motion seeks information regarding (1) the flow of the rum taxes between the U.S. government, the Commonwealth, and PRIFA (Request Nos. 1, 2, 4, and 24), (2) ownership/restricted status of the rum taxes (Request Nos. 3, 5–7, 17, and 25–26), and, critically, (3) documents relating to Puerto Rico's domestic rum producers (Request Nos. 8–16 and 18–23).  All three categories of information are vital to any plan confirmation process—facilitating an understanding of what assets are available to the Commonwealth; what monies could fund distributions in a plan; whether the hundreds of millions of dollars in rum taxes that have been flowing to the rum producers are for essential services, and the economic benefit (if any) Puerto Rico expects to obtain from such services—which are relevant to disputes regarding the resources available for distribution to creditors under a plan.

42.    Contrary to the Mediation Team's suggestion, at most a small slice of this information will be obtained in connection with the pending lift-stay motions or adversary proceedings.[12]  See ECF No. 11057.  Although the parties are still meeting and conferring regarding lift-stay discovery, it is clear that economic questions relevant to the plan, and addressed in the PRIFA 2004 motion, will not be addressed in the lift stay discovery.  The government parties have made clear that they have no intention of providing any information regarding payments to

---

[12] This Court recently identified specific paragraphs in the lift-stay briefing that warranted discovery.  ECF No. 11057.

rum producers, or the justification for the same.  While we believe that some rum producer-related information is directly relevant to the ownership and secured status questions at issue in the lift-stay, most is not.  The PRIFA 2004 Motion is therefore the only avenue for obtaining such critical information.

43.      There is no good reason to delay Rule 2004 discovery further.  The parties are already meeting and conferring in good-faith regarding the Court's direction with respect to the Cash/Assets 2004 Motions.  Integrating the PRIFA-specific 2004 requests into those ongoing negotiations would allow the parties to avoid unnecessary duplication of efforts and to identify areas of overlap that could streamline all avenues of discovery.  The Court should therefore decline to adopt this aspect of the Amended Report's proposal.

## **CONCLUSION**

For the reasons set forth above, the Court should reaffirm the existing scheduling orders (preferably while also staying the Revenue Bond Adversary Proceedings as previously requested at ECF No. 10251 ¶¶ 38-41).

Dated: February 21, 2020
New York, New York

CASELLAS ALCOVER & BURGOS P.S.C.

/s/ Heriberto Burgos Pérez
Heriberto Burgos Pérez
USDC-PR No. 204,809
Ricardo F. Casellas-Sánchez
USDC-PR No. 203,114
Diana Pérez-Seda
USDC–PR No. 232,014
E-mail: hburgos@cabprlaw.com
          rcasellas@cabprlaw.com
          dperez@cabprlaw.com

P.O. Box 364924
San Juan, PR 00936-4924
Tel.: (787) 756-1400
Fax: (787) 756-1401

*Counsel for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.*

CADWALADER, WICKERSHAM & TAFT LLP

/s/ Howard R. Hawkins, Jr.
Howard R. Hawkins, Jr.*
Mark C. Ellenberg*
William Natbony*
Ellen M. Halstead*
Thomas J. Curtin*
Casey J. Servais*
200 Liberty Street
New York, New York 10281
Tel.: (212) 504-6000
Fax: (212) 406-6666
Email: howard.hawkins@cwt.com
          mark.ellenberg@cwt.com
          bill.natbony@cwt.com
          ellen.halstead@cwt.com
          thomas.curtin@cwt.com
          casey.servais@cwt.com

* admitted pro hac vice
*Counsel for Assured Guaranty Corp. and Assured
Guaranty Municipal Corp.*

ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC

_/s/Eric Pérez-Ochoa_
Eric Pérez-Ochoa
USDC-PR No. 206,314
Email:   epo@amgprlaw.com


_/s/ Luis A. Oliver-Fraticelli_
Luis A. Oliver-Fraticelli
USDC-PR No. 209,204
Email:   loliver@amgprlaw.com
208 Ponce de León Ave., Suite 1600
San Juan, PR 00936
Tel.: (787) 756-9000
Fax:  (787) 756-9010

_Attorneys for National Public Finance
Guarantee Corp._

WEIL, GOTSHAL & MANGES LLP

_/s/ Robert S. Berezin_
Jonathan D. Polkes*
Gregory Silbert*
Robert S. Berezin*
Kelly DiBlasi*
Gabriel A. Morgan*
767 Fifth Avenue
New York, NY 10153
Tel.:   (212) 310-8000
Fax:   (212) 310-8007
Email:  jonathan.polkes@weil.com
         gregory.silbert@weil.com
         robert.berezin@weil.com
         kelly.diblasi@weil.com
         gabriel.morgan@weil.com

*admitted _pro hac vice_

_Attorneys for National Public Finance
Guarantee Corp._

FERRAIUOLI LLC

By:/s/ Roberto Cámara-Fuertes
    Roberto Cámara-Fuertes
    USDC-PR No. 219002
    Sonia Colón
    USDC-PR No. 213809
    221 Ponce de Leon Ave., 5th Floor
    San Juan, PR 00917
    Tel.:    (787) 766-7000
    Fax:    (787) 766-7001
    E-mail:  rcamara@ferraiuoli.com
             scolon@ferraiuoli.com

*Attorneys for Ambac Assurance Corporation*

MILBANK LLP

By:/s/ Atara Miller
    Dennis F. Dunne*
    Atara Miller*
    Grant R. Mainland*
    John J. Hughes*
    55 Hudson Yards
    New York, New York 10001
    Tel.:    (212) 530-5000
    Fax:    (212) 530-5219
    Email:  ddunne@milbank.com
            amiller@milbank.com
            gmainland@milbank.com
            jhughes2@milbank.com

*admitted *pro hac vice*

*Attorneys for Ambac Assurance Corporation*

REXACH & PICÓ, CSP

BUTLER SNOW LLP


By: */s/ Maria E. Picó*

María E. Picó
USDC-PR 123214
802 Ave. Fernández Juncos
San Juan PR 00907-4315
Telephone:  (787) 723-8520
Facsimile:   (787) 724-7844
E-mail:        mpico@rexachpico.com

*Attorney for Financial Guaranty
Insurance Company*

By: */s/ Martin A. Sosland*

Martin A. Sosland (*pro hac vice*)
5430 LBJ Freeway, Suite 1200
Dallas, TX 75240
Telephone:  (469) 680-5502
Facsimile:   (469) 680-5501
E-mail:        martin.sosland@butlersnow.com

*\*Admitted pro hac vice in Case No. 17-BK-
03283-LTS and Case No. 17-BK-03567-LTS*

Jason W. Callen
150 3rd Ave., S., Suite 1600
Nashville, TN 37201
Telephone: 615-651-6774
Facsimile:  615-651-6701
Email:        jason.callen@butlersnow.com

*\*Admitted pro hac vice in Case No. 17-BK-
03283-LTS and Case No. 17-BK-03567-LTS*

*Attorneys for Financial Guaranty Insurance
Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed this document electronically with the Clerk of the Court

using the CM/ECF System, which will send notification of such filing to all parties of record in

the captioned case.

At New York, New York, 21st day of February, 2020.

By: <u> /s/ *Howard R. Hawkins, Jr.* </u>
Howard R. Hawkins, Jr.*
\* admitted pro hac vice