# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re*<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## AMBAC ASSURANCE CORPORATION'S SUPPLEMENTAL RESPONSE
## TO THE AMENDED REPORT AND RECOMMENDATION
## <u>OF THE MEDIATION TEAM</u>

Ambac Assurance Corporation ("Ambac") hereby submits this supplemental response to the *Amended Report and Recommendation of the Mediation Team* (Dkt. No. 10756, the "Amended Report").[2] In support hereof,[3] Ambac respectfully states as follows:

1. In addition to the arguments raised in the Monolines' Response, which Ambac wholly endorses and supports, Ambac writes separately to respond to the Mediation Team's proposal regarding challenges to the priority afforded GO bonds under the Amended Plan.

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); ), and (vi) Puerto Rico Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Unless otherwise stated, all capitalized terms used herein are as defined in the Amended Report.

[3] Ambac concurrently is submitting, together with other monoline insurers, a separate response to the Amended Report (the "Monolines' Response").

2. In a stunning about-face from the Interim Report (ECF No. 9365), the Mediation Team now proposes to take litigation concerning the alleged priority of GO bonds off the table entirely until (and perhaps even during) confirmation of the Amended Plan. The Mediation Team proposal would stay not only existing contested matters brought by the FOMB but also any "*not yet filed*" contested matters relating to GO debt, raised by any party. (*See* Amended Report at 9-10 ("any other pending and not yet filed adversary proceedings and contested matters relating to validity, priority, and secured status of the GO/PBA/PRIFA BANs claims be stayed pending a decision on confirmation of the Amended Plan").)

3. If adopted, this proposal would eviscerate the due process rights of parties who wish to challenge the treatment of GO bonds—and it would create an untenable and unrealistic plan confirmation process. The Court should reject this proposal for at least three reasons:

4. ***An Indefinite Stay Would Violate Creditors' Due Process Rights***. Staying all GO priority-related litigation plainly would deprive creditors and interested parties of due process. The Mediation Team's proposal effectively would preclude the Court from hearing *any* challenges that any set of creditors might raise to the treatment of GO bonds. But creditors have a due process right to bring appropriate proceedings raising these issues, and to do so when they may meaningfully be heard. *See Dionne v. Bouley*, 757 F.2d 1344, 1353 (1st Cir. 1985) ("As the Supreme Court has said, it is not enough to provide a party with an opportunity to be heard: the hearing must be provided 'at a meaningful time and in a meaningful manner.'") (citing *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)). Creditors and other interested parties cannot simply be told that the courthouse doors are closed to them—or that any motion, contested matter, or other proceeding they wish to bring will be ignored indefinitely.

5. The relative treatment of creditors raises important and weighty issues on which other creditors have a right to be heard, including, among other things, Rule 3013 motions to address classification issues under the plan and other proceedings seeking declaratory or other relief concerning respective creditors' rights. Adopting the Mediation Team's proposal would send a signal that the Court is entirely unwilling to consider or act on any such issues, before the Court has even seen what issues creditors might raise. Moreover, at the plan confirmation stage—which the Mediation Team did not expressly exempt from its sweeping proposed stay—creditors have the right to argue that the Amended Plan unfairly discriminates against and is not fair and equitable to revenue bond creditors, because it offers more favorable treatment to junior claims (including GO bond claims) than to revenue bond claims. The prejudice to these kinds of arguments that the Mediation Team's proposal would work raises serious due process concerns, which are all the more concerning given that the subject issues cut to the heart of the purported "settlement" undergirding the Amended Plan and therefore the Amended Plan itself.

6. Therefore, to protect the due process rights of creditors and to ensure that the Court makes a decision on key gating issues that affect plan proceedings prior to plan confirmation, all of the GO-related litigation should move forward. There are a number of active GO-related proceedings that bear on the legally permissible bounds of treatment for GO bonds, including, among others, the GO Lien Challenges and Claim Objections. Any settlement by the FOMB of these proceedings, particularly at this early stage, is unreasonable and should not be approved. To the extent that the FOMB relies on the Court's conclusion in its Memorandum Order issued in connection with the Official Committee of Unsecured Creditors' objection to the proof of claim filed by the PREPA bond trustee—that a claim objection need not be heard before a hearing on a

3

motion to approve a Rule 9019 settlement regarding that objection—Ambac notes that it respectfully disagrees with the Court's conclusion. (*See* Case No. 17-bk-4780, ECF No. 1855.)

