# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>Debtors.[1] | PROMESA<br><br>Title III<br><br>Case No. 17 BK 3283 (LTS)<br><br>(Jointly Administered) |

**SUPPLEMENTAL OBJECTION OF ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP. TO AMENDED REPORT AND RECOMMENDATION OF THE MEDIATION TEAM (ECF NO. 10756) WITH RESPECT TO GO/PBA LITIGATION**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

-i-

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .........................................................................................................................2

ARGUMENT ...............................................................................................................................5

I.  THE MEDIATION TEAM HAS NOT CARRIED ITS "HEAVY" BURDEN OF JUSTIFYING A STAY OF THE GO/PBA LITIGATION ..................................................5

II. THE AMENDED PLAN WILL BE INCOHERENT AND PATENTLY UNCONFIRMABLE, AND THEREFORE CANNOT JUSTIFY A STAY OF THE GO/PBA LITIGATION .........................................................................................9

   A. The Amended Plan Will Be Incoherent, And The April 30 Hearing Is Needed To Clarify The Underlying Legal Issues ....................................9

   B. The Amended Plan Is Unconfirmable Because It Requires The Commonwealth To Transfer The Commonwealth Portion Of The Sales And Use Tax Revenues To COFINA In Violation Of The Puerto Rico Constitution............................................................................10

III. THE COURT SHOULD NOT IMPOSE AN "INDEFINITE" STAY OF THE TYPE PROPOSED IN THE AMENDED REPORT..........................................................12

CONCLUSION.............................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

Anderson v. Air W., Inc.,
　542 F.2d 522 (9th Cir. 1976) ...............................................................................................12

Austin v. Unarco Indus., Inc.,
　705 F.3d 1(1st Cir. 1983) .......................................................................................................5

In re Atlantic Pipe Corp.,
　304 F.3d 135 (1st Cir. 2002) ...............................................................................................12

In re DeSardi,
　340 B.R. 790 (Bankr. S.D.Tex. 2006) ...................................................................................8

In re Grogan,
　Case No. 11-65409-frall, 2013 WL 4854313 (Bankr. D.Or. Sept. 10, 2013) ..........................8

In re Haskins,
　563 B.R. 177 (Bankr. W.D. Va. 2017) ...................................................................................8

In re Knowles,
　442 B.R. 150, 163 (1st Cir. BAP 2011) .................................................................................8

In re Moore,
　319 B.R. 504 (Bankr. S.D.Tex. 2005) ...................................................................................8

In re Phar-Mor, Inc. Securities Litigation,
　166 B.R. 57 (W.D. Pa. 1994) .................................................................................................7

In re Wegscheid,
　361 B.R. 144 (Bankr. D.Az. 2007) ........................................................................................ 8

Keystone Coke Co. v. Pasquale,
　No. Civ. A. 97-6074, 1999 WL 126917 (E.D. Pa. Mar. 9, 1999) ...........................................7

Konopca v. Comcast Corp.,
　No. 15-6044, 2016 WL 1645157 (D.N.J. Apr. 26, 2016) .....................................................12

Landis v. N. Am. Co.,
　299 U.S. 248 (1936) ..........................................................................................................5, 12

LVNV Funding, LLC v. Harling,

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

852 F.3D 367 (4th Cir. 2017) ...................................................................................................8

Microfinancial, Inc. v. Premier Holidays Intern., Inc.,
   385 F.3D 72 (1st Cir. 2004) ..................................................................................................5

PNC Bank v. GVTG, LLC, No. 1:13-cv-00634-RLV,
   2014 WL 12524648 (N.D. Ga. Mar. 4, 2014), Aff'd, 592 F. App'x 775 (11th Cir.
   2014) .......................................................................................................................................7

SEC v. Fraser,
   No. CV-09-00443-PHX-GMS, 2009 WL 1531854 (D. Ariz. June 1, 2009) ...........................6

Walsh Const. Co. P.R. v. United Sur. & Indem. Co.,
   No. Civ. 12-1401 (SEC), 2015 WL 13548470 (D.P.R. Sept. 28, 2015) ..................................5

## **STATUTES:**

11 U.S.C. § 1126(c) ...................................................................................................................6

