## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico, et al.,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## JOINT STATEMENT OF PSA CREDITORS IN SUPPORT OF
## MEDIATION TEAM'S AMENDED REPORT AND RECOMMENDATION

---

[1] The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

BACKGROUND ...................................................................................................6

I.      THE INITIAL PSA AND LITIGATION STAY .................................6

II.     THE INTERIM REPORT AND INTERIM ORDERS ........................7

III.    THE NEW AGREEMENT .................................................................8

IV.     THE AMENDED REPORT .............................................................10

ARGUMENT ....................................................................................................13

I.      THE COURT SHOULD ADOPT THE RECOMMENDATION OF THE
        MEDIATION TEAM AND STAY ALL LITIGATION CONCERNING
        CONSTITUTIONAL DEBT .............................................................13

II.     THE COURT SHOULD STAY THE FOMB'S ALTERNATIVE CAUSES OF
        ACTION IN THE REVENUE BOND ADVERSARY PROCEEDINGS ........17

CONCLUSION.................................................................................................18

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*In re Heritage Org., L.L.C.*,
   375 B.R. 230 (Bankr. N.D. Tex. 2007)......................................................................... 17

*In re Kaiser Aluminum Corp.*,
   339 B.R. 91 (D. Del. 2006)....................................................................................... 15

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936).................................................................................................. 14

*Ramos-Martir v. Astra Merck, Inc.*,
   CIV. 05-2038(PG), 2005 WL 3088372 (D.P.R. Nov. 17, 2005)............................ 14

*Rivera v. Puerto Rico Tel. Co.*,
   CIV. 09-1723(JP), 2009 WL 3160839 (D.P.R. Sept. 29, 2009).............................. 14

*In re S. Side House, LLC*,
   470 B.R. 659 (Bankr. E.D.N.Y. 2012)..................................................................... 14

*In re Smart World Techs., LLC*,
   423 F.3d 166 (2d Cir. 2005)...................................................................................... 14

*Taunton Gardens Co. v. Hills*,
   557 F.2d 877 (1st Cir. 1977)............................................................................... 14, 16

### **Rules and Regulations**

Fed. R. Bankr. P. 7012........................................................................................................ 7

Fed. R. Civ. P. 12(b) ........................................................................................................... 7

### **Additional Authorities**

Official House Report, June 3, 2016, HR 114-602,
   https://www.congress.gov/114/crpt/hrpt602/CRPT-114hrpt602.pdf ....................... 18

To the Honorable United States District Judge Laura Taylor Swain:

The Ad Hoc Group of Constitutional Debtholders (the "Constitutional Debt Group"),[2] Ad Hoc Group of General Obligation Bondholders (the "GO Group"),[3] Lawful Constitutional Debt Coalition (the "LCDC"),[4] and QTCB Noteholder Group (the "QTCB Group"[5] and, collectively with the Constitutional Debt Group, GO Group, and LCDC, the "PSA Creditors") hereby file this joint statement in support of the *Amended Report and Recommendation of the Mediation Team* (ECF No. 10756) (the "Amended Report"),[6] and respectfully state as follows:[7]

1. The Amended Report announces the achievement of a critical milestone in these Title III cases—an agreement, in the form of a New PSA (as defined below), with more than a majority of the Commonwealth's Constitutional bondholders (the "Constitutional Debtholders") on a path forward for the Commonwealth to adjust and discharge its legacy liabilities in a meaningful and responsible manner. In light of the New PSA, the Title III Court-appointed mediation team ("Mediation Team") recommends that the Court stay the costly and contentious

---

[2] The members of the Constitutional Debt Group and their respective holdings are set forth in the *Fifth Supplemental Verified Statement of the Ad Hoc Group of Constitutional Debtholders Pursuant to Federal Rule of Bankruptcy Procedure 2019* (ECF No. 10742).

[3] The members of the GO Group and their respective holdings are set forth in the *Sixth Supplemental Verified Statement of the Ad Hoc Group of General Obligation Bondholders Pursuant to Bankruptcy Rule 2019* (ECF No. 11431).

[4] The members of the LCDC and their respective holdings are set forth in the *Fifth Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure 2019* (ECF No. 11161).

[5] The members of the QTCB Group and their respective holdings are set forth in the *Fifth Supplemental Verified Statement of the QTCB Noteholder Group Pursuant Bankruptcy Rule 2019* (ECF No. 11293).

[6] Capitalized terms not defined herein shall have the meanings ascribed to them in the Amended Report.

[7] The positions outlined herein are taken by the Constitutional Debt Group, GO Group, LCDC, and QTCB Group each in its capacity as an ad hoc group of creditors, and shall not be attributed to any individual member of the Constitutional Debt Group, GO Group, LCDC, or QTCB Group.

litigation that has bogged down these cases, in favor of the FOMB proceeding with confirmation of a plan of adjustment premised on the New PSA.  Such a plan of adjustment presents the Commonwealth with an opportunity to achieve fiscal responsibility and access to the capital markets, which is in the best interests of all parties.

