## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

**URGENT MOTION OF ASSURED GUARANTY CORP.,
ASSURED GUARANTY MUNICIPAL CORP., AMBAC ASSURANCE
CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY,
AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, AS HOLDERS
AND INSURERS OF HTA BONDS, TO COMPEL PRODUCTION OF DOCUMENTS
CONCERNING PRELIMINARY HEARING ON LIFT-STAY MOTION**

**(ECF NO. 10102)**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

JURISDICTION AND VENUE .................................................................................................3

BACKGROUND ........................................................................................................................3

    A.    The HTA Lift-Stay Motion and the Government Parties' Refusal to
Produce Certain Documents ...........................................................................................3

    B.    The Court Order Adjourning the Preliminary Hearing, Extending the
Reply Deadline, and Requiring Discovery .............................................................4

ARGUMENT ............................................................................................................................8

    A.    Limited Discovery of the Ownership of, and Restrictions on, the Accounts
Holding the Excise Taxes Must Be Produced.........................................................9

    B.    Fiscal Year 2015-16 Alleged "Appropriation" Documents And
OMB/Treasury Regulations/Rules Relating to the Budgeting Treatment of
Excise Taxes Should Be Produced .......................................................................12

    C.    Movants Are Entitled To Rule 30(b)(6) Depositions Concerning
Documents Produced and the Discoverable Issues Identified in the
Adjournment Order................................................................................................15

RELIEF REQUESTED.............................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Autoridad de Carreteras y Transportación v. Transcore Atl., Inc.*,
319 F.R.D. 422 (D.P.R. 2016) ....................................................................................8, 9

*Banco Popular v. Mun. de Mayagüez*,
126 D.P.R. 653 (1990) (P.R. Offic. Trans.) ...................................................................14

*Brugal & Co. v. Buscaglia*,
64 P.R. 903 (1945) .........................................................................................................14

*Commonwealth Ins. Co. v. Casellas*,
3 P.R. Offic. Trans. 750 (1975) .....................................................................................14

*Norwegian Nitrogen Prods. Co. v. United States*,
288 U.S. 294 (1933) .......................................................................................................14

*Parker Waichman LLP v. Salas LC*,
328 F.R.D. 24 (D.P.R. 2018) ...........................................................................................8

*Roig Commercial Bank v. Buscaglia*,
74 P.R. 919 (1953) .........................................................................................................14

*Thomas & Betts Corp. v. New Albertson's, Inc.*,
2013 WL 11331377 (D. Mass. July 11, 2013).................................................................11

*United Shoe Workers of Am., AFL-CIO v. Bedell*,
506 F.2d 174 (D.C. Cir. 1974) .......................................................................................14

**Statutes & Rules**

48 U.S.C. § 2170.......................................................................................................................1

**Other Authorities**

Fed. R. Bankr. P. 7026, 7034, 7037 and 9014 ..........................................................................1

Fed. R. Civ. P. 26, 34 and 37 ....................................................................................................1

Fed. R. Civ. P. Rule 30(b)(6) ...........................................................................................2, 8, 15

To the Honorable United States Magistrate Judge Judith G. Dein:

Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7034, 7037 and 9014, and Federal Rules of Civil Procedure 26, 34 and 37, made applicable to this contested matter by 48 U.S.C. § 2170, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation, as holders and insurers of HTA bonds (collectively, the "Movants") respectfully submit this urgent motion (the "Urgent Motion") requesting entry of an order, substantially in the form of Exhibit A, compelling the Financial Oversight and Management Board for Puerto Rico (the "FOMB"), the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority (the "HTA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" and, together with the FOMB, the Commonwealth, and HTA, the "Government Parties") to produce documents that are critical to the preliminary issues of standing and property interest that the Court will consider at a preliminary hearing on Movants' motion for relief from the automatic stay.[2]  ECF No. 10102 ("HTA Lift-Stay Motion").[3]

## PRELIMINARY STATEMENT

1.     In anticipation of the Court addressing the issues of standing and property interest at a preliminary hearing on the pending lift-stay motions, Judge Swain ordered that Movants are entitled to discovery regarding certain factual assertions by the Government Parties in their oppositions to the lift-stay motions.  *See* ECF No. 11057 ("Order Granting Mot. to Adjourn").  Much of the discovery ordered had been long sought by Movants and opposed by the Government

---

[2] The parties have agreed to the following briefing schedule: Government Parties shall file an opposition by February 28, 2020 and Movants shall file a reply by March 2, 2020.

[3] Unless otherwise noted, all ECF numbers referenced in this Motion refer to the docket in Case No. 17-3283-LTS.

