**EXHIBIT C**

# Factual Assertions in HTA Lift-Stay Opposition (ECF No. 10613) Identified by the Court for Discovery (ECF No. 11057)

_____

**¶ 77**

The Pledged Funds are held by the Fiscal Agent, and arguably the Fiscal Agent has control of them. But there are no deposit account control agreements with respect to any deposit accounts of HTA or the Commonwealth and, therefore, Movants do not have the requisite control over any HTA or Commonwealth deposit account (other than, in the case of HTA, the Pledged Funds). As a result, even if Movants were granted a security interest against all Revenues regardless of where they are deposited, that security interest is unperfected (except as to the Pledged Funds).[30]

[30] Moreover, even if Movants were granted a security interest in HTA's right (if any) to receive Revenues (they were not), such security interest has not been perfected. The only way to perfect a security interest in a right to receive Revenues is to file a financing statement "indicating the collateral covered." *See* 19 L.P.R.A. § 2260(a); 19 L.P.R.A. § 2322(a). None of the Financing Statements identify HTA's right to receive Revenues as collateral. Therefore, any security interest in HTA's right (if any) to receive Revenues is unperfected.

**¶ 81**

Even if Movants had a perfected security interest in funds the Commonwealth transfers to HTA, that would not help Movants as the Commonwealth has not appropriated the HTA Allocable Revenues to HTA. In connection with the HTA Allocable Revenues, HTA only has the power to, "subject to the provisions of § 8 of Art. VI of the Constitution . . . pledge to the payment of [the bonds] bonds and interest thereon, the proceeds of any tax or other funds which may be **made available** to the Authority by the Commonwealth." 9 L.P.R.A. § 2004(l). Funds only conditionally allocated to HTA and never in fact transferred to HTA cannot possibly be considered funds "made available" to HTA.[32] It would also be ineffective under Article 9, because a security interest can only attach to property "the debtor has rights in . . . or the power to transfer rights in," 19 L.P.R.A. § 2233(b)(2), and HTA has neither rights in nor the power to transfer rights in the Commonwealth's property.

[32] In other contexts, the phrase "made available" has been interpreted only to encompass funds actually transferred to or otherwise unconditionally available for use by the taxpayer. *See, e.g., Knapp v. Comm'r*, 41 B.T.A. 23, 27 (B.T.A. 1940) (funds not "made available" to taxpayer when taxpayer only had conditional right to obtain them, stating "[n]one of the funds now being taxed to him were 'made available' to him within the meaning of the statute at any time prior to 1934, when the actual distribution to him was made."); *Newman v. Comm'r*, 68 T.C. 433, 448 (T.C. 1977) (funds not "made available" to petitioner "at any time prior to his retirement because of the conditions placed on withdrawal.").

¶ 92

The statutes governing the premium reimbursements in *Flores Galarza* and the statutes at issue here both use the phrase "shall transfer." That is where the similarity ends. Here, the Commonwealth collects the HTA Allocable Revenues from taxpayers (not Movants) under its taxing authority, deposits them in the TSA, and is then required by statute—subject to certain conditions—to transfer those funds to HTA for HTA's "corporate purposes." 13 L.P.R.A. § 31751(a). The Commonwealth always reserved the right to retain those funds and use them for its own purposes. *See, e.g.*, 13 L.P.R.A. § 31751(a)(1)(C) (making allocation to HTA subject to section 8 of Article VI of the P.R. Constitution). This, among other reasons, eliminates the argument the Commonwealth is a "mere custodian" of funds—it has authority to retain and use the funds. Moreover, the funds are not required to be transferred to HTA bondholders, but to HTA for HTA's "corporate purposes." This is affirmed by comparison to Act 1-2015, section 2.07, which added subsection (G) to 13 L.P.R.A. §31751(a)(1), specifying that "on or after the Effective Date" the account into which the Commonwealth is required to deposit HTA's Allocable Revenues "shall belong to [HTA] for the benefit of the holders of the bonds . . . ." *See* Act 1-2015, § 2.07 (inserting 13 L.P.R.A. § 31751(a)(1)(G)). The "Effective Date" specified in Act 1-2015 never happened,[43] and so the account was never converted into an account held "for the benefit of the holders of the bonds." Nonetheless, the fact Movants negotiated so the Puerto Rico legislature would alter the ownership of the account to specify it would be held for bondholders shows it is not held for their benefit under existing law. Further, as explained above, the statute requiring the Commonwealth to transfer future revenues to HTA was an appropriation by one legislature, and is repealable at any time by the legislature. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 2020 U.S. App. LEXIS 2954, Case No. 19-1699, *17-18 (1st Cir. Jan. 30, 2020) (ERS bondholders lacked a property interest in statutory appropriations in part because appropriations "could be disregarded by a subsequent legislature (to the Bondholders' detriment).").

