## **EXHIBIT D**

# DISCOVERY ON LIFT STAY MOTIONS

| CCDA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[1]** | **Status / Follow Up Requests** |
| **Request 1:** Documents sufficient to show each transfer and/or deposit of Hotel Taxes to the Tourism Company or to GDB, including, without limitation, each transfer and/or deposit to the Tourism Company account at First Bank, and each subsequent transfer thereof, from July 1, 2015 to the present, including (a) the date of the transfer, (b) the transferor, (c) the transferee, (d) the amount of the transfer, (e) information sufficient to identify and distinguish particular accounts, (f) all account holders, assignees, or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information. | ¶¶ 39, 40, 41[2] | No responsive documents produced (except a list of Tourism Company accounts).  Movants seek:<br><br>• Confirmation that all responsive documents have been produced; and<br><br>• Confirmation that CCDA_STAY0000001 includes all Tourism Company or GDB accounts that are used to, or have been used to, hold Hotel Taxes.<br><br>In light of what appear to be incomplete records held at the Commonwealth, Movants will serve third-party subpoenas on the banking institutions listed in CCDA_STAY0000001, seeking accounts statements from January 1, 2012 to the present.  With regard to any accounts at GDB, Movants need the following:<br><br>• Account statements prepared in the ordinary course, from January 1, 2012 to present, sufficient to identify each transaction in such account;<br><br>• Opening documents for such account, including but not limited to signature cards for the account, the legal title registration of the account, and any documentation provided by the Tourism Company to GDB (or vice versa) concerning such account; and<br><br>• Documents sufficient to identify the full name or title, account signatories, and account holder(s) of such account. |

---

[1] Identifies paragraphs in *Opposition of Commonwealth of Puerto Rico to Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and the Bank of New York Mellon Concerning Application of Automatic Stay* (ECF No. 10615) containing factual representations that Judge Swain identified as being appropriate for limited discovery in the *Order Granting Urgent Motion to Adjourn Hearing on Motions for Relief from the Automatic Stay and Extend Deadlines for Replies in Support of Motions for Relief from the Automatic Stay* (ECF No. 11057).

[2] ¶ 39 (showing flow of funds operated consistent with agreements through 2015); ¶ 40 (noting that, in late 2015, the Tourism Company ceased depositing funds into the Transfer Account and retained them instead); ¶ 41 (noting Tourism Company ceased putting funds into the Transfer Account but still collects Hotel Taxes).

## CCDA

| Informal Request | Relevant Opposition Paragraph(s)[1] | Status / Follow Up Requests |
|---|---|---|
| **Request 2:** Documents sufficient to show the total amount of Hotel Taxes presently held by the Tourism Company, GDB, CCDA, or the Commonwealth or its instrumentalities, including, without limitation, information sufficient to identify the particular account(s) where such funds are retained; each account holder, financial institution, and beneficiary; and the cash balance of the accounts. | ¶¶ 39, 40, 41 | Are Respondents willing to stipulate that the First Bank account identified in CCDA_STAY0000001 reflects the total amount of Pledged Hotel Taxes that are held by the Tourism Company, GDB, CCDA, or the Commonwealth or its instrumentalities, or is there a dispute on this that requires further discovery? |
| **Request 3:** Documents, communications, or Agreements to which the Commonwealth, the Tourism Company, CCDA and/or GDB is a party (including, without limitation, drafts thereof), relating to the Hotel Taxes, the flow of funds for CCDA, the retention of Hotel Taxes, the use of Hotel Taxes, and/or the CCDA Bond Documents. | ¶¶ 39, 40, 41 | Have all responsive agreements been collected and produced? Movants request that Respondents collect and produce communications relevant to the paragraphs Judge Swain has identified as appropriate targets for discovery. In addition, Movants specifically request any instructions to financial institutions, memoranda, letters, and/or agreements related to the movement, transfer, or retention of Hotel Taxes. |
| **Request 4:** All reports provided by the CCDA to the Legislature and Governor of Puerto Rico pursuant to the CCDA Enabling Act.  See 23 L.P.R.A. § 6464. | ¶ 39 | No responsive documents produced.  Are any such reports available? |
| **Request 5:** All appropriation requests made by CCDA for reimbursement of clawed-back Pledged Hotel Taxes. | ¶ 40 | In light of updated guidance from Judge Swain on the scope of discovery, Movants are not pursuing this request further at this time but respectfully reserve all rights with respect to future discovery. |
| **Request 6:** Documents sufficient to show the terms, scope, and effects of purported restrictions placed on CCDA-related funds, including but not limited to those funds described as "restricted" in the Commonwealth's "Summary of Cash Restriction Analysis" dated Oct. 2, 2019. | ¶¶ 39, 40, 41 | No responsive documents produced (except a list of Tourism Company accounts).  Are Respondents willing to stipulate that the Hotel Taxes in the First Bank account are not addressed in and will not be utilized as part of the proposed plan of adjustment, or is there a factual dispute on that necessitating additional discovery? |

