# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## URGENT MOTION OF AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AND FINANCIAL GUARANTY INSURANCE COMPANY TO COMPEL PRODUCTION OF DOCUMENTS RELATING TO THE PRELIMINARY HEARING ON THE CCDA AND PRIFA LIFT-STAY MOTIONS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................2

JURISDICTION AND VENUE ..................................................................................................5

BACKGROUND ..........................................................................................................................5

RESERVATION OF RIGHTS .....................................................................................................7

ARGUMENT ...............................................................................................................................8

I.  The Communications Requests Are Squarely Within the Scope of the Discovery that the Court Authorized in the Adjournment Order. ...........................................................9

    A.  The Communications Requests Seek Documents Movants Need to Establish Their Property Interest in the Pledged Revenues. ...................................9

    B.  The Communications Requests Are Not Unduly Burdensome. ..........................11

II.  The Cash Restriction Requests Are Within the Scope of the Court's Order. ...................12

III.  Account Opening Documents and Transmittal Information Should Be Produced. ...........13

IV.  Movants Are Entitled to Rule 30(b)(6) Depositions. ........................................................15

RELIEF REQUESTED ................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Autoridad de Carreteras y Transportación v. Transcore Atl., Inc.*,
   319 F.R.D. 422 (D.P.R. 2016) ........................................................................................8, 11

*Clinton Co. v. United States*,
   1991 WL 95284 (N.D. Ill. May 24, 1991) ..............................................................................11

*Diaz-Garcia v. Surillo-Ruiz*,
   45 F. Supp. 3d 163 (D.P.R. 2014)............................................................................................8

*Parker Waichman LLP v. Salas LC*,
   328 F.R.D. 24 (D.P.R. 2018) ...................................................................................................8

*Sterling Merch., Inc. v. Nestle, S.A.*,
   2008 WL 1767092 (D.P.R. Apr. 15, 2008).............................................................................11

*Vázquez-Fernández v. Cambridge Coll., Inc.*,
   269 F.R.D. 150 (D.P.R. 2010) ................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 26.........................................................................................................................8

Fed. R. Civ. P. 30(b)(6)...........................................................................................................5, 15

Restatement (Second) of Contracts § 223 (1981) .......................................................................11

To the Honorable United States Magistrate Judge Judith G. Dein:

Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7034, 7037, and 9014 and Federal Rules of Civil Procedure 26, 34, and 37, made applicable to this contested matter by 48 U.S.C. § 2170, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Financial Guaranty Insurance Company (collectively, "Movants") respectfully submit this urgent motion (the "Urgent Motion") requesting entry of an order, substantially in the form of **Exhibit A**, compelling the Federal Oversight and Management Board for Puerto Rico (the "Oversight Board") and the Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico ("AAFAF" and, together with the Oversight Board, the "Government Parties") to produce documents that are critical to the resolution of the issues presented at the preliminary hearing on *Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and the Bank of New York Mellon's Motion Concerning Application of the Automatic Stay to the Revenues Securing the CCDA Bonds* [ECF No. 10104] (the "CCDA Lift-Stay Motion") and *Amended Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank Trust National Association, Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* [ECF No. 10602] (the "PRIFA Lift-Stay Motion").[2]

In support of this Urgent Motion, the Movants respectfully represent as follows:

---

[2] Capitalized terms not defined herein have the meanings given to them in the CCDA and PRIFA Lift-Stay Motions, the Amended Interim Case Management Order for Revenue Bonds, No. 17-3283, ECF No. 10595, and the Bondholders' Urgent Motion to Compel Production of Documents, No. 17-3283, ECF No. 10974.

