# EXHIBIT C



**GRANT MAINLAND**

*Partner*
55 Hudson Yards | New York, NY 10001-2163
T: 212.530.5251
gmainland@milbank.com | milbank.com

February 24, 2020

**VIA EMAIL**

Elizabeth L. McKeen
O'Melveny & Myers LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660

Michael T. Mervis
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036

Re: February 21, 2020 and February 24, 2020 Meet & Confers Regarding Lift Stay Discovery

Dear Ms. McKeen and Mr. Mervis:

I write, as counsel to Ambac Assurance Corporation, and on behalf of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation (collectively, "Movants"), to memorialize the substance of the telephonic meet-and-confers held on Friday, February 21, 2020 and Monday, February 24, 2020, concerning lift stay discovery relating to issues for the April 2, 2020 preliminary hearing. Prior to the meet-and-confers, Movants distributed a chart to the Puerto Rico Fiscal Agency & Financial Advisory Authority ("AAFAF") and the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") (collectively, the "Government Parties") describing the status of discovery and identifying limited follow-up requests Movants believed fell within the discovery topics identified by Judge Swain in her recent order. Below please find our understanding of the parties' positions regarding the issues that were discussed during the meet-and-confers.

## CCDA Requests

Request 1: *Documents sufficient to show each transfer and/or deposit of Hotel Taxes to the Tourism Company or to GDB, including, without limitation, each transfer and/or deposit to the Tourism Company account at First Bank, and each subsequent transfer thereof, from January 1, 2015 to the present, including (a) the date of the transfer, (b) the transferor, (c) the transferee, (d) the amount of the transfer, (e) information sufficient to identify and distinguish particular accounts, (f) all account holders, assignees, or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields,*

*memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information.*[1]

The parties discussed the following components of CCDA Request No. 1:

**Account Statements.** AAFAF agreed to produce account statements, from July 1, 2015 to present, for each of the bank accounts identified in CCDA_STAY0000001. AAFAF stated that it would consider producing account statements dating back to January 1, 2015.

Subsequent to the meet-and-confer, on February 21, 2020, AAFAF made a production of account statements, which Movants are currently reviewing. However, Movants note that the production of documents for the account held at GDB (titled "Room Tax-Concentration") appears to extend only through March 2016. Movants respectfully request a complete set of the GDB account statements, from January 1, 2015, through present (or through the date the account held at GDB was closed).

**Transmittal Information.** AAFAF objected that the request for "all transmittal information associated with" transfers of Hotel Taxes was overly broad. Movants agreed to review the additional documents that AAFAF was planning to produce and then to identify what additional information Movants need.

Having reviewed additional information from AAFAF, Movants have identified certain transactions in the account held at GDB for which insufficient information has been produced. Movants will send an illustrative list of examples of such transfers as soon as practicable.

**Account Opening and Registration Documents.** Movants requested account opening documents and holder/beneficial ownership information. Such documents are relevant to, *inter alia*, the control of funds, ownership, and equity questions. AAFAF agreed to consider producing such documents. Please let us know as soon as practicable whether AAFAF is willing to produce these documents, and whether it believes that it has copies of them in its possession, custody, or control. As Movants noted, in light of AAFAF's commitment to produce account statements, Movants are presently holding off on serving additional third-party subpoenas; but in the event that AAFAF is unwilling or believes it may be unable to produce a complete set of account opening and registration documents, Movants may need to seek additional third-party discovery.

Request 2: *Documents sufficient to show the total amount of Hotel Taxes presently held by the Tourism Company, GDB, CCDA, or the Commonwealth or its instrumentalities, including, without limitation, information sufficient to identify the particular account(s) where such funds*

[1] The Informal Requests that Movants originally circulated on February 5, 2020, contained a start date of July 1, 2015, and the chart circulated on February 20, 2020, reflected this original request. As discussed during the February 21, 2020 meet-and-confer, in light of Judge Swain's order, Movants are requesting a start date of January 1, 2015, so that it is possible to ascertain the flow of funds prior to the Commonwealth's financial difficulties. The requests as reproduced in this letter have been updated to reflect Movants' revised request, as communicated during the February 21, 2020 meet-and-confer.

