# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br><br>                           Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |

## THE DRA PARTIES' OMNIBUS REPLY IN SUPPORT OF THEIR:
## (I) PARTICIPATION IN THE MONOLINES' AMENDED LIFT STAY LITIGATION;
## (II) MOTION TO INTERVENE IN THE REVENUE BOND ADVERSARY
## PROCEEDINGS WITH RESPECT TO THE CLAWBACK COMPLAINT; AND
## (III) MOTION TO INTERVENE IN HTA REVENUE BOND ADVERSARY
## PROCEEDING WITH RESPECT TO THE LIEN STRIPPING COMPLAINT

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ..........................................................................................................4

ARGUMENT ..............................................................................................................5

I.     The DRA Parties Have an Undisputed Right to Participate in the Monoline Lift Stay Matter and to Intervene in the Adversary Proceedings Because the DRA Is a Party in Interest. ..............................................................................................5

II.    All Parties Concede the DRA Has an Interest in the Monoline Lift Stay Matter Pursuant to Section 1109(b). ...............................................................................8

III.   The DRA Parties Have an Interest in the Adversary Proceedings Pursuant to Section 1109(b) and Therefore a Right to Intervene Under Rule 24(a)(1).....................12

     A.     The FOMB's Arguments Against Intervention in the Clawback Adversary Proceeding Lack Merit. .....................................................................12

          1.     The FOMB Cannot Argue That the Commonwealth Properly Diverted Revenues from HTA and That the Clawback Complaint Does Not Implicate the DRA's Interest in Those Revenues. ..................12

          2.     The GDB's Proof of Claim Is Irrelevant to Intervention........................13

     B.     The DRA Is a Party in Interest in the Lien Stripping Adversary Proceeding Because It Is a Creditor of HTA and Its Interest in the Overlapping Revenues Could Be Adversely Affected..............................................14

IV.   The DRA Parties Also Have a Right to Intervene in the Adversary Proceedings Under Rule 24(a)(2).....................................................................................15

V.    The DRA Parties Should Be Permitted to Intervene in the Monoline Lift Stay Matter and the Adversary Proceedings Under Bankruptcy Rule 2018(a) and Federal Rule of Civil Procedure 24(b)...........................................................23

CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Boston Generating, LLC*,
  440 B.R. 302 (Bankr. S.D.N.Y. 2010) ................................................................................20

*Caterino v. Barry*,
  922 F.2d 37 (1st Cir. 1990) ............................................................................ 16, 19, 23

*Daggett v. Comm'n on Governmental Ethics & Election Practices*,
  172 F.3d 104 (1st Cir. 1999) ........................................................................................23

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  297 F. Supp. 3d 261 (D.P.R. 2017) ...............................................................................16

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico.*,
  301 F. Supp. 3d 325 (D.P.R. 2018) ...............................................................................10

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  872 F.3d 57 (1st Cir. 2017) ............................................................................ 5, 10, 16

*Int'l Paper Co. v. Inhabitants of Town of Jay, Me.*,
  887 F.2d 338 (1st Cir. 1989) ............................................................................... 16, 18

*In re Pub. Serv. Co. of N.H.*,
  88 B.R. 546 (Bankr. D.N.H. 1998) ...............................................................................23

*Puerto Rico Tel. Co. v. San Juan Cable, LLC*,
  298 F.R.D. 28 (D.P.R. 2014) .........................................................................................23

*In re Savage Indus.*,
  43 F.3d 714 (1st Cir. 1994) ...........................................................................................14

*United States v. Puerto Rico*,
  227 F.R.D. 28 (D.P.R. 2005) .........................................................................................15

**Statutes**

11 U.S.C. § 1109 ...................................................................................................*passim*

**Other Authorities**

Collier on Bankruptcy (16th ed. rev. 2018) .......................................................... 5, 14

Fed. R. Bankr. P. 2018 ...................................................................................... 4, 5, 23

Fed. R. Civ. P. 24(a)(1) .................................................................................... 5, 12, 14

Fed. R. Civ. P. 24(a)(2) .................................................................................... 15

Fed. R. Civ. P. 24(b) ........................................................................................ 23

Fed. R. Civ. P. 24(c) ........................................................................................ 16

Moore's Federal Practice – Civil ...................................................................... 15

The DRA Parties,[2] by and through their undersigned legal counsel, respectfully submit this omnibus reply to: (i) the Monolines' objection to the DRA Parties' notice of intent to participate in the contested matter regarding the Monolines' lift stay motion [Dkt No. 10835] (the "MLS Participation Notice"); (ii) the Monolines' and FOMB's objections to the DRA Parties' motion to intervene in the "clawback" adversary proceeding [Dkt. No. 11 of Adv. No. 20-00005] (the "Clawback Intervention"); and (iii) the Monolines' and FOMB's objections to the DRA Parties' motion to intervene in the "lien stripping" adversary proceeding (Dkt. No. 14 of Adv. No. 20-00007) (the "Lien Stripping Intervention," and together with the MLS Participation Notice and the Clawback Intervention, the "Intervention Motions").[3, 4]

## PRELIMINARY STATEMENT

The DRA is the largest creditor at HTA and owns more than $575 million worth of claims against the Commonwealth.  Nevertheless, the FOMB has worked to systematically exclude the DRA Parties from virtually all aspects of this case.  The DRA Parties have had no role in the negotiation of the proposed plan—nor were they even made aware of the terms of the proposed plan support agreement prior to its public disclosure.

The FOMB and others have even sought to squeeze the DRA Parties out of issues of critical importance to them (such as the improper diversion of the Act 30-31 Revenues that secure more than $1.7 billion in loans from the DRA's predecessor to HTA) by litigating those

---

[2] Capitalized terms not defined herein have the meanings given to them in the Lift Stay Participation Notice, the Clawback Intervention, and the Lien Stripping Intervention.

[3] Unless otherwise indicated, references herein to docket numbers are to docket entries in Case No. 17-BK-3283. The Monolines' objection to the MLS Participation Notice is Dkt. No. 11126 ("Monoline Lift Stay Obj."). The Monolines' and FOMB's objections to the Clawback Intervention are filed in the clawback adversary proceeding (Adv. No. 20-00005) at Dkt. No. 18 ("Monoline Clawback Obj.") and Dkt. No. 17 ("FOMB Clawback Obj."), respectively.

[4] In the interest of efficiency, the DRA Parties have prepared a single omnibus reply that addresses all of the objections to the Intervention Motions.  The DRA Parties are filing the same omnibus brief in each of the Monoline Lift Stay Matter and the Adversary Proceedings.

issues piecemeal with their chosen defendants.  If the FOMB plans to push ahead with a rush to confirmation, at minimum the Court should permit the various stakeholders to the Commonwealth and other Title III debtors to have their rights adjudicated in a coordinated and clear fashion.  Permitting the FOMB to proceed without participation from the DRA Parties risks depriving the DRA Parties of due process and, ultimately, rendering the proposed plan of adjustment virtually unconfirmable.

