**<u>EXHIBIT 16</u>**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, et
al.,

                    Debtors.[1]

PROMESA
Title III

Case No. 17-3283 (LTS)
(Jointly Administered)

------------------------------------------------------------x

RENÉ PINTO LUGO, ET AL, VAMOS,
MOVIMIENTO DE CONCENTRACIÓN
CIUDADANA INC., (VAMOS); UNIÓN DE
EMPLEADOS DE OFICINA Y PROFESIONALES
DE LA AUTORIDAD DE EDIFICIOS PÚBLICOS,
(UEOGAEP); UNIÓN INSULAR DE
TRABAJADORES INDUSTRIALES Y
CONSTRUCCIONES ELÉCTRICAS INC.,
(UITICE); UNIÓN INDEPENDIENTE DE
EMPLEADOS DE LAAUTORIDAD
DEACUEDUCTOS YALCANTARILLADOS,
(UIA); UNIÓN DEEMPLEADOS
DEOFICINACOMERCIO YRAMASANEXAS,
PUERTOS, (UEOCRA); UNIÓN DE EMPLEADOS
DEL BANCO DE LA VIVIENDA, (UEBV); UNIÓN
DE EMPLEADOS PROFESIONALES
INDEPENDIENTES, (UEPI); UNIÓN NACIONAL
DE EDUCADORES Y TRABAJADORES DE LA
EDUCACIÓN, (UNETE); AND ASOCIACIÓN DE
INSPECTORES DE JUEGOS DE AZAR, (AIJA);
ASOCIACIÓN DE JUBILADOS DE LA

Adv. Proc. No. 18-041-LTS in 17
BK 3283-LTS

---

[1] The Debtors in the underlying Title III Case, along with each Debtor's respective Title III case number listed as bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK3566-LTS). (Last Four Digits of Federal Tax ID: 9686; and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

AUTORIDAD DE ENERGÍA ELÉCTRICA
HEREINAFTER (AJAEE)

Plaintiffs

v.

THE GOVERNMENT OF THE UNITED STATES
OF AMERICA, (USA); FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO (THE FOMB); AND
RICARDO ROSSELLÓ NEVARES IN HIS
OFFICIAL CAPACITY.

Defendants

-----------------------------------------------------------------x

FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO
(THE FOMB)

Movant

v.

RENÉ PINTO LUGO, ET AL, VAMOS,
MOVIMIENTO DE CONCENTRACIÓN
CIUDADANA INC., (VAMOS); UNIÓN DE
EMPLEADOS DE OFICINA Y
PROFESIONALES DE LA AUTORIDAD DE
EDIFICIOS PÚBLICOS, (UEOGAEP); UNIÓN
INSULAR DE TRABAJADORES
INDUSTRIALES Y CONSTRUCCIONES
ELÉCTRICAS INC., (UITICE); UNIÓN
INDEPENDIENTE DE EMPLEADOS DE
LA AUTORIDAD DE ACUEDUCTOS
Y ALCANTARILLADOS, (UIA); UNIÓN
DE EMPLEADOS DE OFICINA COMERCIO
Y RAMAS ANEXAS, PUERTOS, (UEOCRA);
UNIÓN DE EMPLEADOS DEL BANCO DE LA
VIVIENDA, (UEBV); UNIÓN DE EMPLEADOS
PROFESIONALES INDEPENDIENTES, (UEPI);
UNIÓN NACIONAL DE EDUCADORES Y
TRABAJADORES DE LA EDUCACIÓN,
(UNETE); AND ASOCIACIÓN DE
INSPECTORES DE JUEGOS DE AZAR, (AIJA);
ASOCIACIÓN DE JUBILADOS DE LA
AUTORIDAD DE ENERGÍA ELÉCTRICA

HEREINAFTER (AJAEE)

Respondents

------------------------------------------------------------------x

## MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO DISMISS PLAINTIFFS' FIRST AMENDED ADVERSARY COMPLAINT PURSUANT TO FED R. CIV. P. 12(B)(1) AND 12(B)(6)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......................................................................................... 1

SUMMARY OF CLAIMS AND ARGUMENTS....................................................................... 2

ARGUMENT ................................................................................................................. 8

I.   NONE OF THE PLAINTIFFS HAS STANDING. ......................................................... 8

    A.  Pinto Lugo ............................................................................................. 9

    B.  VAMOS..................................................................................................10

    C.  Labor Unions .........................................................................................11

II.  THE FIRST, SECOND, AND THIRD CAUSES OF ACTION AGAINST THE
    BOARD ARE BARRED BY PROMESA § 105...........................................................13

III. CONGRESS'S ENACTMENT OF PROMESA UNDER THE TERRITORIES
    CLAUSE IS AN APPROPRIATE EXERCISE OF CONSTITUTIONAL
    AUTHORITY..........................................................................................................14

IV.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER INTERNATIONAL LAW. ..........17

V.   PLAINTIFFS FAIL TO STATE CLAIMS UNDER THE DECLARATION OF
    INDEPENDENCE AND THE FIRST, FIFTH, AND FOURTEENTH
    AMENDMENTS TO THE UNITED STATES CONSTITUTION.................................19

    A.  The Declaration of Independence Is Not a Legally Operative Document. .................20

    B.  No Violation of Due Process Has Been Alleged. ......................................................20

    C.  The Complaint Does Not Adequately Plead an Equal Protection Claim. ..................22

VI.  THE COMPLAINT FAILS TO STATE A CLAIM BASED ON A CONFLICT
    OF INTEREST OR DUTY TO AUDIT PUERTO RICO'S DEBT. ...............................24

    A.  Only the President of the United States Can Remove Oversight Board Members
       for Cause. In any Event, the Complaint Fails to Plead an Actual Conflict of
       Interest or Basis for Removal. .................................................................................25

    B.  There Is No Requirement That the Oversight Board Conduct an Audit. ...................26

    C.  The Allegations Concerning an Audit Fail to State a Claim because the
       Independent Investigator Has Undertaken an Investigation......................................27

    D.  The Complaint's Allegations Concerning the Lack of an Audit Fail To State a
       Violation of Due Process Rights..............................................................................30

    E.  Implementation of the Fiscal Plans and Budgets Should Not Be Stayed. ..................31

VII. THE COMPLAINT'S SIXTH CAUSE OF ACTION REGARDING PREPA
AND UPR IS WITHOUT MERIT..........................................................................32

    A. Plaintiffs' Claim is Preempted. ...............................................................32

    B. The Claim as to PREPA Is Not Ripe.......................................................33

    C. To the Extent the Complaint Challenges Either PREPA's or UPR's Certified
       Fiscal Plan, the Court Lacks Jurisdiction Over Such Claim. ....................34

    D. Article VI, § 19 of the Puerto Rico Constitution Does Not Provide a Private
       Right of Action.........................................................................................36

CONCLUSION.....................................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

<small>CASES</small>

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999) ............................................................................................... 21

*Ambac Assurance Corp. v. Commonwealth of Puerto Rico (In re Fin. Oversight*
    *and Mgmt. Bd. for P.R.)*,
    297 F. Supp. 3d 269 (D.P.R. 2017) ..................................................................... 35

*Arizona v. United States*,
    567 U.S. 387 (2012) ............................................................................................. 36

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 21

*Bennett v. Spear*,
    520 U.S. 154 (1997) ............................................................................................. 12

*Bingham v. Mass.*,
    616 F.3d 1 (1st Cir. 2010) ................................................................................... 13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .................................................................................. 8, 9, 13, 17

*ClearOne Commc'ns, Inc. v. Bowers*,
    651 F.3d 1200 (10th Cir. 2011) .......................................................................... 26

*Coffey v. United States*,
    939 F. Supp. 185 (E.D.N.Y. 1996) ..................................................................... 20

*Cotting v. Godard*,
    183 U.S. 79 (1901) ............................................................................................... 20

*City of Sacramento v. Lewis*,
    523 U.S. 833 (1998) ............................................................................................. 22

*Ernst & Young v. Depositors Econ. Prot. Corp.*,
    45 F.3d 530 (1st Cir. 1995) ................................................................................. 33

*F.C.C. v. Beach Commc'ns, Inc.*,
    508 U.S. 307 (1993) ............................................................................................. 23

*Fundacion Arqueologica v. Dep't of Hous.*,
   9 P.R. Offic. Trans. 509 (D.P.R. 1980) ........................................................................34

*Global Tower Assets, LLC v. Town of Rome*,
   810 F.3d 77 (2016) ........................................................................22

*Heller v. Doe*,
   509 U.S. 312 (1993)........................................................................23

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ........................................................................11

*Igartua v. United States (Igartua IV)*,
   626 F.3d 592 (1st Cir. 2010) ........................................................................19

*Igartua-De La Rosa v. United States (Igartua III)*,
   417 F.3d 145 (1st Cir. 2005) ........................................................................17, 18, 19

*In re Fin. Oversight and Mgmt. Bd. for P.R.*,
   872 F.3d 57 (1st Cir. 2017) ........................................................................9

*In re Fin. Oversight and Mgmt. Bd. for P.R.*,
   -- F. Supp. 3d --, No. 17-BK-3283-LTS, 2018 WL 3425294 (D. P.R. July 13,
   2018)........................................................................ 6, 15, 16

*In re Fin.Oversight and Mgmt. Bd. for P.R.*,
   -- F. Supp. 3d --, No. 18-ap-080-LTS, 2018 WL 3760979 (D.P.R. Aug. 7,
   2018)........................................................................34

*In re Fin. Oversight and Mgmt. Bd. for P.R.*,
   -- F. Supp. 3d --, No. 18-ap-081-LTS, 2018 WL 3753018 (D.P.R. Aug. 7,
   2018)........................................................................35

*In re Leeward Subdivision Partners, LLC*,
   BAP No. WW-10-1060, 2010 WL 6259983 (B.A.P. 9th Cir. June 11, 2010) ........................32

