**<u>EXHIBIT 32</u>**

(Senate Substitute for S. B. 837, S. B. 838, S. B. 839,
S. B. 840, S. B. 841, S. B. 842, S. B. 843, S. B. 881,
S. B. 882, and for House Substitute for H.B. 1457
and H. B. 1618)

**(No. 57-2014)**

(Approved May 27, 2014)

# AN ACT

To    establish the Puerto Rico Energy Transformation and RELIEF Act; repeal
Section 2 and replace it with a new Section 2, amend Sections 3(b), 4, and 5,
add a new Section 5A, amend Section 6, add new Sections 6A, 6B, and 6C,
amend Section 22, add a new Section 28, and renumber Sections 28 and 29
as Sections 29 and 30 of Act No. 83 of May 2, 1941, as amended, known as
the "Electric Power Authority Act," in order to provide for the governance
of the Governing Board of the Electric Power Authority, establish strategic
planning and information requirements that PREPA must provide to
guarantee an efficient electrical system, promote transparency in its
processes, and make active citizen participation feasible, among other
matters; create the Commonwealth Energy Public Policy Office as the entity
charged with developing and promulgating the public policy on energy of
the Commonwealth of Puerto Rico and provide for its duties,
responsibilities, operational organization, and budget, among other matters;
establish energy efficiency parameters and the criteria to be observed by
every agency of the Executive, Legislative, and Judicial Branches, as well as
by the municipalities, in order to promote energy savings, among other
matters; amend Section 7 and add new Sections 9, 10, 11, and 12 and
renumber Section 9 as Section 15 in Act No. 114-2007, as amended, in order
to establish the public policy of the Commonwealth of Puerto Rico that shall
govern the interconnection of distributed generators participating in the Net
Metering Program established under Act No. 114-2007, as amended, among
other matters; create the Puerto Rico Energy Administration and the Energy
Commission, establish their duties and responsibilities, as well as their
operational structure and regulatory jurisdiction, provide for their operating
budget, among other matters; establish the general obligations of electric
power companies in Puerto Rico, among other matters; create the
Independent Consumer Protection Office to assist and represent electric

power service customers in the Commonwealth of Puerto Rico, and establish its duties, responsibilities, operational organization, and budget, among other matters; provide for the transition between created and eliminated agencies; amend Section 2 of Act No. 33 of June 27, 1985, as amended, and repeal Act No. 128 of June 29, 1977, as amended; repeal Section 4 of Article 1 of Act No. 73-2008, as amended; repeal Act No. 69 of June 8, 1979; repeal Section 2.2 of Act No. 82-2010, as amended; repeal Act No. 233-2011, as amended; and for other related purposes.

### STATEMENT OF MOTIVES

The principal mandate of PREPA, since it was founded in 1941, was to achieve the total electrification of Puerto Rico. This process took forty (40) years and was substantially completed in 1981. While our electricity infrastructure continued developing to supply the growing demand for electric power, a complex interconnected system was created based on fossil fuels and on the presumption of the availability of said fuels at a low cost to achieve a continuous and reliable electric power service. Even though PREPA has, indeed, achieved its mission of electrifying the Island and providing a reliable service, there is a broad consensus on the need to evolve from our dependence on fossil fuels and use to the maximum extent possible the Island's energy resources, such as the sun and the wind, conservation, and efficiency.

The high cost of energy limits our ability to stimulate the economy, strengthen small- and medium-sized business, as well as to attract private investors from abroad, develop commercial, industrial and manufacturing activities, and improve the quality of life of all Puerto Ricans. This prevents our Island from becoming a competitive and attractive place in all aspects. We have been held as hostages of a poorly efficient energy system that excessively depends on oil as fuel, and that does provide the tools to promote our Island as a place of opportunities in the global market.   The current cost per kilowatt-hour of approximately twenty-seven cents ($0.27) is extremely high when compared to

other jurisdictions that compete with Puerto Rico to attract investors and severely affects the pockets of local consumers.

Therefore, it is imperative and compelling to enforce a thorough reform of the energy sector that promotes the operation and administration of an efficient system at just and reasonable costs, considering that we are an isolated jurisdiction that needs to have a safe and stable electric power grid. We need to adopt a regulatory and legal framework through the creation of a robust independent entity that will ensure the transformation of the electric power system of our Island for the benefit of present and future generations.

The history of energy in Puerto Rico shows that the development of infrastructure for the generation, transmission, and distribution of electric power has remained stagnant and excessively dependent on oil in spite of the worldwide evolution to adopt more efficient electric power sources and systems. While other jurisdictions have gradually departed from this source for being an expensive and toxic resource, our Island has maintained its subjection to oil for the generation of electricity. Data published by the U.S. Energy Information Administration (EIA) shows that, in 2011, Puerto Rico generated sixty-eight percent (68%) of its energy from oil. Today, we are still dependent on oil by more than fifty percent (50%).  In comparison, the average dependence on oil for energy generation in the United States is scarcely one percent (1%), according to data provided by EIA in 2012.

The high dependence on oil also contributes to a greater environmental pollution by the toxic emissions of this fuel, which, in turn, affects the health and safety of Puerto Ricans. The Federal Government has established measures to mitigate these health hazards, through standards known as the Mercury and Toxic Air Standards (M.A.T.S.), which compel us, as a country, to transform our electric power generation system in order to comply with these standards by 2015.

After more than seventy (70) years of its creation, and more than three decades of having achieved the total electrification of the Island, PREPA has become a monopoly that regulates itself; sets its own rates without actual oversight; incurs operational, managerial, and administrative deficiencies whose actual cost, at the end of the day, is borne directly by customers; and whose governance lacks transparency and citizen participation. All of the above contributes to Puerto Rico being among the top U.S. jurisdictions with the highest energy cost.

This measure amends the Electric Power Authority Act to clearly express the people's mandate to this public corporation. It does not include amendments that respond to vested interests, but rather it incorporates substantive amendments that set forth the legal framework to enable PREPA to become the public entity responsible for supplying electric power at the lowest possible cost, observing the highest environmental standards, and in support of the socio-economic development.

This Legislative Assembly reasserts its commitment to the People of Puerto Rico through the creation and implementation of an Energy Reform consisting of multiple initiatives that are all related to common goals such as permanently reducing the cost of energy and provide the People of Puerto Rico with a reliable, affordable, efficient, and transparent electric power service.

TRANSFORMATION OF PREPA

PREPA needs a new legal mandate from the People of Puerto Rico. Some of the essential components of this Energy Reform are the amendments to the Organic Act of PREPA, Act No. 83, of May 2, 1941, as amended, by virtue of which PREPA has been conceived and managed as an independent Government entity that is not accountable to its customers. PREPA's vision is inaccurate and inconsistent with the purposes that prompted its creation, which should be the basis

for its operations. Such vision has, at times, led to the proposal and adoption of measures that, in practical terms, adversely affect most of its customers.

The amendments incorporated into the Energy Reform include specific requirements for PREPA to submit information to the Energy Commission created herein, such as, an Energy RELIEF Plan, which shall be filed for the Commission's approval within a term that shall not exceed sixty (60) days after the approval of the regulations adopted by virtue of this Reform. The Energy RELIEF Plan shall state in detail how PREPA will comply with the new legislative mandates. Furthermore, PREPA shall prepare an integrated resource plan, which requires a detailed planning process with broad citizen participation, which considers all the reasonable resources to satisfy the demand for electricity services during a specific period of time, including those pertaining to energy supply and demand.

The amendments shall also include changes in the governance of PREPA's Governing Board to assure a greater oversight by this governing body, as well as a clear mandate of the fiduciary duty of its directors. An important component of these amendments is the creation of an independent Audit Committee within PREPA's Board. This Committee shall be responsible for overseeing the proper implementation of internal controls within PREPA, supervising the independent audits of PREPA, and ensuring the implementation of a confidential process to address complaints and comments of PREPA's employees on potential deficiencies in the internal controls of the public corporation. Other amendments include: mechanisms to promote greater citizen participation and customer's access to information, as well as modifications to the contributions made to municipal governments, which shall have the direct effect of reducing PREPA's operating expenses.

PREPA requires a thorough reform in its governance, mission, and the manner in which it operates and maintains the electricity infrastructure of Puerto Rico. Short-, medium-, and long-term actions are required to achieve this significant change; this includes maintaining the operational and financial viability of the public corporation throughout its transformation process. It is necessary to joint our efforts to transform PREPA, so that it administers the electricity infrastructure as a company at the service of the People of Puerto Rico.   These comprehensive and essential amendments shall enable a thorough reform of our electricity infrastructure and the manner in which PREPA is administered and operated.

PROMOTION OF THE PUBLIC POLICY ON ENERGY

The creation of the Commonwealth Energy Public Policy Office (CEPPO) as the entity in charge of developing and promulgating the public policy on energy of the Commonwealth of Puerto Rico is yet another key element of the strategy to address the energy crisis. Said autonomous office shall be the entity responsible for advising the Government in all matters related to the public policy on energy. Among its multiple responsibilities, it shall gather and share all sorts of information, as well as promote studies and timely and reliable evaluations on the generation, distribution, use, and consumption of electric power in Puerto Rico, whether through the use of oil and/or its byproducts such as fuel, natural gas, renewable energy sources, waste disposal, as well as any other mechanism or technology that could be used as energy resource. In this manner, our horizons with respect to energy resources are broadened not only with respect to electric power generation, but also on other aspects that could contribute to eliminate our dependence on fossil fuel.

## SAVINGS IN ENERGY CONSUMPTION

The responsible use of energy resources is an issue that concerns us all, including the government sector. The Energy Reform includes, as an essential component, the adoption of an aggressive public policy for the conservation and efficient use of energy in public facilities and buildings. To achieve this, specific provisions with measurable criteria and parameters to attain a reduction in energy consumption in the offices of the Executive, Legislative, and Judicial Branches and in the municipal governments, as well as the penalties for noncompliance therewith are established.

PREPA's Organic Act established a mechanism which consisted of making a contribution or payment in lieu of tax (PILT) to municipalities in exchange for PREPA's municipal tax exemption. The formula for the computation of such contribution has been revised on several occasions; the most significant change was incorporated under Act No. 255-2004, as amended by Act No. 233-2011. After examining the PILT mechanism in light of PREPA's current fiscal situation and without prejudice to the serious fiscal limitations faced by more than half of the municipalities, this Legislative Assembly hereby establishes a mechanism for municipalities to achieve savings in energy consumption by establishing a maximum annual cap per municipality for a three (3)-year period. It also creates a special incentive system for all municipalities that achieve savings in excess of the consumption cap designated; establishes a standard measurement to compute the maximum consumption cap; provides for the review of consumption caps every three (3) years; and establishes that the Commonwealth Energy Public Policy Office and the Energy Regulatory Commission shall be responsible for overseeing faithful compliance with the consumption control measures and the adoption of the necessary regulations to properly address PILT-related matters.

## NET METERING AND RENEWABLE ENERGY

Act No. 114-2007, created a Net Metering Program to allow the interconnection of residential, commercial, and industrial customers with renewable energy generation systems to the electric power grid of the Electric Power Authority (PREPA) and the supply of electric power generated in excess of that used by customers to the grid. At that time, our Legislative Assembly stated that Act No. 114-2007 resulted, among other things, from the need to incentivize the generation of electric power through renewable energy sources due to our excessive dependence on fossil fuels to generate electricity and their well-known polluting effect on the environment, as well as the high costs reflected on electricity bills.  However, in spite of the subsequent amendments to the Act, the regulations adopted by PREPA with regard to systems with a nameplate capacity in excess of 1 MW, far from supporting the development of renewable energy alternatives, have had the practical effect of obstructing the development thereof.

To address this situation, the Energy Reform directs PREPA to adopt expedited procedures for the interconnection of renewable energy generation systems with nameplate capacity of one (1) MW or less. Furthermore, it directs PREPA to adopt regulations for generation systems with nameplate capacity between one (1) and five (5) MW, using as a model the technical, procedural, and legal parameters contained in the Small Generator Interconnection Procedures (SGIP) as well as in the Small Generators Interconnection Agreement (SGIA), established by Order No. 2006 of the Federal Energy Regulatory Commission (FERC). Through the adoption of regulations using the SGIP and SGIA's as models, procedures shall be standardized, current obstacles for interconnection shall be eliminated, a reliable and safe interconnection process shall be provided for, and the economic activity of the Island shall be increased by reducing energy costs. These amendments shall also allow Puerto Rico to continue with its mission

of achieving the goals established in Act 82-2010, better known as the "Public Policy on Energy Diversification by Means of Sustainable and Alternative Renewable Energy in Puerto Rico Act," by enabling a greater interconnection of renewable sources to the electric power grid.

## REGULATIONS

The Energy Commission created herein shall be the key component for the faithful and transparent execution of the Energy Reform. It shall be an independent government entity in charge of regulating, overseeing, and ensuring compliance with the public policy on energy of the Commonwealth of Puerto Rico. As part of the energy reform, the Energy Commission shall adopt rules to ensure high efficiency in the generation of electricity based on fossil fuels. This shall lead to a more efficient use of fuel and, consequently, to lower energy production costs. This, in turn, shall have an impact on the electricity bill. To achieve this, the Energy Commission shall, within a period that shall not exceed three (3) years counted after July 1, 2014, ensure that at least sixty percent (60%) of the electric power generated in Puerto Rico based on fossil fuels (gas, coal, oil, and others) is "high efficiency," as such term is defined by the Commission, which shall include as main factor the thermal efficiency of the power plant or facility per type of fuel used, fuel cost, and technology, among others.

A key mission of the Energy Commission shall be to evaluate the plans that PREPA is required submit to the new regulatory entity, in accordance with the provisions of this Act. PREPA shall submit to the Energy Commission an Energy RELIEF Plan regarding its obligation to efficiently generate electric power, various operational issues, and the integration of renewable energy, among other mandates. Moreover, PREPA shall submit for evaluation an integrated resource plan consisting of a twenty (20)-year planning period. By evaluating and following up on these plans, the Energy Commission shall be able to guarantee the orderly and

integrated development of our electrical system, thus ensuring the reliability, efficiency, and transparency thereof, and the provision of electric power services at reasonable prices.

The Energy Commission shall approve the electricity rates proposed by PREPA and other electric power companies in the Island, and shall oversee all types of operations, processes, and mandates pertaining to the efficiency of the energy sector of the Island. It shall be the entity in charge of overseeing PREPA and other power producers, promoting the diversification of our energy sources as well as the reduction of energy costs. The Energy Commission shall carry out its regulatory duties steadfastly and effectively, but preventing its actions from impairing PREPA to meet its contractual obligations to bondholders.

The Energy Commission shall use as model the structure of energy commissions established in European and Latin American countries and of the public utilities regulatory commissions established in various states of the United States. This Legislative Assembly understands that there is a compelling need to take immediate action to improve our electrical system through the creation of a specialized regulatory entity with the resources and expertise needed to supervise this effort. The Energy Commission shall be subject to the Legislative Assembly's strict scrutiny in order to ensure that it fully complies with its duties and responsibilities. If the Commission properly carries out its mandate, the Legislative Assembly may consider attaching or merging it with other public utilities regulatory commissions already existing in the Island. This formula of establishing independent regulatory commissions and subsequently merging their jurisdictions with those of other industries has been the standpoint of other countries such as Spain, Ireland, and Italy.

## ACTIVE CITIZEN PARTICIPATION

The creation of the Independent Consumer Protection Office (ICPO) is an important aspect to guarantee citizen participation and oversee the electric power system, since it is the entity responsible for representing and advocating for the interests of electric power service customers before both PREPA and the regulatory entity. The ICPO's duty shall be to defend and advocate for the interests of customers in all matters before the Energy Commission, including those related to disputed PREPA bills. Furthermore, ICPO shall have the duty to coordinate citizen participation in PREPA's internal rate review process and before the Energy Commission, as the case may be, so that such citizen participation in the process is guaranteed. With the creation of this new entity, it is guaranteed that customers are not left vulnerable to the power and size of PREPA and other electric power generation companies.

## ENERGY RELIEF NOW

To achieve an immediate transformation of our electrical system, this Energy Transformation and RELIEF Act requires the prompt and coordinated implementation of the multiple interrelated efforts that are shown in the various provisions of this Act.

Our Supreme Court has held that "[a] statute may comprise all issues related to the main matter and all issues that could be justly considered as accessories or necessary or appropriate to carry out the purposes for which they are comprised within the general matter." [our translation]. See, Herrero y otros v. E.L.A, 179 D.P.R. 277 (2010); Bomberos Unidos v. Cuerpo de Bomberos, 180 D.P.R. 723 (2011). This legislative measure addresses a wide range of initiatives that pursue the same purpose of addressing in a prompt and integrated manner the energy crisis that the Island is undergoing and that threatens the wellbeing of our People.

Therefore, this Legislative Assembly deems it essential to consider these initiatives simultaneously through an integrated reform bill.

This Legislative Assembly recognizes that the Energy Reform established herein is the most effective manner to promote initiatives and measures that shall result in the much needed and permanent reduction of the cost of electricity, to restructure the electric power system in the Island and to serve as a driving force to promote the economic and competitive development that the people claim for our Island. This forefront legislative initiative lays the groundwork for facing and overcoming the energy-related challenges of our society and building a bright future for generations to come.

*BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:*

**SUBTITLE A.- Energy RELIEF Reform.**

**CHAPTER I.- General Provisions.**

Section 1.1.- Title and Table of Contents.

(a)    Title.- This Act shall be known as the "Puerto Rico Energy Transformation and RELIEF Act."

(b)    Table of Contents.- The table of contents of this Act shall be the following:

**SUBTITLE A.- Energy RELIEF Reform.**
**CHAPTER I.- General Provisions.**

Section 1.1.- Title and Table of Contents.

Section 1.2.- Declaration of Public Policy on Electric Power.

Section 1.3.- Definitions.

Section 1.4.- Principles of Transparency and Accountability.

**CHAPTER II.- PREPA's Transformation.**

Section 2.1.- Section 2 of Act No. 83 of May 2, 1941, as amended, is hereby repealed and substituted for a new Section 2.

Section 2.2.- Subsection (b) of Section 3 of Act No. 83 of May 2, 1941, as amended, is hereby amended.

Section 2.3.- Section 4 of Act No. 83 of May 2, 1941, as amended, is hereby amended.

Section 2.4.- Section 5 of Act No. 83 of May 2, 1941, as amended, is hereby amended.

Section 2.5.- Section 5A is hereby added to Act No. 83 of May 2, 1941, as amended.

Section 2.6.- Section 6 of Act No. 83 of May 22, 1941, as amended, is hereby amended.

Section 2.7.- A new Section 6A is hereby added to Act No. 83 of May 2, 1941, as amended.

Section 2.8.- A new Section 6B is hereby added to Act No. 83 of May 2, 1941, as amended.

Section 2.9.- A new Section 6C is hereby added to Act No. 83 of May 2, 1941, as amended.

Section 2.10.- Section 22 of Act No. 83 of May 2, 1941, as amended, is hereby amended.

Section 2.11.- A new Section 28 is hereby added to Act No. 83 of May 2, 1941, as amended.

Section 2.12.- Sections 28 and 29 of Act No. 83 of May 2, 1941, as amended, are hereby renumbered as Sections 29 and 30, respectively.

**CHAPTER III.- Commonwealth Energy Public Policy Office (CEPPO).**

Section 3.1.- Creation of the Commonwealth Energy Public Policy Office.

Section 3.2.- Executive Director of CEPPO.

Section 3.3.- Personnel of CEPPO.

Section 3.4.- Duties and Powers of CEPPO.

Section 3.5.- Regulations of CEPPO.

Section 3.6.- Emergencies.

Section 3.7.- Budget of CEPPO.

## CHAPTER IV.- Government Energy Efficiency.

Section 4.1.- Energy Savings in the Instrumentalities of the Executive Branch and the Offices of the Judicial Branch.

Section 4.2.- Energy Savings in the Legislative Assembly.

Section 4.3.- Energy Savings in the Municipal Governments.

## CHAPTER V.- Net Metering.

Section 5.1.- Section 2 of Act No. 114-2007, as amended, is hereby amended.

Section 5.2.- Section 7 of Act No. 114-2007, as amended, is hereby amended.

Section 5.3.- A new Section 9 is hereby added to Act No. 114-2007, as amended.

Section 5.4.- A new Section 10 is hereby added to Act No. 114-2007, as amended.

Section 5.5.- A new Section 11 is hereby added to Act No. 114-2007, as amended.

Section 5.6.- A new Section 12 is hereby added to Act No. 114-2007, as amended.

Section 5.7.- Section 9 of Act No. 114-2007, as amended, is hereby renumbered as Section 13.

## CHAPTER VI.- Creation, Structure, Operation, Budget, and General Powers of PREA and the Energy Commission.

### SUBCHAPTER A.- Puerto Rico Energy Administration.

Section 6.1.- Creation of the Puerto Rico Energy Administration.

Section 6.2.- Powers and Duties of PREA.

### SUBCHAPTER B.- Energy Commission.

Section 6.3.- Powers and Duties of the Energy Commission.

Section 6.4.- Jurisdiction of the Energy Commission.

Section 6.5.- Organization of the Energy Commission.

Section 6.6.- Commissioners.

Section 6.7.- Powers and Duties of Commissioners.

Section 6.8.- Executive Director of the Energy Commission.

Section 6.9.- Chair of the Energy Commission.

Section 6.10.- Personnel of the Energy Commission.

Section 6.11.- Delegation of Powers.

Section 6.12.- Office of the Energy Commission.

Section 6.13.- Certification.

Section 6.14.- Amendment, Suspension, and Revocation of Decisions, Orders, and/or Certifications.

Section 6.15.- Rules of Confidentiality.

Section 6.16.- Budget and Regulatory Fees.

Section 6.17.- Audited Statements.

Section 6.18.- Electronic Filing System.

Section 6.19.- Scheduling and Holding of Administrative Hearings.

Section 6.20.- General Provisions on Administrative Procedures.

## SUBCHAPTER C.-Electric Power Service Companies.

Section 6.21.- General Obligations of Electric Power Service Companies.

Section 6.22.- Information to be Filed with the Energy Commission.

Section 6.23.- Integrated Resource Plan.

Section 6.24.- Power to Investigate.

Section 6.25.- Review of Electricity Rates.

Section 6.26.- Procedural Rules on Customer Complaint Resolution.

Section 6.27.- Procedure to Request Review of Electricity Bills and Rules for Service Suspension.

Section 6.28.- Customer Service.

Section 6.29.- Efficiency in Electric Power Generation.

Section 6.30.- Wheeling.

Section 6.31.- Bid Process and Requests for Proposals.

Section 6.32.- Extension.

Section 6.33.- Agreements between PREPA and Independent Power Producers and other Electric Power Service Companies.

Section 6.34.- Mediation and Arbitration of Energy Affairs.

Section 6.35.- Construction and Extension of Electric Power Facilities.

Section 6.36.- Transfer, Acquisition, and Merger of Certified Electric Power Generation and/or Distribution Companies.

Section 6.37.- Penalties for Noncompliance.

Section 6.38.- Annual Reports.

Section 6.39.- Interpretation of this Act.

Section 6.40.- Periodic Review.

**SUBCHAPTER D.- Independent Consumer Protection Office.**

Section 6.41.- Creation of the Independent Consumer Protection Office.

Section 6.42.- Executive Director of the ICPO.

Section 6.43.- Organization of the Independent Consumer Protection Office

Section 6.44.- Powers and Duties of the ICPO.

Section 6.45.- Budget of the Office.

**CHAPTER VII.- General Transitory Provisions.**

Section 7.01.- Transition between Created and Eliminated Agencies.

Section 7.02.- Section 2 of Act No. 33 of June 27, 1985, as amended, is hereby amended.

Section 7.03.- Repeal and Effect.

Section 7.04.- Inconsistent Provisions.

Section 7.05.- Separability Clause.

Section 7.06.- Effectiveness.

End of Table of Contents.

Section 1.2.- Declaration of the Public Policy on Electric Power.

The transformation and restructuration of our electric power system are essential to achieve the competitiveness and economic development of the Commonwealth of Puerto Rico. For such reason, it is hereby declared as the public policy of the Commonwealth of Puerto Rico that:

(a)     The cost of the electric power generated, transmitted, and distributed in Puerto Rico shall be affordable, just, and nondiscriminatory for all consumers;

(b)     The availability of energy supply shall be guaranteed to the People.

(c)     The implementation of the public policy on energy shall be an ongoing planning, consultation, execution, evaluation, and improvement process in all energy-related matters.

(d)     The implementation of strategies geared toward achieving efficiency in the generation, transmission, and distribution of electric power shall be sought in order to guarantee the availability and supply thereof at an affordable, just, and reasonable cost;

(e)     The safety and reliability of the electricity infrastructure shall be guaranteed by integrating clean and efficient energy and using modern technological tools that promote economic and efficient operations;

(f)     The electrical infrastructure shall be maintained in optimum conditions as to ensure the reliability and safety of the electric power service;

(g)     The Island shall become a jurisdiction with diversified energy sources and high efficiency electric power generation. To achieve this, it shall be necessary to reduce our dependence on energy sources derived from fossil fuels, such as oil, and to develop short-, medium-, and long-term plans that allow us to establish a well-balanced and optimum energy portfolio for the electrical system of the Commonwealth of Puerto Rico;

(h)     The maximum percentage of renewable energy that may be integrated and incorporated into Puerto Rico's electricity infrastructure in a safe and reliable manner and at a reasonable cost shall be identified and kept updated. Moreover, suitable technologies and locations shall also be identified to make such integration feasible in accordance with the best interest of the Commonwealth of Puerto Rico;

(i)     The responsibility of the Commonwealth of Puerto Rico, its agencies, municipalities, and public corporations, as well as of natural or juridical persons, is to comply with every environmental law and regulations applicable to the Commonwealth of Puerto Rico in order to preserve the environment and quality of life of all Puerto Ricans;

(j)     The Commonwealth of Puerto Rico shall become an efficient and responsible energy consumer and shall promote energy conservation and efficiency in all its branches and instrumentalities;

(k)     The sensible, responsible, and efficient use of energy resources in Puerto Rico shall be promoted among residential, commercial, and industrial customers;

(l)     Every consumer shall have the right to receive a reliable, stable, and excellent electric power service;

(m)     Prices shall be based on the actual cost of the service provided, efficiency standards, or any other parameters recognized by government and non-governmental organizations specialized in electric power service;

(n)     A reasonable price that conforms to the market, geographical realities, and the reality of the electric power infrastructure of Puerto Rico, among other factors, shall be ensured for the purchase of energy between independent power producers and PREPA;

(o)     Transparency and citizen participation in every process related to electric power service in Puerto Rico shall be promoted;

(p)     Electricity bill or service disputes shall be resolved equitably and diligently;

(q)     PREPA shall promote the necessary changes in order to become an entity that satisfies the electric power needs of the 21st century-Puerto Rico;

(r)     An independent electric power regulatory entity with broad powers and duties shall be created to ensure compliance with the public policy on energy, the provisions and mandates of this Act, and ensure that energy costs are just and reasonable by overseeing and reviewing the rates of PREPA and any other electric power service company;

(s)    Every electric power contributions, subsidies, or direct or indirect payments provided by PREPA shall be properly used in accordance with the objectives for which they were granted.

Section 1.3.- Definitions.

The following terms, wherever they are used or referred to in this Act, shall have the meaning stated below, except where the context clearly indicates otherwise:

(a)    "PREPA" or "Authority" - Shall mean the Puerto Rico Electric Power Authority, a corporate entity created by virtue of Act No. 83 of May 2, 1941, as amended, which, according to its statute, it is currently an electric power generation, transmission, and distribution company.

(b)    "Agency" or "Public Instrumentality" - Shall mean any body, entity, or corporation of the Government of the Commonwealth of Puerto Rico.

(c)    "Bonds" - Shall mean the bonds, term bonds, convertible bonds, obligations, notes, interim bonds, receipts, certificates, or other evidence of indebtedness or obligations that PREPA is authorized to issue, in accordance with the provisions of this Act.

(d)    "Bondholder" - Shall mean any bond or outstanding bond, registered in his/her name or unregistered, or the owner, according to the register, of any bond or outstanding bond that at the time are registered in the name of a person other than the bearer.

(e)    "Interconnection Charge"- Shall mean the fair and reasonable amount of money that a person shall pay to PREPA for the right to connect his/her facility to Puerto Rico's electric power grid.

(f)     "Renewable Energy Portfolio" - Shall mean the mandatory percent of sustainable or alternative renewable energy required in Puerto Rico, as provided in Act No. 82-2010, as amended, known as the "Public Policy on Energy Diversification by Means of Sustainable and Alternative Renewable Energy in Puerto Rico Act."

(g)     "Certified" - Shall mean every electric power service company that has been evaluated and authorized by the Energy Commission.

(h)     "Customer" or "Consumer" - Shall mean any natural or juridical person that consumes or uses electric power or energy services.

(i)     "Commission" or "Energy Commission" - Shall mean the Puerto Rico Energy Commission (PREC), a specialized independent entity created by virtue of this Act, in charge of regulating, overseeing, and enforcing the public policy on energy of the Commonwealth of Puerto Rico.

(j)     "Electric Power Company" or "Electric Power Service Company" - Shall mean any natural or juridical person or entity engaged in the generation, billing, or resale of electric power. In the case of PREPA, it shall also include transmission and distribution.

(k)     "Electric Power Generation Company" - Shall mean any natural or juridical person engaged in the production or generation of electric power in the Commonwealth of Puerto Rico. This term shall include cogenerators already established in Puerto Rico that supply energy to PREPA through a Power Purchase Agreement, and renewable energy producers.

(l)     "Conservation" - Shall mean any reduction in electric power consumption resulting from changes in the customer's energy consumption patterns.

(m)    "Energy Savings Performance Contracts" - Shall mean a contract between a governmental unit and a Qualified Energy Service Provider, as defined in Act No. 19-2012, as amended, known as the "Energy Savings Performance Contract Act," for the evaluation, recommendation, and implementation of one or more energy conservation and savings measures, subject to the terms of Act No. 19-2012, as amended.

(n)    "Power Purchase Agreement" or "PPA" - Shall mean any agreement or contract approved by the Commission whereby an electric power generation company is bound to sell electric power to another natural or juridical person, and such other person is, in turn, bound to acquire said electric power at a just and reasonable rate.

(o)    "Peak Demand" - Shall mean the maximum electric power load received by the electrical system during a specific time of the day.

(p)    "U.S. Department of Energy" - Shall mean the Federal agency created by the "Department of Energy Organization Act of 1977," Public Law 95-91 approved on August 4, 1977.

(q)    "Electric Power Distribution" - Shall mean the delivery of electric power from one energy substation to any customer or consumer through networks, lines, transformers, and any other infrastructure needed to transport the same throughout the Island.

(r)    "Energy Efficiency" - Shall mean changes in energy use attributable to substituting appliances and equipment, or the most efficient operation of existing equipment and materials.

(s)    "Thermal Efficiency" or "Heat Rate" - Shall mean the amount of energy needed or used by an electric power plant or facility to generate one (1) kilowatt-hour (kWh) of electricity, which may vary depending of the fuel used.

(t)     "Electricity Bill" - Shall mean the invoice sent every month  to customers or consumers stating in detail all components, charges or rates that are part of the total amount that every customer or consumer must pay for using electricity. Such bill may be sent by regular mail or electronic mail, or accessed by the customer on the Internet.

(u)     "FERC" - Shall mean the Federal Energy Regulatory Commission. It was created by the "Department of Energy Organization Act of 1977," Public Law 95-91 approved on August 4, 1977, charged with regulating, overseeing, and investigating energy-related issues at the Federal level.

(v)     "Renewable Energy Sources" - Shall have the same meaning as the term "green energy," defined in Act No. 82-2010, as amended, or any successor law.

(w)     "Electric Power Generation" - Shall mean the production of electric power using oil and/or its byproducts, natural gas, renewable energy sources, or any other electric power production method.

(x)     "Distributed Generator" or "Independent Producer" - Shall mean any natural or juridical person that owns an electric power generation facility in Puerto Rico for use primarily by such person and that may provide any electric power generated in excess to PREPA.

(y)     "Interconnection" or "Electric Interconnection" - Shall mean the connection of power plants and electric power generation companies into the same electric power transmission and distribution network.

(z)     "Environmental Quality Board" - Shall mean the government entity created by virtue of Act No. 416-2004, as amended, or any successor law.

(aa)    "Commonwealth Energy Public Policy Office" or "CEPPO" - Shall mean the entity created by virtue of this Act, in charge of developing and promulgating the public policy on energy of the Commonwealth of Puerto Rico.

(bb)   "Independent Consumer Protection Office" or "ICPO" - Shall mean the entity created by virtue of this Act, to assist and represent electric power service customers of the Commonwealth of Puerto Rico.

(cc)   "Citizen Participation" - Shall mean the various mechanisms that allow customers of PREPA and electric power generation companies certified in Puerto Rico to have a forum to express their concerns, make suggestions, and be included in the decision-making processes. These mechanisms shall include, but not be limited to, the request and receipt of comments, photographs, and other documents from the public, administrative meetings of PREPA where customer focus groups participate, regional meetings open to PREPA's customers in such region, public hearings, and the establishment of vehicles that enable participation by electronic means.

(dd)   "Person" - Shall mean any natural or juridical person created, organized, or existing under the laws of the Commonwealth of Puerto Rico, the United States of America, any state of the union, or any foreign state or country.

(ee)   "Integrated Resource Plan" or "IRP" - Shall mean a plan that considers all reasonable resources to satisfy the demand for electric power services during a specific period of time, including those related to the offering of electric power, whether existing, traditional, and/or new resources, and those related to energy demand, such as energy conservation and efficiency or demand response and localized energy generation by the customer. Every integrated resource plan shall be subject to the rules established by the Commission and approved by the same. Every plan shall be devised with broad participation from citizens and other interested groups.

(ff)   "Energy Relief Plan" - Shall mean the short-term plan that PREPA shall draft and submit in accordance with the provisions of Section 6C of Act No. 83 of May 2, 1941, as amended, and Section 2.9 of this Act.

(gg)   "Power Plant" - Shall mean any electric power generation plant of an electric power company, including any plant operated, leased, licensed, used, and/or controlled by, for, or in relation to the generation of electric power in the Commonwealth of Puerto Rico.

(hh)   "Energy Producer" - Shall mean any natural or juridical person that owns an electric power production facility in Puerto Rico that is an eligible business in accordance with to the provisions of Act No. 73-2008.

(ii)   "Electric Power Grid" - Shall mean the electric power transmission and distribution infrastructure of the Commonwealth of Puerto Rico which is operated, supported, and administered by PREPA.

(jj)   "Federal Environmental Regulations" - Shall mean the rules and regulations promulgated by the Environmental Protection Agency.

(ll)[sic] "Electric Power Service" or "Energy Service" - Shall mean any service provided by an electric power company certified in Puerto Rico to a customer.

(mm) "Electrical System" - Shall mean the electric power generation, transmission, and distribution system.

(nn)   "Wheeling Rate" - Shall mean a just and reasonable amount of money that PREPA may charge to a power producer for using its transmission and distribution facilities for wheeling and for the right to interconnect the electrical power generation facility of such power producer to the electric power grid of Puerto Rico, in accordance with the provisions of Act No. 73-2008.

(oo)   "Electricity Rate" - Shall mean any payment, charge, duty, fee, usage charge, rent or schedule collected by any electric power company for any service or product offered to the public.

(pp)   "Energy Transmission" - Shall mean moving electric power from one power plant or facility to a power substation through networks, lines, transformers, and any other infrastructure necessary to transport the same at voltage levels higher than 13.2 kV throughout the Island.

(qq)   "Wheeling" - Shall mean the transmission of electricity from one system to another through Puerto Rico's electric power grid, according to the wheeling provisions of Act No. 73-2008, as amended, known as the "Economic Incentives Act for the Development of Puerto Rico."

(rr)   "U.S. Energy Information Administration" - Shall mean the government agency under the U.S. Department of Energy, in charge of collecting, analyzing, and disseminating information related to the production of energy from oil, natural gas, coal, nuclear and renewable sources, among others, to promote sound policymaking on the management of these resources, markets, and its impact on the development of the economy.

Section 1.4.- Principles of Transparency and Accountability.

(a)   In accordance with the public policy established in Section 1.2(o) of this Act, every information, data, statistics, reports, plans, and documents received and/or disclosed by any of the entities created under this Act, PREPA, and every electric power company shall be subject to the following principles:

(1)   The information shall be complete, except for privileged information which shall be suppressed in accordance with the Rules of Evidence adopted by the Judicial Branch of Puerto Rico;

(2)   The disclosure of the information shall be timely;

(3)   The data shall be in a raw and detailed form, not modified. In addition to the original text of any document where such information or data appears, documents where such information is organized and shown so that it may

be easily handled by persons without expertise in the disciplines addressed therein may understand them shall be published and made available to customers;

(4)     The information shall not be subject to confidentiality standards broader than those required;

(5)     The data must be machine processable;

(6)     The public may access such information electronically without the need to register or create an account, and free of charge;

(7)     Data produced by employees, officials, or contractors working for the Commonwealth of Puerto Rico shall not be subject to any copyright, patents, trademarks, or trade secret. Reasonable restrictions based on doctrines of privacy, security, and evidentiary privileges may apply; and

(8)     Such data must be available in nonproprietary format; that is to say, no one shall have exclusive control over it.

(b)     Any person or entity to which these principles apply shall designate an official to assist and respond to any question that users may have on the information published.

## CHAPTER II.- PREPA's Transformation.

Section 2.1.- Section 2 of Act No. 83 of May 2, 1941, as amended, is hereby repealed and substituted for a new Section 2 to read as follows:

"Section 2.- Definitions.

The following terms, wherever used or referred to in this Act, shall have the meaning stated below, except where the context clearly indicates otherwise:

(a)     Federal Agency - Shall mean the United States of America, the President of the United States of America, any department thereof, or any corporation, agency, or instrumentality heretofore or hereafter created, designated, or established by the United States of America.

(b)    Authority or PREPA - Shall mean the Puerto Rico Electric Power Authority created by this Act.

(c)    Bonds - Shall mean the bonds, term bonds, convertible bonds, obligations, notes, interim bonds, receipts, certificates, or other evidence of indebtedness or obligations that PREPA is authorized to issue, in accordance with the provisions of this Act.

(d)    Commission - Shall mean the Energy Commission created by this Act.

(e)    Conservation - Shall mean any reduction in electric power consumption resulting by changes in customer consumption patterns.

(f)    Energy Efficiency - Shall mean changes in electric usage attributable to substituting appliances and equipment or the most efficient operation of materials or equipment.

(g)    Undertaking  - Shall mean any one or a combination of two or more of the following for continuing the development of energy production, to wit: works, facilities, structures, irrigation, electricity, heating, lighting, power, or  equipment with all parts and appurtenances thereof, and lands, rights thereon and privileges in connection therewith, and any and all other property or services which PREPA shall deem to be necessary, proper, incidental or convenient in connection with its activities including, but not limited to, irrigation and hydroelectric supply and distribution systems, plants for generating electricity by water power or by any other means, including steam, and energy renewable sources, and stations, reservoirs, dams, canals, tunnels, conduits, transmission and distribution lines, and other facilities and appurtenances necessary, useful, or customarily used and employed in the production, diversion, collection, storage, conservation, utilization, transportation, distribution, sale, exchange, delivery, or other disposition of electric power, electric equipment, supplies, services or other

activities in which PREPA shall engage or wishes to engage pursuant to its purposes.

(h)     Renewable Energy - Shall have the same meaning as the term 'green energy,' defined in Act No. 82-2010, as amended, or any successor law.

(i)     Board - Shall mean the Governing Board of PREPA.

(j)     Citizen Participation - Shall mean the various mechanisms that allow customers of PREPA and electric power generation and/or distribution companies certified in Puerto Rico to have a forum to express their concerns, make suggestions, and be included in the decision-making process. These mechanisms shall include, but not be limited to, the request and receipt of comments, photographs, and other documents from the public, administrative meetings of PREPA where customer focus groups participate, regional meetings open to PREPA's customers in such region, public hearings, and the establishment of vehicles that enable participation by electronic means.

(k)     Integrated Resource Plan or "IRP" - Shall mean a plan that considers all reasonable resources to satisfy the demand of electric power services during a specific period of time, including those related to the offering of electric power, whether existing, traditional and/or new resources, and those related to energy demand, such as energy conservation and efficiency or demand response and localized energy generation by the customer. Every integrated resource plan shall be subject to the rules established by the Commission and shall be approved by the same. Every plan shall be devised with broad participation from citizens and any other interested groups.

(l)     Independent Producer - Shall mean any natural or juridical person that owns an electric power generation facility in Puerto Rico for use primarily by such person and that may provide the electric power generated in excess to PREPA. This shall also include distributed generators.

(m)    Demand Response - Shall mean programs to manage the electric power grid load in order to reduce or shift electricity usage during peak periods and/or grid reliability issues. Demand Response Programs may include direct load control (such as air conditioners and water heaters) rates to encourage a reduction in consumption during certain hours in which the reliability of the grids could be jeopardized, and any other designed program that may be implemented through smart meters and other technologies.

(n)    Hydroelectric System of the Puerto Rico Irrigation Service, South Coast - Shall mean the hydroelectric works, as well as transmission and distribution lines and all facilities forming the electrical system built or acquired pursuant to the provisions of the Public Irrigation Law, approved September 18, 1908, and laws amendatory thereof or supplementary thereto.

(o)    System of Utilization of the Water Resources - Shall mean all the works and property forming the development of water resources and electrical system built or acquired, or in process of being built or acquired, or intended to be built or acquired by the Government of the Commonwealth of Puerto Rico, together with the rights, water rights, and water-power rights, used, useful, or appropriate in connection with said development and system so far accomplished, or with the continuance and expansion of said development and system by means of revenue-producing undertakings, under the provisions of Act No. 60, approved July 28, 1925; Joint Resolution No. 36, approved April 29, 1927; Act No. 36, approved April 25, 1930; Act No. 93, approved May 6, 1938; Act No. 7, approved April 6, 1931; Joint Resolution No. 5, approved April 8, 1931; Act No. 8, approved July 12, 1932; Joint Resolution No. 7, approved March 29, 1935; Joint Resolution No. 27, approved April 17, 1935; Act No. 41, approved August 6, 1935; Act No. 1, approved September 22, 1936; Act No. 94, approved May 6, 1938; and Act No. 21,

approved June 17, 1939, all of which are Acts and Joint Resolutions of the Legislative Assembly of Puerto Rico.

(p)     Bondholder or any similar term - Shall mean any outstanding bond or bonds registered to bearer or unregistered, or the registered owner of any outstanding bond or bonds which, at the time are registered in the name of a person other than to bearer.

(q)     Utilization of the Water Resources - Shall mean the body established pursuant to law by the Commissioner of the Interior of Puerto Rico for the purpose of handling the activities provided for by Act No. 60, approved July 28, 1925; Joint Resolution No. 36, approved April 29, 1927; Act No. 36, approved April 25, 1930; Act No. 93, approved May 6, 1938, under which the Commissioner of the Interior of Puerto Rico, in accordance with the provisions of Act No. 58, approved April 30, 1928, included all matters relative to the operation, including surveys and technical direction of new constructions, extensions, and improvements, of the 'Hydroelectric System of the Puerto Rico Irrigation Service, South Coast.'

Words importing the singular number shall include the plural number and vice versa, and words importing persons shall include firms, partnerships of all kinds, and corporations."

Section 2.2.- Subsection (b) of Section 3 of Act No. 83 of May 2, 1941, as amended, is hereby amended to read as follows:

"Section 3.- Creation and Organization of a Regulated Authority.

(a)     …

(b)     The Authority hereby created is and shall be a government instrumentality subject, as provided herein, to the control of its Governing Board, but it is a corporation having legal existence and personality separate and apart from that of the Government of the Commonwealth of Puerto Rico. The Authority and its Governing Board shall be subject to the supervision and oversight of the

Commission, and shall submit all the information required and requested by the Commission in the form and manner that the latter prescribes therefor. The debts, obligations, contracts, bonds, notes, debentures, receipts, expenditures, accounts, funds, undertakings, and assets of the Authority, its officers, agents or employees shall be deemed to be those of said government-controlled corporation and not to be those of the Government of the Commonwealth of Puerto Rico or any office, bureau, department, commission, instrumentality, municipality, branch, agent, officer or employee thereof. However, since it is a government instrumentality, the Legislative Assembly may act as the representative of its bondholders, the People of Puerto Rico, and protect the interests thereof by requiring PREPA to periodically submit, as required, to the Legislative Assembly and publish readily accessible in its website, the following information:

(i)     Any document related to the revenues, sales, expenses, disbursements, assets, liabilities, accounts receivable, and any of the financial information thereof;

(ii)    The price per barrel, or its equivalent, per type of fuel, the average rate per kilowatt-hour for each class of customer, the cost of generation per kilowatt-hour, all operating expenses, distributed energy generation per type of technology, and any other information about the operations of the Authority;

(iii)   A breakdown of the daily electricity demand projected and determined by the Energy Control Center of PREPA;

(iv)    Data related to the energy generation capacity and reserve margin;

(v)     Status of the internal procedures of PREPA to implement the changes required by means of legislation to reform Puerto Rico's electrical system; and

(vi)   Any other information deemed necessary by the Legislative Assembly."

Section 2.3.- Section 4 of Act No. 83 of May 2, 1941, as amended, is hereby amended to read as follows:

"Section 4.- Governing Board.

The powers of the Authority shall be exercised and its general policy and strategic management shall be determined by a Governing Board, hereinafter the 'Board.'

(a)   Appointment and Composition of the Board.- The Governor of the Commonwealth of Puerto Rico shall appoint, with the advice and consent of the Senate, four (4) out of the nine (9) members, who shall compose the Board, two (2) of which shall be engineers authorized to practice their profession in Puerto Rico, one (1) of whom shall be an electrical engineer holding at least a master's degree in power or electrical engineering; one (1) shall be a professional with knowledgeable experience in corporate finances; one (1) shall be selected by the Governor from a list of at least ten (10) candidates submitted by professional associations and nonprofit organizations designated by the Governor that are renowned in the fields of economy, planning, public administration, or economic development, or whose members are persons knowledgeable in these fields. Such entities shall have thirty (30) calendar days after the Governor's request to submit their candidates. The Governor, at his/her discretion, shall evaluate the recommendations made by these associations or organizations and choose one (1) person from the list. If the Governor rejects the recommended persons, such associations or organizations shall submit another list within the next thirty (30) calendar days. Of the other five (5) members of the Governing Board, two (2) shall be *ex officio* members and three (3) shall be selected in an election to be supervised by the Department of Consumer Affairs (DACO, Spanish acronym) to be held in

accordance with the procedure established in this Section. PREPA shall provide the facilities and economic resources needed for such purposes. Of the three (3) elected members, two (2) members shall represent the interests of residential customers, and one (1) member shall represent the interests of commercial or industrial customers. The Secretary of Transportation and Public Works and the Secretary of the Department of Economic Development and Commerce or the public officials from such agencies designated by said Secretaries shall be *ex officio* members of the Board. The payment of any compensation to the members of the Board is hereby prohibited. However, the representatives of customer interests shall be entitled to: a per diem for each day of regular or special session they attend, such per diem shall never exceed three hundred dollars ($300); or a per diem for each day they carry out any task entrusted by the Board, which shall never exceed two hundred dollars ($200). There shall only be one compensation per day, notwithstanding the number of meetings, actions, or appearances they attend. No member of the Board entitled to a per diem shall receive more than thirty thousand dollars ($30,000) annually on such account. To receive per diems, the member of the Board shall submit a document attesting to the meeting or task for which the per diem is requested, and the purpose of such meeting or task. These documents shall be published on PREPA's website.

The term of appointment of the members elected as customer representatives shall be six (6) years or until their successors take office. The term of appointment of the other four (4) members who are not *ex officio* members shall be four (4) years or until their successors take office.

Any vacancy in the office of the four (4) members appointed by the Governor shall be filled by appointment by the Governor, in accordance with the specifications applicable to the vacant position, for the unexpired term of the original appointment. However, any vacancy in the office of the three (3) members

elected as customer representatives shall be filled in accordance with the election process regulated by DACO, within one hundred twenty (120) days after the date on which the vacancy occurred and a new six (6)-year term shall begin to run.

No persons shall be appointed to fill a vacancy in the Board during the electoral prohibition period, unless it is an essential requirement for the Board to have a quorum. In these cases, such appointment shall expire on January 1 of the following year.

No person may become a member of the Board (including the members representing customer interests) if he/she: (i) is an employee, retiree, or has any direct or indirect substantial economic interest in any private company with which PREPA has any contracts or with whom it engages in transactions of any kind; (ii) within two (2) years before holding office, has had a business relationship with or any interest in any private company with which PREPA has any contracts or with whom it engages in transactions of any kind; (iii) has been a member of a local or central directing body of a political party registered in the Commonwealth of Puerto Rico, during the year immediately preceding his/her appointment; (iv) is an employee, member, advisor, or contractor of PREPA's labor unions; or (v) has failed to provide the certification of having filed income tax returns during the five (5) preceding taxable years issued by the Department of the Treasury, the certification of having no debts outstanding with PREPA, the Criminal Record issued by the Puerto Rico Police Department, as well as negative certifications of the Child Support Administration (ASUME, Spanish acronym) and the Municipal Revenues Collections Center (CRIM, Spanish acronym).

In the case of public employees, the time served in the Board's meetings shall be deemed as time worked in the agency, public corporation or instrumentality of which he/she is an employee.

(b)      Organization of the Board; Quorum; Designation of the Executive Director.- Within thirty (30) days after its appointment, the Board shall meet, organize, and select its Chair and Vice-Chair. At that same meeting, it shall appoint and fix the compensation of an Executive Director, and shall also appoint a Secretary, neither of whom shall be a member of the Board. The works of the Board may be carried out in one or more working committees, whose composition and duties shall be determined by the Chair of the Board. The Board may delegate to the Executive Director or other officials, agents, or employees of PREPA such powers and duties as it may deem appropriate. The Executive Director shall be the executive officer of PREPA and shall be responsible for the implementation of its policy and for the general supervision of the operational phases of PREPA.

The Board shall be empowered to contract, through the Executive Director, any independent advisors needed from time to time to carry out its duties under this Act in the best manner possible. PREPA shall have a General Auditor who shall be an employee of PREPA, but shall report his/her findings directly to the Board, have independent judgment, provide the Board with the necessary information, and periodically meet with the Audit Committee created by virtue of this Act. Five (5) members of the Board shall constitute a quorum for the transaction of its business and any other purpose, and every decision shall be made by not less than five (5) Board members.

As of July 1, 2014, regular and special meetings of the Board shall be simultaneously broadcasted on the Internet and subsequently posted on PREPA's website, except for those meetings or portion thereof when the following subjects are discussed: (i) confidential information in accordance with the Rules of Evidence; (ii) information related to collective bargaining, labor-related disputes, or issues related to personnel such as appointments, evaluation, disciplinary actions, and dismissal; (iii) ideas with regard to the negotiation of potential PREPA

contracts or to a determination to rescind or terminate contracts in effect; (iv) information of strategies regarding lawsuits of PREPA; (v) information of internal investigations of PREPA while these are being conducted; (vi) aspects regarding the intellectual property of third parties; (vii) trade secrets of third parties; (viii) issues that PREPA should keep confidential in accordance with any confidentiality agreement; or (ix) matters of public security involving threats against PREPA, its property or employees. To the extent possible, such meetings shall be broadcasted live at the commercial offices of PREPA, and the recording thereof shall be available on PREPA's website on the business day following the meeting. Any recording shall be kept on PREPA's website for at least six (6) months after the date on which it was initially posted. Once such term elapses, recordings shall be filed in a place where the citizenry may access it for further review.

PREPA shall notify on its website and its commercial offices, the schedule of the regular meetings of the Governing Board along with the agenda of both the last and the next Board meetings. Furthermore, the minutes of the work carried out during regular and special meetings of the Board shall be posted on PREPA's website, once these are approved by the Board in a subsequent meeting. Prior to posting such minutes, the Board shall also approve the version of each minute to be published, deleting:  (i) confidential information in accordance with the Rules of Evidence; (ii) information related to collective bargaining, labor-related disputes, or issues related to personnel such as appointments, evaluation, disciplinary actions, and dismissal; (iii) ideas with regard to the negotiation of potential PREPA contracts or a determination to rescind or terminate contracts in effect; (iv) information of strategies regarding lawsuits of PREPA; (v) information of internal investigations of PREPA while these are being conducted; (vi) aspects regarding the intellectual property of third parties; (vii) trade secrets of third parties; (viii) issues that PREPA should keep confidential in accordance with any

confidentiality agreement; or (ix) matters of public security involving threats against PREPA, its property or employees. The Secretary shall propose, for the Board's approval, the text of the minutes and the text to be deleted from the version to be published. It shall be understood as 'minute' a written account of the matters transacted, addressed or agreed on by the Board.

In the case of a conflict between the provisions of this Section and the provisions of Act No. 159-2013, the provisions of this Act shall prevail.

PREPA shall post on its website all contracts, including the exhibits and attachments thereof, executed by PREPA, stating in detail the parties, cause, and subject of said contracts. Contracts shall be published within ten (10) calendar days after being executed. PREPA shall publish all contracts even if these are exempt from being filed with the Office of the Comptroller of the Commonwealth of Puerto Rico. However, PREPA may redact confidential information, such as the social security number of the contractor.

At least once a year, the Board shall hold a public meeting to answer questions and concerns of customers and the citizenry in general. People attending to such meeting may ask questions to the members of the Board about PREPA-related issues. Such meeting shall be notified within at least five business days (5) in advance in a newspaper of general circulation and PREPA's website. The members of the Board who are customer representatives may call additional public meetings with the people they represent in accordance with their duties as Board members. Such meetings shall be coordinated with the Chair of the Board.

The Executive Director shall be charged with the general supervision of the officials, employees, and agents of PREPA. The Executive Director may attend all meetings of the Board but shall not be entitled to vote.

(c)     Procedure to Elect the Three (3) Representatives of Customer Interests.

(1)     DACO shall approve regulations to implement the election procedure provided in this Section. Said regulatory procedure shall comply with the provisions of the Uniform Administrative Procedures Act, Act No. 170 of August 12, 1988, as amended.

(2)     On or before one hundred twenty (120) days prior to the expiration of the term of each representative of customer interests in the Governing Board of PREPA, the Secretary of DACO shall issue a notice of elections, in which the requirements to be nominated as a candidate under the categories of representative of residential customers interests and representative of commercial or industrial customers interests shall be specified. The notice of election shall be published by means of media advertisement, on PREPA's and DACO's websites, and mailed to customers along with PREPA's bill.

(3)     The Secretary of DACO shall design and distribute the form of the Request for Nominations, in which every person aspiring to become a candidate shall state under oath, his/her name, personal circumstances, street and mailing  address, telephone number, place of work, profession, relevant work experience, education, and PREPA account number. The request for nomination as representative of residential customers interests shall include the signature of at least fifty (50) customers, with their name, address, and PREPA account number who endorse the nomination of the aspirant. The request for nomination as representative of commercial or industrial customers interests shall include the name, address, and PREPA account number of at least twenty-five (25) commercial or industrial customers. Furthermore, aspirants shall submit a letter including the letterhead and signature of one (1) official of each commercial or industrial customer certifying the endorsement of such aspirant. Such request

forms shall be available to be filled out on digital format by aspirants on PREPA's and DACO's websites.

The Secretary of DACO shall include in the regulations a mechanism to validate endorsements pursuant to the purposes of this Act. The regulations shall provide that the results of the endorsement validation process shall be certified by a notary. Likewise, such regulations shall include the requirements to be met by candidates in accordance with this Act and other applicable laws. Every candidate must be a bona fide PREPA customer.

(4)   On or before ninety (90) days prior to the expiration of the term of each representative of customer interests in the Governing Board of PREPA, the Secretary of DACO shall certify as candidates the seven (7) nominees, under each one of the two customer representative categories, who have submitted the highest number of endorsements and have met all other requirements established in this subsection. Provided, that each one of the selected candidates may designate a person to represent him/her in the process and canvassing.

(5)   On or before sixty (60) days prior to the expiration of the term of each representative of customer interests, the Secretary of DACO, in consultation with the Secretary of PREPA's Governing Board, shall continue with the design and printing of ballots, which shall state the deadline to receive ballots in order to begin the canvassing. The design of the ballot shall include a space for the signature of the customer casting the vote and a space for writing his/her account number and the mailing address where PREPA's electricity bill is received. The ballot for representative of commercial or industrial customers interests shall include a space where the customer shall include his/her account number, and the name, title, and signature of an officer authorized to cast the vote in representation of said customer. The ballot shall advise that the vote shall not be counted if the customer fails to sign or write his/her account number on the same.

(6)     Ballots shall be distributed by mail along with the electricity bill to each customer. In the case of customers who receive their bills electronically, they shall receive a ballot at the mailing address registered under the account. The invoice or the envelope where the ballot is included shall also contain a prepaid and self-addressed envelope to the address established by DACO for the receipt of envelopes. However, prior to commencing the distribution of ballots by mail, the official designated by DACO shall certify the number of printed ballots under oath before a notary. The number of printed ballots shall be equal to the number of customers entitled to vote in the election, plus five percent (5%). Likewise, the official designated by DACO shall keep a record of ballots sent and, once the distribution process concludes, he/she shall certify the number of sent ballots under oath before a notary.

(7)     Each one of the candidates selected for each one of the two customer interests representative categories shall designate one person to represent him/her during the process, and such persons, together with a representative of the Secretary of DACO and a representative of the Secretary of the Board shall compose the Election Committee, which shall be chaired and directed by the representative of the Secretary of DACO.

(8)     The Election Committee shall prepare and post prominently on PREPA's website any information of the candidates that enable customers to pass judgment on such candidates' abilities.

(9)     The Election Committee shall enter into public service collaboration agreements with the different mass communication media in Puerto Rico to promote the election process among PREPA's customers and to introduce all aspirants, under equal conditions.

(10)   The Election Committee, within ten (10) days after the deadline to receive ballots, shall begin the canvassing and notify the results thereof to the Secretary of DACO, who shall certify the candidates-elect and notify such certification to the Governor of the Commonwealth of Puerto Rico and the Chair of the Board.

(d)   Role of the Board; Code of Ethics; Fiduciary Duties.

(1)   Role of the Board.- The main role of the Governing Board is to lead the strategic management of PREPA and, at the same time, delegate to the Executive Director the administrative duties and works of the public corporation. The following are among the duties and responsibilities of the Board:

(i)   Define, in collaboration with the Executive Director, the strategic management of PREPA, its top priorities and values, and oversee compliance therewith, without involving itself in the daily administrative affairs of PREPA, which are delegated to the Executive Director. Each value and goal shall be linked to performance benchmarks and objectives, and mechanisms to oversee compliance therewith;

(ii)   Develop, update, and devise policies that are consistent with the duties, roles, and responsibilities of the members of the Board and its support personnel in order to ensure an effective governance and oversight of the public corporation, according to the best practices of governance of electric power companies;

(iii)   Develop and keep a clear and transparent accountability framework. To such purposes, the Board shall establish the expectations and assess the performance results of its members, the Executive Director and his/her staff, ensuring that they are consistent with PREPA's mandate policies, goals, and values, and the best industry practices;

(iv)   Give instructions to PREPA's officials and employees to ensure compliance with PREPA's mission, policies, goals, and values. Provided, that no member of the Board may give instructions on an individual or personal manner to PREPA's employees. Any instruction shall be given by the whole Board and abide by a determination or instruction of said body; and

(v)   Establish and maintain updated a participatory and dynamic governance model, for which it shall study and use as reference the best industry practices and the governance models of comparable electric power companies.

The Board shall hire advisors as are necessary to properly carry out its duties.

(2)   Code of Ethics.- The Board shall adopt a Code of Ethics that shall govern the conduct of its members and staff. Among its objectives, the code of ethics shall require that the conduct of the members of the Board and its staff be governed at all times by the public interest and the interest of customers, and not by the pursuit of personal gain or profits for other natural or juridical persons; require and oversee that there is no conflict of interests and immediately clarify any apparent conflict of interests that may call into question the loyalty and fiduciary duty of the members of the Board and its staff with the interests of PREPA's customers; require that every member of the Board shall be duly prepared to attend regular and special meetings, and be able to deliberate on PREPA's matters; and provide the tools to prevent, orient, guide, and adjudicate with regard to compliance with the ethical duties and responsibilities of all individuals regulated by the code of ethics of the Board. In addition, the code of Ethics shall be designed in accordance with the best governance practices of the electric power industry and compatible with the applicable ethical rules, such as the provisions of the Puerto Rico Government Ethics Act of 2011.

(3)    Fiduciary Duties.- All actions of the Board and its members shall be governed by the highest duties of loyalty, due care, competence, and diligence.

(e)    Audit Committee.

(1)    Creation.- As of July 1, 2014, the Board shall appoint an Audit Committee composed of three (3) members of the Board, one of which shall be the Chair of the Committee.

(2)    Duties.-The Committee shall have the following duties:

(i)    Adopt statutes that shall govern its duties and responsibilities using the best practices in Audit Committees at the national and/or international level;

(ii)    Choose, determine the compensation, and supervise the works of independent external auditors of PREPA;

(iii)    Conduct or authorize investigations in connection with any issue of PREPA's management or employees;

(iv)    Require any information, including oral testimonies or documents needed to carry out its duties;

(v)    Meet regularly and periodically with the management and administrators to keep abreast of the operations and transactions of PREPA; and

(vi)    Establish the procedure to receive, keep, and evaluate complaints and issues submitted by PREPA employees in connection with accountability practices, internal controls, and audit-related matters, providing them with the opportunity to submit, confidentially and anonymously, any concerns they may have with regard to internal controls, and managerial and administrative practices."

Section 2.4.- Section 5 of Act No. 83 of May 2, 1941, as amended, is hereby amended to read as follows:

"Section 5.- Executive Director.

The Executive Director shall be appointed by the Board exclusively upon the basis of merit and other qualifications best suited to carry out the purposes of the Authority. The Executive Director may be dismissed by the Board, but only for just cause and after he/she has been given notice and an opportunity to be heard. A person may not become Executive Director if he/she has failed to provide the certification of having filed income tax returns during the five (5) preceding taxable years issued by the Department of the Treasury, the certification of having no outstanding debts with PREPA, the Criminal Record issued by the Puerto Rico Police Department, as well as a negative certificate of debt issued by the Child Support Administration (ASUME, Spanish acronym) and the Municipal Revenues Collections Center (CRIM, Spanish acronym)."

Section 2.5.- Section 5A is hereby added to Act No. 83 of May 2, 1941, as amended, to read as follows:

"Section 5A.- Energy Control Center and its Director.

(a)    In order to protect the reliability in the management of the electric power grid, prevent discrimination against electric power companies interconnected to the electric power grid, and ensure greater independence in the operations of the electric power grid, the Board shall appoint, with the advice of the Executive Director, a Director of the Energy Control Center who shall answer directly to the Executive Director. With the assistance of the Director of the Energy Control Center and the Executive Director, the Board shall establish and maintain mechanisms that ensure the autonomous operation of the Energy Control Center. The Board may dismiss the Director of the Energy Control Center from office, but only for just cause and after he/she has been given notice and an

opportunity to be heard. The Director of the Energy Control Center shall be an engineer specialized in the field relevant to his/her office and have at least ten (10) years of proven experience in the management of electric power grids. The Director may not: (i) have had a business relationship with or direct interest in PREPA within two (2) years before his/her appointment to such office; (ii) have been a member of a local or central directing body of a political party registered in the Commonwealth of Puerto Rico during the year immediately preceding his/her appointment; (iii) be an employee, member, advisor, or contractor of PREPA's labor unions; or (iv) has failed to provide the certification of having filed income tax returns during the five (5) preceding taxable years issued by the Department of the Treasury, the certification of having no debts outstanding with PREPA, the Criminal Record issued by the Puerto Rico Police Department, as well as a negative certificate of debt issued by the Child Support Administration (ASUME, Spanish acronym) and the Municipal Revenues Collections Center (CRIM, Spanish acronym)."

(b)    The Director of the Energy Control Center shall collect and provide PREPA with daily information regarding energy itemization, to be published on PREPA's website in accordance with the provisions of Section 2.2 of this Act."

Section 2.6.- Section 6 of Act No. 83 of May 2, 1941, as amended, is hereby amended to read as follows:

"Section 6.- Powers.

PREPA shall be responsible for providing reliable electric power, contributing to the general wellbeing and sustainable future of the People of Puerto Rico, maximizing benefits, and minimizing social, environmental, and economic impacts. It shall also offer and provide services based on affordable, just, reasonable, and nondiscriminatory costs that are consistent with the protection of

the environment, as well as nonprofitable, and focused on citizen participation and its customers.

Its undertakings as a public corporation shall be characterized by efficiency, the promotion of renewable energy use, energy conservation, and efficiency, excellence in customer service, and the conservation and protection of the economic and environmental resources of Puerto Rico. PREPA shall be responsible for acting consistent with the public policy on energy of the Commonwealth of Puerto Rico, the public interest, and for complying with all the applicable rules and regulations of the Energy Commission and CEPPO.

The Authority shall rise to energy and environmental challenges by using scientific and technological advances available; incorporate the best practices in the electric power industries of other jurisdictions; make the connection of renewable energy producers to the electric power grid feasible; carry out any process needed to make the electric power generated in Puerto Rico, whether by PREPA, co-generators, or independent power producers, highly efficient and clean for a better environment and public health. PREPA shall be required to coordinate any necessary efforts with the Commission, CEPPO, and any other entity or person to achieve the purposes of this Act and of any statute related to the public policy on energy of Puerto Rico; ensure the wellbeing of consumers by promoting savings and high efficiency standards; adopt internal policies as are necessary to ensure the continuity and reliability of the electrical system; provide high quality customer service; and adopt internal policies to ensure, reduce, and stabilize permanently the costs of electricity.

The remedies available by law to require PREPA's compliance with the mandates of this Act, the wellbeing of Puerto Rico, and the protection of consumers shall not be limited in any way. PREPA is hereby granted and shall have and may exercise all rights and powers necessary or convenient to carry out

the aforementioned purposes, including (but without limiting the generality of the foregoing) the following:

(a)  …

(b)  …

(c)  …

(d)  To have complete control and supervision of any undertaking built or acquired by it, including the power to determine the nature of and the need to incur all expenditures and the manner in which such expenditures shall be incurred, authorized, and defrayed; provided, that all actions of PREPA's management and employees and its Governing Board shall be subject to the provisions of the Government Ethics Act, and its highest fiduciary duties with the People of Puerto Rico.

…

(k)  …

(l)  To determine, fix, alter, charge, and collect reasonable and just rates, fees, rents, and other charges subject to the Commission's review, for the use of the facilities of PREPA, or for electric power services, or other commodities sold, leased, or furnished by PREPA, that are sufficient to cover reasonable expenses incurred by PREPA in the development, improvement, extension, repair, conservation, and operation of its facilities and properties, and  for the payment of the principal of and interest on its bonds, and for fulfilling the terms and provisions of such agreements entered into with or for the benefit of purchasers or holders of any PREPA bonds.

When charges contained in a bill include three (3) or more past due invoices for services that, by error or mistake of PREPA, were not previously billed, PREPA shall offer a reasonable payment plan to the customer according to

his/her financial capacity. Such payment plan may be extended for up to twenty four (24) months.

PREPA shall have a maximum term of one hundred twenty (120) days from the date of issue of the electricity bill to notify customers of errors in calculation. Once said term elapses, PREPA may not claim retroactive charges for said errors, such as those of an administrative or operational nature, or for an erroneous reading of electric power service consumption meters. This shall only apply to residential customers; it shall not apply to commercial, industrial, institutional customers, or otherwise. In those cases in which customers keep the meters out of the readers' visual reach, or in an event of *force majeure*, such as hurricanes, among others, prevent the reading of meters, this measure shall not apply to electricity bills issued based on consumption estimates. Likewise, it is hereby prohibited to report delinquent accounts of residential customers to credit bureaus, except in the case of undisputed accounts from customers not committed to a payment plan, of which the amount and whose recurrence of nonpayment, after multiple requirements for payment have been conducted and all collection mechanisms exhausted, imply that there is the intent to defraud PREPA.

Every bill sent by PREPA to its customers shall advise them of their right to dispute a bill and request PREPA to conduct an investigation. PREPA shall provide, on its website and at every regional and commercial office, information about the procedure, terms, and requirements to dispute a bill and request PREPA to conduct an investigation, and subsequently resort to the Commission to request review of PREPA's decision. Likewise, on its website and at every regional and commercial office, PREPA shall provide all information about the procedure, terms, and requirements to request the Commission a review of any of PREPA's decisions regarding customer bills.

(ll)    Every time an electric power service interruption is programmed by PREPA within at least fifteen (15) days in advance, in one or more areas, it shall notify the public of such service interruption within at least forty-eight (48) hours in advance for those customers who will be affected. PREPA shall publish such notification on its website, the social media, and any other communications media.

(m)    To provide free access to PREPA's website to all of its customers, so that they may obtain information related to their bill, such as the reading of the meter at the beginning and at the end of the billing cycle, dates and number of days in the billing cycle, and meter constant, the rates, the date of the next reading, as well as any other information that enables the verification of the reading, and to pay bills, examine the consumption history and the usage pattern. PREPA shall make available to its customers information of the electric power infrastructure, including information regarding generators and cogenerators, so that customers may be able to evaluate the status of the electric power infrastructure and PREPA as public instrumentality. PREPA documents and information shall be made available to those customers who so request, except for (i) confidential information in accordance with the Rules of Evidence; (ii) information related to collective bargaining, labor-related disputes, or issues related to personnel such as appointments, evaluation, disciplinary actions, and dismissal; (iii) ideas with regard to the negotiation of potential PREPA contracts or a determination to rescind or terminate contracts in effect; (iv) information of strategies regarding lawsuits of PREPA; (v) information of internal investigations of PREPA while these are being conducted; (vi) aspects regarding the intellectual property of third parties; (vii) trade secrets of third parties; (viii) issues that PREPA should keep confidential in accordance with any confidentiality agreement; or (ix) matters of public security involving threats against PREPA, its property or employees.

PREPA shall disclose and provide the people with access to the Trust Agreement, with all its amendments as well as the annual reports of consulting engineers.

Likewise, PREPA shall provide continuous access to and make available to customers any public information of PREPA. In compliance with this duty, in addition to the original copy of the documents where such information appears, PREPA shall publish and make available to customers documents that organize and provide such information in a manner that facilitates the handling thereof by persons without expertise in the disciplines addressed therein may understand them. PREPA's public information shall include, but not be limited to, its monthly financial report, including data per sector, the price per type of fuel and the average, the cost per kilowatt-hour of each sector (residential, industrial, and commercial) during the three (3) preceding months, the production cost per kilowatt-hour, PREPA's operating expenses of the last month, and the generation distribution per type of technology and fuel. The monthly financial reports shall be published on PREPA's website in accordance with the provisions of this Section on or before thirty (30) days after the month included in the report concludes. All the public information of PREPA shall be available in Spanish and English.

PREPA shall also publish and explain on its website an itemization of the charges included in the bill and the legal basis for each one of them. In addition to other means of communication, PREPA shall use the social media and electricity bills to notify the availability of information and the means to obtain access thereto.

PREPA shall provide citizen participation mechanisms at each one of its regions, and establish a continuing education program for its employees and customers to promote energy conservation and efficiency, subject to the rules established by the Commission. To such purposes, PREPA may enter into collaboration agreements with other public entities, civic entities, and non-

governmental organizations, and other institutions interested in facilitating the coordination and reducing the costs of the continuing education programs and the mechanisms to allow and promote citizen participation. The Executive Director shall adopt standards, rules or regulations as are necessary to achieve the purposes set forth in this subsection and to guarantee the confidentiality of the accounts of every natural or juridical person.

Likewise, PREPA shall provide free access to a separate website for the Energy Control Center, where daily statistical and numerical information shall be provided to constantly inform the citizenry about energy-related issues, including, but not limited to the daily peak demand, the daily supply per power plant or facility, and any other information or data that the Commission may deem necessary, in connection with the management of the electric power grid and the operations of electric power transmission and distribution in Puerto Rico.

…

(s)    To enter into any lands, bodies of water, or property, to make surveys, soundings, and studies to effectively carry out its duties under this Act, without other alternatives, upon written notice with at least five (5) days in advance to the owners or holders. Such entrance shall be made at a time most convenient to the owner or holder of the premises in question, and must be made within the shortest time possible so that the use and enjoyment thereof by its owner or holder is not unduly affected;

(t)    To assign and transfer surplus personal property, free of charge, to other government entities or municipalities, subject to compliance with any conditions established in the applicable rules and regulations.

(u)    To take actions or measures necessary or convenient to exercise the powers granted to it under this Act or by any other Act of the Legislative Assembly of Puerto Rico, or of the Congress of the United States. PREPA may establish

business models to ensure that the electricity infrastructure of Puerto Rico is supported by sufficient capital to maintain the reliability and safety of the electric power service in the Island and a better quality of electric power service to its customers. Such model may also include seeking new electricity markets in nearby jurisdictions. Provided, however, that PREPA shall have no power at anytime or in any manner to pledge the credit or taxing power of the Commonwealth of Puerto Rico or any of its political subdivisions, nor shall the Commonwealth of Puerto Rico or any of its political subdivisions be liable for the payment of the principal of or interest on any bonds issued by PREPA, or of the interests of same.

(v)     To create, whether in the Commonwealth of Puerto Rico or any other jurisdiction, or enter into contracts with companies, partnerships or subsidiary corporations, for profit or nonprofit, affiliated to or associated with, for purposes, among others, of developing, financing, building, and operating industrial projects and other infrastructure directly related to the maximization of the PREPA's electricity infrastructure (to have a stable electrical system with the latest technology, clean, reliable, and highly efficient), and acquiring, holding, and disposing of securities and shares, contracts, bonds, or other interests in other companies, entities or corporations, and exercising any and all powers and rights that such interest allows, provided that, in the Board's judgment, such action is necessary, appropriate or convenient to attain PREPA's purposes or to exercise its powers, and to sell, lease, assign, or otherwise convey any property of PREPA or to delegate or transfer any of its rights, powers, functions, or duties, to any such companies, entities or corporations that are subject to its total or partial control, except the right of eminent domain. The foregoing shall be carried out without impairing the functions that other public corporations and/or government agencies of the Commonwealth of Puerto Rico currently have.

…

(w)    Not later than May 31st of each year, the Executive Director of PREPA shall submit a report to the Governor, the Commission, and both Houses of the Legislative Assembly of the Commonwealth of Puerto Rico, stating the measures taken by PREPA during the preceding calendar year to address the emergencies that may arise with respect to the upcoming hurricane season and other atmospheric disturbances, including floods that may affect the electrical system of the Island. Likewise, said report shall present the adopted plans or protocols to be followed in case of fires in facilities or establishments of PREPA. It shall also include any preventive measure identified for the conservation of the power lines in the event of an earthquake. The report shall include, but not be limited to, the following information:

(1)    Improvements to PREPA's Revised Operating Plan for Emergencies due to Atmospheric Disturbances;

(2)    Development of an emergency plan to face a possible earthquake, from which the Island is not free;

(3)    Adopted plans or protocols to be followed in case of fire in PREPA's facilities or establishments;

(4)    Status of the tree trimming program in order to protect power transmission lines. PREPA shall work on said program in conjunction with the Department of Natural and Environmental Resources in order to protect our trees and prevent them from being damaged;

(5)    Decision-making protocol and process to enforce the shutting down of the electrical system;

(6)    Trainings offered to PREPA's essential personnel to qualify it on the procedure to be followed in case of emergencies arising from atmospheric disturbances, fire in facilities or establishments of PREPA, or earthquakes, as well as a certification attesting that all the personnel conducting supervisory functions

in the operating areas has been duly advised on the norms of the operating emergency plan in effect; and

(7)   Contingency plans to address the situation after a storm, hurricane, fire in the facilities or establishment of PREPA, or an earthquake directed to normalizing or reestablishing the electrical system as soon as possible, keeping in mind and giving priority to hospitals, elderly homes, and schools, as well as to non-profit agencies and corporations that provide services to the needy of the Island.

(x)   The Executive Director or the official to whom he/she delegates shall be empowered to issue administrative fines to any natural or juridical person that:

(1)   Violates the provisions of this Act or the regulations adopted thereunder by PREPA, or violates the permits, licenses or authorizations issued by PREPA. Administrative fines in connection therewith shall not exceed ten thousand dollars ($10,000) for each violation; provided, that for each day the violation continues, it shall be considered a separate violation. If the noncompliance with the provisions of this Act or the regulations adopted thereunder by PREPA involves the misuse of electric power or materials or equipment as defined by PREPA through regulations, the administrative fine may amount up to fifty thousand dollars ($50,000) for each violation. If the economic benefit derived from such misuse exceeds fifty thousand dollars ($50,000) the administrative fine may amount up to one hundred thousand dollars ($100,000) for each violation; provided, that in both cases, each day the violation continues it shall be considered a separate violation.

(2)   Fails to comply with any resolution, order, or decision issued by PREPA. Administrative fines in connection therewith shall not exceed ten thousand dollars ($10,000) for each violation; provided, that for each day the violation continues, it shall be considered a separate violation.

(3)     Alters, in whole or in part, the electrical system or facility to such extent that the actual consumption cannot be measured properly and/or makes an installation designed to prevent the correct measuring of energy consumption. Administrative fines in connection therewith shall not exceed fifty thousand dollars ($50,000).

PREPA shall establish, by regulations, the standards and procedures to impose the administrative fines established in this subsection. The fine to be imposed shall be based on: the severity of the violation, the length of time over which the violation occurred, repetition of the violation, the economic benefit derived from said violation, and the misuse of electric power or materials or equipment, and the risk entailed or damages caused to health and/or safety as a result of such violation.

The administrative penalties assessed based on the misuse or alteration of the electrical system to prevent the correct measuring of energy consumption shall be covered into PREPA's Theft and Misuse Division for its exclusive use. PREPA shall maintain a stringent energy theft and misuse program and publish on its website quarterly reports on the efforts made and the results of such program. PREPA shall file an annual report with the Legislative Assembly, the Governor, and the Commission stating in detail the fines assessed under the provisions of this Act and the use given thereto.

(y)     …

(z)     The Executive Director or officer designated by him/her shall adopt regulations for the collection of past-due payments from public corporations. These regulations shall include among its payments options, the establishment of payment plans with reasonable and viable terms. It shall also consider the suspension of the electric power service to the public corporation in default for

repeated nonpayments, except in those facilities where essential public services may be affected by the loss of service.

(aa)   The Executive Director shall evaluate the convenience of adopting a program whereby customers may pay a fixed amount in advance, and that such amount be credited to the customer's monthly bill, granting a discount, to be determined by the Board on the total amount of each pre-paid bill until the funds paid in advance are exhausted. The Executive Director shall also assess the convenience of applying said program to the agencies, public corporations, boards, or any other instrumentality or entity of the Commonwealth of Puerto Rico, so that the budget set aside to defray the electric power costs of said entities shall be remitted to PREPA at the beginning of the fiscal year, and the monthly bill of such entities shall be credited on such basis, granting a discount established for payments made in advance.

(bb)   Develop and maintain an integrated resource plan in accordance with the parameters and requirements established by the Commission as provided in Section 6C of this Act.

(cc)   Formulate, adopt, amend, and repeal rules and regulations as necessary or convenient to exercise and carry out its powers and duties."

Section 2.7.- A new Section 6A is hereby added to Act No. 83 of May 2, 1941, as amended, to read as follows:

"Section 6A - Rate Determination and Review

(a)   Before making any changes to the general structure of the rate for the sale of electric power, within a term that shall not exceed the one hundred eighty (180) days from publicly notifying the proposed changes, public hearings shall be held before PREPA's Governing Board or before any administrative judge or judges from the Office of the Secretary of Administrative Procedures of the Electric Power Authority appointed for those purposes at the request of the

Governing Board. Upon their appointment, the administrative judge or judges from the Office of the Secretary of Administrative Procedures of the Electric Power Authority shall hold public hearings in accordance with the procedural rules established by regulations. PREPA shall notify the public of the schedule of public hearings by publishing or posting a notice to such purposes on PREPA's website and by notices in other communication media, within at least fifteen (15) days prior to the holding thereof.

(b)     At the time of notifying the holding of the public hearings referred to in subsection (a) above, PREPA shall notify the Independent Consumer Protection Office (ICPO). The ICPO shall be in charge of the citizen participation process in the public hearings related to the review of rates. As part of its duties, the ICPO shall oversee compliance with the following parameters:

(i)     PREPA provided a notice in advance to the public regarding the holding of the public hearing;

(ii)     PREPA provided sufficient and understandable information to the attendees regarding proposed revisions and the grounds thereof; and

(iii)     Sufficient and reasonable opportunity is afforded to the attendees to make questions and express their concerns.

No public hearings shall be held without having a representative of the ICPO present. PREPA shall provide the necessary personnel and equipment to record the entire public hearings, and shall be the custodian of such recordings.

(c)     The ICPO shall draft a detailed minute of each public hearing, and provide PREPA with a copy thereof. The minutes drafted by the ICPO shall be included in the record submitted by PREPA during the proposed rate review process before the Energy Commission.

(d)     The Energy Commission shall be in charge of reviewing PREPA's rates as provided in Section 6B of this Act and the provisions of the Puerto Rico Energy Transformation and RELIEF Act, its regulations, and case law.

(e)     The Board may establish an adjustment fee to recover variable costs in the purchase of fuel and the purchase of energy, subject to the provisions of this Section. Said adjustment fee for the purchase of fuel and the purchase of energy shall only include the costs directly related to the purchase of fuel and the purchase of energy. Under no circumstances, the payment of lines of credit (including interest) shall be part of the costs directly related with the purchase of fuel and the purchase of energy.

The provisions of Act No. 21 of May 31, 1985, as amended, known as the "Uniform Rate Revision and Modification Act," and the provisions of Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act", shall apply to PREPA's rates modification and review processes insofar as they are compatible with the rate modification and review provisions and requirements established in this Section. If the provisions of Act No. 21 are incompatible with the provisions of this Act, the provisions of this Act shall prevail."

Section 2.8.- A new Section 6B is hereby added to Act No. 83 of May 2, 1941, as amended, to read as follows:

"Section 6B.- PREPA Rates.

(a)     General.- The rates determined by PREPA under Section 6(l) and Section 6A of this Act shall be reviewed by the Energy Commission prior to taking effect, subject to the provisions of the Puerto Rico Energy Transformation and RELIEF Act. The rate review process shall ensure that all rates are just and reasonable.

(b)     Initial Rate Review.- Rates in effect as of the effective date of the Puerto Rico Energy Transformation and RELIEF Act shall continue in effect until they are reviewed by the Energy Commission in accordance with the provisions of this Section and the Puerto Rico Energy Transformation and RELIEF Act. The first rate review process shall begin not later than one hundred eighty (180) days after the approval of the Puerto Rico Energy Transformation and RELIEF Act and shall conclude not later than six (6) months after it began. In carrying out such process, the burden of proof shall lie on PREPA which shall be required to show that such rate is just and reasonable. PREPA shall submit the information requested by the Commission, which shall include all documents pertaining to:

i.      The efficiency, capacity, and suitability of the facilities and the service;

ii.     Direct and indirect costs related to the generation, transmission, and distribution of energy, including stranded costs and costs attributable to the loss of energy due to theft or inefficiency;

iii.    Expenditures related to PREPA's debt repayment.

iv.     All charges and costs included under "Fuel Adjustment" as of the effective date of the Energy Transformation and RELIEF Act;

v.      PREPA's capacity to improve the service provided and its facilities;

vi.     The conservation of energy and efficient use of alternative energy resources;

vii.    Data related to the effect of special laws, subsidies, and contributions; and

viii.   Any other data or information that the Commission deems necessary to evaluate and approve rates.

The Commission shall guarantee that the approved rate will be sufficient to: (i) guarantee payment of principal of and interest on bonds and other financial obligations of PREPA; and (ii) comply with the terms and provisions of the agreements entered into with or in benefit of buyers or holders of any bonds or other financial obligations of PREPA. The Commission shall establish a fixed charge on the rate that shows the amount that customers shall pay on account of PREPA's obligations to bondholders. The Commission shall review this charge in light of PREPA's financial obligations, so that it is sufficient to guarantee the annual payment of PREPA's obligations to bondholders.

The Commission shall approve under the "fuel adjustment" and "energy purchase adjustment" items only those costs directly related to the purchase of fuel and the purchase of energy, respectively. No other expense or charge may be denominated nor included as "fuel adjustment" or "energy purchase adjustment."

The Commission shall establish a mitigation plan to ensure that the costs it deems to be inconsistent with the industry practices, such as energy theft, account receivables, and losses attributed to the inefficiency of the electrical system are consistent with the industry's standards. PREPA shall comply with the mitigation plan approved by the Commission within a term that shall not exceed three (3) years.

PREPA shall bill customers the initial rate as soon as it is approved by the Commission by means of an order to that effect, with the format of the new transparent bill established in Section 6C of this Act. All rate modification requests approved by the Commission shall comply with the subsection (c) of that Section.

(c)    Modification of Approved Rate.- Once the process provided in Section 6A of this Act concludes, PREPA shall file for the Commission's approval the rate modification request. The request shall state the grounds for the change,

the effect of such modification in the income and expenditures of PREPA, and any other information requested by the Commission through regulation or request. The Commission may initiate, *motu proprio*, the rate review process when in the best interest of customers. Any rate modification, whether to increase or decrease the same shall undergo a discovery and public hearing process to be held by the Commission to determine whether the proposed change is just. The review process shall not exceed one hundred eighty (180) days.

(d)     Temporary Rate.- Within thirty (30) days after the filing of rate modification request, the Commission may preliminary evaluate the same to determine whether a temporary rate should be established. The Commission shall exercise its discretion in establishing the temporary rate. If the Commission establishes a temporary rate, such rate shall take effect sixty (60) days after the request was submitted. Said temporary rate shall remain in effect during the period of time needed by the Commission to evaluate the rate modification request proposed by PREPA and issue a final order therefor.

(e)     Rate Modification Approval.- If after the process of public hearings, the Commission determines that the proposed rate change is just and reasonable, it shall issue an order to such purposes and notify the rate change on its website, along with the new rate itemization. The new approved rate shall take effect sixty (60) days after the Commission issues the order. If the Commission determines that the proposed rate change is unjust or unreasonable, it shall issue an order duly grounded stating so. In such case, the rate modification subject of the request shall not proceed and the rate whose modification was sought shall continue in effect. After issuing any order after the rate review process, the Commission shall order PREPA to adjust customer's bills to refund, credit, or charge any discrepancy between the temporary rate established by the Commission and the rate change in favor of the customer or in favor of PREPA, as applicable.

(f)    Inaction of the Commission.- If the Commission fails to take action with regard to a rate review request within thirty (30) days after the filing thereof, the modified rate subject of the request shall take effect immediately as a temporary rate. The Commission shall continue the review process and issue an order within the term specified in this Section. If the Commission fails to act within the term of one hundred eighty (180) days established in this Section, the modified rate shall become final and the Commission shall lose jurisdiction to review same.

(g)    The Commission shall publish, on its website, the itemization of all rates or changes approved or modified.

Section 2.9.- A new Section 6C is hereby added to Act No. 83 of May 2, 1941, as amended, to read as follows:

"Section 6C.- Responsibilities.

(a)    Energy RELIEF Action Plan.- PREPA shall be required to file with the Commission an Energy RELIEF Plan which shall be published in its entirety on PREPA's website so that it may be easily accessed by any interested party. The Energy RELIEF Plan shall address the following:

(i)    High Efficiency Generation - Within a term that shall not exceed three (3) years after July 1st, 2014, PREPA shall ensure that, at least sixty percent (60%) of the electric power generated in Puerto Rico based on fossil fuels (gas, coal, oil, and others) is "high-efficiency", as such term is defined by the Commission. The term "high efficiency" shall include as main factors the thermal efficiency of the power plant or facility per type of fuel used, fuel cost, technology, potential of proposed technology to reduce production costs per kilowatt-hour, and/or any other parameter of the industry that guarantees thermal efficiency in the generation of power. The percentage required under this Section shall include the

fossil fuel powered energy sold to PREPA under power purchase agreements executed as of the approval of this Act.

(ii)    Production Costs - If it is necessary for PREPA to purchase energy for Puerto Rico, any power purchase agreements shall comply with the parameters of this Act and those imposed by the Commission, provided that no energy cogenerator shall realize gains attributable to fuel. The cogenerators' profit margin under power purchase agreements to be approved by the Commission shall be consistent with the parameters established by said regulatory entity. Such parameters shall be consistent with price escalators adjustments normally used by the industry to such purposes, as well as any other parameter or methodology used to regulate gains attributable to power purchase agreements in order to ensure that such agreements have a reasonable and just price.

(iii)    Bid Process and Request for Proposals for the Purchase of Power and/or Modernization of Electric Power Generation Facilities. - Any bid process or request for proposals for the purchase of electric power by PREPA shall be carried out by the Commission. Likewise, any bid process or request for proposalsfor the modernization of electric power generation plants or facilities to be carried out by PREPA in order to improve their efficiency, shall be carried out by the Commission.

(iv)    Fiscal Matters - PREPA shall take fiscally responsible and feasible measures to guarantee its operations as an entity whose service and existence is closely related to the security of the Island's operations.

(v)    Electricity Rates - PREPA shall establish a schedule with clear and specific parameters in order to achieve a permanent reduction in electricity rates.

(vi) Reserve Margin - PREPA shall fix, subject to the Commission's review and approval, the optimal reserve margin for Puerto Rico, taking into account the best industry practices as well as the geographic and electricity infrastructure realities of Puerto Rico, and work to maintain such reserve, thus ensuring the continuity and reliability of the electric power service in Puerto Rico.

(vii) Renewable Energy - PREPA shall maximize the use of renewable energy, in compliance with the applicable Commonwealth and Federal laws, ensuring its integration into the electric power grid in a safe and reliable manner and guaranteeing the stability of the Island's energy transmission and distribution network, for example, by installing  the necessary equipment and technology to ensure the connection of renewable energy sources to the electric power grid, or establishing alternate manners of operating the electric power grid, thus mitigating the instability that this type of energy may cause to such grid. Said installation shall be completed and incorporated into the Integrated Resource Plan so that other long-term planning options are not excluded and PREPA's finances are not compromised. PREPA shall oversee that the integration of renewable energy meets the requirements set forth in Act No. 82-2010 and take the necessary measures to ensure compliance therewith. PREPA shall also promote the direct use of renewable energy by its customers, particularly by expediting and simplifying any transaction, process, or requirement in connection with residential and commercial small rooftop solar projects of less than twenty-five kilowatts (25 kW). It shall oversee compliance with those simplified transactions, processes, and requirements in all of PREPA's regions and, if practicable, it shall establish a financing mechanism to contribute to its development.

(viii) Distributed Generation - PREPA shall identify the most effective and economic manners to make the electric power infrastructure of Puerto Rico more distributed and sustainable, and promote the use and strategic integration of sustainable energy technologies and practices. To comply with this duty, PREPA shall plan, build, and update distribution systems to ensure the integration to the maximum extent possible of renewable distributed generation.

(ix)   Environmental Regulations - PREPA shall be timely and fully compliant with all applicable environmental legislation and regulations, including, but not limited to the Mercury and Air Toxic Standards (M.A.T.S.), which are monitored by the U.S. Environmental Protection Agency (EPA).

(b)   The Energy RELIEF Plan shall be subject to the following conditions:

(A)   The Energy RELIEF Action Plan shall be drafted and submitted to the Commission within a term that shall not exceed sixty (60) days after the approval of the regulations of the Commission for such purposes. If the Plan is not filed within such term, it shall be understood that PREPA failed to comply with the mandates of this Act;

(B)   The Plan shall comply with the guidelines set forth by the Commission based on standards set forth by specialized entities such as the American National Standards Institute (ANSI), North American Electric Reliability Corporation (NERC), Institute of Electrical and Electronic Engineers (IEEE), Electric Power Research Institute (ERI), National Fire Protection Association (NFPA), and other entities that define practices established for the electric power industry;

(C)   The Plan shall define the projected configuration of Puerto Rico's energy system;

(D)     The Plan shall detail Puerto Rico's diversified energy portfolios and implement the requirements provided under this Act, Act No. 82-2010, and any other applicable law;

(E)     The Plan shall establish the estimated dates on which the energy portfolio shall be effectively and fully implemented, setting the date in which every individual project shall become operational, and defining the impact on the cost of energy as the energy system evolves, subject to the timetables provided under this Act and other laws related to the public policy on energy.

(F)     The Plan shall state in detail the required events, the implementation agenda, and the execution costs, together with the definition of an integrated program to fulfill the purposes and comply with the mandates of this Act and other laws related to the public policy on energy;

(G)     The Plan shall establish a documentation and progress report filing mechanism according to the guidelines set forth by the Commission;

(H)     The Commission shall evaluate and approve the Energy RELIEF Plan submitted by PREPA within a term that shall not exceed sixty (60) days;

(I)     If the Commission deems it necessary to make any changes to the Plan, PREPA shall resubmit the amended plan for the Commission's approval within a term that shall not exceed thirty (30) days, in accordance with the rules provided in this subsection.

(c)     New Transparent Bill - Design and submit to the Energy Commission a new electricity bill for each type of customer of PREPA. Such bill shall itemize the categories of the different charges assessed to the customer, including fuel purchase adjustment, adjustment of energy purchased from cogenerators and renewable energy manufacturers, costs associated with Renewable Energy Certificates, account handling and servicing fees, usage charge, operating

expenses, energy theft, electricity loss, bond issue debt payment, public sector receivable, private sector receivable, special laws, and any other charge which influences the bill of residential and commercial customers. The new bill shall be completely transparent and approved by the Commission, subject to compliance with the rules established by the same. The new bill shall not include or encompass under fuel purchase or energy purchase items any other cost or charge other than that approved by the Commission in accordance with the mandates of this Act, and the Puerto Rico Energy Transformation and RELIEF Act.

(d)     Financial Innovation - Actively promote initiatives, in coordination with the pertinent government agencies and instrumentalities such as the Economic Development Bank, the Government Development Bank, and the Office of the Commissioner of Financial Institutions, to promote the retention at the local level of the payments made by PREPA to its goods and services suppliers.

(e)     Commission - Comply with every mandate, order, rule, administrative determination, request, and penalty established by the Commission in the exercise of its duties of regulating and overseeing Puerto Rico's electric power system.

(f)     Others - Comply with all the applicable statutory provisions, including those imposed under this Act, among others.

(g)     Failure to Comply with Responsibilities - If PREPA fails to timely submit the Energy RELIEF Plan, if its content is vague, does not conform to the requirements under this Section or does not conform to the rules or orders of the Commission, the Commission shall have a term of up to ninety (90) days to write, approve, and implement an Energy RELIEF Plan which meets the requirements and provisions of this Section.

(h)     Integrated Resource Plan.

(i)     In General – PREPA shall adopt an integrated resource plan consisting of a twenty (20)-year planning period. The first integrated resource plan shall be filed for the Commission's review and approval within one (1) year counted as of July 1st, 2014. The integrated resource plan shall be revised every three (3) years to show changes in the energy market conditions, the environmental regulations, fuel prices, capital costs, and other factors; provided, that in the case of a substantial change in the energy demand or group of resources, such review process shall be carried out before the three (3) years provided herein to respond to and/or mitigate such changes. Any amendment to the integrated resource plan shall also be filed for the Commission's review and approval. The integrated resource plan shall be consistent with all the mandates of this Act and shall follow the best practices in electric power industry integrated resource planning.

(ii)     Every integrated resource plan shall include, but not be limited to:

(A)     A range of future demand forecasts established by using methods that examine the effect of economic factors on electricity consumption as well as the effect of the use of lands under the Land Use Plan for Puerto Rico in effect, and the trend changes in the amount, type, and efficiency of electricity, and its end-use.

(B)     An evaluation of the conservation resources available in the market, including the management of electricity demand, as well as an evaluation of the programs in effect and the necessary programs to improve energy conservation.

(C)     An evaluation of the range of conventional and non-conventional generation technologies available in the market.

(D)     An evaluation of the transmission capacity and reliability of the system.

(E)     A comparative evaluation of the energy supply resources, including transmission and distribution.

(F)     An evaluation of the combination of resources designated to promote energy sources diversification; stabilize energy costs; and improve the reliability and stability of the electric power grid.

(G)     An evaluation of the existing electric power plants or facilities of PREPA that takes into account the improvements in the operational efficiency of plants, the useful life of existing plants, and the retirement date and decommissioning costs thereof, if applicable.

(H)     Evaluation of the environmental impacts of PREPA related to air emissions and water consumption, solid waste, and other environmental factors.

(I)     Evaluation of the interconnection of renewable energy projects and other independent power producers to the electric power grid, to comply with Act No. 82-2010.

(iii)   Energy Commission - The integrated resource plan shall be evaluated and approved by the Commission and may not be eliminated or altered by any subsequent PREPA Board without first carrying out, and thus evidencing, a plan review process, before the Commission. The Commission shall issue all the necessary rules to be followed by PREPA to devise its integrated resource plan, which shall include an evaluation plan of PREPA's effectiveness in attaining the goals set.

(iv)    Measurements and Parameters.- The plan shall include the typical performance measurements of the electric power industry such as, but not limited to: revenue per kilowatt-hour (kWh), operating and maintenance expenses

per kilowatt-hour, operating and maintenance expenses of the distribution system per customer, customer service expenses per customer, general and administrative expenses per customer, energy sustainability, emissions, total amount of energy used annually in Puerto Rico, total amount of energy used annually per capita, total amount of energy used annually per capita in urban areas, total amount of energy used annually per capita in non-urban areas, total energy cost per capita, total energy cost per capita in urban areas, and total energy cost per capita in non-urban areas. These measurements shall also measure PREPA's performance in complying with the mandates of this Act, particularly with all that pertains to its effectiveness in complying with its electric power company duties. To achieve this, a comparative analysis of other electric power companies similar to PREPA in size and operations, shall be conducted, and shall be considered and adjusted taking into account the differences and geographic challenges of our electric power infrastructure.

(vi)     Commonwealth     Energy     Public     Policy     Office.-     The Commonwealth Energy Public Policy Office shall evaluate the first integrated resource plan and submit recommendations to the Commission, but only the Commission shall have jurisdiction to approve the resource plan. Every two (2) years, as of the filing of the first integrated resource plan, PREPA shall make a presentation to the Commonwealth Energy Public Policy Office to show that the integrated resource plan is consistent with the policy on energy of Puerto Rico as well as PREPA's compliance therewith. PREPA shall consult with the personnel of the Commonwealth Energy Public Policy Office and identify citizen participation mechanisms during the development process of any integrated resource plan."

Section 2.10.- Section 22 of Act No. 83 of May 2, 1941, as amended, known as the "Electric Power Authority Act," is hereby amended to read as follows:

"Section 22.- Tax Exemption; Use of Funds.

(a)    It is hereby provided and declared that the purposes for which PREPA is created and shall exercise its powers are: the conservation of natural resources, the improvement of the general welfare, and the promotion of commerce and prosperity, all of which are public purposes for the benefit of the Commonwealth of Puerto Rico, and therefore, PREPA shall not be required to pay any municipal or Commonwealth taxes or assessments of any kind on any real or personal property acquired by it or under its domain, control, possession, or supervision, or on its activities in the operation and maintenance of any undertaking; or on the income derived from any of its undertakings or activities; or on the volume of business. Persons that enter into contracts with the Authority shall not be subject to the government tax on contracts imposed by Act No. 1-2011, as amended, known as the 'Puerto Rico Internal Revenue Code of 2011.'

(b)    Beginning on Fiscal Year 2014-2015, and thereafter, PREPA shall set aside a sum equal to eleven percent (11%) calculated from the gross revenues generated from the purchase of fuel and acquired electric power, derived during each fiscal year from the sale of electric power to customers, as a contribution to offset the tax exemption, and for other corporate purposes. Said sum shall be distributed as provided below:

(1)    Of the aforementioned eleven percent (11%), PREPA shall allocate two percent (2%) calculated from the gross revenues generated from the purchase of fuel and acquired electric power, to be deposited into a stabilization fund that shall be used to manage the fossil fuels volatility, infrastructure changes to support the mandates of this Act on the use of renewable sources, programs to promote energy conservation and efficiency among consumers, with emphasis on

improving the performance of the electric power grid. Any surplus of the two percent (2%)-contribution may be used for the Capital Improvements Program of PREPA.

(2)     PREPA shall cover the cost of the current residential subsidy and the cost of any subsidy or contribution programs granted under laws in effect, rural electrification programs, and public irrigation systems and any debt accrued on account of the subsidies mentioned in this subsection.

(3)     Beginning on Fiscal Year 2014-2015, PREPA shall calculate and distribute its net revenues from the eleven percent (11%) set aside in accordance with this subsection (b), as defined in the trust agreement in effect, nine percent (9%) calculated from the gross revenues generated from the purchase of fuel and acquired electric power to cover the costs of subsidies or incentives, in accordance with the provisions of subsection (b)(2) of this Section. The surplus amount shall be distributed by PREPA among the municipalities as payment in lieu of taxes (PILT) pursuant to the criteria stated below. The maximum amount or cap of the PILT shall be established by computing the average energy consumption of municipalities, on an annual kilowatt-hour basis, for the three years of highest consumption since the change in the formula in 2004 up to the present time. Of this maximum amount or cap, municipalities shall be required to reduce five percent (5%) annually during the next three (3) years after the approval of this Act, until a reduction of at least fifteen percent (15%) of the maximum consumption amount or cap is achieved. Any consumption in excess of the maximum amount or cap established as contribution by virtue of the PILT shall be billed to the municipality by PREPA for collection. If the municipality exceeds the annual five percent (5%) savings percentage rate, it shall receive from PREPA an additional contribution in a monetary value equal to forty percent (40%) of the savings achieved in excess of the baseline reduction rate established. If the municipality fails to meet the annual

five percent (5%) reduction established, its reduction or savings rate shall be increased by five percent (5%) as a penalty for the following year, therefore, it will not benefit from the incentive of receiving a reimbursement for its energy consumption reduction until it meets the ten percent (10%) rate established for said year. The annual five percent (5%) reduction or savings rate shall only apply to the maximum consumption amount or cap established for each municipality, from which it shall be deducted the consumption, on a kilowatt-hour basis, of each municipality for the public lighting billed to municipalities through PILT. Nonetheless, if a municipality wishes to include the consumption for public lightning in its maximum consumption amount or cap, said municipality shall make such request to PREPA within two (2) years after the approval of this Act. Once the public lightning is included in its baseline consumption, the municipality may not request this sum to be exempted or removed from its maximum consumption amount or cap. PREPA shall establish through regulation the process to include, when requested by a municipality, public lightning consumption in a municipality's maximum consumption amount or cap, in accordance with the provisions of this Act. The maximum amount or cap of the PILT for each municipality shall be adjusted in light of the new burden caused by new municipal developments, provided that new construction has been duly certified as efficient in accordance with the parameters established by the Commonwealth Energy Public Policy Office. The contribution in lieu of PILT mechanism implemented pursuant to the criteria established herein shall be remitted to the Office of the Clerk of the House of Representatives and the Office of the Secretary of the Senate within thirty (30) days after its adoption. Any surplus of the nine percent (9%) contribution established in this subsection (b)(3) may be deposited in the stabilization fund created by virtue of subsection (b)(1) of this Section, and may be used to cover the Energy Commission's operating expenses.

For purposes of computing the municipalities' contribution, the corporations or businesses offering services related to healthcare and healthcare facilities as defined under Act No. 101 of June 26, 1965, as amended, known as "Health Facilities Act." However, the energy consumption bill of public facilities that house for profit corporations or businesses shall not be taken into account, since such corporations or businesses shall pay for the electric power service.

The Commonwealth Energy Public Policy Office shall establish and review every three (3) years the baseline energy consumption of municipalities in order to verify such municipalities' compliance with their individual energy conservation and efficiency goals. CEPPO shall establish through regulations the measurement to be used for measuring the energy consumption of real property, which shall be based on kilowatt-hour (kWh) per square foot (ft$^2$) per year per type of building or structure. Standard energy consumption shall be considered to determine the amount of the subsidy corresponding to each municipality within the parameters of the payment in lieu of taxes established in this subsection. On a monthly basis, PREPA shall publish on its website information about the electric power consumption of municipalities. The Energy Public Policy Office shall offer technical collaboration to the municipalities, free of cost, in order to help them achieve the goals set forth in this Section.

In the event the net income available of the Authority is not sufficient in any given fiscal year for the Authority to pay the total of the contribution or payment in lieu of taxes mechanism determined as provided herein, the insufficiency shall be paid within three years. The Authority may deduct from such payment any sum due and payable to PREPA by any municipality at the end of the current fiscal year. The deducted sums may be applied for the payment of debts, according to their date, regardless of whether the debt is the result of electric power consumption or other services. Provided, that in an event of *force majeure*, such as:

hurricanes, wars, or events that cause disproportionate fluctuations in the price of fuel, the Authority shall pay, on account of the contribution or payment in lieu of taxes, an amount in accordance with its net income available recognizing that its payment obligation for the year in which such event takes place shall be the lesser of the actual electric power consumption of municipalities or the contribution allocated to each municipality as payment in lieu of taxes.

Provided, further, that in the case of *force majeure* where the Federal government or private insurance companies compensate PREPA for income loss, such compensation shall be added to the gross income of PREPA earned during the year such compensation is received for purposes of the computation of the contribution in lieu of taxes to be paid to the municipalities on said year. For purposes of this contribution or payment mechanism, net income is defined, as provided by the Trust Agreement of 1974 in effect, as gross income less current expenses, less subsidy or grant costs provided by the applicable laws in effect. The Trust Agreement of 1974 defines the term 'expenses', as

> The Authority's reasonable and necessary current expenses of maintaining, repairing, and operating the system and shall include, without limiting the generality of the foregoing, all administrative expenses, insurance premiums, expenses of preliminary surveys not chargeable to Capital Expenditures, engineering expenses related to operation and maintenance, fees and expenses of the Trustee, the 1947 Trustee, the paying Agents, and of the paying agents under the 1947 Indenture, legal expenses, any payment to pension or retirement funds, and all other expenses required to be paid by the Authority under the provisions of the 1947 Indenture, this Agreement or by law, or permitted by standard practices for public utility systems, similar to the properties and business of the Authority and applicable in the

circumstances but shall not include any deposits to the credit of the Sinking Fund, the Reserve Maintenance Fund, the Subordinate Obligations Fund, the Self-insurance Fund, and the Capital Improvement Fund, or the 1947 Sinking Fund or deposits under the provisions of Sections 511, 512, and 513 of the 1947 Indenture.

Not later than April 30th of each fiscal year, PREPA shall notify municipalities of the estimate of the contribution or payment in lieu of taxes mechanism corresponding to the next fiscal year. Said estimate shall be subject to quarterly revisions of PREPA until March 31st of the year to which the contribution or payment in lieu of taxes mechanism corresponds; provided, that, such contribution in lieu of taxes shall be made directly to the municipalities not later than November 30th of the next fiscal year to which said payment corresponds. PREPA shall submit to the Office of the Commissioner of Municipal Affairs, and the Office of the Clerk of the House of Representatives, and the Office of the Secretary of the Senate, not later than December 31st of each year, a comprehensive report on the application of the formula and the amount paid to each municipality in accordance with the payment mechanism established and a copy of its financial statements or report to bondholders, including its gross income, deductions of current charges for determining the net income subject to the calculation of the contribution or payment in lieu of taxes mechanism and a certification in which external auditors of PREPA state the correctness of the calculation of the contribution or payment in lieu of taxes mechanism of the municipalities. Likewise, it shall also inform the sum of the electricity bill of each municipality and the cost of the payment of subsidies and grants, among others. The consumption excess shall be billed to the corresponding municipality by PREPA and such bill shall be paid following the regular debt collection process established by law.

The Energy Commission, with the advice of PREPA and CEPPO, shall adopt, within one hundred eighty (180) days after the approval of this Act, the regulations needed to implement the contribution or payment in lieu of taxes mechanism, or PILT, to municipalities. The Commission shall notify the entities representing the mayors of the beginning of this regulation process in accordance with the established in Act No. 170 of August 12, 1988, known as 'Uniform Administrative Procedures Act.'

…

(d)    Before granting any subsidy or incentive related to the electric power service, any existing and proposed subsidies or incentives shown in PREPA's rate paid or to be paid by nonsubsidized customers shall be evaluated. PREPA shall publish on its website any information about the different subsidies, their legal basis, the approximate cost of each one of them for PREPA, and the characteristics of the customer sectors or universe that benefit from each subsidy.

(e)    PREPA, with the assistance and collaboration of other entities or public instrumentalities, shall oversee that subsidized customers strictly meet the requirements of the subsidy or subsidies they receive from PREPA, in order to ensure that each subsidy fulfills the social purpose for which they were created. PREPA may enter into interagency agreements with other entities or public instrumentalities to define and ensure their collaboration in overseeing subsidized customers. The benefits of any customer who violates the terms and conditions of the subsidy granted shall be eliminated, after an administrative hearing evidencing the violation committed.

(f)    For the purpose of expediting the procurement of funds by PREPA, which allow it to attain its corporate purposes, the bonds issued by PREPA and the income derived therefrom are and shall always be exempt from taxation."

Section 2.11.- A new Section 28 is added to Act No. 83 of May 2, 1941, as amended, to read as follows:

"Section 28.- Citizen Suits.

(a)     All citizens shall have legal standing to initiate civil actions on their behalf against PREPA to require compliance as a result of any action or omission of PREPA with respect to any of the obligations established in Section 6A of this Act. For purposes of this Section, 'citizen' means any natural or juridical person adversely affected, or that could be adversely affected, by an alleged violation of the provisions of this Act, or a mandate or order issued or adopted thereunder."

Section 2.12.- Sections 28 and 29 of Act No. 83 of May 2, 1941, as amended, are hereby renumbered as Sections 29 and 30, respectively.

**CHAPTER III.- Commonwealth Energy Public Policy Office (CEPPO).**

Section 3.1.-  Creation of the Commonwealth Energy Public Policy Office.

(a)     The Commonwealth Energy Public Policy Office is hereby created, hereinafter "CEPPO," as the entity in charge of developing and promulgating the public policy on energy of the Commonwealth of Puerto Rico. All orders or regulations issued by CEPPO shall be on behalf of the "Commonwealth Energy Public Policy Office," and all procedures established by CEPPO shall be on behalf of the Commonwealth of Puerto Rico.

(b)     CEPPO shall have an official seal with the words "Commonwealth Energy Public Policy Office" and the design provided by said office.

(c)     CEPPO shall be constituted by an Executive Director and the personnel hired by him/her.

(d)     CEPPO shall have a website to offer information about its purposes and the measures taken for the development and promulgation of the public policy on energy of the Commonwealth of Puerto Rico.

Section 3.2.- Executive Director of CEPPO.

(a)     The Executive Director shall be appointed by the Governor with the advice and consent of the Senate of Puerto Rico, and may be removed from his/her office by the Governor, at his/her discretion, with or without just cause. The compensation of the Executive Director shall be fixed by the Governor. The Executive Director shall have a college degree in at least one of the following professional fields: engineering, finance, economics, Law, science, and/or planning and public administration. He/she shall also have at least five (5) years of experience in energy-related fields.

(b)     The Executive Director and the members of his/her family unit, as defined in Act No. 1-2012, as amended, known as the "Government Ethics Act of 2011," shall not have direct or indirect interest in, nor contractual relations with PREPA and/or certified electric power companies in Puerto Rico, or entities within or without Puerto Rico, affiliated to or interested in PREPA or in said companies.

Section 3.3.- Personnel of CEPPO.

(a)     CEPPO shall be an individual administrator and its personnel shall be governed by the provisions of Act No. 184-2004, as amended, known as the "Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico." The Executive Director shall be the appointing authority of CEPPO and may hire and appoint the personnel needed for the operation and functioning thereof, which shall be governed by the rules and regulations promulgated by CEPPO. The Executive Director may delegate to any employee the powers conferred hereunder, except for the power to enter into contracts, as well as the power to make appointments and adopt regulations of CEPPO. In the qualifications and description of the duties of the positions, CEPPO personnel system shall be organized in such a way as to promote the hiring of skilled and trained personnel

based on merit through a competition process that enables compliance with the purposes of this Act.

(b)     No CEPPO employee, be it a trust or career employee, may have any relation within the fourth degree of consanguinity and the second of affinity with the Executive Director.

(c)     Any action or omission of the Executive Director and CEPPO personnel in the performance of their duties shall be subject to the restrictions provided in Act No. 1-2012, known as the "Government Ethics Act of 2011," as amended.

Section 3.4.- Duties and Powers of CEPPO.

Through its Executive Director, CEPPO shall have the following duties and powers:

(a)     Implement and promulgate the public policy on energy of the Commonwealth of Puerto Rico through regulations, in all areas that are not in conflict with the regulatory jurisdiction of the Energy Commission. These regulations shall be consistent with the public policy on energy established by legislation;

(b)     Shall be the spokesperson and advisor of the Governor of the Commonwealth of Puerto Rico in any issue related to the public policy on energy, including all matters related to emergencies as established in Section 3.6 of this Act;

(c)     Shall advise the Governor of the Commonwealth of Puerto Rico, the agencies, public instrumentalities and political subdivisions of the Government, institutions, and the general public on the technological, scientific, socioeconomic, and legal aspects germane to the generation, distribution, transmission, use, and consumption of energy in Puerto Rico;

(d)     Make recommendations to the Energy Commission about the rules that shall regulate every company under its jurisdiction, as well as any transaction, action, or omission that has an impact on the electric power grid and infrastructure of Puerto Rico;

(e)     Serve as liaison and coordinating agent with the Department of Energy, FERC, the U.S. Energy Information Administration and/or any other Federal agency that manages energy affairs at the Federal level;

(f)     Develop, establish, and require public and private entities to implement and comply with the policies related to energy resources planning;

(g)     Develop short-, medium-, and long-term energy conservation plans for Puerto Rico, and oversee the development and implementation thereof;

(h)     Review and issue comments on the integrated resource plans of PREPA and any other company under its jurisdiction, and the amendments thereto, ensuring that such plans are consistent with the established public policy on energy;

(i)     Establish through regulations, jointly with the Permit Management Office, the requirements that must be met by the new construction works and renovations in Puerto Rico to promote energy efficiency in said structures;

(j)     Establish through regulations the minimum efficiency standards that the equipment and materials acquired by the Commonwealth of Puerto Rico and all its instrumentalities must meet;

(k)     Develop and recommend to agencies and public entities the necessary procedures to require energy assessment studies similar to those required to assess environmental impact in order to develop a true awareness on energy related problems at all levels and to foster the adequate and optimum use of limited energy resources;

(l)     Gather and publish along with the Energy Commission, timely and reliable information on the generation, distribution, use, and consumption of electric power in Puerto Rico, whether through the use of fuel such as oil and/or its byproducts, natural gas, coal, renewable energy sources, waste disposal, as well as any other mechanism or technology that could be used as an energy resource;

(m)     Gather and present to the Commission all information from the agencies, instrumentalities, and public corporations, from the Judicial Branch and its respective offices and from the municipal governments of the Commonwealth of Puerto Rico, on the implementation of energy efficiency measures, compliance with the energy conservation standards established by law, and the results of the implementation of said measures and standards;

(n)     Establish and review every three (3) years the standard or baseline of energy consumption of the municipalities to verify their compliance with energy conservation and efficiency goals established by Law;

(o)     Identify the maximum percentage of renewable energy that Puerto Rico's electricity infrastructure is capable of integrating and incorporating in a safe and reliable manner and at a reasonable cost, as well as the appropriate technologies and the sites that shall make such integration feasible in accordance with the best interests of the Commonwealth of Puerto Rico, and submit its conclusions to the Energy Commission;

(p)     Adopt regulations about any other initiative that promotes the reduction of energy costs and maximizes energy efficiency;

(q)     Conduct and carry out investigations about electric power companies as requested by the Energy Commission through resolution;

(r)     Serve as liaison and coordinating agent with the U.S. Energy Information Administration and/or any other Federal agency that manages energy affairs in the United States of America;

(s)    File complaints with the Energy Commission against natural or juridical persons or entities when it believes any action or omission inconsistent with the public policy on energy of the Commonwealth of Puerto Rico has been taken;

(t)    Appear before the Energy Commission as a friend of the court or *amicus curiae* in adjudicative cases pending before it. At his/her discretion, the Executive Director may appear before the Commission *motu proprio* or upon party's petition. However, the Commission may require the Executive Director to appear on any adjudicative case before its consideration;

(u)    Solicit, accept, receive, and administer funds and donations from private persons and public entities of the Commonwealth of Puerto Rico, or the United States of America to carry out the purposes of this Act;

(v)    Promote studies involving scientific research, experiments, and evaluation on fossil fuels, alternative and renewable energy sources, including ways to optimize the performance thereof, and to promote the development of initiatives to reduce dependence on fossil fuels;

(w)    Collaborate with agencies, public entities, and private persons or entities working in the development of strategies and policies to promote the adequate use of energy resources in connection with transportation and establish, through regulations, the public policy on the scope of energy transportation;

(x)    Collaborate with the Department of Consumer Affairs (DACO, Spanish acronym) and other public or private entities in matters related to the public policy on energy regarding the import, management, and use of fuels in Puerto Rico;

(y)    Promote collaboration agreements with the academia for the creation and development of university programs and highly specialized areas aimed at providing training on regulatory and energy-related issues, including, but not

limited to, agreements with universities, research centers, or organizations with expertise in the energy field within and outside the Commonwealth of Puerto Rico, as well as to promote collaboration alliances with these institutions and entities for the development of projects and innovative initiatives on energy-related issues;

(z)     Assess, promote, and facilitate the development of non-traditional electric power generation initiatives such as residential generators, electric power generation through agricultural activities, among others, to increase the participation of independent power producers and the availability of energy resources in the system;

(aa)   Promote, in coordination with the agencies and pertinent government instrumentalities such as the Economic Development Bank, Government Development Bank, and the Office of the Commissioner of Financial Institutions, initiatives to keep at the local level the payments made by PREPA and its subsidiaries to their goods and services suppliers;

(bb)   Hire any professional and advisory services needed to carry out its duties and powers;

(cc)   Negotiate and enter into agreements with other public, municipal, state, and Federal entities, and with private persons to carry out research projects, to obtain services in the energy field, or for purposes consistent with the fulfillment of its duties;

(dd)   Enter into collaboration agreements with other agencies or public entities of the Commonwealth of Puerto Rico that promote and promulgate the public policy on energy of the Island;

(ee)   Sue and be sued in complaints or causes of action on its own behalf before the Court of First Instance of the Commonwealth of Puerto Rico against any natural or juridical person that fails to meet or interferes with the requirements, goals, and objectives of this Act;

(ff)    Request the aid of the Commission and/or the General Court of Justice in the event that any person or entity fails to comply with its regulations or orders;

(gg)   Appear before the Legislative Assembly to state its position with respect to any issue comprised within its administrative competence; and

(hh)   Prepare and submit to the Governor and the Legislative Assembly, at the office of the Secretary of the Senate and Clerk of the House of Representatives, an annual report stating the status of the energy situation of the Island, the results of the implementation of the public policy on energy and the results of the efforts made by CEPPO in the development and promulgation of said public policy on energy, as provided in this Act. Said report shall be filed not later than January thirtieth (30th) of each year.

Section 3.5.- CEPPO Regulations.

All regulations to be adopted by the Commonwealth Energy Public Policy Office shall comply with the provisions of Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act."

Section 3.6.- Emergencies.

When the Governor, by virtue of the information submitted by CEPPO, determines that there is an imminent threat of a shortage of any energy resource in Puerto Rico because the basic needs of the Island may not or are not being satisfied and this consequently could affect the general well being of the People of Puerto Rico, the Governor shall declare a state of emergency and issue executive orders as necessary to assure, to the extent possible, the subsistence of the Island, the availability of the essential amounts of such energy resources.

Within the state of emergency that may be declared, it is the public policy of the Government of Puerto Rico that satisfying the needs of the People of Puerto Rico shall be the main priority of every importer, distributor, manufacturer, producer, transporter, and exporter of any matter constituting energy sources.

In applying this Section, the energy issues of the United States of America and the International community shall be taken into account.

In the executive order issued, the Governor shall:

(1)     Regulate natural or juridical persons engaged in the import, distribution, manufacture, production, transportation, and export of any energy resource for the purpose of implementing the public policy set forth above.

(2)     Adopt rules and regulations and issue orders to enforce compliance with this Section. Such rules, regulations, and orders shall be published once in two (2) newspapers of general circulation. Within fifteen (15) days following the promulgation of the rules, regulations, and orders, the Director shall call and hold public hearings thereon, upon previous public notice of the holding thereof. The rules and regulations adopted pursuant to the foregoing shall be effective only for the duration of the emergency situation and may be amended or repealed after the holding of said public hearings. The proposed amendments shall take effect upon the publication thereof for two (2) consecutive days in a newspaper of general circulation.

(3)     Entrust the Office or any other government body with the powers and duties needed to implement the executive orders thus issued.

(4)     Require any board, department, agency or any public instrumentality or political subdivision of the government, as well as any employee or official thereof, to provide the Office with the necessary assistance regarding the use of personnel, office,  equipment, and supplies and other available resources to comply

with this Act and the regulations adopted thereunder. Said government bodies may provide the assistance needed upon previous authorization from the head, secretary, or chief executive officer of the body thus required.

Section 3.7.- CEPPO Budget.

The Executive Director shall request the Office of Management and Budget and the Legislative Assembly to include budget appropriations for CEPPO.

## CHAPTER IV.- Government Energy Efficiency.

Section 4.1.- Energy Savings in the Instrumentalities of the Executive Branch and the Offices of the Judicial Branch.

(a)     In complying with the public policy of the Commonwealth of Puerto Rico, all agencies, instrumentalities, and public corporations of the Executive Branch and all the offices of the Judicial Branch shall take measures and initiatives directed to reducing or eliminating those activities, practices, or uses in their facilities, buildings, and offices that result in the waste or inefficient use of energy resources.

(b)     It shall be the duty and responsibility of all agencies, public corporations, and instrumentalities of the Executive Branch and of the offices of the Judicial Branch to implement strategies directed to reduce the consumption of electric power in the instrumentalities and facilities under their jurisdiction. For such purposes, the agencies, public corporations, and instrumentalities of the Executive Branch and the offices of the Judicial Branch shall execute and implement those measures and initiatives that reduce the total annual electric power consumption to a minimum average saving of forty percent (40%) during the next eight (8) years after the approval of this Act.

(c)     Agencies, instrumentalities, and public corporations, as well as the offices of the Judicial Branch, in coordination with the Commonwealth Energy Public Policy Office, the academia, professional associations with expertise in the

energy field, and the universities shall be entrusted with the planning and implementation of initiatives related to the use of energy in public or leased buildings, as well as with the establishment of a program to maximize the efficient use of energy in all buildings, which shall include, but shall not be limited to, one or several of the following measures:

(1)     the replacement or modification of the lighting and electrical components, devices or systems, including natural lighting systems;

(2)     the installation of renewable energy equipment or solar thermal energy systems;

(3)     the use of automated or computerized energy control systems;

(4)     improvements in indoor air quality and temperature control adjusted to the requirements of the applicable building code;

(5)     changes in operations and maintenance practices;

(6)     replacement or modification of windows or doors; and

(7)     other initiatives that enable the efficient use and a reduction in energy consumption in the building.

(d)     The agencies, instrumentalities, and public corporations of the Executive Branch as well as the offices of the Judicial Branch shall submit to CEPPO, within one hundred eighty (180) days after the approval of the norms and guidelines that CEPPO establishes for such purposes, an action plan stating in detail its annual energy consumption reduction goals, in percentage, using the baseline energy consumption corresponding to fiscal year 2012-13, based on kilowatt-hours consumed. CEPPO shall oversee the energy consumption reduction goals of the Government of the Commonwealth of Puerto Rico; advise the agencies, public corporations, and instrumentalities of the Executive Branch and the offices of the Judicial Branch in drafting and reviewing of plans in order to comply with the operating standards adopted hereunder, and oversee the use of

energy and costs by agencies, instrumentalities, and public corporations and offices. Each quarter, PREPA shall produce and submit to CEPPO information regarding the electric power consumption of every agency, instrumentality, and public corporation of the Executive Branch and office of the Judicial Branch.

(e)     Energy Savings Performance Contracts - In order to comply with the purposes of this Act, the Judicial Branch and every agency, instrumentality, or public corporation of the Executive Branch shall, as a strategy, enter into Energy Savings Performance Contracts (ESPCs), with a qualified energy service provider, as the first alternative to achieve savings in energy, operating, and maintenance costs, as established in Act No. 19-2012, as amended, known as the "Energy Savings Performance Contracts Act." If, after a cost-effective analysis regarding the composition and features of the buildings that house public entities facilities, the entity determines that it is extremely onerous to comply with this provision, it may request an exemption to such effect to the Commission. If an agency deems that it is onerous, or that the implementation of a strategy involving an energy savings performance contract is not cost-effective, it shall notify said fact to CEPPO and shall notify the measures it shall adopt to assure compliance with the provisions of this Act. Any energy savings measure implemented under an energy savings performance contract shall comply with the local building codes and the corresponding CEPPO regulations. CEPPO shall be in charge of approving the regulations needed for the adoption of these types of agreements, in coordination with the pertinent agencies.

(f)     CEPPO, in coordination with the Public Buildings Authority, the General Services Administration, PREPA, and any other pertinent agency or public corporation, shall oversee compliance with energy use efficiency standards for buildings owned by the Government of the Commonwealth of Puerto Rico, as established in this Act and in Act No. 229-2008, as amended, known as the

"Act to Promote the Efficient Use of Energy and Water Resources in New and Existing Buildings of the Commonwealth of Puerto Rico."

(g)     Compliance Oversight.

(1)     It shall be a ministerial duty of every agency, instrumentality, and public corporation of the Executive Branch and the Director of the Office of Courts Administration (hereinafter, OCA) to file with CEPPO every ninety (90) days a report of the results of the implementation of their energy efficiency plans established by law. Provided, that the report to be filed by OCA shall include the results of the energy efficiency plans adopted in each office of the Judicial Branch. CEPPO shall file with the Commission twice (2) a year a report including the consumption history of all the agencies, instrumentalities, and public corporations of the Executive Branch, and the offices of the Judicial Branch, as provided by PREPA (invoices or similar official document), and the data of the measures taken to achieve energy reduction and the savings achieved. Said report shall also identify the agencies, instrumentalities, and public corporations of the Executive Branch, and the offices of the Judicial Branch that fail to comply with their energy efficiency plan and the savings measures established in this Act, state the reasons provided by such agencies, instrumentalities, public corporations or offices for noncompliance with this Act, and specify the corrective measures taken by the agency, instrumentality, public corporation, or office to assure compliance with the purposes of this Act. Both the quarterly report to be filed by agencies, instrumentalities, public corporations, and OCA with CEPPO, as well as the semiannual report submitted by CEPPO to the Commission shall be published on CEPPO's website.

(2)     Every public entity, in coordination with CEPPO, shall be responsible for establishing the energy efficiency programs deemed pertinent to keep a database of information regarding compliance with this Section.

(h)     Transparency and disclosure of energy savings: CEPPO shall issue the semiannual scorecards or evaluations of the energy efficiency activities carried out by each agency, which shall be published on its website. These scorecards shall be based on the savings percentage gathered from the information submitted by public entities, pursuant to the criteria established through regulations by CEPPO.  Such scorecards shall be a measuring tool to promote greater transparency in the use of energy resources in public entities.

(i)      Noncompliance with the energy savings plan: Every agency, instrumentality, or public corporation of the Executive Branch that fails to comply with its annual energy consumption reduction goals, as established in the action plan required by virtue of subsection (c) of this Section, shall have, as penalty, a budgetary cut on the following fiscal year. The budgetary cut shall be equal to the amount used, measured in kilowatt-hours, in excess of the goal established in the plan submitted to CEPPO for that particular year, multiplied by the electricity rate charged by PREPA as of July of the previous year.

CEPPO shall be the entity responsible for overseeing compliance with the government energy efficiency standards and, as such, shall have legal standing to bring any action before the Commission or the Courts, as the case may be, to attain the purposes established herein.

(1)     The Commission shall have primary and exclusive jurisdiction to address cases and disputes arising as a result of noncompliance by any agency, instrumentality, or public corporation of the Executive Branch with the duties and obligations established in this Section.

(2)     Cases and disputes involving a noncompliance of OCA's Director, or a noncompliance of any office of the Judicial Branch with the duties and obligations established in this Section shall be brought before the General Court of Justice.

Section 4.2.- Energy Savings in the Legislative Assembly.

(a)      It shall be the duty and responsibility of the Legislative Assembly to implement strategies aimed at reducing electric power consumption in offices and facilities under its jurisdiction. To such ends, the Legislative Assembly shall take any actions and measures geared toward reducing the annual consumption of electric power, taking into account the savings percentage stated below:

(1)      In the first year of effectiveness of this Act, savings shall be two percent (2%) of the baseline energy consumption which shall be the energy usage corresponding to fiscal year 2012-13, based on kilowatt-hours consumed, according to PREPA's records.

(2)      In the second year of effectiveness of this Act, savings shall be three percent (3%) of the baseline energy consumption which shall be the energy usage corresponding to fiscal year 2012-13, based on kilowatt-hours consumed, according to PREPA's records.

(3)      In the third year of effectiveness of this Act, savings shall be five percent (5%) of the baseline energy consumption which shall be the energy usage corresponding to fiscal year 2012-13, based on kilowatt-hours consumed, according to PREPA's records.

(4)      In the fourth year of effectiveness of this Act, savings shall be seven percent (7%) of the baseline energy consumption which shall be the energy usage corresponding to fiscal year 2012-13, based on kilowatt-hours consumed, according to PREPA's records.

(5)      In the fifth year of effectiveness of this Act, savings shall be eight percent (8%) of the baseline energy consumption which shall be the energy usage corresponding to fiscal year 2012-13, based on kilowatt-hours consumed, according to PREPA's records.

(6)     In the sixth year of effectiveness of this Act, savings shall be ten percent (10%) of the baseline energy consumption which shall be the energy usage corresponding to fiscal year 2012-13, based on kilowatt-hours consumed, according to PREPA's records.

(7)     As of the seventh year of effectiveness of this Act and henceforth, savings shall be twelve percent (12%) of the baseline energy consumption which shall be the energy usage corresponding to fiscal year 2012-13, based on kilowatt-hours consumed, according to PREPA's records.

(b)     Noncompliance with the Energy Savings Plan.- Within a term that shall not exceed one hundred eighty (180) days after the date of approval of this Act, the Legislative Assembly shall complete an inventory of all connections to the electric power system serving it and the offices serviced by each electrical connection. The Legislative Assembly shall establish, through an executive order issued by the presiding officers of both Houses, the offices which shall be responsible for each connection. The offices thus charged with each connection shall be responsible for the meeting the savings goals established in this Section. The inventory of connections shall be published on the websites of the House of Representatives and the Senate of Puerto Rico. Any office of the Legislative Assembly that fails to comply with the savings percentage rate established in subsection (a) of this Section shall have, as penalty, a budgetary cut on the following fiscal year. The budgetary cut shall be equal to the amount of the usage, measured in kilowatt-hours, in excess of the savings percentage rate established in subsection (a) for that particular year, multiplied by the electricity rate charged by the electric power supplier for July of the previous year.

(c)     Every six (6) months, the offices of the Legislative Assembly shall publish an itemization of their energy consumption and how the same compares with the savings projections required under subsection (a) of this Section. At the

beginning of each fiscal year, it shall also publish a comparative chart on energy consumption for the previous three (3) years, as well as a list of the initiatives that were implemented to comply with the energy savings mandate set forth in this Section. This information shall be published on the website of each office of the Legislative Assembly and shall also be submitted to the Commission.

(d)    Cases and disputes involving noncompliance by the Legislative Assembly or any of its offices with the duties and obligations established in this Section shall be brought before the General Court of Justice.

Section 4.3.- Energy Savings in the Municipal Governments.

(a)    PREPA shall bill and charge municipalities for the electric power service, in accordance with the provisions of Section 22 of Act No. 83 of May 2, 1941, as amended. It shall be the duty of all municipal governments to implement strategies aimed at reducing electric power consumption in the offices and facilities under its jurisdiction, as well as to promote the greatest energy efficiency possible.

(b)    Every municipality, whose electric power consumption exceeds the baseline energy consumption established in accordance with Section 2.10 of this Act, shall be responsible for paying PREPA the amount corresponding to the excess. The consumption excess shall be billed to the corresponding municipality by PREPA and such bill shall be paid following the regular debt collection process established by law.

(c)    The Energy Commission shall have primary and exclusive jurisdiction to address any case and dispute involving noncompliance by any municipality with the duties and obligations established in Section 22 of Act No. 83 of May 2, 1941, as amended.

(d)    PREPA shall publish, on its website, a list of the annual payments appropriated to each municipality as a replacement of the PILT, as well as the energy consumption of each municipality in comparison with the contribution

made in the previous year. This information shall be updated annually and published on PREPA's website.

**CHAPTER V.- Net Metering.**

Section 5.1.- Section 2 of Act No. 114-2007, as amended, is hereby amended to read as follows:

"Section 2.- Eligibility.

To be eligible for this benefit, the solar electric equipment, windmill, or other source of sustainable or alternative renewable energy, as such terms are defined in Act No. 83-2010, known as the "Green Energy Incentives Act of Puerto Rico," must meet all the requirements established in the Federal legislation and regulations applicable to net metering programs that allow for interconnection to the electric power grid. Unless otherwise provided, or unless another requirement is specifically imposed through the applicable Federal legislation or regulations to expressly prevent state legislation, every solar electric equipment unit, windmill or other source of sustainable or alternative renewable energy, as defined in Act No. 83, *supra*, must meet the following requirements:

(a)     …

(e)     Be installed by a licensed engineer or an expert electrician, both of whom shall be members of their respective professional associations and, in accordance with Act No. 173 of August 12, 1988, as amended, and Act No. 115 of June 2, 1976, as amended, respectively, must have approved continuing education courses offered by their corresponding professional Associations about the installation of distributed generation equipment based on any type of renewable energy and interconnection, measuring, and testing rules of the National Association of Regulatory Utility Commissioners and the Institute of Electrical and Electronic Engineers. Such professionals shall register with the Commonwealth Energy Public Policy Office, furnishing a certified copy issued by the professional

Association of which they are members, attesting to the approval of the required continuing education courses, which shall be in effect for four (4) years after approval, and by furnishing a copy of their engineer license or expert electrician license, as the case may be;

(f) …"

Section 5.2.- Section 7 of Act No. 114-2007, as amended, is hereby amended to read as follows:

"Section 7.- Education.

The Electric Power Authority and the Commonwealth Energy Public Policy Office shall regularly develop and implement educational campaigns directed to advising consumers on the benefits of net metering and the different technologies available in the market for energy generation from renewable sources.

In addition to these educational campaigns, the Electric Power Authority shall incorporate the following message in the bill sent to customers:

"The installation of equipment to generate energy from renewable sources may help to reduce your electricity bill, and PREPA, through its commercial office or the Internet, shall provide you with information on how to enroll in this program. Furthermore, tax benefits are available to incentivize the purchase of these equipments. Additional information about these equipments is available at the Commonwealth Energy Public Policy Office."

The electricity bill shall include this message at least two inches from where the total amount of the bill appears, and shall be written in a font which is the same size as the largest font used in any text appearing on the bill."

Section 5.3.- A new Section 9 is hereby added to Act No. 114-2007, as amended, to read as follows:

"Section 9.- Public Policy on Interconnection.

It shall be the public policy of the Commonwealth of Puerto Rico to ensure that the procedures for the interconnection of distributed generators to the electric power system of the Electric Power Authority are effective in terms of costs and processing time, in order to promote the development of these types of projects and incentivize economic activity through the reduction of energy costs in the residential, commercial, and industrial sectors. For such reasons, it is hereby established that the procedures for the interconnection of distributed generators with a generating capacity of up to five (5) megawatts (MW) which shall participate in the Net Metering Program, shall be consistent with the Small Generator Interconnection Procedures (SGIP) and the Small Generator Interconnection Agreement (SGIA), provided in Order No. 2006 of the Federal Energy Regulatory Commission (FERC), as amended, and any other future amendments thereto that are adopted by the Energy Commission. PREPA shall uniformly follow the interconnection procedures in all of its regions.

Using the provisions of the SGIP as a model, the Electric Power Authority shall approve expedited processes so that distributed generators with a generating capacity of less than one megawatt (1MW) may connect to the grid, provided, that the technical features of the distributed generator to be interconnected and the existing conditions of the electric power grid thus allow. Provided, further, that for the interconnection of generators with a generating capacity of more than five hundred megawatts (500MW) but less than one megawatt (1MW), the Commission may require the necessary reliability studies.

In the event that the Electric Power Authority refuses to evaluate or determines that it is not possible to evaluate an interconnection request through the fast track process, or when as part of the interconnection evaluation process, or during the negotiation of evaluation studies and/or interconnection agreements,

PREPA determines that it is necessary to implement additional technical requirements and/or improvements to its electric power system, petitioner shall be entitled to challenge said determination or findings through any of the procedures provided in Section 12 of this Act."

Section 5.4.- A new Section 10 is hereby added to Act No. 114-2007, as amended, to read as follows:

"Section 10.- Regulations.

The Electric Power Authority is hereby directed to adopt or modify the regulations needed for faithful compliance with this Act in accordance with the standards and technical requirements established by the Energy Commission. Said regulations shall be promulgated within a term that shall not exceed one hundred eighty (180) days after the approval of this Act.

PREPA shall be required to promulgate regulations for the interconnection of distributed generators with a generating capacity of less than one megawatt (1MW), as well as regulations for the interconnection of distributed generators with a generating capacity between one megawatt (1MW) and five megawatts (5MW) to be connected to sub-transmission facilities. Such regulations shall be consistent with the pubic policy on interconnection set forth in Section 9 of this Act and shall ensure the reliability and safety of the electric power system. Said regulations for the interconnection of distributed generators shall be promulgated within a term of one hundred eighty (180) days after the effective date of this Act, which term shall not be extended. Furthermore, PREPA shall amend any other regulations in effect that govern or are related to the Net Metering Program to conform it to the provisions of this Act and the terms and procedures to be included in the regulations for the interconnection of distributed generators.

In the event that the Electric Power Authority fails to promulgate or modify the regulations for the interconnection of distributed generators on or before one hundred eighty (180) days after the approval of this Act, the evaluation and approval process of applications for interconnection of distributed generators shall be established by the Energy Commission, following the best practices of the industry. Such process shall have the purpose of reducing administrative steps while safeguarding the reliability and safety of Puerto Rico's electric power grid, and ensuring compliance with the public policy on energy of the Commonwealth of Puerto Rico.

Any amendment proposed by PREPA to the regulations for the interconnection of distributed generators must be consulted with the Energy Commission and approved by the same, prior to the public hearing process established in this Act.

The Electric Power Authority shall be required to hold public hearings prior to the approval of any amendment to the regulations for the interconnection of distributed generators. Such public hearings shall not be held within less than thirty (30) days after the publication of the public notice of the proposed amendment to the regulations for the interconnection of distributed generators. The public hearing shall be directed by a special evaluation committee, which shall be composed of a representative of the Electric Power Authority, the Executive Director of CEPPO, and a representative of the renewable energy industry selected by the Commonwealth Energy Public Policy Office, pursuant to Section 11 of this Act. Thirty (30) days after the public hearing process has concluded, the special evaluation committee shall render a joint report whereby it shall endorse or not through a majority vote each one of the proposed amendments and include the recommendations of each of the representatives that constitute the evaluation committee. Should said evaluation committee deem that the text of one or more of

the proposed amendments should be amended, it may propose such modifications to the proposed amendments that have been agreed on through a majority vote. Once the report of the special evaluation committee has been rendered, the Electric Power Authority shall amend the regulations for the interconnection of distributed generators in accordance with those amendments adopted by the evaluation committee through a majority vote. Any amendment proposed by the Electric Power Authority that is not approved by a majority of the evaluation committee shall not be included in the regulations for the interconnection of distributed generators."

Section 5.5.- A new Section 11 is hereby added to Act No. 114-2007, as amended, to read as follows:

"Section 11.- Representative of the Industry - Special Evaluation Committee.

Within one hundred eighty (180) days after the approval of this Act, the Commonwealth Energy Public Policy Office shall publish a public notice in two (2) newspapers of general circulation in Puerto Rico, directed to any natural or juridical person engaged in or representing natural or juridical persons engaged in the development, interconnection, and/or operation of distributed generators participating in the Net Metering Program. Such notice shall inform that anyone who wishes to be considered in the selection process for representative of the industry, who shall be part of the special evaluation committee described in Section 10 of this Act, shall submit his/her qualifications to the Commonwealth Energy Public Policy Office on or before thirty (30) days after the publication of the notice. The Commonwealth Energy Public Policy Office shall publish said notice each year on the anniversary of the approval of this Act.

The Commonwealth Energy Public Policy Office shall evaluate the qualifications submitted by those interested in being considered to represent the private industry in the evaluation committee and shall select said representative on

or before thirty (30) days after the qualification submittal period concludes. Once the selection is made, it shall be notified by means of a courtesy copy to the Electric Power Authority, the person selected, and to any natural or juridical person which had submitted their credentials or those of a candidate for consideration. The representative of the private industry shall hold said position for a renewable term of two (2) years.

During the evaluation and selection process, the Commonwealth Energy Public Policy Office shall give special consideration to those associations that group or represent several persons or entities in matters related to the development, interconnection, and/or operation of distributed generators with a generating capacity between one megawatt (1MW) and five megawatts (5MW) to be interconnected to the electric power grid of the Electric Power Authority, so as to participate in the Net Metering Program. In its notice, the Commonwealth Energy Public Policy shall note the foregoing and shall encourage all those interested in being considered to form consortiums and to jointly submit the person they have selected to be considered by the Commonwealth Energy Public Policy Office.

Those persons selected to participate in the evaluation committee shall not be entitled to request monetary compensation for the duties to be periodically performed as part of the evaluation committee."

Section 5.6.- A new Section 12 is hereby added to Act No. 114-2007, as amended, to read as follows:

"Section 12.- Recourse and Review Process before the Energy Commission.

The Energy Commission shall establish through regulations the rules for the recourse or review process that customers may bring before said Commission if they are not satisfied with a determination of PREPA regarding the interconnection of a distributed generator."

Section 5.7.- Section 9 of Act No. 114-2007, as amended, is hereby renumbered as Section 13.

## CHAPTER VI.- Creation, Structure, Operation, Budget, and General Powers of the Puerto Rico Energy Administration and the Energy Commission.-

### SUBCHAPTER A.- Puerto Rico Energy Administration.-

Section 6.1.- Creation of the Puerto Rico Energy Administration.-

(a)     The Puerto Rico Energy Administration (PREA), hereinafter the "Administration" or "PREA," is hereby created as an independent and autonomous government entity to provide support to the Puerto Rico Energy Commission (PREC), the Commonwealth Energy Public Policy Office (CEPPO), and the Independent Consumer Protection Office (ICPO). The Administration shall be in charge of regulating, overseeing, supervising, and ensuring compliance with the public policy on energy of the Commonwealth of Puerto Rico.

(b)     PREA shall be directed by an Administrator, who shall be responsible for the administration and operations of the Energy Commission, the Commonwealth Energy Public Policy Office, and the Independent Consumer Protection Office created herein. As part of its administrative or operational duties, PREA shall provide these entities with administrative services such as human resource management, procurement, budget, finances, technology, maintenance, and others.

(c)     The Administrator shall be appointed by a majority vote of the Chair of the Energy Commission, the Executive Director of CEPPO, and the Director of the ICPO. The Administrator shall hold a university degree and have experience in management, human resources, procurement, finances, technology or maintenance, among others.

Section 6.2.- Powers and Duties of PREA.

(a)     PREA shall provide support to the Energy Commission, CEPPO, and the ICPO.

(b)     The head of PREA shall be an Administrator, who shall exercise the powers and duties designated to PREA under this Act.

(c)     PREA shall have the following powers and duties:

(1)     Hire and appoint the necessary personnel for its operations and functioning. No PREA employee, whether a regular or trust employee, may have a kinship with the Administrator, the Chair of the Energy Commission, the Commissioners, or the Directors of CEPPO and the ICPO, within the degrees provided in Act No. 1-2012, known as the "Government Ethics Act of 2011," as amended.

(2)     Contract the personnel and professional services of the Energy Commission, CEPPO, and the ICPO in accordance with the rules established by each entity for such purposes;

(3)     Be in charge of all administrative and technical operations;

(4)     Approve and promulgate regulations as are necessary to govern its internal operations, rules, and personnel compensation;

(5)     Sue and be sued in complaints or causes of action before the courts and administrative forums with jurisdiction and competence;

(6)     Enter into contracts and execute any kind of document as necessary or convenient in carrying out its powers; and

(7)     At the request of the Energy Commission, CEPPO, and the ICPO, provide administrative and clerical support in areas such as finance, procurement, and accounting, among others, and in any administrative task other than formulating or implementing public policy.

(d)     All actions, regulations, and determinations of PREA shall be governed by the applicable laws, administrative efficiency, and the public interest.

(e)     PREA shall be considered an individual administrator, as provided in Act No. 184-2004, as amended, known as the "Public Service Human Resources Administration Act."

## SUBCHAPTER B.- Energy Commission.

Section 6.3.- Powers and Duties of the Energy Commission.

The Energy Commission shall have the following powers and duties:

(a)     Oversee and ensure execution and implementation of the public policy on the electric power service of the Commonwealth of Puerto Rico;

(b)     Establish by regulations the public policy rules regarding electric power service companies, as well as any transaction, action or omission in connection with the electric power grid and the electric power infrastructure of Puerto Rico, and implement such public policy rules. The Energy Commission shall draft such regulations in consultation with the Commonwealth Energy Public Policy Office. These regulations shall be consistent with the public policy on energy set forth through legislation;

(c)     Establish and implement regulations and the necessary regulatory actions to guarantee the capacity, reliability, safety, efficiency, and reasonability of electricity rates of Puerto Rico;

(d)     Oversee the quality and reliability of the electric power services provided by PREPA and any other electric power company certified in Puerto Rico;

(e)     Guarantee nondiscrimination in the offering or provision of electric power service by reason of race, color, sex, sexual orientation, gender identity, birth, origin, social status, physical or mental disability, political or religious

beliefs, military or veteran status, or for being a victim or being perceived as a victim of domestic violence, sexual assault, or stalking;

(f)     Formulate and implement strategies to achieve the objectives of this Act, including, but not limited to, attaining the goal of reducing and stabilizing energy costs permanently, and controlling volatility in the price of electricity in Puerto Rico. In exercising its powers and authorities, the Energy Commission shall require that the prices included in any power purchase agreement, wheeling rate, and interconnection charge are fair and reasonable, consistent with the public interest, and compliant with the parameters established by this Commission through regulations;

(g)     Regulate the wheeling mechanism in the Commonwealth of Puerto Rico in accordance with the applicable laws;

(h)     Review and approve policies and strategic plans, as well as short-, medium-, and long-term plans in connection with energy resources integrated planning in Puerto Rico, and oversee compliance therewith;

(i)     Address cases and controversies related to compliance by the municipalities, government agencies, and other public and private sectors with the public policy on energy conservation and efficiency, and grant the proper remedies to ensure the implementation of and compliance with said policy;

(j)     Oversee and address cases and controversies related to the implementation of the mandates established in Act No. 83 of May 2, 1941, known as the "Organic Act of the Puerto Rico Electric Power Authority";

(k)     Review and approve and, if applicable, modify the rates or fees charged by electric power service companies in Puerto Rico in connection with any matter directly or indirectly related to the provision of electric power services;

(l)     Hold public hearings, require and gather any pertinent or necessary information to properly carry out its powers and duties;

(m)     Ensure that the powers and authorities exercised by the Commission over PREPA, including those related to rate review or approval, guarantee that PREPA meets its obligations to bondholders;

(n)     Oversee PREPA's debt issues are in the public interest. Prior to the issue of any PREPA debt and the use proposed for such financing, the Energy Commission shall submit to the Government Development Bank its comments and recommendations with regard to the proposed debt issue;

(o)     Appoint and hire specialized personnel to exercise its powers and duties;

(p)     Require any electric power service company certified in Puerto Rico to keep, maintain, and regularly submit to the Commission those records, data, documents, and plans that are necessary to attain the objectives of this Act;

(q)     Determine and require the type of statistical and numerical information of the Energy Control Center that PREPA shall post every day on its website to keep citizens constantly informed of energy affairs, including, but not limited to, the daily peak demand in Puerto Rico, the daily delivery of energy per electric power generation facility or plant, and any other necessary information or data in connection with the administration of the electric power grid and the operations of electric power transmission and distribution in Puerto Rico;

(r)     Oversee compliance with any mandatory standard or goal under the Renewable Energy Portfolio imposed by legislation or regulations;

(s)     Take any necessary action, in conjunction with the Environmental Quality Board and other regulatory agencies, to regularly evaluate, oversee, and ensure that every certified electric power company complies with Federal and Commonwealth environmental regulations, and with any applicable Federal law;

(t)     Review and approve minimum technical requirements (MTRs), additional technical requirements (ATRs), and any other type of requirement established by PREPA for the interconnection of distributed generators to the electric power grid, and oversee compliance therewith;

(u)     Establish efficiency parameters or standards for the facilities or plants of any electric power generation company to guarantee the efficiency and reliability of the electric power service, or any other efficiency parameter that is consistent with the best practices in the electric power industry as deemed necessary by the Commission and recognized by governmental and nongovernmental organizations specialized in electric power service, and oversee compliance therewith;

(v)     Establish reliability standards for the electric power grid of Puerto Rico in accordance with the parameters recognized by governmental and nongovernmental organizations specialized in electric power service, and oversee compliance therewith;

(w)     Gather and analyze any kind of timely and reliable information on the generation, distribution, use, and consumption of energy, whether by using oil and/or its byproducts such as fuel, through the use of natural gas, renewable energy sources, waste conversion, and any other mechanism or technology that may be used as an energy resource;

(x)     Keep abreast of global trends and technological advances on energy generation, transmission, and distribution, and any other energy-related matter;

(y)     Conduct inspections, investigations, and audits, if necessary, to attain the purposes of this Act. The Energy Commission may delegate this power through resolution. In such resolution, the Energy Commission shall establish the limits and the term of such delegation of powers;

(z)     Conduct periodical studies and investigations on energy generation, transmission, distribution, use, and consumption, whether by using oil and/or its byproducts such as fuel, natural gas, renewable energy sources, waste conversion, and any other mechanism or technology that may be used as energy resource to determine the energy needs of Puerto Rico during any period of time;

(aa)    Review and approve the energy reserve margin established by PREPA and ensure compliance therewith;

(bb)    Establish and develop statistical, economic, and planning programs as are necessary to meet the purposes of this Act, and produce and publish information of a statistical-economic nature on matters pertaining to energy generation, distribution, use, and consumption;

(cc)    Disclose all sorts of public interest information, and develop, regulate, and implement customer service policies with specific parameters, indicators, and procedures that safeguard the rights of all customers and citizen participation in the processes of the Energy Commission;

(dd)    Publish in an orderly manner, to be easily accessed by citizens, every decision issued by the Energy Commission. Such decisions shall be published on the Commission's website readily accessible and available, together with the case record, at the office of the Commission;

(ee)    Create an easily accessible and user-friendly website that contains public interest information, as well as data and information related to the purposes of this Act;

(ff)    Ensure ongoing communication and information sharing between the Energy Commission, the U.S. Department of Energy, the Environmental Protection Agency (EPA), FERC, and any Federal agency or office with jurisdiction over energy affairs;

(gg)   Identify and form partnerships with international organizations or associations specialized in energy affairs and regulation that are willing to collaborate and provide the Energy Commission with assistance in the execution of its powers and functions;

(hh)   Appear before any private entity, public organization, court, board, committee, administrative organization, department, office or agency of the Commonwealth of Puerto Rico or of the United States Government in any hearing, procedure or matter that affects or could affect the objectives, powers or duties of the Energy Commission, the regulations it promulgates or the interests of electric power service customers;

(ii)   Adopt and implement rules and procedures that ensure continuous communication and information sharing between the Energy Commission, the Commonwealth Energy Public Policy Office, and the Independent Consumer Protection Office, PREPA, and any electric power company certified in Puerto Rico;

(jj)   Enter into contracts and subcontracts for any lawful purpose in order to comply with the public policy of this Act, and to carry out special tasks without forgoing its government function and responsibility, which includes contracting the professional services of consultants, economists, and lawyers, among other professional services, to assist it in its regulatory and oversight function;

(ll)[sic] Sue and be sued in complaints or causes of action in its own name against any natural or juridical person that fails to meet or interferes with the requirements, purposes, and objectives of this Act before the Court of First Instance or any other administrative forum of the Commonwealth of Puerto Rico. For such purposes, the Commission shall have legal standing to bring the necessary action before a judicial forum to ensure full compliance with the public policy set forth in this Act;

(mm) Adopt the rules, orders, and regulations needed to carry out its duties, issue orders, and impose fines to comply with the powers granted by law to the Commission, as well as for the implementation of this Act. These regulations shall be adopted in accordance with Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act";

(nn) File recourses, issue orders, and seek and grant any legal remedies that may be necessary to enforce the provisions of this Act, as well as its rules, regulations, orders, and determinations. For instance, among the actions and remedies that the Commission may take and grant are the following:

(1) To hold public hearings;

(2) To order the cease of activities or acts in violation of any provision of this Act or the regulations of the Commission, or any other legal provision whose interpretation and compliance is under the jurisdiction of the Commission;

(3) To impose on and order the parties the payment of costs, expenses, and attorney fees, as well as the payment of expenses and fees for other professional and consulting services, as incurred in a proceeding before the Commission, in accordance with the parameters established in the Rules of Civil Procedure of Puerto Rico;

(4) To direct that all actions shall be taken in compliance with the provisions of this Act, the regulations of the Commission, or any other legal provision whose interpretation and compliance is under the jurisdiction of the Commission;

(5) To issue summons under penalty of contempt which shall be signed by the Commission Chair and served personally or by certified mail with return receipt requested;

(6)    To require the production and inspection of records, inventories, documents, and physical facilities of any juridical persons or entity subject to the jurisdiction of the Energy Commission or the Commonwealth Energy Public Policy Office;

(oo)    Submit annual reports, on or before March 1, to the Governor and the Legislative Assembly on the adequate performance of the duties and functions set forth herein; and

(pp)    Review the final determinations of PREPA with regard to complaints and requests for investigations submitted by its customers.

All orders issued by the Energy Commission shall be on behalf of the "Puerto Rico Energy Commission." All actions, regulations, and determinations of the Commission shall be governed by the applicable laws, the public interest and the interest of protecting the rights of customers or consumers. The provisions of this Act shall be construed liberally in order to achieve its purposes, and whenever a specific power or authority is granted to the Energy Commission, the same shall not be construed as to exclude or impair any other power or authority otherwise conferred to it. The Energy Commission created herein shall have, in addition to the powers specified in this Act, all those additional, implicit and incidental powers that are pertinent and necessary to enforce and carry out, perform, and exercise all the aforementioned powers and to attain the purposes of this Act.

Section 6.4.- Jurisdiction of the Energy Commission.

(a)    The Commission shall have primary and exclusive jurisdiction over the following affairs:

(1)    The approval of rates and charges established by PREPA and any independent power producer in connection with any electric power service, in accordance with the provisions of Section 6.25 of this Act, as well as in cases and disputes related to the rates that PREPA establishes for or collects from its

residential, commercial, or industrial customers, and any case or dispute related to the rates or charges imposed by any independent power producer.

(2)     Cases and disputes related to the review of the electricity bills sent by PREPA to its customers, pursuant to the provisions of Section 6.1 of this Act.

(3)     Cases and disputes regarding noncompliance with the public policy on energy of the Commonwealth of Puerto Rico.

(4)     Cases and controversies claiming PREPA's noncompliance with the mandates of Act No. 83 of May 2, 1941, as amended, known as the "Puerto Rico Electric Power Authority Act," with regard to the electric power service or energy-related matters.

(5)     Cases and disputes regarding wheeling or electric power interconnection between PREPA or its subsidiaries, and any person that is connected, or wishes to connect to the electric power grid within the Commonwealth of Puerto Rico or any person with a direct or indirect interest in these electric power services.

(6)     Cases or disputes regarding agreements between PREPA and independent power producers, and cases and disputes between independent power producers. This includes, but shall not be limited to, power purchase agreements whereby an independent power producer agrees to provide electric power to PREPA to be distributed by the latter, and over cases in which the reasonableness of the interconnection charges or of the terms and conditions of a power purchase agreement are questioned.

(b)     The Energy Commission shall have general jurisdiction over the following matters:

(1)     The Energy Commission shall have regulatory, investigative and adjudicative jurisdiction over PREPA and any other certified electric power company providing services within the Commonwealth of Puerto Rico.

(2)     Any natural or juridical person that violates the provisions of this Act in connection with energy-related matters or the regulations of the Commission, including any natural or juridical person or entity exercising control over electric power services to commit said violations.

(3)     Any natural or juridical person whose actions affect the provision of electric power services, including any person or entity exercising control over such services to affect the provision thereof.

(4)     Any natural or juridical person that carries out any activity for which a certification, authorization or permit issued by the Commission is needed.

(5)     Any natural or juridical person whose actions or omissions are in prejudice to the activities, resources or interests over which the Commission has regulatory, investigative, adjudicative, or oversight powers, including any person exercising control over electric power services in such a manner as to cause said prejudice.

(c)     Complaints for Noncompliance with the Public Policy on Energy:

(1)     At the request of any affected party with legal standing, and as provided in this Act, the Commission may address complaints alleging or claiming that an electric power service company is not complying with the public policy on energy of the Commonwealth of Puerto Rico. Likewise, the Commission may address those complaints regarding transactions or juridical acts related to the purchase of energy or fuel; agreements between PREPA and independent power producers; cases and controversies among independent power producers; wheeling

rates and interconnection charges; and cases and controversies regarding wheeling or electric power interconnection between PREPA or its subsidiaries, and any person that is connected, or wishes to connect to the electric power grid within the Commonwealth of Puerto Rico or any person with a direct or indirect interest in these electric power services.

(2)    Any complaint submitted under this Section shall be filed under oath and specifically state the nature of the claim and remedies requested.

(3)    Once the complaint is filed, the Commission may request, during its evaluation and adjudication process, the respondent party to furnish any information it deems pertinent to the controversy. This information shall be available to the petitioning party; however, the Commission may, at the request of any interested party and pursuant to the provisions of Section 6.15 of this Act, protect information deemed confidential or privileged.

(4)    The Commission shall exercise jurisdiction over any matter that is not in conflict with Federal statutory and regulatory provisions as well as with those preempted by Federal standards.

Section 6.5.- Organization of the Energy Commission.

(a)    The Commission shall be composed of two (2) associate commissioners and one (1) Chair, all of whom shall be appointed by the Governor with the advice and consent of the Senate of Puerto Rico. Commissioners shall receive the same compensation established for a judge of the Court of Appeals of Puerto Rico.

(b)    Two (2) of the three (3) commissioners shall constitute a quorum at a plenary meeting of the Commission. The meetings of the Commission shall be scheduled by its Chair.

(c)     The decisions of the Commission shall be made by the consent of two (2) of its three (3) commissioners. In accordance with the provisions of Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedure Act," the decisions or final resolutions of the Commissions in adjudicative procedures shall be subject to review by the Court of Appeals of Puerto Rico, unless a law of the United States Government has granted jurisdiction to a Federal agency or entity or the U.S. District Court for the District of Puerto Rico.

(d)     The Commission shall have an official seal with the words "Puerto Rico Energy Commission" and the design prescribed by said Commission.

Section 6.6.- Commissioners.

(a)     The three (3) commissioners shall be professional engineers licensed in Puerto Rico, and preferably holding a master's or doctoral degree in engineering, or lawyers authorized to practice, or professionals preferably holding a master's or doctoral degree in economy, planning, or finances or professionals preferably holding a master's or doctoral degree in energy-related fields. Not more than two (2) commissioners may practice the same profession. In addition to the education and professional requirements, the three (3) commissioners of the Energy Commission shall have at least five (5) years of experience and be knowledgeable in energy-related matters, and at least ten (10) years of experience practicing their professions.

(b)     Commissioners shall not have any direct or indirect proprietary interest in the juridical persons subject to the jurisdiction of the Energy Commission or the Commonwealth Energy Public Policy Office, or in entities within or without Puerto Rico affiliated to or with interest in said juridical persons.

(c)     No commissioner may participate in any matter or dispute in which a party to such matter or dispute is a natural or juridical person with whom he/she has had a contractual, professional, work, or fiduciary relation within two (2) years before his/her appointment. Furthermore, no commissioner shall represent, after ceasing his/her functions, any person or entity before the Commission within two (2) years following his/her separation from office. Any actions taken by a commissioner in discharging his/her duties shall be subject to the restrictions provided in Act No. 1-2012, known as the "Puerto Rico Government Ethics Act of 2011," as amended.

(d)     The first commissioners appointed by virtue of this Act shall hold their office for the following terms: the Chair shall hold office for six (6) years, one commissioner for four (4) years; and one commissioner for two (2) years. The successors of all commissioners shall be appointed for six (6) years. Any person designated to fill a vacancy shall be appointed for the remainder of the unexpired term of the commissioner being replaced. Upon the expiration of the term of office of any commissioner, he/she may continue carrying out his/her duties until his/her successor is appointed or up to six (6) months after the expiration date of his/her term. Terms shall begin as of the expiration date of the preceding term. Commissioners may only be removed for just cause.

(e)     The Commission shall hold at least three (3) public meetings every month, notify in advance the date of the holding thereof, and broadcast them live on the Commission's website. The minutes of the public meetings shall be posted on the Commission's website to be freely accessed by the people.

(f)     Each commissioner shall be entitled to select, and require the Administrator of PREA to hire and appoint, one (1) administrative assistant and one (1) trusted advisor.

Section 6.7.- Powers and Duties of Commissioners.

Commissioners shall have the following powers and duties:

(a)     To act as the governing body of the Commission;

(b)     Establish the Commission's general policy to attain the objectives of this Act;

(c)     Implement the public policy and objectives of the Commission in accordance with this Act;

(d)     Authorize and oversee the implementation and the results of the annual work plan of the Commission;

(e)     Draft, adopt, and amend rules and regulations to govern the internal operations and the discharge of the powers and duties thereof, as well as the norms needed for the functioning, operations, and administration of the Commission;

(f)     Keep complete records of all proceedings before its consideration and make them available to the public on the Commission's website;

(g)     Ensure the proper administration of the Commission's operational budget;

(h)     Impose administrative fines within the parameters established by this Act;

(i)     Appear before judicial, legislative, and administrative forums in representation of the Commission;

(j)     Hire and appoint personnel as necessary for the operations and functioning of the Commission which shall be governed by the rules and regulations promulgated by the Commission using as guidelines the criteria provided in Section 6 of Act No. 184-2004, as amended, known as the "Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico." In the description of the duties of the positions, the personnel system shall be organized so as to promote the hiring of skilled and trained staff through a

competition process that enables compliance with the purposes of this Act. Any recruitment process shall be carried out with the support of PREA;

(k)     Hire trust employees, the number of which shall not be greater than fifteen percent (15%) of the total number of career positions in the Commission. This limitation shall not apply to commissioners who, in accordance with this Act, are authorized to hire one (1) trust employee per commissioner as expert advisor. Trust employees shall be selected taking into consideration the capability, education, and professional experience required to assure an effective performance of the duties of the position. No employee of the Commission, be it of trust or career, may have any relationship within the degrees provided in Act No. 1-2012, known as the "Government Ethics Act of 2011," as amended, with the Director or the members of the Commission. Any recruitment process shall be carried out with the support of PREA;

(l)     Delegate the powers and duties provided in subsections (j) and (k) of this Section to the Executive Director of the Commission through resolution.

Section 6.8.- Executive Director of the Energy Commission.

(a)     A majority of the commissioners shall select the Executive Director of the Commission based on his/her proven education and professional experience in energy-related matters or public administration.

(b)     The Executive Director and the members of his/her family unit, as defined in Act No. 1-2012, as amended, known as the "Government Ethics Act of 2011," shall not have any direct or indirect interest in, nor contractual relation whatsoever with PREPA and/or any other certified electric power company subject to the jurisdiction of the Commission, nor in entities within or without Puerto Rico affiliated to or with interest in PREPA or said companies. The Executive Director shall not, once his/her functions have ceased, represent any person or entity before said Commission in relation to any issue in which he/she participated while serving

on the Commission, or with respect to any other issue within two (2) years after separation from office. Any action taken by the Executive Director in discharging his/her duties shall be subject to the restrictions provided in Act No. 1-2012, as amended, known as the "Puerto Rico Government Ethics Act of 2011."

(c)     The Executive Director shall have the following duties:

(1)     Coordinate with the Administrator of PREA all that pertains to administrative and clerical support in areas such as finance, procurement, accounting, and in any administrative task other than formulating or implementing public policy;

(2)     Establish, at his/her discretion, advisory groups to provide the Commission with specialized technical advice on energy regulation topics and provide for the operations thereof;

(3)     Delegate, in the event of his/her absence or temporary inability to fulfill his/her duties, to a trusted official of the Commission, until the cause or circumstance that required said temporary designation ceases or is corrected.

Section 6.9.- Chair of the Energy Commission.

The Chair of the Energy Commission shall have the following powers and duties, in addition to any other power conferred to him/her by a provision of law or regulations:

(a)     Preside over, call, and establish the agenda for all the meetings of the Commission;

(b)     Identify and hire personnel, contractors, and resources as necessary to exercise the powers and duties of the Commission, and require the Executive Director of PREA to appoint or hire such personnel, contractors, or resources;

(c)     Represent the Commission in all matters related to legislation, legislative reports, and communications with other State or Federal agencies; and [sic]

(d)     Represent the Commission in activities, communications and agreements with other heads of agencies of the Commonwealth of Puerto Rico in matters under the jurisdiction of the Commission;

(e)     Appear before any private entity, public organization, court, board, committee, administrative organization, department, office or agency of the Commonwealth of Puerto Rico or of the United States Government in any hearing, procedure or matter that affects or could affect the agency;

(f)     Delegate to the Executive Director or other commissioner the powers established in this Section.

Section 6.10.- Personnel of the Energy Commission.

(a)     The Commission shall have the necessary administrative and technical personnel to attain the purposes of this Act.

(b)     The Commission's technical personnel shall be specialized in the matters under the jurisdiction of the Commission and carry out the tasks and functions delegated to them by the Commission.

(c)     The Commission shall promulgate a code of ethics to regulate the relations between its personnel and the companies under the regulatory jurisdiction of the Commission.

(d)     The activities of all the personnel of the Commission shall be subject to the restrictions provided in Act No. 1-2012, as amended, known as the "Government Ethics Act of 2011."

Section 6.11.- Delegation of Powers.

(a)     The Commission may issue orders to assign, refer, or delegate the resolution of any adjudicative or non-adjudicative matter to one or more of the commissioners composing the Commission in question. Said orders shall designate the commissioners who shall assume the powers of the Commission expressly delegated to them. Commissioners shall have the power to:

(1)     Administer oaths and take depositions;

(2)     Issue summons;

(3)     Receive and evaluate evidence;

(4)     Preside over hearings; and

(5)     Hold conferences to simplify procedures.

Any order issued by one or more commissioners pursuant to this Section shall be notified to the Commission before it is made public, and the Commission may modify, amend, or render the order ineffective by a majority vote of its commissioners.

(b)     Hearing Officers.-

The Commission shall have the authority to refer or delegate any adjudicative matter to hearing officers, who shall be trusted employees or contractors of PREA. The Commission shall assign and distribute among its hearing officers the tasks and matters to be delegated by the Commission, after which hearing officers shall be responsible for issuing recommendations to the Energy Commission regarding the adjudication of the case or a procedural incident subject to said assignment, referral, or delegation by the Commission. In issuing a decision, the Commission shall have full discretion to accept or reject the recommendations of hearing officers. Any hearing officer appointed to preside over a hearing or investigation shall have the powers expressly delegated to him/her by the Commission in the designation order.

Hearing officers shall be appointed and carry out their duties as provided in Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act of Puerto Rico."

(c)   Administrative Judges.-

As provided in this subsection, the Commission shall be empowered to delegate to administrative judges with full decision-making powers, the adjudication of any matter, case, and controversy on behalf of the Energy Commission, as these may be delegated in accordance with the provisions of this Section. Administrative judges may be trusted employees or contractors of the Commission. The Commission shall be empowered to assign and distribute among the administrative judges the issues, cases, or disputes delegated in accordance with the provisions of this subsection.

In exercising its discretion, the Energy Commission may delegate to administrative judges cases and disputes related to the review of PREPA's customers electricity bills; cases or disputes alleging noncompliance by an electric power service company with the regulations of the Energy Commission in connection with the quality of the services provided to its customers; cases or disputes alleging noncompliance by PREPA or an electric power service customer with its obligations in connection with the interconnection of distributed generation systems or any other matter that the Commission may provide. The Energy Commission may delegate to its administrative judges any case or dispute in which the total value or cost of the remedies sought is twenty-five thousand dollars ($25,000) or less.

Administrative judges shall be appointed and shall carry out their duties as provided in Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act of Puerto Rico."

Section 6.12.- Office of the Energy Commission.

In order to promote greater transparency and autonomy in the exercise of its functions, the offices and facilities of the Commission shall operate separately from those of any natural or juridical person under its jurisdiction. Such offices

shall be located in existing facilities belonging to the Commonwealth of Puerto Rico.

Section 6.13.- Certification.

(a)    Every electric power company in Puerto Rico shall obtain a certification from the Energy Commission in order to provide services. The Commission shall not deny an application for certification to provide services for arbitrary or discriminatory reasons, or for the purpose of preventing competition.

(b)    As of the approval of this Act, the Commission shall adopt the necessary regulations to specify the form, deadline, content, and procedures to file applications for certification, which shall be applied uniformly in accordance with the provisions of Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act." Such procedures shall ensure that the application for certification is thoroughly and diligently evaluated within a reasonable short timeframe. Every application filed with the Commission shall be considered granted thirty (30) after the date on which such application was filed, except when, before such term elapses, the Commission orders the stay of such term to obtain more information that enables it to consider the application on its merits.

(c)    Every applicant shall provide attesting evidence of his/her moral probity, financial solvency, and technical experience in the field for which a certification is requested. The Commission shall issue a certification if it determines that, in addition to substantially meeting the uniform criteria thus established, the certification is consistent with the mandate of the applicable legislation, the applicable rules and regulations, the objectives of the public interest sought by this Act, and the protection of the interests of consumers.

(d)     Every electric power company operating in Puerto Rico before the effective date of this Act may apply for a certification within ninety (90) days after the adoption of the certifications regulations drafted and implemented by the Energy Commission. Once the application is submitted, it shall be granted automatically. It shall not constitute a violation of this Act, if an electric power company continues providing the service it provided:

(1)     Before the adoption of the regulations required by this Section;

(2)     Before the due date to submit the application for certification as provided in this Section; and/or

(3)     Before the Commission acts on the application filed by said natural or juridical person to provide said services.

(e)     The Commission, in accordance with the provisions of this Act, may modify, suspend, or revoke certifications issued for just cause to an electric power company after it is notified and given an opportunity to present its arguments in a public hearing or meeting with the Commission.

(f)     The Commission may charge a just and reasonable fee for the evaluation, processing, and issue of certifications to defray administrative expenses incurred in said processes.

Section 6.14.- Amendment, Suspension, and Revocation of Decisions, Orders, and/or Certifications.

(a)     The Commission may revoke any decision, order, or certification on the following grounds:

(1)     Knowingly making false or fraudulent statements on the application or any written statement of facts filed in connection with such application;

(2)      Willingly and repeatedly omitting or failing to substantially comply with the decision, order, or certification of the Commission;

(3)      Violations of or failure to comply with any of the provisions of this Act;

(4)      Violations of or failure to comply with any of the rules, orders or regulations of the Commission; or

(5)      Refusal to provide services to any citizen for reason of race, color, sex, sexual orientation, gender identity, birth, origin, social status, physical or mental disability, political or religious beliefs, military or veteran status, or for being a victim or perceived to be a victim of domestic violence, sexual abuse, or stalking.

(b)      The Commission may order said person to cease and desist said conduct as provided in subsection (a) of this Section.

(c)      Prior to revoking a decision, order, or certification pursuant to the provisions of subsections (a) and (b) of this Section, or issuing an order to cease and desist under the provisions of this subsection, the Commission shall notify the grounds for its decision to the affected party through an order to show cause of the reasons for which said decision, order, or certification should not be revoked. The order to show cause shall require the affected party to appear before the Commission on the date and place indicated thereon to present evidence on the issue specified in the order. The date fixed for appearance shall not be less than ten (10) days from the date of the notification, except in situations where there may be risks to life or property, in which case the order shall provide a shorter term.  After the affected party appears before the Commission, if the latter determines that a revocation order or an order to cease and desist should be issued, it shall do so along with a detailed account of its findings of facts and grounds for the issue

thereof and specifying its effective date. Said order shall be notified to the affected party within ten (10) days from the date of issue of such determination.

(d)     The Commission shall have a thirty (30)-day term to notify and issue a final determination suspending, amending, or revoking any decision, order, or certification. Notice shall be provided in writing stating the reasons on which said determination is based.

Section 6.15.- Rules of Confidentiality.

If any person who is required to submit information to the Energy Commission believes that the information to be submitted has any confidentiality privilege, such person may request the Commission to treat such information as such, subject to the following:

(a)     If the Energy Commission, after the appropriate evaluation, believes such information should be protected, it shall grant such protection in a manner that least affects the public interest, transparency, and the rights of the parties involved in the administrative procedure in which the allegedly confidential document is submitted.

(b)     To such purposes, the Energy Commission shall provide access to the document or the privileged portion of the document only to the lawyers and external consultants involved in the administrative process after the execution of a confidentiality agreement.

(c)     The Energy Commission shall keep the documents submitted for its consideration out of public reach only in exceptional cases. In these cases, the information shall be duly safeguarded and delivered exclusively to the personnel of the Energy Commission who needs to know such information under nondisclosure agreements. However, the Energy Commission shall direct that a non confidential copy be furnished for public review.

(d)    The Energy Commission shall swiftly act on any privilege and confidentiality claim made by a person subject to its jurisdiction by means of a resolution to such purposes before any allegedly confidential information is disclosed.

Section 6.16.- Budget and Regulatory Fees.

(a)    The Commission shall impose and collect fees pursuant to the provisions of this Section in order to generate sufficient income to:

(1)    Cover the operating expenses of the Commission and CEPPO in fulfilling its responsibilities under this Act.

(b)    The annual fee shall be fixed by the Commission proportionally on the basis of the gross income earned by any person under the jurisdiction of the Commission from the provision of electric power services, or electric power transmission services. These fees shall be paid to the Commission on a quarterly basis, pursuant to the regulations promulgated by the same. The Commission shall review annually the fee to be imposed on persons under its jurisdiction, in accordance with this Section.

(c)    Every year, PREPA shall set aside five million eight hundred thousand dollars ($5,800,000) from its income to be transferred to a special account established by the Department of the Treasury to defray the operating expenses of the Energy Commission. Beginning on Fiscal Year 2014-2015, PREPA shall annually remit from these resources the sum of two million nine hundred thousand dollars ($2,900,000) to the Department of the Treasury on or before June 1st. The balance of the two million nine hundred thousand dollars ($2,900,000) shall be remitted to the Department of the Treasury on or before December 1st of each year.

(d)     Any other person or electric power service company that earns profit from the generation of electric power shall pay a fee to the Commission that shall not exceed point twenty-five percent (.25%) of its annual gross income earned from the provision of such services in Puerto Rico. No electric power service company that has entered into a power purchase agreement, an interconnection agreement, or a wheeling agreement with PREPA may claim a refund for or include the expenses incurred in connection with the annual fee paid to the Commission in the computation of rates, the capacity fee, energy fee or any other fee or sum of money that such electric power service company collects from PREPA under such power purchase agreement, interconnection agreement, or wheeling agreement. This provision shall apply to any electric power company under the jurisdiction of the Commission, insofar as it does not impair the contractual obligations with existing cogenerators arising from any agreements that are in effect as of the approval of this Act.

(e)     The Secretary of the Treasury shall cover into a special account denominated as the "Special Energy Commission Reserve Fund," the moneys collected by virtue of this Act, which shall be used solely and exclusively to defray the operating expenses of the Commission and shall be deemed to be *de jure* allocated for such purposes.

(f)     Any person under the jurisdiction of the Commission shall submit the information required by the Commission in the manner and on the forms that the Commission prescribes so that it can identify the amount of the fees established under this Section.

(g)     Persons under the jurisdiction of the Commission shall comply with and satisfy the payment of the fees imposed within a term that shall not exceed thirty (30) days after notice to such purposes. Any delay in the payment of said fees shall be subject to the payment of interest and penalties as determined by the

Commission through regulations. The payment of such fees shall be made in the manner that the Commission specifies in any notice of fees.

(h)     The operating expense budget of the Commission shall be set aside on a separate item in the General Expense Budget of the Commonwealth of Puerto Rico.

Section 6.17.- Audited Statements.

Within one hundred eighty (180) days after the approval of this Act, any person under the jurisdiction of the Commission shall submit audited statements to the Commission so that the latter may determine the amount of the contribution to be made by each person according to the applicable percentage thereof.

Section 6.18.- Electronic Filing System.

PREA shall establish an electronic filing system whereby persons may access a website to file documents with and bring an action before the Energy Commission; and where the parties may submit any pleadings and documents pertaining to the case; and the Commission may notify the parties of any orders or resolutions issued. For the purpose of facilitating access to the electronic filing system to persons who lack the means or skills to use the electronic filing system, the Commission shall enter into interagency agreements with any other instrumentality of the Government of the Commonwealth of Puerto Rico or nonprofit organizations so that these may offer help to the people who resort to their main or regional offices seeking assistance for the use of the website and the electronic filing system, and provide the people with one or more computers to carry out the electronic filing process.

Section 6.19.- Scheduling and Holding of Administrative Hearings.

The Commission shall prescribe through regulations an administrative hearing circuit system that allows for the scheduling and holding of administrative hearings on pending cases before the Commission in the different regions of the Commonwealth of Puerto Rico.

Section 6.20.- General Provisions on Administrative Procedures.

Any process for which this Act does not specifically provide, shall be governed by Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act." By virtue thereof, the Uniform Administrative Procedures Act of Puerto Rico shall govern all procedures for the adoption of regulations, adjudicative procedures, judicial review, as well as the procedures to grant franchises, certifications, complaints of subscribers and between electric power companies, and the procedures to conduct inspections. Furthermore, the decisions and orders of the Commission shall be subject to review by the Court of Appeals of Puerto Rico.

## SUBCHAPTER C.- Electric Power Service Companies.

Section 6.21.- General Obligations of Electric Power Service Companies.

(a)    Every certified electric power company shall provide customers or consumers with an adequate, safe, reliable, efficient, and nondiscriminatory electric power service;

(b)    Every rate or charge required or collected for any service provided or to be provided, and the rules adopted by every electric power service company regarding the provision of such services shall be just, reasonable, and nondiscriminatory; and

(c)    No certified electric power company shall give unjust or unreasonable preference or advantage to any person; neither shall such company subject any person to unjust or unreasonable prejudice or disadvantage in any aspect.

Section 6.22.- Information to be Filed with the Energy Commission.

(a)    Every electric power service company shall submit the following information to the Energy Commission, subject to the terms provided by the latter:

(1)    Plans that establish the parameters and goals of the company to meet the electricity needs of the Commonwealth of Puerto Rico within a reasonable period of time;

(2)    Future operating budgets during the period of time determined by the Commission through regulations;

(3)    Studies on service costs that show the relation between the current costs of the company and the income earned on account of rates or charges;

(4)    Energy demand, efficiency, and/or conservation management plans and goals; load management programs and technologies; gas emission or environmental pollutants reduction; resource diversification; and use of renewable energy sources, as applicable;

(5)    Reliability reports on the system's average frequency;

(6)    Reports describing applications for wheeling filed with PREPA and the results of the applications; and

(7)    Any other specific information, data, document, or report that the Commission may deem necessary in the exercise of its duties, as applicable to the electric power company.

Section 6.23.- Integrated Resource Plan.

(a)    PREPA, as provided in Act No. 83 of May 2, 1941, as amended, known as the "Organic Act of the Puerto Rico Electric Power Authority," shall submit to the Commission an Integrated Resource Plan (IRP) describing the combination of energy supply and conservation resources that satisfies in the short-, medium-, and long-term the present and future needs of the energy system both of Puerto Rico and of their customers at lowest cost possible.

(b)     PREPA shall submit its first IRP to the Commission within one (1) year after July 1st, 2014.

(c)     Initially, the Commission, in collaboration with the Commonwealth Energy Public Policy Office, the Independent Consumer Protection Office, and the comments of interested persons and organizations shall review, approve, and modify said plans, as applicable, to ensure full compliance with the public policy on energy of the Island and the provisions of this Act.

(d)     After the approval of the integrated resource plans, the Commission shall supervise and oversee compliance therewith. Every three (3) years, the Commission shall carry out another review process, and if applicable, modify such plans, as well as issue and post on its website, a detailed report showing compliance with integrated resource plans and the modifications made thereto after the review process.

Section 6.24.- Power to Investigate.

(a)     The Energy Commission shall visit the facilities of certified electric power companies, from time to time, and investigate the necessary documents to verify compliance with the orders, rules, and regulations established by the Commission. The Commission may enter said facilities during reasonable hours to conduct tests and audits, and may install and use in said facilities any device needed to carry out its duties, as well as to take the necessary measures to ensure compliance with the established rules.

(b)     The Commission may examine under oath, whether through a formal interview or summons, all officials and employees of a certified electric power company, and may require the presentation of documents and the appearance of witnesses to obtain the information needed to enforce the provisions of this Act.

(c)     The Commission may investigate and determine the value of useful property in the facilities of all certified electric power companies.  To conduct this evaluation, it shall take into account the original cost of the property, the depreciation thereof, and any other valuation factor that the Commission may deem to be related to such value.

(d)     If the Commission obtains information about any undue situation, action, or omission that is outside of its jurisdiction, such situation shall be duly referred along with its corresponding account of facts to the agency or entity with competent jurisdiction in order to be duly addressed.

(e)     The Commission shall have jurisdiction to investigate any matter related to compliance with the laws that apply to the enforcement of the public policy on energy and the purposes of this Act.

Section 6.25.- Review of Electricity Rates.

(a)     In General.- The Commission shall be in charge of reviewing and approving PREPA's rates for energy use and consumption and the use of the electric power grid. The Commission shall ensure that all rates are fair and reasonable.

(b)     Initial Rate Review.- The rates in effect as of the approval of this Energy Transformation and RELIEF Act shall continue in effect until the same are reviewed by the Commission in accordance with the provisions of this Act. The first rate review process shall begin not later than one hundred eighty (180) days after the approval of this Act and shall conclude not later than six (6) months after it began. In carrying out such process, burden of proof shall lie on PREPA, which shall be required to show that such rate is just and reasonable. The Commission shall evaluate all the necessary information, which shall include, but shall not be limited to evidence and documents related to:

(1)    the efficiency, capacity, and suitability of the facilities and service of the certified electric power company;

(2)    the expenditures related to PREPA's debt repayment;

(3)    direct and indirect costs related to the generation, transmission and distribution of energy, including stranded costs and costs attributable to the loss of energy due to theft or inefficiency;

(4)    all charges and costs included under the energy purchase adjustment and the fuel purchase adjustment items as of the effective date of this Energy Transformation and RELIEF Act;

(5)    PREPA's capacity to improve the service provided and its facilities;

(6)    the conservation of energy and the efficient use of alternative energy resources; and

(7)    data related to the effect of special laws, subsidies, and contributions; and

(8)    any other data or information deemed necessary to evaluate and approve rates.

The approved rate shall be itemized in the bill according to the terms of the new transparent bill provided in Section 6C of Act No. 83 of May 2, 1941, as amended. The Commission shall guarantee that the approved rate will be sufficient to: (i) guarantee payment of principal of and interest on bonds and other financial obligations of PREPA; and (ii) shall comply with the terms and provisions of the agreements entered into with or in benefit of buyers or holders of any bonds or other financial obligations of PREPA. The Commission shall establish a fixed charge on the rate that clearly shows the amount that customers shall pay on account of PREPA's obligations to bondholders. The Commission

shall review this charge in light of PREPA's financial obligations, so that it is sufficient to guarantee the annual payment of PREPA's obligations to bondholders.

The Commission shall approve under the "fuel adjustment" and "energy purchase adjustment" items only the portion of the costs directly related with the purchase of fuel and the purchase of energy, respectively. No other expense or charge may be denominated nor included as "fuel adjustment" or "energy purchase adjustment."

The Commission shall issue an order establishing PREPA's initial rate in the format of the new transparent bill established in Section 6C of Act No. 83 of May 2, 1941, as amended. Every rate modification request approved by the Commission shall comply with subsection (c) of said Section. During the initial rate review process, the Commission shall approve a mitigation plan if it deems it necessary to ensure that PREPA's costs, such as energy theft, account receivables, and losses attributed to the inefficiency of the electric power system that are inconsistent with the industry's standards, are reduced to meet such parameters within a term that shall not exceed three (3) years. The Commission shall periodically review and publish on its website PREPA's compliance with the mitigation plan and the progress of the mitigation plan.

(c)     Modification of Approved Rate.- Every process to request a change in the rate approved by the Commission shall be filed with the Commission. The request shall state the grounds for the change, the effect of such modification in the income and expenditures of PREPA, and any other information requested by the Commission through regulations or request. The Commission may initiate, *motu proprio*, or at the request of the Independent Consumer Protection Office or any other interested party, the rate review process when in the best interest of customers. Any change in rate proposed by a certified electric power company, whether to increase or decrease the same, shall undergo a discovery and public

hearing process to be held by the Commission to determine whether the proposed change is just and reasonable. The review process and the issue of the order shall not exceed six (6) months after the filing of the request.

(d)     Temporary Rate.- Within thirty (30) days after the filing of rate modification request, the Commission may conduct an evaluation to determine whether a temporary rate should be established. The Commission shall exercise its discretion in establishing a temporary rate. If the Commission establishes a temporary rate, such rate shall take effect sixty (60) days after the filing of the request. Said temporary rate shall remain in effect during the period of time needed by the Commission to evaluate the rate modification request proposed by PREPA and issue a final order.

(e)     Rate Modification Approval.- If after the public hearing process, the Commission determines that the proposed rate change is just and reasonable, it shall issue an order to such purposes and notify the rate change on its website, along with the new itemization of the transparent bill. The approved new rate shall take effect sixty (60) days after the Commission issues the order. If the Commission determines that the proposed rate change is unjust or unreasonable, it shall issue a duly grounded order. In such case, the rate modification subject of the request shall not proceed and the rate whose modification was sought shall continue in effect. In the order issued after the rate review process, the Commission shall direct PREPA to adjust customer's bills to refund, credit, or charge any discrepancy between the temporary rate established by the Commission and the rate change.

(f)     Inaction of the Commission.- If the Commission fails to take action with regard to a rate review request within thirty (30) days after the filing thereof, the modified rate subject of the request shall take effect immediately as a temporary rate. The Commission shall continue the review process and issue the

corresponding order within the term specified in this Section. If the Commission fails to act within the one hundred eighty (180) day-term established in this Section, the modified rate shall become final and the Commission shall lose jurisdiction to review same.

(g)     The Commission shall publish on its website an itemization of all rates or changes approved or modified.

Section 6.26.- Procedural Rules on Customer Complaint Resolution.

(a)     Within sixty (60) days after the approval of the Commission's regulations that shall govern the review procedure established in this Section, every certified electric power company shall file with the Energy Commission the procedure to be followed for the resolution of customer complaints. Once such rules are filed, the Commission shall have thirty (30) days to approve the same. If the Commission does not approve such rules, it shall identify any deficiencies in the procedural rules proposed by the electric power service company and require them to be amended in accordance with the findings of the Commission.

(b)     Once the Commission approves the procedural rules of a certified electric power service company, such company shall publish the approved procedural rules on its website.

Section 6.27.- Procedure to Request Review of Electricity Bills and Rules for Service Suspension.

(a)     Before resorting to the Energy Commission to request review of an electricity bill, every person shall exhaust, before the certified electric power service company that issued the same, the informal administrative procedure established in this Section and the regulations adopted by the Commission. The provisions of Chapter III of Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act," shall not apply to this informal administrative process.

(1)     Any customer may dispute an electricity bill and request an investigation by the certified electric power company within thirty (30) days from the date on which said bill was mailed or sent to the customer by electronic mail. In order to object the bill and request the corresponding investigation, the customer shall pay the amount corresponding to the average of the undisputed bills corresponding to the last six (6) months. The certified electric power company shall not be required to initiate such investigation until the amount corresponding to the average of the undisputed bills has been paid. Public entities or instrumentalities shall have forty-five (45) days to dispute their bills and request an investigation by the electric power service company.

(2)     The objection and request for investigation may be notified to the certified electric power company by certified mail, telephone, fax, or electronic mail, provided that such objection and request are submitted through the specific contacts provided therefor by the certified electric power company, and that the date of the remittal of the objection and request for investigation can be established with certainty.

(3)     Once the objection and request for investigation has been notified, the certified electric power company shall conclude the investigation and inform the customer the results thereof within a term of thirty (30) days from the date on which the customer notified its objection and request for investigation. The certified electric power company shall notify the customer in writing about the results of the investigation to his/her mailing address of record or to the electronic mail address provided when notifying the objection and request for investigation. When notifying the result of the investigation, the electric power service company shall inform the customer of his/her right to request reconsideration of said result and the term within which such reconsideration shall be requested.

(4)    If the customer is not satisfied with the result of the certified electric power service company's investigation, he/she shall request said company, in writing, to have the initial decision reconsidered by a higher ranking officer. All requests for reconsideration shall be filed within a term of twenty (20) days from the notice of the certified electric power service company's decision on the result of the investigation. The customer may submit and notify his/her request for reconsideration to the electric power service company by certified mail, fax, or electronic mail, provided that the same is submitted through the specific contacts provided therefor by the company.

(5)    The certified electric power service company shall have thirty (30) days after the filing of the request for reconsideration to evaluate the same and notify, in writing, its final decision on the result of the investigation to the customer. All final decisions shall clearly state the right of customers to file a request for review with the Commission and a description on how to file the same.

(b)    Every invoice that a certified electric power service company issues to its customers shall conspicuously advise all customers that they have thirty (30) days to dispute the same, pay the amount corresponding to the average of undisputed bills during the last six (6) months, and request the electric power service company to conduct an investigation, all of this without affecting the service.

(c)    The filing of an objection of a bill and a request for investigation with a certified electric power company shall not release objecting customers from their obligation to pay future electricity bills issued by such company.

(d)    When submitting complaints to the Commission, petitioning customers shall ensure that they have met the requirements of this Section. Likewise, the respondent electric power service company shall establish in its first

appearance before the Commission that it has faithfully met the requirements of this Section.

(e)    The Commission shall review *de novo* the certified electric power company's final decision on the objection and the result of the investigation.

(f)    If the customer fails to pay the bill and to follow or exhaust the procedure established to dispute bills, the certified electric power company may suspend the electric power service until the customer pays the bill. Prior to suspending the service, the certified electric power company shall send the customer a written warning regarding the eventual service suspension. The certified electric power company shall not mail such warning before the thirty (30)-day term the customer has to pay or object and request an investigation of the bill pursuant to subsection (a)(1) of this Section.

(g)    The certified electric power company shall suspend the service ten (10) days after the issuance of the suspension warning but never on a Friday, Saturday, Sunday, or holiday, nor on a business day before a holiday.

Section 6.28.- Customer Service.

(a)    Customer Service of the Energy Commission.- The Energy Commission shall promulgate rules or regulations as are necessary to guarantee the protection of the rights of persons or customers that receive electric power services in the Commonwealth of Puerto Rico. The Commission shall adopt by regulations the customer service rules and policies that shall protect the rights of customers and ensure effective communication with and the participation of all customers. The Commission shall adopt such regulations in consultation and in conjunction with the ICPO. The following initiatives shall be part of the policy that the Commission shall establish through regulations:

(1)     The Commission shall ensure public dissemination of all sorts of changes in the electric power industry in Puerto Rico by disclosing on its website any public interest information it may have. Said Commission shall develop and implement a customer education or orientation program regarding the contents of the information so disclosed;

(2)     The Commission shall develop and use viable internal parameters to assess the effectiveness of the service it provides to customers. The Commission shall render an annual report to the Legislative Assembly on or before January 30th with the results of the customer service policy adopted and shall publish said results on its website.

(b)     Customer Service of Certified Electric Power Companies.- The Commission shall regulate, oversee, and address cases and disputes regarding the quality of the services rendered to customers by certified electric power companies.  Every electric power service company shall adopt and submit the following information for the Commission's evaluation and approval:

(1)     Just and reasonable rules or practices to be followed when providing a service;

(2)     Just and reasonable rules or practices to assess the service provided;

(3)     Just and reasonable rules or practices to guarantee the accuracy of the equipment used to provide services;

(4)     Just and reasonable rules or practices to guarantee the reliability and continuity of the service provided;

(5)     Just and reasonable rules or practices to protect the health and safety of employees and the public in general, including adequate installation, use, maintenance, and operation of security equipment and other devices;

(6)     Customer service terms and conditions; and

(7)     Any other rules or regulations related to services provided by certified electric power companies deemed necessary by the Commission to implement the provisions of this Section.

Section 6.29.- Efficiency in Electric Power Generation.

(a)     Highly Efficient Fossil Generation.- Within a term that shall not exceed three (3) years after July 1st, 2014, PREPA shall ensure that, at least sixty percent (60%) of the electric power generated in Puerto Rico based on fossil fuels (gas, coal, oil, and others) is "high efficiency," as such term is defined by the Commission. The term "high efficiency" shall include as essential factors the electric power plant or facility's thermal efficiency by the type of fuel used, the cost of fuel, technology, the capacity to reduce the costs of producing one (1) kilowatt-hour (kWh) of the proposed technology, and/or any other industry parameter that guarantees efficiency in energy generation. The percentage required under this Section includes energy generated from fossil fuels sold to PREPA under power purchase agreements entered into as of the effective date of this Act.

(b)     Every electric power generation facility of a certified electric power company in Puerto Rico must meet the efficiency standards established by the Commission and/or any other standard of the industry that guarantees efficiency in the generation of electric power.

(c)     In the case of renewable energy technologies, the following efficiency standards shall apply based on:

(1)     the use of space and location;

(2)     the availability of the renewable energy source;

(3)     the efficiency of individual components;

(4)     an analysis of the costs and benefits;

(5)    any other parameter of the industry that maintains the operations and reliability of the electric power generation.

(d)    The Commission shall review periodically and, if necessary, modify the established efficiency standards and publish them on its website together with the technical analysis that justifies them;

(e)    The Commission shall approve the strategic plans developed by PREPA and other certified electric power companies to meet these standards and oversee compliance therewith.

Section 6.30.- Wheeling.

The Energy Commission shall regulate the wheeling mechanism in the Commonwealth of Puerto Rico. In doing so, the Commission shall establish the rules and conditions to ensure that wheeling does not affect in any way whatsoever (including technical problems and rate increases) nonsubscribers of wheeling services, as well as the rules necessary for implementation of a system that allows exempt business described in Section 2(d)(1)(H) of Article 1 of Act No. 73-2008, as amended, known as the "Economic Incentives Act for the Development of Puerto Rico," or similar provisions in other incentive laws, to purchase electric power from other entities through wheeling services. Likewise, the Commission shall consider, among others, the following factors when regulating the wheeling service:

(a)    The state of the transmission and distribution infrastructure, the loss of energy related to this stage of operations, and the cost thereof.

(b)    The reasonable conditions that must be established to guarantee the protection and the proper and efficient maintenance of the transmission and distribution infrastructure.

(c)     The criteria that must be considered in determining the rates to be charged for transmission and distribution services, so that the costs remain at a reasonable level, thus making the use of this mechanism feasible, and promoting production of energy and the competitiveness of Puerto Rico in terms of service costs and availability, thus safeguarding the interests of the People, including the distance between the electric power company and energy subscribers without adversely affecting wheeling nonsubscribers.

(d)     In determining wheeling rates there shall be included a contribution from power producers for grid maintenance, as well as ancillary services in proportion to the amount of energy injected into the grid, the distance between the producer and the private customer, and any other necessary technical considerations recognized worldwide that make wheeling feasible taking into account the particularities and geographic and physical limitations of the electric power infrastructure of Puerto Rico.

(e)     The best practices of other jurisdictions that have implemented the wheeling mechanism and the convenience of applying them in Puerto Rico.

Section 6.31.- Bid Process and Requests for Proposals.

(a)     The Energy Commission shall adopt and promulgate regulations establishing the guidelines, standards, practices, and processes to be followed, so that PREPA may purchase energy from another electric power service company and/or update its power generation plants or facilities.

(b)     Every power purchase agreement shall meet the standards, terms, and conditions established by the Commission through regulations.

(c)     Once the Energy RELIEF Plan is approved, the Commission shall have sixty (60) days to establish, jointly with PREPA, all the requirements for the notification of the bid process and/or Requests for Proposals for the purchase of energy or the modernization of PREPA's power plants or facilities, in accordance

with the approved Plan. The Commission shall notify the bid process and the requests for proposals within a term that shall not exceed thirty (30) days after establishing the requirements therefor.

(d)    The Commission shall receive and evaluate proposals, carry out the process, and recommend PREPA the award thereof within a term that shall not exceed ninety (90) days.

(e)    Once the bid is awarded, PREPA and the winning bidder shall complete the negotiation and enter into the power purchase agreement within not more than sixty (60) days, provided that the approval of the final agreement by the Commission shall be a prerequisite to enter into the agreement and render it effective. Failure to meet this prerequisite shall render the agreement null *ab initio*. If such agreement is not approved by the Commission, it shall be rendered null *ab initio*.

(f)    If any of the parties is not negotiating the terms of the power purchase agreement in good faith or is causing unnecessary delays in the negotiation process without the other party's consent, the adversely affected party may resort to the Commission and initiate a mediation or arbitration process in accordance with the provisions of Section 6.36 of this Act.

(g)    The Commission shall ensure that the process leading to the execution of a power purchase agreement or the modernization of PREPA's power plants or facilities are swift, nondiscriminatory, competitive, under equal conditions, and transparent.

(h)    The final decisions and reports as well as any power purchase agreement entered into for the purchase power or the modernization of PREPA's power plants or facilities awarded shall be published on the Commission's website.

Section 6.32.- Extension.

In exercising its regulatory duties and technical knowledge in the energy field, the Commission may extend the three (3)-year period provided in this Act so that at least sixty percent (60%) of the electric power generated in Puerto Rico based on fossil fuels is "high efficiency," for a term that shall not exceed one (1) year, provided that the Commission determines:

(i)     that it is necessary for the full implementation of the Energy RELIEF Plan; and

(ii)    that the implementation of the Energy RELIEF Plan is at an advanced stage.

Section 6.33.- Agreements between PREPA and Independent Power Producers and other Electric Power Service Companies.

(a)     The Energy Commission shall evaluate and approve all agreements between PREPA and any electric power service company, including independent power producers, prior to the execution thereof. This includes, but shall not be limited to the evaluation and approval of power purchase agreements whereby an independent power producer shall provide energy to PREPA for its distribution by the latter.

(b)     The provisions of this Section shall not apply to power purchase agreements that have been executed by PREPA prior to the approval of this Act.

(c)     The Commission shall adopt and promulgate regulations that establish the guidelines and standards to which the agreements between PREPA and any independent power producer shall adhere; and the terms and conditions that shall be included in every power purchase and interconnection agreements, including a reasonable cost per kilowatt-hour (kWh) according to the type of generation technology. In the process of analyzing and drafting these regulations, the Commission shall request and consider the comments and feedback of PREPA, the

Commonwealth Energy Public Policy Office, independent power producers, and the public in general. The guidelines and standards established by the Commission through regulations shall have the purpose of ensuring compliance with the principles of this Act, of Act No. 83 of May 2, 1941, as amended, known as the "Puerto Rico Electric Power Authority Act," and the public policy of the Commonwealth of Puerto Rico.

(d)  In evaluating every proposal of agreements between PREPA and an electric power service company, the Commission shall take into account the provisions of PREPA's integrated resource plan. The Commission shall not approve an agreement that is inconsistent with PREPA's integrated resource plan, particularly in all that pertains to the conservation and efficiency goals established in PREPA's integrated resource plan.

(e)  The Commission shall have thirty (30) days after the date on which a project agreement is submitted for its review under this Section, to review it and determine (i) if it approves it, (ii) if it declares it contrary to the public interest, or (iii) if the project agreement should be evaluated in depth. Provided, that if the Commission fails to issue a resolution with one of these three possible determinations within thirty (30) days, it shall be understood that the project agreement has been approved. If the Commission decides that the project agreement should be evaluated in depth, it shall issue a final resolution and determine whether it approves or declares the project contrary to the public interest within a term that shall not exceed ninety (90) days. If the Commission fails to issue its final resolution within said ninety (90)-day term, it shall be understood that the project agreement has been approved. The resolutions issued by the Commission regarding the approval or declaration against the public interest of these agreements shall be posted on the Commission's website.

(f)     In evaluating a proposal for an agreement between PREPA and an electric power service company, the Commission shall verify whether or not the interconnection jeopardizes the reliability and safety of the electric power grid and require the elimination of any term or condition under the agreement's proposal that is contrary to or jeopardizes the safe and reliable operations of the electric power grid. The Commission shall not approve any agreement when technical evidence shows that the project in question or the contractual conditions thereof would jeopardize the reliability and safety of the electric power grid of Puerto Rico.

(g)     The Commission shall oversee that the rates, fees, rents, or charges paid by PREPA to independent power producers are just and reasonable, and protect the public interest and the treasury. The Commission shall oversee that the charge to be paid for interconnecting to PREPA's system, including construction fees and wheeling rates, as well as any other PREPA requirement applicable to independent power producers or other electric power service company that wish to interconnect to PREPA's system, is just and reasonable. In this process, the Commission shall assure that the charges allow for an interconnection that does not affect the capacity of PREPA to provide a reliable electric power service consistent with the protection of the environment, the mandates of PREPA's Act, and that do not adversely affect PREPA's customers.

(h)     In evaluating any power purchase agreements' proposal, the Commission shall require PREPA to submit the "Supplementary Study" for the project subject of the proposed agreement, duly evaluated and endorsed by PREPA, or the pertinent technical analysis supporting the agreement. If a project does not require a "Supplementary Study," PREPA shall issue a certification to the Commission stating the reasons for which the circumstances and characteristics of the project do not warrant a "Supplementary Study" or technical evaluation.

(i)     PREPA shall issue a "Supplementary Study" within ninety (90) days after the date on which the independent power producer has filed a request for an interconnection evaluation with PREPA. If PREPA believes that a "Supplementary Study" or any other technical analysis is unnecessary, it shall issue a Certification stating the reasons for which the circumstances and characteristics of the project do not warrant a "Supplementary Study" or other technical evaluation, within forty-five (45) days as of the date on which the independent power producer has filed a request for an interconnection evaluation with PREPA. If PREPA fails to submit the "Supplementary Study" or certification, as the case may be, for the project along with the agreement's proposal, the Commission shall impose the sanctions and remedies it deems pertinent on PREPA and request the Commonwealth Energy Public Policy Office to submit to the Commission a memorandum evaluating the project and the agreement's proposal and to issue a duly-grounded recommendation.

(j)     All power purchase agreements approved by the Commission shall be posted on the Commissions' website.

Section 6.34.- Mediation and Arbitration of Energy Affairs.

(a)     Mediation - Any person negotiating an agreement with PREPA or an independent power producer regarding wheeling, capacity rates, interconnection, power purchase, or any other matter established by the Commission through regulations may, at any point during the negotiation, ask the Energy Commission to mediate and assist in the resolution of any differences arising in the course of the negotiation.

(b)     Arbitration - In the event that the parties involved in a mediation process described in subsection (a) of this Section fail to reach an agreement, or in lieu of a mediation process, the parties may agree to submit the dispute to arbitration before the Commission. The agreement or consent of the parties to

undergo any or all disputes between them to arbitration shall be made in writing and signed by both/the parties or their authorized representatives.

(1)     Any request for arbitration submitted to the Commission shall include the agreement for arbitration signed by the parties, and specify:

(i)     The issues or disputes whose resolution the parties are requesting to the Commission;

(ii)     The allegations of facts that are not in dispute and those that are in dispute;

(iii)     The position of each of the parties with respect to the issues in dispute;

(iv)     A detailed list of all witnesses that the parties intend to present in the arbitration process along with a summary of their testimonies. In the case of expert witnesses the curriculum vitae of each one of them, as well as their expert report shall also be submitted;

(v)     A detailed list of each document or evidence that the parties intend to present in the arbitration process, along with a description of the purpose of presenting each document or evidence; and

(vi)     The remedy sought.

(2)     Award of the Request for Arbitration.

(i)     The Commission shall award the issues or disputes set forth by the parties in the request for arbitration, provided that said disputes are comprised within the scope of the agreement for arbitration signed by the parties.

(ii)     The Commission may require any of the parties to the arbitration process described herein to furnish or provide information as may be necessary for the Commission to address the matter in dispute. If any party refuses or fails unreasonably to respond to any request of the Commission, then the

Commission may proceed to resolve the dispute on the basis of the best information available to it, from whatever source derived.

(iii)   The Commission shall issue the arbitration award on or before one hundred eighty (180) days after the filing of the response to the request for arbitration, unless: (1) exceptional circumstances impair the proper adjudication of the dispute within such term, or (2) the parties to the arbitration process agree in writing to the extension of said term.

(c)   The refusal of any party to cooperate with the Commission in carrying out its functions as an arbitrator or mediator or to continue negotiating in good faith in the mediation shall be considered a reckless act and the Commission may take reasonable measures to protect the other parties.

(d)   Within one hundred eighty (180) days after the approval of this Act, the Commission shall adopt regulations as necessary for the procedure and rules to be followed during the mediation and arbitration processes. Prior to the adoption and effectiveness of said regulations, the Commission may issue an administrative order to apply the regulations adopted to such effects by the American Arbitration Association or any other applicable regulations to the mediation and arbitration processes before its consideration. The Commission shall facilitate and provide agreement models or arbitration clauses that may be used by the parties to agree to submit to the arbitration process established in this Section.

Section 6.35.- Construction and Extension of Electric Power Facilities.

(a)   In General.- Any certified electric power company that wishes to build or extend its facilities shall file with the Commission a notice of intent to carry out such project in accordance with the Commission's rules and regulations. The Commission shall reply to a notice of intent within one hundred eighty (180) days after the filing thereof.

(b)    Evaluation Criteria.- The Commission shall evaluate the notices of intent to build an electric power generation facility in accordance with the regulations to be established and promulgated by the Commission for such purposes. In evaluating the notices of intent, the Commission shall evaluate whether such construction work meets any of the objectives previously established in the Energy RELIEF Plan or the integrated resource plan of PREPA or if it satisfies any actual urgent need for electricity infrastructure in Puerto Rico, in which case the procedure established to amend the integrated resource plan shall be followed. The Commission shall issue a resolution stating whether such construction work is necessary, adequate, and consistent with the public interest. The Commission may not deny a notice of intent based on arbitrary or discriminatory reasons.

(c)    The issue of a favorable resolution for the project by the Commission shall not exempt the proponent from complying with any municipal, State, or Federal procedure established and needed for interconnecting to or operating such facility in the electricity infrastructure of Puerto Rico.

Section 6.36.- Transfer, Acquisition, and Merger of Certified Electric Power Companies.

(a)    In General.- No sale, acquisition, or merger of electric power companies or the facilities thereof shall be completed if the Commission does not issue a certification stating that such transaction is consistent with the Energy RELIEF Plan, the integrated resource plan, and the best interests of Puerto Rico, and does not involve the capture or control of electric power services by an electric power service company or the creation of a monopoly over electric power services by a private electric power service company.

(b)     The Commission shall adopt regulations to specify the form, contents and procedure to file and evaluate applications for certification under this Section.

(c)     The Commission shall evaluate applications based on the size of the facility or facilities subject to the transaction, its generation capacity, the impact of such transaction on the electric power industry and electric power customers, and any other parameter that the Commission may deem necessary, according to the best practices in the electric power industry, to conduct an objective and transparent evaluation of the application.

(d)     The Commission shall adjudicate on the merits every request for authorization filed under this Section within one hundred eighty days (180) days after the filing thereof. The Commission shall treat the process to address and evaluate applications for certification as an *ex parte* formal adjudicative procedure, governed by the provisions of Act No. 170 of August 12, 1988, as amended, known as the "Uniform Administrative Procedures Act," and the regulations adopted by the Commission.

Section 6.37.- Penalties for Noncompliance.

(a)     The Commission shall impose administrative fines for violations of this Act, or the regulations and orders issued thereunder, committed by any person or electric power company subject to its jurisdiction, of up to a maximum of twenty-five thousand dollars ($25,000) per day. Said fines shall in no event exceed five percent (5%) of the gross sales, fifteen percent (15%) of the net income, or ten percent (10%) of the net worth of the sanctioned person or the electric power company. The greater of the aforementioned amounts corresponding to the most recent taxable year shall be the amount of the fine.

(b)     If the person or certified electric power company commits a subsequent violation of this Act, the Commission may impose penalties of up to a maximum of twenty-five thousand dollars ($25,000) per day. In such case and by

unanimous determination of the Commission, it may impose fines up to twice the limitations on the basis of sales, income or assets set forth in subsection (a) of this Section and up to five hundred thousand dollars ($500,000).

(c)    Any claim or cause of action authorized by law filed by any person with legal standing shall not affect the powers granted under this Section to impose administrative sanctions.

(d)    Any person who intentionally violates any provision of this Act, omits, disregards, or refuses to obey, observe, and comply with any rule or decision of the Commission shall be punished by a fine of not less than five hundred dollars ($500) nor more than five thousand dollars ($5,000) at the discretion of the Commission. In the event of recurrence, the established penalty shall increase to a fine of not less than ten thousand dollars ($10,000) nor greater than twenty thousand dollars ($20,000), at the discretion of the Commission.

Section 6.38.- Annual Reports.

Before March 1st of each year, the Commission shall file with the Governor and the Legislative Assembly of the Commonwealth of Puerto Rico the reports required under Section 6.3(oo) of this Act. Such report shall contain the following information:

(a)    Status of energy affairs of the Island and Integrated Resource Plan in the short- and long-terms;

(b)    Recommendations on possible actions to be taken by the Government to ensure adequate supplies of energy resources and the efficiency of the system in general;

(c)    Updated data and statistical projections on the generation, distribution, use, and consumption of energy in Puerto Rico;

(d)     A breakdown of the monthly rate of energy consumption itemized by type of rate, and the process used to fix such rates, if the same have been reviewed or modified within the last calendar year;

(e)     Annual work plan of the Commission and the results of its execution; and

(f)     Any other information deemed pertinent and necessary.

Section 6.39.- Interpretation of this Act.

The provisions of this Act shall be construed liberally in order to achieve its purposes, and whenever a specific power or authority is granted to the Commission, the same shall not be construed as to exclude or impair any other power or authority otherwise conferred to it.

Section 6.40.- Periodic Review.

It is hereby provided that the Legislative Assembly shall evaluate periodically, and not later than the eighth (8th) year of operations of the Energy Commission, through the committees with jurisdiction over such matters of each Legislative House, every aspect related to the operations of the Commission, CEPPO, and the ICPO, including their compliance with the public policy set forth hereunder, and shall issue its recommendations with respect to the need for and convenience of such entities. It shall also consider the possibility of integrating its operations to another public institution or institutions that regulate activities or industries such as telecommunications or other public utilities, as provided by law.

## SUBCHAPTER D.- Independent Consumer Protection Office.

Section 6.41.- Creation of the Independent Consumer Protection Office.

(a)     The Independent Consumer Protection Office, hereinafter the "Office" or "ICPO," is hereby created to educate, advice, assist, and represent electric power service customers in the Commonwealth of Puerto Rico.

(b)      The Office shall have the administrative support of PREA, but shall operate as an entity independent from the Commission, the Commonwealth Energy Public Policy Office, PREPA, and any other electric power company certified in the Commonwealth of Puerto Rico.

(c)      The Office shall be composed of a Director as well as of the personnel and external consultants necessary to fully carry out the duties and functions of the Office as provided in this Act.

(d)      The Office shall have a website containing information about the electric power industry, which shall be shown in a manner that the average consumer is able to understand it. The Office shall share and post data and information to keep interested persons informed about their rights as electric power service customers, and Puerto Rico's electric power system.

Section 6.42.- Director of the ICPO.

(a)      The Director shall be appointed by the Governor with the advice and consent of the Senate for a term of six (6) years, and the Governor shall fix his/her compensation using as guideline the salary established for heads of agency or departments with functions of similar complexity as the ICPO. The Director shall be an attorney-at-law duly licensed to practice under the laws of Puerto Rico, with at least five (5) years of experience, of recognized probity and resident of Puerto Rico. The Governor shall appoint the Director of the ICPO by selecting from a list of ten (10) candidates resulting from a public and open job announcement to nonprofit nongovernmental organizations whose mission is to represent consumers or customers, small business, the elderly or low-income persons, to submit their recommendations for nomination. Once the term provided for such nongovernmental organizations to nominate candidates for the position of Director of the ICPO, the Office of the Governor shall publish on its website the list of all

the proposed candidates and shall specify the nongovernmental organization that nominated each candidate.

(b)     The Director may be removed from office by the Governor only for just cause and after notice and opportunity to be heard.

(c)     The Director and the members of his/her family unit, as defined in Act No. 1-2012, as amended, known as the "Government Ethics Act of 2011," shall not have any direct or indirect interest in, nor contractual relation whatsoever with PREPA and/or any other electric power company certified in Puerto Rico, nor in entities within or outside Puerto Rico affiliated to or with interest in PREPA or said companies.

(d)     The Director may not participate in any matter or dispute in which any natural or juridical person with which he/she has had a contractual, professional, labor, or fiduciary relation within two (2) years prior to his/her appointment is a party thereto. Moreover, once his/her functions have ceased, the Director shall not represent any juridical person or entity before said Commission in relation to any issue in which he/she participated while serving on the Commission as Director, or with respect to any other issue within two (2) years after separation from office.

Section 6.43.- Organization of the Independent Consumer Protection Office.

(a)     PREA shall ensure that the ICPO has the proper office space and facilities for its operations. PREA shall have the duty to hire the professional personnel and services of the ICPO at the request of the Director, subject to the provisions of the laws, regulations, or executive orders of the Commonwealth of Puerto Rico and subject to the limits of the budget to be appropriated to the ICPO.

(b)     No employee of the Office, whether a career or trust employee, may be related within the fourth degree of consanguinity and second of affinity to the Director of the Office or any commissioner of the Energy Commission.

(c)      Any action of the Director and the personnel of the Office shall be subject to the restrictions provided in Act No.1-2012, as amended, known as the "Government Ethics Act of 2011."

Section 6.44.- Powers and Duties of the ICPO.

The Office shall have the following powers and duties:

(a)      Educate, inform, and provide orientation and assistance to consumers on their rights and responsibilities with regard to the electric power service and the public policy on savings, conservation, and efficiency;

(b)      Evaluate the impact that the rates, electricity bills, public policy on energy, and any other issue may have on electric power service consumers in Puerto Rico;

(c)      Defend and advocate for the interests of customers in all matters brought before the Energy Commission or been addressed by CEPPO with regard to electric power rates and charges, PREPA's debt issue, the quality of the electric power service, services provided by electric power service companies to their customers, resource planning, public policy, and any other matter of interest for customers;

(d)      File complaints or legal recourses with the Energy Commission on behalf and in representation of electric power service customers who have no other legal representation, with regard to disputes in connection with the electricity bill, rates and charges of PREPA or independent power producers, the public policy on energy, environmental issues, disputes regarding customer service of electric power service companies, or any other matter that may affect the interests or rights of electric power service customers. Prior to filing complaints in representation of electric power service customers, it shall verify that said customer has complied with the provisions of Section 6.27of this Act. In the event of a conflict of interests between the different types of customers with regard to any cause of action or

dispute, the priority of the ICPO shall be to represent and defend residential and small-business commercial customers;

(e)     Participate in PREPA's rate adoption or modification process in accordance with Section 6A of Act No. 83 of May 2, 1941, as amended, and the rate review process before the Commission in accordance with Section 6B of Act No. 83, *supra*;

(f)     Make independent recommendations to the Energy Commission regarding rates, electricity bills, public policy on energy, and any other issue that may affect electric power service consumers in Puerto Rico;

(g)     Request and advocate for just and reasonable rates for the consumers represented by the Office;

(h)     Participate or mediate in any action brought before a government agency of the Commonwealth of Puerto Rico or agency of the Federal government with jurisdiction, in connection with rates, electricity bills, public policy on energy, and any other issue that may affect electric power service consumers and/or customers;

(i)     Participate and appear as petitioning party or mediator in any action before the General Courts of Justice or a Federal court in connection with the rates, electricity bills, public policy on energy, and any other issue that may affect electric power service customers;

(j)     Sue and be sued;

(k)     Have access to documents, records and information to which the Commission and the Commonwealth Energy Public Policy Office have access except for privileged documents, records and information, as provided in the Rules of Evidence;

(l)     Conduct, on its own motion or through contract, studies, surveys, or investigations, or hear expert testimonies in connection with matters that affect the interests of electric power service consumers;

(m)     Review and issue comments on any proposed legislation or regulations that affect electric power service consumers;

(n)     Submit on or before March 1st of each year to both Houses of the Legislative Assembly of the Commonwealth of Puerto Rico an annual report stating the tasks undertaken by and the achievements of the Office in favor of consumers; and

(o)     Adopt regulations, norms, and rules as necessary to properly conduct its internal operations.

Section 6.45.- Budget of the Office.

The Office shall receive an annual appropriation equal to ten percent (10%) of the amount appropriated to the Energy Commission in accordance with Section 6.16(c) of this Act. This appropriation shall originate from the same financing source as the Commission.

## CHAPTER VII.- General Transitory Provisions.

Section 7.01.- Transition between Created and Eliminated Agencies.

(a)     The powers and duties of the Puerto Rico Renewable Energy Commission created by virtue of Act No. 82-2010, in connection with any energy-related matter shall be transferred to the Energy Commission created herein. The employees of the Puerto Rico Renewable Energy Commission holding a career position shall be transferred to CEPPO, and their job classifications shall be similar to, and their salaries and benefits shall not be lower or less than what they enjoyed while serving in the Puerto Rico Renewable Energy Commission.

(b)     The Commonwealth Energy Public Policy Office shall be the legal successor of all administrative rights and obligations of the Energy Affairs

Administration. The budget, documents, records, materials, equipment, and any other real and personal property of the Energy Affairs Administration are hereby transferred to CEPPO. CEPPO shall assume and be responsible for any financial debt, obligation, or liability of the Energy Affairs Administration and, in turn, shall assume and be the holder of any asset, right, or power of the Energy Affairs Administration beyond those specifically listed in this Act. The Executive Director of CEPPO is hereby empowered to establish through administrative orders all the norms deemed necessary to guarantee a swift and orderly transition process, including all that pertains to the employee transition process.

(c)    All employees of the Energy Affairs Administration holding a career position shall become employees of CEPPO. All such employees shall hold a position and job classification similar to that held at the Energy Affairs Administration and their salaries and benefits shall not be lower or less than what they enjoyed while serving in the Energy Affairs Administration.

(d)    The Executive Director of CEPPO shall determine and identify those employees of the Energy Affairs Administration holding a trust or transitory position who may be transferred as employees of the Office.

Section 7.02.- Section 2 of Act No. 33 of June 27, 1985, as amended, known as the "Act to Establish Minimum Procedural Requirements for the Suspension of Essential Public Services," is hereby amended to read as follows:

"Section 2.- Applicability.

This Act shall apply to the Puerto Rico Aqueducts and Sewers Authority and other public service companies established or to be established in the future, and their subsidiaries."

Section 7.03.- Repeal and Effect.

(a)     Section 4 of Article 1 of Act No. 73-2008, as amended, known as the "Economic Incentives Act for the Development of Puerto Rico," is hereby repealed.

(b)     Act No. 128 of June 29, 1977, as amended, is hereby repealed.

(c)     Act No. 69 of June 8, 1979, is hereby repealed.

(d)     Section 2.2 of Act No. 82-2010, known as the "Public Policy on Energy Diversification by Means of Sustainable and Alternative Renewable Energy in Puerto Rico Act," is hereby repealed.

(e)     Act No. 233-2011 is hereby repealed.

(f)     Furthermore, the provisions of this Act shall have the effect of:

(1)     Modifying any statutory or regulatory provision in effect where reference is made to the Puerto Rico Energy Office or the Energy Affairs Administration so that it rather reads or refers to the Commonwealth Energy Public Policy Office.

(2)     Modifying any statutory or regulatory provision in effect regarding energy affairs in which reference is made to the Puerto Rico Renewable Energy Commission so that, it rather reads or refers to the Puerto Rico Energy Commission.

(3)     Repealing any statutory or regulatory provision in effect that is in conflict or inconsistent with the provisions of this Act.

Section 7.04.- Inconsistent Provisions.

(a)     In the event that the provisions of this Act are in conflict or inconsistent with the provisions of any other law, the provisions of this Act shall prevail.

(b)      Sections 26 and 27 of Act No. 83 of May 2, 1941, as amended, shall not limit, impair, or hinder the powers and duties of the Energy Commission in exercising its authority.

Section 7.05.- Separability Clause.

If any clause, paragraph, subparagraph, article, provision, section, subsection, or part of this Act were held to be unconstitutional by a competent court, such holding shall not affect, impair, or invalidate the remaining provisions of this Act. The effect of such holding shall be limited to any clause, paragraph, subparagraph, article, provision, section, subsection, or part thereof thus held to be unconstitutional.

Section 7.06.- Effectiveness.

This Act shall take effect immediately after its approval.

# CERTIFICATION

I hereby certify to the Secretary of State that the following **Act No. 57-2014 (Senate Substitute for S. B. 837, S. B. 838, S. B. 839, S. B. 840, S. B. 841, S. B. 842, S. B. 843, S. B. 881, S. B. 882, and for House Substitute for H. B. 1457 and H. B. 1618)** of the **3rd Session of the 17th Legislature** of Puerto Rico:

**AN ACT** to establish the Puerto Rico Energy Transformation and RELIEF Act; repeal Section 2 and replace it with a new Section 2, amend Sections 3(b), 4, and 5, add a new Section 5A, amend Section 6, add new Sections 6A, 6B, and 6C, amend Section 22, add a new Section 28, and renumber Sections 28 and 29 as Sections 29 and 30 of Act No. 83 of May 2, 1941, as amended, known as the "Electric Power Authority Act," in order to provide for the governance of the Governing Board of the Electric Power Authority, establish strategic planning and information requirements that PREPA must provide to guarantee an efficient electrical system, etc.

has been translated from Spanish to English and that the English version is correct.

In San Juan, Puerto Rico, on this 18th day of June, 2014.


Juan Luis Martínez Martínez
Acting Director