**EXHIBIT 48**

**Hearing Date and Time: July 26, 2007 at 10:00 a.m.**

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Corinne Ball (CB 8203)
Steven C. Bennett (SB 2746)
Pedro A. Jimenez (PJ 1026)

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Heather Lennox (HL 3046)
Robert W. Hamilton (RH 3130)

Attorneys for Debtors
 and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
: 
In re : Chapter 11
: 
Dana Corporation, *et al.,* : Case No. 06-10354 (BRL)
: 
                 Debtors. : (Jointly Administered)
: 
-------------------------------------------------------------x

**NOTICE OF FILING OF SUMMARY OF CHANGES TO THE
GLOBAL SETTLEMENT IN CONNECTION WITH MOTION
OF DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY
OF AN ORDER (A) APPROVING SETTLEMENT AGREEMENTS WITH THE
UNITED STEELWORKERS AND UNITED AUTOWORKERS, PURSUANT TO
11 U.S.C. §§ 1113 AND 1114(E) AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019, AND (B) AUTHORIZING THE DEBTORS TO ENTER INTO
PLAN SUPPORT AGREEMENT, INVESTMENT AGREEMENT AND RELATED
<u>AGREEMENTS, PURSUANT TO 11 U.S.C. §§ 105(A), 363(B), 364(C)(1), 503 AND 507</u>**

NYI-4010044v1

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On July 6, 2007, the undersigned filed with this Court the Motion of Debtors and Debtors in Possession for Entry of an Order (A) Approving Settlement Agreements with the United Steelworkers and United Autoworkers, Pursuant to 11 U.S.C. §§ 1113 and 1114(e) and Federal Rule of Bankruptcy Procedure 9019, and (b) Authorizing the Debtors to Enter into Plan Support Agreement, Investment Agreement and Related Agreements, Pursuant to 11 U.S.C. §§ 105(a), 363(b), 364(c)(1), 503 and 507 (Docket No. 5645) (the "Motion").

2. The undersigned are hereby filing the Summary of Changes to the Global Settlement, annexed hereto (the "Summary Chart"), in connection with the Motion.

3. Copies of the Motion, and the Summary Chart may be obtained on from the Court's website http://www.ecf.nysb.uscourts.gov or, without charge, at the website of the Debtors' claims and noticing agent at http://www.dana.bmcgroup.com.

-3-

Dated: July 25, 2007
      New York, New York

Respectfully submitted,

/s/ Corinne Ball
Corinne Ball (CB 8203)
Steven C. Bennett (SB 2746)
Pedro A. Jimenez (PJ 1026)
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

Heather Lennox (HL 3046)
Robert W. Hamilton (RH 3130)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

# DANA CORPORATION

# SUMMARY OF CHANGES TO THE GLOBAL SETTLEMENT

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **Investment** | - $300MM Series A preferred.<br><br>**Source: Centerbridge Term Sheet** | - $250MM Series A preferred. | - Investment Agreement § 1.1 |
| | - $450MM in Series B preferred – $200MM backstopped by Centerbridge.<br><br>**Source: Centerbridge Term Sheet** | - $500MM in Series B preferred – $250MM backstopped by Centerbridge. | - Investment Agreement § 1.2 |

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **Pricing** | • 17% discount to market prices over 20 trading days after emergence.<br><br>**Source: Centerbridge Term Sheet** | • 17% discount to market prices over 20 trading days after emergence. | • Cert. of Designations § 13 (def. of Conversion Price) |
|  |  | • Collar at $3.15B - $3.5B total enterprise value with adjustments for increases/decreases in net debt from $625MM. | • Cert. of Designations § 13 (def. of Debt/Interest, Distributable Market Equity Value per Share, Floor/Ceiling Mechanism, Preferred/Common Equity Value, Preferred Equity Value, Preferred Ownership Ceiling, Preferred Ownership Floor) |
| **Allocation of Series B** | • $500MM offered to Qualified Creditors as chosen by Centerbridge.<br><br>**Source: Centerbridge Term Sheet** | • $500MM offered to Qualified Investors on a pro rata basis. | • Investment Agreement § 1.2 |
|  | • Limited to top 20 claim holders as of a record date in the past.<br><br>**Source: Centerbridge Term Sheet** | • Maximum $200 million of Series B may be beneficially owned by any investor and its affiliates. | • Investment Agreement § 1.2 |
|  |  | • Must hold at least $25MM on future record date and at closing. | • Investment Agreement § 8.8 (def. of Qualified Investor) |

2

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| | | • Small creditors not eligible to invest in Series B receive cash and/or stock reasonably acceptable to the Debtors, Centerbridge and the Ad Hoc bondholders and as approved by the Bankruptcy Court. | • Plan Term Sheet |
| | | • Record date for eligibility: August [10], 2007 for this transaction for bonds (Confirmation Date for trade creditors). | • Investment Agreement § 8.8 (def. of Qualified Investor) |
| **Seniority of As over Bs** | • Series A senior to Series B for liquidation.<br><br>**Source: Centerbridge Term Sheet** | • Series A and B pari passu | • Cert. of Designations § 2 |

3

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **Series A Veto/ Approval Rights** | • Centerbridge right to approve (unless sells or converts >50% of Series A):<br>   o Material transactions with 10% shareholders, directors & officers (but not compensation arrangements)<br>   o Issuance of senior or pari passu securities with exceptions for refinancings<br>   o Bylaw amendments<br>   o Repurchase of equity securities for more than $10 million in any 12 months.<br>**Source: Centerbridge Term Sheet**<br><br>• Series A preferred right to veto (unless <$150MM Series A is outstanding):<br>   o Sale of the company, liquidation<br>   o Below-market stock issuance<br>   o Cash dividends on junior or pari passu stock<br>   o Charter amendments.<br>**Source: Centerbridge Term Sheet** | • All approval rights personal to Centerbridge (*i.e.* do not follow the Series A preferred if sold)<br>• All approval rights terminate after 3 years<br>• Approval rights for dividends and issuance of senior/pari passu securities terminate after 12 months if certain financial ratios are met<br>• All approval rights terminate if Centerbridge owns less than 50% of the then-outstanding Series A preferred<br>• Shareholders can override a Centerbridge veto by a 2/3 vote | • Shareholders Agreement § 4.1 |

4

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **Governance** | Initial board composition:<br>• 2 CB designees<br>• 1 CB independent designee<br>• 2 UCC independent designees<br>• CEO<br>• 1 CB/UCC independent designee (chosen by UCC from CB list of 3).<br>**Source: Centerbridge Term Sheet** | Initial board composition:<br>• Same except for 7th director, if no name on list is acceptable to UCC, CB will submit another list. | • Investment Agreement § 5.3(k)<br>• Plan Term Sheet |
| | Subsequent board:<br>• 2 CB designees elected by Series A<br>• 1 CB independent designee elected by Series A<br>• 1 member nominated by Series A nominating committee (2 of 3 members being CB designees) by unanimous vote<br>   o Up for election by all shareholders; could be removed in a proxy contest<br>   o Must be independent<br>• All CB independent directors must be independent of both Dana and CB.<br>**Source: Centerbridge Term Sheet** | Subsequent board:<br>• Same. | • Shareholders Agreement Article III (for nominating rights)<br>• Cert. of Designations § 6 (for voting rights to elect director) |

5

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **Rights plan** | • New Dana to have a rights plan at emergence.<br>**Source: Plan Term Sheet** | • Provision deleted; silent. | • Not Applicable |
| **Lockups** | • Two months for Series A and B.<br>**Source: Centerbridge Term Sheet** | • Six months for Series A and B. | • Cert. of Designations<br>   o § 8 (on restrictions on transfer)<br>   o § 5(b) (on conversion before six months);<br>   o § 8 (on conversion of more than 50% of Series A) |
| | • Series A conversions/sales limited to 50% during first three years.<br>**Source: Centerbridge Term Sheet** | • Same. | |

6

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **Commit-ment Fee/ Termination Fee** | • 1.75% of $250 million<br><br>**Source: Centerbridge Term Sheet** | • 1% of $250 million. | • Investment Agreement §§ 7.1(d) and 7.3 |
| | | • The commitment fee that is payable if Investment Agreement is terminated upon conversion to chapter 7 or for breach of Dana reps/warranties covenants is still the $3.5 million shown in the term sheet – was not reduced along with other commitment fee. | • Investment Agreement § 7.1(c) |
| | | • The commitment fee of $2.5 million is now also payable upon termination of the Investment Agreement because the company has not emerged by May 1, 2008. | • Investment Agreement § 7.1(d) |
| **Claims Limitation** | • Not addressed. | • Condition to effectiveness that general unsecured claims do not exceed $3.25B (excluding Union claims); allows for waiver by UCC acting in accordance with its fiduciary duty. | • Plan Term Sheet |
| **Labor VEBAs** | • $80 million in stock.<br>**Source: Plan Term Sheet; Union Settlement Agreement** | • $60 million in cash in lieu of stock. | • Plan Term Sheet<br>• Union Settlement Agreement |
| **L-5** | • L-5 a possibility.<br>**Source: Plan Term Sheet** | • No L-5. | • Plan Term Sheet |

7

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| Process | • None specified. | • Deadlines established for submission of proposals and determination as to acceptability to unions and superiority. | • Plan Term Sheet<br>• Investment Agreement § 4.1 |
| | • Union right to consent as described.<br>**Source: Union Settlement Agreement** | • Union reasonableness factors defined. | • Appendix R to Union Settlement Agreements |
| Shareholder Right to Call a Special Meeting | • Not addressed. | • 20% of shareholders may call a special meeting. | • Cert. of Designations FN 2 |
| Control premium | • Not addressed | • Centerbridge and its Affiliates precluded from receiving any premium, payment or fee in connection with voting or transferring any Dana voting securities in connection with a sale of the company unless the amount is shared with all shareholders pro rata. | • Shareholders Agreement § 5.18 |
| | | • No holder of Series A or Series B may receive any compensation or remuneration of any kind from the company or any other person in connection with the exercise or non-exercise of any voting rights or other rights under the preferred terms. | • Cert. of Designation § 6(d) |

8

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **Amendment of Preferred Stock terms** | • Statutorily Required | • No provision of the preferred stock terms may be repealed or amended without approval of a majority of voting power of all stockholders. | • Cert. of Designation § 14 |
| **Board Action to Waive or Amend Share-holders Agreement or Approve Transactions with Center-bridge** | • Not addressed | • Approval of a majority of directors not designated by Centerbridge required for:<br>   o Transaction or agreement between Centerbridge or any of its affiliates and the company;<br>   o Any amendment or waiver of the shareholders agreement. | • Shareholders Agreement § 4.4 |

9

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **UNION SETTLEMENT AGREEMENT** ||||
| **Appendix R** | • Not addressed | • The Creditors' Committee will be co-counsel with the Debtors in any mediation/arbitration proceeding. | • Appendix R to Union Settlement Agreements |
| | • Not addressed | • Appendix R establishes an objective standard by which the mediator/arbitrator is to determine whether the Unions acted reasonably in withholding their consent to an alternative transaction. | • Appendix R to Union Settlement Agreements |
| | • Not addressed | • Appendix R will identify an arbitrator that is acceptable to the Debtors, the Unions and the Creditors' Committee. | • Appendix R to Union Settlement Agreements |
| | • Not addressed | • The Union's due diligence and the arbitration period is limited to four weeks in the aggregate. | • Appendix R to Union Settlement Agreements |

10

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **PLAN SUPPORT AGREEMENT** | | | |
| **Obligations of the Debtors: Ad Hoc Expenses** | • Not addressed. | • Debtors agree to not object to payment of Ad Hoc Group's reasonable legal fees and expenses up to a cap of $5 million. | • Plan Support Agreement Article II |
| **Support Obligations of the USW, UAW and CB: Ad Hoc Expenses** | • Not addressed. | • UAW and USW agree to not object to payment of Ad Hoc Group's reasonable legal fees and expenses up to a cap of $5 million. | • Plan Support Agreement Article III |
| | • Not addressed. | • Centerbridge agree to support payment of Ad Hoc Group's reasonable legal fees and expenses up to a cap of $5 million. | • Plan Support Agreement Article III |
| **Support Obligations of the Supporting Creditors:** | • Not addressed. | • Each Supporting Creditor agrees that it will support prosecution, confirmation and consummation of the Plan. | • Plan Support Agreement Article IV |

11

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **Support Obligations of the Supporting Creditors:** | • Not addressed. | • Each Supporting Creditor agrees that It will not, nor will it encourage any other person or entity to, (i) object to, delay, impede, appeal, or take any other action, directly or indirectly, to interfere with, the entry of the Disclosure Statement Order; (ii) commence any proceeding or prosecute, join in, or otherwise support any action to oppose or object to the Plan or Disclosure Statement; (iii) support or encourage anyone to compete with the Investment Agreement; and (iv) delay, object to, impede, appeal, or take any other action, directly or indirectly, to interfere with the acceptance or confirmation of the Plan, the entry of the Confirmation Order or the occurrence of the Effective Date. | • Plan Support Agreement Article IV |
| **Support Obligations of the Supporting Creditors:** | • Not addressed. | • Each Supporting Creditor agrees that it will engage in good faith negotiations regarding the Plan, Disclosure Statement and other definitive documents that are consistent with the PSA. | • Plan Support Agreement Article IV |

12

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **Support Obligations of the Supporting Creditors:** | • Not addressed. | • Each Supporting Creditor agrees that not to sell, transfer, assign, pledge, or otherwise dispose, directly or indirectly (including by creating any subsidiary or affiliate for the sole purpose of acquiring any Claims against any Debtor) their right, title or interest in respect of any Supporting Creditor Claim unless the recipient of such Relevant Claim (a "Transferee") agrees in writing (such writing, a "Transferee Acknowledgment"), prior to such Transfer, to be bound the PSA. | • Plan Support Agreement Article IV |
| **Support Obligations of the Supporting Creditors:** | • Not addressed. | • Any claims purchased by the Supporting Creditor are subject to all of the terms of the PSA. | • Plan Support Agreement Article IV |
| **Termination Events for Supporting Creditors: Miller Buckfire Fee** | • Not addressed. | • The failure of the fees of Miller Buckfire to be reduced to an amount agreed upon by the Supporting Creditors, Centerbridge and the Debtors. The Creditors' Committee reserves its rights with respect to such fees. | • Plan Support Agreement Article IV |

13

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **Termination Events for Individual Supporting Creditors: Plan Effective Date** | • Not addressed. | • The Plan fails to become effective by its terms by February 28, 2008. | • Plan Support Agreement Article IV |

14

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **PLAN TERM SHEET** | | | |
| **Process** | • Not addressed. | • Global Settlement shall contain provisions for a process under which potential alternate investors (who have submitted a bona fide proposal) (1) would get access to company information and (2) would be required to submit a definite Alternative Proposal by a date certain. | • Plan Term Sheet |
| **Treatment of Unsecured Creditors** | • General unsecured creditors receive pro rata portion of shares of common stock and/or excess distributable cash. | • Same | • Plan Term Sheet |
| | • Not addressed. | • General unsecured creditors that are not Qualified Investors will receive an amount of cash and/or stock that is (i) reasonably acceptable to the Debtors, CB and the Supporting Creditors and (ii) approved by the Bankruptcy Court. | • Plan Term Sheet |

15

NYI-4009751v4

| TERM | JULY 5, 2007 PROVISION | CURRENT PROVISION | CURRENT SOURCE DOCUMENT |
|---|---|---|---|
| **Unsecured Claim Condition to Effective Date** | • Not addressed. | • It shall be a condition to the occurrence of the Effective Date of the Plan that the total amount of allowed Unsecured Claims (excluding any claims of the Unions) shall not exceed $3.25 billion. This condition may be waived by the Unsecured Creditors' Committee acting in accordance with its fiduciary duties to all creditors. | • Plan Term Sheet |
| **Takeover Provisions** | • The Reorganized Company will have a customary rights plan but will not have a classified Board of Directors. | • Provision removed. | • Plan Term Sheet |

16

NYI-4009751v4