**EXHIBIT 53**

EXHIBIT
Bat/16-11
10/11/19

**COMMONWEALTH OF PUERTO RICO**
**PUERTO RICO ELECTRIC POWER AUTHORITY**

**GOVERNING BOARD RESOLUTION**
**DEFINITIVE RESTRUCTURING SUPPORT AGREEMENT**

**RESOLUTION NUMBER 4695**

**Tomás Torres, Board Member Consumers Representative, dissenting.**

Today, the majority of the Governing Board of the Puerto Rico Electric Power Authority determined to approve the Definitive Restructuring Support Agreement (Definitive RSA or RSA) among the Puerto Rico Electric Power Authority (PREPA), the Puerto Rico Fiscal Agency and Financial Advisory Authority (AAFAF), the Ad Hoc Group Members (Ad Hoc Group), the Uninsured Supporting Holders (Uninsured Holders) and Assured Guaranty Corp. (Assured), I dissent.

\* \* \*

The vote on this agreement is one of the most, if not the most important decision concerning PREPA, since its creation in 1941. The agreement and related information were received by Board members less than 24 hours before the meeting. On the Governing Board meeting invitation, it was not indicated that a vote was to be called on the agreement. For PREPA's transformation to occur it needs to be done with the highest standards of transparency, openness and trust. The manner this vote was taken, shows that there still improvements to be made to achieve these standards.

The approval of this agreement must be consistent with a sustainable development of the utility, that in turn benefits electricity consumers and the economy of Puerto Rico. This requires an analysis of viability that, as of today, is not available to the Board. This analysis requires a holistic approach that considers not only the terms and conditions of the agreement but the scenario in which it unfolds.

The question in front of us is if this agreement is viable and beneficial for PREPA, electricity consumers, and the economy of Puerto Rico. If its approval will bring a sustainable development for the utility, which in turn would benefit electricity consumers with an electric system that is reliable. However, if it is only geared to the repayment of debt without considering the capacity of electricity consumers to pay, at the present critical juncture of Puerto Rico's economy, then the sustainable development of the utility is most likely not to be achieved, nor the benefit to consumers of a reliable electric service. Only if this RSA promotes an economically viable, reliable, modern electric system we can, as a Board, support it. Is this

1

agreement sustainable towards the future? The answer to this question is where I dissent.

The Definitive Restructuring Support Agreement considers the exchange of existing PREPA bonds by new bonds under an exchange ratio as describe on the agreement. Tranche A Bonds will be exchanged at 67.5% of the principal amount, and Tranche B Bond will be exchanges at 10% of principal amount. Maturity of Tranche A Bonds will be 40 years, and 47 years for Tranche B Bonds. There will be no cash flow on Tranche B bonds until Tranche A are paid in full. Tranche B Bonds receives 100% of total excess cash flow from the Transition Charge after repayment of the Tranche A Bonds until maturity. The resulting Transition Charge required for the payment of Tranche A and Tranche B Bonds starts at 2.768 cents/Kwh for year 1 to 3, 2.957 cents/Kwh from year 4 to 8, 3.242 cents/Kwh on year 9, 3.323 cents/Kwh on year 10 and continues incremental increases, as described in the Recovery Plan Term Sheet, until arriving to year 24 where it is capped to 4.552 cents/kWh. Although the RSA establishes a cap, it does not address what would happen if PREPA's sales continues reducing as it has occurred for over the past 10 years. The issue of Tranche A and Tranche B Bonds is expected to occur on or before June 30, 2020. Tranche a and B Bonds will be issued by a special purpose vehicle, which may be the Puerto Rico Electric Power Authority Revitalization Corporation, or another entity as agreed by the required parties. The Transition Charge will be included on PREPA's customer bills as separate line items separate from all other charges. As part of the transaction, and prior to the issue of Tranche A and Tranche B bonds, a Settlement Charge of 1 c/kWh will be implemented by PREPA and included in its customer bills by July 1, 2019. The Settlement Charge will continue until conditions for the issue of Tranche A and B Bonds are satisfied, the termination of the agreement or dismissal of PREPA's Title III Case.

For the agreement to be successful, it needs to consider the island's complex situation. It must consider not only utility's legacy debt but other legacy liabilities such as pension funds, plus the need of massive resources to rebuild the grid. As described on the Integrated Resources Plan (IRP)[1] the aggregate of the legacy liabilities such as pension and debt are calculated in 6.2 cents/kWh nominal average for the next 10 years. Adding this cost to the current average rate of 22 cents/Kwh[2] will bring the average rate to 28.2 cents/KWh. Even if PREPA is fully successful with the proposed implementation measures, included on the IRP, through the 20 years period of the plan, rates are projected above current levels in between 23 to 25 cents/Kwh.

---

[1] Integrated Resources Plan filed by PREPA to the Puerto Rico Energy Bureau on February 13, 2019.
[2] Based on the past six months average of all customer classes as shown on PREP's statistics Generación, consumo, costo, ingresos y clientes del sistema eléctrico de Puerto Rico to March 1, 2019.

2

When adding the cost of the massive resources needed to rebuild the grid the electricity costs can increase even further. The Build Back Better[3] Plan has estimated the cost of rebuilding the power system in $17.6 billion; the Central Office for Recovery Reconstruction and Resiliency (COR3)[4] has estimated this effort to be $26 billion. The scale of these amounts indicate that funds needed to rebuild the electrical grid requires federal funding. However, if federal funds are not fully or even partially available, the cost of such capital would result in additional rate increases. As an example, based on PREPA's FY 2017 Rate Case[5] for every increase in annual costs of $172 million there will be an increase on the rate equivalent to 1 cent/Kwh. Depending on the transaction, an annual cost increase of nearly $172 million could be the equivalent of the long-term financing of $1.5 billion[6].

The agreement should also consider other aspects of Puerto Rico's current situation. The U.S. Census Bureau[7] projects Puerto Rico's population on 2,980,000 by 2025 and 2,089,000 by 2050, from a current value of 3,195,153[8]. Since the Transition Charge is projected for 47years, in accordance with Tranche Bonds A and B maturity, and although those charges are intended to be gradually incremented and fixed to a cap in year 24, a drastic decrease in population may affect the projected collection of such charge. It could become a death spiral.

Puerto Rico's socioeconomic indicators needs also to be considered. Data for year 2017[9] shows that Puerto Rico's Gross Domestic Product (GDP) of $104 billion dollars, has decreased for the past 10 years by 8.6%, at constant pricing values, not considering inflation. The Gross National Product (GNP) decreased by 14.1%, also at constant pricing. Before the 2017 hurricanes Puerto Rico had 44.9%[10] of its population below poverty levels.

The above, points toward additional analysis and information that is needed prior to the approval of the agreement to assure the success of its implementation, and in turn benefit PREPA and the electricity consumers. PREPA needs to return to the markets and the Board's fiduciary duties needs to be fulfilled. The question that arises is if the fiduciary duties are adequately discharged by approving this

---

[3] Build Back Better: Reimagining and Strengthening the Power Grid of Puerto Rico, New York Power Authority et al, December, 2017.
[4] Transformation and Innovation in the Wake of Devastation an Economic and Disaster Recovery Plan for Puerto Rico, Central Office for Recovery Reconstruction and Resiliency (COR3), August, 2018.
[5] Puerto Rico Electric Power Authority Rate Review, Case No.: CEPR-AP-2015-0001.
[6] Assuming 7% to 10% in a 15 to 20 year financing period.
[7] U.S. Census International Program Data Base.
[8] U.S. Census Population Estimates for Puerto Rico, July 1, 2018.
[9] Informe Económico al Gobernador, 2017, Gobierno de Puerto rico, Junta de Planificación.
[10] U.S. Census Bureau 2013-2017 American Community Survey 5-Year Estimates.

Confidential

agreement without having made an economic study of its impact and lacking a legal opinion on the complex legal issue of interaction between PREPA, the Financial Oversight and Management Board (FOMB), AAFAF, the Puerto Rico Energy Bureau (PREB) and the diverse applicable laws. In my opinion, it is not.

In any event, the impact to the electricity rates resulting from the charges implied on this agreement, and other charges that as previously discussed may soon be applied, should also be addressed. Alternative funds need to be pursued to diminish the projected impact. Considering that the Transition Charge will be implemented on or before June 30, 2020 federal and local grants needs to be pursued to be applicable to the current principal amount of the debt and accrued liabilities. Nonetheless, mechanisms should be clearly stated on the agreement that provides for additional payments throughout the maturity of the bonds aimed to shorten the length of the maturity and reduce the Transition Charge.

I would have ordered an economic impact study to confirm the capacity of PREPA, the electricity consumers and of Puerto Rico economy to carry the Transition Charge, as described on the agreement, considering the additional aggregated charges described. The Board should not grant the approval of the agreement until its viability is thoroughly evaluated. Furthermore, I would have considered alternative funds applicable to the current debt intended to diminish the impact of the proposed charges. I would also have conducted the discussion and vote of the agreement on a public meeting and allowing Governing Board Members enough time for evaluation and discussion.

Therefore, I dissent.

Tomás J. Torres
Board Member, Consumers Representative

In San *Juan*, Puerto Rico, on April 17, 2019.

Confidential

PREPA_RSA0027817