**<u>EXHIBIT 54</u>**




May 7, 2019

Eng. Eli Diaz Atienza
President, Board of Directors
Puerto Rico Electric Power Authority
Santurce, Puerto Rico
**HAND DELIVERY**

Re: Definitive Restructuring Support Agreement

Dear Mr. Chairman:

     As discussed yesterday, after reviewing the Definitive RSA published by the Financial Oversight and Management Board (FOMB) on Friday May 3rd, I found that it has six annexes, that to the best of my knowledge, were not included as part of the documents considered by the Governing Board during the meeting were the agreement was voted on April 17, 2019. Those annexes are:

- Annex A To Recovery Plan Term Sheet,
- Schedule I-A Demand Protection Term Sheet,
- Schedule I-B Securitization Protections,
- Annex B To Recovery Plan Term Sheet: Structure 1: Custodial Trust Section 1: Definitions,
- Structure 2: Escrow Section 1: definitions, and
- Annex A To Definitive RSA, Ad Hoc Group Members

     These annexes are an integral part of the RSA and if they were not provided nor considered by the Board, the April 17th, 20019 approval by the Board could be null.

     An additional concern is that during the April 17th meeting it was stated in several instances that the Definitive RSA was negotiated in compliance with the new Puerto Rico public energy policy. Schedule I-A Demand Protection Term Sheet, is in my judgment contrary to the public policy included in Act 17 of 2019.

     Schedule I-A, Demand Protection Term Sheet, defines Non-Bypassability as follows:

*Transition Charges are non-bypassable charges, the payment of which shall be obligatory. Transition Charges shall be assessed on all Customers, regardless of the date as of which they become Customers, through a fixed charge or volumetric charge, as applicable,*

Confidential

PREPA_RSA0028029

*unless, subject to the conditions set forth herein, including the assessment of the Subsidy Charge, a Customer in an Excepted Customer Class is excepted from paying all or a part of the Transition Charges. Customers shall not be permitted to evade the imposition of Transition Charges or reduce their responsibility for Transition Charges by disconnecting and subsequently reconnecting to the System or by withholding from the Servicer any information required in order to assess Transition Charges or determine the Customer's status as a BTMG Customer or Grandfathered BTMG Customer.*

Schedule I-A, Demand Protection Term Sheet, defines Allocation of Transition Charges Among Customer Classes as follows:

*Exemptions, subsidies and credits may be offered to certain classes of Customers, and exemptions, subsidies and credits may be created for the benefit of low- and middle-income residential Customers. The value of any such exemptions, subsidies and credits and of the Additional Subsidies described below shall be spread among other Customers on the terms set forth below (the Customers to whom such exemptions, subsidies, charges and credits apply, the **"Excepted Customer Classes"**); provided that (i) the aggregate value of all such exemptions, subsidies or credits (collectively, the "Subsidy Value") shall be calculated and charged to all other Customers, through a fixed or volumetric charge, as applicable, by the Servicer through a transition charge subsidy line item on Customer invoices (such line item, the "Subsidy Charge"), and then remitted to the Trustee for the Securitization Bonds in the same manner as all other Transition Charges and such subsidy payments, and the Amended Act shall provide that such Subsidy Charge and all rights thereto shall form a portion of the Restructuring Property to the same extent as all other Transition Charge revenue and rights thereto; (ii) any such exemption, subsidy or credit shall not impair the Servicer's ability to collect the aggregate amount of revenue to be generated in any period through imposition of the Transition Charge; and (iii) such exemptions, subsidies or credits shall only be permitted to the extent the recovery of the Subsidy Value (including the Uncollected Amounts Charge) from Customers other than Customers in the Excepted Customer Classes never increases the responsibility of any Customer class for Transition Charges by more than 25%.*

*The Servicer shall verify and audit the Transition Charge Revenue to confirm that any Subsidy Charges or credits are net revenue neutral, and the Subsidy Value and Subsidy Charge shall be recalculated annually.*

Schedule I-A, Demand Protection Term Sheet, defines Grandfathered and Non-Grandfathered Customers as follows:

Grandfathered Behind the Meter Generation (BTMG) Customers

2

Confidential

Customers with behind the meter generation ("BTMG Customers") that was approved, in place, and operational prior to the Implementation Date (each, a "Grandfathered BTMG Customer") will be subject to a monthly Transition Charge in the form of a fixed charge calculated for each month by multiplying the Transition Charge Rate applicable to such month by a monthly average of the Grandfathered BTMG Customer's Net Consumption over the prior twenty-four (24) month period, after taking into account a three (3) month lag time (such period, the "Twenty-Four Month Period"). The fixed charge shall be revised as set forth in (1) and (3) of "Fixed Charge Updates."

Any Grandfathered BTMG Customer whose behind the meter generation capacity increases by more than 20% above the capacity in place on the Implementation Date shall cease in the next billing period and in all subsequent billing periods to be considered a Grandfathered BTMG Customer to the extent of the behind the meter generation capacity increase.

Notwithstanding anything to the contrary provided in this Term Sheet, all Grandfathered BTMG Customers shall cease to be Grandfathered BTMG Customers on the twentieth (20th) anniversary of the Effective Date and each such Customer shall thereafter be a Non-Grandfathered BTMG Customer.

Non-Grandfathered Behind the Meter Generation (BTMG) Customers

All BTMG Customers other than Grandfathered BTMG Customers, including former BTMG Customers that cease to be Grandfathered BTMG Customers (each, a "Non-Grandfathered BTMG Customer"), shall be obligated to pay the Servicer for the cost of installing at, a minimum, a revenue grade meter to measure the amount of electricity that is generated behind the meter (each such meter, a "BTMG Meter"). The BTMG Meter shall be in place and functioning by the time the Customer's behind the meter generation system first comes online. The BTMG Meter shall be installed immediately after the behind the meter generation system and before such generated electricity reaches any load. The Servicer shall, from time to time, inspect and test a sampling of BTMG Meters consistent with industry practice.

Each Non-Grandfathered BTMG Customer with a BTMG Meter shall be subject to a monthly Transition Charge in the form of a charge that shall be the greater of (x) a fixed charge calculated for each month by multiplying (i) the Transition Charge Rate applicable to such month by (ii) the monthly average of that Non-Grandfathered BTMG Customer's Gross Consumption during the then-applicable Twenty-Four Month Period, and (y) the product of the Transition Charge Rate applicable to such month and the Non-Grandfathered BTMG Customer's Net Consumption for such month. The fixed charge set

3

Confidential

PREPA_RSA0028031

forth in (x) shall be revised as set forth in (2) and (3) of "Fixed Charge Updates." The initial Twenty-Four Month Period for a Non-Grandfathered BTMG Customer shall be the Twenty-Four Month Period concluding on the date on which that Customer became a Non-Grandfathered BTMG Customer.

Until such time as a Non-Grandfathered BTMG Customer has an operating BTMG Meter, then, for purposes of clause (x)(ii) of the immediately preceding paragraph, the monthly average of that Non-Grandfathered BTMG Customer's Gross Consumption during the then-applicable Twenty-Four Month Period shall be deemed to be the gross electricity inflows received from the System in the month for which the fixed charge is being calculated.

Schedule I-A, Demand Protection Term Sheet, defines Gross Consumption and Net Consumption follows:

"Gross Consumption" means, for any given time period, the amount of electricity consumed by a Customer, regardless of the source of such electricity, including thermal, solar, wind, geothermal or other renewable or recyclable sources, _whether owned by PREPA or any successor, lessor or concessionaire, an independent power producer, municipality, cooperative or a Customer._ The Gross Consumption of a new Customer (i.e., a Customer that has not established a history of electricity consumption over a period of at least twenty-four (24) months) prior to the date it connects to the System) shall be deemed for the period before such new Customer has established twenty-four (24) months of electricity consumption history to be the average kWH consumed over a period of twentyfour (twenty-four) months by an electricity consumer in Puerto Rico having a connected electric load comparable to the electric load which such new Customer shall have reported to PREPA , the Servicer or subservicer, as the case may be, at the time it applies for connection to the System, as such average may be adjusted to take into account the size of the new Customer premises, the nature of the loads to be connected, the location of the new Customer's premises relative to the System and other factors bearing on electricity consumption, including size and specifications of the behind the meter system.

"Net Consumption" means, for any given time period, a Customer's Gross Consumption less amounts of electricity which such Customer produces through properly permitted behind the meter generating facilities.

The definitions and elements included in Schedule I-A, Demand Protection Term Sheet, are similar to the ones included on the Petition for Approval Transition Order (CEPR-AP-2016-0001) presented during 2016. Those principles were specifically repealed by Act 17, 2019. Returning to those principles will be a repeal of Act 17. The application of charges, of such

4

Confidential

PREPA_RSA0028032

magnitude as the Transition Charges, to Behind the Meter Customers could preclude the development and integration of Distributed Energy Resources, that is the cornerstone of Act 17, 2019. Such important issues were not discussed during the April 17th vote, as it was represented to PREPA Boards Members that the Definitive RSA under our consideration was, as I have already stated, in accordance with the new energy policy.

In addition, the list of Ad Hoc Group Members included on Annex A To Definitive RSA was not disclosed to the Governing Board, precluding Board Members to made an evaluation of any possible conflicts, in a list that includes over 76 capital funds and investments firms.

For the above reasons, and for the sake of good governance and institutional practices, and the fulfillment of the Board fiduciary duties a new vote on the Definitive RSA should be called, providing board members all the information included on the final agreement and enough time for its evaluation.


Sincerely,

Tomás J. Torres
Board Member
Consumers Representative


XC: Files

5