## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------- X
                                                            :
In re:                                                      :
                                                            :
THE FINANCIAL OVERSIGHT AND                                 :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                           :  Title III
                                                            :
           as representative of                             :  Case No. 17-BK-3283 (LTS)
                                                            :
THE COMMONWEALTH OF PUERTO RICO et al.,                     :  (Jointly Administered)
                                                            :
           Debtors.¹                                        :
------------------------------------------------------------------- X
```

## MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO AMEND TENTH AMENDED NOTICE, CASE MANAGEMENT AND ADMINISTRATIVE PROCEDURES REGARDING DISCLOSURE REQUIREMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ................................................................. 1

JURISDICTION, VENUE, AND STATUTORY BASES ............................... 3

BACKGROUND ..................................................................................... 4

    I.    **Case Management Procedures and Rule 2019 Disclosure Requirements** ............. 4

    II.   **Commencement of PBA Title III Case and Pleadings Related Thereto** ............. 6

    III.  **Execution of Plan Support Agreements** ........................................... 8

    IV.  **Bond and Other Trading Activity Prior to Execution of New PSA** ............. 9

RELIEF REQUESTED ............................................................................ 11

ARGUMENT ........................................................................................ 11

    I.    **Rule 2019(b) Groups Should Provide Greater Clarity With Respect to Bonds Issued or Guaranteed by Commonwealth** ................................... 12

    II.   **Rule 2019(b) Groups Should Disclose Holdings of PBA Bonds** ............. 12

    III.  **Rule 2019(b) Groups Should Disclose Precise Series of Commonwealth and PBA Bonds, Retroactive to May 31, 2019, Pursuant to Classification of Bonds Under New PSA** ..................................................... 14

CONCLUSION ...................................................................................... 20

NO PRIOR REQUEST ............................................................................ 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Nw. Airlines Corp.*,
363 B.R. 704 (Bankr. S.D.N.Y. 2007) ............................................................................15, 18

*In re Washington Mut., Inc.*,
419 B.R. 271 (Bankr. D. Del. 2009) ..............................................................................15, 17

**Statutes**

11 U.S.C.
§ 105(a) ................................................................................................................................1, 4

48 U.S.C.
§ 2194(m)(1) ...........................................................................................................................1

PROMESA
§ 301(a) ................................................................................................................................1, 4
§ 306(a) ....................................................................................................................................3
§ 307(a) ....................................................................................................................................3
§ 310 ....................................................................................................................................1, 4

**Other Authorities**

Fed. R. Bankr. P.
2019............................................................................................................................. *passim*
2019(a)(1) ..............................................................................................................................14
2019(b) ...................................................................................................................... *passim*
2019(b)(1) ................................................................................................................................1
2019(c)(2)(B) ...........................................................................................................................4

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee")[2] hereby submits this motion (the "Motion"), pursuant to section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), made applicable to these Title III cases by section 301(a) of PROMESA, and Rule 2019 of the Federal Rules of Bankruptcy Procedure (the "Rules"), made applicable to these Title III cases by section 310 of PROMESA, requesting entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), amending the *Tenth Amended Notice, Case Management and Administrative Procedures* [Exhibit 1 to Docket No. 8027, dated July 16, 2019] (the "Case Management Procedures")[3] to (a) require clarification with respect to Rule 2019(b) Groups' holdings of bonds issued or guaranteed by the Commonwealth, (b) ensure that Rule 2019(b) Groups[4] involved in these Title III cases disclose their economic interests with respect to PBA, and (c) require that Rule 2019(b) Groups disclose information with respect to the particular series of the Commonwealth and PBA bonds they hold.  In support of the Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.    Congress observed in the PROMESA statute that "lack of financial transparency" was one of the key factors that created Puerto Rico's fiscal emergency,[5] and just as this lack of transparency in the past was a key factor in Puerto Rico's financial crisis, robust transparency

---

[2]   The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Case Management Procedures.

[4]   A "Rule 2019(b) Group" is defined in the Case Management Procedures as "[e]very group, committee and entity described in Federal Rule of Bankruptcy Procedure 2019(b)(1)."  Case Management Procedures ¶ IV.A. Rule 2019(b)(1) describes such groups as "every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another."  FED. R. BANKR. P. 2019(b)(1).

[5]   48 U.S.C. § 2194(m)(1).

now will be key to the success of Puerto Rico's Title III cases as they enter the phase leading

toward potential confirmation of a plan of adjustment.  Given the importance of transparency in

this process, disclosure pursuant to Rule 2019 is of the utmost importance in these Title III cases.

2.      Disclosure by Rule 2019(b) Groups of their investment positions is also

particularly important in the Title III cases due to the outsized role played by groups of hedge

funds that have invested in distressed Puerto Rico debt—debt that has been actively traded on

public markets during the pendency of the Title III cases.  As observed by Bankruptcy Judge

Robert D. Drain in support of a robust Rule 2019, the distressed debt market "is a market that is

heavily influenced by the litigation and negotiation stances taken by distressed debt holders and,

therefore, the temptation to mislead the court and the other parties about one's underlying

position is . . . clear."[6]  The close relationship between courtroom activity and the trading floor

makes full disclosure paramount.

3.      The Committee files this Motion for three reasons.  First, Rule 2019(b) Groups

have not consistently specified whether bonds they hold that are issued or guaranteed by the

Commonwealth are either (a) issued by the Commonwealth or (b) issued by another entity and

guaranteed by the Commonwealth.  The Case Management Procedures should be clarified to

require this more specific disclosure, including disclosure as to the entities that have issued

Commonwealth-guaranteed debt which is being held by Rule 2019(b) Groups.

4.      Second, since the commencement of PBA's Title III case on September 27, 2019,

a number of Rule 2019(b) Groups have taken positions before the Court in PBA's Title III case,

yet not all of them have disclosed their holdings of PBA bonds as required by the Case

Management Procedures.  The Committee believes the Court should require this disclosure.

---

[6]     Letter from Bankr. J. Robert D. Drain to Advisory Comm. on Bankruptcy Rules, at 2 (Jan. 13, 2009),
        https://www.uscourts.gov/sites/default/files/fr_import/BK2009-03.pdf.

5.      Third, the identification of the specific series of Commonwealth and PBA bonds held by many Rule 2019(b) Groups has become a critical consideration in these Title III cases. Indeed, the February 9, 2020 plan support agreement (the "New PSA") provides for different treatment based on the particular series of Commonwealth and PBA bonds, which treatment is expected to be incorporated into a revised plan of adjustment for the Commonwealth, PBA, and ERS.  This plan treatment was negotiated with these Rule 2019(b) Groups (or with their counsel).  It is vital to understand Rule 2019(b) Groups' bond holdings on a series-by-series basis (and any changes to such holdings from the May 31, 2019 date of the execution of the previous plan support agreement (the "Initial PSA") through today) in order to understand why certain groups support the New PSA (and have agreed to settle challenges to the validity of certain Commonwealth and PBA bonds on the terms set forth therein) and what the true economic interests of these groups really are.  Moreover, most, if not all, of these groups were (either themselves or through counsel) at the negotiating table with the Oversight Board with respect to the settlement of the challenges brought against the allowance of their claims.  The Court and parties in interest should have a full understanding of these groups' economic positions with respect to these bonds.  Finally, this disclosure should be retroactive to May 31, 2019 (*i.e.*, the date of the execution of the Initial PSA), given that certain of these Rule 2019(b) Groups have engaged in significant trading of Commonwealth and PBA bonds since that date. Transparency regarding this trading activity is necessary to maintain the credibility and integrity of the Title III process.

## JURISDICTION, VENUE, AND STATUTORY BASES

6.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA.

7.      Venue is proper pursuant to section 307(a) of PROMESA.

8.      The statutory bases for the relief requested herein are section 105(a) of the

Bankruptcy Code, made applicable to these Title III cases by section 301(a) of PROMESA, and

Rule 2019, made applicable to these Title III cases by section 310 of PROMESA.

## BACKGROUND

**I.      Case Management Procedures and Rule 2019 Disclosure Requirements**

9.      On June 2, 2017, the Court entered an order approving the Case Management

Procedures [Docket No. 249], which set forth certain notice, case management, and

administrative procedures for these Title III cases.  Subsequently, the Court modified the Case

Management Procedures to, among other things, reflect Rule 2019 disclosure requirements

applicable to Rule 2019(b) Groups, including certain disclosure requirements requested by the

Committee, though the Court rejected certain of the Committee's suggestions, such as the

required disclosure of CUSIP numbers in connection with bonds.[7]  Among the Committee's

proposals accepted by the Court were amendments to ensure that Rule 2019(b) Groups involved

in the Commonwealth-COFINA litigation provided retroactive disclosure of holdings of both

Commonwealth and COFINA bonds, thus revealing the full spectrum of their economic interests

with respect to such litigation.[8]

---

[7]   *See Informative Motion of Official Committee of Unsecured Creditors Regarding Applicability of Bankruptcy Rule 2019 to Title III Cases and Further Proposed Amendment to Case Management Order* ¶ 3 [Docket No. 850] (proposing amendment of Case Management Procedures to require disclosure of, without limitation, "the name, nature, face amount, and CUSIP number of all disclosable economic interests," as well as information with respect to insured status of bonds, and investments in or claims against bond insurers) *and* order amending Case Management Procedures [Docket No. 1065] (amending Case Management Procedures to require disclosure of insured status of bonds but declining to require disclosure of, among other things, CUSIP numbers or investments in or claims against bond insurers).

[8]   *See also Motion of Official Committee of Unsecured Creditors to Clarify or Amend Fourth Amended Notice, Case Management and Administrative Procedures Regarding Disclosure Requirements Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Docket No. 3432] (proposing (i) clarification of meaning of "taking a position" in a Debtor's Title III case so as to trigger disclosure requirements with respect to a Debtor and (ii) retroactive disclosure of economic interests) *and* order amending Case Management Procedures [Docket No. 3730] (amending Case Management Procedures by clarifying meaning of "taking a position" in a Title III case and requiring retroactive disclosure of economic interests).

10.     Thus, the current iteration of the Case Management Procedures provides for disclosure of "all economic interests with respect to each Debtor" in whose Title III case a Rule 2019(b) Group has "taken a position," "including derivative interests and . . . the existence and amount of any bond insurance or other creditor protection."  Case Management Procedures, ¶ IV.A.  In addition, the Case Management Procedures clarify that:

> [A] Rule 2019 Group takes a position in the case of a Title III Debtor **by appearing in such Debtor's Title III case or related adversary proceeding in any capacity**, including by, among other things, filing a Pleading, filing an informative motion, executing a court-approved stipulation, filing a proof of claim, appearing at a hearing before the Court, or **asserting any legal or factual positions that would in any way impact the property or rights of the Title III Debtor.**

*Id.* ¶ IV.A. n. 4.  In other words, "taking a position" in a Debtor's Title III case encompasses, essentially, all litigation and other in-court activity that could in any way impact a Debtor.[9]

11.     Moreover, the Case Management Procedures require that, "[i]f any fact disclosed in the Rule 2019(b) Group's most recently filed statement . . . changes materially, the Rule 2019(b) Group must file a supplemental verified statement contemporaneously with or within 48 hours after the next instance in which the Rule 2019(b) Group takes a position before the Court . . . ."  *Id.* ¶ IV.C.

12.     Numerous Rule 2019(b) Groups have filed Rule 2019 statements since the beginning of the Title III cases.  Historically, many of these groups generically disclosed holdings of bonds "issued or guaranteed by the Commonwealth," and did not disclose with specificity whether such bonds were issued by the Commonwealth or, on the other hand, were

---

[9]     Undertaking such litigation or other in-court activity constitutes "appearing in such Debtor's Title III case" for purposes of the Case Management Procedures.  Moreover, because PBA's Title III case is jointly administered with the Commonwealth's Title III case, *see* PBA Joint Administration Order (defined below), it is not necessary for relevant pleadings to be filed on PBA's Title III docket.  In fact, pleadings "shall" be filed on the Commonwealth's Title III docket unless they "solely relate" to PBA.  *Id.* ¶ 4.

issued by another entity and guaranteed by the Commonwealth.[10]  As noted below, very recent disclosures by certain Rule 2019(b) Groups, however, are now disclosing this information with respect to PBA bonds.

## II.    Commencement of PBA Title III Case and Pleadings Related Thereto

13.    On September 27, 2019, the Oversight Board filed a voluntary petition for relief for PBA, thereby commencing PBA's Title III case.  PBA's Title III case is jointly administered with the Title III cases of the Commonwealth and other Title III Debtors.  Pursuant to the Court's order directing the joint administration of PBA's Title III case [Docket No. 8829] (the "PBA Joint Administration Order"), the Case Management Procedures were "made applicable to [PBA] *nunc pro tunc* to the date of the commencement of [PBA's] Title III case, as if [PBA] were a debtor referred to in" the Case Management Procedures.  PBA Joint Administration Order ¶ 8.

14.    Subsequent to PBA's September 27, 2019 petition date, a number of Rule 2019(b) Groups filed pleadings and asserted legal positions regarding the validity of certain PBA bonds and the PBA structure that may impact PBA's property or rights.  For example:

- On January 8, 2020, the Lawful Constitutional Debt Coalition filed an omnibus claim objection [Docket No. 9730] (the "Late Vintage Claim Objection") challenging the validity of certain bonds issued or guaranteed by the Commonwealth (the "GO Bonds") in 2012 and 2014, including certain PBA bonds.

- On February 5, 2020, the Ad Hoc Group of Constitutional Debtholders and the Ad Hoc Group of General Obligation Bondholders, along with certain other parties, filed a motion to dismiss [Docket No. 10702] (the "Bondholder Group Motion to Dismiss") with respect to a number of omnibus claim objections (together, and including the Late Vintage Claim Objection, the "GO Bond Objections")[11] challenging the validity of certain GO Bonds, including certain PBA bonds.

---

[10]    *See e.g.* Docket Nos. 5444, 8618, 9732, and 10742.

[11]    The GO Objections include the omnibus claim objections filed at Docket Nos. 4784, 7057, 8141, and 9730.  *See* Bondholder Group Motion to Dismiss, at 1-2.

- On February 5, 2020, the QTCB Noteholder Group filed a response and limited joinder [Docket No. 10705] (the "QTCB Group Response" and, together with the Late Vintage Claim Objection and the Bondholder Group Motion to Dismiss, the "PBA Related Pleadings") in which it asserted various legal arguments in response to the GO Bond Objections and joined in certain of the legal arguments raised in the Bondholder Group Motion to Dismiss.

15.     On January 8, 2020, shortly after filing the Late Vintage Claim Objection, the Lawful Constitutional Debt Coalition filed a Rule 2019 statement that failed to disclose whether this group held any PBA bonds, and instead merely reported generically that it held bonds issued or guaranteed by the Commonwealth.  *See* Docket No. 9732.  Subsequently, on February 19, 2020, the Lawful Constitutional Debt Coalition filed a Rule 2019 statement disclosing PBA bonds, *see* Docket No. 11161, but did not file a corrected version of its prior January 8, 2020 Rule 2019 statement that had failed to make such disclosures.

16.     On February 7, 2020, shortly after filing the Bondholder Group Motion to Dismiss, the Ad Hoc Group of Constitutional Debtholders filed a Rule 2019 statement that failed to disclose whether such group held any PBA bonds, and instead merely reported generically that it held bonds issued or guaranteed by the Commonwealth.  *See* Docket No. 10742.

17.     The QTCB Noteholder Group filed an updated Rule 2019 statement disclosing its PBA bond holdings on February 19, 2020, *i.e.*, 14 days after it filed the QTCB Group Response on February 5, 2020.  *See* Docket No. 11293.

18.     The Ad Hoc Group of General Obligation Bondholders filed an updated Rule 2019 statement disclosing its PBA bond holdings on February 20, 2020, *i.e.*, 15 days after it filed the Bondholder Group Motion to Dismiss on February 5, 2020.  *See* Docket No. 11431.

III.   **Execution of Plan Support Agreements**

19.     On May 31, 2019, the Oversight Board entered into the Initial PSA with certain

holders of Commonwealth and PBA bonds.[12]  Signatories to the Initial PSA included all

members of the Lawful Constitutional Debt Coalition and all members of the QTCB Noteholder

Group.[13]  The Initial PSA provided for differential treatment, to be implemented pursuant to a

plan of adjustment, of different Commonwealth and PBA bond claims based on the series of

such bonds.

20.     On July 24, 2019, the Court entered its *Order Regarding Stay Period and

Mandatory Mediation* [Docket No. 8244], which temporarily halted a number of adversary

proceedings and contested matters to allow for negotiations between the parties in connection

with, among other matters, the filing of a plan of adjustment for the Commonwealth and other

Debtors, including PBA.  Parties involved in these negotiations (either themselves or through

counsel), in addition to the Oversight Board and AAFAF, included the Lawful Constitutional

Debt Coalition, QTCB Noteholder Group, Ad Hoc Group of General Obligation Bondholders,

and Ad Hoc Group of Constitutional Debtholders (collectively, the "New PSA Groups").

21.     Following these negotiations, on February 9, 2020, the Oversight Board entered

into the New PSA.[14]  The New PSA provides for the treatment of Commonwealth and PBA

bonds pursuant to an amended plan of adjustment that would settle outstanding disputes in

connection with such bonds.  Signatories to the New PSA included all members of the Rule

2019(b) Groups that had signed the Initial PSA (*i.e.*, the Lawful Constitutional Debt Coalition

---

[12]   The Initial PSA is attached as Exhibit B to the disclosure statement for the plan of adjustment dated September 27, 2019 [Docket No 8766] (the "Disclosure Statement").

[13]   The names of the members of these groups at the time the Initial PSA was executed are listed in the definitions contained in the Initial PSA.  *See* Disclosure Statement, Ex. B, Initial PSA, § 1.2 (defining "LCDC Holders" and "QTCB Noteholders").

[14]   The New PSA is available at https://drive.google.com/file/d/1_JApEw_dGRQCpgAVo0SaffZrVuap6WqQ/view.

and the QTCB Noteholder Group), as well as all members of the Ad Hoc Group of General

Obligation Bondholders and all members of the Ad Hoc Group of Constitutional Debtholders.[15]

22.     As with the Initial PSA, the New PSA provides for the differential treatment,

pursuant to a yet-to-be-filed plan of adjustment, of Commonwealth and PBA bonds based on the

series of such bonds, with more recent series of bonds that are subject to the GO Bond

Objections receiving considerably different treatment (as compared to the Initial PSA).

## IV.     Bond and Other Trading Activity Prior to Execution of New PSA

23.     Each of the New PSA Groups traded in large quantities of GO Bonds (*i.e.*, bonds

issued or guaranteed by the Commonwealth) during the period in which the treatment of such

bonds under the New PSA was being negotiated.  Most of these groups significantly increased

their holdings of such bonds.  In particular, the Lawful Constitutional Debt Coalition increased

its holdings of GO Bonds from approximately $1.3 billion as of June 14, 2019, to approximately

$1.5 billion as of August 30, 2019, to approximately $1.95 billion by January 6, 2020, and to

approximately $2.04 billion by February 14, 2020—an aggregate increase of over $700 million.

*See* Docket Nos. 7465, 8639, 9732, and 11161.[16]  Similarly, the Ad Hoc Group of Constitutional

Debtholders increased its holdings of GO Bonds from approximately $2.36 billion as of July 10,

2019 to approximately $2.58 billion as of February 3, 2020, an increase of over $200 million.

*See* Docket Nos. 7952 and 10742.[17]  Moreover, the QTCB Noteholder Group increased its

---

[15]   The names of the members of these groups at the time the New PSA was executed are listed in the definitions
contained in the New PSA.  *See* New PSA, § 1.2 (defining "LCDC Holders," "Constitutional Debt Group
Members," "GO Group Members," and "QTCB Noteholders").

[16]   The membership of the Lawful Constitutional Debt Coalition remained the same between June 14, 2019 and
January 6, 2020, with a new member, Marble Ridge Capital LP ("Marble Ridge") disclosed as a group member
on February 14, 2020.  *See* Docket Nos. 7465, 8639, 9732, and 11161.  Marble Ridge disclosed GO Bond
holdings of approximately $77 million as of February 14, 2020, but even without taking Marble Ridge into
consideration, the other members of the group increased their GO Bond holdings in the aggregate amount of
approximately $15 million between January 6 and February 14, 2020.  *See* Docket Nos. 9732 and 11161.

[17]   The $200 million figure actually understates the increase of the Ad Hoc Group of Constitutional Debtholders'
holdings, as two entities (Candlewood Investment Group, LP and Fir Tree Partners) left the group between July

9

holdings of GO Bonds from approximately $1.56 billion as of September 1, 2019 to approximately $1.89 billion as of February 18, 2020, an increase of over $300 million. *See* Docket Nos. 8618 and 11293.[18]  By contrast, the Ad Hoc Group of General Obligation Bondholders decreased its holdings of GO Bonds from approximately $1.5 billion as of March 6, 2019 to approximately $1.234 billion as of February 18, 2020, a decrease of approximately $266 million. *See* Docket Nos. 5444 and 11431.[19]  None of these disclosures specify which particular series of GO or PBA bonds were being traded.

24.      It should also be noted that members of Rule 2019(b) Groups may be engaged in purchasing unsecured claims against the Commonwealth that they have failed to disclose.  For example, the Committee understands from press reports and informal communications from creditors that, in December 2019, a member of the Ad Hoc Group of Constitutional Debtholders communicated with unsecured creditors of the Commonwealth and offered to purchase general unsecured claims.[20]  Nevertheless, in the Ad Hoc Group of Constitutional Debtholders' Rule 2019 statement reporting the group's holdings as of February 3, 2020, that member of the group only listed economic interests in the Commonwealth consisting of "Constitutional Debt," defined

---

10, 2019 and February 3, 2020, and thus their holdings were no longer reported in the February 2020 disclosures.  *See* Docket Nos. 7952 and 10742.   In other words, the group increased its holdings between July 2019 and February 2020 even as membership declined.  In addition, it is worth noting that particular members of the Ad Hoc Group of Constitutional Debtholders registered significant increases in GO Bond holdings in this period, with Blackrock Financial Management's holdings increasing from approximately $224 million to approximately $389 million and Silver Point Capital L.P.'s holdings increasing from approximately $112 million to approximately $376 million.  *See id.*

[18]   The membership of the QTCB Noteholder Group essentially remained the same between September 1, 2019 and February 18, 2020, as the apparent replacement of OZ Management LP by Sculptor Capital LP in fact represents a corporate name change.  *See e.g.* Sculptor Capital Management, https://www.sculptor.com/about-sculptor (disclosing name change in September 2019).

[19]   The membership of the Ad Hoc Group of General Obligation Bondholders remained the same between March 2019 and February 2020.  *See* Docket Nos. 5444 and 11431.

[20]   *See* Joanisabel González, *Investment Firm Silver Point Capital Shows Interest in Government's Debt*, EL NUEVO DÍA, (December 14, 2019), official translation and original attached hereto as **Exhibit B**, available at https://www.elnuevodia.com/negocios/economia/nota/lafirmadeinversionessilverpointcapitalmuestrainteresporl adeudadelgobierno-2535001/.

as "***bonds*** issued or guaranteed by the Commonwealth." Docket No. 10742, at 1. It is unclear whether this means that no such purchases of unsecured claims ever occurred or not.

## RELIEF REQUESTED

25.     In order to provide the Court, parties in interest, and the public with appropriate disclosure regarding Rule 2019(b) Groups' holdings of Commonwealth and PBA bonds, the Committee requests entry of the Proposed Order attached hereto as **Exhibit A**, which amends the Case Management Procedures to require disclosure, retroactive to the May 31, 2019 date of the Initial PSA, of holdings of Commonwealth and PBA bonds by series, pursuant to the same categorization of Commonwealth and PBA bonds as used in the New PSA. The Proposed Order also amends the Case Management Procedures to clarify the disclosure requirements in connection with bonds issued or guaranteed by a Title III Debtor, as well as to clarify that entry into a plan support agreement or similar restructuring agreement with respect to a Debtor constitutes "taking a position" in that Debtor's Title III case.

## ARGUMENT

26.     The Committee files this Motion to address three major disclosure issues. First, Rule 2019(b) Groups do not seem to have had clear guidelines regarding disclosure of bonds issued or guaranteed by the Commonwealth. Frequently, instead of describing whether bonds are issued by the Commonwealth or issued by another entity and guaranteed by the Commonwealth, these bonds have been lumped together as "Constitutional Debt" or "GO Bonds," defined as bonds issued or guaranteed by the Commonwealth (*i.e.*, a category of bonds that could include bonds issued by the Commonwealth, PBA, or other entities).

27.     Second, certain Rule 2019(b) Groups have not disclosed holdings of PBA bonds as required. Even after the commencement of PBA's Title III case, these Rule 2019(b) Groups

filed disclosures describing their holdings vaguely as "Constitutional Debt," instead of separately

listing holdings of PBA bonds, as would be appropriate given that PBA is now a Title III Debtor.

28.     The third disclosure issue of concern to the Committee is that the precise series of

Commonwealth and PBA bonds has become a critical factor in these Title III cases and,

therefore, should now be disclosed pursuant to Rule 2019.  In addition, this information should

be disclosed retroactively, at least to May 31, 2019, given the extensive trading of GO Bonds by

Rule 2019(b) Groups that occurred after the execution of the May 31, 2019 Initial PSA.

I.      **Rule 2019(b) Groups Should Provide Greater Clarity With Respect to Bonds Issued
or Guaranteed by Commonwealth**

29.     Many Rule 2019(b) Groups have disclosed economic interests with respect to the

Commonwealth by filing Rule 2019 statements that refer generically to bonds "issued or

guaranteed by" the Commonwealth, without specifying whether the Commonwealth or another

entity issued such bonds.  This practice obfuscates important information with respect to the

bonds at issue—for example, debt issued by a financially healthy entity and guaranteed by an

insolvent debtor may present different issues than debt issued by an insolvent debtor and not

guaranteed.  The Court should therefore (in addition to granting the relief requested elsewhere in

this Motion) take this opportunity to amend the Case Management Procedures to clarify that

proper disclosure under Rule 2019 includes clarification regarding whether bonds have been (a)

issued or (b) guaranteed by the Commonwealth, and, if merely guaranteed, the identity of the

issuer.

II.     **Rule 2019(b) Groups Should Disclose Holdings of PBA Bonds**

30.     As detailed above, the New PSA Groups filed the PBA Related Pleadings, which

made legal and factual assertions that could impact the property and rights of PBA.  Therefore,

the New PSA Groups took positions in PBA's Title III case, and were required to disclose

information regarding PBA bonds under the Case Management Procedures.  Indeed, the fact that

the most recent Rule 2019 statements filed by the Lawful Constitutional Debt Coalition, Ad Hoc

Group of General Obligation Bondholders, and QTCB Noteholder Group now disclose PBA

bonds indicates an understanding that PBA bonds should be disclosed.

31.     Given the above (and in addition to the relief requested elsewhere in this Motion),

(i) the Lawful Constitutional Debt Coalition should file a corrected Rule 2019 statement

amending its deficient Rule 2019 statement dated January 8, 2020, and (ii) the Ad Hoc Group of

Constitutional Debtholders should file a corrected Rule 2019 statement amending its deficient

Rule 2019 statement dated February 7, 2020.

32.     It should also be noted that, in addition to filing the PBA Related Pleadings and

thereby taking a position in PBA's Title III case, the New PSA Groups also effectively took

positions in PBA's Title III case when the entire membership of each group signed the New

PSA, an agreement to restructure PBA's debt pursuant to a Title III plan of adjustment.[21]

Therefore, the Case Management Procedures should be amended to clarify that executing a plan

support agreement with respect to a Title III Debtor constitutes "taking a position" in such

Debtor's Title III case.

---

[21]   Though members of the New PSA Groups signed the New PSA as individual bondholders, it is clear from the
New PSA that they effectively negotiated and entered into the agreement *as groups*.  To give a few examples,
the New PSA (i) requires that an amended plan of adjustment be acceptable to the New PSA Groups, *see* New
PSA, Recital M; (ii) provides for the New PSA Groups to take a number of actions with respect to the
covenants entered into by the Oversight Board and Commonwealth, New PSA § 4.1-4.2; (iii) allows for
termination of the agreement by the New PSA Groups, *id.* § 7.1(b)-(c); and (iv) provides for notices to be sent
to counsel for the New PSA Groups.  *Id.* § 8.11.  In these examples, the New PSA references the New PSA
Groups, not their individual members, and the groups and their members are separately defined (e.g., the New
PSA defines the Lawful Constitutional Debt Coalition as "LCDC" with its members defined as "LCDC
Holders," *id.* § 1.2).

**III.** **Rule 2019(b) Groups Should Disclose Precise Series of Commonwealth and PBA Bonds, Retroactive to May 31, 2019, Pursuant to Classification of Bonds Under New PSA**

33.     The series of Commonwealth and PBA bonds has become a critical factor in the Title III cases given the differential treatment of such bonds under the New PSA, and this information should be disclosed retroactively at least to May 31, 2019 given the extensive trading of GO Bonds by Rule 2019(b) Groups at the same time these groups were negotiating the New PSA.

A.     Legal Standard

34.     Disclosure of information regarding bond series by Rule 2019(b) Groups entails a significant enhancement of customary Rule 2019 disclosure practices in the Title III cases, but consideration of the applicable legal authorities demonstrates that Rule 2019 mandates such disclosure in the current context.

35.     Rule 2019 requires, among other things, disclosures by Rule 2019(b) Groups regarding the "nature and amount of *each* disclosable economic interest" held "in relation to the Debtor" by their members.  FED. R. BANKR. P. 2019(c)(2)(B).  "Disclosable economic interest" means "any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest."  FED. R. BANKR. P. 2019(a)(1).  Moreover, the definition of "disclosable economic interest" is "intended to be sufficiently broad to cover *any economic interest that could affect the legal and strategic positions a stakeholder takes in a chapter 9 or chapter 11 case*."  *Id.*  Advisory Committee Notes (emphasis added).

36.     Case law further clarifies that Rule 2019 requires disclosure regarding the varied positions Rule 2019(b) Group members hold in a debtor's capital structure.  As explained by the court in *Washington Mutual* when deciding to apply Rule 2019 to an *ad hoc* group of creditors

14

(prior to the 2011 amendments to Rule 2019 that clarified its application to such groups), the purchase by creditors of "multiple stakes in the capital structure of debtors" has the "potential to create complex, conflicting incentives." *In re Washington Mut., Inc.*, 419 B.R. 271, 279 (Bankr. D. Del. 2009). This is because where creditors hold "claims at different levels of the debtors' capital structure," a situation arises in which "although a creditor is nominally a member of a certain class of creditors through ownership of securities in that class, the creditor may in fact have a total economic interest adverse to the class as whole." *Id.* at 279-80. Moreover, not only was this possibility "a strong argument in favor of disclosure *of the total economic interest*" of creditors generally, but "the unique problems associated with collective action by creditors through *ad hoc* committees or groups requires disclosure for those groups in particular." *Id.* at 280 (emphasis added). Put simply, creditor groups must disclose their "total economic interest" regarding multiple positions in a debtor's capital structure and, importantly, the disclosure of multiple positions is not merely a byproduct of Rule 2019—it is a core purpose of the rule.[22]

37.     Another case applying Rule 2019 to *ad hoc* groups prior to the 2011 amendment, *Northwest Airlines*, further illustrates the requirement that Rule 2019(b) Groups make disclosures regarding varied interests in a debtor. *In re Nw. Airlines Corp.*, 363 B.R. 704, 709 (Bankr. S.D.N.Y. 2007). There, in denying a request by an *ad hoc* equity committee to file Rule 2019 disclosures under seal, the court reasoned, when clarifying that disclosure was required whether or not the Committee owed fiduciary duties to other equity holders, that:

> Rule 2019 is based on the premise that other shareholders have a right to information as to Committee member purchases and sales so that they make an

---

[22]    The point was made by Bankruptcy Judge Robert E. Gerber in an important letter written to the Advisory Committee on Bankruptcy Rules as it was considering the current revision to Rule 2019 that was enacted in 2011. In a statement of particular relevance to this matter, Judge Gerber wrote that "disclosure of [investors'] holdings often is important to evaluate their contentions . . . particularly . . . when they have positions in both the debt and equity of a debtor, [or] *in debt in different classes* or of different debtors in the case . . . ." Letter from Bankr. J. Robert E. Gerber to Advisory Committee on Bankruptcy Rules, at 8-9 (Jan. 9, 2009), https://www.uscourts.gov/sites/default/files/fr_import/BK2009-03.pdf.

informed decision whether this Committee will represent their interests or whether they should consider forming a more broadly based committee of their own. It also gives all parties a better ability to gauge the credibility of an important group that has chosen to appear in a bankruptcy case and play a major role.

*Id.*  The court then pointed out, among other things, that members of the *ad hoc* equity committee were not only equity holders—they also owned a significant amount of debt—and, further, might sell off their equity holdings.  *Id.*  Per the court, whether members of the equity committee purchased debt at the same time they purchased stock was "a fact that might raise questions as to divided loyalties."  *Id.*  Critically, "Rule 2019 gives other members of the [equity] class the right to know where their champions are coming from." *Id.*  Based on this case law, it is clear that creditor groups must disclose the full spectrum of their economic interests so that the Court and public have a full understanding of those interests.

      B.    <u>Rule 2019 Requires Disclosure of Commonwealth and PBA Bond Series</u>

      38.    Application of the authorities above to the current context of the Title III cases demonstrates that Rule 2019(b) Groups must disclose Commonwealth and PBA bond series information in order to comply with Rule 2019.

      39.    First, the very definition of "disclosable economic interests" in Rule 2019, which is intended to be sufficiently broad to cover any economic interest that could affect a creditor's legal or strategic positions, mandates such disclosure.   Because the New PSA contemplates different treatment for different series of bonds, the series of bonds held by a particular party clearly affects that party's legal and strategic positions with respect to the New PSA.  A party holding only Commonwealth 2014 bonds (with a recovery of approximately 65% under the New PSA) may have a very different position with respect to the agreement than a party holding pre-2011 Commonwealth bonds recovering approximately 75%, or a party that has "hedged its bets" by holding both series.  Disclosing merely that the party holds Commonwealth bonds, without

information as to series, fails to adequately communicate the economic interest affecting that party's legal and strategic positions.[23]

40.     For a concrete illustration of this dynamic, one could consider the Lawful Constitutional Debt Coalition, whose members signed both the Initial PSA and New PSA, and which filed the Late Vintage Claim Objection challenging the validity of certain recent series of GO Bonds.  Understanding the Lawful Constitutional Debt Coalition's decision to settle its Late Vintage Claim Objection at the various discounts provided in the New PSA requires an understanding of whether the Lawful Constitutional Debt Coalition held (in addition to earlier series "lawful" bonds) the more recent series of bonds it was challenging in the Late Vintage Claim Objection.  Merely knowing that a signatory of the New PSA held bonds issued by the Commonwealth or bonds issued by PBA is plainly insufficient to evaluate the bondholder's true position with respect to the settlement.

41.     In addition, the Rule 2019 case law discussed above clarifies that members of Rule 2019(b) Groups must disclose their varied positions in the Title III Debtors' capital structure.  As a result of the New PSA, members of Rule 2019(b) Groups may hold "multiple stakes" in the Commonwealth and/or PBA capital structure.  *See In re Washington Mut., Inc.*, 419 B.R. at 279.  Rule 2019(b) Groups must therefore change their reporting practices and disclose their "total economic interests"—here, the series of Commonwealth and PBA bonds they hold—in order for their true economic incentives to be understood by the Court, parties, and public.  *See id.* at 280.

---

[23]   Indeed, it is under the same logic that the Case Management Procedures explicitly requires disclosure of derivatives and bond insurance or other creditor protection.  Case Management Procedures ¶ IV.A.  The fact that bonds are insured can completely change the risks faced by a bondholder, thus affecting its legal and strategic positions.  Thus, disclosing bond holdings without identifying whether the bonds are insured or whether a bondholder holds derivatives inadequately conveys the economic interest relevant to the Title III cases.  In the same way, because the New PSA differentiates among bond series, the identity of the bond series held by a creditor can alter the risk factors that influence a bondholder's legal or strategic positions.

42.     It is also noteworthy that these Title III cases feature precisely the dynamic described in the case law where "a creditor is nominally a member of a certain class of creditors through ownership of securities in that class," but "the creditor may in fact have a total economic interest adverse to the class as whole."  *Id.*  For example, the Lawful Constitutional Debt Coalition has stated publicly that its membership is made up of certain classes of creditors—holders of "lawful" older series Commonwealth and PBA bonds.[24]  But without Rule 2019 disclosures that report bond series information, there is no way to be sure what economic interests this group really represents.  The Court and public (including other bondholders) have "the right to know" where the purported "champions" of particular types of bonds "are coming from," *In re Nw. Airlines Corp.*, 363 B.R. at 709, through disclosure of the bond series held by Rule 2019(b) Groups.[25]

C.     Disclosure of Bond Series Information Should Be Retroactive

43.     Furthermore, disclosure of series information should be retroactive to May 31, 2019 due to the significant trading activity that took place during the negotiation of the New PSA.  As described above, the Rule 2019 statements filed in these Title III cases show that three Rule 2019(b) Groups, the Lawful Constitutional Debt Coalition, Ad Hoc Group of Constitutional Debtholders, and QTCB Noteholder Group, acquired hundreds of millions of dollars of GO Bonds during the period that the New PSA was negotiated (and another Rule 2019(b) Group, the

---

[24]    *See* Press Releases published in Reorg Research dated February 27, 2019, April 11, 2019, and June 16, 2019 (stating in section titled "About the LCDC" that "[t]he LCDC consists of institutional holders of Puerto Rico's GO and PBA bonds issued prior to March of 2012"), attached hereto as **Exhibit C**.

[25]    The fact pattern here of a bondholder group publicly involving itself in a Title III case without disclosing its true investment position is remarkably similar to the one this Court faced at the July 25, 2018 omnibus hearing. There, in ruling on the Committee's motion [Docket No. 3432] seeking greater disclosure from the Ad Hoc Group of General Obligation Bondholders, which had engaged in public litigation in the COFINA Title III case but failed to disclose its COFINA holdings, the Court granted the Committee's motion for retroactive disclosure, commenting to counsel for the bondholder group that "you were actively involved in taking positions in the public litigation . . . and these are securities that are actively traded in the market . . . why shouldn't the market have full information about where you were at particular times"? Hr' g. Tr. 95:7-9, 14-15, 18-19, July 25, 2018 [Docket No. 3711].

Ad Hoc Group of General Obligation Bondholders, sold hundreds of millions of dollars of such

bonds during this same period).  Information as to the series of the bonds traded during these

negotiations is highly relevant to understanding how and why Rule 2019(b) Groups decided to

support the New PSA and to what degree their true economic interests changed over time.  It is

also important to obtain clarity regarding purchases of other economic interests, such as

unsecured claims, which certain Rule 2019(b) Group members may have purchased but not

disclosed.

        D.       <u>Committee's Request for Rule 2019 Disclosure Is Limited and Reasonable</u>

      44.     Finally, while the Committee recognizes that the Court disagreed with the

Committee's suggestion, early in the Title III cases, that Rule 2019(b) Groups be required to

disclose certain details such as bond CUSIP numbers in connection with Rule 2019 disclosures,

the Committee believes that the current context of the Title III cases demands disclosure of bond

series at this juncture.  As discussed herein, the execution of the New PSA confirms that bond

series is a critical factor in these Title III cases—the Committee is not requesting disclosure

merely for disclosure's sake.  Further, the Committee's request for the disclosure of bond series

is a very limited one—under the Committee's proposal, Rule 2019(b) Groups do not need to list

out dozens of CUSIP numbers or other highly particular information, they only need to

categorize holdings of Commonwealth and PBA bonds by series according to the classification

scheme (involving only eight separate categories, five for the Commonwealth and three for PBA)

under the New PSA, along with any other economic interests such as other types of bonds,

general unsecured claims, and the like.  The Committee's request is eminently reasonable and

narrowly tailored to the unique circumstances of the Title III cases.[26]

---

[26]   The Committee's request is really quite modest considering (i) the tremendous public importance of the Title III cases, which should demand greater disclosure than in a typical bankruptcy case and (ii) the fact that, in failing

45.     Given the above, the Case Management Procedures should be amended as set forth in the Proposed Order to require retroactive disclosure of series information with respect to Commonwealth and PBA bonds, pursuant to the classification of such bonds under the New PSA.

## CONCLUSION

46.     The Committee believes that entry of the Proposed Order amending the Case Management Procedures will help ensure compliance with Rule 2019 and add vital transparency to Puerto Rico's Title III cases.

## NOTICE

47.     Notice of this Motion has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United State Attorney for the District of Puerto Rico; (iii) the Oversight Board; (iv) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (v) the Official Committee of Retired Employees of the Commonwealth of Puerto Rico; (vi) the insurers of the bonds issued or guaranteed by the Debtors; (vii) counsel to

---

to distinguish their various types of bonds other than by insured status and issuer/guarantor, **Rule 2019(b) Groups in the Title III cases have thus far provided *less* disclosure than frequently seen in the chapter 11 context**.  Unlike in the Title III cases, in many recent chapter 11 cases creditor groups have provided Rule 2019 disclosures that, among other things, <u>distinguish among</u> different series of notes by interest rate, maturity, or other attributes.  *See e.g.*, *Verified Sixth Supplemental Statement of Kramer Levin Naftalis & Frankel LLP and Baker & Hostetler LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019, In re FirstEnergy Sols. Corp.,* No. 18-50757 (Bankr. N.D. Ohio Nov. 22, 2019) [Docket No. 3414], (distinguishing among over twenty different note series identified by interest rate, maturity date, and other attributes); *Amended Verified Statement of the Ad Hoc Group of Unsecured Noteholders Pursuant to Federal Rule of Bankruptcy Procedure 2019, In re Sanchez Energy Corp.,* No. 19-34508 (Bankr. S.D. Tex. Dec. 6, 2019) [Docket No. 690] (distinguishing between 7.75% senior unsecured notes due 2021 and 6.125% senior unsecured notes due 2023); *Amended Verified Statement Pursuant to Federal Rule of Bankruptcy Procedure 2019, In re EP Energy Corp.,* No. 19-35654 (Bankr. S.D. Tex. Feb. 12, 2020) [Docket No. 820] (distinguishing between holdings of 1.125 Lien Notes, 6.375% Senior Unsecured Notes and 7.75% Senior Unsecured Notes); *Verified Statement Pursuant to Bankruptcy Rule 2019, In re Parker Drilling Co.,* No. 18-36958 (Bankr. S.D. Tex. Feb. 20, 2019) [Docket No. 365] (distinguishing between 7.50% senior notes due August 2020 and 6.75% senior notes due July 2022); and *Verified Statement of Willkie Farr & Gallagher LLP Pursuant to Bankruptcy Rule 2019, In re Nine West Holdings, Inc.,* No. 18-10947 (Bankr. S.D.N.Y. Nov. 2, 2018) [Docket No. 807] (distinguishing between 8.25% Senior Notes due 2019, 6.875% Senior Notes due 2019, and 6.125% Senior Notes due 2034).

certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors; and (viii) all

parties that have filed a notice of appearance in the above-captioned Title III cases.

## **NO PRIOR REQUEST**

48.    No previous request for the form of relief requested herein has been made to this

or any other court, except as to the request for disclosure on a series-by-series basis that was

previously requested in the informative motion filed at Docket No. 850.  As explained in this

Motion, the Committee submits that disclosure of series-by-series information is appropriate in

light of the treatment of GO Bonds contemplated by the New PSA.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests the Court to enter the proposed order, substantially in the form attached hereto as **Exhibit A**, and grant the Committee such other relief as is just and proper.

Dated: February 25, 2020

*/s/ Luc A. Despins*

**PAUL HASTINGS LLP**
Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and -

*/s/ Juan J. Casillas Ayala*

**CASILLAS, SANTIAGO & TORRES LLC**
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*