# **EXHIBIT B**

**Press Report Regarding Purchase of Unsecured Claims**

CERTIFIED TRANSLATION

## Investment Firm Silver Point Capital Shows Interest in Government's Debt

The firm is buying the debt that the government has with thousands of suppliers and other unsecured creditors

Saturday, December 14, 2019
By Joanisabel González

While the mediation team suggested to Judge Laura Taylor Swain to allow to the Oversight Board's litigation to invalidate part of the public debt, the fiscal organism and the government could face another flank of problems: an investment firm willing to buy government's debt with its suppliers.

About a week ago, the investment firm, Silver Point Capital, sent a letter to certain suppliers and creditors of the government through which it expressed its interest in buying the debt that these have failed to collect from the government and that would be cut as part of the adjustment plan. The Committee of Unsecured Creditors (UCC) also received a communication to those effects.

According to the letter which **El Nuevo Día** had access to, the firm, which specializes in bankruptcy and special situations, offers suppliers and similar creditors of the government more than twice the amount that the Oversight Board proposed in the adjustment plan presented last September.

"Presently, Silver Point is paying 6% (that is, six cents on the dollar) for claims. Our price is based on the fact that the debtor's informative declaration (that is, of the Oversight Board and the government) estimates a recovery on the (unsecured) claims of 1.8%", states the letter signed by Brian A. Jarmain.

Last October, **El Nuevo Día** revealed that the adjustment plan presented by the Oversight Board proposes, at most, to pay thousands of suppliers, contractors, and people with favorable judgments, just 1.8 cents on the dollar for the amount owed before the government's recourse to Title III of PROMESA last May.

Within that class of unsecured creditors, identified by the number 27, the Oversight Board estimated that the government owes about $5,566 million.

The Oversight Board's proposal suggests that, in the best-case scenario, the creditors of the class would receive a total of $100 million, which would be the product of the recovery suits that the Oversight Board has filed, if it prevails in court. Meanwhile, Silver Point's offer would amount to $334 million.

According to former bankruptcy judge, **Gerardo A. Carlo-Altieri**, in recent years it has become common practice that funds with capital and capacity to litigate in bankruptcy cases offer to buy debtor's credits.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:11746-2 Filed:02/25/20 Entered:02/25/20 19:35:03 Desc: Exhibit B - Press Report Regarding Purchase of Unsecured Claims Page 3 of 7

Page **2** of **3**

CERTIFIED TRANSLATION

"There are people who buy claims. There is an industry related to that. What was happened is that, for some time, there are 'hedge funds' that speculate on these larger bankruptcy cases, and then, they are very aggressive during litigation", explained Carlo-Altieri.

As per the former judge, if the fund is willing to pay more than the debtor proposes, it is solely because it believes that it will receive a superior amount when the case is decided.

"These groups are ferocious in their approach to litigations and manage to double, triple, and more, the benefits received. The typical case is Argentina where the benefit was more than 1,000%", remembered Carlo-Altieri.

"They make life impossible for other creditors as well as for the debtor and, in the long run, obtain a transaction or reach the highest court", added Carlo-Altieri while indicating that Puerto Rico has already had a taste of those practices with the challenge by Aurelius and other funds to the constitutionality of the Oversight Board.

"What is not very common is to buy debt from suppliers or unsecured creditors because we are talking about hundreds of thousands of claims in these cases", said Carlo-Altieri.

Essentially, Silver Point's proposal is to liquidate what a government contractor has as an uncollected account payable in its books.

Silver Point's letter notes that the firm has managed about $12 billion in claims and, since it is one of the world's top 100 largest private inversion funds, it is eligible to classify as an institutional investor. The letter also indicates that the firm began to operate in 2002; that its founders – **Edward A. Mule** and **Robert J. O'Shea** – are experts in the matter and they previously served as executives for Goldman Sachs.

The firm also bought credits in known bankruptcy cases, such as: Enron, WorldCom, Adelphia, Lehman Brothers, Kmart, among others.

According to Carlo-Altieri, in this situation, each creditor should consider what is most convenient for itself.

"The creditor has to analyze if it can wait for the case to be resolved and if it has the resources to litigate", he explained.

For the former judge the main challenge in these cases is that the individual creditors have little financial depth or expertise to dispute its credit in court and, in most cases, the creditors' committees serve as the vehicle to recover what has not been paid. Also, in Puerto Rico's adjustment plan, the estimated recovery figure is 1.8%, a quantity that could be reduced or increased, once the document with which the government's obligations are restructured is modified.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:11746-2 Filed:02/25/20 Entered:02/25/20 19:35:03 Desc: Exhibit B - Press Report Regarding Purchase of Unsecured Claims Page 4 of 7

Page **3** of **3**

CERTIFIED TRANSLATION

"The UCC has fought tremendously in this case, but it has not achieved much", said Carlo-Altieri when adding that when dealing with such specialized attorneys with almost unlimited resources, such as the ones granted to the Oversight Board and other bondholders, it is unlikely that an individual may prevail.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**PARA SUSCRIPTORES**

# La firma de inversiones Silver Point Capital muestra interés por la deuda del gobierno

Está comprando la acreencia que el gobierno mantiene con miles de suplidores y otros acreedores no asegurados

sábado, 14 de diciembre de 2019 - 12:00 AM

Por Joanisabel González



La propuesta de la firma de inversionistas Silver Point es convertir en liquidez lo que ahora un contratista del gobierno tiene como una cuenta sin cobrar en sus libros. (GFR Media)

Mientras el equipo de mediación sugirió a la jueza **Laura Taylor Swain** que dé paso a los litigios de la **Junta de Supervisión Fiscal** (JSF) para invalidar parte la deuda pública, **el organismo fiscal y el gobierno podrían encarar otro flanco de problemas: una firma de inversiones dispuesta a comprar la deuda que el gobierno mantiene con sus suplidores**.

**Desde hace aproximadamente una semana, la firma de inversiones Silver Point**

Capital ha enviado una carta a ciertos suplidores y acreedores del gobierno, expresando interés en comprar la deuda que estos no han logrado cobrar al gobierno y que se recortaría como parte del plan de ajuste. El Comité de Acreedores no Asegurados (UCC, en inglés) también habría recibido una comunicación a esos efectos.

**PUBLICIDAD**

Según la carta a la que tuvo acceso **El Nuevo Día**, la firma especializada en bancarrota y en situaciones especiales ofrece a los suplidores y acreedores similares del gobierno puertorriqueño más de dos veces la cantidad que la JSF propuso en el plan de ajuste radicado en septiembre pasado.

"Al presente, Silver Point está pagando 6% (es decir, seis centavos de dólar) por reclamaciones. Nuestro precio descansa en el hecho de que la declaración informativa del deudor (es decir, de la JSF y el gobierno) estima una recuperación en las reclamaciones (no aseguradas) de 1.8%", reza la carta firmada por Brian A. Jarmain.

**En octubre pasado, El Nuevo Día reveló que el plan de ajuste propuesto por la JSF propone, como máximo, pagar a miles de suplidores, contratistas y personas con sentencias a su favor, apenas 1.8 centavos de dólar por lo adeudado antes de que el gobierno se acogiera al Título III de Promesa en mayo pasado.**

En esa clase de acreedores no asegurados, identificada con el número 27, la JSF estimó que el gobierno adeuda unos $5,566 millones.

**La propuesta de la JSF apunta a que, en el mejor de los casos, los acreedores de esa clase recibirían en total unos $100 millones y ese dinero saldría de las acciones de recobro que la JSF ha radicado, si prevalece en corte. Entre tanto, la oferta de Silver Point supondría unos $334 millones.**

**PUBLICIDAD**

Según el exjuez de Quiebras, **Gerardo A. Carlo-Altieri**, desde hace unos años, se ha vuelto práctica común que fondos con capital y capacidad para litigar en casos de bancarrota, ofrezcan comprar las acreencias de los deudores.

## Práctica común la compra de reclamaciones

"Hay gente que se dedica a comprar reclamaciones. Hay una industria de eso. Lo que ha pasado es que de un tiempo para acá, hay unos 'hedge funds' que especulan con estos casos grandes de bancarrota y luego, son muy agresivos en los litigios", explicó Carlo-Altieri.

**De acuerdo con el jurista, si el fondo está dispuesto a pagar una suma superior a la que propone el deudor es porque cree o apuesta que cobrará mucho más cuando el caso se decida.**

"Estos grupos son muy feroces en su acercamiento a los litigios y consiguen duplicar, triplicar y mucho más a veces los beneficios. El caso típico es Argentina donde el beneficio fue de más de

1,000%", recordó Carlo-Altieri.

**"Ellos le hacen la vida imposible a los demás acreedores y al deudor y a la larga consiguen una transacción o llegan hasta el último de los foros en el tribunal",** agregó Carlo-Altieri al indicar que Puerto Rico ya ha tenido un sabor de esas prácticas con la impugnación de Aurelius y otros fondos a la constitucionalidad de la JSF.

**PUBLICIDAD**

"Lo que no es muy común es que se compre deuda de suplidores o acreedores no asegurados porque estamos hablando de cientos de miles de reclamaciones en estos casos", dijo Carlo-Altieri.

En esencia, la propuesta de Silver Point es convertir en liquidez lo que ahora un contratista del gobierno tiene como una cuenta sin cobrar en sus libros.

**En la misiva de Silver Point, se destaca que la firma ha gestionado unos $12,000 millones en reclamaciones y que por tratarse de uno de los 100 fondos de inversión privada más grandes del mundo, es elegible para clasificarse como un inversionista institucional.** Se indica además que la firma comenzó a operar en 2002; que sus fundadores -**Edward A. Mulé** y **Robert J. O'Shea**- son expertos en la disciplina y que antes se desempeñaron como ejecutivos para Goldman Sachs.

**La firma habría comprado acreencias en sonados casos de bancarrota como: Enron, WorldCom, Adelphia, Lehman Brothers y Kmart, entre otros.**

De acuerdo con Carlo-Altieri, en este tipo de situación, cada acreedor debe considerar lo más conveniente para sí.

"Ese acreedor tiene que analizar si puede esperar a que se resuelva el caso y si tiene los recursos para litigar", explicó.

**Según el exjuez, el reto principal en estos grandes casos, es que los acreedores individuales tienen poca profundidad financiera o pericia para disputar su acreencia en el tribunal** y en la mayoría de los casos, son los comités de acreedores, el vehículo para recuperar loque no ha cobrado. Además en el caso del plan de ajuste de Puerto Rico, la cifra de recuperación estimada es de 1.8%, una cifra que podría reducirse o aumentar, una vez se modifique el documento con que se reestructurarán las obligaciones del gobierno.

**PUBLICIDAD**

"El UCC ha dado una pelea tremenda en este caso, pero no ha logrado mucho", indicó Carlo-Altieri al agregar que cuando se lidia con baterías de abogados tan especializados y con recursos casi ilimitados como los que tiene la JSF y los otros grupos de bonistas, es poco probable que un individuo pueda prevalecer.