UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- x
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
    as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.*, :
: (Jointly Administered)
:
    Debtors.[1] :
---------------------------------------------------------------------- x

**OMNIBUS REPLY IN FURTHER SUPPORT OF MOTION OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS FOR ORDER, PURSUANT TO
BANKRUPTCY CODE SECTIONS 105(A) AND 502 AND BANKRUPTCY RULE 3007,
(A) SETTING BRIEFING SCHEDULE AND HEARING DATE FOR OMNIBUS
OBJECTION TO CLAIMS FILED OR ASSERTED AGAINST COMMONWEALTH BY
HOLDERS OF GENERAL OBLIGATION BONDS ASSERTING PRIORITY OVER
OTHER COMMONWEALTH UNSECURED CREDITORS, (B) APPROVING FORM
OF NOTICE AND (C) GRANTING RELATED RELIEF**

To the Honorable United States District Judge Laura Taylor Swain:

    The Official Committee of Unsecured Creditors (the "Committee")[2] hereby files this omnibus reply in further support of its motion (the "Procedures Motion")[3] for an order, pursuant to Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, setting briefing

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3] Capitalized terms not defined herein shall have the meanings given to them in the Procedures Motion.

1

schedule, notice procedures and hearing date, approving the form of notice and granting related relief with respect to the GO Priority Objection, and in response to the objections filed by (a) certain GO Bondholders parties to the plan support agreement with the Oversight Board [Docket No. 11133] (the "GO Bondholder Objection"), (b) Peter C. Hein [Docket No. 11150] (the "Hein Objection"), and (c) the Oversight Board [Docket No. 11462] (the "Oversight Board Objection," and together with the GO Bondholder Objection and Hein Objection, the "Objections"). In support of the Procedures Motion, the Committee and respectfully states as follows:

## OMNIBUS REPLY

1. The GO Priority Objection raises purely legal issues, does not require fact discovery, and, therefore, is ripe for a determination on its merits. But that is not what is before the Court at this time. Instead, the Procedures Motion requests only that (a) the Court approve procedures to provide notice to holders of GO Bonds of the GO Priority Objection that are modeled after notice procedures previously approved by this Court[4] and (b) the Court set a briefing schedule and June 3, 2020 as the hearing date for the GO Priority Objection.

2. The Oversight Board and the GO Bondholders raise no objections to the proposed procedures themselves, nor do they dispute that the GO Priority Objection raises purely legal issues and does not require fact discovery. Instead, they argue only that the GO Priority Objection should be stayed because the issues raised therein are supposedly being settled by an amended plan of adjustment (the "Amended Plan") to be filed by the Oversight Board on or before February 28, 2020 pursuant to the plan support agreement (the "PSA") reached between

---

[4] *Order, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, Establishing Initial Procedures with Respect to Omnibus Objection of (i) Financial Oversight and Management Board Acting Through its Special Claims Committee, and (ii) Official Committee of Unsecured Creditors to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds and Granting Related Relief* [Docket No. 2521].

those same parties. In addition, the Oversight Board contends that the Committee, the only fiduciary for unsecured creditors in these Title III cases, has no standing to protect the interests of its constituents, by objecting to the asserted priority of the GO Bonds.

3. Mr. Hein objects to the Motion on the same grounds previously overruled by this Court with respect to similar notice procedures motions. For the reasons set forth below, each of the Objections is without merit and should be overruled.

A. **GO Priority Objection Should Not Be Stayed**

4. As set forth in detail in the Committee's response (the "Response") to the *Amended Report and Recommendation of Mediation Team*, dated February 10, 2020 (the "Amended Report") [Docket No. 10756],[5] including paragraphs 1 through 20 and paragraph 50 (each of which are incorporated by reference herein), staying the GO Priority Objection would undermine, rather than promote, judicial economy because resolution of whether the GO Bonds are entitled to priority is a gating issue for the Oversight Board's Amended Plan.[6]

5. In this regard, and as detailed in the Response, courts routinely decide gating issues before the confirmation hearing. *See Gabriel Techs Corp.*, No. 13-30341, 2013 WL 550391, at *3 (Bankr. N.D. Cal. Oct. 7, 2013) (court stayed "costly and uncertain confirmation" process pending outcome of a pending appeal because the "outcome of the Appeals is so critical to the ultimate disposition of these cases . . . ."); *In re Texas Rangers Baseball Partners,* 434 B.R. 393, 397 (Bankr. N.D. Tex. 2010) ("the court posed five questions pertinent to the

---

[5] *See Omnibus Response of Official Committee of Unsecured Creditors to (A) Amended Report and Recommendation of Mediation Team and (B) Joint Motion for an Order (I) Scheduling a Hearing to Consider Adequacy of Information Contained in Disclosure Statement, (II) Establishing Deadline for Filing Spanish Translation of Disclosure Statement, (III) Establishing Deadline for Filing Objections to Disclosure Statement and Replies thereto, and (IV) Granting Related Relief* [Docket No. 11482].

[6] As set forth in the PSA, the Oversight Board purports to settle the priority dispute by agreeing to distribute **96.4%** of the Amended Plan consideration (not counting retiree benefits) to the holders of GO Bonds. In addition, the Oversight Board agreed to pay GO Bondholders $400 million to stay committed to the PSA.

3

confirmability of" the debtor's prepackaged plan and "addresse[d] these issues prior to a plan confirmation hearing in the interests of judicial economy.").[7]

6. The Mediation Team also recognizes the value of the Court ruling on gating issues prior to the confirmation hearing of the Amended Plan. For example, one of the specific claims on which the Mediation Team recommends the parties seek summary judgment in connection with the revenue bonds litigation at this time is the Oversight Board's request for "[d]issallowance of claims for post-PROMESA unlawful retention of allocable revenues because allocable revenue statutes are **preempted by PROMESA**."[8] Whether PROMESA preempts Commonwealth statutes is also the central issue raised in the GO Priority Objection. Thus, even though the Mediation Team recommends that the GO Priority Objection be stayed, the Committee submits that resolution of that issue cannot be avoided, and, accordingly, should be decided now.

7. In addition, the Court cannot avoid the preemption issue for another reason. It is likely that at least some holders of GO Bonds will object to the Amended Plan on the ground that GO Bonds are entitled to full payment on account of the asserted constitutional priority (as allegedly incorporated into Title III) before any consideration is given to other unsecured creditors.[9] Such objection is entitled to be heard on its merits, and cannot be settled through a

---

[7] *See also In re ReoStar Energy Corp.*, No. 10-47176, 2012 WL 1945801, at *2 (Bankr. N.D. Tex. May 30, 2012) (court ruled on certain issues "prior to allowing [the plan proponents] to disseminate the Plan and Disclosure Statement to creditors"); *In re Mirant*, No. 03-46590-DML-11, 2005 WL 6440372, at *1, n.1 (Bankr. N.D. Tex. May 24, 2005) ("The court's determination of these issues will be effective for purposes of any confirmation hearing on the Plan . . . Because the parties identified certain critical issues posed by the Plan the court, with the consent of the parties, determined to address some matters relating to confirmability of the Plan prior to confirmation and in connection with consideration of Debtors' disclosure statement.").

[8] Amended Report at 15 (emphasis added).

[9] For example, Mr. Hein makes this argument in response to the Amended Report. *Response and Objection of Individual Bondholder to (1) Amended Report and Recommendation of Mediation Team and (2) Debtors' Proposed Schedule* at 7 ("Reversing Puerto Rico's Constitutional and statutory priorities is not permissible even under PROMESA at the Plan confirmation stage (48 U.S.C. §§ 2174(b)(3), (6), (7); 2141(b)(1)(N)), and would be a violation of the U.S. Constitution."). [Docket No. 11284]. Obviously, the Committee disagrees with any

4

GO Bondholder class vote supporting a so-called settlement of the priority issue. Thus, the Court will have to address the merits of the GO priority issue prior to or at the confirmation hearing (and not just whether a settlement of the issue is reasonable). In short, whether in the context of the revenue bond litigation or an objection to confirmation of the Amended Plan, the Court will have to address whether PROMESA's Title III preempts Commonwealth priorities. Resolving the GO Priority Objection now (as opposed to at confirmation) will avoid the significant cost and delay of having to re-solicit a further revised plan.[10] It also makes little sense for the Oversight Board to continue to argue (rightly) that PROMESA preempts Commonwealth law priorities,[11] while staying the consideration of the GO Priority Objection (which is based on the same preemption argument) until confirmation and limiting such consideration to a reasonableness analysis.

8. The Oversight Board also implies that the Committee filed the Motion "to accelerate the briefing schedule" on the GO Priority Objection in reaction to the Oversight

---

assertion that GO Bonds are entitled to any priority in Title III and, accordingly, reserves all its rights in this regard.

[10] As set forth in the Response, the First Circuit recently affirmed this Court's ruling that PROMESA preempted "any Puerto Rico law" that required the Commonwealth to reprogram funds from prior fiscal years. *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 945 F. 3d 3, 8 (1st Cir. 2019). Moreover, the First Circuit also held that section 201(b)(1)(N) of PROMESA (which provides that a fiscal plan shall "respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial instrumentality in effect prior to June 30, 2016") "governs only the Board's Fiscal Plan, not the operation of Title III of PROMESA." Accordingly, it is clear that the GO Bond Priority Objection, premised on the notion that PROMESA preempts any Commonwealth priority for GO Bonds, stands on good ground.

[11] *See* Response at 11-12, n. 24, for a recitation of the numerous times that the Oversight Board asserted that Commonwealth statutes relating to priority of claims were preempted by PROMESA, including *Complaint Objecting to Defendants Claims and Seeking Related Relief* [Docket No. 1 in Adv. Proc. No. 20-003] ¶¶ 156-57, 279 ("Any Commonwealth laws purporting to recognize priority claims other than those included in PROMESA Title III (and the incorporated Bankruptcy Code provisions) are preempted pursuant to PROMESA section 4;" "[n]one of Defendants' claims qualify for priority under PROMESA Title III's sole priority claim in Bankruptcy Code section 507(a)(2) for administrative expenses;" "even if Ambac had a priority under Commonwealth law (not based on a lien), such priority is not recognized in PROMESA Title II).

5

Board's disclosure of the PSA with GO Bondholders.[12] In fact, the GO Priority Objection was filed on February 3, 2020, six (6) days prior to the Oversight Board announcing the PSA, and the Procedures Motion was filed in the early afternoon on February 9, 2020, several hours before the Oversight Board's announcement. Moreover, the Procedures Motion does not seek to "accelerate the briefing schedule." Indeed, the opposite is true. Bankruptcy Rule 3007(a) requires that the objector to a claim give the claimant thirty (30) days-notice of the hearing on the objection. In this case, the Committee seeks the GO Priority Objection to be heard on June 3, 2020, one-hundred and twenty (121) days **after** the GO Priority Objection was filed.

9. Further, the Committee could have chosen to file the GO Priority Objection only with respect to bond claims known to the Committee on thirty (30) days-notice. Instead, the Committee is proposing procedures that would allow all GO Bondholders to participate in the litigation of the GO Priority Objection, on more than thirty (30) days-notice.

10. For all these reasons, the Court should not delay prosecution of the GO Priority Objection.

B. <u>Committee Has Standing to Prosecute GO Priority Objection</u>

11. The Oversight Board also asks this Court to deny the Motion on the ground that the Committee does not have standing to file claim objections. As an initial matter, this is a substantive response to the GO Priority Objection that has no bearing on the merits of the Procedures Motion, which is concerned only with the procedures for providing holders of GO Bonds with notice of, and an opportunity to respond to, the GO Priority Objection (including by raising any standing arguments).

---

[12] Oversight Board Objection ¶ 2.

12. Furthermore, the Oversight Board's reliance upon this Court's *Memorandum Order Terminating Objection of Official Committee of Unsecured Creditors to Proof of Claim Number 18499 Filed by U.S. Bank National Association, in its Capacity as Trustee for Non-Recourse PREPA Bonds* [Case No. 17 BK 4780-LTS, Docket No. 9695] ("Memorandum Order") in support of its contention that the Committee has no standing to act on its GO Priority Objection is misplaced. First, the Court in the Memorandum Order specifically "decline[d] . . . to address the parties' arguments related to the Committee's statutory standing, or lack thereof, to assert its Objection." Memorandum Order at 4. Second, while the Court stated that "Section 502 does not compel the Court to schedule a hearing on the merits of a claim objection at any particular time," Memorandum Order at 5, it did not hold that the Court has no authority to schedule such a hearing.

13. Moreover, the Committee is appealing[13] the Memorandum Order because, among other reasons, the Court's decision is premised on the right of a fiduciary for a bankruptcy estate to settle a dispute, notwithstanding a pending claim objection.[14] The Oversight Board is not a fiduciary and does not represent the interests of the Commonwealth's general unsecured creditors, as demonstrated by (a) its decision to give 96.4% of the aggregate consideration under the Amended Plan (not counting retiree benefits) to the GO Bondholders,[15] (b) its proposal that

---

[13] *The Official Committee of Unsecured Creditors' Notice of Appeal of Memorandum Order Terminating Objection of Official Committee of Unsecured Creditors to Proof of Claim Number 18499 Filed by U.S. Bank National Association, in its Capacity as Trustee for Non-Recourse PREPA Bonds* [Case No. 17-04780-LTS, Docket No. 1878].

[14] *See* Memorandum Order at 5 ("The reasoning in *In re Heritage Org., L.L.C.* is instructive: 'While any party in interest has a statutory right to object to a claim, **the Trustee, as the representative of the estate,** has the ability to compromise that objection, as long as the objectant is given notice and an opportunity to be heard with respect to the fairness and wisdom of the compromise.'). (emphasis supplied)

[15] Demonstrating who is driving the Amended Plan bus, the GO Bondholders urge the Court to stay the GO Bond Priority Objection because, "[a]t the appropriate time, the PSA Creditors will demonstrate the merits of the New PSA and underlying settlements." GO Bondholder Objection at 10. It is not surprising that the GO

general unsecured creditors only receive "up to 1.8%" on account of their claims, and (c) its previous statements to this Court contending that the Oversight Board "stands in the shoes of the debtor government entity," as opposed to representing the estate and its constituents like a bankruptcy trustee.[16]

14. In any event, as set forth above, the question of whether the Committee has standing to prosecute the GO Priority Objection can be (and is more properly) raised as a defense to the GO Priority Objection itself, and not to the Procedures Motion.

C. **Mr. Hein's Objection**

15. Mr. Hein objects to the Motion on the grounds that (a) notice of the GO Priority Objection should be published in the *Wall Street Journal,* (b) procedures should be developed to facilitate the interests of *pro se* litigants, and (c) an individual bondholders committee should be formed. This Court has already overruled these requests in connection with prior procedures motions, and there is no reason to revisit these issues yet again.[17]

16. Mr. Hein also raises the additional argument that the GO Priority Objection is barred by the *Interim Case Management Order* entered by this Court on December 19, 2019

---

Bondholders believe that the settlement is meritorious, after all, they are receiving a $400 million "tip" to support it.

[16] *Opening Brief for Petitioner the Financial Oversight and Management Board for Puerto Rico* at *51, *Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC,* No. 18-1334, 2019 WL 3408805 (U.S. July 25, 2019). This statement is consistent with case law interpreting chapter 9 of the Bankruptcy Code. *See Cty. of Orange*, 219 B.R. 543, 557 (Bankr. C.D. Cal. 1997) ("chapter 9 debtor does not assume the same fiduciary responsibilities that a trustee has under the Code").

[17] *See e.g., Response and Objection to Docket 4788 and 4789, FOMB's Purported Urgent Motion of Individual Bondholder Residing in the 50 States who Purchased in 2012 at the Original Offering Price* at 4 (There should be a bondholders' committee, there should be a "user friendly process" for transmission of documents to court) [Docket No. 4913]; *Order Regarding Request for Appointment of an Official Committee of Holders of General Obligation Bonds* [Docket No. 5023] (denying Mr. Hein's request for bondholders' committee); *Response of Individual General Obligation Bondholder to Amended Motion of FOMB and UCC, to (A) Extend Deadlines and (B) Establish Revised Procedures of Certain Commonwealth General Obligation Bonds Issued in 2011, 2012 and 2014, and for Related Relief* at 4 ("No notice was published in the *Wall Street Journal* despite my request, Docket #5103-page6-11.") [Docket No. 7540].

8

[Docket No. 9619] (the "Interim Case Management Order") because objections to the validity of GO Bonds were required to be filed by January 8, 2020. Mr. Hein is mistaken. The GO Priority Objection does not challenge the validity of GO Bonds, it only objects to the purported priority of GO Bonds. The Interim Case Management Order does not impose any deadline to object to GO Bonds on the basis that they are not entitled to priority status. Accordingly, the GO Priority Objection was timely-filed.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Committee respectfully requests that the Court grant the relief requested in the Procedures Motion, including scheduling the hearing on the GO Priority Objection for June 3, 2020, and grant such other relief as is equitable and just.

Dated: February 26, 2020

By: */s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

-and-

By: */s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*