# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | |

## OMNIBUS REPLY OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO IN SUPPORT OF DEBTORS' (I) JOINT SCHEDULING MOTION [ECF NO. 10808] AND (II) PRE-SOLICITATION PROCEDURES MOTION [ECF NO. 10839]

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations) .

**TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................. 3

I.     Granting the Motions Is in the Best Interests of the Title III Cases and Preserves Due Process Rights ................................................................................................................... 4

     a.     The Scheduling Motion ......................................................................................... 4

     b.     The Pre-Solicitation Procedures Motion ............................................................... 8

CONCLUSION .............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Howell v. Town of Leyden*,
 335 F. Supp. 2d 248 (D. Mass. 2004) ......................................................................................6

*New Hampshire v. Maine*,
 532 U.S. 742 (2001) ..................................................................................................................6

**STATUTES**

PROMESA (48 U.S.C. §§ 2101-2241) .........................................................................................1

PROMESA § 104(j) .......................................................................................................................5

PROMESA § 306(a) .......................................................................................................................2

PROMESA § 307(a) .......................................................................................................................2

PROMESA § 312(a) .......................................................................................................................5

PROMESA § 314(b)(5) ..................................................................................................................5

PROMESA § 315(b) ...................................................................................................................1, 2

PROMISA § 313 .............................................................................................................................5

**OTHER AUTHORITIES**

Bankruptcy Rule 2002 ....................................................................................................................8

Bankruptcy Rule 2002(b) ...............................................................................................................8

**To the Honorable United States District Judge Laura Taylor Swain**:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and Puerto Rico Public Buildings Authority ("PBA"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] (the Oversight Board, in its capacity as representative of the Commonwealth, ERS, and PBA, is referred to as the "Debtors"), respectfully submits this omnibus reply (the "Reply") in support of (1) the *Joint Motion for an Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Spanish Translation of the Disclosure Statement, (III) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, and (IV) Granting Related Relief* (the "Scheduling Motion") [ECF No. 10808] and (2) the *Motion of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for an Order (A) Establishing Pre-Solicitation Procedures for Certain Holders of Retirement Benefit Claims, (B) Establishing Procedures and Deadlines for Submission of Information Necessary for Solicitation of Acceptance or Rejection of Plan of Adjustment by Such Claimants, and (C) Approving Form and Manner of*

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

1

*Notice Thereof* [ECF No. 10839] (the "Pre-Solicitation Procedures Motion" and together with the Scheduling Motion, the "Motions")[3] and in response to:

1) the *Limited Opposition* to the Scheduling Motion, filed by Salud Integral de la Montaña, Inc. ("SIM") [ECF No. 11059] (the "SIM Objection");

2) the *Objection and Reservation of Rights with Respect to* the Scheduling Motion filed by Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, Ambac Assurance Corporation, Financial Guaranty Insurance Company, and Invesco Funds (together, the "Monolines") [ECF No. 11095] (the "Monoline Objection");

3) the *Limited Response* to the Scheduling Motion filed by the Official Committee of Retired Employees of Puerto Rico ("Retiree Committee") [ECF No. 11121] (the "Retiree Committee Response");

4) *The Puerto Rico Fiscal Agency and Financial Advisory Authority's (I) Objection to the Financial Oversight and Management Board for Puerto Rico's (A) Motion to Schedule a Disclosure Statement Hearing [ECF No. 10808] and (B) Motion to Establish Pre-Solicitation Procedures [ECF No. 10839]; and (II) Response to the Amended Report and Recommendation of the Mediation Team [ECF No. 10756]* filed by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") [ECF No. 11159] (the "AAFAF Objection");

5) *Response and Objection of Individual Bondholder to (1) Amended Report and Recommendation of Mediation Team and (2) Debtors' Proposed Schedule* filed by Peter C. Hein [ECF No. 11284] (the "Hein Objection");

6) *Limited Response of Official Committee of Unsecured Creditors to Motion of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for an Order (A) Establishing Pre-Solicitation Procedures for Certain Holders of Retirement Benefit Claims, (B) Establishing Procedures and Deadlines for Submission of Information Necessary for Solicitation of Acceptance or Rejection of Plan of Adjustment by Such Claimants, and (C) Approving Form and Manner of Notice Thereof* [Case No. 17-3283, ECF No. 11335, Case No. 17-3566, ECF No. 813] (the "UCC Objection (Pre-Solicitation)")and

7) the *Omnibus Response of Official Committee of Unsecured Creditors to (A) Amended Report and Recommendation of Mediation Team and (B) Joint Motion for an Order (I) Scheduling a Hearing to Consider Adequacy of Information Contained in Disclosure Statement, (II) Establishing Deadline for Filing Spanish Translation of Disclosure Statement, (III) Establishing Deadline for Filing Objections to Disclosure*

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed in the Motions, as applicable. A corrected proposed order is attached hereto as **Exhibit A**, correcting the proposed time and date of the Disclosure Statement Hearing to 9:30 a.m., Atlantic Standard Time, on June 3, 2020.

2

>*Statement and Replies Thereto, and (IV) Granting Related Relief* filed by the Official Committee of Unsecured Creditors (the "Creditors' Committee" and, together with SIM, the Monolines, AAFAF, and Peter C. Hein, the "Objecting Parties") [ECF No. 11482] (the "UCC Objection (DS)" and, together with the SIM Objection, the Monoline Objection, the AAFAF Objection, the UCC Objection (Pre-Solicitation), and the Hein Objection, the "Objections").[4]

In support of this Reply, the Oversight Board respectfully states as follows:

## ARGUMENT

1. Almost three years into these Title III cases, the Debtors have reached a critical point with the execution of the PSA, and are on a clear and viable path to confirmation and emergence from these Title III cases. Through the Scheduling Motion and the Pre-Solicitation Procedures Motion, the Debtors seek to ensure that these Title III cases continue to progress steadily, with the benefit of complete information, yet with ample time to preserve all parties' rights. The Objecting Parties assert that establishing the procedures and deadlines proposed in the Motions are premature because, among other things, the Government of Puerto Rico (the "Government") does not currently support the Debtors' plan of adjustment, and certain "gating issues" must be resolved first. *See* Monoline Obj. at ¶ 2; AAFAF Obj. at 7. The bulk of these issues, however, relate to approval of the Amended Disclosure Statement or confirmation. Accordingly, these merits issues are appropriately addressed at the Disclosure Statement Hearing or at confirmation—not in connection with a mere *scheduling* motion. Consistent with the agreements contained in the PSA, the Debtors intend to file an amended plan of adjustment and Amended Disclosure Statement by February 28, 2020. There is ample time pursuant to the Debtors' proposed timeline—in fact, several weeks more than what is required pursuant to the

---

[4] The Retiree Committee Response does not object to the Motions, but rather informs parties that the Retiree Committee intends "to ask the Court to approve specifically for the benefit of retirees a concise summary, separate from the Amended Disclosure Statement, explaining to retirees in clear, common language how their retirement benefits will be treated under the proposed [amended plan]." Retiree Committee Response at 2.

3

Bankruptcy Rules—to review the Amended Disclosure Statement. Accordingly, the requested relief does not prejudice any party's rights to object to approval of the Disclosure Statement or confirmation at the appropriate time.

2. If the Motions are not granted, and the Debtors are unable to meet the PSA milestones, the PSA may be terminated, and the path to emergence from Title III that the Oversight Board, the Debtors, the Mediation team, the other PSA parties, and their advisors have worked for years to achieve, if at all possible, would have to be reworked yet again. And, as even AAFAF recognizes, moving these Title III cases forward expeditiously is in the Debtors' and the people of Puerto Rico's best interests. *See* AAFAF Obj. at ¶ 12. The Motions do this while preserving parties' rights. Accordingly, the Court should grant the Motions.

## I. Granting the Motions Is in the Best Interests of the Title III Cases and Preserves Due Process Rights

### a. The Scheduling Motion

3. The PSA represents a critical mass of support for the Debtors' proposed Plan. The initial signatories to the PSA hold in excess of $8 billion in GO Bond Claims and PBA Bond Claims, and, as of February 21, 2020, parties to the PSA have increased and GO Bonds and PBA Bonds in support have swelled to in excess of $10 billion.[5]

4. Although the Debtors will continue to work with parties to further gain support for the Plan, establishing a timeline for an orderly confirmation process right now is in the best interests of the Debtors' cases. AAFAF suggests that scheduling hearings at this time wastes resources because the plan "is doomed to fail because it does not have Government support."

---

[5] *See* Notice of Support for Plan Support Agreement, *available at* https://drive.google.com/open?id=1durYYw1BqAkBo5q61e_QJ7R4SFFui9Qc; Financial Oversight and Management Board for Puerto Rico, *Oversight Board Reaches New, More Favorable Agreement to Restructure $35 Billion of Liabilities*, dated February 9, 2020, *available at* https://drive.google.com/open?id=1bE04jvOmiJObY4OMtohmJmZkTaCUUurl.

4

AAFAF Obj. at ¶ 6, 10; *see also* UCC Obj. (DS) at ¶ 42.[6,7] But, the Oversight Board submits that such comment is temporary in nature and, hopefully, will be changed. Specifically, while the Oversight Board and the Government have not resolved all outstanding issues, the parties will continue to engage in meaningful discussions with every hope that a resolution will be reached to obtain a consensual outcome. There is no reason plan confirmation and further discussions cannot occur in parallel.

5.  While the Creditors' Committee expresses similar concerns, *see* UCC Obj. (DS) at ¶ 41 ("It will waste time and resources to rush to confirmation now . . . ."), there is no reason to interrupt the process and timeline carefully adopted by the Mediation Team with input from all parties. The alternative imposes significant costs of its own. If, as a result of delaying scheduling the Disclosure Statement Hearing, the required milestones pursuant to the PSA are not met and the parties terminate the PSA, the Debtors would lose the significant benefits of the PSA—perhaps something the Creditors' Committee desires. Months of negotiations will have been wasted and additional months may yet be needed to achieve the same level of consensus, all at the expense of the Debtors and the people of Puerto Rico. Indeed, the longer the Title III cases remain pending,

---

[6] Accepting AAFAF's assertions would mean that setting a hearing schedule requires the Government to approve the Debtors' proposed amended plan at this time. *See, e.g.,* AAFAF Obj. at ¶¶ 6 - 9. Congress gave the Oversight Board the exclusive authority to submit and modify a Title III plan of adjustment. *See* PROMESA § 312(a) ("Only the Oversight Board, after the issuance of a certificate pursuant to section 104(j) of this Act, may file a plan of adjustment of the debts of the debtor."); *id.* § 313 ("The Oversight Board, after the issuance of a certification pursuant to section 104(j) of this Act, may modify the plan at any time before confirmation . . . ."). Accordingly, the Government does not have a right to veto the Oversight Board's ability to put forth and prosecute a plan of adjustment, which includes requesting a schedule for hearings that greatly exceeds the requirements of the Bankruptcy Rules.

[7] AAFAF and the Creditors' Committee misquote section 314(b)(5) by truncating this subsection. Although the parties correctly note that this subsection requires obtaining "any legislative, regulatory, or electoral approval[,]" AAFAF Obj. at ¶ 6; UCC Obj. (DS) at ¶ 42 n.9, they omitted the last clause. Accordingly, at the time of confirmation, subsection 314(b)(5) requires obtaining either actual approval of a provision *or* conditioning the provision on obtaining approval. *See* PROMESA § 314(b)(5) ("The court shall confirm the plan if . . . any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan has been obtained, *or such provision is expressly conditioned on such approval* . . . .") (emphasis added). It is not technically correct to suggest that confirmation requires actual approval at the time of confirmation (let alone now). In any event, this is a confirmation requirement to be addressed at confirmation, not now.

5

the longer the Debtors and their stakeholders are burdened by uncertainty and administrative costs. The Scheduling Motion ensures that the benefits of the PSA are not threatened unnecessarily and that these Title III cases are reasonably progressing towards conclusion while balancing the need for ample review time and resolution of issues, including those which may require judicial determinations.

6. The Monolines, for their part, have already represented they expect lift stay issues not to interfere with the Debtors' proposed Disclosure Statement Schedule. *See Urgent Motion to Adjourn Hearing on Motions for Relief from the Automatic Stay and Extend Deadline for Replies in Support of Motions for Relief from the Automatic Stay* [ECF No. 10841], at ¶ 22 (emphasis added) (the "Adjournment Motion"):

> This [Monoline-proposed lift stay] schedule also *will not interfere with the schedule that the Oversight Board has proposed for the Disclosure Statement hearing* (which Movants will respond to at the appropriate time). Under Bondholders' proposed schedule, the preliminary hearing would be held well in advance of the proposed Disclosure Statement hearing (specifically, 42 days in advance), allowing the parties time to address any preliminary ruling the Court may make. In addition, the schedule would allow the Court to hold a final hearing in advance of any Disclosure Statement hearing as appropriate.

Having argued their revised lift stay schedule would not interfere with the Disclosure Statement Schedule and received their requested relief [ECF No. 11057], the Monolines must be estopped from now claiming the Disclosure Statement Schedule cannot be established because of the scheduling of the lift stay proceedings. *See Howell v. Town of Leyden*, 335 F. Supp. 2d 248, 250 (D. Mass. 2004) ("The doctrine of judicial estoppel is an equitable doctrine that prevents a party from asserting a position in one legal proceeding that is clearly contrary to the position asserted in another, earlier legal proceeding." (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001))).

6

7. Critically, based upon the suggested timetable (by both the Mediation Team and the Oversight Board), no party's due process rights are being prejudiced or even impacted. Thus, objections must be viewed in their "true light"—an effort to delay these cases in the hope that such delay might alter the contemplated plan of adjustment. The Court should not succumb to such gamesmanship.

8. Indeed, the issues the Objectors raise are properly considered at a disclosure statement or confirmation hearing, not in response to a mere *scheduling* motion. For example, Mr. Hein argues that any disclosure statement will be inadequate unless there is certainty on (1) secured status and priority issues, (2) tax treatment of new bonds, and (3) the contents of the forthcoming fiscal plan. *See* Hein Obj. at 7–8. Similarly, the Monolines argue that "it will not be possible" for any disclosure statement to provide adequate information until certain enforcement actions and other "gating issues" are resolved. Monoline Obj. at ¶ 2 (listing the Bondholder-initiated lift stay motions as the "gating issues" that must be resolved "before embarking on a confirmation process"); *see also* UCC Obj. (DS) at ¶ 39.[8] Furthermore, certain "gating issues" such as the debt limit objection to general obligation bond claims identified by the Monolines, Monoline Obj. at ¶ 2, are proposed to be compromised and settled pursuant to the Plan, consistent with the terms of the PSA. The Scheduling Motion simply seeks to establish a day for that hearing, among other things.

9. Parties will have the full opportunity to object to the approval of the Amended Disclosure Statement and, ultimately, to confirmation of a plan of adjustment. Pursuant to the Debtors' proposed scheduling, parties will have more than six weeks from the March 4, 2020

---

[8] The Debtors reserve their rights to respond to the merits of these objections at the appropriate time in connection with the Disclosure Statement Hearing and confirmation.

scheduling hearing to file an objection to approval of the Disclosure Statement—in excess of what is required by Bankruptcy Rule 2002.[9] *See* Bankruptcy Rule 2002(b) (requiring "not less than 28 days' notice by mail of the time fixed . . . for filing objections and the hearing to consider approval of a disclosure statement . . . .").

10. Likewise, similar to most plans of adjustment and plans of reorganization, parties will also have months to negotiate and will have the opportunity to file confirmation objections at the appropriate time. The Scheduling Motion thus strikes a balance of moving the Title III cases reasonably forward, avoiding risks and costs associated with delay, and, at the same time, preserving parties' due process rights. Given the Court's authority to manage its docket and the harm the Debtors could face if they are unable to meet the PSA milestones, as well as the harm to the people of Puerto Rico, the Debtors submit that ample cause exists under these circumstances to grant the relief requested.[10]

### b. The Pre-Solicitation Procedures Motion

11. AAFAF has also objected to the Commonwealth and ERS's Pre-Solicitation Procedures Motion, pursuant to which the Commonwealth and ERS seek to establish procedures

---

[9] SIM and the Creditors' Committee note that the previously filed disclosure statement consisted of more than 1,800 pages. *See* UCC Obj. (DS) at ¶ 36; SIM Obj. ¶ 2. But, they leave out the fact that over 1,400 of these pages are exhibits (including the certified Commonwealth fiscal plan and budget, and audited financial statements for the Debtors, which have been publically available well before the filing of the initial disclosure statement). A majority of these exhibits will serve as the same exhibits to the Amended Disclosure Statement, which have been available for review since September 27, 2019 [ECF No. 8766]. Additionally, certain portions of the disclosure statement filed on September 27, 2019 [ECF No. 8766] will either remain the same or not change materially in the Disclosure Statement to be filed. The PSA, which has been publicly available on the Oversight Board's website since February 9, 2020, contains a preview of the plan to be filed. As of the hearing on the Scheduling Motion, the PSA will have been available for review for nearly a month.

[10] The Monolines and Creditors' Committee suggest the Court would be granting relief based on a purely "hypothetical" possibility that the Debtors will file an amended plan and disclosure statement. Monoline Obj. at ¶ 3; UCC Obj. (DS) at ¶ 35. This is an unfair exaggeration. As the Monolines and Creditors' Committee have known since February 9, 2020, when the PSA was announced, the Debtors are required to file these documents by February 28, 2020 pursuant to the PSA—an agreement that the Debtors, the Mediation Team, and their advisors have worked for months to achieve, and that imposes certain obligations that are not merely "hypothetical." In any event, by the time the Court hears the Scheduling Motion, the filing of the proposed plan of adjustment and Amended Disclosure Statement in accordance with the PSA milestone will no longer be hypothetical

8

for obtaining certain personal information from potential retirement benefit claimants, as "premature." AAFAF Obj. at ¶ 11. However, no matter when the Debtors ultimately seek to commence the process to confirm a plan and solicit votes thereto, the information sought pursuant to the Pre-Solicitation Procedures Motion will be required in order to communicate with the pool of purported beneficiaries and to among other things, calculate the amount of such beneficiaries' claims.

12. The Creditors' Committee has filed a limited objection, requesting the Debtors establish on-island locations where the Information Forms can be returned by hand, and extending the Return Date to May 31, 2020. UCC Obj. (Pre-Solicitation) at ¶¶ 2–3. Contemporaneous with this Reply, the Debtors are filing a revised proposed order establishing such on-island locations to accept hand-delivery, and are extending the time in which Employee Claimants must return the Information Forms by two weeks (by moving the service date up from March 19 to March 12, and the Return Date back from April 30 to May 7). These dates were chosen in consultation with the Debtors' professional advisors who will assist with compiling and analyzing the data collected through the pre-solicitation procedures, and are consistent with the solicitation and plan confirmation schedule currently contemplated by the Debtors. These revised proposed orders provide nearly two months in which Employee Claimants have to complete a one-page Information Form far simpler than other forms claimants are sometime required to file in cases like these (such as a proof of claim form).This timeline is reasonable in view of the circumstances, will not prejudice any Employee Claimant, and will allow the Debtors to move forward with pursuing confirmation of a plan of adjustment. Accordingly, the Pre-Solicitation Procedures Motion should be approved.

9

## **CONCLUSION**

For the foregoing reasons, the Debtors respectfully request the Court grant the Motions and such other relief as is just and proper.

Dated: February 26, 2020
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico as representative for the Debtors*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board for Puerto Rico as representative for the Debtors*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record, and all CM/ECF participants in the case.

*/s/ Hermann D. Bauer*

Hermann D. Bauer

11

## Exhibit A

**Revised Proposed Order**

1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>                                          Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### ORDER (I) SCHEDULING A HEARING TO CONSIDER THE ADEQUACY OF INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT, (II) ESTABLISHING THE DEADLINE FOR FILING SPANISH TRANSLATION OF THE DISCLOSURE STATEMENT, (III) ESTABLISHING THE DEADLINE FOR FILING OBJECTIONS TO THE DISCLOSURE STATEMENT AND REPLIES THERETO, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion"),[2] dated February 11, 2020, of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Motion.

Board" and in its capacity as representative of the Commonwealth, ERS, and PBA, the "Debtors"), as representative of the debtor under PROMESA section 315(b), requesting an order: (i) scheduling a Disclosure Statement Hearing to consider the adequacy of the information contained in the Amended Disclosure Statement, (ii) establishing the deadline by which to file a Spanish translation of the Amended Disclosure Statement, (iii) establishing a deadline by which objections to the adequacy of the information contained in the Amended Disclosure Statement and replies thereto must be filed, and (iv) granting related relief, all as more fully set forth in the Motion; and the Court having subject matter jurisdiction to consider the Motion and the relief requested therein pursuant to PROMESA section 306(a); and it appearing that venue in this district is proper pursuant to PROMESA section 307(a); and due and proper notice of the Motion having been provided and it appearing that no other or further notice need be provided; and the Court having determined the relief sought in the Motion is in the best interests of the Debtors, its creditors, and all parties in interest; and the Court having determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, it is hereby ORDERED AS FOLLOWS:

1. The Motion is granted as modified herein.

2. The Disclosure Statement Schedule is:

   - **Deadline to File Spanish Translation of Amended Disclosure Statement**: 5:00 p.m., Atlantic Standard Time, on March 20, 2020 as the deadline for the Debtors to file a Spanish Translation of the Amended Disclosure Statement (including all exhibits);

   - **Disclosure Statement Objection Deadline**: 5:00 p.m., Atlantic Standard Time, on April 17, 2020 as the deadline to file final (and not preliminary) objections to the adequacy of the Disclosure Statement and the relief requested in the Disclosure Statement Motion;

   - **Disclosure Statement Reply Deadline:** 5:00 p.m., Atlantic Standard Time, on May 20, 2020 as the deadline for the Debtors or other parties in interest to file replies or responses to the Objections; and

2

- **Disclosure Statement Hearing**: 9:30 a.m., Atlantic Standard Time, on June 3, 2020, as the time and date for the Disclosure Statement Hearing, as such date may be adjourned by the Court or the Debtors pursuant to a notice filed on the docket maintained in these Title III cases.

3. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4. The Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

Dated: _____, 2020
      San Juan, Puerto Rico

                                      Laura Taylor Swain
                                      United States District Court Judge