# EXHIBIT "1"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors. | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | Case No. 17-BK-4780-LTS<br><br>This Court Filing Relates Only to PREPA and Shall Only Be Filed in PREPA's Title III Case<br>(Case No. 17-BK-4780-LTS) |
| SCIEMUS LIMITED; MARKEL EUROPE; LLOYD'S SYNDICATES MSP 318, WRB 1967, AND AGM 2488 SUBSCRIBING TO POLICY NO. B0804Q11263F14; LLOYD'S SYNDICATES MIT 3210, KLN 510, MMX 2010, CSL 1084, TMK 1880, AML 2001, AND BRT 2987 SUBSCRIBING TO POLICY NO. B080414390F14; INDIAN HARBOR INSURANCE COMPANY; PARTNERRE IRELAND INSURANCE DAC; and SWISS NATIONAL INSURANCE CO. LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY, PREPA NETWORKS, LLC, PREPA NET INTERNATIONAL WHOLESALE TRANSPORT, INC., COMMONWEALTH OF PUERTO RICO, and | Adv. Pro. No. 3:19-AP-369-LTS<br><br><br><br><br><br><br><br>DECLARATORY JUDGMENT ACTION |

1

| SECRETARY OF THE TRESASURY, c/o Public Insurance Bureau, | |
|---|---|
| Defendants. | |

## SECOND AMENDED COMPLAINT FOR
## DECLARATORY JUDGMENT AND INTERPLEADER

Plaintiffs Sciemus Limited; Markel Europe; Lloyd's Syndicates MSP 318, WRB 1967, and AGM 2488 subscribing to Policy No. B0804Q11263F14; Lloyd's Syndicates MIT 3210, KLN 510, MMX 2010, CSL 1084, TMK 1880, AML 2001, and BRT 2987 subscribing to Policy No. B080414390F14; Indian Harbor Insurance Company; PartnerRe Ireland Insurance dac; and Swiss National Insurance Co. Ltd. (collectively "Plaintiffs" or "Insurers") file this Second Amended Complaint for Declaratory Judgment and Interpleader, under Rule 15(a)(2) of the Federal Rules of Civil Procedure, and would show the Court as follows:

## I.   NATURE OF ACTION

1.   Insurers insured Puerto Rico Electric Power Authority ("PREPA") pursuant to certain insurance policies and/or slips with a policy period of May 15, 2014 to May 15, 2015 (the "Policy").[1] Each Insurer insured its quota-share percentage of the risk, subject to the Policy's terms, conditions, provisions, and exclusions.[2]

2.   This is a civil action by Insurers against PREPA, along with other Named Insureds under the Policy, requesting that the Court declare the rights, duties, and liabilities of the parties under the Policy arising from the deflection and subsequent collapse of the roof of a reserve fuel oil storage tank ("Tank 1") at the PREPA South Coast (Costa Sur) thermoelectric power plant (the

---

[1] Defendants PREPA Networks, LLC, PREPA Net International Wholesale Transport, Inc., Commonwealth of Puerto Rico, and Secretary of the Treasury, c/o Public Insurance Bureau are also additional Named Insureds in the Policy (collectively "Additional Named Insureds"). Insurers name Additional Named Insureds as Defendants herein to ensure that they have notice of the potential payment under the Policy that is the subject of this litigation and have the opportunity to be heard regarding the payment and/or disposition of same.
[2] *See* Ex. A, Policy.

"Costa Sur Plant") in Guayanilla, Puerto Rico.

3.    Since being notified in June 2015 of the deflection and subsequent collapse of the Tank 1 roof, Insurers have continuously requested information and documents from PREPA regarding the events and PREPA's intentions for repairing Tank 1. PREPA has been generally unresponsive to Insurers' requests for documents and information.

4.    Insurers have determined that the proper payment to PREPA under the Policy terms is $3,726,000, for a net payment of $1,726,000. PREPA takes the position that Tank 1 should be replaced at a cost of $25,471,131.30, plus 25%, even though it has taken no affirmative steps to make such replacement. On April 30, 2019, counsel for PREPA transmitted correspondence to counsel for Insurers demanding that amount from Insurers as "costs" for replacing Tank 1. Insurers desire to issue a proof of loss in the amount of $1,726,000 (which is net of PREPA's $2,000,000 deductible) and to pay PREPA this amount. As such, a justiciable controversy exists and Insurers request a declaratory judgment from the Court that it (1) determine who the appropriate payee(s) are under the Policy pertaining to any amounts owed as a result of the Tank 1 roof deflection and collapse; (2) enter an Order directing payment of the $1,726,000 to the appropriate payee(s) as determined by the Court.; (3) determine that the amount calculated by Insurers ($1,726,000) is the correct amount owed as a result of the Tank 1 roof deflection and collapse for the reasons stated herein. For these reasons, Insurers are entitled to declaratory relief in accordance with 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

## II.    THE PARTIES

5.    Sciemus Limited is an insurance company organized and existing under the laws of the United Kingdom with its principal place of business in the United Kingdom. Sciemus Limited was an insurer of PREPA during the policy year May 15, 2014 to May 15, 2015.

6.     Markel Europe is an insurance company organized and existing under the laws of the United Kingdom with its principal place of business in the United Kingdom. Markel Europe was an insurer of PREPA during the policy year May 15, 2014 to May 15, 2015.

7.     Lloyd's Syndicates MSP 318, WRB 1967, and AGM 2488 subscribing to Policy No. B0804Q11263F14 are business entities organized and existing outside of Puerto Rico with their principal places of business outside of Puerto Rico. Lloyd's Syndicates MSP 318, WRB1967, and AGM 2488 subscribing to Policy No. B0804Q11263F14 were insurers of PREPA during the policy year May 15, 2014 to May 15, 2015.

8.     Lloyd's Syndicates MIT 3210, KLN 510, MMX 2010, CSL 1084, TMK 1880, AML 2001, and BRT 2987 subscribing to Policy No. B080414390F14 are business entities organized and existing outside of Puerto Rico with their principal places of business outside of Puerto Rico. Lloyd's Syndicates MSP 318, WRB 1967, and AGM 2488 subscribing to Policy No. B0804Q11263F14 were insurers of PREPA during the policy year May 15, 2014 to May 15, 2015.

9.     Indian Harbor Insurance Company is an insurance company organized and existing under the laws of the State of North Dakota with its principal place of business in the State of Connecticut. Indian Harbor Insurance Company was an insurer of PREPA during the policy year May 15, 2014 to May 15, 2015.

10.     PartnerRe Ireland Insurance dac is an insurance company organized and existing under the laws of Ireland with its principal place of business in Ireland. PartnerRe Ireland Insurance dac was an insurer of PREPA during the policy year May 15, 2014 to May 15, 2015.

11.     Swiss National Insurance Co. Ltd. is an insurance company organized and existing under the laws of Switzerland with its principal place of business in Switzerland. Swiss National Insurance Co. Ltd. has the status of an insurer of PREPA during the policy year May 15, 2014 to

May 15, 2015, due to its assumption of claims control from the entity it reinsured 100% during that time period.

12.     On June 30, 2016, Defendant The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") was established under Section 101(b)(1) of Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") (48 U.S.C. § 2121(b)(1)) as an "entity within the [Commonwealth] government." 48 U.S.C. § 2121(c)(1).

13.     On September 30, 2016, the Oversight Board designated the Commonwealth of Puerto Rico (the "Commonwealth") as a "Covered Territory" and PREPA as a "covered territorial instrumentality" under PROMESA Section 101(d). 48 U.S.C. § 2121(d).

14.     On May 3, 2017, the Oversight Board filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA Section 304(a) (48 U.S.C. § 2164(a)), commencing the Commonwealth's case under Title III of PROMESA, Case No. 17 BK 3283-LTS, pending in the United States District Court for the District of Puerto Rico.

15.     Similarly, on July 2, 2017, the Oversight Board filed a voluntary petition for relief for PREPA pursuant to PROMESA Section 304(a) (48 U.S.C. § 2164(a)), commencing PREPA's case under Title III of PROMESA (the "Title III Case"), Case No. 17 BK 4780-LTS, pending in the United States District Court for the District of Puerto Rico.

16.     Pursuant to PROMESA Section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor …." 48 U.S.C. § 2175.

17.     The Commonwealth is an additional Named Insured in the Policy and may have an interest in the Policy proceeds at issue in this action. The Commonwealth can be served with process through the Secretary of Justice.

18.     PREPA Networks, LLC is a limited liability company organized and existing under the laws of the State of Delaware. PREPA Networks, LLC is an additional Named Insured in the Policy and may have an interest in the Policy proceeds at issue in this action. PREPA Networks, LLC can be served with process through its registered agent, José D. Casillas Aponte at Carretera 165 Km. 1.2, #48 City View Plaza, Suite 803, Guaynabo, Puerto Rico 00968.

19.     PREPA Net International Wholesale Transport, Inc. is a corporate entity organized and existing under the laws of the Commonwealth of Puerto Rico. Upon information and belief, PREPA Net International Wholesale Transport, Inc. was administratively dissolved on or about March 13, 2012; however, it can be served with process through its registered agent, José D. Casillas Aponte at #48 City View Plaza, Suite 803, Guaynabo, Puerto Rico 00968.

20.     Secretary of the Treasury, c/o Public Insurance Bureau is named as a Defendant due to its additional insured status under the Policy; however, it does not appear that Public Insurance Bureau is an entity that can be served. Insurers will seek further discovery regarding Public Insurance Bureau and serve it in the future, if that is possible.

### III.     JURISDICTION, VENUE, AND CHOICE OF LAW

21.     This Court has jurisdiction under 48 U.S.C. § 2126(a), which grants jurisdiction to this Court over "any action against the Oversight Board, and any action otherwise arising out of [PROMESA], in whole or in part." Further, this Court has subject matter jurisdiction pursuant to 48 U.S.C. § 2166(a) because this controversy is related to PREPA's Title III Case, and pursuant to 48 U.S.C. § 2166(c) because this controversy seeks a determination regarding PREPA's rights under the Policy which constitutes property of PREPA.

22.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as amended, because the controversy involves citizens of different States, and the amount in

controversy, exclusive of interest and costs, exceeds $75,000.

23.     As described in paragraph 4 above and herein, there exists an actual case or controversy under 28 U.S.C. § 2201(a).

24.     This Court has personal jurisdiction over the Defendants pursuant to 48 U.S.C. § 2166(c). PREPA, as a public corporation organized and existing under the law of and with its principal place of business in the Commonwealth of Puerto Rico, submitted itself to the jurisdiction of the Court. PREPA is further subject to personal jurisdiction in this Court by its actions at and/or operation of the Costa Sur Plant located in Guayanilla, Puerto Rico.

25.     Venue is proper in this District pursuant to 48 U.S.C. § 2167(a)(2). Venue is also proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (b), as amended, as a substantial part of the events or omissions giving rise to the claim occurred in Guayanilla, Puerto Rico, and that is where the property that is the subject of this action is situated.

26.     The Policy provides that Puerto Rico law will control any dispute. Therefore, this Court should apply Puerto Rico law to its interpretation and application of all provisions of the Policy.

### IV.     FACTUAL BACKGROUND

#### A.     The Costa Sur Plant

27.     PREPA is the public authority in Puerto Rico that is responsible for the generation, transmission, and distribution of electrical energy on the island. PREPA operates electrical-generation plants across the island, including the Costa Sur Plant, which generates electricity through the use of steam turbines and the burning of heavy fuel oil ("HFO") and/or natural gas.

28.     The fuel storage facility at the Costa Sur Plant included three (3) vertical cylindrical reserve fuel oil storage tanks, each with a nominal capacity of 320,000 barrels of HFO.

29.     This action involves the deflection and subsequent partial collapse of the roof of Tank 1, one of the HFO storage tanks. The roof deflected inward on or about April 17, 2015. The deflected roof was susceptible to failure due to ponding water. PREPA was aware of the potential for failure of the roof in this condition but failed to take simple steps that would have protected it from collapse. The Tank 1 roof subsequently collapsed on May 26, 2015. PREPA did not report the roof deflection or collapse to Insurers until June 19, 2015.

**B.     The April 17 Incident – Deflection of the Tank 1 Roof**

30.     Upon information and belief, during the week of April 6, 2015, at the direction of PREPA, work commenced to remove existing paint application on the roof and walls of Tank 1.

31.     Upon information and belief, the work was performed by a local engineering company, RG Engineering Inc. ("RG Engineering"). Upon completing work each day, RG Engineering employees left their tools and equipment, including electric water pumps, on the roof of Tank 1.

32.     On Friday, April 17, 2015, upon information and belief, the RG Engineering employees upon completing their work for the day covered their equipment with a plastic sheet and secured the equipment and plastic sheet to the breather pipe on the Tank 1 roof, leaving the pipe covered with plastic sheeting.

33.     On the same day, PREPA personnel reported hearing unusual "knocking" sounds emanating from Tank 1. Upon inspection, PREPA personnel reportedly observed that the Tank 1 roof had suffered an inward deflection, meaning the previously convex conical structure was now concave (the "April 17 Incident"). On the same day, PREPA personnel reportedly worked to remove the plastic sheeting from around the breather pipe.

34.     From April 17 to May 26, 2015, PREPA reportedly commenced supplying HFO

directly from Tank 1 to the boilers, in order to reduce the level of HFO product within Tank 1. During this period, enough fuel was extracted to allow PREPA personnel to enter the base of Tank 1 for visual inspection.

35.     Visual inspection reportedly revealed that the main center support column of Tank 1 was no longer in a vertical position, but was instead lying on the floor of the Tank. Various rafters and girders had also fallen, while other columns were no longer supporting the roof.

**C.     The May 26 Incident – Collapse of Tank 1 Roof**

36.     Between April 17 and May 26, 2015, no actions were taken by PREPA to protect the deflected roof from ponding rainwater. At one point, small pumps were put on the deflected roof to attempt to remove accumulated rainwater, but the pumps were not used correctly. Other measures, including putting a hole in the roof, could have been used to protect the roof, but no such measures were taken.

37.     On May 26, 2015, the roof of Tank 1 collapsed, resulting in a portion of the roof falling to the floor of Tank 1 (the "May 26 Incident"). This incident constituted a separate loss and/or was the result of PREPA's failure to use due diligence to mitigate the prior damage. The separate May 26 Incident occurrence happened after expiration of the Policy.

**D. Claim and Investigation**

38.     PREPA did not provide notice to Insurers of the April 17 or May 26 Incidents (collectively the "Incidents") until June 19, 2015, when Insurers received an email advising them at that time of **a potential claim**. PREPA has not given any explanation for the delay in notification to Insurers. This delay caused prejudice to Insurers. Their investigation was impacted, and Insurers were not in a position to assist and advise PREPA regarding appropriate remedial actions.

39.     Insurers assigned the investigation and/or adjustment of the Incidents to Integra

Latin America ("Integra"), which arranged for an on-site inspection of Tank 1 on July 2, 2015. Despite Integra's requests, PREPA failed to provide key information and documentation regarding Tank 1 and the Incidents prior to the site visit.

40.     Integra, along with Rimkus Consulting Group, Inc. ("Rimkus"), visited the Costa Sur Plant again in September 2015. After the site inspection and investigation, Rimkus determined that Tank 1 could be repaired.

41.     On November 12, 2015, Insurers wrote PREPA, reserving their rights under the Policy and requesting that PREPA provide certain previously requested information. PREPA did not respond to the letter or provide the requested information.

42.     Throughout 2016, Insurers continued to request relevant documents and information previously requested, but PREPA failed to provide same, including a root cause analysis allegedly procured by PREPA. Insurers also requested PREPA advise how it planned to proceed regarding its insurance claim and repair of Tank 1, but no response was given.

43.     In 2017, PREPA hired a new risk manager. Integra participated in a call with the risk manager on or about August 15, 2017. PREPA advised that it had experienced significant changes and reorganization to its finance and risk management departments and that it was still unsure how it planned to proceed regarding Tank 1.

44.     On August 16, 2017, Insurers, through counsel, provided PREPA with a position letter regarding the issues previously raised in Insurers' reservation of rights letter. Insurers also renewed their request for documents and information previously requested. PREPA acknowledged the letter on August 18.

45.     On December 11, 2017, PREPA's counsel sent Insurers six (6) documents, totaling 96 pages. PREPA's counsel further responded on January 19, 2018, stating that PREPA planned

to repair Tank 1 and that PREPA "is [presently] in the best disposition to try to solve this matter amicably."

46.     Insurers sent PREPA additional correspondence on March 2, 2018, which PREPA did not respond to until July 23, 2018, wherein PREPA advised for the first time that it intended to replace Tank 1 at a cost of $25 million plus 25%. The letter provided no substantive information to support a) the need to replace rather than repair Tank 1, or b) any credible basis for a cost of over $30 million. In addition, PREPA provided no information or documents to show that it had taken the required procurement steps to undertake construction of a new tank.

47.     Insurers responded to PREPA on August 6 and 27, 2018. Insurers again advised PREPA that the roof of Tank 1 could have been repaired after the April 17 Incident, and while the Policy does not respond to the May 26 Incident, Tank 1 was still repairable and did not require replacement even after that event. Insurers confirmed that Integra would re-visit the Costa Sur Plant and inspect Tank 1 on September 5, 2018, and reiterated their request for information regarding the Incidents. Insurers also requested information from PREPA to support its decision to replace, instead of repair, Tank 1 and the corresponding replacement estimate.

48.     To date, PREPA has not responded to Insurers' August 27, 2018 correspondence or provided any additional requested information.

49.     Following the August 27 letter and the September 11 inspection, counsel for Insurers called PREPA's counsel numerous times in order to determine PREPA's plan regarding Tank 1, to follow up on the information requests, and to attempt to set a meeting between the parties. No meeting has been scheduled. PREPA's counsel has written to Insurers' counsel recently restating the amount for replacement of Tank 1, but the correspondence did not provide any basis for the decision to replace rather than repair, or for the stated cost of replacement. With respect to

the cost of replacement, the letter states that "an estimate is in the process of being completed." However, no progress has been made in this regard. Recently, PREPA's counsel again wrote to Insurers' counsel on April 30, 2019, demanding the alleged "costs" to replace Tank 1, in the amount of $25,471,131 plus 25%.

50.     Insurers' adjuster and expert have maintained their opinion that Tank 1 can be repaired, that replacement is not required, and that proper mitigation efforts after the April 17 Incident would have prevented the May 26 Incident.

51.     Integra, with the assistance of its expert, Rimkus, has estimated the repair cost for Tank 1 following the April 17 Incident at a range of $1,955,000 to $2,990,000. Accounting for the deductible of $2 million, but including estimated costs of preservation, site/property preparation, and contingencies, and utilizing the highest estimated amount, Insurers desire to pay $1,726,000 to PREPA under the Policy provision applicable when reinstatement is not made.

52.     The Policy provision regarding payment when reinstatement is not made actually provides for payment of actual cash value ("ACV") as opposed to estimated repair costs. However, if the ACV of Tank 1 was calculated, after depreciation, the payment amount to PREPA would be less than the amount based upon estimated repairs which Insurers seek to pay. For this reason, Integra has utilized the repair estimate for purposes of payment.

53.     To date, upon information and belief, PREPA has not commenced the repair or replacement of Tank 1.

**E. The Policies**

54.     A representative copy of the Policies, issued by PartnerRe, is attached hereto as Exhibit "A."

55.     The Policy covers "Real and Personal Property and Business Interruption and as

more fully defined in the Polic[ies]" and provides coverage for "All Risk of Direct Physical Loss

or Damage to Covered Property Including Annual Aggregate for Flood but Excluding Earthquake

– Earth Movement, Named Windstorm and Machinery Breakdown."

56.     In regard to the notification of loss and/or providing information to support a loss,

the Policy provides, in relevant part, as follows:

**3.     NOTIFICATION AND PAYMENT OF LOSS**

**A.     NOTIFICATION**

In the event of any incident likely to result in a claim under this Policy:

A.     The Assured shall, as soon as practicable after discovery of loss, damage or expenses, give notice in writing thereof to Insurers, and thereafter supply full particulars, including sworn proof of loss.

B.     The Assured shall, if required to do so by Insurers, produce or give access to any  property alleged to be lost or damaged any shall send to the Insurers all necessary information and assistance to enable the Insurers to deal with any claim.

57.     Regarding PREPA's duty to act with due diligence, the Policy provides, in relevant

part, as follows:

**18.     DUE DILIGENCE**

The Insured shall at all times act with due diligence to prevent or minimize the extent of any loss or damage to the property insured.

58.     In the event of a breach of any clause or condition in the Policy, the Policy provides,

in relevant part, as follows:

**5.     BREACH OF CONDITION**

If any breach of clause or condition in this Policy shall occur prior to a loss, the breach shall not void this insurance nor cause the Insurer to avoid liability, unless such breach shall exist at the time of a loss under this insurance and shall have contributed to such loss.

13

59.     The Policy defines "Occurrence" as "one or more accidents, disasters or casualties, caused by or arising out of or following one event.........." The Policy further provides, in relevant part, as follows:

> Should any Occurrence referred to above extend beyond the expiration date of this Policy and commence prior to the expiration, the Insurers shall pay all losses occurring during such period as if such period fell entirely within the term of this Policy.
>
> The Insurers shall not be liable, however, for any loss caused by any Occurrence commencing before the effective date and time or after the expiration date and time of this Policy.

60.     The Policy specifically excludes and does not cover "loss, damage or expenses directly or indirectly caused by . . . [w]ear and tear, gradual deterioration or rust, mold, wet or dry rot, contamination, erosion, corrosion, improper packing, insects or vermin unless a peril not otherwise excluded ensues, and then only for the physical loss or damage caused by such ensuing peril[.]"

61.     Regarding the payment for physical loss or damage to covered property by a covered peril, the Policy provides, in relevant part, as follows:

**6.     BASIS OF INDEMNIFICATION**

> In the event of physical loss or damage to Property Insured hereunder by a peril insured, the amount payable under this Policy shall be calculated on the basis of the reinstatement  or replacement of the property lost or damaged, subject to the following provisions:
>
> Reinstatement or replacement shall mean:
>
> (1)     where property is destroyed, the rebuilding of any buildings or the replacement by similar property of any other property, in either case in a condition equal to but not better or more extensive than its condition when new.
>
> (2)     where property is damaged, the repair of the damage and the restoration of the damaged portion of the property to a condition substantially the same as but not better or more extensive than its condition when new.

14

62.     The Policy provides the following, however, if the Insured elects not to repair or replace the damaged property:

**Special Provisions**

***

(2)     If the Insured elects not to reinstate or replace lost or damaged property, the amount payable under this Policy shall be actual cash value on the date of loss or damage.

## V.     CAUSES OF ACTION

### COUNT I

### DECLARATORY JUDGMENT – NUMBER OF OCCURRENCES

63.     Insurers repeat and re-allege paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64.     An actual, substantive, and justiciable controversy exists between the parties concerning the number of occurrences experienced by PREPA regarding the April 17 and May 26 Incidents described above. Insurers have advised PREPA that they believe the events are two occurrences under the Policy subject to two deductibles. PREPA has advised that it believes the two events constitute one occurrence under the Policy. Accordingly, the parties have a direct, substantial, and present interest in having the Policy construed and applied to the submitted claims.

65.     Pursuant to the terms, conditions, and provisions of the Policy, Insurers are entitled to and request a declaration from the Court that:

a.      Tank 1 was damaged via deflection on or about April 17, 2015.

b.      The roof of Tank 1 collapsed on or about May 26, 2015.

c.      The April 17 Incident constitutes a single occurrence under the Policy.

d.      The May 26 Incident constitutes a separate occurrence from the April 17 Incident.

e.      The damages allegedly arising from the May 26 Incident were caused by and/or

15

arose out of an event that occurred after the Policy's May 15, 2015 expiration date.

       f.     The April 17 Incident constitutes a single occurrence under the Policy, separate and apart from any alleged damages arising from the May 26 Incident.

       g.     Insurers are entitled to a declaratory judgment stating that they have no obligation under the Policy or otherwise to provide any payment or indemnity to PREPA for the alleged losses occurring on or about May 26, 2015, or thereafter. Insurers are further entitled to a determination of the amount of PREPA's claimed loss that is a result of any damage or degradation to Tank 1 on or about May 26, 2015, or thereafter, and have that amount deducted from any claim presented by PREPA.

## COUNT II

## DECLARATORY JUDGMENT – FAILURE TO NOTIFY
## AND FAILURE TO PRESENT CLAIM

66.     Insurers repeat and re-allege paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67.     An actual, substantive, and justiciable controversy exists between the parties concerning PREPA's failure to timely notify Insurers of the April 17 and May 26 Incidents described above. Insurers have advised PREPA that its notice of the April 17 and May 26 Incidents was delayed and prejudicial. PREPA has denied that it failed to provide adequate and prompt notice of the Incidents. Further, PREPA has failed to present a claim to Insurers stemming from the April 17 and/or May 26 Incidents. Accordingly, the parties have a direct, substantial, and present interest in having the Policy construed and applied to the submitted claims.

68.     Pursuant to the terms, conditions, and provisions of the Policy, Insurers are entitled to a declaration that:

       a.     The Policy requires PREPA to notify Insurers of loss, damage, or expense, as soon

as practicable and to act with due diligence to prevent or minimize any loss or damage to property insured.

b.      PREPA did not notify Insurers of the April 17 or May 26 Incidents until June 19, 2015.

c.      PREPA's June 19, 2015 notification was not "as soon as practicable" and constitutes a breach of the Policy.

d.      PREPA failed to provide Insurers "all necessary information and assistance to enable the Insurers to deal with [the] claim[s]."

e.      PREPA's repeated failure to provide requested information and/or documentation regarding its claims constitutes a breach of the Policy.

f.      Insurers were prejudiced by PREPA's failure to timely notify Insurers of the April 17 Incident and/or to provide requested information and/or documentation.

g.      PREPA has, to date, wholly failed to present any claim whatsoever as to either the April 17 or May 26 Incidents. PREPA has failed to repair (or replace) Tank 1, and has failed to present any ACV claim in the absence of such repair (or replacement). Therefore, PREPA has abandoned any claim under the Policy with respect to Tank 1.

h.      Insurers are entitled to a declaratory judgment that, due to PREPA's failure to timely notify Insurers of the April 17 Incident and/or to provide requested information and/or documentation, and/or due to PREPA's failure to make repairs (or replace Tank 1), and its failure to present any ACV claim, Insurers are relieved from any obligations and/or payments, other than the $1,726,000 which Insurers seek to pay PREPA (net of deductible), under the Policy related to the April 17 and/or May 26 Incidents.

## COUNT III

## DECLARATORY JUDGMENT - FAILURE TO PRESERVE/MITIGATE

69.    The Insurers repeat and re-allege paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70.    An actual, substantive, and justiciable controversy exists between the parties concerning PREPA's failure to prevent and/or minimize loss to Tank 1 as described above. Accordingly, the parties have a direct, substantial, and present interest in having the Policy construed and applied to the submitted claims.

71.    Pursuant to the terms, conditions, and provisions of the Policy, Insurers are entitled to a declaration that:

a.    PREPA failed to act with due diligence to prevent or minimize any loss or damage to Tank 1 by failing to implement appropriate mitigation efforts subsequent to the April 17 Incident, and prior to the May 26 Incident.

b.    PREPA's failure to prevent and/or minimize loss after the April 17 Incident caused and/or contributed to the May 26 Incident.

c.    PREPA's failure to take proper mitigation efforts to prevent the May 26 Incident resulted in prejudice to Insurers.

d.    Insurers are entitled to a declaratory judgment that, due to PREPA's failure to act with due diligence to prevent or minimize damage to Tank 1 between April 17 and May 26, 2015, Insurers are relieved from any obligations and/or payments, other than the $1,726,000 which Insurers seek to pay PREPA (net of deductible), under the Policy related to the April 17 and/or May 26 Incidents.

## COUNT IV

## DECLARATORY JUDGMENT – POLICY RESPONSE

72.     Insurers repeat and re-allege paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73.     As described in paragraph 4 above and herein, an actual, substantive, and justiciable controversy exists between the parties concerning what is owed by Insurers, if anything, arising from the April 17 and/or May 26 Incidents as described above. Accordingly, the parties have a direct, substantial, and present interest in having the Policy construed and applied to the submitted claims.

74.     Pursuant to the terms, conditions, and provisions of the Policy, Insurers are entitled to a declaration that:

a.      Immediately following the April 17 Incident, Tank 1 was repairable.

b.       Any payment under the Policy for the repair of Tank 1 due to losses sustained during the April 17 Incident is subject to a $2 million deductible.[3]

c.      Because Tank 1 was repairable after the April 17 Incident, the Policy only provides coverage for the costs to repair the damage and restore Tank 1 to "a condition substantially the same as but not better or more extensive than its condition when new."

d.      The cost to repair Tank 1 immediately after the April 17 Incident (net of deductible) is estimated to be $1,726,000.

e.      To date, PREPA has elected not to repair and/or reinstate Tank 1, and as such, the amount payable under the Policy is the ACV of Tank 1 on the date of loss.

---

[3] The May 26 Incident is a separate occurrence that occurred after the expiration of the Policy. Therefore, no damage accruing as a result of the May 26 Incident is covered under the Policy. However, in the alternative and if the Court and/or a jury determines that the May 26 Incident is covered by the Policy, Insurers contend that after the May 26 Incident, Tank 1 was repairable and subject to a separate $2 million deductible.

f.      Insurers wish to pay PREPA $1,726,000 after execution of an appropriate proof of loss and approval of this Court, and further obtain a judgment of this Court that Insurers owe no further obligations and/or payments to PREPA since that amount is in excess of any ACV calculation.

g.      Insurers are entitled to a declaratory judgment that because Tank 1 was repairable, PREPA is not entitled to recover the amount necessary to construct a replacement tank.

h.      Insurers are also entitled to a declaratory judgment that they owe no further obligations to PREPA regarding Tank 1 because PREPA did not elect to repair or replace Tank 1, and it has not established any basis for payment beyond the amount Insurers seek to pay in this action. Alternatively, if PREPA actually repairs (or replaces) Tank 1, and only if such repairs (or replacement) are completed, Insurers are entitled to a declaratory judgment that PREPA is only entitled to recover under the Policy the cost to repair Tank 1, per its condition immediately after the April 17 Incident, to a condition substantially the same as but not better or more extensive than Tank 1's condition when new. Insurers are further entitled to a declaratory judgment that $1,726,000 concludes their obligations in this regard.

## COUNT V

## DECLARATORY JUDGMENT –
## IDENTITIES OF ALL ADDITIONAL INSUREDS AND LOSS PAYEES

75.      Insurers repeat and re-allege paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76.      As described in paragraph 4 above and herein, an actual, substantive, and justiciable controversy exists between the parties concerning what is owed by Insurers, if anything, arising from the April 17 and/or May 26 Incidents as described above.

77.      The Policy, however, does not specify the identities of all additional insureds and

loss payees. Instead, the Policy provides, in relevant part, that the "Named Insured" is PREPA, the Additional Named Insureds, "and any owned, controlled, associated, affiliated, joint venture or subsidiary companies or corporations as now or may hereinafter be constituted as their respective rights and interests may appear and as further defined in the Policy wording." In regards to loss payees, the Policy provides, in relevant part, as follows:

> All third parties having a direct interest in property insured hereunder as on file with Fulcro Insurance, Inc. and/or Willis, shall automatically be Additional Named Assureds hereunder.
>
> All other third parties including, but not limited to, loss payees and mortgages who have an interest in property insured hereunder as on file with Fulcro Insurance, Inc. and/or Willis shall be automatically named as loss payees, and loss if any under this Policy shall be adjusted and payable in accordance with General Condition 3. and payable to the above loss payees as their interests may appear.

***

78.     Accordingly, the parties have a direct, substantial, and present interest in having the Policy construed regarding the identities of all additional insureds and loss payees who may have an interest in the Policy proceeds at issue herein. Further, the parties are entitled to determine the identity of all parties who claim Additional Insured or loss payee status because of being "on file" with Fulcro Insurance, Inc. and/or Willis.

79.     Pursuant to the terms, conditions, and provisions of the Policy, Insurers are entitled to a declaratory judgment determining the identities and rights thereof of any additional insured and/or loss payee (other than PREPA and Additional Named Insureds named in this suit), under the Policy if any. Upon such determination, such entities shall be served and/or given notice so that they can participate in this proceeding as appropriate.

## COUNT VI

## INTERPLEADER

80.     Insurers repeat and re-allege paragraphs 1 through 79 of this Complaint as if fully

set forth herein.

81.     There are several named insureds and other potential loss payees under the Policy, and Insurers are unable to determine the identity of the loss payee(s) that are entitled to the subject Policy proceeds. However, Insurers do not dispute that PREPA and/or Additional Named Insureds (or some other presently unknown loss payee) are entitled to certain funds as explained in paragraph 4. After successfully paying the funds pursuant to order of this Court, Insurers would have no interest in the funds or stake in any dispute as to the party(ies) that should receive payment.

82.     Insurers have a reasonable fear that they will be subject to multiple liability because loss payees, including, but not limited to, PREPA and/or Additional Named Insureds, may claim to be entitled to payments issued under the Policy.

83.     Accordingly, Insurers initiate this interpleader to avoid violating their contractual obligations under the Policy.

84.     Federal Rule of Civil Procedure 22 provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead."

85.     Insurers are ready, willing, and able to pay $1,726,000, representing the undisputed actual cash value for the damage the reserve fuel oil storage tank (Tank 1) sustained as a result of the roof collapse. Insurers make an unconditional offer to tender $1,726,000 into the registry of the Court and shall deposit such funds as the Court may direct.

86.     Other than their desire to avoid multiple liabilities for the amount paid, and to receive credit against any amount they may ultimately owe, Insurers have no further claims to the undisputed actual cash value amount of $1,726,000. Insurers have filed this interpleader within a reasonable time of determining that it is necessary, and did not unreasonably delay in filing it.

87.     Insurers respectfully request that this Court, pursuant to Federal Rule of Civil Procedure 22, adjudicate the conflicting claims to the interplead funds and determine the lawful claimants and the amount owed to each such claimant. Without court intervention, Insurers face the potential for double or multiple liability through multiple claimants claiming the sums hereby tendered.

## VI. REQUEST FOR RELIEF

**WHEREFORE,** Insurers respectfully request judgment in their favor against PREPA, and ask that the Court declare that:

a.     Insurers are entitled to judgement in their favor under Count I (Number of Occurrences), including a declaration in accordance with Paragraph 65 of the Complaint, including subparts a. through g.

b.     Insurers are entitled to judgment in their favor under Count II (Failure to Notify and Failure to Present Claims), including a declaration in accordance with Paragraph 68 of the Complaint, including subparts a. through h.

c.     Insurers are entitled to judgment in their favor under Count III (Failure to Preserve/Mitigate), including a declaration in accordance with Paragraph 71 of the Complaint, including subparts a. through d.

d.     Insurers are entitled to judgment in their favor under Count IV (Policy Response), including a declaration in accordance with Paragraph 74 of the Complaint, including subparts a. through h.

e.     Insurers are entitled to judgment in their favor under Count V (Identities of All Additional Insureds and Loss Payees), including a declaration in accordance with Paragraph 79 of the Complaint.

      f.      Insurers are entitled to judgment in their favor under Count VI (Interpleader), including an adjudication of their right to interplead funds, and determination of any conflicting claims to the funds in order to determine the lawful claimants and the amount due each such claimant pursuant to Federal Rule of Civil Procedure 22.

      Insurers also ask for any further relief to which they are entitled, including an award of attorneys' fees and costs incurred in connection with this action, and any additional relief as may be just and proper. In the event this Court does not grant declaratory judgment in Insurers' favor, Insurers reserve their rights as to any other coverage issues that may exist regarding the claims made by PREPA which have not been addressed herein.

      This the _____ day of _____, 2020.

Sciemus Limited; Markel Europe; Lloyd's Syndicates MSP 318, WRB 1967, and AGM 2488 subscribing to Policy No. B0804Q11263F14; Lloyd's Syndicates MIT 3210, KLN 510, MMX 2010, CSL 1084, TMK 1880, AML 2001, and BRT 2987 subscribing to Policy No. B080414390F14; Indian Harbor Insurance Company, PartnerRe Ireland Insurance dac, and Swiss National Insurance Co. Ltd,

/s/ James L. Warren III
**James L. Warren III**

**OF COUNSEL:**
James L. Warren III (Bar No. 224008)
Lee Ann Thigpen (PHV)
James W. Gunn III (PHV)
**CARROLL WARREN & PARKER PLLC**
188 East Capitol Street, Suite 1200 (39201)
Post Office Box 1005
Jackson, Mississippi 39215-1005
Telephone: (601) 592-1010
Facsimile: (601) 592-6060
jwarren@cwplaw.com
lthigpen@cwplaw.com
tgunn@cwplaw.com

Luis Sánchez Betances (Bar No. 117410)
**Sánchez Betances, Sifre & Muñoz Noya, P.S.C.**
33 Bolivia Street, 5th Floor
San Juan, Puerto Rico 00917
Telephone: (787) 756-7880
Facsimile: (787) 753-6580
lsb@sbsmnlaw.com

*Attorneys for Plaintiffs*

# Exhibit "A"

# PartnerRe



## Commercial Property Insurance Policy

**PartnerRe Ireland Insurance Limited**
5th Floor, Block 1
The Oval
160 Shelbourne Road
Dublin 4
Ireland

**Mail claims to:**
One Greenwich Plaza
Greenwich CT  06830

**Fax claims to: + 1 203 485 4657**

Policy Number: F550936
Effective Date:  3/21/2014

Declaration Page
PRECT FF 001

**PARTNERRE  IRELAND INSURANCE LIMITED**
**POLICY NUMBER:** F550936

# Excess Commercial Property Policy - Declarations

| | | |
|---|---|---|
| 1. | Named Insured | PUERTO RICO ELECTRIC POWER AUTHORITY and/or PREPA Networks and/or PREPA Net International Wholesale Transport, Inc. and/or Commonwealth of Puerto Rico, Secretary of the Treasury, c/o Public Insurance Bureau and any owned, controlled, associated, affiliated, joint venture or subsidiary companies or corporations as now or may hereinafter be constituted as their respective rights and interests may appear and as further defined in the Policy wording. |
| 2. | Mailing Address | P. O. Box 364267<br>San Juan, Puerto Rico 00936 – 4267 |
| 3. | Policy Period | Effective Date:          May 15, 2014 – 12:01 A.M.<br>Expiration Date:       May 15, 2015 – 12:01 A.M. |
| 4. | Perils Insured | All Risk of Direct Physical Loss or Damage to Covered Property Including Annual Aggregate for Flood but Excluding Earthquake – Earth Movement, Named Windstorm and Machinery Breakdown |
| 5. | Property Covered | Real and Personal Property and Business Interruption and as more fully defined in the Policy |
| 6. | Territory | Puerto Rico and worldwide in respect of Transit and Temporary Removal Coverage provided under this policy |
| 7. | Policy Limit | 5% or $1,250,000 part of $25,000,000 Per Occurrence and in the Annual Aggregate for Flood excess Original Policy Deductibles |
| 8. | Deductibles | $2,000,000 each and every Occurrence in respect of Physical Loss or Damage plus 30 Days Waiting period each and every Occurrence in respect of Business Interruption |
| 9. | Premium | Commercial Property    $190,000 part of $3,800,000<br>Terrorism                     - - - - - - - - - - - - - - - - - - - - -<br>TOTAL                          $190,000 part of $3,800,000 |

Authorized Representative

Date Issued: 4/1/2014

PartnerRe Connecticut, Inc
as authorized by PartnerRe Ireland Insurance Limited

Policy Number: F550936
Effective Date:  3/21/2014

Signature Page
PRECT FF 002

## Signature Page

IN WITNESS WHEREOF, the insurer has caused this policy to be signed by its president and secretary and countersigned where required by law on the declarations page by it is duly authorized representative.

Secretary                                    President

Policy Number: F550936
Effective Date:  3/21/2014

Schedule of Applicable Forms
PRECT FF 003

## Schedule of Applicable Forms

PRECT FF 001                    Declaration Page

PRECT FF 002                    Signature Page

PRECT FF 003                    Schedule of Applicable Forms

F550936                         Manuscript Policy Form

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

<u>GENERAL CONDITIONS</u>

<u>THE FOLLOWING GENERAL CONDITIONS ARE APPLICABLE TO THIS POLICY AND ITS
EXTENSIONS, IF THERE IS ANY CONFLICT BETWEEN THESE GENERAL CONDITIONS AND THE
SPECIFIC COVERAGE TERMS AND CONDITIONS OF THIS POLICY AND ITS EXTENSIONS, THE
SPECIFIC COVERAGE TERMS AND CONDITIONS SHALL PREVAIL.</u>

1.      <u>AUTOMATIC REINSTATEMENT</u>

The Limits of Liability of this Policy apply in respect of any one Occurrence and shall not be
reduced following loss under this Policy.

2.      <u>CIVIL AUTHORITY DAMAGE</u>

This Policy shall also cover against the risk of loss, damage or expense caused by civil and/or
local authority during a conflagration and for the purpose of retarding same, provided that neither
the conflagration, damage or destruction is caused by the perils of war or civil war.

3.      <u>NOTIFICATION AND PAYMENT OF LOSS</u>

A.      <u>NOTIFICATION</u>

In the event of any incident likely to result in a claim under this Policy:

**A.**     The Assured shall, as soon as practicable after discovery of loss, damage or
expenses, give notice in writing thereof to Insurers, and thereafter supply full
particulars, including sworn proof of loss.

**B.**     The Assured shall, if required to do so by Insurers, produce or give access to any
property alleged to be lost or damaged and shall send to the Insurers all
necessary information and assistance to enable the Insurers to deal with any
claim.

The Assured shall not in any case be entitled to abandon any property to the Insurers
whether taken possession of by the Insurers or not.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

B.      LOSS ADJUSTING

In the event of loss under this Policy, loss adjusters are to be appointed as agreed between the Assured and Insurers, and all loss adjusting expenses are to be paid by Insurers.

C.      PAYMENT OF LOSS

All adjusted claims shall be paid or made good to the Assured within thirty (30) days after presentation and acceptance of satisfactory proof of loss.  No loss shall be paid hereunder if the Assured has collected the same from others.

Losses shall be payable in United States Dollars and shall be paid to the Assured, to loss payees as the Assured may direct, and as further detailed in General Condition 22.

D.      PARTIAL LOSS

In the event of partial loss to property insured under this Policy which can be conveniently and advantageously repaired by the Assured, the Assured may immediately make repairs.

4.      WAIVER OF SUBROGATION

The Assured shall at the request and at the expense of the Insurers do and concur in doing and permit to be done all such acts and things as may be necessary or reasonably required by the Insurers for the purpose of enforcing any rights and remedies, or of obtaining relief or indemnity from other parties to which the Insurers shall be or would become entitled or subrogated upon their paying for or making good any loss, destruction or damage under this Policy, whether such acts and things shall be or become necessary or required before or after indemnification by the Insurers.

Notwithstanding the above, the Insurers agree to hold harmless and to waive any rights and remedies or relief to which they may become entitled by subrogation against:

A.      any individual, corporation or concern, by agreement in writing prior to loss;

B.      any Assured as stated at Item 1. Of the Declarations, including its directors, officers or employees, or any contractors or subcontractors of the Assured

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

    C.      the Commonwealth of Puerto Rico, its instrumentality, public corporations or any political sub-divisions; and

    D.      any corporation(s) whose capital stock or any part thereof is owned or controlled by the Assured at the time of such loss, or any of their parent, subsidiary, affiliated or associated companies or corporation(s) or companies having service arrangements with the Assured, or any contractors or subcontractors.

5.      BREACH OF CONDITION

    If any breach of clause or condition in this Policy shall occur prior to a loss, the breach shall not void this insurance nor cause the Insurer to avoid liability, unless such breach shall exist at the time of a loss under this insurance and shall have contributed to such loss.

6.      ERRORS AND OMISSIONS

    Any unintentional error or omission made by the Assured shall not void or impair the insurance hereunder provided the Assured reports such error or omission to Insurers as soon as reasonably possible after discovery.

7.      PERMISSIONS

Permission is granted to the Assured:

    A.      for the use of any premises, articles and materials which are usual and incidental to the Assured's operations, and any such usage of the Assured shall not be considered as an increase of hazard;

    B.      to make additions, alterations, repairs, and to construct new buildings on any premises without limit of time, to work at all hours, to do such work and to keep and use any articles, materials, and supplies as are incidental to such work;

    C.      for the Assured's buildings to remain vacant or unoccupied without limit of time;

    D.      to effect such repairs to damaged property which would otherwise impair service to the Assured's customers.  Such repairs may be carried out immediately and without prior approval and/or inspection by the Insurer and its representatives.  The Insurer will be advised as soon as practicable and allowed to view damaged property.

8.      SUE AND LABOUR CLAUSE

    In case of any actual or imminent loss or damage, it shall be lawful to and for the Assured, their factors, servants and assigns to sue, labor and travel for, in and about the defense, safeguard and

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

recovery of said property or any part thereof without any prejudice to this insurance and, subject always to the terms, conditions, limitations, exclusions, Limit of Liability and deductibles of this insurance, the charges thereof shall be borne by Insurers.

No acts of the Insurers or the Assured in defending, serving or recovering the property insured shall be considered as a waiver or acceptance of abandonment.

9.   <u>CANCELLATION</u>

This Policy may be cancelled by the Insurers by giving ninety (90) days notice.  In the event of cancellation, Insurers shall mail notice by registered mail to the Assured at the address shown below:

> Financial Director
> PUERTO RICO ELECTRIC POWER AUTHORITY
> P.O. Box 364267
> San Juan, Puerto Rico 00936-4267

In the event of non-payment of premium, this Policy may also be cancelled by the Insurers by mailing to the Assured at the above address, written notice stating when, not less than fifteen (15) days thereafter, such cancellation shall be effective.

This Policy may be cancelled at any time by the Assured by mailing to the Insurers written notice stating when thereafter such cancellation be effective.

If the Assured cancels, unearned premiums shall be computed on a pro-rate basis.  If the Insurer cancels, earned premium shall be computed pro-rata.

The mailing of Notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the report shall become the end of the Policy period.  Delivery of such written notice either by the Assured or the Insurer shall be equivalent to mailing. Cancellation of this Policy, however, shall not apply to property in due course of transit as of the date of cancellation, and cover thereunder shall until such property has reached its insured destination.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

If the Assurer elects to cancel a risk due to losses, a list of claims should be provided along with the cancellation notice sent by the Assurer.

10.   <u>CONTRIBUTING INSURANCE</u>

Permission is granted the Assured to have contributing insurance written upon the same plan, terms, conditions and provisions as those contained in this Policy.  This Policy will contribute in accordance with the conditions of this Policy only with such other contributing insurance.

11.   <u>UNDERLYING INSURANCE</u>

Permission is granted the Assured to have underlying insurance on all or any part of the deductible and against all or any of the perils covered by this Policy including declarations of value to a carrier for hire.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this Policy.   If the amount of such underlying insurance

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

exceeds the applicable deductible the portion which exceeds such deductible shall be classed as "Other Insurance".

12.    EXCESS INSURANCE

Permission is granted the Assured to have excess insurance over the limits of liability set forth in this Policy without prejudice to this Policy and the existence of such insurance, if any, shall not reduce any liability under this Policy.

13.    OTHER INSURANCE

If, at the time of loss covered hereunder, there is other insurance other than excess insurance, contributing insurance, or underlying insurance, in force which would attach if this insurance had not been effected, then this insurance shall apply only for the difference between the amounts insured elsewhere under such other insurance and the applicable limit or sub limit of this Policy, subject always to payment of this Policy's deductible; however this deductible shall not be payable if less than the limit of the amount insured elsewhere under such other Insurance.

14.    AUDIT

The Insurers may examine and audit the Assured's books and records at any time during the Policy period and extensions thereof and within three (3) years after the termination of this Policy, as far as they relate to the subject matter of this insurance.

15.    MISREPRESENTATION AND FRAUD

This entire Policy shall be void if the Assured has willfully concealed or misrepresented, in writing or otherwise, any material facts or circumstances concerning this insurance or the subject matter thereof, or if the Assured shall make any attempt to defraud either before or after a loss.

16.    SALVAGE AND RECOVERIES

All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made between the Insured and Insurers in the proportion of their respective interests.

17.    DISPUTE PROVISIONS

A.    SUIT AGAINST THE COMPANY

No suit or action on this Policy for the recovery of any claims shall be sustainable in any court of law or equity unless the Assured have fully complied with all the requirements of this Policy, and shall be subject to any applicable time limit prescribed in the laws and statutes to which this Policy is subject.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

Any suit hereunder will be subject to the provisions of the Service of Suit Clause (U.S.A.) below.

B.    <u>SERVICE OF SUIT CLAUSE (USA)</u>

It is agreed that in the event of the failure of the Insurers hereon to pay any amount claimed to be due hereunder, the Insurers hereon, at the request of the Assured will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Insurers' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States.  It is further agreed that service of process in such suit may be made upon Mendes and Mount, 750 Seventh Avenue, new York, NY 10019-6829 and, that in any suit instituted against any one of them upon this contract, Insurers will abide by the final decision of such court or of any Appellate Court in the event of any appeal.

The above-named are authorized and directed to accept service of process on behalf of Insurers in any such suit and/or upon the request of the Assured that they will enter a general appearance upon Insurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Insurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

18.    <u>DUE DILIGENCE</u>

The Insured shall at all times act with due diligence to prevent or minimize the extent of any loss or damage to the property insured.

19.    <u>AUTOMATIC ACQUISITION/CAPITAL ADDITIONS</u>

It is understood and agreed that this Policy is automatically extended to cover additional property and interests as described in this Policy, which may be acquired or otherwise become at the risk of the Assured during the period of this Policy, subject to the value of such additional property and interests not exceeding ten percent (10%) of the total insurable values.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

In the event of coverage being required for additional property and/or interests where the total values at that time exceed ten percent (10%) of the total of the Insurable values, details of such additional property and/or interests are to be provided to Insurers for their consideration no later than ninety (90) days from the date the said additional property and/or interests have become at the risk of the Assured.

Any premium adjustment shall be made in accordance with the Margin Clause at General Condition 20.

20.    MARGIN CLAUSE

As soon as practicable after each anniversary date and/or the expiry date of this Policy, as applicable, the Assured shall file with insurers a statement of values declaring one hundred percent (100%) of the total values of all property insured by this Policy during the previous annual period.

If the values reported in accordance with the above differ by more than ten percent (10%) from those reported at inception and/or the previous anniversary date, then the premium for the annual period shall be adjusted accordingly, calculated at pro rata of slip rates on the amount of such increase or decrease in values.

If the values reported differ by less than ten percent (10%), there shall be no adjustment in premium.

21.    COINSURANCE

This Policy is not subject to any coinsurance requirements.

22.    ADDITIONAL NAMED ASSUREDS, LOSS PAYEES AND MORTGAGEES

All third parties having a direct interest in property insured hereunder as on file with Fulcro Insurance, Inc. and/or Willis, shall automatically be Additional Named Assureds hereunder.

All other third parties including, but not limited to, loss payees and mortgagees who have an interest in property insured hereunder as on file with Fulcro Insurance, Inc. and/or Willis shall be automatically named as loss payees, and loss if any under this Policy shall be adjusted and payable in accordance with General Condition 3. and payable to the above loss payees as their interests may appear.

Permission is granted to Fulcro Insurance, Inc. to issue Certificates of Insurance and/or Evidence of Insurance naming Additional Named Insureds, loss payees and mortgagees.  Such Certificates and/or Evidences may contain waivers or rights of subrogation.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

Subject to the terms and conditions of this Policy, the acts or omissions of the Assured shall not compromise, invalidate, abrogate or otherwise restrict the insurance provided for the benefit of any other Additional Insured, mortgagee or loss payee covered under this Policy.

23.  SEVERAL LIABILITY CLAUSE

The subscribing Insurers' obligations under policies to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions.  The subscribing Insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

24.  OFF PREMISES SERVICES CLAUSE

Coverage under this Policy is extended to include Property Damage, Business Interruption Loss and/or Extra Expense as Insured hereunder incurred and/or sustained by the Assured as a result of physical loss or damage by the perils insured against under this Policy to property (excluding overhead transmission lines) of any suppliers or utility companies furnishing heat, light, power, gas, water, telephone or similar services to the insured's premises.

25.  PROFESSIONAL FEES

This policy is extended to include the reasonable expenses incurred by the Insured for the professional services of adjusters, auditors, accountants, architects and engineers, (except the Assured's own employees or public adjusters) which are required in order to establish or to pursue a loss which is covered by this Policy.

26.  JOINT LOSS CLAUSE

In the event of loss of or damage to property and a disagreement between the Insurers of this Policy and the Insurers of the Boiler and Machinery Policy with respect to:

a.  whether such loss or damage was caused by a peril insured against by said Policy or by a peril insured against by this Policy or,

b.  the extent of participation of this Policy and said Policy in a loss which is insured against, partially or wholly by either or both of said policies,

the Insurers shall, upon written request of the Assured, pay their proportion to the Assured of one-half of said amount which is in disagreement,

c.  The Assured agrees to continue to cooperate with the Insurers in connection with the resolution of the disagreement but not to intervene therein;

d.  The provisions of this condition shall not apply unless said Boiler and Machinery Policy is similarly endorsed; and

e.  Acceptance by the Assured of sums paid pursuant to the provisions of this agreement shall not operate to alter, waive, surrender or in any way affect the rights of the Assured against any of the insurers.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

PUERTO RICO ELECTRIC POWER AUTHORITY

PROPERTY AND BUSINESS INTERRUPTION INSURANCE

1.    INSURING AGREEMENT


Subject to the Declarations, Limits and Sub-Limits of Liability, Policy period and the following terms and conditions, the Policy insures against All Risk of direct physical loss or damage occurring during the Policy period to Property Insured from any external cause except as hereafter excluded and whilst such property is situated in the territorial limits stated at Item 7. of the Declarations.

This Policy also insures Business Interruption and Extra Expense, all as detailed in Addendum A of this Policy.

2.    PROPERTY INSURED

The Property Insured under this Policy is as follows:

All real and personal property of the Assured of every kind and description, owned, leased or rented, or in which the Assured may have an insurable interest; property of others in the Assured's care, custody, and control or for which the Assured is legally or contractually liable; property of the Assured in the care, custody and control of others; the interest of the Assured in improvements and betterment to non-owned property; property in the course of construction, renovation, installation, erection or assembly and whilst in transit; including but not limited to all power generating facilities and allied equipment, boiler and machinery, electronic data processing equipment and media, valuable papers and records, personal property of officers and employees of the Assured while on the premises of the Assured, contractors' equipment and stock.

3.    DEFINITIONS

OCCURRENCE

The term "Occurrence" shall mean one or more accidents, disasters or casualties, caused by or arising out of or following one event, subject to the following clarifying definitions of Explosion, Flood, Riot, Strike and Vandalism:

i.      Explosion:  In the event of a single explosion affecting more than one unit, all losses shall be considered as one Occurrence.

ii.     Flood:  In respect of flood (which term shall mean physical loss or damage arising, directly or indirectly, from the rising, including the overflowing or breaking of boundaries, of lakes, ponds, reservoirs, rivers, harbors, streams or other bodies of water, or the unusual and rapid accumulation of runoff of surface waters, whether or not any of these are driven by wind), the Limit of Liability and deductible shall apply to the amount of loss or damage which occurs during any one period of seventy-two (72) hours, which shall be termed one Occurrence.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

     iii.   <u>Riot, Strike and Vandalism</u>:  In respect of riot, strike and vandalism all loss or damage to the property insured directly caused during the course of one strike shall be termed one occurrence.

Should any Occurrence referred to above extend beyond the expiration date of this Policy and commence prior to the expiration, the Insurers shall pay all losses occurring during such period as if such period fell entirely within the term of the Policy.

The Insurers shall not be liable, however, for any loss caused by any Occurrence commencing before the effective date and time or after the expiration date and time of this Policy.

4.    <u>PROPERTY EXCLUDED</u>

This Policy does NOT cover loss or damage to the following property:

A.    Glass, glassware, statuary and marbles; fur, fur garments, jewelry and watches, jewels, pearls, precious and semi-precious stones, gold, silver, platinum, and other precious alloys or metals; it is agreed, however, that previous alloys or metals and other parts or articles of a fragile or brittle nature which form an integral part of the physical composition of any insured property is covered;

B.    Land water (except water which is normally contained within any type of tank piping system on process equipment), trees, shrubs, plants, lawns and growing and standing crops; contents of aircraft and watercraft property during shipment by mail or air shipment exports shipments.

C.    Excavations, grading, and fillings;

D.    Automobiles, trucks, tractors, and other types of automotive equipment licensed to operate on public streets or highways, except while on premises owned, leased to or used by the Insured; it is also understood and agreed that equipment contained on or within such vehicles is covered;

E.    Aircraft and watercraft;

F.    Animals;

G.    Securities, bullion, currency, money, stamps, bills, evidence of debt, letters of credit or credit cards;

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

     H.      Ocean shipments laden on board export conveyance or under the protection of marine insurance, whichever occurs first, and import ocean shipments up to the point that they are discharged from import conveyance or marine insurance has ceased to cover, whichever occurs last;

     I.      Above ground, underground and submarine electrical transmission and distribution lines, poles and related equipment, including supporting structures, wires, conductors and cables, except where situated within one thousand (1000) feet of the Assured's generating facilities. This exclusion does not apply either to all overhead or underground fiber optic cables.

5.      <u>PERILS EXCLUDED</u>

This insurance does NOT cover loss, damage, or expenses directly or indirectly caused by:

     A.      Faulty material, faulty workmanship, latent defect, error or omission in design, plan or specifications unless a peril not otherwise excluded ensues.

     B.      Wear and tear, gradual deterioration or rust, mould, wet or dry rot, contamination, erosion, corrosion, improper packing, insects or vermin unless a peril not otherwise excluded ensues, and then only for the physical loss or damage caused by such ensuing peril;

     C.      Unexplained loss or mysterious disappearance of property (except property in the custody of bailees for hire), or shortage of property disclosed on taking inventory;

     D.      Any dishonest act done by or at the instigation of the Assured or an official, director or trustee of the Assured, pilferage appropriation, or concealment of any property covered due to any dishonest act of any employee or agent of the Insured whether working or not, or any person to whom the property covered may be entrusted other than bailees for hire;

     E.      Notwithstanding anything to the contrary contained herein, this Policy does NOT cover loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority;

            However, this Exclusion shall not apply to;

           i.      loss directly caused by acts committed by an agent of any government, party or faction engaged in wars, hostilities or other warlike operations, provided such agent is acting secretly and not in connection with any operation of the armed

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

forces (whether military, naval or air forces) in the country where the property is situated, (but in no event shall this Policy include any loss or expense caused by or resulting from any weapon of war employing atomic fission or radioactive force whether in time of peace or war); and/or

ii.    loss and/or damage and/or liability arising directly or indirectly from mines, bombs, torpedoes, missiles or other weapons of war remaining from previous hostilities or military exercises.

F.    Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy; however, subject to the foregoing and all provisions of this Policy, this Policy does insure:

i.    Direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination but excluding all loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination arising directly or indirectly from that resulting fire; and

ii.    loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on locations insured by this Policy, provided that at the time of such loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self supporting chain reaction nor any new or used nuclear fuel on the described premises;

G.    Delay or loss of market, except as provided for in Addendum A of this Policy.

H.    Named Windstorm (which term shall include physical loss or damage arising, directly or indirectly, from storm surge, or flood resulting therefrom).

I.    Earthquake (which term shall include physical loss or damage arising, directly or indirectly from earthquake, volcanic eruption, shock, tremor, sinkhole collapse, tsunami, or any other earth movement).

J.    Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires unless fire or other peril not otherwise excluded ensues, and then only for the physical loss or damage caused by such fire.

K.    Mechanical breakdown, including rupture or bursting caused by centrifugal force unless fire or other peril not otherwise excluded ensues, and then only for the physical loss or damage caused by such insured peril.

L.    Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased to the assured or operated under the assured control unless fire or other peril not otherwise excluded ensues, and then only for the physical loss or damage caused by such insured peril.

Policy Number: F550936
Effective Date: 3/21/2014

Manuscript Policy Form
F550936

M.      The use or misuse of the Internet or similar facility;

N.      any electronic transmission of data or other information

O.      any computer virus or similar problem

P.      the use or misuse of any Internet address; website or similar facility;

Q.      any data or other information posted on a website or similar facility;

R.      any loss of data or damage to software (unless such loss or damage is caused by an earthquake, a fire, a flood, or a storm);

S.      the functioning or malfunctioning of the Internet or similar facility, or of any Internet address,   website or similar facility (unless such malfunctioning is caused by an earthquake, a fire, a flood, or a storm); or

T.      any infringement, whether intentional or unintentional, of any intellectual property rights (including but not limited to trademark, copyright or patent).


6.   <u>BASIS OF INDEMNIFICATION</u>


In the event of physical loss or damage to Property Insured hereunder by a peril insured, the amount payable under this Policy shall be calculated on the basis of the reinstatement or replacement of the property lost or damaged, subject to the following provisions:


Reinstatement or replacement shall mean:


(1)      where property is destroyed, the rebuilding of any buildings or the replacement by similar property of any other property, in either case in a condition equal to but not better or more extensive than its condition when new.


(2)      where property is damaged, the repair of the damage and the restoration of the damaged portion of the property to a condition substantially the same as but not better or more extensive than its condition when new.


Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

Reinstatement or replacement shall include the cost of architects', surveyors', adjusters and other legal and professional fees, expediting expenses, labor, materials and supplies and all other fees, taxes, duties and expenses necessarily incurred.

The following more specific provisions shall apply, where applicable:

A.     <u>Valuable Papers:</u>

Valuable papers and records shall be valued at the cost to repair or replace the property with other of like kind and quality, including the cost of gathering and/or assembling information, but this shall not include the value of the information contained therein.

B.     <u>Electronic Data Processing Equipment and Media:</u>

Electronic data processing equipment shall be valued at the replacement cost new as of the date of replacement or, if not replaced, at actual cash value at the date of loss.

It is understood that, due to market advances, the replacement equipment may be technologically superior to the equipment it replaces.

Media shall be valued at the cost of blank materials plus the actual reproduction cost including the costs and expenses of researching, reproducing and returning such property to the same condition in which it was prior to loss.

C.     <u>Property of Others:</u>

Property of others shall be valued at the amount of the Insured's liability imposed by law or assumed by contract prior to loss (including penalties), whether written or oral, but not to exceed the replacement cost.

D.     <u>Property in Transit:</u>

Property in transit shall be valued at the amount of the invoice, including prepaid or advanced freight, if any, the profit or commission of the Insured as selling agent and such other costs and charges as may have been accrued and become legally due since shipment, or at replacement cost new, whichever is greater.

E.     <u>Stock:</u>

Stock in process shall be valued at the cost of raw material and labor expended plus the proportion of overhead charges expended. Finished goods, including power, shall be valued at the regular cash selling price at the location of the loss, less all discounts and charges to which the property would have been subject had no loss occurred.

F.     <u>Business Interruption, Contingent Business Interruption and Extra Expense:</u>

As provided for in Addendum A to this Policy.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

Special Provisions

(1)     The work of reinstatement may be carried out upon another site and in any manner
        suitable to the requirements of the Insured subject to the liability of the Insurers not being
        thereby increased.

(2)     If the Insured elects not to reinstate or replace lost or damaged property, the amount
        payable under this Policy shall be actual cash value on the date of loss or damage.

(3)     Where any property is damaged or destroyed in part only then the liability of the Insurers
        shall not exceed the sum representing the cost which the Insurers could have been called
        upon to pay for reinstatement if such property had been wholly destroyed.

(4)     Notwithstanding anything to the contrary contained in this Policy, the Insured shall have
        the option of replacing the damaged or destroyed property with technologically improved
        property provided that the cost of such property does not exceed the cost of reinstatement
        or replacement of the damaged or destroyed property.  If the damaged or destroyed
        property is technologically obsolete or unavailable because it is no longer in production,
        the reinstatement or replacement cost shall be the cost new of property that will perform
        the same function as the damaged or destroyed property, including any reasonable
        betterment inherent in the design of such property.

7.     TRANSIT

       The Policy is extended to cover physical loss or damage to Property Insured in transit inland and
       by air, including:

       A.     from commencement of loading, including temporary storage, repair, delay, deviation,
              consignment or exhibition, continuously through to unloading and acceptance at the place
              of final destination;

       B.     property sold and shipped by the Insured under terms of F.O.B. point of origin or other
              terms usually regarded as terminating the shipper's responsibility short of points of
              delivery;

       C.     where arising out of any unauthorized person(s) representing themselves to be the proper
              party(ies) to receive goods for shipment or to accept goods for delivery; and

       D.     where occasioned by the acceptance by the Insured or its agents or customers of
              fraudulent bills of lading, shipping and delivery orders, or similar documents.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

The Assured may accept bills of lading or receipts from carriers, bailees, processors or warehousemen limiting or releasing their liability, but his Extension shall not inure to the benefit of any carrier, bailee, processor or warehouseman.

8.    RIOT AND STRIKE DAMAGE, VANDALISM, AND MALICIOUS DAMAGE

This Policy is extended to cover loss of or damage to the property insured directly caused by:

(1)    Any act committed in the course of a riot or civil commotion or disturbance of the public peace by any person taking part together with others; or

(2)    Any willful act of any striker or locked-out worker done in furtherance of a strike or in resistance to a lock-out, whether or not such act is committed in the course of (1) above; or

(3)    Any act of any lawfully constituted Authority for the purpose of suppressing, preventing or minimizing the consequences of any act as described at (1) or (2) above; or

(4)    Vandalism and willful and malicious damage.

Notwithstanding anything to the contrary herein, this Policy does NOT cover loss (whether temporary or permanent) of the insured property or any part thereof by reason of confiscation, requisition, detention, or legal or illegal occupation of such property or of any premises, vehicle or thing containing the same.

9.    PARTS

When the property insured includes machinery consisting, when complete for sale or use, of several parts, then in the event of loss or damage to any part of such machine, the Insurer shall be liable for costs and expenses, including labor and forwarding charges, of replacing or repairing the lost or damaged part, but in no event for more than the insured value of the complete machine.

10.    DEMOLITION AND INCREASED COST OF CONSTRUCITON

Following loss or damage by an insured peril under this Policy, this Policy is extended to cover:

i.    the cost of demolition, site clearing and repair or reinstatement of undamaged insured property; and

ii.    the additional cost of repair or reinstatement of lost or damaged property,

Policy Number: F550936
Effective Date:  3/21/2014

which is incurred solely by reason of the necessity to comply with any building or other regulations under or framed in pursuance of any Act, statutory provision, law ordinance or regulation by any government or public authority relating to the reinstatement of property provided that:

(a)    The amount recoverable under this Extension of Cover shall not include:

      i)    the cost in complying with any such Act, statutory provision, law, ordinance or regulation where destruction or damage occurs prior to inception of this Policy, or is not insured by this policy, or where notice to comply has been served upon the Assured prior to the occurrence of any destruction or damage.

      ii)    any increased rates, taxes, duties, charges, levies or assessment as a result of complying with such Act, statutory provision, law, ordinance or regulation.

(b)    The work of reinstatement may be carried out wholly or partially upon another site, provided that the liability of the Insurers is not increased thereby.

(c)    If the liability of the Insurers under this Policy, apart from this Extension, shall be reduced by the application of any of the terms and conditions of this Policy then the liability of the Insurers under this Extension, in respect of any such item, shall be reduced in like proportion.

11.    <u>DEDUCTIBLES</u>

Each Occurrence under this Policy shall be adjusted separately and from the amount of such adjustment there shall be deducted the amount stated at Item 6 of the Declarations.

Each claim for the time element portion of any Occurrence shall be adjusted separately.  Time element shall mean business Interruption and all coverage contained within Addendum A of the Policy.

12.    <u>PAIRS AND SETS</u>

In the event of loss or damage by the perils insured against under this Policy to any article or articles which are part of a pair or set, Insurers agree to pay the full amount of the value of such pair or a set.  The Assured agrees to surrender the remaining article or articles of the pair or set to Underwriters.  The Assured shall have the option of retaining the damaged article or articles and salvage credit to Insurers to be negotiated.

13.    <u>FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES</u>

If property insured under this Policy is destroyed or damaged by the perils insured against under this Policy, this Policy shall insure against:

i.      fire brigade charges and other extinguishing expenses for which the Assured may be assessed; and

ii.     loss of fire extinguishing materials expended.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

14.   CONSEQUENTIAL LOSS ASSUMPTION CLAUSE

The Insurers shall be liable for loss to Property insured caused by change of temperature or humidity or interruption of power, heat, air conditioning or refrigeration resulting from total or partial destruction of or damage to the power, heating, air conditioning, cooling or refrigerating apparatus, connections or supply pipes, by the perils insured against under this Policy.

15.   EXPEDITING EXPENSE

Coverage under this Policy includes the reasonable extra cost of temporary repair and of expediting the repair of such damaged property of the Insured, including overtime and the extra costs of express or other rapid means of transportation, including air freight.

16.   REMOVAL OF DEBRIS

This Policy includes the following costs which are necessarily and reasonably incurred by the Assured following any Property Insured being lost, damaged or destroyed as a result of a peril insured under this Policy:

(1)      the removal and/or disposal of wreckage and/or debris and/or waste water and/or site clean up;

(2)      the dismantling, demolishing or temporary storage of damaged and/or    undamaged property;

(3)      the shoring up or propping up of damaged and/or undamaged property;

(4)      the provision of access routes through damaged sites;

(5)      the clearing of drains, sewers and service mains; and

(6)      the provision and maintenance of lights, audible warnings, markers and barriers.

This Extension further covers the expense necessarily incurred by the Assured for the removal of material or wreckage or debris of property not insured hereunder that is windblown, waterborne or otherwise deposited on the Assured's premises.

Notwithstanding the above, this Policy does not insure against the costs and expenses of decontamination or removal of pollutants on or under the Insured premises.

It is agreed and understood that any payment under this Extension of Cover shall not increase Insurers' total liability under this Policy as shown in Item 5 of the Declarations.

17.   SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION CLAUSE NMA 1999B (AMENDED)

Notwithstanding any provision in the Policy to which this condition is attached, this Policy does not insure against loss, damage, costs or expenses in connection with any kind or description of Seepage and/or Pollution and/or Contamination, direct or indirect, arising from any cause whatsoever.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

NEVERTHELESS:

i.      If physical loss or damage to the property insured hereunder is cause by a peril insured under this Policy and such peril insured arises directly or indirectly from Seepage and/or Pollution and/or Contamination, then such physical loss or damage shall (subject to the terms, conditions and limitations of the Policy) be covered; and

ii.     if the insured property is the subject of direct physical loss or damage for which Insurers have paid or agreed to pay then this Policy (subject to its terms, conditions and limitations) insures against direct physical loss or damage to the property insured hereunder caused by resulting Seepage and/or Pollution and/or Contamination.

It is a condition precedent to recovery under this extension that Insurers shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder unless such payment is precluded solely by the operation of any deductible and that the assured shall give notice to the Insurers of intent to claim for cost or removal of debris or cost of clean up NO LATER THAN 12 MONTHS AFTER THE DATE OF SUCH PHYSICAL LOSS OR DAMAGE.

18.     AUTHORITIES EXCLUSION

This Policy does not cover expenses, fines, penalties or costs incurred or sustained by the Assured or imposed on the assured at the order of any Government Agency, court or other authority, in connection with any kind or description of environmental impairment including seepage or pollution or contamination from any cause.

19.     TEMPORARY REMOVAL

This Policy includes subject to the following provisions, the property insured whilst temporarily removed for cleaning, renovation, repair or other similar purposes, elsewhere on the same or any other premises of the Assured, or elsewhere on any other premises, worldwide and in transit thereto and therefrom by road, rail or inland waterway.

The amount recoverable under this Extension of Cover in respect of each item of property insured shall not exceed the amount which would have been recoverable had the physical loss or damage occurred in that part of the premises from which the property is temporarily removed.

It is agreed and understood that any payment under this Extension of Cover shall not increase Insurers' total liability under this Policy as shown in Item 5 of the Declarations.

20.     PROPERTY IN COURSE OF CONSTRUCTION

This Policy shall automatically include coverage for new construction and/or reconstruction and/or additions and/or maintenance and/or modifications and/or work including materials, supplies and equipment utilized in such works and whether carried out at the Assured's premises or at new premises, subject to the provisions of the Automatic Acquisitions and Capital Additions Clause at General Condition 19.

Notwithstanding any other terms and conditions contained herein, this Policy shall only pay in excess of more specific construction insurance, if any, and the deductibles or retention applicable to this Policy shall not apply where the amount payable under such other insurance exceeds the deductibles or retention herein but in no case shall any loss be payable below the deductible or retention amount.

Manuscript Policy Form
F550936

21.   <u>PROPERTY AND PLANT TESTING AND COMMISSIONING CLAUSE</u>

This Policy covers property in course of construction (Clause 19).   Acceptance of newly constructed property which has not been otherwise covered herein, is subject to the satisfactory completion of the following procedures:

1)      Mechanical completion including testing;

2)      Testing and commissioning;

3)      Performance testing conforming to one hundred percent (100%) contract design criteria maintained by the entire plant in a stable and controlled manner for a continuous ongoing period of a minimum of seventy-two (72) hours duration.  In complying with this condition, the expression "entire plant" shall be defined as the new property to be accepted including any existing property which has been the subject of alteration or modification in connection therewith.

4)      Official acceptance by the Assured following formal hand over without reservation or waiver or guarantee conditions.  It being understood that no outstanding equipment faults, punch list items, temporary structures or modifications remain that would affect the operating integrity of the plant.

It is further noted and agreed that the above provisions do not apply to normal routine maintenance activities, scheduled turnarounds and activities as provided for within the Property in Course of Construction Clause (Clause19).

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

ADDENDUM A

BUSINESS INTERRUPTION
(GROSS EARNINGS)

1.      <u>INSURING CLAUSE</u>

Subject to the Sub-Limits stated in the Declarations, this Policy is extended to cover loss resulting directly from necessary INTERRUPTION OF BUSINESS caused by physical loss or damage, as insured by this Policy, and occurring during the term of this Policy, to the following:

A.      real and/or personal property as insured by this Policy; and

B.      Property of others, provided that such physical loss or damage to such property wholly or partially prevents:

   i.      a supplier of goods, materials, products and/or services to the Assured from rendering their goods, materials, products and/or services; or

   ii.      a receiver of goods, materials, products and/or services from the Assured from accepting the Assured's goods, materials, products and/or services.

2.      <u>BASIS OF INDEMNITY</u>

In the event of such loss or damage Insurers shall be liable under this Policy for:

a.      <u>In Respect of Business Interruption Loss:</u>

the Actual Loss Sustained by the Assured resulting directly from such interruption of business, but not exceeding the reduction in Gross Earnings less charges and expenses which do not necessarily continue during the interruption of business; and

b.      <u>In Respect of Extra Expense:</u>

the amount incurred by the Assured in order to continue as nearly as practicable the Normal conduct of the Assured's business, being the excess (if any) of the total cost chargeable to the conduct of the Assured's business, over and above the total cost that would normally have been incurred to conduct the business during the same period had no loss occurred, the cost in each case to include expense of using other property or facilities of other concerns or other necessary emergency expenses, any salvage of such property remaining after resumption of Normal operations being taken into consideration in the adjustment of any loss hereunder.

Indemnity shall continue for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property as has been lost or damaged, commencing with the date of such loss or damage and not limited by the date of expiration of this Policy.

Due consideration shall be given to the continuation of Normal charges and expenses including all continuing payroll expenses, to the extent necessary to

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

resume operations of the Assured with the same quality of service which existed immediately preceding the loss.

2.      DEFINITIONS

A.      GROSS EARNINGS

In respect of non-manufacturing or mercantile risks "Gross Earnings" are define as the sum of:

a.      Total net sales, and

b.      Other earnings derived from the operation of the business less the cost of

c.      Merchandise sold including packaging materials therefor

d.      Materials and supplies consumed directly in supplying the service(s) sold by the Assured, and

e.      Service(s) purchased from outsiders (not employees of the Assured) for resale which do not continue under contract.

In respect of manufacturing risks "Gross Earnings" are defined as the sum of:

a.      The total  net sales value of production

b.      Total net sales of merchandise, and

c.      Other earnings derived from operations of the business less the cost of

d.      Raw Stock from which such production is derived,

e.      Supplies consisting of materials consumed directly in the conversion of such Raw Stock into finished Stock, or in supplying the services sold by the Assured,

f.      Merchandise sold, including packaging materials therefor, and

g.      Service(s) purchased from outsiders (not employees of the Assured) for resale which do not continue under contract.

No other costs shall be deducted in determining Gross Earnings.

In determining gross Earnings due consideration shall be given to the experience of the business before the date of loss or damage and to the probable experience thereafter had no loss occurred.

B.      RAW STOCK

Is material in the state in which the Assured receives it for conversion into Finished Stock.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

    C.      <u>STOCK IN PROCESS</u>

Is Raw Stock which has undergone any aging, seasoning, mechanical or other process of manufacture at the Assured's premises but which has not become finished Stock/power ready for supply.

    D.      <u>FINISHED STOCK</u>

Is stock manufactured by the Assured which in the ordinary course of the Assured's business is ready for supply, packing, shipment or sale.

    E.      <u>MERCHANDISE</u>

Is goods kept for sale by the Assured which are not the product of manufacturing operations conducted by the Assured.

    F.      <u>NORMAL</u>

Is the condition that would have existed had no loss occurred.

3.      <u>CONDITIONS</u>

    A.      <u>DIRECT DAMAGE</u>

In respect of loss under this Policy resulting from physical loss or damage to real and personal property as insured by this Policy, no claims shall be sustained under this Extension resulting from the necessary interruption of business unless and until a loss has been paid, or liability admitted, in respect of such physical loss or damage.

This Condition shall not apply if no such payment shall have been made nor liability admitted solely owing to the operation of a Deductible in this Policy excluding liability for losses below a specified amount.

    B.      <u>RESUMPTION OF OPERATIONS</u>

If the Assured could reduce the loss resulting from the interruption of business:

i.      by complete or partial resumption of operation of the property whether or not such property be lost or damaged, or

ii.      by making use of Merchandise or other property at the Assured's locations or elsewhere,

and

iii.      in respect of manufacturing risks, by making use of Stock (Raw, In Process of Finished) at the Assured's locations or elsewhere.

such reduction shall be taken into account in arriving at the amount of loss hereunder.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

C.    EXPENSES TO REDUCE LOSS

This Policy also covers such expenses as are necessarily incurred for the purpose of reducing loss under this Policy (except expenses incurred to extinguish a fire) and in respect of manufacturing risks, such expense, in excess of Normal, as would necessarily be incurred in replacing any finished Stock/power used by the Assured to reduce loss under this Policy; but in no event to exceed the amount by which loss under this Policy is thereby reduced.

D.    FINISHED STOCK/POWER READY FOR SUPPLY

In respect of manufacturing risks, Insurers shall not be liable under this Policy for any loss resulting from loss of or damage to finished Stock/power ready for supply nor for the time required to reproduce such Finished Stock.

E.    SPECIAL EXCLUSIONS

Insurers shall not be liable under this Policy for any increase of loss which may be occasioned by:

i.       the suspension, lapse or cancellation of any license, lease contract, order, or any written or oral agreement;

ii.      interference at the described premises with rebuilding or replacing the property, or with the resumption or continuance of the business operations of the Assured, by strikers or other persons; or

iii.     any other consequential or remote loss.

F.    NON PRODUCTIVE PROPERTY

If the real and/or personal property sustaining loss or damage does not produce an income the actual loss sustained shall be the continuing fixed charges and expenses directly attributable to such non-productive property.

G.    PROPERTY IN COURSE OF CONSTRUCTION

In determining gross Earnings with respect to property in course of construction due consideration shall be given to the available experience after completion of the construction, erection, installation or assembly, or if such experience is not available to the level of operations which could reasonably have been anticipated had no loss occurred.

4.    OTHER CONDITIONS

A.    DENIAL OF ACCESS

This Policy shall include loss sustained during a period of time not exceeding eight (8) weeks as a direct result of damage by an insured peril which shall prevent or hinder the use of the Assured's real or personal property and/or the Assured's premises or access thereto, whether or not the premises or property of the Assured therein shall be lost, destroyed or damaged.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

B.     <u>INTERRUPTION BY CIVIL OR MILITARY AUTHORITY</u>

This Policy shall include loss sustained during a period of time not exceeding eight (8 weeks when, as a direct result of damage by a peril insured against, access to the Assured's real or personal property and/or the Assured's premises is prohibited by order of civil, federal, local or military authority.

C.     <u>IMPOUNDED WATER</u>

This Policy is extended to insured loss sustained during the interruption of business resulting from water used as a raw material or used for power or other manufacturing purposes is released from storage as a result of a peril insured by this Policy.

D.     <u>EXTENDED PERIOD OF INDEMNITY EXTENSION</u>

Subject to the terms, conditions and exclusions of this Policy and to the following conditions, the Business Interruption and/or Extra Expense and/or Rental Income coverage provided by this Policy is extended to provide coverage for the additional length of time required to restore the business of the Assured to the condition that would have existed had no loss occurred, commencing on either:

i.       the date on which Insurers' liability would otherwise terminate, or

ii.      the date on which rebuilding, repairing or replacement of such property as has been lost, damaged or destroyed is actually completed,

whichever is the later.

Insurers' liability under this Extension shall terminate not later than three hundred and sixty-five (365) days from the commencement date set forth above.

E.     <u>SOFT COSTS</u>

Subject to the terms, conditions and exclusions of this Policy, this Policy is extended to cover, during the period of time required to rebuild, repair or replace property under construction which has been lost, damaged or destroyed (including any Extended Period of Indemnity), those additional expenses relating to such construction project over the above those costs which would have been incurred had no loss or damage taken place, including but not limited to interest payments on financing under a loan agreement and real estate taxes accruing during the period of delay.

F.     <u>TAX TREAMENT</u>

It is agreed that this Policy shall include the loss sustained by the Assured in the event that the tax treatment of business interruption loss proceeds differs from the tax treatment of profits that would have been earned by the Insured had no loss occurred.

G.     <u>RESEARCH AND DEVELOPMENT</u>

In the event of loss or damage to Real and Personal Property of the Assured by an insured peril which results in an interruption of research and development

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

activities which in themselves would not have produced income during the Period of Indemnity, this Policy shall cover:

A.    the continuing fixed charges and expenses (including ordinary payroll), directly attributable to such research and development activities; and

B.    the cost of repeating the research and development activity which has been interrupted, including the necessary Extra Expense to reduce the amount of time lost as a result of the interruption.

H.    <u>INCREASED TIME TO REBUILD</u>

Insurers shall also be liable for loss due to the additional period of time required for repairing, replacing, reinstating, constructing or reconstructing any portion of the property which sustains loss or damage where such damage is occasioned by the enforcement of the minimum requirements of any law, by-law, regulation or ordinance regulating same.

I.    <u>RENTAL  INCOME EXTENSION</u>

Subject to the terms, conditions and exclusions of this Policy, and to the following terms and conditions, this Policy also covers:

The actual loss sustained by the Assured resulting directly from necessary untenantability caused by damage to or destruction of real or personal property (at the described locations) by the perils insured against during the term of this Policy, but not exceeding the reduction in Rental Income less charges and expenses which do not necessarily continue during the period of untenantability, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the described property as has been damaged or destroyed, commencing with the d ate of damage or destruction and not limited by the date of expiration of this Policy.

For the purpose of this extension "Rental Income" is defined as the sum of:

(a)    The anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Assured, and

(b)    The amount of all charges which are the legal obligations of the tenants and which would otherwise be obligations of the Assured, and

(c)    The fair rental value of any portion of such property which is occupied by the Assured.

In determining Rental Income due consideration shall be given to the rental experience before the date of damage or destruction and the probable experience thereafter had no loss occurred.

J.    <u>ACCOUNTS RECEIVABLE</u>

This Policy covers, as the result of loss or damage by an insured peril to the Assured's records of accounts receivable:

A.    all sums due to the Assured from customers, provided the Assured is unable to effect collection thereof;

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

B.      interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

C.      any necessary collection expense in excess of normal collection cost in order to reduce loss; and

D.      other expenses, when reasonably incurred by the Assured in re-establishing records of accounts receivable following such Damage.

Where there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

i.      The monthly average of accounts receivable during the last available twelve (12) months, shall be adjusted in accordance with the percentage increase or decrease in the twelve (12) months average of monthly gross revenues which may have occurred in the interim.

ii.     The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Assured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Assured.

L.      LEASEHOLD INTEREST

Subject to the terms, conditions and exclusions of this Policy and to the following conditions, this Policy is extended to cover the pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Assured's interest in:

a.      the amount of bonus paid by the Assured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

b.      improvements and betterments to real property during the unexpired term of the lease which is not covered elsewhere in this Policy;

c.      the amount of advance rental paid by the Assured and not recoverable under the terms of the lease for the unexpired term of the lease; and

d.      the Interest of the Assured as Lessee shall be paid for the first three months succeeding the date of the loss and the net lease Interest shall be paid for the remaining months of the unexpired lease,

when property is rendered wholly or partially untenantable by any of the perils covered herein during the term of this Policy and the lease is cancelled by the

Manuscript Policy Form
F550936

lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located.


Definitions:

The following terms, wherever used in this Extension shall mean as follows:

i.      the "Interest of the Insured as Lessee".

       a)      the excess of the rental income of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease;

       b)      the rental Income earned by the Assured from sublease agreements, to the extent not covered under any other Extension of the Policy, over and above the rental expenses specified in the lease between the Assured and the lessor.


ii.     "Net Lease Interest".

      that sum, which placed at eight percent (8%) interest compounded annually, will be equivalent to the Interest of the Insured as Lessee.

Exclusion

Insurers shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Assured exercising an option to cancel the lease.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

ADDENDUM B

ASBESTOS ENDORSEMENT

Notwithstanding anything to the contrary contained in this Policy, and subject to a sub-limit of USD 1,000,000, this Policy is extended to insure asbestos physically incorporated in an insured building or structure, but only that part of the asbestos which has been physically damaged during the Policy period to the extent that it can no longer fulfill its original function by one of these listed perils:

Fire; Smoke; Explosion; Lightning; Hail; Earthquake; Direct Impact of vehicle, aircraft or vessel; riot or civil commotion; Vandalism or malicious mischief; or Leakage or accidental discharge of fire protective equipment.

This coverage is subject to all limitations in the Policy to which this Addendum is attached and, in addition, the following specific limitations apply:

1.      The said building or structure must be insured under this Policy for damage by that listed peril.

2.      The listed peril must be the immediate, sole cause of the damage to the asbestos.

3.      The Assured must inspect the building or structure and report to Insurers the existence and cost of the damage within one year after the listed peril first damaged the asbestos.  Any damage reported more than one year after the last day of the Policy period is not insured.

4.      Insurance under this Policy in respect of asbestos shall not include any sum relating to:

        i)       faults in the asbestos or its design or workmanship;

        ii)      asbestos not physically damaged by the listed peril;

        iii)     actions taken to protect human health or property; or

        iv)      standard or requirements set by any government or regulatory authority.

        Except as set forth above, this Policy does not insure asbestos or any sum relating thereto.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

ADDENDUM C

RADIOACTIVE CONTAMINATION AND EXPLOSIVE NUCLEAR ASSEMBLIES EXCLUSION
CLAUSE

*(Approved by Lloyd's Underwriters' Non-Marine Association)*

This Policy does not cover

 (a)  loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever
resulting or arising therefrom or any consequential loss

 (b)  any legal liability of whatsoever nature

    directly or indirectly caused by or contributed to by or arising from

   (i)  ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear
waste from the combustion of nuclear fuel

  (ii)  the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly
or nuclear component thereof.

4/4/68

NMA1622

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

ADDENDUM D

WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damages cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently in any other sequence to the loss:

1.  War, invasion, acts of foreign enemies, hostilities warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power, or

2.  any act of terrorism.


3.  For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or groups (s) of persons, whether acting alone or on behalf of or in connection with any organizations(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any governmental/or to put the public, or any section of the public, in fear.

This endorsement also excludes the loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

**ADDENDUM  E**

**DELETED  -  DELETED  -  DELETED  -  DELETED**

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

ADDENDUM F

Definition of Named Windstorm

Named windstorm means any storm or weather disturbance identified by name by the US
National Hurricane Center.

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

ADDENDUM G

SANCTION LIMITATION AND EXCLUSION CLAUSE

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100
15 September 2010

Policy Number: F550936
Effective Date:  3/21/2014

Manuscript Policy Form
F550936

ADDENDUM H

DATA CORRUPTION EXCLUSION

Notwithstanding any provision in the policy to which this endorsement is attached or any Underlying Excess or Primary policy listed in the Declarations, this policy does not insure against Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:
1. Any functioning or malfunctioning of the Internet or similar facility, or of any intranet or private network or similar facility,

2. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

3. Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing liability or failure of the Insured to conduct business.

This Endorsement shall not exclude subsequent damage or Consequential loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean: Fire, Lightning, Earthquake, Explosion, Falling Aircraft, Flood, Smoke, Vehicle Impact, Windstorm or Tempest.
Such Damage or Consequential loss described in 11 2, or 3 above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

Policy Number: F550936
Effective Date:  3/21/2014