# Exhibit C

# TOLLING AGREEMENT

This Tolling Agreement ("**Agreement**") is made and entered into as of May 1, 2019 ("**Effective Date**") by and between the Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**") acting through its Special Claims Committee, the Official Committee of Unsecured Creditors for the Title III Debtors (the "**Committee**"), and U.S. Bank Trust National Association (the "**Trustee**"), solely in its capacity as Trustee for holders of the Puerto Rico Infrastructure Financing Authority ("**PRIFA**") Special Tax Revenue Bonds Series 2005 A, B, C and 2006 (collectively, the "**Bonds**", and holders of the bonds "**Bondholders**") issued under that certain Trust Agreement, dated as of October 1, 1988, as amended (the "**Trust Agreement**"). As referred to herein, each of Trustee, the Oversight Board, and the Committee is a "**Party**," and, collectively the "**Parties**". This agreement is made in reference to the following facts:

WHEREAS, in May and June, 2017 cases were commenced under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act, H.R. 5278 ("**PROMESA**") (collectively, the "**Title III Cases**") for, among others, the Commonwealth of Puerto Rico (the "**Commonwealth**") by authority of the PROMESA Financial Oversight and Management Board (the "**Oversight Board**") in the United States District Court for the District of Puerto Rico (the "**District Court**"). No Title III case has been commenced for PRIFA, nor has the Oversight Board filed a proposed modification under Title VI of PROMESA for PRIFA. An Official Committee of Unsecured Creditors was appointed for the Title III Debtors (the "**Committee**").

WHEREAS, on September 13, 2017, a Special Committee of the Oversight Board retained Kobre & Kim (the "**Independent Investigator**") as an independent investigation team to carry out a review of Puerto Rico's debt and the circumstances leading to the current fiscal crisis;

WHEREAS, the District Court entered Orders (collectively the "**Bar Date Orders**") establishing June 29, 2018 (the "**Bar Date**") as the deadline for filing proofs of claim against the Title III Debtors on account of, among other things, claims arising, or deemed to have arisen, prior to the respective commencement dates for their Title III Cases, including bond claims. No Bar Date has been set for filing claims against PRIFA relating to the Bonds.

WHEREAS, on May 18, 2018, in compliance with the Bar Date Orders, the Trustee filed a proof of claim docketed as Claim No. 133386 against the Commonwealth (the "**Proof of Claim**") for the benefit of all Bondholders (including without limitation Bond Insurers who are obligated to make payment of principal and interest on certain Bonds and control the voting and direction of such Bonds) for all rights and entitlement that U.S. Bank as Trustee has or may have of whatever nature or kind against the Commonwealth as set forth in the Trust Agreement and applicable law, including for breach of covenants, failure to make proper appropriations, and for the diversion of revenues pledged for the payment of the Bonds, in violation of the Trust Agreement, the Commonwealth's Constitution, the United States Constitution, the Office of Management and Budget Act, and PROMESA. No claims with respect to PRIFA were filed by the Trustee against any other Title III Debtor.

1

WHEREAS, on August 20, 2018, the Independent Investigator publicly released more than 600 pages of findings based upon its investigation in a Final Investigative Report (the "**Report**");

WHEREAS, the Report sought "to address a broad range of potentially actionable conduct and a wide variety of potential plaintiffs and defendants," but did not identify or analyze "all possible claims that may be brought based on the facts uncovered by [the] investigation;"

WHEREAS, on August 28, 2018, the Oversight Board designated the Special Claims Committee and delegated to it the authority under PROMESA to independently review the findings in the Report, and to take any appropriate steps, including the negotiation and/or prosecution of claims, on behalf of the Title III debtors for the benefit of all creditors and parties in interest in the Title III cases;

WHEREAS, the Special Claims Committee engaged Brown Rudnick LLP ("**Claims Counsel**") on November 28, 2018 to assist with its review of the Report and assess any other potential claims that the Oversight Board should negotiate and/or prosecute on behalf of the Title III debtors for the benefit of all creditors and parties in interest in the Title III cases. These claims have not been made public as yet;

WHEREAS, the Special Claims Committee engaged the financial advisory firm of DiCicco, Gulman and Company, LLP on February 26, 2019 to assist it and Claims Counsel with respect to the independent review and initiation of any litigation arising from that review;

WHEREAS, based upon their investigation to date, the Special Claims Committee, Claims Counsel and the Committee believe that the Commonwealth may possess potential claims against the Trustee which claims would be subject to the statutes of limitation under 11 U.S.C. §§108(a) and 546(a), including defenses to the claims asserted by the Trustee in the Proof of Claim, including allegations that the Commonwealth illegally clawed back or diverted rum tax sale proceeds that were pledged by PRIFA to pay the Bonds, which claim allegedly gives rise to a secured claim by the Trustee against the Commonwealth (the "**Avoidance Claims**");

WHEREAS, for the avoidance of doubt, the Parties understand and agree that the Avoidance Claims that are the subject of this Tolling Agreement will not include (i) any avoidance or claw-back action arising under 11 U.S.C. §§ 544 et seq with respect to any payments from rum tax sale proceeds made by the Commonwealth to PRIFA prior to the commencement of its Title III case, (ii) any payments from rum tax sale proceeds made by PRIFA to the Trustee or to PRIFA bondholders prior to the commencement of the Commonwealth's Title III case, or (iii) any claims challenging the validity of any liens or security interests against PRIFA (collectively, the "**Non-tolled Claims**");

WHEREAS, the Special Claims Committee acknowledges that the Trustee has admitted to no fault, wrongdoing, liability or obligation, or to any deficiency or invalidity in its assertion of a secured claim as set forth in the Proof of Claim, and the Trustee expressly denies any allegation, accusation, or implication of such fault, wrongdoing, liability or obligation, or any deficiency or invalidity in its assertion of a secured claim against the Commonwealth;

2

WHEREAS, the Parties and their counsel desire to cooperate in resolving, if possible, any potential Avoidance Claims;

THEREFORE, in order to facilitate an orderly discussion between the Parties and in an attempt to avoid immediate and potentially unnecessary litigation, and in consideration of the mutual promises and agreements made herein, the Parties agree as follows:

(1) The Oversight Board acting through its Special Claims Committee and the Committee agree not to commence any litigation or other proceeding against the Trustee asserting any Avoidance Claim, between the Effective Date of this Agreement and the Termination Date or Early Termination Date, as applicable, as defined in Paragraphs (7) and (9) below.

(2) The running of time with respect to any statute of limitations, statute of repose, or other time-based limitation or defense, whether at law, in equity, under statute, under contract, or otherwise (including, without limitation, the defenses of laches, estoppel, timely action, notice, and waiver), is hereby tolled such that the time period between the Effective Date of this Agreement and the Termination Date or Early Termination Date, as applicable, shall not be counted in determining the applicability of any such limitation or defense in any action or proceeding brought by the Commonwealth, the Oversight Board acting through its Special Claims Committee, the Committee or any Successor Party (as defined below), whether brought collectively or separately, asserting any Avoidance Claims against the Trustee. For the avoidance of doubt and without limiting the foregoing, this Agreement applies to the statutes of limitation set forth in 11 U.S.C. §§ 108(a) and 546(a), but does not apply to the Non-tolled Claims.

(3) Nothing in this Agreement shall affect any defense available to any Party as of the Effective Date of this Agreement, and this Agreement shall not be deemed to revive any claim that is or was already barred on that date. Nothing in this Agreement, or in the circumstances that gave rise to this Agreement, shall be construed as an acknowledgement by any Party that any claim has or has not been barred, or is about to be barred, by the statute of limitations, laches, estoppel, waiver, timely action, notice, or any other defense based on the lapse of time.

(4) This Agreement shall not operate as an admission of liability by any Party. Neither this Agreement nor any action taken pursuant to this Agreement shall be offered or received in evidence in any action or proceeding as an admission of liability or wrongdoing by any Party or for any other purpose except to rebut a time-based defense asserted by a Party to this Agreement.

(5) Nothing in this Agreement shall be construed as waiving any claim, right, or defense that may have accrued up to the Effective Date of this Agreement. Nothing in this Agreement shall constitute or be construed as an admission by any Party that any Avoidance Claim or other claim could properly be asserted against it by the other Party or that any such claim would have any basis in law or in fact. Except as expressly provided in this Agreement with respect to a time-based defense, this Agreement is not intended to and shall not have any effect upon any defense that either Party may assert to any claim brought by the other

3

Party. Nothing in this Agreement shall be construed as an admission by any Party regarding whether or when any statute of limitations, laches, or other time-based defense has begun to run on any potential claim, or whether any claim is already barred, impaired or limited by the passage of time.

(6) The Parties agree that any Avoidance Claims tolled by this Agreement shall be tolled for the benefit of the Commonwealth only, and in their capacity as representatives of the Commonwealth, the Oversight Board acting through its Special Claims Committee, and/or any successors or assigns of the Oversight Board acting through its Special Claims Committee, including as the result or by virtue of a relevant court order or plan of adjustment, including but not limited to a trustee appointed under section 926 of the Bankruptcy Code or any other party or entity designated by court order or in an approved plan of adjustment (any such a successor or assign, including but not limited to any such trustee or other designated party or entity, a "**Successor Party**," and, collectively, "**Successor Parties**").

(7) This Agreement shall terminate 180 days from the Effective Date ("**Termination Date**") unless the Termination Date is extended by written agreement of all Parties and any Successor Parties, with such mutual agreement evidenced by all of the Parties and any Successor Parties; *provided, however,* that, if the Committee does not agree to an extension of the Termination Date otherwise agreed to by all other Parties, the Committee's lack of agreement shall prevent the extension only if the Committee has satisfied the requirements of paragraph 8 of that certain Stipulation and Agreed Order by and Among Financial Oversight and Management Board, Its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Debtor Causes of Action (Dkt. No. 6505-1, the "**Joint Prosecution Stipulation**"), as approved by the Court at the April 24, 2019 omnibus hearing. The running of all applicable statutes of limitations shall commence again on the Termination Date.

(8) Any Party or Successor Party shall have the right to terminate this Agreement at any time prior to the Termination Date by providing written notice to the other Parties and any Successor Parties and their respective counsel ("**Early Termination**"); *provided, however,* that the Committee may exercise an Early Termination Right only if it has satisfied the requirements of paragraph 8 of the Joint Prosecution Stipulation. Such notice is to be given by U.S. certified or registered mail, or other type of mailing that requires written confirmation of delivery, and via email to the addresses below or to be provided for any Successor Parties.

For the Oversight Board acting through its Special Claims Committee:

Cathrine M. Castaldi
Brown Rudnick LLP
2211 Michelson Drive
Seventh Floor
Irvine, CA 92612
ccastaldi@brownrudnick.com

4

\\NY - 021918/000014 - 9792874 v7

> For the Trustee:
> Robin Keller
>
> Daniel Lanigan
> Hogan Lovells US LLP
> 875 Third Avenue
> New York, New York 10022
> robin.keller@hoganlovells.com
> Daniel.lanigan@hoganlovells.com
>
>    -and-
> Justin Shearer
> U.S. Bank Trust N.A.
> 100 Wall Street, Suite 1600
> New York, N.Y. 10005
>
> For the Committee:
> Luc Despins
> Paul Hasting LLP
> 200 Park Avenue
> New York, New York 10166
> lucdespins@paulhastings.com

(9) If notice of Early Termination is given pursuant to Paragraph 8 herein, the Early Termination date of this Agreement shall be twenty (20) days after the date such written notice is received by the other Parties and Successor Parties ("**Early Termination Date**").

(10) Except as provided in Paragraph 2 herein, upon any termination of this Agreement, or termination of any extension thereof, the Parties and any Successor Parties shall be returned to the status quo as of the Effective Date of this Agreement.

(11) This Agreement comprises the entire agreement of the Parties with respect to the tolling of any defense, legal or equitable, based upon the lapse of time including, but not limited to, the statute of limitations, laches, estoppel, waiver, timely action or notice. This Agreement supersedes any prior agreements, understandings, or promises regarding this subject matter. This Agreement may be modified, amended, or supplemented only by a written instrument signed by all of the Parties and any Successor Parties. The terms of this Agreement are contractual in nature and not mere recitals.

(12) Each undersigned Party represents, warrants, and states that all legal action necessary for the effectuation and execution of this Agreement has been validly taken and that the individuals whose signatures appear below on behalf of each Party are duly authorized to execute this Agreement on behalf of their respective Parties and to bind such Parties to the terms of this Agreement.  The Trustee represents that it is the holder of the Proof of Claim, and that it has the authority to execute this Agreement. Other than any Successor Parties, or as provided under the Trust Agreement, there are no third-party beneficiaries of this Agreement.

(13) This Agreement shall apply to Avoidance Claims against and be binding on the Trustee. No change in ownership, corporate status, or the control of the Trustee shall alter or affect the terms and conditions of this Agreement.

(14) This Agreement is the result of negotiation between the Parties and is not to be construed for or against any Party.

(15) The consideration for this Agreement includes, but is not limited to, the Oversight Board (acting through its Special Claims Committee's) and the Committee's forbearance from pursuing any potential claims against the Trustee or the Bondholders at the present time and the Parties' joint agreement to attempt to resolve the dispute through negotiation or mediation without resort to litigation.

(16) This Agreement shall be interpreted in accordance with the substantive law of the State of New York, without application of choice of law rules.

(17) The District Court shall have exclusive jurisdiction over any dispute arising out of or relating to this Agreement.

(18) This Agreement may be executed in counterpart originals or facsimile signatures, each of which shall be deemed to be an original of all Parties signatory to the counterpart.

**On behalf of the Oversight Board, acting through its Special Claims Committee**

*/s/ Cathrine M. Castaldi*

By: Cathrine M. Castaldi
Brown Rudnick LLP
2211 Michelson Drive
Seventh Floor
Irvine, CA 92612

**Official Committee of Unsecured Creditors, through its counsel**

*/s/ Luc Despins /AB*

By: Luc A. Despins
Paul Hasting LLP
200 Park Avenue
New York, New York 10166

**U.S. Bank Trust National Association, as Trustee for the Bonds**

By: _____

Name: Justin Shearer
Title: Vice President
Address: U.S. Bank Trust National Association
   100 Wall Street, Suite 1600
   New York, NY 10005

*[Signature Page to Tolling Agreement]*