# Exhibit D

CERTIFIED TRANSLATION

1995 JTS 106, 138 DPR 938, 1995 WL 905903 (PR)

LIBROTEX, INC., AND LIBRERÍA Y EDITORIAL LEA, INC., plaintiffs and petitioners,

v.

PUERTO RICO AQUEDUCT AND SEWER AUTHORITY, y OTROS, defendants and respondents

In the Supreme Court of Puerto Rico
Number: CE-94-395
Decided: July 14, 1995
July 14, 1995

1. ADMINISTRATIVE LAW—POWERS AND PROCEEDINGS OF AGENCIES, OFFICIALS, AND ADMINISTRATIVE AGENTS—GENERALLY—PUBLIC CORPORATIONS—PUERTO RICO AQUEDUCT AND SEWER AUTHORITY.
The Puerto Rico Aqueduct and Sewer Authority has the capacity to sue and be sued as such a corporation. Nevertheless, it may not be sued for damages and prejudicial consequences caused by the impurity, irregularity, or insufficiency, whether actual or alleged, of the water it provides. Furthermore, the court-ordered sale of the properties of the Authority is not permitted.

2. ID.—ID.—ID.—ID.—GENERALLY.
Although public corporations (e.g. the Puerto Rico Aqueduct and Sewer Authority) operate autonomously, they retain their nature of government instrumentality, created to respond to public utility purposes.

3. ID.—ID.—ID.—ID.—PUERTO RICO AQUEDUCT AND SEWER AUTHORITY.
The exercise of the powers conferred by the Puerto Rico Aqueduct and Sewer Law to this government instrumentality is considered an essential government function. 22 LPRA sec. 142.

4. ID.—ID.—ID.—ID.—GENERALLY.
The funds for the operation of public corporations are considered public, regardless of whether they do not go on to be a part of the budget of the State.

5. ID.—ID.—ID.—ID.— PUERTO RICO AQUEDUCT AND SEWER AUTHORITY.
The Puerto Rico Legislature has granted sufficient operational powers to the Puerto Rico Aqueduct and Sewer Authority to consider it as subject to legal proceedings as any private entity would be in similar circumstances, so long as it does not interfere with the performance of its executive functions.

6. . ID.—ID.—ID.—ID.—ID.
The grave financial crisis of the Puerto Rico Aqueduct and Sewer Authority precludes the seizure of a large sum of the Authority's operational funds, since the already affected vital service that said public utility provides the people of Puerto Rico would be interrupted. Nevertheless, the creditor of such a sum may recover it in such a way that it does not destabilize the public efforts of said government entity such as through the allocation of a special quantity in the Authority's next functional budget. *939

PETITION FOR *CERTIORARI* to review a RESOLUTION entered by *Carmen Celinda Ríos*, J. (San Juan) granting a certain motion of the plaintiffs and rendering invalid an order for the seizure of funds issued against the Puerto Rico Aqueduct and Sewer Authority. *Affirmed.*

*Rafael A. Vilá Carrión*, attorney for the petitioners; *Luis Berrios Amadeo*, of *Cancio, Nadal, Rivera & Díaz*, attorney for the respondents.

ASSOCIATE JUSTICE MISTER NEGRÓN GARCÍA issued the opinion of the Court.

Is the seizure of funds from the Puerto Rico Aqueduct and Sewer Authority valid for the satisfaction of a final and unappealable judgment

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

against it? Is any alternative relief available?

I

In 1992, the companies Librotex, Inc. (hereinafter Librotex) and Librería y Editorial Lea, Inc. (hereinafter Lea, Inc.) obtained a judgment against the Puerto Rico Aqueduct and Sewer Authority (hereinafter Authority) for $2,407,232. After it was final and unappealable, as a means to enforce the judgment, they requested the seizure of "bank accounts and/or cash or funds in the power of third parties and/or cash located in the offices and/or branches of the [Authority]". Appendix II, pg. 1. The appropriate order having been issued by the Superior Court, San Juan Part (Hon. Carmen Celinda Ríos, Judge), Librotex and Lea, Inc. began the enforcement thereof with Citibank, N.A., in the amount of $435,354.91. Urgently, the Authority appeared before the court and challenged the validity thereof. It argued that they were *public property* belonging to a *government entity*, exhibiting a public interest of such magnitude as to precluded the seizure thereof, even where enforcing a judgment.

As a result, the aforementioned lower court rendered invalid the order. Subsequently, following a hearing to reconsider, the court affirmed its resolution. It decided that under the circumstances, *940 of this case "the conclusion that the seizure in question affect[ed] public funds destined for essential purposes" was "inescapable". Appendix IV, pg. 6. That is, it created "a consequence of more than minor significance, [since it interfered] with the Authority's functions". Id.

Dissatisfied, at the request of Librotex and Lea, Inc., we review the decision.

II

Essentially, the petitioners maintain that the lower court erred in rendering invalid the seizure.

They claim that upon the creation of the respondent public corporation, the Legislature conferred fiscal and operational autonomy to the entity with respect to the Central Government, which, as a result, conferred a corporate structure thereto and sufficient powers to operate in the manner of a private business. They argue that the Puerto Rico Aqueduct and Sewer Law recognized, *first*, the capacity to sue and be sued, with the clear intention of the legislature that it be subject to legal proceedings like any private company and, *second*, that so created—as it pertains to said corporation—the State waived its sovereign immunity and, consequentially, the protection it enjoys against seizures. They invoke F.H.A. v. Burr, 309 US 242 (1940), followed in Mackey v. Lanier Collection Agency & Serv..., 486 US 825, 834 esc. 9 (1988) and in Primate Protection League v. Tulane Ed. Fund, 500 US 72 (1991), and originally applied by this Court in Arraiza v. Reyes; León Intervener, 70 DPR 614, 615 (1949).

Using this reasoning, they argue that the Authority—as an autonomous corporate body with a structure similar to that of a private corporation—*is unconditionally subject* *941 to judicial seizure proceedings. They are incorrect.

[1] Law No. 40 of May 1, 1945, as amended, 22 LPRA sec. 141 *et seq.*, certainly granted the Authority, in what is relevant hereto, the power to "*sue and be sued as such a corporation*, except that it may not be sued for the damages and prejudicial consequences caused by the impurity, irregularity, or insufficiency, whether actual or alleged, of the water it provides and except that the court-ordered sale of the properties of the Authority is not permitted." (Emphasis added.) 22 LPRA sec. 144(c).

[2-4] Nevertheless, although it is true that public corporations—such as the Authority—operate autonomously, "they retain their nature of government instrumentality, created to respond to *public utility purposes*'D'. (Emphasis added.) Commoloco of Caguas, Inc. v. Benítez Díaz, 126 DPR 478, 491 (1990). In that sense, the Puerto Rico Aqueduct and Sewer Law provides that "[t]he exercise by the Authority of the powers conferred by sections 141 through 161 of this title shall be deemed and judged to be an *essential government function*". (Emphasis added.) 22 LPRA sec. 142. Moreover, "the funds for the operation of public corporations are considered public, regardless of whether they do not go on to be a part of the budget of the State." Commoloco of Caguas, Inc. v. Benítez Díaz, *supra*, pg. 493. Compare to Municipio de Mayagüez v. Rivera, 113 DPR 467 (1982).

[5] In line with this design, in the past we have ruled that the Legislature granted the Authority sufficient operational powers to consider it "as subject to legal proceedings as any private entity would be in similar circumstances, *so long as it does not interfere with the performance of its executive functions*." (Emphasis *942 added.) Arraiza v. Reyes; León Intervener, *supra*, pg. 618.

III

In this case, the petitioners, as creditors of the Authority, claim that the seizure up to the amount of $2,514,650.80 *will not divert public funds toward purposes far-removed from the Authority's responsibilities*, since it would merely be



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

compelling it to comply with a liability it incurred *ex delicto*. We cannot endorse this viewpoint.

[6] We take judicial notice of the grave financial crisis that the Authority is currently enduring due to the confluence of multiple factors; among them, the drought now ongoing for one (1) year almost uninterruptedly, that has afflicted the country. The authorization of the seizure would interrupt the already affected vital service that said public utility provides the people of Puerto Rico. The sum to be seized is considerably *high*. While we acknowledge that the petitioners are the Authority's creditors by judgment, the extraordinary consequences that the seizure would have on said entity require that we recognize this protection. The lower court, then, did not err in rendering invalid the seizure.

Now then, what is set forth herein does not mean that the petitioners are devoid of any relief whatsoever and are, *ad perpetuam*, at the mercy and sole will of the Authority. The *seizure* of its operational funds is one thing, with the all too well-known disruption it represents, another is that, as compatible alternative relief of an equitable nature, we simultaneously order the Executive Director, the Governing Board of the Authority, and other officials concerned to include in the Authority's next functional budget a special quantity that would satisfy the *full amount* of the judgment in question, plus accrued interest *943 until such time as it has been paid. We believe that this relief would serve justice with regard to the petitioners, while at the same time keep the Authority free of encumbering and monumental immediate liens that could destabilize its important public function, primarily at this juncture, when we are living in times of crisis in the sufficiency of our water supply. "The contributions of the work of the judiciary to the social fabric are easily recognized in times of crisis and social change wherein, by questioning the validity of certain general rules, a greater dose of creativity and remodeling is forced upon the substance of law.'D' A. Díaz Suarez, *Los jueces ante la crisis de la justicia*, 532 Rev. Gen. Der. 1669, 1673 (1988).

*The appropriate judgment will be entered.*

Associate Justice Mr. Rebollo López issued a concurring opinion, joined by Associate Justice Ms. Naveira de Rondón. Associate Justice Mr. Hernández Denton issued a concurring and dissenting opinion.

–O–

Concurring opinion issued by Associate Justice Mr. Rebollo López, joined by Associate Justice Ms. Naveira de Rondón.

Although we *concur* with the *result* of the majority opinion issued—owing to the particular and specific facts thereof— we *cannot* endorse the *extremely broad* general rule established by the Court today to the effect that the court-ordered seizure of funds property of the Puerto Rico Aqueduct and Sewer Authority (hereinafter A.A.A. for its initials in Spanish) is not appropriate *in any case* of a creditor with a judgment therefor. This general rule affects *and extends to* not only *all* creditors by judgment of the A.A.A., but also *all* creditors by judgment of the *remaining* public *944 corporations that operate in our Country, *regardless* of the amount of the court-ordered credit of said creditors.

We issued the appropriate writ of certiorari to review a resolution issued by the Superior Court of Puerto Rico, San Juan Part, through which said court *did not* allow the plaintiffs/petitioners, Librotex, Inc. and Librería y Editorial Lea, Inc., to seize—as a means of enforcing the a final and unappealable judgment that such plaintiffs had obtained against the A.A.A. in the amount of $2,407,232—certain funds of the A.A.A., said funds having been deposited with Citibank, N.A.

In the petition for certiorari that said plaintiffs/petitioners filed before this Court, they imputed that the lower court erred in:

> ...DECLARING ILLEGAL THE SEIZURE OF FUNDS PROPERTY OF THE PUERTO RICO AQUEDUCT AND SEWER AUTHORITY DUE MERELY TO THE FACT THAT THEY ARE CONSIDERED PUBLIC FUNDS, WITHOUT REGARD FOR THE LEGISLATIVE INTENT IN CREATING SAID AGENCY SUCH THAT IT WOULD BE SUBJECT TO LEGAL PROCEEDINGS IN THE SAME MANNER AS A PRIVATE CORPORATION WOULD BE, AND; IN CONCLUDING THAT SAID SEIZURE UNDULY INTERFERED WITH THE PERFORMANCE OF THE EXECUTIVE FUNCTIONS OF THIS AGENCY. Petition for Certiorari, pg. 7.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**II**

The "sovereign immunity doctrine", a principle firmly established in Anglo-American law, postulates that the State shall not be held liable for the damages caused by its officials, agents, or employees in the performance of their duties. Said principle ordinarily precludes the filing of a court proceeding against the State unless the **\*945** latter, by means of legislation to that effect, has consented thereto.[1]

Law No. 104 of June 29, 1955, as amended, known as the Claims and Lawsuits Against the Commonwealth Law, 32 LPRA sec. 3077 *et seq.*, authorized the filing of legal claims against the Commonwealth of Puerto Rico with regard to (1) actions for damages and prejudicial consequences against a person or property caused by the action or omission of an official, agent, or employee of the State, or any other person acting in an official capacity and within the scope of his or her duties, charge, or employ, *where there is fault or negligence*; (2) actions for laying claim to personal and real property or rights thereto, with or without compensation for the damages caused to said property, or for the lease or use thereof and for the demarcation of rustic plots, and (3) civil actions wherein the dollar amount claimed does not exceed seventy-five thousand dollars ($75,000) of principal, and that are grounded in the Constitution or any other Puerto Rican law, or in any regulation of any department or division of the Commonwealth or in an express or tacit agreement with the Commonwealth.[2]

In the case of actions for damages and prejudicial consequences to persons or property *caused by actions or omissions wherein there is fault or negligence*, the abovementioned Claims and Lawsuits Against the Commonwealth Law establishes *limits* on the pecuniary liability of the State. *First*, it limits the liability of the Commonwealth to the amount of seventy-five thousand dollars ($75,000) in cases where there is only one claimant with only one cause of action, and **\*946** *second*, in cases where damages are caused to more than one person, or where there is more than one cause of action, it imposes a limit of one hundred and fifty thousand dollars ($150,000). These limits are owing to the economic impact that claims against the Commonwealth have on the Treasury. Defendini Collazo et al. v. ELA, Cotto, above. It is worth noting that in Defendini Collazo et al. v. ELA, Cotto, above, we decided that the Claims and Lawsuits Against the Commonwealth Law, insomuch as it imposes limits to the financial liability of the State, *does not* have any constitutional error whatsoever; that is, we affirmed the constitutionality of the limits referred to above.

In accordance with Art. 7 of the abovementioned law, 32 LPRA 3082, the Commonwealth shall promptly satisfy any judgment against it up to the aforementioned limits of seventy-five thousand dollars ($75,000) and one hundred and fifty thousand dollars ($150,000). In the case of the payment of a sum of money where it is not possible to do so due to a shortage of funds destined for said purposes in the current budget, the appropriate allocation of funds for the payment thereof shall be made in the section of the general budget pertaining to the expenses for the following year of the department or agency concerned.

**III**

Public corporations, for their part, have been given *different treatment* than that traditionally afforded to the different executive departments of the State *with respect to both their organization and their civil liability for the damages and prejudicial consequences caused by their agents, officials, and employees in the performance of their official duties*. In that sense, Art. 4 of the above-cited Law No. 104 establishes that its provisions will apply solely to those independent public corporations whose capacity to sue and be sued has not been anticipated or contemplated by other laws. 32 LPRA sec. 3079. **\*947**

As is well known, public corporations "were created with several purposes, among others, to reduce costs, improve services offered by the State, and provide the infrastructure necessary for the growth of industry". McCrillis v. Aut. Navieras de PR, 123 DPR 113, 127 (1989). They arose as a response to the wish to expedite and promote effectiveness in public works in the face of the complexity of functions that governments encountered following World War One. Commoloco of Caguas, Inc. v. Benítez Díaz, 126 DPR 478 (1990); Torres Ponce v. Jiménez, 113 DPR 58 (1982).

Although we acknowledge the existence of a wide variety of public corporations, they have, as a general rule, legal personhood that is separate and distinct from that of the Commonwealth, and they have been endowed with powers and faculties that confer a certain amount of flexibility and independence from the central Government.[3] Now then, we must keep in mind that public corporations *do not* lose their quality as public instrumentalities created to respond to purposes of public utility, despite the autonomy and independence that characterizes them. Commoloco of Caguas, Inc. v. Benítez Díaz, above. Consequentially, the funds for the operation of these corporate entities continue to be considered public, regardless of whether they do not go on to form part of the State's general budget. *Id.*

In Commoloco of Caguas, Inc. v. Benítez Díaz, above,[4] pgs. 490493 [sic], we stated, *in what is relevant hereto*, as follows: **\*948**

> In accordance with their functional make-up, public corporations are defined as "an institution that provides an


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

economic or social service in the name of the government, but as an independent legal entity; it conducts its operations with great autonomy, even where it is liable to the public, by way of the government and the parliament, and subject to a directive on the part of the government; equipped, on the other hand, with its own separate and independent funds and with the legal and commercial attributes of a commercial enterprise. These attributes would place the public corporation in an indeterminate place between a purely public authority and a commercial company under private law." (Our translation.) W. Friedman, *The Public Corporation, a Comparative Symposium*, Canada, Carswell Co., 1954, pg. 541.

> Public corporations, by way of their enabling act, receive a certain degree of financial independence with regard to their operational budget. The objective is that in this way, besides the budgetary allocations they may obtain from the State, they seek to generate their own capital, in whole or in part, whether through the issuance of obligations, loans, or by way of the revenue they receive for the goods and services they provide. We must clarify however, that this financial autonomy receives greater or less oversight from the State in accordance with the outlook or public policy that the country wherein the public corporation operates adopts for said purposes.
>
> In Puerto Rico, government control over public corporations is effected through the very enabling acts of the public corporation in question and the laws that directly affect it.
>
> The State chooses the figure of the public corporation as a tool to implement a particular public policy where it has determined that this is the means whereby it may carry out a program or service with the highest likelihood of efficiency. It is worth noting that a large part of these are classified as essential services. This means that although public corporations are erected upon certain foundations of operational autonomy, that is no reason for them to cease to be endowed with a high government interest in their functioning being of the highest quality and efficiency possible, and, therefore, that their functioning be protected from any unnecessary interference. (Scholia omitted.)

Naturally, not every agency or instrumentality of the Government is a public corporation that functions like *949 a private business or enterprise. In order to determine what constitutes a "government instrumentality" that functions like a private business, through jurisprudence we have listed a series of *factors* that, among others, must be examined in making said determination, *they are* whether the employees of the agency in question are covered by the Commonwealth Personnel Law; whether the services provided by the agency, due to their intrinsic nature, have never been provided by private enterprise; whether the company is capable of functioning as a private business or enterprise; whether the agency in fact functions like a private business or enterprise; the degree of fiscal autonomy the agency enjoys; the degree of administrative autonomy it enjoys; whether or not it charges a price or rates for the services rendered; whether the powers or faculties conferred in the agency's enabling act are fundamentally similar to those of a private enterprise; and whether the agency has or lacks the capacity to de able to, in the future, go into lucrative business or carry out activities that seek pecuniary benefits. See J.R.T. v. Junta de Retiro para Maestros, 127 DPR 621 (1990).

Additionally, the actual structure of the entity may be considered; the capacity of the agency to sue and be sued without limitation; the power to obtain its own funding in the general securities market based on its fiscal situation and without pledging the credit of the Commonwealth; the power to acquire and administer properties without the intervention of the State; the capacity to enter into agreements or contracts; and the capacity to accept donations. See Pagán et al. v. ELA et al., 131 DPR 795 (1992); J.R.T. v. Junta de Retiro para Maestros, above; Morales González v. J.R.T., 121 DPR 249 (1988); A.A.A. v. Unión de Empleados A.A.A., 105 DPR 437 (1976); Canchani v. C.R.U.V., 105 DPR 352 (1976).

As a general rule, and as a logical result of its legal personhood as distinct and separate from the State, *950 public corporations have been endowed with the power to sue and be sued in matters related to their public function, subject to the limits imposed in their enabling acts. *Said power ordinarily excludes the scope of the applicability of Law No. 104, above, regarding claims and lawsuits against the Commonwealth. Therefore, unless otherwise provided, there are no limits to their financial liability regarding the tortious actions of their officials, agents, or employees in the performance of their charge or employment.*

It is well known that "government entities" are *exempt* from seizure proceedings. This is so because, *as a matter of public policy*, "government activities cannot be subject to the inconvenience of these proceedings that interfere with the discharge of public functions to the detriment of the common good'D'. Stump Corp. v. Tribunal Superior, 99 DPR 179, 181 (1970).

The above notwithstanding, as it pertains to public corporations and in accordance with the limitations that exist in their respective enabling acts, these, by their very nature, can be the object of seizure proceedings with respect to their funds and properties, where the legislature has conferred them with sufficient operational powers as to consider them as subject to "legal proceedings as any private enterprise would be in similar circumstances, so long as such



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

proceedings do not interfere with the performance of its executive functions". Arraiza v. Reyes; León, Interventor, 70 DPR 614, 618 (1949).

### IV

In the particular case of the A.A.A. this entity was created as a public corporation and autonomous government instrumentality of the Commonwealth of Puerto Rico, and the exercise of the powers conferred to it by its *951 enabling act is deemed an essential government function. 22 LPRA sec. 142.

As we indicated in A.A.A. v. Unión de Empleados A.A.A., above, pgs. 456457 [sic]:

> The Authority "is a corporate body ... a public corporation and autonomous government instrumentality of the Commonwealth of Puerto Rico ..." 22 LPRA sec. 142. It *possesses a structure that is similar to a private corporation*, with its Governing Board and executive personnel responsible to the Board. 22 LPRA sec. 143. It enjoys perpetual succession. It can sue and be sued, though with certain restrictions, but that are not as far-reaching as those protecting the State. It can enter into agreements freely; acquire and dispose of real estate property; "have absolute ownership over its properties and activities"; "take out loans and issue revenue bonds for any corporate purpose..." The bonds and other certificates of debt issued by the Authority do not pledge the credit or the power to levy taxes of the Commonwealth. 22 LPRA sec. 144. The Authority charges for the services it renders, and, since it involves revenue bonds, it must substantially charge what these are worth in order to allow, as is the case with similar private financing, the adequate amortization of the debt. 22 LPRA secs. 144(i) and 152. The Authority *may unquestionably undertake activities that have the objective of obtaining "pecuniary benefit"*, within the meaning of this phrase according to our decision in Junta Rel. Trabajo v. Junta del Muelle, supra. *The Aqueduct and Sewer Authority undoubtedly has the capacities of a private business or enterprise and in fact functions as such.* (Emphasis added.)

It is worth noting that, among the powers and faculties conferred to the A.A.A., is the power to have perpetual succession as a corporation and the power to sue and be sued as such a corporation. 22 LPRA secs. 144(a) and 144(c). The above notwithstanding, the Legislature limited the liability of the aforementioned public corporation in providing that it may not be sued for damages and prejudicial consequences caused by the impurity, irregularity, or insufficiency, whether actual or alleged, of the water it provides. 22 LPRA 144(c).

In what is relevant hereto, it is *appropriate to emphasize* that the A.A.A.'s enabling act provides that the court-ordered *952 sale of its "properties" *is not* permitted. *Id.* This fact, however, *does not* mean that that the A.A.A.'s funds, operational or not, are also exempted from seizure proceedings and proceedings for the enforcement of judgment. To conclude as much would mean, the way we see it, granting the A.A.A., via fiat of the court, a sort of immunity legislators never contemplated.

*In conclusion*, the A.A.A., as an autonomous public corporation whose corporate structure confers the powers and faculties necessary to operate as a private business or enterprise, is, *as a general rule*, subject to seizure proceedings for the enforcement of judgments; this, with the aforementioned limitations provided in its enabling act. We have ruled as much as a matter of fact. In Arraiza v. Reyes; León, Interventor, above, pg. 618, with regard to the powers and faculties granted to the A.A.A., we indicated that the legislature clearly stated its intent that said entity "be as subject to legal proceedings as any private enterprise would be in similar circumstances, so long as it does not interfere with the performance of its executive functions".

### V

We are of the mind that, *given the specific and particular facts of the case before us*, it is evident that to allow the seizure of the A.A.A.'s funds as a means of enforcing a judgment for an amount of money so *extraordinarily high* would precisely have the effect of interfering "with the performance of its executive functions"; which would have the disastrous consequence of seriously affecting and harming the Puerto Rican citizenry.

Now then, the fact that this is so in the present case, *should not* be the basis for the Court to, out of hand, establish an extremely broad general rule, which *953 implies that all creditors by judgment of the A.A.A., regardless of the small size their court-ordered credit, would have to wait for the A.A.A. to include a quantity "in the next functional budget" to satisfy said credit. This is not only unnecessary, but also completely illogical and absurd. The A.A.A., no matter the fiscal crisis it is currently facing, should certainly be able to pay *non*-substantial amounts to its creditors by judgment.

In this way, then, we are of the mind that it is quite logical and even common sense that, with regard to this type of situation, this Court establish a rule to the effect that courts of first instance, when faced with a

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

request for seizure for the enforcement of a judgment, must decide—case by case—if the aforementioned request interferes or not in an unreasonable way with the performance of the A.A.A.'s executive functions; depending on the determination, the request for seizure for the enforcement of judgment will naturally be granted or denied.[5] Said rule, should *likewise* be applied in cases where *any other* public corporation similar to the A.A.A. is involved and whose enabling act so permits.

In sum, and considering what we have set forth above, we are of the mind that, instead of establishing the unnecessarily broad rule established by the majority here today, it would be more logical and make more sense to adopt, as an adjudicative methodology in cases of this nature and in relation to the pubic corporations existing in our Country, a procedure of "case by case" analysis, for which factors such as the following could be taken into account: the amount involved, the fiscal condition of the public corporation in question at the time the seizure is requested, as well as the extraordinary *954 consequences that the seizure of the funds may cause and whether it interferes unreasonably with the performance of the executive functions of the concerned public corporation.

This rule—distinct from the one formulated by the Court today—establishes a "balance of interests" among those of the average ordinary citizen that obtains a judgment against the A.A.A. and the interests of this public corporation and, naturally, those of the general citizenry.

–O–

Concurring and dissident opinion issued by Associate Justice Mr. Hernández Denton.

At the request of Librotex, Inc. and Librería y Editorial Lea, Inc., we review the resolution issued by the illustrious Superior Court that rendered invalid an order for the seizure of property against the Puerto Rico Aqueduct and Sewer Authority (hereinafter the Authority), as it believed that the seizure in question interfered with the functions of said public corporation. We concur with the majority opinion and the concurring opinion of Associate Justice Mr. Rebollo López insomuch as they determine that the Authority is subject to legal seizure proceedings so long as it does not interfere with the performance of its functions. Nevertheless, as we believe that specific evidence to the effect that the requested seizure, or part of it, would interfere with the executive functions of the Authority was not brought before the lower court and that the case should be remanded the court *a quo* so that it may hear and evaluate the evidence required to make this determination, we dissent. *955

I

Rule 56.1 of Civil Procedure provides that "in every action, before or after entering judgment, and upon motion of claimant, the court may issue any provisional order it deems necessary to secure satisfaction of the judgment." 32 LPRA Ap. III. As one of said provisional measures, this rules allows for the issuance of an order for the seizure of property and the seizure of funds in the possession of third parties. Said order may be issued without posting bond where "a remedy is sought after judgment has been entered". Rule 56.3 of Civil Procedure 32 LPRA Ap. III.

The amount of said seizure must be limited to the amount claimed in the lawsuit or the amount awarded by judgment. That is, only the seizure of the property of the debtor that is sufficient to satisfy the full amount awarded through judgment or for the full amount claimed is permitted. Carlo v. Corte, 58 DPR 889, 894895 [sic] (1941).

Nevertheless, where it has to do with a public corporation, we have determined that, in ordering a seizure, courts of first instance are limited by the negative effect that the requested seizure may have on the capacity of the public corporation to carry out its executive functions. To that effect, in Arraiza v. Reyes; León, Interventor, 70 DPR 614, 618 (1949), we specifically determined that the Authority is "as subject to legal proceedings as any private enterprise would be in similar circumstances, so long as there is no interference with the performance of its executive functions". This rule applies to all public corporations in our jurisdiction and should be applied taking into account the limitations that the enabling act of the relevant public corporation may impose. See, for example, 22 LPRA sec. 144(c), which provides that the Authority may not be *956 sued for the damages caused by irregularities in the water it provides.

The rule described above is justified by the nature of public corporations and that of the services that they provide the citizenry. Although these are not government entities exempt from seizure proceedings—Stump Corp. v. Tribunal Superior, 99 DPR 179 (1970)—, public corporations respond to purposes of public utilities, and the funds with which they operate are public funds. Commoloco of Caguas, Inc. v. Benítez Díaz, 126 DPR 478 (1990). Consequentially, a seizure ordered against these corporations must not interfere with the discharge of their functions, in

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

detriment to the welfare of the citizenry.

In light of said doctrine, once the seizure has been initiated by the creditor, the public corporation must then show, by a preponderance of the evidence, that should the enforcement of the requested seizure be permitted, it would interfere with its capacity to carry out its executive functions.

The function of the Superior Court—in such a complicated dispute—is to determine what is the maximum amount for which the seizure may be permitted, without it being detrimental to the capacity of said instrumentality to comply with its executive functions.

II

When applying the above-described rules to the case before us, we believe that the Authority did not submit evidence before the Superior Court that would show that, should the granted seizure be granted [sic], it would interfere with the capacity of the Authority to carry out its executive functions. All that can be found in the case file is simply a series of allegations by the Authority to the effect that, should the requested seizure be granted, it would not be able to make its payroll or comply with prior commitments with its bondholders. Furthermore, in order to sustain *957 its allegation, the Authority relied on the September 13, 1993 Executive Order of Governor Pedro Roselló wherein he declared the Authority in a state of emergency and ordered its director to carry out the necessary measures to end it.

Contrary to the majority opinion, this fact does not appear evident to us. Nor does the fact that the Governor of the Commonwealth of Puerto Rico, Hon. Pedro Roselló, declared the Authority in a state of emergency by means of an Executive Order appear to be sufficient evidence to that effect. The fact that an entity is in the middle of a financial crisis does not necessarily mean that the disbursement of a specific amount of money would preclude it from complying with its executive functions. Furthermore, said Court has discretion to order the seizure for a sum that is less than the amount requested, if it were the case that said seizure interfered with the executive functions of said entity, and to provide for any other equitable remedy that would allow the creditor to satisfy the remainder of the amount claimed or enforce the remainder of the judgment entered.

Without the benefit of submitting evidence with respect to the interference of the seizure with the Authority's executive functions, we cannot agree with the opinions issued in this case, insomuch as they attempt to safeguard the rights of Librotex, Inc. by obligating the Authority's directors to include a quantity in said entity's *958 next annual budget in order to satisfy the full amount of the judgment rendered in this case.

The effect of said decision is that Librotex, Inc. would have to wait until the Authority's next budget is determined in order to be able to obtain the enforcement of the judgment in its favor. Not only that, but the Authority would also be obligated to pay close to an additional one hundred and sixty thousand dollars ($160,000) in legal interest, in detriment to the critical financial situation of said entity.

We believe that it is important that the case be remanded to the illustrious Superior Court so that, with the benefit of the rules we have adopted here today, it has the opportunity to hear the appropriate evidence and determine whether the Authority is in a position to satisfy part of the judgment without harming its capacity to perform its executive functions, or if, on the contrary, any disbursement would in fact interfere with said functions.

For the reasons set forth above, we would vacate the resolution of the Superior Court that rendered invalid the order for seizure issued against the Authority, and we would remand the case so that said forum could hold an evidentiary hearing to determine if in fact the requested seizure, or a part thereof, would interfere with the Authority's capacity to carry out its executive functions.

Footnotes

---

[1] The referenced doctrine was extended to our legal framework by fiat of the. See Porto Rico v. Rosaly, 227 US 270 (1913). For a more detailed exposition of the historical background and development of said doctrine in Puerto Rico, see Defendini Collazo et al. v. ELA, Cotto, 134 DPR 28 (1993).

[2] By 1916, through the enactment of Law No. 76 of April 13, 32 LPRA sec. 3061 n., the Commonwealth had consented to be sued in actions for damages and prejudicial consequences based on contracts and actions for the recovery of personal or real property or of rights thereto. The aforementioned Law No. 76 did not permit lawsuits against the Commonwealth for extracontractual damages and prejudicial consequences.

[3] Unlike public corporations, as a general rule, an executive department does not have legal personhood that is separate and distinct from the Commonwealth. Pagán et al. v. ELA et al., 131 DPR 795 (1992); Rivera Maldonado v. ELA, 119 DPR 74 (1987).

[4] In the referenced decision, we extended the protection against the use of the procedural mechanism of the seizure of wages earned by the employees public corporations considering that the use of said mechanism would have a detrimental



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

and noxious effect on public corporations and would cause unwarranted and undue interference with the performance of the agency's duties and an impermissible diversion of public funds.

5 Having denied the seizure as a means of enforcing judgment, the lower court must proceed to order the A.A.A. to include such an amount of money in the referred agency's next budget.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.