# Exhibit E

Commoloco of Caguas, Inc. v. Benitez Diaz, 1990 JTS 80 (1990)
126 D.P.R. 478

CERTIFIED TRANSLATION

1990 JTS 80, 126 D.P.R. 478, 1990 WL 710118 (P.R.)

COMMOLOCO OF CAGUAS, INC., plaintiff and petitioner
v.
RAMIRO BENITEZ DIAZ, defendant; PUERTO RICO HIGHWAY AUTHORITY, interveners and respondents.

In the Supreme Court of Puerto Rico.
Numbers: RE-86-470, CE-87-9, CE-86-759, CE-86-583, CE-86-694, CE-86-722, CE-86-448

REQUEST FOR CERTIORARI (CE-87-9) to review a DECISION issued by Rafael Riefkohl Marcano, J. (Ponce), affirming a prior decision ordering garnishment of wages of an employee of a public corporation. The writ is issued and the decision appealed in Case No. CS-86-2084 is revoked.

Carmelo Nieves Figueroa, José Julián Alvarez González and Cándido F. Monteserrín, attorneys for the Aqueduct and Sewer Authority, petitioner; José E. Vilá Barnes, attorney for Commoloco de Sabana Grande, Inc., respondent; Norma Cotti Cruz, Deputy General Counsel, Blanca Díaz Segarra and Anabelle Rodríguez, Deputy General Counsels, in Report; Patrick D. O'Neill, Lucé Vela Gutiérrez and Lawrence Odell, of Martínez, Odell Calabria & Sierra, and Carlos F. López, attorneys for *483 the Puerto Rican Association of Consumer Finances, amicus curiae.

REQUEST FOR CERTIORARI (CE-86-759) to review a DECISION issued by Delia Lugo Bougal, J. (Ponce), affirming a prior decision ordering garnishment of wages of an employee of a public corporation. The writ is issued and the decision appealed in Case No. CS-86-1909 is revoked.

Richard V. Pereira and José Julián Alvarez González, attorneys for the Aqueduct and Sewer Authority, petitioner; Oreste Ramos, attorney for Metro Finance Co., respondent; Norma Cotti Cruz, Deputy General Counsel, Blanca Díaz Segarra and Anabelle Rodríguez, Deputy General Counsels, in Report; Patrick D. O'Neill, Lucé Vela Gutiérrez and Lawrence Odell, of Martínez, Odell Calabria & Sierra, and Carlos F. López, attorneys for the Puerto Rican Association of Consumer Finances, amicus curiae.

REQUEST FOR CERTIORARI (CE-86-583) to review a DECISION issued by Enrique Rivera Santana, J. (Bayamón), denying a request for certiorari to review a decision ordering garnishment of wages of an employee of a public corporation. The writ is issued and the decision appealed in Case No. CS-86-3080 is revoked.

Gilberto Rodríguez Zayas, Carmelo Nieves Figueroa and José Julián Alvarez González, attorneys for the Aqueduct and Sewer Authority, petitioner; Oreste Ramos, attorney for Metro Finance Co., respondent; Norma Cotti Cruz, Deputy General Counsel, Blanca Díaz Segarra and Anabelle Rodríguez, Deputy General Counsels, in Report; Patrick D. O'Neill, Lucé Vela Gutiérrez and Lawrence Odell, of Martínez, Odell Calabria & Sierra, and Carlos F. López, attorneys for the Puerto Rican Association of Consumer Finances, amicus curiae.

JUDGMENT (RE-86-470) issued by Angel G. Hermida, J. (San Juan), revoking a prior judgment ordering garnishment of wages of an employee of a public corporation. The judgment issued in Case No. PE-86-805 is affirmed.

Luis A. Arrufat Pimentel, attorney for the Cataño Credit Union, appellant; Moraima Arbona, Cándido F. Monteserrín and José Julián Alvarez González, attorneys for the *484 Aqueduct and Sewer Authority, respondent; Norma Cotti Cruz, Deputy General Counsel, Blanca Díaz Segarra and Anabelle Rodríguez, Deputy General Counsels, in Report; Patrick D. O'Neill, Lucé Vela Gutiérrez and Lawrence Odell, of Martínez, Odell Calabria & Sierra, and Carlos F. López, attorneys for the Puerto Rican Association of Consumer Finances, amicus curiae.

REQUEST FOR CERTIORARI (CE-86-448) to review a JUDGMENT issued by Angel G. Hermida, J. (San Juan), revoking a prior judgment ordering garnishment of wages of an employee of a public corporation. The writ is issued and the judgment appealed in Case No. PE-86-562 is affirmed.

José M. Casanova Edelmann, attorney for Island Finance Corporation of Santurce, petitioner; Gilberto Rodríguez Zayas, Ernesto Lebrón González, Moraima Arbona and Cándido F. Monteserrín, attorneys for the Aqueduct and



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Commoloco of Caguas, Inc. v. Benitez Diaz, 1990 JTS 80 (1990)
126 D.P.R. 478

CERTIFIED TRANSLATION

Sewer Authority, respondent; Norma Cotti Cruz, Deputy General Counsel, Blanca Díaz Segarra and Anabelle Rodríguez, Deputy General Counsels, in Report; Patrick D. O'Neill, Lucé Vela Gutiérrez and Lawrence Odell, of Martínez, Odell Calabria & Sierra, and Carlos F. López, attorneys for the Puerto Rican Association of Consumer Finances, amicus curiae.

REQUEST FOR CERTIORARI (CE-86-722) to review a DECISION issued by Carlos de Jesús Rivera Marrero, J. (Humacao), revoking a prior decision ordering garnishment of wages of an employee of a public corporation. The writ is issued and the decision appealed in Case No. CS-86-732 is affirmed.

Jimmy Soto Ledesma, attorney for Best Finance Corporation, petitioner; Carmelo Nieves Figueroa, José Julián Alvarez González and Cándido F. Monteserrín, attorneys for the Aqueduct and Sewer Authority, respondent; Norma Cotti Cruz, Deputy General Counsel, Blanca Díaz Segarra and Anabelle Rodríguez, Deputy General Counsels, in Report; Patrick D. O'Neill, Lucé Vela Gutiérrez and Lawrence Odell, of Martínez, Odell Calabria & Sierra, and Carlos F. López, attorneys for the Puerto Rican Association of Consumer Finances, amicus curiae.

REQUEST FOR CERTIORARI (CE-86-694) to review a DECISION issued by Enrique A. Jordán Musa, J. (Caguas), revoking a prior decision ordering garnishment of wages of an employee of a public corporation. The writ is issued and the decision appealed in Case No. CS-86-1071 is revoked.

José E. Vilá Barnes, attorney for Commoloco of Caguas, Inc., petitioner; Héctor M. Torres Cartagena, attorney for the Puerto Rico Highway Authority, respondent; Norma Cotti Cruz, Deputy General Counsel, Blanca Díaz Segarra and Anabelle Rodríguez, Deputy General Counsels, in Report; Patrick D. O'Neill, Lucé Vela Gutiérrez and Lawrence Odell, of Martínez, Odell Calabria & Sierra, and Carlos F. López, attorneys for the Puerto Rican Association of Consumer Finances, amicus curiae.

ASSOCIATE JUDGE NAVEIRA DE RODON issued the opinion of the Court.

[1] From the beginning of the century this Court has been asked, under different circumstances, whether or not the wages of public employees are subject to garnishment. We have consistently denied using this procedural mechanism for this purpose. The policy has 'been to exempt the wages of Government employees and officials, not to favor debtors, but to guarantee the efficient and continuous service of the [G]overnment'. Blanco v. Carballeira, Judge, 41 D.P.R. 533 (1930).

[2-3] 'The rule in this jurisdiction, as well as in the United States, is that the wages of public employees are exempt from garnishment. This rule is based on reasons of public order, since allowing said garnishment would seriously harm the government that would receive the services of said employees, because it is assumed that employees who are deprived of their wages would not render their services with the same efficiency that they would render them when they have the incentive of receiving compensation for their work in a timely manner.' Padrón Rivera v. Cordovés, Judge, 59 D.P.R. 255, 258 (1941). In addition, 'government activities should not be subject to the inconveniences of these procedures which interfere with the performance of public functions to the detriment of the common good. . .'. Stump Corp. v. Tribunal Superior, *486 99 D.P.R. 179, 181 (1970). 'This has the effect of turning the State into a collection agency for the plaintiff against its will.' Torres Santa v. Benítez Roldán, 115 D.P.R. 85, 87 (1984).

I

The case at bar poses the question of whether or not the aforementioned principles are applicable in the case of garnishment of wages of employees of a public corporation. Below are the facts in relation to which the question is made.

Within a relatively short period, seven (7) motions were filed in this Court, which basically included identical questions of fact and law. Therefore, we consolidated them. In each of these cases the plaintiff requesting collection of money was a small personal loan company (hereinafter financing entity) and the defendant was an employee of a public corporation. Specifically, six (6) of them work in the Aqueduct and Sewer Authority (hereinafter A.A.A., acronym in Spanish) and one (1) of them works in the Highway Authority.

In each of the cases, the trial court issued judgments in favor of the plaintiff. As a result, and for these purposes, the prevailing parties in these cases requested and obtained, from the corresponding courts, orders for garnishment of wages issued to the public corporations in which the defendants worked. Based on the foregoing, the

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works. 2

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Commoloco of Caguas, Inc. v. Benitez Diaz, 1990 JTS 80 (1990)
126 D.P.R. 478

CERTIFIED TRANSLATION

above-referenced public corporations obtained authorization to intervene in the proceedings for the purpose of submitting arguments requesting that the garnishment orders be revoked.

The main argument of the aforementioned corporations was basically that their employees must be considered public employees and that, as such, their wages cannot be garnished in accordance with the doctrine stated above by this Court.

The trial courts accepted the argument in four (4) of the seven (7) consolidated cases and, in the other three (3) cases, they decided that the *487 principles supporting the prohibition against garnishment of wages of public employees do not apply to public corporations. Since there are conflicting opinions in trial courts, we have decided to review this matter and issue the requests for certiorari.

II

Until the middle of the year 1919, Art. 249(7) of the Puerto Rico Code of Civil Procedure contained an express provision which prohibited garnishment of wages of public employees or officials. Law No. 32 enacted on June 3, 1919 (32 L.P.R.A. sec. 1130) eliminated the distinction between public employees and private industry employees. It provided a protection limited to three fourths of the wages of employees, as long as they were able to prove that said amount was necessary to support their families. There is no discussion in the legislative background regarding the reason to eliminate the specific provision prohibiting the garnishment of wages of public employees.

In the absence of a legal provision regarding the protection against garnishment of wages of a public employee, the rule that we are now considering was created by way of case law in Blanco v. Carballeira, Judge, supra. In said case, Associate Judge Wolf decided that the wages of public employees could not be garnished.[1] His main argument was that, based on the elimination of the specific provision prohibiting garnishment of wages of public employees, 'one could not infer the intention to make said wages subject to garnishment, unless they were generally subject to garnishment by virtue of a specific provision of the law'. Id., page 534. After all, there was no specific legal provision imposing on an official the duty to withhold the garnished wages.

[4] Following said decision, the doctrine has only added arguments in favor of maintaining the prohibition against *488 garnishment of wages of public employees. See: Padrón Rivera v. Cordovés, Judge, supra; E.L.A. v. Tribunal Superior, supra; Stump Corp. v. Tribunal Superior, supra; Torres Santa v. Benítez Roldán, supra. However, none of these cases dealt with garnishment of wages of employees of a public corporation. The ones that are the most similar to the issue in the case at bar are Rodríguez v. Fontes y Am. R.R. Co., Int., 51 D.P.R. 670, 672, 678 (1937), and Arraiza v. Reyes; León, Intervener, 70 D.P.R. 614 (1949). In the first one, American Railroad filed a motion to intervene in which it alleged that a garnishment of wages ordered by the trial court in relation to its employee 'interrupted the good operation of its office and affected the service that it rendered as a public service company'. Rodríguez v. Fontes y Am. R.R. Co., Int., supra, page 672. The trial court stated in its decision that '?[a] private corporation, in spite of exploiting a public service company, does not enjoy the same privileges that are inherent to official offices and bodies of the government, and the prerogatives of said bodies are in no way enjoyed by private entities''. Rodríguez v. Fontes y Am. R.R. Co., Int., supra, page 675. On that occasion, when we reversed the decision of the trial court, we indicated that American Railroad was not obligated to comply with the garnishment order, in relation to 'unearned wages as of the date to which it made reference'.[2] We did not state our position as to the fact that it involved a private corporation, not a public corporation.

*489 Furthermore, Arraiza v. Reyes; León, Intervener, supra, dealt with a request to garnish a credit which a judgment debtor had against A.A.A. By way of a motion to intervene, a third party requested the nullification of the garnishment, alleging that said credit could not be garnished because it stemmed from the construction of public work and the garnished amount was in the possession of A.A.A., a public corporation.[3] The petition was dismissed.

This court decided, in accordance with the specific provisions of the enabling act of A.A.A., Law No. 40 enacted on May 1, 1945 (22 L.P.R.A. sec. 144), and the decision in F.H.A. v. Burr, 309 U.S. 242 (1940), that the operational powers granted to A.A.A. by the Legislature were sufficient to consider it 'as subject to court proceedings as any private company in analogous circumstances, as long as it did not interfere with the performance of its executive duties'. Arraiza v. Reyes; León, Intervener, supra, page 618. This case is clearly distinguishable from the case at bat. First, in Arraiza v. Reyes; León, Intervener, supra, the credit subject to

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works. 3

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Commoloco of Caguas, Inc. v. Benitez Diaz, 1990 JTS 80 (1990)

126 D.P.R. 478

CERTIFIED TRANSLATION

garnishment did not belong to a regular employee of the corporation. It belonged to an independent contractor. Second, even given that fact, the garnishment authorization was subject to not interfering with the executive functions of the Corporation.

The case at bar does not deal with an isolated incident related to an independent contractor whose credit is still in the possession of a public corporation. On the contrary, the requested garnishments would potentially include all of the wages of regular employees with whom any of the public corporations operate.

Upon clarifying the foregoing, in view of the fact that the prohibition against garnishment of wages has been applied in cases dealing with public employees of the central government system, we must decide whether the doctrine must be applied to employees of public corporations.

### *490 III

[5] Public corporations, and the way that they currently operate, resulted as a response to a desire to speed up and promote efficacy in public work given the complexity of the functions assumed by governments following World War I. Torres Ponce v. Jiménez, 113 D.P.R. 58 (1982).[4]

[6-7] According to their operational configuration, public corporations are defined as 'an institution offering social or financial services on behalf of the government, but as an independent legal entity; it conducts its operations with great autonomy, even though it is liable to the public, through the government and parliament, and is subject to government guidelines; it has, on the other hand, its own independent and separate funds, and the legal and commercial characteristics of a commercial enterprise. These characteristics place a public corporation somewhere between a pure public agency and a commercial private company'. (Our translation.) W. Friedman, The Public Corporation: A Comparative Symposium, Toronto, Carswell Co., 1954, page 541.[5]

[8] What prompted the strategic adoption of this independent entity is the reality that 'a corporation is intrinsically more able to succeed in certain fields than an ordinary department of the administration'. A.R. Brewer Carias, Las empresas públicas en el derecho comparado, Caracas, U. Central de Venezuela, Vol. XXXVII, 1967, page 86.

*491 [9] However, in spite of the autonomy possessed by public corporations, they continue to be government agencies created to deal with public matters. See: York County Fair Assn. v. South Carolina Tax Commn., 154 S.E.2d 361 (1967); Sharon Realty Company v. Westlake, 188 N.E.2d 318 (1961).[6] Therefore, to the extent that they carry out this type of duty, both the Executive and the Legislature exercise, in accordance with law and custom, different degrees of control over their functions. Friedman, op. cit., pp. 557-558.

[10] Public corporations receive, under their enabling statute, a certain degree of financial autonomy as regards their operational budget. The foregoing is done for the purpose of promoting that, in addition to the budgetary assignments that they receive from the State, they make efforts to obtain all or part of their capital, whether through issuance of obligations or loans or through income received for the goods and services that they offer. However, it must be clarified that this financial autonomy is regulated to a lesser or greater degree by the State according to the public policy or approach adopted for these purposes by the country in which the public corporation operates.[7]

[11] In Puerto Rico, government control over public corporations is carried out under the enabling laws of the corresponding public corporation and laws which directly or indirectly affect it.

*492 [12] In addition, Art. III, Sec. 22, of the Constitution of the Commonwealth of Puerto Rico, L.P.R.A., Volume 1, ed. 1982, page 347, provides that:

There shall be a Comptroller to be appointed by the Governor with the advice and consent of a majority of the total number of members of each House. The Comptroller shall comply with the requirements prescribed by law; perform his or her position for a term of ten years and until his or her successor is appointed and assumes the position. The Comptroller shall oversee the income, accounts and disbursements of the State, its agencies and instrumentalities, and the municipalities, in order to determine whether they comply with the law. He or she shall submit annual reports and all special reports required by the Legislative Assembly or the Governor. (Emphasis added.)

[13-15] Law No. 9 enacted on July 24, 1952, as amended, 2 L.P.R.A. sec. 72 et seq., was approved in order to put the above-cited constitutional provision into effect. It created the Office of the Comptroller. This statue created the mechanisms through which the Comptroller carries out his or her duties to oversee. He or she shall 'exercise

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

these duties both in relation to the accounts, funds, income, disbursements and properties of the Government and in relation to the ones in a trust'. 2 L.P.R.A. sec. 73. The Comptroller's duties to oversee include the operations of public corporations.

See, also, for example, in relation to government control, among others: Accounting Act of the Government of Puerto Rico, Law No. 230 enacted on July 23, 1974 (3 L.P.R.A. sec. 283 et seq.); Ombudsman Act, Law No. 134 enacted on June 30, 1977, amended by Law No. 6 enacted on March 16, 1987 (2 L.P.R.A. secs. 701-726).[8] *493 [16-17] Government intervention in the operations of a public corporation is mainly based on the fact that, in spite of the combination of public and private characteristics that we have pointed out, the funds with which the entity operates are considered public regardless of whether or not they become part of the State's budget. Based on the foregoing, we have stated that the funds with which employees of public corporations are paid stem from government sources and are public funds. Municipio de Mayagüez v. Rivera, 113 D.P.R. 467 (1982).

[18-19] The State chooses a public corporation as a tool to implement public policy in particular when it determines that through it it shall probably be able to carry out a program or service in the most efficient manner. It should be noted that many of said services are classified as essential services. This means that, even though public corporations enjoy a certain degree of operational autonomy, they are still imbued with a high government interest in ensuring that their operations are of the highest possible quality and efficiency and, consequently, that their operations are protected from any unnecessary interference.

[20-21] As to the question regarding whether or not the employees of said corporations are public employees, recently, in Pueblo v. Hernández Torres y Barreda, 125 D.P.R. 560 (1989), we stated, in relation to the employees of the Puerto Rico Telephone Co., a public-private corporation:

. . . [T]he fact that they are not part of the central personnel system does not affect their public employee status. The Puerto Rico Public Service Personnel Act[, 31 L.P.R.A. sec. 1301 et seq.,] specifically excludes employees of public corporations from the application of the law. However, this does not mean that they are private employees. On the contrary, what can be deduced from the language of the above-referenced provision is that, even though they are considered public employees, based on public policy reasons, a decision was made not to submit them to the detailed application of the law, but only to the merit principles.

*494 [22] Furthermore, this characteristic is no way affected by the fact that, under Art. II, Sec. 17, of the Constitution of the Commonwealth of Puerto Rico, L.P.R.A., Volume 1, they were given the right to collective bargaining.

[23] Even though in some countries they are not considered public employees, in Puerto Rico all legislation which directly or indirectly makes reference to the employees of public corporations has been consistent as to the fact that they are considered public employees. See, for example: the law that creates the Retirement System of Employees of the Government of Puerto Rico and its Instrumentalities, Law No. 447 enacted on May 15, 1951, as amended, 3 L.P.R.A. sections 761-788; Art. 7(16) of the Puerto Rico Penal Code, 33 L.P.R.A. sec. 3022(16); the Government Ethics Act of the Commonwealth of Puerto Rico, Law No. 12 enacted on July 24, 1985 (3 L.P.R.A. sec. 1801 et seq.).

The 1984 Financial Report to the Governor and the preliminary data of the 1986 Report show an alarming increase in the rate of growth of consumer debt. The data regarding this matter according to the last report published for the period 1986-1987 show that '[a]t the end of fiscal year 1987, the consumer debt amounted to $7,779.9 million, an amount which meant an increase of $1,534.8 million or 24.6 percent over the debt of $6,245.0 million for fiscal year 1986. This growth is higher than the one seen in fiscal year 1986, which amounted to $1,129.8 million, or 22.1 percent when said debt is compared to the one registered for fiscal year 1985'.[9] 1986-1987 Financial Report to the Governor, Puerto Rico Planning Board, Part VIII, page 18.

A logical consequence of this consumption behavior is that a proportional number of employees of public corporations shall be included in this universe of Puerto Rican debtors *495 whose wages would be subject to garnishment if using this procedural mechanism were allowed. If to this we add the fact that the employees of A.A.A. are already subject to a series of deductions,[10] including the ones related to loans obtained within their field of work which are usually obtained at interest rates that are lower than the regular market rates, we may deduce that this would turn them, on many occasions, into high-risk debtors for private companies known as

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Commoloco of Caguas, Inc. v. Benitez Diaz, 1990 JTS 80 (1990)
126 D.P.R. 478

CERTIFIED TRANSLATION

financing entities. These circumstances increase the probability that the garnishment of wages mechanism shall be used, resulting in a harmful and detrimental effect on the corporation.

[24-26] Based on all of the foregoing, we extend the protection against use of the garnishment mechanism --in the manner dealt with by our case law in relation to the wages of employees of the central government system-- to the wages earned by employees of public corporations. Deciding otherwise would add strange and foreign duties to the duties of the officials of public corporations, since they would have to carry out all of the procedures related to the deductions process. The expenses incurred would be paid for with public funds and would exclusively benefit the interest of a private company and the time invested by the officials would be deducted from public work. Undoubtedly, in addition to being contrary to the interests of the State, this would cause an unjustified and undue interference in the performance of the duties of the agency and an impermissible diversion of public funds. '[G]overnment activities should not be subject to the inconvenience of these procedures which interfere with the performance of public duties to the detriment of the public welfare.' Stump Corp. v. Tribunal *496 Superior, supra, page 181. This procedure also has the effect of decreasing the motivation and enthusiasm with which these employees should serve our people. Padrón Rivera v. Cordovés, Judge, supra.

[27] Private financing entities have the responsibility of taking measures to guarantee the suitability of their debtors, in order to minimize the possibility of a delinquency in the payment of loans.

Based on all of the foregoing, a judgment shall be issued revoking the judgments issued by the Superior Court, Court of Ponce, in CS-86-2084 and CS-86-1909 and by the Superior Court, Court of Bayamón, in CS-86-3080, and affirming the judgments issued by the Superior Court, Court of San Juan, in PE-86-805 and PE-86-562, by the Superior Court, Court of Humacao, in CS-86-732, and by the Superior Court, Court of Caguas, in CS-86-1071.
Chief Judge Pons Núñez states that even though he dissented from the majority in Pueblo v. Hernández Torres y Barreda, 125 D.P.R. 560 (1989), based on the grounds expressed in his dissenting opinion, which he reaffirms, he votes in agreement with the opinion of the Court in this case since it is the logical consequence of the decision of the Court majority in said case. Associate Judge Rebollo López did not intervene. Associate Judge Hernández Denton recused himself. *497

FOOTNOTES:

Footnotes

1   This matter was raised but was not decided in Torres v. Corte Municipal, 35 D.P.R. 378 (1926).

2   For the definition of 'unearned' wages, see Diego Agueros & Co. v. Heres, 50 D.P.R. 533 (1936). Specifically, as to the wages of public employees, they are not subject to garnishment even if they have been earned, as long as they have not been paid. We decided so in Torres Santa v. Benítez Roldán, 115 D.P.R. 85, 87 (1984): 'Whether one calls it a garnishment, a seizure, or any other name, the reality is that the issued order has the effect of compelling the State to deduct from each biweekly payment of the defendant an amount of money and pay it to a third party. This has the effect of turning the State into a collection agency for the plaintiff, against its will. It would be easy to imagine the adverse effect that this practice would have on the procedures of the Treasury Department for payment to State employees, if it became a common practice.' The prohibition against garnishment of wages of public employees applies to unearned wages and to earned wages, as long as the latter are in the possession of the State.

3   In a footnote the Court clarifies that it does not know the interest of the intervener, but assumes that the latter had one.

4   'It should be noted that the trend of progressively extending the duties of state entities, in order to satisfy common needs, is a universal trend.' A.R. Brewer Carias, Las empresas públicas en el derecho comparado, Caracas, U. Central de Venezuela, 1967, Vol. XXXVII, page 22.

5   Precisely, based on the factors stated in this definition, President Roosevelt referred to public corporations as entities with Government power, but with the flexibility of a private company. W. Friedman, The Public Corporation: A Comparative Symposium, Toronto, Carswell Co., 1954, page 541.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Commoloco of Caguas, Inc. v. Benitez Diaz, 1990 JTS 80 (1990)**

126 D.P.R. 478

CERTIFIED TRANSLATION

6   '[T]he very nature of the public enterprise, in all its major forms, implies some degree of governmental supervision, both on the administrative and on the financial plane.' W. Friedman, International Encyclopedia of Comparative Law, Vol. XIII, Cap. 13, page 53.

7   'The objective sought through establishing public corporations was not freedom from all governmental controls, but freedom from governmental restrictions unsuited to a business operation which stifle efficient operations.' P. Teeguarden and D. Thomas, A Public Corporation Model for Federal Forest Land Management, 1985, Vol. 25, No. 2, pp. 373 and 379.

8   Different from public corporations in England and other European countries, in the United States, under the Government Corporation Control Act of 1945, as amended, 31 U.S.C. sec. 9101 et seq., a mechanism is provided to audit and control the financial operations of its public corporations. See Brewer Carias, op. cit., Sec. 55, pp. 86-90 and 166.

9   This 1986-1987 Financial Report to the Governor reveals the excessive use of sources of credit by Puerto Rican consumers and, consequently, the imminent need for the corresponding bodies to create an action plan to educate about the effects of the excessive use of sources of credit.

10  These include Social Security, Income Taxes, Retirement, A.E.G., Savings, A.E.G. Loans, Life Insurance, Union Fees, Cancer Insurance, Retirement Loan, Union Loan, Acción Cooperativa A.A.A., Depósitos Cooperativa A.A.A., Préstamo Cooperativa A.A.A., Cabali Life Insurance, Medical Insurance, Employee Assoc. (trips), Housing Bank Loan, among others.

**End of Document**  © 2017 Thomson Reuters. No claim to original U.S. Government Works.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.