# **EXHIBIT A**

PLAN

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET AL.

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944

*Attorneys for the Financial Oversight and Management Board
as Representative for the Debtors in their Title III Cases*

Dated: February 28, 2020

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARTICLE I DEFINITIONS ....................................................................................................1

| | | |
|---|---|---|
| 1.1 | 2011 CW Bond Claim | 1 |
| 1.2 | 2011 CW Bond Claim (Insured) | 1 |
| 1.3 | 2011 CW Bond Claim (Taxable Election) | 1 |
| 1.4 | 2011 CW Bond Recovery | 1 |
| 1.5 | 2011 CW Bonds | 1 |
| 1.6 | 2011 CW Guarantee Bond Claim | 1 |
| 1.7 | 2011 CW Guarantee Bond Claim (Taxable Election) | 2 |
| 1.8 | 2011 CW Guarantee Bond Recovery | 2 |
| 1.9 | 2011 CW Guarantee Taxable Bond Distribution | 2 |
| 1.10 | 2011 CW Series D/E/PIB Bond Claim | 2 |
| 1.11 | 2011 CW Series D/E/PIB Bond Claim (Insured) | 2 |
| 1.12 | 2011 CW Series D/E/PIB Bond Claim (Taxable Election) | 2 |
| 1.13 | 2011 CW Series D/E/PIB Bond Recovery | 3 |
| 1.14 | 2011 CW Series D/E/PIB Bonds | 3 |
| 1.15 | 2011 CW Series D/E/PIB Taxable Bond Distribution | 3 |
| 1.16 | 2011 CW Taxable Bond Distribution | 3 |
| 1.17 | 2011 PBA Bond Claim | 3 |
| 1.18 | 2011 PBA Bond Recovery | 3 |
| 1.19 | 2011 PBA Bonds | 3 |
| 1.20 | 2012 CW Bond Claim | 3 |
| 1.21 | 2012 CW Bond Claim (Insured) | 4 |
| 1.22 | 2012 CW Bond Claim (Taxable Election) | 4 |
| 1.23 | 2012 CW Bond Recovery | 4 |
| 1.24 | 2012 CW Bonds | 4 |
| 1.25 | 2012 CW Guarantee Bond Claim | 4 |
| 1.26 | 2012 CW Guarantee Bond Claim (Taxable Election) | 4 |
| 1.27 | 2012 CW Guarantee Taxable Bond Distribution | 5 |
| 1.28 | 2012 CW Guarantee Bond Recovery | 5 |
| 1.29 | 2012 CW Taxable Bond Distribution | 5 |
| 1.30 | 2012 PBA Bond Claim | 5 |
| 1.31 | 2012 PBA Bond Recovery | 5 |
| 1.32 | 2012 PBA Bonds | 5 |
| 1.33 | 2014 CW Bond Claim | 5 |
| 1.34 | 2014 CW Bond Claim (Taxable Election) | 5 |
| 1.35 | 2014 CW Bond Recovery | 6 |
| 1.36 | 2014 CW Bonds | 6 |
| 1.37 | 2014 CW Guarantee Bond Claim | 6 |
| 1.38 | 2014 CW Guarantee Bond Claim (Taxable Election) | 6 |
| 1.39 | 2014 CW Guarantee Taxable Bond Distribution | 6 |
| 1.40 | 2014 CW Taxable Bond Distribution | 6 |
| 1.41 | AAFAF | 6 |

## Table of Contents
## (Cont'd)

**Page**

| | | |
|---|---|---|
| 1.42 | ACR Order | 7 |
| 1.43 | Act 106 | 7 |
| 1.44 | Act 106 Board | 7 |
| 1.45 | Active ERS Participant Claim | 7 |
| 1.46 | Active JRS Participant Claim | 7 |
| 1.47 | Active Participant | 7 |
| 1.48 | Active TRS Participant Claim | 7 |
| 1.49 | Administrative Claim Bar Date | 7 |
| 1.50 | Administrative Expense Claim | 7 |
| 1.51 | ADR Order | 7 |
| 1.52 | ADR Procedures | 7 |
| 1.53 | Affiliate | 8 |
| 1.54 | AFSCME | 8 |
| 1.55 | AFSCME CBAs | 8 |
| 1.56 | AFSCME Employee Claims | 8 |
| 1.57 | AFSCME Plan Support Agreement | 8 |
| 1.58 | AFSCME Term Sheet | 8 |
| 1.59 | Allowed | 8 |
| 1.60 | Allowed Claim | 8 |
| 1.61 | Ambac | 8 |
| 1.62 | Annex Agreement | 9 |
| 1.63 | Appointments Related Litigation | 9 |
| 1.64 | Assets | 9 |
| 1.65 | Assured | 9 |
| 1.66 | Avoidance Actions | 9 |
| 1.67 | Avoidance Actions CW Interests | 9 |
| 1.68 | Avoidance Actions ERS Interests | 9 |
| 1.69 | Avoidance Actions Trust | 9 |
| 1.70 | Avoidance Actions Trust Agreement | 10 |
| 1.71 | Avoidance Actions Trust Assets | 10 |
| 1.72 | Avoidance Actions Trust Beneficiaries | 10 |
| 1.73 | Avoidance Actions Trust Board | 10 |
| 1.74 | Avoidance Actions Trustee | 10 |
| 1.75 | Avoidance Actions Trust Interests | 10 |
| 1.76 | Ballot Date | 10 |
| 1.77 | Ballot/Election Form | 10 |
| 1.78 | Bankruptcy Code | 10 |
| 1.79 | Bankruptcy Rules | 10 |
| 1.80 | Bar Date | 10 |
| 1.81 | Bar Date Orders | 10 |
| 1.82 | Base Contribution | 11 |
| 1.83 | Benefit Reduction Date | 11 |
| 1.84 | Benefit Restoration | 11 |
| 1.85 | Bond Claim | 11 |

**Table of Contents**
**(Cont'd)**

Page

1.86    Bond Recovery Category ....................................................11
1.87    Business Day ....................................................11
1.88    Capital Improvements ....................................................11
1.89    Cash....................................................12
1.90    Causes of Action ....................................................12
1.91    Christmas Bonus ....................................................12
1.92    Claim ....................................................12
1.93    Class ....................................................12
1.94    COFINA ....................................................12
1.95    COFINA Confirmation Order ....................................................12
1.96    COFINA Junior Lien Bonds ....................................................12
1.97    COFINA Junior Lien Bonds Indenture ....................................................13
1.98    COFINA Junior Lien Bonds Legislation ....................................................13
1.99    COFINA Plan ....................................................13
1.100   COFINA Pledged Taxes ....................................................13
1.101   COFINA Senior Lien Bonds ....................................................13
1.102   COFINA Senior Lien Bonds Indenture ....................................................13
1.103   COFINA Senior Lien Bonds Legislation ....................................................13
1.104   Commonwealth ....................................................13
1.105   Commonwealth Constitution ....................................................14
1.106   Commonwealth Legislature ....................................................14
1.107   Commonwealth Petition Date ....................................................14
1.108   Commonwealth Title III Case ....................................................14
1.109   Comprehensive Cap ....................................................14
1.110   Confirmation Date ....................................................14
1.111   Confirmation Hearing ....................................................14
1.112   Confirmation Order ....................................................14
1.113   Constitutional Debt Group ....................................................14
1.114   Consummation Costs ....................................................14
1.115   Consummation Costs Parties ....................................................14
1.116   Convenience Claim ....................................................14
1.117   Conveyed Commonwealth Share ....................................................15
1.118   Creditor ....................................................15
1.119   Creditors' Committee....................................................15
1.120   CW Appropriations Claims ....................................................15
1.121   CW Bond Claims ....................................................15
1.122   CW Bond Claims (Insured) ....................................................15
1.123   CW Fiscal Plan ....................................................15
1.124   CW General Unsecured Claim ....................................................16
1.125   CW Guarantee Bond Claims ....................................................16
1.126   CW GUC Recovery ....................................................16
1.127   CW/Convention Center Claim ....................................................16
1.128   CW/HTA Claim ....................................................16
1.129   CW/MBA Claim ....................................................16

## Table of Contents
## (Cont'd)

**Page**

| | | |
|---|---|---|
| 1.130 | CW/PRIFA Rum Tax Claim | 17 |
| 1.131 | Debt | 17 |
| 1.132 | Debt Management Policy | 17 |
| 1.133 | Debtors | 17 |
| 1.134 | Debt Policy Period | 17 |
| 1.135 | Debt Policy Revenues | 17 |
| 1.136 | Debt Related Objections | 17 |
| 1.137 | Debt Responsibility Act | 18 |
| 1.138 | Debt Service Fund | 18 |
| 1.139 | Debt Service Reserve Fund | 18 |
| 1.140 | Debt Service Reserve Fund Requirement | 18 |
| 1.141 | Definitive Documents | 19 |
| 1.142 | Disallowed | 19 |
| 1.143 | Disbursing Agent | 19 |
| 1.144 | Disclosure Statement | 19 |
| 1.145 | Disclosure Statement Hearing | 19 |
| 1.146 | Disclosure Statement Order | 19 |
| 1.147 | Disputed Claim | 19 |
| 1.148 | Distribution Date | 20 |
| 1.149 | Distribution Record Date | 20 |
| 1.150 | Effective Date | 20 |
| 1.151 | Entity | 20 |
| 1.152 | ERS | 20 |
| 1.153 | ERS Bond Claim | 20 |
| 1.154 | ERS Bond Collateral Cash | 20 |
| 1.155 | ERS Bonds | 20 |
| 1.156 | ERS Bond Settlement | 20 |
| 1.157 | ERS Bond Settlement Distribution | 21 |
| 1.158 | ERS Cash | 21 |
| 1.159 | ERS General Unsecured Claim | 21 |
| 1.160 | ERS GUC Pool | 21 |
| 1.161 | ERS Litigation | 21 |
| 1.162 | ERS Participant Claim | 22 |
| 1.163 | ERS Petition Date | 22 |
| 1.164 | ERS Recovery Actions | 22 |
| 1.165 | ERS Reserve | 22 |
| 1.166 | ERS Resolution | 22 |
| 1.167 | ERS Takings Action | 22 |
| 1.168 | ERS Title III Case | 22 |
| 1.169 | Excess Cash Surplus | 23 |
| 1.170 | Executory Contract | 23 |
| 1.171 | FGIC | 23 |
| 1.172 | Final Order | 23 |
| 1.173 | First Dollars Funding | 23 |

**Table of Contents**
**(Cont'd)**

**Page**

1.174   Fiscal Plan .................................................................................................23
1.175   Fiscal Plan Surplus ....................................................................................23
1.176   Fixed Income .............................................................................................23
1.177   FY ...............................................................................................................23
1.178   GDB ...........................................................................................................23
1.179   General Fund .............................................................................................24
1.180   General Unsecured Claims ......................................................................24
1.181   GO Bond Claim .........................................................................................24
1.182   GO Bond Claim (Insured) ........................................................................24
1.183   GO Bonds...................................................................................................24
1.184   GO Group...................................................................................................24
1.185   Government Parties ..................................................................................24
1.186   Government Released Claims ..................................................................24
1.187   Government Releasees ..............................................................................24
1.188   Gracia Gracia Claim .................................................................................25
1.189   Gracia Gracia CW Action ........................................................................25
1.190   Gracia Gracia Federal Action ..................................................................25
1.191   Gracia Gracia Settlement .........................................................................25
1.192   GSA Helicopter Loan ...............................................................................25
1.193   HTA ............................................................................................................25
1.194   HTA Title III Case .....................................................................................25
1.195   Initial PSA Creditors ................................................................................25
1.196   Invalidity Actions .....................................................................................25
1.197   IRC .............................................................................................................25
1.198   IRS ..............................................................................................................26
1.199   Joinder Agreement ...................................................................................26
1.200   Joinder Creditors ......................................................................................26
1.201   Joinder Deadline .......................................................................................26
1.202   JRS ..............................................................................................................26
1.203   JRS Participant Claim ...............................................................................26
1.204   LCDC ..........................................................................................................26
1.205   Lien .............................................................................................................26
1.206   Lien Challenge Actions ............................................................................26
1.207   List of Creditors ........................................................................................26
1.208   Local Bankruptcy Rules ...........................................................................26
1.209   Maximum Annual Debt Service ..............................................................27
1.210   Maximum Taxable Bond Election Amount .............................................27
1.211   Medicine Bonus ........................................................................................27
1.212   Medicine Insurance Benefit .....................................................................27
1.213   Monolines ..................................................................................................27
1.214   Monthly Base Pension ..............................................................................27
1.215   Monthly Benefit Modification ..................................................................27
1.216   Monthly Christmas Bonus ........................................................................28
1.217   Monthly Medicine Bonus .........................................................................28

# Table of Contents
## (Cont'd)

**Page**

| | | |
|---|---|---|
| 1.218 | Monthly Summer Bonus | 28 |
| 1.219 | National | 28 |
| 1.220 | Net Tax-Supported Debt | 28 |
| 1.221 | New GO Bonds | 28 |
| 1.222 | New GO Bonds Indenture | 28 |
| 1.223 | New GO Bonds Legislation | 28 |
| 1.224 | New GO Bonds Trustee | 29 |
| 1.225 | New GO Refunding Bonds | 29 |
| 1.226 | Non-Settling ERS Bondholders | 29 |
| 1.227 | Ordinary Course Employee Claim | 29 |
| 1.228 | Outstanding | 29 |
| 1.229 | Oversight Board | 29 |
| 1.230 | Participant | 29 |
| 1.231 | PayGo | 29 |
| 1.232 | PBA | 29 |
| 1.233 | PBA Administrative Expense Claim | 29 |
| 1.234 | PBA Bond Claims | 30 |
| 1.235 | PBA Bond Distribution | 30 |
| 1.236 | PBA Bonds | 30 |
| 1.237 | PBA Cash | 30 |
| 1.238 | PBA/DRA Secured Claim | 30 |
| 1.239 | PBA/DRA Unsecured Claim | 30 |
| 1.240 | PBA General Unsecured Claim | 30 |
| 1.241 | PBA Litigation | 30 |
| 1.242 | PBA Petition Date | 30 |
| 1.243 | PBA Property | 30 |
| 1.244 | PBA Title III Case | 30 |
| 1.245 | Pension Reserve Deed of Trust | 30 |
| 1.246 | Pension Reserve Trust | 31 |
| 1.247 | Person | 31 |
| 1.248 | PFC | 31 |
| 1.249 | Plan | 31 |
| 1.250 | Plan Supplement | 31 |
| 1.251 | Plan Support Agreement | 31 |
| 1.252 | Ports | 31 |
| 1.253 | PRASA | 31 |
| 1.254 | PRCCDA | 31 |
| 1.255 | PREPA | 31 |
| 1.256 | PRIFA | 31 |
| 1.257 | PRIFA BANs | 31 |
| 1.258 | PRIFA BANs Litigation | 32 |
| 1.259 | Professional | 32 |
| 1.260 | Professional Claim | 32 |
| 1.261 | PROMESA | 32 |

## Table of Contents
### (Cont'd)

Page

1.262   Pro Rata Share ................................................................32
1.263   PSA Creditors ................................................................32
1.264   PSA Restriction Fee Creditors .............................................32
1.265   PSA Restriction Fee Period ................................................32
1.266   PSA Restriction Fees ......................................................32
1.267   PSA Threshold Attainment ..................................................33
1.268   Puerto Rico Investor ......................................................33
1.269   QTCB Group ................................................................33
1.270   Reduction Percentage ......................................................33
1.271   Related Persons ...........................................................33
1.272   Released Claims ...........................................................33
1.273   Released Parties ..........................................................34
1.274   Releasing Parties .........................................................34
1.275   Reorganized Commonwealth ..................................................34
1.276   Reorganized Debtors .......................................................34
1.277   Reorganized Debtors' By-Laws ..............................................34
1.278   Restriction Fee Percentage ................................................34
1.279   Retail 2011 CW Bond Claim .................................................35
1.280   Retail 2011 CW Series D/E/PIB Bond Claim ..................................35
1.281   Retail 2011 PBA Bond Claim ................................................35
1.282   Retail 2012 CW Bond Claim .................................................35
1.283   Retail 2012 PBA Bond Claim ................................................35
1.284   Retail 2014 CW Bond Claim .................................................35
1.285   Retail CW Bond Claims .....................................................35
1.286   Retail Investor ...........................................................35
1.287   Retail PBA Bond Claims ....................................................35
1.288   Retail Support Fee ........................................................35
1.289   Retail Support Fee Return .................................................35
1.290   Retail Vintage CW Bond Claim ..............................................36
1.291   Retail Vintage PBA Bond Claim .............................................36
1.292   Retiree ...................................................................36
1.293   Retiree Claim .............................................................36
1.294   Retiree Committee .........................................................36
1.295   Retiree Committee Plan Support Agreement ..................................36
1.296   Sales Tax .................................................................36
1.297   Section 510(b) Subordinated Claim .........................................36
1.298   Securities Act ............................................................36
1.299   Settling ERS Bond Claim ...................................................36
1.300   Solicitation Agent ........................................................36
1.301   SPU .......................................................................36
1.302   Summer Bonus ..............................................................37
1.303   Syncora ...................................................................37
1.304   System 2000 ...............................................................37
1.305   System 2000 Participant Claim .............................................37

**Table of Contents**
**(Cont'd)**

**Page**

1.306  Taxable Bond Distributions ...............................................................37
1.307  Taxable COFINA Junior Lien Bonds ..............................................37
1.308  Taxable Election CW Claims ...........................................................37
1.309  Taxable New GO Bonds ..................................................................37
1.310  Tax-Supported Debt ........................................................................37
1.311  Title III ............................................................................................38
1.312  Title III Cases .................................................................................38
1.313  Title III Court .................................................................................38
1.314  Total Monthly Benefit ....................................................................38
1.315  TRS ................................................................................................38
1.316  TRS Participant Claim ....................................................................38
1.317  Unclaimed Distribution ..................................................................38
1.318  Unexpired Lease .............................................................................39
1.319  Vintage CW Bond Claim ................................................................39
1.320  Vintage CW Bond Claim (Insured) .................................................39
1.321  Vintage CW Bond Claim (Taxable Election) ..................................39
1.322  Vintage CW Bond Recovery ...........................................................39
1.323  Vintage CW Bonds .........................................................................39
1.324  Vintage CW Guarantee Bond Recovery ..........................................40
1.325  Vintage CW Guarantee Bond Claim ................................................41
1.326  Vintage CW Guarantee Bond Claim (Insured) ................................41
1.327  Vintage CW Guarantee Bond Claim (Taxable Election)...................41
1.328  Vintage CW Guarantee Taxable Bond Distribution .........................41
1.329  Vintage PBA Bond Claim ...............................................................41
1.330  Vintage PBA Bond Claim (Insured) ................................................41
1.331  Vintage PBA Bond Recovery ..........................................................41
1.332  Vintage PBA Bonds ........................................................................42
1.333  Vintage Taxable Bond Distribution .................................................42
1.334  Other Definitions ............................................................................42
1.335  Rules of Interpretation ....................................................................42

ARTICLE II COMPROMISE AND SETTLEMENT OF
DISPUTES/RESTRUCTURING OF ENTITIES ......................................................43

2.1     Litigation Resolution .......................................................................43
2.2     Allowance of Bond Claims ..............................................................43
2.3     Releases, Injunctions and Exculpation .............................................44
2.4     Purchase and Sale of Certain ERS Assets.........................................44
2.5     Conveyance of the Conveyed Commonwealth Share..........................44

ARTICLE III PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE
CLAIMS ...................................................................................................................44

3.1     Administrative Expense Claims........................................................45
3.2     Professional Compensation and Reimbursement Claims ....................45
3.3     Consummation Costs .......................................................................45

**Table of Contents**
**(Cont'd)**

|  |  | **Page** |
|---|---|---|
| 3.4 | AFSCME Professional Fees | 45 |
| 3.5 | PSA Restriction Fee | 45 |
| 3.6 | Retail Support Fee | 46 |
| 3.7 | Non-Severability | 47 |

ARTICLE IV CLASSIFICATION OF CLAIMS ........................................................47

    4.1    Claims are classified as follows ...............................................47

ARTICLE V PROVISIONS FOR TREATMENT OF VINTAGE PBA BOND CLAIMS (CLASS 1) .............................................................................................49

    5.1    Treatment of Vintage PBA Bond Claims ...............................49

ARTICLE VI PROVISIONS FOR TREATMENT OF VINTAGE PBA BOND CLAIMS (INSURED) (CLASS 2) ...........................................................................50

    6.1    Treatment of Vintage PBA Bond Claims (Insured)...............50

ARTICLE VII PROVISIONS FOR TREATMENT OF RETAIL  VINTAGE PBA BOND CLAIMS (CLASS 3) ....................................................................................50

    7.1    Treatment of Retail Vintage PBA Bond Claims....................50

ARTICLE VIII PROVISIONS FOR TREATMENT OF 2011 PBA BOND CLAIMS (CLASS 4) .............................................................................................50

    8.1    Treatment of 2011 PBA Bond Claims ...................................50

ARTICLE IX PROVISIONS FOR TREATMENT OF RETAIL 2011  PBA BOND CLAIMS (CLASS 5) .....................................................................................50

    9.1    Treatment of Retail 2011 PBA Bond Claims .......................50

ARTICLE X PROVISIONS FOR TREATMENT OF 2012 PBA BOND CLAIMS (CLASS 6) .....................................................................................................51

    10.1    Treatment of 2012 PBA Bond Claims ...................................51

ARTICLE XI PROVISIONS FOR TREATMENT OF RETAIL 2012 PBA BOND CLAMS (CLASS 7).............................................................................................51

    11.1    Treatment of Retail 2012 PBA Bond Claims .......................51

ARTICLE XII PROVISIONS FOR TREATMENT OF  PBA/DRA SECURED CLAIMS (CLASS 8) .......................................................................................51

    12.1    Treatment of PBA/DRA Secured Claims .............................51

**Table of Contents**
**(Cont'd)**

**Page**

ARTICLE XIII PROVISIONS FOR TREATMENT OF PBA GENERAL UNSECURED
CLAIMS (CLASS 9) ..................................................................................................51

    13.1    Treatment of PBA General Unsecured Claims ...................................51

ARTICLE XIV PROVISIONS FOR TREATMENT OF PBA/DRA UNSECURED
CLAIMS (CLASS 10) ................................................................................................52

    14.1    Treatment of PBA/DRA Unsecured Claims ......................................52

ARTICLE XV PROVISIONS FOR TREATMENT OF VINTAGE CW BOND CLAIMS
(CLASS 11) ...............................................................................................................52

    15.1    Treatment of Vintage CW Bond Claims............................................52
    15.2    Right of Election to Vintage CW Bond Claims (Taxable Election).....................52

ARTICLE XVI PROVISIONS FOR TREATMENT OF RETAIL VINTAGE  CW
BOND CLAIMS (CLASS 12).....................................................................................53

    16.1    Treatment of Retail Vintage CW Bond Claims ..................................53
    16.2    Right of Election to Retail Vintage CW Bond Claims (Taxable Election) ..........53

ARTICLE XVII PROVISIONS FOR TREATMENT OF VINTAGE CW BOND
CLAIMS (INSURED) (CLASS 13) .............................................................................53

    17.1    Treatment of Vintage CW Bond Claims (Insured) .............................53

ARTICLE XVIII PROVISIONS FOR TREATMENT OF VINTAGE CW BOND
CLAIMS (TAXABLE ELECTION) (CLASS 14) ........................................................53

    18.1    Treatment of Vintage CW Bond Claims (Taxable Election)................................53

ARTICLE XIX PROVISIONS FOR TREATMENT OF VINTAGE CW  GUARANTEE
BOND CLAIMS (CLASS 15).....................................................................................54

    19.1    Treatment of Vintage CW Guarantee Bond Claims ............................54
    19.2    Right of Election to Vintage CW Guarantee Bond Claims (Taxable
           Election)..................................................................................................54

ARTICLE XX PROVISIONS FOR TREATMENT OF VINTAGE CW  GUARANTEE
BOND CLAIMS (INSURED) (CLASS 16)..................................................................54

    20.1    Treatment of Vintage CW Guarantee Bond Claims (Insured)............................54

ARTICLE XXI PROVISIONS FOR TREATMENT OF VINTAGE CW GUARANTEE
BOND CLAIMS (TAXABLE ELECTION) (CLASS 17)..............................................54

    21.1    Treatment of Vintage CW Guarantee Bond Claims (Taxable Election) ..............54

**Table of Contents**
**(Cont'd)**

**Page**

ARTICLE XXII PROVISIONS FOR TREATMENT OF 2011  CW BOND CLAIMS (CLASS 18) ..................................................................................................55

    22.1    Treatment of 2011 CW Bond Claims ..................................................55
    22.2    Right of Election to 2011 CW Bond Claims (Taxable Election)..........55

ARTICLE XXIII PROVISIONS FOR TREATMENT OF RETAIL 2011  CW BOND CLAIMS (CLASS 19) .......................................................................................55

    23.1    Treatment of Retail 2011 CW Bond Claims.......................................55
    23.2    Right of Election to Retail 2011 CW Bond Claims (Taxable Election)...............55

ARTICLE XXIV PROVISIONS FOR TREATMENT OF 2011 CW  BOND CLAIMS (INSURED) (CLASS 20) .........................................................................56

    24.1    Treatment of 2011 CW Bond Claims (Insured)...................................56

ARTICLE XXV PROVISIONS FOR TREATMENT OF 2011 CW BOND  CLAIMS (TAXABLE ELECTION) (CLASS 21)...............................................................56

    25.1    Treatment of 2011 CW Bond Claims (Taxable Election) ....................56

ARTICLE XXVI PROVISIONS FOR TREATMENT OF 2011 CW GUARANTEE BOND CLAIMS (CLASS 22) ........................................................................56

    26.1    Treatment of 2011 CW Guarantee Bond Claims.................................56
    26.2    Right of Election to 2011 CW Guarantee Bond Claims (Taxable Election) .........56

ARTICLE XXVII PROVISIONS FOR TREATMENT OF 2011 CW GUARANTEE BOND CLAIMS (TAXABLE ELECTION) (CLASS 23) ...........................................57

    27.1    Treatment of 2011 CW Guarantee Bond Claims (Taxable Election) ...................57

ARTICLE XXVIII PROVISIONS FOR TREATMENT OF 2011  CW SERIES D/E/PIB BOND CLAIMS (CLASS 24) ........................................................................57

    28.1    Treatment of 2011 CW Series D/E/PIB Bond Claims...........................57
    28.2    Right of Election to 2011 CW Series D/E/PIB Bond Claims (Taxable Election)................................................................................57

ARTICLE XXIX PROVISIONS FOR TREATMENT OF 2011 CW SERIES  D/E/PIB BOND CLAIMS  (INSURED) (CLASS 25) .....................................................57

    29.1    Treatment of 2011 CW Series D/E/PIB Bond Claims (Insured) ..........57

ARTICLE XXX PROVISIONS FOR TREATMENT OF RETAIL 2011  CW SERIES D/E/PIB BOND CLAIMS (CLASS 26) ................................................................58

    30.1    Treatment of Retail 2011 CW Series D/E/PIB Bond Claims ...............58

**Table of Contents**

**(Cont'd)**

30.2    Right of Election to Retail 2011 CW Series D/E/PIB Bond Claims
(Taxable Election) .................................................................................................58

ARTICLE XXXI PROVISIONS FOR TREATMENT OF 2011 CW SERIES D/E/PIB
BOND  CLAIMS (TAXABLE ELECTION) (CLASS 27) .................................................58

31.1    Treatment of 2011 CW Series D/E/PIB Bond Claims (Taxable Election) ...........58

ARTICLE XXXII PROVISIONS FOR TREATMENT OF 2012 CW BOND CLAIMS
(CLASS 28) .......................................................................................................................59

32.1    Treatment of 2012 CW Bond Claims ...................................................................59
32.2    Right of Election to 2012 CW Bond Claims (Taxable Election) ..........................59

ARTICLE XXXIII PROVISIONS FOR TREATMENT OF RETAIL 2012  CW BOND
CLAIMS (CLASS 29) .......................................................................................................59

33.1    Treatment of Retail 2012 CW Bond Claims .........................................................59
33.2    Right of Election to Retail 2012 CW Bond Claims (Taxable Election) ...............59

ARTICLE XXXIV PROVISIONS FOR TREATMENT OF 2012  CW BOND CLAIMS
(INSURED) (CLASS 30) ...................................................................................................60

34.1    Treatment of 2012 CW Bond Claims (Insured) ...................................................60

ARTICLE XXXV PROVISIONS FOR TREATMENT OF 2012 CW BOND  CLAIMS
(TAXABLE ELECTION) (CLASS 31) .............................................................................60

35.1    Provisions for Treatment of 2012 CW Bond Claims (Taxable Election) .............60

ARTICLE XXXVI PROVISIONS FOR TREATMENT OF 2012 CW GUARANTEE
BOND CLAIMS (CLASS 32) ...........................................................................................60

36.1    Treatment of 2012 CW Guarantee Bond Claims ..................................................60
36.2    Right of Election to 2012 CW Guarantee Bond Claims (Taxable Election) .........60

ARTICLE XXXVII PROVISIONS FOR TREATMENT OF 2012 CW GUARANTEE
BOND CLAIMS (TAXABLE ELECTION) (CLASS 33) .................................................61

37.1    Treatment of 2012 CW Guarantee Bond Claims (Taxable Election) ...................61

ARTICLE XXXVIII PROVISIONS FOR TREATMENT OF 2014  CW BOND
CLAIMS (CLASS 34) .......................................................................................................61

38.1    Treatment of 2014 CW Bond Claims ...................................................................61
38.2    Right of Election to 2014 CW Bond Claims (Taxable Election) ..........................61

ARTICLE XXXIX PROVISIONS FOR TREATMENT OF  RETAIL 2014  CW BOND
CLAIMS (CLASS 35) .......................................................................................................61

39.1    Treatment of Retail 2014 Bond Claims ................................................................61

**Table of Contents**
**(Cont'd)**

Page

39.2    Right of Election to Retail 2014 CW Bond Claims (Taxable Election) ...............62

ARTICLE XL PROVISIONS FOR TREATMENT OF 2014 CW BOND CLAIMS (TAXABLE ELECTION) (CLASS 36) ...............62

40.1    Provisions for Treatment of 2014 CW Bond Claims (Taxable Election) ..............62

ARTICLE XLI PROVISIONS FOR TREATMENT OF 2014 CW GUARANTEE BOND CLAIMS (CLASS 37) ...............62

41.1    Treatment of 2014 CW Guarantee Bond Claims ...............62
41.2    Right of Election to 2014 CW Guarantee Bond Claims (Taxable Election) .........62

ARTICLE XLII PROVISIONS FOR TREATMENT OF 2014 CW GUARANTEE BOND CLAIMS (TAXABLE ELECTION) (CLASS 38) ...............63

42.1    Treatment of 2014 CW Guarantee Bond Claims (Taxable Election) ...............63

ARTICLE XLIII PROVISIONS FOR TREATMENT OF ACTIVE AND RETIRED EMPLOYEE RETIREMENT BENEFIT CLAIMS (CLASS 39A THROUGH 39E) ...............63

43.1    Treatment of Retiree Claims (Class 39A) ...............63
43.2    Treatment of Active ERS Participant Claims (Class 39B) ...............63
43.3    Treatment of Active JRS Participant Claims (Class 39C) ...............63
43.4    Treatment of Active TRS Participant Claims (Class 39D) ...............64
43.5    Treatment of System 2000 Participant Claims (Class 39E) ...............64

ARTICLE XLIV PROVISIONS FOR TREATMENT OF AFSCME EMPLOYEE CLAIMS (CLASS 40) ...............65

44.1    Treatment of AFSCME Employee Claims ...............65

ARTICLE XLV PROVISIONS FOR TREATMENT OF CW GENERAL UNSECURED CLAIMS (CLASS 41) ...............66

45.1    Treatment of CW General Unsecured Claims ...............66
45.2    Limitation on Recovery ...............66

ARTICLE XLVI PROVISIONS FOR TREATMENT OF CW/HTA CLAIMS (CLASS 42) ...............67

46.1    Treatment of CW/HTA Claims ...............67

ARTICLE XLVII PROVISIONS FOR TREATMENT OF CW/CONVENTION CENTER CLAIMS (CLASS 43) ...............67

47.1    Treatment of CW/Convention Center Claims ...............67

**Table of Contents**

**(Cont'd)**

**Page**

ARTICLE XLVIII PROVISIONS FOR TREATMENT OF CW/PRIFA RUM TAX CLAIMS (CLASS 44) ..................................................................................67

    48.1    Treatment of CW/PRIFA Rum Tax Claims.............................67

ARTICLE XLIX PROVISIONS FOR TREATMENT OF  CW/MBA CLAIMS (CLASS 45) ...............................................................................................67

    49.1    Treatment of CW/MBA Claims...............................................67

ARTICLE L PROVISIONS FOR TREATMENT OF CW APPROPRIATIONS CLAIMS (CLASS 46) .............................................................................68

    50.1    Treatment of CW Appropriations Claims................................68

ARTICLE LI PROVISIONS FOR TREATMENT OF CW/510(b) SUBORDINATED CLAIMS (CLASS 47) .......................................................68

    51.1    Treatment of CW/510(b) Subordinated Claims.......................68

ARTICLE LII PROVISIONS FOR TREATMENT OF ERS BOND CLAIMS (CLASS 48) ..........................................................................................68

    52.1    Treatment of ERS Bond Claims .............................................68
    52.2    Rights of Election to Settling ERS Bond Claims....................68

ARTICLE LIII PROVISIONS FOR TREATMENT OF SETTLING ERS BOND CLAIMS (CLASS 49) ...........................................................................68

    53.1    Treatment of Settling ERS Bond Claims ................................68

ARTICLE LIV PROVISIONS FOR TREATMENT OF ERS GENERAL UNSECURED CLAIMS (CLASS 50) ...........................................................69

    54.1    Treatment of ERS General Unsecured Claims .......................69
    54.2    Limitation on Recovery .........................................................69

ARTICLE LV PROVISIONS FOR TREATMENT OF GRACIA GRACIA CLAIMS (CLASS 51) ...........................................................................70

    55.1    Treatment of Gracia Gracia Claims ........................................70

ARTICLE LVI PROVISIONS FOR TREATMENT OF CONVENIENCE CLAIMS (CLASS 52) ...........................................................................70

    56.1    Treatment of Convenience Claims..........................................70

ARTICLE LVII PROVISIONS REGARDING NEW GO BONDS, COFINA JUNIOR LIEN BONDS AND ADDITIONAL INDEBTEDNESS ................70

    57.1    Issuance and Distribution of the New GO Bonds ...................70

**Table of Contents**
**(Cont'd)**

| | | |
|---|---|---|
| 57.2 | Issuance of COFINA Junior Lien Bonds | 73 |
| 57.3 | Sharing of Benefits Regarding Tax-Exempt Treatment of the New GO Bonds and COFINA Junior Lien Bonds | 76 |
| 57.4 | Comprehensive Cap on All Net Tax-Supported Debt | 77 |
| 57.5 | Adoption and Maintenance of a Debt Management Policy | 77 |

ARTICLE LVIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ...................................................................................................................78

| | | |
|---|---|---|
| 58.1 | Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases | 78 |
| 58.2 | Approval of Rejection or Assumption of Executory Contracts and Unexpired Leases | 79 |
| 58.3 | Inclusiveness | 79 |
| 58.4 | Cure of Defaults | 79 |
| 58.5 | Insurance Policies | 79 |
| 58.6 | Rejection Damage Claims | 80 |
| 58.7 | Indemnification and Reimbursement Obligations | 80 |
| 58.8 | Nonoccurrence of Effective Date | 80 |
| 58.9 | Reservation of Rights | 80 |
| 58.10 | Collective Bargaining Agreements | 80 |
| 58.11 | PRASA Guarantee | 80 |

ARTICLE LIX PROVISIONS GOVERNING DISTRIBUTIONS ...............................81

| | | |
|---|---|---|
| 59.1 | Time and Manner of Distribution | 81 |
| 59.2 | Timeliness of Payments | 82 |
| 59.3 | Distributions by the Disbursing Agent | 82 |
| 59.4 | Manner of Payment under the Plan | 82 |
| 59.5 | Delivery of Distributions | 82 |
| 59.6 | Cancellation of Notes, Instruments, Certificates, and Other Documents | 83 |
| 59.7 | Undeliverable/Reserved Distributions | 83 |
| 59.8 | Withholding and Reporting Requirements | 84 |
| 59.9 | Time Bar to Cash Payments | 84 |
| 59.10 | Distributions After Effective Date | 85 |
| 59.11 | Setoffs | 85 |
| 59.12 | Allocation of Plan Distributions Between Principal and Interest | 85 |
| 59.13 | Payment of Trustee Fees and Expenses | 85 |
| 59.14 | Beneficial Owner | 86 |
| 59.15 | Value of Distributions | 86 |

ARTICLE LX AVOIDANCE ACTIONS TRUST.......................................................86

| | | |
|---|---|---|
| 60.1 | Execution of Avoidance Actions Trust Agreement | 86 |
| 60.2 | Purpose of the Avoidance Actions Trust | 86 |
| 60.3 | Avoidance Actions Trust Assets | 86 |

**Table of Contents**
**(Cont'd)**

60.4    Administration of the Avoidance Actions Trust ....................................87
60.5    The Avoidance Actions Trustee...........................................................87
60.6    Role of the Avoidance Actions Trustee ...............................................87
60.7    Avoidance Actions Trustee's Tax Power for Debtors ..........................87
60.8    Transferability of Avoidance Actions Trust Interests..........................87
60.9    Cash......................................................................................................87
60.10   Distribution of Avoidance Action Trust Assets...................................88
60.11   Funding, Costs and Expenses of the Avoidance Actions Trust............88
60.12   Compensation of the Avoidance Actions Trustee ...............................88
60.13   Retention of Professionals/Employees by the Avoidance Actions Trustee...........88
60.14   Federal Income Tax Treatment of the Avoidance Actions Trust .........88
60.15   Indemnification of Avoidance Actions Trustee ...................................91

ARTICLE LXI PROSECUTION AND EXTINGUISHMENT OF CLAIMS HELD BY
THE DEBTORS.....................................................................................................92

61.1    Prosecution of Claims .........................................................................92

ARTICLE LXII ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS ...............................92

62.1    Impaired Classes to Vote .....................................................................92
62.2    Acceptance by Class of Creditors ........................................................92
62.3    Cramdown .............................................................................................92

ARTICLE LXIII RIGHTS AND POWERS OF DISBURSING AGENT ................92

63.1    Exculpation ..........................................................................................92
63.2    Powers of the Disbursing Agent ..........................................................93
63.3    Fees and Expenses Incurred From and After the Effective Date..........93

ARTICLE LXIV PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS ...93

64.1    Objections to Claims; Prosecution of Disputed Claims.......................93
64.2    Estimation of Claims............................................................................94
64.3    Payments and Distributions on Disputed Claims.................................94
64.4    Authority to Amend Lists of Creditors ................................................94
64.5    Non-Accrual of Interest .......................................................................95
64.6    Disallowance of Claims .......................................................................95

ARTICLE LXV GOVERNANCE AND PROVISIONS REGARDING PENSION
RESERVE..............................................................................................................95

65.1    Formation and Responsibilities of the Pension Reserve......................95
65.2    Funding of the Pension Reserve Trust .................................................95
65.3    Non-Impairment Covenant ..................................................................96

**Table of Contents**

**(Cont'd)**

ARTICLE LXVI IDENTIFICATION OF CLAIMS IMPAIRED BY THE PLAN AND
NOT IMPAIRED BY THE PLAN ................................................................................96

    66.1    Impaired Classes ..........................................................................96
    66.2    Unimpaired Class .........................................................................96

ARTICLE LXVII CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN .........96

    67.1    Conditions Precedent to Confirmation of the Plan .............................96
    67.2    Waiver of Conditions Precedent to Confirmation ................................98

ARTICLE LXVIII CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ......................98

    68.1    Conditions Precedent to the Effective Date ......................................98
    68.2    Waiver of Conditions Precedent ..................................................102
    68.3    Effect of Non-Occurrence of Conditions to Effective Date...................102

ARTICLE LXIX MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE
PLAN ......................................................................................................102

    69.1    Modification of Plan ...............................................................102
    69.2    Revocation or Withdrawal .........................................................102
    69.3    Amendment of Plan Documents ...................................................102
    69.4    No Admission of Liability .........................................................103

ARTICLE LXX CORPORATE GOVERNANCE AND  MANAGEMENT OF
REORGANIZED DEBTORS .............................................................................103

    70.1    Corporate Action ...................................................................103
    70.2    Amendment of By-Laws ............................................................104
    70.3    Dissolution of ERS ................................................................104
    70.4    Officers of Reorganized Debtors .................................................104
    70.5    PBA Governance Structure .......................................................104

ARTICLE LXXI PROVISIONS REGARDING OVERSIGHT BOARD AND
COMPLIANCE WITH PROMESA ......................................................................104

    71.1    Effect of Confirmation ...........................................................104
    71.2    Ongoing Role of the Oversight Board ...........................................104
    71.3    Preemption of Laws ...............................................................104

ARTICLE LXXII PROVISIONS REGARDING COMMITTEES ..........................................105

    72.1    Dissolution of Committees .......................................................105

ARTICLE LXXIII RETENTION OF JURISDICTION ......................................................105

    73.1    Retention of Jurisdiction .........................................................105

**Table of Contents**
**(Cont'd)**

**Page**

ARTICLE LXXIV MISCELLANEOUS PROVISIONS ........................................................107

    74.1    Title to Assets ......................................................................107
    74.2    Discharge and Release of Claims and Causes of Action ....................107
    74.3    Injunction on Claims .............................................................108
    74.4    Integral to Plan ....................................................................109
    74.5    Releases by the Debtors and Reorganized Debtors ..........................109
    74.6    Injunction Related to Releases ..................................................109
    74.7    Exculpation .........................................................................109
    74.8    Appointments Related Litigation ...............................................111
    74.9    Bar Order ...........................................................................111
    74.10   No Waiver ..........................................................................111
    74.11   Supplemental Injunction ........................................................111
    74.12   Post-Effective Date Fees and Expenses .......................................112
    74.13   Securities Act Exemption .......................................................112
    74.14   Severability .........................................................................113
    74.15   Governing Law .....................................................................113
    74.16   Closing Case ........................................................................113
    74.17   Section Headings ..................................................................113
    74.18   Inconsistencies .....................................................................113
    74.19   Document Retention ..............................................................113
    74.20   Immediate Binding Effect .......................................................113
    74.21   Additional Documents ...........................................................114
    74.22   Reservation of Rights .............................................................114
    74.23   Successors and Assigns ..........................................................114
    74.24   Notices ..............................................................................114
    74.25   Term of Injunctions or Stays ...................................................116
    74.26   Entire Agreement .................................................................116
    74.27   Plan Supplement ..................................................................116

The Financial Oversight and Management Board for Puerto Rico, as Title III representative of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority pursuant to Section 315(b) of the *Puerto Rico Oversight, Management and Economic Stability Act*, hereby proposes the following joint plan of adjustment.

# ARTICLE I

## DEFINITIONS

As used in the Plan, the following terms have the respective meanings set forth below and are equally applicable to the singular and plural of the terms defined:

1.1     **2011 CW Bond Claim:**  A Claim against the Commonwealth on account of 2011 CW Bonds, other than a 2011 CW Bond Claim (Insured) or a Retail 2011 CW Bond Claim.

1.2     **2011 CW Bond Claim (Insured):**  A claim against the Commonwealth on account of 2011 CW Bonds, the payment of principal and interest of which has been insured by Assured.

1.3     **2011 CW Bond Claim (Taxable Election):**  A 2011 CW Bond Claim or Retail 2011 CW Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, in the event that Taxable Bond Distributions are elected by Puerto Rico Investors holding CW Bond Claims and CW Guarantee Bond Claims in excess of the Maximum Taxable Bond Election Amount, such 2011 CW Bond Claim shall be a 2011 CW Bond Claim (Taxable Election) up to such 2011 CW Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a 2011 CW Bond Claim.

1.4     **2011 CW Bond Recovery:**  The aggregate recovery by holders of Allowed 2011 CW Bond Claims, Allowed 2011 CW Bond Claims (Insured), and Allowed Retail 2011 CW Bond Claims on account of any such Claims, totaling Three Hundred Thirty-Five Million Four Hundred Eight Thousand Three Hundred Thirty-Two Dollars and Thirty-Six Cents ($335,408,332.36), consisting of (a) Sixty-Two Million Seven Hundred Ninety Thousand Seven Hundred Ninety-Three Dollars and Fifty-Eight Cents ($62,790,793.58) in Cash, (b) One Hundred Thirty-Six Million Three Hundred Four Thousand Six Hundred Eighty Dollars and Ninety-Eight Cents ($136,304,680.98) in original principal amount of New GO Bonds, and (c) One Hundred Thirty-Six Million Three Hundred Twelve Thousand Eight Hundred Fifty-Seven Dollars and Eighty Cents ($136,312,857.80) in original principal amount of COFINA Junior Lien Bonds.

1.5     **2011 CW Bonds:**  Collectively, the Public Improvement Refunding Bonds, Series 2011 C, issued by the Commonwealth in the original principal amount of $442,015,000.00.

1.6     **2011 CW Guarantee Bond Claim:**  A Claim against the Commonwealth on account of the Commonwealth's good faith, credit and taxing power guarantee, as authorized by action, legislation, or resolution of the Commonwealth Legislature, of (a) an affiliate, agency, or instrumentality indebtedness, which guarantee was executed, delivered or enacted pursuant to

legislation or resolution during the period from January 1, 2011 up to and including December 31, 2011, and (b) the 2011 PBA Bonds; provided, however, that, solely for purposes of distribution in accordance with, but not voting with respect to, the Plan, the amount of a holder's 2011 CW Guarantee Bond Claim with respect to the Commonwealth's guarantee of 2011 PBA Bond Claim shall be calculated as the amount of such holder's 2011 PBA Bond Claim minus the amount of such holder's 2011 PBA Bond Recovery.

1.7 **2011 CW Guarantee Bond Claim (Taxable Election)**: A 2011 CW Guarantee Bond Claim or Retail 2011 CW Guarantee Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, in the event that Taxable Bond Distributions are elected by Puerto Rico Investors holding CW Bond Claims and  CW Guarantee Bond Claims in excess of the Maximum Taxable Bond Election Amount, such 2011 CW Guarantee Bond Claim shall be a 2011 CW Bond Claim (Taxable Election) up to such 2011 CW Guarantee Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a 2011 CW Guarantee Bond Claim.

1.8 **2011 CW Guarantee Bond Recovery**: The aggregate recovery by holders of Allowed 2011 CW Guarantee Bond Claims, totaling Seven Hundred Eighteen Million Nine Hundred Sixty-Nine Thousand Four Hundred Twelve Dollars and Twenty-Two Cents ($718,969,412.22), consisting of (a) One Hundred Thirty-Four Million Five Hundred Ninety-Six Thousand One Hundred Nineteen Dollars and Forty Cents ($134,596,119.40) in Cash, (b) Two Hundred Nine-Two Million One Hundred Seventy-Seven Thousand Eight Hundred Eighty-Two Dollars and Sixty-Five Cents ($292,177,882.65) in original principal amount of New GO Bonds, and (c) Two Hundred Ninety-Two Million One Hundred Ninety-Five Thousand Four Hundred Ten Dollars and Seventeen Cents ($292,195,410.17) in original principal amount of COFINA Junior Lien Bonds.

1.9 **2011 CW Guarantee Taxable Bond Distribution**: The distribution to be made to each holder of an Allowed 2011 CW Guarantee Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 27.1 hereof.

1.10 **2011 CW Series D/E/PIB Bond Claim**: A Claim against the Commonwealth on account of 2011 CW Series D/E/PIB Bonds, other than a 2011 CW Series D/E/PIB Bond Claim (Insured) or a Retail 2011 CW Series D/E/PIB Bond Claim.

1.11 **2011 CW Series D/E/PIB Bond Claim (Insured)**: A Claim against the Commonwealth on account of 2011 CW Series D/E/PIB Bonds, the payment of principal and interest of which has been insured by Assured.

1.12 **2011 CW Series D/E/PIB Bond Claim (Taxable Election)**: A 2011 CW Series D/E/PIB Bond Claim or Retail 2011 CW Series D/E/PIB Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, in the event that Taxable Bond Distributions are elected by Puerto Rico Investors holding CW Bond Claims and  CW Guarantee Bond Claims in excess of the Maximum Taxable Bond Election Amount, such 2011 CW Series D/E/PIB Bond Claim shall be a 2011 CW Bond Claim (Taxable Election) up to such 2011 CW Series D/E/PIB Bond Claim's ratable share

of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a 2011 Series D/E/PIB CW Bond Claim.

1.13    **2011 CW Series D/E/PIB Bond Recovery:**  The aggregate recovery by holders of Allowed 2011 CW Series D/E/PIB Bond Claims, Allowed 2011 CW Series D/E/PIB Bond Claims (Insured) and Allowed Retail 2011 CW Series D/E/PIB Bond Claims on account of such Claims, totaling Four Hundred Seventy-Six Million Five Hundred Six Thousand Seven Hundred Fifty-Six Dollars and Twenty-Seven Cents ($476,506,756.27), consisting of (a) Eighty-Nine Million Two Hundred Five Thousand Four Hundred Eight Dollars and Seventy Cents ($89,205,408.70) in Cash, (b) One Hundred Ninety-Three Million Six Hundred Forty-Four Thousand Eight Hundred Sixty-Five Dollars and Forty-Nine Cents ($193,644,865.49) in original principal amount of New GO Bonds, and (c) One Hundred Ninety-Three Million Six Hundred Fifty-Six Thousand Four Hundred Eighty-Two Dollars and Eight Cents ($193,656,482.08) in original principal amount of COFINA Junior Lien Bonds.

1.14    **2011 CW Series D/E/PIB Bonds:**  Collectively, (a) the Public Improvement Bonds of 2011, issued by the Commonwealth in the original principal amount of $304,000,000.00, (b) the Public Improvement Refunding Bonds, Series 2011D, issued by the Commonwealth in the original principal amount of $52,190,000.00 and (c) the Public Improvement Refunding Bonds, Series 2011E, issued by the Commonwealth in the original principal amount of $245,915,000.00.

1.15    **2011 CW Series D/E/PIB Taxable Bond Distribution:**  The distribution to be made to each holder of an Allowed 2011 CW Series D/E/PIB Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 31.1 hereof.

1.16    **2011 CW Taxable Bond Distribution:** The distribution to be made to each holder of an Allowed 2011 CW Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 25.1 hereof.

1.17    **2011 PBA Bond Claim:**  A Claim against PBA on account of the 2011 PBA Bonds, other than a Retail 2011 PBA Bond Claim.

1.18    **2011 PBA Bond Recovery:**  The aggregate recovery by holders of Allowed 2011 PBA Bond Claims, totaling Allowed 2011 PBA Bond Claims (Insured) and Allowed Retail 2011 PBA Bond Claims on account of such Claims, Three Hundred Six Million Seven Hundred Sixty-Eight Thousand Nine Hundred Eleven Dollars and Seventy-Two Cents ($306,768,911.72) in Cash.

1.19    **2011 PBA Bonds:**  Collectively, (a) the Government Facilities Revenue Bonds, Series R, (Qualified School Construction Bonds), issued by PBA in the original principal amount of $756,449,000.00, (b) the Government Facilities Revenue Bonds, Series S, issued by PBA in the original principal amount of $303,945,000.00, and (c) the Government Facilities Revenue Bonds, Series T (Qualified Zone Academy Bonds), issued by PBA in the original principal amount of $121,528,000.00, the repayment of which is guaranteed by the Commonwealth.

1.20    **2012 CW Bond Claim:**  A Claim against the Commonwealth on account of 2012 CW Bonds, other than a 2012 CW Bond Claim (Insured) or a Retail 2012 CW Bond Claim.

1.21 **2012 CW Bond Claim (Insured):** A Claim against the Commonwealth on account of 2012 CW Bonds, the payment of principal and interest of which has been insured by Assured**.**

1.22 **2012 CW Bond Claim (Taxable Election):** A 2012 CW Bond Claim and Retail 2012 CW Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, in the event that Taxable Bond Distributions are elected by Puerto Rico Investors holding  CW Bond Claims and CW Guarantee Bond Claims in excess of the Maximum Taxable Bond Election Amount, such 2012 CW Bond Claim shall be a 2012 CW Bond Claim (Taxable Election) up to such 2012 CW Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a 2012 CW Bond Claim.

1.23 **2012 CW Bond Recovery**: The aggregate recovery by holders of Allowed 2012 CW Bond Claims, Allowed 2012 CW Bond Claims (Insured), and Allowed Retail 2012 CW Bond Claims on account of any such Claims, totaling Two Billion Fifty-Three Million Nine Hundred Ten Thousand Three Hundred Eighty-Five Dollars and Forty-Six Cents ($2,053,910,385.46), consisting of (a) Three Hundred Eighty-Four Million Five Hundred Six Thousand Four Hundred Thirty-Seven Dollars and Sixty-Six Cents ($384,506,437.66) in Cash, (b) Eight Hundred Thirty-Four Million Six Hundred Seventy-Six Thousand Nine Hundred Thirty-Eight Dollars and Eleven Cents ($834,676,938.11) in original principal amount of New GO Bonds, and (c) Eight Hundred Thirty-Four Million Seven Hundred Twenty-Seven Thousand Nine Dollars and Sixty-Nine Cents ($834,727,009.69) in original principal amount of COFINA Junior Lien Bonds.

1.24 **2012 CW Bonds:** Collectively, (a) the Public Improvement Refunding Bonds, Series 2012 A, issued by the Commonwealth in the original principal amount of $2,318,190,000.00, (b) the Public Improvement Refunding Bonds, Series 2012 B, issued by the Commonwealth in the original principal amount of $415,270,000.00, (c) the GSA Helicopter Loan, and (d) Hacienda loans (Loan ID Nos. 200017-215-001-003-53 and 200017-215-001-003-56), which, as of the Commonwealth Petition Date, were in the aggregate outstanding principal amount of One Hundred Sixty-Nine Million Four Hundred Thirty-Eight Thousand Thirty-Seven Dollars and Seventy-Six Cents ($169,438,037.76).

1.25 **2012 CW Guarantee Bond Claim:** A Claim against the Commonwealth on account of the Commonwealth's good faith, credit and taxing power guarantee, as authorized by action, legislation or resolution of the Commonwealth Legislature, of (a) an affiliate, agency or instrumentality indebtedness, which guarantee was executed, delivered or enacted pursuant to legislation or resolution during the period from January 1, 2012 up to and including December 31, 2013, and (b) the 2012 PBA Bonds; provided, however, that, solely for purposes of distribution under, but not voting with respect to, the Plan, the amount of a holder's 2012 CW Guarantee Bond Claim in respect of the Commonwealth's guarantee of 2012 PBA Bonds shall be measured as the amount of such holder's 2012 PBA Bond Claim minus the amount of such holder's PBA Bond Distribution on account of 2012 PBA Bonds.

1.26 **2012 CW Guarantee Bond Claim (Taxable Election):** A 2012 CW Guarantee Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, in the event that Taxable Bond

Distributions are elected by Puerto Rico Investors holding CW Bond Claims and CW Guarantee Bond Claims in excess of the Maximum Taxable Bond Election Amount, such 2012 CW Guarantee Bond Claim shall be a 2012 CW Guarantee Bond Claim (Taxable Election) up to such 2012 CW Guarantee Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a 2012 CW Guarantee Bond Claim.

1.27    **2012 CW Guarantee Taxable Bond Distribution**:  The distribution to be made to each holder of an Allowed 2012 CW Guarantee Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 37.1 hereof.

1.28    **2012 CW Guarantee Bond Recovery**:  The aggregate recovery by holders of Allowed 2012 CW Guarantee Bond Claims, totaling Three Hundred Thirty-Two Million Sixty-Five Thousand Four Hundred Forty-Five Dollars and Fifty-Nine Cents ($332,065,445.59), consisting of (a) Sixty-Two Million One Hundred Sixty-Four Thousand Nine Hundred Eighty-One Dollars and Seventy-One Cents ($62,164,981.71) in Cash, (b) One Hundred Thirty-Four Million Nine Hundred Forty-Six Thousand One Hundred Eighty-Four Dollars and Twenty-Eight Cents ($134,946,184.28) in original principal amount of New GO Bonds, and (c) One Hundred Thirty-Four Million Nine Hundred Fifty-Four Thousand Two Hundred Seventy-Nine Dollars and Sixty Cents ($134,954,279.60) in original principal amount of COFINA Junior Lien Bonds.

1.29    **2012 CW Taxable Bond Distribution**:  The distribution to be made to each holder of an Allowed 2012 CW Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 35.1 hereof.

1.30    **2012 PBA Bond Claim**:  A Claim against PBA on account of 2012 PBA Bonds, other than a Retail 2012 PBA Bond Claim.

1.31    **2012 PBA Bond Recovery**:  The aggregate recovery by holders of Allowed 2011 PBA Bond Claims, Allowed 2011 PBA Bond Claims (Insured) and Allowed Retail 2011 PBA Bond Claims on account of such Claims, One Hundred Fifty-Four Million Eight Hundred Ninety-Nine Thousand Nine Hundred Two Dollars and Twenty-Three Cents ($154,899,902.23) in Cash.

1.32    **2012 PBA Bonds**:  Collectively, the Government Facilities Revenue Refunding Bonds, Series U, issued by PBA in the original principal amount of $582,345,000.00.

1.33    **2014 CW Bond Claim**:  A Claim against the Commonwealth on account of the 2014 CW Bonds, other than a Retail 2014 CW Bond Claim.

1.34    **2014 CW Bond Claim (Taxable Election)**:  A 2014 CW Bond Claim and Retail 2014 CW Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, in the event that Taxable Bond Distributions are elected by Puerto Rico Investors holding CW Bond Claims and CW Guarantee Bond Claims in excess of the Maximum Taxable Bond Election Amount, such 2014 CW Bond Claim shall be a 2014 CW Bond Claim (Taxable Election) up to such 2014 CW Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a 2014 CW Bond Claim.

1.35 **2014 CW Bond Recovery:** The aggregate recovery by holders of Allowed 2014 CW Bond Claims, Allowed 2014 CW Guarantee Bond Claims and Allowed Retail 2014 CW Bond Claims on account of any such Claims, totaling Two Billion Seven Hundred Thirty-Three Million Two Hundred Eighty-Three Thousand Three Hundred Thirty-One Dollars and Sixty-One Cents ($2,733,283,331.61), consisting of (a) Five Hundred Eleven Million Six Hundred Eighty-Nine Thousand Eight Hundred Twenty Dollars and Seventy-Four Cents ($511,689,820.74) in Cash, (b) One Billion One Hundred Ten Million Seven Hundred Sixty-Three Thousand Four Hundred Thirty-Eight Dollars and Fifty-Four Cents ($1,110,763,438.54) in original principal amount of New GO Bonds, and (c) One Billion One Hundred Ten Million Eight Hundred Thirty Thousand Seventy-Two Dollars and Thirty-Three Cents ($1,110,830,072.33) in original principal amount of COFINA Junior Lien Bonds.

1.36 **2014 CW Bonds:** Collectively, the General Obligation Bonds of 2014, Series A, issued by the Commonwealth in the original principal amount of $3,500,000,000.00.

1.37 **2014 CW Guarantee Bond Claim:** A Claim against the Commonwealth on account of the Commonwealth's good faith, credit and taxing power guarantee, as authorized by action, legislation or resolution of the Commonwealth Legislature, of (a) an affiliate, agency or instrumentality, which guarantee was executed, delivered or enacted during the period from January 1, 2014 up to, but not including, the Commonwealth Petition Date, (b) the Ports bond, which, as of the Commonwealth Petition Date, was in the outstanding principal amount of Two Hundred Twenty-Five Million Five Hundred Thirty-Four Thousand Dollars ($225,534,000.00), and (c) PRIFA BANs, Series 2015, which, as of the Commonwealth Petition Date, were in the outstanding principal amount of Seventy-Eight Million One Hundred Forty-Five Thousand Dollars ($78,145,000.00).

1.38 **2014 CW Guarantee Bond Claim (Taxable Election):** A 2014 CW Guarantee Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, in the event that Taxable Bond Distributions are elected by Puerto Rico Investors holding CW Bond Claims and CW Guarantee Bond Claims in excess of the Maximum Taxable Bond Election Amount, such 2014 CW Guarantee Bond Claim shall be a 2014 CW Guarantee Bond Claim (Taxable Election) up to such 2014 CW Guarantee Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a 2014 CW Guarantee Bond Claim.

1.39 **2014 CW Guarantee Taxable Bond Distribution:** The distribution to be made to each holder of an Allowed 2014 CW Guarantee Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 42.1 hereof.

1.40 **2014 CW Taxable Bond Distribution:** The distribution to be made to each holder of an Allowed 2014 CW Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 40.1 hereof.

1.41 **AAFAF:** Autoridad de Asesoría Financiera y Agencia Fiscal, a public corporation and instrumentality of the Commonwealth, whose name in English is the Puerto Rico Fiscal Agency and Financial Advisory Authority.

1.42 **ACR Order:**  That certain Order (A) Authorizing Administrative Reconciliation of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief, dated March ___, 2020 [Case. No. 17-3283-LTS, ECF No. _____].

1.43 **Act 106:**  Act 106 of 2017, which created the pay-as-you-go pension system known as "PayGo".

1.44 **Act 106 Board:**  The board created in accordance with Act 106.

1.45 **Active ERS Participant Claim:**  An ERS Participant Claim held by an Active Participant.

1.46 **Active JRS Participant Claim:**  A JRS Participant Claim held by an Active Participant.

1.47 **Active Participant:**  A Participant that is not a Retiree.

1.48 **Active TRS Participant Claim:**  A TRS Participant Claim held by an Active Participant.

1.49 **Administrative Claim Bar Date:**  Unless otherwise ordered by the Title III Court, the date established by the Title III Court and set forth in the Confirmation Order as the last day to file proof of Administrative Expense Claims, which date shall be no more than ninety (90) days after the Effective Date, after which date, any Administrative Expense Claim, proof of which has not been filed, shall be deemed forever barred, and the Debtors and Reorganized Debtors shall have no obligation with respect thereto; provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim (a) shall have been incurred (i) in accordance with an order of the Title III Court or (ii) with the written consent of the applicable Government Parties expressly granting such Administrative Expense Claim or (b) is a Professional Claim.

1.50 **Administrative Expense Claim:**  A Claim against the Debtors or its Assets constituting a cost or expense of administration of the Title III Case asserted or authorized to be asserted, on or prior to the Administrative Claim Bar Date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the Effective Date, and otherwise complying with applicable Puerto Rico Law, including, without limitation, subject to the occurrence of the Effective Date, Consummation Costs and PSA Restriction Fees; provided, however, that, under no circumstances shall an Administrative Expense Claim include the PBA Administrative Expense Claim.

1.51 **ADR Order:**  That certain Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief, dated March ___, 2020 [Case. No. 17-3283-LTS, ECF No. _____].

1.52 **ADR Procedures:**  The alternative dispute resolution procedures authorized pursuant to the ADR Order.

1.53     **Affiliate:**  With respect to any specified Entity, any other Entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such Entity.

1.54     **AFSCME**:  American Federation of State, County and Municipal Employees, for itself and on behalf of its two local chapters, SPU, AFSCME Council 95 and Capitulo de Retirados de SPU and their fourteen affiliated local unions in Puerto Rico.

1.55     **AFSCME CBAs:**  Those certain collective bargaining agreements between AFSCME and the Commonwealth, and listed on Exhibit "L" hereto.

1.56     **AFSCME Employee Claims:**  A Claim arising from or related to the AFSCME CBAs.

1.57     **AFSCME Plan Support Agreement:**  That certain Plan Support Agreement, dated as of June 7, 2019, by and among the Oversight Board, the Commonwealth and AFSCME, as may be amended and restated.

1.58     **AFSCME Term Sheet:**  The term sheet annexed as Exhibit "A" to the AFSCME Plan Support Agreement.

1.59     **Allowed:**  With respect to any Claim, such Claim or portion thereof (a) proof of which was filed on or before the applicable Bar Date or (b) if no proof of Claim has been timely filed, which has been or hereafter is listed by the Debtors in the List of Creditors and is not listed thereon as "disputed", "contingent", or "unliquidated" or (c) allowed pursuant to (i) section 502(h) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, (ii) the terms of the Plan or (iii) a Final Order; provided, however, that, with respect to any Claim described in clause (a) or (b) above, such Claim shall be considered Allowed only if, and to the extent that, no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.  For purposes of determining the amount of an "Allowed Claim" with respect to distributions within a Class, there shall be deducted therefrom an amount equal to the amount of any, original issue discount not accrued as of the date immediately prior to the Commonwealth Petition Date and any Claim that the Debtors may hold against the holder thereof, to the extent such Claim may be set off pursuant to applicable bankruptcy and non-bankruptcy law.  Notwithstanding anything to the contrary herein (x) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Title III Court shall not be considered "Allowed" hereunder unless otherwise specified herein or by order of the Title III Court, (y) for any purpose under the Plan, "Allowed" shall not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date, and (z) "Allowed" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

1.60     **Allowed Claim:**  A Claim, to the extent it is or has become Allowed.

1.61     **Ambac:**  Ambac Assurance Corporation or its successor or designee.

1.62    **Annex Agreement:**  That certain Annex Agreement annexed as Exhibit "G" to the Plan Support Agreement pursuant to which certain holders of CW Bond Claims, CW Guarantee Bond Claims, and PBA Bond Claims may become PSA Creditors.

1.63    **Appointments Related Litigation:**  Collectively, the litigation styled (a) Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC, No. 18-1334 (appealed from Case No. 18-1671), currently pending in the United States Supreme Court, (b) Pinto Lugo, et al. v. United States Adv. Proc. No. 18-00041, currently pending in the Title III Court, (c) Hermandad De Empleados Del Fondo Del Seguro Del Estado, Inc., et al. v. United States, Case NO. 19-2243 (appealed from Adv. Proc. No. 18-00066), currently pending in the United States Court of Appeals for the First Circuit, (d) Hernandez-Montanez, et al. v. Financial Oversight & Management Board for Puerto Rico, Adv. Proc. No. 18-00090, currently pending in the Title III Court, and (e) such other litigation as may be currently pending or as may be commenced during the period from and after the date hereof up to and including the Effective Date wherein claims or Causes of Action consistent with or similar to those asserted or which could have been asserted in the above-referenced litigations have been asserted.

1.64    **Assets:**  With respect to the Debtors, (i) all "property" of the Debtors, including, without limitation, such property as it may be reflected on the Debtors' books and records and the Confirmation Order as of the Effective Date and (ii) all Causes of Action, and any subsequent proceeds thereof, that have been or may be commenced by the Debtors or other authorized representative for the benefit of the Debtors and its Creditors, unless modified or released pursuant to the Plan or a Final Order, including, without limitation, any Avoidance Action.

1.65    **Assured:**  Assured Guaranty Municipal Corp., or its successor or designee.

1.66    **Avoidance Actions:**  Those avoidance, recovery, subordination or other actions or remedies identified on Exhibit "E" hereto against any Entity that have been brought by or on behalf of the Debtors against an Entity under sections 510, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code, applicable to the Title III Cases pursuant to Section 301 of PROMESA, or applicable non-bankruptcy law; provided, however, that under no circumstances shall "Avoidance Actions" include any Claim or Cause of Action against any Entity relating to GO Bonds, PBA Bonds, or PRIFA BANs.

1.67    **Avoidance Actions CW Interests:**  The tranche of beneficial interests in the Avoidance Actions Trust allocated in accordance with the terms and provisions of the Plan to the CW GUC Pool and relating only to net recoveries attributable to Avoidance Actions relating to the Commonwealth Title III Case.

1.68    **Avoidance Actions ERS Interests:**  The tranche of beneficial interests in the Avoidance Actions Trust allocated in accordance with the terms and provisions of the Plan to the ERS GUC Pool and relating only to net recoveries attributable to Avoidance Actions relating to the ERS Title III Case.

1.69    **Avoidance Actions Trust:**  The trust to be created on or prior to the Effective Date into which on the Effective Date shall be transferred the authority to litigate or compromise and settle the Avoidance Actions.

1.70   **Avoidance Actions Trust Agreement:**  The agreement to be executed and delivered on or prior to the Effective Date providing for, among other things, the ongoing litigation of the Avoidance Actions.

1.71   **Avoidance Actions Trust Assets:**  Collectively, the Avoidance Actions and such other actions that have been brought by or on behalf of the Debtors seeking affirmative recoveries, and which actions are set forth in the respective litigations listed on Exhibit "B" hereto; provided, however, that under no circumstances shall "Avoidance Actions Trust Assets" include any actions against the Released Parties.

1.72   **Avoidance Actions Trust Beneficiaries:**  Collectively, the holders of Avoidance Actions CW Interests and Avoidance Actions ERS Interests.

1.73   **Avoidance Actions Trust Board:**  The three (3) member board appointed as of the Effective Date to govern the Avoidance Actions Trust, with (a) two (2) directors selected by the Creditors' Committee and (b) one (1) director selected by the Oversight Board.

1.74   **Avoidance Actions Trustee:**  The trustee appointed in accordance with the terms and provisions of the Avoidance Actions Trust Agreement, including, without limitation, any successor thereto.

1.75   **Avoidance Actions Trust Interests:**  Collectively, the Avoidance Actions CW Trust Interests and the Avoidance Actions ERS Trust Interests.

1.76   **Ballot Date:**  The deadline(s) established by the Title III Court and set forth in the Disclosure Statement Order for the submission of Ballots/Election Forms and the election of alternative treatments pursuant to the terms and provisions of the Plan.

1.77   **Ballot/Election Form:**  The ballot and election form, the form of which is approved by the Title III Court, distributed to each holder or insurer, as the case may be, of an impaired Claim entitled to vote on the Plan, on which form is to be indicated, among other things, (a) acceptance or rejection of the Plan and/or (b) to the extent applicable, an election of distribution and treatment which may be required in accordance with the provisions of the Plan.

1.78   **Bankruptcy Code:**  The Bankruptcy Reform Act of 1978, as amended, to the extent codified in Title 11, United States Code, and made applicable to the Title III Cases.

1.79   **Bankruptcy Rules:**  The Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, as applicable to the Title III Cases.

1.80   **Bar Date:**  The respective dates established by the Title III Court by which proofs of Claim must have been filed with respect to such Claims against a Debtor, pursuant to (a) the Bar Date Orders, (b) a Final Order of the Title III Court, or (c) the Plan.

1.81   **Bar Date Orders:**  The orders of the Title III Court establishing the dates by which proofs of Claim against the Debtors or their Assets must have been filed, including, but not limited to, that certain (a) Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof [Case No. 17-3283-LTS, ECF

No. 2521], (b) Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof [Case No. 17-3283-LTS, ECF No. 3160], and (c) Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof [Case No. 19-5523-LTS, ECF No. ____].

1.82 **Base Contribution:** One Hundred Seventy-Five Million Dollars ($175,000,000.00), the amount the Commonwealth shall contribute, or cause to be contributed, to the Pension Reserve in accordance with the terms and provisions of Section 65.2 of the Plan; provided, however, that, in the event that, for any FY ending FY 2020 up to and including FY 2027 as set forth in the Fiscal Plan as in effect as of the Effective Date, the projected Fiscal Plan Surplus is equal to or greater than One Billion Seven Hundred Fifty Million Dollars ($1,750,000,000.00), such amount shall increase to an amount equal to twenty-five percent (25%) of the projected Fiscal Plan Surplus for such FY.

1.83 **Benefit Reduction Date:** The date that is the later to occur of (a) July 1, 2021 and (b) the first (1st) July 1st following the Effective Date; provided, however, that, in the event that the period between the Effective Date and the first (1st) subsequent July 1st is less than one hundred eighty (180) days, then the **"Benefit Reduction Date"** shall be the first (1st) day of the first (1st) calendar month one hundred eighty (180) days after the Effective Date.

1.84 **Benefit Restoration:** During the period from the Benefit Reduction Date up to and including the conclusion of FY 2033, in the event that, in a particular FY, the Excess Cash Surplus is equal to or greater than One Hundred Million Dollars ($100,000,000.00), ten percent (10%) of such Excess Cash Surplus shall be (a) allocated and applied pro rata to each Participant based on the amount of total reductions experienced by each such Participant during such FY in accordance with the terms and provisions of Articles XLIII and XLIV hereof and (b) paid to any such Participant on or prior to October 1st following the conclusion of such FY; provided, however, that such Benefit Restoration shall be capped at the Monthly Benefit Reduction times twelve (12) for each Participant for a particular FY.

1.85 **Bond Claim:** A Claim on account of a GO Bond, a PBA Bond, a CW Guarantee Bond Claim, or an ERS Bond with the amount of such Claim being calculated as the outstanding principal amount of such bonds plus any, accrued and unpaid interest thereon, up to, but not including, the respective Petition Date for (a) a GO Bond, the Commonwealth Petition Date, (b) a PBA Bond, the PBA Petition Date, (c) a CW Guarantee Bond Claim, the Commonwealth Petition Date, and (d) an ERS Bond, the ERS Petition Date.

1.86 **Bond Recovery Category:** Collectively, the categories set forth on Exhibit "L" hereto relating to the respective Classes of Claims and the distributions to be made thereto pursuant to the terms and provisions of the Plan.

1.87 **Business Day:** A day other than a Saturday, Sunday, or any other day on which commercial banking institutions in New York, New York and San Juan, Puerto Rico are required to close by law or executive order.

1.88 **Capital Improvements:** Any project or projects funded, or proposed to be funded, in whole or in part, by or through public monies, to construct, reconstruct, restore, rehabilitate or purchase any equipment, property or facilities, including, without limitation,

11

buildings, park facilities, infrastructure, information technology systems or other equipment that is funded on a necessarily non-repeating basis that is to be used as a public asset or for the public benefit.

1.89 **Cash:** Lawful currency of the United States, including, but not limited to, bank deposits, checks representing good funds, and legal equivalents thereof.

1.90 **Causes of Action:** All claims, actions, causes of action, rights to payment, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions) that are pending or may be asserted against any Entity whether arising on or before the Effective Date, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the Effective Date.

1.91 **Christmas Bonus:** The bonus, if any, payable to current, former, active, inactive and disabled employees of the Commonwealth, its agencies and instrumentalities in accordance with Act No. 98-1980, reproduced in 3 L.P.R.A. §761, as amended by Act No. 3-2013, 3 L.P.R.A §761.

1.92 **Claim:** Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, Causes of Action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.

1.93 **Class:** A category of holders of Claims set forth in Article IV of the Plan.

1.94 **COFINA:** Puerto Rico Sales Tax Financing Corporation, a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth.

1.95 **COFINA Confirmation Order:** That certain Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation, dated February 5, 2019 [Case No. 17-3284-LTS, ECF. No. 561].

1.96 **COFINA Junior Lien Bonds:** Collectively, the securities to be issued by COFINA on the Effective Date in accordance with the terms and conditions of the Plan, the Confirmation Order, the COFINA Junior Lien Bonds Indenture, and, to the extent enacted, the

COFINA Junior Lien Bonds Legislation, including, without limitation, any refunding bonds which may be issued in accordance with the COFINA Junior Lien Bonds Indenture and the COFINA Junior Lien Bonds Legislation, which securities shall be payable from the Conveyed Commonwealth Share, shall be secured by a second lien on the COFINA Pledged Taxes and shall, in all respects, be subject to the First Dollars Funding obligations with respect to the COFINA Senior Lien Bonds.

1.97   **COFINA Junior Lien Bonds Indenture:**  The trust indenture to be executed as of the Effective Date pursuant to which COFINA shall issue the COFINA Junior Lien Bonds, and including all of the terms and provisions in connection therewith, as it may be amended, supplemented or modified from time to time, in accordance with its terms and conditions.

1.98   **COFINA Junior Lien Bonds Legislation:**  The legislation to be enacted into law on or prior to the Effective Date authorizing the transactions contemplated by, and consistent with the Plan, providing for the issuance of the COFINA Junior Lien Bonds, the transfer and assignment of the Conveyed Commonwealth Share to COFINA, and the granting of a statutory second lien on the COFINA Pledged Taxes, subordinate to the statutory lien granted pursuant to the COFINA Senior Lien Bonds Legislation, to the trustee pursuant to the COFINA Junior Lien Bonds Indenture, for the benefit of the COFINA Junior Lien Bonds, and incorporating such other terms as set forth in the Plan and the Confirmation Order; provided, however, that, notwithstanding the foregoing, the COFINA Junior Lien Bonds Legislation may be part of and incorporated into the New GO Bonds Legislation.

1.99   **COFINA Plan:**  That certain Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation, dated January 9, 2019 [Case No. 17-3284-LTS, ECF. No. 436].

1.100   **COFINA Pledged Taxes:**  The present and future revenues and collections generated by the portion of the Sales Tax that corresponds to a tax rate of five and one-half percent (5.5%), or such lesser amount as permitted by the COFINA Plan, the COFINA Confirmation Order and the documents and instruments executed or delivered in connection therewith.

1.101   **COFINA Senior Lien Bonds:**  Collectively, the securities issued by COFINA pursuant to the COFINA Plan, the COFINA Confirmation Order, the COFINA Senior Lien Bonds Legislation and the COFINA Senior Lien Bonds Indenture.

1.102   **COFINA Senior Lien Bonds Indenture:**  The trust indenture pursuant to which COFINA issued the COFINA Senior Lien Bonds, as it may be amended, supplemented or modified from time to time, in accordance with its terms and conditions.

1.103   **COFINA Senior Lien Bonds Legislation:**  Act 241 of the Legislative Assembly of Puerto Rico, approved November 15, 2018, amending Act 91 of the Legislative Assembly of Puerto Rico, approved May 13, 2006, as amended.

1.104   **Commonwealth:**  The Commonwealth of Puerto Rico.

1.105    **Commonwealth Constitution:**  The Constitution of the Commonwealth of Puerto Rico.

1.106    **Commonwealth Legislature:**  The Legislative Assembly of Puerto Rico.

1.107    **Commonwealth Petition Date:**  May 3, 2017.

1.108    **Commonwealth Title III Case:**  The Title III case under PROMESA pending for the Commonwealth in the Title III Court, captioned as In re Financial Oversight & Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico, et al., Case No. 17-3283-LTS (D.P.R.).

1.109    **Comprehensive Cap:**  The limitation on Maximum Annual Debt Service payable on Net Tax-Supported Debt, which shall apply in addition to the limitation imposed on the incurrence of public Debt established pursuant to the Article VI, Section 2 of the Puerto Rico Constitution.

1.110    **Confirmation Date:**  The date on which the Clerk of the Title III Court enters the Confirmation Order on the docket.

1.111    **Confirmation Hearing:**  The hearing conducted by the Title III Court pursuant to section 1128(a) of the Bankruptcy Code and Section 314 of PROMESA to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.112    **Confirmation Order:**  The order of the Title III Court confirming the Plan in accordance with Section 314 of PROMESA and section 1129 the Bankruptcy Code, made applicable in the Title III cases in accordance with Section 301 of PROMESA.

1.113    **Constitutional Debt Group:**  The Ad Hoc Group of Constitutional Debtholders consisting of BlackRock Financial Management Inc., Brigade Capital Management, Brookfield Asset Management Private Institutional Capital Adviser (Credit) LLC, Deutsche Bank Securities Inc., EMSO Asset Management Limited, First Pacific Advisors, LP, Mason Capital Management, LLC, Silver Point Capital, L.P., and VR Advisory Services Ltd., each on behalf of itself or on behalf of its participating clients or certain of its respective managed funds and, in each case, their respective successors and assigns with respect to transfers made in accordance with the terms and conditions of the Plan Support Agreement.

1.114    **Consummation Costs:**  Collectively, the amounts to be paid, in Cash, on the Effective Date, or as soon as practicable thereafter, but in no event later than ten (10) Business Days following the Effective Date, to the Initial PSA Creditors in accordance with the terms and conditions of the Plan Support Agreement, Article III hereof and the Confirmation Order.

1.115    **Consummation Costs Parties:**  Collectively, the Initial PSA Creditors entitled to receive Consummation Costs in accordance with the terms and provisions of the Plan Support Agreement, the Plan and the Confirmation Order.

1.116    **Convenience Claim:**  An Allowed CW General Unsecured Claim or Allowed ERS General Unsecured Claim (a) that is equal to or less than Ten Thousand Dollars ($10,000.00) or (b) the holder of which, at such holder's option, has elected to reduce the amount

14

of such Allowed CW General Unsecured Claim or Allowed ERS General Unsecured Claim, as the case may be, to Ten Thousand Dollars ($10,000.00) in accordance with terms and provisions set forth in Section 56.1 hereof; provided, however, that, notwithstanding the foregoing, a holder of multiple Allowed CW General Unsecured Claims or Allowed ERS General Unsecured Claims that are equal to or less than Twenty Thousand Dollars ($20,000.00) may elect to reduce all such Claims to an aggregate amount of Twenty Thousand Dollars ($20,000.00).

1.117   **Conveyed Commonwealth Share:**  The interest that is second in priority of payment, funding and collections, in all circumstances, subject and pursuant to the First Dollars Funding, in the COFINA Pledged Taxes and all rights thereto, as described in the COFINA Plan, the COFINA Confirmation Order and the documents and instruments executed or delivered in connection therewith, with such interest including the right to receive the COFINA Pledged Taxes after satisfaction of the First Dollars Funding in each Fiscal Year, in an amount up to forty-six and thirty-five one hundredths percent (46.35%) of the Fixed Income in any given year until the COFINA Junior Lien Bonds have been paid or satisfied in full in accordance with their terms.

1.118   **Creditor:**  Any Entity holding a Claim against the Debtors or any Debtor's Assets or, pursuant to section 102(2) of the Bankruptcy Code, against any other property of the Debtors, including, without limitation, a Claim against the Debtors of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case, solely in such Entity's capacity as such.

1.119   **Creditors' Committee:**  The statutory committee of unsecured claimholders appointed in, among other cases, the Commonwealth Title III Case, the ERS Title III Case and the HTA Title III Case.

1.120   **CW Appropriations Claims:**  Collectively, the Claims against the Commonwealth arising from or related to (a) indebtedness only payable from appropriations of the Commonwealth Legislature under existing loans or legislative resolutions, including, without limitation, (b) notes from the Commonwealth or its agencies or instrumentalities held by PFC for the repayment of PFC indebtedness and (c) loans only payable from appropriations by the Commonwealth Legislature under existing laws or legislative resolutions held by the GDB Debt Recovery Authority or the GDB Public Entity Trust.

1.121   **CW Bond Claims:**  Collectively, the Claims against the Commonwealth arising from or relating to the GO Bonds, including the Vintage CW Bond Claims, the 2011 CW Bond Claims, the 2011 CW Series D/E/PIB Bond Claims, the 2012 CW Bond Claims, the 2014 CW Bond Claims, the CW Bond Claims (Insured), and the Retail CW Bond Claims.

1.122   **CW Bond Claims (Insured):**  Collectively, the Vintage CW Bond Claims (Insured), the 2011 CW Bond Claims (Insured), the 2011 CW Series D/E/PIB Bond Claims (Insured), and the 2012 CW Bond Claims (Insured).

1.123   **CW Fiscal Plan:**  That certain Fiscal Plan of the Commonwealth, certified by the Oversight Board on May 9, 2019.

1.124    **CW General Unsecured Claim:**  A Claim against the Commonwealth, other than a PBA Bond Claim, a CW Bond Claim, a CW Guarantee Bond Claim, an Active and Retired Employee Benefits Claim, an ERS Participant Claim, a JRS Participant Claim, a TRS Participant Claim, an AFSCME Employees Claim, a CW/HTA Claim, a CW/Convention Center Claim, a CW/PRIFA Rum Tax Claim, a CW/MBA Claim, a CW Appropriations Claim, a CW 510(b) Subordinated Claim, a Gracia Gracia Claim, a Late-Filed Claim, a Convenience Claim, any Claim subject to the provisions of the ACR Order, or such other Claim determined by the Title III Court not to be a CW General Unsecured Claim.

1.125    **CW Guarantee Bond Claims:**  Collectively, the Vintage CW Guarantee Bond Claims, the 2011 CW Guarantee Bond Claims, the 2012 CW Guarantee Bond Claims, the 2014 CW Guarantee Bond Claims and the Vintage CW Guarantee Bond Claims (Insured).

1.126    **CW GUC Recovery:**  The aggregate recovery by holders of Allowed CW General Unsecured Claims, Allowed CW/Convention Claims, Allowed CW/HTA Claims, Allowed CW/MBA Claims and Allowed CW/PRIFA Rum Tax Claims, consisting of (a) Two Hundred Sixty-Three Million Three Hundred Sixty-Four Thousand Seven Hundred Forty-Six Dollars and Forty-Three Cents ($263,364,746.43) in original principal amount of New GO Bonds, (b) Two Hundred Sixty-Three Million Three Hundred Eighty Five Hundred Forty-Five Dollars and Forty-Six Cents ($263,380,545.46) in original principal amount of COFINA Junior Lien Bonds, and (c) the net recoveries by the Avoidance Actions Trust allocable to the Avoidance Actions CW Interests.

1.127    **CW/Convention Center Claim:**  The Claim against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to PRCCDA pursuant to the provisions of the Commonwealth Constitution, any statute, regulation, or executive order including claims related to the rights or obligations arising under (a) Section 8 of Article VI of the Commonwealth Constitution, 13 L.P.R.A. §2271v, 23 L.P.R.A. §104(c), and the Commonwealth of Puerto Rico Administrative Bulletin Nos. OE-2015-46, OE-2016-14, and OE-2016-31, and (b) the indebtedness issued by PRCCDA pursuant to that certain Trust Agreement, dated as of March 24, 2006, between PRCCDA and JPMorgan Chase Bank, N.A., as trustee.

1.128    **CW/HTA Claim:**  The Claim against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to HTA pursuant to the provisions of the Commonwealth Constitution, any statute, regulation, or executive order, including claims related to the rights or obligations arising under (a) Section 8 of Article VI of the Commonwealth Constitution, 9 L.P.R.A. §2021, 13 L.P.R.A. §31751 (a)(3)(C), 23 L.P.R.A. §104(c), and Commonwealth of Puerto Rico Administrative Bulletin Nos. OE-2015-46, OE-2016-14, OE-2016-18, OE-2016-30, and OE-2016-31 and (b) the indebtedness issued by HTA pursuant to that certain (i) Resolution No. 68-18, adopted June 13, 1968, and (ii) Resolution No. 98-06, adopted February 26, 1998.

1.129    **CW/MBA Claim:**  The Claim against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to MBA related to the rights or obligations arising under the provisions of the Commonwealth Constitution, any statute, regulation, or executive order.

1.130   **CW/PRIFA Rum Tax Claim:**  The Claim against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to PRIFA pursuant to the provisions of the Commonwealth Constitution, any statute, regulation, or executive order, including Claims related to the rights or obligations arising under (a) Section 8 of Article VI of the Commonwealth Constitution, 3 L.P.R.A. §1914, and Commonwealth of Puerto Rico Administrative Bulletin Nos. OE-2015-46, OE-2016-27, and OE-2016-30, and (b) the indebtedness issued by PRIFA pursuant to that certain Trust Agreement, dated as of October 1, 1988, between PRIFA and U.S. Bank Trust National Association, as successor trustee.

1.131   **Debt:**  Collectively, bonds, notes, loans and other evidences of indebtedness for borrowed money.

1.132   **Debt Management Policy:**  The policy developed by the Commonwealth relating to the issuance of indebtedness, as more fully described in the Debt Responsibility Act and herein.

1.133   **Debtors:**  Collectively, the Commonwealth, ERS and PBA.

1.134   **Debt Policy Period:**  The period commencing on the first (1st) calendar day immediately following the Effective Date and ending on the date on which there are no New GO Bonds Outstanding.

1.135   **Debt Policy Revenues:**  Collectively, without duplication, (a) revenues derived from taxes, fees, permits, licenses, fines or other charges imposed, approved or authorized by the Commonwealth Legislature, including, without limitation, any such revenue assigned to, or owned by, COFINA or any other  instrumentality of the Commonwealth, (b) all other revenues or monies deposited in the General Fund or any debt service or other governmental fund of the Commonwealth, and (c) all other revenues or funds identified as "Debt Policy Revenues" in the Debt Management Policy; provided, however, that, "Debt Policy Revenues" shall exclude (x) revenues and funds of (i) the Entities listed on Exhibit 79 to the CW Fiscal Plan, (ii) Commonwealth municipalities, and (iii) the Puerto Rico Municipal Finance Corporation, (y) proceeds from the issuance of bonds and other borrowings permitted under applicable law, and (z) funds transferred or received from the federal government other than federal excise tax revenues from rum produced in the Commonwealth and covered over to the General Fund; and, provided, further, that, for purposes of illustration, with respect to FY2019, and as reflected in the CW Fiscal Plan, "Debt Policy Revenues" were Sixteen Billion Seven Hundred Eight Million Seventy Thousand Dollars ($16,708,070,000.00), including, without limitation, all Sales Taxes.

1.136   **Debt Related Objections:**  Collectively, that certain (a) Omnibus Objection of (I) Financial Oversight and Management Board, Acting through Its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds, dated January 14, 2019 [Case No. 17-3283-LTS, ECF No. 4784], (b) Omnibus Objections of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, the Claims or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bond, dated May 21, 2019 [Case No. 17-3283-LTS, ECF No. 7057], (c) Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against

17

Commonwealth by Holders of Certain Puerto Rico Public Buildings Authority Bonds, dated July 18, 2019 [Case No. 17-3283-LTS, ECF No. 8141], (d) Omnibus Objection of the Lawful Constitutional Debt Coalition, Pursuant to Bankruptcy Code 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Bonds Issued or Guaranteed by the Commonwealth, dated January 8, 2020 [Case No. 17-3283-LTS, ECF. No. 9730], (e) Official Committee of Unsecured Creditors Omnibus Objection on Constitutional Debt Limit Grounds to (I) Claim of Government Development Bank for Puerto Rico [Claim Number 29485] Based on Certain Commonwealth-Issued Notices and on Commonwealth Guaranty of Certain Bonds Issued by Port of American Authority, (II) Claim of ScotiaBank de Puerto Rico [Claim Number 47658] Based on Full Faith and Credit Note Issued by Puerto Rico General Services Administration, and (III) Claims filed or Asserted Against Commonwealth Based on Commonwealth Guaranty of Certain Notes Issued by Puerto Rico Infrastructure Authority, dated January 8, 2020 [Case No. 17-3283-LTS, ECF No. 9735], solely as it related to the PRIFA BANs, (f) Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of General Obligation Bonds Asserting Priority Over Other Commonwealth Unsecured Creditors, dated February 3, 2020 [Case No. 17-3283-LTS, ECF No. 10638], and (g) any other (i) litigations or actions, including, without limitation, litigations or actions commenced to recover principal and/or interest with respect to the GO Bonds, the PBA Bonds and/or the PRIFA BANs, and (ii) any other objections or joinders to these or other such objections or joinders to these or such other objections or notices of participation that support the relief requested in such objections filed pertaining to the same form and counts of requested relief challenging, among other things, the validity and related rights of the GO Bonds, the PBA Bonds and/or the PRIFA BANs.

1.137   **Debt Responsibility Act:**  House Bill 2332, entitled "Puerto Rico Debt Responsibility Act", introduced in the House of Representatives of the Commonwealth on November 7, 2019, as such bill may be enacted.

1.138   **Debt Service Fund:**  The fund to be created pursuant to the New GO Bonds Indenture, and held by the New GO Bonds Trustee in trust for the benefit of the holders of the New GO Bonds, into which the Commonwealth shall deposit monthly such amounts equal to (a) one-sixth (1/6) of the semi-annual obligation with respect to the payment of interest to accrue on the New GO Bonds through the next interest payment date, and (b) one-twelfth (1/12) of the annual obligation with respect to the payment of principal on the New GO Bonds.

1.139   **Debt Service Reserve Fund:**  The fund created pursuant to the New GO Bonds Indenture, and held by the New GO Bonds Trustee in trust for the benefit of the holders of the New GO Bonds, into which the Debt Service Reserve Fund Requirement shall be deposited.

1.140   **Debt Service Reserve Fund Requirement:**  Five Hundred Thirty-Three Million Four Hundred Twenty-Nine Thousand Five Hundred Dollars ($533,429,500.00), the amount to be deposited (a) on the Effective Date or (b) over a five-year period in five (5) equal annual installments commencing on the Effective Date, which election shall be made, in the joint and absolute discretion of the Oversight Board and the Commonwealth, on or prior to the Effective Date, in accordance with the terms and conditions of the New GO Bonds Indenture.

1.141 **Definitive Documents:**  Collectively, the definitive documents and agreements contemplated by the Plan, including, without limitation, (a) the Plan (including any amendments, modifications and supplements thereto) and any documentation or agreements related thereto, (b) the Disclosure Statement, the Disclosure Statement Order, the Confirmation Order, and pleadings in support of entry thereof, (c) the New GO Bonds Indenture and documents or agreements related thereto, (d) the form of bonds for the New GO Bonds, (e) the COFINA Junior Lien Bonds Indenture and documents or agreements related thereto, (f) the form of bonds for the COFINA Junior Lien Bonds, (g) the documents or agreements related to the Pension Reserve and the governance thereof, and (h) each other document that will comprise the Plan Supplement, in all cases, the form and substance of which shall be acceptable to the Oversight Board in its sole and absolute discretion, and reasonably acceptable to AAFAF, the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group.

1.142 **Disallowed:**  With respect to any Claim, a Claim or any portion thereof that is not Allowed and (a) has been disallowed by a Final Order, (b) is zero, contingent, disputed, or undisputed and as to which no proof of claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Title III Court, (c) has been withdrawn by agreement of the applicable Debtor and the holder thereof, or (d) has been withdrawn by the holder thereof.

1.143 **Disbursing Agent:**  Such Entity or Entities designated by the Oversight Board, upon consultation with AAFAF, on or prior to the Effective Date to make or to facilitate distributions in accordance with the provisions of the Plan.

1.144 **Disclosure Statement:**  The disclosure statement relating to the Plan and approved by the Title III Court pursuant to section 1125 of the Bankruptcy Code, applicable to the Title III Cases pursuant to Section 301 of PROMESA.

1.145 **Disclosure Statement Hearing:**  The hearing held by the Title III Court to consider the adequacy of the information contained in the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA.

1.146 **Disclosure Statement Order:**  The order of the Title III Court (a) approving the form of the Disclosure Statement as containing adequate information in accordance with the provisions of section 1125 of the Bankruptcy Code, applicable to the Title III Cases pursuant to Section 301 of PROMESA, and (b) authorizing, among other things, the form and manner of solicitation of (i) acceptances and rejections to the Plan, and (ii) elections, if applicable, of distributions hereunder.

1.147 **Disputed Claim:**  A Claim against the Debtors or their Assets, to the extent the allowance of such Claim is the subject of a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise disputed by the Debtors in accordance with applicable law, and which objection, request for estimation, or dispute has not been withdrawn, with prejudice, or determined by a Final Order.

1.148   **Distribution Date:**  Except as otherwise set forth herein, the date or dates determined by the Commonwealth, on or after the Effective Date, upon which the Disbursing Agent shall make distributions to holders of Allowed Claims entitled to receive distributions under the Plan.

1.149   **Distribution Record Date:**  The Ballot Date or such other date as may be established by a separate order of the Title III Court, including the Confirmation Order; provided, however, that the "Distribution Record Date" shall not apply to any publicly held securities that will receive a distribution pursuant to the Plan through The Depository Trust Company.

1.150   **Effective Date:**  The first (1st) Business Day on which (i) all the conditions precedent to confirmation of the Plan specified in Section 67.1 of the Plan shall have been satisfied or waived, as provided in Section 67.2 of the Plan, and (ii) all the conditions precedent to the effectiveness of the Plan specified in Section 68.1 of the Plan shall have been satisfied or waived as provided in Section 68.2 of the Plan.

1.151   **Entity:**  A Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the office of the United States Trustee, or any other entity.

1.152   **ERS:**  Employees Retirement System of the Government of the Commonwealth of Puerto Rico.

1.153   **ERS Bond Claim:**  A Claim arising from or related to the ERS Bonds, including, without limitation, interest accrued thereon during the period up to, but not including, the ERS Petition Date.

1.154   **ERS Bond Collateral Cash:**  The amount of ERS Cash determined to be the collateral for payment of the ERS Bonds after any collateral has been sold to the Commonwealth in accordance with the terms and provision of Section 2.4 hereof.

1.155   **ERS Bonds:**  Collectively, (a) the non-recourse Senior Pension Funding Bonds, Series A, issued by ERS in the original principal amount of $1,588,810,799.60, (b) the non-recourse Senior Pension Funding Bonds, Series B, issued by ERS in the original principal amount of $1,058,634,613.05 and (c) the non-recourse Senior Pension Funding Bonds, Series C, issued by ERS in the original principal amount of $300,202,930.00, which, as of the ERS Petition Date, were in the aggregate outstanding principal amount of $3,168,792,696.00.

1.156   **ERS Bond Settlement:**  The settlement agreement elected, deemed or otherwise, by holders of Allowed Settling ERS Bond Claims and, in accordance therewith and in consideration therefor, to (a) relinquish its rights to receive distributions as a holder of claims in accordance with Class 48 of the Plan, (b) release and discharge the Commonwealth and the United States of America from any Claims and Causes of Action asserted, or which could have been asserted, in the ERS Takings Action and the ERS Litigation, and (c) accept the Plan as a holder of a Claim in Class 49 of the Plan.

1.157  **ERS Bond Settlement Distribution:**  A distribution to holders of ERS Bond Claims that elect, deemed or otherwise, the ERS Bond Settlement in an amount equal to twelve and seven-tenths percent (12.7%) of such holders' aggregate ERS Bond Claims, inclusive of payments of adequate protection made to holders of ERS Bond Claims in accordance with that certain (a) Joint Stipulation and Order, dated May 31, 2017, and (b) Joint Stipulation Regarding (I) Motion of Certain Secured Claimholders of Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Adequate Protection and Stay Relief and Reservation of Rights and (II) Motion of Debtors Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 for Entry of an Order Confirming Application of the Automatic Stay, Stay of Prepetition Lawsuits and Actions and Application of Contract Protections, dated July 14, 2017.

1.158  **ERS Cash:**  The amount of Cash available on the Effective Date comprised of (a) Cash in ERS accounts as of the Effective Date and (b) the proceeds of ERS assets transferred to the Commonwealth in accordance with the provisions of Section 2.4 hereof.

1.159  **ERS General Unsecured Claim:**  A Claim against ERS other than an ERS Bond Claim.

1.160  **ERS GUC Pool:**  The sum of (a) Five Million Dollars ($5,000,000.00) in original principal amount of New GO Bonds plus (b) the net recoveries by the Avoidance Actions Trust allocable to the Avoidance Actions ERS Interests; provided, however, that, under no circumstances, shall such aggregate amount of consideration, including, without limitation, net recoveries from the Avoidance Actions Trust allocable to the Avoidance Actions ERS Interests, exceed Ten Million Dollars ($10,000,000.00); and, provided, further, that, in the event that the aggregate amount of the ERS GUC Pool (y) exceeds the aggregate amount of Allowed ERS General Unsecured Claims or (z) would exceed Ten Million Dollars ($10,000,000.00) but for the limitation on recovery above, such excess amount or Avoidance Actions ERS Interests, as the case may be, shall be reallocated, on a pro rata basis, for the benefit of holders of Allowed CW/Convention Center Claims, Allowed CW/HTA Claims, Allowed CW/MBA Claims and Allowed CW/PRIFA Rum Tax Claims.

1.161  **ERS Litigation:**  Collectively, the litigation styled (a) Financial Oversight & Management Board for Puerto Rico, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico v. Andalusian Global Designated Activity Co., et al., Case Nos, 19-1699, 19-1700 (appealed from Adv. Proc. No. 17-00213), currently pending in the United States Court of Appeals for the First Circuit, (b) Financial Oversight & Management Board for Puerto Rico, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, et al. v. Andalusian Global Designated Activity Co., et al., Adv. Proc. No. 19-00366, currently pending in the Title III Court, (c) Omnibus Objection of Official Committee of Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Puerto Rico, dated March 12, 2019 [Case No. 17-3283-LTS, ECF No. 5580], currently pending in the Title III Court, (d) Omnibus Objection of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of ERS Bonds Against ERS and the Commonwealth, dated April 23, 2019 [Dkt No. 6482], currently pending in the Title III Court, (e) Special Claims Committee of the Financial Oversight & Management Board for Puerto Rico,

et al., v. Jefferies, LLC, et al., Adv. Proc. No. 19-00355, currently pending in the Title III Court, (f) Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, as Fiscal Agent (Claim No. 16775), dated May 22, 2019 [Case No. 17-3283-LTS, ECF No. 7075], currently pending in the Title III Court, (g) Andalusian Global Designated Activity Co., et al., v. Financial Oversight & Management Board for Puerto Rico, et al., Case No. 20-1065, currently pending in the United States Court of Appeals for the First Circuit, and (h) Administración de los Sistemos de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico v. UBS Fin. Servs. Inc. of Puerto Rico, Civ. No. KAC-2011-1067 (803), currently pending in the Commonwealth of Puerto Rico Court of First Instance, San Juan Part.

1.162   **ERS Participant Claim:**  A Claim on account of being or having been a participant in ERS for retiree benefits that accrued as of July 1, 2013; provided, however, that "ERS Participant Claim" shall not include Claims held by a Participant, whose hire date was on or after January 1, 2000, based on participation in System 2000.

1.163   **ERS Petition Date:**  May 21, 2017, the date on which the ERS Title III Case was commenced.

1.164   **ERS Recovery Actions:**  Collectively, the litigations styled: (a) Special Claims Committee of The Financial Oversight & Management Board for Puerto Rico, et al. v. Jefferies LLC, et al., Adv. Proc. No. 19-00355; (b) Special Claims Committee of The Financial Oversight & Management Board for Puerto Rico, et al. v. Defendant 1M, et al., Adv., Proc. No. 19-00356; (c) Special Claims Committee of The Financial Oversight & Management Board for Puerto Rico, et al. v. Stoever Glass & Co., et al., Adv. Proc. No. 19-00357; (d) Special Claims Committee of The Financial Oversight & Management Board for Puerto Rico, et al. v. Defendant 1F et al., Adv. Proc. No. 19-00358; (e) Special Claims Committee of The Financial Oversight & Management Board for Puerto Rico, et al. v. Defendant 1H et al., Adv. Proc. No. 19-00359; (f) Special Claims Committee of The Financial Oversight & Management Board for Puerto Rico, et al. v. Wells Fargo Securities, LLC et al., Adv. Proc. No. 19-00360; and (g) Special Claims Committee of The Financial Oversight & Management Board for Puerto Rico, et al. v. Defendant 1G, et al., Adv. Proc. No. 19-00361 each pending in the Title III Court.

1.165   **ERS Reserve:**  The reserve created on the Effective Date to hold distributions to be made for the benefit of holders of ERS Bonds Claims, pending resolution of the ERS Litigation pursuant to a Final Order.

1.166   **ERS Resolution:**  That certain Pension Funding Bond Resolution, adopted January 24, 2008, relating to the issuance of the ERS Bonds.

1.167   **ERS Takings Action:**  The litigation styled Altair Global Credit Opportunities Fund (A) LLC v. United States, Case No. 17-970C, currently pending in the United States Court of Federal Claims.

1.168   **ERS Title III Case:**  The Title III case under PROMESA pending for ERS in the Title III Court, captioned as In re Financial Oversight & Management Board for Puerto Rico, as

representative of the Employee Retirement System of the Government of the Commonwealth of Puerto Rico, Case No. 17 3566-LTS (D.P.R.).

1.169   **Excess Cash Surplus**:  The amount of actual cash surplus above and beyond the projected Fiscal Plan Surplus contained in the Fiscal Plan for the Commonwealth certified by the Oversight Board and being in effect as of the Effective Date.

1.170   **Executory Contract:**  A contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection in accordance with section 365 of the Bankruptcy Code, except as provided in Section 311 of PROMESA.

1.171   **FGIC:**  Financial Guaranty Insurance Company or its successor or designee.

1.172   **Final Order:**  An order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, remand proceeding, or other proceedings for a new trial, re-argument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, re-argument, or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed or remanded in part or in full, with no further proceedings on remand, by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, re-argument, or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the Local Bankruptcy Rules.

1.173   **First Dollars Funding**:  The allocation of "first dollars" collected from COFINA Pledged Taxes, including, without limitation, the criteria set forth in Section 16.5 of the COFINA Plan required to be satisfied in order to permit, among other things, quarterly deposits of "first dollars" collected from the COFINA Pledged Taxes.

1.174   **Fiscal Plan:**  A "Fiscal Plan" as defined by Section 5(10) of PROMESA.

1.175   **Fiscal Plan Surplus:**  The amount set forth on the line entitled **"Surplus/ (Deficit) Post Measures (excl. Debt Payments)"** of the Fiscal Plan for the Commonwealth certified by the Oversight Board and being in effect as of the Effective Date.

1.176   **Fixed Income:**  The annual dollar amount determined for each FY in accordance with Act 241 of the Commonwealth Legislature, approved November 15, 2018, as amended.

1.177   **FY:**  A fiscal year of the Commonwealth, commencing on July 1st and concluding on June 30th of the following calendar year.

1.178   **GDB:**  The Government Development Bank for Puerto Rico.

1.179   **General Fund:**  The Commonwealth's primary operating fund.

1.180   **General Unsecured Claims:**  Collectively, CW General Unsecured Claims and ERS General Unsecured Claims.

1.181   **GO Bond Claim:**  A Bond Claim on account of a GO Bond, other than a GO Bond Claim (Insured).

1.182   **GO Bond Claim (Insured):**  A Bond Claim on account of a GO Bond, the scheduled repayment of which has been insured by a Monoline, including pursuant to a secondary market insurance policy.

1.183   **GO Bonds:**  Collectively, general obligation bonds issued by the Commonwealth.

1.184   **GO Group:**  The Ad Hoc Group of General Obligation Bondholders consisting of Aurelius Capital Management, LP, and Autonomy Capital (Jersey) L.P., each on behalf of itself or on behalf of its participating clients or certain of its respective managed funds and, in each case, their respective successors and assigns with respect to transfers made in accordance with the terms and conditions of the Plan Support Agreement.

1.185   **Government Parties:**  Collectively, (a) the Oversight Board, as the representative of the Debtors, (b) committees and subcommittees of the Oversight Board, including, without limitation, the Special Claims Committee of the Oversight Board, (c) the Debtors, and (d) AAFAF.

1.186   **Government Released Claims:**  Collectively, any and all Claims, demands, rights, liabilities, or Causes of Action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, whether asserted or unasserted, which any Person, or anyone claiming through them, on their behalf or for their benefit have or may have or claim to have, now or in the future, against any Government Releasee arising from, related to, or in connection with the Debtors, Claims (including, without limitation, Claims arising from or relating to the PBA Bonds and the GO Bonds), the Debt Related Objections, the PBA Litigation, and the ERS Litigation, and arising prior to the Effective Date; provided, however, that "Government Released Claims" shall not include any and all rights, privileges, Claims, demands, liabilities, or Causes of Action of any and every kind, character or nature whatsoever (a) against (i) the Debtors (or their successors, including Reorganized Commonwealth) or COFINA arising from or relating to the Debtors' obligations pursuant to the Plan or the securities to be issued pursuant to the Plan or (ii) a Government Party unrelated to the Debtors or the Claims discharged pursuant to the terms and provisions of the Plan, (b) arising from or related to any act or omission that constitutes intentional fraud or willful misconduct or (c) any Claims arising from or related to claims or bonds issued by HTA, MBA, PFC, PRASA, PRCCDA and Prepa, other than CW/Convention Center Claims, CW/HTA Claims, CW/MBA Claims and CW/PRIFA Rum Tax Claims.

1.187   **Government Releasees:**  Collectively, the Government Parties and the Debtors, including all instrumentalities, municipalities, public corporations and public agencies of the Commonwealth, together with their respective current or former board members, directors, principals, agents, officers, employees, advisors and professionals, including, without limitation,

any and all advisors and professionals retained by the Government Parties in connection with the Title III Cases in their capacities as such; provided, however, that, notwithstanding the foregoing, "Government Releases" shall not include HTA, MBA, PFC, PRASA, PRCCDA and PREPA solely with respect to any Claims or bonds issued by such Entities, other than CW/Convention Center Claims, CW/HTA Claims, CW/MBA Claims and CW/PRIFA Rum Tax Claims.

1.188   **Gracia Gracia Claim:**  A Claim of a member of the class of vehicle owners who purchased private insurance after paying the compulsory insurance premium, certified in the Gracia Gracia CW Action and Gracia Gracia Federal Action.

1.189   **Gracia Gracia CW Action:**  The litigation styled García Rubiera, et al. v. Asociación de Subcripcion Conjunta del Seguro de Responsabilidad Obligatorio, et al., Civil Núm.: KDP2001-1441(801), currently pending in the Puerto Rico Court of First Instance.

1.190   **Gracia Gracia Federal Action:**  The litigation styled García Rubiera, et al. v. Fortuño, et al., Case No.: 02-1179-GAG, currently pending in the United States District Court for the District of Puerto Rico.

1.191   **Gracia Gracia Settlement:**  Collectively, the settlement reached and approved in (a) the Gracia Gracia CW Action pursuant to that certain Joint Motion on Partial Agreement and Stipulation, dated March 29, 2016, as approved pursuant to that certain Partial Judgment, dated July 8, 2016 and (b) the Gracia Gracia Federal Action pursuant to that certain Stipulation for Permanent Injunction, dated February 29, 2016, as approved pursuant to that certain Judgment, dated March 1, 2016.

1.192   **GSA Helicopter Loan:**  The loan extended pursuant to that certain Credit Agreement, dated as of December 26, 2013, between the General Services Administration of the Commonwealth and Scotiabank de Puerto Rico, which, as of the Commonwealth Petition Date, was in the outstanding principal amount of approximately Thirty-Three Million Two Hundred Seventy Thousand Four Hundred Fifty-One Dollars ($33,270,451.00).

1.193   **HTA:**  Puerto Rico Highways and Transportation Authority.

1.194   **HTA Title III Case:**  The Title III case under PROMESA pending in the Title III Court, captioned as In re Financial Oversight & Management Board for Puerto Rico as representative of the Puerto Rico Highways & Transportation Authority, Case No. 17-3567-LTS (D.P.R.).

1.195   **Initial PSA Creditors:**  Collectively, those PSA Creditors which executed the Plan Support Agreement on or prior to February 9, 2020.

1.196   **Invalidity Actions:**  Collectively, the adversary proceedings challenging the validity of certain GO Bonds, PBA Bonds, and PRIFA BANs listed on Exhibit "C" hereto.

1.197   **IRC:**  The United States Internal Revenue Code of 1986, as amended from time to time.

1.198   **IRS:**  The Internal Revenue Service, an agency of the United States Department of Treasury.

1.199   **Joinder Agreement:**  That certain Joinder Agreement annexed as Exhibit "F" to the Plan Support Agreement pursuant to which certain holders of GO Bonds, PBA Bonds, and PRIFA BANs may become PSA Creditors.

1.200   **Joinder Creditors:**  Collectively, those PSA Creditors that executed and delivered either the Joinder Agreement or the Annex Agreement prior to the Joinder Deadline.

1.201   **Joinder Deadline:**  February 28, 2020, at 11:59p.m., New York Time, or such later date and time as agreed upon by the Oversight Board and the Initial PSA Creditors.

1.202   **JRS:**  Judiciary Retirement System.

1.203   **JRS Participant Claim:**  A Claim on account of being or having been a Participant in JRS for (a) retiree benefits accrued as of May 3, 2017, and (b) any additional retiree benefits in JRS that such Participant would be entitled to receive upon the Participant's future retirement.

1.204   **LCDC:**  The Lawful Constitutional Debt Coalition consisting of Aristeia Capital, LLC, Farmstead Capital Management, FCO Advisors LP, GoldenTree Asset Management LP, Marble Ridge Capital, Monarch Alternative Capital LP, Taconic Capital Advisors L.P., and Whitebox Advisors L.L.C., each on behalf of itself or certain of its respective managed funds and, in each case, their respective successors and assigns with respect to transfers made in accordance with the terms and conditions of the Plan Support Agreement.

1.205   **Lien:**  Any charge against or interest in property to secure payment of a debt or performance on an obligation.

1.206   **Lien Challenge Actions:**  Collectively, the adversary proceedings listed on Exhibit "D" hereto.

1.207   **List of Creditors:**  The Creditor List (together with all summaries, notes, and schedules) attached as Exhibit A to the (a) *Notice of Filing of Creditor List for the Commonwealth of Puerto Rico* filed in the Commonwealth Title III Case [Case No. 17-3283-LTS, ECF No. 1215], (b) *Notice of Filing of Creditor List for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico* filed in the ERS Title III Case [Case No. 17-3566-LTS, ECF No. 207], and (c) *Notice of Filing of Creditor List for The Puerto Rico Public Buildings Authority* filed in the PBA Title III Case [Case No. 19-5523-LTS, ECF No. 34] pursuant to sections 924 and 925 of the Bankruptcy Code, as such lists, summaries, notes, or schedules have been or may be amended, restated, supplemented or otherwise modified by the Debtors.

1.208   **Local Bankruptcy Rules:**  The Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico and, to the extent applicable to the Title III Case, the Local District Court Rules for the District of Puerto Rico, each as amended from time to time.

1.209   **Maximum Annual Debt Service:**  The maximum scheduled annual debt service (including principal and interest payments due and payable on bonds bearing current interest and, in the case of capital appreciation bonds or similar instruments, the maturity value due and payable on such instruments) for any FY on Net Tax-Supported Debt; provided, however, that, in the case of variable rate Debt, the calculation shall assume that such Debt bears interest at the maximum annual rate permitted by law; and, provided, further, that, to the extent no provision or clarification increases the Comprehensive Cap, including the secured and/or securitized debt sublimit above the levels set forth in Section 57.4 hereof, the Debt Management Policy may establish additional provisions or clarifications regarding the calculation of the Maximum Annual Debt Service.

1.210   **Maximum Taxable Bond Election Amount:**  The amount of New GO Bonds required, after consultation with Section 103 tax counsel and determination by Internal Revenue Service, to be issued as non-exempt for federal income tax purposes.

1.211   **Medicine Bonus:**  The bonus, if any, payable to current, former, active, inactive and disabled employees of the Commonwealth, its agencies and instrumentalities in accordance with Act No. 155-2003, codified at 3 L.P.R.A. §757j, as amended by Act No. 3-2013, 3 L.P.R.A. §761.

1.212   **Medicine Insurance Benefit:**  The monthly allowance of One Hundred Dollars ($100.00) provided to all pre-Act No. 3-2013 eligible ERS, JRS and TRS Participant who have a government approved health insurance policy, which allowance is paid directly to the insurance company.

1.213   **Monolines:**  Collectively, Ambac, Assured, FGIC, National and Syncora, as insurers of GO Bonds, PBA Bonds or other Claims or securities issued by the Debtors, as applicable.

1.214   **Monthly Base Pension:**  The amount of the monthly pension payment made, or to be made, to a Participant, but expressly excluding all other benefits, including, without limitation, the Christmas Bonus, the Summer Bonus, the Medicine Bonus and the Medical Insurance Benefit.

1.215   **Monthly Benefit Modification:**  The modification, commencing on the Benefit Reduction Date, of monthly retirement benefit payments that exceed the Threshold as follows: (a) by reduction of the Monthly Christmas Bonus until the Threshold is reached or the Reduction Percentage is reached, or the Monthly Christmas Bonus is entirely eliminated, whichever occurs first as the Participant's Total Monthly Benefits is reduced; (b) in the event that the Participant's Total Monthly Benefit is still in excess of the Threshold and the Reduction Percentage has not been attained following elimination of the Monthly Christmas Bonus, by reduction of the Monthly Summer Bonus until the Threshold is reached or the Reduction Percentage is reached, or the Summer Bonus is entirely eliminated, whichever occurs first as the Participant's Total Monthly Benefit is reduced; (c) in the event that the Participant's Total Monthly Benefit is still in excess of the Threshold and the Reduction Percentage has not been attained following elimination of the Monthly Christmas Bonus and the Monthly Summer Bonus, by reduction of the Monthly Medicine Bonus until the Threshold is reached or the Reduction Percentage is reached, or the Monthly Medicine Bonus is entirely eliminated, whichever occurs first as the

Participant's Total Monthly Benefit is reduced; and (d) in the event that the Participant's Total Monthly Benefit is still in excess of the Threshold and the Reduction Percentage has not been attained after elimination of the Monthly Christmas Bonus, Monthly Summer Bonus, and Monthly Medicine Bonus, by reduction of the Monthly Base Pension until the Reduction Percentage is attained; provided, however, that application of the remaining Reduction Percentage to the Monthly Base Pension shall not reduce a Participant's Total Monthly Benefit below the Threshold; and, provided, further, that (i) adjustments for Social Security and the receipt thereof, and (ii) the Monthly Medical Benefit shall be excluded from the calculation of the foregoing; and, provided, further, that, notwithstanding anything contained herein to the contrary, accrued pension benefits earned by Participants from and after May 4, 2017, shall not be subject to reduction.

1.216   **Monthly Christmas Bonus:**  The amount equal to one-twelfth (1/12) of the annual Christmas Bonus, if any.

1.217   **Monthly Medicine Bonus:**  The amount equal to one-twelfth (1/12) of the annual Medicine Bonus, if any.

1.218   **Monthly Summer Bonus:**  The amount equal to one-twelfth (1/12) of the annual Summer Bonus, if any.

1.219   **National:**  National Public Finance Guarantee Corporation, or its successor or designee.

1.220   **Net Tax-Supported Debt:**  Any Tax-Supported Debt, excluding any (a) Debt guaranteed by the good faith, credit and taxing power of the Commonwealth that is not payable from or secured by Debt Policy Revenues requiring its continued payment from non-Debt Policy Revenues, to the extent that the Commonwealth's guarantee has not been drawn upon in the five (5) most recently completed FYs, and (b) Debt being refinanced through the proceeds of the proposed bond or note issuance.

1.221   **New GO Bonds:**  Collectively, the general obligation bonds, the payment for which the Commonwealth has pledged its good faith, credit and taxing power under the Puerto Rico Constitution and applicable Puerto Rico law, to be issued on the Effective Date by the Commonwealth in accordance with the terms and conditions of the Plan, the Confirmation Order, the New GO Bonds Indenture, and, to the extent enacted, the New GO Bonds Legislation, including, without limitation, any refunding bonds which may be issued in accordance with the New GO Bonds Indenture and the New GO Bonds Legislation.

1.222   **New GO Bonds Indenture:**  The indenture to be executed and delivered on or prior to the Effective Date pursuant to which the Commonwealth shall issue the New GO Bonds, and including all of the terms and provisions in connection therewith, as it may be amended, supplemented or modified from time to time in accordance with its terms and conditions.

1.223   **New GO Bonds Legislation:**  The legislation to be enacted on or prior to the Effective Date authorizing certain transactions contemplated by, and consistent with, the Plan, including, without limitation, legislation authorizing the issuance of the New GO Bonds and

incorporating such other terms as set forth in Section 57.1 hereof, and the Debt Responsibility Act.

1.224   **New GO Bonds Trustee:**  The trustee or replacement trustee, as the case may be, appointed in accordance with the terms and conditions of the New GO Bonds Indenture.

1.225   **New GO Refunding Bonds:**  The securities which may be issued by Reorganized Commonwealth from and after the Effective Date, for the purpose of refinancing, in whole or in part, New GO Bonds or securities previously issued to refinance New GO Bonds, provided that, (a) the final maturity date on any such refinancing securities shall not be later than thirty (30) years from the original scheduled final maturity date of the New GO Bonds, and (b) upon the issuance of any such securities, the annual debt service due in the then-current and each future fiscal year on all New GO Bonds and New GO Refunding Bonds outstanding after the issuance of the New GO Refunding Bonds shall be equal to or less than the annual debt service due in the then-current and each future fiscal year through FY 2039, respectively, on all New GO Bonds and New GO Refunding Bonds outstanding prior to such issuance.

1.226   **Non-Settling ERS Bondholders:**  Collectively, holders of ERS Bond Claims who do not elect to participate in the settlement, if any, applicable to their Claims.

1.227   **Ordinary Course Employee Claim:**  A Claim held by an employee of the Debtors related to ordinary course employment matters, including, without limitation, a Claim related to termination, holiday pay, vacation, sick leave, back-pay, or other similar Claims; provided, however, that, an "Ordinary Course Employee Claim" shall not include Claims related to retiree benefits.

1.228   **Outstanding:**  Debt that (i) has not been paid in full in accordance with its terms or (ii) has not been legally defeased in accordance with the defeasance requirements set forth in the applicable definitive issuance documents.

1.229   **Oversight Board:**  The Financial Oversight and Management Board for Puerto Rico established pursuant to Section 101 of PROMESA, as the Debtors' representative in their respective Title III Cases pursuant to Section 315(b) of PROMESA.

1.230   **Participant:**  A current, former, active, inactive, or disabled employee of the Commonwealth and its agencies and instrumentalities, who holds an accrued claim for one or more retirement benefits on account of being or having been a participant in ERS JRS, or TRS, together with its beneficiaries, if any.

1.231   **PayGo:**  The pay-as-you-go pension created in accordance with Act 106 of 2017.

1.232   **PBA:**  Puerto Rico Public Buildings Authority.

1.233   **PBA Administrative Expense Claim:**  The Claim of PBA against the Commonwealth relating to the Commonwealth's use and occupancy of PBA Property during the period from the commencement of the Commonwealth's Title III Case up to and including the Effective Date.

1.234   **PBA Bond Claims:**  Collectively, the Claims against PBA arising from or relating to the PBA Bonds, including the Vintage PBA Bond Claims, the Vintage PBA Bond Claims (Insured), the 2011 PBA Bond Claims, the 2012 PBA Bond Claims, and the Retail PBA Bond Claims.

1.235   **PBA Bond Distribution:**  The distribution of Cash to holders of Allowed PBA Bond Claims in an amount equal to the Allowed PBA Administrative Expense Claim.

1.236   **PBA Bonds:**  Collectively, the 2011 PBA Bonds, the 2012 PBA Bonds and the Vintage PBA Bonds.

1.237   **PBA Cash:**  One Billion Seventy-Three Million Dollars ($1,073,000,000.00), the amount paid by the Commonwealth in connection with the compromise and settlement of the Allowed PBA Administrative Expense Claim.

1.238   **PBA/DRA Secured Claim:**  Collectively, the loans allegedly made by GDB to PBA, which, as of the PBA Petition Date, were in the outstanding principal amount of Sixty-Six Million Two Hundred Twenty-Two Thousand Twenty-Eight Dollars ($66,222,028.00), the repayment of which is asserted to be secured by the proceeds of the sale or disposition of certain PBA Property and subordinated to all rights and recoveries with respect to the PBA Bonds.

1.239   **PBA/DRA Unsecured Claim:**  Collectively, the subordinated loans allegedly made by GDB, to PBA, which, as of the PBA Petition Date, were in the outstanding principal amount of One Hundred Thirty-Four Million Three Hundred Fifty-Seven Thousand Four Hundred Ninety-Eight Dollars ($134,357,498.00).

1.240   **PBA General Unsecured Claim:**  A Claim against PBA, other than a PBA Bond Claim, a PBA Bond Claim (Insured), a PBA/DRA Secured Claim and a PBA/DRA Unsecured Claim, but including Ordinary Course Employee Claims against PBA.

1.241   **PBA Litigation:**  The adversary proceeding styled The Financial Oversight & Management Board of Puerto Rico v. Puerto Rico Public Buildings Authority, Adv. Proc. No. 18-00149, currently pending in the Title III Court.

1.242   **PBA Petition Date:**  September 27, 2019, the date on which the PBA Title III Case was commenced.

1.243   **PBA Property:**  All property for which any right, title or interest currently resides in PBA, including, without limitation, the buildings and other facilities owned or leased by PBA.

1.244   **PBA Title III Case:**  The Title III case under PROMESA pending in the Title III Court, captioned as In re Financial Oversight & Management Board for Puerto Rico as representative of Puerto Rico Public Buildings Authority, Case No. 19-5523-LTS (D.P.R).

1.245   **Pension Reserve Deed of Trust:**  The deed of trust to be executed and delivered on or prior to the Effective Date, reasonably acceptable to the Government of Puerto Rico, the Retiree Committee, and labor organizations party to plan support agreements for the Plan, substantially in the form included in the Plan Supplement, providing for, among other things,

creating the Pension Reserve Trust and providing for the terms for the deposit and withdrawal of monies in the Pension Reserve Trust for the benefit of the Retirees.

1.246   **Pension Reserve Trust:**  The reserve trust to be created in accordance with the terms and conditions of Article LXV hereof, which reserve trust shall be utilized for payment of the Commonwealth's pension obligations under Act 106.

1.247   **Person:**  An individual, general partnership, limited partnership, corporation, limited liability company, limited liability partnership, cooperative, trust, unincorporated organization, association, joint stock company, joint venture, estate, government, or agency or political subdivision thereof, or any other form of legal entity.

1.248   **PFC:**  Puerto Rico Public Finance Corporation.

1.249   **Plan:**  This Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al., including, without limitation, the exhibits and schedules hereto, as the same is amended, supplemented, or modified from time to time in accordance with the provisions of PROMESA, the Bankruptcy Code and the terms hereof.

1.250   **Plan Supplement:**  A separate volume, to be filed with the Clerk of the Title III Court, including, among other documents, forms of the New GO Bonds and the COFINA Junior Lien Bonds and, if not previously enacted, the draft of the New GO Bonds Legislation and the COFINA Junior Lien Bonds Legislation, respectively, which, in each case, shall be in form and substance reasonably satisfactory to AAFAF, the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group.  The Plan Supplement (containing draft or final versions of the foregoing documents) shall be filed with the Clerk of the Title III Court as soon as practicable (but in no event later than seven (7) days) prior to the Ballot Date, or on such other date as the Title III Court establishes.  The Plan Supplement shall be deemed incorporated into and part of the Plan as if set forth herein in full.

1.251   **Plan Support Agreement:**  That certain Plan Support Agreement, dated as of February 9, 2020, by and among the Oversight Board and the PSA Creditors, it may be amended, modified, or supplemented in accordance with the terms thereof.

1.252   **Ports:**  Ports of the Americas Authority.

1.253   **PRASA:**  Puerto Rico Aqueduct and Sewer Authority.

1.254   **PRCCDA:**  Puerto Rico Convention Center District Authority.

1.255   **PREPA:**  The Puerto Rico Electric Power Authority.

1.256   **PRIFA:**  Puerto Infrastructure Financing Authority.

1.257   **PRIFA BANs:**  Collectively, the PRIFA Bond Anticipation Notes, Series 2015, issued pursuant to that certain Trust Agreement dated March 2015, between PRIFA and the Bank of New York Mellon as trustee.

1.258   **PRIFA BANs Litigation:**  The litigation styled <u>The Financial Oversight and Management Board for Puerto Rico v. The Bank of New York Mellon, et al.</u>, Adv. Pro. No. 19-AP-269-LTS, currently pending in the Title III Court.

1.259   **Professional:**  An Entity (a) to be compensated for services rendered prior to or on the Effective Date pursuant to Sections 316 and 317 of PROMESA, and (i) employed in the Title III Cases by the Government Parties (in the Government Parties' sole discretion); or (ii) employed in the Title III Cases by the Oversight Board (in the Oversight Board's sole discretion); or (b) for which compensation and reimbursement has been Allowed by the Title III Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.260   **Professional Claim:**  A Claim by a Professional seeking an award by the Title III Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 316 and 317 of PROMESA.

1.261   **PROMESA:**  The Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016), 48 U.S.C. § 2101, et. seq., as it may be amended or modified.

1.262   **Pro Rata Share:**  With respect to Allowed Claims (a) among and within Classes within the same Bond Recovery Category set forth in Exhibit "L" hereto, the proportion that an Allowed Claim bears to the sum of all Allowed Claims within such Class (or within all Classes within such Bond Recovery Category, as applicable), taking into account, and reducing for, unmatured interest thereon as of the Commonwealth Petition Date or the PBA Petition Date, as the case may be, with respect to individual bonds within such Class, and (b) among more than one Class, but not within the same Bond Recovery Category, the proportion that Allowed Claims within such Class of Claims receive in consideration bears to the sum of consideration received by all Claims within all applicable Classes.

1.263   **PSA Creditors:**  Collectively, the parties to the Plan Support Agreement, other than the Government Parties.

1.264   **PSA Restriction Fee Creditors:**  Collectively, the Initial PSA Creditors and the Joinder Creditors that execute the Plan Support Agreement, the Joinder Agreement or the Annex Agreement at or prior to the PSA Threshold Attainment.

1.265   **PSA Restriction Fee Period:**  The period from February 9, 2020 up to and including the earlier to occur of (a) the PSA Threshold Attainment and (b) the Joinder Deadline.

1.266   **PSA Restriction Fees:**  Collectively, the amounts to be paid, in Cash, on the Effective Date to PSA Restriction Fee Creditors in accordance with the terms and conditions of the Plan Support Agreement, Section 3.5 hereof and the Confirmation Order, which fees, in the aggregate, shall not exceed Three Hundred Fifty Million Dollars ($350,000,000.00) <u>minus</u> such amount as may be payable on account of Consummation Costs; <u>provided</u>, <u>however</u>, that, notwithstanding the foregoing, in accordance with the provisions of Section 3.6 hereof, such aggregate amount may be increased on account of the Retail Support Fee Return, with such additional amount being redistributed in accordance with the provisions of Section 3.6 hereof.

1.267 **PSA Threshold Attainment:** The date and time at which PSA Restriction Fee Creditors own or have due investment management responsibility and authority for funds or accounts which own seventy percent (70%) of the aggregate amount of CW Bond Claims, PBA Bond Claims, and CW Guarantee Bond Claims (without duplication and, to the extent any such claims are CW Bond Claims (Insured) or CW Guarantee Bond Claims (Insured), solely to the extent a PSA Creditor is authorized to vote any such claim in accordance with the definitive insurance documents and applicable law).

1.268 **Puerto Rico Investor:** A holder of a CW Bond Claim, a PBA Bond Claim, or a CW Guarantee Bond Claim that is, or that is wholly owned by or the sole beneficial owner of which is, a natural person(s) and resident(s) of the Commonwealth of Puerto Rico for purposes of payment of Puerto Rico personal income taxes (as determined by the Oversight Board in its sole and absolute discretion).

1.269 **QTCB Group:** The QTCB Noteholder Group consisting of Canyon Capital Advisors LLC, Sculptor Capital LP, and Davidson Kempner Capital Management LP, each on behalf of itself or on behalf of its participating clients or certain of its respective managed funds and, in each case, their respective successors and assigns with respect to transfers made in accordance with the terms and conditions of the Plan Support Agreement.

1.270 **Reduction Percentage:** The lesser of (a) (i) the lesser of eight and one-half percent (8.5%) of the Total Monthly Benefit or (ii) the reduction of the Total Monthly Benefit to One Thousand Two Hundred Dollars ($1,200.00) per month and (b) twenty-five percent (25%) of the difference of the Total Monthly Benefit plus the Monthly Medical Insurance benefit if any, minus either (A) One Thousand Dollars ($1,000.00) for those Participants without Social Security benefits or (B) Six Hundred Dollars ($600.00) per month for those Participants with Social Security benefits; provided, however, that, in the event that any of Classes 36A through 36D reject the Plan, the "Reduction Percentage" for any such rejecting Class shall be ten percent (10.0%) of the Total Monthly Benefit; and, provided, further, that, for all calculation purposes, and until certified financial information subsequent to July 1, 2016 is provided, Participant pension and other benefit information as of July 1, 2016 shall be used for the calculation of benefits pursuant to the Plan.

1.271 **Related Persons:** With respect to any Entity (including for the avoidance of doubt, the Commonwealth and the Government Parties), its predecessors, successors and assigns (whether by operation of law or otherwise) and their respective current and former Affiliates and such Entity's and its current and former Affiliate's current and former employees, managers, elected or appointed officials, directors, officers, board members, principals, members, equity holders (whether such interests are held directly or indirectly), partners, financial advisors, attorneys, accountants, consultants, agents and professionals (including, without limitation, any and all Professionals retained by the Debtors and AAFAF), or other representatives, nominees or investment managers, each acting in such capacity, and any Entity claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals), each in its respective capacity as such.

1.272 **Released Claims:** Collectively, (a) with respect to those Entities party to the Plan Support Agreement, Claims and Causes of Action released hereunder and in accordance with the Plan Support Agreement, (b) Claims and Causes of Action that arise in, are related to or have

been or could have been asserted against the Debtors or their Assets in the Title III Cases, (c) Claims and Causes of Action that have been or could have been asserted by the Debtors (with respect to releases given by the Debtors) and by Creditors or the Government Parties relating to Claims they have against the Released Parties (with respect to releases given by Releasing Parties), and (d) Claims that otherwise arise from or relate to the Title III Cases, the Plan, the Plan Support Agreement, the Retiree Committee Plan Support Agreement, the AFSCME Plan Support Agreement, and the compromises set forth herein, including, without limitation, in connection with or related to any of the Government Parties, and their respective subsidiaries, assets, liabilities, operations, or property; provided, however, that, "Released Claims" is not intended to include, nor shall it have the effect of including, Claims or Causes of Action unrelated to the Debtors or Claims or Causes of Action for gross negligence, willful misconduct or intentional fraud asserted, or that could have been asserted, whether sounding in contract or tort; and, provided, further, that "Released Claims" is not intended to release, nor shall it have the effect of releasing, any party from the performance of its obligations in accordance with the Confirmation Order or the Plan, including, without limitation, performance of obligations arising from or related to New GO Bonds, the New Refunding Bonds, the COFINA Junior Lien Bonds or under any policy of insurance or related documents issued by a Monoline.

1.273   **Released Parties:**  Collectively, solely to the extent provided in the Plan, (a) the Government Parties, (b) the PSA Creditors, (c) the Retiree Committee, (d) AFSCME and (e) with respect to the foregoing clauses (a) through (d), each of their respective Related Persons.

1.274   **Releasing Parties:**  Collectively, solely to the extent provided in the Plan, (a) all holders of Claims against the Debtors or their Assets; (b) such holders' current and former Affiliates and (c) with respect to the foregoing clauses (a) and (b), each such Entity's current and former Related Persons.

1.275   **Reorganized Commonwealth:**  The Commonwealth, from and after the Effective Date.

1.276   **Reorganized Debtors:**  The Debtors, from and after the Effective Date.

1.277   **Reorganized Debtors' By-Laws:**  The by-laws of the Debtors, to the extent applicable.

1.278   **Restriction Fee Percentage:**  The percentage equal to (x) Three Hundred Fifty Million Dollars ($350,000,000.00) minus such amounts as may be payable on account of Consumption Costs divided by (y) the aggregate amount of CW Bond Claims, PBA Bond Claims, and CW Guarantee Bond Claims (without duplication and, to the extent any such Claims are Monoline-insured, solely to the extent a PSA Restriction Fee Creditor is authorized to vote any such Claim in accordance with the definitive insurance documents and applicable law) held by PSA Restriction Fee Creditors; provided, however, that, for purposes of distributions in accordance with the provisions of Section 3.5 hereof, the respective Claims held by a PSA Restriction Fee Creditor shall be based upon their pro rata share of the Claims deemed allowed in accordance with Section 2.2 hereof.

1.279 **Retail 2011 CW Bond Claim:** A 2011 CW Bond Claim held by a Retail Investor, provided that the aggregate amount of such holder's GO Bonds is equal to or less than One Million Dollars ($1,000,000.00).

1.280 **Retail 2011 CW Series D/E/PIB Bond Claim:** A Claim of 2011 CW Series D/E/PIB Bond Claim held by a Retail Investor, provided that the aggregate amount of such holder's GO Bonds is equal to or less than One Million Dollars ($1,000,000.00).

1.281 **Retail 2011 PBA Bond Claim:** A PBA Bond Claim held by a Retail Investor, provided that the aggregate amount of such holder's PBA Bonds is equal to or less than One Million Dollars ($1,000,000.00).

1.282 **Retail 2012 CW Bond Claim:** A 2012 GO Bond Claim held by a Retail Investor, provided that the aggregate amount of such holder's GO Bonds is equal to or less than One Million Dollars ($1,000,000.00).

1.283 **Retail 2012 PBA Bond Claim:** A 2012 PBA Bond Claim held by a Retail Investor, provided that the aggregate amount of such holder's PBA Bonds is equal to or less than One Million Dollars ($1,000,000.00).

1.284 **Retail 2014 CW Bond Claim:** A 2014 GO Bond Claim held by a Retail Investor, provided that the aggregate amount of such holder's GO Bonds is equal to or less than One Million Dollars ($1,000,000.00).

1.285 **Retail CW Bond Claims:** Collectively, the Retail Vintage CW Bond Claims, the Retail 2011 CW Bond Claims, the Retail CW Series D/E/PIB Bond Claims, the Retail 2012 CW Bond Claims and the Retail 2014 CW Bond Claims.

1.286 **Retail Investor:** An individual who purchased GO Bonds, PBA Bonds and/or CW Guarantee Bond Claims for his or her own brokerage account, trust account, custodial account or in a separately managed account.

1.287 **Retail PBA Bond Claims:** Collectively, the Retail Vintage PBA Bond Claims, the Retail 2011 PBA Bond Claims, and the Retail 2012 PBA Bond Claims.

1.288 **Retail Support Fee:** Collectively, that portion of the fees to be made available to Retail Investors, in accordance with the terms and conditions herein and the Confirmation Order, which fees, in the aggregate, shall not exceed Fifty Million Dollars ($50,000,000.00); provided, however, that, notwithstanding the foregoing, in accordance with the provisions of Section 3.6 hereof and the Confirmation Order, such aggregate amount may be decreased on account of the Retail Support Fee Return, with the aggregate amount of the Retail Support Fee Return being redistributed in accordance with the provisions of Section 3.6 hereof and the Confirmation Order.

1.289 **Retail Support Fee Return:** Collectively, that portion of the Retail Support Fee not allocated to classes of Retail Investors, which portion is then payable and reallocated to PSA Restriction Fee Creditors and members of Retail Investor Classes that voted to accept the Plan in accordance with the provisions of Section 3.6 hereof and the Confirmation Order.

1.290   **Retail Vintage CW Bond Claim:**  A Vintage CW Bond Claim held by a Retail Investor, provided that the aggregate amount of such holder's GO Bonds is equal to or less than One Million Dollars ($1,000,000.00).

1.291   **Retail Vintage PBA Bond Claim:**  A Vintage PBA Bond Claim held by a Retail Investor, provided that the aggregate amount of such holder's PBA Bonds is equal to be less than One Million Dollars ($1,000,000.00).

1.292   **Retiree:**  A person who, as of July 1, 2019 receives a pension or annuity as a Participant in ERS, JRS or TRS, but excluding any Participant in ERS whose hire date was on or after January 1, 2000; provided, however, that, under no circumstances shall a "Retiree" include a former employee of the Government of Puerto Rico who left public service and was not reimbursed for such person's contributions and/or any accrued benefit up to and including the date of separation.

1.293   **Retiree Claim:**  An ERS Participant Claim, a JRS Participant Claim or a TRS Participant Claim held by a Retiree.

1.294   **Retiree Committee:**  The committee of retired former employees of the Commonwealth, its agencies and instrumentalities appointed by the Office of the United States Trustee in the Commonwealth Title III Case.

1.295   **Retiree Committee Plan Support Agreement:**  That certain Plan Support Agreement, dated as of June 7, 2019, by and between the Debtor, by and through the Oversight Board, pursuant to Section 315(b) of PROMESA, and the Retiree Committee, as may be amended or supplemented by the parties thereto.

1.296   **Sales Tax:**  The sales and use tax, including any replacement or similar sales and use tax, imposed by the government of Puerto Rico pursuant to Sections 4020.01 and 4020.02 of Subchapter D of Act No. 1-2011, as amended, and known as the Internal Revenue Code for a New Puerto Rico.

1.297   **Section 510(b) Subordinated Claim:**  Any Claim, to the extent determined pursuant to a Final Order, against the Debtors' or their Assets arising from or relating to (a) rescission of a purchase or sale of an existing security of a Debtor or an Affiliate of a Debtor, (b) purchase, sale or retention of such a security, or (c) reimbursement, indemnification or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

1.298   **Securities Act:**  The Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state, or local law.

1.299   **Settling ERS Bond Claim:**  A Claim against ERS by a holder of an ERS Bond Claim that elects, deemed or otherwise, to participate in the ERS Bond Settlement.

1.300   **Solicitation Agent:**  Prime Clerk LLC, the notice, claims, and solicitation agent retained by the Debtors in the Title III Cases by Title III Court order.

1.301   **SPU:**  Servidores Publicos Unidos.

1.302 **Summer Bonus:** The bonus, if any, payable to current, former, active, inactive and disabled employees of the Commonwealth and its agencies and instrumentalities in accordance with Act No. 37-2001 codified at 3 L.P.R.A. §757g, as amended in accordance with Act No. 3-2013, 3 L.P.R.A. §761.

1.303 **Syncora:** Syncora Guarantee Inc., or its successor or designee.

1.304 **System 2000:** The pension contribution system implemented in accordance with Act No. 305-1999, codified at 3 L.P.R.A. §§786-1, et seq, or Act 3-2013.

1.305 **System 2000 Participant Claim:** A Claim that accrued under System 2000 or Act 3, by a Participant whose hire date was on or after January 1, 2000.

1.306 **Taxable Bond Distributions:** Collectively, the Vintage Taxable Bond Distribution, the 2011 CW Taxable Bond Distribution, the 2011 CW Series D/E/PIB Taxable Bond Distribution, the 2012 CW Taxable Bond Distribution, the 2014 CW Taxable Bond Distribution, the Vintage CW Guarantee Taxable Bond Distributions, the 2011 CW Guarantee Taxable Bond Distribution, the 2012 CW Guarantee Taxable Bond Distribution, and the 2014 CW Guarantee Taxable Bond Distribution.

1.307 **Taxable COFINA Junior Lien Bonds:** Collectively, the portion of the COFINA Junior Lien Bonds in the aggregate amount deemed necessary by the Oversight Board, after consultation with Section 103 tax counsel, to be issued as tax exempt under Puerto Rico law, but taxable in accordance with Section 103 of the IRC, which COFINA Junior Lien Bonds shall be issued as CIBs with an interest rate of six and one hundred twenty-five one thousandths percent (6.125%), payable semi-annually in arrears, and having a maturity of July 1, 2039, and be made available to Puerto Rico Investors with respect to the first One Million Dollars ($1,000,000.00) of aggregate holdings of (1) PBA Bond Claims, (2) CW Bond Claims, and (3) CW Guarantee Bond Claims (without duplication).

1.308 **Taxable Election CW Claims:** Collectively, the Vintage CW Bond Claims (Taxable Election), the Vintage CW Guarantee Bond Claims (Taxable Election), the 2011 CW Bond Claims (Taxable Election), the 2011 CW Guarantee Bond Claims (Taxable Election), the 2011 CW Series D/E/PIB Bond Claims (Taxable Election), the 2012 CW Bond Claims (Taxable Election), the 2012 CW Guarantee Bond Claims (Taxable Election), the 2014 CW Bond Claims (Taxable Election) and the 2014 CW Guarantee Bond Claims (Taxable Election).

1.309 **Taxable New GO Bonds:** Collectively, the portion of the New GO Bonds in the aggregate amount deemed necessary by the Oversight Board, after consultation with Section 103 tax counsel, to be issued as tax exempt under Puerto Rico law, but taxable in accordance with Section 103 of the IRC, which New GO Bonds shall be issued as CIBs with an interest rate of seven and one hundred twenty-five one thousandths percent (7.125%), payable semi-annually in arrears, and having a maturity of July 1, 2039 and be made available to Puerto Rico Investors with respect to the first One Million Dollars ($1,000,000.00) of aggregate holdings of (1) PBA Bond Claims, (2) CW Bond Claims, (3) CW Guarantee Bond Claims (without duplication).

1.310 **Tax-Supported Debt:** Collectively, without duplication, (a) direct Debt of the Commonwealth for the payment of which the good faith, credit and taxing power of the

Commonwealth has been pledged (including the New GO Bonds, (b) Debt issued by any Entity and guaranteed by the good faith, credit and taxing power of the Commonwealth, (c) Debt issued by any Entity (including the COFINA Senior Lien Bonds and the COFINA Junior Lien Bonds), whether or not guaranteed by the Commonwealth, that is secured by or payable from (i) Debt Policy Revenues or (ii) lease agreements with the Commonwealth or any agency thereof, whether or not subject to annual or periodic legislative appropriations, and (d) any other Debt identified as Tax-Supported Debt in the Debt Management Policy; provided, however, that the following shall not be considered Tax Supported Debt: (1) tax and revenue anticipation notes with a final maturity occurring within the same FY of their issuance; and (2) Debt issued to respond directly to damage or destruction and associated risks to the health, safety and welfare of the people of Puerto Rico caused by hurricanes, earthquakes or other natural disasters, pandemics, terrorism and similar emergencies; and, provided, further, and without limiting the foregoing, "Tax-Supported Debt" excludes (y) revenue bonds of an Entity payable solely from user charges or securitization and transition charges imposed upon customers or former customers of a utility or transportation system, including, without limitation, the self-supporting Debt of PRASA, PREPA, HTA or any related securitization entity, (z) any other Debt that is not payable from Debt Policy Revenues, pursuant to the Debt Management Policy, in each case, to the extent such Debt is not guaranteed by the good faith, credit and taxing power of the Commonwealth; and, provided, further, that, to the extent no provision or clarification increases the Comprehensive Cap, including the secured and/or securitized debt sublimit above the levels set forth in Section 57.4 hereof, the Debt Management Policy may contain additional provisions and clarifications regarding which Debt is considered Tax-Supported Debt.

     1.311   **Title III:**  Title III of PROMESA.

     1.312   **Title III Cases:**  Collectively, the Commonwealth Title III Case, the ERS Title III Case, and the PBA Title III Case.

     1.313   **Title III Court:**  The United States District Court of the District of Puerto Rico or such other court having jurisdiction over the Title III Cases.

     1.314   **Total Monthly Benefit:**  The amount of monthly pension benefits equal to the sum of (a) the Monthly Base Pension, (b) the Monthly Christmas Bonus, if any, (c) the Monthly Summer Bonus, if any, and (d) the Monthly Medicine Bonus.

     1.315   **TRS:**  Teachers Retirement System.

     1.316   **TRS Participant Claim:**  A Claim on account of being or having been a Participant in TRS for (a) retiree benefits accrued as of May 3, 2017, and (b) any additional retiree benefits in TRS that such Participant would be entitled to receive upon the Participant's future retirement.

     1.317   **Unclaimed Distribution:**  Any distribution to a Creditor that has not (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check, (b) given notice to the Debtors of an intent to accept a particular distribution, (c) responded to the Debtors' requests for information necessary to facilitate a particular distribution or (d) taken any other action necessary to facilitate such distribution.

1.318   **Unexpired Lease:**  A lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code, except as provided in Section 311 of PROMESA.

1.319   **Vintage CW Bond Claim:**  A Claim against the Commonwealth on account of Vintage CW Bonds, other than a Vintage CW Bond Claim (Insured) or a Retail Vintage CW Bond Claim.

1.320   **Vintage CW Bond Claim (Insured):**  A Claim against the Commonwealth on account of Vintage CW Bonds, the payment of principal and interest of which has been insured by a Monoline.

1.321   **Vintage CW Bond Claim (Taxable Election):**  A Vintage CW Bond Claim or a Retail Vintage CW Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, in the event that Taxable Bond Distributions are elected by Puerto Rico Investors holding CW Bond Claims and CW Guarantee Bond Claims in excess of the Maximum Taxable Bond Election Amount, such Vintage CW Bond Claim shall be a Vintage CW Bond Claim (Taxable Election) up to such Vintage CW Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a Vintage CW Bond Claim.

1.322   **Vintage CW Bond Recovery:**  The aggregate recovery by holders of Allowed Vintage CW Bond Claims, Allowed Vintage CW Bond Claims (Insured), and Allowed Retail Vintage CW Bond Claims, on account of such Claims, totaling Four Billion Three Hundred Seventy-Four Million Seven Hundred Nine Thousand One Hundred Nine Dollars and Twenty-Three Cents ($4,374,709,109.23), consisting of (a) Eight Hundred Eighteen Million Nine Hundred Seventy-Six Thousand Two Hundred Forty-Five Dollars and Sixteen Cents ($818,976,245.16) in Cash, (b) One Billion Seven Hundred Seventy-Seven Million Eight Hundred Thirteen Thousand One Hundred Seven Dollars and Twenty-Six Cents ($1,777,813,107.26) in original principal amount of New GO Bonds, and (c) One Billion Seven Hundred Seventy-Seven Million Nine Hundred Nineteen Thousand Seven Hundred Fifty-Six Dollars and Eighty-One Cents ($1,777,919,756.81) in original principal amount of COFINA Junior Lien Bonds.

1.323   **Vintage CW Bonds:**  Collectively, the following bonds issued by the Commonwealth: (a) the Public Improvement Bonds of 1998, issued in the original principal amount of Five Hundred Million Dollars ($500,000,000.00); (b) the Public Improvement Bonds of 1999, issued in the original principal amount of Four Hundred Seventy-Five Million Dollars ($475,000,000.00); (c) the Public Improvement Bonds of 2001, Series A, issued in the original principal amount of Two Hundred Seventy-Four Million One Hundred Thirty-Five Thousand Dollars ($274,135,000.00); (d) the Public Improvement Bonds of 2002, Series A, issued in the original principal amount of Four Hundred Fifty-Five Million Dollars ($455,000,000.00); (e) the Public Improvement Bonds of 2003, Series A, issued in the original principal amount of Four Hundred Sixty Million Dollars ($460,000,000.00); (f) the Public Improvement Bonds of 2004, Series A, issued in the original principal amount of Four Hundred Fifty-Seven Million One Hundred Seventy-Five Thousand Dollars ($457,175,000.00); (g) the Public Improvement Bonds of 2005, Series A, issued in the original principal amount of Four Hundred Forty Million Four Hundred Sixty Thousand Dollars ($440,460,000.00); (h) the Public Improvement Bonds of 2006,

Series A, issued in the original principal amount of Five Hundred Million Dollars ($500,000,000.00); (i) the Public Improvement Bonds of 2006, Series B, issued in the original principal amount of Thirty-Nine Million Three Hundred Eighty Thousand Dollars ($39,380,000.00); (j) the Public Improvement Bonds of 2007, Series A, issued in the original principal amount of Four Hundred Eight Million Eight Hundred Thousand Dollars ($408,800,000.00); (k) the Public Improvement Bonds of 2008, Series A, issued in the original principal amount of Two Hundred Fifty Million Dollars ($250,000,000.00); (l) the Public Improvement Refunding Bonds, Series 2011A, issued in the original principal amount of Three Hundred Fifty-Six Million Five Hundred Twenty Thousand Dollars ($356,520,000.00); (m) the Public Improvement Refunding Bonds, Series 1998, issued in the original principal amount of Five Hundred Three Million Nine Hundred Sixty-Three Thousand Two Hundred Sixty-Four Dollars ($503,963,264.00); (n) the Public Improvement Refunding Bonds, Series 2000, issued in the original principal amount of Fifty-Five Million Nine Hundred Ten Thousand Nine Hundred Ninety-Three Dollars ($55,910,993.00); (o) the Public Improvement Refunding Bonds, Series 2001, issued in the original principal amount of Three Hundred Thirty-Seven Million Two Hundred Thirty-Five Thousand Dollars ($337,235,000.00); (p) the Public Improvement Refunding Bonds, Series 2002A, issued in the original principal amount of Eight Hundred Thirty-Seven Million Nine Hundred Sixty Thousand Dollars ($837,960,000.00); (q) the Public Improvement Refunding Bonds, Series 2003A, issued in the original principal amount of Eighty-Nine Million Six Hundred Ten Thousand Dollars ($89,610,000.00); (r) the Public Improvement Refunding Bonds, Series 2003C-7, issued in the original principal amount of One Hundred Ninety-Four Million Six Hundred Ten Thousand Dollars ($194,610,000.00); (s) the Public Improvement Refunding Bonds, Series 2006A, issued in the original principal amount of One Hundred One Million Six Hundred Ninety-Five Thousand Dollars ($101,695,000.00); (t) the Public Improvement Refunding Bonds, Series 2006B, issued in the original principal amount of Three Hundred Thirty-Five Million Six Hundred Fifty Thousand Dollars ($335,650,000.00); (u) the Public Improvement Refunding Bonds, Series 2007A, issued in the original principal amount of Nine Hundred Twenty-Six Million Five Hundred Seventy Thousand Dollars ($926,570,000.00); (v) the Public Improvement Refunding Bonds, Series 2007A-4, issued in the original principal amount of Ninety-Three Million Eight Hundred Thirty-Five Thousand Dollars ($93,835,000.00); (w) the Public Improvement Refunding Bonds, Series 2008A, issued in the original principal amount of Seven Hundred Thirty-Five Million Fifteen Thousand Dollars ($735,015,000.00); (x) the Public Improvement Refunding Bonds, Series 2008C, issued in the original principal amount of One Hundred Ninety Million One Hundred Thirty-Five Thousand Dollars ($190,135,000.00); (y) the Public Improvement Refunding Bonds, Series 2009A, issued in the original principal amount of Three Million Four Hundred Twenty-Five Thousand Dollars ($3,425,000.00); (z) the Public Improvement Refunding Bonds, Series 2009B, issued in the original principal amount of Three Hundred Seventy-Two Million Six Hundred Eighty-Five Thousand Dollars ($372,685,000.00); and (aa) the Public Improvement Refunding Bonds, Series 2009C, issued in the original principal amount of Two Hundred Ten Million Two Hundred Fifty Thousand Dollars ($210,250,000.00).

     1.324 **Vintage CW Guarantee Bond Recovery**: The aggregate recovery by holders of Allowed Vintage CW Guarantee Bond Claims, totaling One Billion Four Hundred Fifty-Three Million Three Hundred Eleven Thousand Nine Hundred Thirty-Five Dollars and Thirty-Seven Cents ($1,453,311,935.37), consisting of (a) Two Hundred Seventy-Two Million Seventy Thousand One Hundred Ninety-Three Dollars and Five Cents ($272,070,193.05) in Cash, (b)

Five Hundred Ninety Million Six Hundred Three Thousand One Hundred Fifty-Six Dollars and Twenty-Six Cents ($590,603,156.26) in original principal amount of New GO Bonds, and (c) Five Hundred Ninety Million Six Hundred Thirty-Eight Thousand Five Hundred Eighty-Six Dollars and Six Cents ($590,638,586.06) in original principal amount of COFINA Junior Lien Bonds.

1.325   **Vintage CW Guarantee Bond Claim**:  A Claim, other than a Vintage CW Guarantee Bond Claim (Insured), on account of the Commonwealth's guarantee of Vintage PBA Bonds; provided, however, that, solely for purposes of distribution under the Plan, the amount of a holder's Vintage CW Guarantee Bond Claim in respect of the Commonwealth's guarantee of Vintage PBA Bonds shall be measured as the amount of such holder's Vintage PBA Bond Claim minus the amount of such holder's PBA Bond Distribution on account of Vintage PBA Bonds; and, provided, further, that Vintage CW Guarantee Claims may include an obligation, other than a Vintage PBA Bond Claim, for which the Commonwealth has pledged its good faith, credit and taxing power as authorized by the Commonwealth Legislature on or prior to December 31, 2012.

1.326   **Vintage CW Guarantee Bond Claim (Insured)**:  A Claim against the Commonwealth on account of the Commonwealth's guarantee of Vintage PBA Bond Claims, the payment of principal and interest of which have been insured by a Monoline.

1.327   **Vintage CW Guarantee Bond Claim (Taxable Election)**:  A Vintage CW Guarantee Bond Claim, the holder of which is a Puerto Rico Investor and has affirmatively elected to receive a Taxable Bond Distribution; provided, however, that, in the event that Taxable Bond Distributions are elected by Puerto Rico Investors holding CW Bond Claims and CW Guarantee Bond Claims in excess of the Maximum Taxable Bond Election Amount, such Vintage CW Guarantee Bond Claim shall be a Vintage CW Guarantee Bond Claim (Taxable Election) up to such Vintage CW Guarantee Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a Vintage CW Guarantee Bond Claim.

1.328   **Vintage CW Guarantee Taxable Bond Distribution**:  The distribution to be made to such holder of an Allowed Vintage CW Guarantee Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 21.1 hereof.

1.329   **Vintage PBA Bond Claim**:  A Claim against PBA on account of Vintage PBA Bonds, other than a Vintage PBA Bond Claim (Insured) or a Retail Vintage PBA Bond Claim.

1.330   **Vintage PBA Bond Claim (Insured)**:  A Claim against PBA on account of Vintage PBA Bonds, the payment of principal and interest of which has been insured by a Monoline.

1.331   **Vintage PBA Bond Recovery**:  The aggregate recovery by holders of Allowed Vintage PBA Bond Claims, Allowed Vintage PBA Bond Claims (Insured) and Allowed Retail Vintage PBA Bond Claims on account of such Claims, consisting of Six Hundred Eleven Million Three Hundred Thirty-One Thousand One Hundred Eighty-Six Dollars and Five Cents ($611,331,186.05) in Cash.

41

1.332   **Vintage PBA Bonds:**  Collectively, (a) the Government Facilities Revenue Refunding Bonds, Series C, issued by PBA in the original principal amount of $185,290,000.00, (b) the Government Facilities Revenue Bonds, Series D, issued by PBA in the original principal amount of $553,733,794.90, (c) the Government Facilities Revenue Refunding Bonds, Series F, issued by PBA in the original principal amount of $131,445,000.00, (d) the Government Facilities Revenue Bonds, Series G, issued by PBA in the original principal amount of $62,000,000.00, (e) the Government Facilities Revenue Refunding Bonds, Series H, issued by PBA in the original principal amount of $272,717,418.10, (f) the Government Facilities Revenue Bonds, Series I, issued by PBA in the original principal amount of $832,385,000.00, (g) the Government Facilities Revenue Refunding Bonds, Series J, issued by PBA in the original principal amount of $335,580,000.00 (h) the Government Facilities Revenue Refunding Bonds, Series K, issued by PBA in the original principal amount of $347,065,000.00, (i) the Government Facilities Revenue Bonds, Series L, issued by PBA in the original principal amount of $6,795,000.00, (j) the Government Facilities Revenue Refunding Bonds, Series M-1, issued by PBA in the original principal amount of $283,550,000.00, (k) the Government Facilities Revenue Refunding Bonds, Series M-2, issued by PBA in the original principal amount of $129,300,000.00, (l) the Government Facilities Revenue Refunding Bonds Series M-3, issued by PBA in the original principal amount of $150,000,000.00, (m) the Government Facilities Revenue Bonds, Series N, issued by PBA in the original principal amount of $329,415,000.00, (n) the Government Facilities Revenue Bonds, Series O, issued by PBA in the original principal amount of $3,025,000.00, (o) the Government Facilities Revenue Refunding Bonds, Series P, issued by PBA in the original principal amount of $330,935,000.00, and (p) the Government Facilities Revenue Refunding Bonds Series Q, issued by PBA in the original principal amount of $152,540,000.00, the repayment of which is guaranteed by the Commonwealth.

1.333   **Vintage Taxable Bond Distribution**:  The distribution to be made to each holder of an Allowed Vintage CW Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 18.1 hereof.

1.334   **Other Definitions:**  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan that is defined in PROMESA or the Bankruptcy Code shall, if defined in PROMESA, have the meaning assigned to that term in PROMESA or, if not defined in PROMESA, but defined in the Bankruptcy Code, shall have the meaning ascribed thereto in the Bankruptcy Code.  Unless otherwise specified, (a) all section, schedule, or exhibit references in the Plan are to the respective section, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time and (b) all references to dollars are to the lawful currency of the United States of America.  The words, "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  In computing any period prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.335   **Rules of Interpretation:**  For purposes of the Plan, (a) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) unless otherwise specified, any reference herein to a definition, an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it was, or is

amended, modified, or supplemented, including, without limitation, updated to conform to the
Definitive Documents; (c) unless otherwise specified, all references herein to distributions being
made in an "amount" shall be calculated using the principal amount of any bonds issued on the
Effective Date pursuant to the Plan plus the amount, if any, of Cash so distributed; (d) unless
otherwise specified, all references herein to "Articles" and "Sections" are references to Articles
and Sections, respectively, hereof or hereto; (e) captions and headings to Articles and
Sections are inserted for convenience of reference only and are not intended to be a part of or to
affect the interpretation of the Plan; (f) unless otherwise specified herein, the rules of
construction set forth in section 102 of the Bankruptcy Code shall apply; (g) unless otherwise
specified, references to docket numbers of documents filed in the Title III Cases are references to
the docket numbers under the Title III Court's CM/ECF system; (h) the words "include" and
"including," and variations thereof, shall not be deemed to be terms of limitation, and shall be
deemed to be followed by the words "without limitation"; and (i) any immaterial effectuating
provisions may be interpreted by the Oversight Board in such a manner consistent with the
overall purpose and intent of the Plan all without further notice to or action, order, or approval of
the Title III Court or any other Entity.

## ARTICLE II

## COMPROMISE AND SETTLEMENT OF DISPUTES/RESTRUCTURING OF ENTITIES

2.1     **Litigation Resolution:**  The Plan sets forth the terms and conditions for a global
compromise and integrated settlement of, among other issues, asserted and unasserted disputes
concerning the rights of holders of GO Bond Claims, PBA Bond Claims and PRIFA BANs,
including the  disputes (a) set forth in the Debt Related Objections challenging, among other
things, the validity, priority, secured status and related rights of the 2011 CW Bond Claims, the
2011 CW Series D/E/PIB Bond Claims, the 2012 CW Bond Claims, the 2014 CW Bond Claims,
the 2011 PBA Bond Claims, the 2012 PBA Bond Claims, and the PRIFA BANs, (b) set forth in
the Invalidity Actions, (c) set forth in the Lien Challenge Actions, (d) raised by certain holders of
GO Bond Claims asserting rights to receive revenues historically conditionally appropriated to
CCDA, HTA, MBA and PRIFA, as applicable, and "clawed back" by the Commonwealth
pursuant to the provisions of the Commonwealth Constitution, (e) between the Commonwealth
and PBA, including, without limitation, the resolution of (i) the claims and Causes of Action
currently being litigated in the PBA Litigation (ii) the amount, if any, of the PBA Administrative
Expense Claim, and (iii) the ownership of the PBA Property, between the Commonwealth and
PBA and the claims that PBA may assert against the Commonwealth under leases, agreements
and applicable law, and (f) set forth in the PRIFA BANs Litigation.

2.2     **Allowance of Bond Claims:**  For purposes of confirmation and consummation of
the Plan and distributions to be made hereunder, unless otherwise allowed pursuant to an order of
the Title III Court, on the Effective Date, among other Claims, (a) Vintage PBA Bond Claims
and the Vintage PBA Bond Claims (Insured) shall be deemed allowed in the aggregate amount
of $2,661,239,877.05, (b) the 2011 PBA Bond Claims shall be deemed allowed in the aggregate
amount of $1,335,422,892.78, (c) the 2012 PBA Bond Claims shall be deemed allowed in the
aggregate amount of $674,308,470.06, (d) the Vintage CW Bond Claims and the Vintage CW
Bond Claims (Insured) shall be deemed allowed in the aggregate amount of $5,842,761,317.99,
(e) the ERS Bond Claims are disputed in the aggregate amount of $3,168,698,777.00, (f) the

2011 CW Bond Claims shall be deemed allowed in the aggregate amount of $476,425,522.28, (g) the 2011 CW Series D/E/PIB Bond Claims shall be deemed allowed in the aggregate amount of $645,673,111.48, (h) the 2012 CW Bond Claims shall be deemed allowed in the aggregate amount of $2,938,901,920.90, (i) the 2014 CW Bond Claims shall be deemed allowed in the amount of $3,836,611,111.11, and (j) the 2014 CW Guarantee Bond Claims shall be deemed allowed in the amount of $345,380,885.83.

2.3 **Releases, Injunctions and Exculpation:** The releases, injunctions and exculpation provided in Article LXXIV herein are integral to obtaining the value provided hereunder and constitute an essential component of the compromises reached and are not severable from the other provisions of this Plan.

2.4 **Purchase and Sale of Certain ERS Assets:** On the Effective Date, the Commonwealth shall purchase, and ERS shall sell, assign, transfer and convey, all of ERS's right, title and interest in ERS's Assets, including, without limitation, such Assets subject to a valid and perfected lien or security interest, for an aggregate purchase price equal to the sum of (a) one hundred percent (100%) of the Cash in ERS accounts as of the Effective Date, (b) ninety-five percent (95%) of the face amount of performing ERS employee loans as of the Effective Date, (c) one hundred percent (100%) of the market price of the COFINA Senior Lien Bonds held by ERS, as of the Effective Date, and (d) fifty percent (50%) of the book value of the ERS portfolio of private equity interests held by ERS as of the Effective Date, with such amount being approved by the Title III Court at the Confirmation Hearing and incorporated into the findings of fact set forth in the Confirmation Order.

2.5 **Conveyance of the Conveyed Commonwealth Share:** On the Effective Date, pursuant to the Confirmation Order and the COFINA Junior Lien Bonds Legislation, and in consideration for the issuance of, and performance with respect to, the COFINA Junior Lien Bonds, the Commonwealth shall transfer and convey any and all ownership interests in and rights to the Conveyed Commonwealth Share to COFINA. From and after the Effective Date and until such time as the COFINA Junior Lien Bonds and any securities issued to refinance the COFINA Junior Lien Bonds, together with such other amounts as may be due and owing in accordance with the COFINA Junior Lien Bonds Indenture, have been paid or satisfied in full in accordance with the terms and provision of the COFINA Junior Lien Bonds Indenture, COFINA shall be the sole and exclusive owner of the Conveyed Commonwealth Share. Upon such payment or satisfaction, the Conveyed Commonwealth Share shall be transferred to the Commonwealth, as evidenced by a residual certificate to be executed and delivered on the Effective Date, and COFINA shall take, and cause to be taken, any and all actions as may be necessary to cause such reversion.

## ARTICLE III

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, made applicable to the Title III Case pursuant to Section 301(a) of PROMESA, Administrative Expense Claims and Professional Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article IV of the Plan.

3.1     **Administrative Expense Claims:**  On the later to occur of (i) the Effective Date and (ii) the date on which an Administrative Expense Claim shall become an Allowed Claim, the Reorganized Debtors shall (a) pay to each holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Administrative Expense Claim or (b) satisfy and discharge such Allowed Administrative Expense Claim in accordance with such other terms no more favorable to the claimant than as may be agreed upon by and between the holder thereof and the Reorganized Debtors; provided, however, that Allowed Administrative Expense Claims representing indebtedness incurred in the ordinary course prior to the Effective Date by the Debtors shall be paid in full and performed by the Reorganized Debtors in accordance with the terms and subject to the conditions of any agreement governing, investment evidencing, or other document relating to such transactions; and, provided, further, that, if any such ordinary course expense is not billed, or a written request for payment is not made, within one hundred twenty (120) days after the Effective Date, such ordinary course expense shall be barred and the holder thereof shall not be entitled to, or receive, a distribution pursuant to the Plan.

3.2     **Professional Compensation and Reimbursement Claims:**  All Entities awarded compensation, including, without limitation, to the fullest extent provided in respective letters of engagement or similar instruments or agreements, or reimbursement of expenses by the Title III Court shall be paid in full, in Cash, in the amounts allowed by the Title III Court (a) as soon as reasonably practicable following the later to occur of (i) the Effective Date and (ii) the date upon which the Title III Court order allowing such Claims is deemed to be a Final Order or (b) upon such other terms no more favorable to the claimant than as may be mutually agreed upon between such claimant and the Government Parties; provided, however, that, except as provided herein, each Professional must file its application for final allowance of compensation for professional services rendered and reimbursement of expenses on or prior to the date that is one hundred twenty (120) days following the Effective Date.  The Reorganized Debtors shall pay compensation for professional services extended and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Title III Court approval.

3.3     **Consummation Costs:**  Notwithstanding anything contained in the Plan to the contrary, in order to compensate certain parties for the cost of negotiation, confirmation and consummation of the Plan Support Agreement and the Plan, each Initial PSA Creditor shall be entitled to receive on the Effective Date, or as soon thereafter as is practicable but in no event later than ten (10) Business Days following the Effective Date, a pro rata share of Cash, in the form of an Allowed Administrative Expense Claim, in an amount equal to one and twenty-five one hundredths percent (1.25%), truncated to two decimal points, of the aggregate amount of PBA Bond Claims, CW Bond Claims and CW Guarantee Bond Claims (insured or otherwise), without duplication, held by such Initial PSA Creditor as of 5:00 p.m. (EST) on February 9, 2020.

3.4     **AFSCME Professional Fees:**  Notwithstanding anything contained in the Plan to the contrary, AFSCME shall be reimbursed its reasonable professional fees and expenses incurred in order to compensate AFSCME for the cost of negotiation, confirmation and consummation of the AFSCME Term Sheet and the Plan, and the resolution of issues pertaining to pensions.

3.5     **PSA Restriction Fee:**  Notwithstanding anything contained in the Plan to the contrary, and subject to the PSA Threshold Attainment, in exchange for executing and delivering

the Plan Support Agreement (or the Joinder Agreement or Annex Agreement, as applicable) on or prior to February 28, 2020, at 11:59 p.m. (EST), and, agreeing to all of its terms and conditions, including the agreement to "lock-up" their bonds in accordance with the terms of the Plan Support Agreement, each of the PSA Restriction Fee Creditors shall be entitled to receive the PSA Restriction Fee, in the form of an Allowed Administrative Expense Claim, payable in Cash, at the time of consummation of the Plan equal to the Restriction Fee Percentage multiplied by the aggregate amount of PBA Bond Claims, CW Bond Claims and CW Guarantee Bond Claims (without duplication and, to the extent such Claims are Monoline-insured, solely to the extent a PSA Restriction Fee Creditor is authorized to vote any such Claim in accordance with the definitive insurance documents and applicable law) held by such PSA Restriction Fee Creditor as of the expiration of the PSA Restriction Fee Period; provided, however, that each PSA Restriction Fee Creditor who acquired any PBA Bond Claims, CW Bond Claims or CW Guarantee Bond Claims (without duplication, and, to the extent such Claims are Monoline-insured, solely to the extent such PSA Restriction Fee Creditor is authorized to vote the Claim with respect to such Monoline-insured GO Bond or PBA Bond in accordance with definitive insurance documents and applicable law) after the Joinder Deadline shall be entitled to receive such PSA Restriction Fee equal to the Restriction Fee Percentage multiplied by the aggregate amount of CW Bond Claims, PBA Bond Claims, and CW Guarantee Bond Claims (without duplication and, to the extent any such Claims are Monoline-insured, solely to the extent a PSA Restriction Fee Creditor is authorized to vote any such Claim in accordance with the definitive insurance documents and applicable law) held by such PSA Restriction Fee Creditor as of the earlier to occur of the PSA Threshold Attainment and the entry of the Confirmation Order; and, provided, further, that, if a PSA Restriction Fee Creditor sold any PBA Bond Claims, CW Bond Claims, or CW Guarantee Bond Claims (without duplication, and to the extent such Claims are Monoline-insured, solely to the extent a PSA Restriction Fee Creditor is authorized to vote any such Claim in accordance with the definitive insurance documents and applicable law) for which it would have been entitled to receive the PSA Restriction Fee, the purchasing party, and not the selling party, shall be entitled to receive the PSA Restriction Fee on account thereof; and, provided, further, that, in all circumstances the sum of the aggregate PSA Restriction Fee plus the Consummation Costs shall not exceed Three Hundred Fifty Million Dollars ($350,000,000.00); and, provided, further, that, in the event the Plan Support Agreement has been terminated pursuant to the terms of Section 7.1(c)(i) thereof or the Oversight Board terminated the Plan Support Agreement for any reason other than (i) a breach of the Plan Support Agreement by a non-Governmental Party, or (ii) the denial of confirmation of the Plan by the Title III Court, Consummation Costs up to One Hundred Million Dollars ($100,000,000.00) shall be paid, ratably, in Cash, as an allowed administrative expense claim under a plan of adjustment for the Commonwealth to the Initial PSA Creditors; and, provided, further, that, in all other circumstances, upon termination of the Plan Support Agreement, no Consummation Costs or PSA Restriction Fee shall be due and payable to the party to the Plan Support Agreement terminating the Plan Support Agreement or against the party to the Plan Support Agreement as to which the Plan Support Agreement is terminated; and, provided, further, that, for purposes of distributions in accordance with the provisions of this Section 3.5, respective Claims held by a PSA Restriction Fee Creditor shall be calculated based upon their pro rata share of the Claims deemed allowed in accordance with Section 2.2 hereof.

3.6    **Retail Support Fee:**  In accordance with the terms and provisions set forth herein, in the event that a Class of Retail Investors (Classes 3, 5, 7, 12, 25, 26, 29 and 35) votes

to accept the Plan, the members of such Class shall be entitled to receive their Pro Rata Share of such Class's allocable share of the aggregate Retail Support Fee of up to Fifty Million Dollars ($50,000,000.00) in an amount equal to the Restriction Fee Percentage times the aggregate amount of Retail CW Bond Claims and Retail PBA Bond Claims, without duplication and, to the extent any such Claims are Monoline-insured, solely to the extent a Retail Investor is authorized to vote any such Claim in accordance with the definitive insurance documents and applicable law held by such accepting Class of Retail Investors, as the case may be; provided, however, that, (a) in the event that, after allocating the Retail Support Fee to Retail Investors in the Classes that voted to accept the Plan, the entire Fifty Million Dollars ($50,000,000.00) is not fully allocated, the balance of the Retail Support Fee shall be reallocated and distributed on a pro rata basis to (i) PSA Restriction Fee Creditors and (ii) those Retail Investors that are members of Classes that voted to accept the Plan, and (b) the Retail Support Fee allocated to any Class of Retail Investors that fails to vote to accept the Plan shall be reallocated and distributed on a pro rata basis to (i) PSA Restriction Fee Creditors and (ii) those Retail Investors that are members of Classes that voted to accept the Plan.

3.7    **Non-Severability**:  The allowance and payment of the Consummation Costs and PSA Restriction Fees as set forth in this Article III compensate the PSA Restriction Fee Creditors for value received and constitute an essential component of the compromises and settlements embodied herein and are not severable from the other terms and provisions set forth herein.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS

4.1    **Claims are classified as follows:**

| | | |
|---|---|---|
| (a) | **Class 1:** | Vintage PBA Bond Claims |
| (b) | **Class 2:** | Vintage PBA Bond Claims (Insured) |
| (c) | **Class 3:** | Retail Vintage PBA Bond Claims |
| (d) | **Class 4:** | 2011 PBA Bond Claims |
| (e) | **Class 5:** | Retail 2011 PBA Bond Claims |
| (f) | **Class 6:** | 2012 PBA Bond Claims |
| (g) | **Class 7:** | Retail 2012 PBA Bond Claims |
| (h) | **Class 8:** | PBA/DRA Secured Claim |
| (i) | **Class 9:** | PBA General Unsecured Claims |
| (j) | **Class 10:** | PBA/DRA Unsecured Claim |
| (k) | **Class 11:** | Vintage CW Bond Claims |

| | | |
|---|---|---|
| (l) | **Class 12:** | Retail Vintage CW Bond Claims |
| (m) | **Class 13:** | Vintage CW Bond Claims (Insured) |
| (n) | **Class 14:** | Vintage CW Bond Claims (Taxable Election) |
| (o) | **Class 15:** | Vintage CW Guarantee Bond Claims |
| (p) | **Class 16:** | Vintage CW Guarantee Bond Claims (Insured) |
| (q) | **Class 17:** | Vintage CW Guarantee Bond Claims (Taxable Election) |
| (r) | **Class 18:** | 2011 CW Bond Claims |
| (s) | **Class 19:** | Retail 2011 CW Bond Claims |
| (t) | **Class 20:** | 2011 CW Bond Claims (Insured) |
| (u) | **Class 21:** | 2011 CW Bond Claims (Taxable Election) |
| (v) | **Class 22:** | 2011 CW Guarantee Bond Claims |
| (w) | **Class 23:** | 2011 CW Guarantee Bond Claims (Taxable Election) |
| (x) | **Class 24:** | 2011 CW Series D/E/PIB Bond Claims |
| (y) | **Class 25:** | 2011 CW Series D/E/PIB Bond Claims (Insured) |
| (z) | **Class 26:** | Retail 2011 CW Series P/E/PIB Bond Claims |
| (aa) | **Class 27:** | 2011 CW Series D/E/PIB Bond Claims (Taxable Election) |
| (bb) | **Class 28:** | 2012 CW Bond Claims |
| (cc) | **Class 29:** | Retail 2012 CW Bond Claims |
| (dd) | **Class 30:** | 2012 CW Bond Claims (Insured) |
| (ee) | **Class 31:** | 2012 CW Bond Claims (Taxable Election) |
| (ff) | **Class 32:** | 2012 CW Guarantee Bond Claims |
| (gg) | **Class 33:** | 2012 CW Guarantee Bond Claims (Taxable Election) |
| (hh) | **Class 34:** | 2014 CW Bond Claims |
| (ii) | **Class 35:** | Retail 2014 CW Bond Claims |
| (jj) | **Class 36:** | 2014 CW Bond Claims (Taxable Election) |

| (kk) | **Class 37:** | 2014 CW Guarantee Bond Claims |
|---|---|---|
| (ll) | **Class 38:** | 2014 CW Guarantee Bond Claims (Taxable Election) |
| (mm) | **Class 39:** | Active and Retired Employee Benefits Claims |

|  | (i) | **Class 39A:** | Retiree Claims |
|---|---|---|---|
|  | (ii) | **Class 39B:** | Active ERS Participant Claims |
|  | (iii) | **Class 39C:** | Active JRS Participant Claims |
|  | (iv) | **Class 39D:** | Active TRS Participant Claims |
|  | (v) | **Class 39E:** | System 2000 Participant Claims |

| (nn) | **Class 40:** | AFSCME Employee Claims |
|---|---|---|
| (oo) | **Class 41:** | CW General Unsecured Claims |
| (pp) | **Class 42:** | CW/HTA Claims |
| (qq) | **Class 43:** | CW/Convention Claims |
| (rr) | **Class 44:** | CW/PRIFA Rum Tax Claims |
| (ss) | **Class 45:** | CW/MBA Claims |
| (tt) | **Class 46:** | CW Appropriations Claims |
| (uu) | **Class 47:** | CW 510(b) Subordinated Claims |
| (vv) | **Class 48:** | ERS Bond Claims |
| (ww) | **Class 49:** | Settling ERS Bond Claims |
| (xx) | **Class 50:** | ERS General Unsecured Claims |
| (yy) | **Class 51:** | Gracia Gracia Claims |
| (zz) | **Class 52:** | Convenience Claims |

## ARTICLE V

## PROVISIONS FOR TREATMENT OF VINTAGE PBA BOND CLAIMS (CLASS 1)

5.1 **Treatment of Vintage PBA Bond Claims:** On the Effective Date, each holder of an Allowed Vintage PBA Bond Claim shall be entitled to receive in full consideration, satisfaction, release and exchange of such holder's Allowed Vintage PBA Bond Claim, such holder's Pro Rata Share of the Vintage PBA Bond Recovery.

## ARTICLE VI

## PROVISIONS FOR TREATMENT OF VINTAGE PBA BOND
## CLAIMS (INSURED) (CLASS 2)

6.1    **Treatment of Vintage PBA Bond Claims (Insured):**  On the Effective Date, each holder of an Allowed Vintage PBA Bond Claim (Insured) shall be entitled to receive in full consideration, satisfaction, release and exchange of such holder's Allowed Vintage PBA Bond Claim (Insured), such holder's Pro Rata Share of the Vintage PBA Bond Recovery.

## ARTICLE VII

## PROVISIONS FOR TREATMENT OF RETAIL
## VINTAGE PBA BOND CLAIMS (CLASS 3)

7.1    **Treatment of Retail Vintage PBA Bond Claims:**  On the Effective Date, each holder of an Allowed Retail Vintage PBA Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed Retail Vintage PBA Bond Claim, such holder's Pro Rata Share of (a) the Vintage PBA Bond Recovery and (b) the Retail Support Fee allocable to holders of Allowed Retail Vintage PBA Bond Claims; provided, however, that, in the event that Class 3 votes to reject the Plan in accordance with section 1126 of the Bankruptcy Code, (y) each holder of an Allowed Retail Vintage PBA Bond Claim shall be entitled to receive such holder's Pro Rata Share of the Vintage PBA Bond Recovery and (z) the Retail Support Fee otherwise allocable to holders of Allowed Retail Vintage PBA Bond Claims shall be reallocated to PSA Restriction Fee Creditors and Retail Investors that are members of Classes that voted to accept the Plan and be distributed in accordance with the terms and provisions of Section 3.6 hereof.

## ARTICLE VIII
## PROVISIONS FOR TREATMENT OF 2011 PBA BOND CLAIMS (CLASS 4)

8.1    **Treatment of 2011 PBA Bond Claims:**  On the Effective Date, each holder of an Allowed 2011 PBA Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2011 PBA Bond Claim, such holder's Pro Rata Share of the 2011 PBA Bond Recovery.

## ARTICLE IX

## PROVISIONS FOR TREATMENT OF RETAIL 2011
## PBA BOND CLAIMS (CLASS 5)

9.1    **Treatment of Retail 2011 PBA Bond Claims:**  On the Effective Date, each holder of an Allowed Retail 2011 PBA Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed Retail 2011 PBA Bond Claim, such holder's Pro Rata Share of (a) the 2011 PBA Bond Recovery and (b) the Retail Support Fee allocable to holders of Allowed Retail 2011 PBA Bond Claims; provided, however, that, in the event that Class 5 votes to reject the Plan in accordance with the provisions of section 1126 of the Bankruptcy Code, (y) each holder of an Allowed Retail PBA Bond Claim

50

shall be entitled to receive such holder's Pro Rata Share of the 2011 PBA Bond Recovery and
(z) the Retail Support Fee otherwise allocable to holders of Allowed Retail 2011 PBA
Bond Claims shall be reallocated to PSA Restriction Fee Creditors and Retail Investors that are
members of Classes that voted to accept the Plan and be distributed in accordance with the terms
and provisions of Section 3.6 hereof.

## ARTICLE X

## PROVISIONS FOR TREATMENT OF 2012 PBA BOND CLAIMS (CLASS 6)

10.1    **Treatment of 2012 PBA Bond Claims:**  On the Effective Date, each holder of an
Allowed 2012 PBA Claim shall be entitled to receive, in full consideration, satisfaction, release
and exchange of such holder's Allowed 2012 PBA Bond Claim, such holder's Pro Rata Share of
the 2012 PBA Bond Recovery.

## ARTICLE XI

## PROVISIONS FOR TREATMENT OF RETAIL 2012 PBA BOND CLAMS (CLASS 7)

11.1    **Treatment of Retail 2012 PBA Bond Claims:**  On the Effective Date, each
holder of an Allowed Retail 2012 PBA Bond Claim shall be entitled to receive, in full
consideration, satisfaction, release and exchange of such holder's Allowed Retail 2012 PBA
Bond Claim, such holder's Pro Rata Share of (a) the 2012 PBA Bond Recovery and (b) the
Retail Support Fee allocable to holders of Allowed Retail 2012 PBA Bond Claims; provided,
however, that, in the event that Class 7 votes to reject the Plan in accordance with the provisions
of section 1126 of the Bankruptcy Code, (y) each holder of an Allowed Retail 2012 Bond Claim
shall be entitled to receive such holder's Pro Rata Share of the 2012 PBA Bond Recovery and
(z) the Retail Support Fee otherwise allocable to holders of Allowed Retail 2012 Bond Claims
shall be reallocated to PSA Restriction Fee Creditors and Retail Investors that are members of
Classes that voted to accept the Plan and be distributed in accordance with the terms and
provisions of Section 3.6 hereof.

## ARTICLE XII

## PROVISIONS FOR TREATMENT OF
## PBA/DRA SECURED CLAIMS (CLASS 8)

12.1    **Treatment of PBA/DRA Secured Claims:**  PBA/DRA Secured Claims shall not
receive a distribution pursuant to the Plan and the holder of the PBA/DRA Secured Claims shall
be deemed to have rejected the Plan.

## ARTICLE XIII

## PROVISIONS FOR TREATMENT OF PBA GENERAL UNSECURED
## CLAIMS (CLASS 9)

13.1    **Treatment of PBA General Unsecured Claims:**  On the Effective Date,
Allowed PBA General Unsecured Claims shall be deemed unimpaired and each holder of an

Allowed PBA General Unsecured Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed PBA General Unsecured Claim, (a) reinstatement pursuant to section 1124(2) of the Bankruptcy Code, including, without limitation, payments of Cash necessary to satisfy the requirements of reinstatement, (b) payment of the Allowed amount of such holder's Claim, in full, in Cash, on, or as soon as practicable after the latest to occur of (1) the Effective Date, (2) the date on which such PBA General Unsecured Claim becomes Allowed, (3) the date on which such Allowed PBA General Unsecured Claim is otherwise due and payable, and (4) such other date as may be mutually agreed to by such holder of such PBA General Unsecured Claim and the Debtor or the Reorganized Debtor, as the case may be, or (c) such other treatment as may be mutually agreed to by and among such holder of a PBA General Unsecured Claim and the Debtor or the Reorganized Debtor, as the case may be.

## ARTICLE XIV

## PROVISIONS FOR TREATMENT OF PBA/DRA
## UNSECURED CLAIMS (CLASS 10)

14.1   **Treatment of PBA/DRA Unsecured Claims:**  PBA/DRA Unsecured Claims shall not receive a distribution pursuant to the Plan and the holder of the PBA/DRA Unsecured Claims shall be deemed to have rejected the Plan.

## ARTICLE XV

## PROVISIONS FOR TREATMENT OF VINTAGE CW BOND
## CLAIMS (CLASS 11)

15.1   **Treatment of Vintage CW Bond Claims:**  On the Effective Date, and subject to the right of election set forth in Section 15.2 hereof, each holder of an Allowed Vintage CW Bond Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed Vintage CW Bond Claim, such holder's Pro Rata Share of the Vintage CW Bond Recovery.

15.2   **Right of Election to Vintage CW Bond Claims (Taxable Election):** Notwithstanding the provisions of Section 15.1 of the Plan, each holder of an Allowed Vintage CW Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 18.1 and 59.1 hereof. Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder.  Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board; provided, however, that under no circumstance may such waiver by the Oversight Board occur on or after the Effective Date.

## ARTICLE XVI

## PROVISIONS FOR TREATMENT OF RETAIL VINTAGE
## CW BOND CLAIMS (CLASS 12)

16.1    **Treatment of Retail Vintage CW Bond Claims** :  On the Effective Date, each holder of an Allowed Retail Vintage CW Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed Retail Vintage CW Bond Claim, such holder's Pro Rata Share of (a) the Vintage CW Bond Recovery and (b) the Retail Support Fee allocable to holders of Allowed Retail Vintage CW Bond Claims; provided, however, that, in the event that Class 12 votes to reject the Plan in accordance with the provisions of section 1126 of the Bankruptcy Code, (y) each holder of an Allowed Retail Vintage CW Bond Claim shall be entitled to receive such holder's Pro Rata Share of the Vintage CW Bond Recovery and (z) the Retail Support Fee otherwise allocable to holders of Allowed Retail Vintage CW Bond Claims shall be reallocated to PSA Restriction Fee Creditors and Retail Investors that are members of Classes that voted to accept the Plan and be distributed in accordance with the terms and provisions of Section 3.6 hereof.

16.2    **Right of Election to Retail Vintage CW Bond Claims (Taxable Election):** Notwithstanding the provisions of Section 16.1 of the Plan, each holder of an Allowed Retail Vintage CW Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 18.1 and 59.1 hereof.  Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder.  Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board; provided, however, that under no circumstance may such waiver by the Oversight Board occur on or after the Effective Date.

## ARTICLE XVII

## PROVISIONS FOR TREATMENT OF VINTAGE CW BOND
## CLAIMS (INSURED) (CLASS 13)

17.1    **Treatment of Vintage CW Bond Claims (Insured):**  On the Effective Date, each holder of an Allowed Vintage CW Bond Claim (Insured) shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed Vintage CW Bond Claim (Insured), such holder's Pro Rata Share of the Vintage CW Bond Recovery.

## ARTICLE XVIII

## PROVISIONS FOR TREATMENT OF VINTAGE CW BOND
## CLAIMS (TAXABLE ELECTION) (CLASS 14)

18.1    **Treatment of Vintage CW Bond Claims (Taxable Election):**  On the Effective Date, each holder of an Allowed Vintage CW Bond Claim (Taxable Election) shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed

Vintage CW Bond Claim (Taxable Election), its Pro Rata Share of the Vintage CW Bond
Recovery, as modified by its Pro Rata Share of the Vintage Taxable Bond Distribution.

## ARTICLE XIX

## PROVISIONS FOR TREATMENT OF VINTAGE CW
## GUARANTEE BOND CLAIMS (CLASS 15)

19.1    **Treatment of Vintage CW Guarantee Bond Claims:**  On the Effective Date,
and in full consideration, satisfaction, release, and exchange of its Allowed Vintage CW
Guarantee Bond Claim, each holder of an Allowed Vintage CW Guarantee Bond Claim shall
receive such holder's Pro Rata Share of the Vintage CW Guarantee Bond Recovery.

19.2    **Right of Election to Vintage CW Guarantee Bond Claims (Taxable Election):**
Notwithstanding the provisions of Section 19.1 of the Plan, each holder of an Allowed Vintage
CW Guarantee Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be
entitled to elect to receive distributions pursuant to the terms and provisions of Sections 21.1 and
59.1 hereof.  Such election must be made on the Ballot/Election Form, be received by the
Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed
acceptance of the Plan by such holder.  Any election made after the Ballot Date shall not be
binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the
Oversight Board; provided, however, that under no circumstance may such waiver by the
Oversight Board occur on or after the Effective Date.

## ARTICLE XX

## PROVISIONS FOR TREATMENT OF VINTAGE CW
## GUARANTEE BOND CLAIMS (INSURED) (CLASS 16)

20.1    **Treatment of Vintage CW Guarantee Bond Claims (Insured):**  On the
Effective Date, and in full consideration, satisfaction, release, and exchange of its Allowed
Vintage CW Guarantee Bond Claim (Insured), each holder of an Allowed Vintage CW
Guarantee Bond Claim (Insured) shall be entitled to receive such holder's Pro Rata Share of the
Vintage CW Guarantee Bond Recovery.

## ARTICLE XXI

## PROVISIONS FOR TREATMENT OF VINTAGE CW
## GUARANTEE BOND CLAIMS (TAXABLE ELECTION) (CLASS 17)

21.1    **Treatment of Vintage CW Guarantee Bond Claims (Taxable Election):** On
the Effective Date, each holder of an Allowed Vintage CW Guarantee Bond Claim (Taxable
Election) shall be entitled to receive, in full consideration, satisfaction, release and exchange of
such holder's Allowed Vintage CW Guarantee Bond Claim (Taxable Election), such holder's
Pro Rata Share of the Vintage CW Guarantee Bond Recovery, as modified by such holder's Pro
Rata Share of the Vintage Taxable Bond Distribution.

## ARTICLE XXII

## PROVISIONS FOR TREATMENT OF 2011
## CW BOND CLAIMS (CLASS 18)

22.1    **Treatment of 2011 CW Bond Claims**:  On the Effective Date, and subject to the right of election set forth in Section 22.2 hereof, each holder of an Allowed 2011 CW Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2011 CW Bond Claim, such holder's Pro Rata Share of the 2011 CW Bond Recovery.

22.2    **Right of Election to 2011 CW Bond Claims (Taxable Election)**:  Notwithstanding the provisions of Section 22.1 of the Plan, each holder of an Allowed 2011 CW Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 24.1 and 59.1 hereof.  Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder.  Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board; provided, however, that under no circumstances may such waiver by the Oversight Board occur on or after the Effective Date.

## ARTICLE XXIII

## PROVISIONS FOR TREATMENT OF RETAIL 2011
## CW BOND CLAIMS (CLASS 19)

23.1    **Treatment of Retail 2011 CW Bond Claims**:  On the Effective Date, each holder of an Allowed Retail 2011 CW Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed Retail 2011 CW Bond Claim, such holder's Pro Rata Share of (a) the 2011 CW Bond Recovery and (b) the Retail Support Fee allocable to holders of Allowed Retail 2011 CW Bond Claims; provided, however, that, in the event that Class 19 votes to reject the Plan in accordance with the provisions of section 1126 of the Bankruptcy Code, (y) each holder of an Allowed Retail 2011 CW Bond Claim shall be entitled to receive such holder's Pro Rata Share of the 2011 CW Bond Recovery and (z) the Retail Support Fee otherwise allocable to holders of Allowed Retail 2011 CW Bond Claims shall be reallocated to PSA Restriction Fee Creditors and Retail Investors that are members of Classes that voted to accept the Plan and be distributed in accordance with the terms and provisions of Section 3.6 hereof.

23.2    **Right of Election to Retail 2011 CW Bond Claims (Taxable Election)**:  Notwithstanding the provisions of Section 23.1 of the Plan, each holder of an Allowed 2011 CW Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 25.1 and 59.1 hereof.  Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder.  Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board;

provided, however, that under no circumstances may such waiver by the Oversight Board occur on or after the Effective Date.

## ARTICLE XXIV

## PROVISIONS FOR TREATMENT OF 2011 CW
## BOND CLAIMS (INSURED) (CLASS 20)

24.1   **Treatment of 2011 CW Bond Claims (Insured)**:  On the Effective Date, each holder of an Allowed 2011 CW Bond Claim (Insured) shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed 2011 CW Bond Claim (Insured), such holder's Pro Rata Share of the 2011 CW Bond Recovery.

## ARTICLE XXV

## PROVISIONS FOR TREATMENT OF 2011 CW BOND
## CLAIMS (TAXABLE ELECTION) (CLASS 21)

25.1   **Treatment of 2011 CW Bond Claims (Taxable Election)**:  On the Effective Date, each holder of an Allowed 2011 CW Bond Claim (Taxable Election) shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2011 CW Bond Claim (Taxable Election), such holder's Pro Rata Share of the 2011 CW Bond Recovery, as modified by such holder's Pro Rata Share of the 2011 CW Taxable Bond Distribution.

## ARTICLE XXVI

## PROVISIONS FOR TREATMENT OF
## 2011 CW GUARANTEE BOND CLAIMS (CLASS 22)

26.1   **Treatment of 2011 CW Guarantee Bond Claims**:  On the Effective Date, and subject to the right of election set forth in Section 26.2 hereof, each holder of an Allowed 2011 CW Guarantee Bond claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2011 CW Guarantee Bond Claim, such holder's Pro Rata Share of the 2011 CW Guarantee Bond Recovery.

26.2   **Right of Election to 2011 CW Guarantee Bond Claims (Taxable Election)**: Notwithstanding the provisions of Section 25.1 of the Plan, each holder of an Allowed 2011 CW Guarantee Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 27.1 and 59.1 hereof.  Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder.  Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board; provided, however, that under no circumstances may such waiver by the Oversight Board occur on or after the Effective Date.

## ARTICLE XXVII

### PROVISIONS FOR TREATMENT OF 2011 CW GUARANTEE
### BOND CLAIMS (TAXABLE ELECTION) (CLASS 23)

27.1    **Treatment of 2011 CW Guarantee Bond Claims (Taxable Election)**:  On the Effective Date, each holder of an Allowed 2011 CW Guarantee Bond Claim (Taxable Election) shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2011 CW Guarantee Bond Claim (Taxable Election), such holder's Pro Rata Share of the 2011 CW Guarantee Bond Recovery, as modified by such holder's Pro Rata Share of the 2011 CW Guarantee Taxable Bond Distribution.

## ARTICLE XXVIII

### PROVISIONS FOR TREATMENT OF 2011
### CW SERIES D/E/PIB BOND CLAIMS (CLASS 24)

28.1    **Treatment of 2011 CW Series D/E/PIB Bond Claims**:  On the Effective Date, and subject to the right of election set forth in Section 28.2 hereof, each holder of an Allowed 2011 CW Series D/E/PIB Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2011 CW Series D/E/PIB Bond Claim, such holder's Pro Rata Share of the 2011 CW Series D/E/PIB Bond Recovery.

28.2    **Right of Election to 2011 CW Series D/E/PIB Bond Claims (Taxable Election)**:  Notwithstanding the provisions of Section 28.1 of the Plan, each holder of an Allowed 2011 CW Series D/E/PIB Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 31.1 and 59.1 hereof.  Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder.  Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board; provided, however, that under no circumstances may such waiver by the Oversight Board occur on or after the Effective Date.

## ARTICLE XXIX

### PROVISIONS FOR TREATMENT OF 2011 CW SERIES
### D/E/PIB BOND CLAIMS  (INSURED) (CLASS 25)

29.1    **Treatment of 2011 CW Series D/E/PIB Bond Claims (Insured)**:  On the Effective Date, each holder of an Allowed 2011 CW Series D/E/PIB Bond Claim (Insured) shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed 2011 CW Series D/E/PIB Bond Claim (Insured), such holder's Pro Rata Share of the 2011 CW Series D/E/PIB Bond Recovery.

**ARTICLE XXX**

**PROVISIONS FOR TREATMENT OF RETAIL 2011
CW SERIES D/E/PIB BOND CLAIMS (CLASS 26)**

30.1    **Treatment of Retail 2011 CW Series D/E/PIB Bond Claims:**  On the Effective
Date, each holder of an Allowed Retail 2011 CW Series D/E/PIB Bond Claim shall be entitled to
receive, in full consideration, satisfaction, release and exchange of such holder's Allowed Retail
2011 CW Series D/E/PIB Bond Claim, such holder's Pro Rata Share of (a) the 2011 CW Series
D/E/PIB Bond Recovery and (b) the Retail Support Fee allocable to holders of Allowed Retail
2011 CW Series D/E/PIB Bond Claims; provided, however, that, in the event that Class 26 votes
to reject the Plan in accordance with the provisions of section 1126 of the Bankruptcy Code,
(y) each holder of an Allowed Retail 2011 CW Series D/E/PIB Bond Claim shall be entitled to
receive such holder's Pro Rata Share of the 2011 CW Series D/E/PIB Bond Recovery and (z) the
Retail Support Fee otherwise allocable to holders of Allowed Retail 2011 CW Series D/E/PIB
Bond Claims shall be reallocated to PSA Restriction Fee Creditors and Retail Investors that are
members of Classes that voted to accept the Plan and be distributed in accordance with the terms
and provisions of Section 3.6 hereof.

30.2    **Right of Election to Retail 2011 CW Series D/E/PIB Bond Claims (Taxable
Election)**:  Notwithstanding the provisions of Section 30.1 of the Plan, each holder of an
Allowed Retail 2011 CW Series D/E/PIB Bond Claim that is a Puerto Rico Investor shall, at
such holder's option, be entitled to elect to receive distributions pursuant to the terms and
provisions of Sections 31.1 and 59.1 hereof.  Such election must be made on the Ballot/Election
Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if
elected, shall be deemed acceptance of the Plan by such holder.  Any election made after the
Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly
waived, in writing, by the Oversight Board; provided, however, that under no circumstances may
such waiver by the Oversight Board occur on or after the Effective Date.

**ARTICLE XXXI**

**PROVISIONS FOR TREATMENT OF 2011 CW SERIES D/E/PIB BOND
CLAIMS (TAXABLE ELECTION) (CLASS 27)**

31.1    **Treatment of 2011 CW Series D/E/PIB Bond Claims (Taxable Election):**   On
the Effective Date, each holder of an Allowed 2011 CW Series D/E/PIB Bond Claim (Taxable
Election) shall be entitled to receive, in full consideration, satisfaction, release and exchange of
such holder's Allowed 2011 CW Series D/E/PIB Bond Claim (Taxable Election), such holder's
Pro Rata Share of the 2011 CW Series D/E/PIB Bond Recovery, as modified by such holder's
Pro Rata Share of the 2011 CW Series D/E/PIB Taxable Bond Distribution.

## ARTICLE XXXII

## PROVISIONS FOR TREATMENT OF 2012 CW BOND
### CLAIMS (CLASS 28)

32.1    **Treatment of 2012 CW Bond Claims**:  On the Effective Date, and subject to the right of election set forth in Section 32.2 hereof, each holder of an Allowed 2012 CW Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2012 CW Bond Claim, such holder's Pro Rata Share of the 2012 CW Bond Recovery.

32.2    **Right of Election to 2012 CW Bond Claims (Taxable Election)**:
Notwithstanding the provisions of Section 32.1 of the Plan, each holder of an Allowed 2012 CW Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 35.1 and 59.1 hereof. Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder. Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board; provided, however, that under no circumstances may such waiver by the Oversight Board occur on or after the Effective Date.

## ARTICLE XXXIII

## PROVISIONS FOR TREATMENT OF RETAIL 2012
### CW BOND CLAIMS (CLASS 29)

33.1    **Treatment of Retail 2012 CW Bond Claims**:  On the Effective Date, each holder of an Allowed Retail 2012 CW Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed Retail 2012 CW Bond Claim, such holder's Pro Rata Share of (a) the 2012 CW Bond Recovery and (b) the Retail Support Fee allocable to holders of Allowed Retail 2012 CW Bond Claims; provided, however, that, in the event that Class 29 votes to reject the Plan in accordance with the provisions of section 1126 of the Bankruptcy Code, (y) each holder of an Allowed Retail 2012 CW Bond Claim shall be entitled to receive such holder's Pro Rata Share of the 2012 CW Bond Recovery and (z) the Retail Support Fee otherwise allocable to holders of Allowed Retail 2012 CW Bond Claims shall be reallocated to PSA Restriction Fee Creditors and Retail Investors that are members of Classes that voted to accept the Plan and be distributed in accordance with the terms and provisions of Section 3.6 hereof.

33.2    **Right of Election to Retail 2012 CW Bond Claims (Taxable Election)**:
Notwithstanding the provisions of Section 33.1 of the Plan, each holder of an Allowed Retail 2012 CW Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 35.1 and 59.1 hereof. Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder. Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight

Board; provided, however, that under no circumstances may such waiver by the Oversight Board occur on or after the Effective Date.

## ARTICLE XXXIV

## PROVISIONS FOR TREATMENT OF 2012
## CW BOND CLAIMS (INSURED) (CLASS 30)

34.1    **Treatment of 2012 CW Bond Claims (Insured)**:  On the Effective Date, each holder of an Allowed 2012 CW Bond Claim (Insured) shall be entitled to received, in full consideration, satisfaction, release and exchange of such holder's Allowed 2012 CW Bond Claim (Insured), such holder's Pro Rata Share of the 2012 CW Bond Recovery.

## ARTICLE XXXV

## PROVISIONS FOR TREATMENT OF 2012 CW BOND
## CLAIMS (TAXABLE ELECTION) (CLASS 31)

35.1    **Provisions for Treatment of 2012 CW Bond Claims (Taxable Election)**:  On the Effective Date, each holder of an Allowed 2012 CW Bond Claim (Taxable Election) shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2012 CW Bond Claim (Taxable Election), such holder's Pro Rata Share of the 2012 CW Bond Recovery, as modified by its Pro Rata Share of the 2012 CW Taxable Bond Distribution.

## ARTICLE XXXVI

## PROVISIONS FOR TREATMENT OF
## 2012 CW GUARANTEE BOND CLAIMS (CLASS 32)

36.1    **Treatment of 2012 CW Guarantee Bond Claims**:  On the Effective Date, and subject to the right of election set forth in Section 36.2 hereof, each holder of an Allowed 2012 CW Guarantee Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2012 CW Guarantee Bond Claim, such holder's Pro Rata Share of the 2012 CW Guarantee Bond Recovery.

36.2    **Right of Election to 2012 CW Guarantee Bond Claims (Taxable Election)**: Notwithstanding the provisions of Section 36.1 of the Plan, each holder of an Allowed 2012 CW Guarantee Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 37.1 and 59.1 hereof.  Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder.  Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board; provided, however, that under no circumstances may such waiver by the Oversight Board occur on or after the Effective Date.

# ARTICLE XXXVII

## PROVISIONS FOR TREATMENT OF 2012 CW GUARANTEE
## BOND CLAIMS (TAXABLE ELECTION) (CLASS 33)

37.1    **Treatment of 2012 CW Guarantee Bond Claims (Taxable Election)**:  On the
Effective Date, each holder of an Allowed 2012 CW Guarantee Bond Claim (Taxable Election)
shall be entitled to receive, in full consideration, satisfaction, release and exchange of such
holder's Allowed 2012 CW Guarantee Bond Claim (Taxable Election), such holder's Pro Rata
Share of the 2012 CW Guarantee Bond Recovery, as modified by such holder's Pro Rata Share
of the 2012 CW Guarantee Taxable Bond Distribution.

# ARTICLE XXXVIII

## PROVISIONS FOR TREATMENT OF 2014
## CW BOND CLAIMS (CLASS 34)

38.1    **Treatment of 2014 CW Bond Claims**:  On the Effective Date, and subject to the
right of election set forth in Section 38.2 hereof, each holder of an Allowed 2014 CW Bond
Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such
holder's Allowed 2014 CW Bond Claim, such holder's Pro Rata Share of the 2014 CW Bond
Recovery.

38.2    **Right of Election to 2014 CW Bond Claims (Taxable Election)**:
Notwithstanding the provisions of Section 38.1 of the Plan, each holder of an Allowed 2014 CW
Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to
receive distributions pursuant to the terms and provisions of Sections 40.1 and 59.1 hereof.  Such
election must be made on the Ballot/Election Form, be received by the Oversight Board, or its
designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by
such holder.  Any election made after the Ballot Date shall not be binding upon the
Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board;
provided, however, that under no circumstances may such waiver by the Oversight Board occur
on or after the Effective Date.

# ARTICLE XXXIX

## PROVISIONS FOR TREATMENT OF  RETAIL 2014
## CW BOND CLAIMS (CLASS 35)

39.1    **Treatment of Retail 2014 Bond Claims**:  On the Effective Date, each holder of
an Allowed Retail 2014 CW Bond Claim shall be entitled to receive, in full consideration,
satisfaction, release and exchange of such holder's Allowed Retail 2014 CW Bond Claim, such
holder's Pro Rata Share of (a) the 2014 CW Bond Recovery and (b) the Retail Support Fee
allocable to holders of Allowed Retail 2014 CW Bond Claims; provided, however, that, in the
event that Class 35 votes to reject the Plan in accordance with the provisions of section 1126 of
the Bankruptcy Code, (y) each holder of an Allowed Retail 2014 CW Bond Claim shall be
entitled to receive such holder's Pro Rata Share of the 2014 CW Bond Recovery and (z) the
Retail Support Fee otherwise allocable to holders of Allowed Retail 2014 CW Bond Claims shall

be reallocated to PSA Restriction Fee Creditors and Retail Investors that are members of Classes that voted to accept the Plan and be distributed in accordance with the terms and provisions of Section 3.6 hereof.

39.2 **Right of Election to Retail 2014 CW Bond Claims (Taxable Election):** Notwithstanding the provisions of Section 39.1 of the Plan, each holder of an Allowed Retail 2014 CW Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 40.1 and 59.1 hereof. Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder. Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board; provided, however, that under no circumstances may such waiver by the Oversight Board occur on or after the Effective Date.

## ARTICLE XL

## PROVISIONS FOR TREATMENT OF 2014 CW BOND CLAIMS (TAXABLE ELECTION) (CLASS 36)

40.1 **Provisions for Treatment of 2014 CW Bond Claims (Taxable Election):** On the Effective Date, each holder of an Allowed 2014 CW Bond Claim (Taxable Election) shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2014 CW Bond Claim (Taxable Election), such holder's Pro Rata Share of the 2014 CW Bond Recovery, as modified by such holder's Pro Rata Share of the 2014 CW Taxable Bond Distribution.

## ARTICLE XLI

## PROVISIONS FOR TREATMENT OF 2014 CW GUARANTEE BOND CLAIMS (CLASS 37)

41.1 **Treatment of 2014 CW Guarantee Bond Claims:** On the Effective Date, subject to the right of election set forth in Section 41.2 hereof, each holder of an Allowed 2014 CW Guarantee Bond claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2014 CW Guarantee Bond Claim, such holder's Pro Rata Share of the 2014 CW Bond Recovery.

41.2 **Right of Election to 2014 CW Guarantee Bond Claims (Taxable Election):** Notwithstanding the provisions of Section 41.1 of the Plan, each holder of an Allowed 2014 CW Bond Claim that is a Puerto Rico Investor shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 42.1 and 59.1 hereof. Such election must be made on the Ballot/Election Form, be received by the Oversight Board, or its designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder. Any election made after the Ballot Date shall not be binding upon the Commonwealth unless the Ballot Date is expressly waived, in writing, by the Oversight Board; provided, however, that under no circumstances may such waiver by the Oversight Board occur on or after the Effective Date.

## ARTICLE XLII

### PROVISIONS FOR TREATMENT OF 2014 CW GUARANTEE
### BOND CLAIMS (TAXABLE ELECTION) (CLASS 38)

42.1 **Treatment of 2014 CW Guarantee Bond Claims (Taxable Election):** On the Effective Date, each holder of an Allowed 2014 CW Guarantee Bond Claim (Taxable Election) shall be (a) entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed 2014 CW Guarantee Bond Claim (Taxable Election), such holder's Pro Rata Share of the 2014 CW Bond Recovery, as modified by such holder's Pro Rata Share of the 2014 CW Guarantee Taxable Bond Distribution.

## ARTICLE XLIII

### PROVISIONS FOR TREATMENT OF ACTIVE AND RETIRED
### EMPLOYEE RETIREMENT BENEFIT CLAIMS (CLASS 39A THROUGH 39E)

43.1 **Treatment of Retiree Claims (Class 39A):**

(a) <u>Adjustment of Benefits</u>. Each holder of an Allowed Retiree Claim shall be entitled to receive on account of such Allowed Retiree Claim its benefits as modified pursuant to the Monthly Benefit Modification and the terms set forth on Exhibit "E" hereto, including, without limitation, the elimination of any cost of living adjustments, subject to the Benefit Restoration and the Reduction Percentage as provided in the Plan.

(b) <u>Preemption</u>. All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified and/or preserved in whole or in part herein, to the extent inconsistent with the treatment of Allowed Retiree Claims hereunder, are preempted as inconsistent with PROMESA.

43.2 **Treatment of Active ERS Participant Claims (Class 39B):**

(a) <u>Adjustment of Benefits</u>. Each holder of an Allowed Active ERS Participant Claim shall be entitled to receive on account of such Allowed Active ERS Participant Claim its benefits as modified pursuant to the Monthly Benefit Modification, including, without limitation, the elimination of any cost of living adjustments, subject to the Benefit Restoration and the Reduction Percentage as provided in the Plan.

(b) <u>Preemption</u>: All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified and/or preserved in whole or in part herein, to the extent inconsistent with the treatment of Allowed Active ERS Participant Claims hereunder, are preempted as inconsistent with PROMESA.

43.3 **Treatment of Active JRS Participant Claims (Class 39C):**

(a)    Adjustment of Benefits.  Each holder of an Allowed JRS Participant Claim shall be entitled to receive on account of such Allowed Active JRS Participant Claim (i) its benefits that accrued as of May 4, 2017, as modified pursuant to the Monthly Benefit Modification and the terms set forth on Exhibit "F" hereto, including, without limitation, the elimination of any cost of living adjustments, subject to the Benefit Restoration and the Reduction Percentage as provided in the Plan; and (ii) such additional benefits for service on or after May 4, 2017, frozen as of the date as set forth on the term sheet attached as Exhibits "F" hereto, as applicable, to such holder of an Allowed Active JRS Participant Claim, including the social security benefits defined therein.

(b)    Preemption.  All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified and/or preserved in whole or in part herein, to the extent inconsistent with the treatment of Allowed Active JRS Participant Claims hereunder, are preempted as inconsistent with PROMESA.

### 43.4    Treatment of Active TRS Participant Claims (Class 39D):

(a)    Adjustment of Benefits.  Each holder of an Allowed Active TRS Participant Claim shall be entitled to receive on account of such Allowed Active TRS Participant Claim (i) its benefits that accrued as of May 4, 2017, as modified pursuant to the Monthly Benefit Modification and the terms set forth on Exhibit "G" hereto, including, without limitation, the elimination of any cost of living adjustments, subject to the Benefit Restoration and the Reduction Percentage as provided in the Plan; and (ii) such additional benefits for service on or after May 4, 2017, frozen as of the Effective Date as set forth on the term sheet attached as Exhibit "G" hereto, as applicable, to such holder of an Allowed Active TRS Participant Claim, including the social security benefits defined therein.

(b)    Preemption.  All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified and/or preserved in whole or in part herein, to the extent inconsistent with the treatment of Allowed Active TRS Participant Claims hereunder, are preempted as inconsistent with PROMESA.

### 43.5    Treatment of System 2000 Participant Claims (Class 39E):

(a)    System 2000 Benefits:  Except as set forth in Sections 43.2(b), 43.3(b) and 43.4(b) hereof, holders of Allowed System 2000 Participant Claims shall receive the amount of their contributions to these plans from 2000 through June 30, 2017, plus interest accrued thereon pursuant to applicable law for the period up to, but not including, the Commonwealth Petition Date, which amount shall be deposited into the defined contribution accounts established under Act 106-2017.  If the total amount of contributions, plus accrued interest thereon as described above, is less than or equal to One Billion Five Hundred Million Dollars, ($1,500,000,000.00), on the Effective Date, each holder of an Allowed System 2000 Participant Claim shall receive such holder's Pro Rata Share of such aggregate amount.  If the total amount of contributions described in this Section 43.5(a), plus accrued interest thereon as described above, exceeds One

Billion Five Hundred Million Dollars ($1,500,000,000.00), the Oversight Board and AFSCME shall develop a payment plan mutually acceptable to both parties to pay out the remaining balance of the contributions (for the avoidance of doubt, the amount in excess of One Billion Five Hundred Million Dollars ($1,500,000,000.00)) described in this Section 43.5(a).  In all events, the full amount of contributions described in this Section 43.5(a) will be paid to all holders of Allowed System 2000 Participant Claims not later than December 31, 2025.  As of the Effective Date, holders of Allowed System 2000 Participant with System 2000 contributions from 2000 through June 30, 2017 who are ineligible for benefits under Act 1 and Act 447 will no longer be entitled to future system administered benefits, such as death and disability benefits.  Holders of Allowed System 2000 Participant Claims who have already retired and converted their contributions to a system paid annuity are not eligible for the treatment described in this Section 43.5(a) and shall not receive a cash payment, but will be subject to the pension reduction applicable to other Participants in accordance with the terms and provisions of Section 43.1 of the Plan.

(b)     Preemption:  All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified and/or preserved in whole or in part herein, to the extent inconsistent with the treatment afforded pursuant to Section 43.5(a) hereof, are preempted as inconsistent with PROMESA.

## ARTICLE XLIV

## PROVISIONS FOR TREATMENT OF
## AFSCME EMPLOYEE CLAIMS (CLASS 40)

### 44.1   Treatment of AFSCME Employee Claims:

(a)     Modified AFSCME Collective Bargaining Agreements:  The existing collective bargaining agreements between the Commonwealth, its applicable agencies and instrumentalities, on the one hand, and AFSCME and its related union affiliates, on the other hand, shall be deemed rejected pursuant to section 365 of the Bankruptcy Code and replaced with modified collective bargaining agreements to be entered into in accordance with the terms and conditions agreed to by AFSCME and the Oversight Board, as set forth on Exhibit "J" hereto.  Without limiting the foregoing, such modifications shall include, among other matters, (a) a term of five (5) years, commencing as of the Effective Date, (b) provisions regarding layoffs and downsizing, (c) terms regarding System 2000 and (d) provisions for sharing Excess Cash Surplus.  Each holder of an Allowed AFSCME Employee Claim shall be entitled to receive the treatment set forth in Sections 44.1(a), (b), (c) and (d) hereof in full consideration, satisfaction, release, and exchange of such holder's Allowed AFSCME Employee Claim resulting from such rejection.  The Commonwealth shall have no obligation to bargain with AFSCME over terms of a new or modified collective bargaining agreements throughout the term of such modified collective bargaining agreements and the failure to bargain during such period shall not constitute, nor shall it be construed to be, an unfair labor practice under any Puerto Rico law.  No adjudicative forum shall take into consideration prior practices or bargaining history

when interpreting the terms of the modified collective bargaining agreements set forth on Exhibit "H" hereto.

(b)     Additional AFSCME Distribution.  On or as soon as reasonably practicable after the Effective Date, AFSCME and its member employees, as applicable, shall receive the additional payments and distributions as set forth on Appendix II to Exhibit "H" hereto.

(c)     Pre-Petition Arbitration and Grievance Claims.  Any distributions on account of Claims for liquidated damage amounts resulting from the disposition of pre-petition actions brought pursuant to the grievance and arbitration procedures arising under the collective bargaining agreements between the Commonwealth and AFSCME shall be made by the Commonwealth to the claimant in each instance on such date that is the later of (i) thirty (30) days after such disposition and (ii) sixty (60) days after the Effective Date.

(d)     Preemption.  All provisions of the Commonwealth Constitution, Commonwealth statutes, executive orders, rules, regulations, and policies in effect as of the Confirmation Date that create, require, or enforce employee pension and other benefits that are modified herein, to the extent inconsistent with the treatment afforded in this Section 44.1, are preempted as inconsistent with PROMESA and shall be of no further force or effect.

## ARTICLE XLV

## PROVISIONS FOR TREATMENT OF CW
## GENERAL UNSECURED  CLAIMS (CLASS 41)

### 45.1     Treatment of CW General Unsecured Claims:

(a)     Treatment of CW General Unsecured Claims.  Subject to the election set forth in Section 45.1(b) hereof, each holder of an Allowed CW General Unsecured Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed CW General Unsecured Claim, such holder's Pro Rata Share of the CW GUC Recovery.

(b)     Election to be Treated as Convenience Claim.  Notwithstanding the provisions of Section 45.1(a) of the Plan, any holder of an Allowed CW General Unsecured Claim, other than a CW General Unsecured Claim that is a component of a larger CW General Unsecured Claim, portions of which may be held by such or any other holder of an Allowed Claim, may elect to be treated as the holder of an Allowed Convenience Claim.  Such election must be made on Ballot and be received by the Debtors on or prior to the Ballot Date.  Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is expressly waived, in writing, by the Debtors; provided, however, that, under no circumstances may such waiver by the Debtors occur on or after the Effective Date.

45.2     Limitation on Recovery:  Notwithstanding anything contained herein to the contrary, in the event that Allowed CW General Unsecured Claims have been paid in full, then such excess value shall be redistributed, on a pro rata basis, to the benefit of holders of Allowed

CW/Convention Claims, Allowed CW/HTA Claims, Allowed CW/PRIFA Rum Tax Claim, and Allowed CW/MBA Claims.

## ARTICLE XLVI

## PROVISIONS FOR TREATMENT
## OF CW/HTA CLAIMS (CLASS 42)

46.1    **Treatment of CW/HTA Claims:**  On the Effective Date, each holder of an Allowed CW/HTA Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed CW/HTA Claim, such holder's Pro Rata Share of the CW GUC Recovery.

## ARTICLE XLVII

## PROVISIONS FOR TREATMENT OF
## CW/CONVENTION CENTER CLAIMS (CLASS 43)

47.1    **Treatment of CW/Convention Center Claims:**  On the Effective Date, each holder of an Allowed CW/Convention Center Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed CW/Convention Center Claim, such holder's Pro Rata Share of the CW GUC Recovery.

## ARTICLE XLVIII

## PROVISIONS FOR TREATMENT OF
## CW/PRIFA RUM TAX CLAIMS (CLASS 44)

48.1    **Treatment of CW/PRIFA Rum Tax Claims:**  On the Effective Date, each holder of an Allowed PRIFA Rum Tax Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed PRIFA Rum Tax Claim, such holder's Pro Rata Share of the CW GUC Recovery.

## ARTICLE XLIX

## PROVISIONS FOR TREATMENT OF
## CW/MBA CLAIMS (CLASS 45)

49.1    **Treatment of CW/MBA Claims:**  On the Effective Date, each holder of an Allowed CW/MBA Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed CW/MBA Claim, such holder's Pro Rata Share of the CW GUC Recovery.

## ARTICLE L

### PROVISIONS FOR TREATMENT OF
### CW APPROPRIATIONS CLAIMS (CLASS 46)

50.1   **Treatment of CW Appropriations Claims:**  CW Appropriations Claims shall not receive a distribution pursuant to the Plan and each holder of a CW Appropriations Claim shall be deemed to have rejected the Plan.

## ARTICLE LI

### PROVISIONS FOR TREATMENT OF
### CW/510(b) SUBORDINATED CLAIMS (CLASS 47)

51.1   **Treatment of CW/510(b) Subordinated Claims:** CW/510(b) Subordinated Claims shall not receive a distribution pursuant to the Plan and each holder of an Allowed CW/510(b) Subordinated Claim shall be deemed to have rejected the Plan.

## ARTICLE LII

### PROVISIONS FOR TREATMENT OF
### ERS BOND CLAIMS (CLASS 48)

52.1   **Treatment of ERS Bond Claims:**  On the Effective Date, and subject to the election set forth in Section 52.2 of the Plan, each holder of an Allowed ERS Bond Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed ERS Bond Claim, such holder's Pro Rata Share of ERS Bond Collateral Cash.

52.2   **Rights of Election to Settling ERS Bond Claims:**   Each holder of an ERS Bond Claim shall receive a Ballot/Election Form and in connection with such solicitation shall be entitled to elect to accept the ERS Bond Settlement and receive such holder's Pro Rata Share of the ERS Bond Settlement Distribution; provided, however, that, in the event that a holder of an ERS Bond Claim elects not to accept the ERS Bond Settlement, such holder shall be a participant in the ERS Litigation and, on the Effective Date, a distribution equal to the amount of such holder's Pro Rata Share of the ERS Bond Collateral Cash shall be placed in the ERS Reserve as if such Claim had been an Allowed ERS Bond Claim as of the Effective Date, pending entry of a final, non-appealable order resolving or settling the ERS Litigation.

## ARTICLE LIII

### PROVISIONS FOR TREATMENT OF
### SETTLING ERS BOND CLAIMS (CLASS 49)

53.1   **Treatment of Settling ERS Bond Claims:**  On the Effective Date, each holder of an Allowed Settling ERS Bond Claim shall be (a) entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed Settling ERS Bond Claim, such holder's ERS Bond Settlement Distribution, and (b) pursuant to the Confirmation Order, and, in full consideration, satisfaction, release and exchange of the Allowed Settling ERS Bond Claim,

68

(i) deemed to have released and discharged the Commonwealth and the United States of America from any and claims and causes of action asserted, or which could have been asserted, in the ERS Takings Action and the ERS Litigation, and (ii) deemed to be released from all claims and causes of action set forth in the ERS Recovery Actions.

## ARTICLE LIV

## PROVISIONS FOR TREATMENT OF
## ERS GENERAL UNSECURED CLAIMS (CLASS 50)

54.1    **Treatment of ERS General Unsecured Claims:**

(a)    Treatment of ERS General Unsecured Claims.  On the Effective Date, and subject to the election set forth in Section 54.1(b) hereof, each holder of an Allowed ERS General Unsecured Claim shall be entitled to receive, in full consideration, satisfaction, release and exchange of such holder's Allowed ERS General Unsecured Claim, such holder's Pro Rata Share of the ERS GUC Pool.

(b)    Allowed Claims of Ten Thousand Dollars ($10,000.00) or More/Election to be Treated as a Convenience Claim.  Notwithstanding the provisions of Section 54.1(a) of the Plan, any holder of an Allowed ERS General Unsecured Claim, other than an ERS General Unsecured Claim that is a component of a larger ERS General Unsecured Claim, portions of which may be held by such or any other holder of an Allowed Claim, whose Allowed ERS General Unsecured Claim is more than Ten Thousand Dollars ($10,000.00), and who elects to reduce the amount of such Allowed ERS General Unsecured Claim to Ten Thousand Dollars ($10,000.00), or, if a holder of multiple Allowed ERS General Unsecured Claims, elects to reduce the amount of such multiple Allowed ERS General Unsecured Claims to an aggregate amount of Twenty Thousand Dollars ($20,000.00), shall, at such holder's option, be entitled to receive, based on such Allowed ERS General Unsecured Claim as so reduced, distributions pursuant to Section 54.1 hereof.  Such election must be made on Ballot/Election Form and be received by the Debtors on or prior to the Ballot Date.  Any election made after the Ballot Date shall not be binding upon the Debtors unless the Ballot Date is expressly waived, in writing, by the Debtors; provided, however, that, under no circumstances may such waiver by the Debtors occur on or after the Effective Date.

54.2    **Limitation on Recovery**:  Notwithstanding anything contained herein to the contrary, including, without limitation, the distributions to be made to holder of an Allowed ERS General Unsecured Claim in accordance with the provisions of Section 54.1 hereof, in the event that the sum of the distributions of Cash and Cash received on account of Avoidance Actions net recoveries are equal to or in excess of one hundred percent (100%) of such holder's Allowed ERS General Unsecured Claim, the Avoidance Actions Trust Interests allocable to the ERS GUC Pool and Cash otherwise distributable to such holder on account of net recoveries from the Avoidance Actions Trust shall be deemed redistributed, on a pro rata basis, to the benefit of holders of Allowed CW/Convention Center Claims, Allowed CW/HTA Claims Allowed CW/PRIFA Rum Tax Claims and Allowed CW/MBA Claims.

## ARTICLE LV

## PROVISIONS FOR TREATMENT OF
## GRACIA GRACIA CLAIMS (CLASS 51)

55.1   **Treatment of Gracia Gracia Claims:**  On the Effective Date, the Gracia Gracia
Settlement shall be deemed assumed and (a) the members of the class certified in the Gracia
Gracia CW Action and the Gracia Gracia Federal Action and the counsel to such classes shall be
entitled to receive funds in accordance with the terms and provisions of the Gracia Gracia
Settlement and (b) pursuant to the Confirmation Order, all pending motions, applications,
litigations and appeals with respect to the Gracia Gracia CW Action and the Gracia Gracia
Federal Action shall be deemed withdrawn with prejudice.

## ARTICLE LVI

## PROVISIONS FOR TREATMENT OF
## CONVENIENCE CLAIMS (CLASS 52)

56.1   **Treatment of Convenience Claims:**  On the later of the Effective Date and the
date such Allowed Convenience Claim becomes an Allowed Claim, or as soon thereafter is
probable, the Disbursing Agent shall pay to each holder of an Allowed Convenience Claim, in
Cash, the full amount of such Allowed Convenience Claim, in full satisfaction, settlement,
release, and discharge of, and in exchange for such Allowed Convenience Claim.

## ARTICLE LVII

## PROVISIONS REGARDING NEW GO BONDS, COFINA JUNIOR
## LIEN BONDS AND ADDITIONAL INDEBTEDNESS

57.1   **Issuance and Distribution of the New GO Bonds:**  On the Effective Date,
Reorganized Commonwealth shall issue the New GO Bonds as more particularly described
herein.  The maturities, interest rates and amortization schedules for the New GO Bonds are
annexed hereto as Exhibit "I".  All debt service on the New GO Bonds which is not paid when
due, whether at or prior to final scheduled maturity, shall remain due and outstanding until paid
in full and shall be paid.  Interest shall accrue on such overdue debt service at the regular coupon
rate, compounding semiannually, until the applicable New GO Bonds are paid or satisfied in full
in accordance with their terms.  Interest on the New GO Bonds shall be calculated on a 30/360
basis.  To the extent the Government Parties, each acting in its sole and absolute discretion,
determine to apply for ratings on the New GO Bonds, the Government Parties shall use their
commercially reasonable best efforts to obtain ratings on the New GO Bonds, including
promptly responding in good faith to documentary or other requests, as soon as reasonably
practicable as determined solely by the Government Parties, following consultation with up to
two (2) Initial PSA Creditors, jointly designated by the Constitutional Debt Group, the GO
Group, the LCDC and the QTCB Group, each of which shall have executed a confidentiality
agreement, in form and substance satisfactory to the Oversight Board and restricting such Initial
PSA Creditors from trading New GO Bonds and COFINA Junior Lien Bonds, including based
upon the Government Parties' judgment with respect to expected benefits.  After the Government
Parties determine which rating agencies to apply for ratings from, the Government Parties shall

use their commercially reasonable best efforts to obtain the best possible ratings.
Notwithstanding anything contained in the Plan to the contrary, to the extent that Taxable New
GO Bonds are issued, such Taxable New GO Bonds shall be distributed to holders of Allowed
Claims in the following order of priority: (1) first, to holders of Allowed Taxable Election CW
Claims and (2) second, pro rata to all other holders of Allowed Claims and recipients of New GO
Bonds, without duplication.

       (a)    **New GO Bonds:**  Subject to any adjustments provided for herein, the
New GO Bonds shall have the original principal amount, interest rate, maturity date and taxable
status as follows: (a) Eight Hundred Ninety-One Million Three Hundred Twenty Thousand
Dollars ($891,320,000.00), five and seventy-five one hundredths percent (5.75%), July 1, 2021,
and tax-exempt; (b) Six Hundred Thirty-Four Million One Hundred Ninety-Five Thousand
Dollars ($634,195,000.00), five and seventy-five one hundredths percent (5.75%), July 1, 2023,
and tax-exempt; (c) Five Hundred Fifty-Eight Million Four Hundred Forty-Five Thousand
Dollars ($558,445,000.00), five and seventy-five one hundredths percent (5.75%) July 1, 2025,
and tax-exempt; (d) Four Hundred Sixty-One Million Four Hundred Twenty-Five Thousand
Dollars ($461,425,000.00), five and seventy-five one hundredths percent (5.75%), July 1, 2027,
and tax-exempt; (e) Three Hundred Fifty-Nine Million Seven Hundred Ninety-Five Thousand
Dollars ($359,795,000.00), five and seventy-five one hundredths percent (5.75%), July 1, 2029,
and tax-exempt; (f) Eight Hundred Million Six Hundred Thirty-Five Thousand Dollars
($800,635,000.00), six percent (6.00%), July 1, 2033, and tax-exempt; (g) Nine Hundred
Seventy-Two Million Forty Thousand Dollars ($972,040,000.00), five and six hundred twenty-
five one thousandths percent (5.625%), July 1, 2039, and tax-exempt; and (h) Six Hundred Fifty-
Six Million Four Hundred Forty Thousand Dollars ($656,440,000.00), seven and one hundred
twenty-five one thousandths percent (7.125%), July 1, 2039, and taxable.  New GO Bonds shall
not carry any default rate of interest.

       (b)    **Deemed Issuance Date:**  Notwithstanding the timing of the Effective
Date, interest on the New GO Bonds shall commence to accrue on March 1, 2020, which date
shall be designated as the "dated" date of the New GO Bonds.

       (c)    **Call Provisions/Optional Redemption:**  The New GO Bonds shall be
callable, in whole or in part, in any order of maturity, at par plus accrued interest thereon, upon
thirty (30) day's prior written notice as follows:

      2021 CIBS: Non-Callable
      2023 CIBS: Non-Callable
      2025 CIBS: Non-Callable
      2027 CIBS: Non-Callable
      2029 CIBS: Non-Callable
      2033 CIBS: Callable as follows:

| **Date** | **Price** |
| --- | --- |
| July 1, 2030 through and including June 30, 2031 | 103% of Par |
| July 1, 2031 through and including June 30, 2032 | 102% of Par |
| July 1, 2032 through and including June 30, 2033 | 101% of Par |
| July 1, 2033 and thereafter | 100% of Par |

      2039 CIBS (Taxable and Tax-Exempt): Callable as follows:

| Date | Price |
|------|-------|
| July 1, 2030 through and including June 30, 2031 | 103% of Par |
| July 1, 2031 through and including June 30, 2032 | 102% of Par |
| July 1, 2032 through and including June 30, 2033 | 101% of Par |
| July 1, 2033 and thereafter | 100% of Par |

If less than all of the New GO Bonds of a particular series are called for prior redemption, Reorganized Commonwealth will select the maturity or maturities of such series of the New GO Bonds to be redeemed, and Depository Trust Company, on behalf of the New GO Bonds Trustee, will select the New GO Bonds within the same maturity of such series to be redeemed by means of a random lottery.

(d)     **Deemed Annual Allocation:**  Pursuant to the New GO Bond Legislation, the Commonwealth shall covenant that, until the New GO Bonds have been paid or satisfied in full in accordance with their terms, each FY, the Commonwealth shall satisfy its obligations to holders of New GO Bonds, by allocating to the payment of principal and interest with respect to the New GO Bonds issued to such holders, first, the 1.03% property tax levied pursuant to Act 83-1991 and collected by the Municipal Revenues Collection Center of the Commonwealth with respect to the New GO Bonds until the total amount of such property taxes shall have been paid to holders of the New GO Bonds, second, the monies arising from the operation of Article VI, Section 8 of the Puerto Rico Constitution until the total amount of such monies shall have been paid to holders of the New GO Bonds, and third other resources of the Commonwealth.

(e)     **Monthly Deposits of Interest and Principal:**  Until the New GO Bonds have been paid or satisfied in full in accordance with their terms, on the first (1st) Business Day of each calendar month, the Reorganized Commonwealth shall deposit Cash in the Debt Service Fund with the New GO Bonds Trustee in the aggregate amount equal to (i) one-sixth (1/6) of the Reorganized Commonwealth's semi-annual obligation with respect to the payment of interest to accrue on the New GO Bonds through the next interest payment date, and (ii) one twelfth (1/12) of the Reorganized Commonwealth's annual obligation with respect to the payment of principal on the New GO Bonds.  Upon deposit thereof, the New GO Bonds Trustee, on behalf of the holders of New GO Bonds, shall have a valid and perfected statutory lien and security interest on such monies deposited, which monies shall be held in trust for the benefit of the New GO Bonds. Without limiting the foregoing, on the Effective Date, the Commonwealth shall deposit into the Debt Service Fund such amounts as may be necessary to account for the New GO Bonds being issued as of the Deemed Issuance Date.

(f)     **Covenants for New GO Bonds:**  On the Effective Date, the Definitive Documents, including the New GO Bonds Indenture, New GO Bond Legislation and/or the Confirmation Order, will contain customary terms, conditions and covenants for similarly structured and supported bonds, including, without limitation, the following covenants and other provisions with respect to New GO Bonds:

(i)     **Non-Impairment Covenant:**  Pursuant to the New GO Bond Legislation and the New GO Bonds Indenture, the Reorganized Commonwealth shall covenant for the benefit of all initial and subsequent holders of New GO Bonds that, until all obligations with respect thereto have been paid or satisfied in full in accordance with their terms, the Reorganized Commonwealth will take no action that would (1) impair the monthly deposits of

interest and principal referred to in Section 57.1(e) hereof, (2) limit or alter the rights vested in the Debtors or Reorganized Debtors in accordance with the Plan and the Confirmation Order to fulfill the terms of any agreements with the holders of the New GO Bonds or (3) impair the rights and remedies of the holders of the New GO Bonds.

        (ii)    **Tax-Exemption Covenant:**  Pursuant to the New GO Bond Indenture, the Reorganized Commonwealth shall covenant for the benefit of all initial and subsequent holders of federally tax-exempt New GO Bonds that, until all obligations with respect thereto have been paid or satisfied in full in accordance with their terms, Reorganized Commonwealth will do and perform all acts and things permitted by law and reasonably necessary or desirable to assure that interest paid to the holders of any federally tax-exempt New GO Bonds shall be and remain excludable from gross income for federal income tax purposes.

        (g)    **Debt Service Reserve Fund:**  The New GO Bonds shall have a Debt Service Reserve Fund into which the Debt Service Reserve Fund Requirement (i) shall be funded (1) on the Effective Date or (2) in five (5) equal annual installments over an initial five-year period from and after the Effective Date, which election shall be made, in the joint and absolute discretion of the Oversight Board and the Commonwealth, on or prior to the Effective Date, (ii) once deposited, shall be held in trust by the New GO Bonds Trustee for the benefit of holders of New GO Bonds and (iii) shall be subject to a statutory first lien once deposited with the New GO Bonds Trustee for the benefit of holders of New GO Bonds.

        (h)    **Rights of Acceleration:**  The New GO Bonds shall not have rights of acceleration.

        (i)    **Residual Interest of the Commonwealth:**  Any funds held by the New GO Bonds Trustee in excess of the required deposits pursuant to the New GO Bonds Indenture shall be released from the New GO Bonds Indenture to, or at the direction of, the Commonwealth, including to the extent funds remain in the Debt Service Reserve Fund upon payment or satisfaction in full of the New GO Bonds in accordance with their terms, such amounts shall revert and be distributed to, or at the direction of, the Commonwealth.

        (j)    **Direct Right of Action:**  Pursuant to the New GO Bonds Indenture, and subject to such additional rights as provided therein, the New GO Bonds Trustee shall have a direct right of action to enforce the terms of the New GO Bonds Indenture, including, without limitation, with respect to funding deposits in the Debt Service Fund and the Debt Service Reserve Fund and seeking specific performance remedies for any breach of covenants in the New GO Bonds Indenture.

        (k)    **Governing Law:**  The New GO Bonds Indenture and the New GO Bonds issued thereunder shall be governed by the laws of the State of New York, without giving effect to principals of conflicts of law.

    57.2    **Issuance of COFINA Junior Lien Bonds**:  On the Effective Date, Reorganized Commonwealth shall cause COFINA to issue the COFINA Junior Lien Bonds, as more particularly described herein. The maturities, interest rates and amortization schedules for the COFINA Junior Lien Bonds are annexed hereto as Exhibit "J". All debt service on the COFINA Junior Lien Bonds which is not paid when due, whether at or prior to final scheduled maturity,

shall remain due and outstanding until paid in full and shall be paid.  Interest shall accrue on such overdue debt service at the regular coupon rate, compounding semiannually, until the applicable COFINA Junior Lien Bonds are paid or satisfied in full in accordance with their terms.  Interest on the COFINA Junior Lien Bonds shall be calculated on a 30/360 basis.  To the extent the Government Parties, each acting in its sole and absolute discretion, determine to apply for ratings on the COFINA Junior Lien Bonds, the Government Parties shall use their commercially reasonable best efforts to obtain ratings on the COFINA Junior Lien Bonds, including promptly responding in good faith to documentary or other requests, as soon as reasonably practicable as determined solely by the Government Parties, following consultation with up to two (2) Initial PSA Creditors jointly designated by the Constitutional Debt Group, the GO Group, the LCDC and the QTCB Group, each of which shall have executed a confidentiality agreement in form and substance satisfactory to the Oversight Board and restricting such Initial PSA Creditors from trading New GO Bonds and COFINA Junior Lien Bonds, including based upon the Government Parties' judgment with respect to expected benefits.  After the Government Parties determine which rating agencies to apply for ratings from, the Government Parties shall use their commercially reasonable best efforts to obtain the best possible ratings.  Notwithstanding anything contained in the Plan to the contrary, to the extent that Taxable COFINA Junior Lien Bonds are issued, such Taxable COFINA Junior Lien Bonds shall be distributed to holders of Allowed Claims in the following order of priority: (1) first, to holders of Allowed Taxable Election CW Claims and (2) second, pro rata to all other holders of Allowed Claims and recipients of COFINA Junior Lien Bonds, without duplication.

      (a)   **COFINA Junior Lien Bonds:**  Subject to any adjustments provided herein, the COFINA Junior Lien Bonds shall have the original principal amount, interest rate maturity date and taxable status as follows: (a) Four Hundred Twenty-Four Million Nine Hundred Twenty-Five Thousand Dollars ($424,925,000.00), five percent (5.0%), July 1, 2021 and tax-exempt; (b) Three Hundred Forty-Four Million Seventy Thousand Dollars ($344,070,000.00), five percent (5.0%), July 1, 2023 and tax-exempt; (c) Four Hundred Forty-Eight Million Nine Hundred Seventy-Five Thousand Dollars ($448,975,000.00), five percent (5.0%), July 1, 2025 and tax-exempt; (d) Five Hundred Seventy Million Three Hundred Twenty Thousand Dollars ($570,320,000.00), five percent (5.0%), July 1, 2027 and tax-exempt; (e) Six Hundred Ninety Million Sixty Thousand Dollars ($690,060,000.00), five percent (5.0%), July 1, 2029 and tax-exempt; (f) One Billion Three Hundred Twenty-Three Million Four Hundred and Five Thousand Dollars ($1,323,405,000.00), four and seventy-five one hundredths percent (4.75%), July 1, 2033 and tax-exempt; (g) Eighty Hundred Seventy-Six Million Five Hundred Thirty-Five Thousand Dollars ($876,535,000.00), four and eight hundred seventy-five one thousandths percent (4.875%), July 1, 2039 and tax-exempt; and (h) Six Hundred Fifty-Six Million Three Hundred Twenty-Five Thousand Dollars ($656,325,000.00), six and one hundred twenty-five one thousandths percent (6.125%), July 1, 2039 and taxable.  COFINA Junior Lien Bonds shall not carry any default rate of interest.

      (b)   **Deemed Issuance Date:**  Notwithstanding the timing of the Effective Date, interest on the COFINA Junior Lien Bonds shall commence to accrue on March 1, 2020, which date shall be designated as the "dated" date of the COFINA Junior Lien Bonds.

      (c)   **Call Provisions/Optional Redemption:**  The COFINA Junior Lien Bonds shall be callable, in whole or in part, in any order of maturity, at par plus accrued interest thereon, upon thirty (30) day's prior written notice as follows:

2021 CIBS: Non-Callable
2023 CIBS: Non-Callable
2025 CIBS: Non-Callable
2027 CIBS: Non-Callable
2029 CIBS: Non-Callable
2033 CIBS: Callable as follows:

| Date | Price |
|---|---|
| July 1, 2030 through and including June 30, 2031 | 103% of Par |
| July 1, 2031 through and including June 30, 2032 | 102% of Par |
| July 1, 2032 through and including June 30, 2033 | 101% of Par |
| July 1, 2033 and thereafter | 100% of Par |

2039 CIBS (Taxable and Tax Exempt): Callable as follows:

| Date | Price |
|---|---|
| July 1, 2030 through and including June 30, 2031 | 103% of Par |
| July 1, 2031 through and including June 30, 2032 | 102% of Par |
| July 1, 2032 through and including June 30, 2033 | 101% of Par |
| July 1, 2033 and thereafter | 100% of Par |

(d)     **Covenants for COFINA Junior Lien Bonds:**  On the Effective Date, the Definitive Documents, including the COFINA Junior Lien Bonds Indenture and the COFINA Junior Lien Bonds Legislation, will contain customary terms, conditions and covenants for similarly structured bonds, including, without limitation, the following covenants with respect to the COFINA Junior Lien Bonds:

(i)     **Non-Impairment Covenant:**  Pursuant to the COFINA Junior Lien Bonds Legislation and the COFINA Junior Lien Bonds Indenture, the Reorganized Commonwealth will covenant for the benefit of all initial and subsequent holders of COFINA Junior Lien Bonds, that, until all obligations with respect thereto have been paid or satisfied in full in accordance with their terms, Reorganized Commonwealth will take no action that would (1) impair COFINA's right to receive the COFINA Pledged Taxes, including the Conveyed Commonwealth Share, (2) limit or alter the rights vested in or Reorganized Commonwealth or COFINA in accordance with the Plan and the Confirmation Order to fulfill the terms of any agreements with the holders of the COFINA Junior Lien Bonds, (3) materially and adversely impair the collection of the COFINA Pledged Taxes in any FY, or (4) impair the rights and remedies of the holders of the COFINA Junior Lien Bonds with respect to the COFINA Pledged Taxes.

(ii)     **Tax-Exemption Covenant:**  Pursuant to the COFINA Junior Lien Bonds Indenture, Reorganized Commonwealth and COFINA will covenant for the benefit of all initial and subsequent holders of federally tax-exempt COFINA Junior Lien Bonds that, until all obligations with respect thereto have been paid or satisfied in full in accordance with their terms, Reorganized Commonwealth and COFINA will do and perform all acts and things permitted by law and reasonably necessary or desirable to assure that interest paid to the holders of any federally tax-exempt COFINA Junior Lien Bonds shall be and remain excludable from gross income for federal income tax purposes.

(e)  **Rights of Acceleration**:  The COFINA Junior Lien Bonds shall not have rights of acceleration.

(f)  **Governing Law**:  The COFINA Junior Lien Bonds Indenture and the COFINA Junior Lien Bonds issued thereunder shall be governed by the laws of the State of New York, without giving effect to principles of conflicts of laws.

57.3  **Sharing of Benefits Regarding Tax-Exempt Treatment of the New GO Bonds and COFINA Junior Lien Bonds**:  Notwithstanding the terms and provisions of Sections 57.1 and 57.2 hereof, in the event that the Government Parties obtain a determination from the IRS or an opinion from Section 103 Bond Counsel (collectively, a "Favorable Determination") that the ratio of the aggregate amount of all taxable New GO Bonds and taxable COFINA Junior Lien Bonds to be issued on the Effective Date (the "New Ratio") to the total aggregate amount of all New GO Bonds and all COFINA Junior Lien Bonds is less than twelve percent (12%) (the "Existing Ratio"), the benefits of such determination shall be shared as follows: (i) in the event that the Favorable Determination is obtained on or prior to the Effective Date, (A) the Commonwealth shall receive its share of the benefit in the form of a reduction of annual cash flow required to pay scheduled New GO Bond and COFINA Junior Lien Bond debt service that would result from reduction of the interest coupons on the portion of the Taxable Bonds shown in the Principal and Coupon Summary set forth in Exhibit "I" to the Plan Support Agreement that, due to a Favorable Determination may be issued instead on a tax-exempt basis, such reduction being fifty basis points (0.50%) in the New GO Bonds Taxable Coupon and thirty-seven and one-half basis points (0.375%) in the COFINA Junior Lien Bonds Taxable Coupon set forth in such Exhibit "I" for the favorably affected portion of such bonds; and (B) the holders of any Claims receiving New GO Bonds or COFINA Junior Lien Bonds pursuant to the Plan shall receive the balance of the benefit of such Favorable Determination; (ii) in the event that the Favorable Determination is obtained subsequent to the Effective Date, then the holders of the Taxable Bonds affected by such determination  (the "Invited Bonds")  shall be invited to exchange such bonds for converted bonds (the "Exchange Offer") and the interest rate on the converted bonds shall be adjusted to reflect a yield that is no more than twenty-five (25) basis points lower than the yield for Invited Bonds of the same type, interest rate, series and maturity, with such yield comparison determined in the manner specified in applicable U.S. Treasury Regulations (the "Treasury Regulations") promulgated under the IRC, as amended; provided, however, that, any such reduction shall only affect the portion of the New GO Bonds and COFINA Junior Lien Bonds affected by the Favorable Determination; and, provided, further, that, such converted bonds shall be accompanied by the favorable opinion of Section 103 Bond Counsel that the interest, other than pre-issuance accrued interest, on such converted bonds, and on the Invited Bonds exchanged for such converted bonds from the original date of delivery of such Invited Bonds so exchanged, is, in such counsel's opinion, excluded from gross income for federal income tax purposes and from U.S. state, Commonwealth and local income taxation; and (iii) in the event that neither of the foregoing determinations are obtained, the covenant and obligation to seek such determinations shall terminate upon the earlier to occur of (1) August 1, 2021, (2) notification by the IRS to the Commonwealth that IRS is unable to issue a favorable private letter ruling, closing agreement or other type of IRS determination with respect to the matters addressed by this subsection, and (3) the amendment of the New GO Bonds Indenture and COFINA Junior Lien Bonds Indenture following receipt of a favorable determination and consummation of an Exchange Offer.

57.4 **Comprehensive Cap on All Net Tax-Supported Debt**:  During the Debt Policy Period, in addition to the limit on the Commonwealth's incurrence of good faith, credit and taxing power credit public debt set forth in the Commonwealth Constitution, the Commonwealth shall adopt and maintain a Debt Management Policy that includes a comprehensive cap on the Maximum Annual Debt Service payable on Net Tax-Supported Debt and the Commonwealth and its instrumentalities (including COFINA) shall not incur additional Net Tax-Supported Debt if the proposed issuance thereof would cause the ratio of (a) Maximum Annual Debt Service due in any future FY on all Net Tax-Supported Debt Outstanding to (b) the average of the annual Debt Policy Revenues during the immediately preceding two (2) FYs, as certified by the Secretary of the Treasury of the Commonwealth, to exceed nine and sixteen one hundredths percent (9.16%), including a secured and/or securitized debt sublimit of twenty-five one hundredths percent (0.25%) of Debt Policy Revenues above and beyond the percentage of Debt Policy Revenues required to pay the COFINA Senior Lien Bonds and the COFINA Junior Lien Bonds.  Such Debt limitation shall be in addition to any other limitations imposed by applicable law and nothing contained herein shall be construed as superseding, amending or repealing the additional Debt limitation imposed by the Commonwealth Constitution on public Debt and guarantees secured by the Commonwealth's good faith, credit and taxing power.  The Secretary of Treasury's certification of compliance with the Debt limit pursuant to this Section 57.4 shall be conclusive and binding absent manifest error; provided, however, that, in issuing such certification, with respect to the calculation of the revenues of public corporations included as Debt Policy Revenues, the Secretary of Treasury may rely on certifications from officers of such public corporations.

57.5 **Adoption and Maintenance of a Debt Management Policy**:  During the Debt Policy Period, the Commonwealth shall maintain and comply with a Debt Management Policy designed to ensure that certain past Debt issuance practices of the Commonwealth are not repeated.  While the Commonwealth may revise and update its Debt Management Policy to reflect changing bond market conditions and standards, the Debt Management Policy shall, unless otherwise approved, in writing, by the Oversight Board, at all times include the following principles and limitations:

(a) **Long-Term Borrowing for Capital Improvements Only**:  To ensure the Commonwealth achieves and maintains a structurally balanced budget consistent with PROMESA's requirement that Puerto Rico return to fiscal responsibility, Tax-Supported Debt issued after the Effective Date may only be incurred to finance Capital Improvements, as determined by the issuer of such Debt and approved by AAFAF, or to refinance Tax-Supported Debt in accordance with the terms and provisions of Section 57.3(d) hereof.  Proceeds derived from any such issuance may be used to cover any and all direct and indirect expenses that, in the issuer's reasonable discretion, are necessary to carry out such Capital Improvements, including, without limitation, any and all expenses incurred in connection with the issuance itself.

(b) **30-Year Maturity Limitation on All Tax-Supported Borrowing**:  No Tax-Supported Debt issued on or after the Effective Date may have a legal final maturity later than thirty (30) years from the date of its original issuance, and no such Debt may be refinanced by any Debt extending such legal final maturity date beyond such original thirty (30)-year maturity date limitation; provided, however, that, the foregoing shall not apply to (a) Tax-Supported Debt issued to finance public housing facilities, subject to the limitation established in the Commonwealth Constitution or (b) Tax-Supported Debt issued to refinance Debt that was

Outstanding prior to the Effective Date and had a legal maturity of more than thirty (30) years, subject to terms and provisions of Section 57.3(d) hereof.

(c)     **Required Principal Amortization**:  No series of Tax-Supported Debt issued from and after the Effective Date may be issued unless its principal commences to amortize within two (2) years of its original issuance date, or such other period not to exceed five (5) years from original issuance as may be permitted under the U.S. Internal Revenue Code for tax exempt financings of new construction or reconstruction of Capital Improvements, and continues amortizing in each and every year until such Debt is no longer outstanding.

(d)     **Refinancings Permitted only for Cash Flow Savings in Every Fiscal Year**:  Refinancings of Tax-Supported Debt are permitted only if (i) there is no increase in the amount of bond principal and interest payable in any fiscal year and (ii) such refinancing produces positive present value savings, after taking into consideration transaction expenses, at the levels specified by the Commonwealth in its Debt Management Policies; provided, however, that, refinancings without cash flow savings in every FY are permitted if the refinancing is completed in direct response to a hurricane, earthquake, pandemic, terrorism or other natural disaster and similar emergencies and the debt service due in any future FY does not increase by more than ten percent (10%) and the financing is required by its terms to be repaid in full within ten (10) years.

Notwithstanding the foregoing, nothing contained herein shall prohibit the Commonwealth from adopting, maintaining and complying with a Debt Management Policy that is more restrictive than the requirements set forth above.  The Debt Management Policy shall be in addition to any other limitations imposed by law and nothing contained herein shall be construed as superseding, amending, or repealing any additional restrictions imposed by the Commonwealth Constitution.

## ARTICLE LVIII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

58.1     **Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases**:  Pursuant to sections 365(b)(2) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and subject to the provisions of Sections 58.5 and 58.7 hereof, all Executory Contracts and Unexpired Leases that exist between the Debtors and any Entity, and which have not expired by their own terms on or prior to the Confirmation Date, shall be deemed rejected by the Debtors as of the Effective Date, except for any Executory Contract and Unexpired Lease (a) of PBA and relating to the lease or sublease of PBA Property, (b) that has been assumed and assigned or rejected pursuant to an order of the Title III Court entered prior to the Effective Date, (c) that is specifically designated as a contract or lease to be assumed or assumed and assigned on the schedules to the Plan Supplement or (d) that has been registered with the Office of the Comptroller of Puerto Rico or has been approved by the Oversight Board or authorized by the Title III Court, unless specifically designated a contract to be rejected in the Plan Supplement; provided, however, that the Debtors reserve the right, on or prior to the Confirmation Date, to amend such schedules to delete any Executory Contract and Unexpired Lease therefrom or add any Executory Contract and Unexpired Lease thereto, in which event such Executory Contract(s) and Unexpired Lease(s) shall be deemed to be, as the case may be,

either rejected, assumed, or assumed and assigned as of the Effective Date.  The Debtors shall serve (y) notice of any Executory Contract and Unexpired Lease to be assumed or assumed and assigned through the operation of this Section 58.1, by including a schedule of such contracts and leases in the Plan Supplement and (z) notice of any Executory Contract and Unexpired Lease to be rejected through the operation of this Section 58.1, by serving a separate notice to the relevant counterparties to such agreements.  To the extent there are any amendments to such schedules, the Debtors shall provide notice of any such amendments to the parties to the Executory Contract and Unexpired Lease affected thereby.  The listing of a document on the schedules to the Plan Supplement or in any separate notice shall not constitute an admission by the Debtors that such document is an Executory Contract and Unexpired Lease or that the Debtors have any liability thereunder.

58.2    **Approval of Rejection or Assumption of Executory Contracts and Unexpired Leases**:  Entry of the Confirmation Order by the Title III Court shall constitute approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection, assumption, or assumption and assignment, as the case may be, of an Executory Contract and an Unexpired Lease pursuant to Section 58.1 of the Plan.

58.3    **Inclusiveness**:  Unless otherwise specified on the schedules to the Plan Supplement, each Executory Contract and Unexpired Lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract and Unexpired Lease, without regard to whether such agreement, instrument, or other document is listed on such schedule.

58.4    **Cure of Defaults**:  Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to Section 58.1 of the Plan, the Debtors shall, pursuant to the provisions of section 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within at least twenty (20) days prior to the Confirmation Hearing, file with the Title III Court and serve by first class mail on each non-Debtor party to such Executory Contracts and Unexpired Leases to be assumed pursuant to Section 58.1 of the Plan, a notice, which shall list the cure amount as to each executory contract or unexpired lease to be assumed or assumed and assigned.  The parties to such Executory Contracts and Unexpired Leases will have twenty (20) days from the date of service of such notice to file and serve any objection to the cure amounts listed by the Debtors.  If there are any objections filed, the Title III Court shall hold a hearing on a date to be set by the Title III Court.  Notwithstanding the terms and provisions of Section 58.1 of the Plan, each of the Debtors shall retain its rights to reject any of its Executory Contracts and Unexpired Leases that are subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date.

58.5    **Insurance Policies**:  Subject to the terms and provisions of Section 58.7 hereof, each of the Debtors' Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan; provided, however, that, such treatment shall not, and shall not be construed to, discharge or relieve any Monoline with respect to its respective obligations to holders of Claims under policies of insurance and applicable law and governing documents with respect thereto.

58.6 **Rejection Damage Claims**: If the rejection of an Executory Contract and Unexpired Lease by the Debtors hereunder results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors, or its properties or agents, successors, or assigns, including, without limitation, Reorganized Debtors, unless a proof of Claim is filed with the Title III Court and served upon attorneys for the Oversight Board and Reorganized Debtors, as the case may be, on or before thirty (30) days after the later to occur of (i) the Confirmation Date, and (ii) the date of entry of an order by the Title III Court authorizing rejection of a particular Executory Contract and Unexpired Lease.

58.7 **Indemnification and Reimbursement Obligations**: For purposes of the Plan, (i) to the extent executory in nature, the obligations of the Debtors, including, without limitation, directors and officers insurance policies, to indemnify and reimburse its directors or officers that were directors or officers, respectively, on or prior to the Commonwealth Petition Date, the ERS Petition Date or the PBA Petition Date, as the case may be, shall be deemed assumed as of the Effective Date and (ii) indemnification obligations of the Debtors arising from conduct of officers and directors during the period from and after Commonwealth Petition Date, the ERS Petition Date or the PBA Petition Date, as the case may be, shall be Administrative Expense Claims; provided, however, that, under no circumstances shall the Debtors or the Reorganized Debtors, as the case may be, be responsible for any indemnification obligation, cost, or expense associated with the gross negligence, intentional fraud or willful misconduct of their respective officers or directors.

58.8 **Nonoccurrence of Effective Date**: In the event that the Effective Date does not occur, the Title III Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

58.9 **Reservation of Rights**: Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors, Reorganized Debtors or any other party that any such contract or lease is in fact an Executory Contract and Unexpired Lease or that the Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or Reorganized Debtors shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

58.10 **Collective Bargaining Agreements**: Except as provided in Articles XLIII and XLIV hereof, none of the Debtors' collective bargaining agreements shall be treated as Executory Contracts and none shall be assumed or rejected or otherwise treated pursuant to the Plan, but shall remain in effect subject, in all instances, to Puerto Rico law and Articles XLIII and XLIV regarding the payment and ongoing treatment of pension and related claims and obligations.

58.11 **PRASA Guarantee**: Notwithstanding anything contained in the Plan to the contrary, on the Effective Date, the Commonwealth shall assume all of its obligations in accordance with the terms and provisions of Act No. 45 of the Commonwealth Legislature, approved on July 28, 1994, as amended, related to (a) PRASA Revenue Refunding Bonds, 2008 Series A, issued in the original principal amount of $159,055,000.00 and (b) PRASA Revenue

Refunding Bonds, 2008 Series B, issued in the original principal amount of $125,700,000.00, in each case, pursuant to (i) Resolution No. 1583, adopted December 7, 1995 and amended and restated as of March 7, 2008.

## ARTICLE LIX

## PROVISIONS GOVERNING DISTRIBUTIONS

59.1    **Time and Manner of Distribution**:  Except as otherwise provided herein, distributions under the Plan shall be made to each holder of an Allowed Claim as follows:

(a)    **Distributions to Holders of PBA Bond Claims:**  Except as otherwise provided herein, within ten (10) Business Days following the Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed PBA Bond Claim, and in each case consistent with the terms hereof, such Creditor's Pro Rata Share, if any, of the PBA Bond Distribution, PSA Restriction Fee, Retail Support Fee, Retail Support Fee Return, and Consummation Costs, if applicable; provided, however, that, distribution of the Retail Support Fee, if any, to a holder of an Allowed PBA Bond Claim is subject to the delivery, on the prior to the Ballot Date, of such holder's applicable bonds through the Automatic Tender Offer Program at The Depository Trust Company with a certification that such holder is a Retail Investor.

(b)    **Distributions to Holders of CW Bond Claims and CW Guarantee Bond Claims:**  Except as otherwise provided herein, within ten (10) Business Days following the Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed CW Bond Claim or an Allowed CW Guarantee Bond Claim, such Creditor's (i) applicable recovery provided hereunder, (ii) the PSA Restriction Fee, (iii) the Retail Support Fee, (iv) the Retail Support Fee Return, and (v) the Consummation Costs, in each case, to the extent applicable; provided, however, that, distribution of the Retail Support Fee, if any, to a holder of an Allowed CW Bond Claim is subject to the delivery, on or prior to the Ballot Date, of such holder's applicable bonds through the Automatic Tender Offer Program at The Depository Trust Company with a certification that such holder is a Retail Investor.

(c)    **Distributions to Holders of ERS Bond Claims:**  Except as otherwise provided herein, within ten (10) Business Days following the Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed ERS Bond Claim, such Creditor's (i) Pro Rata Share, if any, of the ERS Bond Collateral Cash, (ii) ERS Bond Settlement Distribution and (iii) ERS Taxable Bond Distribution, in each case, to the extent applicable.

(d)    **Distributions with Respect to General Unsecured Claims:**  Except as otherwise provided herein, within ten (10) Business Days following the Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, (i) to each holder of an Allowed CW General Unsecured Claim and Allowed ERS General Unsecured Claim such Creditor's Pro Rata Share, if any, of the CW GUC Recovery and the ERS GUC Pool, respectively, and (ii) to each holder of an Allowed PBA General Unsecured Claim distributions in accordance with the terms and provisions of Section 13.1 hereof.

(e)     **Distribution of Cash to Holders of Allowed Administrative Expense Claims:**  Except as otherwise provided herein, on or as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Administrative Expense Claim, Cash in the amount of such Allowed Claim.

59.2     **Timeliness of Payments**:  Any payment or distribution to be made pursuant to the Plan shall be deemed to be timely made if made within ten (10) Business Days after the date specified in the Plan.  Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due, including, without limitation, deeming distributions made pursuant to Section 59.1(a) hereof to have been made on the Effective Date.

59.3     **Distributions by the Disbursing Agent**:  Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall be deemed to hold all property to be distributed hereunder in trust for the Entities entitled to receive the same.  The Disbursing Agent shall not hold an economic or beneficial interest in such property.

59.4     **Manner of Payment under the Plan**:  Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Disbursing Agent shall be made, at the election of the payor, by check drawn on a domestic bank or by wire transfer from a domestic bank; provided, however, that no Cash payment shall be made to a holder of an Allowed Claim until such time, if ever, as the amount payable thereto is equal to or greater than Ten Dollars ($10.00).

59.5     **Delivery of Distributions**:  Subject to the provisions of Rule 9010 of the Bankruptcy Rules, and except as provided in the Confirmation Order or herein, distributions and deliveries to holders of Allowed Claims shall be made through The Depository Trust Company or at the address of each such holder as set forth on the Schedules filed with the Court, unless superseded by the address set forth on proofs of Claim filed by such holders, or at the last known address of such holder if no proof of Claim is filed or if the Debtors have been notified in writing of a change of address; provided, however, that initial distributions by the Disbursing Agent for the benefit of holders of Allowed Bond Claims shall be made to the trustee or fiscal agent, as applicable, for such obligation in accordance with the respective governing documents for such obligations; and, provided, further, that the Disbursing Agent may make distributions of PSA Restriction Fees, the Retail Support Fee Return, and Consummation Costs in Cash to a party entitled thereto in a manner mutually agreed upon between such party and the Disbursing Agent. The trustee or fiscal agent for each such obligation shall, in turn, deliver the distribution to holders in the manner provided for in the applicable governing documents.  The Debtors, its agents and servicers, and the Disbursing Agent shall have no obligation to recognize any transfer of Bond Claims after the Distribution Record Date; provided, however, that the New GO Bonds and the COFINA Junior Lien Bonds will be transferable and recognized if made in accordance with the terms and conditions of the New GO Bonds Indenture and the COFINA Junior Lien Bonds Indenture, respectively.

59.6    **Cancellation of Notes, Instruments, Certificates, and Other Documents**:
Except (a) as provided in any contract, instrument or other agreement or document entered into
or delivered in connection with the Plan, (b) for purposes of evidencing a right to distribution
under the Plan, or (c) as specifically provided otherwise in the Plan (including any rejection of
Executory Contracts or Unexpired Leases pursuant to Section 58.1 hereof), on the Effective
Date, the PBA Bonds, ERS Bonds and GO Bonds and all instruments and documents related
thereto will be deemed automatically cancelled, terminated and of no further force or effect
against the Debtors without any further act or action under any applicable agreement, law,
regulation, order or rule, with the Debtors and the applicable trustee, paying agent or fiscal agent,
as the case may be, having no continuing obligations or duties and responsibilities thereunder
and the obligations of the parties to the Debtors, as applicable, under the PBA Bonds, ERS
Bonds and GO Bonds and all instruments and documents related thereto shall be discharged;
provided, however, that, notwithstanding anything contained herein to the contrary, the PBA
Bonds, ERS Bonds and GO Bonds and such other instruments and documents shall continue in
effect solely (i) to allow the Disbursing Agent to make any distributions as set forth in the Plan
and to perform such other necessary administrative or other functions with respect thereto, (ii) to
allow holders of Allowed Bond Claims to receive distributions in accordance with the terms and
provisions of the Plan, (iii) for any trustee, agent, contract administrator or similar entity under
all instruments and documents related thereto, to perform necessary functions, including making
distributions, in accordance with the Plan and to have the benefit of all the rights and protections
and other provisions of such instruments and documents, as applicable, and all other related
agreements, (iv) to set forth the terms and conditions applicable to parties to such documents and
instruments other than the Debtors, or (v) as may be necessary to preserve any claims under the
respective insurance policies and related documents issued by a Monoline and the Oversight
Board shall request that the Commonwealth and PBA use their reasonable efforts to (1) maintain
the existing CUSIP numbers for the Monoline-insured GO Bonds and PBA Bonds, respectively,
and (2) take such other reasonable steps as may be necessary to preserve and effectuate such
Claims.  Notwithstanding the foregoing, and except as otherwise expressly provided in the Plan,
such bonds or bond documents that remain outstanding shall not form the basis for the assertion
of any Claim against the Debtors or Reorganized Debtors, as the case may be.

59.7    **Undeliverable/Reserved Distributions**:

(a)    **Holding of Undeliverable Distributions by the Disbursing Agent**:  If
any distribution to any holder is returned to the Disbursing Agent as undeliverable, no further
distribution shall be made to such holder unless and until the Disbursing Agent is notified, in
writing, of such holder's then-current address.  Subject to the terms and provision of
Section 59.7(b) hereof, undeliverable distributions shall remain in the possession of the
Disbursing Agent until such time as a distribution becomes deliverable.  All Entities ultimately
receiving previously undeliverable Cash shall not be entitled to any interest or other accruals
thereon of any kind.  Nothing contained in the Plan shall require the Disbursing Agent to attempt
to locate any holder of an Allowed Claim.

(b)    **Failure to Claim Undeliverable Distributions**:  If (i) a check is sent, by
the Disbursing Agent to a holder in respect of distributions and such check is not negotiated
within one hundred twenty (120) days following the date on which such check was issued, or
(ii) any other form of distribution to a holder is otherwise undeliverable, the Disbursing Agent
(or its duly authorized agent) shall, on or prior to the date that is one hundred eighty (180) days

from (i) the Effective Date, with respect to all Allowed Claims as of the Effective Date, and (ii) the date that a distribution is made with respect to any Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date, file a list with the Title III Court setting forth the names of those Entities for which distributions have been made hereunder that have not been negotiated or have been returned as undeliverable as of the date thereof.  Any holder of an Allowed Claim on such list that does not identify itself and assert its rights pursuant to the Plan to receive a distribution within six (6) months from the date so listed shall have its entitlement to such undeliverable distribution discharged and shall be forever barred from asserting any entitlement pursuant to the Plan, against Reorganized Debtors, the trustees, or their respective professionals, agents, or property, and any (1) Cash in the possession of the Disbursing Agent or the trustee with respect to existing securities, as the case may be, shall be released to Reorganized Debtors for use to discharge operating expenses of Reorganized Debtors and (2) the New GO Bonds and COFINA Junior Lien Bonds in the possession of the Disbursing Agent or trustee with respect to existing securities, as the case may be, shall be released to Reorganized Debtors for cancellation or deposit into the treasury of Reorganized Debtors, as determined by Reorganized Debtors in its sole and absolute discretion.

59.8    **Withholding and Reporting Requirements**:  Any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any United States federal, state or local tax law or tax authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such withholding tax obligations and, if any party issuing any instrument or making any distribution under the Plan fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse such party.  The Disbursing Agent may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder.  If the holder fails to comply with such a request within one year, such distribution shall be deemed an Unclaimed Distribution.

59.9    **Time Bar to Cash Payments**:  Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within one hundred twenty (120) days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of (i) the first (1st) anniversary of the Effective Date or (ii) ninety (90) days after the date of issuance of such check, if such check represents a final distribution hereunder on account of such Claim.  After such date, all Claims in respect of voided checks shall be discharged and forever barred and the Disbursing Agent shall retain all monies related thereto for the sole purpose of redistribution to holders of Allowed Claims in accordance with the terms and provisions hereof.

59.10   **Distributions After Effective Date**:  Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made in accordance with the terms and provisions of Article LXIV of the Plan.

59.11   **Setoffs**:  Except as otherwise provided in the Plan or in the Confirmation Order, the Disbursing Agent may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim by the Disbursing Agent), the claims, rights, and Causes of Action of any nature that the Debtors or Reorganized Debtors may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors of any such claims, rights, and Causes of Action that the Debtors or the Reorganized Debtors may possess against such holder; and, provided, further, that nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment; and, provided, further, that nothing in this Section 59.11 shall affect the releases and injunctions provided in Article LXXIV of the Plan.

59.12   **Allocation of Plan Distributions Between Principal and Interest**:  To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first, to interest accrued and unpaid as of the date immediately preceding the Commonwealth Petition Date, the ERS Petition Date or the PBA Petition Date, as applicable, second, to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts; provided, however, that the Debtors or Reorganized Debtors' treatment of any distributions for its tax purposes will not be binding on any Creditor as to the treatment of such distributions for any regulatory, tax or other purposes.

59.13   **Payment of Trustee Fees and Expenses**:  No later than five (5) days prior to the Effective Date, trustees shall provide invoice summaries and supporting documentation (subject to redaction to preserve attorney-client privilege) to the Oversight Board and AAFAF, on behalf of the Debtors, relating to all incurred and unpaid trustee claims as of such date, together with an estimate of trustee claims to be incurred from such date up to and including the Effective Date. Within fifteen (15) Business Days thereof, the Debtors shall notify the applicable trustee, in writing, of any dispute relating to the reasonableness of any portion of the trustee claims.  Any portion of the trustee claims that is not disputed by the Debtors shall be paid by the Debtors on the Effective Date without further application to, or approval of, the Title III Court; provided, however, that, upon notification of a dispute, trustees (a) shall submit an application to the Title III Court seeking a resolution of such dispute by the Title III Court or (b) waive, in writing, payment of such disputed amount; and, provided, further, that, upon the entry of an order of the Title III Court authorizing payment of any disputed amount, upon notice and a hearing, unless otherwise stayed, the Debtors shall pay such allowed portion of such trustee claims.  To the extent any trustee claim is incurred from and after the Effective Date, Reorganized Debtors shall be responsible and, upon presentation of supporting documentation in form and substance satisfactory to Reorganized Debtors (subject to redaction to preserve attorney-client privilege),

shall satisfy such post-Effective Date trustee claims; provided, however, that, under no circumstance shall the Disbursing Agent, the Debtors or Reorganized Debtors be responsible for any indemnification obligation, cost, or expense of trustees associated with the gross negligence, intentional fraud or willful misconduct of trustees in making any distribution pursuant to the Plan.

59.14   **Beneficial Owner**:  For all purposes of the Plan, including, without limitation, for purposes of distributions pursuant to the terms and provisions of this Article LIX, except with respect to Claims arising from bonds insured by Syncora, the "holder" of a Claim shall mean any Entity who, directly or indirectly, has investment power with respect to any Claim, which includes the power to dispose or to direct the disposition of such Claim; provided, however, that, solely for purposes of Article LXII hereof and section 1126 of the Bankruptcy Code, the "holder" of any Bond Claims shall be determined in accordance with Section 301(c)(3) of PROMESA and any law or governing documents applicable to such Bond Claims.

59.15   **Value of Distributions**:  For purposes of calculating the value of distributions made to holders of Allowed Claims, (a) Cash shall be valued in the amount distributed and (b) the New GO Bonds and the COFINA Junior Lien Bonds shall be valued at the original principal amount thereof.

# ARTICLE LX

## AVOIDANCE ACTIONS TRUST

60.1   **Execution of Avoidance Actions Trust Agreement**:  On or before the Effective Date, the Debtors and the Avoidance Actions Trustee shall execute the Avoidance Actions Trust Agreement, and shall take all other necessary steps to establish the Avoidance Actions Trust and the Avoidance Actions Trust Interests therein, which shall be for the benefit of the Avoidance Actions Trust Beneficiaries, whether their Claims are Allowed before, on or after the Effective Date.  The Avoidance Actions Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Avoidance Actions Trust as a "liquidating trust" for United States federal income tax purposes.

60.2   **Purpose of the Avoidance Actions Trust**:  The Avoidance Actions Trust shall be established for the sole purpose of Avoidance Actions and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Avoidance Actions Trust.

60.3   **Avoidance Actions Trust Assets**:  The Avoidance Actions Trust shall consist of the Avoidance Actions Trust Assets.  On the Effective Date, the Debtors shall transfer all of the Avoidance Actions Trust Assets to the Avoidance Actions Trust. The Avoidance Actions Trust Assets may be transferred subject to certain liabilities, as provided in the Plan or the Avoidance Actions Trust Agreement.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar Tax, pursuant to section 1146(a) of the Bankruptcy Code.  Upon delivery of the Avoidance Actions Trust Assets to the Avoidance Actions Trust, the Debtors and their predecessors, successors and assigns, and each other Entity

released pursuant to Section 74.2 herein shall be discharged and released from all liability with respect to the delivery of such distributions.

60.4  **Administration of the Avoidance Actions Trust**:  The Avoidance Actions Trust shall be administered by the Avoidance Actions Trustee according to the Avoidance Actions Trust Agreement and the Plan.  In the event of any inconsistency between the Plan and the Avoidance Actions Trust Agreement, the Avoidance Actions Trust Agreement shall govern.

60.5  **The Avoidance Actions Trustee**:  In the event the Avoidance Actions Trustee dies, becomes incapacitated, is terminated, or resigns for any reason, the Avoidance Actions Trust Board shall designate a successor; provided, however, that under no circumstance shall the Avoidance Actions Trustee be a director or officer with respect to any Affiliate of the Avoidance Actions Trust.

60.6  **Role of the Avoidance Actions Trustee**:  In furtherance of and consistent with the purpose of the Avoidance Actions Trust and the Plan, and subject to the terms of the Confirmation Order, the Plan and the Avoidance Actions Trust Agreement, and the oversight of the Avoidance Actions Trust Board, the Avoidance Actions Trustee shall, among other things, have the following rights, powers and duties, (i) to hold, manage, convert to Cash, and timely distribute the Avoidance Actions Trust Assets, including prosecuting and resolving the Claims belonging to the Avoidance Actions Trust, (ii) to hold the Avoidance Actions Trust Assets for the benefit of the Avoidance Actions Trust Beneficiaries, whether their Claims are Allowed on or after the Effective Date, (iii) in the Avoidance Actions Trustee's reasonable business judgment, to investigate, prosecute, settle and/or abandon rights, Causes of Action, or litigation of the Avoidance Actions Trust, (iv) to prepare and file (or cause to be prepared and filed), from and after the Effective Date, all tax and regulatory forms, returns, reports, and other documents required, or that the Avoidance actions Trustee otherwise deems appropriate with respect to the Avoidance Actions Trust, (v) in the Avoidance Actions Trustee's reasonable business judgment, to control, prosecute, and/or settle on behalf of the Avoidance Actions Trust, objections to Claims on account of which the Avoidance Actions Trustee will be responsible, (vi) to hold, manage, and timely distribute Cash or non-Cash Avoidance Actions Trust Assets obtained through the exercise of its power and authority and (vii) to not unduly prolong the duration of the Avoidance Actions Trust.  In all circumstances, the Avoidance Actions Trustee shall act in the best interests of all Avoidance Actions Trust Beneficiaries and in furtherance of the purpose of the Avoidance Actions Trust.

60.7  **Avoidance Actions Trustee's Tax Power for Debtors**:  From and after the Effective Date, the Avoidance Actions Trustee shall prepare and file (or cause to be prepared and filed), on behalf of the Debtors, all tax returns or other tax information statements required to be filed or that the Avoidance Actions Trustee otherwise deems appropriate.

60.8  **Transferability of Avoidance Actions Trust Interests**:  The Avoidance Actions Trust Interests shall not be transferable or assignable except by will, intestate succession or operation of law

60.9  **Cash**:  The Avoidance Actions Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; provided, however, that such investments are investments permitted to be made by a liquidating trust

within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

60.10   **Distribution of Avoidance Action Trust Assets**:  The Avoidance Actions Trustee shall distribute to the holders of Allowed Claims on account of their Avoidance Actions Trust Interests, on a semi-annual basis, all unrestricted Cash on hand (including any Cash received from the Debtors on the Effective Date, and treating any permissible investment as Cash for purposes of this Section 60.10), except (i) Cash reserved pursuant to the Avoidance Actions Trust Agreement to fund the activities of the Avoidance Actions Trust, (ii) such amounts' as are allocable to or retained on account of Disputed Claims in accordance with Section 64.3 hereof to pay reasonable incurred or anticipated expenses (including, but not limited to, any taxes imposed on or payable by the Avoidance Actions Trust in respect of the Avoidance Actions Trust Assets); provided, however, that the Avoidance Actions Trustee shall not be required to make a distribution pursuant to this Section 60.10 if the aggregate, net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such that it would make the distribution impracticable as reasonably determined by the Avoidance Actions Trustee, with the consent of the Avoidance Actions Trust Board, in accordance with applicable law, and so long as such aggregate amount is less than Twenty-Five Million Dollars ($25,000,000.00); and, provided, further, that the Avoidance Actions Trustee, with the consent of the Avoidance Actions Trust Board, may decide to forego the first quarterly distribution to those holders of Avoidance Actions Trust Interests with respect to which the Avoidance Actions Trustee, in its reasonable judgment, is not administratively prepared to make such distribution, in which case, such distribution shall be made to such holders as soon as practicable after the Avoidance Actions Trustee is administratively prepared to do so.

60.11   **Funding, Costs and Expenses of the Avoidance Actions Trust**:  On the Effective Date, the Avoidance Actions Trust shall be funded on a one-time basis in an amount up to Five Million Dollars ($5,000,000.00).  The reasonable costs and expenses of the Avoidance Actions Trust, including the fees and expenses of the Avoidance Actions Trustee and its retained professionals, shall be paid out of the Avoidance Actions Trust Assets.  Fees and expenses incurred in connection with the prosecution and settlement of any Claims shall be considered costs and expenses of the Avoidance Actions Trust.

60.12   **Compensation of the Avoidance Actions Trustee**:  The individual(s) serving as or comprising the Avoidance Actions Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar roles, the payment of which shall be subject to the approval of the Title III Court.

60.13   **Retention of Professionals/Employees by the Avoidance Actions Trustee**: Subject to the approval and consent of the Avoidance Actions Trust Board, the Avoidance Actions Trust may retain and compensate attorneys, other professionals, and employees to assist the Avoidance Actions Trust Board on such terms as the Avoidance Actions Trustee deems appropriate without Title III Court approval.

60.14   **Federal Income Tax Treatment of the Avoidance Actions Trust:**

(a)   Avoidance Actions Trust Assets Treated as Owned by Creditors.  For all United States federal income tax purposes, all parties (including, without limitation, the Debtors,

the Avoidance Actions Trustee, and the Avoidance Actions Trust Beneficiaries) shall treat the transfer of the Avoidance Actions Trust Assets to the Avoidance Actions Trust as (1) a transfer of the Avoidance Actions Trust Assets (subject to any obligations relating to those assets) directly to the Avoidance Actions Trust Beneficiaries and, to the extent Avoidance Actions Trust Assets are allocable to Disputed Claims, to the Avoidance Actions Trust Claims Reserve, followed by (2) the transfer by such beneficiaries to the Avoidance Actions Trust of the Avoidance Actions Trust Assets (other than the Avoidance Actions Trust Assets allocable to the Avoidance Actions Trust Claims Reserve) in exchange for Avoidance Actions Trust Interests. Accordingly, the Avoidance Actions Trust Beneficiaries shall be treated for United States federal income tax purposes as the deemed grantors and owners of their respective share of the Avoidance Actions Trust Assets (other than such Avoidance Actions Trust Assets as are allocable to the Avoidance Actions Trust Claims Reserve, discussed below). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(b)    Tax Reporting.

(i)    The Avoidance Actions Trustee shall prepare and file (or cause to be prepared and filed) tax returns for the Avoidance Actions Trust treating the Avoidance Actions Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 60.14. The Avoidance Actions Trustee also will annually send to each holder of an Avoidance Actions Trust Interest a separate statement regarding the receipts and expenditures of the Avoidance Actions Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The Avoidance Actions Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Avoidance Actions Trust that is required by any governmental unit.

(ii)    The Avoidance Actions Trustee will then in good faith value all other Avoidance Actions Trust Assets, and shall make all such values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Avoidance Actions Trust (including, without limitation, the Debtors, the Avoidance Actions Trustee, and Avoidance Actions Trust Beneficiaries) for all United States federal income tax purposes.

(iii)    Allocations of Avoidance Actions Trust taxable income among the Avoidance Actions Trust Beneficiaries (other than taxable income allocable to the Avoidance Actions Trust Claims Reserve) shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Avoidance Actions Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Avoidance Actions Trust Claims Reserve) to the holders of the Avoidance Actions Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Avoidance Actions Trust. Similarly, taxable loss of the Avoidance Actions Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining

89

Avoidance Actions Trust Assets.  The tax book value of the Avoidance Actions Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(iv)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Avoidance Actions Trustee of a private letter ruling if the Avoidance Actions Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Avoidance Actions Trustee), the Avoidance Actions Trustee shall (A) timely elect to treat any Avoidance Actions Trust Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties (including the Avoidance Actions Trustee and the Avoidance Actions Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(v)     The Avoidance Actions Trustee shall be responsible for payment, out of the Avoidance Actions Trust Assets, of any taxes imposed on the trust or its assets, including the Avoidance Actions Trust Claims Reserve.  In the event, and to the extent, any Cash retained on account of Disputed Claims in the Avoidance Actions Trust Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims (including any income that may arise upon the distribution of the assets of the Avoidance Actions Trust Claims Reserve), such taxes may be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Avoidance Actions Trustee as a result of the resolution of such Disputed Claims.

(c)     <u>Tax Withholdings by Avoidance Actions Trustee</u>.  The Avoidance Actions Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or distribution to the holders of Avoidance Actions Trust Interests.  All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed to such holders of Avoidance Actions Trust Interests for all purposes of the Avoidance Actions Trust Agreement, and it being understood that any such amount withheld shall reduce the amount actually realized by the applicable holder upon distribution.  The Avoidance Actions Trustee shall be authorized to collect such tax information from the holders of Avoidance Actions Trust Interests (including, without limitation, social security numbers or other tax identification numbers) as in its sole discretion the Avoidance Actions Trustee deems necessary to effectuate the Plan, the Confirmation Order, and the Avoidance Actions Trust Agreement.  In order to receive distributions under the Plan, all holders of Avoidance Actions Trust Interests shall be required to identify themselves to the Avoidance Actions Trustee and provide tax information and the specifics of their holdings, to the extent the Avoidance Actions Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Avoidance Actions Trustee for these purposes.  This identification requirement generally applies to all holders of Avoidance Actions Trust Interests, including those who hold their securities in street name.  The Avoidance Actions Trustee may refuse to make a distribution to any holder of a

Avoidance Actions Trust Interest that fails to furnish such information in a timely fashion, and until such information is delivered, and may treat such holder's Avoidance Actions Trust Interests as disputed; provided, however, that, if such information is not furnished to the Avoidance Actions Trustee within six (6) months of the original request to furnish such information, no further distributions shall be made to the holder of such Avoidance Actions Trust Interest; and, provided, further, that, upon the delivery of such information  by a holder of a Avoidance Actions Trust Interest, the Avoidance Actions Trustee shall make such distribution to which the holder of the Avoidance Actions Trust Interest is entitled, without additional interest occasioned by such holder's delay in providing tax information; and, provided, further, that, if the Avoidance Actions Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Avoidance Actions Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Avoidance Actions Trustee for such liability (to the extent such amounts were actually distributed to such holder).

(d)    The Avoidance Actions Trustee and the Avoidance Actions Trust shall be discharged or dissolved, as the case may be, upon the earlier to occur of (i) all of the Avoidance Actions Trust Assets have been distributed pursuant to the Plan and the Avoidance Actions Trust Agreement, (ii) the Avoidance Actions Trustee determines, with the consent of the Avoidance Actions Trust Board, that the administration of any remaining Avoidance Actions Trust Assets is not likely to yield sufficient additional Avoidance Actions Trust proceeds to justify further pursuit, and (iii) all distributions required to be made by the Avoidance Actions Trustee under the Plan and the Avoidance Actions Trust Agreement have been made; provided, however, in no event shall the Avoidance Actions Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Avoidance Actions Trustee and the Avoidance Actions Trust Board that any further extension would not adversely affect the status of the trust as an Avoidance Actions Trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Avoidance Actions Trust Assets.  If at any time the Avoidance Actions Trustee determines, in reliance upon such professionals as the Avoidance Actions Trustee may retain, that the expense of administering the Avoidance Actions Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the assets remaining in the Avoidance Actions Trust, the Avoidance Actions Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the Avoidance Actions Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, and (D) that is unrelated to the Debtors, the Reorganized Debtors, the Avoidance Actions Trust, and any insider of the Avoidance Actions Trustee, and (iii) dissolve the Avoidance Actions Trust.

60.15  **Indemnification of Avoidance Actions Trustee**:  The Avoidance Actions Trustee or the individual(s) comprising the Avoidance Actions Trustee, as the case may be, and the Avoidance Actions Trustee's employees, agents and professionals, shall not be liable to the Avoidance Actions Trust Beneficiaries for actions taken or omitted in their capacity as, or on behalf of, the Avoidance Actions Trustee, except those acts arising out of their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement

for fees and expenses in defending any and all actions or inactions in their capacity as, or on behalf of, the Avoidance Actions Trustee, except for any actions or inactions involving willful misconduct or gross negligence.  Any indemnification claim of the Avoidance Actions Trustee (and the other parties entitled to indemnification under this subsection) shall be satisfied solely from the Avoidance Actions Trust Assets and shall be entitled to a priority distribution therefrom, ahead of the Avoidance Actions Trust Interests and any other claim to or interest in such assets.  The Avoidance Actions Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

## ARTICLE LXI

## PROSECUTION AND EXTINGUISHMENT OF CLAIMS HELD BY THE DEBTORS

61.1    **Prosecution of Claims**:  Except as settled and released herein, from and after the Effective Date, the Avoidance Actions Trustee shall have the exclusive right and power to (a) litigate any and all of the Avoidance Actions and (b) compromise and settle such Avoidance Actions, upon approval of the Bankruptcy Court.  The net proceeds of any such litigation or settlement (after satisfaction of all costs and expenses incurred in connection therewith) shall be transferred to the Avoidance Actions Trust for distribution in accordance with the Plan and the Avoidance Actions Trust Agreement.

## ARTICLE LXII

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

62.1    **Impaired Classes to Vote**:  Each holder, as of the Voting Record Date, of a Claim in an impaired Class not otherwise deemed to have rejected or accepted the Plan in accordance with Sections _____ of the Plan shall be entitled to vote separately to accept or reject the Plan.

62.2    **Acceptance by Class of Creditors**:  An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

62.3    **Cramdown**:  In the event that any impaired Class of Claims shall fail to accept, or be deemed to reject, the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to (i) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or (ii) subject to the consent of the PSA Creditors, in accordance with the provisions of the Plan Support Agreement, amend the Plan.

## ARTICLE LXIII

## RIGHTS AND POWERS OF DISBURSING AGENT

63.1    **Exculpation**:  From and after the Effective Date, the Disbursing Agent shall be exculpated by all Entities, including, without limitation, holders of Claims and other parties in

interest, from any and all claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Title III Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct of such Disbursing Agent.  No holder of a Claim or other party in interest shall have or pursue any claim or cause of action against the Disbursing Agent for making payments in accordance with the Plan or for implementing the provisions of the Plan.

63.2    **Powers of the Disbursing Agent**:  Except as may be provided otherwise hereunder, the Disbursing Agent shall be empowered to (a) take all steps and execute all instruments and documents necessary to effectuate the Plan, (b) make distributions contemplated by the Plan, (c) comply with the Plan and the obligations thereunder, and (d) exercise such other powers as may be vested in the Disbursing Agent pursuant to order of the Title III Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

63.3    **Fees and Expenses Incurred From and After the Effective Date**:  Except as otherwise ordered by the Title III Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent from and after the Effective Date and any reasonable compensation and expense reimbursement claims, including, without limitation, reasonable fees and expenses of counsel, incurred by the Disbursing Agent, shall be paid in Cash without further order of the Title III Court.

## ARTICLE LXIV

## PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS

64.1    **Objections to Claims; Prosecution of Disputed Claims**:  Except with respect to Allowed Claims, and subject to the terms and conditions of the ADR Procedures and the ADR Order, Reorganized Debtors, by and through the Oversight Board, and in consultation with AAFAF, shall object to, and shall assume any pending objection filed by the Debtors to, the allowance of Claims filed with the Title III Court with respect to which it disputes liability, priority or amount, including, without limitation, objections to Claims that have been assigned and the assertion of the doctrine of equitable subordination with respect thereto.  All objections, affirmative defenses and counterclaims shall be litigated to Final Order; provided, however, that Reorganized Debtors, by and through the Oversight Board, and in consultation with AAFAF, shall have the authority to file, settle, compromise or withdraw any objections to Claims, without approval of the Title III Court.  Unless otherwise ordered by the Title III Court, to the extent not already objected to by the Debtors, Reorganized Debtors shall file and serve all objections to Claims as soon as practicable, but, in each instance, not later than one hundred eighty (180) days following the Effective Date or such later date as may be approved by the Title III Court. Notwithstanding anything contained in the Plan to the contrary, on the Effective Date, any Bond Claim filed by any Entity, for amounts due under existing securities, shall be deemed disallowed and expunged and the Oversight Board shall instruct Prime Clerk LLC, its court-appointed representative, to remove such Bond Claims from the claims registry maintained for the benefit of the Title III Court.

64.2     **Estimation of Claims**:  Except with respect to Allowed Claims, on and after the Effective Date, and unless otherwise limited by an order of the Title III Court, including, without limitation, the ACR Order, and the ADR Order, Reorganized Debtors, by and through the Oversight Board, may at any time request the Title III Court to estimate for final distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to or sought to estimate such Claim, and the Title III Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  Unless otherwise provided in an order of the Title III Court, in the event that the Title III Court estimates any contingent, unliquidated or Disputed Claim, the estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Title III Court; provided, however, that, if the estimate constitutes the maximum limitation on such Claim, Reorganized Debtors, by and through the Oversight Board, may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim; and, provided, further, that the foregoing is not intended to limit the rights granted by section 502(j) of the Bankruptcy Code.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

64.3     **Payments and Distributions on Disputed Claims**:

(a)     **Disputed Claims Holdback:**  From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Title III Court in an amount constituting the allowed amount, or Allowed or Disallowed by Final Order of the Title III Court, Reorganized Debtors shall retain, for the benefit of each holder of a Disputed Claim, the distributions that would have been made to such holder if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claims shall be estimated by the Title III Court pursuant to section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, and (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and Reorganized Debtors; provided, however, that the recovery by any holder of a Disputed Claim shall not exceed the lesser of (i), (ii) and (iii) above.  To the extent that any of the Reorganized Debtors retains any New GO Bonds or COFINA Junior Lien Bonds on behalf of Disputed Claims holders, until such New GO Bonds or COFINA Junior Lien Bonds are distributed, such Reorganized Debtors shall exercise voting or consent rights with respect to such bonds.

(b)     **Allowance of Disputed Claims:**  At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, Reorganized Debtors shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan, together with any earnings that have accrued thereon (net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim.  Such distribution, if any, shall be made as soon as practicable after the date that the order or judgement of the Title III Court allowing such Disputed Claim becomes a Final Order, but in no event more than ninety (90) days thereafter.

64.4     **Authority to Amend Lists of Creditors**:  Except with respect to Bond Claims, the Debtors shall have the authority to amend the List of Creditors with respect to any Claim and

to make distributions based on such amended List of Creditors without approval of the Title III Court.  If any such amendment to the List of Creditors reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtors will provide the holder of such Claim with notice of such amendment and such holder will have twenty (20) days to file an objection to such amendment with the Title III Court.  If no such objection is filed, the Disbursing Agent may proceed with distributions based on such amended List of Creditors without approval of the Title III Court.

64.5     **Non-Accrual of Interest**:  Unless otherwise specifically provided for herein or by order of the Title III Court, post-petition interest shall not accrue or be paid on Claims, Allowed or otherwise, and no holder of a Claim, Allowed or otherwise, shall be entitled to interest accruing on or after the Commonwealth Petition Date, the ERS Petition Date, or the PBA Petition Date, as the case may be, on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

64.6     **Disallowance of Claims**:  All Claims of any Entity from which property is sought by the Debtors under sections 550, or 553 of the Bankruptcy Code or that the Debtors alleges is a transferee of a transfer that is avoidable under sections 544, 545, 547, 548, or 549 of the Bankruptcy Code shall be disallowed if:  (a) the Entity, on the one hand, and the Debtors, on the other hand, agree or the Title III Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

### ARTICLE LXV

### GOVERNANCE AND PROVISIONS REGARDING PENSION RESERVE

65.1     **Formation and Responsibilities of the Pension Reserve**:  On or prior to the Effective Date, the Commonwealth shall take all necessary steps to establish the Pension Reserve Trust, including, without limitation, by execution and delivery of the Pension Reserve Deed of Trust.

65.2     **Funding of the Pension Reserve Trust**:  On the Effective Date, the Commonwealth shall contribute, or cause to be contributed, to the Pension Reserve Five Million Dollars ($5,000,000.00) to fund the initial administrative fees, costs and expenses of the Pension Reserve Trust.  From and after FY 2020 and up to and including the conclusion of FY 2027, the Reorganized Commonwealth shall make, or cause to be made, annual (but in no event later than October 1st following the conclusion of each FY) contributions to the Pension Reserve Trust in an amount equal to  (a) the Base Contribution, (b) such additional amount calculated as the lower of the actual primary surplus for such FY and the projected Fiscal Plan primary surplus for such FY, minus the sum of (i) the Base Contribution for such FY, plus (ii) the  Commonwealth debt service obligation pursuant to the plan for such FY, plus (iii) Two Hundred Million Dollars ($200,000,000.00); provided, however, that, in all instances, such additional amount cannot be lower than zero dollars ($0.00), and (c) subject to applicable laws, including, without limitation, Titles I and II of PROMESA, such additional amounts as the Reorganized Commonwealth, in its

95

discretion, elects to deposit into the Pension Reserve Trust.  The Pension Reserve Trust will be managed by an independent entity whose members shall meet the independence, professionalism, experience and qualification standards set forth in the Pension Reserve Deed of Trust and shall be subject to all Commonwealth contracting, ethics and conflicts of interest laws and regulations.

65.3    **Non-Impairment Covenant**:  The Commonwealth will covenant in the Pension Reserve Deed of Trust for the benefit of all Participants that, with respect to payments and other obligations owed to Participants pursuant to the Plan, including, without limitation, PayGo obligations and all components of the Total Monthly Retirement Benefit after any adjustment pursuant to the Plan, all such obligations shall remain in place and not otherwise be altered, modified or amended until all such obligations have been satisfied in full in accordance with the provisions of the Plan and the Definitive Documents and the New GO Bond Legislation, enforceable by any and each of the Oversight Board, and any affected Retirees and, with respect to any such provision, the Pension Reserve Deed of Trust shall not be amended or modified by the Commonwealth except (i) with the express prior written consent of the Oversight Board (if in existence), and a majority in number of the Retirees receiving benefits pursuant to the Plan, the Definitive Documents, the New GO Bond Legislation and the COFINA Junior Lien Bonds Legislation at the time of such proposed modification, or (ii) pursuant to a new Title III case for the Commonwealth and a confirmed and effective plan of adjustment.

## ARTICLE LXVI

### IDENTIFICATION OF CLAIMS IMPAIRED BY THE PLAN AND NOT IMPAIRED BY THE PLAN

66.1    **Impaired Classes**:  The Claims in Classes 1 through 8 and 10 through 50 are impaired and receiving distributions pursuant to the Plan, and are therefore entitled to vote to accept or reject the Plan; provided, however, that, based upon the elections made on the Ballot/Election Form, Classes 14, 17, 21, 23, 27, 31, 33, 38, and 49 are deemed to have accepted the Plan.  The Claims in Classes 8, 10, 46, and 47 are impaired and not receiving a distribution pursuant to the Plan and, therefore, Classes 8, 10, 46, and 47 are deemed to have rejected the Plan.

66.2    **Unimpaired Class**:  Claims in Classes 9, 51, and 52 are unimpaired pursuant to the Plan, are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

## ARTICLE LXVII

### CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN

67.1    **Conditions Precedent to Confirmation of the Plan**:  Confirmation of the Plan is subject to satisfaction of the following conditions precedent:

(a)    **Fiscal Plan Certification:**  The Oversight Board shall have certified a Fiscal Plan consistent with the Plan and shall have certified the submission of the Plan, and any

modifications to the Plan through the Confirmation Date, in accordance with Sections 104(j) and 313 of PROMESA.

(b)   **Required Orders**:  The Clerk of the Title III Court shall have entered an order or orders (including, without limitation, the Disclosure Statement Order and the Confirmation Order providing for the following:

(i)   Approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

(ii)   Authorizing the solicitation of votes and elections with respect to the Plan;

(iii)   Determining that all votes and elections or deemed elections are binding and have been properly tabulated;

(iv)   Confirming and giving effect to the terms and provisions of the Plan, including the releases set forth in Article LXXIV of the Plan;

(v)   Determining that the compromises and settlements set forth in the Plan are appropriate, reasonable and approved and authorizing the transactions contemplated therein;

(vi)   Determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Oversight Board, the Debtors and the Plan;

(vii)   Approving the documents in the Plan Supplement, other than the New GO Bonds Legislation and the COFINA Junior Lien Bonds Legislation (to the extent included in the Plan Supplement) and the Reorganized Debtors By-Laws, and determining that such documents are valid and binding on parties with respect thereto;

(viii)   Determining that the New GO Bonds Legislation and the COFINA Junior Lien Bonds Legislation, each to the extent enacted, are a valid means for the implementation of the Plan and the issuance of the New GO Bonds and COFINA Junior Lien Bonds, respectively; and

(ix)   Authorizing the Reorganized Debtors to execute, enter into, and deliver the documents in the Plan Supplement, and to execute, implement and take all actions otherwise necessary or appropriate to give effect to the transactions contemplated by the Plan, and the documents in the Plan Supplement.

(c)   **Form of Orders**:  The Confirmation Order and the Plan are each in form and substance reasonably acceptable to the Oversight Board, the Debtors, and the Initial PSA Creditors.

(d)   **Confirmation Order**:  The Confirmation Order includes (i) determinations that all of the settlements and compromises contained in the Plan satisfy applicable standards under sections 365, 1123(b)(3) and 1129 of the Bankruptcy Code and

Bankruptcy Rule 9019, to the extent applicable, (ii) the releases, exculpations and injunctions set forth in Article LXXIV of the Plan and (iii) the applicable provisions set forth in Section 67.1 (b) hereof.

67.2   **Waiver of Conditions Precedent to Confirmation**:  To the extent practicable and legally permissible, each of the conditions precedent in Section 67.1 hereof may be waived, in whole or in part, by the Oversight Board, subject to the prior written consent of the Debtors and the Initial PSA Creditors, which consent shall not be unreasonably withheld.  Any such waiver of a condition precedent may be effected at any time by filing a notice thereof with the Title III Court executed by the Oversight Board.

## ARTICLE LXVIII

### CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

68.1   **Conditions Precedent to the Effective Date**:  The occurrence of the Effective Date and the substantial consummation of the Plan are subject to satisfaction of the following conditions precedent:

(a)   **Fiscal Plan Certification:**  The Oversight Board shall have determined that the Plan is consistent with the Debtors' Fiscal Plan and shall have certified the submission of the Plan, and any modifications to the Plan through the Confirmation Date, in accordance with Sections 104(j) and 313 of PROMESA.  The Fiscal Plan certified as of the Effective Date shall include provisions for the payment of principal and interest with respect to the New GO Bonds.

(b)   **Entry of the Confirmation Order:**  The Clerk of the Title III Court shall have entered the Confirmation Order in accordance with Section 314 of PROMESA and section 1129 of the Bankruptcy Code, made applicable to the Title III Cases pursuant to Section 301 of PROMESA, which shall be in form and substance reasonably acceptable to the Oversight Board and the Initial PSA Creditors, and the Confirmation Order shall provide for the following:

(i)   Authorize the Debtors and the Reorganized Debtors, as the case may be, to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(ii)   Decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(iii)   Authorize the Debtors and Reorganized Debtors, as the case may be, to (1) make all distributions and issuances as required under the Plan and (2) enter into any agreements and transactions, as set forth in the Plan Supplement;

(iv)   Authorize the implementation of the Plan in accordance with its terms;

(v)   Determine the New GO Bonds and the covenants by the Commonwealth, for the benefit of the holders of the New GO Bonds, as provided in the New GO

Bonds Legislation and the New GO Bonds Indenture or the Confirmation Order, constitute valid, binding, legal and enforceable obligations of the Commonwealth, under Puerto Rico and federal law;

(vi)     Determine that, the Commonwealth shall have pledged its good faith, credit and taxing power under the Puerto Rico Constitution and applicable Puerto Rico law for the payment of principal and interest on the New GO Bonds;

(vii)     Determine that, pursuant to the New GO Bonds Legislation, upon deposit of monies in the Debt Service Fund and the Debt Service Reserve Fund, there shall be statutory first liens on such monies for the purposes of securing payment of the New GO Bonds, which statutory first liens on such monies shall remain in full force and effect until the New GO Bonds have been paid or satisfied in full in accordance with their terms;

(viii)     Authorize the sale, transfer and conveyance of the Conveyed Commonwealth Share to COFINA in consideration for the issuance of, and performance with respect to, the COFINA Junior Lien Bonds;

(ix)     Determine that the COFINA Junior Lien Bonds and the covenants by COFINA and the Commonwealth, as applicable, and the liens on, and pledges of, the COFINA Pledged Taxes (and all other provisions made to pay or secure payment of the COFINA Junior Lien Bonds) for the benefit of the holders of the COFINA Junior Lien Bonds, as provided in the COFINA Junior Lien Bonds Legislation and the COFINA Junior Lien Bonds Indenture or the Confirmation Order, constitute valid, binding, legal and enforceable obligations of COFINA and the Commonwealth, as applicable, under Puerto Rico and federal law, and the Conveyed Commonwealth Share (and any substituted collateral on the terms and conditions provided for herein or in the COFINA Junior Lien Bonds Legislation) is the property of COFINA, free and clear of all liens, claims, encumbrances, and other interests of creditors of the Commonwealth or any instrumentality of the Commonwealth, other than (1) the Commonwealth's right to receive the Conveyed Commonwealth Share upon payment or satisfaction of the COFINA Junior Lien Bonds and any securities issued to refinance the COFINA Junior Lien Bonds, in full in accordance with their terms, (2) liens and claims afforded to holders of COFINA Senior Lien Bonds under the COFINA Senior Lien Bonds Legislation, the COFINA Plan, the COFINA Confirmation Order, and the COFINA Senior Lien Bond Indenture, and (3) the holders of the COFINA Junior Lien Bonds under the Plan and the Confirmation Order, and shall not be "available resources" or "available revenues" of the Government of Puerto Rico, as used in Section 8 of Article VI of the Puerto Rico Constitution or as otherwise used in the Puerto Rico Constitution (whether construed pursuant to the Spanish or English version of the Puerto Rico Constitution);

(x)     Determine that, pursuant to the COFINA Junior Lien Bonds Legislation, the COFINA Junior Lien Bonds have been granted and are secured by a statutory second lien on the COFINA Pledged Taxes as described in Section 57.2 hereof, which lien shall remain in full force and effect until the COFINA Junior Lien Bonds have been paid or satisfied in full in accordance with their terms;

(xi)     Determine that the statutory lien on the COFINA Pledged Taxes, as provided in the COFINA Junior Lien Bonds Legislation, and all other provisions to pay or

99

secure payment of the COFINA Junior Lien Bonds are valid, binding, legal and enforceable, including, without limitation, covenants not to impair such property, maintain available tax exemption and provide for the conditions regarding substitution of collateral as provided in the COFINA Confirmation Order;

(xii)    Determine that the transfer of the Conveyed Commonwealth Share (and any substitution of collateral on the terms and conditions provided for herein or in the COFINA Junior Lien Bonds Legislation) pursuant to the COFINA Junior Lien Bonds Legislation and the Plan is appropriate and binding and specifically enforceable against COFINA, the Commonwealth, and the Reorganized Commonwealth, their respective creditors, subject to (1) the claims and liens of the holders of the COFINA Senior Lien Bonds and (2) the Commonwealth's right to receive the Conveyed Commonwealth Share upon payment or satisfaction of the COFINA Junior Lien Bonds in full in accordance with their terms, and is a valid provision made to pay or secure payment of the COFINA Junior Lien Bonds;

(xiii)    Determine the Confirmation Order is full, final, complete, conclusive and binding upon and shall not be subject to collateral attack or other challenge in any court or other forum by (1) the Debtors, (2) Reorganized Debtors, (3) the Commonwealth and its instrumentalities, (4) COFINA, (5) each Entity asserting claims or other rights against the Commonwealth or any other Commonwealth instrumentality, including each holder of a bond claim and each holder of a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of bonds issued by the Debtors, COFINA, or any Commonwealth agency or with respect to any trustee, any collateral agent, any indenture trustee, any fiscal agent, and any bank that receives or holds funds related to such bonds, whether or not such claim or other rights of such Entity are impaired pursuant to the Plan and, if impaired, whether or not such Entity accepted the Plan, (6) any other Entity, and (7) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, officers, directors, agents, representatives, attorneys, beneficiaries or guardians;

(xiv)    Provide that each Fiscal Plan, certified as of, or subsequent to, the Effective Date, shall include provisions for the principal and interest payable on the New GO Bonds;

(xv)    Determine that the statutory first lien on funds once deposited into the Debt Service Fund and the Debt Service Reserve  Fund, as provided for in the New GO Bonds Legislation, and all other provisions to pay the New GO Bonds are valid, binding, legal and enforceable, including, without limitation, covenants not to impair such property, maintain available tax exemption and provide for the conditions regarding substitution of collateral (including, without limitation, the statutory lien thereon as adequate protection for the property rights herein and in the Confirmation Order;

(xvi)    Provide that the automatic stay in any future insolvency proceeding commenced on behalf of the Commonwealth (whether under Title III of PROMESA or otherwise) shall be deemed waived with respect to monies on deposit in the Debt Service Fund and the Debt Service Reserve Fund as of the commencement thereof;

(xvii)    Determine that, for purposes of Section 209 of PROMESA, the discharge of debt to occur as of the Effective Date is necessary for the Oversight Board to certify

100

that expenditures do not exceed revenues for the Commonwealth as determined in accordance with modified accrual accounting standards;

(xviii)  Provide that the compromises and settlements set forth in the Plan and the Confirmation Order with respect to the priority of the New GO Bonds under PROMESA, the Puerto Rico Constitution or other applicable law shall not be binding on any party in interest (including any successor to the Oversight Board) in a subsequent Title III (or other insolvency) proceeding; and

(xix)   Determine the Plan is consistent with the Debtors' Fiscal Plans and satisfies Section 314(b)(7) of PROMESA.

(c)   **No Injunction:**  The Confirmation Order shall not be stayed in any respect.

(d)   **Authorizations:**  All (1) authorizations, consents, regulatory approvals, rulings, or documents, if any, that are necessary to implement and effectuate the Plan, including, without limitation, the New GO Bonds Legislation and the COFINA Junior Lien Bonds Legislation, have been obtained or enacted or entered and not revoked or reversed, and (2) except to the extent expressly provided herein and not inconsistent with any other provision of the Plan, unless otherwise permitted or required by PROMESA or similar authority, completion of any other required legislative or other governmental action required to consummate the Plan.

(e)   **Execution of Documents; Other Actions:**  All actions and all contracts, instruments, settlements, releases and other agreements or documents, including Definitive Documents, the New GO Bonds Legislation and the COFINA Junior Lien Bonds Legislation, necessary to implement the terms and provisions of the Plan, including the Definitive Documents, the New GO Bond Legislation and the COFINA Junior Lien Bonds Legislation, are effected or executed and delivered, as applicable, and are in full force and effect.

(f)   **Opinions:**  Usual and customary legal opinions for issuances of the type similar to the New GO Bonds and the COFINA Junior Lien Bonds by outside counsel to the Debtors covering matters not expressly addressed in the Confirmation Order, in form and substance reasonably acceptable to the Initial PSA Creditors, have been delivered to the applicable trustee or other parties regarding the Definitive Documents and the Plan.

(g)   **Constitutional Claims:**  The Title III Court shall have entered an order finding that any Claim asserted against the Debtors, the Reorganized Debtors and any other public corporation or instrumentality of the Commonwealth based on any bonds issued or guaranteed by or loans made to or guaranteed by any such entity shall be determined to be a Claim arising prior to the Petition Date and classified in Classes _____ (except Allowed ERS Bond Claims to the extent secured) and shall be dischargeable and discharged pursuant to the Plan or Confirmation Order and the Debtors, the Reorganized Debtors and any other public corporation or instrumentality of the Commonwealth shall have no liability on account of such Claim.

68.2    **Waiver of Conditions Precedent**:  Subject to the provisions of the Plan Support Agreement, the Oversight Board may waive any of the conditions to the Effective Date set forth in Section 68.1 hereof at any time without any notice to any other parties in interest, other than the PSA Creditors and the Government Parties, and without any further notice to or action, order, or approval of the Title III Court, and without any formal action other than proceeding to confirm and consummate the Plan.

68.3    **Effect of Non-Occurrence of Conditions to Effective Date**:  If prior to the Effective Date, the Confirmation Order is vacated pursuant to a Final Order, then, except as provided in any order of the Title III Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, or Causes of Action; (b) prejudice in any manner the rights of the Debtors, the Oversight Board, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors, the Oversight Board, or any other Entity.

## ARTICLE LXIX

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

69.1    **Modification of Plan**:  Subject to (a) Sections 104(j) and 313 of PROMESA and sections 942 and 1127(d) of the Bankruptcy Code, applicable to the Title III Cases pursuant to Section 301 of PROMESA, and (b) the terms and provisions of the Plan Support Agreement, the AFSCME Plan Support Agreement, the Retiree Committee Plan Support Agreement, the Oversight Board may alter, amend or modify the Plan or the Exhibits at any time prior to or after the Confirmation Date but prior to the Effective Date.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended or modified so long as the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

69.2    **Revocation or Withdrawal**:

    (a)    Subject to the terms and provisions of the Plan Support Agreement, the AFSCME Plan Support Agreement, the Retiree Committee Plan Support Agreement, the Plan may be revoked or withdrawn prior to the Confirmation Date by the Oversight Board.

    (b)    If the Plan is revoked or withdrawn prior to the Confirmation Date, or if the Plan does not become effective for any reason whatsoever, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claim by the Debtors or any other Entity, or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceeding involving the Debtors.

69.3    **Amendment of Plan Documents**:  From and after the Effective Date, the authority to amend, modify, or supplement the Plan Supplement, the Exhibits to the Plan Supplement and the Exhibits to the Plan, and any document attached to any of the foregoing, shall be as provided in such Plan Supplement, Exhibit to the Plan Supplement, or Exhibit to the Plan and their respective attachments, as the case may be.

69.4    **No Admission of Liability:**

(a)     The submission of this Plan is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Entity with respect to any of the matters addressed in this Plan.

(b)     None of this Plan (including, without limitation, the Exhibits hereto), or any settlement entered, act performed or document executed in connection with this Plan: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim, or any allegation made in any of the Related Actions or of any wrongdoing or liability of any Entity; (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Entity in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (iii) is or may be deemed to be or used as an admission or evidence against Reorganized Debtors, the Debtors, or any other Entity with respect to the validity of any Claim.  None of this Plan or any settlement entered, act performed or document executed in connection with this Plan shall be admissible in any proceeding for any purposes, except to carry out the terms of this Plan, and except that, once confirmed, any Entity may file this Plan in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense of counterclaim.

## ARTICLE LXX

## CORPORATE GOVERNANCE AND
## MANAGEMENT OF REORGANIZED DEBTORS

70.1    **Corporate Action**:  On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the directors of the Debtors or Reorganized Debtors, including, without limitation, to the extent applicable, the authorization to issue or cause to be issued the New GO Bonds, the COFINA Junior Lien Bonds, the authorization to enter into the Definitive Documents, the adoption of Reorganized Debtors By-Laws, and the election or appointment, as the case may be, of directors and officers of Reorganized Debtors pursuant to the Plan, as applicable, shall be authorized and approved in all respects, in each case, in accordance with the New GO Bond Legislation, the COFINA Junior Lien Bonds Legislation, and the new corporate governance documents, as applicable, and without further action by any Entity under any other applicable law, regulation, order, or rule.  Other matters provided under the Plan involving the corporate structure of the Reorganized Debtors or corporate action by Reorganized Debtors, as applicable, shall be deemed to have occurred, be authorized, and shall be in effect in accordance with the New GO Bonds Legislation and the COFINA Junior Lien Bonds Legislation and the new corporate governance documents, as applicable, and without requiring further action by any Entity under any other applicable law, regulation, order, or rule. Without limiting the foregoing, from and after the Confirmation Date, the Debtors and Reorganized Debtors shall take any and all actions deemed appropriate in order to consummate the transactions contemplated herein in accordance with the New GO Bonds Legislation, the COFINA Junior Lien Bonds Legislation, and the new corporate governance documents, as applicable.

70.2    **Amendment of By-Laws**:  To the extent applicable, the by-laws of the Reorganized Debtors shall be amended as of the Effective Date to provide substantially as set forth in the Reorganized Debtors By-Laws.

70.3    **Dissolution of ERS**:  On or as soon as practicable subsequent to the Effective Date, ERS shall be dissolved and all existing directors and officers of ERS shall be relieved of any further duties and obligations.  Upon such dissolution, all remaining assets of ERS shall be transferred to the Commonwealth.

70.4    **Officers of Reorganized Debtors**:  To the extent applicable, the board of directors of Reorganized Debtors shall elect officers of Reorganized Debtors as of or after the Effective Date.

70.5    **PBA Governance Structure**:  No changes to the PBA governance structure or PBA collective bargaining agreements will be implemented during or following the PBA Title III Case, unless any such changes are approved by the Oversight Board and AAFAF.

## ARTICLE LXXI

## PROVISIONS REGARDING OVERSIGHT BOARD AND COMPLIANCE WITH PROMESA

71.1    **Effect of Confirmation**:  Nothing in this Plan or the Confirmation Order shall discharge, substitute, alter or otherwise modify the powers and responsibilities of the Oversight Board pursuant to PROMESA or the obligations of each Reorganized Debtor under PROMESA. From and after the Effective Date, the Reorganized Debtors shall continue to have all of their obligations pursuant to PROMESA, including, without limitation, the terms and conditions of Titles I and II thereof.

71.2    **Ongoing Role of the Oversight Board**:  Nothing in the Plan or the Confirmation Order shall discharge any or all obligations of each Debtor under PROMESA and, from and after the Effective Date, the Oversight Board's powers and responsibilities under PROMESA shall continue, and the Debtors' duties and obligations shall continue and be unaffected by the Plan and the consummation thereof.

71.3    **Preemption of Laws**:  As of the Effective Date, and to the extent not previously preempted pursuant to an order of the Title III Court, all laws of the Commonwealth of Puerto Rico, other than budgets certified by the Oversight Board, inconsistent with PROMESA, are preempted.  Such preempted laws include, without limitation,  laws enacted prior to June 30, 2016, that transfer, appropriate or require appropriations from the Commonwealth or one of its instrumentalities to any agency or instrumentality, whether to enable such agency or instrumentality to pay or satisfy indebtedness or for any other purpose, and such laws shall not be enforceable to facilitate payment of such indebtedness, directly or indirectly, and shall not be enforceable if enforcement thereof would be inconsistent with any provision of PROMESA having continuing applicability and effectiveness.  Without in any way limiting the foregoing, (a) the Commonwealth laws preempted by PROMESA include, without limitation, those listed on Exhibit "K" hereto and (b) all litigation in which any Government Party is a party, over whether Commonwealth law listed on Exhibit "K" hereto is preempted by PROMESA shall be dismissed,

with prejudice, as of the Effective Date and the parties thereto shall provide the Overweight Board prompt notice of such dismissal.

## ARTICLE LXXII

### PROVISIONS REGARDING COMMITTEES

72.1   **Dissolution of Committees**:  On the Effective Date, each of the Creditors' Committee and the Retiree Committee shall be (a) dissolved and be deemed to have satisfied all of its respective duties and obligations, and (b) released and discharged from any action or activity taken, or required to be taken, in connection with the Title III Cases.  To the extent that, as of the date immediately prior to the Effective Date, either the Creditors' Committee or the Retiree Committee was a party to a contested matter or adversary proceeding in connection with the Title III Cases, including, without limitation, the Debt Related Objections, the PBA Litigation, the Invalidity Actions, the Lien Challenge Actions, the ERS Litigation, the Appointments Clause Litigation and any objection to claim, from and after the Effective Date and to the extent not already a party thereto, the Reorganized Debtors or the Avoidance Actions Trustee shall be deemed to have assumed such role and responsibility in connection with such contested matter and, upon such assumption, the Creditors' Committee or the Retiree Committee, as the case may be, shall be relieved of any role, responsibility or obligation with respect thereto.

## ARTICLE LXXIII

### RETENTION OF JURISDICTION

73.1   **Retention of Jurisdiction**:  The Title III Court shall retain and have exclusive jurisdiction over any matter arising under PROMESA, arising in or related to, the Title III Cases and the Plan, or that relates to the following:

(a)   to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim not compromised or settled hereby, including, without limitation, the resolution of any request for payment of any Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims not compromised or settled hereby;

(b)   to resolve any matters related to Executory Contracts or Unexpired Leases, including, without limitation, (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtors are a party or with respect to which the Debtors may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

(c)   to ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

(d)     to adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtors or Reorganized Debtors that may be pending on the Effective Date or brought thereafter;

(e)     to decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to PROMESA, the Plan or orders entered by the Title III Court;

(f)     to enter and implement such orders as may be necessary or appropriate to execute, implement, consummate or enforce the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Title III Cases and (b) the Plan, the Confirmation Order, Definitive Documents and any other contracts, instruments, securities, releases, indentures, and other agreements or documents created in connection with the Plan,

(g)     to resolve any cases, controversies, suits, disputes or other challenges of any kind that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Confirmation Order, Definitive Documents or any other contract, instrument, security, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(h)     to approve any modification of the Plan or approve any modification of the Confirmation Order or any contract, instrument, security, release or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any order, the Plan, the Confirmation Order or any contract, instrument, security, release or other agreement or document created in connection with the Plan or the Confirmation Order, or enter any order in aid of confirmation pursuant to sections 945 and 1142(b) of the Bankruptcy Code, in such manner as may be necessary or appropriate to consummate the Plan;

(i)     to adjudicate, decide or resolve any matters relating to the Debtors' compliance with the Plan and the Confirmation Order consistent with section 945 of the Bankruptcy Code;

(j)     to determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order, in each case, solely to the extent that any such document does not provide for another court or courts to have exclusive jurisdiction;

(k)     to enter and implement other orders, or take such other actions as may be necessary or appropriate to enforce or restrain interference by any Entity with consummation or enforcement of the Plan or the Confirmation Order, including, without limitation, the provisions of Section 74.2 and 74.3 hereof;

(l)      to adjudicate any and all controversies, suits or issues that may arise regarding the validity of any actions taken by any Entity pursuant to or in furtherance of the Plan or Confirmation Order, including, without limitation, issuance of the New GO Bonds and the COFINA Junior Lien Bonds, and enter any necessary or appropriate orders or relief in connection with such adjudication; to determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, Definitive Documents or any other contract, instrument, security, release, or other agreement or document created in connection with the Plan, in each case, solely to the extent that any such document does not provide for another court or courts to have exclusive jurisdiction;

(m)      to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(n)      to enter an order or final decree concluding or closing the Title III Cases pursuant to section 945(b) of the Bankruptcy Code;

(o)      to enforce and clarify any orders previously entered by the District Court in the Title III Cases; and

(p)      to hear any other matter over which the Title III Court has jurisdiction under Sections 305 and 306 of PROMESA.

## ARTICLE LXXIV

## MISCELLANEOUS PROVISIONS

74.1      **Title to Assets**:  Except as provided in the Confirmation Order, on the Effective Date, title to all Assets and properties of the Debtors encompassed by the Plan shall vest in Reorganized Debtors, free and clear of all Liens (except the Liens granted pursuant to the Plan and Confirmation Order).

74.2      **Discharge and Release of Claims and Causes of Action:**

(a)      Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Released Parties that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action. Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code (or

is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan.

(b)    All Entities shall be precluded from asserting any and all Claims against the Debtors and Reorganized Debtors, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets and property, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities.  In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability.  As of the Effective Date, and in consideration for the value provided under the Plan, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property and all such Claims.

(c)    Notwithstanding any other provisions of this Section 74.2, in accordance with the provisions of the Plan Support Agreement, each of the PSA Creditors and their respective Related Persons, solely in their capacity as Creditors of the Debtors, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims or any of the Claims or Causes of Action asserted or which could have been asserted, and (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by this Section 74.2.

74.3    **Injunction on Claims**:  Except as otherwise expressly provided in Section 74.2 of the Plan, the Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 74.2 hereof or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 74.2 hereof are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or

560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.  Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.

74.4    **Integral to Plan**:  Each of the discharge, injunction, exculpation and release provisions provided in this Article LXXIV is an integral part of the Plan and is essential to its implementation.  Each of the Released Parties shall have the right to independently seek the enforcement of the discharge, injunction and release provisions set forth in this Article LXXIV.

74.5    **Releases by the Debtors and Reorganized Debtors**:  Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, each of the Debtors and Reorganized Debtors, the Disbursing Agent and each of the Debtors' and Reorganized Debtors' Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtors, Reorganized Debtors, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to the Title III Cases, the Debtors taking place or existing on or prior to the Effective Date, and/or any Claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged or that could have been alleged, including, without limitation, any such Claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees.

74.6    **Injunction Related to Releases**:  As of the Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 74.5 of the Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims: (i) commencing, conducing or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Section 74.5 hereof; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or its inconsistent with the provisions of the Plan or the Confirmation Order.

74.7    **Exculpation:**

(a)    **Government Parties**:  The Oversight Board, AAFAF, the Debtors, COFINA and each of their respective Related Persons, solely acting in its capacity as such at any

time up to and including the Effective Date, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Cases, the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the foregoing provisions of this Section 74.7 shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.  Nothing in the foregoing provisions of this Section 74.7(a) shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the Plan.

(b)     **PSA Creditors:**  Each of the PSA Creditors solely in its capacity as a party to the Plan Support Agreement and a Creditor, as applicable, from the Petition Date up to and including the Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Cases, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, the Plan Support Agreement, the Definitive Documents, or any other contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transaction set forth in the Plan; provided, however, that the foregoing provisions of this Section 74.7(b) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(c)     **Retiree Committee:**  Each of the members of the Retiree Committee solely in its capacity as a member of the Retiree Committee and a Creditor, as applicable, from the Petition Date up to and including the Effective Date and each of the Retiree Committee's Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Cases, the formation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, the Retiree Committee Plan Support Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan and the Retiree Committee Plan Support Agreement; provided, however, that, the foregoing provisions of this Section 74.7(c) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(d)     **AFSCME:**  Each of AFSCME solely in its capacity as a party to the AFSCME Plan Support Agreement and a Creditor, as applicable, from the Petition Date up to and including the Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Cases, the formation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure

Statement, the AFSCME Plan Support Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transaction set forth in the Plan and the AFSCME Plan Support Agreement; provided, however, that, the foregoing provisions of this Section 74.7(d) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

74.8    **Appointments Related Litigation**:  Notwithstanding anything contained herein to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation subsequent to entry of the Confirmation Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the Plan and documents and instruments related hereto, all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the Plan, consent and agree that such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the Plan and the Confirmation Order, including, without limitation, the releases, exculpations and injunctions provided pursuant to Article LXXIV of the Plan.

74.9    **Bar Order**:  To the limited extent provided in the Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all Claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the Plan, the negotiation and consummation of the Plan Support Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Title III Cases, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Title III Cases, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related Actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).

74.10    **No Waiver**:  Notwithstanding anything to the contrary contained in Sections 74.5 and 74.6 hereof, the releases and injunctions set forth in such sections shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Oversight Board, AAFAF, Reorganized Debtors or the PSA Creditors to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by any of them.

74.11    **Supplemental Injunction**:  Notwithstanding anything contained herein to the contrary, except to the limited extent provided in the Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Cases or any Claim against the Debtors, whenever and wherever arising

or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the Effective Date (including prior to the Petition Date), including, but not limited to:

(a)     Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b)     Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(c)     Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(d)     Except as otherwise expressly provided in the Plan or the Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

(e)     Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan or the Confirmation Order, provided, however, that the Debtors' compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

74.12   **Post-Effective Date Fees and Expenses**:  From and after the Effective Date, Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Title III Court, retain professionals and pay the reasonable professional fees and expenses incurred by Reorganized Debtors related to implementation and consummation of the Plan without further approval from the Title III Court.  Without limiting the foregoing, from and after the Effective Date, Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Title III Court, but in no event later than forty-five (45) days following the submission of invoices or statements with respect to the incurrence of fees and expenses to the Reorganized Debtors, pay the reasonable and documented fees and reimburse the expenses of the Oversight Board and its professionals related to the implementation and consummation of the Plan and in connection with its duties and responsibilities pursuant to PROMESA and the terms and provisions of the Plan.

74.13   **Securities Act Exemption**:  Pursuant to section 1145 of the Bankruptcy Code and/or Section 3(a)(2) of the Securities Act, the offering, issuance, and distribution of the New GO Bonds and the COFINA Junior Lien Bonds pursuant to the terms hereof shall be exempt from registration under the Securities Act and any state or local law requiring registration for the offer, issuance or distribution of securities, including, but not limited to, the registration

requirements of Section 5 of the Securities Act and any other applicable state or federal law requiring registration and/or prospectus delivery or qualification prior to the offering, issuance, distribution, or sale of securities.

74.14   **Severability**:  Subject to the terms and provisions of the Plan Support Agreement, if, prior to the Confirmation Date, any term or provision of the Plan shall be held by the Title III Court to be invalid, void or unenforceable, the Title III Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

74.15   **Governing Law**:  Except to the extent that other federal law is applicable, or to the extent that an exhibit hereto or any document to be entered into in connection herewith provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, PROMESA (including the provisions of the Bankruptcy Code made applicable under Section 301 of PROMESA) and, to the extent not inconsistent therewith, the laws of the Commonwealth of Puerto Rico giving effect to principles of conflicts of laws.

74.16   **Closing Case**:  The Oversight Board shall, promptly upon the full administration of the Title III Cases, file with the Title III Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Title III Court.  Notwithstanding the closing of the Title III Cases, the Title III Court shall retain jurisdiction of all of the matters set forth in Article LXXIII of the Plan.

74.17   **Section Headings**:  The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

74.18   **Inconsistencies**:  To the extent of any inconsistency between (a) the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern and (b) the terms and provisions of the Plan and the terms and provisions of the Confirmation Order, the terms and provisions of the Confirmation Order shall govern and be deemed a modification of the Plan; provided, however, that under no circumstances shall the Confirmation Order modify the economic terms set forth herein absent consent of the Oversight Board.

74.19   **Document Retention**:  From and after the Effective Date, the Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtors.

74.20   **Immediate Binding Effect**:  Pursuant to section 944(a) of the Bankruptcy Code, applicable to the Title III Cases pursuant to Section 301 of PROMESA, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding on any and all holders of Claims and their respective successors and assigns, whether or not the Claim of any such holder is impaired under the Plan and whether or not such holder has accepted the Plan.  The releases, exculpations, and settlements effected under the Plan shall be operative, and subject to enforcement by the Title III Court, from and

after the Effective Date, including pursuant to the injunctive provisions of the Plan.  Once approved, the compromises and settlements embodied in the Plan, along with the treatment of any associated Allowed Claims, shall not be subject to collateral attack or other challenge by any Entity in any court or other forum.  As such, any Entity that opposes the terms of any compromise and settlement set forth in the Plan must (a) challenge such compromise and settlement prior to confirmation of the Plan and (b) demonstrate appropriate standing to object and that the subject compromise and settlement does not meet the standards governing settlements under Bankruptcy Rule 9019 and other applicable law.

74.21   **Additional Documents**:  On or before the Effective Date, the Oversight Board may file with Clerk of the Title III Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all holders of Claims receiving distributions pursuant to the Plan and all other parties in interest, from time to time, may prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

74.22   **Reservation of Rights**:  Except as expressly set forth herein, the Plan shall have no force or effect unless the Title III Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the holders of Claims prior to the Effective Date.  Except as expressly set forth herein, the rights and powers of the government of Puerto Rico under the Puerto Rico Constitution and PROMESA, including, without limitation, under Sections 303 and 305 of PROMESA, are expressly reserved (subject to any limitation thereon imposed by the Puerto Rico Constitution, the U.S. Constitution or PROMESA), and nothing herein shall be deemed a waiver of any such rights and powers.

74.23   **Successors and Assigns**:  Except as expressly provided otherwise in the Plan, the rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

74.24   **Notices**:  All notices, requests to, demands or other document(s) required by the Plan or the Confirmation Order to be served on or delivered to the Oversight Board, the Debtors or AAFAF to be effective shall be in writing including by facsimile transmission and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Oversight Board, to:    Financial Oversight and Management Board for Puerto Rico
268 Muñoz Rivera Ave, Suite 1107
San Juan, PR 00918-1813
Attn:  Natalie A. Jaresko, Executive Director

– with a copy to –

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Attn:  Martin J. Bienenstock, Esq.
      Brian S. Rosen, Esq.
Tel:  (212) 969-3000
Fax:  (212) 969-2900

– with a copy to –

If to the Debtors, to:    The Commonwealth of Puerto Rico
c/o Fiscal Agency and Financial Advisory Authority
Roberto Sánchez Vilella (Minillas) Government Center
De Diego Ave. Stop 22
San Juan, Puerto Rico 00907
Attn: Office of the Executive Director

– with a copy to –

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Attn:  Martin J. Bienenstock, Esq.
      Brian S. Rosen, Esq.
Tel:  (212) 969-3000
Fax:  (212) 969-2900

– and –

O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Attn:  John Rapisardi, Esq.
      Nancy Mitchell, Esq.
      Maria DiConza, Esq.
Tel:  (212) 326-2000
Fax:  (212) 326-2061

If to AAFAF, to:

Fiscal Agency and Financial Advisory Authority
Roberto Sánchez Vilella (Minillas) Government Center
De Diego Ave. Stop 22
San Juan, Puerto Rico 00907

– with a copy to –

O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Attn:  John Rapisardi, Esq.
         Nancy Mitchell, Esq.
         Maria DiConza, Esq.
Tel:  (212) 326-2000
Fax:  (212) 326-2061

74.25    **Term of Injunctions or Stays**:  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Title III Cases (pursuant to sections 105, 362, or 922 of the Bankruptcy Code or any order of the Title III Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

74.26    **Entire Agreement**:  Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

74.27    **Plan Supplement**:  All documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Upon the filing of the Plan Supplement with the Clerk of the Title III Court, copies of the documents contained therein shall be made available upon written request to the Oversight Board's counsel at the address above or by downloading such documents from [https://cases.primeclerk.com/ puertorico/] or the Title III Court's website, available via PACER.  Unless otherwise ordered by the Title III Court, to the extent any document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control; provided, however, that, with respect to matters governed by the New GO Bonds Indenture, to the extent that any provisions of the Plan are inconsistent with the New GO Bonds Indenture or the COFINA Junior Lien Bonds Indenture, the New GO Bonds Indenture or the COFINA Junior Lien Bonds Indenture, as the case may be, shall control.

Dated: San Juan, Puerto Rico
February 28, 2020

THE COMMONWEALTH OF PUERTO RICO, by and through the Financial Oversight and Management Board for Puerto Rico as its representative

By: /s/ Natalie A. Jaresko
    Name: Natalie A. Jaresko
    Title: Executive Director

EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, by and through the Financial Oversight and Management Board for Puerto Rico as its representative

By: /s/ Natalie A. Jaresko
    Name: Natalie A. Jaresko
    Title: Executive Director

PUERTO RICO PUBLIC BUILDINGS AUTHORITY, by and through the Financial Oversight and Management Board for Puerto Rico as its representative

By: /s/ Natalie A. Jaresko
    Name: Natalie A. Jaresko
    Title: Executive Director