# **EXHIBIT M**

CERTIFIED COFINA FISCAL PLAN



## GOVERNMENT OF PUERTO RICO

**Puerto Rico Fiscal Agency and Financial Advisory Authority**

**Municipal Secondary Market Disclosure Information Cover Sheet**
**Municipal Securities Rulemaking Board (MSRB)**
**Electronic Municipal Market Access System (EMMA)**

**Additional / Voluntary Disclosure**
**Financial / Operating Data**

**THIS FILING RELATES TO ALL OR SEVERAL SECURITIES ISSUED BY THE ISSUER, OR ALL OR SEVERAL SECURITIES OF A SPECIFIC CREDITOR:**

Issuer's Name:   **Puerto Rico Sales Tax Financing Corporation (COFINA)**

Other Obligated Person's Name (if any):

Six-digit CUSIP number(s): **Restructured Sales Tax Bonds, Series 2019A-1: 74529JPU3, 74529JPV1, 74529JPW9, 74529JPX7, 74529JQB4, 74529JQC2, 74529JQD0, 74529JQE8, 74529JQF5, 74529JQG3, 74529JQH1; Series 2019A-2: 74529JQY4, 74529JRJ6, 74529JPY5, 74529JRH0, 74529JPZ2, 74529JRK3, 74529JQA6, 74529JRL1; Series 2019B-1: 74529JQJ7, 74529JQK4, 74529JQL2, 74529JQM0, 74529JQR9, 74529JQS7, 74529JQT5, 74529JQU2, 74529JQV0, 74529JQW8, 74529JQX6; Series 2019B-2: 74529JRM9, 74529JRN7, 74529JRP2.**

**TYPE OF INFORMATION PROVIDED:**

**A.**   ☐ **Quarterly / Monthly Financial Information**

**B.**   ☐ **Change in Fiscal Year / Timing of Annual Disclosure**

**C.**   ☐ **Change in Accounting Standard**

**D.**   ☐ **Interim / Additional Financial Information / Operating Data**

**E.**   ☐ **Budget**

**F.**   ☐ **Investment / Debt / Financial Policy**

**G.**   ☐ **Information Provided to Rating Agency, Credit / Liquidity Provider or Other Third Party**

**H.**   ☐ **Consultant Reports**

**I.**   ☒ **Other Financial / Operating Data:  2019 COFINA Fiscal Plan, as certified by the Financial Oversight and Management Board for Puerto Rico, October 30, 2019.**

I represent that I am authorized by the issuer, obligor or its agent to distribute this information publicly.


*/s/ Mohammad Yassin*
Mohammad Yassin
Puerto Rico Fiscal Agency and Financial Advisory Authority,
    as Fiscal Agent for COFINA

Dated: November 22, 2019



# 2019 COFINA FISCAL PLAN

AS CERTIFIED BY THE FINANCIAL OVERSIGHT
AND MANAGEMENT BOARD FOR PUERTO RICO

OCTOBER 30, 2019





DISCLAIMER

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" by its Spanish acronym), the Puerto Rico Sales Tax Financing Corporation ("COFINA" by its Spanish acronym), the Government of Puerto Rico and its instrumentalities and agencies (collectively, the "Government"), and each of their respective officers, directors, employees, agents, attorneys, advisors, members, partners or affiliates (collectively, with AAFAF, COFINA and the Government, the "Parties") make no representation or warranty, express or implied, to any third party with respect to the information contained herein and all Parties expressly disclaim any such representations or warranties. The Government has had to rely upon preliminary information.  As such, AAFAF, COFINA and the Government have made certain assumptions that may materially change.

The Parties do not owe or accept any duty or responsibility to any reader or recipient of this document, whether in contract or tort, and shall not be liable for or in respect of any loss, damage (including, without limitation, consequential damages or lost profits) or expense of whatsoever nature of such third party that may be caused by, or alleged to be caused by, the use of this document or that is otherwise consequent upon the gaining of access to this document by such third party. The Parties do not undertake any duty to update the information contained herein.

This document does not constitute an audit conducted in accordance with generally accepted auditing standards, an examination of internal controls or other attestation or review services in accordance with standards established by the American Institute of Certified Public Accountants or any other organization. Accordingly, the Parties do not express an opinion or any other form of assurance on the financial statements or any financial or other information or the internal controls of the Government and the information contained herein.

Any statements and assumptions contained in this document, whether forward-looking or historical, are not guarantees of future performance and involve certain risks, uncertainties, estimates and other assumptions made in this document. The economic and financial condition of COFINA and the Government is affected by various legal, financial, social, economic, environmental, governmental and political factors. These factors can be very complex, may vary from one fiscal year to the next and are frequently the result of actions taken or not taken, not only by the Government, but also by the Financial Oversight and Management Board for Puerto Rico and other third-party entities such as the government of the United States. Examples of these factors include, but are not limited to:

– Any future actions taken or not taken by the United States government related to Medicaid or the Affordable Care Act;
– The amount and timing of receipt of any distributions from the Federal Emergency Management Agency or any other federal entity and private insurance companies to repair damage caused by Hurricanes María and Irma;
– The amount and timing of receipt of any amounts allocated to Puerto Rico and provided under the Community Disaster Loans Program;
– The amount and timing of receipt of any additional amounts appropriated by the United States government to address the funding gap described herein;
– The timeline for completion of the work being done by the Puerto Rico Electric Power Authority ("PREPA") to repair PREPA's electric system and infrastructure and the impact of any future developments or issues related to PREPA's electric system and infrastructure on Puerto Rico's economic growth;
– The impact of the measures described herein on outmigration;
– The impact of the resolution of any pending litigation in the Title III cases; and
– The occurrence or nonoccurrence of agreement on definitive documentation required to implement the transactions contemplated by the Plan Support Agreement (the "PSA") and approval of such transactions by the Title III Court.

Because of the uncertainty and unpredictability of these factors, their impact cannot be included in the assumptions contained in this document. Future events and actual results may differ materially from any estimates, projections, or statements contained herein. Nothing in this document should be considered as an express or implied commitment to do or take, or to refrain from taking, any action by AAFAF, COFINA or the Government or an admission of any fact or future event. Nothing in this document shall be considered a solicitation, recommendation or advice to any person to participate, pursue or support a particular course of action or transaction, to purchase or sell any security, or to make any investment decision.

By receiving this document, the recipient shall be deemed to have acknowledged and agreed to the terms of these limitations. This document may contain capitalized terms that are not defined herein or may contain terms that are discussed in other documents or that are commonly understood.

**List of Acronyms and Key Terms**

| | |
|---|---|
| AAFAF | Puerto Rico Fiscal Agency and Financial Advisory Authority (Spanish acronym) |
| ABT | Additional Bonds Test |
| BNYM | Bank of New York Mellon |
| CAB | Capital Appreciation Bonds |
| CIB | Current Interest Bonds |
| CINE | Puerto Rico Motion Picture Arts, Sciences and Industry Development Corporation (Spanish acronym) |
| COFINA | Puerto Rico Sales Tax Financing Corporation (Spanish acronym) |
| COR3 | Central Office of Recovery, Reconstruction and Resiliency |
| CW | Commonwealth of Puerto Rico |
| DSA | Debt Sustainability Analysis |
| EAI | Puerto Rican Economic Activity Index |
| FAM | Municipal Administration Fund (Spanish Acronym) |
| FEMA | Federal Emergency Management Agency |
| FY | Fiscal-Year |
| IRS | Internal Revenue Service |
| MADS | Maximum Annual Debt Service |
| PSA | Plan Support Agreement |
| POA | Plan of Adjustment |
| PRASA | Puerto Rico Aqueduct and Sewer Authority |
| PREPA | Puerto Rico Electric and Power Authority |
| PRHTA (or HTA) | Puerto Rico Highway and Transportation Authority |
| PROMESA | Puerto Rico Oversight, Management and Economic Stability Act |
| PSTBA | Pledged Sales Tax Base Amount |
| RSA | Restructuring Support Agreement |
| SUT | Sales and Use Tax |

# Table of Contents

*Executive Summary* ........................................................................................................ 5
*Chapter 1. Sales & use tax description* ........................................................................ 6
*Chapter 2. Plan of adjustment and the New COFINA Bonds* ...................................... 8
   2.1   Filing and confirmation of the Plan of Adjustment ................................... 8
   2.2   The New Bond Legislation .......................................................................... 9
   2.3   Effectiveness of the Plan of Adjustment and Issuance of the COFINA Bonds ............... 10
   2.4   Invitation to Exchange Bonds and Consent to Amendments ...................... 10
*Chapter 3. Financial Projections* ............................................................................... 12
   3.1   COFINA Revenues ...................................................................................... 12
   3.2   Sales & Use Tax forecast ........................................................................... 12
   3.3   COFINA Recurring Operating Expenses .................................................... 13
*Chapter 4. Long-term projection and debt sustainability analysis (DSA)* ................. 15
*Appendix A: Summary of COFINA Bonds* ................................................................. 19
*Appendix B: COFINA Plan of Adjustment* ................................................................. 21

4

# EXECUTIVE SUMMARY

Questions regarding the Commonwealth and COFINA's respective ownership interests in the sales-and-use tax revenue pledged as collateral for the COFINA bonds issued on or prior to 2012 have been at the center of Puerto Rico's Title III cases since their commencement in May 2017. The consensual resolution of this issue (the "Commonwealth-COFINA Dispute") was essential to the restructuring of COFINA pursuant to Title III of PROMESA. On February 12, 2019 (the "Effective Date"), COFINA and AAFAF announced the occurrence of the effective date of the *Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation*, dated January 9, 2019, approved by the U.S. District Court for the District of Puerto Rico pursuant to Title III of the PROMESA (the "Plan of Adjustment").[1] Consummation of the Plan of Adjustment together with the enactment of Act 241-2018 ("Act 241") provided for the restructuring of COFINA's bonds[2], clarifying COFINA's title to the COFINA Revenues (as defined below) and establishing an independent board of directors with financial and operating independence from the Commonwealth and corporate governance consistent with such independence. This Fiscal Plan is an update to reflect reorganized COFINA's economic obligations and restructured operations, including fiscal and operational independence, as summarized below:

| | |
|---|---|
| **Independent Corporate Governance Structure** | ▪ COFINA is recognized as an independent and separate legal entity from the Commonwealth and any other instrumentality of the Commonwealth.<br>▪ COFINA shall be operated separately, and its business and affairs shall be governed by or under the direction of its independent Board of Directors. |
| **Ownership of COFINA Revenues** | ▪ Ownership interests and rights to the COFINA Revenues have been irrevocably transferred to COFINA.<br>▪ COFINA is the sole and exclusive owner of the COFINA Revenues.<br>▪ Absolute transfer of all legal and equitable right, title and interest, and not a pledge or other financing. |
| **Establishment of Ownership Interest at Collection** | ▪ Persons designated as withholding agents for purposes of the imposition and collection of the Sales Tax shall be deemed to collect any portion of the Sales Taxes in which COFINA has an ownership interest on behalf of the Corporation. |
| **Statutory Lien** | ▪ The New COFINA Securities shall automatically be secured by a statutory first lien on all of the COFINA's right, title and interest in and to the Pledged Taxes (5.5% of Sales and Use Tax), including any moneys, income, revenues, accounts, contract rights or general intangibles derived therefrom, in favor of the Trustee for the benefit of the bondholders. |
| **Settles Constitutional Issue on Available Resources/Revenues** | ▪ The COFINA Revenues do not constitute "available resources" or "available revenues" of the Commonwealth as used in Section 8 of Article VI of the Puerto Rico Constitution or as otherwise used in the Puerto Rico Constitution. |

---

[1] [Case No. 17-3283, Docket No. 4652]

[2] The Plan of Adjustment restructured COFINA's debts to terms that are aligned with the fiscal reality of Puerto Rico. The summary of the Plan of Adjustment in this Fiscal Plan is provided for the convenience of the reader and is qualified in its entirety by reference to the provisions of the Plan of Adjustment itself, as well as the Confirmation Order and Act 241 (collectively, the "Plan Documents"). To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Plan Documents, the terms set forth in the Plan Documents control.

# Chapter 1. SALES & USE TAX DESCRIPTION

The **Commonwealth's** sales and use tax **(the "Commonwealth SUT" or "SUT")** was originally imposed in 2006 pursuant to Act 117-2006. The SUT in turn replaced the prior 5.0% (effective 6.6%) general excise tax on imported goods and the 3.6% general excise tax on goods manufactured in Puerto Rico.

The SUT is imposed on the sale, use, consumption and storage of taxable items, which include tangible personal property, taxable services, admission rights and certain other types of transactions covering separable and identifiable taxable items which are sold for a single price, subject to certain exceptions and limitations. Certain items, such as fuel, crude oil and petroleum products and vehicles, however, remain subject to the excise tax previously applicable to such items, and are not subject to the Commonwealth SUT.

The Commonwealth SUT had an original tax rate of 5.5%. Act 117-2006 also authorized each municipal government **to impose a sales and use tax of 1.5% (the "Municipal SUT"), which generally** has the same tax base, exemptions (except for unprocessed foods) and limitations as those provided for the Commonwealth SUT. Act 18-2014 lowered the portion of the Municipal SUT allocated to the municipalities to 1.0%, increased the Commonwealth SUT to 6% and allocated the 0.5% increase in **the Commonwealth SUT to the Municipal Administration Fund ("FAM"), a fund created to provide** funds to finance the debt, special projects, and to meet budgeted expenses of the municipalities.  The Municipal SUT is not part of the **Government's** revenues nor is it owned or pledged to COFINA.

In 2013, Act 40-2013 eliminated various exemptions to the Commonwealth SUT, which broadened its base, Act 42-2013 expanded the situations under which a merchant may be deemed engaged in the business of selling taxable items in Puerto Rico via the Internet, and Act 46-2013 required the declaration and payment of the Commonwealth SUT on imported goods at the time of their entry into Puerto Rico.

On May 29, 2015, the Commonwealth enacted Act 72-2015 that, among other things, (i) increased the total Commonwealth SUT rate to 10.5%, (ii) eliminated several exemptions and (iii) imposed a new special Commonwealth SUT of 4% on services rendered between businesses and designated professional services, which were previously exempt.

Exhibit 1 shows Commonwealth SUT collections since inception of the tax. Exhibit 2 shows the allocation of the sales and use tax between FAM, COFINA, and the Government.

EXHIBIT 1: SALES AND USE TAX HISTORICAL COLLECTIONS[3] (10.5%)



**Historical SUT Revenues**, $M

Historical SUT Collections

| FY07 | FY08 | FY09 | FY10 | FY11 | FY12 | FY13 | FY14 | FY15 | FY16 | FY17 | FY18 | FY19 |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 713 | 1,144 | 993 | 1,094 | 1,107 | 1,138 | 1,162 | 1,242 | 1,417 | 2,377 | 2,548 | 2,522 | 2,806 |

EXHIBIT 2: ALLOCATION OF SALES AND USE TAX



**Allocation of Sales and Use Tax[1]**

- FAM
- Government
- COFINA[2]

0.50%
4.50%
5.50%

10.50%

Puerto Rico Sales and Use Tax

1 $3.2 million of SUT revenues flow to CINE every year.
2 Up to annual cap of $420 million in 2019, which grows by 4.0% each year to a maximum of $993 million.

The COFINA Bonds issued are detailed in Chapter 2.

---

3.  SUT historical collections source: http://www.hacienda.gobierno.pr/inversionistas/estadisticas-y-recaudos-statistics-and-revenues/ingresos-del-impuesto-sobre-ventas-y-uso-ivu-sales-and-use-tax-sut-revenues

# Chapter 2. PLAN OF ADJUSTMENT AND THE NEW COFINA BONDS

## 2.1 Filing and confirmation of the Plan of Adjustment

Consistent with the terms outlined in the PSA, on October 19, 2018, COFINA filed the Plan of Adjustment with the Title III Court. On February 5, 2019, pursuant to the Confirmation Oder, the Plan of Adjustment was confirmed in its entirety.

Pursuant to PROMESA, and in accordance with the Plan of Adjustment, the Settlement Order, the Findings and Conclusions and the Confirmation Order, the Title III Court made conclusive determinations that the new COFINA Bonds are legal, valid, binding and enforceable obligations of COFINA benefiting from the following protections, each of which is legal, valid, binding and enforceable against COFINA, the Commonwealth, and other persons and entities, as applicable, under Puerto Rico law and federal law:

(i) Confirmation of the Plan of Adjustment constitutes a judicial determination, under Section 4 of PROMESA, and the terms of the Confirmation Order shall prevail over any general or specific provisions of the Puerto Rico law or regulation that is inconsistent therewith.

(ii) The Title III Court shall retain jurisdiction to enforce the terms of the Confirmation Order and the Plan of Adjustment.

(iii) As of the Effective Date, ownership of the COFINA Revenues[4] was legally and validly transferred to COFINA, and such transfer of ownership is an absolute transfer of all legal and equitable right, title, and interest in the COFINA Revenues, free and clear of all liens, claims, encumbrances, and other interests of any party.

(iv) As of the Effective Date, the COFINA Revenues do not constitute, and shall not be deemed to be **"available resources" or "available revenues" of the Commonwealth, as** such term is used in the Puerto Rico Constitution (whether construed pursuant to the Spanish or English version of the Puerto Rico Constitution).

(v) The first dollars comprising the pledged sales taxes shall be transferred to and deposited with COFINA until such time that COFINA has received an amount equal to the COFINA Revenues for such Fiscal Year.

(vi) COFINA**'s sole and exc**lusive ownership of the COFINA Revenues shall not be affected in any way by the manner of or control over collection, any person who collects or holds the COFINA Revenues shall do so on behalf of COFINA, and no person or entity that collects or holds the COFINA Revenues shall have any legal or equitable right, title, or interest to the COFINA Revenues other than COFINA.

(vii) Pursuant to the Act 241, the new COFINA Bonds have been granted and are secured by a statutory first lien, which lien shall remain in full force and effect until the COFINA Bonds have been paid or satisfied in full in accordance with their terms.

---

[4] References to "COFINA Revenues" are used to maintain consistent terminology with the Act 241 and shall have the same meaning as the term "COFINA Portion" as defined and used in the Plan of Adjustment, and shall include any collateral that may be substituted for the COFINA Revenues in accordance with the terms and provisions of the Plan of Adjustment.

(viii)    The statutory first lien on the pledged sales taxes as provided in Act 241 and all other provisions made to pay or secure payment of the new COFINA Bonds are legal, valid, binding, and enforceable, including, without limitation, covenants not to impair such property, and provide for the conditions regarding substitution of Substituted Collateral as adequate protection for the property rights conferred under the Plan of Adjustment and the Confirmation Order.

(ix)    **The Commonwealth's agreement, on behalf of itself and its** instrumentalities, not to take any action that would, among other things, (a) impair COFINA**'s right to receive** the COFINA Revenues, (b) limit or alter the rights vested in COFINA in accordance with the Plan of Adjustment to fulfill the terms of the new COFINA Bonds, (c) materially adversely impair the collection of the pledged sales taxes in any Fiscal Year, or (d) impair the rights and remedies of the holders of the new COFINA Bonds or the statutory lien established pursuant to Act 241 and the Master Indenture (as defined below), serve as adequate protection for the property interests of COFINA in the pledged sales taxes under all applicable law and constitute valid, binding, legal and enforceable obligations of COFINA and the Commonwealth, as applicable, and are an integral part of the settlements set forth in the Plan of Adjustment, the Settlement Order and the Confirmation Order.

## 2.2   The New Bond Legislation

On November 15, 2018, the Puerto Rico Legislature approved Act 241, known as the Puerto Rico Sales Tax Financing Corporation Act to implement the Plan of Adjustment and provide, among others, for the following protections:

EXHIBIT 3: Act 241

| | |
|---|---|
| **Independent Corporate Governance Structure** | ▪ COFINA is recognized as an independent and separate legal entity from the Commonwealth and any other instrumentality of the Commonwealth.<br>▪ COFINA shall be operated separately, and its business and affairs shall be governed by or under the direction of its independent Board of Directors. |
| **Ownership of COFINA Revenues** | ▪ Ownership interests and rights to the COFINA Revenues have been irrevocably transferred to COFINA.<br>▪ COFINA is the sole and exclusive owner of the COFINA Revenues.<br>▪ Absolute transfer of all legal and equitable right, title and interest, and not a pledge or other financing. |
| **Establishment of Ownership Interest at Collection** | ▪ Persons designated as withholding agents for purposes of the imposition and collection of the Sales Tax shall be deemed to collect any portion of the Sales Taxes in which COFINA has an ownership interest on behalf of the Corporation. |
| **Statutory Lien** | ▪ The New COFINA Securities shall automatically be secured by a statutory first lien on all of the COFINA's right, title and interest in and to the Pledged Taxes (5.5% of Sales and Use Tax), including any moneys, income, revenues, accounts, contract rights or general intangibles derived therefrom, in favor of the Trustee for the benefit of the bondholders. |
| **Settles Constitutional Issue on Available Resources/Revenues** | ▪ The COFINA Revenues do not constitute "available resources" or "available revenues" of the Commonwealth as used in Section 8 of Article VI of the Puerto Rico Constitution or as otherwise used in the Puerto Rico Constitution. |

## 2.3 Effectiveness of the Plan of Adjustment and Issuance of the COFINA Bonds

On February 12, 2019, COFINA and the Oversight Board notified the Title III Court, creditors and parties of interest that the Plan of Adjustment was consummated and that COFINA had issued approximately $12 billion of new sales tax revenue bonds (the "COFINA Bonds").

(i)     Approximately $5.4 billion of its Restructured Sales Tax Bonds, Series 2019A-1 as current interest bonds (the "Series 2019A-1 Current Interest Bonds"),

(ii)    Approximately $2.9 billion of its Restructured Sales Tax Bonds, Series 2019A-1 as capital appreciation bonds (the "Series 2019A-1 Capital Appreciation Bonds"),

(iii)   Approximately $3.6 billion of its Restructured Sales Tax Bonds, Series 2019A-2 as current interest bonds (the "Series 2019A-2 Bonds" and together with the Series 2019A-1 Current Interest Bonds and the Series 2019A-1 Capital Appreciation Bonds, the "Series 2019A Bonds")

(iv)    Approximately $69.3 million of its Restructured Sales Tax Bonds, Series 2019B-1 as current interest bonds (the "Series 2019B-1 Current Interest Bonds"),

(v)     Approximately $36.7 million of its Restructured Sales Tax Bonds, Series 2019B-1 as capital appreciation bonds (the "Series 2019B1 Capital Appreciation Bonds") and

(vi)    Approximately $45.6 million of its Restructured Sales Tax Bonds, Series 2019B-2 as current interest bonds (the "Series 2019B-2" and together with the Series 2019B-1 Current Interest Bonds and the Series 2019B1 Capital Appreciation Bonds, the "Series 2019B Bonds")

A summary of the new COFINA Bonds as of the Effective Date is set forth Appendix A, Exhibit 1.

## 2.4 Invitation to Exchange Bonds and Consent to Amendments

The Series 2019A-2 Bonds and the Series 2019B-2 Bonds (collectively, the "Invited Bonds") were originally issued on the Effective Date without a legal opinion that interest thereon was excluded from gross income for federal income tax purposes under Section 103 of the United States Internal Revenue Code of 1986, as amended (the "Code").

COFINA and certain holders of the Invited Bonds entered into the Tax Exemption Implementation Agreement dated as of the Effective Date which provided, in general, that to the extent permitted in any favorable guidance received from the U.S. Internal Revenue Service, COFINA would invite holders of the Invited Bonds the option to exchange those bonds for bonds which receive an opinion that interest is excluded from gross income for federal income tax purposes under Section 103 of the Code, with the yield on such bonds reduced by no more than twenty-five (25) basis points (any Invited Bonds so exchanged referred to herein as the "Converted Bonds"), with such yield comparison made in the manner specified in applicable U.S. Treasury Regulations (the "Treasury Regulations") promulgated under the Code.

On May 15, 2019, COFINA and the IRS entered into a closing agreement (the "IRS Closing Agreement") in which the IRS provided favorable guidance which allowed COFINA to take certain actions that would permit bond counsel to deliver its opinion that, subject to customary qualifications, interest (other than pre-issuance accrued interest) on the Converted Bonds and on the Invited Bonds that are exchanged for Converted Bonds, is excluded from gross income for federal income tax purposes under Section 103 of the Code.

In connection with the IRS Closing Agreement, COFINA invited the beneficial owners of the Invited Bonds, pursuant to an Invitation to Exchange Bonds and Consent to Amendments **(the "Invitation"),** to exchange all or a portion of the Invited Bonds for an equal aggregate principal amount of bonds of COFINA for which an opinion would be provided that the interest on which is excluded from gross income for federal income **tax purposes under Section 103 of the Code (the "Converted Bonds"), with a yiel**d that is no more than twenty-five (25) basis points lower than the Invited Bonds, with such yield comparison made in the manner specified in applicable Treasury Regulations.

Accordingly, on June 10, 2019, COFINA issued the Invitation, in which COFINA invited holders of the Series 2019A-2 Bonds and the Series 2019B-**2 Bonds (collectively, the "Invited Bonds") to** exchange those bonds for Converted Bonds, which Converted Bonds, have a yield that is no more than twenty-five (25) basis points lower than the Invited Bond so exchanged and to consent to certain amendments of the First Supplemental Indenture and the Second Supplemental Indenture.

On August 1, 2019, (i) COFINA exchanged $3,108,661,000 aggregate principal amount of Series 2019A-2 Bonds and $45,570,000 aggregate principal amount of Series 2019B-2 Bonds and (ii) the amendments to the First Supplemental Indenture and the Second Supplemental Indenture became effective.

# Chapter 3. FINANCIAL PROJECTIONS

## 3.1   COFINA Revenues

Pursuant to the Plan of Adjustment, the COFINA Revenues for the next 40 years are as follows:

EXHIBIT 4: COFINA Revenues

| Fiscal Year | COFINA Revenues | Fiscal Year | COFINA Revenues |
|---|---|---|---|
| 2019 | $420,185,325 | 2039 | $920,677,791 |
| 2020 | 436,992,738 | 2040 | 957,504,902 |
| 2021 | 454,472,448 | 2041 | 992,525,000 |
| 2022 | 472,651,346 | 2042 | 992,525,000 |
| 2023 | 491,557,399 | 2043 | 992,525,000 |
| 2024 | 511,219,696 | 2044 | 992,525,000 |
| 2025 | 531,668,483 | 2045 | 992,525,000 |
| 2026 | 552,935,223 | 2046 | 992,525,000 |
| 2027 | 575,052,631 | 2047 | 992,525,000 |
| 2028 | 598,054,737 | 2048 | 992,525,000 |
| 2029 | 621,976,926 | 2049 | 992,525,000 |
| 2030 | 646,856,003 | 2050 | 992,525,000 |
| 2031 | 672,730,244 | 2051 | 992,525,000 |
| 2032 | 699,639,453 | 2052 | 992,525,000 |
| 2033 | 727,625,032 | 2053 | 992,525,000 |
| 2034 | 756,730,033 | 2054 | 992,525,000 |
| 2035 | 786,999,234 | 2055 | 992,525,000 |
| 2036 | 818,479,203 | 2056 | 992,525,000 |
| 2037 | 851,218,371 | 2057 | 992,525,000 |
| 2038 | 885,267,106 | 2058 | 992,525,000 |

Between the time SUT is deposited into the COFINA account and when COFINA pays its debt service, the amount deposited within the COFINA account accrues interest to fund operating expenses. Interest is assumed to accrue at the DIRXX 30-day yield of 1.96%. In addition to these funds, there are amounts on deposit in the SUT clearing and aggregation account, which is jointly owned by COFINA and the Commonwealth, that are allocated and distributed to COFINA and the Commonwealth upon receipt of taxpayers' returns.  Accrued interest on this account with respect to the portion corresponding to COFINA is allocated and distributed to COFINA.  Interest on this account is assumed to accrue at a lower interest rate than at the COFINA account (approximately 1.0% lower than the DIRXX). Interest generated by these accounts is used to fund COFINA operating expenses as per COFINA's Trust Indenture.

## 3.2   Sales & Use Tax forecast

Refer to the latest version of the Certified Commonwealth Fiscal Plan for a discussion on the macroeconomic, demographic, and sales and use tax forecasts.

## 3.3   COFINA Recurring Operating Expenses

As part of its restructuring process and under the direction of its independent Board of Directors, COFINA started setting up an independent operational structure that would allow it to be fully independent from its reliance on other governmental entities for its operations. Under the new operating structure, COFINA aims to efficiently and effectively carry out its statutory mandate and contractual obligation of receiving and remitting the COFINA Revenues to the Bond Trustee pursuant to its Plan of Adjustment. Consequently, COFINA expects its FY2020 operating budget to include additional funding for the purpose of establishing its independent operations and complying with several obligations established pursuant to its Plan of Adjustment, such as its efforts in regard to seek a rating of its bonds and the development of improved investor relation outreach. **COFINA's ongoing operating expenses** are necessary to ensure an independent operation. Operating expenses are composed of the following categories:

1. Board of Director Fees
2. Operating Expense
3. Professional Services
4. Trustee Fees
5. Rating Agency Expense
6. Other miscellaneous operating expenses

As of the Effective Date, COFINA received $15 million, available for its operating expenses. An additional $7.25 million was remaining in COFINA accounts prior to closing that was held at COFINA.

In addition to the funds described above, operating expenses will be covered by investment earnings derived from interest income generated by funds deposited in the COFINA bond trustee accounts held for the benefit of COFINA at BNYM prior to distribution.

EXHIBIT 5: COFINA PROJECTED DEFICIT/SURPLUS[5]



Projected deficit /surplus, $M

| | FY19 | FY20 | FY21 | FY22 | FY23 | FY24 |
|---|---|---|---|---|---|---|
| Payments from CW of PR SUT | 420.2 | 437.0 | 454.5 | 472.7 | 491.6 | 511.2 |
| Investment Earnings | 0.0 | 2.6 | 2.8 | 3.0 | 3.3 | 3.5 |
| Total Revenue | 420.2 | 439.6 | 457.3 | 475.7 | 494.8 | 514.7 |
| Operating Expenses | -1.3 | -2.4 | -1.4 | -1.4 | -1.4 | -1.4 |
| Debt Service[1] | -420.2 | -430.6 | -447.5 | -465.7 | -484.6 | -504.3 |
| Total Expenses | -421.5 | -433.0 | -448.9 | -467.1 | -486.0 | -505.7 |
| Surplus/Deficit | -1.3 | 6.6 | 8.4 | 8.6 | 8.8 | 9.0 |

1 Figures represent debt service post August 2019 Tax Exchange

---

[5] As of the Effective Date, $22 million dollars were deposited into the COFINA Operating Reserve. As such, the reserve never falls below $15 million over the 30-year period.

# Chapter 4. LONG-TERM PROJECTION AND DEBT SUSTAINABILITY ANALYSIS (DSA)

The DSA provides a framework to assess **COFINA's** long-term debt capacity, minimizing the risk of future default, and provides a framework for future market access.

Sales tax bonds are evaluated on the basis of taxable base and pledge, the legal structure of the proposed financing and financial metrics of the revenue pledge.

EXHIBIT 6: CREDIT STRENGTH OF SUT

| | Credit Strengths of SUT |
|---|---|
| 1 | Puerto **Rico's economy is reasonably diverse.** |
| 2 | SUT is very broad with minimal exceptions. |
| 3 | Senior bonds benefit from a closed lien. |
| 4 | First (annual/quarterly) dollar flow of funds is stronger than usual monthly equal collection for various tax backed credits. |
| 5 | Strong revenue trend and minimal revenue volatility. |

EXHIBIT 7: CHALLENGES OF THE SUT CREDIT

| | Challenges of the SUT Credit |
|---|---|
| 1 | **Puerto Rico's per capita income and median household income are** significantly below national medians. |
| 2 | Impact of long-term demographic and economic projections on discretionary expenses and personal consumption. |

The Settlement order grants COFINA an ownership interest in 53.65% of the PSTBA, which will be used to fund debt service payments on the new COFINA Bonds that were issued pursuant to the Plan of Adjustment. **COFINA also receives "first dollars" collected from the pledged SUT until it has** received an amount equal to 53.65% of the PSTBA (unless certain conditions are satisfied on a quarterly basis after 2024). Exhibit 9 illustrates the debt service on the Restructured Sales Tax Bonds in conjunction with the 53.65% of the PSTBA that COFINA bondholders will be entitled to per the terms of the Plan of Adjustment. The chart illustrates that debt service fits within the 53.65% of the PSTBA throughout the forecast period and final maturity of the bonds.

EXHIBIT 8: DEBT SERVICE ($M)



Under a no growth scenario, COFINA's MADS coverage is 1.37x.

EXHIBIT 9: THE COFINA DEBT SUSTAINABILITY ANALYSIS ($M)



16

Using FY19 SUT collections as the base[6], Exhibit 10 shows debt service coverage assuming the fiscal plan projected Pledged SUT, no growth in Pledged SUT and the five-year annual growth rate of Pledged SUT.

## EXHIBIT 10: DEBT SERVICE COVERAGE

| | Case 1: Projected FP SUT | | | | Case 2: No SUT Growth | | | | Case 3: Growth Last Five Years | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **FY19 Pledged SUT** | 1,364.0 | | | **FY19 Pledged SUT** | 1,364.0 | | | **FY19 Pledged SUT** | 1,364.0 | | |
| **Growth Rate** | FP | | | **Growth Rate** | 0.000% | | | **Growth Rate** | 1.892% | | |
| ($ millions) | | | | ($ millions) | | | | ($ millions) | | | |
| | FY19 Pledged SUT | Debt Service[1] | Coverage | | FY19 Pledged SUT | Debt Service[1] | Coverage | | FY19 Pledged SUT | Debt Service[1] | Coverage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2020 | 1,451.9 | 430.6 | 3.37x | 2020 | 1,364.0 | 430.6 | 3.17x | 2020 | 1,389.8 | 430.6 | 3.23x |
| 2021 | 1,450.6 | 447.5 | 3.24x | 2021 | 1,364.0 | 447.5 | 3.05x | 2021 | 1,416.1 | 447.5 | 3.16x |
| 2022 | 1,489.1 | 465.7 | 3.20x | 2022 | 1,364.0 | 465.7 | 2.93x | 2022 | 1,442.9 | 465.7 | 3.10x |
| 2023 | 1,511.5 | 484.6 | 3.12x | 2023 | 1,364.0 | 484.6 | 2.81x | 2023 | 1,470.2 | 484.6 | 3.03x |
| 2024 | 1,538.0 | 504.3 | 3.05x | 2024 | 1,364.0 | 504.3 | 2.70x | 2024 | 1,498.0 | 504.3 | 2.97x |
| 2025 | 1,554.0 | 524.7 | 2.96x | 2025 | 1,364.0 | 524.7 | 2.60x | 2025 | 1,526.3 | 524.7 | 2.91x |
| 2026 | 1,565.2 | 546.0 | 2.87x | 2026 | 1,364.0 | 546.0 | 2.50x | 2026 | 1,555.2 | 546.0 | 2.85x |
| 2027 | 1,579.9 | 568.1 | 2.78x | 2027 | 1,364.0 | 568.1 | 2.40x | 2027 | 1,584.6 | 568.1 | 2.79x |
| 2028 | 1,573.9 | 591.1 | 2.66x | 2028 | 1,364.0 | 591.1 | 2.31x | 2028 | 1,614.6 | 591.1 | 2.73x |
| 2029 | 1,582.2 | 615.0 | 2.57x | 2029 | 1,364.0 | 615.0 | 2.22x | 2029 | 1,645.1 | 615.0 | 2.67x |
| 2030 | 1,596.9 | 639.9 | 2.50x | 2030 | 1,364.0 | 639.9 | 2.13x | 2030 | 1,676.2 | 639.9 | 2.62x |
| 2031 | 1,615.0 | 665.8 | 2.43x | 2031 | 1,364.0 | 665.8 | 2.05x | 2031 | 1,708.0 | 665.8 | 2.57x |
| 2032 | 1,632.7 | 692.7 | 2.36x | 2032 | 1,364.0 | 692.7 | 1.97x | 2032 | 1,740.3 | 692.7 | 2.51x |
| 2033 | 1,640.5 | 720.7 | 2.28x | 2033 | 1,364.0 | 720.7 | 1.89x | 2033 | 1,773.2 | 720.7 | 2.46x |
| 2034 | 1,654.9 | 749.8 | 2.21x | 2034 | 1,364.0 | 749.8 | 1.82x | 2034 | 1,806.7 | 749.8 | 2.41x |
| 2035 | 1,672.1 | 780.1 | 2.14x | 2035 | 1,364.0 | 780.1 | 1.75x | 2035 | 1,840.9 | 780.1 | 2.36x |
| 2036 | 1,692.9 | 812.2 | 2.08x | 2036 | 1,364.0 | 812.2 | 1.68x | 2036 | 1,875.7 | 812.2 | 2.31x |
| 2037 | 1,715.6 | 845.6 | 2.03x | 2037 | 1,364.0 | 845.6 | 1.61x | 2037 | 1,911.2 | 845.6 | 2.26x |
| 2038 | 1,749.7 | 880.5 | 1.99x | 2038 | 1,364.0 | 880.5 | 1.55x | 2038 | 1,947.4 | 880.5 | 2.21x |
| 2039 | 1,774.8 | 916.8 | 1.94x | 2039 | 1,364.0 | 916.8 | 1.49x | 2039 | 1,984.2 | 916.8 | 2.16x |
| 2040 | 1,806.2 | 954.6 | 1.89x | 2040 | 1,364.0 | 954.6 | 1.43x | 2040 | 2,021.7 | 954.6 | 2.12x |
| 2041 | 1,838.5 | 990.8 | 1.86x | 2041 | 1,364.0 | 990.8 | 1.38x | 2041 | 2,060.0 | 990.8 | 2.08x |
| 2042 | 1,871.6 | 990.8 | 1.89x | 2042 | 1,364.0 | 990.8 | 1.38x | 2042 | 2,098.9 | 990.8 | 2.12x |
| 2043 | 1,905.6 | 990.8 | 1.92x | 2043 | 1,364.0 | 990.8 | 1.38x | 2043 | 2,138.6 | 990.8 | 2.16x |
| 2044 | 1,944.3 | 990.8 | 1.96x | 2044 | 1,364.0 | 990.8 | 1.38x | 2044 | 2,179.1 | 990.8 | 2.20x |
| 2045 | 1,982.4 | 990.8 | 2.00x | 2045 | 1,364.0 | 990.8 | 1.38x | 2045 | 2,220.3 | 990.8 | 2.24x |
| 2046 | 2,021.1 | 990.8 | 2.04x | 2046 | 1,364.0 | 990.8 | 1.38x | 2046 | 2,262.3 | 990.8 | 2.28x |
| 2047 | 2,060.2 | 990.8 | 2.08x | 2047 | 1,364.0 | 990.8 | 1.38x | 2047 | 2,305.1 | 990.8 | 2.33x |
| 2048 | 2,099.7 | 990.8 | 2.12x | 2048 | 1,364.0 | 990.8 | 1.38x | 2048 | 2,348.7 | 990.8 | 2.37x |
| 2049 | 2,139.8 | 990.8 | 2.16x | 2049 | 1,364.0 | 990.8 | 1.38x | 2049 | 2,393.2 | 990.8 | 2.42x |
| 2050 | 2,180.9 | 990.8 | 2.20x | 2050 | 1,364.0 | 990.8 | 1.38x | 2050 | 2,438.4 | 990.8 | 2.46x |
| 2051 | 2,223.1 | 990.8 | 2.24x | 2051 | 1,364.0 | 990.8 | 1.38x | 2051 | 2,484.6 | 990.8 | 2.51x |
| 2052 | 2,266.5 | 990.8 | 2.29x | 2052 | 1,364.0 | 990.8 | 1.38x | 2052 | 2,531.6 | 990.8 | 2.56x |
| 2053 | 2,311.1 | 990.8 | 2.33x | 2053 | 1,364.0 | 990.8 | 1.38x | 2053 | 2,579.4 | 990.8 | 2.60x |
| 2054 | 2,356.8 | 990.9 | 2.38x | 2054 | 1,364.0 | 990.9 | 1.38x | 2054 | 2,628.2 | 990.9 | 2.65x |
| 2055 | 2,403.8 | 991.2 | 2.43x | 2055 | 1,364.0 | 991.2 | 1.38x | 2055 | 2,677.9 | 991.2 | 2.70x |
| 2056 | 2,452.1 | 991.5 | 2.47x | 2056 | 1,364.0 | 991.5 | 1.38x | 2056 | 2,728.6 | 991.5 | 2.75x |
| 2057 | 2,501.7 | 991.8 | 2.52x | 2057 | 1,364.0 | 991.8 | 1.38x | 2057 | 2,780.2 | 991.8 | 2.80x |
| 2058 | 2,552.7 | 992.2 | 2.57x | 2058 | 1,364.0 | 992.2 | 1.37x | 2058 | 2,832.8 | 992.2 | 2.86x |

1 Figures represent debt service post August 2019 Tax Exchange

---

6 Fiscal Year 2019 revenues reflect actual collections excluding B2B revenues as COFINA has no rights to the B2B revenues.

Using FY19 SUT collections as the base, we look at the constant annual rate of reduction in sales tax collections such that debt service is still fully covered by the 5.5% SUT pledge. Based on the debt service schedule provided, sales tax would need to decrease by more than 0.81% a year for SUT collections to be insufficient to cover debt service obligations. A comprehensive breakeven analysis is provided in Exhibit 11.

EXHIBIT 11: THE COFINA DEBT BREAKEVEN ANALYSIS



18

# APPENDIX A: SUMMARY OF COFINA BONDS

EXHIBIT 1: Summary of the COFINA Bonds as of the Effective Date

| Series | Tax Status | CUSIP | Maturity Value | Initial Value | Interest Rate | Coupon/Accretion Rate | Maturity | Initial Price |
|---|---|---|---|---|---|---|---|---|
| 2019A-1 | TE | 74529JPU3 | 370,347,000.00 | 370,347,000.00 | 4.500% | 4.500% | 7/1/2034 | 100.000 |
| 2019A-1 | TE | 74529JPV1 | 187,553,000.00 | 187,553,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019A-1 | TE | 74529JPW9 | 1,375,772,000.00 | 1,375,772,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019A-1 | TE | 74529JPX7 | 3,479,051,000.00 | 3,479,051,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019A-2 | TX | 74529JQY4 | 865,919,000.00 | 865,919,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019A-2 | TX | 74529JPY5 | 1,905,085,000.00 | 1,905,085,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019A-2 | TX | 74529JPZ2 | 57,021,000.00 | 57,021,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019A-2 | TX | 74529JQA6 | 763,784,000.00 | 763,784,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019A-1 | TE | 74529JQB4 | 211,244,000.00 | 164,709,059.24 | 0.000% | 4.250% | 7/1/2024 | 77.971 |
| 2019A-1 | TE | 74529JQC2 | 357,783,000.00 | 243,231,616.89 | 0.000% | 4.375% | 7/1/2027 | 67.983 |
| 2019A-1 | TE | 74529JQD0 | 348,709,000.00 | 217,406,113.14 | 0.000% | 4.375% | 7/1/2029 | 62.346 |
| 2019A-1 | TE | 74529JQE8 | 449,395,000.00 | 252,923,999.95 | 0.000% | 4.500% | 7/1/2031 | 56.281 |
| 2019A-1 | TE | 74529JQF5 | 505,783,000.00 | 260,417,551.04 | 0.000% | 4.500% | 7/1/2033 | 51.488 |
| 2019A-1 | TE | 74529JQG3 | 4,813,682,000.00 | 1,094,968,244.54 | 0.000% | 5.375% | 7/1/2046 | 22.747 |
| 2019A-1 | TE | 74529JQH1 | 3,921,460,000.00 | 631,551,133.00 | 0.000% | 5.625% | 7/1/2051 | 16.105 |
| | | | | | | | | |
| 2019B-1 | TE | 74529JQJ7 | 4,743,000.00 | 4,743,000.00 | 4.500% | 4.500% | 7/1/2034 | 100.000 |
| 2019B-1 | TE | 74529JQK4 | 2,402,000.00 | 2,402,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019B-1 | TE | 74529JQL2 | 17,619,000.00 | 17,619,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019B-1 | TE | 74529JQM0 | 44,554,000.00 | 44,554,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019B-2 | TX | 74529JQN8 | 35,156,000.00 | 35,156,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019B-2 | TX | 74529JQP3 | 723,000.00 | 723,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019B-2 | TX | 74529JQQ1 | 9,691,000.00 | 9,691,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019B-1 | TE | 74529JQR9 | 2,706,000.00 | 2,109,895.26 | 0.000% | 4.250% | 7/1/2024 | 77.971 |
| 2019B-1 | TE | 74529JQS7 | 4,582,000.00 | 3,114,981.06 | 0.000% | 4.375% | 7/1/2027 | 67.983 |
| 2019B-1 | TE | 74529JQT5 | 4,466,000.00 | 2,784,372.36 | 0.000% | 4.375% | 7/1/2029 | 62.346 |
| 2019B-1 | TE | 74529JQU2 | 5,755,000.00 | 3,238,971.55 | 0.000% | 4.500% | 7/1/2031 | 56.281 |
| 2019B-1 | TE | 74529JQV0 | 6,477,000.00 | 3,334,877.76 | 0.000% | 4.500% | 7/1/2033 | 51.488 |
| 2019B-1 | TE | 74529JQW8 | 61,648,000.00 | 14,023,070.56 | 0.000% | 5.375% | 7/1/2046 | 22.747 |
| 2019B-1 | TE | 74529JQX6 | 50,220,000.00 | 8,087,931.00 | 0.000% | 5.625% | 7/1/2051 | 16.105 |
| | | | | | | | | |
| 2019A | | | 19,612,588,000 | 11,869,739,718 | | | | |
| 2019B | | | 250,742,000 | 151,582,100 | | | | |
| Total | | | 19,863,330,000 | 12,021,321,817 | | | | |

19

EXHIBIT 2: Summary of the COFINA Bonds as of August 1,2019 (Post-Tax Exchange)

| Series | Tax Status | CUSIP | Maturity Value | Initial Value | Interest Rate | Coupon/Accretion Rate | Maturity | Initial Price |
|--------|-----------|-------|---------------|--------------|--------------|----------------------|----------|--------------|
| 2019A-1 | TE | 74529JPU3 | 370,347,000.00 | 370,347,000.00 | 4.500% | 4.500% | 7/1/2034 | 100.000 |
| 2019A-1 | TE | 74529JPV1 | 187,553,000.00 | 187,553,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019A-1 | TE | 74529JPW9 | 1,375,772,000.00 | 1,375,772,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019A-1 | TE | 74529JPX7 | 3,479,051,000.00 | 3,479,051,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019A-2 | TX | 74529JQY4 | 409,357,000.00 | 409,357,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019A-2 | TX | 74529JPY5 | 53,291,000.00 | 53,291,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019A-2 | TX | 74529JPZ2 | 827,000.00 | 827,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019A-2 | TX | 74529JQA6 | 19,673,000.00 | 19,673,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019A-2 | TE | 74529JRJ6 | 456,562,000.00 | 456,562,000.00 | 4.329% | 4.329% | 7/1/2040 | 100.000 |
| 2019A-2 | TE | 74529JRH0 | 1,851,794,000.00 | 1,851,794,000.00 | 4.329% | 4.329% | 7/1/2040 | 100.000 |
| 2019A-2 | TE | 74529JRK3 | 56,194,000.00 | 56,194,000.00 | 4.536% | 4.536% | 7/1/2053 | 100.000 |
| 2019A-2 | TE | 74529JRL1 | 744,111,000.00 | 744,111,000.00 | 4.784% | 4.784% | 7/1/2058 | 100.000 |
| 2019A-1 | TE | 74529JQB4 | 211,244,000.00 | 164,709,059.24 | 0.000% | 4.250% | 7/1/2024 | 77.971 |
| 2019A-1 | TE | 74529JQC2 | 357,783,000.00 | 243,231,616.89 | 0.000% | 4.375% | 7/1/2027 | 67.983 |
| 2019A-1 | TE | 74529JQD0 | 348,709,000.00 | 217,406,113.14 | 0.000% | 4.375% | 7/1/2029 | 62.346 |
| 2019A-1 | TE | 74529JQE8 | 449,395,000.00 | 252,923,999.95 | 0.000% | 4.500% | 7/1/2031 | 56.281 |
| 2019A-1 | TE | 74529JQF5 | 505,783,000.00 | 260,417,551.04 | 0.000% | 4.500% | 7/1/2033 | 51.488 |
| 2019A-1 | TE | 74529JQG3 | 4,813,682,000.00 | 1,094,968,244.54 | 0.000% | 5.375% | 7/1/2046 | 22.747 |
| 2019A-1 | TE | 74529JQH1 | 3,921,460,000.00 | 631,551,133.00 | 0.000% | 5.625% | 7/1/2051 | 16.105 |
| | | | | | | | | |
| 2019B-1 | TE | 74529JQJ7 | 4,743,000.00 | 4,743,000.00 | 4.500% | 4.500% | 7/1/2034 | 100.000 |
| 2019B-1 | TE | 74529JQK4 | 2,402,000.00 | 2,402,000.00 | 4.550% | 4.550% | 7/1/2040 | 100.000 |
| 2019B-1 | TE | 74529JQL2 | 17,619,000.00 | 17,619,000.00 | 4.750% | 4.750% | 7/1/2053 | 100.000 |
| 2019B-1 | TE | 74529JQM0 | 44,554,000.00 | 44,554,000.00 | 5.000% | 5.000% | 7/1/2058 | 100.000 |
| 2019B-2 | TE | 74529JRM9 | 35,156,000.00 | 35,156,000.00 | 4.329% | 4.329% | 7/1/2040 | 100.000 |
| 2019B-2 | TE | 74529JRN7 | 723,000.00 | 723,000.00 | 4.536% | 4.536% | 7/1/2053 | 100.000 |
| 2019B-2 | TE | 74529JRP2 | 9,691,000.00 | 9,691,000.00 | 4.784% | 4.784% | 7/1/2058 | 100.000 |
| 2019B-1 | TE | 74529JQR9 | 2,706,000.00 | 2,109,895.26 | 0.000% | 4.250% | 7/1/2024 | 77.971 |
| 2019B-1 | TE | 74529JQS7 | 4,582,000.00 | 3,114,981.06 | 0.000% | 4.375% | 7/1/2027 | 67.983 |
| 2019B-1 | TE | 74529JQT5 | 4,466,000.00 | 2,784,372.36 | 0.000% | 4.375% | 7/1/2029 | 62.346 |
| 2019B-1 | TE | 74529JQU2 | 5,755,000.00 | 3,238,971.55 | 0.000% | 4.500% | 7/1/2031 | 56.281 |
| 2019B-1 | TE | 74529JQV0 | 6,477,000.00 | 3,334,877.76 | 0.000% | 4.500% | 7/1/2033 | 51.488 |
| 2019B-1 | TE | 74529JQW8 | 61,648,000.00 | 14,023,070.56 | 0.000% | 5.375% | 7/1/2046 | 22.747 |
| 2019B-1 | TE | 74529JQX6 | 50,220,000.00 | 8,087,931.00 | 0.000% | 5.625% | 7/1/2051 | 16.105 |
| | | | | | | | | |
| 2019A | | | 19,612,588,000 | 11,869,739,718 | | - | - | |
| 2019B | | | 250,742,000 | 151,582,100 | | - | - | |
| Total | | | 19,863,330,000 | 12,021,321,817 | | - | - | |

# APPENDIX B: COFINA PLAN OF ADJUSTMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>                        Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

ORDER AND JUDGMENT CONFIRMING THE
THIRD AMENDED TITLE III PLAN OF ADJUSTMENT
OF PUERTO RICO SALES TAX FINANCING CORPORATION

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

1.  Findings/Conclusions ................................................................................................ 4

2.  Objections ............................................................................................................... 7

3.  Confirmation of the Plan ......................................................................................... 7

4.  Compromise of Commonwealth-COFINA Dispute ................................................ 7

5.  Settlement Agreement Approved ............................................................................. 8

6.  Plan Settlement Approved ....................................................................................... 8

7.  The Adversary Proceeding ....................................................................................... 8

8.  The Interpleader Action ........................................................................................... 9

9.  Implementation of the Plan ..................................................................................... 9

10. No Action ................................................................................................................ 10

11. Binding Effect ......................................................................................................... 10

12. Cancellation of Notes, Instruments, Certificates, and Other Documents ................ 11

13. Rejection or Assumption of Remaining Executory Contracts and Unexpired
    Leases ..................................................................................................................... 12

14. Insurance Policies ................................................................................................... 13

15. Objection to Cure Amounts; Rejection Damages Claims ........................................ 13

16. Payment of Cure Amounts ...................................................................................... 14

17. Setoff ...................................................................................................................... 14

18. Delivery of Distributions ........................................................................................ 15

19. Disbursing Agent .................................................................................................... 18

20. Securities Act Exemption. ...................................................................................... 18

21. Deemed Acceleration (Ambac Insured Bonds) ....................................................... 18

22. Deemed Acceleration (Assured Insured Bonds) ...................................................... 19

23. Disputed Claims Holdback ...................................................................................... 19

24. No Amendments to Proofs of Claim ........................................................................ 20

25. Conditions to Effective Date ................................................................................... 20

26. Administrative Claim Bar Date ............................................................................... 20

27. Professional Compensation and Reimbursement Claims ......................................... 21

28. Consummation Costs ............................................................................................... 21

29. Discharge and Release of Claims and Causes of Action ......................................... 23

i

| 30. | Releases by COFINA and Reorganized COFINA | 26 |
|-----|---------------------------------------------|----|
| 31. | Release and Exculpation Provisions | 27 |
| 32. | Preservation of Certain Claims and Causes of Action. | 28 |
| 33. | Injunction on Claims | 28 |
| 34. | Injunction Related to Releases | 29 |
| 35. | Exculpation | 30 |
| 36. | Appointments Related Litigation | 33 |
| 37. | Bar Order | 33 |
| 38. | Supplemental Injunction | 34 |
| 39. | COFINA Agent and Commonwealth Agent Releases and Exculpation | 35 |
| 40. | Term of Existing Injunctions or Stays | 35 |
| 41. | Prosecution of Claims | 36 |
| 42. | Indemnification and Reimbursement Obligations | 36 |
| 43. | Compliance with Tax Requirements | 36 |
| 44. | Documents and Instruments | 37 |
| 45. | Reversal/Stay/Modification/Vacatur of Order | 37 |
| 46. | Retention of Jurisdiction | 38 |
| 47. | Conflicts Among Order, Plan, and Settlement Order | 38 |
| 48. | Collective Action. | 38 |
| 49. | Modifications | 39 |
| 50. | Provisions of Plan and Order Nonseverable and Mutually Dependent | 39 |
| 51. | Governing Law | 39 |
| 52. | Applicable Nonbankruptcy Law | 40 |
| 53. | Non-Effect on Other Actions. | 40 |
| 54. | Use of Commonwealth Funds | 41 |
| 55. | Waiver of Filings | 41 |
| 56. | Notice of Order | 41 |
| 57. | Waiver of Stay | 41 |
| 58. | No Waiver | 42 |
| Exhibit A Plan | | A-1 |
| Exhibit B Form of Notice | | B-1 |

The Puerto Rico Sales Tax Financing Corporation ("COFINA" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the debtor under PROMESA section 315(b), having proposed and filed with the United States District Court for the District of Puerto Rico (the "Court") the *Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation*, dated January 9, 2019 (Docket Entry No. 439 in Case No. 17-3284[2]) (as modified pursuant to any revisions made at or subsequent to the Confirmation Hearing as set forth in this Order, including the Second Amended Plan Supplement, and as may be modified pursuant to section 313 of PROMESA, the "Plan");[3] and the Court having entered, pursuant to, inter alia, section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017(b), after due notice and a hearing, an order, dated November 29, 2018 (Docket Entry No. 375, the "Disclosure Statement Order"), approving the Disclosure Statement, establishing procedures for the solicitation, voting, and tabulation of votes on and elections with respect to the Plan, approving the forms of ballots, master ballots, and election notices used in connection therewith, and approving the form of notice of the Confirmation Hearing; and the Court having entered the *Notice Regarding the Proper Method for Submission of Objections to the Proposed COFINA Plan of Adjustment* (Docket Entry No. 384);

---

[2]  All docket entry references are to entries in Case No. 17-3284, unless otherwise noted.

[3]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement Order, the Confirmation Brief (each as defined herein), or the *Memorandum of Findings of Fact and Conclusions of Law in Connection with Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (the "Findings of Fact and Conclusions of Law"), as applicable; provided, however, that references herein to "COFINA Revenues" are used to maintain consistent terminology with the New Bond Legislation and shall have the same meaning as the term "COFINA Portion" as defined and used in the Plan, and shall include any collateral that may be substituted for the COFINA Revenues in accordance with the terms and provisions of the Plan and the New Bond Legislation.  A copy of the Plan is annexed hereto as Exhibit A.

1

and the following documents having been filed by the Debtor, the COFINA Agent, or PSA Creditors in support of or in connection with confirmation of the Plan, including the Settlement of the Commonwealth-COFINA Dispute incorporated into the Plan:

(a) *Second Amended Plan Supplement and Plan Related Documents of Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4956 in Case No. 17-3283, the "<u>Second Amended Plan Supplement</u>");

(b) *Certificate of Service of Solicitation Materials* (Docket Entry No. 387, the "<u>Mailing Affidavit</u>");

(c) *Certificate of Publication* (Docket Entry No. 585, the "<u>Publication Affidavit</u>");

(d) *Certificate of Service* (Docket Entry No. 429, the "<u>Garraway Affidavit</u>", and together with the Mailing Affidavit and Publication Affidavit, the "<u>Service Affidavits</u>");

(e) *Omnibus Reply of Puerto Rico Sales Tax Financing Corporation to Objections to Second Amended Title III Plan of Adjustment* (Docket Entry No. 4663 in Case No. 17-3283, the "<u>Omnibus Reply</u>");

(f) *Memorandum of Law in Support of Puerto Rico Sales Tax Financing Corporation's Third Amended Title III Plan of Adjustment* (Docket Entry No. 4664 in Case No. 17-3283, the "<u>Confirmation Brief</u>");

(g) *Declaration of Natalie A. Jaresko in Support of Confirmation of Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4756 in Case No. 17-3283, the "<u>Jaresko Decl.</u>");

(h) *Declaration of David M. Brownstein in Support of Confirmation of Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4757 in Case No. 17-3283, the "<u>Brownstein Decl.</u>");

(i) *Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4794 in Case No. 17-3283, the "<u>Pullo Decl.</u>");

(j) *Statement of COFINA Agent in Support of Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4656 in Case No. 17-3283);

(k) *Declaration of Matthew A. Feldman* (Docket Entry No. 4656-1 in Case No. 17-3283, the "<u>Feldman Decl.</u>");

(l) *Omnibus Reply of the COFINA Senior Bondholders' Coalition to Objections to Confirmation of the Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4665 in Case No. 17-3283, the "Senior Coalition Reply"), and the joinder filed thereto by the certain Puerto Rico based mutual funds (Docket Entry No. 4670 in Case No. 17-3283);

(m) *Declaration of Matthew Rodrigue in Support of Omnibus Reply of the COFINA Senior Bondholders' Coalition to Objections to Confirmation of the Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation ("COFINA")* (Docket Entry No. 4665-1 in Case No. 17-3283, the "Rodrigue Decl.");

(n) *Declaration of Natalie A. Jaresko in Support of Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4758 in Case No. 17-3283, the "Jaresko (9019) Decl.");

(o) *Informative Motion of National Public Finance Guarantee Corporation in Support of COFINA Plan of Adjustment* (Docket Entry No. 4888 in Case No. 17-3283);

(p) *Ambac Assurance Corporation's Statement Concerning the Court's Authority to Determine and Declare the Validity of the New Bond Legislation* (Docket Entry No. 4889 in Case No. 17-3283);

(q) *Supplemental Brief of Plan Support Parties in Support of Proposed Findings of Fact and Conclusions of Law and Order Confirming Third Amended Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4890 in Case No. 17-3283);

(r) *Declaration of Susheel Kirpalani in Support of Supplemental Brief of Plan Support Parties in Support of Proposed Findings of Fact and Conclusions of Law and Order Confirming Third Amended Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4892 in Case No. 17-3283);

and objections to confirmation having been interposed by certain parties, as reflected on the docket of the Title III Cases and/or on the record of the Confirmation Hearing;[4] and each of the objections having been resolved, overruled, or withdrawn at, prior to, or subsequent to the Confirmation Hearing; and the Court hereby overruling any remaining objections; and the Court having held the

---

[4] All opposition submissions are also listed as part of the Court's *Memorandum of Findings of Fact and Conclusions of Law in Connection with Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 5047).

Confirmation Hearing commencing on January 16, 2019; and the appearances of all interested
parties having been noted in the record of the Confirmation Hearing; and after full consideration
of the record of the COFINA Title III Case, including, without limitation, motions, applications
and orders in the COFINA Title III Case, the foregoing documents, and the evidence admitted and
arguments of counsel presented at the Confirmation Hearing; and the Court having entered the
*Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico
and Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 5045 in Case No. 17-3283)
in the Commonwealth Title III Case; and after due deliberation and good and sufficient cause
appearing therefor, it is hereby

**ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT**:

1.  <u>Findings/Conclusions</u>.  The Findings of Fact and Conclusions of Law set forth in
the *Memorandum of Findings of Fact and Conclusions of Law in Connection with Confirmation
of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation*
are incorporated herein as though set forth in full.  Notwithstanding such incorporation, the
following summarizes certain of the Court's determinations:

> (A)     Pursuant to PROMESA, on May 3, 2017 and May 5, 2017, respectively, the
> Commonwealth and COFINA each commenced a federal case before the
> Court in accordance with the requirements of Title III of PROMESA.  The
> commencement of these cases vested the Court with exclusive jurisdiction
> over the cases and all respective property of the Commonwealth of Puerto
> Rico and COFINA, wherever located.  As a result of the consensual
> agreement among the Commonwealth, COFINA, and their respective
> creditor representatives, the parties formulated, duly solicited, and now seek
> confirmation of a plan of adjustment in accordance with federal law.  The
> Plan and this Order quiet title to the COFINA Pledged Taxes and resolve
> all disputes of all parties relating thereto.  Moreover, pursuant to
> PROMESA, and at the request of the Commonwealth and COFINA, the
> Court shall retain jurisdiction until the COFINA Bonds have been paid in
> full or otherwise satisfied in accordance with their terms to ensure
> compliance with the Plan and to adjudicate claims arising therefrom,
> including claims for specific performance.

4

(B)   As set forth more fully in the Findings of Fact and Conclusions of Law, the Court has made the following determinations pursuant to applicable law:

(ii)   This Order is full, final, complete, conclusive, and binding and shall not be subject to collateral attack or other challenge in any court or other forum, except as permitted under applicable law. Confirmation of the Plan constitutes a judicial determination, pursuant to section 4 of PROMESA, that the terms of this Order shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent therewith.

(iii)   The Court shall retain jurisdiction to enforce the terms hereof and of the Plan.

(iv)   Subject to the occurrence of and upon the Effective Date, Reorganized COFINA shall be an independent public corporation and instrumentality of the Commonwealth, separate from the Commonwealth and any other instrumentality of the Commonwealth.

(v)   Subject to the occurrence of and upon the Effective Date, ownership of the COFINA Revenues shall have been legally and validly transferred to Reorganized COFINA, and such transfer of ownership shall have been an absolute transfer of all legal and equitable right, title, and interest in the COFINA Revenues, free and clear of all liens, claims, encumbrances, and other interests of any party (except for the statutory lien that arises automatically, pursuant to the terms of the New Bond Legislation, to secure the COFINA Bonds).

(vi)   Subject to the occurrence of and upon the Effective Date, the COFINA Revenues shall not constitute, and shall not be deemed to be, "available resources" or "available revenues" of the Commonwealth, as that term is used in the Puerto Rico Constitution (whether construed pursuant to the Spanish or English version of the Puerto Rico Constitution).

(vii)   Subject to a "Quarterly Installment" funding construct to the extent certain conditions are satisfied, each fiscal year, until the COFINA Bonds are paid in full or otherwise satisfied in accordance with their terms, the first funds comprising the COFINA Pledged Taxes shall be transferred to and deposited with Reorganized COFINA until such time that Reorganized COFINA has received an amount equal to the COFINA Revenues for such fiscal year.

(viii)   Reorganized COFINA's sole and exclusive ownership of the COFINA Revenues shall not be affected in any way by the manner

of or control over collection, any person who collects or holds the COFINA Revenues shall do so on behalf of Reorganized COFINA, and no person or entity that collects or holds the COFINA Revenues shall have any legal or equitable right, title, or interest to the COFINA Revenues other than Reorganized COFINA, for the benefit of holders of the COFINA Bonds.

(ix)    The statutory first lien against the COFINA Pledged Taxes (including any New Collateral substituted for the COFINA Pledged Taxes in accordance with the terms of the Plan and the New Bond Legislation) arising by operation of the New Bond Legislation in favor of holders of COFINA Bonds is legal, valid, binding and enforceable and shall remain in full force and effect and shall be "closed" until, in each case, the COFINA Bonds have been paid or satisfied in full in accordance with their terms.

(x)     At the time of issuance and delivery of the COFINA Bonds, Reorganized COFINA is hereby directed to be stamped or written on each of the COFINA Bonds a legend substantially as follows:

> DETERMINED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO TO BE VALID, LEGALLY BINDING, AND ENFORCEABLE PURSUANT TO THE JUDGMENT AND CONFIRMATION ORDER, ENTERED ON THE 4TH DAY OF FEBRUARY, 2019

(xi)    The Commonwealth's agreement, on behalf of itself and its governmental entities, not to take any action that would, among other things, (a) impair COFINA's right to receive the COFINA Revenues, (b) limit or alter the rights vested in COFINA in accordance with the Plan to fulfill the terms of the COFINA Bonds, (c) materially adversely impair the collection of the COFINA Pledged Taxes in any fiscal year, or (d) impair the rights and remedies of the holders of the COFINA Bonds or the statutory lien established under Article 3.2 of the New Bond Legislation, each as provided in the New Bond Legislation and the New Bond Indenture, serve as adequate protection for the property interests of Reorganized COFINA and the holders of the COFINA Bonds in the COFINA Pledged Taxes under all applicable law, and constitute valid, binding, legal and enforceable obligations of COFINA, Reorganized COFINA, and the Commonwealth, as applicable, and an integral part of the settlements set forth in the Plan.

(xii)   The covenants described in Sections 16.6 and 16.7 of the Plan (including, but not limited to, the rating agency covenant, the tax

exemption covenant, the substitution covenant, the non-impairment
covenant and the sales tax covenant), to be provided by Reorganized
COFINA and the Commonwealth, as the case may be, to the holders
of COFINA Bonds, shall constitute adequate protection for the
property interests of Reorganized COFINA and the holders of
COFINA Bonds in the COFINA Pledged Taxes under all applicable
law.

2.     Objections.  All objections, responses to, and statements and comments, if any, in

opposition to or inconsistent with the Plan shall be and hereby are, OVERRULED and DENIED

in their entirety.  All withdrawn objections are deemed withdrawn with prejudice.

3.     Confirmation of the Plan.  The Plan and each of its provisions shall be, and hereby

are, CONFIRMED pursuant to section 314(b) of PROMESA.  The documents contained in the

Second Amended Plan Supplement are authorized and approved.  The terms of the Plan, as

modified by the revisions made at or subsequent to the Confirmation Hearing, as set forth in this

Order as well as in the revised composite copy attached hereto as Exhibit A, including the Second

Amended Plan Supplement, as has and may be amended, are incorporated by reference into and

are an integral part of this Order.

4.     Compromise of Commonwealth-COFINA Dispute.  For the reasons stated herein

and in the Findings of Fact and Conclusions of Law, the provisions of the Plan and the Settlement

Agreement constitute a good faith, reasonable, fair, and equitable compromise and settlement of

all Claims and controversies resolved pursuant to the Plan, including, without limitation, the

Settlement Agreement and the compromise and settlement of the Commonwealth-COFINA

Dispute incorporated into the Plan, and the entry of this Order constitutes approval of all such

compromises and settlements pursuant to Bankruptcy Rule 9019 and sections 105(a) and

1123(b)(5) of the Bankruptcy Code.  Pursuant to this Order and the Settlement Order, to the extent

provided in the Plan and the Settlement Agreement, respectively, on the Effective Date, such

compromises and settlements shall be binding upon COFINA, the Commonwealth, all Creditors

7

Case:17-03283-LTS Doc#:10847-12 Filed:02/28/20 Entered:02/28/20 22:52 Desc:
Exhibit M Page 11 of 45

of COFINA and the Commonwealth, and all other Entities and, to the fullest extent permitted by applicable law, shall not be subject to collateral attack or other challenge in any court or other forum.

5.     Settlement Agreement Approved.  The Court (a) approves the Settlement Agreement as a good faith compromise that is fair and reasonable and in COFINA's best interests and integral to the Plan, and (b) upon the Effective Date, authorizes and directs the consummation of the Settlement Agreement by all parties thereto.

6.     Plan Settlement Approved.  The Court hereby approves the compromises and settlements embodied in the Plan as fair and reasonable and, as of the Effective Date of the Plan, authorizes and directs the consummation thereof.

7.     The Adversary Proceeding.  As soon as practicable after entry of this Order, but in no event later than five (5) business days following the Effective Date, each of (a) the Commonwealth Agent, (b) the COFINA Agent, and (c) the Permitted Intervenors, as defined in prior orders of the Court in connection with the Adversary Proceeding, shall take any and all actions necessary to cause the dismissal, with prejudice, of the Adversary Proceeding and all other claims and causes of action asserted therein by the Commonwealth Agent, the COFINA Agent, and the Permitted Intervenors, including, without limitation, causing the entry of an order in the Adversary Proceeding evidencing such dismissal, with prejudice.  Upon the dismissal, with prejudice, of the Adversary Proceeding, the Commonwealth Agent and the COFINA Agent and their respective professionals shall be deemed to have satisfied any and all of their respective obligations in connection with the Adversary Proceeding, and the Commonwealth Agent and the COFINA Agent shall be deemed to have been released from any and all liabilities associated therewith.

8

8.      The Interpleader Action.  As soon as practicable after entry of this Order, but in no event later than five (5) business days following the Effective Date, hereof and except with respect to (i) any Claims and causes of action asserted or that could have been asserted by BNYM against Ambac and Whitebox in the Interpleader Action and (ii) any non-released and non-dismissed counterclaims that may be asserted by either Ambac or Whitebox against BNYM therein for gross negligence, willful misconduct or intentional fraud, the parties to the Interpleader Action shall take any and all actions necessary to cause the dismissal, with prejudice, effective as of the Effective Date, of all other claims and causes of action asserted or that could have been asserted in the Interpleader Action, including, without limitation, filing a notice and obtaining an order of the Court with respect all such dismissed claims and causes of action.

9.      Implementation of the Plan.  On and after the Effective Date, the Debtor, Reorganized COFINA, and each of their respective authorized agents and representatives are authorized to (i) execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including, without limitation, those contained in the Second Amended Plan Supplement and the Settlement Agreement, (ii) make any and all distributions and transfers contemplated pursuant to, and as provided for in, the Plan, the Second Amended Plan Supplement, and the Settlement Agreement, (iii) take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan and the Settlement Agreement, including, among other things, all such actions delineated in Article XXVIII of the Plan, and (iv) direct or instruct BNYM, Depository Trust Company, or such other person or entity necessary to implement or effectuate the terms of the Trusts.  On the Effective Date, the appropriate officers or representatives of the Debtor and Reorganized COFINA, as the case may be, and members of the boards of directors of the same, are authorized and empowered to issue, execute,

file, and deliver or record such documents, contracts, instruments, releases, and other agreements,
including those contained in the Second Amended Plan Supplement, contemplated by the Plan and
the Settlement Agreement, and make, or cause to be made, any and all distributions and transfers
contemplated pursuant to, and as provided for in, the Plan, the Second Amended Plan Supplement,
and the Settlement Agreement, in the name of and on behalf of COFINA and Reorganized
COFINA, as applicable.

10.    No Action.  Pursuant to section 1142(b) of the Bankruptcy Code, no further action
of the directors or officers of COFINA shall be required to authorize COFINA to enter into,
execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the
Plan and the Settlement Agreement, and any contract, instrument, or other document to be
executed, delivered, adopted, or amended in connection with the implementation of the Plan and
Settlement Agreement, including, without limitation, the Second Amended Plan Supplement.

11.    Binding Effect.  This Order is full, final, and complete, conclusive and binding
upon and shall not be subject to collateral attack or other challenge in any court or other forum,
except as permitted under applicable law, by (i) COFINA, (ii) Reorganized COFINA, (iii) the
Commonwealth, (iv) each person or entity asserting claims or other rights against COFINA, the
Commonwealth or any of its other instrumentalities, including a beneficial interest (directly or
indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of bonds
issued by COFINA, the Commonwealth, or any of its other instrumentalities or with respect to any
trustee, any collateral agent, any indenture trustee, any fiscal agent, and any bank that receives or
holds funds related to such bonds, whether or not such claim or other rights of such person or entity
are impaired pursuant to the Plan or this Order and, if impaired, whether or not such person or
entity accepted or rejected the Plan, (v) any other person, and (vi) each of the foregoing's

respective heirs, successors, assigns, trustees, executors, administrators, officers, directors, agents, representative, attorneys, beneficiaries or guardians.

12. <u>Cancellation of Notes, Instruments, Certificates, and Other Documents</u>. Pursuant to Section 19.6 of the Plan, and except (a) as provided in any contract, instrument or other agreement or document entered into or delivered in connection with the Plan, (b) for purposes of evidencing a right to distribution under the Plan, or (c) as specifically provided otherwise in the Plan (including any rejection of Executory Contracts or Unexpired Leases pursuant to Section 18.1 of the Plan), on the Effective Date (and subject to the distribution of the COFINA Bonds in accordance with the terms and provisions of the Plan), the "Senior" and "First Subordinate" Existing Securities and all instruments and documents related thereto will be deemed automatically cancelled, terminated and of no further force or effect against COFINA without any further act or action under any applicable agreement, law, regulation, order or rule, with COFINA and BNYM having no continuing obligations or duties and responsibilities thereunder and the obligations of the parties to COFINA, as applicable, under the Existing Securities and all instruments and documents related thereto shall be discharged; <u>provided</u>, <u>however</u>, that, notwithstanding anything contained in the Plan to the contrary, the "Senior" and "First Subordinate" Existing Securities and such other instruments and documents shall continue in effect solely (i) to allow the Disbursing Agent to make any distributions as set forth in the Plan and to perform such other necessary administrative or other functions with respect thereto, (ii) to allow holders of Allowed Bond Claims to receive distributions in accordance with the terms and provisions of the Plan, (iii) for any trustee, agent, contract administrator or similar entity under all instruments and documents related thereto, including BNYM, to perform necessary functions, including making distributions, in accordance with the Plan and to have the benefit of all the rights and protections and other

11

provisions of such instruments and documents, as applicable, and all other related agreements, including, without limitation, the right to payment of the Trustee Claims and the Trustee Rights, (iv) to set forth the terms and conditions applicable to parties to such documents and instruments other than COFINA, (v) to allow BNYM to appear in the Title III Case or any other proceeding in which BNYM is or becomes a party with respect to clauses (i) through (iv) above, as applicable or otherwise in connection with BNYM's role as trustee under the Bond Resolution, or (vi) subject to the terms of Sections 17.1, 17.2 and 30.7 of the Plan, as may be necessary to preserve any claims under the respective Insurance Policies by (1) the applicable holders of Allowed Senior COFINA Bond Claims (Ambac) that validly elected to receive Ambac Certificates or (2) the applicable holders of Allowed Senior COFINA Bond Claims (National) that validly elected to receive National Certificates; and, provided, further, that, BNYM shall have no duties or responsibilities with respect to any Existing Securities that may be held by the Trusts from and after the Effective Date. Notwithstanding the foregoing, and except as otherwise expressly provided in the Plan, such bonds or bond documents as remain outstanding shall not form the basis for the assertion of any Claim against COFINA or Reorganized COFINA, as the case may be.

13. <u>Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases</u>. Pursuant to Section 18.1 of the Plan, except as otherwise provided herein, or in any contract instrument, release, or other agreement or document entered into in connection with the Plan, as of the Effective Date, COFINA shall be deemed to have rejected each prepetition Executory Contract and Unexpired Lease to which it is a party, pursuant to section 365 of the Bankruptcy Code, unless such Executory Contract and Unexpired Lease (i) was assumed, assumed and assigned, or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties, (iii) is

the subject of a motion to assume or assume and assign filed by the Debtor on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be assumed or assumed and assigned on the schedules to the Second Amended Plan Supplement. This Order shall constitute an order of the Court pursuant to sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

14.    <u>Insurance Policies</u>.  Subject to the terms and provisions of Section 18.7 of the Plan, each of COFINA's Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Except as otherwise provided in the Plan, on the Effective Date, COFINA shall, or shall cause BNYM, as trustee for the Existing Securities to, deposit or cause the deposit of all Insurance Policies and any agreements, documents and instruments relating to coverage of all insured Bond Claims into any applicable Trusts.  To the extent any Insurance Policy is rejected pursuant to the Plan, such rejection shall not, and shall not be construed to, discharge or relieve any of Ambac or National with respect to their respective obligations to holders of Allowed Senior COFINA Bond Claims (Ambac) and Allowed Senior COFINA Bond Claims (National), respectively, that have elected to receive the relevant trust certificates in accordance with the Plan pursuant to the applicable Insurance Policy. For the avoidance of doubt, nothing contained in this Order or the Plan shall prejudice any subrogation, reimbursement, or similar rights of an insured against the applicable Trust or the assets thereof.

15.    <u>Objection to Cure Amounts; Rejection Damages Claims</u>.  If the rejection of an Executory Contract and Unexpired Lease by COFINA pursuant to the Plan results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against

13

COFINA, or its properties or agents, successors, or assigns, including, without limitation, Reorganized COFINA, unless a proof of Claim is filed with the Title III Court and served upon attorneys for the Oversight Board and Reorganized COFINA, as the case may be, on or before thirty (30) days after the later to occur of (i) the Confirmation Date, and (ii) the date of entry of an order by the Court authorizing rejection of a particular Executory Contract and Unexpired Lease.

16.     <u>Payment of Cure Amounts</u>.  Any monetary amount required as a cure payment with respect to each prepetition executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or upon such other terms and dates as the parties to such executory contracts or unexpired leases and the Debtor, otherwise may agree.

17.     <u>Setoff</u>.  Except as otherwise provided in the Plan or in this Order, the Disbursing Agent may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim by the Disbursing Agent), the claims, rights, and causes of action of any nature that COFINA or Reorganized COFINA hold against the holder of such Allowed Claim; <u>provided</u>, <u>however</u>, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by COFINA or Reorganized COFINA of any such claims, rights, and causes of action that COFINA or the Reorganized COFINA may possess against such holder; and, <u>provided</u>, <u>further</u>, that nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the non-bankruptcy or common law right of recoupment; and, <u>provided</u>, <u>further</u>, that nothing in

this paragraph shall affect the releases and injunctions provided in Article XXX of the Plan or herein.

18.    <u>Delivery of Distributions</u>.  Subject to the provisions of Rule 9010 of the Bankruptcy Rules, and except as provided in Section 19.5 of the Plan and herein, distributions and deliveries to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Court, unless superseded by the address set forth on proofs of Claim filed by such holders, or at the last known address of such holder if no proof of Claim is filed or if COFINA has been notified in writing of a change of address; <u>provided</u>, <u>however</u>, that initial distributions of Cash by the Disbursing Agent for the benefit of holders of Allowed Senior COFINA Bond Claims, Allowed Senior COFINA Bond Claims (Ambac), Allowed Senior COFINA Bond Claims (National), Allowed Bond Claims (Taxable Election), Allowed Junior COFINA Bond Claims, Allowed Junior COFINA Bond Claims (Assured) and Allowed Junior COFINA Bond Claims (Taxable Election), as applicable, shall be made to BNYM, as trustee for the Existing Securities (or BNYM's designee) for such obligations; and, <u>provided</u>, <u>further</u>, that, on the Effective Date, the Disbursing Agent may make distributions of Consummation Costs in Cash to a Consummation Cost Party in a manner mutually agreed upon between the Consummation Cost Party and the Disbursing Agent.  BNYM (or BNYM's designee) shall, in turn, in accordance with the terms and provisions of the Plan, distribute and deliver Cash and COFINA Bonds, as applicable, to Bondowners, as of the Distribution Record Date, in the manner provided for in the applicable governing documents; <u>provided</u>, <u>however</u>, that, to the extent a holder of a Bond Claim elects to receive the trust certificate pursuant to the Plan, BNYM will deposit such holder's distribution into the applicable Trust; and, <u>provided</u>, <u>further</u>, that, in accordance with Section 10.1 of the Plan, BNYM shall deliver (i) the Section 103 Cash and Rounding Amount Cash, if any,

15

which, in each case, is allocable to Junior COFINA Bond Claims (Assured), and (ii) the Assured

New Bonds, to Assured in a manner mutually agreed upon between BNYM and Assured. On or

prior to the Effective Date, BNYM and COFINA shall disclose to Assured the Acceleration Price

to be paid with respect to the Assured Insured Bonds in accordance with Section 10.1 of the Plan,

and, on the Effective Date, (i) BNYM shall, with respect Assured Insured Bonds insured in the

primary market, draw down on the applicable Assured Insurance Policies to pay the applicable

Acceleration Price to the holders of Assured Insured Bonds insured in the primary market in

accordance with Section 10.1 of the Plan, and (ii) with respect to Assured Insured Bonds insured

in the secondary market, Assured shall, or shall cause the applicable custodian (each, a

"Custodian") of custody receipts or similar certificates evidencing the beneficial ownership

interest of the holders thereof in such Assured Insured Bonds and the related Assured Insurance

Policies, to draw on the applicable Assured Insurance Policies in order to pay the applicable

Acceleration Price to the holders of Assured Insured Bonds insured in the secondary market in

accordance with Section 10.1 of the Plan. BNYM may conclusively rely upon the distribution

instructions received from COFINA or its agents with respect to the delivery of distributions in

accordance with the terms and provisions of Section 19.5 of the Plan, including the contra-CUSIP

positions and escrow positions set up by COFINA or its agents with the Depository Trust

Company, and BNYM shall close and terminate the original CUSIPs after making initial

distributions of COFINA Bonds, COFINA Cash Available for Distribution, Section 103 Cash and

Rounding Cash Amount and shall have no further distribution obligations thereafter. BNYM shall

not be required to give any bond or surety or other security for the performance of its duties, unless

otherwise ordered by the Court. BNYM shall only be required to make the distributions and

deliveries described in this decretal paragraph and Section 19.5 of the Plan and shall only be

required to make such distributions and deliveries in accordance with the terms of this Order and the Plan and shall have no liability for actions reasonably taken in accordance with this Order, the Plan or in reasonable reliance upon information provided to BNYM by COFINA or its agents in accordance with this Order, the Plan or in connection with distributions to be made hereunder and thereunder, including to Lehman Brothers Special Financing Inc. under the Debt Service Deposit Agreement, dated as of July 1, 2008, among BNYM, COFINA, and Lehman Brothers Special Financing Inc., except for liabilities resulting from its own gross negligence or willful misconduct. Neither BNYM nor any Custodian shall have any liability for (i) applying payments under the Assured Insurance Policies to the payment of the applicable Acceleration Price with respect to the Assured Insured Bonds in accordance with Section 10.1 of the Plan, or (ii) transferring Section 103 Cash, Rounding Amount Cash, or Assured New Bonds to Assured in accordance with Section 10.1 of the Plan. Notwithstanding the foregoing, all distributions are subject to the Trustee Rights; provided, however, that, notwithstanding the foregoing or anything contained in the Plan and herein to the contrary, including, without limitation, Sections 19.6(iii) and 19.13 of the Plan, BNYM shall not exercise Trustee Rights on account of Trustee Claims that may arise from and after the Effective Date and no distribution to be made pursuant to the Plan, either through the Disbursing Agent or BNYM as trustee of the Existing Securities, shall be withheld as a result of, or on account of, or arising from or due to, the claims, causes of action and damages being asserted, or which could have been asserted, by or against BNYM in the Ambac Action and the Whitebox Actions; provided, further, that the foregoing shall be subject in all respects to the Title III Court's determination at the Confirmation Hearing of BNYM's rights pursuant to Section 19.5 of the Plan with regard to the payment of BNYM's fees and expenses and indemnification arising from or relating to the Ambac Action and the Whitebox Actions. COFINA, its agents and servicers, the

Disbursing Agent and BNYM shall have no obligation to recognize any transfer of Bond Claims after the Distribution Record Date; provided, however, that COFINA Bonds will be transferable and recognized if made in accordance with the terms and conditions of the New Bond Indenture.

19. **Disbursing Agent.** Pursuant to Section 1.84 of the Plan, the Disbursing Agent shall be, as applicable, COFINA or such other Entity designated by the Oversight Board and COFINA on or prior to the Effective Date to make or to facilitate distributions in accordance with the provisions of the Plan and this Order.

20. **Securities Act Exemption.** Pursuant to section 1145 of the Bankruptcy Code (other than with respect to an entity that is an underwriter as defined in section 1145(b) of the Bankruptcy Code) and/or Section 3(a)(2) of the Securities Act, the offering, issuance, and distribution of the COFINA Bonds, Ambac Certificates and National Certificates pursuant to the terms hereof shall be exempt from registration under the Securities Act and any state or local law requiring registration for the offer, issuance or distribution of securities, including, but not limited to, the registration requirements of Section 5 of the Securities Act and any other applicable state or federal law requiring registration and/or prospectus delivery or qualification prior to the offering, issuance, distribution, or sale of securities.

21. **Deemed Acceleration (Ambac Insured Bonds).** The principal amount (or Compounded Amount in the case of capital appreciation bonds) of the Ambac Insured Bonds shall be deemed accelerated and immediately due and payable, as of the Effective Date; provided, however, that such deemed acceleration shall not affect, nor shall it be construed to affect, any issues regarding the existence of a "default" or an "event of default" with respect to the Existing Securities which were pending prior to the Effective Date.

18

22.    <u>Deemed Acceleration (Assured Insured Bonds)</u>.   The principal amount (or Compounded Amount in the case of capital appreciation bonds) of the Assured Insured Bonds shall be deemed accelerated and immediately due and payable, as of the Effective Date; <u>provided</u>, <u>however</u>, that such deemed acceleration shall not affect, nor shall it be construed to affect, any issues regarding the existence of a "default" or an "event of default" with respect to the Existing Securities which were pending prior to the Effective Date.

23.    <u>Disputed Claims Holdback</u>.  From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Court in an amount constituting the allowed amount, or allowed or disallowed by Final Order of the Court, Reorganized COFINA shall retain, for the benefit of each holder of a Disputed Claim, COFINA Cash Available for Distribution, Section 103 Cash, Rounding Amount Cash and COFINA Bonds, and, to the extent elected by such holder, the applicable trust certificates, and any dividends, gains or income attributable in respect of any of the foregoing, in an amount equal to the Pro Rata Share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claims shall be estimated by the Title III Court pursuant to section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, and (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and Reorganized COFINA; <u>provided</u>, <u>however</u>, that the recovery by any holder of a Disputed Claim shall not exceed the lesser of (i), (ii) and (iii) above.   Any COFINA Cash Available for Distribution, Section 103 Cash, Rounding Amount Cash and COFINA Bonds retained and held for the benefit of a holder of a Disputed Claim shall be treated as payment and reduction on account

19

of such Disputed Claim for purposes of computing any additional amounts to be paid in Cash distributed in COFINA Bonds in the event the Disputed Claim ultimately becomes an Allowed Claim. Such Cash and any dividends, gains or income paid on account of the COFINA Bonds (if any) retained for the benefit of holders of Disputed Claims shall be retained by Reorganized COFINA for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan. To the extent that Reorganized COFINA retains COFINA Bonds on behalf of Disputed Claims holders, until such time as such COFINA Bonds are distributed, Reorganized COFINA shall exercise voting or consent rights with respect to such bonds.

24. <u>No Amendments to Proofs of Claim</u>. As of the commencement of the Confirmation Hearing, a proof of Claim may not be filed or amended without the authority of the Court.

25. <u>Conditions to Effective Date</u>. The Plan shall not become effective unless and until the conditions set forth in Section 25.1 of the Plan have been satisfied or waived pursuant to Section 25.2 of the Plan.

26. <u>Administrative Claim Bar Date</u>. The last day to file proof of Administrative Expense Claims shall be sixty (60) days after the Effective Date, after which date, any Administrative Expense Claim, proof of which has not been filed, shall be deemed forever barred, and COFINA and Reorganized COFINA shall have no obligation with respect thereto; <u>provided</u>, <u>however</u>, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim shall have been incurred (i) in accordance with an order of the Court or (ii) with the written consent of COFINA; and, <u>provided</u>, <u>further</u>, that, in accordance with section 503(b)(1)(D) of the Bankruptcy Code, applicable herein pursuant to section 301 of PROMESA, no governmental unit, including, without limitation, the IRS, shall be required to file a proof of Administrative Expense Claim by such date in order to be considered; and, <u>provided</u>,

further, that any such proof of Administrative Expense Claim by a governmental unit shall remain
subject to the rights and interests of COFINA and Reorganized COFINA, as the case may be, and
any other party in interest to interpose an objection or other defense to the allowance or payment
thereof.

27.     Professional Compensation and Reimbursement Claims.   All Entities awarded
compensation or reimbursement of expenses by the Court shall be paid in full, in Cash, in the
amounts allowed by the Court (a) as soon as reasonably practicable following the later to occur of
(i) the Effective Date and (ii) the date upon which the Court order allowing such Claims is deemed
to be a Final Order or (b) upon such other terms no more favorable to the claimant than as may be
mutually agreed upon between such claimant and the Government Parties; provided, however,
that, except as provided herein, each Professional must file its application for final allowance of
compensation for professional services rendered and reimbursement of expenses on or prior to one
hundred twenty (120) days following the Effective Date.  Reorganized COFINA is authorized to
pay compensation for professional services extended and reimbursement of expenses incurred after
the Effective Date in the ordinary course and without the need for Court approval.

28.     Consummation Costs.   Notwithstanding anything contained in the Plan or this
Order to the contrary, in order to compensate Consummation Cost Parties for the cost of
negotiation, confirmation and consummation of the Term Sheet and the Plan, and in consideration
of (a) the negotiation, execution and delivery of the Plan Support Agreement by each
Consummation Cost Party and (b) the obligations and covenants contained in the Plan Support
Agreement, each Consummation Cost Party, on the Effective Date, shall receive, based upon such
Entity's respective positions (insured or otherwise) as of 5:00 p.m. (EDT) on August 7, 2018, its
pro rata share of Cash in an amount equal to two percent (2.0%), truncated to two decimal points,

of (i) the aggregate amount of the Senior COFINA Bond Claims, Senior COFINA Bond Claims
(Ambac), Senior COFINA Bond Claims (National), Junior COFINA Bond Claims, Junior
COFINA Bond Claims (Assured), Senior COFINA Bond Claims (Taxable Election) and Junior
COFINA Bond Claims (Taxable Election) (calculated without duplication), minus (ii) One Billion
Dollars ($1,000,000,000.00); provided, however, that, notwithstanding the foregoing provisions
of this decretal paragraph and Section 3.3 of the Plan, amounts due to Aurelius Capital Master,
Ltd. and Six PRC Investments LLC as a result of being a Consummation Cost Party (i) shall not
be taken into account in connection with the above-referenced calculations solely with respect to
payments to other Consummation Cost Parties, which payment to the other Consummation Cost
Parties shall be made by COFINA or Reorganized COFINA, as the case may be, and (ii) with
respect to payments to be made to Aurelius Capital Master, Ltd. and Six PRC Investments LLC
shall be taken into account in connection with the above-referenced calculations for all
Consummation Cost Parties, which payments to Aurelius Capital Master, Ltd. and Six PRC
Investments LLC shall be made by the Commonwealth in accordance with the provisions of
Section 15.2 of the Plan; and, provided, further, that, with respect to any Senior COFINA Bond
Claims (Ambac) and Senior COFINA Bond Claims (National), unless otherwise agreed to, in
writing, by Ambac and National, and subject to the terms and provisions of Article XVII of the
Plan, Ambac or National, as the case may be, and not the beneficial holder of such Senior COFINA
Bond Claims (Ambac) and Senior COFINA Bond Claims (National) regardless of whether such
beneficial holder is also a Consummation Cost Party, shall receive the amount of Cash that would
have otherwise been distributed to such other Consummation Cost Party in accordance with the
provisions of Section 3.3 of the Plan; and, provided, further, that, with respect to the Junior
COFINA Bond Claims (Assured), Assured, and not the beneficial holders of the Junior COFINA

Bond Claims (Assured), shall receive the amount of Cash distributable on account of the Junior

COFINA Bond Claims (Assured) in accordance with the provisions of Section 3.3 of the Plan.

29.     <u>Discharge and Release of Claims and Causes of Action</u>.

(a)     Except as expressly provided in the Plan or herein, all distributions and rights

afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete

satisfaction, settlement, discharge and release of, all Claims or Causes of Action against COFINA

that arose, in whole or in part, prior to the Effective Date, relating to COFINA or Reorganized

COFINA or any of its Assets, property, or interests of any nature whatsoever, including any interest

accrued on such Claims from and after the Petition Date, and regardless of whether any property

will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of

Action.  Upon the Effective Date, COFINA and Reorganized COFINA shall be deemed discharged

and released from any and all Claims, Causes of Action and any other debts that arose, in whole

or in part, prior to the Effective Date (including prior to the Petition Date), and all debts of the kind

specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof

of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code,

(b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code (or is

otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan.

(b)     Except as otherwise provided in Sections 1.151 and 30.11 of the Plan or herein, all

Entities shall be precluded from asserting any and all Claims against COFINA and Reorganized

COFINA, and each of their respective Assets, property and rights, remedies, Claims or Causes of

Action or liabilities of any nature whatsoever, relating to COFINA or Reorganized COFINA or

any of their respective Assets and property, including any interest accrued on such Claims from

and after the Petition Date, and regardless of whether any property will have been distributed or

retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the Plan or this Order, this Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against COFINA pursuant to sections 524(a)(1), 524(a)(2), and 944(b) of the Bankruptcy Code, applicable to the Title III Case pursuant to section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against COFINA or Reorganized COFINA and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the Effective Date, and in consideration for the value provided under the Plan and the Settlement Agreement, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against COFINA and Reorganized COFINA, and their respective Assets and property and all such Claims.

(c)     Notwithstanding any other provisions of this decretal paragraph and Section 30.2 of the Plan, in accordance with the provisions of the Plan Support Agreement, each of the PSA Creditors and their respective Related Persons, solely in their capacity as Creditors of COFINA, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releases based upon, arising from or relating to the Government Released Claims or any of the claims or causes of action asserted or which could have been asserted in the Actions, (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by this subparagraph and Section 30.2(c) of the Plan and (iii) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or seek any

other type of relief against BNYM and each of its Related Persons from any and all Claims and
causes of action arising from or related to the Existing Securities, the Bond Claims and the Bond
Resolution; provided, however, that the release provided pursuant to clause (iii) above shall not
extend to any and all claims and causes of action for gross negligence, willful misconduct and
intentional fraud asserted or which can be asserted by Ambac or Whitebox in the Ambac Action
and Whitebox Actions, respectively.

(d)     On the Effective Date, and in consideration of the Commonwealth-COFINA
Dispute Settlement and the compromise and settlement of Bond Claims pursuant to the terms and
provisions of the Plan (including, without limitation, the distributions to be made on account of
"Senior" and "First Subordinate" Existing Securities), the resolution of the Interpleader Action
and the terms and provisions of Section 19.5 of the Plan regarding the Ambac Action and the
Whitebox Actions, to the fullest extent permissible under applicable law, BNYM and each holder
and beneficial holder of Existing Securities and their transferrees, successors or assigns shall be
released from liability for all Claims and Causes of Action arising from or related to the payment
by BNYM to beneficial holders of Existing Securities of regularly scheduled payments of principal
and interest in respect thereof; provided, however, that the foregoing release of BNYM shall not
extend, nor shall it be construed to extend, to acts of gross negligence, intentional fraud, or willful
misconduct of BNYM, including, without limitation, any acts which have been asserted, or which
could have been asserted in the Ambac Action and the Whitebox Actions.

(e)     On the Effective Date, (i) the COFINA Agent and its agents, attorneys, affiliates,
advisors, consultants and attorneys, solely in such capacities (collectively, the "COFINA Agent
Releasees"), and (ii) the Commonwealth Agent and the Creditors' Committee, its members and
each of their respective current and former officers, directors, agents, attorneys, employees,

affiliates, advisors, and consultants, solely in such capacities (collectively, the "Commonwealth Agent Releasees"), shall be released from liability for all Claims and Causes of Action (as if such Causes of Action were against the Commonwealth Agent Releasees, or the COFINA Agent Releasees, as applicable) with respect to the Adversary Proceeding, the Agreement in Principle, the Settlement Agreement, the Settlement Motion and the Settlement Order.

(f)     On the Effective Date, and in consideration of the Commonwealth-COFINA Dispute Settlement and the resolution of the Interpleader Action, to the fullest extent permissible under applicable law, the Commonwealth shall be released from all liability from all Claims and Causes of Action held by any Creditor, solely in such capacity, arising from or relating to the relationship of the Commonwealth and COFINA, including, without limitation, any Claim or Cause of Action arising from or relating to the commencement of the Adversary Proceeding and pendency and the compromise and settlement of the Interpleader Action and the allocation of funds in accordance with Section 2.1 of the Plan.

30.     <u>Releases by COFINA and Reorganized COFINA</u>.  Except as otherwise expressly provided in the Plan, this Order, or the Settlement Agreement, on the Effective Date, and for good and valuable consideration, each of COFINA and Reorganized COFINA, the Disbursing Agent and each of COFINA's and Reorganized COFINA's Related Persons (other than any former elected or appointed officials, directors, or officers of any of the Government Parties and the Commonwealth, in each case acting in his or her capacity as such prior to January 1, 2017)[5] shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of

---

[5]     The date on which the current administration of the Government of Puerto Rico was installed.  Indemnification claims, if any, resulting from non-released Claims shall survive confirmation and effectiveness of the Plan.

Action that COFINA, Reorganized COFINA, and the Disbursing Agent, or any of them, or anyone
claiming through them, on their behalf or for their benefit, have or may have or claim to have, now
or in the future, against any Released Party (other than any former elected or appointed officials,
directors, or officers of any of the Government Parties and the Commonwealth, in each case acting
in his or her capacity as such prior to January 1, 2017) that are Released Claims or otherwise are
based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission,
transaction, event or other circumstance relating to COFINA taking place or existing on or prior
to the Effective Date, and/or any Claim, act, fact, transaction, occurrence, statement, or omission
in connection with or alleged or that could have been alleged in the Actions, the Related Actions,
including, without limitation, any such Claim, demand, right, liability, or cause of action for
indemnification, contribution, or any other basis in law or equity for damages, costs or fees;
provided, however, that, notwithstanding anything contained in the Plan to the contrary, "Related
Persons" shall not include any financial advisors, investment bankers, underwriters, attorneys,
accountants, agents and professionals of the Commonwealth and COFINA, solely to the extent of
services provided in connection with the issuance of the Existing Securities; and, provided, further,
that the plaintiffs in that certain adversary proceeding before the Title III Court, captioned
Cooperativa de Ahorro y Credito Abraham Rosa, et al. v. Commonwealth of Puerto Rico, et al.,
Adv. Proc. No. 18-00028, shall be entitled to continue pursuit of such litigation against all parties
other than COFINA and Reorganized COFINA, subject to all available rights and defenses with
respect to claims and causes of action asserted therein.

31. _Release and Exculpation Provisions._ Except as otherwise provided in this Order,
all release and exculpation provisions, including, but not limited to, those contained in Article

27

XXX of the Plan, are approved and shall be effective and binding on all Entities, to the extent provided herein.

32.     <u>Preservation of Certain Claims and Causes of Action</u>.  Notwithstanding anything contained in this Order or the Plan to the contrary, including, without limitation, the provisions of Article XXX, Ambac and Whitebox shall retain, and shall not be enjoined or otherwise barred from pursuing, any and all claims and causes of action, whether sounding in contract or tort, solely for gross negligence, willful misconduct or intentional fraud that were asserted, or could have been asserted, against BNYM in the Ambac Action, the Whitebox Actions or the Interpleader Action, and BNYM shall retain and shall not be enjoined or otherwise barred from pursuing, any and all claims and causes of action and asserting any rights and defenses against Ambac and Whitebox arising from or related to the Bond Resolution.

33.     **<u>Injunction on Claims</u>.  Except as otherwise expressly provided in Section 30.11 of the Plan, this Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 30.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any**

encumbrance of any kind against any of the Released Parties or any of their respective assets
or property on account of any Claim or other debt or liability that is discharged pursuant to
the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555,
556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment,
asserting any right of setoff, subrogation or recoupment of any kind against any obligation
due from any of the Released Parties or any of their respective assets or property, with
respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.
Such injunction shall extend to all successors and assigns of the Released Parties and their
respective assets and property.

34. **Injunction Related to Releases**.  As of the Effective Date, all Entities that hold,
have held, or may hold a Released Claim that is released pursuant to Section 30.5 of the Plan,
are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred
and enjoined from taking any of the following actions, whether directly or indirectly,
derivatively or otherwise, on account of or based on the subject matter of such discharged
Released Claims:  (i) commencing, conducting or continuing in any manner, directly or
indirectly, any suit, action or other proceeding (including, without limitation, any judicial,
arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching
(including, without limitation any prejudgment attachment), collecting, or in any way
seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or
in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking
reimbursement or contributions from, or subrogation against, or otherwise recouping in any
manner, directly or indirectly, any amount against any liability or obligation owed to any
Entity released under Section 30.5 of the Plan; and (v) commencing or continuing in any

29

**manner, in any place of any judicial, arbitration or administrative proceeding in any forum,**

**that does not comply with or its inconsistent with the provisions of the Plan or this Order.**

35. <u>Exculpation</u>.

(a) <u>Government Parties</u>: The Oversight Board, the Commonwealth, AAFAF, COFINA, the Commonwealth Agent Releasees, and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the Effective Date (or such later date as necessary to implement any post-Effective Date transactions contemplated by the Plan), shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, the Settlement Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan and the Settlement Agreement; <u>provided</u>, <u>however</u>, that the foregoing provisions of this subparagraph and Section 30.7(a) of the Plan shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct. Nothing in the foregoing provisions of this subparagraph and Section 30.7(a) of the Plan shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the Effective Date (or such later date as necessary to implement any post-Effective Date transactions contemplated by the Plan), and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the Plan. The Commonwealth Agent Releasees shall be deemed to be a "Released Party" pursuant to the Plan and the release and exculpation

provisions contained in Section 30.7(a) of the Plan shall be deemed to apply to the Commonwealth Agent Releasees.

(b)    <u>Monoline Insurers</u>:  Each of Ambac, Assured and National and their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken consistent with the Plan in connection with the formulation, preparation, dissemination, implementation, acceptance, confirmation or approval of the Plan, including, without limitation, in connection with the structure of the Trusts, commutation, the treatment of Senior COFINA Bond Claims (Ambac), the treatment of Junior COFINA Bond Claims (Assured), the treatment of Senior COFINA Bond Claims (National), the voting procedures, the election procedures, and any release of obligations under the applicable Insurance Policies; <u>provided</u>, <u>however</u>, that, notwithstanding anything contained herein or the Plan to the contrary, the terms and provisions of the Plan and this Order shall not, and shall not be construed to, release or exculpate: (1) except as otherwise set forth in the Ambac Trust agreement, with respect to any beneficial holder of the Ambac Insured Bonds that receives Ambac Certificates in accordance with the Plan, any claim against Ambac with respect to Ambac's payment obligations under the Ambac Insurance Policy (which claim shall only be asserted by the trustee of the Ambac Trust), as adjusted to account for any distributions from the Ambac Trust (and any subrogation claims that Ambac may have pursuant to the terms of the Ambac Insurance Policy and any other claims or defenses that Ambac may have against a beneficial holder of such Ambac Insured Bonds with respect to Ambac's obligations under the Ambac Insurance Policy); (2) except as otherwise set forth in the National Trust agreement, with respect to any beneficial holder of National Insured Bonds that received National Certificates in accordance with the Plan, any claim against National with respect to National's obligations under the National Insurance Policies (which claim shall be asserted in accordance with the terms of the

National Insurance Policies), as adjusted to account for any distributions from the National Trust (and any subrogation claims that National may have pursuant to the terms of the National Insurance Policies or other claims that National may have against a beneficial holder of such National Insured Bonds with respect to National's obligations to such beneficial holder under the National Insurance Policies); or (3) with respect to any beneficial holder of Assured Insured Bonds, any payment obligation under the applicable Assured Insurance Policy in accordance with its terms solely to the extent of any failure by Assured to pay the applicable Acceleration Price in full (or any claims that Assured may have against a beneficial holder of Assured Insured Bonds with respect to Assured's obligations under the Assured Insurance Policies).

(c)     <u>PSA Creditors and Bonistas</u>:  Each of the PSA Creditors and Bonistas, solely in its capacity as a party to the Plan Support Agreement and a Creditor, as applicable, from the Petition Date up to and including the Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, the Settlement Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transaction set forth in the Plan and the Settlement Agreement; <u>provided</u>, <u>however</u>, that the foregoing provisions of this subparagraph and Section 30.7(c) of the Plan shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(d)     <u>Agents</u>:  Each of the COFINA Agent and the Commonwealth Agent, each solely in its capacity as agent of the Oversight Board to litigate and/or settle the Commonwealth-COFINA

Dispute, respectively, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the Commonwealth-COFINA Dispute, including, without limitation, the Commonwealth-COFINA Dispute Order, the Adversary Proceeding, the Commonwealth-COFINA Dispute Settlement, the Settlement Agreement, the Settlement Motion and the Settlement Order.

36. <u>Appointments Related Litigation</u>. Notwithstanding anything contained herein or the Plan to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation subsequent to entry of the Settlement Order and this Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the Plan and documents and instruments related hereto, and all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the Plan or this Order having consented and agreed, such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the Plan, the Settlement Agreement, this Order and the Settlement Order, including, without limitation, the compromise and settlement of the Commonwealth-COFINA Dispute and the releases, exculpations and injunctions provided pursuant to Article XXX of the Plan and herein.

37. **<u>Bar Order</u>. To the limited extent provided in the Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the Plan, the negotiation and consummation of**

the Settlement Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Related Actions, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Related Actions, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the Related Actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).

38. **Supplemental Injunction**. Notwithstanding anything contained herein or in the Plan to the contrary, except to the limited extent provided in the Plan,[6] all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to any Claim against COFINA, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly

---

[6] For the avoidance of doubt, no Claims or Causes of Action held by the Commonwealth with respect to the issuance of the Existing Securities shall be discharged, released, or enjoined pursuant to this Order or the Plan (except to the limited extent that such Claims or Causes of Action are discharged or released pursuant to Paragraphs 7, 29, 30, 31, 35 of this Order or Sections 2.1, 30.2, 30.5, 30.7 of the Plan).

collecting, recovering or receiving any payment or recovery with respect to any **Released**

**Claims** arising prior to the Effective Date (including prior to the Petition Date), including,

but not limited to:

(a) Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b) Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(c) Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(d) Except as otherwise expressly provided in the Plan, this Order, or the Settlement Agreement, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

(e) Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, this Order, or the Settlement Agreement relating to such Released Claim; provided, however, that the Debtors' compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

39. <u>COFINA Agent and Commonwealth Agent Releases and Exculpation</u>. On the

Effective Date, to the fullest extent permissible under applicable law, the COFINA Agent

Releasees and the Commonwealth Agent Releasees shall be released from liability for all Claims

and Causes of Action (as if such Causes of Action were against the COFINA Agent Releasees or

the Commonwealth Agent Releasees, as applicable) with respect to the Adversary Proceeding and

the Plan.

40. <u>Term of Existing Injunctions or Stays</u>. Unless otherwise provided in the Plan or

this Order, all injunctions or stays in effect in the Title III Case (pursuant to sections 105, 362, or

922 of the Bankruptcy Code or any order of the Title III Court) and existing on the Confirmation

Date (excluding any injunctions or stays contained in the Plan or this Order) shall remain in full

force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this

Order shall remain in full force and effect in accordance with their terms.

41.     Prosecution of Claims.  Except as settled and released herein, from and after the

Effective Date, Reorganized COFINA shall have the exclusive right and power to litigate any

Claim or Cause of Action that constituted an Asset of COFINA, including, without limitation, any

Avoidance Action, and any other Cause of Action, right to payment, or Claim that may be pending

on the Effective Date or instituted by COFINA or Reorganized COFINA thereafter, to a Final

Order, and may compromise and settle such claims, without approval of the Court.

42.     Indemnification and Reimbursement Obligations.  For purposes of the Plan, (i) to

the extent executory in nature, the obligations of COFINA, including, without limitation, directors

and officers insurance policies, to indemnify and reimburse its directors or officers that were

directors or officers, respectively, on or prior to the Petition Date shall be deemed assumed as of

the Effective Date and (ii) indemnification obligations of COFINA arising from conduct of officers

and directors during the period from and after the Petition Date shall be Administrative Expense

Claims.

43.     Compliance with Tax Requirements.  Any party issuing any instrument or making

any distribution under the Plan shall comply with all applicable withholding and reporting

requirements imposed by any United States federal, state or local tax law or Tax Authority, and all

distributions under the Plan shall be subject to any such withholding or reporting requirements.

Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under

the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any

Taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such withholding tax obligations and, if any party issuing any instrument or making any distribution under the Plan fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse such party. The Disbursing Agent or the trustee of the applicable Trust may require, as a condition to the receipt of a distribution (including the applicable trust certificates), that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder. If the holder fails to comply with such a request within one year, such distribution shall be deemed an Unclaimed Distribution.

44. <u>Documents and Instruments</u>. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan, the Settlement Agreement, and this Order.

45. <u>Reversal/Stay/Modification/Vacatur of Order</u>. Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by COFINA or Reorganized COFINA, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal,

stay, modification, or vacatur shall be governed in all respect by the provisions of this Order, the

Settlement Agreement, and the Plan.  To the extent not specifically reversed, modified, vacated,

or stayed by an order of this Court, all existing orders entered in this Title III Case remain in full

force and effect.

46. <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Order or the occurrence

of the Effective Date, subject to the terms and provisions of Article XXIX of the Plan, and except

as otherwise provided in the Plan or herein, pursuant to sections 105, 945(a), and 1142(b) of the

Bankruptcy Code, this Court shall retain exclusive jurisdiction over all matters arising out of, and

related to, the Title III Case to the fullest extent as is legally permissible, including, but not limited

to, jurisdiction over the matters set forth in Article XXIX of the Plan.

47. <u>Conflicts Among Order, Plan, and Settlement Order</u>.  The provisions of the Plan,

this Order, and the Settlement Order shall be construed in a manner consistent with each other so

as to effect the purpose of each; <u>provided</u>, <u>however</u> that, in the event of any inconsistency between

the Settlement Order, the Plan or this Order, the documents shall control in the following order of

priority: (i) the Settlement Order, (ii) this Order, and (iii) the Plan; and, <u>provided</u>, <u>further</u>, that, in

the event of any inconsistency between this Order and any other order in the COFINA Title III

Case, and Commonwealth Title III Case, the Adversary Proceeding, or the Interpleader Action,

the terms and provisions of this Order shall control; and, <u>provided</u>, <u>further</u>, that nothing contained

herein is intended, nor shall be construed, to modify the economic terms of the Plan.

48. <u>Collective Action</u>.  No "Holder" (as defined in the New Bond Indenture) of any of

the COFINA Bonds or COFINA Parity Bonds or both (solely in its capacity as a Holder of such

bonds) shall have any right to institute any suit, action or proceeding in equity or at law for the

execution of any trust under the New Bond Indenture or otherwise, or for any other remedy under

38

the New Bond Indenture or otherwise, in each case unless such Holder shall have complied with Section 11.07 of the New Bond Indenture (as may be amended from time to time in accordance with the terms and provisions thereof); <u>provided</u>, that, notwithstanding the foregoing, such Holder shall have the right which is absolute and unconditional to receive payment of the principal of (and premium, if any) and interest on such COFINA Bond or COFINA Parity Bond on the stated maturity expressed in such bond (or, in the case of redemption, on the redemption date or, in the case of interest, on the interest payment date on which such interest is due) and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

49.     <u>Modifications</u>.  Before substantial consummation of the Plan, the Oversight Board may modify the Plan at any time after entry of this Order; <u>provided</u>, <u>however</u>, that the circumstances warrant such modification and the Court, after notice and a hearing, confirms such plan as under the applicable legal requirements.   Provisions of Plan and Order Nonseverable and Mutually Dependent.  The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth in the Findings of Fact and Conclusions of Law, are nonseverable and mutually dependent.

50.     <u>Governing Law</u>.  Except to the extent that other federal law is applicable, or to the extent that an exhibit to the Plan or any document to be entered into in connection with the Plan provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, PROMESA (including the provisions of the Bankruptcy Code made applicable under section 301 of PROMESA) and, to the extent not inconsistent therewith, the laws of the Commonwealth of Puerto Rico giving effect to principles of conflicts of laws.

51.     Applicable Nonbankruptcy Law.  Pursuant to section 1123(a) of the Bankruptcy
Code, as applicable to the COFINA Title III Case pursuant to PROMESA section 301(a), the
provisions of this Order and the Plan shall apply and be enforceable notwithstanding any otherwise
applicable nonbankruptcy law.  The documents contained in the Second Amended Plan
Supplement  (as such documents may be further modified and filed with the Court prior to the
Effective Date), including, without limitation, Reorganized COFINA By-Laws, the COFINA
Bonds, the New Bond Indenture, the Instructions Agreement, the Ambac Trust Agreement, the
National Trust Agreement, the Standard Terms to National Trust Agreement, the Remarketing
Agreement,  and  the  Continuing  Disclosure  Agreement  provide  adequate  means  for
implementation of the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code, and, as of the
occurrence of the Effective Date, shall constitute valid legal obligations of COFINA and the
Commonwealth, as applicable, and valid provisions to pay to secure payment of the COFINA
Bonds pursuant to section 944(b)(3) of the Bankruptcy Code, and be enforceable in accordance
with their terms.

52.     Non-Effect on Other Actions.  For the avoidance of doubt, nothing in the Plan  or
in this Order shall release, discharge, enjoin, provide exculpation with respect to, or otherwise
affect, any claim, cause of action, or litigation not directly related to COFINA, including, without
limitation, (i) Adversary Proceeding No. 18-0059-LTS in Case No. 17 BK 3283-LTS (D.P.R.), (ii)
Adversary Proceeding No. 17-155-LTS in Case No. 17 BK 3283-LTS (D.P.R.), (iii) Adversary
Proceeding No. 17-156-LTS in Case No. 17 BK-3567-LTS (D.P.R.), (iv) Adversary Proceeding
No. 18-87 in Case No. 17 BK 3283-LTS (D.P.R.), (v) Case No. 18-1165 (1st Cir.); (vi) Case No.
18-1166 (1st Cir.); (vii) Case No. 18-1746 (1st Cir.); and (viii) except as provided herein, the
Appointments Related Litigation.

53. <u>Use of Commonwealth Funds</u>. Except as expressly set forth in the Plan Support Agreement, certain parties thereto reserve their right, if any, to contest in the Commonwealth Title III Case the Commonwealth's (a) use, or direction of the use, of monies received by the Commonwealth or to be received by the Commonwealth and (b) deposit or other use, or direction of the use, of such monies.

54. <u>Waiver of Filings</u>. Any requirement pursuant to Bankruptcy Rule 1007 obligating the Debtor to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee is hereby waived as to any such list, schedule, or statement not filed as of the Effective Date.

55. <u>Notice of Order</u>. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtor shall serve notice of the entry of this Order and the occurrence of the Effective Date, substantially in the form attached as <u>Exhibit B</u> hereto, to all parties who hold a Claim in the COFINA Title III Case, as well as the Creditors' Committee, the U.S. Trustee, any party filing a notice pursuant to Bankruptcy Rule 2002, the Securities and Exchange Commission, the Internal Revenue Service, and the United States Attorney for the District of Puerto Rico. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order.

56. <u>Waiver of Stay</u>. The stay of this Order otherwise imposed by Bankruptcy Rule 3020(e) is hereby waived as of the date hereof.

41

57.    <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

Dated: February 4, 2019

 /s/ Laura Taylor Swain<br>
LAURA TAYLOR SWAIN<br>
United States District Judge

Case 17-03283-LTS  Doc#5048-1  Filed 02/04/19  Entered 02/04/19 17:32:54  Desc:
Exhibit A Plan Page 1 of 91

**Exhibit A**

**Plan**

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

## THIRD AMENDED TITLE III PLAN OF ADJUSTMENT OF <u>PUERTO RICO SALES TAX FINANCING CORPORATION</u>

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944

*Attorneys for the Financial Oversight and Management Board*
*as Representative for COFINA in its Title III Case*

Dated: January 9, 2019

# TABLE OF CONTENTS

**Page**

ARTICLE I       DEFINITIONS ...................................................................................................1

      1.1     AAFAF .........................................................................................................1
      1.2     Abeyance Stipulation..................................................................................1
      1.3     Acceleration Price.......................................................................................1
      1.4     Actions........................................................................................................1
      1.5     Additional Bonds Test ................................................................................1
      1.6     Administrative Claim Bar Date ..................................................................1
      1.7     Administrative Expense Claim ...................................................................2
      1.8     Adversary Proceeding.................................................................................2
      1.9     Affiliate......................................................................................................2
      1.10    Agents ........................................................................................................2
      1.11    Agreement in Principle ..............................................................................2
      1.12    Allowed Administrative Expense Claim ....................................................2
      1.13    Allowed Claim............................................................................................2
      1.14    Allowed General Unsecured Claim ............................................................3
      1.15    Allowed GS Derivative Claim....................................................................3
      1.16    Allowed Junior COFINA Bond Claim .......................................................3
      1.17    Allowed Junior COFINA Bond Claim (Assured) ......................................3
      1.18    Allowed Junior COFINA Bond Claim (Taxable Election) .........................3
      1.19    Allowed Senior COFINA Bond Claim.......................................................3
      1.20    Allowed Senior COFINA Bond Claim (Ambac) ........................................3
      1.21    Allowed Senior COFINA Bond Claim (National) ......................................3
      1.22    Allowed Senior COFINA Bond Claim (Taxable Election).........................3
      1.23    Ambac.........................................................................................................3
      1.24    Ambac Action ............................................................................................4
      1.25    Ambac Certificates.....................................................................................4
      1.26    Ambac Insurance Policy.............................................................................4
      1.27    Ambac Insured Bonds ................................................................................4
      1.28    Ambac Trust ...............................................................................................4
      1.29    Ambac Trust Assets....................................................................................4
      1.30    Appointments Related Litigation................................................................4
      1.31    Assets.........................................................................................................5
      1.32    Assured......................................................................................................5
      1.33    Assured Insurance Policies.........................................................................5
      1.34    Assured Insured Bonds ..............................................................................5
      1.35    Assured New Bonds ...................................................................................5
      1.36    Avoidance Actions .....................................................................................5
      1.37    Ballot Date .................................................................................................5
      1.38    Ballot/Election Forms ................................................................................5
      1.39    Bankruptcy Code .......................................................................................5
      1.40    Bankruptcy Rules ......................................................................................5
      1.41    Bar Date .....................................................................................................5
      1.42    Bar Date Order...........................................................................................5

**Table of Contents**
**(Cont'd)**

Page

1.43    BNYM ........................................................................................................6
1.44    Bond Claim ...............................................................................................6
1.45    Bondowner ...............................................................................................6
1.46    Bond Resolution ......................................................................................6
1.47    Bonistas ...................................................................................................6
1.48    Business Day ...........................................................................................6
1.49    CABs ........................................................................................................6
1.50    Cash .........................................................................................................6
1.51    Causes of Action .....................................................................................6
1.52    CIBs ..........................................................................................................7
1.53    Claim ........................................................................................................7
1.54    Class .........................................................................................................7
1.55    COFINA ...................................................................................................7
1.56    COFINA Agent ........................................................................................7
1.57    COFINA Bonds ........................................................................................7
1.58    COFINA Cash Available for Distribution ..............................................7
1.59    COFINA Fiscal Plan ...............................................................................7
1.60    COFINA FY2019 BNYM Deposits ........................................................7
1.61    COFINA Operating Expense Account .....................................................8
1.62    COFINA Parity Bonds ............................................................................8
1.63    COFINA Pledged Taxes ..........................................................................8
1.64    COFINA Portion ......................................................................................8
1.65    COFINA Pre-FY2019 BNYM Deposits ..................................................8
1.66    Commonwealth ........................................................................................8
1.67    Commonwealth Agent .............................................................................8
1.68    Commonwealth-COFINA Dispute ..........................................................9
1.69    Commonwealth-COFINA Dispute Order ................................................9
1.70    Commonwealth-COFINA Dispute Settlement ........................................9
1.71    Commonwealth Portion ...........................................................................9
1.72    Commonwealth Title III Case .................................................................9
1.73    Compounded Amount ..............................................................................9
1.74    Confirmation Date .................................................................................10
1.75    Confirmation Hearing ...........................................................................10
1.76    Confirmation Order ...............................................................................10
1.77    Consummation Costs .............................................................................10
1.78    Consummation Cost Party .....................................................................10
1.79    Creditor ..................................................................................................10
1.80    Creditors' Committee .............................................................................10
1.81    Debt Service Fund .................................................................................10
1.82    Debt Service Savings .............................................................................10
1.83    Definitive Documents ............................................................................10
1.84    Disbursing Agent ...................................................................................11
1.85    Disclosure Statement .............................................................................11
1.86    Disclosure Statement Hearing ...............................................................11
1.87    Disclosure Statement Order ...................................................................11
1.88    Disputed Claim ......................................................................................11

ii

**Table of Contents**
**(Cont'd)**

| | | |
|---|---|---|
| 1.89 | Distribution Date | 11 |
| 1.90 | Distribution Record Date | 11 |
| 1.91 | Effective Date | 11 |
| 1.92 | Entity | 11 |
| 1.93 | Exculpated Party | 11 |
| 1.94 | Executory Contract | 12 |
| 1.95 | Existing Securities | 12 |
| 1.96 | Final Order | 12 |
| 1.97 | First Dollars Funding | 12 |
| 1.98 | Fiscal Plan | 12 |
| 1.99 | Fixed Amount | 12 |
| 1.100 | FY | 12 |
| 1.101 | FY2019 BNYM Deposits | 12 |
| 1.102 | General Unsecured Claim | 13 |
| 1.103 | Government Parties | 13 |
| 1.104 | Government Released Claims | 13 |
| 1.105 | Government Releasees | 13 |
| 1.106 | GS Derivative Claim | 13 |
| 1.107 | Insurance Policies | 13 |
| 1.108 | Interpleader Action | 13 |
| 1.109 | IRC | 13 |
| 1.110 | IRS | 13 |
| 1.111 | Junior COFINA Bond Claim | 14 |
| 1.112 | Junior COFINA Bond Claim (Assured) | 14 |
| 1.113 | Junior COFINA Bond Claim (Taxable Election) | 14 |
| 1.114 | Junior COFINA Bond Distribution | 14 |
| 1.115 | Junior Taxable Bond Distribution | 14 |
| 1.116 | Lex Claims Action | 14 |
| 1.117 | Lien | 15 |
| 1.118 | List of Creditors | 15 |
| 1.119 | Local Bankruptcy Rules | 15 |
| 1.120 | Maximum Taxable Bond Election Amount | 15 |
| 1.121 | Motion to Enforce | 15 |
| 1.122 | National | 15 |
| 1.123 | National Certificate Holder | 15 |
| 1.124 | National Certificates | 15 |
| 1.125 | National Election | 15 |
| 1.126 | National Insurance Policies | 16 |
| 1.127 | National Insured Bonds | 16 |
| 1.128 | National Trust | 16 |
| 1.129 | National Trust Assets | 16 |
| 1.130 | New Banking Services Agreement | 16 |
| 1.131 | New Bond Indenture | 16 |
| 1.132 | New Bond Legislation | 16 |
| 1.133 | New Collateral | 16 |
| 1.134 | Oversight Board | 16 |

**Table of Contents**
**(Cont'd)**

Page

1.135   Person ...............................................................................17
1.136   Petition Date ........................................................................17
1.137   Plan .....................................................................................17
1.138   Plan Supplement ..................................................................17
1.139   Plan Support Agreement ......................................................17
1.140   Pre-FY2019 BNYM Deposits ...............................................17
1.141   Professional .........................................................................17
1.142   Professional Claim ...............................................................17
1.143   PROMESA ............................................................................17
1.144   Pro Rata Share .....................................................................17
1.145   PSA Creditors ......................................................................18
1.146   PSTBA .................................................................................18
1.147   Puerto Rico Institution .........................................................18
1.148   Puerto Rico Investor ............................................................18
1.149   Related Actions ....................................................................18
1.150   Related Persons ....................................................................18
1.151   Released Claims ...................................................................18
1.152   Released Parties ...................................................................19
1.153   Releasing Parties ..................................................................19
1.154   Reorganized COFINA ..........................................................19
1.155   Reorganized COFINA By-Laws ...........................................19
1.156   Remainder Taxable Bond Election Amount ...........................19
1.157   Rounding Amount Cash ........................................................19
1.158   Sale Notice ..........................................................................19
1.159   Sale Proceeds ......................................................................20
1.160   Sales Tax .............................................................................20
1.161   Section 103 Cash .................................................................20
1.162   Section 510(b) Subordinated Claim ......................................20
1.163   Securities Act .......................................................................20
1.164   Senior COFINA Bond Claim ................................................20
1.165   Senior COFINA Bond Claim (Ambac) ..................................20
1.166   Senior COFINA Bond Claim (National) ................................20
1.167   Senior COFINA Bond Claim (Taxable Election) ....................20
1.168   Senior COFINA Bond Distribution ......................................21
1.169   Senior Taxable Bond Distribution ........................................21
1.170   Settlement Agreement ..........................................................21
1.171   Settlement Motion ...............................................................21
1.172   Settlement Order ..................................................................21
1.173   Solicitation Agent ................................................................21
1.174   Subordinated Lien Bonds .....................................................21
1.175   Taxable Bond Distribution ...................................................21
1.176   Taxable COFINA Bonds .......................................................22
1.177   Taxable Election Cash ..........................................................22
1.178   Tax Election Remainder Amount ..........................................22
1.179   Tax-Exempt COFINA Bonds .................................................22
1.180   Term Sheet...........................................................................22

104749481v5

Case:17-03283-LTS Doc#:11047-13 Filed:02/04/93 Entered:02/04/93 7:32:54 Desc:
Exhibit AM Page 26 of 164

**Table of Contents**
**(Cont'd)**

| | | |
|---|---|---|
| 1.181 | Title III | 22 |
| 1.182 | Title III Case | 22 |
| 1.183 | Title III Court | 22 |
| 1.184 | Trustee Claims | 22 |
| 1.185 | Trustee Rights | 22 |
| 1.186 | Trusts | 22 |
| 1.187 | Unclaimed Distribution | 22 |
| 1.188 | Unexpired Lease | 23 |
| 1.189 | Whitebox | 23 |
| 1.190 | Whitebox Actions | 23 |
| 1.191 | Other Definitions | 23 |
| 1.192 | Rules of Interpretation | 23 |

| | | |
|---|---|---|
| ARTICLE II | COMPROMISE AND SETTLEMENT OF DISPUTES | 24 |
| 2.1 | Commonwealth-COFINA Dispute | 24 |

| | | |
|---|---|---|
| ARTICLE III | PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS | 26 |
| 3.1 | Administrative Expense Claims | 26 |
| 3.2 | Professional Compensation and Reimbursement Claims | 26 |
| 3.3 | Consummation Costs | 27 |

| | | |
|---|---|---|
| ARTICLE IV | CLASSIFICATION OF CLAIMS | 27 |
| 4.1 | Claims are classified as follows | 27 |

| | | |
|---|---|---|
| ARTICLE V | PROVISIONS FOR TREATMENT OF SENIOR COFINA BOND CLAIMS (CLASS 1) | 28 |
| 5.1 | Treatment of Senior COFINA Bond Claims | 28 |
| 5.2 | Right of Election to Senior COFINA Bond Claims (Taxable Election) | 28 |

| | | |
|---|---|---|
| ARTICLE VI | PROVISIONS FOR TREATMENT OF SENIOR COFINA BOND CLAIMS (AMBAC) (CLASS 2) | 29 |
| 6.1 | Treatment of Senior COFINA Bond Claims (Ambac) | 29 |
| 6.2 | Ambac Insurance Contribution | 29 |
| 6.3 | Non-Commutation/Ambac Trust | 30 |
| 6.4 | Deemed Acceleration | 30 |
| 6.5 | Entitlement to Vote | 30 |

v

Case:17-03283-LTS Doc#:11047-13 Filed:02/28/20 Entered:02/28/20 22:24:53 Desc:
Exhibit Page 26 of 164

## Table of Contents
### (Cont'd)

| | | **Page** |
|---|---|---|

**ARTICLE VII** — PROVISIONS FOR TREATMENT OF SENIOR COFINA BOND CLAIMS (NATIONAL) (CLASS 3)..................................................30

7.1 — Treatment of Senior COFINA Bond Claims (National)................................30
7.2 — National Insurance Contribution ...............................................................31
7.3 — Non-Commutation/National Trust................................................................31
7.4 — Entitlement to Vote....................................................................................31

**ARTICLE VIII** — PROVISIONS FOR TREATMENT OF SENIOR COFINA BOND CLAIMS (TAXABLE ELECTION) (CLASS 4)........................................32

8.1 — Provisions for Treatment of Senior COFINA Bond Claims (Taxable Election).........................................................................................................32

**ARTICLE IX** — PROVISIONS FOR TREATMENT FOR JUNIOR COFINA BOND CLAIMS (CLASS 5)..................................................................................32

9.1 — Treatment of Junior COFINA Bond Claims.................................................32
9.2 — Right of Election to Junior COFINA Bond Claims (Taxable Election).........................................................................................................32

**ARTICLE X** — PROVISIONS FOR TREATMENT FOR JUNIOR COFINA BOND CLAIMS (ASSURED) (CLASS 6)..................................................................32

10.1 — Treatment of Junior COFINA Bond Claims (Assured)................................32
10.2 — Deemed Acceleration ...............................................................................33
10.3 — Entitlement to Vote...................................................................................33
10.4 — Remarketing of Assured New Bonds .........................................................33

**ARTICLE XI** — PROVISIONS FOR TREATMENT FOR JUNIOR COFINA BOND CLAIMS (TAXABLE ELECTION) (CLASS 7)........................................34

11.1 — Treatment for Junior COFINA Bond Claims (Taxable Election) ................34

**ARTICLE XII** — PROVISIONS FOR TREATMENT OF GS DERIVATIVE CLAIMS (CLASS 8)................................................................................................34

12.1 — Treatment of GS Derivative Claims ..........................................................34

**ARTICLE XIII** — PROVISIONS FOR TREATMENT OF GENERAL UNSECURED CLAIMS (CLASS 9)................................................................................34

13.1 — Treatment of General Unsecured Claims ..................................................34

**ARTICLE XIV** — PROVISIONS FOR TREATMENT OF SECTION 510(B) SUBORDINATED CLAIMS (CLASS 10)................................................34

14.1 — Treatment of Section 510(b) Subordinated Claims ....................................34

vi

**Table of Contents**
**(Cont'd)**

| | | |
|---|---|---|
| ARTICLE XV | PROVISIONS REGARDING ALLOCATION OF UNSUBSCRIBED TAXABLE ELECTION CASH | 35 |
| | | |
| 15.1 | Unsubscribed Taxable Election Cash Amount | 35 |
| 15.2 | Commonwealth/COFINA Expenses | 35 |
| | | |
| ARTICLE XVI | PROVISIONS REGARDING COFINA BONDS | 35 |
| | | |
| 16.1 | Issuance of COFINA Bonds | 35 |
| 16.2 | Collateral for Repayment of COFINA Bonds | 37 |
| 16.3 | Additional Bonds Test for COFINA Parity Bonds | 37 |
| 16.4 | Call Provisions/Optional Redemption | 38 |
| 16.5 | First Dollars Funding | 39 |
| 16.6 | Covenants for COFINA Bonds and COFINA Parity Bonds | 39 |
| 16.7 | Substitution of Collateral | 40 |
| 16.8 | Debt Service Reserve Fund | 41 |
| 16.9 | Rights of Acceleration | 41 |
| | | |
| ARTICLE XVII | THE TRUSTS | 41 |
| | | |
| 17.1 | Terms of Ambac Trust | 41 |
| 17.2 | Terms of National Trusts | 43 |
| 17.3 | Existing Securities/BNYM Obligations | 44 |
| | | |
| ARTICLE XVIII | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 45 |
| | | |
| 18.1 | Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases | 45 |
| 18.2 | Approval of Rejection or Assumption of Executory Contracts and Unexpired Leases | 45 |
| 18.3 | Inclusiveness | 45 |
| 18.4 | Cure of Defaults | 45 |
| 18.5 | Insurance Policies | 46 |
| 18.6 | Rejection Damage Claims | 46 |
| 18.7 | Indemnification and Reimbursement Obligations | 46 |
| 18.8 | Nonoccurrence of Effective Date | 46 |
| 18.9 | Reservation of Rights | 47 |
| | | |
| ARTICLE XIX | PROVISIONS GOVERNING DISTRIBUTIONS | 47 |
| | | |
| 19.1 | Time and Manner of Distribution | 47 |
| 19.2 | Timeliness of Payments | 48 |
| 19.3 | Distributions by the Disbursing Agent | 48 |
| 19.4 | Manner of Payment under the Plan | 48 |
| 19.5 | Delivery of Distributions | 48 |

vii

**Table of Contents**
**(Cont'd)**

19.6    Cancellation of Notes, Instruments, Certificates, and Other
        Documents ..........................................................................................49
19.7    Undeliverable/Reserved Distributions.................................................50
19.8    Withholding and Reporting Requirements ..........................................51
19.9    Time Bar to Cash Payments ................................................................51
19.10   Distributions After Effective Date......................................................51
19.11   Setoffs..................................................................................................51
19.12   Allocation of Plan Distributions Between Principal and Interest........52
19.13   Payment of Trustee Fees and Expenses...............................................52

ARTICLE XX       RIGHTS AND POWERS OF DISBURSING AGENT ..............................52

20.1    Exculpation ..........................................................................................52
20.2    Powers of the Disbursing Agent ..........................................................53
20.3    Fees and Expenses Incurred From and After the Effective Date .........53

ARTICLE XXI      PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS ..............53

21.1    Objections to Claims; Prosecution of Disputed Claims ......................53
21.2    Estimation of Claims ...........................................................................53
21.3    Payments and Distributions on Disputed Claims ................................54
21.4    Authority to Amend List of Creditors .................................................55
21.5    Non-Accrual of Interest .......................................................................55
21.6    Disallowance of Claims .......................................................................55

ARTICLE XXII     ACCEPTANCE OR REJECTION OF THE PLAN, EFFECT OF
                 REJECTION BY ONE OR MORE CLASSES OF CLAIMS ...................55

22.1    Impaired Classes to Vote .....................................................................55
22.2    Acceptance by Class of Creditors ........................................................55
22.3    Cramdown .............................................................................................56

ARTICLE XXIII    IDENTIFICATION OF CLAIMS IMPAIRED BY THE PLAN AND
                 NOT IMPAIRED BY THE PLAN.........................................................56

23.1    Impaired Classes ...................................................................................56
23.2    Impaired Classes to Vote ......................................................................56

ARTICLE XXIV     CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN .....56

24.1    Conditions Precedent to Confirmation of the Plan ..............................56
24.2    Waiver of Conditions Precedent to Confirmation ...............................57

ARTICLE XXV      CONDITIONS PRECEDENT TO THE EFFECTIVE DATE...................58

25.1    Conditions Precedent to the Effective Date..........................................58
25.2    Waiver of Conditions Precedent ...........................................................61

viii

**Table of Contents**
**(Cont'd)**

| | | Page |
|---|---|---|

25.3    Effect of Non-Occurrence of Conditions to Effective Date ........................ 61

ARTICLE XXVI    PROSECUTION AND EXTINGUISHMENT OF CLAIMS HELD
BY COFINA.................................................................................................. 61

26.1    Prosecution of Claims..................................................................... 61

ARTICLE XXVII    MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE
PLAN............................................................................................................ 61

27.1    Modification of Plan........................................................................ 61
27.2    Revocation or Withdrawal............................................................... 62
27.3    Amendment of Plan Documents...................................................... 62
27.4    No Admission of Liability............................................................... 62

ARTICLE XXVIII    CORPORATE GOVERNANCE AND  MANAGEMENT OF
REORGANIZED COFINA............................................................................ 62

28.1    Corporate Action............................................................................. 62
28.2    Amendment of By-Laws ................................................................. 63
28.3    Directors of the Reorganized COFINA ........................................... 63
28.4    Officers of Reorganized COFINA................................................... 63
28.5    Structure for Collection and Application of COFINA Pledged Taxes......... 64

ARTICLE XXIX    RETENTION OF JURISDICTION ............................................................. 64

29.1    Retention of Jurisdiction................................................................. 64

ARTICLE XXX    MISCELLANEOUS PROVISIONS............................................................ 66

30.1    Title to Assets................................................................................. 66
30.2    Discharge and Release of Claims and Causes of Action.................. 66
30.3    Injunction on Claims....................................................................... 68
30.4    Integral to Plan............................................................................... 68
30.5    Releases by COFINA and Reorganized COFINA ........................... 69
30.6    Injunction Related to Releases ....................................................... 69
30.7    Exculpation..................................................................................... 69
30.8    Appointments Related Litigation.................................................... 71
30.9    Bar Order ........................................................................................ 71
30.10    No Waiver...................................................................................... 71
30.11    Supplemental Injunction................................................................ 72
30.12    Preservation of Certain Claims and Causes of Action ................... 72
30.13    Post-Effective Date Fees and Expenses.......................................... 73
30.14    Securities Act Exemption .............................................................. 73
30.15    Severability.................................................................................... 73
30.16    Governing Law .............................................................................. 73
30.17    Closing Case .................................................................................. 73

ix

**Table of Contents**
**(Cont'd)**

| | | |
|---|---|---|
| 30.18 | Section Headings | 73 |
| 30.19 | Inconsistencies | 73 |
| 30.20 | Document Retention | 74 |
| 30.21 | Immediate Binding Effect | 74 |
| 30.22 | Additional Documents | 74 |
| 30.23 | Reservation of Rights | 74 |
| 30.24 | Termination of the Oversight Board | 74 |
| 30.25 | Successors and Assigns | 75 |
| 30.26 | Notices | 75 |
| 30.27 | Term of Injunctions or Stays | 76 |
| 30.28 | Entire Agreement | 76 |
| 30.29 | Plan Supplement | 76 |

x

The Financial Oversight and Management Board for Puerto Rico, as representative of the Puerto Rico Sales Tax Financing Corporation pursuant to Section 315(b) of the *Puerto Rico Oversight, Management and Economic Stability Act*, hereby proposes the following plan of adjustment.

# ARTICLE I

## DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings set forth below and be equally applicable to the singular and plural of the terms defined:

1.1 **AAFAF:** Autoridad de Asesoría Financiera y Agencia Fiscal, a public corporation and instrumentality of the Commonwealth, whose name in English is the Puerto Rico Fiscal Agency and Financial Advisory Authority.

1.2 **Abeyance Stipulation:** That certain Stipulation and Agreed Order Related to Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation and Related Matters [Case No. 17-3283, ECF No. 4202], entered by the Title III Court in the Commonwealth Title III Case.

1.3 **Acceleration Price:** With respect to an Assured Insured Bond accelerated as of the Effective Date, an amount equal to (a) with respect to current interest bonds (and convertible capital appreciation bonds that converted into current interest bonds as of, up to, but not including the Effective Date), the outstanding principal amount of such accelerated bond plus the accrued and unpaid interest thereon, and (b) with respect to capital appreciation bonds (and convertible capital appreciation bonds that have not converted into current interest bonds as of, up to, but not including, the Effective Date), the Compounded Amount for such accelerated bond, in each case, as of, up to, but not including the Effective Date.

1.4 **Actions:** Collectively, the litigation styled (a) Whitebox Multi-Strategy Partners, L.P., et al. v. The Bank of New York Mellon, Adv. Pro. No. 17-AP-143-LTS, currently pending in the Title III Court, (b) Whitebox Multi-Strategy Partners, L.P., et al. v. The Bank of New York Mellon, Case No. 17-CV-3750-LTS, currently pending in the Title III Court, (c) Ambac Assurance Corp. v. The Bank of New York Mellon, Case No. 17-CV-3804-LTS, currently pending in the United States District Court for the Southern District of New York, (d) The Bank of New York Mellon v. Puerto Rico Sales Tax Financing Corporation, et al., Adv. Pro. No. 17-133-LTS, currently pending in the Title III Court, (e) the Lex Claims Action, and (f) Rodriguez-Perelló et al. v. Rosselló-Nevares et al., No. 3:17-cv-01566-FAB (D.P.R. 2017), currently pending in the United States District Court for the District of Puerto Rico.

1.5 **Additional Bonds Test:** The criteria set forth in Section 16.3 hereof required to be satisfied prior to the issuance of Subordinated Lien Bonds for the benefit of, and with the consent of, the Commonwealth.

1.6 **Administrative Claim Bar Date:** Unless otherwise ordered by the Title III Court, the date established by the Title III Court and set forth in the Confirmation Order as the last day to file proof of Administrative Expense Claims, which date shall be no more than sixty

(60) days after the Effective Date, after which date, any Administrative Expense Claim, proof of which has not been filed, shall be deemed forever barred, and COFINA and Reorganized COFINA shall have no obligation with respect thereto; provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim shall have been incurred (i) in accordance with an order of the Title III Court or (ii) with the written consent of COFINA.

      1.7    **Administrative Expense Claim:** A Claim against COFINA or its Assets constituting a cost or expense of administration of the Title III Case asserted or authorized to be asserted, on or prior to the Administrative Claim Bar Date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the Effective Date, including, without limitation, (a) any actual and necessary cost and expense of preserving the Assets of COFINA, (b) any actual and necessary cost and expense of operating the business of the COFINA, (c) any cost and expense of COFINA for the management, maintenance, preservation, sale, or other disposition of any Assets, (d) any cost and expense associated with the administration and implementation of the Plan, (e) any cost and expense associated with the administration, prosecution, or defense of Claims by or against COFINA and for distributions under the Plan, (f) any Claim for compensation and reimbursement of expenses arising during the period from and after the Petition Date and prior to the Effective Date and awarded by the Title III Court or otherwise in accordance with the provisions of the Plan, whether fixed before or after the Effective Date and (g) subject to the occurrence of the Effective Date, Consummation Costs.

      1.8    **Adversary Proceeding:** The litigation styled The Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico, as agent of the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico v. Bettina Whyte, as agent of the Financial Oversight and Management Board for Puerto Rico, as representative of the Puerto Rico Sales Tax Financing Corporation, Adv. Proc. No. 17-257-LTS, currently pending in the Title III Court.

      1.9    **Affiliate:** With respect to any specified Entity, any other Person or Entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such Entity.

      1.10    **Agents:** Collectively, the Commonwealth Agent and the COFINA Agent.

      1.11    **Agreement in Principle:** That certain Terms and Conditions of Agreement in Principle to Resolve Commonwealth-COFINA Dispute, attached as Exhibit "A" [Adv. Proc. No. 17-257 LTS, Dkt. No. 486-1] to the Joint Informative Motion of Commonwealth Agent and COFINA Agent Disclosing Agreement in Principle [Adv. Proc. No. 17-257 LTS, Dkt. No. 486-1].

      1.12    **Allowed Administrative Expense Claim:** An Administrative Expense Claim, to the extent it is or has become an Allowed Claim.

      1.13    **Allowed Claim:** A Claim against COFINA or COFINA's Assets (a) proof of which was filed on or before the applicable Bar Date or (b) if no proof of Claim has been timely filed, which has been or hereafter is listed by COFINA in the List of Creditors and is not listed thereon as "disputed", "contingent", or "unliquidated" or (c) allowed pursuant to (i) section

502(h) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, (ii) the terms of the Plan or (iii) a Final Order; provided, however, that, with respect to any Claim described in clause (a) or (b) above, such Claim shall be considered Allowed only if, and to the extent that, no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. For purposes of determining the amount of an "Allowed Claim," there shall be deducted therefrom an amount equal to the amount of any Claim that COFINA may hold against the holder thereof, to the extent such Claim may be set off pursuant to applicable bankruptcy and non-bankruptcy law. Notwithstanding anything to the contrary herein (x) Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Title III Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by order of the Title III Court, (y) for any purpose under the Plan, "Allowed Claim" shall not include interest, penalties, or late charges arising from or relating to the period from and after the Petition Date, and (z) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

1.14 **Allowed General Unsecured Claim**: A General Unsecured Claim, to the extent it is or has become an Allowed Claim.

1.15 **Allowed GS Derivative Claim**: The GS Derivative Claim, to the extent it is or has become an Allowed Claim.

1.16 **Allowed Junior COFINA Bond Claim**: A Junior COFINA Bond Claim, to the extent it is or has become an Allowed Claim.

1.17 **Allowed Junior COFINA Bond Claim (Assured)**: A Junior COFINA Bond Claim (Assured), to the extent it is or has become an Allowed Claim.

1.18 **Allowed Junior COFINA Bond Claim (Taxable Election)**: A Junior COFINA Bond Claim (Taxable Election), to the extent it is or has become an Allowed Claim.

1.19 **Allowed Senior COFINA Bond Claim**: A Senior COFINA Bond Claim to the extent it is or has become an Allowed Claim.

1.20 **Allowed Senior COFINA Bond Claim (Ambac)**: A Senior COFINA Bond Claim (Ambac), to the extent it is or has become an Allowed Claim.

1.21 **Allowed Senior COFINA Bond Claim (National)**: A Senior COFINA Bond Claim (National), to the extent it is or has become an Allowed Claim.

1.22 **Allowed Senior COFINA Bond Claim (Taxable Election)**: A Senior COFINA Bond Claim (Taxable Election) to the extent it is or has become an Allowed Claim.

1.23 **Ambac**: Ambac Assurance Corporation.

1.24    **Ambac Action**:  The litigation styled <u>Ambac Assurance Corp. v. The Bank of New York Mellon</u>, Case No. 17-cv-3804-LTS, currently pending in the United States District Court for the Southern District of New York.

1.25    **Ambac Certificates:**  The certificates to be issued by the Ambac Trust to beneficial holders of Allowed Senior COFINA Bond Claims (Ambac) electing treatment pursuant to the terms and provisions of Section 6.1(b) hereof.

1.26    **Ambac Insurance Policy:**  The existing insurance policy issued by Ambac relating to the Ambac Insured Bonds, together with any and all agreements and other documents related thereto.

1.27    **Ambac Insured Bonds:**  The "Senior" Existing Securities issued by COFINA and insured by Ambac.

1.28    **Ambac Trust:**  The trust(s) formed by COFINA on or prior to the Effective Date, at the sole cost and expense of Ambac and/or from the Ambac Trust Assets, solely on behalf, and for the benefit of, beneficial holders of Allowed Senior COFINA Bond Claims (Ambac) that validly elect, in accordance with the approved solicitation procedures, to receive Ambac Certificates, not to commute their Ambac Insurance Policy, and not to release and discharge all of Ambac's obligations pursuant to the Ambac Insurance Policy.

1.29    **Ambac Trust Assets:**  Collectively, (a) the Ambac Insured Bonds of beneficial holders of Allowed Senior COFINA Bond Claims (Ambac) electing treatment pursuant to Section 6.1(b) hereof, (b) the Senior COFINA Bond Distribution (comprised of Section 103 Cash, if applicable, COFINA Cash Available for Distribution, COFINA Bonds and Rounding Amount Cash, if necessary) allocable to such electing holders of an Allowed Senior COFINA Bond Claim (Ambac), and (c) the benefit of the Ambac Insurance Policy.

1.30    **Appointments Related Litigation:**  Collectively, the litigation styled (a) <u>In Re: The Financial Oversight and Management Board for Puerto Rico as Representative of the Commonwealth of Puerto Rico</u>, No. 18-1108, currently pending in the United States Court of Appeals for the First Circuit, (b) <u>In re: The Financial Oversight and Management Board for Puerto Rico as Representative of the Commonwealth of Puerto Rico</u>, No. 18-1746, currently pending in the United States Court of Appeals for the First Circuit, (c) <u>Union de Trabajadores de la Industria Electrica y Riego (UTIER) v. Puerto Rico Electric Power Authority</u>, et al., Adv. Pro. No. 17-AP-228-LTS, currently pending in the Title III Court, (d) <u>René Pinto Lugo, et al. v. The Government of the United States of America, et al.</u>, Adv. Pro. No. 18-041-LTS, currently pending in the Title III Court, (e) <u>Hermanidad De Empleados Del Fondo Del Seguro Del Estado, Inc., et al.</u> v. <u>Government of the United States of America, et al.</u>, Adv. Pro. No. 18-066-LTS, currently pending in the Title III Court, (f) <u>Hon. Rafael Hernandez-Montanez, et al. v. The Financial Oversight and Management Board of Puerto Rico</u>, Adv. Pro. No. 18-090-LTS, currently pending in the Title III Court, and (g) such other litigation as may be currently pending or as may be commenced during the period from and after the date hereof up to and including the COFINA Effective Date wherein claims or causes of action consistent with or similar to those asserted or which could have been asserted in the above-referenced litigations have been asserted.

1.31    **Assets:**  With respect to COFINA, (i) all "property" of COFINA, including, without limitation, such property as it may be reflected on COFINA's books and records and the Confirmation Order as of the Effective Date and (ii) all Claims and Causes of Action, and any subsequent proceeds thereof, that have been or may be commenced by COFINA or other authorized representative for the benefit of COFINA and its Creditors, unless modified or released pursuant to the Plan or a Final Order, including, without limitation, any Avoidance Action.

1.32    **Assured:**  Assured Guaranty Municipal Corp.

1.33    **Assured Insurance Policies:**  The existing insurance policies issued by Assured relating to the Assured Insured Bonds, together with any and all agreements and other documents related thereto.

1.34    **Assured Insured Bonds:**  The "First Subordinate" Existing Securities issued by COFINA and insured by Assured, including, without limitation, those securities insured by Assured through insurance issued in the secondary market.

1.35    **Assured New Bonds:**  The COFINA Bonds to be issued on the Effective Date, and insured by Assured in accordance with the terms and provisions of Article X hereof.

1.36    **Avoidance Actions:**  Any and all avoidance, recovery, subordination or other actions or remedies against any Entity that may be brought by or on behalf of COFINA under sections 510, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, or applicable non-bankruptcy law.

1.37    **Ballot Date:**  The deadline(s) established by the Title III Court and set forth in the Disclosure Statement Order for the submission of Ballots/Election Forms and the election of alternative treatments pursuant to the terms and provisions of the Plan.

1.38    **Ballot/Election Forms:**  The forms distributed to each holder or insurer, as the case may be, of an impaired Claim entitled to vote on the Plan, on which form is to be indicated, among other things, (a) acceptance or rejection of the Plan and/or (b) to the extent applicable, an election of distribution and treatment which may be required in accordance with the provisions of the Plan.

1.39    **Bankruptcy Code:**  The Bankruptcy Reform Act of 1978, as amended, to the extent codified in title 11, United States Code, as applicable to the Title III Case.

1.40    **Bankruptcy Rules:**  The Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Title III case.

1.41    **Bar Date:**  The date established by the Title III Court by which proofs of Claim must have been filed with respect to such Claims, pursuant to (a) the Bar Date Order, (b) a Final Order of the Title III Court, or (c) the Plan.

1.42    **Bar Date Order:**  The order of the Title III Court establishing the date by which proofs of Claim against COFINA or its Assets must have been filed, including, but not limited

104749481v5

to, that certain (a) Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof [Case No. 17-3283-LTS, ECF No. 2521], and (b) Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof  [Case No. 17-3283-LTS, ECF No. 3160].

1.43    **BNYM:**  The Bank of New York Mellon, solely in its capacity as trustee and paying agent in connection with the Existing Securities.

1.44    **Bond Claim:**  A Claim on account of a "Senior" or "First Subordinate" Existing Security issued by COFINA, with the amount of such Claim being calculated as (a) with respect to current interest bonds and convertible capital appreciation bonds that converted into current interest bonds as of, up to, but not including, the Petition Date, the outstanding principal amount of such bonds <u>plus</u> any accrued and unpaid interest thereon, in each case, as of, up to, but not including, the Petition Date, and (b) with respect to capital appreciation bonds and convertible capital appreciation bonds that have not converted into current interest bonds as of, up to, but not including, the Petition Date, the Compounded Amount for such bonds, in each case, as of, up to, but not including, the Petition Date.

1.45    **Bondowner:**  Any Person which shall be the registered owner of any Existing Securities as set forth in BNYM's books and records.

1.46    **Bond Resolution:**  That certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted by COFINA on July 13, 2007, as amended and restated on June 19, 2009, and as supplemented pursuant to certain supplemental resolutions entered into thereunder or adopted pursuant thereto.

1.47    **Bonistas:**  Bonistas del Patio, Inc.

1.48    **Business Day:**  A day other than a Saturday, Sunday, or any other day on which commercial banking institutions in New York, New York are required to close by law or executive order.

1.49    **CABs:**  Collectively, the series of capital appreciation bonds to be issued pursuant to the Plan as components of the COFINA Bonds and to be distributed pursuant to the terms and provisions of the Plan.

1.50    **Cash:**  Lawful currency of the United States, including, but not limited to, bank deposits, checks representing good funds, and other similar items.

1.51    **Causes of Action:**  All claims, actions, causes of action, rights to payment, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions) against COFINA or its Assets that are pending or may be asserted against any Entity whether arising on or before the Effective Date, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to

judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the Effective Date.

1.52   **CIBs:**  Collectively, the series of current interest bonds to be issued pursuant to the Plan as components of the COFINA Bonds and to be distributed pursuant to the terms and provisions of the Plan.

1.53   **Claim:**  Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.

1.54   **Class:**  A category of holders of Claims set forth in Article IV of the Plan.

1.55   **COFINA:**  The Puerto Rico Sales Tax Financing Corporation, a public corporation and instrumentality of the Commonwealth of Puerto Rico constituting a corporate and political entity independent and separate from the Commonwealth of Puerto Rico.

1.56   **COFINA Agent:**  Bettina M. Whyte, in her capacity as the appointed agent of the Oversight Board, as representative of COFINA, to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of COFINA pursuant to the Commonwealth-COFINA Dispute Order.

1.57   **COFINA Bonds:**  The securities to be issued by Reorganized COFINA on the Effective Date pursuant to the Plan.

1.58   **COFINA Cash Available for Distribution:**  The amount of Cash available for distribution on the Effective Date comprised of the COFINA Pre-FY2019 BNYM Deposits minus the sum of (a) Rounding Amount Cash plus (b) Section 103 Cash plus (c) Taxable Election Cash plus (d) Consummation Costs as required to be paid by COFINA pursuant to Section 3.3 of the Plan plus (e) the amount of Cash, if any, retained by COFINA for the COFINA Operating Expense Account or distributed to COFINA pursuant to Section 2.1(a)(I)(D)(III) of the Plan.

1.59   **COFINA Fiscal Plan:**  That certain Fiscal Plan of COFINA, dated October 18, 2018, and as certified by the Oversight Board on October 18, 2018, as such Fiscal Plan may be amended, restated, supplemented or modified from time to time in accordance with Section 201 of PROMESA.

1.60   **COFINA FY2019 BNYM Deposits:**  Fifty-three and sixty-five one hundredths percent (53.65%) of the FY2019 BNYM Deposits, plus any earnings thereon.

1.61     **COFINA Operating Expense Account:** The account to be established on or prior to the Effective Date in accordance with the New Bond Indenture and maintained for the purpose of satisfying the operating expenses of Reorganized COFINA in the ordinary course of business.

1.62     **COFINA Parity Bonds:** The securities which may be issued, on a *pari passu* basis with the COFINA Bonds issued on the Effective Date, by Reorganized COFINA from and after the Effective Date, for the purpose of refinancing, in whole or in part, COFINA Bonds or securities previously issued to refinance COFINA Bonds, provided that, (a) notwithstanding the terms of such securities, COFINA shall not be entitled to an increase of the COFINA Portion; (b) the principal and interest payment dates on any such securities shall be the same principal and interest payment dates on the COFINA Bonds; (c) the final maturity date on any such securities shall not be later than the original scheduled final maturity date of the COFINA Bonds; and (d) upon the issuance of any such securities (i) the annual debt service due in the then-current and each future fiscal year on all COFINA Bonds and COFINA Parity Bonds outstanding after the issuance of the COFINA Parity Bonds shall be equal to or less than the annual debt service due in the then-current and each future fiscal year, respectively, on all COFINA Bonds and COFINA Parity Bonds outstanding prior to such issuance; (ii) the Debt Service Savings shall only be realized in the same fiscal years in which principal of COFINA Bond and COFINA Parity Bonds was refunded and/or purchased; (iii) Debt Service Savings in any fiscal year shall be applied first, to the repayment of principal and interest on COFINA Bonds or COFINA Parity Bonds unpaid from any prior fiscal year; and second, at the option of COFINA, (x) to purchase COFINA Bonds and COFINA Parity Bonds in the open market (subject to the limitation in subsection (ii) above), (y) to transfer to the COFINA Operating Expense Account to pay operating expenses of COFINA or (z) transfer such savings to the Commonwealth; and (iv) any Debt Service Savings released to the Commonwealth as set forth in subsection (iii) above shall be available for any lawful purpose of the Commonwealth.

1.63     **COFINA Pledged Taxes:** The present and future revenues and collections generated by the portion of the Sales Tax that corresponds to a tax rate of five and one-half percent (5.5%).

1.64     **COFINA Portion:** The COFINA Pledged Taxes and all rights thereto, including the right to receive the COFINA Pledged Taxes pursuant to the First Dollars Funding, in an amount up to fifty-three and sixty-five one hundredths percent (53.65%) of the PSTBA in any given fiscal year until the COFINA Bonds and COFINA Parity Bonds have been paid or satisfied in full in accordance with their terms.

1.65     **COFINA Pre-FY2019 BNYM Deposits:** The Pre-FY2019 BNYM Deposits in excess of Seventy-Eight Million Three Hundred Fifty-Five Thousand Eight Hundred Thirty-Seven Dollars and Sixty-Three Cents ($78,355,837.63).

1.66     **Commonwealth:** The Commonwealth of Puerto Rico.

1.67     **Commonwealth Agent:** The appointed agent of the Oversight Board, as representative of the Commonwealth, to litigate and/or settle the Commonwealth-COFINA

Dispute on behalf of the Commonwealth pursuant to the Commonwealth-COFINA Dispute Order.

1.68 **Commonwealth-COFINA Dispute:** The dispute between the Commonwealth and COFINA regarding ownership of the sales and use taxes purportedly transferred by the Commonwealth to COFINA and pledged by COFINA to secure the repayment of certain indebtedness of COFINA, being litigated in the Adversary Proceeding, and to be compromised and settled pursuant to the Settlement Order and the Confirmation Order.

1.69 **Commonwealth-COFINA Dispute Order:** That certain Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute [Case No. 17-3283, ECF No. 996], as amended from time to time, entered by the Title III Court in the Commonwealth Title III Case.

1.70 **Commonwealth-COFINA Dispute Settlement:** The compromise and settlement of the Commonwealth-COFINA Dispute, based upon the Agreement in Principle, and set forth in that certain Settlement Agreement, dated as of October 19, 2018 between the COFINA Agent and the Oversight Board.

1.71 **Commonwealth Portion:** Collectively, an interest that is second in priority of payment, funding and collections, in all circumstances, subject and pursuant to the First Dollars Funding, in the COFINA Pledged Taxes and all rights thereto including the right to receive (a) the residual amount of the COFINA Pledged Taxes in the amount, if any, in excess of the COFINA Portion in any given fiscal year, and (b) all COFINA Pledged Taxes after the COFINA Bonds and COFINA Parity Bonds have been paid or satisfied in full in accordance with their terms; provided, however, that, under all circumstances, the Commonwealth Portion shall exclude in its entirety the COFINA Portion, and the Commonwealth shall have no ownership interest in the COFINA Portion; and, provided, further, that (y) subject to the provisions regarding the Additional Bonds Test and the First Dollars Funding set forth in Sections 16.3 and 16.5 hereof, respectively, the Commonwealth shall have no right to receive any revenues or collections generated by the COFINA Pledged Taxes for a fiscal year unless and until COFINA has received the COFINA Portion and (z) the Commonwealth shall have no right to receive Debt Service Savings in any fiscal year unless and until all debt service payments on the COFINA Bonds and COFINA Parity Bonds required to be made or set aside in such fiscal year, including any overdue debt service payments from all prior fiscal years, are made as required, in accordance with the provisions regarding the Additional Bonds Test set forth in Section 16.3 hereof; and, provided, further, that the COFINA Portion shall not, now or hereafter, be property of the Commonwealth, and, in the event of any subsequent Title III case or similar or other proceedings of the Commonwealth, in any forum, the COFINA Portion shall not be subject to the automatic stay in any such Commonwealth proceeding.

1.72 **Commonwealth Title III Case:** The Title III case under PROMESA pending for the Commonwealth in the Title III Court, captioned as In re Financial Oversight & Management Board for Puerto Rico as representative of the Commonwealth of Puerto Rico, Case No. 17-3283-LTS (D.P.R.).

1.73 **Compounded Amount:** The "Compounded Amount" as defined in the Bond Resolution.

9

1.74 **Confirmation Date:** The date on which the Clerk of the Title III Court enters the Confirmation Order on the docket.

1.75 **Confirmation Hearing:** The hearing conducted by the Title III Court pursuant to section 1128(a) of the Bankruptcy Code and Section 314 of PROMESA to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.76 **Confirmation Order:** The order of the Title III Court confirming the Plan in accordance with Section 314(b) of PROMESA and section 1129 of the Bankruptcy Code, applicable to the Title III Case pursuant to Sections 301 and 314(b)(1) of PROMESA.

1.77 **Consummation Costs:** Collectively, the amounts to be paid, in Cash, on the Effective Date to Consummation Cost Parties in accordance with the terms and conditions of the Plan Support Agreement, the Term Sheet and Article III hereof.

1.78 **Consummation Cost Party:** Each of the PSA Creditors set forth on Exhibit "B" to the Term Sheet.

1.79 **Creditor:** Any Entity holding a Claim against COFINA or COFINA's Assets or, pursuant to section 102(2) of the Bankruptcy Code, against any other property of COFINA, including, without limitation, a Claim against COFINA of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case, solely in such Entity's capacity as such.

1.80 **Creditors' Committee:** The statutory committee of unsecured creditors appointed in, among other cases, the Commonwealth Title III Case, but not the Title III Case.

1.81 **Debt Service Fund:** The account to be established pursuant to the New Bond Indenture in the name of the trustee for the COFINA Bonds, which account shall be for the purpose of receiving, holding and distributing funds for the benefit and payment of debt service with respect to the COFINA Bonds and the COFINA Parity Bonds.

1.82 **Debt Service Savings:** For each fiscal year, the difference between (a) principal and interest due on COFINA Bonds and COFINA Parity Bonds, then outstanding, prior to the issuance of COFINA Parity Bonds and/or Reorganized COFINA's purchase of COFINA Bonds and COFINA Parity Bonds in the open market and (b) principal and interest due on COFINA Bonds and COFINA Parity Bonds that will remain outstanding after the issuance of such COFINA Parity Bonds and/or Reorganized COFINA's purchase of such COFINA Bonds and COFINA Parity Bonds.

1.83 **Definitive Documents:** Collectively, the definitive documents and agreements to which COFINA will be a party as contemplated by the Plan, including (a) the Plan and any documentation or agreements related thereto, (b) the Confirmation Order and pleadings in support of entry thereof, (c) the New Bond Indenture and documents or agreements related thereto, (d) the form of bonds for the COFINA Bonds, (e) the New Banking Services Agreement and (f) each other document that will comprise the Plan Supplement. The form and substance of each document comprising the "Definitive Documents" shall be reasonably acceptable to the Government Parties and to the PSA Creditors and Bonistas.

104749481v5

1.84 **Disbursing Agent:** As applicable, COFINA or such other Entity designated by the Oversight Board and COFINA on or prior to the Effective Date to make or to facilitate distributions in accordance with the provisions of the Plan.

1.85 **Disclosure Statement:** The disclosure statement relating to the Plan and approved by the Title III Court pursuant to section 1125 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA.

1.86 **Disclosure Statement Hearing:** The hearing to be held by the Title III Court to consider the adequacy of the information contained in the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA.

1.87 **Disclosure Statement Order:** The order of the Title III Court approving the Disclosure Statement as containing adequate information in accordance with the provisions of section 1125 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA.

1.88 **Disputed Claim:** A Claim against COFINA or its Assets, to the extent the allowance of such Claim is the subject of a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Confirmation Order, or is otherwise disputed by COFINA in accordance with applicable law, and which objection, request for estimation, or dispute has not been withdrawn, with prejudice, or determined by a Final Order.

1.89 **Distribution Date:** Except as otherwise set forth herein, the date or dates determined by COFINA, on or after the Effective Date, upon which the Disbursing Agent shall make distributions to holders of Allowed Claims entitled to receive distributions under the Plan.

1.90 **Distribution Record Date:** The Ballot Date or such other date as may be established by a separate order of the Title III Court, including the Confirmation Order; provided, however, that the "Distribution Record Date" shall not apply to any publicly held securities that will receive a distribution pursuant to the Plan through The Depository Trust Company.

1.91 **Effective Date:** The first (1st) Business Day on which (i) all of the conditions precedent to confirmation of the Plan specified in Section 24.1 of the Plan shall have been satisfied or waived, as provided in Section 24.2 of the Plan, and (ii) all the conditions precedent to the effectiveness of the Plan specified in Section 25.1 of the Plan shall have been satisfied or waived as provided in Section 25.2 of the Plan.

1.92 **Entity:** A Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the office of the United States Trustee, or any other entity.

1.93 **Exculpated Party:** Collectively, and in each case in its capacity as such: (a) COFINA; (b) AAFAF, (c) the Oversight Board and each of its members; (d) each of the PSA

Creditors and Bonistas, solely in its capacity as a party to the Plan Support Agreement and a Creditor and not as a creditor of any other Entity, including, without limitation, the Commonwealth; and (e) with respect to each of the foregoing clauses (a) through (d), such Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' current and former Related Persons solely in the capacities referred to above.

      1.94   **Executory Contract:**  A contract to which COFINA is a party that is subject to assumption, assumption and assignment, or rejection in accordance with section 365 of the Bankruptcy Code, except as provided in Section 311 of PROMESA.

      1.95   **Existing Securities:**  Collectively, the existing "Senior" and "First Subordinate" bonds issued by COFINA prior to the Petition Date in accordance with the Bond Resolution.

      1.96   **Final Order:**  An order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, (a) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order and (b) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the Local Bankruptcy Rules.

      1.97   **First Dollars Funding:**  The allocation of "first dollars" collected from COFINA Pledged Taxes, including, without limitation, the criteria set forth in Section 16.5 hereof required to be satisfied in order to permit, among other things, quarterly deposits of "first dollars" collected from COFINA Pledged Taxes.

      1.98   **Fiscal Plan:**  A "Fiscal Plan" as defined by Section 5(10) of PROMESA.

      1.99   **Fixed Amount:**  For FY ending June 30, 2019, Seven Hundred Eighty-Three Million One Hundred Ninety-Seven Thousand Two Hundred Fifty-One Dollars ($783,197,251.00) and, for each subsequent FY, the Fixed Amount for the prior FY plus four percent (4%) thereon, up to an aggregate FY amount of One Billion Eight Hundred Fifty Million Dollars ($1,850,000,000.00).

      1.100   **FY:**  A fiscal year of the Commonwealth.

      1.101   **FY2019 BNYM Deposits:**  Collectively, the funds deposited on or after July 1, 2018 (inclusive of the COFINA FY2019 BNYM Deposits) to the debt service, reserve and such other accounts and any earnings thereon held by BNYM, as the COFINA bond trustee.

104749481v5

1.102    **General Unsecured Claim:**  Any Claim other than an Administrative Expense Claim, a Senior COFINA Bond Claim, a Senior COFINA Bond Claim (Ambac), a Senior COFINA Bond Claim (National), a Senior COFINA Bond Claim (Taxable Election), a Junior COFINA Bond Claim, a Junior COFINA Bond Claim (Assured), a Junior COFINA Bond Claim (Taxable Election), or a GS Derivative Claim.

1.103    **Government Parties:**  Collectively, the Oversight Board, COFINA and AAFAF.

1.104    **Government Released Claims:**  Collectively, any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, whether asserted or unasserted, which any Party, or anyone claiming through them, on their behalf or for their benefit have or may have or claim to have, now or in the future, against any Government Releasee arising from, related to, or in connection with COFINA, the Senior COFINA Bonds, the Senior COFINA Bond Claims, the Junior COFINA Bonds, the Junior COFINA Bond Claims and the Actions, and arising prior to the COFINA Effective Date; provided, however, that "Government Released Claims" shall not include any and all rights, privileges, claims, demands, liabilities, or causes of action of any and every kind, character or nature whatsoever (a) against (i) COFINA (or its successor, including Reorganized COFINA) arising from or relating to COFINA's obligations pursuant to the Plan or the securities to be issued pursuant to the Plan or (ii) a Government Party unrelated to COFINA or (b) arising from or related to any act or omission that constitutes intentional fraud or willful misconduct.

1.105    **Government Releasees:**  Collectively, the Government Parties and the Commonwealth, together with their respective current or former board members, directors, principals, agents, officers, employees, advisors and professionals, including, without limitation, any and all advisors and professionals retained by the Government Parties in connection with the Title III Case.

1.106    **GS Derivative Claim:**  The Claim arising from or relating to that certain ISDA Master Agreement, dated as of July 31, 2007, between Goldman Sachs Bank USA (as successor to Goldman Sachs Capital Markets, L.P.) and COFINA, as amended by that certain Amendment, dated September 24, 2014.

1.107    **Insurance Policies:**  Collectively, the Ambac Insurance Policy, the Assured Insurance Policies and the National Insurance Policies.

1.108    **Interpleader Action:**  The litigation styled The Bank of New York Mellon v. Puerto Rico Sales Tax Financing Corporation, et al., Adv. Proc. No. 17-133-LTS, currently pending in the Title III Court.

1.109    **IRC:**  The United States Internal Revenue Code of 1986, as amended from time to time.

1.110    **IRS:**  The Internal Revenue Service, an agency of the United States Department of Treasury.

104749481v5

1.111 **Junior COFINA Bond Claim:** A Bond Claim, other than a Junior COFINA Bond Claim (Assured) or a Junior COFINA Bond Claim (Taxable Election), on account of a "First Subordinate" Existing Security.

1.112 **Junior COFINA Bond Claim (Assured**): A Bond Claim on account of a "First Subordinate" Existing Security, the scheduled repayment of which has been insured by Assured in accordance with the terms of the Assured Insurance Policies, including pursuant to a secondary market insurance policy.

1.113 **Junior COFINA Bond Claim (Taxable Election):** A Bond Claim, other than a Junior COFINA Bond Claim (Assured), on account of a "First Subordinate" Existing Security, the holder of which has affirmatively elected to receive a Taxable Bond Distribution and the holder of which (i) is a Puerto Rico Investor; provided, however, that, if Taxable Bond Distributions are elected by Puerto Rico Investors holding Bond Claims in an aggregate amount in excess of the Maximum Taxable Bond Election Amount, such Bond Claim shall be a Junior COFINA Bond Claim (Taxable Election) up to such Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a Junior COFINA Bond Claim, or (ii) if there is a Remainder Taxable Bond Election Amount, is a Puerto Rico Institution; provided, however, that, if Taxable Bond Distributions are elected by Puerto Rico Institutions holding Bond Claims in an aggregate amount in excess of the Remainder Taxable Bond Election Amount, such Bond Claim shall be a Junior COFINA Bond Claim (Taxable Election) up to such Bond Claim's ratable share of the Remainder Taxable Bond Election Amount and the remainder thereof shall be a Junior COFINA Bond Claim.

1.114 **Junior COFINA Bond Distribution:** A distribution of COFINA Bonds, Section 103 Cash, if applicable, and Rounding Amount Cash, if necessary, allocable to holders of Junior COFINA Bond Claims, Junior COFINA Bond Claims (Assured) and Junior COFINA Bond Claims (Taxable Election) equal to fifty-six and forty-one one hundredths percent (56.41%) of such holders' aggregate Junior COFINA Bond Claims, Junior COFINA Bond Claims (Assured) and Junior COFINA Bond Claims (Taxable Election), plus any incremental value distributable as a result of an increase in COFINA Cash Available for Distribution, but solely to the extent of any such increase provided as a result of an undersubscription of the Taxable Election Cash in accordance with the terms and provisions of Section 2.1(a) hereof; provided, however, that, in the event applicable United States law does not permit all COFINA Bonds to be issued on a federally tax-exempt basis, COFINA shall issue Taxable COFINA Bonds as a sub-series of COFINA Bonds, which bonds shall be distributed, first, in accordance with the provisions of Sections 8.1 and 11.1 hereof and, second, with respect to any remaining Taxable COFINA Bonds, ratably to all other recipients of COFINA Bonds in accordance with the Plan, including, without limitation, to applicable holders of Allowed Senior COFINA Bond Claims, Allowed Senior COFINA Bond Claims (Ambac), Allowed Senior COFINA Bond Claims (National), Allowed Junior COFINA Bond Claims and Allowed Junior COFINA Bond Claims (Assured).

1.115 **Junior Taxable Bond Distribution:** The distribution to be made to each holder of an Allowed Junior COFINA Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 11.1 hereof.

1.116 **Lex Claims Action:** The litigation styled Lex Claims, LLC v. The Commonwealth of Puerto Rico, No. 16-CV-02374-FAB(D.P.R. 2016), currently pending in the United States District Court for the District of Puerto Rico, solely with respect to Claims or

Causes of Action, or portions of Claims or Causes of Action, that plaintiffs have asserted, or were required, by applicable law, to assert, which are premised on challenges to COFINA's constitutionality, COFINA's entitlement to proceeds of the Sales Taxes, if any, transferred by the Commonwealth to COFINA, and such other Claims or Causes of Action which may be interpreted reasonably to challenge the transactions contemplated by the Term Sheet, the Plan and the Settlement Motion.

1.117 **Lien:** Any charge against or interest in property to secure payment of a debt or performance on an obligation.

1.118 **List of Creditors:** The Creditor List (together with all summaries, notes, and schedules) attached as Exhibit A to the *Notice of Filing of Creditor List for Puerto Rico Sales Tax Financing Corporation ("COFINA")* [ECF No. 215] filed in the Title III Case pursuant to sections 924 and 925 of the Bankruptcy Code, as such list, summaries, notes, or schedules may be amended, restated, supplemented or otherwise modified by COFINA.

1.119 **Local Bankruptcy Rules:** The Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico and, to the extent applicable to the Title III Case, the Local District Court Rules for the District of Puerto Rico, each as amended from time to time.

1.120 **Maximum Taxable Bond Election Amount:** One Billion Dollars ($1,000,000,000.00), provided, however, that, if the amount of Taxable COFINA Bonds exceeds the aggregate amount of COFINA Bonds distributable in respect of Allowed Senior COFINA Bond Claims (Taxable Election) and Allowed Junior COFINA Bond Claims (Taxable Election) each as calculated, for purposes of this proviso, assuming a Maximum Taxable Bond Election Amount of One Billion Dollars ($1,000,000,000.00), the Maximum Taxable Bond Election Amount shall increase by the amount necessary to provide for the distribution of all Taxable COFINA Bonds pursuant to Taxable Bond Distributions; and, provided, further, that in no event shall the Maximum Taxable Bond Election Amount exceed Three Billion Dollars ($3,000,000,000.00).

1.121 **Motion to Enforce:** The motion which may be filed by the Creditors' Committee and/or the Commonwealth Agent to enforce the Commonwealth-COFINA Dispute Order by challenging the Oversight Board's authority under the Commonwealth-COFINA Dispute Order to seek approval of the Settlement Agreement.

1.122 **National:** National Public Finance Guarantee Corporation.

1.123 **National Certificate Holder:** A holder of a National Certificate.

1.124 **National Certificates:** The certificate(s) or receipt(s) to be issued by the National Trust to beneficial holders of COFINA Bonds which are deposited into the National Trust.

1.125 **National Election:** The election to be exercised by National, in writing, prior to the commencement of the Disclosure Statement Hearing, pursuant to which National may elect, in its sole and absolute discretion, to pay off all National Insured Bonds in accordance with the

15

terms and provisions set forth in Section 7.5 hereof and satisfy and discharge all of its obligations pursuant to the National Insurance Policies.

      1.126   **National Insurance Policies:** The existing insurance policies initially issued by (a) Financial Guaranty Insurance Company and subsequently novated to National or (b) MBIA Insurance Corporation and relating to the National Insured Bonds, together with any and all agreements and other documents related thereto.

      1.127   **National Insured Bonds:** The "Senior" Existing Securities issued by COFINA and insured by National, as successor to Financial Guaranty Insurance Company or MBIA Insurance Corporation.

      1.128   **National Trust:** The trust(s) which may be formed, on or prior to the Effective Date, by COFINA, the sole cost and expense of which shall be borne by and satisfied by National and/or from the National Trust Assets, and for the sole benefit of the holders of Senior COFINA Bond Claims (National) that elect not to commute their National Insurance Policies and satisfy and discharge all of National's obligations pursuant to the National Insurance Policies.

      1.129   **National Trust Assets:** Collectively, (a) the National Insured Bonds of a holder of Senior COFINA Bond Claims (National) electing treatment pursuant to Section 7.1(b) hereof, (b) the Senior COFINA Bond Distribution allocable to such electing holder of a Senior COFINA Bond Claim (National), (c) the National Insurance Policies and (d) the Consummation Costs allocable to National in accordance with the terms and provisions of Section 3.3 hereof.

      1.130   **New Banking Services Agreement:** The agreement to be entered into by and among, among other parties, Reorganized COFINA and the trustee for the COFINA Bonds providing for, among other services, procedures for the collection and deposit of the COFINA Pledged Taxes.

      1.131   **New Bond Indenture:** The trust indenture to be executed as of the Effective Date pursuant to which Reorganized COFINA shall issue the COFINA Bonds, as it may be amended, supplemented or modified from time to time, which such agreement may be contained within the New Bond Indenture or may be in a separate agreement by and between Reorganized COFINA and the trustee for the COFINA Bonds.

      1.132   **New Bond Legislation:** The legislation to be enacted on or prior to the Effective Date authorizing the transactions contemplated by, and consistent with, the Plan, providing for the ownership and collateralization of the COFINA Pledged Taxes and the granting of the New Collateral and incorporating such other terms as set forth in Section 25.1(c)(viii) hereof.

      1.133   **New Collateral:** The collateral which, pursuant to enacted legislation, may be substituted by the Commonwealth to replace the COFINA Pledged Taxes, or already substituted collateral, as security for the repayment of the COFINA Bonds, subject to satisfaction of the requirements set forth in Section 16.7 hereof.

      1.134   **Oversight Board:** The Financial Oversight and Management Board for Puerto Rico established pursuant to Section 101 of PROMESA, as COFINA's representative in the Title III Case pursuant to section 315(b) of PROMESA.

104749481v5

1.135 **Person:** An individual, general partnership, limited partnership, corporation, limited liability company, limited liability partnership, cooperative, trust, unincorporated organization, association, joint stock company, joint venture, estate, government, or agency or political subdivision thereof, or any other form of legal entity.

1.136 **Petition Date:** May 5, 2017, the date on which the Oversight Board filed a voluntary petition for relief for COFINA commencing the Title III Case.

1.137 **Plan:** This Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation, including, without limitation, the exhibits and schedules hereto, as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of PROMESA, the Bankruptcy Code and the terms hereof.

1.138 **Plan Supplement:** A separate volume, to be filed with the Clerk of the Title III Court, including, among other documents, forms of the New Bond Indenture, the COFINA Bonds, the Reorganized COFINA By-Laws, the New Banking Services Agreement, and, if not previously enacted, the draft of the New Bond Legislation, which, in each case, shall be in form and substance reasonably satisfactory to the PSA Creditors. The Plan Supplement (containing draft or final versions of the foregoing documents shall be filed with the Clerk of the Title III Court as soon as practicable (but in no event later than seven (7) days) prior to the Ballot Date, or on such other date as the Title III Court establishes. The Plan Supplement shall be deemed incorporated into and part of the Plan as if set forth herein in full.

1.139 **Plan Support Agreement:** That certain Amended and Restated Plan Support Agreement, dated as of September 20, 2018, by and among the Oversight Board, AAFAF, COFINA, the PSA Creditors and Bonistas del Patio, Inc.

1.140 **Pre-FY2019 BNYM Deposits:** Collectively, the funds on deposit prior to July 1, 2018 in the debt service, reserve and such other accounts, and any earnings thereon held by BNYM as the COFINA bond trustee, for the benefit of holders of Existing Securities.

1.141 **Professional:** An Entity (a) to be compensated for services rendered prior to or on the Effective Date pursuant to Sections 316 and 317 of PROMESA, and (i) employed in the Title III Case by COFINA (in COFINA's and AAFAF's sole discretion); or (ii) employed in the Title III Case by the Oversight Board (in the Oversight Board's sole discretion); or (b) for which compensation and reimbursement has been Allowed by the Title III Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.142 **Professional Claim:** A Claim by a Professional seeking an award by the Title III Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 316 and 317 of PROMESA.

1.143 **PROMESA:** The Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016), 48 U.S.C. §2101, et. seq.

1.144 **Pro Rata Share:** With respect to Allowed Claims (i) within the same Class, the proportion that an Allowed Claim bears to the sum of all Allowed Claims within such Class, and (ii) among multiple Classes, the proportion that Allowed Claims in any such Class bears to the sum of the Allowed Claims in all such Classes.

104749481v5

1.145 **PSA Creditors:** Collectively, the parties to the Plan Support Agreement, other than the Government Parties and Bonistas del Patio, Inc.

1.146 **PSTBA:** The Pledged Sales Tax Base Amount, i.e., the annual dollar amount determined for each fiscal year of the Commonwealth in accordance with Section 3 of Act No. 91-2006 of the Commonwealth, as amended.

1.147 **Puerto Rico Institution:** A holder of a Bond Claim, other than a Puerto Rico Investor, that is domiciled in Puerto Rico (as determined by the Oversight Board, in its sole and absolute discretion); provided, however, that the criteria upon which such holder is determined to be a Puerto Rico Institution shall be developed jointly by the Oversight Board and AAFAF in their respective reasonable discretion.

1.148 **Puerto Rico Investor:** A holder of a Bond Claim that is, or that is wholly owned by or the sole beneficial owner of which is, a natural person(s) and resident(s) of the Commonwealth of Puerto Rico for purposes of payment of Puerto Rico personal income taxes (as determined by the Oversight Board, in its sole and absolute discretion).

1.149 **Related Actions:** Collectively, the Adversary Proceeding and the Interpleader Action.

1.150 **Related Persons:** With respect to any Entity (including for the avoidance of doubt, the Commonwealth and the Government Parties), its predecessors, successors and assigns (whether by operation of law or otherwise) and their respective current and former Affiliates and such Entity's and its current and former Affiliate's current and former employees, managers, elected or appointed officials, directors, officers, board members, principals, members, equity holders (whether such interests are held directly or indirectly), partners, financial advisors, attorneys, accountants, consultants, agents and professionals (including, without limitation, any and all Professionals retained by COFINA and AAFAF), or other representatives, nominees or investment managers, each acting in such capacity, and any Entity claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals), each in its capacity as such.

1.151 **Released Claims:** Collectively, (a) with respect to those Entities party to the Plan Support Agreement, Claims and Causes of Action released hereunder and in accordance with the Plan Support Agreement, (b) Claims and Causes of Action that arise in, are related to or have been or could have been asserted against COFINA or its Assets in the Title III Case, (c) Claims and Causes of Action that have been or could have been asserted by COFINA (with respect to releases given by COFINA) and by Creditors or the Government Parties relating to Claims they have against the Released Parties (with respect to releases given by Releasing Parties), and (d) Claims that otherwise arise from or relate to the Title III Case, the Actions, the Adversary Proceeding, the Interpleader Action, the Plan, the Plan Support Agreement and the compromises set forth in the Commonwealth-COFINA Dispute Settlement, including, without limitation, in connection with or related to any of the Government Parties, and their respective subsidiaries, assets, liabilities, operations, or property; provided, however, that, "Released Claims" is not intended to include, nor shall it have the effect of including, Claims or Causes of Action unrelated to COFINA or Claims or Causes of Action for gross negligence, willful misconduct or intentional fraud asserted, or that could have been asserted, whether sounding in contract or tort, against BNYM by Ambac or Whitebox in the Ambac Action and the Whitebox Actions,

18

respectively, or any rights, claims, causes of action or defenses that BNYM may have against Ambac or Whitebox, as the case may be, in connection with such litigations; and, <u>provided, further</u>, that "Released Claims" is not intended to release, nor shall it have the effect of releasing, any party from the performance of its obligations in accordance with the Confirmation Order or the Plan, including, without limitation, performance of obligations arising from or related to the COFINA Bonds and the COFINA Parity Bonds.

1.152 **Released Parties:**  Collectively, solely to the extent provided in the Plan, (a) the Government Parties, (b) the Commonwealth, (c) the COFINA Agent, (d) the PSA Creditors, (e) BNYM, (f) upon satisfaction of the conditions set forth in decretal paragraph 3 of the Abeyance Stipulation, the Creditors' Committee, its members, and the Commonwealth Agent, and (g) with respect to the foregoing clauses (a) through (f), each of their respective Related Persons.

1.153 **Releasing Parties:**  Collectively, solely to the extent provided in the Plan, (a) all holders of Claims against COFINA or its Assets; (b) such holders' current and former Affiliates and (c) with respect to the foregoing clauses (a) and (b), each such Entity's current and former Related Persons; <u>provided, however</u>, that each Entity described in the foregoing clauses (a) through (c) is providing releases pursuant to the Plan solely in such Entity's capacity as a Creditor and not as a creditor of the Commonwealth or any Entity or Affiliate of the Commonwealth.

1.154 **Reorganized COFINA**:  COFINA, from and after the Effective Date.

1.155 **Reorganized COFINA By-Laws:**  The by-laws adopted by Reorganized COFINA's board of directors, which by-laws shall be in substantially the form included in the Plan Supplement and shall be in form and substance reasonably satisfactory to the PSA Creditors.

1.156 **Remainder Taxable Bond Election Amount:**  An amount equal to the Maximum Taxable Bond Election Amount <u>minus</u> the aggregate amount of Bond Claims held by Puerto Rico Investors and for which such holders have affirmatively elected a Taxable Bond Distribution.

1.157 **Rounding Amount Cash:**  The amount of Cash necessary, up to a maximum aggregate amount of Twenty-Five Million Dollars ($25,000,000.00), for distribution to holders of Senior COFINA Bond Claims, Senior COFINA Bond Claims (Taxable Election), Senior COFINA Bond Claims (Ambac) and Senior COFINA Bond Claims (National) and Junior COFINA Bond Claims, Junior COFINA Bond Claims (Taxable Election) and Junior COFINA Bond Claims (Assured) in the form of rounding amounts to ensure that all holders of Senior COFINA Bond Claims, Senior COFINA Bond Claims (Taxable Election), Senior COFINA Bond Claims (Ambac) and Senior COFINA Bond Claims (National) and Junior COFINA Bond Claims, Junior COFINA Bond Claims (Taxable Election) and Junior COFINA Bond Claims (Assured) receive their Pro Rata Share of CIBs, in the minimum bond par denomination of One Thousand Dollars ($1,000.00) per COFINA Bond.

1.158 **Sale Notice:**  The notice which may be delivered by the trustee of the National Custodial Trust to National Certificate Holders in accordance with Section 17.2(a) hereof and in connection with the proposed sale of all or a portion of the COFINA Bonds held in the National Custodial Trust.

19

1.159  **Sale Proceeds:**  The Cash proceeds of a sale by the trustee of the National Custodial Trust of all or a portion of the COFINA Bonds held by the National Custodial Trust.

1.160  **Sales Tax:**  The sales and use taxes imposed by the government of Puerto Rico pursuant to Sections 4020.01 and 4020.02 of Subchapter D of Act No. 1-2011, as amended, and known as the Internal Revenue Code for a New Puerto Rico.

1.161  **Section 103 Cash:**  The amount of cash deemed necessary by the Oversight Board, after consultation with Section 103 tax counsel and the PSA Parties, which amount of Cash (a) shall be no less than, and in payment of, the interest accrued and unpaid on the Existing Securities as of, and including May 4, 2017 and (b) shall not exceed the amount of Pre-FY2019 BNYM Deposits minus the amount of Rounding Amount Cash and Consummation Costs, to be applied to reduce the amount and number of Taxable COFINA Bonds solely to the extent that the COFINA Bonds cannot all be issued as tax-exempt bonds under applicable federal law.

1.162  **Section 510(b) Subordinated Claim:**  Any Claim, to the extent determined pursuant to a Final Order, against COFINA or its Assets arising from or relating to (a) rescission of a purchase or sale of an Existing Security, (b) purchase, sale or retention of such a security, or (c) reimbursement, indemnification or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

1.163  **Securities Act:**  The Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state, or local law.

1.164  **Senior COFINA Bond Claim:**  A Bond Claim, other than a Senior COFINA Bond Claim (Ambac), a Senior COFINA Bond Claim (National) or a Senior COFINA Bond Claim (Taxable Election), on account of a "Senior" Existing Security.

1.165  **Senior COFINA Bond Claim (Ambac):**  A Bond Claim on account of a "Senior" Existing Security, the repayment of which has been insured by Ambac.

1.166  **Senior COFINA Bond Claim (National):**  A Bond Claim on account of a "Senior" Existing Security, the repayment of which has been insured by National.

1.167  **Senior COFINA Bond Claim (Taxable Election):**  A Bond Claim, other than a Senior COFINA Bond Claim (Ambac) or a Senior COFINA Bond Claim (National), on account of a "Senior" Existing Security, the holder of which has affirmatively elected to receive a Taxable Bond Distribution and the holder of which (i) is a Puerto Rico Investor; provided, however, that, if Taxable Bond Distributions are elected by Puerto Rico Investors holding Bond Claims in an aggregate amount in excess of the Maximum Taxable Bond Election Amount, such Bond Claim shall be a Senior COFINA Bond Claim (Taxable Election) up to such Bond Claim's ratable share of the Maximum Taxable Bond Election Amount and the remainder thereof shall be a Senior COFINA Bond Claim, or (ii) if there is a Remainder Taxable Bond Election Amount, is a Puerto Rico Institution; provided, however, that, if Taxable Bond Distributions are elected by Puerto Rico Institutions holding Bond Claims in an aggregate amount in excess of the Remainder Taxable Bond Election Amount, such Bond Claim shall be a Senior COFINA Bond Claim (Taxable Election) up to such Bond Claim's ratable share of the Remainder Taxable Bond Election Amount and the remainder thereof shall be a Senior COFINA Bond Claim.

1.168 **Senior COFINA Bond Distribution:** A distribution of COFINA Bonds and Cash, in the aggregate, allocable to the holders of Senior COFINA Bond Claims, Senior COFINA Bond Claims (Ambac), Senior COFINA Bond Claims (National) and Senior COFINA Bond Claims (Taxable Election) equal to ninety-three and one one-hundredths percent (93.01%) of such holders' aggregate Senior COFINA Bond Claims, Senior COFINA Bond Claims (Ambac), Senior COFINA Bond Claims (National) and Senior COFINA Bond Claims (Taxable Election), plus any incremental value distributable as a result of an increase in COFINA Cash Available for Distribution; provided, however, that in the event that applicable United States law does not permit all COFINA Bonds to be issued on a federally tax-exempt basis, COFINA shall issue Taxable COFINA Bonds as a sub-series of COFINA Bonds, which bonds shall be distributed, first, in accordance with the provisions of Sections 8.1 and 11.1 hereof, and, second, with respect to any remaining Taxable COFINA Bonds, ratably to all other recipients of COFINA Bonds in accordance with the Plan, including, without limitation, to applicable holders of Allowed Senior COFINA Bond Claims, Allowed Senior COFINA Bond Claims (Ambac), Allowed Senior COFINA Bond Claims (National), Allowed Junior COFINA Bond Claims and Allowed Junior COFINA Bond Claims (Assured).

1.169 **Senior Taxable Bond Distribution:** The distribution to be made to each holder of an Allowed Senior COFINA Bond Claim (Taxable Election) in accordance with the terms and provisions of Section 8.1 hereof.

1.170 **Settlement Agreement:** That certain Settlement Agreement, dated as of October 19, 2018, between the Oversight Board, on behalf of the Commonwealth, and the COFINA Agent, on behalf of COFINA.

1.171 **Settlement Motion:** The motion filed in the Commonwealth Title III Case pursuant to Bankruptcy Rule 9019 seeking entry of an order approving the compromise and settlement of the Commonwealth-COFINA Dispute in accordance with the terms and provisions of the Settlement Agreement and authorizing and directing the consummation of the transactions contemplated therein.

1.172 **Settlement Order:** The order by the Title III Court in the Commonwealth Title III Case approving the Settlement Motion and the relief requested therein, including, without limitation, authorizing the Commonwealth's entry into the Settlement Agreement and directing the consummation of the transactions contemplated therein.

1.173 **Solicitation Agent:** Prime Clerk LLC, the notice, claims, and solicitation agent retained by COFINA in the Title III Case by District Court order.

1.174 **Subordinated Lien Bonds:** Collectively, the additional bonds that may be issued by Reorganized COFINA in accordance with the terms and provisions of Section 16.3 hereof, the repayment of which shall be secured by subordinated second or more junior Lien on the COFINA Pledged Taxes and which, in all respects, shall be subordinated in respect of priority, payment funding, and remedies to the COFINA Bonds and the COFINA Parity Bonds.

1.175 **Taxable Bond Distribution:** A Senior Taxable Bond Distribution or a Junior Taxable Bond Distribution, as applicable.

104749481v5

1.176 **Taxable COFINA Bonds:** Collectively, the portion of the COFINA Bonds in the aggregate amount deemed necessary by the Oversight Board, after consultation with Section 103 tax counsel and the PSA Creditors, to be issued as tax exempt under Puerto Rico law, but taxable in accordance with Section 103 of the IRC, which COFINA Bonds shall be issued as CIBs with an interest rate of four and fifty-five one hundredths percent (4.55%) and having a maturity date of July 1, 2040.

1.177 **Taxable Election Cash:** The amount of Cash equal to two percent (2.0%) (net of any administrative costs of the election process related to the applicable Bond Claims) of the aggregate amount of all Senior COFINA Bond Claims (Taxable Election) and Junior COFINA Bond Claims (Taxable Election), which amount of Cash shall not exceed Sixty Million Dollars ($60,000,000.00).

1.178 **Tax Election Remainder Amount:** The difference between Sixty Million Dollars ($60,000,000.00) and the Taxable Election Cash distributed pursuant to the Plan.

1.179 **Tax-Exempt COFINA Bonds:** Collectively, the portion of the COFINA Bonds that are issued on the Effective Date as tax-exempt in accordance with Section 103 of the IRC.

1.180 **Term Sheet:** The term sheet annexed as Exhibit "C" to the Plan Support Agreement and which sets forth, among other things, the terms and conditions of the COFINA Bonds.

1.181 **Title III:** Title III of PROMESA.

1.182 **Title III Case:** The Title III case under PROMESA pending for COFINA in the Title III Court, captioned as In re Financial Oversight & Management Board for Puerto Rico as representative of Puerto Rico Sales Tax Financing Corporation, Case No. 17-3284-LTS (D.P.R.).

1.183 **Title III Court:** The United States District Court of the District of Puerto Rico or such other court having jurisdiction over the Title III Case.

1.184 **Trustee Claims:** Collectively, the Claims, if any, of the trustee arising under Section 804 of the Bond Resolution, whether prior or subsequent to the Effective Date; provided, however, that, under no circumstances shall "Trustee Claims" include any fees and expenses incurred by BNYM from and after the Effective Date arising from or relating to the Ambac Action or the Whitebox Actions.

1.185 **Trustee Rights:** The lien or other priority rights, if any, of the trustee arising under Sections 804 and 1103 of the Bond Resolution and applicable law, subject to the rights of any party in interest to contest the entitlement thereof.

1.186 **Trusts:** Collectively, the Ambac Trust and the National Trust.

1.187 **Unclaimed Distribution:** Any distribution to a Creditor that has not (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check, (b) given notice to COFINA of an intent to accept a particular distribution, (c) responded to COFINA's requests for information necessary to facilitate a particular distribution or (d) taken any other action necessary to facilitate such distribution.

1.188 **Unexpired Lease:** A lease of nonresidential real property to which COFINA is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code, except as provided in Section 311 of PROMESA.

1.189 **Whitebox:** Whitebox Advisors, LLC and funds managed or affiliated with Whitebox Advisors, LLC, including, without limitation, Whitebox Multi-Strategy Partners, L.P.

1.190 **Whitebox Actions:** Collectively, the litigation styled (a) Whitebox Multi-Strategy Partners, L.P., et al. v. The Bank of New York Mellon, Adv. Pro. No. 17-AP-143-LTS, currently pending in the Title III Court, and (b) Whitebox Multi-Strategy Partners, L.P., et al. v. The Bank of New York Mellon, Case No. 17-CV-3750-LTS, currently pending in the Title III Court.

1.191 **Other Definitions:** Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan that is defined in PROMESA or the Bankruptcy Code shall have the meaning assigned to that term in the PROMESA or Bankruptcy Code. Unless otherwise specified, (a) all section, schedule, or exhibit references in the Plan are to the respective section in, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time and (b) all references to dollars are to the lawful currency of the United States of America. The words, "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.192 **Rules of Interpretation:** For purposes of the Plan, (a) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) unless otherwise specified, any reference herein to a definition, an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented, including, without limitation, updated to conform to the Definitive Documents; (c) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (d) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (e) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (f) unless otherwise specified, references to docket numbers of documents filed in the Title III Case are references to the docket numbers under the Title III Court's CM/ECF system; (g) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (h) any immaterial effectuating provisions may be interpreted by the Oversight Board in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Title III Court or any other Entity.

## ARTICLE II

## COMPROMISE AND SETTLEMENT OF DISPUTES

2.1 **Commonwealth-COFINA Dispute**: Pursuant to sections 105(a), 1123(a)(5) and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates and is expressly conditioned upon the approval and effectiveness of the compromise and settlement between the Oversight Board, on behalf of the Commonwealth, and the COFINA Agent, on behalf of COFINA, as set forth in the Settlement Agreement. The Settlement Agreement is incorporated into this Plan by reference as if fully set forth herein and, subject to the occurrence of the Effective Date, represents a full, final and complete compromise, settlement and release of, among other matters, the claims and issues arising from and relating to the Commonwealth-COFINA Dispute including, without limitation, the claims asserted in the Adversary Proceeding. The Settlement Agreement will be considered contemporaneously for approval by the Title III Court in the Commonwealth Title III Case through submission of the Settlement Motion pursuant to Bankruptcy Rule 9019 and, in the Title III Case, through submission of the Plan, which incorporates by reference the Settlement Agreement. Without limiting the foregoing, subsections (a) through (e) below describe certain of the principal provisions of the Settlement Agreement, but, except with respect to the releases provided in Section 30.6 hereof, nothing in this Plan shall be construed to, or is intended to, limit or diminish the benefits to be received by, or rights of, the parties to the Settlement Agreement or the third party beneficiaries thereof. In the event of any inconsistency between the Settlement Order, the Plan or the Confirmation Order, the documents shall control in the following order of priority: (i) the Settlement Order, (ii) the Confirmation Order, and (iii) the Plan.

(a) **Compromise and Settlement/Allocation of Funds**: The Commonwealth–COFINA Dispute shall be compromised and settled pursuant to the Settlement Motion and the Settlement Order, on the one hand, and pursuant to the Plan and the Confirmation Order, on the other hand, with (i) COFINA being granted ownership of the COFINA Portion, and (ii) the Commonwealth being granted ownership of the Commonwealth Portion; provided, however, that, except as expressly set forth in Sections 15.1 and 15.2 hereof, (A) one hundred percent (100%) of the Pre-FY2019 BNYM Deposits held by BNYM in accordance with the Adversary Proceeding and such other orders entered in connection therewith will, on the Effective Date, be the exclusive property of COFINA and be distributed to COFINA for purposes of distribution in accordance with the provisions of the Plan; provided, however, that, (i) of Seventy-Eight Million Three Hundred Fifty-Five Thousand Eight Hundred and Thirty-Seven Dollars and Sixty-Three Cents ($78,355,837.63) of the Pre-FY2019 BNYM Deposits, (x) Thirty-Three Million Three Hundred Fifty-Five Thousand Eight Hundred Thirty-Seven Dollars and Sixty-Three Cents ($33,355,837.63) shall be distributed to the Commonwealth, (y) Five Million Dollars ($5,000,000.00) shall be allocated to the COFINA Operating Expense Account to fund an expense fund for COFINA, and (z) Forty Million Dollars ($40,000,000.00) shall be allocated to the Taxable Election Cash distributable under the Plan; provided, however, that, if the Taxable Election Cash actually distributed under the Plan is less than Sixty Million Dollars ($60,000,000.00), then an amount equal to the Tax Election Remainder Amount, up to Forty Million Dollars ($40,000,000.00) allocated as Taxable Election Cash, shall be distributed (I) *first*, to further fund the COFINA Operating Expense Account up to an additional Ten Million Dollars ($10,000,000.00), and (II) *second*, to the extent of any further remainder, to be distributed evenly to COFINA, on the one hand, to increase the COFINA Cash

24

Available for Distribution and increase recoveries to all holders of Bond Claims, and the Commonwealth, on the other hand, (B) one hundred percent (100%) of the COFINA FY2019 BNYM Deposits held by BNYM in accordance with the Adversary Proceeding and such other orders entered in connection therewith, will, on the Effective Date, be the exclusive property of COFINA and will be distributed to COFINA for purposes of distribution to holders of COFINA Bonds in accordance with the Plan, and (C) any FY2019 BNYM Deposits net of the COFINA FY2019 BNYM Deposits, shall be distributed in its entirety to the Commonwealth.

(b) **Compromise Date:** Unless (i) approval of the Settlement Motion is denied by the Title III Court or (ii) the Effective Date does not occur, the effective date of the compromise and settlement shall be retroactive to July 1, 2018 and, in addition to receipt of the Pre-FY2019 BNYM Deposits, net of amounts allocated pursuant to the provisions of Section 2.1(a) hereof, and the COFINA FY2019 BNYM Deposits on the Effective Date, COFINA will own, and will be entitled to receive, the COFINA Portion commencing as of FY2019.

(c) **Litigation Dismissal:** On the Effective Date, pursuant to the Settlement Order and the Confirmation Order, which orders shall amend and supersede such orders of the Title III Court entered in the Title III Case, the Commonwealth Title III Case, and the Related Actions to the extent that such orders are inconsistent therewith, (1) subject to the provisions of Section 19.5 hereof, BNYM shall distribute monies in accordance with the terms and provisions of Section 2.1(a) hereof, (2) the Adversary Proceeding shall be dismissed, with prejudice, and all other Claims and Causes of Action asserted, or that could have been asserted, therein by the Commonwealth Agent, the COFINA Agent and the Permitted Intervenors, as defined in the Adversary Proceeding, shall be deemed dismissed, with prejudice, and the Oversight Board, the Commonwealth Agent and the COFINA Agent and their respective professionals shall be deemed to have no further obligations in connection with the Adversary Proceeding and the COFINA Agent and, upon satisfaction of the conditions set forth in decretal paragraph 3 of the Abeyance Stipulation, the Commonwealth Agent, the Creditors' Committee and its members, together with their respective professionals, shall be deemed to have been released from any and all liabilities associated therewith or that otherwise arise from or relate to the Title III Case, the Actions, the Adversary Proceeding, the Interpleader Action, the Plan, the Plan Support Agreement and the compromises set forth in the Commonwealth-COFINA Dispute Settlement, including, without limitation, in connection with or related to any of the Government Parties, and their respective subsidiaries, assets, liabilities, operations or property, (3) except with respect to (i) any Claims and causes of action asserted or that could have been asserted by BNYM against Ambac and Whitebox in the Interpleader Action and (ii) any non-released and non-dismissed counterclaims that may be asserted by either Ambac or Whitebox against BNYM therein, all other Claims and causes of action asserted, or that could have been asserted, in the Interpleader Action shall be deemed dismissed, with prejudice, and the funds deposited in connection therewith shall be distributed in accordance with the terms and provisions of the Plan, and (4) except with respect to Claims and causes of actions asserted, or that could have been asserted, by Ambac or Whitebox, whether sounding in contract or tort, against BNYM in the Ambac Action or the Whitebox Actions, respectively, for gross negligence, willful misconduct or intentional fraud, and any counterclaims that may be asserted by BNYM against Ambac or Whitebox in the Ambac Action or the Whitebox Actions, respectively, the Actions shall be dismissed, with prejudice, and Claims and causes of action asserted therein by any party to the Actions shall be deemed dismissed, with prejudice.

104749481v5

(d)     **Allowance of Bond Claims:**  Solely for purposes of confirmation and consumption of the Plan, on the Effective Date, (i) the Senior COFINA Bond Claims, Senior COFINA Bond Claims (Taxable Election), Senior COFINA Bond Claims (Ambac) and Senior COFINA Bond Claims (National) shall be deemed allowed in the aggregate amount of $7,760,871,398.36, (ii) the Junior COFINA Bond Claims, Junior COFINA Bond Claims (Taxable Election) and the Junior COFINA Bond Claims (Assured) shall be deemed allowed in the aggregate amount of $9,876,235,996.34; provided, however, that, in accordance with the solicitation procedures attendant to the Plan, the foregoing amounts shall be deemed allowed for voting purposes, and (iii) the holders of Existing Securities shall be deemed secured to the extent of the Pre-FY2019 BNYM Deposits, net of amounts allocated pursuant to the provisions of Article II hereof, the COFINA FY2019 BNYM Deposits and the COFINA Portion.

(e)     **Releases, Injunctions and Exculpation:** The releases, injunctions and exculpation provided in Article XXX herein (and, with respect to the COFINA Agent, this Article II) are integral to obtaining the value provided under the Commonwealth-COFINA Dispute Settlement and the releases, injunctions and exculpation under this Plan and the Plan Support Agreement constitute an essential component of the compromises reached and are not severable from the other provisions of this Plan.

# ARTICLE III

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, made applicable to the Title III Case pursuant to Section 301(a) of PROMESA, Administrative Expense Claims and Professional Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article IV of the Plan.

3.1     **Administrative Expense Claims:** On the later to occur of (i) the Effective Date and (ii) the date on which an Administrative Expense Claim shall become an Allowed Claim, Reorganized COFINA shall (a) pay to each holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Administrative Expense Claim or (b) satisfy and discharge such Allowed Administrative Expense Clam in accordance with such other terms no more favorable to the claimant than as may be agreed upon by and between the holder thereof and Reorganized COFINA; provided, however, that Allowed Administrative Expense Claims representing indebtedness incurred in the ordinary course by COFINA shall be paid in full and performed by Reorganized COFINA in accordance with the terms and subject to the conditions of any agreement governing, investment evidencing, or other document relating to such transactions; and, provided, further, that, if any such ordinary course expense is not billed, or a written request for payment is not made, within ninety (90) days after the Effective Date, such ordinary course expense shall be barred and the holder thereof shall not be entitled to, or receive, a distribution pursuant to the Plan.

3.2     **Professional Compensation and Reimbursement Claims:**  All Entities awarded compensation or reimbursement of expenses by the Title III Court shall be paid in full, in Cash, in the amounts allowed by the Title III Court (a) as soon as reasonably practicable following the later to occur of (i) the Effective Date and (ii) the date upon which the Title III Court order allowing such Claims is deemed to be a Final Order or (b) upon such other terms no more favorable to the claimant than as may be mutually agreed upon between such claimant and the

104749481v5

Government Parties; provided, however, that, except as provided herein, each Professional must file its application for final allowance of compensation for professional services rendered and reimbursement of expenses on or prior to the Administrative Claim Bar Date. Reorganized COFINA is authorized to pay compensation for professional services extended and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Title III Court approval.

3.3 **Consummation Costs**: Notwithstanding anything contained in the Plan to the contrary, in order to compensate Consummation Cost Parties for the cost of negotiation, confirmation and consummation of the Term Sheet and the Plan, and in consideration of (a) the negotiation, execution and delivery of the Plan Support Agreement by each Consummation Cost Party and (b) the obligations and covenants contained in the Plan Support Agreement, each Consummation Cost Party, on the Effective Date, shall receive, based upon such Entity's respective positions (insured or otherwise) as of 5:00 p.m. (EDT) on August 7, 2018, its pro rata share of Cash in an amount equal to two percent (2.0%), truncated to two decimal points, of (i) the aggregate amount of the Senior COFINA Bond Claims, Senior COFINA Bond Claims (Ambac), Senior COFINA Bond Claims (National), Junior COFINA Bond Claims, Junior COFINA Bond Claims (Assured), Senior COFINA Bond Claims (Taxable Election) and Junior COFINA Bond Claims (Taxable Election) (calculated without duplication), minus (ii) One Billion Dollars ($1,000,000,000.00); provided, however, that, notwithstanding the foregoing provisions of this Section 3.3, amounts due to Aurelius Capital Master, Ltd. and Six PRC Investments LLC as a result of being a Consummation Cost Party (i) shall not be taken into account in connection with the above-referenced calculations solely with respect to payments to other Consummation Cost Parties, which payment to the other Consummation Cost Parties shall be made by COFINA or Reorganized COFINA, as the case may be, and (ii) with respect to payments to be made to Aurelius Capital Master, Ltd. and Six PRC Investments LLC shall be taken into account in connection with the above-referenced calculations for all Consummation Cost Parties, which payments to Aurelius Capital Master, Ltd. and Six PRC Investments LLC shall be made by the Commonwealth in accordance with the provisions of Section 15.2 hereof; and, provided, further, that, with respect to any Senior COFINA Bond Claims (Ambac) and Senior COFINA Bond Claims (National), unless otherwise agreed to, in writing, by Ambac and National, and subject to the terms and provisions of Article XVII hereof, Ambac or National, as the case may be, and not the beneficial holder of such Senior COFINA Bond Claims (Ambac) and Senior COFINA Bond Claims (National) regardless of whether such beneficial holder is also a Consummation Cost Party, shall receive the amount of Cash that would have otherwise been distributed to such other Consummation Cost Party in accordance with the provisions of this Section 3.3; and, provided, further, that, with respect to the Junior COFINA Bond Claims (Assured), Assured, and not the beneficial holders of the Junior COFINA Bond Claims (Assured), shall receive the amount of Cash distributable on account of the Junior COFINA Bond Claims (Assured) in accordance with the provisions of this Section 3.3**.**

## ARTICLE IV

## CLASSIFICATION OF CLAIMS

4.1 **Claims are classified as follows:**

(a) **Class 1**: Senior COFINA Bond Claims

(b) **Class 2**:   Senior COFINA Bond Claims (Ambac)

(c) **Class 3**:   Senior COFINA Bond Claims (National)

(d) **Class 4**:   Senior COFINA Bond Claims (Taxable Election)

(e) **Class 5**:   Junior COFINA Bond Claims

(f) **Class 6**:   Junior COFINA Bond Claims (Assured)

(g) **Class 7**:   Junior COFINA Bond Claims (Taxable Election)

(h) **Class 8**:   GS Derivative Claim

(i) **Class 9**:   General Unsecured Claims

(j) **Class 10**:  Section 510(b) Subordinated Claims

Notwithstanding the foregoing classification of Claims, but subject to the terms and provisions of the Plan Support Agreement, the Oversight Board reserves the right to amend or modify such classification, including, without limitation, supplement such classification with additional Classes or modify the treatment afforded the holders in Classes 8, 9 and 10, provided that such amendment or modification does not adversely impact the treatment afforded to the holders of Claims in Classes 1 through 7 above.

## ARTICLE V

## PROVISIONS FOR TREATMENT OF SENIOR COFINA BOND CLAIMS (CLASS 1)

5.1    **Treatment of Senior COFINA Bond Claims**:  On the Effective Date, and subject to the right of election set forth in Section 5.2 hereof, each holder of an Allowed Senior COFINA Bond Claim shall be entitled to receive, in full satisfaction, release and exchange of such holder's Allowed Senior COFINA Bond Claim, such holder's Pro Rata Share of the Senior COFINA Bond Distribution, consisting of (a) Section 103 Cash, if applicable, (b) COFINA Cash Available for Distribution, (c) COFINA Bonds and (d) Rounding Amount Cash, if necessary.

5.2    **Right of Election to Senior COFINA Bond Claims (Taxable Election)**:
Notwithstanding the provisions of Section 5.1 of the Plan, any holder of an Allowed Senior COFINA Bond Claim that is a Puerto Rico Investor or a Puerto Rico Institution, as applicable, shall, at such holder's option, be entitled to elect to receive distributions pursuant to the terms and provisions of Sections 8.1 and 19.1 hereof.  Such election must be made on the Ballot/Election Form, be received by the Oversight Board and COFINA, or their designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder. Any election made after the Ballot Date shall not be binding upon COFINA unless the Ballot Date is expressly waived, in writing, by the Oversight Board and COFINA; provided, however, that, under no circumstance may such waiver by the Oversight Board and COFINA occur on or after the Effective Date.

104749481v5

# ARTICLE VI

## PROVISIONS FOR TREATMENT OF SENIOR COFINA BOND
## CLAIMS (AMBAC) (CLASS 2)

6.1     **Treatment of Senior COFINA Bond Claims (Ambac):**  Subject to the terms
and provisions of Sections 6.2, 6.3 and 6.4 hereof, each holder of an Allowed Senior COFINA
Bond Claim (Ambac) shall have the option to elect on the Ballot/Election Form to receive, on the
Effective Date, in full satisfaction release and exchange of such holder's Allowed Senior
COFINA Bond Claim (Ambac), its Pro Rata Share of (a) (1) the Senior COFINA Bond
Distribution consisting of (i) Section 103 Cash, if applicable, (ii) COFINA Cash Available for
Distribution, (iii) COFINA Bonds and (iv) Rounding Amount Cash, if necessary, plus (2)
consideration, distributable by or at the direction of Ambac, in accordance with the provisions of
Section 6.2 hereof, in full and complete satisfaction, release and discharge of any further
obligation of Ambac with respect to the Ambac Insurance Policy (and, by making such election,
the holder shall be deemed to have agreed to commute the Ambac Insurance Policy relating to
such holder's Allowed Senior COFINA Bond Claim (Ambac) and such holder shall have no
other or further rights with respect to the Ambac Insurance Policy, the Ambac Trust or the
Ambac Certificates), or (b) the Ambac Certificates referred to in Sections 6.3 and 17.1 hereof;
provided, however, that, in the event that a holder of an Allowed Senior COFINA Bond Claim
(Ambac) (1) fails to timely elect to receive the Ambac Certificates referred to in Sections 6.3 and
17.1 hereof or (2) submits an election for less than all of its Class 2 Claims (in which case, such
election shall be void and of no force or effect), such holder shall be deemed to have elected to
commute the Ambac Insurance Policy, to release and discharge Ambac's obligations thereunder,
and to receive distributions in accordance with the provisions of subsection (a) above.  For the
avoidance of doubt, with respect to any holder of an Allowed Senior COFINA Bond Claim
(Ambac) that elects (or is deemed to elect) to receive distributions in accordance with the
provisions of subsection (a) above, (i) such holder shall be deemed to have released Ambac from
its obligations and liabilities under or related to the Ambac Insurance Policy in respect of such
holder's Ambac Insured Bonds, (ii) such holder shall not be entitled to the benefit of the Ambac
Insurance Policy and shall have no right to make a claim under, or receive payment from, the
Ambac Insurance Policy, (iii) Ambac shall be released from its obligations under or related to the
Ambac Insurance Policy in respect of such holder's Ambac Insured Bonds, and (iv) the Ambac
Insurance Policy shall be terminated and commuted in full with respect to such holder's Ambac
Insured Bonds, no provision of the Ambac Insurance Policy with respect to such Ambac Insured
Bonds shall survive termination, and such Ambac Insured Bonds shall no longer have the benefit
of the Ambac Insurance Policy.

6.2     **Ambac Insurance Contribution:**  In consideration for the releases to be given to
Ambac, and in accordance with Section 6.1(a) hereof, on the Effective Date, a beneficial holder
of an Allowed Senior COFINA Bond Claim (Ambac) that does not validly elect to receive
Ambac Certificates shall receive, in addition to the Senior COFINA Bond Distribution,
consideration from Ambac in an amount equal to five and one quarter percent (5.25%) times the
amount of such holder's Allowed Senior COFINA Bond Claim (Ambac) as of the Petition Date,
and the beneficial holder thereof shall have no other or further rights under or with respect to the
Ambac Insurance Policy, the Ambac Trust, or the Ambac Certificates.  A holder of an Allowed
Senior COFINA Bond Claim (Ambac) that does not validly elect to receive Ambac Certificates
shall be deemed to have had, on or after the Effective Date, the Ambac Insured Bonds, including

29

the obligations of Ambac under the related Ambac Insurance Policy, underlying such holder's Allowed Senior COFINA Bond Claim (Ambac) cancelled.

6.3 **Non-Commutation/Ambac Trust:** In the event that a holder of a Senior COFINA Bond Claim (Ambac) timely elects to receive the distributions set forth in Section 6.1(b) hereof, on the Effective Date, COFINA shall deposit or be deemed to have deposited, among other things, such holder's Pro Rata Share of the Senior COFINA Bond Distribution and the Ambac Insured Bonds allocable to such electing holder into the Ambac Trust and such holder shall be deemed to have received its Pro Rata Share of the Senior COFINA Bond Distribution and shall receive its pro rata share of Ambac Certificates in consideration therefor.

6.4 **Deemed Acceleration:** The principal amount (or Compounded Amount in the case of capital appreciation bonds) of the Ambac Insured Bonds shall be deemed accelerated and immediately due and payable, as of the Effective Date; provided, however, that such deemed acceleration shall not affect, nor shall it be construed to affect, any issues regarding the existence of a "default" or an "event of default" with respect to the Existing Securities which were pending prior to the Effective Date.

6.5 **Entitlement to Vote:** Subject to the terms and provisions of the Disclosure Statement Order, (a) the solicitation of acceptances and rejections to the Plan by holders of Class 2 claims shall be made by the Oversight Board to Ambac but, (b) the elections described in Sections 6.1(a) and (b) hereof shall be made by the holders of Senior COFINA Bond Claims (Ambac).

## ARTICLE VII

## PROVISIONS FOR TREATMENT OF SENIOR COFINA BOND CLAIMS (NATIONAL) (CLASS 3)

7.1 **Treatment of Senior COFINA Bond Claims (National):** Subject to the terms and provisions of Sections 7.2, 7.3, 7.4 and 7.5 hereof, each holder of an Allowed Senior COFINA Bond Claim (National) shall have the option to elect on the Ballot/Election Form to receive, on the Effective Date, in full satisfaction, release and exchange of such holder's Allowed Senior COFINA Bond Claim (National) (a) (1) its Pro Rata Share of the Senior COFINA Bond Distribution consisting of (i) Section 103 Cash, if applicable, (ii) COFINA Cash Available for Distribution, (iii) COFINA Bonds and (iv) Rounding Amount Cash, if necessary, plus (2) Cash distributable by or at the direction of National, in accordance with the provisions of Section 7.2 hereof, in full and complete satisfaction, release and discharge of any further obligation of National with respect to the applicable National Insurance Policies (and, by making such election, the holder shall be deemed to have agreed to commute the National Insurance Policies relating to such holder's Allowed Senior COFINA Bond Claim (National) and such holder shall have no other or further rights with respect to the National Insurance Policies, the National Trust or the National Certificates), or (b) the National Certificates referred to in Sections 7.3 and 17.2 hereof; provided, however, that, in the event that a holder of an Allowed Senior COFINA Bond Claim (National) (1) fails to timely elect to receive the National Certificates referred to in Sections 7.3 and 17.2 hereof or (2) submits an election for less than all of its Claims 3 Claims (in which case, such election shall be void and of no force or effect), such holder shall be deemed to have elected to commute the National Insurance Policies to release and discharge National obligations thereunder, and to receive distributions in accordance with

subsection (a) above. For the avoidance of doubt, with respect to any holder of an Allowed Senior COFINA Bond Claim (National) that elects (or is deemed to elect) to receive distributions in accordance with the provisions of subsection (a) above, (i) such holder shall be deemed to have released National from its obligations and liabilities under or related to the National Insurance Policies in respect of such holder's National Insured Bonds, (ii) such holder shall not be entitled to the benefit of the National Insurance Policies and shall have no right to make a claim under, or receive payment from, the National Insurance Policies, (iii) National shall be released from its obligations under or related to the National Insurance Policies in respect of such holder's National Insured Bonds, and (iv) the National Insurance Policies shall be terminated and commuted in full with respect to such holder's National Insured Bonds, no provision of the National Insurance Policies with respect to such National Insured Bonds shall survive termination, and such National Insured Bonds shall no longer have the benefit of the National Insurance Policies.

7.2 **National Insurance Contribution:** In consideration for the releases to be given to National, and in accordance with the provisions of Section 7.1 hereof, on the Effective Date, a beneficial holder of an Allowed Senior COFINA Bond Claim (National) that fails to validly elect to receive National Certificates shall receive, in addition to its Pro Rata Share of the Senior COFINA Bond Distribution, Cash distributable by or at the direction of National, in an amount equal to five and one quarter percent (5.25%) <u>times</u> the amount of such holder's Allowed Senior COFINA Bond Claim (National) as of the Petition Date, and the beneficial holder thereof shall have no other or further rights under or with respect to the National Insurance Policies, the National Trust, or the National Certificates. The provisions set forth in this Section 7.2 apply only to Senior COFINA Bond Claims (National) insured in connection with the issuance of the corresponding indebtedness and not for any claims where the holder thereof is or its predecessor in interest otherwise purchased or acquired insurance on the secondary market. A holder of an Allowed Senior COFINA Bond Claim (National) that fails to validly elect to receive National Certificates shall be deemed to have had, on or after the Effective Date, the National Insured Bonds, including the obligations of National under the related National Insurance Policies, underlying such holder's Allowed Senior COFINA Bond Claim (National) cancelled.

7.3 **Non-Commutation/National Trust:** In the event that a holder of a Senior COFINA Bond Claim (National) timely elects to receive the distributions set forth in Section 7.1(b) hereof, on the Effective Date, COFINA shall deposit or be deemed to have deposited, among other things, such holder's Pro Rata Share of the Senior COFINA Bond Distribution into the National Trust and such holder shall be deemed to have received its Pro Rata Share of the Senior COFINA Bond Distribution and shall receive its pro rata share of National Certificates in consideration therefor.

7.4 **Entitlement to Vote:** Subject to the terms and provisions of the Disclosure Statement Order, (a) the solicitation of acceptances and rejections to the Plan by holders of Class 3 claims shall be made by the Oversight Board to National and (b) the elections described in Sections 7.1(a) and (b) hereof shall be made by the holders of Senior COFINA Bond Claims (National).

## ARTICLE VIII

## PROVISIONS FOR TREATMENT OF SENIOR COFINA BOND CLAIMS (TAXABLE ELECTION) (CLASS 4)

8.1 **Provisions for Treatment of Senior COFINA Bond Claims (Taxable Election):** On the Effective Date, each holder of an Allowed Senior COFINA Bond Claim (Taxable Election) shall be entitled to receive, in full satisfaction, release and exchange of such holder's Allowed Senior COFINA Bond Claim (Taxable Election), its Pro Rata Share of (a) the Senior COFINA Bond Distribution consisting of (i) Taxable COFINA Bonds and, if (and to the extent that) a balance remains after all Taxable COFINA Bonds have been distributed, tax-exempt COFINA Bonds and (ii) Rounding Amount Cash, if necessary, and (b) the Taxable Election Cash.

## ARTICLE IX

## PROVISIONS FOR TREATMENT FOR JUNIOR COFINA BOND CLAIMS (CLASS 5)

9.1 **Treatment of Junior COFINA Bond Claims:** On the Effective Date and subject to the right of election set forth in Section 9.2 hereof, each holder of an Allowed Junior COFINA Bond Claim shall be entitled to receive, in full satisfaction, release and exchange of such holder's Allowed Junior COFINA Bond Claim, its Pro Rata Share of the Junior COFINA Bond Distribution consisting of (a) Section 103 Cash, if applicable, (b) COFINA Bonds and (c) Rounding Amount Cash, if necessary.

9.2 **Right of Election to Junior COFINA Bond Claims (Taxable Election):** Notwithstanding the provisions of Section 9.1 of the Plan, any holder of an Allowed Junior COFINA Bond Claim that is a Puerto Rico Investor or a Puerto Rico Institution, as applicable, shall, at such holder's option, be entitled to elect to receive distributions pursuant to Sections 11.1 and 19.1 hereof. Such election must be made on the Ballot/Election Form, be received by the Oversight Board and COFINA, or their designee, on or prior to the Ballot Date and, if elected, shall be deemed acceptance of the Plan by such holder. Any election made after the Ballot Date shall not be binding upon COFINA unless the Ballot Date is expressly waived, in writing, by the Oversight Board and COFINA; provided, however, that, under no circumstance may such waiver by the Oversight Board and COFINA occur on or after the Effective Date.

## ARTICLE X

## PROVISIONS FOR TREATMENT FOR JUNIOR COFINA BOND CLAIMS (ASSURED) (CLASS 6)

10.1 **Treatment of Junior COFINA Bond Claims (Assured):** On the Effective Date, (a) each holder of an Allowed Junior COFINA Bond Claim (Assured) shall be entitled to receive, in full satisfaction, release and exchange of such holder's Allowed Junior COFINA Bond Claim (Assured) and the Assured Insured Bonds giving rise to Junior COFINA Bond Claims (Assured), and Assured shall pay to such holder of an Allowed Junior COFINA Bond Claim (Assured), in full, the applicable Acceleration Price as of the Effective Date, and (b) Assured shall receive the Section 103 Cash and Rounding Amount Cash, if any, which, in each case, is allocable to Junior COFINA Bond Claims (Assured), and Assured New Bonds consisting of the COFINA Bonds

allocable to holders of Allowed Junior COFINA Bond Claims (Assured), which Assured New Bonds may, at Assured's option and discretion, be guaranteed in accordance with a new insurance policy issued by, and on terms acceptable to, Assured (collectively, the "Insured Bonds"). Payment of the applicable Acceleration Price with respect to any Assured Insured Bond in accordance with this Section 10.1 shall satisfy and discharge all of Assured's obligations under the Assured Insurance Policies with respect to such Assured Insured Bond.

10.2 **Deemed Acceleration**: The principal amount (or Compounded Amount in the case of capital appreciation bonds) of the Assured Insured Bonds shall be deemed accelerated and immediately due and payable, as of the Effective Date; provided, however, that such deemed acceleration shall not affect, nor shall it be construed to affect, any issues regarding the existence of a "default" or an "event of default" with respect to the Existing Securities which were pending prior to the Effective Date.

10.3 **Entitlement to Vote**: Subject to the terms and provisions of the Disclosure Statement Order, the solicitation of acceptances and rejections to the Plan by holders of Class 6 claims shall be made by the Oversight Board to Assured.

10.4 **Remarketing of Assured New Bonds**: On or prior to the Effective Date, COFINA shall (a) enter into an agreement to remarket, which agreement to remarket shall be in form and substance acceptable to COFINA and Assured and be filed with the Title III Court on or prior to the commencement of the hearing to consider confirmation of the Plan and be incorporated into the Plan Supplement and (b) agree with Assured and the applicable underwriter(s) on a form of bond purchase agreement, subject to confirmation by Reorganized COFINA. The agreement to remarket shall provide that, (1) no later than sixty (60) days after the Effective Date (unless such date is either (i) extended, in writing, by Reorganized COFINA and Assured or (ii) waived, in writing, by Assured), the Assured New Bonds, at the option of Assured, shall be subject to a mandatory tender for purchase by Reorganized COFINA, the tender price for which shall be paid from the proceeds of the remarketing of the Assured New Bonds and (2) Reorganized COFINA shall use commercially reasonable efforts to remarket the Assured New Bonds as Insured Bonds pursuant to an "offering" within the meaning, and in compliance with the requirements, of Rule 15c-12 adopted by the Securities and Exchange Commission under the Securities Exchange Act, as amended, by one or more underwriters on a "firm commitment basis". The principal amounts, maturities and interest rates on the remarketed Assured New Bonds shall be determined by the applicable underwriter(s), such that the interest rates on the remarketed Assured New Bonds shall be the lowest interest rates necessary for such Assured New Bonds to be remarketed with adjusted par amounts and adjusted terms that otherwise result in the Assured New Bonds being remarketed at the lowest aggregate yield; provided, however, that (y) the debt service requirements on the remarketed Assured New Bonds due in any Fiscal Year shall not be greater than the debt service requirements due in such Fiscal Year on the Assured New Bonds prior to such remarketing and (z) the remarketed Assured New Bonds may mature later than the Assured New Bonds prior to the remarketing, but in no event later than FY2058; and, provided, further, that such remarketed Assured New Bonds shall be subject to optional redemption at the same times and at the same redemption prices as the Assured New Bonds prior to such remarketing. If, at any time, Assured determines that the Assured New Bonds cannot be remarketed on terms acceptable to Assured, Assured may elect, in its sole discretion, to retain the Assured New Bonds for its own account.

# ARTICLE XI

## PROVISIONS FOR TREATMENT FOR JUNIOR COFINA BOND CLAIMS (TAXABLE ELECTION) (CLASS 7)

11.1  **Treatment for Junior COFINA Bond Claims (Taxable Election):**  On the Effective Date, each holder of an Allowed Junior COFINA Bond Claim (Taxable Election) shall be entitled to receive, in full satisfaction, release and exchange of such holder's Allowed Junior COFINA Bond Claim (Taxable Election), its Pro Rata Share of (a) the Junior COFINA Bond Distribution consisting of (i) Taxable COFINA Bonds and, if, and to the extent that, a balance remains after all Taxable COFINA Bonds have been distributed, tax-exempt COFINA Bonds and (ii) Rounding Amount Cash, if necessary and (b) the Taxable Election Cash.

# ARTICLE XII

## PROVISIONS FOR TREATMENT OF GS DERIVATIVE CLAIMS (CLASS 8)

12.1  **Treatment of GS Derivative Claims:** On the Effective Date, the holder of the GS Derivative Claim shall, to the extent that the termination value of the GS Derivative Claim is (a) greater than the amount of the collateral in such holder's possession, be entitled to retain such collateral and, with respect to the balance of the GS Derivative Claim, (1) to the extent that rejection damages, if any, associated with such GS Derivative Claim is a Parity Obligation, as defined in the Bond Resolutions, such holder's Pro Rata Share of the Senior COFINA Bond Distribution, consisting of (i) COFINA Cash Available for Distribution, (ii) COFINA Bonds and (iii) Rounding Amount Cash, if necessary, and (2) to the extent that rejection damages, if any, associated with such GS Derivative Claim is a not a Parity Obligation, such holder shall not receive a distribution pursuant to the Plan, or (b) less than the amount of collateral in such holder's possession, the holder of the GS Derivative Claim shall liquidate such collateral in full and complete satisfaction of the GS Derivative Claim and return the balance of such collateral value to Reorganized COFINA.

# ARTICLE XIII

## PROVISIONS FOR TREATMENT OF GENERAL UNSECURED CLAIMS (CLASS 9)

13.1  **Treatment of General Unsecured Claims:** In the event that Class 9 votes to accept the Plan, each holder of an Allowed General Unsecured Claim shall be entitled to receive its Pro Rata Share of One Hundred Thousand Dollars ($100,000.00); provided, however, that, in the event that Class 9 votes to reject the Plan, holders of Allowed General Unsecured Claim shall not receive a distribution pursuant to the Plan.

# ARTICLE XIV

## PROVISIONS FOR TREATMENT OF SECTION 510(B) SUBORDINATED CLAIMS (CLASS 10)

14.1  **Treatment of Section 510(b) Subordinated Claims:**  Allowed Section 510(b) Subordinated Claims shall not receive a distribution pursuant to the Plan and each holder of an Allowed Section 510(b) Subordinated Claim shall be deemed to have rejected the Plan.

104749481v5

## ARTICLE XV

## PROVISIONS REGARDING ALLOCATION OF UNSUBSCRIBED TAXABLE ELECTION CASH

15.1    **Unsubscribed Taxable Election Cash Amount**:  On the Effective Date, the amount, up to Sixty Million Dollars ($60,000,000.00), allocated for distributions to holders of Allowed Senior COFINA Bond Claims (Taxable Election) and Allowed Junior COFINA Bond Claim (Taxable Election) in Classes 4 and 7, respectively, but not distributed based upon elections made or not made, as the case may be, then the Taxable Election Remainder Amount shall be reallocated and distributed as follows: if such amount is (a) equal to or less than Forty Million Dollars ($40,000,000.00), such amount shall be allocated (i) *first*, if the aggregate amount of Taxable Election Cash distributable under the Plan is greater than Twenty Million Dollars ($20,000,000.00), to be distributed as Taxable Election Cash in accordance with the Plan, (ii) *second*, to the extent of any remainder, to further fund the COFINA Operating Expense Account up to an additional Ten Million Dollars ($10,000,000.00), and (iii) *third*, to the extent of any further remainder, to be distributed evenly to COFINA, on the one hand, to increase the COFINA Cash Available for Distribution and the Commonwealth, on the other hand, and (b) greater than Forty Million Dollars ($40,000,000.00), such amount up to Forty Million Dollars ($40,000,000.00) shall be allocated as described in subsection (a) above and such amounts above Forty Million Dollars ($40,000,000.00) shall be added to the COFINA Cash Available for Distribution and allocated to holders of all Allowed Bond Claims in accordance with the terms and provisions of the Plan.

15.2    **Commonwealth/COFINA Expenses:**  Notwithstanding anything contained in the Plan to the contrary all expenses, including Allowed Administrative Expense Claims and Allowed Professional Claims, incurred by the Commonwealth or COFINA, as the case may be, in connection with the development, negotiation, confirmation and consummation of the Plan and the compromise and settlement of the Commonwealth-COFINA Dispute shall be paid to the extent available from the funds distributable to the Commonwealth in accordance with the provisions of Sections 2.1 and 15.1 hereof and otherwise by the Commonwealth.

## ARTICLE XVI

## PROVISIONS REGARDING COFINA BONDS

16.1    **Issuance of COFINA Bonds:**  On the Effective Date, Reorganized COFINA shall issue the COFINA Bonds consisting of CIBs and CABs, as more particularly described herein.  The maturities, interest rates and amortization schedules for COFINA Bonds are annexed hereto as Exhibit "A".  All debt service on COFINA Bonds and COFINA Parity Bonds which is not paid when due, whether at or prior to final scheduled maturity, shall remain due and outstanding until paid in full and shall be paid, with accrued interest on the unpaid amount, first, in each FY from the balance, if any, of the COFINA Portion remaining after the payment of debt service on the COFINA Bonds and COFINA Parity Bonds then due and payable in such FY; second, in each fiscal year, from the Debt Service Savings, if any; and third, to the extent not paid pursuant to first or second, following the final scheduled maturity of all COFINA Bonds and COFINA Parity Bonds.  Interest shall accrue on such overdue debt service at the regular coupon rate or accretion rate, as applicable, compounding semiannually, until the applicable COFINA Bonds or COFINA Parity Bonds are paid or satisfied in full in accordance with their

terms.  Interest on the COFINA Bonds shall be calculated on a 30/360 basis.  The Government Parties shall use their commercially reasonable best efforts to obtain ratings on the COFINA Bonds, including promptly responding in good faith to documentary or other requests, as soon as reasonably practicable as determined solely by the Government Parties, following consultation with a designee of the PSA Creditors, including based upon the Government Parties' judgment with respect to expected benefits.  After the Government Parties determine which rating agencies to apply for ratings from, the Government Parties shall use their commercially reasonable best efforts to obtain the best possible ratings.

(a)     **CIBs:**  Subject to any adjustments provided for herein, CIBs shall have the original principal amount, interest rate and maturity date as follows:  (a) Three Hundred Seventy-Five Million Ninety Thousand Dollars ($375,090,000.00), four and five-tenths percent (4.5%), and July 1, 2034; (b) Two Billion Nine Hundred Ninety-Six Million One Hundred Fifteen Thousand Dollars ($2,996,115,000.00), four and fifty-five one hundredths percent (4.55%), and July 1, 2040; (c) One Billion Four Hundred Fifty-One Million One Hundred Thirty-Five Thousand Dollars ($ 1,451,135,000.00), four and seventy-five one hundredths percent (4.75%), and July 1, 2053; and (d) Four Billion Two Hundred Ninety-Seven Million Eighty Thousand Dollars ($4,297,080,000.00), five percent (5.0%), and July 1, 2058.  CIBs shall not carry any default rate of interest, provided that interest shall accrue on all overdue debt service at the regular coupon rate, compounding semiannually, until paid or satisfied in full in accordance with their terms.

(b)     **CABs:**  Subject to any adjustments provided for herein, CABs shall have the original principal amount, accretion value and maturity date as follows: (a) One Hundred Sixty-Six Million Eight Hundred Eighteen Thousand Nine Hundred Fifty-Four Dollars and Fifty Cents ($166,818,954.50), four and one quarter percent (4.250%), and July 1, 2024, (b) Two Hundred Forty-Six Million Three Hundred Forty-Six Thousand Five Hundred Ninety-Seven Dollars and Ninety-Five Cents ($246,346,597.95), four and three eighths percent (4.375%), and July 1, 2027, (c) Two Hundred Twenty Million One Hundred Ninety Thousand Four Hundred Eighty-Five Dollars and Fifty Cents ($220,190,485.50), four and three eighths percent (4.375%), and July 1, 2029, (d) Two Hundred Fifty-Six Million One Hundred Sixty-Two Thousand Nine Hundred Seventy-One Dollars and Fifty Cents ($256,162,971.50), four and one-half percent (4.50%), and July 1, 2031, (e) Two Hundred Sixty-Three Million Seven Hundred Fifty-Two Thousand Four Hundred Twenty-Eight Dollars and Eighty Cents ($263,752,428.80), four and one-half percent (4.50%), and July 1, 2033, (f) One Billion One Hundred Eight Million Nine Hundred Ninety-One Thousand Three Hundred Fifteen Dollars and Ten Cents ($1,108,991,315.10), five and three eighths percent (5.375%), and July 1, 2046, and (g) Six Hundred Thirty-Nine Million Six Hundred Thirty-Nine Thousand Sixty-Four Dollars ($639,639,064.00), five and five eighths percent (5.625%), and July 1, 2051.  CABs shall not carry any default rate of interest, provided that interest shall accrue on all overdue debt service at the regular accretion rate, compounding semiannually, until paid or satisfied in full in accordance with their terms.

(c)     **Deemed Issuance Date:**  Notwithstanding the timing of the Effective Date, interest on the COFINA Bonds shall commence to accrue or accrete, as the case may be, as of August 1, 2018, which date shall be designated as the "dated" date of the COFINA Bonds.  On the Effective Date, COFINA FY2019 BNYM Deposits shall be deposited into the Debt Service Fund established in the New Bond Indenture for the benefit of holders of COFINA Bonds in accordance with the terms and provisions of the Plan.

104749481v5

16.2    **Collateral for Repayment of COFINA Bonds:**  Subject to enactment of the New Bond Legislation, and to the extent set forth in such New Bond Legislation, repayment of the COFINA Bonds and COFINA Parity Bonds from the COFINA Portion will automatically, upon the issuance of such COFINA Bonds and COFINA Parity Bonds, be secured by a statutory first Lien on all of Reorganized COFINA's right, title and interest in and to the COFINA Pledged Taxes, including any monies, income, revenues, accounts, contract rights or general intangibles derived therefrom.  Such Lien shall (a) remain in effect and (b) be closed until, in each case, the COFINA Bonds and the COFINA Parity Bonds have been paid or satisfied in full in accordance with their terms.  Such Lien, as set forth in the New Bond Legislation, and pursuant to the Confirmation Order, will be judicially confirmed and the Reorganized COFINA Bonds shall be judicially determined to be legal, valid, binding and enforceable obligations of COFINA by the Title III Court.  Notwithstanding anything contained herein to the contrary, repayment of the COFINA Bonds and COFINA Parity Bonds shall not be secured by, or have recourse to, any obligation or property of the Commonwealth.

16.3    **Additional Bonds Test for COFINA Parity Bonds:**  Except with respect to the issuance of COFINA Parity Bonds upon the terms and conditions described herein, Reorganized COFINA may not issue any securities on a *pari passu* or higher priority basis than the COFINA Bonds issued on the Effective Date.  Notwithstanding the foregoing and subject to compliance with the provisions of the Additional Bonds Test set forth in this Section 16.3, Reorganized COFINA may issue Subordinated Lien Bonds for the benefit of, and with the consent of, the Commonwealth and for any lawful purpose of the Commonwealth, provided that (a) repayment of such additional bonds shall be secured by a second Lien that is subordinated in all respects, including, without limitation, in respect of payment, funding and remedies to the COFINA Bonds and COFINA Parity Bonds, with repayment of Subordinated Lien Bonds being secured by a subordinated second or more junior Lien on the COFINA Pledged Taxes; provided, however, that, notwithstanding anything contained in the Plan to the contrary, repayment of the Subordinated Lien Bonds shall not be payable from the COFINA Portion and (b) prior to the issuance thereof, the Commonwealth and Reorganized COFINA shall deliver a jointly executed certificate to the New Bond Indenture trustee certifying that the following conditions are each satisfied:  (i) (1) the projected COFINA Pledged Taxes ((y) which, in the event that Subordinated Lien Bonds are being issued prior to FY2024, are calculated assuming the preceding FY's collection of the COFINA Pledged Taxes grow annually at the "sales and use tax" growth rates set forth for those subsequent years in the Commonwealth's certified fiscal plan, dated April 18, 2018, or (z) in the event that Subordinated Lien Bonds are being issued during FY2024 or thereafter, are calculated assuming that preceding fiscal year's collection of the COFINA Pledged Taxes grow thereafter at a rate equal to the average annual "sales and use tax" growth rate for the preceding five (5) fiscal years) equals or exceeds (2) one and one-half times (1.5x), in any succeeding fiscal year, of the annual aggregate debt service due on the COFINA Bonds, COFINA Parity Bonds and Subordinated Lien Bonds to remain outstanding after the issuance of such Subordinated Lien Bonds (including the Subordinated Lien Bonds to be issued); (ii) the preceding fiscal year's collections from the COFINA Pledged Taxes is equal to or greater than one and one-tenth times (1.10x) coverage of the maximum annual aggregate debt service due in any succeeding fiscal year on all COFINA Bonds, COFINA Parity Bonds and Subordinated Lien Bonds to remain outstanding after the issuance of such Subordinated Lien Bonds (including the Subordinated Lien Bonds to be issued); and (iii) the Subordinated Lien Bonds have a maturity not later than FY2058; provided, however, that, subsequent to June 30, 2028, and subject to

compliance with the foregoing Additional Bonds Test, final maturity beyond FY2058 shall be permissible for future Subordinated Lien Bonds.

16.4 **Call Provisions/Optional Redemption:** The COFINA Bonds shall be callable, in whole or in part, in any order of maturity, at par plus accrued interest thereon or accreted value, as applicable, upon thirty (30) day's prior written notice as follows:

2034 CIBs: Par-Call Commencing FY2025 (7 year call)
2040 CIBs: Par Call Commencing FY2028 (10 year call)
2053 CIBs: Par Call Commencing FY2028 (10 year call)
2058 CIBs: Par Call Commencing FY2028 (10 year call)

2024/2027 CABs: Non-Call
2029 CABs: Call Commencing FY 2028 at the following prices:

| Fiscal Year | Price |
| --- | --- |
| 2028 | 103% of Accreted Value |
| 2029 | 100% of Accreted Value |

2031 CABs: Call Commencing FY 2028 at the following prices:

| Fiscal Year | Price |
| --- | --- |
| 2028 | 105% of Accreted Value |
| 2029-2030 | 103% of Accreted Value |
| 2031 | 100% of Accreted Value |

2033 CABs: Call Commencing FY2028 at the following prices:

| Fiscal Year | Price |
| --- | --- |
| 2028-2030 | 107.5% of Accreted Value |
| 2031 | 105% of Accreted Value |
| 2032 | 103% of Accreted Value |
| 2033 | 100% of Accreted Value |

2046/2051 CABs: Call Commencing FY2028 at the following call prices:

| Fiscal Year | Price |
| --- | --- |
| 2028-2032 | 107.5% of Accreted Value |
| 2033-2037 | 105% of Accreted Value |
| 2038-2042 | 103% of Accreted Value |
| 2043-2051 | 100% of Accreted Value |

If less than all of the COFINA Bonds of a particular series are called for prior redemption, Reorganized COFINA will select the maturity or maturities of such series of the COFINA Bonds to be redeemed, and Depository Trust Company, on behalf of the trustee for the COFINA Bonds, will select the COFINA Bonds within the same maturity of such series to be redeemed by means of a random lottery.

104749481v5

16.5    **First Dollars Funding**:  Until the COFINA Bonds and COFINA Parity Bonds have been paid or satisfied in full in accordance with their terms, and subsequent to the funding of reasonable and necessary Reorganized COFINA operating expenses into the COFINA Operating Expense Account, including, without limitation, Reorganized COFINA board member fees and expenses, the COFINA Portion shall be funded annually from "first dollars" collected from the COFINA Pledged Taxes; provided, however, that, notwithstanding the foregoing, from and after FY2024, and solely in the event that (a) for any date of determination at which time the Oversight Board or any successor to its budgetary function is in existence, (1) the prior and then-current FY budgets are balanced, as determined by the Oversight Board (or its successor in interest), and (2) the Commonwealth is current on its continuing disclosure requirements relating to its audited financial statements, (b) quarterly bucketing of twenty-five percent (25%) of the then-current FY's COFINA Portion is shown to be necessary to avoid intra-FY tax revenue anticipation notes borrowing and (c) collection of prior fiscal year COFINA Pledged Taxes provided a two times (2x) coverage of the COFINA Portion, then, in each quarter, until the COFINA Bonds and COFINA Parity Bonds have been paid or satisfied in full in accordance with their terms, (x) the "first dollars" collected from the COFINA Pledged Taxes up to twenty-five percent (25%) of the then-current FY's COFINA Portion shall be deposited into the "Debt Service Fund" held by the New Bond Indenture trustee for the benefit and payment of debt service with respect to the COFINA Bonds and the COFINA Parity Bonds, and (y) thereafter, the remaining quarterly collection from the COFINA Pledged Taxes shall be deposited in accordance with the "Flow of Funds" established in the New Bond Indenture; provided, however, that, in any quarter in which there is a shortfall in the amounts required to be deposited by the preceding clause (x), then such shortfall shall be added to the amount required to be paid in accordance with clause (x) in the following quarter until the entire amount of the cumulative shortfall has been deposited into the Debt Service Fund held by the trustee for the benefit and payment of debt service with respect to the COFINA Bonds and the COFINA Parity Bonds.

16.6    **Covenants for COFINA Bonds and COFINA Parity Bonds:**  On the Effective Date, the Definitive Documents, including the New Bond Legislation, will contain customary terms, conditions and covenants for similarly structured and supported bonds, including, without limitation, the following covenants with respect to the COFINA Bonds and the COFINA Parity Bonds:

(a)    **Sales Tax Covenant:**  Subject to the terms and provisions of Section 16.7 hereof, the Commonwealth will covenant for the benefit of all initial and subsequent holders of the COFINA Bonds and COFINA Parity Bonds, that, until all obligations with respect thereto have been paid or satisfied in full in accordance with their terms, the rate of the COFINA Pledged Taxes from which the Fixed Amount is derived shall not be reduced to a rate less than five and one-half percent (5.5%) unless, on each such occasion prior to such reduction, at least two (2) of the following four (4) nationally recognized statistical rating organizations then in existence and rating any of the COFINA Bonds or COFINA Parity Bonds: S&P Global Ratings, Moody's Investor Service, Inc., Fitch Ratings and Kroll Bond Rating Agency Inc., or their respective successors, with one (1) of such organizations being S&P Global Ratings or Moody's Investor Service, Inc., or its respective successor, confirm that ratings of the COFINA Bonds and the COFINA Parity Bonds will not be downgraded and (without regard to bond insurance or other third party credit enhancement) will be rated at least A2/A category or higher following such reduction; provided, however, that, notwithstanding the foregoing, until all obligations with

39

respect to the COFINA Bonds and COFINA Parity Bonds have been paid or satisfied in full in accordance with their terms, if the rate of the COFINA Pledged Taxes is reduced below three percent (3%), then such reduction shall constitute a "Substitution of Collateral" and shall be subject to the terms and provisions of Section 16.7 hereof.

(b)    **Non-Impairment Covenant:**  The Commonwealth will covenant for the benefit of all initial and subsequent holders of COFINA Bonds and COFINA Parity Bonds, that, until all obligations with respect thereto have been paid or satisfied in full in accordance with their terms, the Commonwealth will take no action that would (1) impair Reorganized COFINA's right to receive the COFINA Portion, (2) limit or alter the rights vested in COFINA or Reorganized COFINA in accordance with the Plan and the Confirmation Order to fulfill the terms of any agreements with the holders of COFINA Bonds and COFINA Parity Bonds, (3) materially adversely impair the collection of COFINA Pledged Taxes in any FY, or (4) impair the rights and remedies of the holders of the COFINA Bonds or COFINA Parity Bonds or the collateral security thereof.

(c)    **Tax-Exemption Covenant:**  Reorganized COFINA will covenant for the benefit of all initial and subsequent holders of federally tax-exempt COFINA Bonds and federally tax-exempt COFINA Parity Bonds that, until all obligations with respect thereto have been paid or satisfied in full in accordance with their terms, Reorganized COFINA will do and perform all acts and things permitted by law and reasonably necessary or desirable to assure that interest paid to the holders of any federally tax-exempt COFINA Bonds or federally tax-exempt COFINA Parity Bonds shall be and remain excludable from gross income for federal income tax purposes.

(d)    **Rating Agency Covenant:**  In connection with a "Substitution of Collateral" pursuant to the provisions of Section 16.7 hereof, Reorganized COFINA will covenant to use its reasonable best efforts and work in good faith to obtain the best rating possible on the then-outstanding COFINA Bonds and COFINA Parity Bonds, including, but not limited to, responding to requests for documents.

16.7    **Substitution of Collateral**:  Notwithstanding anything contained in the Plan or in the Definitive Documents to the contrary, the Commonwealth may enact legislation that permits a Commonwealth revenue stream to replace the COFINA Pledged Taxes as security for the repayment of the COFINA Bonds and COFINA Parity Bonds; provided, however, that the substitution of New Collateral may occur only upon, and on each such occasion, satisfaction of the following conditions:  (a) such New Collateral is all or a portion of a tax of general applicability throughout the Commonwealth that is being enacted in full substitution of the then-existing island-wide sales and use tax or otherwise constitutes like or comparable security for the COFINA Bonds and COFINA Parity Bonds and such legislation provides (i) for the irrevocable transfer of, including ownership of, such New Collateral to Reorganized COFINA, (ii) for an automatic mandatory statutory lien on such New Collateral in favor of holders of COFINA Bonds and COFINA Parity Bonds, and (iii) that, following such transfer, such New Collateral is not, and shall not constitute, "available resources" or "available revenues" of the Government of Puerto Rico, as used in Section 8 of Article VI of the Puerto Rico Constitution or as otherwise used in the Puerto Rico Constitution (whether construed pursuant to the Spanish or English version of the Puerto Rico Constitution), and is otherwise owned by Reorganized COFINA in the same manner and to the same extent as the COFINA Portion, (b) upon substitution of the New Collateral, that rating confirmations are received from at least two (2) of the following four (4)

40

nationally recognized statistical rating organizations then in existence and rating the COFINA Bonds: S&P Global Ratings, Moody's Investor Service, Inc., Fitch Ratings and Kroll Bond Rating Agency Inc., with one (1) of such organizations being either S&P Global Ratings or Moody's Investor Service, Inc., prior to such collateral substitution confirming that ratings for all COFINA Bonds and COFINA Parity Bonds (without regard to bond insurance or other third party credit enhancement) will not be downgraded and will be at least A2/A category or higher following such collateral substitution, (c) the Commonwealth shall continue to provide the non-impairment covenant referred to in Section 16.6(b) hereof with respect to such New Collateral and (d) such other documents as may be required pursuant to applicable law and bond resolutions.

16.8    **Debt Service Reserve Fund**:  The COFINA Bonds and the COFINA Parity Bonds shall not have a debt service reserve fund.

16.9    **Rights of Acceleration**:  The COFINA Bonds, the COFINA Parity Bonds and Subordinated Lien Bonds, if any, shall not have rights of acceleration.

# ARTICLE XVII

# THE TRUSTS

17.1    **Terms of Ambac Trust:**

(a)    **General Terms:**  On or prior to the Effective Date, COFINA shall establish the Ambac Trust, solely on behalf, and for the benefit, of beneficial holders of Allowed Senior COFINA Bond Claims (Ambac) that validly elect to receive the Ambac Certificates in accordance with the approved solicitation procedures pursuant to the Disclosure Statement Order and set forth on the Ballot/Election Form.  On the Effective Date, the following Ambac Trust Assets shall be deposited (or deemed deposited) into the Ambac Trust: (1) the Ambac Insured Bonds allocable to such electing holders of Allowed Senior COFINA Bond Claims (Ambac), (2) the Senior COFINA Bond Distribution (consisting of Section 103 Cash, if applicable, COFINA Cash Available for Distribution, COFINA Bonds and Rounding Amount Cash, if necessary) allocable to such electing holders of Allowed Senior COFINA Bond Claims (Ambac) and (3) the benefit of the Ambac Insurance Policy.  The COFINA Bonds shall consist of Taxable COFINA Bonds and Tax-Exempt COFINA Bonds.  Notwithstanding the deposit of such holders' Ambac Insured Bonds in the Ambac Trust, such Ambac Insured Bonds shall not be cancelled and all rights and remedies under and in accordance with such Ambac Insured Bonds, the Bond Resolution (other than with respect to the payment and other obligations of COFINA and the Commonwealth thereunder) and the Ambac Insurance Policy shall be preserved and remain in full force and effect.  The Ambac Trust shall be the owner of any Ambac Insured Bonds deposited therein, provided that all rights with respect to such Ambac Insured Bonds shall be subject to the terms of the trust agreement.

Upon deposit of the Ambac Trust Assets, the trustee shall issue two series of Ambac Certificates, (i) a series with a mandatory redemption date of August 1, 2047, and (ii) a series with a mandatory redemption date of August 1, 2054 ("Series 2054"), to the holders of Allowed Senior COFINA Bond Claims (Ambac) that validly elected to receive the Ambac Certificates.  The Ambac Certificates shall provide for payments in accordance with the scheduled sinking fund payments with respect to Series 2054 and the maturity date of such holder's Ambac Insured

Bonds.  The scheduled sinking fund payment dates for Series 2054 shall be August 1, 2048, August 1, 2049, August 1, 2050, August 1, 2051, August 1, 2052 and August 1, 2053.  Subject to the terms of the trust agreement, each series of Ambac Certificates shall bear unique CUSIPs and be freely tradeable and transferrable through The Depository Trust Company.  Each class of Ambac Certificates will have its own class accretion schedule that sets forth the accreted payment amounts as of any date.  Ambac shall not insure any payments on the Ambac Certificates, shall not be required to pay any default or other interest amounts with respect to the Ambac Insured Bonds, and is only required to pay its obligations under the Ambac Insurance Policy as provided therein and in the trust agreement.  In addition, Ambac shall have the right, but not any obligation, to make payments in whole or in part under the Ambac Insurance Policy prior to the applicable mandatory redemption date for a class of Ambac Certificates.  To the extent Ambac determines, in its sole discretion, to make any earlier payment under the Ambac Insurance Policy, upon such payment, the remaining obligations of Ambac with respect to such Ambac Insurance Policy shall result in the recalibration of the related class accretion schedules.  Upon repayment or redemption of all Ambac Certificates, Ambac shall be entitled to receive all remaining assets in the Ambac Trust.

Other than with respect to their differing mandatory redemption dates and accretion schedules, each class of the Ambac Certificates shall have substantially the same terms and entitle the holder thereof to its pro rata share of distributions made by the Ambac Trust.  Each distribution on the Ambac Certificates (whether or not taxable to a holder or reduced by withholding or tax payments made by the Ambac Trust) shall reduce the related obligation of Ambac under the Ambac Insurance Policy, shall be deemed to reduce the amount outstanding on the Ambac Insured Bonds, and shall result in the recalibration of the related class accretion schedules.  The Ambac Trust will distribute all payments received on the Tax-Exempt COFINA Bonds to holders of the Ambac Certificates promptly following receipt thereof in accordance with the trust agreement.  Ambac may elect, in its sole discretion, to distribute from time to time payments received on account of the Taxable COFINA Bonds to holders of the Ambac Certificates or to reinvest such payments in investments permitted by the terms of the trust agreement; provided, however, that the Ambac Trust shall have no obligation to distribute such payments prior to the applicable mandatory redemption date for a series.  In addition, Ambac may, in its sole and absolute discretion, direct the Ambac Trust to sell all or any portion of the COFINA Bonds held by the Ambac Trust in accordance with the terms of the trust agreement and thereafter, if such COFINA Bonds are Tax-Exempt COFINA Bonds, direct the Ambac Trust to distribute the proceeds of such sale to the holders of the Ambac Certificates and, if such COFINA Bonds are Taxable COFINA Bonds, direct the Ambac Trust to distribute the proceeds of such sale to the holders of Ambac Certificates or retain the proceeds of such sale in the Ambac Trust.  Ambac may, in its sole and absolute discretion, distribute Ambac Trust Assets held by the Ambac Trust to the holders of the Ambac Certificates, at a market value calculated in accordance with the terms and provisions of the trust agreement, and, upon such distribution, the applicable portion of each holder's Ambac Certificates shall be cancelled.  Ambac shall be deemed the sole holder of the COFINA Bonds in the Ambac Trust with respect to voting, amendment, acceleration, events of default and election and direction of rights and remedies, including, without limitation, in connection with insolvency proceedings.  Taxes on any investment earnings, shall be paid out of the Ambac Trust Assets.

The Ambac Trust agreement will provide that (a) all rights of a holder of COFINA Bonds held by the Ambac Trust (whether as to amendments and consents, direction of remedies or

otherwise) shall be exercisable solely by Ambac and no holder of the Ambac Certificates shall be
entitled to any right with respect to the COFINA Bonds and (b) Ambac may, at its option, elect
to direct a distribution of a proportional percentage of the underlying COFINA Bonds to
individual holders of Ambac Certificates upon the release of such holder's claims on the related
Ambac Insurance Policy and against the Ambac Trust. Such distribution and release shall not
give rise to any other holder of Ambac Certificates asserting a right to receive the same
treatment.

On the Effective Date, unless otherwise agreed to by Ambac, the position at the Depository Trust
Company with respect to each Ambac Insured Bond deposited, or deemed deposited, into the
Ambac Trust pursuant to the terms and provisions of the Plan shall become zero and the Ambac
Trust shall be deemed the sole holder of such Ambac Insured Bonds.

(b) **Costs and Expenses**: All fees, costs and expenses incurred in connection
with transactions contemplated pursuant to Section 17.1 hereof, including, without limitation,
fees and expenses associated with the formation and maintenance of the Ambac Trust and the
fees and expenses incurred by the trustee of the Ambac Trust, shall be the sole obligation and
responsibility of Ambac (solely with respect to the formation of the Ambac Trust) and the
Ambac Trust, and not COFINA or Reorganized COFINA, as the case may be, and the failure of
Ambac (solely with respect to the formation of the Ambac Trust) or the Ambac Trust to satisfy
any such obligations shall release and discharge COFINA and Reorganized COFINA, as the case
may be, from fulfilling any further obligations in connection with the Ambac Trust.

17.2 **Terms of National Trusts**: In the event that National declines to exercise the
National Election, on or prior to the Effective Date, the National Trust shall be formed on behalf
of, and for the sole benefit of beneficial holders of, National Insured Bonds that (a) elect to
receive National Certificates on the Ballot/Election Form distributed in connection with the
solicitation of acceptances and rejections of the Plan and (b) have not otherwise agreed to
commute the National Insurance Policies on or prior to the Effective Date. The trustee of the
National Trust shall be an entity that is a nationally recognized U.S. domiciled financial
institution and fiduciary regularly acting as trustee in the municipal finance market. On the
Effective Date, the National Trust Assets, consisting of (1) the National Insured Bonds that have
not been commuted, (2) other than the portion distributable to commuting holders, all of the
Senior COFINA Bond Distribution in respect of Senior COFINA Bond Claims (National) in
accordance with the terms of Section 7.1 (b) hereof, (3) the National Insurance Policies and (4)
the consideration to be distributed to National in accordance with Section 3.3 hereof, shall be
deposited into the National Trust. The costs, including fees and expenses and any obligation
arising under the Term Sheet or the Plan, associated with the formation and operation of the
National Trust shall be paid out of the National Trust Assets. Notwithstanding the deposit
therein, the National Insured Bonds shall not be cancelled and all rights and remedies under and
in accordance with National Insured Bonds, the Bond Resolution (other than with respect to the
payment obligations of COFINA) and the National Insurance Policies shall be preserved and
remain in full force and effect. Upon deposit of the National Trust Assets, on a pro rata basis,
the trust shall issue one or more series of National Certificates to the beneficial holders of Senior
COFINA Bond Claims (National) whose allocable shares of the Senior COFINA Bond
Distribution are deposited into the National Trust.

The National Certificates shall entitle a National Certificate Holder to its pro rata share of value
in and any distribution of Cash from the respective National Trust, which distribution shall (1) in

all cases, occur promptly upon receipt thereof by the National Trust and (2) automatically reduce the obligation outstanding under the National Insurance Policies as of the date of such distribution to National Certificate Holders in the amount of such distribution. For the avoidance of doubt, National's obligation to pay the scheduled Compounded Amount of the underlying National Insured Bonds as and when due shall, in all cases, continue to compound as scheduled to the date that the trustee of the National Trust actually makes payment to the National Certificate Holders. Each series of National Certificates shall bear unique CUSIPs and shall be freely tradable and transferable through the Depository Trust Company.

(a)     **Sale of COFINA Bonds:**  So long as National (i) is not in default under the National Insurance Policies and (ii) has not agreed to and has not become subject to regulatory supervision, rehabilitation or liquidation (or similar) proceedings, National (a) shall be deemed the sole holder of the COFINA Bonds in the National Trust with respect to voting, amendment, acceleration, events of default and election and direction of rights and remedies, including, without limitation, in connection with insolvency proceedings, and (b) may, at any time prior to dissolution of the National Trust, deliver or direct the trustee to deliver a Sale Notice to all National Certificate Holders, through Depository Trust Company or any similar means, setting forth its intention to sell, for Cash, all or a portion of the COFINA Bonds held in the National Trust. The Sale Proceeds of such a sale shall be promptly distributed to National Certificate Holders on a pro rata basis and, upon such distribution, shall automatically reduce the obligation outstanding under the National Insurance Policies as of the date and in the amount of such distribution to National Certificate Holders; provided, however, that each National Certificate Holder may elect (within a reasonable specified period of time to be negotiated) after delivery of the Sale Notice to receive its pro rata share of the COFINA Bonds for sale pursuant to the Sale Notice in lieu of its allocable share of the Sale Proceeds and, in accordance with such election, the obligation outstanding under the National Insurance Policies as of the date of such distribution shall be reduced automatically in an amount equal to the portion of the Sale Proceeds that would have been attributable to such COFINA Bonds if sold. Documentation related to the National Trust shall (i) be negotiated in good faith, (ii) be in form and substance acceptable to National and reasonably acceptable to the holders of National Insured Bonds that accepted the restructuring terms proposed by the Oversight Board and AAFAF on August 7, 2018 and are party to the Plan Support Agreement, and (iii) be included in a Plan Supplement.

To the extent that a holder of a Senior COFINA Bond Claim (National) agrees to commute the National Insurance Policies on or prior to the Effective Date, such holder shall receive a distribution from National and the holder thereof shall have no rights with respect to the National Insurance Policies, the National Trust or the National Certificates.

(b)     **Costs and Expenses:**  All fees, costs and expenses incurred in connection with transactions contemplated pursuant to Section 17.2 hereof, including, without limitation, fees and expenses associated with the formation and maintenance of the National Trust and the fees and expenses incurred by the trustee of the National Trust, shall be the sole obligation and responsibility of National and not COFINA or Reorganized COFINA, as the case may be, and failure of National or the National Trust to satisfy any such obligations shall release and discharge COFINA and Reorganized COFINA, as the case may be, from fulfilling any further obligations in connection with the National Trust.

17.3     **Existing Securities/BNYM Obligations**:  Notwithstanding anything contained in the Plan to the contrary, including, without limitation, the provisions of this Article XVII,

104749481v5

BNYM shall have no duties or responsibilities with respect to any Existing Securities that may be held by the Trusts from and after the Effective Date.

## ARTICLE XVIII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

18.1    **Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases:** Pursuant to sections 365(b)(2) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and subject to the provisions of Sections 18.5 and 18.7 hereof, all Executory Contracts and Unexpired Leases that exist between COFINA and any Entity, and which have not expired by their own terms on or prior to the Confirmation Date, shall be deemed rejected by COFINA as of the Effective Date, except for any Executory Contract and Unexpired Lease that (a) has been assumed and assigned or rejected pursuant to an order of the Title III Court entered prior to the Effective Date or (b) is specifically designated as a contract or lease to be assumed or assumed and assigned on the schedules to the Plan Supplement; provided, however, that COFINA reserves the right, on or prior to the Confirmation Date, to amend such schedules to delete any Executory Contract and Unexpired Lease therefrom or add any Executory Contract and Unexpired Lease thereto, in which event such Executory Contract(s) and Unexpired Lease(s) shall be deemed to be, as the case may be, either rejected, assumed, or assumed and assigned as of the Effective Date. COFINA shall serve (y) notice of any Executory Contract and Unexpired Lease to be assumed or assumed and assigned through the operation of this Section 18.1, by including a schedule of such contracts and leases in the Plan Supplement and (z) notice of any Executory Contract and Unexpired Lease to be rejected through the operation of this Section 18.1, by serving a separate notice to the relevant counterparties to such agreements. To the extent there are any amendments to such schedules, COFINA shall provide notice of any such amendments to the parties to the Executory Contract and Unexpired Lease affected thereby. The listing of a document on the schedules to the Plan Supplement or in any separate notice shall not constitute an admission by COFINA that such document is an Executory Contract and Unexpired Lease or that COFINA has any liability thereunder.

18.2    **Approval of Rejection or Assumption of Executory Contracts and Unexpired Leases:** Entry of the Confirmation Order by the Title III Court shall constitute approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection, assumption, or assumption and assignment, as the case may be, of an Executory Contract and an Unexpired Lease pursuant to Section 18.1 of the Plan.

18.3    **Inclusiveness:** Unless otherwise specified on the schedules to the Plan Supplement, each Executory Contract and Unexpired Lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract and Unexpired Lease, without regard to whether such agreement, instrument, or other document is listed on such schedule.

18.4    **Cure of Defaults:** Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to Section 18.1 of the Plan, COFINA shall, pursuant to the provisions of section 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within at least twenty (20) days prior to

the Confirmation Hearing, file with the Title III Court and serve by first class mail on each non-COFINA party to such Executory Contracts and Unexpired Leases to be assumed pursuant to Section 18.1 of the Plan, a notice, which shall list the cure amount as to each executory contract or unexpired lease to be assumed or assumed and assigned. The parties to such Executory Contracts and Unexpired Leases will have twenty (20) days from the date of service of such notice to file and serve any objection to the cure amounts listed by COFINA. If there are any objections filed, the Title III Court shall hold a hearing on a date to be set by the Title III Court. Notwithstanding Section 18.1 of the Plan, COFINA shall retain its rights to reject any of its Executory Contracts and Unexpired Leases that are subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date.

18.5 **Insurance Policies:** Subject to the terms and provisions of Section 18.7 hereof, each of COFINA's Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan and to the extent executory in nature, on the Effective Date, COFINA shall, first, deposit all Insurance Policies and any agreements, documents and instruments relating to coverage of all insured Bond Claims into the applicable Trusts and, second, be deemed to have rejected all such Insurance Policies and any agreements, documents, and instruments relating to coverage of all insured Claims; provided, however, that, such rejection shall not, and shall not be construed to, discharge or relieve any of Ambac, Assured or National with respect to their respective obligations to holders of Allowed Senior COFINA Bond Claims (Ambac), Allowed Junior COFINA Bond Claims (Assured) and Allowed Senior COFINA Bond Claims (National), respectively, that have elected to receive the relevant trust certificates hereunder pursuant to the applicable Insurance Policy. For the avoidance of doubt, nothing contained herein shall prejudice any subrogation, reimbursement, or similar rights of an insured against the applicable Trust or the assets thereof.

18.6 **Rejection Damage Claims:** If the rejection of an Executory Contract and Unexpired Lease by COFINA hereunder results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against COFINA, or its properties or agents, successors, or assigns, including, without limitation, Reorganized COFINA, unless a proof of Claim is filed with the Title III Court and served upon attorneys for the Oversight Board and Reorganized COFINA, as the case may be, on or before thirty (30) days after the late to occur of (i) the Confirmation Date, and (ii) the date of entry of an order by the Title III Court authorizing rejection of a particular Executory Contract and Unexpired Lease.

18.7 **Indemnification and Reimbursement Obligations:** For purposes of the Plan, (i) to the extent executory in nature, the obligations of COFINA, including, without limitation, directors and officers insurance policies, to indemnify and reimburse its directors or officers that were directors or officers, respectively, on or prior to the Petition Date shall be deemed assumed as of the Effective Date and (ii) indemnification obligations of COFINA arising from conduct of officers and directors during the period from and after the Petition Date shall be Administrative Expense Claims.

18.8 **Nonoccurrence of Effective Date:** In the event that the Effective Date does not occur, the Title III Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

104749481v5

18.9    **Reservation of Rights:**  Nothing contained in the Plan or the Plan Supplement shall constitute an admission by COFINA, Reorganized COFINA or any other party that any such contract or lease is in fact an Executory Contract and Unexpired Lease or that COFINA has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, COFINA or Reorganized COFINA shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

# ARTICLE XIX

# PROVISIONS GOVERNING DISTRIBUTIONS

19.1    **Time and Manner of Distribution:**  Except as otherwise provided herein, including, without limitation, in Articles X and XVII hereof, distributions under the Plan shall be made to each holder of an Allowed Claim as follows:

(a)    **Distributions to Holders of Bond Claims:**  Except as otherwise provided herein, within ten (10) Business Days following the Effective Date, and subject to the terms and provisions of Section 19.5 hereof regarding distributions to Ambac and Whitebox on account of the pendency of the Ambac Action and the Whitebox Actions, respectively, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Senior COFINA Bond Claim, an Allowed Senior COFINA Bond Claim (Ambac), an Allowed Senior COFINA Bond Claim (National), an Allowed Senior COFINA Bond Claim (Taxable Election), an Allowed Junior COFINA Bond Claim, an Allowed Junior COFINA Bond Claim (Assured) and an Allowed Junior COFINA Bond Claim (Taxable Election), in each case consistent with the terms hereof, such Creditor's Pro Rata Share, if any, of Section 103 Cash, COFINA Cash Available for Distribution, Rounding Amount Cash, Taxable Election Cash, Consummation Costs, if applicable, and COFINA Bonds, together with, where applicable, the consideration described in Sections 6.1 and 7.1 hereof, or, in lieu of all of the foregoing, certificates in the applicable Trust.

(b)    **Distributions with Respect to GS Derivative Claim:**  Within (10) Business Days following the Effective Date, and solely to the extent that the holder of the Allowed GS Derivative Claim is entitled to a distribution in excess of the value of the collateral retained by such holder,  the Disbursing Agent shall distribute, or cause to be distributed, to the holder of the Allowed GS Derivative Claim, such Creditor's share, if any, of Section 103 Cash, COFINA Cash Available for Distribution, Rounding Amount Cash and COFINA Bonds.

(c)    **Distributions with Respect to General Unsecured Claims:**  Within ten (10) Business Days following the Effective Date, and solely to the extent that Class 9 votes to accept the Plan, the Disbursing Agent shall distribute or cause to be distributed to each holder of an Allowed General Unsecured Claim such Creditor's Pro Rata Share, if any, of One Hundred Thousand Dollars ($100,000.00).

(d)    **Distribution of Cash to Holders of Certain Other Claims:**  Except as otherwise provided herein, on or as soon as practicable after the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Administrative Expense Claim, Cash in the amount of such Allowed Claim.

19.2    **Timeliness of Payments:**  Any payment or distribution to be made pursuant to the Plan shall be deemed to be timely made if made within ten (10) days after the date specified in the Plan.  Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due, including, without limitation, deeming distributions made pursuant to Section 19.1(a) hereof to have been made on the Effective Date.

19.3    **Distributions by the Disbursing Agent**:  Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall be deemed to hold all property to be distributed hereunder in trust for the Entities entitled to receive the same.  The Disbursing Agent shall not hold an economic or beneficial interest in such property.

19.4    **Manner of Payment under the Plan:**  Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Disbursing Agent shall be made, at the election of the payor, by check drawn on a domestic bank or by wire transfer from a domestic bank; provided, however, that no Cash payment shall be made to a holder of an Allowed Claim until such time, if ever, as the amount payable thereto is equal to or greater than Ten Dollars ($10.00).

19.5    **Delivery of Distributions:**  Subject to the provisions of Rule 9010 of the Bankruptcy Rules, and except as provided herein, distributions and deliveries to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Court, unless superseded by the address set forth on proofs of Claim filed by such holders, or at the last known address of such holder if no proof of Claim is filed or if COFINA has been notified in writing of a change of address; provided, however, that initial distributions of Cash by the Disbursing Agent for the benefit of holders of Allowed Senior COFINA Bond Claims, Allowed Senior COFINA Bond Claims (Ambac), Allowed Senior COFINA Bond Claims (National), Allowed Bond Claims (Taxable Election), Allowed Junior COFINA Bond Claims, Allowed Junior COFINA Bond Claims (Assured) and Allowed Junior COFINA Bond Claims (Taxable Election), as applicable, shall be made to BNYM, as trustee for the Existing Securities (or BNYM's designee) under the respective governing documents for such obligations; and, provided, further, that the Disbursing Agent may make distributions of Consummation Costs in Cash to a Consummation Cost Party in a manner mutually agreed upon between the Consummation Cost Party and the Disbursing Agent.  BNYM (or BNYM's designee) shall, in turn, in accordance with the terms and provisions of the Plan, distribute and deliver Cash and COFINA Bonds, as applicable, to Bondowners as of the Distribution Record Date, in the manner provided for in the applicable governing documents; provided, however, that, to the extent a holder of a Bond Claim elects to receive the trust certificate hereunder, BNYM will deposit such holder's distribution into the applicable Trust.  BNYM may conclusively rely upon the distribution instructions received from COFINA or its agents with respect to the delivery of distributions in accordance with the terms and provisions of this Section 19.5, including the contra-CUSIP positions and escrow positions set up by COFINA or its agents with the Depository Trust Company, and BNYM shall close and terminate the original CUSIPs after making initial distributions of COFINA Cash Available for Distribution, Section 103 Cash and Rounding Cash Amount and shall have no further distribution obligations thereafter.  BNYM shall not be required to give any bond or surety or other security for the

performance of its duties, unless otherwise ordered by the Title III Court. BNYM shall only be required to make the distributions and deliveries described in this Section 19.5 and shall only be required to make such distributions and deliveries in accordance with the terms of the Confirmation Order and the Plan and shall have no liability for actions reasonably taken in accordance with the Confirmation Order, the Plan or in reasonable reliance upon information provided to BNYM by COFINA or its agents in accordance with the Confirmation Order, the Plan or in connection with distributions to be made hereunder and thereunder, except for liabilities resulting from its own gross negligence or willful misconduct. Notwithstanding the foregoing, all distributions are subject to the Trustee Rights; provided, however, that, notwithstanding the foregoing or anything contained in the Plan to the contrary, including, without limitation, Sections 19.6(iii) and 19.13 hereof, except as set forth in the following proviso, BNYM shall not exercise Trustee Rights on account of Trustee Claims that may arise from and after the Effective Date and no distribution to be made pursuant to the Plan, either through the Disbursing Agent or BNYM as trustee of the Existing Securities, shall be withheld as a result of, or on account of, the claims, causes of action and damages being asserted, or which could have been asserted, in the Ambac Action and the Whitebox Actions; and provided, further, that, with respect to Trustee Claims that may arise from and after the Effective Date as a result of, or on account of, the Ambac Action and the Whitebox Actions, respectively, at the Confirmation Hearing, the Title III Court shall determine (a) what amount, if any, shall be either (i) withheld by the Disbursing Agent or BNYM as trustee for the Existing Securities from distributions to be made to Ambac and Whitebox or (ii) posted by Ambac and Whitebox as collateral for the reimbursement of fees and expenses which may be incurred by BNYM in connection with the defense of the Ambac Action and the Whitebox Actions, and (b) whether BNYM shall be reimbursed by Ambac and Whitebox for the incurrence of any such fees and expenses from either the holdback amount or collateral posted and referred to in the preceding subsection (a) on a current basis or upon entry of a Final Order in connection with the Ambac Action and the Whitebox Actions, in each case, such determination and the fulfillment of any obligations of Ambac and Whitebox as a result thereof shall satisfy in full any obligations of COFINA and any rights of BNYM under the Bond Resolution and applicable law with regard to the payment of BNYM's fees and expenses and indemnification arising from or relating to the Ambac Action or the Whitebox Actions. COFINA, its agents and servicers, the Disbursing Agent and BNYM shall have no obligation to recognize any transfer of Bond Claims after the Distribution Record Date; provided, however, that COFINA Bonds will be transferable and recognized if made in accordance with the terms and conditions of the New Bond Indenture.

19.6 **Cancellation of Notes, Instruments, Certificates, and Other Documents:** Except (a) as provided in any contract, instrument or other agreement or document entered into or delivered in connection with the Plan, (b) for purposes of evidencing a right to distribution under the Plan, or (c) as specifically provided otherwise in the Plan (including any rejection of Executory Contracts or Unexpired Leases pursuant to Section 18.1 hereof), on the Effective Date, the "Senior" and "First Subordinate" Existing Securities and all instruments and documents related thereto will be deemed automatically cancelled, terminated and of no further force or effect against COFINA without any further act or action under any applicable agreement, law, regulation, order or rule, with COFINA and BNYM having no continuing obligations or duties and responsibilities thereunder and the obligations of the parties to COFINA, as applicable, under the Existing Securities and all instruments and documents related thereto shall be discharged; provided, however, that, notwithstanding anything contained herein to the contrary, the "Senior" and "First Subordinate" Existing Securities and such other

49

instruments and documents shall continue in effect solely (i) to allow the Disbursing Agent to make any distributions as set forth in the Plan and to perform such other necessary administrative or other functions with respect thereto, (ii) to allow holders of Allowed Bond Claims to receive distributions in accordance with the terms and provisions of the Plan, (iii) for any trustee, agent, contract administrator or similar entity under all instruments and documents related thereto, including BNYM, to perform necessary functions, including making distributions, in accordance with the Plan and to have the benefit of all the rights and protections and other provisions of such instruments and documents, as applicable, and all other related agreements, including, without limitation, the right to payment of the Trustee Claims and the Trustee Rights, (iv) to set forth the terms and conditions applicable to parties to such documents and instruments other than COFINA, (v) to allow BNYM to appear in the Title III Case or any other proceeding in which BNYM is or becomes a party with respect to clauses (i) through (iv) above, as applicable, or otherwise in connection with BNYM's role as trustee under the Bond Resolution, or (vi) as may be necessary to preserve any claims under the respective Insurance Policies by (1) the applicable holders of Allowed Senior COFINA Bond Claims (Ambac) that validly elected to receive Ambac Certificates or (2) the applicable holders of Allowed Senior COFINA Bond Claims (National) that validly elected to receive National Certificates; and, provided, further, that BNYM shall have no duties or responsibilities with respect to any Existing Securities that may be held by the Trusts from and after the Effective Date. Notwithstanding the foregoing, and except as otherwise expressly provided in the Plan, such bonds or bond documents as remain outstanding shall not form the basis for the assertion of any Claim against COFINA or Reorganized COFINA, as the case may be.

19.7    **Undeliverable/Reserved Distributions**:

(a)    **Holding of Undeliverable Distributions by the Disbursing Agent**: If any distribution to any holder is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified, in writing, of such holder's then-current address. Subject to the terms and provision of Section 19.7(b) hereof, undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable. All Entities ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

(b)    **Failure to Claim Undeliverable Distributions**: If (i) a check is sent, by the Disbursing Agent to a holder in respect of distributions and such check is not negotiated within one hundred twenty (120) days following the date on which such check was issued, or (ii) any other form of distribution to a holder is otherwise undeliverable, the Disbursing Agent (or its duly authorized agent) shall, on or prior to the date that is one hundred eighty (180) days from (i) the Effective Date, with respect to all Allowed Claims as of the Effective Date, and (ii) the date that a distribution is made with respect to any Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date, file a list with the Title III Court setting forth the names of those Entities for which distributions have been made hereunder that have not been negotiated or have been returned as undeliverable as of the date thereof. Any holder of an Allowed Claim on such list that does not identify itself and assert its rights pursuant to the Plan to receive a distribution within six (6) months from the date so listed shall have its entitlement to such undeliverable distribution discharged and shall be forever barred from asserting any entitlement pursuant to the Plan, against Reorganized COFINA, the trustees, or their respective

104749481v5

professionals, agents, or property, and any (1) Cash in the possession of the Disbursing Agent or the trustee with respect to Existing Securities, as the case may be, shall be released to Reorganized COFINA for use to discharge operating expenses of Reorganized COFINA and (2) COFINA Bonds in the possession of the Disbursing Agent or trustee with respect to Existing Securities, as the case may be, shall be released to Reorganized COFINA for cancellation or deposit into the treasury of Reorganized COFINA, as determined by Reorganized COFINA in its sole and absolute discretion.

19.8    **Withholding and Reporting Requirements:**  Any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any United States federal, state or local tax law or Tax Authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any Taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such withholding tax obligations and, if any party issuing any instrument or making any distribution under the Plan fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse such party.  The Disbursing Agent may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder.  If the holder fails to comply with such a request within one year, such distribution shall be deemed an Unclaimed Distribution.

19.9    **Time Bar to Cash Payments:**  Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within one hundred twenty (120) days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of (i) the first (1st) anniversary of the Effective Date or (ii) ninety (90) days after the date of issuance of such check, if such check represents a final distribution hereunder on account of such Claim.  After such date, all Claims in respect of voided checks shall be discharged and forever barred and the Disbursing Agent shall retain all monies related thereto for the sole purpose of redistribution to holders of Allowed Claims in accordance with the terms and provisions hereof.

19.10    **Distributions After Effective Date:**  Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made in accordance with the terms and provisions of Article XIX of the Plan.

19.11    **Setoffs:**  Except as otherwise provided in the Plan or in the Confirmation Order, the Disbursing Agent may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim by the Disbursing Agent), the claims, rights, and causes of action of any nature that COFINA or Reorganized COFINA may hold against the holder of such Allowed Claim; provided, however, that neither the failure to

51

effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by COFINA or Reorganized COFINA of any such claims, rights, and causes of action that COFINA or the Reorganized COFINA may possess against such holder; and, provided, further, that nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment; and, provided, further, that nothing in this Section 19.11 shall affect the releases and injunctions provided in Article XXX of the Plan.

      19.12  **Allocation of Plan Distributions Between Principal and Interest**:  To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts; provided, however, that COFINA or Reorganized COFINA's treatment of any distributions for its tax purposes will not be binding on any Creditor as to the treatment of such distributions for any regulatory, tax or other purposes.

      19.13  **Payment of Trustee Fees and Expenses**:  No later than five (5) days prior to the Effective Date, BNYM shall provide invoice summaries and supporting documentation (subject to redaction to preserve attorney-client privilege) to the Oversight Board and AAFAF, on behalf of COFINA, relating to all incurred and unpaid Trustee Claims as of such date, together with an estimate of Trustee Claims to be incurred from such date up to and including the Effective Date. Within three (3) Business Days thereof, COFINA shall notify BNYM, in writing, of any dispute relating to the reasonableness of any portion of the Trustee Claims. Any portion of the Trustee Claims that is not disputed by COFINA shall be paid by COFINA on the Effective Date without further application to, or approval of, the Title III Court; provided, however, that, upon notification of a dispute, BNYM (a) shall submit an application to the Title III Court seeking a resolution of such dispute by the Title III Court or (b) waive, in writing, payment of such disputed amount; and, provided, further, that, upon the entry of an order of the Title III Court authorizing payment of any disputed amount, upon notice and a hearing, unless otherwise stayed, COFINA shall pay such allowed portion of such Trustee Claims. To the extent any Trustee Claim is incurred from and after the Effective Date and does not relate to either the Ambac Action or the Whitebox Actions, Reorganized COFINA shall be responsible and, upon presentation of supporting documentation in form and substance satisfactory to Reorganized COFINA (subject to redaction to preserve attorney-client privilege), shall satisfy such post-Effective Date Trustee Claims; provided, however, that, under no circumstance shall the Disbursing Agent, COFINA or Reorganized COFINA be responsible for any indemnification obligation, cost, or expense of BNYM associated with the gross negligence, intentional fraud or willful misconduct of BNYM in making any distribution pursuant to the Plan.

## ARTICLE XX

## RIGHTS AND POWERS OF DISBURSING AGENT

      20.1  **Exculpation**:  From and after the Effective Date, the Disbursing Agent shall be exculpated by all Entities, including, without limitation, holders of Claims and other parties in interest, from any and all claims, causes of action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any

order of the Title III Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct of such Disbursing Agent. No holder of a Claim or other party in interest shall have or pursue any claim or cause of action against the Disbursing Agent for making payments in accordance with the Plan or for implementing the provisions of the Plan.

20.2 **Powers of the Disbursing Agent:** Except as may be provided otherwise hereunder, the Disbursing Agent shall be empowered to (a) take all steps and execute all instruments and documents necessary to effectuate the Plan, (b) make distributions contemplated by the Plan, (c) comply with the Plan and the obligations thereunder, and (d) exercise such other powers as may be vested in the Disbursing Agent pursuant to order of the Title III Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

20.3 **Fees and Expenses Incurred From and After the Effective Date:** Except as otherwise ordered by the Title III Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent from and after the Effective Date and any reasonable compensation and expense reimbursement claims, including, without limitation, reasonable fees and expenses of counsel, incurred by the Disbursing Agent, shall be paid in Cash without further order of the Title III Court.

## ARTICLE XXI

## PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS

21.1 **Objections to Claims; Prosecution of Disputed Claims:** Except with respect to Allowed Claims, Reorganized COFINA shall object to, and shall assume any pending objection filed by COFINA to, the allowance of Claims filed with the Title III Court with respect to which it disputes liability, priority or amount, including, without limitation, objections to Claims that have been assigned and the assertion of the doctrine of equitable subordination with respect thereto. All objections, affirmative defenses and counterclaims shall be litigated to Final Order; provided, however, that Reorganized COFINA shall have the authority to file, settle, compromise or withdraw any objections to Claims, without approval of the Title III Court. Unless otherwise ordered by the Title III Court, to the extent not already objected to by COFINA, Reorganized COFINA shall file and serve all objections to Claims as soon as practicable, but, in each instance, not later than one hundred twenty (120) days following the Effective Date or such later date as may be approved by the Title III Court. Notwithstanding anything contained in the Plan to the contrary, on the Effective Date, any Bond Claim filed by any Entity, other than the Bond Claims filed by BNYM, as trustee with respect to the Existing Securities, for amounts due under Existing Securities, shall be deemed disallowed and expunged and the Oversight Board shall instruct Prime Clerk LLC, its court-appointed representative, to remove such Bond Claims from the claims registry maintained for the benefit of the Title III Court.

21.2 **Estimation of Claims:** Except with respect to Allowed Claims, on and after the Effective Date, and unless otherwise limited by an order of the Title III Court, Reorganized COFINA may at any time request the Title III Court to estimate for final distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether COFINA previously objected to or sought to estimate such Claim,

and the Title III Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Unless otherwise provided in an order of the Title III Court, in the event that the Title III Court estimates any contingent, unliquidated or Disputed Claim, the estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Title III Court; provided, however, that, if the estimate constitutes the maximum limitation on such Claim, Reorganized COFINA may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim; and, provided, further, that the foregoing is not intended to limit the rights granted by section 502(j) of the Bankruptcy Code. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

21.3    **Payments and Distributions on Disputed Claims:**

(a)    **Disputed Claims Holdback:** From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Title III Court in an amount constituting the allowed amount, or allowed or disallowed by Final Order of the Title III Court, Reorganized COFINA shall retain, for the benefit of each holder of a Disputed Claim, COFINA Cash Available for Distribution, Section 103 Cash, Rounding Amount Cash and COFINA Bonds, and, to the extent elected by such holder, the applicable trust certificates, and any dividends, gains or income attributable in respect of any of the foregoing, in an amount equal to the Pro Rata Share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claims shall be estimated by the Title III Court pursuant to section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, and (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and Reorganized COFINA; provided, however, that the recovery by any holder of a Disputed Claim shall not exceed the lesser of (i), (ii) and (iii) above. Any COFINA Cash Available for Distribution, Section 103 Cash, Rounding Amount Cash and COFINA Bonds retained and held for the benefit of a holder of a Disputed Claim shall be treated as payment and reduction on account of such Disputed Claim for purposes of computing any additional amounts to be paid in Cash distributed in COFINA Bonds in the event the Disputed Claim ultimately becomes an Allowed Claim. Such Cash and any dividends, gains or income paid on account of the COFINA Bonds (if any) retained for the benefit of holders of Disputed Claims shall be retained by Reorganized COFINA for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan. To the extent that Reorganized COFINA retains COFINA Bonds on behalf of Disputed Claims holders, until such time as such COFINA Bonds are distributed, Reorganized COFINA shall exercise voting or consent rights with respect to such bonds.

(b)    **Allowance of Disputed Claims:** At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, Reorganized COFINA shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan, together with any earnings that have accrued on the amount of COFINA Cash Available for Distribution, Section 103 Cash, Rounding Amount Cash and COFINA Bonds so retained (net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim. Such distribution, if any, shall be made as soon

as practicable after the date that the order or judgement of the Title III Court allowing such Disputed Claim becomes a Final Order, but in no event more than ninety (90) days thereafter. The balance of any COFINA Cash Available for Distribution, Section 103 Cash, Rounding Amount Cash and COFINA Bonds previously retained but not distributed to a Disputed Claim holder shall be included in future distributions with respect to COFINA Bonds.

      21.4   **Authority to Amend List of Creditors:**  Except with respect to Bond Claims, COFINA shall have the authority to amend the List of Creditors with respect to any Claim and to make distributions based on such amended List of Creditors without approval of the Title III Court. If any such amendment to the List of Creditors reduces the amount of a Claim or changes the nature or priority of a Claim, COFINA will provide the holder of such Claim with notice of such amendment and such holder will have twenty (20) days to file an objection to such amendment with the Title III Court. If no such objection is filed, the Disbursing Agent may proceed with distributions based on such amended List of Creditors without approval of the Title III Court.

      21.5   **Non-Accrual of Interest:**  Unless otherwise specifically provided for herein or by order of the Title III Court, post-petition interest shall not accrue or be paid on Claims, Allowed or otherwise, and no holder of a Claim, Allowed or otherwise, shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

      21.6   **Disallowance of Claims:**  All Claims of any Entity from which property is sought by COFINA under sections 550, or 553 of the Bankruptcy Code or that COFINA alleges is a transferee of a transfer that is avoidable under sections 544, 545, 547, 548, or 549 of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and COFINA, on the other hand, agree or the Title III Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## ARTICLE XXII

## ACCEPTANCE OR REJECTION OF THE PLAN, EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

      22.1   **Impaired Classes to Vote:**  Except as otherwise provided pursuant to the Disclosure Statement Order, each holder, as of the voting record date established in the Disclosure Statement Order, of a Claim in an impaired Class not otherwise deemed to have rejected or accepted the Plan shall be entitled to vote separately to accept or reject the Plan.

      22.2   **Acceptance by Class of Creditors**:  An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have affirmatively voted to accept or reject the Plan.

22.3    **Cramdown:**   In the event that any impaired Class of Claims shall fail to accept, or be deemed to reject, the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Oversight Board reserves the right to request that the Title III Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE XXIII

## IDENTIFICATION OF CLAIMS IMPAIRED BY THE PLAN AND NOT IMPAIRED BY THE PLAN

23.1    **Impaired Classes:**  Claims in Classes 1 through 10 are impaired under the Plan.

23.2    **Impaired Classes to Vote:**  The Claims in Classes 1 through 9 are impaired and receiving distributions pursuant to the Plan, and are therefore entitled to vote to accept or reject the Plan; provided, however, that, based upon the elections made on the Ballot/Election Form, Classes 4 and 7 are deemed to have accepted the Plan.  The Claims in Class 10 are impaired and not receiving a distribution pursuant to the Plan and, therefore, Class 10 is deemed to have rejected the Plan.

## ARTICLE XXIV

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN

24.1    **Conditions Precedent to Confirmation of the Plan:**  Confirmation of the Plan is subject to satisfaction of the following conditions precedent:

(a)    **Fiscal Plan Certification:**  The Oversight Board shall have determined that the Plan is consistent with the COFINA Fiscal Plan and shall have certified the submission of the Plan, and any modifications to the Plan through the Confirmation Date, in accordance with Sections 104(j) and 313 of PROMESA.

(b)    **Required Orders:**  The Clerk of the Title III Court shall have entered an order or orders (including, without limitation, the Disclosure Statement Order, the Confirmation Order and the Settlement Order providing for the following:

(i)    Approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

(ii)    Authorizing the solicitation of votes and elections with respect to the Plan;

(iii)    Determining that all votes and elections or deemed elections are binding and have been properly tabulated;

(iv)    Confirming and giving effect to the terms and provision of the Plan, including the releases set forth in Article XXX of the Plan;

(v)    Approving the Settlement Agreement in accordance with its terms, including, but not limited to, the releases of the Agents and their respective representatives, professionals and advisors;

(vi)     Determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Oversight Board, COFINA and the Plan;

(vii)    Approving the documents in the Plan Supplement, other than the New Bond Legislation (to the extent included in the Plan Supplement) and the Reorganized COFINA By-Laws;

(viii)   Authorizing Reorganized COFINA to execute, enter into, and deliver the documents in the Plan Supplement, and to execute, implement and take all actions otherwise necessary or appropriate to give effect to the transactions contemplated by the Plan, the documents in the Plan Supplement, and the Settlement Agreement;

(ix)     Determining that the compromises and settlements set forth in the Settlement Agreement and the Plan are appropriate, reasonable and approved; and

(x)      The deemed acceleration of the Existing Securities on the Effective Date (i) in connection with  the treatment of Junior COFINA Bond Claims (Assured) and (ii) if requested by Ambac and/or National prior to the commencement of the Disclosure Statement Hearing, in connection with the Senior COFINA Bond Claims (Ambac) and the National Election, respectively; provided, however, that, such deemed acceleration shall not affect, nor shall it be construed to affect, any issues regarding the existence of a "default" or an "event of default" with respect to the Existing Securities which were pending prior to the Effective Date.

(c)     **Form of Orders:**  The Confirmation Order, the Settlement Order and the Plan are each in form and substance reasonably acceptable to the Oversight Board, AAFAF, COFINA, the PSA Creditors and Bonistas.

(d)     **Confirmation Order:**  The Confirmation Order includes (i) determinations that all of the settlements and compromises contained in the Plan and the Settlement Agreement satisfy applicable standards under sections 365, 1123(b)(3) and 1129 of the Bankruptcy Code and Bankruptcy Rule 9019, to the extent applicable, (ii) the releases, exculpations and injunctions set forth in Article XXX of the Plan and (iii) the provisions set forth in Section 25.1(c) hereof.

24.2   **Waiver of Conditions Precedent to Confirmation:**  To the extent practicable and legally permissible, each of the conditions precedent in Section 24.1 hereof may be waived, in whole or in part, by the Oversight Board, subject to the prior written consent of AAFAF, COFINA, the PSA Creditors and Bonistas, which consent shall not be unreasonably withheld. Any such waiver of a condition precedent may be effected at any time by filing a notice thereof with the Title III Court executed by the Oversight Board.

## ARTICLE XXV

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

25.1 **Conditions Precedent to the Effective Date.** The occurrence of the Effective Date and the substantial consummation of the Plan are subject to satisfaction of the following conditions precedent:

(a) **Satisfaction of Certain Settlement Agreement Conditions:** The satisfaction of the "Conditions to Effective Date" set forth in Section 4 of the Settlement Agreement.

(b) **Fiscal Plan Certification:** The Oversight Board shall have determined that the Plan is consistent with COFINA Fiscal Plan and shall have certified the submission of the Plan, and any modifications to the Plan through the Confirmation Date, in accordance with Sections 104(j) and 313 of PROMESA.

(c) **Entry of the Confirmation Order:** The Clerk of the Title III Court shall have entered the Confirmation Order in accordance with Section 314 of PROMESA and section 1129 of the Bankruptcy Code, made applicable to the Title III Case pursuant to Section 301 of PROMESA, which shall be in form and substance reasonably acceptable to the Oversight Board, AAFAF, COFINA, the PSA Creditors and Bonistas, and the Confirmation Order shall provide for the following:

(i) Authorize COFINA and Reorganized COFINA, as the case may be, to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(ii) Decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(iii) Authorize COFINA and Reorganized COFINA, as the case may be, to (1) make all distributions and issuances as required under the Plan and (2) enter into any agreements and transactions, as set forth in the Plan Supplement;

(iv) Authorize the implementation of the Plan in accordance with its terms.

(v) The COFINA Bonds and the covenants by COFINA Reorganized COFINA and the Commonwealth, as applicable, for the benefit of the holders of the COFINA Bonds and COFINA Parity Bonds (including the Sales Tax, non-impairment, substitution of collateral and tax-exemption covenants set forth in Article XVI hereof), as provided in the New Bond Legislation and the New Bond Indenture, constitute valid, binding, legal and enforceable obligations of COFINA, Reorganized COFINA and the Commonwealth, as applicable, under Puerto Rico and federal law, and the COFINA Portion (and any substitution of New Collateral on the terms and conditions provided for herein) is the property of Reorganized COFINA, free and clear of all liens, claims, encumbrances, and other interests of creditors of COFINA, Reorganized COFINA, the Commonwealth, or any instrumentality of the Commonwealth, other than liens and

claims afforded to holders of COFINA Bonds under the Plan and the Confirmation Order and shall not be "available resources" or "available revenues" of the Government of Puerto Rico, as used in Section 8 of Article VI of the Puerto Rico Constitution or as otherwise used in the Puerto Rico Constitution (whether construed pursuant to the Spanish or English version of the Puerto Rico Constitution);

(vi)     Pursuant to the New Bond Legislation, the COFINA Bonds and COFINA Parity Bonds have been granted and are secured by a statutory first lien as described in Section 16.2 hereof, which Lien shall remain in full force and effect until the COFINA Bonds and COFINA Parity Bonds have been paid or satisfied in full in accordance with their terms;

(vii)    The statutory lien on the COFINA Pledged Taxes as provided in the New Bond Legislation, as applicable, and all other provisions made to pay or secure payment of the COFINA Bonds and COFINA Parity Bonds are valid, binding, legal, and enforceable; including, without limitation, covenants not to impair such property, maintain available tax exemption and provide for the conditions regarding substitution of New Collateral (including, without limitation, the statutory lien thereon) as adequate protection for the property rights conferred under the Plan and the Confirmation Order;

(viii)   New Bond Legislation has been enacted to amend (or repeal and replace) the existing COFINA legislation to, among other things, (i) establish the independent COFINA board of directors referred to in Section 28.3 hereof, (ii) permit the Sales Tax, tax exemption, substitution of New Collateral and non-impairment provisions referred to herein and (iii) grant such other authorizations, if any, which may be required to implement the transactions contemplated herein, including, without limitation, (a) a determination that COFINA is the owner of the COFINA Portion under applicable law, (b) a grant of a statutory Lien on the COFINA Portion to secure the payment obligations with respect to the COFINA Bonds and COFINA Parity Bonds, in whole or in part, or otherwise in accordance with the Additional Bonds Test, (c) enhanced financial reporting, (d) events of default and imposition of certain measures upon an event of default, (e) submission of any disputes under the New Bond Indenture to the jurisdiction of the Title III Court, and (f) other customary terms, conditions, and covenants for similarly structured and supported municipal bonds that are acceptable to the PSA Creditors.  To the extent applicable, the foregoing terms and such other terms as may be agreed upon shall be included in the New Bond Indenture;

(ix)     The transfer of the COFINA Portion (and any substitution of New Collateral on the terms and conditions provided for herein) pursuant to the Plan is appropriate and binding and specifically enforceable against Reorganized COFINA and the Commonwealth, their respective creditors and all parties in interest in accordance with the Plan, including, without limitation, because the transfer of the COFINA Portion created in Reorganized COFINA an ownership interest in such property (and any substitution of New Collateral on the terms and conditions provided for herein) and is a valid provision made to pay or secure payment of the COFINA Bonds;

(x)     The deemed acceleration of the Existing Securities on the Effective Date (i) in connection with  the treatment of Junior COFINA Bond Claims (Assured) and (ii) if requested by Ambac and/or National prior to the commencement of the Disclosure

Statement Hearing, in connection with the Senior COFINA Bond Claims (Ambac) and the National Election, respectively; provided, however, that, such deemed acceleration shall not affect, nor shall it be construed to affect, any issues regarding the existence of a "default" or an "event of default" with respect to the Existing Securities which were pending prior to the Effective Date;

(xi)      The Confirmation Order is full, final, complete, conclusive and binding upon and shall not be subject to collateral attack or other challenge in any court or other forum by (1) COFINA, (2) Reorganized COFINA, (3) the Commonwealth, (4) each Person or Entity asserting claims or other rights against COFINA, the Commonwealth or any of its other instrumentalities, including each holder of a Bond Claim and each holder of a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of bonds issued by COFINA, the Commonwealth, or any of its other instrumentalities or with respect to any trustee, any collateral agent, any indenture trustee, any fiscal agent, and any bank that receives or holds funds related to such bonds, whether or not such claim or other rights of such person or entity are impaired pursuant to the Plan and, if impaired, whether or not such person or entity accepted the Plan, (5) any other Person or Entity, and (6) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, officers, directors, agents, representative, attorneys, beneficiaries or guardians; and

(xii)      The Plan is consistent with the COFINA Fiscal Plan and satisfied Section 314(b)(7) of PROMESA.

(d)      **No Injunction**:  The Confirmation Order shall be effective and not be stayed in any respect.

(e)      **Authorizations**:  All (1) authorizations, consents, regulatory approvals, rulings, or documents, if any, that are necessary to implement and effectuate the Plan, including, without limitation, the New Bond Legislation, have been obtained or enacted and not revoked, and (2) except to the extent expressly provided herein and not inconsistent with any other provision of the Plan, unless otherwise permitted or required by PROMESA or similar authority, completion of any other required legislative or other governmental action required to consummate the Plan, including, without limitation, Commonwealth legislation and court orders, if any, required to (i) ensure that the payment obligations of COFINA cannot in the future be modified or altered without the consent of the requisite holders of COFINA Bonds as set forth in a New Bond Indenture, (ii) ensure the validity, enforceability, liens and priority of the COFINA obligations contemplated by the Plan and (iii) except as otherwise permitted in connection with the substitution of collateral, ensure that the COFINA Pledged Taxes not be modified or altered prior to the satisfaction of COFINA's obligations thereunder.

(f)      **Execution of Documents; Other Actions**:  All actions and all contracts, instruments, settlements, releases and other agreements or documents, including Definitive Documents, necessary to implement the terms and provisions of the Plan, including the Definitive Documents, are effected or executed and delivered, as applicable, in form and substance reasonably satisfactory to the Government Parties, the PSA Creditors and Bonistas, and are in full force and effect.

(g) **Opinions:**  Usual and customary legal opinions for issuances of the type similar to the COFINA Bonds by outside counsel to COFINA covering matters not expressly addressed in the Confirmation Order, in form and substance reasonably acceptable to the PSA Creditors, have been delivered to the applicable trustee or other parties regarding the Definitive Documents and the Plan.

25.2  **Waiver of Conditions Precedent:**  Subject to the provisions of the Plan Support Agreement, the Oversight Board may waive any of the conditions to the Effective Date set forth in Section 25.1 hereof at any time without any notice to any other parties in interest, other than the PSA Creditors and Bonistas, and without any further notice to or action, order, or approval of the Title III Court, and without any formal action other than proceeding to confirm and consummate the Plan.

25.3  **Effect of Non-Occurrence of Conditions to Effective Date:**  If prior to the Effective Date, the Confirmation Order is vacated pursuant to a Final Order, then, except as provided in any order of the Title III Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall:  (a) constitute a waiver or release of any Claims, or Causes of Action; (b) prejudice in any manner the rights of COFINA, the Oversight Board, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by COFINA, the Oversight Board, or any other Entity.

## ARTICLE XXVI

## PROSECUTION AND EXTINGUISHMENT OF CLAIMS HELD BY COFINA

26.1  **Prosecution of Claims:**  Except as settled and released herein, from and after the Effective Date, Reorganized COFINA shall have the exclusive right and power to litigate any Claim or Cause of Action that constituted an Asset of COFINA, including, without limitation, any Avoidance Action, and any other Cause of Action, right to payment, or Claim that may be pending on the Effective Date or instituted by COFINA or Reorganized COFINA thereafter, to a Final Order, and may compromise and settle such claims, without approval of the Title III Court.

## ARTICLE XXVII

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

27.1  **Modification of Plan:**  Subject to (a) Sections 104(j) and 313 of PROMESA and sections 942 and 1127(d) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and (b) the terms and provisions of the Plan Support Agreement, the Oversight Board may alter, amend or modify the Plan or the Exhibits at any time prior to or after the Confirmation Date but prior to the Effective Date.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended or modified so long as the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

27.2 **Revocation or Withdrawal:**

(a)     Subject to the terms and provisions of the Plan Support Agreement, the Plan may be revoked or withdrawn prior to the Confirmation Date by the Oversight Board.

(b)     If the Plan is revoked or withdrawn prior to the Confirmation Date, or if the Plan does not become effective for any reason whatsoever, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claim by COFINA or any other Entity, or to prejudice in any manner the rights of COFINA or any other Entity in any further proceeding involving COFINA.

27.3 **Amendment of Plan Documents:**  From and after the Effective Date, the authority to amend, modify, or supplement the Plan Supplement, the Exhibits to the Plan Supplement and the Exhibits to the Plan, and any document attached to any of the foregoing, shall be as provided in such Plan Supplement, Exhibit to the Plan Supplement, or Exhibit to the Plan and their respective attachments, as the case may be.

27.4 **No Admission of Liability:**

(a)     The submission of this Plan is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Entity with respect to any of the matters addressed in this Plan.

(b)     None of this Plan (including, without limitation, the Exhibits hereto), or any settlement entered, act performed or document executed in connection with this Plan: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim, or any allegation made in any of the Related Actions or of any wrongdoing or liability of any Entity; (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Entity in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (iii) is or may be deemed to be or used as an admission or evidence against Reorganized COFINA, COFINA, or any other Person or Entity with respect to the validity of any Claim.  None of this Plan or any settlement entered, act performed or document executed in connection with this Plan shall be admissible in any proceeding for any purposes, except to carry out the terms of this Plan, and except that, once confirmed, any Entity may file this Plan in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense of counterclaim.

## ARTICLE XXVIII

## CORPORATE GOVERNANCE AND
## MANAGEMENT OF REORGANIZED COFINA

28.1 **Corporate Action:**  On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the directors of COFINA or Reorganized COFINA, including, without limitation, the authorization to issue or cause to be issued the COFINA Bonds, the authorization to enter into the Definitive Documents, the adoption of

62

Reorganized COFINA By-Laws, and the election or appointment, as the case may be, of directors and officers of Reorganized COFINA pursuant to the Plan, as applicable, shall be authorized and approved in all respects, in each case, in accordance with the New Bond Legislation and the new corporate governance documents, as applicable, and without further action by any Person or Entity under any other applicable law, regulation, order, or rule. Other matters provided under the Plan involving the corporate structure of the Reorganized COFINA or corporate action by Reorganized COFINA, as applicable, shall be deemed to have occurred, be authorized, and shall be in effect in accordance with the New Bond Legislation and the new corporate governance documents, as applicable, and without requiring further action by any Person or Entity under any other applicable law, regulation, order, or rule. Without limiting the foregoing, from and after the Confirmation Date, COFINA and Reorganized COFINA shall take any and all actions deemed appropriate in order to consummate the transactions contemplated herein in accordance with the New Bond Legislation and the new corporate governance documents, as applicable.

28.2 **Amendment of By-Laws:** The by-laws of Reorganized COFINA shall be amended as of the Effective Date to provide substantially as set forth in the Reorganized COFINA By-Laws.

28.3 **Directors of the Reorganized COFINA:** On the Effective Date, and pursuant to the terms and provisions of Section 25.1(c) hereof, the Reorganized COFINA By-Laws shall provide that the board of directors of Reorganized COFINA shall consist of three (3) persons appointed by the Governor of the Commonwealth all of whom shall meet the independence and qualification standards set forth in the Definitive Documents, including, without limitation, that the independent director may not be an officer, employee, or director of the government of Puerto Rico or instrumentality thereof (other than COFINA), must have executive experience in finance or with respect to securities similar to the COFINA Bonds and shall otherwise be qualified to serve on the board of directors. The initial directors shall be disclosed prior to the Confirmation Hearing. In the event that, during the period from the Confirmation Hearing up to and including the Effective Date, circumstances require the substitution of one (1) or more persons selected to serve on the boards of directors of Reorganized COFINA, the Governor of the Commonwealth shall choose a substitute consistent with the independence and qualification standards set forth above and COFINA shall file a notice thereof with the Title III Court and, for purposes of section 1129 of the Bankruptcy Code, any such replacement person, designated in accordance with the requirements of the immediately preceding sentence, shall be deemed to have been selected and disclosed prior to the Confirmation Hearing. Notwithstanding the foregoing, (a) the holders of Senior COFINA Bond Claims, Ambac and National (in consultation with the holders of Junior COFINA Bond Claims and Assured) may collectively submit up to three (3) recommendations for the Governor's consideration regarding the initial appointment of independent directors; provided, however, that the Governor shall be under no obligation to appoint any such recommended persons as directors and (b) to the extent permitted by applicable law, COFINA's corporate governance documents shall be amended to be consistent with all of the foregoing. COFINA's amended corporate governance documents shall provide that all board members shall owe a fiduciary duty to COFINA as consistent with Puerto Rico law and its Constitution.

28.4 **Officers of Reorganized COFINA:** To the extent applicable, the board of directors of Reorganized COFINA shall elect officers of Reorganized COFINA as of or after the Effective Date.

104749481v5

28.5    **Structure for Collection and Application of COFINA Pledged Taxes:**  The
COFINA Bonds shall be issued by Reorganized COFINA pursuant to the New Bond Legislation
and the New Bond Indenture, which entity shall be a "bankruptcy remote," single purpose,
municipal agency, public corporation or entity to the fullest extent permitted under applicable
law, with no operations or liabilities other than as set forth in the Plan and as reflected in the
Term Sheet.  Reorganized COFINA shall be authorized, but not required, to enter into one or
more agreements, including, without limitation, the New Banking Services Agreement,
providing for the collection and deposit of the COFINA Pledged Taxes, which agreement or
agreements may provide, among other things, that the COFINA Portion, net of COFINA
operating expenses, shall be (a) promptly after collection, kept in segregated bank accounts
maintained in one or more mainland U.S. banks and in the name of the trustee appointed under
the New Bond Indenture and (b) designed to ensure that COFINA is the unconditional owner of
the COFINA Portion, now existing or hereafter collected, under Puerto Rico and other applicable
law.

## ARTICLE XXIX

## RETENTION OF JURISDICTION

29.1    **Retention of Jurisdiction:**  The Title III Court shall retain and have exclusive
jurisdiction over any matter arising under PROMESA, arising in or related to, the Title III Case
and the Plan, or that relates to the following:

(a)    to allow, disallow, determine, liquidate, classify, estimate, or establish the
priority, secured or unsecured status, or amount of any Claim, including, without the limitation,
the resolution of any request for payment of any Claim and the resolution of any and all
objections to the secured or unsecured status, priority, amount, or allowance of Claims;

(b)    to resolve any matters related to Executory Contracts or Unexpired
Leases, including, without limitation, (a) the assumption or assumption and assignment of any
Executory Contract or Unexpired Lease to which COFINA is party or with respect to which
COFINA may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising
therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential
contractual obligation under any Executory Contract or Unexpired Lease that is assumed or
assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was
executory or expired;

(c)    to ensure that distributions to holders of Allowed Claims are accomplished
pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating
to distributions under the Plan;

(d)    to adjudicate, decide, or resolve any motions, adversary proceedings,
contested or litigated matters, and any other matters, and grant or deny any applications
involving COFINA or Reorganized COFINA that may be pending on the Effective Date or
brought thereafter;

(e)    to decide and resolve all matters related to the granting and denying, in
whole or in part, any applications for allowance of compensation or reimbursement of expenses

104749481v5

to Professionals authorized pursuant to PROMESA, the Plan or orders entered by the Title III Court;

(f)  to enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Title III Case and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, including, without limitation, orders pertaining to the substitution of New Collateral for COFINA Pledged Taxes to secure repayment of the COFINA Bonds and COFINA Parity Bonds;

(g)  to resolve any cases, controversies, suits, disputes or other challenges of any kind that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Confirmation Order, or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(h)  to approve any modification of the Plan or approve any modification of the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any order, the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or enter any order in aid of confirmation pursuant to sections 945 and 1142(b) of the Bankruptcy Code, in such manner as may be necessary or appropriate to consummate the Plan;

(i)  to adjudicate, decide or resolve any matters relating to COFINA's compliance with the Plan and the Confirmation Order consistent with section 945 of the Bankruptcy Code;

(j)  to determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order, in each case, solely to the extent that any such document does not provide for another court or courts to have exclusive jurisdiction;

(k)  to enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan or the Confirmation Order;

(l)  to adjudicate any and all controversies, suits or issues that may arise regarding the validity of any actions taken by any Entity pursuant to or in furtherance of the Plan or Confirmation Order, including, without limitation, issuance of the COFINA Bonds or COFINA Parity Bonds, and enter any necessary or appropriate orders or relief in connection with such adjudication; to determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Settlement Agreement, or any contract, instrument, release, or other agreement or document created in connection with the Plan, in each case, solely to the extent that any such document does not provide for another court or courts to have exclusive jurisdiction;

104749481v5

(m)     to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(n)     to enter an order or final decree concluding or closing the Title III Case pursuant to section 945(b) of the Bankruptcy Code;

(o)     to enforce and clarify any orders previously entered by the District Court in the Title III Case;

(p)     in connection with the Interpleader Action, to hear and determine any and all non-released and non-dismissed Claims and Causes of Action asserted or that could have been asserted by BNYM against Ambac or Whitebox in the Interpleader Action or the Ambac Action and the Whitebox Actions, respectively, and by Ambac and Whitebox against BNYM for gross negligence, willful misconduct or intentional fraud in the Interpleader Action or the Ambac Action and the Whitebox Actions, respectively; and

(q)     to hear any other matter over which the Title III Court has jurisdiction under Sections 305 and 306 of PROMESA.

## ARTICLE XXX

## MISCELLANEOUS PROVISIONS

30.1   **Title to Assets:**  Except as provided in the Confirmation Order, on the Effective Date, title to all Assets and properties of COFINA encompassed by the Plan shall vest in Reorganized COFINA, free and clear of all Liens (except the Liens securing repayment of the COFINA Bonds and the COFINA Parity Bonds), and the Confirmation Order shall be a judicial determination of discharge of the liabilities of COFINA except as provided in the Plan.

30.2   **Discharge and Release of Claims and Causes of Action:**

(a)     Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against COFINA that arose, in whole or in part, prior to the Effective Date, relating to COFINA or Reorganized COFINA or any of its Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action.  Upon the Effective Date, COFINA and Reorganized COFINA shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan.

(b)     Except as provided in Section 30.11 of the Plan or the Confirmation Order, all Entities shall be precluded from asserting any and all Claims against COFINA and

104749481v5

Reorganized COFINA, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to COFINA or Reorganized COFINA or any of their respective Assets and property, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities.  In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against COFINA pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against COFINA or Reorganized COFINA and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability.  As of the Effective Date, and in consideration for the value provided under the Plan and the Settlement Agreement, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against COFINA and Reorganized COFINA, and their respective Assets and property and all such Claims.

(c)     Notwithstanding any other provisions of this Section 30.2, in accordance with the provisions of the Plan Support Agreement, each of the PSA Creditors and their respective Related Persons, solely in their capacity as Creditors of COFINA, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims or any of the claims or causes of action asserted or which could have been asserted in the Actions, (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by this Section 30.2(c) and (iii) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against BNYM and each of its Related Persons from any and all Claims and causes of action arising from or related to the Existing Securities, the Bond Claims and the Bond Resolution; provided, however, that the release provided pursuant to clause (iii) above shall not extend to any and all Claims and Causes of Action for gross negligence, willful misconduct and intentional fraud asserted or which can be asserted by Ambac or Whitebox in the Ambac Action and Whitebox Actions, respectively.

(d)     On the Effective Date, and in consideration of the Commonwealth-COFINA Dispute Settlement and the compromise and settlement of Bond Claims pursuant to the terms and provisions of the Plan (including, without limitation, the distributions to be made on account of "Senior" and "First Subordinate" Existing Securities), the resolution of the Interpleader Action and the terms and provisions of Section 19.5 hereof regarding the Ambac Action and the Whitebox Actions, to the fullest extent permissible under applicable law, BNYM and each holder and beneficial holder of Existing Securities and their transferrees, successors or assigns shall be released from liability for all Claims and Causes of Action arising from or related to the payment by BNYM to beneficial holders of Existing Securities of regularly scheduled payments of principal and interest; provided, however, that the foregoing release of BNYM shall not extend, nor shall it be construed to extend, to acts of gross negligence, intentional fraud, or willful misconduct of BNYM, including, without limitation, any acts which have been asserted, or which could have been asserted in the Ambac Action and the Whitebox Actions.

(e)      On the Effective Date, (i) the COFINA Agent and its agents, attorneys, affiliates, advisors, consultants and attorneys, solely in such capacities, and (ii) in the event that the Creditors' Committee and the Commonwealth Agent (1) do not object to approval of the Settlement Motion, approval of the Disclosure Statement and confirmation of the Plan and do not file the Motion to Enforce or (2) subject to the provisions of decretal paragraph 4 of the Abeyance Stipulation, file the Motion to Enforce or an objection to approval of the merits of the Settlement Motion, approval of the Disclosure Statement and confirmation of the Plan by the Title III Court, and unless the Title III Court determines that any such objection and the Motion to Enforce was filed in bad faith, the Commonwealth Agent and the Creditors' Committee, its members and each of their respective current and former officers, directors, agents, attorneys, employees, affiliates, advisors,  and consultants, solely in such capacities (collectively, the "Commonwealth Agent Releasees"), shall be released from liability for all Claims and Causes of Action (as if such Causes of Action were against the Commonwealth Agent Releasees) with respect to the Adversary Proceeding, the Agreement in Principle, the Settlement Agreement, the Settlement Motion and the Settlement Order.

(f)      On the Effective Date, and in consideration of the Commonwealth-COFINA Dispute Settlement and the resolution of the Interpleader Action, to the fullest extent permissible under applicable law, the Commonwealth shall be released from all liability from all Claims and Causes of Action held by any Creditor, solely in such capacity, arising from or relating to the relationship of the Commonwealth and COFINA, including, without limitation, any Claim or Cause of Action arising from or relating to the commencement of the Adversary Proceeding and pendency and the compromise and settlement of the Interpleader Action and the allocation of funds in accordance with Section 2.1 of the Plan.

30.3      **Injunction on Claims:**  Except as otherwise expressly provided in Section 30.11 of the Plan, the Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 30.2 hereof or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 30.2 hereof are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.  Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.

30.4      **Integral to Plan:**  Each of the discharge, injunction, exculpation and release provisions provided in this Article XXX is an integral part of the Plan and is essential to its

implementation.  Each of the Released Parties shall have the right to independently seek the enforcement of the discharge, injunction and release provisions set forth in this Article XXX.

30.5    **Releases by COFINA and Reorganized COFINA**:  Except as otherwise expressly provided in the Plan, the Confirmation Order, or the Settlement Agreement, on the Effective Date, and for good and valuable consideration, each of COFINA and Reorganized COFINA, the Disbursing Agent and each of COFINA's and Reorganized COFINA's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that COFINA, Reorganized COFINA, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to COFINA taking place or existing on or prior to the Effective Date, and/or any Claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged or that could have been alleged in the Actions, the Related Actions, including, without limitation, any such Claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees.

30.6    **Injunction Related to Releases**:  As of the Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 30.5 of the Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims:  (i) commencing, conducing or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Section 30.5 hereof; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or its inconsistent with the provisions of the Plan or the Confirmation Order.

30.7    **Exculpation**:

(a)    **Government Parties**:  The Oversight Board, the Commonwealth, AAFAF, COFINA and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the Effective Date, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, the Settlement Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan and the Settlement Agreement; provided, however, that the foregoing provisions of this Section 30.7 shall not affect the liability of any Entity that otherwise would result from any such act or

69

omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct. Nothing in the foregoing provisions of this Section 30.7(a) shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the Plan.

(b) **Monoline Insurers:** Each of Ambac, Assured and National and their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken consistent with the Plan in connection with the formulation, preparation, dissemination, implementation, acceptance, confirmation or approval of the Plan, including, without limitation, in connection with the structure of the Trusts, commutation, the treatment of Senior COFINA Bond Claims (Ambac), the treatment of Junior COFINA Bond Claims (Assured), the National Election, the voting procedures, the election procedures, and any release of obligations under the applicable Insurance Policies; provided, however, that, notwithstanding anything contained herein to the contrary, the terms and provisions of the Plan shall not, and shall not be construed to, release or exculpate: (1) with respect to any beneficial holder of the Ambac Insured Bonds that receives Ambac Certificates in accordance with the Plan, any claim against Ambac with respect to Ambac's payment obligations under the Ambac Insurance Policy (which claim shall only be asserted by the trustee of the Ambac Trust), as adjusted to account for any distributions from the Ambac Trust (and any claims or defenses that Ambac may have against a beneficial holder of such Ambac Insured Bonds with respect to Ambac's obligations under the Ambac Insurance Policy); (2) with respect to any beneficial holder of National Insured Bonds that received National Certificates in accordance with the Plan, any claim against National with respect to National's obligations under the National Insurance Policies (which claim shall be asserted in accordance with the terms of the National Insurance Policies), as adjusted to account for any distributions from the National Trust (and any claims that National may have against a beneficial holder of such National Insured Bonds with respect to National's obligations to such beneficial holder under the National Insurance Policies); or (3) with respect to any beneficial holder of Assured Insured Bonds, any payment obligation under the applicable Assured Insurance Policy in accordance with its terms solely to the extent of any failure by Assured to pay the applicable Acceleration Price in full (or any claims that Assured may have against a beneficial holder of Assured Insured Bonds with respect to Assured's obligations under the Assured Insurance Policies).

(c) **PSA Creditors and Bonistas:** Each of the PSA Creditors and Bonistas, solely in its capacity as a party to the Plan Support Agreement and a Creditor, as applicable, from the Petition Date up to and including the Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, the Settlement Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transaction set forth in the Plan and the Settlement Agreement; provided, however, that the foregoing provisions of this Section 30.7(c) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

70

(d) **Agents:** Each of (i) the COFINA Agent and (ii) in the event that the Creditors' Committee and the Commonwealth Agent (1) do not object to approval of the Settlement Motion, approval of the Disclosure Statement and confirmation of the Plan and do not file the Motion to Enforce or (2) subject to the provisions of decretal paragraph 4 of the Abeyance Stipulation, file the Motion to Enforce or an objection to approval of the merits of the Settlement Motion, approval of the Disclosure Statement and confirmation of the Plan by the Title III Court, and unless the Title III Court determines that any such objection and the Motion to Enforce was filed in bad faith, the Commonwealth Agent, solely in its capacity as agent of the Oversight Board with respect to the Commonwealth, to litigate and/or settle the Commonwealth-COFINA Dispute, respectively, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the Commonwealth-COFINA Dispute, including, without limitation, the Commonwealth-COFINA Dispute Order, the Adversary Proceeding, the Commonwealth-COFINA Dispute Settlement, the Settlement Agreement, the Settlement Motion and the Settlement Order.

30.8 **Appointments Related Litigation:** Notwithstanding anything contained herein to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation subsequent to entry of the Settlement Order and the Confirmation Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the Plan and documents and instruments related hereto, all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the Plan, consent and agree that such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the Plan, the Settlement Agreement, the Confirmation Order and the Settlement Order, including, without limitation, the compromise and settlement of the Commonwealth-COFINA Dispute and the releases, exculpations and injunctions provided pursuant to Article XXX of the Plan.

30.9 **Bar Order:** To the limited extent provided in the Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the Plan, the negotiation and consummation of the Settlement Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Related Actions, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Related Actions, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related Actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).

30.10 **No Waiver:** Notwithstanding anything to the contrary contained in Sections 30.5 and 30.6 hereof, the releases and injunctions set forth in such sections shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Oversight Board, AAFAF,

Reorganized COFINA or the PSA Creditors to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by any of them.

30.11 **Supplemental Injunction:** Notwithstanding anything contained herein to the contrary, except to the limited extent provided in the Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to any Claim against COFINA, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the Effective Date (including prior to the Petition Date), including, but not limited to:

(a) Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b) Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(c) Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(d) Except as otherwise expressly provided in the Plan, the Confirmation Order, or the Settlement Agreement, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

(e) Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Confirmation Order, or the Settlement Agreement relating to such Released Claim; provided, however, that the Debtors' compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

30.12 **Preservation of Certain Claims and Causes of Action:** Notwithstanding anything contained in the Plan to the contrary, including, without limitation, the provisions of this Article XXX, Ambac and Whitebox shall retain, and shall not be enjoined or otherwise barred from pursuing, any and all claims and causes of action, whether sounding in contract or tort, solely for gross negligence, willful misconduct or intentional fraud that were asserted, or could have been asserted, against BNYM in the Ambac Action, the Whitebox Actions or the Interpleader Action, and BNYM shall retain, and shall not be enjoined or otherwise barred from pursuing, any and all claims and causes of action and asserting any rights and defenses against Ambac and Whitebox arising from or related to the Bond Resolution.

72

30.13 **Post-Effective Date Fees and Expenses:** From and after the Effective Date, Reorganized COFINA shall, in the ordinary course of business and without the necessity for any approval by the Title III Court, retain professionals and pay the reasonable professional fees and expenses incurred by Reorganized COFINA related to implementation and consummation of the Plan without further approval from Title III Court.

30.14 **Securities Act Exemption:** Pursuant to section 1145 of the Bankruptcy Code (other than an underwriter as defined in section 1145(b) of the Bankruptcy Code) and/or Section 3(a)(2) of the Securities Act, the offering, issuance, and distribution of the COFINA Bonds, Ambac Certificates and National Certificates pursuant to the terms hereof shall be exempt from registration under the Securities Act and any state or local law requiring registration for the offer, issuance or distribution of securities, including, but not limited to, the registration requirements of Section 5 of the Securities Act and any other applicable state or federal law requiring registration and/or prospectus delivery or qualification prior to the offering, issuance, distribution, or sale of securities.

30.15 **Severability:** Subject to the terms and provisions of the Plan Support Agreement, if, prior to the Confirmation Date, any term or provision of the Plan shall be held by the Title III Court to be invalid, void or unenforceable, the Title III Court shall, with the consent of the Government Parties, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

30.16 **Governing Law:** Except to the extent that other federal law is applicable, or to the extent that an exhibit hereto or any document to be entered into in connection herewith provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, PROMESA (including the provisions of the Bankruptcy Code made applicable under Section 301 of PROMESA) and, to the extent not inconsistent therewith, the laws of the Commonwealth of Puerto Rico giving effect to principles of conflicts of laws.

30.17 **Closing Case:** The Oversight Board shall, promptly upon the full administration of the Title III Case, file with the Title III Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Title III Court. Notwithstanding the closing of the Title III Case, the Title III Court shall retain jurisdiction of all of the matters set forth in Article XXIX of the Plan.

30.18 **Section Headings:** The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

30.19 **Inconsistencies:** To the extent of any inconsistency between (a) the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern and (b) the terms and provisions of the Plan and the terms and provisions of the Confirmation Order, the terms and provisions of the Confirmation Order shall govern and be deemed a modification of the Plan; provided, however, that under no circumstances shall the Confirmation Order modify the economic terms set forth herein.

30.20  **Document Retention:**  From and after the Effective Date, COFINA may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by COFINA.

30.21  **Immediate Binding Effect:**  Pursuant to section 944(a) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding on any and all holders of Claims and their respective successors and assigns, whether or not the Claim of any such holder is impaired under the Plan and whether or not such Holder has accepted the Plan.  The releases, exculpations, and settlements effected under the Plan will be operative, and subject to enforcement by the Title III Court, from and after the Effective Date, including pursuant to the injunctive provisions of the Plan.  Once approved, the compromises and settlements embodied in the Plan, along with the treatment of any associated Allowed Claims, shall not be subject to collateral attack or other challenge by any Entity in any court or other forum.  As such, any Entity that opposes the terms of any compromise and settlement set forth in the Plan must (a) challenge such compromise and settlement prior to confirmation of the Plan and (b) demonstrate appropriate standing to object and that the subject compromise and settlement does not meet the standards governing settlements under Bankruptcy Rule 9019 and other applicable law.

30.22  **Additional Documents:**  On or before the Effective Date, the Oversight Board may file with Clerk of the Title III Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. COFINA and all holders of Claims receiving distributions pursuant to the Plan and all other parties in interest, from time to time, may prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

30.23  **Reservation of Rights:**  Except as expressly set forth herein, the Plan shall have no force or effect unless the Title III Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by COFINA with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of COFINA with respect to the holders of Claims prior to the Effective Date.  Except as expressly set forth herein, the rights and powers of the government of Puerto Rico under the Puerto Rico Constitution and PROMESA, including, without limitation, under Sections 303 and 305 of PROMESA, are expressly reserved (subject to any limitation thereon imposed by the Puerto Rico Constitution, the U.S. Constitution or PROMESA), and nothing herein shall be deemed a waiver of any such rights and powers.

30.24  **Termination of the Oversight Board:**  Upon the termination or dissolution of the Oversight Board pursuant to Section 209 of PROMESA or otherwise, all rights, powers and authorities of the Oversight Board to implement and perform under the Plan shall vest in COFINA or Reorganized COFINA, as applicable, without the need for any notice to, or action by, the Title III Court, the Oversight Board, COFINA, Reorganized COFINA or any other Entity.  Neither COFINA nor Reorganized COFINA shall be, or be deemed to be, a successor to the Oversight Board by reason of any theory of law or equity, and neither COFINA nor Reorganized COFINA shall assume or be responsible for any liability or obligation of the Oversight Board of any kind or nature whatsoever.

30.25 **Successors and Assigns:** Except as expressly provided otherwise in the Plan, the rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

30.26 **Notices:** All notices, requests to, demands or other document(s) required by the Plan or the Confirmation Order to be served on or delivered to the Oversight Board, COFINA or AAFAF to be effective shall be in writing including by facsimile transmission and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| | |
|---|---|
| If to the Oversight Board, to: | Financial Oversight and Management Board for Puerto Rico |
| | 250 Muñoz Rivera Ave, Suite 800 |
| | San Juan, PR 00918-1813 |
| | Attn: Natalie A. Jaresko, Executive Director |

– with a copy to –

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Attn: Martin J. Bienenstock, Esq.
      Brian S. Rosen, Esq.
Tel: (212) 969-3000
Fax: (212) 969-2900

– with a copy to –

| | |
|---|---|
| If to COFINA, to: | Puerto Rico Sales Tax Financing Corporation |
| | c/o Fiscal Agency and Financial Advisory Authority |
| | Roberto Sánchez Vilella (Minillas) Government Center |
| | De Diego Ave. Stop 22 |
| | San Juan, Puerto Rico 00907 |
| | Attn: Christian Sobrino Vega, Executive Director |

– with a copy to –

104749481v5

O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Attn:    John Rapisardi, Esq.
         Suzzane Uhland, Esq.
Tel:    (212) 326-2000
Fax:    (212) 326-2061

If to AAFAF, to:              Fiscal Agency and Financial Advisory Authority
                              Roberto Sánchez Vilella (Minillas) Government Center
                              De Diego Ave. Stop 22
                              San Juan, Puerto Rico 00907
                              Attn:    Christian Sobrino Vega, Executive Director

                              – with a copy to –

                              O'MELVENY & MYERS LLP
                              Seven Times Square
                              New York, NY 10036
                              Attn:    John Rapisardi, Esq.
                                       Suzzane Uhland, Esq.
                              Tel:    (212) 326-2000
                              Fax:    (212) 326-2061

30.27  **Term of Injunctions or Stays:**  Unless otherwise provided herein or in the
Confirmation Order, all injunctions or stays in effect in the Title III Case (pursuant to sections
105, 362, or 922 of the Bankruptcy Code or any order of the Title III Court) and existing on the
Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation
Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays
contained in the Plan or the Confirmation Order shall remain in full force and effect in
accordance with their terms.

30.28  **Entire Agreement:**  Except as otherwise indicated, the Plan supersedes all
previous and contemporaneous negotiations, promises, covenants, agreements, understandings,
and representations on such subjects, all of which have become merged and integrated into the
Plan.

30.29  **Plan Supplement:**  All documents included in the Plan Supplement are
incorporated into and are a part of the Plan as if set forth in full in the Plan.  Upon the filing of
the Plan Supplement with the Clerk of the Title III Court, copies of the documents contained
therein shall be made available upon written request to the Oversight Board's counsel at the
address above or by downloading such documents from [https://cases.primeclerk.com/
puertorico/] or the Title III Court's website, available via PACER.  Unless otherwise ordered by
the Title III Court, to the extent any document in the Plan Supplement is inconsistent with the
terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan
that does not constitute the Plan Supplement shall control; provided, however, that, with respect
to matters governed by the New Bond Indenture, to the extent that any provisions of the Plan are
inconsistent with the New Bond Indenture, the New Bond Indenture shall control.

Dated: San Juan, Puerto Rico
      January 9, 2019

                                          PUERTO RICO SALES TAX FINANCING
                                          CORPORATION, by and through the Financial
                                          Oversight and Management Board for Puerto Rico
                                          as its representative

                                          By:     /s/ Natalie A. Jaresko
                                          Name:   Natalie A. Jaresko
                                          Title:    Executive Director

104749481v5

<u>**EXHIBIT A**</u>

Schedule of Amortization of COFINA Bonds

A-1

## Exhibit A: Coupons and Maturity Dates

### Current Interest Bond Terms

| (7/1) Year | Par | Cpn/Yld |
|---|---|---|
| Total/Avg | $9,119,420,000.00 | 4.792% |
| 2034 | 375,090,000.00 | 4.500% |
| 2040** | 2,996,115,000.00 | 4.550% |
| 2053 | 1,451,135,000.00 | 4.750% |
| 2058 | 4,297,080,000.00 | 5.000% |

Call Provisions: 2034 Term - Par call commencing 2025 (7-year call)
Call Provisions: 2040, 2053 & 2058 Terms - Par call commencing 2028 (10-year call)

### Capital Appreciation Bond Terms

| (7/1) Year | Yield | Initial Price | Initial Value | Accreted Value | Future Value |
|---|---|---|---|---|---|
| Total/Avg | 5.048% | 27.010 | $2,901,901,817.35 | $9,638,250,976.35 | $10,743,910,000.00 |
| 2024 | 4.250% | 77.971 | 166,818,954.50 | 201,537,898.10 | 213,950,000.00 |
| 2027 | 4.375% | 67.983 | 246,346,597.95 | 348,676,228.60 | 362,365,000.00 |
| 2029 | 4.375% | 62.346 | 220,190,485.50 | 346,050,471.60 | 353,175,000.00 |
| 2031 | 4.500% | 56.281 | 256,162,971.50 | 445,599,082.70 | 455,150,000.00 |
| 2033 | 4.500% | 51.488 | 263,752,428.80 | 500,306,662.00 | 512,260,000.00 |
| 2046 | 5.375% | 22.747 | 1,108,991,315.10 | 4,252,407,026.55 | 4,875,330,000.00 |
| 2051 | 5.625% | 16.105 | 639,639,064.00 | 3,543,673,606.80 | 3,971,680,000.00 |

Call Provisions: 2024 & 2027 Term - non-call; 2029 Term - Callable 103% Accreted Value ("AV") 2028; 100% AV 2029
2031 Term - Callable at 105% AV 2028; 103% AV 2029-2030; 100% AV 2031
2033 Term - Callable at 107.5% AV 2028-2030; 105% AV 2031; 103% AV 2032, 100% AV 2033
Call Provisions: 2046 & 2051 Terms - Callable at 107.5% AV 2028-32, 105% AV 2033-37, 103% AV 2038-42, 100% AV 2043-Final Maturity
All Capital Appreciation Bonds: Sinking Fund Redemptions would be 100% of AV

### Current Interest Bond Sinking Fund Schedule

| (7/1) Year | Yr# | CPN | Par | Term Par |
|---|---|---|---|---|
| Total | | | $9,119,420,000.00 | $9,119,420,000.00 |
| 2019 | 1 | - | - | - |
| 2020 | 2 | | - | - |
| 2021 | 3 | - | - | - |
| 2022 | 4 | - | - | - |
| 2023 | 5 | - | - | - |
| 2024 | 6 | - | - | - |
| 2025 | 7 | - | - | - |
| 2026 | 8 | - | - | - |
| 2027 | 9 | - | - | - |
| 2028 | 10 | - | - | - |
| 2029 | 11 | - | - | - |
| 2030 | 12 | - | - | - |
| 2031 | 13 | - | - | - |
| 2032 | 14 | - | - | - |
| 2033 | 15 | 4.500% | 52,970,000.00 | - |
| 2034 | 16 | 4.500% | 322,120,000.00 | 375,090,000.00 |
| 2035 | 17 | 4.550% | 366,885,000.00 | - |
| 2036 | 18 | 4.550% | 415,060,000.00 | - |
| 2037 | 19 | 4.550% | 466,685,000.00 | - |
| 2038 | 20 | 4.550% | 521,965,000.00 | - |
| 2039 | 21 | 4.550% | 581,125,000.00 | - |
| 2040 | 22 | 4.550% | 644,395,000.00 | 2,996,115,000.00 |
| 2041 | 23 | - | - | - |
| 2042 | 24 | - | - | - |
| 2043 | 25 | - | - | - |
| 2044 | 26 | - | - | - |
| 2045 | 27 | - | - | - |
| 2046 | 28 | - | - | - |
| 2047 | 29 | - | - | - |
| 2048 | 30 | - | - | - |
| 2049 | 31 | - | - | - |
| 2050 | 32 | - | - | - |
| 2051 | 33 | - | - | - |
| 2052 | 34 | 4.750% | 708,735,000.00 | - |
| 2053 | 35 | 4.750% | 742,400,000.00 | 1,451,135,000.00 |
| 2054 | 36 | 5.000% | 777,665,000.00 | - |
| 2055 | 37 | 5.000% | 816,545,000.00 | - |
| 2056 | 38 | 5.000% | 857,375,000.00 | - |
| 2057 | 39 | 5.000% | 900,240,000.00 | - |
| 2058 | 40 | 5.000% | 945,255,000.00 | 4,297,080,000.00 |

### Capital Appreciation Bond Sinking Fund Schedule

| (7/1) Year | Yr# | Yld. | Initial Price | Initial Value | Accreted Value | Future Value Redemption |
|---|---|---|---|---|---|---|
| Total | | | | $2,901,901,817.35 | $9,638,250,976.35 | $10,743,910,000.00 |
| 2019 | 1 | 4.250% | 77.971 | $18,865,083.45 | $19,606,660.20 | 24,195,000.00 |
| 2020 | 2 | | | - | - | - |
| 2021 | 3 | 4.250% | 77.971 | 15,461,649.30 | 17,479,550.10 | 19,830,000.00 |
| 2022 | 4 | 4.250% | 77.971 | 30,244,950.90 | 35,660,810.70 | 38,790,000.00 |
| 2023 | 5 | 4.250% | 77.971 | 44,373,296.10 | 54,565,877.10 | 56,910,000.00 |
| 2024 | 6 | 4.250% | 77.971 | 57,873,974.75 | 74,225,000.00 | 74,225,000.00 |
| 2025 | 7 | 4.375% | 67.983 | 70,182,250.05 | 94,674,753.80 | 103,235,000.00 |
| 2026 | 8 | 4.375% | 67.983 | 82,307,018.10 | 115,941,474.80 | 121,070,000.00 |
| 2027 | 9 | 4.375% | 67.983 | 93,857,329.80 | 138,060,000.00 | 138,060,000.00 |
| 2028 | 10 | 4.375% | 62.346 | 104,859,737.40 | 161,065,471.60 | 168,190,000.00 |
| 2029 | 11 | 4.375% | 62.346 | 115,330,748.10 | 184,985,000.00 | 184,985,000.00 |
| 2030 | 12 | 4.500% | 56.281 | 123,486,142.10 | 209,859,082.70 | 219,410,000.00 |
| 2031 | 13 | 4.500% | 56.281 | 132,676,829.40 | 235,740,000.00 | 235,740,000.00 |
| 2032 | 14 | 4.500% | 51.488 | 141,386,048.00 | 262,646,662.00 | 274,600,000.00 |
| 2033 | 15 | 4.500% | 51.488 | 122,366,380.80 | 237,660,000.00 | 237,660,000.00 |
| 2034 | 16 | | | - | - | - |
| 2035 | 17 | | | - | - | - |
| 2036 | 18 | | | - | - | - |
| 2037 | 19 | | | - | - | - |
| 2038 | 20 | | | - | - | - |
| 2039 | 21 | | | - | - | - |
| 2040 | 22 | | | - | - | - |
| 2041 | 23 | 5.375% | 22.747 | 210,176,593.25 | 708,735,023.75 | 923,975,000.00 |
| 2042 | 24 | 5.375% | 22.747 | 199,320,587.50 | 708,737,287.50 | 876,250,000.00 |
| 2043 | 25 | 5.375% | 22.747 | 189,023,020.60 | 708,734,532.20 | 830,980,000.00 |
| 2044 | 26 | 5.375% | 22.747 | 179,257,733.50 | 708,732,767.50 | 788,050,000.00 |
| 2045 | 27 | 5.375% | 22.747 | 169,997,429.80 | 708,732,415.60 | 747,340,000.00 |
| 2046 | 28 | 5.375% | 22.747 | 161,215,950.45 | 708,735,000.00 | 708,735,000.00 |
| 2047 | 29 | 5.625% | 16.105 | 142,499,455.75 | 708,736,815.00 | 884,815,000.00 |
| 2048 | 30 | 5.625% | 16.105 | 134,809,318.25 | 708,734,564.85 | 837,065,000.00 |
| 2049 | 31 | 5.625% | 16.105 | 127,535,495.00 | 708,734,662.00 | 791,900,000.00 |
| 2050 | 32 | 5.625% | 16.105 | 120,653,023.25 | 708,732,564.95 | 749,165,000.00 |
| 2051 | 33 | 5.625% | 16.105 | 114,141,771.75 | 708,735,000.00 | 708,735,000.00 |
| 2052 | 34 | | | - | - | - |
| 2053 | 35 | | | - | - | - |
| 2054 | 36 | | | - | - | - |
| 2055 | 37 | | | - | - | - |
| 2056 | 38 | | | - | - | - |
| 2057 | 39 | | | - | - | - |
| 2058 | 40 | | | - | - | - |

*Due to rounding of bonds into $5,000 denominations per term, debt service on Bonds will be slightly below the 53.65% PSTBA.
**Current Interest Bonds may include both Tax-Exempt and Taxable Bonds.

2

104749481v5

Case 17-03283-LTS   Doc#5048-2   Filed 02/04/19   Entered 02/04/19 17:32:54   Desc:
Exhibit M   Page 160 of 164

## **Exhibit B**

## **Form of Notice**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                      Debtors.[7] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>                      Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

## NOTICE OF (A) ENTRY OF ORDER CONFIRMING
## THE THIRD AMENDED TITLE III PLAN OF ADJUSTMENT OF
## PUERTO RICO SALES TAX FINANCING CORPORATION PURSUANT TO
## TITLE III OF PROMESA AND (B) OCCURRENCE OF THE EFFECTIVE DATE

**TO CREDITORS AND OTHER PARTIES IN INTEREST:**

---

[7] The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

PLEASE TAKE NOTICE that, pursuant to an order, dated February 4th, 2019 (the "Confirmation Order"), the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA (as modified, the "Plan"), of the Puerto Rico Sales Tax Financing Corporation ("COFINA") was confirmed by the United States District Court for the District of Puerto Rico (the "Court"). Unless otherwise defined in this Notice, capitalized terms used herein shall have the meanings ascribed to them in the Plan and the Confirmation Order.

PLEASE TAKE FURTHER NOTICE that the Effective Date of the Plan occurred on [___], 2019 and the Plan was substantially consummated.

PLEASE TAKE FURTHER NOTICE that any party in interest wishing to obtain copies of the Confirmation Order, the Plan, and related documents should contact Prime Clerk LLC, by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoballots@primeclerk.com, or may view such documents by accessing either https://cases.primeclerk.com/puertorico/ or the Court's website, https://www.prd.uscourts.gov/. Please note that a Public Access to Court Electronic Records ("PACER") (http://www.pacer.psc.uscourts.gov) password and login are needed to access documents on the Court's website.

PLEASE TAKE FURTHER NOTICE that, pursuant to Section 1.6 and Article III of the Plan and decretal paragraph 26 of the Confirmation Order, the deadline for filing proofs of or requests for payment of Administrative Expense Claims ("Administrative Expense Requests") is [____], 2019; provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim shall have been incurred (i) in accordance with an order of the Court or (ii) with the written consent of COFINA; and, provided, further, that, in accordance with section 503(b)(1)(D) of the Bankruptcy Code, applicable herein pursuant to section 301 of PROMESA, no governmental unit, including, without limitation, the IRS, shall be required to file a proof of Administrative Expense Claim by such date; and, provided, further, that any such proof of Administrative Expense Claim by a governmental unit shall remain subject to the rights and interest of COFINA and Reorganized COFINA, as the case may be, and any other party in interest to interpose an objection or other defense to the allowance or payment thereof. All Administrative Expense Requests should be sent to the following:

[_____]

Administrative Expense Requests will be deemed timely filed only if **actually received** by Prime Clerk by **5:00 p.m. (prevailing Atlantic Time)** on [___], 2019 (the "Administrative Deadline"). The Administrative Expense Requests may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**PLEASE TAKE FURTHER NOTICE that, if you are required to file an Administrative Expense Request pursuant to Section 1.6 and Article III of the Plan and decretal paragraph 26 of the Confirmation Order and fail to do so by the Administrative Deadline, you will be forever barred, estopped, and enjoined from asserting such Administrative Expense Claim (and from filing an Administrative Expense Request with**

respect to such Administrative Expense Claim) against COFINA and its property, and COFINA and Reorganized COFINA will be forever discharged from any and all indebtedness or liability with respect to such Administrative Expense Claim.

PLEASE TAKE FURTHER NOTICE that, pursuant to Section 18.6 of the Plan and decretal paragraph 15 of the Confirmation Order, if the rejection of an Executory Contract and Unexpired Lease by the Debtor results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against COFINA, or its properties or agents, successors, or assigns, including, without limitation, Reorganized COFINA, unless a proof of Claim is filed with the Court on or before thirty (30) days after the later to occur of (i) the Confirmation Date, and (ii) the date of entry of an order by the Court authorizing rejection of a particular Executory Contract and Unexpired Lease.

PLEASE TAKE FURTHER NOTICE that the Confirmation Order is full, final, and complete, conclusive and binding upon and shall not be subject to collateral attack or other challenge in any court or other forum by (i) COFINA, (ii) Reorganized COFINA, (iii) the Commonwealth, (iv) each person or entity asserting claims or other rights against COFINA, the Commonwealth or any of its other instrumentalities, including a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of bonds issued by COFINA, the Commonwealth, or any of its other instrumentalities or with respect to any trustee, any collateral agent, any indenture trustee, any fiscal agent, and any bank that received or holds funds related to such bonds, whether or not such claim or other rights of such person or entity are impaired pursuant to the Plan or this order and, if impaired, whether or not such person or entity accepted or rejected the Plan, (v) any other person, and (vi) each of the foregoing's respective heirs, successors assigns, trustees, executors, administrators, officers, directors, agents, representative, attorneys, beneficiaries or guardians.

Dated: _____, 2019        /s/ _____
      San Juan, Puerto Rico

                                   Martin J. Bienenstock (*pro hac vice*)
                                   Brian S. Rosen (*pro hac vice*)
                                   Jeffrey W. Levitan (*pro hac vice*)
                                   Chris Theodoridis (*pro hac vice*)
                                   **PROSKAUER ROSE LLP**
                                   Eleven Times Square
                                   New York, NY 10036
                                   Tel: (212) 969-3000
                                   Fax: (212) 969-2900

                                   *Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

                                   /s/ _____

3

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Debtor*