Hearing Date: June 3, 2020 at 9:30 a.m. (Atlantic Standard Time)
Objection Deadline: April 17, 2020 at 5:00 p.m. (Atlantic Standard Time)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>               Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**JOINT MOTION OF THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY FOR AN ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) FIXING VOTING RECORD DATE, (III) APPROVING CONFIRMATION HEARING NOTICE AND CONFIRMATION SCHEDULE, (IV) APPROVING SOLICITATION PACKAGES AND DISTRIBUTION PROCEDURES, (V) APPROVING FORMS OF BALLOTS, AND VOTING AND ELECTION PROCEDURES, (VI) APPROVING NOTICE OF NON-VOTING STATUS, (VII) FIXING VOTING, ELECTION, AND CONFIRMATION DEADLINES, AND (VIII) APPROVING VOTE TABULATION PROCEDURES**

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

BACKGROUND ..................................................................................................................1

JURISDICTION AND VENUE ..........................................................................................3

RELIEF REQUESTED.........................................................................................................3

BASIS FOR RELIEF ...........................................................................................................5

    A.    Approval of the Disclosure Statement ....................................................5

    B.    Fixing the Voting Record Date ..............................................................11

    C.    Establishing Notice, Objection Procedures, and Deadlines for Hearing on Confirmation of the Plan........................................................14

    D.    Approval of the Solicitation Package and Distribution Procedures......................20

    E.    Approving Forms of Ballots, and Voting and Election Procedures......................26

    F.    Fixing Voting and Election Deadline ...................................................31

    G.    Approval of the Notice of Non-Voting.................................................34

    H.    Approval of Vote Tabulation Procedures .............................................35

NO PRIOR REQUEST ........................................................................................................39

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Century Glove, Inc. v. First Am. Bank of New York*,
860 F.2d 94 (3d Cir. 1988).................................................................................5

*In re Buckingham Oil Interests, Inc.*,
Case No. 15-13441-JNF (Bankr. D. Mass. Dec. 22, 2015) ...................................17

*In re Clamp-All Corp.*,
233 B.R. 198 (Bankr. D. Mass. 1999) ...........................................................4, 5, 6

*In re Eastern Maine Electric Coop*,
125 B.R. 329 (Bankr. D. Maine. 1991)..................................................................6

*In re Ferretti*,
128 B.R. 16 (Bankr. D.N.H. 1991) ..............................................................5, 6, 8

*In re GST Autoleather, Inc.*,
No. 17-12100 (LSS) (Bankr. D. Del. Mar. 12, 2018)...........................................18

*In re GT Advanced Technologies Inc.*,
Case No. 14-11916-HJB (Bankr. D.N.H. Feb. 2, 2016) .......................................17

*In re Oxford Homes, Inc.*,
204 B.R. 264 (Bankr. D. Maine 1997)........................................................4, 5, 6, 8

*In re Phoenix Petroleum Co.*,
278 B.R. 385 (Bankr. E.D. Pa. 2001) ...................................................................8

*In re Stanley Hotel, Inc.*,
13 B.R. 926 (Bankr. D. Colo. 1981) ....................................................................8

*In re v & M Mgmt.*,
215 B.R. 895 (Bankr. D. Mass. 1997) ..................................................................6

*In re Women's Apparel Group, LLC*,
Case No. 11-16217-JNF (Bankr. D. Mass. May 10, 2012) ...................................17

*Kaufman v. Public Serv. Co. (In re Public Serv. Co.)*,
43 F.3d 763 (1st Cir. 1995).................................................................................4

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*,
337 F.3d 314 (3d Cir. 2003)...........................................................................5, 6

*Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*,
    848 F.2d 414 (3d Cir. 1988)................................................................................6

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
    81 F.3d 355 (3d Cir. 1995)..............................................................................5, 6

*Tex Extrusion Corp. v. Lockheed Corp. (In re Tex Extrusion Corp.)*,
    844 F.2d 1142 (5th Cir. 1988) .........................................................................6

**STATUTES**

11 U.S.C. § 105................................................................................................3

11 U.S.C. § 502................................................................................................3

11 U.S.C. § 1125................................................................................3, 5, 10, 16

11 U.S.C. § 1125(a)(1)....................................................................................4, 5

11 U.S.C. § 1125(b)..........................................................................................4

11 U.S.C. § 1126(a)......................................................................................3, 30

11 U.S.C. § 1126(b)..........................................................................................3

11 U.S.C. § 1126(c)...........................................................................................3

11 U.S.C. §1126(e) .................................................................................3, 30, 32

11 U.S.C. § 1126(f)...........................................................................................3

11 U.S.C. § 1126(g).....................................................................................3, 19

11 U.S.C. § 1128...............................................................................................3

48 U.S.C. §§ 2101-2241....................................................................................1

48 U.S.C. § 2175...............................................................................................2

PROMESA § 101(b)..........................................................................................1

PROMESA § 101(d)..........................................................................................2

PROMESA § 104(j)...........................................................................................2

PROMESA § 206...............................................................................................2

PROMESA § 301(a)...........................................................................................3

PROMESA § 304 ................................................................................................................... 1

PROMESA § 304(a) ............................................................................................................. 2

PROMESA § 305 ................................................................................................................ 36

PROMESA § 306(a) ............................................................................................................. 3

PROMESA § 307(a) ............................................................................................................. 3

PROMESA § 310 ................................................................................................................. 3

PROMESA § 315 ................................................................................................................. 1

**OTHER AUTHORITIES**

Fed R. Bankr. P. 2002 ................................................................................................... 19, 36

Fed. R. Bankr. P.  2002(b) ................................................................................................. 12

Fed. R. Bankr. P. 3001(e) .................................................................................................. 11

Fed. R. Bankr. P. 3017(a) .................................................................................................. 15

Fed. R. Bankr. P. 3017(c) ............................................................................................. 12, 28

Fed. R. Bankr. P. 3017(d) ........................................................................................... passim

Fed. R. Bankr. P. 3018 ....................................................................................................... 33

Fed. R. Bankr. P. 3018(a) ............................................................................... 10, 30, 32, 33

Fed. R. Bankr. P. 3020(b)(1) ............................................................................................. 12

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA")[2] (the Oversight Board, in its capacity as representative of the Commonwealth, ERS, and PBA, is referred to as the "Debtors"), respectfully submits this motion (the "Motion") for an order (i) approving the proposed Disclosure Statement (as defined below), (ii) fixing a Voting Record Date (as defined below) for voting to accept or reject the Plan (as defined below), (iii) approving the Confirmation Hearing Notice (as defined below) and confirmation schedule, (iv) approving the proposed contents of the Solicitation Package (as defined below) and procedures for distribution thereof, (v) approving the forms of ballots and notices, and establishing solicitation, voting, distribution election, and balloting procedures, (vi) approving the form and manner of Notice of Non-Voting Status (as defined below), (vii) fixing the Voting Deadline (as defined below) and Election Deadline (as defined below), and (viii) approving procedures for tabulating creditor votes.  In support of this Motion, the Debtors respectfully state as follows:

## **Background**

1.     On June 30, 2016, the Oversight Board was established pursuant to PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

---

[2]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this subchapter is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including filing a petition under section [304] of [PROMESA] . . . submitting . . . a plan of adjustment . . . or otherwise generally submitting filings in relation to the case with the court."  48 U.S.C. § 2175.

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to section 304(a) of PROMESA, commencing a case under title III thereof (the "Commonwealth's Title III Case").  Pursuant to PROMESA section 315(b), the Oversight Board is the Commonwealth's representative in the Commonwealth's Title III Case.

4.      On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS pursuant to section 304(a) of PROMESA, commencing a case under title III thereof ("ERS's Title III Case").  Pursuant to PROMESA section 315(b), the Oversight Board is ERS's representative in ERS's Title III Case.

5.      On September 27, 2019, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for PBA pursuant to section 304(a) of PROMESA, commencing a case under title III thereof ("PBA's Title III Case" and together with the Commonwealth's Title III Case and ERS's Title III Case, the "Title III Cases").  Pursuant to PROMESA section 315(b), the Oversight Board is PBA's representative in the PBA's Title III Case.

6.      Background information regarding the Debtors and the commencement of the respective Title III Cases is contained in the *Notice of Filing of Statement of Oversight Board in*

*Connection with PROMESA Title III Petition* [ECF No. 1, Case No. 17-3283], attached to the Commonwealth's Title III petition, and the *Notice of Filing of Statement of Oversight Board Regarding PBA's Title III Case* [ECF No. 2, Case No. 19-5523].

7.      On February 9, 2020, the Oversight Board and certain holders of in excess of $8 billion in Commonwealth general obligation ("GO") and PBA bond claims (the "Initial PSA Creditors") disclosed they had reached a global settlement in principle outlined in a Plan Support Agreement ("PSA").  Through the execution of joinder or annex agreements, over $10 billion of GO and PBA bondholders now support the PSA and the various compromises and settlements embodied therein.

8.      Contemporaneously herewith, the Debtors filed the *Disclosure Statement for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (as the same may be amended or modified, including all exhibits and attachments thereto, the "Disclosure Statement") and the *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (as the same may be amended or modified, including all exhibits and supplements thereto, the "Plan").[3]

### Jurisdiction and Venue

9.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Motion pursuant to PROMESA section 306(a).

10.      Venue is proper in this district pursuant to PROMESA section 307(a).

### Relief Requested

11.      By this Motion, pursuant to sections 105, 502, 1125, 1126(a), 1126(b), 1126(c), 1126(e), 1126(f), 1126(g), and 1128 of the Bankruptcy Code (made applicable to the Title III Cases

---

[3]   All capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Plan.

pursuant to PROMESA section 301(a)), Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") 2002, 3016, 3017, 3018, 3020, 9013, 9014, and 9021 (made applicable to the Title III Cases pursuant to PROMESA section 310), and Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "<u>Local Rules</u>") 3016-2 and 9013-1, the Debtors seek an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Disclosure Statement Order</u>"), as follows:

a. ***Disclosure Statement.*** Approving the adequacy of the information contained in the proposed Disclosure Statement;

b. ***Voting Record Date.*** Fixing a record date for voting with respect to the Plan and service purposes (the "<u>Voting Record Date</u>");

c. ***Confirmation Hearing Notice.*** Approving the form and manner of notice of the times set for filing objections to, and the hearing to consider confirmation of, the Plan (the "<u>Confirmation Hearing Notice</u>"), in the form attached to the Disclosure Statement Order as **<u>Schedule 2</u>**;

d. ***Confirmation Schedule***. Approving the confirmation schedule as summarized below;

e. ***Solicitation Package.*** Approving the proposed contents of the Solicitation Package and procedures for distribution thereof;

f. ***Ballots and Election Instructions***. Approving the forms of ballots and election instructions attached to the Disclosure Statement Order as **<u>Schedules 3(a) - 3(w)</u>**, and establishing the solicitation, voting, and balloting procedures requested herein;

g. ***Non-Voting Class Notice***. Approving the form of notice to non-voting Classes attached to the Disclosure Statement Order as **<u>Schedules 4(a) – 4(b)</u>**;

h. ***Voting Deadline***. Fixing the voting deadline for creditors to accept or reject the Plan;

i. ***Election Deadline***. Fixing the deadline for making the distribution election for creditors eligible to elect the form of distribution under the Plan; and

j. ***Tabulating Votes***. Approving procedures for tabulating votes cast to accept or reject the Plan.

| Summary of Proposed Schedule | |
|---|---|
| **Voting Record Date:** | June 3, 2020 for all Claims entitled to vote that are not classified in the Bond Classes (as defined below) |
| **Solicitation Mailing Deadline:** | The date that is 30 calendar days following entry of the order approving the Disclosure Statement (expected to be July 3, 2020) |
| **Initial Confirmation Objection Deadline:** | July 31, 2020 at 5:00 p.m. (Atlantic Standard Time) |
| **Supplemental Confirmation Objection Deadline:** | September 14, 2020 at 5:00 p.m. (Atlantic Standard Time) |
| **Voting Deadline:** | September 18, 2020 at 5:00 p.m. (Atlantic Standard Time) |
| **Election Deadline:** | September 18, 2020 at 5:00 p.m. (Atlantic Standard Time) |
| **Deadline for Oversight Board to File Affidavits in Support of Confirmation, Replies to Plan Objection(s), and Proposed Confirmation Order and Findings of Fact:** | October 2, 2020 at 5:00 p.m. (Atlantic Standard Time) |
| **Plan Confirmation Hearing:** | October 13-16, 2020, October 19-23, 2020 |

## Basis for Relief

### A.     Approval of the Disclosure Statement

12.     Pursuant to section 1125(b) of the Bankruptcy Code, solicitation of votes on a proposed plan may not begin until the court determines that the written disclosure statement for the plan contains adequate information.  *See, e.g., In re Oxford Homes, Inc.*, 204 B.R. 264, 269 (Bankr. D. Maine 1997) ("A plan of reorganization may not be submitted to a debtor's creditors unless and until a disclosure statement has been approved by the court as containing 'adequate information.'"); *Kaufman v. Public Serv. Co. (In re Public Serv. Co.)*, 43 F.3d 763, 766 (1st Cir. 1995); *In re Clamp-All Corp.,* 233 B.R. 198, 208 (Bankr. D. Mass. 1999).  Section 1125(a)(1) defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the

> plan to the debtor, any successor to the debtor, and a hypothetical
> investor typical of the holders of claims or interests in the case, that
> would enable such a hypothetical investor of the relevant class to
> make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

13.     Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" about the plan by impaired creditors entitled to vote on the plan. *See In re Oxford Homes, Inc.*, 204 B.R. at 269; *In re Clamp-All Corp.*, 233 B.R. at 204; *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 321 (3d Cir. 2003); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1995); *see also In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) ("[I]t is important for these average investors/general unsecured creditors that the Disclosure Statement contain simple and clear language . . . so that they can intelligently accept or reject the Plan.").   To satisfy this requirement, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. at 19.

14.     The purpose behind requiring disclosure of 'adequate information' is to ensure creditors receive sufficient information to make an informed decision regarding whether to approve or disapprove a proposed plan. *See Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) (stating that "§ 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote"); *In re Clamp-All Corp.*, 233 B.R. 198, 204 (Bankr. D. Mass. 1999) ("The purpose of requiring an approved disclosure statement is to ensure that all claim holders are provided with adequate information to enable them to make an informed judgment regarding whether to vote for or against a reorganization plan."); *In re Ferretti*, 128 B.R.

at 18 (Bankr. D. N.H. 1991).  Additionally, such disclosures often facilitate the negotiation process

between the debtor and its creditors.  *See Century Glove*, 860 F.2d at 100.

15.     Given the important role a disclosure statement plays in the bankruptcy process,

courts place great emphasis on the debtor's obligation to make a "full and honest disclosure . . . ."

*In re Oxford Homes, Inc.*, 204 B.R. 264, 269 (Bankr. D. Maine 1997) (quoting *Ryan Operations*

*G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1995)); *see also In re Ferretti*,

128 B.R. at 19; *In re Clamp-All Corp.*, 233 B.R. at 208; *Krystal Cadillac-Oldsmobile*, 337 F.3d at

323; *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848

F.2d 414, 417 (3d Cir. 1988).  The "statement's adequacy must be evaluated in light of the facts

unique to the case," taking into account the debtor's unique circumstances, the final decision

falling within the court's discretion.  *In re Eastern Maine Electric Coop*, 125 B.R. 329, 333 (Bankr.

D. Maine. 1991); *see also In re Ferretti*, 128 B.R. 16, 18 (Bankr. D.N.H. 1991) ("The phrase

'adequate information' has been deliberately left vague by Congress to give a bankruptcy court

wide discretion to determine on a case by case basis whether the disclosure is reasonable.").  Courts

take into account many factors, such as the complex nature and size of the bankruptcy case and

the nature of the plan proposed.  *In re Ferretti*, 128 B.R. at 18.

16.     The bankruptcy court, and, in this case, the Title III Court, has broad discretion to

determine the adequacy of the information contained in a disclosure statement.  *See In re Ferretti*,

128 B.R. at 16; *In re Oxford Homes, Inc.,* 204 B.R. at 269 ("the precise contours of 'adequate

information' were vaguely drawn by Congress so that bankruptcy courts might exercise their

discretion to limn them in view of each case's peculiar circumstances"); *Tex Extrusion Corp. v.*

*Lockheed Corp. (In re Tex Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988).   The

requirements of the adequate information standard vary with each case.  *See, e.g., In re Ferretti*,

128 B.R. at 19; *In re Oxford Homes, Inc.,* 204 B.R. at 269 ("what constitutes 'adequate information' will vary from case to case"); *In re v & M Mgmt.*, 215 B.R. 895, 902 (Bankr. D. Mass. 1997) (holding that the 'adequate information' "requirements vary from case to case, according to the nature of the plan, the needs of claim and interest holders, and the availability of information."). Nonetheless, in exercising their broad discretion, bankruptcy courts generally examine whether the disclosure statement contains, if applicable, the following types of information:

a. The circumstances that gave rise to the commencement of the case;

b. A complete description of the available assets and their value;

c. The anticipated future of the debtor, with accompanying financial projections;

d. The source of the information provided in the disclosure statement;

e. The condition and performance of the debtor during the bankruptcy case;

f. Information regarding claims against the estate including those allowed, disputed, and estimated;

g. A liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

h. The accounting and valuation methods used to produce the financial information in the disclosure statement;

i. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

j. A summary of the plan of reorganization;

k. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;

l. The collectability of any accounts receivable;

m. Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

8

     n.  Information relevant to the risks being taken by the creditors and interest holders;

     o.  The actual or projected value that can be obtained from avoidable transfers;

     p.  The existence, likelihood and possible success of nonbankruptcy litigation;

     q.  The tax consequences of the plan; and

     r.  The relationship of the debtor with affiliates.

*In re Ferretti*, 128 B.R. at 18-19 (Bankr. D.N.H. 1991); *see also In re Oxford Homes, Inc.*, 204 B.R. at 269 n. 17 (adopting *In re Ferretti* list). This list is not meant to be comprehensive, nor must a debtor provide all the information on the list. Rather, the requirement varies with the facts of each case. *See In re Ferretti*, 128 B.R. at 19 ("This list is by no means comprehensive. Nor must every debtor provide all the information on the list. The Court will decide what is appropriate in each particular case.") (emphasis added); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (making use of similar list but cautioning that "no one list of categories will apply in every case."). However, as the Bankruptcy Court for the District of Colorado stated:

> [a] disclosure statement must be meaningful to be understood, and it must be understood to be effective. Thus, what lawyers regard as useful information based upon their experience might be meaningless verbiage in the hands of a "typical" investor. Accordingly, by overburdening a proponent's disclosure statement with information significant and meaningful to lawyers alone may result ultimately in reducing the disclosure statement to an overlong, incomprehensible, ineffective collection of words to those whose interests are to be served by disclosure. Thus, compounding a disclosure statement for the sake of a lawyer's notion of completeness, or because some additional information might enhance one's understanding, may not always be necessary or desirable, and the length of the document should not be the test of its effectiveness.

*In re Stanley Hotel, Inc.*, 13 B.R. 926, 933-34 (Bankr. D. Colo. 1981).

17.     The Debtors tailored the proposed Disclosure Statement to fit the facts of Title III

Cases. The proposed Disclosure Statement contains information with respect to many of the

subjects listed above, as applicable, including, but not limited to:

    a.  A description of the Debtors' purpose, operations, prepetition debt structure, and cash management (Disclosure Statement, Section III);

    b.  Certain events preceding the commencement of the Title III Cases (Disclosure Statement, Section IV);

    c.  Significant events during the Title III Cases (Disclosure Statement, Section V);

    d.  An overview of the Plan (Disclosure Statement, Section VI);

    e.  The classification and treatment of Claims under the Plan (Disclosure Statement, Section VI.E.);

    f.  The administration of the Debtors following confirmation of the Plan (Disclosure Statement, Section VI.S and VI.T);

    g.  Selected financial information and future projections (Disclosure Statement, Section XI);

    h.  Information regarding the securities to be issued under the Plan (the "Plan Securities") (Disclosure Statement, Section VI.F.);

    i.  Information regarding elections with respect to the form of distribution under the Plan available to some of the holders of claims against the Debtors (Disclosure Statement, Sections I.B. and VI.E);

    j.  Risk factors affecting the Plan and the Plan Securities (Disclosure Statement, Section VIII);

    k.  Tax consequences of the Plan (Disclosure Statement, Sections IX and X);

    l.  Voting and election procedures (Disclosure Statement, Sections II);

    m.  Requirements for confirmation of the Plan (Disclosure Statement, Section VII); and

    n.  Additional information about the Debtors and the Plan, including with respect to the injunction, exculpation, and release provisions contained in Sections 74.2, 74.3, 74.5, 74.6, 74.7, 74.8, 74.9, 74.11 of the Plan.

18.      Accordingly, the Debtors believe the proposed Disclosure Statement contains all or substantially all of the information typically considered by courts in evaluating whether a disclosure statement contains adequate information, and requests the Court's approval of the proposed Disclosure Statement as having adequate information within the meaning of section 1125 of the Bankruptcy Code.

**B.      Fixing the Voting Record Date**

19.      Bankruptcy Rule 3017(d) provides that, for purposes of soliciting votes in connection with the confirmation of a plan of adjustment, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.

20.      In accordance with these rules, the Debtors request **June 3, 2020** (the same date on which the Disclosure Statement hearing is scheduled) as the Voting Record Date to determine which creditors are entitled to vote to accept or reject the Plan.  The Debtors submit that a Voting Record Date of June 3, 2020 will provide the Debtors and Prime Clerk LLC, the Debtors' balloting agent (the "Balloting Agent"), sufficient time to (i) determine to whom Solicitation Packages should be sent and (ii) properly tabulate votes prior to the Voting Deadline.  The Voting Record Date will only be applicable to claims that are not classified in the Bond Classes (as defined below); provided, however, the Voting Record Date shall apply to any non-bond claims in Class 28 (2012 CW Bond Claims).[4]  The Debtors propose to use the Automated Tender Offer Program

---

[4]  Claims in Class 28 (2012 CW Bond Claims include the loan extended pursuant to that certain Credit Agreement, dated as of December 26, 2013, between the General Services Administration of the Commonwealth and Scotiabank de Puerto Rico, which, as of the Commonwealth Petition Date, was in the aggregate outstanding principal amount of

("ATOP") at The Depository Trust Company ("DTC") to solicit votes and elections from holders

of Claims in the Bond Classes. The ATOP system requires that any holder that seeks to vote or

make an election tender their Bonds through the ATOP system. This obviates the need for a Voting

Record Date, as only current holders of the Bonds can tender them for voting or election purposes

on or before the Voting Deadline or Election Deadline.

21.     In addition, the Debtors request that the Court establish the Voting Record Date as

the date for determining which creditors, if any, in the following classes are entitled to receive a

Notice of Non-Voting Status:

- Class 8 (PBA/DRA Secured Claim)

- Class 9 (PBA General Unsecured Claims),

- Class 10 (PBA/DRA Unsecured Claim),

- Class 46 (CW Appropriations Claims),

- Class 47 (CW 510(b) Subordinated Claims),

- Class 51 (Gracia-Gracia Claims), and

- Class 52 (Convenience Claims).

22.     With respect to any transferred Claim (except for any Claims in the Bond Classes),

if the transferor of such Claim is entitled to vote on the Plan, the Debtors propose that the transferee

will be entitled to receive a Solicitation Package and vote to accept or reject the Plan on account

of the transferred Claim only if: (a) all actions necessary to effect the transfer of the Claim pursuant

to Bankruptcy Rule 3001(e) have been completed on or before the Voting Record Date; or (b) the

transferee files, no later than the Voting Record Date, (i) the documentation required by

---

approximately $33,270,451.00, and Hacienda loans, which, as of the Commonwealth Petition Date, were in the
aggregate outstanding principal amount of $198,203,767.00.

Bankruptcy Rule 3001(e) to evidence the transfer, and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the transferor has completed, executed, and returned a Ballot (as defined below), the transferee of such Claim shall be bound by any vote (and the consequences thereof) made on the Ballot by such transferor of such transferred Claim.

23.     As the Court is aware, a substantial amount of the Debtors' outstanding indebtedness is in the form outstanding bonds (collectively, the "Bonds" or the "Existing Bonds"). The identities of many of the beneficial owners of the Bonds (the "Beneficial Owners") are not known to the Oversight Board and the Debtors. As is customary with respect to publicly traded securities, securities that are not issued to a specific party are generally held in the name of Cede & Company, which holds the Bonds on behalf of the Nominees (as defined below) of DTC. The Nominees, in turn, hold the securities in "street name" on behalf of the Beneficial Owners (and other brokerage institutions that hold them on behalf of Beneficial Owners). The Debtors intend to obtain from DTC a listing of the Nominees and, as described further below, cause the mailing of Solicitation Packages to the Nominees with instructions to cause the Solicitation Packages to be forwarded immediately to the Beneficial Owners of the Bonds. In connection with Bonds that are insured by monoline insurers, unless otherwise ordered by the Court, the Debtors propose to send Solicitation Packages to and solicit votes from the Beneficial Owners of the Bonds.[5]

24.     The Voting Record Date is an appropriate date to facilitate the practical determination of (i) which creditors are entitled to vote on the Plan (outside of the Bond Classes), and (ii) in the case of creditors in Classes 8 (PBA/DRA Secured Claim), 9 (PBA General

---

[5]   It is the Debtors' understanding that all Existing Bonds are held exclusively through DTC in the name of Cede & Company. If the Debtors, however, are made aware of any other direct holders of the Existing Bonds holding such Bonds outside of DTC, the Debtors shall send Solicitation Packages directly to such holders within two (2) business days of being provided with such information.

Unsecured Claims), 10 (PBA/DRA Unsecured Claim), 46 (CW Appropriations Claims), 47 (CW

510(b) Subordinated Claims), 51 (Gracia-Gracia Claims), and 52 (Convenience Claims), which

creditors are entitled to receive a Notice of Non-Voting Status.

### C.   Establishing Notice, Objection Procedures, and Deadlines for Hearing on Confirmation of the Plan

*(i)   Setting the Confirmation Hearing*

25.     Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure

statement, the court shall fix a time within which the holders of Claims and interests may accept

or reject the plan . . . ."  Fed. R. Bankr. P. 3017(c).

26.     In accordance with Bankruptcy Rules 2002(b) and 3017(c) and in view of the

Debtors' proposed solicitation schedule outlined herein, the Debtors request that a hearing on

confirmation of the Plan (the "Confirmation Hearing") be scheduled on the following dates:

- October 13 to 16, 2020, and

- October 19 to 23, 2020.

27.     The Confirmation Hearing may be continued from time to time without further

notice, except for adjournments announced in open Court or as indicated in any notice of agenda

of matters scheduled for hearing filed with the Court.  The proposed date for the Confirmation

Hearing complies with the Bankruptcy Rules and enables the Debtors to pursue confirmation of

the Plan pursuant to an appropriate timetable.

*(ii)   Approval of the Confirmation Hearing Notice*

28.     Bankruptcy Rule 2002(b) requires all creditors and indenture trustees be given not

less than twenty-eight (28) days' notice of the time fixed for filing objections to confirmation of a

plan of adjustment.  In accordance with the Bankruptcy Rules, the Debtors propose to provide all

parties receiving a Solicitation Package with a Confirmation Hearing Notice, a copy of which is

attached to the proposed Disclosure Statement Order as **Schedule 2**, setting forth information regarding (i) the Voting Deadline and Election Deadlines, (ii) the times fixed for filing objections to confirmation of the Plan, and (iii) the time, date, and place for the Confirmation Hearing. Additionally, the proposed Confirmation Hearing Notice informs parties in interest that the Plan and Disclosure Statement, together with all exhibits thereto, may be obtained: (i) from the Balloting Agent's website at https://cases.primeclerk.com/puertorico/; (ii) by telephoning the Balloting Agent at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available); or (iii) by emailing the Balloting Agent at puertoricoballots@primeclerk.com.  The proposed procedure for providing copies of the Plan and Disclosure Statement complies with the requirements of Bankruptcy Rule 3017(a).  The Confirmation Hearing Notice will be sent to the appropriate parties in accordance with the Bankruptcy Rules and Local Rules on or before the Solicitation Mailing Date (as defined below).

29.    To give adequate notice of the time for filing and serving objections, and the date and time of the Confirmation Hearing, to (i) those creditors to whom no other notice was sent and who are unknown and not reasonably ascertainable by the Debtors, (ii) known creditors with addresses unknown by the Debtors, and (iii) creditors with potential Claims unknown by the Debtors, the Debtors propose to publish the Confirmation Hearing Notice once in each of *El Nuevo Dia* in Spanish (primary circulation is in Puerto Rico), *Caribbean Business* in English (primary circulation is in Puerto Rico), *El Diario* in Spanish (primary circulation is in New York), *El Nuevo Herald* in Spanish (primary circulation is Miami), *The New York Times*, *The Bond Buyer*, *El Vocero* in Spanish (primary circulation is in Puerto Rico), and *Primera Hora* in Spanish (primary circulation is in Puerto Rico) to the extent possible, (1) between July 5, 2020 and July 11, 2020,

(2) between August 30, 2020 and September 5, 2020, and (3) between September 11, 2020 and September 17, 2020. Additionally, the Confirmation Hearing Notice will be available electronically on the Debtors' website, https://cases.primeclerk.com/puertorico/. The Debtors submit such publication notice prior to the Confirmation Hearing is adequate and sufficient notice to such creditors under these circumstances.

30.     Additionally, the Debtors propose that, to cause no less than ten (10) radio advertisements, to be aired during each of the periods below (for a total of thirty (30) radio advertisements) on (a) WMEG FM (contemporary hit radio) in Spanish and (b) WKAQ AM (Spanish language talk radio) in Spanish, informing listeners of (i) the approval of the Disclosure Statement and the scheduling to the Confirmation Hearing, (ii) the date by which Confirmation Objections must be filed and served, (iii) the Voting Deadline and the Election Deadlines and (iv) an information hotline to receive certain additional information:

- the period from July 21, 2020 up to and including July 30, 2020,

- the period from August 21, 2020 up to and including August 30, 2020, and

- the period from September 9, 2020 up to and including September 17, 2020.

31.     The foregoing procedures will provide parties in interest with approximately 24 days' notice of the Initial Confirmation Objection Deadline, approximately 75 days' notice of the Supplemental Confirmation Objection Deadline, and approximately 100 days' notice of the Confirmation Hearing as mandated by the applicable rules and, accordingly, should be approved.

*(iii)     Establishing Objection Procedures and Deadlines for Confirmation of the Plan*

32.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).

33.     The Debtors request that the Court approve the following deadlines and procedures in connection with the confirmation of the Plan:

(1) any initial objections or responses be filed, together with proof of service, with the Court and served so that such objections and responses are actually received by no later than **5:00 p.m. (Atlantic Standard Time) on July 31, 2020** (the "Initial Confirmation Objection Deadline"),

(2) any supplemental objections or responses be filed by parties that timely filed an initial objection before the Initial Confirmation Objection Deadline, together with proof of service, with the Court and served so that such objections and responses are actually received by no later than **5:00 p.m. (Atlantic Standard Time) on September 14, 2020** (the "Supplemental Confirmation Objection Deadline"), and

(3) any party in interest who fails to interpose an objection or response to the proposed confirmation of, or proposed modifications to, the Plan on or before the Initial Confirmation Deadline shall have waived the right to interpose any objection or response to the proposed confirmation of, or proposed modifications to, the Plan on or before the Supplemental Confirmation Deadline.

34.     If there are objections to confirmation, providing sufficient time for the Debtors and other parties in interest to respond will assist the Court and may expedite the Confirmation Hearing.  Accordingly, the Debtors request it be authorized to file and serve no later than **5:00 p.m. (Atlantic Standard Time) on October 2, 2020**:

- replies or an omnibus reply to any objections to the confirmation of the Plan;
- the Debtors' memorandum of law in support of confirmation of the Plan;
- any affidavits in support of confirmation of the Plan; and

17

- the Debtors' proposed order and findings of fact confirming the Plan.

35.    Setting two deadlines to object to the confirmation of the Plan (the Initial Confirmation Deadline and Supplemental Confirmation Deadline) will (i) provide parties in interest with sufficient time to consider whether to interpose any objections or proposed modifications to the Plan, (ii) allow the Debtors time to reach a consensual resolution to any objections or proposed modification to the Plan, if possible, and (iii) provide the Court with sufficient time to consider any remaining objections and proposed modifications before the Confirmation Hearing.

36.    The proposed Confirmation Hearing Notice provides, and the Debtors request that the Court direct, that any objections or responses to the proposed confirmation of, or proposed modifications to, the Plan:

(1) be in writing;

(2) state the name, address, and nature of the Claim of the objecting or responding party;

(3) state with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan or order confirming the Plan to resolve any such objection or response;

(4) be filed, together with proof of service, with the Court and served so that objections and responses are actually received by the following parties:

   a.   the Office of the United States Trustee for the District of Puerto Rico;

   b.   the indenture trustees and/or agents, as applicable, for the Debtors' bonds;

   c.   the Initial PSA Creditors;

   d.   the entities on the list of creditors holding the 20 largest unsecured claims against the Debtors or its property;

18

e.   the statutory committees appointed in any of the Title III cases;

f.   the Office of the United States Attorney for the District of Puerto Rico;

g.   counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority;

h.   the Puerto Rico Department of Justice;

i.   the United States Securities and Exchange Commission;

j.   All parties known to the Debtors as having potential Claims against the Debtors or its property based upon a review of the Debtors' books and records;

k.   All counterparties to the Debtors' executory contracts and unexpired leases, as determined from a review of the Debtors' books and records;

l.   All parties to litigation with the Debtors (as of the date of filing of the notice of Disclosure Statement Hearing);

m.   All parties who have requested notice pursuant to Bankruptcy Rule 2002; and

n.   The Internal Revenue Service,

(5)   with respect to any initial objections or responses, be filed, together with proof of service, with the Court and served so that such objections and responses are actually received by no later than **5:00 p.m. (Atlantic Standard Time) on July 31, 2020** (the "Initial Confirmation Objection Deadline"), and

(6)   with respect to any supplemental objections or responses, be filed, together with proof of service, with the Court and served so that such objections and responses are actually received by no later than **5:00 p.m. (Atlantic Standard Time) on September 14, 2020** (the "Supplemental Confirmation Objection Deadline").

37.   The Debtors respectfully request the Court approve these procedures for filing objections to the Plan and any replies thereto.

### D.      Approval of the Solicitation Package and Distribution Procedures

38.      Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of Claims for the purpose of soliciting their votes on a plan of adjustment and providing adequate notice of the hearing on confirmation of a plan of adjustment:

> Upon approval of a disclosure statement, – except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders – the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
> (1)      the plan or a court-approved summary of the plan;
> (2)      the disclosure statement approved by the court;
> (3)      notice of the time within which acceptances and rejections of the plan may be filed; and
> (4)      any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

Fed. R. Bankr. P. 3017(d).

39.      If the Court approves the proposed Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code, the Debtors propose to mail or cause to be mailed solicitation packages (the "Solicitation Packages") to all known holders (as of the Voting Record Date) of Claims in the following Classes (collectively, the "Voting Classes") by no later than thirty (30) calendar days following entry of the Disclosure Statement Order (expected to be July 3, 2020) (the "Solicitation Mailing Date"):

|                                        | Class   |
| -------------------------------------- | ------- |
| Vintage PBA Bond Claims                | Class 1 |
| Vintage PBA Bond Claims (Insured)      | Class 2 |
| Retail Vintage PBA Bond Claims         | Class 3 |
| 2011 PBA Bond Claims                   | Class 4 |
| Retail 2011 PBA Bond Claims            | Class 5 |

20

|  | **Class** |
|---|---|
| 2012 PBA Bond Claims | Class 6 |
| Retail 2012 PBA Bond Claims | Class 7 |
| Vintage CW Bond Claims | Class 11 |
| Retail Vintage CW Bond Claims | Class 12 |
| Vintage CW Bond Claims (Insured) | Class 13 |
| Vintage CW Guarantee Bond Claims | Class 15 |
| Vintage CW Guarantee Bond Claims (Insured) | Class 16 |
| 2011 CW Bond Claims | Class 18 |
| Retail 2011 CW Bond Claims | Class 19 |
| 2011 CW Bond Claims (Insured) | Class 20 |
| 2011 CW Guarantee Bond Claims | Class 22 |
| 2011 CW Series D/E/PIB Bond Claims | Class 24 |
| 2011 CW Series D/E/PIB Bond Claims (Insured) | Class 25 |
| Retail 2011 CW Series D/E/PIB Bond Claims | Class 26 |
| 2012 CW Bond Claims | Class 28 |
| Retail 2012 CW Bond Claims | Class 29 |
| 2012 CW Bond Claims (Insured) | Class 30 |
| 2012 CW Guarantee Bond Claims | Class 32 |
| 2014 CW Bond Claims | Class 34 |
| Retail 2014 CW Bond Claims | Class 35 |
| 2014 CW Guarantee Bond Claims | Class 37 |
| Retiree Claims | Class 39A |
| Active ERS Participant Claims | Class 39B |
| Active JRS Participant Claims | Class 39C |
| Active TRS Participant Claims | Class 39D |
| System 2000 Participant Claims | Class 39E |
| AFSCME Employee Claims | Class 40 |
| CW General Unsecured Claims | Class 41 |
| CW/HTA Claims | Class 42 |
| CW/Convention Center Claims | Class 43 |

|  | Class |
|---|---|
| CW/PRIFA Rum Tax Claims | Class 44 |
| CW/MBA Claims | Class 45 |
| ERS Bond Claims | Class 48 |
| ERS General Unsecured Claims | Class 50 |

40.     The Debtors propose not to mail or cause to be mailed Solicitation Packages to any holders of Claims that are, as of the Voting Record Date, marked on the Title III register maintained by Prime Clerk as subject to administrative reconciliation procedures pursuant to an order granting the *Motion for Entry of an Order (A) Authorizing Administrative Reconciliation of Certain Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Case No. 17-BK-3283-LTS, ECF No. 8827] ("Administrative Reconciliation Motion"), as such holders shall not be entitled to vote such Claims to accept or reject the Plan.

41.     Solicitation Packages mailed to creditors holding Claims in the Voting Classes will contain, in English and Spanish translation:

    i.   the Confirmation Hearing Notice,

    ii.   a flash drive (or hard copy in connection with Class 39 (Retiree Claims) and otherwise in the Debtors' discretion) containing the Disclosure Statement (together with all exhibits thereto, including the Plan)[6] and the Disclosure Statement Order (excluding the exhibits thereto), and

    iii.   if applicable, the appropriate ballot or notice to accept or reject the Plan and make any applicable elections, in substantially the form set forth in **Schedules 3(a) – 3(w)** to the Disclosure Statement Order (each, a "Ballot" or "Notice"),

---

[6]  The proposed Confirmation Hearing Notice contains information as to how a claimant may obtain a hard copy of the Disclosure Statement and all exhibits thereto.

with instructions for voting and/or making any applicable election, and, as

applicable, a pre-addressed, pre-paid return envelope.

42.     The Debtors request that it be authorized (but not required) to distribute the

Disclosure Statement Order and Disclosure Statement (together with all exhibits thereto, including

the Plan) to the Voting Classes in electronic format (flash drive).  The Confirmation Hearing

Notice, Ballots, and Notices, as appropriate, will *only* be provided in paper format.  The Disclosure

Statement totals approximately 440 pages (not counting voluminous exhibits, including the Plan)

and will cost significantly more to print than to replicate in electronic format.  Distribution of the

Disclosure Statement (with all exhibits, including the Plan) in electronic format will preserve estate

resources by reducing both postage and printing costs.  Courts routinely permit debtors to transmit

solicitation documents in electronic format in the interest of saving printing and mailing costs.

*See, e.g., Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III)
Approving Confirmation Hearing Notice, (IV) Approving Solicitation Packages and Distribution
Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving
Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and
(VIII) Approving Vote Tabulation Procedures* [Case No. 17-3283, ECF No. 4382] at ¶ 8

(authorizing the debtor to transmit solicitation documents through flash drive); *In re GT Advanced
Technologies Inc.*, Case No. 14-11916-HJB (Bankr. D.N.H. Feb. 2, 2016) (authorizing the debtors

to transmit solicitation documents in electronic format); *In re Buckingham Oil Interests, Inc.*, Case

No. 15-13441-JNF (Bankr. D. Mass. Dec. 22, 2015) (same); *In re Women's Apparel Group, LLC*,

Case No. 11-16217-JNF (Bankr. D. Mass. May 10, 2012) (same); *In re GST Autoleather, Inc.,* No.

17-12100 (LSS) (Bankr. D. Del. Mar. 12, 2018) (same).[7]

---

[7] Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion.  Copies of
these orders are available on request of the attorneys for the Oversight Board.

43.     Additionally, the Debtors will provide: (i) complete Solicitation Packages (excluding Ballots) to:

(a) the U.S. Trustee,

(b) counsel to AAFAF,

(c)  counsel to the LCDC, Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: Susheel Kirpalani, Esq., Eric Kay, Esq.;

(d)  counsel to the QTCB Group, Morgan, Lewis & Bockius LLP, One State Street, Hartford, CT 06103, Attn: Kurt A. Mayr, Esq., David L. Lawton, Esq.; and Davis, Polk & Wardwell, LLP, 450 Lexington Avenue, New York, NY 10017, Attn: Donald Bernstein, Esq.;

(e)  counsel to the GO Group, Paul Weiss, Rifkind, Wharton & Garrison, LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Andrew Rosenberg, Esq.; Wilkie, Farr & Gallagher, 1875 K Street, NW, Washington, DC 20006, Attn: Mark Stancil, Esq.; Robbins, Russel, Englert, Orseck, Untereiner & Sauber, LLP, 2000 K Street NW, Washington, DC 20006, Attn: Mark Stancil, Esq., Donald Burke, Esq.;

(f)  counsel to the Constitutional Debt Group; Morrison & Foerster, LLC, 250 West 55th Street, New York, NY 10019, Attn: James Peck, Esq., Gary Lee, Esq., Andrew Kissner, Esq.;

(g)  Fir Tree Capital Management, LP, 55 West 46th Street, 29th Floor, New York, NY 10036, Attn: Evan Lederman, Brian Meyer;

(h)  counsel to AFSCME, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038, Attn: Kenneth Pasquale, Esq. and Sherry J. Millman, Esq.; and

(i)  counsel to the statutory committees appointed in any of the Title III cases; and

(ii) the Disclosure Statement Order (excluding the exhibits thereto) and the Confirmation Hearing Notice to the Debtors' Bankruptcy Rule 2002 list.  Any party who receives the Disclosure Statement in an electronic format but would prefer a paper format may contact the Balloting Agent and request a paper copy of the materials previously received in electronic format, which will then be provided at the Debtors' expense.

44.     Consistent with Bankruptcy Rule 3017(d), the Debtors submit they should not be required to distribute the Disclosure Statement, the Plan, and/or the Disclosure Statement Order to holders of Claims against the Debtors in the following Classes, which Claims are either deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, or deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, unless a party makes a specific request to the Debtor, in writing:

- Class 8 (PBA/DRA Secured Claim)

- Class 9 (PBA General Unsecured Claims),

- Class 10 (PBA/DRA Unsecured Claim),

- Class 46 (CW Appropriations Claims),

- Class 47 (CW 510(b) Subordinated Claims),

- Class 51 (Gracia-Gracia Claims), and

- Class 52 (Convenience Claims).

Rather, the Debtors propose to distribute to holders of such Claims a Notice of Non-Voting Status and the Confirmation Hearing Notice.

45.     The Debtors anticipate some notices of the Disclosure Statement hearing may be returned as undeliverable by the United States Postal Service.  As it would be costly and wasteful to then mail Solicitation Packages to the same addresses from which such notices of the Disclosure Statement hearing were returned as undeliverable, the Debtors seek the Court's approval for a departure from the strict notice rule, excusing the Debtors from mailing Solicitation Packages to such addresses, unless the relevant addressees provide the Debtors with updated, accurate addresses before the Voting Record Date.

46.     Furthermore, the Debtors request that the Court determine it is not required to distribute copies of the Plan or Disclosure Statement to the following:

    i.   any holder of an unimpaired Claim under the Plan,

    ii.   any holder of a Claim in a Class deemed to reject or accept the Plan,

    iii.   any party who holds a Claim (whether in the form of a filed proof of claim or an amount listed on the Debtors' List of Creditors [Case No. 17-3283, ECF Nos. 1215, 1316, 2582] (the "List of Creditors")) in an amount of $0,

    iv.   any holder of a Claim to which the Debtors have served an objection or request for estimation, or that has been expunged by order of the Court, and

    v.   a creditor that has a Claim that has already been paid in full.

47.     Although the Debtors have made, and will continue to make, reasonable efforts to ensure the Solicitation Packages described herein are in final form, the Debtors nonetheless request that it be authorized, in accordance with the modification provisions of the Plan and Local Rule 3016-2, to make non-substantive changes to the Disclosure Statement, the Plan, the Ballots, the Notices, the Notice of Non-Voting Status, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages as may be necessary, prior to mailing.

48.     The Debtors submit they have shown good cause for implementing the proposed notice and service procedures for the Solicitation Packages.

**E.     Approving Forms of Ballots, and Voting and Election Procedures**

49.     Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot conforming to Official Bankruptcy Form No. B 314, only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtors propose to distribute to the creditors

entitled to vote to accept or reject the Plan, as described more fully below, one or more Ballots or

Notices substantially in the forms attached to the proposed form of Disclosure Statement Order as

**Schedules 3(a) – 3(w)**.

50.    The forms of the Ballots and Notices are based on Official Bankruptcy Form No.

B 314, but have been modified to address particular aspects of Title III Cases and to include certain

additional information the Debtors believe is relevant and appropriate for each Class of Claims

entitled to vote and/or elect the form of distributions under the Plan.  The appropriate form of

Ballot or Notice, if any, will be distributed to the holders of Claims in the Voting Classes, as

applicable.  All other Classes under the Plan are not entitled to vote to accept or reject the Plan.

***The Bond Classes (1-7, 11-13, 15, 16, 18, 20, 22, 24-27, 28-30, 32, 34, 35, 37, and 48)***

<u>*Voting and Election Procedures*</u>

51.    Certain holders of Claims in Classes 11, 12, 15, 18, 19, 22, 24, 26, 28, 29, 32, 34,

35, 37, and 48 (the "<u>Electing Bond Classes</u>") have the option to make certain elections with respect

to the treatment of their claims.  Holders of Claims in the Electing Bond Classes (other than Class

48) who are Puerto Rico Investors (as such term is defined in the Plan) can elect to either (*i*) remain

in their Class and receive tax-exempt bonds in connection with their applicable distributions under

the Plan as well as, solely to the extent applicable, taxable bonds to which holders of Claims in

those classes are entitled to receive, or (*ii*) convert to another Class and receive taxable bonds.  For

example, holders of Claims in Class 11 (Vintage CW Bond Claims) who are Puerto Rico Investors

can elect to either (*i*) remain in Class 11 and receive tax-exempt bonds in connection with the CW

Bond Distribution (as such term is defined in the Plan) as well as, solely to the extent applicable,

taxable bonds to which holders of Claims in those classes are entitled to receive, or (*ii*) convert to

Class 14 and receive taxable bonds.  Holders of Claims in Class 48 (ERS Bond Claims) can elect

to either (i) remain in Class 48 and receive their pro rata share of the ERS Bond Collateral Cash, or (ii) convert to Class 49 and receive the ERS Bond Settlement Distribution.

52.    Holders of Claims in Classes 1, 2, 3, 4, 5, 6, 7, 13, 16, 20, 25, and 30 (the "Non-Electing Bond Classes," and together with the Electing Bond Classes, the "Bond Classes") are entitled to vote to accept or reject the Plan, but do not have the option of making any election. Holders of Claims in the Electing Bond Classes are also entitled to vote to accept or reject the Plan unless they make the applicable election in connection with their Claims, in which case they will be deemed to accept the Plan as a member of their new Class.[8]

53.    The Debtors propose to send Notices to the holders of Claims classified in the Bond Classes (*see* **Schedules 3(a) – (s)**) that will explain the process for voting and/or making an election (as applicable) with respect to their Claims.  The Debtors propose to set up an electronic voting and election process for holders of Claims in the Bond Classes through ATOP.  For the avoidance of doubt, unless otherwise ordered by the Court, with respect to holders of Claims in Classes 2 (Vintage PBA Bond Claims (Insured)), 13 (Vintage CW Bond Claims (Insured)), 16 (Vintage CW Guarantee Bond Claims (Insured)), 19 (2011 CW Bond Claims (Insured)), 24 (2011 CW Series D/E/PIB Bond Claims (Insured)), and 30 (2012 CW Bond Claims (Insured)), only the beneficial holder of the securities giving rise to Claims in such Classes will be entitled to cast a vote.

54.    To make a valid election or vote (as applicable), holders of Claims in the Bond Classes will have to instruct their broker or nominee (each, a "Nominee") to electronically deliver their bonds via ATOP at DTC in accordance with their desire to either make an election or vote on the Plan.  Once the Nominee has received an instruction from a holder of a Claim in the Bond

---

[8]    The voting results shall not be reported for, holders of Claims in Classes 14, 17, 20, 22, 27, 31, 33, 36, 38, and 49, as such holders shall be deemed to have accepted the Plan upon electing to be treated under the respective Class.

Classes either to vote or to make an election (as applicable), the Nominee will tender the holders'
bonds through the ATOP system to indicate that the holder has made the applicable choice.

55.     When holders of Claims in the Electing Bond Classes instruct their Nominee to
tender their bonds via ATOP to make an election with respect to the treatment of their Claims, the
holders will be restricted from transferring their bonds.  Holders of Claims in the Bond Classes
may revoke their election and withdraw any tendered bonds from ATOP at any time before the
Election Deadline.  If holders revoke their election before the Election Deadline, then they will be
entitled to trade or transfer their bonds again.  After the Election Deadline, holders of Claims in
the Electing Bond Classes that have made an election with respect to the treatment of their Claims
will be restricted from transferring their bonds through the Effective Date of the Plan.  If the
Effective Date of the Plan does not occur on or before December 31, 2020, the Debtors will work
in good faith with DTC to establish a mechanism that will enable desiring holders of Claims in the
Electing Bond Classes to resume trading of their Bonds without restriction.

56.     Holders of Claims in the Classes 1, 2, 4, 6, 11, 13, 15, 16, 18, 19, 21, 23, 24, 28,
30, 32, 34, and 37 that do not make an election but vote to either accept or reject the Plan will be
restricted from transferring their bonds until the Voting Deadline, and will be able to resume
transferring or trading their bonds following DTC's release of such bonds from ATOP as soon as
possible after  the Voting Deadline (which is expected to be one or two days following the Voting
Deadline).[9]  Holders of Claims in the Classes above may revoke their vote and withdraw any
tendered bonds from ATOP at any time before the Voting Deadline.  If holders revoke their vote
before the Voting Deadline, then they will be entitled to trade or transfer their bonds again.

---

[9]   The Debtors, in coordination with DTC, however, may determine that these bonds should remain in ATOP in order
to facilitate individualized distributions at the beneficial holder level to such holders.

57.     Holders of Claims in Classes 3, 5, 7, 12, 25, 26, 29, and 35 that do not make an election but vote to either accept or reject the Plan will be restricted from transferring their bonds. Holders of Claims in the Classes above may revoke their vote and withdraw any tendered bonds from ATOP at any time before the Voting Deadline.  If holders revoke their vote before the Voting Deadline then they will be entitled to trade or transfer their bonds again.  After the Voting Deadline, holders of Claims in the Classes above that have cast a vote will be restricted from transferring their bonds through the Effective Date of the Plan if such Class accepts the Plan.  If the Effective Date of the Plan does not occur on or before December 31, 2020, the Debtors will work in good faith with DTC to establish a mechanism that will enable desiring holders of Claims in the Classes above to resume trading of their Bonds without restriction.  If any of the Classes listed above has been determined to reject the Plan, holders of Claims in such Class will be able to resume transferring or trading their bonds following DTC's release of such bonds from ATOP as soon as possible after  the Voting Deadline (which is expected to be one or two days following the Voting Deadline).[10]

***Non-Bond Claim Classes (39, 40, 41, 42, 43, 44, 45 and 50)***

58.     With respect to the following Classes (the "Non-Bond Claim Classes"), the Debtors propose to deliver Ballots directly to holders of Claims arising under such Classes:

|  | **Class** |
|---|---|
| Retiree Claims | Class 39A |
| Active ERS Participant Claims | Class 39B |
| Active JRS Participant Claims | Class 39C |
| Active TRS Participant Claims | Class 39D |
| System 2000 Participant Claims | Class 39E |

---

[10] The Debtors in coordination with DTC, however, may determine that these bonds should remain in ATOP in order to facilitate individualized distributions at the beneficial holder level to such holders.

|  | Class |
|---|---|
| AFSCME Employees Claims | Class 40 |
| CW General Unsecured Claims | Class 41 |
| CW/HTA Constitutional Claims | Class 42 |
| CW/Convention Center Constitutional Claims | Class 43 |
| CW/PRIFA Rum Tax Constitutional Claims | Class 44 |
| CW/MBA Constitutional Claims | Class 45 |
| ERS General Unsecured Claims | Class 50 |

**F.     Fixing Voting and Election Deadline**

59.     Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court shall fix a time within which the holders of Claims may accept or reject a plan. The Debtors anticipate completing mailing of the Solicitation Packages by the Solicitation Mailing Date.  Based on this schedule, the Debtors propose that to have effect as a vote to accept or reject the Plan, each Ballot (as applicable) must be properly executed, completed, and delivered to the Balloting Agent by (i) first-class mail, in the return envelope provided with each Ballot (or otherwise by first-class mail), (ii) overnight courier, (iii) hand delivery, or (iv) electronic, online submission at Prime Clerk's website (as described more fully below and as permitted in accordance with the instructions set forth on the applicable Ballot), so as to be actually received by the Balloting Agent no later than **5:00 p.m. (Atlantic Standard Time) on September 18, 2020**, unless such time is extended (the "Voting Deadline").  Holders of Claims in the Bond Classes must deliver their voting instruction to the Nominee according to the instructions in the applicable Notice (**Schedules 3(a) – 3(s)**) in sufficient time for the Nominee to receive and effectuate the creditor's election through ATOP in accordance with the procedures of DTC by the Voting Deadline.  The Debtors submit a solicitation period of at least seventy-eight (78) calendar days is

a sufficient period within which creditors can make an informed decision whether to accept or reject the Plan.

60.     The Debtors propose establishing the following on-island collection sites to accept Ballots from holders of Claims in the Non-Bond Claim Classes by hand delivery from July 13, 2020 to September 18, 2020 (except weekends and Court holidays):

| Locations in the Commonwealth Accepting Ballots by Hand Delivery | |
| --- | --- |
| **Address** | **Hours (AST)** |
| José V. Toledo Federal Building & US Courthouse Clerk's Office 300 Recinto Sur Street San Juan, PR 00901 | M – F 8:00 a.m. to 5:00 p.m. |
| Federico Degetau Federal Building and Clemente Ruiz Nazario U.S. Courthouse Clerk's Office 150 Carlos Chardón Street, San Juan, Puerto Rico, 00918-1767 | M – F 8:30 a.m. to 4:30 p.m. |
| MCS Building, Suite 222 A Bankruptcy Court Clerk's Office 880 Tito Castro Avenue Ponce, PR 00716-4732 | M – F 8:00 a.m. to 5:00 p.m. |
| Bianca Convention Center Carr 2 KM 143, 1ˢᵗ Floor Añasco, PR 00610 | M – F 8:30 a.m. to 5:00 p.m. |
| Oceana HUB Center 2 Calle Acerina Caguas, PR 00725 | M – F 8:30 a.m. to 5:00 p.m. |
| Citi Towers 250 Ponce de León Ave, Suite 503 Hato Rey, San Juan, PR 00918 | M – F 8:30 a.m. to 5:00 p.m. |

61.     As mentioned above, in addition to accepting Ballots by regular mail, overnight courier or hand delivery, the Debtors seek authority to accept applicable Ballots via electronic, online transmission through a customized electronic Ballot by utilizing the E-Ballot platform on

Prime Clerk's website.  Applicable holders may cast an E-Ballot and electronically sign and submit such electronic Ballot via the E-Ballot platform.  Instructions for casting an electronic Ballot can be found on the "Submit E-Ballot" section of Prime Clerk's website, at https://cases.primeclerk.com/puertorico.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any electronic Ballot submitted in this manner and the creditor's electronic signature will be deemed to be an original signature that is legally valid and effective.  For the avoidance of doubt, holders of Claims in Non-Bond Claim Classes may only cast Ballots electronically via the E-Ballot platform. Ballots submitted by electronic mail, facsimile or any other means of electronic submission not specifically authorized by the solicitation procedures shall not be counted.

62.     The Debtors propose that to have effect as an election of the form of distribution under the Plan with respect to the Bond Classes, each creditor eligible to make such an election must deliver its election instruction to the Nominee according to the instructions in the applicable Notice (**Schedules 3(a) – 3(s)**) in sufficient time for the Nominee to receive and effectuate the creditor's election through ATOP in accordance with the procedures of DTC by no later than **5:00 p.m. (Atlantic Standard Time) on September 18, 2020**, unless such time is extended (the "Election Deadline").  Any election of the form of distribution under the Plan executed, completed, and delivered on or before the Election Deadline shall be deemed to be made as of the Election Deadline.

63.     Any creditor who has delivered its election to the Nominee may instruct the Nominee to revoke such creditor's election and withdraw any securities that have been tendered with respect to an election, in sufficient time for the Nominee to receive and effectuate the creditor's revocation through ATOP in accordance with the procedures of DTC on or before the

Election Deadline.  After the Election Deadline, all securities that have been tendered with respect to an election through DTC's ATOP will be restricted from further trading or transfer until the Effective Date of the Plan.

**G.    Approval of the Notice of Non-Voting**

64.    The Debtors propose to mail the holders of Claims in the following Classes an appropriate notice indicating such claimholders are not entitled to vote to accept or reject the Plan (a "Notice of Non-Voting Status"), a form of which is attached to the Disclosure Statement Order as **Schedule 4**:

- Class 8 (PBA/DRA Secured Claim)

- Class 9 (PBA General Unsecured Claims),

- Class 10 (PBA/DRA Unsecured Claim),

- Class 46 (CW Appropriations Claims),

- Class 47 (CW 510(b) Subordinated Claims),

- Class 51 (Gracia-Gracia Claims), and

- Class 52 (Convenience Claims).

65.    The Notice of Non-Voting Status identifies the Class that will either receive no distribution or is unimpaired under the Plan, as applicable, and sets forth (i) the manner in which holders of Claims in such Class may obtain a copy of the Plan and Disclosure Statement, (ii) the deadlines for filing objections to confirmation of the Plan, and (iii) the time and date set for the Confirmation Hearing.  The Debtors request that the Court determine it is not required to distribute copies of the Disclosure Statement Order, Plan, or Disclosure Statement to any holder of a Claim listed above, except upon written request.

## H.    Approval of Vote Tabulation Procedures

66.    Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).  Further, Bankruptcy Rule 3018(a) provides, "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."  Fed. R. Bankr. P. 3018(a).

67.    Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, any Claim, and without prejudice to the Debtors' rights in any other context, the Debtors propose each Claim within a Class of Claims entitled to vote to accept or reject the Plan be in an amount determined by the following procedures:

a. If a Claim is deemed allowed under the Plan, such Claim is allowed for voting purposes in the deemed allowed amount set forth in the Plan;

b. If a Claim for which a proof of claim has been timely filed is wholly contingent, unliquidated, or disputed, undetermined, or unknown in amount, such Claim shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00, and the Ballot mailed to the holder of such Claim shall be marked as voting at $1.00; unless such Claim is disputed as set forth in subparagraph "h" below;

c. If a proof of claim was timely filed in an amount that is liquidated, noncontingent, and undisputed, such Claim is temporarily allowed in the amount set forth on the proof of claim, unless such Claim is disputed as set forth in subparagraph "h" below;

d. If a Claim is listed on a timely filed proof of claim as contingent, unliquidated, or disputed in part, such Claim is temporarily allowed in the amount that is liquidated, non-contingent, and undisputed for voting purposes only, and not for purposes of allowance or distribution;

e.  If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

f.  If a Claim is listed in the List of Creditors as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the applicable bar date for the filing of proofs of claim established by the Court; or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, the Debtors propose such Claim not be entitled to vote to accept or reject the Plan;

g.  Proofs of claim filed for $0.00 or Claims that have been expunged by order of the Court are not entitled to vote;

h.  If the Debtors have served an objection or request for estimation as to a Claim at least sixty (60) days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the Voting Deadline;

i.  Any holders of Claims that are, as of the Voting Deadline, marked on the Title III register maintained by Prime Clerk as subject to administrative reconciliation procedures pursuant to an order granting the Administrative Reconciliation Motion shall not be entitled to vote such Claims to accept or reject the Plan;

j.  For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class shall be aggregated based on the reasonable efforts of the Debtors and Balloting Agent as if such creditor held one Claim against the applicable Debtor in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

k.  Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class may be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims;

l.  If a proof of claim has been amended by a later filed proof of claim, only the later filed amending Claim will be entitled to vote, regardless of whether the Debtors have objected to such earlier filed Claim;

m.  Notwithstanding anything contained herein to the contrary, the Balloting Agent, in its discretion, may (but is not required to) contact voters to cure any defects in the Ballots and is authorized to so cure any defects;

n. There shall be a rebuttable presumption that any claimant who submits a properly completed, superseding Ballot, or withdraws a Ballot on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change or withdraw such claimant's acceptance or rejection of the Plan, such that the earlier submitted Ballot shall be deemed superseded or withdrawn, as applicable; and

o. Any Class that contains claims entitled to vote but no votes are returned for such Class shall be deemed to have accepted the Plan.

68. The following additional procedures shall apply with respect to tabulating votes in the Bond Classes:

i. For the purposes of tabulating votes, each Beneficial Owner or Insurer shall be deemed to have voted only the principal amount of its public securities as submitted through and reflected in ATOP; any principal amounts thus voted may be thereafter adjusted by the Balloting Agent, on a proportionate basis with a view to the amount of securities actually voted, to reflect the corresponding claim amount with respect to the securities thus voted, including any accrued but unpaid prepetition interest or accreted principal, as applicable.

ii. If conflicting votes or "over-votes" are submitted by a Nominee, the Balloting Agent shall use reasonable efforts to reconcile discrepancies with the Nominee.

69. The Debtors believe the foregoing procedures will provide for a fair and equitable voting process. If any creditor seeks to challenge the allowance of its Claim for voting purposes in accordance with the above procedures, the Debtors request the Court direct such claimant to serve on counsel for the Oversight Board, counsel for AAFAF, and counsel for the statutory committees appointed in any of the Title III cases, and file with the Court (with a copy to Chambers) a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim in a different amount for purposes of voting to accept or reject the Plan on or before the thirtieth (30th) day after the later of (i) service of the Confirmation Hearing Notice, and (ii) service of notice of an objection or request for estimation, if any, as to such Claim.

70.     The Debtors further propose, in accordance with Bankruptcy Rule 3018, that, as to any claimant filing such a motion, the claimant's Ballot not be counted unless temporarily allowed by an order issued by the Court prior to the Voting Deadline.

71.     In addition, the Debtors request the following procedures apply with respect to ascertaining the intent of certain creditors who cast votes or make an election with respect to the form of distribution under the Plan: (i) whenever a creditor casts more than one vote voting the same Claim(s) or submits more than one distribution election with respect to the same Claim(s) before the Voting Deadline or Election Deadline, as applicable, the last properly completed Ballot, voting instruction or election actually received before the Voting Deadline or Election Deadline, as applicable, shall be deemed to reflect the voter's intent and, thus, to supersede any prior Ballots, votes, or elections, as applicable; (ii) whenever a creditor casts a Ballot that is properly completed, executed, and timely returned to the Balloting Agent, but does not indicate either an acceptance or rejection of the Plan, the Ballot shall not be counted; and (iii) whenever a creditor casts a Ballot that is properly completed, executed, and timely returned to the Balloting Agent, but indicates both an acceptance and rejection of the Plan, the Ballot shall not be counted.

72.     The Debtors further propose the following Ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected, unless otherwise agreed to by the Debtor: (i) any Ballot or vote through ATOP received after the Voting Deadline unless the Debtors have granted an extension with respect thereto; (ii) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (iii) any Ballot cast by a person or entity that does not hold a Claim in a Voting Class; (iv) any unsigned Ballot; (v) any Ballot without an original signature; provided, however, that any Ballot cast via the Balloting Agent's E-Ballot platform shall be deemed to contain an original signature; and (vi) any Ballot

transmitted to the Balloting Agent by facsimile, electronic mail, or other means not specifically approved by this Court.

73.     The Debtors further propose that, subject to any contrary order of the Court and except as otherwise set forth herein, it may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented (a) by an attorney's certification stating the terms, if any, associated with any such waiver, and (b) in the vote tabulation certification prepared by the Balloting Agent.

74.     Notice of this Motion will be provided by facsimile, electronic mail transmission, regular mail and/or hand delivery to the following parties: (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the bonds issued by the Debtors; (c) the entities on the list of creditors holding the 20 largest unsecured claims against the Debtors; (d) the statutory committees appointed in any of the Title III cases; (e) the Office of the United States Attorney for the District of Puerto Rico; (f) counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority; (g) the Puerto Rico Department of Justice; (h) the United States Securities and Exchange Commission; and (h) all parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

75.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request an order (i) granting the relief sought herein, and (ii) granting such other and further relief to the Debtors as may be just and proper.

Dated: February 28, 2020
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE<br>EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO, AND THE PUERTO RICO PUBLIC<br>BUILDINGS AUTHORITY,<br><br>                 Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**NOTICE OF JOINT MOTION OF
THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES
RETIREMENT SYSTEM OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO
PUBLIC BUILDINGS AUTHORITY FOR AN ORDER (I) APPROVING
DISCLOSURE STATEMENT, (II) FIXING VOTING RECORD
DATE, (III) APPROVING CONFIRMATION HEARING NOTICE
AND CONFIRMATION SCHEDULE, (IV) APPROVING
SOLICITATION PACKAGES AND DISTRIBUTION PROCEDURES,
(V) APPROVING FORMS OF BALLOTS, AND VOTING AND
ELECTION PROCEDURES, (VI) APPROVING NOTICE OF NON-VOTING
STATUS, (VII) FIXING VOTING, ELECTION, AND CONFIRMATION
DEADLINES, AND (VIII) APPROVING VOTE TABULATION PROCEDURES**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**PLEASE TAKE NOTICE** that the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA")[2] (the Oversight Board, in its capacity as representative of the Commonwealth, ERS, and PBA, is referred to as the "Debtors"), has filed with the Court the attached *Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (i) Approving Disclosure Statement, (ii) Fixing Voting Record Date, (iii) Approving Confirmation Hearing Notice and Confirmation Schedule, (iv) Approving Solicitation Packages and Distribution Procedures, (v) Approving  Forms of Ballots, and Voting and Election Procedures, (vi) Approving Notice of Non-Voting Status, (vii) Fixing Voting, Election, and Confirmation Deadlines, and (viii) Approving Vote Tabulation Procedures* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that any response or objection to the relief requested in the Motion must be in writing, conform to the Federal Rules of Bankruptcy Procedure, and the *Tenth Amended Case Management Procedures* [ECF No. 8027-1] (the "Case Management Procedures"), and must be filed with the Court (i) by registered users of the Court's case filing system, electronically in accordance with rule 5 of the Local Rules for the District of Puerto Rico, and (ii) by all other parties in interest, on a CDROM, in text-searchable portable document format (PDF), and served on (a) counsel for the Oversight Board, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036-8299 (Attn: Martin J. Bienenstock, Esq., and Brian S. Rosen, Esq.), and O'Neill &

---

[2]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Borges LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813 (Attn: Hermann D. Bauer, Esq.); (b) counsel for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, 7 Times Square, New York, New York 10036 (Attn: John J. Rapisardi, Esq., Suzzanne Uhland, Esq., and Peter Friedman, Esq.) and Marini Pietrantoni Muñiz LLC, MCS Plaza, Suite 500, 255 Ponce de León Ave., San Juan, PR 00917 (Attn: Luis C. Marini-Biaggi, Esq.); and (c) the Office of the United States Trustee for Region 21, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901-1922, so as to be received no later than **April 17, 2020 at 5:00 p.m. (AST)**.

  **PLEASE TAKE FURTHER NOTICE** that a hearing will be held before the Honorable Laura Taylor Swain, United States District Court Judge, in Room 3 of the United States District Court for the District of Puerto Rico, 150 Carlos Chardón Street, Federal Building, Office 150, San Juan, Puerto Rico 00918-1767 (the "Court"), on **June 3, 2020 at 9:30 a.m. (Atlantic Standard Time)**, or as soon thereafter as counsel may be heard, to consider the relief sought by the Debtors in the Motion.

  **PLEASE TAKE FURTHER NOTICE** that copies of the Motion including all exhibits, and all documents filed in these title III cases are available (a) free of charge by visiting https://cases.primeclerk.com/puertorico or by calling +1 (844) 822-9231, and (b) on the Court's website at http://www.prd.uscourts.gov, subject to the procedures and fees set forth therein.

  **PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND TO THE MOTION IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED THEREIN WITHOUT FURTHER NOTICE OR A HEARING.**

Dated: February 28, 2020
    San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*