UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND | |
| MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al., | (Jointly Administered) |
| Debtors.[1] | |

-----------------------------------------------------------x

### NOTICE OF CORRESPONDENCE RECEIVED BY THE COURT

The Court has received and reviewed the attached correspondence, described below, from interested persons in the above-captioned cases. Although the Court cannot respond individually to all of those who have expressed their thoughts or concerns, the Court is deeply mindful of the impact of the fiscal crisis on lives, institutions, and expectations, and of the importance of the issues that are raised in these unprecedented cases.

1. Letter dated February 25, 2020 from Cate Long.

Dated: March 2, 2020

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).



February 25, 2020

Honorable Laura Taylor Swain
Honorable Barbara J. Houser

Dear Judge Swain and Houser:

I am writing to you concerning the apparent massive insider trading that occurred as numerous iterations of the Puerto Rico GO/PBA Preliminary Support Agreement have been negotiated since June, 2019 . As far as I am aware there is no case law, bankruptcy rule or specific statutory provision incorporated in Promesa that shields parties involved in confidential mediation from securities laws, specifically insider trading.

Because parties involved in mediation have traded hundreds of millions of dollars of GO/PBA during the restricted period they damaged the integrity of the municipal market and likely were able to purchase securities from market participants who only knew that a litigation stay [Docket 8244, July 24, 2019] was imposed and then lifted.

Other than some very generalized powerpoints filed in the Municipal Securities Rulemaking Board disclosure website on October 17, 2019 and October 18, 2019, that did not address the substantive invalidation litigation issues apparently negotiated during meditation, parties that were not involved in mediation have been preyed upon by parties involved in mediation or by other parties who may have received material non public information from parties to the confidential proceedings.

Apparently a deal was reached around January 16, 2020 in mediation which was widely known among municipal bond dealers and their institutional clients. You can see the price movements in two post 2012 GO bonds and one pre 2011 GO bonds for the

1

period when the stay order was issued to mid January, 2020 (from a January, 10 2019 Bank of America Merrill Lynch report page 9).



Notably the FOMB was publicly offering 35 cents on the dollar to post 2012 GO bonds and publicly stating they would be litigating to invalidate post 2012 securities. While that was the FOMB's public stance and many parties to the mediation process were litigating to invalidate post 2012 debt of the Commonwealth the GOs of 2014 traded up from $53 on July 23, 2019 to $65 on January 8, 2020. Distressed bonds do not trade up 12 points for no reason and nothing in the Oct 17, or Oct 18 mediation reports posted to EMMA hinted at any better recoveries for the bonds.

Charting only GO 2014 trades in block size (larger than $1 million par) for the period from the July 24, 2019 stay and mediation order to the February 9, 2020 announcement of the latest GO/PBA PSA shows a massive runup in price across hundreds of large trades. Who was making these trades at increasingly higher prices when there was no positive news **publicly available**?

2



GO/PBA insider trading

According to the Securities and Exchange Commission illegal insider trading refers generally to buying or selling a security, in breach of a fiduciary duty or other relationship of trust and confidence, on the basis of material, nonpublic information about the security.

Although I have not assembled the 2019 Disclosure Statements for all groups who were party to mediation looking at the Ad Hoc Lawful Constitutional Group disclosures shows a material increase of holdings between Sept 6, 2019 and Jan 8, 2020 of $448 million of par. Because the Title III court did not adhere to the standard application of 2019 disclosure reporting, which requires detailed reporting of specific economic interests, it is not possible to see whether the Lawful Group took the opposite side of their publicly filed motions by purchasing post 2012 debt which they alleged was invalid.

3

| | Lawful Constitutional Sept 6, 2019 Docket #8639 As of Aug 30 | January 8, 2020 Lawful Dckt# 9732 | Feb 19, 2020 5th Verified Statement Docket 11161 (as of Feb 14) |
|---|---|---|---|
| Aristeia | $94 | $237 | $256 |
| Farmstead | $102 | $116 | $120 |
| FCO | $69 | $64 | $64 |
| Goldentree | $504 | $664 | $669 |
| Monarch | $356 | $410 | $383 |
| Taconic | $155 | $211 | $216 |
| Whitebox | $180 | $206 | $180 |
| **Total** | **$1,460** | **$1,908** | **$1,888** |

The joint motion in support of the mediation report filed on Feb 21, 2020 (page 6) by groups involved in mediation states directly that the New PSA is "product of months of hard fought negotiations between and among the FOMB and holders of Constitutional Debt (at page 6 emphasis mine)

> 15. On February 9, 2020, the FOMB announced that it had reached agreement with holders of $8 billion of Constitutional Debt. See Oversight Board Reaches New, More Favorable Agreement to Restructure $35 Billion of Liabilities. **The New PSA is the product of months of hard-fought negotiations between and among the FOMB and holders of Constitutional Debt. The terms of the global settlement, as embodied in the New PSA, includes a settlement of the Constitutional Debt Litigation as well as an agreement by the PSA Parties as to the treatment of different vintages of Constitutional Debt.** The New PSA achieves this settlement with approximately the same distributable value determined by the FOMB to be available for creditors in the Initial PSA and Initial Plan.

+++++

American United Mut. Life Ins. Co. v. Avon Park, 311 U.S. 138 (1940), Page 311 U. S. 146 says the following:

> "Where such investigation discloses the existence of unfair dealing, a breach of fiduciary obligations, profiting from a trust, special benefits for the reorganizers, or the need for protection of investors against an inside few or of one class of investors from the encroachments of another, the court has ample power to

4

adjust the remedy to meet the need. The requirement of full, unequivocal disclosure; the limitation of the vote to the amount paid for the securities (*In re McEwen's Laundry, Inc.,* 90 F.2d 872); the separate classification of claimants (*see First National Bank v. Poland Union,* 109 F.2d 54, 55); the complete subordination of some claims (*Taylor v. Standard Gas & Electric Co.,* 306 U. S. 307; *Pepper v. Litton, supra*) indicate the range and type of the power which a court of bankruptcy may exercise in these proceedings. That power is ample for the exigencies of varying situations. It is not dependent on express statutory provisions. It inheres in the jurisdiction of a court of bankruptcy. The necessity for its exercise (*Pepper v. Litton, supra,* p. 308 U. S. 308) is based on the responsibility of the court before entering an order of confirmation to be satisfied that the plan in its practical incidence embodies a fair and equitable bargain openly arrived at and devoid of overreaching, however subtle. Neglect of that duty is apparent here by inclusion of the vote of the claims held by the Crummer interests in computing the requisite statutory assents, without protection of the public investors through the requirement of full disclosure and of other appropriate safeguards. By the same token, allowance of compensation to Crummer without scrutiny of Crummer's speculation in the securities does not comport with the standards for surveillance required of courts of bankruptcy before confirming plans of composition or reorganization or before making such allowances.

The scope of the power of the court embraces denial of compensation to those who have purchased or sold securities during or in contemplation of the proceedings. As in case of reorganizations under former § 77B, the provision in § 83(b), 11 U.S.C. § 403(b), for allowance of "reasonable compensation" for "services rendered" necessarily implies "loyal and disinterested service in the interest of the persons" for whom the claimant purported to act. *In re Paramount-Publix Corp.,* 12 F. Supp. 823, 828.

In an objection to adequacy of the Cofina Disclosure Statement, Docket 4244, Nov 16, 2018 a retail bondholder stated the exact same circumstances of insider dealing in the Cofina restructuring. The court made no inquiries about this objection and as a consequence the very same hedge funds have been emboldened to run this gambit again.

> Third, it appears that representatives of hedge funds and institutional bondholders took advantage of their insider status in the negotiations concerning

5

> this litigation to fashion a settlement which overwhelming favors themselves at the expense of junior COFINA bond holders.
>
> Fourth, it appears that hedge funds and institutional bondholders have used their position as insiders to these confidential negotiations to acquire large blocks of junior COFINA bonds at very low prices to position themselves to control the outcome of the vote on whether to approve the settlement in addition to reaping large gains on junior lien bonds purchased at fire sale prices.

Also in correspondence to this Court docketed September 5, 2018 financial analyst Seema Balwada wrote to U.S. Congressman Rob Bishop (the principal author of Promesa) the following:

> Self-dealing by mediating groups amid conflicts of interest and lack of transparency in the ongoing mediation of the Puerto Rico's gating Commonwealth-COFINA dispute should cause great concern to the U.S. Government.
>
> With confidential material non-public information on recovery prospects in hand, mediating team members appear to have advantageously purchased Puerto Rico Subordinate sales tax secured COFINA bonds over the last year. Recently, a bond insurer seems to have provided false representations on its COFINA bond holdings to the public. These actions would be a breach of trust intended to manipulate a settlement vote.
> .....
>
> A rule of thumb in securities markets: When there is an information asymmetry owing to confidential mediations, mediating team members are asked to restrict bond trades of disputed securities so that no one has an unfair advantage. In Puerto Rico's debt restructuring, some mediating team members appear to have taken an unfair advantage of a seat at the bargaining table. Mediating team members themselves have been concurrently trading on confidential or insider information while mediating under confidentiality. How could this information asymmetry be fair to the unrepresented retail investor who relies solely on public information to buy and sell bonds.

Because of the seriousness of these apparent violations of securities laws and the predatory nature of this trading I will be writing a more complete report of these matters to the First Circuit's Executive Office, the U.S. Senate Judiciary Committee, the

6

Securities Exchange Commission, FINRA and the Municipal Securities Rulemaking Board. The predatory actions of these hedge funds in Cofina was devastating to mainland retail bondholders and now apparently the same funds are attempting to once again make massive profits due to their access to material non-public information in the GO/PBA mediation process.

If the Court wishes to oversee a restructuring process that excludes repeated fraud by certain parties it would behoove the Court to examine the 2019s of the parties who are party to the various iterations of GO/PBA PSAs concocted since the original June 16, 2019 original PSA.

Very truly yours,

Cate Long