**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

<table>
<tr><td>

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,

                  Debtor.[1]

</td><td>

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

</td></tr>
</table>

**OMNIBUS REPLY OF AMBAC ASSURANCE CORPORATION, ASSURED
GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL
PUBLIC FINANCE GUARANTEE CORPORATION, AND FINANCIAL
GUARANTY INSURANCE COMPANY TO THE GOVERNMENT PARTIES'
OPPOSITION TO MOVANTS' MOTION TO COMPEL PRODUCTION OF
DOCUMENTS RELATING TO THE PRELIMINARY HEARING ON
THE HTA, CCDA, AND PRIFA LIFT-STAY MOTIONS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ................................................................................................................... 3

I. THE LIMITED DISCOVERY THAT THE GOVERNMENT PARTIES HAVE
CHOSEN TO PRODUCE TO DATE INSUFFICIENTLY ADDRESSES THE
FACTUAL ISSUES IDENTIFIED BY JUDGE SWAIN. ................................................ 3

II. THE ADDITIONAL DISCOVERY MOVANTS SEEK IS WARRANTED BY JUDGE
SWAIN'S ORDER, AS CONFIRMED BY THE GOVERNMENT PARTIES'
PRODUCTIONS TO DATE ........................................................................................ 6

    A.    The Movants Are Entitled to Certain Categories of "Communications"
Regarding the Flow of Funds and Appropriations.................................... 6

    B.    Account-Opening Documents and Transmittal Information Are Crucial for
Understanding Beneficial Ownership and the Flow of Funds. ................... 9

    C.    The "Appropriations" Discovery Sought by Movants Is Warranted Under
Judge Swain's Order. .............................................................................. 12

    D.    Movants Are Entitled to Documents Sufficient to Understand the
Designations Given to Funds Held by PRIFA, the Tourism Company, and
HTA in the Cash Restriction Analysis..................................................... 13

    E.    The Government Parties' Attempt to Re-Litigate the Merits of Movants'
Equitable Claims is Inappropriate and Unnecessary to Resolve this
Motion..................................................................................................... 15

III. PRODUCING THE REQUESTED DOCUMENTS WOULD NOT BE "UNDULY
BURDENSOME." ..................................................................................................... 16

IV. THE PARTIES SHOULD BE DIRECTED TO MEET AND CONFER ON TOPICS
FOR RULE 30(b)(6) DEPOSITIONS. ....................................................................... 18

RELIEF REQUESTED..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
   262 F.R.D. 293 (S.D.N.Y. 2009) ........................................................................17

*Autoridad de Carreteras y Transportación v. Transcore Atl., Inc.*,
   319 F.R.D. 422 (D.P.R. 2016) ........................................................................9, 17

*Bagley v. Yale Univ.*,
   307 F.R.D. 59 (D. Conn. 2015).......................................................................6, 18

*Buehrle v. City of O'Fallon, Mo.*,
   2011 WL 529922 (E.D. Mo. Feb. 8, 2011) ........................................................19

*Buycks-Roberson v. Citibank Fed. Sav. Bank*,
   162 F.R.D. 338 (N.D. Ill. 1995)..........................................................................11

*BuzzFeed, Inc. v. DOJ*,
   318 F. Supp. 3d 347 (D.D.C. 2018) ...................................................................16

*CitiMortgage, Inc. v. Chicago Bancorp, Inc.*,
   2013 WL 3946116 (E.D. Mo. July 31, 2013) ....................................................19

*In re Coventry Healthcare, Inc., ERISA Litig.*,
   290 F.R.D. 471 (D. Md. 2013)........................................................................6, 18

*Doe v. Nebraska*,
   788 F. Supp. 2d 975 (D. Neb. 2011) ..................................................................17

*Ehrlich v. Union Pac. R.R. Co.*,
   302 F.R.D. 620 (D. Kan. 2014)..........................................................................17

*Green v. Cosby*,
   152 F. Supp. 3d 31 (D. Mass. 2015) ..................................................................17

*Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983)................................................................................................7

*Murphy v. Kmart Corp.*,
   255 F.R.D. 497 (D.S.D. 2009) ...........................................................................19

*Peskoff v. Faber*,
   240 F.R.D. 26 (D.D.C. 2007)..............................................................................18

*Roberts v. Time Warner Cable, Inc.*,
    2017 WL 2836997 (D. Mass. June 30, 2017) .........................................................17

*Skytec, Inc. v. Logistic Sys., Inc.*,
    2018 WL 4372726 (D.P.R. Sept. 12, 2018).............................................................6

**Other Authorities**

CAMBRIDGE DICTIONARY (2020) ........................................................................13

Fed. R. Civ. P. 26(b)(1)........................................................................................9

Restatement (Second) of Contracts § 223 (1981) ..........................................8

To the Honorable United States Magistrate Judge Judith G. Dein:

Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company (collectively, "Movants"), as holders and insurers of HTA, CCDA, and PRIFA bonds, respectfully submit this reply in further support of their urgent motions to compel (ECF No. 11686, 11687) (the "HTA Motion" and the "CCDA-PRIFA Motion," and collectively the "Motions") and in response to the Omnibus Opposition to the same (ECF No. 11948) ("Opposition" or "Opp.") filed by the Financial Oversight and Management Board for Puerto Rico (the "FOMB") and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") as representatives of the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways and Transportation Authority ("HTA") (collectively, the "Government Parties").[2]

## PRELIMINARY STATEMENT

1.      The Opposition is the Government Parties' *third* attempt to litigate whether discovery is needed.  Judge Swain made clear at the January omnibus hearing that discovery was necessary and appropriate in connection with the preliminary hearing issues related to the Lift-Stay Motions.  Thereafter, Judge Swain again ruled that discovery was necessary in her order adjourning the preliminary hearing to allow for discovery.  (*See* ECF No. 10102 (the "Extension Order").)  The Government Parties nevertheless now seek, through this motion to compel, to litigate yet again the need for discovery—recycling the same argument previously rejected by Judge Swain that certain statutory provisions or agreements unambiguously support their position, so that the requested discovery is largely unnecessary.  But a discovery motion is not the proper posture in which to decide merits issues of what the statutes or agreements do or do not

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motions.

unambiguously show.  In any event, Judge Swain has already repeatedly rejected the argument

that discovery is not necessary.  Thus, the only question the Court needs to resolve on this Motion

is whether the discovery Movants seek is within the scope of the issues identified in the Extension

Order as proper subjects of discovery.  It plainly is.

2.      In arguing that additional discovery is unnecessary, the Government Parties

mischaracterize what they have already produced, or have self-selected to produce at some later

date.  Critical documents have not yet been produced, and the Government Parties have now made

clear that they are refusing to produce others.  Movants have not received anything close to a

comprehensive set of account statements for PRIFA and HTA, which Movants need to identify

which accounts pledged revenues have touched.  This is critical information in light of the

Government Parties' factual assertion that those monies were not deposited to the credit of certain

accounts and therefore are not subject to any lien in favor of Movants.  Movants also have

identified several gaps in the documents produced for CCDA—and the Government Parties have

indicated that they will refuse to fill in those gaps unless compelled to do so by this Court.  Movants

also have not received answers to specific questions posed more than a week ago.  While Movants

are analyzing and making use of the information produced as quickly as possible, the additional

information sought through this Motion is needed in order to provide a reasonably complete

presentation to the Court on the specific issues that the Court has identified as necessitating factual

development.  The need for this essential discovery is magnified by the importance of the "gating"

issues that the Court ordered to be heard at the preliminary lift-stay hearings.

3.      The Government Parties do not carry their burden of showing that the limited

discovery requests are unduly burdensome.  They offer nothing more than generic claims that the

requested discovery would involve some effort by the Government Parties, but that is of course

true with respect to all discovery. The Government Parties also mischaracterize Movants' requests—suggesting, that Movants are seeking "intensive fact discovery into every statement government officials may have made" or "all documents related to how the Commonwealth managed its cash" (Opp. ¶ 54) when, in fact, Movants have made clear that they are seeking only a targeted and efficient search for documents, including communications, to address the critical issues identified by Judge Swain. (CCDA-PRIFA Motion ¶ 29; HTA Motion Ex. A.)

4.       Movants thus respectfully ask the Court to compel production of the still-disputed categories of discovery, as set forth in the revised proposed order attached as **Exhibit A** hereto.

## **ARGUMENT**

### **I.      THE LIMITED DISCOVERY THAT THE GOVERNMENT PARTIES HAVE CHOSEN TO PRODUCE TO DATE INSUFFICIENTLY ADDRESSES THE FACTUAL ISSUES IDENTIFIED BY JUDGE SWAIN.**

5.       **HTA**. The Extension Order cites the Government Parties' factual assertions that the Excise Taxes collected since late 2015 were neither received by, nor made available to, HTA and therefore purportedly remained the property of the Commonwealth. (*See* Mot. ¶ 7 & Ex. C.) According to the Government Parties, HTA bondholder liens never attached to these assets, nor were the funds held in trust. (*See id.*). The Movants requested discrete categories of documents that would shed light on: (i) whether the Treasury Department acts as an agent for HTA or the Commonwealth when receiving Excise Taxes; (ii) whether accounts holding or that held Excise Tax proceeds are designated for the benefit of HTA and its bondholders; (iii) whether the account opening documents, account agreements, rules and regulations, and other official documents required the funds to be transferred for the benefit of HTA or its bondholders; and (iv) whether the Excise Tax proceeds are held separately or have been commingled with other funds.

6.       The Government Parties argue that their production satisfies the discovery ordered by Judge Swain. (*See* Opp. ¶ 36.) To the contrary, material questions regarding the Excise Taxes

remain unanswered.  Through which accounts did the various revenues flow, and where did they land?  Who owned those accounts?  What restrictions or designations were placed on those accounts?  What were the Government Parties' understandings of the various transfers?  The documents produced to date are only the first few pieces of the puzzle; they do not answer those critical questions, but a response to the disputed requests likely would shed light on them.[3]

7.      **PRIFA**. The Government Parties likewise assert that already-produced documents show the overall flow of Pledged Rum Taxes.  Not so.  AAFAF has not produced a complete set of account statements for the accounts through which the Pledged Rum Taxes travel.  Indeed, Movants have struggled to obtain even an answer to the question of which account(s) constitutes the Puerto Rico Infrastructure Fund (on which, or on the funds in which, Movants have a lien).

8.      The Government Parties also argue that they produced sufficient documents evidencing that the Pledged Rum Taxes are commingled with the other government funds because they have produced exemplar statements for the Treasury's and PRIFA's operational accounts. (Opp. ¶ 29.)  But the Government Parties have provided no information about which funds held in such accounts are related to the Pledged Rum Taxes (*i.e.*, which funds flowed from the Lockbox

---

[3] The discovery offered by the Government Parties to date highlights the insufficiencies of the Government Parties' productions to date and demonstrates need for the disputed discovery.  For example, with regard to HTA, the Government Parties assert that the Excise Tax proceeds were only "conditionally allocated" to HTA, and that the Commonwealth "always reserved the right to retain [them] and use them for its own purposes."  (Motion Ex. C ¶¶ 81, 92.)  But cash flow statements for the Treasury Single Account ("TSA") call these assertions seriously into question, and indicate that certain categories of funds are not subject to the Commonwealth's appropriation process.  Additional discovery would facilitate a complete record on this important issue.

Similarly, while the Government Parties stake the Commonwealth's ownership of the Excise Taxes on their contention that the Commonwealth "has not appropriated" them to HTA (Mot. Ex. C ¶ 81), a few budgeting documents produced by AAFAF so far suggest that the Excise Taxes in fact were HTA's property and not subject to appropriation.  The limited additional discovery Movants seek would clarify this area of dispute.

Account into a Treasury account), and thus it is impossible to discern without additional discovery whether or not PRIFA-related funds are held in a segregated sub-account.

9.      AAFAF also produced exemplar transmittal letters between the U.S. Treasury and the Commonwealth.  (Opp. ¶ 25.)   But these do not answer the question of whether the Commonwealth treated the first $117 million as "restricted funds," rendered unavailable for its own use by virtue of the PRIFA Enabling Act.  For that, further discovery is needed.[4]

10.      **CCDA**. The Government Parties assert that a spreadsheet that shows "account type, authorized signatories, account purposes, and account balances as of June 30, 2019 and December 31, 2019" (Opp. at ¶ 32) is sufficient to support the factual assertions outlined in paragraphs 39-41 of the CCDA Opposition.  But the documents produced by the Government Parties do not actually track the flow of funds under the CCDA Bond Documents.  Nor do these documents explicitly state which accounts constitute the CCDA Transfer Account, Pledge Account, or Holding Fund.  Movants have requested (but the Government Parties are refusing to produce) account opening documents to obtain the facts on this issue.  (Opp. ¶¶ 54, 68); *see infra* Arg. II(b).

11.      Inexplicably, the Government Parties are refusing even to fill in gaps in their production of documents regarding transactions into and out of the CCDA-related account held at the Government Development Bank—an account on which (and/or on the funds in which) CCDA bondholders have a lien.  (Feb. 28, 2020 Letter from E. McKeen & M. Mervis, attached hereto as **Exhibit B.**)  The discovery that has been produced shows several dozen unexplained transactions. The Government Parties' refusal to provide this basic information about these transactions is

---

[4] The Government Parties assert that there is sufficient factual information to determine that their use of the funds is unrestricted because publicly available Offering Statements disclosed that Rum Taxes are "available revenues" under the Puerto Rico Constitution.  (Opp. ¶ 30.)  But Movants dispute the Government Parties' interpretation of the constitutional provision at issue, and Movants are entitled to discovery that bears on whether the Commonwealth historically has treated the Pledged Rum Taxes as restricted funds.

indefensible.  Transactions like these are critical to core questions of which monies are subject to bondholders' security interest.

## II. THE ADDITIONAL DISCOVERY MOVANTS SEEK IS WARRANTED BY JUDGE SWAIN'S ORDER, AS CONFIRMED BY THE GOVERNMENT PARTIES' PRODUCTIONS TO DATE.

### A. The Movants Are Entitled to Certain Categories of "Communications" Regarding the Flow of Funds and Appropriations.

12.     The Government Parties have taken the untenable position that, irrespective of the potential relevance of internal communications, they will undertake absolutely no electronic search for such documents.  The Movants have consistently offered to negotiate appropriate scope and search-term limitations,[5] but the Government Parties' position is that searches for communications, regardless of scope, will not be considered.  That position is not justifiable.  The Movants have made narrowly tailored requests designed to yield directly relevant information.

13.     For example, with respect to HTA, Movants' request is limited to "communications, including internal regulations/rules of the Treasury or OMB, and Commonwealth or HTA official memoranda or authenticated documents concerning excise Taxes and accounts, i.e., flow of funds information in such documents," and "during fiscal years 2015 and 2016 (July 2014–June 2016), any document that refers to Excise Taxes as mere 'appropriations' as the FOMB claims, and internal regulations or rules of OMB and Treasury relating to the budgeting treatment of Excise Taxes."  (Feb. 24, 2020 Letter from G. Mainland

---

[5] Courts routinely order the production of emails when requests are appropriately limited in scope and relevance.  *See Skytec, Inc. v. Logistic Sys., Inc.*, 2018 WL 4372726, at *5 (D.P.R. Sept. 12, 2018) (ordering sanctions for failure to produce emails, and noting that the "Federal Rules intentionally alter the adversarial nature of litigation to remove the elements of surprise and gamesmanship to make trial a transparent, fair process"); *In re Coventry Healthcare, Inc., ERISA Litig.*, 290 F.R.D. 471, 476 (D. Md. 2013) (ordering email production where the plaintiffs had worked with the defendants to limit the searches); *Bagley v. Yale Univ.*, 307 F.R.D. 59, 65–66 (D. Conn. 2015) (ordering production when professor made good-faith efforts to keep discovery within permissible bounds by limiting the number of targeted custodians).

(attached hereto as **Exhibit C**).)   These requested communications are directly relevant to the Oversight Board's theory that funds held in Commonwealth accounts are *its* property that it may or may not appropriate to HTA.  (HTA Lift-Stay Opp. ¶¶ 77, 81, 98; *id.* Ex. A (describing the Excise Tax transfers to HTA as "[a]ppropriations").)

14.     The Government Parties protest that their theory is merely a "legal argument based on statutory text" (Opp. ¶ 56) is misplaced.  Discovery is necessary to test the factual accuracy of the Government Parties' arguments.  Communications and budgeting materials likely will shed light on whether bondholders have enforceable property rights in the Pledged Revenues (as Movants contend) or whether those revenues are mere "appropriations" subject to change at the Commonwealth's discretion (as the Government Parties contend).

15.     Such discovery is particularly important in light of discovery to date, which indicates that, the Government Parties' assertions notwithstanding, the Pledged Revenues are not mere appropriations but were transferred to HTA separately from the Commonwealth's budgeting process.  Further discovery may reveal that the Government Parties' appropriations argument is nothing more than a *post hoc* rationalization the Court need not consider.  *Cf. Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (courts should afford no weight to a government agency's "*post hoc* rationalizations" articulated for litigation strategy).

16.     The Government Parties argue that Movants' PRIFA Communications Request is irrelevant because the relevant contracts "are what they are."  (Opp. ¶ 57.)  But the extent to which the contracts are ambiguous is a determination to be made by the Court, not the Government Parties.  Communications will provide clarity regarding how these arrangements were developed, the shared understandings of the parties, and the extent to which the parties were aware that arrangements with the Rum Companies would divert monies that otherwise were to be used as

collateral for PRIFA Bonds.  (*See* PRIFA Lift Stay Opp. ¶ 29 (Lockbox Agreement provides that the first $117 million in rum taxes each year should be disbursed to the credit of PRIFA).)

17.    Further, the Lockbox Agreement and related contracts, standing alone, do not identify the specific bank accounts that hold monies related to the Rum Taxes (*e.g.*, the Puerto Rico Instructure Fund and the Sinking Fund).  The communications Movants seek may aid in the identification of these accounts and, as such, are relevant course-of-dealing evidence that bear directly on the interpretation of the PRIFA Bond documents.  Such communications also may show whether the Government Parties' assertion that PRIFA-related funds are not subject to bondholders' lien is merely a *post hoc* litigation assertion.

18.    The Government Parties also object to Movants' CCDA Communications Request, arguing that "there is no ground for [Movants'] requests for discovery regarding the 'reasoning underlying the Tourism Company's decision'" to cease depositing funds into the Transfer Account and, instead, retain them.  (Opp. ¶ 60.)  According to the Oversight Board, the arguments it asserts in paragraph 40 of its CCDA Lift-Stay Opposition are "legal positions, not factual allegations." (Opp. ¶¶ 59-60.)  But Movants seek discovery sufficient to show whether, *as a matter of historical fact*, the Tourism Company's decision to stop transferring revenues was actually rooted in the asserted legal basis and, therefore, whether the Oversight Board's "factual representations" (Extension Order at 2) are accurate—the issue that Judge Swain identified.

19.    The  Government  Parties'  broad-based  objection  that  contemporaneous communications would be inadmissible parol evidence lacks merit.  If the Court determines there is ambiguity in the relevant provisions, parol evidence is admissible.  (*See* HTA Mot. ¶¶ 19–23; CCDA-PRIFA Mot. ¶¶ 25–26.)  And even absent ambiguity, course of dealing evidence is admissible.  Restatement (Second) of Contracts § 223 (1981).  In any event, under Federal Rule of

Civil Procedure 26, "information . . . need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). In *Autoridad de Carreteras y Transportacion v. Transcore Atlantic, Inc.*, the court rejected HTA's argument that it should not have to produce communications because the only relevant evidence in the dispute was the contract between the parties, finding that HTA could not "flout [discovery] obligations merely because it believes—in its sole discretion—that the contract between the parties is unambiguous on its face." 319 F.R.D. 422, 428 (D.P.R. 2016). Because the court had yet to determine that the disputed contract was unambiguous, it was "therefore premature for PRHTA to affirm confidently that any and all information produced through discovery will be inadmissible here." *Id.* at 439. The Government Parties are making a nearly identical argument here, and this Court should reject it for the same reasons.

### B. Account-Opening Documents and Transmittal Information Are Crucial for Understanding Beneficial Ownership and the Flow of Funds.

20.     The Government Parties have refused to produce any account-opening documents or account agreements. This information should reveal the ownership of the accounts that have held the Pledged Revenues, as well as which accounts are subject to restrictions and designations.

21.     For example, the Oversight Board made representations that the Hotel Occupancy Taxes (for the CCDA bonds) flow through certain accounts, including the Transfer Account. (CCDA Opp. ¶ 39.) Account opening documents could provide important evidence about which specific bank account(s) comprise the Transfer Account (as well as other accounts that are important to the CCDA bonds, such as the Surplus Account, the Holding Fund, and the Pledge Account). Because there is no dispute that CCDA bondholders have rights on any funds that were or are in the Transfer Account, among others, evidence on which account comprises the Transfer Account goes to the heart of the legal dispute in CCDA. Account opening or registration documents could identify a specific account as the "Transfer Account," which would be probative

evidence that at least that account is among the accounts that make up the Transfer Account.

22.     The same is true for the PRIFA bonds.  Movants need account opening documents to help identify which accounts comprise the Puerto Rico Infrastructure Fund, on which (and/or on the funds in which) Movants have a lien.

23.     With regards to HTA, AAFAF produced a trio of spreadsheets that show the Excise Tax collections and deposits for fiscal years 2015 through 2017.   (HTA_207; HTA_223; HTA_234.)   The discovery provided makes reference to the so-called "Fund 278," but without account-opening documents and other documents that AAFAF refuses to produce, Movants cannot determine where Fund 278 is held, in what account, and how.  If Fund 278 was owned beneficially or otherwise by HTA, or segregated on behalf of HTA, then there is no dispute that the funds were made available to HTA and bondholders liens attached to them.  This is but one example of why Movants are entitled to receive account ownership information for all accounts that have held the Excise Taxes.

24.     Contrary to the Government Parties' position, the types of documents they have agreed to produce are *not* a suitable substitute.  Instead of providing the foundational, account-identifying documents requested by Movants, the Government Parties have offered only account statements it is able to locate.  Even if a complete set of statements back to January 2015 were produced, the statements still only show account numbers, the name of the entity on the account statement, the amount of money in the account, and deposits or withdrawals identified by generic terms.  Moreover, the Government Parties have refused to answer questions or provide documents clarifying the purpose of transactions that are not adequately described in the statements.  (Exhibit B.)  The account statements do not offer any insight into *beneficial ownership* or holding of the relevant accounts; hence they are no replacement for the account-opening documents and account

agreements that that *would* be distinctly relevant to such issues.

25.     The Government Parties have also not fully responded to Movants' requests for transmittal records sufficient to permit the tracing of HTA-, CCDA-, and PRIFA-related funds. Regarding HTA, while the Government Parties initially provided limited information regarding wire transfers during the 2015-2017 period (but not 2018-2020), those records lacked any context that would allow Movants to trace the transfers to specific accounts.[6]  The disbursement detail memoranda that the Government Parties have produced for PRIFA also do not contain all of the relevant designations that could allow Movants to establish that particular funds were segregated for the benefit of PRIFA.  The Government Parties clearly can provide more complete information without undue burden.  For example, the Government Parties produced transmittal information for a limited period prior to June 2016, yet have not agreed to provide it for later periods.  They should be compelled to do so, rather than relying on self-selected partial production to be sufficient. *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 338, 343 (N.D. Ill. 1995) ("The Federal Rules . . . do not countenance self-selecting discovery by either party.").

26.     While the Government Parties suggest a full picture can be provided without transmittal and account-opening information, that is simply not true.  Using HTA as an example, a spreadsheet produced by AAFAF reflects an abrupt change in the accounting of the flow of funds, but none of the documents clearly explain that change.  Movants suspect that the Commonwealth treated the Excise Taxes as "passing through" HTA as they flowed in and out of Fund 278, but without complete transmittal records and account-opening documents, any ownership interests implicated by the flow of funds will remain obscured.  The Movants are thus

---

[6] The Government Parties represent that they have agreed to produce "direction letters or other instructions to financial institutions regarding transfers of the allegedly pledged revenues."  (Opp. ¶ 10.)  But they are also asserting that other transmittal information is too burdensome.  (*Id.* ¶¶ 12–13.)

left with only a hazy sketch of the flow of funds.  Judge Swain clearly held that Exhibit A to the

Government Parties' Opposition to the HTA Lift-Stay Motion was a proper subject for discovery.

That exhibit purports to diagram the HTA flow of funds.  More information is needed to trace the

Excise Tax proceeds and understand the ownership of the accounts they passed through.

### C.  The "Appropriations" Discovery Sought by Movants Is Warranted Under Judge Swain's Order.

27.    In arguing that the Court limited the scope of discovery to HTA flow-of-funds

issues, the Government Parties selectively quote the HTA Lift-Stay Opposition paragraphs setting

forth the factual statements subject to discovery.  (Opp. ¶¶ 5, 35-36, 51-52.)  The Extension Order

allowed discovery into *all* the factual assertions made in Exhibit A and paragraphs 77, 81, and 92

of the Government Parties' HTA Lift-Stay Opposition.  In those parts of its Lift Stay Opposition,

the FOMB asserted that the Excise Tax Statutes "requiring the Commonwealth to transfer future

revenues to HTA [were] an *appropriation* by one legislature" that "is repealable at any time."

(HTA Motion ¶ 92 (emphasis added).)  Based on that factual assertion, the Government Parties

argued that the Movants had a mere expectation that HTA would receive the Excise Taxes and

therefore lacked a cognizable property interest in those funds.  (*Id.*)  As "the Commonwealth has

not *appropriated*" the Excise Taxes to HTA, the Government Parties further reasoned, the funds

"cannot possibly be considered funds 'made available' to HTA."  (*Id.* (emphasis added).)  Exhibit

A to the Oversight Board's lift-stay opposition purports to show "*Appropriations*" to HTA of

Excise Taxes collected by the Commonwealth.  (*Id.* at Ex. A (emphasis added).)

28.    The Government Parties now argue that these statements implicate purely legal

questions.  (*See* Opp. ¶¶ 44-45, 56.)  But the Government Parties' characterization of the Excise

Taxes as "appropriations" is not accidental.  With this label, the Government Parties suggest that

transfers to HTA were and are subject to annual appropriation risk, as well as the supposed

preemptive effect of the Oversight Board's budgetary certification pen.  However, if discovery shows that the Excise Taxes are *not* discretionary amounts of money set aside annually by the Legislative Assembly but instead flow to HTA as a dedicated stream of special revenues outside the Commonwealth's budgetary process, those facts would undermine the basic premise of the Government Parties' "appropriation" theory.

29.     Evidence of budgetary practices is directly relevant for another reason: it provides useful guidance on how to interpret the Excise Tax Statutes themselves.  The Government Parties and the Movants undoubtedly read the terms of these statutes differently and have contrasting views of how the statutes operate.[7]  And when the statutory text does not clearly favor one interpretation, courts often turn to evidence of contemporaneous practice of government officials for guidance.  (*See* HTA-Motion at 21-22 & n.17.)  The extremely limited information currently available to the Movants suggests that the budgetary practices of Puerto Rico government officials undermine the Government Parties' characterization of the Excise Tax transfers as "appropriations," showing instead that the funds were deemed HTA's "Own Income."  (*See* HTA_387 at 394; HTA_403 at 413.)  Discovery into these practices is relevant to allow the Court to fully assess the Oversight Board's appropriation theory.

> **D.  Movants Are Entitled to Documents Sufficient to Understand the Designations Given to Funds Held by PRIFA, the Tourism Company, and HTA in the Cash Restriction Analysis.**

---

[7] The FOMB, for example, relies heavily on a few stray references to the verb *asignar* (and its inflected forms) in the Excise Tax Statutes.  (*See* Lift-Stay Opp. ¶ 86 n.36).  Although the term can mean "appropriate" in certain contexts, it can also mean "assign" or "allocate" in others.  *Asignar*, CAMBRIDGE DICTIONARY (2020), https://www.cambridge.org/us/dictionary/spanish-english/asignar. Contemporaneous budgeting practice would show how this term was understood by the officials charged with implementing the statute.  This evidence, albeit not dispositive, can inform the resolution of the parties' interpretative dispute.

30. The Government Parties object that Movants' Cash Restriction Requests "have nothing to do with the Lift Stay Motions" and Movants "d[id] not even attempt to explain how" the restriction designations contained therein are relevant. (Opp. ¶¶ 62-64). The Government Parties misstate Movants' positions. The Government Parties publicly disclosed the Cash Restriction Analysis ("CRA") upon which Movants' Cash Restriction Requests are based, which clearly identifies certain funds as being unavailable to Commonwealth Title III creditors (*i.e.*, "restricted" funds), and premised the Commonwealth's plan of adjustment on the CRA. (CRA at 3 (attached hereto as **Exhibit D**).) Movants are clearly entitled to discovery that reveals the basis for the Commonwealth's conclusion that funds held by PRIFA, the Tourism Company, and HTA are "restricted," (*id.* at 8-10), as such discovery may directly support Movants' arguments that, *inter alia*, the funds held by PRIFA, the Tourism Company, and HTA are "restricted funds" that cannot be used for any purpose other than to compensate bondholders, and that these funds are not needed for the Commonwealth's plan of adjustment. (CCDA Lift-Stay Motion ¶¶ 32, 72, 82, 103-04; PRIFA Lift-Stay Motion ¶¶ 57, 68 (Pledged Rum Taxes in the possession of the Commonwealth are "restricted funds" because the PRIFA Enabling Act requires that the funds when received shall be covered into a designated PRIFA account); HTA Lift-Stay Motion ¶¶ 51, 65, 90-1.) The designations in the CRA speak directly to several factual assertions the Oversight Board put at issue in their Oppositions, and go to the heart of the Lift-Stay Motions—including factual issues of ownership, flow of funds, and the existence of a trust. (*See* CCDA Opp. ¶¶ 39-41; PRIFA Opp. ¶¶ 69, 103 (denying that the Commonwealth holds the Pledged Rum Taxes in trust and contending that "no trust can exist where no "specific restriction [is] placed upon [the debtor's] use of the supposed trust funds"); HTA Opp. ¶ 92.)

14

31.     The Government Parties do not appear to dispute that the Cash Restriction Analysis addresses at least pledged revenues held by the Tourism Company (for CCDA bondholders), but they dispute whether the funds addressed therein are relevant to PRIFA and HTA bondholders. Movants and the Court are not required to defer to the Government Parties' unsworn factual assertions that the HTA and PRIFA funds addressed in the analysis are not relevant. The CRA is a proper subject for factual inquiry to determine which monies are in fact restricted.

32.     Movants note that they offered to enter into stipulations to avoid the need for discovery on certain topics, including the Cash Restriction Analysis. The Government Parties advised that they likely would refuse to enter into stipulations regarding the Cash Restriction Analysis. (*See* Exhibit B; Exhibit C.) Having declined the opportunity to stipulate to certain facts to narrow the necessary discovery, the Government Parties cannot in good faith complain about the burden of discovery that is now required to establish those facts.

### E.  The Government Parties' Attempt to Re-Litigate the Merits of Movants' Equitable Claims is Inappropriate and Unnecessary to Resolve this Motion.

33.     The Government Parties argue that Movants are improperly seeking discovery of documents relevant to determining whether Movants hold an equitable interest in the Pledged Revenues. (Opp. ¶¶ 51-54.) The Government Parties contend that discovery on this point is unnecessary because Movants cannot hold an equitable property interest in the Pledged Revenues as a matter of law. (*Id.* ¶ 53.) But Judge Swain already held that adjudication of this issue requires discovery. (Extension Order at 2.) The Government Parties will have the opportunity to litigate the scope of Movants' equitable interests at the April 2 hearing. But the Government Parties' attempt to relitigate Judge Swain's ruling that discovery should be provided in connection with these issues should be rejected.

34.     Moreover, Movants are not seeking discovery in an attempt to "change the meaning of the statutes, resolutions, or agreements," as the Government Parties argue.  (Opp. ¶ 52.)  Rather, the requested discovery is necessary to resolve factual disputes regarding how the requirements articulated in statutes, resolutions, or agreements were *implemented*—for example, accounts comprise the Holding Fund, Transfer Account, Surplus Account, and Pledge Account referred to in the CCDA Bond documents, or which accounts comprise the Puerto Rico Infrastructure Fund, or whether the Excise Taxes flowed to HTA as a dedicated stream of special revenues outside the Commonwealth's budgetary process—issues that the bond documents do not, in and of themselves, resolve.  (CCDA Lift-Stay Motion ¶¶ 35-34; CCDA Opp. ¶¶ 22, 39-41, 97; HTA Opp. ¶¶ 77, 81, 92, & Ex. A.)

35.     The partial glimpse provided by the Government Parties' productions so far, while insufficient, shows that the benefit of this discovery far outweighs the alleged (and unsupported) burden.  These materials undermine several of the Government Parties' factual assertions.  Indeed, these documents suggest that all of the Government Parties' assertions might be fully disproved if the critical discovery requested here is ordered.

## III.   <u>PRODUCING THE REQUESTED DOCUMENTS WOULD NOT BE "UNDULY BURDENSOME."</u>

36.     There is no merit to the Government Parties' contention that a further response to Movants' requests is unduly burdensome.  (Opp. ¶¶ 65-9.)  As a threshold matter, any burden must be weighed against the amount in controversy and the significance of the issues to be litigated. *See BuzzFeed, Inc. v. DOJ*, 318 F. Supp. 3d 347, 359 (D.D.C. 2018) (rejecting the government's "undue burden" argument and noting the import of considering the amount in controversy and significance of the issues at stake).  The Government Parties seek nothing less than the obliteration of billions of dollars in secured revenue bonds (which are the nation's primary financing tool for

funding capital improvements and other critical infrastructure projects), in a manner that Movants contend is a violation of critically important constitutional protections under the Fifth Amendment and the Due Process Clause.  Both the financial stakes of the case, including the impact that any decision will have on the bond markets, and the weighty constitutional rights at issue, demand— and the Extension Order requires—a fair opportunity for sufficient discovery.  Weighed against the importance of this case, the Government Parties' conclusory assertions show no undue burden.

37.     The Government Parties offer no declaration or other evidence of burden.  That alone is sufficient to reject their conclusory claim of "undue burden."  *See Green v. Cosby*, 152 F. Supp. 3d 31, 37 (D. Mass. 2015) (failure to submit an affidavit or other evidence demonstrating burden sufficient to reject claimed undue burden); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) ("A party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." (internal citation omitted)).

38.     Even the unsworn assertions of counsel to the Government Parties fall far short of showing that Movants' requests would involve an undue burden.[8]  The Government Parties argue that producing communications would require them to identify "multiple" custodians, across several entities.  But this is commonplace in complex commercial litigation, and Government Parties fail to show how this "burden" is any greater than the burden that all parties face in

---

[8] *See, e.g.*, *Doe v. Nebraska*, 788 F. Supp. 2d 975, 981 (D. Neb. 2011) ("A party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required."); *Transcore Atl., Inc.*, 319 F.R.D. at 427 ("When a party resists the production of evidence, it 'bears the burden of establishing the lack of relevancy or undue burden.  The objecting party 'must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive.'" (citations omitted)); *Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 625 (D. Kan. 2014) ("A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'").

discovery.  *Cf. Roberts v. Time Warner Cable, Inc*., 2017 WL 2836997, at *4 (D. Mass. June 30, 2017) (routine actions associated with the "litigation process" are not an undue burden).  Indeed, multiple custodians and entities are involved because the Government Parties are simultaneously attacking the secured status of several different groups of bondholders.  Movants cannot be prejudiced simply because the Government Parties might have to search a small handful of locations, rather than a single repository.[9]

39.     The Government Parties also mischaracterize Movants' requests as requiring "intensive fact discovery into every statement government officials may have made about the revenues at issue."  (Opp. ¶ 54.)  Movants have not requested "every statement" ever.  Quite the contrary, Movants have been clear that they are willing to meet and confer about a targeted search.  *In re Coventry Healthcare, Inc., ERISA Litig.*, 290 F.R.D. 471, 476 (D. Md. 2013) (ordering email production where the plaintiffs had worked with the defendants to limit the searches); *Bagley v. Yale Univ.*, 307 F.R.D. 59, 65-6 (D. Conn. 2015) (ordering production when professor made good-faith efforts to keep discovery within permissible bounds by limiting the number of targeted custodians).  The Government Parties, on the other hand, have refused to produce even a single communication—not even those that could be surfaced in a targeted and efficient search.

40.     Notably, there is precedent for conducting efficient and targeted searches, including in these Title III cases.  For example, when the Commonwealth sought approval to grant PREPA a debtor-in-possession ("DIP") loan, the Government Parties were able to search and produce emails relating to the DIP negotiations on an extremely expedited basis prior to the hearing on their DIP Motion.  The Government Parties have offered no reason they cannot do the same here.

---

[9] *Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007) ("[I]t cannot be argued that a party should ever be relieved of its obligation to produce accessible data merely because it may take time and effort . . . .").

## IV.    THE PARTIES SHOULD BE DIRECTED TO MEET AND CONFER ON TOPICS FOR RULE 30(b)(6) DEPOSITIONS.

41.    Although the Government Parties state that they are not categorically opposed to producing a 30(b)(6) witness for deposition (*see* Opp. ¶ 72), they inaccurately suggest that the Movants are seeking "broad" deposition testimony.  Quite the contrary, Movants have made every effort to identify an appropriate set of issues for deposition testimony, consistent with the issues identified by the Court as proper subjects for discovery.  Movants have served the Government Parties with Rule 30(b)(6) deposition notices, attached hereto as **Exhibit E**, which identify narrow topics that are critical to the legal issues Judge Swain identified as requiring discovery.  The Government Parties should be ordered to meet-and-confer with Movants to address any disputes over scope and to provide the requested testimony.

42.    The Government Parties proposal that Movants be required to "simply ask [their questions] of counsel" is an inefficient and insufficient substitute for testimony of knowledgeable witnesses.  (Opp. ¶ 72.)  "Written discovery is not a substitute for a Rule 30(b)(6) deposition." *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, 2013 WL 3946116, at *2 (E.D. Mo. July 31, 2013); *Buehrle v. City of O'Fallon, Mo.*, 2011 WL 529922, at *2-3 (E.D. Mo. Feb. 8, 2011) ("Discovery by means of a Rule 30(b)(6) deposition differs from discovery obtained through other means, e.g. interrogatories and requests for production. A Rule 30(b)(6) deposition allows the requesting party to obtain 'more complete information and is, therefore favored."); *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506-07 (D.S.D. 2009) ("Producing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent.").

43.    Movants have posed some informal questions to the Government Parties through counsel, but have not yet received answers to any of these questions (even basic questions, posed on February 26, 2020, regarding which account(s) comprise the Puerto Rico Infrastructure Fund

(for PRIFA) and the Transfer Account, Pledge Account, Holding Fund, or Surplus Account (for

CCDA)).  (Feb. 26, 2020 Letter from John J. Hughes (attached hereto as **Exhibit F**).)  Moreover,

Government Parties' counsel have refused to address basic gaps in the production of documents,

for example, CCDA-related transactions the purpose of which is unclear from the documents

produced.  Movants need an opportunity to pose their questions directly to knowledgeable

witnesses so they can obtain timely and complete answers.

44.    Depositions are necessary in any case to understand certain critical facts.  For

example, in addition to the specific questions Movants have posed to counsel, depositions will

address a broader set of questions regarding how the accounts worked, how funds were transferred,

and how "special funds" (a term used in the PRIFA Enabling Act) are maintained at the Puerto

Rico Treasury Department.  Questions of this nature cannot practically be answered merely

through document discovery or questions posed to counsel.  In addition, on some issues, such as

the Cash Restriction Analysis, the Government Parties have advised that no documents are

available to answer key questions (and questions posed through counsel have not been answered).

These issues require deposition testimony.

## **RELIEF REQUESTED**

45.    In light of the foregoing, Movants request that this Court order the Government

Parties to produce documents responsive to Movants' requests and produce 30(b)(6) deposition

witnesses subject to a meet-and-confer regarding appropriate 30(b)(6) topics.

46.    WHEREFORE the Movants respectfully request that this Court (i) enter the

Proposed Order attached as Exhibit A hereto granting the relief requested herein and in the

Motions, and (ii) grant Movants such other relief as is just and proper.

**Certification of Compliance with
Local Rule 9013-1 and Eleventh Amended Case Management Procedures**

Pursuant to Local Rule 9013-1 and ¶ I.H of the *Eleventh Amended Notice, Case Management and Administrative Procedures*, the undersigned counsel hereby certify that they have (a) carefully examined the matter and concluded that there is a true need for an urgent decision; (b) not created the urgency through any lack of due diligence; and (c) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court.

*[Remainder of page intentionally left blank]*

Dated:  March 2, 2020
  San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: */s/ Roberto Cámara-Fuertes*
  Roberto Cámara-Fuertes (USDC-PR No. 219002)
  Sonia Colón (USDC-PR No. 213809)
  221 Ponce de León Avenue, 5th Floor
  San Juan, PR 00917
  Telephone: (787) 766-7000
  Facsimile: (787) 766-7001
  Email:  rcamara@ferraiuoli.com
      scolon@ferraiuoli.com

**MILBANK LLP**

By: */s/ Atara Miller*
  Dennis F. Dunne (admitted *pro hac vice*)
  Atara Miller (admitted *pro hac vice*)
  Grant R. Mainland (admitted *pro hac vice*)
  John J. Hughes, III (admitted *pro hac vice*)
  55 Hudson Yards
  New York, NY 10001
  Telephone: (212) 530-5000
  Facsimile:  (212) 530-5219
  Email: ddunne@milbank.com
      amiller@milbank.com
      gmainland@milbank.com
      jhughes2@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: */s/ María E. Picó*
  María E. Picó
  (USDC-PR No. 123214)
  802 Ave. Fernández Juncos
  San Juan, PR 00907-4315
  Telephone: (787) 723-8520
  Facsimile: (787) 724-7844
  Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*
  Martin A. Sosland (admitted *pro hac vice*)
  5430 LBJ Freeway, Suite 1200
  Dallas, TX 75240
  Telephone: (469) 680-5502
  Facsimile: (469) 680-5501
  Email: martin.sosland@butlersnow.com
  Jason W. Callen (admitted *pro hac vice*)
  150 3rd Ave., S., Suite 1600
  Nashville, TN 37201
  Telephone: (615) 651-6774
  Facsimile: (615) 651-6701
  Email: jason.callen@butlersnow.com

*Attorneys for Financial Guaranty Insurance Company*

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC**

By: /s/ *Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    (USDC-PR No. 206314)
    Email: epo@amgprlaw.com

By: /s/ *Luis A. Oliver-Fraticelli*
    Luis A. Oliver-Fraticelli
    (USDC-PR No. 209204)
    Email: loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Facsimile: (787) 756-9010

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ *Robert Berezin*
    Jonathan D. Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert Berezin (admitted *pro hac vice*)
    Kelly DiBlasi (admitted *pro hac vice*)
    Gabriel A. Morgan (admitted *pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email: jonathan.polkes@weil.com
        gregory.silbert@weil.com
        robert.berezin@weil.com
        kelly.diblasi@weil.com
        gabriel.morgan@weil.com

***Attorneys for National Public Finance Guarantee Corp.***

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    (USDC-PR No. 204809)
    Ricardo F. Casellas-Sánchez
    (USDC-PR No. 203114)
    Diana Pérez-Seda
    (USDC-PR No. 232014)
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
        rcasellas@cabprlaw.com
        dperez@cabprlaw.com

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr. (admitted *pro hac vice*)
    Mark C. Ellenberg (admitted *pro hac vice*)
    William J. Natbony (admitted *pro hac vice*)
    Ellen M. Halstead (admitted *pro hac vice*)
    Thomas J. Curtin (admitted *pro hac vice*)
    Casey J. Servais (admitted *pro hac vice*)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
        mark.ellenberg@cwt.com
        bill.natbony@cwt.com
        ellen.halstead@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

***Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.***

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

CM/ECF participants in this case.

*/s/ Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com