**Hearing Date**: April 22, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: April 7, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x
                                                   :

In re:                                     :

                                     :

THE FINANCIAL OVERSIGHT AND      :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,   :   Title III

                                     :

        as representative of              :   Case No. 17-BK-3283 (LTS)

                                     :

THE COMMONWEALTH OF PUERTO RICO, *et al.*,   :   (Jointly Administered)

                                     :

        Debtors.[1]                         :
------------------------------------------------------------------------ x

## NOTICE OF HEARING ON MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013 FOR ENTRY OF AN ORDER RECLASSIFYING CLASS 39A AND CLASS 41 CLAIMS UNDER OVERSIGHT BOARD'S PLAN OF ADJUSTMENT DATED <u>FEBRUARY 28, 2020</u>

**PLEASE TAKE NOTICE** that a hearing on the *Motion of Official Committee of*

*Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of an*

*Order Reclassifying Class 39A and Class 41 Claims Under Oversight Board's Plan of*

*Adjustment Dated February 28, 2020* (the "<u>Motion</u>") filed by the Official Committee of

Unsecured Creditors,[2] will be held before the Honorable Laura Taylor Swain, United States

District Judge, at the United States District Court for the District of Puerto Rico, in Room 3, 150

---

[1]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (Last Four Digits of Federal Tax ID: 3801)(Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]    The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

Carlos Chardón Street, Federal Building, Office 150, San Juan, Puerto Rico 00918-1767 on

**April 22, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)** (the "Hearing").

      **PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections")

to the Motion by any party shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court (a) by

attorneys practicing in the District Court, including attorneys admitted *pro hac vice*,

electronically in accordance with rule 5 of the Local Rules for the District of Puerto Rico, and (b)

by all other parties in interest, by submitting a hard copy via mail to the Clerk's Office, United

States District Court, Room 150 Federal Building, San Juan, PR 00918-1767 or by hand delivery

to the Clerk's Office, United States District Court, 150 Carlos Chardon Avenue, Room 150, San

Juan, PR 00918, to the extent applicable, and shall be served in accordance with the *Eleventh*

*Amended Case Management Procedures* [Docket No. 11885, Ex. 1], so as to be so filed and

received no later than **April 7, 2020 3:00 p.m. (ET) / 4:00 p.m. (AST)** (the "Objection

Deadline").

      **PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

District Court may enter an order granting the relief sought without a hearing pursuant to the

*Eleventh Amended Case Management Procedures*.


Dated: March 3, 2020         By:  */s/ Luc A. Despins*

                    PAUL HASTINGS LLP
                    Luc A. Despins, Esq. *(Pro Hac Vice)*
                    G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
                    200 Park Avenue
                    New York, New York 10166
                    Telephone:  (212) 318-6000

lucdespins@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors*

By:   */s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR
306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured
Creditors*

**Hearing Date**: April 22, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: April 7, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

----------------------------------------------------------------------- x
                                 :

In re:                             :
                                 :

THE FINANCIAL OVERSIGHT AND       :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,   :   Title III
                                 :

         as representative of           :   Case No. 17-BK-3283 (LTS)
                                 :

THE COMMONWEALTH OF PUERTO RICO, *et al*.,   :   (Jointly Administered)
                                 :

         Debtors.[1]                     :
----------------------------------------------------------------------- x

## MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013 FOR ENTRY OF AN ORDER RECLASSIFYING CLASS 39A AND CLASS 41 CLAIMS UNDER OVERSIGHT BOARD'S PLAN OF ADJUSTMENT DATED FEBRUARY 28, 2020

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

JURISDICTION AND VENUE .............................................................................................. 3

BACKGROUND ........................................................................................................................ 4

RELIEF REQUESTED .............................................................................................................. 5

ARGUMENT ............................................................................................................................... 5

I.      CLASSIFICATION ISSUES ARE RIPE FOR DETERMINATION ............................... 5

II.     CLASSIFICATION SCHEME IN AMENDED PLAN CANNOT BE
        APPROVED UNDER FIRST CIRCUIT'S STRICT APPROACH TO
        CLASSIFICATION ............................................................................................................ 8

NOTICE ...................................................................................................................................... 11

NO PRIOR REQUEST ............................................................................................................ 11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 500 Fifth Ave. Assocs.*,
  148 B.R. 1010 (Bankr. S.D.N.Y. 1993), *aff'd*, 1993 WL 316183
  (S.D.N.Y. May 21, 1993).............................................................................5, 6

*Ambac Assurance Corp. v. Puerto Rico*,
  Adv. Proc. No. 17-159-LTS (Bankr. D.P.R. Jul. 28, 2017)
  [Docket No. 48] ........................................................................................5

*In re Barney & Carey Co.*,
  170 B.R. 17 (Bankr. D. Mass. 1994) ......................................................9

*In re Bjolmes Realty Tr.*,
  134 B.R. 1000 (Bankr. D. Mass. 1991) ................................................10

*In re Bos. Post Rd. Ltd. P'ship*,
  21 F.3d 477 (2d Cir. 1994)........................................................................9

*Brief for Defendants-Appellees, ACP Master, LTD. v. Puerto Rico*,
  Case No. 18-1108 (1st Cir. Jul. 2, 2018) ................................................5

*In re City of Detroit*,
  No. 13-53846 (Bankr. E.D. Mich. Jan. 16, 2014).................................1

*In re DRW Prop. Co. 82*,
  60 B.R. 505 (Bankr. N.D. Tex. 1986).......................................................6

*In re G & C Foundry Co., Ltd.*,
  No. 06-30601, 2008 WL 4560741 (Bankr. N.D. Ohio Oct. 9, 2008) ........6

*Granada Wines, Inc. v. New England Teamsters & Trucking
  Indus. Pension Fund*, 748 F.2d 42 (1st Cir. 1984)....................................8, 9, 10, 11

*In re Hanish, LLC*,
  570 B.R. 4 (Bankr. D.N.H. 2017) ............................................................9

*In re Highlands Grp. of Brunswick, LLC*,
  No. 11-07628-8-SWH, 2012 WL 5385633
  (Bankr. E.D.N.C. Nov. 1, 2012) ..............................................................6

*In re Mirant Corp.*,
  No. 03-46590-DML-11, 2005 WL 6440372
  (Bankr. N.D. Tex. May 24, 2005)..............................................................6

*In re Nat'l/Northway Ltd. P'ship*,
  279 B.R. 17 (Bankr. D. Mass. 2002) ......................................................................9

*In re Provident Royalties, LLC*,
  No. 09-33886, 2010 WL 2404278
  (Bankr. N.D. Tex. June 10, 2010)...........................................................................5

**Statutes**

Bankr. Code
  § 507(a)(2) Title III ..................................................................... *passim*
  § 1122.........................................................................................................2

ERISA ...............................................................................................8, 9

**Other Authorities**

Alan N. Resnick & Henry J. Sommer, 9 *Collier on Bankruptcy*
  ¶ 3013.01 (16th ed.) .................................................................................3

Bankr. R.
  3013.................................................................................................3, 5, 6, 1

*Fed. R. Civ. P.*
  *12(b)(1)* ...................................................................................................5
  *12(b)(6)* ...................................................................................................5

Promesa
  § 306(a) ....................................................................................................3, 1
  § 307(a) ....................................................................................................3, 1
  § 310.........................................................................................................3, 1

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee"),[2] respectfully files this motion (the "Motion") pursuant to Rule 3013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") requesting entry of an order, substantially in the form attached hereto as **Exhibit A**, reclassifying Class 39A and Class 41 claims under the proposed plan of adjustment dated February 28, 2020 [Docket No. 11946] (the "Amended Plan").  In support of the Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Nearly three years after it commenced these Title III cases, on February 28, 2020 the Oversight Board filed its Amended Plan and related disclosure statement (the "Amended Disclosure Statement")[3] for the Commonwealth and certain other debtors.  While the Committee believes (and will demonstrate at the appropriate time) that the Amended Plan and the Amended Disclosure Statement are deeply flawed, the Oversight Board does get one thing right:  every effort should be taken to ensure that Puerto Rico's financial restructuring not impact its (almost exclusively) on-island creditors who have contributed tremendous value to the Commonwealth and to Puerto Rico as a whole and who played no role in the "hasty and imprudent financial decision-making that" describes many of the Debtors' pre-petition financial transactions and which "practices have already caused great harm to [Puerto Rico]'s creditors and to its citizens."[4] Accordingly, while any cuts to pensions paid to retired government workers are regrettable, the Amended Disclosure Statement explains that the Oversight Board proposes to pay the general

---

[2]   The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and
      COFINA.
[3]   *See Am. Disclosure statement*, Feb. 28, 2020 [Docket No. 11947].
[4]   *See* Hr'g Tr. at 20:16-25, 22:4-11, *In re City of Detroit*, No. 13-53846 (Bankr. E.D. Mich. Jan. 16, 2014)
      [Docket No. 2521].

unsecured claims of former government employees (the "Retirees") between 92.5% and 100% of their claims under the Amended Plan.

2.      What the Oversight Board fails to understand, however, is that the other general unsecured creditors—the overwhelming majority of whom live and work on Puerto Rico—are equally "sons and daughters of Puerto Rico" who have provided, and (in some instances) continue to provide, equal value to the Commonwealth, hold claims that are legally indistinguishable from the Retirees' claims and are, therefore, entitled to the same treatment as their retired brethren.  Instead of recognizing this, however, the Oversight Board proposes to separately classify all of these general unsecured claims and pay thousands of local Puerto Rico vendors, small business owners, service providers, and other creditors no more than 3.9% on their claims.  Accordingly the Committee asks merely that—consistent with First Circuit precedent—this Court ensure that the general unsecured claims in Class 41 are classified together with the Retirees' claims such that, as required by First Circuit precedent, they receive no less than the Oversight Board proposes to pay to Retirees.

3.      As discussed in greater detail below, the First Circuit has adopted a "strict approach" to plan classification, which rejects any basis for the separate classification of unsecured claims that have the same legal rights as against the debtor and its property.  The separate classification of Retiree claims from all other general unsecured claims fails to satisfy the "strict approach" because both are garden variety unsecured claims that have the same legal rights against the Commonwealth and its property and, therefore, must be classified together under controlling First Circuit precedent.

4.      In situations such as this, a bankruptcy court is not required to, and should not, wait until confirmation only to find that a plan does not satisfy the classification requirements.

2

Bankruptcy Rule 3013, by its plain language, permits a bankruptcy court to "determine classes of creditors" in advance of confirmation. The policy underlying Rule 3013 is straightforward: "there are occasions when classification issues may be so obvious and their resolution so central to the confirmability of the plan that the question of proper classification is best addressed prior to consideration of a plan at a confirmation hearing." Alan N. Resnick & Henry J. Sommer, 9 *Collier on Bankruptcy* ¶ 3013.01 (16th ed.). Bankruptcy Rule 3013 allows a bankruptcy court to avoid expending limited judicial and estate (or debtor) resources by allowing a plan to move to the confirmation phase when the plan does not satisfy the classification requirements.

5.      This rationale rings even more true here. The Oversight Board has proposed to circulate its Amended Plan and Amended Disclosure Statement to thousands of claimants by July 2, 2020, in order to solicit votes on the Amended Plan, spending millions of dollars and asking thousands of creditors to vote on a plan of adjustment that is based on a classification scheme that is contrary to First Circuit law. Alternatively, the Court can decide the classification issue (which is a purely legal issue ripe for determination) prior to approval of any disclosure statement, thereby avoiding the need to repeat the time consuming and expensive solicitation process.

6.      For this reason, the Committee files the Motion and hereby respectfully requests that the Court decide the classification issue now in advance of the proposed June 3, 2020 disclosure statement hearing.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA. Venue is proper pursuant to section 307(a) of PROMESA.

8.      The relief herein is requested pursuant to Bankruptcy Rule 3013, as made applicable to these Title III cases by section 310 of PROMESA.

## BACKGROUND

9.     The Committee represents, in a fiduciary capacity, the interests of all general

unsecured creditors of the Commonwealth.  Its constituents include small business owners, trade

vendors and service providers, and current employees (among many others) holding a range of

unsecured claims.  Over 100,000 general unsecured claims have been filed in these Title III

Cases, over 91% of which are held by claimants who reside in Puerto Rico.

10.     On February 28, 2020 the Oversight Board filed its Amended Plan and Amended

Disclosure Statement[5] reflecting proposed compromises reached with certain bondholder groups.

11.     As relevant to this Motion, the Amended Plan creates the following classes: (i)

classes 11  through 38, which include various claims for unsecured bonds issued or insured by

the Commonwealth (the "GO Bond Classes"); (ii) Class 39A Retiree Claims ("Class 39A"); and

(iii) Class 41 Commonwealth General Unsecured Claims ("Class 41").  Under the Amended

Plan, creditors holding claims in the GO Bond Classes are slated to receive (depending on the

year of issuance) a recovery of between 65.4% and 77.6%;[6] creditors in Class 39A are slated to

receive a recovery between 92.5% and 100.0%;[7] and creditors in Class 41 are slated to receive a

recovery of 3.9%.[8]

12.     Neither the Amended Plan nor the Amended Disclosure Statement explain (or

attempt to justify) why the claims of general unsecured creditors in Class 41 have been

---

[5]     The Amended Plan and Amended Disclosure Statement modified earlier versions filed in September of 2019.
*See Title III Joint Plan of Adjustment*, Sept. 27, 2019 [Docket No. 8765], and *Disclosure Statement*, Sept. 27,
2019 [Docket No. 8766].

[6]     Am. Disclosure Statement at 14-17.  The Committee disagrees with the calculation of the estimates for the
recovery percentages for the GO Bond Classes.  The Committee reserves all its rights in this regard.

[7]     The Amended Disclosure Statement explains that holders of Class 39A Retiree Claims receive their benefits
subject to an 8.5% reduction to the extent that monthly benefits exceed $1,200.  In other words, Class 39A
Retiree Claims will receive between 92.5% and 100% on their claims.  Additionally, under certain
circumstances Retirees may increase their recoveries through a "Monthly Benefit Restoration."  *See* Am.
Disclosure Statement 25-28.

[8]     Am. Disclosure Statement at 17.

separately classified from the Class 39A Retiree Claims, which are also general unsecured

claims.  Indeed, the Oversight Board would be hard-pressed to do so in light of its repeated

statements that "PROMESA only incorporates into Title III a single priority claim:

administrative expense claims."[9]

## RELIEF REQUESTED

13.    The Committee requests entry of an order, substantially in the form attached

hereto as **Exhibit A**, reclassifying together all claims in Class 39A and Class 41 .

## ARGUMENT

### I.    Classification Issues Are Ripe For Determination

14.    Bankruptcy Rule 3013 "provides a mechanism through which a party in interest

may seek determination of the status and classification of its claim."  *In re 500 Fifth Ave.*

*Assocs.*, 148 B.R. 1010, 1017 n.7 (Bankr. S.D.N.Y. 1993), *aff'd*, 1993 WL 316183 (S.D.N.Y.

May 21, 1993).[10]  The "utility of the procedure offered by [Bankruptcy Rule 3013] is in

addressing classification issues prior to the expense of the disclosure and plan confirmation

---

[9]    *See Opposition of Financial Oversight and Management Board for Puerto Rico to Motion of Assured Guaranty
Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee
Corporation, and Financial Guarantee Insurance Company for Relief from Automatic Stay or, in the
Alternative, Adequate Protection* [ECF No. 673], Feb. 3, 2020, [Docket No. 10613]; *see also Motion to Dismiss
Plaintiff's Complaint Pursuant to Fed. R. Civ. 12(b)(1) and (b)(6)*, at 4-5, *Ambac Assurance Corp. v. Puerto
Rico*, Adv. Proc. No. 17-159-LTS (Bankr. D.P.R. Jul. 28, 2017) [Docket No. 48] ("Ambac's Complaint
pretends that Congress adopted Puerto Rico's claim priorities as PROMESA's claim priorities."); *Motion to
Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. 12(b)(1) and (b)(6)*, at 15, *ACP Master, LTD. v. Puerto
Rico*, Adv. Proc. No. 17-189-LTS (Bankr. D.P.R. Aug. 21, 2017), [Docket No. 35] ("It would have been easy
for Congress to provide in PROMESA that the Title III priorities shall be the nonbankruptcy law priorities.
Congress did not do that."); *Brief for Defendants-Appellees, ACP Master, LTD. v. Puerto Rico*, Case No. 18-
1108 (1st Cir. Jul. 2, 2018) ("[PROMESA] incorporates only one priority into Title III: Bankruptcy Code §
507(a)(2), which grants priority to administrative claims.  No other priorities exist in Title III.").

[10]    Any party in interest (not only the proponent of a plan) can seek relief pursuant to Rule 3013.  *See, e.g.*, *In re
Provident Royalties, LLC*, No. 09-33886, 2010 WL 2404278, at *3(Bankr. N.D. Tex. June 10, 2010) (motion
brought by creditors committee); *In re 500 Fifth Ave. Assoc.*, 148 B.R. at 1021 (Rule 3013 motion brought by
undersecured creditor); *see also* 9 Collier on Bankruptcy ¶ 3013.01 (Alan N. Resnick & Henry J. Sommer eds.
16th ed.).

process." *In re G & C Foundry Co., Ltd.*, No. 06-30601, 2008 WL 4560741, at * 3 (Bankr. N.D.

Ohio Oct. 9, 2008) (quoting 1983 Advisory Committee Note to Rule 3013).[11]

15.     Thus, Rule 3013 is a valuable tool that allows courts to determine at an early stage

whether the proposed classification of a claim or class of claims is permissible, and thus avoid

the significant costs and inefficiencies of soliciting and attempting to confirm a flawed plan.  The

proper classification of Class 39A and Class 41[12] is ripe for determination and should be

determined prior to determination of the adequacy of the Amended Disclosure Statement.

Indeed, numerous courts have done just that.  *See, e.g.*, *In re Highlands Grp. of Brunswick, LLC*,

No. 11-07628-8-SWH, 2012 WL 5385633, at *6 (Bankr. E.D.N.C. Nov. 1, 2012) (adjudicating

creditors' Rule 3013 motion prior to disclosure statement hearing); *In re 500 Fifth Ave. Assocs.*,

148 B.R. at 1013 (granting creditors' Rule 3013 motion where "[j]ust before the hearing on [the

Rule 3013] motion, the debtor submitted a draft 'skeletal' plan of reorganization and disclosure

statement"); *see generally In re Mirant Corp.*, No. 03-46590-DML-11, 2005 WL 6440372, at *1

& n.1 (Bankr. N.D. Tex. May 24, 2005) (adjudicating official creditors committee's Rule 3013

motion "in connection with consideration" of disclosure statement and ruling on Rule 3013

motion over four months prior to entry of order approving disclosure statement); *In re DRW*

*Prop. Co. 82*, 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986) (adjudicating debtors' and investors

committees' joint Rule 3013 motion prior to solicitation of votes).

---

[11]   The Advisory Committee Note to Rule 3013 states: "Sections 1122 and 1322(b)(1) set the standards for
classifying claims and interests but provide that such classification is accomplished in the plan.  This rule does
not change the standards; rather it recognizes that it may be desirable or necessary to establish proper
classification before a plan can be formulated.  It provides for a court hearing on such notice as the court may
direct."  Indeed, the only logical purpose of Rule 3013 is to provide a mechanism to determine proper
classification prior to plan confirmation, as a party in interest could always challenge classification at
confirmation even if Rule 3013 had never been adopted.

[12]   The Committee continues to review and evaluate, and reserves all rights with regards to, the classification of the
52 separate classes in the Amended Plan, including but not limited to the classification of the GO Bond Classes
and the Gracia-Gracia claims in class 51.

16.     The Oversight Board has indicated that it will pursue an aggressive schedule for
confirmation of the Amended Plan, with solicitation materials to be mailed by July 2, 2020, and
a hearing on confirmation in October of 2020.[13]  To that end, and contrary to the Oversight
Board's position that any challenges to the classification of claims in the Amended Plan will
have to be decided at confirmation,[14] the Committee respectfully submits that the Court should
take up consideration of the Motion **now**, prior to the Oversight Board embarking on a sprint to
confirmation with a patently unconfirmable plan.

17.     Prompt consideration of the Motion will conserve Commonwealth and court
resources and guard against waste before the Oversight Board is permitted to embark on a
process of mailing out solicitation materials to hundreds of thousands of creditors.  Should the
Court defer consideration of the Motion, the Court risks having to undertake an expensive and
time-consuming re-solicitation of the Plan in the inevitable scenario that the classification
scheme is deemed contrary to First Circuit precedent.  Furthermore, under the currently proposed
schedule, classification will not be addressed until a confirmation hearing—meaning that
addressing classification now will allow the Court to potentially save the time and expense not
only of solicitation of a fundamentally flawed plan, but also of preparing for a contested
confirmation hearing on that same fundamentally flawed plan.

18.     Moreover, there is no question that the Court will have to rule on the
classification issues raised in this Motion; the only question is when.  Accordingly, while there is

---

[13]    *See Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of
the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (I) Scheduling
a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the
Deadline for Filing Spanish Translation of the Disclosure Statement, (III) Establishing the Deadline for Filing
Objections to the Disclosure Statement and Replies Thereto, and (IV) Granting Related Relief* [Docket No.
10808].*

[14]    *See Response of Financial Oversight and Management Board for Puerto Rico to Amended Report and
Recommendation of Mediation Team* [Docket No. 11492] ¶ 17 (stating that Oversight Board supports proposed
schedule for hearings on disclosure statement and plan and filing of objections thereto).

an obvious and important benefit to determining classification now, there is no downside to

addressing the classification issue at this point.  Finally, the Committee notes that because (as

explained below) the First Circuit has adopted a purely legalistic standard to classification, the

issues raised in this Motion can be resolved particularly quickly.

## II.    Classification Scheme in Amended Plan Cannot Be Approved Under First Circuit's Strict Approach to Classification

19.     The seminal case in the First Circuit regarding the appropriate classification of

claims is *Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 748

F.2d 42, 46 (1st Cir. 1984).  In that case, a pension fund had a claim against the debtor for

withdrawal liability in connection with the debtor's withdrawal from a multiemployer pension

plan (the "Pension Fund Claim").  The debtor proposed a plan under which general unsecured

creditors would receive a 30% recovery, and the Pension Fund Claim would be paid at 15%—

reducing the Pension Fund Claim "by one-half of the percentage other unsecured creditors would

receive."  *Granada Wines,* 748 F.2d at 44.  On appeal to the First Circuit, the debtor asserted that

"separate classification was justified because the withdrawal liability claim would be treated

differently from other general unsecured claims in a Chapter 7 proceeding" under a provision of

ERISA that reduces by half an employer's withdrawal liability in a chapter 7 liquidation (but not

in a chapter 11 reorganization).

20.     Rejecting this argument, the First Circuit explained that "separate classifications

for unsecured creditors are only justified where the legal character of their claims is such as to

accord them a status different from the other unsecured creditors."  *Granada Wines*, 748 F. 2d at

46 (internal quotation marks omitted).  The First Circuit held that the statutory reduction of the

Pension Fund Claim was not "a sufficient basis for distinguishing the Pension Fund claim from

other general unsecured claims."  *Id.* at 47.  Even if applicable, the "limitation of liability under

8

[ERISA] affects only the allowable amount of the withdrawal claim, not its legal nature." *Id.*

Accordingly, the First Circuit concluded that the debtor "could not separately classify the

Pension Fund Claim" from other unsecured claims and affirmed the bankruptcy court's ruling

requiring the debtor to increase its payment of the Pension Fund Claim so that it received "the

same percentage" as the debtor "will pay other unsecured creditors on their claims." *Id.* at 43,

47.

21.     Since then, courts in the First Circuit have consistently explained that, under

*Granada Wines*, "the First Circuit has adopted a strict approach, namely, that all claims of equal

legal priority must be placed in the same class, subject to the administrative convenience

exception." *In re Barney & Carey Co.*, 170 B.R. 17, 22 (Bankr. D. Mass. 1994) (citing *Granada

Wines,* 748 F.3d at 46). Courts in other circuits may have "adopted a test less stringent than the

strict approach of *Granada Wines* and permit[] separate classification of claims based upon the

economic or business reasons advanced by a debtor." *In re Nat'l/Northway Ltd. P'ship,* 279 B.R.

17, 30 (Bankr. D. Mass. 2002). However, "[t]he strict approach of *Granada Wines* carves out no

such exemptions to the general rule for classifying claims in [the First C]ircuit." *Id.*; *see also In

re Bos. Post Rd. Ltd. P'ship*, 21 F.3d 477, 481 (2d Cir. 1994) (citing *Granada Wines* in support

of proposition that "some courts have gone further, holding that a plan **must** classify all

substantially similar claims together, regardless of the debtor's intent,") (emphasis in original).

22.     "Given that the First Circuit applies the strictest approach to classification, it

necessarily follows that other courts have accepted justifications for separate classification that

are simply inconsistent with" First Circuit law. *In re Hanish, LLC*, 570 B.R. 4, 15 (Bankr.

D.N.H. 2017). Moreover, the First Circuit's strict approach that separate classification requires a

difference in "legal character" cannot be satisfied by legal distinctions that are of no impact in a

9

bankruptcy case.  "*Granada Wines* requires a difference in rank concerning rights against the debtor or its property."  *In re Bjolmes Realty Tr.*, 134 B.R. 1000, 1003 (Bankr. D. Mass. 1991).

23.     In *Bjolmes Realty*, the debtor had classified an unsecured deficiency claim held by the FDIC separately from other unsecured claims.  After dismissing as inconsistent with First Circuit law the debtor's "fond references to decisions handed down in other jurisdictions permitting separate classification of claims based upon practical difference[s] among the classes," 134 B.R. at 1003, the court addressed the debtor's argument that (as required by *Granada Wines*), the FDIC claim was of a different legal nature than other unsecured claims due to "legal features of the FDIC unsecured claim which are not present in the trade debt" including the presence of personal guarantees and the benefit of a longer statute of limitations.  *Id.*  However, the court rejected this argument as well, explaining that such non-bankruptcy differences in legal rights and obligations "are not enough" under *Granada Wines* and that "*Granada Wines* requires a difference in rank concerning rights against the debtor or its property."  *Id.*

24.     The Amended Plan separately classifies Class 39A from Class 41 notwithstanding that the claims in both classes are general non-priority unsecured claims.  The Oversight Board has not offered (nor can it offer) any "difference in rank concerning rights against the debtor or its property."  As such, as a matter of law, the proposed classification scheme cannot be approved under controlling First Circuit law.[15]

25.     Certainly, the Committee is cognizant of the critical contributions and value that were provided by all creditors in Class 39A and in Class 41, among others.  As the fiduciary for all general unsecured creditors, the Committee is obligated, and will continue, to work to obtain

---

[15]  Because the First Circuit has rejected any such considerations, there is no need to delve into the importance to Puerto Rico, the Commonwealth, or any proposed plan of adjustment of any creditor body weighed against any other.  The Committee reserves all rights in this regard.

the highest possible recovery for its constituents consistent with all applicable legal requirements. Thus, the Committee asks merely that—just as the First Circuit did in *Granada Wines*—this Court ensure that Class 41 general unsecured claims receive the same percentage on their claims as the Oversight Board will pay the general unsecured claims in Class 39A.

## **NOTICE**

26.     Notice of this Motion has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United State Attorney for the District of Puerto Rico; (iii) the Oversight Board; (iv) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (v) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors; and (vi) all parties that have filed a notice of appearance in the Title III Cases.

## **NO PRIOR REQUEST**

27.     No previous request for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Committee respectfully requests that the Court enter an order,

substantially in the form attached hereto as **<u>Exhibit A</u>**, granting the relief requested in this

Motion and granting such other relief as the Court deems just and proper.

Dated: March 3, 2020                By:  _/s/ Luc A. Despins_

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By:  _/s/ Juan J. Casillas Ayala_

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*