UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |

**UPDATED JOINT STATUS REPORT OF THE DRA PARTIES AND THE MONOLINES
REGARDING THE DRA PARTIES' MOTION TO PARTICIPATE IN THE
MONOLINES' AMENDED LIFT STAY LITIGATION AND THE JOINT
<u>PARTICIPATION STIPULATION</u>**

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

4149-9945-6035

**COME NOW** AmeriNational Community Services, LLC (hereafter the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company which serves as the collateral monitor for Wilmington Trust, N.A. in connection with the new bonds issued by the DRA pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018 and the approved Qualifying Modification for the Government Development Bank for Puerto Rico[2] under Title VI of the *Puerto Rico Oversight, Management and Economic Stability Act* (the "Collateral Monitor" and with the Servicer, the "DRA Parties"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*, 48 U.S.C. § 2101 *et seq.* ("PROMESA"), Ambac Assurance Corporation ("Ambac"), Assured Guaranty Corp. ("AGC"), Assured Guaranty Municipal Corp. (together with AGC, "Assured"), National Public Finance Guarantee Corporation ("National"), and Financial Guaranty Insurance Company ("FGIC", and, together with Ambac, Assured, and National, the "Monolines"), by and through the undersigned legal counsel, and respectfully submit this updated joint status report in response to the Court's February 27, 2020 Order [Dkt. No. 11802], and further to the Joint Status Report of the DRA Parties and the Monolines filed on February 28, 2020 [Dkt. No. 11949] ¶ 10.

1. The DRA Parties and the Monolines file this joint status report as an update to their report filed on February 28, 2020 [Dkt. No. 11949] (the "Initial Status Report"), which is incorporated herein.[3] Portions of the February 28 joint status report are included below for ease of reference.

---

[2] *See* Dkt. No. 270 of Civil Case No. 18-01561 (LTS).
[3] Capitalized terms not defined herein shall be as defined in the Initial Joint Status Report.

4149-9945-6035

2. On February 27, 2020, the Court entered an order requiring the DRA Parties and the Monolines to meet and confer and file a joint status report that identifies which of the Overlapping Issues the parties agree are Shared Issues (as that term is defined in the order) on or before February 28, 2020. *See* Dkt. No. 11802 at 4.

3. The DRA Parties and the Monolines met and conferred at 4:30 pm EST on February 27, 2020 pursuant to the Court's order. AAFAF also participated in the meet and confer. The Monolines proposed amending the descriptions of certain of the Overlapping Issues. The DRA Parties requested that the Monolines propose any amendments they wish to make to the proposed Overlapping Issues so that they would be Shared Issues.

4. At approximately 5:00 pm EST on February 28, 2020, the Monolines sent proposed edits to the proposed order that accompanied the Participation Stipulation (the "Proposed Order") to the DRA Parties and AAFAF.

5. **DRA Parties' Position:** The Monolines did not modify Overlapping Issues (i), (ii), (v), (vi) or (vii). It is therefore the DRA Parties' understanding that the Monolines do not dispute that the following Overlapping Issues are Shared Issues.[4]

> (i) the extent to which the Excise Tax Statutes are preempted by PROMESA;
>
> (ii) the extent to which the Excise Tax Statutes can bind future legislatures;
>
> (v) the scope and validity of any security interests granted to HTA bondholders pursuant to the terms of the 1968 and 1998 HTA Bond Resolutions, and whether HTA bondholders' security interests extend to tax revenues retained by the Commonwealth;
>
> (vi) whether any liens possessed by the HTA bondholders stopped attaching once the Commonwealth and/or HTA filed for relief under Title III including pursuant to Bankruptcy Code section 552(a); and

---

[4] The Monolines made other edits to the Proposed Order which the DRA Parties do not believe address the Court's request to "to . . . file a joint status report that identifies which of the eight issues identified in the Joint Stipulation the parties agree are Shared Issues and which issues, if any, the parties dispute." Order [Dkt. No. 11802] at 4.

4149-9945-6035

(vii) the validity of the Commonwealth's retention and use of the tax revenues under the Excise Tax Statutes.

6. The Monolines proposed to add the qualification that "the DRA Parties shall have no right to raise any intercreditor issues or to be heard on any claim regarding the DRA Parties' interest (if any) in any funds in any capacity other than as HTA bondholders, and any such issues are specifically excluded from the Overlapping Issues." As the DRA Parties have discussed with the Monolines, the DRA Parties are willing to represent on the record that they do not consider intercreditor disputes to be Overlapping Issues if the other parties do too. However, preventing the DRA Parties from addressing Overlapping Issues in their capacity as the holder of HTA loans is unreasonable because the purpose of the DRA Parties participating in the Monolines' Amended Lift Stay Litigation is to provide the DRA Parties' unique perspective on the Overlapping Issues on account of the HTA loans.

7. The Monolines have proposed that the DRA Parties should be precluded from introducing any documents, agreements, or evidence other than what the parties to the Monolines' Lift Stay Motion introduce. The DRA Parties agree not to introduce the Master Transfer Agreement. However, a blanket prohibition on introducing any documents, agreements or evidence not introduced by the Monolines is too broad and restrictive and undermines the purpose of the DRA Parties' participation—which is to make arguments that are not otherwise pressed by existing parties to the litigation.

8. The Monolines also propose that Overlapping Issues should be limited to the Monolines' property rights. The DRA Parties disagree with this approach because, to the extent that arguments with respect to the Monolines' property rights have implications for the DRA Parties' property rights, the DRA Parties need to be able to address them so the Court can decide those arguments on a fulsome record.

4

9. Further, the Monolines' proposed seven (7) page limit on the DRA Parties' briefing ignores that there may be instances in which a longer brief is necessary. In those instances, the DRA Parties reserve the right to seek leave of the Court to file a longer brief. The DRA Parties' position is consistent with footnote 3 of the Amended Revenue Bond Scheduling Order [Dkt. No. 10595], and the Monolines have not articulated a justifiable argument for deviation from this structure.

10. The Monolines' proposed edits to Overlapping Issues (iii) and (iv) would preclude the DRA Parties from making arguments in the Monolines' Amended Lift Stay Litigation concerning whether the Excise Tax Statutes give rise to an equitable lien, trust, or other ownership interest in favor of the DRA Parties as holders of HTA loans and whether PROMESA Title III recognizes a priority claim arising out of the Excise Tax Statutes in favor of the DRA Parties as holders of HTA loans. The Monolines' proposed edits to Overlapping Issue (viii) would preclude the DRA Parties from making arguments in the Monolines' Amended Lift Stay Litigation that the DRA Parties have standing to seek stay relief against the Commonwealth.

11. The DRA Parties believe these revisions are beyond the scope of both the Court's order and the intent of the Participation Stipulation, which were both to determine Overlapping Issues. The Monolines' proposed revisions, if accepted, would invalidate the purpose and terms of the Participation Stipulation between the DRA Parties and the Government Parties. The DRA Parties would not have agreed to execute a stipulation with the Government Parties containing the restrictions and limitations that the Monolines have proposed here.

12. Moreover, the Monolines' revisions are unilateral in limiting how the DRA Parties may proceed to preserve their interests in certain shared collateral with the Monolines

4149-9945-6035

which, depending on the Court's resolution of the Monolines' Amended Lift Stay Litigation, could potentially impact and prejudice the DRA's rights without having been afforded the opportunity to be heard, but impose no corresponding limits on the Monolines. For example, the Monolines' proposed language says "the DRA Parties shall have no right to raise any intercreditor issues," but such language does not contain any similar limitation on the Monolines to not raise intercreditor issues against the DRA Parties. Any such limitation should apply to all parties equally.

13. The DRA Parties have advised the Monolines that they would agree on the record that the following do not constitute Overlapping Issues:

    a. Intercreditor issues between the DRA and bondholders at HTA (particularly with respect to Overlapping Issues (iii) and (iv)); and

    b. Any standing issues unique to the DRA, specifically the effect of Asset Restrictions (as that term is defined in the Master Transfer Agreement between the Government Development Bank for Puerto Rico and the DRA, dated November 29, 2018) on the DRA's standing (particularly with respect to Overlapping Issue (viii)).

14. **Monolines' Position:** The DRA Parties' supposed "understanding that the Monolines do not dispute that [certain] Overlapping Issues are Shared Issues" is mistaken. The Monolines made specific proposed edits to Overlapping Issues (iii), (iv) and (viii), and in addition, proposed general language applicable to all of the Overlapping Issues clarifying that, on none of those topics, should the DRA Parties be permitted to inject going beyond the scope of what's presented of the Monolines' Lift Stay Motion. The DRA Parties did not agree to Monolines' proposed edits. Thus, in their current form, the Overlapping Issues set forth in the Participation Stipulation are not Shared Issues.

15. The Monolines do not object to issues (i), (ii), (v), (vi), and (vii) being treated as Overlapping Issues that are Shared Issues, but only to the extent that the DRA Parties are

6

4149-9945-6035

precluded from introducing any documents, agreements, or evidence other than what the parties to the Monolines' Lift Stay Motion introduce. This limitation is critical to define the scope of the Overlapping Issues. To the extent that the DRA Parties seek to make arguments based on other contracts or other documents—the interpretation of which the original parties have not put at issue—the DRA Parties' arguments necessarily will be addressed to non-Overlapping Issues that should be resolved in connection with the separate motion the DRA Parties have already brought and which is subject to a separate adjudication schedule. The DRA Parties have pointed to no exhibits that they could properly introduce on genuinely Overlapping Issues that the parties have not already introduced in the opening or opposition briefs. Accordingly, this limitation on the DRA Parties' participation rights is appropriate.

16. The Monolines specifically object to issues (iii), (iv), and (viii) because, as drafted, these issues are not overlapping but would open the door for the DRA Parties to inject new issues in connection with Monolines' Lift Stay Motion. In an effort to compromise, the Monolines proposed to the DRA Parties modifications to the proposed order that would narrow the scope of these issues to limit them to Overlapping Issues. In particular, the Monolines revised the proposed order to expressly preclude litigation at this stage of any intercreditor issues or of any contention the DRA Parties may advance as to their own property rights or priorities in the affected revenues. The Monolines' Lift Stay Motion is to determine the Monolines' right to the revenues, and the DRA Parties' own separate motion is the proper forum in which the DRA Parties may advance any arguments as to their own rights.[5]

---

[5] The DRA Parties' offer to make representation on the record about limitations on their participation rights is insufficient. If the Court is to enter an order authorizing intervention, as the DRA Parties have requested, the Court's order should also contain the limitations on that intervention.

4149-9945-6035

17. The Monolines believe that these proposed edits strike a balance between respecting the DRA Parties' intervention rights under 11 U.S.C. § 1109, while strictly limiting the scope of intervention to the truly Overlapping Issues that are raised in the Monolines' Lift Stay Motion. The DRA Parties' rights to the affected revenues (if any) are not currently before the Court, and can be decided in the separate motion the DRA Parties have filed. The DRA Parties are instead asking the Court for unbridled rights to raise any and all issues, without regard for the proper proceeding in which those issues should be brought. In particular, DRA Parties' acknowledgment in their report above that they *do* seek to raise arguments in "their capacity as the holder of HTA loans" confirms that the DRA Parties intend to confuse the issues before the Court by raising separate arguments about different property rights—which are already being raised in connection with the DRA Parties' own motion—and attempting to inject those into proceedings on the Monolines' Lift Stay Motion. The DRA Parties' right to intervene under 11 U.S.C. § 1109 does not require the Court to allow an inefficient and unrestricted "free for all" on every motion. The Court has the right to manage its docket and to limit intervenors to addressing only those issues that are properly before the Court for resolution on a given motion. Notably, the DRA Parties have offered no sound argument that they would be prejudiced by these limitations, nor could they, given that the DRA Parties remain free to litigate these issues in their separate motion.

18. The Monolines also contend that any order allowing intervention by the DRA Parties should preclude the DRA Parties from duplicative briefing and should limit DRA Parties' brief to seven (7) pages, due on March 25, 2020. The Monolines should have an opportunity to file a response, of up to five (5) pages, to be filed four days after the DRA Parties file their submission. Because the DRA Parties are expected to be adverse to the Monolines on some or

8

4149-9945-6035

all of the Overlapping Issues, it is appropriate that the Monolines should have a fair opportunity to respond and have the right to reply to assertions made in opposition to their Motions. Additionally, the DRA Parties' intervention should not include any right by the DRA Parties to participate in discovery, except to passively receive copies of any discovery otherwise produced in connection with the contested matter.

19. The Monolines are separately filing an order showing revisions to the proposed order that Monolines sent to the DRA Parties. The proposed order reflects proposed revisions to address discovery rights and Monolines' right to respond, as discussed above. The DRA Parties' objection that the proposed order is beyond the scope of what the Court requested is without merit. The proposed revisions are intended to identify with particularity to the Court exactly the aspects of the proposed topics the Monolines object to as non-overlapping, and what changes to the DRA Parties' participation rights would be necessary to limit them to Overlapping Issues.

4149-9945-6035

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today March 3, 2020.

| | |
|---|---|
| **MCCONNELL VALDÉS LLC**<br><br>270 Muñoz Rivera Avenue, Suite 7<br>Hato Rey, Puerto Rico 00918<br>PO Box 364225<br>San Juan, Puerto Rico 00936-4225<br>Telephone: 787-250-5632<br>Facsimile: 787-759-9225<br><br>By: */s/ Arturo J. García-Solá*<br>Arturo J. García-Solá<br>USDC No. 201903<br>Email: ajg@mcvpr.com<br><br>By: */s/ Alejandro J. Cepeda-Díaz*<br>Alejandro J. Cepeda-Díaz<br>USDC No. 222110<br>Email: ajc@mcvpr.com<br><br>By: */s/ Nayuan Zouairabani*<br>Nayuan Zouairabani<br>USDC No. 226411<br>Email: nzt@mcvpr.com<br><br>***Attorneys for AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority*** | **C. CONDE & ASSOC. LAW OFFICES**<br><br>By: */s/ Carmen D. Conde Torres*<br>Carmen D. Conde Torres<br>(USDC No. 207312)<br>254 San José Street, Suite 5<br>San Juan, PR 00901-1523<br>Tel. 787-729-2900<br>Fax. 787-729-2203<br>E-Mail: condecarmen@condelaw.com<br><br>*- and -*<br><br>**ORRICK, HERRINGTON & SUTCLIFFE LLP**<br><br>By: */s/ Douglas S. Mintz*<br>Douglas S. Mintz (admitted *pro hac vice*)<br>Columbia Center<br>1152 15th Street, N.W.<br>Washington, D.C. 20005-1706<br>Telephone: (202) 339-8400<br>Facsimile: (202) 339-8500<br>E-mail: dmintz@orrick.com<br><br>*- and -*<br><br>Laura Metzger (admitted *pro hac vice*)<br>Peter Amend (admitted *pro hac vice*)<br>David Litterine-Kaufman (*pro hac vice* pending)<br>Monica Perrigino (admitted *pro hac vice*)<br>51 West 52nd Street<br>New York, N.Y. 10019<br>Telephone: (212) 506-5000<br>E-mail: lmetzger@orrick.com<br>pamend@orrick.com<br>dlitterinekaufman@orrick.com<br>mperrigino@orrick.com<br><br>***Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for GDB Debt Recovery Authority*** |

4149-9945-6035

| | |
|---|---|
| **FERRAIUOLI LLC** | **MILBANK LLP** |
| By: */s/ Roberto Cámara-Fuertes* | By: */s/ John J. Hughes, III* |
| Roberto Cámara-Fuertes (USDC-PR No. 219002) | Dennis F. Dunne (admitted *pro hac vice*) |
| Sonia Colón (USDC-PR No. 213809) | Atara Miller (admitted *pro hac vice*) |
| 221 Ponce de León Avenue, 5th Floor | Grant R. Mainland (admitted *pro hac vice*) |
| San Juan, PR 00917 | John J. Hughes, III (admitted *pro hac vice*) |
| Telephone: (787) 766-7000 | 55 Hudson Yards |
| Facsimile: (787) 766-7001 | New York, NY 10001 |
| Email: rcamara@ferraiuoli.com | Telephone: (212) 530-5000 |
| scolon@ferraiuoli.com | Facsimile: (212) 530-5219 |
| | Email: ddunne@milbank.com |
| | amiller@milbank.com |
| | gmainland@milbank.com |
| | jhughes2@milbank.com |
| ***Attorneys for Ambac Assurance Corporation*** | |
| | ***Attorneys for Ambac Assurance Corporation*** |

11

4149-9945-6035

| | |
|---|---|
| **REXACH & PICÓ, CSP** | **BUTLER SNOW LLP** |
| By: */s/ María E. Picó* <br> María E. Picó <br> (USDC-PR No. 123214) <br> 802 Ave. Fernández Juncos <br> San Juan, PR 00907-4315 <br> Telephone: (787) 723-8520 <br> Facsimile: (787) 724-7844 <br> Email: mpico@rexachpico.com <br><br> *Attorneys for Financial Guaranty Insurance Company* | By: */s/ Martin A. Sosland* <br> Martin A. Sosland (admitted *pro hac vice*) <br> 5430 LBJ Freeway, Suite 1200 <br> Dallas, TX 75240 <br> Telephone: (469) 680-5502 <br> Facsimile: (469) 680-5501 <br> Email: martin.sosland@butlersnow.com <br> Jason W. Callen (admitted *pro hac vice*) <br> 150 3rd Ave., S., Suite 1600 <br> Nashville, TN 37201 <br> Telephone: (615) 651-6774 <br> Facsimile: (615) 651-6701 <br> Email: jason.callen@butlersnow.com <br><br> *Attorneys for Financial Guaranty Insurance Company* |

4149-9945-6035

| | |
|---|---|
| **CASELLAS ALCOVER & BURGOS P.S.C.** | **CADWALADER, WICKERSHAM & TAFT LLP** |
| By: */s/ Heriberto Burgos Pérez*<br>    Heriberto Burgos Pérez<br>    (USDC-PR No. 204809)<br>    Ricardo F. Casellas-Sánchez<br>    (USDC-PR No. 203114)<br>    Diana Pérez-Seda<br>    (USDC-PR No. 232014)<br>    P.O. Box 364924<br>    San Juan, PR 00936-4924<br>    Telephone: (787) 756-1400<br>    Facsimile: (787) 756-1401<br>    Email: hburgos@cabprlaw.com<br>           rcasellas@cabprlaw.com<br>           dperez@cabprlaw.com<br><br>***Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp*** | By: */s/ William J. Natbony*<br>    Howard R. Hawkins, Jr. (admitted *pro hac vice*)<br>    Mark C. Ellenberg (admitted *pro hac vice*)<br>    William J. Natbony (admitted *pro hac vice*)<br>    Ellen M. Halstead (admitted *pro hac vice*)<br>    Thomas J. Curtin (admitted *pro hac vice*)<br>    Casey J. Servais (admitted *pro hac vice*)<br>    200 Liberty Street<br>    New York, NY 10281<br>    Telephone: (212) 504-6000<br>    Facsimile: (212) 504-6666<br>    Email: howard.hawkins@cwt.com<br>           mark.ellenberg@cwt.com<br>           bill.natbony@cwt.com<br>           ellen.halstead@cwt.com<br>           thomas.curtin@cwt.com<br>           casey.servais@cwt.com<br><br>***Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*** |

4149-9945-6035

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC**

By: */s/ Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    USDC-PR No. 206,314
    Luis A. Oliver-Fraticelli
    USDC-PR No. 209,204
    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Fax: (787) 756-9010
    Email: epo@amgprlaw.com
           loliver@amgprlaw.com

*Attorneys for National Public Finance Guarantee Corp.*

**WEIL, GOTSHAL & MANGES LLP**

By: */s/ Jonathan Polkes*
    Jonathan Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert Berezin (admitted *pro hac vice*)
    Kelly Diblasi (admitted *pro hac vice*)
    Gabriel A. Morgan
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Fax: (212) 310-8007
    Email: jonathan.polkes@weil.com
           gregory.silbert@weil.com
           robert.berezin@weil.com
           kelly.diblasi@weil.com
           gabriel.morgan@weil.com

*Attorneys for National Public Finance Guarantee Corp.*

4149-9945-6035