

ESTADO LIBRE ASOCIADO DE PUERTO RICO

# DEPARTAMENTO DE EDUCACIÓN

SECRETARÍA AUXILIAR DE RECURSOS HUMANOS

DIVISIÓN DE CERTIFICACIONES DOCENTES

6 de junio de 2003

# CERTIFICACION

Certifico que **LUCILA CORA HUERTAS** posee los siguientes certificados vitalicios:

1. **MAESTRA DE ESCUELA ELEMENTAL** - número 246
   1 de julio de 1976

2. **MAESTRA BIBLIOTECARIA** – número 124
   6 de agosto de 1993

Raquel E. Caparrós
Raquel E. Caparrós
Oficial
Certificaciones Docentes
Y Desarrollo Profesional

/yr

RECEIVED & FILED
2020 MAR -3 PM 5: 31
CLERK'S OFFICE
DISTRICT COURT
SAN JUAN, P.R.

P.O. BOX 190759, SAN JUAN, PUERTO RICO 00919-0759 • TELS. (787) 759-2000 EXTS. 2201, 2203, 4220, 4198• FAX: (787) 751-7449

El Departamento de Educación no discrimina por razón de raza, color, sexo, nacimiento, origen nacional, condición social, ideas políticas o religiosas, edad o impedimento en sus actividades, servicios educativos y oportunidades de empleo

*Favor incluir en mi Caso.# RECl- 159796*

RECEIVED & FILED
2020 MAR -3  PM 5: 9
CLERK'S OFFICE
S.DISTRICT COURT
SAN JUAN, P.R.

Lucila Cruz
- (C-1 Apt 432)
Guaynabo P.R. 00714

Tribunal de Distrito de los Estados U
San Juan, P.R.
Commonwealth of Puerto Rico
San Juan, P.R. 00918-1767

SAN JUAN PR 009
25 FEB 2020 PM 1
FOREVER USA
Barn Swallow

**IF YOUR CLAIM IS LISTED HERE, ONE OR MORE OF THE DEBTORS ARE SEEKING TO DISALLOW YOUR CLAIM BECAUSE THEIR RECORDS SHOW THAT YOUR CLAIM IS DEFICIENT.**

| NAME | CLAIM # | DATE FILED | DEBTOR | ASSERTED CLAIM AMOUNT |
|------|---------|-----------|--------|----------------------|
| Pons Gaston, Evelyn M. | 151655 | 7/27/2018 | Commonwealth of Puerto Rico | $0.00 |
| Reason: | Proof of claim purports to assert liabilities associated with the Commonwealth of Puerto Rico, but fails to provide any basis or supporting documentation for asserting a claim against the Commonwealth of Puerto Rico, such that the Debtors are unable to determine whether claimant has a valid claim against the Commonwealth of Puerto Rico or any of the other Title III debtors | | | |

**SI SU RECLAMO ESTÁ INCLUIDO AQUÍ, UNO O MÁS DE LOS DEUDORES SOLICITAN QUE SU RECLAMO SEA RECHAZADO, PUESTO QUE LOS DATOS INDICAN QUE SU RECLAMO ES DEFICIENTE.**

| NOMBRE | N.º DE RECLAMACIÓN | FECHA DE PRESENTACIÓN | DEUDOR | MONTO DE LA RECLAMACIÓN ALEGADA |
|--------|-------------------|----------------------|--------|-------------------------------|
| Pons Gaston, Evelyn M. | 151655 | 7/27/2018 | Commonwealth of Puerto Rico | $0.00 |
| Base para: | La evidencia de reclamación tiene la intención de formular las responsabilidades asociadas con el Estado Libre Asociado de Puerto Rico, pero no proporciona los fundamentos ni la documentación de respaldo para formular una reclamación contra el Estado Libre Asociado de Puerto Rico, de manera que los Deudores no pueden determinar si el reclamante tiene una reclamación válida contra el Estado Libre Asociado de Puerto Rico o cualquiera de los otros deudores en virtud del Título III. | | | |

Copies of the Omnibus Objection and all other filings in the Title III Cases are available free online at https://cases.primeclerk.com/puertorico.  **If you have questions, please contact Prime Clerk LLC at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m.  (Atlantic Standard Time) (Spanish available).**

Copias de la Objeción global, y todos los escritos radicados en el marco de las causas conforme al Título III, están disponibles, de manera gratuita, en https://cases.primeclerk.com/puertorico.  **Si tiene alguna pregunta, comuníquese con Prime Clerk LLC llamando al (844) 822-9231 (número gratuito para Estados Unidos y Puerto Rico) o (646) 486-7944 (para llamadas desde el extranjero), disponible entre las 10:00 a.m. y las 07:00 p.m. (AST) (hablamos español).**

000055



# LexJuris
### Puerto Rico

## Jurisprudencia del Tribunal Supremo de P.R. del año 1999

### 99 DTS 142 NIGAGLIONI V. DEPARTAMENTO DE SALUD 99TSPR142
#### En el Tribunal Supremo de Puerto Rico

**María del Carmen Nigaglioni Mignucci**
**Demandante-Peticionaria**
**V.**
**Departamento de Salud y Administración de Facilidades y Servicios de Salud**
**Demandado-Recurrido**

Certiorari
99 TSPR 142
Número del Caso: CC-1997-328
Abogados de la Parte Peticionaria: Lcdo. Rubén T. Nigaglioni
McConnell Valdes
Abogados de la Parte Recurrida: Lcda. María T. Ferrán Pérez-Benitou
Agencia: JASAP
Tribunal de Circuito de Apelaciones: Circuito Regional I
Juez Ponente: Hon. López Vilanova
Fecha: 9/22/1999

## Materia: Revisión de Decisión de Agencia Administrativa

### ADVERTENCIA
Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

## Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan Puerto Rico, a 22 de septiembre de 1999.

Tenemos la oportunidad de resolver si, al implantar un nuevo plan de clasificación y retribución, un empleado gubernamental tiene derecho a que se le reconozcan los pasos por mérito adquiridos bajo la estructura retributiva suplantada. Examinada la Ley de Retribución Uniforme, Ley Núm. 89 de 12 de julio de 1979, 3 L.P.R.A. secs. 760 et seq., [en adelante Ley de Retribución] y el Reglamento de Retribución Uniforme de la Oficina Central de Administración de Personal, Reglamento Núm. 3109 de 7 de junio de 1984, así como los principios subyacentes en los planes de clasificación y retribución de las agencias gubernamentales, resolvemos que, al implantar un nuevo plan de clasificación y

retribución, los empleados públicos sólo tienen derecho a que se les reconozca la remuneración que acarrean los pasos por mérito adquiridos y no a determinada adscripción en los niveles intermedios de una escala de retribución.

I.

El 1 de julio de 1996 la Administración de Facilidades de Servicios de Salud (AFASS), como administrador individual en asuntos de personal, implantó su primer Plan de Clasificación y Retribución para los empleados de carrera que laboran en esa entidad con el aval de la Oficina Central de Administración de Personal, (OCAP). Como parte del nuevo Plan, la AFASS determinó que cada empleado recibiría "un aumento de sueldo mínimo de $70 o $50 mensuales, sobre el sueldo que devengaba el empleado al 30 de junio de 1995 o al 30 de junio de 1996" respectivamente.[1] El sueldo resultante sería ajustado en la nueva escala de retribución adoptada.

Previo a la implantación del nuevo Plan, la señora María del Carmen Nigaglioni Mignucci estaba ubicada en la clase de puesto de Especialista en Nutrición y Dietética IV, escala de retribución número 32, tipo intermedio 6. Recibía una remuneración mensual de $1,610. Había ascendido en la escala retributiva al tipo intermedio 6 por razón de varios pasos por mérito que le fueron reconocidos a lo largo de sus años de servicio.[2]

Según el nuevo esquema salarial, la clase de puesto ocupada por Nigaglioni Mignucci permaneció en la escala 32. Esta escala, a su vez, retuvo la misma cantidad de tipos intermedios. Sin embargo, los sueldos devengados tanto en el tipo mínimo como en los intermedios fueron aumentados. Ahora, en la nueva escala, el tipo mínimo tiene una remuneración mensual de $1,741.00, cantidad que se aumenta a lo largo de los tipos intermedios hasta llegar a un tipo máximo de $2,322 mensuales.

Conforme a las normas adoptadas para el nuevo plan, la AFASS sumó la cantidad de $70.00 dólares al salario previamente devengado por Nigaglioni Mignucci. Ello arrojó un resultado de $1,680. Esta cantidad, a su vez, fue ajustada al tipo correspondiente, que en el caso de Nigaglioni Mignucci era el tipo mínimo de la escala 32, que en el nuevo plan era de $1,741. Este ajuste representó para la señora Nigaglioni Mignucci un aumento de $131.00 en su salario mensual.

Inconforme con la remuneración que le fue asignada, Nigaglioni Mignucci acudió ante la Junta de Apelaciones de Administración de Personal (JASAP). Alegó que su ubicación en el tipo mínimo de la escala 32 bajo el nuevo Plan, fue "totalmente injustificada y represent[ó] una privación de [sus] derechos adquiridos sin que mediase el debido proceso de ley". Apéndice de la Petición de Certiorari, en la pág. 33 (énfasis omitido). Adujo, además, que con esta acción se le privó de los "adelantos por mérito relativos a los años de servicio". Id. en la pág. 34.

Luego de examinar las alegaciones de las partes, JASAP declaró no ha lugar la apelación interpuesta por Nigaglioni Mignucci. Ésta oportunamente presentó un recurso de revisión ante el Tribunal de Circuito de Apelaciones, el cual confirmó la decisión de JASAP.

Ante nos, Nigaglioni Mignucci plantea como único señalamiento de error que dicho foro incidió al confirmar la determinación de JASAP, pues la misma "es contraria a derecho y [la] privó [...] de su derecho de propiedad". Petición de Certiorari, en la pág. 4. Sostiene que "fue degradada del tipo intermedio seis (6) de la escala de retribución de su puesto al tipo mínimo en dicha escala mediante el simple sofismo [sic] de aumentar la cuantía de retribución correspondiente a su puesto". Petición de certiorari, en la pág. 7 (énfasis omitido). Añade que "después de dedicarle en exceso de 24 años al servicio público y después de ascender en la escala de retribución de su puesto por méritos al tipo 6, [...] se encuentra [...] en una situación similar a aquel recién llegado al puesto y que no ha demostrado mérito alguno en el desempeño de sus funciones". Id. Finalmente, plantea que en su caso es de aplicación la sección 4.8 del Reglamento de Retribución Uniforme que prescribe la norma que debe seguirse cuando ocurre una reasignación de una clase de puesto a una escala salarial, en lugar de la sección 4.7 que regula las asignaciones de las clases de puestos a las escalas salariales. Examinemos inicialmente este planteamiento.

II.

En Guzmán Rosario v. Departamento de Hacienda, res. el 10 de noviembre de 1998, 98 TSPR 148, resolvimos que la sección 4.7 del Reglamento de Retribución3 "resulta aplicable a la determinación original que hace una entidad con relación a ubicar determinadas clases de puestos a escalas de sueldo. Se trata, así, de la determinación de las escalas retributivas que corresponderán a determinadas clases de puestos en la implantación **original** de un plan de clasificación y retribución". Id., (énfasis suplido). Afirmamos, además, que la sección 4.8, cuya aplicabilidad reclama Nigaglioni Mignucci, resulta aplicable "cuando, luego de la asignación original, a las clases de puestos se les asigna escalas de retribución distintas". Id.

En este contexto, la sección 4.8 establece la fórmula mediante la cual se calculará el salario de los empleados afectados por una enmienda al plan de retribución. Su aplicabilidad, conforme al texto reglamentario, está condicionada a que ocurra una **"enmienda al Plan de Retribución por efecto de la reasignación de una clase o serie de clases a una escala de retribución superior"** (énfasis suplido). Como puede apreciarse, el supuesto que configura la "enmienda al [p]lan de [r]etribución" que hace aplicable la sección es que se ubique a una clase o serie de clases en una escala superior. En tal caso,

la operación administrativa consiste en mover a una clasificación o grupos de clasificaciones de puestos a una escala más alta. Nótese que en tal caso, el plan de retribución no sufre necesariamente cambios en cuanto al salario contemplado en cada escala. Lo que ocurre en tal caso es un movimiento vertical de una serie de puestos sin alterar la cuantía contemplada en cada escala. Por otro lado, si se alterara la totalidad del plan de retribución por efecto de que se aumenta la remuneración que acarrea cada escala, nos encontraríamos ante la implantación de un nuevo plan de retribución que hace aplicable la sección 4.7.

En el caso de autos, no nos encontramos ante enmiendas al plan de retribución previo por efecto de reasignaciones de una clase o serie de clases a una escala de retribución superior. AFASS no modificó el plan retributivo existente conforme a lo dispuesto en la sección 4.8. Hizo cambios a la totalidad del plan retributivo al aumentar la retribución correspondiente a cada clase. Nos encontramos, por lo tanto, ante la implantación de un nuevo plan de retribución aplicable a todos los empleados de la agencia que sustituye el esquema hasta entonces vigente. Ello es así aun cuando el nuevo plan conservó el mismo número de niveles intermedios que contenía el plan suplantado y que la clasificación de los puestos permaneció inalterada.⁴ Se trata, así, del supuesto contemplado en la sección 4.7, que regula las asignaciones de los puestos a las nuevas escalas salariales, y que, a su vez, excluye la aplicación de la sección 4.8. Nigaglioni Mignucci no tiene razón al afirmar lo contrario.

Aclarado lo anterior, examinemos los méritos de sus demás señalamientos.

III.

No hay duda de que en Puerto Rico existe una clara política pública que pretende brindar a los trabajadores un tratamiento equitativo y justo en la fijación de su salario y demás formas de retribución. 3 L.P.R.A. 760 (a); véase, Guzmán Rosario v. Departamento de Hacienda, supra. Esta política pública, a su vez, se enmarca en "el derecho de todo trabajador ... a recibir igual paga por igual trabajo", que consagra la Constitución del Estado Libre Asociado de Puerto Rico. Const. de P.R., Art. II, Sec. 16.

Con el fin de ejecutar esa política pública, la Asamblea Legislativa aprobó la Ley de Retribución, supra, la cual, en parte, "delimita las responsabilidades de los administradores individuales al elaborar sus propios planes de retribución". Guzmán Rosario v. Departamento de Hacienda, supra. Al respecto, impone a la administración central y a los administradores individuales la obligación de adoptar planes de retribución tomando en consideración, los siguientes factores:

> niveles de responsabilidad y complejidad de las funciones, cualificaciones necesarias para el desempeño de los mismos; dificultades existentes en el reclutamiento y retención de personal en las diferentes clases de puestos; condiciones de trabajo; oportunidades de ascenso existentes dentro de los planes de clasificación; sueldos prevalecientes en

diferentes sectores de la economía; aspectos relativos a los costos de vida, y las posibilidades fiscales. 3 L.P.R.A. sec. 760(a); véase además, Reglamento de Retribución Uniforme, Sección 4.6(2).

De conformidad con la Ley de Retribución, la OCAP promulgó el Reglamento de Retribución Uniforme, _supra_. Este reglamento complementa el esquema jurídico que sirve de base a la implantación de un plan de retribución por una agencia, pues, entre otras cosas, establece las normas básicas que guiarán a los administradores individuales al adoptar los planes de retribución.

Ni la Ley de Retribución ni el Reglamento de Retribución Uniforme imponen a los administradores individuales la obligación de reconocer a los empleados un derecho a estar ubicados en el mismo tipo intermedio que tenían antes de la implantación de un nuevo plan de clasificación o retribución. Es decir, no existe mandato estatutario o reglamentario alguno de donde se derive un derecho propietario de los empleados a los tipos intermedios que ostentan bajo una estructura retributiva cuando se establece un nuevo plan.

La Ley de Retribución, tan sólo dispone que cuando se adopte una nueva estructura salarial, los sueldos de los empleados serán ajustados de la siguiente forma:

> [e]l que está bajo el mínimo irá al nuevo tipo mínimo. El salario de aquellos empleados que devenguen sueldos superiores al tipo mínimo de la escala por motivo de haber recibido aumentos de sueldo durante la vigencia de la anterior estructura, **se ajustará de modo que se reconozcan todos los aumentos de sueldo recibidos durante la vigencia de la estructura salarial suplantada.** 3 L.P.R.A. sec. 760(e)(c)(10) (énfasis suplido).

Esta disposición estatutaria no obliga a los administradores individuales a conceder aumentos de sueldo a los empleados cuando adoptan nuevos planes de retribución. A lo que viene obligado el administrador individual es a aumentar el sueldo de un empleado cuando ello es necesario para ubicarlo en el tipo mínimo de su escala bajo el nuevo plan.

Por otro lado, esta disposición tampoco obliga a los administradores individuales a reconocer los pasos por mérito concedidos bajo la estructura salarial derogada. Sólo los obliga a reconocer "los aumentos de sueldo recibidos durante la vigencia de la estructura salarial suplantada". Dicho de otro modo, sólo impone a las agencias que operan como administradores individuales en asuntos de personal y a la administración central en los demás casos, la obligación de no privar a los empleados de los aumentos recibidos a lo largo de los años de servicio, de forma tal que no se le reduzca el salario que recibían bajo el plan de retribuciones sustituido. La AFASS cumplió con esta obligación en el caso de Nigaglioni Mignucci.

Conforme a las normas adoptadas y aprobadas por el Director de la OCAP, la AFASS estableció unos tipos mínimos y máximos de remuneración. Determinó que cada empleado recibiría un aumento mínimo de $70.00 con relación a la escala retributiva existente al 1 de julio de 1995. Si al hacer ese cálculo resultaba que el salario era menor al tipo mínimo de la escala de retribución, conforme a la Ley de Retribución y las normas adoptadas, el salario del empleado sería aumentado hasta ese tipo mínimo.

El nuevo salario asignado a Nigaglioni Mignucci no menoscabó los aumentos previos que había recibido por concepto de los pasos por mérito. De hecho, su salario bajo el nuevo plan de retribución fue aún mayor que el que ostentaba bajo el plan previo en donde estaba ubicada en el nivel intermedio número 6 de su escala retributiva. La determinación de su salario tampoco fue discriminatoria, pues fue computado de forma consecuente con las normas elaboradas y aplicadas uniformemente a los demás empleados en análoga situación. Su alegación principal, sin embargo, parece centrarse en que bajo el nuevo plan de retribución se conservaron los mismos tipos intermedios en su escala, por lo que, a su juicio, debe reconocérsele el derecho a ser ubicada en el mismo tipo intermedio que se encontraba en el plan suplantado. Examinemos este planteamiento.

## IV.

Los tipos o niveles intermedios en las escalas son factores distintivos que tienen el objetivo de aumentar la remuneración de un empleado de acuerdo a la labor rendida. Ley de Personal del Servicio Público, Ley Núm. 5 de 14 de octubre de 1975; 3 L.P.R.A. secs. 1301 et seq., sec. 1354(3); Aulet Lebrón y Velázquez Rivera v. Departamento de Servicios Sociales, 129 D.P.R. 1 (1991); véase, Aponte v. Secretario de Hacienda, 125 D.P.R. 610 (1990). Sin embargo, **lo que constituye un derecho propietario del empleado es el salario conferido, no su adscripción a un tipo intermedio dentro de una escala de retribución**.

Todo empleado que a lo largo de su desempeño dentro de una entidad haya sido ubicado progresivamente dentro los tipos intermedios de una escala retributiva tiene derecho a que bajo un nuevo plan de retribución se le confiera, al menos, un salario igual al que recibía bajo el plan previo, no uno menor. De este modo, el ordenamiento jurídico confiere protección a la remuneración económica conferida al empleado por concepto del paso, no a determinada ubicación en los tipos intermedios de la escala de retribución, que en términos jurídicos carece per se de contenido patrimonial.

Es incorrecto, en consecuencia, afirmar que ubicar a un empleado en el tipo mínimo de una nueva escala retributiva constituye una "privación de pasos", o que tal acción constituye una privación

de un derecho propietario. El "pase por mérito" que el empleado tiene derecho, sino a la remuneración que acarrea el mismo.

Es correcta, por lo tanto, la afirmación de AFASS en términos de que un empleado sería privado de un derecho propietario por efecto de la implantación de un nuevo plan de clasificación y retribución sólo si tiene una pérdida en el salario que recibe. Sobre este aspecto nos señala, con acierto, que "[e]n el contexto que nos ocupa, la ausencia de una ganancia mayor no significa tener pérdida; el término pérdida implica la salida del patrimonio económico individual de un interés legítimo que formaba parte de éste, conlleva necesariamente una reducción del patrimonio real existente". Alegato de la AFASS, en la pág. 7.

En su recurso de certiorari, la peticionaria reconoce implícitamente lo anterior, toda vez que acepta que si bajo el nuevo Plan de Retribución de la AFASS no existiesen tipos intermedios de retribución en la escala a la cual pertenece su puesto, entonces sería válida su ubicación en el tipo básico de la escala, lo que sin duda la colocaría en la misma condición, en términos de remuneración, que cualquier otro empleado, incluso aquellos que bajo el plan previo hubiesen estado ubicados en un tipo intermedio menor al de ella. En este sentido afirma:

> No albergamos dudas de que al establecer un plan de retribución un Administrador Individual no tiene una obligación de establecer una escala tal y como ésta existía previamente. Es su prerrogativa, dentro de los supuestos de Ley y Reglamento, establecer nuevos parámetros en la nueva escala de retribución que adopte. Inclusive, podría darse el caso que en la nueva clasificación de un puesto, el Administrador decida consolidar, reducir o aumentar los tipos de remuneración intermedia. Petición de Certiorari, en la pág. 6.

El reconocimiento de que es prerrogativa de un administrador individual eliminar niveles intermedios está basado en una admisión implícita de que no existe un derecho del empleado a estar ubicado en determinado tipo o nivel intermedio. Coincidimos con esa apreciación que dimana de una visión integral del ordenamiento jurídico que rige en materia de retribución en Puerto Rico. De haber sido la intención del legislador que al implantar un nuevo plan de retribución se ubicase a los empleados en los mismos tipos intermedios que ocupaban en los planes de retribución suplantados, hubiese incorporado en la Ley de Retribución una disposición expresa al respecto. No lo hizo.

De este modo confirió flexibilidad a los administradores individuales para elaborar los planes de clasificación y retribución autónomos extendiendo, reduciendo o consolidando los niveles intermedios de una escala de retribución de acuerdo a sus necesidades y posibilidades fiscales. El interés patrimonial del empleado queda debidamente salvaguardado al garantizarle que su salario no será menoscabado. Ese es el claro mandato de la Ley de Retribución Uniforme en aquella parte que exige que los nuevos

planes de retribución garantizarán los aumentos de sueldo recibidos durante la vigencia de la estructura salarial previa. La AFASS cumplió con esta obligación.

V.

Por último, hay razones prácticas y de sana administración pública que también militan en contra de la pretensión de Nigaglioni Mignucci.

Tanto la Ley de Retribución como el Reglamento de Retribución de la OCAP imponen a las agencias que operan como administradores individuales en asuntos de personal y a la administración central la obligación de elaborar sus planes de clasificación y retribución tomando en consideración sus posibilidades fiscales. 3 L.P.R.A. sec. 760(a); Reglamento de Retribución Uniforme, sección 4.6(2) y 4.6(3). Acoger la posición de la peticionaria implicaría imponer a las agencias y al gobierno una carga económica significativa que haría poco viable la implantación de un nuevo plan de retribución. Su efecto sería obligar a las agencias a destinar recursos de forma irrazonable al pago de los aumentos salariales que representaría ubicar a los empleados en el mismo tipo intermedio en que se encontraban previamente. Ello, constituiría un disuasivo a cualquier pretensión de implantar un nuevo plan de retribución.

Asimismo, existen claras disposiciones reglamentarias que establecen normas básicas que deben ser satisfechas al momento de elaborar un plan de clasificación y retribución, y cuya aplicabilidad cobra particular significado en el caso de autos. En este contexto, dispone el Reglamento de Retribución Uniforme:

> **Conforme a la disponibilidad de recursos fiscales**, las estructuras de sueldo deben ser lo suficientemente competitivas de manera que permita reclutar y retener personal capacitado; deben proveer para el justo reconocimiento de la eficiencia y productividad individual de los empleados y de igual modo, deberán estar estructuradas de forma tal que provean oportunidades de progreso en el servicio público. Reglamento de Retribución Uniforme, Sección 4.6(3) (énfasis suplido).

De conformidad con esta disposición reglamentaria, los planes de clasificación y retribución se revisan no sólo para conferirle a los empleados una remuneración más justa y a tono con las nuevas realidades económicas imperantes en la sociedad, sino también para dotar de cierta agilidad a las entidades gubernamentales en el reclutamiento de nuevo personal y al momento de premiar la labor que rinden los empleados.

No es posible que una agencia logre atraer al personal mejor capacitado en un mercado competitivo si no revisa periódicamente sus escalas salariales para hacerlas más atractivas. De hecho, conforme a lo expuesto, surge de los autos que entre los objetivos de la AFASS al implantar su nuevo

plan de retribución se encuentra precisamente en crear una estructura salarial competitiva con el mercado actual, con el fin de **reclutar** y **retener** los servicios profesionales de la salud que necesita la Agencia para la prestación de servicios de salud a [los] ciudadanos". Apéndice de la Petición de Certiorari, en la pág. 36 (énfasis suplido). Ese objetivo, inherente a una revisión de un plan de retribución, se logra aumentando los tipos básicos de los planes retributivos y permitiendo que los empleados continúen ascendiendo por sus méritos a través de niveles intermedios.

El aumento en los tipos básicos de una estructura salarial evita que las agencias recurran de forma desmedida a la concesión de diferenciales (como pasos por reclutamiento) para poder atraer personal altamente capacitado. Por su parte, la posibilidad de que los empleados puedan continuar ascendiendo a través de tipos intermedios constituye un incentivo para retener empleados en las agencias que a lo largo de sus años de servicio han agotado los tipos o niveles intermedios dentro de sus respectivas escalas de retribución. Así, por ejemplo, un empleado que por sus ejecutorias haya sido ubicado progresivamente en el tipo intermedio número 8 en una escala de retribución que cuenta con 10 tipos o niveles intermedios, sólo cuenta con dos pasos por mérito adicionales por escalar. Una vez alcanza el tipo máximo, sus posibilidades de seguir ubicado progresivamente en la escala de retribución, y por tanto, de lograr un salario mayor por concepto de sus méritos como empleado, se extinguen. Con la implantación de un nuevo plan de retribución los administradores individuales logran que sus escalas retributivas preserven la agilidad necesaria para poder retribuir adecuadamente a los empleados por sus méritos. Así, desde la perspectiva de los empleados, la revisión de las escalas salariales les permite seguir aumentando su retribución en atención a sus méritos como empleado y a sus años por servicios prestados.

En resumen, resolver que al establecer un nuevo plan de retribución los administradores individuales deben ubicar a los empleados en los mismos tipos intermedios que se encontraban previamente sería contrario a la agilidad y flexibilidad con que deben contar las agencias que operan como administradores individuales en asuntos de personal. Sería contrario, además, al objetivo de lograr escalas retributivas más atractivas, debido a que las agencias tendrían que destinar mayores recursos fiscales al pago de la remuneración por concepto del pago de pasos por mérito concedidos, en menoscabo de la posibilidad de aumentar significativamente los tipos mínimos de una escala retributiva.

Por lo anterior, y en ausencia de un fundamento de derecho que sostenga la alegación de Nigaglioni Mignucci, procede confirmar la decisión recurrida.

Se emitirá la correspondiente Sentencia.

Juez Asociado

**SENTENCIA**

San Juan Puerto Rico, a 22 de septiembre de 1999.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, y habiendo sido expedido previamente el auto de certiorari, se confirma la Sentencia emitida por el Tribunal de Circuito de Apelaciones, Circuito Regional I de San Juan, en el caso Núm. KLRA96-00404, <u>Nigaglioni Mignucci</u> v. <u>Departamento de Salud y otro</u>.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disintió con Opinión escrita. El Juez Asociado señor Rebollo López no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 22 de septiembre de 1999.


Una mayoría del Tribunal hoy resuelve en efecto que cuando una agencia gubernamental establece una <u>**nueva escala salarial**</u> para sus empleados, no viene obligada a observar un criterio de paridad o de proporcionalidad respecto a los aumentos otorgados; y que los aumentos por mérito obtenidos antes por algunos empleados de la agencia, quedan reconocidos en la nueva escala con <u>**cualquier aumento que éstos reciban**</u>, aunque sean <u>**sustancialmente inferiores**</u> a los que se le otorguen a los otros empleados que no habían logrado aumentos por méritos antes.

Disiento de este dictamen por considerarlo injusto y contrario a derecho; y porque constituye un retroceso en la larga trayectoria de la administración pública de Puerto Rico por proveerle a los empleados gubernamentales una retribución fundada en los méritos de su servicio. Veamos.

I

Antes que nada, debe tenerse claramente en cuenta lo que está ante nos. La opinión de la mayoría formula el asunto de un modo acomodaticio, que se presta para racionalizar su dictamen. Por ello es necesario aclarar de entrada qué es exactamente lo que está ante nuestra consideración.

En el caso de autos, la A.F.A.S.S. formuló un nuevo plan de retribución para sus empleados <u>**que era idéntico al suplantado, excepto por los aumentos salariales que introducía el nuevo plan**</u>. El plan aludido no estaba basado en una nueva clasificación de los puestos de la agencia. El cambio real que introducía sólo era de una escala salarial a otra escala de retribución superior.

La nueva escala salarial aludida tenía un <u>**sueldo mínimo, un sueldo máximo, y siete sueldos intermedios, por lo que era exactamente igual que la escala anterior**</u>, excepto por el monto de los salarios. En la nueva

escala, el sueldo mínimo constituía un aumento de $431 sobre el mínimo anterior. El sueldo máximo constituía un aumento de $567 sobre el máximo anterior. Al salario que aquí nos concierne, el del tipo intermedio número seis, se le concedió un aumento de $533 sobre lo que correspondía a ese tipo intermedio en la escala anterior.

La peticionaria estaba ubicada antes en el tipo salarial intermedio seis de la escala vigente entonces. **Su ubicación en ese sueldo intermedio había respondido a pasos que se le otorgaron mayormente por méritos y por ascenso**. Al establecerse la nueva escala, sin embargo, la peticionaria **no fue ubicada en el tipo salarial intermedio seis que tenía antes**, que conllevaba un aumentos de $533, sino en el salario mínimo de la nueva escala. En consecuencia, el aumento de salario que recibió fue sólo de $131 sobre su sueldo anterior, aunque los que antes sólo tenían el sueldo mínimo de la escala suplantada habrían de recibir un aumento de $431.

La peticionaria aduce, con razón, que su ubicación en el salario mínimo de la nueva escala constituye un **descenso** de facto. Examinemos las normas aplicables.

I

**La peticionaria plantea que la A.F.A.S.S., al implantar el nuevo plan de retribución** que aquí nos concierne, **realmente** sólo **enmendó el plan existente antes. Siendo ello así, dicha parte entiende que es de aplicación la Sección 4.8(6) del Reglamento de Retribución Uniforme** de la Oficina Central de Administración de Personal (O.C.A.P.). En mi criterio, **tiene razón.**

**El Reglamento de Retribución Uniforme, aprobado el 7 de julio de 1984 por la Oficina Central de Administración de Personal, en virtud de** la Sección 760 de **la Ley de Retribución Uniforme, establece el criterio** normativo que ha de regir **la asignación de** las **clases** de puestos de una agencia a las escalas de sueldos de ésta. En lo pertinente, **la Sección 4.8(6) aludida dispone:**

[l]a política pública enunciada en la Ley de Retribución Uniforme provee para un tratamiento equitativo y justo en la fijación de salarios y demás formas de retribución.

Para garantizar este objetivo se establecen las siguientes normas generales que regirán la administración de salarios en las siguientes transacciones de personal:

...

**6. Reasignaciones de clases a escalas de sueldos superiores:**

Cuando se enmiende el Plan de Retribución por efecto de la reasignación de una clase o serie de clases a una escala de retribución superior, se concederá a los empleados afectados un aumento en sueldo que será igual al incremento que reciba la clase a la fecha de efectividad de dicha acción. Los sueldos se ajustarán al tipo inmediato superior, cuando no coincidan con uno de los tipos retributivos de la escala correspondiente. **Si el sueldo resultante excede del máximo de la escala, se procederá conforme a la disposición relativa a extensión de las escalas.**

**El Director, en el caso de la Administración Central y cada Autoridad Nominadora, en el caso de los Administradores Individuales, podrán autorizar otros mecanismos para ajustar los sueldos, en caso de limitación presupuestaria. (Enfasis nuestro.)**

Como puede ob**serv**arse, **la disposici**ón **reglamentaria** aludida regula precisamente la situación que aquí nos concierne: una enmienda al plan de retribución de la agencia para reasignar una serie de clases de puestos a una escala de retribución superior. En el caso de autos, la A.F.A.S.S. **implantó un nuevo plan de retribución. Hubo un aumento en cada tipo retributivo, desde el mínimo hasta el máximo dentro de cada escala. Cada escala de retribución, como un todo, experimentó un aumento salarial. Contrario a la** conclu**sión** de la mayoría **del** Tribunal, el nuevo plan de retribución es idéntico al suplantado, excepto por los

aumentos de sueldos. Dicho plan no estaba basado en una reclasificación. No hubo reclasificación de los puestos ni reorganización de las clases de empleos. El cambio real fue sólo de una escala salarial a otra escala de retribución superior. Sustantivamente, el llamado "nuevo" plan no es otra cosa que una enmienda al plan de retribución anterior, por lo que es aplicable aquí la disposición reglamentaria aludida, que claramente ordena que el aumento que reciba cualquier empleado cuando se asigna su clase a una escala salarial superior debe ser del mismo valor monetario que el que reciben los demás. Conforme a la Sección 4.8(6) citada, en casos de "enmiendas" a los planes de retribución rige el criterio de igualdad en los aumentos salariales de todos los empleados.

Al examinar esta primera cuestión, es menester tener mucho cuidado con los juegos conceptuales. No se pueden hacer decisiones jurídicas importantes sólo a base del nombre que el administrador de una agencia pública le haya dado a lo que ha realizado. Hay que ir al fondo del asunto y examinar qué es lo que realmente ha acontecido. Sobre todo, no puede permitirse que el administrador evada las exigencias jurídicas de trato equitativo y justo para el empleado público, a base de manipular el nombre que le dé a su acción.

La mayoría del Tribunal, por puro fiat, sin fundamento alguno, resuelve que el criterio de igualdad de la Sección 4.8(6) referida sólo aplica a "enmiendas" de las escalas vigentes y que no rige en casos de supuestos "nuevos" planes de retribución que sólo modifican las cuantías salariales. ¿Cuál es el fundamento jurídico de tan insólita posición? ¿Cómo puede justificarse dar tratos tan distintos a situaciones que son esencialmente iguales? ¿Por qué el reglamento cobija una situación, y supuestamente no cobija la otra? Más aun, ¿puede un administrador evadir el requisito de igualdad aludido alegando que es un "nuevo plan" cada vez que decide enmendar el plan vigente?

En el caso de epígrafe, el nuevo plan salarial sólo constituía una enmienda al plan salarial anterior. No debe ser ocasión para emitir pautas que justifiquen las actuaciones de administradores públicos que sólo proceden cuando se trate de verdaderos planes de reclasificación. Es menester separar una cosa de la otra. Por no hacerlo, por actuar de un modo que favorece irrazonablemente los intereses burocráticos, la mayoría descarta el significado propio de la disposición reglamentaria referida y llega así a un resultado que no sólo carece de sentido jurídico alguno, sino que es injusto y discriminatorio.

I

El otro planteamiento que hace la peticionaria amerita cuidadoso examen, conforme al conocido criterio normativo de que la **legislación reguladora del empleo público, especialmente aquella que reglamenta la retribución salarial de los empleados públicos, está revestida de un alto interés público.** Aulet v. Depto. Servicios Sociales, 129 D.P.R. 1 (1991). **El sistema de personal** vigente en el país incorpora **una clara política dirigida a brindar a los empleados del servicio público un** tratamiento equitativo y justo en la fijación de sus salarios. **A tales efectos la Ley de Retribución Uniforme (en adelante, Ley de Retribución), Ley Núm. 89 del 12 de julio de 1979, según enmendada, 3 L.P.R.A. sec. 760 et seq., que fija la política pública general aplicable a todo el sistema de personal en cuanto a los principios de retribución salarial y de clasificación de empleados públicos,** señala en **su Exposición de Motivos que:**

**[l]a política retributiva del Gobierno del Estado Libre Asociado siempre ha sido proveer a sus empleados un** tratamiento equitativo en la fijación de sus sueldos **de conformidad con el principio constitucional de igual paga por igual trabajo. Tanto los sueldos como todas las demás formas de remuneración deberán ser las más razonables y justas dentro de las posibilidades fiscales del Gobierno y en consonancia con el desarrollo de nuestra economía.**

...

**[La Ley de Retribución] [t]ambién persigue la aplicación de mecanismos que propendan y faciliten el reclutamiento y** retención de personal **mediante la concesión de incentivos adicionales con arreglo a las posibilidades fiscales del Gobierno del Estado Libre Asociado de Puerto Rico y de cada Municipio. (Enfasis suplido)**

**Ley Núm. 89 del 12 de julio de 1979, Leyes de Puerto Rico, a las págs. 225-226.** Véase además, P. de la C. 961 de la Ley Núm. 89, supra, Octava Asamblea Legislativa (1979-80).

El referido **principio de equidad retributiva está**, además, claramente plasmado en el propio texto de la legislación referida. El **Artículo 2** de la Ley de Retribución, 3 L.P.R.A. sec. 760(a), **dispone que:**

**[s]e proveerá a los empleados del servicio público cubiertos por el Sistema de Personal creado mediante las secs. 1301 et seq. [del** Título 3**],** un tratamiento equitativo y justo en la fijación de sus sueldos y demás formas de retribución. **A tales fines, la Oficina Central de Administración de**

10/9/2019          LEX90000
Case: 17-03283-LTS   Doc#: 12115-1   Filed:03/05/20   Entered:03/05/20 17:28:14   Desc:
Detective Pleadings   Page 17 of 31

Personal, en el caso de la Administración Central y cada autoridad nominadora en el caso de los administradores individuales, adoptará planes de retribución conforme al reglamento que adopte la Oficina para instrumentar este Capítulo, a las normas generales sobre retribución que ésta emita y a las siguientes disposiciones:

       (1) Establecerá y mantendrá al día un plan de retribución uniforme para los puestos de carrera y otro para los puestos de confianza.

       (2) Al establecer y mantener los aludidos planes de retribución deberá tomar en consideración diversos factores, tales como: niveles de responsabilidad y complejidad de las funciones, cualificaciones necesarias para el desempeño de las mismas; dificultades existentes en el reclutamiento y retención de personal en las diferentes clases de puestos; condiciones de trabajo; oportunidades de ascenso existentes dentro de los planes de clasificación; sueldos prevalecientes en diferentes sectores de la economía; aspectos relativos a costos de vida, y posibilidades fiscales. (Enfasis nuestro.)

3 L.P.R.A. sec. 760(a). Véase además, Sección 4.6(2) del Reglamento de Retribución.

    En asuntos de personal, la A.F.A.S.S. es un Administrador Individual en virtud de su ley habilitadora, Ley Núm. 26 del 13 de noviembre de 1975, 24 L.P.R.A. sec. 337d. Respecto a la responsabilidad de los Administradores Individuales, el Artículo 5 de la referida Ley de Retribución Uniforme, supra sec. 760(d), dispone en lo pertinente que:

[c]ada administrador individual establecerá planes de retribución separados para sus empleados de carrera y confianza conforme su capacidad fiscal y en armonía con sus respectivos planes de clasificación. En todo caso dichos planes estarán en armonía con las disposiciones de este Capítulo, con las normas de retribución que emita la Oficina Central de Administración de Personal. Los planes de retribución deberán propiciar un tratamiento justo y equitativo en la fijación de los sueldos de los empleados y serán uniformes para cada administrador individual.

       Los administradores individuales someterán al Director de Personal para estudio y aprobación final, previa consulta con el Director de la Oficina de Presupuesto y Gerencia, la asignación de las clases de puesto a las escalas de sueldo y cualquier cambio o reasignación subsiguiente. (Enfasis suplido.)

En adición al principio general de retribución justa y equitativa ya mencionado, la legislación que nos concierne aquí contiene disposiciones que son aun más directamente pertinentes a la controversia que tenemos ante nos en el caso de autos. Así pues, en el inciso (c)(10) del Artículo 6 de la Ley de Retribución se dispone que:

[a]l adoptarse la nueva estructura salarial, los sueldos de los empleados se ajustarán de la siguiente forma:

       El que está bajo el mínimo irá al nuevo tipo mínimo. El salario de aquellos empleados que devenguen sueldos superiores al tipo mínimo de la escala por motivo de haber recibido aumentos de sueldo durante la vigencia de la anterior estructura, se ajustará de modo que se reconozcan todos los aumentos de sueldo recibidos durante la vigencia de la estructura salarial suplantada. (Enfasis nuestro.)

3 L.P.R.A. sec. 760(e)(c)(10).

    Por otro lado, como Administrador Individual, la A.F.A.S.S. está obligada a cumplir las normas contenidas tanto en la Ley de Retribución como en la Ley de Personal del Servicio Público de Puerto Rico (en adelante, Ley de Personal), Ley Núm. 5 del 14 de octubre de 1975, 3 L.P.R.A. sec. 1301 et seq. El inciso primero de la Sección 2.1 de la Ley de Personal, supra sec. 1311, establece que el principio de mérito:

regirá todo el servicio público, de modo que sean los más aptos los que sirvan al Gobierno y que todo empleado sea seleccionado, adiestrado, ascendido y retenido en su empleo en consideración al

mérito y a la capacidad, **sin discriminación por razones de raza, color, sexo, nacimiento, edad, origen o condición social, ni por ideas políticas o religiosas.** (Enfasis suplido.)

Más adelante, l**a Ley de Personal, supra sec. 1354(3), expresa que los tipos retributivos intermedios de cada escala**:
<u>se utilizarán para conceder aumentos en reconocimiento a la productividad y otros elementos de eficiencia de los empleados.</u> (Enfasis suplido.)

La propia ley orgánica de la A.F.A.S.S. reconoce que **la administración de personal de** la agencia **gubernamental** aquí recurrida **está** fundamentada **en el principio de mérito** aludido. **24 L.P.R.A. sec. 337d.**

Finalmente, el propio Reglamento de Retribución, inciso 3 de la Sección 4.6, **aprobado por O.C.A.P. el 7 de junio de 1984 con el propósito de instrumentar los principios y normas de retribución conforme a la política pública enunciada en la Ley de Retribución, dispone que:**
[c]**onforme a la disponibilidad de recursos fiscales, las estructuras de sueldo deben ser lo suficientemente competitivas de manera que permita reclutar y** <u>retener personal capacitado;</u> **deben** proveer <u>para el justo reconocimiento de la eficiencia y productividad individual de los empleados</u> **y de igual modo deberán estar estructuradas de forma tal que provean oportunidades de progreso en el servicio público.** (Enfasis suplido.)

Esta **disposición** reglamentaria **aplica tanto al sistema de personal en general como a los Administradores Individuales en particular al implantar sus respectivos planes de retribución. Artículo 4 del Reglamento de Retribución.** Teniendo en cuenta los principios de <u>tratamiento salarial justo y equitativo, de reconocimiento al mérito del empleado, y de propiciar la retención de personal capacitado</u> contenidos en las disposiciones legislativas y reglamentarias referidas, pasemos a examinar ahora el planteamiento concreto de la peticionaria.

En el caso de autos, l**a peticionaria** aduce **que toda vez que los tipos intermedios o pasos dentro de las escalas** salariales **representan una acreencia del empleado público,** porque son **producto de los méritos** acumulados **en el desempeño de sus funciones5,** dichos pasos **son parte de un derecho adquirido por el empleado mientras subsista el tipo intermedio en la escala de retribución que corresponda al puesto del empleado.** Aduce, además, **que la actuación de** la A.F.A.S.S. en cuestión **equivale a privar a la peticionaria de aquello que ésta ganó mediante sus esfuerzos y sus méritos,** por lo que el **plan de retribución en cuestión es contrario al principio de mérito.** A diferencia de lo que entiende la mayoría del Tribunal, en mi criterio tiene razón la peticionaria.

Al **establecer un plan de retribución, un Administrador Individual no** viene obligado a **establecer una escala tal y como ésta existía** previamente. **Tanto es así, que un Administrador podría reducir o extender los tipos retributivos intermedios. 3 L.P.R.A. sec. 760(f). Sin embargo, ello no fue lo que ocurrió en el caso de autos.** Aquí el A**dministrador estableció un plan de retribución para el puesto que ocupa la peticionaria** idéntico en todo respecto a la escala previamente vigente, con <u>la única salvedad de la cuantía de retribución económica para los diferentes tipos en la escala aumentó.</u> Es por ello que la peticionaria insiste en que **toda vez que existe en la nueva escala** salarial **el mismo tipo intermedio de sueldo que** ella tenía antes, **al cual era acreedora por méritos, el Administrador no** tenía la **facultad para privarla de dicho tipo intermedio** al ubicarla **en la nueva escala** adoptada, como ocurrió aquí al colocarla en el tipo mínimo de dicha escala. A la luz de las normas retributivas antes discutidas y e**n las circunstancias particulares de este caso, tal actuación** gubernamental ciertamente **equivale a privarle a la peticionaria de aquello que ésta ganó mediante sus esfuerzos, sus méritos y años de servicio,** en contravención de la clara política laboral de trato justo y equitativo, de reconocimiento al mérito del empleado, de reconocimiento a aumentos anteriores y de retención de personal capacitado.

No puede negarse que el nuevo **sueldo de la peticionaria es mayor que aquél que ésta devengaba** bajo **la escala anterior. Sin embargo, el hecho de haber experimentado un incremento salarial al implantar las nuevas escalas retributivas, por sí solo no constituye un fundamento legítimo para despachar,** como hace la mayoría, **el reclamo de la peticionaria.** Esta tenía derecho no sólo a un aumento dispuesto por la Ley de Retribución, <u>supra</u>, sino además, <u>a un aumento que no menoscabara los méritos acumulados por ella en el desempeño previo de su cargo público.</u> Corresponde a cada Administrador Individual la facultad de adoptar un esquema de retribución que responda a sus realidades funcionales y presupuestarias, <u>en tanto y en cuanto</u>

autos:

> [c]uando una agencia implanta un nuevo plan de clasificación o retribución, como en el caso de
> autos, cumpliendo con su obligación como Administrador Individual, tiene amplia facultad para
> adoptar una norma de ajuste retributivo ajustado a sus realidades funcionales y presupuestarias en
> tanto y en cuanto ello no resulte en un menoscabo de derechos adquiridos. (Énfasis suplido.)

Del expediente que obra en autos, no surge con claridad cúales fueron las razones que tuvo la agencia para
no reconocer en el nuevo plan los pasos por mérito previamente otorgados a sus empleados. Tampoco se ha
argumentado ni existe prueba sobre los aspectos relativos a la capacidad fiscal y presupuestaria del Administrador
Individual y cómo ello incide concretamente sobre las nuevas retribuciones asignadas, sobre los pasos por mérito
concedidos, y sobre los perjuicios alegados por la empleada aquí peticionaria. Por tanto, no existen fundamentos
que permitan justificar el evidente menoscabo que ha sufrido la peticionaria en el reconocimiento salarial a los
méritos de sus años de servicio en la agencia. No debe olvidarse que el derecho de propiedad que ampara a los
empleados públicos se extiende no sólo al cargo que ocupan sino además al sueldo y beneficios marginales. Vélez
Ramírez v. Romero Barceló, 112 D.P.R. 716, 731 (1982). El Estado, pues, no puede privarles de esos derechos
adquiridos sin unas garantías procesales que cumplan con el debido proceso de ley. Díaz Martínez v. Policía de P.R.,
Op. del 22 de julio de 1993, 134 D.P.R. __, 93 JTS 122, a la pág. 11046. Véase además, Board of Regents v. Roth,
408 U.S. 564 (1972).

En circunstancias como la de autos, la Ley de Retribución Uniforme, supra, no faculta a los
Administradores Individuales a incidir adversamente sobre los pasos que le habían sido reconocidos al
personal de carrera. Como vimos, el inciso (c)(10) del Artículo 6 de la Ley de Retribución, supra,
ordena expresamente ajustar los salarios "de modo que se reconozcan todos los aumentos de
sueldo recibidos durante la vigencia de la estructura salarial suplantada". 3 L.P.R.A. sec. 760(e)(c)
(10). Con ello se protege adecuadamente el principio de mérito. No obstante, una mayoría del Tribunal resuelve de
manera constreñida que basta con que el salario del empleado en cuestión no se reduzca y sea igual al nuevo salario
mínimo, para que queden "reconocidos" los logros previos. Con arreglo a esta interpretación, no es ni siquiera
necesario que se le den aumentos al empleado referido, si los aumentos bajo la escala suplantada lo han llevado al
mínimo de la nueva escala. Tampoco importa que cualquier aumento que se dé a dicho empleado sea
sustancialmente menor que el que reciben otros empleados de la agencia que no habían acumulado logros salariales
previamente.

Esta interpretación de la disposición legislativa en cuestión se hace por puro fiat. La mayoría no explica de
modo satisfactorio porqué es que a un empleado se le puede dar un aumento sustancialmente menor que el que se le
otorga a los demás empleados de la clase, sobre la base de que dicho empleado ya antes había recibido aumentos
por méritos, sin que ello sea equivalente a degradar los méritos y logrados. Como la Ley claramente ordena que se
reconozcan los aumentos ya recibidos, no parece razonable penalizar al que ya había logrado tales aumentos, como
sucede si se le otorga un aumento sustancialmente menor al que reciben los demás en la nueva escala, sólo porque
ya antes habían obtenido aumentos por mérito. Tal actuación no constituye un reconocimiento de los logros
pasados, sino un trato inferior por razón de los logros pasados, que me parece insólito, injusto y contrario al
mandato legal.

Al ubicarse a la peticionaria en el sueldo mínimo de la nueva escala, ¿se le reconocían así los aumentos
recibidos durante sus 24 años de servicios competentes en la agencia, como ordena la disposición citada antes de la
Ley de Retribución? Nótese que a la peticionaria se le ubicó en el mismo sueldo donde habrían de ubicarse a los
que sólo tenían el sueldo mínimo en la escala suplantada. ¿Cómo puede pensarse que si a un empleado de nuevo
nombramiento, que devengaba el sueldo mínimo de la escala anterior, se le ubica en el nuevo sueldo mínimo
mientras que a un empleado que había logrado un sueldo mucho mayor por méritos se le ubica en el mismo sueldo
mínimo nuevo, a este último se le "reconocieron" los aumentos anteriores? Si al primero se le dio un aumento en la
nueva escala de $431, ¿cómo es que al que había que reconocerle los logros pasados sólo se le aumenta $131? Esta
obvia e injustificada desproporcionalidad en los aumentos ¿no constituye un descenso de facto? ¿No convierte en
una burla el mandato de reconocer los logros pasados? Más aun, la Ley de Retribución aludida dispone como
criterio rector que los planes de retribución van dirigidos a darle "tratamiento justo y equitativo" a los empleados
públicos. ¿Cómo puede pensarse que la obvia e injustificada desproporción aludida antes satisface el criterio de
tratamiento justo y equitativo?
Las varias leyes de retribución uniforme que se han aprobado en Puerto Rico durante las últimas décadas han tenido
todas unos mismos propósitos. Se persigue proveer la retribución más justa y adecuada posible a los servidores

públicos. En particular, se busca: (1) lograr equidad entre los empleados públicos que ejercen por igual unas mismas funciones; (2) mejorar los sueldos de estos empleados; (3) hacer más atractivo el empleo público.

No cabe duda de que uno de los propósitos de estas leyes ha sido el de facilitar el reclutamiento de buenos empleados en un mercado competitivo. Sin embargo, la legislación referida también persigue el objetivo de <u>retener los buenos empleados que ya tiene el gobierno</u> y <u>darle pleno reconocimiento a los méritos acumulados de éstos</u>. Por eso se ha dispuesto en la exposición de motivos que las escalas de retribución deben ser lo suficientemente amplias que permitan el pago a los empleados "<u>de acuerdo con su eficiencia y antigüedad</u>". Más aun, todo el entramado conceptual y valorativo del sistema de personal basado en el <u>mérito</u> va dirigido en gran medida a reconocer y compensar el trabajo bien realizado. Este propósito es al menos tan importante como los otros fines aludidos.

Es por lo anterior que se estableció el mencionado inciso (c)(10) del Artículo 6 de la Ley de Retribución vigente. <u>Dicha disposición existe precisamente para proteger los logros pasados del empleado público</u>. No tiene sentido jurídico interpretarla para permitir que estos empleados no puedan recibir aumentos similares a los de los demás empleados, sólo porque ya antes recibieron otros aumentos por mérito como resuelve la mayoría. <u>Ello convertiría el esfuerzo meritorio pasado en la "justificación" para la falta de paridad en el nuevo aumento</u>, lo que es inaudito y contrario precisamente a lo que se persigue lograr con la disposición referida de la Ley de Retribución, <u>supra</u>.

En la exposición de motivos de varias de las leyes de retribución uniforme aludidas, que constituyen una serie integrada, se hace referencia a que "la política de sueldos del Gobierno envuelve difíciles y complicadas decisiones". Se explica que ello es así por la necesidad de <u>establecer un balance</u> entre distintas necesidades sociales y objetivos públicos. En efecto, entre lo que hay que armonizar está, por un lado, la búsqueda de paridad salarial entre puestos similares, y, por otro lado, la necesidad de proteger los logros de funcionarios de antigüedad que han realizado bien sus labores. La posición de la mayoría no reconoce la dificultad de establecer el balance aludido. Simplifica indebidamente el asunto al restarle valor al segundo de estos fundamentales propósitos de la legislación aludida.

**En la** implantación de las **nuevas escalas retributivas** que la A.F.A.S.S. concretamente adoptó, ésta venía obligada a **honrar los pasos por** méritos **reconocidos y concedidos** a la peticionaria **bajo la estructura retributiva suplantada. Ello no significa** que en toda situación de nuevos planes de retribución, los empleados tienen **un derecho adquirido sobre la ubicación en un tipo retributivo intermedio de una escala salarial** particular. Sólo significa **que en la implantación del nuevo plan de retribución** adoptado concretamente por la A.F.A.S.S. en el caso de autos, <u>que conservaba los mismos tipos retributivos intermedios de la escala anterior</u>, era menester **reconocer los pasos** que habían logrado **los empleados públicos** al amparo del **principio del mérito.** Sujeto a sus necesidades funcionales y **presupuestarias,** para proteger adecuadamente los reconocimientos que los empleados habían recibido ya por el mérito de sus servicios, la A.F.A.S.S. tenía que incorporar **los pasos por mérito recibidos por la peticionaria a la nueva estructura salarial,** sobre todo en vista de que el **nuevo plan de retribución conserv**aba **los tipos retributivos intermedios del plan suplantado.**

Este Tribunal tiene la grave responsabilidad de ser justo con los que llevan años de servicio meritorios en el empleo público. No nos corresponde legitimizar posturas burocráticas que han de defraudar a empleados públicos que han laborado en sus cargos con lealtad y eficiencia por muchos años, y que tienen en su haber material nada más que los méritos que se le han reconocido antes en su desempeño laboral.

Es por todo lo anterior que disiento del dictamen mayoritario.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

NOTAS AL CALCE
1. Las normas adoptadas por la AFASS contemplaron lo siguiente:

1. Al implantarse las nuevas escalas de sueldo se le concederá a los empleados activos de carrera (regular o probatorio) y transitorios un aumento de sueldo mínimo de $70 o $50 mensuales, sobre el sueldo que devengaba el empleado al 30 de junio de 1995 o al 30 de junio de 1996. El ajuste que se efectúe en los sueldos de los empleados, como resultado de la implantación de las escalas deberá reflejar en todos los casos un aumento de sueldo no menor de $70 mensuales (en las estructuras establecidas el 1 de julio de 1995) y de $50 mensuales (en las estructuras establecidas al 1 de julio de 1996).

2. Los sueldos de los empleados una vez concedido el aumento deberán coincidir con alguno de los tipos retributivos o pasos de la escala a implantarse, a la cual esté asignada la clase del puesto que ocupan. Si no coincidiesen, éstos se ajustarán al próximo tipo superior inmediato en la nueva escala de retribución, independientemente del número de pasos que representaba el sueldo que devenga el empleado en la escala saliente; excepto en aquellos casos que al otorgarse el aumento, el sueldo del empleado sobrepase el máximo de sueldo de la escala extendida.

3. Cuando los sueldos de los empleados sean inferiores al tipo mínimo de las escalas a implantarse, se procederá a concederle el aumento de $70 ( en la norma aplicable a las estructuras del 1 de julio de 1995) o de $50 (en la norma aplicable a las estructuras del 1 de julio de 1996) mensuales y luego su sueldo se ajustará al básico de la clase o al tipo retributivo que sea inmediatamente superior a su sueldo en la nueva escala, independientemente del número de pasos que representaba el sueldo que devengaba el empleado en la escala saliente.

Normas para la implantación de estructuras salariales de la Administración de Facilidades y Servicios de Salud al 1 de julio de 1995, promulgadas por la Hon. Carmen Feliciano de Melecio, Secretaria de Salud, el 7 de julio de 1995. Apéndice del Recurso de Revisión.

2. Conforme surge de los autos del caso, los pasos por mérito le fueron concedidos de la siguiente forma: dos (2) en 1984; dos (2) en 1987 y dos (2) en 1992. La señora Nigaglionni Mignucci también recibió 4 pasos por retención en 1989. Sin embargo, según el Reglamento de Retribución Uniforme de la Oficina Central de Administración de Personal infra, esta compensación adicional no forma parte del sueldo de un empleado, Sección 4.8(11) del Reglamento de Retribución Uniforme, véase, Villamil Suárez v. Departamento de Transportación y Obras Públicas, Opinión y Sentencia de 30 de junio de 1993, ___ D.P.R. ___ (1993); véase además, Ortiz Ortiz v. Departamento de Hacienda, 120 D.P.R. 216 (1987), y en el caso de autos no está en controversia.

3. La sección Art. 4.7 del Reglamento de Retribución Uniforme dispone:

Asignación de las clases de puestos a las Escalas de sueldos:

1.      Con arreglo a las escalas de sueldos, la [O.C.A.P.] establecerá y mantendrá al día la posición relativa de las clases de puestos de los planes de clasificación para los servicios de carrera y de confianza para la Administración Central, mediante la asignación de cada clase a una escala de sueldo.

2.      A su vez, cada Administrador Individual asignará las clases de puestos de ambos servicios a las escalas de sueldos correspondientes; y someterá éstas al Director de O.C.A.P. para estudio y aprobación final.

3.       La asignación de las clases de puestos a las escalas salariales se guiará por el objetivo de proveer equidad en la fijación de sueldos.

4.       Las reasignaciones subsiguientes que fueren necesarias se regirán por lo dispuesto en la sección 4.8(6) de este Reglamento.

Por su parte, la sección 4.8(6) se refiere a los casos de reasignaciones. Establece lo siguiente:

Reasignaciones de Clases a Escalas de Sueldos Superiores

        Cuando se enmiende el Plan de Retribución por efecto de la reasignación de una clase o serie de clases a una escala de retribución superior, se concederá a los empleados afectados un aumento en sueldo que será igual al incremento que reciba la clase a la fecha de efectividad de dicha acción. Los sueldos se ajustarán al tipo inmediato superior, cuando no coincidan con uno de los tipos retributivos de la escala correspondiente. Si el sueldo resultante excede del máximo de la escala, se procederá conforme a la disposición relativa a extensión de las escalas.

        El Director, en el caso de la Administración Central y cada Autoridad Nominadora, en el caso de los Administradores Individuales, podrán autorizar otros mecanismos para ajustar los sueldos, en caso de limitación presupuestaria.

4. Los planes de clasificación y los planes de retribución son cosas distintas. Por ello, de ordinario pueden ser modificados de forma independiente.

5.      En <u>Aponte v. Srio. de Hacienda</u>, 125 D.P.R. 610, 622 (1990), definimos el término paso como "un nivel o tipo de retribución dentro de una misma escala de salarios". El Reglamento de Retribución Uniforme define escala de retribución como "margen retributivo que provee un tipo mínimo, uno máximo y varios niveles intermedios a fin de retribuir el nivel de trabajo que envuelve determinada clase de puestos y de igual modo retribuir en forma adecuada y progresiva la cantidad y calidad de trabajo que rinden los empleados en determinada clase de puestos". Artículo 6(12) del Reglamento, <u>infra</u>. Véase además, el Artículo 11 de la Ley de Retribución Uniforme, <u>infra</u>.


### <u>Presione Aquí para regresar al Menú anterior y seleccionar otro caso.</u>

ADVERTENCIA

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

# LexJuris de Puerto Rico siempre está bajo construcción.

| <u>Leyes y Jurisprudencia</u> | <u>Información</u> | <u>Agencias</u> | <u>Pueblos de Puerto Rico</u>| <u>Servicios Futuros</u> |

|<u>Publicidad</u> | <u>Directorios</u> | <u>Compras</u> | <u>Eventos</u> | <u>Noticias</u> | <u>Entretenimiento</u> |<u>Publicaciones CD</u>|


La información, las imágenes, gráficas u otro contenido en todos los documentos preparados por Lexjuris son propiedad de Lexjuris. Otros documentos disponibles en nuestras conecciones son propiedad de sus respectivos dueños. Derechos Reservados. Copyright (c) 1997 LexJuris de Puerto Rico.



# LexJuris
## Puerto Rico

---

## Ley Núm. 89 del año 2016

---

(P. de la C. 2929); 2016, ley 89

### Ley de Empleo Temporal en el Servicio Público.
### LEY NÚM. 89 DE 25 DE JULIO DE 2016

Para crear la "Ley de Empleo Temporal en el Servicio Público"; ordenar a la Oficina de Capacitación y Asesoramiento en Asuntos Laborales y de Administración de Recursos Humanos (OCALARH) a adoptar reglamentación de conformidad; derogar la Ley Núm. 110 de 26 de junio de 1958, según enmendada, mejor conocida como "Ley de Personal Irregular al Servicio del Estado Libre Asociado de Puerto Rico"; y para otros fines relacionados.

### EXPOSICIÓN DE MOTIVOS

La Ley 184-2004, según enmendada, conocida como "Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico", en su Sección 6.2, dispuso que las funciones permanentes de las agencias debían ser atendidas mediante la creación de puestos, independientemente de la procedencia de los fondos. Se estableció además, que cuando surgieran necesidades temporeras, de emergencia o imprevistas, o programas o proyectos *bona fide* de una duración determinada, financiados con fondos federales, estatales o combinados, se crearían puestos transitorios de duración fija, por un período no mayor de doce (12) meses, pudiendo prorrogarse mientras duraran las circunstancias que dieron origen al nombramiento; en casos de programas o proyectos *bona fide*, los puestos transitorios se podrían extender por la duración del programa o proyecto *bona fide*, previa aprobación de la Oficina de Capacitación y Asesoramiento en Asuntos Laborales y de Administración de Recursos Humanos del Estado Libre Asociado de Puerto Rico (OCALARH).

Con relación a este particular, también dicha Sección 6.2 dispuso que las agencias se abstendrían de crear puestos de duración fija para atender necesidades permanentes o para realizar funciones de puestos permanentes vacantes. Sin embargo, cuando se iniciaran nuevos programas o surgieran nuevas necesidades permanentes dentro de un programa, se podrían crear puestos de duración fija, por un período no mayor a un (1) año, en lo que se creaban los puestos regulares de carrera.

Reza también la referida Sección 6.2, que las autoridades nominadoras se abstendrán de formalizar contratos de servicios con personas en su carácter individual, cuando las condiciones y características de la relación que se establezca entre patrono y empleado sean propias de un puesto.

Por otro lado, hace        más de medio siglo, se aprobó la Ley Núm. 110 de 26 de junio de 1958, mejor conocida como "Ley de Personal Irregular al Servicio del Estado Libre Asociado de Puerto Rico", con el fin de establecer las instancias en que se reclutarían empleados para ejercer funciones por tiempo determinado; es decir, de carácter temporal o transitorio. Sin embargo, el uso del personal catalogado como irregular iba destinado a proyectos de duración determinable, como en el caso de la edificación de obras públicas.

A pesar de que el reclutamiento de empleados temporales, fueran estos catalogados como: irregulares, transitorios o por contrato, no debía utilizarse como subterfugio para evadir la creación de puestos regulares de necesidad permanente, la realidad que existe hoy en el servicio público es otra.

Las Estadísticas de Puestos Públicos, recopiladas por el Instituto de Estadísticas de Puerto Rico, reflejan que a marzo de 2016, en los departamentos y agencias existían 12,813 puestos clasificados como Otros, donde se agrupan los puestos transitorios, irregulares y otros que denotan haber sido reclutados por tiempo definido. En esa clasificación de Otros las referidas estadísticas reflejan que las corporaciones públicas tienen 6,929 puestos con esa clasificación.

Un examen de los puestos ocupados en carácter transitorio denota que muchos de estos están realizando funciones, cuya necesidad es de carácter permanente. Así, encontramos trabajadores sociales en el Departamento de la Familia, enfermeros(as) y médicos en el Departamento de Salud y técnicos de emergencias médicas en el Cuerpo de Emergencias Médicas, entre otros. En el caso del Departamento de la Familia, por ejemplo, la antigüedad promedio de los empleados transitorios es de ocho (8) años.

Conforme a la cultura organizacional que impera en el servicio público, de ordinario, los empleados transitorios han gozado de un mejor *standing* o reputación profesional que los empleados irregulares. Esto, porque como mencionamos anteriormente, los empleados irregulares se reclutaban mayormente para obras públicas, por lo cual, de ordinario, esta clasificación se le daba a empleados para proyectos de construcción o mantenimiento de áreas verdes. En contraste, los empleados transitorios se reclutan para cubrir muchas otras clases, incluyendo profesionales, como en el caso de maestros(as), ingenieros(as), médicos, contables, abogados(as), etc.

En el caso de los empleados irregulares, la Asamblea Legislativa determinó que no podían mantenerse con carácter irregular por más de tres (3) años, durante los cuales trabajaran mil ochocientas (1,800) horas o más. Un periodo tan extenso denotaba una necesidad permanente y el puesto debía ser presupuestado y creado con carácter regular en el servicio de carrera.

Sin embargo, hoy en día, los empleados transitorios no han gozado de igual trato. Esto es irónico, considerando que las clasificaciones que ocupan los empleados transitorios muchas veces son profesionales, que requieren formación y adiestramiento especializado; a veces son de difícil reclutamiento y hasta se utilizan para ocupar posiciones gerenciales, que envuelven supervisión de otros empleados.

Esto ha creado una disparidad en el trato de los empleados con carácter temporal en el servicio público; a unos se les llama empleados irregulares, a otros por contrato, empleados transitorios y hasta transitorios permanentes, y sus condiciones de empleo son distintas. No hay justificación para mantener tal disparidad dentro de esta categoría de empleados. Además, hay que forzar a las agencias a ser diligentes en la creación o solicitud de creación de puestos, tan pronto se detecte que las funciones que desempeña un empleado con carácter temporal en realidad son de necesidad permanente.

Asimismo, clasificar correctamente a los empleados ayudará en la administración de los recursos humanos del servicio público y evitará erogación de fondos innecesarios o tener que redoblar esfuerzos de reclutamiento, cada vez que un empleado temporal abandona el servicio en búsqueda de mayor estabilidad financiera.

A su vez, esto debe disminuir las reclamaciones laborales por transacciones de personal erradas, que se realizan como consecuencia de una mala categorización del empleado.

Otro efecto positivo de corregir esta situación es mejorar las relaciones obrero patronales, al evitar situaciones donde unionados responden a empleados con carácter temporal, que no gozan ni de permanencia.

Asimismo, una ventaja adicional de corregir esta situación, y que se debe reflejar en la economía, es que muchos de estos empleados, al no gozar de un estatus permanente, se les limitan las concesiones de crédito y préstamos, estancando otras áreas de la economía del País.

Mediante esta legislación también adoptamos disposiciones provisionales para conceder estatus de empleado regular a aquellos empleados transitorios que llevan dos (2) años o más realizando funciones cuya

A través de los años hemos sido testigos de cómo se ha intentado evitar el mantener un sistema de empleados temporales, paralelo al servicio de carrera. Sin embargo, forzosamente debemos concluir que los esfuerzos han sido infructuosos, cuando la evidencia denota que una gran parte de los empleados transitorios lleva prestando más de ocho (8) años de servicios y sigue manteniendo estatus transitorio.

Corregir esta anomalía, mediante la conversión de estatus dispuesta en el Artículo 11 de esta Ley, no solo es necesario en términos de administración pública, sino que también es un mecanismo de justicia social para estos empleados que han brindado servicios al Pueblo de Puerto Rico en tiempos de crisis, sin ninguna expectativa de continuidad. Es momento de redoblar esfuerzos para retener a nuestros profesionales en la Isla y reconocer su lealtad al servicio público. Diariamente, observamos cómo empresas públicas y privadas de otras jurisdicciones llegan a Puerto Rico a reclutar profesionales para prestar servicios en diversas partes de los Estados Unidos. Cualquier persona que se lea regularmente los Clasificados, habrá podido notar que ya no solo se reclutan puertorriqueños para trabajar en la agricultura norteamericana como en los años '50; ahora también se reclutan: maestras(os), enfermeras(os), policías, ingenieros(as), entre otros, para trabajar en estados como: Texas, Florida, New Jersey, New York, Massachusetts, etc.

Por todo lo anterior, esta Asamblea Legislativa está convencida de que es hora de uniformar y controlar los contratos de empleo por tiempo definido en el gobierno; adoptar una nueva Ley de Empleo Temporal en el Servicio Público que corrija las situaciones antes descritas; y derogar la "Ley de Personal Irregular al Servicio del Estado Libre Asociado de Puerto Rico". El fin es que se facilite la administración de los recursos humanos en el gobierno y se haga justicia a quienes, aún en tiempos de crisis, se han mantenido al servicio del Pueblo de Puerto Rico.

## DECRÉTASE POR LA ASAMBLEA LEGISLATIVA DE PUERTO RICO:

Artículo 1.-Título

Esta Ley será conocida como "Ley de Empleados Temporales en el Servicio Público".

Artículo 2.-Política Pública

El uso de empleados temporales será la excepción y no la norma en el servicio público. Las agencias reducirán en lo posible la utilización de personal temporal para realizar funciones cuya necesidad sea de carácter permanente.

El uso de empleados temporales para cubrir funciones permanentes por extensos periodos es contrario a la política pública esbozada en la Ley 184-2004, mejor conocida como "Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico". También, esto redunda en una alta rotación (*turnover*) de empleados, ya que estos buscan mayor estabilidad económica, lo que provoca mayores gastos al erario. Cada reclutamiento conlleva unos procesos administrativos que envuelven el empleo de recursos, tanto humanos como económicos. Además, la rotación provoca pérdida de empleados en los cuales se ha invertido tiempo, esfuerzo y dinero en adiestrar, ocasionando pérdidas económicas a las agencias, y su vez, crea un disloque en los servicios públicos, al quedarse el puesto vacante mientras se recluta un nuevo empleado.

Además, mantener empleados temporales realizando funciones de carácter permanente por tiempo indefinido también ocasiona conflictos obrero patronales que redundan en mayores gastos y atentan contra la paz laboral.

Artículo 3.-Definiciones

Para propósitos de esta Ley, los términos que se expresan a continuación tendrán el significado que le sigue:

(a)        Agencia: significará el conjunto de funciones, organismos y puestos que constituyen toda la jurisdicción de una autoridad nominadora, independientemente de que se le denomine departamento, corporación pública, oficina, administración, comisión, junta o de cualquier otra forma.

(b)        Empleado de carrera: aquél que han ingresado al servicio público en cumplimiento cabal de lo establecido por el ordenamiento jurídico vigente y aplicable a los procesos de reclutamiento y selección del servicio de carrera al momento de su nombramiento.

(c)        Empleado irregular: empleado que fue reclutado al amparo de la Ley Núm. 110 de 26 de junio de 1958, mejor conocida como "Ley de Personal Irregular al Servicio del Estado Libre Asociado de Puerto Rico".

(d)        Empleado temporal: empleado reclutado por un tiempo determinado para realizar funciones de duración determinable o cuando las condiciones o naturaleza del trabajo hagan impracticable la creación de un puesto en el servicio de carrera. El término incluirá a empleados clasificados como transitorios, irregulares, por contrato y cualquier otra denominación que se refiera a empleo temporal.

(e)        Empleado transitorio: empleado reclutado en el servicio público para cubrir necesidades temporales, de emergencia o imprevistas, o programas o proyectos *bona fide* de una duración determinada, o cuando las condiciones o naturaleza del trabajo hagan impracticable la creación de un puesto.

(f)        OCALARH: Significa la Oficina de Capacitación y Asesoramiento en Asuntos Laborales y de Administración de Recursos Humanos del Estado Libre Asociado de Puerto Rico.

(g)        Servicio público: significará cualquier departamento, junta, comisión, negociado, oficina o dependencia del Gobierno del Estado Libre Asociado de Puerto Rico.

Artículo 4.-Cuándo procederá el uso de empleados temporales

Cuando surjan en las agencias necesidades temporeras, de emergencia, imprevistas o programas o proyectos *bona fide* de una duración determinada, financiados con fondos federales, estatales o combinados, se crearán puestos transitorios de duración fija por un período no mayor de doce (12) meses, pudiendo prorrogarse mientras duren las circunstancias que dieron origen al nombramiento. Las agencias podrán crear tales puestos de duración fija, sujeto a su condición presupuestaria. En casos de programas o proyectos *bona fide*, los puestos se podrán extender por la duración del programa o proyecto, previa aprobación de la OCALARH.

El uso de empleados temporales será la excepción y no la norma en el servicio público. Las agencias reducirán en lo posible la utilización de personal temporal para realizar funciones cuya necesidad sea de carácter permanente. Sin embargo, su utilización estará permitida, aun para cubrir necesidades permanentes, en las siguientes circunstancias:

(a)        Para realizar tareas cuya duración sea determinable y no haya razonable certeza de que tal personal permanecerá indefinidamente en el servicio, como en el caso de empleados para proyectos de obras públicas o de otra naturaleza, pero que tenga fecha de terminación;

(b)        cuando sea necesario para cubrir un puesto de una persona que se encuentra acogida a una licencia cuya extensión sea mayor a un mes o la persona se haya separado de su puesto de forma imprevista, como en el caso de muerte y alguien deba prestar los servicios;

(c)        cuando la agencia no disponga del personal regular necesario para completar ciertas tareas dentro de la jornada regular y el trabajo no pueda posponerse;

(e)     cuando no exista un registro de elegibles adecuado para algún puesto que requiera algún tipo de licencia y el candidato a nombrarse posea licencia provisional;

(f)     cuando el ocupante del puesto haya sido destituido y haya apelado esta acción ante el foro apelativo;

(g)     cuando el ocupante del puesto haya sido suspendido de empleo y sueldo por determinado tiempo;

(h)     cuando el ocupante del puesto pase a ocupar otro puesto, mediante nombramiento transitorio y con derecho a regresar a su anterior puesto;

(i)     cuando por necesidades del servicio sea indispensable cubrir un puesto reservado para un becario, en cuyo caso el nombramiento transitorio se extenderá por el tiempo que dure la beca;

(j)     cuando exista una emergencia en la prestación de servicios que haga imposible o dificulte la certificación de candidatos de un registro de elegibles, en cuyo caso el nombramiento no excederá de seis (6) meses; transcurrido dicho período, si la autoridad nominadora entiende que persisten las condiciones que motivaron el nombramiento original, podrá extender dicho nombramiento por un término adicional de seis (6) meses; o

(k)     cuando el ocupante del puesto regular de carrera pase a ocupar un puesto en el servicio de confianza.

Artículo 5.-Clasificación y retribución

Los empleados temporales ocuparán clases comprendidas en el plan de clasificación de la agencia para la cual trabajen y serán compensados de conformidad con la escala de retribución correspondiente a su clasificación.

Artículo 6.-Licencias

Los empleados temporales tendrán derecho a la licencia de vacaciones, licencia por enfermedad, licencia de maternidad, licencia para lactancia y licencia de paternidad, según los términos y condiciones estipulados en la Ley 184-2004, según enmendada, mejor conocida como "Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico".

Asimismo, tendrán derecho a toda licencia dispuesta en leyes especiales para servidores públicos, cuya intención expresa haya sido conferirla a empleados temporales.

Se dispone, sin embargo, que ninguna de las licencias antes descritas se concederá por un periodo mayor a la duración del nombramiento.

Los empleados temporales no serán acreedores de licencia sin paga o sin sueldo.

Artículo 7.-Participación en el Sistema de Retiro

Los empleados transitorios en el servicio público formarán parte de la matrícula del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico, excepto los que trabajen en municipios.

Artículo 8.-Aportación para seguro médico

Los empleados transitorios que trabajen para la misma agencia más de seis (6) meses consecutivos serán elegibles para ingresar a los planes de servicios de salud contratados por el Secretario de Hacienda, conforme a la Ley Núm. 95 del 29 de junio de 1963, según enmendada o a la aportación patronal o cubierta de seguro médico que brinde su autoridad nominadora a los empleados de carrera o confianza, según el servicio que preste el empleado transitorio. Los empleados que no cumplan con los requisitos antes descritos serán elegibles para ingresar a los planes de servicios de salud contratados por el Secretario de Hacienda o el plan que ofrezca su autoridad nominadora, pero no tendrán derecho a la aportación patronal.

En aquellos casos en que el salario del personal transitorio se pague de fondos federales y el programa federal que asigna los fondos provea para el pago de beneficios marginales, incluyendo el de servicios médicos, dicho personal podrá recibir beneficios similares a los de la referida Ley Núm. 95.

Artículo 9.-Conversión de estatus

Con el fin de controlar el uso desmedido de empleados por tiempo definido en el servicio público y uniformar su regulación, así como los beneficios marginales a los que tienen derecho, prospectivamente, se reconoce una sola clasificación para los empleados que presten servicios por tiempo definido en el servicio público. Estos serán clasificados como empleados transitorios y se regirán por las disposiciones estatuidas en esta Ley y aquellas dispuestas en la Ley 184-2004, que no sean incompatibles con lo aquí establecido.

Todo empleado que a la fecha de entrar en vigor esta Ley tenga status irregular, por contrato, o algún otro nombre para referirse a un empleado que brinda servicios por un término definido, dejará de tener tal clasificación, según se venza su nombramiento. Si se van a requerir sus servicios por un término fijo nuevamente, el empleado deberá ser contratado como empleado transitorio, sujeto a lo dispuesto en esta Ley.

Todo empleado transitorio de una agencia, que no sea una corporación pública, tendrá derecho a que se le cambie su clasificación a empleado de carrera si concurren los siguientes requisitos:

(a)     Ha prestado servicios continuos o con una interrupción no mayor de quince (15) días, en una agencia dentro del servicio público, a tiempo completo y ocupando el mismo puesto, por dos (2) años o más; desvinculaciones de más de quince (15) días se considerarán una interrupción para fines de este inciso.

(b)     La agencia para la cual presta servicios certifique a la OCALARH que la necesidad del puesto es permanente.

(c)     El empleado transitorio posee los requisitos mínimos de preparación y experiencia establecidos para la clase de puesto a la cual se asignen las funciones que venía desempeñando; y.

(d)     que el jefe de la agencia en la cual presta sus servicios certifique al Director de OCALARH que ha prestado servicios satisfactorios, conforme a las normas de conducta de la agencia y las que se esperan de todo servidor público.

Los empleados transitorios adquirirán el estatus de empleados regulares el día primero de julio inmediatamente después de haber reunido los requisitos señalados anteriormente, sujeto a que el puesto sea sufragado con fondos recurrentes.

El tiempo trabajado como empleado transitorio será acreditado contra el periodo probatorio, siempre que los servicios satisfactorios hayan sido prestados en la misma clase de puesto que la persona va a ocupar como empleado de carrera y las funciones hayan sido ejercidas por el mismo tiempo o más, del periodo probatorio requerido para la clase.

Cuando algún empleado transitorio rehúse aceptar nombramiento en un puesto de carrera en virtud de esta Ley, deberá notificarlo por escrito mediante carta o formulario que se adopte a tales fines.

10/9/2019                    Ley Núm. 89 de 2016 -Ley de Empleo Temporal en el Servicio Público.

Case:17-03283-LTS   Doc#:12115-1   Filed:03/05/20   Entered:03/05/20 17:28:14   Desc:
Defective Pleadings   Page 29 of 31

Los cambios de categoría no pueden usarse como subterfugio para conceder beneficios de permanencia a empleados que no reúnen los requisitos de ser los más aptos para ocupar el puesto de carrera, conforme al principio de mérito.

Artículo 10.-Preferencia para ingresar al servicio público

Los empleados temporales que hayan ocupado un puesto por un período de un (1) año o más en la misma agencia, gozarán de una preferencia por lealtad de tres (3) puntos en la competencia para ocupar un puesto de carrera de la misma clase que ocupa en carácter temporal, siempre que la convocatoria solicitada sea en la misma agencia. De existir más de un candidato elegible bajo este Artículo para el puesto vacante, se elegirá al de más antigüedad en la agencia. En igualdad de antigüedad, se elegirá al que solicitó en la fecha más temprana.

Artículo 11.-Disposiciones provisionales

Cualquier empleado que a la fecha de vigencia de esta Ley esté ocupando un puesto con estatus transitorio en el servicio de carrera en una agencia (excluyendo a las corporaciones públicas) y cumpla con todos los requisitos establecidos en el Artículo 9 de esta Ley, tendrá derecho a convertirse en empleado regular de carrera.

Sin embargo, dada la emergencia fiscal por la cual atraviesa el Gobierno del Estado Libre Asociado de Puerto Rico, mantendrá el mismo salario y los mismos beneficios marginales a los cuales era acreedor como empleado transitorio mientras esté en vigor la Ley 66-2014, según enmendada, mejor conocida como "Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico".

En el proceso de conversión de estatus se dará prioridad a las agencias destinadas a brindar servicios de salud, seguridad, bienestar social y educación.

Artículo 12.-Interpretación

Las disposiciones de esta legislación serán interpretadas conjuntamente con la Ley 184-2004, mejor conocida como "Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico", pero en aquellas áreas que sean incompatibles, prevalecerán éstas, siempre que se trate de empleados temporales en el servicio público.

Artículo 13.-Reglamentación

Se faculta al Director Ejecutivo de la Oficina de Capacitación y Asesoramiento en Asuntos Laborales y de Administración de Recursos Humanos (OCALARH) a adoptar la reglamentación necesaria o enmendar la vigente, con el fin de hacer cumplir las disposiciones aquí estatuidas. El procedimiento para adoptar esta reglamentación estará exento de cumplir con las disposiciones de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, mejor conocida como "Ley de Procedimiento Administrativo Uniforme".

Artículo 14.-Violaciones

Un empleado temporal que entienda que se le han violentado los derechos dispuestos en esta Ley podrá solicitar una apelación a la Comisión Apelativa del Servicio Público (CASP) quien tendrá jurisdicción primaria para dirimir la controversia.

Artículo 15.-Derogación de ley anterior

Se deroga la Ley Núm. 110 de 26 de junio de 1958, mejor conocida como "Ley de Personal Irregular al Servicio del Estado Libre Asociado de Puerto Rico".

Artículo 16.-Cláusula de separabilidad

Si cualquier cláusula, párrafo, artículo, sección, título o parte de esta Ley fuere declarada inconstitucional o defectuosa por un tribunal competente, la sentencia a tal efecto dictada no afectará, perjudicará, ni invalidará el resto de esta Ley.  El efecto de dicha sentencia quedará limitado exclusivamente a la cláusula, párrafo, artículo, sección, título o parte de la misma que así hubiere sido declarada inconstitucional o defectuosa.

Artículo 17.-Vigencia

Esta Ley comenzará a regir inmediatamente después de su aprobación.

Notas Importantes:
1. Esta ley es copia de la ley original cuando fue aprobada, no incluye enmiendas posteriores.
2. Presione Aquí para ver la Ley Completa, con sus enmiendas integradas y Actualizada (Socios Solamente)

Presione Aquí para regresar al Menú anterior y seleccionar otra ley.
Ver índice por años hasta el presente
Para Búsquedas Avanzadas de todas las Leyes de Puerto Rico Actualizadas y Jurisprudencia (Solo Socios)

ADVERTENCIA

Este documento constituye un documento de las leyes del Estado Libre Asociado de P.R. que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las leyes de Puerto Rico. Su distribución electrónica se hace como un servicio público a la comunidad. Siempre busque leyes posteriores para posibles enmiendas a esta ley.

Visite nuestro **Club de LexJuris de Puerto Rico**.

LexJuris de Puerto Rico siempre está bajo construcción.

© 1996-2016 LexJuris de Puerto Rico - Derechos Reservados





CERTIFIED MAIL

9 1640 0001 4811 4672

U.S. POSTAGE PAID
FCM LG ENV
MERCEDITA, PR
00715
FEB 28, 20
AMOUNT.
$8.20
1000        00918        R2305M144696-03

**FROM:**

Evelyn M. Pons Gastón
Breas de Maravilla
Calle Los Cantos F11
Mercedita, 00715

**TO:**

Secretaria (Clerk's Office)
Tribunal de Distrito de los E.U.
Room 150 Federal Building
San Juan, Puerto Rico, 00918-1767

RECEIVED & FILED
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN

**Utility Mailer
10 1/2" x 16"**

Ready**P**ost

