**Hearing Date: April 22, 2020, at 9:30AM (Atlantic Standard Time)**
**Response Deadline: April 7, 2020 at 4:00PM (Atlantic Standard Time)**

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                          Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth, HTA, and ERS.** |

### ONE HUNDRED SEVENTY-SEVENTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO, PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, AND EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE BOND CLAIMS

The Commonwealth of Puerto Rico (the "Commonwealth"), Puerto Rico Highways and

Transportation Authority ("HTA"), and Employees Retirement System of the Government of the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Commonwealth of Puerto Rico ("ERS"), by and through the Financial Oversight and Management

Board for Puerto Rico (the "Oversight Board"), as the representative of the Commonwealth, HTA,

and ERS pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic*

*Stability Act* ("PROMESA"),[2] file this one hundred seventy-seventh objection (the "One Hundred

Seventy-Seventh Omnibus Objection") to the duplicate proofs of claim listed on **Exhibit A** hereto,

each of which is duplicative of one or more master proofs of claim asserted against the

Commonwealth, HTA, or ERS, on behalf of the holders of certain bonds, and in support of the

One Hundred Seventy-Seventh Omnibus Objection respectfully represent as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA

section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof

(the "Commonwealth Title III Case").  On May 21, 2017, the Oversight Board issued restructuring

certifications pursuant to PROMESA sections 104(j) and 206 and filed voluntary petitions for

relief for HTA and ERS pursuant to PROMESA section 304(a), commencing cases under Title III

thereof (respectively the "HTA Title III Case" and the "ERS Title III Case," and together with the

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Commonwealth Title III Case, the "Title III Cases").  On June 29, 2017, the Court entered an order

granting the joint administration of the Title III Cases for procedural purposes only.

      4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing*

*Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of*

*Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing*

*Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of*

*Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief

requested in the Bar Date Motion and established deadlines and procedures for filing proofs of

claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of

the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs*

*of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with

the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at

4:00 pm (Atlantic Time).

**B.**      **Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

      5.      Pursuant to the Initial Bar Date Order, the indenture trustees, fiscal agents, or any

similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-

debtor may file a master proof of claim against the applicable debtor on behalf of themselves and

all holders of bond claims for the respective series of bonds for obligations arising under the

respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).

      6.      The Constitution of the Commonwealth of Puerto Rico (the "P.R. Constitution")

became effective in 1952.  The P.R. Constitution created the Commonwealth as the central

---

[3]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No.
17 BK 3283-LTS.

government of Puerto Rico, "republican in form" and divided into three branches: legislative, judicial and executive.  *See* P.R. Const., Art. I, §§ 1, 2.  The P.R. Constitution authorizes the Commonwealth to issue debt, subject to various limitations, including on the ability of the Commonwealth to pledge its revenues.  *See* P.R. Const. Art. VI § 2.  In 1961, Section 2 of Article VI of the P.R. Constitution was amended to limit the Commonwealth's borrowing on the basis of the amount of debt service the Commonwealth would have to pay relative to its historical revenues.

7.     Master proofs of claim have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds issued by, among others, HTA, ERS, the Puerto Rico Public Buildings Authority ("PBA"); the Puerto Rico Infrastructure Financing Authority ("PRIFA"); and the Puerto Rico Infrastructure Development Corporation ("PRIDCO").

8.     ***HTA***—HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.  The HTA Enabling Act authorizes HTA to issue bonds. *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution").  As of HTA's May 21, 2017, petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.  BNYM serves as fiscal agent with respect to the HTA Bonds.  On behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the

Commonwealth Title III Case (the "HTA-CW Master Claims"), each asserting a "secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the Commonwealth arising at law or in equity . . . ." *See* Addendum to Proof of Claim No. 121053, ¶ 15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No. 115380, ¶ 15.[4]

9.     **_ERS_**—ERS is a trust established by the Commonwealth in 1951 for the economic well-being of public employees.  ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.  Purportedly pursuant to that certain *Pension Funding Bond Resolution*, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds") in the aggregate original principal amount of approximately $2.9 billion.[5]  BNYM serves as the fiscal agent with respect to the ERS Bonds.   On behalf of the holders of the ERS Bonds, BNYM filed a master proof of claim in the Commonwealth Title III Case (the "ERS-CW Master Proof of Claim"), asserting claims against the Commonwealth based on, among other

---

[4]  While BNYM initially filed three proofs of claim logged by Prime Clerk, LLC, as Proofs of Claim Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos. 121053, 120982, and 115380.

[5]  On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

things, the enactment of Joint Resolution 188 and Law 106, which together created a "pay as you go" retirement system whereby pensioners are paid from the general funds of the Commonwealth, instead of Employers' Contributions, which is alleged to be collateral for the Bonds.  BNYM initially filed one proof of claim that was logged by Prime Clerk, LLC, on May 24, 2018 as Proof of Claim No. 16775, and then filed an amended claim, on May 25, 2018, that was logged by Prime Clerk, LLC, as Proof of Claim No. 32004.[6]

10.    **_PBA_**—PBA purportedly issued bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth.  U.S. Bank National Association ("US Bank") and US Bank National Trust Association ("US Bank Trust") serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Proof of Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.  The PBA Master Proof of Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown

---

[6] On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim.  *See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent (Claim No. 16775)* [ECF No. 7075].  For the avoidance of doubt, this One Hundred Seventy-Seventh Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ."
Rider to PBA Master Proof of Claim, ¶¶ 19-21.

11.     ***PRIFA***— PRIFA is an affiliate of GDB which was created in 1988 to provide
financial, administrative and other types of assistance to the Commonwealth, its public
corporations and instrumentalities responsible for developing and operating infrastructure
facilities.  On behalf of the holders of various bonds and notes issued by PRIFA (collectively, the
"PRIFA Bonds"), master proofs of claim were asserted against the Commonwealth (collectively,
the "PRIFA Master Proofs of Claim") by BNYM, US Bank Trust, and UMB Bank, N.A. ("UMB").
First, BNYM asserted three master proofs of claim: Proof of Claim No. 16759, asserting, on behalf
of holders of Dedicated Tax Fund Revenue Bond Anticipation Notes, Series 15 (the "PRIFA
Notes"), a "contingent and unliquidated claim against the Commonwealth on account of any and
all claims, causes of action, rights, and/or remedies that the Trustee or the Owners may have
against the Commonwealth arising at law or in equity based upon or relating to the Trust
Agreement, the Noteholder Agreement, the Notes, or the Pledged Revenues . . . "; Proof of Claim
No. 19814 asserting, on behalf of holders of PRIFA Notes, claims for principal and unpaid interest,
in addition to fees and expenses of the trustee; and Proof of Claim No. 103718, asserting, on behalf
of holders of revenue bonds issued by PRIFA, including Revenue Bonds (Port Authority Project),
Series 2011A, "a secured, contingent and unliquidated claim against the Commonwealth on
account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the
holders of the Bonds has or may have against the Commonwealth arising at law or in equity . . . ."

12.     Additionally, US Bank filed a master proof of claim with respect to certain PRIFA
Bonds, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13386, on behalf of holders
of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series

2006B), asserting "claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17, which course of conduct continues . . . ."  Rider to Proof of Claim No. 13386, ¶ 26.  UMB also filed a master proof of claim on behalf of holders of PRIFA Infrastructure Revenue Bonds, 2007 Series A (MEPSI Campus Project), which was logged by Prime Clerk LLC, as Proof of Claim No. 22130, and seeks recovery of unpaid principal allegedly owed in the aggregate amount of $33.9 million, unpaid interest allegedly owed in the aggregate amount of $188,552.72, in addition to unliquidated amounts for any and all amounts owed on account of any and all claims UMB may have relating to the outstanding bond obligations.  Rider to Proof of Claim No. 22130, ¶¶ 17-18.

13.    ***PRIDCO***— PRIDCO was created by Law No. 188 of 1942, codified as 23 L.P.R.A. §§ 271 *et seq.*, to promote economic development of Puerto Rico and provide industrial facilities for lease or sale to private manufacturing companies.  US Bank serves as trustee for certain General Purpose Revenue and Refunding Revenue Bonds Series 1997 A and Series 2003 (the "PRIDCO Bonds"), and on behalf of the holders of PRIDCO Bonds filed a master proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13445 ("PRIDCO Master Claim," and together with the HTA-CW Master Proofs of Claims, the ERS-CW Master Proofs of Claims, the PBA Master Proof of Claim, and the PRIFA Master Claims, the "Commonwealth Master Proofs of Claims").  The PRIDCO Master Claim asserts contingent, unliquidated claims against the Commonwealth, and seeks "recovery of any and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding

Bond obligations, whether known or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's behalf, whether presently asserted or to be asserted, including without limitation claims for or based upon the breach or violation of the Bond Documents, lease agreements or other contractual obligations relating to the underlying collateral, any other covenants or other contractual obligations contained therein, or claims arising from the improper diversion of PRIDCO's revenues or any other property securing the payment of the Bonds under the Bond Documents, as a matter of relevant Commonwealth, state or federal law, including without limitation constructive trust, fraudulent conveyance or fraudulent transfer, failure to fulfill contractual and fiduciary obligations and duties, breach of implied covenants of good faith and fair dealing, or other legal or equitable claims."  Rider to PRIDCO Master Claim, ¶¶ 12-13.

## C.     Bond Debt Master Proofs of Claim – HTA Title III Case

14.     On behalf of the holders of the HTA Resolution Bonds, BNYM filed three master proofs of claim in the HTA Title III Case (collectively, the "BNYM Master Proofs of Claims"): Proof of Claim No. 37245, asserting on behalf of holders of bonds issued under the 1968 Resolution approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim No. 38574, asserting on behalf of holders of bonds issued under the 1998 Resolution approximately $3.2 billion in liabilities plus unliquidated amounts; and Proof of Claim No. 32622, asserting on behalf of holders of subordinated bonds issued under the 1998 Resolution approximately $279 million in liabilities plus unliquidated amounts.

15.     Additionally, in accordance with the HTA Enabling Act, in 2003 HTA issued a series of Special Facility Revenue Refunding Bonds to facilitate the financing of the Teodoro Moscoso Bridge (the "Bridge Bonds").  Banco Popular de Puerto Rico ("Banco Popular") serves

as trustee with respect to the Bridge Bonds.  On behalf of the holders of Bridge Bonds, Banco

Popular filed in the HTA Title III Case a master proof of claim asserting approximately $153

million in liabilities plus unliquidated amounts for "all amounts owed on account of the [Bridge]

Bonds," which was logged by Prime Clerk, LLC, as Proof of Claim No. 22624 (together with the

BNYM Master Proofs of Claim, the "HTA Master Proofs of Claim").

**D.      Bond Debt Master Proofs of Claim – ERS Title III Case**

16.     On behalf of the holders of ERS bonds, BNYM filed a master proof of claim in the

ERS Title III Case with respect to the ERS Bonds, asserting approximately $3.8 billion in liabilities

plus unliquidated amounts, which was logged by Prime Clerk as Proof of Claim No. 16777 (the

"ERS Master Proof of Claim," and together with the HTA Master Proofs of Claim and the

Commonwealth Master Proofs of Claim, the "Master Proofs of Claim").

**E.      Proofs of Claim Filed in the Title III Cases, the Omnibus Objection Procedures, and Claim Objections**

17.     To date, approximately 177,000 proofs of claim have been filed against the Debtors

and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in

asserted claims against the Debtors, in addition to unliquidated amounts asserted.

18.     Of the proofs of claim filed, approximately 110,600 have been filed in relation to,

or reclassified to be asserted against, the Commonwealth.  Over 52,600 proofs of claim have been

filed in relation to, or reclassified to be asserted against, ERS.  Approximately 2,240 proofs of

claim have been filed in relation to, or reclassified to be asserted against, HTA.  In accordance

with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or

suffer from some other flaw, such as being subsequently amended, not putting forth a claim for

which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide

information necessary for the Debtors to determine whether the claim is valid.

19.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved the English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

20.     In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional*

*Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus

Objection Procedures").

21.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus

Objection Procedures, the Court has held hearings related to one hundred twenty-three omnibus

objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation

("COFINA"), HTA, and/or ERS, as well as thirty-three individual objections.  After hearings held

on January 30, 2019, March 13, 2019, April 24, 2019, June 12, 2019, July 24, 2019, September

11, 2019, and October 30, 2019, the Court sustained seventy-four omnibus objections and thirty-

two individual objections, resulting in thousands of proofs of claim filed against the

Commonwealth, HTA, ERS, and/or COFINA being disallowed and expunged, and hundreds of

other claims being reclassified to be asserted against another of the Debtors.  Twenty-two omnibus

objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted

on December 11, 2019.   Furthermore, twenty-seven omnibus objections to claims filed against

the Commonwealth, HTA and ERS were heard and orally granted on January 29, 2020.  Based

upon rulings and orders of the Court to date, approximately 56,000 claims, asserting approximately

$43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS, have been

disallowed and will be expunged from the claims registry in the Title III proceedings upon entry

of final orders.

22.     This One Hundred Seventy-Seventh Omnibus Objection is filed in accordance with

the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

23.     The Amended Omnibus Objection Procedures allow the Commonwealth, HTA,

and ERS to file an omnibus objection to multiple proofs of claim on any basis provided for in

Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

24.     The One Hundred Seventy-Seventh Omnibus Objection seeks to disallow, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus Objection Procedures, duplicate bond claims.

25.     Each claim identified in **Exhibit A** hereto (collectively, the "Duplicate Bond Claims") purports to assert liability against the Commonwealth, HTA, or ERS associated with one or more bonds that is duplicative of one or more Master Proofs of Claim, which as described above were filed in the Title III Cases.  As a result, the Duplicate Bond Claims should be disallowed in their entirety.  Any failure to disallow the Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, HTA, or ERS, to the detriment of other stakeholders in the Title III Cases.  The holders of the Duplicate Bond Claims will not be prejudiced by the disallowance of such claims because the liabilities associated with their claims are subsumed within one or more Master Proofs of Claim.

26.     In support of the foregoing, the Commonwealth, HTA, and ERS rely on the *Declaration of Jay Herriman in Support of the One Hundred Seventy-Seventh Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, and Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Duplicate Bond Claims*, dated March 6, 2019, attached hereto as **Exhibit B**.

## NOTICE

27.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth, HTA, and ERS are providing notice of this One Hundred Seventy-Seventh Omnibus Objection to (a) the individual creditors subject to this One Hundred

Seventy-Seventh Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Tenth Amended Case Management Procedures* [ECF No. 8027-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  The notice for this One Hundred Seventy-Seventh Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the One Hundred Seventy-Seventh Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.   The Commonwealth, HTA, and ERS submit that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

28.     This One Hundred Seventy-Seventh Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in the Title III Cases to object to the Duplicate Bond Claims or any other claims on any ground whatsoever.   The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

29.     No prior request for the relief sought in this One Hundred Seventy-Seventh Omnibus Objection has been made to this or any other court.

14

WHEREFORE the Commonwealth, HTA, and ERS respectfully request entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth, HTA, and ERS such other and further relief as is just.

Dated:  March 6, 2020                                      Respectfully submitted,
            San Juan, Puerto Rico

                                                                /s/ *Ricardo Burgos Vargas*
                                                                Ricardo Burgos Vargas
                                                                USDC No. 218210
                                                                **A&S LEGAL STUDIO, PSC**
                                                                434 Ave. Hostos
                                                                San Juan, PR 00918
                                                                Tel: (787) 751-6764
                                                                Fax: (787) 763-8260

                                                                /s/ *Martin J. Bienenstock*
                                                                Martin J. Bienenstock (*pro hac vice*)
                                                                Brian S. Rosen (*pro hac vice*)
                                                                **PROSKAUER ROSE LLP**
                                                                Eleven Times Square
                                                                New York, NY 10036
                                                                Tel:  (212) 969-3000
                                                                Fax:  (212) 969-2900

                                                                *Attorneys for the Financial*
                                                                *Oversight and Management Board*
                                                                *for Puerto Rico, as representative for*
                                                                *the Commonwealth of Puerto Rico,*
                                                                *Puerto Rico Highways and*
                                                                *Transportation Authority, and*
                                                                *Employees Retirement System for the*
                                                                *Government of the Commonwealth of*
                                                                *Puerto Rico*

**Fecha de la vista: 22 de abril de 2020, a las 09:30 a.m. (AST)**
**Fecha límite para responder: 07 de abril de 2020, a las 04:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS
ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMO(S).**

---

### TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
### PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*: | PROMESA |
| | Título III |
| JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, | |
| | Núm. 17 BK 3283-LTS |
| como representante de | (Administrada Conjuntamente) |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO, *et al.*, | **La presente radicación guarda relación con el ELA, la ACT y el SRE.** |
| Deudores.[1] | |

---

[1] Los Deudores en el marco de las presentes Causas radicadas conforme al Título III, junto con el respectivo número de causa radicada conforme al Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Causa de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Causa de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Causa de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Causa de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Causa de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Causa de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos del número federal de contribuyente: 3801) (Los números de las causas radicadas conforme al Título III están enumerados como números de causas de quiebra debido a ciertas limitaciones en el programa informático).

**CENTÉSIMA SEPTUAGÉSIMA SÉPTIMA OBJECIÓN GLOBAL (NO SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO Y DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMOS DUPLICADOS POR BONOS**

El Estado Libre Asociado de Puerto Rico (el "ELA"), la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante del ELA, la ACT y el SRE, conforme al artículo 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta Centésima septuagésima séptima objeción global (la "Centésima septuagésima séptima objeción global") a evidencias duplicadas de reclamos que figuran en el **Anexo A** del presente documento, cada una de las cuales está duplicada en relación una o más Evidencias de reclamos principales radicadas contra el ELA, la ACT o el SRE, en nombre de los tenedores de determinados bonos, y en apoyo de la Centésima septuagésima séptima objeción global respetuosamente manifiestan lo siguiente:

## JURISDICCIÓN

1.     El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme al artículo 306(a) de PROMESA.

2.     La sede judicial de este distrito es la competente conforme al artículo 307(a) de PROMESA.

## ANTECEDENTES

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

A.     **Órdenes de fecha final**

3.     El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme al artículo 304(a) de PROMESA, iniciando una causa conforme al Título III de dicho cuerpo legal (la "Causa del ELA radicada conforme al Título III"). El 21 de mayo de 2017, la Junta de Supervisión emitió certificaciones de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y radicó peticiones voluntarias de remedio para la ACT y el SRE conforme al artículo 304(a) de PROMESA, iniciando las causas al amparo del Título III del referido cuerpo legal (respectivamente, la "Causa de la ACT radicada conforme al Título III" y la "Causa del SRE radicada conforme al Título III", denominadas conjuntamente con la Causa del ELA radicada conforme al Título III, las "Causas radicadas conforme al Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de las Causas radicadas conforme al Título III únicamente con fines procesales.

4.     El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar Evidencias de reclamos y B) apruebe la forma y la manera de su notificación* [núm. ECF 2255] (la "[3]Moción de fecha final"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar Evidencias de reclamos y B) aprueba la forma y la manera de su notificación* [núm. ECF. 2521] (la "Orden inicial de fecha final"), el Tribunal concedió el remedio solicitado en la Moción de fecha final y fijó fechas límite y procedimientos para radicar evidencias de reclamos en el marco de las Causas radicadas conforme al Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco de la Causa de Quiebra Núm. 17 BK 3283-LTS.

Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar*
*Evidencias de reclamos y B) aprobó la forma y la manera de su notificación* [núm. ECF 3160]
(conjuntamente con la Orden inicial de fecha final, las "Órdenes de fecha final"), extendiendo
dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.      Evidencias de reclamos principales relativas a la deuda de los bonos: Causa del ELA**
**radicada conforme al Título III**

5.      Conforme a la Orden inicial de fecha final, fiduciarios autorizados, agentes fiscales
o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos
por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamos principal
contra el deudor pertinente, en su propio nombre y en el de todos los tenedores de los reclamos
por bonos relacionados con la respectiva serie de bonos en relación con las obligaciones surgidas
de los respectivos acuerdos fiduciarios, resoluciones o documentos similares vinculados con los
bonos. Orden inicial de fecha final, ¶ 5(a).

6.      La Constitución del Estado Libre Asociado de Puerto Rico (la "Constitución de
Puerto Rico") entró en vigor en 1952. La Constitución de Puerto Rico creó el ELA como el
Gobierno central de Puerto Rico, de "forma republicana" y dividida en tres poderes: legislativo,
ejecutivo y judicial. *Véase* Const. de Puerto Rico, artículo I, §§ 1, 2. La Constitución de Puerto
Rico autoriza al ELA a emitir deuda, con sujeción a determinadas limitaciones, incluida la
capacidad del ELA de empeñar sus rentas. *Véase* Const. de Puerto Rico. artículo VI § 2. En 1961,
la sección 2 del artículo VI de la Constitución de Puerto Rico fue modificada para limitar la
contracción de la deuda por parte del ELA sobre la base del monto de la deuda que el ELA tuviera
que haber pagado en relación con sus rentas históricas.

7.      En el marco de la Causa del ELA radicada conforme al Título III se aportaron Evidencias de reclamos principales en nombre de los tenedores de determinados bonos emitidos, entre otros, por la ACT, el SRE, la Autoridad de Edificios Públicos de Puerto Rico (la "AEP"); la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (la "AFI"); y la Compañía de Fomento Industrial de Puerto Rico ("PRIDCO").

8.      **ACT**: la ACT es una corporación pública y organismo del ELA, que constituye una entidad corporativa y política independiente y separada del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA ("Ley habilitante de la ACT"). La ACT se encarga de la construcción, funcionamiento y mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A, § 2002. La Ley habilitante de la ACT autoriza a la ACT a emitir bonos. *V*éase 9 L.P.R.A, §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"): *i*) Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución 1968"), y *ii*) Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución 1998"). Desde la fecha de petición de la ACT del 21 de mayo de 2017, aproximadamente $830 millones del monto principal de los bonos emitidos conforme a la Resolución 1968 quedan pendientes de pago, y aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la Resolución 1998 quedan igualmente pendientes de pago. BNYM actúa como agente fiscal con respecto a los Bonos de la ACT. En nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias de reclamos principales en el marco de la Causa del ELA radicada conforme al Título III ("Reclamos principales ACT-ELA", cada una de las cuales alegaba "un reclamo garantizado, contingente y no liquidado contra el ELA en razón de la totalidad de los reclamos, causas radicadas, derechos y/o remedios que el Agente Fiscal o los Propietarios puedan tener

contra el ELA, en virtud de la ley o equidad. . . ." *Véase* Adenda de la Evidencia de reclamos núm.

121053, ¶ 15; Adenda de la Evidencia de reclamos núm. 120982, ¶ 15; Adenda de la Evidencia de

reclamos núm. 115380, ¶ 15.[4]

9.    **_SRE_**: el SRE es un *trust* establecido por el ELA en 1951 para fomentar el bienestar

económico de los empleados públicos. El SRE es un organismo gubernamental, separado e

independiente del Gobierno del ELA y de otros de sus órganos. *Véase* 3 L.P.R.A § 775.

Presuntamente, conforme a la *Resolución sobre bonos para el financiamiento de pensiones*,

adoptada el 24 de enero de 2008, y las resoluciones complementarias, el SRE emitió unos bonos

preferentes y subordinados relativos al financiamiento de pensiones (los "Bonos del SRE"), por un

monto total del principal de aproximadamente $2900 millones. [5] BNYM actúa como agente fiscal

con respecto a los Bonos del SRE. En nombre de los tenedores de los Bonos del SRE, BNYM

radicó una evidencia de reclamos principal en el marco de la causa del ELA radicada conforme al

Título III (la "Evidencia de reclamos principal SRE-ELA"), alegando reclamos contra el ELA entre

otras cosas sobre la base de la adopción de la Resolución conjunta 188 y la Ley 106, que juntas

crearon un sistema de retiro "*pay as you go*" en virtud del cual los pensionados reciben pagos de

---

[4] Aunque BNYM radicó inicialmente tres evidencias de reclamos registradas por Prime Clerk, LLC, como Evidencias de reclamos núms. 21286, 26541 y 35277, estas fueron sustituidas y enmendadas por las Evidencias de reclamos núms. 121053, 120982 y 115380.

[5] El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción global a reclamos radicados por los tenedores de los bonos emitidos por el SRE* [Causa núm. 17-3566, núm. ECF 381], sobre el motivo de que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, lo cual convertía los Bonos del SRE en nulos de pleno derecho. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme al Código de quiebras, artículo 502, y la regla 3007 de las Reglas de quiebras, a reclamos radicados o alegados por los tenedores de los Bonos del SRE contra el SRE y el ELA* [núm. ECF 6482], sobre el motivo, entre otros, de que la emisión de los bonos fue *ultra vires*. El SRE se reserva los derechos a impugnar la emisión de los bonos sobre cualquier motivo, también sobre el motivo de que los bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

los fondos generales del ELA, en lugar de las Aportaciones de los Empleadores, que presuntamente

constituye garantía de los Bonos. BNYM radicó inicialmente una evidencia de reclamos que fue

registrada por Prime Clerk, LLC, el 24 de mayo de 2018, como Evidencia de reclamos núm. 16775,

y posteriormente radicó un reclamo enmendado, el 25 de mayo de 2018, que fue registrado por

rime Clerk, LLC como Evidencia de reclamos núm. 32004.[6]

10.     _AEP_: la AEP presuntamente emitió bonos para financiar edificios de oficinas y

otras instalaciones arrendadas a varios departamentos, agencias públicas y organismos del ELA.

U.S. Bank National Association ("US Bank") y US Bank National Trust Association ("US Bank

Trust") actúan como agentes fiscales en relación con determinados bonos de renta emitidos por la

AEP, conforme a lo explicado en la nota al pie 3 de la Evidencia de reclamos núm. 62833 (los

"Bonos de la AEP"), y, en nombre de los tenedores de los Bonos de la AEP, radicó una evidencia

de reclamos principal en el marco de la Causa del ELA radicada conforme al Título III por todos

los montos pendientes de pago adeudados (la "Evidencia de reclamos principal de la AEP"), que

fue registrada por Prime Clerk, LLC, como Evidencia de reclamos núm. 62833. La Evidencia de

reclamos principal de la AEP reivindica reclamos liquidados por aproximadamente $4000 millones

en concepto de capital principal presuntamente impagado, $160 millones en concepto de intereses

presuntamente impagados y por reembolso de comisiones y gastos de los agentes fiscales, además

de reclamos no liquidados y contingentes por la totalidad de los montos adeudados "en razón de

---

[6] El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de reclamos principal del
SRE. _Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme al
artículo 502 del Código de quiebras y la regla 3007 de las Reglas de quiebras, a los reclamos
radicados o alegados contra el ELA por el Bank of New York Mellon, como agente fiscal (núm.
de reclamo_ 16775) [núm. ECF. 7075]. En aras de la claridad, la presente Centésima
septuagésima séptima objeción global se radica sin perjuicio de los derechos de las partes en
relación con dicha objeción, lo que incluye cualesquiera derechos a intervenir, que quedan
reservados.

la totalidad de los reclamos que el Agente fiscal tenga o pueda tener en relación con las Obligaciones de bonos pendientes, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA". . . ." Cláusula de la Evidencia de reclamos principal de la AEP, ¶¶ 19-21.

11.    _AFI:_ la AFI es una filial del BGF que fue creada en 1988 para brindar asistencia financiera, administrativa y de otro tipo al ELA, sus entidades e instituciones públicas encargadas del desarrollo y del funcionamiento de las infraestructuras. En nombre de los tenedores de varios bonos y pagarés emitidos por la AFI (conjuntamente, "Bonos de la AFI"), se radicaron evidencias de reclamos principales contra el ELA (conjuntamente, "Evidencias de reclamos principales de la AFI") por parte de BNYM, US Bank Trust y UMB Bank, N.A. ("UMB"). En primer lugar, BNYM alegó tres evidencias de reclamos principales: la Evidencia de reclamos núm. 16759 alegando, en nombre de los tenedores de los Pagarés de anticipación de bonos relativos a rentas de fondo de impuestos dedicado, serie 15 (los "Pagarés de la AFI"), un "reclamo contingente y no liquidado contra el ELA en razón de la totalidad de los reclamos, causas radicadas, derechos y/o remedios que el Fiduciario o los Propietarios puedan tener contra el ELA, en virtud de la ley o equidad, sobre la base del Acuerdo de fideicomiso (o en relación con este), el Acuerdo de tenedores de pagarés, los Pagarés o las Rentas empeñadas". . . "; la Evidencia de reclamos núm. 19814 alegando, en nombre de los tenedores de los Pagarés de la AFI, reclamos por el principal y los intereses impagados, además de las tarifas y los gastos del fiduciario; y la Evidencia de reclamos núm. 103718 alegando, en nombre de los tenedores de los bonos de renta emitidos por la AFI, incluidos Bonos de renta (Proyecto de la Autoridad Portuaria), serie 2011A, "un reclamo garantizado, contingente y no liquidado contra el ELA en razón de la totalidad de los reclamos, causas

radicadas, derechos y/o remedios que el Fiduciario o los tenedores de los Bonos tengan o puedan

tener contra el ELA, en virtud de la ley o equidad". . . ."

12.   Además, US Bank radicó una evidencia de reclamos principal en relación con

determinados Bonos de la AFI, que fue registrada por Prime Clerk, LLC, como Evidencia de

reclamos núm. 13386, en nombre de los tenedores de los Bonos de la AFI relativos a impuestos

sobre el ron (Bonos relativos a rentas de impuestos especiales, series 2005A, 2005B, 2005C y serie

2006B), alegando "reclamos por montos contingentes y no liquidados en relación con los intereses

pagaderos a futuro, intereses acumulados y que se acumulen en el futuro en lo referente al principal

adeudado en el pasado y los reclamos por intereses, tarifas, costos e indemnización del Fiduciario

en los que se incurra en el futuro en virtud de los Documentos de bonos, así como por la totalidad

de los montos adeudados en razón de todos los reclamos que tenga o pueda tener el Fiduciario en

relación con las Obligaciones de bonos pendientes, monto mínimo de $249,099,446.17, cuyo curso

de conducta continúa". . . ." Cláusula de la Evidencia de reclamos núm. 13386, ¶ 26. UMB también

radicó una evidencia de reclamos principal en nombre de los tenedores de los Bonos relativos a

rentas de infraestructura de la AFI, 2007 serie A (Proyecto de campus de MEPSI), que fue

registrada por Prime Clerk, LLC, como Evidencia de reclamos núm. 22130, y pretende la

recuperación del principal impagado presuntamente adeudado por un monto total de $33.9

millones, intereses impagados presuntamente adeudados por un importe total de $188,552.72,

además de montos no liquidados por la totalidad de los montos adeudados en razón de todos los

reclamos que UMB pueda tener en relación con las obligaciones de bonos pendientes. Cláusula de

la Evidencia de reclamos núm. 22130, ¶¶ 17-18.

13.   ***PRIDCO***: PRIDCO fue creada por la Ley núm. 188 de 1942, codificada como 23

L.P.R.A. §§ 271 *et seq.*, para fomentar el desarrollo económico de Puerto Rico y proporcionar

instalaciones industriales en arrendamiento o venta a empresas privadas fabricantes. US Bank actúa como fideicomisario en relación con determinados Bonos relativos a rentas de fines generales y rentas de refinanciamiento, series 1997 A y series 2003 (los "Bonos de PRIDCO"), y en nombre de los tenedores de los Bonos de PRIDCO radicó una evidencia de reclamos principal contra el ELA, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamos núm. 13445 ("Reclamo principal de PRIDCO," y junto con las Evidencias de reclamos principales ACT-ELA, las Evidencias de reclamos principales SRE-ELA, la Evidencia de reclamos principal de la AEP, y los Reclamos principales de la AFI, las "Evidencias de reclamos principales del ELA"). El Reclamo principal de PRIDCO alega reclamos contingentes y no liquidados contra el ELA y procura la "recuperación de la totalidad de los montos adeudados en razón de todos los reclamos que el Fiduciario tenga o pueda tener en relación con las obligaciones pendientes por Bonos, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA, alegados en la actualidad o por alegar, lo que incluye, entre otras cosas, reclamos por o basados en el incumplimiento o la violación de los Documentos de los bonos, acuerdos de arrendamiento u otras obligaciones contractuales relativas a la garantía subyacente, cualesquiera otros pactos u otras obligaciones contractuales derivadas del presente documento, o reclamos surgidos por el desvío indebido de las rentas de PRIDCO o de cualesquiera otros bienes que garanticen el pago de los Bonos en virtud de los Documentos de los bonos, conforme a la normativa legal pertinente del ELA, estatal o federal, lo que incluye, entre otras cosas, fideicomiso ficto, transmisión fraudulenta o transferencia fraudulenta, incumplimiento de deberes y obligaciones contractuales y fiduciarias, vulneración de pactos implícitos justos y de buena fe, u otros reclamos en ley o equidad". Cláusula del Reclamo principal de PRIDCO, ¶¶ 12-13.

**C.    Evidencias de reclamos principales relativas a la deuda de los bonos: Causa de la ACT**

**radicada conforme al Título III**

14.     En nombre de los tenedores de los Bonos de la ACT relativos a resoluciones, BNYM radicó tres evidencias de reclamos principales en el marco de la causa de la ACT radicada conforme al Título III (conjuntamente, las "Evidencias de reclamos principales del BNYM"): la Evidencia de reclamos núm. 37245, por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la Resolución 1968, aproximadamente $847 millones en concepto de responsabilidad más montos no liquidados; la Evidencia de reclamos núm. 38574, por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la Resolución 1998, aproximadamente $3200 millones en concepto de responsabilidad más montos no liquidados; y la Evidencia de reclamos núm. 32622, por la que se reclama, en nombre de los tenedores de los bonos subordinados emitidos conforme a la Resolución 1998, aproximadamente $279 millones en concepto de responsabilidad más montos no liquidados.

15.     Además, de conformidad con la Ley habilitante de la ACT, la ACT emitió en 2003 una serie de Bonos relativos a rentas de instrumentos financieros especiales para facilitar el financiamiento del puente de Teodoro Moscoso (los "Bonos relativos al puente"). El Banco Popular de Puerto Rico ("Banco Popular") actúa como fiduciario en relación con los Bonos relativos al puente. En nombre de los tenedores de los Bonos relativos al puente, el Banco Popular presentó, en el marco de la Causa radicada conforme al Título III, una evidencia de reclamos principal reclamando aproximadamente $153 millones en concepto de responsabilidades más montos no liquidados relativos a "todos los montos adeudados con respecto a los Bonos [relativos al puente]", que fue registrada por Prime Clerk, LLC, como Evidencia de reclamos núm. 22624 (junto con las Evidencias de reclamos principales del BNYM, las "Evidencias de reclamos principales de la ACT").

**D.**     **Evidencias de reclamos principales relativas a la deuda de los bonos: Causa del SRE radicada conforme al Título III**

16.     En nombre de los tenedores de los Bonos del SRE, BNYM presentó una evidencia de reclamos principal en el marco de la causa del SRE radicada conforme al título III en relación con los Bonos del SRE, reclamando aproximadamente $3800 millones en concepto de responsabilidades más montos no liquidados, que fue registrada por Prime Clerk como Evidencia de reclamos núm. 16777 (la "Evidencia de reclamos principal del SRE", y junto con las Evidencias de reclamos principales de la ACT y las Evidencias de reclamos principales del ELA, las "Evidencias de reclamos principales").

**E.**     **Evidencias de reclamos radicadas en el marco de las Causas radicadas conforme al Título III, a los Procedimientos relativos a objeciones globales y a las Objeciones a reclamos**

17.     Hasta la fecha, se han radicado aproximadamente 177,000 evidencias de reclamos contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamos ascienden a un total de $43.6 billones en reclamos radicados contra los Deudores, además de los montos no liquidados reclamados.

18.     De las evidencias de reclamos radicadas, aproximadamente 110,600 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Más de 52,600 evidencias de reclamos han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. Aproximadamente 2,240 evidencias de reclamos han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. De conformidad con las condiciones de las Órdenes de fecha final muchos de estos reclamos no tenían que haber sido radicados en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendados posteriormente, no alegar un reclamo por el que los Deudores sean responsables, estar duplicados en relación con otras

12

evidencias de reclamos o no aportar información necesaria para que los Deudores determinen si el reclamo es válido.

19.     Para resolver, de manera eficaz, el mayor número posible de las evidencias de reclamos innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) declare la renuncia al requisito contenido en la regla 3007(e)(6) de las Reglas de quiebras, y c) conceda el remedio relacionado* [núm. ECF 4052] (la "<u>Moción de procedimientos globales</u>"). El Tribunal concedió el remedio solicitado en la Moción de procedimientos globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden A) que aprueba procedimientos limitados relativos a objeciones globales, B) declara la renuncia al requisito contenido en la regla 3007(e)(6) de las Reglas de quiebras, y C) concede el remedio relacionado* [núm. ECF 4230]; *Procedimientos relativos a objeciones globales* [núm. ECF. 4230-1] (conjuntamente, los "<u>Procedimientos originales relativos a objeciones globales</u>"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos originales relativos a objeciones globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [núm. ECF 4381] (la "<u>Orden de notificación</u>").

20.     En aras del interés constante de resolver de una manera eficaz cualesquiera evidencias de reclamos innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamos que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de*

*vista en relación con una Orden A) que apruebe procedimientos enmendados relativos a objeciones globales, B) declare la renuncia a los requisitos contenidos en la regla 3007(e) de las Reglas de quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [núm. ECF 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden A) que aprueba procedimientos enmendados relativos a objeciones globales, B) declara la renuncia a los requisitos contenidos en la regla 3007(e) de las Reglas de quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [núm. ECF 7440] (los "<u>Procedimientos enmendados relativos a objeciones globales</u>").

21.     Conforme a los Procedimientos originales relativos a objeciones globales y los Procedimientos enmendados relativos a objeciones globales, el Tribunal celebró vistas vinculadas con 123 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("<u>COFINA</u>"), la ACT y/o el SRE, así como con 33 objeciones individuales. Tras las vistas celebradas el 30 de enero de 2019, y el 13 de marzo de 2019, el 24 de abril de 2019, el 12 de junio de 2019, el 24 de julio de 2019, el 11 de septiembre de 2019 y el 30 de octubre de 2019, el Tribunal declaró ha lugar a 74 objeciones globales y a 32 objeciones individuales, lo cual resultó en que miles de las evidencias de reclamos radicadas contra el ELA, la ACT, el SRE y/o COFINA fueron rechazadas y suprimidas, y cientos de otros reclamos fueron reclasificados como radicados contra otros Deudores. 22 objeciones globales a reclamos radicados contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 11 de diciembre de 2019. Además, 27 objeciones globales a reclamos radicados contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 29 de enero de 2020. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamos que reivindicaban aproximadamente $43 billones en responsabilidad contra el ELA, la ACT, COFINA

y el SRE fueron rechazados y serán retirados del registro de reclamos en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

22.    La Centésima septuagésima séptima objeción global se radica de conformidad con los procedimientos enmendados relativos a objeciones globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMOS

23.    Los Procedimientos enmendados relativos a objeciones globales permiten al ELA, a la ACT y al SRE radicar una objeción global a varias evidencias de reclamos sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas federales del procedimiento de quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos enmendados relativos a objeciones globales.

24.    La Centésima septuagésima séptima objeción global pretende que se rechacen reclamos duplicados por bonos de conformidad con la regla 3007(d)(1) de las Reglas federales del procedimiento de quiebra o los Procedimientos enmendados relativos a objeciones globales.

25.    Cada reclamo identificado en el **Anexo A** del presente (conjuntamente, los "Reclamos duplicados por bonos") alega presuntamente responsabilidad contra el ELA, la ACT o el SRE vinculada con uno o varios bonos duplicados en relación con una o varias Evidencias de reclamos principales, las cuales, como se explicó anteriormente, fueron radicadas en el marco de las Causas radicadas conforme al Título III. En consecuencia, los Reclamos duplicados por bonos deben ser rechazados en su totalidad. Si los Reclamos duplicados por bonos no son rechazados, ello resultaría en que las correspondientes demandantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA, la ACT o el SRE en detrimento de otras partes interesadas de las Causa radicadas conforme al Título III. Los tenedores de los Reclamos duplicados por bonos no se verán perjudicados por el hecho de que se rechacen tales reclamos,

15

puesto que las responsabilidades vinculadas con sus reclamos figuran en una o varias Evidencias de reclamos principales.

26. En apoyo de lo anterior, el ELA, la ACT y el SRE invocan la *Declaración de Jay Herriman en apoyo de la Centésima septuagésima séptima objeción global (no sustantiva) del Estado Libre Asociado de Puerto Rico, de la Autoridad de Carreteras y Transportación de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico a Reclamos duplicados por bonos*, de fecha 6 de marzo de 2019, adjunta al presente como **Anexo B**.

## **NOTIFICACIÓN**

27. De conformidad con los Procedimientos enmendados relativos a objeciones globales y la Orden de notificación del Tribunal, el ELA, la ACT y el SRE notifican la presente Centésima septuagésima séptima objeción global a) a los acreedores individuales objeto de esta Centésima septuagésima séptima objeción global, b) al Síndico estadounidense, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de causas enmendados núm. 10* [núm. ECF 8027-1]), disponibles en el sitio de causas del Deudor, en https://cases.primeclerk.com/puertorico. La notificación relativa a la Centésima septuagésima séptima objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Centésima septuagésima séptima objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El ELA, la ACT y el SRE sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## **RESERVA DE DERECHOS**

28. La presente Centésima septuagésima séptima objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos

de los Deudores, o de los derechos de cualesquiera otras partes interesadas de las Causas radicadas conforme al Título III, a objetar a los Reclamos duplicados por bonos o a cualesquiera otros reclamos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamos contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas de las Causas radicadas conforme Título III, a impugnar cualquier reclamo sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamo; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a cualesquiera otras partes interesadas de las Causas radicadas conforme Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## **AUSENCIA DE SOLICITUDES PREVIAS**

29.     No se ha radicado ninguna solicitud de remedio previa a la presente Centésima septuagésima séptima objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA, la ACT y el SRE solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA, a la ACT y al SRE cualesquiera otros remedios que se consideren justos.

Fecha: 6 de marzo de 2020
        San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en ingles]*
Ricardo Burgos Vargas
Núm. USDC: 218210
**A&S LEGAL STUDIO, PSC**
434 Ave. Hostos
San Juan, PR 00918
Tel.: (787) 751-6764
Fax: (787) 763-8260

*[Firma en la versión en ingles]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera de Puerto Rico como representante del Estado Libre Asociado de Puerto Rico, de la Autoridad de Carreteras y Transportación de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico*