**Hearing Date: April 22, 2020, at 9:30AM (Atlantic Standard Time)**
**Response Deadline: April 7, 2020 at 4:00PM (Atlantic Standard Time)**

---

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                                Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

---

## ONE HUNDRED EIGHTIETH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO BONBDHOLDER CLAIMS ASSERTING AMOUNTS FOR WHICH THE COMMONWEALTH IS NOT LIABLE

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Economic Stability Act* ("PROMESA"),[2] files this one hundred eightieth omnibus objection (the "One Hundred Eightieth Omnibus Objection") seeking to partially disallow the proofs of claim listed on **Exhibit A** hereto, each of which in part asserts liability based on (a) an ownership interest in bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"); (b) an ownership interest in bonds issued by the Government Development Bank of Puerto Rico ("GDB"); and/or (c) one or more investments in mutual funds, which in turn may have invested in bonds issued by the Commonwealth or another of the Debtors.  Additionally, some of the claims identified in the column titled "Asserted" in **Exhibit A** hereto are also partially duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds, and/or were partially asserted against the incorrect debtor.  AFor each of the claims identified in the column titled "Asserted" in **Exhibit A** hereto, the One Hundred Eightieth Omnibus Objection would preserve a part of the claim against the Commonwealth and/or the Puerto Rico Electric Power Authority ("PREPA"), and reserve the Debtors' rights to object to any of these remaining claims, as identified in the column titled "Corrected" in **Exhibit A** hereto.  In support of the One Hundred Eightieth Omnibus Objection, the Commonwealth respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

## BACKGROUND

### A. The Bar Date Orders

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion"). Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Commonwealth Title III Case. Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

### B. Proofs of Claim Filed Against the Commonwealth, the Omnibus Objection Procedures, and Claim Objections

5.      To date, approximately 177,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC. Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

---

[3]  Unless otherwise state herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

6.      Of the proofs of claim filed, approximately 110,600 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  Over 52,600 proofs of claim have been filed in relation to, or reclassified to be asserted against, ERS.  Approximately 2,240 proofs of claim have been filed in relation to, or reclassified to be asserted against, HTA.  Approximately 4,000 proofs of claim have been filed in relation to, or reclassified to be asserted against, COFINA. In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

7.      In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

8.      In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking,

4

among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

9.      Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, the Court has held hearings related to one hundred twenty-three omnibus objections filed by the Commonwealth, COFINA, HTA, and/or ERS, as well as thirty-three individual objections. After hearings held on January 30, 2019, March 13, 2019, April 24, 2019, June 12, 2019, July 24, 2019, September 11, 2019, and October 30, 2019, the Court sustained seventy-four omnibus objections and thirty-two individual objections, resulting in thousands of proofs of claim filed against the Commonwealth, HTA, ERS, and/or COFINA being disallowed and expunged, and hundreds of other claims being reclassified to be asserted against another of the Debtors. Twenty-two omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on December 11, 2019. Furthermore, twenty-seven omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on January 29, 2020. Based upon rulings and orders of the Court to date, approximately 56,000 claims, asserting approximately $43 trillion in liability against the

Commonwealth, HTA, COFINA, and ERS, have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

10.    This One Hundred Eightieth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

11.    The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.  Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).

12.    As set forth in herein and in **Exhibit A** hereto, the One Hundred Eightieth Omnibus Objection seeks to partially disallow, in accordance with the Amended Omnibus Objection Procedures, claims that seek recovery for amounts for which the Commonwealth is not liable because the claim (i) is based in part on alleged investments in mutual funds, and thus was not filed by a "creditor" of the Commonwealth and is merely derivative; (ii) is based in part on alleged ownership of bonds issued by the Government Development Bank of Puerto Rico ("GDB"), and thus was released and extinguished pursuant to the transactions consummated through the Qualifying Modification for GDB, as defined below; and/or (iii) is based in part on the alleged ownership of bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), and thus was compromised and settled pursuant to the Settlement Order (defined below), and released and discharged in accordance with the Plan and Amended Confirmation Order (as defined below).  Additionally, for some of the claims listed on **Exhibit A** hereto, the One Hundred Eightieth Omnibus Objection seeks to disallow another part of the claim, in accordance with Federal Rule

6

of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus Objection Procedures, as partially

duplicative of one or more master proofs of claim filed in the Commonwealth Title III Case on

behalf of the holders of certain bonds.  Each of the claims identified in the column titled "Asserted"

on **Exhibit A** hereto (collectively, the "Claims to Be Partially Disallowed") should be partially

disallowed for one or more of the foregoing reasons.

13.     For some of the Claims to Be Partially Disallowed, the One Hundred Eightieth

Omnibus Objection also seeks, in accordance with Federal Rule of Bankruptcy Procedure

3007(d)(2) and the Amended Omnibus Objection Procedures, to reclassify the claim in part to be

asserted against PREPA.

### A.  No Liability for Claims Based on Investments in Mutual Funds

14.     Some of the Claims to Be Partially Disallowed purport to be based in part on an

investment in one or more mutual funds that in turn allegedly invested in bonds issued by the

Commonwealth (collectively the "Mutual Funds Claims").

15.     A claimant bears the burden of establishing standing to file a proof of claim.  *In re

Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).  It is well established that only a creditor

or the creditor's authorized agent has standing to assert a claim.  Fed. R. Bankr. P. 3001(b); 11

U.S.C. §§ 501(a) ("A creditor or an indenture trustee may file a proof of claim."); *In re Melillo*,

392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Only a creditor or indenture trustee may file a proof of

claim.").  Parties with merely derivative interests lack standing to assert a claim against a debtor's

estate.  *Matter of Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (finding party with

"relationship with Debtor [that] is not direct, but rather derivative" was "a stranger to Debtor's

bankruptcy proceedings," with "no claim against the estate's assets," and "as a general rule has no

standing in Debtor's bankruptcy proceedings"); *see also In re Tower Park Properties, LLC*, 803

F.3d 450, 462-63 (9th Cir. 2015) (holding a trust beneficiary was not a party in interest); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest are asserted, those rights must be asserted by the party in interest, not someone else."); *In re Lopez*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (to establish oneself as a party in interest "the moving party must be asserting its own rights and not those belonging to or derivative of a third party"); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (recognizing the "general principle that 'party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding'" (quoting *In re Refco*, 505 F.3d at 115 n. 10)).

16.    "A creditor, under the [Bankruptcy] Code, is one who has a claim *against the debtor* or the estate," rather than "a creditor of one of the debtor's creditors."  *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997).  Because, at most, the Mutual Funds Claims were filed based on the claimant's status as an alleged creditor of an alleged creditor of the Commonwealth, the Mutual Funds Claims were not filed by an actual creditor of the Commonwealth.  *See In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (holding receiver lacked standing to file a proof of claim because it was not a creditor or an authorized agent of a creditor).  Instead, the Mutual Funds Claims are derivative of claims that must be asserted by the mutual funds directly for any claimed recovery to be considered by the Court.  *See Matter of Goldman*, 82 B.R. at 896 (finding party with "derivative" relationship has "no claim against the estate's asset" and "as a general rule has no standing in Debtor's bankruptcy proceedings").  Moreover, it is unknown whether the mutual fund still retains ownership of the suspect bonds.

17.    Indeed, under nearly identical circumstances, this Court previously disallowed claims filed against COFINA by investors in mutual funds that in turn allegedly invested in

8

COFINA bonds for "lack of an individual interest in COFINA securities." *Transcript of March 13, 2019 Hearing Before the Hon. Laura Taylor Swain* [ECF No. 5969], at 64:01-10 ("THE COURT: So just so that I understand, his documentation shows that he is a mutual fund investor. To the extent any of those mutual funds actually holds COFINA bonds, the mutual fund would be the appropriate claimant, and so he has provided no evidence of a valid direct claim as against COFINA?  MS. STAFFORD: Correct, your Honor.  THE COURT: The objection to the claim is sustained and the claim is disallowed for lack of an individual interest in COFINA securities."); ; *see also Order Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No. 152283* [ECF No. 9121].  Accordingly, because the claimants are not creditors of the Commonwealth and lack standing to assert derivative Mutual Funds Claims, and because the Commonwealth cannot be held liable for these claims, the Mutual Funds Claims should be disallowed in their entirety.

**B.  No Liability for GDB Bondholder Claims**

18.  Some of the Claims to Be Partially Disallowed purport to assert claims based in part on the alleged ownership of bonds issued by the Government Development Bank of Puerto Rico ("GDB") (collectively the "GDB Bondholder Claims").  GDB is a public corporation and governmental instrumentality of the Commonwealth.  On July 12, 2017, the Oversight Board issued a resolution authorizing GDB, pursuant to PROMESA section 601(e), to avail itself of Title VI of PROMESA.

19.  On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in

the United States District Court for the District of Puerto Rico. On November 7, 2018, the Court

approved the Qualifying Modification pursuant to PROMESA section 601(m)(1)(D). *See* ECF

No. 270 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7,

2018). The Qualifying Modification provides for, among other things, (i) the issuance of new

bonds by the newly-created GDB Debt Recovery Authority in exchange for the cancellation of,

among other things, certain participating bonds and guaranteed bond claims (collectively, the

"GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds

upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the

holders of GDB Bonds against GDB and its affiliates relating to, among other things, any

investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any

action or omission with respect to any indebtedness or loans to GDB (including any notes issued

or deposits held by GDB) or from GDB. *Solicitation Statement*, at 57-60, ECF No. 1-15 in

*Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).[4]

    20.    Each of the GDB Bondholder Claims purport to be based in part on the ownership

of GDB Bonds that were subject to the Qualifying Modification, which provided for the issuance

of new securities in exchange for the cancellation of the GDB Bonds and the extinguishment of

the Commonwealth's guarantee of certain GDB Bonds. The Qualifying Modification provides,

among other things, that holders of GDB Bonds shall release GDB and its affiliates from claims

relating to the GDB Bonds and any action or omission of GDB and its affiliates with respect to

any indebtedness of or loan to GDB. GDB is a public corporation and instrumentality of the

---

[4] On November 29, 2018, GDB announced the consummation of the Qualifying Modification for
GDB. Press Release, Government of Puerto Rico Announces Consummation of the GDB
Qualifying Modification, Governor of Puerto Rico (Nov. 29, 2018), available at
http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-
modification.pdf.

Commonwealth, and thus the Commonwealth is an affiliate of GDB within the scope of the release pursuant to the Qualifying Modification.  The GDB Bondholder Claims relate to GDB Bonds, and as such were released upon the approval and consummation of the Qualifying Modification on November 29, 2018.  Accordingly, the GDB Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1) and should be disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

### C.  No Liability for COFINA Bondholder Claims

21.    Additionally, many of the Claims to Be Partially Disallowed purport to assert claims in part based on an alleged ownership interest in bonds issued by COFINA (collectively the "COFINA Bondholder Claims"), a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 91 of the Legislative Assembly of the Commonwealth.

22.    On May 5, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for COFINA, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "COFINA Title III Case").  The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9, 2019.

23.    On February 4, 2019, the Court confirmed the Plan, which incorporated the compromise and settlement of the dispute over whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA under applicable law (the "Commonwealth-COFINA Dispute").  *See Order and Judgment*

*Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5048].   On the same day, the Court approved the compromise and settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 5045] (the "Settlement Order").   On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended Confirmation Order").   The Plan became effective on February 12, 2019 (the "Effective Date"), when the transactions contemplated therein were consummated. *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case No. 17 BK 3284-LTS, ECF No. 587].

24.    The Settlement Order resolved the Commonwealth-COFINA Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA have been released. Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF No. 5045-1], dated October 19, 2018 and attached to the Settlement Order (the "Settlement Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has been dismissed with prejudice following the approval of the compromise and settlement of the Commonwealth-COFINA Dispute.   Furthermore, pursuant to Paragraph 29(f) of the Amended Confirmation Order, claims, such as the COFINA Bondholder Claims, that arise from or relate to the relationship of the Commonwealth and COFINA were released.   Amended Confirmation

Order, ¶ 29(f).[5]  For all these reasons, the COFINA Bondholder Claims should be disallowed because the claims have been satisfied, released, and/or discharged pursuant to the Settlement Order, Settlement Agreement, Amended Confirmation Order, and Plan.

### D. Duplicate Bond Claims

25.     Some of the Claims to Be Partially Disallowed purport to assert liability, in part, on the basis of bonds issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), Puerto Rico Highways and Transportation Authority ("HTA"), Puerto Rico Public Buildings Authority ("PBA"), Puerto Rico Aqueduct and Sewer Authority ("PRASA"), Puerto Rico Convention Center District Authority ("PRCCDA"), Puerto Rico Industrial Development Company ("PRIDCO"), Puerto Rico Infrastructure Financing Authority ("PRIFA"), and/or Puerto Rico Public Finance Corporation ("PRPFC") (collectively, the "Duplicate Bond Claims").

26.     Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a). As explained below, master proofs of claim (collectively, the "Master Claims") have been filed in

---

[5] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise."  Plan § 1.53.

the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by ERS, HTA, PBA, PRASA, PRCCDA, PRIFA, PRPFC, and PRIDCO.

27.    *ERS*—ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.[6]  Purportedly pursuant to that certain Pension Funding Bond Resolution, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds"), in the aggregate original principal amount of approximately $2.9 billion.[7]  BNYM serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of ERS Bonds, BNYM filed a master proof of claim in the Commonwealth Title III Case, which was logged by Prime Clerk, LLC, as Proof of Claim No. 32004.[8]

---

[6] On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof.

[7]  On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

[8]  On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim.  See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent (Claim No. 16775) [ECF No. 7075].  For the avoidance of doubt, this One Hundred Eightieth Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

28.    _HTA_—HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act"). Pursuant to the HTA Enabling Act, 9 L.P.R.A. §§ 2004(g), (h), (l), HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (a) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (b) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution").[9] BNYM serves as fiscal agent with respect to the HTA Bonds. On behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the Commonwealth Title III Case, which were logged by Prime Clerk, LLC, as Proofs of Claim Nos. 121053, 120982, and 115380.

29.    _PBA_—U.S. Bank and U.S. Bank Trust serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and, on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed, which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.

30.    _PRASA_—Banco Popular de Puerto Rico ("Banco Popular") serves as trustee for certain revenue bonds (the "PRASA Bonds"), allegedly issued by PRASA under the Puerto Rico Aqueduct and Sewer Authority Resolution No. 1583, Authorizing and Securing Puerto Rico Aqueduct and Sewer Authority Bonds Guaranteed by the Commonwealth of Puerto Rico, and

---

[9]    On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to PROMESA section 304(a), commencing a case under Title III thereof. As of HTA's May 21, 2017, petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.

certain supplemental resolutions.  Banco Popular filed a master proof of claim against the Commonwealth on behalf of the holders of the PRASA Bonds, which was logged by Prime Clerk, LLC, as Proof of Claim No. 22620.

31.     _PRCCDA_—BNYM serves as trustee for certain Hotel Occupancy Tax Revenue Bonds issued by PRCCDA (the "_PRCCDA Bonds_").  On behalf of the holders of PRCCDA Bonds, BNYM filed a master proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of Claim No. 37319.

32.     _PRIDCO_—U.S. Bank serves as trustee for certain General Purpose Revenue and Refunding Revenue Bonds Series 1997 A and Series 2003 (the "_PRIDCO Bonds_"), and on behalf of the holders of PRIDCO Bonds filed a master proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13445 ("_PRIDCO Master Claim_").

33.     _PRIFA_—On behalf of the holders of various bonds and notes issued by PRIFA, master proofs of claim were asserted against the Commonwealth by BNYM, U.S. Bank Trust, and UMB Bank, N.A. ("_UMB_").  BNYM filed Proofs of Claim Nos. 16759 and 19814, on behalf of the holders of certain Dedicated Tax Fund Revenue Bond Anticipation Notes, Series 15, and Proof of Claim No. 103718, on behalf of holders of certain revenue bonds issued by PRIFA, including Revenue Bonds (Port Authority Project), Series 2011A.  U.S. Bank Trust filed Proof of Claim No. 13386 on behalf of holders of certain Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B.  UMB filed Proof of Claim No. 22130 on behalf of holders of certain PRIFA Infrastructure Revenue Bonds, 2007 Series A (MEPSI Campus Project).

34.     _PRPFC_—U.S. Bank Trust serves as trustee for certain Series 2012A and Series 2011A and B bonds issued by the PRPFC (the "_PRPFC Bonds_").  On behalf of the holders of the

PRPFC Bonds, US Bank Trust filed a proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13374.

35.     Each of the Duplicate Bond Claims purports to assert liability against the Commonwealth associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Commonwealth Title III Case on behalf of the holders of certain bonds and notes issued by ERS, HTA, PBA, PRASA, PRCCDA, PRIFA, PRPFC, and PRIDCO.  Any failure to disallow these portions of the Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Commonwealth Title III Case.  The holders of the Duplicate Bond Claims will not be prejudiced by the disallowance of these portions of their claims because the liabilities associated are subsumed within one or more Master Claims.

### E.  Incorrect Debtor Claims to Be Reclassified

36.     Some of the Claims to Be Partially Disallowed identify as obligor the Commonwealth, when such claims are properly asserted, if at all, against PREPA.  Some of the Claims to Be Partially Disallowed state in the proof of claim or supporting documentation that a portion of the asserted liability appropriately lies, if at all, with PREPA, not the Commonwealth, while other Claims to Be Partially Disallowed should be asserted against PREPA, if at all, based upon the Debtors' review of the names and CUSIP information provided for the bonds at issue. Accordingly, a portion of some of the Claims to Be Disallowed should be reclassified to be asserted against PREPA, as identified in the column titled "Corrected," in **Exhibit A** hereto (collectively,

the "Reclassified Claims").  The Debtors reserve their right to object to the Reclassified Claims on any other grounds whatsoever.[10]

37.     To the extent any of the Claims to Be Partially Disallowed purport to assert liability associated with one or more bonds issued by the Commonwealth, the claimant will retain a remaining claim in the Commonwealth Title III Case (collectively, the "Remaining Claims"), as identified in the column titled "Corrected" in **Exhibit A** hereto.  The Debtors reserve their rights to object to the Remaining Claims on any grounds whatsoever.

38.      In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the One Hundred Eightieth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Bondholder Claims Asserting Amounts for Which the Commonwealth is Not Liable*, dated March 6, 2020, attached hereto as **Exhibit B**.

### NOTICE

39.     In accordance with the Amended Omnibus Objection Procedures, the Commonwealth is providing notice of this One Hundred Eightieth Omnibus Objection to (a) the individual creditors subject to this One Hundred Eightieth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Tenth Amended Case Management Procedures* [ECF No. 8027-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  The notice for this One Hundred Eightieth Omnibus

---

[10]  U.S. Bank filed master proofs of claim in the Commonwealth Title III Case on behalf of the holders of bonds issued by PREPA, which were logged by Prime Clerk, LLC, as Proofs of Claim Nos. 32565 and 50049 (collectively, the PREPA Master Claims").  The PREPA Master Claims assert unliquidated claims for the alleged value of statutory rights granted by the Commonwealth to PREPA.  To the extent any holders of bonds issued by PREPA intended to assert a claim against the Commonwealth on any of the bases set forth in the PREPA Master Claims, such claims should be disallowed as duplicates of the PREPA Master Claims, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(1).

Objection is attached hereto as **Exhibit C**.  Spanish translations are being filed and served with this objection of the One Hundred Eightieth Omnibus Objection and the supporting documents attached hereto.  The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **RESERVATION OF RIGHTS**

40.     This One Hundred Eightieth Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in these Title III proceedings to object to the Claims to Be Partially Disallowed or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in these Title III proceedings to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in these Title III proceedings under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

41.     No prior request for the relief sought in this One Hundred Eightieth Omnibus Objection has been made to this or any other court.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: March 6, 2020                          Respectfully submitted,
    San Juan, Puerto Rico

                                              /s/ *Hermann D. Bauer*
                                              Hermann D. Bauer
                                              USDC No. 215205
                                              Daniel J. Perez-Refojos
                                              USDC No. 303909
                                              **O'NEILL & BORGES LLC**
                                              250 Muñoz Rivera Ave., Suite 800
                                              San Juan, PR 00918-1813
                                              Tel:  (787) 764-8181
                                              Fax:  (787) 753-8944

                                              /s/ *Martin J. Bienenstock*
                                              Martin J. Bienenstock (*pro hac vice*)
                                              Brian S. Rosen (*pro hac vice*)
                                              **PROSKAUER ROSE LLP**
                                              Eleven Times Square
                                              New York, NY 10036
                                              Tel:  (212) 969-3000
                                              Fax:  (212) 969-2900

                                              *Attorneys for the Financial
                                              Oversight and Management Board
                                              for Puerto Rico, as representative for
                                              the Commonwealth of Puerto Rico*

**Fecha de la vista: 22 de abril de 2020, a las 09:30 a.m. (AST)**
**Fecha límite para responder: 07 de abril de 2020, a las 04:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS
ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMO(S).**

---

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
## PARA EL DISTRITO DE PUERTO RICO

*In re*:

JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN
FINANCIERA PARA PUERTO RICO,

    como representante de

ESTADO LIBRE ASOCIADO DE PUERTO RICO,
*et al.*,

                        Deudores.[1]

PROMESA
Título III

Núm. 17 BK 3283-LTS

(Administrada Conjuntamente)

**La presente radicación guarda
relación con el ELA.**

---

## CENTÉSIMA OCTOGÉSIMA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO
## LIBRE ASOCIADO DE PUERTO RICO A RECLAMOS DE BONISTAS
## QUE RECLAMAN MONTOS POR LOS QUE EL ELA NO TIENE RESPONSABILIDAD

---

El Estado Libre Asociado de Puerto Rico (el "ELA"), a través de la Junta de Supervisión y

Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante del

---

[1] Los Deudores en el marco de las presentes Causas radicadas conforme al Título III, junto con el respectivo número de causa radicada conforme al Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Causa de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Causa de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Causa de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Causa de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Causa de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Causa de Quiebra Núm. 19-BK-5523-LTS) (últimos cuatro dígitos del número federal de contribuyente: 3801) (Los números de las causas radicadas conforme al Título III están enumerados como números de causas de quiebra debido a ciertas limitaciones en el programa informático).

ELA conforme al artículo 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica la presente Centésima octogésima objeción global (la "Centésima octogésima objeción global") en la que se solicita que se rechacen en parte las evidencias de reclamos mencionadas en el **Anexo A** del presente, cada una de las cuales alega, en parte, a) responsabilidad sobre la base de una participación patrimonial en bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"); b) una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico (el "BGF"); y/o (c) una o varias inversiones en fondos mutuos que, a su vez, pudieron haber invertido en bonos emitidos por el ELA u otros Deudores. Además, algunos reclamos mencionados en la columna titulada "Alegados (*Asserted*)" en el **Anexo A** del presente documento también están parcialmente duplicados en relación con una o varias evidencias de reclamos principales radicadas contra el ELA en nombre de los tenedores de determinados bonos, y/o fueron radicados parcialmente contra el deudor incorrecto. En relación de cada uno de los reclamos identificados en la columna titulada "Alegados (*Asserted*)" en el **Anexo A** del presente documento, la Centésima octogésima objeción global preservaría parte del reclamo contra el ELA y/o la Autoridad de Energía Eléctrica de Puerto Rico ("AEE"), y se reservaría los derechos de los Deudores a objetar a cualquiera de dichos reclamos restantes, conforme a lo identificado en la columna titulada "Corregidos (*Corrected*)" en el **Anexo A** del presente. En apoyo de la Centésima octogésima objeción global, el ELA manifiesta respetuosamente lo siguiente:

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme al artículo 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme al artículo 307(a) de PROMESA.

## ANTECEDENTES

### A.  Órdenes de fecha final

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme al artículo 304(a) de PROMESA, incoando una causa conforme al título III de dicho cuerpo legal (la "Causa del ELA radicada conforme al Título III").

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar Evidencias de reclamos y B) apruebe la forma y la manera de su notificación* [núm. ECF 2255][3] (la "Moción de fecha final"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar Evidencias de reclamos y B) aprueba la forma y la manera de su notificación* [núm. ECF. 2521] (la "Orden inicial de fecha final"), el Tribunal concedió el remedio solicitado en la Moción de fecha final y fijó fechas límite y procedimientos para radicar evidencias de reclamos en el marco de la Causa del ELA radicada conforme al Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para*

---

[3]    Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del procedimiento de quiebra núm. 17 BK 3283-LTS.

*radicar Evidencias de reclamos y B) aprobó la forma y la manera de su notificación* [núm. ECF 3160] (conjuntamente con la Orden inicial de fecha final, las "<u>Órdenes de fecha final</u>"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.  Evidencias de reclamos radicadas contra el ELA, los Procedimientos relativos a objeciones globales y las Objeciones a reclamos**

5.      Hasta la fecha, se han radicado aproximadamente 177,000 evidencias de reclamos contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamos ascienden a un total de $43.6 billones en reclamos radicados contra los Deudores, además de los montos no liquidados reclamados.

6.      De las evidencias de reclamos radicadas, aproximadamente 110,600 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Más de 52,600 evidencias de reclamos han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. Aproximadamente 2,240 evidencias de reclamos han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. Aproximadamente 4,000 evidencias de reclamos han sido radicadas en relación con COFINA, o reclasificadas como radicadas contra COFINA. De conformidad con las condiciones de las Órdenes de fecha final muchos de estos reclamos no tenían que haber sido radicados en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendados posteriormente, no alegar un reclamo por el que los Deudores sean responsables, estar duplicados en relación con otras evidencias de reclamos o no aportar información necesaria para que los Deudores determinen si el reclamo es válido.

7.      Para resolver, de manera eficaz, el mayor número posible de las evidencias de reclamos innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) declare la renuncia al requisito contenido en la regla 3007(e)(6) de las*

*Reglas de quiebras, y c) conceda el remedio relacionado* [núm. ECF 4052] (la "Moción de procedimientos globales"). El Tribunal concedió el remedio solicitado en la Moción de procedimientos globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden a) que aprueba procedimientos limitados relativos a objeciones globales, b) declara la renuncia al requisito contenido en la regla 3007(e)(6) de las Reglas de quiebras, y c) concede el remedio relacionado* [núm. ECF 4230]; *Procedimientos relativos a objeciones globales* [núm. ECF. 4230-1] (conjuntamente, los "Procedimientos originales relativos a objeciones globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos originales relativos a objeciones globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [núm. ECF 4381] (la "Orden de notificación").

8.      En aras del interés constante de resolver de una manera eficaz cualesquiera evidencias de reclamos innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamos que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que apruebe procedimientos enmendados relativos a objeciones globales, B) declare la renuncia a los requisitos contenidos en la regla 3007(e) de las Reglas de quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [núm. ECF 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden A) que aprueba procedimientos enmendados relativos a objeciones globales, B) declara la renuncia a los requisitos contenidos en la regla 3007(e) de las Reglas de*

*quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado*
[núm. ECF 7440] (los "Procedimientos enmendados relativos a objeciones globales").

9.      Conforme a los Procedimientos originales relativos a objeciones globales y los
Procedimientos enmendados relativos a objeciones globales, el Tribunal celebró vistas vinculadas
con 123 objeciones globales radicadas por el ELA, COFINA, la ACT y/o el SRE, así como con 33
objeciones individuales. Tras las vistas celebradas el 30 de enero de 2019, y el 13 de marzo de
2019, el 24 de abril de 2019, el 12 de junio de 2019, el 24 de julio de 2019, el 11 de septiembre de
2019 y el 30 de octubre de 2019, el Tribunal declaró ha lugar a 74 objeciones globales y a 32
objeciones individuales, lo cual resultó en que miles de las evidencias de reclamos radicadas contra
el ELA, la ACT, el SRE y/o COFINA fueron rechazadas y suprimidas, y cientos de otros reclamos
fueron reclasificados como radicados contra otros Deudores. 22 objeciones globales a reclamos
radicados contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 11 de
diciembre de 2019. Además, 27 objeciones globales a reclamos radicados contra el ELA, la ACT
y el SRE fueron atendidas y concedidas oralmente el 29 de enero de 2020. Sobre la base de las
resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamos
que reivindicaban aproximadamente $43 billones en responsabilidad contra el ELA, la ACT,
COFINA y el SRE fueron rechazados y serán retirados del registro de reclamos en el marco de los
procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

10.      La Centésima octogésima objeción global se radica de conformidad con los
procedimientos enmendados relativos a objeciones globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMOS

11.      Los Procedimientos enmendados relativos a objeciones globales permiten al ELA
radicar una objeción global a varias evidencias de reclamos sobre cualquiera de las bases recogidas
en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule*

*of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos enmendados relativos a objeciones globales. Los reclamos que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1).

12.     Como se establece en este documento y en el **Anexo A** que se adjunta al presente, la Centésima octogésima objeción global pretende que se rechacen parcialmente, de conformidad con los Procedimientos enmendados relativos a objeciones globales, reclamos que pretenden recuperar montos por los que el ELA no tiene responsabilidad porque el reclamo i) se basa en parte en presuntas inversiones en fondos mutuos, por lo que no fue radicado por un "acreedor" del ELA y es meramente derivado; ii) se base en parte en presunta propiedad de los bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico ("BGF"), por lo que fue liberado y extinguido conforme a las transacciones consumadas a través de la Modificación calificada relativa al BGF, según se define abajo; y/o iii) se basa en parte en presunta propiedad de los bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), por lo que fue pactado y conciliado conforme a la Orden de conciliación (según se define abajo), y liberado y liquidado conforme al Plan y Orden de confirmación enmendada (según se define abajo). Además, en relación con algunos reclamos que aparecen en el **Anexo A** relativo al presente, la Centésima octogésima objeción global pretende que se rechace, de conformidad con la regla 3007(d)(1) de las Reglas federales del procedimiento de quiebra y los Procedimientos enmendados relativos a objeciones globales, otra parte de los reclamos en tanto que parcialmente duplicados en relación con una o varias Evidencias de reclamos principales radicadas en el marco de la Causa del ELA radicada conforme al Título III, en nombre de los tenedores de determinados bonos. Cada uno de los reclamos identificados en la columna titulada "Alegados (Asserted)" en el **Anexo A** del

7

presente (conjuntamente, los "Reclamos que han de ser rechazados parcialmente") deben ser

rechazados parcialmente por uno o varios motivos que anteceden.

13.     En el caso de algunos de los Reclamos que han de ser rechazados parcialmente, la

Centésima octogésima objeción global también pretende, de conformidad con la regla 3007(d)(2)

de las Reglas federales del procedimiento de quiebra y los Procedimientos enmendados relativos

a objeciones globales, reclasificar parcialmente el reclamo que se alegue contra la AEE.

**A. Ausencia de responsabilidad relativa a reclamos basados en inversiones en fondos
mutuos**

14.     Algunos Reclamos que han de ser parcialmente rechazados alegan basarse en parte

en una inversión en uno o varios fondos mutuos que, a su vez, invirtieron presuntamente en bonos

emitidos por el ELA (conjuntamente, "Reclamos relativos a fondos mutuos").

15.     Las demandantes tienen la carga de la evidencia para demostrar legitimación a

efectos de radicar una evidencia de reclamos. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr.

S.D.N.Y. 2010). Es ampliamente aceptado que solo los acreedores o sus representantes autorizados

están legitimados para radicar reclamos. Reg. Fed. de Pr. de Quiebr. 3001(b); Título 11 U.S.C., §§

501(a) ("Los acreedores o fiduciarios autorizados podrán radicar una evidencia de reclamos"); *In

re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Solo los acreedores o fiduciarios autorizados

podrán radicar una evidencia de reclamos".). Las partes que solo tengan intereses derivados

carecen de legitimación para radicar reclamos contra los bienes de un deudor. *Caso Goldman*, 82

B.R. 894, 896 (Bankr. S.D. Ohio 1988) (donde se concluyó que una parte con "una relación con el

Deudor [que] no es directa, sino más bien derivada" era "persona ajena en relación con el

procedimiento de quiebra del Deudor", sin "ninguna posibilidad de reclamar contra los activos" y

"como regla general, no tiene legitimación en relación con el procedimiento de quiebra del

Deudor".); *véase también In re Tower Park Properties, LLC*, 803 F.3d 450, 462-63 (9th Cir. 2015)

(donde se concluyó que un beneficiario de un fideicomiso no era parte interesada); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("En la medida en que se hagan valer los derechos de una parte interesada, duchos derechos han de hacerse valer por dicha parte interesada, no por un tercero".); *In re López*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (para constituirse como parte interesada "la parte solicitante deberá hacer valer sus propios derechos y no aquellos que asistan a un tercero o que se deriven en relación con tal tercero".); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (donde se reconoce el "principio general de que 'no se da legitimación de una parte interesada si la parte pretende hacer valer un derecho que es puramente derivado de los derechos de otra parte en el procedimiento de quiebras'" (que cita *In re Refco*, 505 F.3d at 115 n. 10)).

16.     "Un acreedor, conforme al Código [de Quiebras], es el que tiene reclamo *contra el deudor* o los bienes", en lugar de "un acreedor de uno de los acreedores del deudor". *S. Blvd., Inc. c. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Puesto que, a lo sumo, los Reclamos relativos a fondos mutuos fueron radicados en virtud de la condición de la demandante como presunto acreedor de un presunto acreedor del ELA, los Reclamos relativos a fondos mutuos no fueron radicados por un acreedor real del ELA. *Véase In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (donde se concluye que el destinatario carecía de legitimación para radicar una evidencia de reclamos porque no era acreedor ni agente autorizado de un acreedor). En cambio, los Reclamos relativos a fondos mutuos se derivan de los reclamos que deben hacerse valer por los fondos mutuos directamente para que el Tribunal examine cualquier recuperación alegada. *Véase el caso Goldman,* 82 B.R. en 896 (donde se concluye que una parte con una relación "derivada" no puede "reclamar los activos" y "como regla general, carece de legitimación en el procedimiento de quiebras del Deudor"). Es más, no se sabe si el fondo mutuo sigue ostentando la propiedad de los bonos controvertidos.

17.     En efecto, en unas circunstancias casi idénticas, el Tribunal ya rechazó reclamos radicados contra COFINA por unos inversores en los fondos mutuos que, a su vez, invirtieron presuntamente en los bonos de COFINA, por "carecer de interés individual en los títulos de valores de COFINA". *Transcripción de la vista del 13 de marzo de 2019 celebrada ante su señoría Laura Taylor Swain* [núm. ECF. 5969], en 64:01-10 ("EL TRIBUNAL: De modo que, para que lo entienda, su documentación muestra que es inversor en un fondo mutuo. En la medida en que cualquiera de esos fondos mutuos posea realmente los bonos de COFINA, el fondo mutuo sería el demandante pertinente, ¿así que no proporcionó ninguna evidencia de un reclamo directo válido contra COFINA? SRA. STAFFORD: Así es, señoría. EL TRIBUNAL: Se declara ha lugar a la objeción al reclamo, y se declara no ha lugar al reclamo por falta de interés individual en títulos de valores de COFINA."); ; *véase también la Orden por la que se concede la Sexagésima cuarta objeción global (sustantiva) del estado Libre Asociado de Puerto Rico a Reclamos basados en las inversiones en fondos mutuos* [ECF núm. 9099]; *Orden de memorando por la que se rechaza la moción para alterar o enmendar la orden que concede la objeción (extr. 8297) a los Reclamos núms. 152470 y 152283* [ECF. núm. 9121]. En consecuencia, puesto que las demandantes no son acreedores del ELA y carecen de legitimación para radicar Reclamos relativos a fondos mutuos, dado que el ELA no puede tener responsabilidad en relación con dichos reclamos, los Reclamos relativos a fondos mutuos deben rechazarse en su totalidad.

**B.  Ausencia de responsabilidad por reclamos relativos a los bonistas del BGF**

18.     Algunos Reclamos que han de ser rechazados parcialmente contienen presuntamente reclamos basados en parte en supuesta propiedad de los bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico (el "BGF") (conjuntamente, los "Reclamos relativos a los bonistas del BGF"). El BGF es una entidad pública y organismo gubernamental del

10

ELA. El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se autorizaba

al BGF, conforme al artículo 601(e) de PROMESA, a ampararse en el título VI de PROMESA.

19.    El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una

modificación calificada, conforme al artículo 601(m)(1)(D) de PROMESA (la "Modificación

calificada"), ante el Tribunal de Distrito de los Estados para el Distrito de Puerto Rico. El 7 de

noviembre de 2018, el Tribunal aprobó la Modificación calificada conforme al artículo

601(m)(1)(D) de PROMESA. *Véase* núm. ECF 270 en *Banco Gubernamental de Fomento para*

*Puerto Rico*, núm. de procedimiento 18-1561 (D.P.R. 7 de nov. de 2018). La modificación

calificada dispone, entre otras cosas, (i) la emisión de nuevos bonos por la Autoridad de

Recuperación de Deuda del BGF (*GDB Debt Recovery Authority*) a cambio de la cancelación

(entre otras cosas) de determinados bonos de participación y reclamos de bonos garantizados

(conjuntamente, "Bonos del BGF"). (ii) la extinción de la garantía del ELA de los bonos

garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la liberación de

reclamos de los tenedores de los Bonos del BGF contra el BGF y sus afiliados en relación con

(entre otras cosas) cualquier inversión con el BGF o una compra, venta o transferencia de cualquier

garantía o derecho del BGF, y cualquier acción u omisión con respecto a un endeudamiento o

préstamo al BGF (incluidos cualesquiera pagarés emitidos o depósitos poseídos por el BGF) o del

BGF. *Declaración de solicitación,* en 57-60, núm. ECF. 1-15 en *Banco Gubernamental de*

*Fomento para Puerto Rico*, núm. de procedimiento 18-1561 (D.P.R. 10 de ago. de 2018).[4]

---

[4]  El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación calificada
relativa al BGF. Nota de prensa, el Gobierno de Puerto Rico anuncia la consumación de la
Modificación calificada relativa al BGF, gobernador de Puerto Rico (29 de nov. de 2018),
disponible en http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-
modification.pdf.

20.     La totalidad de los Reclamos relativos a los bonistas del BGF supuestamente se

basan en parte en la propiedad de los Bonos del BGF objeto de la Modificación calificada, que

dispuso la emisión de nuevos títulos de valores a cambio de la cancelación de los Bonos del BGF

y la extinción de la garantía del ELA relativa a determinados Bonos del BGF. La Modificación

calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y

sus afiliados de los reclamos relacionados con los Bonos del BGF, y de cualquier acción u omisión

del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF. El BGF

es una entidad y organismo público del ELA, por lo que el ELA es un afiliado del BGF según el

ámbito de la liberación conforme a la Modificación calificada. Los Reclamos relativos a los

bonistas del BGF guardan relación con los Bonos del BGF, y en este sentido fueron liberados tras

la aprobación y la consumación de la Modificación calificada el 29 de noviembre de 2018. En

consecuencia, los Reclamos relativos a los bonistas del BGF son inejecutables contra el ELA y sus

bienes conforme al § 502(b)(1) del Código de quiebras, y deben rechazarse puesto que solicitan la

recuperación de montos por los que el ELA no tiene responsabilidad.

**C.  Ausencia de responsabilidad por reclamos relativos a los bonistas de COFINA**

21.     Además, muchos de los Reclamos que han de ser rechazados parcialmente

contienen presuntamente reclamos basados en parte en supuesta propiedad de los bonos emitidos

por COFINA (conjuntamente, los "Reclamos relativos a los bonistas de COFINA"), una

corporación pública y organismo del ELA que constituye una entidad corporativa y política

independiente y separada del ELA, creada conforme a la Ley núm. 91 de la Asamblea Legislativa

del ELA.

22.     El 5 de mayo de 2017, la Junta de Supervisión emitió una certificación de

reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y radicó una petición

voluntaria de remedio para COFINA conforme al artículo 304(a) de PROMESA, incoando una

causa conforme al Título III de dicho cuerpo legal (la "Causa de COFINA radicada conforme al

Título III"). La Junta de Supervisión radicó el *Tercer plan enmendado de ajuste de la Corporación*

*del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* (el "Plan") [núm.

ECF 4652] el 9 de enero de 2019.

23.    El 4 de febrero de 2019, el Tribunal confirmó el Plan que incorporaba el pacto y la

conciliación de la controversia sobre si, luego de examinar todas las contestaciones y

reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos

sobre la venta y uso supuestamente empeñados por COFINA para garantizar la deuda son

propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre

el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de*

*ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al*

*Título III* [núm. ECF 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la

Controversia entre el ELA y COFINA conforme al *Dictamen abreviado y orden que aprueba la*

*conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés*

*Apremiante de Puerto Rico* [núm. ECF 5045] (la "Orden de conciliación"). El 5 de febrero de

2019, el Tribunal dictó una *Orden y Sentencia enmendadas que confirman el Tercer plan*

*enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico*

*elaborado conforme al Título III* [núm. ECF 5055] (la "Orden de confirmación enmendada"). El

Plan entró en vigor el 12 de febrero de 2019 (la "Fecha de entrada en vigor"), una vez consumadas

las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se*

*confirma el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante*

*de Puerto Rico elaborado conforme al título III, según el título III de PROMESA, y B)*

*acontecimiento de la Fecha de entrada en vigor* [procedimiento núm. 17 BK 3284-LTS, núm. ECF 587].

24.     La Orden de conciliación resolvió la Controversia relativa al ELA y a COFINA y, conforme al párrafo 55 de la Orden de conciliación, la totalidad de los reclamos contra el ELA, surgidos o vinculados con la relación del ELA y COFINA, han sido liberados. Además, conforme al párrafo 3(c) del *Acuerdo de conciliación* [núm. ECF 5045-1], de fecha 19 de octubre de 2018, que se adjunta a la Orden de conciliación (el "Acuerdo de conciliación"), y el párrafo 7 de la Orden de confirmación enmendada, el procedimiento contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido rechazado de forma definitiva luego de la aprobación del pacto y la conciliación de la Controversia entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de confirmación enmendada, este tipo de reclamos (por ejemplo, los Reclamos relativos a los bonistas de COFINA) que surgen o están vinculados con la relación entre el ELA y COFINA, fueron liberados. Orden de confirmación enmendada, ¶ 29(f).[5] Por todos los motivos mencionados, los Reclamos relativos a los bonistas de COFINA deben ser rechazados porque los reclamos han sido satisfechos, liberados y/o descartados conforme a la Orden de conciliación, el Acuerdo de conciliación, la Orden de confirmación enmendada y el Plan.

**D.  Reclamos duplicados por bonos**

---

[5] Conforme al Plan, "Reclamo" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, accidental, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo, accidental, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado, y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas radicadas, procedimientos o reclamos de cualquier tipo o naturaleza, en derecho, equidad o de cualquier otra forma". Plan § 1.53.

25.     Algunos Reclamos que han de ser parcialmente rechazados alegan presuntamente responsabilidad, en parte, sobre la base de los bonos emitidos por el Sistema de Retiro de los empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("SRE"), la Autoridad de Carreteras y Transportación de Puerto Rico ("ACT"), la Autoridad de Edificios Públicos de Puerto Rico ("AEP"), la Autoridad de Acueductos y Alcantarillados de Puerto Rico ("AAA"), la Autoridad del Distrito del Centro de Convenciones de Puerto Rico ("ADCC"), la Compañía de Fomento Industrial de Puerto Rico ("PRIDCO"), la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico ("AFI"), y/o la Corporación para el Financiamiento Público de Puerto Rico ("CFP") (conjuntamente, "Reclamos duplicados por bonos").

26.     Conforme a la Orden inicial de fecha final, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamos principal contra el deudor pertinente, en su propio nombre y en el de todos los tenedores de los reclamos de bonos relacionados con la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos fiduciarios, resoluciones o documentos similares vinculados con los bonos. Orden inicial de fecha final, ¶ 5(a). Como se explica más adelante, las evidencias de reclamos principales (conjuntamente, "Reclamos principales") han sido radicadas en el marco de la Causa del ELA conforme al Título III en nombre de los tenedores de determinados bonos o pagarés emitidos por el SRE, la ACT, la AEP, la AAA, la ADCC, la AFI, la CFP y la PRIDCO.

27.     _SRE_: el SRE es un organismo gubernamental, separado e independiente del Gobierno del ELA y de otros de sus órganos. _Véase_ 3 L.P.R.A. § 775.[6] Presuntamente conforme a

---

[6] El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio

la Resolución sobre bonos para el financiamiento de pensiones, adoptada el 24 de enero de 2008, y las resoluciones complementarias, el SRE emitió unos bonos preferentes y subordinados relativos al financiamiento de pensiones (los "Bonos del SRE"), por un monto total del principal de aproximadamente $2900 millones.[7]  BNYM actúa como agente fiscal con respecto a los Bonos del SRE. En nombre de los tenedores de los Bonos del SRE, BNYM radicó una evidencia de reclamos principal en el marco de la Causa del ELA radicada conforme al Título III, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamos núm. 32004.[8]

28.     ACT: la ACT es una corporación pública y organismo del ELA, que constituye una entidad corporativa y política independiente y separada del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA ("Ley habilitante de la ACT"). De conformidad con la Ley habilitante de la ACT, 9 L.P.R.A. §§ 2004(g), (h), (l), la ACT emitió varias series de bonos

---

para SRE conforme al artículo 304(a) de PROMESA, incoando una causa conforme al Título III de dicho cuerpo legal.

[7]  El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción global a reclamos radicados por los tenedores de los bonos emitidos por el SRE* [Causa núm. 17-3566, núm. ECF 381], sobre el motivo de que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, lo cual convertía los Bonos del SRE en nulos de pleno derecho. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme al Código de quiebras, artículo 502, y la regla 3007 de las Reglas de quiebras, a reclamos radicados o alegados por los tenedores de los Bonos del SRE contra el SRE y el ELA* [procedimiento núm. 17-3283, núm. ECF 6482], sobre el motivo, entre otros, de que la emisión de los bonos fue *ultra vires*. El SRE se reserva los derechos a impugnar la emisión de los bonos sobre cualquier motivo, también sobre el motivo de que los bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

[8]  El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de reclamos principal del SRE. Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme al artículo 502 del Código de quiebras y la regla 3007 de las Reglas de quiebras, a los reclamos radicados o alegados contra el ELA por el Bank of New York Mellon, como agente fiscal (núm. de reclamo. 16775) [núm. ECF 7075]. En aras de la claridad, la presente Centésima octogésima objeción global se radica sin perjuicio de los derechos de las partes en relación con dicha objeción, lo que incluye cualesquiera derechos a intervenir, que quedan reservados.

en virtud de dos resoluciones diferentes (los "Bonos de la ACT"): a) Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución 1968"), y b) Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución 1998").[9] BNYM actúa como agente fiscal con respecto a los Bonos de la ACT. En nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias de reclamos principales en el marco de la causa del ELA radicada conforme al Título III, que fueron registrados por Prime Clerk, LLC, como Evidencias de reclamos núms. 121053, 120982 y 115380.

29. *AEP*: U.S. Bank y U.S. Bank Trust" actúan como agentes fiscales en relación con determinados bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3 de la Evidencia de reclamos núm. 62833 (los "Bonos de la AEP"), y, en nombre de los tenedores de los Bonos de la AEP, radicó una evidencia de reclamos principal en el marco de la causa del ELA radicada conforme al Título III por todos los montos pendientes de pago adeudados, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamos núm. 62833.

30. *AAA*: el Banco Popular de Puerto Rico ("Banco Popular") actúa como fiduciario en relación con determinados bonos de renta (los "Bonos de la AAA"), presuntamente emitidos por la AAA conforme a la Resolución de la Autoridad de Acueductos y Alcantarillados de Puerto Rico núm. 1583, por la que se garantizan los bonos de la Autoridad de Acueductos y Alcantarillados de Puerto Rico avalados por el Estado Libre Asociado de Puerto Rico, y algunas resoluciones

---

[9] El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a los artículos 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para ACT conforme al artículo 304(a) de PROMESA, incoando una causa conforme al Título III de dicho cuerpo legal. Desde la fecha de petición de la ACT del 21 de mayo de 2017, aproximadamente $830 millones del monto principal de los bonos emitidos conforme a la Resolución 1968 quedan pendientes de pago, y aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la Resolución 1998 quedan igualmente pendientes de pago.

complementarias. El Banco Popular radicó una evidencia de reclamos principal contra el ELA en nombre de los tenedores de los Bonos de la AAA, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamos núm. 22620.

31.     _ADCC_: BNYM actúa como fiduciario en relación con determinados Bonos de rentas de impuestos relativos a la ocupación de hoteles, emitidos por la ADCC (los "Bonos de la ADCC"). En nombre de los tenedores de los Bonos de la ADCC, BNYM radicó una evidencia de reclamos principal contra el ELA, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamos núm. 37319.

32.     _PRIDCO_: U.S. Bank actúa como fideicomisario en relación con determinados Bonos relativos a rentas de fines generales y rentas de refinanciamiento, series 1997 A series 2003 (los "Bonos de PRDICO"), y en nombre de los tenedores de los Bonos de PRDICO radicó una evidencia de reclamos principal contra el ELA, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamos núm. 13445 ("Reclamo principal de PRDICO").

33.     _AFI_: en nombre de los tenedores de varios bonos y pagarés emitidos por la AFI, se radicaron evidencias de reclamos principales contra el ELA por parte de BNYM, U.S. Bank Trust y UMB Bank, N.A. ("UMB"). BNYM radicó Evidencias de reclamos núms. 16759 y 19814, en nombre de los tenedores de determinados Pagarés de anticipación de bonos relativos a rentas de fondo de impuestos dedicado, serie 15, y la Evidencia de reclamos núm. 103718, en nombre de los tenedores de determinados bonos de renta emitidos por la AFI, incluidos Bonos de renta (Proyecto de la Autoridad Portuaria), serie 2011A. U.S. Bank Trust radicó la Evidencia de reclamos núm. 13386 en nombre de los tenedores de determinados Bonos relativos a rentas de impuestos especiales, series 2005A, 2005B, 2005C y serie 2006B. UMB radicó la Evidencia de reclamos

núm. 22130 en nombre de los tenedores de determinados Bonos relativos a rentas de infraestructura de la AFI, 2007 serie A (Proyecto de campus de MEPSI).

34.     *CFP*: U.S. Bank Trust actúa como fiduciario en relación con unos bonos, serie 2012A y series 2011A y B, emitidos por la CFP (los "Bonos de la CFP"). En nombre de los tenedores de los Bonos de la CFP, US Bank Trust radicó una evidencia de reclamos contra el ELA, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamos núm. 13374.

35.     Cada uno de los Reclamos duplicados por bonos alega presuntamente responsabilidad contra el ELA vinculada con uno o varios bonos que están duplicados en relación con uno o varios Reclamos principales que, según se explicó anteriormente, fueron radicados en el marco de la causa del ELA radicada conforme al Título III en nombre de los tenedores de determinados bonos y pagarés emitidos por el SRE, la ACT, la AEP, la AAA, la ADCC, la AFI, la CFP y PRDICO. Si dichas partes de los Reclamos duplicados por bonos no son rechazados, ello resultaría en que las correspondientes demandantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA, en detrimento de otras partes interesadas de la causa del ELA radicada conforme al Título III. Los autores de los Reclamos duplicados por bonos no se verán perjudicados por el hecho de que se rechacen estas partes de sus reclamos, puesto que las responsabilidades relacionadas figuran en uno o varios Reclamos principales.

**E.  Reclamos de deudores incorrectos que han de ser reclasificados**

36.     Algunos Reclamos que han de ser rechazados parcialmente identifican como obligado al ELA, cuando dichos reclamos se radican debidamente (si acaso) contra la AEE. Algunos Reclamos que han de ser rechazados parcialmente manifiestan en la evidencia de reclamos o en la documentación justificativa que una parte de la responsabilidad alegada corresponde debidamente (si acaso) a la AEE, no al ELA, mientras que otros Reclamos que han

de ser rechazados parcialmente deberían radicarse contra la AEE (si acaso) sobre la base de la relación de los Deudores y la información relativa a los números CUSIP proporcionada con respecto a los bonos controvertidos. En consecuencia, una parte de algunos Reclamos que han de ser rechazados debería ser reclasificada como los radicados contra la AEE, según lo identificado en la columna titulada "Corregidos (*Corrected*)", en el **Anexo A** del presente (conjuntamente, "Reclamos reclasificados"). Los Deudores se reservan el derecho a objetar a los Reclamos reclasificados sobre cualquier otro motivo que fuere.[10]

37.    En la medida que cualquiera de los Reclamos que han de ser rechazados parcialmente aleguen presuntamente responsabilidad vinculada con uno o varios bonos emitidos por el ELA, la demandante conservará un reclamo restante en el marco de la causa del ELA radicada conforme al Título III (conjuntamente, los "Reclamos restantes"), según lo identificado en la columna titulada "Corregidos (*Corrected*)" en el **Anexo A** del presente. Los Deudores se reservan el derecho a objetar a los Reclamos restantes sobre la base de cualquiera de los motivos.

38.    En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Centésima octogésima objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamos de bonistas que solicitan montos por los que el ELA no tiene responsabilidad*, de fecha 6 de marzo de 2020, adjunta al presente como **Anexo B**.

---

[10]  U.S. Bank radicó evidencias de reclamos principales en el marco de la causa del ELA radicada conforme al Título III en nombre de los tenedores de los bonos emitidos por la AEE, que fueron registradas por Prime Clerk, LLC, como Evidencias de reclamos núms. 32565 y 50049 (conjuntamente, los "Reclamos principales de la AEE"). Los Reclamos principales de la AEE alegan reclamos no liquidados en relación con el presunto valor de derechos legales que el ELA otorgó a la AEE. En la medida en que cualquiera de los tenedores de bonos emitidos por la AEE tuvieran la intención de radicar un reclamo contra el ELA sobre una base establecida en los Reclamos principales de la AEE, dichos reclamos deberían ser rechazados como repetidos en relación con los Reclamos principales de la AEE, conforme a la regla 3007(d)(1) de las Reglas federales del procedimiento de quiebra.

## NOTIFICACIÓN

39.     De conformidad con los Procedimientos enmendados relativos a objeciones globales, el ELA notifica la presente Centésima octogésima objeción global a) a los acreedores individuales objeto de esta Centésima octogésima objeción global, b) al Síndico estadounidense, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de causas enmendados núm. 10* [núm. ECF 8027-1]), disponibles en el sitio de causas del Deudor, en https://cases.primeclerk.com/puertorico. La notificación relativa a la Centésima octogésima objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Centésima octogésima objeción global y de la totalidad de los documentos justificativos que se adjuntan al presente se radican y envían con la presente objeción. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

40.     La presente Centésima octogésima objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas de dichos procedimientos radicados conforme al Título III, a objetar a los Reclamos que han de ser rechazados parcialmente o a cualesquiera otros reclamos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamos contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas de dichos procedimientos radicados conforme Título III, a impugnar cualquier reclamo sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamo; d) constituyan una solicitud o autorización a

21

asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a cualesquiera otras partes interesadas de estos procedimientos radicados conforme Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

<u>**AUSENCIA DE SOLICITUDES PREVIAS**</u>

41.     No se ha radicado ninguna solicitud de remedio previa a la presente Centésima octogésima objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **<u>Anexo D</u>**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios que se consideren justos.

Fecha: 6 de marzo de 2020
    San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en ingles]*
Hermann D. Bauer
Núm. USDC: 215205
Daniel J. Pérez-Refojos
Núm. USDC: 303909
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

*[Firma en la versión en ingles]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión
y Administración Financiera de
Puerto Rico como representante del
Estado Libre Asociado de Puerto
Rico*