```
 1                    UNITED STATES DISTRICT COURT

 2                     DISTRICT OF PUERTO RICO

 3
     In Re:                    )        Docket No. 3:17-BK-3283(LTS)
 4                             )
                               )        PROMESA Title III
 5   The Financial Oversight and )
     Management Board for       )
 6   Puerto Rico,               )        (Jointly Administered)
                               )
 7   as representative of       )
                               )
 8   The Commonwealth of        )
     Puerto Rico et al.,        )        March 5, 2020
 9                             )
               Debtors,        )
10
     _____
11
12   In Re:                    )        Docket No. 3:17-BK-3284(LTS)
                               )
13                             )        PROMESA Title III
     The Financial Oversight and )
14   Management Board for       )
     Puerto Rico,               )        (Jointly Administered)
15                             )
     as representative of       )
16                             )
     COFINA,                    )
17                             )
               Debtor,         )
18
     _____
19

20

21

22

23

24

25
```

```
1   _____

2
    In Re:                      )      Docket No. 3:17-BK-3566(LTS)
3                               )
                                )      PROMESA Title III
4   The Financial Oversight and )
    Management Board for        )
5   Puerto Rico,                )      (Jointly Administered)
                                )
6   as representative of        )
                                )
7   Employees Retirement System )
    of the Government of the    )
8   Commonwealth of Puerto      )
    Rico,                       )
9                               )
              Debtor,           )
10
    _____

11
12  In Re:                      )      Docket No. 3:17-BK-3567(LTS)
                                )
13                              )      PROMESA Title III
    The Financial Oversight and )
14  Management Board for        )
    Puerto Rico,                )      (Jointly Administered)
15                              )
    as representative of        )
16                              )
    Puerto Rico Highways and    )
17  Transportation Authority,   )
                                )
18            Debtor,           )

19  _____

20

21

22

23

24

25
```

```
1  _____

2
   In Re:                        )      Docket No. 3:17-BK-4780(LTS)
3                                 )
                                  )      PROMESA Title III
4  The Financial Oversight and   )
   Management Board for          )
5  Puerto Rico,                  )      (Jointly Administered)
                                  )
6  as representative of          )
                                  )
7  Puerto Rico Electric          )
   Power Authority,              )
8                                 )
              Debtor,             )
9
   _____
10
11 In Re:                        )      Docket No. 3:19-BK-5523(LTS)
                                  )
12                                )      PROMESA Title III
   The Financial Oversight and   )
13 Management Board for          )
   Puerto Rico,                  )      (Jointly Administered)
14                                )
   as representative of          )
15                                )
   Puerto Rico Public            )
16 Buildings Authority,          )
                                  )
17            Debtor,             )

18 _____

19

20

21

22

23

24

25
```

```
 1   _____

 2
     Financial Oversight and      ) Docket No. 3:19-AP-00393(LTS)
 3   Management Board for         )
     Puerto Rico,                 )        in 3:17-BK-3283(LTS)
 4                                )
     as representative of the     )
 5   Employee Retirement          )
     System of the Government of  )
 6   the Commonwealth of          )
     Puerto Rico,                 )
 7                                )
                     Plaintiff,   )
 8                                )
     v.                           )
 9                                )
     Wanda Vazquez Garced,        )
10   et al.,                      )
                                  )
11                   Defendants.  )

12   _____

13
     Autoridad de Energia         ) Docket No. 3:19-AP-00453(LTS)
14   Electrica de Puerto Rico,    )
                                  )        in 3:17-BK-4780(LTS)
15                   Plaintiff,   )
                                  )
16   v.                           )
                                  )
17   Vitol, S.A., et al.,         )
                                  )
18                   Defendants.  )

19   _____

20                       OMNIBUS HEARING

21     BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

22                UNITED STATES DISTRICT COURT JUDGE

23     AND THE HONORABLE U.S. MAGISTRATE JUDGE JUDITH GAIL DEIN

24                UNITED STATES DISTRICT COURT JUDGE

25   _____
```

```
 1  APPEARANCES:

 2  For The Commonwealth
    of Puerto Rico, et al.:   Mr. Martin J. Bienenstock, PHV
 3                            Ms. Laura Stafford, PHV
                              Mr. Michael A. Firestein, PHV
 4                            Mr. Lary A. Rappaport, PHV
                              Mr. Michael T. Mervis, PHV
 5                            Mr. Steve Ma, PHV
                              Ms. Hadassa R. Waxman, PHV
 6                            Mr. Timothy W. Mungovan, PHV

 7  For the Official
    Committee of Unsecured
 8  Creditors:               Mr. G. Alexander Bongartz, PHV

 9  For the Puerto Rico
    Fiscal Agency and
10  Financial Advisory
    Authority:               Mr. Peter Friedman, PHV
11                           Mr. John Rapisardi, PHV
                             Mr. William Sushon, PHV
12
    For Mr. Hein:            Mr. Peter Hein, Pro Se
13                               Appearing from New York

14  For Special Claims
    Committee:               Mr. Tristan G. Axelrod, PHV
15                               Appearing in New York

16  For Salud Integral
    en la Montana:           Mr. John E. Mudd, Esq.
17
    For National Public
18  Finance Guarantee Corp.: Mr. Robert Berezin, PHV
                                 Appearing from New York
19
    For Cobra Acquisitions
20  LLC:                     Mr. Stephen M. Baldini, PHV
                                 Appearing from New York
21
    For QTCB Noteholder
22  Group:                   Mr. Kurt A. Mayr, PHV
                             Mr. David L. Lawton, PHV
23
    For Vitol Inc.:          Mr. Alexander L. Kaplan, PHV
24
    Proceedings recorded by stenography.  Transcript produced by
25  CAT.
```

```
 1                        I  N  D  E  X
 2   WITNESSES:                                          PAGE
 3          None offered.
 4
 5   EXHIBITS:
 6          None offered.
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1              San Juan, Puerto Rico

2              March 5, 2020

3              At or about 9:36 AM

4                    *    *    *

5         THE COURT:  And so we are continuing into the second

6    day of the March Omnibus hearing in these Title III

7    proceedings.  According to my Agenda, the next item is the

8    PBA's motion to set the bar date.

9         MR. MA:  Good morning, Your Honor.

10        THE COURT:  Good morning.

11        MR. MA:  Steve Ma, from Proskauer, for the Oversight

12   Board.

13        THE COURT:  Good morning, Mr. Ma.

14        MR. MA:  If I may, I'd like to address the Court's

15   concerns addressing the foot traffic at the courthouse

16   collection sites that the Court had expressed yesterday with

17   the ERS presolicitation motion that I believe carries over to

18   the PBA bar date motion.

19        THE COURT:  Yes.

20        MR. MA:  Currently there are six proposed locations,

21   which include three courthouses:  This District Court in San

22   Juan, the Bankruptcy Court in Old San Juan, and the Bankruptcy

23   Court in Ponce.  And then there are three other noncourt

24   locations, including City Towers, which is approximately a

25   ten-minute walk from this courthouse; a location in Anasco;

1   and Caguas.

2          Our proposal to address the Court's concern regarding

3   the foot traffic is, first, in the notices to the bar date and

4   the ERS presolicitation, to not include the courthouses.  And,

5   second, to expand the location at City Towers near this

6   courthouse to accept greater foot traffic.  And, third, to

7   find alternative locations in Old San Juan and Ponce near the

8   Bankruptcy Courts.  And I would note that this process has

9   already started, but it may take a couple days to finalize

10  those locations.

11         And then finally, Prime Clerk would continue to work

12  with the Clerk's Offices in the District Court and the

13  Bankruptcy Courts, so that the Clerk's Office can nonetheless

14  accept Proof of Claim forms or information forms for

15  individuals that just happen to submit them at the courthouse.

16         THE COURT:  Well, I appreciate these thoughtful

17  additional arrangements.  If you'll give me just one second.

18         May I consult off-line with my Clerk's Office

19  representative?

20         (Discussion held off the record between the Court and

21  the Courtroom Deputy.)

22         THE COURT:  Once again, we are very grateful for your

23  accommodation of the concerns of the Court and making sure

24  that there will be sufficient locations and support staff at

25  locations to help the people who are coming.

1          And so the arrangements, as you have outlined them,

2      sound like they will work well.  I'll just ask that before

3      finalizing, you touch base with the appropriate court

4      personnel and make sure that they're able to communicate with

5      the Prime Clerk people to make sure there's sufficient

6      materials here and everybody knows what everybody else is

7      doing.

8          And so with those emendations, I grant the motion,

9      and I will await the revised Proposed Order and materials.

10     And I think we are still in the process of having the court

11     interpreters unit review the Spanish language version, and

12     we'll get back to you with any suggestions or concerns that we

13     have about that --

14          MR. MA:  Of course.

15          THE COURT:  -- before it's all finalized as well.

16          MR. MA:  Of course.  And I would just note that these

17     changes would also carry forward to the solicitation

18     procedures and the proposed collection sites for those.

19          THE COURT:  That was my hope.  Thank you.

20          MR. MA:  Thank you.

21          THE COURT:  Thank you so much.

22          Next on the Agenda we have the uncontested claim

23     objections.  Good morning, Ms. Stafford.

24          MS. STAFFORD:  Good morning.  Laura Stafford, for the

25     record, of Proskauer Rose on behalf of the Oversight Board.

1          As to the next several uncontested items on the

2    Agenda, in each instance we received a number of responses,

3    which were adjourned to the April 22nd Omnibus hearing

4    pursuant to notices of adjournment that were filed by the

5    debtors last Wednesday and last Friday.

6          In the intervening period between last Friday and

7    today, we've continued to receive responses on the docket, as

8    well as mailing responses that were sent to Prime Clerk --

9          THE COURT:  Can you slow down just a touch?

10         MS. STAFFORD:  Sure.

11         THE COURT:  Thank you.

12         MS. STAFFORD:  -- the debtors or the UCC.  And

13    consistent with what we have done at the December hearing and

14    January hearing, we would like to adjourn the hearings as to

15    those claimants who filed responses or submitted supplemental

16    mailings until the April 22nd Omnibus hearing, and only with

17    respect to those who submitted their supplemental mailings or

18    their responses as of today's date, March 5th.  And would

19    request that the Court grant the objections to those claimants

20    who have not filed responses with the Court as of today.

21         THE COURT:  That request is granted.  And so the --

22    just one moment.  Okay.  I'm trying to think of an efficient

23    way to do this.

24         So Agenda Items IV.3 to 13, which is the 124th

25    through 134th Omnibus Objections, the objections are sustained

1  as to all claims for which there has been no response to the

2  objection.  And I will await a proposed order that is current

3  up through the date of today's hearing.

4       And then as to Agenda Items IV.14 through 27, which

5  is the 135th through 148th Omnibus Objections, the result is

6  the same.  It is sustained as to all objections to all claims

7  as to which there has not been a response.

8       And as to Agenda Items 28 through 32, which is the

9  149th, 150th, and 155th through 157th Omnibus Objections,

10  those objections are sustained as to claims that have not

11  elicited a response to the Omnibus Objection.  And the Court

12  will await amended proposed orders covering all claims falling

13  into that category up through today.  And the remainder as to

14  which there have been responses are adjourned to the April

15  Omnibus hearing.

16       MS. STAFFORD:  Thank you very much, Your Honor.

17       THE COURT:  Thank you.

18       The next item on our Agenda is oral argument as to

19  Law 29.  And what are the time allocations?

20       MS. WAXMAN:  Good morning, Your Honor.

21       THE COURT:  Good morning, Ms. Waxman.

22       MS. WAXMAN:  Hadassa Waxman, Proskauer Rose, for the

23  Board.

24       Your Honor has allocated a total of 30 minutes.  I'd

25  like to reserve three minutes for rebuttal, if the Court

1   permits.

2         THE COURT:  So you're down for 12 and 3?

3         MS. WAXMAN:  Yes.  Thank you, Your Honor, very

4   much.

5         THE COURT:  Thank you.

6         MS. WAXMAN:  Good morning.

7         THE COURT:  Good morning.

8         MS. WAXMAN:  In a filing of Friday night, AAFAF noted

9   that this case strikes at the heart of the relationship

10  between the Oversight Board and the government.  Your Honor,

11  the Board agrees.  As Your Honor and the First Circuit have

12  recognized, as well as counsel during the hearing, the Board

13  and the government must work together cooperatively.

14        This is critical for the restructuring process, for

15  the Commonwealth's residents, and for the future of Puerto

16  Rico itself.  PROMESA, of course, codifies this power-sharing

17  structure, and imposes on the government certain disclosure

18  and approval obligations.  These obligations ensure that the

19  Board is aware of the government's actions as it relates to

20  the Commonwealth's finances.  And they also allow the Board to

21  prevent the government from taking actions that undermine the

22  carefully crafted fiscal plan, the budgets, and PROMESA

23  itself.

24        So before the government reprograms, before the

25  government modifies debt and so forth, it must inform the

1   Board of the impact, and it must obtain Board approval.

2   Before the government enacts a new law, it must provide timely

3   and accurate formal certifications, formal estimates and

4   certifications as to whether or not the law is significantly

5   inconsistent with the Fiscal Plan.

6          And, Your Honor, that is why we are here.  We are

7   here because the defendants have not adhered to PROMESA's

8   requirements.  In passing Law 29, the joint resolutions and

9   the other laws, they went at it alone.  They took action that

10  had a massive impact on the Fiscal Plan and the budgets

11  without seeking the Board's approval and without submitting

12  the required documentation that would have allowed the Board

13  to do a meaningful analysis.  And that undermines the Fiscal

14  Plan, and fundamentally, it impairs and defeats the purposes

15  of PROMESA.

16         Now, for quite some time, the Board has made efforts

17  to work with the government, but with respect to Law 29 and

18  the joint resolutions, these efforts have not resulted in

19  compliance.  These measures have had and will continue to have

20  a significant and negative impact on the Fiscal Plan.  And the

21  Board, therefore, had no choice but to file this lawsuit

22  asking the Court to nullify Law 29 and the joint resolutions,

23  and to issue injunctions preventing the defendants from

24  repeating their conduct and compelling them to comply with

25  PROMESA.

1          Now, as Your Honor is aware, the parties were last

2    before the Court this summer on this matter on the defendants'

3    Motion to Dismiss.  The Court denied the motion in its

4    entirety, finding that the Oversight Board had asserted viable

5    claims.  And because there are no material facts in dispute,

6    because the government has violated PROMESA as a matter of

7    law, the Board brings this Motion for Summary Judgment and

8    respectfully requests that Your Honor grant the Board's motion

9    on all counts.

10          Now, if Your Honor --

11          THE COURT:  I'm sorry.  So are you still pressing

12   your request as to the policy of noncompliance?

13          MS. WAXMAN:  We are, Your Honor.  Would you like me

14   to address that first?  I can walk through the counts, count

15   by count, or I can address the policy argument first,

16   whichever Your Honor would prefer.

17          THE COURT:  You can get there count by count, as long

18   as you address that.

19          The two other things that I want to be sure that you

20   address are the government's argument that the significance of

21   noncompliance and/or the characterization of Law 29 as

22   reprogramming both implicate factual issues, which are not

23   addressed as such in the record.  And the other is to the

24   extent PROMESA gives the Board the ability to determine

25   whether something is inconsistent with the purposes of

1    PROMESA, is there a standard of review for this Court of the

2    Board's determination since there is no 106 type provision

3    telling the Court to stay out of the Board's business?

4              MS. WAXMAN:  And that's with respect to 204(a)?

5              THE COURT:  Yes.

6              Ms. WAXMAN:  That was Your Honor's question.  Okay.

7    Certainly I will get to both.  I will just march through count

8    by count and get to both of those issues.

9              THE COURT:  Thank you.

10             MS. WAXMAN:  Thank you, Your Honor.

11             So let's first talk about reprogramming, Your Honor,

12   which we assert in Counts III and IV of the Complaint.  With

13   respect to those counts in which the Board seeks an injunction

14   prohibiting the enforcement of Law 29 and a declaratory

15   judgment that Law 29 and the joint resolutions are

16   enforceable for the defendants' failure to comply with

17   PROMESA, 204(c), again, the reprogramming count, there's no

18   dispute that the 2019 Fiscal Plan is predicated on the

19   assumption that the municipalities will reimburse the

20   Commonwealth for outlays of pension and health care costs.

21   And there's no dispute that Law 29 blows a massive hole in

22   that assumption by relieving the municipalities of all

23   reimbursement obligations entirely.

24             So together, Law 29 and the joint resolutions will

25   cost the Commonwealth hundreds of millions of dollars.  And

1    there is no dispute that this is not accounted for in the

2    certified budgets or in the fiscal plan.  There is also no

3    dispute that the government did not seek or obtain Board

4    analysis under 204(c) before enacting either Law 29 or the

5    joint resolutions.

6        So not withstanding these undisputed facts, the

7    defendants contend that Law 29 and the joint resolutions do

8    not violation 204(c) for two primary reasons.  First, they

9    argue that 204(c) applies only to reprogramming initiated by

10   the Governor.  And, second, the defendants argue that Law 29

11   doesn't actually reprogram.

12       And if I may address both of those arguments, Your

13   Honor.  We've addressed them in our papers, but I'd like to

14   highlight a few points here, if Your Honor permits.

15       So let's first look at the statute.  204(c)(2) says

16   simply the legislature shall not reprogram.  It's plain and

17   simple.  And in the Board's view, the inquiry should end

18   there, and that's how it has to be.  PROMESA would be defeated

19   if the legislature were permitted, able to reprogram in total

20   disregard of the Fiscal Plan and budgets.

21       For the Oversight Board to do its job, for PROMESA to

22   work as Congress intended it, the Board must have the

23   authority to analyze, review and approve, or reject if

24   appropriate, reprogramming regardless of which branch of

25   government initiates it.

1          Now, with respect to defendants' argument that Law 29

2     does not reprogram but only contemplates reprogramming, that

3     is just wrong.  And I think that Your Honor alluded to that in

4     the Motion to Dismiss in which Your Honor states, quote, Funds

5     otherwise committed for other purposes will necessarily have

6     to be redirected.  And in our view, that's the definition of

7     reprogramming.

8          As Your Honor and the First Circuit has recognized,

9     and it's certainly the Board's view, each and every dollar in

10    the budget is accounted for.  This was not accounted for in

11    the budget.  It was not accounted for in the Fiscal Plan.  By

12    definition, money has to be taken from other places.  And

13    that, in the Board's view, is reprogramming in violation of

14    204(c) given that there was no approval sought in advance.

15         With respect to the joint resolution, the defendants

16    claim that the Board's claims are moot because the

17    Commonwealth has already spent the funds.  And respectfully,

18    Your Honor, the defendants are wrong there as well.

19         If the defendants believe that they can reprogram

20    very quickly before the Board can take action, they will be

21    incentivized to do so over and over again, making the injury

22    capable of repetition.  And, therefore, this controversy is

23    certainly ripe for the Court's review.

24         Now, if I may move on to 207, Your Honor, which

25    addresses the issue of modification of debt.  With respect to

1    Count II, in which the Board seeks an injunction prohibiting

2    the enforcement of Law 29 and a declaratory judgment that Law

3    29 is unenforceable for the defendants' failure to comply with

4    207, there is no dispute that Law 29 relieves the obligations

5    of the municipalities in relation to their employees'

6    retirement and health care costs and imposes these obligations

7    entirely on the Commonwealth without any right of

8    reimbursement.  This is, by definition, modification within

9    the ordinary meaning.

10           So the only open question for this Court, in the

11   Board's view, is whether this is debt within the meaning of

12   207.  And we would submit, of course, it is.  As an initial

13   matter, the word "debt" should be given its ordinary meaning.

14   So what is debt?  Debt is an obligation.  And clearly the

15   Commonwealth's obligation to pay pension and health care costs

16   is a debt.

17           Defendants argue that Law 29 does not apply

18   because -- excuse me -- 207 does not apply to Law 29 because

19   207 says nothing about legislation.  And respectfully, to

20   counsel, this is really not a serious argument in the Board's

21   view.  Debt obligations, as a general matter, emanate from

22   legislation.  So if Congress did not want 207 to apply to

23   legislation, they would have written that exemption into the

24   statute.  And the statute would have been entirely

25   meaningless, and 207 would not exist.

1          By virtue of it existing on the books makes clear

2     that it applies to legislation.

3          THE COURT:  And I take it you continue to read the

4     reference to issuance as disjunctive in relation to later

5     references in the statute to modification?

6          MS. WAXMAN:  Yes, we do, Your Honor.

7          If I just may address that for a moment?  Because

8     defendant obviously raises that in their opposition to our

9     Motion for Summary Judgment.  The Court observed, of course,

10    in the Motion to Dismiss, that the statute's provisions

11    requiring approval of guarantees and modifications refer more

12    generally to Commonwealth debt without the modifier

13    restricting such debt to that incurred in market-based

14    transactions.

15         Interpreting 207 to apply to issued debt only would

16    be inserting a limitation that Congress simply didn't put in

17    there.  It would be ignoring the text of the statute.  And

18    it's the Board's view that that modifier cannot be read in

19    with respect to the text of the actual statute.

20         Now, if I may move on to Counts I and III, which

21    focus on 204(a), the provision, of course, requiring the

22    Oversight Board to review legislation.  There we seek an

23    injunction prohibiting the enforcement of Law 29, a

24    declaratory judgment that Law 29 is unenforceable for the

25    defendants' failure to comply with PROMESA.

1           There is no dispute the Governor's formal estimate

2    covers only a single year.  And as we've argued in our papers,

3    Your Honor, we believe that the government's responsibility is

4    to give an estimate that requires -- that covers the full five

5    years of the fiscal plan.  They didn't do that here.  And

6    there's no dispute that the Board notified the defendants of

7    their faulty and inadequate formal estimate, and they did

8    nothing.  They simply did not answer.

9           The government asserts many legal arguments or

10   several legal arguments to address.  And I see that I'm

11   running out of time, so I want to just sort of move on as

12   quickly as I can.

13           THE COURT:  Yes.

14           MS. WAXMAN:  But with respect to the argument that

15   the Governor's certification is immune for Oversight Board

16   challenge, I would say there, Your Honor, I don't want to

17   spend any time on that.  The Court's addressed that.  And the

18   defendants offer no legitimate basis for a reconsideration of

19   that.

20           THE COURT:  And I am familiar with the briefs, but I

21   do want you to talk about the -- whether the Court can and

22   under what standard it would evaluate the Board's assertion

23   that something is inconsistent with PROMESA and therefore --

24           MS. WAXMAN:  So, Your Honor, I think it's the

25   Board -- we moved on 204(a) for the government's failure to

1    provide a formal certification.  We don't think that the Court

2    has to reach the issue of whether or not it's -- the Law 29 is

3    significantly inconsistent with the Fiscal Plan.  We say that

4    under 204(a), the Board, the Governor -- there should be an

5    injunction and a nullification with respect to Law 29 because

6    of the failure of procedure.

7         If the Court is inclined to reach the insignificant

8    inconsistency issue, which again, it's the Board's view that

9    we don't have to --

10         THE COURT:  I'm talking more really about 108(a)(2).

11         MS. WAXMAN:  Oh, I'm sorry, Your Honor.

12         THE COURT:  The determination by the Board that --

13   well, the invocation by the Board of the prohibition on

14   enacting statutes or rules that would impair or defeat the

15   purposes of the Act as determined by the Oversight Board.

16         MS. WAXMAN:  Sorry, Your Honor.  May I consult with

17   my colleague?  Thank you.

18         Your Honor, the Board's view of that standard is that

19   the Court would be able to review it under an arbitrary and

20   capricious standard.  108(a)(2), we believe, empowers the

21   Board to determine whether the government has acted in a way

22   that impairs or defeats PROMESA.  And the Court would be able

23   to review that based on an arbitrary and capricious standard.

24   And --

25         THE COURT:  Thank you.  One further question.  And

1  you're on my clock now.

2         MS. WAXMAN:  Okay.

3         THE COURT:  You've asked for essentially the same

4  relief in count eight, Counsel, with the exception of the

5  declaration of the policy.

6         MS. WAXMAN:  Correct.

7         THE COURT:  But you have asked in the other seven

8  counts for essentially the same relief in enjoining, declaring

9  null and void, Law 29 and the Joint Resolutions.  Is there a

10 reason that I have to rule on every one of your grounds, since

11 if I rule in favor of you on one, you have achieved that

12 relief?

13        MS. WAXMAN:  I don't think, as a matter of law -- I

14 think that the point of this lawsuit is for Your Honor to

15 invalidate Law 29 and the joint resolutions.  I think

16 obviously the Board would like Your Honor to rule for us on

17 all counts.  I think that if you decided to rule on one count,

18 as opposed to other counts, I think it would achieve the

19 purposes that we would have sought to achieve in this case.

20        THE COURT:  And finally, as to the policy, since the

21 new Governor has put in an executive policy that urges

22 everyone to be good --

23        MS. WAXMAN:  Yes.

24        THE COURT:  -- and has, in fact, sped up the process,

25 why is an injunction necessary?

 1          MS. WAXMAN:  Your Honor, certainly things are better,

 2     and we have to recognize that.  This new administration has

 3     improved compliance.  That's certainly true.  And the Board is

 4     very pleased with the efforts of the new Governor.  The new

 5     Governor is certainly engaging with the Board, and that's

 6     definitely a good thing.

 7          But the situation is not perfect, and more work needs

 8     to be done.  Since summary judgment was filed, 21 of the 57

 9     certifications were late.  That's 36 percent of the

10     certifications were late.  And in addition, today's compliance

11     does not excuse what happened years ago or what happened over

12     the past number of months.

13          THE COURT:  But you don't punish past closed conduct

14     by issuing an injunction.

15          MS. WAXMAN:  Certainly.  That is true, Your Honor.

16          However, the situation is not perfect.

17     Certifications are still late.  It is true that the Governor

18     improved after we put their feet to the fire.  And what our

19     concern is, is that the absence of an injunction would cause

20     the defendants to fail to comply once more if things got, in

21     their view, too difficult.

22          Their brief spent a lot of time talking about how

23     difficult it is to comply and the efforts that they've made,

24     which we certainly appreciate.  But we are very concerned that

25     this is the kind of harm that is capable of repetition and is

1    indeed continuing to occur even as of today when their

2    certification is still -- a smaller percentage of

3    certifications remain late.

4         THE COURT:  Thank you.

5         MS. WAXMAN:  And if the Court has no additional

6    questions, the government or the Oversight Board respectfully

7    rests on its written submissions and the oral arguments made

8    today.

9         THE COURT:  Thank you.

10        MS. WAXMAN:  Thank you, Your Honor.

11        THE COURT:  Good morning.

12        MR. SUSHON:  Good morning, Your Honor.  Bill Sushon

13   on behalf of O'Melveny & Myers on behalf of the Governor and

14   AAFAF.

15        Before I begin, if I may, I'd like to hand up copies

16   of two letters that I may refer to during the course of my

17   argument.  I've shown them to opposing counsel, and she said

18   they have no objection.

19        THE COURT:  Yes.  Please bring them forward.

20        MR. SUSHON:  Thank you.

21        THE COURT:  Thank you.

22        Okay.  The other copy can go to my law clerks and --

23        MR. SUSHON:  I'm sorry, Judge.

24        THE COURT:  Thank you.  And then kindly file them

25   with an informative motion --

1            MR. SUSHON:  We will, Your Honor.

2            THE COURT:  -- because of course the people on the

3    phone and the people in New York wouldn't have been able to

4    see them.

5            MR. SUSHON:  Yes, Your Honor.  Thank you.

6            Your Honor, as the party opposing summary judgment,

7    ordinarily I would focus on what's disputed.  This morning,

8    I'm going to focus on what's undisputed.

9            First of all, there is no dispute that there has been

10   tremendous improvement in PROMESA compliance under the Vazquez

11   administration, and that the time to get 204(e) certifications

12   to the Board on average has been reduced to almost exactly the

13   seven days that the statute provides.  Second, there's no

14   dispute, they don't dispute it in their papers and they

15   haven't disputed it today in argument, that PROMESA is an

16   antidemocratic law designed to take power from the people of

17   Puerto Rico and put it in the hands of an Oversight Board.

18           When you take those two things and combine them with

19   other concessions that the Board has made in its brief, the --

20   it becomes clear that the sole yard stick the Court should use

21   to evaluate Act 29 is Section 204(a) of PROMESA.  And that's

22   all that's necessary.

23           There's also no dispute, Your Honor, that --

24           THE COURT:  All that's necessary or all that Congress

25   has made available to the Board in carrying out its duties?

1              MR. SUSHON:  Well, actually both, Your Honor.  In

2     terms of invalidating Act 29, and in terms of the joint

3     resolutions, it's our position that 204(a) is the sole

4     yardstick that the Court should employ and that they're

5     entitled to invoke here.

6              There's also no dispute that the Commonwealth's

7     municipalities are in dire financial circumstances, Your

8     Honor.  And the Oversight Board's solution to that has been to

9     impose on them hundreds of millions of dollars in PayGo

10    obligations and in health care obligations, while at the same

11    time stripping them of the funding that they were receiving

12    from the central government to help cover their costs and

13    expenses.

14             The only help the Oversight Board has offered so far

15    is to say that they should be more efficient in collecting

16    taxes and more efficient in providing services.  The

17    government recognizes that there are hard choices that have to

18    be made, Your Honor, but this starve the beast mentality

19    applied here to the Commonwealth's municipalities just isn't

20    working.  And it's putting them at risk of being unable to

21    provide basic services, such as sanitation and firefighting,

22    to the citizens.  And the situation has only become more dire

23    in the wake of the earthquakes that have struck in the new

24    year.  And some of the hardest hit municipalities by the

25    earthquakes are also the ones that need the government's

1  funding the most.

2          Now I'd like to start --

3          THE COURT:  And so as a legal matter, when situations

4  get really, really bad, everyone understands that the

5  situation is dire and there is a financial problem that has to

6  be addressed in some way if the elected government

7  fundamentally disagrees with the manner in which the Oversight

8  Board proposes to address it in carrying out its functions.

9  There's a point at which the elected government and the

10 Governor can just say, okay, forget it, Oversight Board; we're

11 going our own way; you stay in the other room; and you can't

12 do anything about it?

13         That seems, you know, certainly inconsistent with the

14 spirit and the structure of PROMESA, you know, not to mention

15 some specific statutory provisions.

16         MR. SUSHON:  That's not our position, Your Honor.

17         As Your Honor has pointed out, PROMESA is an awkward

18 power-sharing arrangement.  The Board does have tools

19 available to it to address the situation if the government is

20 going off the rails, to bring it back into compliance.  And

21 those include 204(a); they include 202 in the budgetary

22 powers; 201 in the fiscal plan powers; and most importantly,

23 203, which allows the Board, in certain circumstances, to

24 reduce spending to bring it in line with the certified budget.

25         What is happening here is that the Board is trying to

1    use other statutory powers under PROMESA, that don't apply to

2    this situation, to just cut off the government's ability to

3    even begin to try to have a dialogue about these issues and to

4    work through them.

5          I think Your Honor understands the strong policy of

6    compliance that the new administration has put in place.  I

7    won't belabor it.  I will just say that under Executive Order

8    2019-57, as Mr. Marrero made clear in his sworn declaration,

9    the average time for submitting 204(a) certifications has

10   plummeted, and it now stands at only slightly above the

11   seven-day deadline.

12         There's no dispute as to that fact, Your Honor.

13   Instead, what the Board has done is to try to turn virtue into

14   vice.  They've said, well, there's still not compliance with

15   the 204(a) certification requirements, and they raised one law

16   wherein they said that there was no certification given.  That

17   was and that is mentioned in the December 4th letter that I've

18   handed up to Your Honor.  They say that -- I'm sorry.  The

19   joint resolution 118-2019 had no certification as of the time

20   they filed for summary judgment.  That was true.

21         As the Marrero declaration made clear -- it was

22   submitted on December 26, which was late.  But as this letter

23   shows, the government asked for an extension of time to submit

24   the certification, and the Oversight Board said no extension.

25   And that's on page two.  Accordingly, no more extensions of

1   time will be granted.  They didn't offer any real explanation

2   as to why they weren't giving the extension.  They just didn't

3   give the extension.

4        The other instances of noncompliance that the Board

5   has pointed out are Act 156-2019 and joint resolution

6   116-2019, both of which they say reprogrammed funds without

7   getting advance Board permission.  First of all, Act 156-2019

8   involves restoring vacation days to firefighters and certain

9   other government employers who are in dangerous professions.

10  As the December 18th letter I've given up to Your Honor shows,

11  the government did submit that to the Board with a

12  certification that said that the law was -- and this is on

13  page two, the third paragraph -- that Act 156-2019 is

14  significantly inconsistent with the fiscal plan.

15       So this is an example of the policy working.  The

16  Government said it's significantly inconsistent, Board.

17  Here's our certification, Board.  They weren't trying to hide

18  anything from the Board or put anything over on the Board.

19       And the same applies with respect to the joint

20  resolution at issue, where if you look at page three of the

21  letter, it's clear that the government again certified that it

22  was significantly inconsistent with the fiscal plan, "Because

23  it relates to a legislative appropriation granted in a

24  previous fiscal year, and the Oversight Board has not approved

25  the reprogramming of the funds."  Again, there's no effort to

1  hide the ball here, Your Honor.  The government is complying,

2  not failing to comply.

3       And then the only other thing that the Board points

4  to, Your Honor, is the fact that they were concerned about

5  noncompliance before, and that it could happen again.  Your

6  Honor, that's pure speculation on their part, and that can't

7  be the foundation for an injunction against a compliant

8  government that has a compliant policy.  That just can't be

9  the basis for an injunction, Your Honor.  So --

10       THE COURT:  And is that your argument as well with

11  respect to their response to your mootness argument on

12  implemented joint resolutions?

13       MR. SUSHON:  It is, Your Honor.

14       There has now been compliance with 204(c).  As we've

15  just seen, there are only two instances that they could point

16  to where they said there was not compliance with 204(c).  And

17  in both instances, when the government submitted the new law

18  or the new joint resolution, the government certified it as

19  significantly inconsistent with the Fiscal Plan.

20       So I'd like to turn to the other sections under which

21  the Board is seeking relief.  As I said, the Board does not

22  dispute that PROMESA is antidemocratic, and it can't dispute

23  that fact.  Again, it takes the power from the elected

24  government that the people of Puerto Rico chose and puts it in

25  the hands of a Board appointed, chosen by the President of the

1  United States, and whose election the people of Puerto Rico

2  have no say, Your Honor.

3       THE COURT:  And the Board didn't enact PROMESA.

4  Congress did.

5       MR. SUSHON:  Correct, Your Honor.  But because it is

6  an antidemocratic law, the Board's powers under PROMESA should

7  be construed as narrowly as possible to effectuate their ends.

8       The Board disputes that.  The Board wants the Court

9  to endorse autocracy.  The Board thinks that the

10  antidemocratic nature of PROMESA is not a vice but a virtue.

11  And that's just not the way that it should be read, Your

12  Honor.  It should be read as narrowly as possible to preserve

13  to the democratically elected government the powers that it

14  has, while ensuring that PROMESA's aims can be achieved.

15       So in this circumstance today, Section 204(a) really

16  should be the only law that applies.  With respect to Sections

17  108(a)(2) and Section 207, if the Court were to adopt the

18  Board's interpretations of those statutes, it would completely

19  nullify Section 204(a).  In fact --

20       THE COURT:  You will really need to walk me through

21  that assertion, because I didn't really follow it in your

22  brief.  And 204(a), if complied with, works fine.  Your

23  argument and your brief on 204(a) seemed to be, well, if

24  ultimately we don't say anything at all or we don't respond or

25  we say it's consistent, and even if it's objectively

1    inconsistent, well, you know, the Board's gotten a response.

2    And it's an awkward power-sharing arrangement, so, you know,

3    the Board should stand aside and not do anything else.  So I

4    don't get it yet.

5         MR. SUSHON:  Okay.  With respect to -- let's start

6    with Section 108(a)(2) and the Board's interpretation of

7    Section 108(a)(2).  The Board's argument has been that it has

8    the power to bar enactment of a statute with the only

9    prerequisite that the Board determine in its sole discretion

10   that the statute in question impairs and/or defeats the

11   purposes of PROMESA.

12        Now, for the first time today, I finally heard some

13   limitation on that power.  They now concede that Your Honor

14   can review that for being arbitrary and capricious, which is

15   an incredibly, incredibly deferential standard, and leaves it

16   to the Court only to find that the Board has overstepped its

17   powers if it has acted in an unreasonable, completely

18   irrational manner designed to create problems.

19        So the Board thinks that it can exercise this power

20   under 108(a)(2) to nullify statutes with practically no bars

21   whatsoever.  But that can't be what Congress intended.

22   Congress addressed the enactment of statutes under 204(a)(5).

23   And if you just limit the enactment of statutes to 204(a)(5),

24   with the exception of something that interferes with the

25   Oversight Board's own integrity, then that is a limitation

1    that allows 108(a)(2) to function and allows 204(a)(5) to

2    function.

3          But if you adopt the Board's way of looking at it,

4    then 204(a)(5) won't have a purpose anymore.  The Board can

5    just say any statute impairs the purposes of PROMESA and

6    strike it down.  The Board itself concedes that 108(a) would

7    continue to have effectiveness if you read it the way that I'm

8    urging you to read it, Your Honor, because they've also argued

9    in their reply, excuse me, that it would allow the Board to

10   address resolutions, policies, and rules.

11         Now, again, we don't think that 108(a)(2) has no

12   application to statutes, because it says right in the law

13   itself that it does, but that's where the title concerning the

14   Board's autonomy comes into play.  If a statute would try to

15   control the Board and interfere with its autonomy, then a

16   statute could be struck down under 108(a)(2).

17         So, for example, Your Honor, if the government passed

18   a law that said that the Board had to meet in a two foot by

19   two foot by two foot box, and that was the only way that they

20   could have their meetings, that would interfere with its

21   functioning.  It would seek to control the Board, and

22   108(a)(2) would come into play.

23         Briefly, on Section 207, Your Honor, I heard --

24         THE COURT:  But it says, defeat the purposes of the

25   Act.  It doesn't say get in the way of the Oversight Board.

1  So that --

2          MR. SUSHON:  Correct, Your Honor.  But if you read

3  that as broadly as the Board asks you to read it, then again,

4  204(a)(5) has no role to play any longer, because the Board

5  will say any statute impairs the purposes of PROMESA and

6  should be struck down.

7          And as we pointed out in our papers, Your Honor, if

8  you look at what the Board points to here as the reasons that

9  Act 29 violates the purposes of PROMESA, it's that it is

10 inconsistent with the Fiscal Plan.  That's their argument.

11 Every argument they make about Act 29 boils down to the fact

12 that it's inconsistent with the Fiscal Plan.

13         Now, I'm over my time, Your Honor.

14         THE COURT:  You're on my clock now.  You can finish.

15 I've asked you a lot of questions.

16         MR. SUSHON:  Thank you, Your Honor.

17         Turning to Section 207, Your Honor, again, the Board

18 doesn't put any reasonable limitation on its powers under 207.

19 We heard it again this morning.  Its interpretation is that it

20 applies to debt in its ordinary meaning, and that debt is an

21 obligation.  Any obligation, Your Honor.

22         Black's Law Dictionary defines "debt" to include not

23 only a specific sum of money due by agreement, but also

24 nonmonetary things that one person owes another, such as goods

25 and services.  So their definition of "debt" would mean that

1  anything that the government did to obligate itself would be

2  subject to 207 review by the Board.

3         So to pick a somewhat whimsical example, if the

4  Government of Puerto Rico were to enact National Coqui Day and

5  take a thousand dollars that was already budgeted for the

6  purpose of national holidays and use that for some kind of

7  publicity, the Board would say, well, now you are, in fact,

8  indebting yourself, because you are going to spend a thousand

9  dollars on National Coqui Day.  And they could be able to

10  strike that down under 207, even if it were perfectly

11  compliant and everything were done according to Section

12  204(a)(5).

13         So that can't be what "debt" means, Your Honor.  And

14  again, that's where we resort to the title which says, you

15  know, debt issuance.  Section 207, it can apply to

16  legislation.  It can apply to legislation that is concerning a

17  debt issuance or issued debt.  And it can limit the ability to

18  modify or guarantee or engage in other transactions with

19  respect to issued debt.

20         If you use that limitation, Section 204(a)(5) is

21  preserved and the Board has power under 207.  If you adopt the

22  Board's interpretation, Section 204(a)(5) serves no purpose

23  anymore, Your Honor, because the Board can just say that any

24  law is a debt, and that they didn't approve it.  And then they

25  can strike it down.

1          Unless Your Honor wants me to, I won't get into depth

2    on our discussion of Section 204(c)(1) versus (2).  If you

3    have any questions about that, I'm happy to answer them.

4          THE COURT:  No.  You can go on.

5          MR. SUSHON:  So, and the same goes for the operation

6    of 204(a)(5) as to Act 29.  We've laid out our arguments in

7    our papers, Your Honor.

8          THE COURT:  Yes.

9          MR. SUSHON:  I won't belabor them.  I will ask Your

10   Honor -- I come back to the fact that the municipalities are

11   in a dire position.  And so if Your Honor were inclined to

12   strike down Act 29 under Section 204(a)(5), that you not make

13   the Order take effect for at least two weeks so that the

14   municipalities, the Oversight Board, and the government can

15   work together to try to come up with another solution to the

16   problem, Your Honor, because otherwise the municipalities will

17   immediately face a huge gap in their own budgets that they

18   won't be able to bridge, and it will already create an even

19   worse crisis than they're already facing.

20         Unless you have any other questions, Your Honor, I

21   think I'm done.

22         THE COURT:  Thank you, Mr. Sushon.

23         MR. SUSHON:  Thank you, Your Honor.

24         MS. WAXMAN:  Your Honor, may I just reply to that?

25         THE COURT:  Yes.

1           MS. WAXMAN:  Very briefly, Your Honor.  I know we've

2      had a long few days here.

3           Just listening to counsel today and reading the

4      papers, it's clear that the government isn't asking to narrow

5      the construction of PROMESA.  They're asking the Court to void

6      PROMESA.  They're asking the Court to void 204(c), 108(a)(2)

7      and 207.  We obviously think that is totally inappropriate and

8      the Court should enforce the law as written.

9           The Board is well aware of the circumstances that

10     counsel discussed that are being faced by the municipalities,

11     and the Board is working very hard to guide them to a place of

12     fiscal independence and stability.  And the problem with the

13     late certifications is actually a substantive problem.  It's

14     not a procedural problem.  These laws are on the books.  They

15     are being implemented as we speak.  They're causing unbudgeted

16     money to go out as we speak.

17          So a late certification isn't, again, a foot -- fault

18     or a procedural issue.  It deprives the Board of the ability

19     to assess and analyze the law, which is what Congress mandated

20     them to do.

21          With respect to the laws that were referenced in the

22     December 18th letter that counsel handed up to Your Honor this

23     morning, those laws, by the government's own admissions, are

24     significantly inconsistent with the Fiscal Plan, and those

25     laws are on the books.  Again, money is being spent every

1   single day.  That money is not accounted for in the Fiscal

2   Plan.  It's not accounted for in the budgets.

3          As a result, the Board followed PROMESA and sent a

4   notification under 204(a)(4) telling the government to fix the

5   law or to explain the reasons for the inconsistency.  That was

6   ignored.  Again, it's a substantive issue.  It's not a

7   procedural issue.  And the Board, of course, as set forth in

8   the letter, reserves its rights under 204(a) to take action

9   with respect to those laws.  Those laws are costing millions

10  of dollars.

11         Very briefly, Your Honor, with respect to the

12  standard that we suggested, the arbitrary and capricious

13  standard, we are certainly well within that standard.  And I

14  would submit respectfully, we are within any reasonable

15  standard. The government ignored and disregarded various

16  provisions of statute, again, 204(a), 204(c), 108(a)(2), 207.

17  And under any reasonable assessment, that standard would be

18  set.

19         With respect to the arguments that 204(a) is the only

20  vehicle for Your Honor to grant the government's -- or the

21  Board's motion, that statute applies to the Fiscal Plan.

22  Statutes can impair and defeat PROMESA by other means, and

23  that is why it is necessary for us to move under 108(a) and

24  the other statutes that we moved under.

25         We determined, the Board determined that Law 29 and

1    the joint resolutions impaired and defeated PROMESA because it

2    was inconsistent with the Fiscal Plan, but for other reasons.

3    Those other reasons included that the Commonwealth had less

4    money to invest in other critical programs.  It impaired the

5    Commonwealth's ability to access capital markets.  It defeated

6    fiscal responsibility because it let the municipalities off

7    the hook.

8             And for those reasons, the Board -- the Law 29 is not

9    only significantly inconsistent with the Fiscal Plan, it

10   impairs and defeats PROMESA by other means.

11            And unless the Court has any questions, we'll rest on

12   our earlier statements and on our papers.

13            THE COURT:  Mr. Sushon asked in the last part of his

14   remarks that, if I do strike down Law 29, that I delay the

15   effective date of that decree so as to permit a period of time

16   for some negotiation.  Do you have any objection to that

17   request?

18            MS. WAXMAN:  Your Honor, may I consult with my

19   colleagues for a moment?  Thank you.

20            Your Honor, the Board would be amenable to a two-week

21   period to discuss the issues with counsel.  We would ask,

22   however, what we're ultimately asking for is the law to be

23   nullified so that the past infractions can be corrected.

24            THE COURT:  Thank you.

25            MS. WAXMAN:  Thank you, Your Honor.

1          THE COURT:  I will continue this matter under

2  advisement and issue my decision as soon as possible.

3          MS. WAXMAN:  Thank you.

4          MR. SUSHON:  Thank you, Your Honor.

5          THE COURT:  Thank you.

6          The next matter is the Motion to Remand the Vitol

7  litigation.

8          MR. RAPPAPORT:  Good morning, Your Honor.  Lary

9  Rappaport of Proskauer on behalf of the Oversight Board.

10          THE COURT:  Good morning, Mr. Rappaport.

11          MR. RAPPAPORT:  There's three issues that I would

12  like to talk about today.  The first issue is what I consider

13  to be a side issue, but it's an important one.  That's the

14  question --

15          THE COURT:  Actually, can you hold on for one

16  second --

17          MR. RAPPAPORT:  Absolutely.

18          THE COURT:  -- so that people can change places at

19  the table?

20          MR. RAPPAPORT:  Oh, sure.  Sure.  I will wait for Mr.

21  Kaplan to come out.

22          MR. FRIEDMAN:  Your Honor, can I be excused?  Do you

23  have any additional comments that may come back to AAFAF?

24          The COURT:  No.

25          Just for the benefit of those listening, I've been

1  asked if AAFAF can be excused, and the answer is yes.

2           MR. FRIEDMAN:  Thank you, Your Honor.

3           THE COURT:  Thank you, Mr. Friedman.

4           MR. KAPLAN:  Thank you.

5           THE COURT:  Thank you.

6           And Mr. Rappaport, we had allocated a total of 30

7  minutes for argument on this motion.  I am assuming you're

8  splitting 15 and 15.  Do you want to reserve any time for

9  rebuttal?

10          MR. RAPPAPORT:  If I finish in less than 15 minutes,

11 yes.  Hopefully, I can.

12          THE COURT:  All right.

13          MR. RAPPAPORT:  As I started to say, there's three

14 issues that I'd like to cover.  The first issue is the

15 question that was interjected in the opposition, and that is

16 the question of whether or not the matter was removed on

17 diversity jurisdiction and equitable remand does not apply.

18 The second issue is the question of equitable remand and why

19 we believe that, under equitable remand, this case should be

20 remanded a second time.  And then last issue is I want to

21 address the Surreply that was filed.

22          As the Court knows, the Commonwealth proceedings that

23 were removed involved six fuel contracts between PREPA and

24 Vitol.  And the basic allegation of the two cases that were

25 filed in the Commonwealth Court, one in 2009, the second in

1   2012, involves whether or not Vitol, because it had pled

2   guilty to criminal fraud in New York, is essentially

3   disqualified from the contracts.  And so those actions seek to

4   nullify the fuel contracts.  They also have additional counts

5   that are alleged in the alternative, including breach of

6   contract.

7         Originally, the case, before PROMESA was enacted, was

8   removed to the District Court.  And if the Court will recall,

9   that particular case, the District Court enforced the forum

10  selection clauses that were in the fuel contracts that

11  required the case to be in the Commonwealth Court.

12        The District Court found that because of those forum

13  selection clauses, Vitol could not consent to removal and,

14  therefore, there was no unanimity that would allow there to be

15  removal.  The First Circuit affirmed.

16        After PROMESA was passed, the case was removed again.

17        THE COURT:  I am familiar with the procedural

18  history, so --

19        MR. RAPPAPORT:  Okay.

20        THE COURT:  -- why don't you just cut to the chase of

21  why it is you haven't waived the forum selection provision by

22  bringing on a breach of contract claim in litigation in this

23  Court against Vitol.

24        MR. RAPPAPORT:  I will.

25        So the allegation that they've made as to the waiver

1   is really two-fold.  One is that the claim of breach of

2   contract is inconsistent, and the other is that by bringing

3   the breach of contract claim, it's also a waiver of the forum

4   selection clause.

5          The reason that it isn't is because it's an unusual

6   situation in which the Special Claims Committee for the

7   Oversight Board, on behalf of PREPA, brought the other action.

8   It was an action that was brought because there is a class

9   action that's been pending for quite a while in the District

10  Court.

11         Vitol and various others are defendants in that

12  action.  And the basis of that action is that there were RICO

13  violations by Vitol and others.  It essentially alleges that

14  there was a scheme in which there was a fraud perpetrated on

15  PREPA and the claimants.

16         THE COURT:  I understand that.  The Special Claims

17  Committee still represents the --

18         MR. RAPPAPORT:  I understand that.  But the rationale

19  there was they were appointed for the purpose of bringing

20  additional claims, examining whether there were claims to be

21  brought and then bringing those claims.  And there was a time

22  bar that was approaching.

23         Vitol is not the only defendant in that case.  It's

24  -- essentially, it's a case which was brought to preserve

25  claims in the event that in the Marrero transaction, it

1   actually was proved that there was a RICO violation.  And in

2   order to preserve those claims, they brought the case, as they

3   could, because it was in Title III.  They brought the

4   adversary proceeding against Vitol and the other defendants,

5   and then they immediately asked this Court to stay it and it

6   was stayed.

7          I would contrast that with the cases that Vitol

8   relies on in their opposition.  In each of those cases, it's a

9   situation where there's a party to a forum selection clause.

10  They initiate an action in violation of the forum selection

11  clause.  And then in that same action, somebody asserts a

12  claim against them.

13         And so what they want to do within one action is they

14  want to raise the forum selection clause, both as a sword and

15  a shield.  And courts consistently have said you can't do

16  that.  That would be a waiver.

17         Here, in our situation, we have PREPA having asserted

18  these claims consistently and enforcing the forum selection

19  clause consistently.  And because of the special

20  circumstances, where they had to bring this action before the

21  bar date, they went ahead and filed it against Vitol and the

22  other defendants.  Then they sought to stay it.

23         If the case goes forward in the Commonwealth

24  proceedings -- and again, remember it was removed one day

25  before the summary judgment motions were scheduled to be

1    filed.  If that stays in the Commonwealth Court, it's going to

2    be determined.  It's going to be determined quickly.

3         Obviously, if the contracts are found to be null and

4    void in the Commonwealth proceedings, then the contract claim

5    is going to go away in a case that's been stayed, that's been

6    brought by the Special Claims Committee.  It's not going to go

7    forward.  But what they couldn't do was they couldn't allow

8    the statute of limitations to pass and waive the claims

9    without knowing what's going to happen in the Commonwealth

10   Court.

11        THE COURT:  And so there was a judgment made, in

12   difficult and compelling legal circumstances, that a certain

13   step needed to be taken.  And any downside to that step was

14   outweighed by the downside to not taking that step.  But that

15   step included asserting, in this Court, a claim that a

16   contract had required be asserted in the Commonwealth Court.

17        So I'm still not seeing the exception to the general

18   waiver principle that allows me to say, well, when that one's

19   really important to you for another reason, and you try to

20   kind of minimize its impact, and you are the good guy, then

21   it's not a waiver, which is kind of what I'm hearing from you.

22        MR. RAPPAPORT:  Well, I understand that, Your Honor,

23   but we have a situation where really I don't know that the

24   Marrero class action -- and again, remember that's the basis

25   for what the Special Claims Committee has asserted.  I don't

1   know that that could have been brought in any other court but

2   for the Title III court.

3            And they can't allow that claim to just go by and be

4   time barred.  They really, I think, didn't have a choice but

5   to go ahead and file that.  That's a different situation than

6   the case law, which talks about the waiver of the forum

7   selection clause, which really is one party asserting both the

8   forum selection clause and also bringing an affirmative action

9   in violation of the forum selection clause in one court.

10           That's a case where you really do have a true waiver

11   by the party.  They are in the same court.  They're taking

12   opposite positions, which is inappropriate.  Here, we've had

13   these proceedings that have been going on in the Commonwealth

14   for over ten years.  And they've never wavered in asserting

15   the forum selection clause, all the way up to the First

16   Circuit, all the way back down, and again in front of Your

17   Honor.

18           And I think that put into the situation where the

19   Special Claims Committee, as the representative of PREPA, had

20   to assert a claim, as opposed to waiving that claim, they did

21   the right thing, and that -- that's not an intentional,

22   knowing waiver of the forum selection clause under those

23   circumstances.

24           THE COURT:  So similarly, you might argue that a

25   compulsory counterclaim would not be a waiver of a contractual

1    provision?  I don't think I've seen any cases cited by either

2    party that would deal with it in that instance, but it seems

3    it's similar logic that a compulsory counterclaim outside of

4    the contractual forum is not a waiver of the forum selection

5    clause.

6         MR. RAPPAPORT:  That would make sense, Your Honor.

7    And again, in some of the cases that you've looked -- that

8    they've cited in the briefs, that I know that you've looked

9    at, I believe that one of those cases involved a counterclaim.

10   But the difference there, which supports what Your Honor just

11   said, the difference there was they defended against a

12   counterclaim by asserting the forum selection clause.

13        They violated the forum selection clause in filing

14   the claim in the court.  Counterclaim is filed.  And then they

15   assert the other forum selection clause to defend against it

16   and defeat it.  So that would support Your Honor's logic.  And

17   PROMESA 106(a) requires that the action be filed in the Title

18   III court, which is what was done.

19        So faced with that choice and making the choice where

20   they had to bring the client and they had to file the claim in

21   this court under PROMESA, that is not a waiver of the forum

22   selection clause.  If the Court agrees with me on that, I

23   think that's a conclusion of the analysis, because Your Honor

24   previously went through all the equitable factors and made the

25   determination back in February of 2019 that all of the

1   equitable factors, except for one which was neutral, weighed

2   in favor of equitable remand.

3        If Your Honor agrees that there's been no waiver,

4   nothing has changed.  All of those factors remain the same.

5   The analysis remains the same.  And the case should be

6   remanded.

7        If Your Honor disagrees, we still believe, even if

8   there were a waiver, the case should be remanded, because as I

9   indicated a moment ago, Your Honor found that the one issue,

10  which was the factor of whether there's a jury trial

11  available, that was neutral.  But the other factors that Your

12  Honor went through, Your Honor found that they all weighed in

13  favor of equity.  The waiver issue only played into the

14  prejudice.  It only weighed into whether or not, as the

15  nonremoving party, PREPA would be prejudiced if Your Honor

16  kept the case rather than remanding it.

17       And Your Honor found it would be prejudice, and you

18  cited as one basis of that prejudice the forum selection

19  clause.  If you removed that, it still would weigh in in favor

20  of the remand, and it should be remanded.

21       THE COURT:  But if there is no waiver and there is

22  diversity jurisdiction, which was invoked in the Notice of

23  Removal, how does the ability to remand equitably something

24  that is removed only on the basis of Title III jurisdiction,

25  transfer and impose that ability on -- removal on the basis of

1   diversity jurisdiction under 1446 that doesn't have an

2   equitable remand loophole?

3         MR. RAPPAPORT:  Our position, Your Honor, is that

4   there is no diversity jurisdiction.  That Congress has made

5   very clear under PROMESA, under Section 306, that there's only

6   two bases to remove to this Court.  That this Court is given a

7   specific grant of subject matter jurisdiction, it either

8   arises under PROMESA, or it's related to a Title III case.

9   Those are the only two --

10        THE COURT:  I'm a visiting judge of the District of

11  Puerto Rico.  PROMESA speaks of the District Court having

12  PROMESA related jurisdiction.  It has a specific provision for

13  a District Judge to be appointed to preside over these cases.

14  1446 -- 1332 creates diversity jurisdiction for District

15  Courts.  1446, I think it is, allows removal to District

16  Courts.  And I didn't see anything in Justice Roberts'

17  Appointment Order of me that stripped me of my normal District

18  Judge Article III ability to exercise the judicial power of

19  the United States.

20        So I think it seems to me that Title III Court is a

21  convenient nomenclature that we've all been using to indicate

22  that I'm not the Bankruptcy Court for the District of Puerto

23  Rico.  But I find it difficult to follow the argument that

24  somehow this is a more restricted part of the District Court

25  than the District Court to which this was removed under both

1    statutes.

2         MR. RAPPAPORT:  But I think logically, Your Honor,

3    respectfully, I think it has to.  It has to be.  Because first

4    of all, PROMESA does provide the specific grant.  And just

5    like bankruptcy courts have specific grants of jurisdiction,

6    you have a specific grant under PROMESA.

7         The PROMESA cover sheet even, which they've completed

8    it to bring to this Court, specifically says it can only be

9    removed for those grounds under PROMESA.  That's the only time

10   that you use that.

11        PROMESA specifically says that the proceedings are

12   governed by the Bankruptcy Rules.  They're not governed by the

13   Federal Rules unless there's a specific exception.

14        THE COURT:  But related to jurisdiction is

15   nonexclusive, and before PROMESA existed, if there was

16   diversity jurisdiction, this case could have been and indeed

17   was removed to this court.  It was remanded by the District

18   Court based on the forum selection clause, which brings us

19   back around to the waiver issue.

20        MR. RAPPAPORT:  Let me answer it two ways.  Number

21   one, if Your Honor agrees that there's no waiver and the forum

22   selection clause exists, they have the same bar that the First

23   Circuit affirmed in Vitol one.

24        THE COURT:  Yes.

25        MR. RAPPAPORT:  And so --

1          THE COURT:  But if I find that there is a waiver --

2          MR. RAPPAPORT:  If you find that there is a waiver, I

3    would just submit, Your Honor, it just doesn't seem right that

4    you could have diversity jurisdiction as a basis to get into a

5    Title III court.  That would mean that anybody who has

6    diversity jurisdiction could remove to this Court.

7          The only hook you have is you have to do it under

8    PROMESA.  And so then you're bound by 9027, you're bound by

9    3060, which governs remand.  Those specifically say you can

10   remand on equitable grounds.  There's nothing that suggests

11   other than -- I understand the intellectual quandary that Your

12   Honor has stated, but there's really nothing that suggests

13   that you have the ability to remand.

14         You could remand under PROMESA.  It was removed under

15   PROMESA.  You find that there's an equitable basis for remand.

16   But you can't because, separate and apart from that, this

17   Court believes that there would be diversity jurisdiction.

18         If they thought that there was diversity jurisdiction

19   and it was not related to PROMESA, then of course they could

20   try to remove again to a regular -- and I'm just saying it's a

21   nonTitle III District Court.

22         THE COURT:  Well, the Notice of Removal said United

23   States District Court, District of Puerto Rico, 1332, and

24   PROMESA.  And, you know, as I say, related to jurisdiction

25   is -- of proceedings is nonexclusive.

1            So why don't they get to ask me if for some reason I

2     decided it was unnecessary or not expedient to include it in

3     my already large caseload in this district, to put it into the

4     wheel and wheel it out to another judge of this district?

5            MR. RAPPAPORT:  But again, they also, in completing

6     the cover sheet to get it into this Court and getting it

7     assigned as an adversary proceeding, it's a different

8     procedure than normal.  You don't have your normal cover sheet

9     with the listing of the type of case and the type of removal

10    that you're doing.

11           Docket number 1-1, their cover sheet specifically

12    names the debtor.  It says that it's being removed.  The

13    nature of the suit is an adversary proceeding.  The Title III

14    case in which the adversary proceeding arises is within the

15    PREPA Title III.

16           There's nothing that indicates that it's diversity.

17    And I would submit, Your Honor --

18           THE COURT:  Except the Notice of Removal.

19           MR. RAPPAPORT:  But you can put in your Notice of

20    Removal what you want to put in.  That doesn't mean that the

21    Court has subject matter jurisdiction over it.

22           THE COURT:  Okay.  I hear you.  Thank you.

23           Good morning.

24           MR. KAPLAN:  Good morning, Your Honor.  Alex Kaplan

25    of Susman Godfrey on behalf of defendants, Vitol, Inc., and

1    Vitol, S.A., the defendants in the removed action.

2         Your Honor, I wanted to start with the point --

3    although it seems clear from the Court's questions that the

4    Court perceived this from the papers.  The case was removed on

5    two independent and each nonexclusive grounds, diversity

6    jurisdiction under 28 U.S.C. 1332, and jurisdiction under

7    Title III, removal pursuant to related to or core jurisdiction

8    under PROMESA.

9         We removed this action to this Court, the United

10   States District Court for the District of Puerto Rico.  In the

11   papers, the Board has said, well, this Court is a court of

12   limited jurisdiction.  Yes, of course.  But the jurisdiction

13   conferred on it by Congress includes 28 U.S.C. 1332.

14        So as long as there is subject matter jurisdiction

15   under 1332, and there is, there's actually no dispute that

16   there is, the only dispute is the forum selection clause

17   issue.  This Court can exercise diversity jurisdiction.  So I

18   actually don't think the Court even needs to reach the

19   equitable remand issues or the Title III issues.  I think the

20   Court can resolve this solely on the issue of diversity

21   jurisdiction.

22        And we agree, Your Honor, if the forum selection

23   clauses were not waived, then the case should be remanded

24   based on the prior ruling of this Court as affirmed by the

25   First Circuit.  We're not here to reargue that.  But there has

1  indeed been a waiver of the forum selection clauses, and I

2  think that's clear as a matter of law, Your Honor.

3       They filed a suit in this court, not the court

4  otherwise required by the forum selection clauses for breach

5  of the same contracts at issue in the underlying action.

6       THE COURT:  They say they didn't do so willingly or

7  with an alternative that would have permitted them to do what

8  they had to do as the representative of the Commonwealth,

9  because that lawsuit had to be here.  And they analag -- well,

10  they picked, they adopted my analogy to a compulsory

11  counterclaim.  And so inherent in that argument is that a

12  waiver can only be a waiver if it's knowing, intentional and

13  voluntary.

14       What's your response to that?

15       MR. KAPLAN:  Yes, Your Honor.  Certainly the filing

16  of the action was intentional.  It was voluntary.  I don't

17  think there's any question about that.  The argument today is,

18  well, we didn't have an alternative but to file in this Court.

19       I will note the reference to Section 106 of PROMESA

20  that was cited today, Your Honor, is not in the briefs.

21  That's a new argument they're making now for the first time.

22  And there's been no showing made that that's even accurate.

23       They filed this action in this Court for breach of

24  contract.  Even if it were true that it had to be filed in

25  this Court, it's not an exception to the contractual bargain

1    that was struck between these parties.

2          It may be, for the reasons set, that the Board has to

3    consider in fulfilling other duties to other parties that they

4    had to file in this Court.  That's not our issue, Your Honor.

5    And we don't -- that's not -- I don't have a view, a

6    perspective on that, from the constituencies that they have to

7    serve.

8          The point is we have a contract, and the contract is

9    either binding on both parties or it's not.  And they use that

10   forum selection clause, Your Honor, to deny us federal forum

11   for the claims that they choose to litigate in the local

12   courts.  But now they want to -- they have, in fact, on those

13   very same contracts, chosen this forum, their preferred forum

14   for these claims related to the same contract.  And it can't

15   be this heads, they win, tails, I lose position.  They're

16   either binding on the parties or they're not binding on the

17   parties.

18         And I think, based on the cases we've cited, Your

19   Honor, the waiver is clear as a matter of law.  If you file

20   suit in a forum that is unauthorized by the forum selection

21   clause, that is a waiver as a matter of law.  They have not

22   cited any contrary law that would say, well, if there's not

23   some other situation where we think we might have to file in

24   another court, that excuses it.  They've cited no cases to

25   that effect, Your Honor.

1        And their purported distinction in the brief, they

2   say, well, those cases that we rely on are cases where the

3   inconsistent action is involved in the same case.  So

4   plaintiff files suit and then tries to -- in an unauthorized

5   forum, and then tries to assert the forum selection clause to

6   move to dismiss a counterclaim, for example.  But when the

7   Court looks at those cases, no aspect of the rationale of

8   those cases turns on whether or not it was in the same case.

9   The rationale is common law of contracts, which is if you're

10  in a material breach of an agreement, you can't enforce the

11  agreement against the other party.

12       It's basic principles of waiver and contract law that

13  apply squarely here.  They asserted these against us.  There

14  is no dispute, I will note for the Court, that their claims

15  are within the scope of the forum selection clause and that

16  the forum selection clause is mandatory.  They've never

17  disputed that, Your Honor.

18       Their only argument is this new argument today that

19  Section 106 required them to be filed in this Court, which

20  it's not even clear that it's right.  Although I think it's

21  waived, it's made for the first time here today, but it's not

22  even clear that it's right.

23       They are pursuing breach of contract claims, property

24  of the estate until we remove it, this against my client in

25  the Commonwealth Courts.  Why couldn't these breach of

1    contract claims be filed in the same court?

2         Indeed, the Court required before their breach by the

3    forum selection clause.  It's not a meritorious argument, Your

4    Honor.  It's sort of a last ditch effort to avoid what was

5    otherwise, I think, a very clear waiver.  And I think if the

6    Court finds that there is a waiver of the forum selection

7    clause, then I think there is unquestionably, diversity

8    jurisdiction.

9         The only other argument that was made, and it was

10   made for the first time in their Reply Brief, is timeliness

11   with respect to diversity, Your Honor.  And that argument has

12   been waived.  They reference the one-year bar in 1446 for

13   removal based on diversity, but they raised it for the first

14   time in their Reply Brief, Your Honor.  And as a matter of

15   law, that is waived under 28 U.S.C. 1447(c), which provides

16   that a motion to remand a case on the basis of any defect,

17   other than lack of subject matter jurisdiction, must be made

18   within 30 days after the filing of the Notice under 1446(a).

19        And the law is clear, Your Honor, that the one-year

20   limit in 1446 is not jurisdictional.  It is procedural.  And

21   it is, therefore, waived if it is not asserted, pursuant to

22   1447(c), within 30 days of the Notice of Removal.

23        We cited cases directly on that point, Your Honor.

24   It is the *Milan* case from the Ninth Circuit and the *Arrowhead*

25   from the Sixth Circuit at note three on page six of our

1    Surreply Brief.

2        And although the First Circuit doesn't appear to have

3    addressed that specific question, Your Honor, the First

4    Circuit has addressed the analogous question, which is that

5    untimeliness under 1446 is procedural, not jurisdictional,

6    because the First Circuit has held that the 30-day limit to

7    remove in 1446(c)(1) is waived if not raised within 30 days.

8    And that's the *Universal Truck and Equipment* case that we cite

9    at page six of our Surreply Brief, Your Honor.

10       I'll just point out, on this waiver point about

11   timeliness, I think it's quite telling we expressly argued in

12   our opposition to the Motion to Remand that the FOMB did not

13   raise a timeliness argument under 1446 in its Motion to

14   Remand.  They did not claim otherwise in their Reply Brief.

15       We went on and argued the consequence of that

16   failure.  We argued that by not raising timeliness under 1446

17   in the Motion to Remand, that the FOMB had waived any

18   timeli -- and I'm quoting from our brief, they had waived any

19   timeliness challenge under 1446 to removal based upon

20   diversity by not raising it in its remand -- in its motion to

21   remand.  That's ECF 10, at 10.  The FOMB, likewise, did not

22   dispute that in any respect in its Reply Brief, and indeed

23   did not address the waiver of the one-year limit in any

24   respect.

25       So the result, Your Honor, is that under the plain

1    language of 1447(c), the one-year limit under 1446 was waived

2    as a matter of law, because it is a purported defect in

3    removal, other than a defect in subject matter jurisdiction.

4    And it was not raised in the Motion to Remand that was filed

5    within 30 days as required by 1447.  I think it's a full stop

6    period there, Your Honor.

7         If there's a waiver of the forum selection clause,

8    the only other possible argument is timeliness.  That argument

9    was waived.  This Court has subject matter jurisdiction, and

10   the case is properly removed to this Court.

11        Now, with respect to the civil cover sheet and Your

12   Honor's comments, we were going to make the same suggestion,

13   which is we were in a touch of a bind as we perceived it, Your

14   Honor, because if we remove this case to the U.S. District

15   Court for Puerto Rico and didn't do something to have it be a

16   related case to Your Honor, I fear we'd be hearing the

17   argument that we were trying to evade the Court that

18   previously remanded us.

19        So I have a feeling we'd wind up here anyway.  But if

20   the Court's view is, as we think, proper, there is diversity

21   jurisdiction.  But the Court obviously has a lot on its plate.

22   We certainly have no objection whatsoever to this case being

23   -- have the Clerk assign it through its normal, random

24   procedures to a judge in the U.S. District Court for the

25   District of Puerto Rico.

1          There is jurisdiction in this Court, but we did file

2     the civil cover sheet for PROMESA because the other

3     alternative, independent nonexclusive grounds for our removal,

4     is jurisdiction under PROMESA.  So I don't think the civil

5     cover sheet precludes diversity jurisdiction.  To the

6     contrary.

7          I just note the last sentence at the bottom of the

8     civil cover sheet says, although the Court is using the docket

9     of the Bankruptcy Court, that the case is under the

10    jurisdiction of the United States District Court for the

11    District of Puerto Rico.  An Article III court that has the

12    jurisdiction conferred on it by Congress, including 28 U.S.C.

13    1332.

14         So if the Court concludes there's a waiver and the

15    Court concludes any timeliness argument is waived, which it

16    has been under 1447, the Court can -- the Court should retain

17    jurisdiction.  And the Court can adjudicate the case, or the

18    Court can decide as a matter of administrative management,

19    case management and the like, that the Clerk's Office can have

20    it assigned to a different judge.  We certainly have no

21    objection to that, Your Honor.

22         I can go a touch deeper.  It's a technical issue on

23    the timeliness waiver point.  I'll just say --

24         THE COURT:  I don't need you to.  I understand your

25    argument.

1          MR. KAPLAN:  Okay.  Thank you, Your Honor.

2          To the extent the Court finds it's not waived, the

3    one-year limit in 1446, as we've argued in our brief, Your

4    Honor, there is an exception to the one-year limit.  It's --

5    Congress passed an exception in 2011 in the amendments to the

6    statute that says, a case can be removed outside the one-year

7    limit if the Court finds, quote, that the plaintiff has acted

8    in bad faith in order to prevent a defendant from removing the

9    action.

10          And we've cited and we've briefed this, Your Honor.

11          THE COURT:  And I have read the argument.

12          MR. KAPLAN:  Okay.  So even if the Court finds that

13   the timeliness argument has not been waived, we think we'd fit

14   comfortably within the bad faith standard, which doesn't

15   really turn on scienter, if the Court looks at the cases here.

16   It just turns on whether or not the plaintiff has engaged in

17   intentional conduct defined as action or inaction to defeat

18   removal.

19          And I think on this record, it is clear that PREPA

20   and FOMB have intentionally invoked the forum selection clause

21   to deny us a federal forum so that they can litigate their

22   claims in their preferred forum.  And now, because this is

23   their preferred forum for claims on the same contracts, they

24   now have waived those clauses.

25          And that is intentional conduct that has defeated

1    removal.  It's very much analogous to the cases we've cited

2    involving inconsistent conduct with respect to the amount of

3    controversy, for example, or the joinder or dismissal of a

4    nondiverse defendant.

5           I just want to touch on an issue that was raised

6    today and in the briefs.  And I know the Court said it's

7    familiar with the procedural history, but just two points.

8    They say we removed the case one day before the deadline for

9    summary judgment motions to be filed in the local courts, and

10   that is true.  But they don't explain why that was.

11          So the waiver of the forum selection clauses occurred

12   on November 1st of last year when they filed the action in

13   this Court in breach of the contracts, in disregard of the

14   forum selection clauses.  They chose that date.  It wasn't a

15   date of our choosing.  We didn't ask to be sued in an

16   adversary proceeding, Your Honor.

17          We removed the case 13 days thereafter in, you know,

18   far shorter than the normal 30 days for removal.  We did it

19   because we didn't want to be accused of having the summary

20   judgment motions filed and, therefore, I feared we'd hear the

21   argument we had invoked the judicial process in the local

22   courts, and now couldn't invoke federal jurisdiction.

23          So we removed the case as quickly as we could once

24   the grounds for removal were available, which is their waiver

25   of the forum selection clauses.  Had they not waived the

1    clauses, we wouldn't be here, Your Honor.  That was the basis

2    for our removal.

3           And counsel also said that these cases have been

4    proceeding in the Commonwealth Court for ten years.

5    Respectfully, that is not remotely accurate.  That case has a

6    tortured procedural history, to be sure, but the first case

7    was filed in 2009.  It was immediately removed.  The second

8    case was filed in 2012.  It was immediately removed.

9           They were litigated in the United States District

10   Court for the District of Puerto Rico through 2015, all the

11   way -- all pleading motions, all discovery, all summary

12   judgment.  The case was then remanded after a -- there was a

13   change in judicial assignment.  The case was remanded.  First

14   Circuit affirmed.  We went back down to the Commonwealth

15   Court.

16          The only thing that has happened in the Commonwealth

17   Court, Your Honor, is an agreed motion for consolidation, the

18   same motion for consolidation that was entered in this Court,

19   and a deadline was set for filing of summary judgment motions.

20   And those are, of course, the same summary judgment motions

21   that were filed and fully briefed in this Court years ago.

22          So the notion that there is some substantial reliance

23   interest in the Commonwealth Court is just not accurate.  And

24   in any event, they have waived that forum selection clause,

25   and this case is now properly within this Court's diversity

1  jurisdiction.

2         I would just note, Your Honor, that independent of

3  our diversity arguments, we have also re-moved again on the

4  basis of the related to jurisdiction and the core jurisdiction

5  of this Court.

6         They say in their brief that the -- and just to --

7  they say that the filing of the avoidance action does not,

8  quote, Alter the Court's analysis, weighing of the equities,

9  or conclusion that equity compels remand under the equitable

10 remand analysis.

11        It is, of course, this Court's analysis under the

12 Santa Clara factors.  I'm reticent to tell the Court how its

13 analysis would or wouldn't be different at this point, but we

14 just don't see how that could possibly be correct that the

15 analysis doesn't change.

16        The Court previously held that prejudice to PREPA was

17 a significant factor.  They were in remand, given they

18 bargained for the forum selection clauses.  That's a material

19 change in circumstance that can no longer be a basis in the

20 equitable remand analysis.

21        We go through the other factors in our brief, Your

22 Honor.  I do think the analysis is different at this stage.

23 And I think, given that the FOMB has expressly said that this

24 is a case that they want to litigate only if they lose in the

25 local court, we now have the situation where the judicial

1    economy factor cuts the other way.  So you don't have

2    duplicative, inconsistent litigation.  And I think that

3    analysis is different.

4         There's also a timeliness issue there, Your Honor.

5    And we've briefed that.  We think under the pioneer fact -- I

6    think under equitable estoppel, they can't assert timeliness,

7    given that they are the reason that we're here now, as they've

8    enforced the clause, and then they waived it.

9         Even so, Your Honor, the Court has the discretion, we

10   think, under the *Pioneer* factors.  We've clearly satisfied the

11   standard for excusable neglect.  The Supreme Court has made

12   clear that doesn't even require carelessness.  It can just be

13   something beyond the parties' control, which their assertion

14   and later waiver of the forum selection causes would meet,

15   Your Honor.

16        So I think the Court doesn't have to reach the

17   bankruptcy issues.  It can handle this on diversity, and can

18   either retain jurisdiction or have it assigned within this

19   district.  But if the Court does reach those issues, we think

20   the equitable remand factors do come out a different way.  And

21   the only timeliness argument they've timely made was as to

22   bankruptcy jurisdiction.  And we think we've satisfied that in

23   our papers, Your Honor.

24        We'd ask the Court to deny the motion.  Thank you,

25   Your Honor.

1        THE COURT:  Thank you.

2        So now, Counsel, on my clock, I have a question that

3  I will ask first Mr. Rappaport to respond to, and then I'll

4  let you respond to Mr. Rappaport's response.

5        MR. KAPLAN:  Yes, Your Honor.

6        THE COURT:  Mr. Rappaport, you ran through your clock

7  plus before, so I want to take you up on this argument that

8  section 106 required the assertion of this particular breach

9  of contract claim in this Court.  I don't see that in 106(a).

10  106(a) says that any action arising out of this act shall be

11  brought in the United States District Court, but this is not a

12  cause of action that arises out of this act.  It's a breach of

13  contract cause of action.

14        So why are you saying that it was required to be

15  brought here by 106(a)?

16        MR. RAPPAPORT:  Your Honor, if you would go back and

17  you look at the Remand Motion that we filed, and then you look

18  at the Reply, we go through in both instances and we describe

19  what the original claims were that were filed by the Special

20  Claims Committee and then what the amended claims were.

21        This originally was filed, and I don't have the exact

22  date, but I think it was about May of 2019, when the adversary

23  proceeding was filed.  And one of the lead filings -- one of

24  the lead claims was an allegation of a fraudulent transfer.

25        There were many other claims there, but they were

1   claims that, my understanding is, needed to be brought under

2   PROMESA before the Title III Court.  It was then amended --

3           THE COURT:  Yes.

4           MR. RAPPAPORT:  -- on November 1st.  And the

5   amendment did involve the amendment to state the breach of

6   contract claims, but it retained other claims.

7           There's an avoidance action there under -- with a

8   544.  I'm the litigator.  I'm not the bankruptcy lawyer.  But

9   I believe it was under 544.  And --

10          THE COURT:  But why didn't --

11          MR. RAPPAPORT:   -- those claims had to be brought,

12  our understanding is, through PROMESA.  They had to be brought

13  in the Title III Court.  And again, if you think about it,

14  they necessarily are arising under and related to this Title

15  III case for PREPA.  This PREPA case.

16          THE COURT:  The fraudulent transfer claims?

17          MR. RAPPAPORT:  Correct.  And also the amended

18  claims, also.  The breach of contract claims are one of the

19  claims that are asserted.

20          THE COURT:  And so my question for you is what is

21  your exclusive Title III forum argument for the breach of

22  contract claim that was added in the amendment to the

23  Complaint?

24          MR. RAPPAPORT:  It's not a stand-alone claim, Your

25  Honor, and we can't split the causes of action.  Again, going

1    back, this is derived from the Marrero class action, and it's

2    against the defendants in that action.

3         And the nature of the action originally alleged a

4    laundry list of claims against the fuel line defendants and

5    against the supplier -- or, I'm sorry, the lab testing

6    defendants.  They originally included fraudulent transfer

7    claims and other claims.  And then they also included, when it

8    was amended, the breach of contract claim.  But it also kept

9    the avoidance claims and other claims against Vitol and

10   against others.  And then there's like, you know, recovery of

11   a ten-year transfer claim, five-year transfer claim, and so on

12   and so forth.

13        And so once this was brought into this Court with the

14   initial filing, again, I believe it was in May of 2019, with

15   the fraudulent transfers, it's in front of Your Honor.  It's

16   part of this case.

17        And if they amend the Complaint, you can't make the

18   allegations based on that transaction and against Vitol, limit

19   them to specific ones, and then say, and now I'm going to go

20   file another claim which has the same factual basis and allege

21   it in a Commonwealth court.  You'd be splitting causes of

22   action.  I don't believe you can do that procedurally.

23        So it was originally proper under PROMESA to file it

24   in a Title III court.  It remained proper to amend it in the

25   Title III court under PROMESA, and that's why it was there.

1          THE COURT:  Thank you.

2          MR. RAPPAPORT:  Thank you.

3          Can I just -- I think Mr. Kaplan may have misspoke on

4   one issue when he said that we didn't raise this issue of

5   timeliness of the diversity removal at all in our papers in

6   either the Motion to Remand or the Reply.  We certainly did

7   raise it in reply.  We didn't raise it in the initial motion

8   because our position is there is no diversity jurisdiction, so

9   we wouldn't talk about diversity and timeliness.  Once they

10  made the assertion in the opposition, we did address it.

11         And it's also -- I believe it's on page six of the

12  reply papers, we specifically talked about why this bad faith

13  exception would not apply.  And Your Honor may recall, we said

14  the time ran even before PROMESA was enacted and the Oversight

15  Board was created.

16         So how could they have possibly acted in bad faith to

17  prevent you filing it?

18         THE COURT:  I do recall that argument.

19         MR. RAPPAPORT:  Thank you, Your Honor.

20         THE COURT:  Mr. Kaplan.

21         MR. KAPLAN:  Yes, Your Honor.  To the Court's

22  question about 106, 106 provides claims under the Act.  It

23  doesn't cover breach of contract claims.  I think that ends

24  the inquiry.

25         Those claims are not required to be brought in this

1 | Court.  If they thought that was a --

2 |         THE COURT:  What do you say to his claim splitting

3 | argument?

4 |         MR. KAPLAN:  I think it's not a serious argument,

5 | Your Honor.  If it were, it would be in their brief, one.

6 | Two, they've cited no law that suggests that they can't bring

7 | a breach of contract action in the local courts while they're

8 | bringing an avoidance action in this court.  They've cited no

9 | law that supports that argument, Your Honor.

10 |         And I do want to point out, because I think it's -- I

11 | don't want it to be lost here, but the argument counsel just

12 | made was that the breach of contract claims had to be filed in

13 | this Court.  They are necessarily related, is what he said, to

14 | the Title III case.  Yet a year ago, Your Honor, they asked

15 | this Court to remand the case equitably on the basis that it

16 | would have no effect on the administration of the estate.

17 |         They are taking inconsistent positions on issue after

18 | issue, solely for procedural advantage, to have their

19 | preferred forum in each instance, Your Honor.  And again, the

20 | forum selection clauses are either binding or they're not.

21 | This case either has a necessary impact on the administration

22 | of the estate or it doesn't, Your Honor.  And they can't take

23 | the position A when it suits them, and then flip a year later

24 | to position B.

25 |         And just on the last point, I didn't say they didn't

1  address the one year -- what I said, Your Honor, was that in

2  their Motion to Remand, they don't address the one-year limit

3  under 1446, which is true.  And then in their -- and we said

4  that that's a waiver in our opposition.

5       In their Reply Brief, they don't address the waiver

6  of the 1446 argument.  They address it for the first time in

7  their Reply Brief, Your Honor.

8       Thank you very much.

9       THE COURT:  Thank you.

10      Thank you, Counsel.

11      And I will take -- oh, I'm sorry.  Yes, sir.  In New

12  York.

13      MR. AXELROD:  -- LLP for the Special Claims

14  Committee.  I wanted to take one moment, if you'll permit me

15  to be heard.

16      THE COURT:  Yes.

17      MR. AXELROD:  I just wanted to respond on the record

18  to say --

19      THE COURT:  I'm sorry.  Can you hold on just one

20  second?  I'm sorry.  We were -- could you start again with

21  your name so that the transcript can be accurate?  Because we

22  didn't have you on the speaker list.

23      MR. AXELROD:  Thank you, Your Honor.  Tristan

24  Axelrod, Brown Rudnick, for the Special Claims Committee.

25      I wanted to appear on record generally to support the

1    assertions made by Mr. Rappaport for the Oversight Board.

2    Standing now, I think there's been some confusion in

3    Mr. Kaplan's remarks regarding what was stated by the

4    Oversight Board, by its bankruptcy counsel in a different

5    context, versus what was alleged by the Special Claims

6    Committee.

7         And as to the nature of the claims alleged in the

8    fuel oil complaint, the basis for the fraudulent transfer

9    claims are, among other things, that the -- that PREPA did

10   not receive reasonably equivalent value in exchange for fuel

11   transfers because low grade oil is sold at high grade prices

12   and so on.  The basis for a breach of contract action is

13   exactly the same, that they were obligated to provide high

14   grade fuel oil at high grade -- at a certain price.  They did

15   not provide it.  They can't be extricated from one another.

16        Thank you.  If Your Honor has no further questions,

17   I'm finished.

18        THE COURT:  Thank you, Mr. Axelrod.

19        And so I will maintain this under advisement and

20   issue my decision as soon as possible.  Thank you.

21        MR. KAPLAN:  Thank you, Your Honor.

22        THE COURT:  Thank you all, Counsel.

23        So I think there is just one remaining Agenda Item,

24   which is the contested claim objections.

25        Hello again, Ms. Stafford.

1          MS. STAFFORD:  Good morning again.  These last

2     remaining five items relate to an issue that I began to

3     address yesterday, which is the issue of the large number of

4     late filed responses that we have received to the objections

5     that were originally set for the December Omnibus hearing and

6     the January Omnibus hearing.

7          Some of those late filed responses have been

8     adjourned either by the Court or by the debtors, and others

9     have not.  And we think, in light of, as I mentioned

10    yesterday, some of the difficulties that claimants may have

11    experienced during the holiday season and the January

12    earthquake swarm, the most equitable way to deal with all of

13    these late filed responses is to provide a brief, one-time

14    extension of the period to respond to the December and January

15    Omnibus objections.

16         And we're preparing a filing that we'll submit to the

17    Court hopefully by the end of the week with respect to this.

18         THE COURT:  Thank you.

19         MS. STAFFORD:  And the goal of that will be, Your

20    Honor, to set a further date certain to respond, and deal with

21    those remaining responses at the April 22nd Omnibus hearing.

22    And in light of that, we think it's appropriate to adjourn

23    these remaining uncontested claim objections today.

24         THE COURT:  Very well.  So you will be providing a

25    narrative explanation in your application and a proposed order

 1  that would include the extended response deadline and the

 2  adjournment to April 22nd of the objections, to which there

 3  have been late filed responses.  And these matters that had

 4  been queued up as contested claim objections for attention

 5  today in Agenda Items VII.1 through 5?

 6       MS. STAFFORD:  That's correct, Your Honor.  And a

 7  notice that we'll send to all of the individuals who were

 8  subject to these claim objections.

 9       THE COURT:  Very well.  Thank you.  I will look

10  forward to that filing, and we won't address these contested

11  claim objections further today.

12       MS. STAFFORD:  Thank you very much, Your Honor.

13       THE COURT:  Thank you.

14       That brings me, as far as I know, to the end of the

15  Agenda.  I am not seeing anyone trying to contradict me on

16  that.  So once again, everyone, thank you so much for your

17  work and for your advocacy and for your engaging with me on my

18  questions as we work through these matters.

19       The next scheduled hearing date is the preliminary

20  hearing in connection with the revenue bond lift stay motions,

21  which is scheduled for April 2nd, 2020, in New York, with

22  video connection to San Juan.

23       And I once again thank very sincerely the court staff

24  here in Puerto Rico, in New York, and in Boston for their

25  superb ongoing work in supporting these matters, and in

1    particular, in conducting these hearings.

2           I wish everyone safe travels and good health, and

3    look forward to seeing you all the next time we encounter each

4    other.

5           We are adjourned.

6           (At 11:14 AM, proceedings concluded.)

7                          *     *     *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   U.S. DISTRICT COURT    )

 2   DISTRICT OF PUERTO RICO)

 3

 4       I certify that this transcript consisting of 76 pages is

 5   a true and accurate transcription to the best of my ability of

 6   the proceedings in this case before the Honorable United

 7   States District Court Judge Laura Taylor Swain, and the

 8   Honorable United States Magistrate Judge Judith Gail Dein on

 9   March 5, 2020.

10

11

12

13   S/ Amy Walker

14   Amy Walker, CSR 3799

15   Official Court Reporter

16

17

18

19

20

21

22

23

24

25
```

< Dates >
April 22nd 10:3,
  10:16, 73:21, 74:2
April 2nd, 2020
  74:21
December 18th 29:10,
  37:22
December 26 28:22
December 4th 28:17
March 5, 2020 1:16,
  7:2, 76:9
March 5th 10:18
November 1st 62:12,
  67:4
(2). 36:2


< 1 >
1-1 52:11
10 58:21
10. 58:21
106 15:2, 54:19,
  56:19, 66:8, 69:22
106(a 47:17, 66:9,
  66:10, 66:15
108(a 33:6, 38:23
108(a)(2 21:10,
  21:20, 31:17,
  32:6, 32:7, 32:20,
  33:1, 33:11,
  33:16, 33:22,
  37:6, 38:16
116-2019 29:6
118-2019 28:19
11:14 75:6
12 12:2
124th 10:24
13 10:24, 62:17
1332 49:14, 51:23,
  53:6, 53:15
1332. 53:13, 60:13
134th 10:25
135th 11:5
1446 49:1, 49:14,
  49:15, 57:12,
  57:20, 58:5,
  58:13, 58:16,
  58:19, 59:1, 61:3,
  71:3, 71:6
1446(a 57:18

1446(c)(1 58:7
1447 60:16
1447(c 57:15, 57:22,
  59:1
1447. 59:5
148th 11:5
149th 11:9
15 41:8, 41:10
15. 41:8
150th 11:9
155th 11:9
156-2019 29:5, 29:7,
  29:13
157th 11:9
17-BK-3283(LTS 1:6,
  4:6
17-BK-3284(LTS 1:23
17-BK-3566(LTS 2:4
17-BK-3567(LTS 2:23
17-BK-4780(LTS 3:4,
  4:28
19-AP-00393(LTS 4:4
19-AP-00453(LTS 4:26
19-BK-5523(LTS 3:21


< 2 >
2009 41:25
2009. 63:7
201 27:22
2011 61:5
2012 42:1
2012. 63:8
2015 63:10
2019 15:18, 47:25,
  66:22, 68:14
2019-57 28:8
202 27:21
203 27:23
204(a 15:4, 19:21,
  20:25, 21:4,
  25:21, 26:3,
  27:21, 28:9,
  28:15, 31:15,
  31:19, 31:22,
  31:23, 38:8,
  38:16, 38:19
204(a)(4 38:4
204(a)(5 32:22,
  32:23, 33:1, 33:4,

34:4, 35:12,
  35:20, 35:22,
  36:6, 36:12
204(c 15:17, 16:4,
  16:8, 16:9, 17:14,
  30:14, 30:16,
  37:6, 38:16
204(c)(1 36:2
204(c)(2 16:15
204(e 25:11
207 17:24, 18:4,
  18:18, 18:19,
  18:22, 18:25,
  19:15, 31:17,
  33:23, 34:17,
  35:2, 35:10, 35:15
207. 18:12, 34:18,
  35:21, 37:7, 38:16
21 23:8
27 11:4
28 11:8, 53:6,
  53:13, 57:15,
  60:12
29. 11:19, 36:6


< 3 >
3 12:2
30 11:24, 41:6,
  57:18, 57:22,
  58:7, 59:5, 62:18
30-day 58:6
306 49:5
3060 51:9
32 11:8
36 23:9
3799 76:14
3: 1:6, 1:23, 2:4,
  2:23, 3:4, 3:21,
  4:4, 4:6, 4:26,
  4:28


< 5 >
5 74:5
544. 67:8, 67:9
57 23:8


< 7 >

76 76:4

< 9 >
9027 51:8
9:36 7:3

< A >
A. 5:6, 5:7, 5:43
AAFAF 12:8, 24:14,
  40:23, 41:1
ability 14:24, 28:2,
  35:17, 37:18,
  39:5, 48:23,
  48:25, 49:18,
  51:13, 76:5
able 9:4, 16:19,
  21:19, 21:22,
  25:3, 35:9, 36:18
above 28:10
absence 23:19
Absolutely 40:17
accept 8:6, 8:14
access 39:5
accommodation 8:23
According 7:7, 35:11
Accordingly 28:25
accounted 16:1,
  17:10, 17:11,
  38:1, 38:2
accurate 13:3,
  54:22, 63:5,
  63:23, 71:21, 76:5
accused 62:19
achieve 22:18, 22:19
achieved 22:11,
  31:14
Acquisitions 5:38
Act 21:15, 25:21,
  26:2, 29:5, 29:7,
  29:13, 33:25,
  34:9, 34:11, 36:6,
  36:12, 66:10,
  66:12, 69:22
acted 21:21, 32:17,
  61:7, 69:16
actions 12:19,
  12:21, 42:3
actual 19:19

Actually 16:11,
  26:1, 37:13,
  40:15, 44:1,
  53:15, 53:18
added 67:22
addition 23:10
additional 8:17,
  24:5, 40:23, 42:4,
  43:20
address 7:14, 8:2,
  14:14, 14:15,
  14:18, 14:20,
  16:12, 19:7,
  20:10, 27:8,
  27:19, 33:10,
  41:21, 58:23,
  69:10, 71:1, 71:2,
  71:5, 71:6, 73:3,
  74:10
addressed 14:23,
  16:13, 20:17,
  27:6, 32:22, 58:3,
  58:4
addresses 17:25
addressing 7:15
adhered 13:7
adjourn 10:14, 73:22
adjourned 10:3,
  11:14, 73:8, 75:5
adjournment 10:4,
  74:2
adjudicate 60:17
Administered 1:11,
  1:28, 2:9, 2:28,
  3:9, 3:26
administration 23:2,
  25:11, 28:6,
  70:16, 70:21
administrative 60:18
admissions 37:23
adopt 31:17, 33:3,
  35:21
adopted 54:10
advance 17:14, 29:7
advantage 70:18
adversary 44:4,
  52:7, 52:13,
  52:14, 62:16,
  66:22
advisement 40:2,

72:19
Advisory 5:19
advocacy 74:17
affirmative 46:8
affirmed 42:15,
  50:23, 53:24,
  63:14
Agency 5:18
Agenda 7:7, 9:22,
  10:2, 10:24, 11:4,
  11:8, 11:18,
  72:23, 74:5, 74:15
ago 23:11, 48:9,
  63:21, 70:14
agree 53:22
agreed 63:17
agreement 34:23,
  56:10, 56:11
agrees 12:11, 47:22,
  48:3, 50:21
ahead 44:21, 46:5
aims 31:14
al 1:16, 4:19, 4:33,
  5:4
Alex 52:24
Alexander 5:15, 5:46
allegation 41:24,
  42:25, 66:24
allegations 68:18
allege 68:20
alleged 42:5, 68:3,
  72:5, 72:7
alleges 43:13
allocated 11:24,
  41:6
allocations 11:19
allow 12:20, 33:9,
  42:14, 45:7, 46:3
allowed 13:12
allows 27:23, 33:1,
  45:18, 49:15
alluded 17:3
almost 25:12
alone 13:9
already 8:9, 17:17,
  35:5, 36:18,
  36:19, 52:3
Alter 64:8
alternative 8:7,
  42:5, 54:7, 54:18,

60:3
Although 53:3,
    56:20, 58:2, 60:8
amenable 39:20
amend 68:17, 68:24
amended 11:12,
    66:20, 67:2,
    67:17, 68:8
amendment 67:5,
    67:22
amendments 61:5
among 72:9
amount 62:2
Amy 76:13, 76:14
analag 54:9
analogous 58:4, 62:1
analogy 54:10
analysis 13:13,
    16:4, 47:23, 48:5,
    64:8, 64:10,
    64:11, 64:13,
    64:15, 64:20,
    64:22, 65:3
analyze 16:23, 37:19
Anasco 7:25
and/or 14:21, 32:10
answer 20:8, 36:3,
    41:1, 50:20
antidemocratic
    25:16, 30:22,
    31:6, 31:10
anybody 51:5
anyway 59:19
apart 51:16
appear 58:2, 71:25
APPEARANCES 5:1
Appearing 5:25,
    5:29, 5:36, 5:40
application 33:12,
    73:25
applied 26:19
applies 16:9, 19:2,
    29:19, 31:16,
    34:20, 38:21
apply 18:17, 18:18,
    18:22, 19:15,
    28:1, 35:15,
    35:16, 41:17,
    56:13, 69:13
appointed 30:25,

43:19, 49:13
Appointment 49:17
appreciate 8:16,
    23:24
approaching 43:22
appropriate 9:3,
    16:24, 73:22
appropriation 29:23
approval 12:18,
    13:1, 13:11,
    17:14, 19:11
approve 16:23, 35:24
approved 29:24
approximately 7:24
April 11:14
arbitrary 21:19,
    21:23, 32:14,
    38:12
argue 16:9, 16:10,
    18:17, 46:24
argued 20:2, 33:8,
    58:11, 58:15,
    58:16, 61:3
arguments 16:12,
    20:9, 20:10, 24:7,
    36:6, 38:19, 64:3
arises 49:8, 52:14,
    66:12
arising 66:10, 67:14
around 50:19
arrangement 27:18,
    32:2
arrangements 8:17,
    9:1
Arrowhead 57:24
Article 49:18, 60:11
aside 32:3
asks 34:3
aspect 56:7
assert 15:12, 46:20,
    47:15, 56:5, 65:6
asserted 14:4,
    44:17, 45:16,
    45:25, 56:13,
    57:21, 67:19
asserting 45:15,
    46:7, 46:14, 47:12
assertion 20:22,
    31:21, 65:13,
    66:8, 69:10

assertions 72:1
asserts 20:9, 44:11
assess 37:19
assessment 38:17
assign 59:23
assigned 52:7,
    60:20, 65:18
assignment 63:13
assuming 41:7
assumption 15:19,
    15:22
attention 74:4
Authority 2:33,
    3:14, 3:31, 5:20,
    16:23
autocracy 31:9
autonomy 33:14,
    33:15
Autoridad 4:26
available 25:25,
    27:19, 48:11,
    62:24
average 25:12, 28:9
avoid 57:4
avoidance 64:7,
    67:7, 68:9, 70:8
await 9:9, 11:2,
    11:12
aware 12:19, 14:1,
    37:9
away 45:5
awkward 27:17, 32:2
Axelrod 5:28, 71:13,
    71:17, 71:23,
    71:24, 72:18


< B >
B. 70:24
back 9:12, 27:20,
    36:10, 40:23,
    46:16, 47:25,
    50:19, 63:14,
    66:16, 68:1
bad 27:4, 61:8,
    61:14, 69:12,
    69:16
Baldini 5:39
ball 30:1
Bankruptcy 7:22,

8:8, 8:13, 49:22, 50:5, 50:12, 60:9, 65:17, 65:22, 67:8, 72:4
bar 7:8, 7:18, 8:3, 32:8, 43:22, 44:21, 50:22, 57:12
bargain 54:25
bargained 64:18
barred 46:4
bars 32:20
base 9:3
based 21:23, 50:18, 53:24, 55:18, 57:13, 58:19, 68:18
bases 49:6
basic 26:21, 41:24, 56:12
basis 20:18, 30:9, 43:12, 45:24, 48:18, 48:24, 48:25, 51:4, 51:15, 57:16, 63:1, 64:4, 64:19, 68:20, 70:15, 72:8, 72:12
beast 26:18
become 26:22
becomes 25:20
began 73:2
begin 24:15, 28:3
behalf 9:25, 24:13, 40:9, 43:7, 52:25
belabor 28:7, 36:9
believe 7:17, 17:19, 20:3, 21:20, 41:19, 47:9, 48:7, 67:9, 68:14, 68:22, 69:11
believes 51:17
benefit 40:25
Berezin 5:35
best 76:5
better 23:1
beyond 65:13
Bienenstock 5:4
Bill 24:12
bind 59:13

binding 55:9, 55:16, 70:20
Black 34:22
blows 15:21
boils 34:11
bond 74:20
Bongartz 5:15
books 19:1, 37:14, 37:25
Boston 74:24
bottom 60:7
bound 51:8
box 33:19
branch 16:24
breach 42:5, 42:22, 43:1, 43:3, 54:4, 54:23, 56:10, 56:23, 56:25, 57:2, 62:13, 66:8, 66:12, 67:5, 67:18, 67:21, 68:8, 69:23, 70:7, 70:12, 72:12
bridge 36:18
Brief 23:22, 25:19, 31:22, 31:23, 56:1, 57:10, 57:14, 58:1, 58:9, 58:14, 58:18, 58:22, 61:3, 64:6, 64:21, 70:5, 71:5, 71:7, 73:13
briefed 61:10, 63:21, 65:5
Briefly 33:23, 37:1, 38:11
briefs 20:20, 47:8, 54:20, 62:6
bring 24:19, 27:20, 27:24, 44:20, 47:20, 50:8, 70:6
bringing 42:22, 43:2, 43:19, 43:21, 46:8, 70:8
brings 14:7, 50:18, 74:14
broadly 34:3
brought 43:7, 43:8, 43:21, 43:24, 44:2, 44:3, 45:6,

46:1, 66:11, 66:15, 67:1, 67:11, 67:12, 68:13, 69:25
Brown 71:24
budget 17:10, 17:11, 27:24
budgetary 27:21
budgeted 35:5
budgets 12:22, 13:10, 16:2, 16:20, 36:17, 38:2
Buildings 3:31
business 15:3

< C >
Caguas 8:1
capable 17:22, 23:25
capital 39:5
capricious 21:20, 21:23, 32:14, 38:12
care 15:20, 18:6, 18:15, 26:10
carefully 12:22
carelessness 65:12
carries 7:17
carry 9:17
carrying 25:25, 27:8
caseload 52:3
cases 41:24, 44:7, 44:8, 47:1, 47:7, 47:9, 49:13, 55:18, 55:24, 56:2, 56:7, 56:8, 57:23, 61:15, 62:1, 63:3
CAT 5:49
category 11:13
cause 23:19, 66:12, 66:13
causes 65:14, 67:25, 68:21
causing 37:15
central 26:12
certain 12:17, 27:23, 29:8, 45:12, 72:14, 73:20

Certainly 15:7, 17:9, 17:23, 23:1, 23:3, 23:5, 23:15, 23:24, 27:13, 38:13, 54:15, 59:22, 60:20, 69:6
certification 20:15, 21:1, 24:2, 28:15, 28:16, 28:19, 28:24, 29:12, 29:17, 37:17
Certifications 13:3, 13:4, 23:9, 23:10, 23:17, 24:3, 25:11, 28:9, 37:13
certified 16:2, 27:24, 29:21, 30:18
certify 76:4
challenge 20:16, 58:19
change 40:18, 63:13, 64:15, 64:19
changed 48:4
changes 9:17
characterization 14:21
chase 42:20
choice 13:21, 46:4, 47:19
choices 26:17
choose 55:11
choosing 62:15
chose 30:24, 62:14
chosen 30:25, 55:13
Circuit 12:11, 17:8, 42:15, 46:16, 50:23, 53:25, 57:24, 57:25, 58:2, 58:4, 58:6, 63:14
circumstance 31:15, 64:19
circumstances 26:7, 27:23, 37:9, 44:20, 45:12, 46:23
cite 58:8
cited 47:1, 47:8, 48:18, 54:20,

55:18, 55:22, 55:24, 57:23, 61:10, 62:1, 70:6, 70:8
citizens 26:22
City 7:24, 8:5
civil 59:11, 60:2, 60:4, 60:8
Claim 8:14, 9:22, 17:16, 42:22, 43:1, 43:3, 44:12, 45:4, 45:15, 46:3, 46:20, 47:14, 47:20, 58:14, 66:9, 67:22, 67:24, 68:8, 68:11, 68:20, 70:2, 72:24, 73:23, 74:4, 74:8, 74:11
claimants 10:15, 10:19, 43:15, 73:10
Clara 64:12
class 43:8, 45:24, 68:1
clause 43:4, 44:9, 44:11, 44:14, 44:19, 46:7, 46:8, 46:9, 46:15, 46:22, 47:5, 47:12, 47:13, 47:15, 47:22, 48:19, 50:18, 50:22, 53:16, 55:10, 55:21, 56:5, 56:15, 56:16, 57:3, 57:7, 59:7, 61:20, 63:24, 65:8
clauses 42:10, 42:13, 53:23, 54:1, 54:4, 61:24, 62:11, 62:14, 62:25, 63:1, 64:18, 70:20
clear 19:1, 25:20, 28:8, 28:21, 29:21, 37:4, 49:5, 53:3, 54:2, 55:19,

56:20, 56:22, 57:5, 57:19, 61:19, 65:12
clearly 18:14, 65:10
Clerk 8:11, 8:12, 8:13, 8:18, 9:5, 10:8, 59:23, 60:19
clerks 24:22
client 47:20, 56:24
clock 22:1, 34:14, 66:2, 66:6
closed 23:13
Cobra 5:38
codifies 12:16
COFINA 1:32
colleague 21:17
colleagues 39:19
collecting 26:15
collection 7:16, 9:18
combine 25:18
comes 33:14
comfortably 61:14
coming 8:25
comments 40:23, 59:12
committed 17:5
Committee 5:14, 5:28, 43:6, 43:17, 45:6, 45:25, 46:19, 66:20, 71:14, 71:24, 72:6
common 56:9
communicate 9:4
compelling 13:24, 45:12
compels 64:9
Complaint 15:12, 67:23, 68:17, 72:8
completed 50:7
completely 31:18, 32:17
completing 52:5
compliance 13:19, 23:3, 23:10, 25:10, 27:20, 28:6, 28:14, 30:14, 30:16
compliant 30:7, 30:8, 35:11

complied 31:22
comply 13:24, 15:16, 18:3, 19:25, 23:20, 23:23, 30:2
complying 30:1
compulsory 46:25, 47:3, 54:10
concede 32:13
concedes 33:6
concern 8:2, 23:19
concerned 23:24, 30:4
concerning 33:13, 35:16
concerns 7:15, 8:23, 9:12
concessions 25:19
concluded. 75:6
concludes 60:14, 60:15
conclusion 47:23, 64:9
conduct 13:24, 23:13, 61:17, 61:25, 62:2
conducting 75:1
conferred 53:13, 60:12
confusion 72:2
Congress 16:22, 18:22, 19:16, 25:24, 31:4, 32:21, 32:22, 37:19, 49:4, 53:13, 60:12, 61:5
connection 74:20, 74:22
consent 42:13
consequence 58:15
consider 40:12, 55:3
consistent 10:13, 31:25
consistently 44:15, 44:18, 44:19
consisting 76:4
consolidation 63:17, 63:18
constituencies 55:6
construction 37:5
construed 31:7

consult 8:18, 21:16, 39:18
contemplates 17:2
contend 16:7
contested 72:24, 74:4, 74:10
context 72:5
continue 8:11, 13:19, 19:3, 33:7, 40:1
continued 10:7
continuing 7:5, 24:1
contract 42:6, 42:22, 43:2, 43:3, 45:4, 45:16, 54:24, 55:8, 55:14, 56:12, 56:23, 57:1, 66:9, 66:13, 67:6, 67:18, 67:22, 68:8, 69:23, 70:7, 70:12, 72:12
contracts 41:23, 42:3, 42:4, 42:10, 45:3, 54:5, 55:13, 56:9, 61:23, 62:13
contractual 46:25, 47:4, 54:25
contradict 74:15
contrary 55:22, 60:6
contrast 44:7
control 33:15, 33:21, 65:13
controversy 17:22, 62:3
convenient 49:21
cooperatively 12:13
copies 24:15
copy 24:22
Coqui 35:4, 35:9
core 53:7, 64:4
Corp. 5:35
Correct 22:6, 31:5, 34:2, 64:14, 67:17, 74:6
corrected 39:23
cost 15:25
costing 38:9
costs 15:20, 18:6, 18:15, 26:12

Counsel 12:12, 18:20, 22:4, 24:17, 37:3, 37:10, 37:22, 39:21, 63:3, 66:2, 70:11, 71:10, 72:4, 72:22
Count 14:14, 14:15, 14:17, 15:7, 15:8, 15:17, 18:1, 22:4, 22:17
Counterclaim 46:25, 47:3, 47:9, 47:12, 47:14, 54:11, 56:6
Counts 14:9, 14:14, 15:12, 15:13, 19:20, 22:8, 22:17, 22:18, 42:4
couple 8:9
course 9:14, 9:16, 12:16, 18:12, 19:9, 19:21, 24:16, 25:2, 38:7, 51:19, 53:12, 63:20, 64:11
courthouse 7:15, 7:25, 8:6, 8:15
courthouses 7:21, 8:4
Courtroom 8:21
Courts 8:8, 8:13, 44:15, 49:15, 49:16, 50:5, 55:12, 56:25, 62:9, 62:22, 70:7
cover 26:12, 41:14, 50:7, 52:6, 52:8, 52:11, 59:11, 60:2, 60:5, 60:8, 69:23
covering 11:12
covers 20:2, 20:4
crafted 12:22
create 32:18, 36:18
created 69:15
creates 49:14
Creditors 5:15
criminal 42:2
crisis 36:19
critical 12:14, 39:4

CSR 76:14
current 11:2
Currently 7:20
cut 28:2, 42:20
cuts 65:1

< D >
dangerous 29:9
date 7:8, 7:18, 8:3,
   10:18, 11:3,
   39:15, 44:21,
   62:14, 62:15,
   66:22, 73:20,
   74:19
David 5:44
Day 7:6, 35:4, 35:9,
   38:1, 44:24, 62:8
days 8:9, 25:13,
   29:8, 37:2, 57:18,
   57:22, 58:7, 59:5,
   62:17, 62:18
de 4:26, 4:27
deadline 28:11,
   62:8, 63:19, 74:1
deal 47:2, 73:12,
   73:20
Debt 12:25, 17:25,
   18:11, 18:13,
   18:14, 18:16,
   18:21, 19:12,
   19:13, 19:15,
   34:20, 34:22,
   34:25, 35:13,
   35:15, 35:17,
   35:19, 35:24
Debtor 1:34, 2:18,
   2:35, 3:16, 3:33,
   52:12
Debtors 1:18, 10:5,
   10:12, 73:8
December 10:13,
   73:5, 73:14
decide 60:18
decided 22:17, 52:2
decision 40:2, 72:20
declaration 22:5,
   28:8, 28:21
declaratory 15:14,
   18:2, 19:24

declaring 22:8
decree 39:15
deeper 60:22
defeat 21:14, 33:24,
   38:22, 47:16,
   61:17
defeated 16:18,
   39:1, 39:5, 61:25
defeats 13:14,
   21:22, 32:10,
   39:10
defect 57:16, 59:2,
   59:3
defend 47:15
defendant 19:8,
   43:23, 61:8, 62:4
Defendants 4:21,
   4:35, 13:7, 13:23,
   14:2, 15:16, 16:7,
   16:10, 17:1,
   17:15, 17:18,
   17:19, 18:3,
   18:17, 19:25,
   20:6, 20:18,
   23:20, 43:11,
   44:4, 44:22,
   52:25, 53:1, 68:2,
   68:4, 68:6
defended 47:11
deferential 32:15
defined 61:17
defines 34:22
definitely 23:6
definition 17:6,
   17:12, 18:8, 34:25
Dein 4:42, 76:8
delay 39:14
democratically 31:13
denied 14:3
deny 55:10, 61:21,
   65:24
deprives 37:18
depth 36:1
Deputy. 8:21
derived 68:1
describe 66:18
designed 25:16,
   32:18
determination 15:2,
   21:12, 47:25

determine 14:24,
   21:21, 32:9
determined 21:15,
   38:25, 45:2
dialogue 28:3
Dictionary 34:22
difference 47:10,
   47:11
different 46:5,
   52:7, 60:20,
   64:13, 64:22,
   65:3, 65:20, 72:4
difficult 23:21,
   23:23, 45:12,
   49:23
difficulties 73:10
dire 26:7, 26:22,
   27:5, 36:11
directly 57:23
disagrees 27:7, 48:7
disclosure 12:17
discovery 63:11
discretion 32:9,
   65:9
discuss 39:21
discussed 37:10
Discussion 8:20,
   36:2
disjunctive 19:4
Dismiss 14:3, 17:4,
   19:10, 56:6
dismissal 62:3
dispute 14:5, 15:18,
   15:21, 16:1, 16:3,
   18:4, 20:1, 20:6,
   25:9, 25:14,
   25:23, 26:6,
   28:12, 30:22,
   53:15, 53:16,
   56:14, 58:22
disputed 25:7,
   25:15, 56:17
disputes 31:8
disqualified 42:3
disregard 16:20,
   62:13
disregarded 38:15
distinction 56:1
ditch 57:4
diversity 41:17,

48:22, 49:1, 49:4,
49:14, 50:16,
51:4, 51:6, 51:17,
51:18, 52:16,
53:5, 53:17,
53:20, 57:7,
57:11, 57:13,
58:20, 59:20,
60:5, 63:25, 64:3,
65:17, 69:5, 69:8,
69:9
Docket 1:6, 1:23,
2:4, 2:23, 3:4,
3:21, 4:4, 4:26,
10:7, 52:11, 60:8
documentation 13:12
doing 9:7, 52:10
dollar 17:9
dollars 26:9, 35:5,
35:9
dollars. 15:25,
38:10
done 10:13, 23:8,
28:13, 35:11,
36:21, 47:18
down 10:9, 12:2,
33:6, 33:16, 34:6,
34:11, 35:10,
35:25, 36:12,
39:14, 46:16,
63:14
downside 45:13,
45:14
due 34:23
duplicative 65:2
during 12:12, 24:16,
73:11
duties 25:25, 55:3

< E >
E. 5:32
earlier 39:12
earthquake 73:12
earthquakes 26:23,
26:25
ECF 58:21
economy 65:1
effect 36:13, 55:25,
70:16

effective 39:15
effectiveness 33:7
effectuate 31:7
efficient 10:22,
26:15, 26:16
effort 29:25, 57:4
efforts 13:16,
13:18, 23:4, 23:23
eight 22:4
either 16:4, 47:1,
49:7, 55:9, 55:16,
65:18, 69:6,
70:20, 70:21, 73:8
elected 27:6, 27:9,
30:23, 31:13
election 31:1
Electric 3:13
Electrica 4:27
elicited 11:11
emanate 18:21
emendations 9:8
employ 26:4
Employee 4:9
Employees 2:13, 18:5
employers 29:9
empowers 21:20
en 5:32
enact 31:3, 35:4
enacted 42:7, 69:14
enacting 16:4, 21:14
enactment 32:8,
32:22, 32:23
enacts 13:2
encounter 75:3
end 16:17, 73:17,
74:14
endorse 31:9
ends 31:7, 69:23
Energia 4:26
enforce 37:8, 56:10
enforceable 15:16
enforced 42:9, 65:8
enforcement 15:14,
18:2, 19:23
enforcing 44:18
engage 35:18
engaged 61:16
engaging 23:5, 74:17
enjoining 22:8
ensure 12:18

ensuring 31:14
entered 63:18
entirely 15:23,
18:7, 18:24
entirety 14:4
entitled 26:5
Equipment 58:8
equitable 41:17,
41:18, 41:19,
47:24, 48:1, 48:2,
49:2, 51:10,
51:15, 53:19,
64:9, 64:20, 65:6,
65:20, 73:12
equitably 48:23,
70:15
equities 64:8
equity 48:13, 64:9
equivalent 72:10
ERS 7:17, 8:4
Esq 5:32
essentially 22:3,
22:8, 42:2, 43:13,
43:24
estate 56:24, 70:16,
70:22
estimate 20:1, 20:4,
20:7
estimates 13:3
estoppel 65:6
et 1:16, 4:19, 4:33,
5:4
evade 59:17
evaluate 20:22,
25:21
event 43:25, 63:24
everybody 9:6
everyone 22:22,
27:4, 74:16, 75:2
everything 35:11
exact 66:21
exactly 25:12, 72:13
examining 43:20
example 29:15,
33:17, 35:3, 56:6,
62:3
Except 48:1, 52:18
exception 22:4,
32:24, 45:17,
50:13, 54:25,

61:4, 61:5, 69:13
exchange 72:10
exclusive 67:21
excusable 65:11
excuse 18:18, 23:11,
  33:9
excused 40:22, 41:1
excuses 55:24
Executive 22:21,
  28:7
exemption 18:23
exercise 32:19,
  49:18, 53:17
EXHIBITS 6:9
exist 18:25
existed 50:15
existing 19:1
exists 50:22
expand 8:5
expedient 52:2
expenses 26:13
experienced 73:11
explain 38:5, 62:10
explanation 29:1,
  73:25
expressed 7:16
expressly 58:11,
  64:23
extended 74:1
extension 28:23,
  28:24, 29:2, 29:3,
  73:14
extensions 28:25
extent 14:24, 61:2
extricated 72:15


< F >
face 36:17
faced 37:10, 47:19
facing 36:19
fact 22:24, 28:12,
  30:4, 30:23,
  31:19, 34:11,
  35:7, 36:10,
  55:12, 65:5
factor 48:10, 64:17,
  65:1
factors 47:24, 48:1,
  48:4, 48:11,

64:12, 64:21,
  65:10, 65:20
facts 14:5, 16:6
factual 14:22, 68:20
fail 23:20
failing 30:2
failure 15:16, 18:3,
  19:25, 20:25,
  21:6, 58:16
faith 61:8, 61:14,
  69:12, 69:16
falling 11:12
familiar 20:20,
  42:17, 62:7
far 26:14, 62:18,
  74:14
fault 37:17
faulty 20:7
favor 22:11, 48:2,
  48:13, 48:19
fear 59:16
feared 62:20
February 47:25
Federal 50:13,
  55:10, 61:21,
  62:22
feeling 59:19
feet 23:18
few 16:14, 37:2
file 13:21, 24:24,
  46:5, 47:20,
  54:18, 55:4,
  55:19, 55:23,
  60:1, 68:20, 68:23
files 56:4
filing 12:8, 47:13,
  54:15, 57:18,
  63:19, 64:7,
  68:14, 69:17,
  73:16, 74:10
filings 66:23
finalize 8:9
finalized 9:15
finalizing 9:3
finally 8:11, 22:20,
  32:12
Finance 5:35
finances 12:20
Financial 1:9, 1:26,
  2:7, 2:26, 3:7,

3:24, 4:4, 5:19,
  26:7, 27:5
find 8:7, 32:16,
  49:23, 51:1, 51:2,
  51:15
finding 14:4
finds 57:6, 61:2,
  61:7, 61:12
fine 31:22
finish 34:14, 41:10
finished 72:17
fire 23:18
firefighters 29:8
firefighting 26:21
Firestein 5:6
First 8:3, 12:11,
  14:14, 14:15,
  15:11, 16:8,
  16:15, 17:8, 25:9,
  29:7, 32:12,
  40:12, 41:14,
  42:15, 46:15,
  50:3, 50:22,
  53:25, 54:21,
  56:21, 57:10,
  57:13, 58:2, 58:3,
  58:6, 63:6, 63:13,
  66:3, 71:6
Fiscal 5:18, 12:22,
  13:5, 13:10,
  13:13, 13:20,
  15:18, 16:2,
  16:20, 17:11,
  20:5, 21:3, 27:22,
  29:14, 29:22,
  29:24, 30:19,
  34:10, 34:12,
  37:12, 37:24,
  38:1, 38:21, 39:2,
  39:6, 39:9
fit 61:13
five 20:4, 73:2
five-year 68:11
fix 38:4
flip 70:23
focus 19:21, 25:7,
  25:8
follow 31:21, 49:23
followed 38:3
FOMB 58:12, 58:17,

58:21, 61:20,
64:23
foot 7:15, 8:3, 8:6,
33:18, 33:19,
37:17
forget 27:10
formal 13:3, 20:1,
20:7, 21:1
forms 8:14
forth 12:25, 38:7,
68:12
forward 9:17, 24:19,
44:23, 45:7,
74:10, 75:3
found 42:12, 45:3,
48:9, 48:12, 48:17
foundation 30:7
fraud 42:2, 43:14
fraudulent 66:24,
67:16, 68:6,
68:15, 72:8
Friday 10:5, 10:6,
12:8
Friedman 5:20,
40:22, 41:2, 41:3
front 46:16, 68:15
fuel 41:23, 42:4,
42:10, 68:4, 72:8,
72:10, 72:14
fulfilling 55:3
full 20:4, 59:5
fully 63:21
function 33:1, 33:2
functioning 33:21
functions 27:8
fundamentally 13:14,
27:7
funding 26:11, 27:1
Funds 17:4, 17:17,
29:6
funds. 29:25
future 12:15

< G >
G. 5:15, 5:28
Gail 4:42, 76:8
gap 36:17
Garced 4:18
general 18:21, 45:17

generally 19:12,
71:25
getting 29:7, 52:6
give 8:17, 20:4,
29:3
given 17:14, 18:13,
28:16, 29:10,
49:6, 64:17,
64:23, 65:7
gives 14:24
giving 29:2
goal 73:19
Godfrey 52:25
goods 34:24
gotten 32:1
governed 50:12
Governor 16:10,
20:1, 20:15, 21:4,
22:21, 23:4, 23:5,
23:17, 24:13,
27:10
governs 51:9
grade 72:11, 72:14
grant 9:8, 10:19,
14:8, 38:20, 49:7,
50:4, 50:6
granted 10:21, 29:1,
29:23
grants 50:5
grateful 8:22
greater 8:6
grounds 22:10, 50:9,
51:10, 53:5, 60:3,
62:24
Group 5:43
Guarantee 5:35,
35:18
guarantees 19:11
guide 37:11
guilty 42:2
guy 45:20


< H >
Hadassa 5:10, 11:22
hand 24:15
handed 28:18, 37:22
handle 65:17
hands 25:17, 30:25
happen 8:15, 30:5,

45:9
happened 23:11,
63:16
happening 27:25
happy 36:3
hard 26:17, 37:11
hardest 26:24
harm 23:25
heads 55:15
health 15:20, 18:6,
18:15, 26:10, 75:2
hear 52:22, 62:20
heard 32:12, 33:23,
34:19, 71:15
HEARING 4:39, 7:6,
10:3, 10:13,
10:14, 10:16,
11:3, 11:15,
12:12, 45:21,
59:16, 73:5, 73:6,
73:21, 74:19,
74:20
hearings 10:14, 75:1
heart 12:9
Hein 5:24
held 8:20, 58:6,
64:16
Hello 72:25
help 8:25, 26:12,
26:14
hide 29:17, 30:1
high 72:11, 72:13,
72:14
highlight 16:14
Highways 2:32
history 42:18, 62:7,
63:6
hit 26:24
hold 40:15, 71:19
hole 15:21
holiday 73:11
holidays 35:6
Honorable 4:40,
4:42, 76:6, 76:8
hook 39:7, 51:7
hope 9:19
Hopefully 41:11,
73:17
huge 36:17
hundreds 15:25, 26:9

< I >
ignored 38:6, 38:15
ignoring 19:17
II 18:1
III 1:8, 1:25, 2:6,
  2:25, 3:6, 3:23,
  7:6, 15:12, 19:20,
  44:3, 46:2, 47:18,
  48:24, 49:8,
  49:18, 49:20,
  51:5, 51:21,
  52:13, 52:15,
  53:7, 53:19,
  60:11, 67:2,
  67:13, 67:15,
  67:21, 68:24,
  68:25, 70:14
immediately 36:17,
  44:5, 63:7, 63:8
immune 20:15
impact 13:1, 13:10,
  13:20, 45:20,
  70:21
impair 21:14, 38:22
impaired 39:1, 39:4
impairs 13:14,
  21:22, 32:10,
  33:5, 34:5, 39:10
implemented 30:12,
  37:15
implicate 14:22
important 40:13,
  45:19
importantly 27:22
impose 26:9, 48:25
imposes 12:17, 18:6
improved 23:3, 23:18
improvement 25:10
in. 52:20
inaction 61:17
inadequate 20:7
inappropriate 37:7,
  46:12
Inc. 5:46, 52:25
incentivized 17:21
inclined 21:7, 36:11
include 7:21, 8:4,
  27:21, 34:22,

52:2, 74:1
included 39:3,
  45:15, 68:6, 68:7
includes 53:13
including 7:24,
  42:5, 60:12
inconsistency 21:8,
  38:5
inconsistent 13:5,
  14:25, 20:23,
  21:3, 27:13,
  29:14, 29:16,
  29:22, 30:19,
  32:1, 34:10,
  34:12, 37:24,
  39:2, 39:9, 43:2,
  56:3, 62:2, 65:2,
  70:17
incredibly 32:15
incurred 19:13
indebting 35:8
independence 37:12
independent 53:5,
  60:3, 64:2
indicate 49:21
indicated 48:9
indicates 52:16
individuals 8:15,
  74:7
inform 12:25
information 8:14
informative 24:25
infractions 39:23
inherent 54:11
initial 18:12,
  68:14, 69:7
initiate 44:10
initiated 16:9
initiates 16:25
injunction 15:13,
  18:1, 19:23, 21:5,
  22:25, 23:14,
  23:19, 30:7, 30:9
injunctions 13:23
injury 17:21
inquiry 16:17, 69:24
inserting 19:16
insignificant 21:7
instance 10:2, 47:2,
  70:19

instances 29:4,
  30:15, 30:17,
  66:18
Instead 28:13
Integral 5:31
integrity 32:25
intellectual 51:11
intended 16:22,
  32:21
intentional 46:21,
  54:12, 54:16,
  61:17, 61:25
intentionally 61:20
interest 63:23
interfere 33:15,
  33:20
interferes 32:24
interjected 41:15
interpretation 32:6,
  34:19, 35:22
interpretations
  31:18
interpreters 9:11
Interpreting 19:15
intervening 10:6
invalidate 22:15
invalidating 26:2
invest 39:4
invocation 21:13
invoke 26:5, 62:22
invoked 48:22,
  61:20, 62:21
involve 67:5
involved 41:23,
  47:9, 56:3
involves 29:8, 42:1
involving 62:2
irrational 32:18
issuance 19:4,
  35:15, 35:17
issue 13:23, 17:25,
  21:2, 21:8, 29:20,
  37:18, 38:6, 38:7,
  40:2, 40:12,
  40:13, 41:14,
  41:18, 41:20,
  48:9, 48:13,
  50:19, 53:17,
  53:20, 54:5, 55:4,
  60:22, 62:5, 65:4,

69:4, 70:17,
70:18, 72:20,
73:2, 73:3
issued 19:15, 35:17,
35:19
issues 14:22, 15:8,
28:3, 39:21,
40:11, 41:14,
53:19, 65:17,
65:19
issuing 23:14
Item 7:7, 11:18,
72:23
Items 10:1, 10:24,
11:4, 11:8, 73:2,
74:5
itself 12:16, 12:23,
33:6, 33:13, 35:1
IV 15:12
IV.14 11:4
IV.3 10:24

< J >
J. 5:4
January 10:14, 73:6,
73:11, 73:14
job 16:21
John 5:21, 5:32
joinder 62:3
Joint 13:8, 13:18,
13:22, 15:15,
15:24, 16:5, 16:7,
17:15, 22:9,
22:15, 26:2,
28:19, 29:5,
29:19, 30:12,
30:18, 39:1
Jointly 1:11, 1:28,
2:9, 2:28, 3:9,
3:26
Juan 7:1, 7:22, 8:7,
74:22
Judge 4:40, 4:41,
4:42, 4:43, 24:23,
49:10, 49:13,
49:18, 52:4,
59:24, 60:20,
76:7, 76:8
Judgment 14:7,

15:15, 18:2, 19:9,
19:24, 23:8, 25:6,
28:20, 44:25,
45:11, 62:9,
62:20, 63:12,
63:19, 63:20
judicial 49:18,
62:21, 63:13,
64:25
Judith 4:42, 76:8
jurisdictional
57:20, 58:5
jury 48:10
Justice 49:16

< K >
KAPLAN 5:46, 40:21,
41:4, 52:24,
54:15, 61:1,
61:12, 66:5, 69:3,
69:20, 69:21,
70:4, 72:3, 72:21
kept 48:16, 68:8
kind 23:25, 35:6,
45:20, 45:21
kindly 24:24
knowing 45:9, 46:22,
54:12
knows 9:6, 41:22
Kurt 5:43

< L >
L. 5:44, 5:46
la 5:32
lab 68:5
lack 57:17
laid 36:6
language 9:11, 59:1
large 52:3, 73:3
Lary 5:7, 40:8
last 10:5, 10:6,
14:1, 39:13,
41:20, 57:4, 60:7,
62:12, 70:25, 73:1
late 23:9, 23:10,
23:17, 24:3,
28:22, 37:13,
37:17, 73:4, 73:7,

73:13, 74:3
later 19:4, 65:14,
70:23
laundry 68:4
Laura 4:40, 5:5,
9:24, 76:7
laws 13:9, 37:14,
37:21, 37:23,
37:25, 38:9
lawsuit 13:21,
22:14, 54:9
Lawton 5:44
lawyer 67:8
lead 66:23, 66:24
least 36:13
leaves 32:15
legal 20:9, 20:10,
27:3, 45:12
legislation 18:19,
18:22, 18:23,
19:2, 19:22, 35:16
legislative 29:23
legislature 16:16,
16:19
legitimate 20:18
less 39:3, 41:10
letter 28:17, 28:22,
29:10, 29:21,
37:22, 38:8
letters 24:16
lift 74:20
light 73:9, 73:22
likewise 58:21
limit 32:23, 35:17,
57:20, 58:6,
58:23, 59:1, 61:3,
61:4, 61:7, 68:18,
71:2
limitation 19:16,
32:13, 32:25,
34:18, 35:20
limitations 45:8
limited 53:12
line 27:24, 68:4
list 68:4, 71:22
listening 37:3,
40:25
listing 52:9
litigate 55:11,
61:21, 64:24

litigated 63:9
litigation 40:7,
   42:22, 65:2
litigator 67:8
LLC 5:39
LLP 71:13
local 55:11, 62:9,
   62:21, 64:25, 70:7
location 7:25, 8:5
locations 7:20,
   7:24, 8:7, 8:10,
   8:24, 8:25
logic 47:3, 47:16
logically 50:2
long 14:17, 37:2,
   53:14
longer 34:4, 64:19
look 16:15, 29:20,
   34:8, 66:17, 74:9,
   75:3
looked 47:7, 47:8
looking 33:3
looks 56:7, 61:15
loophole 49:2
lose 55:15, 64:24
lost 70:11
lot 23:22, 34:15,
   59:21
low 72:11


< M >
M. 5:39
MA 5:9, 7:9, 7:11,
   7:13, 7:14, 7:20,
   9:14, 9:16, 9:20
Magistrate 4:42,
   76:8
mailing 10:8
mailings 10:16,
   10:17
maintain 72:19
Management 1:10,
   1:27, 2:8, 2:27,
   3:8, 3:25, 4:5,
   60:18, 60:19
mandated 37:19
mandatory 56:16
manner 27:7, 32:18
March 7:6, 15:7

market-based 19:13
markets 39:5
Marrero 28:8, 28:21,
   43:25, 45:24, 68:1
Martin 5:4
massive 13:10, 15:21
material 14:5,
   56:10, 64:18
materials 9:6, 9:9
matter 14:2, 14:6,
   18:13, 18:21,
   22:13, 27:3, 40:1,
   40:6, 41:16, 49:7,
   52:21, 53:14,
   54:2, 55:19,
   55:21, 57:14,
   57:17, 59:2, 59:3,
   59:9, 60:18
matters 74:3, 74:18,
   74:25
Mayr 5:43
mean 34:25, 51:5,
   52:20
meaning 18:9, 18:11,
   18:13, 34:20
meaningful 13:13
meaningless 18:25
means 35:13, 38:22,
   39:10
measures 13:19
meet 33:18, 65:14
meetings 33:20
mentality 26:18
mention 27:14
mentioned 28:17,
   73:9
meritorious 57:3
Mervis 5:8
Michael 5:6, 5:8
Milan 57:24
millions 15:25,
   26:9, 38:9
minimize 45:20
minutes 11:24,
   11:25, 41:7, 41:10
misspoke 69:3
modification 17:25,
   18:8, 19:5
modifications 19:11
modifier 19:12,

   19:18
modifies 12:25
modify 35:18
moment 10:22, 19:7,
   39:19, 48:9, 71:14
money 17:12, 34:23,
   37:16, 37:25,
   38:1, 39:4
Montana 5:32
months 23:12
moot 17:16
mootness 30:11
morning 7:9, 7:10,
   7:13, 9:23, 9:24,
   11:20, 11:21,
   12:6, 12:7, 24:11,
   24:12, 25:7,
   34:19, 37:23,
   40:8, 40:10,
   52:23, 52:24, 73:1
Motion 7:8, 7:17,
   7:18, 9:8, 14:3,
   14:7, 14:8, 17:4,
   19:9, 19:10,
   24:25, 38:21,
   40:6, 41:7, 57:16,
   58:12, 58:13,
   58:17, 58:20,
   59:4, 63:17,
   63:18, 65:24,
   66:17, 69:6, 69:7,
   71:2
motions 44:25, 62:9,
   62:20, 63:11,
   63:19, 63:20,
   74:20
move 17:24, 19:20,
   20:11, 38:23, 56:6
moved 20:25, 38:24
Mudd 5:32
Mungovan 5:11
municipalities
   15:19, 15:22,
   18:5, 26:7, 26:19,
   26:24, 36:10,
   36:14, 36:16,
   37:10, 39:6
Myers 24:13

< N >
name 71:21
names 52:12
narrative 73:25
narrow 37:4
narrowly 31:7, 31:12
National 5:34, 35:4, 35:6, 35:9
nature 31:10, 52:13, 68:3, 72:7
near 8:5, 8:7
necessarily 17:5, 67:14, 70:13
necessary 22:25, 25:22, 25:24, 38:23, 70:21
need 26:25, 31:20, 60:24
needed 45:13, 67:1
needs 23:7, 53:18
negative 13:20
neglect 65:11
negotiation 39:16
neutral 48:1, 48:11
New 5:25, 5:29, 5:36, 5:40, 13:2, 22:21, 23:2, 23:4, 25:3, 26:23, 28:6, 30:17, 30:18, 42:2, 54:21, 56:18, 71:11, 74:21, 74:24
Next 7:7, 9:22, 10:1, 11:18, 40:6, 74:19, 75:3
night 12:8
Ninth 57:24
No. 1:6, 1:23, 2:4, 2:23, 3:4, 3:21, 4:4, 4:26, 36:4, 40:24
nomenclature 49:21
noncompliance 14:12, 14:21, 29:4, 30:5
noncourt 7:23
nondiverse 62:4
None 6:5, 6:11
nonetheless 8:13
nonexclusive 50:15, 51:25, 53:5, 60:3

nonmonetary 34:24
nonremoving 48:15
nontitle 51:21
normal 49:17, 52:8, 59:23, 62:18
note 8:8, 9:16, 54:19, 56:14, 57:25, 60:7, 64:2
noted 12:8
Noteholder 5:42
nothing 18:19, 20:8, 48:4, 51:10, 51:12, 52:16
Notice 48:22, 51:22, 52:18, 52:19, 57:18, 57:22, 74:7
notices 8:3, 10:4
notification 38:4
notified 20:6
notion 63:22
null 22:9, 45:3
nullification 21:5
nullified 39:23
nullify 13:22, 31:19, 32:20, 42:4
Number 10:2, 23:12, 50:20, 52:11, 73:3

< O >
O'melveny 24:13
Objection 11:2, 11:11, 24:18, 39:16, 59:22, 60:21
Objections 9:23, 10:19, 10:25, 11:5, 11:6, 11:9, 11:10, 72:24, 73:4, 73:15, 73:23, 74:2, 74:4, 74:8, 74:11
objectively 31:25
obligate 35:1
obligated 72:13
obligation 18:14, 18:15, 34:21
obligations 12:18, 15:23, 18:4, 18:6, 18:21, 26:10

observed 19:9
obtain 13:1, 16:3
Obviously 19:8, 22:16, 37:7, 45:3, 59:21
occur 24:1
occurred 62:11
off-line 8:18
offer 20:18, 29:1
offered 6:5, 6:11, 26:14
Office 8:13, 8:18, 60:19
Offices 8:12
Official 5:13, 76:15
oil 72:8, 72:11, 72:14
Okay 10:22, 15:6, 22:2, 24:22, 27:10, 32:5, 42:19, 52:22, 61:1, 61:12
Old 7:22, 8:7
Omnibus 4:39, 7:6, 10:3, 10:16, 10:25, 11:5, 11:9, 11:11, 11:15, 73:5, 73:6, 73:15, 73:21
Once 8:22, 23:20, 62:23, 68:13, 69:9, 74:16, 74:23
one-time 73:13
one-year 57:12, 57:19, 58:23, 59:1, 61:3, 61:4, 61:6, 71:2
one. 40:13, 70:5
ones 26:25, 68:19
ongoing 74:25
open 18:10
operation 36:5
opposed 22:18, 46:20
opposing 24:17, 25:6
opposite 46:12
opposition 19:8, 41:15, 44:8, 58:12, 69:10, 71:4
oral 11:18, 24:7
Order 9:9, 11:2,

28:7, 36:13, 44:2,
  49:17, 61:8, 73:25
orders 11:12
ordinarily 25:7
ordinary 18:9,
  18:13, 34:20
original 66:19
Originally 42:7,
  66:21, 68:3, 68:6,
  68:23, 73:5
others 43:11, 43:13,
  68:10, 73:8
otherwise 17:5,
  36:16, 54:4, 57:5,
  58:14
outlays 15:20
outlined 9:1
outside 47:3, 61:6
outweighed 45:14
overstepped 32:16
owes 34:24
own 27:11, 32:25,
  36:17, 37:23


< P >
PAGE 6:3, 28:25,
  29:13, 29:20,
  57:25, 58:9, 69:11
pages 76:4
papers 16:13, 20:2,
  25:14, 34:7, 36:7,
  37:4, 39:12, 53:4,
  53:11, 65:23,
  69:5, 69:12
paragraph 29:13
part 30:6, 39:13,
  49:24, 68:16
particular 42:9,
  66:8, 75:1
parties 14:1, 55:1,
  55:3, 55:9, 55:16,
  55:17, 65:13
party 25:6, 44:9,
  46:7, 46:11, 47:2,
  48:15, 56:11
pass 45:8
passed 33:17, 42:16,
  61:5
passing 13:8

past 23:12, 23:13,
  39:23
pay 18:15
Paygo 26:9
PBA 7:8, 7:18
pending 43:9
pension 15:20, 18:15
people 8:25, 9:5,
  25:2, 25:3, 25:16,
  30:24, 31:1, 40:18
perceived 53:4,
  59:13
percent 23:9
percentage 24:2
perfect 23:7, 23:16
perfectly 35:10
period 10:6, 39:15,
  39:21, 59:6, 73:14
permission 29:7
permit 39:15, 71:14
permits 12:1, 16:14
permitted 16:19,
  54:7
perpetrated 43:14
person 34:24
personnel 9:4
perspective 55:6
Peter 5:20, 5:24
phone 25:3
PHV 5:4, 5:5, 5:6,
  5:7, 5:8, 5:9,
  5:10, 5:11, 5:15,
  5:20, 5:21, 5:22,
  5:28, 5:35, 5:39,
  5:43, 5:44, 5:46
pick 35:3
picked 54:10
Pioneer 65:5, 65:10
place 28:6, 37:11
places 17:12, 40:18
plain 16:16, 58:25
Plaintiff 4:14,
  4:29, 56:4, 61:7,
  61:16
Plan 12:22, 13:5,
  13:10, 13:14,
  13:20, 15:18,
  16:2, 16:20,
  17:11, 20:5, 21:3,
  27:22, 29:14,

29:22, 30:19,
  34:10, 34:12,
  37:24, 38:2,
  38:21, 39:2, 39:9
plate 59:21
play 33:14, 33:22,
  34:4
played 48:13
pleading 63:11
Please 24:19
pleased 23:4
pled 42:1
plummeted 28:10
plus 66:7
point 22:14, 27:9,
  30:15, 53:2, 55:8,
  57:23, 58:10,
  64:13, 70:10,
  70:25
point. 60:23
pointed 27:17, 29:5,
  34:7
points 16:14, 30:3,
  34:8, 62:7
policies 33:10
policy 14:12, 14:15,
  22:5, 22:20,
  22:21, 28:5,
  29:15, 30:8
Ponce 7:23, 8:7
position 26:3,
  27:16, 36:11,
  49:3, 55:15, 69:8,
  70:23, 70:24
positions 46:12,
  70:17
possible 31:7,
  31:12, 40:2, 59:8,
  72:20
possibly 64:14,
  69:16
Power 3:14, 25:16,
  30:23, 32:8,
  32:13, 32:19,
  35:21, 49:18
power-sharing 12:16,
  27:18, 32:2
powers 27:22, 28:1,
  31:6, 31:13,
  32:17, 34:18

practically 32:20
precludes 60:5
predicated 15:18
prefer 14:16
preferred 55:13,
   61:22, 61:23,
   70:19
prejudice 48:14,
   48:17, 48:18,
   64:16
prejudiced 48:15
preliminary 74:19
PREPA 41:23, 43:7,
   43:15, 44:17,
   46:19, 48:15,
   52:15, 61:19,
   64:16, 67:15, 72:9
preparing 73:16
prerequisite 32:9
preserve 31:12,
   43:24, 44:2
preserved 35:21
preside 49:13
President 30:25
presolicitation
   7:17, 8:4
pressing 14:11
prevent 12:21, 61:8,
   69:17
preventing 13:23
previous 29:24
previously 47:24,
   59:18, 64:16
price 72:14
prices 72:11
primary 16:8
Prime 8:11, 9:5,
   10:8
principle 45:18
principles 56:12
prior 53:24
Pro 5:24
problem 27:5, 36:16,
   37:12, 37:13,
   37:14
problems 32:18
procedural 37:14,
   37:18, 38:7,
   42:17, 57:20,
   58:5, 62:7, 63:6,

70:18
procedurally 68:22
procedure 21:6, 52:8
procedures 9:18,
   59:24
proceeding 44:4,
   52:7, 52:13,
   52:14, 62:16,
   63:4, 66:23
Proceedings 5:48,
   7:7, 41:22, 44:24,
   45:4, 46:13,
   50:11, 51:25,
   75:6, 76:6
process 8:8, 9:10,
   12:14, 22:24,
   62:21
produced 5:48
professions 29:9
programs 39:4
prohibiting 15:14,
   18:1, 19:23
prohibition 21:13
Proof 8:14
proper 59:20, 68:23,
   68:24
properly 59:10,
   63:25
property 56:23
proposal 8:2
Proposed 7:20, 9:9,
   9:18, 11:2, 11:12,
   73:25
proposes 27:8
Proskauer 7:11,
   9:25, 11:22, 40:9
proved 44:1
provide 13:2, 21:1,
   26:21, 50:4,
   72:13, 72:15,
   73:13
provides 25:13,
   57:15, 69:22
providing 26:16,
   73:24
provision 15:2,
   19:21, 42:21,
   47:1, 49:12
provisions 19:10,
   27:15, 38:16

Public 3:30, 5:34
publicity 35:7
punish 23:13
pure 30:6
purported 56:1, 59:2
purpose 33:4, 35:6,
   35:22, 43:19
purposes 13:14,
   14:25, 17:5,
   21:15, 22:19,
   32:11, 33:5,
   33:24, 34:5, 34:9
pursuant 10:4, 53:7,
   57:21
pursuing 56:23
put 19:16, 22:21,
   23:18, 25:17,
   28:6, 29:18,
   34:18, 46:18,
   52:3, 52:19, 52:20
puts 30:24
putting 26:20


< Q >
QTCB 5:42
quandary 51:11
question 15:6,
   18:10, 21:25,
   32:10, 40:14,
   41:15, 41:16,
   41:18, 54:17,
   58:3, 58:4, 66:2,
   67:20, 69:22
questions 24:6,
   34:15, 36:3,
   36:20, 39:11,
   53:3, 72:16, 74:18
queued 74:4
quickly 17:20,
   20:12, 45:2, 62:23
quite 13:16, 43:9,
   58:11
quote 17:4, 61:7,
   64:8
quoting 58:18


< R >
R. 5:10

rails 27:20
raise 44:14, 58:13,
   69:4, 69:7
raised 28:15, 57:13,
   58:7, 59:4, 62:5
raises 19:8
raising 58:16, 58:20
ran 66:6, 69:14
random 59:23
Rapisardi 5:21
rather 48:16
rationale 43:18,
   56:7, 56:9
Re 1:6, 1:23, 2:4,
   2:23, 3:4, 3:21
re-moved 64:3
reach 21:2, 21:7,
   53:18, 65:16,
   65:19
read 19:3, 19:18,
   31:11, 31:12,
   33:7, 33:8, 34:2,
   34:3, 61:11
reading 37:3
real 29:1
really 18:20, 21:10,
   27:4, 31:15,
   31:20, 31:21,
   43:1, 45:19,
   45:23, 46:4, 46:7,
   46:10, 51:12,
   61:15
reargue 53:25
reason 22:10, 43:5,
   45:19, 52:1, 65:7
reasonable 34:18,
   38:14, 38:17
reasonably 72:10
reasons 16:8, 34:8,
   38:5, 39:2, 39:3,
   39:8, 55:2
rebuttal 11:25, 41:9
recall 42:8, 69:13,
   69:18
receive 10:7, 72:10
received 10:2, 73:4
receiving 26:11
recognize 23:2
recognized 12:12,
   17:8

recognizes 26:17
reconsideration
   20:18
record 8:20, 9:25,
   14:23, 61:19,
   71:17, 71:25
recorded 5:48
recovery 68:10
redirected 17:6
reduce 27:24
reduced 25:12
refer 19:11, 24:16
reference 19:4,
   54:19, 57:12
referenced 37:21
references 19:5
regarding 8:2, 72:3
regardless 16:24
regular 51:20
reimburse 15:19
reimbursement 15:23,
   18:8
reject 16:23
relate 73:2
related 49:8, 49:12,
   50:14, 51:19,
   51:24, 53:7,
   55:14, 59:16,
   64:4, 67:14, 70:13
relates 12:19, 29:23
relation 18:5, 19:4
relationship 12:9
reliance 63:22
relief 22:4, 22:8,
   22:12, 30:21
relies 44:8
relieves 18:4
relieving 15:22
rely 56:2
remain 24:3, 48:4
remainder 11:13
remained 68:24
remaining 72:23,
   73:2, 73:21, 73:23
remains 48:5
Remand 40:6, 41:17,
   41:18, 41:19,
   48:2, 48:20,
   48:23, 49:2, 51:9,
   51:10, 51:13,

51:14, 51:15,
   53:19, 57:16,
   58:12, 58:14,
   58:17, 58:20,
   58:21, 59:4, 64:9,
   64:10, 64:17,
   64:20, 65:20,
   66:17, 69:6,
   70:15, 71:2
remanded 41:20,
   48:6, 48:8, 48:20,
   50:17, 53:23,
   59:18, 63:12,
   63:13
remanding 48:16
remarks 39:14, 72:3
remember 44:24,
   45:24
remotely 63:5
Removal 42:13,
   42:15, 48:23,
   48:25, 49:15,
   51:22, 52:9,
   52:18, 52:20,
   53:7, 57:13,
   57:22, 58:19,
   59:3, 60:3, 61:18,
   62:1, 62:18,
   62:24, 63:2, 69:5
remove 49:6, 51:6,
   51:20, 56:24,
   58:7, 59:14
removed 41:16,
   41:23, 42:8,
   42:16, 44:24,
   48:19, 48:24,
   49:25, 50:9,
   50:17, 51:14,
   52:12, 53:1, 53:4,
   53:9, 59:10, 61:6,
   62:8, 62:17,
   62:23, 63:7, 63:8
removing 61:8
repeating 13:24
repetition 17:22,
   23:25
Reply 33:9, 36:24,
   57:10, 57:14,
   58:14, 58:22,
   66:18, 69:6, 69:7,

69:12, 71:5, 71:7
Reporter 76:15
representative 1:13,
  1:30, 2:11, 2:30,
  3:11, 3:28, 4:8,
  8:19, 46:19, 54:8
represents 43:17
reprogram 16:11,
  16:16, 16:19,
  17:2, 17:19
reprogrammed 29:6
reprogramming 14:22,
  15:11, 15:17,
  16:9, 16:24, 17:2,
  17:7, 17:13, 29:25
reprograms 12:24
request 10:19,
  10:21, 14:12,
  39:17
requests 14:8
require 65:12
required 13:12,
  42:11, 45:16,
  54:4, 56:19, 57:2,
  59:5, 66:8, 66:14,
  69:25
requirements 13:8,
  28:15
requires 20:4, 47:17
requiring 19:11,
  19:21
reserve 11:25, 41:8
reserves 38:8
residents 12:15
resolution 17:15,
  28:19, 29:5,
  29:20, 30:18
Resolutions 13:8,
  13:18, 13:22,
  15:15, 15:24,
  16:5, 16:7, 22:9,
  22:15, 26:3,
  30:12, 33:10, 39:1
resolve 53:20
resort 35:14
respect 10:17,
  13:17, 15:4,
  15:13, 17:1,
  17:15, 17:25,
  19:19, 20:14,

21:5, 29:19,
  30:11, 31:16,
  32:5, 35:19,
  37:21, 38:9,
  38:11, 38:19,
  57:11, 58:22,
  58:24, 59:11,
  62:2, 73:17
Respectfully 14:8,
  17:17, 18:19,
  24:6, 38:14, 50:3,
  63:5
respond 31:24, 66:3,
  66:4, 71:17,
  73:14, 73:20
response 11:1, 11:7,
  11:11, 30:11,
  32:1, 54:14, 66:4,
  74:1
responses 10:2,
  10:7, 10:8, 10:15,
  10:18, 10:20,
  11:14, 73:4, 73:7,
  73:13, 73:21, 74:3
responsibility 20:3,
  39:6
rest 39:11
restoring 29:8
restricted 49:24
restricting 19:13
restructuring 12:14
rests 24:7
result 11:5, 38:3,
  58:25
resulted 13:18
retain 60:16, 65:18
retained 67:6
reticent 64:12
Retirement 2:13,
  4:9, 18:6
revenue 74:20
review 9:11, 15:1,
  16:23, 17:23,
  19:22, 21:19,
  21:23, 32:14, 35:2
revised 9:9
rights 38:8
ripe 17:23
risk 26:20
Robert 5:35

Roberts 49:16
role 34:4
room 27:11
Rose 9:25, 11:22
Rudnick 71:24
rule 22:10, 22:11,
  22:16, 22:17
Rules 21:14, 33:10,
  50:12, 50:13
ruling 53:24
running 20:11


< S >
S/ 76:13
safe 75:2
Salud 5:31
San 7:1, 7:21, 7:22,
  8:7, 74:22
sanitation 26:21
Santa 64:12
satisfied 65:10,
  65:22
saying 51:20, 66:14
says 16:15, 18:19,
  33:12, 33:24,
  35:14, 50:8,
  50:11, 52:12,
  60:8, 61:6, 66:10
scheduled 44:25,
  74:19, 74:21
scheme 43:14
scienter 61:15
scope 56:15
Se 5:24
season 73:11
Second 7:5, 8:5,
  8:17, 16:10,
  25:13, 40:16,
  41:18, 41:20,
  41:25, 63:7, 71:20
Section 25:21,
  31:15, 31:17,
  31:19, 32:6, 32:7,
  33:23, 34:17,
  35:11, 35:15,
  35:20, 35:22,
  36:2, 36:12, 49:5,
  54:19, 56:19, 66:8
Sections 30:20,

31:16
seeing 45:17, 74:15, 75:3
seek 16:3, 19:22, 33:21, 42:3
seeking 13:11, 30:21
seeks 15:13, 18:1
seem 51:3
seemed 31:23
seems 27:13, 47:2, 49:20, 53:3
seen 30:15, 47:1
send 74:7
sense 47:6
sent 10:8, 38:3
sentence 60:7
separate 51:16
serious 18:20, 70:4
serve 55:7
serves 35:22
services 26:16, 26:21, 34:25
set 7:8, 38:7, 38:18, 55:2, 63:19, 73:5, 73:20
seven 22:7, 25:13
seven-day 28:11
several 10:1, 20:10
shall 16:16, 66:10
sheet 50:7, 52:6, 52:8, 52:11, 59:11, 60:2, 60:5, 60:8
shield 44:15
shorter 62:18
showing 54:22
shown 24:17
shows 28:23, 29:10
side 40:13
significance 14:20
significant 13:20, 64:17
significantly 13:4, 21:3, 29:14, 29:16, 29:22, 30:19, 37:24, 39:9
similar 47:3
similarly 46:24
simple 16:17
simply 16:16, 19:16,

20:8
sincerely 74:23
single 20:2, 38:1
sir 71:11
sites 7:16, 9:18
situation 23:7, 23:16, 26:22, 27:5, 27:19, 28:2, 43:6, 44:9, 44:17, 45:23, 46:5, 46:18, 55:23, 64:25
situations 27:3
six 7:20, 41:23, 57:25, 58:9, 69:11
Sixth 57:25
slightly 28:10
slow 10:9
smaller 24:2
sold 72:11
sole 25:20, 26:3, 32:9
solely 53:20, 70:18
solicitation 9:17
solution 26:8, 36:15
somebody 44:11
somehow 49:24
somewhat 35:3
soon 40:2, 72:20
Sorry 14:11, 21:11, 21:16, 24:23, 28:18, 68:5, 71:11, 71:19, 71:20
sort 20:11, 57:4
sought 17:14, 22:19, 44:22
sound 9:2
Spanish 9:11
speaker 71:22
speaks 49:11
Special 5:27, 43:6, 43:16, 44:19, 45:6, 45:25, 46:19, 66:19, 71:13, 71:24, 72:5
specific 27:15, 34:23, 49:7, 49:12, 50:4, 50:5, 50:6, 50:13, 58:3,

68:19
specifically 50:8, 50:11, 51:9, 52:11, 69:12
speculation 30:6
sped 22:24
spend 20:17, 35:8
spending 27:24
spent 17:17, 23:22, 37:25
spirit 27:14
split 67:25
splitting 41:8, 68:21, 70:2
squarely 56:13
stability 37:12
staff 8:24, 74:23
STAFFORD 5:5, 9:23, 9:24, 10:10, 10:12, 11:16, 72:25, 73:1, 73:19, 74:6, 74:12
stage 64:22
stand 32:3
stand-alone 67:24
standard 15:1, 20:22, 21:18, 21:20, 21:23, 32:15, 38:12, 38:13, 38:15, 38:17, 61:14, 65:11
Standing 72:2
stands 28:10
start 27:2, 32:5, 53:2, 71:20
started 8:9, 41:13
starve 26:18
state 67:5
stated 51:12, 72:3
statements 39:12
States 1:1, 4:41, 4:43, 17:4, 31:1, 49:19, 51:23, 53:10, 60:10, 63:9, 66:11, 76:7, 76:8
statute 16:15, 18:24, 19:5, 19:10, 19:17,

19:19, 25:13,
32:8, 32:10, 33:5,
33:14, 33:16,
34:5, 38:16,
38:21, 45:8, 61:6
Statutes 21:14,
31:18, 32:20,
32:22, 32:23,
33:12, 38:22,
38:24, 50:1
statutory 27:15,
28:1
stay 15:3, 27:11,
44:5, 44:22, 74:20
stayed 44:6, 45:5
stays 45:1
stenography 5:48
step 45:13, 45:14,
45:15
Stephen 5:39
Steve 5:9, 7:11
stick 25:20
stop 59:5
strike 33:6, 35:10,
35:25, 36:12,
39:14
strikes 12:9
stripped 49:17
stripping 26:11
strong 28:5
struck 26:23, 33:16,
34:6, 55:1
structure 12:17,
27:14
subject 35:2, 49:7,
52:21, 53:14,
57:17, 59:3, 59:9,
74:8
submissions 24:7
submit 8:15, 18:12,
28:23, 29:11,
38:14, 51:3,
52:17, 73:16
submitted 10:15,
10:17, 28:22,
30:17
submitting 13:11,
28:9
substantial 63:22
substantive 37:13,

38:6
sued 62:15
sufficient 8:24, 9:5
suggested 38:12
suggestion 59:12
suggestions 9:12
suggests 51:10,
51:12, 70:6
suit 52:13, 54:3,
55:20, 56:4
suits 70:23
sum 34:23
Summary 14:7, 19:9,
23:8, 25:6, 28:20,
44:25, 62:9,
62:19, 63:11,
63:19, 63:20
summer 14:2
superb 74:25
supplemental 10:15,
10:17
supplier 68:5
support 8:24, 47:16,
71:25
supporting 74:25
supports 47:10, 70:9
Supreme 65:11
Surreply 41:21,
58:1, 58:9
SUSHON 5:22, 24:12,
24:20, 24:23,
25:1, 25:5, 26:1,
27:16, 30:13,
31:5, 32:5, 34:2,
34:16, 36:5, 36:9,
36:22, 36:23,
39:13, 40:4
Susman 52:25
sustained 10:25,
11:6, 11:10
Swain 4:40, 76:7
swarm 73:12
sword 44:14
sworn 28:8
System 2:13, 4:10

< T >
T. 5:8
table 40:19

tails 55:15
talked 69:12
talks 46:6
taxes 26:16
Taylor 4:40, 76:7
technical 60:22
ten 46:14, 63:4
ten-minute 7:25
ten-year 68:11
terms 26:2
testing 68:5
text 19:17, 19:19
thereafter 62:17
They've 23:23,
28:14, 33:8,
42:25, 46:14,
47:8, 50:7, 55:24,
56:16, 65:7,
65:21, 70:6, 70:8
thinks 31:9, 32:19
third 8:6, 29:13
thoughtful 8:16
thousand 35:5, 35:8
three 7:21, 7:23,
11:25, 29:20,
40:11, 41:13,
57:25
timeli 58:18
timeliness 57:10,
58:11, 58:13,
58:16, 58:19,
59:8, 60:15,
60:23, 61:13,
65:4, 65:6, 65:21,
69:5, 69:9
timely 13:2, 65:21
Timothy 5:11
Title 1:8, 1:25,
2:6, 2:25, 3:6,
3:23, 7:6, 33:13,
35:14, 44:3, 46:2,
47:17, 48:24,
49:8, 49:20, 51:5,
52:13, 52:15,
53:7, 53:19, 67:2,
67:13, 67:14,
67:21, 68:24,
68:25, 70:14
today 10:7, 10:18,
10:20, 11:3,

11:13, 23:10,
24:1, 24:8, 25:15,
31:15, 32:12,
37:3, 40:12,
54:17, 54:20,
56:18, 56:21,
62:6, 73:23, 74:5,
74:11
together 12:13,
15:24, 36:15
took 13:9
tools 27:18
tortured 63:6
total 11:24, 16:19,
41:6
totally 37:7
touch 9:3, 10:9,
59:13, 60:22, 62:5
Towers 7:24, 8:5
traffic 7:15, 8:3,
8:6
transaction 43:25,
68:18
transactions 19:14,
35:18
Transcript 5:48,
71:21, 76:4
transcription 76:5
transfer 48:25,
66:24, 67:16,
68:6, 68:11, 72:8
transfers 68:15,
72:11
Transportation 2:33
travels 75:2
tremendous 25:10
trial 48:10
tries 56:4, 56:5
Tristan 5:28, 71:23
Truck 58:8
true 23:3, 23:15,
23:17, 28:20,
46:10, 54:24,
62:10, 71:3, 76:5
try 28:3, 28:13,
33:14, 36:15,
45:19, 51:20
trying 10:22, 27:25,
29:17, 59:17,
74:15

turn 28:13, 30:20,
61:15
Turning 34:17
turns 56:8, 61:16
Two 14:19, 16:8,
24:16, 25:18,
29:13, 30:15,
33:18, 33:19,
36:13, 41:24,
49:6, 49:9, 50:20,
53:5, 62:7, 70:6
two-fold 43:1
two-week 39:20
two. 28:25
type 15:2, 52:9


< U >
UCC 10:12
ultimately 31:24,
39:22
unable 26:20
unanimity 42:14
unauthorized 55:20,
56:4
unbudgeted 37:15
uncontested 9:22,
10:1, 73:23
underlying 54:5
undermine 12:21
undermines 13:13
understand 43:16,
43:18, 45:22,
51:11, 60:24
understanding 67:1,
67:12
understands 27:4,
28:5
undisputed 16:6,
25:8
unenforceable 18:3,
19:24
unit 9:11
United 1:1, 4:41,
4:43, 31:1, 49:19,
51:22, 53:9,
60:10, 63:9,
66:11, 76:6, 76:8
Universal 58:8
Unless 36:1, 36:20,

39:11, 50:13
unnecessary 52:2
unquestionably 57:7
unreasonable 32:17
Unsecured 5:14
until 10:16, 56:24
untimeliness 58:5
unusual 43:5
urges 22:21
urging 33:8
using 49:21, 60:8


< V >
v. 4:16, 4:31
vacation 29:8
value 72:10
various 38:15, 43:11
Vazquez 4:18, 25:10
vehicle 38:20
version 9:11
versus 36:2, 72:5
viable 14:4
vice 28:14, 31:10
video 74:22
view 16:17, 17:6,
17:9, 17:13,
18:11, 18:21,
19:18, 21:8,
21:18, 23:21,
55:5, 59:20
VII.1 74:5
violated 14:6, 47:13
violates 34:9
violation 16:8,
17:13, 44:1,
44:10, 46:9
violations 43:13
virtue 19:1, 28:13,
31:10
visiting 49:10
Vitol 4:33, 5:46,
40:6, 41:24, 42:1,
42:13, 42:23,
43:11, 43:13,
43:23, 44:4, 44:7,
44:21, 50:23,
52:25, 53:1, 68:9,
68:18
void 22:9, 37:5,

37:6, 45:4
voluntary 54:13,
  54:16

< W >
W. 5:11
wait 40:20
waive 45:8
waived 42:21, 53:23,
  56:21, 57:12,
  57:15, 57:21,
  58:7, 58:17,
  58:18, 59:1, 59:9,
  60:15, 61:2,
  61:13, 61:24,
  62:25, 63:24, 65:8
waiving 46:20
wake 26:23
walk 7:25, 14:14,
  31:20
Walker 76:13, 76:14
Wanda 4:18
wanted 53:2, 71:14,
  71:17, 71:25
wants 31:8, 36:1
wavered 46:14
WAXMAN 5:10, 11:20,
  11:21, 11:22,
  12:3, 12:6, 12:8,
  14:13, 15:4, 15:6,
  15:10, 19:6,
  20:14, 20:24,
  21:11, 21:16,
  22:2, 22:6, 22:13,
  22:23, 23:1,
  23:15, 24:5,
  24:10, 36:24,
  37:1, 39:18,
  39:25, 40:3
ways 50:20
Wednesday 10:5
week 73:17
weeks 36:13
weigh 48:19
weighed 48:1, 48:12,
  48:14
weighing 64:8
whatsoever 32:21,
  59:22

wheel 52:4
wherein 28:16
whether 13:4, 14:25,
  18:11, 20:21,
  21:2, 21:21,
  41:16, 42:1,
  43:20, 48:10,
  48:14, 56:8, 61:16
whichever 14:16
whimsical 35:3
William 5:22
willingly 54:6
win 55:15
wind 59:19
wish 75:2
within 18:8, 18:11,
  38:13, 38:14,
  44:13, 52:14,
  56:15, 57:18,
  57:22, 58:7, 59:5,
  61:14, 63:25,
  65:18
without 13:11, 18:7,
  19:12, 29:6, 45:9
withstanding 16:6
WITNESSES 6:3
word 18:13
work 8:11, 9:2,
  12:13, 13:17,
  16:22, 23:7, 28:4,
  36:15, 74:17,
  74:18, 74:25
working 26:20,
  29:15, 37:11
works 31:22
worse 36:19
written 18:23, 24:7,
  37:8

< Y >
yard 25:20
yardstick 26:4
year 20:2, 26:24,
  29:24, 62:12,
  70:14, 70:23, 71:1
years 20:5, 23:11,
  46:14, 63:4, 63:21
yesterday 7:16,
  73:3, 73:10

York 5:25, 5:29,
  5:36, 5:40, 25:3,
  42:2, 71:12,
  74:21, 74:24
yourself 35:8