UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:   PROMESA
Title III

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of   No. 17 BK 3283-LTS

THE COMMONWEALTH OF PUERTO RICO,   (Jointly Administered)
et al.,

    Debtors.[1]

------------------------------------------------------------x

NOTICE OF CORRESPONDENCE RECEIVED BY THE COURT

    The Court has received and reviewed the attached correspondence, described below, from interested persons in the above-captioned cases. Although the Court cannot respond individually to all of those who have expressed their thoughts or concerns, the Court is deeply mindful of the impact of the fiscal crisis on lives, institutions, and expectations, and of the importance of the issues that are raised in these unprecedented cases.

    1.    Letter dated March 6, 2020 from Cate Long.

Dated: March 11, 2020

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).



March 6, 2020

Honorable Laura Taylor Swain
Honorable Barbara J. Houser
Guy G. Gebhardt, U.S. Trustee

Dear Judge Swain, Judge Houser and Trustee Gebhardt:

Unfortunately it appears necessary that I take on the role of protecting retail bondholder rights and due process in the Puerto Rico bankruptcy since their interests have been repeatedly abused by the predation of hedge funds involved in debt restructuring.

I do so willingly given the high stakes for individual investors and because the process in Puerto Rico will serve as a template for states such as Illinois, Connecticut, New Jersey and Kentucky if they find that they can no longer support their long term liabilities and essential services with tax collections.

I won't rehash the refusal of the court and mediation team to allow an individual bondholder, Peter Hein, to participate in mediation, because numerous court filings[1] attest to his request to participate and represent the interest of individual investors of which at least 1,640 filed notices of participation[2] with the Title III court.

I have previously alerted the court and mediation team to the massive insider trading that occured as parties to mediation bought and sold hundreds of millions of GO and PBA bonds that they were directly setting the terms for repayment with no disclosure of information to the public. This, of course, is the classic definition of insider trading and no bankruptcy rule, case

---

[1] Response to Motion Re: 7154 MOTION / Amended Motion of (I) Financial Oversight and Management Board, Acting Through Its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, filed by Peter C. Hein, pro se, Case:17-03283-LTS, Docket 7540, June 17, 2019

[2] Amended Motion Of (i) Financial Oversight And Management Board, Acting Through Its Special Claims Committee, And (ii) Official Committee Of Unsecured Creditors, Under Bankruptcy Code Sections 105(a) And 502 And Bankruptcy Rule 3007, To (a) Extend Deadlines And (b) Establish Revised Procedures With Respect To Omnibus Objections To Claims Of Holders Of Certain Commonwealth General Obligation Bonds Issued In 2011, 2012 And 2014, And For Related Relief, Case:17-03283-LTS Docket 7154, May 29, 2019, Page 3

1

law or statutory provision in Promesa gives hedge funds those rights to trade on material nonpublic information regardless of whether mediation is overseen by federal judges or not[3].

Additionally numerous parties, who hold substantial quantities of GO and PBA bonds stated on the record at the March 4, 2020 omnibus hearing that they were denied the right to participate in mediation to reach a settlement on those bonds.

Basically everyone except the hedge funds, who were massively inside trading the bonds being settled, were excluded from mediation although the excluded parties had filed motions and objections regarding those bonds.

I am now writing to document the solicitation that the so-called Lawful Constitutional Debt Coalition is engaged in of the proposed plan of adjustment by running radio and newspaper ads and placing editorials in Puerto Rico newspapers to gather support for their inside traded deal prior to the court approving a disclosure statement.

This was first reported by Abner Dennis of LittleSis.org[4] :

> Of these groups, the Lawful Constitutional Debt Coalition has been paying for ads both on the radio and in newspapers, such as El Nuevo Día, in favor of the Board's adjustment plan.

I have attached the paid ad in El Nuevo Día and am collecting more evidence of their solicitations to provide a fuller report of the restructuring process.

11 U.S. Code § 1125 states that plan solicitation (or advocacy) cannot occur until the Disclosure Statement is determined to provide adequate information:

> (b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

The court has scheduled a June hearing to determine the adequacy of the Disclosure Statement.

---

[3] Settlement Talks In Chapter 11 After "WAMU": A Plan Mediator's Perspective, Hon. James M. Peck, American Bankruptcy Institute Law Review, Winter 2014
[4] "Wall Street vultures razed COFINA, and now they're coming for the central government", Eyes on the Ties, LittleSis.org, March 5, 2020

2

In a March 5, 2020 editorial[5] in El Nuevo Día Matt Rodrigue, Miller Buckfire CEO and advisor to the so-called Lawful Constitutional Debt Coalition, solicited plan acceptance and asserts that GO/PBA bondholders are taking a 60% haircut.

> Taking a step back, the significant debt cut is the direct result that government bondholders with the highest payment priorities accepted cuts that amount to approximately 60%.

Of course the debt restructuring terms that Mr. Rodrigue helped negotiate say no such thing.

From the presentation[6] filed by the Financial Oversight and Management Board on their own website we see the following terms for GO/PBA recoveries:

### Summary of Recoveries to GO / PBA Bondholders

($ in millions)

| | Claim[1] | Consideration | | Recovery | |
| --- | --- | --- | --- | --- | --- |
| | | Cash[2] | New Bonds | Total | % |
| **GO:** | | | | | |
| Pre-2011 GO | $5,843 | $819 | $3,556 | $4,375 | 74.9% |
| 2011 GO (D / E / PIB) | 646 | 89 | 387 | 477 | 73.8% |
| 2011 GO | 476 | 63 | 273 | 335 | 70.4% |
| 2012 GO | 2,939 | 385 | 1,669 | 2,054 | 69.9% |
| 2014 GO | 4,182 | 512 | 2,222 | 2,733 | 65.4% |
| **PBA:** | | | | | |
| Pre-2011 PBA | 2,661 | 883 | 1,181 | 2,065 | 77.6% |
| 2011 PBA | 1,335 | 441 | 584 | 1,026 | 76.8% |
| 2012 PBA | 674 | 217 | 270 | 487 | 72.2% |
| **Total** | **$18,757** | **$3,409** | **$10,142** | **$13,551** | **72.2%** |



I've reviewed the recovery terms numerous times and don't see any haircuts that approximate 60% as represented in the El Nuevo Día oped. Mr. Rodrigue does not represent all creditors and cannot speak to what they will accept. So Mr. Rodrigue has made material misrepresentations about the proposed plan of adjustment in addition to soliciting support for the plan prior to the court making a determination of adequate information.

---

[5] "The right debt reduction plan", Matt Rodrigue, Oped, ElNuevodia, March 5, 2020 (in Spanish)
[6] FOMB, PSA Announcement Presentation, February 9, 2020, page 15

3

I expect this material misrepresentation, which is likely securities fraud, to be ongoing since no one appears to have interest in adhering to the bankruptcy code, securities law or Promesa.

Very truly yours,

Cate Long

# El Acuerdo para el Alivio de la Deuda

reduce inmediatamente la carga y libera al futuro del peso de la deuda.



$35,000 M — Antes de Título III
$11,000 M — Con nuevo acuerdo

- **Reduce la deuda** del gobierno de $35 billones a menos de $11 billones, un 70% menos
- **Baja el pago anual** a menos de la mitad, permitiendo que el ahorro se use en servicios e inversiones necesarias, inmediatamente
- **Reduce la duración de los pagos** de 30 años a 20 años, dándole a la próxima generación un mejor futuro
- Contabiliza la mal llamada "deuda extra-constitucional" para determinar el límite de la deuda y **prevenir las malas prácticas del pasado**
- Honra la palabra empeñada por nuestro pueblo y nuestra constitución; y **pone controles al límite constitucional de la deuda,** para que los políticos del futuro no puedan volver a embrollar al país
- **Protege los fondos asignados** para servicios del gobierno y el pago de pensiones
- **Ahorra cientos de millones** en gastos de abogados y asesores de la Junta y del gobierno de Puerto Rico

Lo más importante, el Acuerdo para el Alivio de la Deuda nos permite salir de la quiebra y acabar con la Junta de Supervisión Fiscal. Es lo que necesitamos para despejar la incertidumbre y volver a traer inversión y crecimiento a Puerto Rico.

# ¡Salgamos de la Quiebra Ya!

▲ Coalición de Deuda Constitucional Legítima



# POR FIN,
## un futuro con posibilidades

Hace cuatro años entramos a un proceso de quiebra con una carga insostenible, el futuro hipotecado y poca esperanza para la nueva generación.

Hoy, por fin, se abre un nuevo camino. Un futuro lleno de posibilidades. Un futuro de inversión y crecimiento.