**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>      Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**JOINT STATUS REPORT OF MOVANTS AMBAC ASSURANCE CORPORATION,
ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP.,
NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, AND FINANCIAL
GUARANTY INSURANCE COMPANY, AND RESPONDENTS THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO, AS
REPRESENTATIVE OF THE COMMONWEALTH OF PUERTO RICO, AND THE
PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY WITH
RESPECT TO DEPOSITION DISCOVERY CONCERNING THE LIFT STAY
PRELIMINARY HEARING ISSUES**

To the Honorable United States Magistrate Judge Judith Gail Dein:

Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal

Corp, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance

Company (collectively, "Movants") and Respondents the Financial Oversight and Management

Board for Puerto Rico ("Oversight Board"), as representative of the Commonwealth of Puerto

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

Rico ("<u>Commonwealth</u>" or "<u>Debtor</u>") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("<u>PROMESA</u>"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("<u>AAFAF</u>," and together with the Oversight Board, the "<u>Government Parties</u>"),[2] respectfully submit this Joint Status Report in response to the Court's order dated March 5, 2020 [ECF No. 12080] regarding Movants' motions to compel discovery in connection with the preliminary hearing issues relating to Movants' lift-stay motions.

## I.   JOINT STATUS UPDATE REGARDING LIFT-STAY DISCOVERY

### A.   Procedural Background

1.      On February 14, 2020, this Court (Swain, J.) issued an Order [ECF No. 11057] (the "<u>Adjournment Order</u>") granting the *Urgent Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company to Adjourn Hearing on Motions for Relief from the Automatic Stay and Extend Deadlines for Replies in Support of Motions for Relief from the Automatic Stay* [ECF No. 10841] filed by Movants.

2.      The Adjournment Order adjourned until April 2, 2020 the preliminary hearing on *Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Financial Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection* [ECF No. 10102] (the "<u>HTA Lift-Stay Motion</u>"), *Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and the Bank of New York Mellon's Motion Concerning Application of the Automatic Stay to the revenues Securing the CCDA bonds* [ECF No. 10104] (the "<u>CCDA Lift-Stay Motion</u>"), *Amended*

---

[2] Movants and the Government Parties are collectively referred to as the "<u>Parties</u>."

*Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured
Guaranty Corp., Assured Guaranty municipal Corp., and U.S. Bank Trust National Association,
Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds*
[ECF No. 10602] (the "PRIFA Lift-Stay Motion" and together with the CCDA Lift-Stay Motion
and HTA Lift-Stay Motion, the "Lift-Stay Motions").

3.        In the Adjournment Order, Judge Swain allowed "limited discovery relating to
factual representations in paragraphs 77, 81, and 92, and Exhibit A" in the opposition to the HTA
Lift-Stay Motion,[3] "paragraphs 39-41" in the opposition to the CCDA Lift-Stay Motion,[4] and
"paragraphs 29, 38, 69, 103, and 124-25" in the opposition to the PRIFA Lift-Stay Motion.[5]
Adjournment Order at 2.

4.        Following Judge Swain's ruling, the Parties met and conferred and reached
agreement on many of Movants' discovery requests, but reached certain impasses.  On February
24, 2020, Movants filed motions to compel the production of certain documents and Rule 30(b)(6)
deposition testimony in connection with the April 2 preliminary hearing issues.  The Motions to
Compel were fully briefed on March 2, 2020,[6] and the Court heard argument thereon on March 4,
2020.

5.        On March 5, 2020, the Court, for the reasons discussed at the March 4 hearing,
issued an order allowing in part and denying in party the Motions to Compel [ECF No. 12080]

---

[3] *See Opposition of Financial Oversight and Management Board for Puerto Rico to Motion of Assured Guaranty
Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Financial Guarantee
Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative,
Adequate Protection* [ECF No. 10618] ("HTA Opposition" or "HTA Opp.").

[4] *See Opposition of Commonwealth of Puerto Rico to Motion Concerning Application of Automatic Stay* [ECF No.
106015] ("CCDA Opposition" or "CCDA Opp.").

[5] *See Supplemental Opposition of Commonwealth of Puerto Rico to Amended PRIFA Bondholder Motion to Lift
Automatic Stay* [ECF No. 10611] ("PRIFA Opposition" or "PRIFA Opp.").

[6] *See* ECF Nos. 11948 (the Government Parties' omnibus opposition) and 11958 (Movants' omnibus reply).

3

(the "<u>Order</u>").  In the Order, the Court directed the Parties to meet and confer regarding the scope

and number of Rule 30(b)(6) depositions, and to submit a joint status report to the Court by March

11, 2020 outlining the result of the meet and confer, and describing the Parties' positions on

disputed issues.  *Id.* at 5.

**B.    Update on Recent Meet-and-Confers**

6.    Following this Court's ruling, the Parties have made good progress on discovery.

The Parties have also met and conferred, including as recently as March 9 and today, and

exchanged written communications regarding the Rule 30(b)(6) deposition topics, reaching

agreement on some.   There remain, however, certain areas of disagreement between the

Government Parties and Movants.   Although the Parties anticipate continuing this good-faith

dialogue on open issues, there remain certain areas of disagreement that the Parties seek to bring

to the Court's attention in the interest of time.   Those areas of agreement (or subject to further

negotiation) are set forth below, followed by the areas of remaining dispute.

7.    *Deposition Topics.*  In a letter dated March 8, 2020, the Government Parties agreed

to the following topics:

- The historical (from January 1, 2015) and present Flow of Funds for the Rum
Taxes, including:
  a. whether the GDB account identified in PRIFA_STAY0000281 and -284, and/or
  the Banco Popular account identified in PRIFA_STAY0000285, identified the
  total amount of money held by PRIFA and/or in the Puerto Rico infrastructure
  Fund; and
  b. whether the GDB account identified in PRIFA_STAY0000281 and -284, and/or
  the Banco Popular account identified in PRIFA_STAY0000285 comprise the
  Puerto Rico Infrastructure Fund and, if not, which Account(s) do/does.
- The assertion that Rum Taxes are or have been "commingled" with other funds in
the TSA, as set forth in, among other places, Paragraphs 29 and 103 of the PRIFA
Lift-Stay Opposition.
- The historical (from January 1, 2015) and present flow of Funds for the Hotel
Taxes.

4

- All Accounts into which Hotel Taxes are received or deposited.  This includes the creation, establishment, opening, closing, or modification of each Account; funds received, deposited, or withdrawn from each account; and any aspects or features of Accounts that make them "special," "for the benefit of the [CCDA] bondholders," or "in the name of [CCDA]," as referenced in the Hotel Occupancy Tax Act and Bond Documents.

- The historical (from January 1, 2015) and present Flow of Funds for the Toll Revenues and Excise Taxes.

- The budgeting and allocation treatment of the Excise Taxes and Toll Revenues.

March 8 Ltr. at 3-4.

8.    Additionally, in a follow-up email on March 10, 2020, the Government Parties agreed to provide a witness to testify regarding the documents produced to date, including "general testimony regarding AAFAF's collection efforts," but the Government Parties noted that they would object to the extent that collection questions turn the deposition into "discovery on discovery."  The Government Parties also stated that, in the interest of efficiency, any questions Movants have regarding the Government Parties' collection efforts should be directed to counsel in the first instance.  Movants do not intend to turn the deposition into "discovery on discovery," but reserve all rights to ask sufficient questions to understand the nature and scope of the Government Parties' produced documents and collection efforts.

9.    Lastly, the Government Parties have offered to address one HTA topic ("Control over deposit Accounts") though a stipulation.  Subject to their right to ask reasonable and tailored follow-up questions, Movants are open to this proposal and continue to discuss it with the Government Parties in the hopes that the Parties can reach agreement, while reserving their respective rights in the event they are unable to do so.

10.    *Timing of Deposition(s).*  AAFAF proposed that March 18, 2020 be designated as a date for deposition testimony, to be taken in New York, New York.  The Government Parties believe that March 18, 2020 is appropriate in light of the March 16, 2020 deadline for substantial

5

completion of discovery and the March 23, 2020 deadline for the filing of Movants' replies in
support of the Lift-Stay Motions.  As the situation with Covid-19 is rapidly evolving (even from
earlier today, when AAFAF made its proposal), the Government Parties note that any deposition
ought to be subject to reasonable logistical arrangements designed to minimize travel of counsel
and witness and reflect appropriate social distancing guidance from health authorities.

11.     Movants are considering the Government Parties' proposal but note that, as of the
date of this Joint Status Report, Movants believe that the production is materially incomplete, and
that they do not have documents Movants contend are critical relating to PRIFA and HTA,
including account opening documents which Movants understand the Government Parties are
seeking from the relevant banking entities.  Nor do Movants know the volume of the remaining
production, when they will receive it relative to the proposed March 18 deposition date or the
extent to which the documents will be in Spanish (and therefore must be translated).  Movants note
that it can take several days at a minimum to obtain a certified translation of Spanish language
documents.  The Government Parties have not said if these documents will be produced, and, if
so, when, other than to state that they continue to hope for substantial completion of their
production by March 16.  In addition, Movants note that a number of questions they have posed to
the Government Parties, and which the Government Parties agreed to answer, still have not been
addressed—including several that Movants consider to be critical foundational questions (which
were put to the Government Parties weeks ago), such as which accounts comprise the Puerto Rico
Infrastructure Fund or the Tourism Company Transfer Account (*i.e.*, accounts for which Movants
have a lien on the account and/or the funds therein).  Movants believe that all of the above
information is required before they can commit to a deposition on March 18 and would request
responses no later than March 13, 2020, which is when the Government Parties require a response

6

to the proposed deposition date. AAFAF would like confirmation of this deposition date immediately so that counsel and witnesses can prepare for the deposition and/or avoid unnecessary travel if the Movants do not intend to move forward on this date. Movants have agreed to discuss this issue with AAFAF further as soon as practicable, and in any event, no later than March 13, 2020.

## II.   AREAS OF DISPUTE REGARDING RULE 30(B)(6) DEPOSITION TOPICS.[7]

12.   The Parties have not been able to reach agreement regarding certain proposed deposition topics, as set forth below.[8]

### A.   Overall Summary of the Parties' Disputes on Deposition Topics

#### 1.   Movants' Position

13.   The nub of the Parties' various disputes is a difference of opinion as to what constitutes a factual assertion as opposed to a legal conclusion. All Parties agree that it is not necessary or appropriate to ask questions regarding ultimate legal conclusions of a fact witness. But in the Government Parties' view, Movants are entitled to ask only questions regarding *what* happened—not *why* certain events transpired in the manner in which they ultimately did. The Government Parties' view is that merely asking, as a matter of historical fact, why the Commonwealth took certain actions—and what institutional views and understanding they were based on—is improper. Movants contend that such questions are properly understood as questions regarding historical facts, not the ultimate legal conclusions that the Court will decide. Moreover,

---

[7] The topic numbers used herein refer to the topics listed in Movants' notice of deposition of the Oversight Board, PRIFA, HTA, and the Tourism Company.

[8] Movants note that the Parties are still negotiating the nature and scope of document and deposition discovery, and document production is ongoing. Movants therefore reserve all rights to seek additional discovery and the Court's intervention regarding any future and outstanding disputes and modifications to the discovery schedule. The Government Parties assert that additional discovery requests at this point in the process would be inappropriate, particularly in light of the limited issues before the Court at the Preliminary Hearing. The Government Parties reserve all rights with respect to any forthcoming additional discovery requests or requests for scheduling modifications.

*why* the Government Parties took actions alleged in the paragraphs identified by Judge Swain is highly relevant to the issues to be tried at the April 2nd preliminary hearing.

14.    Paragraph 40 of the CCDA Opposition, which Judge Swain identified as within the scope of discovery, illustrates the core of the dispute.  In the three sentences in that paragraph, the Oversight Board asserted:

> In late 2015, however, the Tourism Company ceased depositing funds into the Transfer Account and instead retained those funds.  As discussed below, prior to PROMESA, this retention of Occupancy Tax Revenues was based on various Commonwealth emergency orders authorizing the retention of these funds.  After the enactment of PROMESA, the continued retention of the Retained Occupancy Tax Revenues was based on PROMESA and its preemption of inconsistent, pre-existing Commonwealth laws.

CCDA Opposition ¶ 40.  Judge Swain's identification of that paragraph—all three sentences of it, not just the first—is confirmation that questions about the historical bases the Commonwealth had for taking certain actions is within the scope of discovery that Judge Swain contemplated.  Why the Commonwealth did what it did is not a legal assertion or an opinion; it is a fact.  Whether the Commonwealth's actions were *lawful* or not is, of course, a separate, legal question—the ultimate issue that the Court will resolve, and one on which Movants are not seeking deposition testimony. But Movants are entitled, and intend only, to ask questions regarding the historical facts of why, at various points in time, the Commonwealth did what it did regarding the flow of funds.  This is critical information for the preliminary hearing.  For example, to the extent that such inquiries reveal that certain arguments now asserted are *post hoc* litigation rationales with no basis in historic facts, that has clear consequences for the Court's consideration of those arguments—and ultimately the Court can then decide, on the basis of a complete factual record, whether those arguments are valid defenses or not.

15.    Moreover, the Government Parties' attempt to limit topics would narrowly constrict lines of inquiry and risks impairing factual questioning into basic facts like what decisions led to

8

the opening of various accounts for the purpose of implementing the enabling acts and bond documents, and decisions about the classification of the various revenue streams in the Commonwealth's and its instrumentalities' budgets and financial statements.  Each of those areas of inquiry, and others like them, are core issues of dispute between the Parties, and were specifically identified by Judge Swain as within the scope of discovery.  Movants have repeatedly made clear that they do not intend to seek—and the Government Parties retain the right to object to—questions that would elicit opinion testimony as to ultimate legal conclusions.  But Movants must be able to push beyond the superficial testimony about what happened and when in order to properly inquire into how the various statutes and bond documents were implemented, why and when changes were made, and who and with what authority made them.  Movants' need for this critical testimony informs their positions as to these topics and the other disputed items below.

16.     The Government Parties' assertion that Movants are seeking improper "state-of-mind" discovery simply conflates the issue of "state-of-mind" (*i.e.*, the *subjective* views and understandings of particular *individuals*) with the question of what *institutional* knowledge and *objective* understanding the Commonwealth and its instrumentalities reached on critical factual issues identified by Judge Swain as within the proper scope of discovery.  Contrary to the Government Parties' assertions, Movants have taken pains to abide by the Court's conclusion that "[i]ndividuals' understanding of things is not the issue" (March Omni Tr. 230:21-22), and Movants have made clear that they are not seeking to ask questions about stray comments or subjective understandings that any particular individuals might have had.  Rather, Movants are seeking the institutional knowledge of the Commonwealth and the facts relied upon by the Commonwealth to alter the flow of funds from its historical course.  Movants are entitled to know whether actions taken by the Commonwealth are arbitrary and capricious or based upon sound, objective facts.  A

9

Rule 30(b)(6) deposition, by definition, is an inquiry into the "information *known* or reasonably available to the organization" being deposed.  (Emphasis added.)  Thus, every Rule 30(b)(6) deposition is necessarily directed to the institutional knowledge of the entity being deposed—as distinguished from the state of mind of any particular individual.  This Court has previously recognized such value of institutional knowledge in a 30(b)(6) deposition.  *See Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 437 (D.P.R. 2016) (concluding that the requesting party's demand for a 30(b)(6) deposition seeking "details from PRHTA regarding the portions of the contract that PRHTA believes definitively establish its ownership of the [disputed entity]" was proper.).

### 2.   Government Parties' Position

17.     When this Court ruled it would allow 30(b)(6) deposition testimony, it explained that the testimony "has to be limited to the facts that are in dispute.  And the facts are really the factual questions about money coming in.  Where does it come from? Where does it go generally? What's the structure?"  (March Omni Tr. 262:21-24.)  This Court further instructed Movants: "So you can ask about the documents that are produced, but I'm going to assume that you are not going to waste a 30(b)(6) deposition on a specific transfer that you can't figure out. . . . This is going to be about the structure of the financial arrangements.  I don't know how else to put it."  (*Id.* 263:3-10.)

18.     In response to these instructions, AAFAF has agreed to provide a witness to testify on behalf of AAFAF, HTA, PRIFA, and the Tourism Company on those topics put forth by the Movants that address the questions delimited by the Court at the March 4 hearing.  The Movants, by contrast, have not materially changed the deposition topics they served two days before the omnibus hearing.  The Movants still insist on broad testimony regarding the entities' subjective understandings of, among other things, why the funds flowed the way they did, including whether

10

Government officials understood the flow of funds to have changed as a result of Executive Orders issued by the Governor of Puerto Rico, or as a result of the Oversight Board's certified Fiscal Plan. *See infra* Sections II.A-B.  But this Court expressly stated at the omnibus hearing that "state of mind is not an issue. Individuals' understanding of things is not the issue."  (*Id.* 230:19-21.) Movants try to side-step this clear instruction by claiming they are seeking "institutional" state of mind, instead of "individual" state of mind.  This is a distinction without a difference.  If an institution has a state of mind it is because individuals within the institution have a state of mind. *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 190 (D. Mass. 2007) ("CBS, as a corporation, can have no knowledge, belief, or state of mind of its own. Rather, some individual(s) at CBS must have had the requisite state of mind for willful infringement").  Movants' citation to Rule 30(b)(6) and *Transcore Atl.* does not change the fact that they are seeking quintessential state of mind testimony that this Court disallowed.  A Rule 30(b)(6) witness asked what a company thought a statute or contract meant at a particular point in time is by definition being asked what the individuals at the company thought at a particular point in time.

19.     Movants also seek testimony on the ultimate legal issue of who has rights to the amounts in each particular account.  AAFAF has agreed to produce a witness to testify regarding factual information, based upon the documents located and produced.  But anything beyond that improperly seeks a legal conclusion (opinions, not facts) from a fact witness.  As this Court recognized at the omnibus hearing, discovery into parol evidence regarding rights allegedly granted under the bond documents or statutes is not appropriate for the issues to be heard on April 2.  *See* March Omni. Tr. 230:22-231:2 (denying discovery into communications because no party is arguing ambiguity that can be resolved by communications).

20.     In short, this Court's instructions were abundantly clear.  Deposition testimony should be limited to the mechanics and structure of the flow of funds, and clarifying questions about the documents already produced.  AAFAF has agreed to provide testimony on these subjects.

**B.     Origin, Purpose, and Provisions of the Enabling Acts and Bond Documents.**

The Government Parties have objected to the following deposition topics:

**Tourism Company Topic No. 1.**  *The origin, purpose, provisions, terms, and history of the Hotel Occupancy Tax Act, CCDA Enabling Act, Bond Documents, and Offering Documents, including any negotiations, reviews, consents, approvals, and authorizations of the same or contained within the same.*

**Tourism Company Topic No. 2.**  *All Transfer Obligations concerning the Hotel Taxes, any rights or obligations of the Tourism Company concerning such Transfer Obligations, and any efforts or actions by the Tourism Company, GDB, CCDA, the CCDA Bond Trustee, or any other entity or person, to enforce or fulfill such Transfer Obligations.*

**PRIFA Topic No. 1.**  *The origin, purpose, provisions, and implementation of the PRIFA Enabling Act and the Bond Documents, and AAFAF's historical and present understanding and implementation of their terms, including the assertions in, among other places, Paragraph 39 of the PRIFA Lift-Stay Opposition (and Exhibit A thereto) that Pledged Rum Taxes (as defined in the PRIFA Trust Agreement) are only those monies deposited into the Sinking Fund (as defined in the PRIFA Trust Agreement).*

**1.     Movants' Position**

21.     The Government Parties appear not to object to testimony regarding the Commonwealth's "implementation" of the various enabling acts and bond documents—in the sense of what the Commonwealth actually did to implement the requirements articulated in those acts and documents.  Instead, they object to questions regarding the specific "provisions," "origin," and "purpose" of those documents, on the grounds that such testimony would improperly pertain to legal, rather than factual, issues.

22.     As discussed above, the Commonwealth's and its instrumentalities' institutional *knowledge*, or understanding of, the provisions of the various statutes and bond documents and the way they are to be implemented are quintessential factual questions.  A corporate entity's

institutional knowledge of its obligations under a contract is a factual question, and such issues are at the core of the disputed issues presented for the April 2 preliminary hearing. If Movants find that the Commonwealth (or its instrumentalities) has never taken the *ex post facto* litigation positions advanced by the Oversight Board in its Lift-Stay Oppositions, that would be highly probative (even if not dispositive) of the pre-litigation understanding of the mechanics of each of the credits. That does not amount to an inquiry into any individual's state of mind; rather, it is the proper subject of testimony, from the organization, on what its institutional purpose was in adopting particular provisions, accounts, transfers, practices, and processes, *i.e.*, what objective was the Commonwealth seeking to accomplish.

23.      Moreover, as detailed above, Judge Swain specifically put issues of the bases for the Commonwealth's decision front and center in the Adjournment Order, by identifying Paragraph 40 of the Oversight Board's opposition to the CCDA Lift-Stay Motion as a proper subject for inquiry. In substance, that paragraph contains factual assertions about the Commonwealth's understanding of its rights and obligations under various pieces of legislation affecting the interpretation of these bond documents. Judge Swain thus clearly expected the parties to address such issues through discovery.

24.      Such discovery is particularly important here because PROMESA designates the Oversight Board as the sole representative of the Commonwealth. AAFAF filed only partial joinders in the Oversight Board's oppositions to the Lift-Stay Motions, and Movants expect that discovery will show that the Commonwealth and/or its instrumentalities have institutional knowledge, understanding, and actions of at least some provisions of the enabling acts and bond documents that is directly at odds with the assertions the Oversight Board has made in its papers. It is appropriate and necessary for the Court to have the benefit of the Commonwealth's

13

institutional understanding of the various enabling acts and bond documents before it rules on the meaning of these provisions.[9]

25.     To the extent that the Government Parties suggest that designating these topics would somehow open the door for questions as to legal conclusions, they are simply mistaken. It is well-settled that Rule 30(b)(6) topics simply define the issues on which a corporate representative must be prepared to speak to the institutional knowledge and understanding of the corporation. To the extent that any questions at the deposition call for opinions as to ultimate legal conclusions, the Government Parties can object on the record during the deposition and the Court can rule on the issue on the basis of a complete record in due course. The Government Parties have made no showing that following that ordinary procedure for objecting to deposition questions is somehow insufficient here to protect their rights to object to questions calling for legal conclusions.

26.     Finally, the Government Parties attempt, for now the fourth time, to litigate both the merits and the right to any discovery, recycling their arguments that course-of-dealing and parol evidence is inadmissible because the parties all agree that the statutes and bond documents are unambiguous. Putting aside that course-of-dealing evidence is admissible regardless of ambiguity, the question whether the relevant statutes and agreements are in fact ambiguous is for the Court, not the parties, to decide. Until it does, Movants are entitled to discovery into all factual assertions identified by Judge Swain, including the Commonwealth's implementation of the

---

[9] The Government Parties misstate Movants' request on this point in their response below. Contrary to the Government Parties' assertion, Movants do not intend to inquire into the decision of *counsel* for AAFAF to take a particular position in this litigation. Rather, Movants intend to inquire into the historical bases for certain actions taken by the Commonwealth and its instrumentalities. AAFAF's recent litigation positions merely illustrate to this Court why such evidence is likely to be highly probative and relevant: It appears to be quite apparent that the Commonwealth did not in fact change its accounting and collection system based on the factual predicates that the Oversight Board has asserted, and that is presumably why the Government Parties are resisting what should be uncontroversial requests so strongly.

14

enabling acts and bond documents and its understanding of the practices, processes, and policies
that it implemented and changed.

### 2. Government Parties' Position

27.     These topics do not reflect any effort to tailor discovery to the factual assertions in
the paragraphs specified in Judge Swain's February 14, 2020 order.  Although those paragraphs
contain factual assertions, not everything in them is a factual assertion.  Judge Swain did not rule
otherwise.  A prime example of material in a paragraph identified by Judge Swain that does not
contain factual assertions is the "based on" sentences in paragraph 40 of the Oversight Board's
opposition to the CCDA Lift Stay Motion.  The full paragraph reads:

> In late 2015, however, the Tourism Company ceased depositing funds into the
> Transfer Account and instead retained those funds.  As discussed below, prior
> to PROMESA, this retention of Occupancy Tax Revenues was **based on** various
> Commonwealth emergency orders authorizing the retention of these funds. After
> the enactment of PROMESA, the continued retention of the Retained
> Occupancy Tax Revenues was **based on** PROMESA and its preemption of
> inconsistent, pre-existing Commonwealth laws.

CCDA Opposition ¶ 40 (emphasis added).  Movants say this entitles them to discovery about
historical state of mind, but the idea of historical state of mind is Movants's creation.  Paragraph
40 of the CCDA Opposition does not speak to what anyone at the Tourism Company thought at
any particular point in time.  The first sentence of the paragraph is a factual assertion, and one for
which AAFAF will provide deposition testimony.  However, the "based on" sentences are
***arguments*** about ***legal positions***, not factual allegations.  They refer the reader to legal discussions
"below," and are written in the passive voice.  The very next section of the Oversight Board's brief
describes the emergency orders that formed the basis of retention of the funds "prior to
PROMESA."  And in paragraphs 77-80 of the brief, the Oversight Board explains why, as a legal
matter, it believes preemption forms the basis for "continued retention" after the enactment of
PROMESA.  These are, by definition, legal positions.  Whether or not they are "*post hoc* litigation

15

positions" – as the Movants' insinuate – has no independent relevance to anything, much less to the gating issues to be heard on April 2. The Commonwealth's state of mind or understanding has no relevance to preemption issues. Whether a pre-existing Commonwealth law is preempted turns on the text of the law and the proper legal interpretation of PROMESA's preemption provisions. Obviously a pre-existing law could not be preempted by PROMESA before PROMESA was enacted. Thus, what the Commonwealth understood a law meant or was intended to do can have no relevance to a preemption analysis.

28.     In any case, the Tourism Company and PRIFA's understanding of the origin and purpose of statutes and bond documents is not relevant to the issues that will be before the Court at the Preliminary Hearing. As this Court held on March 3, "state of mind is not an issue." (March Omni Tr. 230:20.) Just as "[n]o one is arguing ambiguity that's going to be straightened out by some email that somebody sent someplace along the line" (*id.* 230:22-24), no party argues any ambiguity in the statutes or agreements that could be straightened out through preparing a witness to testify as to PRIFA or the Tourism Company's understanding of the origin and purpose of the statutes and bond documents. As explained above, Movants cannot side-step this Court's direction by drawing an artificial distinction between "institutional knowledge" and "individual state of mind." None of these entities have an understanding apart from the understandings of particular individuals within that entity.

29.     Movants claim this discovery is "important" because AAFAF filed only partial joinders to the Oversight Board's oppositions to the Lift Stay Motions. Counsel for AAFAF's strategic decision not to join all of the legal positions taken by counsel for the Oversight Board is not a remotely legitimate basis upon which to seek discovery from a fact witness, much less the state of mind discovery this Court has already found inappropriate. Moreover, the insinuation that

16

the Commonwealth's more recent practices regarding the funds at issue have been guided by the advice of counsel, whereas its "historical bases" were not, exposes Movants' true motives here. Movants are not seeking to understand the structure and flow of funds. Rather, they are seeking to "prove" the rather unremarkable idea that lawyers may have been involved in the Commonwealth's fiscal practices during a financial crisis. That has no relevance at all.

30.     Furthermore, these topics are inappropriate given that all parties assert statutes and government agreements are unambiguous. In the absence of any ambiguity, discovery into parol evidence is not appropriate. *See Bank v. IBM*, 145 F.3d 420, 431 (1st Cir. 1998) (affirming denial of discovery of parol evidence because "the agreement was unambiguous"); *Santiago v. Canon U.S.A.*, 1997 U.S. Dist. LEXIS 4902, at \*11 (D.P.R. 1997) (denying discovery into course of dealing because "the civil code and the parol evidence rule bar consideration of extrinsic evidence where the terms of the distribution agreement" are unambiguous). Moreover, parol evidence, including "institutional knowledge," has no relevance whatsoever to the interpretation of statutes. S*ee Carlson v. Postal Regulatory Comm'n*, 938 F.3d 337, 350 (D.C. Cir. 2019) ("by definition, post-enactment statements … are not even part of the legislative history"); *see also Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (reference to post-enactment statements "is not a legitimate tool of statutory interpretation"); *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 149 (2d Cir. 2002) ("precedent constrains us form giving weight to post-enactment statements"); *W. Air Lines, Inc. v. Bd. of Equalization of State of S.D.*, 480 U.S. 123, 131 (1987) (giving no weight to "the post hoc statements of interested onlookers" in interpreting statute).

31.     Particularly in light of the Government Parties' agreement to offer testimony regarding the structure and mechanics of the flow of funds—which is ultimately the basis of the

factual assertions in the paragraph specified in the February 14 Order— these ancillary topics are entirely irrelevant to the issues that will be decided at the April 2 hearing.

### C.    Retained Revenues

The Government Parties have objected to the following deposition topics:

**Tourism Company Topic No. 5.**  *All transfers and non-transfers of Hotel Taxes by the Tourism Company caused by, or otherwise resulting from, the Commonwealth's purported invocation of Article II, Section 8 of the Puerto Rico Constitution (including as referenced in paragraphs 39-41 of the CCDA Lift-Stay Opposition).*

**PRIFA Topic No. 6.**  *The Commonwealth's exercise of its purported police, emergency, constitutional, or other powers to retain, obtain, Clawback, or halt the transfer of Rum Taxes to PRIFA or its bondholders.*[10]

#### 1.    Movants' Position

32.    The Government Parties have objected to testimony regarding the Commonwealth's exercise of its purported police, emergency, constitutional, or other power to retain, obtain, clawback, or half the transfer of the Pledged Rum Taxes (PRIFA), Hotel Taxes (CCDA), and Excise Taxes and Toll Revenues (HTA) to bondholders.  The Government Parties objected to this topic to the extent it seeks testimony beyond the *actual* flow of such funds and instead seeks testimony regarding the extent to which the flow of such funds was "based on" Commonwealth emergency orders, PROMESA, or some other authority.

33.    Movants disagree entirely.  The Government Parties have not proposed any narrowing of the scope of the topic, and under their proposal, Movants would not be entitled to ask a single question about the basis for the diversion of the pledged revenues.  The diversion of the pledged revenues, and the basis therefor, however, is at the core of the disputes to be decided at the April 2 hearing.  As noted above, by way of example, the Government Parties put it squarely

---

[10] *See also* HTA Topic No. 8 (seeking testimony regarding paragraph 81, among others, which implicates the same issues as in Tourism Company Topic No. 5 and PRIFA Topic No. 6).

at issue in, among other places, paragraph 40 of their CCDA Lift-Stay Opposition, which Judge

Swain identified as within the scope of discovery, in which they assert:

> In late 2015, however, the Tourism Company ceased depositing funds into the Transfer
> Account and instead retained those funds.  As discussed below, prior to PROMESA, this
> retention of Occupancy Tax Revenues was based on various Commonwealth emergency
> orders authorizing the retention of these funds.  After the enactment of PROMESA, the
> continued retention of the Retained Occupancy Tax Revenues was based on PROMESA
> and its preemption of inconsistent, pre-existing Commonwealth laws.

CCDA Lift-Stay Opposition ¶ 40.  The Adjournment Order similarly identified factual assertions

in the PRIFA and HTA Oppositions to which these issues are plainly relevant.  *See, e.g.*, HTA

Opp. ¶ 81; PRIFA Opp. ¶¶ 124-25.

34.     Movants are entitled to test these assertions.  Doing so does not call for state-of-

mind testimony of an individual, but rather the Commonwealth's institutional knowledge of the

historical factual basis for the diversion of assets over time.  Contrary to the Government Parties'

assertion that these issues are "legal positions, not factual allegations," the *historical* facts as to

why and on what basis revenues were withheld is a factual assertion—and one that Judge Swain

identified as an appropriate area of inquiry in discovery.

35.     Indeed, it is noteworthy that the Government Parties' interpretation of Judge

Swain's order would effectively nullify Judge Swain's decision to include CCDA Lift-Stay

Opposition ¶ 40 as among the paragraphs subject to factual testing:  CCDA Lift-Stay Opposition

¶ 41 already covered the assertion that the Tourism Company stopped depositing funds into the

Transfer Account, so adding Paragraph 40 to the list of issues ripe for discovery would have been

entirely superfluous unless Judge Swain intended that the Movants should have discovery into the

assertion that, as a matter of historical fact, the Commonwealth's decision to retain revenues "was

based on various Commonwealth emergency orders" and later "based on PROMESA."  In her

order, Judge Swain chose specific issues and identified individual paragraphs as proper subjects

for discovery; by including Paragraph 40, the thrust of which is to describe the asserted historical bases for retention of pledged revenues, Judge Swain unambiguously made clear that these issues are proper subject of discovery.

36.     This discovery is important because clawback would potentially result in different actions and consequences than other asserted bases for diversion.  Contrary to the Government Parties' claim, these issues are not irrelevant to the preliminary hearing:  The Government Parties are relying specifically on purported PROMESA preemption and a purported exercise of "clawback" rights as grounds for defeating Movants' property rights.  To the extent that discovery reveals that one or both of these arguments are nothing more than *post hoc* litigation rationales that the Court need not entertain, that could significantly impact the Court's determination as to Movants' property rights.

37.     As in all cases, to the extent the Government Parties view questions as calling for opinion testimony on ultimate legal conclusions, they may object at the appropriate time.  But there is no reasonable basis to exclude testimony into the Commonwealth's historical decisions to stop the flow of revenues to bondholders.

### 2.     Government Parties' Position

38.     Contrary to Movants' suggestion, AAFAF has not refused to provide testimony regarding reallocation of Rum Taxes or Hotel Taxes.  In response to other topics, AAFAF has already agreed to provide factual testimony regarding the flow of funds from January 1, 2015 to the present.  This includes changes in that flow of funds, including retention of Rum Tax Revenues by the Commonwealth, following the Commonwealth's exercise of its police power.

39.     The Government Parties, however, object to providing a fact witness to testify regarding the legal bases for the Commonwealth's exercise of its police power.  Taking the quoted paragraph 40 from the CCDA Lift-Stay Opposition as an example, AAFAF has agreed to provide

20

testimony regarding the sole factual statement in that paragraph: "In late 2015, however, the Tourism Company ceased depositing funds into the Transfer Account and instead retained those funds." As explained in the Government Parties' Opposition to Movants' Motion to Compel [ECF No. 11948 ¶¶ 58-59] and above, the remaining sentences in paragraph 40 of the CCDA opposition upon which Movants rely are arguments about legal positions, not factual allegations. Accordingly, there is no ground for the Monolines' requests for discovery regarding "the reasoning underlying the Tourism Company's decision or its understanding." (CCDA/PRIFA Motion ¶ 22). The Oversight Board's arguments do not depend or rely on the Tourism Company or the Commonwealth's reasoning. Moreover, as Paragraph 40 makes clear, it was not the Tourism Company's (or CCDA's) decision. The Governor issued the emergency orders, and the Oversight Board promulgated budgets and fiscal plans pursuant to PROMESA.

40.    Movants contend that "clawback would potentially result in different actions and consequences than other asserted bases for diversion." Whether that is so, however, it has no impact on the issues of security or other property interest, or standing, to be heard on April 2.

### D.   Factual Assertions in Paragraphs Identified by Judge Swain.

The Government Parties have objected to the following deposition topics:

**Tourism Company Topic No. 6.** *To the extent not otherwise captured in the Topics in this Exhibit A, the factual assertions made in paragraphs 39-41 of the CCDA Lift-Stay Opposition.*

**PRIFA Topic No. 8.** *To the extent not otherwise captured in the Topics in this Exhibit A, the factual assertions made in paragraphs 29, 38, 69, 103, 124, and 125 of the PRIFA Lift-Stay Opposition.*

**HTA Topic No. 8.** *To the extent not otherwise captured in the Topics in this Exhibit A, the factual assertions made in paragraphs 77, 81, and 92 and Exhibit A of the HTA Lift-Stay Opposition.*

### 1.    Movants' Position

41.    In each of the Rule 30(b)(6) notices, Movants included as a topic, to the extent not otherwise captured by any other topics, the factual assertions made in the paragraphs of the Lift-Stay Oppositions identified by Judge Swain as within the scope of discovery.  The Government Parties have objected that these topics are vague and ambiguous.

42.    But these topics are simply capturing definitionally the specific issues that Judge Swain articulated as proper subjects for discovery.  In particular, Movants anticipate asking the corporate representatives for the institutional knowledge of the Commonwealth (or its instrumentalities) regarding the specific factual assertions that Judge Swain identified as proper subjects for discovery.  This is plainly within the scope of what Judge Swain allowed; indeed, it is *the* scope that she specifically defined.

43.    The Government Parties have also objected that some representations in the paragraphs identified by Judge Swain in the Adjournment Order are not factual assertions but legal conclusions.  In response to the Government Parties concerns, Movants have prepared the attached "Factual Assertions Chart" (attached as Exhibit A), in which Movants highlighted the specific language in each of the paragraphs that Judge Swain identified that Movants consider to be factual assertions and therefore within the scope of Tourism Company Topic No. 6, PRIFA Topic No. 8, and HTA Topic No. 8.  In doing so, Movants made every effort to narrowly tailor such highlights to capture only factual components of the paragraphs Judge Swain identified (recognizing that some sentences contain a mix of legal and factual components, and Movants' intent is to limit their questions to the factual components).

44.    The *only* factual assertion the Government Parties have specifically identified as a legal conclusion is the representation in paragraph 40 of the CCDA Lift-Stay Opposition that the Tourism Company's retention of Hotel Taxes was based on various Commonwealth emergency

22

orders and PROMESA.  As discussed above, Movants disagree with the Government Parties' view on that issue and believe it should be overruled.  Movants submit that the remaining assertions they have identified are, either entirely or in substantial part, factual in nature and thus proper subjects for inquiry at the deposition.

45.     The Government Parties' speculation that the parties might have a dispute on these topics at the deposition is not ripe for review.  While the Movants welcome the Court's guidance on any issues, Movants also note that the Parties should make good faith efforts to resolve these disputes without resorting to judicial intervention where good-faith efforts to compromise could resolve or narrow the issue.  Moreover, as with any deposition, if a dispute arises as to the propriety of a given question, the Government Parties can state their objection and it can be resolved by the Court in due course as appropriate.

### 2.     Government Parties' Position

46.     To begin with, the Government Parties object to the Movants' Factual Assertion Chart.  Movants did not share their intention to attach to this submission until 11 PM on March 11 and the Government Parties have not had a reasonable opportunity to review and respond to it.  It should be disregarded.

47.     The Government Parties do not object to providing deposition testimony on the topics that Judge Swain identified as the subjects of limited discovery.  Again, however, not everything in the paragraphs identified by Judge Swain in her February 14, 2020 Order is a factual assertion. And, as demonstrated above, Movants, have taken an expansive view such that the phrase "factual assertions" would encompass legal arguments and subjective understandings, including about the *"origin, purpose, provisions, and implementation of the PRIFA Enabling Act."* The Monolines appear intent upon sidestepping all guidance from this Court on March 4 regarding what concrete facts are the subject of appropriate discovery, and permitting testimony on every

23

sentence in the paragraphs identified in Judge Swain's February 14 Order will only exacerbate that issue.

48.    The only factual statements in paragraphs enumerated in Judge Swain's February 14, 2020 Order are (1) the identity of the governmental entities that collect particular revenues; and (2) the resulting flow of funds for those revenue streams as set forth in statutes and agreements equally available to the Movants.  As this Court explained: "This is going to be about the structure of the financial arrangements.  I don't know how else to put it."  (March Omni Tr. 263:8-10.) As noted above, AAFAF has already agreed to provide testimony regarding the collection of revenues and flow of funds.  Nothing more is required.

49.    While the Movants raise the possibility of resolution of any disputes by the Court, time is of the essence in light of the compressed schedule.  Accordingly, the Government Parties suggest that disputes regarding the proper scope of these 30(b)(6) depositions be resolved contemporaneously with the deposition via a call to this Court's chambers so that any issues can be resolved expeditiously and immediately rather than via further motion practice which could necessitate delay and cause uncertainty regarding the schedule.

E.    **Control over Deposit Accounts**

The Government Parties have objected in part to the following deposition topics:

**HTA Topic No. 2**.  *The ownership of, interest in, and location of the Toll Revenue and Excise Taxes.*

**HTA Topic No. 3**.  *Ownership, interest in, location, and flow of funds in and out of Fund 278.*

1.    **Movants' Position**

50.    AAFAF objected to these topics on the basis that issues of "ownership" and "control" of particular revenues or bank accounts are legal, rather than factual, questions and are therefore inappropriate subjects for a fact witness.  AAFAF has agreed to allow questioning about

underlying factual indicia of ownership, control, and interest but seek to limit questioning directed to what entity actually owns or controls the various accounts and revenues.

51.    But the question of which entity owns a particular account or revenue stream, or has an interest in it, is an appropriate factual question.  For example, the bank account statements produced in connection with the CCDA Lift-Stay Motion include statements for an account at GDB that is labeled "Room Tax – Concentration."  Movants should be entitled to inquire into what entities own, control, or have other interests in the account.

52.    This Court recognized as much when ruling that Movants are entitled to account opening documents that show "the depository institution, the account holders, beneficiaries, and any restrictions" pertaining to the key accounts at issue.  *See* March 4, 2020 Omnibus Hearing Tr. 234:9-20.  These are key factual questions on which the parties need a clear record, particularly in view of the fact that the Government Parties have not yet produced any comprehensive account opening documents or other ownership documents regarding the accounts.  Depending on what documents ultimately are produced, Movants may have a number of factual questions about which entity owns which accounts.

53.    Those questions are straightforward factual questions.  While there may be legal nuances in some instances, the simple question to a witness of which entity *owns* a particular account or has an interest in it is fundamentally a factual question.  "Ownership" has an ordinary, nontechnical meaning (for example, one does not need legal training to answer the question, "who owns this house?").  Movants should not be precluded from asking basic factual questions about ownership.  The Parties of course can reserve their respective rights on the ultimate legal conclusions that the Court needs to reach.

25

54.     Movants also note that at least one COFINA-related deposition focused almost
entirely on issues of "ownership" and "control."  Contrary to the Government Parties' suggestion,
this is not an unfounded assertion.  *See* 30(b)(6) Deposition of Banco Popular De Puerto Rico, Dkt.
No. 17-133-LTS (Aug. 25, 2017).  Movants' request for testimony on such topics here is entirely
consistent with topics covered in that deposition.  And as with all topics, to the extent the
Government Parties feel that a particular question calls for an improper legal conclusion, they can
state their objection during the deposition for resolution by the Court on a proper record.

55.     Movants thus believe that AAFAF's proposed limitations on the scope of
questioning are inconsistent with this Court's ruling and improper.

### 2.     Government Parties' Position

56.     Again, Movants, by seeking legal opinions from a fact witness, are manufacturing
a dispute where there ought not be one.  In a meet and confer communication, AAFAF explained:

> We [AAFAF] object to providing a witness to testify regarding legal
> opinions or conclusions regarding ownership or interests in
> particular revenues or bank accounts.  However, we can provide fact
> testimony, regarding factual information, based upon the documents
> located and produced.  For instance, we will agree that our witness
> may testify as to the name of an account holder for a particular bank
> account in the flow of funds, but he or she will not offer legal
> opinion testimony regarding which entity owns, or has a legal
> interest in, the monies held in that account.  In short, a witness can
> answer questions the Monolines may have about the account
> documents but will not provide opinions about subjects like
> ownership and other legal rights.

57.     The Movants suggest that AAFAF should be required to produce a witness to testify
regarding the topic of ownership, merely so that counsel may interpose legal conclusion objections
on a question-by-question basis.  There is no benefit to that exercise, nor does the Monolines'
representation that such an exercise was allowed in the COFINA matter during the deposition of a
financial institution justify the testimony the Movants seek here.

26

58.     To the extent this Court is inclined to compel the Government Parties to produce a witness to testify regarding the ultimate legal conclusion of ownership or interest in revenues, they again respectfully request that this Court be available referee the deposition, so any dispute may be resolved in real time, and not used as a reason to delay the April 2 hearing.

### F.     Time Period Covered by Deposition

#### 1.     Movants' Position

59.     The Government Parties agreed to provide a witness to testify regarding certain flow-of-funds-related topics, but proposed that such testimony be limited to the time period from January 1, 2015 to present.  Movants' flow of funds topics were not limited to that time period in Movants' original deposition notice, and Movants object to the Government Parties' proposal that time limitations the Parties negotiated for documents should be incorporated into deposition topics as well.

60.     This issue is particularly important in the case of PRIFA.  As Movants have explained to the Government Parties, documents produced on February 27, 2020, revealed to Movants for the first time that the PRIFA flow of funds changed in late 2014, earlier than other revenue bonds.  Accordingly, without discovery into at least 2014 issues for PRIFA, Movants would be unable to properly explore factually how the funds flowed *prior* to default and how that changed with default.  Movants raised this issue as promptly as they possibly could with the Government Parties; Movants have been reviewing the incoming documents on a rolling basis but it was only a very recent production that first revealed this issue.  Movants explained the issue orally on March 9, 2020 and sent a letter to the Government Parties on March 11, 2020, describing in detail—with citations to multiple specific documents produced in discovery—the issue that Movants identified for PRIFA.

61.     In any case, specific time limitations are not necessary for deposition topics. Movants have made clear that their inquiries are limited to the pre-default flow of funds and how the flow changed post-default.  Accordingly, the Government Parties' request that the deposition topics be further limited in temporal scope is unnecessary (and, in the case of PRIFA, would frustrate a fair inquiry into the critical flow of funds issues that are well within the core scope).

### 2.     Government Parties' Position

62.     AAFAF objected to the Movants' attempt to expand the applicable time period for discovery a week before the substantial completion deadline, but indicated that it would consider Movants' request further if Movants provide more detail as to the contents of the documents and what types of questions are anticipated, which Movants agreed to provide.  The Movants provided some high-level information in the early afternoon on March 11, seeking discovery into PRIFA accounts dating back to 2014.  The Government Parties have agreed to review these requests, but, at this time, continue to object to the timing of Movants' request.


*[Remainder of Page Intentionally Left Blank]*

Dated:   March 11, 2020
         San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: */s/ Roberto Cámara-Fuertes*
      Roberto Cámara-Fuertes (USDC-PR No.
      219002)
      Sonia Colón (USDC-PR No. 213809)
      221 Ponce de León Avenue, 5th Floor
      San Juan, PR 00917
      Telephone: (787) 766-7000
      Facsimile: (787) 766-7001
      Email:  rcamara@ferraiuoli.com
            scolon@ferraiuoli.com

**REXACH & PICÓ, CSP**

By: */s/ María E. Picó*
      María E. Picó
      (USDC-PR No. 123214)
      802 Ave. Fernández Juncos
      San Juan, PR 00907-4315
      Telephone: (787) 723-8520
      Facsimile: (787) 724-7844
      Email: mpico@rexachpico.com

**MILBANK LLP**

By: */s/ Atara Miller*
      Dennis F. Dunne (admitted *pro hac vice*)
      Atara Miller (admitted *pro hac vice*)
      Grant R. Mainland (admitted *pro hac vice*)
      John J. Hughes, III (admitted *pro hac vice*)
      55 Hudson Yards
      New York, NY 10001
      Telephone: (212) 530-5000
      Facsimile: (212) 530-5219
      Email: ddunne@milbank.com
            amiller@milbank.com
            gmainland@milbank.com
            jhughes2@milbank.com

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*
      Martin A. Sosland (admitted *pro hac vice*)
      5430 LBJ Freeway, Suite 1200
      Dallas, TX 75240
      Telephone: (469) 680-5502
      Facsimile: (469) 680-5501
      Email: martin.sosland@butlersnow.com
      Jason W. Callen (admitted *pro hac vice*)
      150 3rd Ave., S., Suite 1600
      Nashville, TN 37201
      Telephone: (615) 651-6774
      Facsimile: (615) 651-6701
      Email: jason.callen@butlersnow.com

*Attorneys for Ambac Assurance Corporation*

*Attorneys for Financial Guaranty Insurance Company*

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC**

By: /s/ *Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    (USDC-PR No. 206314)
    Email: epo@amgprlaw.com

By: /s/ *Luis A. Oliver-Fraticelli*
    Luis A. Oliver-Fraticelli
    (USDC-PR No. 209204)
    Email: loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Facsimile: (787) 756-9010

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ *Robert Berezin*
    Jonathan D. Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert Berezin (admitted *pro hac vice*)
    Kelly DiBlasi (admitted *pro hac vice*)
    Gabriel A. Morgan (admitted *pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email: jonathan.polkes@weil.com
        gregory.silbert@weil.com
        robert.berezin@weil.com
        kelly.diblasi@weil.com
        gabriel.morgan@weil.com

*Attorneys for National Public Finance Guarantee Corp.*

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    (USDC-PR No. 204809)
    Ricardo F. Casellas-Sánchez
    (USDC-PR No. 203114)
    Diana Pérez-Seda
    (USDC-PR No. 232014)
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
        rcasellas@cabprlaw.com
        dperez@cabprlaw.com

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr. (admitted *pro hac vice*)
    Mark C. Ellenberg (admitted *pro hac vice*)
    William J. Natbony (admitted *pro hac vice*)
    Ellen M. Halstead (admitted *pro hac vice*)
    Thomas J. Curtin (admitted *pro hac vice*)
    Casey J. Servais (admitted *pro hac vice*)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
        mark.ellenberg@cwt.com
        bill.natbony@cwt.com
        ellen.halstead@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock
Stephen L. Ratner
Timothy W. Mungovan
Paul V. Possinger
Margaret A. Dale
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative of
the Commonwealth*

/s/ *Hermann D. Bauer*
Hermann D. Bauer (USDC No. 215205)
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight
and Management Board as representative
of the Commonwealth*

/s/ *Peter Friedman*
John J. Rapisardi
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory
Authority*

/s/ *Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com
Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com
**MARINI PIETRANTONI MUÑIZ
LLC**
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2173
Fax: (787) 936-7494

*Co-Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory
Authority*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date a true and exact copy of this notice was filed with

the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

*/s/ Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
