# **EXHIBIT E**

ORIGINAL

## GOBIERNO DE PUERTO RICO

18va. Asamblea
Legislativa

4ta. Sesión
ordinaria

## CÁMARA DE REPRESENTANTES

### P. DE LA C. 1837

### INFORME POSITIVO

### 7 de noviembre de 2018

## A LA CÁMARA DE REPRESENTANTES DE PUERTO RICO:

La Comisión de Hacienda, Presupuesto y de la Supervisión, Administración y Estabilidad Económica de Puerto Rico, "PROMESA", previo estudio y consideración del P. de la C. 1837, tiene a bien recomendar a este Augusto Cuerpo la aprobación de esta medida, con las enmiendas contenidas en el entirillado electrónico.

## ALCANCE DE LA MEDIDA

El P. de la C 1837, según radicado, tiene el propósito de renumerar el Artículo como Artículo 1.1 y enmendar el mismo; añadir un nuevo Artículo 1.2; renumerar el Artículo 2 como Artículo 2.1 y enmendar el mismo; añadir nuevos Artículos 2.2, 2.3, 2.4, 2.5, 2.6, 2.7, 2.8 y 2.9; derogar el Artículo 3 y sustituirlo por un nuevo Artículo 3.1; añadir nuevos Artículos 3.2 y 3.3; derogar el Artículo 4 y sustituirlo por un nuevo Artículo 4.1, añadir un nuevo Artículo 4.2, derogar el Artículo 5 y sustituirlo por un nuevo Artículo 5.1, añadir un nuevo Artículo 5.2, derogar los Artículos 6, 7, 8, 9, 10 y 11 y dividir en capítulos la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", a los fines de permitir la restructuración de la deuda de la Corporación del Fondo del Interés Apremiante ("COFINA") bajo el Título III de la Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico, mejor conocida como PROMESA; autorizar a COFINA a emitir bonos como parte de dicha restructuración y establecer los términos de los mismos; establecer los poderes y facultades de COFINA y la composición y los poderes de su Junta de Directores; establecer la titularidad de COFINA sobre una porción de los recaudos sobre el impuesto sobre ventas y uso y disponer para la transferencia y uso de dichos recaudos; crear un gravamen estatutario en beneficio de los tenedores de bonos de COFINA; establecer ciertos acuerdos a nombre del Gobierno de Puerto Rico para beneficio de los tenedores de bonos de COFINA; disponer que el texto en inglés prevalecerá sobre el texto en español; derogar los Artículos 2 y 4 de la Ley 116-2013, según enmendada; enmendar el Artículo 25-A de la Ley 44 de 21 de junio de 1988, según enmendada; a los fines de permitir la venta de ciertos bonos

de COFINA que tiene la Autoridad para el Financiamiento de la Infraestructura con la aprobación de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico; establecer que esta ley será efectiva en la fecha de la consumación del plan de ajuste de deuda de COFINA bajo el Título III de PROMESA; y para otros fines relacionados.

Según surge de la Exposición de Motivos, Puerto Rico enfrenta una crisis fiscal y económica sin precedentes. Este proyecto, en conjunto con el acuerdo de restructuración del Banco Gubernamental de Fomento, encamina a Puerto Rico en la ruta de la credibilidad. Con el acuerdo llegado, se hacen ajustes significativos en el repago de la deuda gubernamental incurrida por otras administraciones. Esta Asamblea Legislativa tiene el deber de resolver y asegurar que el Gobierno continúe operando y sirviendo a nuestro Pueblo.

Las posiciones asumidas y acciones tomadas por la administración pasada causaron que Puerto Rico perdiera acceso a los mercados de capital y precipitaron el colapso de su sistema de financiamiento público debido a la relación hostil creada con los participantes de los mercados financieros, incluyendo cientos de miles de puertorriqueños que invirtieron sus ahorros confiando en el buen nombre y crédito del Gobierno de Puerto Rico y sus corporaciones públicas. De igual forma se generó cobertura noticiosa negativa sobre Puerto Rico a nivel local, nacional e internacional. Lo anterior, aceleró la contracción de la economía de Puerto Rico y precipitó la migración de puertorriqueños a los Estados Unidos continentales.

Decisiones equivocadas de la pasada Administración llevaron al "Estado Libre Asociado" de Puerto Rico a la quiebra, lo que requirió el uso de los recursos disponibles para atender y proveer servicios esenciales al pueblo de Puerto Rico. Esto, a su vez, actuó como catalítico para una controversia en la cual se cuestionó la estructura bajo la cual la Corporación del Fondo del Interés Apremiante ("COFINA") emitió sus bonos. En particular, algunos acreedores radicaron reclamaciones argumentando, entre otras cosas, que (i) las emisiones de bonos de COFINA violaron la Constitución de Puerto Rico, y (ii) la porción de la contribución sobre ventas y uso impuesta por el Gobierno de Puerto Rico a la tasa de 5.5% (el "IVU") y transferida a COFINA constituye "recursos disponibles" del Gobierno de Puerto Rico bajo el Artículo VI, Sección 8 de la Constitución de Puerto Rico y debe utilizarse para el pago de la "deuda pública". Algunos acreedores también presentaron argumentos sobre el alcance de la Constitución de Puerto Rico que giran en base a si utiliza el término "recursos disponibles", según la versión en español, o "available revenues, including surplus" según la versión en inglés. El 5 de mayo de 2017, la Junta de Supervisión y Administración Financiera (la "Junta de Supervisión") creada bajo la Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico ("PROMESA", por sus siglas en inglés), como representante de COFINA, comenzó un proceso de restructuración para COFINA bajo el Título III de PROMESA.

Las partes interesadas del Gobierno de Puerto Rico y COFINA comenzaron un proceso ordenado para resolver las disputas relacionadas a COFINA y la titularidad sobre el IVU (colectivamente, la "Disputa ELA-COFINA"). A esos fines, el 10 de agosto de 2018, el tribunal del Título III aprobó una estipulación y orden designado al Comité Oficial de Acreedores no Asegurados del Gobierno para actuar como agente la de Junta de Supervisión en su capacidad como representante del Gobierno de Puerto Rico (el "Agente del Gobierno") y a Bettina M. Whyte para actuar como agente de la Junta de Supervisión en su capacidad como representante de COFINA (el "Agente de COFINA") en un esfuerzo para facilitar la transacción de la Disputa ELA-COFINA.

El 5 de junio de 2018, el Agente del Gobierno y el Agente de COFINA anunciaron que habían llegado a un acuerdo en principio para resolver la Disputa ELA-COFINA (el "Acuerdo en Principio"). El Acuerdo en Principio estaba fundamentado en dividir la cantidad fija del IVU transferida a COFINA cada año fiscal (la "Renta Fija") entre el Gobierno y COFINA comenzando en el año fiscal 2019, donde COFINA recibiría el 53.65% de la cantidad anual de la Renta Fija y el Gobierno recibiría el 46.35% de la cantidad anual de la Renta Fija, además de todos los demás ingresos recaudados por concepto del IVU.

Consistente con la política pública implementada por el Gobernador de Puerto Rico, la Autoridad de Asesoría Financiera y Agencia Fiscal, la Junta de Supervisión y ciertos acreedores y aseguradores de los bonos de COFINA, llegaron a un acuerdo en apoyo a un plan de reestructuración para COFINA (según enmendado y reformulado el 21 de septiembre de 2018, el "Acuerdo de Restructuración"), el cual incorpora la división de la Renta Fija conforme al Acuerdo en Principio y provee para la transacción de la Disputa ELA-COFINA conforme a un plan de ajuste de deuda para COFINA bajo el Título III de PROMESA (el "Plan de COFINA").

Ahora le corresponde a la Asamblea Legislativa implementar el acuerdo entre las partes enmendando las disposiciones de la ley que creó a COFINA y que autorizó la emisión de sus bonos, la Ley 91-2006. Estas enmiendas liberarán el gravamen y la presión sobre el Gobierno que ejercen actualmente los tenedores de COFINA sobre $17.5 billones de ingresos del IVU. Al implementar el Acuerdo de Restructuración, esta legislación también pone fin al costoso litigio entre los agentes nombrados por la Junta de Supervisión y a las reclamaciones de los acreedores de COFINA mientras que, a la misma vez, clarifica la intención legislativa original de la Ley 91-2006, según enmendada. Además, como resultado de esta legislación, se ahorrará aproximadamente $437.5 millones por año al Gobierno de Puerto lo cual le permitirá continuar brindando los servicios requeridos al pueblo y cumplir con términos sostenibles para el repago de deuda pública.

Igualmente, esta legislación demuestra que la Asamblea Legislativa está comprometida con tomar los pasos necesarios para permitir el regreso de Puerto Rico a los mercados de capital. Como paso necesario para la implantación del Acuerdo de Reestructuración, esta legislación autorizará la reestructuración de la deuda de COFINA bajo el Título III de PROMESA, actuará como catalítico para otras reestructuraciones, sentará las bases para que Puerto Rico resurja de la bancarrota, reducirá los costos relacionados a los litigios y aligerará la terminación de la Junta de Supervisión bajo PROMESA.

## RESÚMENES DE MEMORIALES EXPLICATIVOS

Para la evaluación del **Proyecto de la Cámara 1837**, esta Comisión de Hacienda, Presupuesto y de la Supervisión, Administración y Estabilidad Económica de Puerto Rico "PROMESA", solicitó los memoriales explicativos a las siguientes agencias:

1. Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico
2. Departamento de Hacienda
3. Oficina de Gerencia y Presupuesto
4. Departamento de Justicia

### Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF)

La AAFAF provee en su ponencia un breve trasfondo sobre el proceso y las negociaciones para la reestructuración de la deuda de COFINA y expone las razones por las cuales resulta necesario y conveniente que se apruebe el proyecto.

La AAFAF indica en su ponencia que desde principios del año pasado ha estado en negociaciones con los acreedores de la deuda del gobierno con miras a lograr acuerdos consensuales para la reestructuración de la misma. Durante dicho periodo, han avanzado paralelamente los litigios dentro de los procedimientos del Título III y otros casos relacionados, en los cuales se han litigado múltiples controversias relacionadas a las deudas del Gobierno de Puerto Rico y sus instrumentalidades. Estos costosos litigios han prolongado la incertidumbre sobre la recuperación económica y fiscal de Puerto Rico.

Una de las controversias principales en los litigios ha girado en torno a la constitucionalidad de la estructura bajo la cual COFINA emitió sus bonos con relación a la tasa del 5.5% de IVU. En un esfuerzo para resolver las disputas relacionadas a COFINA y la titularidad sobre el IVU, se dio paso a un proceso ordenado de mediación ante el tribunal del Título III. A esos fines, el 10 de agosto de 2017, el tribunal del Título III aprobó una estipulación y orden designando a los representantes que actuarían como agente de la Junta de Supervisión Fiscal (Junta) en su capacidad como representante del Gobierno de Puerto Rico y los que

actuarían como agente de la Junta en su capacidad como representantes de COFINA.

Posteriormente, el 5 de junio de 2018, ambos representantes llegaron a un acuerdo para resolver la disputa. Dicho acuerdo está fundamentado en dividir la cantidad fija del IVU transferida a COFINA cada año fiscal (la "Renta Fija") entre el Gobierno y COFINA comenzando en el año fiscal 2019, de manera tal que COFINA reciba el 53.65% de la Renta Fija y el Gobierno reciba el 46.35% de la Renta Fija, además de todos los ingresos recaudados por concepto del IVU.

El 21 de septiembre del 2018, se estableció el acuerdo final que incorpora la división de Renta Fija y el plan de ajuste de deuda para COFINA bajo el Título III de PROMESA. Los términos de dicho acuerdo van dirigida principalmente a fortalecer la estructura de los bonos de COFINA y permitir la liberación del gravamen que tienen actualmente los tenedores de COFINA sobre los $17.5 billones de ingresos del IVU.

La consumación del Acuerdo de Reestructuración será clave para reestablecer la credibilidad ante los participantes de los mercados de capital y lograr la reestructuración de las demás deudas gubernamentales a niveles sostenibles y la terminación de los litigios relacionados a dichas deudas. En conclusión, AAFAF avala esta medida legislativa.

## Departamento de Hacienda

El Departamento de Hacienda indicó que la presente medida realiza ajustes significativos en el repago de la deuda gubernamental, de forma tal que el gobierno continúe operando y sirviendo a nuestro pueblo. Estas enmiendas tienen como objetivo liberar el gravamen que tienen actualmente los tenedores de COFINA sobre $17.5 billones de ingresos del IVU. Al implementar el acuerdo de reestructuración esta legislación también pone fin al costoso litigio entre los agentes nombrados por la Junta de Supervisión y a las reclamaciones de los acreedores de COFINA mientras que, a la misma vez, clarifica la intención legislativa original de la Ley 91, 2006, según enmedada. Se ahorrará aproximadamente $437.5 millones por año al Gobierno de Puerto lo cual le permitirá continuar brindando los servicios requeridos al pueblo.

Además, el Departamento indica que una vez el mencionado acuerdo sea aprobado por la Jueza Laura Taylor Swain, el mismo asignará una porción de los ingresos, que actualmente se encuentran destinados para el pago de la deuda de COFINA, al Gobierno de Puerto Rico. Cualquier cantidad asignada al Gobierno de Puerto Rico en dicho acuerdo, será considerada propiedad del Gobierno de Puerto Rico. En conclusión, el Departamento de Hacienda avala esta medida legislativa.

## Oficina de Gerencia y Presupuesto (OGP)

La OGP reconoce que le corresponde a la Asamblea Legislativa implementar el acuerdo de la reestructuración de la deuda de COFINA, enmendando las disposiciones de la Ley que creó a COFINA y que autorizó la emisión de sus bonos.

De igual forma, reconoce que la medida procura ajustes significativos en el repago de la deuda gubernamental para así continuar asegurando que el Gobierno continúe operando y sirviendo al pueblo. Ello es cónsono con el compromiso de recuperar el acceso a los mercados de capital y eliminar la incertidumbre económica.

Desde el punto de vista gerencial, la OGP comprende que la medida contempla a COFINA como una corporación existente por virtud de la Ley 91-2006, la cual será reconocida para todos los propósitos como una entidad legal independiente y separada del Gobierno de Puerto Rico o cualquier otra entidad gubernamental. En conclusión, la OGP avala esta medida legislativa.

## Departamento de Justicia

El Departamento de Justicia explica los detalles de esta medida legislativa de forma similar a los memoriales arriba mencionados. Además, señala que el Estado goza de amplia facultad para promulgar legislación dirigida a promover el cumplimiento de sus obligaciones constitucionales. En el ejercicio del poder de razón de estado, la Asamblea Legislativa tiene potestad para adoptar medidas de carácter económico sujeta únicamente a las limitaciones impuestas por la garantía del debido procedimiento de ley. En ese sentido, las enmiendas a la Ley del Fondo de Interés Apremiante, Ley 91-2006, incluidas en el proyecto a los fines de clarificar la intención legislativa original de la Ley; aclarar que, entre otras, la porción del impuesto sobre ventas y uso (IVU), transferida a COFINA, no constituye recursos disponibles del Gobierno de Puerto Rico bajo el Artículo VI, Sección 8 de la Constitución de Puerto Rico; y autorizar la reestructuración de la deuda de COFINA bajo el Título III de PROMESA, no solo es un ejercicio legítimo de los poderes y prerrogativas que le han sido constitucionalmente delegados, sino que constituye un esfuerzo necesario y encomiable por atender un asunto que es de la más alta prioridad para el Estado. En conclusión, el Departamento de Justicia avala esta medida legislativa.

## ANÁLISIS DE LA MEDIDA

Esta Ley demuestra el compromiso continuo de esta Asamblea Legislativa para corregir la crisis fiscal de Puerto Rico, honrar las obligaciones financieras de Puerto Rico, recuperar acceso a los mercados de capital, eliminar la incertidumbre económica y alcanzar un nivel de deuda sostenible para Puerto Rico.

En resumen, la medida reconoce a COFINA para todos los propósitos como una entidad legal independiente y separada del Gobierno de Puerto Rico o cualquier otra entidad gubernamental. Su propósito, sujeto a ciertas prohibiciones, es ser dueña de y administrar los Ingresos de la Corporación y emitir otros bonos, notas o evidencia de deuda, según autorizado por el Plan de Ajuste de la Corporación y los Acuerdos Complementarios, los cuales serán pagaderos de aquellos ingresos que disponga la Asamblea Legislativa.

La Corporación es y será la única y exclusiva dueña de los Ingresos de la Corporación hasta que los Bonos del Plan de Ajuste, incluyendo los intereses que devenguen estos, y todas las cantidades y obligaciones bajo los Acuerdos Complementarios, se paguen en su totalidad en efectivo o hayan sido de otra manera satisfechos conforme a sus términos.

Como parte del análisis de esta Comisión, se enmienda la medida para aclarar y corregir ciertos lenguajes de la misma. Se enmienda la definición de "Acuerdos Complementarios" para añadir como parte de la misma al propio Plan de Ajuste. También, se enmienda el artículo 2.6.- Actividades Prohibidas, para prohibirle a la Junta de Directores de la Corporación a realizar una votación para autorizar a la Corporación a comenzar un caso bajo el Título III de PROMESA o procesos judiciales de reestructuración similares bajo las leyes aplicables. Además, se elimina del artículo 3.1. – Emisión de los Bonos del Plan de Ajuste, el inciso que otorga inmunidad a los miembros de la Junta de Directores o cualquier persona natural que firme los bonos. Además, en el artículo 5.1.- Separabilidad, se elimina la última oración, por entender que la cláusula de separabilidad tal y como quedó redactada ya recoge el espíritu de lo que pretendía el texto eliminado. Vale mencionar que las enmiendas realizadas en la versión en español de esta medida, también se incorporaron en la versión en inglés.

La Comisión de Hacienda, Presupuesto y de la Supervisión, Administración y Estabilidad Económica de Puerto Rico "PROMESA", de la Cámara de Representantes tiene el firme compromiso de presentar este Informe Positivo, a los fines de proveer las herramientas necesarias para que se cumpla con la legislación propuesta, se reestablezca la credibilidad ante los participantes de los mercados de capital y lograr la reestructuración de las demás deudas gubernamentales a niveles sostenibles y la terminación de los litigios relacionados a dichas deudas.

## CONCLUSIÓN

Por los fundamentos antes expuestos, la Comisión de Hacienda, Presupuesto y de la Supervisión, Administración y Estabilidad Económica de Puerto Rico "PROMESA", previo estudio y consideración del P. de la C. 1837, recomienda su aprobación con las enmiendas contenidas en el entirillado electrónico que se acompaña.

Respetuosamente sometido,

*Antonio Soto Torres*
Presidente
Comisión de Hacienda, Presupuesto y
de la Supervisión, Administración y Estabilidad
Económica de Puerto Rico "PROMESA"

(ENTIRILLADO ELECTRÓNICO)
GOBIERNO DE PUERTO RICO

18va. Asamblea
Legislativa

4ta. Sesión
Ordinaria

# CÁMARA DE REPRESENTANTES

# P. de la C. 1837

### 12 DE OCTUBRE DE 2018

Presentado por los representantes y las representantes *Méndez Núñez, Torres Zamora, Ramos Rivera, Rodríguez Aguiló, Hernández Alvarado, Alonso Vega, Aponte Hernández, Banchs Alemán, Bulerín Ramos, Charbonier Chinea, Charbonier Laureano, Claudio Rodríguez, Del Valle Colón, Franqui Atiles, González Mercado, Lassalle Toro, Lebrón Rodríguez, Mas Rodríguez, Meléndez Ortiz, Miranda Rivera, Morales Rodríguez, Navarro Suárez, Parés Otero, Peña Ramírez, Pérez Cordero, Pérez Ortiz, Quiñones Irizarry, Rivera Ortega, Rodríguez Hernández, Santiago Guzmán, Soto Torres, Torres González y Vargas Rodríguez*

Referido a la Comisión de Hacienda, Presupuesto y de la Supervisión, Administración y Estabilidad Económica de Puerto Rico, "PROMESA"

## LEY

Para renumerar el Artículo 1 como Artículo 1.1 y enmendar el mismo; añadir un nuevo Artículo 1.2; renumerar el Artículo 2 como Artículo 2.1 y enmendar el mismo; añadir nuevos Artículos 2.2, 2.3, 2.4, 2.5, 2.6, 2.7, 2.8 y 2.9; derogar el Artículo 3 y sustituirlo por un nuevo Artículo 3.1; añadir nuevos Artículos 3.2 y 3.3; derogar el Artículo 4 y sustituirlo por un nuevo Artículo 4.1, añadir un nuevo Artículo 4.2, derogar el Artículo 5 y sustituirlo por un nuevo Artículo 5.1, añadir un nuevo Artículo 5.2, derogar los Artículos 6, 7, 8, 9, 10 y 11 y dividir en capítulos la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", a los fines de permitir la ~~restructuración~~ *reestructuración* de la deuda de la Corporación del Fondo del Interés Apremiante ("COFINA") bajo el Título III de la Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico, mejor conocida como PROMESA; autorizar a COFINA a emitir bonos como parte de dicha ~~restructuración~~ *reestructuración* y establecer los términos de los mismos; establecer los poderes y facultades de COFINA y la composición y los poderes de su Junta de Directores; establecer la titularidad de COFINA sobre una porción de

los recaudos sobre el impuesto sobre ventas y uso y disponer para la transferencia y uso de dichos recaudos;  crear un gravamen estatutario en beneficio de los tenedores de bonos de COFINA; establecer ciertos acuerdos a nombre del Gobierno de Puerto Rico para beneficio de los tenedores de bonos de COFINA; disponer que el texto en inglés prevalecerá sobre el texto en español; derogar los Artículos 2 y 4 de la Ley 116-2013, según enmendada; enmendar el Artículo 25-A de la Ley 44 de 21 de junio de 1988, según enmendada; a los fines de permitir la venta de ciertos bonos de COFINA que tiene la Autoridad para el Financiamiento de la Infraestructura con la aprobación de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico; establecer que esta ley será efectiva en la fecha de la consumación del plan de ajuste de deuda de COFINA bajo el Título III de PROMESA; y para otros fines relacionados.

## EXPOSICIÓN DE MOTIVOS

Puerto Rico enfrenta una crisis fiscal y económica sin precedentes. Este proyecto, al igual que el acuerdo de ~~restructuración~~ *reestructuración* del Banco Gubernamental de Fomento, encamina a Puerto Rico en la ruta de la credibilidad. Con este acuerdo, hacemos ajustes significativos en el repago de la deuda gubernamental que otras administraciones tomaron prestado pero que nos toca a nosotros resolver. De esta forma, aseguramos que el Gobierno continúe operando y sirviendo a nuestro Pueblo.

Las posiciones asumidas y acciones tomadas por la administración pasada causaron que Puerto Rico perdiera acceso a los mercados de capital y precipitaron el colapso de su sistema de financiamiento público. Estas acciones aceleraron la contracción de la economía de Puerto Rico y precipitaron la migración de puertorriqueños a los Estados Unidos continentales.



La administración pasada desarrolló una relación hostil con los participantes de los mercados financieros, incluyendo cientos de miles de puertorriqueños que invirtieron sus ahorros confiando en el buen nombre y crédito del Gobierno de Puerto Rico y sus corporaciones públicas. Este ambiente hostil hacia Puerto Rico también resonó en el Congreso de los Estados Unidos debido a la falta de transparencia y honestidad, generando consistentemente coberturas noticiosas negativas sobre Puerto Rico a nivel local, nacional e internacional.

Las decisiones equivocadas de la pasada Administración llevaron al "Estado Libre Asociado" de Puerto Rico a la quiebra, lo que requirió el uso de sus recursos para atender y proveer servicios esenciales al pueblo de Puerto Rico. Esto, a su vez, actuó como catalítico para una controversia en la cual se cuestionó la estructura bajo la cual la Corporación del Fondo del Interés Apremiante ("COFINA") emitió sus bonos. En particular, algunos acreedores radicaron reclamaciones argumentando, entre otras cosas, que (i) las emisiones de bonos de COFINA violaron la Constitución de Puerto Rico, y (ii)

la porción de la contribución sobre ventas y uso impuesta por el Gobierno de Puerto Rico a la tasa de 5.5% (el "IVU") y transferida a COFINA constituye "recursos disponibles" del Gobierno de Puerto Rico bajo el Artículo VI, Sección 8 de la Constitución de Puerto Rico y debe utilizarse para el pago de la "deuda pública". Algunos acreedores también presentaron argumentos sobre el alcance de la Constitución de Puerto Rico que giran en base a si utiliza el término "recursos disponibles", según la versión en español, o "available revenues, including surplus" según la versión en inglés. El 5 de mayo de 2017, la Junta de Supervisión y Administración Financiera (la "Junta de Supervisión") creada bajo la Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico ("PROMESA", por sus siglas en inglés), como representante de COFINA, comenzó un proceso de ~~restructuración~~ *reestructuración* para COFINA bajo el Título III de PROMESA.

Las partes interesadas del Gobierno de Puerto Rico y COFINA comenzaron un proceso ordenado para resolver las disputas relacionadas a COFINA y la titularidad sobre el IVU (colectivamente, la "Disputa ELA-COFINA"). A esos fines, el 10 de agosto de 2018, el tribunal del Título III aprobó una estipulación y orden ~~designado~~ *designando* al Comité Oficial de Acreedores no Asegurados del Gobierno para actuar como agente la de Junta de Supervisión en su capacidad como representante del Gobierno de Puerto Rico (el "Agente del Gobierno") y a Bettina M. Whyte para actuar como agente de la Junta de Supervisión en su capacidad como representante de COFINA (el "Agente de COFINA") en un esfuerzo para facilitar la transacción de la Disputa ELA-COFINA.

El 5 de junio de 2018, el Agente del Gobierno y el Agente de COFINA anunciaron que habían llegado a un acuerdo en principio para resolver la Disputa ELA-COFINA (el "Acuerdo en Principio"). El Acuerdo en Principio estaba fundamentado en dividir la cantidad fija del IVU transferida a COFINA cada año fiscal (la "Renta Fija") entre el Gobierno y COFINA comenzando en el año fiscal 2019, donde COFINA recibiría el 53.65% de la cantidad anual de la Renta Fija y el Gobierno recibiría el 46.35% de la cantidad anual de la Renta Fija, además de todos los demás ingresos recaudados por concepto del IVU.

Consistente con la política pública implementada por el Gobernador de Puerto Rico, la Autoridad de Asesoría Financiera y Agencia Fiscal, la Junta de Supervisión y ciertos acreedores y aseguradores de los bonos de COFINA, llegaron a un acuerdo en apoyo a un plan de reestructuración para COFINA (según enmendado y reformulado el 21 de septiembre de 2018, el "Acuerdo de ~~Restructuración~~ *Reestructuración*"), el cual incorpora la división de la Renta Fija conforme al Acuerdo en Principio y provee para la transacción de la Disputa ELA-COFINA conforme a un plan de ajuste de deuda para COFINA bajo el Título III de PROMESA (el "Plan de COFINA").

Ahora le corresponde a la Asamblea Legislativa implementar el acuerdo entre las partes enmendando las disposiciones de la ley que creó a COFINA y que autorizó la emisión de sus bonos, la Ley 91-2006. Estas enmiendas liberarán el gravamen que tienen

actualmente los tenedores de COFINA sobre $17.5 billones de ingresos del IVU. Estos ingresos ahora estarán disponibles para ser utilizados por el Gobierno de Puerto Rico para atender y brindar servicios a los puertorriqueños. Al implementar el Acuerdo de ~~Restructuración~~ *Reestructuración*, esta legislación también pone fin al costoso litigio entre los agentes nombrados por la Junta de Supervisión y a las reclamaciones de los acreedores de COFINA mientras que, a la misma vez, clarifica la intención legislativa original de la Ley 91-2006, según enmendada. Además, como resultado de esta legislación, se ahorrará aproximadamente $437.5 millones por año al Gobierno de Puerto Rico para beneficio del pueblo de Puerto Rico.

Igualmente, esta legislación demuestra que la Asamblea Legislativa está comprometida con tomar los pasos necesarios para permitir el regreso de Puerto Rico a los mercados de capital. Como paso necesario para la implantación del Acuerdo de ~~Restructuración~~ *Reestructuración*, esta legislación autorizará la restructuración de la deuda de COFINA bajo el Título III de PROMESA, actuará como catalítico para otras restructuraciones, sentará las bases para que Puerto Rico resurja de la bancarrota, reducirá los costos relacionados a los litigios y aligerará la terminación de la Junta de Supervisión bajo PROMESA.

Esta Ley demuestra el compromiso de política pública continuo de la Asamblea Legislativa para corregir la crisis fiscal de Puerto Rico, honrar las obligaciones financieras de Puerto Rico, recuperar acceso a los mercados de capital, eliminar la incertidumbre económica y alcanzar un nivel de deuda sostenible para Puerto Rico.

*DECRÉTASE POR LA ASAMBLEA LEGISLATIVA DE PUERTO RICO:*

1    Sección 1. – Se añade un Capítulo I a la Ley 91-2006, según enmendada, conocida

2    como "Ley del Fondo de Interés Apremiante", cuyo título leerá como sigue:

3        *"CAPÍTULO I – TITULO Y DEFINICIONES"*

4    Sección 2.- Se renumera el Artículo 1 de la Ley 91-2006, según enmendada,

5    conocida como "Ley del Fondo de Interés Apremiante", como Artículo 1.1, y se enmienda

6    el mismo para que lea como sigue:

7    "Artículo 1.*1* — Título.

8        Esta Ley se conocerá como la "Ley **[del]** *de la Corporación del* Fondo de Interés

9    Apremiante".

1       Sección 3. – Se añade un Artículo 1.2 a la Ley 91-2006, según enmendada, conocida

2   como "Ley del Fondo de Interés Apremiante" para que lea como sigue:

3       *"Artículo 1.2.- Definiciones.*

4       *Los siguientes términos tendrán los significados que se expresan a continuación:*

5       *(a)      "AAFAF"– significa la Autoridad de Asesoría Financiera y Agencia Fiscal de*

6   *Puerto Rico.*

7       *(b)      "Ley"– significa la Ley 91-2006, según enmendada, también conocida como "Ley*

8   *de la Corporación del Fondo del Interés Apremiante".*

9       *(c)      "Acuerdos Complementarios"–* ~~significa el Contrato de Bonos, el Acuerdo de~~

10  ~~Transacción y cualquier otro acuerdo o instrumento otorgado por la Autoridad o el Fiduciario del~~

11  ~~Contrato de Bonos relacionado a, o en apoyo de, la Transacción de Restructuración y relacionado~~

12  ~~a, o en apoyo de, el Plan de Ajuste de la Corporación.~~ *significa el Plan de Ajuste de la Corporación,*

13  *el Contrato de Bonos, el Acuerdo de Transacción y cualquier otro acuerdo o instrumento otorgado*

14  *por la Corporación o el Fiduciario del Contrato de Bonos relacionado a, o en apoyo de, la*

15  *Transacción de Reestructuración y relacionado a, o en apoyo de, el Plan de Ajuste de la*

16  *Corporación.*

17      *(d)      "Actividades Autorizadas"– significa las actividades que la Corporación está*

18  *autorizada a llevar a cabo conforme al Artículo 2.4 de esta Ley.*

19      *(e)      "Junta de Directores"– significa la Junta de Directores de la Corporación.*

20      *(f)      "Contrato de Bonos"– significa uno o más contratos de fideicomiso, contratos de*

21  *bonos y cualquier suplemento o enmienda a éstos, o cualquier contrato o acuerdo similar otorgado*

22  *por la Corporación y el Fiduciario del Contrato de Bonos mediante el cual se emitan los Bonos del*

1    *Plan de Ajuste y que establezca los derechos y responsabilidades de la Corporación y los tenedores*

2    *de Bonos del Plan de Ajuste emitidos bajo el mismo.*

3    (g)    *"Presidente" – significa el presidente de la Junta de Directores.*

4    (h)    *"Ingresos de la Corporación" – significa los Primeros Ingresos hasta una cantidad*

5    *igual al cincuenta y tres punto sesenta y cinco por ciento (53.65%) de la Renta Fija para cada Año*

6    *Fiscal y todo derecho legal y en equidad, título e interés con respecto a los mismos, {incluyendo el*

7    *derecho a recibir los Primeros Ingresos según se dispone en el Artículo 4.1 de esta Ley}.*

8    (i)    *"Fondo de Ingresos de la Corporación " – significa el fondo o los fondos segregados*

9    *propiedad de la Corporación en la(s) cual(es) se depositan los Ingresos de la Corporación, cuya*

10    *cuenta (1) deberá estar a nombre del Fiduciario del Contrato de Bonos para beneficio de los*

11    *tenedores de Bonos del Plan de Ajuste, (2) no puede ser propiedad de, ni estar controlada por, el*

12    *Gobierno de Puerto Rico o una Entidad Gubernamental (excepto la Corporación) de ninguna*

13    *manera, y (3) se mantendrá en uno o más bancos en los Estados Unidos continentales.*

14    (j)    *"Corporación" – significa la Corporación del Fondo del Interés Apremiante creada*

15    *por esta Ley.*

16    (k)    *"Plan de Ajuste de la Corporación"– significa el plan de ajuste consumado con*

17    *relación al caso de la Corporación bajo el Título III de PROMESA, incluyendo la orden del*

18    *Tribunal de Distrito confirmando dicho plan de ajuste.*

19    (l)    *"Tribunal de Distrito"– significa el Tribunal de Distrito de los Estados Unidos*

20    *para el Distrito de Puerto Rico.*

21    (m)    *"Fecha de Efectividad" – significa la fecha en la cual el Plan de Ajuste de la*

22    *Corporación advenga efectivo de acuerdo a sus términos.*

1    (n)    "Costos de Financiamiento"– significa todos los costos asociados con la

2    Transacción de ~~Restructuración~~ Reestructuración, incluyendo los costos, honorarios y gastos de:

3    (1) emitir, dar servicio a, repagar o refinanciar los Bonos del Plan de Ajuste, independientemente

4    de si dichos costos se incurren en la emisión de dichos Bonos del Plan de Ajuste o a través del

5    término de los mismos, (2) hacer pagos conforme a los Acuerdos Complementarios, (3) pagar

6    cualquier sello, impuesto de emisión, impuesto similar u otros cargos relacionados a la Transacción

7    de ~~Restructuración~~ Reestructuración ~~;~~_;_ disponiéndose, además, que esta cláusula no limita de

8    manera alguna la exención contributiva provista en el Artículo 2.8 de esta Ley, (4) prepararse para

9    y completar la Transacción de ~~Restructuración~~ Reestructuración y (5) llevar a cabo todas las

10   actividades relacionadas a la Transacción de ~~Restructuración~~ Reestructuración. ~~A modo de~~

11   ~~aclaración~~ Es menester señalar, que, los Costos de Financiamiento también incluyen honorarios y

12   gastos administrativos incurridos antes o después del cierre relacionado a los Acuerdos

13   Complementarios, pero no incluyen pagos de principal e intereses bajo los Bonos del Plan de

14   Ajuste.

15   (o)    "Primeros Ingresos" – significa los primeros ingresos que corresponden a

16   Contribuciones Pignoradas en cualquier Año Fiscal, según se describe en el Artículo 4.1 de esta

17   Ley.

18   (p)    "Año Fiscal" – significa el año fiscal del Gobierno de Puerto Rico, el cual comienza

19   el 1 de julio y termina el 30 de junio.

20   (q)    "Renta Fija" – significa, para el Año Fiscal 2018-2019, setecientos ochenta y tres

21   millones ciento noventa y siete mil doscientos cincuenta y un ~~dólares~~ ($783,197,251.00) _dólares_

22   y, para cada Año Fiscal subsiguiente, la Renta Fija del Año Fiscal anterior más cuatro _(4)_ por

1    *ciento de dicha Renta Fija, hasta la Cantidad Máxima. La Renta Fija para cada año fiscal se pagará*

2    *de los primeros ingresos recaudados de las Contribuciones Pignoradas.*

3    *(r)    "Entidad Gubernamental"– significa cualquier agencia, departamento, oficina,*

4    *corporación pública, fideicomiso, fondo, sistema, instrumentalidad, subdivisión política, autoridad*

5    *fiscal o municipio del Gobierno de Puerto Rico.*

6    *(s)    "Gobierno de Puerto Rico"– significa el Estado Libre Asociado de Puerto Rico y su*

7    *gobierno.*

8    *(t)    "Fiduciario del Contrato de Bonos"– significa la Persona designada como fiduciario*

9    *o fiduciario del contrato de bonos bajo el Contrato de Bonos, incluyendo cualquier sucesor de éstos*

10    *bajo el Contrato de Bonos.*

11    *(u)    "Cantidad Máxima"– significa mil ochocientos cincuenta millones de dólares*

12    *($1,850,000,000.00) de dólares.*

13    *(v)    "Junta de Supervisión"– significa la Junta de Supervisión y Administración*

14    *Financiera para Puerto Rico establecida conforme a la Sección 101 de PROMESA.*

15    *(w)    "Persona"– significa cualquier persona natural o entidad legal, incluyendo, pero*

16    *sin limitarse a, el Gobierno de Puerto Rico, cualquier Entidad Gubernamental, o cualquier*

17    *individuo, firma, sociedad, proyecto conjunto, fideicomiso, sucesión, compañía de responsabilidad*

18    *limitada, corporación de individuos, asociación, corporación pública o privada, organizada o*

19    *existente bajo las leyes de Puerto Rico, los Estados Unidos de América, o cualquier otra jurisdicción*

20    *o de cualquier otro estado, municipalidad, subdivisión política, autoridad fiscal, agencia o*

21    *instrumentalidad de Puerto Rico, de los Estados Unidos de América o cualquier otra jurisdicción,*

22    *o cualquier combinación de éstas.*

1       *(x)    "Bonos del Plan de Ajuste" – significa cualquier Bono de Reestructuración y*

2  *cualquier Bono de Refinanciamiento.*

3       *(y)    "Contribuciones Pignoradas" – significa, sujeto a las disposiciones del Artículo 3.3*

4  *de esta Ley, (1) los ingresos y recaudos presentes y futuros generados por la porción del IVU que*

5  *corresponda a una tasa contributiva de cinco punto cinco <u>(5.5)</u> por ciento ~~(5.5%)~~ y (2) la Colateral*

6  *Substituta, si alguna.*

7       *(z)    "PROMESA"– significa la "Ley para la Supervisión, Administración y*

8  *Estabilidad Económica de Puerto Rico", Pub. L. No. 114–187, 130 Stat. 549 (2016), 48 U.S.C.*

9  *2101 et. seq.*

10      *(aa)    "Bonos de Refinanciamiento"– significa los bonos emitidos por la Corporación*

11  *conforme a la Ley y los Acuerdos Complementarios, con igualdad de prioridad que los Bonos de*

12  *Reestructuración (pari passu), para retirar o refinanciar cualquier Bono del Plan de Ajuste.*

13      *(bb)    "Bonos de Reestructuración"– significa los bonos emitidos por la Corporación*

14  *conforme a esta Ley, el Plan de Ajuste de la Corporación y los Acuerdos Complementarios, bajo*

15  *términos consistentes con, y que estén autorizados, validados y distribuidos conforme a, el Plan de*

16  *Ajuste de la Corporación.*

17      *(cc)    "Resolución de Reestructuración"– significa una o más resoluciones de la Junta de*

18  *Directores autorizando: (1) la emisión de los Bonos del Plan de Ajuste y describiendo sus términos*

19  *y (2) el pago de los Costos de Financiamiento, en cada caso de acuerdo a los términos del Plan de*

20  *Ajuste de la Corporación.*

21      *(dd)    "Transacción de Reestructuración"– significa las transacciones contempladas por,*

22  *o en apoyo de, el Plan de Ajuste de la Corporación.*

1        *(ee)*    *"IVU"*– *significa el impuesto de ventas y uso impuesto por el Gobierno de Puerto*

2 *Rico bajo las Secciones 4020.01 y 4020.02 del Súbcapítulo D de la Ley 1-2011, según enmendada,*

3 *conocida como el "Código de Rentas Internas para un Nuevo Puerto Rico".*

4        *(ff)*    *"Acuerdo de Transacción"*– *significa el Acuerdo de Transacción del 15 de octubre*

5 *de 2018 entre la Junta de Supervisión, a nombre del Gobierno de Puerto Rico, y el agente de la*

6 *Corporación designado por la Junta de Supervisión para transar o litigar la disputa entre el*

7 *Gobierno de Puerto Rico y la Corporación con respecto a la titularidad sobre el IVU.*

8        *(gg)*    *"Colateral ~~Substituta~~ Sustituta"*– *significa todo o una porción de una contribución*

9 *de aplicación general a través de Puerto Rico que se legisle en sustitución total de las*

10 *Contribuciones Pignoradas o que de otra manera constituya colateral similar o comparable para*

11 *los Bonos del Plan de Ajuste.*

12        *(hh)*    *"Requisitos de Sustitución"* – *significa (1) la aprobación de legislación disponiendo*

13 *para Colateral ~~Substituta~~ Sustituta, que a su vez disponga (A) que la Colateral ~~Substituta~~*

14 *Sustituta en una cantidad igual a los Ingresos de la Corporación se ha transferido irrevocablemente*

15 *y es propiedad única y exclusivamente de la Corporación en la misma medida en que se provee bajo*

16 *el Artículo 2.2 de esta Ley, (B) que, luego de dicha transferencia, la Colateral ~~Substituta~~ Sustituta*

17 *en una cantidad igual a los Ingresos de la Corporación no es, y no constituirá, "recursos*

18 *disponibles" o "ingresos disponibles" del Gobierno de Puerto Rico según dicho término se utiliza*

19 *en la Sección 8 del Artículo VI de la Constitución de Puerto Rico o de cualquier otra manera en la*

20 *Constitución de Puerto Rico (independientemente de si se interpreta la versión en español o inglés*

21 *de la Constitución de Puerto Rico), (C) para la creación de un gravamen sobre la Colateral*

22 *Substituta a favor del Fiduciario del Contrato de Bonos para beneficio de los tenedores de Bonos*

1  *del Plan de Ajuste en la misma medida que se establece en el Artículo 3.2 de esta Ley y (D) que el*

2  *Gobierno de Puerto Rico y las Entidades Gubernamentales continuarán proveyendo las garantías*

3  *establecidas en el Artículo 3.3 de esta Ley con respecto a dicha Colateral ~~Substituta~~ Sustituta, y*

4  *(2) que, previo a la ~~substitución~~ sustitución de la Colateral ~~Substituta~~ Sustituta, se hayan*

5  *satisfecho los requisitos de calificación establecidos en los Acuerdos Complementarios con respecto*

6  *a la Colateral ~~Substituta~~ Sustituta."*

7  Sección 4. – Se añade un Capítulo II a la Ley 91-2006, según enmendada, conocida

8  como "Ley del Fondo de Interés Apremiante", cuyo título leerá como sigue:

9  *"CAPÍTULO II – LA CORPORACION DEL FONDO DE INTERÉS APREMIANTE"*

10  Sección 5. – Se renumera el Artículo 2 de la Ley 91-2006, según enmendada,

11  conocida como "Ley del Fondo de Interés Apremiante", como Artículo 2.1, y se enmienda

12  el mismo para que lea como sigue:

13  "Artículo 2.1 **[Creación de la Corporación Pública]** *Creación y Existencia Legal Separada*

14  *de la Corporación.*

15  **[(a)]** Se crea una corporación pública e instrumentalidad del **[Estado Libre**

16  **Asociado]** *Gobierno* de Puerto Rico que constituye un cuerpo corporativo y político

17  independiente y separado del ~~Estado Libre Asociado~~ *Gobierno* de Puerto Rico que se

18  conocerá como la Corporación del Fondo de Interés Apremiante de Puerto Rico

19  **[("COFINA")]**, cuyo nombre en inglés será "Puerto Rico Sales Tax Financing

20  Corporation". *La Corporación que existe por virtud de esta Ley es y se reconocerá para todos los*

21  *propósitos como una entidad legal independiente y separada del Gobierno de Puerto Rico y*

1    *cualquier otra Entidad Gubernamental. Será operada independientemente y sus negocios y*

2    *asuntos serán dirigidos por, o bajo la dirección de, su Junta de Directores.*

3    [(b)    **COFINA** se crea con el propósito de emitir bonos y utilizar otros

4    mecanismos de financiamiento para los siguientes propósitos:

5    (i)    pagar o refinanciar, directa o indirectamente, toda o parte de la deuda

6    extraconstitucional del Estado Libre Asociado de Puerto Rico existente al 30 de junio

7    de 2006 y el interés pagadero sobre ésta,

8    (ii)    pagar toda o parte de la deuda del Secretario de Hacienda con el Banco

9    Gubernamental de Fomento para Puerto Rico por la cantidad de mil (1,000) millones

10   de dólares que se utilizó para financiar el déficit presupuestario del año fiscal 2008-

11   2009,

12   (iii)    pagar todo o parte de

13   (A)    los financiamientos otorgados o que se otorgarán al Estado Libre

14   Asociado de Puerto Rico hasta el 30 de junio de 2014 por el Banco Gubernamental de

15   Fomento para Puerto Rico o por otras instituciones financieras pagaderos de emisiones

16   futuras de bonos de obligación general del Estado Libre Asociado de Puerto Rico,

17   incluyendo pero no limitado a notas emitidas por el Estado Libre Asociado de Puerto

18   Rico en anticipación de emisión de bonos,

19   (B)    financiamientos evidenciados por bonos o pagarés del Estado Libre

20   Asociado de Puerto Rico cuyos intereses son variables y las obligaciones incurridas

21   bajo cualquier tipo de contrato de financiamiento, garantía o contrato de intercambio

1    de tasas de interés (interest rate swaps) otorgados con relación a dichos bonos o pagarés

2    variables y

3        (C)    cualquier deuda del Estado Libre Asociado de Puerto Rico sin fuente de

4    repago o pagadera de asignaciones presupuestarias del Estado Libre Asociado de

5    Puerto Rico existente al 30 de junio de 2013,

6        (iv)    pagar todas o parte de las cuentas por pagar a suplidores del Estado Libre

7    Asociado de Puerto Rico,

8        (v)    pagar o financiar gastos operacionales del Gobierno del Estado Libre

9    Asociado de Puerto Rico correspondientes a los años fiscales 2008-09 2009-10, y 2010-

10    11,

11        (vi)    pagar o financiar gastos operacionales del Gobierno del Estado Libre

12    Asociado de Puerto Rico correspondientes al año fiscal 2011-2012, los cuales se

13    incluirán dentro del presupuesto anual del Gobierno de Puerto Rico,

14        (vii)    pagar o financiar gastos operacionales del Gobierno del Estado Libre

15    Asociado de Puerto Rico correspondientes a los años fiscales 2012-2013, 2013-2014 y

16    2014-2015,

17        (viii)    generar fondos para nutrir el Fondo de Estímulo Económico de Puerto

18    Rico que se establece bajo el Artículo 6 de esta Ley,

19        (ix)    nutrir el Fondo de Emergencia del Estado Libre Asociado de Puerto Rico

20    para atender gastos que surjan como resultado de algún evento catastrófico como

21    huracanes o inundaciones;

1      (x)      generar fondos para nutrir el Fondo de Cooperación Económica y

2   Alternativas para Empleados Públicos;

3      (xi)     nutrir el Fondo de Reconstrucción Fiscal creado por la Ley 45-2013 o pagar

4   o refinanciar, directa o indirectamente, toda o parte de la deuda autorizada por la Ley

5   45-2013; y

6      (xii)    pagar, financiar o refinanciar los bonos, préstamos o notas en

7   anticipación de bonos emitidos por el Estado Libre Asociado de Puerto Rico bajo las

8   Leyes 242-2011 y 47-2013 o cubrir el costo de mejoras públicas necesarias que pudieran

9   ser financiadas por los bonos autorizados por las Leyes 242 2011 y 47 2013.

10     (c)      Los bonos de COFINA tendrán como fuente de repago la porción del

11   impuesto que se deposita en el Fondo de Interés Apremiante, bajo las disposiciones

12   del Artículo 3(a) de esta Ley y cualquier subsidio que reciba COFINA bajo el Programa

13   Federal conocido como "Build America Bonds". La Junta de Directores de COFINA no

14   autorizará ninguna emisión de bonos de COFINA, a menos que el Presidente o un

15   oficial de COFINA designado por el Presidente certifique que el principal y los

16   intereses de los bonos de COFINA que se propone autorizar, más el principal y los

17   intereses de todos los bonos de COFINA en circulación (excepto aquellos bonos a ser

18   pagados con el producto de los nuevos bonos o aquellos pagos de principal o interés

19   para los cuales se hayan segregado suficientes fondos para cubrir su pago), pagaderos

20   en cada año fiscal (comenzando con el año fiscal en curso), es igual o menor que la

21   suma de la Renta Fija asignada a COFINA, correspondiente a dicho año fiscal más

1   cualquier subsidio que COFINA espere recibir en dicho año fiscal bajo el Programa

2   Federal "Build America Bonds".

3      (d)   No obstante las disposiciones del Artículo 4, COFINA podrá utilizar la

4   cantidad que fuere necesaria de los dineros provenientes de los recaudos indicados en

5   los Artículos 3(a) y 5(d) o el producto de la venta de los bonos emitidos bajo las

6   disposiciones de esta Ley, para el pago de intereses capitalizados sobre dichos bonos,

7   para el pago de los gastos incurridos en relación con la emisión y venta de dichos

8   bonos, incluyendo aquellos gastos relacionados con seguros, cartas de crédito u otros

9   instrumentos, y para sufragar cualquier gasto operacional.

10     (e)   COFINA estará adscrita al Banco Gubernamental de Fomento para Puerto

11   Rico (en adelante, "BGF"). La Junta de Directores de COFINA será la Junta de

12   Directores del BGF. COFINA tendrá los mismos poderes, derechos y facultades que se

13   le conceden al BGF bajo las disposiciones de la Carta Constitucional del BGF, cuyos

14   poderes podrán ejercerse únicamente para cumplir con los propósitos para el cual se

15   ha creado COFINA, pero no tendrá la facultad de actuar como agente fiscal del

16   gobierno. Los ingresos, operaciones y propiedades de COFINA gozarán de la misma

17   exención contributiva que goza el BGF y los bonos, pagarés y otras obligaciones de

18   COFINA y el ingreso por concepto de los mismos gozarán de la misma exención

19   contributiva que gozan los bonos, pagarés y otras obligaciones del BGF.

20     (f)   Las prohibiciones del Artículo 5 de la Ley Núm. 103 de 25 de mayo de

21   2006, conocida como la "Ley para la Reforma Fiscal del Gobierno del Estado Libre

1   Asociado de Puerto Rico de 2006", no aplicarán a las emisiones de bonos de COFINA

2   autorizadas por esta Ley.

3       (g)    COFINA podrá emitir pagarés en anticipación de bonos "pagarés", y

4   dichos pagarés:

5       (i)    podrán ser emitidos en una cantidad máxima que no excederá la que la

6   Junta de Directores de COFINA determine que puede ser repagada del producto de la

7   emisión de bonos autorizados bajo el Artículo 2(b) de esta Ley y permitidos bajo el

8   Artículo 2(c) de esta Ley;

9       (ii)    no estarán sujetos a la limitación del Artículo 2(c) de esta Ley, salvo que

10  la documentación autorizando los bonos de COFINA disponga otra cosa ni se

11  considerarán en el cálculo de bonos en circulación requerido por dicho Artículo;

12      (iii)    no se tomarán en consideración para efectos de la primera oración del

13  Artículo 5(d) de esta Ley; y

14      (iv)    podrán ser repagados del producto de bonos emitidos bajo esta Ley y de

15  cualquiera de sus fondos disponibles.]"

16      Sección 6. – Se añade un Artículo 2.2 a la Ley 91-2006, según enmendada, conocida

17  como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

18      *"Artículo 2.2.- Titularidad sobre los Ingresos de la Corporación.*

19      *(a) Cualquier y toda titularidad y derechos sobre los Ingresos de la Corporación, fueron o*

20  *han sido transferidos o por la presente se transfieren a la Corporación.*

21      *(b) La transferencia descrita en el inciso (a) arriba es una transferencia absoluta de todo*

22  *derecho legal y en equidad, título e interés, y no una pignoración u otro financiamiento.*

1       *(c) La Corporación es y será la única y exclusiva dueña de los Ingresos de la Corporación*

2 *hasta que los Bonos del Plan de Ajuste, incluyendo los intereses que devenguen éstos, y todas las*

3 *cantidades y obligaciones bajo los Acuerdos Complementarios se paguen en su totalidad en efectivo*

4 *o hayan sido de otra manera satisfechas conforme a sus términos.*

5       *(d) Las Personas designadas como agentes retenedores para propósitos de la imposición y*

6 *recaudación del IVU conforme a la Ley 1-2011, según enmendada, también conocida como el*

7 *"Código de Rentas Internas para un Nuevo Puerto Rico", se entenderá que recaudan a nombre de*

8 *la Corporación cualquier porción del IVU en la cual la Corporación tiene un interés propietario.*

9 *Dichos agentes retenedores continuarán estando sujetos a toda y cualquier obligación y*

10 *responsabilidad impuesta por el Código de Rentas Internas para un Nuevo Puerto Rico, a agentes*

11 *retenedores con relación a la imposición y recaudación del IVU.*

12       *(e) Los Ingresos de la Corporación no constituyen "recursos disponibles" o "ingresos*

13 *disponibles" del Gobierno de Puerto Rico según dicho término se utiliza en la Sección 8 del*

14 *Artículo VI de la Constitución de Puerto Rico o de cualquier otra manera en la Constitución de*

15 *Puerto Rico (independientemente de si se interpreta la versión en español o inglés de la*

16 *Constitución de Puerto Rico)."*

17       Sección 7. – Se añade un Artículo 2.3 a la Ley 91-2006, según enmendada, conocida

18 como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

19       *"Artículo 2.3.- Propósito de la Corporación.*

20       *En y después de la Fecha de Efectividad, el propósito de la Corporación será (a) emitir los*

21 *Bonos del Plan de Ajuste, (b) ser dueña de y administrar los Ingresos de la Corporación, y (c)*

22 *emitir otros bonos, notas o evidencia de deuda de la Corporación según autorizado por el Plan de*

1    *Ajuste de la Corporación y los Acuerdos Complementarios, los cuales serán pagaderos de aquellos*

2    *ingresos que disponga la Asamblea Legislativa."*

3    Sección 8. – Se añade un Artículo 2.4 a la Ley 91-2006, según enmendada, conocida

4    como "Ley del Fondo de Interés Apremiante", para que lea ~~en su totalidad~~ como sigue:

5    *"Artículo 2.4.- Actividades de la Corporación.*

6    *Las actividades de la Corporación se limitarán a las siguientes* ~~*Actividades Autorizadas*~~:

7    *(a)     recibir y ser dueña de los Ingresos de la Corporación y aquellos otros ingresos o*

8    *propiedades que se le provean o transfieran a la Corporación;*

9    *(b)     aprobar la Resolución de* ~~*Restructuración*~~ *Reestructuración;*

10   *(c)     emitir, de tiempo en tiempo, los Bonos del Plan de Ajuste y cualquier bono, nota o*

11   *evidencia de deuda cuya emisión esté permitida por el Artículo 2.3 de esta Ley;*

12   *(d)     otorgar y cumplir con los Acuerdos Complementarios;*

13   *(e)     para garantizar el pago de cualquier bono, nota o evidencia de* ~~*duda*~~ *deuda cuya*

14   *emisión esté autorizada por el Artículo 2.3 de esta Ley, pignorar, de manera subordinada en todos*

15   *los aspectos al gravamen establecido en el Artículo 3.2 de esta Ley, (1) cualquier cantidad*

16   *remanente de los Ingresos de la Corporación después del pago de los Bonos del Plan de Ajuste o*

17   *(2) cualquier otro fondo o propiedad que se asigne a la Corporación después* ~~*del*~~ *de la Fecha de*

18   *Efectividad.*

19   *(f)     tomar cualquier y toda otra acción que sea necesaria o apropiada para consumar la*

20   *Transacción de* ~~*Restructuración*~~ *Reestructuración y el Plan de Ajuste de la Corporación,*

21   *incluyendo hacer enmiendas a, intercambiar y/o cancelar, los bonos emitidos por la Corporación*

1   *previo a la Fecha de Efectividad y enmendar y reformular los acuerdos de la Corporación con*

2   *respecto a los mismos."*

3       Sección 9.– Se añade un Artículo 2.5 a la Ley 91-2006, según enmendada, conocida

4   como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

5       *"Artículo 2.5.- Poderes Adicionales.*

6       *Para llevar a cabo las Actividades Autorizadas, la Corporación tendrá, sin limitación de lo*

7   *anterior, los siguientes poderes:*

8       *(a)    demandar y ser demandada en cualquier tribunal de Puerto Rico o en el Tribunal*

9   *de Distrito <u>Federal</u>;*

10       *(b)    adoptar, cambiar y usar un sello;*

11       *(c)    formular, adoptar, enmendar y derogar estatutos para la administración de sus*

12   *asuntos y aquellas normas, reglas y reglamentos que sean necesarios o pertinentes para ejercer y*

13   *desempeñar las Actividades Autorizadas;*

14       *(d)    abrir y mantener cuentas de banco, incluyendo el Fondo de Ingresos de la*

15   *Corporación;*

16       *(e)    adquirir, arrendar, tener dominio sobre y vender propiedad;*

17       *(f)    tener completo dominio sobre todas sus propiedades (incluyendo los Ingresos de la*

18   *Corporación), sujeto al gravamen estatutario establecido bajo el Artículo 3.2 de esta Ley;*

19       *(g)    negociar, otorgar y enmendar contratos y cualquier otro instrumento necesario o*

20   *conveniente para desempeñar las Actividades Autorizadas;*

21       *(h)    nombrar o destituir oficiales, agentes y empleados, establecer sus compensaciones,*

22   *poderes y facultades, en cada caso, de conformidad con los Acuerdos Complementarios;*

1    *(i)  pagar sus gastos operacionales y los Costos de Financiamiento;*

2    *(j)  procurar seguros contra pérdidas con relación a sus actividades, propiedades o*

3 *activos, incluyendo seguros que cubran a sus directores y oficiales;*

4    *(k)  invertir fondos y establecer y mantener reservas según requerido por, y bajo los*

5 *estándares establecidos en, los Acuerdos Complementarios;*

6    *(l)  indemnizar a los miembros de la Junta de Directores, sus oficiales, agentes,*

7 *empleados, contratistas y terceros por conducta que no constituya negligencia crasa, dolo o fraude;*

8    *(m)  ejercer todos aquellos otros poderes no incompatibles con los aquí expresados que*

9 *sean necesarios para llevar a cabo las Actividades Autorizadas;*

10    *(n)  llevar a cabo todos los actos o medidas necesarias o convenientes para cumplir su*

11 *propósito y llevar a cabo los poderes que se le confieren expresamente en esta Sección;*

12    *(o)  delegar a sus oficiales, agentes, empleados o contratistas autoridad para tomar*

13 *acciones para cumplir con esta Ley; y*

14    *(p)  firmar, radicar y enmendar cualquier planilla, formulario, elecciones o*

15 *declaraciones con cualquier autoridad gubernamental."*

16    Sección 10.- Se añade un Artículo 2.6 a la Ley 91-2006, según enmendada, conocida

17 como "Ley del Fondo de Interés Apremiante" para que lea como sigue:

18    *"Artículo 2.6.-Actividades Prohibidas.*

19    *Mientras los Bonos del Plan de Ajuste estén en circulación, la Corporación no estará*

20 *autorizada a:*

21    *(a)  fusionarse o consolidarse, directa o indirectamente, con ninguna Persona;*

1    (b)    incurrir, garantizar o de alguna otra manera obligarse a pagar deuda alguna u otras

2    obligaciones que no sean los Bonos del Plan de Ajuste, gastos operacionales, los Costos de

3    Financiamiento y cualquier bono, nota, o evidencia de deuda permitida bajo el Artículo 2.3 de esta

4    Ley.

5    (c)    gravar, crear o registrar gravámenes sobre cualquier propiedad (incluyendo los

6    Ingresos de la Corporación), excepto (1) por el gravamen para garantizar el pago de los Bonos del

7    Plan de Ajuste creado por el Artículo 3.2 de esta Ley o (2) cualquier pignoración o gravamen para

8    garantizar un bono, nota o evidencia de deuda permitida bajo el Artículo 2.3 de esta Ley, pero sólo

9    en la medida en que dicha prenda o gravamen esté subordinado en todos los aspectos al gravamen

10    establecido en el Artículo 3.2 de esta Ley;

11    (d)    llevar a cabo actividades de negocio que no sean las autorizadas expresamente en

12    esta Ley;

13    (e)    disolver, liquidar, vender o, excepto según permitido por el Artículo 2.4(e), de otra

14    manera transferir toda o una parte de su propiedad (incluyendo los Ingresos de la Corporación); ~~y~~

15    (f)    los directores de la Corporación no votarán para autorizar a la Corporación a

16    comenzar un caso bajo el Título III de PROMESA o procesos judiciales de reestructuración

17    similares bajo las leyes aplicables sujeto a las disposiciones de tales leyes; y

18    ~~(f)~~(g)    tomar cualquier otra acción que sea inconsistente con el propósito de la

19    Corporación, según establecido por esta Ley o ~~complementario a éste~~ complementaria a ésta."

20    Sección 11.- Se añade un Artículo 2.7 a la Ley 91-2006, según enmendada, conocida

21    como "Ley del Fondo de Interés Apremiante", para que lea en su totalidad como sigue:

22    "Artículo 2.7.- Junta de Directores

1      *Los poderes de la Corporación se ejercerán a través de la Junta de Directores.*

2      *(a)     Composición de la Junta de Directores.*

3      *La Junta de Directores estará compuesta por tres (3) miembros, que cumplirán los*

4 *requisitos establecidos en el Artículo 2.7(b)(iii) de esta Ley y quienes serán nombrados por el*

5 *Gobernador de Puerto Rico; disponiéndose que, conforme a las disposiciones de los Acuerdos*

6 *Complementarios, ciertos tenedores de Bonos del Plan de Ajuste podrán someter, para la*

7 *consideración del Gobernador, hasta tres (3) recomendaciones para el nombramiento inicial de los*

8 *directores de la Corporación, pero el Gobernador no estará obligado a seleccionar a dichas personas.*

9      *(b)     Disposiciones Generales con respecto a la Junta de Directores.*

10      *(i)     Cada director será nombrado por un término de tres (3) años y podrá servir*

11 *términos consecutivos; disponiéndose, que el Gobernador podrá remover a cualquier director*

12 *previo a la expiración de su término si dicho director incumple con las responsabilidades*

13 *establecidas en esta Ley o por negligencia crasa, dolo o fraude.*

14      *(ii)     cada miembro de la Junta de Directores tendrá derecho a un (1) voto;*

15      *(iii)     cada miembro de la Junta de Directores deberá satisfacer los requisitos de*

16 *independencia y cualificación  esbozados en los Acuerdos Complementarios (incluyendo que*

17 *ningún miembro de la Junta de Directores puede ser un oficial, empleado o director de cualquier*

18 *Entidad Gubernamental que no sea la Corporación);*

19      *(iv)     todas las decisiones y acciones de la Junta de Directores requerirán el voto*

20 *afirmativo de una mayoría de los miembros de la Junta de Directores que estén en funciones,*

21 *disponiéndose que los estatutos corporativos de la Corporación podrán requerir la aprobación de*

22 *una cantidad mayor de directores para ciertos propósitos; y*

1      (v)      los miembros de la Junta de Directores seleccionarán entre sus miembros un

2      Presidente.

3      (c)      Vacantes.

4           En la medida que surja una vacante en el puesto de un miembro de la Junta de Directores

5      por muerte, remoción, renuncia o de cualquier otra manera, el Gobernador nombrará un director

6      sucesor que cumpla con los requisitos establecidos en el Artículo 2.7(b)(iii) de esta Ley conforme

7      al Artículo 2.7(b)(i) de esta Ley.

8      (d)      Compensación.

9           Los miembros de la Junta de Directores recibirán compensación conforme a lo permitido

10     por los Acuerdos Complementarios.

11     (e)      Aprobación y Enmienda de Reglas.

12          Tan pronto como sea factible luego del nombramiento de todos los directores y el

13     nombramiento del Presidente, la ~~Autoridad~~ Corporación adoptará reglas y procedimientos para

14     gobernar sus actividades bajo esta Ley. La Junta de Directores podrá enmendar dichas reglas y

15     procedimientos de tiempo en tiempo.

16     (f)      ~~Quorum~~ Quórum.

17          Una mayoría de los miembros de la Junta de Directores en funciones constituirán el

18     quórum para tomar decisiones o ejercer cualquier poder o función de la Corporación. Uno o más

19     miembros podrán participar de una reunión de la Junta de Directores mediante teleconferencia o

20     equipo de comunicaciones similar. La participación por dichos medios constituirá participación

21     presencial en la reunión. Cualquier acción necesaria o permitida en cualquier reunión de la Junta

1   *de Directores será autorizada sin necesidad de una reunión siempre y cuando todos los miembros*

2   *de la Junta de Directores den su consentimiento por escrito a dicha acción.*

3       *(g)    Delegación.*

4       *La Junta de Directores podrá delegar a uno o más de los miembros o a los oficiales, agentes*

5   *y empleados de la Corporación aquellos poderes y responsabilidades que la Junta de Directores*

6   *determine sean apropiados."*

7       Sección 12.– Se añade un Artículo 2.8 a la Ley 91-2006, según enmendada, conocida

8   como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

9       *"Artículo 2.8. – Exención Contributiva.*

10      *(a)    Por la presente se determina y declara que las actividades de la Corporación tienen*

11  *un propósito público. Por lo tanto, la Corporación estará totalmente exenta de, y no tendrá que*

12  *pagar contribución, impuesto, licencia, sello, honorario u otro cargo similar alguno impuesto por*

13  *el Gobierno de Puerto Rico o cualquier Entidad Gubernamental sobre cualquiera de las propiedades*

14  *de las cuales es dueña, posee, custodia o usa o sobre sus actividades o sobre cualquier ingreso, pago*

15  *o ganancia derivada de lo antes mencionado.*

16      *(b)    Los Bonos del Plan de Ajuste, incluyendo, pero sin limitarse a, cualquier pago o*

17  *ingreso con relación a los Bonos del Plan de Ajuste y la transferencia de los Bonos del Plan de*

18  *Ajuste, estará, en todo momento, exento de contribución, impuesto, licencia, sello, honorario u otro*

19  *cargo impuesto por el Gobierno de Puerto Rico o cualquier Entidad Gubernamental. Los tenedores*

20  *y dueños beneficiarios de los Bonos del Plan de Ajuste no estarán sujetos a la obligación de radicar*

21  *planilla, planilla informativa contributiva o cualquier otro requisito similar del Gobierno de Puerto*

1    *Rico o cualquier Entidad Gubernamental por razón de tener, ser titular de o transferir los Bonos*

2    *del Plan de Ajuste."*

3    Sección 13.- Se añade un Artículo 2.9 a la Ley 91-2006, según enmendada, conocida

4    como "Ley del Fondo de Interés Apremiante" para que lea como sigue:

5    *"Artículo 2.9.- Inaplicabilidad de Ciertas Leyes.*

6    *Las siguientes leyes o disposiciones no serán aplicables a la Corporación ~~aún si pudiera~~*

7    *~~parecer que aplican~~:*

8    *(a)    Capítulos 4 y 6 de la Ley 26-2017, según enmendada, conocida como "Ley para el*

9    *Cumplimiento del Plan Fiscal";*

10    *(b)    Ley 1-2012, según enmendada, conocida como la "Ley de Ética Gubernamental de*

11    *Puerto Rico de 2011";*

12    *(c)    Ley 103-2006, según enmendada, conocida como "Ley de Reforma Fiscal del*

13    *Gobierno del Estado Libre Asociado de Puerto Rico de 2006";*

14    *(d)    Ley 8-2017, según enmendada, conocida como la "Ley para la Transformación de*

15    *los Recursos Humanos en el Gobierno de Puerto Rico";*

16    *(e)    Ley 237-2004, según enmendada, conocida como la "Ley para Establecer*

17    *Parámetros Uniformes para la Contratación de Servicios Profesionales y Consultivos por las*

18    *Agencias e Instrumentalidades del Gobierno de Puerto Rico";*

19    *(f)    Ley 197-2002, según enmendada, conocida como la "Ley para Regular el Proceso*

20    *de Transición del Gobierno de Puerto Rico";*

21    *(g)    Ley 78-2011, según enmendada, conocida como el "Código Electoral de Puerto Rico*

22    *para el Siglo XXI";*

1        *(h)     Ley 38-2017, según enmendada, conocida como la "Ley de Procedimiento*

2  *Administrativo Uniforme del Gobierno de Puerto Rico";*

3        *(i)     Plan 3-2011, según enmendado, conocido como el "Plan de Reorganización de*

4  *Administración de Servicios Generales";*

5        *(j)     Ley 230 de 23 de julio de 1974, según enmendada, conocida como la "Ley de*

6  *Contabilidad del Gobierno";*

7        *(k)     Ley 3-2017, conocida como la "Ley para Atender la Crisis Económica, Fiscal y*

8  *Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico"; y*

9        *(l)     Ley 14 de 17 de abril de 1972, según enmendada."*

10        Sección 14.– Se añade un Capítulo III a la Ley 91-2006, según enmendada, conocida

11  como "Ley del Fondo de Interés Apremiante", cuyo título leerá como sigue:

12        *"Capítulo   III   -   LA   TRANSACCIÓN   DE   ~~RESTRUCTURACIÓN~~*

13  *<u>REESTRUCTURACIÓN</u>"*

14        Sección 15.– Se deroga el Artículo 3 de la Ley 91-2006, según enmendada, conocida

15  como "Ley del Fondo de Interés Apremiante" y se sustituye por un nuevo Artículo 3.1,

16  que leerá como sigue:

17        *"Artículo 3.1- Emisión de los Bonos del Plan de Ajuste*

18        *(a)     En y después de la Fecha de Efectividad, la Corporación estará autorizada a emitir*

19  *los Bonos del Plan de Ajuste, de tiempo en tiempo, bajo los términos del Plan de Ajuste de la*

20  *Corporación y los términos y condiciones autorizados por la Corporación y establecidos en la*

21  *Resolución de Reestructuración y los Acuerdos Complementarios.*

1       *(b)     Los Bonos del Plan de Ajuste estarán fechados, devengarán interés a las tasas y*

2  *vencerán en la fecha o fechas, que determine la Corporación y así lo autorice en la Resolución de*

3  *~~Restructuración~~ Reestructuración de acuerdo a, y consistente con, el Plan de Ajuste de la*

4  *Corporación. La Corporación determinará la forma de los Bonos del Plan de Ajuste y la manera de*

5  *otorgamiento de los Bonos del Plan de Ajuste, y fijará la denominación o denominaciones de los*

6  *Bonos del Plan de Ajuste y el lugar o lugares de pago del principal y los intereses de los mismos,*

7  *los términos para su redención y compra en lugar de redención y los otros términos de los mismos,*

8  *todo conforme a, y consistente con, el Plan de Ajuste de la Corporación.*

9       *(c)     Los Bonos del Plan de Ajuste serán pagaderos únicamente de los Ingresos de la*

10  *Corporación conforme los términos del Contrato de Bonos y los Acuerdos Complementarios.*

11       *(d)     La Corporación podrá adquirir bonos emitidos por la Corporación bajo los términos*

12  *de, y conforme a, el Plan de Ajuste de la Corporación y los Acuerdos Complementarios aplicables,*

13  *a un precio que no exceda el precio de redención de los mismos. Todos los bonos así adquiridos*

14  *serán cancelados.*

15  *~~(e)     Ninguno de los miembros de la Junta de Directores y ninguna Persona natural que~~*

16  *~~firme dichos bonos será responsable personalmente por los mismos ni estará sujeta a~~*

17  *~~responsabilidad personal por razón de la emisión de los mismos.~~*

18       *~~(f)~~(e)     Los Bonos del Plan de Ajuste no constituirán deuda del Gobierno de Puerto Rico*

19  *ni de ninguna Entidad Gubernamental excepto por la Corporación. Esta aseveración se incluirá*

20  *en los Bonos del Plan de Ajuste, el Contrato de Bonos y los documentos de divulgación relacionados*

21  *a dichos bonos."*

1    Sección 16.– Se añade un Artículo 3.2 a la Ley 91-2006, según enmendada, conocida

2    como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

3    *"Artículo 3.2.-  Gravamen Estatutario.*

4    *Los Bonos del Plan de Ajuste estarán, automáticamente tras ser emitidos, garantizados por*

5    *un primer gravamen estatutario sobre todos los derechos, título e interés de la Corporación sobre*

6    *las Contribuciones Pignoradas, incluyendo cualquier dinero, ingreso, renta, cuenta, derecho*

7    *contractual o intangible derivado de éstas, a favor del Fiduciario del Contrato de Bonos para*

8    *beneficio de los tenedores de Bonos del Plan de Ajuste. Dicho primer gravamen estatutario será*

9    *automático y se constituirá, perfeccionará, será válido y exigible automáticamente desde y después*

10   *de la Fecha de Efectividad, sin necesidad acción por Persona alguna. Ningún instrumento tendrá*

11   *que ser otorgado, registrado o inscrito en un récord oficial o registro gubernamental u oficina para*

12   *perfeccionar o continuar el primer gravamen estatutario o para establecer o mantener la prioridad*

13   *del mismo. Ningún contacto de las Contribuciones Pignoradas con cualquier propiedad del*

14   *Gobierno de Puerto Rico, de cualquier otra Entidad Gubernamental o de cualquier Persona*

15   *limitará, frustrará, menoscabará o interferirá con dicho gravamen estatutario. Dicho gravamen*

16   *estatutario será válido, vinculante, estará perfeccionado y será ejecutable contra cualquier Persona*

17   *que tenga una reclamación de cualquier tipo, extracontractual, contractual u otra, contra la*

18   *Corporación y sus activos, independientemente de si dicha Persona fue notificada de dicho*

19   *gravamen.*

20   Sección 17.– Se añade un Artículo 3.3 a la Ley 91-2006, según enmendada, conocida

21   como "Ley del Fondo de Interés Apremiante", para que lea en su totalidad como sigue:

1    "*Artículo 3.3.- Convenios relacionados a los Bonos del Plan de Ajuste y la Transacción de*

2    ~~*Restructuración*~~ *Reestructuración.*

3    *El Gobierno de Puerto Rico, con la intención de estar contractualmente obligado, por la*

4    *presente acuerda y se compromete con la Corporación y con cualquier tenedor de Bonos del Plan*

5    *de Ajuste, y autoriza a la Corporación a incluir dicho compromiso en el Contrato de Bonos para*

6    *beneficio de los tenedores de Bonos del Plan de Ajuste, a no, y que ninguna Entidad*

7    *Gubernamental estará autorizada a, hasta que los Bonos del Plan de Ajuste, incluyendo cualquier*

8    *interés devengado por éstos y cualquier cantidad u obligación bajo los Acuerdos Complementarios,*

9    *se paguen en su totalidad en efectivo o se satisfagan conforme a sus términos:*

10    *(a)    tomar cualquier acción que (A) menoscabe el derecho de la Corporación a recibir los*

11    *Ingresos de la Corporación, (B) limite o altere los derechos de la Corporación conforme al Plan de*

12    *Ajuste de la Corporación para cumplir con los términos de cualquier acuerdo con los tenedores de*

13    *Bonos del Plan de Ajuste, (C) material y adversamente menoscabe el cobro de las Contribuciones*

14    *Pignoradas en cualquier Año Fiscal, o (D) menoscabe los derechos y remedios de los tenedores de*

15    *Bonos del Plan de Ajuste o la colateral establecida bajo el Artículo 3.2 de esta Ley;*

16    *(b)    reducir las Contribuciones Pignoradas a una tasa menor de cinco punto cinco por*

17    *ciento (5.5%) a menos que, con relación a dicha reducción, se cumpla con la calificación crediticia*

18    *y demás requisitos establecidos en los Acuerdos Complementarios; disponiéndose, sin embargo,*

19    *que, no obstante lo anterior, hasta que todas las obligaciones con respecto a los Bonos del Plan de*

20    *Ajuste se paguen o satisfagan en su totalidad conforme a sus términos, si la tasa de las*

21    *Contribuciones Pignoradas se reduce por debajo de tres <u>(3)</u> por ciento ~~(3%)~~, entonces, con relación*

1    a dicha reducción, el Gobierno de Puerto Rico deberá cumplir con los Requisitos de ~~Substitución~~

2    *Sustitución;*

3         (c)    menoscabar, limitar, restringir, rescindir, atrasar o modificar los derechos o poderes

4    de la Corporación, el Fiduciario del Contrato de Bonos o los tenedores de Bonos del Plan de Ajuste

5    bajo esta Ley o con relación a los Ingresos de la Corporación o la habilidad de la Corporación para

6    cumplir con sus obligaciones a sus bonistas;

7         (d)    enmendar esta Ley para menoscabar, limitar, restringir, rescindir, atrasar o

8    modificar cualquier obligación o convenio de la Corporación con los tenedores de Bonos del Plan

9    de Ajuste; y

10        (e)    limitar o restringir los derechos y poderes de los oficiales pertinentes el Gobierno de

11   Puerto Rico para imponer, mantener, cobrar o recaudar las Contribuciones Pignoradas,

12   disponiéndose que lo anterior no impedirá que el Gobierno de Puerto Rico ejerza su poder, a través

13   de un cambio en ley, de reemplazar la porción del IVU que corresponde a una tasa contributiva de

14   cinco punto cinco *(5.5) por ciento* ~~(5.5%)~~ con la Colateral Substituta de acuerdo a los Requisitos

15   de ~~Substitución~~ *Sustitución.*"

16        Sección 18.– Se añade un Capítulo IV a la Ley 91-2006, según enmendada, conocida

17   como "Ley del Fondo de Interés Apremiante", cuyo título leerá como sigue:

18        *"CAPÍTULO IV - INGRESOS DE LA CORPORACIÓN, DEPÓSITOS Y*

19   *DESEMBOLSOS."*

20        Sección 19.– Se deroga el Artículo 4 de la Ley 91-2006, según enmendada, conocida

21   como "Ley del Fondo de Interés Apremiante", y se sustituye por un nuevo Artículo 4.1,

22   que leerá como sigue:

1      *"Artículo 4.1. - Satisfacción de los Ingresos de la Corporación con los Primeros Ingresos.*

2      *(a)      Cada Año Fiscal, los primeros ingresos correspondientes a las Contribuciones*

3      *Pignoradas se transferirán a, y se depositarán con, la Corporación o en cualquier cuenta o fondo,*

4      *(incluyendo el Fondo de Ingresos de la Corporación  o una cuenta o fondo controlado por el*

5      *Fiduciario del Contrato de Bonos designada en el Contrato de Bonos bajo el cual dichas obligaciones*

6      *fueron incurridas bajo esta Ley y los Acuerdos Complementarios) designada por la Corporación,*

7      *hasta que la Corporación reciba una cantidad equivalente a los Ingresos de la Corporación para*

8      *dicho Año Fiscal. El requisito de que los primeros ingresos correspondientes a las Contribuciones*

9      *Pignoradas, hasta los Ingresos de la Corporación, se depositen con la Corporación o en cualquier*

10      *cuenta o fondo, (incluyendo el Fondo de Ingresos de la Corporación  o una cuenta o fondo*

11      *controlado por el Fiduciario del Contrato de Bonos designada en el Contrato de Bonos bajo el cual*

12      *dichas obligaciones fueron incurridas bajo esta Ley y los Acuerdos Complementarios) designada*

13      *por la Corporación no podrá ser modificado; disponiéndose, que el Contrato de Bonos podrá*

14      *contener disposiciones que permitan la distribución trimestral de las Contribuciones Pignoradas*

15      *entre la Corporación y el Gobierno de Puerto Rico tras la satisfacción de los requisitos establecidos*

16      *en el Contrato de Bonos y de manera consistente con el Plan de Ajuste de la Corporación. La*

17      *Corporación tendrá los derechos establecidos en este Artículo 4.1, hasta que los Bonos del Plan de*

18      *Ajuste, incluyendo cualquier interés devengado por éstos, y todas las obligaciones bajo los*

19      *Acuerdos Complementarios, hayan sido pagadas en su totalidad en efectivo o de otra manera hayan*

20      *sido satisfechas de conformidad con sus términos.*

21      *(b)      Durante cada Año Fiscal, el Fiduciario del Contrato de Bonos o aquella otra*

22      *Persona que sea designada en el Contrato de Bonos determinará, mensualmente, si la Corporación*

1   *ha recibido los Ingresos de la Corporación. Una vez el Fiduciario del Contrato de Bonos o dicha*

2   *otra Persona determine que se han depositado los Ingresos de la Corporación con el Fiduciario del*

3   *Contrato de Bonos* {*o aquella porción de los Ingresos de la Corporación que la Corporación tenga*

4   *derecho a recibir si la distribución trimestral a la cual se hace referencia en este Artículo 4.1(a) está*

5   *en efecto*}, *todos los ingresos de las Contribuciones Pignoradas recibidos después de dicha*

6   *determinación se transferirán al Gobierno de Puerto Rico.*

7          *(c)*      *Ninguna Persona que recaude o tenga posesión de las Contribuciones Pignoradas*

8   *tendrá derecho legal o en equidad, título o interés alguno sobre dichas Contribuciones Pignoradas*

9   *sólo por virtud del hecho que recaude o tenga posesión de las Contribuciones Pignoradas.*

10   Sección 20.– Se añade un Artículo 4.2 a la Ley 91-2006, según enmendada, conocida

11   como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

12   *"Artículo 4.2.- Exceso de Ingresos.*

13       *Las cantidades depositadas con la Corporación en cada Año Fiscal en exceso de las*

14   *cantidades necesarias para pagar principal e intereses de los Bonos del Plan de Ajuste que venzan*

15   *y sean pagaderos* {*incluyendo el principal y los intereses vencidos bajo cualquier Bono del Plan de*

16   *Ajuste*}, *satisfacer las obligaciones asumidas bajo el Contrato de Bonos u otros Acuerdos*

17   *Complementarios que venzan o sean pagaderas, pagar los Costos de Financiamiento o gastos*

18   *operacionales según se dispone en los Acuerdos Complementarios o hacer cualquier otro pago*

19   *relacionado u otras obligaciones incurridas por la Corporación, se transferirá a la Corporación,*

20   *libre del gravamen establecido en el Artículo 3.2 de esta Ley y cualquier otro gravamen establecido*

21   *por el Contrato de Bonos u otro Acuerdo Complementario."*

1    Sección 21.- Se añade un Capítulo V a la Ley 91-2006, según enmendada, conocida

2    como "Ley del Fondo de Interés Apremiante", cuyo título leerá como sigue:

3    *"CAPÍTULO V – DISPOSICIONES MISCELANEAS"*

4    Sección 22– Se deroga el Artículo 5 de la Ley 91-2006, según enmendada, conocida

5    como "Ley del Fondo de Interés Apremiante", y se sustituye por un nuevo Artículo 5.1,

6    que leerá en su totalidad como sigue:

7    *"Artículo 5.1- Separabilidad.*

8    *Esta Ley se interpretará ~~de tal manera para hacerla válida, en la medida que sea factible,~~*

9    *de acuerdo a la Constitución de Puerto Rico y la Constitución de los Estados Unidos de América.*

10   *Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección,*

11   *subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera anulada o declarada*

12   *inconstitucional, la orden a tal efecto dictada no afectará, perjudicará, ni invalidará el remanente*

13   *de esta Ley. El efecto de dicha orden quedará limitado a la cláusula, párrafo, subpárrafo, oración,*

14   *palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o*

15   *parte de la misma que así hubiere sido anulada o declarada inconstitucional. Si la aplicación a una*

16   *Persona o a una circunstancia de cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra,*

17   *artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley*

18   *fuera invalidada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto*

19   *dictada no afectará ni invalidará la aplicación del remanente de esta Ley a aquellas Personas o*

20   *circunstancias en que se pueda aplicar válidamente. Es la voluntad expresa e inequívoca de esta*

21   *Asamblea Legislativa que los tribunales hagan cumplir las disposiciones y la aplicación de esta Ley*

22   *~~en la mayor medida posible,~~ aunque se deje sin efecto, anule, invalide, perjudique o declare*

1   *inconstitucional alguna de sus partes, o aunque se deje sin efecto, invalide o declare*

2   *inconstitucional su aplicación a alguna persona o circunstancia. ~~Esta Asamblea Legislativa~~*

3   ~~*hubiera aprobado esta Ley sin importar la determinación de separabilidad que el Tribunal pueda*~~

4   ~~*hacer.*~~*"*

5   Sección 23– Se añade un Artículo 5.2 a la Ley 91-2006, según enmendada, conocida

6   como "Ley del Fondo de Interés Apremiante" para que lea como sigue:

7   *"Artículo 5.2.- Idioma que Prevalece.*

8   *Esta Ley se adoptará en español y en inglés. Si en la interpretación o aplicación de esta Ley*

9   *surgiere algún conflicto entre el texto en inglés y el texto en español, prevalecerá el texto en inglés."*

10   Sección 24.- Se derogan los Artículos 6 al 11 de la Ley 91-2006, según enmendada.

11   Sección 25.- Se añade el texto en inglés de la Ley 91-2006, según enmendado en

12   esta Ley, inmediatamente después del final del texto en español, para que lea en su

13   totalidad como sigue:

"**ENGLISH VERSION OF THE PUERTO RICO SALES TAX FINANCING
CORPORATION ACT:**

**STATEMENT OF MOTIVES**

Puerto Rico faces an unprecedented fiscal and economic crisis.  This bill, as well as
the restructuring agreement reached with the creditors of Government Development
Bank for Puerto Rico, will enhance Puerto Rico's credibility. With this agreement, we will
achieve significant adjustments in the repayment of the government's debts incurred by
other administrations, but that it is now our responsibility to resolve. This way, we ensure
that the Government is able to continue operating and serving the people of Puerto Rico.

The positions assumed and actions taken by the prior administration caused
Puerto Rico to lose access to the capital markets and precipitated the collapse of our
public finance system.  These actions accelerated the contraction of the Puerto Rico

economy and increased the outmigration of residents of Puerto Rico to the United States mainland.

The prior administration developed a hostile relationship with participants of the financial markets, including tens of thousands of residents of Puerto Rico that invested their savings trusting the good name and credit of the Commonwealth and that of its public corporations.  This hostile environment towards Puerto Rico also pervaded the United States Congress due to the lack of transparency and honesty, while generating consistently negative news coverage for Puerto Rico at the local, national and global level.

Misguided decisions of the prior administration led to the bankruptcy of the Commonwealth of Puerto Rico and its need to gather its resources to address and provide essential services to the people of Puerto Rico.  This, in turn, acted as a catalyst for a controversy that challenged the structure pursuant to which the Puerto Rico Sales Tax Financing Corporation ("COFINA" by its Spanish acronym) issued its bonds.   In particular, certain parties asserted claims arguing, among other things, that (i) COFINA's issuance of its bonds violated the Puerto Rico Constitution and (ii) the portion of the sales and use tax imposed by the Commonwealth at a rate of 5.5% (the "SUT") and transferred to COFINA constituted "available resources" of the Commonwealth pursuant to Article VI, Section 8, of the Puerto Rico Constitution and must be used for the payment of the Commonwealth's "public debt."  Certain creditors also challenged the scope of the Puerto Rico Constitution based on the whether the Spanish term "recursos disponibles" or the English term "available revenues, plus surplus" was used.  On May 5, 2017, the Financial Oversight and Management Board ("Oversight Board") created pursuant to the provisions of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA") commenced a proceeding as representative of COFINA under Title III.



The Commonwealth's and COFINA's various stakeholders sought an orderly process to resolve the disputes relating to COFINA and the ownership of the SUT (collectively, the "Commonwealth-COFINA Dispute").  To that end, on August 10, 2017, the Title III Court entered a stipulation and order appointing the Commonwealth's Official Committee of Unsecured Creditors to act as agent for the Oversight Board in its capacity as representative of the Commonwealth (the "Commonwealth Agent") and Bettina M. Whyte to act as agent for the Oversight Board in its capacity as representative of COFINA (the "COFINA Agent") in an effort to facilitate a settlement of the Commonwealth-COFINA Dispute.

On June 5, 2018, the Commonwealth Agent and the COFINA Agent announced that they had reached an agreement in principle to resolve the Commonwealth-COFINA Dispute (the "Agreement in Principle").  The Agreement in Principle was premised on splitting the fixed amount of the SUT transferred to COFINA each fiscal year (the "PSTBA") between the Commonwealth and COFINA beginning in fiscal year 2019, with COFINA receiving 53.65% of the yearly scheduled PSTBA and the Commonwealth

receiving 46.35% of the yearly scheduled PSTBA plus all other revenues collected on account of the SUT.

Consistent with the public policy implemented by the Governor of Puerto Rico, the Fiscal Agency and Financial Advisory Authority, the Oversight Board, and various creditors and insurers of COFINA bonds executed a plan support agreement (as amended and restated on September 21, 2018, the "Plan Support Agreement"), which incorporates the Agreement in Principle's PSTBA split and provides for the settlement of the Commonwealth-COFINA Dispute pursuant to a plan of adjustment for COFINA under Title III of PROMESA (the "COFINA Plan").

The Legislative Assembly is now called upon to implement the agreement by and among the parties of the Commonwealth-COFINA Dispute by amending the provisions of Act No. 91, which created COFINA and authorized it to issue bonds. These amendments will serve to release the lien that holders of COFINA bonds currently have over approximately $17.5 billion of previously pledged SUT revenues. These revenues will now be available for use by the Government of Puerto Rico to better serve and provide for its citizens. By implementing the Plan Support Agreement, this legislation also puts an end to the costly litigation between the agents appointed by the Oversight Board and settles the claims of COFINA's bondholders, while also making clear the original legislative intent of Act 91-2006, as amended. Moreover, as a result of this implementing legislation, we will be saving the Government of Puerto Rico approximately $437.5 million per year, which will now be available to the Government for the benefit of the people of Puerto Rico.

Equally important, this legislation shows that the Legislative Assembly is determined to take the steps necessary to enable Puerto Rico's return to the capital markets. As one of the steps required to implement the Plan Support Agreement, this legislation will allow for the restructuring of the COFINA debt under Title III of PROMESA, act as a catalyst for other restructurings, setting the stage for Puerto Rico's emergence from bankruptcy, reduce costly litigation, and accelerate termination of the Oversight Board in accordance with PROMESA.

This Act demonstrates the Legislative Assembly's continued public policy commitment to correct Puerto Rico's financial crisis, honor Puerto Rico's financial obligations, regain access to the capital markets, and achieve economic certainty and debt sustainability for Puerto Rico.

1    *CHAPTER 1. – TITLE AND DEFINITIONS*

2        *Article 1.1.-Title.*

3        *This Act shall be known as the "Puerto Rico Sales Tax Financing Corporation Act."*

1       *Article 1.2.-Definitions.*

2       *The following terms shall have the meanings stated below:*

3       *(a)       "AAFAF"– means the Puerto Rico Fiscal Agency and Financial Advisory*

4   *Authority.*

5       *(b)       "Act"– means Act 91-2006, as amended, also known as the "Puerto Rico Sales Tax*

6   *Financing Corporation Act".*

7       *(c)       "Ancillary Agreements"– ~~means the Bond Indenture, the Settlement Agreement,~~*

8   *~~and any other agreement or instrument entered into by the Corporation or the Indenture Trustee~~*

9   *~~in connection with, or in furtherance of, the Restructuring Transaction and in accordance with,~~*

10   *~~or in furtherance of, the Corporation Plan of Adjustment.~~ means the Corporation Plan of*

11   *Adjustment, the Bond Indenture, the Settlement Agreement, and any other agreement or*

12   *instrument entered into by the Corporation or the Indenture Trustee in connection with, or in*

13   *furtherance of, the Restructuring Transaction and in accordance with, or in furtherance of, the*

14   *Corporation Plan of Adjustment.*

15       *(d)       "Authorized Activities"– means the activities authorized to be carried out by the*

16   *Corporation under Article 2.4 of this Act.*

17       *(e)       "Board of Directors"– means the Board of Directors of the Corporation.*

18       *(f)       "Bond Indenture"– means one or more trust agreements, bond indentures and any*

19   *supplements or amendments thereto, or similar contracts or agreements, entered into by the*

20   *Corporation and the Indenture Trustee pursuant to which Plan of Adjustment Bonds are issued,*

21   *and establishing the rights and responsibilities of the Corporation and of the holders of Plan of*

22   *Adjustment Bonds issued thereunder.*

1    (g)    *"Chair" – means the chairperson of the Board of Directors.*

2    (h)    *"COFINA Revenues" – means the First Funds up to an amount equal to fifty-three*

3    *and sixty-five one hundredths percent (53.65%) of the Fixed Income for each Fiscal Year and all*

4    *legal and equitable rights, title and interest thereto (including the right to receive the First Funds*

5    *as set forth under Article 4.1 of this Act).*

6    (i)    *"COFINA Revenues Fund" – means the segregated fund or funds owned by the*

7    *Corporation into which the COFINA Revenues are deposited (1) which account shall be held in*

8    *the name of the Indenture Trustee for the benefit of the holders of the Plan of Adjustment Bonds,*

9    *(2) may not be owned or controlled in any way by the Government of Puerto Rico or any*

10   *Government Entity other than the Corporation, and (3) is maintained in one or more mainland*

11   *U.S. banks.*

12   (j)    *"Corporation" – means the Puerto Rico Sales Tax Financing Corporation created*

13   *by this Act.*

14   (k)    *"Corporation Plan of Adjustment" – means the plan of adjustment consummated*

15   *in connection with the Corporation's case under Title III of PROMESA, including the order of*

16   *the District Court confirming such plan of adjustment.*

17   (l)    *"District Court" – means the United States District Court for the District of*

18   *Puerto Rico.*

19   (m)    *"Effective Date" – means the date on which the Corporation Plan of Adjustment*

20   *becomes effective in accordance with its terms.*

21   (n)    *"Financing Costs" – means all costs associated with the Restructuring*

22   *Transaction, including the costs, fees and expenses to (1) issue, service, repay or refinance the Plan*

1    *of Adjustment Bonds, whether such costs are incurred upon issuance of such Plan of Adjustment*

2    *Bonds or over the term of the Plan of Adjustment Bonds, (2) make payments as required by the*

3    *Ancillary Agreements, (3) pay any stamp, issuance or similar taxes and other charges related to*

4    *the Restructuring Transaction,; provided, <u>however</u> that this provision does not limit in any way*

5    *the exemption from taxes set forth in Article 2.8 hereof, (4) prepare for and enter into the*

6    *Restructuring Transaction, and (5) perform all ongoing activities relating to the Restructuring*

7    *Transaction. ~~For the avoidance of doubt~~, <u>It should be noted that, the</u> Financing Costs also includes*

8    *pre-closing and post-closing administrative fees and expenses incurred in connection with all*

9    *Ancillary Agreements, but does not include payments of principal and interest on the Plan of*

10    *Adjustment Bonds.*

11    *(o)    "First Funds" – means the first funds comprising the Pledged Taxes in any Fiscal*

12    *Year as described in Article 4.1 of this Act.*

13    *(p)    "Fiscal Year" – means the fiscal year of the Government of Puerto Rico, which*

14    *begins on July 1 and ends on June 30.*

15    *(q)    "Fixed Income" – means, for Fiscal Year 2018-2019, seven hundred eighty-three*

16    *million, one hundred ninety-seven thousand, two hundred and fifty-one ~~dollars~~ ($783,197,251)*

17    <u>*dollars*</u> *and, for each subsequent Fiscal Year, the Fixed Income for the prior Fiscal Year plus four*

18    <u>*(4)*</u> *percent ~~(4%)~~ of such Fixed Income, up to the Maximum Amount.  The Fixed Income for each*

19    *Fiscal Year shall be funded from the first revenues collected of the Pledged Taxes.*

20    *(r)    "Government Entity" – means any agency, department, office, public corporation,*

21    *trust, fund, system, instrumentality, political subdivision, taxing authority or municipality of the*

22    *Government of Puerto Rico.*

1    (s)    *"Government of Puerto Rico"*– means the Commonwealth of Puerto Rico and the

2  government thereof.

3    (t)    *"Indenture Trustee"*– means the Person designated as trustee or indenture trustee

4  under the Bond Indenture, including any successor trustee or indenture trustee under the Bond

5  Indenture.

6    (u)    *"Maximum Amount"* – means One Billion Eight Hundred and Fifty Million

7  ~~dollars~~ ($1,850,000,000.00) <u>dollars</u>.

8    (v)    *"Oversight Board"* – means the Financial Oversight and Management Board for

9  Puerto Rico established pursuant to Article 1.1 of PROMESA.

10    (w)    *"Person"* – means any natural person or legal entity, including, but not limited to,

11  the Government of Puerto Rico, any Government Entity, or any firm, partnership, joint venture,

12  trust, estate, limited liability company, corporation of individuals, association, or public or private

13  corporation, organized or existing under the laws of Puerto Rico, the United States of America,

14  any state or any other jurisdiction, or any state, municipality, political subdivision, taxing

15  authority, agency or instrumentality of the United States of America, any state or any other

16  jurisdiction, or any combination thereof.

17    (x)    *"Plan of Adjustment Bonds"* – means any Restructuring Bonds and any

18  Refunding Bonds.

19    (y)    *"Pledged Taxes"* – means, subject to the provisions of Article 3.3 hereof, (1) the

20  present and future revenues and collections generated by the portion of the Sales Tax that

21  corresponds to a tax rate of five and one-half <u>(5.5)</u> percent ~~(5.5%)~~, and (2) the Substituted

22  Collateral, if any.

1    (z)    *"PROMESA"* – *means the "Puerto Rico Oversight, Management, and Economic*

2    *Stability Act", Pub. L. No. 114–187, 130 Stat. 549 (2016), 48 U.S.C. 2101 et. seq.*

3    (aa)    *"Refunding Bonds"* – *means the bonds issued by the Corporation pursuant to the*

4    *Act and the Ancillary Agreements, on a pari passu basis with the Restructuring Bonds, to retire,*

5    *refinance or defease any Plan of Adjustment Bonds.*

6    (bb)    *"Restructuring Bonds"* – *means the bonds issued by the Corporation pursuant to*

7    *this Act, the Corporation Plan of Adjustment, and the Ancillary Agreements, having terms that*

8    *conform to, and that are authorized, determined to be valid, and distributed in accordance with,*

9    *the Corporation Plan of Adjustment.*

10    (cc)    *"Restructuring Resolution"* – *means one or more resolutions of the Board of*

11    *Directors authorizing: (1) the issuance of Plan of Adjustment Bonds and describing the terms*

12    *thereof; and (2) the payment of the Financing Costs, each in accordance with the terms of the*

13    *Corporation Plan of Adjustment.*

14    (dd)    *"Restructuring Transaction"* – *means the transactions contemplated by, or in*

15    *furtherance of, the Corporation Plan of Adjustment.*

16    (ee)    *"Sales Tax"* – *means the sales and use taxes imposed by the Government of Puerto*

17    *Rico pursuant to Sections 4020.01 and 4020.02 of Subchapter D of Act No. 1-2011, as amended,*

18    *known as the Internal Revenue Code for a New Puerto Rico.*

19    (ff)    *"Settlement Agreement"* – *means the Settlement Agreement, dated as of October*

20    *[15], 2018, between the Oversight Board, on behalf of the Government of Puerto Rico, and the*

21    *agent for the Corporation appointed by the Oversight Board to settle or litigate the dispute between*

22    *the Government of Puerto Rico and the Corporation regarding the ownership of the Sales Tax.*

1     (gg)    *"Substituted Collateral" – means all or a portion of a tax of general applicability*

2   *throughout Puerto Rico that is enacted in full substitution of the Pledged Taxes or otherwise*

3   *constitutes like or comparable security for the Plan of Adjustment Bonds.*

4     (hh)    *"Substitution Requirements" – means (1) the enactment of legislation providing*

5   *for Substituted Collateral that also provides (A) that the Substituted Collateral in an amount equal*

6   *to the COFINA Revenues has been irrevocably transferred to and is owned solely and exclusively*

7   *by the Corporation to the full extent provided under Article 2.2 of this Act, (B) that, following*

8   *such transfer, such Substituted Collateral in an amount equal to the COFINA Revenues is not,*

9   *and shall not constitute, "available resources" or "available revenues" of the Government of*

10   *Puerto Rico as that term is used in Section 8 of Article VI of the Puerto Rico Constitution or as*

11   *otherwise used in the Puerto Rico Constitution (whether construed pursuant to the Spanish or*

12   *English version of the Puerto Rico Constitution), (C) for a lien on such Substituted Collateral in*

13   *favor of the Indenture Trustee for the benefit of the holders of Plan of Adjustment Bonds to the full*

14   *extent provided for under Article 3.2 of this Act, and (D) that the Government of Puerto Rico and*

15   *the Government Entities shall continue to provide the covenants set forth in Article 3.3 of this Act*

16   *with respect to such Substituted Collateral, and (2) prior to the substitution of the Substituted*

17   *Collateral, the ratings requirements set forth in the Ancillary Agreements are satisfied with respect*

18   *to the Substituted Collateral.*

19   *CHAPTER 2. - THE PUERTO RICO SALES TAX FINANCING CORPORATION*

20     *Article 2.1. - Creation and Separate Legal Existence of the Corporation.*

21     *There is created a public corporation and instrumentality of the Government of Puerto*

22   *Rico, which constitutes a corporate and political entity independent and separate from the*

1    ~~Commonwealth~~ Government of Puerto Rico to be known as the Puerto Rico Sales Tax Financing

2    Corporation. The Corporation, which was created pursuant to the provisions of this Act, is and

3    shall be recognized for all purposes as an independent and separate legal entity from the

4    Government of Puerto Rico and any other Government Entity.  It shall be operated independently,

5    and its business and affairs shall be governed by or under the direction of its Board of Directors.

6        Article 2.2. - Ownership of the COFINA Revenues.

7        (a)    Any and all ownership interests and rights to the COFINA Revenues were, have

8    been or are hereby transferred to the Corporation.

9        (b)    The transfer described in (a) above is an absolute transfer of all legal and equitable

10   right, title and interest, and not a pledge or other financing.

11       (c)    The Corporation is and will be the sole and exclusive owner of the COFINA

12   Revenues until such time as the Plan of Adjustment Bonds, together with any interest thereon,

13   and all amounts and obligations under all Ancillary Agreements, have been completely paid in

14   cash in full or have otherwise been discharged in accordance with their terms.

15       (d)    Persons designated as withholding agents for purposes of the imposition and

16   collection of the Sales Tax pursuant to the Act 1-2011, as amended, also known as the "Internal

17   Revenue Code for a New Puerto Rico", shall be deemed to collect any portion of the Sales Taxes in

18   which the Corporation has an ownership interest on behalf of the Corporation.   Any such

19   withholding agent will continue to be subject to any and all obligations and responsibilities

20   imposed by the Internal Revenue Code for a New Puerto Rico, on withholding agents in relation

21   to the imposition and collection of the Sales Tax.

1    (e)    The COFINA Revenues do not constitute "available resources" or "available

2  revenues" of the Government of Puerto Rico as used in Section 8 of Article VI of the Puerto Rico

3  Constitution or as otherwise used in the Puerto Rico Constitution (whether construed pursuant

4  to the Spanish or English version of the Puerto Rico Constitution).

5    Article 2.3.-Purpose of the Corporation.

6    On and after the Effective Date, the Corporation's purpose will be to (a) issue the Plan of

7  Adjustment Bonds, (b) own and administer the COFINA Revenues, and (c) issue any other bonds,

8  notes or evidence of indebtedness of the Corporation as may be permitted by the Corporation Plan

9  of Adjustment and the Ancillary Agreements and which will be payable from such sources as may

10  be provided for by the Legislative Assembly.

11    Article 2.4.-The Corporation's Activities.

12    The Corporation's activities shall be limited to the following ~~Authorized Activities~~:

13    (a)    receiving and owning the COFINA Revenues and such other revenues or property

14  as may be provided or transferred to the Corporation;

15    (b)    adopting the Restructuring Resolution;

16    (c)    issuing, from time to time, Plan of Adjustment Bonds and any bonds, notes or

17  evidences of indebtedness the issuance of which is authorized by Article 2.3 of this Act;

18    (d)    entering into and performing the Ancillary Agreements;

19    (e)    to pay any bonds, notes or evidences of indebtedness the issuance of which is

20  authorized by Article 2.3 of this Act by pledging, on a basis subordinate in all respects to the lien

21  established in Article 3.2 of this Act, (1) any amounts remaining of the COFINA Revenues after

1    the payment of principal and interest on the Plan of Adjustment Bonds or (2) any other funds or

2    property that may be allocated to the Corporation after the Effective Date; and

3        (f)    taking any and all other actions as may be necessary or appropriate to effectuate the

4    Restructuring Transaction and the Corporation Plan of Adjustment, including making

5    amendments to, exchanging and/or canceling bonds issued by the Corporation prior to the

6    Effective Date and amending and restating agreements of the Corporation relating thereto.

7        Article 2.5.-Ancillary Powers.

8        In order to carry out the Authorized Activities, without limiting the foregoing, the

9    Corporation shall have the power to:

10       (a)    sue and be sued in any Commonwealth court or the Federal District Court;

11       (b)    adopt, alter and use a seal;

12       (c)    formulate, adopt, amend and revoke rules for the administration and management

13   of its affairs, and such standards, rules and regulations that may be necessary or convenient to

14   exercise and perform the Authorized Activities;

15       (d)    open and maintain bank accounts, including the COFINA Revenues Fund;

16       (e)    acquire, hold, lease, sell and otherwise transfer property;

17       (f)    have complete legal and equitable dominion over its properties (including the

18   COFINA Revenues), subject to the statutory lien established under Article 3.2 of this Act;

19       (g)    make, execute and amend contracts and all other instruments necessary or

20   convenient to perform the Authorized Activities;

21       (h)    appoint and remove officers, agents, employees and contractors, establish their

22   compensations, powers and duties, in each case, in accordance with the Ancillary Agreements;

1        (i)     *pay its operating expenses and the Financing Costs;*

2        (j)     *procure insurance, including insurance covering the Corporation's directors and*

3 *officers, against loss in connection with its activities, properties or assets;*

4        (k)     *invest funds and establish and maintain reserves as required by, and pursuant to*

5 *standards set forth in, the Ancillary Agreements;*

6        (l)     *indemnify the members of the Board of Directors, its officers, agents, employees,*

7 *contractors and other third parties for conduct that does not constitute gross negligence, willful*

8 *misconduct or fraud;*

9        (m)     *exercise such other powers, not inconsistent herewith, as may be necessary to carry*

10 *out the Authorized Activities;*

11        (n)     *take any action or measure necessary or convenient to carry out its purposes and*

12 *exercise the powers expressly granted in this Article;*

13        (o)     *delegate to its officers, agents, employees or contractors authority to take actions in*

14 *furtherance of this Act; and*

15        (p)     *execute, file and amend any relevant returns, forms, elections or statements with*

16 *any governmental authority.*

17        *Article 2.6.-Prohibited Activities.*

18        *While the Plan of Adjustment Bonds are outstanding, the Corporation shall not be*

19 *authorized to:*

20        (a)     *merge or consolidate, directly or indirectly, with any Person;*

1       *(b)*     *incur, guarantee or otherwise become obligated to pay any debt or other obligations*

2  *other than the Plan of Adjustment Bonds, operating costs, the Financing Costs and any bond, note*

3  *or evidence of indebtedness permitted under Article 2.3 hereof;*

4       *(c)*     *pledge, create or record liens on any of its properties (including the COFINA*

5  *Revenues), other than (1) the pledge to secure the payment of Plan of Adjustment Bonds created*

6  *pursuant to Article 3.2 of this Act or (2) any pledge or lien to secure any bond, note or evidence of*

7  *indebtedness permitted under Article 2.3 hereof but only to the extent such pledge or lien is*

8  *subordinate in all respects to the lien established in Article 3.2 of this Act;*

9       *(d)*     *engage in business activities other than as expressly authorized in this Act;*

10      *(e)*     *dissolve, liquidate, sell or, except as permitted by Article 2.4(e), otherwise transfer*

11  *any or all of its properties (including the COFINA Revenues); ~~and~~*

12      *(f)*    *the directors of the Corporation shall not vote to authorize the Corporation to*

13  *commence a case under Title III of PROMESA or other similar judicial restructuring process*

14  *under applicable law subject to the provisions thereof; and*

15      *~~(f)~~(g)*   *take any other action that is inconsistent with the Corporation's purpose set forth*

16  *in this Act or ancillary thereto.*

17      *Article 2.7.-Board of Directors.*

18      *The powers of the Corporation shall be exercised by the Board of Directors.*

19      *(a)*     *Composition of the Board of Directors.*

20      *The Board of Directors shall be composed of three (3) members, who shall meet the*

21  *requirements set forth in Article 2.7 (b)(iii) of this Act and shall be appointed by the Governor of*

22  *Puerto Rico; provided, that, pursuant to the provisions of the Ancillary Agreements, certain*

1    holders of Plan of Adjustment Bonds may submit up to three (3) recommendations for the

2    Governor's consideration of the initial appointment of the Corporation's directors but the

3    Governor shall be under no obligation to appoint any such recommended persons.

4         (b)     General Provisions regarding the Board of Directors.

5         (i)     Each member of the Board of Directors shall be appointed for a term of three

6    (3) years and may serve consecutive terms as an appointed member; provided, that the

7    Governor may remove any member prior to the expiration of their term if such member

8    fails to uphold the responsibilities set forth in this Act or for gross negligence, willful

9    misconduct or fraud;

10        (ii)     each member of the Board of Directors shall be entitled to one (1) vote;

11        (iii)     each member of the Board of Directors shall satisfy the independence and

12   qualification standards (including that no member of the Board of Directors may be an

13   officer, employee or director of any Government Entity other than the Corporation) set

14   forth in the Ancillary Agreements;

15        (iv)     all decisions and actions of the Board of Directors shall require the

16   affirmative vote of the majority of the members of the Board of Directors at the time serving;

17   provided, that, the Corporation's bylaws may require a higher approval threshold for

18   particular matters described therein; and

19        (v)     the members of the Board of Directors shall select a Chair from among

20   themselves.

21   (c)     Vacancies.

1       *In the event of a vacancy in the office of a member of the Board of Directors by death,*

2   *removal, resignation or otherwise, a successor member who meets the requirements set forth in*

3   *Article 2.7 (b)(iii) of this Act shall be appointed by the Governor of Puerto Rico subject to Article*

4   *2.7(b)(i) hereof.*

5       (d)     *Compensation.*

6       *Members of the Board of Directors shall receive such compensation as is authorized*

7   *pursuant to the Ancillary Agreements.*

8       (e)     *Adoption and Amendment of Rules.*

9       *As soon as practicable after the appointment of all members and appointment of the Chair,*

10  *the Corporation shall adopt rules and procedures governing its activities under this Act. The Board*

11  *of Directors shall be entitled to amend such rules and procedures from time to time.*

12      (f)     *Quorum.*

13      *A majority of the members of the Board of Directors at the time serving shall constitute a*

14  *quorum to make decisions or exercise any power or function of the Corporation. Any one or more*

15  *members may participate in a meeting of the Board of Directors by teleconference or similar*

16  *communications equipment. Participation by such means shall constitute presence in person at*

17  *the meeting. Any action necessary or allowed in any meeting of the Board of Directors shall be*

18  *authorized with no need for a meeting, if all the members of the Board of Directors give their*

19  *written consent concerning such action.*

20      (g)     *Delegation.*

1    The Board of Directors may delegate to one or more of the members, or to the Corporation's

2    officers, agents and employees, such powers and duties as the Board of Directors may deem

3    appropriate.

4    Article 2.8.-Tax Exemption.

5    (a)    It is hereby found and declared that the activities of the Corporation are for a public

6    purpose. As a result, the Corporation shall be totally exempt from, and shall not be required to pay

7    any kind of taxes, assessments, licenses, stamps, fees or other similar charges levied by the

8    Government of Puerto Rico or any Government Entity upon any of the property that the

9    Corporation owns, possesses, holds or uses or on its activities, or upon any income, payment or

10    gain derived therefrom.

11    (b)    The Plan of Adjustment Bonds, including, but not limited to, any payments or

12    income with respect to the Plan of Adjustment Bonds and the transfer of the Plan of Adjustment

13    Bonds, shall, at all times, be totally exempt from all kinds of taxes, assessments, licenses, stamps,

14    fees and other charges levied by the Government of Puerto Rico or any Government Entity.

15    Holders and beneficial owners of the Plan of Adjustment Bonds shall not be subject to any tax

16    return filing or any other tax reporting or similar requirement in respect of the Government of

17    Puerto Rico or any Government Entity by reason of holding, owning or transferring the Plan of

18    Adjustment Bonds.

19    Article 2.9.–Inapplicability of Certain Laws.

20    The following laws or provisions shall not apply to the Corporation notwithstanding that

21    they may appear to apply to the Corporation:

1   (a) Chapters 4 and 6 of Act 26-2017, as amended, known as the "Fiscal Plan

2 Compliance Act";

3   (b) Act 1-2012, as amended, known as the "Puerto Rico Government Ethics Act of

4 2011";

5   (c) Act 103 of May 25, 2006, as amended, known as the "Act for the Fiscal Reform of

6 the Government of the Commonwealth of Puerto Rico of 2006";

7   (d) Act 8-2017, as amended, known as the "Act for the Transformation of the

8 Government's Human Resources";

9   (e) Act 237-2004, as amended, known as the "Act to Establish Uniform Parameters

10 for Contracting Professional and Consulting Services by Agencies and Instrumentalities of the

11 Government of Puerto Rico";

12   (f) Act 197-2002, as amended, known as the "Act to Regulate the Transition Process

13 of the Government of Puerto Rico";

14   (g) Act 78-2011, as amended, known as the "Electoral Code of Puerto Rico for the XXI

15 Century";

16   (h) Act 38-2017, known as the "Uniform Administrative Procedures Act of the

17 Government of Puerto Rico";

18   (i) Plan 3-2011, as amended, known as "General Services _Administration_

19 _Reorganization Plan_";

20   (j) Act 230 of July 23, 1974, as amended, known as the "Government Accounting

21 Act";

1        (k)     *Act 3-2017, known as the "Law to Address the Economic, Fiscal and Budgetary*

2  *Crisis and Ensure the Functioning of the Government of Puerto Rico"; and*

3        (l)     *Act 14 of April 17, 1972, as amended.*

4  *CHAPTER 3. - THE RESTRUCTURING TRANSACTION*

5      *Article 3.1.–Issuance of Plan of Adjustment Bonds.*

6        (a)     *From and after the Effective Date, the Corporation shall be authorized to issue Plan*

7  *of Adjustment Bonds, from time to time, pursuant to the Corporation Plan of Adjustment and the*

8  *terms and conditions authorized by the Corporation and set forth in the applicable Restructuring*

9  *Resolution and the Ancillary Agreements.*

10       (b)     *Plan of Adjustment Bonds shall be dated, shall bear interest at such rates and shall*

11  *mature at such time or times as may be determined by the Corporation and authorized in the*

12  *applicable Restructuring Resolution in accordance and consistent with the Corporation Plan of*

13  *Adjustment. The Corporation shall determine the form of Plan of Adjustment Bonds and the*

14  *manner of execution of Plan of Adjustment Bonds, and shall fix the denomination or*

15  *denominations of Plan of Adjustment Bonds and the place or places of payment of principal thereof*

16  *and interest thereon, the terms of redemption and purchase in lieu of redemption and the other*

17  *terms thereof, all in accordance and consistent with the Corporation Plan of Adjustment.  Such*

18  *Plan of Adjustment Bonds may be sold at public or private sale for such price or prices as the*

19  *Corporation shall determine, or issued in exchange for existing bonds of the Corporation in*

20  *accordance with the Plan of Adjustment.*

21       (c)     *Plan of Adjustment Bonds shall be payable solely from the COFINA Revenues in*

22  *accordance with the terms of this Act and the Ancillary Agreements.*

1      (d)      The Corporation may purchase bonds issued by the Corporation on the terms and

2  in accordance with the Corporation Plan of Adjustment and applicable Ancillary Agreements at

3  a price not exceeding the redemption price thereof.  All bonds so purchased shall be cancelled.

4      ~~(e)      Neither the members of the Board of Directors nor any natural Person executing~~

5  ~~such bonds shall be liable personally on the bonds or be subject to any personal liability or~~

6  ~~accountability by reason of the issuance thereof.~~

7      ~~(f)~~ (e)   Plan of Adjustment Bonds shall not constitute a debt of the Government of Puerto

8  Rico or of any Government Entity other than the Corporation. This statement shall be included in

9  the Plan of Adjustment Bonds, the Bond Indenture and the disclosure documentation relating to

10  such bonds.

11      Article 3.2.-Statutory Lien.

12      Plan of Adjustment Bonds shall automatically, upon the issuance of such Plan of

13  Adjustment Bonds, be secured by a statutory first lien on all of the Corporation's right, title and

14  interest in and to the Pledged Taxes, including any moneys, income, revenues, accounts, contract

15  rights or general intangibles derived therefrom, in favor of the Indenture Trustee for the benefit of

16  the holders of Plan of Adjustment Bonds.  Such statutory first lien shall occur automatically and

17  shall automatically attach and be perfected, valid and binding from and after the Effective Date,

18  without any further act or agreement by any Person. No instrument needs to be executed or

19  delivered or recorded in any official record or in any government registry or office in order to

20  perfect or continue such statutory first lien or to establish or maintain the priority thereof. No

21  commingling of the Pledged Taxes with any property of the Government of Puerto Rico, any other

22  Government Entity or any other Person shall limit, defeat, impair or interfere with such statutory

1   lien. Such lien shall be valid, binding, perfected and enforceable against all Persons having claims

2   of any kind in tort, contract or otherwise against the Corporation or its assets irrespective of

3   whether such Persons have notice of such lien.

4        Article 3.3.-Covenants Regarding Plan of Adjustment Bonds and the Restructuring

5   Transaction.

6        The Government of Puerto Rico, with the intent of being contractually bound, hereby

7   agrees and covenants with the Corporation and each Person that holds Plan of Adjustment Bonds,

8   and authorizes the Corporation to include such covenant in the Bond Indenture for the benefit of

9   the holders of Plan of Adjustment Bonds, that it will not, and no Government Entity shall be

10  authorized to, until the Plan of Adjustment Bonds, together with the interest thereon, and all

11  amounts and obligations under all Ancillary Agreements, have been completely paid in cash in

12  full or otherwise discharged in accordance with their terms:

13       (a)    take any action that would (A) impair the Corporation's right to receive the

14  COFINA Revenues, (B) limit or alter the rights vested in the Corporation in accordance with the

15  Corporation Plan of Adjustment to fulfill the terms of any agreements with the holders of Plan of

16  Adjustment Bonds, (C) materially and adversely impair the collection of the Pledged Taxes in any

17  Fiscal Year, or (D) impair the rights and remedies of the holders of the Plan of Adjustment Bonds

18  or the collateral security established under Article 3.2 of this Act;

19       (b)    reduce the Pledged Taxes to a rate less than five and one-half percent (5.5%) unless,

20  in connection with such reduction, the credit rating and other requirements set forth in the

21  Ancillary Agreements are satisfied; provided, however, that, notwithstanding the foregoing, until

22  all obligations with respect to the Plan of Adjustment Bonds have been paid or satisfied in full in

1    *accordance with their terms, if the rate of the Pledged Taxes is reduced below three (3) percent*

2    *(3%), then, in connection with such reduction, the Government of Puerto Rico must comply with*

3    *the Substitution Requirements;*

4    (c)    *impair, limit, restrict, rescind, delay or modify the rights or powers of the*

5    *Corporation, the Indenture Trustee or the holders of Plan of Adjustment Bonds under this Act or*

6    *relating to the COFINA Revenues, or the Corporation's ability to meet its obligations to its*

7    *bondholders;*

8    (d)    *amend this Act to impair, limit, restrict, rescind, delay or modify any obligation or*

9    *commitment of the Corporation to the holders of Plan of Adjustment Bonds; and*

10   (e)    *limit or restrict the rights or powers of the appropriate officers of the Government*

11   *of Puerto Rico to impose, maintain, charge or collect the Pledged Taxes, provided that the foregoing*

12   *shall not preclude the Government of Puerto Rico from exercising its power, through a change in*

13   *law, replace the portion of the Sales Tax that corresponds to a tax rate of five and one half (5.5)*

14   *percent (5.5%) with Substituted Collateral in accordance with the Substitution Requirements.*

15   *CHAPTER 4. - FUNDING OF THE CORPORATION; DEPOSITS AND DISBURSEMENTS.*

16   *Article 4.1.-First Dollars Funding of COFINA Revenues.*

17   (a)    *Each Fiscal Year, the first funds comprising the Pledged Taxes shall be transferred*

18   *to, and deposited with, the Corporation, or any account or fund, (including the COFINA Revenues*

19   *Fund or an account or fund controlled by the Indenture Trustee designated in the Bond Indenture*

20   *pursuant to which obligations were incurred in accordance with this Act and the Ancillary*

21   *Agreements), designated by the Corporation, until such time as the Corporation has received an*

22   *amount equal to the COFINA Revenues for such Fiscal Year. The requirement that the first funds*

1   *comprising the Pledged Taxes up to the COFINA Revenues be deposited with the Corporation or*

2   *in any account or fund, (including the COFINA Revenues Fund or an account or fund controlled*

3   *by the Indenture Trustee designated in the Bond Indenture pursuant to which obligations were*

4   *incurred in accordance with this Act and the Ancillary Agreements), designated by the*

5   *Corporation may not be modified; provided, that the Bond Indenture may contain provisions*

6   *allowing for the quarterly distribution of the Pledged Taxes between the Corporation and the*

7   *Government of Puerto Rico upon satisfaction of the requirements set forth in the Bond Indenture*

8   *and consistent with the Corporation Plan of Adjustment. The Corporation shall have the rights*

9   *set forth in this Article 4.1 until such time as the Plan of Adjustment Bonds, together with any*

10  *interest thereon, and all obligations under all Ancillary Agreements, have been completely paid in*

11  *cash in full or have otherwise been discharged in accordance with their terms.*

12      *(b)      During each Fiscal Year, the Indenture Trustee or such other Person as may be*

13  *designated in the Bond Indenture shall determine, on a monthly basis, if the Corporation has*

14  *received the COFINA Revenues. Once the Indenture Trustee or such other Person determines*

15  *that the COFINA Revenues have been deposited with the Indenture Trustee, (or that portion of*

16  *the COFINA Revenues as the Corporation may be entitled to the extent the quarterly distribution*

17  *referenced in Article 4.1(a) above is in effect), all revenues of the Pledged Taxes received after such*

18  *determination shall be transferred to the Government of Puerto Rico.*

19      *(c)      No Person who collects or holds the Pledged Taxes shall have any legal or equitable*

20  *right, title or interest thereto solely by virtue of the fact that it collects or holds the Pledged Taxes.*

21      *Article 4.2.-Excess Funding.*

1     *The amounts deposited with the Corporation each Fiscal Year in excess of the amounts*

2     *required to pay principal and interest on the Plan of Adjustment Bonds then due and payable*

3     *(including the principal and interest due and payable on any past due Plan of Adjustment Bonds),*

4     *satisfy obligations assumed pursuant to the Bond Indenture or other Ancillary Agreements then*

5     *due and payable, pay its Financing Costs or operating expenses as provided in the Ancillary*

6     *Agreement, or make any other payment related to other obligations incurred by the Corporation,*

7     *will be transferred to the Corporation, free and clear of the lien established by Article 3.2 of this*

8     *Act and any other lien established by the Bond Indenture or other Ancillary Agreement.*

9     *CHAPTER 5. - MISCELLANEOUS PROVISIONS.*

10     *Article 5.1. -Severability.*

11     *This Act shall be interpreted ~~in a manner to render it valid to the extent practicable~~ in*

12     *accordance with the Puerto Rico Constitution and the U.S. Constitution. If any clause, paragraph,*

13     *subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter,*

14     *subchapter, heading, or part of this Act, were to be annulled or declared unconstitutional, the order*

15     *to such effect will neither affect nor invalidate the remainder of this Act. The effect of such an order*

16     *shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision,*

17     *section, subsection, title, chapter, subchapter, heading, or part of this Act so annulled or declared*

18     *unconstitutional. If the application to a Person or circumstance of any clause, paragraph,*

19     *subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter,*

20     *subchapter, heading, or part of this Act, were to be annulled or declared unconstitutional, the order*

21     *to such effect will neither affect nor invalidate the application of the remainder of this Act to such*

22     *Persons or circumstances to which it may be validly applied. It is the express and unequivocal*

1  *intent of this Legislative Assembly that the courts of law enforce the provisions and application of*

2  *this Act* ~~to the greatest possible extent,~~ *even if any of its parts is annulled, invalidated, affected or*

3  *declared unconstitutional, or even if the application thereof to any Person or circumstance is*

4  *annulled, invalidated or declared unconstitutional.* ~~This Legislative Assembly would have passed~~

5  ~~this Act regardless of the ruling on severability that a Court may issue.~~

6      *Article 5.2.- Language Conflict.*

7      *This Act shall be adopted both in English and Spanish. If in the interpretation or*

8  *application of this Act any conflict arises as between the English and Spanish texts, the English*

9  *text shall govern."*

10     Sección 26.- Se derogan los Artículos 2 y 4 de la Ley 116-2013, según enmendada.

11     Sección 27.- Se enmienda el Artículo 25-A de la Ley 44 del 21 de junio de 1988,

12  según enmendada, para que lea en su totalidad como sigue:

13     "(a)…

14     …

15     (k) Durante el período comprendido entre la fecha de aprobación de esta Ley y el

16  31 de diciembre de 2012, la ~~Autoridad~~ *Corporación* habrá de disponer de los activos

17  depositados en la Cuenta del Corpus de la siguiente manera:

18        (i) …

19        (ii) el remanente, permanecerá en la Cuenta del Corpus y se utilizará para

20             comprar un bono de apreciación de capital emitido por la Corporación para

21             el Fondo de Interés Apremiante de Puerto Rico con un vencimiento no

22             menor de 30 años ni mayor de 40 años y a una tasa de interés de no menos

1      de 7.00%. El Sistema de Retiro de Empleados del Estado Libre Asociado de

2      Puerto Rico y la Autoridad para el Financiamiento de la Infraestructura de

3      Puerto Rico no podrán disponer voluntariamente del bono de la

4      Corporación del Fondo de Interés Apremiante de Puerto Rico, a menos que

5      dicha disposición sea autorizada por *la Autoridad de Asesoría Financiera y*

6      *Agencia Fiscal de Puerto Rico* [**el Banco Gubernamental de Fomento para**

7      **Puerto Rico y en el caso del bono depositado en la Cuenta del Corpus,**

8      **aprobada mediante Resolución Conjunta por la Asamblea Legislativa**]."

9      Sección 28.- Separabilidad.

10      Esta Ley se interpretará ~~de tal manera para hacerla válida, en la medida que sea~~

11      ~~factible,~~ de acuerdo a la Constitución de Puerto Rico y la Constitución de los Estados

12      Unidos de América. Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra,

13      artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de

14      esta Ley fuera anulada o declarada inconstitucional, la orden a tal efecto dictada no

15      afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha orden

16      quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo,

17      disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de la misma

18      que así hubiere sido anulada o declarada inconstitucional. Si la aplicación a una Persona

19      o a una circunstancia de cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra,

20      artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de

21      esta Ley fuera invalidada o declarada inconstitucional, la resolución, dictamen o

22      sentencia a tal efecto dictada no afectará ni invalidará la aplicación del remanente de esta

1    Ley a aquellas Personas o circunstancias en que se pueda aplicar válidamente. Es la

2    voluntad expresa e inequívoca de esta Asamblea Legislativa que los tribunales hagan

3    cumplir las disposiciones y la aplicación de esta Ley ~~en la mayor medida posible~~, aunque

4    se deje sin efecto, anule, invalide, perjudique o declare inconstitucional alguna de sus

5    partes, o aunque se deje sin efecto, invalide o declare inconstitucional su aplicación a

6    alguna persona o circunstancia. ~~Esta Asamblea Legislativa hubiera aprobado esta Ley sin~~

7    ~~importar la determinación de separabilidad que el Tribunal pueda hacer.~~

8         Sección 29.- Supremacía.

9         Las disposiciones de esta Ley prevalecerán sobre cualquier otra disposición

10    general o específica de cualquier otra ley o reglamento del Gobierno de Puerto Rico que

11    sea inconsistente con esta Ley.

12         Sección 30.- Vigencia.

13         Esta Ley comenzará a regir ~~en la Fecha de Efectividad,~~ *en la fecha en que el plan de*

14    *ajuste con relación al caso de la Corporación al amparo del Título III de PROMESA  advenga*

15    *efectivo de acuerdo a sus términos.* ~~según dicho término está definido en la Ley 91-2016,~~

16    ~~según enmendada por esta Ley.~~