## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |

## MOTION OF ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP. FOR (I) RELIEF FROM THE STAY IMPOSED BY THE *FINAL ORDER REGARDING (A) STAY PERIOD, (B) MANDATORY MEDIATION, AND (C) CERTAIN DEADLINES RELATED THERETO* (ECF NO. 12189), OR, IN THE ALTERNATIVE, (II) RECONSIDERATION, PURSUANT TO FED. R. CIV. P. 59, OF THE *FINAL ORDER REGARDING (A) STAY PERIOD, (B) MANDATORY MEDIATION, AND (C) CERTAIN DEADLINES RELATED THERETO* (ECF NO. 12189)

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................ 1

JURISDICTION AND VENUE ......................................................................................... 3

BACKGROUND ............................................................................................................... 3

    A.  Procedural History ............................................................................... 3

    B.  March 4th Omnibus Hearing ................................................................ 6

ARGUMENT ................................................................................................................... 8

I      The Stay Of The GO Claim Objection Should Be Lifted Because Allowance Of
Assured's Claim Will Not Be "Settled" Under The Amended Plan .................................... 8

    A.  Claim Allowance And Confirmation Are Entirely Distinct ................................... 8

    B.  Priority Of A Claim, If Disputed, Should Be Determined Through The
Claims Allowance Process Rather Than Through Plan Confirmation ................ 13

II    In Light Of The Distinction Between Claim Allowance And Plan Treatment,
"Good Cause" Exists To Grant Relief From The Stay Order ............................................. 15

III   Alternatively, The Court Should Reconsider Its Inclusion Of The Claim
Objections In The Stay Order ........................................................................................... 17

    A.  The Court Erred In Not Distinguishing Between Claim Allowance And
Plan Treatment ........................................................................................ 18

    B.  Manifest Injustice Warrants Reconsideration ....................................... 20

CONCLUSION ................................................................................................................. 21

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**:

C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.,
   369 B.R. 87 (D.P.R. 2007) ...........................................................................................16

Candelario v. Metropolitan Life Ins. Co.,
   861 F. Supp. 2d 23 (D.P.R. 2012) ...............................................................................18

Comite Fiestas de la Calle San Sebastian, Inc. v. Cruz,
   314 F.R.D. 23 (D.P.R. 2016) .......................................................................................17

In re Bateman,
   331 F.3d 821 (11th Cir. 2003) .....................................................................................11

In re Bellucci,
   119 B.R. 763  (Bankr. E.D. Cal. 1990) ........................................................................10

In re Berksteiner,
   Case Nos. No. 03–13203, 03–13645, 03–13765, 03–13242,
   2004 WL 2201300  (Bankr. S.D.Ga. 2004) .................................................................14

In re C.P. Hall Co.,
   513 B.R. 540 (Bankr. N.D. Ill. 2014) ..........................................................................11

In re Clarkeies Market, LLC,
   322 B.R. 487 (Bankr. D.N.H. 2005) ............................................................................14

In re ConAgra Foods, Inc.,
   No. CV-11-05379-MMM, 2014 WL 12580052 (C.D. Cal. Dec. 29, 2014) .................20

In re DeSardi,
   340 B.R. 790 (Bankr. S.D.Tex. 2006) ...........................................................................9

In re Dynamic Brokers, Inc.,
   293 B.R. 489 (9th Cir. B.A.P. 2003) .....................................................................*passim*

In re Echevarria,
   212 B.R. 185 (1st Cir. B.A.P. 1997) ............................................................................11

In re Garvida,
   347 B.R. 697 (9th Cir. B.A.P. 2006) .......................................................................11, 12

In re Grogan,
   Case No. 11-65409-frall, 2013 WL 4854313 (Bankr. D.Or. Sept. 10, 2013) ...............9

In re Haskins,
   563 B.R. 177 (Bankr. W.D. Va. 2017) ......................................................................9, 11

**TABLE OF AUTHORITIES, cont'd.**

**Page(s)**

In re Knowles,
442 B.R. 150 (1st Cir. BAP 2011) .......................................................................8

In re M. Long Arabians,
103 B.R. 211 (9th Cir. B.A.P. 1989) ..................................................................10

In re McLemore,
426 B.R. 728 (Bankr. S.D. Ohio 2010) ..............................................................14

In re Montgomery,
285 B.R. 345 (Bankr. D.R.I. 2002) .....................................................................15

In re Moore,
319 B.R. 504 (Bankr. S.D.Tex. 2005) ..................................................................9

In re Padilla Cruz,
585 B.R. 255 (Bankr. D.P.R. 2018) .....................................................................18

In re Parker,
148 B.R. 604 (Bankr. D. Idaho 1992) ................................................................11

In re Quality Properties, LLC,
Case No. 10–40132–JJR, 2011 WL 6161010 (Bankr. N.D.Ala 2011) ...............14

In re Thunderbolt Realty Trust,
190 B.R. 11 (Bankr. D.Mass 1995) ....................................................................14

In re Wegscheid,
361 B.R. 144 (Bankr. D.Az. 2007) .......................................................................8

Jarvis v. Berryhill,
Case No. TMD 15-2226, 2017 WL 467736 (D.Md. Feb. 3, 2017) ....................20

LVNV Funding, LLC v. Harling,
852 F.3d 367 (4th Cir. 2017) ................................................................................8

Marder v. Turner (In re Turner),
161 B.R. 1 (Bankr. D. Me. 1993) ........................................................................15

Marie v. Allied Home Mortg. Corp.,
402 F.3d 1 (1st Cir. 2005) ........................................................................3, 18, 21

Matter of Pennsylvania Iron & Coal Co., Inc.,
40 B.R. 918 (Bankr. S.D. Ohio 1984) ................................................................14

Peerless Ins. Co. v. Rivera,
208 B.R. 313 (D.R.I. 1997) ...........................................................................15, 16

<u>**TABLE OF AUTHORITIES, cont'd.**</u>

**Page(s)**

Salinas v. City of San Jose,
    No. 5:09-cv-04410 EJD, 2012 WL 2906052 (N.D. Cal. July 13, 2012) ..............................20

Villafañe-Colon v. B Open Enterprises, Inc.,
    932 F. Supp. 2d 274 (D.P.R. 2013) ...........................................................................19

Villanueva-Mendez v. Nieves Vazquez,
    360 F. Supp. 2d 320 (D.P.R. 2005), aff'd, 440 F.3d 11 (1st Cir. 2006) .................................17

**<u>STATUTES & OTHER AUTHORITIES:</u>**

11 U.S.C. § 502................................................................................................................9

11 U.S.C. § 502(b) .........................................................................................................9

Fed. R. Bankr. P.
3007...............................................................................................................................3, 9
3007(a)(1) .......................................................................................................................9
3018(a) .........................................................................................................................10
9014..............................................................................................................................9
9014(a) .........................................................................................................................10

    Fed. R. Bankr. P. 3007 Advisory Committee's Note to 2017 Amendment .................9, 10

    P.R. R. Bankr. P. 3007-1(a) ...........................................................................14

    P.R. R. Bankr. P. 3007-1(b) ...........................................................................14

    9 COLLIER at ¶ 3018.01[5] ...........................................................................10

To the Honorable United States District Judge Laura Taylor Swain:

Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured") respectfully submit this *Motion of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. for (I) Relief from the Stay Imposed by the Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto (ECF No. 12189), or, in the Alternative, (II) Reconsideration, Pursuant to Fed. R. Civ. P. 59, of the Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto (ECF No. 12189)* (the "Motion"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Through its GO Claim Objection (ECF No. 4784), the Financial Oversight and Management Board for Puerto Rico ("FOMB") seeks to disallow certain GO Bond claims based on FOMB's theory that the challenged GO Bonds—including bonds insured by Assured—had been issued in excess of the debt limit provision of the Puerto Rico Constitution.  This Court was on track to hear motions to dismiss the GO Claim Objection on April 30, 2020.

2.      However, on March 10, 2020, the Court entered its *Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto (ECF No. 12189)* (the "Stay Order"), staying, inter alia, litigation related to the GO Claim Objection and the potential allowance of Assured's challenged GO Bond claims. The goal of the Stay Order is to "avoid the unnecessary litigation of issues that will be resolved if the Amended Plan is ultimately confirmed."  See Stay Order ¶ 3.  But the imposition of the Stay Order has the effect of precluding Assured's right to litigate objections to the allowance of claims, which statutorily cannot be decided as part of the plan confirmation process.

3.       The Stay Order expressly provides that "Parties may seek relief from any stay imposed by this Order upon a showing of good cause." See Stay Order ¶ 5. Assured submits that "good cause" exists to grant relief from the Stay Order to permit the GO Claim Objection to be properly addressed and to seek the allowance of its challenged GO Bond claims.

4.       First, allowance of Assured's claim will not be "settled" under the Amended Plan.  The caselaw is well-established that the *allowance* or *disallowance* of disputed claims must be dealt with in the "claims *allowance* process."  In the absence of claimant consent, allowance or disallowance of claims may not be determined by confirmation of a plan, because claim allowance and plan confirmation are "entirely distinct" from one another.  Indeed, Bankruptcy Code Section 502 and Bankruptcy Rule 3007 expressly provide Assured with the right to a "hearing" on any claim objection, as well as the right to litigate a claim objection one-on-one against the debtor rather than through the "collective proceeding" that is plan confirmation.  See, e.g., In re Dynamic Brokers, Inc., 293 B.R. 489, 496 (9th Cir. B.A.P. 2003).  Disregarding Section 502 and Rule 3007 would constitute an infringement on Assured's right to due process with respect to a determination on the allowance of its claims.

5.       Second, the issue of the GO Bond claims' *priority* is properly addressed through a contested matter as part of the claim allowance process, not through plan treatment. Puerto Rico Local Bankruptcy Rule 3007-1(a) provides that claim objectors must make recommendations regarding whether a claim should be disallowed or allowed with a priority other than as filed.  Local Bankruptcy Rule 3007-1(b) expressly requires such claim objections be governed by the procedures for contested matters.

6.       Third, Assured has demonstrated "good cause" for relief from the stay of the GO Claim Objection.  Assured risks severe curtailment of its statutory and due process rights

if its claims are discounted without it being first afforded the ability to litigate the entirely independent issue of the allowance of its claims.

7. In the alternative, to the extent the Court believes that Assured's request for relief requires reconsideration of the Stay Order, such reconsideration is justified. The GO Claim Objection and the priority objection cannot be "settled" under the Amended Plan. Accordingly, reconsideration would be appropriate because (i) the stay is based on a manifest error of law and (ii) the stay would give rise to manifest injustice by depriving Assured of its statutory and due process rights to a ruling on the allowance of its claim. See Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005).

8. For these reasons, as well as those set forth below, Assured respectfully requests relief from the Stay Order and the immediate scheduling of hearings on the pending priority and debt limit-based objections to Assured's claims.

## JURISDICTION AND VENUE

9. The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over the Motion pursuant to PROMESA section 306(a).

10. Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

### A. Procedural History

11. On January 14, 2019, FOMB filed the GO Claim Objection (ECF No. 4784) under Section 502 of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure, governing "Objections to Claims." Fed. R. Bankr. P. 3007. The GO Claim Objection asserts that Title III Debtor the Puerto Rico Public Buildings Authority ("PBA") is a "sham" because its facilities are only "purportedly leased" to the Commonwealth and other tenants and the

lease arrangements constitute disguised financings.  See GO Claim Objection ¶¶ 2, 5, 65.  On this basis, the GO Claim Objection asserts that bonds issued by PBA ("PBA Bonds") should be (i) recharacterized as GO Bonds issued directly by the Commonwealth and (ii) included in the calculation of the Commonwealth's debt limit under Article II, Section 2 of the Puerto Rico Constitution.  See id. ¶ 61.  Once the debt limit is recalculated to include these recharacterized PBA Bonds, the GO Claim Objection asserts that certain GO Bonds issued in 2012 and insured by Assured exceeded the debt limit.  Id.  Consequently, the GO Claim Objection seeks *disallowance* of Assured's claims arising under the challenged bonds.  See 4784-1 ¶ 2.

12.     On July 24, 2019, the Court issued an order that stayed the GO Claim Objection to permit the Mediation Team to file proposed scheduling orders. ECF No. 8244.  On November 27, 2019, the Mediation Team delivered an interim report (ECF No. 9365) containing a largely agreed-upon scheduling order for GO/PBA matters (ECF No. 9619, the "GO/PBA Order") that put the GO Claim Objection on track to be resolved in the near-term. Assured and other parties filed motions to dismiss the GO Claim Objection on February 5, 2020 (see ECF Nos. 10702 and 10704, the "GO Motions to Dismiss").  The GO/PBA Order scheduled a hearing on these GO Motions to Dismiss for April 30, 2020.

13.     Notwithstanding the anticipated progress towards resolution of the GO Claim Objection, the Mediation Team on February 10, 2020 filed an Amended Report (ECF No. 10765, the "Amended Report") that sought to stay litigation of the GO Claim Objection pending a hearing on plan confirmation.  See Amended Report at pp. 8-9.

14.     On February 21, 2020, Assured filed an objection and a supplemental objection to the Amended Report. See ECF Nos. 11493 & 11497.  Assured argued that the GO Claim Objection could not be "settled" under a plan absent Assured's consent to such a settlement, because that objection goes to the *allowance* of Assured's challenged GO Bond claims, not to the

potential *treatment* of such claims under a plan.  Accordingly, Assured explained that it is entitled

to an adjudication as to the allowance of its claims.

15.     On February 28, 2020, FOMB filed a proposed amended plan of adjustment

(ECF No. 11946, the "Amended Plan").  On the one hand, the Amended Plan appears to provide

that all GO and PBA Bond claims will be "deemed allowed" in their full amounts.  See Amended

Plan art. 2.2.[2]  On the other hand, the Amended Plan provides different *treatment* to different series

of GO Bonds based on their date of issuance.  This differential treatment is purportedly based on

the different risks of *disallowance* later-issued bonds would face as a result of the GO Claim

Objection (on the theory that later-issued bonds would be more likely to have violated the

constitutional debt limit).  Moreover, the plan discounts purportedly represent the risk that GO

Bonds do not have priority under the Puerto Rico Constitution.  The Amended Plan therefore

---

[2] With respect to the 2012 GO Bonds insured by Assured and challenged in the GO Claim Objection, there actually appears to be some inconsistency on this point between the Amended Plan and the related disclosure statement (ECF No. 11947, the "Disclosure Statement").  The Amended Plan defines these challenged 2012 GO Bonds insured by Assured as "2012 CW Bond Claim[s] (Insured)" and purports to classify them separately from other GO Bond claims as "Class 30."  See Amended Plan art. 1.21, art. XXXIV. The Disclosure Statement identifies $393,576,302.36 as the "Estimated Claim Amount" and 69.887% as the "Approx[imate] Recovery" for these Class 30 "2012 CW Bond Claims (Insured)," thereby seemingly indicating that the "2012 CW Bond Claims (Insured)" are to be "deemed allowed" under the Amended Plan and then provided with a distribution reflecting approximately a 5% discount vis-à-vis the so-called "Vintage CW Bond Claims" not subject to the GO Claim Objection. See Disclosure Statement at 14-16. By contrast, the provision of the Amended Plan providing for "Allowance of Bond Claims," Article 2.2, does not actually list the "2012 CW Bond Claims (Insured)" as one of the classes of bond claims that are "deemed allowed;" instead, Article 2.2 appears to include the amount of the "2012 CW Bond Claims (Insured)" ($393,576,302.36) in the "deemed allowed" claim amount of a different class, namely the uninsured "2012 CW Bond Claims" in Class 28. Specifically, Article 2.2 identifies the "deemed allowed" amount of the uninsured "2012 CW Bond Claims" in Class 28 as $2,938,901,920.90, which appears to be an aggregate amount constituting the sum of the separate claim amounts identified in the Disclosure Statement for the uninsured "2012 CW Bond Claims" in Class 28 ($2,545,325,618.54) and the "2012 CW Bond Claims (Insured)" in Class 30 ($393,576,302.26). Compare Amended Plan art. 2.2 with Disclosure Statement at 16. Presumably, the Disclosure Statement accurately reflects FOMB's intended treatment of the "2012 CW Bond Claims (Insured)," and the failure to separately list the "2012 CW Bond Claims (Insured)" and the corresponding claim amount in Article 2.2 of the Amended Plan constitutes a scrivener's error, but this is for FOMB to clarify.

mischaracterizes the risk of *disallowance* associated with the GO Claim Objection as an issue that can be addressed through the proposed *treatment* of fully allowed claims.

**B.    March 4ᵗʰ Omnibus Hearing**

16.    At the March 4, 2020, hearing on the Amended Report, Assured reiterated its argument regarding the distinction between claim allowance and plan treatment.  Assured's counsel stated, "What is the reason given by the mediation report, and then echoed in the Oversight Board's papers, for staying the hearing [on the GO Claim Objection] scheduled for April 30th? . . . The reason given is that there's been a settlement of that issue.  Well, no, Your Honor, there hasn't.  Indeed, it's called a global settlement.  There is nothing global about it at all, because that litigation is based on . . . objections that are filed to claims, including the claims of Assured Guaranty.  It may be that other creditors who are similarly situated have agreed to settle similar objections to their claims.  That's great.  That's their right.  What they cannot do is settle the allowance of my client.  That is personal to us. . . . Plans deal not with allowance, but with the treatment of allowed claims by class. . . . The allowance of claims is governed by Rule 3007 and by Rule 9014."  See Tr. of Hearing, March 4, 2020, at 125:22-126:11, 126:15-18.

17.    In subsequent colloquy at the March 4 hearing, the Court indicated that it would seek further clarification from FOMB with respect to the issue of claim allowance as opposed to plan treatment, stating "Well, let me just say that I'll expect that the Oversight Board, when it comes back for remarks, will tell me whether I was wrong in assuming that their structure presumes that your client's claim is allowed in the context of this plan, and then treat it in a manner that's discounted as opposed to being knocked off the table entirely by an objection that isn't being litigated."  Id. at 126:25-127:6.

18.    Later in the hearing, FOMB's counsel's response failed to shed clear light on the issue (or even on FOMB's position on the issue).  At the outset, FOMB's counsel stated,

"As far as Assured's objections that somehow we are settling its claims, to our knowledge, we are not.  If they're talking about GO debt, the 2011 GO debt that they rep part of **is being allowed.  We're not imposing a settlement of the allowance** . . . We're not imposing on them an allowance of their claim."  Id. at 188:20-24, 189:12. (emphasis added).

19.     However, in the next breath, FOMB's counsel said, "**[W]e're not giving up our rights to object to their claim, and we're not asking them to give up their rights to have it allowed in whatever allowable amount it's supposed to have.**"  Id. at 189:13-16 (emphasis added).

20.     Based on these remarks, FOMB's counsel appeared to acknowledge that no settlement of the allowance issue was being imposed on Assured, and that—notwithstanding the purportedly "global" nature of the "settlement" under the Amended Plan—Assured retained the right to seek allowance of its claim outside the context of plan confirmation and the FOMB retained its rights to prosecute the GO Bond and priority objections.

21.     At the conclusion of the March 4 hearing, the Court imposed a stay of the GO Claim Objection and other litigation related to GO and PBA Bonds, reasoning that "it is not prudent to continue litigating GO-PBA issues that will be resolved if the Plan of Adjustment is ultimately confirmed."  Id. at 216:2-4.  The Court also approved a provision of the Mediation Team's proposed order staying new adversary proceedings and contested matters that "address issues being settled under the Amended Plan."  Id. at 218:1.  Importantly, however, the Court did *not* specifically rule on the merits of Assured's objection to the stay of the GO Claim Objection based on the fact that the claim *allowance* issues raised in the GO Claim Objection cannot be resolved by way of a settlement with respect to plan *treatment*—a fact that FOMB appeared to concede when its counsel stated that the Amended Plan was "not imposing a settlement of the allowance" of Assured's claim.  See Tr. of Hearing, March 4, 2020, at 188:23-24.

22.     On March 10, 2020, the Court entered its Stay Order, the stated purpose of which is to "avoid the unnecessary litigation of issues that will be resolved if the Amended Plan is ultimately confirmed."  See Stay Order ¶ 3.  The Stay Order further provides that "Parties may seek relief from any stay imposed by this Order upon a showing of good cause."  Id. ¶ 5.  Assured submits that if—as FOMB's counsel appeared to concede at the March 4 hearing—the Amended Plan does *not* purport to settle the allowance of Assured's claims challenged in the GO Claim Objection, then the GO Claim Objection properly falls outside the scope of matters intended to be stayed by the Stay Order.  As such, good cause exists to lift the stay imposed by the Stay Order to permit the GO Claim Objection to go forward to an adjudication with respect to the allowance of Assured's challenged claims.

## ARGUMENT

**I      The Stay Of The GO Claim Objection Should Be Lifted Because Allowance Of Assured's Claim Will Not Be "Settled" Under The Amended Plan**

**A.      Claim Allowance And Confirmation Are Entirely Distinct**

23.     Claim treatment under a plan and claim allowance are distinct issues with distinct processes.  The GO Claim Objection addresses whether or not certain of Assured's GO Bond Claims should be allowed or disallowed.  As Assured explained in its Supplemental Objection and at the March 4 hearing, the *allowance* or *disallowance* of disputed claims must be dealt with in the "claims *allowance* process."  See Assured Supplemental Objection ¶ 17.  Without the claim holders' consent, the allowance or disallowance of claims may not be determined by confirmation of a plan, because claim allowance and plan confirmation are "entirely distinct" from one another.  In re Wegscheid, 361 B.R. 144, 148 (Bankr. D.Az. 2007); see also, e.g., LVNV Funding, LLC v. Harling, 852 F.3d 367, 372 (4th Cir. 2017) ("the claims allowance procedure" is "separate and apart under the Bankruptcy Code from plan confirmation"); In re Knowles, 442 B.R.

-8-

150, 163 (1st Cir. BAP 2011) (" . . . the procedure for the allowance and disallowance of claims .

. . is '[s]eparate from, if not parallel to, confirmation.'"); <u>In re Haskins</u>, 563 B.R. 177, 188 (Bankr.

W.D. Va. 2017) (res judicata did not bar claim objection filed after plan was confirmed; claims

allowance process was separate from confirmation process); <u>In re Grogan</u>, Case No. 11-65409-

frall, 2013 WL 4854313, at *2 (Bankr. D.Or. Sept. 10, 2013) (noting that, in the context of a

chapter 11 plan confirmation hearing, the court would determine a claim's exact amount "in the

claims allowance process"); <u>In re DeSardi</u>, 340 B.R. 790, 794 n.1 (Bankr. S.D.Tex. 2006) ("The

procedures for claims allowance are distinct from the procedures for plan confirmation"); <u>In re</u>

<u>Moore</u>, 319 B.R. 504, 508 (Bankr. S.D.Tex. 2005) ("[a]llowance of claims is governed by

protocols and procedures separate from those applicable to plan confirmation.").

24.     Unresolved, contested claim objections (like the GO Claim Objection) must

be determined in compliance with Section 502 of the Bankruptcy Code and Bankruptcy Rule

3007—the very Code provision and Bankruptcy Rule under which FOMB expressly brought the

GO Claim Objection (<u>see</u> ECF No. 4784)—as well as Bankruptcy Rule 9014.  11 U.S.C. § 502;

Fed. R. Bankr. P. 3007, 9014.  These provisions establish detailed procedures for the claims

allowance process and, specifically, for resolving claim objections.  Where an objection to a claim

is made, Section 502(b) provides that the court must make a determination of the validity and/or

amount of the claim after "**notice and a hearing.**"  11 U.S.C. § 502(b) (emphasis added).

Rule 3007 provides that when the allowance of a claim is objected to, such an objection "shall be

filed and served at least 30 days before any scheduled **hearing on the objection** or any deadline

for the claimant to request a hearing."  Fed. R. Bankr. P. 3007(a)(1) (emphasis added).  The

advisory committee notes indicate that Rule 3007 requires "notice and an opportunity for **a**

**hearing on the objection[.]**"  Fed. R. Bankr. P. 3007 Advisory Committee's Note to 2017

Amendment (emphasis added).  Rule 9014 governs the claim objection as a contested matter and

provides, "In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and **reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought.**"  Fed. R. Bankr. P. 9014(a) (emphasis added).[3]

       25.    The Federal Rules of Bankruptcy Procedure do not contemplate resolution of claim objections through plan confirmation, and instead contemplate that "claims objections and plan confirmation proceedings may be on **parallel tracks** and **different time tables** . . . ." In re Dynamic Brokers, Inc., 293 B.R. 489, 496 (9th Cir. B.A.P. 2003) (citing Fed. R. Bankr. P. 3018(a)) (emphasis added);  In re M. Long Arabians, 103 B.R. 211, 215 (9th Cir. B.A.P. 1989); In re Bellucci, 119 B.R. 763, 778 (Bankr. E.D. Cal. 1990); 9 COLLIER at ¶ 3018.01[5].  Plan confirmation and resolution of claim objections are fundamentally different processes, because plan confirmation is a "collective proceeding" and a claim objection is "typically a two-party dispute[.]"  Id.  Because of the incongruence of these two processes, there is "no rule that authorizes an objection to claim to be litigated in chapter 11 plan confirmation proceedings without complying with Rule 3007[,]" and such a rule should not be unilaterally fashioned by this Court to the detriment of Assured's rights.  Id.

       26.    Furthermore, distinct and separate provisions of the Bankruptcy Code govern (i) the claims allowance process and (ii) the plan confirmation process.  Specifically, Section 502 governs claim allowance.  "[Section 502(b)] declares that when a party in interest objects to a claim, 'the court shall determine the amount of such claim ... and shall allow [the]

---

[3] The Advisory Committee noted that the 2017 amendment, "by deleting from the subdivision [a] references to 'the hearing,' [] permits local practices that require a claimant to timely request a hearing or file a response in order to obtain a hearing....[W]hile a local rule may require the claimant to respond to the objection to a proof of claim, the court will still need to determine if the claim is valid, even if the claimant does not file a response to a claim objection or request a hearing."  Fed. R. Bankr. P. 3007 advisory committee's note to 2017 amendment.  The Puerto Rico Local Bankruptcy Rules, Rule 3007-1, simply states that "procedures for contested matters set forth in Fed. R. Bankr. P. 9014 govern objections to claims."

claim' in that amount unless the claim is objectionable under sections 502(b)(1)-(9). **The court's obligation to rule on a claim objection is mandatory, and the creditor's right to a ruling is also unqualified.**") (internal citations omitted) (emphasis added). In re C.P. Hall Co., 513 B.R. 540, 544 (Bankr. N.D. Ill. 2014).

27.     By contrast, Section 1129, rather than Section 502, governs plan confirmation, and conflating the two is improper. In re Haskins, 563 B.R. at 188. Not only do the procedures differ, but the evidence required for claim allowance and confirmation also differ. In re Dynamic Brokers, Inc., 293 B.R. at 496 ("Not only is it more difficult for a creditor to litigate against the entire collective body of other creditors and owners in a plan confirmation proceeding, but the evidence relevant to a plan confirmation is so different from the evidence relevant to a claim objection that the two proceedings simply do not form a convenient trial unit.").

28.     Of particular note, the Eleventh Circuit has held that where confirmation of a plan "effectively determine[s] the amount of a secured claim," such a plan is inconsistent with Section 502(a) and Rule 3007. In re Bateman, 331 F.3d 821, 832 (11th Cir. 2003). Specifically, the Eleventh Circuit held that where a plan listed an amount different than a proof of claim, the "secured claim is unaffected by the plan and survives the bankruptcy unimpaired." Id. The Bankruptcy Appellate Panel of the First Circuit has cited a case that similarly held that where a confirmed plan allotted a creditor less than the claim amount asserted in his proof of claim, the plan was not binding on that creditor. In re Echevarria, 212 B.R. 185, 187 (1st Cir. B.A.P. 1997) (citing in In re Parker, 148 B.R. 604 (Bankr. D. Idaho 1992)).

29.     While the Bankruptcy Appellate Panel for the Ninth Circuit, in In re Garvida, did hold that a plan can sometimes function as a claim objection, that case actually serves to reinforce the larger point that claim objections must be resolved in compliance with Section 502 and Rule 3007, because the Ninth Circuit BAP specifically emphasized that "[c]onsiderations of

-11-

due process mandate caution when ersatz procedure is used and require that the creditor receive specific notice and be afforded the **same opportunity to litigate one-on-one, as would occur in a straight forward claim objection under Rule 3007**." 347 B.R. 697, 704 (9th Cir. B.A.P. 2006) (emphasis added).  Indeed, the <u>Garvida</u> court held that the plan confirmation proceeding there could function as a substitute for a hearing on a claim objection only because, under the facts of that case, it was "unambiguous that the debtors and [creditor] litigated the plan confirmation as if it was a claim objection proceeding. Indeed, this plan confirmation was strictly a two-party dispute . . . The parties litigated one-on-one regarding the correct payoff amount in the same manner as they would have under Rule 3007." <u>Id.</u>  The facts of <u>Garvida</u> are therefore a far cry from the Commonwealth's Amended Plan, which includes fifty-two separate classes of claims encompassing tens of thousands of creditors, and where FOMB's stated intent appears to be to purport to "settle" the GO Claim Objection either through the vote of "an accepting" class or through "cram down" under Section 1129(b) (<u>see</u> Tr. of Hearing, March 4, 2020, at 186:15-17)—in the process depriving Assured of its right to "litigate" the GO Claim Objection "one-on-one" as required under Section 502 and Rule 3007.[4]

30.    Moreover, the Ninth Circuit BAP in <u>Dynamic Brokers</u> expressly rejected the gambit that FOMB is attempting here, which is to employ proposed treatment under a plan as a substitute for the claim objection procedure mandated in the Bankruptcy Code and Bankruptcy Rules.  As the Ninth Circuit BAP emphasized there, "utilizing a plan confirmation proceeding as a method of objecting to a claim presents troubling policy issues in the face of rules of procedure

---

[4]    Furthermore, the <u>Garvida</u> court noted that the creditor there did "not object to or question the procedure being utilized in the bankruptcy court[.]"  <u>Id.</u>  Here, by contrast, Assured has specifically objected—and continues to object—to consideration of the GO Claim Objection only in conjunction with plan treatment, and insists on its right to litigate against FOMB, as the proponent of the GO Claim Objection, "one-on-one," as provided under Section 502 and Rule 3007.

that appear to require formal objections to claims.  The construct of the statute and rules that is

held out to the public is that claims are deemed allowed unless there is an objection in accordance

with rules that prescribe a precise procedure for objecting.  **Neither the statute nor the rules say,**

**'oh, by the way, we can also sandbag you by sneaking an objection into a reorganization plan**

**and hoping you do not realize that we can use this device to circumvent the claim objection**

**procedure mandated by the rules.'**  That is not the law, and if it were the law, it would be a

material disservice to public confidence in the integrity of the bankruptcy system." In re Dynamic

Brokers, Inc., 293 B.R. at 497 (emphasis added).

31.     Dynamic Brokers applies here with full force.  FOMB's attempt to

"sandbag" Assured and other holders of challenged GO Bonds by mischaracterizing a claim

objection as an issue of plan treatment should be rejected, and adjudication of the GO Claim

Objection in accordance with Bankruptcy Code Section 502 and Bankruptcy Rule 3007 should be

permitted.

**B.      Priority Of A Claim, If Disputed, Should Be Determined Through The Claims**
**Allowance Process Rather Than Through Plan Confirmation**

32.     In addition to the claim allowance issue raised by the GO Claim Objection

with respect to the validity of GO Bonds under the constitutional debt limit, the *priority* of GO

Bond claims is also a claim allowance issue rather than an issue that can be addressed by way of

plan treatment.  As Assured explained at the March 4 hearing, all GO Bond claims, to the extent

they are allowed or "deemed allowed," have the same priority. See Tr. of Hearing, March 4, 2020,

at 127:9-19.  Specifically, a "GO bond is a GO bond" regardless of the year it is issued, and as a

result "all have the same priority." Id. at 127:18, 13-14.  A proposed plan cannot "trea[t] one class

of GO bonds different from another class of GO [B]onds if they are all allowed claims." Id. at

127:25-128:1.  As a result, priority, like claim allowance more generally, should "be decided prior to confirmation."  Id. at 128:9-10.

33.    Specifically, Puerto Rico Local Bankruptcy Rule 3007-1(a), governing "Objections to Claims," provides that an objector to a claim must "make a recommendation to the court as to whether the claim should be disallowed or allowed in an amount or **with a priority other than as filed.**"  P.R. R. Bankr. P. 3007-1(a) (emphasis added).  Local Bankruptcy Rule 3007-1(b) in turn dictates that the procedures for objections to claims are governed by Rule 9014, governing contested matters.   P.R. R. Bankr. P. 3007-1(b).   Priority of a claim is, therefore, properly addressed through a contested matter as part of the claims allowance process.  See In re Quality Properties, LLC, Case No. 10–40132–JJR, 2011 WL 6161010, at *3 (Bankr. N.D. Ala 2011) ("determining the validity (including perfection) of liens arising under state law **and determining their priorities** are tasks frequently performed by bankruptcy courts in the course of the claims-allowance process . . . ") (emphasis added); In re McLemore, 426 B.R. 728, 739 (Bankr. S.D. Ohio 2010) ("The claim allowance process set forth in §§ 501–506 controls whether an entity holds a claim which may be paid by the bankruptcy estate and, if so, the proper amount of any such claim and the nature of the claim, **including whether it is entitled to priority** or secured status.") (emphasis added); In re Clarkeies Market, LLC, 322 B.R. 487, 502 (Bankr. D.N.H. 2005) (finding that a count in an adversary complaint that sought determination of the amount, validity and priority of a claim "is better suited to be determined in the claims allowance process . . . "); In re Berksteiner, Case Nos. No. 03–13203, 03–13645, 03–13765, 03–13242, 2004 WL 2201300, at *2 (Bankr. S.D.Ga. 2004) ("Claim allowance under 11 U.S.C. § 506 establishes the amount of the claim and the status, i.e. general unsecured, **unsecured priority** or secured.") (emphasis added); In re Thunderbolt Realty Trust, 190 B.R. 11, 16 (Bankr. D.Mass 1995) (noting that the determination of priority "pertain[s] to claim allowance . . ."); Matter of Pennsylvania Iron & Coal

-14-

Co., Inc., 40 B.R. 918, 921 (Bankr. S.D. Ohio 1984) ("Not scheduling the claim by the debtor as

a priority claim should not be deemed to constitute as a matter of law an objection per se to the

claim, and thus put the priority of the claim in 'dispute'. Such an issue can only be raised as a

contested matter pursuant to Rules 3007, 9014 and sections of Rule 7000 as made applicable.").

34.     Assured's proofs of claim expressly assert that GO Bond claims insured by

Assured "are entitled to a first-priority payment status under the constitution of the Commonwealth

. . . and related statutes and are entitled to payment before all other obligations payable from the

Commonwealth's revenues and other resources."  See Claim Nos. 27427 and 33081.  If FOMB

disagrees, then it must contest the asserted priority of Assured's GO Bond claims by filing a claim

objection seeking disallowance of Assured's asserted priority claims or by seeking allowance of

Assured's GO Bond claims "with a priority other than as filed" through a contested matter under

Rules 3007 and 9014.  As discussed above, due process as well as Section 502 and Rule 3007,

require notice and the opportunity for a hearing on claim objections, including claim objections on

the basis of priority.

**II      In Light Of The Distinction Between Claim Allowance And Plan Treatment, "Good
         Cause" Exists To Grant Relief From The Stay Order**

35.     In the Stay Order, this Court provided that "Parties may seek relief from

any stay imposed by this Order upon a showing of good cause."  See Stay Order ¶ 5.  In the

arguably analogous context of requests for relief from the automatic stay, courts have explained

that "generally speaking, 'cause' is said to exist when the harm that would result from a

continuation of the stay would outweigh any harm that might be suffered by the debtor or the

debtor's estate if the stay is lifted."  Peerless Ins. Co. v. Rivera, 208 B.R. 313, 315 (D.R.I. 1997)

(citing Marder v. Turner (In re Turner), 161 B.R. 1, 3 (Bankr. D. Me. 1993); see In re Montgomery,

285 B.R. 345, 346 (Bankr. D.R.I. 2002) (same).

-15-

36.     In applying this standard, courts find there is "cause" for lifting the stay "whenever the stay harms the creditor and lifting the stay will not unduly harm the debtor[.]"  In re Turner, 161 B.R. at 3.  More specifically, courts have considered factors such as (i) the harm to the party seeking relief from the stay if the stay is not lifted, (ii) the harm to the debtor if the stay is lifted, and (iii) the interests of creditors.  Peerless Ins., 208 B.R. at 315; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 95 (D.P.R. 2007) (noting "[t]he party moving for the automatic stay to be lifted need not prove a plurality of these factors" and "[c]ourts will generally rely '[o]n only a few factors to determine that sufficient cause exists to lift the [automatic] stay"). Assured submits that its right to an adjudication of the allowance of its claim constitutes "good cause" independently of any application of these factors, but in any event, each of the three factors identified above points to the existence of "cause" to grant relief from the Stay Order.

37.     First, the harm to Assured if stay relief is not granted is severe.  It would suffer deprivation of statutory and due process rights.  In addition, there is a risk that Assured's claims could be improperly discounted for risk of disallowance under the Amended Plan without Assured ever having been afforded the requisite opportunity to litigate the allowance of its claim as provided under the Bankruptcy Code.

38.     Second, if relief from the Stay Order is granted, FOMB and the Commonwealth will not suffer undue harm, because by objecting to the allowance of Assured's claims through the GO Claim Objection, they voluntarily triggered Assured's right to an adjudication as to the allowance of its claims.  If FOMB does not want to bear the burden of proceeding with such an adjudication, it can simply withdraw the GO Claim Objection or agree to allow Assured's claim without any rights reservations concerning allowance (although of course, in that circumstance, it will also not be able to purport to impose any "discount" on Assured's

-16-

allowed claims under the Amended Plan based on supposed disallowance risk resulting from the
GO Claim Objection).

39.     Third, the interests of both Assured as a creditor and of other creditors will
be served by a grant of relief from the Stay Order.  Assured will be permitted to exercise its
statutory and due process rights, and, through the Court's rulings on the allowance of Assured's
challenged GO Bond claims, other creditors will gain insight into the legal merits of the GO Claim
Objection.  In the case of other holders of challenged GO Bonds, this can help to inform their
views as to whether to settle the GO Claim Objection with respect to the allowance of their own
challenged bonds.

40.     Given that Assured in any event has a right to an adjudication of the
allowance or disallowance of its challenged GO Bond claims, it is clear that there is no benefit,
and only harm, in delaying that inevitable adjudication by staying the GO Claim Objection under
the Stay Order.  Accordingly, good cause exists to grant relief from the Stay Order.[5]

## III     **Alternatively, The Court Should Reconsider Its Inclusion Of The Claim Objections In The Stay Order**

41.     As an alternative to granting direct relief from the Stay Order, Assured
respectfully requests that the Court reconsider the inclusion of the GO Claim Objection as a stayed
matter under the Stay Order.  Such reconsideration is proper under Fed. R. Bankr. P. 9023, which
makes applicable Fed. R. Civ. P. 59.  Although Fed. R. Civ. P. 59(e) refers to judgments, its "legal
standards will be applied to motions for reconsideration of interlocutory orders."  Villanueva-

---

[5] In the event that the Court's reference to "good cause" was referring to Fed. R. Civ. P. 16(b)(4), which permits modification of a scheduling order "for good cause and with the judge's consent," Assured clearly meets that standard.  See Comite Fiestas de la Calle San Sebastian, Inc. v. Cruz, 314 F.R.D. 23, 25 (D.P.R. 2016). While this is not a situation in which deadlines cannot be met, Assured has already satisfied the other criterion for good cause under Rule 16(b)(4), namely lack of prejudice to the other party (which is analogous to the second factor in the above analysis).

<u>Mendez v. Nieves Vazquez</u>, 360 F. Supp. 2d 320, 323 (D.P.R. 2005), <u>aff'd</u>, 440 F.3d 11 (1st Cir. 2006).

42.     The First Circuit has held that reconsideration is appropriate where, <u>inter alia</u>, there are "manifest errors of law or fact . . . [or] manifest injustice." <u>Marie v. Allied Home Mortg. Corp.</u>, 402 F.3d 1, 7 n.2 (1st Cir. 2005); <u>In re Padilla Cruz</u>, 585 B.R. 255 (Bankr. D.P.R. 2018 (". . . Rule 59(e) was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment."). In view of the fundamental distinction between claim allowance and plan treatment identified above, inclusion of the GO Claim Objection in the Stay Order both constituted a "manifest error of law" and—if stay relief is not granted—will result in a "manifest injustice."

A.     **<u>The Court Erred In Not Distinguishing Between Claim Allowance And Plan Treatment</u>**

43.     It is well-settled that motions for reconsideration are warranted where the Court makes an error. <u>Marie</u>, 402 F.3d at 7 n.2 (noting that "manifest errors of law or fact" warrant the granting of a motion for reconsideration); <u>In re Padilla</u>, 585 B.R. at 260 (same); <u>Candelario v. Metropolitan Life Ins. Co.</u>, 861 F. Supp. 2d 23 (D.P.R. 2012) (". . . a Rule 59(e) motion is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.") (internal citation and quotes omitted).

44.     Here, Assured respectfully submits that the Court committed an error by staying the GO Claim Objection on the grounds that the GO Claim Objection may be "resolved if the Amended Plan is ultimately confirmed" (<u>see</u> Stay Order ¶ 3), when in fact, for the reasons set forth above, confirmation of a plan merely providing for the treatment of allowed claims does not erase Assured's right to litigate the allowance of its claim in response to the GO Claim Objection.

-18-

45.     In particular, the Court erred in failing to consider Assured's independent right to an adjudication of the allowance of its claim when it weighed the factors relevant to imposing a stay.  At the March 4 hearing, the Court relied on Villafañe-Colon v. B Open Enterprises, Inc., 932 F. Supp. 2d 274, 280 (D.P.R. 2013), for the elements relevant to imposition of a stay.  See Tr. of Hearing, March 4, 2020, at 215:10-12.  The Court identified the relevant elements as:  "the economical use of party and judicial resources, the hardship resulting from not staying a proceeding, and the potential prejudice to parties if the stay is granted."  Id. at 215:5-9 (citing Villafañe-Colon at 280).

46.     First, with respect to "the economical use of party and judicial resources," the Court stated that the proposed stay was "the most economical use of resources" based on the assumption that a "settlement of GO-PBA issues" was "embedded in" the Amended Plan.  Id. at 215:13-14, 216:1-2.  However, for the reasons stated above, the Amended Plan contains no viable settlement of the claim allowance issues arising from the GO Claim Objection, and such claim allowance issues cannot be settled through plan confirmation without Assured's consent.  See supra § I.  Moreover, given that Assured has a right to a distinct hearing and adjudication as to the allowance of its claim in any event, no judicial or party resources are conserved by putting off that inevitable hearing and adjudication.  See id.

47.     Second, with respect to "the hardship resulting from not staying a proceeding," the Court concluded that "the hardship resulting from continuing litigation is significant."  Id. at 216:5-6. However, this conclusion likewise rested on the assumption that the Amended Plan entailed the "settlement of certain of the GO-PBA issues."  Id. at 216:9-10.  Since the Amended Plan cannot, in fact, "settle" Assured's right to an adjudication of the allowance of its claim, the GO Claim Objection does not fall within the scope of the "GO-PBA issues" that can be settled under the plan.  The Court's rationale for imposing a stay of the GO Claim Objection

-19-

thus has no legal or factual basis.  In any event, the mere requirement to participate in litigation is not a burden justifying a stay.  In re ConAgra Foods, Inc., No. CV-11-05379-MMM, 2014 WL 12580052, at *8 (C.D. Cal. Dec. 29, 2014) ("merely being required to defend the suit does not constitute hardship"); Salinas v. City of San Jose, No. 5:09-cv-04410 EJD, 2012 WL 2906052, at *2 (N.D. Cal. July 13, 2012) ("The moving party must cite to something more than the intrinsic inconvenience arising from involvement in litigation").

48.      Third, the Court stated that "parties objecting to the stay have not demonstrated a countervailing risk of prejudice."  Tr. of Hearing, March 4, 2020, at 216:15-16. As explained above, Assured has demonstrated a countervailing prejudice in the form of the harm that would be done to its statutory and due process rights if it were deprived of the opportunity to litigate the GO Claim Objection and the allowance of its claim as contemplated under the Bankruptcy Code.  See, e.g., supra at ¶¶ 29, 34.  While the Court appears to believe that Assured and other parties "retain their rights to object to the Amended Plan of Adjustment," a confirmation hearing under Section 314 of PROMESA and Section 1129 of the Bankruptcy Code (as argued above) cannot function as a substitute for Assured's right to an adjudication of the allowance of its claims under Section 502 and Rule 3007.  See, e.g., supra at ¶¶ 29-30.

### B.      Manifest Injustice Warrants Reconsideration

49.      Finally, "manifest injustice" will result if the Court does not reconsider the Stay Order to permit Assured to litigate the GO Claim Objection.  The "manifest injustice" standard for reconsideration of a court's order is "concerned essentially with fairness in the administrative process and a denial of due process."  Jarvis v. Berryhill, Case No. TMD 15-2226, 2017 WL 467736, at *1 (D.Md. Feb. 3, 2017).  Here, for the reasons stated above, if Assured were deprived of its right to litigate allowance of its claims in accordance with Section 502 and Bankruptcy Rule 3007, it would be subject to an unfair claims administration process and a

resulting denial of due process. The need to avoid such "manifest injustice" warrants reconsideration. <u>Marie</u>, 402 F.3d at 7 n.2 (1st Cir. 2005).

## <u>CONCLUSION</u>

50.     For the foregoing reasons, the Court should grant this Motion and enter an order, substantially in the form attached hereto as "<u>Exhibit A</u>", granting relief from the Stay Order or, alternatively, reconsideration of the Stay Order, to permit the GO Claim Objection to go forward on the schedule originally established under the GO/PBA Order (or another reasonable schedule).

Dated:  March 16, 2020
        New York, New York

CASELLAS ALCOVER & BURGOS P.S.C.

By: /s/ *Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    USDC-PR No. 204,809
    Ricardo F. Casellas-Sánchez
    USDC-PR No. 203,114
    Diana Pérez-Seda
    USDC–PR No. 232,014
    P.O. Box 364924
    San Juan, PR 00936-4924
    Tel.: (787) 756-1400
    Fax: (787) 756-1401
    E-mail:  hburgos@cabprlaw.com
             rcasellas@cabprlaw.com
             dperez@cabprlaw.com


*Counsel for Assured Guaranty Corp. and Assured
Guaranty Municipal Corp.*

CADWALADER, WICKERSHAM & TAFT
LLP

By: /s/ *Howard R. Hawkins*
    Howard R. Hawkins, Jr.*
    Mark C. Ellenberg*
    William J. Natbony*
    Ellen M. Halstead*
    Thomas J. Curtin*
    Casey J. Servais*
    200 Liberty Street
    New York, New York 10281
    Tel.: (212) 504-6000
    Fax: (212) 504-6666
    Email:  howard.hawkins@cwt.com
            mark.ellenberg@cwt.com
            bill.natbony@cwt.com
            ellen.halstead@cwt.com
            thomas.curtin@cwt.com
            casey.servais@cwt.com

* Admitted pro hac vice

*Counsel for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.*

## <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, the 16th day of March, 2020.

By:  /s/ Howard R. Hawkins, Jr.
      Howard R. Hawkins, Jr.*
      * Admitted pro hac vice