**Hearing Date**: July 29, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: April 6, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------------ x
                                                      :
In re:                                                :
                                                      :
THE FINANCIAL OVERSIGHT AND                           :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                     :   Title III
                                                      :
        as representative of                          :   Case No. 17-BK-3283 (LTS)
                                                      :
THE COMMONWEALTH OF PUERTO RICO, et al.,              :   (Jointly Administered)
                                                      :
        Debtors.¹                                     :
------------------------------------------------------------------------ x
```

## NOTICE OF HEARING ON EIGHTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2019 THROUGH JANUARY 31, 2020

**PLEASE TAKE NOTICE** that a hearing on the annexed *Eighth Interim Fee Application*

*of Paul Hastings LLP, as Counsel to Official Committee of Unsecured Creditors, for Services*

*Rendered and Reimbursement of Expenses for Period from October 1, 2019 through January 31,*

*2020* (the "Application") filed by Paul Hastings LLP, pursuant to section 1103(a)(1) of the

Bankruptcy Code, made applicable to these cases by section 301 of the Puerto Rico Oversight,

Management and Economic Stability Act of 2016 or "PROMESA," will be held before the

Honorable Laura Taylor Swain, United States District Judge, at the United States District Court

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

for the District of Puerto Rico, in Room 3, 150 Carlos Chardón Street, Federal Building, Office 150, San Juan, Puerto Rico 00918-1767 on **July 29, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections") to the Application by any party other than the Fee Examiner shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court (a) by attorneys practicing in the District Court, including attorneys admitted *pro hac vice*, electronically in accordance with rule 5 of the Local Rules for the District of Puerto Rico, and (b) by all other parties in interest, by submitting a hard copy via mail to the Clerk's Office, United States District Court, Room 150 Federal Building, San Juan, PR 00918-1767 or by hand delivery to the Clerk's Office, United States District Court, 150 Carlos Chardon Avenue, Room 150, San Juan, PR 00918, to the extent applicable, and shall be served in accordance with the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3269] (the "Interim Compensation Order"), so as to be so filed and received by the Notice Parties (as defined in the Interim Compensation Order) no later than **April 6, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)** (the "Objection Deadline").

[*Remainder of page intentionally left blank.*]

-2-

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Interim

Compensation Order, if no Objections are timely filed, and if the Fee Examiner issues the Fee

Examiner Report (as defined in the Interim Compensation Order) recommending approval of the

Application in full or in part, the Court may grant the Application without a hearing.

Dated:  March 16, 2020           */s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. (Pro Hac Vice)
James R. Bliss, Esq. (Pro Hac Vice)
Nicholas A. Bassett, Esq. (Pro Hac Vice)
G. Alexander Bongartz, Esq. (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured
Creditors*

**Hearing Date**: July 29, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: April 6, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------ x
                                             :
In re:                                       :
                                             :
THE FINANCIAL OVERSIGHT AND                  :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,            :   Title III
                                             :
        as representative of                 :   Case No. 17-BK-3283 (LTS)
                                             :
THE COMMONWEALTH OF PUERTO RICO, et al.,     :   (Jointly Administered)
                                             :
        Debtors.¹                            :
------------------------------------------------------------------ x
```

## EIGHTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2019 THROUGH JANUARY 31, 2020

## SUMMARY COVER SHEET

| | |
|---|---|
| Name of applicant: | Paul Hastings LLP ("Paul Hastings") |
| Authorized to provide professional services to: | Official Committee of Unsecured Creditors (the "Committee")² |
| Date of retention: | Order entered August 10, 2017, effective as of June 26, 2017 [Docket No. 999] |
| Period for which compensation and reimbursement are sought: | October 1, 2019 through and including January 31, 2020 (the "Application Period") |

---

1   The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

2   The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

| | |
|---|---|
| Amount of interim compensation sought as actual, reasonable, and necessary: | $5,788,714.00 / $4,514,469.57[3] |
| Amount of interim expense reimbursement sought as actual, reasonable, and necessary: | $281,132.48 / $280,904.55[4] |
| Are your fee or expense totals different from the sum of previously-served monthly statements for the Application Period? | No. |
| Total compensation approved by interim order to date: | $43,086,437.86 |
| Total expenses approved by interim order to date: | $1,275,839.48 |
| Total allowed compensation paid to date: | $34,890,008.99 |
| Total allowed expenses paid to date: | $1,276,446.41 |
| Blended rate in this Application for all attorneys: | (a) $1,006 /hour; (b) $805 /hour[5] |
| Blended rate in this Application for all timekeepers: | (a) $931 /hour; (b) $745 /hour[5] |
| Compensation sought in this Application already paid pursuant to a monthly compensation order but not yet allowed: | $3,553,414.17 |
| Expenses sought in this Application already paid pursuant to a monthly compensation order but not yet allowed: | $236,170.07 |
| The total time expended for fee application preparation during the Application Period: | Approximately 64.9 hours |

---

[3]  While Paul Hastings seeks allowance of all of its fees incurred during the Application Period, the firm only seeks payment, at this time, of fees in the amount of $4,514,469.57 (to the extent such amount has not been paid before the hearing scheduled on this Application), which is 80% of $5,643,086.96 (*i.e.*, Paul Hastings' fees after taking into account a credit of $145,627.04 for fee reductions pursuant to the order approving Paul Hastings' Sixth Interim Fee Application).  By the time of the hearing on this Application, this amount should have long been paid by the Debtors pursuant to the Interim Compensation Order (as defined below), and Paul Hastings reserves its rights to seek relief from the Court to the extent any outstanding fees and expenses that are due and payable are not paid on the terms set forth in the Interim Compensation Order.

[4]  While Paul Hastings seeks allowance of all of its expenses incurred during the Application Period, the firm only seeks payment of expenses in the amount of 280,904.55, which amount reflects a credit of $227.93 for expense reductions pursuant to the order approving Paul Hastings' Sixth Interim Fee Application.

[5]  The calculation of the blended hourly rates reflected in (a) does <u>not</u> take into account Paul Hastings' agreement to reduce its fees by an amount equal to 20% of its total case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process.  The impact of the 20% end of the case write-off on the blended hourly rates cannot be calculated at this time.  However, for illustrative purposes only, we have reflected in (b) the blended hourly rate after accounting for the 20% reduction for all attorneys and for all timekeepers.

| The total compensation requested for fee application preparation during the Application Period: | Approximately $62,567.50 |
|---|---|
| Number of professionals included in this Application: | 30 |
| If applicable, number of professionals in this Application not included in a staffing plan approved by the client: | 2 Paraprofessionals |
| If applicable, difference between fees budgeted and compensation sought for the Application Period: | Not Applicable. |
| Number of professionals billing fewer than 15 hours to the case during the Application Period: | 8 |
| Are any timekeeper's hourly rates higher than those approved or disclosed at retention?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed in the retention application: | There has been no change in rates compared to the immediately prior fee period (June 1, 2019 through September 30, 2019).[6] |

---

[6]   When calculated at the rates in effect during the initial fee period (June 26, 2017 through September 30, 2017), total fees for the Application Period would have been $5,125,989.45 (compared to $5,788,614.40 under the current rates).  The rate adjustments reflect not only Paul Hastings' across-the-board increases in its rate scale, but also step increases due to advancing seniority.  While $662,624.75 of Paul Hastings' fees for the Application Period are attributable to periodic changes in rates, $156,103.25 of this amount is attributable to step increases due to advancing seniority.  (Under the U.S. Trustee's Appendix B Guidelines, rate increases "exclude step increases historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion.")  Thus, only $506,521.50 of the fees in the Application Period are attributable to changes in the firm's rate scale since the date of retention, which is approximately 9.88% of the fees for the Application Period (if calculated at the rates in effect during the first fee period).

## MONTHLY FEE REQUESTS TO DATE

| Date Submitted | Monthly Period Covered | Requested Fees (80%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 20% Fee Holdback |
|---|---|---|---|---|---|---|
| **First Interim Fee Period (June 26, 2017 through September 30, 2017)** | | | | | | |
| 8/25/17 | 6/26/17 - 7/31/17 | $2,612,026.60 | $128,519.42 | $2,612,026.20 | $128,519.42 | $653,006.65 |
| 10/20/17 | 8/1/17- 8/31/17 | $2,742,786.60 | ($35,965.44) | $2,742,786.60 | ($35,965.44) | $685,696.65 |
| 12/5/17 | 9/1/17 - 9/30/17 | $2,121,569.60 | $40,716.24 | $2,121,569.60 | $40,716.24 | $530,392.40 |
| **Total** | | **$7,476,382.80** | **$133,270.22** | **$7,476,382.40** | **$133,270.22** | **$1,869,095.70** |
| | | | | | | |
| **Second Interim Fee Period (October 1, 2017 through January 31, 2018)** | | | | | | |
| 12/23/17 | 10/1/17 - 10/31/17 | $915,475.60 | $14,567.93 | $915,475.60 | $14,567.90 | $228,868.90 |
| 1/5/18 | 11/1/17 - 11/30/17 | $1,445,414.80 | $27,705.47 | $1,445,414.80 | $27,705.47 | $361,353.70 |
| 1/12/18 | 12/1/17 - 12/31/17 | $1,467,883.60 | $22,557.50 | $1,467,883.60 | $22,557.50 | $366,970.90 |
| 3/16/18 | 1/1/18 - 1/31/18 | $1,824,040.20[7] | $30,631.53[8] | $1,822,932.20 | $17,909.03 | $455,733.05 |
| **Total** | | **$5,652,814.20** | **$95,462.43** | **$5,651,706.20** | **$82,739.90** | **$1,412,926.55** |
| | | | | | | |
| **Third Interim Fee Period (February 1, 2018 through May 31, 2018)** | | | | | | |
| 4/18/18 | 2/1/18 - 2/28/18 | $2,015,455.20 | $87,789.71 | $2,015,455.20 | $87,789.71 | $503,863.80 |
| 5/9/18 | 3/1/18 - 3/31/18 | $2,416,111.40 | $53,500.42 | $2,416,111.40 | $53,500.42 | $604,027.85 |
| 6/15/18 | 4/1/18 - 4/30/18 | $1,357,280.60 | $408,763.80 | $1,357,280.60 | $408,763.80 | $339,320.15 |
| 7/13/18 | 5/1/18 - 5/31/18 | $1,152,043.00 | $36,939.73 | $1,152,043.00 | $36,939.73 | $288,010.75 |
| **Total** | | **$6,940,890.20** | **$586,993.66** | **$6,940,890.20** | **$586,993.66** | **$1,735,222.55** |

---

[7] This amount reflects a credit of $13,507.00 for fee reductions pursuant to the order approving Paul Hastings' First Interim Fee Application.

[8] This amount reflects a credit of $21,926.16 for expense reductions pursuant to the order approving Paul Hastings' First Interim Fee Application.

| Date Submitted | Monthly Period Covered | Requested Fees (80%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 20% Fee Holdback |
|---|---|---|---|---|---|---|
| | | | | | | |
| **Fourth Interim Fee Period (June 1, 2018 through September 30, 2018)** | | | | | | |
| 9/6/18 | 6/1/18 - 6/30/18 | $983,056.20 | $45,319.10 | $983,056.20 | $45,319.10 | $245,764.05 |
| 10/8/18 | 7/1/18 - 7/31/18 | $1,061,831.60 | $77,376.40 | $1,061,831.60 | $77,376.40 | $265,457.90 |
| 11/2/18 | 8/1/18 - 8/31/18 | $1,288,866.00 | $39,833.17 | $1,288,866.00 | $39,833.17 | $322,216.50 |
| 11/15/18 | 9/1/18 - 9/30/18 | $1,302,462.40 | $39,196.98 | $1,302,462.40 | $39,196.98 | $325,615.60 |
| **Total** | | **$4,636,216.20** | **$201,725.65** | **$4,636,216.20** | **$201,725.65** | **$1,159,054.05** |
| | | | | | | |
| **Fifth Interim Fee Period (October 1, 2018 through January 31, 2019)** | | | | | | |
| 12/19/18 | 10/1/18 – 10/31/18 | $968,238.40 | $17,300.41 | $968,238.40 | $17,300.41 | $242,059.60 |
| 01/07/19 | 11/1/18 – 11/30/18 | $695,795.40 | $9,071.96 | $695,795.40 | $9,071.96 | $173,948.85 |
| 02/20/19 | 12/1/18 – 12/31/18 | $932,751.60 | $24,110.50 | $932,751.60 | $24,110.50 | $233,187.90 |
| 03/15/10 | 1/1/19 – 1/31/19 | $1,040,883.79[9] | $38,921.42[10] | $1,040,883.79 | $38,921.42 | $260,220.95 |
| **Total** | | **$3,637,669.19** | **$89,404.29** | **$3,637,669.19** | **$89,404.29** | **$909,417.30** |
| | | | | | | |
| **Sixth Interim Fee Period (February 1, 2019 through May 31, 2019)** | | | | | | |
| 06/13/19 | 2/1/19 – 2/28/19 | $1,098,711.60 | $30,746.31 | $1,098,711.60 | $30,746.31 | $274,677.90 |
| 06/13/19 | 3/1/19 – 3/31/19 | $1,453,006.40 | 25,745.44 | $1,453,006.40 | $25,745.44 | $363,251.60 |
| 07/03/19 | 4/1/19 – 4/30/19 | $1,852,132.00 | $64,731.53 | $1,852,132.00 | $61,317.34 | $463,033.00 |
| 07/15/19 | 5/1/19 – 5/31/19 | $2,143,294.80 | $61,317.34 | $2,143,294.80 | $61,317.34 | $535,823.70 |
| **Total** | | **$6,547,144.80** | **$182,540.62** | **$6,547,144.80** | **$179,126.43** | **$1,636,786.20** |

---

[9]   This amount reflects a credit of $158,129.01 for fee reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Applications.

[10]   This amount reflects a credit of $6,033.82 for expense reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Applications.

| Date Submitted | Monthly Period Covered | Requested Fees (80%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 20% Fee Holdback |
|---|---|---|---|---|---|---|
| | | | | | | |
| **Seventh Interim Fee Period (June 1, 2019 through September 30, 2019)** | | | | | | |
| 08/21/19 | 6/1/19 – 6/30/19 | $1,841,416.66[11] | $300,689.64 | $1,841,416.66 | $300,689.64 | $478,122.60 |
| 09/27/19 | 7/1/19 – 7/31/19 | $1,955,942.80 | $380,030.21 | $1,955,942.80 | $380,030.21 | $488,985.70 |
| 10/31/19 | 8/1/19 – 8/31/19 | $1,051,966.00 | $127,240.87 | $1,051,966.00 | $127,240.87 | $262,991.50 |
| 11/14/19 | 9/1/19 – 9/30/19 | $1,052,167.20 | $92,968.55[12] | $1,052,167.20 | $92,968.55 | $263,041.80 |
| **Total** | | **$5,901,492.71** | **$900,929.27** | **$5,901,492.66** | **$$900,929.27** | **$1,493,141.60** |
| | | | | | | |
| **Eighth Interim Fee Period (October 1, 2019 through January 31, 2020)** | | | | | | |
| | 10/1/19 – 10/31/19 | $1,911,593.40 | $113,178.50 | $1,911,593.40 | $113,178.50 | $477,898.35 |
| | 11/1/19 – 11/30/19 | $830,350.40 | $68,843.54 | $830,350.40 | $68,843.54 | $207,587.60 |
| | 12/1/19 – 12/31/19 | $811,470.37[13] | $54,148.03[14] | $811,470.37 | $54,148.03 | $202,867.59 |
| | 1/1/20 – 1/31/20 | $961,055.40[15] | $44,734.48 | $0.00 | $0.00 | $240,263.85 |
| **Total** | | **$4,514,469.57** | **$280,904.55** | **$3,553,414.17** | **$236,170.07** | **$1,128,617.39** |

---

[11]   This amount reflects a credit of $88,842.17 for fee reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Applications.

[12]   This amount reflects a credit of $606.96 for expense reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Applications.

[13]   This amount reflects a credit of $145,627.04 for fee reductions pursuant to the order approving Paul Hastings' Sixth Interim Fee Applications

[14]   This amount reflects a credit of $227.93 for expense reductions pursuant to the order approving Paul Hastings' Sixth Interim Fee Applications.

[15]   Due to a scrivener's error, the total for the PREPA fee statement (Matter ID 00006) for January 2020 was overstated by $0.50, resulting in an overbilling of $0.40. This error has been corrected in this table, and the amount will be credited on the next fee statement.

**PRIOR INTERIM FEE APPLICATIONS**

| Date Filed [Docket No.] | Application Period Covered | Requested Fees | Requested Expenses | Order [Docket No.] | Fees Allowed and Paid | Expenses Allowed and Paid |
|---|---|---|---|---|---|---|
| 12/15/17 Docket No. 2040 | 6/26/17 - 9/30/17 | $9,345,478.50 | $133,270.22 | Docket No. 2685 | Allowed: $9,264,712.49 Paid: $7,476,382.40 Authorized to be paid: $7,465,577.20[16] | Allowed: $111,344.06 Paid: $133,270.22 Authorized to be paid: $111,344.06[17] |
| 3/19/18 Docket No. 2735 | 10/1/17 – 1/31/18 | $7,066,017.75 | $95,462.43 | Docket No. 3279 | Allowed: $6,960,689.25 Paid: $5,651,706.20 Authorized to be paid: $5,651,706.20 | Allowed: $104,666.09[18] Paid: $82,739.90 Authorized to be paid: $82,739.93 |
| 7/16/18 Docket No. 3568 | 2/1/18 – 5/31/18 | $8,676,112.75 | $586,993.66 | Docket No. 5654 | Allowed: $8,576,523.01 Paid: $6,940,890.20 Authorized to be paid: $6,861,218.41[19] | Allowed: $583,256.46 Paid: $586,993.66 Authorized to be paid: $583,256.46[20] |
| 11/16/18 Docket No. 4325 | 6/1/18 – 9/30/18 | $5,795,270.25 | $201,725.65 | Docket No. 5654 | Allowed: $5,736,730.98 Paid: $4,636,216.20 Authorized to be paid: $4,589,384.78[21] | Allowed: $199,429.03 Paid: $201,725.65 Authorized to be paid: $199,429.03[22] |

---

[16]   The difference of $13,507.00 was credited against the amounts payable under the January 2018 fee statement.

[17]   The difference of $21,926.16 was credited against the amounts payable under the January 2018 fee statement.

[18]   Prior to application of a $21,926.16 credit for expense reductions pursuant to order approving Paul Hastings' First Interim Fee Application.

[19]   The difference of $99,589.74 was credited against the amounts payable under the January 2019 fee statement.

[20]   The difference of $3,737.20 was credited against the amounts payable under the January 2019 fee statement.

[21]   The difference of $58,539.27 was credited against the amounts payable under the January 2019 fee statement.

[22]   The difference of $2,296.62 was credited against the amounts payable under the January 2019 fee statement.

| Date Filed [Docket No.] | Application Period Covered | Requested Fees | Requested Expenses | Order [Docket No.] | Fees Allowed and Paid | Expenses Allowed and Paid |
|---|---|---|---|---|---|---|
| 4/18/2019 Docket No. 5822 | 10/1/18 – 1/31/19 | $4,705,215.50 | $95,438.11 | Docket No. 8189 | Allowed: $4,509,478.17 Paid: $3,637,669.19 Authorized to be paid: $3,566,595.46[23] | Allowed: $94,831.15 Paid: $89,404.29 Authorized to be paid: $94,831.15[24] |
| 7/15/19 Docket No. 8004 | 2/1/19 – 5/31/19 | $8,183,931.00 | $182,540.62 | Docket No. 9687 | Allowed: $8,038,303.96 Paid: $6,547,144.80 Authorized to be paid: $6,430,643.17[25] | Allowed: $182,312.69 Paid: $182,312.69 Authorized to be paid: $182,084.76[26] |
| 11/15/19 Docket No. 9219 | 6/1/19 – 9/30/19 | $7,465,708.00 | $901,536.23 | Not applicable | Allowed: TBD | Allowed: TBD |

---

[23]   The difference of $88,842.17 was credited against the amounts payable under the June 2019 fee statement.

[24]   The difference of $606.96 was credited against the amounts payable under the September 2019 fee statement.

[25]   The difference of $145,627.04 was credited against the amounts payable under the December 2019 fee statement.

[26]   The difference of $227.93 was credited against the amounts payable under the December 2019 fee statement.

**Hearing Date**: July 29, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: April 6, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------- x
                                                :
In re:                                          :
                                                :
THE FINANCIAL OVERSIGHT AND                     :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,               :  Title III
                                                :
        as representative of                    :  Case No. 17-BK-3283 (LTS)
                                                :
THE COMMONWEALTH OF PUERTO RICO, et al.,        :  (Jointly Administered)
                                                :
        Debtors.¹                               :
------------------------------------------------------------------- x
```

## EIGHTH INTERIM APPLICATION OF PAUL HASTINGS LLP, COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2019 THROUGH JANUARY 31, 2020

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND .................................................................................................... 11

COMPENSATION AND REIMBURSEMENT REQUEST ...................................... 16

SUMMARY OF SERVICES ................................................................................... 20

    I.     Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico
        (Matter ID 00002) ............................................................................. 21

    II.    Communications with Creditors (other than Committee Members) / Website
        (Matter ID 00004) ............................................................................. 28

    III.   PREPA (Matter ID 00006) ................................................................. 29

    IV.   HTA (Matter ID 00007) ...................................................................... 37

    V.    ERS (Matter ID 00008)........................................................................ 37

    VI.   Other Adversary Proceedings (Matter ID 00009)............................... 40

    VII.  Mediation (Matter ID 00010)............................................................. 41

    VIII. GO Bond Debt Issues (Matter ID 00011) ............................................ 42

    IX.   Creditors Committee Meetings (Matter ID 00012) ............................. 42

    X.    Constitutional Issues (Matter ID 00014)............................................. 43

ATTENDANCE AT HEARINGS ........................................................................... 44

REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND
COMMITTEE.......................................................................................................... 45

ACTUAL AND NECESSARY DISBURSEMENTS ................................................ 47

REQUESTED COMPENSATION SHOULD BE ALLOWED.................................. 48

CONCLUSION....................................................................................................... 51

## SUPPORTING DECLARATION, EXHIBITS, AND SCHEDULES

SUPPORTING DECLARATION OF LUC A. DESPINS

| | |
|---|---|
| EXHIBIT A | CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES |
| EXHIBIT B | SUMMARY OF TIMEKEEPERS INCLUDED IN THIS APPLICATION |
| EXHIBIT C | BUDGETS AND STAFFING PLANS FOR APPLICATION PERIOD |
| EXHIBIT C-1 | BUDGETS |
| EXHIBIT C-2 | STAFFING PLANS |
| EXHIBIT D | SUMMARY OF COMPENSATION REQUESTED BY PROJECT CATEGORY |
| EXHIBIT D-1 | SUMMARY OF COMPENSATION REQUESTED BY PROJECT CATEGORY AS COMPARED TO BUDGET |
| | FURTHER BREAKDOWN OF COMPENSATION REQUESTED BY PROJECT CATEGORY AND BY MATTER |
| EXHIBIT D-2 | SUMMARY OF EXPENSE REIMBURSEMENT REQUESTED BY CATEGORY |
| EXHIBIT E | BREAKDOWN OF COMPENSATION AND EXPENSE REIMBURSEMENT REQUESTED BY DEBTOR AND BY WHETHER SERVICES WERE RENDERED IN PUERTO RICO OR OUTSIDE PUERTO RICO |
| SCHEDULE 1 | LIST OF PROFESSIONALS BY MATTER |
| SCHEDULE 2 | MONTHLY STATEMENTS COVERED IN APPLICATION |
| SCHEDULE 3 | PROPOSED ORDER |

To the Honorable United States District Judge Laura Taylor Swain:

Paul Hastings LLP ("Paul Hastings"), counsel to the Official Committee of Unsecured Creditors (the "Committee"),[1] for its eighth application (the "Application"), pursuant to sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA"),[2] section 503(b) of Title 11, United States Code (the "Bankruptcy Code") as made applicable to these cases by section 301(a) of PROMESA, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or "Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), for the interim allowance of compensation for professional services performed by Paul Hastings for the period from October 1, 2019 through and including January 31, 2020 (the "Application Period"), and for reimbursement of its actual and necessary expenses incurred during the Application Period, respectfully represents:

## PRELIMINARY STATEMENT

1.     During the Application Period, Paul Hastings continued to handle numerous matters that were of critical importance to the interests of the Debtors and their creditors.  As with the prior fee period, Paul Hastings' primary focus during the Application Period (both in terms of time spent and fees incurred) was its representation of the Committee in connection with the Committee's response to the motion of the Financial Oversight and Management Board (the "Oversight Board") seeking approval of PREPA's restructuring support agreement (the "PREPA RSA Motion"), which contemplates, among other things, PREPA bondholders

---

[1]   Prior to August 25, 2017, the Committee was the official committee of unsecured creditors for the Commonwealth's Title III case only.  On August 25, 2017, the U.S. Trustee expanded the Committee's role to also include the Title III cases of HTA, ERS, and PREPA.

[2]   References to PROMESA are references to 48 U.S.C. §§ 2101 *et seq.*

receiving in excess of $20 billion over the next four decades. As part of Paul Hastings' efforts, and commensurate with the significance of the PREPA RSA for PREPA's Title III case, Paul Hastings continued to research and analyze complex legal and factual issues, take discovery (both document productions and depositions of key witnesses), and litigate pretrial disputes.

2.  As discussed in Paul Hastings' fee application for the prior fee period and in more detail below, the Committee believes that the PREPA RSA suffers from serious flaws, including, among other things, that (a) it would pave the way for holders of non-recourse bond claims to receive eventual payments of more than $20 billion (in nominal dollars) over the course of the next 47 years (and possibly longer), even though such bonds were secured by only $8.8 million in collateral on PREPA's petition date and (b) PREPA bondholders would receive allowed administrative expense claims of hundreds of millions of dollars of post-petition interest, even though such bondholders were undersecured on PREPA's petition date. Indeed, on October 30, 2019, the Paul Hastings filed the Committee's 135-page opposition to the PREPA RSA Motion (the "PREPA RSA Objection"), which comprehensively sets forth the Committee's numerous objections to the PREPA RSA Motion, which is currently scheduled to be heard on June 17, 2020. Paul Hastings efforts continued after the filing of the PREPA RSA Objection, as Paul Hastings attorneys prepared exhibits and other items for the hearing on the PREPA RSA Motion, reviewed documents related to the proposed transactions, and analyzed numerous related legal issues.[3]

---

[3]   At this time, Paul Hastings is not seeking allowance of $99,241.00 in fees and $52,007.21 in expenses incurred during the Application Period in connection with the preparation of the expert report (the "LEI Report") prepared London Economics International, LLC ("LEI"). Paul Hastings believes that it was justified in retaining the services of an expert to provide an analysis on issues germane to the PREPA RSA Motion. However, in light of the fact that the Court referred this matter to the Fee Examiner and that the Fee Examiner has not yet reached a conclusion with respect to the fees and expenses incurred in connection with the LEI Report, Paul Hastings has **not** sought payment, and is **not** seeking allowance at this time, of the fees and costs

3.       In addition, during the Application Period, Paul Hastings focused its attention on the Oversight Board's proposed plan of adjustment [Docket No. 8765] (the "Initial Plan") and related disclosure statement [Docket No. 8766] (the "Initial Disclosure Statement"), both of which were filed on September 27, 2019.  The Initial Plan raised a number of important issues for the Committee and its constituents.  Perhaps most seriously, the Initial Plan would have provided general unsecured creditors with an estimated a recovery of "up to 1.8%."[4]  The dismal recoveries for general unsecured creditors under the Initial Plan stood in sharp contrast to the substantial recoveries contemplated for GO and PBA bondholders.  For example, holders of pre-2012 PBA and GO bonds would receive a base recovery of 64.1% on their claims plus additional distributions that could increase their recoveries up to a cap of 89.4%.[5]  Following the filing of the Initial Plan, Paul Hastings analyzed various issues in connection with a potential challenge to confirmation of the Initial Plan and participated in mediation of scheduling issues pursuant to the Interim Stay Order (defined below), although the Committee was excluded from negotiations that led to (a) the plan support agreement between the Oversight Board and certain GO and PBA bondholders, dated February 9, 2020 (the "PSA"), and (b) the filing of an amended plan of adjustment (the "Amended Plan") and related disclosure statement on February 28, 2020.

4.       In addition to dealing with the legal issues related to the treatment of unsecured creditors under the Initial Plan, Paul Hastings devoted significant time during the Application Period to advancing the Committee's challenges to approximately $10 billion in GO and PBA

---

incurred during the Application Period in connection with the LEI Report.  Paul Hastings believes that these fees and expenses were reasonable and reserves the right to seek the allowance thereof at a later time.

[4]       Initial Disclosure Statement at 13.

[5]       *Id.* at 12.

bond claims against the Commonwealth.[6]  By way of background, in June 2019 the Oversight
Board filed a motion seeking to stay all litigation related to the Committees' challenges to the
validity and secured status of certain GO and PBA bonds.[7]  In fact, the Oversight Board
proposed to (i) stay the entirety of such litigation pending confirmation of the Initial Plan, (ii)
resolve the Committee's objections to certain 2011 GO bonds and PBA bonds held by plan-
supporting creditors pursuant to the Initial Plan (on favorable terms to such bondholders), and
(iii) litigate the objections to 2012-2014 GO bonds after confirmation.  On July 24, 2019, the
Court granted an order (the "Interim Stay Order") temporarily staying certain bond-related
litigation and requiring mandatory mediation of issues related to the sequencing of such litigation
and other issues related to confirmation of the Initial Plan.

　　　　5.　　　　In the ensuing months, Paul Hastings participated in the mediation of the
sequencing of such litigation and the related scheduling proposals.  Certain of these proposals
were reflected in the Mediation Team's November 27, 2019 interim report [Docket No. 9365]
(the "Interim Report"), which, among other things, recommended briefing and hearing schedules
for:

　　　　　　a.　　motions to dismiss the pending challenges to the claims and secured
　　　　　　status asserted by holders and/or insurers of certain bonds and
　　　　　　obligations issued or guaranteed by the Commonwealth (collectively,
　　　　　　the "GO Bonds" and such challenges, collectively, the "GO Claim
　　　　　　Challenges");

　　　　　　b.　　motions to dismiss newly filed adversary proceedings (the "Revenue
　　　　　　Bond Adversary Proceedings") challenging the claims and secured
　　　　　　status asserted by holders and/or insurers of certain revenue bonds (the
　　　　　　"Revenue Bonds") issued by HTA, the Puerto Rico Infrastructure
　　　　　　Financing Authority ("PRIFA"), and the Puerto Rico Convention
　　　　　　Center District Authority ("CCDA"); and

---

[6]　　That litigation was recently stayed by order of the Court on March 10, 2020.

[7]　　The Oversight Board is co-objector and/or co-plaintiff on some of these challenges.

      c.   motions for relief from the automatic stay to be filed by holders and/or
insurers of Revenue Bonds (such motion practice, together with the
motion to dismiss practice in the Revenue Bond Adversary
Proceedings, the "Revenue Bond Litigation").

While the Committee did not object to such briefing and hearing schedules, Paul Hastings

prepared and filed a response to express the Committee's concern that certain other gating issues,

including the purported GO priority and the pending Rule 12(c) motions in the PBA "lease"

litigation, should also be judicially resolved prior to a hearing on a disclosure statement.  The

Court entered the interim scheduling orders for the GO Claim Challenges [Docket No. 9619] (the

"Interim Case Management Order") and Revenue Bond Litigation [Docket No. 9620] (the

"Interim Revenue Bonds Order") on December 19, 2019.

      6.     In accordance with these scheduling orders, Paul Hastings prepared a number of

pleadings, including the Committee's objection to certain additional GO Bond claims, the

Committee's limited joinders in the Oversight Board's oppositions to motions for relief from

stay filed by certain holders and/or insurers of Revenue Bonds, and the Committee's motions to

intervene in the Revenue Bond Adversary Proceedings.  In addition, in one of the Revenue Bond

Adversary Proceedings, the Committee was appointed co-plaintiff with the Oversight Board (as

to certain counts), and, accordingly, Paul Hastings worked closely with counsel to the Oversight

Board in finalizing the related complaint, which was filed on January 16, 2020.

      7.     Furthermore, during the Application Period, Paul Hastings prepared the

Committee's objection to the purported priority of GO Bond claims, in which the Committee

objected to the priority of over $18 billion of GO Bonds on the basis that any asserted priority

under Puerto Rico's Constitution is preempted by Title III of PROMESA—a position that the

Oversight Board has consistently and repeatedly taken in these Title III cases, but which it

abandoned in the Initial Plan and the Amended Plan.  That objection was filed shortly after the end of the Application Period on February 3, 2020.

8.      Moreover, Paul Hastings represented the Committee in connection with the Committee's and other parties' challenges to ERS bond claims (the "ERS Bond Challenges"), including seeking (and obtaining) entry of an order to allow such challenges to be litigated on a consensual schedule.  In accordance with that schedule, Paul Hastings also prepared and filed additional objections to ERS bond claims.

9.      All the while, Paul Hastings has continued to advise the Committee on all issues bearing on the rights of unsecured creditors in these Title III cases and taken proactive steps to protect their rights, including by:

>    a.    advocating for an appropriate alternative dispute resolution ("ADR") process for the allowance of claims, and filing responses to the Oversight Board's renewed motion for ADR procedures and motion for administrative claims reconciliation procedures in order to suggest improvements to the Oversight Board's proposals;
>
>    b.    analyzing the nature and extent of the unsecured claims pool, as well as reviewing omnibus claim objections;
>
>    c.    managing, with the assistance of Prime Clerk, the notice of participation process in connection with the ERS Bond Objection and handling other matters related thereto;
>
>    d.    continuing to research a variety of issues related to confirmation of a Commonwealth plan of adjustment;
>
>    e.    maintaining the Committee's website as well as distributing informational emails to unsecured creditors; and
>
>    f.    monitoring pleadings filed and orders entered in the Title III cases and related adversary proceedings (including, where appropriate, filing objections).

10.      Paul Hastings has continued to perform these services in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. For example, the work performed by Paul Hastings was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task.  Moreover, whenever possible, Paul Hastings sought to minimize the costs of Paul Hastings' services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments and by delegating, to the extent practicable, questions of Puerto Rico law to local counsel.  In fact, a number of matters, such as the estimation of unsecured claims against the Commonwealth, were delegated primarily to local counsel to the Committee.

11.      In addition, a small core group of Paul Hastings attorneys was utilized for the vast majority of the work in these Title III cases to minimize the costs of intra-Paul Hastings communication and education about the cases.  Notably, as a general matter, no more than two Paul Hastings attorneys (and often only one attorney) attended the various hearings held during the Application Period, thereby minimizing not only the time billed on these hearings but also the cost of travel and lodging.  This is to be contrasted with other firms which have several partners attending such hearings.

12.      Moreover, to the extent appropriate, Paul Hastings sought to work closely with counsel to the Oversight Board, counsel to the Oversight Board's Special Claims Committee (the "Special Claims Committee"), counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and counsel for the official committee of retirees (the "Retiree Committee") in order to eliminate unnecessary duplication and allocate tasks in an efficient manner.  For example, with limited exceptions (such as the stay relief motions filed by holders

and/or insurers of Revenue Bonds, to which motions the Committee responded by filing limited

joinders in support of the Oversight Board's oppositions), the Committee did not become

involved in addressing stay relief requests and, instead, deferred these matters to representatives

of the Debtors.  In addition, to the extent appropriate, the Committee joined in the relief sought

by other parties (as opposed to incurring the cost of preparing its own standalone motions) or

concluded that no pleading was necessary at all.  The Committee has also continued to be very

judicious in determining in which adversary proceedings to intervene, despite the First Circuit's

ruling affirming the Committee's unconditional right to intervene in adversary proceedings.[8]

13.   Finally, we note that the blended attorney hourly rate ($805, after 20% reduction)

for the Application Period is not comparable to the average hourly rate of other professionals in

these Title III cases.  Importantly, our blended attorney hourly rate does not reflect the numerous

cost-saving measures that we put in place, including deferring a variety of matters to the

Committee's local counsel, Casillas, Santiago & Torres LLC ("CST"), and the Committee's

special litigation counsel, Genovese, Joblove & Battista, P.A. ("GJB"), which have significantly

lower rates than Paul Hastings.  For example, Paul Hastings determined (with Committee

approval) that all garden-variety avoidance actions should be handled by CST.  Moreover,

certain other adversary proceedings (such as the complaint against certain PREPA fuel suppliers)

are being handled by GJB, even where Paul Hastings does not have a conflict.  In addition, as

detailed in CST's fee statements, CST provided substantial assistance with the claims review and

---

[8]   Finally, we note that Paul Hastings has agreed to reduce its total fees by an amount equal to 20% of the firm's
case fees (with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in
its sole discretion) in connection with the final fee application process).  For the avoidance of doubt, at this
time, Paul Hastings seeks allowance of $5,788,714.00. (*i.e.*, 100% of fees for services rendered during the
Application Period), but payment of fees in the amount of $4,514,469.57 (to the extent such amount has not
been paid before the hearing scheduled on this Application), which is 80% of $5,788,714.00 (*i.e.*, Paul
Hastings' fees after taking into account a credit of $145,627.04 for fee reductions pursuant to the order
approving Paul Hastings' Sixth Interim Fee Application).

estimation process.  The type of work delegated to CST and GJB would generally have been

handled by Paul Hastings lawyers at lower rates, which would have materially brought down the

Paul Hastings average.  Furthermore, Paul Hastings submits that concentrating work in small

teams (that naturally involve more senior attorneys at higher rates) is more cost-efficient than

spreading work out across large teams with numerous junior attorneys (which would have the

effect of artificially lowering the blended hourly rate).  By comparison, on average, the Paul

Hastings core teams are half the size of other firms' core team.

14.      In sum, Paul Hastings respectfully submits that the services for which it seeks

compensation in this Application were necessary for and beneficial to the Committee, the

Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value

for unsecured creditors during the pendency of these Title III cases.  The results obtained to date

have benefited not only the Committee but also the Debtors and their creditors.  Accordingly, in

light of the nature and complexity of these Title III cases, Paul Hastings' charges for professional

services performed and expenses incurred are reasonable under applicable standards.  For all

these reasons, Paul Hastings respectfully requests that the Court grant the Application and allow

interim compensation for professional services performed and reimbursement for expenses as

requested.

15.      This Application is consistent with the Interim Compensation Order (as defined

below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for*

*Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11*

*U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines").  To the

extent necessary, Paul Hastings requests a waiver for cause shown of any requirements not met

by this Application.[9]

16.    In accordance with the U.S. Trustee Guidelines, at the end of this Application are

the following Exhibits and Schedules:

- Exhibit A contains disclosures regarding "customary and comparable compensation."

- Exhibit B contains a summary of Paul Hastings' timekeepers included in this Application.

- Exhibit C-1 contains the budgets for Paul Hastings' services during the Application Period.

- Exhibit C-2 contains the staffing plans for Paul Hastings' services during the Application Period.

- Exhibit D-1 contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the Application Period, and (b) a further breakdown of the compensation requested by project category and matter number.

- Exhibit D-2 contains a summary of the expense reimbursements requested by category.  An itemized schedule of all such expenses is included in Paul Hastings' monthly statements.

- Exhibit E contains a breakdown of compensation and expense reimbursement requested by Debtor and by whether the services were rendered in Puerto Rico or outside Puerto Rico.

- Schedule 1 contains a list of the professionals providing services during the Application Period by matter.

- Schedule 2 includes the monthly fee statements covered in this Application.

- Schedule 3 includes the proposed order approving this Application.

---

[9]    The Committee and Paul Hastings reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

## BACKGROUND

17.     On May 3, 2017, the Oversight Board commenced a Title III case for the

Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304(a)

of PROMESA (the "Commonwealth Title III Case").  Thereafter, the Oversight Board

commenced a Title III case for each of COFINA, the Employees Retirement System of the

Government of the Commonwealth of Puerto Rico (the "ERS Title III Case"), the Puerto Rico

Highways and Transportation Authority (the "HTA Title III Case"), and the Puerto Rico Electric

Power Authority (the "PREPA Title III Case") (and together with the Commonwealth Title III

Case, the "Title III Cases").[10]  By orders dated June 29, 2017 [Docket No. 537] and October 6,

2017 [Docket No. 1417], the Court approved the joint administration of the Title III Cases.

18.     On June 15, 2017, the Office of the United States Trustee for the District of

Puerto Rico (the "U.S. Trustee") filed a *Notice Appointing Creditors Committee for Unsecured

Creditors* [Docket No. 338].  On June 26, 2017, the Committee selected Paul Hastings as counsel

to the Committee.

19.     On July 10, 2017, the Committee filed an application to retain and employ Paul

Hastings as counsel, effective June 26, 2017 [Docket No. 610] (the "Retention Application").

By order of this Court entered August 10, 2017 [Docket No. 999] (the "Retention Order"),

incorporated herein by this reference, Paul Hastings' retention as counsel to the Committee was

approved effective as of June 26, 2017.

---

[10]     Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III
Case.

20.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the "Interim Compensation Order").[11]

21.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.  Paul Hastings' retention extends to the representation of the Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.  In particular, the Retention Order provided that "[t]he retention of Paul Hastings, as counsel to the Committee, shall be deemed to apply to the representation of the Committee if ever enlarged to include unsecured creditors of other debtors, without the need to obtain a modification of this Order."

22.     The Retention Order authorized Paul Hastings to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct.[12]  The Retention Order further provides that "[p]ursuant to Bankruptcy Code section 503(b)(1), made applicable by PROMESA section 301(a), the fees and expenses of Paul Hastings under this Order shall be an administrative expense."  In addition, as provided in the Retention Order, the Oversight Board has consented to the Debtors' payment of Paul Hastings' allowed fees and expenses.

---

[11]   The Interim Compensation Order was most recently amended on June 6, 2018.

[12]   Paragraph 2 of the Retention Order provides, among other things, that "Paul Hastings will charge its regular hourly rates in effected from time to time; as such rates may be increased periodically, annually or otherwise."

23.     Paul Hastings has agreed to reduce its fees by an amount equal to 20% of its total

case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul

Hastings (in its sole discretion) in connection with the final fee application process.  For that

reason, at this time Paul Hastings seeks payment of only 80% of its fees incurred during the

Application Period, but allowance of 100% of such fees.  Paul Hastings agreed to this reduction

in reliance on the fact that the timing of the payment of Paul Hastings' fees and expenses would

be governed by Court orders which contained strict procedures and deadlines, and that such

order would be complied with.

24.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA*

*Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and*

*Related Relief* [Docket No. 1416] (the "Fee Examiner Order").  The Court appointed Brady

Williamson as the Fee Examiner in the Title III Cases.

25.     On December 15, 2017, Paul Hastings filed its first interim fee application with

respect to the period from June 26, 2017 through September 30, 2017 [Docket No. 2040] (the

"First Interim Fee Application").  In accordance with the Interim Compensation Order, Paul

Hastings received a preliminary report from the Fee Examiner with respect to the First Interim

Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in

its requested fees and expenses.[13]  On March 7, 2018, the Court approved the First Interim Fee

Application, with the agreed-upon adjustments.

---

[13]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of  $67,259.01 to be included
within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee
application, (b) additional fee reductions in the amount of $13,507.00 (which amount was credited against Paul
Hastings' January 2018 fee statement), and (c) expense reductions in the amount of $21,926.16 (which amount
also was credited against Paul Hastings' January 2018 fee statement).

26.     On March 19, 2018, Paul Hastings filed its second interim fee application with respect to the period from October 1, 2017 through January 31, 2018 [Docket No. 2735] (the "Second Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Second Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[14]  On June 8, 2018, the Court approved the Second Interim Fee Application, with the agreed-upon adjustments.

27.     On July 16, 2018, Paul Hastings filed its third interim fee application with respect to the period from February 1, 2018 through May 31, 2018 [Docket No. 3568] (the "Third Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[15]  On March 14, 2019, the Court approved the Third Interim Fee Application, with the agreed-upon adjustments.

28.     On November 16, 2018, Paul Hastings filed its fourth interim fee application with respect to the period from June 1, 2018 through September 30, 2018 [Docket No. 4325] (the "Fourth Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Fourth Interim

---

[14]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of  $103,943.50 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $1,385.00 (which amount was credited against Paul Hastings' January 2018 fee statement), and (c) expense reductions in the amount of $12,722.50 (which amount also was credited against Paul Hastings' January 2018 fee statement).

[15]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $125,338.14 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $99,589.74 (which amount was credited against Paul Hastings' January 2019 fee statement), and (c) expense reductions in the amount of $3,737.20 (which amount also was credited against Paul Hastings' January 2019 fee statement).

-14-

Fee Application. Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[16] On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

29.     On March 18, 2019, Paul Hastings filed its fifth interim fee application with respect to the period from October 1, 2018 through January 31, 2019 [Docket No. 5822] (the "Fifth Interim Fee Application"). In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Fifth Interim Fee Application. Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[17] On July 23, 2019, the Court approved the Fifth Interim Fee Application, with the agreed-upon adjustments.

30.     On July 15, 2019, Paul Hastings filed its sixth interim fee application with respect to the period from February 1, 2019 through May 31, 2019 [Docket No. 8004] (the "Sixth Interim Fee Application"). In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Sixth Interim Fee Application. Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[18] On January 2, 2020, the Court approved the Sixth Interim Fee Application, with the agreed-upon adjustments.

---

[16]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $69,137.26 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $58,539.27 (which amount was credited against Paul Hastings' January 2019 fee statement), and (c) expense reductions in the amount of $2,296.62 (which amount also was credited against Paul Hastings' January 2019 fee statement).

[17]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $106,895.16 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $88,842.17 (which amount was credited against Paul Hastings' June 2019 fee statement), and (c) expense reductions in the amount of $606.96 (which amount also was credited against Paul Hastings' September 2019 fee statement).

[18]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $196,179.84 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee

31.     On November 15, 2019, Paul Hastings filed its seventh interim fee application

with respect to the period from June 1, 2019 through September 30, 2019 [Docket No. 9219] (the

"Seventh Interim Fee Application").  In accordance with the Interim Compensation Order, Paul

Hastings received a preliminary report from the Fee Examiner with respect to the Seventh

Interim Fee Application.  The Fee Examiner and Paul Hastings are in discussions to resolve the

Fee Examiner's concerns with respect to the Seventh Interim Application.

## COMPENSATION AND REIMBURSEMENT REQUEST

32.     By this Application, Paul Hastings seeks allowance of compensation for

professional services rendered to the Committee during the Application Period in the aggregate

amount of $5,788,714.00[19] and expense reimbursements in the aggregate amount of

$281,132.48.[20]  These amounts are allocated among the Commonwealth Title III Case, the HTA

Title III Case, the ERS Title III Case, and the PREPA Title III Case, as follows:

---

application, (b) additional fee reductions in the amount of $145,627.04 (which amount was credited against Paul Hastings' December 2019 fee statement), and (c) expense reductions in the amount of $227.93 (which amount also was credited against Paul Hastings' December 2019 fee statement).

[19]  As noted, Paul Hastings has agreed to reduce its fees by an amount equal to 20% of its total case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process.  Accordingly, the firm only seeks payment, at this time, of fees in the amount of $4,514,469.57, which is 80% of $5,643,086.96 (*i.e.*, Paul Hastings' fees after taking into account a credit of $145,627.04 for fee reductions pursuant to the order approving Paul Hastings' Sixth Interim Fee Application).

[20]  As noted, Paul Hastings only seeks payment of expenses in the amount of $280,904.55, which amount reflects a credit of $227.93 for expense reductions pursuant to the order approving Paul Hastings' Sixth Interim Fee Application.

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $2,257,827.25 | $67,109.63 | $2,324,936.88 |
| HTA Title III Case | $91,341.50 | $73,073.20 | $164,414.70 |
| ERS Title III Case | $626,435.50 | $30,678.11 | $657,113.61 |
| PREPA Title III Case | $2,813,109.75 | $182,604.27 | $2,995,714.02 |
| **Total** | **$5,788,714.00** | **$281,132.48** | **$6,069,846.48** |

33.     The Committee has approved the amounts requested by Paul Hastings for services performed and expenses incurred in each of the monthly statements submitted to, among others, the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee during the Application Period.  All services for which compensation is requested herein were performed for or on behalf of the Committee.  Moreover, as detailed on Exhibit D hereto, the aggregate amount of fees incurred by Paul Hastings during the Application Period was well below the fees budgeted.

34.     To date, Paul Hastings has received payments totaling $3,789,584.24 for services rendered during the Application Period, which amount consists of $3,553,414.17 (representing 80% of the fees for services invoiced during the period from October 1, 2019 through December 31, 2019) and $236,170.07 (representing 100% of expenses invoiced for the same period).  As of the date of this Application, the amount of $1,005,789.88 (reflecting 80% of fees and 100% of expenses for services rendered in January 2020) remains unpaid.[21]

35.     Other than payments made in accordance with the Interim Compensation Order, Paul Hastings has received no payment and no promises of payment from any source for services rendered during the Application Period.  By this Application, Paul Hastings requests allowance of all fees and expenses incurred for services rendered during the Application Period.  At this

---

[21]   The deadline to object to Paul Hastings' December 2019 fee statement expired on March 9, 2020, without any objections.  The deadline to object to the January 2020 fee statement is March 23, 2020.  No objections to the January 2020 fee statement have been received as of the filing of this Application.

time, however, Paul Hastings seeks payment of only (a) 80% of the fees for services invoiced

during the Application Period and (b) 100% of expenses invoiced during the Application Period.

36.     In addition, as a courtesy to the Committee and based on circumstances unique to

the Title III Cases, during the Application Period Paul Hastings voluntarily waived fees totaling

$31,590.00.  The time billed by these timekeepers was reasonable, and Paul Hastings reserves

the right to seek allowance and payment of these fees based on the facts and circumstances of

these cases, including, without limitation, if objections are interposed to the allowance or

payment of Paul Hastings' fees and expenses.  Paul Hastings also voluntarily waived expenses

totaling $51,283.92 as a courtesy to the Committee during the Application Period.  For details

regarding the waived fees and expenses, please see the Declaration of Luc A. Despins filed

concurrently herewith.

37.     There is no agreement or understanding between Paul Hastings and any other

person other than the attorneys, employees, and staff of Paul Hastings, for the sharing of

compensation to be received for services rendered in these cases.

38.     Paul Hastings maintains computerized records, in the form of monthly statements,

of the time spent by all Paul Hastings' attorneys and paraprofessionals in connection with its

representation of the Committee.  The monthly statements are in the same form regularly used by

Paul Hastings to bill its clients for services rendered and include the date that the services were

rendered, a detailed, contemporaneous narrative description of the services provided, the amount

of time spent for each service, and the designation of the professional who performed the service.

39.     The fees charged by Paul Hastings in the Title III Cases are billed in accordance

with its existing billing rates and procedures in effect during the Application Period with the

following exceptions.  As a courtesy to the Committee and based on circumstances unique to the

Title III Cases, Paul Hastings agreed:

- to charge reduced rates for the services of Alexander Bongartz during the Application Period; the firm charged $1,200 per hour, rather than his standard rate of $1,250 per hour;

- not to increase the hourly rates of timekeepers working on the Puerto Rico matter as of August 1, 2019 and, instead, maintain the pre-August 1, 2019 rates for the remainder of 2019 (even though hourly rates increased on a firm-wide basis as of August 1, 2019); and

- not to increase the hourly rates of timekeepers working on the Puerto Rico matter as of January 1, 2020 and, instead, maintain the pre-January 1, 2020 rates for the month of January 2020 (even though hourly rates increased on a firm-wide basis as of January 1, 2020).[22]

40.      Subject to the foregoing exceptions, the rates Paul Hastings charges for the

services rendered by its professionals and paraprofessionals in the Title III Cases are comparable

to the rates Paul Hastings charges for professional and paraprofessional services rendered in

comparable nonbankruptcy related matters.  Moreover, when Paul Hastings' restructuring

professionals and paraprofessionals work on nonbankruptcy matters, the firm generally charges

their standard rate.  Such fees are reasonable based on the customary compensation charged by

comparably skilled practitioners in comparable nonbankruptcy cases in a competitive national

legal market.

41.      Paul Hastings' rates are set at a level designed to fairly compensate Paul Hastings

for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expenses.

Paul Hastings operates in a complicated national marketplace for legal services in which rates are

driven by multiple factors relating to the individual lawyer, his or her area of specialization, the

---

[22]   As detailed in the notice filed on January 16, 2020 [Docket No. 10099], Paul Hastings raised its rates for certain timekeepers working on the Puerto Rico matter as of February 1, 2020.  Because this rate increase occurred at the beginning of the next interim fee period, Paul Hastings will address it in its next fee application.

-19-

firm's expertise, performance and reputation, the nature of the work involved, and other factors.

Accordingly, Paul Hastings set its rates for attorneys and paraprofessionals both in the

restructuring group and other practice groups within the firm by reference to market information

and market adjustments by firms considered to be industry peers.  Based on this and reviews of

contemporaneous time records and fee applications filed in other cases, Paul Hastings endeavors

to set the hourly rates for its attorneys and paraprofessionals at levels comparable to those of its

principal competitor firms.

42.     Paul Hastings' professional services during the Application Period required an

aggregate expenditure of 6,215.10 recorded hours by Paul Hastings' attorneys and

paraprofessionals, broken down as follows: partners (779.30 hours), counsel (1,845.90 hours),

associates (2,945.10 hours), and paraprofessionals (644.80 hours).  During the Application

Period, Paul Hastings' billing rates for attorneys rendering services in this matter ranged from

$515 to $1,500 per hour

43.     To the extent that time or disbursement charges for services rendered or

disbursements incurred relate to the Application Period, but were not processed before the

preparation of this Application, or Paul Hastings has for any other reason not sought

compensation or reimbursement with respect to such services or expenses, Paul Hastings

reserves the right to request additional compensation for such services, and reimbursement of

such expenses, in a supplemental or future application.

## **SUMMARY OF SERVICES**

44.     During the Application Period, Paul Hastings assisted and advised the Committee

on a regular basis regarding legal matters relating to the restructuring of the Debtors, including

related adversary proceedings, and all other matters arising in the performance of the

-20-

Committee's duties.  In addition, Paul Hastings has prepared various motions, applications, orders, and other pleadings submitted to the Court for consideration, and has performed the necessary professional services that are described below and in the monthly statements attached hereto as Schedule 2.[23]  For ease of reference and transparency purposes, Paul Hastings created several matter numbers for its representation of the Committee.  The matter numbers are divided by Debtor and/or large tasks the Committee undertook, as follows:

| Matter ID | Matter Name |
|-----------|-------------|
| 00002 | Official Committee of Unsecured Creditors |
| 00004 | Communications with Creditors (other than Committee Members) |
| 00005 | Fiscal Plan Analysis |
| 00006 | PREPA |
| 00007 | HTA |
| 00008 | ERS |
| 00009 | Other Adversary Proceedings |
| 00010 | Mediation |
| 00011 | GO Bond Debt Issues |
| 00012 | Creditors' Committee Meetings |
| 00013 | Rule 2004 Investigations |
| 00014 | Constitutional Issues |
| 00017 | PBA |
| 00018 | GDB |

## I.      Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico (Matter ID 00002)

45.      During the Application Period, Paul Hastings addressed a number of key matters as Committee counsel with respect to this matter.  Among the most important of these was the filing, on September 27, 2019, of the Oversight Board's Initial Plan and Initial Disclosure

---

[23]  The description of services in this Application is limited to those matters in which Paul Hastings provided five (5) or more hours of service during the Application Period.

Statement with respect to the Commonwealth, ERS, and PBA.  The filing of the Initial Plan

demanded Paul Hastings' diligent attention so that it could advise the Committee with respect to

the Initial Plan, which, among other things, contemplated very favorable treatment to holders of

pre-2012 GO and PBA bonds (including 2011 GO bonds and PBA bonds subject to the

Committee's pending claim objections) while providing dismal recoveries to general unsecured

creditors of only "up to 1.8%."[24]  As part of its analysis of the Initial Plan, Paul Hastings

analyzed numerous plan issues relevant to unsecured creditors, including among others the

classification of claims and unfair discrimination issues.

46.     In addition to the above, and as more fully discussed below, during the

Application Period, Paul Hastings handled the Committee's response to the motions for relief

from stay filed by certain holders and/or insurers of Revenue Bonds, analyzed proofs of claim,

reviewed omnibus claim objections, addressed the Oversight Board's renewed proposal for an

ADR process and its proposal for administrative claims reconciliation procedures, and handled

other matters related to the Commonwealth Title III Case.

(a)     Case Administration (Task Code B110)
         Fees:   $63,621.00        Total Hours:   117.20

47.     During the Application Period, Paul Hastings continued to advise the Committee

on general case administration.  In order to efficiently track deadlines, organize documents, and

manage work streams, Paul Hastings maintained a global task list and case calendar.  Further,

Paul Hastings coordinated internally and with the Committee's financial advisor, Zolfo Cooper

LLP ("Zolfo Cooper") regarding Committee communications, case strategy, and work streams.

---

[24]     *See e.g.*, Initial Disclosure Statement at 12-13 (describing creditor recoveries pursuant to the plan contemplated
by the Initial Plan).

48.     In addition, during the Application Period, Paul Hastings continued to implement

interim and long-term strategies to maximize recoveries for general unsecured creditors.  Paul

Hastings also communicated with certain Committee members and others in connection with the

administration of the Title III Cases.

49.     Furthermore, Paul Hastings worked to execute a variety of other tasks related to

case administration, including, among other things, analyzing issues in connection with the

Committee's disclosures pursuant to Bankruptcy Rule 2019, monitoring the Bankruptcy Rule

2019 disclosures of other creditor groups, and handling administrative matters in connection with

the filing and service of pleadings.

(b)     Pleadings Review (Task Code B113)
        Fees:   $16,474.50         Total Hours:   44.70

50.     During the Application Period, Paul Hastings continued to review and prepare

summaries of pleadings filed and orders entered in the Title III Cases for internal review and

review by the Committee.

(c)     Relief from Stay / Adequate Protection Proceedings (Task Code B140)
        Fees:   $78,565.50         Total Hours:   72.50

51.     During the Application Period, Paul Hastings prepared the Committee's limited

joinders in support of the Oversight Board's opposition to the motions for relief from stay filed

by certain holders and/or insurers of bonds issued by HTA, PRIFA, and CCDA, which limited

joinders were filed on February 3, 2020.   Of particular note, in the interest of minimizing fees

and to avoid the duplication of work, the Committee did not prepare its own standalone objection

to these lift stay motions, but instead coordinated with counsel to the Oversight Board prior to

the filing deadline, including by requesting advance drafts of the Oversight Board's oppositions,

providing comments on the drafts (some of which were incorporated), and ultimately filing

limited joinders in such oppositions.  While Paul Hastings performed research and analysis of the

legal issues raised in these lift stay motions (in order to, among other things, determine the extent

of the Committee's joinders in the Oversight Board's oppositions), Paul Hastings' approach

saved substantial fees compared to preparing standalone oppositions to these lift stay motions.

52.     In addition Paul Hastings prepared and filed the Committee's limited response to

certain other lift stay motions filed in the Title III cases in order to highlight certain issues (such

as the question of the dischargeability of claims based on alleged violations of the U.S.

Constitution) that the Committee believes should not be ruled upon in the context of a motion for

relief from stay.

(d)     Meetings of and Communications with Creditors (Task Code B150)
        Fees:   $264,546.00        Total Hours:   316.10

53.     During the Application Period, Paul Hastings continued to prepare reports and

summaries to keep the Committee apprised of relevant developments in the Title III Cases and

related adversary proceedings.[25]

(e)     Court Hearings (Task Code B155)
        Fees:   $87,931.50        Total Hours:   85.50

54.     During the Application Period, Paul Hastings attended (a) the October 30, 2019

omnibus hearing in San Juan, at which hearing Paul Hastings addressed the Court in connection

with the status conference with respect to the claims resolution process and the motion for

approval of the PREPA RSA and the Oversight Board's motion for an order allowing the

administrative reconciliation of certain claims; (b) the December 11, 2019 omnibus hearing in

San Juan, at which hearing Paul Hastings addressed the Court in connection with the Mediation

Team's Interim Report; and (c) the January 29, 2020 omnibus hearing in San Juan, at which

hearing Paul Hastings addressed the Court in connection with the status conference on

---

[25]    Meetings and calls with the Creditors' Committee were recorded separately under Matter ID 00012 (Creditors'
        Committee Meetings).

scheduling issues with respect to the PREPA RSA Motion and the Oversight Board's renewed

motion for ADR procedures.  Paul Hastings also monitored the U.S. congressional hearings on

PROMESA-related issues held on October 22, 2019 and October 30, 2019.

55.     In preparation for these hearings, Paul Hastings also reviewed relevant issues

raised in the parties' pleadings, prepared materials for the hearings, and filed the requisite

informative motions to be heard.

(f)     Fee/Employment Applications (Paul Hastings) (Task Code B160)
        Fees:   $202,763.50          Total Hours:   233.60

56.     During the Application Period, Paul Hastings prepared, among other things, five

monthly fee statements for services provided during the months of August 2019 through

December 2019, as well as the Seventh Interim Fee Application for the period from June 1, 2019

through September 30, 2019 and portions of this Application.  In addition, Paul Hastings

continued to identify possible connections between the firm and parties in interest in the Title III

Cases and prepared two supplemental declarations of Luc Despins regarding the firm's retention

as Committee counsel (one of these supplemental declarations was filed during the Application

Period, while the other was worked on, but not completed, during the Application Period).  Paul

Hastings also reviewed reports and correspondence from the Fee Examiner and engaged in

discussions with the Fee Examiner and his counsel to address questions regarding Paul Hastings'

interim fee applications.

(g)     Fee/Employment Applications for Other Professionals (Task Code B165)
        Fees: $ 16,069.00          Total Hours:   22.60

57.     During the Application Period, Paul Hastings assisted the Committee's

communications advisor, Kroma Advertising, Inc. ("Kroma") and handled Committee member

expense reimbursement requests.  Paul Hastings also handled other matters related to the

employment of other professionals, including reviewing the fee statements of certain

professionals retained by the Oversight Board and AAFAF.

(h)     Non-Working Travel (Task Code B195) (billed at ½ rate)
        Fees:   $28,934.75          Total Hours:   43.60

58.     During the Application Period, one Paul Hastings professional traveled to and

from San Juan to attend the omnibus hearing held on October 30, 2019, one Paul Hastings

professional traveled to and from San Juan to attend the omnibus hearing held on December 11,

2019, and two Paul Hastings professionals traveled to and from San Juan to attend the omnibus

hearing held on January 29, 2020.  In addition, one Paul Hastings profession traveled to and from

Boston to attend the hearing on ERS-related discovery matters held on January 15, 2020.[26]  In

accordance with Local Rule 2016-2(d)(viii), Paul Hastings billed for one-half the total time that

Paul Hastings professionals spent on non-working travel.

(i)     Claims Administration and Objections (Task Code B310)
        Fees:   $379,425.00          Total Hours:   437.50

59.     During the Application Period, Paul Hastings, with the assistance of CST and

Zolfo Cooper, continued to analyze proofs of claims in order to better understand the size and

nature of the unsecured claims pool.  This was an especially critical task during the Application

Period given the importance of advocating for improvements to the dismal recovery for general

unsecured creditors contemplated under the Initial Plan.  As mentioned in prior fee applications,

in contrast to bondholders' claims, the unsecured claims pool is comprised of thousands of

claims that are difficult to quantify because they are often based on pending litigation.  As part of

this claim review process, Paul Hastings continued to analyze, with the assistance of local

counsel CST, the merits and the potential allowed amounts of certain claims asserted by

---

[26]   The time spent attending this hearing was billed separately under Matter ID 00008 (ERS).

unsecured creditors against the Debtors.  Paul Hastings also reviewed claim objections filed by the Debtors (as well as responses thereto) and continued to analyze complex issues related to the treatment of claims, including, among others, the treatment of claims based on alleged violations of the U.S. Constitution, including whether such claims are dischargeable as part of a plan of adjustment.  This analysis required extensive research of case law and related materials.

60.     Further, Paul Hastings also reviewed the Oversight Board's motion for administrative claims reconciliation ("ACR") procedures as well as the Oversight Board's renewed motion for ADR procedures (which motion incorporated a number of the Committee's suggestions with respect to the ADR process).  In addition to providing informal comments to counsel for the Oversight Board, Paul Hastings also prepared and filed the Committee's limited responses to the ACR and ADR motions.

61.     Paul Hastings also undertook a number of other tasks related to the resolution of claims against the Commonwealth.  Among other things, Paul Hastings analyzed issues related to claims asserted by holders and/or insurers of Revenue Bonds, claims trading, and the appropriate time for the adjudication of disputed unsecured claims in the context of the Title III cases.  With respect to this last issue, Paul Hastings prepared a draft motion regarding the timing of substantive claim objections to disputed unsecured claims.  In particular, the Committee is concerned that unsecured creditors may decide not to incur the time and expense of defending substantive claim objections simply because, under the Initial Plan, they were estimated to recover only up to 1.8% on their claims (a recovery that, under the Amended Plan, has increased only slightly to 3.9%), even though their ultimately recovery rate under a confirmed plan of adjustment could end up being materially higher.  At this time, the Committee has not yet filed such a motion, but it is continuing to consider this issue.

    (j)    <u>Plan and Disclosure Statement (including Business Plan) (Task Code B320)</u>
          Fees: $297,165.50        Total Hours:   307.90

62.    During the Application Period, Paul Hastings advised the Committee in connection with the Initial Plan and Initial Disclosure Statement, filed on September 27, 2019. Paul Hastings carefully analyzed these documents in order to advise the Committee with respect thereto and worked to develop the Committee's strategy with respect to the Initial Plan.  As part of these efforts, Paul Hastings conducted extensive research and analysis of a variety of plan-related issues, including issues related to substantive consolidation, designation of claims, classification of claims, and unfair discrimination.  In addition, Paul Hastings analyzed case law regarding a motion for classification of claims under Rule 3013 of the Bankruptcy Code (as a precursor to the filing of the Committee's Rule 3013 motion after the end of the Application Period).

## II.    Communications with Creditors (other than Committee Members) / Website (Matter ID 00004)

    (a)    <u>Meetings of and Communications with Creditors (Task Code B150)</u>
          Fees:  $103,279.50       Total Hours:   85.60

63.    During the Application Period, Paul Hastings prepared and regularly updated, with the assistance of Kroma, the Committee's website regarding the Title III Cases, including updates on hearings, recent Court orders, and other developments in the Title III Cases.  In this regard, Paul Hastings also prepared and regularly updated the Spanish-language sections of the website.

64.    During the Application Period, Paul Hastings also worked with Kroma to draft and distribute multiple informational emails to unsecured creditors.  These emails contained links to the Committee's website and case information and updates, including among others updates on the treatment of creditors under the Initial Plan, the Committee's objection to the

PREPA RSA Motion, and the Committee's objections to ERS and bonds issued by the

Commonwealth and PBA.  In addition, Paul Hastings also worked with Kroma to reach out to

local Puerto Rico unsecured creditors, by, among other things, preparing additional written

communications and giving presentations to certain local creditor groups regarding the PREPA

RSA and the Initial Plan.

### III.    PREPA (Matter ID 00006)

65.    During the Application Period, as it did during the Seventh Interim Application

Period, Paul Hastings continued to lead he Committee's response to the PREPA RSA Motion—

in addition to its regular duties representing the Committee in connection with the PREPA Title

III Case.[27]  As part of its efforts, Paul Hastings engaged in intensive legal research and analysis,

discovery, and discovery-related litigation related to the Committee's 135-page PREPA RSA

Objection filed on October 30, 2019.

66.    As further explained in the PREPA RSA Objection, the Committee strongly

opposes the PREPA RSA Motion because the Committee believes the settlement embodied in

the RSA is an improvident transaction for PREPA and its unsecured creditors that is far too

generous to bondholders given the weakness of bondholders' legal entitlements.  Most notably,

as detailed in the PREPA RSA Objection, the $8.5 **billion** in PREPA bonds were secured only by

approximately $8.8 **million** of collateral, as of the PREPA petition date, and, moreover, are not

entitled to any unsecured deficiency claim, given that they are non-recourse bonds.

Nevertheless, the RSA provides PREPA bondholders with consideration allowing them to

eventually recover 86% of the face amount of their claims (and, under certain conditions, even

---

[27]    *See* Docket No. 1235 in Case No. 17-4780 (LTS).

greater than 90%). The Committee also objects to the PREPA RSA Motion for a number of

additional reasons, including that:

- the various benefits alleged to flow from the RSA, such as confirmation
  of PREPA's plan, PREPA's transformation/privatization, and improved
  macroeconomic conditions for PREPA and Puerto Rico, are so
  speculative as to be illusory;

- the proposed settlement is not in the interests of PREPA's creditors, as it
  was the result of a one-sided negotiation process from which the
  Committee and other non-bondholder creditors were excluded, it appears
  to impermissibly restrict PREPA's ability to pay other, non-bondholder
  creditors, and no creditors or other parties in interest that are not
  bondholders support the proposed settlement;

- the RSA constitutes an impermissible *sub rosa* plan that dictates the
  contents of PREPA's Title III plan of adjustment without providing the
  various protections for creditors, including rights to receive certain
  disclosures and to vote on confirmation, that are required as part of the
  plan process; and

- the proposed settlement contains a number of terms and conditions that
  are illegal and/or not in PREPA's best interests, such as (a) the
  allowance of administrative expense claims of hundreds of millions of
  dollars of post-petition interest for the PREPA bondholders supporting
  the PREPA RSA, even though, they were undersecured on the PREPA
  petition date, (b) waiver and support fees for such supporting holders in
  the amount of approximately $151 million, and (c) the absence of a
  "fiduciary out" provision that would allow the Oversight Board,
  AAFAF, and PREPA (collectively, the "Government Parties") to
  terminate the RSA if they determine it is detrimental to PREPA.

67. Paul Hastings' extensive work representing the Committee in connection with the

PREPA RSA Motion was reasonable and necessary under the circumstances.

68. As discussed further in the Seventh Interim Fee Application, Paul Hastings was

duty bound, as counsel to the Committee, to engage in a comprehensive and urgent effort to

litigate the PREPA RSA Motion. This approach was necessary because of the importance of the

PREPA RSA Motion and the binding effect of the RSA following an eventual approval by the

Court, as well as the complexity of the issues raised by the RSA. As part of this litigation, it was

also critical that Paul Hastings take broad discovery to test the factual assertions and other

contentions proffered in support of the PREPA RSA Motion by the Government Parties, and file

pleadings in connection with issues related to evidence, discovery, and other matters relevant to

the PREPA RSA litigation that arose during the Application Period..

69.     Thus, during the Application Period, in addition to finalizing and filing the

PREPA RSA Objection, Paul Hastings took extensive discovery, deposing numerous key

witnesses and reviewing voluminous documentation.  Paul Hastings also filed, among other

pleadings, a reply in support of its objection to Magistrate Judge Dein's order granting a

protective order with respect to the deposition of José Ortiz, an agreed-upon protective order in

connection with deposing Christian Sobrino, a motion to strike certain opinion testimony of

Frederic Chapados, as well as related replies and certain other procedural pleadings.

70.     During the Application Period, Paul Hastings' litigators also prepared potential

exhibits in connection a hearing on the PREPA RSA Motion.  This work was necessary given the

volume and complexity of the materials, and such work remained urgent given constantly

shifting deadlines.  On November 1, 2019 the hearing was set for January 14, 2020, *see* Case No.

17-4780, Docket No. 1716; on December 17, 2019, the January 14, 2020 deadline hearing date

was vacated, *see* Case No. 17-4780, Docket No. 1834; and on January 7, 2020 the hearing date

was set for March 31, 2020, *see* Case No. 17-4780, Docket No. 1858.[28]

71.     The Committee and Paul Hastings are acutely aware of the cost of litigating the

PREPA RSA Motion, and have repeatedly attempted to reduce or eliminate the need for this

litigation.  For example, prior to the Application Period the Committee tried to resolve its

---

[28]   This hearing date was eventually moved to June 17, 2020 per an order entered on February 18, 2020.  *See* Case
No. 17-4780, Docket No. 1914.

numerous concerns consensually with the Government Parties and, at the July 24, 2019 omnibus
hearing, the Committee suggested that PREPA issues be subject to mediation under the Court's
Stay Order.  In addition, at the October 30, 2019 hearing the Committee noted that costly
litigation was proceeding apace despite uncertainty regarding whether the Commonwealth
Government even supported the RSA, and questioned the need for ongoing litigation under these
circumstances.[29]  Unfortunately, the Committee's efforts to mitigate the need for ongoing
litigation have been unsuccessful.

72.    In addition to opposing the PREPA RSA directly, Paul Hastings took other
actions to protect the interests of PREPA's unsecured creditors and the rights of the Committee.
For example, Paul Hastings prepared the Committee's objection to the proof of claim filed by the
PREPA bond trustee and related pleadings dealing with standing and timing issues in connection
with that claim objection, as well as filed a notice of appeal of the order terminating that
objection in order to preserve the Committee's appellate rights.  Paul Hastings also prepared
certain other pleadings, discussed below, in connection with PREPA-related adversary
proceedings.

73.    Finally, while Paul Hastings believes that it was justified in retaining the services
of LEI to provide an analysis on issues germane to the PREPA RSA Motion, in light of the fact
that the Court referred this matter to the Fee Examiner and that the Fee Examiner has not yet
reached a conclusion with respect to the fees and expenses incurred in connection with the LEI
Report, Paul Hastings has **not** sought payment, and is **not** seeking allowance at this time, of
$99,241.00 in fees and $52,007.21 in expenses incurred during the Application Period in

---

[29]    In fact, much of the Commonwealth's political leadership has indicated that it opposes the PREPA RSA, and
this opposition is one of the reasons for the multiple extensions of the hearing date and related deadlines.

connection with the preparation of the LEI Report.  Paul Hastings believes that these fees and

expenses were reasonable and reserves the right to seek the allowance thereof at a later time.

(a)     Case Administration (Task Code B110)
Fees:   $22,105.50        Total Hours:   72.90

74.     During the Application Period, Paul Hastings continued to handle significant

administrative matters in connection with the PREPA Title III Case, including filing and service

of pleadings and review and analysis of documents produced in connection with the litigation

surrounding the motion to approve the PREPA RSA.

(b)     Asset Analysis and Recovery (Task Code B120)
Fees:   $8,482.00         Total Hours:   7.60

75.     During the Application Period, Paul Hastings analyzed documents in connection

with PREPA's receipt of certain insurance proceeds related to hurricane reconstruction and

communicated with PREPA's insurance counsel regarding same.

(c)     General Litigation (Task Code B191)
Fees:   $84,723.50        Total Hours:   85.20

76.     During the application period, Paul Hastings handled various litigation matters

related to the PREPA RSA.  For example, Paul Hastings prepared and filed the Committee's

joinder in the Fuel Line Lenders' opposition to the Government Parties' motion to dismiss

adversary proceeding number 19-00396 (the "Fuel Line Lenders' Adversary Proceeding").  Paul

Hastings also began preparing a motion to intervene in adversary proceeding number 19-00405

(the "PREPA Retirement System Adversary Proceeding"), though the Committee ultimately

determined not to intervene to minimize costs and because many of the issues raised in the

PREPA Retirement System Adversary Proceeding were raised and could be addressed in the

Fuel Line Lenders' Adversary Proceeding, in which the Committee had already obtained

intervention rights.  Finally, Paul Hastings also handled other litigation tasks related to the

PREPA RSA Motion.

       (d)     <u>Non-Working Travel (Task Code B195)</u>
                Fees:   $48,751.75         Total Hours:   87.60

       77.      During the Application Period, Paul Hastings professionals travelled to attend

depositions in connection with the litigation of the PREPA RSA Motion.  More specifically, two

Paul Hastings professionals traveled to and from San Juan to take a deposition held on October

4, 2019 (Fermín Fontanés-Gómez); one Paul Hastings professional travelled to and from New

York to attend a deposition held on October 7, 2019 (Frederic Chapados) and take a deposition

held on October 8, 2019 (David A. Skeel); one Paul Hastings professional travelled to and from

New York to take a deposition held on October 11, 2019 (Fernando L. Batlle Hernaiz); one Paul

Hastings professional travelled to New York to attend a deposition held on October 16, 2019

(David Brownstein); one Paul Hastings professional travelled to and from Minneapolis to take a

deposition held on October 17, 2019 (Julia Becker); two Paul Hastings professionals travelled to

and from San Juan to take a deposition held on October 18, 2019 (Natalie A. Jaresko); two Paul

Hastings professionals travelled to and from San Juan to take a deposition held on October 22,

2019 (Christian Sobrino Vega); one Paul Hastings professional travelled to and from New York

to take a deposition held on December 5, 2019 (Fernando L. Batlle Hernaiz); and one Paul

Hastings professional travelled to and from New York to attend a deposition held on December

13, 2019 (Mark Belanger).  In accordance with Local Rule 2016-2(d)(viii), Paul Hastings billed

for one-half the total time that Paul Hastings professionals spent on non-working travel.[30]

---

[30]   Paul Hastings' October 2019 fee statement also includes an entry for non-working travel for one professional travelling between Washington D.C. and Boston for the July 30, 2019 hearing related to PREPA discovery matters.  This entry was inadvertently omitted from the July 2019 fee statement and therefore was not part of the fees submitted in connection with the Seventh Interim Fee Application.

(e)   Claims Administration and Objections (Task Code B310)
      Fees:   $310,132.00         Total Hours:   328.50

78.      During the Application Period, Paul Hastings prepared and filed the Committee's

objection to the PREPA bond claims and, subsequently, engaged in litigation against the

Government Parties, PREPA bond trustee U.S. Bank, and PREPA bondholders and bond insurers

regarding the Committee's standing to object to the PREPA bond claims and its ability to obtain

a ruling with respect to the claim objection prior to the Court deciding the PREPA RSA Motion.

In connection with this litigation, the Committee researched issues related to standing,

communicated with counsel to other parties, including the Fuel Line Lenders (who supported the

Committee's claim objection), and prepared multiple pleadings in support of the claim objection.

Paul Hastings also analyzed the finality of the Court's January 2019 order terminating the claim

objection (without prejudice) and filed an appeal of that order to preserve the Committee's

appellate rights.

79.      In addition to the above, Paul Hastings analyzed the motion for allowance and

payment of administrative expense claims filed by Cobra Acquisition LLC ("Cobra"),

communicated with counsel to PREPA with respect thereto, and filed a joinder to the

Government Parties' motion to extend deadlines with respect to Cobra's motion.  Paul Hastings

also analyzed the motion for allowance and payment of administrative expense claims filed by

Consul-Tech Caribe, Inc. and communicated with counsel to PREPA regarding same.

(f)   Restructurings (Task Code B420)
      Fees:   $2,330,422.00       Total Hours:   2461.00

80.      During the application period, Paul Hastings continued to represent the

Committee in responding to the PREPA RSA Motion.  As discussed above and in the Seventh

Interim Fee Application, this was a comprehensive effort that involved extensive work on

multiple fronts.

81.     First and foremost, Paul Hastings continued to draft the Committee's objection to the PREPA RSA Motion, which included researching and analyzing a wide variety of issues implicated by the PREPA RSA, an unprecedented and highly complex transaction.  These issues included the terms of the PREPA bonds, trust agreement, other utility securitization transactions, and other bankruptcy settlements; issues related to the contemplated privatization of PREPA; regulatory issues; the non-recourse nature of PREPA's bonds; the standard for approval of Rule 9019 settlements; the propriety of the fees proposed to be awarded under the PREPA RSA; and the scope and nature of bondholders' security interests.  Paul Hastings' efforts culminated in the filing of the Committee's 135-page PREPA RSA Objection on October 30, 2019.

82.     Paul Hastings also took extensive discovery in connection with the litigation of the PREPA RSA Motion.  Paul Hastings reviewed voluminous documents, and deposed numerous witnesses in October and December 2019, in addition to engaging in a variety of related tasks in connection with discovery.  After the filing of the PREPA RSA Objection, Paul Hastings litigators also prepared potential exhibits, deposition designations, and objections to declarations in connection with a hearing on the PREPA RSA Motion (which hearing, as note, has been repeatedly adjourned).

83.     Paul Hastings also continued to file pleadings related to discovery and the appropriate scope of the matters to be considered by the Court in connection with the PREPA RSA Motion, as well as other matters relevant to the PREPA RSA litigation.  Paul Hastings filed, among other pleadings, a reply in support of its objection to Magistrate Judge Dein's order granting a protective order with respect to the deposition of José Ortiz, an agreed-upon protective order in connection with deposing Christian Sobrino, a motion to strike certain opinion testimony

-36-

of Frederic Chapados, as well as pleadings related to procedural issues, such as page limit and

deadline extensions, among others.

    (g)    <u>Restructurings (Work Related to Expert Report) (Task Code B421)</u>
             Fees:   $99,241.00          Total Hours:   85.80

    84.    During the application period, Paul Hastings handled a number of tasks related to

the LEI Report.  These included, among other things, analyzing legal and strategic issues with

respect to the potential use of the LEI Report in connection with the litigation of the PREPA

RSA Motion, responding to the Government Parties' motion to exclude the LEI Report, filing

pleadings with respect to the unsealing of the LEI Report, reviewing drafts of the expert report,

and communicating with LEI personnel regarding same.  As noted above, Paul Hastings has **not**

sought payment, and is **not** seeking allowance at this time, of the fees and expenses incurred in

connection with the preparation of the LEI Report.  Paul Hastings reserves all its rights in this

regard.

**IV.    HTA (Matter ID 00007)**

    (a)    <u>General Litigation (Task Code B191)</u>
             Fees:   $87,586.50          Total Hours:   77.20

    85.    During the application period, Paul Hastings continued to represent the

Committee in connection with HTA by, among other things, working with the Oversight Board

to file, as co-plaintiff, Revenue Bond Adversary Proceeding No. 20-007 challenging the claims

of certain holders and/or insurers of Revenue Bonds against HTA.

**V.    ERS (Matter ID 00008)**

    (a)    <u>Case Administration (Task Code B110)</u>
             Fees:   $2,370.00          Total Hours:   6.80

    86.    During the Application Period, Paul Hastings continued to review and analyze

materials related to the ERS Title III Case, including document production received in

connection with the motion for relief from stay filed by certain ERS bondholders.  Paul Hastings

also handled administrative tasks in connection with the filing and service of pleadings related to

ERS.

       (b)      <u>General Creditor Inquiries (Task Code B112)</u>
               Fees:   $4,675.00         Total Hours:   5.00

       87.      During the Application Period, Paul Hastings responded to numerous creditor

inquiries with respect to the ERS Bond Objections and the filing of Notices of Participation in

connection therewith.

       (c)      <u>Relief from Stay/Adequate Protection Proceedings (Task Code B140)</u>
               Fees:   $8,968.00         Total Hours:   9.90

       88.      During the Application Period, Paul Hastings analyzed the relief from stay motion

filed by the underwriter of ERS bonds and analyzed issues related thereto.

       (d)      <u>Court Hearings (Task Code B155)</u>
               Fees:   $4,724.00         Total Hours:   5.00

       89.      During the Application Period, one Paul Hastings attorney attended the January

15, 2020 hearing in Boston in connection with ERS-related discovery issues.  In preparation for

this hearing, Paul Hastings also reviewed relevant issues raised in the parties' pleadings,

prepared materials for the hearings, and filed the requisite informative motions to be heard.

       (e)      <u>General Litigation (Task Code B191)</u>
               Fees:   $215,078.00      Total Hours:   198.00

       90.      During the Application Period, Paul Hastings represented the Committee in

connection with the litigation of the ERS lien scope challenge and *ultra vires* issues, including

by, among other things, handling the discovery process and pretrial disputes, analyzing the

answers and counterclaims filed by the ERS bondholders, working to identify potential experts,

and analyzing the First Circuit's decision with respect to section 552 of the Bankruptcy Code.  In

handling these matters, Paul Hastings worked closely with counsel to the other parties objecting

to the ERS bonds, *i.e.*, the Oversight Board, the Special Claims Committee, and the Retiree

Committee.

(f)    Employee Benefits/Pensions (Task Code B220)
Fees:    $121,533.00          Total Hours:    141.60

91.    During the Application Period, Paul Hastings researched and analyzed a number

of complex legal issues related to the treatment of pension and employee benefit claims in

bankruptcy, including municipal bankruptcy precedent, classification, and unfair discrimination.

(g)    Claims Administration and Objections (Task Code B310)
Fees:    $265,000.50          Total Hours:    270.20

92.    During the Application Period, Paul Hastings continued its work representing the

Committee in connection with the Committee's omnibus objection to the claims of ERS

bondholders (the "ERS Claim Objection"), in which it challenged over $3 billion of ERS bonds

as invalid based on the theory that they were issued *ultra vires*, as well as related matters.

Among other things, following the Court's October 7, 2019 order approving revised, agreed-

upon procedures (the "Revised ERS Objection Procedures") to allow for the coordinated

litigation of the ERS Claim Objections and other objections to the claims of ERS bondholders,

Paul Hastings implement the notification process designed to inform thousands of bondholders

regarding the ERS Claim Objections so as to allow them to participate in the litigation with

respect thereto, and Paul Hastings managed (with the assistance of Prime Clerk) the receipt of

notices of participation in connection with the ERS Claim Objections and notification of

participants with respect to ERS matters pursuant to the Revised ERS Objection Procedures.

Paul Hastings also worked with counsel for the Retiree Committee, the Oversight Board, and the

Special Claims Committee to prepare and file a joint motion to approve a schedule for discovery,

briefing, and hearings with respect to the ERS litigation (including a reply in support of such

motion).  Furthermore, Paul Hastings prepared and filed the Committee's additional objection to

ERS bonds on non-*ultra vires* grounds, and analyzed a number of legal issues related thereto.

## VI.     Other Adversary Proceedings (Matter ID 00009)[31]

(a)     Court Hearings (Task Code B113)
        Fees:   $1,794.50          Total Hours:   9.70

93.     During the Application Period, Paul Hastings reviewed pleadings filed and orders

entered in adversary proceedings related to the Title III Cases for internal review and review by

the Committee.

(b)     General Litigation (Task Code B191)
        Fees:   $73,500.00         Total Hours:   74.10

94.     During the Application Period, Paul Hastings monitored the progress of a number

of adversary proceedings and related matters, advising the Committee as appropriate.  In order to

track deadlines, organize documents, and notify the Committee of upcoming matters, Paul

Hastings reviewed these dockets to maintain its litigation tracking charts.  Paul Hastings also

analyzed issues in connection with the preparation of the Committee's motions to intervene in

the Revenue Bond Adversary Proceedings, which motions were filed in February 2020, shortly

after the end of the Application Period.

---

[31]     To the extent practicable, Paul Hastings tracked work in respect of PREPA-related adversary proceedings under
Matter ID 00006, HTA-related adversary proceedings under Matter ID 00007, and ERS-related adversary
proceedings under Matter ID 00008.

VII.    **Mediation (Matter ID 00010)**[32]

    (a)    <u>General Litigation (Task Code B191)</u>
          Fees:   $34,426.00          Total Hours:   29.60

95.    During the Application Period, Paul Hastings worked with the Mediation Team

and counsel to other parties involved in mediation to establish an agreed-upon schedule in

connection with the GO Claim Objections and related litigation.

    (b)    <u>Plan and Disclosure Statement (including Business Plan) (Task Code B320)</u>
          Fees:   $202,590.50          Total Hours:   174.10

96.    During the Application Period, Paul Hastings represented the Committee in

connection with the mediation of scheduling issues related to certain plan-related issues and the

sequencing of pending litigation.[33]   As part of these efforts, Paul Hastings attended mediation

sessions and communicated with the Mediation Team and other parties to the mediation process,

prepared presentations and other materials for mediation sessions, and analyzed legal issues that

arose in mediation and proposals for the sequencing of litigation.  Paul Hastings also prepared

the Committee's response to the Mediation Team's interim report to express the Committee's

concern that certain gating issues not addressed in the interim report, including the purported GO

priority and the pending Rule 12(c) motions in the PBA "lease" litigation, should also be

judicially resolved prior to a hearing on a disclosure statement.  Paul Hastings also prepared the

Committee's response to the Mediation Team's request for the extension of deadlines in

---

[32]    Due to mediation confidentiality restrictions, Paul Hastings cannot publicly disclose the substance of the issues
addressed in mediation.  Moreover, Paul Hastings has redacted all references to specific mediation issues in its
monthly fee statements attached to this Application.  Paul Hastings will submit unredacted versions of such
statements for the Court's review, if the Court so requests.  The Fee Examiner has received unredacted versions
of such statements.

[33]    This is to be contrasted with any negotiations relating to a plan of adjustment and the settlement of objections to
GO claims, in which the Committee did not participate.

connection with the filing of its amended report, which was eventually filed in February 10, 2020, shortly after the end of the Application Period.

**VIII.   GO Bond Debt Issues (Matter ID 00011)**

(a)   General Creditor Inquiries (Task Code B112)
      Fees:   $7,012.50          Total Hours:   7.50

97.   During the Application Period, Paul Hastings responded to numerous creditor inquiries with respect to the notices of objection served in connection with the GO Claim Objections;

(b)   Claims Administration and Objections (Task Code B310)
      Fees:   $128,790.00          Total Hours:   120.40

98.   During the Application Period, Paul Hastings continued to represent the Committee in connection with the GO Claim Objections, including the preparation of an additional omnibus objection on constitutional debt limit grounds to certain miscellaneous claims and guarantees supported by the Commonwealth's full faith and credit.  In addition, Paul Hastings handled service of notices pursuant to the Interim Case Management Order with respect to the GO Claim Objections.

99.   In addition, Paul Hastings continued to work on the Committee's objection to the asserted GO priority and analyzed related legal issues.  The priority objection was filed on February 3, 2020, shortly after the end of the Application Period.

**IX.   Creditors Committee Meetings (Matter ID 00012)**

(a)   Meetings of and Communications with Creditors (Task Code B150)
      Fees:   $214,556.00          Total Hours:   194.50

100.   During the Application Period, Paul Hastings continued to hold regular telephonic conferences with the Committee to provide the Committee with updates on the progress of the Title III Cases as well as to discuss case strategy and next steps.  In preparation for these telephonic conferences, Paul Hastings (a) reviewed relevant pleadings filed in the Title III Cases

and related adversary proceedings, (b) prepared presentations for these meetings, and (c) prepared proposed agenda letters for the Committee's consideration.

101.    Furthermore, and in addition to regular telephonic conferences, the Committee also held in-person Committee meetings in San Juan, Puerto Rico, on November 20, 2019, and January 28, 2020, during which meetings Paul Hastings gave comprehensive presentations regarding a range of legal issues in the Title III Cases, among other things.  Two Paul Hastings attorneys attended each in-person meeting.  In connection with these meetings, Paul Hastings prepared detailed PowerPoint presentations on various strategic issues for the Committee. Finally, Paul Hastings also prepared minutes of the Committee calls and meetings.

(b)    Non-Working Travel (Task Code B195)
Fees:   $13,350.00        Total Hours:   20.20

102.    During the Application Period, two Paul Hastings professionals traveled to and from San Juan to attend the in-person Committee meeting held on November 20, 2019, and two Paul Hastings professionals traveled to and from San Juan to attend the Committee meeting held on January 28, 2020.  In accordance with Local Rule 2016-2(d)(viii), Paul Hastings billed for one-half the total time that Paul Hastings professionals spent on non-working travel.

## X.    Constitutional Issues (Matter ID 00014)

(a)    Court Hearings (Task Code B155)
Fees:   $11,600.00        Total Hours:   9.10

103.    During the Application Period, Paul Hastings attorneys attended the October 15, 2019 oral argument before the United States Supreme Court in the *Aurelius* appeal and analyzed issues related thereto.

* * *

104.    The foregoing professional services were necessary and appropriate to the administration of the Title III Cases and were in the best interests of the Committee, the Debtors, the creditors, and other parties in interest.

**ATTENDANCE AT HEARINGS**

105.    In accordance with the presumptions set forth in the *Order on Fee Examiner's Motion* to *Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Docket No. 3932] (the "Presumptive Standards Order"), Paul Hastings provides the following summary regarding the attendance of Paul Hastings professionals at Court hearings:[34]

- October 15, 2019: The October 15, 2019 oral argument before the United States Supreme Court in connection with the *Aurelius* appeal was attended only by Mr. Despins and Mr. Mollen (Paul Hastings' constitutional law expert).

- October 30, 2019: The October 30, 2019 omnibus hearing was attended by Mr. Despins (speaking role) and Mr. Bongartz in person, with Mr. Comerford (for a portion of the hearing) attending by telephone. The omnibus hearing addressed, among other things, the motion filed by the Oversight Board for approval of procedures in connection with the administrative reconciliation of claims. Therefore, Paul Hastings submits that the attendance (for a portion of the hearing) of an additional attorney by phone (Mr. Comerford) who is extensively involved in the claims reconciliation matters is reasonable under the circumstances.

- December 11, 2019: The December 11, 2019 omnibus hearing was attended only by Mr. Despins (speaking role) and Mr. Bongartz (for a portion of the hearing) with Mr. Maza attending by telephone (for a portion of the hearing). The omnibus hearing addressed, among other matters, the Mediation Team's interim report. Paul Hastings submits that the attendance (for a portion of the hearing) of an additional attorney on the phone (Mr. Maza) who is extensively involved in GO bond objections and related issues is reasonable under the circumstances.

- January 15, 2020: The January 15, 2020 hearing on discovery disputes related to the ERS bond litigation was attended only by Ms. Goldstein.

---

[34]    Among other things, the Presumptive Standards Order provides that "[f]or attendance at hearings in which a professional anticipates a speaking role, fees and expenses incurred for attendance by timekeepers other than those with meaningful speaking roles (plus one additional timekeeper per speaker) are not compensable."

- <u>January 29, 2020</u>: The January 29, 2020 omnibus hearing was attended by Mr. Despins (speaking role) and Mr. Bongartz, with Mr. Comerford and Mr. Zwillinger attending the hearing by telephone (each for a portion of the hearing). This omnibus hearing included the oral argument on the Oversight Board's renewed motion for ADR procedures, a status conference with respect to the Cobra motion for allowance and payment of administrative expense claims, and a status conference with respect to the Interim Revenue Bond Order.  Paul Hastings submits that the attendance (for a portion of the hearing) of additional attorneys on the phone who are extensively involved in ADR and PREPA issues (Mr. Comerford) and revenue bond issues (Mr. Zwillinger) is reasonable under the circumstances.

### REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND COMMITTEE

106.    As requested by the Fee Examiner, we set forth below the status of the various proceedings and motions jointly commenced by the Oversight Board or its Special Claims Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulations for the joint prosecution of causes of action or claims objections.

- <u>Omnibus Objection of Oversight Board and Committee to Certain GO Bond Claims [Docket No. 4784] (the "Omnibus Claims Objection")</u>: Pursuant to Judge Swain's stay order dated March 10, 2020 [Docket No. 12189] (the "<u>Final Stay Order</u>"), the Omnibus Claims Objection is stayed pending the Court's decision regarding confirmation of the *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Docket No. 11946] (the "<u>Amended Plan</u>").

- <u>Adversary Proceeding Against Underwriters, etc.</u>:  GJB, the Committee's special litigation counsel, represents the Committee with respect to the adversary proceeding against various underwriters and other parties involved in the issuance of Commonwealth bonds [Adv. Proc. No. 19-280].  Paul Hastings has no involvement in this adversary proceeding.  Moreover, pursuant to the Final Stay Order, the underwriter litigation is stayed pending the Court's decision regarding confirmation of the Amended Plan.

- <u>Garden-Variety Avoidance Actions</u>:  CST, the Committee's local counsel, represents the Committee with respect to the "garden-variety" avoidance actions [Adv. Proc. Nos. 19-041 to 19-279, and Adv. Proc. Nos. 19-347 to 19-354].  Paul Hastings' involvement in these avoidance actions is limited to reviewing and commenting on draft forms of pleadings or "case management" pleadings, and

providing high-level oversight and direction with respect to these adversary
proceedings.[35]

- <u>Other Stayed Co-Plaintiff Adversary Proceedings</u>: Pursuant to the Final Stay
  Order, the following co-plaintiff adversary proceedings are stayed pending the
  Court's decision regarding confirmation of the Amended Plan:

  - Eight adversary proceedings seeking to recover fraudulent transfers made
    on account of GO bonds that were not validly issued [Adv. Proc. No. 19-
    281, Adv. Proc. No. 19-282, Adv. Proc. No. 19-283, Adv. Proc. No. 19-
    284, Adv. Proc. No. 19-285, Adv. Proc. No. 19-286, Adv. Proc. No. 19-
    287, and Adv. Proc. No. 19-288]; and

  - Seven adversary proceedings challenging liens asserted by certain holders
    of GO bonds [Adv. Proc. No. 19-291, Adv. Proc. No. 19-292, Adv. Proc.
    No. 19-293, Adv. Proc. No. 19-294, Adv. Proc. No. 19-295, Adv. Proc.
    No. 19-296, and Adv. Proc. No. 19-297].

  - Four adversary proceedings challenging liens asserted by certain holders
    of HTA bonds [Adv. Proc. No. 19-362, Adv. Proc. No. 19-363, Adv. Proc.
    No. 19-364, and Adv. Proc. No. 19-365].

- <u>ERS-Related Co-Plaintiff Adversary Proceedings</u>: On October 24, 2019, the
  Court approved a scheduling order regarding discovery and summary judgment
  briefing on the lien scope issues and *ultra vires* issues with respect to the ERS
  bonds. Accordingly, (a) the lien scope litigation, *i.e.*, Adv. Proc. No. 19-366 and
  Adv. Proc. No. 19-367 and (b) count I of the complaints seeking to recover
  fraudulent transfers made on account of ERS bonds that were not validly issued,
  *i.e.*, Adv. Proc. No. 19-355, Adv. Proc. No. 19-356, Adv. Proc. No. 19-357, Adv.
  Proc. No. 19-358, Adv. Proc. No. 19-359, and Adv. Proc. No. 19-361, were
  unstayed.

  - Proskauer Rose LLP, counsel for the Oversight Board, has primary
    responsibility for the lien scope adversary proceedings. Accordingly, Paul
    Hastings is not expending significant time on these adversary
    proceedings.[36]

---

[35] We also note that, on July 12, 2019, the Court approved certain procedures establishing a framework for
streamlined execution of settlement agreements and procedures and guidelines for resolving the avoidance
actions through a voluntary mediation process.

[36] To be clear, Paul Hastings is fully involved in the discovery and briefing as it relates to the Committee's ERS
Claim Objection, which objection was not brought jointly with any other party. Given that the *ultra vires* issues
and the lien scope issues are being litigated in tandem, Paul Hastings is coordinating its litigation efforts with
the other objectors (including the Retiree Committee) in the interest of minimizing duplication of efforts.

  o Moreover, GJB, the Committee's special litigation counsel, represents the
     Committee with respect to count I of the recovery actions.  Thus, GJB is
     handling the *ultra vires* issues as they relate to count I of the recovery
     actions.

- <u>Currently Stayed HTA Revenue Bond Co-Plaintiff Adversary Proceeding</u>:
  Pursuant to the Court's *Final Case Management Order for Revenue Bonds*
  [Docket No. 12186], Adv. Proc. No. 20-007 is currently stayed.

107.    The sub-budgets and staffing plans with respect to the jointly pursued matters

described above are included as part of <u>Exhibit C-1</u> and <u>Exhibit C-2</u> hereto, respectively.  As

shown on <u>Exhibit D-1</u>, actual hours incurred on the above matters were well below budget.

## ACTUAL AND NECESSARY DISBURSEMENTS

108.    As set forth in <u>Exhibit D-2</u> hereto, Paul Hastings disbursed $281,132.48[37] as

expenses incurred in providing professional services during the Application Period.  This amount

includes $38,381.74 in expenses payable to Trustpoint International, LLC, which provided e-

discovery services, including maintaining a database of discovery documents that were critical to

Paul Hastings' discovery tasks in connection with the litigation of the PREPA RSA Motion.

109.    Paul Hastings also disbursed additional amounts in connection with other minor

expenses such as the translation of documents and the use of CourtSolutions.

110.    Further, because Paul Hastings believes that online legal research (e.g., LEXIS

and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes,

Paul Hastings encourages computerized legal research even though it is not a profit center for

Paul Hastings.

111.    The time constraints imposed by the circumstances of the matters handled by Paul

Hastings during the Application Period required its attorneys and other employees, at times, to

---

[37]   At this time, Paul Hastings is not seeking allowance of LEI invoice's for services rendered in October 2019 in
       the amount of $52,007.21. Paul Hastings reserves the right to seek allowance of this expense at a later time.

devote substantial time during the evenings and on weekends to perform legal services on behalf

of the Committee. These extraordinary services were essential to meet deadlines, timely respond

to inquiries on a daily basis, and satisfy the Committee's needs and demands. Attorneys and

other Paul Hastings employees who worked late in the evenings or on weekends were

reimbursed for their reasonable meal and transportation costs in accordance with the Local Rules

and firm policy. Paul Hastings' regular practice is not to include components for those charges

in overhead when establishing billing rates, but rather to charge its clients for these and all other

out-of-pocket disbursements incurred during the regular course of the provision of legal services.

112.    Further, Paul Hastings believes the rates for charges incurred are the market rates

that the majority of law firms charge clients for such services. In addition, Paul Hastings

believes that such charges are in accordance with the American Bar Association's

("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995,

regarding billing for disbursements and other charges.

## **REQUESTED COMPENSATION SHOULD BE ALLOWED**

113.    Section 316 of PROMESA provides for the compensation of professionals.

Specifically, section 316 provides that a court may award a professional employed by a

committee under section 1103 of the Bankruptcy Code "reasonable compensation for actual,

necessary services rendered . . . and reimbursement for actual, necessary expenses." PROMESA

§ 316(a). Section 316 also sets forth the criteria for the award of such compensation and

reimbursement:

      (a)    In determining the amount of reasonable compensation to be awarded
           to a professional person, the court shall consider the nature, the extent,
           and the value of such services, taking into account all relevant factors,
           including:

           (i)      the time spent on such services;

(ii)     the rates charged for such services;

(iii)    whether the services were necessary to the administration of, or
beneficial at the time at which the service was rendered toward
the completion of, a case under this chapter;

(iv)    whether the services were performed within a reasonable
amount of time commensurate with the complexity, importance,
and nature of the problem, issue, or task addressed;

(v)     with respect to a professional person, whether the person is
board certified or otherwise has demonstrated skill and
experience in the restructuring field; and

(vi)    whether the compensation is reasonable based on the customary
compensation charged by comparably skilled practitioners in
cases other than cases under this title or title 11, United States
Code.

114.    PROMESA § 316(c).  Further, section 317 of PROMESA provides that "a
committee . . . may apply to the court not more than once every 120 days . . . for such
compensation for services rendered . . . ."

115.    In the instant case, Paul Hastings respectfully submits that the services for which
it seeks compensation in this Application were, at the time rendered, believed to be necessary for
and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to
protect, preserve, and maximize value for unsecured creditors during the pendency of the
Title III Cases.  The services rendered to the Committee were performed in an economic,
effective, and efficient manner commensurate with the complexity and importance of the issues
involved.  The results obtained to date have benefited not only the Committee but also the
Debtors, their stakeholders, and other interested parties.  Accordingly, the compensation
requested herein is reasonable in light of the nature, extent, and value of such services to the
Committee, the Debtors, and all parties in interest.

116.    The work conducted was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task.  Whenever possible, Paul Hastings sought to minimize the costs of Paul Hastings' services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments.  A small group of the same Paul Hastings attorneys was utilized for the vast majority of the work in order to minimize the costs of intra-Paul Hastings communication and education about the Title III Cases.  As demonstrated by this Application, Paul Hastings spent its time economically and without unnecessary duplication.  Accordingly, approval of the compensation sought herein is warranted.

## NOTICE

117.    In accordance with the Interim Compensation Order, Paul Hastings will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of hearing with respect to this Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

[*Remainder of page intentionally left blank.*]

-50-

## <u>CONCLUSION</u>

WHEREFORE, Paul Hastings respectfully requests entry of an order, substantially in the

form attached hereto as <u>Schedule 3</u>, (i) allowing interim compensation for professional services

rendered during the Application Period in the amount of $5,788,714.00, representing 100% of

the fees billed during the Application Period, and reimbursement of $281,132.48, representing

100% of the actual and necessary expenses incurred during the Application Period,

(ii) authorizing and directing the Debtors' payment of the difference between (a) the sum of 80%

of the fees allowed (after taking into account any credits) and 100% of the expenses allowed and

(b) the amounts previously paid by the Debtors pursuant to the Interim Compensation Order, (iii)

allowing such compensation and payment for professional services rendered and reimbursement

of actual and necessary expenses incurred be without prejudice to Paul Hastings' right to seek

such further compensation and/or payment for the full value of services performed and expenses

incurred, and (iv) granting Paul Hastings such other and further relief as is just.

Dated: March 16, 2020

                     */s/ Luc A. Despins*

                     PAUL HASTINGS LLP
                     Luc A. Despins, Esq. (Pro Hac Vice)
                     James R. Bliss, Esq. (Pro Hac Vice)
                     Nicholas A. Bassett, Esq. (Pro Hac Vice)
                     G. Alexander Bongartz, Esq. (Pro Hac Vice)
                     200 Park Avenue
                     New York, New York 10166
                     Telephone:  (212) 318-6000
                     lucdespins@paulhastings.com
                     jamesbliss@paulhastings.com
                     nicholasbassett@paulhastings.com
                     alexbongartz@paulhastings.com

                     *Counsel to the Official Committee of Unsecured*
                     *Creditors*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

--------------------------------------------------------------------- x
:
In re:                                                                 :
                                                                       :
THE FINANCIAL OVERSIGHT AND                                            :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                      :   Title III
                                                                       :
        as representative of                                           :   Case No. 17-BK-3283 (LTS)
                                                                       :
THE COMMONWEALTH OF PUERTO RICO, *et al.*,                             :   (Jointly Administered)
                                                                       :
        Debtors.[1]                                                    :
--------------------------------------------------------------------- x

### DECLARATION OF LUC A. DESPINS IN SUPPORT OF EIGHTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2019 <u>THROUGH JANUARY 31, 2020</u>

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), I, Luc A. Despins, declare that the following is true to the best of my knowledge, information, and belief:

1.      I am an attorney admitted and in good standing to practice in the State of New York.  I am a partner with the law firm of Paul Hastings LLP ("<u>Paul Hastings</u>"), located at, among other offices worldwide, 200 Park Avenue, New York, New York 10166, and am duly authorized to make this Declaration on behalf of Paul Hastings.  I make this Declaration in

---

[1]  The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

support of the *Eighth Interim Application of Paul Hastings LLP, Counsel to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for the Period from October 1, 2019 through January 31, 2020* (the "Application").[2]

2.      The facts set forth in this Declaration are based upon my personal knowledge, discussions with other Paul Hastings attorneys, and the firm's client/matter records that were reviewed by me or other Paul Hastings attorneys acting under my supervision and direction.

3.      I hereby certify that I have read the Application and, to the best of my knowledge, information, and belief, formed after reasonable inquiry, (a) the compensation and reimbursement of expenses sought in the Application conform with the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines, and the Local Rules, and (b) the compensation and reimbursement of expenses are billed at rates no less favorable to the Debtors than those customarily employed by Paul Hastings generally.

4.      Paul Hastings provides the following response to the request for information set forth in the U.S. Trustee Guidelines:

Question:      Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees, or terms for services pertaining to this engagement that were provided during the Application Period?

Response:      Yes.  As a courtesy to the Committee and based on circumstances unique to the Title III Cases, during the Application Period, Paul Hastings agreed to the following voluntary reductions / write-offs:

Paul Hastings waived fees totaling $31,590.00, as follows:

(i)      For services rendered during the Application Period, we reduced the hourly rate of G. Alexander Bongartz from $1,250.00 to $1,200.00, resulting in a reduction of $31,590.00 in fees.

In addition, Paul Hastings waived expenses totaling $51,283.92, as follows:

---

[2]      Capitalized terms used but not defined herein have the meanings set forth in the Application.

(i)     We waived all charges with respect to late-work, in-office meals (even though the Fee Examiner guidelines permit in-office meal charges of up to $20.00 per meal).  At a $20.00 cap per meal, this translates into a total write-off of $728.37;

(ii)    We capped car service charges at $100.00 resulting in a write-off of $143.30; and

(iii)   To comply with Local Rule 2016-1(b)(1), we reduced color photocopy charges by 50% from 50 cents per page to 25 cents per page (even though the Fee Examiner's guidelines permit color photocopy charges of 50 cents per page), resulting in a write-off of $50,412.25.

The aggregate amount of the foregoing reductions/write-offs is $82,873.92.

In addition, as a courtesy to the Committee and based on circumstances unique to the Title III Cases:

(i)     Paul Hastings agreed not increase the hourly rates of timekeepers working on the Puerto Rico matter as of August 1, 2019 and, instead, maintain the pre-August 1, 2019 rates for the remainder of 2019 (even though hourly rates increased on a firm-wide basis as of August 1, 2019); and

(ii)    Paul Hastings agreed not to increase the hourly rates of timekeepers working on the Puerto Rico matter as of January 1, 2020 and, instead, maintain the pre-January 1, 2020 rates for the month of January 2020 (even though hourly rates increased on a firm-wide basis as of January 1, 2020).[3]

Question:    If the fees sought in this application as compared to the fees budgeted for the Application Period are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:    Not applicable.

Question:    Have any of the professionals included in this application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:    No.

---

[3]   As detailed in the notice filed on January 16, 2020 [Docket No. 10099], Paul Hastings raised its rates for certain timekeepers working on the Puerto Rico matter as of February 1, 2020.  Because this rate increase occurred at the beginning of the next interim fee period, Paul Hastings will address it in its next fee application.

| | |
|---|---|
| Question: | Does the application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.) If so, please quantify by hours and fees. |
| Response: | The Application includes approximately 33.5 hours and associated fees of approximately $40,200.00 related to preparing, reviewing, and revising Paul Hastings' fee statements (which translates into an average of less than 9 hours for each of the four monthly fee statements prepared during the Application Period). |
| Question: | Does this application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees. |
| Response: | No. |
| Question: | If the application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation consistent with ABA Formal Ethics Opinion 11-458? |
| Response: | As is customary, Paul Hastings adjusts its hourly rates periodically based upon (i) the advancing seniority of its professionals and paraprofessionals, (ii) the current market for legal services, (iii) the rates charged for comparable non-bankruptcy services, and (iv) the firm's analysis of the hourly rates being charged by professionals in other law firms.  Effective February 1, 2018, July 1, 2018, and January 1, 2019, in each case with the Committee's approval, Paul Hastings adjusted its hourly rates in accordance with the Retention Order, the Retention Application, and the *Declaration of Mark Richard* in support of the Retention Application.  The Retention Order provides that Paul Hastings will charge its regular hourly rates in effect from time to time, as such rates may be increased periodically, annually or otherwise.  As detailed in the *Declaration of Mark Richard* [Docket No. 610-3], the Committee was advised of the foregoing. |

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 16th day of March, 2020

*/s/  Luc A. Despins*
Luc A. Despins

-4-