**Hearing Date**: July 29, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: April 6, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------ x
In re:                                         :
                                               :
THE FINANCIAL OVERSIGHT AND                    : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,              : Title III
                                               :
As representative of                           : Case No. 17-BK-3283 (LTS)
                                               :
THE COMMONWEALTH OF PUERTO RICO, et al.,       : (Jointly Administered)
                                               :
Debtors.¹                                      :
------------------------------------------------------------------ x
```

### EIGHTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM OCTOBER 1, 2019 THROUGH JANUARY 31, 2020

### SUMMARY COVER SHEET

Name of Applicant: <u>Casillas, Santiago & Torres, LLC</u>

Authorized to Provide Professional Services to: <u>Official Committee of Unsecured Creditors of all Title III Debtors (other than PBA and COFINA) (the "Committee")</u>

Date of retention: <u>July 20, 2017</u>

Period for which compensation and reimbursement is sought: <u>October 1, 2019 through and including January 31, 2020 (the "Application Period")</u>

Amount of interim compensation sought as actual, reasonable, and necessary: <u>$559,558.00</u>

---

[1]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Amount of interim expense reimbursement sought as actual, reasonable, and necessary: $12,999.65

Are your fee or expense totals different from the sum of previously served monthly statements? _ Yes  X No

Blended rate in this application for all attorneys: $245.93/hour

Blended rate in this application for all timekeepers: $243.24/hour

This is an *interim* application.

The total time expended for fee application preparation for the Interim Fee Period is approximately 28.30 hours, and the corresponding compensation requested is approximately $5,486.30.

## MONTHLY FEE REQUESTS TO DATE

| Date Submitted | Monthly Period Covered | Fees | Requested Fees (90%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 10% Fee Holdback |
|---|---|---|---|---|---|---|---|
| **First Interim Fee Period (July 20, 2017 through August 31, 2017)** | | | | | | | |
| 12/15/2017 | 07/21/2017 - 08/31/2017 | $169,523.00 | $152,570.70 | $6,320.62 | $173,440.00 | $6,320.62 | $0.00 |
| **Total** | | **$169,523.00** | **$152,570.70** | **$6,320.62** | **$173,440.00** | **$6,320.62** | **$0.00** |
| **Second Interim Fee Period (September 1, 2017 through January 31, 2018)** | | | | | | | |
| 03/19/2018 | 09/01/2017 - 01/31/2018 | $444,580.00 | $400,122.00 | $21,160.13 | $444,580.00 | $21,160.13 | $0.00 |
| **Total** | | **$444,580.00** | **$400,122.00** | **$21,160.13** | **$444,580.00** | **$21,160.13** | **$0.00** |
| **Third Interim Fee Period (February 1, 2018 through May 31, 2018)** | | | | | | | |
| 6/25/2018 | 02/01/2018 - 02/28/2018 | $93,937.50 | $84,543.75 | $1,172.10 | $93,937.50 | $1,172.10 | $0.00 |
| 6/25/2018 | 03/01/2018 - 03/31/2018 | $75,088.00 | $67,579.20 | $4,782.51 | $75,088.00 | $4,782.51 | $0.00 |

| 7/18/2018 | 04/01/2018 - 05/31/2018 | $125,095.00 | $112,585.50 | $6,097.48 | $125,095.00 | $6,097.48 | $0.00 |
|---|---|---|---|---|---|---|---|
| **Total** | | **$294,120.50** | **$264,708.45** | **$12,052.09** | **$294,120.50** | **$12,052.09** | **$0.00** |
| **Fourth Interim Fee Period (June 1, 2018 through September 30, 2018)** | | | | | | | |
| 8/27/2018 | 06/01/2018 - 06/30/2018 | $31,792.00 | $28,612.80 | $983.12 | $31,792.00 | $983.12 | $0.00 |
| 10/8/2018 | 07/01/2018 - 07/31/2018 | $55,587.50 | $50,028.75 | $6,831.08 | $55,587.50 | $6,831.08 | $0.00 |
| 11/16/2018 | 08/01/2018 - 09/30/2018 | $163,382.50 | $147,044.25 | $4,654.42 | $163,267.50 | $4,654.42 | $0.00 |
| **Total** | | **$250,762.00** | **$225,685.80** | **$12,468.62** | **$250,647.00** | **$12,468.62** | **$0.00** |
| **Fifth Interim Fee Period (October 1, 2018 through January 31, 2019)** | | | | | | | |
| 12/21/2018 | 10/01/2018 - 10/31/2018 | $43,871.50 | $39,484.35 | $1,109.10 | $43,871.50 | $1,109.10 | $0.00 |
| 1/22/2019 | 11/01/2018 - 11/30/2018 | $31,164.00 | $28,047.60 | $3,465.35 | $31,164.00 | $3,465.35 | $0.00 |
| 2/26/2019 | 12/01/2018 - 12/31/2018 | $73,432.50 | $66,089.25 | $1,046.62 | $73,432.50 | $1,046.62 | $0.00 |
| 3/15/2019 | 01/01/2019 - 01/31/2019 | $88,809.00 | $79,928.10 | $1,069.00 | $87,704.00 | $1,069.00 | $0.00 |
| **Total** | | **$237,277.00** | **$213,549.30** | **$6,690.07** | **$236,172.00** | **$6,690.07** | **$0.00** |
| **Sixth Interim Fee Period (February 1, 2019 through May 31, 2019)** | | | | | | | |
| 5/15/2019 | 02/01/2019 - 02/28/2019 | $93,967.00 | $84,570.30 | $4,332.02 | $92,930.00 | $4,332.02 | $0.00 |
| 6/4/2019 | 03/01/2019 - 03/31/2019 | $100,412.00 | $90,370.80 | $9,970.50 | $100,412.00 | $9,970.50 | $0.00 |
| 7/3/2019 | 04/01/2019 - 04/30/2019 | $143,421.00 | $129,078.90 | $1,046.31 | $141,534.00 | $1,046.31 | $0.00 |
| 7/15/2019 | 05/01/2019 - 05/31/2019 | $160,296.50 | $144,266.85 | $970.49 | $160,296.50 | $970.49 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total** | | $498,096.50 | $448,286.85 | $16,319.32 | $495,172.50 | $16,319.32 | $0.00 |
| **Seventh Interim Fee Period (June 1, 2019 through September 30, 2019)** | | | | | | | |
| 8/22/2019 | 06/01/2019 - 06/30/2019 | $184,904.50 | $166,414.05 | $4,880.90 | $166,414.05 | $4,880.90 | $18,490.45 |
| 9/27/2019 | 07/01/2019 - 07/31/2019 | $174,819.50 | $157,337.55 | $4,727.49 | $157,337.55 | $4,727.49 | $17,481.95 |
| 11/5/2019 | 08/01/2019 - 08/31/2019 | $142,114.00 | $127,902.60 | $892.94 | $127,902.60 | $892.94 | $14,211.40 |
| 11/14/2019 | 09/01/2019 - 09/30/2019 | $168,111.50 | $151,300.35 | $2,428.26 | $151,300.35 | $2,428.26 | $16,811.15 |
| **Total** | | **$669,949.50** | **$602,954.55** | **$12,929.59** | **$602,954.55** | **$12,929.59** | **$66,994.95** |
| **Eighth Interim Fee Period (October 1, 2019 through January 31, 2020)** | | | | | | | |
| 12/20/2019 | 10/01/2019 - 10/31/2019 | $190,159.00 | $171,143.10 | $6,048.82 | $171,143.10 | $6,048.82 | $19,015.90 |
| 1/10/2020 | 11/01/2019 - 11/30/2019 | $137,688.50 | $123,919.65 | $4,921.19 | $123,919.65 | $4,921.19 | $13,768.85 |
| 2/28/2020 | 12/01/2019 - 12/31/2019 | $108,319.50 | $97,487.55 | $269.24 | $97,487.55 | $269.24 | $10,831.95 |
| 3/12/2020 | 01/01/2020 - 01/31/2020 | $123,391.00 | $111,051.90 | $1,760.40 | $0.00 | $0.00 | $12,339.10 |
| **Total** | | **$559,558.00** | **$503,602.20** | **$12,999.65** | **$392,550.30** | **$11,239.25** | **$55,955.80** |

### PRIOR INTERIM FEE APPLICATIONS

| Period | | Requested | | Approved | |
|---|---|---|---|---|---|
| **Date [Docket No.]** | **Interim Fee Period ("IFP") Covered** | **Fees** | **Expenses** | **Fees** | **Expenses** |
| 12/15/2017 [Docket No. 2079] | 07/21/2017 - 08/31/2017 | $169,523.00 | $6,320.62 | $173,440.00 | $6,320.62 |
| 03/19/2018 [Docket No. 2757] | 09/01/2017 - 01/31/2018 | $444,580.00 | $21,160.13 | $444,580.00 | $21,160.13 |
| 07/16/2018 [Docket No. 3562] | 02/01/2018 - 05/31/2018 | $294,120.50 | $12,052.09 | $294,120.50 | $12,052.09 |
| 11/16/2018 [Docket No. 4329] | 06/01/2018 - 09/30/2018 | $250,762.00 | $12,468.62 | $250,647.00 | $12,468.62 |
| 03/18/2019 [Docket No. 5818] | 10/01/2018 - 01/31/2019 | $237,277.00 | $6,690.07 | $236,172.00 | $6,690.07 |
| 07/15/2019 [Docket No. 8011] | 02/01/2019 - 05/31/2019 | $498,096.50 | $16,319.32 | $495,172.50 | $16,319.32 |
| 11/15/2019 [Docket No. 9220] | 06/01/2019 - 09/30/2019 | $669,949.50 | $12,929.59 | $669,250.00 | $12,929.59 |
| **Total fees and expenses approved by interim orders to date:** | | | | **$2,563,382.00** | **$87,940.44** |

Number of professionals with time included in this application: <u>15</u>

Number of professionals billing fewer than 15 hours to the case in this application: <u>3</u>

If applicable, number of professionals in this application not included in a staffing plan approved by the client: <u>N/A</u>

If applicable, difference between fees budgeted and compensation sought for this period: <u>N/A</u>

Are any timekeeper's hourly rates higher than those charged and approved upon retention: <u>No</u>

**Hearing Date**: July 29, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: April 6, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------- x

| | |
|---|---|
| In re: | : |
| | : |
| THE FINANCIAL OVERSIGHT AND | : PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : Title III |
| | : |
| as representative of | : Case No. 17-BK-3283 (LTS) |
| | : |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | : (Jointly Administered) |
| | : |
| Debtors.[1] | : |

------------------------------------------------------------------------- x

## EIGHTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2019 THROUGH JANUARY 31, 2020

## TABLE OF CONTENTS

Preliminary Statement.................................................................................................4

Background ..................................................................................................................11

Compensation and Reimbursement Request ..............................................................15

Summary of Services ..................................................................................................18

       General (Matter ID: 396-00002).........................................................19
       PREPA (Matter ID: 396-00006)..........................................................23
       HTA (Matter ID: 396-00007) ..............................................................28
       ERS (Matter ID: 396-00008) ...............................................................28
       Other Adversary Proceedings (Matter ID: 396-00009) .......................30
       Fee Application (Matter ID: 396-00015)..............................................30

---

[1]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Commonwealth Claims Review (Matter ID: 396-00017) ....................................31
Avoidance Actions (Matter ID: 396-00018)..........................................................34

Attendance at Hearings...........................................................................................38

Report on Matters Jointly Pursued by Oversight Board and Committee.....................39

Actual and Necessary Disbursements.......................................................................41

Requested Compensation Should be Allowed...........................................................42

Notice......................................................................................................................43

Conclusion...............................................................................................................44

## <u>SUPPORTING DECLARATION, EXHIBITS AND SCHEDULE</u>

**Supporting Declaration of Juan J. Casillas-Ayala, Esq.**

**Exhibits**

A.  Customary and Comparable Compensation Disclosures with Fee Applications

B.  Summary of Timekeepers Included in this Application for Fee Period

C.  Budgets and Staffing Plans for Application Period

        C-1.    Budgets

        C-2.    Staffing Plans

D.  Summary of Compensation Requested by Project Category as Compared to Budget

        D-1.    Summary of Compensation Requested by Project Category as Compared to Budget

                     Further Breakdown of Compensation Requested by Project Category and by Matter

        D-2.    Summary of Expenses by Category

E.  Breakdown of Compensation and Expense Requested by Debtor

F.  List of Professionals by Matter

G.  Monthly Statements Covered in Application

**Schedule**

Proposed Order

**To the Honorable United States District Judge Laura Taylor Swain:**

Casillas, Santiago & Torres, LLC ("CST"), Local Counsel to the Official Committee of Unsecured Creditors (the "Committee"), for its eighth application (the "Application"), pursuant to sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA")[2], section 503(b) of Title 11, United States Code (the "Bankruptcy Code") as made applicable to these cases by Section 301(a) of PROMESA, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), for the interim allowance of compensation for professional services performed by CST for the period from October 1, 2019 through and including January 31, 2020 (the "Application Period"), and for reimbursement of its actual and necessary expenses incurred during the Application Period, respectfully represents:

## PRELIMINARY STATEMENT

1.      During the Application Period, CST continued to assist Paul Hastings in handling multiple matters that were of critical importance to the interests of the Debtors and their creditors. As with the prior fee period, CST's primary focus during the Application Period was its representation of the Committee in connection with the Committee's response to the motion of the Financial Oversight and Management Board (the "Oversight Board") seeking approval of PREPA's restructuring support agreement (the "PREPA RSA Motion"), which essentially contemplates PREPA bondholders receiving approximately $8.5 billion in non-recourse PREPA bonds with payments in excess of $20 billion over the next four decades. As part of said process, CST collaborated with Paul Hastings in the research and analysis of complex legal and factual

---

[2]      References to PROMESA are references to 48 U.S.C. §§2101 *et. seq.*

4

issues, assist in the discovery process and in litigation of the pretrial disputes. Likewise, CST was in charge of conducting a claim assessment of a significant amount of proofs of claims for PREPA and Commonwealth.

2.     As discussed in our fee application for the prior fee period and in more detail below, the Committee believes that the PREPA RSA is seriously flawed for a myriad of reasons including, among other things, that it would pave the way for holders of non-recourse bond claims to receive eventual payments of more than $20 billion (in nominal dollars) over the course of the next 47 years (and possibly longer), even though such bonds were secured by only $8.8 million in collateral on PREPA's petition date. Additionally, it is flawed because PREPA bondholders would receive allowed administrative expense claims of hundreds of millions of dollars of post-petition interest, even though they are undersecured. Accordingly, CST collaborated with Paul Hastings in the submission of the Committee's 135-page opposition to the PREPA RSA Motion (the "<u>PREPA RSA Objection</u>"), which comprehensively sets forth the Committee's numerous objections to the PREPA RSA Motion. The PREPA RSA Objection is currently scheduled to be heard on June 17, 2020. Subsequent to the submission of the objection, CST collaborated in the efforts continued assisting in anticipation of the hearing on the PREPA RSA Motion, reviewed documents related to the proposed transactions, and analyzed numerous related legal issues.

3.     During the Application Period, CST assisted the Committee with the Oversight Board's proposed plan of adjustment (the "<u>Initial Plan</u>") and related disclosure statement (the "<u>Initial Disclosure Statement</u>", both of which were filed on September 27, 2019. See Dockets No. 8765 & 8766. The Initial Plan raised a number of important issues for the Committee and its constituents including the proposal of a dismal estimated recovery of "up to 1.8%") for the general unsecured creditors. Cf. Initial Disclosure Statement at 13. Those proposed slim recoveries stood

in sharp contrast to the substantial recoveries contemplated for GO and PBA bondholders. Following the filing of the Initial Plan, CST collaborated in part of the analysis of various issues in connection with a potential challenge to confirmation of the Initial Plan.

4.   Similarly, CST provided assistance to Paul Hastings during the Application Period to advancing the Committee's challenges to approximately $10 billion in GO and PBA bond claims against the Commonwealth, which issues are entangled in local Puerto Rico law.[3] By way of background, in June 2019 the Oversight Board filed a motion seeking to stay all litigation related to the Committees' challenges to the validity and secured status of certain GO and PBA bonds.[4] In the ensuing months, the Committee participated in the mediation of the sequencing of such challenges through litigation and the related scheduling proposals. Certain of the Committee's proposals were reflected in the Mediation Team's November 27, 2019 interim report [Docket No. 9365] (the "Interim Report"), which, among other things, recommended briefing and hearing schedules for: (i) motions to dismiss the pending challenges to the claims and secured status asserted by holders and/or insurers of certain bonds and obligations issued or guaranteed by the Commonwealth (collectively, the "GO Bonds" and such challenges, collectively, the "GO Claim Challenges"); (ii) motions to dismiss newly filed adversary proceedings (the "Revenue Bond Adversary Proceedings") challenging the claims and secured status asserted by holders and/or insurers of certain revenue bonds (the "Revenue Bonds") issued by HTA, the Puerto Rico Infrastructure Financing Authority ("PRIFA"), and the Puerto Rico Convention Center District Authority ("CCDA"); and (iii) motions for relief from the automatic stay to be filed by holders

---

[3]   That litigation was recently stayed by order of the Court on March 10, 2020 and subsequently extended in July 24, 2019 (Interim Stay Order) but in mediation the sequencing of the stay was addressed.

[4]   The Oversight Board is co-objector and/or co-plaintiff on some of these challenges.

and/or insurers of Revenue Bonds (such motion practice, together with the motion to dismiss practice in the Revenue Bond Adversary Proceedings, the "Revenue Bond Litigation"). The Court entered the interim scheduling orders for the GO Claim Challenges [Docket No. 9619] (the "Interim Case Management Order") and Revenue Bond Litigation [Docket No. 9620] (the "Interim Revenue Bonds Order") on December 19, 2019.

5.      In accordance with the above referenced scheduling orders, CST collaborated with Paul Hastings in the preparation of various pleadings, including the Committee's objection to certain additional GO Bond claims, the Committee's limited joinders in the Oversight Board's oppositions to motions for relief from stay filed by certain holders and/or insurers of Revenue Bonds, and the Committee's motions to intervene in the Revenue Bond Adversary Proceedings. In addition, in one of the Revenue Bond Adversary Proceedings, the Committee was appointed co-plaintiff with the Oversight Board (as to certain counts), and, accordingly, the related complaint was filed on January 16, 2020.

6.      Also, during the Application Period, CST collaborated in the Committee's objection to the purported priority of GO Bond claims, in which the Committee objected to the priority of over $18 billion of GO Bonds on the basis that any asserted priority under Puerto Rico's Constitution is preempted by Title III of PROMESA. Although said objection was filed shortly after the end of the Application Period on February 3, 2020, the bulk of the work was done during the Application Period. Similarly, CST assisted the Committee in connection with the Committee's and other parties' challenges to ERS bond claims (the "ERS Bond Challenges"), including the additional objections to ERS bond claims pursued by the Committee.

7.      Additionally, in its pursue of efficiencies, CST, the Committee's local counsel, represents the Committee with respect to the "garden-variety" avoidance actions initiated against

over three (300) vendors of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority (HTA) and the Employee Retirement System (ERS) [Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and additional adversary proceedings commenced with respect to PREPA [Adv. Proc. Nos. 19-380 to 19-387] seeking to avoid certain fraudulent transfers made to fuel oil suppliers of PREPA and related parties.

8.      CST is counsel for the UCC and serves as primary attorney point of contact in the Informal Resolution Process established by the Oversight Board to resolve the Garden Variety Avoidance Actions without necessarily having to incur in litigation costs and expenses. In connection with the Informal Resolution Process, CST has worked closely with DiCicco Gulman and Company LLC ("DGC"), the financial advisory firm to the Special Claims Committee, in the gathering of information and interfacing with over 170 vendors (assigned to CST) and their counsel on a daily basis and analyzing select documents and data submitted by vendors and counsel, while simultaneously responding to related communications and requests from vendors and their counsel. Additionally, CST has collaborated and worked closely with Brown Rudnick, counsel for the Special Claims Committee, with analysis of local law matters pertaining to the Avoidance Actions, and review of omnibus motions related to the Informal Resolution Process, as requested. Paul Hastings and Zolfo Cooper provide limited assistance in matters related to the analysis of the data submitted by vendors as part of the Informal Resolution Process in order to recommend whether to pursue or dismiss the multiple garden variety avoidance actions as part of the Informal Resolution Process.

9.      CST has continued to perform these services in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. For example, the work performed by CST was carefully assigned to appropriate professionals or

paraprofessionals according to the experience and level of expertise required for each particular task. Moreover, whenever possible, CST sought to minimize the costs of CST's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments and by delegating, to the extent practicable, questions of Puerto Rico law to local counsel. In addition, a small core group of CST attorneys was utilized for the vast majority of the work in these Title III cases to minimize the costs of intra-CST communication and education about the cases.

10.     Notably, just one CST attorney attended the various hearings held during the Application Period, thereby minimizing the time billed on these hearings. Likewise, generally, CST professionals do not travel for Court appearances outside of PR only though the remote video-conference service in San Juan.

11.     In addition, as further detailed below, CST along with Paul Hastings has taken numerous steps to provide services in the most efficient manner possible in connection with the adversary proceedings in which the Committee is acting as co-plaintiff with the Oversight Board or the Special Claims Committee. For example, the co-plaintiffs have sought, and obtained, temporary stays of numerous of these adversary proceedings, while the Committee is represented in the garden-variety avoidance actions by its local counsel, and in certain other litigation by special litigation counsel, Genovese, Joblove & Battista, P.A. ("GJB"). As discussed below, the Committee filed this motion because (i) it was concerned that the Oversight Board would be vulnerable to having its lawsuits later declared void based on the First Circuit's *de facto* officer ruling in its *Aurelius* decision; and (ii) the Oversight Board had taken the position that the Lien Challenge would not be jointly prosecuted by the Oversight Board and Committee, but instead by the Oversight Board alone (and, later, by the Oversight Board and AAFAF).

12.      CST respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these Title III cases. The results obtained to date have benefited not only the Committee but also the Debtors and their creditors. Accordingly, in light of the nature and complexity of these Title III cases, CST's charges for professional services performed and expenses incurred are reasonable under applicable standards. For all these reasons, CST respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

13.      This Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines"). To the extent necessary, CST requests a waiver for cause shown of any requirements not met by this Application.[5]

14.      In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

- Exhibit A contains disclosures regarding "customary and comparable compensation."

- Exhibit B contains a summary of CST's timekeepers included in this Application.

- Exhibit C-1 contains the budgets for CST's services during the application period

- Exhibit C-2 contains the staffing plans for CST's services during the application period

---

[5]      The Committee and CST reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

- <u>Exhibit D-1</u> contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the application period, and (b) a further breakdown of the compensation requested by project category and matter number.

- <u>Exhibit D-2</u> contains a summary of the expenses requested by project. An itemized schedule of all such expenses is included in CST's monthly statements.

- <u>Exhibit E</u> contains a breakdown of compensation and expenses requested by Debtor.

- <u>Exhibit F</u> contains a list of the professionals providing services during the application period by matter.

- <u>Exhibit G</u> includes the monthly fee statements covered in this application. Attached is copy of the monthly statements for CST's services during the Application Period, which include detailed time records and narrative descriptions of the services rendered by each timekeeper.

- <u>Schedule 1</u> includes the proposed order approving this application.

## BACKGROUND

15.    On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304 (a) of PROMESA (the "<u>Commonwealth Title III Case</u>"). Thereafter, the Oversight Board commenced a title III case for each of COFINA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS Title III Case</u>"), the Puerto Rico Highways and Transportation Authority ("<u>HTA Title III Case</u>"), and the Puerto Rico Electric Power Authority ("<u>PREPA Title III Case</u>") (and together with the Commonwealth Title III Case, the "<u>Title III Cases</u>").[6] By orders dated June 29, 2017 [Docket No. 537] and October 6, 2017 [Docket No. 1417], the Court approved the joint administration of the Title III Cases.

---

[6]    Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III Case.

15.     On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico (the "U.S. Trustee") filed a *Notice Appointing Creditors Committee for Unsecured Creditors* [Docket No. 338]. On July 21, 2017, the Committee selected CST as local counsel to the Committee.

16.     On August 4, 2017, the Committee filed an application to retain and employ CST, effective July 21, 2017 [Docket No. 884] (the "Retention Application"). By order of this Court entered October 6, 2017 [Docket No. 1414] (the "Retention Order"), incorporated herein by this reference, CST's retention as Local Counsel to the Committee was approved effective as of July 21, 2017.

17.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the Interim Compensation Order").[7]

18.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case. CST's retention extends to the representation of the Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.

19.     The Retention Order authorized CST to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to Sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct. The Retention Order further provides that "pursuant to Bankruptcy Code section 503(b)(1), made

---

[7]     The Interim Compensation Order was amended on November 8, 2017, to reflect certain changes requested by the Fee Examiner.

applicable by PROMESA Section 301(a), the fees and expenses of CST under this Order shall be an administrative expense." In addition, as provided in the Retention Order, the Oversight Board has consented to the Debtors' payment of CST allowed fees and expenses.

20.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing A Fee Examiner and Related Relief* (the "Fee Examiner Order") [Docket No. 1416]. The Court appointed Brady Williamson as the Fee Examiner in the Title III Cases.

21.     On December 15, 2017, CST filed its first interim fee application with respect to the period from July 21, 2017 through August 31, 2017 [Docket No. 2079] (the "First Interim Fee Application"). In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the First Interim Fee Application. On March 7, 2018, the court approved the First Interim Fee Application.

22.     On March 19, 2018, CST filed its second interim fee application with respect to the period from September 1, 2017 through January 31, 2018 [Docket No. 2757] (the "Second Interim Fee Application"). In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Second Interim Fee Application. On March 7, 2018, the court approved the Second Interim Fee Application.

23.     On June 6, 2018, the Court enter the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the Second Interim Compensation Order").

24.     On July 16, 2018, CST filed its third interim fee application, covering the period from February 1, 2018 through May 31, 2018 [Docket No. 3562]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with

the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application. On March 14, 2019, the Court approved the Third Interim Fee Application.

25.     On November 16, 2018, CST filed its fourth interim fee application, covering the period from June 1, 2018 through September 30, 2018 [Docket No. 4329]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fourth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[8] On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

26.     On March 18, 2019, CST filed its fifth interim fee application, covering the period from October 1, 2018 through January 31, 2019 [Docket No. 5818]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fifth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[9] On June 26, 2019, the Court approved the Fifth Interim Fee Application, with the agreed-upon adjustments.

27.     On July 15, 2019, CST filed its sixth interim fee application, covering the period from February 1, 2019 through May 31, 2019 [Docket No. 8011]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Sixth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain

---

[8]     The agreed-upon adjustment consisted of a fee reduction in the amount of $115.00.

[9]     The agreed-upon adjustment consisted of a fee reduction in the amount of $1,105.00.

minimal adjustments in its requested fees and expenses.[10] On October 29, 2019, the Court approved the Sixth Interim Fee Application, with the agreed-upon adjustments.

28. On November 15, 2019, CST filed its seventh interim fee application, covering the period from June 1, 2019 through September 30, 2019 [Docket No. 9220]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Seventh Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[11] On March 6, 2020, the Court approved the Seventh Interim Fee Application, with the agreed-upon adjustments.

29. This is CST's eighth interim fee application, covering the period from October 1, 2019 through January 31, 2020. All services for which compensation is requested were performed for or on behalf of the Committee.

## COMPENSATION AND REIMBURSEMENT REQUEST

30. By this Application, CST seeks from the Debtors (a) compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $559,558.00; and (b) expense reimbursements in the aggregate amount of $12,999.65. These amounts are allocated among the Commonwealth Title III Case, the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case, as follows:

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $404,357.50 | $9,239.55 | $413,597.05 |
| PREPA Title III Case | $102,441.50 | $3,446.80 | $105,888.30 |
| HTA Title III Case | $3,852.00 | $0.00 | $3,852.00 |

---

[10] The agreed-upon adjustment consisted of a fee reduction in the amount of $2,924.00.
[11] The agreed-upon adjustment consisted of a fee reduction in the amount of $699.50.

| | | | |
|---|---|---|---|
| ERS Title III Case | $48,907.00 | $313.30 | $49,220.30 |
| **Total** | **$559,558.00** | **$12,999.65** | **$572,557.65** |

30.     The Committee has approved the amounts requested by CST for services performed and expenses incurred in each of the monthly statements submitted that were or are hereby being submitted concurrently to, among others, the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee, during the Application Period. All services for which compensation is requested herein were performed for or on behalf of the Committee. Moreover, as detailed on Exhibit D hereto, fees incurred by CST during the Application Period were well below the monthly budgets.

31.     As of today, CST has not been paid any amounts pertaining to its invoices for January 2020, for which it requests payment pursuant to this Fee Application.

32.     Also, to date, CST has received payments totaling $403,789.55 for services rendered during the Application Period excluding January 2020, which amount consists of $392,550.30 (representing 90% of the fees for services invoiced during the period of October 1, 2019 through January 31, 2020) and $11,239.25 (representing 100% of expenses invoiced for the same period). As of the date of this Application, the amount of $168,768.10 remains unpaid.

33.     Other than payments made in accordance with the Interim Compensation Order, CST has received no payments and no promises of payment from any source of services rendered during the Application Period.

34.     By this Application, CST requests payment of all outstanding fees and expenses for services rendered during the Application Period.

35.     There is no agreement or understanding between CST and any other person other than the attorneys, employees, and staff of CST, for the sharing of compensation to be received for services rendered in these cases.

36.     CST maintains computerized records, in the form of monthly statements, of the time spent by all of CST's attorneys and paraprofessionals in connection with its representation of the Committee. The monthly statements are in the same form regularly used by CST to bill its clients for services rendered, and include the date that the services were rendered, a detailed, contemporaneous narrative description of the services provided, the amount of time spent for each service, and the designation of the professional who performed the service.

37.     The fees charged by CST in the Title III Cases are billed in accordance with its existing billing rates and procedures in effect during the Application Period. The rates CST charges for the services rendered by its professionals and paraprofessionals in the Title III Cases are comparable to the rates CST charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters. Moreover, when CST's professionals and paraprofessionals work on non-bankruptcy matters, the firm generally charges their standard rate. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in the Puerto Rico legal market.

38.     CST's rates are set at a level designed to fairly compensate CST for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expense. CST operates in the Puerto Rico legal services market in which rates are driven by multiple factors relating to the individual lawyer, their area of specialization, the firm's expertise, performance and reputation, the nature of the work involved, and other factors. Accordingly, CST set its rates for attorneys and paraprofessionals within the firm by reference to market information and market adjustments by firms considered to be industry peers. Based on this and the reviews of contemporaneous time records and fee applications filed in other cases, CST endeavors to set the

17

hourly rates for its attorneys and paraprofessionals at levels comparable to those of its principal competitor firms.

39.     CST's professional services during the Application Period required an aggregate expenditure of 2,300.40 recorded hours by CST's attorneys and paraprofessionals, broken down as follows: Partners (1,428.60 hours), Counsels (77.90 hours), Junior Partners (182.70 hours), Senior Associates (324.70 hours), Associates (245.60 hours), and Paraprofessionals (40.90 hours). During the Application Period, CST's billing rates for attorneys rendering services in this matter ranged from $170.00 to $270.00 per hour.

40.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed before the preparation of this Application, or CST has for any other reason not sought compensation or reimbursement with respect to such services or expenses, CST reserves the right to request additional compensation for such services, and reimbursement of such expenses, in a supplemental or future application.

### SUMMARY OF SERVICES

41.     During the Application Period, CST assisted and advised the Committee on a regular basis regarding legal matters relating to the restructuring of the Debtors, including related adversary proceedings, and all other matters arising in the performance of the Committee's duties. In addition, CST has prepared various motions, applications, proposed orders, and other pleadings submitted to the Court for consideration, and has performed the necessary professional services that are described below and in the monthly statements attached hereto as <u>Exhibit F</u>.[12] For ease of reference and transparency purposes, CST created several matter numbers for its

---

[12]     The description of services in this Application is limited to those matters in which CST provided 5 or more hours of service during the Application Period.

representation of the Committee. The matter numbers are divided by Debtor and/or large tasks

the Committee undertook, as follows:

| Matter ID | Matter Name |
|-----------|-------------|
| 396-00002 | General |
| 396-00003 | COFINA Dispute Analysis |
| 396-00004 | Communications w/ Creditors/ Website (other than Committee Members) |
| 396-00005 | Plan Fiscal Analysis |
| 396-00006 | PREPA |
| 396-00007 | HTA |
| 396-00008 | ERS |
| 396-00009 | Other Adversary Proceedings |
| 396-00010 | Mediation |
| 396-00011 | GO Bond Debt Issues |
| 396-00012 | Document Review |
| 396-00013 | GDB |
| 396-00014 | PBAPR |
| 396-00015 | Fee Application |
| 396-00016 | Analysis of Kobre & Kim's Puerto Rico Debts Reports |
| 396-00017 | Commonwealth Claims Review |
| 396-00018 | Avoidance Actions |

**I.     General (Matter ID: 396-00002)**

(a)     <u>Case Administration (Task Code: B110)</u>

Fees:     $5,085.00     Total Hours:   22.00

42.     During the Application Period, CST, along with Paul Hastings, continued to advise

the Committee on general case administration. In order to efficiently track deadlines, organize

documents, and manage work streams, CST maintained a global task list and case calendar,

including a tracking chart for all adversary proceedings and non-Title III litigation. To minimize

duplication of services, CST developed procedures for allocating responsibilities among various

CST team members.

43.     In addition, during the Application Period, CST continued to implement interim and long-term strategies to maximize recoveries for general unsecured creditors and held internal team conference calls and occasional meetings to discuss the status of the Title III Cases and to manage work streams.

44.     Furthermore, along with Paul Hastings, CST worked to execute a variety of other tasks related to case administration including, among other things, translations, requests for transcripts of court proceedings, creation of information packages for meetings and public dissemination, research and analysis of local law, and provide status reports of current events related to the legal issues litigated.

(b)     Pleading Reviews (Task Code: B113)

Fees:      $37,946.50     Total Hours:   154.70

45.     During the Application Period, CST reviewed various pleadings to be adequately prepared to provide services to the Committee. This in compliance with the applicable Rules of Professional Conduct. In doing so, CST took into account one of the most crucial issues which was the filing, on September 27, 2019, of the Oversight Board's Initial Plan and Initial Disclosure Statement with respect to the Commonwealth, ERS, and PBA. The filing of the Initial Plan demanded Paul Hastings' diligent attention so that it could advise the Committee with respect to the Initial Plan, which, among other things, contemplated very favorable treatment to holders of pre-2012 GO and PBA bonds (including 2011 GO bonds and PBA bonds subject to the Committee's pending claim objections) while providing dismal recoveries to general unsecured creditors of only "up to 1.8%."[13] As part of its analysis of the Initial Plan, Paul Hastings analyzed

---

[13]   *See e.g.*, Initial Disclosure Statement at 12-13 (describing creditor recoveries pursuant to the plan contemplated by the Initial Plan).

numerous plan issues relevant to unsecured creditors, including among others the classification of claims and unfair discrimination issues.

(c)   Meeting of and Communications with Creditors (Task Code: B150)

Fees:        $10,510.00    Total Hours:   41.60

46.     During the Application Period, CST prepared various documents to keep the Committee apprised of relevant developments in the Title III Cases, related adversary proceedings, mediation process, and current events – local and mainland, that have an effect on the Title III proceedings. Also, CST participated in various telephone conferences and communications with the Committee for the same purposes.

(d)   Court Hearings (Task Code: B155)

Fees:        $4,100.50     Total Hours:   16.80

47.     During the Application Period, CST attended as local counsel to all hearings that Paul Hastings attended. To minimize costs, only one CST attorney appeared in the hearings accompanying Paul Hastings' attorneys. In certain instances, another CST attorney listened-in to parts of the hearing.

48.     In preparation for these hearings, CST also reviewed relevant issues raised in the parties' pleadings and prepared materials for the hearings.

(e)   Other Contested Matters (Task Code: B190)

Fees:        $21,641.50    Total Hours:   101.80

49.     During the Application Period, CST aided Paul Hastings conducting research on various first-impression issues of Puerto Rico Law. Furthermore, CST assisted Paul Hastings in the analysis and drafting of contesting pleadings filed in connection with the wide variety of matters in these Title III proceedings: proposed plans of adjustment, cash restriction analysis, special litigation procedures, liquidity, matters before the appellate courts of the United States,

validity of contracts, stays, debt prioritization and Constitutional debt limit, alternative dispute resolution and mediation procedures, challenged unsecured claims, and discovery objections. CST assisted Paul Hastings in the legal analysis associated to these contested issues, and our extensive research was instrumental in developing the Committee's strategy for these matters.

50.     In addition to the above, and as more fully discussed below, during the Application Period, CST assisted Paul Hastings in the handling of the Committee's response to the motions for relief from stay filed by certain holders and/or insurers of Revenue Bonds, analyzed proofs of claim, reviewed omnibus claim objections, addressed the Oversight Board's renewed proposal for an ADR process and its proposal for administrative claims reconciliation procedures, and handled other matters related to the Commonwealth Title III Case.

(f)     General Litigation (Task Code: B191)

Fees:       $25,828.00    Total Hours:   109.50

51.     During the Application Period, CST aided Paul Hastings in various tasks, such as research and analysis of legal issues in connection with the proposed plan of adjustment, contract validity, bidding process, claim assessment, objections and procedures, discovery disputes and negotiations of related stipulations, alternative dispute resolution processes, and pre and post-petition claims, in addition to providing specialized insight into the local issues that have an effect on the litigation.

52.     Moreover, CST participated in communications and discussed strategy with Paul Hastings and the Committee's Special Litigation Counsel, GJB, for the litigations against a number of financial institutions, where CST serves as co-counsel.

(g)     Restructurings (Task Code: B420)

Fees:       $1,799.00     Total Hours:   6.70

53.     During the Application Period, the Oversight Board proposed their first Plan of Adjustment for the Commonwealth. During this time, CST provided specialized insight and support to Committee members and other unsecured creditors on the particulars of the proposed plan that have an effect on creditors' interests and outcome in these Title III litigations. CST's participation in meetings and outreach efforts was instrumental in the development of the Committee's strategy.

## II.     PREPA (Matter ID 396-00006)

54.     For the Fee Application Period, the litigation of PREPA's restructuring support agreement ("PREPA RSA") is still the most important matter in PREPA's Title III case. PREPA faces a strong comprehensive opposition from the Committee, beginning with arguing that the government parties failed to exercise due care while entering into the proposed agreement, followed by countering the illusory alleged benefits to Debtor and creditors, including the in-depth analysis of the illegal terms and conditions encompassed in the agreement that are not in the best interest of Debtor. The PREPA RSA is an unprecedented and highly complex transaction that raises a multitude of legal and factual issues requiring extensive research and analysis. This issue is paramount in the eventual resolution of this Title III case and for Puerto Rico.

55.     During the Application Period, as it did during the Seventh Interim Application Period, CST continued to assist the Committee's response to the PREPA RSA Motion—in addition to its regular duties representing the Committee in connection with the PREPA Title III Case.[14] As part of its efforts, CST provided back up to Paul Hastings as it engaged in intensive legal research and analysis, discovery, and discovery-related litigation related to the Committee's 135-page PREPA RSA Objection filed on October 30, 2019.

---

[14]     *See* Docket No. 1235 in Case No. 17-4780 (LTS).

23

56.     As further explained in the PREPA RSA Objection, the Committee strongly opposes the PREPA RSA Motion because the Committee believes the settlement embodied in the RSA is an improvident transaction for PREPA and its unsecured creditors that is far too generous to bondholders given the weakness of bondholders' legal entitlements. Most notably, as detailed in the PREPA RSA Objection, the $8.5 billion in PREPA bonds were secured only by approximately $8.8 million of collateral, as of the PREPA petition date, and, moreover, are not entitled to any unsecured deficiency claim, given that they are non-recourse bonds. Nevertheless, the RSA provides PREPA bondholders with consideration allowing them to eventually recover 86% of the face amount of their claims (and, under certain conditions, even greater than 90%). The Committee also objects to the PREPA RSA Motion for a number of additional reasons, including that:

- the various benefits alleged to flow from the RSA, such as confirmation of PREPA's plan, PREPA's transformation/privatization, and improved macroeconomic conditions for PREPA and Puerto Rico, are so speculative as to be illusory;

- the proposed settlement is not in the interests of PREPA's creditors, as it was the result of a one-sided negotiation process from which the Committee and other non-bondholder creditors were excluded, it appears to impermissibly restrict PREPA's ability to pay other, non-bondholder creditors, and no creditors or other parties in interest that are not bondholders support the proposed settlement;

- the RSA constitutes an impermissible *sub rosa* plan that dictates the contents of PREPA's Title III plan of adjustment without providing the various protections for creditors, including rights to receive certain disclosures and to vote on confirmation, that are required as part of the plan process; and

- the proposed settlement contains a number of terms and conditions that are illegal and/or not in PREPA's best interests, such as (a) the allowance of administrative expense claims of hundreds of millions of dollars of post-petition interest for the PREPA bondholders supporting the PREPA RSA, even though, they are undersecured, (b) waiver and support fees for such supporting holders in the amount of approximately $151 million, and

(c) the absence of a "fiduciary out" provision that would allow the Oversight Board, AAFAF, and PREPA (collectively, the "Government Parties") to terminate the RSA if they determine it is detrimental to PREPA.

57.     As discussed further in the Seventh Interim Fee Application, CST was duty bound, as counsel to the Committee, to engage in a comprehensive and urgent effort to litigate the PREPA RSA Motion. This approach was necessary because of the importance of the PREPA RSA Motion and the binding effect of the RSA following an eventual approval by the Court, as well as the complexity of the issues raised by the RSA. As part of this litigation, it was also critical to efficiently support Paul Hastings in its discovery efforts related to the eventual challenge to the PREPA RSA Motion by the Government Parties, and file pleadings in connection with issues related to evidence, discovery, and other matters relevant to the PREPA RSA litigation that arose during the Application Period. Thus, during the Application Period, in addition to finalizing and filing the PREPA RSA Objection, CST assisted Paul Hastings in its extensive discovery efforts, deposing numerous key witnesses and reviewing voluminous documentation. Similarly, CST assisted, among other pleadings, in the reply in support of the Committee's objection to Magistrate Judge Dein's order granting a protective order with respect to the deposition of José Ortiz, an agreed-upon protective order in connection with deposing Christian Sobrino, a motion to strike certain opinion testimony of Frederic Chapados, as well as related replies and certain other procedural pleadings. Notably, all this work was necessary given the volume and complexity of the materials, and such work remained urgent given constantly shifting deadlines. On November 1, 2019 the hearing was set for January 14, 2020, *see* Case No. 17-4780, Docket No. 1716; on December 17, 2019, the January 14, 2020 deadline hearing date was vacated, *see* Case No. 17-

4780, Docket No. 1834; and on January 7, 2020 the hearing date was set for March 31, 2020, *see* Case No. 17-4780, Docket No. 1858.[15]

58.     In addition to opposing the PREPA RSA directly, CST collaborated in other actions to protect the interests of PREPA's unsecured creditors and the rights of the Committee. For example, the Committee filed an objection to the proof of claim filed by the PREPA bond trustee and related pleadings dealing with standing and timing issues in connection with that claim objection, as well as filed a notice of appeal of the order terminating that objection in order to preserve the Committee's appellate rights.

59.     During this application period, CST continued to support the lead taken by Paul Hastings attorneys during the general litigation and discovery-related litigation supporting the Committee's objection.

(a)     Case Administration (Task Code: B110)

Fees:       $852.00       Total Hours:   5.30

60.     CST assisted Paul Hastings attorneys with the translations of various documents required for the analysis of the many legal issues contested in this litigation. CST also provided support with the logistics involved in the discovery proceedings and general litigation of the proceedings. Furthermore, CST provided intelligence data and status reports as to local events related to the litigation.

(b)     Pleadings Review (Task Code: B113)

Fees:       $25,222.00       Total Hours:   96.60

---

[15]   This hearing date was eventually moved to June 17, 2020 per an order entered on February 18, 2020. *See* Case No. 17-4780, Docket No. 1914.

61.     During the Application Period, CST reviewed a n d  a n a l y z e d  various pleadings to be adequately prepared to provide a comprehensive legal analysis of the various matters litigated and to establish related strategy with Paul Hastings attorneys. This in compliance with the applicable Rules of Professional Conduct.

(c)     Other Contested Matters (Task Code: B190)

        Fees:       $15,161.00    Total Hours:   58.80

62.     During the Application Period, CST continued being heavily involved in the litigious discovery matters of the proceeding; specifically, contentions to the discovery requests and procedural matters. CST further assisted Paul Hastings attorneys with the legal analysis of local caselaw and laws paramount to the Committee's position on the PREPA RSA. The claim assessment and analysis thereof CST engaged on provided further support to the Committee's strategy.

63.     Furthermore, CST continued collaborating with GJB in the adversary proceedings related to lien challenges, and those against the fuel line lenders. CST's collaboration included the legal analysis and translations of local law and caselaw, in addition to providing feedback on the current local events relevant to these litigations.

(d)     General Litigation (Task Code: B191)

        Fees:       $53,465.50    Total Hours:   200.10

64.     CST was heavily involved in the litigious discovery connected to PREPA's 9019 Motion. Particularly, CST assisted reviewing documents propounded during discovery procedures, and provided analysis paramount in the establishment of the Committee's position. The hands-on involvement included procurement of statements, service of subpoenas to witnesses, translation of some of the documents produced, conducted legal research and prepared the corresponding

memoranda. Some of these efforts were also implemented as part of the objection litigation to certain claims asserted against PREPA.

66. Furthermore, CST continued collaborating with GJB in the adversary proceedings related to lien challenges, and those against the fuel line lenders, reviewing documents and providing legal analysis to assist in the establishment of strategy.

(e)   Restructurings (Task Code: B420)

Fees:      $6,796.00      Total Hours:   26.60

66. During the Application Period, CST assisted Paul Hastings in the analysis of the executed PREPA RSA, reviewed additional materials obtained during the 9019 Motion-related discovery, in order to advise the Committee regarding key terms of the deal, researching the relevant complex legal issues, and the effects on the Committee's interests. Furthermore, CST provided specialized insight into local matters that influence the litigation. This analysis was instrumental in the development of the Committee's strategy for its objection to the RSA.

**III.   HTA (Matter ID: 396-00007)**

(a)   Pleadings Review (Task Code: B113)

Fees:      $2,475.00      Total Hours:   9.50

67. During the Application Period, during the application period, CST continued to represent the Committee in connection with HTA by, among other things, working with the Oversight Board to file, as co-plaintiff, the Revenue Bond Adversary Proceeding No. 20-007, challenging the claims of certain holders and/or insurers of Revenue Bonds against HTA, and reviewing related pleadings.

**IV.   ERS (Matter ID: 396-00008)**

68. During the last Application Period, CST and Paul Hastings worked closely with counsel for the Retiree Committee, the Oversight Board, AAFAF, the Special Claims Committee and certain ERS bondholder groups, in the successful formulation of procedures to administer the ERS Claim Objection Procedures litigation. Thus, during the Application Period, CST continued assisting Paul Hastings in connection with the Committee's Omnibus Objection to the claims asserted by certain ERS bondholders and provided support in the adversary proceedings related to the main litigation. Furthermore, CST assisted Paul Hastings in the analysis and strategizing in connection to the renewed attempts of appointment of a trustee engaged by certain secured creditors, and with certain discovery litigation related to pension funds. Finally, CST collaborated in exploring the potential retention of an expert witness and the filling of the Committee's additional objection to ERS bonds on non-*ultra vires* grounds including the analysis of a number of legal issues related thereto.

(a)   Pleadings Review (Task Code: B113)

Fees:   $11,923.00   Total Hours:   46.90

69. During the Application Period, CST reviewed various pleadings to be adequately prepared to provide services to the Committee and assist Paul Hastings in its representation of the Committee. In particular, CST reviewed and analyzed numerous pleadings to be adequately prepared and provide a comprehensive legal analysis of the various matters litigated. This in compliance with the applicable Rules of Professional Conduct.

(b)   Avoidance Action (Task Code: B180)

Fees:   $2,331.00   Total Hours:   9.80

70. CST's role also included the research and analysis of certain issues pertaining to local law to assist Paul Hastings in the related strategy.

(c)      Other Contested Matters (Task Code: B190)

Fees:      $15,641.00   Total Hours:   59.30

71.      During the Fee Application, CST attorneys assisted Paul Hastings in the legal analysis and drafting of contesting pleadings filed in connection with bond issuance, the continued ERS Claim Objection litigation and related legal issues on aspects of local law, government contracting, and debt prioritization. CST's extensive research was instrumental in developing the Committee's strategy for these matters.

(d)      General Litigation (Task Code: B191)

Fees:      $17,376.00   Total Hours:   65.50

72.      CST worked with Paul Hastings and GJB in the ERS-related clawback actions initiated in the last application period, and the ensued counterclaims. CST provided legal analysis of local law and case law, reviewed documents produced during discovery, provided translations, assisted in the responses to propounded discovery, and engaged in expert discovery efforts. Some of these endeavors were also implemented in the preparation of further objections to claims by certain ERS bondholders.

**V.      Other Adversary Proceedings (Matter ID: 396-00009)**

(a)      Other Contested Matters (Task Code: B190)

Fees:      $2,101.00     Total Hours:   10.10

73.      During the Application Period, CST also assisted Paul Hastings by monitoring the progress of various local State cases in various forums and advising the Committee as appropriate.

**VI.      Fee Application (Matter ID: 396-00015)**

(a)      Fee / Employment Applications (Task Code: B160)

Fees:      $6,551.00              Total Hours:   32.30

74.     Pursuant to the Fee Examiner's request, CST has established a matter to keep track of the time incurred per the Fee Examiner's requests. The time spent in the Application Period pertains to the time spent in compliance with the Fee Examiner's requests including communications with the examiner, and the time it took to prepare the Seventh Interim Application. During the Application Period, CST underwent staffing changes that prompted a rate adjustment. Time spent related to these efforts was also included in this matter.

(b)     Budgeting (Task Code: B161)

Fees:       $2,052.00     Total Hours:   7.60

75.     During the Application Period, CST prepared budgets and staffing plans pursuant to Fee Examiner's request and communicated with the Committee and the Examiner regarding this matter.

## VII.  Commonwealth Claims Review (Matter ID: 396-00017)

76.     During the Application Period, CST continued working closely with Paul Hastings in the review of claims filed against the Commonwealth and other Debtors by unsecured creditors. CST spent a considerable amount of time reviewing and providing deeper analysis of Proof of Claims (POCs) and the supporting evidence and documents submitted in order to gain a better understanding of the claims against the Debtors, the size and nature of the unsecured claims pool, conduct an assessment, and determine the potential exposure of the Debtor. Most of these claims entailed aspects of – for example, tax, corporate, employment, constitutional (Takings Clause), domain laws, complex wage class action lawsuits involving thousands of plaintiffs, civil rights and torts litigation in local courts and before the U.S. District Court for the District of Puerto Rico as well as in administrative agencies, which made it necessary to integrate several members from CST to conduct the necessary review and analysis. Given the substantial aspects of local law and

the fact that most documents reviewed were in the Spanish language, CST's participation and involvement in the review of the claims submitted against the Debtors by unsecured creditors was substantial. For the most part, this stage of the review process consisted of second and/or third-level assessment and in-depth analysis of various large claims - including claims with judgments and/or stipulations.

77.    In contrast to bondholders' claims, the unsecured pool is comprised of thousands of claims that are difficult to quantify because they are often based on pending litigation, many of which involved thousands of plaintiffs and commenced more than 30 years ago. As part of this claims review process, CST provided updates as to some of these proceedings in order to continue the analysis of their viability against the Debtors. CST also assisted in the analysis of the complex issues related to treatment of claims, including, among others, the treatment of claims based on violations of the United States Constitution (alleged by various creditor groups), including whether such claims are subject to be discharged as part of a plan adjustment.

78.    Specifically, as to PREPA, CST reviewed and provided more in-depth analysis of the largest claims filed by creditors against PREPA. This assessment of potential liability and exposure proved to be paramount in the Committee's strategy responding to PREPA's 9019 Motion.

(a)    Case Administration (Task Code: B110)

Fees:       $1,350.00     Total Hours:  5.00

79.    During the Application Period, CST coordinated efforts with the Paul Hastings team to efficiently track tasks, organize documents, and manage work streams. To minimize duplication of services, CST developed procedures for allocating responsibilities among various CST team members.

    (b)    <u>Avoidance Action Analysis (Task Code: B180)</u>

        Fees:      $2,557.00    Total Hours:  10.20

80.    CST's role also included a limited avoidance action analysis of certain POCs against Debtors, in order to assist Paul Hastings developing strategy and next steps.

    (c)    <u>Other Contested Matters (Task Code: B190)</u>

        Fees:      $34,818.00    Total Hours:  142.90

81.    During the Application Period, CST reviewed and analyzed many litigation related POCs and their supporting evidence in order to supplement Paul Hastings' assessment on the viability of these claims, which resulted in gaining a better understanding of the claims against the Debtors. In turn, CST and Paul Hastings were able to provide the Committee a more accurate determination of the potential related exposure.

    (d)    <u>General Litigation (Task Code: B191)</u>

        Fees:      $14,847.00    Total Hours:  64.90

82.    CST conducted a comprehensive and in-depth revision of several litigation based POCs casefiles, to update the assessments of the viability of these, and drafted thorough memoranda to Paul Hastings.

    (e)    <u>Claims Administration and Objections (Task Code: B310)</u>

        Fees:      $112,036.00   Total Hours:  477.90

83.    During the Application Period, CST provided updated in-depth analysis of many large-sum POCs, including conducting legal research on some of the matters asserted against the Debtors. At times the detailed review of claims involving large or unspecified quantities of monies entailed securing new relevant documents, to provide an updated assessment as to the viability of such claims.

## VIII. Avoidance Actions (Matter ID: 396-00018)

84.     After the Committee was included as co-plaintiff in the avoidance actions originally due to the *Aurelius* decision risk factor, during the eighth interim fee period CST was heavily involved in the litigation of garden-variety avoidance actions against hundreds of vendors of the Debtors, *i.e.* Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and Adv. Proc. Nos. 19-380 to 19-383. As local counsel to the Committee, CST interfaced with the defendants in these actions and provided counsel with respect to the Information Exchange Process as part of the Informal Resolution Protocol ("IR Protocol") developed closely with the law firm of Brown Rudnick ("BR"), counsel for the Special Claims Committee of the Oversight Board, to resolve the garden-variety avoidance actions. For the implementation of the Protocol, CST collaborated with BR in the creation of Information Exchange Request letters and was charged with serving said letters to over 170 vendors parties to adversary proceedings. CST also served as intermediary between the defendant vendors and the DiCicco, Gulman & Company ("DGC"), financial advisory firm to Plaintiffs in these actions, who collected and analyzed the data provided by vendors. CST and BR took DGC's analysis and counseled Plaintiffs as to how to proceed in the IR Protocol approved by the Court.

85.     During the seventh interim fee period, the Special Claims Committee and the Committee filed a motion [Docket No. 7325] seeking approval of, among other things, procedures establishing a framework for streamlined execution of settlement agreements and procedures and guidelines for resolving the garden variety avoidance actions through a voluntary informal information exchange request process, settlement and mediation process. The hearing on this motion was held on June 28, 2019 and on July 12, 2019, the Court entered an *Order Granting Omnibus Motion by the Financial Oversight and Management Board for Puerto Rico, acting by*

*and through the Members of the Special Claims Committee and the Official Committee of Unsecured Creditors to (i) Establish Litigation Case Management Procedures and (ii) Establish Procedures for Approval of Settlements.* With the approval of the Protocol or Informal Resolution Process and the entry of the Order approving the Omnibus Motion, CST's involvement and participation in the Informal Resolution Process during the eighth interim fee period was substantial, considering the amount of avoidance actions, the fact that the majority of the vendors engaged local and mainland counsel, the fact that many vendors were hesitant or had reservations regarding the Informal Resolution Process and, as such, multiple meetings and conferences were required with vendor's local counsel, the fact that many vendors requested and pursued negotiation of non-disclosure agreements ("NDAs"), and the fact that many of the documents are naturally in Spanish which at times required substantial involvement by local counsel.

86.     On multiple occasions during the eighth interim fee period, counsel for CST working actively in the informal resolution process regularly met with counsel for vendors to discuss the scope of the information requested by co-plaintiffs in connection with the garden variety avoidance actions, to discuss related legal matters, to discuss the viability of modifying or tailoring the requests for information and to discuss and negotiate NDAs, among others. CST also participated in the discussions and determinations pertaining to the dismissal of various garden variety avoidance actions and worked closely with Brown Rudnick and DGC, while consulting related matters with Paul Hastings and Zolfo Cooper.

87.     Likewise, on multiple occasions during the eighth interim fee period, CST worked closely with DGC in the analysis of nearly twenty (20) vendor preference claims (who submitted extensive voluminous evidence) in order to explore settlements with vendors. Multiple meetings were held involving DGC, CST and counsel for these vendors whose payments received during

35

the 90-days prior to the petition were red-flagged as potentially preferential. These discussions are ongoing.

88.      During the referenced period CST also provided support to GJB in connection with "clawback actions" – adversary proceeding against various underwriters, law firms, accounting firms, and other parties involved in the issuance of securities and bonds. CST's role included providing translations, research and analysis of local law, and provide status reports on events related to the legal issues litigated.

(a)      Case Administration (Task Code: B110)

Fees:      $8,665.50      Total Hours:   39.60

89.      CST also spent a considerable amount of time reviewing the complaints (and responses) filed against various vendors of the PROMESA Title III debtors, as well as reviewing tolling agreements offered to vendors, while interfacing with vendors in connection with the Information Exchange Process. CST developed and implemented strategies to streamline the workflow associated with the administration of each action, including staff meetings, shared information matrix, and the creation of databases.

(b)      Pleadings Review (Task Code: B113)

Fees:      $6,120.00      Total Hours:   23.00

90.      During the Application Period, CST reviewed and analyzed various pleadings to be adequately prepared to provide a comprehensive legal analysis of the various matters litigated and to establish related strategy. This in compliance with the applicable Rules of Professional Conduct.

(c)      Avoidance Action Analysis (Task Code: B180)

Fees:      $92,370.00      Total Hours:   379.60

91.     CST served as first-level review of the data produced by vendors. Specifically, CST reviewed Spanish-language documents – *e.g.* service contracts, to assist DGC in their assessment of the data. After DGC collected and analyzed the data provided by vendors, CST spent considerable amount of time assessing DGC's recommendation in order to counsel Plaintiffs as to how to proceed in the IR Protocol approved by the Court.

(d)     Other Contested Matters (Task Code: B190)

     Fees:     $2,795.00     Total Hours:     11.00

92.     As part of CST's intermediary role between DGC and vendors, CST worked with *pro se* vendors and vendors' counsel negotiating modifications to the information requested pursuant to sampling recommendations from DGC. These modifications resulted in concentrated data that facilitated and advanced its analysis.

(e)     General Litigation (Task Code: B191)

     Fees:     $3,174.50     Total Hours:     12.60

93.     CST was heavily involved negotiating and working along vendor defendants drafting NDAs in a per-case basis. Additionally, as part of the Informal Resolution Process, CST interfaced with counsel for vendors in order to gather and analyze data submitted by them, as need be, and in order to be in a position to make recommendations to the Committee regarding dismissals and/or whether to pursue litigation.

(f)     Claims Administration and Objections (Task Code: B310)

     Fees:     $1,788.00     Total Hours:     6.70

94.     CST reviewed the complaints filed against various vendors of the PROMESA Title III debtors, as well as reviewing tolling agreements offered to vendors, while interfacing with vendors in connection with the Information Exchange Process. Among the tasks involved in the

management of the litigation, some legal analysis was required to handle the evaluation of some
vendors' counter-statements as to the nature of their particular payments.

*****

95.     The foregoing professional services were necessary and appropriate to the administration of the
Title III Cases and were incurred upon in the best interests of the Committee, the Debtors, the
creditors, and other parties in interest.

## ATTENDANCE AT HEARINGS

96.     In accordance with the presumptions set forth in the Order on Fee Examiner's
Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee
Applications [Docket No. 3932] (the "Presumptive Standards Order"), CST provides the following
summary regarding the attendance of CST professionals at Court hearings, as local counsel to the
Official Committee of Unsecured Creditors:

- • October 30, 2019: This omnibus hearing addressed, among other things, the motion
filed by the Oversight Board for approval of procedures in connection with the
administrative reconciliation of claims. The attendance complies with the presumptive
standards set forth in the Presumptive Standards Order.

- • December 11, 2019:     Among other matters, the omnibus hearing addressed the
Mediation Team's interim report. The attendance complies with the presumptive standards
set forth in the Presumptive Standards Order.

- • January 15, 2020: This hearing on discovery disputes was related to the ERS bond
litigation. The attendance complies with the presumptive standards set forth in the
Presumptive Standards Order.

- • January 29, 2020: The January 29, 2020 omnibus hearing included the oral argument
on the Oversight Board's renewed motion for ADR procedures, a status conference with
respect to the Cobra motion for allowance and payment of administrative expense claims,
and a status conference with respect to the Interim Revenue Bond Order. The attendance
complies with the presumptive standards set forth in the Presumptive Standards Order.

## REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND
## COMMITTEE

97.    As requested by the Fee Examiner, we set forth below the status of the various

proceedings and motions jointly commenced by the Oversight Board or its Special Claims

Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulations for

the joint prosecution of causes of action or claims objections.

- Omnibus Objection of Oversight Board and Committee to Certain GO Bond Claims [Docket No. 4784] (the "Omnibus Claims Objection"): On December 19, 2019, Judge Swain approved a briefing schedule with respect to motion to dismiss practice related to Omnibus GO Claims Objection. The mediation team recommended that the Court stay the Omnibus GO Claim objection pending a decision on confirmation of the Commonwealth plan of adjustment. Pursuant to Judge Swain's stay order dated March 10, 2020 [Docket No. 12189] (the "Final Stay Order"), the Omnibus Claims Objection is stayed pending the Court's decision regarding confirmation of the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. [Docket No. 11946] (the "Amended Plan").

- Adversary Proceeding against Underwriters, etc.: GJB, the Committee's special litigation counsel, represents the Committee with respect to the adversary proceeding against various underwriters and other parties involved in the issuance of Commonwealth bonds [Adv. Proc. No. 19-280]. CST is the Committee's local counsel and represents the Committee, along with GJB. Moreover, pursuant to the Final Stay Order, the underwriter litigation is stayed pending the Court's decision regarding confirmation of the Amended Plan.

- Garden-Variety Avoidance Actions: CST, the Committee's local counsel, represents the Committee with respect to the "garden-variety" avoidance actions initiated against vendors of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority (HTA) and the Employee Retirement System (ERS) [Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and additional adversary proceedings commenced with respect to PREPA [Adv. Proc. Nos. 19-380 to 19-387] seeking to avoid certain fraudulent transfers made to fuel oil suppliers of PREPA and related parties.

- CST is counsel for the UCC and serves as primary attorney point of contact in the Informal Resolution Process established by the Oversight Board to resolve the Garden Variety Avoidance Actions without necessarily having to incur in litigation costs and expenses. In connection with the Informal Resolution Process, CST has worked closely with DiCicco Gulman and Company LLC ("DGC"), the financial advisory firm to the Special Claims Committee, in the gathering of information and interfacing with over 170 vendors and their counsel on a daily basis and analyzing select documents and data submitted by vendors and counsel, while simultaneously

responding to related communications and requests from vendors and their counsel. Additionally, CST has collaborated and worked closely with Brown Rudnick, counsel for the Special Claims Committee, with analysis of local law matters pertaining to the Avoidance Actions, as requested. Paul Hastings and Zolfo Cooper provide limited assistance in matters related to the analysis of the data submitted by vendors as part of the Informal Resolution Process in order to recommend whether to pursue or dismiss the multiple garden variety avoidance actions as part of the Informal Resolution Process.

- <u>Currently Stayed Co-Plaintiff Adversary Proceedings</u>: Pursuant to the Final Stay Order, the following co-plaintiff adversary proceedings are stayed pending the Court's decision regarding confirmation of the Amended Plan:

  - o Eight adversary proceedings seeking to recover fraudulent transfers made on account of GO bonds that were not validly issued [Adv. Proc. No. 19-281, Adv. Proc. No. 19-282, Adv. Proc. No. 19-283, Adv. Proc. No. 19-284, Adv. Proc. No. 19-285, Adv. Proc. No. 19-286, Adv. Proc. No. 19-287, and Adv. Proc. No. 19-288]; and

  - o Seven adversary proceedings challenging liens asserted by certain holders of GO bonds [Adv. Proc. No. 19-291, Adv. Proc. No. 19-292, Adv. Proc. No. 19-293, Adv. Proc. No. 19-294, Adv. Proc. No. 19-295, Adv. Proc. No. 19-296, and Adv. Proc. No. 19-297].

  - o Four adversary proceedings challenging liens asserted by certain holders of HTA bonds [Adv. Proc. No. 19-362, Adv. Proc. No. 19-363, Adv. Proc. No. 19-364, and Adv. Proc. No. 19-365].

  In light of the stay orders, CST is not expending any significant time on these adversary proceedings, other than minor administrative and/or procedural work.

- <u>ERS-Related Adversary Proceedings</u>: On October 24, 2019, the Court approved a scheduling order regarding discovery and summary judgment briefing on the lien scope issues and *ultra vires* issues with respect to the ERS bonds. Accordingly, (a) the lien scope litigation, *i.e.*, Adv. Proc. No. 19-366 and Adv. Proc. No. 19-367 and (b) count I of the complaints seeking to recover fraudulent transfers made on account of ERS bonds that were not validly issued, *i.e.*, Adv. Proc. No. 19-355, Adv. Proc. No. 19-356, Adv. Proc. No. 19-357, Adv. Proc. No. 19-358, Adv. Proc. No. 19-359, and Adv. Proc. No. 19-361, were unstayed.

  - o Proskauer Rose LLP, counsel for the Oversight Board, has primary responsibility for the lien scope adversary proceedings. Accordingly, CST is not expending significant time on these adversary proceedings.

  - o Moreover, GJB, the Committee's special litigation counsel, represents the Committee with respect to count I of the recovery actions. Thus, GJB is handling the *ultra vires* issues as they relate to count I of the recovery actions. CST, the Committee's local counsel, represents the Committee with

respect to count I of the recovery actions and assists GJB with the ultra vires issues as they relate to count I of the recover actions given that there are issues pertaining to local law.

98.     The sub-budgets and staffing plans with respect to the jointly pursued matters described above are included as part of Exhibit C-1 and Exhibit C-2, respectively.

## ACTUAL AND NECESSARY DISBURSEMENTS

95.     As described in Exhibit D hereto, CST disbursed $12,999.65 as expenses incurred in providing professional services during the Application Period.

96.     Because CST believes that online legal research (e.g., LEXIS and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes, CST encourages computerized legal research even though it is not a profit center for CST.

97.     The time constraints imposed by the circumstances of the matters handled by CST during the Application Period required its attorneys and other employees, at times, to devote substantial time during the evenings and on weekends to perform legal services on behalf of the Committee. These extraordinary services were essential to meet deadlines, timely respond to daily inquiries, and satisfy the Committee's needs and demands. Attorneys and other CST employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs in accordance with the Local Rules and firm policy. CST's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the provision of legal services.

98.     CST believes the rates for charges incurred are the market rates that most law firms charge clients for such services. In addition, CST believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's

Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges as well as the Puerto Rico Code of Ethics.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

99.     Section 316 provides for the compensation of professionals. Specifically, section 316 provides that a Court may award a professional employed by a committee under Section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered… and reimbursement for actual, necessary expenses." PROMESA §316(a). Section 316 of PROMESA also sets forth the criteria for the award of such compensation and reimbursement:

> (a) In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:
>
> (i) the time spent on such services;
>
> (ii) the rates charged for such services;
>
> (iii) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (iv) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (v) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and
>
> (vi) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

PROMESA §316(c). Further, section 317 of PROMESA provides that "a committee… may apply to the court not more than once every 120 days… for such compensation for services rendered…"

100.    In the instant case, CST respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, believed to be necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of the Title III Cases. The services rendered to the Committee were performed in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. The results obtained to date have benefited not only the Committee but also the Debtors and their stakeholders. Accordingly, the compensation requested herein is reasonable considering the nature, extent, and value of such services to the Committee, the Debtors, and all parties in interest.

101.    The work conducted was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Whenever possible, CST sought to minimize the costs of CST's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments. A small group of the same CST's attorneys was utilized for the vast majority of the work in this case, to minimize the costs of intra- CST's communication and education about the Title III Cases. As demonstrated by this Application, CST spent its time economically and without unnecessary duplication. Accordingly, approval of the compensation sought herein is warranted.

## NOTICE

102.    In accordance with the Interim Compensation Order, CST will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory

Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of hearing with respect to this Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

## CONCLUSION

WHEREFORE, CST respectfully requests entry of an order, substantially in the form attached hereto as Schedule 1, (i) allowing interim compensation for professional services rendered during the Application Period in the amount of $559,558.00 and expense reimbursements in the amount of $12,999.65; (ii) authorizing and directing the Debtors' payment of the amounts allowed and; (iii) allowing such compensation and payment for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to CST's right to seek such further compensation and/or payment for the full value of services performed and expenses incurred, and (iv) granting CST such other and further relief as is just.

Date: March 16, 2020

*/s/Juan J. Casillas-Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Luis F. Llach Zúñiga, Esq. (USDC – PR 223112)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
lllach@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

44