**Hearing Date: July 29, 2020 at 9:30 a.m. AST**
**Objection Deadline: April 6, 2020** (for parties other than the Fee Examiner)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In regarding:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## SUMMARY COVER SHEET TO THE EIGHTH INTERIM APPLICATION OF JENNER & BLOCK LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM OCTOBER 1, 2019 THROUGH JANUARY 31, 2020

| | |
|---|---|
| Name of Applicant: | Jenner & Block LLP |
| Authorized to Provide Services To: | The Official Committee of Retired Employees of the Commonwealth of Puerto Rico |
| Retention Date: | June 16, 2017 |

---

[1] The Debtors in these jointly-administered PROMESA title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric and Power Authority  (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| Period for which compensation and reimbursement is sought: | October 1, 2019–January 31, 2020 |
| Amount of interim compensation sought as actual, reasonable, and necessary: | $1,245,646.31 |
| Amount of interim expense reimbursement sought as actual, reasonable, and necessary: | $62,799.73 |
| Are your fee or expense totals different from the sum of previously served monthly statements? | No |
| Petition Date: | May 3, 2017 |
| Blended rate in this application for all attorneys: | $909.68  ($773.29 following 15% fee discount) |
| Blended rate in this application for all timekeepers: | $844.41  ($717.75 following 15% fee discount) |

This is an *interim* application.

The total time expended for Jenner's fee application preparation for the Interim Fee Period is approximately 15 hours and the corresponding compensation requested is approximately $12,000.

| | |
|---|---|
| Total compensation approved by interim order to date: | $11,278,091.97 |
| Total expenses approved by interim order to date: | $475,127.56 |
| Total compensation paid to date: | $13,865.205.80 |
| Total expenses paid to date: | $639,166.01 |
| Total compensation subject to objection: | None |
| Total expenses subject to objection: | None |
| Number of Professionals Included in this Application: | 27 |
| Difference Between Fees Budgeted and Compensation Sought: | $557,988.69 less than budget |

Number of Professionals Billing Fewer than 15 Hours to this Case: 14

Rates Higher than Those Disclosed at Retention: Jenner adjusted its scheduled hourly rates as of January 1, 2018, January 1, 2019, and January 1, 2020. Time recorded from January 1, 2020 through January 31, 2020 is at 2020 rates.

Objection Deadline: April 6, 2019 (for parties other than the Fee Examiner)

| Name of Professional | Title | Year Admitted | Department | Hourly Billing Rate (2019) | Total Billed Hours (2019) | Hourly Billing Rate (2020) | Total Billed Hours (2020) | Total Fees Requested |
|---|---|---|---|---|---|---|---|---|
| CLIFFORD W. BERLOW | Partner | 2007 | Appellate & Supreme Court Practice | $850 | 5.50 | N/A | N/A | $4,675.00 |
| IAN HEATH GERSHENGORN | Partner | 1993 | Appellate & Supreme Court Practice | $1,250 | 6.80 | N/A | N/A | $8,500.00 |
| ROBERT D. GORDON | Partner | 1989 | Restructuring & Bankruptcy | $1,150 | 280.10 | $1,225 | 71.70 | $409,947.50 |
| SARAH E. HADDY | Partner | 2009 | Employee Benefits | $860 | 3.30 | N/A | N/A | $2,838.00 |
| MARC B. HANKIN | Partner | 1992 | Restructuring & Bankruptcy | $1,100 | 37.10 | $1,125 | 7.00 | $48,685.00 |
| LINDSAY C. HARRISON | Partner | 2003 | Appellate & Supreme Court Practice | $935 | 16.30 | $1000 | 0.50 | $15,740.50 |
| RICHARD B. LEVIN | Partner | 1975 | Restructuring & Bankruptcy | $1,350 | 0.70 | N/A | N/A | $945.00 |
| EMILY M. LOEB | Partner | 2009 | Investigations, Compliance & Defense | $865 | 3.50 | $950 | 1.80 | $4,737.50 |
| LANDON S. RAIFORD | Partner | 2008 | Restructuring & Bankruptcy | $860 | 209.30 | $900 | 131.40 | $298,258.00 |
| DEVI M. RAO | Partner | 2010 | Appellate & Supreme Court Practice | $855 | 4.50 | N/A | N/A | $3,847.50 |
| MELISSA M. ROOT | Partner | 2003 | Restructuring & Bankruptcy | $935 | 191.10 | $975 | 65.40 | $242,443.50 |
| CATHERINE L. STEEGE | Partner | 1982 | Restructuring & Bankruptcy | $1,150 | 121.40 | $1,225 | 27.90 | $173,787.50 |
| ADRIENNE LEE BENSON | Associate | 2015 | Appellate & Supreme Court Practice | $685 | 8.30 | N/A | N/A | $5,685.50 |
| GABRIEL K. GILLET | Associate | 2011 | Appellate & Supreme Court Practice | $805 | 4.90 | N/A | N/A | $3,944.50 |
| CAYMAN C. MITCHELL | Associate | 2018 | Litigation | $500 | 4.80 | N/A | N/A | $2,400.00 |
| ANDREW C. NOLL | Associate | 2014 | Appellate & Supreme Court Practice | $735 | 1.30 | N/A | N/A | $955.50 |
| KATHERINE A. ROSOFF | Associate | 2018 | Litigation | $580 | 21.40 | $665 | 6.60 | $16,801.00 |
| ADAM T. SWINGLE | Associate | 2018 | Restructuring & Bankruptcy | $475 | 26.40 | $570 | 29.50 | $29,355.00 |
| CARL N. WEDOFF | Associate | 2010 | Restructuring and Bankruptcy | $865 | 107.90 | $880 | 33.00 | $122,373.50 |
| WILLIAM A. WILLIAMS | Associate | 2015 | Restructuring & Bankruptcy | $550 | 28.60 | $630 | 0.20 | $15,856.00 |
| LAURA E. PELANEK | Staff Attorney/ Special Counsel | 2004 | Litigation | $485 | 23.00 | $585 | 61.80 | $47,308.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| TOI D. HOOKER | Paralegal | N/A | Restructuring and Bankruptcy | $395 | 45.30 | $400 | 14.70 | $23,773.50 |
| MARC A. PATTERSON | Paralegal | N/A | Restructuring and Bankruptcy | $225 | 73.00 | $230 | 26.00 | $22,405.00 |
| CHARLOTTE M. STRETCH | Paralegal | N/A | Appellate & Supreme Court Practice | $325 | 2.50 | $355 | 2.00 | $1,522.50 |
| ANNETTE M. YOUNG | Paralegal | N/A | Litigation | $225 | 14.10 | N/A | N/A | $3,172.50 |
| MARY E. RUDDY | Library Services | N/A | Information Services | N/A | N/A | $355 | 0.30 | $106.50 |
| JAMES P. WALSH | Library Services | N/A | Information Services | N/A | N/A | $355 | 3.00 | $1,065.00 |
| **Sub-Total\*** | | | | | **1241.10** | | **482.80** | **$1,511,129.00** |
| Less 15% Fee Discount on all matters except the Non-working Travel Matter | | | | | | | | $210,035.19 |
| Less 50% Discount on Non-working Travel Matter | | | | | | | | $55,447.50 |
| **Total** | | | | | | | **1723.90 Hours** | **$1,245,646.31** |

## FEE EXAMINER'S REQUESTED ATTACHMENTS TO FEE APPLICATIONS

**List of Professionals** – Exhibit E
**Compensation by Project Category** – Exhibit G
**Expense Summary** – Exhibit F
**List of Professionals by Matter** – Exhibit H
**Detailed Time Records** – Exhibit H
**Detailed Expense Records –** Exhibit I; additional detail submitted to the Fee Examiner under separate cover
**Customary and Comparable Disclosures** – Exhibit D
**Budget & Staffing Plan –** Submitted to the Fee Examiner under separate cover

iv

**Hearing Date: July 29, 2020 at 9:30 a.m. AST**
**Objection Deadline: April 6, 2020** (for parties other than the Fee Examiner)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In regarding:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>       as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

# EIGHTH INTERIM APPLICATION OF JENNER & BLOCK LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM OCTOBER 1, 2019 THROUGH JANUARY 31, 2020

To the Honorable United States District Court Judge Laura Taylor Swain:

Jenner & Block, LLP ("**Jenner**"), attorneys for The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**") in the above-captioned Title III case ("**Title III Case**"), hereby submits this Eighth application (the

---

[1] The Debtors in these jointly-administered PROMESA title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric and Power Authority  (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

"**Application**") for an award of interim compensation for professional services rendered, and reimbursement for actual and necessary expenses incurred in connection with such services, for the period from October 1, 2019 through January 31, 2020 (the "**Interim Period**"). Jenner submits this Application pursuant to: sections 316 and 317 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("**PROMESA**"),[2] 48 U.S.C. §§ 2176, 2177; sections 105(a) and 503(b) of the Bankruptcy Code,[3] 11 U.S.C. §§ 105(a), 503(b); Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")[4]; Rule 2016-1 of the Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "**Local Rules**")[5]; the *Order Authorizing the Employment of Jenner & Block LLP as Attorneys for the Committee of Retired Employees* (the "**Retention Order**") [Dkt. No. 1002]; the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "**Interim Compensation Order**") [Dkt. No. 3269]; the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases Effective as of November 1, 2013* (the "**UST Guidelines**"); the *First Amended Order Pursuant to PROMESA §§ 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and Related Relief* (the "**Amended Fee Examiner Order**") [Dkt. No. 3324]; the *Order on Fee Examiner's Motion to Impose Presumptive*

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[3] The Bankruptcy Code is codified at 11 U.S.C. §§ 101–1532.  Unless otherwise noted, all Bankruptcy Code sections cited in the Application are made applicable to this Title III Case pursuant to section 301(a) of PROMESA.

[4] All Bankruptcy Rules referenced in this Application are made applicable to these Title III Cases pursuant to section 310 of PROMESA.

[5] The Local Rules are made applicable here by the Court's *Order (A) Imposing and Rendering Applicable Local Bankruptcy Rules to These Title III Cases, (B) Authorizing Establishment of Certain Notice, Case Management, and Administrative Procedures, and (C) Granting Related Relief* [Dkt. No. 249].

*Standards and Timeliness Requirements for Professional Fee Applications* [Dkt. No. 3932]; the

*Order Imposing Additional Presumptive Standards: Rate Increases and the Retentions of Expert*

*Witnesses or Other Sub-Retained Professionals* ("**Additional Presumptive Standards Order**")

[Dkt. No. 7678]; and the Fee Examiner's November 10, 2017 Memorandum (the "**Fee Examiner**

**Memorandum**").   In support of this Application, Jenner submits the Certification of Robert D.

Gordon (the "**Gordon Certification**"), attached hereto as **Exhibit A**, and respectfully represents

as follows:

## Preliminary Statement

1.      On August 10, 2017, this Court entered the Retention Order, approving the Retiree

Committee's employment of Jenner, effective as of June 16, 2017.  A copy of Jenner's engagement

letter is attached hereto as **Exhibit B**.  The Retiree Committee represents approximately 167,000

retired employees of the Commonwealth of Puerto Rico ("**Commonwealth**" or "**Puerto Rico**")

and various Commonwealth agencies and instrumentalities and their surviving beneficiaries,

including Puerto Rico's retired teachers, police officers, firefighters, judges, municipal clerks,

engineers, and other government workers of all categories, who hold accrued pension benefits on

account of having participated in the Employee Retirement System (the "**ERS**"), the Teachers

Retirement System (the "**TRS**"), and/or the Judiciary Retirement System (the "**JRS**"), among

other potential post-employment benefits  (the "**Retirees**").  The pensions of the Retirees, along

with those held by currently active employees who have participated in the ERS, TRS, and/or JRS,

are collectively underfunded by at least $50 billion.  The Retirees are the largest group of creditors

in these title III cases.

2.      During the Interim Period, Jenner performed a variety of legal services that were

necessary and appropriate for the effective advancement of the Retirees' interests in this Title III

Case, including, among other things: meeting and conferring with the Retiree Committee; advising

the Retiree Committee regarding its powers and duties; advising the Retiree Committee regarding matters pertaining to or likely to affect Retirees' pension, healthcare, and other accrued retirement benefits; representing the Retiree Committee at court hearings and negotiation sessions involving matters pertaining to or likely to affect the benefits of the Retirees; preparing on behalf of the Retiree Committee motions, applications, orders, and other legal papers; and advocating for Retirees in adversary proceedings and contested matters.

3.     Jenner's work during the Interim Period was necessary for, and beneficial to, the Retirees and served to ensure that the Retirees' interests were properly represented and safeguarded in this Title III Case.  Jenner respectfully requests that the Court award the fees and expenses requested in this Application.

## Jurisdiction

4.     The United States District Court for the District of Puerto Rico (the "**Court**") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

5.     Venue is proper pursuant to PROMESA section 307(a).

6.     Jenner makes this Application pursuant to PROMESA sections 316 and 317, Bankruptcy Code sections 105(a) and 503(b), Bankruptcy Rule 2016, Local Rule 2016-1, the Retention Order, the Interim Compensation Order, and the UST Guidelines.

## Background

7.     On May 3, 2017, Puerto Rico, by and through the Financial Oversight and Management Board for Puerto Rico ("**FOMB**"), as Puerto Rico's representative pursuant to section 315(b) of PROMESA, filed a petition with the Court under title III of PROMESA.

8.     On May 5, 2017, the Puerto Rico Sales Tax Financing Corporation ("**COFINA**"), by and through the FOMB, as COFINA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

4

9.     On May 21, 2017, the Puerto Rico Highways and Transportation Authority ("**HTA**"), by and through the FOMB, as HTA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

10.     On May 21, 2017, the ERS, by and through the FOMB, as the ERS's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

11.     On July 3, 2017, the Puerto Rico Electric Power Authority ("**PREPA**"), by and through the FOMB, as PREPA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

12.     On September 27, 2019, the Puerto Rico Buildings Authority ("**PBA**"), by and through the FOMB, as PBA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

13.     Through Orders of this Court, the Commonwealth, COFINA, HTA, ERS, PREPA, and PBA title III cases (collectively, the "**Title III Cases**") are jointly administered for procedural purposes only, pursuant to PROMESA section 304(g) and Bankruptcy Rule 1015.  [*See* Dkt. Nos. 242, 537, 1417, 8829.]

14.     On June 15, 2017, the U.S. Trustee, pursuant to section 1102(a)(1) of the Bankruptcy Code, appointed the Retiree Committee, consisting of the following nine individuals: Blanca Paniagua, Carmen Nuñez, Juan Ortiz, Lydia Pellot, Marcos A. Lopez, (retired) Judge Miguel Fabre, Milagros Acevedo, Rosario Pacheco, and José Marin.[6]  [Dkt. No. 340.]

### Jenner's Retention and Fee Request

15.     On June 16, 2017, the Retiree Committee elected to employ Jenner to represent the Retiree Committee.

---

[6] José Marin resigned from the Retiree Committee effective April 12, 2018.

16.     On July 19, 2017, the Retiree Committee filed its *Application for an Order Approving the Employment of Jenner & Block LLP* [Dkt. No. 670] (the "**Retention Application**") pursuant to sections 105(a) and 1103 of the Bankruptcy Code.[7]

17.     On August 10, 2017, the Court entered the Retention Order approving Jenner's retention as counsel to the Retiree Committee, effective June 16, 2017, on the terms and conditions identified in the Retention Application.  A copy of the Retention Order is attached hereto as **Exhibit C**.  Pursuant to the Retention Order, Jenner is entitled to compensation for reasonable, actual, and necessary professional services rendered and reimbursement of expenses incurred in connection with the Title III Cases.

18.     On October 6, 2017, the Court entered an Order appointing Brady Williamson as the fee examiner (the "**Fee Examiner**") in these Title III Cases.  [Dkt. No. 1416.]

19.     On June 20, 2018, the Court entered the Amended Fee Examiner Order.

20.     On December 15, 2017, Jenner filed its *First Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From June 16, 2017 Through September 30, 2017* (the "**First Interim Application**") [Dkt. No. 2050], seeking $2,051,975.37 in compensation and $60,916.21 in expenses.  On March 7, 2018, the Court entered an Order approving the First Interim Application (the "**First Interim Order**") [Dkt. No. 2685] in the amount of $2,030,996.12 in compensation and $60,485.71 in expenses, reflecting certain reductions recommended by the Fee Examiner and agreed to by Jenner.  Jenner has received 100% payment of the fees and expenses approved in the First Interim Order.

---

[7] In a chapter 11 case, a committee appointed under section 1102 of the Bankruptcy Code ordinarily would seek authority to employ counsel pursuant to section 327.  Because PROMESA does not incorporate section 327 of the Bankruptcy Code, the Retiree Committee moved for approval of its Retention Application pursuant to sections 105(a) and 1103(a).  *See* PROMESA § 301(a) (omitting Bankruptcy Code sections 327 and 328 from incorporation into PROMESA).

21.     On March 19, 2018, Jenner filed its *Second Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From October 1, 2017 Through January 1, 2018* (the "**Second Interim Application**") [Dkt. No. 2741], seeking $2,054,446.59 in compensation and $100,461.26 in expenses.  On June 8, 2018, the Court entered an Order approving the Second Interim Application (the "**Second Interim Order**") [Dkt. No. 3279] in the amount of $2,004,389.11 in compensation and $97,413.89 in expenses, reflecting certain reductions recommended by the Fee Examiner and agreed to by Jenner.  Jenner has received 100% payment of the fees and expenses approved in the Second Interim Order.

22.     On July 16, 2018, Jenner filed its *Third Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From February 1, 2018 through May 31, 2018* (the "**Third Interim Application**") [Dkt. No. 3535], seeking $1,969,909.52 in compensation and $71,940.52 in expenses.  On November 9, 2018, the Court entered an Order approving the Third Interim Application (the "**Third Interim Order**") [Dkt. No. 4200] in the amount of $1,939,594.08 in compensation and $69,416.41 in expenses, reflecting $30,315.44 in fee reductions and $2,524.11 in expense reductions recommended by the Fee Examiner and agreed to by Jenner.  Jenner has received 100% payment of the fees and expenses approved in the Third Interim Order.

23.     On November 16, 2018, Jenner filed its *Fourth Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From June 1, 2018 through September 30, 2018* (the "**Fourth Interim Application**") [Dkt. No. 4267], seeking $1,817,932.76 in compensation and $108,986.92 in expenses, including $16,302.15 in compensation inadvertently omitted from the Third Interim Application. On March 14, 2019, the Court entered an Order approving the Fourth Interim Application (the "**Fourth Interim Order**")

7

[Dkt. No. 5654] in the amount of $1,787,635.21 in compensation and $104,007.53 in expenses, reflecting $30,297.55 in fee reductions and $4,979.39 in expense reductions recommended by the Fee Examiner and agreed to by Jenner.  Jenner has received 100% payment of the fees and expenses approved in the Fourth Interim Order.

24.     On March 16, 2019, Jenner filed its *Fifth Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From October 1, 2018 through January 31, 2019* (the "**Fifth Interim Application**") [Dkt. No. 5781, as corrected by Dkt. No. 5891], seeking $1,600,680.36 in compensation and $70,178.13 in expenses.  On June 26, 2019, the Court entered an Order approving the Fifth Interim Application (the "**Fifth Interim Order**") [Dkt. No. 7670] in the amount of $1,573,774.60 in compensation and $66,973.19 in expenses, reflecting $26,905.76 in fee reductions and $3,204.94 in expense reductions recommended by the Fee Examiner and agreed to by Jenner.  Jenner has received 100% payment of the fees and expenses approved in the Fifth Interim Order.

25.     On July 15, 2019, Jenner filed its Sixth Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From February 1, 2019 through May 31, 2019 (the "**Sixth Interim Application**") [Dkt. No. 7967], seeking $1,971,702.85 in compensation and $83,881.88 in expenses.  On December 6, 2019, the Court entered an Order approving the Sixth Interim Application [Dkt. No. 9488] in the amount of $1,941,702.85 in compensation and $76,830.83 in expenses, reflecting $30,000.00 in fee reductions and $7,051.05 in expense reductions recommended by the Fee Examiner and agreed to by Jenner.  Jenner has received 100% payment of the fees and expenses approved in the Sixth Interim Order.

26.     On November 15, 2019, Jenner filed its Seventh Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From June 1, 2019 through September 30, 2019 (the "**Seventh Interim Application**") [Dkt. No. 9207], seeking $1,994,019.44 in compensation and $111,143.17 in expenses.  As of the date of this Eighth Interim Application, consideration of the Seventh Interim Application remains deferred for consideration at a later hearing date.  [*See* Dkt. No. 11785, Ex. C.]  Pursuant to monthly fee statements, Jenner has received payment of $1,794,617.50 in fees and $110,936.95 in  expenses that are also included in the Seventh Interim Application.

27.     Jenner's fees are based upon hours charged, recorded in tenth-of-an-hour increments, at Jenner's ordinary and customary hourly rates in effect as of January 1 of the calendar year in which the services are rendered, plus reimbursement of actual, necessary, out-of-pocket expenses and other charges incurred by Jenner on behalf of the Retiree Committee.  Jenner adjusts its rates annually at the start of each calendar year, as disclosed in its Retention Application and approved by the Retention Order.  The rates set forth herein include Jenner's 2019 rates (for time recorded between October 1, 2019 and December 31, 2019) and Jenner's 2020 rates (for time recorded between January 1, 2020 and January 31, 2020). These rates are consistent with the rates charged to other clients, including outside of bankruptcy. Jenner has shared its 2019 and 2020 rates with the Retiree Committee, and the Retiree Committee has approved these rates. For this matter, Jenner agreed to discount its fee rates, but not out-of-pocket expenses and internal charges, by 15% from its rates in effect at the time the services are rendered.

28.     The cover sheet to this Application contains a schedule setting forth all Jenner professionals and paraprofessionals who have performed services on behalf of the Retiree Committee during the Interim Period, the capacity in which each individual is employed by Jenner,

the hourly billing rate charged for services performed by each such individual, the aggregate number of hours expended by all such professionals and paraprofessionals, the aggregate fees billed, and, for attorneys, the year in which each professional was first licensed to practice law.

29.     By this Application, Jenner seeks allowance of (a) compensation of $1,245,646.31 for professional and paraprofessional services provided during the Interim Period; and (b) reimbursement of actual, reasonable, and necessary expenses incurred in the Interim Period in the amount of $62,799.73.  As of the date of this Application, Jenner has received $806,254.45 in compensation for services performed and $50,698.58 in reimbursement for expenses incurred during the Interim Period.

30.     This is Jenner's eighth request for interim compensation in this Title III Case.  As set forth in the Gordon Certification, all of the services for which interim compensation is sought herein were rendered for and on behalf of the Retiree Committee in connection with this Title III Case.  To the best of Jenner's knowledge and as disclosed in the *Declaration of Robert D. Gordon in Support of Application of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico for Order Approving the Employment of Jenner and Block LLP* [Dkt. No. 670-2], the *First Supplemental Declaration of Robert Gordon in Support of Application for Order Approving the Employment of Jenner & Block LLP* [Dkt. No. 1766], the *Second Supplemental Declaration of Robert Gordon in Support of Application for Order Approving the Employment of Jenner & Block LLP* [Dkt. No. 3612], the *Verified Certification of Robert Gordon in Support of the First Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 2050-1], the *Verified Certification of Robert Gordon in Support of the Second Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 2741-1], the *Verified Certification of Robert Gordon*

*in Support of the Third Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 3535-1], the *Verified Certification of Robert Gordon in Support of the Fourth Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 4267-1], the *Verified Certification of Robert Gordon in Support of the Fifth Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 5781-1], the *Verified Certification of Robert Gordon in Support of the Sixth Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 7967-1], and the *Verified Certification of Robert Gordon in Support of the Seventh Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 9207-1] (together, the "**Gordon Declarations**"), Jenner is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, and except as otherwise specified in the Gordon Declarations, Jenner's partners, associates, and special attorneys do not hold or represent any interest adverse to the Retiree Committee.

31.     Jenner might have in the past represented, might currently represent, and likely in the future will represent parties that are parties in interest in these cases in connection with matters unrelated to the Retiree Committee or the Title III Cases.  In the Gordon Declarations, Jenner disclosed its connections to parties in interest in the Title III Cases that it has been able to ascertain using reasonable efforts.  Jenner will update such disclosures, as appropriate, if Jenner becomes aware of relevant and material new information.

32.     Jenner performed the services for which it is seeking compensation solely on behalf of the Retiree Committee and not on behalf of any other committee, creditor, or other entity.

33.     Jenner has not received payment or a promise of payment from any source other than the Commonwealth for its services rendered and expenses incurred on behalf of the Retiree Committee or to be rendered or incurred in any capacity whatsoever in connection with the Title III Cases.

34.     Jenner does not share fees with any attorneys except to the extent permitted by section 504 of the Bankruptcy Code.

### Fees and Expenses Incurred During Interim Period

**A.     Customary Billing Disclosures**

35.     Jenner's hourly rates are set at a level designed to compensate Jenner fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly rates and corresponding rate structure utilized by Jenner in this Title III Case are equivalent to the hourly rates and corresponding rate structure used by Jenner for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such complex matters typically are national in scope and typically involve great complexity, high stakes, and intense time pressures.

36.     **Exhibit D** to this Application is a summary of blended hourly rates for (i) Jenner professionals (excluding Restructuring and Bankruptcy attorneys) and (ii) blended hourly rates for timekeepers for which Jenner is seeking hourly compensation in this Application, as required by the UST Guidelines.

**B.     Fees Incurred During Interim Period**

37.     In the ordinary course of Jenner's practice, Jenner maintains records of the time spent on the professional services provided to the Retiree Committee.  **Exhibit E** to this Application is a summary of fees incurred and hours worked during the Interim Period for which

12

compensation is sought on an hourly basis in this Application, setting forth the following information:

- the name of each attorney and paraprofessional for whose work compensation is sought;
- each attorney's year of bar admission and area of practice concentration;
- the aggregate time worked and fees billed by each attorney and each paraprofessional during the Interim Period;
- the hourly billing rates for each such attorney and paraprofessional at Jenner's applicable billing rates; and
- a calculation of total compensation requested using the rates disclosed in the Jenner Application.

## C.      Expenses Incurred During Interim Period

38.      In the ordinary course of Jenner's practice, Jenner maintains a record of expenses incurred in rendering professional services to the Retiree Committee and for which reimbursement is sought.  **Exhibit F** to this Application is a summary of the total amount of expenses for which Jenner seeks reimbursement with respect to each category of expenses for the Interim Period.  The out-of-pocket disbursement sum is broken down into categories of charges.

### Summary of Legal Services Provided During the Interim Period

39.      During the Interim Period, Jenner provided important professional services to the Retiree Committee in connection with this Title III Case.  A summary of the various services Jenner provided to the Retiree Committee during the Interim Period is set forth in paragraphs 40 through 62 below.

40.      Jenner has established, in accordance with its internal billing procedures, subject matter categories (each, a "**Matter Category**") for keeping time records of the work performed for the Retiree Committee.  A schedule setting forth a description of each Matter Category utilized in this case, the number of hours worked by Jenner attorneys and paraprofessionals for each Matter Category, and the aggregate fees associated with each Matter Category is attached as **Exhibit G**.

In addition, subject to redaction for attorney-client privilege, work product, and confidentiality where necessary to protect the Retiree Committee, Jenner's records of time worked providing professional services to the Retiree Committee are attached hereto as **Exhibit H**, and Jenner's records of expenses incurred in the rendition of professional services to the Retiree Committee during the Interim Period are attached as **Exhibit I**.

41.     The following is a non-exhaustive summary, by Matter Category, of the professional services provided by Jenner during the Interim Period.  This summary is organized in accordance with Jenner's internal system of matter numbers.

**Adversary Proceeding – *ERS v. Altair Global Credit Opportunities Fund***
**Total Hours: 7.00          Fees: $5,591.00**

42.     Jenner's recorded time entries in this category include participating in the First Circuit appeal of the parties' section 552 dispute. Jenner's separate participation in the First Circuit appeal was warranted because the arguments advanced by the bondholders directly implicate the interests of retirees.  Both before the District Court and the First Circuit, Jenner's arguments were complementary to but distinct from, arguments advanced by other parties.  Jenner coordinated with the FOMB to maximize efficiency and minimize duplication of effort.

**Adversary Proceeding – *Altair Global Credit Opportunities Fund v. ERS***
**Total Hours: 1.00          Fees: $400.00**

43.     Jenner's recorded time entries in this category include (a) reviewing and analyzing pleadings and court decisions in the *Altair v. ERS* adversary proceedings (Adv. Proc. Nos. 17-219, 17-220) relevant to Retiree Committee constituents; and (b) conducting legal research regarding subpoena of counsel.

### Adversary Proceeding – *UTIER v. Commonwealth*
**Total Hours: 0.60          Fees: $348.50**

44.     Jenner's recorded time entries in this category reflect reviewing and analyzing

pleadings and court decisions in the *UTIER v. PREPA* adversary proceedings (Adv. Proc. Nos. 17-

228, 17-229) relevant to Retiree Committee constituents.

### Adversary Proceeding – *Peaje v. HTA*
**Total Hours: 0.40          Fees: $232.50**

45.     Jenner's recorded time entries in this category reflect reviewing and analyzing

pleadings and court decisions in the *Peaje v. HTA* adversary proceedings (Adv. Proc. Nos. 17-151,

17-152) relevant to Retiree Committee constituents.

### Adversary Proceeding – *Assured Guaranty Corp. v. Commonwealth* and *Ambac v. Commonwealth*
**Total Hours: 0.30          Fees: $292.50**

46.     Jenner's recorded time entries in this category reflect participating in discovery in

this adversary proceeding.

### Adversary Proceeding – *FOMB v. PBA*
**Total Hours: 0.20          Fees: $116.00**

47.     Jenner's recorded time entries in this category reflect reviewing and analyzing

pleadings and court decisions in the in the *FOMB v. PBA* adversary proceeding (Adv. Proc. No.

18-149) relevant to Retiree Committee constituents.

### Case Administration/Miscellaneous
**Total Hours:  208.70          Fees: $136,619.50**

48.     Jenner's recorded time entries in this category include, among other things:

(a) reviewing pleadings and court submissions not attributable to another Matter Category;

(b) reviewing legal and political developments relevant to the status of the Title III Case;

(c) meeting internally on strategy, allocation of assignments, and other matters; (d) miscellaneous

work not attributable to another Matter Category; (e) communicating with the FOMB, AAFAF,

the Official Committee of Unsecured Creditors, and other parties-in-interest in the Title III Cases

regarding general matters; (f) reviewing legal and political developments and the status of the Title III Cases; and (g) case and project management. Jenner conducts periodic calls among Jenner professionals and a weekly call among Jenner and the Retiree Committee's other retained professionals to discuss the case status, delegate work, and collaborate on strategy. These calls are designed to promote efficiency, coordinate the work plan, and eliminate duplication of effort among the Retiree Committee's retained professionals.

### Challenges to PROMESA
**Total Hours: 33.80          Fees: $31,246.50**

49.     Jenner's recorded time entries in this category include, among other things: (a) reviewing and analyzing pleadings and other submissions challenging the constitutionality and implementation of PROMESA; (b) preparing for and attending Supreme Court argument of the consolidated Appointments Clause appeal (Appeal No. 18-1671); and (c) reviewing and analyzing proposed legislation to amend PROMESA.

### Claims Issues
**Total Hours: 7.70          Fees: $7,827.00**

50.     Jenner's recorded time entries in this category include time spent (a) reviewing claims forms sent to Retirees; (b) reviewing claims registers and claims objections; and (c) reviewing court filings in adversary proceedings regarding claims.

### Committee Governance and Meetings
**Total Hours: 99.80          Fees: $110,549.50**

51.     Jenner's recorded time entries in this category include, among other things: (a) counseling and assisting the Retiree Committee in the proper performance of its duties; (b) preparing for, conducting, and participating in all meetings of the Retiree Committee; (c) assisting the Retiree Committee in preparing agendas and minutes for those meetings; (d) drafting written summaries of developments in the Title III Cases and the Retiree Committee professionals' work; and (e) rendering other services related to Committee governance. For each

Committee meeting, each Jenner and Bennazar attorney attending the meeting was responsible for presenting to and advising the Retiree Committee regarding various agenda items according to their varying knowledge and expertise.   Some of the Committee meetings were conducted by Jenner in-person and some were conducted telephonically, as determined in consultation with the Committee Chairperson.

### Communications with Retirees
**Total Hours: 99.00          Fees: $112,782.00**

52.      Jenner's recorded time entries in this category include, among other things: (a) working with the Retiree Committee's Information Agent and other professionals to develop and review content for the Retiree Committee website; (b) developing and disseminating answers to frequently asked questions as well as other materials to provide information about the Title III Cases to Retirees through the Retiree Committee website, social media, and other digital properties; (c) monitoring press coverage regarding issues in the Title III Cases affecting Retirees and developing responses to and other information for the media regarding Retiree Committee issues; and (d) conferring with the Retiree Committee professionals and members to develop public communications strategies.

### Court Hearings
**Total Hours: 11.70          Fees: $11,262.00**

53.      Jenner's recorded time entries in this category include (a) attending and representing the Retiree Committee at Court hearings; (b) preparing for Court hearings, including reviewing pleadings and other submissions considered at or relevant to Court hearings; and (c) drafting informative motions relating to Court hearings.

**Economic and Disaster Recovery Analysis**
**Total Hours: 8.20          Fees: $9,580.00**

54.      Jenner's recorded time entries in this category include, among other things,

reviewing and analyzing reports regarding economic and disaster recovery efforts as they

ultimately pertain to the development of fiscal plans and a plan of adjustment.

**Employment of Professionals/Fee Applications (Jenner Professionals)**
**Total Hours: 58.80          Fees: $40,855.00**

55.      Jenner's recorded time entries in this category include, among other things:

(a) preparing Jenner's Seventh Interim Application and monthly fee statements and, specifically,

ensuring compliance with UST Guidelines and those of the Fee Examiner; (b) reviewing Jenner's

invoices to protect confidentiality and privilege; and (c) communicating with the U.S. Trustee's

office and the Fee Examiner and his team.

**ERS Bond Issues**
**Total Hours: 800.30          Fees: $666,778.00**

56.      Jenner's recorded time entries in this category include, among other things:

(a) reviewing a proposed order regarding ERS Bondholders' motion to lift automatic stay;

(b) reviewing and analyzing UBS briefing regarding its motion to lift the automatic stay;

(c) conducting legal research regarding same; (d) participating in discovery including reviewing

productions, preparing for and attending depositions, conferring with counsel for other parties, and

participating in expert discovery; (e) reviewing and analyzing ERS Bondholders' responses to

claims objections; (f) coordinating with other parties regarding procedures to govern ERS claim

objections; (g) preparing initial disclosures in ERS avoidance actions (Adv. Nos. 19-366 and

19-367); (h) reviewing and analyzing the ERS Bondholders' section 926(a) motion for

appointment of a trustee; (i) preparing a response regarding same; (j) participating in and briefing

the appeal of the ERS Bondholders' section 926(a) motion in the First Circuit; (k) preparing for

First Circuit oral argument regarding the section 552 dispute; (*l*) analyzing a deposition subpoena

issued to a Retiree Committee attorney, preparing a motion to quash said subpoena, and conducting related research.

### Employment of Professionals/Fee Applications (Non-Jenner Professionals)
**Total Hours: 75.90         Fees: $58,360.50**

57.     Jenner's recorded time entries in this category include (a) assisting the Retiree Committee's financial advisors, actuaries, Information Agent, and Retiree Committee members with their Eighth interim compensation and expense applications and preparing their monthly statements; (b) communicating with the Fee Examiner and his team concerning appropriate compensation procedures for the Retiree Committee's financial advisors, actuaries, Information Agent, and members; and (c) reviewing at a high level and for discrete purposes various fee statements submitted by other parties in the Title III Cases.

### Fiscal Plan/Plan of Adjustment
**Total Hours: 139.60         Fees: $151,031.00**

58.     Jenner's recorded time entries in this category include, among other things: (a) reviewing and analyzing the September 29 Plan of Adjustment and accompanying Disclosure Statement and related documents; (b) reviewing, analyzing, and further drafting proposed Guidelines governing the creation and administration of a proposed Plan of Adjustment Pension Board, Pension Reserve Trust, and Pension Investment Council; (c) analyzing issues and strategy regarding confirmation of Plan of Adjustment; (d) reviewing and analyzing the various proposed and certified Fiscal Plans and related documents in this Title III Case as applicable during the Interim Period and, as appropriate, in the other Title III Cases; (e) communicating with the Retiree Committee and the Retiree Committee's advisors and actuaries regarding the Plan of Adjustment, Disclosure Statement, Guidelines document and related documents, and Fiscal Plans; (f) conducting legal and factual research and analysis concerning potential Plan of Adjustment

issues relevant to the Retiree Committee's constituents; and (g) reviewing public statements relevant to existing and any prospective Fiscal Plan or Plan of Adjustment.

**GO Bonds Issues**
**Total Hours: 15.30**          **Fees: $13,379.00**

59.     Jenner's recorded time entries in this category include (a) reviewing and analyzing general obligation bond documents; (b) reviewing and analyzing general obligation bondholder claims and court submissions; and (c) conducting related legal research.

**Mediation**
**Total Hours: 28.10**          **Fees: $30,386.50**

60.     Jenner's recorded time entries in this category include time spent representing the Retiree Committee in all aspects of the confidential mediation process.  Due to the confidential nature of the mediation, the time entries have been redacted.  Jenner provided unredacted copies of its time to the Fee Examiner subject to the confidentiality protections set forth in paragraph 10 of the Amended Fee Examiner Order.

**PREPA**
**Total Hours: 6.20**          **Fees: $4,604.00**

61.     Jenner's recorded time entries in this category include reviewing and analyzing pleadings and other submissions regarding PREPA and its retirees that may have implications for Retiree Committee constituents.

**Rule 2004 Investigation**
**Total Hours: 12.30**          **Fees: $7,993.00**

62.     Jenner's recorded time entries in this category include (a) reviewing, analyzing, and preparing written discovery responses concerning Rule 2004 discovery; (b) reviewing and

analyzing documents produced by interested parties; and (c) communicating with other parties in interest regarding these matters.

**Non-Working Travel Time**
**Total Hours: 109.00          Fees: $55,447.50 (after 50% discount)**

63.     This time entry reflects non-working out-of-town travel for court appearances, depositions, and Retiree Committee meetings.  Pursuant to Local Rule 2016-1(a), Jenner is seeking compensation at one-half of its normal rate for time spent traveling in connection with its representation of the Retiree Committee.

### Actual and Necessary Expenses Incurred by Jenner During the Interim Period

64.     As summarized in Exhibit F and as set forth in detail in Exhibit I, Jenner has incurred a total of $62,799.73 in expenses on behalf of the Retiree Committee during the Interim Period.  The expenses identified in Exhibit F are intended to reimburse Jenner's direct costs that are not included in Jenner's hourly billing rates.  Only clients who actually use services of the types set forth in Exhibit F of this Fee Application are charged for such services.

### Jenner's Requested Compensation and Reimbursement Should be Allowed

65.     The services for which Jenner seeks compensation in this Application were, at the time provided, necessary for and beneficial to the Retiree Committee.  Jenner performed these services economically, effectively, and efficiently.   Jenner submits that the compensation requested is reasonable in light of the nature, extent, and value of such services to the Retiree Committee.   Accordingly, Jenner submits that the compensation sought in this Application is warranted and should be approved.

**A.     Compensation Under Sections 316 and 317 of PROMESA.**

66.     Section 317 of PROMESA authorizes interim compensation of professionals and incorporates the substantive standards of section 316 of PROMESA to govern the Court's award

21

of interim compensation.   Section 316 of PROMESA provides that a court may award a

professional employed under section 1103 of the Bankruptcy Code "reasonable compensation for

actual, necessary services rendered," and "reimbursement for actual, necessary expenses."   48

U.S.C. § 2176(a)(1), (2).   Section 316(c) sets forth the criteria for such an award:

> In determining the amount of reasonable compensation to be
> awarded to a professional person, the court shall consider the nature,
> the extent, and the value of such services, taking into account all
> relevant factors, including—
>
>> (1)      the time spent on such services;
>>
>> (2)      the rates charged for such services;
>>
>> (3)      whether the services were necessary to the
>> administration of, or beneficial at the time at which the
>> service was rendered toward the completion of, a case under
>> this chapter;
>>
>> (4)      whether the services were performed within a
>> reasonable amount of time commensurate with the
>> complexity, importance, and nature of the problem, issue, or
>> task addressed;
>>
>> (5)      with respect to a professional person, whether the
>> person is board certified or otherwise has demonstrated skill
>> and experience in the restructuring field; and
>>
>> (6)      whether the compensation is reasonable based on the
>> customary compensation charged by comparably skilled
>> practitioners in cases other than cases under this subchapter
>> or Title 11.

48 U.S.C. § 2176(c).

67.      As analyzed below, Jenner submits the elements governing awards of

compensation under PROMESA justify the allowance requested.

**1.      The Time and Labor Required**

68.      During the Interim Period, Jenner's partners, associates, and paraprofessionals

spent 3008.3 hours providing professional services to the Retiree Committee for which Jenner

seeks compensation on an hourly basis.  Jenner coordinated its efforts with co-counsel to avoid duplication of efforts.  Jenner required this amount of time to conduct its investigations, research and analyze numerous complex, novel issues arising from the Title III Cases, advise the Retiree Committee with respect to these issues, participate in seeking resolution of these issues, and perform the other tasks described herein.

### 2.    The Rates Charged for Such Services

69.    During the Interim Period, Jenner's hourly billing rates ranged from $850.00 to $1,225.00 per hour for partners, from $475.00 to $880.00 for associates, $585.00 for special counsel, $485.00 for staff attorneys, from $225.00 to $400.00 for paraprofessionals.  Based on the recorded hours expended by Jenner's attorneys and paraprofessionals, the average hourly billing rate was $909.68 for Jenner attorneys and $844.41 for all Jenner timekeepers prior to application of the 15% fee-rate discount provided by Jenner to the Retiree Committee, and $773.29 for Jenner attorneys and $717.75 for all Jenner timekeepers after accounting for this discount.

70.    Jenner's hourly rates are set at a level designed to compensate Jenner fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged by Jenner and the marketplace for services requiring a similar level of sophistication and investment of resources.

71.    The hourly rates and corresponding rate structure that Jenner charges in these cases are equivalent to or less than the hourly rates and corresponding rate structure that Jenner charges for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.

### 3.      The Necessity of the Services and the Benefit to the Estate's Retirees

72.      As described herein, the services rendered by Jenner were necessary for the effective and efficient representation of the Retiree Committee's interests in this Title III Case.  All of those services benefitted the Retiree Committee and the Retirees.

73.      The Retiree Committee has reviewed this Application and has approved the compensation and reimbursement of expenses requested herein.

### 4.      The Reasonableness of the Time Spent, Based on the Complexity, Importance, and Nature of the Issues

74.      Jenner's work involved the representation of the Commonwealth's largest creditor constituency—Puerto Rico's 167,000 retired teachers, police officers, firefighters, judges, municipal clerks, engineers, and other government workers of all categories, owed in the aggregate approximately $58 billion for pension funding.  Jenner's professional services during the Interim Period were necessary to ensure that the interests of the Retirees were properly represented and safeguarded and that all matters relevant to the Retiree Committee were handled in an appropriate manner.  Failure of the FOMB and the Commonwealth to properly consider and protect Retiree interests in this Title III Case will undoubtedly cause the failure of any attempt to successfully reorganize and rehabilitate Puerto Rico and its economy.  Moreover, this Title III Case presents complex and vital issues of first impression.  In light of the foregoing, Jenner submits that the compensation requested is reasonable.

### 5.      The Experience, Reputation, and Ability of the Attorneys Providing Services

75.      As set forth in the Retention Application, the Retiree Committee selected Jenner as its counsel because its attorneys have extensive experience, knowledge, and resources in the areas of complex restructuring and bankruptcy, municipal finance, employee benefits and litigation, and Jenner has the ability to commit substantial resources to the representation of the Retiree

24

Committee.   The attorneys representing the Retiree Committee have particular expertise in the areas of municipal bankruptcies and retiree committee representation.   Jenner attorneys have achieved a high degree of expertise and positive reputations in their respective fields.   Jenner's Restructuring and Litigation departments frequently receive recognition for their skill and achievements, and Jenner is frequently cited as one of the leading U.S. law firms in these fields.   In this complex and high-stakes Title III Case, the unique and specialized skills of Jenner's attorneys are critically important.

### 6.   Customary Compensation

76.     The work for which Jenner seeks compensation in this Application is of the type and nature for which Jenner customarily would seek compensation at the rates identified in this Application, even before applying the 15% discount here.   In addition, the compensation Jenner seeks in this Application is comparable to the compensation it would have sought for comparable work outside of the Title III Cases.

77.     Jenner submits that the compensation requested is reasonable under all the factors considered under sections 316 and 317 of PROMESA and that the factors justify allowing in full Jenner's compensation and reimbursement request.

78.     In view of the foregoing, Jenner respectfully requests that it be allowed interim compensation in the amount of $1,245,646.31 for services rendered during the Interim Period.

### B.   Reasonable and Necessary Expenses Incurred in Providing Services to the Retiree Committee.

79.     For the Interim Period, Jenner requests reimbursement of $62,799.73 for reasonable and necessary costs and expenses incurred on behalf of the Retiree Committee.

80.     Jenner's normal billing rates do not take these costs and expenses into consideration.   Rather, Jenner bills each cost and expense to the applicable client.   Because of the

disparity between different clients' requirements for expenses such as travel, computer-assisted research, teleconference services, postage, courier and messenger services, and photocopying, it is difficult to charge costs and expenses fairly and equitably by including them in Jenner's ordinary billing rates. Accordingly, Jenner generally charges each client for such costs and expenses separately, in each case, at Jenner's costs.

81.     Jenner does not include the amortization of the cost of any investment, equipment, or capital outlay in its charges for these services.

82.     Jenner represents that its rate for duplication for black-and-white copies is $0.11 per page, and for color copies the rate is $0.25 per page. In accordance with the Fee Examiner's guidance, Jenner is seeking reimbursement for black-and-white copies at the rate of $0.10 per page. Jenner does not charge for telecopier transmissions.

83.     Any services billed by a third-party vendor, with the exception of certain computer-assisted research charges, are charged to the Retiree Committee in the amount billed to and paid by Jenner. Like many large law firms, Jenner has negotiated a special arrangement with computerized research companies under which Jenner pays a flat rate monthly fee for computerized research services. Consistent with its general policy of billing out-of-pocket expenses only to clients for which the use of such services is required, Jenner separately charges each client for computer-assisted research. To account for such charges while passing through Jenner's cost savings resulting from its special arrangements, Jenner charges those clients for which such services are required at a reduced rate that is less than the rate charged by the computerized research companies to the general public for such services. These charges are intended to cover Jenner's direct costs for computerized research.

84.     Pursuant to Local Rule 2016-1(b)(7), Jenner seeks reimbursement for air travel limited to the amount spent on coach fare.

85.     Jenner has made reasonable efforts to minimize its costs and expenses in connection with its representation of the Retiree Committee.  Each of the costs and expenses Jenner has incurred in providing professional services to the Retiree Committee was necessary, reasonable, and justified under the circumstances to serve the needs of the Retiree Committee.

### Statement by Jenner Under Paragraph C(5) of the UST Guidelines

86.     This engagement involves variations from Jenner's standard and customary billing rates.  Jenner has agreed to discount its fee rates, but not out-of-pocket expenses and internal charges, by 15% off its rates in effect at the time the services are rendered.

87.     None of the professionals included in this Application varied their hourly rate based on the geographic location of their cases.

88.     The Application does not include time or fees specifically related to reviewing or revising time records or preparing, reviewing, or revising invoices.

89.     The Application includes approximately six hours of time and approximately $5,000 of fees spent on reviewing Jenner time records to redact privileged or other confidential information.

90.     The hourly rates specified in the Retention Application were effective January 1, 2019, and increased on January 1, 2020.  Jenner's engagement letter with the Retiree Committee provides that Jenner periodically adjusts its scheduled hourly rates, generally at the beginning of a calendar year.  Jenner has shared its 2020 rate increases with the Retiree Committee, and the Retiree Committee has approved these rates.  The Certification of Robert Gordon attached as Exhibit A to this Application, provides the certification requires under paragraph 2.c.1.iii of the Additional Presumptive Standards Order.

91.     Consistent with the UST Guidelines and the Fee Examiner Memorandum, Jenner began submitting budgets to the Fee Examiner for the period beginning January 2018.  Jenner's budgets estimated fees for the Interim Period at $1,803,635.00.  Jenner is requesting compensation of $1,245,646.31 for the Interim Period—$557,988.69 less than the amount budgeted.

## **Reservation of Rights and Notice**

92.     It is possible that some professional time expended or expenses incurred during the Interim Period are not reflected in the Application.  Jenner reserves the right to include such amounts in future fee applications.

93.     Pursuant to the Interim Compensation Order, the Retiree Committee has provided notice of this Application to: (a) the U.S. Trustee; (b) counsel to the FOMB; (c) counsel to AAFAF; (d) counsel to the Official Committee of Unsecured Creditors; (e) the Fee Examiner; and (f) all parties that have filed a notice of appearance with the Clerk of this Court, pursuant to Bankruptcy Rule 2002 and applicable provisions of the Local Rules, and requested such notice.

## **No Prior Request**

94.     No prior application for the relief requested by this Application has been made to this or any other court.

WHEREFORE, Jenner respectfully requests that the Court enter an order awarding Jenner: (a) compensation of $1,245,646.31 for professional and paraprofessional services provided during the Interim Period; (b) reimbursement of actual, reasonable, and necessary expenses incurred in the Interim Period in the amount of $62,799.73; and (c) such other relief as is appropriate under the circumstances.

Dated: March 16, 2020

Respectfully submitted,

JENNER & BLOCK LLP

*/s/ Robert Gordon*
Robert Gordon (admitted *pro hac vice*)
Richard Levin (admitted *pro hac vice*)
919 Third Ave
New York, NY 10022-3908
rgordon@jenner.com
rlevin@jenner.com
212-891-1600 (telephone)
212-891-1699 (facsimile)

Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
csteege@jenner.com
mroot@jenner.com
312-222-9350 (telephone)
312-239-5199 (facsimile)

*Counsel for The Official Committee of Retired Employees of Puerto Rico*