## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AMBAC ASSURANCE CORPORATION,<br><br>     *Plaintiff*,<br><br>          v.<br><br>MERRILL LYNCH, PIERCE, FENNER &<br>SMITH INCORPORATED; CITIGROUP<br>GLOBAL MARKETS INC.; GOLDMAN SACHS<br>& CO. LLC; J.P. MORGAN SECURITIES LLC,<br>FORMERLY KNOWN AS J.P. MORGAN<br>SECURITIES, INC.; MORGAN STANLEY &<br>CO. LLC; SAMUEL A. RAMIREZ & CO., INC.;<br>RAYMOND JAMES & ASSOCIATES, INC., and<br>UBS FINANCIAL SERVICES INC.,<br><br>     *Defendants*. | Case No. _____ |

## NOTICE OF REMOVAL

**TO THE CLERK OF THE COURT:**

**PLEASE TAKE NOTICE** that Defendants Merrill Lynch, Pierce, Fenner & Smith

Incorporated; Citigroup Global Markets Inc.; Goldman Sachs & Co. LLC; J.P. Morgan Securities

LLC; Morgan Stanley & Co. LLC; Samuel A. Ramirez & Co., Inc.; Raymond James &

Associates, Inc.; and UBS Financial Services Inc. (collectively, the "Underwriter Defendants"),

by their undersigned counsel, file this Notice of Removal pursuant to 48 U.S.C. § 2166(d)(1) and

28 U.S.C. § 1441(a), removing the action commenced against them by Plaintiff Ambac

Assurance Corporation (the "Plaintiff" or "Ambac"), from the Commonwealth Court of Puerto

Rico, Court of First Instance, Superior Part of San Juan (the "Court of First Instance"), to the

United States District Court for the District of Puerto Rico.  This Court has original jurisdiction

over this action pursuant to 48 U.S.C. § 2166(a)(2) (PROMESA jurisdiction) and 28 U.S.C.

§ 1331 (federal question jurisdiction).  Pursuant to 48 U.S.C. § 2166(d)(3) and Local Rule 3A of

the United States District Court for the District of Puerto Rico, this case should be transferred to

the Honorable Laura Taylor Swain as a proceeding related to *In re Commonwealth of Puerto*

*Rico*, No. 17-bk-03283 (D.P.R.) and *Nat'l Pub. Fin. Guarantee Corp., et al. v. UBS Fin. Servs.*

*Inc., et al.*, No. 19-00422 (D.P.R.) (the "National Action").

### INTRODUCTION AND SUMMARY OF GROUNDS FOR REMOVAL

      1.     Ambac is a sophisticated, private, for-profit commercial entity that insures

billions of dollars in bonds and asset-backed securities.

      2.     Among the securities that Ambac insured are three bonds issued by two

instrumentalities of the Commonwealth of Puerto Rico (the "Commonwealth"): the Puerto Rico

Infrastructure Financing Authority ("PRIFA") and the Puerto Rico Convention Center District

Authority ("PRCCDA", and collectively with PRIFA, the "Issuers").  The Underwriter

Defendants underwrote those bonds.

      3.     By agreeing to insure the bonds, Ambac promised, in exchange for a premium, to

pay the bondholders if the Issuers ever defaulted on the bonds.  The Issuers' 2016 default on the

bonds triggered Ambac's obligation to pay bondholders.  *See* Complaint ¶¶ 112-113, attached to

this Notice of Removal as **Exhibit A** ("Compl.").

      4.     The unprecedented default of the Commonwealth, the Issuers, and other Puerto

Rico municipal entities on billions in government-issued debt contributed to a severe financial

crisis in Puerto Rico, and drove Congress to enact the 2016 Puerto Rico Oversight, Management,

and Economic Stability Act, 48 U.S.C. § 2101 *et seq.* ("PROMESA"), which established the

Financial Oversight and Management Board (the "Oversight Board") for Puerto Rico, created a

bankruptcy-like process for the adjustment of municipal debts ("Title III"), and provided other

relief.  The Commonwealth, along with several other Puerto Rico municipal entities, has

commenced insolvency proceedings under Title III and, as discussed in greater detail below,

Ambac has sought relief from this Court to recover from the Commonwealth the same damages arising from the same bonds and bond insurance policies at issue in this action.

5.     In this litigation, Ambac seeks to offload its liability stemming from the Issuers' default on bonds issued in 2005 and 2006 that Ambac insured onto parties that did *not* insure the bonds—and to do so outside of the PROMESA process established by Congress.  Ambac is not the first Puerto Rico bond insurer to try this strategy:  In August 2019, two other monoline insurers sued the underwriters of other Puerto Rico municipal bonds (issued between 2001 and 2007), citing exactly the same two supposed "equitable" causes of action as Ambac does here. The defendants in that action (which include six of the Underwriter Defendants here) removed that case to federal court on similar grounds, and that action is now pending before this Court. *See* Notice of Removal & Ex. A, Dkt. No. 1, *Nat'l Pub. Fin. Guarantee Corp., et al. v. UBS Fin. Servs. Inc., et al.*, No. 19-00422-LTS (D.P.R. Sept. 9, 2019).[1]

6.     The Underwriter Defendants intend to move to dismiss at the appropriate time. To start, though, this dispute—centered on Ambac's claimed reliance on the Underwriter Defendants' supposedly false assurances of compliance with due diligence obligations set forth in the federal securities laws—should proceed in federal court, and particularly before this Court, where the Commonwealth is proceeding with the adjustment of its debts in six (6) consolidated proceedings under Title III of PROMESA (the "Title III Cases").

7.     Federal jurisdiction is proper here for two independently sufficient reasons, each of which supports removal of this action.

---

[1] The plaintiffs in that action have filed a motion to remand the National Action to the Court of First Instance, which is pending before this Court.  *Id.* at Dkt. Nos. 31, 38, 40.

8.      First, federal jurisdiction exists because this action is related to the Title III Cases, especially the Title III Case of the Commonwealth. *See* 48 U.S.C. § 2166(a)(2).  The outcome of this action could—indeed, almost surely will—affect the assets and liabilities of the Commonwealth's estate being administered by this Court under PROMESA.  Ambac has filed proofs of claim in the Title III Cases predicated on precisely the same bonds and bond insurance policies at issue in this action.  Further, many if not all Underwriter Defendants may yet have claims against the Commonwealth's estate in the Title III Cases sounding in contribution or similar bases.  And more broadly, this Court in the Title III Cases is already supervising a wide swath of interlocking issues relating to the Issuers, Ambac, and the Underwriter Defendants, including issues that necessarily must be resolved in this case.

9.      Second, where, as here, a complaint turns on a question of federal law, and where there is a substantial federal interest in the resolution of that question, original federal jurisdiction lies under 28 U.S.C. § 1331.  *See, e.g.*, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  According to Ambac's own Complaint, for Ambac to prevail on either of its asserted Puerto Rico civil law causes of actions, it must establish (among other things) that the Issuers' offering documents—which were based on information provided by both the Issuers and the Commonwealth itself—were false, *see* Compl. ¶¶ 8, 104-108,[2] and that the Underwriter Defendants failed to meet their due diligence obligations under the federal securities laws in underwriting the bonds, *see* Compl. ¶¶ 51-54, 65-66 (quoting and expounding

---

[2] The official statements covering the bonds at issue in this litigation have been attached to the Declaration of Roberto C. Quiñones-Rivera In Support Of Notice Of Removal, which the Underwriter Defendants have filed contemporaneously herewith (the "Quiñones-Rivera Declaration"), as **Exhibit A** and **Exhibit B**.  *See* Official Statement for PRIFA Special Tax Revenue Bonds, Series 2005A and Special Tax Revenue Refunding Bonds, Series 2005C (June 2, 2005), Quiñones-Rivera Decl. Ex. A, at ii; Official Statement for PRCCDA Hotel Occupancy Tax Revenue Bonds, Series A (March 15, 2006), Quiñones-Rivera Decl. Ex. B, at p. 3.

upon 17 C.F.R. § 240.15c2-12 ("Rule 15cd-12")).  And there are especially strong federal

interests at play here.  This case implicates Congress's recent decision, in PROMESA, to create a

federal forum for resolving issues relating to Puerto Rico's financial crisis, including the bond

defaults at the center of this case, as well as the federal government's comprehensive and

longstanding regulation of the nation's securities markets.[3]

### BACKGROUND AND PARTIES

10.     The three (3) bonds at issue in this case (the "Bonds") were issued by PRIFA and

PRCCDA in 2005 and 2006, underwritten by the Underwriter Defendants and insured by

Ambac, along with Financial Guaranty Insurance Company ("FGIC") and another insurer, CDC

IXIS Financial Guaranty North America, Inc. ("CIFGNA").  As Ambac readily acknowledges,

its agreements are with PRIFA and PRCCDA, who paid premiums for the insurance, not with the

Underwriter Defendants.  *See* Compl. ¶ 63.

11.     Although the Bonds in this action were issued between 2005 and 2006, Puerto

Rico and its municipal entities continued issuing bonds until 2015, when the Governor of Puerto

Rico declared that the Commonwealth was unable to pay its debts.  Ambac alleges that the

Issuers defaulted on the Bonds beginning in January 2016.  *See* Compl. ¶¶ 112-114.

12.     In response to this crisis, Congress passed PROMESA to stabilize Puerto Rico

and provide a sorely needed process for the adjustment of debts.  On June 30, 2016, President

Obama signed PROMESA into law.  PROMESA sets forth Congress's explicit finding that "[a]

comprehensive approach to [Puerto Rico's] fiscal, management, and structural problems ... is

---

[3] Moreover, if for some reason there were original federal jurisdiction over only a portion
of the claims asserted in the Complaint, this Court would have supplemental jurisdiction over the
remaining portions of the Complaint under 28 U.S.C. § 1367(a), as all of the claims arise from
the same nucleus of operative facts and transactions and form part of the same case or
controversy.

necessary, involving independent oversight and a Federal statutory authority for the Government

of Puerto Rico to restructure debts in a fair and orderly process."  48 U.S.C. § 2194(m)(4).

13.     The enactment of PROMESA operated as an automatic stay of any enforcement

and debt-collection activities against Puerto Rico and its agencies.  *See* 48 U.S.C. § 2194(b).

Shortly after that stay expired, the Commonwealth filed for relief under Title III of PROMESA,

commencing its Title III proceedings on May 3, 2017.  Pursuant to 48 U.S.C. § 2168, Chief

Justice Roberts designated U.S. District Judge Swain, of the Southern District of New York, to

preside over the Title III Cases.  *See* Order of Designation, *In re Commonwealth of Puerto Rico*,

No. 17-bk-03283 (D.P.R. May 5, 2017), Dkt. No. 4.[4]

14.     Ambac has been an active participant in the Title III Cases, including on matters

closely related to its claims in this case.

15.     Ambac filed three (3) motions seeking to lift the PROMESA stay with respect to

revenue streams that it believes should have been used to pay its damages, including damages for

the same alleged losses on the same Bonds for which Ambac seeks to recover damages in this

action (Dkt. Nos. 10102, 10104, and 10602).  Those motions remain pending before this Court.

16.     Ambac has also filed proofs of claim in the Title III Cases that implicate the

Bonds and alleged losses in this action.  As described below, Ambac filed two (2) apparently

identical proofs of claim against the Commonwealth's estate for its alleged losses on the Bonds,

listing the very same insurance policy numbers as cited in the Complaint.[5]  FGIC, a non-party

---

[4]  Unless otherwise stated, all references herein to "Dkt." are to the docket in the
consolidated Title III Cases.

[5]  *See* Proof of Claim No. 83010, filed by Ambac Assurance Corporation against the
Commonwealth of Puerto Rico on June 27, 2018, attached as **Exhibit C** to the Quiñones-Rivera
Declaration; Proof of Claim No. 122277, filed by Ambac Assurance Corporation against the
Commonwealth of Puerto Rico on June 28, 2018, attached as **Exhibit D** to the Quiñones-Rivera
Declaration.

who also insured the Bonds, also filed a proof of claim for its alleged losses on the Bonds.[6]
So did U.S. Bank Trust National Association ("U.S. Bank") as successor trustee for the
PRIFA Bonds, and the Bank of New York Mellon ("BNYM"), as successor trustee for the
PRCCDA Bonds.[7]

17.     For its part, the Oversight Board commenced two (2) adversary proceedings
against Ambac, objecting to its proofs of claim and seeking related relief.  *See* Compl. Objecting
to Defendants' Claims and Seeking Related Relief, *Fin. Oversight & Mgmt. Bd. v. Ambac
Assurance Corp., et al. (In re Commonwealth of Puerto Rico)*, Adv. Pro. No. 20-00003, Dkt. No.
1 (D.P.R.); Compl. Objecting to Defendants' Claims and Seeking Related Relief, *Fin. Oversight
& Mgmt. Bd. v. Ambac Assurance Corp., et al. (In re Commonwealth of Puerto Rico)*, Adv. Pro.
No. 20-00004, Dkt. No. 1 (D.P.R.).

18.     On July 24, 2019, Judge Swain entered an *Order Regarding Stay Period and
Mandatory Mediation*, Dkt. No. 8244 (the "Stay Order"), sending a broad range of contested
matters and adversary proceedings to mandatory mediation facilitated by Magistrate (U.S.
Bankruptcy) Judge Houser.  On March 10, 2020, Judge Swain entered the *Final Order
Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related
Thereto*, Dkt. No. 12189 (the "Final Stay Order") and the *Final Case Management Order for*

---

[6] *See* Proof of Claim No. 101243, filed by Financial Guaranty Insurance Company
against the Commonwealth of Puerto Rico on June 28, 2018, attached as **Exhibit E** to the
Quiñones-Rivera Declaration.

[7] *See* Proof of Claim No. 13386, filed by U.S. Bank Trust National Association, as
Trustee for the Puerto Rico Infrastructure Financing Authority Special Tax Revenue Bonds
Series 2005A, 2005B, 2005C and Series 2006, against the Commonwealth of Puerto Rico, on
May 18, 2018, attached as **Exhibit F** to the Quiñones-Rivera Declaration; Proof of Claim No.
37319, filed by the Bank of New York Mellon, as Trustee, against the Commonwealth of Puerto
Rico on May 24, 2018, attached as **Exhibit G** to the Quiñones-Rivera Declaration.

*Revenue Bonds*, Dkt. No. 12186 (the "Final Revenue Bonds Order"), which stayed in part

litigation relating to Ambac's proofs of claim pending a decision on plan confirmation.

19.     On February 19, 2020, despite all of these closely related proceedings filed and

pending in federal court, Ambac commenced this action (the "Ambac Action") by filing its

Complaint not in federal court but in the Court of First Instance.  The Complaint accuses the

Issuers and the Commonwealth of making misrepresentations in the Official Statements, accuses

the Underwriter Defendants of failing to perform the due diligence obligations that were

supposedly required of them by SEC Rule 15c2-12 that allegedly would have detected those

misrepresentations, and alleges that Ambac was induced to insure the Bonds based on the

Underwriter Defendants' representation that they complied with those federal law obligations.

Unable to cite any statute enacted in Puerto Rico that might support its claims, Ambac

nevertheless asserts that these allegations support "equitable" causes of action against the

Underwriter Defendants under Puerto Rico law.

## GROUNDS FOR REMOVAL

## I.  THE AMBAC ACTION IS "RELATED TO" THE PROMESA CASES

20.     Removal of the Ambac Action to federal court, and to this Court in particular, is

proper because this action is "related to" the Title III Cases under PROMESA.  *See* 48 U.S.C.

§ 2166(a)(2) (granting the district courts original jurisdiction over civil proceedings "related to

cases under this subchapter"); *id.* § (d)(1) (providing for removal).

21.     In the bankruptcy context, related-to jurisdiction exits whenever "the outcome of

[the] proceeding could conceivably have any effect on the estate being administered in

bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *see also, e.g.*, *In re

G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991) (applying the *Pacor* standard); *Voya*

*Institutional Tr. Co. v. Univ. of P.R.*, 266 F. Supp. 3d 590, 597-98 (D.P.R. 2017) (applying *Pacor* in assessing related-to jurisdiction under PROMESA).

22.     The *Pacor* standard is broad, encompassing "the entire universe of matters connected with bankruptcy estates," *Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.)*, 410 F.3d 100, 105 (1st Cir. 2005), and accordingly the proceeding "need not necessarily be against the debtor or ... the debtor's property" so long as the "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and … in any way impact[] upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994; *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995) (citing *Pacor* favorably and noting that Congress's "choice of words suggests a grant of some breadth").

23.     Further, the removed case need only have a "conceivable" impact on the bankruptcy proceeding; "[c]ertainty, or even likelihood, is not a requirement." *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning Corp.)*, 86 F.3d 482, 491 (6th Cir. 1996) (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991)); *see also Voya*, 266 F. Supp. 3d at 599.

24.     The Ambac Action is "related to" the Title III Cases for at least three reasons, any of which would suffice to support removal.

25.     <u>First</u>, this action is related to the Title III Cases because Ambac (*i.e.*, the Plaintiff here) has asserted claims against the Commonwealth's estate in the Title III Cases based on the same Bonds and insurance policies cited in the Complaint, and on its Bond-related payments to investors under said policies.  Ambac's asserted reason is that the Commonwealth controlled revenue streams that should have gone to pay holders of the Bonds, and that the Commonwealth misapplied those funds.  Ambac thus alleges that "[t]he Commonwealth—and not just the ...

9

Issuers—is liable to Ambac with respect to any Insurance Payments made to the Revenue

Bondholders on the basis of claims asserted by Ambac that arise out of the Commonwealth's

alleged 'clawback' of revenues otherwise dedicated to the payment of the ... [Bonds]."  Claim

No. 83010, Annex ¶ 29.[8]   Indeed, Ambac explains the same theory at length in the Complaint.

*See* Compl. ¶¶ 93-98.  Since Ambac cannot recover twice (from the Commonwealth and from

the Underwriter Defendants) for the same insurance payments, any recovery by Ambac in this

action will reduce the amount that Ambac can collect on its claims against the Commonwealth in

the Title III Cases.

26.   This is more than sufficient for related-to jurisdiction.  As numerous courts have

held, "a claim between two non-debtors that will potentially reduce the bankruptcy estate's

liabilities" supports related-to jurisdiction.  *Randall & Blake, Inc. v. Evans (In re Canion)*,

196 F.3d 579, 586-87 (5th Cir. 1999); *see also SPV Osus, Ltd. v. UBS AG*, 882 F.3d 333, 341

(2d Cir. 2018) ("[I]f SPV were successful in its claims against UBS, it would reduce the amount

it is owed as a creditor of the BLMIS/Madoff estate."); *In re Adelphia Commc'ns Corp. Sec. &*

*Derivative Litig.*, No. 03-MDL-1529 (LMM), 2005 WL 1404798, at *2 (S.D.N.Y. June 14,

2005) ("To the extent that plaintiffs are successful against the defendants, plaintiffs' recoveries

will in all probability (and certainly conceivably) reduce the total of Adelphia's liabilities.").

27.   In *TD Bank, N.A. v. Sewall*, 419 B.R. 103 (D. Me. 2009), for example, the court

found that related-to jurisdiction existed when the plaintiff in the proceeding held a claim against

the debtor's estate, because the lawsuit would, if successful, "change [the plaintiff's] status vis-à-

vis other creditors, the [debtor's] relationship to the underlying debt, and the amount of the

---

[8]  As described above, the Oversight Board objected to Ambac's claims in adversary
proceeding numbers 20-00003 and 20-00004.

[debtor's] liabilities." *Id.* at 108.  Other courts have similarly exercised related-to jurisdiction

when a plaintiff sought to recover for some of the same harms as those underlying a proof of

claim in the bankruptcy proceeding, reasoning that success in the related litigation would reduce

the bankruptcy distribution to the successful plaintiff, freeing up more of the estate to pay the

claims of other creditors.  *See Johnson v. Fifth Third Bank, Inc.*, 476 B.R. 493, 501 (W.D. Ky.

2012); *Omega Tool Corp. v. Alix Partners, LLP*, 416 B.R. 315, 320 (E.D. Mich. 2009).

28.     These rules of law apply fully here.  Ambac filed proofs of claim against the

Commonwealth's estate predicated upon all three of the Bond issuances that form the basis of its

Complaint in this action.  *See* Quiñones-Rivera Decl. Exs. C, D.  Those proofs of claim reference

the very same insurance policy numbers as those cited in the Complaint: 24121BE and 25142BE.

In the Title III Cases, Ambac is seeking to recover from the Commonwealth the same amounts

that it has paid, and will pay in the future, to bondholders that it is seeking to recover from the

Underwriter Defendants in this action.  Because Ambac is not entitled to a double recovery, any

favorable judgment in this action would directly affect the liabilities of, and potential

distributions from, the Commonwealth's estate in the Title III Cases (*i.e.*, every dollar that

Ambac collects in this action would automatically reduce by one dollar Ambac's claim against

the Commonwealth in the Title III Cases).

29.     Adjudication of the issues in this case may therefore affect the rights not only of

the parties to this case, but of the wider set of parties involved in the Title III Cases.  For

example, the Bonds were insured by multiple insurers, and one of those other insurers, not a

party to this action, has also filed a proof of claim in the Title III Cases.  *See, e.g.*, Quiñones-

Rivera Decl. Ex. E.  Moreover, the Commonwealth's action in allegedly diverting revenue

streams for the Bonds may be deemed in this action to have broken the chain of causation

11

between any alleged wrongdoing by the Underwriter Defendants and Ambac's losses.  *See
Malave-Felix v. Volvo Car Corp.*, 946 F.2d 967, 972 (1st Cir. 1991) ("[i]ntervening causes can
break the chain of causality if they are not foreseeable").  If there is a determination in this action
that the Commonwealth was entitled to redirect those revenue streams, such determination may
have preclusive effect against Ambac, thus requiring rejection of Ambac's proofs of claim
against the Commonwealth in the Title III Cases.

30.    Second, this action is related to the Title III Cases because the Underwriter
Defendants here may be able to assert claims against the Commonwealth's estate for
contribution or under related theories.  *See, e.g.*, *Zurich Am. Ins. v. Lord Elec. Co. of P.R.*,
828 F. Supp. 2d 462, 469-470 (D.P.R. 2011).  While the bar date for filing proofs of claim has
passed, courts have accepted late proofs of claim for contribution since "[a] party may not know
of a potential contribution claim until sued."  *SPV Osus*, 882 F.3d at 340.  Indeed, in *SPV Osus*,
the Second Circuit determined that the mere *potential* for a contribution proof of claim supported
related-to jurisdiction, because even the need to evaluate a late-filed proof of claim by the trustee
impacts the estate's fisc.  *Id.* at 341.

31.    Third, this litigation is closely related to the Title III Cases.  "The existence of
strong interconnections between the third party action and the bankruptcy has been cited
frequently by courts in concluding that the third party litigation is related to the bankruptcy
proceeding."  *SPV Osus*, 882 F.3d at 342 (quoting *N.Y.C. Emps.' Ret. Sys. v. Ebbers (In re
WorldCom, Inc. Sec. Litig.)*, 293 B.R. 308, 321 (S.D.N.Y. 2003)).

32.    As one application of this general principle, courts have repeatedly held that
related-to jurisdiction exists when the debtor would have been named as a defendant were it not
for the automatic stay.  The plaintiffs in the *WorldCom* securities litigation, for example, could

not sue WorldCom itself for its accounting fraud due to the automatic stay, but sued underwriters

of WorldCom's bond offerings (among others) in state court.  293 B.R. at 313.  The defendants

removed the action, and the federal court declined to remand.  In determining that related-to

jurisdiction existed, the court observed that, "despite [WorldCom's] absence as a party, its

conduct will remain at the heart of the ... litigation."  *Id.* at 321.

33.     More recently, the Second Circuit followed *WorldCom* in a case arising from the

Madoff bankruptcies.  *SPV Osus*, 882 F.3d at 342.  The Court held that related-to jurisdiction

existed over state law claims that UBS aided and abetted Madoff because "there is a high degree

of interconnectedness between this action and the Madoff bankruptcies."  *Id.*  The Court

emphasized that "[b]ut for the automatic stay, it is difficult to imagine a scenario wherein SPV

would not also sue Madoff and BLMIS, given that SPV alleges that UBS aided and abetted in

their fraud."  *Id.*

34.     The allegations in the Complaint make clear that, as in *SPV Osus* and *WorldCom*,

the Commonwealth itself would have been named in this lawsuit were it not for the automatic

stay.  After all, Ambac's theory of the case is that the Commonwealth, along with PRIFA and

PRCCDA, allegedly made misrepresentations in the Official Statements, which the Underwriter

Defendants allegedly failed to detect due to their supposedly inadequate diligence.  *See, e.g.*,

Compl. ¶ 8 (alleging reliance on the Underwriter Defendants "to properly review and investigate

the Commonwealth's financial controls" and alleging that "the Commonwealth's financial

disclosures made in connection with the PRIFA and PRCCDA bonds were inaccurate because of

these systemic weaknesses").  As Ambac's parent company stated in its SEC Form 10-K, filed

this month, Ambac alleges that the Underwriter Defendants "fail[ed] to investigate and

adequately disclose material information in the official statements for the bonds that defendants

provided to Ambac Assurance regarding systemic deficiencies in *the Commonwealth's financial reporting*."[9]  The two Official Statements covering the three Bond issuances at issue here expressly note that they are based on information provided from the Commonwealth, among others.[10]  As discussed above, Ambac has filed proofs of claim in the Title III Cases proceedings against the Commonwealth, making clear that it would have sued the Commonwealth directly if it were not a debtor.

35.     The approach adopted in *SPV Osus* and *WorldCom* is consistent with Congress's aims in crafting the concept of related-to jurisdiction generally and in creating PROMESA jurisdiction more specifically.  As the Supreme Court affirmed in *Celotex*, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."  514 U.S. at 308 (quoting *Pacor*, 743 F.2d at 994); *see also* 48 U.S.C. § 2194(m)(4) (Congressional finding that a "comprehensive approach" to resolving Puerto Rico's debt crisis is "necessary").  Thus, a significant overlap of key disputed legal issues will support related-to jurisdiction.  *See, e.g.*, *Rivera v. Puerto Rico (In re. Fin. Oversight & Mgmt. Bd.)*, No. 18-AP-47, 2018 U.S. Dist.

---

[9]  Form 10-K of Ambac Financial Group Inc., at 129 (March 2, 2020) (emphasis added), attached as **Exhibit H** to the Quiñones-Rivera Declaration.

[10]  *See* Official Statement for PRIFA Special Tax Revenue Bonds, Series 2005A and Special Tax Revenue Refunding Bonds, Series 2005C (June 2, 2005), Quiñones-Rivera Decl. Ex. A, at ii ("The information set forth or incorporated by reference herein has been obtained from the Authority, the Commonwealth and other official sources that are believed to be reliable, but is not guaranteed as to accuracy or completeness and is not to be construed as a representation by any Underwriter."); Official Statement for PRCCDA Hotel Occupancy Tax Revenue Bonds, Series A (March 15, 2006), Quiñones-Rivera Decl. Ex. B, at p. 3 ("The information set forth herein has been furnished by the Authority and the Commonwealth and various other agencies or public corporations of the Commonwealth, and includes information obtained from other sources which are believed to be reliable.").

LEXIS 225532, at *15 (D.P.R. Oct. 12, 2018) (removal to PROMESA court proper when the
assets and liabilities of PREPA were at issue in the removed case).

36.     Moreover, allowing this case to proceed in the Court of First Instance could
conceivably disrupt the PROMESA Court's supervision of the Title III Cases.  Judge Swain
entered the Stay Order and the Final Stay Order to promote efficient management of matters
related to the Title III cases.  The Stay Order governs a wide range of matters in the PROMESA
proceedings, including half a dozen omnibus claims objections, another ten or so contested
matters, and almost thirty adversary proceedings.  *See* Stay Order, Appendix I at 2.  It directs a
wide swath of issues related to the Title III Cases to mediation before Judge Houser, including
"*[c]laims against underwriters and other service providers in connection with debt issuances.*"
Stay Order at 4 (emphasis added); *see also* Final Stay Order at 4 (requiring that parties to stayed
proceedings participate in "any discussions and communications facilitated by the Mediation
Team Leader in respect of the Amended Plan").  Under these circumstances, the Court's exercise
of federal related-to jurisdiction would be entirely consistent with the "comprehensive
jurisdiction" provided to bankruptcy courts generally.  *Celotex*, 514 U.S. at 308.  Federal
jurisdiction would promote the efficient and expeditious adjudication of matters that are deeply
interconnected with the issues, parties, and disputes already before the Court in the Title III
proceeding.

## II.    THE AMBAC ACTION RAISES A SUBSTANTIAL FEDERAL QUESTION

37.     There is another, independently sufficient basis for federal jurisdiction here.

38.     Ambac says that "[t]here is no statute applicable to Ambac's claims," Compl.
¶ 15, presumably because—of course—Ambac did not purchase bonds and thus has no claim
under federal securities laws.  But even when a plaintiff does not and cannot assert a cause of
action provided by federal law, its claim may nonetheless—as it does here—arise "under the ...

laws ... of the United States" for purposes of federal jurisdiction pursuant to 28 U.S.C. § 1331.

*See, e.g.*, *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 312.  Specifically, "in certain cases

federal-question jurisdiction will lie over state-law claims that implicate significant federal

issues," *i.e.*, cases where "claims recognized under state law ... nonetheless turn on substantial

questions of federal law."  *Id.*  "[F]ederal jurisdiction over a state law claim will lie if a federal

issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution

in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v.*

*Minton*, 568 U.S. 251, 258 (2013).[11]

     39.    This principle is frequently applied in the context of the securities industry, which

is subject to comprehensive and longstanding federal regulation.  *See, e.g.*, *Smith v. Kansas City*

*Title & Tr. Co.*, 255 U.S. 180 (1921) (federal jurisdiction was proper where state law claims

turned on constitutionality of federal regulation of bond issuances); *NASDAQ OMX Grp., Inc. v.*

*UBS Sec., LLC*, 770 F.3d 1010, 1020-1021 (2d Cir. 2014) (federal jurisdiction was proper where

"the duty underlying" plaintiff's state law claims, "NASDAQ's duty to operate a fair and orderly

market," "derive[d] directly from federal law," particularly federal securities law); *D'Alessio v.*

*N.Y. Stock Exch., Inc.*, 258 F.3d 93, 101-102 & n.6 (2d Cir. 2001) ("[R]esolution of D'Alessio's

claims requires a court to construe federal securities laws and evaluate the scope of the NYSE's

duties, as defined under the Exchange Act and the regulations and rules thereto").

     40.    The *Gunn-Grable* test is met in this case, which turns on a substantial and

disputed question regarding the duty of municipal bond underwriters under the federal

securities laws.

---

     [11]  Puerto Rico is treated as a state for purposes of the "laws of the United States relating
to ... removal of causes."  48 U.S.C. § 864.

41.    <u>First</u>, a question of federal law is both necessarily raised and disputed in this case.

Ambac explicitly premises its claims on the adequacy of the Commonwealth's and the Issuers'

disclosures under the federal securities laws, and the Underwriter Defendants' alleged due

diligence obligations under SEC Rule 15c2-12, which governs municipal bond underwriting and

the contents of offering materials.  As Ambac puts it in the first paragraph of the Complaint:

"Defendants fail[ed] to adhere to their most basic underwriting functions and responsibilities."

Compl. ¶ 1.

42.    The Complaint then goes on to discuss SEC Rule 15c2-12 extensively.  That

Rule, the Complaint recounts, "makes it 'unlawful' for an underwriter to 'act as an underwriter

in a primary offering of municipal securities' of over $1 million unless, among other things, it

'obtain[s] and review[s] an Official Statement" that contains key information about the

issuance.'"  Compl. ¶ 52 (quoting 17 C.F.R. § 240.15c2-12); *see also* Compl. ¶¶ 51-54, 65-66

(discussing SEC Rule 15c2-12).  The Complaint further asserts that the SEC's interpretive

guidance for Rule 15c2-12 provides that an underwriter's participation "implies that the

underwriter has a reasonable basis for belief in truthfulness and completeness of the key

representations contained in the [O]fficial [S]tatement."  Compl. ¶ 54 (quoting Municipal

Securities Disclosure, Exchange Act Release No. 26985, 1989 WL 1113459, at *7 (June 28,

1989), 54 Fed. Reg. 28799, 28803 (July 10, 1989)).  It further asserts that Rule 15c2-12 requires

a "reasonable investigation" to develop "a reasonable basis for belief in the truthfulness and

completeness of the key representations made in any disclosure documents [*i.e.*, the Official

Statements] used in the offerings."  Compl. ¶ 54 (quoting Municipal Securities Disclosure,

Exchange Act Release No. 26100, 1988 WL 999989, at *20 (Sept. 22, 1988), 54 Fed. Reg.

28799, 28803 (July 10, 1989).

43.     In describing the nature of the claims in this case, the Complaint then repeatedly
invokes the language of the operative guidance on SEC Rule 15c2-12, verbatim or nearly
verbatim, in characterizing the Underwriter Defendants' purported conduct.  *See* Compl. ¶¶ 76,
110 (using language from Rule 15c2-12 in referring to the Underwriter Defendants' supposed
failure to conduct a "reasonable investigation" of the Official Statements or their supposed lack
of a "reasonable belief" or "reasonable basis" to believe that they were "true and complete").
This reliance on federal standards also comes in the portions of the Complaint setting forth the
elements of both of Ambac's claimed causes of action, Compl. ¶¶ 120-122, 133-134.

44.     Ambac also asserts that its injury flows directly from the Underwriter Defendants'
representation that they had complied with this federal law duty, which representation allegedly
induced it to insure the bonds.  *E.g.*, Compl. ¶¶ 8-9.

45.     Ambac's "equitable" causes of action thus turn entirely on a duty created, not
by state law, but by federal law.  And, for their part, the Underwriter Defendants dispute that
they breached any applicable duty under the federal securities laws, including any duty arising
under SEC Rule 15c2-12.  This claims in this case thus necessarily raise a disputed question of
federal law.

46.     The Second Circuit's decision in *NASDAQ OMX Group* is right on point.  There,
the court of appeals explained that various state law claims asserted against NASDAQ were all
premised on "a singular duty," namely "NASDAQ's duty to operate a fair and orderly market."
770 F.3d at 1020-1021.  That duty, and, "indeed, the very language [that the complaint]
employ[ed]" in describing it, "derive[d] directly from federal law."  *Id.*  In those circumstances,
the complaint "necessarily raise[d] a disputed question of federal law."  *Id.*  So too here.

47.     _Second_, the federal securities law question at issue here is substantial, implicating

ongoing and longstanding federal interests.  The diligence requirements of SEC Rule 15c2-12,

which governs the conduct of municipal bond underwriters, apply to hundreds of billions of

dollars in underwriting activity every year, for bonds issued by numerous state and local

governments, for all manner of purposes, across the Nation.[12]  A Puerto Rico court's potentially

overbroad construction of those requirements, and imposition of significant monetary liability

(indeed, at least $234.9 million in liability, according to Ambac, _see_ Compl. at p. 34) based on a

supposed violation of SEC Rule 15c2-12, would affect the national economy and the securities

markets by chilling underwriting or monoline insurance transactions across the country.

48.     Allowing such litigation to proceed in state or territorial courts would, moreover,

disrupt the uniform development by the federal courts of the law surrounding the Securities

Exchange Act and regulations promulgated thereunder (such as SEC Rule 15c2-12), over which

the federal courts have been granted exclusive jurisdiction by Congress, _see_ 15 U.S.C. § 78aa(a).

49.     There are no countervailing considerations.  In particular, there is no reason for

concern that the exercise of federal court jurisdiction here would upset the federal-state balance

in a manner unintended by Congress.  Because it governs the securities markets nationwide, the

federal government has comprehensively regulated securities issuances and transactions since the

1930s.  _See, e.g._, _Reserve Mgmt. Co. v. Willkie Farr & Gallagher LLP_, No. 11 Civ. 7045, 2012

WL 4378058, at *6-7 (S.D.N.Y. Sept. 25, 2012) (denying remand from removal on federal

question grounds under _Grable_ and explaining that, "given the comprehensive federal securities

regime, and the fact that Congress has granted federal courts exclusive jurisdiction over federal

---

[12] _See_ SIFMA, U.S. Municipal Issuance, https://www.sifma.org/resources/research/us-municipal-issuance (breaking down U.S. municipal bond issuance volumes).

securities law actions, there is a strong federal interest in the federal securities law issues raised
in [the] complaint") (collecting cases). For a federal court to resolve in the first instance the
scope and application of SEC Rule 15c2-12, a key federal regulation governing the municipal
bond underwriting process, would be consistent with these longstanding federal interests.

50.     Indeed, the federal interests are doubly strong in this particular case. This action
arises in the context of the Issuers' default on various Puerto Rico municipal bonds, which
contributed to Puerto Rico's financial crisis. Congress specifically delegated the job of
overseeing Puerto Rico's insolvency proceedings to the federal judiciary—and expressly
articulated the significant federal interests in an orderly resolution to the saga of Puerto Rico's
financial crisis—when it enacted PROMESA, which provides for substantial federal judicial
involvement in overseeing and resolving the Issuers' bankruptcy proceedings, as well as any
related actions. Congress even went to the extraordinary step of removing the mandatory
abstention provision applicable in bankruptcy proceedings under Title 11 from the PROMESA
jurisdictional statute, *see* 48 U.S.C. § 2166, a sign that it intended for the federal judiciary to
have an especially firm grip on proceedings under Title III and related cases.[13] It would hardly
upset the federal-state balance to require Ambac to litigate its claim in federal court, when those
claims are related to the PROMESA proceeding in which it is already an active participant and
claimant *and* when those claims are premised on contested questions of federal securities law.

---

[13] When a case is removed to federal court because it is "related to" a Title 11
bankruptcy proceeding, 28 U.S.C. § 1334(c)(2) provides that the district court "shall abstain"
from hearing the case and shall remand to state court if the case can be "timely adjudicated"
there. PROMESA, however, contains no analogous provision.

20

## TIMELINESS

51.     The Underwriter Defendants were served with process no earlier than February

20, 2020.  Accordingly, this petition is timely.  *See* 28 U.S.C. § 1446(b); *Murphy Bros, Inc. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

## NO WAIVER

52.     Nothing in this Notice of Removal should be interpreted as a waiver or

relinquishment of the Underwriter Defendants' rights to assert any defenses or objections

including, without limitation, the defenses of (i) lack of personal jurisdiction; (ii) improper venue

and/or forum non conveniens; (iii) insufficiency or lack of process or service of process; (iv)

improper joinder of claims and/or parties; (v) failure to state a claim; (vi) failure to join an

indispensable party(ies); or (vii) any other procedural or substantive defense available under state

or federal law.  The Underwriter Defendants do not concede that Puerto Rico law applies to this

dispute and reserve all rights to argue that the substantive law of another jurisdiction applies.

53.     If any question arises as to the propriety of the removal of this action, the

Underwriter Defendants request the opportunity to brief any disputed issues and to present

further evidence and oral argument in support of their position that this case has been properly

removed to this Court.

## RELATED CASES

54.     As discussed above, this Ambac Action is related to the Title III Cases for Puerto

Rico (17-03283) (jointly administered under lead Case No. 17-03283).  This Ambac Action also

is related to the National Action, which, as discussed above, is an action brought by two other

municipal bond issuers against many of the Underwriter Defendants (and other underwriters) in

connection with other bonds issued by Puerto Rico municipal issuers.  *See supra* ¶ 5.  The

National Action and this Ambac Action are likely to raise overlapping factual and legal issues on the merits.

## OTHER COMPLIANCE

55.     Although removal based on 48 U.S.C. § 2166 does not require unanimity, all of the Underwriter Defendants join in this Notice of Removal, including at least one Underwriter Defendant that was not properly served.

56.     The Underwriter Defendants have attached to this Notice of Removal as Exhibits B through H copies of all process, pleadings, and orders served upon them in the Ambac Action that they have been able to locate after a reasonable search.  The attachment of such documents does not waive or relinquish any arguments that service of process was insufficient or lacking. *See supra* ¶ 52.

57.     Today, the Underwriter Defendants will serve written notice of this Notice of Removal on the Plaintiff and will file a copy of the notice with the clerk of the Court of First Instance pursuant to 28 U.S.C. § 1446(d).

## VENUE

58.     Venue is properly laid in this Court as the U.S. district court for the district in which the Ambac Action is pending.  48 U.S.C. § 2166(d)(1); 28 U.S.C. § 1441(a).

## TRANSFER

59.     Pursuant to 48 U.S.C. § 2166(d)(3) and Local Rule 3A of the United States District Court for the District of Puerto Rico, this case should be transferred to the Honorable Laura Taylor Swain as a proceeding related to *In re Commonwealth of Puerto Rico*, No. 17-bk-03283 (D.P.R.) and related to the National Action.  *See, e.g.*, *Voya*, 266 F. Supp. 3d at 599-600 (transferring to Judge Swain cases that were removed as related to the Title III Cases).

WHEREFORE, the Underwriter Defendants respectfully request that this Court accept this Notice of Removal, refer the action to Judge Swain, and grant them such other and further relief as the Court deems just and proper.

Dated: March 20, 2020
      San Juan, Puerto Rico            Respectfully submitted,

           */s/ Roberto C. Quiñones-Rivera*
           Roberto C. Quiñones-Rivera
           USDC-PR No. 211512

           Leslie Y. Flores-Rodríguez
           USDC-PR No. 223601

           Myrgia M. Palacios-Cabrera
           USDC-PR No. 230807

           McCONNELL VALDÉS LLC
           270 Muñoz Rivera Avenue
           Hato Rey, Puerto Rico 00918
           Tel.: (787) 250-2631 / 5628
           Fac.: (787) 759-8282
           E-mail:  rcq@mcvpr.com
                            lfr@mcvpr.com
                            mpc@mcvpr.com

              – and –

           WILMER CUTLER PICKERING
             HALE AND DORR LLP
           Peter G. Neiman (*pro hac vice* to be filed)
           Philip D. Anker (*pro hac vice* to be filed)
           Ross E. Firsenbaum (*pro hac vice* to be filed)
           7 World Trade Center
           250 Greenwich Street
           New York, NY 10007
           Tel.:  (212) 230-8800
           E-mail:  peter.neiman@wilmerhale.com
                          philip.anker@wilmerhale.com
                          ross.firsenbaum@wilmerhale.com

           *Counsel to Defendants Merrill Lynch,*
           *Pierce, Fenner & Smith Incorporated;*

23

*Citigroup Global Markets Inc.; Goldman
Sachs & Co. LLC; J.P. Morgan Securities
LLC; Morgan Stanley & Co. LLC; Samuel
A. Ramirez & Co., Inc.; Raymond James &
Associates, Inc.; and UBS Financial
Services Inc.*

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b), I certify that on this 20th day of March, 2020, I caused a true and correct copy of the Underwriter Defendants' **NOTICE OF REMOVAL** to be served on counsel for the Plaintiff via e-mail and certified mail, return receipt requested.

*/s/ Roberto C. Quiñones-Rivera*
Roberto C. Quiñones-Rivera
McCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
Tel.:  (787) 250-2631 / 5628
Fac.: (787) 759-8282