# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------------- x
: 
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
    as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO, *et al*., : (Jointly Administered)
:
:
    Debtors.[1] :
---------------------------------------------------------------------------- x

**REPLY IN SUPPORT OF MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO AMEND TENTH AMENDED NOTICE, CASE MANAGEMENT AND ADMINISTRATIVE PROCEDURES REGARDING DISCLOSURE REQUIREMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

                                                                                                                                                                          Page

PRELIMINARY STATEMENT ................................................................................................ 1

REPLY .......................................................................................................................................... 2

      I.      Rule 2019(b) Groups Should Provide Retroactive Disclosure of Series-by-Series Bond Information as Requested in Motion ................................................. 2

            A.      Rule 2019 Requires Disclosure of Series-by-Series Bond Information .................................................................................................. 2

            B.      Disclosure of Series-by-Series Information Should Be Retroactive .......... 6

            C.      Retroactive Disclosure Is Appropriate to May 31, 2019 ........................... 7

            D.      Recent Rule 2019 Statements Disclosing PBA Bonds Do Not Resolve Rule 2019 Issues ........................................................................... 9

      II.     Motion Does Not Seek Plan Discovery ................................................................. 10

      III.    Disclosure of Aggregate Holdings in Joint Response Is Inadequate ................... 12

      IV.    Proposal for Disclosure of Holdings by Signatories to New PSA Is Also Inadequate ............................................................................................................. 14

CONCLUSION ........................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Northwest Airlines*,
   363 B.R. 704 (Bankr. S.D.N.Y. 2007) ................................................................................12

**Statutes**

48 U.S.C. § 2194(m)(1) .....................................................................................................................4

**Other Authorities**

FED. R. BANKR. P.
   R. 2019(a)(1) ..........................................................................................................................2
   R. 2019(b) ..................................................................................................................... *passim*
   R. 2019(b)(1) ........................................................................................................................13
   R. 2019(c)(2)(B) .................................................................................................................3, 4
   R. 2019(d) ......................................................................................................................4, 7, 8

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "<u>Committee</u>")[1] respectfully files this reply (the "<u>Reply</u>") in support of the *Motion of Official Committee of Unsecured Creditors to Amend Tenth Amended Notice, Case Management and Administrative Procedures Regarding Disclosure Requirements Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Docket No. 11746] (the "<u>Motion</u>")[2] and in response to the joint response [Docket No. 12217] (the "<u>Joint Response</u>") filed by the Ad Hoc Group of Constitutional Debtholders, Ad Hoc Group of General Obligation Bondholders, Lawful Constitutional Debt Coalition, and QTCB Noteholder Group (collectively, the "<u>New PSA Groups</u>"). In support of the Reply, the Committee respectfully states as follows:[3]

## PRELIMINARY STATEMENT

1. The New PSA Groups have filed a remarkably underwhelming response to the Committee's Motion. Indeed, the Joint Response (which is only four pages long) neither addresses the Committee's arguments in support of the Motion nor discusses any of the relevant legal authority cited by the Committee. Instead, the New PSA Groups misidentify the issues at play, propose wholly inadequate "solutions" to the disclosure issue that fail to satisfy Rule 2019, and make the irrelevant suggestion that the Motion seeks plan discovery in connection with the

---

[1] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[2] All capitalized terms used but not defined herein have the meanings set forth in the Motion.

[3] The Committee is aware that at 3:15 p.m. (ET) on March 20, 2020, *i.e.*, shortly before the deadline for the Committee to file this Reply, the Lawful Constitutional Debt Coalition (the "<u>LCDC</u>") filed a response to the *Amended Cross-Motion and Statement in Support on behalf of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, and Financial Guaranty Insurance Company with respect to Motion of Official Committee of Unsecured Creditors to Amend Tenth Amended Notice, Case Management and Administrative Procedures Regarding Disclosure Requirements Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Docket No. 12296]. The <u>Committee ha</u>s not had an opportunity to review and evaluate the arguments made in the LCDC's response, and, therefore, none of these arguments are addressed in this Reply.

Committee's potential objection to the amended plan of adjustment filed on February 28, 2020 [Docket No. 11946] (the "Amended Plan"). The Court should overrule the Joint Response and grant the relief requested in the Motion.

**REPLY**

I. **Rule 2019(b) Groups Should Provide Retroactive Disclosure of Series-by-Series Bond Information as Requested in Motion**

2. The New PSA Groups fail to offer a persuasive response to the Motion's request for retroactive disclosure of series-by-series bond information, and the Joint Response should be overruled. More specifically, the New PSA Groups fail to rebut the Committee's argument for disclosure of series-by-series bond information or the Committee's argument for retroactive disclosure of such information to May 31, 2019. Nor have the New PSA Groups resolved the Rule 2019 issues by recently disclosing their *current* PBA bond holdings.

  A. Rule 2019 Requires Disclosure of Series-by-Series Bond Information

3. The Committee's Motion demonstrates that Rule 2019 requires series-by-series disclosure in the current context of the Title III cases. As discussed in the Motion, Rule 2019 requires disclosure of the "nature and amount of **each** disclosable economic interest" held "in relation to the Debtor." Mot. ¶ 35 (quoting FED. R. BANKR. P. 2019(c)(2)(B) (emphasis added)). Rule 2019 also defines "disclosable economic interest" broadly as "any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest." FED. R. BANKR. P. 2019(a)(1). That definition is "intended to be sufficiently broad to cover **any economic interest that could affect the legal and strategic positions a stakeholder takes in a chapter 9 or chapter 11 case**." FED. R. BANKR. P. 2019 Advisory Committee Notes (emphasis added).

2

4.       Further, the Motion explains that relevant case law and legislative history clarify that Rule 2019 requires members of creditor groups to disclose the multiple positions they may hold in a debtor's capital structure, *see* Mot. ¶¶ 36-37, at 15 n.22, and that detailed series-by-series disclosure is hardly unprecedented, but is in fact typical in chapter 11 practice. *See* Mot. at 19-20 n. 26.  Applying the relevant legal authorities, the Motion demonstrates that Rule 2019 requires series-by-series disclosure given the different treatment of different series of Commonwealth and PBA bonds under the New PSA, because such detailed disclosure is necessary to provide transparency regarding the true economic interests of the Rule 2019(b) Groups active in the Title III cases.  *See* Mot. ¶¶ 38-42.

5.       The Joint Response fails to respond to, or even address, the legal authorities, precedents, and arguments raised in the Motion.  The New PSA Groups do not analyze, cite, quote, or reference Rule 2019(c)(2)(B) (requiring disclosure of "**each** disclosable economic interest") or the other related authorities cited by the Committee, such as the Advisory Committee Notes, case law, and legislative history.  Similarly, the New PSA Groups fail to address either the ample precedent in the chapter 11 context for series-by-series disclosure[4] or the Committee's argument that detailed disclosure is required given the different treatment of different series of Commonwealth and PBA bonds under the New PSA.  Apparently unable to

---

[4] Given the New PSA Groups' failure to address the precedent cited by the Committee, their assertion that the Committee's request for more detailed disclosure is "unprecedented" falls flat.  Mot. ¶ 5.  As pointed out by the Committee, disclosures based on distinctions between different types of bonds, notes, and other debt instruments by criteria such as interest rate and maturity date is **the norm** in chapter 11 practice.  *See* Mot. at 19-20 n. 26.  Further, as pointed out in the statement in support of the Motion filed by certain monoline insurers [Docket No. 12296] (the "Statement in Support"), it is not unprecedented for Rule 2019 disclosure to be based on classification of claims under a proposed plan.  *See* Statement in Support ¶ 43 (citing *In re Energy Future Holdings Corp.*, Case No. 14-10979-CSS, ECF No. 12608 (Bankr. D. Del. Feb. 9, 2018)).  While, in these Title III cases, it may have previously been acceptable to limit disclosure to the amount of indebtedness, the applicable Debtor, and whether such debt is insured, that disclosure needs to be expanded now in light of the different treatment of different types of Commonwealth and PBA bonds under the New PSA and Amended Plan.  There is simply no reason why there should be less transparency in a Title III case than in a chapter 11 case.  If anything, the opposite should be true, particularly in this Title III case, where Congress expressly identified the prior lack of transparency as a critical issue.  *See* 48 U.S.C. § 2194(m)(1) (finding that "lack of financial transparency" was one of the key factors that created Puerto Rico's fiscal emergency).

3

rebut the authorities and arguments set forth in the Motion, the New PSA Groups have decided to ignore them.

6. Instead of addressing the points raised in the Motion, the New PSA Groups frame the issue here, incorrectly, as one that involves only "additional disclosures under Rule 2019(d)." Joint Resp. ¶ 1. However, Rule 2019(d) (which requires the filing of supplemental Rule 2019 statements following material changes to previously disclosed information when groups take positions before the court) is never cited in the Motion,[5] and the Committee's request for series-by-series disclosure does not rely on Rule 2019(d). The Committee is not arguing that previously disclosed information changed, but that prior and current disclosure practices in the Title III cases are inadequate because proper disclosure of "each disclosable economic interest" under Rule 2019(c)(2)(B) in the current context of the Title III cases requires disclosure of series-by-series information. The New PSA Groups cannot escape the real issue by misstating the relief sought in the Motion.

7. It is worth noting, however, the implications of the New PSA Groups' position that the Motion should be denied because they are allegedly in compliance with Rule 2019(d). Following this logic, a Rule 2019(b) Group could exchange all its early vintage Commonwealth bonds for late vintage Commonwealth bonds and would be under no obligation to disclose that this change had occurred, because the amount of "Commonwealth bonds" listed on the group's most recent Rule 2019 disclosure would not have "changed materially" under Rule 2019(d). These groups could thus completely alter their economic interests without the public and parties in interest becoming aware. For that additional reason, series-by-series disclosure is critical.

---

[5] The Motion only briefly mentions, by way of background, the requirements similar to those of Rule 2019(d) that are contained in paragraph IV.C of the Case Management Procedures, and does not further discuss or rely on paragraph IV.C.

4

8.      Moreover, the New PSA Groups cannot credibly allege that the disclosure requested in the Motion is "an attempt to harass" creditors. Requesting compliance with Rule 2019 is not harassment, and it is clearly fair for creditor groups to comply with Rule 2019 and not leave the Court, parties in interest, and the public in the dark regarding important information with respect to the economic interests of creditor groups in these Title III cases. The New PSA Groups are hardly helpless victims here; they are sophisticated speculators who sought active involvement in the Title III cases and they are getting paid millions of dollars in additional consideration for the privilege of spearheading the PSA. These firms understood and accepted they would be subject to Rule 2019 when they decided to take a leading role in the Title III cases as members of Rule 2019(b) Groups. There is nothing unfair about asking these parties to comply with simple disclosure obligations.

9.      Further, the requested disclosure does not represent an "unfair burden"; in fact, it represents no burdens whatsoever. The members of the New PSA Groups are well-known distressed debt investment funds, and such entities have clear records showing exactly what their holdings of a particular bond are on any given day (after all, buying and selling distressed debt is their specialty). These firms can likely obtain the requested information in a matter of minutes with a few clicks of a mouse. And even if it were possible to characterize this minimal effort as somehow a burden, that negligible burden would pale in comparison to the benefits of proper Rule 2019 disclosure. Such disclosure will provide critical information to parties in interest who need to understand the economic interests held by Rule 2019(b) Groups and an immense credibility boost to the Title III cases, which affect the lives of millions of people.

10.     Finally, adequate disclosure under Rule 2019 in these Title III cases should include the level of detail requested in the Motion, consistent with the classification of

5

Commonwealth and PBA bonds under the New PSA. Anything less would fail to provide appropriate transparency with respect to the economic interests of Rule 2019(b) Groups. This is so because there are material differences in the plan distributions to the various categories of Commonwealth and PBA bonds under the New PSA based on the different discounts (allegedly ranging from 0.85% to 10%) reflecting the settlement of pending claim objections. These material differences would not be captured if disclosure were limited to more generic categories, such as, for example, disclosure merely based on whether the bonds are pre-2011 "early vintage" bonds or 2011 and thereafter "late vintage" bonds. Rule 2019 statements disclosing such limited information would fail to adequately disclose economic interests, because, among other things, a disclosure of holdings of "late vintage" bonds could refer to 2011 Commonwealth (D/E/PIB) Bonds with a 0.85% discount, or 2014 Commonwealth bonds with a 10% discount (according to the New PSA, attached as Exhibit B to the Oversight Board's disclosure statement filed on February 28, 2020). *See* Docket No. 11947-2, at 108.

11. In sum, the Motion sets forth that Rule 2019 and related legal authorities require disclosure of series-by-series information in the context of the Title III cases given the different treatment of different series of bonds under the New PSA and the need for disclosure regarding the true economic interests of Rule 2019(b) Groups. The New PSA Groups fail to rebut this point, and the Motion should be granted with respect to the Committee's request for detailed series-by-series disclosure.

B. <u>Disclosure of Series-by-Series Information Should Be Retroactive</u>

12. As discussed in the Motion, there is a need here for retroactive disclosure of series-by-series information because such information is critical to understanding the economic interests of Rule 2019(b) Groups that traded in large quantities of GO Bonds, and potentially other types of debt as well, **during the period in which the New PSA was being negotiated**.

6

*See* Mot. ¶ 43. The Motion also notes that this Court previously required retroactive disclosure after the Ad Hoc Group of GO Bondholders had engaged in the Commonwealth-COFINA litigation for a significant period without disclosing holdings of COFINA bonds. *See* Mot. ¶¶ 9, 43, at 18 n.25.

13. In response, the New PSA Groups contend that the Committee's request for retroactive disclosure is "unwarranted," but they decline to address the Committee's concerns regarding trading that occurred during the period in which the New PSA was being negotiated. The New PSA Groups also argue that "detailed disclosure of holdings based on the proposed classification in the [Amended] Plan should not be required during a period before the [Amended] Plan was even filed," Joint Resp. ¶ 5, but they offer no support for this statement, and, in any event, it misses the point. The Committee believes that retroactive disclosure is warranted as a result of the execution of the Initial PSA, the positions taken by Rule 2019(b) Groups with respect thereto, and the significant trading activity in the period until the execution of the New PSA. The fact that the Amended Plan was not yet on file during this period is not relevant to the Committee's concerns with respect to retroactive disclosure because some, if not all, of the New PSA Groups (or their representatives) became aware of these plan classes at one point or another before the Amended Plan was filed. For these reasons, and as further detailed in the Motion, the Committee believes that retroactive disclosure is warranted here.

    C.    <u>Retroactive Disclosure Is Appropriate to May 31, 2019</u>

14. The New PSA Groups assert that the Initial PSA executed on May 31, 2019 did not constitute a "pleading" or any other position "before the [C]ourt." *See* Joint Resp. ¶ 4. The reason for this assertion is unclear because the Motion (as explained above) did not address Rule 2019(d), which requires supplemental disclosure of materially changed information upon a creditor group taking a position "before the court." FED. R. BANKR. P. 2019(d); *see also* Case

7

Case:17-03283-LTS Doc#:12475 Filed:03/20/20 Entered:03/20/20 16:08:14 Desc: Main
Document Page 11 of 19

Mgmt. Proc. ¶ IV.C. The Motion does not request changes to the protocol for updating already disclosed information, but seeks improvements to the disclosure required in the first instance.

15. To the extent the New PSA Groups intend to argue that the May 31, 2019 execution of the Initial PSA is not an appropriate starting point for retroactive disclosure because the Initial PSA was not, technically, a "pleading," or other form of "taking a position before the Court," such an argument fails for multiple reasons. First, this argument misses the point. As discussed above, the Committee believes that retroactive disclosure is warranted as a result of the execution of the Initial PSA, the positions taken by Rule 2019(b) Groups with respect thereto, and the significant trading activity in the period until the execution of the New PSA. The status of the Initial PSA as a "pleading" or "position before the Court" is not relevant to this issue.[6] In other words, retroactive disclosure to May 31, 2019 would be appropriate even if the execution of the Initial PSA did not constitute taking "a position before the Court" for purposes of Rule 2019(d) and paragraph IV.C of the Case Management Procedures.

16. Second, the distinction that the New PSA Groups seek to draw between the Initial PSA and a "pleading" or "position before the Court" is a false one. Indeed, for all practical purposes, the execution of the Initial PSA constituted the taking of a position before the Court, because the Initial PSA was used to assert positions before the Court soon after its execution on May 31, 2019. For example, on June 17, 2019 the Lawful Constitutional Debt Coalition and QTCB Noteholder Group placed the Initial PSA before the Court by objecting to

---

[6] To be clear, the Committee does not believe that the execution of the PSA did not constitute taking a position before the Court. In fact, the Committee submits that footnote 3 to paragraph IV.C of the Case Management Procedures, which clarifies that taking a position before the Court "**includes, but is not limited to,** the filing of any Pleading . . . including informative motion practice containing factual or legal representations or arguments," should be read to include the execution of a plan support agreement, as well as more traditional litigation activity. In particular, as discussed herein, the Initial PSA was intimately connected to the in-court Title III process and cited in filed pleadings shortly after being executed. In fact, these PSA or RSA agreements are being used routinely in these Title III cases as arguments to attempt to convince the Court that it should grant or not grant certain relief.

proposed procedures for resolving objections to certain Commonwealth bonds on the basis that the Initial PSA had been signed. *See* Docket No. 7464.[7] Shortly thereafter, on June 25, 2019, these two groups filed a joint response in support of the Oversight Board's motion to continue a hearing and extend certain deadlines in connection with the bond objections, again citing the Initial PSA. *See* Docket No. 7614. The Lawful Constitutional Debt Coalition then filed pleadings on July 9, 2019 (a) in support of the Oversight Board's efforts to stay certain litigation, including objections to certain Commonwealth bonds and litigation seeking to recharacterize PBA lease payments as true debt, *see* Docket No. 7898, and (b) in opposition to the efforts of the Ad Hoc Group of General Obligation Bondholders to advance its conditional objection to certain Commonwealth and PBA bonds, *see* Docket No. 7900, each of which pleadings cited to the Initial PSA. Counsel for the Lawful Constitutional Debt Coalition also spoke before the Court in support of the Initial PSA at the July 24, 2019 omnibus hearing. *See* July 24, 2019 Hr'g Tr. at 84: 11-24.

D. <u>Recent Rule 2019 Statements Disclosing PBA Bonds Do Not Resolve Rule 2019 Issues</u>

17. The New PSA Groups' contention that recent Rule 2019 statements, which separately disclose PBA bonds, "satisfied Rule 2019, and no further disclosure is required," Joint Resp. ¶ 3, is incorrect. The fact that the New PSA Groups are now disclosing PBA bonds may address (in part) certain issues, *i.e.*, that the New PSA Groups (a) should separately disclose guaranteed bonds and (b) should disclose PBA bond holdings given they have all taken positions in PBA's Title III case. These recent Rule 2019 statements do not, however, change the fact that the prior statements filed by these groups consolidated each member's holdings as

---

[7] In this objection, the Lawful Constitutional Debt Coalition and QTCB Noteholder Group purported to file the Initial PSA as an exhibit, *see* Docket 7464, at 3, though it seems to have been omitted when the objection was filed. At any rate, the Initial PSA was publicly available as of June 16, 2019 at the Oversight Board's website for parties to cite to in their filed pleadings. *See* https://oversightboard.pr.gov/documents/.

9

"Constitutional Debt" or "General Obligation Bonds" without providing parties with insight into the amount of PBA bonds (or other Commonwealth guaranteed bonds) and the amount of Commonwealth bonds held by each group member at various points throughout the Title III cases. Nor do these recent Rule 2019 statements change the fact that these groups failed to disclose PBA bonds in a timely manner after taking positions in PBA's Title III case even though they were obligated to do so under the Case Management Procedures.[8]

18. In any event, the recent disclosure of PBA bonds does nothing to address the Committee's other and most important argument: that the Case Management Procedures should be modified to require disclosure of series-by-series bond information on a retroactive basis. These retroactive disclosures will provide all parties in interest with the necessary information to evaluate the legal positions taken by Rule 2019(b) Groups during these cases.

## II. Motion Does Not Seek Plan Discovery

19. In an apparent effort to distract the Court from the true issue here—proper disclosure under Rule 2019—the New PSA Groups suggest that the Committee is attempting to use Rule 2019 as a vehicle for obtaining "Plan-related discovery" motivated by the Committee being "unhappy with the Oversight Board's decision to settle litigation." Joint Resp. ¶¶ 3-4. This suggestion should be disregarded. The fact that information which must be disclosed under

---

[8] The most recent disclosures only highlight prior deficiencies. For example, the March 12, 2020 Rule 2019 statement filed by the Ad Hoc Group of Constitutional Debtholders shows changes to the GO Bond holdings of certain of its members and discloses for the first time which of these GO Bonds were Commonwealth bonds, PBA bonds, or other guaranteed bonds. *See* Docket No. 12276. This only raises additional questions regarding which types of bonds were held and traded previously. The same dynamic is at play with respect to the other first-time PBA bond disclosures. *See e.g.*, Docket No. 11161. Further, even the New PSA Groups' recent disclosures fail to identify other issuers of Commonwealth-guaranteed debt, *see e.g.,* Docket No, 11161 (disclosing generic category of "Other CW Guaranteed Bonds"); Docket No. 12276 (disclosing generic category of "Other Constitutional Debt"), or fail to even provide a separate category for non-PBA Commonwealth-guaranteed debt. *See* Docket No. 11293 (disclosing PBA bonds and generic category of "General Obligation Bonds," presumably including bonds issued by entities other than PBA (though, confusingly, defined together with PBA bonds as "bonds issued or guaranteed by the Commonwealth"); Docket No. 11431 (same).

10

Rule 2019 may also be subject to discovery in a different context is no excuse for failing to comply with Rule 2019, which requires public disclosure to this Court and to all parties in interest of each Rule 2019(b) Group member's holdings within a debtor's capital structure.

20. The disclosure requirements under Rule 2019 are separate and independent from whatever discovery may be permitted in the context of a contested confirmation hearing. Indeed, Rule 2019 disclosure is relevant beyond the confirmation context, as economic interests disclosed under Rule 2019 may influence the positions taken by Rule 2019(b) Groups in a variety of different aspects of these cases, such as their participation in adversary proceedings, the filing of substantive pleadings in the main Title III case, and the filing by certain Rule 2019(b) Groups of claim objections and conditional claim objections. These are independent of the positions taken with respect to the plan of adjustment.

21. Rule 2019 disclosure is fundamentally distinct from discovery. Rule 2019 is broadly applicable to creditor groups, and the disclosure obligations thereunder do not respond to the particular interests of litigants, but to the need for credibility and openness in the bankruptcy process. For this reason, Rule 2019 is designed to provide for disclosure of information broadly to the public and parties in interest, not only to those parties with the resources and wherewithal to obtain discovery. This is an especially important point in these Title III cases, where there are thousands upon thousands of creditors, including bondholders, not actively involved in Title III litigation. Rule 2019(b) Groups should not be able to use the possibility that particular parties may seek plan discovery to evade their disclosure obligations to the public and parties in interest more broadly.[9]

---

[9] Notably, case law holds that Rule 2019 requires public disclosure of economic interests, and thus information regarding Rule 2019(b) Group members' holdings cannot be disclosed on a confidential basis. *See In re Northwest Airlines*, 363 B.R. 704, 708-09 (Bankr. S.D.N.Y. 2007) (denying request to file Rule 2019 disclosures under seal, and noting that "there is no reason to assume that the drafters believed that the goals of

22. In addition, the Committee's opposition to the Amended Plan has no impact on the requirements of Rule 2019. As mentioned above, Rule 2019 is designed to provide information to the public at large, not any particular party, and can be asserted by any party in interest in these Title III cases. Full disclosure regarding Rule 2019(b) Groups' economic interests is a benefit to the Title III process, and the Committee's own support or opposition to the Amended Plan is irrelevant to the issue of what Rule 2019 requires.

### III. Disclosure of Aggregate Holdings in Joint Response Is Inadequate

23. The New PSA Groups provide, in Exhibit A to the Joint Response, a one-time disclosure, as of February 28, 2020, of their holdings of various series of Commonwealth and PBA bonds. This disclosure is inadequate for multiple reasons, in addition to the obvious problem that the Committee does not seek voluntary disclosure by certain Rule 2019(b) Groups, but mandatory disclosure under Rule 2019 by all Rule 2019(b) Groups.

24. To begin with, aggregate disclosure of holdings by all four New PSA Groups is plainly insufficient under Rule 2019, which requires disclosure on a **group-by-group** basis of the holdings of **each member of each** group. The notion that this type of aggregate disclosure could satisfy Rule 2019 is, frankly, nonsensical, as is the idea that such information is "the only arguably relevant information" the Committee is seeking. Joint Resp. ¶ 5. The Committee seeks disclosure in compliance with Rule 2019. As explained in the Motion, Rule 2019 is designed to compel the disclosure of the holdings of members of particular groups so that the Court, parties in interest, and the public can understand the economic interests of groups and their members. And aggregate disclosure is inadequate here because the New PSA Groups are far from monolithic; some of them have attacked the validity of GO Bonds of different vintages.

---

[Rule 10-211, the precursor of Rule 2019] could be achieved if the required information were filed secretly" and that "public disclosure is still needed"). By contrast, plan discovery could be produced confidentially pursuant to a protective order.

Aggregate disclosure makes it impossible to see the differences between these groups. Put simply, the New PSA Groups cannot dictate what is "relevant" to Rule 2019; they must comply with the Rule.[10] The aggregate disclosure on Exhibit A to the Joint Response fails to do that.

25. Second, a one-time "snapshot" of bond holdings does not provide much-needed retroactive disclosure. As explained in the Motion, retroactive disclosure is critical in the current context of the Title III cases given that members of the New PSA Groups actively traded in GO Bonds (without specifying the series being traded) during the time period in which the New PSA was negotiated. The public and parties in interest are entitled to understand what happened here (*i.e.*, how economic interests changed during the period in which the New PSA was being negotiated); otherwise, they will be left guessing about how things got to where they are. As the Court remarked (in highly analogous circumstances) to counsel for the Ad Hoc Group of General Obligation Bondholders prior to ordering retroactive Rule 2019 disclosure at the July 25, 2018 omnibus hearing: "[Y]ou were actively involved in taking positions in the public litigation. There were press releases, at least one press release that was in the context of your having disclosed only a position on one side of it . . . and these are securities that are actively traded in the market . . . . . So why shouldn't the market have full information about where you were at particular times." July 25, 2018 Hr'g Tr. at 95: 7-11, 14-15, 18-19.

26. Third, the New PSA Groups' one-time aggregate disclosure does nothing to remedy the deficient Rule 2019 statements filed by the New PSA Groups in the past, such as the Rule 2019 statements filed by the Lawful Constitutional Debt Coalition, *see* Docket No. 9732,

---

[10] While the New PSA Groups correctly point out that certain PSA signatories are not members of Rule 2019(b) Groups, that fact does not lessen the New PSA Groups' obligations under Rule 2019, because those New PSA Groups are clearly groups that consist of multiple creditors that are acting in concert to advance their common interests. FED. R. BANKR. P. 2019(b)(1). Again, the issue here is not what the New PSA Groups think is relevant, but what Rule 2019 requires. Rule 2019 plainly requires disclosure of *each* disclosable economic interest held by *each* group member.

13

and the Ad Hoc Constitutional Debtholder Group, *see* Docket No. 10742, that failed to disclose PBA bond holdings even after each of those group took positions in the PBA Title III case. As noted above and explained in the Motion, under the Case Management Procedures, the New PSA Groups were required to disclose PBA bond holdings after taking a position in the PBA Title III case (even without the further amendments to the Case Management Procedures proposed in the Motion), yet they did not do so. This is another reason why the disclosure in Exhibit A to the Joint Response is insufficient.

27. The Committee also notes that, while Exhibit A purportedly discloses holdings "broken out by the classes contained in the Plan," there is no reference in Exhibit A to non-Commonwealth or PBA bond debt holdings, such as, for example, the unsecured claims that at least one of the Rule 2019(b) Group members sought to purchase in December 2019. Any disclosure in compliance with Rule 2019 must contain that information.

**IV. Proposal for Disclosure of Holdings by Signatories to New PSA Is Also Inadequate**

28. The New PSA Groups propose, apparently as an alternative to compliance with Rule 2019, that a "superior method" for disclosure of support for the New PSA is for the Oversight Board to include New PSA signatories' holdings for each class under the Amended Plan in its weekly public updates or in an update to the disclosure statement filed on February 28, 2020.

29. This proposal, like the aggregate disclosure attached to the Joint Response, fails to satisfy Rule 2019 or address the concerns raised in the Motion. One problem, for the same reasons as stated above, is that this proposed disclosure would not be retroactive and, therefore, would lack critical information for parties analyzing Rule 2019(b) Groups' economic interests with respect to the New PSA. Moreover, Rule 2019 requires automatic compliance by all Rule 2019(b) Groups, but the New PSA Groups' proposal would only cover signatories of the New

PSA. The holdings of groups that do not sign the New PSA are just as important for parties to understand as those of groups that do sign. In addition, Rule 2019 disclosure is mandatory, while the New PSA Groups' proposal appears to be a form of disclosure undertaken by the Oversight Board if it so chooses (apparently the New PSA Groups have asked the Oversight Board to undertake this disclosure, but it is not clear whether the Oversight Board has agreed to do so).[11] Voluntary disclosure is not an adequate replacement for the mandatory disclosure provided by Rule 2019. There must be legal consequences for a failure to disclose, and there are no such consequences if disclosure is on a voluntary basis. In sum, the New PSA Groups' signatory disclosure proposal is flawed in multiple ways and fails to satisfy Rule 2019.

## CONCLUSION

30. Based on the above, the Committee requests that the Court overrule the Joint Response and grant the Motion.

[*Remainder of page intentionally left blank.*]

---

[11] Perhaps the New PSA Groups envision that the Court would enter an order forcing the Oversight Board to make this type of disclosure even if it refused, but the New PSA Groups do not address whether this would be legally viable, especially if other signatories not subject to Rule 2019 did not consent to such disclosure (and it is unclear whether such signatories would provide such consent).

WHEREFORE, the Committee respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit A** to the Motion, granting the relief requested therein and granting such other relief as the Court deems just and proper.

Dated: March 20, 2020

By: /s/ *Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: /s/ *Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*