**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>               Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**OPPOSITION OF THE QTCB NOTEHOLDER GROUP TO CROSS-MOTION AND STATEMENT IN SUPPORT ON BEHALF OF ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AMBAC ASSURANCE CORPORATION, AND FINANCIAL GUARANTY INSURANCE COMPANY WITH RESPECT TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO AMEND TENTH AMENDED CASE MANAGEMENT PROCEDURES AND ADMINISTRATIVE PROCEDURES REGARDING DISCLOSURE REQUIREMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

The QTCB Noteholder Group (the "QTCB Noteholder Group"[2]) hereby files this opposition to the *Amended Cross-Motion and Statement in Support on Behalf of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, and Financial Guaranty Insurance Company to Motion of the Official Committee of Unsecured Creditors to Amend Tenth Amended Case Management Procedures and Administrative Procedures Regarding Disclosure Requirements Pursuant to Federal Rule of Bankruptcy Procedure 2019* (ECF No. 12296) (the "Motion"),[3] and respectfully states as follows:

1.     With respect to the Movants' request for disclosure beyond that required by the Case Management Procedures and Rule 2019, the QTCB Noteholder Group relies on and incorporates by reference, the points and statements made in the *Joint Response of PSA Creditors to Motion of Official Committee of Unsecured Creditors to Amend Tenth Amended Notice, Case Management and Administrative Procedures Regarding Disclosure Requirements Pursuant to Federal Rule of Bankruptcy Procedure 2019* (ECF No. 12217) (the "Response").

2.     Although Movants have now retracted many of their baseless allegations, the Motion still relies on meritless insinuations about the QTCB Noteholder Group in an attempt to malign its support of the *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, (ECF No. 11946) (the "Amended Plan").  Because the Motion provides no

---

[2]   The members of the QTCB Noteholder Group and their respective holdings are set forth in the *Fifth Supplemental Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019* (ECF No. 11293) (the "Fifth Supplemental Statement").  As of the date hereof, Counsel represents only the QTCB Noteholder Group with respect to the Debtors' Title III Cases. In addition, neither the QTCB Noteholder Group nor any member of the QTCB Noteholder Group (a) assumes any fiduciary or other duties to any other creditor or person and (b) does not purport to act, represent or speak on behalf of any other entities in connection with the Debtors' Title III Cases.

[3]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

factual support for its insinuations, the QTCB Noteholder Group will not dignify them with engagement that is irrelevant to Rule 2019 disclosure.

3.     Instead, the QTCB Noteholder Group herein affirms that it has complied with Rule 2019 and the Case Management Procedures and herein provides *voluntary* retroactive disclosure of holdings in each Amended Plan class—well beyond any requirement pursuant to Rule 2019.

4.     The QTCB Noteholder Group has been consistent since it first took a position in the Commonwealth case and filed its first verified statement pursuant to Rule 2019: as its name indicates, its primary focus has been the Qualified Tax Credit Bonds (the "QTCBs") issued by PBA and guaranteed by the Commonwealth as constitutional general obligation bonds. *See, e.g.*, *Motion of the QTCB Noteholder Group to Intervene and/or for Joinder under Federal Rules of Bankruptcy Procedure 7024 & 7019* (Case No. 18-AP-149, ECF No. 12). During the almost three year life of these PROMESA proceedings, the holdings of the members of the QTCB Noteholder Group have expanded to include additional general obligation bonds of the Commonwealth. Such holdings have been disclosed in each of the QTCB Noteholder Group's verified supplemental statements.[4]

5.     The QTCB Noteholder Group has thoughtfully complied with its disclosure obligations each time it has taken a position in the Commonwealth Title III Case, the COFINA Title III Case and, after the PBA petition date, the PBA Title III Case. It has not taken a position in any other Title III Case.

---

[4] *See Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019* [ECF No. 1053]; *Supplemental Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019* [ECF No. 3765]; *Corrected Supplemental Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019* [ECF No. 3778]; *Second Supplemental Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019* [ECF No. 4871]; *Third Supplemental Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019* [ECF No. 7659]; *Fourth Supplemental Verified Statement of the QTCB Noteholder Group Pursuant Bankruptcy Rule 2019* (ECF No. 8618); the Fifth Supplemental Statement.

6.      Rule 2019 and the Case Management Procedures require the QTCB Noteholder Group to supplement prior disclosure to reflect (a) the disclosable economic interests, (b) of group members, (c) in Title III Debtors in whose case the group has taken a position, (d) whenever the group takes a position before the Court in such Title III debtor's case, (e) **_if_** there has been a material change in the information required under Rule 2019(c).[5]   "The absence of such a supplemental statement shall be deemed a representation that no material changes have occurred." *Fifth Amended Notice, Case Management and Administrative Procedures* at IV.C., attached as Ex. 1 to *Order Further Amending Case Management Procedures to (A) Reschedule the September 2018 Omnibus Hearing, (B) Provide That Parties Are No Longer Required to Provide Service of Paper Courtesy Copies to the Court, and (C) Provide Certain Clarifying Changes Regarding the Disclosure Requirements for Rule 2019(b) Groups* (ECF No. 3730).

7.      Paragraph 28 of the Motion suggests that the QTCB Noteholder Group failed to "timely update[]" its Rule 2019 statements after the filing of the PBA Title III petition.  *First*, there is no obligation in Rule 2019 or the Case Management Procedures to retroactively "update" prior Rule 2019 statements when a petition is filed by a new Debtor.  *Second*, once the QTCB Noteholder Group met the conditions for supplemental disclosure (*i.e.*, as described above, including a material change *and* taking a position), it promptly filed its Fifth Supplemental

---

[5] Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured") share the same understanding of the Case Management Procedures and requirements of Rule 2019.  *See Urgent Motion of* [Assured] *to Compel Compliance by the Official Committee of Unsecured Creditors with Federal Rule of Bankruptcy Procedure 2019 and to Amend the Eighth Amended Case Management Procedures* (ECF No. 6963) at 4 ("the [Court] required that if information in the most recently filed 2019 statement 'changes materially, the Rule 2019(b) Group must file a supplemental verified statement with or within 48 hours of the next instance in which the Rule 2019(b) Group takes a position before the Court.'") (quoting *Order Regarding the Applicability of F.R.B.P. 2019 to the Title III Cases and a Further Proposed Amendment to the Case Management Order* (ECF No. 754), ¶ 3).  Assured further recognized that, as set forth in the Case Management Procedures, "the absence of such a supplemental statement shall be deemed a representation that no material changes have occurred."  *Id*. (quotation omitted).

Statement.  Moreover, until the Oversight Board filed its Amended Plan, no party objected to any Rule 2019(b) Group reporting general obligation bonds (whether guaranteed or direct) in a single category.

8.     Movants (and the Committee) are attempting to weaponize Rule 2019 and the Case Management Procedures to obtain discovery to facilitate their public opposition campaign against the Amended Plan and its supporters.  At bottom, the Motion does not give rise to a legitimate dispute regarding compliance with Rule 2019.  Rather, the Motion is simply another effort to sideswipe a plan and confirmation process that is underway.

9.     The QTCB Noteholder Group has already endeavored to provide Movants with the disclosure they want.  For example, the Fifth Supplemental Statement provides a specific breakdown of general obligation bond holdings by issuer.  Additionally, the Response discloses aggregate holdings of the PSA Creditors (as defined in the Response) broken out by the relevant classes set forth in the Amended Plan.

10.     In an effort to avoid distraction, the QTCB Noteholder Group hereby provides the following on a ***voluntary*** basis[6] attached hereto as Exhibit A:

- retroactive amendments of each supplemental verified statement filed by the QTCB Noteholder Group since May 31, 2019 (the execution date of the initial and now obsolete PSA) to show the detailed holdings by class pursuant to the Amended Plan filed on February 28, 2020;

- further disclosure of the class-specific holdings pursuant to the Amended Plan on the following dates, even though the QTCB Noteholder Group took no position before the Court on these dates:  (i) the date the Oversight Board filed the *Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 8765) (the "Initial Plan"), (ii) February 9, 2020 (the date the PSA was executed); and (iii) February 28, 2020 (the date the Oversight Board filed the Amended Plan).

---

[6] Such disclosure is not required pursuant to Rule 2019 or the Case Management Procedures.

11. The voluntary disclosure in Exhibit A distinguishes between the following types of general obligation bonds in accordance with the Amended Plan:

i. Commonwealth GO Bonds:

- "Vintage" CW Bonds
- 2011 CW Bonds
- Insured CW Bonds
- 2011 CW Series D/E/PIB Bonds
- Insured 2011 CW Series D/E/PIB Bonds
- 2012 CW Bonds (including GSA Helicopter & Hacienda Loans)
- Insured 2012 CW Bonds
- 2014 CW Bonds

ii. PBA Bonds (CW Guarantee Obligations):

- "Vintage" PBA Bonds
- Insured "Vintage" PBA Bonds
- 2011 PBA Bonds
- Insured 2011 PBA Bonds
- 2012 PBA Bonds

iii. Non-PBA Commonwealth Guarantee Obligations:

- Non-PBA "Vintage" CW Guarantee Bonds
- Non-PBA 2011 CW Guarantee Bonds
- Non-PBA 2012 CW Guarantee Bonds
- Non-PBA 2014 CW Guarantee Bonds (including PRIFA BANS and PAA Bonds)

12. However, the QTCB Noteholder Group opposes the unreasonable expansion of disclosure plainly beyond the outer boundaries of Rule 2019—and any conceivable plan objection, including economic interests in (a) non-debtors like PRIFA and reorganized COFINA and (b) debtors in whose cases a Rule 2019 Group has not taken a position. For example, the QTCB Noteholder Group has taken no position in the ERS or HTA Title III Cases.[7]

---

[7] In any event, the members of the QTCB Noteholder Group hold no ERS bonds. An affiliate of one of the members of the QTCB Noteholder Group has appeared and taken positions in the HTA Title III Case through its own separate counsel. That affiliate is not, nor has it ever been, a member of the QTCB Noteholder Group or represented by counsel to the QTCB Noteholder Group.

13.     The purpose of Rule 2019 is to identify a Rule 2019 Group's members and representatives so that courts and parties in interest will know whose interest is advocated by the group. *See generally In re Wash. Mut., Inc.*, 419 B.R. 271, 278 (Bankr. D. Del. 2009) (observing that Rule 2019 "provide[s] a routine method of advising the court and all parties in interest of the actual economic interest of all persons participating in the proceedings.") (quotation omitted). Rule 2019 should not be used as a fishing expedition in contested matters—and there is no support for the Movants' assertion that disclosure beyond that required by Rule 2019 is appropriate or necessary for the purpose of section 1126(e) of the Bankruptcy Code. *See* Motion ¶ 46.

14.     Even if section 1126(e) were relevant for Rule 2019 purposes (it is not), there is no authority (and Movants cite none) for deploying section 1126(e) to designate the vote of a creditor who purchases economic interests in other classes with a view to supporting confirmation.  In fact, the section 1126(e) jurisprudence demonstrates that the "economic interests" of the settling parties is legally irrelevant to vote designation. *See In re Adelphia Commc'ns Corp.*, 359 B.R. 54, 64 (Bankr. S.D.N.Y. 2006) ("I must rule that a creditor's ownership of claims in several debtor entities does not, by itself, amount to bad faith under 1126(e), and does not afford a sufficient basis on which to disqualify votes of creditors who have voted to accept the plan . . . the law has long upheld creditors' efforts to maximize their individual recoveries in their self-interest as creditors under a plan.").

15.     Accordingly, notwithstanding the voluntary disclosures made herein, the QTCB Noteholder Group reserves its right to oppose any further efforts to stretch or abuse Rule 2019.

16.     The QTCB Noteholder Group will continue to carefully comply with any disclosure requirements imposed by the Court, whether pursuant to Rule 2019 or otherwise.  Nonetheless, the QTCB Noteholder Group asks the Court to consider the significant burden on its members'

resources (time and expense for group members and their counsel) to track and ensure compliance with changes to such detailed disclosure—retroactively and for the foreseeable future.  Moreover, having voluntarily provided the detailed disclosure sought in the Motion, the QTCB Noteholder Group has no assurance that Movants (and/or the Committee or another future plan opponent) will not repeatedly seek to move the goalposts.  For example, if the Oversight Board further amends classification under the Amended Plan, parties may again demand retroactive amended disclosure under Rule 2019—as they do now.  The QTCB Noteholder Group has undertaken the significant burden of doing just that—this time, for the reasons expressed herein—but respectfully asks the Court to consider the burden and the need for some degree of certainty and predictability in complying with disclosure obligations when Rule 2019 Groups take positions before the Court.

17.     The expansion of the disclosure obligations sought in the Motion goes far beyond the plain requirements of Rule 2019.  In the event the Court is inclined to require enhanced disclosure, the QTCB Noteholder Group submits that those obligations should apply to all parties in interest that take a position in these Title III Cases and related adversary proceedings.  If the intention is to shed light on the economic interests of the various parties and their motivations for supporting (or not supporting as the case may be) the Amended Plan, there is no good reason given the facts and circumstances of these Title III Cases to limit such disclosure to targeted bondholder groups.

18.     Accordingly, the QTCB Noteholder Group respectfully requests that the Court deny so much of the Motion as it seeks to impose disclosure requirements beyond that required by Rule 2019, and deny the balance of the Motion as moot in light of the disclosure provided hereby.

DATED:  March 20, 2020


**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Kurt A. Mayr*
Kurt A. Mayr (admitted *pro hac vice*)
David L. Lawton (admitted *pro hac vice*)
Shannon B. Wolf (admitted *pro hac vice*)
One State Street
Hartford, CT 06103-3178
Tel. (860) 240-2700
Fax: (860) 240-2701
kurt.mayr@morganlewis.com
david.lawton@morganlewis.com
shannon.wolf@morganlewis.com


Sabin Willett (admitted *pro hac vice*)
One Federal Street
Boston, MA 02110-1726
Tel: (617) 951-8775
sabin.willett@morganlewis.com

**CORREA-ACEVEDO   &   ABESADA   LAW OFFICES, PSC**

*/s/ Sergio Criado*
Sergio Criado
USDC-PR No. 226307
Roberto Abesada-Agüet
USDC-PR No. 216706
Centro Internacional de Mercadeo, Torre II
# 90 Carr. 165, Suite 407
Guaynabo, P.R.  00968
Tel. (787) 273-8300
Fax (787) 273-8379
ra@calopsc.com
scriado@calopsc.com


*Co-Counsel for the QTCB Noteholder Group*

## EXHIBIT A

## Voluntary Disclosure of the QTCB Noteholder Group

*QTCB Noteholder Group (Aggregate)*

| Commonwealth Bonds: | 31-May-19 | 26-Jun-19 | 5-Sep-19 | 27-Sep-19 | 5-Feb-20 | 9-Feb-20 | 19-Feb-20 | 28-Feb-20 |
|---|---|---|---|---|---|---|---|---|
| Vintage CW Bonds | $395,259,000 | $475,048,000 | $486,108,000 | $474,444,000 | $548,324,000 | $548,324,000 | $550,859,000 | $549,004,000 |
| Insured Vintage CW Bonds | 8,143,475 | 8,143,475 | 7,858,475 | 20,975,475 | 20,377,225 | 20,377,225 | 20,377,225 | 18,406,025 |
| 2011 CW Bonds | 23,545,000 | 23,545,000 | 23,545,000 | 23,545,000 | 23,545,000 | 23,545,000 | 23,545,000 | 23,545,000 |
| Insured 2011 CW Bonds | – | – | – | – | – | – | – | – |
| 2011 CW Series D/E/PIB Bonds | 20,410,000 | 20,410,000 | 20,410,000 | 20,410,000 | 21,755,000 | 21,755,000 | 34,605,000 | 34,595,000 |
| Insured 2011 CW Series D/E/PIB Bonds | – | – | – | – | – | – | – | – |
| 2012 CW Bonds | 211,405,000 | 211,405,000 | 211,405,000 | 201,405,000 | 206,405,000 | 206,405,000 | 259,655,000 | 259,435,000 |
| Insured 2012 CW Bonds | – | – | – | – | – | – | – | – |
| 2014 CW Bonds | 37,770,000 | 37,770,000 | 37,770,000 | 37,770,000 | 37,770,000 | 37,770,000 | 156,920,000 | 156,920,000 |
| **Non-PBA Commonwealth Guarantee:** | 31-May-19 | 26-Jun-19 | 5-Sep-19 | 27-Sep-19 | 5-Feb-20 | 9-Feb-20 | 19-Feb-20 | 28-Feb-20 |
| Non-PBA Vintage CW Guarantee Bonds | – | – | – | – | – | – | – | – |
| Non-PBA 2011 CW Guarantee Bonds | – | – | – | – | – | – | – | – |
| Non-PBA 2012 CW Guarantee Bonds | – | – | – | – | – | – | – | – |
| Non-PBA 2014 CW Guarantee Bonds | – | – | – | – | – | – | – | – |
| **PBA Bonds:** | 31-May-19 | 26-Jun-19 | 5-Sep-19 | 27-Sep-19 | 5-Feb-20 | 9-Feb-20 | 19-Feb-20 | 28-Feb-20 |
| Vintage PBA Bonds | $77,725,895 | $115,469,895 | $118,804,895 | $118,804,895 | $119,274,895 | $119,274,895 | $137,919,895 | $137,919,895 |
| Insured Vintage PBA Bonds | – | – | – | – | – | – | – | – |
| 2011 PBA Bonds | 633,718,000 | 634,604,000 | 631,814,000 | 637,159,000 | 669,706,000 | 669,706,000 | 681,481,000 | 681,481,000 |
| Insured 2011 PBA Bonds | – | – | – | – | – | – | – | – |
| 2012 PBA Bonds | 24,146,000 | 26,246,000 | 26,246,000 | 26,521,000 | 26,521,000 | 26,521,000 | 26,521,000 | 26,521,000 |

The information set forth herein (including this Exhibit A) is based upon information provided to Counsel by the members of the QTCB Noteholder Group for purposes of this voluntary disclosure.

As of the date hereof, Counsel represents only the QTCB Noteholder Group with respect to the Debtors' Title III Cases. In addition, neither the QTCB Noteholder Group nor any member of the QTCB Noteholder Group (a) assumes any fiduciary or other duties to any other creditor or person and (b) does not purport to act, represent or speak on behalf of any other entities in connection with the Debtors' Title III cases.

Nothing contained in this Opposition (including this Exhibit A) is intended to or should be construed as (a) a limitation upon, or waiver of any right to assert, file and/or amend its claims in accordance with applicable law and any orders entered in this or any other related Title III Case case by any QTCB Noteholder Group member, its affiliates or any other entity, or (b) an admission with respect to any fact or legal theory.

Additional holders of QTCBs or other bonds may become members of the QTCB Noteholder Group, and certain members of the QTCB Noteholder Group may cease to be members in the future. The QTCB Noteholder Group, through its Counsel, reserves the right to amend or supplement this voluntary disclosure as necessary for that or any other reason.

## Voluntary Disclosure of the QTCB Noteholder Group

*Canyon Capital Advisors LLC*

| Commonwealth Bonds: | 31-May-19 | 26-Jun-19 | 5-Sep-19 | 27-Sep-19 | 5-Feb-20 | 9-Feb-20 | 19-Feb-20 | 28-Feb-20 |
|---|---|---|---|---|---|---|---|---|
| Vintage CW Bonds | $254,264,000 | $254,264,000 | $254,264,000 | $242,600,000 | $287,422,000 | $287,422,000 | $287,422,000 | $285,567,000 |
| Insured Vintage CW Bonds | 8,143,475 | 8,143,475 | 7,858,475 | 20,975,475 | 20,377,225 | 20,377,225 | 20,377,225 | 18,406,025 |
| 2011 CW Bonds | 12,895,000 | 12,895,000 | 12,895,000 | 12,895,000 | 12,895,000 | 12,895,000 | 12,895,000 | 12,895,000 |
| 2011 CW Series D/E/PIB Bonds | 15,500,000 | 15,500,000 | 15,500,000 | 15,500,000 | 16,845,000 | 16,845,000 | 16,845,000 | 16,835,000 |
| 2012 CW Bonds | 128,030,000 | 128,030,000 | 128,030,000 | 118,030,000 | 123,030,000 | 123,030,000 | 123,030,000 | 122,810,000 |
| 2014 CW Bonds | – | – | – | – | – | – | 10,000,000 | 10,000,000 |

| PBA Bonds: | 31-May-19 | 26-Jun-19 | 5-Sep-19 | 27-Sep-19 | 5-Feb-20 | 9-Feb-20 | 19-Feb-20 | 28-Feb-20 |
|---|---|---|---|---|---|---|---|---|
| Vintage PBA Bonds | $765,895 | $765,895 | $765,895 | $765,895 | $6,330,895 | $6,330,895 | $24,975,895 | $24,975,895 |
| 2011 PBA Bonds | 264,816,000 | 303,202,000 | 303,202,000 | 308,547,000 | 359,094,000 | 359,094,000 | 370,869,000 | 370,869,000 |
| 2012 PBA Bonds | 1,930,000 | 1,930,000 | 1,930,000 | 1,930,000 | 1,930,000 | 1,930,000 | 1,930,000 | 1,930,000 |

## Voluntary Disclosure of the QTCB Noteholder Group

*Sculptor Capital Management*

| Commonwealth Bonds: | 31-May-19 | 26-Jun-19 | 5-Sep-19 | 27-Sep-19 | 5-Feb-20 | 9-Feb-20 | 19-Feb-20 | 28-Feb-20 |
|---|---|---|---|---|---|---|---|---|
| Vintage CW Bonds | $32,675,000 | $99,059,000 | $99,059,000 | $99,059,000 | $83,269,000 | $83,269,000 | $85,804,000 | $85,804,000 |
| 2011 CW Series D/E/PIB Bonds | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 15,850,000 | 15,850,000 |
| 2012 CW Bonds | 38,585,000 | 38,585,000 | 38,585,000 | 38,585,000 | 38,585,000 | 38,585,000 | 91,835,000 | 91,835,000 |
| 2014 CW Bonds | – | – | – | – | – | – | 109,150,000 | 109,150,000 |

| PBA Bonds: | 31-May-19 | 26-Jun-19 | 5-Sep-19 | 27-Sep-19 | 5-Feb-20 | 9-Feb-20 | 19-Feb-20 | 28-Feb-20 |
|---|---|---|---|---|---|---|---|---|
| Vintage PBA Bonds | – | $37,744,000 | $41,079,000 | $41,079,000 | $35,984,000 | $35,984,000 | $35,984,000 | $35,984,000 |
| 2011 PBA Bonds | 237,875,000 | 200,375,000 | 197,585,000 | 197,585,000 | 179,585,000 | 179,585,000 | 179,585,000 | 179,585,000 |
| 2012 PBA Bonds | – | 2,100,000 | 2,100,000 | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 |

## Voluntary Disclosure of the QTCB Noteholder Group

*Davidson Kempner Capital Management LP*

| Commonwealth Bonds: | 31-May-19 | 26-Jun-19 | 5-Sep-19 | 27-Sep-19 | 5-Feb-20 | 9-Feb-20 | 19-Feb-20 | 28-Feb-20 |
|---|---|---|---|---|---|---|---|---|
| Vintage CW Bonds | $108,320,000 | $121,725,000 | $132,785,000 | $132,785,000 | $177,633,000 | $177,633,000 | $177,633,000 | $177,633,000 |
| 2011 CW Bonds | 10,650,000 | 10,650,000 | 10,650,000 | 10,650,000 | 10,650,000 | 10,650,000 | 10,650,000 | 10,650,000 |
| 2011 CW Series D/E/PIB Bonds | 1,910,000 | 1,910,000 | 1,910,000 | 1,910,000 | 1,910,000 | 1,910,000 | 1,910,000 | 1,910,000 |
| 2012 CW Bonds | 44,790,000 | 44,790,000 | 44,790,000 | 44,790,000 | 44,790,000 | 44,790,000 | 44,790,000 | 44,790,000 |
| 2014 CW Bonds | 37,770,000 | 37,770,000 | 37,770,000 | 37,770,000 | 37,770,000 | 37,770,000 | 37,770,000 | 37,770,000 |
| **PBA Bonds:** | **31-May-19** | **26-Jun-19** | **5-Sep-19** | **27-Sep-19** | **5-Feb-20** | **9-Feb-20** | **19-Feb-20** | **28-Feb-20** |
| Vintage PBA Bonds | $76,960,000 | $76,960,000 | $76,960,000 | $76,960,000 | $76,960,000 | $76,960,000 | $76,960,000 | $76,960,000 |
| 2011 PBA Bonds | 131,027,000 | 131,027,000 | 131,027,000 | 131,027,000 | 131,027,000 | 131,027,000 | 131,027,000 | 131,027,000 |
| 2012 PBA Bonds | 22,216,000 | 22,216,000 | 22,216,000 | 22,216,000 | 22,216,000 | 22,216,000 | 22,216,000 | 22,216,000 |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

*<u>/s/ Sergio Criado</u>*

USDC-PR No. 226307