# <u>ANEXO B</u>

ACUERDO DE APOYO AL PLAN DE BONISTAS GO Y BONISTAS DE LA AEP

COPIA DE FIRMA

## ACUERDO DE APOYO AL PLAN

ACUERDO DE APOYO AL PLAN (PSA), del 9 de febrero de 2020, celebrado entre a) la Junta de Supervisión y Administración Financiera para Puerto Rico (la "**Junta de Supervisión**"), como representante del Estado Libre Asociado de Puerto Rico (el "**ELA**"), la Autoridad de Edificios Públicos de Puerto Rico ("**AEP**") y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("**SRE**"), b) los tenedores de Reclamaciones por los Bonos OG y/o Reclamaciones por los Bonos de Garantía del ELA, cada uno de los cuales se define más adelante, que podrían incluir a los asesores o gerentes que asesoren o gestionen a un tenedor de Reclamaciones por los Bonos OG que esté incluido en el Anexo A del presente (junto con sus respectivos sucesores y cesionarios con respecto a las transferencias realizadas de acuerdo con los términos del presente, los "**Titulares de Obligaciones Generales**"), y c) los tenedores de Reclamaciones por los Bonos AEP, según se definen más adelante, que podrían incluir a los asesores o gerentes que asesoren o gestionen a un tenedor de Reclamaciones por los Bonos AEP que esté incluido en el Anexo B del presente (junto con sus respectivos sucesores y cesionarios con respecto a las transferencias realizadas de acuerdo con los términos del presente, los "**Tenedores de Bonos AEP**", y colectivamente, con los Titulares de Obligaciones Generales, los "**Acreedores Iniciales PSA**"). En lo sucesivo, quienes suscriben el presente serán denominados "**Partes**" desde el punto de vista colectivo o "**Parte**" desde el punto de vista individual. Los términos en mayúsculas que se utilicen pero no se definan en el presente tendrán los significados que se les asignan en el artículo I a continuación.

## PREÁMBULO

A.    El ELA emite una serie de bonos de obligación general (los "**Bonos OG**") que se enumeran en el Anexo C del presente, incluidos, sin limitación, los Bonos OG con respecto a los cuales las Aseguradoras Monolínea (como se definen más adelante) han asegurado el pago del capital y los intereses.

B.    De conformidad con las facultades conferidas por la Ley 56 de la Asamblea Legislativa de Puerto Rico (la "**Asamblea Legislativa**"), aprobada el 19 de julio de 1958, con sus modificaciones, la AEP emitió la serie de bonos (colectivamente, los "**Bonos AEP**") que se consigna en el Anexo D del presente, garantizados por el ELA, incluidos, sin limitación, los Bonos AEP con respecto a los cuales las Aseguradoras Monolínea han asegurado el pago del capital y los intereses.

C.    El 30 de junio de 2016, el Presidente de los Estados Unidos promulgó la Ley de Supervisión, Administración y Estabilidad Económica de Puerto Rico (P.L. 114-187) ("**PROMESA**").

D.    PROMESA dio origen a la Junta de Supervisión y le atribuyó determinadas facultades con respecto a las finanzas y el proceso de reestructuración con relación a, entre otros, el ELA y sus dependencias, todo ello según lo estipulado en dicha ley.

E.    De conformidad con la Ley 2-2017, la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico ("**AAFAF**") fue designada como representante y asesor del Gobierno del Estado Libre Asociado de Puerto Rico (el "**Gobierno**"), y recibió facultades con respecto a la reestructuración de cualquier endeudamiento emitido por el ELA y cualquiera de sus dependencias.

1

COPIA DE FIRMA

     F.     El 3 de mayo de 2017 (la "**Fecha de la petición del ELA**"), la Junta de Supervisión radicó una petición conforme al Título III en nombre del ELA (el "**Procedimiento del ELA conforme a PROMESA**") ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (el "**Tribunal constituido conforme al Título III**").

     G.     El 21 de mayo de 2017 (la "**Fecha de la petición del SRE**"), la Junta de Supervisión radicó una petición conforme al Título III en nombre del SRE (el "**Procedimiento del SRE conforme a PROMESA**") ante el Tribunal constituido conforme al Título III.

     H.     El 27 de septiembre de 2019 (la "**Fecha de la petición de la AEP**"), la Junta de Supervisión radicó una petición conforme al Título III en nombre de la AEP (el "**Procedimiento de la AEP conforme a PROMESA**") ante el Tribunal constituido conforme al Título III.

     I.     La Junta de Supervisión representa al ELA, al SRE y a la AEP en el Procedimiento del ELA conforme a PROMESA, en el Procedimiento del SRE conforme a PROMESA y en el Procedimiento de la AEP conforme a PROMESA, respectivamente, de conformidad con el artículo 315 b) de PROMESA.

     J.     El 31 de mayo de 2019, algunas de las Partes suscribieron un Acuerdo de Apoyo al Plan (el "**Acuerdo Inicial**") con respecto a la reestructuración de los Bonos OG y los Bonos AEP; el acuerdo estaba sujeto a determinadas condiciones suspensivas, incluidas, entre otras, el requisito de negociar y acordar las condiciones de los títulos valores que se emitirían en virtud del Acuerdo Inicial y de conformidad con un plan de ajuste relacionado, y el requisito de que las partes debían rescindirlo.

     K.     El 27 de septiembre de 2019, el ELA, el SRE y la AEP radicaron un Plan Conjunto de Ajuste conforme al Título III para el Estado Libre Asociado de Puerto Rico y otros (el "**Plan Inicial**") [expediente núm. 8765] ante el Tribunal constituido conforme el Título III; el plan de ajuste contenía las condiciones fundamentales consignadas en el Acuerdo Inicial, pero con respecto a las cuales las partes en dicho acuerdo aún no habían convenido las condiciones relativas a los títulos valores.

     L.     Mediante notificación del 9 de febrero de 2020, el Acuerdo Inicial fue rescindido y actualmente no está en vigor.

     M.     Las Partes han iniciado negociaciones de buena fe y en igualdad de condiciones (con la asistencia, entre otros, del equipo de mediación designado por el Tribunal constituido conforme Título III) con respecto a las condiciones de una propuesta de reestructuración de los Bonos OG, los Bonos AEP, las Reclamaciones contra el ELA basadas en el compromiso que asumió de pagar los Bonos AEP y las Reclamaciones contra el ELA basadas en el compromiso que asumió de pagar las BAN de AFIPR (que se definen más adelante), el cual se implementará de la manera que se establezca en el Plan Conjunto Enmendado de Ajuste Conforme al Título III para el Estado Libre Asociado de Puerto Rico y otros, con las enmiendas, modificaciones y complementos que se le introduzcan (el "**Plan**"); el Plan será congruente con los términos y condiciones de este Acuerdo, incluido, sin limitación, el Anexo I del presente, y en sus aspectos formales y esenciales será aceptable para el Grupo de la Deuda Constitucional, el Grupo OG, el Grupo CDCL y el Grupo QTCB con respecto al tratamiento de las Reclamaciones por los Bonos OG y las Reclamaciones por los Bonos AEP en el Procedimiento del ELA conforme a

2

**COPIA DE FIRMA**

PROMESA y el Procedimiento de AEP conforme a PROMESA, respectivamente, y se presentará ante el Tribunal constituido conforme al Título III tan pronto como sea posible tras la fecha del presente, a más tardar el 28 de febrero de 2020; una vez presentado, el Plan reemplazará al Plan Inicial.

N.    La Junta de Supervisión da su consentimiento para que el ELA, el SRE y la AEP otorguen y formalicen este Acuerdo, y para que cada uno de ellos cumpla sus obligaciones y ejerza sus derechos respectivos en virtud del presente, incluidos, sin limitación, el derecho de rescindir este Acuerdo y el derecho de dar su consentimiento a cualquier renuncia o enmienda, en todos los casos de conformidad con los términos y condiciones que se establecen en el presente.

POR LO TANTO, las Partes, en contraprestación por las promesas, convenios y acuerdos descritos en el presente y por otras contraprestaciones válidas y onerosas, cuya suficiencia y carácter adecuado cada una de ellas reconoce, y con el objetivo de obligarse jurídicamente, convienen en lo siguiente:

ARTÍCULO I

DEFINICIONES

Sección 1.1     Preámbulo. El preámbulo consignado anteriormente se incorpora al presente por remisión y se considera parte integrante de este Acuerdo.

Sección 1.2     Definiciones. Las siguientes definiciones serán de aplicación a este Acuerdo y a todos sus adjuntos, anexos y suplementos, y serán parte integrante de ellos:

"*Acuerdo*" se refiere, colectivamente, a este Acuerdo de Apoyo al Plan y a cada anexo que se le adjunta, incluido, sin limitación y al momento de su presentación, el Plan, según sean enmendados, complementados o de otras formas modificados de conformidad con los términos del presente o del documento que corresponda.

"*Litigios relacionados con las designaciones*" se referirá, colectivamente, a los siguientes litigios: a) Junta de Supervisión y Administración Financiera para Puerto Rico c. Aurelius Investment, LLC y otros, núms. 18-1334, 18-1475, 18-1496, 18-1514 y 18-1521, actualmente pendiente de resolución ante la Suprema Corte de los Estados Unidos, b) Aurelius Investment, LLC y otros c. Estado Libre Asociado de Puerto Rico y otros, núms. 18-1671, 18-1746 y 18-1787, actualmente pendiente de resolución ante el Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito, (c) Union de Trabajadores de la Industria Eléctrica y Riego (UTIER) c. Autoridad de Energía Eléctrica de Puerto Rico y otros, Proc. Cont. núm. 17-AP-228-LTS, actualmente pendiente de resolución ante el Tribunal constituido conforme al Título III, d) Rene Pinto Lugo y otros c. el Gobierno de los Estados Unidos de América y otros, Proc. Cont. núm. 18-041-LTS, actualmente pendiente de resolución ante el Tribunal constituido conforme al Título III, e) Hermandad De Empleados Del Fondo Del Seguro Del Estado, Inc. y otros c. Gobierno de los Estados Unidos de América y otros, Proc. Cont. núm. 18-066-LTS, actualmente pendiente de resolución ante el Tribunal constituido conforme al Título III, f) El Honorable Rafael Hernández-Montañez y otros c. la Junta de Supervisión y Administración Financiera para Puerto Rico, Proc. Cont. núm. 18-090-LTS, actualmente pendiente de resolución ante el Tribunal constituido conforme al Título III, y g) cualquier otro litigio que pudiera estar actualmente pendiente de resolución o que pueda interponerse durante el período que va desde

3

COPIA DE FIRMA

la fecha del presente hasta la Fecha de Entrada en Vigor, en los que se hayan aducido reclamaciones o causas radicadas congruentes con los que se adujeron (o podrían haberse aducido) en los litigios mencionados.

"**Código de Quiebras**" se refiere al Título 11 del Código de los Estados Unidos, con sus modificaciones, artículos 101 y sgtes.

"**Normas sobre quiebras**" se refiere a las Normas Federales de Procedimientos de Quiebra.

"**Límites de recuperación sobre los bonos**" se refiere, colectivamente, a los porcentajes específicos que se recogen en el Resumen de Conciliación para cada clase de Reclamaciones admisibles por los Bonos OG, las Reclamaciones admisibles por los Bonos de Garantía del ELA, o las Reclamaciones admisibles por los bonos AEP, porcentajes que representarán la máxima recuperación acumulada posible para el tenedor de una reclamación admisible por los Bonos OG, una reclamación admisible por los Bonos de Garantía del ELA o una reclamación admisible por los Bonos AEP; estableciéndose, sin embargo, que los Costos de Consumación y los Cargos de Restricción PSA pagados al tenedor de cualquiera de los anteriores no se tendrán en cuenta a los efectos de calcular los Límites de Recuperación sobre los Bonos.


"**Día hábil**" se refiere a un día distinto a los sábados, los domingos o cualquier otro día en que los bancos comerciales de Nueva York (Nueva York) puedan o deban cerrar debido a una ley u orden judicial.

"**ADCC**" se refiere a la Autoridad del Distrito de Centro de Convenciones de Puerto Rico

"**Bonos ADCC**" se refiere a los títulos valores emitidos por ADCC antes de la Fecha de petición del ELA.

"**COFINA**" se refiere a la Corporación del Fondo de Interés Apremiante de Puerto Rico.

"**Orden de Confirmación COFINA**" se refiere a Orden y Sentencia Enmendada que confirma el Tercer Plan de Ajuste Enmendado conforme al Título III de la Corporación del Fondo de Interés Apremiante de Puerto Rico, del 5 de febrero de 2019 [expediente núm. 5055].

"**Bonos de gravamen subordinados de COFINA**" se refiere, colectivamente, a los títulos valores que emitirá COFINA en la Fecha de entrada en vigor de conformidad con los términos y condiciones del Plan, la Orden de Confirmación, la Escritura por los Bonos de Gravamen Subordinados de COFINA y, en la medida en que haya sido promulgada, la Legislación sobre los Bonos de Gravamen Subordinados de COFINA, incluidos, sin limitación, cualesquiera bonos de reembolso que puedan emitirse de conformidad con la Escritura por los Bonos de Gravamen Subordinados de COFINA y la Legislación sobre los Bonos de Gravamen Subordinados de COFINA, bonos que se pagarán a partir de la Porción ELA, y que en todos sus aspectos estarán sujetos a las obligaciones del Financiamiento de los Primeros Dólares con respecto a los Bonos de gravamen preferentes de COFINA.

**Escritura por los Bonos de Gravamen Subordinados de COFINA** se refiere a la escritura de fideicomiso que se firmará en la Fecha de entrada en vigor, en virtud de la cual COFINA emitirá los Bonos de gravamen subordinados de COFINA, e incluye todos los términos y disposiciones vinculados con ella, según sea enmendada, complementada o modificada oportunamente de conformidad con sus términos y condiciones.

**Legislación sobre los Bonos de Gravamen Subordinados de COFINA** se refiere a la

COPIA DE FIRMA

legislación que se promulgará como máximo en la Fecha de entrada en vigor que autoriza las transacciones contempladas en el Plan y congruentes con él y que dispone la emisión de los Bonos de gravamen subordinados de COFINA, la transferencia y sesión de la Porción ELA a COFINA y el otorgamiento de un derecho de gravamen reglamentario sobre los Impuestos Pignorados de COFINA, subordinado con respecto a los derechos de gravamen reglamentarios conferidos según la Legislación sobre los Bonos de Gravamen Preferentes de COFINA, al fiduciario que figure en la Escritura por los Bonos de Gravamen Subordinados de COFINA, para el beneficio de los Bonos de Gravamen Subordinados de COFINA, e incorporando los términos adicionales que figuren en el Plan.

"*Plan COFINA*" se refiere al Tercer Plan de Ajuste Enmendado conforme al Título III de la Corporación del Fondo de Interés Apremiante de Puerto Rico, del 9 de enero de 2019 [expediente núm. 439].

"*Impuestos Pignorados de COFINA*" se refiere a los ingresos y recaudaciones presentes y futuros generados por la parte del impuesto sobre las ventas que corresponda a una tasa de impuestos de 5,5%, o la tasa menor que se determine en el Plan COFINA, la Orden de Confirmación COFINA y los documentos e instrumentos otorgados en vinculación con dichos impuestos.

"*Bonos de gravamen preferentes de COFINA*" se refiere, colectivamente, a los títulos valores emitidos por COFINA de conformidad con el Plan COFINA, la Orden de Confirmación COFINA, la Legislación sobre los Bonos de Gravamen Preferentes de COFINA y la Escritura sobre los Bonos de Gravamen Preferentes de COFINA.

*Escritura por los Bonos de Gravamen Preferentes de COFINA* se refiere a la escritura de fideicomiso firmada en virtud de la cual COFINA emitió los Bonos de Gravamen Preferentes de COFINA, según sea enmendada, complementada y modificada de tiempo en tiempo, de conformidad con sus términos y condiciones.

"*Legislación sobre los bonos de gravamen preferentes de COFINA*" se refiere a la Ley 241 de la Asamblea Legislativa de Puerto Rico, aprobada el 15 de noviembre de 2018, que enmendó la Ley 91 de la Asamblea Legislativa de Puerto Rico, aprobada el 13 de mayo de 2006, con sus modificaciones.

"*Porción ELA*" se refiere a una participación que está en segundo lugar en materia de prioridad de pago, financiamiento y cobros, en todas las circunstancias, con sujeción al Financiamiento de los Primeros Dólares, con respecto a los Impuestos Pignorados de COFINA y todos los derechos relacionados, según se describen en el Plan COFINA, la Orden de Confirmación COFINA y los documentos e instrumentos conexos que se hayan otorgado o formalizado; dicha participación incluirá el derecho a recibir los Impuestos Pignorados de COFINA tras haber cumplido los requisitos del Financiamiento de los Primeros Dólares en cada ejercicio fiscal, por un monto de hasta 46,35% del Ingreso Fijo en cualquier ejercicio fiscal, hasta que los Bonos de Gravamen Subordinados de COFINA hayan sido pagados en su totalidad de conformidad con sus términos.

*Límite integral* tendrá el significado que se le atribuye en la Ley de Responsabilidad por Deudas.

"*Orden de confirmación*" se refiere a la orden del Tribunal constituido conforme Título III que confirma el Plan de conformidad con el artículo 314 de PROMESA y el artículo 1129 del

COPIA DE FIRMA

Código de Quiebras, la cual es de aplicación en los Procedimientos según PROMESA de conformidad con el artículo 301 de PROMESA, y que en su forma y sustancia deberá ser razonablemente satisfactoria para cada Parte.

"*Grupo de la deuda constitucional*" se refiere el Grupo Ad-Hoc de Titulares de la Deuda Constitucional compuesto por los miembros del Grupo de la Deuda Constitucional.

"*Miembros del Grupo de la Deuda Constitucional* " se referirá, colectivamente, a BlackRock Financial Management Inc., Brigade Capital Management, Brookfield Asset Management Private Institutional Capital Adviser (Credit) LLC, Deutsche Bank Securities Inc., Emso Asset Management Limited, First Pacific Advisors, LP, Mason Capital Management, LLC, Silver Point Capital, L.P., and VR Advisory Services Ltd, cada uno de ellos en representación de sí mismo o de sus clientes participantes o de determinada parte de los fondos que gestionan y, en cada caso, sus respectivos sucesores y cesionarios respecto de las transferencias realizadas de conformidad con los términos del presente.

"*Costos de consumación*" se refiere, colectivamente, a las sumas que deban pagarse, en efectivo, en la Fecha de entrada en vigor, o tan pronto como sea posible con posterioridad a esa fecha según los términos del Plan, pero bajo ninguna circunstancia más de diez (10) días hábiles a partir de la Fecha de entrada en vigor, a los Acreedores Iniciales PSA de conformidad con los términos y disposiciones de este Acuerdo y del Plan.

"*Prestatarios cubiertos*" se refiere, colectivamente, al ELA, al SRE y a la AEP.

"*CUSIP*" se refiere al código numérico de nueve dígitos o alfanumérico de nueve caracteres que, a los efectos de este Acuerdo, identifica la serie de Bonos OG y Bonos AEP para facilitar la compensación y la liquidación de operaciones.

"*Plan Fiscal del ELA*" se refiere al Plan Fiscal del ELA certificado por la Junta de Supervisión el 9 de mayo de 2019.

"*Reclamaciones por los Bonos de Garantía del ELA*" tendrá el significado que se le atribuye en el Plan; el monto de las Reclamaciones por los Bonos de Garantía del ELA se calculará, según el caso, como el monto pendiente de capital de a) los Bonos AEP más los intereses acumulados, pero impagados, durante el período que va hasta la fecha de la petición de AEP, sin incluirla, menos el monto de cualquier distribución que haya de recibirse de AEP por motivo de dichos Bonos AEP de conformidad con el Plan, b) el bono de la Autoridad del Puerto de las Américas más los intereses acumulados, pero impagados, durante el período que va hasta la fecha de la petición del ELA, sin incluirla, y c) los BAN de AFIPR más los intereses acumulados, pero impagados, durante el período que va hasta el 1 de mayo de 2017, sin incluirlo.

"*Política de Gestión de la Deuda*" se refiere a la política diseñada por el ELA con respecto a la emisión de endeudamiento, como se describe con mayor detalle en el Plan y en la Ley de Responsabilidad por la Deuda.

"*Ingresos de la Política de Endeudamiento*" se refiere, colectivamente y sin duplicación a a) los ingresos derivados de impuestos, cánones, permisos, licencias, multas u otros cargos que la Asamblea Legislativa imponga, apruebe o autorice, incluidos, sin limitación, cualesquiera de tales ingresos que sean propiedad de COFINA o de cualquier otra dependencia del Gobierno, o que se le asignen, b) todos los demás ingresos o sumas que se depositen en el Fondo General o cualquier servicio de deuda u otro fondo gubernamental del Gobierno, y c) todos los demás

6

COPIA DE FIRMA

ingresos o fondos definidos como Ingresos de la política de endeudamiento en la Política de
Gestión de la Deuda, con la salvedad de que los Ingresos de la Política de Endeudamiento no
incluirán los ingresos y fondos que la Política de Gestión de la Deuda excluya de los Ingresos de
la Política de Endeudamiento; y asimismo, estableciéndose que, a efectos ilustrativos, con
respecto al Ejercicio Fiscal 2019, y tal como surge del Plan Fiscal del ELA, los Ingresos de la
Política de Endeudamiento ascendieron a dieciséis mil setecientos ocho millones setenta mil
dólares ($16.708.070.000,00).

   "***Objeciones Relacionadas con la Deuda***" se refiere, colectivamente, a a) la Objeción
Global de I) la Junta de Supervisión y Administración Financiera, actuando a través de su
Comité Especial de Reclamaciones y II) el Comité Oficial de Acreedores No Asegurados, de
conformidad con el artículo 502 del Código de Quiebras y la Regla de Quiebras 3007, a
reclamaciones radicadas o presentadas por los Tenedores de ciertos bonos de Obligación
General del ELA, de fecha 14 de enero de 2019 [expediente núm. 4784], b) Objeción Global del
Comité Oficial de Acreedores No Asegurados, de conformidad con el artículo 502 del Código
de Quiebras y la Regla de Quiebras 3007 a reclamaciones radicadas o presentadas por los
tenedores de determinados Bonos de Obligación General del ELA de 2011, de fecha 21 de mayo
de 2019 [expediente núm. 7057] (c) Objeción Global del Comité Oficial de Acreedores No
Asegurados, de conformidad con el artículo 502 del Código de Quiebras y la Regla de Quiebras
3007, a reclamaciones radicadas o presentadas contra el ELA por los tenedores de determinados
Bonos de la Autoridad de Edificios Públicos de Puerto Rico de 2011, de fecha 18 de julio de
2019 [expediente núm. 8141] d) Objeción Global de la Coalición de Deuda Constitucional
Legítima, de conformidad con el artículo 502 del Código de Quiebras y la Regla de Quiebras
3007, a reclamaciones radicadas o presentadas por los Tenedores de determinados Bonos
emitidos o garantizados por el ELA, de fecha 8 de enero de 2020 [expediente núm. 9731] e)
Objeción Global del Comité Oficial de Acreedores No Asegurados en virtud de los Límites de la
Deuda Constitucional contra I) Reclamación del Banco Gubernamental de Fomento para Puerto
Rico [reclamación núm. 29485] basada en determinados Pagarés emitidos por el ELA y en la
Garantía del ELA de determinados bonos emitidos por la Autoridad del Puerto de las Américas,
II) Reclamación de Scotiabank de Puerto Rico [reclamación núm. 47658] basada en un Pagaré
de plena fe y crédito emitido por la Administración de Servicios Generales, y III) reclamaciones
radicadas o presentadas contra el ELA por motivo de la Garantía del ELA de ciertos Pagarés
emitidos por la Autoridad de Infraestructuras de Puerto Rico, de fecha 8 de enero de 2020
[expediente núm. 9735], únicamente en lo relacionado con los BAN de AFIPR, f) Objeción
Global del Comité Oficial de Acreedores No Asegurados, de conformidad con el artículo 502
del Código de Quiebras y la Regla de Quiebras 3007, a reclamaciones radicadas o presentadas
contra el ELA por los tenedores de determinados Bonos de Obligación General que aducen tener
Prioridad con respecto a otros Acreedores No Garantizados del ELA, de fecha 3 de febrero de
2020 [expediente núm. 10638], y g) cualquier otra objeción o consolidación de objeciones, o
cualquier otra objeción que pudiera presentarse contra el alivio solicitado para impugnar, entre
otras cosas, la validez y los derechos relacionados de los Bonos OG de 2011, los Bonos OG de
2012, los Bonos OG de 2014, los Bonos AEP y los BAN de AFIPR.

   "***Ley de Responsabilidad por la Deuda***" se refiere a la HB 2332, la Ley de Responsabilidad
por la Deuda del Estado Libre Asociado de Puerto Rico, de fecha 7 de noviembre de 2019, como
dicha ley sea enmendada, modificada, complementada o promulgada.

   "***Fondo para el Servicio de la Deuda***" se refiere al fondo que se creará según la Escritura

**COPIA DE FIRMA**

para los Bonos OG Nuevos y que estará bajo la supervisión del fiduciario para los Bonos OG Nuevos, en la cual el ELA depositará todos los meses montos equivalentes a a) un sexto (1/6) de la obligación semestral con respecto al pago de intereses que se acumulen sobre los Bonos OG Nuevos, y b) una doceava parte de la obligación anual con respecto al pago del capital sobre los Bonos OG Nuevos.

"***Fondo de Reserva para el Servicio de la Deuda***" se refiere al fondo creado de conformidad con la Escritura para los Bonos OG Nuevos que estará bajo la supervisión del fiduciario de los Bonos OG Nuevos y en el cual se depositará la Suma Requerida para el Fondo de Reserva para el Servicio de la Deuda.

"***Suma Requerida para el Fondo de Reserva para el Servicio de la Deuda***" se refiere a la suma de quinientos treinta y tres millones cuatrocientos veintinueve mil quinientos dólares ($533.429.500,00), el monto que se depositará en la Fecha de entrada en vigor o en el transcurso de un período de cinco años, según lo decidan de manera conjunta y absoluto criterio la Junta de Supervisión y el ELA en la Fecha de entrada en vigor o antes, de conformidad con los términos y condiciones de la Escritura para los Bonos OG Nuevos.

"***Fecha estimada de emisión***" se refiere al 1 de marzo de 2020.

"***Documentos Definitivos***" se refiere, colectivamente, a los documentos, incluidos, sin limitación, cualquier acuerdo, instrumento, apéndice o anexo relacionado que sea necesario o deseable para aplicar los términos y condiciones del presente, o que se relacione con ellos, que figuren en el Resumen de Conciliación, el Plan (incluida cualquier modificación, enmienda o suplemento que se le introduzca), la Declaración de Divulgación, la Orden de la Declaración de Divulgación, la Orden de Confirmación y las resoluciones sobre los bonos, según sean enmendados, rechazados o reemplazados, cada uno de ellos con términos y condiciones congruentes con este Acuerdo, el Resumen de Conciliación y PROMESA, los cuales deberán ser en todos sus aspectos formales y sustanciales razonablemente satisfactorios para todas las Partes.

"***Declaración de Divulgación***" se refiere a la declaración de divulgación presentada por la Junta de Supervisión con respecto al Plan ante el Tribunal constituido conforme al Título III en el marco de los Procedimientos según PROMESA de conformidad con el artículo 1125 del Código de Quiebras, el cual es de aplicación en los Procedimientos según PROMESA de conformidad con el artículo 301 de PROMESA, y que en su forma y sustancia deberá ser razonablemente satisfactoria para cada Parte.

"***Orden de la Declaración de Divulgación***" se refiere a la orden del Tribunal constituido conforme al Título III a) que aprueba la forma de la Declaración de Divulgación y el carácter adecuado de la información contenida en ella en virtud del artículo 1125 del Código de Quiebras, el cual es de aplicación a los Procedimientos según PROMESA de conformidad con el artículo 301 de PROMESA, y b) que autoriza, entre otras cosas, la forma y la manera de solicitar i) la aceptación y el rechazo del Plan, y ii) las opciones, si corresponde, de distribuciones en el marco del Plan, estableciéndose que dicha orden deberá ser en sus aspectos formales y sustanciales razonablemente satisfactoria para todas las Partes.

"***Fecha de entrada en vigor***" se refiere a la fecha en que las transacciones contempladas por el Plan y autorizadas por el Tribunal constituido conforme al Título III de conformidad con la Orden de Confirmación hayan sido esencialmente consumadas, estableciéndose que, en todo caso, la fecha no podrá superar los diez (10) días calendario luego de la fecha en que hayan

COPIA DE FIRMA

quedado cumplidas todas las condiciones para la efectividad del Plan o se haya renunciado a la exigibilidad de tales condiciones de conformidad con los términos del Plan.

"*EMMA*" se refiere al sitio web del sistema de Acceso Electrónico a los Mercados Municipales de la Junta de Regulación de los Títulos Valores Municipales.

"*Bonos SRE*" se refiere a los títulos valores emitidos por el SRE en circulación en la Fecha de la Petición de SRE.

"*Monto nominal*" se refiere, exclusivamente a los efectos del artículo II y las páginas de firmas del presente, a) con respecto a los Bonos OG de intereses corrientes, asegurados o no asegurados, el monto de capital en circulación por tales Bonos OG a la fecha de este Acuerdo, b) con respecto a los Bonos AEP de intereses corrientes, asegurados y no asegurados, el monto de capital en circulación de tales Bonos AEP a la fecha de este Acuerdo c) con respecto a los Bonos OG de apreciación de capital, asegurados y no asegurados, el valor acumulado de tales Bonos OG durante el período que va hasta la Fecha de Petición del ELA, sin incluirla, y d) con respecto a los BAN de AFIPR, el monto de capital en circulación de dichos BAN de AFIPR a la fecha de este Acuerdo.

*Orden Definitiva* se refiere a una orden o sentencia de un tribunal con jurisdicción que se inscriba en el registro de casos mantenido por el actuario de dicho tribunal y que no haya sido anulada, revocada o suspendida, y con respecto a la cual a) el plazo para presentar un recurso de apelación, una petición de avocamiento o una solicitud de un nuevo juicio, presentación de nuevos argumentos o una nueva vista haya vencido, y con respecto a la cual no haya pendiente de resolución ninguna apelación, petición de avocamiento, procedimiento de remisión a un órgano inferior u otros procedimientos para un nuevo juicio, la presentación de nuevos argumentos o una nueva vista, o b) si se ha presentado un recurso de apelación, un pedido de avocamiento, una solicitud para presentar nuevos argumentos o una nueva vista, i) dicha orden o sentencia haya sido ratificada o revocada, en su totalidad o en parte, sin que haya pendientes de resolución procedimientos de remisión a otros órganos, por el tribunal de máxima jerarquía en el que se haya presentado la apelación contra dicha orden, se haya denegado el avocamiento o se haya denegado la solicitud de un nuevo juicio, una nueva vista o una nueva presentación de argumentos, o de haberse celebrado, no haya resultado en la modificación dicha orden, y ii) el plazo para presentar recurso de apelación, una petición de avocamiento por solicitar un nuevo juicio, una nueva presentación de argumentos o una nueva vista haya vencido; estableciéndose, sin embargo, que la posibilidad que pueda presentarse una moción en virtud de la Regla 60 del Reglamento Federal del Procedimiento Civil o cualquier norma análoga promulgada de conformidad con el Reglamento de Quiebras con relación a tal orden no impedirá que dicha orden sea una Orden definitiva, excepto según lo dispuesto en el reglamento Federal del Proceso de Apelaciones, el Reglamento de Quiebras o las normas locales aplicables sobre quiebras.

"*Fir Tree*" se refiere a Fir Tree Capital Management, LP, en representación de sí misma y de los fondos para los cuales se desempeña como gestor o asesor de inversiones, o en su capacidad como representante del titular, según se define tal término en el Acuerdo de Tenedores de Pagarés, de fecha 1 de marzo de 2015, entre AIFPR y RBC Municipal Products, LLC.

"*Financiamiento de los Primeros Dólares*" se refiere a la asignación de los "primeros dólares" recibidos por COFINA a partir de los Impuestos Pignorados, incluidos, sin limitación, los criterios que se establecen en el artículo 16.5 del Plan COFINA y que deben cumplirse para

COPIA DE FIRMA

permitir, entre otras cosas, depositar trimestralmente los "primeros dólares" recibidos a partir de los Impuestos Pignorados de COFINA.

"***Plan Fiscal***" se refiere al Plan Fiscal que se define en el artículo 5(10) de COFINA.

"***Ejercicio fiscal***" se refiere a un ejercicio fiscal del ELA, que comienza el 1 de julio y termina el 30 de junio del siguiente año calendario.

"***Ingreso Fijo***" se refiere al monto anual en dólares que se determine para cada ejercicio fiscal de conformidad con la Ley 241 de 2018 de la Asamblea Legislativa de Puerto Rico, aprobada el 15 de noviembre de 2018, con sus modificaciones.

"***Fondo General***" se refiere al fondo operativo principal del Gobierno.

"***Reclamaciones por Bonos OG***" se refiere, colectivamente, a i) las Reclamaciones contra el ELA vinculadas con los Bonos OG, que se calcularán, a los efectos las distribuciones conforme al Plan, como el monto de capital en circulación de los Bonos OG (monto que incluirá la acumulación, de haberla, a partir de la Fecha de Petición del ELA con respecto a los Bonos OG de apreciación de capital), más los intereses acumulados pero impagados hasta la Fecha de petición del ELA, sin incluirla, y ii) las Reclamaciones por los Bonos de Garantía del ELA.

"***Grupo OG***" se refiere el Grupo Ad-Hoc de Tenedores de Bonos de Obligaciones Generales compuesto por los miembros del Grupo OG.

"***Miembros del Grupo OG***" se refiere, colectivamente, a Aurelius Capital Management, LP y Autonomy Capital (Jersey) L.P., cada uno en representación de sí mismo o en representación de sus clientes participantes o de algunos de los fondos que gestionan y, en cada caso, sus respectivos sucesores y cesionarios con respecto a las transferencias realizadas de conformidad con lo dispuesto en el presente.

"***Partes del Gobierno***" se refiere, colectivamente, a la Junta de Supervisión, a AAFAF, el ELA, el SRE y la AEP.

"***Reclamaciones Exoneradas del Gobierno***" se refiere, colectivamente, a todos las reclamaciones, demandas, derechos, obligaciones o causas radicadas, cualquiera sea su tipo, característica o naturaleza, basadas en los principios de la ley o la equidad, conocidos o desconocidos, presentados o no presentados, que cualquiera de las Partes, o cualquier persona que actúe en su representación o para su beneficio, tenga, pueda tener o afirme tener, ahora o en el futuro, contra cualquier Parte Eximida del Gobierno, que se relacione con AEP, los Bonos AEP, las Reclamaciones por los Bonos AEP, los Bonos OG, las Reclamaciones por los Bonos OG, las Reclamaciones por los Bonos de Garantía del ELA o el Litigio AEP, y que surjan antes de la Fecha de entrada en vigor; estableciéndose, sin embargo, que las Reclamaciones Exoneradas del Gobierno no incluirán ningún derecho, privilegio, reclamación, demanda, obligación o causa radicada, cualquiera sea su tipo, característica o naturaleza, a) contra i) el ELA, COFINA o la AEP que se relacione con el Plan, los títulos valores que se emitirán de conformidad con el Plan o los títulos valores emitidos de conformidad con el Plan COFINA, o ii) cualquier Parte del Gobierno no relacionada con los Bonos OG, las Reclamaciones por los Bonos OG, las Reclamaciones por los Bonos de Garantía del ELA, los Bonos AEP o las Reclamaciones por los Bonos AEP, o b) que surja a raíz de cualquier acto u omisión que constituya fraude intencional o mala conducta intencionada.

"***Partes Eximidas del Gobierno***" se refiere a las Partes del Gobierno, junto sus directores,

COPIA DE FIRMA

comités especiales, agentes, directivos, empleados, asesores y profesionales, actuales o pasados, en cada caso, en sus capacidades como tales, incluidos, sin limitación, todos los asesores y profesionales contratados por las Partes del Gobierno en vinculación con los Procedimientos PROMESA, en sus capacidades respectivas como tales.

"***ACT***" se refiere a la Autoridad de Carreteras y Transportación de Puerto Rico.

"***Bonos ACT***" se refiere a los títulos valores emitidos por ACT en circulación en la Fecha de la Petición de ACT.

"***Fecha de la petición de la ACT***" se refiere al 21 de mayo de 2017, la fecha en que se radicó la causa de la ACT conforme al Título III.

"***Causa de la ACT conforme el Título III***" se refiere a la causa conforme al Título III radicada por la Junta de Supervisión el nombre de la ACT.

"***Reclamaciones por los Bonos OG asegurados***" se refiere, colectivamente, a las Reclamaciones por los Bonos OG cuyos pagos de capital e intereses han sido asegurados por una Aseguradora Monolínea.

"***Reclamaciones por los Bonos AEP asegurados***" se refiere, colectivamente, a las Reclamaciones por los Bonos AEP cuyos pagos de capital e intereses han sido asegurados por una Aseguradora Monolínea.

"***Acciones por nulidad***" se refiere, colectivamente, a los litigios que se enumeran en el Anexo E del presente.

"***IRC***" se refiere al Código de Rentas Internas de 1986, con las modificaciones que se le introduzcan oportunamente.

"***Acreedores de Litisconsorcio***" se refiere, colectivamente, a las entidades tenedores de Bonos OG o Bonos AEP que otorgan y formalizan el Acuerdo de Litisconsorcio o el Acuerdo Suplementario, cuyos modelos se adjuntan al presente como Anexos F y G, antes de la Fecha Límite de Adhesión.

"***Fecha Límite de Adhesión***" se refiere al 28 de febrero de 2020 a las 11:59 p.m. (hora del este, o EST), o la fecha y hora posterior que acuerden la Junta de Supervisión y los Acreedores Iniciales PSA.

"***CDCL***" se refiere a la Coalición de Deuda Constitucional Legítima, conformada por los Tenedores CDCL.

"***Tenedores CDCL***" se refiere, colectivamente, a Aristeia Capital, LLC, Farmstead Capital Management, FCO Advisors LP, GoldenTree Asset Management LP, Marble Ridge Capital, Monarch Alternative Capital LP, Taconic Capital Advisors L.P. y Whitebox Advisors L.L.C., cada uno representación de sí mismos o de los fondos que gestionen y, en cada caso, sus respectivos sucesores y cesionarios, con respecto a las transferencias realizadas de conformidad con los términos del presente.

"***Acciones para impugnar gravámenes***" se refiere, colectivamente, a los litigios que se enumeran en el Anexo H del presente.

"***Aseguradoras Monolínea***" se refiere a Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, National Public Finance Guarantee Corporation y Syncora Guarantee Inc., como aseguradoras de los

11

**COPIA DE FIRMA**

Bonos OG, los Bonos AEP, los Bonos ADCC, los Bonos ACT y los Bonos AFIPR, según corresponda.

"***Bonos OG Nuevos***" se refiere, colectivamente, a los bonos de obligación general, por cuyo pago el ELA ha comprometido su buena fe, crédito y poder de imponer contribuciones, los cuales el ELA emitirá en la Fecha de entrada en vigor de conformidad con los términos y condiciones del Plan, la Orden de Confirmación, la Escritura por los Bonos OG Nuevos y, en la medida en que haya sido promulgada, la Legislación sobre los Bonos OG Nuevos, incluidos, sin limitación, cualesquiera bonos de reembolso que se emitan de conformidad con la Escritura por los Bonos OG Nuevos y la Legislación sobre los Bonos OG Nuevos.

"***Escritura por los Bonos OG Nuevos***" se refiere a la escritura de que se firmará en la Fecha de entrada en vigor, en virtud de la cual el ELA emitirá los Bonos OG Nuevos y que incluye todos los términos y disposiciones vinculados con ellos, según sea enmendada, complementada o modificada oportunamente de conformidad con sus términos y condiciones.

"***Legislación por los Bonos OG Nuevos***" se refiere a la legislación que se promulgará a más tardar en la Fecha de entrada en vigor que autorizara las transacciones contempladas en el Plan, lo que incluye, sin limitación, la legislación que autorizara la emisión de los Bonos OG Nuevos y la Ley de Responsabilidad por la Deuda.

"***Reclamaciones por los Bonos AEP***" se refiere, colectivamente, a las reclamaciones contra AEP vinculadas con los Bonos AEP, que se calcularán, a los efectos del Plan, como el monto de capital en circulación de los Bonos AEP (monto que incluirá la acumulación, de haberla, a partir de la Fecha de Petición de AEP), <u>más</u> los intereses acumulados pero impagados hasta la Fecha de Petición de AEP, sin incluirla.

***Litigio AEP*** se refiere al litigio bajo el epígrafe <u>Junta de Supervisión y Administración Financiera para Puerto Rico c. Autoridad de Edificios Públicos de Puerto Rico</u>, procedimiento contencioso 18-AP-149-LTS, actualmente pendiente de resolución ante el Tribunal constituido conforme al Título III.

"***Complemento al Plan***" se refiere a los volúmenes de documentos, acuerdos e instrumentos, incluidos, sin limitación, los Documentos Definitivos, que se presentarán ante el Tribunal constituido conforme el Título III en vinculación con el Plan y la consumación de las transacciones contempladas en él, cuya forma y sustancia serán razonablemente satisfactorios para todas las Partes.

"***AFIPR***" se refiere a la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico.

"***BAN de AFIPR***" se refiere a cierto tipo de endeudamiento emitido por AFIPR de conformidad con el Acuerdo de Fideicomiso del 1 de marzo de 2015 celebrado entre AFIPR y The Bank of New York Mellon como fiduciario.

***Litigio por los BAN de AFIPR*** se refiere a litigio bajo el epígrafe <u>Junta de Supervisión y Administración Financiera para Puerto Rico c. The Bank of New York Mellon y otros</u>, procedimiento contencioso 19-AP-269-LTS, actualmente pendiente de resolución ante el Tribunal constituido conforme al Título III.

"***Bonos AFIPR***" se refiere a los títulos valores emitidos por AFIPR distintos a los BAN de AFIPR.

"*Estipulación AFIPR*" se refiere a una estipulación que otorgarán, entre otras partes, la Junta de Supervisión y AFIPR, que buscará resolver las reclamaciones contra el ELA y AFIPR vinculadas con los BAN de AFIPR, incluido, sin limitación, el fondo de garantía por doce millones seiscientos cincuenta y siete mil quinientos ocho dólares con ochenta y un centavos ($12.657.508,81) en poder de AFIPR para el pago de los BAN de AFIPR.

"*Procedimientos PROMESA*" se refiere, colectivamente, al Procedimiento PROMESA del ELA, el Procedimiento PROMESA SRE y el Procedimiento PROMESA AEP.

"*Acreedores PSA*" se refiere, colectivamente, a los Acreedores Iniciales PSA y a las entidades tenedoras de Bonos OG o Bonos AEP que formalizan el Acuerdo de Litisconsorcio o el Acuerdo Suplementario, cuyos modelos se adjuntan al presente como Anexos F y G, respectivamente.

"*Cargo de Restricción PSA*" se refiere, a los cargos que deben pagarse de conformidad con el artículo VI del presente, el Plan y la Orden de Confirmación, cargos que en su conjunto no excederán los trescientos cincuenta millones de dólares ($350.000.000,00) menos el monto que deba pagarse por concepto de los Costos de Consumación; estableciéndose, sin embargo, que sin perjuicio de lo anterior, y de conformidad con las disposiciones del artículo VI del presente y del Plan, dicho monto global podrá incrementarse por motivo del Cargo para el Apoyo a Inversores Minoristas, cuyo monto adicional se redistribuirá de conformidad con las disposiciones de la Sección 6.1 b) del presente y el Plan.

"*Acreedores del Cargo de Restricción PSA*" se refiere, colectivamente, a los Acreedores Iniciales PSA y a los Acreedores de Litisconsorcio que otorgan este Acuerdo, el Acuerdo de Litisconsorcio o el Acuerdo Suplementario como máximo en la Fecha Umbral PSA.

"*Período del Cargo de Restricción PSA*" se refiere al período que comienza en la fecha del presente hasta lo primero en ocurrir de a) la Fecha Umbral PSA y b) la Fecha Límite de Adhesión.

"*Fecha umbral PSA*" se refiere a la fecha y la hora en que los Acreedores del Cargo de Restricción PSA adquieran la propiedad, responsabilidades como gestores de inversiones y autoridad con respecto a fondos o cuentas que representen el 70 % del monto global de las Reclamaciones por los Bonos OG, las Reclamaciones por los Bonos AEP y las Reclamaciones por los Bonos de Garantía del ELA (sin duplicación y, en la medida en que cualquiera de tales reclamaciones sean Reclamaciones Aseguradas por los Bonos OG o Reclamaciones Aseguradas por los Bonos AEP, siempre que el Acreedor PSA en cuestión esté autorizado a votar con respecto a las reclamaciones en virtud de los documentos definitivos de seguro y la legislación aplicable).

"*Grupo QTCB*" se refiere al grupo de Tenedores de Pagarés QTCB integrado por ellos.

"*Tenedores de Pagarés QTCB*" se refiere, colectivamente, a Canyon Capital Advisors LLC, Sculptor Capital LP y Davidson Kempner Capital Management LP, cada una en representación de sí mismo o en representación de sus clientes o de algunos de los fondos que gestionan y, en cada caso, sus respectivos sucesores y cesionarios con respecto a las transferencias realizadas de conformidad con lo dispuesto en el presente.

"*Creador calificado de mercado*" se refiere a una entidad que x) esté capacitada para en el curso ordinario de sus operaciones comprar y vender a clientes títulos de deuda tales como los Bonos OG o los Bonos AEP, o celebrar con sus clientes transacciones "cortas" o "largas" en

COPIA DE FIRMA

títulos de deuda como los Bonos OG o los Bonos AEP, en su capacidad como corredor o creador de mercado con respecto a tales Bonos OG o Bonos AEP; y) se dedique regularmente al negocio de crear mercados para títulos de deuda, y z) en caso de realizar transacciones con Bonos OG o Bonos AEP, esté registrado ante la Comisión de Bolsa y Valores y ante las autoridades que regulan a las instituciones financieras.

*Porcentaje del Cargo por Restricción* se refiere el porcentaje del monto global de las Reclamaciones por los Bonos OG, las Reclamaciones por los Bonos AEP y las Reclamaciones por los Bonos del ELA (sin duplicación) en poder de los Acreedores de Cargo de Restricción PSA equivalente a x) trescientos cincuenta millones de dólares ($350.000.000,00), menos los montos que deban pagarse por concepto de los Costos de Consumación, dividido por y) el monto global de las Reclamaciones por los Bonos OG, las Reclamaciones por los Bonos AEP y las Reclamaciones por los Bonos de Garantía del ELA (sin duplicaciones) en poder de los Acreedores del Cargo de Restricción PSA.

*Cargos por Restricción* se refiere, colectivamente, al Cargo por Restricción PSA y al Cargo para el Apoyo a los Inversores Minoristas.

*Bonos OG Minoristas* se refiere a los Bonos OG en poder de Inversores Minoristas, cuando el monto nominal global de los Bonos OG en poder del inversor en cuestión no supera la cifra de un millón de dólares ($1.000.000,00).

*Inversor Minorista* se refiere a una persona que compró Bonos OG o Bonos AEP para su propia cuenta de corretaje, cuenta de fideicomiso, cuenta de custodia o para una cuenta administrada de forma separada, y no en nombre de una organización, institución o entidad.

*Bonos AEP Minoristas* se refiere a los Bonos AEP en poder de Inversores Minoristas, cuando el monto nominal global de los Bonos AEP en poder del inversor en cuestión no supera la cifra de un millón de dólares ($1.000.000,00).

"*Cargo para el Apoyo a Inversores Minoristas*" se refiere, colectivamente, a la porción de los cargos que se pone a disposición de los tenedores de Bonos AEP Minoristas y Bonos OG Minoristas, de conformidad con lo dispuesto en el artículo VI del presente, el Plan y la Orden de Confirmación, cargos que en su conjunto no excederán la cifra de cincuenta millones de dólares ($50.000.000,00), estableciéndose, sin embargo, que sin perjuicio de lo anterior, y de conformidad con lo dispuesto en la sección 6.1 c) del presente, el Plan y la Orden de Confirmación, dicho monto global podrá ser reducido por motivo de la Devolución del Cargo para el Apoyo a los Inversores Minoristas, y dicha Devolución se redistribuirá de conformidad con lo dispuesto en el artículo VI del presente, el Plan y la Orden de Confirmación.

*Devolución del Cargo para el Apoyo a los Inversores Minoristas* se refiere a la porción del Cargo para el Apoyo a los Inversores Minoristas que no se asigne a ninguna clase de Inversores Minoristas para reasignarla y pagarla a los Acreedores del Cargo de Restricción PSA y a los miembros de las clases de Inversores Minoristas que votaron para aceptar el Plan de conformidad con lo dispuesto en el artículo VI del presente, el Plan y la Orden de Confirmación.

"*Impuesto sobre las Ventas*" se refiere a los impuestos sobre las ventas y uso, incluido cualquier reemplazo o impuesto similar sobre el uso y las ventas, que imponga el Gobierno de Puerto Rico de conformidad con las secciones 4020.01 y 4020.02 del subcapítulo D de la Ley núm. 1-2011 (y sus modificaciones), conocida como el Código de Rentas Internas para un Nuevo Puerto Rico.

**COPIA DE FIRMA**

*"Resumen de la Conciliación"* se refiere al resumen de los principales términos económicos que se incluirán en el Plan, según se establecen en el Anexo I del presente.

Sección 1.3 <u>Otros términos</u>. Podrán definirse otros términos en otros lugares de este Acuerdo y, a menos que se indique otra cosa, la definición brindada será la que rija en todo el Acuerdo. Según se utiliza en este Acuerdo, cualquier mención de leyes federales, estatales, locales o extranjeras, incluida cualquier ley aplicable, también incluirá las modificaciones de tales leyes y todas las normas y disposiciones promulgadas de conformidad con ellas, a menos que el contexto exija otra cosa. Se considerará que las palabras "incluye", incluyen" e "incluido" están seguidas por la expresión "sin limitación". Los pronombres en los géneros masculino, femenino o neutro incluirán a los demás géneros, y las palabras en el singular incluirán al plural y viceversa, a menos que el contexto exija otra cosa. Las expresiones "este Acuerdo", "aquí", "del presente", "por el presente" y otras similares se referirán a este Acuerdo en su conjunto y no a ninguna subdivisión en particular de él, a menos que se indique expresamente dicha limitación.

Sección 1.4      <u>Interpretaciones.</u> Ambas Partes han participado en la negociación y redacción de este Acuerdo. Ante ambigüedades o dudas respecto de su intención o interpretación, este Acuerdo será interpretado como el resultado de la redacción conjunta de ambas Partes, y no se asignará ninguna obligación de aportar pruebas ni se hará ninguna presunción a favor o en contra de ninguna parte por motivo de haber sido el autor de cualquiera de las disposiciones de este Acuerdo.

Sección 1.5 <u>Anexos.</u> Todos los anexos, adjuntos, páginas de firmas y suplementos que se adjuntan al presente se incorporan a título expreso a este Acuerdo y son parte integrante de él, y todas las referencias a este Acuerdo incluirán dichos anexos, adjuntos y suplementos.

<u>ARTICULO II</u>

<u>DISPOSICIONES GENERALES</u>

Sección 2.1 <u>Información financiera</u>. La Junta de Supervisión reconoce y conviene en que a) la información financiera consignada en la página de firmas incluida en este Acuerdo y los números CUSIP para los Bonos OG, los Bonos AEP y los BAN de AFIPR provistos a las Partes de conformidad con la sección 2.2 del presente son privados, privilegiados y confidenciales, y b) a menos que el Tribunal constituido conforme al Título III ordene otra cosa, no revelará a ningún tercero dicha información confidencial ni los números CUSIP, lo que incluye, sin limitación, las presentaciones que se hagan ante el Tribunal constituido conforme al Título III o cualquier otra presentación pública, y hará todos los esfuerzos razonables a su alcance para proteger dicha confidencialidad.

Sección 2.2 <u>Información CUSIP</u>. A menos que se haya entregado información actualizada a la Junta de Supervisión, dentro de un plazo de cinco (5) días hábiles luego de la fecha del presente, cada Acreedor Inicial PSA entregará a la Junta de Supervisión, por escrito, el monto nominal y los números CUSIP para cada uno de los Bonos OG, los Bonos AEP y los BAN de AFIPR, de haberlos, que sean de su propiedad o por los que tenga responsabilidad como gestor de inversiones, o autoridad sobre los fondos o las cuentas propietarias de tales Bonos OG, Bonos AEP o BAN de AFIPR, según el caso. Además, dentro de un plazo de cinco (5) días hábiles luego de que se lo solicite la Junta de Supervisión (solicitud que podrá enviarse como máximo una vez al mes a partir de la fecha del presente), cada Acreedor PSA entregará a la Junta de

COPIA DE FIRMA

Supervisión, por escrito, el monto nominal y los números CUSIP para cada uno de los Bonos OG, los Bonos AEP y los BAN de AFIPR, de haberlos, que sean de su propiedad o por los que tenga responsabilidad como gestor de inversiones, o autoridad sobre los fondos o las cuentas propietarias de tales Bonos OG, Bonos AEP o BAN de AFIPR, según el caso.

Sección 2.3 Partes adicionales. Dentro de los primeros tres (3) días hábiles a partir de la fecha del presente, la Junta de Supervisión le solicitará a AAFAF que envíe, mediante una emisión sin demora a través del sistema EMMA, una notificación con respecto al otorgamiento y la formalización de este Acuerdo y la oportunidad para que todas las entidades tenedoras de Bonos OG, Bonos AEP y BAN de AFIPR que excedan, en cada caso, el valor de un millón de dólares ($1.000.000,00), que otorguen para el abogado de la Junta de Supervisión el modelo de Acuerdo de Adhesión que se adjunta al presente como Anexo F para llegar a ser partes del presente de conformidad con los términos y condiciones que se establecen aquí y en el Acuerdo de Adhesión.

## ARTÍCULO III

## DECLARACIONES Y GARANTÍAS

Sección 3.1 Declaraciones y garantías de la Junta de Supervisión. La Junta de Supervisión por el presente declara y garantiza lo siguiente: a) es una entidad que ha sido debidamente constituida de conformidad con los términos y disposiciones de PROMESA, con todos los permisos, facultades y autoridad para otorgar este Acuerdo y llevar a cabo todas las transacciones contempladas en él; b) cumple todos los requisitos y ha obtenido todos los consentimientos, aprobaciones, facultades y autoridad para otorgar y formalizar este Acuerdo y cumplir con las obligaciones que le impone, y el otorgamiento, formalización y cumplimiento del presente, y los instrumentos y documentos que deben otorgarse en vinculación con el presente i) han sido debida y válidamente autorizados por ella, y ii) no van en contravención de sus documentos constitutivos ni de ningún acuerdo sustancial que le sea de aplicación expresa ni de ninguna ley, norma o regulación por la que deba regirse, y c) a excepción de lo referido a los Litigios Relacionados con las Designaciones, no está pendiente ante ningún tribunal, árbitro o entidad administrativa o gubernamental ningún procedimiento, litigio o procedimiento contencioso en su contra que pudiera ir en detrimento de su capacidad de celebrar este Acuerdo o cumplir las obligaciones que le impone.

Sección 3.2 Declaraciones y garantías del ELA. El ELA, a través de su representante conforme al Título III, la Junta de Supervisión, por el presente declara y garantiza que, con sujeción a la emisión por parte del Tribunal constituido conforme al Título III de una orden: a) está debidamente constituida y tiene existencia válida de conformidad con las leyes de la jurisdicción donde fue organizada, y cumple todos los requisitos y ha obtenido todos los consentimientos, aprobaciones, facultades y autoridades para desarrollar las actividades que realiza, para ser propietaria de los bienes que posee, para otorgar este Acuerdo y para consumar las transacciones contempladas en el presente: b) cumple todos los requisitos y ha obtenido todos los consentimientos, aprobaciones, facultades y autoridad para otorgar y formalizar este Acuerdo y cumplir con las obligaciones que le impone, y el otorgamiento, formalización y cumplimiento del presente, y los instrumentos y documentos que deben otorgarse en vinculación con el presente i) han sido debida y válidamente autorizados por ella, y ii) no van en contravención de sus documentos constitutivos ni de ningún acuerdo sustancial que le sea de

COPIA DE FIRMA

aplicación expresa ni de ninguna ley, norma o regulación por la que deba regirse, y c) no está pendiente ante ningún tribunal, árbitro o entidad administrativa o gubernamental ningún procedimiento, litigio o procedimiento contencioso en su contra que pudiera ir en detrimento de su capacidad de celebrar este Acuerdo o cumplir las obligaciones que le impone.

Sección 3.3 <u>Declaraciones y garantías de SRE.</u> SRE, a través de su representante conforme al Título III, la Junta de Supervisión, por el presente declara y garantiza que, con sujeción a la emisión por parte del Tribunal constituido conforme al Título III de una orden: a) es una entidad debidamente constituida y con existencia legal de conformidad con las leyes de la jurisdicción donde se constituyó, y cumple todos los requisitos y ha obtenido todos los consentimientos, aprobaciones, facultades y autoridades para desarrollar las actividades que realiza, para ser propietaria de los bienes que posee, para otorgar este Acuerdo y para consumar las transacciones contempladas en el presente; b) tiene todas las facultades y autoridad para otorgar y formalizar este Acuerdo y cumplir con las obligaciones que le impone, y el otorgamiento, formalización y cumplimiento del presente, y los instrumentos y documentos que deben otorgarse en vinculación con el presente i) han sido debida y válidamente autorizados por ella, y ii) no van en contravención de sus documentos constitutivos ni de ningún acuerdo sustancial que le sea de aplicación expresa ni de ninguna ley, norma o regulación por la que deba regirse, y c) no está pendiente ante ningún tribunal, árbitro o entidad administrativa o gubernamental ningún procedimiento, litigio o procedimiento contencioso en su contra que pudiera ir en detrimento de su capacidad de celebrar este Acuerdo o cumplir las obligaciones que le impone.

Sección 3.4 <u>Declaraciones y garantías de AEP</u>. AEP, a través de su representante conforme al Título III, la Junta de Supervisión, por el presente declara y garantiza que, con sujeción a la emisión por parte del Tribunal constituido conforme al Título III de una orden: a) es una entidad debidamente constituida y con existencia legal de conformidad con las leyes de la jurisdicción donde se constituyó, y cumple todos los requisitos y ha obtenido todos los consentimientos, aprobaciones, facultades y autoridades para desarrollar las actividades que realiza, para ser propietaria de los bienes que posee, para otorgar este Acuerdo y para consumar las transacciones contempladas en el presente; b) tiene todas las facultades y autoridad para otorgar y formalizar este Acuerdo y cumplir con las obligaciones que le impone, y el otorgamiento, formalización y cumplimiento del presente, y los instrumentos y documentos que deben otorgarse en vinculación con el presente i) han sido debida y válidamente autorizados por ella, y ii) no van en contravención de sus documentos constitutivos ni de ningún acuerdo sustancial que le sea de aplicación expresa ni de ninguna ley, norma o regulación por la que deba regirse, y c) no está pendiente ante ningún tribunal, árbitro o entidad administrativa o gubernamental ningún procedimiento, litigio o procedimiento contencioso en su contra que pudiera ir en detrimento de su capacidad de celebrar este Acuerdo o cumplir las obligaciones que le impone.

Sección 3.5 <u>Declaraciones y garantías de los Titulares de Obligaciones Generales.</u> Cada uno de los Titulares de Obligaciones Generales, por separado y no conjuntamente, por el presente declara y garantiza, en representación de sí mismo, que a la fecha del presente: a) es una entidad debidamente constituida y con existencia legal de conformidad con las leyes de la jurisdicción donde se constituyó, y cumple todos los requisitos y ha obtenido todos los consentimientos, aprobaciones, facultades y autoridades para desarrollar las actividades que realiza, para ser propietario de los bienes que posee, para otorgar este Acuerdo y para consumar las transacciones contempladas en el presente; b) tiene plenas facultades y autoridad para otorgar, formalizar y cumplir con las obligaciones que le impone este acuerdo, y el otorgamiento, formalización y

COPIA DE FIRMA

cumplimiento del presente, y los instrumentos y documentos que deben otorgarse en vinculación con este acuerdo i) han sido autorizados de manera válida y correcta por ella, y ii) no van en contra de sus documentos constitutivos ni de ningún acuerdo que le aplique de manera específica, ni de ninguna ley, norma o disposición a que deba ajustarse; c) no existe ningún procedimiento, litigio o procedimiento contencioso pendiente de resolución que se haya iniciado en su contra ante ningún tribunal, árbitro o entidad administrativa o gubernamental que pudiera impedirle celebrar este Acuerdo o cumplir con las obligaciones que este le impone, y d) es propietario de, o tiene responsabilidad y autoridad como gestor de inversiones con respecto a, fondos o cuentas que sean propietarias de Bonos OG de un valor no inferior a los montos nominales consignados en la página de firmas adjunta a este Acuerdo a la fecha del presente, bonos con respecto a los cuales tendría derecho a votar en lo relacionado con las solicitudes de aceptación y rechazo del Plan, a diferencia de con respecto a las Reclamaciones Aseguradas por los Bonos OG, y que, a la fecha del presente, con sujeción a cualquier derecho de retención o gravamen permitido por la sección 4.5 a), no ha vendido, transferido, prendado, hipotecado o cedido dichos Bonos OG ni ningún derecho a votar, a otorgar consentimientos o a dar instrucciones con respecto a dichos Bonos OG a ninguna persona o entidad que pudiera impedirle al Tenedor de los Bonos OG cumplir a su vencimiento las obligaciones que le impone este Acuerdo, o afectar ese cumplimiento de alguna manera; <u>estableciéndose, sin embargo</u>, que cada una de las Partes reconoce que cada reclamación asegurada por los Bonos OG se votará de acuerdo con el artículo 301 c) 3) de PROMESA y cualquier otra ley y documento rector aplicable mientras este Acuerdo esté en vigor.

Sección 3.6 <u>Declaraciones y garantías de los Tenedores de Bonos AEP</u>. Cada uno de los Tenedores de Bonos AEP, por separado y no conjuntamente, por el presente declara y garantiza, en representación de sí mismo, que a la fecha del presente: a) es una entidad debidamente constituida y con existencia legal de conformidad con las leyes de la jurisdicción donde se constituyó, y cumple todos los requisitos y ha obtenido todos los consentimientos, aprobaciones, facultades y autoridades para desarrollar las actividades que realiza, para ser propietario de los bienes que posee, para otorgar este Acuerdo y para consumar las transacciones contempladas en el presente; b) tiene plenas facultades y autoridad para otorgar, formalizar y cumplir con las obligaciones que le impone este acuerdo, y el otorgamiento, formalización y cumplimiento del presente, y los instrumentos y documentos que deben otorgarse en vinculación con este acuerdo i) han sido autorizados de manera válida y correcta por ella, y ii) no van en contra de sus documentos constitutivos ni de ningún acuerdo que le aplique de manera específica, ni de ninguna ley, norma o disposición a que deba ajustarse; c) no existe ningún procedimiento, litigio o procedimiento contencioso pendiente de resolución que se haya iniciado en su contra ante ningún tribunal, árbitro o entidad administrativa o gubernamental que pudiera impedirle celebrar este Acuerdo o cumplir con las obligaciones que se le impone, y d) es propietario de, o tiene responsabilidad y autoridad como gestor de inversiones con respecto a, fondos o cuentas que son propietarias de Bonos AEP de un valor no inferior a los montos nominales consignados en la página de firmas adjunta a este Acuerdo a la fecha del presente, bonos con respecto a los cuales tendría derecho a votar en lo relacionado con las solicitudes de aceptación y rechazo del Plan, a diferencia de con respecto a las Reclamaciones Aseguradas por los Bonos AEP, y que, a la fecha del presente, con sujeción a cualquier derecho de retención o gravamen permitido por la sección 4.5 a), no ha vendido, transferido, prendado, hipotecado o cedido dichos Bonos AEP ni ningún derecho a votar, a otorgar consentimientos o a dar instrucciones con respecto a dichos Bonos AEP a ninguna persona o entidad que pudiera impedirle al Tenedor de los Bonos AEP cumplir a

su vencimiento las obligaciones que le impone este Acuerdo, o afectar ese cumplimiento de alguna manera; estableciéndose, sin embargo, que cada una de las Partes reconoce que cada reclamación asegurada por los Bonos AEP se votará de acuerdo con el artículo 301 c) 3) de PROMESA y cualquier otra ley y documento rector aplicable mientras este Acuerdo esté en vigor.

Sección 3.7 Declaraciones de las Partes en este Acuerdo. Cada una de las Partes, de manera individual y no conjunta, declara y reconoce que: al otorgar este Acuerdo no se está basando, ni se ha basado, en ninguna declaración o afirmación realizada por la otra Parte ni por ninguno de sus representantes, agentes o apoderados con respecto al objeto, los fundamentos o las repercusiones de este Acuerdo, a excepción de lo que se establece en él; b) al otorgar este Acuerdo, se ha basado por completo en su propio criterio, convicciones e intereses y en los consejos de sus asesores, y ha tenido tiempo suficiente para analizar los términos de este Acuerdo antes de formalizarlo; y c) ha analizado este Acuerdo, lo comprende en todos sus aspectos y acepta voluntariamente todas las disposiciones contenidas en él. Nada de lo contenido en el presente limitará ni de otras maneras modificará ninguna conmutación ni ningún otro acuerdo o instrumento separado celebrado por uno o más de los Titulares de Obligaciones Generales o los Tenedores de Bonos AEP, por un lado, y una Aseguradora Monolínea, por el otro.

# ARTÍCULO IV

## CONVENIOS

Sección 4.1 Convenios de la Junta de Supervisión. La Junta de Supervisión adoptará, y dispondrá que el ELA, el SRE y la AEP adopten, todas las medidas necesarias para la inscripción del Plan y la Declaración de Divulgación, la aprobación de la Declaración de Divulgación y la inscripción de la Orden de Confirmación y la consumación, aplicación y administración del Plan, lo que incluye la ejecución y formalización de los Documentos Definitivos, siempre y cuando la Declaración de Divulgación, el Plan (y su consumación, aplicación y administración) y los demás Documentos Definitivos sean congruentes con los términos del presente y con el Plan, lo que incluye, sin limitación, que las Partes hayan actuado de buena fe en los relacionado con la negociación de los términos de este y esos documentos; asimismo, la Junta de Supervisión no instará a ninguna persona a adoptar ninguna medida que impida, o razonablemente pueda esperarse que impida, ninguna de las cosas anteriores. Dichas acciones incluirán, sin limitación: a) presentar el Plan y la Declaración de Divulgación, en una forma y sustancia congruente con este Acuerdo y razonablemente aceptable para las Partes, ante el Tribunal constituido conforme el Título III a más tardar el 28 de febrero de 2020; b) procurar la aprobación en tiempo y forma de la Declaración de Divulgación y la confirmación de Plan mediante vistas, de conformidad con las órdenes aplicables dictadas en los Procedimientos PROMESA; c) tan pronto como sea posible, y en la medida en que no esté impedido de hacerlo por motivos contractuales o por orden del Tribunal constituido conforme al Título III, procurar reprogramar y promover sus mociones para paralizar las Objeciones relacionadas con la Deuda, las Acciones por Nulidad, las Acciones para impugnar los Gravámenes, el Litigio AEP y el Litigio por los BAN de AFIPR a una fecha que no podrá ser antes que un (1) día hábil tras la fecha en que el Tribunal constituido conforme Título III dicte una orden que otorgue o deniegue la confirmación del Plan; d) tan pronto como sea práctico desde punto de vista comercial, a

criterio conjunto y exclusivo de las Partes del Gobierno, tras consultar con hasta dos (2) Acreedores Iniciales PSA (conjuntamente designados por el Grupo de la Deuda Constitucional, el Grupo OG, el CDCL y el Grupo QTCB), cada una de los cuales habrá otorgado un acuerdo de confidencialidad que en su forma y sustancia sea satisfactorio para la Junta de Supervisión y que restrinja a dichos Acreedores Iniciales PSA de efectuar transacciones con los Bonos OG Nuevos y los Bonos de Gravamen Subordinados de COFINA, procurar (o disponer que se procure) que las agencias calificadoras de riesgo que correspondan califiquen los Bonos OG Nuevos y los Bonos de Gravamen Subordinados de COFINA, de conformidad con las disposiciones del Plan; e) hacer esfuerzos razonables para que los Bonos OG Nuevos y los Bonos de Gravamen Subordinados de COFINA queden exonerados de impuestos en la medida permitida por la ley, lo que incluye, sin limitación, brindar o disponer que se brinde toda la información necesaria o solicitada por las leyes tributarias locales y las autoridades tributarias locales y federales que correspondan, y únicamente si la Junta de Supervisión y el ELA determinan, a su exclusivo criterio, tras consultar con dos (2) representantes/asesores legales que tengan experiencia en la sección 103 de IRC y que hayan sido conjuntamente designados por el Grupo de la Deuda Constitucional, el Grupo OG, el CDCL y el Grupo QTCB (cuyos representantes/asesores habrán debido firmar un acuerdo de confidencialidad cuya forma y sustancia sea satisfactoria para la Junta de Supervisión, no pudiendo ser tenedores de Bonos OG o tenedores de Bonos AEP que estén haciendo transacciones para su propia cuenta), procurar que el Servicio de Rentas Internas declare que los intereses sobre los Bonos OG Nuevos y los Bonos de Gravamen Subordinados de COFINA estarán exonerados de impuestos federales a las rentas; f) abstenerse de radicar directa o indirectamente (o seguir promoviendo) cualquier acción o procedimiento judicial, o de presentar reclamaciones u objeciones contra cualquier Acreedor Inicial PSA (o sus respectivos fiduciarios, agentes fiscales o agentes pagadores) que se relacione con los Bonos OG, los Bonos AEP o los BAN de AFIPR, según el caso, y hacer todos los esfuerzos razonables para evitar que cualquier otra persona o entidad (privada o gubernamental) radique directa o indirectamente (o siga promoviendo) cualquier acción o procedimiento de ese tipo o reclamación u objeción; g) abstenerse de radicar directa o indirectamente (o continuar promoviendo), o asumir cualquier postura legal en, cualquier acción o procedimiento, lo que incluye, sin limitación, presentar cualquier reclamación u objeción que vaya en contra de los compromisos y acuerdos descritos en el presente o definidos en el Plan; estableciéndose, sin embargo, que a excepción de los ingresos por impuestos sobre el petróleo asignados para el pago de los BAN de AFIPR y las reclamaciones de los tenedores de los BAN de AFIPR y el fiduciario de los BAN de AFIPR, lo anterior no tiene por objeto ser de aplicación a ninguna medida adoptada o que se adoptará con respecto a reclamaciones u objeciones sobre restitución u otras reclamaciones, en cada caso, que presenten los tenedores o los aseguradores de los Bonos CDCL, los Bonos AEP y los Bonos AFIPR; h) de no mediar circunstancias urgentes, consultará con un (1) representante legal designado conjuntamente por el Grupo de la Deuda Constitucional, el Grupo OG, el Grupo QTCB y el CDCL antes de tomar ninguna medida en contra de la prioridad de restitución y la prioridad de las leyes aplicables basada en la promulgación de PROMESA y el efecto de dicha ley sobre las Reclamaciones por los Bonos OG y las Reclamaciones por los Bonos de Garantía del ELA; i) como mínimo (4) cuatro días antes de dicha presentación, remitir a los abogados del Grupo de la Deuda Constitucional, el Grupo OG, el Grupo QTCB y el CDCL copias de la Declaración de Divulgación, el Plan, el Complemento al Plan, la Orden de Confirmación, los demás Documentos Definitivos y todos los demás documentos relacionados con cualquiera de los anteriores; j) tan pronto como sea posible luego de la Fecha Umbral PSA, la Junta de Supervisión hará máximos esfuerzos para que se publique una notificación en el sistema EMMA

COPIA DE FIRMA

sobre la Fecha Umbral PSA; k) en lo relacionado con la vista para considerar la confirmación del Plan, certificar un Plan Fiscal que se ajuste a lo dispuesto en el artículo 314 b) 7) de PROMESA, y l) en caso de que se radique una causa conforme al Título III con respecto a AFIPR, disponer que AFIPR asuma y cumpla todas sus obligaciones de acuerdo con los términos y condiciones que se establecen en la Estipulación AFIPR.

      Sección 4.2 <u>Convenios del ELA</u>. El ELA adoptará todas las medidas necesarias para la inscripción del Plan y la Declaración de Divulgación, la aprobación de la Declaración de Divulgación y la inscripción de la Orden de Confirmación y la consumación, aplicación y administración del Plan, lo que incluye la ejecución y formalización de los Documentos Definitivos, siempre y cuando la Declaración de Divulgación, el Plan (y su consumación, aplicación y administración) y los demás Documentos Definitivos sean congruentes con los términos del presente, lo que incluye, sin limitación, que las Partes hayan actuado de buena fe en lo relacionado con la negociación de los términos de este y esos documentos; asimismo, el ELA no instará a ninguna persona a adoptar ninguna medida que impida, o razonablemente pueda esperarse que impida, ninguna de las cosas anteriores. Dichas acciones incluirán, sin limitación: a) procurar la aprobación en tiempo y forma de la Declaración de Divulgación y la confirmación de Plan mediante vistas, de conformidad con las órdenes aplicables dictadas en los Procedimientos PROMESA; b) tan pronto como sea posible, y en la medida en que no esté impedido de hacerlo por motivos contractuales o por orden del Tribunal constituido conforme al Título III, procurar reprogramar y promover sus mociones para paralizar las Objeciones relacionadas con la Deuda, las Acciones por Nulidad, las Acciones para impugnar los Gravámenes, el Litigio AEP y el Litigio por los BAN de AFIPR a una fecha que no podrá ser antes que un (1) día hábil tras la fecha en que el Tribunal constituido conforme Título III dicte una orden que otorgue o deniegue la confirmación del Plan; c) tan pronto como sea práctico desde punto de vista comercial, a criterio conjunto y exclusivo de las Partes del Gobierno, tras consultar con hasta dos (2) Acreedores Iniciales PSA (conjuntamente designados por el Grupo de la Deuda Constitucional, el Grupo OG, el CDCL y el Grupo QTCB), cada una de los cuales habrá otorgado un acuerdo de confidencialidad que en su forma y sustancia sea satisfactorio para la Junta de Supervisión y que restrinja a dichos Acreedores Iniciales PSA de efectuar transacciones con los Bonos OG Nuevos y los Bonos Subordinados de COFINA, procurar (o disponer que se procure) que las agencias calificadoras de riesgo que correspondan califiquen los Bonos OG Nuevos y los Bonos de Gravamen Subordinados de COFINA, de conformidad con las disposiciones del Plan; d) hacer esfuerzos razonables para que los Bonos OG Nuevos y los Bonos de Gravamen Subordinados de COFINA queden exonerados de impuestos en la medida permitida por la ley, lo que incluye, sin limitación, brindar o disponer que se brinde toda la información necesaria o solicitada por las leyes tributarias locales y las autoridades tributarias locales y federales que correspondan, y únicamente si la Junta de Supervisión y el ELA determinan, a su exclusivo criterio, tras consultar con dos (2) representantes/asesores legales que tengan experiencia en la sección 103 de IRC y que hayan sido conjuntamente designados por el Grupo de la Deuda Constitucional, el Grupo OG, el CDCL y el Grupo QTCB (cuyos representantes/asesores habrán debido firmar un acuerdo de confidencialidad cuya forma y sustancia sea satisfactoria para la Junta de Supervisión, no pudiendo ser tenedores de Bonos OG o tenedores de Bonos AEP que estén haciendo transacciones para su propia cuenta), procurar que el Servicio de Rentas Internas declare que los intereses sobre los Bonos OG Nuevos y los Bonos de Gravamen Subordinados de COFINA estarán exonerados de impuestos federales a las rentas; e) hacer esfuerzos razonables para que la Legislatura promulgue, y el Gobierno aplique,

COPIA DE FIRMA

la legislación necesaria para emitir los Bonos OG Nuevos y los Bonos de Gravamen Subordinados de COFINA y para facilitar la confirmación y la consumación del Plan; f) brindar a la Junta de Supervisión la información financiera que razonablemente necesite para promover el Procedimiento PROMESA del ELA; g) abstenerse de radicar directa o indirectamente (o seguir promoviendo) cualquier acción o procedimiento judicial, o de presentar reclamaciones u objeciones contra cualquier Acreedor Inicial PSA (o sus respectivos fiduciarios, agentes fiscales o agentes pagadores) que se relacione con los Bonos OG, los Bonos AEP o los BAN de AFIPR, según el caso, y hacer todos los esfuerzos razonables para evitar que cualquier otra persona o entidad (privada o gubernamental) radique directa o indirectamente (o siga promoviendo) cualquier acción o procedimiento de ese tipo o reclamación u objeción; h) abstenerse de radicar directa o indirectamente (o continuar promoviendo), o asumir cualquier postura legal en, cualquier acción o procedimiento, lo que incluye, sin limitación, presentar cualquier reclamación u objeción que vaya en contra de los compromisos y acuerdos descritos en el presente o definidos en el Plan; estableciéndose, sin embargo, que a excepción de los ingresos por impuestos sobre el petróleo asignados para el pago de los BAN de AFIPR y las reclamaciones de los tenedores de los BAN de AFIPR y el fiduciario de los BAN de AFIPR, lo anterior no tiene por objeto ser de aplicación a ninguna medida adoptada o que se adoptará con respecto a reclamaciones u objeciones sobre restitución u otras reclamaciones, en cada caso, que presenten los tenedores o los aseguradores de los Bonos CDCL, los Bonos AEP y los Bonos AFIPR; i) de no mediar circunstancias urgentes, consultará con un (1) representante legal designado conjuntamente por el Grupo de la Deuda Constitucional, el Grupo OG, el Grupo QTCB y el CDCL antes de tomar ninguna medida en contra de la prioridad de restitución y la prioridad de las leyes aplicables basada en la promulgación de PROMESA y el efecto de dicha ley sobre las Reclamaciones por los Bonos OG y las Reclamaciones por los Bonos de Garantía del ELA, y j) tan pronto como sea posible luego de la fecha del presente, pero como máximo el 1 de julio de 2020, con la asistencia de AAFAF y con la aprobación previa de la Junta de Supervisión, emitirá una solicitud de propuestas dirigida a entidades reconocidas en el ámbito nacional que tengan experiencia como fiduciarios de los mercados municipales y que estén interesadas en desempeñarse como fiduciarios y agentes pagadores en relación con los Bonos OG Nuevos, los Bonos de Gravamen Subordinados de COFINA o ambos, según el caso, y, tras recibir las respuestas a tal solicitud de propuestas, el ELA, junto con las demás Partes del Gobierno, consultará con el abogado del Grupo de la Deuda Constitucional, el Grupo OG, el CDCL y el Grupo QTCB antes de elegir la propuesta, cuya elección la harán las Partes del Gobierno a su criterio conjunto y absoluto.

Sección 4.3 Convenios del SRE. SRE adoptará todas las medidas necesarias para la inscripción del Plan y la Declaración de Divulgación, la aprobación de la Declaración de Divulgación y la inscripción de la Orden de Confirmación y la consumación, aplicación y administración del Plan, lo que incluye la ejecución y formalización de los Documentos Definitivos, siempre y cuando la Declaración de Divulgación, el Plan (y su consumación, aplicación y administración) y los demás Documentos Definitivos sean congruentes con los términos del presente y el Plan, lo que incluye, sin limitación, que las Partes hayan actuado de buena fe en los relacionado con la negociación de los términos de este y esos documentos; asimismo, el SRE no instará a ninguna persona a adoptar ninguna medida que impida, o razonablemente pueda esperarse que impida, ninguna de las cosas anteriores. Dichas acciones incluirán, sin limitación: a) procurar la aprobación en tiempo y forma de la Declaración de Divulgación y la confirmación de Plan mediante vistas, de conformidad con las órdenes

COPIA DE FIRMA

aplicables dictadas en los Procedimientos PROMESA; b) brindar a la Junta de Supervisión la información financiera que razonablemente necesite para promover el Procedimiento PROMESA de la AEP; c) tan pronto como sea posible, y en la medida en que no esté impedido de hacerlo por motivos contractuales o por orden del Tribunal constituido conforme al Título III, procurar reprogramar y promover sus mociones para paralizar las Objeciones relacionadas con la Deuda, las Acciones por Nulidad, las Acciones para impugnar los Gravámenes, el Litigio AEP y el Litigio por los BAN de AFIPR a una fecha que no podrá ser antes que un (1) día hábil tras la fecha en que el Tribunal constituido conforme Título III dicte una orden que otorgue o deniegue la confirmación del Plan; y d) abstenerse de radicar directa o indirectamente (o continuar promoviendo), o asumir cualquier postura legal en, cualquier acción o procedimiento, lo que incluye, sin limitación, presentar cualquier reclamación u objeción que vaya en contra de los compromisos y acuerdos descritos en el presente o definidos en el Plan; <u>estableciéndose, sin embargo</u>, que a excepción de los ingresos por impuestos sobre el petróleo asignados para el pago de los BAN de AFIPR y las reclamaciones de los tenedores de los BAN de AFIPR y el fiduciario de los BAN de AFIPR, lo anterior no tiene por objeto ser de aplicación a ninguna medida adoptada o que se adoptará con respecto a reclamaciones u objeciones sobre restitución u otras reclamaciones, en cada caso, que presenten los tenedores o los aseguradores de los Bonos CDCL, los Bonos AEP y los Bonos AFIPR.

Sección 4.4 <u>Convenios de AEP</u>. AEP adoptará todas las medidas necesarias para la inscripción del Plan y la Declaración de Divulgación, la aprobación de la Declaración de Divulgación y la inscripción de la Orden de Confirmación y la consumación, aplicación y administración del Plan, lo que incluye la ejecución y formalización de los Documentos Definitivos, siempre y cuando la Declaración de Divulgación, el Plan (y su consumación, aplicación y administración) y los demás Documentos Definitivos sean congruentes con los términos del presente y el Plan, lo que incluye, sin limitación, que las Partes hayan actuado de buena fe en lo relacionado con la negociación de los términos de este y esos documentos; asimismo, AEP no instará a ninguna persona a adoptar ninguna medida que impida, o razonablemente pueda esperarse que impida, ninguna de las cosas anteriores. Dichas acciones incluirán, sin limitación: a) procurar la aprobación en tiempo y forma de la Declaración de Divulgación y la confirmación de Plan mediante vistas, de conformidad con las órdenes aplicables dictadas en los Procedimientos PROMESA; b) brindar a la Junta de Supervisión la información financiera que razonablemente necesite para promover el Procedimiento PROMESA de la AEP; c) tan pronto como sea posible, y en la medida en que no esté impedido de hacerlo por motivos contractuales o por orden del tribunal constituido conforme al Título III, procurar reprogramar y promover sus mociones para paralizar las Objeciones relacionadas con la Deuda, las Acciones por Nulidad, las Acciones para impugnar los Gravámenes, el Litigio AEP y el Litigio por los BAN de AFIPR a una fecha que no podrá ser antes que un (1) día hábil tras la fecha en que el Tribunal constituido conforme Título III dicte una orden que otorgue o deniegue la confirmación del Plan; d) abstenerse de radicar directa o indirectamente (o seguir promoviendo) cualquier acción o procedimiento judicial, o de presentar reclamaciones u objeciones contra cualquier Acreedor Inicial PSA (o sus respectivos fiduciarios, agentes fiscales o agentes pagadores) que se relacione con los Bonos OG, los Bonos AEP o los BAN de AFIPR, según el caso, y hacer todos los esfuerzos razonables para evitar que cualquier otra persona o entidad (privada o gubernamental) radique directa o indirectamente (o siga promoviendo) cualquier acción o procedimiento de ese tipo o reclamación u objeción, y e) abstenerse de radicar directa o indirectamente (o continuar promoviendo), o asumir cualquier postura legal en,

COPIA DE FIRMA

cualquier acción o procedimiento, lo que incluye, sin limitación, presentar cualquier reclamación u objeción que vaya en contra de los compromisos y acuerdos descritos en el presente o definidos en el Plan; estableciéndose, sin embargo, que a excepción de los ingresos por impuestos sobre el petróleo asignados para el pago de los BAN de AFIPR y las reclamaciones de los tenedores de los BAN de AFIPR y el fiduciario de los BAN de AFIPR, lo anterior no tiene por objeto ser de aplicación a ninguna medida adoptada o que se adoptará con respecto a reclamaciones u objeciones sobre restitución u otras reclamaciones, en cada caso, que presenten los tenedores o los aseguradores de los Bonos CDCL, los Bonos AEP y los Bonos AFIPR.

Sección 4.5 Convenios Tenedores de los Bonos OG. Con sujeción a los términos y condiciones del presente, cada uno de los Titulares de Obligaciones Generales, por separado y no conjuntamente, por el presente conviene en lo siguiente:

(a) Ninguno de los Tenedores de los Bonos OG venderá, transferirá, prendará, hipotecará o cederá (a menos que lo exijan los documentos definitivos de cobertura de seguros y la ley aplicable en lo referido a un bono asegurado por una Aseguradora Monolínea) (una "**Transferencia**") ninguna de las Reclamaciones por los Bonos OG, ni ningún derecho de voto, consentimiento o dirección ni participaciones u otros intereses con respecto a tales bonos (colectivamente, los "**Intereses OG**") durante el período que va desde la fecha del presente hasta lo primero en ocurrir de i) la fecha de entrada en vigor y ii) la extinción de este Acuerdo de conformidad con lo dispuesto en la sección 7.1 del presente; estableciéndose, sin embargo, que sin perjuicio de lo anterior, cada uno de los Tenedores de los Bonos OG podrá transferir los Intereses OG 1) a otro Acreedor PSA, o 2) en caso de que el receptor de la transferencia no sea un Acreedor PSA al momento de la transferencia, al receptor que otorgue y formalice, dentro de un plazo de (5) cinco días calendario luego de la transferencia, al abogado de la Junta de Supervisión y AAFAF, el Acuerdo de Adhesión adjunto al presente como Anexo F (un "**Cesionario Calificado**"), en virtud del cual y) dicho Cesionario Calificado i) asuma todos los derechos y obligaciones del cedente de conformidad con los términos y condiciones de este Acuerdo, y ii) dicho Cesionario Calificado será a partir de ese momento considerado un acreedor PSA para todos los efectos del presente, lo que incluye, sin limitación, con respecto a cualquier Bono OG adicional que tenga en su poder al momento en que se una a este Acuerdo, y asumirá todos los derechos y las obligaciones del presente (distintos a los derechos a recibir los Costos de Consumación) y z) en la fecha de entrada en vigor de la transferencia, o antes de ella, se considerará que dicho Tenedor de Bonos OG habrá renunciado a sus derechos (distinto al derecho a recibir los Costos de Consumación) y quedará eximido de sus obligaciones (a excepción de lo que se establece en la sección 4.5 c) del presente) en la fecha de entrada en vigor de la transferencia según este de Acuerdo o después de ella, únicamente en lo relacionado con los derechos transferidos; y estableciéndose, asimismo, que en la medida en que una transferencia infrinja las disposiciones de la presente sección 4.5 a), será nula *ab initio*, y las Reclamaciones por los Bonos OG o las Reclamaciones por los Bonos de Garantía del ELA y el Tenedor de los Bonos OG continuarán estando sujetas a este Acuerdo; y estableciéndose, además, que nada de lo contenido en el presente tiene por objeto, ni podrá interpretarse los efectos de, impedir a ninguno de los Titulares de Obligaciones Generales adquirir nuevas Reclamaciones por Bonos OG, Reclamaciones por Bonos AEP o Reclamaciones por Bonos de Garantía del ELA; con la condición de que cualquiera de tales Reclamaciones por Bonos OG, Reclamaciones por Bonos AEP o Reclamaciones por Bonos de Garantía del ELA que se adquiera a partir de la fecha del presente se considerará automática e inmediatamente sujeto a

COPIA DE FIRMA

los términos y disposiciones de este Acuerdo una vez haya sido adquirido por un Tenedor de Bonos OG; y, estableciéndose además, que las disposiciones de la presente sección 4.5 a) no serán de aplicación al otorgamiento de ningún derecho de retención o gravamen a favor de un banco o corredor que guarde en su custodia títulos valores en el curso ordinario de sus operaciones, cuando tales derechos de retención o gravámenes queden extinguidos una vez hayan sido transferidos los títulos valores en cuestión. Sin perjuicio de lo anterior, nada de lo contenido en el presente restringirá o prohibirá a ninguna de las partes de adoptar ninguna de las medidas que exige la Ley de Títulos Valores de 1933 (con sus modificaciones) la Ley de la Bolsa de Valores de 1934 (con sus modificaciones), cualquier norma o disposición promulgada en virtud de ellas, ni ninguna otra ley o disposición.

(b)          A excepción de lo que se establece expresamente en el presente, ninguno de los Titulares de Obligaciones Generales podrá i) radicar contra el ELA ninguna reclamación o evidencia de reclamación adicional, de ninguna naturaleza, ante el Tribunal constituido conforme al Título III (incluidas reclamaciones aseguradas, no aseguradas, administrativas o por contribuciones sustanciales) con respecto a ningún Bono OG, Reclamaciones por Bonos OG o Reclamaciones por Bonos de Garantía del ELA, estableciéndose que la no presentación de pruebas de reclamación adicionales como resultado de las obligaciones que impone esta cláusula i) no perjudicará ni limitará el total de las participaciones de dicho Tenedor de Bonos OG en las Reclamaciones por los Bonos OG o las Reclamaciones por los Bonos de Garantía del ELA, ii) a excepción de lo que autorice la sección 4.5 d) del presente únicamente con respecto a las Aseguradoras Monolínea, presentar una reclamación adicional, radicar o promover litigios, procedimientos, acciones o causas adicionales o pendientes relacionadas con sus Bonos OG, sus Reclamaciones por los Bonos OG o sus Reclamaciones por los Bonos de Garantía del ELA (comprometiéndose cada uno de tales Tenedores de Bonos OG a paralizar cualquier litigio, procedimiento, acción o causa pendiente), o procurar el pago de daños o buscar cualquier otro tipo de alivio contra cualquiera de las Partes Eximidas del Gobierno por motivo de las Reclamaciones Exoneradas del Gobierno, o iii) ayudar a ninguna persona tomar ninguna acción con respecto a las Reclamaciones Exoneradas del Gobierno que esté prohibida por la presente sección 4.5 b); estableciéndose, sin embargo, que en la medida en que sea congruente con sus obligaciones de conformidad con el presente, los Titulares de Obligaciones Generales podrán enmendar pruebas de reclamación únicamente para cambiar el nombre, dirección o datos similares del demandante.


(c)          Cada uno de los Titulares de Obligaciones Generales, exclusivamente en su capacidad como Tenedores de Bonos OG, Reclamaciones por Bonos OG o Reclamaciones por Bonos de Garantía del ELA, por separado y no conjuntamente i) apoyará la presentación del Plan, la administración de los Procedimientos PROMESA, la aprobación de la Declaración de Divulgación y el dictado de la Orden de Confirmación y la consumación, aplicación administración del Plan, incluidos el otorgamiento y la formalización de los Documentos Definitivos, siempre y cuando la Declaración de Divulgación, la Orden de Confirmación y el Plan (y su consumación, ejecución y administración) y los demás Documentos Definitivos sean congruentes con los términos del presente y del Plan, y de ninguna manera tomará ninguna acción, ni instará a ninguna otra persona a que la tome, que pudiera ir en contra de los términos del presente o impedir ninguna de las cosas mencionadas, y ii) de conformidad con las disposiciones de la sección 5.1 del presente A) no dará su consentimiento ni votará para

COPIA DE FIRMA

modificar el Plan, a menos que dicha modificación sea propuesta por la Junta de Supervisión, AAFAF, el ELA y la AEP, o cuente con su respaldo, y haya sido realizada conforme a las disposiciones de la sección 8.1 del presente, y B) no votará para apoyar ni apoyará ningún plan de ajuste de la AEP o el ELA que no haya sido propuesto por la Junta de Supervisión, AAFAF, el ELA y la AEP, siempre y cuando ninguna de las Partes del Gobierno esté en situación de incumplimiento grave de las obligaciones que le impone este Acuerdo; estableciéndose, sin embargo, que cada una de las partes reconoce que cada Reclamación Asegurada por los Bonos OG se votará de conformidad con la sección 301 c) 3) de PROMESA y las leyes y documentos rectores que correspondan mientras este Acuerdo permanezca en vigor.

(d)        Con sujeción a los términos que se establecen en el presente, a ninguno de los Titulares de Obligaciones Generales se le prohibirá i) adoptar cualquier medida que estime necesaria o apropiada para preservar, proteger o defender cualquiera de sus derechos de conformidad con este Acuerdo, el Plan u otros Documentos Definitivos, ii) adoptar cualquier medida para defenderse contra las reclamaciones y causas radicadas aducidas en las Objeciones Relacionadas con la Deuda, las Acciones por Nulidad, las Acciones para impugnar los Gravámenes, el Litigio AEP o el Litigio por los BAN de AFIPR, en la medida en que dichos litigios no estén paralizados, o las reclamaciones y causas radicadas aducidas en cualquier otro litigio no estén paralizados, iii) presentar reclamaciones o causas radicadas contra cualquier Parte que incumpla este Acuerdo, o iv) adoptar cualquier otra acción que el titular estime necesaria o apropiada contra una Aseguradora Monolínea para preservar, proteger o defender cualquiera de sus derechos al amparo de cualquier póliza de seguros emitida por una Aseguradora Monolínea con respecto a cualquier bono asegurado. Si limitar de manera alguna lo anterior, en la medida en que el Plan y los documentos definitivos sean congruentes con este Acuerdo y los anexos al presente, ninguno de los titulares de obligaciones generales adoptará ninguna medida para oponerse a la confirmación del Plan con respecto a los Prestatarios Cubiertos, lo que incluye, sin limitación, votar para rechazar el Plan con respecto a cualquier otra reclamación que exista contra el ELA o AEP (en lo relacionado con los bonos cubiertos por Aseguradoras Monolínea, en la medida en que dicho titular de obligaciones generales esté autorizado a votar dicha reclamación de conformidad con cualquier documento definitivo de seguros y la legislación aplicable); estableciéndose, sin embargo, que nada de lo contenido en este Acuerdo limitará o impedirá al Titular de Obligaciones Generales adoptar cualquier medida, o presentar cualquier reclamación o causa radicada relacionada con cualquier asunto vinculado con las Aseguradoras Monolínea y con respecto a cualquier bono asegurado por dichas aseguradoras (lo que incluye, sin limitación, votar reclamaciones, subrogaciones o aceleraciones, conmutaciones o cualquier otro acto que sea necesario para mantener los beneficios de la póliza de seguros de la Aseguradora Monolínea en cuestión). Sin perjuicio de ninguna disposición en contrario en este Acuerdo, los Titulares de Obligaciones Generales podrán 1) actuar en su capacidad como tenedores de bonos, reclamaciones o intereses relacionados en la Causa de la ACT conforme al Título III y cualquier causa conforme al Título III radicada por la Junta de Supervisión en representación de ADCC o AFIPR, pero no el Procedimiento PROMESA del ELA o el Procedimiento PROMESA del SRE (excepto para defenderse contra cualquier reclamación o causa radicada en su contra o para responder a cualesquiera objeciones a reclamaciones que hayan presentado), y adoptar cualquier medida en dichas causas conforme al Título III en tal capacidad para presentar reclamaciones adicionales, radicar o promover cualquier litigio, procedimiento, acción o causa pendiente o adicional con respecto a tales bonos, reclamaciones o intereses relacionados, y 2) en la medida en que la Junta

de Supervisión o el ELA procuren rechazar o suprimir reclamaciones en el Procedimiento PROMESA del ELA con respecto a una garantía por un endeudamiento no relacionado con los Bonos OG por el cual el deudor esté al día con el pago del capital y los intereses de la obligación subyacente a la fecha del presente, adoptar medidas para objetar al rechazo o la supresión de la reclamación; estableciéndose, sin embargo, que, a excepción de las acciones enumeradas anteriormente, no se adoptará ninguna otra medida en el marco de los Procedimientos PROMESA que pudiera impactar negativamente o de otras maneras afectar la confirmación o la consumación del Plan; y estableciéndose, además, que sin perjuicio de la limitación de adoptar determinadas medidas en los procedimientos PROMESA con relación a las reclamaciones vinculadas con los Bonos ACT, los Bonos SRE, los Bonos ADCC, los BAN de AFIPR y los Bonos AFIPR que se establecen en la presente sección 4.5 d), los Titulares de Obligaciones Generales que tengan cualquiera de tales reclamaciones tendrán derecho a recibir el mismo tratamiento, las mismas elecciones y las mismas consideraciones económicas que cualquier otro titular o aseguradoras de Bonos ACT, Bonos SRE, Bonos ADCC, los BAN de AFIPR o los Bonos AFIPR, según corresponda, de conformidad con el Plan y en la medida en que dicho titular tenga una reclamación permitida contra un Prestatario Cubierto.

Sección 4.6 Convenios de los Tenedores de Bonos AEP. Con sujeción a los términos y condiciones del presente, cada uno de los Titulares de Obligaciones Generales, por separado y no conjuntamente, por el presente conviene en lo siguiente:

(a)       Ninguno de los Tenedores de Bonos AEP transferirá ninguna de las Reclamaciones por los Bonos AEP, ni ningún derecho de voto, consentimiento o dirección ni participaciones u otros intereses con respecto a tales bonos (colectivamente, los "**Intereses AEP**") durante el período que va desde la fecha del presente hasta lo primero en ocurrir de i) la fecha de entrada en vigor y ii) la extinción de este Acuerdo de conformidad con lo dispuesto en la sección 7.1 del presente; estableciéndose, sin embargo, que sin perjuicio de lo anterior, cada uno de los Tenedores de los Bonos AEP podrá transferir los Intereses AEP 1) a otro Acreedor PSA, o 2) a un Cesionario Calificado, en virtud de lo cual y) dicho Cesionario Calificado i) asumirá todos los derechos y obligaciones del cedente de conformidad con los términos y condiciones de este Acuerdo, y dicho Cesionario Calificado será a partir de ese momento considerado un acreedor PSA para todos los efectos del presente, lo que incluye, sin limitación, con respecto a cualquier Bono AEP adicional que tenga en su poder al momento en que se una a este Acuerdo, y asumirá todos los derechos y las obligaciones del presente (distintos a los derechos a recibir los Costos de Consumación) y z) en la fecha de entrada en vigor de la transferencia, o antes de ella, se considerará que dicho Tenedor de Bonos AEP habrá renunciado a sus derechos (distinto al derecho a recibir los Costos de Consumación) y quedará eximido de sus obligaciones (a excepción de lo que se establece en la sección 4.6 c) del presente) en la fecha de entrada en vigor de la transferencia según este de Acuerdo o después de ella, únicamente en lo relacionado con los derechos transferidos; y estableciéndose, asimismo, que en la medida en que una transferencia infrinja las disposiciones de la presente sección 4.6 a), será nula *ab initio*, y las Reclamaciones por los Bonos AEP o el Tenedor de los Bonos AEP que intente la Transferencia continuarán estando sujetas a este Acuerdo; y estableciéndose, además, que nada de lo contenido en el presente tiene por objeto, ni podrá interpretarse a los efectos de, impedir a ninguno de los Tenedores de Bonos AEP adquirir nuevas Reclamaciones por Bonos AEP, Reclamaciones por Bonos OG o Reclamaciones por Bonos de Garantía del ELA; con la condición de que cualquiera de tales Reclamaciones por Bonos AEP, Reclamaciones por Bonos OG o Reclamaciones por Bonos de Garantía del ELA que se adquiera a partir de la fecha del

presente se considerará automática e inmediatamente sujeto a los términos y disposiciones de este Acuerdo una vez haya sido adquirido por un Tenedor de Bonos OG; y, estableciéndose, además, que las disposiciones de la presente sección 4.6 a) no serán de aplicación al otorgamiento de ningún derecho de retención o gravamen a favor de un banco o corredor que guarde en su custodia títulos valores en el curso ordinario de sus operaciones, cuando tales derechos de retención o gravámenes queden extinguidos una vez hayan sido transferidos los títulos valores en cuestión. Sin perjuicio de lo anterior, nada de lo contenido en el presente restringirá o prohibirá a ninguna de las partes de adoptar ninguna de las medidas que exige la Ley de Títulos Valores de 1933 (con sus modificaciones) la Ley de la Bolsa de Valores de 1934 (con sus modificaciones), cualquier norma o disposición promulgada en virtud de ellas, ni ninguna otra ley o disposición.

(b)        A excepción de lo que se establece expresamente en el presente, ninguno de los Tenedores de Bonos AEP podrá i) radicar contra el ELA ninguna reclamación o evidencia de reclamación adicional, de ninguna naturaleza, ante el Tribunal constituido conforme al Título III (incluidas reclamaciones aseguradas, no aseguradas, administrativas o por contribuciones sustanciales) con respecto a ningún Bono AEP o Reclamaciones por Bonos AEP, estableciéndose que la no presentación de evidencias de reclamación adicionales como resultado de las obligaciones que impone esta cláusula i) no perjudicará ni limitará el total de las participaciones de dicho Tenedor de Bonos AEP en las Reclamaciones por los Bonos AEP o las Reclamaciones por los Bonos de Garantía del ELA, ii) excepto de conformidad con cualquier moción de fecha final dictada en el Procedimiento PROMESA AEP, o según lo autorice la sección 4.6 d) del presente únicamente con respecto a las Aseguradoras Monolínea, presentar una reclamación adicional, radicar o promover litigios, procedimientos, acciones o causas adicionales o pendientes relacionadas con sus Bonos AEP o sus Reclamaciones por los Bonos AEP (comprometiéndose cada uno de tales Tenedores de Bonos AEP a paralizar cualquier litigio, procedimiento, acción u causa pendiente), o procurar el pago de daños o buscar cualquier otro tipo de alivio contra cualquiera de las Partes Eximidas del Gobierno por motivo de las Reclamaciones Exoneradas del Gobierno, o iii) ayudar a ninguna persona tomar ninguna acción con respecto a las Reclamaciones Exoneradas del Gobierno que esté prohibida por la presente sección 4.6 b); estableciéndose, sin embargo, que en la medida en que sea congruente con sus obligaciones de conformidad con el presente, los Tenedores de Bonos AEP podrán enmendar evidencias de reclamación únicamente para cambiar el nombre, dirección o datos similares del demandante.

(c)        Cada uno de los Tenedores de Bonos AEP, exclusivamente en su capacidad como Tenedores de Bonos AEP y de Reclamaciones por Bonos AEP, por separado y no conjuntamente i) apoyará la presentación del Plan, la administración de los Procedimientos PROMESA, la aprobación de la Declaración de Divulgación y el dictado de la Orden de Confirmación y la consumación, aplicación administración del Plan, incluidos el otorgamiento y la formalización de los Documentos Definitivos, siempre y cuando la Declaración de Divulgación, la Orden de Confirmación y el Plan (y su consumación, ejecución y administración) y los demás Documentos Definitivos sean congruentes con los términos del presente, y de ninguna manera tomará ninguna acción, ni instará a ninguna otra persona a que la tome, que pudiera ir en contra de los términos del presente y del Plan o impedir ninguna de las cosas mencionadas, y ii) de conformidad con las disposiciones de la sección 5.1 del presente A) no dará su consentimiento ni votará para modificar el Plan, a menos que dicha modificación sea propuesta por la Junta de Supervisión, AAFAF, el ELA y la AEP, o cuente con su respaldo, y

COPIA DE FIRMA

haya sido realizada conforme a las disposiciones de la sección 8.1 del presente, y B) no votará para apoyar ni apoyará ningún plan de ajuste de la AEP o el ELA que no haya sido propuesto por la Junta de Supervisión, AAFAF, el ELA y la AEP, siempre y cuando ninguna de las Partes del Gobierno esté en situación de incumplimiento grave de las obligaciones que le impone este Acuerdo; estableciéndose, sin embargo, que cada una de las partes reconoce que cada Reclamación Asegurada por los Bonos AEP se votará de conformidad con la sección 301 c) 3) de PROMESA y las leyes y documentos rectores que correspondan mientras este Acuerdo permanezca en vigor.

(d)        Con sujeción a los términos que se establecen en el presente, a ninguno de los Tenedores de Bonos AEP se le prohibirá i) adoptar cualquier medida que estime necesaria o apropiada para preservar, proteger o defender cualquiera de sus derechos de conformidad con este Acuerdo, el Plan u otros Documentos Definitivos, ii) adoptar cualquier medida para defenderse contra las reclamaciones y causas radicadas aducidas en las Objeciones Relacionadas con la Deuda, las Acciones por Nulidad, las Acciones para impugnar los Gravámenes, el Litigio AEP o el Litigio por los BAN de AFIPR, en la medida en que dichos litigios no estén paralizados, o las reclamaciones y causas radicadas aducidas en cualquier otro litigio no estén paralizados, iii) presentar reclamaciones o causas radicadas contra cualquier Parte que incumpla este Acuerdo, o iv) adoptar cualquier otra acción que el titular estime necesaria o apropiada contra una Aseguradora Monolínea para preservar, proteger o defender cualquiera de sus derechos al amparo de cualquier póliza de seguros emitida por una Aseguradora Monolínea con respecto a cualquier bono asegurado. Si limitar de manera alguna lo anterior, en la medida en que el Plan y los documentos definitivos sean congruentes con este Acuerdo y los anexos al presente, ninguno de los Tenedores de Bonos AEP adoptará ninguna medida para oponerse a la confirmación del Plan con respecto a los Prestatarios Cubiertos, lo que incluye, sin limitación, votar para rechazar el Plan con respecto a cualquier otra reclamación que exista contra el ELA o la AEP (en lo relacionado con los bonos cubiertos por Aseguradoras Monolínea, en la medida en que dicho titular de obligaciones generales esté autorizado a votar dicha reclamación de conformidad con cualquier documento definitivo de seguros y la legislación aplicable); estableciéndose, sin embargo, que nada de lo contenido en este Acuerdo limitará o impedirá al Tenedor de Bonos AEP adoptar cualquier medida, o radicar cualquier reclamación o causa radicada relacionada con cualquier asunto vinculado con las Aseguradoras Monolínea y con respecto a cualquier bono asegurado por dichas aseguradoras (lo que incluye, sin limitación, votar reclamaciones, subrogaciones o aceleraciones, conmutaciones o cualquier otro acto que sea necesario para mantener los beneficios de la póliza de seguros de la Aseguradora Monolínea en cuestión). Sin perjuicio de ninguna disposición en contrario en este Acuerdo, los Tenedores de Bonos AEP podrán 1) actuar en su capacidad como tenedores de bonos, reclamaciones o intereses relacionados en la Causa de la ACT conforme al Título III y cualquier causa conforme al Título III radicada por la Junta de Supervisión en representación de ADCC o AFIPR, pero no el Procedimiento PROMESA del ELA o el Procedimiento PROMESA del SRE (excepto para defenderse contra cualquier reclamación o causa radicada en su contra o para responder a cualesquiera objeciones a reclamaciones que hayan presentado), y adoptar cualquier medida en dichas causas conforme al Título III en tal capacidad para presentar reclamaciones adicionales, radicar o promover cualquier litigio, procedimiento, acción o causa pendiente o adicional con respecto a tales bonos, reclamaciones o intereses relacionados, y 2) en la medida en que la Junta de Supervisión o el ELA procuren rechazar o suprimir reclamaciones en el Procedimiento PROMESA del ELA con respecto a una garantía por un endeudamiento no relacionado con los

**COPIA DE FIRMA**

Bonos OG por el cual el deudor esté al día con el pago del capital y los intereses de la obligación subyacente a la fecha del presente, adoptar medidas para objetar al rechazo o la supresión de la reclamación; estableciéndose, sin embargo, que, a excepción de las acciones enumeradas anteriormente, no se adoptará ninguna otra medida en el marco de los Procedimientos PROMESA que pudiera impactar negativamente o de otras maneras afectar la confirmación o la consumación del Plan; y estableciéndose, además, que sin perjuicio de la limitación de adoptar determinadas medidas en los procedimientos PROMESA con relación a las reclamaciones vinculadas con los Bonos ACT, los Bonos SRE, los Bonos ADCC, los BAN de AFIPR y los Bonos AFIPR que se establecen en la presente sección 4.6 d), los Tenedores de Bonos AEP que tengan cualquiera de tales reclamaciones tendrán derecho a recibir el mismo tratamiento, las mismas elecciones y las mismas consideraciones económicas que cualquier otro titular o aseguradoras de Bonos ACT, Bonos SRE, Bonos ADCC, los BAN de AFIPR o los Bonos AFIPR, según corresponda, de conformidad con el Plan y en la medida en que dicho titular tenga una reclamación permitida contra un Prestatario Cubierto.

Sección 4.7 Convenios de las Partes. Con sujeción a los términos y condiciones del presente, cada una de las Partes, por separado y no conjuntamente, por el presente conviene en lo siguiente:

(a)        Coordinación. Las Partes coordinarán y harán sus mejores esfuerzos para obtener el consentimiento y la adhesión de AAFAF antes de consumar las transacciones contempladas en este documento. Cualquier declaración, garantía, convenio u otras obligaciones de AAFAF contempladas en el presente no entrarán en vigor hasta que una persona autorizada por dicha entidad haya firmado el presente.

(b)        Protecciones jurídicas. El Plan, la Orden de Confirmación, la Legislación para los Bonos OG Nuevos, la Legislación para los Bonos Subordinados de COFINA, la Escritura para los Bonos OG Nuevos y la Escritura para los Bonos de Gravamen Subordinados de COFINA, de una manera que las Partes acordarán, incluirá las siguientes protecciones legales:

(i)        A partir de la fecha de Entrada en Vigor, cada mes que cualquiera de los Bonos OG esté en circulación, el ELA depositará una doceava parte (1/12) de los pagos anuales de capital y una sexta parte (1/6) de los intereses semestrales que deban pagarse con respecto a los Bonos OG Nuevos en un Fondo del Servicio de la Deuda, el cual se mantendrá en régimen de fideicomiso para el beneficio de los tenedores de los Bonos OG Nuevos; estableciéndose, sin embargo, que en la Fecha de entrada en vigor el ELA depositará los montos adicionales que sean necesarios para emitir los Bonos OG Nuevos en la Fecha Estimada de Emisión;

(ii)        El ELA creará el Fondo de Reserva del Servicio de la Deuda 1) depositará fondos en él a) en la Fecha de Entrada en Vigor, o b) en cuotas anuales iguales durante un período inicial de cinco años desde la Fecha de Entrada en Vigor (la elección será realizada por las Partes del Gobierno en su absoluto criterio); y 2) lo mantendrá en régimen de fideicomiso para el beneficio de los tenedores de los Bonos OG Nuevos.

(iii)        Para el pago de los Bonos OG Nuevos, el ELA se comprometerá a su buena fe, crédito y poder de imponer contribuciones en virtud de la Constitución de Puerto Rico y la ley aplicable de Puerto Rico;

(iv)        De conformidad con la Legislación para los Bonos OG Nuevos, habrá gravámenes legales sobre el Fondo de Servicio de la Deuda y el Fondo de Reserva del Servicio de la Deuda una vez que los fondos se hayan depositado en ellos a fin garantizar el pago de los

COPIA DE FIRMA

Bonos OG Nuevos; dichos gravámenes legales permanecerán en vigor hasta que los Bonos OG Nuevos hayan sido pagados en su totalidad de acuerdo con sus términos;

(v)                        Habrá un acuerdo de instrucción por separado con el banco depositario que regirá el flujo de fondos del ELA al fiduciario de los Bonos OG Nuevos para depositarlos de acuerdo con la Escritura de los Bonos OG Nuevos;

(vi)                        De conformidad con la Legislación de los Bonos OG Nuevos y la Escritura de los Bonos de OG Nuevos, el fiduciario de los Bonos OG Nuevos tendrá un derecho de acción directo para hacer cumplir la Escritura de los Bonos OG Nuevos, entre otras cosas, con respecto a los depósitos de fondos en el Fondo de Servicio de la Deuda y el Fondo de Reserva del Servicio de la Deuda, y a solicitar la reparación de cumplimiento estricto en caso de incumplimientos de los convenios en la Escritura para los Bonos OG Nuevos, y, a partir de su entrada en vigor, se considerará que se habrá renunciado a la paralización automática de cualquier procedimiento de insolvencia futuro radicado en nombre del ELA (sea de conformidad con el Título III de PROMESA o de otra forma) con respecto a sumas depositadas en el Fondo de Servicio de la Deuda y el Fondo de Reserva para el Servicio de la Deuda; estableciéndose, sin embargo, que en caso de incumplimiento en virtud de la Escritura de los Bonos OG Nuevos, según se describa en ellos, y si el fiduciario de los Bonos OG Nuevos no toma medidas, los tenedores de no menos del veinticinco por ciento (25%) del monto de capital en circulación de los Bonos OG Nuevos tendrá derecho a radicar una demanda, acción, un escrito *mandamus* o cualquier otro procedimiento en virtud de los principios de equidad o la ley, o para proteger o hacer cumplir cualquier derecho o remedio que establezca la Escritura por los Bonos OG Nuevos;

(vii)                        De conformidad con la Legislación sobre los Bonos de Gravamen Subordinados de COFINA, en la Fecha de Entrada en Vigor, todos los derechos, titularidad y participación en la Porción ELA a partir de la Fecha de Entrada en Vigor se venderá, cederá y transferirá sin recursos a COFINA, de forma tal que COFINA se transformará en el único y exclusivo propietario de la Porción ELA, y los tenedores de los Bonos de Gravamen Subordinados de COFINA recibirán protecciones legales y convenios que en esencia serán similares a los que se brindan a los tenedores de los Bonos de Gravamen Preferentes de COFINA, con el objetivo de garantizar una protección similar a los derechos de propiedad de los Tenedores de Bonos de Gravamen Preferentes de COFINA; estableciéndose, sin embargo que el ELA mantendrá la totalidad de la participación residual y de reversión con respecto a la Porción ELA (luego de pagar en su totalidad los Bonos de Gravamen Subordinados de COFINA, de conformidad con los términos y condiciones de la Escritura por los Bonos de Gravamen Subordinados de COFINA); dicha participación residual se probará mediante un certificado residual y de conformidad con los términos de la Legislación por los Bonos de Gravamen Subordinados de COFINA y la Escritura por los Bonos de Gravamen Subordinados de COFINA.

(viii)                        De conformidad con la Legislación para los Bonos Subordinados de COFINA, los Bonos de Gravamen Subordinados de COFINA serán emitidos de conformidad con, y serán garantizados por, un gravamen legal de segundo rango sobre los Impuestos Pignorados de COFINA, el cual permanecerá en pleno vigor y efectos hasta que los Bonos de Gravamen Subordinados de COFINA hayan sido pagados en su totalidad, de conformidad con los términos y disposiciones de la Escritura por los Bonos de Gravamen Subordinados de COFINA;

(ix)        El gravamen legal de segundo rango con respecto a los Impuestos Pignorados de COFINA, y los compromisos asumidos en virtud de dichos impuestos, así como todas las demás disposiciones emitidas para pagar o garantizar el pago de los Bonos de Gravamen Subordinados de COFINA serán válidos, vinculantes, legales y exigibles;

(x)        De conformidad con la Legislación por los Bonos OG Nuevos y la Escritura por los Bonos OG Nuevos, se impondrá un Límite Integral con respecto a todo el endeudamiento neto financiado por los impuestos de 9,16% de los Ingresos de la Política de Endeudamiento en virtud del artículo IV de la Ley de Responsabilidad por la Deuda, incluido un sublímite de deuda garantizado o securitizado de 0,25% de los Ingresos de la Política de Endeudamiento por encima del porcentaje de los Ingresos de la Política de Endeudamiento necesarios para pagar el servicio de la deuda por los Bonos de Gravamen Preferentes de COFINA y los Bonos de Gravamen Subordinados de COFINA;

(xi)        El Plan Fiscal certificado en la Fecha de entrada en vigor, y cualquier Plan Fiscal posterior a dicha fecha, incluirá disposiciones para el pago del capital y los intereses sobre los Bonos OG Nuevos.

(xii)        En los Bonos de Gravamen Subordinados de COFINA y los Bonos OG Nuevos constará un sello o una leyenda similar a los efectos de que el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico ha determinado que dichos bonos son válidos, jurídicamente vinculantes y exigibles de conformidad con la Orden de Confirmación;

(xiii)        Los compromisos y acuerdos establecidos en este Acuerdo y consignados en el Plan y en la Orden de Confirmación no serán vinculantes para ninguna de las Partes (incluido cualquier sucesor de la Junta de Supervisión) en un procedimiento futuro (u otro procedimiento de insolvencia) radicado conforme al Título III con respecto a la prioridad de los Bonos OG Nuevos de conformidad con PROMESA, la Constitución de Puerto Rico u otra legislación que sea de aplicación;

(xiv)        Para el beneficio de todos los titulares iniciales y futuros de Bonos de Gravamen Subordinados de COFINA, el ELA asumirá el compromiso de que, hasta que todas las obligaciones con respecto a dichos bonos hayan sido pagadas de conformidad con sus términos, no tomará ninguna medida que A) afecte el derecho de COFINA de recibir los Impuestos Pignorados de COFINA, incluida la Porción ELA; B) limite o altere los derechos conferidos a COFINA de conformidad con el Plan y la Orden de Confirmación para cumplir los términos de cualquier acuerdo con los tenedores de los Bonos de Gravamen Subordinados de COFINA; C) perjudique de forma grave la recaudación de los Impuestos Pignorados de COFINA en cualquier Ejercicio Fiscal, o D) vaya en detrimento de los derechos y los remedios de los tenedores de los Bonos de Gravamen Subordinados de COFINA o los Impuestos Pignorados de COFINA;

(xv)        Para el beneficio de los titulares iniciales y futuros de los Bonos OG, el ELA asumirá el compromiso de que, hasta que todas las obligaciones con respecto a dichos bonos hayan sido totalmente pagadas de conformidad con sus términos, no tomará ninguna medida que afecte los derechos y los remedios de los tenedores de los Bonos OG Nuevos;

(xvi)        La Orden de Confirmación incluirá una determinación de que, a los efectos del artículo 209 de PROMESA, la cancelación de la deuda que debe producirse en la

COPIA DE FIRMA

Fecha de entrada en vigor es necesaria para que la Junta de Supervisión pueda certificar que los gastos no exceden los ingresos para el ELA, según se determinen de conformidad con normas modificadas de contabilidad de lo devengado;

(xvii)        El Tribunal constituido conforme Título III conservará su jurisdicción para exigir el cumplimiento de las disposiciones del Plan, los Bonos OG Nuevos, la Escritura de los Bonos OG Nuevos, los Bonos de Gravamen Subordinados de COFINA y la Escritura de los Bonos de Gravamen Subordinados de COFINA; y

(xviii)        La Orden de Confirmación es de naturaleza plena, definitiva, completa, concluyente y vinculante para, y no será objeto de ningún tipo de ataque indirecto o impugnación ante ningún tribunal u otro foro por parte de 1) el ELA, 2) la AEP, 3) COFINA, 4) cualquier persona o entidad que afirme tener reclamaciones u otros derechos frente al ELA, la AEP, COFINA o cualquiera de sus respectivas dependencias o agencias, lo que incluye derechos de usufructo (directos o indirectos, como principal, agente, contraparte, subrogado, aseguradora u otros) con respecto a bonos del ELA o cualquiera de sus dependencias o con respecto a cualquier fiduciario, agente de garantía, fiduciario de contrato, agente fiscal y cualquier banco que reciba o mantenga fondos relacionados con dichos bonos, sea o no que las reclamaciones o derechos de tal persona o entidad se vean afectados por el Plan y, si lo son, independientemente de que dicha persona o entidad haya aceptado o no el Plan, 5) cualquier otra persona y 6) cada uno de los respectivos herederos, sucesores, cesionarios, fiduciarios, ejecutores, directivos, directores, agentes, representantes, abogados, beneficiarios o guardianes de los anteriores.

(c)        Entidad alternativa. Sin perjuicio de ninguna de las disposiciones en contrario en el presente, y con sujeción al consentimiento del Grupo de la Deuda Constitucional, el Grupo OG, el CDCL y el Grupo QTCB, las Partes del Gobierno se reservan el derecho de consumar algunas de las transacciones contempladas en el presente a) mediante constituir una entidad alternativa para que reciba la Porción ELA, b) para disponer la emisión de títulos valores que contengan los mismos términos y disposiciones que los Bonos de Gravamen Subordinados de COFINA, lo que incluye, sin limitación, los acuerdos que dicha entidad asuma en la Escritura por los Bonos de Gravamen Subordinados de COFINA, c) si así se dispone, todas las referencias a los Bonos de Gravamen Subordinados de COFINA, la Escritura por los Bonos de Gravamen Subordinados de COFINA y la Legislación por los Bonos de Gravamen Subordinados de COFINA se considerarán reemplazadas por el nombre de dicha entidad.

(d)        Distribución de beneficios con respecto a la exención de impuestos otorgada a los Bonos. En caso de que las Partes del Gobierno obtengan una determinación del Servicio de Rentas Internas en virtud de las secciones 4.1e) y 4.2 d) de este Acuerdo, o un dictamen del Abogado por los Bonos conforme a la Sección 103 (colectivamente, una "Determinación Favorable") a los efectos de que la proporción entre el monto global de todos los Bonos OG Nuevos gravables y todos los Bonos de Gravamen Subordinados de COFINA gravables ("Nueva Proporción") que se emitan en la Fecha de entrada en vigor y el monto global por todos los Bonos OG nuevos y todos los Bonos de Gravamen Subordinados de COFINA no supera el 12 % ("Proporción Existente"), los beneficios de dicha determinación se distribuirán de la siguiente manera: i) si la determinación favorable se obtiene antes de la Fecha de entrada en vigor A) el ELA recibirá la porción que le corresponda de los beneficios en la forma de una reducción de los flujos anuales de efectivo necesarios para pagar el servicio de la deuda por los Bonos OG Nuevos y los Bonos de Gravamen Subordinados de COFINA; la rebaja implicaría una reducción de los intereses sobre la porción de los Bonos Gravables que figuran en el

COPIA DE FIRMA

Resumen de Capital y Cupones en el Anexo I del presente, una reducción que, previa determinación del Servicio de Rentas Internas o el Abogado por los Bonos conforme a la Sección 103, supondría rebajar un 0,50% los cupones por los Bonos OG Nuevos Gravables y un 0,375% los cupones de los Bonos de Gravamen Subordinados de COFINA Gravables que se enumeran en el Anexo I; el descuento aplicaría a la porción beneficiada de dichos bonos; y B) los tenedores de cualquier reclamación que reciban Bonos OG Nuevos o Bonos de Gravamen Subordinados de COFINA de conformidad con el Plan recibirán el saldo del beneficio de dichas determinaciones favorables; ii) si la Determinación Favorable que se obtiene luego de la Fecha de entrada en vigor sostiene que la Proporción Nueva es inferior a la Proporción Existente, los tenedores de los Bonos Gravables afectados por dicha determinación (los "Bonos Invitados") serán invitados a canjear dichos bonos por bonos convertidos (la "Oferta de Canje"), y la tasa de interés sobre los bonos convertidos se ajustará para que tengan un rendimiento que no podrá estar más de veinticinco (25) puntos básicos por debajo del rendimiento de los Bonos Invitados del mismo tipo, tasa de interés, serie y vencimiento; la comparación entre los rendimientos se determinará de la manera que se especifique en el Reglamento del Tesoro de los Estados Unidos (el "Reglamento del Tesoro") promulgado bajo la supervisión del IRC, con sus modificaciones; estableciéndose, sin embargo, que cualquiera de las reducciones mencionadas únicamente afectará a la porción de los Bonos OG Nuevos y los Bonos de Gravamen Subordinados de COFINA contemplados en la Determinación Favorable; estableciéndose, asimismo, que dichos bonos convertidos estarán acompañada de un dictamen favorable del Abogado por los Bonos conforme a la Sección 103 a los efectos de que los intereses sobre los bonos convertidos (distintos a los intereses acumulados antes de su emisión) y sobre los Bonos Invitados canjeados por dichos bonos convertidos desde la fecha original de entrega de los Bonos Invitados canjeados están, en opinión del abogado, excluidos de los ingresos brutos a los efectos del cálculo de los impuestos federales sobre los ingresos y de los tributos locales, estatales y del ELA sobre los ingresos; y iii) en caso de que se obtenga cualquiera de las determinaciones mencionadas, los convenios para obtener dichas determinaciones de conformidad con las secciones 4.1 e) y 4.2 d) del presente quedarán extinguidos cuando ocurra lo primero de: 1) el 1 de agosto de 2021; 2) que el Servicio de Rentas Internas notifique al ELA que no puede emitir una carta privada favorable expidiéndose o formalizando un acuerdo con respecto a los asuntos que se tratan en esta subsección, y 3) la modificación de la Escritura por los Bonos OG Nuevos y la Escritura por los Bonos de Gravamen Subordinados de COFINA tras el recibo de una determinación favorable y la consumación de una Oferta de Canje.

Sección 4.8 Creador calificado de mercado. Sin perjuicio de ninguna disposición en contrario contenida en el presente artículo IV, a) un Acreedor PSA podrá transferir cualquier Participación OG, Participación AEP o BAN de AFIPR a un Creador Calificado de Mercado que actúe como tal sin la obligación de que dicho Creador Calificado de Mercado sea o se transforme en un Acreedor PSA, a condición de que dicho creador calificado de mercado posteriormente transfiera todas las Participaciones OG, las Participaciones AEP o los BAN de AFIPR a un acreedor PSA o a un Cesionario Calificado como máximo veinte (20) días hábiles después de haber adquirido dichas Participaciones OG, Participaciones AEP o los BAN de AFIPR, según el caso; y b) en la medida en que un Acreedor PSA esté actuando como Creador Calificado de Mercado, podrá transferir las Participaciones OG, las Participaciones AEP o los BAN de AFIPR que adquiera de tenedores de Participaciones OG, Participaciones AEP o BAN de AFIPR que no sean Acreedores PSA sin necesidad de que el cesionario sea o se transforme

COPIA DE FIRMA

en un Acreedor PSA. Un Creador Calificado de Mercado podrá, con el consentimiento de las Partes del Gobierno (que no podrán denegar irrazonablemente) unirse a este Acuerdo únicamente en representación de una mesa de operaciones específica.

Sección 4.9 Litigios relacionados con las designaciones. A excepción de que se establezca expresamente otra cosa en el presente, o a menos que se exija otra cosa para cumplir una orden de un tribunal con competencia que no haya sido anulada, revocada o paralizada, una Parte que participe en calidad de demandante en un Litigio relacionado con las designaciones no podrá seguir participando en dicho litigio, sino que, en todas las circunstancias, dicha Parte por el presente conviene en lo siguiente: a) cumplir todas las responsabilidades y obligaciones que se establecen en este Acuerdo, incluidas, entre otras, las demás responsabilidades y obligaciones que se establecen en los artículos IV y V del presente, y b) sin importar la determinación y la emisión de una Orden Definitiva en el marco del Litigio relacionado con las designaciones, sea que dicha determinación y Orden Definitiva se dicten antes de que el tribunal constituido conforme al Título III considere la aprobación o confirmación del Plan, o después de que se dicte la Orden de Confirmación, dicha Parte i) no argumentará ni aducirá que dicha determinación y Orden Definitiva anula, afecta o de otras formas modifica las transacciones contempladas en el presente y en el Plan, y ii) en caso de que dicha determinación y Orden Definitiva y) ocurra antes de la aprobación o confirmación del Plan y z) cause o exija la reconstitución o redesignación de la Junta de Supervisión, dicha parte solicitará por escrito que la junta reconstituida o redesignada 1) exija el cumplimiento de los términos y condiciones de este Acuerdo y del Plan y 2) procure sin demora que el Tribunal constituido conforme el Título III confirme el Plan. Sin perjuicio de lo anterior, durante el período i) previo a la Fecha de entrada en vigor, cualquier Parte que participe en calidad de demandante en un Litigio relacionado con las designaciones no tendrá ninguna obligación de informar al tribunal que esté entendiendo en dicho litigio sobre la ejecución y tramitación de este Acuerdo, y ii) a partir de la Fecha de entrada en vigor, cualquier parte involucrada en el Litigio relacionado con las designaciones buscará la desestimación definitiva de dicho litigio.

ARTÍCULO V

PLAN Y APOYO AL PLAN

Sección 5.1          Compromiso de apoyo al Plan. A partir de la fecha del presente, siempre y cuando a) el presente Acuerdo no haya sido extinguido y b) ni la Declaración de Divulgación, ni el Plan ni ninguno de los Documentos Definitivos propuestos haya sido presentado, enmendado o modificado de una manera que vaya en contra de lo dispuesto en la sección 7.2 del presente, cada uno de los Acreedores PSA (en la medida en que continúe siendo una Parte) i) apoyará A) la aprobación de la Declaración de Divulgación de conformidad con el artículo 1125 del Código de Quiebras, B) la confirmación del Plan de conformidad con el artículo 1129 del Código de Quiebras, y C) a menos que el Tribunal constituido conforme al Título III disponga otra cosa, previa moción radicada por las Partes del Gobierno, no objetará a que se paralicen todos los procedimientos y determinaciones vinculados con el Litigio AEP, las Acciones por Nulidad, las Acciones para impugnar los gravámenes, las Objeciones relacionadas con la Deuda y los Litigios por los BAN de AFIPR hasta, como mínimo, la Fecha de entrada en vigor; estableciéndose, sin embargo, que los Acreedores PSA únicamente estarán obligados a apoyar el Plan con respecto a las Reclamaciones por los Bonos OG y las Reclamaciones por los Bonos

**COPIA DE FIRMA**

AEP que tengan en su poder y bajo su control; y, estableciéndose, asimismo, que nada de lo
contenido en el presente limitará o prohibirá a ningún Acreedor PSA adoptar ninguna medida, o
presentar ninguna reclamación o causa radicada, que se vincule con cualquier asunto
relacionado exclusivamente con las Aseguradoras Monolínea (lo que incluye, sin limitación, la
votación de reclamaciones, subrogaciones, aceleraciones, conmutaciones o cualquier otro acto
necesario para mantener los beneficios de la póliza de seguros que corresponda), ii) tras recibir
la Declaración de Divulgación u otros materiales de solicitud con respecto de Plan, en la
máxima medida permitida por la ley, votará oportunamente, o dispondrá que se vote, para
aceptar el Plan en su capacidad como Titular de Obligaciones Generales o Tenedor de Bonos
AEP, según corresponda, con derechos de aceptación en virtud de la Orden de la Declaración de
Divulgación, según el caso; disponiéndose, sin embargo, que los Acreedores PSA solamente
estarán obligados a votar, o disponer que se vote, para aceptar el Plan con respecto a las
Reclamaciones por los Bonos OG y las Reclamaciones por los Bonos AEP que dicho acreedor
PSA tenga en su poder o controle, iii) no cambiará ni anulará (ni dispondrá que se cambie o se
anule) ninguno de tales votos, iv) no dará su consentimiento a, ni votará por, ninguna
modificación del Plan, a menos que dicha modificación Y) no sea perjudicial para los Titulares
de Obligaciones Generales y los Tenedores de Bonos AEP, y Z) no contradiga los términos
establecidos en el presente y en el Plan, y v) no votará ni apoyará ningún plan de ajuste de AEP
o el ELA que no haya sido propuesto o no esté respaldado por las Partes del Gobierno, siempre
y cuando ninguna de las Partes del Gobierno haya incurrido en un incumplimiento grave de este
Acuerdo; estableciéndose, sin embargo, que cada una de las Partes reconoce que cada
Reclamación por Bonos OG Asegurados y cada reclamación por Bonos AEP Asegurados se
votará de conformidad con los términos del artículo 301 c) 3) de PROMESA y cualquier otra ley
y documento rector que sea de aplicación mientras este Acuerdo siga en vigor.

Sección 5.2 Solicitud de votos en vinculación con el Plan. Sin perjuicio de ninguna
disposición en contrario en el presente artículo V o en alguna otra sección de este Acuerdo, este
Acuerdo no es una solicitud de adhesión al Plan, ni se interpretará de esa forma. Cada una de las
Partes, por separado y no conjuntamente, reconoce y conviene en que a) no se solicitarán votos
sobre Plan hasta que el Tribunal constituido conforme al Título III haya aprobado la Declaración
de Divulgación y los materiales de propuestas relacionados y las partes que tengan derecho a
recibirlos los hayan recibido, y b) este Acuerdo no constituye una oferta para emitir o vender
títulos valores a ninguna persona o entidad, ni la presentación de una oferta para adquirir o
comprar títulos valores en una jurisdicción donde dicha oferta o propuesta sería ilícita. SIN
PERJUICIO DE LO ANTERIOR, NADA DE LO CONTENIDO EN EL PRESENTE EXIGIRÁ
A NINGUNA DE LAS PARTES ADOPTAR NINGUNA MEDIDA QUE PROMESA, LA
LEY DE TÍTULOS VALORES DE 1933 (CON SUS MODIFICACIONES), LA LEY DE LA
BOLSA DE VALORES DE 1934 (CON SUS MODIFICACIONES), CUALQUIER NORMA O
DISPOSICIÓN PROMULGADA DE CONFORMIDAD CON ELLAS, CUALQUIER OTRA
LEY O DISPOSICIONES APLICABLES, O CUALQUIER ORDEN O INSTRUCCIÓN DE
CUALQUIER TRIBUNAL O AUTORIDAD GUBERNAMENTAL ESTATAL O FEDERAL,
PROHÍBAN.

COPIA DE FIRMA

## ARTÍCULO VI

## COSTOS DE CONSUMACIÓN Y CARGOS POR RESTRICCIÓN

Sección 6.1 Costos de Consumación y Cargos por Restricción PSA. Con sujeción en los términos y condiciones del presente y del Plan a) los Costos de Consumación y los Cargos por Restricción PSA, cada uno de los cuales se ganará por completo en la fecha del presente o en la fecha de otorgamiento del Acuerdo de Adhesión para los Acreedores Iniciales PSA o los Acreedores de Litisconsorcio, según el caso, se pagará en la Fecha de entrada en vigor de conformidad con los términos y condiciones establecidos en el Plan y en la Orden de Confirmación, y b) ni los costos de consumación ni los cargos por restricción PSA se incluirán en el cálculo del Límite de recuperación sobre los bonos.

(a)    Costos de consumación. En contraprestación por los cargos y los gastos en que los acreedores iniciales PSA incurran en vinculación con la negociación y otorgamiento de este Acuerdo y la obtención de la aprobación de la Declaración de Divulgación y la confirmación de Plan, cada acreedor inicial PSA tendrá derecho a recibir en la Fecha de entrada en vigor, en la forma de una reclamación autorizada por gastos administrativos, en función de sus respectivas posiciones (asegurados o no), a las 5:00 p.m. (EDT) de la fecha del presente, una porción prorrateada en efectivo en un monto que equivaldrá a 1,25%, redondeado a dos decimales, del monto global de las Reclamaciones por los Bonos AEP, las Reclamaciones por los Bonos OG y las Reclamaciones por los Bonos de Garantía del ELA (sin duplicación).

(b)    Cargo de Restricción PSA. En contraprestación por la firma de este Acuerdo, y tras acordar regirse por todos sus términos y condiciones, incluido el acuerdo de "congelar" sus bonos de conformidad con los términos de este Acuerdo, con sujeción a la emisión de la Orden de Confirmación, cada Acreedor del Cargo de Restricción PSA (lo que incluye, con respecto al tenedor de un Bono OG o un Bono AEP asegurado por una Aseguradora Monolínea, en la medida en que dicho Acreedor del Cargo de Restricción PSA esté autorizado a votar la reclamación con respecto a dicho Bono OG o un Bono AEP asegurado por una Aseguradora Monolínea en virtud de los documentos definitivos de seguro y la legislación aplicable) tendrá derecho a recibir el Cargo de Restricción PSA en la forma de una reclamación autorizada por gastos administrativos, pagadera en efectivo al momento de la consumación del Plan, en un monto equivalente al Porcentaje del Cargo por Restricción multiplicado por el monto global de las Reclamaciones por los Bonos OG, las Reclamaciones por los Bonos AEP y las Reclamaciones por los Bonos de Garantía del ELA (sin duplicación y, en la medida en que cualquiera de esa reclamaciones estén aseguradas por una Aseguradoras Monolínea, únicamente si el Acreedor del Cargo de Restricción PSA está autorizado a votar cualquiera de tales reclamaciones en virtud de los documentos definitivos de seguro y la legislación aplicable) en poder de tal Acreedor del Cargo de Restricción PSA al momento del vencimiento del Período del Cargo de Restricción PSA; estableciéndose, sin embargo, que cada Acreedor del Cargo de Restricción PSA que adquiera Bonos OG o Bonos AEP luego de la Fecha de Adhesión (lo que incluye, con respecto al Tenedor de Bonos OG o Bonos AEP asegurados por una Aseguradora Monolínea, en la medida en que dicho Acreedor del Cargo de Restricción PSA esté autorizado a votar la reclamación con respecto a tales Bonos de conformidad con los documentos definitivos de seguro y la legislación aplicable) tendrá derecho a recibir un Cargo de Restricción PSA equivalente al Porcentaje del Cargo por Restricción multiplicado por el monto global de las

**COPIA DE FIRMA**

Reclamaciones por los Bonos OG, las Reclamaciones por los Bonos AEP y las Reclamaciones por los Bonos de Garantía del ELA (sin duplicación y, en la medida en que dichas reclamaciones estén aseguradas por Aseguradoras Monolínea, únicamente si dicho Acreedor del Cargo de Restricción PSA está autorizado a votar dicha reclamación en virtud de los documentos definitivos de seguro y la legislación aplicable) en poder de tal Acreedor del Cargo de Restricción PSA en la Fecha de Umbral PSA y la emisión de la Orden de Confirmación, lo que ocurra primero; y estableciéndose, asimismo, que si un Acreedor del Cargo de Restricción PSA vende cualquiera de los Bonos OG, los Bonos AEP o los BAN de AFIPR por los que habría tenido derecho a recibir el Cargo de Restricción PSA, la parte compradora, y no la parte vendedora, tendrá derecho a recibir el Cargo por Restricción PSA por motivo de dicha venta; y estableciéndose, asimismo, que en todas las circunstancias la suma del total del Cargo de Restricción PSA más los Costos de Consumación no excederá la cifra de trescientos cincuenta millones de dólares ($350.000.000,00); y disponiéndose, asimismo, que en caso de que este Acuerdo sea rescindido de conformidad con los términos de la sección 7.1 c) i) del presente o si la Junta de Supervisión extingue este Acuerdo por cualquier motivo que no sea i) un incumplimiento de este Acuerdo por parte de una parte no gubernamental, ii) que el Tribunal constituido conforme al Título III deniegue la confirmación del Plan, la suma global del Cargo de Restricción PSA y los Costos de Consumación, a saber cien millones de dólares ($100.000.000,00) se pagará de manera prorrateada y en efectivo como gasto administrativo de conformidad con un plan de ajuste para el ELA a los Acreedores Iniciales PSA en la fecha de rescisión; y estableciéndose, además, que en toda otra circunstancia, al momento de la rescisión del Acuerdo, no deberá pagarse ningún Costo de Consumación o Cargo de Restricción PSA a la Parte de este Acuerdo que lo rescinda o a la Parte con respecto a la cual se rescinde este Acuerdo.

(c)        Cargo para Apoyo a los Inversores Minoristas. El Plan dispondrá la clasificación separada de los Bonos OG Minoristas y los Bonos AEP Minoristas con respecto a varias series de Bonos OG y Bonos AEP.

En caso de que una clase de Inversores Minoristas vote para aceptar el Plan, los miembros de dicha clase tendrán derecho a la parte asignable que les corresponda del Cargo para Apoyo a los Inversores Minoristas, cuyo valor máximo es de cincuenta millones de dólares ($50.000.000,00) en un monto que equivaldrá al Porcentaje del Cargo por Restricción PSA multiplicado por el monto global de las Reclamaciones por los Bonos OG, las Reclamaciones por los Bonos AEP y las Reclamaciones por los Bonos de Garantía del ELA (sin duplicación) en poder de dicho inversor minorista a la fecha en que el Tribunal constituido conforme al Título III dicte la Orden de Confirmación. En caso de que, tras asignar el Cargo para Apoyo a los Inversores Minoristas a los Inversores Minoristas de las clases que votaron para aceptar el Plan, el monto total de cincuenta millones de dólares ($50.000.000,00) no se asigne por completo, el saldo del Cargo para Apoyo a los Inversores Minoristas se reasignará y distribuirá de manera prorrateada a los Acreedores del Cargo de Restricción PSA que sean miembros de las clases que votaron para aceptar el Plan. Además, el Cargo para Apoyo a los Inversores Minoristas que se asigne a cualquier clase de Bonos OG Minoristas o Bonos AEP Minoristas que no voten para aceptar el Plan se reasignará y distribuirá de manera prorrateada entre los Acreedores del Cargo de Restricción PSA y a los Inversores Minoristas que integren las clases que votaron para aceptar el Plan. Cualquier porción de la Devolución del Cargo para Apoyo a los Inversores Minoristas que se redistribuya no se tendrá en cuenta a los efectos de calcular el Límite de Recuperación sobre los Bonos.

COPIA DE FIRMA

## ARTÍCULO V

## RESCISIÓN

Sección 7.1 Rescisión del Acuerdo.

a) Cualquier Acreedor PSA podrá rescindir el presente Acuerdo, únicamente en lo relacionado con sí mismo y a su exclusivo criterio, para lo cual deberá enviar la notificación por escrito a las demás Partes en caso de que se produzca alguna de las siguientes situaciones: i) cualquiera de las Partes del Gobierno incumple con cualquiera de los compromisos que haya asumido en el artículo IV del presente o cualquiera de las obligaciones que le impone este Acuerdo, si dicho incumplimiento tiene o pudiera tener un efecto económico o jurídico adverso en dicho Acreedor PSA, incluidos impactos económicos adversos en el trato que se otorgue a dicho Acreedor PSA en virtud del Plan (por ejemplo, cualquier arreglo que se establezca de conformidad con el Plan o cambios a las protecciones jurídicas que brinda la sección 4.7 b) del presente), o cambios en los flujos de efectivo para los Bonos OG Nuevos o los Bonos de Gravamen Subordinados de COFINA a que se hace referencia en los anexos al Plan, o cambios en la definición o el cálculo de los Límites de Recuperación sobre los Bonos o en el Cargo de Restricción PSA que pudieran tener efectos jurídicos o económicos adversos sobre dicho Acreedor PSA; ii) la Junta de Supervisión presenta una moción o solicitud ante el Tribunal constituido conforme al Título III que vaya en contra de este Acuerdo, incluido el Plan, en cualquier aspecto jurídico o económico que pudiera ser adverso (incluidos aspectos relativos al trato otorgado en virtud del Plan, cualquier arreglo que se establezca de conformidad con el Plan, o cambios en los flujos de efectivo para los Bonos OG Nuevos o los Bonos de Gravamen Subordinados de COFINA a que se hace referencia en el plan, o cambios en la definición o el cálculo de los Límites de Recuperación sobre los Bonos o en el Cargo de Restricción PSA), y dicha moción o solicitud no es retirada antes de lo primero en ocurrir entre y) cinco (5) días hábiles luego de que la Junta de Supervisión reciba una notificación por escrito de otra Parte (de conformidad con las disposiciones sobre el envío de notificaciones que figuran en la sección 8.11 del presente) a los efectos de que dicha moción o solicitud es incongruente con este Acuerdo en lo referido a dicho aspecto económico o jurídico adverso, y z) la emisión de una orden del Tribunal constituido conforme al Título III para aprobar dicha moción o solicitud; iii) se emite una Orden Definitiva en el marco del Procedimiento PROMESA que tiene efectos adversos graves sobre las perspectivas de confirmar el Plan; iv) el Tribunal constituido conforme al Título III no dicta una orden que apruebe la Declaración de Divulgación como máximo el 31 de agosto de 2020; v) no se promulga la Legislación por los Bonos de Gravamen Subordinados de COFINA ni la Legislación por los Bonos OG Nuevos antes del comienzo de la vista para analizar la confirmación del Plan, o vi) el Tribunal constituido conforme Título III no dicta la Orden de Confirmación a más tardar el 15 de diciembre de 2020, y la Fecha de entrada en vigor no ocurre a más tardar el 31 de diciembre de 2020; estableciéndose, sin embargo, que si las Partes del Gobierno publican una instrucción y notificación conjuntas a los efectos de que la vista para analizar la confirmación de Plan comenzará a más tardar el 15 de noviembre de 2020, las fechas que se indican en la subsección vi) anterior se prorrogarán hasta el 15 de enero de 2021 y el 15 de febrero de 2021, respectivamente.

(b)        La Junta de Supervisión, o el Grupo de la Deuda Constitucional, el Grupo OG, el

COPIA DE FIRMA

CDCL, el Grupo QTCB y Fir Tree actuando de manera conjunta, podrán rescindir el presente Acuerdo con respecto a todas las Partes en caso de que ocurra cualquiera de las siguientes situaciones: i) cualquier otra Parte incumple con cualquiera de las obligaciones que le corresponden en virtud del artículo IV del presente o con cualquiera de las responsabilidades que haya asumido de conformidad con este Acuerdo, y dicho incumplimiento tiene efectos adversos graves sobre las probabilidades de confirmar el Plan (como lo determinen conjuntamente las Partes del Gobierno y los Acreedores Iniciales PSA); ii) se dicta una Orden Definitiva en el marco de los Procedimientos PROMESA que tiene efectos adversos graves sobre las probabilidades de confirmar el Plan; iii) el Tribunal constituido conforme el Título III no dicta una orden para aprobar la Declaración de Divulgación a más tardar el 31 de agosto de 2020; iv) el Tribunal constituido conforme el Título III no dicta la Orden de Confirmación a más tardar el 15 de diciembre de 2020, y la Fecha de entrada en vigor no ocurre a más tardar el 31 de diciembre de 2020; v) el Tribunal constituido conforme al Título III u otro tribunal con jurisdicción emite una Orden Definitiva en la que deniega la confirmación del Plan; vi) la situación económica del ELA experimenta una crisis que hace inviable la confirmación del Plan e impracticable su puesta en práctica; vii) la Ley de Responsabilidad por la Deuda, tal como fue promulgada, no contiene el Límite Integral que establece el Plan, o viii) un tribunal con competencia emite una sentencia, resolución u orden que hace ilegal al Plan o de alguna manera impide o prohíbe su puesta en práctica, y dicha sentencia, resolución u orden no es anulada o revocada a más tardar sesenta (60) días calendario luego de su emisión y no es paralizada; estableciéndose, sin embargo, que si las Partes del Gobierno publican una instrucción y notificación conjuntas a los efectos de que la vista para analizar la confirmación de Plan comenzará a más tardar el 15 de noviembre de 2020, las fechas que se indican en la subsección iv) anterior se prorrogarán hasta el 15 de enero de 2021 y el 15 de febrero de 2021, respectivamente.

(c)        Sin limitar los derechos que cualquier otra disposición de este Acuerdo otorgue al Grupo de la Deuda Constitucional, el Grupo OG, el CDCL y el Grupo QTCB y sus respectivos miembros, cualquiera de ellos podrá, a su exclusivo criterio, rescindir este Acuerdo con relación a todas las Partes si la Junta de Supervisión i) modifica cualquiera de las disposiciones del Plan de una forma que tenga efectos económicos jurídicos adversos sobre el trato que se otorga a cualquier Titular de Obligaciones Generales o Tenedor de Bonos AEP, según corresponda, en el Plan, o ii) presenta un plan de ajuste que sea incompatible desde el punto de vista económico con el trato que se establece en el Plan (lo que incluye, sin limitación, cualesquiera modificaciones a las protecciones jurídicas que se establecen en la sección 4.7 b) del presente o a las características del diseño de los Bonos OG Nuevos y los Bonos de Gravamen Subordinados de COFINA que se establecen en el Anexo I al presente), en cada caso, sin el consentimiento del Grupo de la Deuda Constitucional, el Grupo OG, el CDCL y el Grupo QTCB.

(d)        La paralización automática que contemplan los artículos 362 y 922 del Código de Quiebras, que son de aplicación a los Procedimientos PROMESA en virtud del artículo 301 de PROMESA, no impedirán a una Parte adoptar cualquier medida que sea necesaria para lograr la rescisión de este Acuerdo de conformidad con sus términos.

(e)        Este Acuerdo podrá ser rescindido con respecto a todas las Partes con el consentimiento unánime de los Acreedores Iniciales PSA en caso de que el porcentaje gravable de Bonos OG Nuevos y Bonos de Gravamen Subordinados de COFINA exceda el trece por

COPIA DE FIRMA

ciento (13%) del total de Bonos OG Nuevos y Bonos de Gravamen Subordinados de COFINA emitidos de conformidad con el Plan.

(f)        Este Acuerdo podrá ser rescindido por Fir Tree, únicamente en relación con sí mismo y con respecto a las Reclamaciones por los Bonos OG, las Reclamaciones por los Bonos de Garantía del ELA y las Reclamaciones por los Bonos AEP de los que sea propietario o que gestione, a su exclusivo criterio y previo envío de una notificación por escrito a las demás Partes, en caso de ocurrir cualquiera de las siguientes cosas: a) la Estipulación AFIPR no es otorgada por las partes correspondientes a más tardar el 28 de febrero de 2020, o en la fecha posterior que acuerden dichas partes; b) el Tribunal constituido conforme al Título III deniega la moción del ELA presentada por medio de la Junta de Supervisión como su representante conforme al Título III, radicada de conformidad con los términos de la Estipulación AFIPR para lograr que se dicte una orden que apruebe dicha Estipulación, o c) el Tribunal constituido conforme Título III no aprueba el ingreso del ELA en la Estipulación AFIPR como mínimo diez (10) días hábiles antes del vencimiento del plazo para objetar al carácter adecuado de la información consignada en la Declaración de Divulgación.

(g)        El presente Acuerdo quedará automáticamente extinguido con respecto a todas las Partes a la llegada de la Fecha de entrada en vigor, a excepción de lo relacionado con cualquier acción de las Partes que el presente Acuerdo disponga expresamente que ocurrirá con posterioridad a la Fecha de entrada en vigor; estableciéndose, sin embargo, que a todos los efectos de la presente sección 7.1, el trato que se otorgará a todas las clases de reclamaciones distintas a las que se consignan en el Anexo I al presente no constituirán un efecto económico jurídico adverso para ningún Acreedor PSA.

Sección 7.2. Efectos de la rescisión. Excepto que se establezca otra cosa en el presente, ante la rescisión de este Acuerdo en lo relacionado con cualquiera de las Partes, a) este Acuerdo será declarado nulo y sin efectos, sin ninguna obligación para la Parte en cuestión y sus afiliados (ni ninguno de sus respectivos directores, directivos, empleados, consultores, contratistas, clientes de asesoría, agentes, asesores jurídicos y financieros u otros representantes de dicha Parte o sus afiliados), lo que incluye, sin limitación, la circunstancia de que Fir Tree rescinda este Acuerdo únicamente en lo relacionado con ella misma en virtud de la sección 7.1 f) del presente, en cuyo caso todas las referencias a Fir Tree, los BAN de AFIPR, el Litigio por los BAN de AFIPR y la Estipulación AFIPR se considerarán suprimidas de este Acuerdo y declaradas nulas y sin efectos; b) dicha Parte no tendrá ninguna obligación con respecto a ninguna otra Parte en virtud de este Acuerdo, ni tendrá más derechos, beneficios o privilegios de conformidad con él (lo que incluye, sin limitación, derechos con respecto a los Costos de Consumación o el Cargo de Restricción PSA, a excepción de lo que se disponga en el Plan), a excepción de las obligaciones o disposiciones de las secciones 2.1, 7.3, 8.3, 8.4, 8.8, 8.13 y 8.15 del presente y lo que se dispone en la presente cláusula b) de la sección 7.2, disposiciones que sobrevivirán a la extinción o rescisión de este Acuerdo y conservarán su pleno vigor y efectos de conformidad con los términos del presente; estableciéndose, sin embargo, que cualquier responsabilidad en que incurra una Parte por incumplir con los términos de este Acuerdo antes de la fecha de extinción o rescisión seguirá siendo exigible, y c) dicha Parte tendrá todos los derechos y remedios a los que habría tenido acceso, y podrá adoptar todas las medidas que habría tenido derecho a adoptar, de no haber celebrado este Acuerdo, y no se considerará que haya renunciado a ninguno de tales derechos por motivo de las doctrinas de prescripción liberatoria o de los actos propios, y las Partes convienen en que renunciarán a, y no utilizarán como defensa, los plazos de

COPIA DE FIRMA

prescripción aplicables a cualquier reclamación, litigio, procedimiento, acción judicial o causa que tengan contra otra Parte y cuya presentación este Acuerdo impediría, como si el transcurso del plazo de prescripción hubiera quedado detenido durante el período en que la Parte que presenta la reclamación, litigio, procedimiento, acción judicial o causa debía regirse por este Acuerdo; estableciéndose, sin embargo, que en ninguna circunstancia dicha extinción o rescisión eximirá a dicha Parte de las obligaciones que le competen por haber incumplido sus obligaciones antes de dichos extinción o rescisión, y estableciéndose, además, que a menos que el Tribunal constituido conforme al Título III disponga otra cosa, en el momento en que se envíe una notificación a la Parte que solicita la rescisión o extinción, todos los consentimientos y votos emitidos por dicha Parte antes de la rescisión o extinción serán considerados, a todos los efectos, nulos *ab initio*, y las Partes no los considerarán ni los utilizarán de manera alguna en vinculación con el Acuerdo, el Plan o de otras maneras. A excepción de lo relacionado con controversias derivadas de incumplimientos de este Acuerdo o su interpretación tras su rescisión, y) ni este Acuerdo, ni ninguno de sus términos o disposiciones ni ninguna de las negociaciones relacionadas con el presente serán admisibles en ninguna disputa, litigio, procedimiento o controversia entre las Partes, y nada de lo contenido en el presente podrá interpretarse como una admisión de ninguna de las Partes con respecto a ninguna cuestión, entendiéndose que las declaraciones y resoluciones consignadas en el presente fueron el resultado de negociaciones y concesiones de las posiciones de cada una de las Partes, y z) ninguna de las Partes podrá recurrir a este Acuerdo como elemento probatorio en contra de la otra Parte.

Sección 7.3 Obligaciones posteriores a la Fecha de entrada en vigor. Además de las obligaciones y disposiciones que se enumeran en la sección 7.2 b), que seguirán en vigor tras la extinción de este Acuerdo, las obligaciones o disposiciones que se establecen en las secciones 4.1 e), 4.1 f), 4.2 d) y 4.2 e) seguirán en vigencia tras la extinción automática de este Acuerdo en virtud de la sección 7.1 e) del presente.

## ARTÍCULO VIII

## DISPOSICIONES VARIAS

Sección 8.1 Enmiendas. El presente Acuerdo no podrá ser modificado, enmendado ni complementado sin un acuerdo por escrito firmado por las Partes del Gobierno que sean partes del presente, los miembros del Grupo de la Deuda Constitucional, los miembros del Grupo GO, los Titulares CDCL y los tenedores de pagarés QTCE; estableciéndose, sin embargo, que cualquier modificación, enmienda o complemento que tenga efectos económicos o jurídicos adversos sobre un Acreedor PSA, por ejemplo, debido a que modifica el trato que se otorga a dicho Acreedor PSA en virtud del Plan (incluida cualquier conciliación aplicable que se establezca de conformidad con el Plan) o cambia los flujos de efectivo o las protecciones jurídicas propuestas para los Bonos OG Nuevos o los Bonos de Gravamen Subordinados de COFINA, o la definición y el cálculo de los Límites de Recuperación sobre los Bonos, los Costos de Consumación o el Cargo de Restricción PSA de cualquier manera que pudiera tener un efecto económico adverso sobre dicho acreedor PSA, deberá acordarse por escrito por los miembros del Grupo de la Deuda Constitucional, los miembros del Grupo GO, los Titulares CDCL, los tenedores de Pagarés QTCB y Fir Tree. Sin perjuicio de lo anterior y de los términos y disposiciones de las secciones 4.5 a) y 4.6 a) del presente, y sin el consentimiento o

aprobación de los miembros del Grupo de la Deuda Constitucional, los miembros del Grupo OG, los Titulares CDCL y los Tenedores de Pagarés QTCB, a partir de la fecha del presente y hasta la Fecha Límite de Adhesión, la Junta de Supervisión podrá solicitar que partes adicionales suscriban el presente acuerdo con sujeción a todos sus términos, lo que incluye, sin limitación, los términos y condiciones que se establecen en los anexos, adjuntos y suplementos de este Acuerdo; estableciéndose, sin embargo, que sin perjuicio de las disposiciones de la presente sección 8.1, a menos que una modificación, enmienda o complemento tenga efectos económicos o jurídicos adversos sobre un acreedor PSA, la Junta de Supervisión podrá enmendar o de otras maneras modificar los términos del presente sin el consentimiento de las partes adicionales mencionadas, siempre y cuando se obtenga primero el consentimiento de los miembros del Grupo de la Deuda Constitucional, los miembros del Grupo GO, los Titulares CDCL y los tenedores de Pagarés QTCB; y estableciendo, asimismo, que cada parte adicional deberá otorgar y entregar al abogado de la Junta de Supervisión el modelo de Acuerdo Suplementario adjunto como Anexo G; estableciéndose, además, que bajo ninguna circunstancia las disposiciones de la Sección 6.1 a) podrán ser modificadas, enmendadas o complementadas sin el consentimiento expreso y por escrito de los acreedores iniciales PSA a la fecha de este Acuerdo.

Sección 8.2 Naciones más favorecidas. Sin perjuicio de ninguna disposición en contrario contenida en el presente, en caso de que la Junta de Supervisión celebre acuerdos que establezcan (o si el Plan establece) arreglos o un nivel de trato que sean más favorables desde el punto de vista económico a) para cualquier Reclamación por los Bonos OG (para aclarar, se incluyen las Reclamaciones Aseguradas por los Bonos OG) o para cualquier Reclamación por los Bonos de Garantía del ELA que el trato que establece el Resumen de la Conciliación para cualquier otra Reclamación por los Bonos OG o Reclamación por los Bonos de Garantía del ELA de la misma época (es decir, antes de 2011, 2011, 2012 o 2014, según corresponda), el trato que se establece en el Resumen de la Conciliación se modificará para que sea el mismo que se brinda a dichas Reclamaciones por los Bonos OG o Reclamaciones por los Bonos de Garantía del ELA, según corresponda, o b) para cualquier Reclamación por los Bonos AEP (para aclarar, se incluyen las Reclamaciones Aseguradas por los Bonos AEP) que el trato que se establece en el Resumen de la Conciliación para cualquier otra Reclamación por los Bonos AEP, independientemente de su época, el trato que se establece en el Resumen de la Conciliación se modificará para que sea el mismo que se brinda a dichas Reclamaciones por los Bonos AEP; estableciéndose, sin embargo, que el trato que se brinde a x) bonos (distintos a los Bonos AEP, para despejar dudas) que estén garantizados por el ELA, pero cuya garantía no haya sido ejecutada; y) las Reclamaciones por Bonos OG y las Reclamaciones por Bonos AEP en poder de los inversores de Puerto Rico, según se las define en el Plan, y z) las Reclamaciones de Conveniencia (*Convenience Claims*), según se las define en el Plan, quedarán eximidas de esta disposición.

Sección 8.3 No se admite ninguna responsabilidad.

a) El otorgamiento de este Acuerdo no constituirá ni una admisión de responsabilidad ni una prueba en ninguna demanda, acción judicial, procedimiento o controversia —pendiente de resolución o futura— con respecto a cualquier responsabilidad, acto ilícito u obligación (lo que incluye los aspectos de fondo de cualquier reclamación o defensa) de una Parte frente a la otra o a cualquier Persona, en lo relacionado con cualquiera de las cuestiones abarcadas en el presente, ni podrá interpretarse de ese modo.

COPIA DE FIRMA

(b) Nada de lo contenido en este Acuerdo (incluidos, sin limitación, el Preámbulo y los Anexos), ni los convenios consignados en él, ni ningún acto realizado o documento otorgado de conformidad con él o para promover sus fines: i) es una admisión o prueba de la validez de cualquier reclamación o alegación realizada en las Objeciones Relacionadas con la Deuda, las Acciones por Nulidad, las Acciones para impugnar los gravámenes, el Litigio AEP o el Litigio por los BAN de AFIPR, ni de acto ilícito u obligación de ninguna de las Partes, ni podrá considerarse de ese modo o usarse con dicho fin; ii) es una admisión o prueba de ninguna obligación, falta u omisión de ninguna de las Partes en cualquier procedimiento civil, penal o administrativo ante ninguna corte, dependencia administrativa o cualquier otro tribunal, ni podrá considerarse de ese modo o usarse con dicho fin; ni iii) es una admisión o prueba contra el ELA o AEP con respecto a la validez de cualquiera de las Reclamaciones por los Bonos OG, las Reclamaciones por los Bonos de Garantía del ELA o las Reclamaciones por los Bonos AEP. Nada de lo contenido en este Acuerdo, el convenio alcanzado ni ningún acto realizado o documento otorgado de conformidad con el presente o el convenio será admisible en ningún procedimiento con ningún fin, a excepción de lo que se necesite para lograr el cumplimiento de los términos de este Acuerdo.

Sección 8.4 <u>Negociaciones de buena fe.</u> Las Partes reconocen que cada una está siendo representada por un abogado, y que han recibido asesoramiento jurídico independiente con respecto a la conveniencia de celebrar este Acuerdo; las negociaciones relacionadas con este Acuerdo fueron regulares y se desarrollaron en igualdad de condiciones; cada una de las Partes otorga este Acuerdo como expresión de su libre voluntad; cada una está al tanto de todos los hechos pertinentes y los derechos que le asisten, y no ha sido influida indebidamente ni inducida a otorgar este Acuerdo como resultado de cualquier acto o acción de la otra Parte o cualquiera de sus empleados, agentes, apoderados o representantes. Asimismo, las Partes reconocen que otorgaron este Acuerdo debido a intención de evitar los gastos e inconvenientes de los litigios y otras controversias, y para llegar a una resolución permanente y definitiva con respecto a las Reclamaciones entre las Partes. Asimismo, las Partes reconocen y convienen en que, en lo relacionado con los Procedimientos PROMESA y la negociación y consumación de este Acuerdo, lo que incluye, sin limitación, el Plan, las Partes actuaron en todo momento a) de buena fe, y b) únicamente a título personal y no en representación o en nombre de ningún otro acreedor, tenedor de bonos u otra parte interesada.

Sección 8.5 <u>Terceros beneficiarios</u>. A excepción de los fondos y las cuentas que sean tenedores de los Bonos OG, los Bonos AEP o los BAN de AFIPR y cuyos asesores o gestores sean Partes del presente, nada de lo contenido en este Acuerdo, expreso o implícito, tiene por objeto conferir u otorgar a ninguna persona (incluidas, sin limitación, las Aseguradoras Monolínea) distinta a las Partes en el presente —y sus respectivos sucesores y cesionarios— ningún derecho, reparación o reclamación en virtud de este Acuerdo o de cualquier convenio, acuerdo o estipulación del presente; y los convenios, estipulaciones y acuerdos contenidos en este Acuerdo redundan y redundarán en el único y exclusivo beneficio de las Partes del presente y sus respectivos sucesores y cesionarios.

Sección 8.6 <u>Legislación aplicable; retención de jurisdicción; entrega de notificaciones.</u> El presente Acuerdo se regirá e interpretará de conformidad con la legislación interna del estado de Nueva York y la legislación federal aplicable, sin tener en cuenta los principios de elección de sistemas jurídicos que exigirían aplicar la legislación de otra jurisdicción. Al otorgar y formalizar este Acuerdo, por el presente cada Parte conviene de manera irrevocable e

COPIA DE FIRMA

incondicional en presentar cualquier acción judicial, demanda o procedimiento entre cualquiera
o la totalidad de ellas con respecto a cualquier asunto que se relacione con este Acuerdo, o que
se radique a fin de reconocer o ejecutar cualquier sentencia dictada a ejecutar cualquiera de tales
acciones judiciales, demandas o procedimientos, ante el Tribunal constituido conforme al Título
III únicamente a tales efectos y, al otorgar y formalizar este Acuerdo, cada una de ellas acepta
de manera irrevocable la jurisdicción de dicho tribunal, y se somete a ella, de manera general e
incondicional, con respecto a cualquier acción judicial, demanda o procedimiento, con sujeción
a los derechos de cada Parte de conformidad con la ley aplicable. En caso de iniciar cualquier
acción judicial, demanda o procedimiento, cada una de las Partes del presente a) acuerda y da su
consentimiento a que se podrá cursar una notificación del proceso, y obtener la jurisdicción
personal sobre cualquiera de las Partes del presente en cualquiera de tales acciones judiciales,
demandas o procedimientos, enviando por correo a la Parte, a la dirección que haya establecido
en la sección 8.11 del presente, una copia de la citación, la demanda y los demás documentos
necesarios para interponer dicha acción judicial, demanda o procedimiento, a menos que dicha
Parte haya indicado otra dirección en una notificación enviada a las demás partes de
conformidad con la sección 8.11 del presente, y b) en la máxima medida permitida por la ley
aplicable, renuncia a cualquier derecho que pueda tener a un juicio con jurado en cualquier
procedimiento judicial que surja directa o indirectamente de este Acuerdo y de las
declaraciones, convenios y otras obligaciones consignadas aquí.

Sección 8.7 Encabezamientos. Los encabezamientos de las secciones, párrafos y
subsecciones de este Acuerdo se incluyen únicamente con fines de conveniencia, no forman
parte de este Acuerdo y no modifican de manera alguna los términos de las disposiciones del
presente, ni afectarán su interpretación.

Sección 8.8 Acuerdo vinculante; sucesores y cesionarios. Este Acuerdo surtirá efectos y será
vinculante únicamente tras su otorgamiento y formalización por las Partes que se enumeran en
la página de firmas. El presente Acuerdo será vinculante con respecto a las partes, y redundará
en su beneficio y en el de sus respectivos sucesores, cesionarios, administradores, fundadores y
representantes. Los acuerdos, declaraciones, convenios y obligaciones asumidos por las Partes
en virtud de este Acuerdo son a título individual y no conjunto, y ninguna será responsable por
el cumplimiento o incumplimiento de otra con respecto a este Acuerdo. En caso de que
cualquier disposición de este Acuerdo, o su aplicación a cualquier persona o entidad o
circunstancia, se considere inválida o inexigible, en su totalidad o en parte, dicha invalidez e
inexigibilidad afectará únicamente dicha disposición (o parte de ella), y las secciones restantes
de dicha disposición y este Acuerdo continuarán teniendo pleno vigor y efectos, siempre y
cuando los aspectos económicos y jurídicos fundamentales de las transacciones contempladas
aquí o en la Hoja de Condiciones no se vean afectados de una manera que perjudique
sustancialmente a cualquiera de las Partes. En caso de que se determine dicha invalidez, las
Partes negociarán de buena fe para modificar este Acuerdo de forma tal de alcanzar, en la
máxima medida posible, sus intenciones originales de una manera razonablemente aceptable, a
fin de que las transacciones contempladas en el presente se lleven a cabo como estaba
originalmente previsto en la máxima medida posible. Sin perjuicio de lo anterior, a menos que
las Partes acuerden otra cosa, las disposiciones del presente que contemplan el pago de los
Costos de Consumación y los Cargos de Restricción PSA son aspectos fundamentales de este
Acuerdo y no pueden suprimirse.

Sección 8.9 Acuerdo total. El presente Acuerdo, lo que incluye, sin limitación, el Plan,

COPIA DE FIRMA

constituye el acuerdo total entre las Partes con respecto al objeto del presente y la Hoja de Condiciones, y reemplaza todas las negociaciones, declaraciones, promesas o garantías anteriores (orales o de otro tipo) realizadas por cualquiera de las Partes con respecto a su objeto. Ninguna de las Partes ha suscrito este Acuerdo sobre la base de ninguna declaración, promesa o garantía previa (orales o de otro tipo) de la contraparte, a excepción de los compromisos que puedan haberse asumidos expresamente en el presente.

Sección 8.10 Copias. El presente Acuerdo podrá ser otorgado en varias copias, cada una de las cuales será considerada un original, siendo la totalidad de las mismas, cuando sean reunidas, consideradas un único instrumento. Las copias firmadas transmitidas por telecopia u otro servicio de transmisión electrónica serán consideradas copias originales firmadas, siempre cuando se confirme la recepción de tales copias.

Sección 8.11 Notificaciones. Todos los pedidos, notificaciones, solicitudes, consentimientos y otras comunicaciones que se cursen en virtud del presente deberán ser por escrito y se considerarán entregadas i) cuando se entreguen personalmente mediante un servicio de correo o mensajería, ii) cuando se reciban efectivamente (según constancia de recepción) durante el horario comercial normal, o en el primer día hábil siguiente si se transmiten por vía electrónica (por correo electrónico), por fax o telecopia, con acuse de recibo, o iii) tres (3) días hábiles luego de haber sido debidamente depositadas en una oficina de correo para su envío mediante correo certificado o registrado, con franqueo prepagado y solicitud de acuse de recibo, a las siguientes direcciones, o a las direcciones que puedan indicarse en el futuro por escrito:

(a) Junta de Supervisión, el ELA o la AEP:
PROSKAUER ROSE LLP
Eleven Times Square
Nueva York, NY 10036
Martin J. Bienenstock, Esq.
Correo electrónico: mbienenstock@proskauer.com
Brian S. Rosen, Esq.
Correo electrónico: brosen@proskauer.com
Facsimile: 212-969-2900


(b) AAFAF:
O'MELVENY & MEYERS LLP
Seven Times Square
Nueva York, NY 10036
John Rapisardi, Esq.
Correo electrónico: jrapisardi@omm.com
Suzzanne Uhland, Esq.
Correo electrónico: suhland@omm.com
Maria J. DiConza, Esq.
Correo electrónico: mdiconza@omm.com
Fax: 212-326-2061


(c)     CDCL:
QUINN EMANUEL URQUHART & SULLIVAN, LLP

**COPIA DE FIRMA**

51 Madison Avenue, Piso 22
Nueva York, NY 10010
Susheel Kirpalani, Esq.
Correo electrónico: susheelkirpalani@quinnemanuel.com
Eric Kay, Esq.
Correo electrónico: erickay@quinnemanuel.com
Fax: 212-849-7100


(d)      Grupo QTCB:
MORGAN, LEWIS & BOCKIUS LLP
One State Street Hartford, CT 06103
Kurt A. Mayr, Esq.
Correo electrónico: kurt.mayr@morganlewis.com
David L. Lawton, Esq.
Correo electrónico: david.lawton@morganlewis.com


-y-


DAVIS, POLK & WARDWELL, LLP
450 Lexington Avenue
Nueva York, NY 10017
Donald Bernstein, Esq.
Correo electrónico: Donald.bernstein@davispolk.com


(e)      Grupo GO:
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
1285 Avenue of the Americas
Nueva York, NY 10019
Andrew Rosenberg, Esq.
Correo electrónico: arosenberg@paulweiss.com
Karen Zeituni, Esq.
Correo electrónico: kzeituni@paulweiss.com


-y-


WILLKIE, FARR & GALLAGHER
1875 K Street, NW
Washington, DC 20006
Mark Stancil, Esq.
Correo electrónico: mstancil@willkie.com


-y-

ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER, LLP
2000 K Street, NW
Washington, DC 20006
Donald Bernstein, Esq.
Correo electrónico: dburke@robbinsrussell.com


(f)      Grupo de la Deuda Constitucional:
MORRISON & FOERSTER, LLP
250 West 55th Street
Nueva York, NY 10019
Gary Lee, Esq.
Correo electrónico: glee@mofo.com
James Peck, Esq.
Correo electrónico: ipeck@mofo.com
Andrew Kissner, Esq.
Correo electrónico: akissner@mofo.com


(g)      Fir Tree:
FIR TREE CAPITAL MANAGEMENT, LP
55 West 46th Street, Piso 29
Nueva York, NY 10036
Evan Lederman
Correo electrónico: elederman@firtree.com
Brian Meyer
Correo electrónico: bmeyer@firtree.com


Sección 8.12      No se renuncia a las reparaciones. A excepción de lo que establezca expresamente este Acuerdo, nada de lo contenido en el presente tiene por objeto renunciar a ningún derecho o capacidad de las Partes de proteger y preservar los derechos, reparaciones e intereses (contractuales o de otro tipo) en virtud de las Resoluciones sobre los Bonos, el Título III o cualquier otra disposición de PROMESA o cualquier otra ley o disposición, ni limitarlos, obstaculizarlos o restringirlos.

Sección 8.13 Las obligaciones son individuales, no conjuntas. Los acuerdos, declaraciones, convenios y las demás obligaciones de las Partes en virtud de este Acuerdo son exclusivamente individuales.

Sección 8.14      Las reparaciones son acumulativas. Todos los derechos, facultades y reparaciones provistas de conformidad con los términos y disposiciones de este Acuerdo o que estén disponibles en virtud del presente, sea según la ley o los principios de equidad, serán acumulativos y no alternativos, y el hecho de que cualquiera de las Partes ejerza cualquier derecho, facultad o reparación no impedirá que pueda ejercer al mismo tiempo o más adelante cualquier otro derecho, facultad reparación.

Sección 8.15      Cumplimiento estricto. Las Partes acuerdan y entienden que el pago de daños pecuniarios es una reparación insuficiente en caso de que cualquiera de ellas incumpla con este Acuerdo, y la Parte inocente tendrá derecho a solicitar el cumplimiento estricto y que se

COPIA DE FIRMA

dicten medidas de hacer o no hacer como reparación ante cualquier incumplimiento de este Acuerdo, lo que incluye, a modo de ejemplo, una orden del Tribunal constituido conforme al Título III o cualquier otro tribunal con competencia que exija a la Parte que corresponda que cumpla sin demora con cualquiera de las obligaciones que le impone el presente. Sin perjuicio de cualquier disposición en contrario en este Acuerdo, el cumplimiento estricto, las medidas de hacer o no hacer y otras reparaciones similares, así como el derecho a rescindir este Acuerdo según sus términos y disposiciones, serán las únicas reparaciones disponibles para las Partes en caso de que cualquiera de ellas (o cualquier otra persona) incumpla con el presente, y ninguna de ellas (ni ninguna otra persona) tendrá derecho al pago de daños pecuniarios por cualquier incumplimiento de este Acuerdo.

Sección 8.16      Garantías adicionales. Cada una de las Partes del presente conviene en que otorgará y formalizará, o dispondrá que se otorguen y formalicen, los instrumentos que sean necesarios para dar efecto a los fines y propósitos de este Acuerdo y cumplir sus condiciones, y adoptará las medidas que la otra Parte razonablemente le solicite a tal fin.

**COPIA DE FIRMA**

**EN TESTIMONIO DE LO CUAL**, las Partes del presente han dispuesto la firma del presente Acuerdo en la fecha que se indica al inicio.

### Por: JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO

[Firmado:] Natalie A. Jaresko

Nombre: Natalie A. Jaresko

Cargo: Directora Ejecutiva

### Por: ESTADO LIBRE ASOCIADO DE PUERTO RICO

By: Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico

[Firmado:] Natalie A. Jaresko

Nombre: Natalie A. Jaresko

Cargo: Directora Ejecutiva

### Por: AUTORIDAD DE EDIFICIOS PÚBLICOS DE PUERTO RICO

Junta de Supervisión y Administración Financiera para Puerto Rico, como representante de la Autoridad de Edificios de Puerto Rico

[Firmado:] Natalie A. Jaresko

Nombre: Natalie A. Jaresko

Cargo: Directora Ejecutiva

### Por: SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO

Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico

[Firmado:] Natalie A. Jaresko

Nombre: Natalie A. Jaresko

Cargo: Directora Ejecutiva

**COPIA DE FIRMA**

Por: **ARISTEIA CAPITAL, LLC**, en representación de sí misma y de ciertos fondos gestionados


/fdo/ William R. Techar
Nombre: William R. Techar
Cargo: Gerente


/fdo/ Andrew B. David
Nombre: Andrew B. David
Cargo: Gerente General de Operaciones


Tenedor de Bonos OG por un valor nominal de: ██████████████

Tenedor de Bonos AEP por un valor nominal de: ██████████████

**COPIA DE FIRMA**

Por: **AURELIUS CAPITAL MANAGEMENT, LP**, en representación de ciertos de sus fondos
gestionados y no en su capacidad individual


/fdo/ Luc Dowling
Nombre: Luc Dowling
Cargo: Representante autorizado


Tenedor de Bonos OG por un valor nominal de: ███████████

Tenedor de Bonos AEP por un valor nominal de: ███████████

**COPIA DE FIRMA**

Por: **AUTONOMY CAPITAL (JERSEY) L.P.**, en representación de sí misma y de ciertos fondos gestionados

/fdo/ Derek Goodman
Nombre: Derek Goodman
Cargo: Representante autorizado

Tenedor de Bonos OG por un valor nominal de: ██████████████

Tenedor de Bonos AEP por un valor nominal de: ██████████████

**COPIA DE FIRMA**

**Por:** BlackRock Allocation Target Shares: Cartera Serie E

BlackRock California Municipal Opportunities Fund de BLK California Muni

BlackRock High Yield Municipal Fund

BlackRock New York Municipal Opportunities Fund de BLK Multi-State Muni

BlackRock Strategic Municipal Opportunities Fund de BlackRock Series Trust

BlackRock MuniAssets Fund, Inc.

**BLACKROCK ADVISORS, LLC**, como asesor de inversiones

/fdo/ Ryan McDonald
Nombre: Ryan McDonald
Cargo: Director

Tenedor de Bonos OG por un valor nominal de: ███████████████

Tenedor de Bonos AEP por un valor nominal de: ███████████████

**Por:** Brighthouse Funds Trust II – BlackRock Bond Income Portfolio

Master Total Return Portfolio of Master Bond LLC

BlackRock Strategic Income Opportunities Portfolio

**BLACKROCK ADVISORS, LLC**, como asesor de inversiones

/fdo/ David Rogal
Nombre: David Rogal
Cargo: Director Ejecutivo

Tenedor de Bonos OG por un valor nominal de: ███████████████

Tenedor de Bonos AEP por un valor nominal de: ███████████████

**COPIA DE FIRMA**

Por: Endurance Assurance Corporation

**BLACKROCK FINANCIAL MANAGEMENT INC.**, como asesor de inversiones

 /fdo/ Peter Gailliot
Nombre: Peter Gailliot
Cargo: Director Ejecutivo

Tenedor de Bonos OG por un valor nominal de: ███████████████

Tenedor de Bonos AEP por un valor nominal de: ██████████████

**COPIA DE FIRMA**

**Por:** Obsidian Master Fund – Trading Sleeve

      Ford Motor Company Defined Benefit Master Trust

**BLACKROCK FINANCIAL MANAGEMENT INC.,** como asesor de inversiones

/fdo/ Stuart Spodek
Nombre: Stuart Spodek
Cargo: Director Ejecutivo

Tenedor de Bonos OG por un valor nominal de: ███████████████

Tenedor de Bonos AEP por un valor nominal de: ███████████████

**COPIA DE FIRMA**

**BRIGADE CAPITAL MANAGEMENT LP**, en representación de fondos y cuentas gestionados


 /fdo/ Patrick Criscillo
Nombre: Patrick Criscillo
Cargo: Signatario autorizado (Director Financiero)


Tenedor de Bonos OG por un valor nominal de: █████████████

Tenedor de Bonos AEP por un valor nominal de: █████████████

**COPIA DE FIRMA**

Por: **BROOKFIELD ASSET MANAGEMENT PRIVATE INSTITUTIONAL CAPITAL ADVISER (CREDIT) LLC**, en representación de sí misma y de ciertos fondos gestionados

/fdo/ Anthony Bavaro
Nombre: Anthony Bavaro
Cargo: Signatario autorizado

Tenedor de Bonos OG por un valor nominal de: ██████████████

Tenedor de Bonos AEP por un valor nominal de: ██████████████

58

**COPIA DE FIRMA**

Por: **CANYON CAPITAL ADVISORS LLC**, en representación de sí misma y de ciertos fondos gestionados

/fdo/ Jonathan M. Kaplan
Nombre: Jonathan M. Kaplan
Cargo: Signatario autorizado

Tenedor de Bonos OG por un valor nominal de: ██████████████████

Tenedor de Bonos AEP por un valor nominal de: ██████████████████

**COPIA DE FIRMA**

Por: **COOPERATIVA DE AHORRO Y CREDITO GERENCIALES AEE**, en
representación de sí misma


 /fdo/ Juan L. Carrasquillo
Nombre: Juan L. Carrasquillo
Cargo: Presidente Ejecutivo


Tenedor de Bonos OG por un valor nominal de: ███████████

Tenedor de Bonos AEP por un valor nominal de: ███████████

**COPIA DE FIRMA**

Por: **COOPERATIVA DE AHORRO Y CREDITO SAN JOSE**, en representación de sí misma

 /fdo/ Ricky Berrios Figueroa
Nombre: Ricky Berrios Figueroa
Cargo: Presidente Ejecutivo

Tenedor de Bonos OG por un valor nominal de: ███████████

Tenedor de Bonos AEP por un valor nominal de: ███████████

**COPIA DE FIRMA**

Por: **COOPERATIVA DE AHORRO Y CREDITO DE CIDRA**, en representación de sí misma


 /fdo/ Mayra Velázquez López
Nombre: Mayra Velázquez López
Cargo: Presidenta Ejecutiva


Tenedor de Bonos OG por un valor nominal de: ███████████

Tenedor de Bonos AEP por un valor nominal de: ███████████

**COPIA DE FIRMA**

Por: **COOPERATIVA DE AHORRO Y CREDITO DE YAUCO**, en representación de sí misma

/fdo/ Ramón Torres Matos
Nombre: Ramón Torres Matos
Cargo: Presidente Ejecutivo

Tenedor de Bonos OG por un valor nominal de: ███████████████

Tenedor de Bonos AEP por un valor nominal de: ███████████████

**COPIA DE FIRMA**

Por: **COOPERATIVA DE AHORRO Y CREDITO ASOCIACION DE MAESTROS DE
PR**, en representación de sí misma


 /fdo/ Jose Flecha
Nombre: Jose Flecha
Cargo: Presidente Ejecutivo


Tenedor de Bonos OG por un valor nominal de: ████████████████

Tenedor de Bonos AEP por un valor nominal de: ████████████████

**COPIA DE FIRMA**

Por: **COOPERATIVA DE AHORRO Y CREDITO DE ADJUNTAS**, en representación de sí misma

 /fdo/ Miguel A. Jusino Martínez
Nombre: Miguel A. Jusino Martínez
Cargo: Presidente Ejecutivo

Tenedor de Bonos OG por un valor nominal de: ███████████████

Tenedor de Bonos AEP por un valor nominal de: ███████████████

**COPIA DE FIRMA**

Por: **DAVIDSON KEMPNER CAPITAL MANAGEMENT LP**, en representación de sí misma
y de ciertos fondos gestionados


/fdo/ Gabriel Schwartz
Nombre: Gabriel Schwartz
Cargo: Ejecutivo Gerencial Adjunto


Tenedor de Bonos OG por un valor nominal de: ████████████████

Tenedor de Bonos AEP por un valor nominal de: ████████████████

**COPIA DE FIRMA**

Por: **DEUTSCHE BANK SECURITIES INC.**, solo con respecto a su Grupo de Productos con Dificultades Financieras


 /fdo/ Matthew Weinstein
Nombre: Matthew Weinstein
Cargo: Director Ejecutivo


 /fdo/ Shawn Faurot
Nombre: Shawn Faurot
Cargo: Director Ejecutivo


Tenedor de Bonos OG por un valor nominal de: ██████████████

Tenedor de Bonos AEP por un valor nominal de: ██████████████

**COPIA DE FIRMA**

Por: **EMSO ASSET MANAGEMENT LIMITED**, como gestor de inversiones en representación de sus fondos y cuentas participantes

/fdo/ <u>Rory McGregor</u>
Nombre: <u>Rory McGregor</u>
Cargo: <u>Director</u>

Tenedor de Bonos OG por un valor nominal de: ██████████████

Tenedor de Bonos AEP por un valor nominal de: ██████████████

**COPIA DE FIRMA**

Por: **FARMSTEAD CAPITAL MANAGEMENT**, en representación de sí misma y de ciertos fondos gestionados

 /fdo/ Michael Scott
Nombre: Michael Scott
Cargo: Miembro Gerencial


Tenedor de Bonos OG por un valor nominal de: ██████████████

Tenedor de Bonos AEP por un valor nominal de: ██████████████

**COPIA DE FIRMA**

Por: **FCO ADVISORS LP**, en representación de sí misma y de ciertos fondos gestionados

 /fdo/ Hector Negroni
Nombre: Hector Negroni
Cargo: Director General

Tenedor de Bonos OG por un valor nominal de: ████████████████

Tenedor de Bonos AEP por un valor nominal de: ████████████████

**COPIA DE FIRMA**

Por: **FIRST PACIFIC ADVISORS, LP**, en representación de fondos y cuentas gestionados


 /fdo/ Eric R. Brown
Nombre: Eric Brown
Cargo: Secretario y Abogado de su socio general


Tenedor de Bonos OG por un valor nominal de: ███████████████

Tenedor de Bonos AEP por un valor nominal de: █████████████

71

COPIA DE FIRMA

Por: **FIR TREE CAPITAL MANAGEMENT, LP,** en representación de sí misma y de fondos
a los que brinda servicios de gestor o asesor de inversiones

 /fdo/ Brian Meyer
Nombre: Brian Meyer
Cargo: Persona autorizada

Tenedor de Bonos OG por un valor nominal de: ███████████████

Tenedor de Bonos AEP por un valor nominal de: ███████████████

Tenedor de BAN de AFIPR por un valor nominal de: ███████████████

**COPIA DE FIRMA**

Por: **GOLDENTREE ASSET MANAGEMENT, LP**, en representación de sí misma y de ciertos fondos gestionados


 /fdo/ Sasha Linney
Nombre: Sasha Linney
Cargo: Director Jurídico Adjunto


Tenedor de Bonos OG por un valor nominal de: ████████████

Tenedor de Bonos AEP por un valor nominal de: ████████████

COPIA DE FIRMA

Por: **GOLDMAN SACHS ASSET MANAGEMENT, L.P.,** en representación de fondos y cuentas a los que brinda servicios de gestor de inversiones

 /fdo/ David Z. Alter
Nombre: David Z. Alter
Cargo: Director Ejecutivo

Gestor de inversiones de tenedores de Bonos OG por un valor nominal de:
███████████████████

Gestor de inversiones de tenedores de Bonos AEP por un valor nominal de:
███████████████████

**COPIA DE FIRMA**

Por: **MARBLE RIDGE CAPITAL**, en representación de sí misma


 /fdo/ Kamand Daniels
Nombre: Kamand Daniels
Cargo: Director Jurídico

Tenedor de Bonos OG por un valor nominal de: ███████████████

Tenedor de Bonos AEP por un valor nominal de: ███████████████

**COPIA DE FIRMA**

Por: **MASON CAPITAL MANAGEMENT, LLC**, en representación de ciertos fondos gestionados


 /fdo/ Richard Engman
Nombre: Richard Engman
Cargo: Signatario autorizado


Tenedor de Bonos OG por un valor nominal de: ██████████████

Tenedor de Bonos AEP por un valor nominal de: ██████████████

**COPIA DE FIRMA**

Por: **MONARCH ALTERNATIVE CAPITAL LP**, en representación de sí misma y de ciertos fondos gestionados

_/fdo/ Adam R. Sklar_
Nombre: _Adam R. Sklar_
Cargo: _Director Gerente_

Tenedor de Bonos OG por un valor nominal de: █████████████████

Tenedor de Bonos AEP por un valor nominal de: █████████████████

**COPIA DE FIRMA**

Por: **OM FOUNDATION LIMITED,** en representación de sí misma y de ciertos fondos gestionados

 /fdo/ Satish Karandikar
Nombre: Satish Karandikar
Cargo: Gestor de fondos

Tenedor de Bonos OG por un valor nominal de: ███████████████

Tenedor de Bonos AEP por un valor nominal de: ███████████████

**COPIA DE FIRMA**

Por: **SCULPTOR CAPITAL LP**, en representación de ciertos de sus fondos gestionados y no a título individual


Sculptor Capital Holding Corporation, su social general


/fdo/ Wayne Cohen
Nombre: Wayne Cohen
Cargo: Presidente y Director de Operaciones


Tenedor de Bonos OG por un valor nominal de: ████████████████

Tenedor de Bonos AEP por un valor nominal de: ████████████████

**COPIA DE FIRMA**

Por: **SILVER POINT CAPITAL, L.P.**, como gestor de inversiones en representación de ciertos fondos afiliados

 /fdo/ Stephen P. Cho
Nombre: Stephen P. Cho
Cargo: Signatario autorizado

Tenedor de Bonos OG por un valor nominal de: ███████████

Tenedor de Bonos AEP por un valor nominal de: ███████████

**COPIA DE FIRMA**

Por: **STONEHILL CAPITAL MANAGEMENT LLC**, en calidad de asesor/gestor de Stonehill
Master Fund Ltd y Stonehill Institutional Partners, L.P., sus fondos gestionados

 /fdo/ Michael Thoyer
Nombre: Michael Thoyer
Cargo: Signatario autorizado


Tenedor de Bonos OG por un valor nominal de: ██████████████

Tenedor de Bonos AEP por un valor nominal de: ██████████████

**COPIA DE FIRMA**

Por: **TACONIC CAPITAL ADVISORS L.P.**, en representación de sí misma y de ciertos fondos gestionados


 /fdo/ Marc Schwartz
Nombre: Marc Schwartz
Cargo: Director


Tenedor de Bonos OG por un valor nominal de: ███████████████

Tenedor de Bonos AEP por un valor nominal de: ███████████████

**COPIA DE FIRMA**

Por: **VR ADVISORY SERVICES LTD**, en representación de ciertos fondos gestionados


/fdo/ Emile du Toit
Nombre: Emile du Toit
Cargo: Signatario autorizado


Tenedor de Bonos OG por un valor nominal de: ███████████

Tenedor de Bonos AEP por un valor nominal de: ███████████

**COPIA DE FIRMA**

Por: **WHITEBOX ADVISORS LLC**, en representación de sí misma y de ciertos fondos gestionados


 /fdo/ Luke Harris
Nombre: Luke Harris
Cargo: Director Jurídico – Asuntos corporativos, transacciones y litigios


Tenedor de Bonos OG por un valor nominal de: █████████████

Tenedor de Bonos AEP por un valor nominal de: █████████████

COPIA PARA FIRMA

## ANEXO A

LISTA DE TITULARES DE OBLIGACIONES GENERALES QUE SON PARTE EN ESTE ACUERDO

Aristeia Capital, LLC, en representación de sí misma y de ciertos fondos gestionados

Aurelius Capital Management, LP, en representación de ciertos de sus fondos gestionados y no en su capacidad individual

Autonomy Capital (Jersey) L.P. en representación de sí misma y de ciertos fondos gestionados

Blackrock Advisors, LLC, como asesor de inversiones

Blackrock Financial Management Inc., como asesor de inversiones

Brigade Capital Management LP, en representación de fondos y cuentas gestionados

Brookfield Asset Management Private Institutional Capital Adviser (Credit) LLC, en representación de fondos y cuentas gestionados

Canyon Capital Advisors, LLC, en representación de sí misma y de ciertos fondos gestionados

Cooperativa de Ahorro y Crédito Gerenciales AEE, en representación de sí misma

Cooperativa de Ahorro y Crédito San José, en representación de sí misma

Cooperativa de Ahorro y Crédito de Cidra, en representación de sí misma

Cooperativa de Ahorro y Crédito Asociación de Maestros de PR, en representación de sí misma

Cooperativa de Ahorro y Crédito de Adjuntas, en representación de sí misma

Davidson Kempner Capital Management LP, en representación de sí misma y de ciertos fondos gestionados

Deutsche Bank Securities, solo con respecto a su Grupo de Productos con Dificultades Financieras

Emso Asset Management Limited, como gestor de inversiones en representación de sus fondos y cuentas participantes

Farmstead Capital Management, en representación de sí misma y de ciertos fondos gestionados

FCO Advisors LP, en representación de sí misma y de ciertos fondos gestionados

First Pacific Advisors, LP, en representación de fondos y cuentas gestionados

109132810v14

COPIA PARA FIRMA

Fir Tree Capital Management, LP, en representación de sí misma y de fondos a los que brinda servicios de gestor o asesor de inversiones

Goldman Assets Management, L.P., en representación de fondos y cuentas a los que brinda servicios de gestor de inversiones

GoldenTree Asset Management, LP, en representación de sí misma y de ciertos fondos gestionados

Marble Ridge Capital, en representación de sí misma

Mason Capital Management, LLC, en representación de ciertos fondos gestionados

Monarch Alternative Capital LP, en representación de sí misma y de ciertos fondos gestionados

OM Foundation Limited, en representación de sí misma y de ciertos fondos gestionados

Sculptor Capital LP, en representación de ciertos de sus fondos gestionados y no a título individual

Silver Point Capital, L.P. como gestor de inversiones en representación de ciertos fondos afiliados

Stonehill Capital Management LLC, en calidad de asesor/gestor de Stonehill Master Fund Ltd y Stonehill Institutional Partners, L.P., sus fondos gestionados

Taconic Capital Advisors L.P. en representación de sí misma y de ciertos fondos gestionados

VR Advisory Services LTD, en representación de ciertos fondos gestionados

Whitebox Advisors LLC, en representación de sí misma y de ciertos fondos gestionados

109132810v14

COPIA PARA FIRMA

## ANEXO B

### LISTA DE TENEDORES DE BONOS AEP QUE SON PARTE EN ESTE ACUERDO

Aristeia Capital, LLC, en representación de sí misma y de ciertos fondos gestionados

Aurelius Capital Management, LP, en representación de ciertos de sus fondos gestionados y no en su capacidad individual

Blackrock Advisors, LLC, como asesor de inversiones

Blackrock Financial Management Inc., como asesor de inversiones

Brigade Capital Management LP, en representación de fondos y cuentas gestionados

Brookfield Asset Management Private Institutional Capital Adviser (Credit) LLC, en representación de fondos y cuentas gestionados

Canyon Capital Advisors, LLC, en representación de sí misma y de ciertos fondos gestionados

Cooperativa de Ahorro y Crédito Gerenciales AEE, en representación de sí misma

Cooperativa de Ahorro y Crédito San José, en representación de sí misma

Cooperativa de Ahorro y Crédito de Cidra, en representación de sí misma

Cooperativa de Ahorro y Crédito Asociación de Maestros de PR, en representación de sí misma

Cooperativa de Ahorro y Crédito de Adjuntas, en representación de sí misma

Davidson Kempner Capital Management LP, en representación de sí misma y de ciertos fondos gestionados

Deutsche Bank Securities, solo con respecto a su Grupo de Productos con Dificultades Financieras

Farmstead Capital Management, en representación de sí misma y de ciertos fondos gestionados

FCO Advisors LP, en representación de sí misma y de ciertos fondos gestionados

First Pacific Advisors, LP, en representación de fondos y cuentas gestionados

Fir Tree Capital Management, LP, en representación de sí misma y de fondos a los que brinda servicios de gestor o asesor de inversiones

Goldman Assets Management, L.P., en representación de fondos y cuentas a los que brinda servicios de gestor de inversiones

109132810v14

COPIA PARA FIRMA

GoldenTree Asset Management, LP, en representación de sí misma y de ciertos fondos gestionados Marble Ridge Capital, en representación de sí misma

Marble Ridge, en representación de sí misma

Mason Capital Management, LLC, en representación de ciertos fondos gestionados

Monarch Alternative Capital LP, en representación de sí misma y de ciertos fondos gestionados

OM Foundation Limited, en representación de sí misma y de ciertos fondos gestionados

Sculptor Capital LP, en representación de ciertos de sus fondos gestionados y no a título individual

Silver Point Capital, L.P. como gestor de inversiones en representación de ciertos fondos afiliados

Stonehill Capital Management LLC, en calidad de asesor/gestor de Stonehill Master Fund Ltd y Stonehill Institutional Partners, L.P., sus fondos gestionados

Taconic Capital Advisors L.P. en representación de sí misma y de ciertos fondos gestionados

VR Advisory Services LTD, en representación de ciertos fondos gestionados

Whitebox Advisors LLC, en representación de sí misma y de ciertos fondos gestionados

88

**COPIA PARA FIRMA**

## ANEXO C

Bonos OG

109132810v14

COPIA PARA FIRMA

**Bonos GO**

| CUSIP | Serie | Vencimiento | Emisión |
|-------|-------|-------------|---------|
| 745145AU6 | Bonos de Refinanciamiento para la Mejora Pública, serie 1998 | 7/1/2016 | 1/29/1998 |
| 745145AV4 | Bonos de Refinanciamiento para la Mejora Pública, serie 1998 | 7/1/2017 | 1/29/1998 |
| 745145AW2 | Bonos de Refinanciamiento para la Mejora Pública, serie 1998 | 7/1/2018 | 1/29/1998 |
| 745145AX0 | Bonos de Refinanciamiento para la Mejora Pública, serie 1998 | 7/1/2023 | 1/15/1998 |
| 745145EK4 | Bonos para la Mejora Pública de 1998 | 7/1/2016 | 3/15/1998 |
| 745145HN5 | Bonos para la Mejora Pública de 1999 | 7/1/2016 | 12/1/1998 |
| 745145HP0 | Bonos para la Mejora Pública de 1999 | 7/1/2017 | 12/1/1998 |
| 745145HQ8 | Bonos para la Mejora Pública de 1999 | 7/1/2018 | 12/1/1998 |
| 74514LQK6 | Bonos para la Mejora Pública de 1999 | 7/1/2028 | 12/1/1998 |
| 745145QE5 | Bonos de Refinanciamiento para la Mejora Pública, serie 2000 | 7/1/2019 | 4/5/2000 |
| 745145UZ3 | Bonos para la Mejora Pública de 2001, series A y B | 7/1/2016 | 6/7/2001 |
| 745145VB5 | Bonos para la Mejora Pública de 2001, series A y B | 7/1/2017 | 6/7/2001 |
| 745145VD1 | Bonos para la Mejora Pública de 2001, series A y B | 7/1/2018 | 6/7/2001 |
| 745145VF6 | Bonos para la Mejora Pública de 2001, series A y B | 7/1/2019 | 6/7/2001 |
| 745145VH2 | Bonos para la Mejora Pública de 2001, series A y B | 7/1/2020 | 6/7/2001 |
| 74514LBJ5 | Bonos de Refinanciamiento para la Mejora Pública, serie 2001 | 7/1/2030 | 6/7/2001 |
| 745145XZ0 | Bonos de Refinanciamiento para la Mejora Pública de 2002, serie A | 7/1/2029 | 10/25/2001 |
| 74514LBM8 | Bonos de Refinanciamiento para la Mejora Pública de 2002, serie A | 7/1/2031 | 10/25/2001 |
| 745145YN6 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YP1 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YQ9 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YR7 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2016 | 10/25/2001 |
| 745145YS5 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2017 | 10/25/2001 |
| 745145YT3 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2017 | 10/25/2001 |
| 745145YU0 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2017 | 10/25/2001 |
| 745145YV8 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2018 | 10/25/2001 |
| 745145YW6 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2018 | 10/25/2001 |
| 745145YX4 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2019 | 10/25/2001 |
| 745145YY2 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2019 | 10/25/2001 |
| 745145YZ9 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2019 | 10/25/2001 |
| 745145ZA3 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2019 | 10/25/2001 |

COPIA PARA FIRMA

**Bonos GO**

| CUSIP | Serie | Vencimiento | Emisión |
|-------|-------|-------------|---------|
| 745145ZB1 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2020 | 10/25/2001 |
| 745145ZC9 | Bonos de Refinanciamiento para la Mejora Pública, serie 2002 A | 7/1/2021 | 10/25/2001 |
| 745145Q70 | Bonos para la Mejora Pública de 2003, serie A | 7/1/2016 | 8/8/2002 |
| 745145Q88 | Bonos para la Mejora Pública de 2003, serie A | 7/1/2017 | 8/8/2002 |
| 745145Q96 | Bonos para la Mejora Pública de 2003, serie A | 7/1/2018 | 8/8/2002 |
| 745145R20 | Bonos para la Mejora Pública de 2003, serie A | 7/1/2019 | 8/8/2002 |
| 745145R38 | Bonos para la Mejora Pública de 2003, serie A | 7/1/2020 | 8/8/2002 |
| 745145R46 | Bonos para la Mejora Pública de 2003, serie A | 7/1/2021 | 8/8/2002 |
| 745145R53 | Bonos para la Mejora Pública de 2003, serie A | 7/1/2022 | 8/8/2002 |
| 745145T77 | Bonos de Refinanciamiento para la Mejora Pública, serie 2003 A | 7/1/2016 | 8/8/2002 |
| 745145T85 | Bonos de Refinanciamiento para la Mejora Pública, serie 2003 A | 7/1/2017 | 8/8/2002 |
| 74514LUR6 | Bonos de Refinanciamiento para la Mejora Pública, serie 2003 C | 7/1/2027 | 5/6/2003 |
| 74514LUS4 | Bonos de Refinanciamiento para la Mejora Pública, serie 2003 C | 7/1/2028 | 5/6/2003 |
| 7451455A6 | Bonos para la Mejora Pública de 2004, serie A | 7/1/2024 | 10/16/2003 |
| 7451455B4 | Bonos para la Mejora Pública de 2004, serie A | 7/1/2027 | 10/16/2003 |
| 74514LPT8 | Bonos para la Mejora Pública de 2004, serie A | 7/1/2033 | 10/16/2003 |
| 74514LCU9 | Bonos para la Mejora Pública de 2005, serie A | 7/1/2016 | 10/7/2004 |
| 74514LCX3 | Bonos para la Mejora Pública de 2005, serie A | 7/1/2019 | 10/7/2004 |
| 74514LCY1 | Bonos para la Mejora Pública de 2005, serie A | 7/1/2020 | 10/7/2004 |
| 74514LCZ8 | Bonos para la Mejora Pública de 2005, serie A | 7/1/2021 | 10/7/2004 |
| 74514LDA2 | Bonos para la Mejora Pública de 2005, serie A | 7/1/2022 | 10/7/2004 |
| 74514LDB0 | Bonos para la Mejora Pública de 2005, serie A | 7/1/2023 | 10/7/2004 |
| 74514LDC8 | Bonos para la Mejora Pública de 2005, serie A | 7/1/2024 | 10/7/2004 |
| 74514LDD6 | Bonos para la Mejora Pública de 2005, serie A | 7/1/2025 | 10/7/2004 |
| 74514LDE4 | Bonos para la Mejora Pública de 2005, serie A | 7/1/2029 | 10/7/2004 |
| 74514LPX9 | Bonos para la Mejora Pública de 2005, serie A | 7/1/2034 | 10/7/2004 |
| 74514LHB6 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2016 | 6/23/2006 |
| 74514LHC4 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2017 | 6/23/2006 |
| 74514LHD2 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2018 | 6/23/2006 |
| 74514LHE0 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2019 | 6/23/2006 |
| 74514LHF7 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2020 | 6/23/2006 |
| 74514LHG5 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2021 | 6/23/2006 |
| 74514LHH3 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2022 | 6/23/2006 |
| 74514LHJ9 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2023 | 6/23/2006 |
| 74514LHK6 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2024 | 6/23/2006 |
| 74514LHL4 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2025 | 6/23/2006 |
| 74514LHM2 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2026 | 6/23/2006 |

COPIA PARA FIRMA

**Bonos GO**

| CUSIP | Serie | Vencimiento | Emisión |
|-------|-------|-------------|---------|
| 74514LHN0 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2031 | 6/23/2006 |
| 74514LHP5 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 A | 7/1/2035 | 6/23/2006 |
| 74514LJQ1 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2017 | 8/10/2006 |
| 74514LJV0 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2021 | 8/10/2006 |
| 74514LJW8 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2022 | 8/10/2006 |
| 74514LJX6 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2023 | 8/10/2006 |
| 74514LJY4 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2024 | 8/10/2006 |
| 74514LJZ1 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2025 | 8/10/2006 |
| 74514LKA4 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2026 | 8/10/2006 |
| 74514LJR9 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2018 | 8/10/2006 |
| 74514LJS7 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2019 | 8/10/2006 |
| 74514LJT5 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2020 | 8/10/2006 |
| 74514LJU2 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2021 | 8/10/2006 |
| 74514LQA8 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2027 | 8/10/2006 |
| 74514LQB6 | Bonos para la Mejora Pública de 2006, serie A | 7/1/2030 | 8/10/2006 |
| 74514LQE0 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 B | 7/1/2032 | 8/10/2006 |
| 74514LQF7 | Bonos de Refinanciamiento para la Mejora Pública, serie 2006 B | 7/1/2035 | 8/10/2006 |
| 74514LKH9 | Bonos para la Mejora Pública de 2006, serie B | 7/1/2016 | 8/30/2006 |
| 74514LKJ5 | Bonos para la Mejora Pública de 2006, serie B | 7/1/2017 | 8/30/2006 |
| 74514LLV7 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2018 | 10/4/2007 |
| 74514LLW5 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2019 | 10/4/2007 |
| 74514LLX3 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2020 | 10/4/2007 |
| 74514LLY1 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2021 | 10/4/2007 |
| 74514LLZ8 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2022 | 10/4/2007 |
| 74514LMA2 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2023 | 10/4/2007 |
| 74514LMB0 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2024 | 10/4/2007 |
| 74514LMC8 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2025 | 10/4/2007 |
| 74514LMD6 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2026 | 10/4/2007 |
| 74514LME4 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2027 | 10/4/2007 |
| 74514LMF1 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2028 | 10/4/2007 |
| 74514LMG9 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2029 | 10/4/2007 |
| 74514LMH7 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2030 | 10/4/2007 |
| 74514LMJ3 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2031 | 10/4/2007 |
| 74514LMK0 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2032 | 10/4/2007 |
| 74514LML8 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2033 | 10/4/2007 |
| 74514LMM6 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2034 | 10/4/2007 |
| 74514LMN4 | Bonos para la Mejora Pública de 2007, serie A | 7/1/2037 | 10/4/2007 |
| 74514LMZ7 | Bonos de Refinanciamiento para la Mejora Pública, serie 2007 A | 7/1/2016 | 10/16/2007 |
| 74514LNA1 | Bonos de Refinanciamiento para la Mejora Pública, serie 2007 A | 7/1/2017 | 10/16/2007 |
| 74514LNB9 | Bonos de Refinanciamiento para la Mejora Pública, serie 2007 A | 7/1/2017 | 10/16/2007 |
| 74514LNC7 | Bonos de Refinanciamiento para la Mejora Pública, serie 2007 A | 7/1/2018 | 10/16/2007 |
| 74514LND5 | Bonos de Refinanciamiento para la Mejora Pública, serie 2007 A | 7/1/2019 | 10/16/2007 |
| 74514LNE3 | Bonos de Refinanciamiento para la Mejora Pública, serie 2007 A | 7/1/2020 | 10/16/2007 |

COPIA PARA FIRMA

**Bonos GO**

| CUSIP | Serie | Vencimiento | Emisión |
|-------|-------|-------------|---------|
| **74514LNF0** | Bonos de Refinanciamiento para la Mejora Pública, serie 2007 A | 7/1/2021 | 10/16/2007 |
| **74514LNG8** | Bonos de Refinanciamiento para la Mejora Pública, serie 2007 A | 7/1/2022 | 10/16/2007 |
| **74514LVT1** | Bonos de Refinanciamiento para la Mejora Pública, serie 2007 A | 7/1/2030 | 10/16/2007 |
| **74514LVU8** | Bonos de Refinanciamiento para la Mejora Pública, serie 2007 A | 7/1/2031 | 10/16/2007 |
| **74514LTJ6** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2016 | 5/7/2008 |
| **74514LTK3** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2016 | 5/7/2008 |
| **74514LTL1** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2016 | 5/7/2008 |
| **74514LTM9** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2018 | 5/7/2008 |
| **74514LTN7** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2019 | 5/7/2008 |
| **74514LTP2** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2020 | 5/7/2008 |
| **74514LTQ0** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2021 | 5/7/2008 |
| **74514LTR8** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2022 | 5/7/2008 |
| **74514LTS6** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2023 | 5/7/2008 |
| **74514LTT4** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2024 | 5/7/2008 |
| **74514LTU1** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2025 | 5/7/2008 |
| **74514LTV9** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2026 | 5/7/2008 |
| **74514LTW7** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 A | 7/1/2032 | 5/7/2008 |
| **74514LSQ1** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 C | 7/1/2016 | 5/7/2008 |
| **74514LSR9** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 C | 7/1/2017 | 5/7/2008 |
| **74514LSS7** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 C | 7/1/2018 | 5/7/2008 |
| **74514LST5** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 C | 7/1/2023 | 5/7/2008 |
| **74514LSV0** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 C | 7/1/2023 | 5/7/2008 |
| **74514LSU2** | Bonos de Refinanciamiento para la Mejora Pública, serie 2008 C | 7/1/2028 | 5/7/2008 |
| **74514LVG9** | Bonos para la Mejora Pública de 2008, serie A | 7/1/2016 | 9/18/2008 |
| **74514LVH7** | Bonos para la Mejora Pública de 2008, serie A | 7/1/2017 | 9/18/2008 |
| **74514LVJ3** | Bonos para la Mejora Pública de 2008, serie A | 7/1/2018 | 9/18/2008 |
| **74514LVK0** | Bonos para la Mejora Pública de 2008, serie A | 7/1/2023 | 9/18/2008 |
| **74514LVL8** | Bonos para la Mejora Pública de 2008, serie A | 7/1/2028 | 9/18/2008 |
| **74514LVM6** | Bonos para la Mejora Pública de 2008, serie A | 7/1/2033 | 9/18/2008 |
| **74514LVN4** | Bonos para la Mejora Pública de 2008, serie A | 7/1/2038 | 9/18/2008 |

COPIA PARA FIRMA

**Bonos GO**

| CUSIP | Serie | Vencimiento | Emisión |
|---|---|---|---|
| 74514LVV6 | Bonos de Refinanciamiento para la Mejora Pública, serie 2009 A | 7/1/2031 | 9/17/2009 |
| 74514LVX2 | Bonos de Refinanciamiento para la Mejora Pública, serie 2009 B | 7/1/2036 | 11/17/2009 |
| 74514LVY0 | Bonos de Refinanciamiento para la Mejora Pública, serie 2009 B | 7/1/2037 | 11/17/2009 |
| 74514LVZ7 | Bonos de Refinanciamiento para la Mejora Pública, serie 2009 B | 7/1/2038 | 11/17/2009 |
| 74514LVW4 | Bonos de Refinanciamiento para la Mejora Pública, serie 2009 B | 7/1/2039 | 11/17/2009 |
| 74514LWA1 | Bonos de Refinanciamiento para la Mejora Pública, serie 2009 C | 7/1/2039 | 12/16/2009 |
| 74514LWN3 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 A | 7/1/2024 | 2/17/2011 |
| 74514LWJ2 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 A | 7/1/2025 | 2/17/2011 |
| 74514LWP8 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 A | 7/1/2027 | 2/17/2011 |
| 74514LWK9 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 A | 7/1/2028 | 2/17/2011 |
| 74514LWL7 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 A | 7/1/2033 | 2/17/2011 |
| 74514LWM5 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 A | 7/1/2033 | 2/17/2011 |
| 74514LWQ6 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 A | 7/1/2034 | 2/17/2011 |
| 74514LWT0 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 A | 7/1/2034 | 2/17/2011 |
| 74514LWR4 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 A | 7/1/2040 | 2/17/2011 |
| 74514LWS2 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 A | 7/1/2040 | 2/17/2011 |
| 74514LWY9 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 C | 7/1/2026 | 3/17/2011 |
| 74514LXD4 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 C | 7/1/2027 | 3/17/2011 |
| 74514LXE2 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 C | 7/1/2028 | 3/17/2011 |
| 74514LXA0 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 C | 7/1/2032 | 3/17/2011 |
| 74514LXB8 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 C | 7/1/2032 | 3/17/2011 |
| 74514LXF9 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 C | 7/1/2032 | 3/17/2011 |
| 74514LWZ6 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 C | 7/1/2035 | 3/17/2011 |
| 74514LXC6 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 C | 7/1/2036 | 3/17/2011 |
| 74514LXH5 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 C | 7/1/2036 | 3/17/2011 |
| 74514LXG7 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 C | 7/1/2037 | 3/17/2011 |
| 74514LWX1 | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 C | 7/1/2040 | 3/17/2011 |

COPIA PARA FIRMA

**Bonos GO**

| CUSIP | Serie | Vencimiento | Emisión |
|---|---|---|---|
| **74514LYW1** | Bonos para la Mejora Pública de 2011, serie A | 7/1/2041 | 7/12/2011 |
| **74514LZA8** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 D | 7/1/2016 | 7/12/2011 |
| **74514LZB6** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 D | 7/1/2017 | 7/12/2011 |
| **74514LZC4** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 D | 7/1/2018 | 7/12/2011 |
| **74514LZD2** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 D | 7/1/2019 | 7/12/2011 |
| **74514LZF7** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 D | 7/1/2019 | 7/12/2011 |
| **74514LZH3** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 D | 7/1/2019 | 7/12/2011 |
| **74514LZG5** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 D | 7/1/2020 | 7/12/2011 |
| **74514LZE0** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 D | 7/1/2020 | 7/12/2011 |
| **74514LZJ9** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 D | 7/1/2020 | 7/12/2011 |
| **74514LZK6** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 E | 7/1/2029 | 7/12/2011 |
| **74514LZL4** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 E | 7/1/2030 | 7/12/2011 |
| **74514LZM2** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 E | 7/1/2031 | 7/12/2011 |
| **74514LZN0** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 E | 7/1/2032 | 7/12/2011 |
| **74514LZP5** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 E | 7/1/2033 | 7/12/2011 |
| **74514LZQ3** | Bonos de Refinanciamiento para la Mejora Pública, serie 2011 E | 7/1/2034 | 7/12/2011 |
| **74514LZV2** | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 B | 7/1/2016 | 3/29/2012 |
| **74514LZW0** | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 B | 7/1/2017 | 3/29/2012 |
| **74514LZX8** | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 B | 7/1/2018 | 3/29/2012 |
| **74514LZY6** | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 B | 7/1/2019 | 3/29/2012 |
| **74514LZZ3** | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 B | 7/1/2020 | 3/29/2012 |
| **74514LA23** | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 B | 7/1/2033 | 3/29/2012 |
| **74514LA31** | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2020 | 4/3/2012 |
| **74514LC47** | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2020 | 4/3/2012 |
| **74514LA49** | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2021 | 4/3/2012 |
| **74514LC54** | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2021 | 4/3/2012 |
| **74514LA56** | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2022 | 4/3/2012 |

COPIA PARA FIRMA

**Bonos GO**

| CUSIP | Serie | Vencimiento | Emisión |
|---|---|---|---|
| 74514LC62 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2022 | 4/3/2012 |
| 74514LD46 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2022 | 4/3/2012 |
| 74514LA64 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2023 | 4/3/2012 |
| 74514LC70 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2023 | 4/3/2012 |
| 74514LD53 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2023 | 4/3/2012 |
| 74514LA72 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2024 | 4/3/2012 |
| 74514LC88 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2024 | 4/3/2012 |
| 74514LD61 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2024 | 4/3/2012 |
| 74514LA80 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2025 | 4/3/2012 |
| 74514LD79 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2025 | 4/3/2012 |
| 74514LA98 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2026 | 4/3/2012 |
| 74514LC96 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2026 | 4/3/2012 |
| 74514LD38 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2026 | 4/3/2012 |
| 74514LB22 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2027 | 4/3/2012 |
| 74514LD87 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2027 | 4/3/2012 |
| 74514LB30 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2028 | 4/3/2012 |
| 74514LB48 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2029 | 4/3/2012 |
| 74514LB97 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2030 | 4/3/2012 |
| 74514LB55 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2031 | 4/3/2012 |
| 74514LC21 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2032 | 4/3/2012 |
| 74514LC39 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2033 | 4/3/2012 |
| 74514LD20 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2035 | 4/3/2012 |
| 74514LB63 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2037 | 4/3/2012 |
| 74514LB71 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2039 | 4/3/2012 |
| 74514LB89 | Bonos de Refinanciamiento para la Mejora Pública, serie 2012 A | 7/1/2041 | 4/3/2012 |
| 74514LE86 | Bonos de Obligación General de 2014, serie A | 7/1/2035 | 3/17/2014 |

COPIA PARA FIRMA

## ANEXO D

BONOS AEP

109132810v14

COPIA PARA FIRMA

## BONOS AEP

| CUSIP | Serie | Vencimiento | Emisión |
|---|---|---|---|
| 745235GJ4 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie L | 7/1/2021 | 6/1/1993 |
| 745235G62 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie C | 7/1/2016 | 1/30/2002 |
| 745235G70 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie C | 7/1/2017 | 1/30/2002 |
| 745235G88 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie C | 7/1/2018 | 1/30/2002 |
| 745235G96 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie C | 7/1/2019 | 1/30/2002 |
| 745235H20 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie C | 7/1/2020 | 1/30/2002 |
| 745235H38 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie C | 7/1/2021 | 1/30/2002 |
| 745235H46 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie C | 7/1/2022 | 1/30/2002 |
| 745235D24 | Bonos Municipales para Instalaciones del Gobierno, serie D | 7/1/2024 | 1/30/2002 |
| 745235VX6 | Bonos Municipales para Instalaciones del Gobierno, serie D | 7/1/2027 | 1/30/2002 |
| 745235D32 | Bonos Municipales para Instalaciones del Gobierno, serie D | 7/1/2030 | 1/30/2002 |
| 745235D40 | Bonos Municipales para Instalaciones del Gobierno, serie D | 7/1/2031 | 1/30/2002 |
| 745235VY4 | Bonos Municipales para Instalaciones del Gobierno, serie D | 7/1/2033 | 1/30/2002 |
| 745235VZ1 | Bonos Municipales para Instalaciones del Gobierno, serie D | 7/1/2036 | 1/30/2002 |
| 745235RV5 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie F | 7/1/2017 | 10/24/2002 |
| 745235RW3 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie F | 7/1/2018 | 10/24/2002 |
| 745235RX1 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie F | 7/1/2019 | 10/24/2002 |
| 745235RY9 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie F | 7/1/2020 | 10/24/2002 |
| 745235RZ6 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie F | 7/1/2021 | 10/24/2002 |
| 745235SA0 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie F | 7/1/2023 | 10/24/2002 |
| 745235SB8 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie F | 7/1/2024 | 10/24/2002 |
| 745235SC6 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie F | 7/1/2025 | 10/24/2002 |
| 745235SW2 | Bonos Municipales para Instalaciones del Gobierno, serie G | 7/1/2026 | 10/24/2002 |
| 745235SX0 | Bonos Municipales para Instalaciones del Gobierno, serie G | 7/1/2032 | 10/24/2002 |
| 745235TG6 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie H | 7/1/2016 | 4/3/2003 |
| 745235TH4 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie H | 7/1/2016 | 4/3/2003 |
| 745235TJ0 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie H | 7/1/2017 | 4/3/2003 |
| 745235TK7 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie H | 7/1/2018 | 4/3/2003 |
| 745235TL5 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie H | 7/1/2019 | 4/3/2003 |
| 745235D57 | Bonos Municipales para Instalaciones del Gobierno, serie I | 7/1/2029 | 6/10/2004 |
| 745235D65 | Bonos Municipales para Instalaciones del Gobierno, serie I | 7/1/2033 | 6/10/2004 |

109132810v14

COPIA PARA FIRMA

| | | | |
|---|---|---|---|
| 745235VR9 | Bonos Municipales para Instalaciones del Gobierno, serie I | 7/1/2036 | 6/10/2004 |
| 745235ZK0 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2016 | 12/20/2007 |
| 745235ZL8 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2017 | 12/20/2007 |
| 745235ZM6 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2018 | 12/20/2007 |
| 745235ZN4 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2019 | 12/20/2007 |
| 745235ZP9 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2020 | 12/20/2007 |
| 745235ZQ7 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2021 | 12/20/2007 |
| 745235ZR5 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2022 | 12/20/2007 |
| 745235ZS3 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2023 | 12/20/2007 |
| 745235ZT1 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2031 | 12/20/2007 |
| 745235S93 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2034 | 12/20/2007 |
| 745235B75 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2035 | 12/20/2007 |
| 745235J93 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2023 | 12/20/2007 |
| 745235K26 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2024 | 12/20/2007 |
| 745235K34 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2025 | 12/20/2007 |
| 745235K42 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2026 | 12/20/2007 |
| 745235K59 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2027 | 12/20/2007 |
| 745235K67 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie M | 7/1/2028 | 12/20/2007 |
| 745235ZX2 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2016 | 12/20/2007 |
| 745235ZY0 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2017 | 12/20/2007 |
| 745235ZZ7 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2018 | 12/20/2007 |
| 745235A27 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2019 | 12/20/2007 |
| 745235A35 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2020 | 12/20/2007 |
| 745235A43 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2021 | 12/20/2007 |
| 745235A50 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2022 | 12/20/2007 |
| 745235A68 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2023 | 12/20/2007 |
| 745235A76 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2024 | 12/20/2007 |
| 745235A84 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2025 | 12/20/2007 |
| 745235A92 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2026 | 12/20/2007 |
| 745235B26 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2027 | 12/20/2007 |
| 745235B34 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2032 | 12/20/2007 |
| 745235B42 | Bonos Municipales para Instalaciones del Gobierno, serie N | 7/1/2037 | 12/20/2007 |
| 745235K75 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie P | 7/1/2018 | 7/1/2009 |
| 745235K83 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie P | 7/1/2019 | 7/1/2009 |
| 745235K91 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie P | 7/1/2020 | 7/1/2009 |
| 745235L25 | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie P | 7/1/2021 | 7/1/2009 |

109132810v14

COPIA PARA FIRMA

| | | | |
|---|---|---|---|
| **745235L33** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie P | 7/1/2023 | 7/1/2009 |
| **745235L41** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie P | 7/1/2025 | 7/1/2009 |
| **745235L58** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie P | 7/1/2026 | 7/1/2009 |
| **745235L66** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie P | 7/1/2030 | 7/1/2009 |
| **745235L74** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie P | 7/1/2036 | 7/1/2009 |
| **745235L82** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie K (reventa) | 7/1/2027 | 5/27/2004 |
| **745235L90** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie Q | 7/1/2022 | 10/28/2009 |
| **745235M24** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie Q | 7/1/2037 | 10/28/2009 |
| **745235M32** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie Q | 7/1/2038 | 10/28/2009 |
| **745235M40** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie Q | 7/1/2039 | 10/28/2009 |
| **745235M57** | Bonos Municipales para Instalaciones del Gobierno, serie R | 7/1/2028 | 8/24/2011 |
| **745235M65** | Bonos Municipales para Instalaciones del Gobierno, serie R | 7/1/2028 | 8/24/2011 |
| **745235M73** | Bonos Municipales para Instalaciones del Gobierno, serie R | 7/1/2028 | 8/24/2011 |
| **745235M81** | Bonos Municipales para Instalaciones del Gobierno, serie R | 7/1/2028 | 8/24/2011 |
| **745235M99** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2022 | 8/24/2011 |
| **745235N23** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2023 | 8/24/2011 |
| **745235N31** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2024 | 8/24/2011 |
| **745235N49** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2025 | 8/24/2011 |
| **745235N56** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2026 | 8/24/2011 |
| **745235N64** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2027 | 8/24/2011 |
| **745235N72** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2028 | 8/24/2011 |
| **745235N80** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2029 | 8/24/2011 |
| **745235N98** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2030 | 8/24/2011 |
| **745235P21** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2031 | 8/24/2011 |
| **745235P39** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2032 | 8/24/2011 |
| **745235P47** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2033 | 8/24/2011 |
| **745235P54** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2034 | 8/24/2011 |
| **745235P88** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2036 | 8/24/2011 |
| **745235P62** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2039 | 8/24/2011 |
| **745235P70** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie S | 7/1/2041 | 8/24/2011 |
| **745235Q20** | Bonos Municipales para Instalaciones del Gobierno, serie T | 7/1/2030 | 12/22/2011 |

COPIA PARA FIRMA

| | | | |
|---|---|---|---|
| **745235R52** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie U | 7/1/2016 | 6/21/2012 |
| **745235R60** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie U | 7/1/2017 | 6/21/2012 |
| **745235R78** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie U | 7/1/2018 | 6/21/2012 |
| **745235R86** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie U | 7/1/2019 | 6/21/2012 |
| **745235S69** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie U | 7/1/2019 | 6/21/2012 |
| **745235R94** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie U | 7/1/2020 | 6/21/2012 |
| **745235S28** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie U | 7/1/2021 | 6/21/2012 |
| **745235S36** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie U | 7/1/2022 | 6/21/2012 |
| **745235S44** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie U | 7/1/2023 | 6/21/2012 |
| **745235R37** | Bonos de Refinanciamiento Municipales para Instalaciones del Gobierno, serie U | 7/1/2042 | 6/21/2012 |

109132810v14

COPIA PARA FIRMA

## ANEXO E

LISTA DE ACCIONES POR NULIDAD

COPIA PARA FIRMA

### Acciones por nulidad

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y Comité Oficial de Acreedores No Asegurados del Estado Libre Asociado de Puerto Rico c. Jefferies LLC, Proc. Cont. núm. 19-00281.

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y Comité Oficial de Acreedores No Asegurados del Estado Libre Asociado de Puerto Rico c. BNY Mellon/POP Sec, Proc. Cont. núm. 19-00282.

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y Comité Oficial de Acreedores No Asegurados del Estado Libre Asociado de Puerto Rico c. First Southwest Co., Proc. Cont. núm. 19-00283.

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y Comité Oficial de Acreedores No Asegurados del Estado Libre Asociado de Puerto Rico c. Demandados 1E59E, Proc. Cont. núm. 19-00284.

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y Comité Oficial de Acreedores No Asegurados del Estado Libre Asociado de Puerto Rico c. Demandados 1A100A, Proc. Cont. núm. 19-00285.

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y Comité Oficial de Acreedores No Asegurados del Estado Libre Asociado de Puerto Rico c. Demandados 1B100B, Proc. Cont. Núm. 19-00286.

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y Comité Oficial de Acreedores No Asegurados del Estado Libre Asociado de Puerto Rico c. Demandados 1C53C, Proc. Cont. núm. 19-00287.

Comité Especial de Reclamaciones de la Junta de Supervisión y Administración Financiera para Puerto Rico y Comité Oficial de Acreedores No Asegurados del Estado Libre Asociado de Puerto Rico c. Demandados 1D73D, Proc. Cont. Núm. 19-00288.

COPIA PARA FIRMA

## ANEXO F

MODELO DE ACUERDO DE ADHESIÓN

COPIA PARA FIRMA

## MODELO DE ACUERDO DE ADHESIÓN

ACUERDO DE ADHESIÓN AL ACUERDO DE APOYO AL PLAN (modificado oportunamente, el **PSA**, con sus enmiendas y complementos) del 9 de febrero de 2020, celebrado entre a) la Junta de Supervisión y Administración Financiera para Puerto Rico (la "**Junta de Supervisión**"), como representante del Estado Libre Asociado de Puerto Rico (el "**ELA**"), la Autoridad de Edificios Públicos de Puerto Rico ("**AEP**") y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("**SRE**"), b) los tenedores de Reclamaciones por los Bonos OG y/o Reclamaciones por los Bonos de Garantía del ELA, cada uno de los cuales se define en el PSA, que podrían incluir a los asesores o gerentes que asesoren o gestionen a un tenedor de Reclamaciones por los Bonos OG y/o Reclamaciones por los Bonos de Garantía del ELA que esté incluido en el Anexo A del PSA (junto con sus respectivos sucesores y cesionarios con respecto a las transferencias realizadas de acuerdo con los términos del presente, los "**Titulares de Obligaciones Generales**"), c) los tenedores de Reclamaciones por los Bonos AEP, según se definen en el PSA, que podrían incluir a los asesores o gestores que asesoren o gestionen a un tenedor de Reclamaciones por los Bonos AEP que esté incluido en el Anexo B del PSA (junto con sus respectivos sucesores y cesionarios con respecto a las transferencias realizadas de acuerdo con los términos del presente, los "**Tenedores de Bonos AEP**", y colectivamente con los Titulares de Obligaciones Generales, los "**Acreedores Iniciales PSA**"), y d) los demás Acreedores PSA que puedan ser tenedores de bonos de aquí en adelante, es otorgado por _____ (**Acreedores que ingresan al PSA**) el _____ de 2020. Todos los términos en mayúsculas utilizados pero no definidos en el presente tendrán los significados que se les asignan en el PSA.

       1.     Acuerdo vinculante Los Acreedores que ingresan al PSA por el presente convienen en regirse por todos los términos y disposiciones del PSA. En lo sucesivo, se hará referencia al Acreedor que ingresa al PSA como "Acreedor PSA", "Parte", "Titular de Obligaciones Generales" (si es tenedor de Reclamaciones por los Bonos OG o Reclamaciones por los Bonos de Garantía del ELA) y "Tenedor de Bonos AEP" (si es tenedor de Reclamaciones por los Bonos AEP) a todos los efectos del PSA, lo que incluye, sin limitación, y para despejar dudas, en lo referido a todas las reclamaciones por los Bonos OG y las reclamaciones por los Bonos AEP de las que el Acreedor del Acuerdo de Adhesión al PSA sea titular a la fecha de este Acuerdo de Adhesión (distintas a las reclamaciones por los Bonos OG, las reclamaciones por los bonos de garantía del ELA y la reclamaciones por los Bonos AEP que se mantengan como Creador Calificado de Mercado).

       2.     Declaraciones, garantías y convenios. Con respecto al monto global de capital de cualesquiera Reclamaciones por los Bonos OG, Reclamaciones por los Bonos de Garantía del ELA y Reclamaciones por los Bonos AEP (sin duplicación) en poder del Acreedor que ingresa al PSA, lo que incluye, sin limitación, al momento en que se realice cualquier cesión pendiente de Reclamaciones por los Bonos OG, Reclamaciones por los Bonos de Garantía del ELA y Reclamaciones por los Bonos AEP al Acreedor que ingresa al PSA, el Acreedor que ingresa al

COPIA PARA FIRMA

PSA por el presente a) a la fecha del presente, realiza las declaraciones y otorga las garantías de un "Titular de Obligaciones Generales" (si es tenedor de Reclamaciones por los Bonos OG o Reclamaciones por los Bonos de Garantía del ELA) que se consignan en la sección 3.5 del PSA, y de un "Tenedor de Bonos AEP" (si es tenedor de Reclamaciones por los Bonos AEP) que se consignan en la sección 3.6 del PSA, y b) conviene en que cumplirá con todos los "Convenios" de un "Titular de Obligaciones Generales" (si es tenedor de Reclamaciones por los Bonos OG o Reclamaciones por los Bonos de Garantía del ELA) que se consignan en la sección 4.5 del PSA, y de un "Tenedor de Bonos AEP" (si es tenedor de Reclamaciones por los Bonos AEP) que se consignan en la sección 4.6 del PSA, frente a cada una de las demás Partes del PSA.

3.      Ley aplicable. La sección 8.5 del PSA se da por reproducida en su totalidad en el presente, a excepción de que cualquier referencia a "Acuerdo" o "PSA" se reemplazará por "Acuerdo de Adhesión".

4.      Aviso de adhesión. El Acreedor que ingresa al PSA conviene en que facilitará una copia del Acuerdo de Adhesión al abogado de la Junta de Supervisión y AAFAF en virtud de la sección 4.5 del PSA (si es tenedor de Reclamaciones por Bonos OG o Reclamaciones por Bonos de garantía del ELA), la sección 4.6 del PSA (si es tenedor de Reclamaciones por Bonos AEP) y las disposiciones sobre notificaciones que se establecen en la sección 8.11 del PSA.

5.      Adquisición de bonos no PSA. En la medida en que a) a la fecha del presente sea tenedor de Reclamaciones por Bonos OG, Reclamaciones por los Bonos de Garantía del ELA o Reclamaciones por Bonos AEP que no estén contempladas en el PSA, o b) a partir de la fecha del presente, adquiera Reclamaciones por Bonos OG, Reclamaciones por Bonos de Garantía del ELA o Reclamaciones por Bonos AEP además de las que adquiera en virtud de este Acuerdo de Adhesión, el Acreedor que ingresa al PSA, dentro de un plazo de cinco (5) días calendario a partir de la fecha del presente o, en la medida en que haya adquirido Reclamaciones por Bonos OG, Reclamaciones por Bonos de Garantía del ELA o Reclamaciones por Bonos AEP nuevas, a partir de la fecha en que las haya adquirido, facilitará al abogado de la Junta de Supervisión la información financiera que exige la sección 2.2 del PSA con respecto a dichas reclamaciones.

EN TESTIMONIO DE LO CUAL, el Acreedor que ingresa al PSA ha dispuesto la firma del presente Acuerdo de Adhesión en la fecha que se indica al inicio.

[NOMBRE DEL CESIONARIO CALIFICADO]

_____

Nombre:

Cargo:

Tenedor de Bonos OG por un valor nominal de:

COPIA PARA FIRMA

Tenedor de Bonos AEP por un valor nominal de:

COPIA PARA FIRMA

# ANEXO G

MODELO DE ACUERDO SUPLEMENTARIO

COPIA PARA FIRMA

## <u>MODELO DE ACUERDO SUPLEMENTARIO</u>

ACUERDO SUPLEMENTARIO AL ACUERDO DE APOYO AL PLAN (modificado oportunamente, el "**PSA**", con sus enmiendas y complementos) del 9 de febrero de 2020, celebrado entre a) la Junta de Supervisión y Administración Financiera para Puerto Rico (la "**Junta de Supervisión**"), como representante del Estado Libre Asociado de Puerto Rico (el "**ELA**"), la Autoridad de Edificios Públicos de Puerto Rico ("**AEP**") y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("**SRE**"), b) los tenedores de Reclamaciones por los Bonos OG y/o Reclamaciones por los Bonos de Garantía del ELA, cada uno de los cuales se define en el PSA, que podrían incluir a los asesores o gerentes que asesoren o gestionen a un tenedor de Reclamaciones por los Bonos OG y/o Reclamaciones por los Bonos de Garantía del ELA que esté incluido en el Anexo A al PSA (junto con sus respectivos sucesores y cesionarios con respecto a las transferencias realizadas de acuerdo con los términos del presente, los "**Titulares de Obligaciones Generales**"), c) los tenedores de Reclamaciones por los Bonos AEP, según se definen en el PSA, que podrían incluir a los asesores o gestores que asesoren o gestionen a un tenedor de Reclamaciones por los Bonos AEP que esté incluido en el Anexo B al PSA (junto con sus respectivos sucesores y cesionarios con respecto a las transferencias realizadas de acuerdo con los términos del presente, los "**Tenedores de Bonos AEP**", y colectivamente con los Titulares de Obligaciones Generales, los "**Acreedores Iniciales PSA**"), y d) los demás Acreedores PSA que puedan ser tenedores de bonos de aquí en adelante, es otorgado por _____ (el "**Acreedor del Acuerdo Suplementario al PSA**") el _____ de 2020. Todos los términos en mayúsculas utilizados pero no definidos en el presente tendrán los significados que se les asignan en el PSA.

      1.    <u>Acuerdo vinculante</u>. Los Acreedores del Acuerdo Suplementario al PSA por el presente convienen en regirse por todos los términos y disposiciones del PSA. En lo sucesivo, se hará referencia al Acreedor del Acuerdo Suplementario al PSA como "Acreedor PSA", "Parte", "Titular de Obligaciones Generales" (si es tenedor de Reclamaciones por los Bonos OG o Reclamaciones por los Bonos de Garantía del ELA) y "Tenedor de Bonos AEP" (si es tenedor de Reclamaciones por los Bonos AEP) a todos los efectos del PSA, lo que incluye, sin limitación, y para despejar dudas, en lo referido a todas las reclamaciones por los Bonos OG y las reclamaciones por los Bonos AEP de las que el Acreedor del Acuerdo Suplementario al PSA sea titular a la fecha de este Acuerdo Suplementario (distintas a las reclamaciones por los Bonos OG, las reclamaciones por los bonos de garantía del ELA y la reclamaciones por los Bonos AEP que se mantengan como Creador Calificado de Mercado).

      2.    <u>Declaraciones, garantías y convenios</u>. Con respecto al monto global de capital de cualesquiera Reclamaciones por los Bonos OG, Reclamaciones por los Bonos de Garantía del ELA y Reclamaciones por los Bonos AEP (sin duplicación) en poder del Acreedor del Acuerdo Suplementario al PSA, quien por el presente a) a la fecha del presente, realiza las declaraciones y otorga las garantías de un "Titular de Obligaciones Generales" (si es tenedor de Reclamaciones por los Bonos OG o Reclamaciones por los Bonos de Garantía del ELA) que se consignan en la sección 3.5 del PSA, y de un "Tenedor de Bonos AEP" (si es tenedor de Reclamaciones por los

COPIA PARA FIRMA

Bonos AEP) que se consignan en la sección 3.6 del PSA, y b) conviene en que cumplirá con todos los "Convenios" de un "Titular de Obligaciones Generales" (si es tenedor de Reclamaciones por los Bonos OG o Reclamaciones por los Bonos de Garantía del ELA) que se consignan en la sección 4.5 del PSA, y de un "Tenedor de Bonos AEP" (si es tenedor de Reclamaciones por los Bonos AEP) que se consignan en la sección 4.6 del PSA, frente a cada una de las demás Partes del PSA.

3.      Ley aplicable. La sección 8.5 del PSA se da por reproducida en su totalidad en el presente, a excepción de que cualquier referencia a "Acuerdo" o "PSA" se reemplazará por "Acuerdo Suplementario".

4.      Aviso de Acuerdo Suplementario. El Acreedor del Acuerdo Suplementario al PSA conviene en que facilitará una copia de este Acuerdo Suplementario al abogado de la Junta de Supervisión de conformidad con las disposiciones sobre notificaciones que se establecen en la sección 8.11 del PSA; estableciéndose, sin embargo, que con la excepción de la copia que envíe al abogado de la Junta de Supervisión, el Acreedor del Acuerdo Suplementario del PSA podrá borrar el monto nominal de los Bonos OG y los Bonos AEP que se consigna a continuación.

5.      Rechazo del Acuerdo Suplementario. Sin perjuicio del otorgamiento y formalización de este Acuerdo Suplementario para el abogado de la Junta de Supervisión, la Junta de Supervisión podrá, a su exclusivo criterio, optar por no aceptar dicho Acuerdo Suplementario; en tal caso a) la Junta de Supervisión enviará una notificación por escrito de dicha determinación al Acreedor del Acuerdo Suplementario al PSA dentro de un plazo de quince (15) días hábiles tras recibir el Acuerdo Suplementario, y b) el Acreedor del Acuerdo Suplementario del PSA no tendrá ningún derecho de conformidad con el PSA, lo que incluye, a modo de ejemplo, el derecho a recibir el Cargo de Restricción PSA.

EN TESTIMONIO DE LO CUAL, el Acreedor del Acuerdo Suplementario al PSA ha dispuesto la firma del presente Acuerdo Suplementario en la fecha que se indica al inicio.

[NOMBRE DEL ACREEDOR DEL ACUERDO SUPLEMENTARIO AL PSA]

Por: _____
        Nombre: _____
        Cargo: _____
        Dirección: _____
                    _____
                    _____

Tenedor de Bonos OG por un valor nominal de:

COPIA PARA FIRMA

Tenedor de Bonos AEP por un valor nominal de:

COPIA PARA FIRMA

# ANEXO H:

LISTA DE ACCIONES PARA IMPUGNAR LOS GRAVÁMENES

COPIA PARA FIRMA

## Acciones para impugnar los gravámenes

Junta de Supervisión y Administración Financiera de Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, y otros, y el Comité Oficial de Acreedores No Asegurados de todos los Deudores conforme al Título III (distintos a COFINA) c. Autonomy Master Fund Ltd., Proc. Cont. núm. 1900291.

Junta de Supervisión y Administración Financiera de Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, y otros, y el Comité Oficial de Acreedores No Asegurados de todos los Deudores conforme al Título III (distintos a COFINA) c. Cooperativa de Ahorro t Credito de Rincon, Proc. Cont. núm. 19-00292.

Junta de Supervisión y Administración Financiera de Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, y otros, y el Comité Oficial de Acreedores No Asegurados de todos los Deudores conforme al Título III (distintos a COFINA) c. Ortiz de la Renta, Proc. Cont. núm. 19-00293.

Junta de Supervisión y Administración Financiera de Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, y otros, y el Comité Oficial de Acreedores No Asegurados de todos los Deudores conforme al Título III (distintos a COFINA) c. Martinez Sanchez, Proc. Cont. núm. 19-00294.

Junta de Supervisión y Administración Financiera de Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, y otros, y el Comité Oficial de Acreedores No Asegurados de todos los Deudores conforme al Título III (distintos a COFINA) c. Valdivieso, Proc. Cont. núm. 19-00295.

Junta de Supervisión y Administración Financiera de Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, y otros, y el Comité Oficial de Acreedores No Asegurados de todos los Deudores conforme al Título III (distintos a COFINA) c. Friedman, Proc. Cont. núm. 19-00296.

Junta de Supervisión y Administración Financiera de Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico, y otros, y el Comité Oficial de Acreedores No Asegurados de todos los Deudores conforme al Título III (distintos a COFINA) c. BlackRock Fin. Mgmt., Proc. Cont. núm. 19-00297.

COPIA PARA FIRMA

**ANEXO I**

RESUMEN DE CONCILIACIÓN

RESUMEN DE PRINCIPALES CONDICIONES ECONÓMICAS

| CONDICIÓN | DESCRIPCIÓN |
|---|---|
| **Contraprestación nominal total** | ▪ $14.478 millones<br>  ○ $3.809 millones en efectivo<br>  ○ $10.669 millones en bonos nuevos |
| **Estructura de los bonos nuevos** | ▪ 50% OG ($5.334 millones)<br>▪ 50% COFINA ($5.335 millones) |
| **Opción de compra** | ▪ Calendario:<br>  ○ 1 de julio de 2030 a 30 de junio de 2031: 103<br>  ○ 1 de julio de 2031 a 30 de junio de 2032: 102<br>  ○ 1 de julio de 2032 a 30 de junio de 2033: 101<br>  ○ A partir del 1 de julio de 2033: 100 |
| **Contraprestación nominal para las Reclamaciones por bonos OG / AEP / de Garantía del ELA** | ▪ $13.951 millones<br>  ○ $3.809 millones en efectivo<br>  ○ $10.142 millones de bonos nuevos (50% GO / 50% COFINA Subordinados) |
| **Fecha de emisión prevista** | ▪ 03/01/2020 |

114

COPIA PARA FIRMA

| CONDICIÓN | DESCRIPCIÓN |
|---|---|
| **Descuento para bonos OG posteriores al período de emisión** | ▪ 2011 (serie D / E / PIB): 0,85%<br>▪ 2011 (serie C): 2,00%<br>▪ 2012: 5,00%<br>▪ 2014: 10,00% |
| **Límite de recuperación OG[1]** | ▪ Pre-2011 74,874%<br>▪ 2011 (serie D / E / PIB): 73,800%<br>▪ 2011 (serie C): 70,401%<br>▪ 2012: 69,887%<br>▪ 2014: 68,000% |
| **Límite de recuperación AEP[2]** | ▪ Pre-2011 77,582%<br>▪ 2011: 76,810%<br>▪ 2012: 72,217% |

[1] En el cálculo del Límite de Recuperación OG no se incluyen los Cargos de Restricción PSA y los Costos de Consumación. Las referencias a los bonos de 2012 y 2014 (lo que incluye lo dispuesto en la sección 8.2 del Acuerdo) también valen para las Reclamaciones por los Bonos de Garantía del ELA (incluidas las reclamaciones de 2015) que no se vinculen con las Reclamaciones por los Bonos AEP.

[2] En el cálculo del Límite de Recuperación AEP no se incluyen los Cargos de Restricción PSA y los Costos de Consumación.

| CONDICIÓN | DESCRIPCIÓN |
|---|---|
| **Consideraciones respecto a exenciones fiscales** | ▪ En caso de que el IRS dicte una Determinación Favorable para las Partes del Gobierno con respecto a la proporción de bonos gravables antes de la Fecha de entrada en vigor, los bonos gravables a los que se otorgue una exoneración fiscal tendrán un rendimiento 50 puntos básicos o 37,5 puntos básicos menor, respectivamente, para los Bonos OG y los Bonos Subordinados de COFINA. <br> ▪ Si la determinación favorable se dicta con posterioridad a la fecha de entrada en vigor, los bonos gravables afectados podrán ser canjeados por bonos convertidos con un rendimiento 25 puntos básicos menor (el mecanismo es similar al canje anterior de Bonos COFINA en el verano de 2019). |
| **Orden de prioridad para bonos gravables** | ▪ <u>Primero</u>: Inversores de Puerto Rico que eligen recibir una distribución gravable sobre los bonos <br> ▪ <u>Segundo</u>: Sistema de prorrateo para todos los tenedores de reclamaciones por Bonos OG, Bonos AEP, Bonos de Garantía del ELA (sin duplicación) |
| **Reclamaciones por Bonos OG /AEP / de Garantía de ELA** <br><br> **Trato para el Descuento por Emisión Original (OID)[3]** | ▪ Las distribuciones a nivel de clase se realizan de forma prorrateada según la reclamación, e incluyen los intereses acumulados hasta la fecha de presentación correspondiente y el descuento OID no vencido ("Reclamación Nominal"). <br> ▪ Las asignaciones dentro de las clases se realizan de forma prorrateada según la reclamación, e incluyen los intereses acumulados hasta la fecha de presentación correspondiente y excluyen el descuento OID no vencido ("reclamación acumulada"). |

116

---
[3] Para despejar dudas, los bonos de apreciación de capital se acumulan hasta la fecha de petición que corresponda para todas las distribuciones.

COPIA PARA FIRMA

| CONDICIÓN | DESCRIPCIÓN |
|---|---|
| **Conciliación AEP** | ▪ $1.073 millones en efectivo<br>▪ La Reclamación AEP en el ELA se calcula como el valor nominal más el valor acumulado hasta la fecha de petición AEP menos el monto de la Conciliación AEP. |
| **Procedimiento de distribución** | ▪ La Conciliación AEP se distribuye de forma prorrateada entre las clases AEP según la Reclamación Nominal<br>▪ Contraprestación nominal para Bonos OG / AEP menos Conciliación AEP menos Restricción PSA Los Cargos y los Costos de Consumación se distribuyen de manera prorrateada entre las clases de Reclamaciones por los Bonos OG / AEP / de Garantía del ELA según la Reclamación Nominal, con sujeción a los descuentos que sean de aplicación a cada clase.<br>▪ Los Ahorros por Descuento se distribuyen de manera prorrateada entre las clases de Reclamaciones por los Bonos OG / AEP / de Garantía del ELA según la Reclamación Nominal, con sujeción a los límites de recuperación que sean de aplicación.<br>▪ Los Ahorros por Límites de Recuperación se redistribuyen de manera prorrateada entre las clases de Reclamaciones por los Bonos OG / AEP / de Garantía del ELA según la Reclamación Nominal, con sujeción a los límites de recuperación que sean de aplicación.<br>▪ Las asignaciones dentro de cada clase se realizan según la Reclamación Acumulada. |

117

COPIA PARA FIRMA

## RESUMEN DE CAPITAL E INTERESES:

(en USD)

| Fecha | OG | | | | | | Subordinados de COFINA | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Exentos | | | Gravables | | | Exentos | | | Gravables | | |
| | Vencimiento | Amort. | Cupones | Vencimiento | Amort. | Cupones | Vencimiento | Amort. | Cupones | Vencimiento | Amort. | Cupones |
| 07/01/2020 | | 551.600.000$ | | | | | | 287.625.000$ | | | | |
| 07/01/2021 | 891.320.000 | 339.720.000 | 5,750% | | | | 424.925.000 | 137.300.000 | 5,000% | | | |
| 07/01/2022 | | 325.360.000 | | | | | | 159.870.000 | | | | |
| 07/01/2023 | 634.195.000 | 308.835.000 | 5,750% | | | | 344.070.000 | 184.200.000 | 5,000% | | | |
| 07/01/2024 | | 289.945.000 | | | | | | 210.395.000 | | | | |
| 07/01/2025 | 558.445.000 | 268.500.000 | 5,750% | | | | 448.975.000 | 238.580.000 | 5,000% | | | |
| 07/01/2026 | | 244.300.000 | | | | | | 268.885.000 | | | | |
| 07/01/2027 | 461.425.000 | 217.125.000 | 5,750% | | | | 570.320.000 | 301.435.000 | 5,000% | | | |
| 07/01/2028 | | 186.730.000 | | | | | | 336.380.000 | | | | |
| 07/01/2029 | 359.795.000 | 173.065.000 | 5,750% | | | | 690.060.000 | 353.680.000 | 5,000% | | | |
| 07/01/1930 | | 183.020.000 | | | | | | 346.490.000 | | | | |
| 07/01/1931 | | 193.995.000 | | | | | | 337.065.000 | | | | |
| 07/01/1932 | | 205.640.000 | | | | | | 326.170.000 | | | | |
| 07/01/1933 | 800.635.000 | 217.980.000 | 6,000% | | | | 1.323.405.000 | 313.680.000 | 4,750% | | | |
| 07/01/1934 | | 139.575.000 | | | 91.480.000 | | | 205.680.000 | | | 93.795.000 | |
| 07/01/1935 | | 147.430.000 | | | 97.995.000 | | | 185.435.000 | | | 99.540.000 | |
| 07/01/1936 | | 156.355.000 | | | 104.980.000 | | | 162.355.000 | | | 105.640.000 | |
| 07/01/1937 | | 165.865.000 | | | 112.460.000 | | | 136.815.000 | | | 112.110.000 | |
| 07/01/1938 | | 176.010.000 | | | 120.470.000 | | | 108.635.000 | | | 118.975.000 | |
| 07/01/1939 | 972.040.000 | 186.805.000 | 5,625% | 656.440.000 | 129.055.000 | 7,125% | 876.535.000 | 77.615.000 | 4,875% | 656.325.000 | 126.265.000 | 6,125% |
| Total | $4.677.855.000 | 4.677.855.000$ | | 656.440.000$ | 656.440.000$ | | 4.678.290.000$ | 4.678.290.000$ | | 656.325.000$ | $656.325.000 | |

118

COPIA PARA FIRMA

**RESUMEN DE CONTRAPRESTACIONES Y RECUPERACIÓN[4]:**

| Clase | Reclamación | Contraprestación | Recuperación |
|---|---|---|---|
| OG pre-2011 | $5.842.761.317,99 | $4.374.709.109,23 | 74,874% |
| 2011 (D / E / PIB) | 645.673.111,48 | 476.506.756,27 | 73,800% |
| 2011 OG (C) | 476.425.522,88 | 335.408.332,36 | 70,401% |
| 2012 OG | 2.938.901.920,90 | 2.053.910.385,46 | 69,887% |
| 2014 OG | 4.181.991.996,95 | 2.733.283.331,61 | 65,358% |
| AEP pre-2011 | 2.661.239.877,05 | 2.064.643.121,42 | 77,582% |
| 2011 PBA | 1.335.422.892,78 | 1.025.738.323,94 | 76,810% |
| AEP 2012 | 674.308.470,06 | 486.965.347,82 | 72,217% |

[4] Las cifras de las contraprestaciones y de las recuperaciones que figuran a continuación no incluyen los Cargos de Restricción PSA y los Costos de Consumación.

119