# **<u>EXHIBIT A</u>**

# Milbank

**JOHN J. HUGHES III**

*Special Counsel*
55 Hudson Yards | New York, NY 10001-2163
T: 212.530.5127
Jhughes2@milbank.com | milbank.com

March 11, 2020

**VIA EMAIL**

| | |
|---|---|
| Peter Friedman, Esq. | Margaret A. Dale, Esq. |
| O'Melveny & Myers LLP | Proskauer Rose, LLP |
| 7 Times Square | Eleven Times Square |
| New York, NY 10036 | New York, NY 10036 |

Re: <u>February 25, 2020 Meet and Confer: Commonwealth Assets and Cash Rule 2004 Requests</u>

Counsel:

We write on behalf of Ambac Assurance Corporation ("<u>Ambac</u>") to memorialize and follow up on our telephonic meet-and-confer on February 25, 2020 (the "<u>February 25 Meet and Confer</u>") concerning *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* [ECF No. 9022] (the "<u>Assets Rule 2004 Motion</u>") and *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis* [ECF No. 9023] (the "<u>Cash Rule 2004 Motion</u>," and collectively with the Assets Rule 2004 Motion, the "<u>Rule 2004 Motions</u>").[1]

During the February 25 Meet and Confer, we discussed the responses we received by letters from AAFAF and the Oversight Board, dated February 24 and 25, 2020, respectively, regarding the "core" categories of documents that Ambac requests in connection with the Rule 2004 Motions, as set forth in its February 4, 2020 letter. We address each category below.

Assets Rule 2004 Motion

  *(1) Category No. 1: Assets (current and transferred/encumbered)*

- *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities*
- *A list of the Commonwealth's current assets.*

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Rule 2004 Motions.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

Peter Friedman, Margaret A. Dale
March 11, 2020

In its February 24 letter, AAFAF referred Ambac to the Commonwealth's official inventory of real property assets and noted that efforts to update it are ongoing. AAFAF later clarified that these updates are being conducted in the ordinary course, as opposed to in response to requests from AAFAF's counsel. AAFAF agreed to look into when the inventory repository was created and when it was last updated and whether any instrumentalities did not contribute to the inventory. AAFAF, however, remains unwilling to search for and produce information regarding the alienation or encumbrance of its assets.

Ambac looks forward to AAFAF's responses and remains willing to meet and confer regarding a potential compromise regarding the information requested in Category No. 1, including information relating to the alienation and encumbrances of the Commonwealth's (or its instrumentality's) assets.

### (2) Category No. 2: August 2019 Report – 23 Properties

- *A list of, or documents sufficient to identify, the 23 properties that were indicated as sold, or to be sold by December 2019, by HTA in the August 2019 report on the implementation of HTA's certified fiscal plan.*
- *Documents sufficient to show*
  - *how those properties were identified for sale or potential sale; and*
  - *the process and protocol for soliciting and entertaining bids, and evaluating and approving a sale.*

In its February 24 letter, AAFAF stated that it would produce non-privileged, readily accessible materials in response to Assets Category No. 2. During the February 25 Meet and Confer, Ambac asked whether there were any documents AAFAF intended to produce pursuant to Category No. 2 that AAFAF expected to be privileged. AAFAF clarified that the limitation of its production to "non-privileged" materials was meant merely as a reservation of rights, given that AAFAF had not yet collected or reviewed documents in connection with Category No. 2, and that conceivably some responsive documents could be privileged.

When asked for a timeline of when it would produce materials pursuant to Category No. 2, AAFAF responded that it is prioritizing lift-stay discovery over the Rule 2004 Motions, but would revert with an expected timeline for production.

Please advise on an update on the timeline for production and the scope of available materials.

### (3) Category No. 3: Real Property Valuation and Disposal Committee (the "__Committee__")

- *Documents sufficient to show (i) AAFAF's (or any other Commonwealth instrumentality's) authority to supervise the work of the Committee; (ii) regulations governing the formalization of disposal of Commonwealth properties, including how the properties will be made available for sale and information will be made available to interested bidders; and (iii) any other strategy by AAFAF or the*

Peter Friedman, Margaret A. Dale
March 11, 2020

> *Committee related to disposal of properties, including establishment of an online data base, as per recent statements of AAFAF Executive Director Omar Marrero.*
> - *Documents sufficient to identify any (i) proposals considered (whether ultimately accepted or not), (ii) transactions recently approved, and (iii) transactions currently under evaluation.*

With respect to documents sufficient to show the strategy regarding disposal of properties, in its February 24 letter, AAFAF offered to produce a list of transactions that have been approved. At the February 25 Meet and Confer, AAFAF indicated that it could produce that list fairly quickly as soon as a protective order has been finalized, and directed Ambac to the publicly available statutes and regulations. Ambac provided a markup of the protective order on February 26, 2020, and awaits the Government Parties' response thereto.

AAFAF has objected to producing documents relating to (a) AAFAF's authority to supervise the work of the Committee, and (b) strategies, proposals under consideration, and transactions under evaluation. AAFAF objected on the grounds that both categories are beyond the scope of Rule 2004, and further objected to the second category on the basis of the deliberative process privilege. During the February 25 Meet and Confer, Ambac asked AAFAF to articulate the scope of the deliberative process privilege it intended to assert and whether AAFAF planned to prepare a privilege log of the documents over which AAFAF asserts the privilege. As to the scope of the privilege, AAFAF noted its understanding that internal strategy communications about what the Committee might do constituted pre-decisional materials outside the scope of discovery. As to the privilege log, AAFAF responded that it has not yet created a privilege log, since it has not yet collected and reviewed documents in connection with Category No. 3. Ambac noted its disagreement with AAFAF's characterization that all internal deliberations are protected by the deliberate process privilege or are otherwise outside of scope of Rule 2004.

AAFAF also asked Ambac to articulate its view of why internal deliberations are relevant so that it could ascertain the scope of the deliberate process privilege. Ambac stated that, among other things, the materials are critical to evaluating the debtor's financial condition and the reasonableness of a proposed plan to creditors to the extent that the requested materials could reveal whether the Commonwealth is monetizing assets in a way that is unreasonable. AAFAF agreed to confer further with regard to the strategies, proposals, and transactions under consideration.

Ambac looks forward to hearing from AAFAF regarding its position as to the internal deliberations, strategies, and AAFAF's authority to supervise the work of the Committee. Ambac maintains that all of the information sought in Category No. 3 is relevant under Rule 2004. Ambac further maintains that, to the extent that AAFAF intends to assert privilege over any documents, Ambac must be provided a privilege log in order to test AAFAF's privilege assertions.

### (4) Category No. 4: Municipal Revenue Collection Center ("CRIM")

> - *A list identifying all properties that have been foreclosed upon by the Commonwealth or its instrumentalities from January 1, 2015 to present, and which*

Case:17-03283-LTS Doc#:12484-1 Filed:03/20/20 Entered:03/20/20 22:23:57 Desc:
Exhibit A - March 11 2020 Letter Page 5 of 8

Peter Friedman, Margaret A. Dale
March 11, 2020

> - *of those properties were subsequently sold by the Commonwealth (and for how much).*
> - *All guidelines or rules governing CRIM's foreclosure of private property and the process for determining whether to sell any of foreclosed-upon properties.*

In its February 24 letter, AAFAF requested additional information from Ambac regarding the theory of relevance for these materials. At the February 25 Meet and Confer, Ambac stated that such materials were relevant to the financial resources of the Commonwealth, such as the revenues and resources the Commonwealth receives in taxes. AAFAF responded that it would confer internally and provide us with an updated response.

Please provide a response as soon as possible. Ambac remains willing to meet and confer on these issues.

Cash Rule 2004 Motion

> **(1) Category Nos. 1 and 2: Presentation and Investigation Documents**
>
> - *All documents relied upon in connection with the 'Summary of Cash Restriction Analysis' presentation, dated October 2, 2019 and the 'Bank Account Analysis: Status Update – June 30, 2019 Balances' presentation, dated as of October 2, 2019, including documents sufficient to identify the processes and assumptions underlying the Cash Restriction Analysis and any iterative changes in the analysis over time.*
> - *All documents relied upon in connection with Duff & Phelps' and/or Ernst & Young's investigation into the cash at government and fiscal plan entities, certain other Title III debtors, and UPR, including but not limited to instructions provided to Duff & Phelps and/or Ernst & Young regarding categorization and restrictions.*

In its February 25 letter, the Oversight Board stated that it has begun reviewing the source materials and raw data underlying the report prepared by Duff & Phelps, and indicated that the Oversight Board will produce those non-privileged, factual materials that are within its possession, custody, and control. During the February 25 Meet and Confer, Ambac asked if those materials were narrower in scope than Ambac's request for "all documents relied upon" in connection with the creation of the report. The Oversight Board stated that it intends to produce core materials that made up the analyses or presentations, but not necessarily the analysis itself. The Oversight Board also objected to producing work papers that are relied upon in final presentations on the grounds of relevance and the deliberate process privilege. Ambac asked whether there would be backup working papers that support the cash analysis' final categorization and supporting designation of funds. The Oversight Board responded that it would review the materials and provide Ambac with more information on that point.

Ambac noted that directions from attorneys relied upon by experts in preparing their analyses are not privileged. The Oversight Board agreed that any privilege assertions would be documented in a privilege log.

Peter Friedman, Margaret A. Dale
March 11, 2020

Ambac appreciates the Oversight Board's willingness to provide a privilege log of any documents over which the Oversight Board asserts privilege. Ambac maintains, however, that it is entitled under Rule 2004 to all of the documents requested in Categories 1 and 2, including any documents relied upon in the preparation of the Cash Restriction Analysis and the reports prepared, and analysis conducted, by Duff & Phelps and/or Ernst & Young. Ambac notes that the Oversight Board has not articulated a burden or relevance objection to the production of such materials, all of which are critical to testing and replicating the analyses performed.

### (2) Category No. 3: Commonwealth's Necessary Operating Expenses

- *All documents related to the assessment of the Commonwealth's necessary operating expenses, including any analyses of whether unrestricted cash exceeds necessary operating expenses.*

In its February 25 letter, the Oversight Board stated that it believes Category No. 3 to be unreasonably broad and unduly burdensome, and also asserted that materials responsive to this request are protected by the deliberative process, attorney-client, and work-product privileges, among others.

Ambac inquired as to what analyses have been done in connection with the Commonwealth's assessment of necessary operating expenses. The Oversight Board responded that fiscal plans and budgets both included significant analysis of necessary operating expenses.

Ambac indicated that it is seeking, *inter alia*, any analyses that were conducted to determine that some expenses had priority over payment on the revenue bonds (for example, analyses that determine that the Commonwealth could pay certain expenses, even though revenue bondholders are not paid, on the basis of the Commonwealth's purported police powers or emergency powers). As noted during the meet-and-confer, the Oversight Board has taken the position that effectively every dollar within the budget of the Commonwealth or its instrumentalities constitutes necessary operating expenses, and Ambac is entitled under Rule 2004 to test that assertion and understand the scope of the particular analysis and items of the budgets and fiscal plans that are in fact essential.

The Oversight Board has taken the position that the materials sought are too broad and ill-defined, and the parties agreed to re-confer to continue discussion on Category No. 3. Ambac reiterates that the Oversight Board's definition, identification, and treatment of "necessary operating expenses" is critical Rule 2004 discovery essential to creditors' evaluation of the Oversight Board's budgets, fiscal plans, and treatment of Commonwealth cash and assets and financing of its operations. It is the Government Parties, not Ambac, who are in the best position to identify the "buckets" of information that fall within and without the category of necessary operating expenses. For that reason, Ambac requests that the Government Parties consult each other and provide a proposal for meeting the demands of these requests so as to avoid further delay and potential litigation.

Peter Friedman, Margaret A. Dale
March 11, 2020

### (3) Category No. 4: Document Key

- *A "key" to the documents produced that would allow parties to replicate the cash restriction analysis performed in connection with the presentations described above, including the relevant identifying information for each document (i.e., Bates numbers).*

During the February 25 Meet and Confer, Ambac stated that it would follow up with the Government Parties on Category No. 4 after conferring with its advisors about the cash restriction analysis performed.

Ambac and its advisors expect that the Oversight Board's production of materials responsive to Category Nos. 1 and 2 will include the underlying raw data relied upon in connection with the cash restriction analysis (for example, in the form of an excel spreadsheet). Ambac's request for a "key" is a request for information sufficient to reproduce any analysis that the Oversight Board produces (*e.g.*, information sufficient to map the underlying source documents referenced or inputs in the data to any calculations or other analysis performed on that raw data). To the extent that there is any ambiguity regarding what is required, Ambac can follow up with more specific requests once the data is produced.

Please confirm that the production of the underlying raw data used in connection with cash restriction analysis will be accompanied by a "key," as described herein.

<u>Rule 30(b)(6) Depositions</u>

In light of the discussions between the parties to date and the Government Parties' inability to identify any responsive material to some of Ambac's requests as part of the meet-and-confer process, Ambac submits that it is not practical to rely solely on counsel to identify responsive materials. Counsel to the Government Parties lacks the necessary familiarity with the nature, scope, and substance of the documents sought in the Rule 2004 Motions, as narrowed by the February 4 Letter. For that reason, Ambac reiterates its request for 30(b)(6) witnesses who are familiar with the topics described herein and are able to speak to the issues and documents identified in the February 4 Letter.

Very truly yours,

/s/ *John J. Hughes III*
John J. Hughes III

cc: Grant Mainland
     Atara Miller
     Elizabeth L. McKeen

Peter Friedman, Margaret A. Dale
March 11, 2020

    Laura Stafford
    Martin A. Sosland
    Robert S. Berezin
    William Natbony
    Nicholas A. Bassett
    John E. Mudd