**Hearing Date**: April 22, 2020 at 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline**: April 7, 2020 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**MOTION OF THE COMMONWEALTH OF PUERTO RICO PURSUANT TO BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING STIPULATION AND AGREED ORDER (A) ALLOWING PRIFA BANS GUARANTEE CLAIM, (B) AUTHORIZING ESCROW OF PRIFA FUNDS AND (C) DIRECTING THE DISMISSAL OF LITIGATION WITH PREJUDICE**

---

[1]      The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

<u>Preliminary Statement</u>........................................................................................................2

<u>Jurisdiction and Venue</u>.....................................................................................................3

<u>Background</u> ......................................................................................................................4

    **<u>A.</u>**    <u>The PRIFA BANs</u> ..................................................................... 4

    **<u>B.</u>**    <u>The Commonwealth's Title III Case</u>........................................ 5

    **<u>C.</u>**    <u>The PRIFA BANs Bondholders' Claims</u> ................................ 5

    **<u>D.</u>**    <u>The Title III Joint Plan of Adjustment</u> ................................... 7

    **<u>E.</u>**    <u>The Settlement</u> ......................................................................... 8

<u>Basis for Relief</u> ................................................................................................................9

    **<u>A.</u>**    <u>Probability of Success</u>............................................................ 12

    **<u>B.</u>**    <u>Complexity of Litigation Involved and Expense, Inconvenience and Delay
Attending It</u> ........................................................................... 14

    **<u>C.</u>**    <u>Interest of the Creditors</u> ......................................................... 15

<u>Notice</u> ............................................................................................................................17

<u>No Prior Request</u>............................................................................................................17

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps">Cases</span>

*City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.),*
  656 F.3d 82 (1st Cir. 2011) ......................................................................................10, 11, 16

*Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.),*
  136 F.3d 45 (1st Cir. 1998) ..............................................................................................10, 12

*Hill v. Burdick (In re Moorhead Corp.),*
  208 B.R. 87 (B.A.P. 1st Cir. 1997) ...........................................................................................10

*In re C.P. del Caribe, Inc.,*
  140 B.R. 320 (Bankr. D.P.R. 1992) ...........................................................................................11

*In re City of Detroit,*
  524 B.R. 147 (Bankr. E.D. Mich. 2014) .....................................................................................1

*In re City of Stockton,*
  486 B.R. 194 (Bankr. E.D. Cal. 2013) ........................................................................................1

*In re Fibercore, Inc.,*
  391 B.R. 647 (Bankr. D. Mass. 2008) ................................................................................13, 15

*In re Hansen,*
  2017 Bankr. LEXIS 1120 (Bankr. D.N.H. Apr. 25, 2017) .......................................................12

*In re Laser Realty, Inc. v. Fernandez (In re Fernandez),*
  2009 Bankr. LEXIS 2846 (Bankr. D.P.R. Mar. 31, 2009).........................................11, 14, 16

*In re Receivership Estate of Indian Motorcycle Mfg., Inc.,*
  299 B.R. 8 (D. Mass. 2003) .......................................................................................................10

*Jeffrey v. Desmond,*
  70 F.3d 183 (1st Cir. 1995) .................................................................................................11, 14

*Jeremiah v. Richardson,*
  148 F.3d 17 (1st Cir. 1998) .......................................................................................................10

*Puerto Rico BAN (VL) LLC, et al. v. United States,*
  No. 19-482C (Fed. Cl. filed Apr. 1, 2019)..................................................................................6

iii

*United States v. Sterling Consulting Corp. (In re Indian Motocycle Co.)*,
  289 B.R. 269 (B.A.P. 1st Cir. 2003) ...............................................................................10, 11

*Yacovi v. Rubin & Rudman, L.L.P. (In re Yacovi)*,
  411 F. App'x 342 (1st Cir. 2011) ...........................................................................................12

**STATUTES**

11 U.S.C. § 105(a) ...........................................................................................................3, 10

11 U.S.C. § 502 ...............................................................................................................3, 9

11 U.S.C. § 503 ...............................................................................................................3, 9

PROMESA § 301(a) ....................................................................................................3, 9, 10

PROMESA § 301(d) .............................................................................................................10

PROMESA § 303 ..................................................................................................................3

PROMESA § 305 ...............................................................................................................1, 3

PROMESA § 306(a) ..............................................................................................................3

PROMESA § 306(b) ..............................................................................................................3

PROMESA § 307(a) ..............................................................................................................3

PROMESA § 310 ...............................................................................................................3, 9

PROMESA § 315 ...............................................................................................................5, 9

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 9019 ....................................................................................................3, 10

To The Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] respectfully submits this motion (the "Motion"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this case pursuant to PROMESA section 310, for approval of the *Stipulation and Agreed Order (A) Allowing PRIFA BANs Guarantee Claim, (B) Authorizing Escrow of PRIFA Funds and (C) Directing the Dismissal of Litigation with Prejudice*, attached hereto as **Exhibit A** (the "Stipulation and Agreed Order"), approving the terms of the compromise and settlement (the "Settlement")[2] among the Commonwealth, the Puerto Rico Fiscal Agency & Financial Advisory Authority ("AAFAF"), on behalf of the Puerto Rico Infrastructure Financing Authority ("PRIFA"), and holders (the "PRIFA BANs Bondholders") of the series of bond anticipation notes designated as Puerto Rico Infrastructure Financing Authority, Dedicated Tax Fund Revenue Bond Anticipation Notes, Series 2015 (collectively, the "PRIFA BANs"), issued by PRIFA, resolving certain disputes and litigations in connection with the PRIFA BANs. In further support of this Motion, the Commonwealth respectfully represents as follows:

---

[1]     PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[2]     A debtor under PROMESA Title III is not required to seek court approval of settlements pursuant to Bankruptcy Rule 9019, and, by filing this Motion, the Commonwealth does not waive any argument as to whether any other settlement or compromise entered into by the Commonwealth is subject to the requirements of Bankruptcy Rule 9019. *See In re City of Stockton*, 486 B.R. 194, 195–200 (Bankr. E.D. Cal. 2013) ("11 U.S.C. § 904 gives a chapter 9 debtor freedom to decide whether to ignore or to follow the Rule 9019 compromise-approval procedure . . . ."); PROMESA § 305 (incorporating similar provisions as 11 U.S.C. § 904); *see also In re City of Detroit*, 524 B.R. 147, 198–99 (Bankr. E.D. Mich. 2014) (recognizing that "the City exercised its right under § 904 not to request Court approval of this memorandum of understanding." (citing *In re City of Stockton*, 486 B.R. at 199)). The Commonwealth has elected to file this Motion to approve the Settlement as part of the orderly administration of the Commonwealth's Title III Case, as a condition of the Stipulation and Agreed Order.

## Preliminary Statement[3]

1.      The *Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.* (the "Plan"), filed on February 28, 2020, provides for a global compromise and integrated settlement of the litigation surrounding indebtedness issued or guarantees made by the Commonwealth, including disputes regarding the asserted violation of the amount of the borrowing the Commonwealth was permitted to undertake under Article VI, Section 2 of the Commonwealth Constitution.   Such guarantees include the Commonwealth's guarantee of payments with respect to the PRIFA BANs, which notes were issued in 2015.  As of the Petition Date, PRIFA BANs were outstanding in the principal amount of $78,145,000.00.

2.      In connection therewith, and based upon its primary obligation with respect to the PRIFA BANs, PRIFA, a non-Title III debtor, has agreed to fund a portion of the payment of claims arising from the PRIFA BANs in exchange for the resolution of various disputes surrounding the PRIFA BANs.  These disputes included, but are not limited to, the bondholders' and trustee's assertions that they are entitled to (a) payment of default interest and (b) a statutory lien on certain petroleum tax revenues transferred to PRIFA by statute.  Accordingly, this Motion seeks Court approval of the settlement and compromise of such disputes by (1) providing that PRIFA place $12,657,508.81 of unencumbered funds in escrow for the payment of principal and accrued and unpaid interest on the PRIFA BANs, and (2) allowing the Trustee PRIFA/CW Claim against the Commonwealth in the amount of $83,589,101.67 and allowing such claims to receive distributions as an Allowed 2014 CW Guarantee Bond Claim (as defined in the Plan), as the same may be amended or modified.  In exchange, PRIFA BANs Bondholders holding approximately 99.9% of

---

[3] All capitalized terms not otherwise defined shall have the meaning ascribed to them in the section entitled "Background."

102335940v4

the outstanding principal amount of the PRIFA BANs have agreed to dismiss, with prejudice, upon

the Effective Date of the Plan, all of their claims relating to their holdings in PRIFA BANs,

including claims against PRIFA and the Commonwealth in connection with their guarantee on the

bonds, and claims against the U.S. Government for allegedly effectuating a taking of bondholder

property in connection with PROMESA and the Commonwealth's Title III case.

3.      By seeking approval now of the Stipulation and Agreed Order, the Commonwealth

ensures that PRIFA will have funds set aside for the partial payment of the PRIFA BANs pursuant

to the terms of the Stipulation and Agreed Order to resolve a claim that otherwise will be asserted

against the Commonwealth in full.  This reduces uncertainty as the Commonwealth moves toward

confirmation of the Plan, and is a prudent exercise of the Commonwealth's judgment as it moves

towards exiting its Title III case.

4.      AAFAF likewise supports the Stipulation and Agreed Order.  The Court should

approve the Motion.

**Jurisdiction and Venue**

5.      The United States District Court for the District of Puerto Rico (the "Court") has

subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

6.      Venue is proper pursuant to PROMESA section 307(a).

7.      The statutory predicates for the relief sought herein are sections 303, 305, and

306(b) of PROMESA, sections 105(a), 502, and 503 of the Bankruptcy Code, made applicable to

this case pursuant to section 301(a) of PROMESA, and Bankruptcy Rule 9019, made applicable

to this case by section 310 of PROMESA.

2

## Background

### A.  The PRIFA BANs

8.      On March 1, 2015, PRIFA issued the PRIFA BANs in the aggregate original principal amount of $245,955,000.00, pursuant to Act No. 1-2015 of the Legislature of Puerto Rico, as amended, Act No. 44 of the Legislature of Puerto Rico, approved June 21, 1988, as amended, Resolution No. 2015-06 adopted by PRIFA on February 27, 2015, and that certain Trust Agreement, dated as of March 1, 2015, (the "Trust Agreement"), between PRIFA and The Bank of New York Mellon, as trustee (the "Trustee"), relating to the PRIFA BANs.

9.      The PRIFA BANs are payable from, and asserted by the PRIFA BANs Bondholders and the Trustee to be secured by, a pledge of certain assets and revenues of PRIFA, which include (i) a $6.25 per barrel petroleum products tax on non-diesel products, (ii) any funds received by PRIFA pursuant to the terms of that certain Financial Assistance Agreement, dated as of March 1, 2015, between PRIFA and the Puerto Rico Highways and Transportation Authority, and (iii) any additional revenues pledged to PRIFA in accordance with the Trust Agreement, including any amounts received from the Commonwealth in accordance with its guarantee of payment of the PRIFA BANs.

10.      Payment of the PRIFA BANs is guaranteed by the Commonwealth and the good faith, credit and taxing power of the Commonwealth is pledged to the payment of the principal and interest of the PRIFA BANs (the "CW Guarantee").

11.      In addition, in support of the PRIFA BANs, the Commonwealth pledged certain portions of the *crudita* tax previously pledged to the Government Development Bank for Puerto Rico.  While the *crudita* pledged is subject to clawback, the Commonwealth provided a statutory lien on these revenues at the Commonwealth.

2

102335940v4

### B.  The Commonwealth's Title III Case

12.   On June 30, 2016, the Oversight Board was established for the Commonwealth pursuant to PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

13.   Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the court."

14.   On May 3, 2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof (the "Commonwealth Title III Case").

15.   By operation of PROMESA and pursuant to section 315(b), the Oversight Board is the representative of the Commonwealth as a Debtor.

### C.  The PRIFA BANs Bondholders' Claims

16.   On June 28, 2018, certain of the PRIFA BANs Bondholders filed proofs of claim, Claim Nos. 88593, 99448, 112113, 115645, 125736 and 138631, in the Commonwealth Title III Case with respect to liabilities allegedly associated with PRIFA BANs, in the aggregate amount of not less than $66,326,633.72 (the "Bondholders PRIFA/CW Claim").

17.   On May 24, 2018, the Trustee filed a proof of claim, Claim No. 19814, in the Commonwealth Title III Case with respect to liabilities allegedly associated with PRIFA BANs (the "Trustee PRIFA/CW Claim" and, together with the Bondholders PRIFA/CW Claim, the "CW BANs Claims").

2

102335940v4

18.     On April 1, 2019, certain of the PRIFA BANs Bondholders filed a complaint, styled *Puerto Rico BAN (VL) LLC, et al. v. United States*, No. 19-482C (Fed. Cl. filed Apr. 1, 2019), currently pending in the United States Court of Federal Claims, seeking a declaratory judgment against the United States of America and just compensation for the alleged unconstitutional taking of the PRIFA BANs Bondholders' property by the Oversight Board (the "Takings Litigation").

19.     On May 1, 2019, the Special Claims Committee of the Oversight Board (the "SCC"), together with the Official Committee of Unsecured Creditors appointed in the Commonwealth Title III Case (the "Creditors' Committee"), filed a complaint, styled *The Special Claims Committee of the Financial Oversight & Management Board, et al. v. The Bank of New York Mellon, et al.*, Adv. Proc. No. 19-00269, currently pending in the Court, with respect to, among other things, the PRIFA BANs, payments made with respect to the PRIFA BANs and the validity and scope of any liens and security interests asserted by the Trustee and holders of PRIFA BANs (the "Declaratory Judgment Litigation").

20.     On May 2, 2019, the Oversight Board, the SCC and the Creditors' Committee filed the complaints styled (i) *The Financial Oversight & Management Board, et al. v. Ada R. Valdivieso, et al.*, Adv. Proc. No. 19-00295, and (ii) *The Special Claims Committee of the Financial Oversight & Management Board, et al. v. Alan Friedman, et al.*, Adv. Proc. No. 19-00296, each currently pending in the Court, seeking declaratory relief with respect to the Commonwealth's guarantee of the PRIFA BANs and the avoidance of liens, if any, securing such guarantee obligation (the "Lien Avoidance Litigation").

21.     On January 8, 2020, the Creditors' Committee filed that certain *Official Committee of Unsecured Creditors' Omnibus Objection on Constitutional Debt Limit Grounds to (I) Claim of*

2

*Government Development Bank for Puerto Rico [Claim Number 29485] Based on Certain Commonwealth-Issued Notes and on Commonwealth Guaranty of Certain Bonds Issued by Port of Americas Authority, (II) Claim of ScotiaBank de Puerto Rico [Claim Number 47658] Based on Full Faith and Credit Note Issued by Puerto Rico General Services Administration, and (III) Claims Filed or Asserted Against Commonwealth Based on Commonwealth Guaranty of Certain Notes Issued by Puerto Rico Infrastructure Authority* [ECF No. 9735], objecting to the proofs of claim asserted against the Commonwealth in respect of the Commonwealth's guarantee of payment of the PRIFA BANs (the "UCC Objection", and together with the Declaratory Judgment Litigation and the Lien Avoidance Litigation, the "Title III BANs Litigation").*

### D. The Title III Joint Plan of Adjustment

22.     On September 27, 2019, the Commonwealth filed that certain *Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 8765].

23.     On September 27, 2019, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Puerto Rico Public Buildings Authority ("PBA") pursuant to PROMESA section 304(a) in the Court, commencing a case under Title III thereof.

24.     In addition to the Bondholders' PRIFA/CW Claims, the PRIFA BANs Bondholders hold and have asserted claims against the Commonwealth and/or PBA with respect to other indebtedness.

25.     On February 9, 2020, the Oversight Board entered into that certain Plan Support Agreement (the "PSA") with, among others, holders of claims against the Commonwealth and PBA, including certain PRIFA BANs Bondholders, with respect to the terms and conditions for a plan of adjustment for, among other Title III debtors, the Commonwealth and PBA, and setting

2

102335940v4

forth the proposed treatment for claims, including, without limitation, the CW BANs Claims upon

the effective date of such plan of adjustment (the "Effective Date").

26.     On February 28, 2020, the Commonwealth, PBA, and the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico filed the Plan.

**E.  The Settlement**

27.     Following extensive negotiations, and in connection with the negotiation of the

PSA, the Oversight Board, PRIFA, and the PRIFA BANs Bondholders entered into the Stipulation

and Agreed Order providing for the settlement and compromise of the Title III BANs Litigation

and asserted claims in the CW BANs Claims.

28.     The salient terms of the Stipulation and Agreed Order are as follows:

| | |
|---|---|
| **Escrow of PRIFA Funds** | On or prior to fifteen (15) business days following entry of the Stipulation and Agreed Order, PRIFA will deposit $12,657,508.81, in cash, into a segregated interest-bearing account for the payment of principal and accrued and unpaid interest on the PRIFA BANs.  The $12,657,508.81 is unencumbered cash held at PRIFA that (i) was recently generated by the sale of those certain Puerto Rico Sales Tax Financing Corporation Restructured Sales Tax Bonds, Series 2019A (the "COFINA Bonds") held by PRIFA; or (ii) will be generated by the future sale of additional COFINA Bonds held by PRIFA. |
| **Payment of PRIFA BANs from Escrowed Funds** | On the Effective Date, the escrowed funds will be released to the Trustee in payment of principal and accrued and unpaid interest with respect to the PRIFA BANs, in full and complete satisfaction of the PRIFA BANs, the Trust Agreement, the Financial Assistance Agreement, and all other documents, including, without limitation, any claims and causes of actions arising from or related to Section 8 of Article VI of the Puerto Rico Constitution, 3 L.P.R.A. § 1914, and Administrative Bulletin Nos. OE-2015-46, OE-2016-27, and OE-2016-30. |
| **Dismissal of Takings Litigation** | On the Effective Date, the Takings Litigation will be deemed dismissed, with prejudice. |

2

| | |
|---|---|
| **Dismissal of Title III BANs Litigation** | On the Effective Date, the Title III BANs Litigation, solely with respect to (1) the PRIFA BANs, (2) payments made with respect to the PRIFA BANs, (3) the validity and scope of any liens and security interests asserted by holders of PRIFA BANs and the Trustee, and (4) the Commonwealth's guarantee of the PRIFA BANs and solely with respect to (i) the Trustee and (ii) holders of PRIFA BANs that have voted to accept the Plan, will be deemed dismissed and/or denied, with prejudice. |
| **Allowance of Claims against the Commonwealth** | In full and complete satisfaction of the Commonwealth's obligations pursuant to the PRIFA BANs, (a)(i) the Trustee PRIFA/CW Claim shall be deemed an Allowed 2014 CW Guarantee Bond Claim (as defined in the Plan) in the aggregate amount of $83,589,101.67 (the "<u>Allowed Claim</u>") and (ii) the Commonwealth shall make distributions to the Trustee with respect to the Allowed Claim in accordance with the terms and provisions of the Plan; and (b) subject to receipt by the Trustee of the distributions of the escrowed funds pursuant to the Stipulation and Agreed Order, the Bondholders PRIFA/CW Claim shall be deemed disallowed and expunged from the claims registry of the Commonwealth Title III Case. |

### **Basis for Relief**

29.     The Oversight Board files this Motion as the representative of the Commonwealth under section 315(b) of PROMESA and consents to this Court's consideration of the Settlement under the compromise-approval procedure pursuant to Bankruptcy Rule 9019 and section 310 of PROMESA.[4]

30.     The Settlement is a product of extensive negotiations among the Oversight Board, PRIFA, and the PRIFA BANs Bondholders as part of the PSA mediation process led by the Court-appointed mediation team, and reflects a compromise of various complex legal issues asserted by, against, and between the Commonwealth and the PRIFA BANs Bondholders.  *See* 11 U.S.C. §§ 502, 503 (made applicable to this case by PROMESA § 301(a)).  Applying Bankruptcy Rule

---

[4] *See supra* n.3.

102335940v4

9019, the Court may issue an order under section 105(a) of the Bankruptcy Code approving this Settlement. *See* 11 U.S.C. § 105(a) (providing that a court may issue any order "necessary or appropriate to carry out the provisions of this title"); PROMESA § 301(a) (incorporating section 105 of the Bankruptcy Code into title III of PROMESA); *id.* § 301(d) (references to "this title" in sections of the Bankruptcy Code incorporated into title III shall be deemed as references to title III of PROMESA).

31.    Bankruptcy Rule 9019(a) provides that a court may approve a debtor's "compromise or settlement" after notice and a hearing. Bankruptcy Rule 9019(a). The U.S. Court of Appeals for the First Circuit (the "<u>First Circuit</u>") has emphasized that "[s]tipulations of settlement are favored by the courts, and they will rarely be set aside absent fraud, collusion, mistake or other such factors. . . ." *United States v. Sterling Consulting Corp. (In re Indian Motocycle Co.)*, 289 B.R. 269, 282 (B.A.P. 1st Cir. 2003); *see also Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 50 n.5 (1st Cir. 1998).

32.    The approval of settlements is within the court's wide discretion. *See Jeremiah v. Richardson*, 148 F.3d 17, 23 (1st Cir. 1998). However, while a court should apply its own independent judgment to determine whether to approve a settlement, it should also afford deference to the judgment of the trustee or debtor in possession. *See City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 92 (1st Cir. 2011); *In re Receivership Estate of Indian Motorcycle Mfg., Inc.*, 299 B.R. 8, 21 (D. Mass. 2003) (the court should give "substantial deference to the business judgment of a bankruptcy trustee when deciding whether to approve a settlement"); *Hill v. Burdick (In re Moorhead Corp.)*, 208 B.R. 87, 89 (B.A.P. 1st Cir. 1997) ("The [bankruptcy] judge . . . is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference." (citation omitted)); *In re Healthco*

2

*Int'l, Inc.*, 136 F.3d at 50 n.5.  Accordingly, a settlement should generally be approved unless it "falls below the lowest point in the range of reasonableness."  *Am. Cartage*, 656 F.3d at 91 (citing *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)).

33.     In determining the reasonableness of a settlement, courts in the First Circuit consider the following four factors: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.  *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995); *see also In re Indian Motocycle Co.*, 289 B.R. at 283; *In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, 2009 Bankr. LEXIS 2846, at *9 (Bankr. D.P.R. Mar. 31, 2009); *In re C.P. del Caribe, Inc.*, 140 B.R. 320, 325 (Bankr. D.P.R. 1992).

34.     The Oversight Board respectfully submits that consideration of the relevant factors shows that the Settlement is eminently reasonable, and should be approved.  The Settlement resolves a myriad of disputes and asserted claims, including the Bondholders PRIFA/CW Claim, the Trustee PRIFA/CW Claim, the UCC Objection, the Takings Litigation, the Declaratory Judgment Litigation, and the Lien Avoidance Litigation, involving a multitude of parties such as the United States of America, the Oversight Board, the Creditors' Committee, the Trustee, and the PRIFA BANs Bondholders.

35.     The issues resolved pursuant to the Settlement are complex and the likelihood such issues would be resolved in the Commonwealth's favor is far from certain.  If, for example, the CW Guarantee were determined to be lawful and not inconsistent with provisions regarding debt limitations, the Commonwealth could be obligated to uphold the CW Guarantee, as PRIFA has

2

not been making payments on the PRIFA BANs.  The resulting claim on account of the Commonwealth's CW Guarantee obligations could dilute the recoveries of other bondholders holding debt validly issued or guaranteed by the Commonwealth.  And, regardless of the ruling in the various proceedings listed above, it is almost certain that multiple appeals would follow.  The reality of protracted litigation, potentially for years, comes at a substantial cost to the Commonwealth, both as a result of the significant expenses that would be incurred and because its ability exit Title III would be hindered.

36.      Meanwhile, the Settlement, among other things, (a) ensures that PRIFA, which is not a debtor under Title III, contributes to the payment of a portion of the claims arising from PRIFA BANs, which are guaranteed by the Commonwealth, (b) curtails costly, time consuming litigation, and (c) will facilitate the Commonwealth's progression more quickly towards a confirmable plan of adjustment and regain access to the capital markets.

**A.  Probability of Success**

37.      In examining the probability of success in the litigation being compromised, courts look to the legal and evidentiary obstacles to litigating the claim.  *In re Healthco Int'l, Inc.*, 136 F.3d at 50; *In re Hansen*, 2017 Bankr. LEXIS 1120, at *12 (Bankr. D.N.H. Apr. 25, 2017).  In addition, the probability of success is measured against the "definitive, concrete and immediate benefit" that a settlement provides against the uncertainty and delay of litigation.  *See Yacovi v. Rubin & Rudman, L.L.P. (In re Yacovi)*, 411 F. App'x 342, 346-47 (1st Cir. 2011) (citing *In re Healthco Int'l, Inc.*, 136 F.3d at 50).  In deciding the probability of success in the litigation, the court is not required to decide the merits of the litigation, but rather, to assess the probability that the debtor would succeed on its claims.  *In re Hansen*, 2017 Bankr. LEXIS 1120, at *12–13.

102335940v4

38.     The Commonwealth's likelihood of success in litigating the validity of the CW Guarantee and the security interests asserted by the Trustee and PRIFA BANs Bondholders, and other issues relating to the CW BANs Claims, is uncertain given the number of novel legal issues implicated, touching on the Commonwealth Constitution and Commonwealth law within the context of the Bankruptcy Code and PROMESA.  In addition to the issue of the CW Guarantee, the PRIFA BAN Bondholders have alleged a claim against the Commonwealth on the basis that the Commonwealth violated the U.S. Constitution, *see* Claim No. 88593, among other claims which would provide them a recovery.

39.     The validity of the CW Guarantee is a central issue in determining the value of the CW BANs Claims.  As evident in the briefing by various parties in connection with numerous summary judgment motions, while the Commonwealth and the Creditors' Committee believe the CW Guarantee was executed and delivered in violation of the Commonwealth debt service limit, *e.g.*, Declaratory Judgment Litigation [ECF No. 1 ¶¶ 36–37], the PRIFA BAN Bondholders—as well as holders of Commonwealth debt and other debt guaranteed by the Commonwealth—dispute that claim.  Where parties' positions are so far apart, courts generally favor the certainty of a settlement. *See In re Fibercore, Inc.*, 391 B.R. 647, 655 (Bankr. D. Mass. 2008) ("[W]hat is 'clear' to one party appears foggy to another and the Trustee believes it is better to pursue a guaranteed, relatively immediate payment to the estate . . . than pursue litigation hoping for more.  This Court cannot quarrel with that conclusion.").

40.     Given the broad swath of arguments that have already been briefed in connection with the validity of the CW Guarantee, it is uncertain that the Commonwealth would prevail.  And, even a victory for the Commonwealth would be only a first step in a long, difficult road to the Commonwealth resolving the CW BANs Claims, including the Takings Litigation, where an

2

adverse determination could imperil the relationship with the federal government and impede confirming the Plan.  The Settlement, meanwhile, resolves the CW BANs Claims and facilitates the Commonwealth's continued progress in its Title III Case.  *In re Fernandez*, 2009 Bankr. LEXIS 2846, at *9–10 ("The Court concludes that the uncertainty of the litigation between the debtors and Citibank weighs heavily in favor of the approval of the Settlement Agreement. . . .  The parties have engaged in extensive litigation in numerous contested matters, which has come at great expense and has caused years of delay.  Given the history of these cases and a cursory review of the ample dockets, it would be unrealistic to conclude that the disputes between the debtors and Citibank could be expeditiously and inexpensively resolved, with the debtors prevailing in all of the litigation.").

### B.   Complexity of Litigation Involved and Expense, Inconvenience and Delay Attending It

41.    As discussed, the Commonwealth's likelihood of success is uncertain in part because of the complexity of the issues involved.  The complexity of the validity of the CW Guarantee is evident by not only the difficulty of the legal issues involved, but also, the number of parties involved, the multiple actions that have been filed, the significant costs incurred, and the ramifications of delay in resolving the dispute.  While briefing regarding the CW BANs Claims has been stayed, Declaratory Judgment Litigation, [ECF No. 6]; Lien Avoidance Litigation (19-296) [ECF No. 27], absent any settlement, substantive briefing would resume, involving novel and complicated issues that cut across Puerto Rico statutory and constitutional law as well as federal restructuring law.  In light of the foregoing, continued litigation of the CW BANs Claims will invariably invite a number of appeals, drawn out over months or even years.

102335940v4

42.    Thus, the complexity of the issues, and the expense and delay caused by protracted litigation of the CW BANs Claims weigh in favor of granting the Motion. *See Jeffrey*, 70 F.3d at 187 ("[C]oupled with the bankruptcy court's inquiries and findings regarding the inconvenience and expense to the estate in attending the state court action, and the fact that the compromise would provide creditors with an immediate and certain payment of a large percentage of the outstanding debt, illustrates that the bankruptcy court did not abuse its discretion in approving the compromise."); *In re Fibercore, Inc.*, 391 B.R. at 656 ("To pursue the actions which Silica Tech proposes would likely result in a significant delay in administering the estate without the guaranty of success—and an indeterminable increase in administrative costs.").

43.    Moreover, even if the Commonwealth were to prevail on the issues of the CW Guarantee, the Commonwealth would need to address (a) the ramifications of the Takings Litigation on the Commonwealth's other funded debt, and (b) its ability to access the capital markets.  The Settlement works toward eliminating these complicated issues.

### C.  Interest of the Creditors

44.    The Settlement avoids the risk that the Commonwealth experiences a total loss in the various disputes involving the PRIFA BANs and bears full liability on the CW Guarantee— diluting recoveries of other Commonwealth creditors.  Rather, the Settlement provides a middle road and certainty that allows the Commonwealth Title III Case to move forward and avoid protracted litigation and additional expenditure of the Commonwealth's resources that could otherwise be used to pay Commonwealth creditors' claims.  Most importantly, one of the primary benefits of this Settlement is that PRIFA, a non-Title III debtor, is contributing towards the partial payment of the claims arising from the PRIFA BANs.

102335940v4

45.     Furthermore, by providing certainty about the claims that have been asserted against the Commonwealth by the PRIFA BANs Bondholders and the Trustee, the Settlement enables the Commonwealth to simplify the issues before the Court at the ultimate consideration of confirmation of the Plan and move forward with its Title III Case.  In contrast, extended litigation of the validity of the CW Guarantee and related issues, with no guarantee of success, will ensure that the Commonwealth will have to wait for the novel issues underlying the dispute to be resolved on appeal before ultimately being able to move forward with its Title III case—to the detriment of its creditors.  The sooner the Commonwealth can exit Title III, the sooner it will be able to regain access to the capital markets and begin its long road to economic recovery.  A healthier Commonwealth economy is clearly in the best interests of its citizens, many of whom are also its creditors.  *See Am. Cartage*, 656 F.3d at 93 ("Finally, the bankruptcy court appropriately took into account the paramount interest of the creditors.  Settling quickly for $12,000 allowed the trustee to distribute something to creditors.  In bankruptcy, as in life, half a loaf is sometimes better than none."); *In re Fernandez*, 2009 Bankr. LEXIS 2846, at *11–12 (holding that the interest of creditors weighs in favor of the settlement because "[with the settlement], the Court anticipates the expeditious conclusion of these bankruptcy cases and the attendant distribution to all other creditors.").

46.     At bottom, the Settlement provides a more than reasonable solution to an extraordinarily complex dispute.  *See Am. Cartage*, 656 F.3d at 91–92 (the court should "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.").  As a result of hard-fought negotiations amongst numerous parties, the Settlement provides that PRIFA will contribute over $12 million of unencumbered funds to satisfy the CW BANs Claims, and that the Trustee PRIFA/CW Claim shall be allowed in the amount of

2

approximately $83 million, with such distributions made with respect to such claims in accordance with the terms of the Plan, as such may be amended or modified.  In exchange, the Commonwealth resolves significant uncertainty with regard to the CW BANs Claims, and takes another forward step on the path to confirming the Plan.  The best evidence of the reasonableness of the Settlement is the overwhelming support on both sides of the aisle—the PRIFA BANs Bondholders on one side, and the Commonwealth and AAFAF on the other.

## Notice

47.     The Commonwealth has provided notice of this Motion in accordance with the Case Management Procedures to the following parties: the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable for the Debtors' bonds; (c) the entities on the list of creditors holding the twenty largest unsecured claims against the Commonwealth; (d) counsel to the statutory committees appointed in these Title III cases; (e) the Office of the United States Attorney for the District of Puerto Rico; (f) the Puerto Rico Department of Justice; (g) the Other Interested Parties;[5] and (h) all parties filing a notice of appearance in these Title III cases.  The Oversight Board submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

48.     No prior request for the relief sought in this Motion has been made to this or any other court.

---

[5]       The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtors; and (ii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors.

102335940v4

*Remainder of Page Intentionally Left Blank*

2

102335940v4

WHEREFORE the Commonwealth respectfully requests the Court to enter the Stipulation

and Agreed Order, granting the relief requested herein and any other relief as is just and proper.

Dated: March 24, 2020
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative for the
Commonwealth*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Commonwealth*

2

102335940v4