# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------------- X
                                                    )
In re:                                              )          PROMESA
                                                    )          Title III
THE FINANCIAL OVERSIGHT AND                         )
MANAGEMENT BOARD FOR PUERTO RICO                    )          Case No. 3:17-cv-03283 (LTS)
                                                    )
          as representative of                      )          (Jointly Administered)
                                                    )
THE COMMONWEALTH OF PUERTO RICO, *et al.*, )
                                                    )
          Debtors.[1]                               )
                                                    )
-------------------------------------------------------------------- X
In re:                                              )
                                                    )          PROMESA
THE FINANCIAL OVERSIGHT AND                         )          Title III
MANAGEMENT BOARD FOR PUERTO RICO                    )
                                                    )          Case No. 3:17-cv-03566 (LTS)
          as representative of                      )
                                                    )
THE EMPLOYEES RETIREMENT SYSTEM OF                  )
THE GOVERNMENT OF PUERTO RICO                       )
                                                    )
          Debtor.                                   )
                                                    X
--------------------------------------------------------------------

## ERS BONDHOLDERS' SUPPLEMENT TO PROOFS OF CLAIM AND MOTIONS FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIMS

---

[1]   The Debtors in these Title III cases, along with each Debtor's Bankruptcy Court case number and last four (4) digits of each Debtor's federal tax identification number are (i) The Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) The Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3566 (LTS)) (Last Four Digits of Federal Tax ID 9686); (iii) Puerto Rico Sales Tax Financing Corporation (Bankr. Case No. 17-bk-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iv) Puerto Rico Highways and Transportation Authority (Bankr. Case No. 17-bk-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority (Bankr. Case No. 17-bk-4780 (LTS)) (Last Four Digits of Federal Tax ID:  3747); and (vi) Puerto Rico Public Buildings Authority (Bankr. Case No. 19-bk-5523 (LTS)) (Last Four Digits of Federal Tax ID:  3801).

Pursuant to the Court's March 18, 2020 Order [ECF No. 12446 in Case No. 17-3283 and ECF No. 838 in Case No. 17-3566] (the "Scheduling Order"), the members of the ERS Bondholder Groups[2] and The Bank of New York Mellon (the "Fiscal Agent" and, together with the ERS Bondholder Groups, the "Claimants"), as Fiscal Agent for the ERS Bonds, for and on behalf of itself and all beneficial owners of ERS Bonds (including members of the ERS Bondholder Groups, the "Bondholders"),[3] hereby submit this supplement (the "Supplement") to (i) paragraph 43 of the motions for allowance of administrative expense claims filed by the ERS Bondholder Groups [ECF No. 9285 in Case No. 17-3283 and ECF No. 707 in Case No. 17-3566; ECF No. 9294 in Case No. 17-3283 and ECF No. 710 in Case No. 17-3566] and the corresponding paragraphs of the Fiscal Agent's *Joinder of the Bank of New York Mellon, as Fiscal Agent, in ERS Bondholders' Motion for Allowance of Administrative Expense Claim* [ECF No. 9298 in Case No. 17-3283 and ECF No. 712 in Case No. 17-3566] (collectively, the "Administrative Expense Motions"); and (ii) paragraph 29 of the addenda to the proofs of claim filed by the ERS Bondholder Group represented by Jones Day, paragraph 5(b)(iii) of the addenda to the proofs of claim filed by the ERS Bondholder Group represented by White & Case, paragraph 13 of the addenda to the proofs of claim filed by the Fiscal Agent against ERS (Claim No. 16777), and paragraph 17 of the addenda to the proofs of claim filed by the Fiscal Agent against the Commonwealth (Claim Nos. 16775 and 32004).[4]

---

[2] The ERS Bondholder Groups include, collectively, the beneficial owners of bonds issued by ERS represented by Jones Day and the beneficial owners of bonds issued by ERS represented by White & Case, LLP, as reflected in the signature blocks at the end of this Supplement.

[3] The Fiscal Agent filed master bond proofs of claim to asserts rights to payment from ERS and the Commonwealth on behalf of itself and all beneficial owners of the ERS Bonds as their respective interests appear in the Bond Resolution and the ERS Bonds. The Fiscal Agent is joining this Supplement to ensure that the allowance of any claims against ERS and the Commonwealth arising from or relating to the ERS Bonds inures to the benefit of all Bondholders consistent with the Bond Resolution and the ERS Bonds.

[4] The Bondholders' proofs of claim are listed on Appendix 2 to the Scheduling Order. As noted in the Scheduling Order, although the Parties intended for that list to be comprehensive, all Parties reserved their rights to identify additional claims they believe should be included in the list of the Bondholders' claims.

## BACKGROUND

1.     The factual allegations supporting the Claimants' proofs of claim and Administrative Expense Motions against both the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and the Commonwealth of Puerto Rico (the "Commonwealth") have been set forth in (i) the addenda attached to the proofs of claim filed by the Claimants ("Claim Addenda"); (ii) the ERS Bondholder Groups' *Amended and Supplemented Adversary Complaint* filed in *Andalusian Glob. Designated Activity Co., et al. v. The Commonwealth of Puerto Rico, et al.*, Adv. Proc. Nos. 17-219 and 17-220 (D.P.R.) [Dkt. No. 39] and attached as Exhibit A to the Claim Addenda (the "Adversary Complaint"); and (iii) the Administrative Expense Motions.  The Claimants allege, reallege, and incorporate by reference the allegations set forth in their proofs of claim, the Claim Addenda, the Adversary Complaint, and the Administrative Expense Motions as if fully alleged and asserted herein.

## SUPPLEMENTAL ALLEGATIONS

### I.    SUPPLEMENTAL ALLEGATIONS IN SUPPORT OF THE ADMINISTRATIVE EXPENSE MOTIONS

2.     As explained in paragraph 43 of the Administrative Expense Motions, ERS and the Commonwealth damaged the Bondholders through the enactment of Joint Resolution for Other Allocations for Fiscal Year 2017-2018 ("Joint Resolution 188"), passed June 25, 2017, and Act 106-2017 ("Act 106"), enacted August 18, 2017 (collectively, the "Post-Petition Legislation"), the passage of various other unlawful acts and executive orders, and other unlawful actions.  The Bondholders are entitled to post-petition claims and administrative expense status for these claims, which all arose after the ERS and Commonwealth Petition Dates[5] as a result of the

---

[5] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Claim Addenda or the Administrative Expense Motions.

Commonwealth's and ERS's violations of the law in enacting the Post-Petition Legislation.

    A.   **<u>Supplemental Bases for Administrative Expense Claims Against ERS</u>**

    3.     ***ERS's Fraudulent Transfers to or for the Benefit of the Commonwealth.*** Article 1064 of the Civil Code of Puerto Rico allows creditors to "impugn the acts which the debtor may have performed in fraud of [a creditor's] right." 31 L.P.R.A. § 3028. Article 1243 of the Civil Code of Puerto Rico provides that transfers executed in fraud of creditors can be rescinded when creditors "cannot recover, in any other manner, what is due them." 31 L.P.R.A. § 3492(3). Because the transfers effected by the Post-Petition Legislation from ERS to the Commonwealth were made in fraud of ERS's creditors—the Bondholders—they are voidable under Puerto Rico law as fraudulent transfers. The Post-Petition Legislation required ERS to liquidate its assets and transfer the proceeds to the Commonwealth, and it diverted employers' contributions to which ERS has a statutory right away from ERS to the Commonwealth. With the full support and cooperation of ERS, the Commonwealth—which owed substantial sums to ERS—engineered the Post-Petition Legislation to evade both its own obligations to ERS and ERS's obligations to its bondholders, and to instead use ERS's assets for the Commonwealth's purposes. At the time of the transfers, ERS was insolvent or rendered insolvent and experiencing severe underfunding caused, in large part, by the Commonwealth's own failure to make hundreds of millions of dollars in statutorily required contributions. ERS received no or inadequate consideration for the transfers. ERS was left with no or substantially fewer assets to satisfy the claims of all creditors, including the Bondholders. Through the Post-Petition Legislation, the Commonwealth emptied ERS's coffers without assuming all of ERS's obligations—most specifically, its obligations to the Bondholders. Upon information and belief, at the time of the transfers, the Commonwealth and ERS were aware of ERS's obligations to the Bondholders as well as the corresponding harm that the Bondholders would suffer as a result of the transfers, and it intended the transfers to evade the

4

Commonwealth's obligations to ERS and ERS's obligations to its bondholders.  The transfers effectuated by the Post-Petition Legislation  contributed to or caused ERS's insolvency, damaging the Bondholders and leaving ERS with insufficient assets to satisfy the claims of the Bondholders.

4.     ***ERS's Knowing, Intentional, and Fraudulent Evasion of Compliance with its Contractual Obligations.***  Article 1054 of the Civil Code of Puerto Rico prohibits "dolo" or "deceit" in the performance of a contractual obligation.  31 L.P.R.A. § 3018; *see also Generadora De Electricidad Del Caribe, Inc. v. Foster Wheeler Corp.*, 92 F. Supp. 2d 8, 18 (D.P.R. 2000) (defining such performance as "where a party, knowingly and intentionally, through deceitful means, avoids complying with its contractual obligation" (citing 31 L.P.R.A. § 3018)).  ERS voluntarily entered into a contractual agreement with the Claimants in which the Bondholders agreed to provide a fixed, up-front payment and ERS agreed to provide, among other things, a series of principal and interest payments at specified intervals.  The ERS Bond Resolution and the related security agreement govern this contractual relationship and set forth the terms governing both parties.  This agreement constitutes a valid, binding contract between ERS and the Claimants. Bond Resolution § 102.  Among other things, the Bond Resolution requires ERS to make principal and interest payments to the Bondholders, grants the Claimants a security interest in the Pledged Property, requires ERS to protect the Bondholders' rights by opposing efforts to reduce employers' contributions, and commits ERS to pursue all available legal remedies to collect employers' contributions that were delinquent or inadequate, including under the various provisions of the ERS Enabling Act that empowered ERS to collect contributions from participating employers. Nevertheless, although ERS remained severely underfunded and although the Commonwealth repeatedly failed to satisfy its statutory obligation to make contributions to ERS, ERS failed to take any steps to vindicate the Bondholders' rights.  Further, ERS later transferred the entirety of

ERS's existing assets and its right to future employer contributions to the Commonwealth pursuant

to the Post-Petition Legislation.  Although this legislation states that it ensures that pensioners

would be made whole, ERS knew that the Post-Petition Legislation provided no corresponding

compensation to the Bondholders and that the legislation would make it impossible for ERS to

satisfy its obligations to the Bondholders.  Despite the effect on the Bondholders and ERS's

contractual obligation to do so, ERS made no effort to oppose the Post-Petition Legislation.  After

knowingly and intentionally transferring its past and future assets, ERS defaulted on its contractual

obligation to make principal and interest payments on the ERS Bonds.  Acting knowingly and

intentionally, ERS thus used various devices to evade compliance with its contractual obligations.

*See* 31 L.P.R.A. § 3018.

      5.    ***ERS's Breach of Its Obligation to Perform in Good Faith***.  Under Puerto Rico

law, contractual obligations include not only the express terms, but also "all the consequences

which, according to their character, are in accordance with good faith, use, and law."  31 L.P.R.A.

§ 3375.  Thus, even if actions by a party to a contract do not violate the literal terms of the contract,

they may still "violate[ ] the covenant of good faith and fair dealing which Puerto Rican law

implies into contracts."  *Cantellops v. Alvaro-Chapel*, 234 F.3d 741, 744 (1st Cir. 2000) (citing 31

L.P.R.A. § 3375).  As detailed in Paragraphs 3 and 4 above, and in the Claim Addenda, the

Adversary Complaint, and the Administrative Expense Motions, ERS knowingly and intentionally

acted in concert with the Commonwealth to enact the Post-Petition Legislation, permitted the

Commonwealth to extinguish its debt to ERS, transferred its assets to the Commonwealth, making

it impossible for ERS to satisfy its obligations to the Bondholders, and breached its obligation to

defend the Bondholders' interest under the Bond Resolution.  By these acts and others, ERS

knowingly and intentionally breached its obligation to perform under the Bond Resolution in good faith.

6.      ***ERS's Fault or Negligence in Fulfilling Its Contractual Obligations.***   Article 1057 of the Civil Code of Puerto Rico provides that "[t]he fault or negligence of the debtor consists of the omission of the steps which may be required by the character of the obligation and which may pertain to the circumstances of the persons, time, and place."   31 L.P.R.A. § 3021. Furthermore, "[t]hose who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall . . . indemnify for the losses and damages caused thereby."   31 L.P.R.A. § 3018.   ERS failed to take any steps to vindicate the Bondholders' rights and reduce its longstanding underfunding. Further, ERS later transferred the entirety of ERS's existing assets and its right to future employer contributions to the Commonwealth pursuant to the Post-Petition Legislation.   Although this legislation stated that it ensured that pensioners would be made whole, ERS knew that the Post-Petition Legislation provided no corresponding compensation to the Bondholders and that it would make it impossible for ERS to satisfy its obligations to the Bondholders.   Despite the effect on the Bondholders and ERS's contractual obligation to do so, ERS made no effort to oppose the Post-Petition Legislation.   After knowingly and intentionally transferring its past and future assets, ERS defaulted on its contractual obligation to make principal and interest payments on the ERS Bonds. Those omissions and actions foreseeably damaged the Bondholders by interfering with ERS's ability to pay the Bondholders principal and interest, depriving the Claimants of their collateral under the Bond Resolution, damaging the Bondholders, and leaving ERS with insufficient assets to satisfy its creditors.

7.    ***ERS's Breach of Duties It Owed to the Bondholders Caused Unjust Enrichment.***

Puerto Rico law creates a right to recover where there is unjust enrichment.  *See, e.g.*, *El Municipio de Cayey v. Soto Santiago*, No. RE-89-400, 1992 WL 754881 (P.R. June 30, 1992).  By entering into the Bond Resolution, ERS assumed a series of duties to the Bondholders that it failed to meet, including but not limited to:  (i) the duty to manage ERS's assets with reasonable care and in accordance with the terms of the Bond Resolution; (ii) a duty of loyalty to the Bondholders; (iii) a duty to "promptly collect and remit" all employer contributions to the Fiscal Agent in accordance with ERS's statutory obligations, Bond Resolution § 701; (iv) a duty to perform all acts and enforce all powers "in order to promptly collect and remit the Employers' Contributions" for payment of the ERS Bonds, *id.*; (v) a duty to "oppose any attempt by the Legislature of the Commonwealth . . . to make any other change in the [ERS Enabling Act] or any other relevant legislation that would have a material adverse effect on [the ERS] Bondholders," *id.* § 709(2); and (vi) a duty to "at all times, to the extent permitted by law, [to] defend, preserve and protect the assignment of the Pledged Property and all the rights of the Fiscal Agent, the Beneficiaries and the [Bondholders] under [the ERS Bond] Resolution against all claims and demands of all persons whomsoever," *id.* § 705.  ERS breached these duties and caused the unjust enrichment of third parties, including the Commonwealth, through the corresponding harm of the Bondholders.  Although it was insolvent, ERS failed to manage its assets and the Pledged Property so as to reasonably assure repayment of the principal and interest promised to the Bondholders through the Bond Resolution and related security agreement; failed to promptly collect and remit employer contributions to the Fiscal Agent; failed to pursue all legal remedies to collect delinquent or inadequate employer contributions; failed to transfer employer contributions to the respective collateral accounts on a monthly basis; failed to oppose the enactment of Joint Resolution 188 and Act 106, which stripped

8

ERS (and thus the Claimants) of all current and future assets; and failed to defend, preserve, and protect the assignment of the Pledged Property and the rights of the Bondholders.  As a result of ERS's failures, the Bondholders suffered predictable harm when the transfers—effectuated pursuant to the Post-Petition Legislation—contributed to or caused ERS's insolvency and eliminated the Bondholders' ability to obtain repayment of principal and interest.  Because ERS's breach of its duties caused unjust enrichment and harmed the Bondholders, the Bondholders are entitled to recover the assets transferred from ERS to the extent necessary to make them whole.

8.    ***ERS Should Be Estopped from Breaching Promises on Which the Bondholders Reasonably Relied.***    Under Puerto Rico law, a party is bound by promises made where the promisor has reason to assume the promisee will determinately rely and injustice would otherwise occur.  Restatement (Second) of Contracts § 90 (1981); comment (b) to § 90; *Santoni v. Fed. Deposit Ins. Corp.*, 677 F.2d 174, 178 (1st Cir. 1982) (noting that promissory estoppel under the Restatement and Puerto Rican law is the same); *Int'l Paper Co. v. Apr. Agro Indus.*, 747 F. Supp. 111, 118 (D.P.R. 1990) (same).  ERS made several definite and certain promises to the Bondholders and had reason to foresee that the Bondholders would rely on those promises to their detriment.  These include, but are not limited to:  (i) the promise to secure the ERS Bonds with the Pledged Property, (ii) the promise that ERS had power to grant liens on the Pledged Property, (iii) the promise that ERS had authority to issue the ERS Bonds, (iv) the promise to use the Pledged Property to make timely principal and interest payments on the ERS Bonds before ERS spent or used the funds for any other purpose, (v) the promise to transfer employer contributions to the Fiscal Agent in accordance with the ERS Bond Resolution, (vi) the promise to "promptly collect and remit" all employer contributions to the Fiscal Agent in accordance with its statutory obligations, Bond Resolution § 701, (vii) the promise to "perform all acts and enforce all its powers

9

. . . in order to promptly collect and remit the Employers' Contributions" for payment of the ERS

Bonds, *id.*, (viii) the promise to "oppose any attempt by the Legislature of the Commonwealth . .

. to make any other change in the [ERS Enabling Act] or any other relevant legislation that would

have a material adverse effect on [the ERS] Bondholders," *id.* § 709(2), and (ix) the promise "at

all times, to the extent permitted by law, [to] defend, preserve and protect the assignment of the

Pledged Property and all the rights of the Fiscal Agent, the Beneficiaries and the [Bondholders]

under [the ERS Bond] Resolution against all claims and demands of all persons whomsoever," *id.*

§ 705.  The Bondholders did in fact reasonably rely on ERS's promises, and this reliance resulted

in the loss of the Claimants' collateral, principal, and accrued interest when the Commonwealth,

with ERS's full support and cooperation, enacted the Post-Petition Legislation.  Injustice can be

avoided only by enforcing ERS's promises to the Bondholders and requiring ERS to make the

Bondholders whole.

9.      ***ERS's Conversion of Property.***  Article 1802 of the Civil Code of Puerto Rico

forbids the malicious and wrongful exercise of authority over another's property that permanently

or indefinitely deprives the rightful owner of its use and enjoyment. *See* 31 L.P.R.A. § 5141; *see

also Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc.*, 896 F.2d 656, 657–58 (1st Cir. 1990).  At

the Petition Date and at all times thereafter, the Claimants possessed (i) valid, perfected security

interests in and liens on the extensive security package granted to the Claimants by ERS as part of

the ERS bond transaction,[6] (ii) contract rights under the operative documents for the ERS Bonds,

---

[6] In its January 30, 2020 decision, the United States Court of Appeals for the First Circuit determined that the Claimants' lien on ERS's right to receive employers' contributions was unenforceable because ERS did not have a sufficient property interest in future employers' contributions on which it could grant a lien. *See In re Fin. Oversight and Mgmt. Bd. for P.R.*, 948 F.3d 457, 468–70 (1st Cir. 2020) (the "Section 552 Decision").  The ERS Bondholder Groups intend to seek review of the Section 552 Decision by the United States Supreme Court and thus maintain their position that they possessed a valid, enforceable lien on ERS right to receive postpetition employers' contributions. Even if the Section 552 Decision is affirmed, however, ERS's actions still amount to a breach of its obligations to the Claimants under the Bond Resolution and/or a conversion by wrongfully exercising authority over the Claimants' collateral existing on the ERS Petition Date and their contractual rights under the ERS bond documents.

(iii) contract rights under the ERS Bond Resolution, *as well as* (iv) the right to receive principal and interest payments.  ERS had a statutory and contractual duty to protect the Claimants' property interests in the Pledged Property and contract rights.  ERS, however, maliciously and wrongfully exercised authority over the Claimants' property by (i) knowingly and intentionally working with the Commonwealth to enact the Post-Petition Legislation, (ii) failing to fulfill its duty to oppose the enactment of the Post-Petition Legislation, and (iii) selling its assets and transferring its funds to the Commonwealth.  ERS's actions indefinitely deprived the Bondholders of their collateral and contract rights, and thus amount to conversion under Puerto Rico law.

10.     ***ERS's Harmful Fault or Negligence***.  Article 1802 of the Civil Code of Puerto Rico provides that a party that "by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."  31 L.P.R.A. § 5141.  ERS acted with fault or negligence when it failed to oppose the enactment of the Post-Petition Legislation despite its contractual obligation to do so, and when it aided the Commonwealth by selling its assets and transferring its funds to the Commonwealth.  Those omissions and actions foreseeably damaged the Bondholders by interfering with ERS's ability to pay the Bondholders principal and interest, depriving the Claimants of their collateral under the Bond Resolution, and leaving the Bondholders to receive pennies on the dollar for their original investment.

**B.  Supplemental Bases for Administrative Expense Claims Against the Commonwealth**

11.     ***The Commonwealth Must Indemnify the Bondholders for its Fraudulent Acquisition of ERS's Current and Future Assets.***  The Claimants reallege and incorporate by reference all of the allegations set forth in Paragraph 3 above.  For the reasons alleged in Paragraph 3, the transfers from ERS to the Commonwealth effectuated pursuant to the Post-Petition Legislation were fraudulent transfers under Puerto Rico law.  Under Puerto Rico law, "[a]ny person who may have acquired in bad faith things alienated in fraud of creditors must indemnify

11

the latter for the losses and damages caused to them by the alienation whenever, for any reason whatsoever, it should be impossible for him to return them." 31 L.P.R.A. § 3499.   The Commonwealth unlawfully and in bad faith acquired ERS's future and current assets through the Post-Petition Legislation.  As it had participated in the issuance of the ERS Bonds through the Government Development Bank for Puerto Rico and otherwise, acknowledged the existence of the ERS Bonds thereafter, and continuously made contributions over many years to ERS knowing that the contributions were used to cover ERS's debt service to the Bondholders, the Commonwealth was aware of ERS's obligations to the Bondholders under the Bond Resolution.   The Commonwealth was also aware that ERS was insolvent or rendered insolvent at the time of the Post-Petition Legislation, and yet it enacted the Post-Petition Legislation as a means to avoid those obligations and instead use ERS's assets for its own purposes.  As a result, ERS's insolvency was exacerbated, and ERS was rendered unable to make its contractual payments to Bondholders. The Commonwealth therefore owes a duty of indemnification to the Bondholders for "the losses and damages caused to them by the alienation" of ERS's assets under the Post-Petition Legislation. 31 L.P.R.A. § 3499.

12.    ***The Commonwealth Aided and Abetted ERS's Breach of Contractual, Statutory, and Other Duties.***  The Commonwealth knowingly participated in ERS's breach of the contractual, statutory, and other duties ERS owed to the Claimants.  The Claimants reallege and incorporate by reference all of the allegations set forth in Paragraphs 3 through 10 above.  For decades, the Commonwealth—which is responsible for approximately 59% of the employers' contributions owed to ERS—has failed to make all the employers' contributions it is statutorily obligated to pay to ERS.  The Commonwealth's chronic underfunding of ERS led to the financial difficulties that caused ERS to seek funding through the sale of the ERS Bonds.  And as of the Petition Date, the

12

Commonwealth owed hundreds of millions of dollars to ERS in unpaid employers' contributions. In July 2017, facing the consequences of its own severe mismanagement, the Commonwealth passed the Post-Petition Legislation, which—despite ERS's obligations to the Bondholders— ordered ERS to sell its assets and transfer the net cash proceeds, in addition to any available funds, into an account as part of the General Fund for fiscal year 2017-2018.   The Post-Petition Legislation further stipulated that the Commonwealth would no longer make employers' contributions to ERS and directed that all future employers' contributions made by the other public employers should be made to the Commonwealth itself.   At the time of enactment of the Post-Petition Legislation, and at all other relevant times, the Commonwealth was aware of ERS's statutory obligations to the Bondholders and those it had assumed by entering into the Bond Resolution.   Yet no or insufficient consideration was provided to ERS or the Bondholders in exchange for the collateral transferred to the Commonwealth's General Fund.   The effect of this legislation was to strip ERS of its assets, to divert ERS's employers' contributions away from the reach of the Bondholders for the benefit of the Commonwealth, to excuse the Commonwealth from paying the debts it owed ERS, and to evade ERS's obligations to the Bondholders.   This legislation exacerbated ERS's insolvency and damaged the Bondholders.

13.   ***The Commonwealth's Tortious Interference with the ERS Bond Resolution.*** Article 1802 of the Civil Code of Puerto Rico forbids a party with knowledge of a contract's existence from tortiously interfering with the contract.   *See* 31 L.P.R.A. § 5141; *see also Gen. Office Prods. Corp. v. A.M. Capen's Sons, Inc.*, 780 F.2d 1077, 1081–82 (1st Cir. 1986) (citing *Gen. Office Prods. Corp. v. A.M. Capen's Sons, Inc.*, 115 D.P.R. 553, 558–59, 15 P.R. Offic. Trans. 727, 733–34 (P.R. 1984)).   The ERS Bond Resolution constitutes a valid, binding contract between ERS and the Claimants.   Bond Resolution § 102.   Among other things, the Bond

13

Resolution entitled the Bondholders to timely principal and interest payments on the ERS Bonds, granted the Claimants a lien on all Pledged Property, and required ERS to actively protect the Bondholders' rights under the Bond Resolution. *Id.* §§ 501, 701, & Exh. B, VI-36. The Commonwealth nonetheless tortiously interfered with the Bond Resolution when it enacted the Post-Petition Legislation, which diverted the Pledged Property to the Commonwealth, directed ERS to sell its assets and transfer all its funds to the Commonwealth, and excused the Commonwealth from paying the debts it owed ERS. Upon information and belief, at the time it enacted the Post-Petition Legislation, the Commonwealth was aware of ERS's obligations to the Bondholders under the Bond Resolution and of the effect the legislation would have on those obligations, and it enacted the Post-Petition Legislation as a means to evade ERS's obligations to the Bondholders, to excuse itself from paying the debts it owed ERS, and to use ERS's assets for the Commonwealth's purposes. These actions damaged the Bondholders by interfering with ERS's ability to pay the Bondholders principal and interest, depriving the Claimants of their collateral, and leaving the Bondholders to receive pennies on the dollar for their investment.

14. ***The Commonwealth's Conversion of Property.*** Article 1802 of the Civil Code of Puerto Rico forbids the malicious and wrongful exercise of authority over another's property that permanently or indefinitely deprives the rightful owner of its use and enjoyment. *See* 31 L.P.R.A. § 5141; *see also Barretto Peat, Inc. v. Luis Ayala Colon Sucrs., Inc.*, 896 F.2d 656, 657–58 (1st Cir. 1990). At the Petition Date and at all times thereafter, the Claimants possessed (i) valid, perfected security interests in and liens on the Pledged Property,[7] (ii) contract rights under the

---

[7] As noted in footnote 6 above, the ERS Bondholder Groups intend to seek review of the First Circuit's Section 552 Decision and thus maintain their assertion that they possessed valid, enforceable liens on ERS's right to receive postpetition employers' contributions. Even if the Section 552 Decision is affirmed, however, the Commonwealth's actions still amount to a breach of its obligations to the Claimants under the Bond Resolution and/or a conversion by wrongfully exercising authority over the Claimants collateral existing on the ERS Petition Date and their contractual rights under the ERS bond documents.

operative documents governing the ERS Bonds; (iii) contract rights under the ERS Bond Resolution, *as well as* (iv) the right to receive principal and interest payments. The Commonwealth maliciously and wrongfully exercised authority over the Claimants' property and violated the Bondholders' contract rights when it enacted the Post-Petition Legislation, which directed ERS to sell its assets and transfer its funds to the Commonwealth, purported to extinguish the Commonwealth's debt to ERS (an accounts-receivable asset of ERS on which the Bondholders had a lien as of the Petition Date), ordered Commonwealth and non-Commonwealth public employers to cease paying employer contributions to ERS, and directed those payments to the Commonwealth's General Fund instead of ERS. The Post-Petition Legislation thereby intentionally and indefinitely deprived the Claimants of their collateral and contract rights.

15. ***The Commonwealth' Harmful Fault or Negligence.*** Article 1802 of the Civil Code of Puerto Rico provides that a party that "by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A. § 5141. The Commonwealth acted with fault or negligence when it enacted the Post-Petition Legislation, which, by directing ERS to sell its assets and transfer its funds to the Commonwealth, ordering Commonwealth and non-Commonwealth public employers to cease paying employer contributions to ERS, and instead directing those payments to the Commonwealth's General Fund, foreseeably damaged the Bondholders by interfering with ERS's ability to pay the Bondholders principal and interest, depriving the Claimants of their collateral under the Bond Resolution, and leaving the Bondholders to receive pennies on the dollar for their original investment.

16. ***ERS's Breach of Duties It Owed to the Bondholders Caused Unjust Enrichment of the Commonwealth.*** The Claimants reallege and incorporate by reference the allegations in Paragraph 7 above. Because ERS's breach of its duties caused unjust enrichment of the

Commonwealth and corresponding harm to the Bondholders, the Bondholders are entitled to recover the assets transferred from ERS to the Commonwealth to the extent necessary to make the Bondholders whole.

17.    ***The Commonwealth Holds ERS's Assets for the Benefit of the Bondholders***. Through the enactment of the Post-Petition Legislation, ERS transferred substantial assets to the Commonwealth in violation of ERS's automatic stay, the United States and Puerto Rico Constitutions, the Bondholders' contract rights, and other legal rights. ERS was insolvent or rendered insolvent by the transfers, making it impossible for ERS to pay the Bondholders what they were owed and unjustly enriching the Commonwealth at the Bondholders' expense. Moreover, the Post-Petition Legislation also transferred ERS's functions and employees to the Commonwealth, making the Commonwealth the successor by statute to ERS. The Commonwealth is therefore holding ERS's assets—including the pay-go payments that the Post-Petition Legislation substituted for the employers' contributions—for the benefit of the Bondholders, who are entitled to recover the funds, either in constructive trust, under an equitable lien, under the doctrine of unjust enrichment as adopted by Puerto Rico courts, or as successor by statute to ERS.

## II.    SUPPLEMENTAL ALLEGATIONS IN SUPPORT OF PROOFS OF CLAIM

18.    As explained in paragraph 29 of the addenda to the proofs of claim filed by the members of the ERS Bondholder Group represented by Jones Day, paragraph 5(b)(iii) of the addenda to the proofs of claim filed by the members of the ERS Bondholder Group represented by White & Case, paragraph 13 of the addenda to the proofs of claim filed by the Fiscal Agent against ERS (Claim No. 16777), and paragraph 17 of the addenda to the proofs of claim filed by the Fiscal Agent against the Commonwealth (Claim Nos. 16775 and 32004), ERS and the Commonwealth damaged the Bondholders through the enactment of the Post-Petition Legislation, the passage of various other unlawful acts and executive orders, and other unlawful actions.

16

### A.  Supplemental Allegations to Proofs of Claim Against ERS

19.     ***Supplemental Bases for Claims Asserted in Paragraphs 3 through 10 Above***:  The Claimants hereby incorporate by reference the supplemental allegations in paragraphs 3 through 10 of this Supplement and reallege them here as supplemental allegations to the Claim Addenda. To the extent any of the Claimants' claims do not arise postpetition or are not entitled to administrative expense treatment, the Claimants assert them as prepetition claims.

20.     ***Counterclaims Asserted in the Ultra Vires Adversary Proceedings***:   Attached hereto as <u>Exhibit 1</u> is the *Answer and Counterclaims* filed by certain members of the ERS Bondholder Groups in Adv. Proc. Nos. 19-359 (D.P.R.) [ECF No. 21], which sets forth certain counterclaims (the "*Ultra Vires* Counterclaims") against ERS and the Commonwealth in connection with adversary proceedings addressing the contention by ERS and the Commonwealth that the ERS Bonds were *ultra vires*.  *See* Adv. Proc. Nos. 19-356, 19-357, 19-359, and 19-361 (D.P.R.) (the "*Ultra Vires* Adversary Proceedings").   The ERS Bondholder Groups hereby incorporate the *Ultra Vires* Counterclaims by reference into this Supplement and assert them as supplemental bases for their claims against ERS. [8]

21.     ***ERS's Breach of Its Representations and Covenant that the Right to Receive Employers' Contributions Was A Legal Asset of the System On Which It Could Grant Liens***:  In the Bond Resolution, ERS represented and covenanted that the Pledged Property, which included ERS's right to receive future employers' contributions, was a legal asset of ERS on which ERS had the power to grant liens.  *See, e.g.*, Bond Resolution p. VI-1, § 705.  In the Section 552 Decision, however, the First Circuit determined that, as set forth in the Section 552 Decision,

---

[8] The Fiscal Agent's arguments in response to *ultra vires* claims are based solely on the Uniform Commercial Code,  including Section 8-202.

ERS's interest in the right to receive employers' contributions did not amount to property, and thus ERS did not have power to grant liens on this interest.  *See* 948 F.3d at 468-70.  If the Section 552 decision is upheld, ERS's representations will have been false, and ERS will have breached its covenant regarding its power to grant liens on the Pledged Property.  The Bondholders were damaged by ERS's breach and their reasonable reliance on ERS's representations and covenants.

22.  ***ERS's Breach of Its Representations and Covenant that It Had Authority to Issue the ERS Bonds***:  In the Bond Resolution, ERS represented and covenanted that it had authority to issue the bonds and that the bonds were valid.  *See, e.g.*, Bond Resolution § 705.  ERS, the Oversight Board, and others, however, are now challenging the validity of the ERS Bonds, arguing that ERS's issuance of the ERS Bonds was *ultra vires*.  If a court determines in a final judgment that the ERS Bonds were not validly issued, ERS's representations regarding the validity of the ERS Bonds will have been false, and ERS will have breached its covenant regarding the validity of the ERS Bonds.  The Bondholders were damaged by ERS's breach and their reasonable reliance on ERS's representations and covenants.

23.  ***ERS's "Dolo" In Inducing the Bondholders to Buy the ERS Bonds***:  Puerto Rico law prohibits "dolo," or "deceit," in the formation of a contract.  31 L.P.R.A. § 3408; *Portugues-Santana v. Rekomdiv Intern.*, 657 F.3d 56, 62 (1st Cir. 2011).  The party alleging such deceit must demonstrate:  "'(1) a false representation by the defendant; (2) the plaintiff's reasonable and foreseeable reliance thereon; (3) injury to the plaintiff as a result of the reliance; and (4) an intent to defraud.'"  *Id.* (quoting *P.R. Electric Power Auth. v. Action Refund*, 515 F.3d 57, 66 (1st Cir. 2008)).  ERS made several representations in connection with the formation of the Bond Resolution and the issuance of the ERS Bonds on which the Bondholders reasonably relied.  These included, without limitation:

18

a. ERS's representations and covenant in the Bond Resolution that its statutory right to receive employers' contributions was a "legal asset of [ERS]" and that ERS was "duly authorized under the [Enabling] Act to create and issue the Bonds and to adopt this Resolution and to create a security interest on the Pledged Property in the manner and to the extent provided in this Resolution."  Bond Resolution p. VI-15, § 705;

b. An opinion by ERS's General Counsel, on behalf of ERS, that the Bond Resolution was a "legal, valid, and binding agreement[ ] of" ERS, that "[t]he [Bond] Resolution create[d] a valid and binding security interest in the Revenues and other Pledged Property assigned and pledged by [ERS] to the Fiscal Agent pursuant to the Resolution." Op. of General Counsel to the System at 2–3 (Jan. 31, 2008), attached hereto as Ex. C to Ex. 1;

c. An opinion by ERS's outside counsel, as the agent of ERS, to the Fiscal Agent that the ERS Bond Resolution "create[d] a valid security interest for the benefit of the Owners of the Bonds on the Pledged Property."  Op. of Fiddler Gonzalez & Rodriguez to Bank of New York Mellon, et al., at 1 (Jan. 31, 2008), attached hereto as Ex. E to Ex. 1;

d. A representation and warranty in ERS's purchase contract with the underwriters of the ERS Bonds ("Purchase Contract"), attached hereto as Exhibit 2, that ERS "has full legal right, power and authority to adopt the Bond Resolution, [and] to enter into . . . a Security Agreement . . . between [ERS] and The Bank of New York Mellon."  Purchase Contract ¶ 6(a), attached hereto as Ex. 2;

e. ERS's "Particular Covenants" that ERS was "duly authorized under the [Enabling] Act to create and issue the Bonds and to adopt this Resolution and to create a security interest on the Pledged Property in the manner and to the extent provided in this Resolution," and that "[t]he Bonds are and will be the valid and legally binding special obligations of the System, enforceable in accordance with their terms and the terms of this Resolution." Bond Resolution § 705;

f. A statement by ERS's General Counsel, on behalf of ERS, that the ERS Bond Resolution was a "legal, valid, and binding agreement[ ] of" ERS, that "the Bonds have been duly and validly authorized and issued," and that "[a]ll legislation . . . necessary to fulfill in all material respects the terms and conditions of the Bonds and to carry out the transactions contemplated by the" bond issuance is "in full force and effect . . . and no  further legislation . . . is required for such purposes." Op. of General Counsel to the System at 2–3 (Jan. 31, 2008), attached hereto as Ex. C to Ex. 1;

g. A statement by ERS's outside counsel, as the agent of ERS, stating to the Fiscal Agent that "the Bonds are valid and binding" ERS obligations. Op. of Fiddler Gonzalez & Rodriguez to Bank of New York, at 1–2 (Jan. 31, 2008), attached hereto as Ex. E to Ex. 1; and

19

      h.   Representations and warranties in ERS's Purchase Contract stating that the Bonds were "valid, binding and legally enforceable obligations of the System," and that, with one limited exception, ERS did not need the "approval, permit, consent, or authorization of, or registration or filing with, any governmental or public agency or authority not already obtained or made . . . in connection with the . . . execution or adoption and delivery by the System of, or the due performance of its obligations under this Purchase Contract, the Bonds, the Bond Resolution, the MCDA and the Security Agreement." Purchase Contract ¶ 6(b), (d), attached hereto as Ex. 2.

By including these representations in the Bond Resolution and the documentation supporting the issuance of the ERS Bonds, ERS intended that prospective purchasers of the ERS Bonds would rely on these representations, and the Bondholders did actually and reasonably rely on these representations when purchasing ERS Bonds. ERS, however, contended in pursuit of the Section 552 Decision that it did not have the ability to grant liens on ERS's right to receive employer contributions and also contends before this Court that its issuance of the ERS Bonds was *ultra vires*. If the Section 552 Decision is upheld and/or a court determines in a final judgment that that the ERS Bonds were *ultra vires*, the representations and statements above will have been false. If this result occurs, it will also be apparent that ERS knew or should have known of the falsity of its statements and representations, given that ERS has contended before this Court and the First Circuit that the ERS Bonds were *ultra vires* and that ERS did not have the ability to grant valid liens on the Pledged Property. If the Section 552 Decision is upheld and/or a court determines in a final judgment that the ERS Bonds were *ultra vires*, the Bondholders will be damaged, including by the reduction of their Pledged Property, the decline in value of the ERS Bonds, and any principal and interest payments the Bondholders may recover.

     24.   ***ERS's Negligent Misrepresentations***:  Puerto Rico law imposes liability for negligent misrepresentations made by a party that causes damage to another. 31 L.P.R.A. § 5141; *MMB Dev. Grp., Ltd. v. Westernbank P.R.*, 762 F. Supp. 2d 356, 369 (D.P.R. 2010). In connection with the issuance of the ERS Bonds, ERS made several representations about its ability to grant a

20

lien on its statutory right to receive future employers' contributions and the validity of the ERS
Bonds which, if they turn out to be false and do not amount to "dolo," were at least negligent.
These include, without limitation, the statements identified Paragraph 23 above.  In making and
authorizing its agents to make these statements, ERS knew and intended that purchasers of the
ERS Bonds in both the primary and secondary markets would rely on the statements' accuracy for
the particular purpose of deciding whether or not to purchase ERS Bonds.  In making and
authorizing its agents to make these statements, ERS had a duty not to make false representations
or material omissions.  Had ERS not represented that the lien it purported to grant on ERS's right
to receive future employers' contributions was valid and enforceable, or that the ERS Bonds were
validly issued, the Bondholders would not have purchased the ERS Bonds.  The Bondholders
believed and relied upon the truth of each of the statements.  ERS, the Oversight Board, and others,
however, contended before the First Circuit that ERS could not grant a lien on its right to receive
employers' contributions because that interest did not amount to property, and the First Circuit so
held in the Section 552 Decision, and contend before this court that the ERS Bonds were *ultra
vires*.  If the Section 552 Decision is upheld on review and/or a court determines in a final judgment
that the ERS Bonds were *ultra vires*, then ERS's statements and those of its agents, will have been
false.  Moreover, if the Section 552 Decision is upheld or the ERS Bonds are declared *ultra vires*,
ERS through reasonable care should have known of that lack of authority when it issued the ERS
Bonds and made the statements above.  A reasonable issuer of securities would have ensured that
it had the power to grant a lien on the central component of the collateral package and that it had
the required statutory authority to issue bonds before accepting and spending nearly $3 billion in
investor funds.  If the lien on ERS's right to receive future employers' contributions is
unenforceable and/or the ERS Bonds are declared *ultra vires*, then the Bondholders will suffer

damages from ERS's misrepresentations, including declines in value in the ERS Bonds and any

principal and interest payments that the Bondholders may recover on the ERS Bonds.

25. ***The ERS Bond Resolution and the Related Bond Documents Should Be***

***Rescinded Because They Were Premised Upon A Mutual Mistake***:  Even if the Court determines

that ERS's misrepresentations about its ability to grant liens on ERS's right to receive employers'

contributions and/or the validity of the ERS Bonds did not amount to "dolo" or negligent

misrepresentations, it should still rescind the Bond Resolution and the ERS Bonds to the extent

they were premised on a mutual mistake.  As detailed in Paragraph 23 above, in the Bond

Resolution and elsewhere, ERS represented that its right to receive employers' contributions was

a legal asset of the system, that it had power to place liens on that asset, and that the bonds were

valid and enforceable.  *See, e.g.*, Bond Resolution p. VI-15, § 705.  If the First Circuit's Section

552 Decision is upheld and/or a court determines in a final judgment that the ERS Bonds were

*ultra vires*, those representations will have been false.  To the extent a court further determines

that ERS was not aware of the falsity of one or both of these representations, then ERS must have

been mistaken about the nature of its interest in the employers' contributions, its ability to grant

liens on its interest, and/or its authority to issue the ERS Bonds.  The Bondholders, having

exercised reasonable diligence, relied on ERS's representations and thus believed the right to

receive employers' contributions was a legal asset of ERS, that ERS could grant liens on this

interest, and that the ERS Bonds were valid.  Each of these understandings was a material aspect

of the Bond Resolution and the ERS Bonds, and the Bondholders would not have purchased the

ERS Bonds if they had believed that the lien on ERS's right to receive future employer

contributions or the ERS Bonds themselves were unenforceable.  Thus, to the extent the Bond

Resolution, the ERS Bonds, and the related contract documents were premised on a mutual

mistake, they should be rescinded or reformed, the parties should be returned to the *status quo ante*, and ERS should make restitution to the Bondholders.  *See, e.g.*, 31 L.P.R.A. §§ 3491, 3492.

26.     ***ERS's Breach of Warranties in the Purchase Contracts***:  In the Purchase Contract with the underwriters of the ERS Bonds, ERS made representations and warranties that the ERS Bonds were "valid, binding and legally enforceable obligations of the System," that ERS "ha[d] full legal right, power and authority to adopt the Bond Resolution, [and] to enter into . . . a Security Agreement . . . between [ERS] and The Bank of New York Mellon . . . and to issue and deliver the Bonds to the Underwriters," and that with one limited exception, it did not need the "approval, permit, consent, or authorization of, or registration or filing with, any governmental or public agency or authority not already obtained or made . . . in connection with the execution or adoption and delivery by the System of, or the due performance of its obligations under this Purchase Contract, the Bonds, the Bond Resolution, the MCDA and the Security Agreement."  Purchase Contract ¶ 6(b), (d) attached hereto as Ex. 2.  As subsequent purchasers of the ERS Bonds, the members of the ERS Bondholder Groups are the successors and assigns of the underwriters and are entitled to assert rights thereunder.  Purchase Contract ¶ 13, attached hereto as Ex. 2.  To the extent the Section 552 Decision is affirmed and/or a court concludes in a final judgment that the ERS Bonds were *ultra vires*, these warranties will be breached and ERS will be liable for any damages suffered by the Bondholders as a consequence of ERS's breach.

27.     ***ERS's Taking of the Claimants' Property Without Just Compensation Pursuant to the Moratorium Act and EO-2016-31***:  The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V (the "U.S. Takings Clause").  Article II, Section 9 of the Puerto Rico Constitution provides that "[p]rivate property shall not be taken or damaged for public use except

upon payment of just compensation and in the manner provided by law."  P.R. Const. art. II, § 9 (the "P.R. Takings Clause").   Prior to the ERS Petition Date, the Claimants possessed a constitutionally protected property interest in the form of valid, perfected security interests in and liens on the Pledged Property as well as the contractual right to timely payment of principal and interest.  On April 6, 2016, the Commonwealth enacted Act No. 21-2016, called the "Puerto Rico Emergency Moratorium and Financial Rehabilitation Act" ("Moratorium Act").  The Moratorium Act purported to give the Governor unfettered authority to issue executive orders declaring a complete moratorium on payments by certain government entities on outstanding debt obligations if that entity were in a state of emergency.  Id. § 201(a).  The Moratorium Act also provided for a blanket stay on creditor remedies during the moratorium period, including the commencement or continuation of any judicial proceeding which could result in recovery from covered entities, an order related to covered debt obligations, or the application of any property or revenues related to covered debt obligations.  Id. § 201(b).  On June 30, 2016, Governor Garcia Padilla issued EO-2016-31 pursuant to Sections 201 and 203 of the Moratorium Act.  The order suspended "any obligation of [the] ERS[ ] pursuant to the [Bond Resolution] to transfer contributions made by employers that participate in [the] ERS, and any assets in lieu thereof or derived thereunder paid to [the] ERS under [Act 447] to the [Fiscal Agent]."   EO-2016-31 also suspended the Commonwealth's obligations to "make or transfer Employer Contributions to ERS up to the amount of debt service payable by ERS during fiscal year 2016-2017."   Id.  The order did not, however, suspend the obligation of non-Commonwealth employers to make employers' contributions or the payment of other obligations of ERS such as benefit payments to retirees.  Id. at 3.  ERS continued to receive certain contributions but did not transfer them to the Fiscal Agent as required by the Bond Resolution.  Moreover, although after litigation the parties settled a dispute

24

over the employers' contributions, ERS did not comply with that settlement.  To the extent the

Moratorium Act and EO-2016-31 impaired or eliminated the Claimants' collateral or access

thereto and the Bondholders' contractual right to timely payment of principal and interest, it

violated the U.S. Takings Clause and P.R. Takings Clause.  Furthermore, to the extent the ERS

failed to receive employers' contributions from employers that were not eliminated by the

Moratorium Act, such employers' contributions remained owed and calculated as of the Petition

Date and constituted Pledged Property.

### B.  Supplemental Basis for Prepetition Claims Against the Commonwealth

28.     ***Supplemental Bases for Claims Asserted in Paragraphs 11 through 17 Above***:
The Claimants hereby incorporate by reference the supplemental allegations in paragraphs 11

through 17 of this Supplement and reallege them here as supplemental allegations to the Claim

Addenda.  To the extent any of the Claimants' claims do not arise postpetition or are not entitled

to administrative expense treatment, the Claimants assert them as prepetition claims.

29.     ***Counterclaims Asserted in the Ultra Vires Litigation***:  The ERS Bondholder

Groups hereby incorporate the *Ultra Vires* Counterclaims by reference into this Supplement and

assert them as supplemental bases for their Claims against the Commonwealth.[9]

30.     ***The Commonwealth's Taking of the Claimants' Property Without Just***

***Compensation Pursuant to the Moratorium Act and EO-2016-31***:  The Fifth Amendment to the

United States Constitution provides that "private property [shall not] be taken for public use,

without just compensation." U.S. Const. amend. V.  Article II, Section 9 of the Puerto Rico

Constitution provides that "[p]rivate property shall not be taken or damaged for public use except

---

[9] The Fiscal Agent's arguments in response to *ultra vires* claims are based solely on the Uniform Commercial
Code,  including Section 8-202.

upon payment of just compensation and in the manner provided by law." P.R. Const. art. II, § 9.
Prior to the Petition Date, the Claimants' possessed a constitutionally protected property interest
in the form of valid, perfected security interests in and liens on the Pledged Property as well as the
contractual right to timely payment of principal and interest. On April 6, 2016, the Commonwealth
enacted the Moratorium Act. The Moratorium Act purported to give the Governor unfettered
authority to issue executive orders declaring a complete moratorium on payments by certain
government entities on outstanding debt obligations if that entity were in a state of emergency. *Id.*
§ 201(a). The Moratorium Act also provided for a blanket stay on creditor remedies during the
moratorium period, including the commencement or continuation of any judicial proceeding which
could result in recovery from covered entities, an order related to covered debt obligations, or the
application of any property or revenues related to covered debt obligations. *Id.* § 201(b). On June
30, 2016, Governor Garcia Padilla issued EO-2016-31 pursuant to Sections 201 and 203 of the
Moratorium Act. The order suspended "any obligation of [the] ERS[ ] pursuant to the [Bond
Resolution] to transfer contributions made by employers that participate in [the] ERS, and any
assets in lieu thereof or derived thereunder paid to [the] ERS under [Act 447] to the [Fiscal
Agent]." EO-2016-31 also suspended the Commonwealth's obligations to "make or transfer
Employer Contributions to ERS up to the amount of debt service payable by ERS during fiscal
year 2016-2017." *Id.* The order did not, however, suspend the obligation of non-Commonwealth
employers to make employers' contributions or the payment of other obligations of ERS such as
benefit payments to retirees. *Id.* at 3. ERS continued to receive certain contributions but did not
transfer them to the Fiscal Agent as required by the Bond Resolution. Moreover, although after
litigation the parties settled a dispute over the employers' contributions, ERS did not comply with
that settlement. To the extent the Moratorium Act and EO-2016-31 impaired or eliminated the

26

Claimants' collateral or access thereto and the Bondholders' contractual right to timely payment

of principal and interest, it violated the U.S. Takings Clause and P.R. Takings Clause.

Furthermore, to the extent ERS failed to receive employers' contributions from employers that

were not eliminated by the Moratorium Act, such employers' Contributions remained owed and

calculated as of the Petition Date and constituted Pledged Property.

31.     ***The Commonwealth's Taking of the Claimants' Property Through Revisions to
the ERS Enabling Act or Other Conduct***.   The U.S. Takings Clause provides that "private

property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.

The P.R. Takings Clause provides that "[p]rivate property shall not be taken or damaged for public

use except upon payment of just compensation and in the manner provided by law."  P.R. Const.

art. II, § 9.  Prior to the Petition Date, the Claimants possessed a constitutionally protected property

interest in the form of valid, perfected security interests in and liens on the Pledged Property as

well as the contractual right to timely payment of principal and interest.  Prior to the Petition Date,

employers, including the Commonwealth, owed ERS substantial calculated but unpaid employers'

contributions in fixed amounts.  For example, Act 116 states that the Puerto Rico Aqueduct and

Sewer Authority owed ERS $833,219,000 and the State Insurance Fund owed ERS $984,943,000.

Upon information and belief, these amounts and other amounts owed pursuant to Section 2-116 of

the ERS Enabling Act were never paid to ERS and remained calculated and owing to ERS as of

the Petition Date.  Such amounts constitute Pledged Property under the Bond Resolution in which

the Claimants had a perfected security interest, regardless of any impact of the Section 552

Decision on employers' contributions based on postpetition work.  However, to the extent

employer contributions were eliminated or cancelled through prepetition revisions to the ERS

Enabling Act or other prepetition conduct, the Bondholders were damaged thereby and are entitled to just compensation for the taking of their collateral.

## SUPPORTING DOCUMENTATION

32.    Copies of the following supporting documents are attached hereto:  (1) the *Ultra Vires* Counterclaims, along with the exhibits thereto, as Exhibit 1; and (2) the Purchase Contract as Exhibit 2.  The Claimants reserve the right to supplement these documents.

## RESERVATION OF RIGHTS

33.    The Claimants hereby incorporate by reference all reservations of rights contained in the Claim Addenda and the Administrative Expense Motions.

34.    The Claimants do not waive, and expressly reserve, all rights, claims, counterclaims, defenses and remedies at law or in equity that they have or may have against ERS and the Commonwealth and/or any other person or entity.  The Bondholders reserve the right to assert additional administrative expenses and prepetition claims against ERS and the Commonwealth of any nature for any other amounts, and to amend, modify, and/or supplement this Supplement, the Claims, and the Administrative Expense Motions.

**WHEREFORE**, the Claimants respectfully request that this Court allow the Claimants' claims as prepetition, postpetition, and administrative expense claims, with any other appropriate relief.

Dated:  March 25, 2020

Respectfully submitted,

/s/ *Alfredo Fernández-Martínez*

Alfredo Fernández-Martínez

**DELGADO & FERNÁNDEZ, LLC**

PO Box 11750

Fernández Juncos Station

San Juan, Puerto Rico 00910-1750

Tel: (787) 274-1414

Fax: (787) 764-8241

afernandez@delgadofernandez.com

USDC-PR 210511

/s/ *Bruce Bennett*

Bruce Bennett (pro hac vice)

**JONES DAY**

555 South Flower Street Fiftieth Floor

Los Angeles, California 90071

Tel: (213) 489-3939

Fax: (213) 243-2539

bbennett@jonesday.com

Benjamin Rosenblum (pro hac vice)

**JONES DAY**

250 Vesey Street

New York, New York 10281

Tel. (212) 326-3939

Fax: (212) 755-7306

brosenblum@jonesday.com

Geoffrey S. Stewart (pro hac vice)

Beth Heifetz (pro hac vice)

Sparkle L. Sooknanan (pro hac vice)

**JONES DAY**

51 Louisiana Ave. N.W. Washington, DC 20001

Tel. (202) 879-3939

Fax: (202) 626-1700

gstewart@jonesday.com

bheifetz@jonesday.com

ssooknanan@jonesday.com

*Counsel for Bondholders Andalusian Global*
*Designated Activity Company, Crown Managed*
*Accounts for and on behalf of Crown/PW SP,*
*Glendon Opportunities Fund, L.P., LMA SPC for*
*and on behalf of Map 98 Segregated Portfolio,*

29

*Mason Capital Master Fund L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd., and SV Credit, L.P.*

/s/ *Alicia I. Lavergne-Ramírez*

José C. Sánchez-Castro USDC-PR 213312
jsanchez@sanpir.com
Alicia I. Lavergne-Ramírez USDC-PR 215112
alavergne@sanpir.com
**SÁNCHEZ PIRILLO LLC**
270 Muñoz Rivera Avenue, Suite 1110, San Juan,
PR 00918
Tel: (787) 522-6776
Fax: (787) 522-6777

/s/ *Jason N. Zakia*

John K. Cunningham (pro hac vice)
Glenn M. Kurtz (pro hac vice)
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10036
Tel: (212) 819-8200
Fax: (212) 354-8113
jcunningham@whitecase.com
gkurtz@whitecase.com

Jason N. Zakia (pro hac vice)
Cheryl T. Sloane (pro hac vice)
**WHITE & CASE LLP**
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel: (305) 371-2700
Fax: (305) 358-5744
jzakia@whitecase.com
csloane@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund,
Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc.,
Puerto Rico AAA Portfolio Target Maturity Fund,
Inc., Puerto Rico Fixed Income Fund, Inc., Puerto
Rico Fixed Income Fund II, Inc., Puerto Rico Fixed
Income Fund III, Inc., Puerto Rico Fixed Income
Fund IV, Inc., Puerto Rico Fixed Income Fund V,
Inc., Puerto Rico GNMA & U.S. Government
Target Maturity Fund, Inc., Puerto Rico Investors
Bond Fund I, Puerto Rico Investors Tax-Free Fund,
Inc., Puerto Rico Investors Tax-Free Fund, Inc. II,
Puerto Rico Investors Tax-Free Fund III, Inc.,*

*Puerto Rico Investors Tax-Free Fund IV, Inc.,
Puerto Rico Investors Tax-Free Fund V, Inc.,
Puerto Rico Investors Tax-Free Fund VI, Inc.,
Puerto Rico Mortgage-Backed & U.S. Government
Securities Fund, Inc., Tax-Free Puerto Rico Fund,
Inc., Tax- Free Puerto Rico Fund II, Inc., and Tax-
Free Puerto Rico Target Maturity Fund, Inc.*

**SEPULVADO, MALDONADO & COURET**

/s/ *Albéniz Couret-Fuentes*

Albéniz Couret-Fuentes
USDC-PR Bar No. 222207
304 Ponce de León Ave. – Suite 990
San Juan, PR 00918
Telephone: (787) 765-5656
Facsimile: (787) 294-0073
Email: acouret@smclawpr.com

**REED SMITH LLP**

/s/ *Luke A. Sizemore*

Eric A. Schaffer (pro hac vice)
Luke A. Sizemore (pro hac vice)
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email: eschaffer@reedsmith.com
Email: lsizemore@reedsmith.com

C. Neil Gray (pro hac vice)
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: cgray@reedsmith.com

*Counsel to The Bank of New York Mellon, as fiscal agent*