# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>            as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>            Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**REPLY IN FURTHER SUPPORT OF AMENDED CROSS-MOTION AND STATEMENT IN SUPPORT ON BEHALF OF ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AMBAC ASSURANCE CORPORATION, AND FINANCIAL GUARANTY INSURANCE COMPANY WITH RESPECT TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO AMEND TENTH AMENDED CASE MANAGEMENT PROCEDURES AND ADMINISTRATIVE PROCEDURES REGARDING DISCLOSURE REQUIREMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................3

    I.    Retroactive Disclosure of the "Vintage" and Issuer of Bonds Should Be Required. ...................................................................................................3

    II.    Disclosure of Cross-Holdings Should Be Required....................................4

    III.    COFINA Restructuring Bond Holdings Should be Disclosed.....................6

    IV.    PRIFA and CCDA Bond Holdings Should Be Disclosed. ..........................9

    V.    The Objectors' Other Arguments are Both Procedurally and Substantively Infirm...................................................................................10

CONCLUSION...............................................................................................................................13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases:**

*In re Northwest Airlines Corp.*,
 363 B.R. 704 (Bankr. S.D.N.Y. 2007) ........................................................................2, 11

*In re Northwest Airlines Corp.*,
 Case No. 05-19730, ECF No. 4854 (Bankr. S.D.N.Y. Feb. 13, 2007) ...............................1

*In re Washington Mutual*,
 419 B.R. 271 (Bankr. D. Del. 2009) ...................................................................................11

*In re Financial Oversight & Mgmt. Bd. for P.R.*,
 583 B.R. 626 (D.P.R. 2017) ...............................................................................................11

*In re W.R. Grace & Co.*,
 2008 WL 4571559 (Bankr. D. Del. Oct. 10, 2008) ..........................................................11

**Statutes and Other Authorities:**

Fed. R. Bankr. P. 2019(a) ................................................................................................................6

Fed. R. Bankr. P. 2019(a)(1) ..........................................................................................................3

Fed. R. Bankr. P. 2019(b) ..............................................................................................................4

Fed. R. Bankr. P. 2019(c)(2)(B) ....................................................................................................3

Sparkle Alexander, *The Rule 2019 Battle: When Hedge Funds Collide with the
 Bankruptcy Code*, 73 Brook. L. Rev. 1411, 1416-17 (2008) .............................................1

Movants respectfully submit this reply in further support of their amended Cross-Motion (ECF No 12296),[2] and state as follows:

**PRELIMINARY STATEMENT**

1. Rule 2019 serves a vital role by requiring ad hoc groups and committees to disclose in a public forum each disclosable economic interest that each Rule 2019(b) group member holds in relation to the debtors. The need for this type of disclosure is especially acute in the case of hedge funds, which, unlike mutual funds and monoline insurers, "typically do not have to disclose their investment activities to third parties."[3] Rule 2019 is therefore generally the only means by which other stakeholders can develop an understanding of the positions hedge funds occupy in the debtors' capital structure.

2. Certain hedge fund groups opposed the Cross-Motion and continue to resist Rule 2019 disclosure more generally. None of these objectors succeed in refuting the fact that the plain language of Rule 2019 requires the disclosures sought in the Cross-Motion. Instead, the objectors parrot the failed arguments raised by the ad hoc equity committee in *Northwest Airlines*,[4] complaining that parties seeking Rule 2019 disclosure are bullying them and "weaponizing" Rule 2019. *See* QTCB Obj. ¶ 8. No one is bullying these sophisticated groups. Movants are simply asking these groups to disclose what is required under Rule 2019: *each* disclosable economic interest held by *each* group member in relation to *each* Title III debtor.

---

[2] All references to "ECF No." shall refer to docket entries in 17-bk-03283-LTS, unless otherwise indicated. Capitalized terms used, but not otherwise defined herein, shall have the meanings given to them in the Cross-Motion or the objections, as applicable. The objection filed by LCDC (ECF No. 12471) is referred to herein as "LCDC Objection" and "LCDC Obj."; the objection filed by the QTCB Group (ECF No. 12476) is referred to herein as the "QTCB Objection" and "QTCB Obj."; and the objection filed by the Ad Hoc Group of General Obligation Bondholders (ECF No. 12478) is referred to herein as "GO Obj."

[3] *See* Sparkle Alexander, *The Rule 2019 Battle: When Hedge Funds Collide with the Bankruptcy Code*, 73 Brook. L. Rev. 1411, 1416-17 (2008).

[4] *See In re Northwest Airlines Corp.*, Case No. 05-19730, ECF No. 4854 at 1, 3 (Bankr. S.D.N.Y. Feb. 13, 2007) (complaining that parties seeking Rule 2019 disclosures were employing a "bully's tactic").

3. The purpose of Rule 2019 is to require public disclosure of each member's position to allow parties in interest to "gauge the credibility of an important group that has chosen to appear in a bankruptcy case" and to "make an informed decision whether this [group] will represent their interests." *In re Northwest Airlines Corp.* 363 B.R. 704, 709 (Bankr. S.D.N.Y. 2007). The disclosures sought in the Cross-Motion further this important purpose, notwithstanding the interposed objections.

4. The objections themselves demonstrate why more specific disclosures are needed. In particular, the LCDC Objection now confirms that LCDC filed a claim objection to its own members' bond claims, and did so without disclosing to the public that its members held (and were trading) "late vintage" bonds subject to that claim objection. LCDC Objection, Ex. A. It is of no moment that LCDC's members in the aggregate held more early vintage bonds than late vintage bonds—with the amounts of "late vintage" bonds held by LCDC having increased between September 2019 and the present. LCDC's 2019 statements as of the filing of its claim objection did not disclose that LCDC stood on both sides of that claim objection, and parties were left to assume (based on the public positions taken by LCDC and LCDC's press releases) that its members exclusively held bonds issued prior to 2012.[5] Similarly, between September 2019 and February 2020 (after the initial plan was proposed and before the new plan was filed), the QTCB Group accumulated substantial portions of later-vintage GO bonds issued in 2012 and 2014. *See* QTCB Obj., Ex. A.

5. These revelations and LCDC's filing of a new, sixth verified Rule 2019 statement (ECF No. 12482) demonstrate that Movants were correct that certain Rule 2019(b) groups' prior Rule 2019 disclosures were deficient and that further disclosure of *all* "disclosable economic

---

[5] *See* Comm. Motion, Ex. C ("The LCDC consists of institutional holders of Puerto Rico's GO and PBA **bonds issued prior to March of 2012**.").

interests"—including COFINA, CCDA, and PRIFA holdings, if any—is warranted. The Committee's Motion and the Cross-Motion should be granted, and the objections should be overruled.

## ARGUMENT

6. Rule 2019 requires each member of a committee to disclose the "nature and amount of **_each_** disclosable economic interest held in relation to the debtor…." Fed. R. Bankr. P. 2019(c)(2)(B) (emphasis added). A "disclosable economic interest" is broadly defined to encompass "any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest." Fed. R. Bankr. P. 2019(a)(1). The Cross-Motion demonstrated that the additional disclosures sought in the Cross-Motion (namely, COFINA Restructuring Bonds and PRIFA and CCDA Bonds) are disclosable economic interests. No objector meaningfully responded to this argument.

### I. Retroactive Disclosure of the "Vintage" and Issuer of Bonds Should Be Required.

7. The objectors devote much of their objections to disputing the need for disclosure of the "vintage" and issuer of bonds held by Rule 2019(b) groups—which were disclosures already sought in the Committee's Motion. *See* LCDC Obj. ¶¶ 34-41; QTCB Group Obj. ¶¶ 8-12; GO Obj. ¶ 2. Nonetheless, LCDC filed new verified statements disclosing the vintage of its bonds.[6] While LCDC and the QTCB Group attempt to frame these disclosures as "voluntary," there is nothing voluntary about Rule 2019 disclosures, and both groups "were supposed to have" disclosed this information "in the first place." Tr. of Hearing, (July 25, 2018), at 95-96.

---

[6] *See* ECF No. 12482.

8. The QTCB Group asserts that the filing of these so-called voluntary disclosures moots the Committee's Motion and the Cross-Motion. QTCB Obj. ¶ 18. It does not. LCDC and the QTCB Group still failed to disclose the other disclosable economic interests discussed in Parts II, III, and IV of this reply. Moreover, with respect to the QTCB Group, the QTCB Group's exhibit is not a verified statement, which is what Rule 2019(b) requires to be filed on the docket. *Compare* Fed. R. Bankr. P. 2019(b) (requiring filing of a verified statement) *with* QTCB Obj. Ex. A (unverified chart of holdings).[7]

## II. Disclosure of Cross-Holdings Should Be Required.

9. Certain objectors also contend that they need not disclose cross-holdings in other Title III debtors, even though those groups admit their members hold debt issued by PBA and HTA. LCDC Obj. ¶¶ 37, n. 24; QTCB Obj. n.7. The primary thrust of their argument is that they only "take a position" for purposes of Rule 2019 if they file a pleading on a particular docket. That argument is without basis. Moreover, the Rule 2019 Order expressly provides that taking a position "***includes, but is not limited to,*** the filing of any Pleading," and also includes "***among other things*** . . . filing an informative motion, executing a court-approved stipulation, filing a proof of claim, ***appearing at a hearing before the Court, or asserting any legal or factual positions that would in any way impact the property or rights of the Title III Debtor.***" Rule 2019 Order n. 3, n. 4 (emphasis added). As established in the Cross-Motion, the objectors took such actions, including the filing of pleadings, and therefore "took positions" for purposes of Rule 2019. Cross-Motion ¶¶ 64-65.

---

[7] Exhibit A to the QTCB Objection did not correct prior QTCB Statements, which are still non-compliant with Rule 2019 for all of the reasons stated in the Committee's Motion and the Cross-Motion. LCDC, by contrast, did amend its prior statements. In addition, the dates listed in Exhibit A to the QTCB Objection do not correspond with the dates included in the QTCB Statements that have been filed on the docket. Thus, these "voluntary" disclosures do not moot the Committee's Motion or the Cross-Motion at all.

10. In any event, even if filing of pleadings was the only way to take a position for purposes of Rule 2019 (and it is not), Movants identified numerous such pleadings, including notices of participation,[8] motions to dismiss, substantive objections, and statements promoting a plan of adjustment that impacts HTA's property prior to final adjudication of certain substantive issues related to HTA. Cross Motion ¶¶ 64-65. Moreover, the objectors completely ignore that with respect to HTA, they filed a joint statement requesting a stay of causes of action in an adversary proceeding commenced by HTA. *Id.* ¶ 65. That plainly qualifies as "asserting any legal or factual positions that would in any way impact the property or rights of the Title III Debtor." Rule 2019 Order n.4.

11. LCDC also asserts that its claim objection "never challenged a claim against *PBA*." LCDC Obj. ¶ 36 (emphasis in original). But LCDC's claim objection expressly objects to "Public Buildings Authority . . . bonds issued in or after March 2012." ECF No. 9730 at p. 1; *see also id.* Ex. A. At a minimum, LCDC objected to the Commonwealth's ability to guarantee such PBA Bonds, which in and of itself qualifies as taking a position that would impact PBA's right to have its debt guaranteed by the Commonwealth. *See* ECF No. 9730 ¶¶ 41-50. LCDC is also an intervenor-defendant in the PBA Lease Adversary, which directly concerns PBA's right to the payment of administrative rent under its leases with the Commonwealth.[9] Similarly, subsequent to PBA's Title III filing, LCDC filed a joint statement with other hedge fund groups supporting a *stay* of the PBA Lease Adversary and of the Committee's objection to certain PBA Bonds, thereby clearly taking a position with respect to litigation impacting PBA's rights.[10]

---

[8] A notice is included as a "Pleading" under the CMO, *see* ECF No. 11885-1 § I.B., and thus the ERS notice of participation qualifies as taking a position in ERS's case, contrary to LCDC's assertion.

[9] *See, e.g.*, Adv. Proc. No 18-149-LTS, ECF No. 50 (LCDC motion to intervene in PBA Lease Adversary); ECF No. 54 (order granting LCDC intervention); ECF No. 60 (LCDC answer).

[10] *See Joint Statement of PSA Creditors in Support Mediation Team's Amended Report and Recommendation* (ECF No. 11499).

12. The objectors also contend that they do not act as fiduciaries for other creditors, and therefore do not need to disclose cross-holdings to the same extent as the Committee. LCDC Objection ¶ 38; QTCB Objection ¶ 7. However, the objectors ignore the context of the Court's observations regarding the Committee's role as a fiduciary[11] and provide no coherent reason that the requirements in the UCC Order regarding disclosure of holdings as to each Title III debtor should not apply to the objectors as well, particularly given that these objectors have taken positions with respect to multiple Title III debtors.[12] Thus, all cross-holdings should be disclosed, and the objections to such disclosure should be overruled.

### III. COFINA Restructuring Bond Holdings Should be Disclosed.

13. In the Cross-Motion, Movants seek disclosure of COFINA Restructuring Bond holdings. Cross-Motion, Ex. A. Such disclosure is warranted because the Amended Plan proposes to grant holders of COFINA Restructuring Bonds a new "statutory first lien" on the Commonwealth Portion of Puerto Rico's 5.5% sales and use tax. This new lien on the Commonwealth Portion is a "lien . . . granting the holder[s] [of COFINA Restructuring Bonds] an economic interest" in the Commonwealth property to be distributed under the Amended Plan. Fed. R. Bankr. P. 2019(a). It therefore renders COFINA Restructuring Bonds a "disclosable economic interest" under Rule 2019. *See* Cross-Motion ¶¶ 52-54.

---

[11] The portion of the UCC Order upon which the objectors rely referenced the Committee's fiduciary capacity only in relation to the Court's holding that less specific disclosures were required from labor unions in light of the Committee's fiduciary capacity. UCC Order at 5. It did not state that other Rule 2019(b) groups should not disclose their cross-holdings.

[12] The objectors' reliance on briefing in connection with the UCC Order is misplaced. QTCB Obj. n. 5; LCDC Obj. ¶ 37. Assured argued that the Committee should disclose amounts held in relation to each debtor, but its arguments applied equally to ad hoc groups. In fact, Assured's reply in further support of its Rule 2019 motion is replete with hypotheticals involving ad hoc bondholder groups. *See* ECF No. 7188 at 10-11 (providing hypothetical of ad hoc bondholder selling off HTA bonds and purchasing GO bonds).

14. LCDC attempts to dispute the status of COFINA Restructuring Bonds as disclosable economic interests by misstating the scope of the lien currently securing the COFINA Restructuring Bonds. In particular, LCDC states that "the COFINA Legislation secured the COFINA Restructuring Bonds by creating a statutory first lien in the COFINA Pledged Taxes." LCDC Opp. ¶ 27. This is incorrect or, at a minimum, incomplete. The COFINA Plan defines the "COFINA Pledged Taxes" as the "present and future revenues and collections generated by the portion of the Sales Tax that corresponds to a tax rate of five and one-half (5.5) percent." *See* COFINA Plan, ECF No. 4652, art. 1.63 (defining "COFINA Pledged Taxes"). The COFINA Legislation does not grant a statutory lien on the COFINA Pledged Taxes as such, but rather only on COFINA's "right, title, and interest" in the COFINA Pledged Taxes. *See* Cross-Motion, Ex. E § 3.2. Under the Commonwealth-COFINA settlement, COFINA has a "right, title, and interest" only in the "COFINA Portion" of the COFINA Pledged Taxes, which comprises only the first COFINA Pledged Taxes in an amount up to 53.65% of the Fixed Income (or "PSTBA") collected in any given fiscal year. *See* ECF No. 5045-1 ¶ 3(a). Therefore, the lien currently securing the COFINA Restructuring Bonds extends only to the COFINA Portion and does not encumber the COFINA Pledged Taxes more generally.[13] As a result, holders of the COFINA Restructuring Bonds currently have no lien on or other claim to the Commonwealth Portion of the COFINA Pledged Taxes, which includes the second 46.35% of the Fixed Income collected each fiscal year.

15. The Amended Plan, however, proposes to convey the Commonwealth Portion (called the "Conveyed Commonwealth Share" in the plan) to COFINA. *See* Amended Plan, ECF No. 11946, art. 2.5. Once COFINA acquires a "right, title, and interest" in the Commonwealth

---

[13] *See, e.g.*, COFINA Plan, ECF No. 4652 art. 25.1(c)(viii) (requiring confirmation order to recognize that the New Bond Legislation grants "**a statutory Lien on the COFINA Portion** to secure the payment obligations with respect to the COFINA Bonds") (emphasis added).

-7-

Portion, the "statutory first lien" in favor of the existing COFINA Restructuring Bonds will attach to the Commonwealth Portion. *See* Cross-Motion, Ex. E § 3.2. The Amended Plan then provides for the issuance of "COFINA Junior Lien Bonds" to the existing GO Bondholders. The Disclosure Statement provides that "Repayment of the COFINA Junior Lien Bonds (i) shall be secured by a second lien [on the Commonwealth Portion] that is **subordinated in all respects,** including, without limitation, in respect of payment, funding and **remedies** to the [existing COFINA Restructuring Bonds] and (ii) shall not be payable from the [COFINA Portion]." *See* Disclosure Statement, ECF No. 11947 at p. 37 (emphasis added). The Disclosure Statement therefore expressly acknowledges that there could be scenarios in which holders of the existing COFINA Restructuring Bonds could exercise "remedies" to enforce the new "statutory first lien" on the Commonwealth Portion that they will acquire under the Amended Plan.

16. LCDC is correct when it says that, in the ordinary course and absent a default, the Amended Plan appears to contemplate that holders of the existing COFINA Restructuring Bonds would receive the "first dollars" comprising the COFINA Portion every year and holders of the new COFINA Junior Lien Bondholders would receive the "second dollars" comprising the Commonwealth Portion every year. *See* LCDC Opp. ¶ 48. As Movants pointed out in the Cross-Motion, however, *in a default scenario,* holders of the COFINA Restructuring Bonds could attempt to enforce "remedies" with respect to the new "statutory first lien" on the Commonwealth Portion gifted to them under the Amended Plan. *See* Cross-Motion ¶ 54. In particular, Movants noted in the Cross-Motion that if COFINA were to file for relief under Title III or another insolvency law again, holders of the COFINA Restructuring Bonds could argue that the COFINA Restructuring Bonds have been automatically accelerated by operation of the Bankruptcy Code, and that they are therefore entitled to receive both the COFINA Portion and the Commonwealth Portion each year until they are paid in full. *See id*. This is not a far-fetched scenario; "automatic

-8-

acceleration" under the Bankruptcy Code was one of the LCDC members' central arguments in the first COFINA restructuring, so it is not implausible that they or other holders of COFINA Restructuring Bonds could pursue a similar strategy again in a future COFINA restructuring. LCDC's objection offers no response to the "automatic acceleration" hypothetical presented in the Cross-Motion.[14]

17. In light of the fact that under the Amended Plan holders of existing COFINA Restructuring Bonds could receive a new "statutory first lien" on what is currently Commonwealth property, COFINA Restructuring Bonds are clearly "disclosable economic interests" that should be disclosed in Rule 2019 statements, including retroactively to the period in which the Amended Plan was being negotiated.

### IV. PRIFA and CCDA Bond Holdings Should Be Disclosed.

18. Movants have also requested disclosure of PRIFA and CCDA bond claims. Cross-Motion, Ex. A. None of the objectors articulated why these claims are not disclosable economic interests, and thus this portion of the Cross-Motion appears to be uncontested. The relevant PRIFA claims would include certain bond anticipation notes ("BANs") issued by PRIFA that are guaranteed by the Commonwealth and subject to LCDC's claim objection. To the extent LCDC's

---

[14] LCDC makes much of the notion that the issuance of COFINA Junior Lien Bonds was already "contemplated" under the COFINA Plan. *See* LCDC Obj. ¶¶ 8, 28, 49. But the COFINA Plan merely specifies the conditions under which *COFINA* is permitted to issue Junior Lien Bonds in the event it has any property with which it could secure such bonds; nothing in the COFINA Plan authorizes or requires the *Commonwealth* to transfer the Commonwealth Portion to COFINA for this purpose. Indeed, if the COFINA Plan already authorized or required the Commonwealth to transfer the Commonwealth Portion to COFINA, then there would be no need for the *Commonwealth's* Amended Plan to provide for this transfer of the Commonwealth Portion. LCDC also attempts to deflect Movants' observation that holders of COFINA Restructuring Bonds are not providing any additional consideration in exchange for the new lien on the Commonwealth Portion they would acquire under the Amended Plan. *See* Cross-Motion ¶ 53. LCDC distracts from this concern by focusing on whether *COFINA* will be providing consideration for its receipt of the Commonwealth Portion. *See* LCDC Obj. ¶ 7. Whether *COFINA* is providing consideration for its new property interest is a separate issue from whether holders of COFINA Restructuring Bonds are providing consideration for *their* new property interest, however. Holders of COFINA Restructuring Bonds are not providing any such consideration.

members are including those PRIFA BANs under the category of "Other Commonwealth Guaranteed Indebtedness" in their Rule 2019 statements, that fact should be disclosed, because the Amended Plan provides for the treatment of guarantee claims against the Commonwealth on account of the BANs and a motion pursuant to Bankruptcy Rule 9019 was filed pursuant to which the Commonwealth would be obligated to fund an escrow for debt service on the PRIFA BANs. *E.g.*, ECF No. 12519. Similarly, the Amended Plan impacts recoveries on PRIFA and CCDA revenue bonds, because it purports to classify and treat claims arising from the Commonwealth's unlawful diversion of the excise tax revenues securing those bonds.[15] Thus, Rule 2019(b) groups' holdings of PRIFA and CCDA revenue bonds should also be disclosed.

V.     **The Objectors' Other Arguments are Both Procedurally and Substantively Infirm.**

19.     Finally, certain objectors request that all parties filing pleadings in these cases—including Movants—be made subject to Rule 2019. LCDC Obj. ¶¶ 42-45; GO Obj. ¶ 2; QTCB Obj. ¶ 17.[16] As an initial matter, affirmative relief can be sought only through a motion including

---

[15] *See* Amended Plan arts. 47.1 ("Treatment of CW/Convention Center Claims) and 48.1 ("Treatment of CW/PRIFA Rum Tax Claims").

[16] LCDC contends that monoline insurers should be subject to the same disclosure requirements as Rule 2019(b) groups, but then paradoxically asserts that monoline insurers should disclose more, including "owned bonds and insured exposure." LCDC Obj. ¶ 42; *id.* n. 6. However, if LCDC's proposed disclosure requirements were actually adopted, then LCDC's Rule 2019 statements would need to be refiled. Indeed, as noted in Exhibit A to the LCDC Objection, one of the members of LCDC acquired a monoline insurer (Syncora) and included that insurer's overall exposure in the disclosable economic interests set forth in LCDC's newly filed Rule 2019 statements. LCDC Obj. Ex. A, n. 1. LCDC's new Rule 2019 statements fail to disclose what amount of that member's disclosable economic interests consists of "owned bonds" and what amount consists of "insured exposure," which LCDC suggests should be separately disclosed in Rule 2019 statements. LCDC Obj. ¶ 42 & n. 6; *see also* ECF No. 12482, Ex. G (row for GoldenTree Asset Management, which does not disclose separate amounts for insured exposure for Syncora or subrogated claims for Syncora).

a proposed order.[17] The objections are not motions. Therefore, any requests for affirmative relief contained in those objections are not properly before the Court.

20. In any event, Movants are plainly not a Rule 2019(b) group. Indeed, the cases cited in the LCDC Objection confirm as much. LCDC Obj. ¶ 45. In *Washington Mutual*, the court found that bondholders acted as a group when (i) they did not appear individually in the case (and instead always appeared jointly); (ii) had jointly "retained counsel which took instructions from the group as a whole"; and (iii) counsel for the group had never advised the court that it represented anything less than all of the group. *In re Washington Mutual*, 419 B.R. 271, 275 (Bankr. D. Del. 2009). Likewise, in *Northwest Airlines,* the court found that the ad hoc equity committee was a Rule 2019 group because (i) the members filed a notice of appearance as a committee; (ii) the members jointly retained one law firm to represent the group; (iii) that law firm was compensated by the group as a whole; and (iv) the law firm did not purport to represent anything less than the entire group. *In re Northwest Airlines Corp.*, 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007).

21. None of the factors identified in LCDC's cases apply to Movants. Movants did not file notices of appearance as a group. Rather, they filed individual notices of appearance. *E.g.*, ECF Nos. 101, 109, 121. Movants all have separate counsel, and their attorneys act at the direction of their respective clients, not at the direction of any group. That fact is underscored by the Cross-Motion and by Movants' other pleadings cited by LCDC, all of which list out separate counsel for each of the signatories to the pleadings. Moreover, as this Court is no doubt aware, each Movant frequently files its own pleadings that are not joined by other Movants. *E.g.*, ECF Nos. 7330, 11497. Movants are therefore not a Rule 2019(b) group. In contrast, ad hoc groups like LCDC

---

[17] *In re Financial Oversight & Mgmt. Bd. for P.R.*, 583 B.R. 626, 637 (D.P.R. 2017); *In re W.R. Grace & Co.*, 2008 WL 4571559, at *1 n.2 (Bankr. D. Del. Oct. 10, 2008) ("Requests for affirmative relief cannot be combined with a response to a motion."); Case Management Procedures, ECF No. 11185, § I.I.

-11-

*are* Rule 2019(b) groups. They jointly retained counsel, filed a notice of appearance as a group, filed pro hac vice motions on behalf of the group, jointly run radio and print ads soliciting support for their plan support agreement, and file pleadings with only one shared counsel signing a pleading on behalf of the group.[18]

22. While Movants have filed some joint pleadings both with each other and with *many other parties*[19] in the past, they have frequently done so in order to comply with the Court's case management orders, which expressly require parties whose interests are aligned to "use reasonable efforts to draft a single brief and coordinate to minimize duplicative briefs." *See, e.g.*, ECF No. 9619 ¶ 9; ECF No. 12186 ¶ 9. It cannot be, as LCDC seems to contend, that merely filing such joint pleadings to avoid duplicative briefing transforms the signatories into a Rule 2019(b) group. If that were the case, then it would mean, for example, that LCDC would need to file a new Rule 2019 statement each time it made a joint filing with other hedge fund groups, with the new 2019 statement encompassing all of the holdings of all of the members of the various hedge fund groups signing onto the joint filing.[20] Of course LCDC and other hedge fund groups have never filed such a joint verified statement, because the mere filing of joint pleadings does not transform the co-signatories into a Rule 2019(b) group.

23. In any event, Movants already disclose their bond holdings publicly, including to the Securities and Exchange Commission, to insurance regulators, and in innumerable filings in

---

[18] *See, e.g.*, LCDC Objection (signed by one primary law firm and one local law firm on behalf of LCDC, not on behalf of any particular members); Reply, Ex. A (print ad from LCDC regarding plan of adjustment); ECF Nos. 5251, 5267, 6348.

[19] For example, Assured has filed joint pleadings with hedge fund groups like the Ad Hoc Group of General Obligation Bondholders and the Ad Hoc Group of Constitutional Debtholders. *See, e.g.*, ECF Nos. 10702 and 10704. Those joint pleadings do not give rise to a Rule 2019(b) group consisting of Assured and those hedge fund groups.

[20] *See, e.g., Joint Statement of PSA Creditors in Support Mediation Team's Amended Report and Recommendation* (ECF No. 11499) (joint filing by LCDC and other hedge fund groups); ECF No. 7614 (joint pleading between LCDC and QTCB Group).

these Title III cases. Moreover, as financial guaranty insurers, the amount of debt that Movants have insured remains the same as it was on the petition date, particularly given that the debtors are not paying any of their debts at this juncture. This is in contrast to hedge funds, who may trade in and out of positions in the course of the Title III cases, thus making Rule 2019 disclosures the only means of identifying their positions within the Debtors' capital structure at any given moment. *See* Cross Motion ¶ 23; *id.* Ex. C.

## CONCLUSION

The Court should grant the Committee's Motion and the Cross-Motion, and the objections should be overruled.

New York, New York
March 30, 2020

| CASELLAS ALCOVER & BURGOS P.S.C. | CADWALADER, WICKERSHAM & TAFT LLP |
|---|---|
| By: */s/ Heriberto Burgos Pérez* | By: */s/ Howard R. Hawkins, Jr.* |
| Heriberto Burgos Pérez<br>USDC-PR 204809<br>Ricardo F. Casellas-Sánchez<br>USDC-PR 203114<br>Diana Pérez-Seda<br>USDC-PR 232014<br>P.O. Box 364924<br>San Juan, PR 00936-4924<br>Telephone: (787) 756-1400<br>Facsimile: (787) 756-1401<br>Email: hburgos@cabprlaw.com<br>   rcasellas@cabprlaw.com<br>   dperez@cabprlaw.com | Howard R. Hawkins, Jr.*<br>Mark C. Ellenberg*<br>William J. Natbony*<br>Ellen Halstead*<br>Thomas J. Curtin*<br>Casey J. Servais*<br>200 Liberty Street<br>New York, NY 10281<br>Telephone: (212) 504-6000<br>Facsimile: (212) 504-6666<br>Email: howard.hawkins@cwt.com<br>   mark.ellenberg@cwt.com<br>   bill.natbony@cwt.com<br>   ellen.halstead@cwt.com<br>   thomas.curtin@cwt.com |
| | *Admitted pro hac vice |
| | *Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* |

| | |
|---|---|
| FERRAIUOLI LLC | MILBANK LLP |
| By: */s/ Roberto Cámara-Fuertes* <br> Roberto Cámara-Fuertes (USDC-PR No. 219002) <br> Sonia Colón (USDC-PR No. 213809) <br> 221 Ponce de León Avenue, 5th Floor <br> San Juan, PR 00917 <br> Telephone: (787) 766-7000 <br> Facsimile: (787) 766-7001 <br> Email: rcamara@ferraiuoli.com <br> scolon@ferraiuoli.com | By: */s/ Atara Miller* <br> Dennis F. Dunne* <br> Atara Miller* <br> Grant R. Mainland* <br> Jonathan Ohring* <br> 55 Hudson Yards <br> New York, NY 10001 <br> Telephone: (212) 530-5000 <br> Facsimile: (212) 530-5219 <br> Email: ddunne@milbank.com <br> amiller@milbank.com <br> gmainland@milbank.com <br> johring@milbank.com |

*Admitted pro hac vice

*Counsel for Ambac Assurance Corporation*

-15-

-16-

| | |
|---|---|
| REXACH & PICÓ, CSP | BUTLER SNOW LLP |
| By: */s/ María E. Picó* | By: */s/ Martin A. Sosland* |
| María E. Picó<br>USDC-PR 123214<br>802 Ave. Fernández Juncos<br>San Juan PR 00907-4315<br>Telephone: (787) 723-8520<br>Facsimile: (787) 724-7844<br>E-mail: mpico@rexachpico.com<br><br>*Attorney for Financial Guaranty Insurance Company* | Martin A. Sosland (*pro hac vice*)<br>5430 LBJ Freeway, Suite 1200<br>Dallas, TX 75240<br>Telephone: (469) 680-5502<br>Facsimile: (469) 680-5501<br>E-mail: martin.sosland@butlersnow.com<br><br>*\*Admitted pro hac vice in Case No. 17-BK-03283-LTS and Case No. 17-BK-03567-LTS*<br><br>Jason W. Callen<br>150 3rd Ave., S., Suite 1600<br>Nashville, TN 37201<br>Telephone: 615-651-6774<br>Facsimile: 615-651-6701<br>Email: jason.callen@butlersnow.com<br><br>*\*Admitted pro hac vice in Case No. 17-BK-03283-LTS and Case No. 17-BK-03567-LTS*<br><br>*Attorneys for Financial Guaranty Insurance Company* |

## **CERTIFICATE OF SERVICE**

       I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, the 30th day of March, 2020.

                                                   By: /s/ *Howard R. Hawkins, Jr.*
                                                           Howard R. Hawkins, Jr.*
                                                           *admitted pro hac vice