**Objection Deadline: April 14, 2020 at 4:00 p.m. (AST)**
**Hearing Date: April 22, 2020 at 9:30 a.m. (AST)**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 03283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE COMMONWEALTH OF PUERTO RICO (the "ERS"),<br><br>                Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 03566-LTS |

## RENEWED MOTION OF UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO FOR RELIEF FROM THE AUTOMATIC STAY

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ...................................................................................................4

    A.    THE ERS ACTION .................................................................4

    B.    PROMESA TITLE III CASES .................................................5

    C.    EVENTS LEADING UP TO THE FIRST LIFT STAY MOTION ......................7

    D.    THE FIRST LIFT STAY MOTION .................................................8

    E.    THE DECEMBER OMNIBUS HEARING........................................10

    F.    SUBSEQUENT DEVELOPMENTS SINCE THE DECEMBER
        HEARING..........................................................................11

JURISDICTION AND VENUE ...........................................................................13

RELIEF REQUESTED.........................................................................................13

BASIS FOR RELIEF ...........................................................................................13

# TABLE OF AUTHORITIES

## Cases

*Getty Petroleum Mktg., Inc. v. 2211 Realty, LLC,*
  No. 11-40003 (FDS), 2012 WL 527655 (D. Mass. Feb. 16, 2012) .................................................... 17, 18

*In re Barry P. Parker's, Inc.,*
  33 B.R. 115 (M.D. Tenn. 1983) ............................................................................................................. 17

*In re Countryside Manor, Inc.,*
  188 B.R. 489 (Bankr. D. Conn. 1995) ................................................................................................... 17

*In re Ideal Roofing & Sheet Metal Works, Inc.,*
  9 B.R. 2 (Bankr. S.D. Fla. 1980) ........................................................................................................... 17

*In re Millsap,*
  141 B.R. 732 (Bankr. D. Idaho 1992) .................................................................................................... 18

*In re N.Y. Med. Grp., P.C.,*
  265 B.R. 408 (Bankr. S.D.N.Y. 2001) .................................................................................................. 14

*In re Overmyer,*
  32 B.R. 597 (Bankr. S.D.N.Y. 1983) .................................................................................................... 17

*In re Pro Football Weekly, Inc.,*
  60 B.R. 824 (N.D. Ill. 1986) .................................................................................................................. 18

*In re Saxon Indus., Inc.,*
  43 B.R. 64 (Bankr. S.D.N.Y. 1984) ...................................................................................................... 17

*In re Sonnax Indus. Inc.,*
  907 F.2d 1280 (2d Cir. 1990) ................................................................................................................ 14

*In re Unanue-Casal,*
  159 B.R. 90 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994) ...................................................... 13, 14

*In re Wedtech Corp.,*
  87 B.R. 279 (Bankr. S.D.N.Y. 1988) .................................................................................................... 17

Memorandum Order, *In re Fin. Oversight & Mgmt. Bd. for P.R.,*
  Case No. 17-03283 (LTS) (D.P.R. July 7, 2017) .................................................................................. 14

*Peerless Ins. Co. v. Rivera,*
  208 B.R. 313 (D.R.I. 1997) ................................................................................................................... 13

## Statutes

11 U.S.C. § 362 ........................................................................................................................................ 13

28 U.S.C. § 1331 ...................................................................................................................................... 13

28 U.S.C. § 1391 ................................................................................................................... 13

48 U.S.C. § 2161 ................................................................................................................... 13

48 U.S.C. § 2166 ................................................................................................................... 13

48 U.S.C. § 2167 ................................................................................................................... 13

**Rules**

P.R. R. Civ. P. 11.1 ............................................................................................................. 16

UBS Financial Services Incorporated of Puerto Rico ("UBS Financial"), by and through the undersigned counsel, moves this Court for an Order pursuant to section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to the above-captioned cases by section 301 of the Puerto Rico Oversight, Management, and Economic Stability Act of 2016 ("PROMESA"), 48 U.S.C. § 2161, for relief from the automatic stay.  In support of this Motion, UBS Financial states as follows:

## PRELIMINARY STATEMENT

1.      UBS Financial requests relief from the automatic stay in order to fully, and without limitation, prosecute counterclaims for breach of contract and indemnification against the ERS[2] in a lawsuit that the ERS is currently pursuing against UBS under the caption *Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico v. UBS Fin. Servs. Inc. of Puerto Rico*, Civ. No. KAC-2011-1067 (803) (the "ERS Action"), currently pending in the Commonwealth of Puerto Rico Court of First Instance, San Juan Part (the "Commonwealth Court").

2.      UBS Financial first sought relief from the automatic stay on October 8, 2019, when it filed the *Motion of UBS Financial Services Inc. of Puerto Rico for Relief From the Automatic Stay* (Dkt. No. 8823, the "First Lift Stay Motion").  UBS Financial's position in the First Lift Stay Motion was straightforward – the ERS was wrongfully using the automatic stay as a sword and a shield by prosecuting its claims against UBS Financial but blocking the prosecution of defensive counterclaims.  Following a period of negotiations, UBS Financial

---

[2]      The ERS is a public entity organized as a trust under the laws of Puerto Rico, which was established by Act No. 447 of the Legislature of Puerto Rico to provide pension and other benefits to retired employees of the central government, municipalities and public systems of the Commonwealth of Puerto Rico (the "Commonwealth").

reached an interim agreement with the Oversight Board[3] for partial relief while the parties

continued to negotiate a final resolution of the stay issue.

3. The limited relief reflected a compromise between the Oversight Board and UBS

Financial to allow the parties to continue to discuss whether to stay the entire ERS Action in

favor of the duplicative claims brought in the Underwriter Adversary pending in this Court. This

temporary compromise gave UBS Financial the ability to present the counterclaims to the

Commonwealth Court immediately, which was needed to cut off any arguments about the

untimeliness of those claims, while UBS Financial agreed that it would not prosecute those

counterclaims.

4. This temporary solution was designed to give the parties time to negotiate a final

position on stay. At that time, the Oversight Board's counsel had indicated that they would agree

to support a complete stay of the ERS Action, but that further discussions with counsel for the

plaintiffs in the ERS Action were required to finalize that position. If the Oversight Board did

not agree to a complete stay of the ERS Action, then UBS Financial was free to return to this

Court to seek a complete lifting of the automatic stay to allow for the full prosecution of the

counterclaims. Either way, the temporary agreement for limited relief from the stay was not

designed to be permanent.

5. This temporary compromise is reflected in the order entered following the

December omnibus hearing. That order allowed UBS Financial to present, but not prosecute, its

counterclaims in the ERS Action. Further, under the express terms of the order, UBS Financial

reserved the right to file a renewed motion to lift the stay "solely" in its own discretion. UBS

---

[3]    Capitalized terms not defined herein will be defined below.

Financial and the Oversight Board also agreed to continue to communicate with respect to a resolution of the global issues that remained.

6.      During discussions in January and February 2020, the Oversight Board backed away from its plan to stay the entire ERS Action in favor of the duplicative claims in the Underwriter Adversary.  In mid-February 2020, the Oversight Board advised UBS Financial that it would allow the prosecution of the ERS Action in the Commonwealth Court even though overlapping claims are included in the Underwriter Adversary in this Court.  That decision was unfair because UBS Financial is now forced to defend duplicative claims seeking the same relief in two courts, but UBS Financial will seek redress for that intentional and wasteful claim splitting in future motion practice.

7.      By this Motion, UBS Financial merely seeks a level playing field in the Commonwealth Court.  The Oversight Board has chosen to allow the ERS Action to proceed in the Commonwealth Court, so it should no longer be allowed to use the automatic stay to interfere with the full and free prosecution of that case in that court.  If the ERS is pursuing its claims there, UBS Financial should be allowed to litigate its defensive counterclaims there as well.  The ERS's use of the automatic stay as both a shield and a sword is entirely improper and cannot continue.

8.      Per the *Eleventh Amended Notice, Case Management, and Administrative Procedures* (Dkt. No. 11885-1, the "Case Management Procedures"), prior to this filing, UBS Financial contacted, and then met and conferred with, the Oversight Board and other required parties in an attempt to reach a consensual agreement to lift the automatic stay, but the Oversight

Board refused.  Therefore, UBS Financial has no choice but to return to this Court to seek full

and complete relief from the automatic stay.[4]

## BACKGROUND

### A.     THE ERS ACTION[5]

9.      The ERS Action was commenced on September 29, 2011 by two alleged

beneficiaries of the ERS as a putative derivative suit.  On December 7, 2016, the Commonwealth

Court allowed the ERS to intervene and ordered the plaintiffs, now including ERS (the

"Plaintiffs"), to file a third amended complaint.

10.     In mid-2017, discovery commenced in the ERS Action.  To date, the UBS

Defendants have produced over 114,000 pages of documents in response to document requests

from the ERS.  The ERS, however, has ignored discovery requests in the ERS Action.[6]  No

depositions have taken place.  The parties to the ERS Action were scheduled for their next

discovery conference to discuss case management on February 19, 2020, which they agreed to

reschedule within approximately 30 days.  By letter dated March 6, 2020, UBS Financial's

counsel offered to hold the meeting on March 19, 20, or 26, 2020.  However, counsel for the

ERS and the other plaintiffs now maintain that the conference cannot be held until the

Commonwealth Court rules on their summary judgment motion.

---

[4]     Per the Case Management Procedures, UBS Financial requested that the Oversight Board and AAFAF lift the
automatic stay prior to this filing.  *See* February 25, 2020 Letter from Paul Lockwood to Tristan Axelrod, et al.
(the "Second Lift Stay Notice").  That request was denied.  The Second Lift Stay Notice is attached hereto as
Exhibit A.

[5]     Additional background is available in the First Lift Stay Motion, which in the interests of time and space is not
repeated here.

[6]     The plaintiffs in the ERS Action, including the ERS, have made two deficient productions.  Even if these
productions were properly made they would still fall far short of the full scope of documents properly requested
by UBS Financial.  UBS Financial has challenged the adequacy of both deficiently made productions.

11.     On March 6, 2019, the Plaintiffs filed the Fourth Amended Complaint, which was accepted by the Commonwealth Court on April 15, 2019.  The UBS Defendants were ordered to file an answer to the Fourth Amended Complaint by April 29, 2019.

12.     In the Fourth Amended Complaint, the Plaintiffs allege that "the issuance and sale of the Bonds were illicit as (i) they violated the public policy established by the Legislative Assembly of Puerto Rico, which denied their approval when they were contemplated throughout the Government; and (ii) the Bonds were guaranteed by pledging or alienating employer contributions to the [ERS], which is not permitted by the Retirement Act."  (Fourth Amended Complaint ¶ 1.6)  Plaintiffs also allege that by "not only endorsing, but also participating as the lead underwriter in the illicit and grossly negligent issuance of the Bonds, UBS [Financial] violated its contractual, non-contractual and fiduciary obligations to the [ERS]…."  (*Id.* ¶ 6.11)

13.     On April 29, 2019, UBS Financial filed, along with the UBS Defendants' answer, its proposed counterclaims to the Fourth Amended Complaint, alleging breach of contract and indemnification arising out of the ERS's issuance of the bonds.  UBS Financial merely put the Commonwealth Court on notice of the proposed counterclaims, but did not file them, because UBS Financial did not want to violate the automatic stay.

## B.     PROMESA TITLE III CASES

14.     On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") filed a petition in this Court commencing a case under Title III of PROMESA on behalf of the Commonwealth (the "Commonwealth Title III Case").  On May 21, 2017, the Oversight Board filed a petition commencing a case under Title III of PROMESA on behalf of the ERS (the "ERS Title III Case", and together with the Commonwealth Title III Case,

the "Title III Cases").  Since then, several proceedings in the Title III Cases have also challenged

the validity of the ERS Bonds.  These include:

- The ERS Bond Objection,[7] filed by the UCC on March 12, 2019.

- The Retirees Objection,[8] filed by the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retirees Committee") on April 23, 2019.[9]

- Case number 19-00280, an adversary proceeding (the "Underwriter Adversary") commenced by the Oversight Board, acting through the Special Claims Committee, and the UCC (collectively, the "Adversary Plaintiffs") naming UBS Financial and several other parties as defendants.  The Underwriter Adversary seeks recovery on 62 separate claims, including several that relate to the same bond issuances that are the subject of the ERS Action.  The complaint in the Underwriter Adversary was filed on May 2, 2019.

- On May 19, 2019, the Adversary Plaintiffs filed the ERS Avoidance Actions,[10] which seek to claw back all funds transferred to the ERS bond holders on account of the ERS Bonds.

15.     On June 25, 2019, the Oversight Board filed a motion to stay certain contested

matters pending confirmation of a proposed plan of adjustment for the Commonwealth.[11]  The

Oversight Board sought a similar stay of the Underwriter Adversary on July 9, 2019.[12]  By order

dated July 24, 2019, this Court stayed a number of proceedings in the Title III Cases, including

---

[7]    *See Omnibus Objection of Official Committee of Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Puerto Rico* (Dkt. No. 5580, the "ERS Bond Objection").

[8]    *See Omnibus Objection of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of ERS Bonds Against ERS and the Commonwealth* (Dkt. No. 6482, the "Retirees Objection").

[9]    The distinction between the ERS Bond Objection and the Retirees Objection is that the Retirees Objection objects to claims arising from the ERS Bonds that were filed against both the ERS *and* the Commonwealth, and additionally alleges that many of these claims are improperly asserted as secured.  (*See* Retirees Objection ¶ 31)

[10]    The ERS Avoidance Actions are currently pending before this Court as cases 19-00355, 19-00356, 19-00357, 19-00358, 19-00359, 19-00360 and 19-00361.

[11]    *See Motion to Stay Contested Matters Pending Confirmation of Commonwealth Plan of Adjustment* (Dkt. No. 7640).

[12]    *See Urgent Motion for Stay of Adversary Proceeding Supplemental to Pending Motion to Stay GO Bond Proceedings Pending Confirmation of Commonwealth Plan of Adjustment* (Dkt. No. 7882).

the ERS Bond Objection, the Retirees Objection, the ERS Avoidance Actions and the Underwriter Adversary.[13]

16.     On October 24, 2019, this Court entered the *Order Granting Urgent Joint Motion to Modify Order Regarding Stay and Mandatory Mediation with Respect to Certain Issues Raised in Certain Contested Matters and Adversary Proceedings Related to the Bonds Issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico* (Dkt. No. 8962, the "ERS Bond Order").  The ERS Bond Order allowed some, but not all, of the above referenced matters to go forward, including a determination as to whether the ERS bonds were issued *ultra vires* (the "Ultra Vires Proceedings").  Each of the aforementioned proceedings, including the Ultra Vires Proceedings, will adjudicate factual and/or legal issues that are also before the Commonwealth Court in the ERS Action, including the validity of the ERS Bonds. (*See, e.g.*, Retirees Objection ¶ 31 (arguing that the ERS Bonds were issued *ultra vires* and are therefore unenforceable))  While the Ultra Vires Proceedings have moved forward, the Underwriter Adversary remains stayed through confirmation.

## C.     EVENTS LEADING UP TO THE FIRST LIFT STAY MOTION

17.     On April 29, 2019, UBS Financial provided notice to counsel for the Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") via email of its intention to seek relief from the automatic stay to file, prosecute and liquidate counterclaims in the ERS Action (the "Lift Stay Notice") in accordance with Paragraph III(R) of the *Tenth Amended Notice, Case Management and Administrative Procedures* (Dkt. No. 8027-1), in these Title III Cases.[14]

---

[13]   *See Order Regarding Stay Period and Mandatory Mediation* (Dkt. No. 8244).

[14]   The current Case Management Procedures are identical.  (*See* Case Management Procedures ¶ III.R)

18.     Counsel for the AAFAF represented that it would coordinate with counsel for the Oversight Board on this matter, and counsel for the AAFAF and UBS Financial held additional meet and confer sessions, by telephone and email, during May 2019.  While UBS Financial anticipated resolving this matter consensually based on these early discussions with counsel for the AAFAF, they cut off communications instead.  Counsel for UBS Financial subsequently asked counsel for the AAFAF on several occasions to resolve the subject matter of the First Lift Stay Motion, but did not receive a response.

19.     On August 27, 2019, counsel to UBS Financial again reached out to counsel for the Oversight Board and the AAFAF in an attempt to resolve the subject matter of the First Lift Stay Motion.  Counsel to UBS Financial received *no* response to the August 27 letter, and as a result, UBS Financial was forced to file the First Lift Stay Motion.

**D.      THE FIRST LIFT STAY MOTION**

20.     Having exhausted all attempts at a consensual resolution of the matter, UBS Financial filed the First Lift Stay Motion on October 8, 2019.  Almost immediately, counsel to the Oversight Board's Special Claims' Committee ("Oversight Board Counsel") reached out to counsel to UBS Financial to discuss the issues raised by the motion.

21.     The parties discussed a stop gap compromise – allowing UBS Financial to file the counterclaims in the ERS Action immediately, but not prosecute those claims.  To induce UBS Financial to accept this temporary compromise, Oversight Board Counsel indicated that they supported a complete stay of the ERS Action, but that they needed time to negotiate with other constituencies, including counsel for the ERS in the ERS Action, before they could implement the broader stay.

22.     To that end, UBS Financial readily consented to the Oversight Board's request to adjourn the First Lift Stay Motion from the October omnibus hearing.  Conversations between

8

Oversight Board Counsel and counsel to UBS Financial continued, and in late November a

consensual, temporary resolution was reached.  This resolution was reflected in the proposed

order attached to the *Reply in Further Support of Motion of UBS Financial Services

Incorporated of Puerto Rico for Relief from the Automatic Stay* (Dkt No. 9491, the "Lift Stay

Reply" and the attached order the "Proposed Order").

23.     The Proposed Order allowed UBS Financial to file, but not prosecute, its

counterclaims.  But this was intended merely to preserve rights until a full stay of the ERS

Action was presented to the Court at the next omnibus hearing.  The Proposed Order expressly

provided:

> The Oversight Board may file a motion to argue that ***the automatic stay extends to
> the entirety of the ERS Action*** or otherwise move to stay the ERS Action following
> the filing of UBS Financial's proposed counterclaims.  Any party, including but not
> limited to UBS Financial and the filing parties to the Objection of the Individual
> Plaintiffs Retirees and Beneficiaries of the ERS Trust to the Motion of UBS
> Financial Services Incorporated of Puerto Rico for Relief From Automatic Stay
> (Dkt. No. 9341) may file a response or joinder to such motion described in this
> paragraph.

(Proposed Order ¶ 4 (emphasis added))  The Proposed Order further states that such a motion

would be filed at the January 2020 Omnibus hearing.  (*Id.* at ¶ 5)

24.     This was an acceptable compromise to UBS Financial because it would continue

to make progress towards consolidation of the same claims pending in two separate venues.  It

also contemplated a full stay of the ERS Action, which was only equitable where the

Underwriter Adversary remained stayed by request of the Oversight Board.  The mechanism for

that stay, done through a subsequent motion at the following hearing rather than through the

Proposed Order, was chosen to allow time to negotiate with other constituencies, including

counsel to Plaintiffs in the ERS Action.

9

25.     In return, UBS Financial was willing to accept limited relief from the automatic stay.  However, absent continued progress towards consolidation of the claims and a full stay of the ERS Action there was no reason for UBS Financial to accept such limitations on its ability to defend itself in the ERS Action.  If UBS Financial was going to have to continue to defend the ERS Action, a partial lift of the automatic stay would be unfair.  Accordingly, UBS Financial reserved its right to seek further relief from the automatic stay in the event the Oversight Board backed out of its plan to seek a complete stay of the ERS Action at the January omnibus hearing.

## E.     THE DECEMBER OMNIBUS HEARING

26.     As the Oversight Board and UBS Financial were finalizing their agreement, the ERS's other counsel in this matter, the Vicente Group,[15] objected to the Lift Stay Motion, on behalf of the individual plaintiffs in the ERS Action (Dkt. No. 9341, the "Objection").  The Objection was strange in that it created a conflict between counsel to the ERS in the ERS Action – the Vicente Group – and counsel to the ERS in these Title III Cases – the Oversight Board Counsel.

27.     At the December omnibus hearing, counsel to the three parties, at the Court's direction, conferenced to resolve the Objection.  With some further assistance from the Court, a new agreement was reached.  (See 12/11/19 Hr'g. Tr. at 169:2-19 (terms of new order worked out between the parties with the Court's assistance))  The *Order Granting Limited Relief from the Automatic Stay to File Counterclaims* (Dkt. No. 9592, the "Lift Stay Order") was subsequently entered by the Court on December 16, 2019.

---

[15]     The Vicente Group is comprised of all attorneys who signed the Objection, all but one of whom also represent the ERS in the ERS Action.

28.     As revised, the Lift Stay Order lifts the automatic stay "solely to allow [UBS Financial] to present its proposed counterclaims."  (Lift Stay Order ¶ 2)  In addition, "[t]he automatic stay will, as a matter of law, stay further prosecution and defense of the proposed counterclaims upon their filing in the ERS Action.  This reimposition of the automatic stay is without prejudice to UBS Financial's right to seek further stay relief from this Court, and UBS Financial reserves all rights to seek further stay relief in its sole discretion. "  (*Id.* at ¶ 3)

## F.     SUBSEQUENT DEVELOPMENTS SINCE THE DECEMBER HEARING

29.     On February 4, 2020, UBS Financial submitted its counterclaims to the Commonwealth Court. [16]  Pursuant to paragraph 3 of the Lift Stay Order, UBS Financial believes further action on these claims, including any litigation regarding the validity of these claims, is stayed.  Pursuant to paragraph 2 of the Lift Stay Order, any objections thereto are not waived, and once the stay is lifted those objections, including procedural objections, may be heard.

30.     Consistent with the plan outlined in December, UBS Financial and Oversight Board Counsel reengaged with respect to the potential imposition of a full stay of the ERS Action.  However, in mid-February, 2020, Oversight Board Counsel reversed its position and communicated to UBS Financial's counsel that the Oversight Board would allow the continued prosecution of the ERS Action by the Vicente Group in the Commonwealth Court.

31.     UBS Financial protected itself against this possibility by negotiating for the right to seek a full lifting of the automatic stay.  Accordingly, UBS Financial made the following request in the Second Lift Stay Notice: if the ERS Action is going to continue apace, the stay

---

[16]    Defendants' Amended Answer to Fourth Amended Complaint.  A certified English translation is attached hereto as Exhibit B.

must be lifted to allow UBS Financial to fully and fairly defend itself, including through the

prosecution of its defensive counterclaims.  (*See* Second Lift Stay Notice).

32.    The Oversight Board rejected this request.  The Oversight Board's position

reflects the utmost bad faith.  It is blatantly using the automatic stay as a shield and a sword.  The

ERS invokes federal law to tilt the proceedings in the ERS Action in plaintiffs' favor by

interfering with the Commonwealth Court's ability to hear the full claims and issues in the ERS

Action in accordance with Puerto Rico law and procedure.  UBS Financial therefore asks the

Court to lift the automatic stay and level the playing field.

33.    Moreover, the ERS has violated the Lift Stay Order by actively litigating the

counterclaims in the Commonwealth Court.  The Oversight Board insisted that the automatic

stay be reimposed on the counterclaims immediately after they were filed in the Commonwealth

Court, but on March 9, 2020, the ERS filed objections to the Counterclaims (the "Counterclaims

Objection").[17]  UBS Financial, however, is not seeking to block resolution of those objections.

Rather, UBS Financial wants an even-handed approach to the automatic stay.  Because the ERS

Action is going forward, the Commonwealth Court should be free to hear those objections – and

make any other decisions regarding the legal validity of the counterclaims, discovery relating to

the counterclaims, and reach a judgment on the counterclaims.  Having flip-flopped to support

---

[17]    Attached as Exhibit C is a certified English translation of The Urgent Motion Opposing the Filing of
Counterclaim and Requesting its Withdrawal from the Court Record.  UBS Financial notes that the Court
should not rely on the statements in that motion because it contains false and misleading arguments drawn from
an erroneous transcript.  The Vicente Group conceded that error but refused to withdraw their motion and
replace with a corrected filing.  Instead, they filed a separate informative motion admitting their error.  Certified
English translations of the Vicente Group's informative motion and UBS Financial's response to it are attached
as Exhibits D and E.

the prosecution of the ERS Action, the Oversight Board should now get out of the way and allow that case to proceed under local law and procedures.[18]

## JURISDICTION AND VENUE

34.     This Court has jurisdiction to grant the relief sought in this Motion pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 48 U.S.C. § 2167(a).

## RELIEF REQUESTED

35.     UBS Financial seeks complete relief from the automatic stay imposed by section 362 of the Bankruptcy Code so that it may prosecute, defend, liquidate and take any other action necessary with respect to its counterclaims in the ERS Action.

## BASIS FOR RELIEF

36.     Section 362(d) of the Bankruptcy Code, incorporated into PROMESA by 48 U.S.C. § 2161, provides that, at the request of a party in interest and after notice and a hearing, a court shall grant relief from the stay imposed under Section 362(a) "for cause."  11 U.S.C. § 362(d)(1).  "Cause" is not defined in the Bankruptcy Code.  *See, e.g.*, *In re Unanue-Casal*, 159 B.R. 90, 95-96 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994).  However, "'cause' is said to exist when the harm that would result from a continuation of the stay would outweigh any harm that might be suffered by the debtor or the debtor's estate if the stay is lifted."  *Peerless Ins. Co. v. Rivera*, 208 B.R. 313, 315 (D.R.I. 1997).

37.     As this Court has recognized, the factors used in the District of Puerto Rico to determine whether cause exists for lifting the stay are those enumerated in *In re Sonnax Indus.*

---

[18]     This Motion solely requests relief from the automatic stay and does not address whether the ERS Action should be stayed because it duplicates claims and relief sought in the Underwriter Adversary.  UBS Financial reserves the right to seek a stay or dismissal of either the ERS Action or the Underwriter Adversary on those grounds in this Court or the Commonwealth Court.

*Inc.*, 907 F.2d 1280 (2d Cir. 1990). *See* Memorandum Order at 2, *In re Fin. Oversight & Mgmt.*

*Bd. for P.R.*, Case No. 17-03283 (LTS) (D.P.R. July 7, 2017) [Dkt. No. 600]; *see also Unanue-*

*Casal*, 159 B.R. at 95-96 (analyzing the *Curtis* factors, which were adopted in *Sonnax*). "Not all

of the [*Sonnax*] factors are relevant in every case and the court need not assign equal weight to

each factor." *In re N.Y. Med. Grp., P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) (citations

omitted). "Generally, courts have relied on only a few factors . . . to determine that sufficient

cause existed to lift the stay." *Unanue-Casal*, 159 B.R. at 96.

38.     The *Sonnax* factors that are applicable here are: (1) "whether relief would result in

a partial or complete resolution of the issues;" (2) the "lack of any connection with or

interference with the bankruptcy case;" (3) "whether the parties are ready for trial in the other

proceeding;" (4) "the interests of judicial economy and the expeditious and economical

resolution of litigation;" and (5) the "impact of the stay on the parties and the balance of harms."

*Sonnax*, 907 F.2d at 1286.  As set forth below, these factors weigh heavily in favor of lifting the

stay to allow UBS Financial to fully prosecute and defend its counterclaims.

39.     First, relief from the stay will allow complete resolution of the issues in the ERS

Action, including the counterclaims.  The counterclaims are based on the same contracts, issues

and facts as the ERS's claims that are already before the Commonwealth Court.  The ERS has

alleged that UBS Financial – an arms-length underwriter – is liable for purported legal defects in

the ERS Bonds when the ERS gave UBS Financial express representations that the ERS Bonds

were legally authorized.[19]  UBS Financial should be allowed to pursue the counterclaims in order

to compel the ERS to fully indemnify or otherwise protect UBS Financial from liability in the

---

[19]     The parties dispute whether the Fourth Amended Complaint simply alleges that the bonds are legally defective
or whether such allegation – or the counterclaims themselves – necessarily places the validity of the bonds
before the Commonwealth Court as well.

event that the ERS Bonds are found to have been improperly authorized – an issue that is also
before this Court in the context of the ERS Bond Objection, the Retirees Objection, the ERS
Avoidance Actions, the Ultra Vires Proceeding and the Underwriter Adversary.  Because the
ERS is still pursuing its claims in the Commonwealth Court, resolution of all issues of fact and
law relating to the ERS Action will only be realized if UBS Financial is permitted to assert and
prosecute its counterclaims.

      40.     Second, while there is connection and interference with the Title III Cases here,
the ERS cannot justifiably claim such interference as a basis for refusing to lift the stay while
simultaneously requiring UBS Financial to litigate the same issues in the Title III Cases.  If the
ERS were concerned with being forced to litigate the identical and overlapping issues raised in
the multiple venues, it could (and should) seek a stay of the ERS Action.  In fact, UBS Financial
fully believes that the ERS Action should be stayed pending resolution of these common legal
issues before this Court.   But the ERS, through its statutory representative the Oversight Board,
has declined to seek such a stay.  As the ERS is aggressively pushing forward on its claims in the
Commonwealth Court, it cannot complain about the legal or economic burdens of these
duplicative, parallel actions because the ERS has created that wasteful duplication.

      41.     Third, although the parties are not ready for trial in the ERS Action, it has been
ongoing since 2011.  Discovery commenced in mid-2017 and will continue through at least
2020.  Refusing to grant UBS Financial relief from the stay will hamper the progress already
made in the ERS Action.  For instance, UBS Financial cannot take discovery related to its
counterclaims, while discovery on the ERS's claims is ongoing.

      42.     Fourth, the interests of judicial economy and the expeditious and economical
resolution of litigation weigh in favor of lifting the stay here.  Important to this analysis is the

fact that UBS Financial's counterclaims are compulsory under Rule 11.1 of the Puerto Rico Rules of Civil Procedure for the General Court of Justice. *See* P.R. R. Civ. P. 11.1.[20] The counterclaims arise out of the same transactions and occurrences as the claims in the Fourth Amended Complaint. Thus, Rule 11.1 requires UBS Financial to bring these counterclaims in the ERS Action or risk their preclusion in any future litigation.

43.     Lastly, the *Sonnax* factor regarding the impact of the stay on the parties and the balance of harms similarly weighs heavily in favor of granting relief. The automatic stay unfairly impacts UBS Financial because it permits the ERS to continue the ERS Action without allowing UBS Financial to fully defend itself through the assertion of related counterclaims. The abusive litigation tactics of the Oversight Board and the ERS are further demonstrated by the pursuit of overlapping relief in this Court.

44.     Indeed, while the ERS pursues essentially the same claims in the Commonwealth Court, the Oversight Board has obtained a stay through confirmation of many similar proceedings in this Court by asserting that the pursuit of such claims would be distracting to the ERS's reorganization efforts. This includes the Underwriter Adversary, where the same claims against UBS Financial have been asserted. The ERS could avoid the potential problems associated with this duplicative litigation[21] – problems that similarly impact UBS Financial – by

---

[20]   Puerto Rico Rule of Civil Procedure 11.1 mirrors Federal Rule of Civil Procedure 13(a) regarding compulsory counterclaims.

[21]   These potential problems include inconsistent judgments and preclusive effects on one proceeding due to decisions made in another forum. And as it becomes apparent that the Debtors really do seek to pursue the same claim in different forums for the benefit of different constituencies, UBS Financial will not be subject to an unjust, double recovery. In the event it is found liable, UBS will only be subject to the satisfaction of a single judgment. UBS Financial reserves all rights and defenses with respect to the inequitable process that the Debtors insist on pursuing.

seeking a stay of the ERS Action.[22]  The parties discussed that, and clearly contemplated the filing and time frame for such a motion in the Proposed Order.  The Oversight Board, at the encouragement of the ERS's counsel in the ERS Action, changed its approach and has endorsed prosecuting the ERS Action in the Commonwealth Court.  The Oversight Board, as the ERS's statutory representative in these Title III Cases, cannot complain of those corresponding burdens and simultaneously prevent UBS Financial from pursuing its rights in the ERS Action.

45.     Further, numerous courts have recognized the unfair harm that would be caused by enforcing the automatic stay against potential counterclaimants like UBS Financial.  *See, e.g.*, *In re Overmyer*, 32 B.R. 597, 601 (Bankr. S.D.N.Y. 1983) ("Where a debtor seeks affirmative relief as a plaintiff in a lawsuit and then invokes the protection of the automatic stay on a counterclaim, the situation warrants very careful scrutiny.  In such instance, a court must be cautious to avoid a decision which would convert Code § 362 from a shield into a weapon.  A debtor should not be permitted to reap the benefits of litigation in one court, but circumvent the burdens in another forum." (citation omitted)); *In re Wedtech Corp.*, 87 B.R. 279, 290 (Bankr. S.D.N.Y. 1988) (granting stay relief to allow counterclaimant to proceed with state court litigation commenced against it by the debtor pre-petition); *In re Saxon Indus., Inc.*, 43 B.R. 64, 67 (Bankr. S.D.N.Y. 1984) (same); *In re Countryside Manor, Inc.*, 188 B.R. 489, 491-92 (Bankr. D. Conn. 1995) (same); *In re Barry P. Parker's, Inc.*, 33 B.R. 115 (M.D. Tenn. 1983) (same); *In re Ideal Roofing & Sheet Metal Works, Inc.*, 9 B.R. 2, 3 (Bankr. S.D. Fla. 1980) (same); *see also Getty Petroleum Mktg., Inc. v. 2211 Realty, LLC*, No. 11-40003 (FDS), 2012 WL 527655, at *3 n.4 (D. Mass. Feb. 16, 2012) ("To the extent that counterclaims are essentially defenses to the

---

[22]    Likewise, a consolidation of the Underwriter Adversary with the ERS Action also would solve the problem, but the Oversight Board has decided against further pursuit of that option.

17

debtor's claims, 'when the debtor is in the position of the assailant, it would be inequitable to

invoke the stay against the defendant[s'] counterclaim . . . .'" (alterations in original) (citation

omitted)).

46.     This is particularly so where, as here, the counterclaims at issue are compulsory.

*See In re Millsap*, 141 B.R. 732, 733 (Bankr. D. Idaho 1992) ("A creditor is entitled to relief

from the section 362 automatic stay to assert a counterclaim in debtor initiated non-bankruptcy

proceedings in most instances as a matter of right considering the compulsory nature of most

counterclaims under rules of civil procedure."); *In re Pro Football Weekly, Inc.*, 60 B.R. 824,

826-27 (N.D. Ill. 1986) (reversing bankruptcy court's refusal to lift stay for assertion of

compulsory counterclaims as an abuse of discretion); *see also Getty Petroleum*, 2012 WL

527655, at *3 n.4 ("[P]ersons whom the debtor has sued are not prevented by the stay from

protecting their legal rights.").

47.     Furthermore, the Lift Stay Order was never meant to be a permanent solution to

the concerns of UBS Financial.  It was meant to protect UBS Financial from ongoing prejudice

as a result of its inability to even file its counterclaims, while providing breathing room for the

Oversight Board to determine its plan to resolve the issue of having the same claims being

pursued in two venues.  UBS Financial has set forth its disagreement and disappointment with

the Oversight Board's determination on this issue, but a determination has been made.  And that

determination directly prejudices UBS Financial's rights in the ERS Action, and improperly

converts the automatic stay into both a shield and sword for the debtors.

48.     The parties fully contemplated that UBS Financial could return to this Court if

negotiations regarding a full stay of the ERS Action did not pan out.  The Lift Stay Order

provides: "The reimposition of the automatic stay is without prejudice to UBS Financial's right to

18

seek further stay relief form this Court, and UBS Financial reserves all rights to seek further stay relief in its sole discretion." (Lift Stay Order ¶ 3) That language was fundamental to UBS Financial's acceptance of the prior order.

49.     Here, after the breakdown of negotiations, the ERS has unfairly weaponized the automatic stay to strip UBS Financial of its bargained-for protections found in the same contracts that form the basis of the ERS's claims against UBS Financial. If the Commonwealth Court is going to consider claims under those contracts, it should be permitted to consider the whole contract. The ERS's refusal to consent to a full lift of the automatic stay with respect to those counterclaims is an abuse of the automatic stay that should not be countenanced.

WHEREFORE, UBS Financial respectfully requests that the Honorable Court enter an order, substantially in the form attached hereto, (A) granting full, complete, unconditional, and unequivocal relief from the automatic stay allowing UBS Financial to file, prosecute, defend, liquidate, and take any other action necessary with respect to its counterclaims against the ERS in the Commonwealth Court, and (B) granting UBS Financial such further relief as is just and proper.

Respectfully Submitted:

In San Juan, Puerto Rico, this 30th day of March, 2020.


OF COUNSEL:

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
Paul J. Lockwood (*admitted pro hac vice*)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
Tel.:  (302) 651-3000
Fax:  (302) 651-3001

McCONNELL VALDÉS LLC
270 Muñoz Rivera Ave.
Hato Rey, Puerto Rico  00918
Tel.:  (787) 250-2631
Fax:  (787) 759-9225

By:  */s/ Roberto C. Quiñones-Rivera*
     Roberto C. Quiñones-Rivera, Esq.
     USDC-PR Bar No. 211512
     rcq@mcvpr.com

*Counsel for UBS Financial Services
Incorporated of Puerto Rico*

## <u>CERTIFICATION OF COMPLIANCE WITH CASE MANAGEMENT PROCEDURES</u>

I HEREBY CERTIFY:  That this Motion is in full compliance with the lift stay requirements in Paragraph III(R) of the Case Management Procedures entered in these Title III Cases.

Specifically, on February 25, 2020, UBS Financial provided notice to counsel for the Oversight Board and the AAFAF of its intention to seek relief from the automatic stay to file, prosecute, and liquidate its counterclaims in the ERS Action.

Thereafter, the parties met and conferred to attempt to resolve UBS Financial's request for relief from the automatic stay.  The parties were unable to reach consensual agreement.

Respectfully Submitted:

In San Juan, Puerto Rico, this 30th day of March, 2020.

By: */s/ Roberto C. Quiñones-Rivera*
Roberto C. Quiñones-Rivera, Esq.
USDC-PR Bar No. 211512
rcq@mcvpr.com

*Counsel for UBS Financial*
*Services Incorporated of Puerto Rico*