# EXHIBIT C

# THE URGENT MOTION OPPOSING THE FILING OF COUNTERCLAIM AND REQUESTING ITS WITHDRAWAL FROM THE COURT RECORD

CERTIFIED TRANSLATION:

# COMMONWEALTH OF PUERTO RICO
# COURT OF FIRST INSTANCE
# SAN JUAN JUDICIAL CENTER
# SUPERIOR PART

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO; PEDRO JOSÉ NAZARIO SERRANO, HIS SPOUSE, JUANITA SOSA PÉREZ AND THEIR CONJUGAL PARTNERSHIP; JOEL RIVERA MORALES; MARÍA DE LOURDES GÓMEZ PÉREZ; HÉCTOR CRUZ VILLANUEVA; LOURDES RODRÍGUEZ; AND LUIS M. JORDÁN RIVERA<br><br>    Plaintiffs<br><br>    v.<br><br>UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO AND UBS CONSULTING SERVICES OF PUERTO RICO; ABC INSURANCE COMPANY, INC.; XYZ INSURANCE COMPANY, INC.<br><br>    Defendants | CIVIL NO.: KAC 2011-1067 (803)<br><br>RE: BREACH OF CONTRACT; DAMAGES<br><br>[Court Clerk Receipt Stamp 2020 MAR -9 P 4:25] |

## URGENT MOTION OPPOSING THE FILING OF COUNTERCLAIM AND REQUESTING ITS WITHDRAWAL FROM THE COURT RECORD

TO THE HONORABLE COURT:

COME NOW Co-Plaintiff the EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, together with INDIVIDUAL PLAINTIFFS, RETIREES OF THE EMPLOYEE RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO - PEDRO JOSÉ NAZARIO SERRANO, HIS SPOUSE JUANITA SOSA PÉREZ AND THEIR CONJUGAL PARTNERSHIP; JOEL RIVERA MORALES; MARÍA DE LOURDES GÓMEZ PÉREZ; HÉCTOR CRUZ VILLANUEVA; LOURDES RODRÍGUEZ; AND LUIS M. JORDÁN RIVERA, through the undersigned legal counsel and very respectfully STATE and REQUEST:

We have received an "INFORMATIVE MOTION RELATED TO DEFENDANT UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO'S COUNTERCLAIM AGAINST PLAINTIFF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO"[1] (hereinafter, "INFORMATIVE MOTION". We have also

---

[1] We respectfully submit that entitling the motion as "INFORMATIVE" is intended to be misleading. Suffice it to examine the "PRAYER" and the Court may observe that, indeed, Defendant UBS Financial Services Incorporated of Puerto Rico (hereinafter "UBS" or the "Defendant") "requests the Honorable Court to Grant this Motion and, thereby allow the filing of the Amended Answer to Fourth Amended Complaint and Counterclaim attached hereto". [UBS's conduct in attempting to mislead this Court from the very title of its motion is censurable and must be sanctioned.].

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

received "DEFENDANTS' AMENDED ANSWER TO "FOURTH AMENDED COMPLAINT" (hereinafter "AMENDED ANSWER"), both documents filed by Defendant UBS Financial Services Incorporated of Puerto Rico (hereinafter, UBS or Defendant) on February 4, 2020. For the reasons set out below, both the so-called "INFORMATIVE MOTION" and the "AMENDED ANSWER" filed by UBS should be rejected without further consideration.

## I. RELEVANT PROCEDURAL BACKGROUND

1. The Complaint that gave rise to this case was filed on September 29, 2011, <u>more than eight (8) years ago</u>. This action seeks compensation for damages suffered by the retirees and the Retirement System as a consequence of the grossly negligent conduct and violation of UBS's fiduciary duty in its performance as advisor to the Retirement System. It was first amended on October 28, 2011, before any of the defendants had appeared.

2. As far as UBS is concerned, its first appearance was through a Motion to Dismiss dated March 13, 2012. In essence, it alleged that it had not incurred any liability, without accompanying or reserving any right to file a counterclaim.

3. On March 14, 2013, this Court rendered a Judgment, ordering the dismissal of the case, for alleged lack of legal standing. Following the proper proceedings, the Court of Appeals revoked that Judgment and ordered that the proceedings be continued.

4. In the meantime, and with no response filed from any of the defendants, a Second Amended Complaint was filed on April 16, 2013 to include some of the individual plaintiffs.

5. In light of UBS's failure to answer the Complaint, on February 27, 2015, Plaintiffs diligently sought the entry of default against them, to which UBS objected.

6. Subsequently, on June 4, 2015, UBS filed a Second Motion to Dismiss, essentially the same as the first and without accompanying or reserving any right to file a counterclaim.

7. On September 26, 2016, Plaintiffs informed that the Retirement System ceased to be an involuntary plaintiff and became a voluntary Plaintiff in the above-captioned case.

8. By Resolution of December 2, 2016, the Court ordered the Retirement System to file an Amended Complaint to set out its allegations.

9. On January 20, 2017, pursuant to the Court's order, Plaintiffs filed a "THIRD AMENDED COMPLAINT". In essence, the amendment was only intended to amend the caption and remove the names of those Defendants who were no longer required to be in the case.

10. The Court should take notice that as of that date, the Retirement System had not resorted to Chapter III of the PROMESA Act. Nor did it resort thereto during the following 30 days.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

Translation Page **2** of **17**

CERTIFIED TRANSLATION:

It was not until March 2017 that the Retirement System resorted to the benefits of that law, and UBS could have answered the Third Amended Complaint in due time and filed its Counterclaim, but it failed to do so.

11. After several requests for extensions and other developments, on May 3, 2017, Defendants UBS filed its "ANSWER TO THIRD AMENDED COMPLAINT. **At that time, Defendants also failed to include a Counterclaim**.

12. On February 13, 2019, the Court of First Instance rendered two Partial Judgments ordering to close the case by voluntary dismissal without prejudice as to Santander Securities, LLC., and Samuel Ramirez & Company, Inc.; and voluntary dismissal with prejudice as to attorney Héctor Mayol Kauffman.

13. On March 6, 2019, as a result of the JUDGMENTS BY VOLUNTARY DISMISSAL WITHOUT PREJUDICE, and solely for the purpose of further refining and simplifying the allegations, Plaintiffs filed a "FOURTH AMENDED COMPLAINT", which was authorized by the Court as per Order of April 15, 2019.

14. **On March 11, 2019, UBS filed a brief entitled "Motion in Compliance of Order Regarding Motion for Authorization to File Fourth Amended Complaint," in which it acknowledged that "the proposed amendments do not add any new causes of action against Defendants UBS". At that time, UBS also did not file or announce any counterclaim**.

15. On April 29, 2019, Defendants UBS answered the "FOURTH AMENDED COMPLAINT". That same day, however, they also announced for the first time, their "intention" to file a Counterclaim, once they obtained permission to do so from the US District Court for the District of Puerto Rico (hereinafter the "US District Court"), because the Employee Retirement System of the Government of the Commonwealth of Puerto Rico (hereinafter the "Employee Retirement System") was under an Automatic Stay Order, pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), 42 U.S.C. §2101 *et seq*.

16. On June 27, Plaintiffs filed an "OBJECTION TO UBS'S INTENTION TO REQUEST AUTHORIZATION TO FILE A COUNTERCLAIM," stating that, as a mandatory counterclaim governed by Rule 11.1 of Civil Procedure, 32 LPRA App. V, R.11.1, the Counterclaim should have been filed at the time of filing its first responsive allegation, that even so UBS was bound to first request authorization from the Court and that a Counterclaim at this point in time, it would only delay the prompt resolution of this lawsuit.

17. In particular, Plaintiffs stated that the counterclaim sought by Defendants is

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

mandatory pursuant to Rule 11.1 of the Civil Procedure, 32 LPRA App. V R.11.5. Therefore, any counterclaim should have been filed at the time of filing the first responsive allegation. Defendants failed to do so. In order to file a mandatory counterclaim at this stage of the proceedings, UBS is obliged to first seek authorization from the Court, upon demonstrating <u>just cause</u> for its oversight, inadvertence or excusable neglect, or when justice requires. *See*, Rule 11.5 of Civil Procedure, 32 LPRA App V, R. 11.5. In addition, Plaintiffs argued that a counterclaim at this stage would only delay the earliest resolution of this lawsuit, <u>in which a motion for partial summary judgment was filed</u>, which could end the issue of finding Defendants' liability.

18. With respect to Defendant UBS's "intention" to file a Counterclaim on June 21, 2019, but notified on September 27, 2019, this Court ruled "Nothing to provide. The Clerk's Office must withdraw from the court record the exhibits attached to the motion. Defendant UBS has 5 days to collect the documents at the Clerk's Office or consent to their disposal".

19. In the meantime, on August 1, 2019, and without any counterclaim having been filed or accepted, a Motion for Partial Summary Judgment was filed by Plaintiffs, on the issue of the liability incurred by UBS. This motion is before the Court's consideration. That being so, the claim that the case is at an early stage, as UBS wrongly contends, is not correct.

## II. ARGUMENT

**A. PERMISSION GRANTED BY THE HONORABLE LAURA TAYLOR SWAIN UNDER PROMESA WAS LIMITED TO THE "FILING" OF THE "COUNTERCLAIM", CLARIFYING THAT ITS ACCEPTANCE WAS SUBJECT TO THE ABSOLUTE DISCRETION OF THIS COURT.**

20. As admitted by UBS in its "INFORMATIVE MOTION", the US District Court partially lifted the automatic stay solely with the purpose of allowing the filing of the Counterclaim.

21. The Court ruled on this matter during a hearing held before Honorable Laura Taylor Swain on December 22, 2019. (Copy of relevant pages of the transcript of the hearing held are attached hereto – EXHIBIT 1)

22. At said hearing, Judge Laura Taylor Swain made it clear to UBS attorney Paul Lockwood that she could not order the Commonwealth Court to do anything about whether or not it accepted the counterclaim. Let us see.

> *"*...THE COURT: And so by speaking in terms of filing of counterclaims, you're not meaning to suggest that that would be done in any way that would be inconsistent with whatever procedures apply in Commonwealth Court, so that if it turned out the Commonwealth Court required an application to do it and said it wasn't as of right, you would deal with that in the Commonwealth Court, correct?
>
> MR. LOCKWOOD:   Correct, Your Honor. We're not asking you to tell the Commonwealth Court how to conduct their procedures...".

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

**Transcript - page 112, line 25 to page 112, line 9.**

23.  Later, and addressing the undersigned attorney (Harold D. Vicente), the Honorable Laura Taylor Swain reiterated that, even if she were to lift the stay in a limited manner, as requested by UBS, the decision on allowing the Counterclaim rested solely with this Honorable Court. Let us see.

> "THE COURT: But, sir, before you go on there, **why shouldn't the state Court, the Commonwealth Court have the opportunity to decide whether it believes these counterclaims should be entertained** in that litigation, rather than me taking a perspective on what is or isn't relevant to the state Court litigation?
>
> All this proposed Order would do is allow UBS to go to the state Court, and in whatever way is procedurally appropriate, say here are the counterclaims that I want to assert here. And you would be able to argue to the Commonwealth Court that they are outside the scope of your action or too late or whatever.
>
> MR. VICENTE: Your Honor, 1 have absolutely no problem with that. Asa matter of fact, I **agree that the Commonwealth Court is the only Court that can decide whether it is going to allow an untimely filing of a counterclaim.**
>
> Because, by the way, the Complaint in this case, the Third Amended Complaint was filed a year ago or so, months ago. And UBS filed its Answer to that Complaint and did not file a counterclaim."

**Transcript - page 117, lines 4-23.** (Emphasis added).

24.  See also, what happened and what was reported on pages 122 and 123 of the transcript, with respect to the wording and scope of the order under consideration:

> "THE COURT: And I will hear further from others, I'm sure.
>
> So it would say, 'without waiver of and subject to any and all defenses.' And then I **would add, comma, 'and the Commonwealth Court shall have sole discretion as to whether to permit the filing and litigation of the counterclaim.'**
>
> Does that-
>
> MR. VICENTE: Would you repeat that again?
>
> THE COURT: And the Commonwealth -
>
> MR. VICENTE: Remember that English is not my first language.
>
> THE COURT: But you're way ahead of my Spanish, so thank you for bearing with me.
>
> MR. VICENTE: Thank you for that. I try.
>
> THE COURT: I **would add, 'and the Commonwealth Court shall have sole discretion as to whether to permit the filing and litigation of the counterclaim.'**
>
> MR. VICENTE: Perfect. Perfect...".

**Transcript - page 122, lines 14-25 to page 123, lines 1-6.** (Emphasis added).

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

25. Based on these understandings, and as it had previously stated, the US District Court issued its Order on December 16, 2019, entitled "ORDER GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY TO FILE COUNTERCLAIMS" (EXHIBIT 2).

26. It is important to note that Judge Laura Taylor Swain granted limited permission to UBS ("Limited Relief'), that is, only to "file" the Counterclaim and, as appropriate, based on Judicial Comity ("Comity"), but acceptance of the Counterclaim was subject to the sole discretion of this Court, by providing that "**The Commonwealth Court shall have the sole discretion as to any procedural requirements for presenting the Counterclaims and as to any litigation of the Counterclaims in that Court**".

27. The reasons why this Honorable Court should not allow the Counterclaim are explained hereunder; however, it is important at this time to bring to the Court's attention the real reason for UBS to insist that this Honorable Tribunal accept the Counterclaim, which is about a dispute that is not before this Court.

28. UBS insists that the Court accept the counterclaim, because it hopes that this will bring the further processing of this case to a standstill. In other words, this is a new delaying tactic on the part of UBS. This is because, as the Order of Justice Laura Taylor Swain indicates, if this Honorable Court accepts the Counterclaim, the automatic stay could take effect. This is clear from the following language, paragraph 3 of Justice Laura Taylor Swain's Order: "The automatic stay will, as a matter of law, stay further prosecution and defense of the proposed counterclaims upon their filing in the ERS Action ...".

29. Therefore, although UBS knows, and even has been acknowledged by its counsel, that the issue of the validity of the Bonds is not before this Honorable Court, the purpose of its strategy is clear: to bring this case to a standstill. We respectfully submit that, given the great importance of this case and what it means to hundreds of thousands of public employees, both active and retired, this Honorable Court should reject without further proceedings the Counterclaim that UBS is belatedly attempting to file as part of its strategy to delay the adjudication of this case

B. **UNSUITABILITY OF THE COUNTERCLAIM**

30. In our jurisdiction, a party may bring a claim against an adverse party through the mechanism of a counterclaim. Under current procedural law, there are two types of counterclaims: permissive and compulsory. *S.L.G. Font Bardon v. Mini-Warehouse* 179 DPR 322, 332 (2010); *Consejo Titulares v. Gomez Estremera* 184 DPR 407, 423-424 (2012). Permissive counterclaims

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

are those claims not arising out of the same act, omission or event that gave rise to the claim of the other party. *Id.*; Rule 11.2 of Civil Procedure, 32 LPRA App. V R. 11.2. Compulsory claims are governed by Rule 11.1 of Civil Procedure.

> **Rule 11.1. Compulsory counterclaims**
>
> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. However, such a claim need not be stated as a counterclaim if at the time the action was commenced the claim was the **subject of another pending action**.[2]

32 LPRA App. V R. 11.1 (Emphasis added).

31. The Supreme Court has reiterated that a party with a claim arising out of the same act, omission or event that is the subject of a complaint must notify its counterpart of a counterclaim **at the time of filing his reply**.

32. Rule 11.1, *supra*, "requires the defendant to make, <u>at the time of his reply</u>, any compulsory claim, that is, any claim against the adverse party, if it arises from the action, omission or event which gives rise to the plaintiff's claim". *Neca Mortg. Corp. v. A & W Dev. S.E.,* 137 DPR 860, 866 (1995); *Consejo Titulares v. Gómez Estremera, supra*, at 424 (emphasis added).

33. A counterclaim is compulsory, according to the criteria established by the Supreme Court, when the following requirements are met:

> ... if there is a logical relationship between the claim asserted in the suit and the one that is the subject of the counterclaim; (2) when the essential facts of both claims are so linked that judicial economy requires that they be heard together; (3) if the issues in and law between the two claims are the same; (4) if the doctrine of *res judicata* would preclude an independent action; and (5) if both claims arise from the same evidence and are logically linked.

*Consejo Titulares v. Gómez Estremera, supra*, at 424-425 (citations omitted).

34. The Supreme Court has emphasized that a compulsory counterclaim that is not timely filed is waived, thus resulting in an adjudication on the merits:

> However, if a compulsory counterclaim is not filed in a timely manner, the cause of action giving rise to it is waived, and the facts and claims are fully adjudicated without the defendant being able to subsequently file a claim arising from the same events. By analogy, the principle of *res judicata* shall apply to it, to the effect that it shall be conclusive in relation to those matters which could have been raised and were not.

*Consejo Titulares v. Gómez Estremera, supra*, at 425 (citations omitted).

---

[2] The position that Defendant intends to introduce in this litigation by way of the alleged "Counterclaim" is already being litigated at PROMESA, that is, it is already the subject of a pending action. There is no reason to allow Defendant to introduce the same argument in this case in which the validity of the bond issuance is not in dispute.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

35. In light of this procedural regulation, it is quite clear that (i) what UBS is now belatedly attempting to file is a compulsory claim (because it shares common issues of fact and law with the Complaint); (ii) that was not filed in a timely manner, that is, at the time of the answering the Complaint (May 3, 2017).

36. In the instant case, UBS filed its Answer to Third Amended Complaint on May 3, 2017, that is, almost **3 years** ago. Then, in Plaintiffs' process to amend that allegation and file the Fourth Amended Complaint as per a brief filed on March 11, 2019, UBS acknowledged that "**the proposed amendments do not add any new causes of action against Defendants UBS**". Accordingly, it must be concluded that UBS failed to file its Counterclaim at the time it made its responsive allegations, as so required.

37. On the other hand, even if it were to be determined that the claim is only permissible, which is denied, all the more reason why this Court should not accept the Counterclaim proposed by UBS, because that matter is already the subject of another dispute. To bring it here at this stage of the litigation, when this Honorable Court has before it a motion for partial summary judgment, would be entirely improper, contrary to law, and particularly for the purpose of our legal system to achieve the just, speedy and inexpensive determination of this action.

38. Accordingly, and in view of the fact that this dispute originated more than 8 years ago, it is appropriate that this Honorable Court apply the Rule and thereby deny the filing of UBS's alleged Counterclaim at this stage of the proceedings.

39. Conversely, our procedural rules provide for other types of counterclaims, such as the one that arises after the responsive pleading and the omitted counterclaim, both of which are set forth in Rules 11.4 and 11.5 of Civil Procedure, 32 LPRA App. V, RR 11.4 & 11.5.

40. As for the first, it must be ruled out that the facts giving rise to the counterclaim arose after May 3, 2017. Quite the contrary. The counterclaim is based on facts that precede even the filing of the first complaint in this case, because they go back to the dates the bonds were issued. Accordingly, UBS has no right to a remedy under Rule 11.4 of Civil Procedure, *supra.*

41. As for the second, a counterclaim is omitted "[w]hen a pleader fails to set up a counterclaim **through oversight, inadvertence or excusable neglect, or when justice requires**, that party may, withy leave of court, allege the counterclaim by amendment". 32 LPRA App. V, R. 11.5 (emphasis added).

42. In this case, UBS has not raised, **let alone demonstrated** that the reason it failed

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

to file its purported counterclaim on **May 3, 2017** was due to its **"oversight, inadvertence or excusable neglect"**, as required by the Rule. Much less has it shown that "justice so requires". Therefore, UBS would also not be entitled to file the alleged Counterclaim under Rule 11(5) of Civil Procedure, *supra.*

43. Lastly, we submit that in this case the Counterclaim is unsuitable at this stage because a Motion for Partial Summary Judgment concerning the aspect of liability incurred by UBS is still pending. This motion was intended to expedite and simplify the case pursuant to Rule 1 of Civil Procedure, 32 LPRA App. V, R. 1, to achieve the just, speedy and inexpensive determination of an action that has been going on for more than 8 years. Allowing now a Counterclaim would unnecessarily delay the proceedings in this case which is already well advanced by virtue of the above-mentioned dispositive motion that is before us.

44. On the latter, we emphasize that the Court of First Instance has wide discretion to govern the proceedings. *Lluch v. España Service Sta.*, 117 DPR 729 (1986); *Fine Art Wallpaper v. Wolf,* 102 DPR 451 (1974). It also has broad discretion to dispose of the proceedings before it so as to ensure the most efficient administration of justice, and it is called upon to actively intervene to manage the proceedings and direct them in such a way as to achieve a just, speedy and economical resolution of the cases. *Vives Vázquez v. E.L.A.*, 142 DPR 117 (1996), *Vellón v. Squibb Mfg. Inc.* 117 DPR 838 (1986).

45. It is precisely under the pallium of that broad discretion that this Honorable Court did not allow the appearing party to reply to UBS's opposition to the dispositive motion. Much less should it now allow the original allegations to be amended in order to add a new allegation, which is not even part of the partial summary judgment motion that has been submitted.

46. To summarize, it should be resolved as a matter of law that UBS's alleged counterclaim (i) is compulsory, (ii) should have been filed on May 3, 2017 when UBS answered the Third Amended Complaint, and (iii) by failing to do so, the counterclaim was waived. The result is no different if the dispute is analyzed from a discretionary aspect, since as discussed above, UBS's claim to file a Counterclaim at this time should be rejected in the interest of achieving the prompt, speedy and economical resolution of this action, which has been pending in the Island's courts for more than 8 years and in which a dispositive motion has been submitted.

47. Lastly, we clarify that, even though the appearing party has amended its allegation four times, it was done to **eliminate and simplify** allegations, not to bring in new ones, as UBS intends to do at this point. In fact, one of the times the Complaint was amended was solely and

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

exclusively to comply with an Order rendered by this Honorable Court.

### C. THE VALIDITY OF THE BONDS ISSUED IN 2008 BY THE RETIREMENT SYSTEM IS NEITHER BEING LITIGATED NOR DISPUTED IN THIS CASE

48. The reason for UBS's request in the proposed Counterclaim is summarized in paragraph 29 thereof. Let us see.

> …29. Therefore, there is no doubt that the **current position of the ERS is that the Bonds** it issued were ultra vires and invalid under Puerto Rico law. The dishonest conduct of the ERS with respect to the legality of the Bonds should not be validated by this Court. UBS Financial respectfully contends that the ERS was right the first time - that the Bonds were legally issued in 2008. But to the extent the US District Court (or this Court) determine **that the Bonds were not duly authorized, the representations made in the Purchase Contracts assign to the ERS the risk of illegality of the Bonds. In the instant lawsuit, the ERS improperly seeks to blame UBS Financial for the legal structure** of the Bonds, when the reality is that the ERS and its advisors were the ones really responsible for such determinations. **To the extent that it is determined that the Bonds were not legally authorized**, then the ERS has breached the Purchase Contracts and is liable to UBS Financial for damages resulting from such breaches. (Emphasis ours).

49. Throughout the entire Counterclaim proposed by UBS, the following language is repeated in one form or another "to the extent that it is determined that the Bonds were not legally authorized, then the ERS has breached the Purchase Contracts and is liable to UBS Financial for damages resulting from such breaches".

> **Proposed Counterclaim** – Paragraph 33:
>
> 33. In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS will have materially breached its contractual obligations under the Purchase Contracts..."
>
> **Proposed Counterclaim** – Paragraph 34:
>
> 34. In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS will have materially breached its contractual obligations under the Purchase Contracts..."
>
> **Proposed Counterclaim** – Paragraph 35:
>
> 35. In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS will have materially breached its contractual obligations under the Purchase Contracts..."
>
> **Proposed Counterclaim** – Paragraph 36:
>
> 36. UBS Financial expressly relied on the veracity of the foregoing representations when entering into the Purchase Contracts.
>
> **Proposed Counterclaim** – Paragraph 37:
>
> 37. In the event that the Bonds are determined to be illegal or issued in an invalid manner, material breaches of the Purchase Contracts by the ERS will have caused UBS Financial to suffer substantial damages…"

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

**Proposed Counterclaim** – Paragraph 39:

39. In the event that UBS Financial is found liable to the Beneficiaries Plaintiffs, such liability shall have emerged, in whole or in part, due to the ERS's material breach of its obligations under the Purchase Contracts."

**Proposed Counterclaim** – Paragraph 44:

44. In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS shall have misrepresented in the *Official Statements*..."

**Proposed Counterclaim** – Paragraph 45:

45. In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS falsely represented in the *[Official Statements]...*"

**Proposed Counterclaim** – Paragraph 46:

46. In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS falsely represented in the *Bond Resolution..."*

**Proposed Counterclaim** – Paragraph 47:

47. In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS falsely represented in the *Bond Resolution*…"

**Proposed Counterclaim** – Paragraph 48:

48. In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS falsely represented in the *Bond Resolution*…"

**Proposed Counterclaim** – Paragraph 49:

49. In the event that the Bonds are determined to be illegal or issued in an invalid manner, the ERS omitted the material facts of the *[Official Statements]*…"

50.   Contrary to UBS's assertion, there should not be the faintest doubt that in this case the Plaintiff has not challenged the validity or invalidity of the Bonds issued by the Retirement System. Thus, it suffices to examine the "FOURTH AMENDED COMPLAINT", as well as the "MOTION FOR PARTIAL SUMMARY JUDGMENT" which is before the Court. But there is more.

51.   UBS insists that paragraph 1.6 of the "FOURTH AMENDED COMPLAINT" raises the issue of the legality of the Bonds. UBS is mistaken. Paragraph 1.6 is merely an introductory paragraph to emphasize and highlight UBS's negligence, clear conflict of interest and gross violation of its fiduciary duties to the Retirement System, as well as to the hundreds of thousands of retirees who have been and will continue to be affected by the unlawful conduct of that financial institution.

52.   As an issue in fact, the following paragraph, that is, paragraph 1.7 of the "FOURTH AMENDED COMPLAINT" summarizes it, by providing

> 1.7 This Fourth Amended Complaint is filed for the benefit of the System and the individual Claimants identified below, to recover the serious damages suffered both by the System and by said individual Plaintiffs, **caused by the grossly negligent conduct of UBS and UBS Consulting Services of Puerto Rico** ("UBS

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

Consulting"). (Emphasis added)

53. This is also corroborated upon review of the two Causes of Action filed against the UBS Defendants in the "FOURTH AMENDED COMPLAINT". To this end, it suffices to cite the two paragraphs that summarize the two aforementioned Causes of Action:

### VI. FIRST CAUSE OF ACTION/VIOLATION OF CONTRACTUAL DUTIES BY UBS AND UBS CONSULTING

6.23. The conduct of UBS and UBS Consulting, as referred to above in this Fourth Amended Complaint, **was illicit, reckless, grossly negligent, violated its obligations to the System** and therefore has caused, causes and will cause damage to the System in multi-million-dollar amounts, as well as damages to the Plaintiffs herein. (Emphasis added).

### VII. SECOND CAUSE OF ACTION/SECTION 1802 OF THE PUERTO RICO CIVIL CODE /UBS AND UBS CONSULTING

7.2. **The grossly negligent and illicit conduct of UBS and UBS Consulting** in the while providing the services they were required to render to the System and the breach by such defendants of their contractual, non-contractual and fiduciary duties to the System caused the System multi-million dollar damages, as explained above in this Fourth Amended Complaint, and also caused damages to the Plaintiffs, all of which render defendants liable under, among others, Section 1802 of the Puerto Rico Civil Code. (Emphasis added).

D. **THE HEARING HELD ON NOVEMBER 26, 2019 MADE IT CLEAR THAT THE NULLITY OF THE BONDS WAS NOT A DISPUTE BEFORE THIS COURT**

54. Furthermore, during the hearing held on November 26, 2019, the Court made it clear to UBS's lawyers that the issue of the validity or invalidity of the bonds was not before this Court. **In fact, in open court, attorney Quiñones accepted as correct the Judge's statements that the issue of the validity of the Bonds was not before her**. The Court's pronouncement, as well as the <u>**judicial admission**</u> made by attorney Quiñones, clearly arises from the transcript of this hearing, which is attached hereto as **EXHIBIT 3**. Let's look at what happened:

…Now, another thing that attorney Hernández Denton said. This case, **the controversy I have to resolve is not the same as the one in the Federal Court**. And what they do there, well, fine and dandy. Whatever they do there. I don't have -- my jurisdiction doesn't extend that far. So in this case the evidence that is going to be sought is the evidence pertaining to the allegations about the nature of the transaction between UBS and the Retirement System.

Look, **what's at issue here is which representations, if any, did UBS make to the Retirement System when it sold, marketed, devised or did not devise the sale of these bonds**. That's a controversy in this case. So that's evidence that I need.

**Transcript - page 35, lines 10-24 to page 36, line 1.** (Emphasis added).

55. Later on, during that hearing, the following exchange took place:

…Because, again, using the example of the US District Court, there's another matter over there.

CERTIFIED TRANSLATION:

ATTY. QUIÑONES: Well, if I may, Your Honor, there's a matter that they are -

HON. JUDGE: There's another matter over there.

ATTY. QUIÑONES: They are related.

HON. JUDGE: Which has tangency with this one, yes.

ATTY. QUIÑONES: The bond issuances are being challenged in those proceedings, just as they are being challenged here, Your Honor.

ATTY. PUJOLS: Your Honor, that's totally false, what he's saying.

ATTY. QUIÑONES. They're being challenged in an "adverse procedure", the bonds issued by the Retirement System.

ATTY. PUJOLS: But that's not being challenged here. And you're saying that we are challenging that.

ATTY. QUIÑONES: The validity of those issuances is being contested.

ATTY. PUJOLS: No, sir.

ATTY. HERNÁNDEZ: No one has contested them.

HON. JUDGE: Again. Here it's being alleged that UBS gave an advice that deviated from the fiduciary duty that, according to the plaintiffs, it had to the Retirement System. Because it wanted to profit from that sale. Because as a result of that sale, it collected $35 million in commissions.

And, then, the Retirement System followed UBS's recommendations and by following the UBS's recommendations, well, it was negatively impacted because the recommendations given by UBS did not generate the expected results.

There's no mention here that those bonds are wrongly issued, are illegal, whatever. I'm not going to resolve that, the validity of the bonds. They've already been issued.

ATTY QUIÑONES: Your Honor, you're right.

HON. JUDGE: There are some results.

ATTY. QUIÑONES: You're right. And the damages, what can happen-

HON. JUDGE: There is a difference between what's alleged over there and what's alleged over here.

**Transcript - page 60, line 14 to page 62, line 17.** (Emphasis added).

56. As the Court can see, Mr. Quiñones twice accepted that the Court was right, in that the validity of the Bonds is not being questioned in this case. The Court's ruling is final and non-appealable, since UBS has not brought any action questioning the same. Furthermore, the **<u>judicial admission</u>** made by attorney Quiñones is binding.[3]

---

[3] Stipulation of a fact or certain evidence by the parties is binding upon those who undersigned it and the persons they legally represent, *Diaz Ayala et al. v. E.L.A.*, 153 DPR 675,693 (2001). The consequence of such stipulations in court proceedings is that they will be construed as **judicial admission** and will imply that the **party waives any contention to the contrary**. *Municipio v. Professional,* 171 DPR 219 (2007); *Pueblo v. Figueroa*, 170 DPR 932 (2007); *P.R. Glass Corp. v. Tribunal Superior,* 103 DPR 223. 231 (1975).

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

57. Bringing a new and unrelated dispute to the Plaintiffs' claim by way of a counterclaim is only justified in trying to delay the prompt adjudication of this important case.

### III. **CONCLUSION AND PRAYER**

58. In short, UBS's intended counterclaim is not appropriate at this stage for various procedural and substantive reasons.

59. It is not procedurally correct because it was waived on May 3, 2017, when UBS answered the Third Amended Complaint without filing a counterclaim. Furthermore, because the case has been before the Island's Courts for more than 8 years and, in particular, because a dispositive motion has been filed regarding UBS's liability. Allowing a counterclaim at this stage of the proceedings would unnecessarily delay a case of high public interest and in which a motion for partial summary judgment has already been filed on the liability incurred by Defendant. In other words, the case is considerably advanced.

60. It is not substantively correct because it is not correct that the bond issuance is being litigated in this case, as this Honorable Court well resolved during the hearing of November 26, 2019. The best evidence that in this case the validity of the bond issuance is not in dispute is the judicial admission made by UBS stated by attorney Quiñones when that day, in open court, he indicated that the Honorable Court's conclusion that the validity of the bonds was not in dispute in this case **was correct**.

61. It is therefore appropriate that this Honorable Court deny UBS's "intention" to file a compulsory counterclaim after it has been waived, and so we pray.

**WHEREFORE**, Plaintiffs respectfully request that the following be rejected and that instead, dismiss and declare with no merit and take no further action: (i) the so-called "INFORMATION MOTION"; and (ii) the "AMENDED ANSWER to the FOURTH AMENDED COMPLAINT", both filed by UBS; with any other remedy that may be available at law in favor of the appearing parties.

WE HEREBY CERTIFY: That a true and exact copy of this motion was sent today to: **PAUL J. LOCKWOOD, ESQ. - paul.lockwood@skadden.com**; **NICOLE A. DISALVO, ESQ., Nicole.DiSalvo@skadden.com**; and ELISA M.C.KLEIN **Elisa.Klein@skadden.com;** **ROBERTO C. QUIÑONES RIVERA, ESQ., - rcq@mcvpr.com**; MYRGIA M. PALACIOS CABRERA, ESQ. - **mpc@mcvpr.com.**

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico on this 2nd day of March, 2020.

*[Signatures on the next page]*

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

Translation Page **15** of **17**

CERTIFIED TRANSLATION:

**VICENTE & CUEBAS**
P. O. Box 11609
San Juan, PR 00910-1609
Tel: (787) 751-8000
Fax: (787) 756-5250

[Signed]
**HAROLD D. VICENTE**
SCPR No. 3966
Email: hvicente@vclawpr.com

[Signed]
**HAROLD. D. VICENTE COLÓN**
SCPR No. 11303
Email: hdvc@vclawpr.com

[Signed]
**IVELISSE M. ORTIZ MOREAU**
SCPR No. 18640
Email: iortiz@vclawpr.com

**PUJOL LAW OFFICE, PSC**.
P.O. Box 363042
San Juan, PR 00936-3042
Tel: (787) 724-0900
Fax: (787) 724-1196

[Signed]
**FRANCISCO PUJOL MENESES**
SCPR No. 11883
Email: fpujol@pujollawpr.com

*COUNSEL FOR THE EMPLOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO*

**FEDERICO HERNÁNDEZ DENTON**
P. O. Box 9021279
San Juan, PR 00902-1279
Tel: (787) 758-3542

[Signed]
**FEDERICO HERNÁNDEZ DENTON**
SCPR No. 3846
Emails: fdh@vclawpr.com
        f.hernandezdenton@gmail.com

**PUERTO RICO ATTORNEYS & COUNSELLORS AT LAW**
P. O. Box 362122
San Juan, PR 00936-2122
Tel: (787) 767-1919
Fax: (787) 764-9120

[Signed]
**JOSÉ CHÁVES CARABALLO**
SCPR No. 7953
Email: chaves@fc-law.com

**WOLF POPPER LAW OFFICES, PSC.**
654 Plaza
654 Ave. Muñoz Rivera, Ste. 1001
San Juan, PR 00918
Tel: (787) 522-0200
Fax: (787) 522-0201

**CARLOS LÓPEZ LÓPEZ**
SCPR No. 10526
Email: clopez@wolfpopperpr.com

[Signed]
**RODOLFO CARRIÓN VARGAS**
SCPR No. 13390
Email: rcarrion@wolfpopperpr.com

*COUNSEL FOR THE EMPLOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO*

**ANDRÉU & SAGARDÍA**
261 Ave. Domenech
Hato Rey, PR 00918-3518
Tel: (787) 754-1777
Fax: (787) 763-0845

[Signed]
**JOSÉ A. ANDRÉU FUENTES**
SCPR No. 9088
Email: jaf@andreu-sagarcia.com

*COUNSEL FOR INDIVIDUAL PLAINTIFFS, RETIREES OF THE EMPLOYEE RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO - PEDRO JOSÉ NAZARIO SERRANO, HIS SPOUSE JUANITA SOSA PÉREZ AND THEIR CONJUGAL PARTNERSHIP; JOEL RIVERA MORALES; MARÍA DE LOURDES GÓMEZ PÉREZ; HÉCTOR CRUZ VILLANUEVA; LOURDES*

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:

*RODRÍGUEZ; AND LUIS M. JORDÁN RIVERA*

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.
S/ GLADYS RODRÍGUEZ-FORNARIS

Translation Page **17** of **17**