7. But even if the Court were to approve settlements regarding the GO Lien Challenges and Claim Objections, that would not address unresolved questions regarding the priority of GO bond claims. The Amended Plan effectively grants a priority to GO bond claims by affording them substantially superior treatment as compared to claims that are at least equal, if not superior, in priority. Whether such a priority exists has never been presented to the Court. Indeed, the FOMB has never even challenged the GO creditors' assertion of their priority—and thus any purported settlement regarding priority would necessarily be a sham. The FOMB cannot "settle" a claim it never litigated in the first place.[4]

8. In any event, the FOMB's "settlement" with GO holders does not moot the question of whether GO bonds have a priority, or lessen its importance, because the FOMB's decision to grant GO bonds an effective priority permeates the entirety of the Amended Plan. The decision to give GO bonds an effective priority is not merely a dispute between the FOMB and the GO holders; it is a decision that affects the Commonwealth's entire capital structure and directly affects the rights of revenue bondholders. Staying litigation on this issue would sanction pushing a plan through at the expense of revenue bondholders—without giving them any opportunity to be heard on their objections. And it is important to note that the FOMB's decision to grant GO creditors an effective priority over other claimants is at odds with the FOMB's own prior position that *there*

---

[4] Although the GO Lien Challenges glancingly refer to the word "priority," those adversary proceedings are targeted exclusively at GO bondholders' assertion of a ***lien***, not a priority. Among the various counts in those actions seeking declaratory relief, not one of them seeks a declaration that GO bondholders do not enjoy the priority they have asserted. If anything, the FOMB seems to ***agree*** that GO bondholders have a "payment priority" (whatever that means), such that it is unclear in what sense there is a dispute that is being "settled." *See Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Autonomy Master Fund Ltd.*, Case No. 17-bk-3283 (Dkt. No.6820), at ¶ 2. To state the obvious, GO bondholders' assertion of a priority—and the FOMB's uncritical and self-contradictory adoption of it—requires testing through the crucible of a genuine dispute, not a "settlement" of something that was never called into question.

*are no priorities* under PROMESA other than the administrative expense priority. In the FOMB's own words: "The Commonwealth cannot insert priority claims into Title III." (ECF No. 10611 ¶ 4 (PRIFA Lift-Stay Opposition); ECF No. 10615 ¶ 7 (CCDA Lift-Stay Opposition); ECF No. 10618 ¶ 5 (HTA Lift-Stay Opposition).)

9. The FOMB cannot have it both ways: Either the GO bonds have a priority of some kind, which must be established prior to plan confirmation, or they do not, in which case they should be treated *pari passu* with general unsecured claims of the Commonwealth. The FOMB cannot manufacture a priority out of thin air, without justification, and use its agreement regarding this priority—this "settlement"—as the cornerstone of its plan.

10. Doubtless, the FOMB's response will be that the execution of the New PSA is sufficient reason for this sharp change in course. But it is not at all apparent that the FOMB's recruitment of additional GO creditor support—the only notable change in the parties supporting the New PSA—warrants the erosion of process for creditors challenging the GO priority. Greater support from one constituency does not mean broader support for an entire plan of adjustment. To the contrary, it further confirms how inequitable the Amended Plan will be.

11. **<u>Staying Litigation Until Plan Confirmation Would Make the Confirmation Process Unwieldy and Unworkable.</u>** Even setting aside the due process rights of creditors, deferring any challenges to the treatment of GO bonds until the plan confirmation stage will simply make the plan confirmation process unworkable and unwieldly, making it impossible for the Court to issue reasoned opinions dealing with the huge range of critical constitutional and statutory issues—not to mention bankruptcy-specific confirmation requirements—that the Court will need to resolve.

12. The treatment of GO bonds under any plan will require the Court to reach conclusions about a variety of difficult issues—including Article VI, Section 8 of the Puerto Rico Constitution, the Commonwealth law priorities available under PROMESA (if any), the requirements of plan confirmation under both PROMESA and the Bankruptcy Code, the fair and equitable test, feasibility, novel classification questions presented (some of which are unique to the First Circuit's strict approach to classification), and much more. To try to deal with these myriad issues in a 10-day trial, as the Mediation Team proposes, is simply impossible. If there is to be a contested confirmation process, the Court needs an opportunity to have issues briefed and presented in advance so that the Court can start to form judgments on them and issue rulings, ideally in a manner that allows parties to seek expedited appellate review as appropriate.

13. **_The Schedule Imposed By the Court Should Not Be Outcome Driven._** The Mediation Team's proposal that litigation of any GO-related issues be cut off is plainly a heavy-handed tactic intended to push through a plan of adjustment over the valid objection of the monolines and other revenue bond holders—but this Court cannot allow its litigation schedule to be driven by posturing and gamesmanship. Puerto Rico's emergence from Title III is a key goal, but the Court's focus must be on achieving that goal in a manner consistent with PROMESA's legal requirements and stated purpose—enabling Puerto Rico to regain access to the capital markets. Precluding any consideration of valid challenges to the GO bonds, and in particular the priorities afforded such bonds under PROMESA, if any, favors hedge fund investors looking for a quick profit over monolines, retail bondholders, and other long-term investors in Puerto Rico. This Court has a constitutional and statutory duty to give fair consideration to the legal issues put to the Court for a decision, without tipping the scales in favor of one side or another. The Court

should not endorse a proposal that gives short shrift to important and weighty issues and creates a mad rush to confirmation.

14. In furtherance of the race to confirmation by year-end, the Amended Report urges this Court to address certain substantive issues in its ruling on the pending lift stay motions, based on the misleading assertion that "***the parties' disparate views on these issues have been a handicap to the negotiation*** of the treatment of the so-called 'claw back' claims under a Commonwealth plan of adjustment." (Amended Report 12 (emphasis added).) While Ambac believes that this comment was inappropriate (particularly to the extent it was intended, as it appears to be, to influence this Court's actions), it is particularly wrong here, where Ambac has been not been a party to *any* "negotiation of the treatment of the so-called 'claw back' claims." The FOMB has not engaged substantively with Ambac at all, or otherwise "negotiate[ed]," regarding Ambac's treatment under the plan. Having never held any "negotiation" whatsoever involving Ambac on these issues, there is no basis for speculating that the parties' disparate views would be a handicap to negotiations—let alone asserting that they have been.

15. Ambac respectfully submits that the Amended Plan, and the Mediation Team's recommendations, are the product of a process that has failed to meaningfully engage with all affected parties and seek a broadly consensual resolution. If the FOMB or Mediation Team have determined not to include certain creditors in substantive negotiations over the plan, those creditors must have a full and fair opportunity to have their day in court and to raise and be heard on any issues that affect their legal rights.

16. For the foregoing reasons, the Court should decline the Mediation Team's invitation to stay all GO priority-related litigation and should allow this crucial gating issue to be determined before confirmation proceedings begin. Ambac respectfully submits, as recommended

7

in the Monolines' Response, that the Court should reaffirm the existing scheduling orders, preferably while also staying the Revenue Bond Adversary Proceedings. At a minimum, the Court should modify Exhibit 2 to the Amended Report (the Mediation Team's proposed order) by striking paragraphs 1, 4, 5, and 6, which purport to stay GO-related litigation.

Dated: February 21, 2020
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
           scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne
    Atara Miller
    Grant R. Mainland
    John J. Hughes, III
    (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5770
    Facsimile: (212) 822-5770
    Email: ddunne@milbank.com
           amiller@milbank.com
           gmainland@milbank.com
           jhughes2@milbank.com

***Attorneys for Ambac Assurance Corporation***

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com