PROMESA § 314(b)(3) ............................................................................................................10

Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured") hereby submit this supplemental objection (the "Supplemental Objection") to the Amended Report and Recommendation of the Mediation Team (the "Amended Report", ECF No. 10756),[2] and respectfully state as follows:

**PRELIMINARY STATEMENT**

1. Contemporaneously with the filing of this Supplemental Objection, Assured has joined other insurers and holders of special revenue bonds (the "Revenue Bonds") issued by the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), and the Puerto Rico Convention Center District Authority ("CCDA") in filing an objection to the Amended Report addressing procedural and substantive issues related specifically to the litigation of Revenue Bond claims.

2. Assured now separately files this Supplemental Objection in its capacity as an insurer of general obligation bonds ("GO Bonds") issued by the Commonwealth and revenue bonds issued by PBA ("PBA Bonds") specifically to object to the Amended Report's proposal that litigation relating to GO Bonds and PBA Bonds be indefinitely stayed pending a confirmation hearing with respect to an as-yet-unfiled plan of adjustment (the "Amended Plan") for the Commonwealth and PBA. See Amended Report at 9-10.

3. As set forth below, the Court should decline to stay the GO/PBA Litigation, because, among other reasons, (I) the Mediation Team has not carried its "heavy" burden of justifying a stay of the GO/PBA Litigation, including because the Mediation Team has attempted to characterize the Amended Plan as a "settlement" of GO and PBA Bond claims, but proposed

---

[2] Unless otherwise indicated, references to ECF numbers in this Supplemental Objection refer to the docket in Case No. 17-3283-LTS. Capitalized terms not defined in this Supplemental Objection shall have the meanings ascribed to them in the Amended Report.

treatment under a plan cannot "settle" issues related to the allowance or disallowance of Assured's claims; (II) given what is known, any Amended Plan will be unconfirmable, and therefore can provide no justification for a stay; and (III) the Court should decline to even consider an indefinite stay of the kind proposed in the Amended Report. Rather than staying the GO/PBA Litigation, the Court should simply leave in place the schedule set forth in its existing scheduling order governing that litigation (ECF No. 9619), as amended to include a hearing on the pending motion for judgment on the pleadings in the PBA Adversary Proceeding as reflected in the proposed order attached as "Exhibit A" hereto.

## BACKGROUND

4. In December 2018 and January 2019, the Financial Oversight and Management Board for Puerto Rico ("FOMB") commenced two closely-related litigations consisting of (i) an adversary proceeding (Adv. Proc. No. 18-149-LTS, the "PBA Adversary Proceeding") alleging that PBA's leases are only "**purported leases**"[3] and in fact constitute disguised financings rather than true leases, and (ii) an objection to certain GO Bond claims insured by Assured (ECF No. 4784, the "GO Claim Objection", and together with the PBA Adversary Proceeding, the "GO/PBA Litigation"), which was likewise premised on the notion that PBA is a "sham" entity because PBA's facilities are only "**purportedly leased**" to the Commonwealth and other tenants. See GO Claim Objection ¶¶ 2, 5, 65. Given that both the PBA Adversary Proceeding and the GO Claim Objection were premised on the theory that PBA's leases are only "purported leases" rather than true leases, this Court later correctly recognized that the PBA Adversary Proceeding is foundational to the GO Claim Objection in that "**[t]he GO Bond Claim Objection**

---

[3] See Adv. Proc. No. 18-149-LTS, ECF No. 1 ¶ 2 (emphasis added).

-2-

**builds on the allegations of the PBA Adversary Proceeding**." See ECF No. 6891 at 3 (emphasis added).

5. In June 2019, FOMB filed motions (the "Stay Motions") seeking to stay both the PBA Adversary Proceeding[4] and the GO Claim Objection,[5] purportedly so that FOMB could "garner further support" for a "restructuring framework" set forth in a recently-announced plan support agreement (the "Initial PSA") with a minority of PBA and GO Bondholders. See Adv. Proc. No. 18-149-LTS, ECF No. 99 ¶ 3; see also ECF No. 7640.

6. On July 9, 2019, Assured filed objections to FOMB's Stay Motions, arguing that FOMB had failed to carry its burden of justifying a stay. See Adv. Proc. No. 18-149, ECF No. 105; ECF No. 7892. Among other things, Assured noted in its objections that the Stay Motions had failed to establish that the plan of adjustment (the "Initial Plan") contemplated in the Initial PSA had sufficient support to actually be confirmed. See, e.g., ECF No. 7892 ¶ 5. Assured also noted that the Initial Plan was "fundamentally inconsistent," because the Initial Plan on the one hand (i) sought to impair certain GO Bond claims based on the GO Claim Objection's theory that PBA *is* a "sham" and its leases *not* true leases, but on the other hand (ii) sought to provide a full recovery to PBA on account of the Commonwealth's rental obligations under its leases with PBA—thereby demonstrating that PBA is *not* a sham and that its leases *are* true leases. See Adv. Proc. No. 18-149-LTS, ECF No. 105 ¶¶ 20-21.

7. Following the July 24, 2019 hearing on the Stay Motions, the Court issued an order (ECF No. 8244, the "Stay Order") that stayed the GO/PBA Litigation, but *not* on the grounds adduced by FOMB in the Stay Motions. Instead, the stated purpose of the Stay Order was to "avoid piecemeal litigation of potentially overlapping key issues" by empowering the Mediation

---

[4] See Adv. Proc. No. 18-149-LTS, ECF No. 99.
[5] See ECF No. 7640.

Team to facilitate the filing of "agreed or substantially agreed scheduling order(s)" with respect to the GO/PBA Litigation and other matters. Id. The Stay Order set October 28, 2019 as the deadline for the Mediation Team to file such agreed scheduling orders and/or a report setting forth additional scheduling recommendations. See Stay Order ¶ A.3.

8. Following an extension of its deadline to file a report,[6] the Mediation Team on November 27, 2019 delivered an interim report (ECF No. 9365, the "Interim Report") containing a proposed scheduling order (ECF No. 9619, the "GO/PBA Order") that put the GO Claim Objection on track to be resolved in the near-term. In accordance with this scheduling order, Assured and other parties filed motions to dismiss the GO Claim Objection on February 5, 2020 (see ECF Nos. 10702 and 10704, the "GO Motions to Dismiss"). The GO Motions to Dismiss demonstrate, among other things, that (i) as a matter of law, no GO Bonds were issued in excess of the debt limit in the Puerto Rico Constitution, because PBA is not a "sham" and PBA Bonds cannot be recharacterized as GO Bonds; (ii) even if PBA Bonds could be recharacterized as GO Bonds, they cannot be retroactively invalidated; (iii) even if GO Bonds could be retroactively invalidated, the result would only be the partial invalidation of a small sliver of GO Bonds rather than a wholesale invalidation of entire issuances of GO Bonds; and (iv) in the event PBA were found to be a "sham," the appropriate remedy would be a complete invalidation of all PBA Bonds rather than any invalidation of any GO Bonds. A hearing on these GO Motions to Dismiss is currently scheduled for April 30, 2020.

9. On December 6, 2019, Assured filed a response to the Interim Report (ECF No. 9501) requesting that—in light of the "overlapping key issues" uniting the PBA Adversary Proceeding and the GO Claim Objection—Assured's pending motion for judgment on the

---

[6] Assured opposed this extension of the Mediation Team's deadline. See ECF No. 9001.

-4-

pleadings in the PBA Adversary Proceeding (Adv. Proc. No. 18-149-LTS, ECF No. 63, the "PBA 12(c) Motion") should be heard at the same April 30 hearing as the GO Motions to Dismiss. At the December 11, 2019 omnibus hearing, the Court deferred until the hearing on the Amended Report the issue of whether the PBA 12(c) Motion should be heard at the April 30 hearing together with the GO Motions to Dismiss.

10. Notwithstanding the progress made towards resolution of the GO/PBA Litigation as a result of the GO/PBA Order and the filing of the GO Motions to Dismiss, the Mediation Team on February 10, 2020 filed the Amended Report, which seeks to halt the progress made to date by re-imposing a stay of the GO/PBA Litigation only weeks after the previous stay was lifted and after Assured and others filed their GO Motions to Dismiss in reliance upon the GO/PBA Order . See Amended Report at pp. 8-9.

11. Assured now files this Supplemental Objection objecting to the renewed stay of the GO/PBA Litigation proposed in the Amended Report.

## ARGUMENT

I. **The Mediation Team Has Not Carried Its "Heavy" Burden Of Justifying A Stay Of The GO/PBA Litigation**

12. "[A] stay should only be entered in extraordinary circumstances." Walsh Const. Co. P.R. v. United Sur. & Indem. Co., No. Civ. 12-1401 (SEC), 2015 WL 13548470 at *4 (D.P.R. Sept. 28, 2015). The burden of establishing that such "extraordinary circumstances" exist "[lies] heavily" on the movant. Landis v. N. Am. Co., 299 U.S. 248, 256 (1936). The movant must "demonstrate 'a clear case of hardship'" in order for the movant "to be entitled to a discretionary stay." Microfinancial, Inc. v. Premier Holidays Intern., Inc., 385 F.3d 72, 77 (1st Cir. 2004) (quoting Austin v. Unarco Indus., Inc., 705 F.3d 1, 5 (1st Cir. 1983). To meet this heavy burden, the movant must make a "specific showing of prejudice that cannot be remedied by

-5-

anything other than a complete stay." SEC v. Fraser, No. CV-09-00443-PHX-GMS, 2009 WL 1531854, at *3 (D. Ariz. June 1, 2009).

13. Here, the Mediation Team has not carried its "heavy" burden of justifying a stay of the GO/PBA Litigation. The Mediation Team's only argument in favor of such a stay is that some additional GO and PBA Bondholders have entered into a new plan support agreement (the "Amended PSA", attached hereto as "Exhibit B") with respect to the Amended Plan. See Amended Report at 8. Despite some increase in the number and holdings of the parties signing onto the Amended PSA as compared to the Initial PSA, however, the Mediation Team's arguments in favor of a stay of the GO/PBA Litigation otherwise suffer from the same shortcomings as FOMB's similar arguments in the Stay Motions—which the Court did *not* adopt in its July 24 Stay Order.

14. Specifically, although the Mediation Team notes the total value of the GO and PBA Bonds held by the parties to the Amended PSA (see Amended Report at 8), the Mediation Team nowhere represents—much less demonstrates—that the Amended PSA has *sufficient* support to result in a confirmed plan. Indeed, while the Amended Report states that the Amended PSA is supported by "the holders of approximately $8 billion in claims of GO/PBA bonds" (id.), that $8 billion figure suggests that the Amended PSA still is supported by less than a majority of the holders of all outstanding GO and PBA Bonds.

15. The existing support for the Amended PSA therefore appears to fall far short of the "two-thirds in amount" required for a class of claims to "accept" a plan under Section 1126(c) of the Bankruptcy Code. See 11 U.S.C. § 1126(c). Moreover, AAFAF has already filed an objection to the Amended Report stating that "**the elected government of Puerto Rico does not support a plan based on the [Amended] PSA.**" ECF No. 11159 ¶ 1 (emphasis added). AAFAF also notes that the Amended Plan would require legislation, for which FOMB does not

have adequate support. Id. In the absence of any showing that the Amended Plan is likely to enjoy sufficient support to be confirmed, the rest of the Amended Report's argument for a stay of the GO/PBA Litigation falls apart, because that argument simply *assumes*, rather than demonstrates, that a plan is likely to be confirmed and would therefore become "binding on all parties." See Amended Report at 9. In particular, absent any showing that the Amended Plan has enough support to be confirmed, the Amended Report's assertion that "[t]o continue forward with the litigation schedule set forth in [the GO/PBA Order] . . . is a waste of both judicial and party resources" lacks any factual or evidentiary basis. See Amended Report at 9.

16. The Amended Report also tries to support its argument for a stay of the GO/PBA Litigation by characterizing the yet-to-be-filed Amended Plan as creating the potential for a "global settlement." See Amended Report at 9. Even if this characterization were accurate, however, "a potential settlement is *not* a legal basis for a stay," particularly where, as here, non-settling parties (such as Assured) do not consent. PNC Bank v. GVTG, LLC, No. 1:13-cv-00634-RLV, 2014 WL 12524648, at *2 (N.D. Ga. Mar. 4, 2014) (emphasis added), aff'd, 592 F. App'x 775 (11th Cir. 2014); see also In re Phar-Mor, Inc. Securities Litigation, 166 B.R. 57, 63 (W.D. Pa. 1994) (denying stay on the basis that the possibility of settlement is mere speculation and, therefore, does not entitle movant to a stay). If courts imposed a stay whenever settlement was merely possible, "litigation could be prolonged indefinitely . . . ." Keystone Coke Co. v. Pasquale, No. CIV. A. 97-6074, 1999 WL 126917, at *5 (E.D. Pa. Mar. 9, 1999).

17. In any event, any potential settlement reflected in the Amended PSA and Amended Plan is not truly "global," because Assured and other major GO and PBA Bondholders have not been included in that settlement. While the Amended Report attempts to create the impression that the GO/PBA Litigation could be "settled" under a plan notwithstanding Assured's lack of consent to such a settlement, this is not true with respect to the GO Claim Objection,

because that objection goes to the *allowance* of Assured's challenged GO Bond claims, not to the potential *treatment* of such claims under a plan. "[C]laim allowance is entirely distinct from confirmation of a plan that determines how an allowed claim is treated." In re Wegscheid, 361 B.R. 144, 148 (Bankr. D.Az. 2007); see also, e.g., LVNV Funding, LLC v. Harling, 852 F.3d 367, 372 (4th Cir. 2017) ("the claims allowance procedure" is "separate and apart under the Bankruptcy Code from plan confirmation"); In re Knowles, 442 B.R. 150, 163 (1st Cir. BAP 2011) ( " . . . the procedure for the allowance and disallowance of claims . . . is '[s]eparate from, if not parallel to, confirmation.'"); In re Haskins, 563 B.R. 177, 188 (Bankr. W.D. Va. 2017) (res judicata did not bar claim objection filed after plan was confirmed; claims allowance process was separate from confirmation process); In re Grogan, Case No. 11-65409-frall, 2013 WL 4854313, at *2 (Bankr. D.Or. Sept. 10, 2013) (noting that, in the context of a chapter 11 plan confirmation hearing, the court would determine a claim's exact amount "in the claims allowance process"); In re DeSardi, 340 B.R. 790, 794 n.1 (Bankr. S.D.Tex. 2006) ("The procedures for claims allowance are distinct from the procedures for plan confirmation"); In re Moore, 319 B.R. 504, 508 (Bankr. S.D.Tex. 2005) ("[a]llowance of claims is governed by protocols and procedures separate from those applicable to plan confirmation."). Therefore, Assured and other GO Bondholders whose claims have been challenged in the GO Claim Objection are entitled to an adjudication as to the allowance of their claims, regardless of whatever treatment an Amended Plan might propose for those claims to the extent they are allowed. Given that such an adjudication as to allowance will be required in any event, it does not make sense for the Court to disrupt the existing schedule providing for such an adjudication.

## II. The Amended Plan Will Be Incoherent And Patently Unconfirmable, And Therefore Cannot Justify A Stay Of The GO/PBA Litigation

### A. The Amended Plan Will Be Incoherent, And The April 30 Hearing Is Needed To Clarify The Underlying Legal Issues

18. Although the Amended Plan has not been filed yet, the Amended PSA already reveals that the Amended Plan is likely to be as defective as its predecessor. In particular, the basic incoherence in the Initial PSA that Assured already noted in its objections[7] to last year's Stay Motions continues to plague the Amended PSA. On the one hand, the Amended PSA assumes that PBA is a "duly organized" and "validly existing" entity entitled to payment in full of its administrative rent claims under its leases with the Commonwealth (see PSA § 3.4); on the other hand, the Amended Plan will apparently purport to impose special "Discounts" on "Post-Vintage GO Bonds" based on the GO Claim Objection—which is entirely premised on the theory that PBA is a "sham" and therefore *not* "duly organized" or "validly existing." See Amended PSA Ex. I. The so-called "settlement" embodied in the Amended Plan therefore appears to be objectively unreasonable in that it makes two irreconcilable assumptions—that PBA is a "sham" and that it is not a "sham". These assumptions cannot both be true at the same time.

19. The currently-scheduled April 30 hearing on the GO Motions to Dismiss is essential to resolve this basic inconsistency impairing the Amended Plan—particularly if, as Assured has already requested, the PBA 12(c) Motion is also included in the April 30 hearing. Specifically, if the GO Claim Objection and the PBA Adversary Proceeding are both dismissed following the April 30 hearing based on a finding that PBA is not a "sham," then it will be clear going forward that (i) PBA is in fact entitled to full payment of its administrative rent claim, but that (ii) no "Discounts" should be imposed on "Post-Vintage GO Bonds." Conversely, if the GO Claim Objection and the PBA Adversary Proceeding survive the GO Motions to Dismiss and the

---

[7] See, e.g., Adv. Proc. No. 18-149-LTS, ECF No. 105 ¶¶ 20-21.

-9-

PBA 12(c) Motion, respectively, then it will be clear, as a preliminary matter, that payment in full of PBA's administrative rent claim is *not* reasonable and cannot be justified. Proceeding with the April 30 hearing—*both* with respect to the GO Claim Objection and with respect to the PBA Adversary Proceeding—is therefore an essential first step towards the potential development of a coherent and defensible plan, and the Court should not scuttle the April 30 hearing in the name of a likely futile effort to confirm an Amended Plan that—absent further clarification of the underlying legal issues at the April 30 hearing—is already likely to be incoherent and indefensible.

    **B.**    **The Amended Plan Is Unconfirmable Because It Requires The Commonwealth To Transfer The Commonwealth Portion Of The Sales And Use Tax Revenues To COFINA In Violation Of The Puerto Rico Constitution**

    20.    Based on what can be gleaned from the Amended PSA, it appears that the Amended Plan will also be unable to satisfy the confirmation requirements set forth in Section 314 of PROMESA. As just one example, Section 314(b)(3) provides that a plan may only be confirmed if "the debtor is not prohibited by law from taking any action necessary to carry out the plan." See PROMESA § 314(b)(3). The Amended Plan (as described in the Amended PSA) would violate this requirement, because it will require the Commonwealth to transfer to COFINA what the Amended PSA calls the "Commonwealth Share" of the Commonwealth's sales and use tax ("SUT"). This so-called "Commonwealth Share" appears to be identical to the "Commonwealth Portion" of the SUT as defined in COFINA's plan of adjustment (ECF No. 4652, the "COFINA Plan"). See COFINA Plan, art. 1.71 (defining the "Commonwealth Portion"). Under the Court's order approving the settlement of the so-called "Commonwealth-COFINA Dispute" (ECF No. 5045, the "Settlement Order"), sole ownership of the Commonwealth Portion was awarded to the Commonwealth. Accordingly, neither COFINA nor its bondholders currently have any claim to the Commonwealth Portion (which does *not* secure the COFINA Bonds), and the Commonwealth

-10-

Portion instead constitutes a wholly-owned and completely unencumbered asset of the Commonwealth. By purporting to require the Commonwealth to transfer the Commonwealth Portion to COFINA, the Amended Plan would therefore result in a massive fraudulent transfer of Commonwealth property to COFINA's existing first-lien bondholders, who as a result of that transfer would receive a first-lien on billions of dollars of additional collateral in exchange for absolutely no consideration.

21. Moreover, given the status of the Commonwealth Portion as a wholly-owned, unencumbered asset of the Commonwealth, any purported transfer of the Commonwealth Portion to COFINA would violate Article VI, Section 8 of the Puerto Rico Constitution, which dictates that all of the Commonwealth's resources (including the Commonwealth Portion) must be available to pay the public debt on a first-priority basis in a fiscal year (including future fiscal years covered by the Amended Plan) in which appropriations exceed available resources.[8] By purporting to require the Commonwealth to transfer the Commonwealth Portion to COFINA, the Amended Plan would therefore require the Commonwealth to "take an action" that is "prohibited by law" (i.e. the Puerto Rico Constitution), thereby rendering the Amended Plan unconfirmable on its face.

22. Given that the Amended Plan is not confirmable, it provides no justification for a stay of the GO/PBA Litigation.

---

[8] Indeed, the only way a transfer of ownership of the Commonwealth Portion to COFINA could comply with Article VI, Section 8 would be if the legislation effectuating such a transfer provided for a mechanism by which the Commonwealth could "claw back" the Commonwealth Portion to the extent the Commonwealth Portion was needed to pay the public debt in a particular fiscal year. This type of "claw back" mechanism was included in the statutes effectuating a transfer of the ownership of certain excise taxes to HTA, CCDA, and PRIFA, for which reason the HTA, CCDA, and PRIFA financing structures—unlike the COFINA structure—have never been subject to a challenge under the Puerto Rico Constitution.

-11-

**III.　The Court Should Not Impose An "Indefinite" Stay Of The Type Proposed In The Amended Report**

23.　Finally, even when extraordinary circumstances exist to justify a stay—and no such circumstances exist here—a court may not impose a stay that is immoderate in length. Rather, a court may only impose a stay that results in a "delay not immoderate in extent and not oppressive in its consequences . . . " Landis, 299 U.S. at 256. By imposing a stay pending a yet unscheduled confirmation hearing, the Amended Report effectively seeks to make the stay of the GO/PBA Litigation indefinite, and indefinite stays are disfavored because the "law presumes injury from unreasonable delay." Anderson v. Air W., Inc., 542 F.2d 522, 524 (9th Cir. 1976); see also In re Atlantic Pipe Corp., 304 F.3d 135, 147 (1st Cir. 2002) ("justice delayed is justice denied"); Konopca v. Comcast Corp., No. 15-6044, 2016 WL 1645157, at *4 (D.N.J. Apr. 26, 2016) (explaining a request for an indefinite stay weighs against a stay).

24.　The prejudice to Assured from a further, indefinite stay is especially severe here, because the GO/PBA Litigation was first filed well over a year ago, and Assured has already experienced months of delay while consistently opposing any stay of that litigation. Assured has diligently pursued its right to an adjudication of the issues raised in the GO/PBA Litigation, and the Court should not deprive Assured of its right to such an adjudication when it can instead give Assured its day in court by simply leaving in place the existing schedule under the GO/PBA Order.

**CONCLUSION**

For the reasons set forth above, the Court should not stay or otherwise delay the GO/PBA Litigation, and instead should permit the GO/PBA Litigation to go forward in accordance with the existing GO/PBA Order, as amended in the proposed order attached hereto as Exhibit A to permit the PBA 12(c) Motion to be heard on the same schedule as the GO Motions to Dismiss.

Dated: February 21, 2020
New York, New York

| CASELLAS ALCOVER & BURGOS P.S.C. | CADWALADER, WICKERSHAM & TAFT LLP |
|---|---|
| /s/ *Heriberto Burgos Pérez* | /s/ *Howard R. Hawkins, Jr.* |
| Heriberto Burgos Pérez | Howard R. Hawkins, Jr.* |
| USDC-PR No. 204,809 | Mark C. Ellenberg* |
| Ricardo F. Casellas-Sánchez | William Natbony* |
| USDC-PR No. 203,114 | Ellen M. Halstead* |
| Diana Pérez-Seda | Thomas J. Curtin* |
| USDC–PR No. 232,014 | Casey J. Servais* |
| E-mail: hburgos@cabprlaw.com | 200 Liberty Street |
| rcasellas@cabprlaw.com | New York, New York 10281 |
| dperez@cabprlaw.com | Tel.: (212) 504-6000 |
| | Fax: (212) 406-6666 |
| P.O. Box 364924 | Email: howard.hawkins@cwt.com |
| San Juan, PR 00936-4924 | mark.ellenberg@cwt.com |
| Tel.: (787) 756-1400 | bill.natbony@cwt.com |
| Fax: (787) 756-1401 | ellen.halstead@cwt.com |
| | thomas.curtin@cwt.com |
| *Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* | casey.servais@cwt.com |
| | * admitted pro hac vice |
| | *Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* |

## CERTIFICATE OF SERVICE

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, 21st day of February, 2020.

By: /s/ *Howard R. Hawkins, Jr.*
Howard R. Hawkins, Jr.*
* admitted pro hac vice