2.     On May 31, 2019, the FOMB released the terms of a Plan Support Agreement (the "Initial PSA") that it had entered into with holders of roughly 16% of outstanding general obligation ("GO") bonds and/or Commonwealth-guaranteed bonds.   Shortly after the announcement of the Initial PSA, the FOMB requested a comprehensive stay on certain litigation matters addressed in the Initial PSA, which matters were to be subject either to proposed settlements or post-confirmation litigation contemplated by a forthcoming plan of adjustment.[8] *See Financial Oversight and Management Board for Puerto Rico's Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment,* (ECF No. 7640) (the "GO Claims Stay Motion").[9]   Numerous creditors objected to the GO Claims Stay Motion, citing fractured support and legal obstacles to consideration of the plan of adjustment contemplated by the Initial PSA.[10]  On July 24, 2019, following a hearing on the matter, the Court entered its *Order*

---

[8]   On September 27, 2019, the FOMB filed a plan of adjustment based upon the Initial PSA.  *See Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, (ECF. No. 8765) (the "Initial Plan").

[9]   *See also Plaintiff Financial Oversight and Management Board for Puerto Rico's Motion to Stay PBA Adversary Proceeding Pending Confirmation of Commonwealth Plan of Adjustment* (ECF No. 99, Adv. Proc. No. 18-149) ("PBA Stay Motion"); *Urgent Motion for Stay of Adversary Proceeding Supplemental to Pending Motion to Stay GO Bond Proceedings Pending Confirmation of Commonwealth Plan of Adjustment* (ECF No. 7882) ("Supplemental Stay Motion"); *Response of the Lawful Constitutional Debt Coalition in Support of the Financial Oversight and Management Board for Puerto Rico's Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* (ECF No. 7898); *Statement of the QTCB Noteholder Group in Support of the Financial Oversight and Management Board for Puerto Rico's Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* (ECF No. 7966).

[10]   *See Objection and Reservation of Rights of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. with Respect to Motion to Stay Contested Matter Pending Confirmation of Commonwealth*

*Regarding Stay Period and Mandatory Mediation* (ECF No. 8244) (the "Stay Order").  Critically,

the Stay Order directed substantially all creditor constituencies embroiled in active litigation with

the FOMB over their respective rights as creditors of the Commonwealth or its instrumentalities

to participate in mediation to identify and sequence the issues that must be litigated or otherwise

resolved in order to achieve confirmation of a plan of adjustment for the Commonwealth.  *See* Stay

Order at 1-2.

3.      In the months since the entry of the Stay Order, numerous parties in interest have,

with the assistance and supervision of the Mediation Team, engaged in extensive negotiations to

identify and resolve objections to the terms of the Initial PSA, including potential gating issues

relating to confirmation of the Initial Plan.

4.      Concurrently, the Mediation Team had been developing a comprehensive

framework for litigating certain contested matters and adversary proceedings pending before the

Court, in the event they could not be settled through mediation.  To that end, on November 27,

2019, the Mediation Team proposed, and the Court entered (with some revisions), an interim

schedule that set forth a preliminary process for litigating the early stages of various disputes,

including litigation concerning (i) the validity, priority, and secured status of claims filed by

holders of certain GO bonds issued by the Commonwealth and holders of certain bonds guaranteed

by the Commonwealth (collectively, the "Constitutional Debt" and the various contested matters

---

*Plan of Adjustment* (ECF No. 7892); *Official Committee of Unsecured Creditors' Omnibus Objection to
(A) Motion to Stay Contested Matters [Docket No. 7640 in Case No. 17-3283 (LTS)] and (B) Motion to
Stay PBA Adversary Proceeding [Docket No. 99 in Adv. Proc. No. 18-149 (LTS)] Pending Confirmation of
Commonwealth Plan of Adjustment* (ECF No. 7899); *Ambac Assurance Corporation's Objection to the
Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* (ECF No.
7902); *Constitutional Debt Group's Objection to Motion to Stay Contested Matters Pending Confirmation
of Commonwealth Plan of Adjustment* (ECF No. 7937); *GO Group's Objection to Motion to Stay Contested
Matters Pending Confirmation of Commonwealth Plan of Adjustment* (ECF No. 7938); *Response of
Individual General Obligation Bondholder to Motion of FOMB to Stay Contested Matters Pending
Confirmation of Commonwealth Plan of Adjustment* (ECF No. 7961).

3

and adversary proceedings concerning the Constitutional Debt, the "Constitutional Debt Litigation"); and (ii) the priority and secured status of certain claims based on bonds issued by the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), and the Puerto Rico Convention Center District Authority ("CCDA" and bonds issued by CCDA, HTA, and PRIFA, collectively, the "Revenue Bonds" and the various contested matters and adversary proceedings concerning the Revenue Bonds, the "Revenue Bond Litigation").  *See Interim Case Management Order* (ECF No. 9619) (the "Constitutional Debt Interim Order"); *Amended Interim Case Management Order for Revenue Bonds* (ECF No. 10595) (the "Revenue Bond Interim Order" and together with the Constitutional Debt Interim Order, the "Interim Orders").  Pursuant to the Interim Orders, the Constitutional Debt Litigation and the Revenue Bonds Litigation were required to commence the motion to dismiss stage if a settlement was not reached on or before February 10, 2020.

5.      The mediation directed by the Court in the Stay Order has now resulted in a new deal, with vastly more creditor support than the Initial PSA.  On February 9, 2020, the FOMB publicly released the terms of an agreement it has reached with the PSA Creditors, which collectively hold approximately $8 billion of all Constitutional Debt claims.  *See CW Plan Support Agreement by and among the FOMB and the PSA Creditors*, dated February 9, 2020 (the "New PSA"), https://oversightboard.pr.gov/documents.  Among other things, the New PSA provides a framework for a confirmable plan of adjustment that settles all Constitutional Debt Litigation and would see the Commonwealth exit Title III before the end of 2020.  *See* Amended Report at 8 & 24.  Since its release, the New PSA has been favorably received by the market, with the FOMB announcing that, as of February 14, 2020, holders of approximately $9.8 billion of Constitutional Debt claims are now parties to the New PSA, representing approximately 53% of outstanding

Constitutional Debt claims. *See Notice of Opportunity to Join Plan Support Agreement*, dated

February 14, 2020, https://oversightboard.pr.gov/documents.

6.     In light of the settlements addressed in the New PSA and to be reflected in an

Amended Plan to be filed in the near future, the Mediation Team has filed the Amended Report

setting forth new recommendations regarding how to proceed with the various litigations that are

subject to the Court's Interim Orders.  In summary, the Amended Report recommends that the

Court:  (i) set aside its Constitutional Debt Interim Order and stay the Constitutional Debt

Litigation; (ii) revise the Revenue Bond Interim Order in a manner that ensures final adjudication

on certain threshold issues critical to confirmation of the Amended Plan prior to the confirmation

hearing; (iii) allow the ERS litigation to continue on its current track; and (iv) either stay or dispose

of various other litigations in a manner consistent with the above recommendations.  The Amended

Report also sets forth the FOMB's tentative schedule for the confirmation process, which envisions

a confirmation hearing for the Amended Plan commencing in the middle of October 2020.

7.     The PSA Creditors unequivocally support the recommendations set forth in the

Amended Report.  An Amended Plan based on the New PSA provides a strong foundation for the

Commonwealth to emerge from Title III and begin its journey towards a bright future as soon as

practicable, a goal that redounds to the benefit of the Commonwealth, its citizens, and its creditors.

The Amended Report balances the desire of the FOMB and the majority of Constitutional

Debtholders that jointly wish to conclude these Title III cases against the needs of all parties to be

fairly heard with their rights preserved.  The Court should approve the Amended Report and stay

all Constitutional Debt Litigation.[11]

---

[11]    As laid out in greater detail below, the PSA Creditors also respectfully submit that the Court
should stay the litigation of a handful of alternative causes of action contained within the FOMB's

## BACKGROUND

### I.    THE INITIAL PSA AND LITIGATION STAY

8.    On May 31, 2019, the FOMB executed the Initial PSA.  *See* ECF No. 7814 at Ex. B (Initial PSA).  The Initial PSA set forth a proposed settlement of the relative entitlements of various issuances of Constitutional Debt as well as other Commonwealth debts,[12] and provided for a post-confirmation mechanism for resolving the omnibus objections to the validity of Constitutional Debt issued in and after 2012.

9.    Shortly after the announcement of the Initial PSA, the FOMB filed several motions seeking to stay all litigation concerning Constitutional Debt.  *See, e.g.*, GO Claims Stay Mot.; PBA Stay Mot.; Supplemental Stay Mot.

10.    On July 24, 2019, "[i]n order to avoid piecemeal litigation of potentially overlapping key issues, and in an effort to identify efficiently the issues that must be litigated or otherwise resolved to achieve confirmation of a plan of adjustment for the Commonwealth (and other debtors and potential debtors in Title III proceedings), as well as to prioritize such issues and develop efficient approaches to the resolution of such issues," the Court entered the Stay Order, which stayed, among other things, all litigation concerning Constitutional Debt and Revenue Bonds through November 30, 2019.  Stay Order at 1.

11.    The Stay Order also required the Mediation Team to file a report with the Court "setting forth the procedural issues as to which substantial consensus has been achieved, any

---

complaints in the Revenue Bond Adversary Proceedings.  Those causes of action dispute the priority of Constitutional Debt, an issue that is settled under the New PSA and Amended Plan.

[12]   Specifically, the Initial PSA provided a framework for the restructuring of $35 billion in claims against the Commonwealth.   The Initial PSA provided that the Initial Plan would reduce the Commonwealth's total liabilities by $23 billion, reduce debt service obligations by 46%, reduce annual tax-supported debt service from $4.2 billion to $1.5 billion, and provide bondholders and creditors with blended overall recoveries of between 35% and 42%.  *See Commonwealth of Puerto Rico Title III Case: Plan Support Agreement*, https://drive.google.com/file/d/1vVUT722_ai0VOfrzYbEwWHCwzhsMrvWH/view.

further procedural recommendations of the Mediation Team Leader relating to those issues, and any other recommendations of the Mediation Team Leader regarding an appropriate schedule for the disposition of these adversary proceedings and contested matters[.]" *Id.* at 2.

12.    On October 28, 2019, the Court entered the *Order Granting Urgent Joint Motion of Oversight Board and AAFAF for Order Extending (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* (ECF No. 9016), pursuant to which the stay under the Stay Order was extended until December 31, 2019.

## II.    THE INTERIM REPORT AND INTERIM ORDERS

13.    On November 27, 2019, in its *Interim Report and Recommendation of the Mediation Team* (ECF No. 9365) (the "Interim Report"), the Mediation Team explained that it was appropriate at the time to address the scheduling and sequencing of only certain disputed issues, and that the Mediation Team would file a more extensive amended report at a later date. *See* Interim Report at 4, 7.  The Interim Report provided a preliminary schedule for the resumption of the Constitutional Debt Litigation through Fed. R. Civ. P. 12(b)[13] motions to dismiss the relevant adversary proceedings and claim objections. *See id.* at 5.  The Interim Report provided a more comprehensive schedule to address certain adversary proceedings and contested matters relating to the Revenue Bond Litigation.  Interim Report Ex. 2 at 5-6.[14]

14.    The Court entered the Interim Orders, which lifted the stay on litigation concerning the Constitutional Debt and Revenue Bonds.  The Interim Orders applied to all parties, regardless

---

[13]    As applied to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7012.

[14]    On December 19, 2019, the Court entered an order that required the Mediation Team file an amended report by January 10, 2020 (the "Bridge Order," ECF No. 9618).  The deadline to file the amended report was subsequently extended to February 10, 2020. *See* ECF No. 9639.

of whether they continued to engage in confidential mediation.  Pursuant to the Interim Orders,

parties have engaged in the following litigation in order to comply with the deadlines therein:

- On January 8, 2020, the LCDC filed an omnibus claim objection to certain post-2011 Constitutional Debt claims.  *See* ECF No. 9730.

- Also on January 8, 2020, the UCC filed an omnibus claim objection to certain Constitutional Debt claims.  *See* ECF No. 9735.

- On January 16, 2020, the FOMB commenced the Revenue Bond Adversary Proceedings (Adv. Proc. Nos. 20-003, 20-004, 20-005, 20-007) and certain holders and insurers of Revenue Bonds filed motions to lift the automatic stay in the Commonwealth Title III Cases. *See* ECF Nos. 10102, 10104, 10109.

- On February 3, 2020, supplemental oppositions on the issues of standing and secured status were filed with respect to the Lift Stay Motions concerning the PRIFA, HTA, and CCDA.  *See, e.g.*, ECF Nos. 10611, 10613, 10615.

- On February 5, 2020, certain Identified Parties (as that term is defined in the Constitutional Debt Interim Order) filed motions to dismiss certain omnibus claim objections to Constitutional Debt Claims, or joinders thereto.  *See* ECF Nos. 10697, 10702, 10705.

- Also on February 5, 2020, certain Interested Defendants and Identified Parties (as those terms are defined in the Constitutional Debt Interim Order) filed motions to dismiss or joinders thereto in the GO Lien Challenge adversary proceedings.  *See, e.g.*, ECF Nos. 50, 53, 56 in Adv. Proc. No. 19-291.

- On February 11, 2020, the UCC and the DRA Parties filed motions to intervene in the Revenue Bond Adversary Proceedings.  *See e.g.*, ECF Nos. 9, 11 in Adv. Proc. No. 20-005.

- On February 14, 18, and 19, 2020, certain bondholders and interested parties not listed among the Identified Parties filed motions to dismiss various omnibus claim objections to Constitutional Debt Claims.  *See* ECF Nos. 11148; 11149; 11153, 11247, 11251, 11258, 11260, 11261, 11264, 11267, 11281.

## III.   THE NEW AGREEMENT

15.    On February 9, 2020, the FOMB announced that it had reached agreement with

holders of $8 billion of Constitutional Debt.  *See Oversight Board Reaches New, More Favorable*

*Agreement to Restructure $35 Billion of Liabilities*, https://oversightboard.pr.gov/oversight-board-

reaches-new-more-favorable-agreement-to-restructure-35-billion-of-liabilities/.  The New PSA is

the product of months of hard-fought negotiations between and among the FOMB and holders of

Constitutional Debt. The terms of the global settlement, as embodied in the New PSA, includes a

settlement of the Constitutional Debt Litigation as well as an agreement by the PSA Parties as to

the treatment of different vintages of Constitutional Debt. The New PSA achieves this settlement

with approximately the same distributable value determined by the FOMB to be available for

creditors in the Initial PSA and Initial Plan.

16.     According to the FOMB,[15] the New Agreement provides the following additional

benefits to the Commonwealth vis-à-vis the Initial PSA:

- Reduces $35 billion of the Commonwealth's debt and other liabilities by 70%, or $24 billion, to less than $11 billion;

- Reduces the Commonwealth's debt service by 56%;

- Contemplates the complete extinguishment of the Commonwealth's legacy debt in 20 years, instead of the 30-year term agreed to in the Initial PSA and Initial Plan;

- Reduces the amount of new bonds that will be issued by the Commonwealth from $11,777 million to $10,669 million;

- Reduces the true interest cost to the Commonwealth from 5.716% to 5.548%;

- Provides for the global compromise and settlement of the rights of Constitutional Debtholders versus other expenses of the Commonwealth deemed essential by the FOMB in a manner that respects the relative lawful priorities and liens of Constitutional Debtholders over junior creditors; and

- Envisions the Commonwealth's emergence from Title III before the end of 2020, which will achieve significant Title III-related expense savings and create opportunity for a new bright future for the Commonwealth;

17.     The New Agreement also provides marginally better recoveries for holders of

Constitutional Debt, which were instrumental in garnering the support of the critical mass of

holders of Constitutional Debt that make up the PSA Creditors, and the settlement embodied in

---

[15] *Commonwealth of Puerto Rico Title III Case: Plan Support Agreement*, dated February 9, 2020, https://drive.google.com/file/d/1uyS9_npXsV7cUfMI0cwxENUuc0A5hboG/view.

the New PSA avoids the enormous litigation expense associated with the various GO-related disputes. Particularly given the broad creditor support from holders of the highest priority claims under the Commonwealth's Constitution, the PSA Creditors believe that the New PSA will form the basis of a confirmable plan of adjustment.[16]

## IV.   THE AMENDED REPORT

18.   On February 10, 2020, the Mediation Team filed its Amended Report, which hailed the New PSA as a "Significant Development[ ]," and provided new recommendations with respect to pending litigation and Court consideration of the Amended Plan. Amended Report at 8. First, the Amended Report recommends that the Constitutional Debt Interim Order "be set aside such that no further deadlines set forth in such order … need be complied with by any party" and that "any other pending and not yet filed adversary proceedings and contested matters relating to validity, priority, and secured status of the GO/PBA/PRIFA BANs claims be stayed pending a decision on confirmation of the Amended Plan." *Id.* at 8-10. The Mediation Team explained that the Constitutional Debt Litigation should be stayed to give the FOMB "the opportunity to attempt to confirm the Amended Plan before any party is required to expend further funds in litigation of the disputes being settled[,]" adding that "[t]o continue forward with the litigation schedule set forth in the [Constitutional Debt Interim Order] … under the changed circumstances just discussed is a waste of both judicial and party resources." *Id* at 9.

19.   Turning to the Revenue Bond Litigation, the Amended Report notes that the Court's ruling on several key issues raised in the Lift Stay Motions and the Revenue Bond Adversary

---

[16]   Assuming that 80% of bondholders vote on the Amended Plan, the claims held solely by the PSA Creditors would translate into more than 2/3 support in dollar amount from bondholders in four out of the six anticipated classes of uninsured bonds, with significant support from the PSA Creditors in the other two classes of uninsured bonds.

Proceedings "will (i) be of assistance to it in the plan mediation process, and (ii) streamline the anticipated confirmation hearing on the Amended Plan." *Id.* at 11-12.  In particular, the Mediation Team states that a final determination on the issues concerning "standing to sue and security or other property interests in the relevant revenues" that are raised in the Lift Stay Motions would be "invaluable to both the mediation and plan confirmation processes." *Id.* at 12. Additionally, the Mediation Team observes that two Revenue Bond issues "on which merits rulings in advance of the approval of the Amended Disclosure Statement may facilitate the mediation process and streamline the hearing to consider confirmation of the Amended Plan." *Id.* These issues are (1) whether, in the event that the holders of Revenue Bond have no security interest, such bondholders have any allowed unsecured claim against the Commonwealth, such that their claims would need to be addressed in the Amended Plan, and (2) whether the FOMB and/or the Government of Puerto Rico are operating under a conflict of interest in acting for both the Commonwealth and HTA that could affect how claims of HTA against the Commonwealth may be settled or voted in connection with the Amended Plan, because such a conflict would need to be addressed prior to the Amended Disclosure Statement hearing. *See id.* at 12-13.

20.     As the Amended Report explains:

> Merits rulings on these issues … will assist the parties in understanding this Court's views of their respective rights, if any.  Rulings unfavorable to creditors will provide them with clarity on their rights as against the Commonwealth, if any. Conversely, rulings unfavorable to the FOMB could preclude confirmation of the Amended Plan or require the FOMB to propose a material modification to the Amended Plan to "fix" any problem this Court's merits rulings pinpoint.  Of course, a material modification to the Amended Plan later in the confirmation process could require a re-solicitation of creditors, with the attendant delay and costs associated with such a re-solicitation.  Thus, from the Mediation Team's perspective, it is highly preferable to proceed as the Court has ordered and obtain merits determinations of those issues … before (or contemporaneously with) approval of the Amended Disclosure Statement and before solicitation commences, if possible without a significant delay.

*Id.* at 12, n.14.

21.     To ensure that these issues are addressed by the Court in a timely manner, the Amended Report requests that the Revenue Bond Interim Order be modified to "(i) incorporate a schedule for the filing of narrowly tailored motions for partial summary judgment in the relevant Revenue Bond Adversary Proceedings, and (ii) set a schedule for the filing of, and determination of, any motion seeking relief addressing alleged continuing conflicts of interest of the FOMB and the Government of Puerto Rico acting for both the Commonwealth and HTA." *Id.* at 13.

22.     Regarding ERS, the Amended Report recommends that the ERS Scheduling Order remain in effect and the litigation contemplated therein should proceed.  *See id.* at 11.  The Amended Report explains that "the Mediation Team believes that it is in the best interests of all parties in interest in the cases … that the Title III Cases for the Commonwealth, PBA and, if possible, ERS, be concluded as soon as possible" and notes that "there is not yet an agreement among ERS bondholders, the FOMB, and the Government of Puerto Rico concerning the treatment of ERS bondholder claims in the Amended Plan" and that "rulings from this Court and on appeal will be of assistance to the parties and the Mediation Team in further mediated negotiations regarding the treatment of ERS bondholder claims under the Amended Plan." *Id.* at 10-11.

23.     The Amended Report also contains recommendations regarding various contested matters and adversary proceedings that were left stayed by the Interim Orders (the "Miscellaneous Litigations").  In short, the Amended Report recommends the Court:  (i) grant all stay motions still pending; (ii) deny certain motions by monoline insurers that either (x) seek discovery concerning certain Revenue Bonds or (y) seek to strike certain portion of the Initial PSA; and (iii) continue the stay on all other Miscellaneous Litigations.  *See id.* at 18-19.  The Amended Report also recommends that any "contested matters or adversary proceedings filed after the date of this

Amended Report that address issues (i) being settled under the Amended Plan, or (ii) already joined in litigation that is stayed pending confirmation, also be stayed pending confirmation[.]" *Id.* at 20.

24.     Finally, the Amended Report outlines a tentative schedule for approval of the Amended Disclosure Statement and confirmation of the Amended Plan.  The schedule proposes June 3, 2020 for a disclosure statement hearing and October 13-23, 2020 for a confirmation hearing, and lists a number of issues to be decided at confirmation, including:

- Challenges to classification;

- Challenges to the reasonableness of any settlement of claims against the Commonwealth based on Constitutional Debt and Revenue Bonds;

- Challenges to the treatment of ERS bondholder claims, pension and union claims, and administrative claims; and

- Disputes regarding the dischargeability of purported constitutional claims; the satisfaction of the best interests and fair and equitable tests; feasibility and consistency with the fiscal plan; accountability for essential services; and any relevant claims asserted in the Adversary Proceeding No. 18-059 that have not been previously adjudicated, mooted, or otherwise resolved.

*Id.* at 24-26.

25.     For the reasons set forth below, the PSA Creditors support the recommendations in the Amended Report, and request that all litigation concerning Constitutional Debt be stayed pending confirmation of the Amended Plan.

## **ARGUMENT**

## I.     **THE COURT SHOULD ADOPT THE RECOMMENDATION OF THE MEDIATION TEAM AND STAY ALL LITIGATION CONCERNING CONSTITUTIONAL DEBT**[17]

26.     The Court should accept the Amended Report's recommendation to stay all contested matters and adversary proceedings concerning the Constitutional Debt pending

---

[17]   Except as set forth below, the PSA Creditors take no position regarding the Mediation Team's recommendations concerning (i) the Revenue Bond Litigation; (ii) the Miscellaneous Litigation; or (iii)

confirmation because the FOMB, as legal representative of the Commonwealth Debtor, has agreed

to settle such claims pursuant to the Amended Plan.  *See In re Smart World Techs., LLC*, 423 F.3d

166, 175 (2d Cir. 2005) ("[I]t is the debtor-in-possession, as legal representative of the estate, who

is vested with the power to settle the estate's claims."); PROMESA § 315 ("The Oversight Board

in a case under this subchapter is the representative of the debtor.").

27.     A court is empowered with "inherent" authority to stay proceedings before it.

*Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also In re S. Side House, LLC*, 470 B.R. 659,

684 (Bankr. E.D.N.Y. 2012) (Court's "inherent authority" to stay proceedings is also recognized

by section 105(a) of the Bankruptcy Code).[18]  In exercising its discretion whether to grant a stay,

a court should consider (i) the conservation of judicial resources, (ii) the duration of the stay

requested, (iii) the prejudice faced by the parties if a stay is, or is not, entered, and (iv) the public

interest.  *See, e.g., Ramos-Martir v. Astra Merck, Inc.*, CIV. 05-2038(PG), 2005 WL 3088372, at

*1 (D.P.R. Nov. 17, 2005); *Rivera v. Puerto Rico Tel. Co.*, CIV. 09-1723 (JP), 2009 WL 3160839,

at *1 (D.P.R. Sept. 29, 2009) (citing *Taunton Gardens Co. v. Hills*, 557 F.2d 877 (1st Cir. 1977)).

28.     In light of the New PSA and forthcoming Amended Plan, all factors weigh in favor

of a stay.  First, the stay will conserve judicial resources.  The Amended Plan, if confirmed, will

settle all disputes concerning the Constitutional Debt.  It would be wasteful and counter-productive

to continue to litigate such disputes while the Amended Plan is being prosecuted to confirmation.

*See* Amended Report at 9.  In contrast, extending the stay through confirmation will not only

conserve the time and resources of the Court, but will allow the parties to focus time and energy

---

ERS.  The PSA Creditors submit that the New PSA paves the way for a confirmable plan whether or not
all litigation concerning other claims is concluded.

[18]   Section 105(a) of the Bankruptcy Code is expressly incorporated into PROMESA § 301(a).

on resolving disputes that could hinder confirmation of the Plan,[19] and garnering additional support

for the New PSA.  As this Court has found, "[a] requirement that the Court resolve claim objections

prior to approving a settlement would 'undermine the important policy of promoting settlements

in bankruptcy proceedings by requiring the parties to litigate the very issues that the settlement

seeks to resolve.'"  *See Memorandum Order Terminating Objection of Official Committee of*

*Unsecured Creditors to Proof of Claim Number 18499 Filed by U.S. Bank National Association,*

*in Its Capacity as Trustee for Non-Recourse PREPA Bonds* (the "PREPA Order", ECF No. 1855,

Case No. 17-4780) at 6 (quoting *In re Kaiser Aluminum Corp.*, 339 B.R. 91, 94 (D. Del. 2006)),

*appeal filed*, Case No. 20-1122 (1st Cir. Feb. 11, 2020).

29.     Second, the duration of the stay is reasonable.  The Amended Report recommends

that the stay remain in effect only through confirmation, at which point either the Constitutional

Debt Litigation will be settled or, if the Amended Plan is not confirmed, the stay will be lifted and

litigation can move forward.  *See* Amended Report at 10 ("If the Amended Plan is not confirmed,

the Mediation Team will work with the parties to develop an agreed schedule to move forward

with the litigation.").  And the Amended Report's suggested schedule envisions the confirmation

hearing taking place approximately eight months from today, on October 13-23, 2020.  *Id.* at 24;

*see Taunton Gardens Co.*, 557 F.2d at 879 (stay appropriate where "the duration … is adequately

circumscribed").

---

[19]   For instance, the Amended Report does not seek to set aside the litigation schedule set forth in
the Interim Revenue Bonds Order.  In fact, the Amended Report proposes a more expedited litigation
schedule for certain of the issues raised in those litigations, which the Mediation Team has concluded should
be resolved prior to confirmation of the Amended Plan because they are not settled under the Amended
Plan but may influence its confirmability.

30.     Third, a stay pending confirmation of the Amended Plan will not materially prejudice any party in interest.  To the extent the UCC,[20] or any other party, complains that a stay would impinge their due process right to be heard on the various Constitutional Debt claim objections, such complaints are unfounded as the Amended Report specifically includes among the issues to be addressed at confirmation "the reasonableness of the settlement of all claims" related to Constitutional Debt.  Amended Report at 25.  Thus, the UCC, or any party in interest, will have the opportunity to raise their challenges to the Constitutional Debt in the context of confirmation.  Similarly, the Amended Report recommends that the Court determine, at or prior to the hearing on the Disclosure Statement, what rights and claims, if any, that the holders and insurers of Revenue Bonds have against the Commonwealth. *Id.* at 12, n.14. Additionally, the Amended Report specifically provides a substanial 75-90 day period for discovery related to plan objections.  *Id.* at 23-24.  As this Court recognized in the PREPA Title III proceeding, a party in interest does not suffer a cognizable harm when the trustee exercises its statutory prerogative to compromise disputes, provided that the party receives an opportunity to object to that settlement in due course.  *See* PREPA Order at 5 ("While any party in interest has a statutory right to object to a claim, the Trustee, as the representative of the estate, has the ability to compromise that objection, as long as the objectant is given notice and an opportunity to be heard with respect to the fairness and wisdom of the compromise.") (citing *In re Heritage Org., L.L.C.*, 375 B.R. 230, 285 (Bankr. N.D. Tex. 2007)).  Moreover, all parties rights are preserved and the proposed stay would terminate if the Amended Plan is not confirmed.  Amended Report at 10.

---

[20]   The UCC is the <u>only</u> party that has objected to Constitutional Debt claims that has not signed on to the global compromise set forth in the New PSA.

31.     Fourth, the stay is clearly in the public interest.  The Amended Plan will enable the
FOMB, as representative of the Commonwealth, to use the tools that Congress provided to
successfully exit Title III.   It is in the best interests of all parties, and in particular the
Commonwealth of Puerto Rico and its citizens, that the Commonwealth emerge from Title III as
soon as possible, put an end the significant Title III-related expenses, regain access to the capital
markets, and attract capital formation.  The New PSA and the Amended Plan provide a promising
path for the Commonwealth to achieve these ends.  Any litigation that detracts from or interferes
with efforts to prosecute the Amended Plan to a successful and consensual confirmation should be
stayed in accordance with the recommendations set forth in the Mediation Team's Amended
Report.

## II.    THE COURT SHOULD STAY THE FOMB'S ALTERNATIVE CAUSES OF ACTION IN THE REVENUE BOND ADVERSARY PROCEEDINGS

32.     Finally, should the Court stay the Constitutional Debt Litigation, then the stay
should extend to a handful of causes of action in the Revenue Bond Adversary Proceedings in
which the FOMB broadly challenges the applicability of all priorities under Commonwealth law
(which could be construed to include an attack on the Constitutional Debt's constitutional
priority).[21]   These causes of action indirectly challenge the priority enjoyed by holders of
Constitutional Debt, the extent of which is explicitly settled pursuant to the Amended Plan.  It
would be inconsistent with the Mediation Team's recommendation to allow these causes of action
to go forward while all other litigation concerning the Constitutional Debt is stayed, including the

---

[21]   *See Complaint* (ECF No. 1, Adv. Proc. No. 20-003), at Counts XXV (¶¶ 277-281), LI (¶¶ 399-403), LXXVII (¶¶ 523-527), and CI (¶¶ 638-642); *Complaint* (ECF No. 1, Adv. Proc. No. 20-004), at Counts XIX (¶¶ 279-283), XL (¶¶ 384-388), LXI (¶¶ 490-494), and LXXX (¶¶ 587-591); *Complaint* (ECF No. 1, Adv. Proc. No. 20-005) at Counts XIX (¶¶ 277-281), XLII (¶¶ 385-389), LXV (¶¶ 493-497), LXXXVIII (¶¶ 601-605), CXI (¶¶ 709-713), CXXXIII (¶¶ 814-818), CLV (¶¶ 919-923), CLXXVI (¶¶ 1018-1022), CXCVII (¶¶ 1117-1121).

claim objection raising the very same priority issue. *See Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of General Obligation Bonds Asserting Priority Over Other Commonwealth Unsecured Creditors* (ECF No. 10638).

33.     If the Court does not stay these 'mirror image' claims made by the FOMB in both the Constitutional Debt Litigation and the Revenue Bond Adversary Proceedings, certain of the PSA Creditors will be compelled to intervene and be heard on why the FOMB's position on blanket preemption of Commonwealth law is inconsistent with PROMESA's text and basic purpose, as evidenced by the legislative history that accompanied PROMESA's enactment.[22]  To be clear, the PSA Creditors have agreed to settle the priority of Constitutional Debt with the FOMB to the extent set forth in the New PSA, but the PSA Creditors did not agree to waive the protections of PROMESA that require respect for lawful priorities and lawful liens vis-à-vis other creditors of the Commonwealth, in the event the Amended Plan is not confirmed and consummated.

## CONCLUSION

34.     WHEREFORE, the PSA Creditors respectfully request that the Court enter an order (i) adopting the recommendations in the Mediation Team's Amended Report, (ii) staying all litigation concerning the Constitutional Debt, including to the extent contained in the Revenue Bond Adversary Proceedings, and (iii) granting any further relief the Court deems just and proper.

---

[22]     *See* Official House Report, June 3, 2016, HR 114-602 ("By incorporating consistency with the Fiscal Plan into the requirements of confirmation of a plan of adjustment, the Committee has ensured lawful priorities and liens, as provided for by the territory's constitution, laws, and agreements, will be respected in any debt restructuring that occurs."), https://www.congress.gov/114/crpt/hrpt602/CRPT-114hrpt602.pdf.

DATED:  February 21, 2020

Respectfully submitted,

**REICHARD & ESCALERA**

**By :**   */s/ Rafael Escalera*
     **Rafael Escalera**
     USDC No. 122609
     escalera@reichardescalera.com

     **Sylvia M. Arizmendi**
     USDC-PR 210714
     arizmendis@reichardescalera.com

     **Carlos R. Rivera-Ortiz**
     USDC-PR 303409
     riverac@reichardescalera.com

     255 Ponce de León Avenue
     MCS Plaza, 10th Floor
     San Juan, Puerto Rico 00917-1913

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

**Susheel Kirpalani** (*pro hac vice*)
susheelkirpalani@quinnemanuel.com

**K. John Shaffer** (*pro hac vice*)
johnshaffer@quinnemanuel.com

**Daniel Salinas**
USDC-PR 224006
danielsalinas@quinnemanuel.com

**Eric Kay** (*pro hac vice*)
erickay@quinnemanuel.com

**Zachary Russell** (*pro hac vice*)
zacharyrussell@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010-1603

*Co-Counsel for the Lawful Constitutional Debt Coalition*

**G. CARLO-ALTIERI LAW OFFICES, LLC**

By: */s/ Gerardo A. Carlo*
Gerardo A. Carlo
USDC PR No. 112009
Telephone: (787) 247-6680
gacarlo@carlo-altierilaw.com

By: */s/ Mª Mercedes Figueroa y Morgade*
Mª Mercedes Figueroa y Morgade
USDC PR No. 207108
Telephone: (787) 234-3981
figueroaymorgadelaw@yahoo.com

254 San Jose St., Third Floor
San Juan, Puerto Rico 00901
Telephone: (787) 247-6680
Facsimile: (787) 919-0527

**MORRISON & FOERSTER LLP**

By: */s/ Gary S. Lee*
James M. Peck (admitted *pro hac vice*)
Gary S. Lee (admitted *pro hac vice*)
James A. Newton (admitted *pro hac vice*)
Andrew R. Kissner (admitted *pro hac vice*)
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
jpeck@mofo.com
glee@mofo.com
jnewton@mofo.com
akissner@mofo.com

*Counsel for the Ad Hoc Group of Constitutional Debtholders*

**JIMÉNEZ, GRAFFAM & LAUSELL**

/s/ *Ramón Rivera Morales*
J. Ramón Rivera Morales
USDC-PR Bar No. 200701
Andrés F. Picó Ramírez
USDC-PR Bar No. 302114
P.O. Box 366104
San Juan, PR 00936
Telephone: (787) 767-1030
Facsimile: (787) 751-4068
Email: rrivera@jgl.com

**WILLKIE FARR & GALLAGHER LLP**

/s/ *Mark T. Stancil*
Mark T. Stancil (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, DC 20006
Telephone:  (202) 303-1133
Facsimile:  (202) 303-2133
Email:  mstancil@willkie.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ *Andrew N. Rosenberg*
Andrew N. Rosenberg (admitted *pro hac vice*)
Karen R. Zeituni (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Email: arosenberg@paulweiss.com

**ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP**

/s/ *Lawrence S. Robbins*
Lawrence S. Robbins (admitted *pro hac vice*)
Gary A. Orseck (admitted *pro hac vice*)
Donald Burke (admitted *pro hac vice*)
2000 K Street, N.W., 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: lrobbins@robbinsrussell.com

*Co-Counsel for the Ad Hoc Group of General Obligation Bondholders*

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Kurt A. Mayr*
Kurt A. Mayr (admitted pro hac vice)
David L. Lawton (admitted pro hac vice)
Shannon B. Wolf (admitted pro hac vice)
One State Street
Hartford, CT 06103-3178
Tel. (860) 240-2700
Fax: (860) 240-2701
kurt.mayr@morganlewis.com
david.lawton@morganlewis.com
shannon.wolf@morganlewis.com

Sabin Willett (admitted pro hac vice)
One Federal Street
Boston, MA 02110-1726
Tel: (617) 951-8775
sabin.willett@morganlewis.com

**CORREA-ACEVEDO   &   ABESADA   LAW
OFFICES, PSC**

Sergio Criado
USDC-PR No. 226307
Roberto Abesada-Agüet
USDC-PR No. 216706
Centro Internacional de Mercadeo, Torre II
# 90 Carr. 165, Suite 407
Guaynabo, P.R.  00968
Tel. (787) 273-8300
Fax (787) 273-8379
ra@calopsc.com
scriado@calopsc.com

*Co-Counsel for the QTCB Noteholder Group*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

*<u>/s/Carlos R. Rivera-Ortiz</u>*
USDC-PR 303409