Parties.  Now, in light of the Court's ruling, it is apparent that Movants are at least entitled to receive discovery that falls within the scope of the Court's order.  Since last week when Judge Swain adjourned the preliminary hearing, extended the reply brief deadline, and ordered discovery, Movants and the Government Parties have met and conferred concerning outstanding discovery requests encompassed by Judge Swain's order.  While the parties were able to reach agreement on a number of issues, there remain instances that Movants in good faith believe that the Government Parties are either refusing to provide the court-ordered discovery, unduly limiting the scope of such discovery, or simply failing to give timely answers about what they will produce and by when.  Movants are therefore compelled to file yet another Motion to Compel, and seek appropriate adverse inferences if the Government Parties fail to timely produce the requested documents. These continuing disputes, though limited in number, are particularly of concern to Movants in view of the pending hearing date of April 2, 2020 and the need to finish discovery and their reply brief on the preliminary hearing issues sufficiently in advance of the hearing.  In advance of that date, Movants must obtain the permitted discovery, translate the documents as necessary, determine the extent to which they raise questions that will need to be answered by a 30(b)(6) deposition witness (or through some other mechanism), and then include the relevant facts in Movants' reply brief.[4]  Movants therefore respectfully request that the Court grant the motion and compel the Government Parties to produce the discovery to which Movants are entitled.  Without such relief, Judge Swain's discovery order would become a hollow gesture.

---

[4] During a recent meet and confer, the FOMB challenged Movants' proposal to file their reply brief seven days before the April 2, 2020 hearing, indicating that the reply brief should be filed earlier.  Movants today received a specific counterproposal that would require substantial completion of preliminary issue discovery by March 16th and the filing of the Movants' Reply Brief on March 23rd. Irrespective of the ultimate reply brief deadline, the need for immediate resolution of these issues and the ultimate providing of the discovery is clear.

## JURISDICTION AND VENUE

2.      The United States District Court for the District of Puerto Rico has subject-matter jurisdiction over this matter under PROMESA § 306(a).

3.      Venue is proper under PROMESA § 307(a).

## BACKGROUND

### A.    The HTA Lift-Stay Motion and the Government Parties' Refusal to Produce Certain Documents

4.      At the January 29, 2020 Omnibus Hearing, the Court stated that there would be a preliminary lift-stay hearing to address two "gating" issues: (1) whether Movants have standing to sue; and (2) Movants' secured status or other property interests.  ECF No. 10595 ("Am. Interim Case Mgmt. Order") at 5.  After Movants argued that these issues required discovery, the Court recognized the need for certain discovery and instructed the parties to meet and confer about the scope of the needed discovery.  *Id.* at 5; *see also* ECF No. 10594 ("Omnibus Hearing Tr.") at 162:22–163:4, 163:17–164:9.

5.      On February 3, 2020, the FOMB filed its Opposition to the HTA Lift-Stay Motion. ECF No. 10613 ("Opposition Brief").  The Opposition Brief raised factual issues that required discovery.  Movants served limited document requests tailored to those factual issues.  Ex. B (HTA Requests for Production).  In response to Movants' requests, the Government Parties slowly produced some documents and refused to provide any discovery as to several requests.  With Movants' reply brief due in days, Movants moved to adjourn the preliminary hearing and extend the reply brief deadline.  ECF No. 10841 ("Mot. to Adjourn").  Movants also moved to compel. ECF No. 10974.

B.    **The Court Order Adjourning the Preliminary Hearing, Extending the Reply Deadline, and Requiring Discovery**

6.      On February 14, 2020, Judge Swain adjourned the preliminary hearing to April 2, 2020, specifically upheld Movants' right to discovery, and directed the parties to meet and confer to jointly propose a deadline for replies in support of the lift-stay motions.  *See* Order Granting Mot. to Adjourn at 2.  In terms of discovery, the Court ruled that it would "allow limited discovery relating to factual representations in paragraphs 77, 81, and 92, and Exhibit A" of the FOMB's Opposition Brief to the HTA Lift-Stay Motion.[5]  *Id.*

7.      In these paragraphs and in Exhibit A (the FOMB's purported flow-of-funds chart), the FOMB makes factual representations on several subjects.  First, as to the proceeds from various excise taxes in which Movants claim to hold a security interest, lien, and other property interests, the FOMB represents that the funds were and are deposited and held only in unrestricted accounts owned legally and beneficially by the Commonwealth, and not for the benefit of HTA and its bondholders.  Opposition Brief ¶ 77 ("Movants do not have the requisite control over any HTA or Commonwealth deposit account."); *id.* ¶ 92 (describing as an initial step that "the Commonwealth collects the HTA Allocable Revenues from taxpayers (not Movants) under its taxing authority [and] deposits them in the TSA"); *id.* at Exhibit A (visual depiction of the FOMB's theory that the Commonwealth holds the collected Excise Taxes in TSA accounts held by the Commonwealth and then, as a second step, makes conditional "appropriations" of the funds from these accounts to a corporate account held by HTA).  The FOMB likewise argues that these funds, until transferred to unspecified accounts held solely by HTA, were not and have never been made available to HTA.

---

[5] In light of Judge Swain's Order, the Court denied the previously filed motion to compel without prejudice. ECF No. 11290.

4

*Id.* ¶ 81 ("Funds only conditionally allocated to HTA and never in fact transferred to HTA cannot possibly be considered funds 'made available' to HTA."). Moreover, the FOMB represents that the proceeds from the Excise Tax Statutes[6] were and have always been mere conditional appropriations made within the budgetary process at the whim of the Commonwealth on an annual basis, and were not transferred or assigned to HTA and its bondholders by law. *Id.* ("[T]he Commonwealth has not appropriated the [Excise Taxes] to HTA."); *id.* ¶ 92 ("The Commonwealth always reserved the right to retain the [Excise Taxes] and use them for its own purposes. . . . [T]he funds are not required to be transferred to HTA bondholders, but to HTA for HTA's 'corporate purposes.'"); *id.* at Exhibit A (identifying appropriations transferred from the TSA accounts allegedly held by the Commonwealth to a corporate account held by HTA for its "corporate purposes"). A summary of the factual representations identified by Judge Swain as appropriate subjects for discovery is annexed as Exhibit C.

8.       In light of Judge Swain's Order that certain factual representations warrant discovery, Movants prepared a detailed set of limited issues and requests that took into account the Court's ruling, the factual representations, and the very limited documents already provided to Movants by the Government Parties. *See* Ex. D (Lift-Stay Discovery Chart). Based on a meet-and-confer held with AAFAF and the FOMB on February 21, 2020 Movants understand that the Government Parties will undertake a reasonable search for documents in response to Request 5,[7]

---

[6] All capitalized terms not defined herein shall have the meanings ascribed to them in the Lift-Stay Motion (ECF No. 10102) and the Amended Interim Case Management Order for Revenue Bonds (ECF No. 10595).

[7] Request 5 seeks "[a]ll reports provided by HTA to the Legislature and Governor of Puerto Rico pursuant to the Enabling Act." Ex. B (HTA Requests for Production).

Request 7,[8] and Request 9.[9]  Movants reserve rights to seek relief as to these requests if necessary

based on the Government Parties' anticipated production.  The same is true for certain aspects (as

noted) of Request 1,[10] Request 2,[11] Request 3,[12] and Request 6[13] (AAFAF has agreed to produce

bank account statements for accounts that have held the alleged collateral; however, AAFAF has

not yet committed to produce a comprehensive set of account statements dating back to January 1,

2015, as requested by Movants), as well as Request 4[14] (AAFAF has agreed to search and produce

---

[8] Request 7 seeks "[d]irection letters or other documents to or from any bank and/or the Secretary of the Treasury regarding the flow of funds and/or use of the Pledged Revenues." *Id.*

[9] Request 9 seeks "[d]ocuments sufficient to show the amount of Pledged Revenues collected in each Fiscal Year from Fiscal Year 2016 to the present, including the amount of Pledged Revenues collected to date in the current Fiscal Year." *Id.*

[10] Request 1 seeks "[d]ocuments sufficient to show each transfer and/or deposit of the Pledged Revenues to the Commonwealth or HTA, and each subsequent Transfer thereof, from January 1, 2015 to the present, including (a) the date of the Transfer, (b) the transferor, (c) the transferee, (d) the amount of the Transfer, (e) the account number and (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information." *Id.*

[11] Request 2 seeks "[d]ocuments sufficient to show each transfer and/or deposit of funds from the Commonwealth to HTA, and each subsequent Transfer thereof, from January 1, 2015 to the present, including (a) the date of the Transfer, (b) the transferor, (c) the transferee, (d) the amount of the Transfer, (e) the account number and (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information." *Id.*

[12] Request 3 seeks "[d]ocuments sufficient to show the total amount of Pledged Revenues presently held by HTA, or the Commonwealth or its instrumentalities, including, without limitations, information sufficient to identify the particular account(s) where such funds are retained; each account holder, financial institution, and beneficiary; and the cash balance of the accounts. *Id.*

[13] Request 6 seeks "[d]ocuments sufficient to show the total amount of money held by HTA, including (a) where the fund I held, (b) information sufficient to identify and distinguish each particular account, (c) all account holders, (d) all account signatories, and (e) and any entity or individual with authority over the account. *Id.*

[14] Request 4 seeks "[d]ocuments, communications, or Agreements (including, without limitation, drafts thereof) to which the Commonwealth and/or HTA is a party relating to the Pledged Revenues, the flow of funds for HTA bonds, and/or the use of Pledged Revenues. *Id.*  Request 4 also seeks "documents and

non-public official budgeting memoranda sent by HTA or Commonwealth senior officials during fiscal years 2015 and 2016 characterizing the Excise Taxes as appropriations to HTA or its property, and HTA supplemental bond Resolutions).  Because productions and meet-and-confers over any necessary follow-up discovery are ongoing, Movants respectfully reserve their right to return to the Court, or to seek additional third-party discovery as appropriate.

9.     The Government Parties have not yet agreed to produce four categories of documents that Movants believe must be produced in the short time afforded by the Court's brief adjournment:[15]  (1) account opening documents, documents sufficient to show account holder/beneficial ownership of the accounts, and transmittal information, dating back to January 1, 2015, as requested in Requests 1, 2, 3, and 6; (2) documents sufficient to show the terms, scope and effect of restrictions placed on HTA-related funds, including the funds described as "restricted" in the Commonwealth's Summary of Cash Restriction Analysis dated October 2, 2019 as requested in Request 8; (3) communications, including internal regulations/rules of the Treasury or OMB, and Commonwealth or HTA official memoranda or authenticated documents (e.g., legislative documents, legislation, agreements or notarized documents), concerning Excise Taxes

---

communications—covering mostly internal agency rules and official memoranda—concerning, among other things, (1) the budgeting treatment of the Excise Taxes, (2) implementation of the Unlawful Executive Orders, (3) flow of funds of the Excise Taxes, (4) definition or scope of "recursos propios" or "ingresos propios," and (5) proposed budgets.  The request also asked for all HTA bond closing transcripts, resolutions (beyond the 1968 and 1998 bond resolutions), and supplemental resolutions.  Ex. E (Feb. 7, 2020 email from G. Rappoport to Government Parties).

[15] Movants are entitled to the full scope of discovery sought in the nine document requests before a ruling is made, in the context of the lift-stay motions, on standing and property interest/secured status.  For this reason, Movants requested such discovery and an extension of the hearing date until April 22 to accommodate discovery and reply briefing.  Judge Swain, however, granted "limited" discovery and an adjournment until April 2.  Movants object to the resulting limitations on their ability to seek full and fair discovery, and reserve all rights to contest them.  This Motion, however, is directed only to discovery that has been authorized by Judge Swain and is made with a complete reservation of rights.

and accounts, i.e., flow of funds information in such documents (e.g., ownership (beneficial or otherwise), account deposit, transfer, restrictions, etc.); and (4) during fiscal years 2015 and 2016 (July 2014 - June 2016), any document (including communications) that refers to Excise Taxes as mere "appropriations" as the FOMB claims, and internal regulations or rules of OMB and Treasury relating to the budgeting treatment of Excise Taxes (e.g., characterizing the Pledged Revenues as appropriations to HTA or its property).

10.     Movants have also requested limited Rule 30(b)(6) depositions concerning the documents produced and the discoverable issues identified in the adjournment order. The parties have agreed to discuss the need and possible scope of a 30(b)(6) deposition upon receipt and review of the documentary discovery. Movants believe such deposition will be necessary.

## ARGUMENT

11.     The parties and this Court already have the benefit of Judge Swain's identification of specific factual representations in the Opposition Brief for which discovery is to proceed. Relevance, therefore, is not at issue in this Motion. "If there is some legitimate relevance to the requested information and if no cognizable privilege attaches, it ought to be discoverable—at least in the absence of some countervailing consideration, *e.g.*, that production would be disproportionately onerous or burdensome, that unfair prejudice would result, or the like." *Parker Waichman LLP v. Salas LC*, 328 F.R.D. 24, 26 (D.P.R. 2018) (internal citation omitted). The party resisting a request for production "'bears the burden'" of establishing the existence of such a countervailing circumstance. *Autoridad de Carreteras y Transportación v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016). "The objecting party must show specifically how each . . . request for production is not relevant or how each question is overly broad, burdensome or oppressive." *Id*. (citations and internal quotation marks omitted) ("[G]eneralized objections to an opponent's discovery requests are insufficient." *Id*.). The Government Parties cannot satisfy this

burden given that Movants' narrowly tailored discovery requests fall squarely within the scope of discovery ordered by Judge Swain.  Where, as here, a court has issued an order in which "both parties were notified of the scope of discovery and of their various discovery obligations . . . [one party] cannot now flout these obligations." *Id*. at 427-28.

### A.   Limited Discovery of the Ownership of, and Restrictions on, the Accounts Holding the Excise Taxes Must Be Produced

12.    As explained above, the Government Parties have not yet agreed to produce (1) account opening documents, documents sufficient to show account holder/beneficial ownership of the accounts, and transmittal information dating back to January 1, 2015, as requested in Requests 1, 2, 3, and 6; (2) documents sufficient to show the terms, scope, and effect of restrictions placed on HTA-related funds, including the funds described as "restricted" in the Commonwealth's Summary of Cash Restriction Analysis dated October 2, 2019 as requested in Request 8; (3) communications including  internal regulations/rules of the Treasury or OMB, and Commonwealth or HTA official memoranda or authenticated documents concerning Excise Taxes and accounts, i.e., flow of funds information in such documents, as requested in Request 4; and (4) during fiscal years 2015 and 2016 (July 2014 - June 2016), any document (including communications) that refers to Excise Taxes as mere "appropriations" as the FOMB claims, and internal regulations or rules of OMB and Treasury relating to the budgeting treatment of Excise Taxes (e.g., characterizing the Pledged Revenues as appropriations to HTA or its property), as requested in Request 4.  They should be compelled to do so immediately.

13.    The requested documents are directly relevant to the FOMB's factual allegations that the Excise Taxes have always resided in accounts owned by the Commonwealth and been held and maintained for its benefit, rather than for the benefit of HTA and its bondholders, and that the proceeds that have accumulated since 2015 have never been "made available" to HTA.  Opposition

9

Brief ¶ 81 ("Funds only conditionally allocated to HTA and never in fact transferred to HTA cannot possibly be considered funds 'made available' to HTA."); *id.* ¶ 92 (describing as an initial step that "the Commonwealth collects the HTA Allocable Revenues from taxpayers (not Movants) under its taxing authority [and] deposits them in the TSA"); *id.* at Exhibit A (visual depiction of the FOMB's theory that the Commonwealth holds the collected Excise Taxes in TSA accounts held by the Commonwealth and then, as an optional second step, makes "appropriations" of the funds from these accounts to a corporate account held by HTA).

14.     These documents—including communications and internal rules and regulations pertaining to the Excise Taxes, from the very agencies charged with implementing the Excise Tax statutes, and administering the deposit and transfer of the Excise Taxes—also are directly relevant to the FOMB's representation that the funds held in Commonwealth accounts are its property, not property of HTA or the bondholders, that may or may not be "appropriated" to HTA (which FOMB (incorrectly) asserts creates a mere expectation in receiving the funds, but not a property interest, and that such mere expectation results in preemption of the applicable HTA related statutes by PROMESA).   Opposition Brief ¶ 81 ("[T]he Commonwealth has not appropriated the HTA Allocable Revenues to HTA."); *id.* ¶ 92 ("The Commonwealth always reserved the right to retain [the Pledged Revenues] and use them for its own purposes . . . . [T]he funds are not required to be transferred to HTA bondholders, but to HTA for HTA's "corporate purposes."); *id.* at Exhibit A (identifying appropriations transferred from the TSA accounts allegedly held by the Commonwealth to a corporate account held by HTA for "corporate purposes").

15.     Although AAFAF has agreed to produce bank account statements, AAFAF has not committed to produce a comprehensive set of account statements dating back to January 1, 2015, as requested by Movants.  Further, Movants understand that produced bank account statements

10

will not contain the necessary information that should be in the documents requested above. The bank account statements produced to date, for example, do not contain information about which entity owns the account, whether the account is being held for the benefit of another party (e.g., HTA or the bondholders), or whether the account or the funds held therein are restricted (and if so the terms, scope, and effect of that restriction). Accordingly, the information that AAFAF has agreed to produce is not a valid substitute for the limited discovery sought and already deemed relevant by Judge Swain.

16.     The requested documents thus fall within the scope of Judge Swain's order; are both relevant and necessary; and are also tailored to specific factual representations made by the FOMB. *See Thomas & Betts Corp. v. New Albertson's, Inc.*, 2013 WL 11331377, at *5 (D. Mass. July 11, 2013) (subpoena was of appropriate breadth where it was "tailored to seek information" regarding a specific claim at issue).

17.     Further, the requested discovery is limited and would not place an undue burden on the Government Parties. Movants seek discrete sets of documents—e.g., the account opening documents and documents sufficient to show matters of enormous import to the "gating issues." These documents should be readily accessible and could no doubt be obtained quickly from the relevant financial institutions or relevant government entities. For example, account opening documents and documents sufficient to show account holder/beneficial ownership of the accounts should be easy to locate and limited in volume. Documents sufficient to show the terms, scope, and effects of purported restrictions placed on HTA-related funds are by definition limited in scope. The same is true for communications, including HTA official memoranda or authenticated documents (e.g., legislative documents, legislation, agreements or notarized documents),

concerning flow of funds information pertaining to the Excise Taxes.  These are very specific types of documents pertaining to very specific laws and funds.

18.     Given that these requests are limited in scope and accessible to the Government Parties without any extraordinary effort, and in light of their clear importance, producing responsive documents is not unduly burdensome.  The Government Parties cannot establish undue burden here, given the narrow scope of Movants' requests and their direct relevance to factual issues of ownership raised in the FOMB's own pleadings.  In any event, any burden associated with these discovery requests would not be undue because the claimed burden is driven not by the scope of the discovery sought (which is limited and modest) but by the exigencies of time. Significantly, Movants are not responsible for the time constraints—the Government Parties have had these discovery requests since early February, but have resisted providing a comprehensive production.  There is no legitimate reason, however, for the Government Parties' refusal to provide a complete response to Movants' discovery requests, particularly now in light of Judge Swain's order; therefore, the Government Parties should provide a complete and immediate response so that Movants will have time to digest the produced materials and incorporate any relevant information into their reply brief in time for the preliminary hearing on April 2, 2020.[16]

**B.     Fiscal Year 2015-16 Alleged "Appropriation" Documents And OMB/Treasury Regulations/Rules Relating to the Budgeting Treatment of Excise Taxes Should Be Produced**

19.     Movants seek, for fiscal years 2015 and 2016 (July 2014 - June 2016), any

---

[16] Movants reserve their right to seek third-party discovery into these issues.  Even assuming that the Government Parties could show that they are unable to locate certain materials without an unduly burdensome search (which Movants dispute), those materials should be readily available from third parties. For example, if the Respondents are unable to find certain transaction or bank account records, the banks that maintain the accounts may be able to locate and produce those records readily from central filing systems.  Movants should have the opportunity to obtain records from any source where they may be available.

document that refers to Excise Taxes as mere "appropriations" as the FOMB claims, and internal regulations or rules of OMB and Treasury relating to the budgeting treatment of Excise Taxes (e.g., characterizing the Pledged Revenues as appropriations to HTA or its property). Movants understand that the Government Parties have categorically refused to produce relevant documents or even search for relevant communications.

20.     The requested documents are directly relevant to the FOMB's factual representations—identified by Judge Swain as warranting discovery—that the Excise Tax Statutes do not transfer ownership of funds to HTA but rather only conditionally appropriate the Excise Taxes on an annual basis to HTA if the Commonwealth voluntarily elects to do so as part of the annual budgeting process. Opposition Brief ¶ 81 ("Funds only conditionally allocated to HTA and never in fact transferred to HTA cannot possibly be considered funds 'made available' to HTA. . . . [T]he Commonwealth has not appropriated the HTA Allocable Revenues to HTA."); *id.* ¶ 92 (describing as an initial step that "the Commonwealth collects the [Excise Taxes] from taxpayers (not Movants) under its taxing authority [and] deposits them in the TSA," asserting that the "Commonwealth always reserved the right to retain [the Excise Taxes] and use them for its own purpose"); *id.* at Exhibit A (asserting that the Commonwealth holds the collected Excise Taxes in TSA accounts held by the Commonwealth and then, as a second step, makes conditional "appropriations" of the funds from these accounts to a corporate account held by HTA).

21.     The FOMB's appropriation theory turns on the factual assumption that the Excise Taxes are meant to be treated as appropriations, rather than property of HTA. Through the requested documents, Movants intend to show, with at least a sample of documents from fiscal years 2015 and 2016, that the Commonwealth's long-standing budgetary practices defy the FOMB's assertion that the transfer of Excise Taxes is an annual appropriation to HTA. This

13

targeted discovery will demonstrate that, before the Commonwealth started to unlawfully divert

the Excise Taxes, they were deemed to be HTA's "Own Income" and were not considered part of

the Commonwealth's annual appropriation process.  This budgetary practice sheds light on the

nature of the transfer effected by the Excise Tax Statutes for the benefit of HTA and its

bondholders.  Courts have often relied on such contemporaneous practice of government officials

to interpret the meaning and operation of constitutional and statutory terms and schemes.  *See, e.g.*,

*Commonwealth Ins. Co. v. Casellas*, 3 P.R. Offic. Trans. 750, 756 (1975) (turning to the "existing

practice" of executive officials to shed light on the meaning of statutory provisions); *United Shoe

Workers of Am., AFL-CIO v. Bedell*, 506 F.2d 174, 185 (D.C. Cir. 1974) ("Contemporaneous

interpretation of a statute by those designed to oversee it commands great respect . . . .").

22.     This Court may therefore rely on the requested documents to conclude that, under

Puerto Rico law, the Excise Taxes do not constitute annual appropriations subject to discretionary

budgeting decisions but are instead revenues collected for and transferred to HTA—that is, a run-

of-the-mill municipal financing mechanism designed to protect limited-recourse special revenues

from the municipality's general creditors.[17]  Accordingly, these documents directly bear on the

factual assertions made by the Government Parties.

23.     The requested discovery also is very limited in nature.  Movants seek documents

---

[17] Discovery is clearly required to guide the Court's interpretation of any statutory or contractual provision
found to be ambiguous, and such discovery clearly should be provided in advance of the preliminary
hearing.  *See Roig Commercial Bank v. Buscaglia*, 74 P.R. 919, 933 (1953) ("This Court has decided that
in case that a provision of law is ambiguous, the administrative practice is important, serving as an effective
aid in the construction of a statute."); *Brugal & Co. v. Buscaglia*, 64 D.P.R. 903, 910 (1945) (approving of
the principle that administrative "'practice has peculiar weight when it involves a contemporaneous
construction of a statute by the men charged with the responsibility"' for administering it (quoting
*Norwegian Nitrogen Prods. Co. v. United States*, 288 U.S. 294, 315 (1933))); *see also Banco Popular v.
Mun. de Mayagüez*, 126 D.P.R. 653, 671 (1990) (P.R. Offic. Trans.) (Hernandez Denton, J., dissenting)
(relying on the "administrative practice of the municipalities of the Treasury Department since the Law was
approved" to interpret the scope of the tax statute at issue).

for a specific time period (Fiscal Years 2015-16).  In terms of any document that actually refers to the Excise Taxes as mere appropriations, the Government Parties staked much of their Opposition Brief on that assertion and thus must have knowledge of them.  In addition, they must have been aware of budgetary or official documents from the time period in question that actually supported their claim before they filed the Opposition Brief.  If not, then Movants are entitled to know they came up empty after a reasonable search.  Nor should it be difficult to locate OMB or Treasury regulations/rules concerning the budgetary treatment of the Excise Taxes.  Given that these requests are within the topics set forth in Judge Swain's Order, limited in time and limited in scope, and go to the heart of the Government Parties' arguments in their Opposition Brief, the discovery requested should not be evaded and is not unduly burdensome.

### C.  Movants Are Entitled To Rule 30(b)(6) Depositions Concerning Documents Produced and the Discoverable Issues Identified in the Adjournment Order

24.     Movants also requested Rule 30(b)(6) depositions concerning the documents produced and the discoverable issues identified in the adjournment order.  Such a deposition will be necessary to understand many of the documents and to provide necessary, admissible context to enable the Court to properly consider the evidence.  Movants request that this Court order the Government Parties to produce a Rule 30(b)(6) witness on behalf of the Commonwealth, AAFAF, or HTA, as needed, to explain and answer appropriate questions.

### RELIEF REQUESTED

25.     The Government Parties should be ordered to produce the documents responsive to Movants' revised informal discovery requests.  Accordingly, Movants respectfully request that this Court (i) enter the Proposed Order attached hereto as Exhibit A granting the relief requested herein, and (ii) grant Movants any such other relief as is just and proper.

15

**Certification of Compliance with**

**Local Rule 9013-1 and Tenth Amended Case Management Procedures**

Pursuant to Local Rule 9013-1 and ¶ I.H of the *Tenth Amended Notice, Case Management and Administrative Procedures*, the undersigned counsel hereby certify that they have (a) carefully examined the matter and concluded that there is a true need for an urgent decision; (b) not created the urgency through any lack of due diligence; and (c) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court.

*[Remainder of page intentionally left blank]*

Dated: February 24, 2020

San Juan, Puerto Rico


CASELLAS ALCOVER & BURGOS P.S.C.       CADWALADER, WICKERSHAM & TAFT LLP


By: _/s/ Heriberto Burgos Pérez_____       By: _/s/ Mark C. Ellenberg_____
     Heriberto Burgos Pérez                          Howard R. Hawkins, Jr.*
     USDC-PR 204809                                  Mark C. Ellenberg*
     Ricardo F. Casellas-Sánchez                     William J. Natbony*
     USDC-PR 203114                                  Ellen M. Halstead*
     Diana Pérez-Seda                                Thomas J. Curtin*
     USDC-PR 232014                                  Casey J. Servais*
     P.O. Box 364924                                 200 Liberty Street
     San Juan, PR 00936-4924                         New York, NY 10281
     Telephone:  (787) 756-1400                      Telephone:  (212) 504-6000
     Facsimile:  (787) 756-1401                      Facsimile:  (212) 504-6666
     Email:     hburgos@cabprlaw.com                 Email:     howard.hawkins@cwt.com
                rcasellas@cabprlaw.com                           mark.ellenberg@cwt.com
                dperez@cabprlaw.com                              bill.natbony@cwt.com
                                                                 ellen.halstead@cwt.com
     *Attorneys for Assured Guaranty Corp.*                      thomas.curtin@cwt.com
     *and Assured Guaranty Municipal Corp.*                      casey.servais@cwt.com

                                                     * Admitted *pro hac vice*

                                                     *Attorneys for Assured Guaranty Corp. and*
                                                     *Assured Guaranty Municipal Corp.*

ADSUAR MUNIZ GOYCO SEDA &
PEREZ-OCHOA PSC

WEIL, GOTSHAL & MANGES LLP

By:/s/ *Eric Perez-Ochoa*
    Eric Pérez-Ochoa
    USDC-PR No. 206,314
    E-mail:    epo@amgprlaw.com

By:/s/Luis A. Oliver-Fraticelli
    Luis A. Oliver-Fraticelli
    USDC-PR NO. 209,204
    E-mail:    loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Tel.:    (787) 756-9000
    Fax:    (787) 756-9010

*Attorneys for National Public Finance
Guarantee Corp.*

By:/s/ *Robert Berezin*
    Jonathan Polkes*
    Gregory Silbert*
    Robert Berezin*
    Kelly DiBlasi*
    Gabriel A. Morgan*

    767 Fifth Avenue
    New York, New York 10153
    Tel.:    (212) 310-8000
    Fax:    (212) 310-8007
    Email:    jonathan.polkes@weil.com
            gregory.silbert@weil.com
            robert.berezin@weil.com
            kelly.diblasi@weil.com
            gabriel.morgan@weil.com

* admitted *pro hac vice*

*Attorneys for National Public Finance
Guarantee Corp.*

FERRAIUOLI LLC

MILBANK LLP


By: /s/ *Roberto Cámara-Fuertes*
    ROBERTO CÁMARA-FUERTES
    USDC-PR NO. 219,002
    E-mail:    rcamara@ferraiuoli.com

By: /s/ *Atara Miller*
    Dennis F. Dunne*
    Atara Miller*
    Grant R. Mainland*
    John J. Hughes*

By: /s/ *Sonia Colón*
    SONIA COLÓN
    USDC-PR NO. 213809
    E-mail:    scolon@ferraiuoli.com

    55 Hudson Yards
    New York, New York 10001
    Tel.:    (212) 530-5000
    Fax:    (212) 530-5219
    Email:    ddunne@milbank.com
            amiller@milbank.com
            gmainland@milbank.com
            jhughes2@milbank.com

    221 Ponce de Leon Ave., 5th Floor
    San Juan, PR 00917
    Tel.:    (787) 766-7000
    Fax:    (787) 766-7001

*Counsel for Ambac Assurance Corporation*

*admitted *pro hac vice*

*Counsel for Ambac Assurance Corporation*

REXACH & PICÓ, CSP                              BUTLER SNOW LLP


By:*/s/ María E. Picó*                          By:*/s/ Martin A. Sosland*
    María E. Picó                               Martin A. Sosland (*pro hac vice*)
    USDC-PR 123214                              5430 LBJ Freeway, Suite 1200
    802 Ave. Fernández Juncos                   Dallas, TX 75240
    San Juan PR 00907-4315                      Telephone:   (469) 680-5502
    Telephone:   (787) 723-8520                 Facsimile:   (469) 680-5501
    Facsimile:   (787) 724-7844                 E-mail:      martin.sosland@butlersnow.com
    E-mail:      mpico@rexachpico.com

    *Attorney for Financial Guaranty*              *\*Admitted pro hac vice in Case No. 17-BK-*
    *Insurance Company*                            *03283-LTS and Case No. 17-BK-03567-LTS*

                                        Jason W. Callen
                                        150 3rd Ave., S., Suite 1600
                                        Nashville, TN 37201
                                        Telephone:   615-651-6774
                                        Facsimile:   615-651-6701
                                        Email:       jason.callen@butlersnow.com

                                        *\*Admitted pro hac vice in Case No. 17-BK-*
                                        *03283-LTS and Case No. 17-BK-03567-LTS*

                                        *Attorneys for Financial Guaranty Insurance*
                                        *Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Puerto Rico by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

At New York, New York, on February 24, 2020.

By: */s/ Robert Berezin*
Robert Berezin*
* Admitted *pro hac* v*ice*

**EXHIBIT A**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[18] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY ("HTA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

**[PROPOSED] ORDER GRANTING URGENT MOTION OF ASSURED GUARANTY
CORP., ASSURED GUARANTY MUNICIPAL CORP., AMBAC ASSURANCE
CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY,
AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, AS HOLDERS
AND INSURERS OF HTA BONDS, TO COMPEL PRODUCTION OF DOCUMENTS
CONCERNING PRELIMINARY HEARING ON LIFT-STAY MOTION**

**(ECF NO. 10102)**

---

[18] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THIS MATTER is before the Court on an Urgent Motion filed by Assured Guaranty Corp.,
Assured Guaranty Municipal Corp., Ambac Assurance Corporation, Financial Guaranty Insurance
Company, and National Public Finance Guarantee Corporation (collectively, the "Movants") to
compel the production of documents by the Federal Oversight and Management Board for Puerto
Rico (the "FOMB"), the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico
Highway and Transportation Authority (the "HTA"), and the Puerto Rico Fiscal Agency and
Financial Advisory Authority ("AAFAF" and, together with the FOMB, the Commonwealth, and
HTA, the "Government Parties"). The Urgent Motion seeks an order compelling the Government
Parties to produce documents responsive to a set of documents requests attached as Exhibit B to
the Urgent Motion to Compel.

UPON CONSIDERATION of the Urgent Motion, the relevant portions of the docket, and
being otherwise fully advised in the matter it is hereby **ORDERED** that:

1.      The Urgent Motion is **GRANTED** as set forth herein.

2.      The Government Parties shall produce documents, dated January 1, 2015 to
        present, responsive to Movants' requests.

- Account statements, transmittal information concerning transfers of
  pledged revenues, and account opening documents showing the legal
  title and registration of the accounts. (Responsive to HTA Request
  Nos. 1, 2, 3, and 6).

- Communications, including internal regulations/rules of the Treasury
  or OMB, and Commonwealth or HTA official memoranda or
  authenticated documents concerning Excise Taxes and accounts, i.e.,
  flow of funds information in such documents. (Responsive to HTA
  Request No. 4).

- During fiscal years 2015 and 2016 (July 2014 - June 2016), any
  document that refers to Excise Taxes as mere "appropriations" as the
  FOMB claims, and internal regulations or rules of OMB and Treasury
  relating to the budgeting treatment of Excise Taxes (e.g.,

characterizing the Pledged Revenues as appropriations to HTA or its property).  (Responsive to HTA Request No. 4).

- Documents sufficient to show the terms, scope, and effect of purported restrictions placed on HTA-related funds, including but not limited to those described as "restricted" in the Commonwealth's Summary of Cash Restriction Analysis dated October 2, 2019.  (Responsive to HTA Request No. 8).

3.    Movants shall be entitled to a 30(b)(6) deposition concerning the documents

ordered to be produced pursuant to this order and the discoverable issues

identified in the adjournment order.


Dated: _____, 2020


                              SO ORDERED:


                              _____
                              Honorable Judith G. Dein
                              United States Magistrate Judge