[43] As added by Act 1-2015, "Effective Date" was defined in new Section 12A(a)(4) as "the date on which the following two (2) requirements are met: (i) all liens on income, taxes, and fees earmarked for the Authority, including those designated under Acts No. 30-2013 and 31-2013, to collateralize the BANs of the Authority (as a result of the payment of said BANs or with the consent of the holders of said BANs) as well as any outstanding debt of the Authority with the Government Development Bank for Puerto Rico are satisfied; (ii) all outstanding loans and obligations that the Authority currently has with the Government Development Bank for Puerto Rico and the Authority's BANs have been repaid or transferred from the Authority to the Infrastructure Financing Authority . . ." New Section 12A(a)(4) further provides that the "President of the Government Development Bank for Puerto Rico shall certify the date on which the requirements in subparagraphs (i) and (ii) are met and said certification shall be filed with the Office of the Secretary of the Senate and the Office of the Clerk of the House of Representatives and shall be published on the website of the Government Development Bank for Puerto Rico." By its terms, Section 12A(b) never became effective because neither prerequisite occurred. Page 125 of the Commonwealth Of Puerto Rico Financial Information and Operating Data Report (December 18, 2016), available at http://www.gdb-pur.com/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf, indicates

that the Effective Date has not occurred and "[t]he Commonwealth does not currently contemplate that" such conditions would "be satisfied in the foreseeable future." The requisite certification by the President of the GDB has not been published at the GDB website http://www.gdb-pur.com/.

## Exhibit A

**HTA Flow of Funds Chart**

Commonwealth imposes and collects cigarette excise taxes (“Cigarette Taxes”) 13 L.P.R.A § 31625
Commonwealth imposes and collects gasoline and oil taxes (“Gas Taxes”) 13 L.P.R.A § 31626
Commonwealth imposes and collects petroleum excise taxes (“Petroleum Taxes”) 13 L.P.R.A § 31627
Commonwealth imposes and collects motor vehicle license fees gasoline and oil taxes (“License Fee”) 9 L.P.R.A §§ 5681, 5682
TSA Accounts (held by CW)
Cigarette Taxes, Gas Taxes, Petroleum Taxes, and License Fees are collected into Commonwealth accounts, including TSA.
Appropriations pursuant to HTA Allocable Revenue Statutes
Gas Taxes “transferred” to HTA for “corporate purposes” on “monthly” basis. 13 L.P.R.A. § 31751(a)(1)(A)
Petroleum Taxes “transferred” to HTA for “corporate purposes” on “monthly” basis. 13 L.P.R.A. § 31751(a)(1)(A)
Cigarette Taxes “transferred” to HTA for “corporate purposes” on “monthly” basis. 13 L.P.R.A. § 31751(a)(3)(C)
License Fees “covered into” deposit for HTA once “collected” 9 L.P.R.A. §§ 2021, 5681
Held by HTA
HTA corporate account (not held by Fiscal Agent). Contains Gas Taxes, Petroleum Taxes, Cigarette Taxes, License Fees, and Toll Revenues (collectively, the “Revenues”)
HTA imposes and collects tolls (“Toll Revenues”) to corporate account 9 L.P.R.A. §§ 2004(j)
Held by Fiscal Agent
Pursuant to section 401 of the HTA Bond Resolutions, HTA is contractually obligated to transfer all Revenyes “received” by HTA to Pledged Funds held with the Fiscal Agent. 1968 Resolution § 401; 1998 Resolution § 401.
HTA Bondholders’ security interest and recourse to Pledged Funds. See 1968 Resolution §§ 401, 601; 1998 Resolution §§ 401, 601.