| CCDA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[1]** | **Status / Follow Up Requests** |
| **Request 7:** Documents sufficient to show the amount of Hotel Taxes collected in each Fiscal Year from Fiscal Year 2016 to the present, including the amount of Pledged Revenues collected in the current Fiscal Year. | ¶¶ 40, 41 | No responsive documents produced.  Movants anticipate that this information should be readily accessible in central files. |
| **NEW:  Request 8**: Documents and communications, including but not limited to instructions to vendors, memoranda, letters, and/or agreements, discussing how the Tourism Company continues to levy and collect the Hotel Taxes. | ¶ 41 | In light of updated guidance from Judge Swain, Movants are slightly changing the scope of former Request 3.  Although this is related to Request 3, Movants are listing it as a new, separate request for clarity. |
| **CCDA Rule 30(b)(6) testimony on the following topics:**<br><br>• Flow of Funds<br><br>• Account Balances<br><br>• Disbursements<br><br>• Statutory Requirements re: Flow of Funds<br><br>• Misappropriation / Claw Back<br><br>• Restrictions on Use of Funds<br><br>• Revenue Collected | ¶¶ 39, 40, 41 | Movants anticipate that the examination would involve questions on, *inter alia*, the following documents:<br><br>• CDA_STAY0000001;<br><br>• CW_STAY0000002; and<br><br>• CW_STAY0000156. |

| PRIFA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[3]** | **Status / Follow Up Requests** |
| **Request 1:** Documents sufficient to show each transfer and/or deposit of the Rum Taxes from the U.S. Treasury to the Commonwealth, the Puerto Rico Infrastructure Fund, or any lockbox account, and each subsequent transfer thereof, from July 1, 2015 to the present, including (a) the date of the transfer, (b) the transferor, (c) the transferee, (d) the amount of the transfer, (e) information sufficient to identify and distinguish particular accounts, (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information. | ¶¶ 29, 38, 69, 103[4] | The documents produced do not identify each transfer and/or deposit of Rum Taxes.  Are Respondents producing additional information?  The produced information should be sufficient to determine, among other things, how the Commonwealth has characterized beneficial ownership and control over the accounts into which the Rum Taxes have been deposited, and over the Rum Taxes, and whether they have been commingled with other funds, and account balances over time to permit a tracing analysis to be undertaken. <br><br> In light of what appear to be incomplete records held at the Commonwealth, Movants will serve third-party subpoenas on Citibank and Banco Popular de Puerto Rico seeking account statements and Disbursement Detail documents. |

---

[3] Identifies paragraphs in *Opposition of Commonwealth of Puerto Rico to Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and the Bank of New York Mellon Concerning Application of Automatic Stay* (ECF No. 10615) containing factual representations that Judge Swain identified as being appropriate for limited discovery in the *Order Granting Urgent Motion to Adjourn Hearing on Motions for Relief from the Automatic Stay and Extend Deadlines for Replies In Support of Motions for Relief from the Automatic Stay* (ECF No. 11057).

[4] ¶ 29 (describing, generally, the flow of Rum Taxes, pursuant to Lockbox Agreement and the "Disbursement Details" that accompanies the first $117 million in Rum Taxes delivered to the TSA "to the credit of PRIFA,"  and asserting that the Commonwealth commingles the monies with other funds in the TSA); ¶ 38 (interpreting various provisions of Trust Agreement as supporting notion that the Pledged Rum Taxes are only those funds deposited into the Sinking Fund, and attaching chart of purported flow of funds, as interpreted by the Oversight Board); ¶ 69 (describing, generally, the flow of Rum Taxes to counter "mere custodian" theory); ¶ 103 (asserting that the Rum Taxes are commingled with other funds in the TSA).

| PRIFA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[3]** | **Status / Follow Up Requests** |
| **Request 2**: Documents sufficient to show the total amount of Rum Taxes presently held by PRIFA, or the Commonwealth or its instrumentalities, including, without limitation, information sufficient to identify the particular account(s) where such funds are retained; each account holder, financial institution, and beneficiary; and the cash balance of the accounts. | ¶¶ 29, 38, 69, 103 | The produced documents do not adequately show the total amount of Rum Taxes presently held, where such funds are held, or identifying features of the accounts in which such funds are held.  Movants seek: <br><br>• Identification of the specific accounts that hold Rum Taxes (at the Commonwealth or PRIFA), and account statements prepared in the ordinary course of business for such accounts; <br><br>• TSA Cash Flow Reports for 2015-2017 and 2019.  Production of TSA Cash Flow Reports is not comprehensive (complete set only provided for FY2018); and <br><br>• Documents sufficient to show the monthly account balance of any account in which Rum Taxes were deposited, including any in which the Oversight Board claims Rum Taxes were commingled with other monies.  *See* ¶ 103 (asserting that Rum Taxes are commingled with other funds in the FSA). |
| **Request 3**: Documents, communications, or Agreements (including, without limitation, drafts thereof) to which the Commonwealth, the Rum Producers, and/or PRIFA is a party, relating to the Rum Taxes, the flow of funds for PRIFA bonds, and/or the use of Rum Taxes. | ¶¶ 29, 38, 69, 103 | Please confirm whether all responsive agreements, including those to which other Rum Producers are a party (e.g., Bacardi), have been collected and produced.  If not, please provide. <br><br>Movants request that Respondents collect and produce communications among the Rum Producers and the Commonwealth, and/or PRIFA, regarding the Rum Taxes, the flow of funds for PRIFA bonds, and/or the use of Rum Taxes, consistent with the paragraphs Judge Swain has identified as appropriate targets for discovery. |
| **Request 4**: All reports provided by PRIFA to the Legislature and Governor of Puerto Rico pursuant to the Enabling Act. | ¶¶ 124, 125[5] | Received reports only from March 2018, September 2018, and February 2019.  Please confirm whether such reports were prepared pursuant to the Enabling Act, whether additional reports exist and, if so, whether they will be produced. |

---

[5] ¶ 124 (arguing that PRIFA does not maintain a property interest in the Rum Tax Funds as the Funds are only a conditional appropriation that can be modified or eliminated by subsequent legislation); ¶ 125 (arguing that Rum Tax Remittances are a "mere appropriation" from the United States because the Remittances are not derived from either PRIFA's or the Commonwealth's operations).

| PRIFA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[3]** | **Status / Follow Up Requests** |
| **Request 5:** All appropriation requests made by PRIFA for reimbursement of clawed-back Pledged Rum Taxes. | ¶¶ 124, 125 | Produced documents reflect information on the amount of clawed-back funds held by the Commonwealth only as of June 28, June 30, and December 31, 2019.  Movants seek:<br><br>• Requests by PRIFA for reimbursement of clawed-back funds;<br><br>• Communications between and among the Commonwealth and PRIFA regarding clawed-back funds, including communications regarding the preparation of the June 2019 presentation; and<br><br>• All TSA Cash Flow Reports for 2015-2017 and 2019.  Production of TSA Cash Flow Reports is not comprehensive (complete set only provided for FY2018). |
| **Request 6:** Documents sufficient to show the total amount of money held by the Puerto Rico Infrastructure Fund and ownership information, including (a) where the fund is held, (b) information sufficient to identify and distinguish each particular account, (c) all account holders, (d) all account signatories, and (e) any entity or individual with authority over the account. | ¶¶ 29, 38, 69, 103 | Have all responsive documents been produced?<br><br>Are Respondents willing to stipulate that the GDB account identified in PRIFA_STAY0000281 and -284, and/or the Banco Popular account identified in PRIFA_STAY0000285, identify the total amount of money held by PRIFA and/or in the Infrastructure Fund?  If not, explain why. |
| **Request 7:** Direction letters or other documents to or from any bank and/or the Secretary of the Treasury regarding the flow of funds and/or use of the Rum Taxes. | ¶¶ 29, 38, 69, 103, 125 | Received letters only from 2019 and one from 2017.  Please confirm whether additional letters exist and, if so, that they will be produced. |
| **Request 8:** Documents sufficient to show the terms, scope, and effects of purported restrictions placed on PRIFA-related funds, including but not limited to those funds described as "restricted" in the Commonwealth's "Summary of Cash Restriction Analysis" dated Oct. 2, 2019. | ¶¶ 69, 103 | No responsive documents produced.  Are Respondents willing to stipulate that these funds are not addressed in and will not be utilized as part of the proposed plan of adjustment, or is there a factual dispute necessitating additional discovery? |

| PRIFA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[3]** | **Status / Follow Up Requests** |
| **Request 9:** Documents sufficient to show the amount of Rum Taxes collected in each Fiscal Year from Fiscal Year 2016 to the present, including the amount of Rum Taxes collected in the current Fiscal Year. | ¶¶ 29, 38, 69, 103, 125 | One letter from the U.S. Treasury re: net excise tax collections due to the Commonwealth (as of 7/31/2019) was produced.  Movants anticipate that additional responsive information should be readily accessible in central files and request that such information be produced.<br><br>In addition, Respondents' production of TSA Cash Flow Reports is not comprehensive (complete set only provided for FY2018).  Movants seek all TSA Cash Flow Reports for 2015-2017 and 2019. |
| **PRIFA Rule 30(b)(6) testimony on the following topics:**<br><br>• Flow of Funds<br><br>• Disbursement Details / Lockbox Agreement / Communications with Rum Producers<br><br>• Account Balances / Commingling<br><br>• Statutorily Required Reports<br><br>• Misappropriation / Claw Back<br><br>• *Flores Galarza* / Trust *res* / Restrictions on Use of Funds | ¶¶ 29, 38, 69, 103, 124-25 | Movants anticipate that the examination would involve questions on, *inter alia*, the following documents:<br><br>• PRIFA_STAY0000001;<br><br>• PRIFA_STAY0000295;<br><br>• PRIFA_STAY0000472;<br><br>• CW_STAY0000002;<br><br>• CW_STAY0000156;<br><br>• PRIFA_STAY0000153; and<br><br>• CW_STAY0000002. |

| HTA | | |
| --- | --- | --- |
| **Informal Request** | **Relevant Opposition Paragraph(s)[6]** | **Status / Follow Up Requests** |
| **Request 1:** Documents sufficient to show each transfer and/or deposit of the Pledged Revenues to the Commonwealth or HTA, and each subsequent Transfer thereof, from January 1, 2015 to the present, including (a) the date of the Transfer, (b) the transferor, (c) the transferee, (d) the amount of the Transfer, (e) the account number and (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information. | ¶¶ 81, 92, & Exhibit A[7] | Documents showing the transfers and/or deposits of Pledged Revenues have not be produced.  Movants seek identification of the specific accounts that have held or that hold Pledged Revenues (at the Commonwealth or HTA), and account statements of such accounts that were prepared in the ordinary course of business.  The requested information should be sufficient to determine, among other things, how the Commonwealth has characterized beneficial ownership and control over the accounts into which the Pledged Revenues have been deposited, and over the Pledged Revenues, and whether they have been commingled with other funds, and account balances over time to permit a tracing analysis to be undertaken. |
| **Request 2:** Documents sufficient to show each transfer and/or deposit of funds from the Commonwealth to HTA, and each subsequent Transfer thereof, from January 1, 2015 to the present, including (a) the date of the Transfer, (b) the transferor, (c) the transferee, (d) the amount of the Transfer, (e) the account number and (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information. | ¶¶ 81, 92, & Exhibit A | Same. |

---

[6] Identifies paragraphs in *Opposition of Financial Oversight and Management Board for Puerto Rico to Motion of Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from Automatic Stay or, in the Alternative, Adequate Protection* (ECF No. 10618) containing factual representations that Judge Swain identified as being appropriate for limited discovery in the *Order Granting Urgent Motion to Adjourn Hearing on Motions for Relief from the Automatic Stay and Extend Deadlines for Replies In Support of Motions for Relief from the Automatic Stay* (ECF No. 11057).

[7] ¶ 81 (noting HTA Allocable Revenues have not been "made available" to HTA because they are only conditionally allocated to HTA and the Commonwealth has not appropriated the HTA Allocable Revenues to HTA); ¶ 92 (explaining that Commonwealth collects HTA Allocable Revenues from taxpayers, deposits them in the TSA, and is then required by statute—subject to certain conditions—to transfer those funds to HTA for HTA's "corporate purposes;" also asserts that the Commonwealth always reserved the right to retain those funds and use them for its own purposes); Exhibit A (HTA Flow of Funds Chart).

| HTA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[6]** | **Status / Follow Up Requests** |
| **Request 3:** Documents sufficient to show the total amount of Pledged Revenues presently held by HTA, or the Commonwealth or its instrumentalities, including, without limitation, information sufficient to identify the particular account(s) where such funds are retained; each account holder, financial institution, and beneficiary; and the cash balance of the accounts. | ¶¶ 81, 92 | No account records clearly show the total amount held and in which account. Movants request the relevant portions of the cash analysis for HTA, account statements prepared in the ordinary course of business for such account, and other account records for such account. |
| **Request 4:** Documents, communications, or Agreements (including, without limitation, drafts thereof) to which the Commonwealth and/or HTA is a party relating to the Pledged Revenues, the flow of funds for HTA bonds, and/or the use of Pledged Revenues.<br><br>**Follow-Up Request (Feb. 7, 2020, 7:40 PM Email):** Documents and communications—covering mostly internal agency rules and official memoranda—concerning, among other things, (1) the budgeting treatment of the Excise Taxes, (2) implementation of the Unlawful Executive Orders, (3) flow of funds of the Excise Taxes, (4) definition or scope of "recursos propios" or "ingresos propios," and (5) proposed budgets. The request also asked for all HTA bond closing transcripts, resolutions (beyond the 1968 and 1998 bond resolutions), and supplemental resolutions. | ¶¶ 77, 81, 92, Ex. A | Have all responsive agreements been collected and produced?<br><br>Movants request that Respondents collect and produce:<br><br>• Communications relevant to the paragraphs Judge Swain has identified as appropriate targets for discovery, including any authenticated documents (this includes, without limitation, legislative documents, legislation, agreements, and/or any notarized documents) related to the accounts previously or currently holding HTA taxes, tolls, and fees and any other agreements related to such taxes, tolls, and fees.<br><br>• For and during fiscal years 2015 and 2016 (July 2014 - June 2016), all documents referring to Pledged Revenues as "appropriations" and official memoranda sent by HTA or Commonwealth senior officials, and internal regulations or rules of OMB and Treasury, relating to the budgeting treatment of the Excise Taxes (e.g., characterizing the Pledged Revenues as appropriations to HTA or its property); and<br><br>• Resolutions, bond closing transcripts, and supplemental resolutions. |
| **Request 5:** All reports provided by HTA to the Legislature and Governor of Puerto Rico pursuant to the Enabling Act. | ¶ 92 | Received reports only FY2017 – FY2020. Please confirm whether such reports were prepared pursuant to the Enabling Act, whether additional reports exist and, if so, whether they will be produced. |

## HTA

| Informal Request | Relevant Opposition Paragraph(s)[6] | Status / Follow Up Requests |
|---|---|---|
| **Request 6:** Documents sufficient to show the total amount of money held by HTA, including (a) where the fund is held, (b) information sufficient to identify and distinguish each particular account, (c) all account holders, (d) all account signatories, and (e) and any entity or individual with authority over the account. | ¶ 81 | No account records clearly show the total amount held and in which account. Movants request account statements prepared in the ordinary course of business and other records for such account. |
| **Request 7:** Direction letters or other documents to or from any bank and/or the Secretary of the Treasury regarding the flow of funds and/or use of the Pledged Revenues. | ¶ 81 & Exhibit A | No responsive documents produced. Are there any such direction letters addressing flow of funds and/or use of the Pledged Revenues? |
| **Request 8:** Documents sufficient to show the terms, scope, and effects of purported restrictions placed on HTA-related funds, including but not limited to those funds described as "restricted" in the Commonwealth's "Summary of Cash Restriction Analysis" dated Oct. 2, 2019. | ¶ 92 | No responsive documents produced. Are Respondents willing to stipulate that these funds are not addressed in and will not be utilized as part of the proposed plan of adjustment, or is there a factual dispute on that necessitating additional discovery? |
| **Request 9:** Documents sufficient to show the amount of Pledged Revenues collected in each Fiscal Year from Fiscal Year 2016 to the present, including the amount of Pledged Revenues collected to date in the current Fiscal Year. | ¶ 77 | Respondents' production of TSA Cash Flow Reports is not comprehensive (complete set only provided for FY2018). Movants seek all TSA Cash Flow Reports for 2015-2017 and 2019. |
| **HTA Rule 30(b)(6) testimony on the following topics:**<br><br>• Flow of Funds<br><br>• Deposit Account Control Agreements<br><br>• Perfection<br><br>• Appropriation / HTA Funds "Made Available"<br><br>• *Flores Galarza* / Transfer | ¶¶ 77, 81, 92, & Exhibit A | Movants anticipate that the examination would involve questions on, *inter alia*, the following documents:<br><br>• HTA_STAY0000001;<br><br>• HTA_STAY0000032; and<br><br>• HTA_STAY0000098. |