## PRELIMINARY STATEMENT

1.      At the January 29, 2020 omnibus hearing, Judge Swain recognized that Movants would be entitled to some discovery concerning the preliminary hearing issues raised by the CCDA Lift-Stay Motion and the PRIFA Lift-Stay Motion (collectively, the "Lift-Stay Motions").  After there were disputes on the scope of discovery following the January 29, 2020 omnibus hearing, Judge Swain reiterated her ruling in a written order that stated:   "Consistent with the Court's directions at the January 29, 2020, omnibus hearing, the Court believes that some discovery is appropriate."  *See Order Granting Urgent Motion to Adjourn Hearing on Motions for Relief from the Automatic Stay and Extend Deadlines for Replies in Support of Motions for Relief from the Automatic Stay* [ECF No. 11057] at 2 (the "Adjournment Order").

2.      Judge Swain indicated that discovery would be limited to three paragraphs in the Oversight Board's opposition to the CCDA Lift-Stay Motion,[3] and six paragraphs in its opposition to the PRIFA Lift-Stay Motion,[4] that contained "factual representations" that would be appropriate avenues for discovery, in light of the issues that the Court is expected to hear at the preliminary hearing to be held on April 2, 2020.  (*See* Adjournment Order at 2.)

3.      Following Judge Swain's ruling, the parties met and conferred and reached agreement on many of Movants' discovery requests, but the parties have not yet reached an agreement concerning some of the requests:

4.      **Communications.**  In connection with the PRIFA Lift-Stay Motion, Movants sought communications, to which the Commonwealth, PRIFA, or rum producers are a party,

---

[3] *See Opposition of Commonwealth of Puerto Rico to Motion Concerning Application of Automatic Stay* ¶¶ 39-41 [ECF No. 10615] ("CCDA Opposition" or "CCDA Opp.").

[4] *See Supplemental Opposition of Commonwealth of Puerto Rico to Amended PRIFA Bondholder Motion to Lift Automatic Stay* ¶¶ 29, 38, 69, 103, 124, 125 [ECF No. 10611] ("PRIFA Opposition" or "PRIFA Opp.").

relating to the Rum Taxes, the flow of funds for PRIFA bonds, and/or the use of Rum Taxes. In connection with the CCDA Lift-Stay Motion, Movants sought communications to which the Commonwealth, the Tourism Company, CCDA and/or GDB is a party, relating to occupancy tax revenues, the flow of funds for CCDA, or the retention and use of occupancy tax revenues (the "Communications Requests"). (*See* Exhibit B (PRIFA Request No. 3, CCDA Request No. 3).) The Government Parties have objected to these requests on both burden and relevance grounds. But the communications requested directly relate to factual representations in the paragraphs on which Judge Swain ordered discovery. These communications are relevant to secured status, or other property or ownership interests—the issues that Judge Swain plans to address at the preliminary hearing and on which she ordered discovery. Among other things, communications provide important context to the other documentary evidence; communications provide important "course-of-dealing" evidence that can bear on the interpretation of the bond documents at issue in the Lift-Stay Motions (and how the Commonwealth, PRIFA, and CCDA understood and implemented their obligations under the relevant Enabling Acts and bond documents); and communications are relevant to the Oversight Board's factual representation—into which Judge Swain ordered discovery—that "[a]fter the enactment of PROMESA, the continued retention of the Retained Occupancy Tax Revenues was based on PROMESA and its preemption of inconsistent, pre-existing Commonwealth laws." (CCDA Opp. ¶ 40.)

5. **Cash Restriction Analysis**. Movants also seek documents sufficient to show the terms, scope, and effects of purported restrictions placed on CCDA- and PRIFA-related funds, including but not limited to those funds described as "restricted" in the Commonwealth's "Summary of Cash Restriction Analysis" (the "Cash Restriction Analysis" or "CRA") dated October 2, 2019 (the "Cash Restriction Requests"). (*See* Exhibit B (PRIFA Request No. 8, CCDA

Request No. 6).)  These requests too directly relate to factual representations in the paragraphs on which Judge Swain ordered discovery.  These restrictions are probative of ownership, equity in the funds, and the existence of a trust *res*.  With respect to CCDA, responsive documents would enable Movants to verify the accuracy of the Oversight Board's contentions regarding the basis for the Tourism Company's decision to retain funds it previously deposited into the Transfer Account.  With respect to PRIFA, responsive documents would enable Movants to evaluate the Oversight Board's conclusory assertion that "no trust relationship exists" between the Commonwealth and PRIFA because "no 'specific restriction [is] placed upon'" the Commonwealth's use of the funds at issue, leaving the Commonwealth completely "free to use what it received for its own benefit."  (PRIFA Opp. ¶ 103.)

6.   **Account Opening Documents and Transmittal Information**.  Movants have requested account statements, transmittal information concerning transfers of pledged revenues, and account opening documents showing the legal title and registration of the accounts into which Pledged Hotel Taxes or Pledged Rum Taxes were deposited or transferred.  (*See* Exhibit B (PRIFA Request Nos. 1-2, CCDA Request Nos. 1-2).)  While AAFAF has agreed to produce most of the account statements Movants requested (and has produced some), AAFAF has not yet agreed to provide complete transmittal information or account opening documents.  The account opening documents are directly relevant to questions of ownership and equity in the pledged revenues, and whether the monies are held in an identifiable trust *res*.  Similarly, transmittal information is an area that Judge Swain has specifically identified as relevant to whether the funds are subject to a security interest.

7.     **Depositions.**  Movants also need the opportunity to take Rule 30(b)(6) depositions. It is apparent that testimony will be needed to answer Movants' questions about the documents that have already been produced and to provide appropriate context for the Court on these issues.

## JURISDICTION AND VENUE

8.     The United States District Court for the District of Puerto Rico has subject matter jurisdiction over this matter under PROMESA § 306(a).

9.     Venue is proper under PROMESA § 307(a).

## BACKGROUND

10.     Movants respectfully refer the Court to the *Urgent Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation, as Holders and Insurers of HTA Bonds, to Compel Production of Documents Concerning Preliminary Hearing on Lift Stay Motion*, filed today, for relevant procedural background.  Movants set out below additional facts specific to the PRIFA Lift-Stay Motion and the CCDA Lift-Stay Motion.

11.     After Movants filed the Lift-Stay Motions on January 16, 2020, Judge Swain made clear at the omnibus hearing on January 29, 2020 that she expected the Government Parties to provide discovery relevant to the issues that she has identified for the preliminary hearing on the Lift-Stay Motions (now scheduled for April 2, 2020)—including discovery relevant to the issues of Movants' standing to sue and "security or other property interests in the relevant revenues." (*See Amended Interim Case Management Order for Revenue Bonds* (ECF No. 10595) at 5.) During subsequent meet-and-confers, the Government Parties resisted discovery, which ultimately led Movants to file a motion seeking an adjournment for additional discovery.

12.     In its Oppositions to the Lift-Stay Motions, the Oversight Board made a number of factual assertions in its effort to rebut Movants' arguments that Movants have a property interest

in the pledged revenue streams.  In her order granting an adjournment, Judge Swain identified certain paragraphs in the Oppositions as containing "factual representations" that warranted discovery, specifically, paragraphs 39-41 of the Oversight Board's CCDA Opposition and paragraphs 29, 38, 69, 103, 124, and 125 of the Oversight Board's PRIFA Opposition. (Adjournment Order at 2.)

13.    In its CCDA Opposition, the Oversight Board asserted that "until late 2015, the flow of funds operated as contemplated under the implementing statutes and the Bond Documents."  (CCDA Opp. ¶ 39.)  The Oversight Board further asserted that, "[i]n late 2015 . . . the Tourism Company ceased depositing funds into the Transfer Account and instead retained those funds."  (*Id.* ¶ 40.)  It asserted that "prior to PROMESA, this retention of Occupancy Tax Revenues was based on various Commonwealth emergency orders authorizing the retention," and that "[a]fter the enactment of PROMESA, the continued retention of the Retained Occupancy Tax Revenues was based on PROMESA and its preemption of inconsistent, pre-existing Commonwealth laws."  (*Id.*)  Judge Swain's order, by its express terms, called out all of these "factual representations" as proper subjects of discovery.  (Adjournment Order at 2.)

14.    In its PRIFA Opposition, the Oversight Board argued that the Commonwealth receives the Pledged Rum Taxes from the federal government with "no strings attached," deposits them into a treasury lockbox account, transfers a certain portion to the Treasury Single Account, and then transfers them to PRIFA.  (PRIFA Opp. ¶ 69; *see also id.* ¶ 29.)  The Oversight Board also asserted repeatedly that Pledged Rum Taxes are "commingled with other governmental public funds," and therefore cannot constitute a trust *res* held for the benefit of PRIFA or PRIFA bondholders.  (PRIFA Opp. ¶¶ 29, 39; *see also id.* ¶ 38 ("[T]he Rum Tax Remittances are commingled in the Commonwealth's TSA"); *id.* ¶ 103 ("[U]nappropriated Rum Tax Remittances

6

which sit in the TSA, not segregated, and commingled with other revenues are far from a 'clearly defined trust res.'".).) Relatedly, the Oversight Board made several factual assertions about whether any restrictions were applicable to the PRIFA Rum Taxes—asserting that, even if the Pledged Rum Taxes were held in restricted accounts, the money was not held for the benefit of the Bondholders. (*E.g.*, *id.* ¶¶ 38, 69.) The Oversight Board also argued "no trust can exist where no 'specific restriction [is] placed upon [the debtor's] use of the supported trust funds.'" (*Id.* ¶ 103.) Each of these factual representations were expressly covered by Judge Swain's order identifying areas for discovery. (Adjournment Order at 2.)

15.     The parties have met-and-conferred, but have reached an impasse with regard to Movants' requests for communications (*infra* Part I), and have not yet reached agreement regarding Movants' requests for cash restriction documents (*infra* Part II), account opening documents and transmittal information (*infra* Part III), and 30(b)(6) depositions (*infra* Part IV).

## <u>RESERVATION OF RIGHTS</u>

16.     Movants and the Government Parties reached agreement on most of Movants' requests. In particular, AAFAF has committed to producing, to the extent such documents are available: (1) a spreadsheet listing bank accounts holding PRIFA-related funds and statements for such accounts (PRIFA Request Nos. 1-2, 6); (2) documents sufficient to show the amount of pledged revenues collected in each Fiscal Year (CCDA Request No. 7, PRIFA Request No. 9); (3) documents, including, *inter alia*, instructions to vendors, memoranda, letters, and/or agreements, discussing how the Tourism Company continues to levy and collect Hotel Taxes (CCDA Request No. 8); (4) a comprehensive set of TSA Cash Flow reports (CCDA Request No. 5, PRIFA Request No. 5); and (5) disbursement detail packages for the Rum Taxes (PRIFA Request No. 7). (*See* Letter from Grant Mainland to Elizabeth L. McKeen and Michael T. Mervis

7

(Feb. 24, 2020) (attached hereto as Exhibit C) (memorializing meet-and-confers between the parties).)

17.     AAFAF has not yet produced all responsive documents, and with respect to some requests, Movants agreed to review the documents that AAFAF does produce and then determine whether Movants need additional documents.  (Exhibit C.)  Because the Government Parties' production is not complete, Movants respectfully reserve their right to seek additional relief from the Court, or additional third-party or other discovery, as appropriate.

## **ARGUMENT**

18.     Discovery is permitted into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b).  "If there is some legitimate relevance to the requested information and if no cognizable privilege attaches, it ought to be discoverable—at least in the absence of some countervailing consideration, *e.g.*, that production would be disproportionately onerous or burdensome . . . ."  *Parker Waichman LLP v. Salas LC*, 328 F.R.D. 24, 26 (D.P.R. 2018).

19.     A court may compel disclosure in case of disputes.  *See Diaz-Garcia v. Surillo-Ruiz*, 45 F. Supp. 3d 163, 166 (D.P.R. 2014).  The party resisting a request for production "bears the burden of establishing lack of relevancy or undue burden."  *Autoridad de Carreteras y Transportación v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016).  "The objecting party must show specifically how each . . . request for production is not relevant or how each question is overly broad, burdensome or oppressive."  *Id*. (citations and internal quotation marks omitted); *see also id.* ("[G]eneralized objections to an opponent's discovery requests are insufficient.").

20.     In light of Judge Swain's order allowing limited discovery and expressly identifying the factual issues on which discovery is appropriate, the question before this Court is

the straightforward one of whether the requests at issue are within the scope of discovery that Judge Swain allowed.  As set forth below, the requests fall squarely within the permitted scope.

I.   **The Communications Requests Are Squarely Within the Scope of the Discovery that the Court Authorized in the Adjournment Order.**

21.   The Communications Requests seek documents directly relevant to secured status, or other property or ownership interests—the issues that Judge Swain plans to address at the preliminary hearing and on which she ordered discovery.  The Government Parties' relevance and burden objections are without merit.

A.   **The Communications Requests Seek Documents Movants Need to Establish Their Property Interest in the Pledged Revenues.**

22.   The communications Movants seek for the CCDA Lift-Stay Motion are relevant to the Tourism Company's decision to stop depositing funds into the Transfer Account and retain them.  (CCDA Opp. ¶ 40.)  Such communications may shed light on, *inter alia*, the reasoning underlying the Tourism Company's decision or its understanding of the status of those funds at the time it decided to stop depositing them into the Transfer Account.  The Tourism Company's understanding of the status of those funds is relevant to the interpretation of the agreements that govern the CCDA Bonds, and when hotel taxes became collateral for the CCDA Bonds.

23.   Indeed, communications are essentially the only way Movants could obtain meaningful discovery into some of the key factual assertions on which Judge Swain specifically ordered that discovery should be had.  Judge Swain specifically enumerated in her order, as an appropriate subject of discovery, the Oversight Board's factual representations that "prior to PROMESA, this retention of Occupancy Tax Revenues was ***based on*** various Commonwealth emergency orders authorizing the retention," and that "[a]fter the enactment of PROMESA, the continued retention of the Retained Occupancy Tax Revenues was ***based on*** PROMESA and its preemption of inconsistent, pre-existing Commonwealth laws."  (*Id.*)  The Government Parties

9

argued that these statements are legal arguments, not factual representations. But that argument is nothing more than an attempt to relitigate the order that Judge Swain has already issued, in which she specifically identified Paragraph 40 of the CCDA Opposition as one of three paragraphs containing "factual representations" on which discovery is appropriate. The only discovery that would ascertain the historical bases for the retention of pledged revenues are communications that would reflect the thought process and reasoning at the time those decisions were made. The Adjournment Order identifying this issue as necessitating discovery thus necessarily makes communications properly within the scope of the discovery contemplated by the Court.

24.     The communications that Movants seek in connection with the PRIFA Lift-Stay Motion are relevant to the flow of PRIFA-related funds, particularly the flow of rum taxes pursuant to the Lockbox Agreement. Such communications may shed light on the arrangements entered into by the Commonwealth and the Rum Companies, including Bacardi and Serralles, pursuant to the Lockbox Agreement. Indeed, the Oversight Board concedes that the Lockbox Agreement provides that the first $117 million in rum taxes each year should be disbursed to the credit of PRIFA—but makes factual arguments about how these disbursements occur. (*E.g.*, PRIFA Opp. ¶ 29.) Discovery is thus necessary to clarify the effect of the Commonwealth's arrangements with the Rum Companies on the flow of funds and Movants' security interests or other property rights in those funds. (*See* Adjournment Order at 2.)

25.     Communications are also relevant course-of-dealing evidence that bear directly on the interpretation of the bond documents. Such evidence is admissible regardless of whether the Court finds any ambiguity in the bond documents. *See* Restatement (Second) of Contracts § 223 (1981) ("There is no requirement that an agreement be ambiguous before evidence of a course of

dealing can be shown, nor is it required that the course of dealing be consistent with the meaning the agreement would have apart from the course of dealing.").

26.     In addition, while Movants believe the contractual documents unambiguously support their arguments, even where "both sides contend that the agreement is unambiguous (when read their way)," the Court nevertheless can find ambiguity. *Clinton Co. v. United States*, 1991 WL 95284, at *5 (N.D. Ill. May 24, 1991). If the Court does so here, Movants would be entitled to introduce parol evidence, including communications, to support their interpretation.

### B.     The Communications Requests Are Not Unduly Burdensome.

27.     The Government Parties objected to the Communications Requests on the grounds that production would pose an undue burden—an issue on which the Government Parties bear the burden. *See Vázquez-Fernández v. Cambridge Coll., Inc.*, 269 F.R.D. 150, 164 (D.P.R. 2010); *Autoridad de Carreteras*, 319 F.R.D. at 427. A party "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance." *Sterling Merch., Inc. v. Nestle, S.A.*, 2008 WL 1767092, at *2 (D.P.R. Apr. 15, 2008).

28.     The Government Parties cannot make that showing here. Given that the Government Parties are seeking to eliminate billions of dollars of liabilities, it is not an "undue" burden to insist upon some discovery beyond account statements and similar documents.

29.     Moreover, Movants have narrowly tailored the Communications Requests to limit them to issues directly relevant to the Lift-Stay Motions. Movants are willing to meet-and-confer with the Government Parties regarding a reasonable and targeted scope for collection, as well as (if necessary) targeted search terms that will facilitate an efficient and focused review process consistent with the limited time period the Court has allotted for discovery. The Government Parties have refused, however, to entertain *any* search whatsoever for communications (or even to

11

produce any communications they might have already collected and identified as relevant), even though there plainly are many communications that bear directly on the critical issues the Court has identified. Given the massive amount at stake here, the Government Parties' refusal to produce *any* communications cannot be justified on "burden" grounds.

## II.   **The Cash Restriction Requests Are Within the Scope of the Court's Order.**

30.     Through the Cash Restriction Requests, Movants seek documents sufficient to show the terms, scope, and effects of purported restrictions placed on CCDA- and PRIFA-related funds, including those funds described as "restricted" in the CRA. Movants have also requested spreadsheets for PRIFA listing bank accounts, similar to the spreadsheet that has already been produced for CCDA. The Government Parties have indicated that they may produce some documents, but have not clearly agreed to produce all of the information Movants request.[5]

31.     In the CRA, the Commonwealth distinguished "restricted cash" from "unrestricted cash," and indicated that "unrestricted cash represents potential value available to Commonwealth Title III creditors." (Exhibit D (CRA) at 3.) The CRA specifically identified certain funds held by the Puerto Rico Tourism Company (*id.* at 10) and PRIFA (*id.* at 9) as "restricted funds." These restrictions are probative of ownership, equity in the funds, and the existence of a trust *res*. Judge Swain's order specifically identified the Oversight Board's assertion that Rum Taxes are "commingled" with other funds, and not subject to restrictions, as proper avenues for discovery. (Adjournment Order at 2 (citing PRIFA Opp. ¶¶ 38-39, 103).) The CRA is directly relevant to these issues.

---

[5] In the event that the parties are able to reach agreement on the issues addressed in Parts II-IV of this Urgent Motion, Movants will withdraw those portions of the Urgent Motion. Movants respectfully raise these issues now, given the briefing schedule ordered by the Court and the fact that the Government Parties have not yet been able to provide their final position on these requests.

32.     As to CCDA, the relevance of such restrictions is buttressed by recent discovery, which appears to identify the specific bank account in which hotel taxes are held and identifies that account as "Depository – Restricted."  This recent discovery confirms the need for and relevance of the Cash Restriction Requests, including the Commonwealth's basis for the determination that certain monies—here, approximately $91 million in occupancy tax revenue—are deemed "restricted" and thus unavailable for use in a Commonwealth plan of adjustment.

33.     Likewise, any restrictions on the funds held by PRIFA go to the heart of issues identified as worthy of discovery in the Adjournment Order.  For instance, in paragraphs 69 and 103 of the PRIFA Opposition, the Oversight Board denied that the Commonwealth holds the Pledged Rum Taxes in trust for the benefit of PRIFA, and contended that "no trust can exist where no 'specific restriction [is] placed upon [the debtor's] use of the supposed trust funds, and [the debtor] was left free to use what it received for its own benefit.'"  (PRIFA Opp. ¶¶ 69, 103.)  In order to determine whether the Oversight Board's conclusory assertion that "no trust relationship exists" is true, Movants must have access to relevant documents specifying the nature and scope of the restrictions placed on PRIFA-related funds.

34.     The Government Parties have not articulated any burden-based objection.  Nor could they.  The Cash Restriction Requests are directly relevant, and narrowly tailored, to factual issues of ownership, flow of funds, and the existence of a trust that the Oversight Board put at issue in its Oppositions and which will be the subject of the April 2 hearing.  As with the Communications Requests, moreover, the Government Parties cannot show that any burden outweighs Movants' need for this discovery.

## III.    Account Opening Documents and Transmittal Information Should Be Produced.

35.     The Government Parties have not yet agreed to produce account opening documents and documents sufficient to show account holder/beneficial ownership of the accounts,

and the transmittal information associated with all transfers of the Hotel Taxes and the Rum Taxes, as requested in PRIFA Request Nos. 1-2, and CCDA Request Nos. 1-2.

36. Although AAFAF has agreed to produce bank account statements, such statements will not provide sufficient information to resolve the "gating issues" set for the April 2 hearing. For example, the bank account statements produced to date (which date back only to July 2015) do not clearly indicate whether the account is being held for the benefit of another party (*e.g.*, PRIFA or the Bondholders) or whether the account or the funds held therein are restricted (and, if so, the terms, scope, and effect of that restriction). Nor has AAFAF committed to producing account statements from the period January 1, 2015 to July 1, 2015, as requested by Movants. And, although AAFAF has agreed to provide certain "Disbursement Detail" documents relating to the transfer of Rum Taxes from the Lockbox bank to the TSA, that is not enough. Movants are entitled to historic transmittal information associated with any receipt or transfer of Hotel Taxes and Rum Taxes from or to any accounts, which are plainly probative of the very property rights that Movants claim to have by statute and contract. Indeed, the Court effectively acknowledged as much at the January 29 omnibus hearing (Tr. 140-42) and in the Adjournment Order (identifying, among others, ¶ 29 of the PRIFA Opposition).

37. At bottom, the information that AAFAF has agreed to produce is not a sufficient substitute for the discovery sought and already deemed relevant by Judge Swain. To the extent the Government Parties refuse or fail to produce (a) account opening documents, (b) transmittal information, and/or (c) an additional six months of account statements from January 1, 2015–July 1, 2015, all of which should be readily accessible and limited in volume, this Court should compel them to do so.

**IV.**     **Movants Are Entitled to Rule 30(b)(6) Depositions.**

38.     Movants also requested limited Rule 30(b)(6) depositions to fully understand the documents that are produced and to provide proper context for the Court.  Given the limited time remaining for the production and review of documents, many of which require translation, it is imperative that Movants have the benefit of testimony from witnesses familiar with the issues and documents.  Merely posing written questions to counsel to the Government Parties, as the Government Parties have offered, is an inefficient and inadequate alternative.

39.     Although Movants are still awaiting the Government Parties' final position, in the event the parties cannot reach agreement, Movants ask that this Court order the Government Parties to produce Rule 30(b)(6) witnesses, as needed, to explain the documents produced.  On some issues where documents have not been produced or do not exist, witness testimony is necessary to answer questions on the critical "gating issues" identified in the Adjournment Order.

**RELIEF REQUESTED**

40.     In light of the foregoing, Movants request that this Court order the Government Parties to produce documents responsive to Movants' requests and produce deposition witnesses.

41.     WHEREFORE the Movants respectfully request that this Court (i) enter the Proposed Order attached hereto as Exhibit A granting the relief requested herein, and (ii) grant Movants such other relief as is just and proper.

**Certification of Compliance with**
**Local Rule 9013-1 and Tenth Amended Case Management Procedures**

Pursuant to Local Rule 9013-1 and ¶ I.H of the *Tenth Amended Notice, Case Management and Administrative Procedures*, the undersigned counsel hereby certify that they have (a) carefully examined the matter and concluded that there is a true need for an urgent decision; (b) not created the urgency through any lack of due diligence; and (c) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court.

*[Remainder of page intentionally left blank]*

Dated:  February 24, 2020
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: */s/ Roberto Cámara-Fuertes*
     Roberto Cámara-Fuertes (USDC-PR No.
     219002)
     Sonia Colón (USDC-PR No. 213809)
     221 Ponce de León Avenue, 5th Floor
     San Juan, PR 00917
     Telephone: (787) 766-7000
     Facsimile: (787) 766-7001
     Email:  rcamara@ferraiuoli.com
           scolon@ferraiuoli.com

**REXACH & PICÓ, CSP**

By: */s/ María E. Picó*
     María E. Picó
     (USDC-PR No. 123214)
     802 Ave. Fernández Juncos
     San Juan, PR 00907-4315
     Telephone: (787) 723-8520
     Facsimile: (787) 724-7844
     Email: mpico@rexachpico.com

**MILBANK LLP**

By: */s/ Atara Miller*
     Dennis F. Dunne (admitted *pro hac vice*)
     Atara Miller (admitted *pro hac vice*)
     Grant R. Mainland (admitted *pro hac vice*)
     John J. Hughes, III (admitted *pro hac vice*)
     55 Hudson Yards
     New York, NY 10001
     Telephone: (212) 530-5000
     Facsimile:  (212) 530-5219
     Email: ddunne@milbank.com
           amiller@milbank.com
           gmainland@milbank.com
           jhughes2@milbank.com

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*
     Martin A. Sosland (admitted *pro hac vice*)
     5430 LBJ Freeway, Suite 1200
     Dallas, TX 75240
     Telephone: (469) 680-5502
     Facsimile: (469) 680-5501
     Email: martin.sosland@butlersnow.com
     Jason W. Callen (admitted *pro hac vice*)
     150 3rd Ave., S., Suite 1600
     Nashville, TN 37201
     Telephone: (615) 651-6774
     Facsimile: (615) 651-6701
     Email: jason.callen@butlersnow.com

*Attorneys for Ambac Assurance Corporation*

*Attorneys for Financial Guaranty Insurance Company*

[*Remainder of Page Intentionally Omitted*]

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: */s/ Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    (USDC-PR No. 204809)
    Ricardo F. Casellas-Sánchez
    (USDC-PR No. 203114)
    Diana Pérez-Seda
    (USDC-PR No. 232014)
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
          rcasellas@cabprlaw.com
          dperez@cabprlaw.com

**CADWALADER, WICKERSHAM & TAFT LLP**

By: */s/ Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr. (admitted *pro hac vice*)
    Mark C. Ellenberg (admitted *pro hac vice*)
    William J. Natbony (admitted *pro hac vice*)
    Ellen M. Halstead (admitted *pro hac vice*)
    Thomas J. Curtin (admitted *pro hac vice*)
    Casey J. Servais (admitted *pro hac vice*)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
          mark.ellenberg@cwt.com
          bill.natbony@cwt.com
          ellen.halstead@cwt.com
          thomas.curtin@cwt.com
          casey.servais@cwt.com

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

CM/ECF participants in this case.

*/s/ Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com