*are retained; each account holder, financial institution, and beneficiary; and the cash balance of the accounts.*

Movants requested a stipulation that the FirstBank account identified in CCDA_STAY0000001 reflects the total amount of Pledged Hotel Taxes that are held by the Tourism Company, GDB, CCDA, or the Commonwealth or its instrumentalities. (The balance in this account was listed as $91,174,396.82 as of December 31, 2019.) Counsel to AAFAF stated that they will consult their client regarding the requested stipulation. To the extent that the Government Parties are unwilling to agree to the stipulation, Movants request documents sufficient to show any other Hotel Taxes and where they are held.

Request 3: *Documents, communications, or Agreements to which the Commonwealth, the Tourism Company, CCDA and/or GDB is a party (including, without limitation, drafts thereof), relating to the Hotel Taxes, the flow of funds for CCDA, the retention of Hotel Taxes, the use of Hotel Taxes, and/or the CCDA Bond Documents.*

AAFAF stated that it will not produce any communications responsive to CCDA Request No. 3 at this time. Movants noted that such communications are relevant to, *inter alia*, the Oversight Board's factual representation in Paragraph 41 of the Board's Opposition that, in late 2015, the Tourism Company ceased depositing funds into the Transfer Account and instead retained those funds. Communications may speak to the Commonwealth's decision to cease depositing funds in the Transfer Account and instead retain those funds. The Commonwealth contended that such representations were legal assertions, not factual assertions. However, in the Adjournment Order, Judge Swain identified paragraphs 39-41 of the Oversight Board's CCDA Opposition brief as containing "factual representations." The parties agreed that they are likely at an impasse on CCDA Request No. 3.

Request 4: *All reports provided by the CCDA to the Legislature and Governor of Puerto Rico pursuant to the CCDA Enabling Act. See 23 L.P.R.A. § 6464.*

AAFAF stated that it has conducted a reasonable search for responsive documents, including reports provided by the CCDA to the Legislature and Governor of Puerto Rico pursuant to the CCDA Enabling Act, but found no responsive documents.

Request 5: *All appropriation requests made by CCDA for reimbursement of clawed-back Pledged Hotel Taxes.*

Movants agreed to not pursue CCDA Request No. 5 further at this time but reserved all rights with respect to future discovery.

Request 6: *Documents sufficient to show the terms, scope, and effects of purported restrictions placed on CCDA-related funds, including but not limited to those funds described as "restricted" in the Commonwealth's "Summary of Cash Restriction Analysis" dated Oct. 2, 2019.*

Movants asked that the Government Parties stipulate that the Hotel Taxes in the FirstBank account identified in CCDA_STAY0000001 are not addressed in and will not be utilized as part of the proposed plan of adjustment. AAFAF deferred to the Oversight Board, which stated that it is unlikely to agree to such a stipulation but requested further clarification of what Movants are requesting. Movants agreed to provide such clarification, and sent an email to the Government Parties on February 22, 2020, outlining more specifically the request.

During the February 24, 2020 meet-and-confer, the Oversight Board agreed to produce documents reviewed by the parties that prepared the Cash Restriction Analysis, specifically those pertaining to line items relating to CCDA, PRIFA, or HTA. Movants inquired whether any explanatory memoranda, instructions, or other documents exist that may shed light on those designations, and the Oversight Board indicated that it believed no such documents are available for production but would confirm.

To be clear, absent a stipulation, Movants are requesting that documents responsive to CCDA Request No. 6 be produced, including, without limitation, documents showing what the term "Restricted" means in the Cash Restriction Analysis, and whether or how the "restricted" pledged revenues are addressed in the proposed plan of adjustment. If no documents are available to answer these questions, Movants would request Rule 30(b)(6) depositions on these issues.

Request 7: *Documents sufficient to show the amount of Hotel Taxes collected in each Fiscal Year from Fiscal Year 2016 to the present, including the amount of Pledged Revenues collected in the current Fiscal Year.*

AAFAF indicated that it would search for and produce the responsive documents.

Request 8: *Documents and communications, including but not limited to instructions to vendors, memoranda, letters, and/or agreements, discussing how the Tourism Company continues to levy and collect the Hotel Taxes.*

Movants emphasized the need for documents that support the Oversight Board's assertion that the Tourism Company continues to levy and collect Occupancy Tax Revenues but has ceased depositing funds in the Transfer Account. AAFAF stated that it would search for and produce some responsive documents. Movants agreed to review the documents AAFAF produces and request additional information as appropriate.

PRIFA Requests

Request 1: *Documents sufficient to show each transfer and/or deposit of the Rum Taxes from the U.S. Treasury to the Commonwealth, the Puerto Rico Infrastructure Fund, or any lockbox account, and each subsequent transfer thereof, from January 1, 2015 to the present, including (a) the date of the transfer, (b) the transferor, (c) the transferee, (d) the amount of the transfer, (e) information sufficient to identify and distinguish particular accounts, (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including, without*

*limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information.*[2]

AAFAF stated that it would respond to PRIFA Request No. 1 similarly to how it will respond to CCDA Request No. 1. AAFAF also indicated during the February 24, 2020 meet-and-confer that, to the extent such a document exists, it would produce the PRIFA analog to CCDA_STAY0000001.

Movants noted that transmittal information is of particular importance regarding the transfer and/or deposit of Rum Taxes from the U.S. Treasury to the Commonwealth, the Puerto Rico Infrastructure Fund, and any lockbox account. Movants noted that such information is relevant in light of the Oversight Board's assertion that the Rum Taxes are commingled with other funds in the Treasury Single Account ("TSA"). The parties agreed to revisit PRIFA Request No. 1 after Movants have reviewed AAFAF's latest production.

As of the date of this letter, Movants have not yet received additional PRIFA-related documents, and in particular, have not received the account statements for PRIFA, but will review them promptly and follow up with AAFAF when those are received.

Request 2: *Documents sufficient to show the total amount of Rum Taxes presently held by PRIFA, or the Commonwealth or its instrumentalities, including, without limitation, information sufficient to identify the particular account(s) where such funds are retained; each account holder, financial institution, and beneficiary; and the cash balance of the accounts.*

The parties agreed to revisit PRIFA Request No. 2 after Movants have reviewed AAFAF's latest production.

Request 3: *Documents, communications, or Agreements (including, without limitation, drafts thereof) to which the Commonwealth, the Rum Producers, and/or PRIFA is a party, relating to the Rum Taxes, the flow of funds for PRIFA bonds, and/or the use of Rum Taxes.*

The parties' position was largely the same as the parties' position on CCDA Request No. 3. AAFAF objected to the production of communications to which the Commonwealth, the Rum Producers, and/or PRIFA is a party on the grounds that such discovery is irrelevant, burdensome, and not consistent with "limited discovery." Movants disagreed, noting that such communications are relevant evidence of the Commonwealth's course-of-dealing with regards to the flow of the Rum Taxes. The parties agreed that they are at an impasse with regards to PRIFA Request No. 3.

Request 4: *All reports provided by PRIFA to the Legislature and Governor of Puerto Rico pursuant to the Enabling Act.*

AAFAF stated that it has conducted a reasonable search for responsive documents, including reports provided by PRIFA to the Legislature and Governor of Puerto Rico pursuant to

[2] *See supra* note 1.

the CCDA Enabling Act, and have produced all documents it was able to locate that are responsive to PRIFA Request 4.

Request 5: *All appropriation requests made by PRIFA for reimbursement of clawed-back Pledged Rum Taxes.*

Movants' pre-meet and confer summary identified three areas of needed discovery—(a) requests by PRIFA for reimbursement of clawed-back funds, (b) communications relating to clawed-back funds, and (c) certain TSA Cash Flow reports. As to (a), AAFAF stated that it has conducted a reasonable search for responsive documents and has produced all such documents. As to (b), AAFAF's position was that it would not search for or produce communications. As to (c), AAFAF advised the TSA Cash Flow Reports would be produced.

Request 6: *Documents sufficient to show the total amount of money held by the Puerto Rico Infrastructure Fund and ownership information, including (a) where the fund is held, (b) information sufficient to identify and distinguish each particular account, (c) all account holders, (d) all account signatories, and (e) any entity or individual with authority over the account.*

Movants requested a stipulation that the PRIFA account statements to be produced identify the total amount of money held by PRIFA and/or in the Infrastructure Fund. The Government Parties stated that they needed to consult their clients prior to agreeing to such a stipulation.

Request 7: *Direction letters or other documents to or from any bank and/or the Secretary of the Treasury regarding the flow of funds and/or use of the Rum Taxes.*

AAFAF stated that it would produce representative examples of disbursement detail packages responsive to PRIFA Request No. 7. Movants confirmed that they do believe there should be a comprehensive production of these materials. Among other considerations, the representative examples that AAFAF has produced to date appeared to involve transfers other than the $117 million set aside for PRIFA.

Request 8: *Documents sufficient to show the terms, scope, and effects of purported restrictions placed on PRIFA-related funds, including but not limited to those funds described as "restricted" in the Commonwealth's "Summary of Cash Restriction Analysis" dated Oct. 2, 2019.*

The parties' positions were the same as described above for CCDA Request No. 6.

Request 9: *Documents sufficient to show the amount of Rum Taxes collected in each Fiscal Year from Fiscal Year 2016 to the present, including the amount of Rum Taxes collected in the current Fiscal Year.*

The parties' positions were the same as for PRIFA Request No. 7.

HTA Requests

Request 1: *Documents sufficient to show each transfer and/or deposit of the Pledged Revenues to the Commonwealth or HTA, and each subsequent Transfer thereof, from January 1, 2015 to the present, including (a) the date of the Transfer, (b) the transferor, (c) the transferee, (d) the amount of the Transfer, (e) the account number and (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information.*

The parties' positions were the same as for CCDA Request No. 1. AAFAF also indicated during the February 24, 2020 meet-and-confer that, to the extent such a document exists, they would produce the HTA analog to CCDA_STAY0000001.

AAFAF also agreed to produce TSA Cash Flow Analyses, HTA bond documents, and reports reflecting hotel tax and toll revenue in response to HTA Request No. 1.

Request 2: *Documents sufficient to show each transfer and/or deposit of funds from the Commonwealth to HTA, and each subsequent Transfer thereof, from January 1, 2015 to the present, including (a) the date of the Transfer, (b) the transferor, (c) the transferee, (d) the amount of the Transfer, (e) the account number and (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information.*

The parties' positions with regard to HTA Request No. 2 are the same as the parties' positions with regard to HTA Request No. 1.

Request 3: *Documents sufficient to show the total amount of Pledged Revenues presently held by HTA, or the Commonwealth or its instrumentalities, including, without limitation, information sufficient to identify the particular account(s) where such funds are retained; each account holder, financial institution, and beneficiary; and the cash balance of the accounts.*

The parties' positions with regard to HTA Request No. 3 are the same as the parties' positions with regard to HTA Request No. 1.

Request 4: *Documents, communications, or Agreements (including, without limitation, drafts thereof) to which the Commonwealth and/or HTA is a party relating to the Pledged Revenues, the flow of funds for HTA bonds, and/or the use of Pledged Revenues.*

Follow-Up Request (Feb. 7, 2020, 7:40 PM Email): *Documents and communications—covering mostly internal agency rules and official memoranda—concerning, among other things, (1) the budgeting treatment of the Excise Taxes, (2) implementation of the Unlawful Executive Orders, (3) flow of funds of the Excise Taxes, (4) definition or scope of "recursos propios" or*

*"ingresos propios," and (5) proposed budgets. The request also asked for all HTA bond closing transcripts, resolutions (beyond the 1968 and 1998 bond resolutions), and supplemental resolutions.*

The parties discussed HTA Request No. 4 as follows:

**Communications.** The parties' position on "communications" was the same as for CCDA Request No. 3 and PRIFA Request No. 3.

**Bond Resolution and Relates Documents.** AAFAF agreed to search for and produce resolutions, bond closing transcripts, and supplemental resolutions responsive to HTA Request No. 4.

**Appropriation Documents.** AAFAF objected to the production of documents referring to Pledged Revenues as "appropriations." With regards to official memoranda and internal regulations or rules of the Oversight Board and Treasury relating to the budgeting treatment of the Excise Taxes, AAFAF noted that some responsive documents may be publicly available and agreed to search for any responsive central files, but objected to any request that it search beyond central files.

Request 5: *All reports provided by HTA to the Legislature and Governor of Puerto Rico pursuant to the Enabling Act.*

AAFAF stated that it will produce additional reports responsive to HTA Request No. 5 but could not confirm whether they were prepared pursuant to the Enabling Act. Movants indicated that, once the reports are produced, they may request additional information regarding the preparation and purpose of such reports.

Request 6: *Documents sufficient to show the total amount of money held by HTA, including (a) where the fund is held, (b) information sufficient to identify and distinguish each particular account, (c) all account holders, (d) all account signatories, and (e) and any entity or individual with authority over the account.*

AAFAF stated that it will search for and produce documents responsive to HTA Request No. 6.

Request 7: *Direction letters or other documents to or from any bank and/or the Secretary of the Treasury regarding the flow of funds and/or use of the Pledged Revenues.*

AAFAF stated that it is in the process of searching for documents responsive to HTA Request No. 7 and that it would confirm whether any responsive documents exist and/or whether it has any objections to HTA Request No. 7.

Request 8: *Documents sufficient to show the terms, scope, and effects of purported restrictions placed on HTA-related funds, including but not limited to those funds described as "restricted" in the Commonwealth's "Summary of Cash Restriction Analysis" dated Oct. 2, 2019.*

The parties' positions were the same as described above for CCDA Request No. 6.

Request 9: *Documents sufficient to show the amount of Pledged Revenues collected in each Fiscal Year from Fiscal Year 2016 to the present, including the amount of Pledged Revenues collected to date in the current Fiscal Year.*

The parties agreed to revisit HTA Request No. 9 after Movants have reviewed AAFAF's latest production.

Rule 30(b)(6) Testimony

AAFAF stated that it is not necessarily opposed to Rule 30(b)(6) depositions regarding documents produced in discovery, but objects to the topics for testimony identified by Movants as overly broad. AAFAF noted that it believes specific questions regarding the documents may be more efficiently handled through stipulations or written questions.

Movants stated that they believe Rule 30(b)(6) depositions are necessary, but that they are prepared to meet-and-confer further regarding the appropriate scope of such depositions, and will agree to be targeted and efficient in seeking follow-up information.

Scheduling

During the February 21, 2020 meet-and-confer, Movants proposed filing replies in support of the lift-stay motions on March 26, 2020, and proposed that discovery be substantially complete by March 19, 2020. The Oversight Board stated that it may want replies to be filed earlier, both so that the judge has additional time to review and because the Oversight Board would like an opportunity to understand Movants' reply arguments, especially if they will be based on the new discovery. Movants noted that any delay here was the result of the Government Parties withholding relevant documents and, to the extent there was any suggestion of further submissions after Movants' reply briefs, that would not be acceptable. Movants also noted that the Oversight Board selectively revealed certain documents in its briefing that it believes are helpful. Movants outlined the need for sufficient time to complete discovery (including any 30(b)(6) depositions) prior to the filing of Movants' reply briefs. The parties agreed to consider these issues further and to have a subsequent communication on the schedule.

During the February 24, 2020 meet-and-confer, the Oversight Board proposed that replies in support of the lift-stay motions be filed on March 23, 2020, and that discovery be substantially completed by March 16, 2020. Movants are considering this proposal and will respond to it in short order.

Very truly yours,

/s/ *Grant Mainland*

Grant Mainland

cc: William Natbony
Casey Servais
Martin Sosland
Robert Berezin
Reed Collins
Gaspard Rappoport
Margaret A. Dale
Michael Mervis
Michael A. Firestein
Timothy W. Mungovan
Ashley Pavel

Encl.