The Court can start to resolve this problem by approving the pending Intervention Motions.  The Bankruptcy Code and Federal Rules mandate that the Court permit the DRA Parties to Intervene in the Monoline Lift Stay Matter and the two Adversary Proceedings because no one disputes that the DRA is a creditor with an unconditional right to intervene in those proceedings.  This overarching point mandates participation under section 1109(b) of the Bankruptcy Code and intervention under Federal Rules of Civil Procedure 24(a)(1) and (2) in each of the three proceedings.  The rules also mandate intervention in each proceeding for other reasons as detailed below.

***Monolines' Lift Stay Motion.***  The FOMB and AAFAF have already consented and stipulated [Dkt. No. 11285] (the "Participation Stipulation") to the DRA Parties' participation in the Monolines' lift stay motion with respect to certain key "overlapping issues" such as the diversion of revenues from HTA to the Commonwealth.  The Monolines object but raise largely procedural arguments or assert that the DRA Parties will prejudice the Monolines or seek to "expand the substantive scope of the Monoline Revenue Bond Litigation."  Monolines' Lift Stay Obj. [Dkt. No. 11126] ¶ 3.  None of these arguments have merit as the DRA Parties seek only to participate with respect to overlapping issues covered in the Monoline Lift Stay Motion and the DRA Parties' own lift stay motion.  This will not create delay or prejudice.  The procedural

arguments also fail as the DRA Parties have timely and effectively raised the issues pending

here.  In any event, any remaining concerns by the Monolines on the scope of the DRA Parties'

participation in the Monoline Lift Stay Matter have been resolved in the Participation

Stipulation, whereby the DRA Parties have agreed to limited participation on the overlapping

issues only.

*Clawback Adversary Proceeding.*  With respect to the Commonwealth's clawback

adversary proceeding, the DRA Parties would be prejudiced to the extent the Court intends to

resolve fundamental questions around the diversion of HTA revenue streams pledged to the

DRA in the narrow context of the FOMB's claims objection.  The Court should not address

"clawback" on a piecemeal basis and instead must do so broadly.  The relevant provisions of

Commonwealth law and the Commonwealth Constitution do not enable an isolated evaluation of

clawback and instead require overarching review of the Commonwealth's annual revenues.

To the extent the Court would examine the "clawback" broadly, it must permit the DRA

Parties to intervene as of right, given the significance of their claims and their rights in various

revenue streams at the Commonwealth and other Title III entities.  This is particularly true if the

parties seek to push forward with confirmation while failing to address these issues broadly.

The FOMB's and Monolines' arguments to the contrary focus on, *inter alia*, the fact that

the DRA Parties have allegedly subordinate claims or allegedly failed to file a proper proof of

claim in the Commonwealth Title III related to the diverted revenues.  While the DRA Parties

concede neither point, they have no bearing on whether the DRA is a party in interest and the

Court should reject those arguments.

*Lien Stripping.*  The DRA's interests also would be prejudiced if the DRA Parties are

excluded from the HTA's lien stripping adversary proceeding.  That adversary includes

challenges to the liens alleged to secure the HTA bonds held by the DRA, which are asserted in
revenue streams that also secure the HTA loans held by the DRA (specifically the Act 30-31
Revenues).  If the HTA succeeds in challenging the liens asserted by the bondholders on those
revenues, the DRA would be the only party with a security interest in many of those revenue
streams (which the FOMB seeks to address further in the Clawback Adversary Proceeding).  The
DRA's interests are thus intertwined in the two Adversary Proceedings, and no other party has
sufficiently similar interests to adequately represent the DRA.

Finally, the Court may and should permit intervention under Federal Rule of Civil
Procedure 24(b) and Bankruptcy Rule 2018(a) because, even if the DRA were not deemed a
party in interest, there are significant common questions of fact and law between the DRA
Parties' Lift Stay Motion and each of the Monolines' Lift Stay Motion, the Clawback Adversary
Proceeding and the Lien Stripping Adversary Proceeding.  Ruling on those matters, without the
DRA Parties' participation would significant prejudice the DRA Parties.

## BACKGROUND

1.      On February 11, 2020, the DRA Parties filed the Intervention Motions seeking the
Court's permission to participate or intervene in the Monoline Lift Stay Matter, the Clawback
Adversary Proceeding, and the Lien Stripping Adversary Proceeding to protect the DRA's
interests in the 1998 bonds and the Act 30-31 Revenues at issue in those proceedings.

2.      On February 18, 2020, the Monolines and FOMB filed their respective objections
to the Intervention Motions.  The Monolines filed an objection in each of the Monoline Lift Stay
Matter [Dkt. No. 11126], the Clawback Adversary Proceeding [Dkt. No. 18 of Adv. No. 20-
00005], and the Lien Stripping Adversary Proceeding [Dkt. No. 21 of Adv. No. 20-00007].  The
FOMB filed an objection on behalf of the Commonwealth in the Clawback Adversary
Proceeding [Dkt. No. 17 of Adv. No. 20-00005] and on behalf of HTA in the Lien Stripping

Adversary Proceeding [Dkt. No. 23 of Adv. No. 20-00007].

3.      The DRA Parties now file this omnibus reply to each of these objections.  The
DRA Parties file the same omnibus reply in each of the three matters because doing so is more
efficient, best preserves judicial resources, and is consistent with this Court's prior directives to
avoid filing unduly repetitious briefs and raising duplicative arguments.

## ARGUMENT

I.      **The DRA Parties Have an Undisputed Right to Participate in the Monoline Lift Stay
Matter and to Intervene in the Adversary Proceedings Because the DRA Is a Party
in Interest.**

4.      No one disputes that section 1109(b) of the Bankruptcy Code gives a party in
interest, including "a creditor," the right to participate in a contested matter without moving to
intervene.  *See* 9 Collier on Bankruptcy ¶ 2018.02[1] (16th ed. rev. 2018) ("An entity given the
right to be heard under section 1109 is necessarily a party in interest in that case and need not
seek leave under Rule 2018(a) to intervene in the case."); *In re Fin. Oversight & Mgmt. Bd. for
Puerto Rico*, 872 F.3d 57, 63 (1st Cir. 2017) ("[W]e view the rights described in § 1109(b) to be
entirely consistent with intervention rights generally.").  And no one disputes that a party in
interest under section 1109(b) has an unconditional right to intervene under Federal Rule of Civil
Procedure 24(a)(1).  *See In re Fin. Oversight & Mgmt. Bd.*, 872 F.3d at 63 (holding that section
1109(b) "provides an 'unconditional right to intervene' within the meaning of Fed. R. Civ. P.
24(a)(1)").

5.      No one disputes—nor can they—that the DRA is a creditor (and thus a party in
interest) in the Commonwealth and HTA Title III cases.  The inquiry into whether the DRA
Parties can participate or intervene in the Monoline Lift Stay Matter and the Adversary
Proceedings should end there because the DRA, as a creditor of the Commonwealth and HTA,
plainly is a party in interest.

6.      While the DRA is a party in interest solely by virtue of being a creditor, its
interests in these proceedings extend to the specific instruments and revenue streams at issue as
well.  The DRA holds $200,000,000 in aggregate original principal amount of HTA bonds, DRA
Parties' Lift Stay Mot. [Dkt. No. 10835] ¶ 5, which are directly at issue in the Monoline Lift Stay
Matter and the Adversary Proceedings.  Monolines' Am. Lift Stay Mot. [Dkt. No. 10102] ¶¶ 4-
19; Clawback Compl. [Dkt. No. 1 of Adv. No. 20-00005] ¶¶ 46-56.  The Monolines' Lift Stay
Motion contends that the Commonwealth improperly diverted revenues that were pledged to
those bonds ([Dkt. No. 10102] ¶¶ 20-24), while the Commonwealth argues in its Clawback
Complaint that its diversion of the Pledged Revenues was proper and those revenues should not
be available to pay claims in respect of the 1998 bonds ([Dkt. No. 1 of Adv. No. 20-00005]).
Finally, HTA argues in its Lien Stripping Complaint that the bondholders do not have an interest
in the Pledged Revenues due, in part, to the diversion of the Pledged Revenues through the
activation and implementation of the "clawback" ([Dkt. No. 1 of Adv. No. 20-00007] ¶¶ 106-16,
119-21, 125-27).  The extent to which the Pledged Revenues are available to pay the DRA's
claim in respect of the HTA bonds is directly implicated in all these proceedings.

7.      The DRA also holds loans made by GDB to HTA which had an aggregate
outstanding principal balance in excess of $1.7 billion as of July 1, 2018.  DRA Parties' Lift Stay
Mot. [Dkt. No. 10835] ¶ 1.  The Act 30-31 Revenues secure these loans, *id.* ¶ 2, and encompass
several revenue streams that are also Pledged Revenue, including motor vehicle licensing fees
and excise taxes on gasoline, gas and diesel oil, and petroleum products.  *Compare id. with*
Monolines' Lift Stay Mot. [Dkt. No. 10102] ¶ 5.

8.      The Monolines' Lift Stay Motion asks the Court to lift the automatic stay in part
to challenge the diversion of these revenues (*see* Monolines' Lift Stay Mot. [Dkt. No. 10102] ¶¶

6

1-2), while the Commonwealth asserts that diversion of these revenues was a permitted "clawback" (*see* Clawback Compl. [Dkt. No. 1 of Adv. No. 20-00005] ¶¶ 120-21, 127). Finally, the HTA argues that no security interest arises in these revenues unless they are deposited in HTA accounts (Lien Stripping Compl. [Dkt. No. 1 of Adv. No. 20-00007] ¶¶ 106-16, 119-21, 125-27). The DRA Parties have a lien on the Act 30-31 Revenues—a fact none of the objectors contest. That gives the DRA Parties a clear and substantive economic interest in the resolution of these issues, whether in the Commonwealth Title III, the HTA Title III or the Adversary Proceedings.

9.        The Court's determination of whether the Commonwealth improperly diverted those revenues—which is front and center in the Monolines' Lift Stay Motion and the Clawback Complaint—could affect the DRA's ability to recover against those revenues in respect of the HTA Loans. Moreover, if the FOMB succeeds in the Lien Stripping Complaint, only the DRA will have a lien on the overlapping revenues.

10.        The DRA's interest in whether the diverted revenues will be made available to pay claims in respect of the HTA bonds and the HTA loans is directly implicated in the Monolines' Lift Stay Motion and the Adversary Proceedings, making the DRA a party in interest entitled to participate and intervene. The Monolines and the FOMB even concede that, if the DRA is a party in interest, it has a right to participate and an unconditional right to intervene. *See* Monolines' Lift Stay Obj. [Dkt. No. 11126] ¶20 ("The DRA Parties are therefore guaranteed a right to 'raise' and 'appear' and 'be heard' on any issue."); FOMB Clawback Obj. [Dkt. No. 17 of Adv. No. 20-00005] ¶ 23 (recognizing that section 1109(b) gives a party in interest the right to intervene). If the Court proceeded on these issues in a piecemeal fashion—without participation by the DRA Parties—the DRA would be prejudiced and denied due process. The DRA Parties

7

can participate or intervene for that reason alone.

## II. All Parties Concede the DRA Has an Interest in the Monoline Lift Stay Matter Pursuant to Section 1109(b).

11.     As discussed above, the DRA is a party in interest with respect to the Monoline

Lift Stay Matter due to both its 1998 bond holdings and its security interest in the Act 30-31

Revenues.  *See supra* ¶¶ 4-10.  The FOMB agrees and has stipulated that the DRA Parties can

participate in the Monoline Lift Stay Matter.  Participation Stip. [Dkt. No. 11285-1] ¶ 1 ("[T]he

DRA is a party in interest to the Monolines' Lift Stay Motion . . . and . . . the DRA Parties

possess certain limited rights to appear and be heard in connection with the Monolines' Lift Stay

Motion . . . .").

12.     While the Monolines ostensibly object to DRA Parties' participation in the Lift

Stay Motion, their objections lack substance or merit.  The Monolines concede that "[l]ike all

parties in interest, the DRA Parties have a right to be heard."  Monoline Lift Stay Obj. [Dkt. No.

11126] ¶ 1.  The Monolines further admit that, "[t]he DRA Parties are therefore guaranteed a

right to 'raise' and 'appear' and 'be heard' on any issue."  *Id.* ¶ 20.  The Monolines even concede

that, "[w]ith respect to the few overlapping issues the DRA Parties share with monolines, limited

participation may be appropriate."  *Id.* ¶ 19.  That is what the DRA Parties seek.

13.     The Participation Stipulation identifies eight "Overlapping Issues" and would

limit the DRA Parties' participation to those eight issues.[5]  Participation Stip. [Dkt. No. 111285-

---

[5] The Overlapping Issues are: (i) whether certain excise tax statutes are preempted by PROMESA; (ii) the extent to which those statutes can bind future legislatures; (iii) whether those statutes give rise to any ownership interest in favor of the holders of HTA bonds; (iv) the extent to which Title III recognizes a priority claim arising out of those statutes; (v) the scope and validity of any security interest granted to HTA bondholders by the 1968 and 1998 Resolutions, and whether any such interest extends to tax revenues retained by the Commonwealth; (vi) whether any liens held by HTA bondholders stopped attaching once the Commonwealth and/or HTA filed for relief under Title III; (vii) the validity of the Commonwealth's retention of revenues under those excise tax statutes; and (viii) whether creditors of HTA have standing to seek stay relief against the Commonwealth.  Participation Stip. [Dkt. No. 111285-1] ¶ 2.

1] ¶ 2.  Before that, in the DRA Parties' Response and Reservation of Rights to the Interim

Report of the Mediation Team [Dkt. No. 9503], the DRA Parties reserved their right to

participate in the Monoline Lift Stay Matter "so that the Court may address ***the overlapping***

***topics covered by the [Monolines'] Lift Stay Motion and the DRA Lift Stay Motion***

***concurrently***."  [Dkt. No. 9503] ¶ 3 (emphasis added).  The DRA Parties do not seek more.  All

parties thus agree (or concede) that the DRA Parties should be able to participate in the Monoline

Lift Stay Matter with respect to those overlapping issues—and only those overlapping issues.

14.    Despite their seeming recognition that the DRA Parties' participation on

overlapping issues would be appropriate, the Monolines nevertheless raise three arguments for

excluding the DRA Parties, all of which fail.

15.    *First*, the Monolines' argue that the DRA Parties' right to participate is preserved

by the DRA Parties' opportunity to participate in their own lift stay motion, which will take

place on a separate schedule after the Monolines'.  Monolines' Lift Stay Obj. [Dkt. No. 11126]

¶ 20.  This makes little sense.  As the Government Parties recognize in the Participation

Stipulation, there are at least eight overlapping issues between the two lift stay motions.  If the

Court resolves any of those issues as part of the Monoline Lift Stay Matter, the DRA Parties will

be prejudiced because they will not have the opportunity to address them on a clean slate in their

later lift stay proceeding.

16.    *Second*, the Monolines' argue that courts have discretion over the scope of

intervention pursuant to section 1109(b).  *Id.* ¶ 21.  The DRA Parties agree and have requested

that the Court exercise this authority by permitting them to participate solely with respect to the

Overlapping Issues on the limited basis consented to in the Participation Stipulation.

17.    Moreover, the Court has already determined the appropriate scope of any

intervention.  *See* Am. Interim Revenue Bond Case Mgmt. Order [Dkt. No. 10595] at 5 n.3

(holding that briefing deadlines will be established for intervenors and briefs will be limited to

issues not raised by the named parties and to a maximum of seven pages).  The authorities cited

by the Monolines support the DRA Parties' participation on that basis.  *See In re Fin. Oversight

& Mgmt. Bd. for Puerto Rico*, 872 F.3d at 63-64 (reversing order denying intervention and

remanding for scope determination); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico.*, 301 F.

Supp. 3d 325, 327-28 (D.P.R. 2018) (allowing intervention and limiting scope of participation).[6]

Thus, the Monolines' argument instead supports the DRA Parties' efforts to intervene solely with

respect to the overlapping issues.

18.     *Third*, the Monolines argue that the Court should deny the DRA Parties' motion

as a "sub rosa motion for reconsideration."  Monolines' Lift Stay Obj. [Dkt. No. 11126] ¶¶ 14-

18.  This mischaracterizes the relief the DRA Parties seek and ignores the procedural history of

the Title III action.  The DRA Parties are not seeking reconsideration.  They have not asked to

modify the schedules for the Monoline Lift Stay Matter.  Nor have they sought to introduce new

issues.  Rather, the DRA Parties seek only to ensure that the DRA is not prejudiced by a

determination of overlapping issues without their participation.

19.     Moreover, the current order governing the DRA Parties' Lift Stay Motion is an

*interim* order that was expected and intended to be finalized as the Title III proceedings

advanced.  *See* Interim Order Approving Am. Jt. Stip. re the DRA Parties' Lift Stay Mot. Ex. A

[Dkt. 9622-1] ¶ 10 ("The Parties expressly reserve all rights to seek modification of, or relief

from, this Amended Stipulation and the Order Approving this Amended Stipulation.").  The

---

[6] The DRA Parties also stipulated to participate in discovery, hearings, and settlement consistent with the limitations requested by the Monolines.  *See* Participation Stip. [Dkt. No. 111285-1] ¶ 2; Monolines' Lift Stay Obj. [Dkt. No. 11126] ¶¶ 36-38.

DRA Parties repeatedly reserved their rights to participate and intervene in any proceeding that, as a result of the schedule in the mediation team's Interim Report, could prejudice the DRA Parties' rights with respect to their lift stay motion and confirmation of a plan in the Commonwealth and HTA Title III cases.  *See, e.g.*, DRA Parties' Resp. and Reservation of Rights with Respect to Interim Report [Dkt. No. 9503] ¶¶ 2-3 ("[T]he DRA Parties may move to intervene and participate in the HTA Lift Stay Motion litigation so that the Court may address the overlapping topics covered by the HTA Lift Stay Motion and the DRA Lift Stay Motion concurrently.").

20.     Further, the parties and the Court all made clear that they expected the case management orders to be revised as the proceedings progressed.  *See* Jan. 29, 2020 Omnibus Hr'g Tr. at 21:1-5 ("THE COURT: . . . [W]e're moving into the schedule under the interim orders, as they may be adjusted . . . ."), 131:8-11 ("[COMMONWEALTH COUNSEL:] [T]he purpose of this hearing is to determine whether anything needs to change in the Interim Order regarding revenue bonds prior to the March 4th hearing . . . ."), 189:24-25 ("THE COURT: . . . I will do that interim revision of the Interim Order."); *see also* Dec. 11, 2019 Omnibus Hr'g Tr. at 103:9-17 ("THE COURT: . . . [T]he Court will have an opportunity to consider more fully the parties' concerns in the context of a report and/or additional proposed Orders from the mediation team . . . ."), 107:16-24 (requiring parties to meet and confer in advance of the January Omni to try to resolve concerns about the Interim Report).  Now that the DRA Parties have no choice but to intervene to protect their interests, they have filed a formal objection reiterating the very matters on which they previously reserved their rights.  That is far from a motion for reconsideration.

21.     In short, the Court should allow the DRA Parties to participate in the Monoline

Lift Stay matter because all parties appear to agree to participation with respect to the overlapping issues.

III.    **The DRA Parties Have an Interest in the Adversary Proceedings Pursuant to Section 1109(b) and Therefore a Right to Intervene Under Rule 24(a)(1).**

22.    A party has a right to intervene under Rule 24(a)(1) if a federal statute confers an unconditional right to intervene.  Fed. R. Civ. P. 24(a)(1).  Here, the DRA Parties have a right to intervene in the Adversary Proceedings under Rule 24(a)(1) because, as discussed above, they are a party in interest under section 1109(b).  *See supra* ¶¶ 4-10.  The DRA has a significant interest in the HTA bonds, which are squarely at issue in the Adversary Proceedings.  The DRA Parties also have significant interests in the Act 30-31 Revenues, a key part of the dispute in the Clawback Adversary Proceeding, which also could be affected by the Lien Stripping Adversary Proceeding.

A.    *The FOMB's Arguments Against Intervention in the Clawback Adversary Proceeding Lack Merit.*

1.    *The FOMB Cannot Argue That the Commonwealth Properly Diverted Revenues from HTA and That the Clawback Complaint Does Not Implicate the DRA's Interest in Those Revenues.*

23.    The FOMB asserts that the DRA Parties' interest is "insufficient to support intervention" in the Clawback Adversary Proceeding because "[a]t best, they may have an indirect financial interest because, as creditors subordinated to the bondholders (a fact omitted from their Motion), they might ultimately benefit from the resolution of this proceeding . . . ." FOMB Clawback Obj. [Dkt. No. 17 of Adv. No. 20-00005] ¶ 28.  The FOMB's argument is consistent with their systematic efforts to litigate issues of critical importance to an array of parties on a piecemeal basis—thus limiting the involvement of critical parties, irrespective of potential due process rights of those parties.  It also fails to acknowledge the potential impact of

the Clawback Adversary Proceeding on the DRA.[7]

24.     On the one hand, the FOMB argues that the Clawback Complaint merely seeks to
object to "certain proofs of claims and priorities asserted therein and [object to] the validity and
priority of certain liens or security interests asserted therein . . . ."  Clawback Compl. ¶ 1.  On the
other, the FOMB seeks a ruling, among many others, that "the Commonwealth's retention of the
HTA Allocable Revenues [including the Act 30-31 Revenues] pursuant to the Pre-PROMESA
retention actions does not give rise to a claim against the Commonwealth by operation of Article
VI, Section 8 of the Commonwealth Constitution . . . ."  *Id.* ¶ 208.

25.     A ruling on the validity of the diversion of HTA Allocable Revenues would have
wide-ranging implications beyond just the defendants in the Clawback Complaint.  Therefore,
the Court's review should not be limited to mere consideration of the diversion of revenues with
respect to the bondholders' claims.  The provisions of Article VI, Section 8 of the
Commonwealth Constitution, as well as section 104(c) of the Management and Budget Act
require careful consideration on a year-by-year and revenue stream-by-revenue stream basis.
The Court should not rule with respect to a specific series of revenue streams in a vacuum.
Doing so would prejudice the DRA Parties (and presumably many others).  Such a ruling with
respect to the bonds would have a direct effect on the DRA's interests in the Act 30-31
Revenues.  Therefore, to the extent the FOMB seeks such a broad ruling, the Court must permit
intervention.

### 2.     *The GDB's Proof of Claim Is Irrelevant to Intervention.*

26.     The FOMB also argues that the DRA is not a party in interest because the GDB

---

[7] The DRA Parties hereby reserve all rights regarding whether the FOMB, through the allegations made in the
Clawback Adversary Proceeding, consented to the Court's adjudication of clawback issues under Section 305 of
PROMESA.

did not file a proof of claim against the Commonwealth asserting an interest in the Act 30-31 Revenues.  FOMB Clawback Obj. [Dkt. No. 17 of Adv. No. 20-00005] ¶¶ 22-23.  That is a red herring.  Party in interest status under section 1109(b) is not limited only to entities that file proofs of claim.  *See* 7 <u>Collier on Bankruptcy</u> ¶ 1109.02[2] ("In general, an entity need not file a proof of claim to be . . . 'party in interest.'").  Nor would the DRA Parties need to file a proof of claim to be a party in interest (even aside from the fact that the DRA is a creditor of the Commonwealth).  Having a financial stake in the outcome of a matter suffices to make one a "party in interest."  *See In re Savage Indus.*, 43 F.3d 714, 720 (1st Cir. 1994) (party in interest includes "any entity whose pecuniary interests might be directly and adversely affected by the proposed action"); 7 <u>Collier on Bankruptcy</u> ¶ 1109.2[1] ("In general, a 'party interest' under section 1109(b) is any person with a direct financial stake in the outcome of the case . . . .").

27.     In any event, the DRA is indisputably a creditor of the Commonwealth irrespective of the state of their proof of claim.  After all, the DRA filed a claim against the Commonwealth in the aggregate amount of $527,581,425.65, which amount includes obligations on account of four GO bilateral loans and a guarantee.  *See* Dkt. No. 5628.  The DRA Parties plainly have an interest in the outcome of the Adversary Proceedings and, therefore, must be allowed to participate.

**B.     *The DRA Is a Party in Interest in the Lien Stripping Adversary Proceeding Because It Is a Creditor of HTA and Its Interest in the Overlapping Revenues Could Be Adversely Affected.***

28.     As discussed above, a creditor is a party in interest under section 1109(b), and therefore has an unconditional right to intervene under Rule 24(a)(1).  The DRA, as a holder of 1998 bonds, is a creditor of the HTA.  The DRA therefore has an unconditional right to intervene under Rule 24(a)(1).

29.     The DRA also is a party in interest in the Lien Stripping Adversary Proceeding

through its security interest in the overlapping revenues implicated in the Clawback Proceeding. If the HTA's challenges to the liens asserted by the bondholders succeed in the Lien Stripping Adversary Proceeding, then the DRA will be the only party with a security interest in those revenues. The DRA's interests in the Lien Stripping Adversary Proceeding should not be separated from its interests in the Clawback Adversary Proceeding—the outcome of the former could have an enormous effect on the DRA Parties' participation in the latter.

30.     The Monolines and HTA focus their objections on the factors that affect mandatory intervention under Rule 24(a)(2), such as the extent to which the existing parties adequately represent the intervenor. But those factors are irrelevant to a determination of whether the DRA is a party in interest under section 1109(b). *See United States v. Puerto Rico*, 227 F.R.D. 28, 30 (D.P.R. 2005) (intervention of right limited to cases in which disposition of the action impairs the intervenor's interest "except in the instances in which there is an unconditional statutory right to intervene"); *see also* 6 Moore's Federal Practice – Civil § 24.03[1][a] (listing criteria for intervention as of right "[i]n the absence of statutory authority granting a right to intervene").

## IV.     The DRA Parties Also Have a Right to Intervene in the Adversary Proceedings Under Rule 24(a)(2).

31.     Rule 24(a)(2) states that a party must be allowed to intervene if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). As detailed in the Intervention Motions, the DRA Parties satisfy this standard because they have made the required showing of timeliness, a direct and substantial interest, impairment of that interest absent intervention, and the lack of adequate representation by the existing

parties.  *See* Clawback Intervention Mot. [Dkt. No. 11 of Adv. No. 20-00005] ¶¶ 42-46; Lien

Stripping Intervention Mot. [Dkt. No. 14 of Adv. No. 20-00007] ¶¶ 45-49; *see also Int'l Paper*

*Co. v. Inhabitants of Town of Jay, Me.*, 887 F.2d 338, 342 (1st Cir. 1989); *Caterino v. Barry*, 922

F.2d 37, 39-40 (1st Cir. 1990).

32.     The Monolines and FOMB argue that the DRA Parties fail to satisfy the relevant

standards, but the facts here do not support their arguments.[8]

33.     ***Timeliness.***  The Monolines argue the DRA Parties' motion to intervene is not

timely because "the DRA Parties have been privy to the schedule set for the Monoline Revenue

Bond Litigation . . . at least as early as November 27, 2019" and because "the Monolines' desire

to move to lift the HTA stay has been apparent since certain of the Monolines filed a lift stay

motion in August of last year."  Monolines' Clawback Obj. [Dkt. No. 18 of Adv. No. 20-00005]

¶ 27.  Both of those arguments fail.

34.     The DRA Parties moved promptly to intervene when it became clear that the

---

[8] The FOMB's argument that intervention should be denied because the DRA Parties did not submit a pleading
further to Rule 24(c) overstates the pleading requirement and would elevate form over substance.  The First Circuit
has held that "a court has the discretion to permit intervention in some circumstances even when the motion to
intervene is not accompanied by a pleading," and that, in the absence of prejudice, "***it would be an abuse of
discretion*** to deny intervention for failure to include a pleading."  *In re Fin. Oversight & Mgmt. Bd.*, 872 F.3d at 65
(emphasis added).  "[A] Rule 24(c) pleading is even less critical where, as here, the [intervenor] is seeking to
intervene to assert its rights under Section 1109(b), and does not assert ownership of a claim or defense."  *In re Fin.
Oversight & Mgmt. Bd. for Puerto Rico*, 297 F. Supp. 3d 261, 265 (D.P.R. 2017).  As the FOMB recognizes, a
pleading is not necessary if the intervenor's "interest in the litigation [is] sufficiently clear to excuse any technical
non-compliance with Rule 24(c)."  Clawback Obj. [Dkt. No. 17 of Adv. No. 20-00005] ¶ 20 (quoting *In re Fin.
Oversight & Mgmt. Bd.*, 872 F.3d at 65).  The DRA Parties' motion makes their interest in the Adversary
Proceedings entirely clear: GDB made loans secured by the Act 30-31 Revenues that were later transferred to the
DRA, Clawback Intervention Mot. [Dkt. No. 11 of Adv. No. 20-00005] ¶¶ 1-2, 6; the pledge of the Act 30-31
Revenues is subject to Article IV, Section 8 of the Puerto Rico Constitution, which may permit diversion of
revenues under certain circumstances, *id.* ¶ 3; the DRA also holds certain of the bonds at issue in the Clawback
Adversary Proceeding, *id.* ¶ 5; resolution of the Clawback Complaint will necessarily involve a determination of
whether the Commonwealth improperly diverted, among others, the Act 30-31 Revenues, *id.* ¶ 40; and if the HTA
prevails in the Lien Stripping Adversary Proceeding, the DRA will be the only party with a security interest in those
revenues, Lien Stripping Intervention Mot. [Dkt. No. 14 of Adv. No. 20-00007] ¶¶ 41-42, 47.  The DRA Parties
have provided the Court and the parties "sufficient notice of [their] interests so as to render an additional Rule 24(c)
pleading unnecessary."  *In re Fin. Oversight & Mgmt. Bd.*, 297 F. Supp. 3d at 265.  The DRA Parties are nonetheless
willing to prepare a pleading on reasonable time if the Court believes additional clarification is necessary.

amended schedule proposed by the mediators created a serious risk of prejudice to the DRA's interests in the HTA bonds and the HTA loans. The DRA Parties were initially not even aware of the proposed schedule for the Monolines' Lift Stay Motion or for the Adversary Proceedings—and the risk of prejudice from the conflict with the schedule for the DRA Lift Stay Motion—until the Mediation Team's Interim Report was filed on November 27, 2019.[9] Shortly after discovering the conflict, the DRA Parties filed their response to the Interim Report, which notes that they "could suffer potentially meaningful economic and constitutional injury if unable to participate in litigation around these issues" and therefore "may move to intervene and participate in the HTA Lift Stay Motion litigation." DRA Parties' Response and Reservation of Rights with Respect to Interim Report [Dkt. No. 9503] ¶¶ 2-3.

35.    The DRA Parties subsequently sought to negotiate a consensual intervention with the Monolines, Monolines' Clawback Obj. [Dkt. No. 18 of Adv. No. 20-00005] at 8 n.6,[10] and succeeded in negotiating a stipulation with the FOMB to participate in the Monoline Lift Stay Matter. The DRA Parties then filed the Intervention Motions when, after the mediation on February 6, 2020, it became clear the parties would be unable to reach further agreement on intervention. In short, the DRA Parties acted expeditiously at each step to raise their concerns about the schedule, seek a resolution that would not require intervention from the Court, and move to intervene when a consensual resolution proved impossible.[11]

---

[9] The Monolines' assertion that "the Monolines' desire to move to lift the HTA stay has been apparent since . . . August of last year," Monolines' Clawback Obj. [Dkt. No. 18 of Adv. No. 20-00005] ¶ 27, is beside the point. The DRA Parties were not aware of the mediators' proposed schedule for that motion—or the resulting risk of prejudice—until the mediators' filed their Interim Report at the end of November, and this motion only became timely once the mediators filed their amended report on February 10, 2020.

[10] The Monolines' characterization of why the parties were unable to reach an agreement is both factually incorrect and likely a violation of the confidentiality provisions of the mediation agreement. The Court should strike the Monolines' description of the negotiations—beyond that they failed—from consideration in this matter.

[11] The FOMB concedes that the DRA Parties moved timely to intervene. FOMB Clawback Obj. [Dkt. No. 17 of Adv. No. 20-00005] ¶ 24 n.6 ("The Commonwealth does not dispute the timeliness of the Motion.").

17

36.     The Monolines also argue that the Intervention Motions are untimely due to vague assertions of prejudice to "numerous parties . . . participating in the Monoline Revenue Bond Litigation" from the timing of the DRA Parties' motion, *id.* ¶ 27, but do not explain, because they cannot, specifically how intervention would prejudice anyone.

37.     The FOMB, on the other hand, commenced the Adversary Proceedings a little more than a month ago and the hearing on any motions to dismiss is likely several months away, on June 3 or 4.  Am. Interim Revenue Bond Case Mgmt. Order [Dkt. No. 10595] at 6.  The DRA Parties will not seek to change those deadlines based on the timing of their participation in these proceedings.  For these reasons the Monolines' argument that intervention would "disrupt the careful construction of previously-negotiated scheduling orders," Monolines' Clawback Obj. [Dkt. No. 18 of Adv. No. 20-00005] ¶ 21, is simply incorrect.  Indeed, the Monolines themselves just last week challenged the Mediation Team's proposed structure for resolution of the Revenue Bonds Adversary Proceedings in their *Objection to Amended Report and Recommendation of the Mediation Team* [Dkt. No. 11493], arguing, among other things, that the Revenue Bond Adversary Proceedings should not proceed because the Lift Stay Motions provide a "superior . . . litigation vehicle," *id.* ¶¶ 15-23, that is, the same Lift Stay Motions which the Monolines sought to adjourn at the preliminary hearing and extend deadlines.  Thus, if anyone is "disrupting" these schedules it is the Monolines themselves, not the DRA Parties.

38.     The DRA Parties' prompt efforts to highlight and resolve the scheduling conflict when it became known, and the lack of any articulable prejudice to any party from the timing of the Intervention Motions, mean that the motions clearly satisfy Rule 24(a)'s timeliness standard.

39.     ***Direct and substantial interest.***  Courts also require that the intervenor have a "direct and substantial interest" in the subject matter of the intervention.  *See Int'l Paper Co.*,

18

887 F.2d at 342; *Caterino*, 922 F.2d at 39-40.

40.     *Clawback Adversary Proceeding.*  The DRA Parties, as detailed above and in

their motion, have a significant interest in the outcome of the Clawback litigation and could be

denied due process by a seemingly isolated ruling on the diversion of revenues from HTA.  *See*

*supra* ¶¶ 4-10.

41.     The Monolines argue that the DRA does not have a direct and substantial interest

based on a mis-reading of the standard.  The Monolines assert that there is only a "small overlap"

in the collateral claimed by the DRA Parties and the Monolines.  *See* Monolines' Clawback Obj.

[Dkt. No. 18 of Adv. No. 20-00005] ¶ 28.  But the extent of the overlap in collateral is irrelevant.

Rule 24(a)(2) requires only a direct and substantial interest in the matter—which the DRA has as

described above—not a complete identity of interests with the existing parties.

42.     Any decision the Court makes with respect to the diversion of revenues will

impact the DRA Parties.  Pursuant to Article VI, Section 8 of the Commonwealth Constitution,

the resolution of issues concerning the proper implementation of the clawback requires a

determination of whether the available revenues for any fiscal year were insufficient to meet the

appropriations made for that year.  To make that determination the Court will need to consider

each of the Commonwealth's revenue streams on a year-by-year basis, the entities to which those

revenue streams were allocated, and the order and proportion in which revenue from allocated

streams should be clawed back until available revenues are sufficient the meet appropriations for

that year.  All revenues that have been diverted, including the Act 30-31 Revenues, must be

considered in this comparison, and a determination of whether available revenues exceeded or

fell short of appropriations could implicate the ability of claimant to recover from all clawed

back revenues, including the Act 30-31 Revenues.  The Court should not consider these issues on

19

a piecemeal basis, especially when the FOMB seems intent to push ahead with a plan, without

the Court considering these issues as part of confirmation.

43.    The FOMB argues that the DRA Parties do not have a direct and substantial

interest in the Clawback Adversary Proceeding because "the Act 30-31 Revenues are not among

the revenues purportedly pledged to the bondholders, and are therefore not the subject of this

proceeding."  FOMB Clawback Obj. [Dkt. No. 17 of Adv. No. 20-00005] ¶ 27.  But the FOMB

goes on to admit that "the existing Defendants, like the DRA Parties, may assert perfected

security interests in the Act 30-31 Revenues."  *Id.* ¶ 30.  And the Monolines agree with the DRA

Parties that some of the Act 30-31 Revenues are part of the Adversary Proceedings.  *See*

Monolines' Clawback Obj. [Dkt. No. 11126] ¶ 28 & n.9 (acknowledging overlap in DRA

Parties' security interest in Act 30-31 Revenues and Monolines' asserted collateral).  The FOMB

may dispute in the Clawback Adversary Proceeding that the bondholders hold liens in this

revenue, but that question has not yet been resolved.

44.    The FOMB also argues that the DRA Parties' security interest in the overlapping

revenues may be subordinated to holders of HTA bonds.  FOMB Clawback Obj. [Dkt. No. 17 of

Adv. No. 20-00005] ¶ 36.  Even if that were true (which the DRA Parties do not concede) [12], a

party with a subordinate interest still has a direct and protectable interest.  *See In re Boston*

*Generating, LLC*, 440 B.R. 302, 320 (Bankr. S.D.N.Y. 2010) (rejecting argument that second

lien creditors lacked standing to object to sale of substantially all debtors' assets where

---

[12] The Monolines raise the specter of an "unnecessary intercreditor dispute" over subordination.  *See* Monolines'
Lift Stay Obj. [Dkt. No. 11126] ¶ 3.  Moreover, the FOMB accuse the DRA Parties of "inject[ing] extraneous
issues" into the Adversary Proceedings.  FOMB Clawback Obj. [Dkt. No. 17 of Adv. No. 20-00005] ¶ 5.  While the
DRA Parties anticipate prevailing on the issue of subordination, they have not raised that issue here—though the
Monolines and FOMB appear to have.  The DRA Parties refer to the issue of priority here and in their opening briefs
only to explain that, if ***the UCC and the FOMB*** succeed in their challenges in the Lien Stripping Adversary
Proceeding to the Monolines' claimed liens in the Pledged Revenues, then the DRA would be the only claimant with
a security interest in many of the revenue streams at issue in the Clawback Adversary Proceeding and the Monoline
Lift Stay Matter.  *See* MLS Participation Notice [Dkt. No. 10835] ¶ 37.

possibility remained that second lien creditors would be entitled to a recovery). In any event, that argument also contradicts the FOMB's position in the Lien Stripping Complaint that the bonds do not have a valid lien in the Pledged Revenues. *See* Lien Stripping Compl. [Dkt. No. 1 of Adv. No. 20-00007] ¶¶ 106-27, ¶¶ 132-39. Were the FOMB to prevail in the Lien Stripping Complaint, only the DRA would have an interest in the Act 30-31 Revenues.

45.     *Lien Stripping Adversary Proceeding.* The DRA similarly has a direct and substantial interest in the Lien Stripping Adversary Proceeding because of the significant impact it would have on the DRA's interests in the Clawback Adversary Proceeding. The DRA's interest in the Lien Stripping Adversary Proceeding should not be viewed in isolation but must instead be considered as part of the overall effect of the Intervention Motions.

46.     The interconnectedness of the two Adversary Proceedings is evident from the complaints, which include a number of overlapping counts. *Compare, e.g.*, Clawback Compl. ¶¶ 1010-12 (seeking judgment that Fiscal Agent was not granted any security interest in, nor holds any statutory liens against, any property in which the Commonwealth has an interest) *and* ¶¶ 1085-88 (seeking judgment that Fiscal Agent has no property interest in HTA Allocable Revenues) *with* Lien Stripping Compl. ¶¶ 1467-70 (seeking judgment that 1998 Resolution grants security interest only in revenues received by HTA and deposited to the credit of the 1998 Resolution Funds), ¶¶ 1455-58 (seeking judgment that no statute governing bonds or HTA Allocable Revenues creates a statutory lien against any revenues), *and* ¶¶ 1533-36 (seeking judgment that Fiscal Agent has no property interest in HTA Allocable Revenues retained by Commonwealth). The Court should not rule on these motions in isolation from one another given their clear interrelation.

47.     ***Disposition would impede the DRA's interest.*** The Monolines argue that the

21

DRA's interests would not be impeded because "[t]he nature of the DRA Parties' interests are . . . different from the Monolines'." Monolines' Clawback Obj. [Dkt. No. 18 of Adv. No. 20-00005] ¶ 29. But, as discussed above, it is not just the overlap of the collateral itself, but the overlap of key issues—particularly the litigation over the diversion of the Act 30-31 Revenues in the Clawback Adversary Proceeding—that stands to prejudice the DRA's ability to challenge the Commonwealth's clawback of the Act 30-31 in the later DRA Lift Stay Litigation. Neither the Monolines nor the Commonwealth refute that argument. And as discussed above, *see supra* ¶¶ 45-46, the interrelationship between the claims in the Clawback Complaint and in the Lien Stripping Complaint mean that the DRA's interests in the overlapping revenue streams could be impeded in either action absent intervention by the DRA Parties.

48.     ***Inadequacy of existing representation.*** The Monolines and the FOMB argue that the DRA's interests are adequately represented by the existing parties. FOMB Clawback Obj. [Dkt. No. 17 of Adv. No. 20-00005] ¶¶ 29-30; Monolines' Clawback Obj. [Dkt. No. 18 of Adv. No. 20-00005] ¶ 30. But the fact that the Monolines—whose interests both objectors cite as aligned with DRA's, *see id.*—oppose the DRA Parties' intervention demonstrates they will not adequately represent the DRA's interests. Indeed, the Monolines claim toll revenues as collateral, which are a potential source of divergent interests. Monolines' Clawback Obj. [Dkt. No. 18 of Adv. No. 20-00005] ¶ 28. The Monolines also claim senior priority on the overlapping revenue streams, which would give them an economic interest in challenging the clawbacks only in the amount needed to satisfy their claims, not the DRA's purportedly subordinate claims.[13]

49.     The FOMB also argues that the DRA's interests in the HTA bonds are adequately represented by the bond Trustee. FOMB Clawback Obj. [Dkt. No. 17 of Adv. No. 20-00005] ¶¶

---

[13] The DRA Parties dispute any argument or assertion on purported subordination of the DRA's claims and expressly reserve their right to contest and/or challenge this position at the appropriate time.

31-32.  Even if that were true, the FOMB does not attempt to argue that the bond Trustee

adequately represents the DRA's interest in the HTA loans (in which the bond Trustee has no

interest).  To the extent the Act 30-31 Revenues are made available to the bondholders, the bond

Trustee will have no interest in preserving these revenues for payment of the DRA's claims in

respect of the HTA Loans.  The DRA's interests in respect of the HTA Loans are not represented

by the Trustee's or the Monolines' interests in the competing the HTA bonds.

**V.     The DRA Parties Should Be Permitted to Intervene in the Monoline Lift Stay
        Matter and the Adversary Proceedings Under Bankruptcy Rule 2018(a) and Federal
        Rule of Civil Procedure 24(b).**

50.     As detailed in the Intervention Motions, under Bankruptcy Rule 2018(a) the Court

may also permit a party to intervene in a contested matter such as the Monoline Lift Stay Matter

if it has "a sufficient stake in the outcome of the proceeding so as to require representation," *In*

*re Pub. Serv. Co. of N.H.*, 88 B.R. 546, 551 (Bankr. D.N.H. 1998) (citing *In re Amatex Corp.*,

755 F.2d 1034, 1042 (3d Cir. 1985)), and cause exists to intervene, including consideration of

whether the party is adequately represented in the litigation, whether intervention would result in

undue delay or prejudice to the original parties, and whether the litigation would have

precedential ramifications for the party.  *See id.*; *see also Caterino*, 922 F.2d at 39-40.

51.     A similarly low threshold applies to intervention in an adversary proceeding

under Federal Rule of Civil Procedure 24(b), which requires only a "common question of law or

fact."  Fed. R. Civ. P. 24(b)(1)(B).  Once the requisite common question is shown, a court may

consider almost any factor rationally relevant to the determination.  *See Daggett v. Comm'n on*

*Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999); *Puerto Rico Tel.*

*Co. v. San Juan Cable, LLC*, 298 F.R.D. 28, 31 (D.P.R. 2014).  The court must also consider

whether intervention will "unduly delay or prejudice adjudication of the original parties' rights."

Fed. R. Civ. P. 24(b)(3).  This is true irrespective of whether the party is a "party in interest"

entitled to mandatory intervention under Rule 24(a).

52.     As discussed above, the Monoline Lift Stay Matter and the Adversary
Proceedings raise issues that could have a direct impact on the DRA Parties' ability to recover on
the DRA's claims in respect of the HTA bonds and the HTA loans and succeed in the DRA
Parties' own lift stay motion.  *See supra* ¶ 4-10.  Intervention would not prejudice the
Commonwealth or the Monolines; the DRA Parties are ready to participate in both proceedings
on any reasonable schedule the Court deems appropriate, *see* Am. Interim Revenue Bond Case
Mgmt. Order [Dkt. No. 10595] at 5 n.3 ("[B]riefing and other deadlines applicable to
[intervenors] shall be established in the order(s) granting such intervention . . . ."), and with
limitations consistent with those set forth in the Participation Stipulation.

53.     The Monolines argue that permissive intervention is not warranted for a host of
reasons overlapping with the issues addressed above.  For example, they argue that because the
DRA's interests "are either sufficiently distinct from the Monolines' to warrant litigation under a
separate schedule" or are "already well-protected."  Monolines' Lift Stay Obj. [Dkt. No. 11126]
¶ 32.  Those arguments fail because, as explained above, the DRA has significant economic
interests in the Act 30-31 Revenues that could be affected by these proceedings and that diverge
from the Monolines' interests.  *See supra* ¶¶ 39-49.  Moreover, the Monolines' argument that
permissive intervention should be denied as untimely, Monolines' Lift Stay Obj. [Dkt. No.
11126] ¶ 33, fails because, as discussed above, the DRA Parties acted promptly to notify the
parties and the Court of their concerns after the mediation team filed its Interim Report, to
attempt to negotiate consensual intervention, and then to intervene when the dispute became ripe.
*See supra* ¶¶ 33-38.

54.     The FOMB argues that the overlapping issues do not support permissive

24

intervention because they "may, in fact, never materialize."  Clawback Obj. ¶ 35; Lien Stripping
Obj. ¶ 33.  But as explained above, that assumes the FOMB will succeed in its challenges to the
bondholders' liens in the overlapping revenues.  *See supra* ¶ 43.  If the bondholders prevail on
the overlapping issues, the availability of the overlapping revenues will then become front and
center.

55.      The FOMB's argument that intervention by the DRA Parties will cause delay
because additional parties "are the source of additional questions, briefs, arguments, motions and
the like," Clawback Obj. ¶ 36; Lien Stripping Obj. ¶ 34, fails because it ignores the limitations
on the DRA Parties' involvement imposed by the Participation Stipulation and the Amended
Interim Case Management Order for Revenue Bonds.  Finally, the FOMB's argument that the
DRA Parties would "spawn intercreditor litigation" over subordination, *id.*, is simply not true.
The DRA Parties do not intend to raise disputes over priority with the Monolines as part of these
proceedings.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth in the Intervention Motions, the DRA
Parties respectfully request that the Court permit the DRA Parties to participate or intervene in
the Monoline Lift Stay Matter and to intervene in the Adversary Proceedings.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today February 25, 2020.

**MCCONNELL VALDÉS LLC**

270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
PO Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: 787-250-5632
Facsimile:  787-759-9225

By: */s/Arturo J. García-Solá*
Arturo J. García-Solá
USDC No. 201903
Email: ajg@mcvpr.com

By: */s/Nayuan Zouairabani*
Nayuan Zouairabani
USDC No. 226411
Email: nzt@mcvpr.com

***Attorneys for AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority***

**C. CONDE & ASSOC. LAW OFFICES**

By:  */s/ Carmen D. Conde Torres*

Carmen D. Conde Torres
(USDC No. 207312)
254 San José Street, Suite 5
San Juan, PR 00901-1523
Tel. 787-729-2900
Fax. 787-729-2203
E-Mail: condecarmen@condelaw.com

*- and -*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: */s/ Douglas S. Mintz*
Douglas S. Mintz (admitted pro hac vice)
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone:  (202) 339-8400
Facsimile:   (202) 339-8500
E-mail:    dmintz@orrick.com

*- and -*

Laura Metzger (pro hac vice pending)
Peter Amend (admitted pro hac vice)
Monica Perrigino (admitted pro hac vice)
51 West 52nd Street
New York, N.Y. 10019
Telephone:  (212) 506-5000
E-mail:     lmetzger@orrick.com
            pamend@orrick.com
            mperrigino@orrick.com

***Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for GDB Debt Recovery Authority***

26