*Jordan Hosp., Inc. v. Shalala*,
   276 F.3d 72 (1st Cir. 2002) ........................................................................21

*Licari v. Ferruzzi*,
   22 F.3d 344 (1st Cir. 1994) ........................................................................22

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................ passim

*Medellin v. Texas*,
   552 U.S. 491 (2008) ............................................................................ 17, 18

*Mision Indus. de P.R. v. Junta de Planificacion de P.R.*,
   146 D.P.R. 64 (1998) ................................................................................ 36

*Morales-Font v. Air Charter, Inc.*,
   Case No. 17-1033-SEC, 2017 WL 4119620 (D.P.R. Sept. 15, 2017) ................... 20

*Nestor Colon Medina & Sucesores v. Custodio*,
   964 F.2d 32 (1st. Cir. 1992) ...................................................................... 22

*Nw. Envtl. Def. Ctr. v. Brennen*,
   958 F.2d 930 (9th Cir. 1992) ..................................................................... 10

*People To End Homelessness, Inc. v. Develco Singles Apartments Assocs.*,
   339 F.3d 1 (1st Cir. 2003) .......................................................................... 10

*Pullen v. Moore*,
   No. 05-cv-4368, 2005 WL 2850124 (N.D. Ill. Oct. 26, 2005) ........................... 21

*Quinones v. Mendez*,
   No. 10-1378, 2012 WL 1657137 (D.P.R. May 10, 2012) .................................. 21

*Reddy v. Foster*,
   845 F.3d 493 (1st Cir. 2017) ...................................................................... 33

*Reynolds v. Sims*,
   377 U.S. 533 (1964) .................................................................................. 36

*Romer v. Evans*,
   517 U.S. 620 (1996) .................................................................................. 23

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004) ............................................................................ 18, 19

*Troxel v. Granville*,
   530 U.S. 57 (2000) (Scalia, J., dissenting) .................................................... 20

*United States v. AVX Corp.*,
   962 F.2d 108 (1st Cir. 1992) ...................................................................... 10

*United States v. Li*,
   206 F.3d 56 (1st Cir. 2000) ........................................................................ 18

vi

*United States v. Mass. Water Res. Auth.*,
 256 F.3d 36 (1st Cir. 2001) ...................................................................27

*United States v. Zannino*,
 895 F.2d 1 (1st Cir 1990) .....................................................................32

*United States v. Windosr*,
 570 U.S. 744 (2013) .............................................................................23

*UTIER v. PREPA, et al.*,
 No. 17-ap-228 (D.P.R. 2017), Dkt. No. 130 ...................................13, 35

*Wilkinson v. Austin*,
 545 U.S. 209 (2005) .............................................................................21

**STATUTES**

Bankruptcy Code § 305(a) ...........................................................................31

Bankruptcy Code § 1123(a)(5) .................................................................8, 32

Constitution of Puerto Rico ................................................................. passim

Constitution of the United States ........................................................ passim

PROMESA § 4...................................................................................8, 32, 36

PROMESA § 101 .................................................................................. passim

PROMESA § 104 .........................................................................24, 27, 29

PROMESA § 105 ...........................................................................6, 13, 14, 23

PROMESA § 106 ...............................................................................34, 35

PROMESA § 109 ...........................................................................................26

PROMESA § 210 ...........................................................................................7

PROMESA § 301 .....................................................................................8, 31, 32

PROMESA § 315 .........................................................................24, 27, 30

PROMESA § 405 ...........................................................................................2

OTHER AUTHORITIES

Fed. R. Civ. P. Rule 12(b)(1) ...................................................................36

Fed. R. Civ. P. Rule 12(b)(6) ...................................................................36

Fed. R. Bankr. P. 1017..............................................................................31

Final Investigative Report (Aug. 20, 2018), available at
    https://oversightboard.pr.gov/documents ...................................................28, 29

Letter of Engagement of Kobre & Kim LLP as Independent Investigation Team
    (Sept. 6, 2017), available at https://oversightboard.pr.gov/documents .............................. 28

*Oversight Board's Code of Conduct* (Dec. 5, 2017), available at
    https://drive.google.com/file/d/1Zi4nojiQ4t55SwuwXGKqjPOWv8mhwVaE/
    view ................................................................................................................26

Press Release, Financial Oversight and Management Board for Puerto Rico (Sept.
    13, 2017), available at https://oversightboard.pr.gov/documents ...........................................28

**To the Honorable United States District Court Judge Laura Taylor Swain**:

Defendant the Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>") respectfully submits this memorandum in support of its motion to dismiss Plaintiffs' First Amended Adversary Complaint (the "<u>Complaint</u>").

## PRELIMINARY STATEMENT

The Complaint, in substance, attacks Article IV, Section 3, Clause 2 (the "<u>Territories Clause</u>") of the United States Constitution, particularly its grant to the United States Congress of the power to regulate any territory of the United States. PROMESA § 101(b)(2) states Congress enacted PROMESA pursuant to the Territories Clause. In the 108-page Complaint, a disparate group of Plaintiffs trace the relationship of Puerto Rico and the United States from the Spanish American War in 1898 to the United States Congress's 2016 creation of the Oversight Board pursuant to The Puerto Rico Oversight, Management, and Economic Stability Act ("<u>PROMESA</u>") (codified at 48 U.S.C. §§ 2101–2241). The Complaint alleges the United States has historically denied Plaintiffs and the people of Puerto Rico their right to self-determination and deprived them of liberty, life (including the right to pursue happiness), and property rights. Plaintiffs point to the creation of the Oversight Board as another act of denial and deprivation.

Even accepting all of Plaintiffs' allegations regarding that relationship as true for purposes of this motion, the Complaint does not state a claim upon which relief can be granted. The bulk of the Complaint's allegations address alleged historical shortcomings in the United States' treatment of Puerto Rican citizens in terms of political questions. While the Oversight Board is mindful of Plaintiffs' concerns, those issues are constitutionally committed to the legislative and executive branches of the federal government and do not support justiciable claims against the Oversight Board.

Plaintiffs also claim that Congress's creation of the Oversight Board, under its Territories Clause authority, its charge to the Oversight Board to assist Puerto Rico in its recovery from the financial crisis that has prevented growth and destabilized its economy, and the Oversight Board's actions implementing PROMESA are unlawful because these acts fail to recognize the rights of the people of Puerto Rico. These claims are also without merit. The enactment of PROMESA, the creation of the Oversight Board with the authority set out in PROMESA, and the actions taken by the Oversight Board are all founded on a constitutional exercise of congressional power under the Territories Clause. Moreover, Congress exercised that power only after Puerto Rico defaulted on its debt and was unable to provide its citizens effective services, as Congress found and established in § 405(m) of PROMESA. Plaintiffs nowhere explain how the Commonwealth could survive without PROMESA.

Finally, and most fundamentally, none of these Plaintiffs has established standing to bring any of the claims made in the Complaint, and claims based upon actions taken by the Oversight Board pursuant to PROMESA are barred by PROMESA itself.

## <u>SUMMARY OF CLAIMS AND ARGUMENTS</u>

The Complaint identifies the following Plaintiffs:

- René Pinto Lugo ("<u>Pinto Lugo</u>"), an individual who alleges he is a creditor of the Commonwealth, Compl. ¶ III.A.1, pg. 8;

- VAMOS, Movimiento de Concertación Ciudadana Inc. ("<u>VAMOS</u>"), an alleged "non for profit corporation" whose activities include "educational and logistical support to community based organizations" and "organiz[ing] community based socioeconomic and cultural groups," *id.* ¶ III.A.2, pg. 8–9;

2

- Nine labor unions asserting unspecified violations of various collective bargaining agreements:

  - Unión de Empleados de Oficina y Profesionales de la Autoridad de Edificios Públicos ("UEOPAEP"), a labor union that claims to represent approximately 120 employees of the Puerto Rico Buildings Authority ("PBA"), *id.* ¶ III.A.3, pg. 9–10;

  - Unión Insular de Trabajadores Industriales y Construcciones Eléctricas Inc. ("UITICE"), a labor union that claims to represent approximately 900 employees of the Puerto Rico Electric Power Authority ("PREPA"), *id.* ¶ III.A.4, pg. 10;

  - Unión Independiente de Empleados de la Autoridad de Acueductos y Alcantarillados ("UIE"), a labor union that claims to represent approximately 4,500 employees of the Puerto Rico Aqueduct and Sewer Authority ("PRASA"), *id.* ¶ III.A.5, pg. 10–11;

  - Unión de Empleados de Oficina Comercio y Ramas Anexas ("UEOCRA"), a labor union that claims to represent approximately 300 employees of the Puerto Rico Ports Authority ("PRPA"), *id.* ¶ III.A.6, pg. 11;

  - Unión de Empleados del Banco de la Vivienda ("UEBV"), a labor union that claims to represent approximately 50 employees of the Housing Bank of the Commonwealth of Puerto Rico ("HB"), *id.* ¶ III.A.7, pg. 11–12;

- Unión de Empleados Profesionales Independientes ("UEPI"), a labor union that claims to represent approximately 400 employees of PREPA, *id.* ¶ III.A.8, pg. 12;

- Unión Nacional de Educadores y Trabajadores de la Educación ("UNETE"), a labor union that claims to represent approximately 450 employees of the Department of Education of the Commonwealth of Puerto Rico ("DEPR"), *id.* ¶ III.A.9, pg. 12–13;

- Asociación de Inspectores de Juegos de Azar ("AIJA"), a labor union that claims to represent approximately 80 employees of the Puerto Rico Tourism Authority ("PRTA"), *id.* ¶ III.A.10, pg. 13; and

- Asociación de Jubilados de la Autoridad de Energía Eléctrica ("AJAEE"), a labor union that claims to represent approximately 5,000 retired employees of PREPA, *id.* ¶ III.A.11, pg. 14.

Plaintiffs assert violations of various international treaties, the United States Declaration of Independence, the First, Fifth, and Fourteenth Amendments to the United States Constitution, and Article VI, § 19 of the Puerto Rico Constitution. Plaintiffs seek extraordinary relief, asking that the Court (*i*) declare the "imposition" of the Oversight Board "over Puerto Rico" to be an illegal, void, and unconstitutional action, and order "the members of the Board, the Board itself and all of its contractors" to return to the Commonwealth any monies paid pursuant to

4

PROMESA,[2] (*ii*) stay the Oversight Board from pursuing its statutory mandate (including the certification and implementation of fiscal plans and budgets) until an "independent, integral, legal and forensic audit" of Puerto Rico's debt is completed, and (*iii*) bar the Government of Puerto Rico from disposing of and/or privatizing the Puerto Rico Electric Power Authority ("PREPA") without complying with the Puerto Rico Constitution.[3] Compl. ¶ VI, pg. 106–07.

The First, Second, Third, Fourth, and Sixth Causes of Action should be dismissed.

First, Plaintiffs do not have standing to assert these claims: (*i*) Pinto Lugo asserts he has standing as a bondholder, but he has not alleged an injury that is, among other things, fairly traceable to the challenged action and redressable by a resolution in his favor; (*ii*) the non-profit VAMOS asserts standing based upon the community services it provides, but has failed, among other things, to allege, organizationally or on behalf of its members, any connection between its purpose and the rights it seeks to vindicate in this adversary proceeding, or how Defendants' alleged violations of law have affected its organizational interest; and (*iii*) the nine labor unions ("Union Plaintiffs") have failed to establish either a concrete injury or an injury traceable to Defendants.

---

[2]  Alternatively, Plaintiffs ask the Court to remove two members from the Oversight Board based on alleged conflicts of interest and to declare the Oversight Board's actions to date null and void. Compl. ¶ VI.2, pg. 106.

[3]  Plaintiffs also (*i*) assert the Oversight Board (along with the Government of Puerto Rico) is "intervening" with the University of Puerto Rico ("UPR") and ask that such intervention "be stopped," Compl. ¶ V.F.30, pg. 105–06, and (*ii*) ask that the United States government be included as a party to answer the allegations in the Complaint and assume any and all "constitutional and legal liabilities it should be compelled to assume over the public debt of the government of Puerto Rico and the illegal and unconstitutional imposition of the [Oversight Board] over the Plaintiffs, Puerto Rico and its residents," *id*. ¶ VI.4, pg. 107.

Second, none of Plaintiffs' causes of action states a claim upon which relief can be granted or is within this Court's subject-matter jurisdiction.

- The First, Second, and Third Causes of Action seek an order against the Oversight Board compelling it to return money used in the course of carrying out its duties pursuant to PROMESA. These claims must be dismissed pursuant to PROMESA § 105, which exempts the Oversight Board from liability resulting from actions taken to carry out the statute.

- The First Cause of Action's request for a declaration that the Oversight Board is unconstitutional because its creation allegedly violates the Charter of the United Nations (the "UN Charter"), the Declaration of Human Rights of the United Nations (the "UNDHR"), and the International Covenant of Civil and Political Rights (the "ICCPR", and collectively with the UN Charter and the UNDHR, the "Treaties") is without merit. Well-settled law establishes that such international charters and treaties do not create binding domestic legal obligations or private rights of action enforceable in federal court unless they are self-executing or implemented by federal legislation – and the Treaties are neither.

- The Second and Third Causes of Action, which ask the Court to declare the Oversight Board unconstitutional because it violates the Declaration of Independence, the First, Fifth, and Fourteenth Amendments to the United States Constitution, and separation-of-powers principles, also fail to state a claim for the following reasons. The Declaration of Independence cannot form the basis of a claim. In addition, as this Court recently held,[4] PROMESA was enacted under the Territories Clause and, when Congress legislates under the Territories Clause, its

---

[4]    *See In re Fin. Oversight and Mgmt. Bd. for P.R.*, No. 17-bk-3283-LTS, -- F. Supp. 3d --, 2018 WL 3425294, at *6 (D.P.R. July 13, 2018).

6

authority is not constrained by constitutional principles that otherwise apply to the federal government.  Finally, Plaintiffs' summary allegations of due process and equal protection violations fail to meet the most basic requirements.

•    The Fourth Cause of Action contains two claims for relief.  The first seeks an order removing two members of the Oversight Board based upon allegations the members have conflicts of interest.  PROMESA, however, does not grant the Court the power to remove Oversight Board members.  PROMESA § 101(e)(5)(B) grants that power exclusively to the President of the United States.  Moreover, Plaintiffs fail to allege any actual conflicts of interest or allege any facts that could support an impermissible conflict of interest.  The second claim seeks an order requiring the Oversight Board to comply with a purported "obligation" to audit Puerto Rico's debt and stay implementation of the fiscal plans and creditor negotiations until such an audit can be completed.  This claim ignores (*i*) that nothing in PROMESA obligates the Oversight Board to conduct an audit, and (*ii*) that the Board retained an independent investigator who conducted an investigation and made public a final report on August 20, 2018.  Thus, there is no basis on which to grant the requested relief in the Fourth Cause of Action.

•    The Fifth Cause of Action (which is brought only as to the United States) seeks an order requiring, among other things, that the United States assume "any and all constitutional and legal liabilities" and "the public debt of the Government of Puerto Rico."  Compl. ¶ V.E.21, pg. 97.  The Oversight Board defers to the United States to respond to this Cause of Action, but points out that PROMESA § 210(a) expressly provides the United States is not responsible or liable for any bond, note, or other obligation of a covered territory.

• The Sixth Cause of Action seeks an order barring Defendants from privatizing PREPA based on Article VI, § 19 of the Puerto Rico Constitution, which requires the Commonwealth to conserve natural resources.[5] In accordance with PROMESA § 4, the power PROMESA grants debtors to sell assets pursuant to Bankruptcy Code § 1123(a)(5), made applicable by PROMESA § 301(a), preempts anything inconsistent in the Puerto Rico Constitution. Moreover, because no final decision has been made with respect to the privatization of PREPA, this claim also fails because it is not ripe. And, even if it were ripe, the claim would fail because Article VI, § 19 of the Puerto Rico Constitution does not provide a private right of action.

## **ARGUMENT**

## I. **NONE OF THE PLAINTIFFS HAS STANDING.**

Standing is an "essential . . . part of the case-or-controversy requirement of Article III;" if Plaintiffs lack standing, this Court lacks subject-matter jurisdiction, and the Complaint must be dismissed. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To demonstrate standing, Plaintiffs "must allege injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted); *see also Lujan*, 504 U.S. at 560–61. The burden of establishing these elements lies with Plaintiffs. *Id.*

---

[5] This Cause of Action also asserts the Oversight Board is "intervening" with UPR. Compl. ¶ V.F.30, pg. 105–06. While the Complaint goes on to allege the Oversight Board (and the Government) "must be stopped from illegally weakening, breaking down, and selling one of the most valuable and precious institutions of Puerto Rico, in detriment to the future of the People of Puerto Rico," the Complaint does not specifically request the Court take any action as to UPR.

### A. Pinto Lugo

Pinto Lugo asserts standing based on his bond ownership, which allegedly makes him "a creditor of the Commonwealth of Puerto Rico and of PREPA [who] has suffered losses in the investment . . . ." Compl. ¶ III.C.1, pg. 16. That simple allegation, however, is inadequate. Pinto Lugo must also demonstrate constitutional and prudential standing to assert the specific claims made in the complaint. *See, e.g., In re Fin. Oversight and Mgmt. Bd. for P.R.*, 872 F.3d 57, 64 n.7 (1st Cir. 2017) (in addition to Article III standing, courts require "the interests of a party seeking to participate lie within the 'zone of interests' protected by the particular statute or legal rule implicated in the given proceeding" (citing 7 Collier on Bankruptcy ¶ 1109.04(4) and *In re James Wilson Assocs.*, 965 F.2d 160 (7th Cir. 1992)).

Pinto Lugo has failed to make such a showing. He has not articulated an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action and redressable by a favorable ruling." *Clapper*, 568 U.S. at 409. While he alleges that he is "subject to decisions" by the Oversight Board,[6] none of the allegations has anything to do with an actual *decision* by the Oversight Board. In addition, Pinto Lugo does not allege any specific financial losses or harm that he suffered as a result of the Oversight Board's conduct. *Lujan*, 504 U.S. at 560–61 (1992) ("[T]here must be a causal connection between the injury and the conduct complained of."). The so-called "decisions" cited by Pinto Lugo are not discrete actions taken by

---

[6]     Pinto Lugo claims that he has suffered injuries because "[a]s a bondholder he is subject to the decisions made" by the Oversight Board, which include the Oversight Board's "power . . . to subject [the Commonwealth] and any of its public corporations" to debt restructuring proceedings under Title III, "to establish fiscal plans and government budgets," "to negotiate agreements with creditors," and "to impose policies through . . . fiscal plans and budget determinations." Compl. ¶ III.C.1, pg. 16.

the Oversight Board that specifically affect him, but are merely a description of certain aspects of the Oversight Board's authority under PROMESA. Pinto Lugo has not drawn any connection between his alleged financial losses and the Oversight Board's exercise of its authority under PROMESA. Without doing so, he cannot establish standing to bring his claims. *See, e.g.*, *Nw. Envtl. Def. Ctr. v. Brennen*, 958 F.2d 930, 937 (9th Cir. 1992) (plaintiff lacked standing because injury could not be traced to any alleged constitutional infirmity).

## B. VAMOS

VAMOS likewise fails to allege standing sufficient to bring its claims. VAMOS alleges that it is a "non for profit corporation" that "provides educational and logistical support to community based organizations and . . . organizes community-based socioeconomic and cultural groups whose constitutional and statutory rights are being violated by the [Oversight Board's] actions." Compl. ¶ III.A.2, pg. 16. VAMOS has not sufficiently alleged organizational standing or standing on behalf of its members.

To show organizational standing, VAMOS must demonstrate its activities are related to the claims it raises. *Lujan*, 504 U.S. at 560–61; *People To End Homelessness, Inc. v. Develco Singles Apartments Assocs.*, 339 F.3d 1 (1st Cir. 2003); *United States v. AVX Corp.*, 962 F.2d 108, 118 (1st Cir. 1992) (holding that organization had not shown standing when it alleged only a "generalized, undifferentiated interest"). VAMOS's allegation that it engages in "food drives, educational workshops, leadership and organizational workshops and counseling services, grassroots community organization, and economic, social and educational development through self-governance practices," Compl. ¶ III.C.2, pg. 16, does not establish a link between its activities and the Complaint's claims. For example, VAMOS does not explain how alleged violations of

the United States and Puerto Rico Constitutions or international law have affected its ability to conduct its leadership and organizational workshops, its grassroots community organization, or its "economic, social and educational development" activities. Without such a showing, VAMOS cannot establish organizational standing.

As for standing on behalf of its members, while VAMOS allegedly provides services to "socioeconomic and cultural groups," *id.*, the Complaint does not allege that any such "groups" are actually members of VAMOS. And, even if VAMOS were able to establish these groups are members of VAMOS, it would also be required to demonstrate (*i*) such members would have standing in their own right, (*ii*) the interest the association is seeking to protect is germane to the association's purpose, and (*iii*) neither the claim asserted, nor the relief requested, requires participation of individual members in the lawsuit, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977). There are no allegations in the Complaint establishing these elements.

### C. Labor Unions

The nine Union Plaintiffs lack standing because they have not identified a concrete, particularized injury traceable to a challenged action of any Defendant. *Lujan*, 504 U.S. at 560–61. All of the Union Plaintiffs rely on similar allegations to establish standing – each asserting it has entered into a collective bargaining agreement ("CBA") with a specific governmental employer and that the Commonwealth and the governmental employer have breached that agreement.

Six of the Union Plaintiffs (UEOPAEP, UIA, UEOCRA, UEBV, UNETE, and AIJA) allege injuries caused by the governmental entity that is a party to the CBA (the PBA, PRASA, PRPA, HB, DEPR, and PRTA, respectively) and the Commonwealth. Compl. ¶¶ III.A.3, 5, 6, 7,

9, 10, pg. 9–13. However, none of these governmental entities or the Commonwealth is a defendant in this action, and thus, none of the alleged injuries of these six Union Plaintiffs is fairly traceable *to a challenged action of the Defendants. See, e.g., Bennett v. Spear*, 520 U.S. 154, 167 (1997) ("injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"). These six Union Plaintiffs try to overcome this basic flaw by arguing their injuries are nonetheless traceable to the Oversight Board's actions because either the specific governmental employers or the Commonwealth allegedly breached their CBAs as a result of actions "suggested, proposed, and/or imposed" by the Oversight Board. Compl. ¶ III.C.3, pg. 17. But here again, the six Union Plaintiffs fail to allege any specific actions by the Oversight Board that caused any alleged harm. Plaintiffs also fail to allege facts showing how any Oversight Board decision caused the Commonwealth or the specific governmental employer to breach the relevant CBA. Moreover, there is no showing that any claimed breach actually injured any union members. Without establishing a connection between the Defendants and the members' injuries, these six Union Plaintiffs lack standing.

The remaining three unions, UITICE, UEPI, and AJAEE ("the <u>PREPA Unions</u>"), assert injuries caused by PREPA, the Commonwealth, and the Governor. *Id.* ¶¶ III.A.4, 8, 11, pg. 10, 12, 14. Each union alleges their members suffered economic injuries as a result of unspecified breaches of their CBAs. *Id.* ¶ III.C.3, pg. 17–19. These allegations fail because none establishes any causal link between the alleged (unspecified) conduct and the alleged harm. *Lujan*, 504 U.S. at 560–61. In addition, while the PREPA Unions identify one named Defendant (the Governor) in connection with the Sixth Cause of Action (alleging the Governor has taken actions to privatize PREPA, as allegedly required by the certified fiscal plan), they have not identified any specific

actions taken by the Governor in connection with the privatization of PREPA that are inconsistent with their CBAs or any specific breaches of their CBAs causing harm to their members. Therefore, they have not established how the actions of the Governor resulted in concrete, cognizable harm to themselves or their members. Nor could they demonstrate any such injury, because, as described in Section VII.B below, there is no final plan to privatize PREPA. Thus, even if the PREPA Unions had identified specific, cognizable injuries to its members, those injuries cannot be traced to the proposed privatization of PREPA. *Lujan*, 504 U.S. at 560–61; *Clapper*, 568 U.S. at 77; *Bingham v. Mass.*, 616 F.3d 1, 5 (1st Cir. 2010) (same).[7]

For all of these reasons, none of the Plaintiffs has established standing to bring their claims. Accordingly, the First, Second, Third, Fourth, and Sixth Causes of Action should be dismissed.

## II. THE FIRST, SECOND, AND THIRD CAUSES OF ACTION AGAINST THE BOARD ARE BARRED BY PROMESA § 105.

The First, Second, and Third Causes of Action seek, among other things, declaratory and monetary relief against the Oversight Board. With respect to the Board, each claim asks the Court to "declare so through the corresponding judgment, and to order the members of the Board, the Board itself and all of its employees and contractors to return to the Government of Puerto Rico

---

[7] Unlike *UTIER*, the instant Complaint does not allege the Oversight Board, by adopting specific legislation as part of the relevant Fiscal Plans, has taken any action that alters, impairs, or nullifies their rights under the CBAs. In *UTIER*, the plaintiffs alleged that *(i)* certain legislation enacted by the Commonwealth between 2014 and 2017 impaired union members' rights under the CBA, and *(ii)* by adopting that legislation as part of the certified fiscal plans for the Commonwealth and PREPA, the Oversight Board also impaired their rights under the CBA. *See UTIER v. PREPA, et al.*, No. 17-ap-228 (D.P.R. 2017), Dkt. No. 130, at 7–8 (citing relevant allegations of the complaint). This Court held UTIER pleaded facts sufficient to establish constitutional standing because the factual allegations tied the alleged CBA impairments to specific actions taken by the Oversight Board, namely the adoption of certain legislation by certified fiscal plan. *Id.* at 11. The Union Plaintiffs make no such allegations here.

any and all monies paid by the government of Puerto Rico pursuant to the terms of the PROMESA Act." Compl. ¶¶ V.A.18, pg. 64; V.B.22 pg. 71; V.C.14, pg. 75. Such claims must be dismissed pursuant to PROMESA § 105.

PROMESA § 105 insulates the Oversight Board and its members and employees from liability for any obligation or claim resulting from actions taken to carry out PROMESA. It provides that "[t]he Oversight Board, its members, and its employees shall not be liable for any obligation of or claim against the Oversight Board, or its members or employees or the territorial government resulting from action taken to carry out this Act." In enacting this provision, Congress recognized the Oversight Board and its members and employees should not be deterred from carrying out their statutory duties by threats of financial liability. The claims Plaintiffs attempt to make against the Oversight Board are based on actions the Oversight Board allegedly took to carry out PROMESA. Such claims, therefore, are barred by PROMESA § 105.

## III. CONGRESS'S ENACTMENT OF PROMESA UNDER THE TERRITORIES CLAUSE IS AN APPROPRIATE EXERCISE OF CONSTITUTIONAL AUTHORITY.

Plaintiffs' First, Second, and Third Causes of Action are reducible to a challenge to the authority of Congress to enact PROMESA, to the creation of the Oversight Board, and to the Oversight Board's authority to act pursuant to PROMESA. According to the Complaint, "Congress has no plenary powers over the residents of territories, including Puerto Rico and its people," and to the extent its authority is based on the *Insular Cases*, such cases cannot serve as the basis for Congress's ability to enact PROMESA because they were "based on racist judicial notions that have no ethical, moral or juridical basis." Compl. ¶¶ V.A.19, pg. 64; V.B.24, pg. 71; V.C.15, pg. 76. Plaintiffs allege Congress has deprived them of their rights under international

treaties and the United States Constitution, and violated the separation-of-powers principle by imposing PROMESA on Puerto Rico and concentrating executive, fiscal, and legislative powers in the Oversight Board, disregarding the will of the citizens of Puerto Rico. *Id.* ¶¶ V.A.15–17, pg. 62–63; V.B.13–15, 20 pg. 68–70; V.C.4–9, pg. 73–74. Based on the alleged violations of law, Plaintiffs argue the Oversight Board and any of its actions taken pursuant to PROMESA are "null and void," and all actions under PROMESA should be stayed. *Id.* ¶¶ V.A.16, pg. 63; V.B.21, pg. 71; V.C.13, pg. 75.[8]

Plaintiffs have failed to state a claim because, as this Court recently held, as a matter of both historical practice and binding precedent, Congress possesses and may exercise its general and plenary authority pursuant to the Territories Clause to *(i)* enact federal legislation governing the territories, including Puerto Rico, *(ii)* establish and delegate its authority to a territorial entity, and *(iii)* vest that territorial entity with distinct authority, structure, and jurisdiction. *See In re Fin. Oversight and Mgmt. Bd. for P.R.*, --- F. Supp. 3d ---, No. 17-BK-3283-LTS, 2018 WL 3425294, at *5–6 (D.P.R. July 13, 2018). Congress may do so unconstrained by constitutional restrictions that apply to the federal government. *Id.* at *6 ("Congress has plenary power under the Territories Clause to establish governmental institutions for territories that are not only distinct from federal government entities but include features that would not comport with the requirements of the Constitution if they pertained to the governance of the United States.").

---

[8] Although Plaintiffs' claims refer to the Oversight Board and may seek a determination that the Oversight Board and its actions should be nullified and stayed, Plaintiffs' challenge is to the constitutionality of PROMESA and thus within the purview of the United States. The Oversight Board, therefore, defers to the United States to respond to the Territories Clause challenge. *Pinto Lugo, et al. v. U.S., et al.*, Adv. Proc. No. 18-ap-00041-LTS, Dkt. No. 34, at 16–19.

Congress has plenary authority over the territories, including Puerto Rico, and may exercise that authority to create territorial entities that are "distinct in structure, jurisdiction, and powers from the federal government." *Id*. at \*5. Congress may create territorial entities "in a manner that would exceed its powers, or at least would be very unusual, in the context of national legislation enacted under other powers delegated to it." *Id*. at \*5 (citing *Palmore v. United States*, 411 U.S. 389, 398 (1973)). Over the course of its nearly 120-year exercise of Article IV authority over Puerto Rico, Congress has delegated some plenary power to the territory and permitted a significant level of self-governance. *Id*. Congress, however, may modify such delegations. *Id*. Congress did so when it enacted PROMESA and created the Oversight Board. *Id*.

Congress expressly based its enactment of PROMESA on its authority under the Territories Clause. *See* PROMESA § 101(b)(2) ("The Congress enacts this chapter pursuant to article IV, section 3 of the Constitution of the United States, which provides Congress the power to dispose of and make all needful rules and regulations for territories."). *See also In re Fin. Oversight and Mgmt. Bd. for P.R.*, --- F. Supp. 3d ---, No. 17-BK-3283-LTS, 2018 WL 3425294, at \*7 (D.P.R. July 13, 2018) ("Congress explicitly invoked the Territories Clause, and only the Territories Clause, as its source of authority in enacting PROMESA"). Consistent with its delegation authority, Congress vested the Oversight Board with broad authority. *See* PROMESA §§ 101(a), (c); 104(a)-(g), (f)-(h), (k); 201(a); 201(b)(2); 301-317; *see also In re Fin. Oversight and Mgmt. Bd. for P.R.*, --- F. Supp. 3d ---, No. 17-BK-3283-LTS, 2018 WL 3425294, at \*2 (D.P.R. July 13, 2018). This delegation was a proper exercise of Congressional authority. *Id*. at \*5 ("[T]he non-delegation doctrine, which prohibits Congress from delegating its legislative authority to another branch of the Government, does not preclude Congress from delegating its legislative authority to

16

a territorial government."); *see also id.* (citing *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 323 (1937) (rejecting argument that a revenue measure constituted an unlawful delegation and explaining that the "congressional power of delegation to a [territorial] government is and must be as comprehensive as the needs")).

Plaintiffs' claims under the First, Second, and Third Causes of Action, therefore, fail as a matter of law.[9]

## IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER INTERNATIONAL LAW.

Plaintiffs' First Cause of Action alleges the "creation" of the Oversight Board and "its imposition over Puerto Rico by Congress" is "unconstitutional" because it violates international laws as set out in the UN Charter, the UNDHR, and the ICCPR. Compl. ¶¶ V.A.1–19, pg. 57–64. Plaintiffs' reliance on the Treaties is unavailing; none creates a private right of action or binding legal obligations with respect to Plaintiffs.

Only treaties that are self-executing or treaties for which Congress has enacted implementing legislation create binding domestic legal obligations. *See Medellin v. Texas*, 552 U.S. 491, 506 (2008) ("[T]reaties . . . are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms.") (citation omitted); *Igartua-De La Rosa v. United States* (*Igartua III*), 417

---

[9] Plaintiffs also lack standing to bring this generalized claim. Even if the claim were sufficiently pleaded, Plaintiffs would not be entitled to nullification of the Oversight Board and its actions or a stay of the Title III cases. Their claims are based on dissatisfaction with Puerto Rico's status as a territory and that status would not change if the Oversight Board were rendered unconstitutional, its work unwound, or the Title III cases stayed. The alleged harm, therefore, would not be redressed by the relief Plaintiffs seek, a requisite for standing. *E.g., Clapper*, 568 U.S. at 409.

F.3d 145, 149 (1st Cir. 2005) ("Treaties are made between states . . . and citizens do not automatically have a right to sue upon them."); *United States v. Li*, 206 F.3d 56, 60–61 (1st Cir. 2000) ("[T]reaties do not generally create rights that are privately enforceable in the federal courts.").

In *Medellin*, the Supreme Court considered whether a decision by the International Court of Justice (the "ICJ") addressing a claim brought by Mexico against the United States based on alleged violations of the Vienna Convention was enforceable as domestic law. 552 U.S. at 497–99. In rejecting the petitioner's attempt to apply the ICJ decision domestically, the Supreme Court held that, while the decision created an international law obligation on the part of the United States, it was not automatically binding domestic law. The Supreme Court specifically considered the petitioner's argument that the UN Charter (along with certain other treaties not relevant here) supplied the "relevant obligation" to give the ICJ decision binding effect in the domestic court. Rejecting that position, the Court held none of the cited treaties (including the UN Charter) "creates binding federal law in the absence of implementing legislation," and "no such legislation exists." *Id.* at 506.

The First Circuit (relying on Supreme Court precedent) has also held that neither the UNDHR nor the ICCPR creates law enforceable in domestic courts. In *Igartua III*, United States citizen residents of Puerto Rico brought an action claiming their inability to vote in United States presidential elections violated international law. In affirming the lower court's dismissal of the case, the First Circuit stated the UNDHR "creates aspirational goals but not legal obligations." 417 F.3d at 150 (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)). In the same decision, the First Circuit also held the ICCPR does not "comprise[] domestic law of the United States." 417

18

F.3d at 149–150; *see also Igartua v. United States* (*Igartua IV*), 626 F.3d 592, 602–03 (1st Cir. 2010) (the ICCPR and the UNDHR "do not constitute domestic law because they are not self-executing and Congress has not enacted implementing legislation"); *Sosa*, 542 U.S. at 734–35 (2004) (same). Because none of the Treaties on which Plaintiffs' claims are premised is self-executing or the subject of implementing legislation – and all have been rejected as constituting domestic law – they do not create rights upon which Plaintiffs can bring a claim. Accordingly, Plaintiffs' First Cause of Action fails to state a claim on which relief can be granted.

## V.  PLAINTIFFS FAIL TO STATE CLAIMS UNDER THE DECLARATION OF INDEPENDENCE AND THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

In their Second and Third Causes of Action, Plaintiffs assert that Congress's creation of the Oversight Board and the actions of the Oversight Board violate the Declaration of Independence and the First, Fifth, and Fourteenth Amendments to the United States Constitution by impairing their rights to vote,[10] to self-determination, and to due process. Compl. ¶¶ V.B.1–24, pg. 64–72; V.C.1–15, pg. 72–76. Plaintiffs also assert vague due process and equal protection

---

[10]   Throughout their complaint, Plaintiffs repeatedly assert that Congress has deprived them of their right to vote in federal elections, *see* Compl. ¶¶ IV, pg. 26–27, 33; V.B.6, 15, pg. 66, 69, without ever articulating a claim based on that alleged deprivation. This omission is likely due to the fact that the First Circuit has put to bed any argument that a constitutional violation results from the inability of United States citizens residing in Puerto Rico to vote in federal elections. *Igartua v. United States* (*Igartua IV*), 626 F.3d 592, 594 (1st Cir. 2010) ("Since Puerto Rico is not a state, and cannot be treated as a state under the Constitution for these purposes, its citizens do not have a constitutional right to vote for members of the House of Representatives."); *Igartua v. United States* (*Igartua III*), 417 F.3d 145, 147 (1st Cir. 2005) ("Voting for President and Vice President of the United States is governed neither by rhetoric nor intuitive values but by a provision of the Constitution"; "Puerto Rico . . . is not a 'state' within the meaning of the Constitution") (citation omitted).

violations pursuant to the Fifth and Fourteenth Amendments. *Id.* ¶¶ V.B.14, 20–21, pg. 68–71; V.C.10–12, pg. 74–75. None of these claims can survive a motion to dismiss.

### A. The Declaration of Independence Is Not a Legally Operative Document.

Plaintiffs assert that the creation of the Oversight Board and its actions violate the inalienable rights of the residents of Puerto Rico as expressed in the Declaration of Independence. Compl. ¶¶ V.B.18–21, pg. 70–71. However, the courts, including the District of Puerto Rico, have held the Declaration of Independence cannot form the basis of a claim. *See Morales-Font v. Air Charter, Inc.*, Case No. 17-1033-SEC, 2017 WL 4119620 at *3 (D.P.R. Sept. 15, 2017) ("[A]lthough the Declaration of Independence describes certain 'unalienable rights,' including 'Life, Liberty, and the pursuit of Happiness,' it does not give rise to a private cause of action to enforce these rights"); *see also Troxel v. Granville*, 530 U.S. 57, 91 (2000) (Scalia, J., dissenting) ("The Declaration of Independence . . . is not a legal prescription conferring powers upon the court"); *Cotting v. Godard*, 183 U.S. 79, 107 (1901) (the Declaration of Independence "may not . . . be made the basis of judicial decision."); *Coffey v. United States*, 939 F. Supp. 185, 191 (E.D.N.Y. 1996) (the Declaration of Independence "does not grant rights that may be pursued through the judicial system.").

### B. No Violation of Due Process Has Been Alleged.

Plaintiffs summarily allege the Oversight Board's exercise of authority under PROMESA violates their due process rights under the Fifth and Fourteenth Amendments – without stating whether their claim is based upon a procedural or substantive denial of due process. Either way, that claim fails.

To the extent Plaintiffs assert a procedural due process claim in alleging that the Oversight Board's impact on "laws, public policies, fiscal plans, and/or budgets" deprives them of their "rights under collective bargaining agreements, labor legislation, and civil and constitutional rights under the Constitution of Puerto Rico," Compl. ¶ V.B.14, pg. 68–69, that claim fails because it does not allege a requisite protected interest. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (plaintiff bears the burden of establishing a protected interest); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'") (citations omitted); *Jordan Hosp., Inc. v. Shalala*, 276 F.3d 72, 78 (1st Cir. 2002). Plaintiffs fail to specifically allege a protected interest that has been denied and instead offer nebulous statements of deprivations of life, liberty, property, and the pursuit of happiness. Compl. ¶ V.B.14, pg. 68; *see also id.* ¶¶ V.C.6, 15, pg. 73, 76. Such conclusory and imprecise statements are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted).

But, even if Plaintiffs had alleged a deprivation of a specific protected right or interest, their claim would still fail. To state a procedural due process claim, Plaintiffs must allege both a specific protected interest and particular actions by defendants that violated the interest. *See Quinones v. Mendez*, No. 10-1378, 2012 WL 1657137, at *6 (D.P.R. May 10, 2012) (finding complaint failed to plead due process claim with specificity because it did not identify specific acts by defendants that interfered with due process); *Pullen v. Moore*, No. 05-cv-4368, 2005 WL 2850124, at *3–4 (N.D. Ill. Oct. 26, 2005) (dismissing due process claims where plaintiff failed to "specifically plead any of the procedural protections that he was afforded or not afforded").

Plaintiffs have not identified – with even a modicum of specificity – any actions taken by the Oversight Board that allegedly deprived them of any protected interest.

Nor have Plaintiffs pleaded a substantive due process claim. It is well-settled that only conduct that "shocks the conscience" rises to the level of a substantive due process violation. *See City of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (compiling cases); *Global Tower Assets, LLC v. Town of Rome*, 810 F.3d 77, 91 (2016) (the First Circuit requires that a state actor "act[] in the kind of conscience-shocking fashion . . . for [a] substantive due process challenge[] to make it past the gate"); *Licari v. Ferruzzi*, 22 F.3d 344, 347 (1st Cir. 1994) ("A viable substantive due process claim requires proof that the state action was 'in and of itself . . . egregiously unacceptable, outrageous, or conscience-shocking.'") (citations omitted); *Nestor Colon Medina & Sucesores v. Custodio*, 964 F.2d 32, 45 (1st. Cir. 1992) (stating that the threshold for establishing a substantive due process violation "is a high one"). The Complaint does not contain any factual allegations identifying specific decisions made by the Oversight Board that have harmed Plaintiffs, let alone allege the Oversight Board has taken any actions that are egregiously unacceptable or outrageous.

### C.    The Complaint Does Not Adequately Plead an Equal Protection Claim.

Plaintiffs' equal protection claim fails for similar reasons. The Complaint alleges the creation of the Oversight Board is "discriminatory . . . in violation of . . . [their] equal protection rights . . . ." Compl. ¶ V. B.18, pg. 70; *see also id.* ¶¶ V.B.21, pg. 70–71; V.C.10, pg. 74. Plaintiffs assert equal protection violations under the Fifth and Fourteenth Amendments. *Id.* ¶ V.B.7, pg. 66–67. Plaintiffs' equal protection claim fails.

A prerequisite for an equal protection violation is a classification of groups or individuals that impacts a fundamental right, that involves suspect characteristics, such as race or gender, or that is not rationally related to a legitimate governmental purpose. *See Heller v. Doe*, 509 U.S. 312, 319–321 (1993) ("[A] classification [involving neither a fundamental right nor a suspect class] cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate government purpose;" "[a] statute is presumed constitutional . . . and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it") (citations omitted). The Complaint does not even adequately allege that either PROMESA or the Oversight Board classifies groups or individuals, let alone establish that such classifications are suspect or impact fundamental rights. *E.g., United States v. Windsor*, 570 U.S. 744, 769–70 (2013); *Romer v. Evans*, 517 U.S. 620, 631 (1996); *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Moreover, the Complaint fails to adequately allege that PROMESA is not rationally related to the legitimate end of addressing Puerto Rico's economic emergency.[11]

---

[11]    In the First, Second, and Third Causes of Action, Plaintiffs ask the Court to stay all proceedings under PROMESA. Compl. ¶¶ V.A.16–17, pg. 63; V.B.21, pg. 71; V.C.13, pg. 75. Such relief can be addressed by the Court only if Plaintiffs are successful in pleading a justiciable claim under these stated causes of actions and such extraordinary relief is deemed appropriate in connection with at least one such claim. As shown above, Plaintiffs cannot succeed on any of those substantive claims and, as a result, this request for relief has no basis. While Plaintiffs couch their request, Compl. ¶¶ V.B.16–17, pg. 63; V.B.21, pg. 71; V.C.13, pg. 75, in terms of a "stay," the Complaint appears to seek a permanent end to any proceedings under PROMESA going forward rather than a stay for some temporary period. Regardless, Plaintiffs have not demonstrated any basis to obtain such relief.

There also is no basis for Plaintiffs' request for an order requiring the Oversight Board to "return to the Government of Puerto Rico any and all monies paid . . . pursuant to the terms" of PROMESA. *Id.* ¶¶ V.A.18, pg. 64; V.B.22, pg. 71; V.C.14, pg. 75. And, in any event, such relief is barred by PROMESA § 105. *See* Section II above.

## VI. THE COMPLAINT FAILS TO STATE A CLAIM BASED ON A CONFLICT OF INTEREST OR DUTY TO AUDIT PUERTO RICO'S DEBT.

As an alternative to declaring the Oversight Board to be unconstitutional, Plaintiffs' Fourth Cause of Action requests (*i*) José Ramón González and Carlos García be removed from the Oversight Board because they allegedly have conflicts of interest which prevent them from carrying out their duties and (*ii*) the fiscal plans be stayed until an audit of Puerto Rico's debt can occur. Specifically, the Complaint alleges the Oversight Board's statutory duty to represent the debtor under PROMESA § 315 and its authority under PROMESA § 104(o) to investigate selling and disclosure practices related to the issuance of bonds creates a fiduciary duty to conduct a forensic audit of Puerto Rico's debt. Compl. ¶¶ V.D.2–4, 6, 8, 27, pg. 76–78, 84. Although Plaintiffs acknowledge the Board has engaged Kobre & Kim (the "Independent Investigator") to conduct an investigation, *see id*. at ¶¶ V.D.21–22, pg. 81–82, they assert that the process is neither sufficiently transparent nor a substitute for a "Forensic Audit." *Id*. at ¶ V.D.22 n.18, pg. 82.[12] Plaintiffs then assert that Mr. González and Mr. García must be removed from the Oversight Board for alleged conflicts of interest based on their former employment at Santander and at the Government Development Bank ("GDB"), two entities involved in the issuance of Puerto Rico's debt. According to Plaintiffs, Mr. González's and Mr. García's continued presence on the Oversight Board violates due process and renders all of the Oversight Board's acts "null and void." *Id*. at ¶¶ V.D.25–26, 38, 43, pg. 83, 88, 90.

Plaintiffs have failed to state a claim because *(i)* PROMESA § 101(e)(5)(B) provides the President of the United States may remove Oversight Board members for cause but does not

---

[12] The Complaint uses the terms "audit" and "investigation" interchangeably. Unless otherwise indicated, Defendants' motion does so as well.

provide any court may remove them for any reason, *(ii)* PROMESA authorizes but does not mandate an investigation of disclosure and selling practices relating to Puerto Rico's bonds, and *(iii)* the Oversight Board's authorization of an independent investigation of Puerto Rico's debt renders the audit claim moot.

### A. Only the President of the United States Can Remove Oversight Board Members for Cause. In any Event, the Complaint Fails to Plead an Actual Conflict of Interest or Basis for Removal.

PROMESA § 101(e)(5)(B) grants only the President of the United States the power to remove Oversight Board members for cause. It does not provide any court with the authority to do so. The Complaint therefore fails to state a claim.

Even if the Court had the power to remove Oversight Board members based on conflicts of interest, Plaintiffs have failed to plead an actual conflict of interest or basis for removal. The Complaint merely alleges that Mr. González and Mr. García should be removed from the Oversight Board because they were formerly employed at Santander and at the Government Development Bank ("GDB") – two entities involved in the issuance of Puerto Rico's debt – and thus cannot be impartial. The assertion they "have been Presidents of the [GDB] . . . and in other instances have been top corporate executive officials of Santander Bank/Santander Securities," Compl. ¶ V.D.25, pg. 83, at most implies some sort of conflict by mere association with Santander and GDB. Plaintiffs point to no *actual conduct* on the part of either individual that would create a conflict of interest. Plaintiffs do not allege that either Mr. García or Mr. González have any financial interest in the Oversight Board's activities or that they have any other interest that would be substantially

affected by the outcome of the Oversight Board's actions. *ClearOne Commc'ns, Inc. v. Bowers*,

651 F.3d 1200 (10th Cir. 2011).[13]

Nor have Plaintiffs pled a due process claim based on the alleged conflict. The bare

allegations in the Complaint are insufficient to show any due process violation – either procedural

or substantive. As described in Section V.B above, Plaintiffs must show they were deprived of a

protected interest without sufficient notice or an adequate opportunity to be heard (for a procedural

due process violation) and that the Oversight Board's actions "shock the conscience" (for a

substantive due process violation). Plaintiffs have not met either burden.

### B. There Is No Requirement That the Oversight Board Conduct an Audit.

The Complaint's allegations concerning an "audit" are based on PROMESA §§ 315(b)(3)

and 104(c). Compl. ¶¶ V.D.3, 27, pg. 76, 84. These allegations fail to state a claim. First,

---

[13] Nor could any such conduct be alleged. The entire Oversight Board, including Mr. García and Mr. González, has operated in accordance with appropriate ethical standards. For example, the Oversight Board retained an Ethics Advisor. Within the first few months of its existence, the Oversight Board adopted a Code of Conduct, pursuant to which all of the Oversight Board's members and staff committed to act "in accordance with the highest ethical standards." *See Oversight Board's Code of Conduct*, December 5, 2017, available at https://drive.google.com/file/d/1Zi4nojiQ4t55SwuwXGKqj POWv8mhwVaE/view. The Code of Conduct specifically requires the Oversight Board's members and staff to "refrain from participating in any action that falls under the Board's mandate implicating a potential conflict of interest" unless they have received approval from the Ethics Advisor. *See id.* The Oversight Board has also voluntarily adopted a strict schedule for conflict-of-interest disclosures that exceeds their statutory obligations pursuant to PROMESA § 109(a).

In addition, consistent with the Oversight Board's Code of Conduct, the Oversight Board created a Special Investigation Committee to oversee the Independent Investigator's inquiry into *(i)* the factors contributing to the Commonwealth's fiscal crisis and *(ii)* Puerto Rico's debt and debt issuance, disclosure, and selling practices – which review has included the activities of, among others, Santander and GDB. Case No. 17-bk-3283, ECF No. 3117 at ¶ 2. The Special Investigation Committee – comprised of Professor and Retired Bankruptcy Judge Arthur J. González, Ana J. Matosantos, and Professor David A. Skeel, Jr. – does not include either Mr. García or Mr. José Ramón González.

PROMESA does not contain a § 315(b)(3). To the extent Plaintiffs intended to cite to PROMESA § 315(a), their claim fails because that section – which authorizes the Oversight Board to "take any action necessary on behalf of the debtor to prosecute" the debtor's Title III case, including filing a Title III petition, submitting or modifying plans of adjustment, or otherwise submitting filings to the court – does not require an audit of Puerto Rico's debt.

Similarly, although PROMESA provides the Oversight Broad with investigatory powers, the grant of such authority states that the "Oversight Board *may* investigate the disclosure and selling practices in connection with the purchase of bonds issued by [Puerto Rico] for or on behalf of any retail investors including any underrepresentation of risk for such investors and any relationships or conflicts of interest . . . ." PROMESA § 104(o) (emphasis added). The word "may" makes clear that, while the Oversight Board is *empowered* to initiate an investigation into Puerto Rico's debt, it is not *required* to do so. *United States v. Mass. Water Res. Auth.*, 256 F.3d 36, 51 (1st Cir. 2001) ("When Congress uses the permissive 'may' . . ., it is eminently reasonable to presume that the choice of verbiage is a deliberate one, and that, in the context of that statute, may means may.") (internal quotations omitted).

## C. The Allegations Concerning an Audit Fail to State a Claim because the Independent Investigator Has Undertaken an Investigation.

The Complaint fails to state a claim concerning an "audit" because *(i)* claims concerning the audit of Puerto Rico's debt are moot, and *(ii)* claims concerning the sufficiency of the investigation are premature.

The Oversight Board has already conducted an investigation that fulfills any "duty" it could be found to have to conduct an audit. On September 6, 2017, the Oversight Board retained the Independent Investigator to conduct an independent investigation into the factors contributing to

the Commonwealth's fiscal crisis, the Commonwealth's debt practices, and the Commonwealth's debt issuance, disclosure, and selling practices. *See* Press Release, Financial Oversight and Management Board for Puerto Rico (Sept. 13, 2017), available at https://oversightboard.pr.gov/documents; Letter of Engagement of Kobre & Kim LLP as Independent Investigation Team (Sept. 6, 2017), available at https://oversightboard.pr.gov/documents. Plaintiffs allege that this investigation is inadequate because it "has enormous limitations as far as its scope" and "lacks any transparency." Compl. ¶ V.D.21, pg. 81. These conclusory allegations are not well-pled. The scope of the investigation was broad and involved the review of thousands of documents and interviews with over 100 witnesses. Final Investigative Report at 2 (Aug. 20, 2018), available at https://oversightboard.pr.gov/documents. The Independent Investigator also retained a financial advisory firm, Duff & Phelps, to assist it in generating its report. *Id*. at 29 n.27. The Final Investigative Report, which the Independent Investigator made public on August 20, 2018, included, among other things, identification of potential causes of action. *Id*. at 475. Thus, the contention, as alleged, that the review is too limited has no factual basis.

Likewise, the contention the investigation is not transparent is not sufficiently pleaded. During its investigation, the Independent Investigator took several steps to ensure that interested parties and the public were informed about the progress of its investigation. For example, the Independent Investigator made public two interim reports which provided updates on the status of the investigation. *Id*. at 26. In addition, the Independent Investigator participated in public meetings and solicited comments from the public using a dedicated e-mail inbox. *Id*. at 573. The Independent Investigator reviewed all e-mails received through this dedicated inbox and

summarized and addressed several areas of public inquiry in its report. *Id*. at 573–74. As required by PROMESA § 104(p), the Independent Investigator made public its Final Investigative Report on August 20. It consists of 574 pages plus exhibits. Moreover, with limited exceptions, the documents reviewed by the Independent Investigator during the course of its investigation will be transferred to a neutral vendor to provide access to any interested party, subject to a court-supervised procedure, as set out in the Order Approving Motion of the Independent Investigator for an Order (*i*) Establishing Procedures for Resolving any Confidentiality Dispute in Connection with Publication of the Independent Investigator's Final Report; *(ii)* Approving the Disposition of Documents and Information; (*iii*) Relieving the Independent Investigator from Certain Discovery Obligations; (*iv*) Exculpating the Independent Investigator in Connection with the Investigation and Publication of the Final Report; and (*v*) Granting Related Relief, Case No. 17-bk-3283, ECF No. 3744 ¶¶ 5, 14 (the "Order").[14] Here again, then, the Plaintiffs' allegation that the review has not been transparent lacks a factual basis.

Given the investigation that has been conducted by the Independent Investigator, it is difficult to see what more the "audit" requested by Plaintiffs would accomplish – and Plaintiffs offer no suggestions other than a conclusory statement that the Independent Investigator's investigation is too limited and inadequate. Compl. ¶ V.D.21, pg. 81–82. Other than that barebones statement, the only other criticism Plaintiffs offer as to the Independent Investigator's

---

[14] The only exceptions will be AAFAF documents identified as "Highly Confidential" (*i.e.*, asserted to be privileged) by AAFAF or GDB (unless such documents are included as Final Investigative Report Documents with the consent of AAFAF or GDB), Order ¶ 9, and documents provided to the Independent Investigator by the SEC, FINRA, and OCIF, *id*. ¶ 11. These excepted documents will be returned to the entity that provided them to the Independent Investigator.

29

investigation is a footnote statement that the investigation "does not have multi-representation which includes the public sector." *Id.* n.18, pg. 82. Plaintiffs offer no explanation why such inclusion is required.[15]

### D. The Complaint's Allegations Concerning the Lack of an Audit Fail To State a Violation of Due Process Rights.

Plaintiffs' due process claim based on the Oversight Board's alleged failure to conduct an audit also fails. As with other due process causes of action (cited above), Plaintiffs do not state whether they allege a substantive or a procedural due process violation. Regardless, the Complaint fails to allege the elements of either claim because (*i*) Plaintiffs have not identified any liberty or property interest protected by procedural due process or explained how the Oversight Board deprived them of any such interest without notice or an opportunity to be heard, and (*ii*) Plaintiffs

---

[15]     The Complaint also alleges that the Oversight Board has a fiduciary duty to conduct an investigation and that it breached that duty. This claim fails because Plaintiffs have not pleaded facts sufficient to show the Oversight Board has fiduciary duties to Plaintiffs (or anyone else) that would require it to conduct an "audit." Plaintiffs' sole basis for alleging a fiduciary duty to undertake an investigation is Plaintiffs' "belie[f] that the statutory duty to represent the debtor and to bring about economic stability to the debtor includes the fiduciary duty to investigate . . . [and] ascertain the validity of the public debt." Compl. ¶ V.D.4, pg. 76. Plaintiffs offer no factual or legal support for their "belief" that the Oversight Board owes a fiduciary duty to any (undefined) beneficiary. Indeed, PROMESA never mentions the word "fiduciary." To the extent Plaintiffs ground their fiduciary duty contention on PROMESA § 315(b) (which establishes the Oversight Board's statutory duty to represent the debtor in litigation) or PROMESA § 101(a) (which sets forth the purpose of the Oversight Board), such a claim fails, because neither provision creates such a duty. PROMESA § 315(b) simply authorizes the Oversight Board to act as the debtor's representative in a Title III proceeding, and PROMESA § 101(a) explains that the Oversight Board's purpose is to "provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." Neither provision makes the Oversight Board a fiduciary. Even if the Oversight Board could be found to have a fiduciary duty to conduct an investigation, it has already done so. And Plaintiffs have not alleged the investigation conducted by the Independent Investigator is inadequate.

have not identified any conscience-shocking actions on the part of the Oversight Board. Accordingly, they cannot show that a due process violation has occurred here.

**E.    Implementation of the Fiscal Plans and Budgets Should Not Be Stayed.**

Plaintiffs' fundamental claim appears to be that the Oversight Board has a duty to investigate improper bond lending practices through an audit and that, by not asking for a stay of court proceedings until such an audit can be completed, the Oversight Board has breached a fiduciary duty. Compl. ¶¶ V.D.4–15, pg. 77–80. As such, Plaintiffs seek to stay implementation of the Oversight Board's certified fiscal plans until an audit of Puerto Rico's debt is completed. These allegations fail to state a claim on which relief can be granted.

As noted above, the Independent Investigator's investigation, now completed, moots any request to stay actions by the Oversight Board pending the "audit" requested by Plaintiffs. However, even if an "audit" were something different than and in addition to the investigation, Plaintiffs' request that all proceedings should be stayed until such an audit is completed is procedurally and substantively improper and inconsistent with PROMESA's statutory scheme.

PROMESA § 301(a) does not incorporate Bankruptcy Code § 305(a), which empowers courts to dismiss or suspend reorganization cases. Thus, there is a strong inference Congress did not intend to authorize suspensions. Even if suspension were authorized, Plaintiffs have not followed the required procedures.

Pursuant to Federal Rule of Bankruptcy Procedure 1017 (made applicable by PROMESA § 301(a)), a motion in accordance with Rule 2002 is required to request suspension of a case. Fed. R. Bankr. P. 1017. Plaintiffs have made no such motion here, nor have Plaintiffs provided any notice of a stay request to creditors (as required by Rule 2002). Accordingly, Plaintiffs' request

for a stay is procedurally improper, and should be denied on that basis alone. *In re Leeward Subdivision Partners, LLC*, BAP No. WW-10-1060, 2010 WL 6259983, at *7 (B.A.P. 9th Cir. June 11, 2010).

## VII. THE COMPLAINT'S SIXTH CAUSE OF ACTION REGARDING PREPA AND UPR IS WITHOUT MERIT.[16]

The Sixth Cause of Action asks this Court to (*i*) bar the government of Puerto Rico from privatizing PREPA based on Plaintiffs' assertion that Article VI, § 19 of the Puerto Rico Constitution requires the Commonwealth to "conserve" natural resources for the general benefit of the community and (*ii*) stop the illegal "weakening, breaking down, and selling" of UPR. While it is not clear what relief Plaintiffs are seeking regarding UPR (and UPR is not mentioned specifically in the Complaint's Prayer for Relief), it is assumed in the arguments below that Plaintiffs intend to seek a declaration that would prohibit Defendants from taking some sort of action as to UPR.[17] Plaintiffs' Sixth Cause of Action is without merit.

### A. Plaintiffs' Claim is Preempted.

PROMESA § 301(a) incorporates Bankruptcy Code § 1123(a)(5) which authorizes reorganization plans to include sales and transfers. PROMESA § 4 provides PROMESA

---

[16]     As discussed above, Plaintiffs' Fifth Cause of Action pertains only to the United States and the Oversight Board defers to the United States to respond to that Cause of Action.

[17]     Plaintiffs' allegations regarding UPR are too perfunctory to create a justiciable legal issue. The "claim" appears in only a single paragraph, does not include any specific request for relief, and does not assert any specific factual or legal bases for relief. Failing to provide factual and legal support for a claim results in waiver. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). While Plaintiffs have failed to provide any support for their claims with respect to UPR – and thus must be deemed to have waived the right to assert this claim – the Oversight Board nevertheless addresses the merits of this amorphous claim.

preempts inconsistent territory laws.  Accordingly, Plaintiffs' efforts to block privatization are preempted.

###    B.     The Claim as to PREPA Is Not Ripe.

The ripeness doctrine, which prevents the adjudication of claims relating to "contingent future events that may not occur as anticipated, or indeed may not occur at all," *Reddy v. Foster*, 845 F.3d 493, 500–01 (1st Cir. 2017) (internal quotations omitted), has two prongs:  "hardship" and "fitness."  The hardship prong concerns the harm to the parties seeking relief if the court were to withhold its decision.  *Reddy*, 845 F.3d at 501; *see also Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995) ("[H]ardship . . . typically turns upon whether the challenged action created a direct and immediate dilemma for the parties.") (internal citations omitted).  The fitness prong implicates the Constitution's Article III requirement and focuses on "whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts."  *Reddy,* 845 F.3d at 501 (internal quotations omitted); *Ernst & Young,* 45 F.3d at 535 (fitness "typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed.").  Plaintiffs' PREPA claim fails both prongs.

Plaintiffs have not alleged they are currently suffering any harm requiring the Court's intervention.  Nor could they; there are no final or completed plans – and the Complaint does not allege any – addressing the privatization of PREPA. The Complaint alleges the Oversight Board "intends" to "pursue the sale and/or privatization of . . . PREPA." Compl. ¶ V.E.6, pg. 99.  As Plaintiffs acknowledge, however, the sale of PREPA has only been "proposed"; it has not yet been fully negotiated, finalized, or implemented.  Compl. ¶ V.E.23, pg. 103.

Plaintiffs also fail to meet the fitness prong. At this stage, Plaintiffs cannot show a sufficiently live controversy to support jurisdiction. Although the revised fiscal plan contemplates that PREPA will undergo structural reform, the precise form this reform will take has not been decided. PREPA's fiscal plan acknowledges as much, observing that while the fiscal plan "lays out one approach" to overhauling PREPA's energy structure, "[t]he eventual details of the transaction to effect the transformation *will be determined* through a competitive auction process through which the market and public will be able to provide proposals and input." PREPA Fiscal Plan, at 4 (emphasis added). It is not clear yet whether PREPA will be privatized and, if so, whether that will be in whole or in part, and if the latter, which portions of PREPA will be privatized, whether privatization will take the form of a sale of assets or of a concession agreement, or what impact privatization will have upon PREPA's workforce. PREPA Fiscal Plan, at 54. Because many details of the privatization of PREPA are yet to be determined, there is no justiciable case or controversy at this time. *See Fundacion Arqueologica v. Dep't of Hous.*, 9 P.R. Offic. Trans. 509 (D.P.R. 1980) (permitting a complainant who has no concrete injury to require a court to rule on important constitutional issues in the abstract would create the potential for abuse of the judicial process; "we determined [in *Salas Soler v. Sec'y of Agric. of P.R.*, 2 P.R. Offic. Trans. 925 (D.P.R. 1974)] that the doors were not wide open for indiscriminate litigation by any person in alleged protection of public policy.") (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220–22 (1974)).

### C. To the Extent the Complaint Challenges Either PREPA's or UPR's Certified Fiscal Plan, the Court Lacks Jurisdiction Over Such Claim.

PROMESA § 106(e) provides that "[t]here shall be no jurisdiction in any United States district court to review challenges to the Oversight Board's certification determinations under this

Act." While the section does not bar claims that a fiscal plan is invalid under the United States Constitution, *see UTIER v. PREPA, et al.*, No. 17-ap-228 (D.P.R. 2017), Dkt. No. 130, at 12, it does bar claims that seek to challenge a fiscal plan on the basis that "certification predicates have not been met." *Id*.; *see also Ambac Assurance Corp. v. Commonwealth of Puerto Rico (In re Fin. Oversight and Mgmt. Bd. for P.R.)*, 297 F. Supp. 3d 269, 284 (D.P.R. 2017)*; In re Fin. Oversight and Mgmt. Bd. for P.R.*, -- F. Supp. 3d --, No. 18-ap-080-LTS, 2018 WL 3760979, at *6 (D.P.R. Aug. 7, 2018) (holding that PROMESA § 106(e) did not preclude claims seeking limited clarification on the enforceability of certain provisions of the certified fiscal plan because it would not result in decertification of the fiscal plan).

The challenged actions (alleged plans to privatize or sell PREPA and changes to UPR's tuition fees, operational budget, and campus structure) and relief sought – to "bar" the Oversight Board from implementing policies under the fiscal plans, *see* Compl. ¶¶ V.F.8, 11, pg. 99–100; V.F.30, 25, 29, pg. 104–105 – flow from the instrumentalities' respective fiscal plans. To the extent Plaintiffs challenge those portions of the fiscal plans requiring PREPA and UPR to undertake these actions, Plaintiffs' claims are barred by PROMESA § 106(e), and this Court has no jurisdiction to consider them. *See In re Fin. Oversight and Mgmt. Bd. for P.R.*, -- F. Supp. 3d --, No. 18-ap-081-LTS, 2018 WL 3753018, at *5 (D.P.R. Aug. 7, 2018) (holding the Court lacked subject-matter jurisdiction where requested relief sought to "challenge the Oversight Board's certification determinations and sought to undo the statutorily-prescribed effect of those determinations.").

**D.    Article VI, § 19 of the Puerto Rico Constitution Does Not Provide a Private Right of Action**

The Puerto Rico Constitution does not provide a private right of action to vindicate an alleged violation of Article VI, § 19.[18]    Article VI, § 19 charges the Commonwealth with "conserving" natural resources. It does not empower *individuals* to act to prosecute that right. Nor does it contain any provision articulating the actions that the Commonwealth must take to implement its public policy with respect to natural resources. Accordingly, it is up to the Legislature to pass legislation to implement public policy with respect to natural resources. *Mision Indus. de P.R. v. Junta de Planificacion de P.R.*, 146 D.P.R. 64, 173 (1998).[19]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed as against the Oversight Board under Fed. R. Civ. P. Rule 12(b)(1) for lack of subject-matter jurisdiction and under Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[18]    It also is unclear that Article VI, § 19 of the Puerto Rico Constitution would even apply to PREPA's privatization.    Article VI, § 19 states that "[i]t shall be the public policy of the Commonwealth to conserve, develop and use its natural resources in the most effective manner possible for the general welfare of the community . . . ."  The Constitution is silent as to the definition of "natural resources," and Plaintiffs have not alleged that "natural resources" includes either electricity or PREPA.

[19]    Moreover, even if there were a private right of action under Article VI, § 19 of the Puerto Rico Constitution, PROMESA § 4 would preempt this Article to the extent it is inconsistent with PROMESA. U.S. Const. art. VI, cl. 2 ("[T]he Laws of the United States . . . shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitutions or Laws of any State to the Contrary notwithstanding").  Pursuant to the Supremacy Clause, state laws and state constitutions are subordinate to federal law, and if a conflict arises, federal law must be applied.  *See, e.g.*, *Arizona v. United States*, 567 U.S. 387, 399 (2012); *Reynolds v. Sims*, 377 U.S. 533, 584 (1964). PROMESA § 4 expressly provides that "this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act."  Thus, pursuant to the Constitution, to well-established Supreme Court precedent, and to the terms of the statute itself, PROMESA prevails over conflicting Commonwealth law.

Dated: August 23, 2018
San Juan, Puerto Rico

*/s/ Hermann D. Bauer*_____
Hermann D. Bauer
USDC No. 215205
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com
         ubaldo.fernandez@oneillborges.com


*/s/ Martin J. Bienenstock*_____
Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Chantel L. Febus (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
         sratner@proskauer.com
         tmungovan@proskauer.com
         cfebus@proskauer.com

*Attorneys for The Financial Oversight and*
*Management Board for Puerto Rico*

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer