Objection Deadline: April 7, 2020, 4:00 p.m. AST
Hearing Date: April 22, 2020 9:30 a.m. AST

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |
| THE COMMONWEALTH OF PUERTO RICO and PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>    Movants,<br><br>    -v-<br><br>AMBAC ASSURANCE CORPORATION,<br><br>    Respondent. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 362
<u>FOR ORDER DIRECTING AMBAC TO WITHDRAW COMPLAINT</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

BASIS FOR RELIEF REQUESTED ........................................................................................ 3

    A.    The Ambac Litigation Interferes With the Debtors' Property Rights in Violation of Bankruptcy Code Section 362(a)(3) ................................................... 4

        1.    The Ambac Litigation Interferes With HTA's Property Rights in the Concession Agreement .......................................................................... 4

        2.    The Ambac Litigation Implicates the Debtors' Interests in the Proceeds of the Extension Transaction, Toll Share Revenues, and Other Property ........................................................................................ 5

        3.    The Causes of Action Alleged in the Complaint Are Property of HTA, Not Ambac ...................................................................................... 7

    B.    Seeking a Declaratory Judgment With Respect to Ambac's Lien Violates Bankruptcy Code Section 362(a)(4) ..................................................................... 10

    C.    The Ambac Litigation Violates the Stay as it Seeks to Recover on a Claim Against the Debtor in Violation of Bankruptcy Code Section 362(a)(1) and (a)(6) ...................................................................................................................... 11

    D.    The Complaint Should Be Deemed Void and Without Legal Effect................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Casanova Díaz v. Puerto Rican-American Ins. Co.*,
 No. O-77-287, 1978 WL 48889 (P.R. Jan. 31, 1978) ................................................................6

*Gray v. Tacason (In re Tacason)*,
 No. 12-11879-BAH, 2014 Bankr. LEXIS 5189 (Bankr. D.N.H. Dec. 31, 2014) ......................9

*Houston Pipeline Co. LP v. Bank of Am., N.A.*,
 213 S.W. 3d 418 (Tex. App. 2006) ..........................................................................................11

*I.C.C. v. Holmes Transp., Inc.*,
 931 F.2d 984 (1st Cir. 1991) ....................................................................................................13

*In re Clayton*,
 No. 08-37108, 2010 WL 4482810 (Bankr. S.D. Tex. Oct. 29, 2010) ......................................11

*In re Colonial Realty Co.*,
 980 F.2d 125 (2d Cir. 1992) ....................................................................................................12

*In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*,
 60 B.R. 920 (D.P.R. 1986), *aff'd*, 805 F.2d 440 (1st Cir. 1986) ...............................................5

*In re Elder-Beerman Stores Corp.*,
 195 B.R. 1019 (Bankr. S.D. Ohio 1996) ...................................................................................5

*In re Enron Corp.*,
 306 B.R. 465 (Bankr. S.D.N.Y. 2004) .....................................................................................11

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
 927 F.3d 597 (1st Cir. 2019). Bankruptcy ...............................................................................10

*In re Furlong*,
 660 F.3d 81 (1st Cir. 2011) ........................................................................................................7

*In re Gronczewski*,
 444 B.R. 526 (Bankr. E.D. Pa. 2011) ........................................................................................8

*In re Jefferson County*,
 491 B.R. 277 (Bankr. N.D. Ala. 2013) ......................................................................................6

*In re Pagnini*,
 No. 09-17144-WCH, 2010 Bankr. LEXIS 187 (Bankr. D. Mass. Jan. 26,
 2010) .........................................................................................................................................9

*In re Rosenblum*,
    545 B.R. 846 (Bankr. E.D. Pa. 2016) ..................................................................................8

*In re Santiago*,
    563 B.R. 457 (Bankr. D.P.R. 2017)....................................................................................4

*In re Saunders*,
    101 B.R. 303 (Bankr. N.D. Fla. 1989)..............................................................................12

*In re Soares*,
    107 F.3d 969 (1st Cir. 1997)............................................................................................13

*In re Tribune Co. Fraudulent Conveyance Litigation*,
    946 F.3d 66 (2d Cir. 2019)..........................................................................................9, 12

*Kagan v. Saint Vincents Catholic Med. Ctrs. of New York (In re Saint Vincents
    Catholic Med. Ctrs. of New York)*,
    449 B.R. 209 (S.D.N.Y. 2011)...........................................................................................7

*Kaiser Group Int'l, Inc. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser
    Aluminum Corp.)*,
    315 B.R. 655 (D. Del. 2004)..............................................................................................6

*Kocurek v. Arnold (In re Thurman)*,
    163 B.R. 95 (Bankr.W.D. Tex. 1994)...............................................................................11

*Lex Claims, LLC v. Fin. Oversight & Mgmt. Bd.*,
    853 F.3d 548 (2017)...........................................................................................................5

*Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.)*,
    463 B.R. 28 (Bankr. W.D. Mich. 2012)............................................................................12

*Municipio de Ponce v. Vidal Vilaret*,
    No. 9018, 1945 WL 6003 (P.R. Nov. 15, 1945) ................................................................6

*In re Ontos, Inc.*,
    478 F.3d 427 (1st Cir. 2007)..............................................................................................9

*Phillips v. Diecast Mktg. Innovations, LLC (In re Collecting Concepts)*,
    No. 99-6003-T, 2000 WL 1191026 (Bankr. E.D. Va. Feb. 28, 2000)................................4

*Slabicki v. Gleason (In re Gleason)*,
    466 B.R. 572 (B.A.P. 1st Cir. 2012)..................................................................................7

**STATUTES**

11 U.S.C. § 105(a) ......................................................................................................................4

11 U.S.C. § 362(a)(1)............................................................................................................. passim

11 U.S.C. § 365 ............................................................................................................................... 7

11 U.S.C. § 544 ............................................................................................................................... 8

11 U.S.C. § 546(a) ......................................................................................................................7, 8

11 U.S.C. § 926 ............................................................................................................................... 8

PROMESA § 301(a) ...............................................................................................................1, 4, 8

PROMESA § 303 ............................................................................................................................ 9

PROMESA § 305 ............................................................................................................................ 9

PROMESA § 315(b) ....................................................................................................................... 1

To the Honorable United States District Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways and Transportation Authority ("HTA," and collectively with the Commonwealth, the "Debtors"), as Title III debtors, by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' sole representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] respectfully submit this memorandum of law to support its motion (the "Motion"), pursuant to sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to these cases pursuant to PROMESA section 301(a), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), directing Ambac Assurance Corporation ("Ambac") to withdraw its complaint styled *Ambac Assurance Corporation v. Autopistas Metropolitanas de Puerto Rico, LLC*, Civil No. 3:20-cv-01094 commenced on February 19, 2020 in the United States District Court for the District of Puerto Rico (the "Complaint," a true and correct copy of which is annexed hereto as **Exhibit B**, and such litigation, the "Ambac Litigation"). In support of this Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT[2]

1. Ambac commenced litigation against Autopistas Metropolitanas de Puerto Rico, LLC ("Metropistas"), a Puerto Rican company that holds a concession to operate two Puerto Rican highways, PR-5 and PR-22 (the "Toll Roads"). The Complaint, which Ambac filed with no notice or warning to the Debtors, and without requesting any relief from the automatic stay, seeks to rescind the Concession Extension Agreement executed in April 2016 between HTA and

---

[1] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[2] Capitalized terms used but not defined in the Preliminary Statement shall have the meanings assigned to such terms below or in the Motion.

Metropistas—an agreement to which Ambac is not a party and is crucial to the operations of HTA. Pursuant to the Concession Extension Agreement, HTA agreed to extend Metropistas' concession rights to operate the Toll Roads for an additional ten years and increase Metropistas' share of certain toll revenues from 50% to 75%. Compl. ¶ 50. In exchange, Metropistas made a total lump sum payment of $115 million to HTA (the "Lump Sum Payment") and committed to invest in certain infrastructure improvements and share a percentage of revenues derived therefrom. Compl. ¶ 3.

2. The Ambac Litigation violates the automatic stay because it (i) interferes with HTA's property interests in the Concession Agreement, (ii) seeks to unwind the Extension Transaction, which directly implicates the Debtors' interests in the proceeds thereof as well as their rights to certain revenue streams, (iii) asserts causes of action that, consistent with the provisions of PROMESA and prior rulings of this Court, are the property of the Debtors subject to this Court's exclusive jurisdiction, (iv) seeks a declaratory judgment with respect to Ambac's purported lien against certain toll revenues in violation of Bankruptcy Code section 362(a)(4) as an action to enforce a lien, and (v) seeks to recover on a claim against a debtor in direct violation of Bankruptcy Code section 362(a)(1) and (a)(6).

3. Were the Ambac Litigation to proceed, and if Ambac were to be successful in its arguments, HTA would lose valuable, bargained-for contract rights and causes of action—which remain HTA's exclusive property—and the broad discretion afforded the Oversight Board under PROMESA would be undermined. In sum, the Ambac Litigation is a violation of Bankruptcy Code section 362. Accordingly, this Court should enforce the automatic stay by directing Ambac to withdraw its Complaint by no later than April 24, 2020.[3]

---

[3] The Oversight Board reserves its right to seek sanctions from Ambac due to its filing of the Complaint in a subsequent proceeding. Furthermore, HTA reserves its rights to request compensatory damages, inclusive of its

**BASIS FOR RELIEF REQUESTED**

4. In a transparent attempt to exert pressure on the Title III Debtors, Ambac seeks to challenge the economic and contractual merits of the Concession Extension Agreement, despite its explicit non-objection to those terms in 2016 as stated in the Prior Complaint (at ¶ 1). Indeed, Ambac's prior attempt to procure Metropistas's payment for itself makes it self-evident that Ambac wanted the transaction to occur. On February 19, 2020, Ambac filed the Complaint asserting claims for rescission of contract, unjust enrichment, and declaratory relief. Specifically, Ambac requests (i) rescission of the Concession Extension Agreement between HTA and Metropistas,[4] Compl. Count 1, (ii) restitution from Metropistas for what Ambac claims is Metropistas' unjust enrichment,[5] Compl.Count 2, which would be a cause of action belonging to HTA, and (iii) a lien against the toll collections Ambac wants rescinded from Metropistas, Compl. Count 3. For the reasons set forth below, each of these causes of action either impacts, or seeks to control, property of the Debtors, and therefore Ambac violated the automatic stay in filing the Complaint. On that basis, the Ambac Litigation should be withdrawn because it is a nullity as an act in violation of the automatic stay.

5. Notably, while Ambac is but one of HTA's thousands of creditors, Ambac's Complaint purports to take for Ambac, and Ambac only, all recoveries from Metropistas until Ambac is paid in full. *See* Complaint ¶¶ 89-90.

---

attorneys' fees, to eliminate harm to HTA and the people of Puerto Rico arising from Ambac's violations of the automatic stay.

[4] Ambac contends HTA's fraudulent transfer claims were abandoned because they were not brought within two years. Even if that is correct, HTA's interest in its contracts with Metropistas remains property of HTA and cannot be interfered with by Ambac without violating the automatic stay.

[5] Ambac's Complaint contends HTA abandoned its fraudulent transfer action against Metropistas. Even if that were correct, there is no basis on which HTA could have abandoned a cause of action for unjust enrichment.

3

### A. The Ambac Litigation Interferes With the Debtors' Property Rights in Violation of Bankruptcy Code Section 362(a)(3)

6. Ambac's filing of the Complaint violates Bankruptcy Code section 362(a)(3), applicable here pursuant to PROMESA section 301(a), because it (i) seeks to rescind the Concession Extension Agreement—a contract between HTA and Metropistas—and directly interferes with HTA's interests in the Concession Agreement; (ii) implicates both of the Debtors' property rights to the proceeds obtained as a result of the Concession Extension Agreement; and (iii) asserts causes of action that are property of HTA. Pursuant to Bankruptcy Code section 105(a),[6] the Court is authorized to issue orders carrying out provisions of the Bankruptcy Code. Accordingly, Movants request entry of an order directing Ambac to withdraw its Complaint on the ground it was a nullity because it violates the automatic stay.

#### 1. *The Ambac Litigation Interferes With HTA's Property Rights in the Concession Agreement*

7. Bankruptcy Code section 362(a)(3) stays any act "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). A debtor's contracts are the debtor's property. *See In re Santiago*, 563 B.R. 457, 472 (Bankr. D.P.R. 2017). It is well established that the automatic stay protects the debtor's interest in its contracts against termination or other interference. *See id.*; *Phillips v. Diecast Mktg. Innovations, LLC (In re Collecting Concepts)*, No. 99-6003-T, 2000 WL 1191026, at *3 (Bankr. E.D. Va. Feb. 28, 2000) ("As property of the estate, the debtor's interests in [its] contracts are protected against termination or other interference that would have the effect of removing or

---

[6] Bankruptcy Code section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

4

hindering the debtor's rights in violation of § 362(a)(3)."). The Concession Agreement is a valuable contract belonging to HTA. Among other benefits, the Concession Agreement, as amended, provides HTA with a Toll Road operator through the year 2061, facilitates investment in bi-directional tolling gantries, and entitles HTA to a percentage of the revenues generated therefrom. Compl. ¶¶ 34-35, 50. Any attempt to rescind the Concession Extension Agreement risks depriving HTA of valuable contract rights and interferes with HTA's interests in the Concession Agreement in violation of the automatic stay.[7] *See, e.g.*, *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 60 B.R. 920, 932-33 (D.P.R. 1986), *aff'd*, 805 F.2d 440 (1st Cir. 1986) (civil action by government to terminate contract with debtor was barred by automatic stay); *In re Elder-Beerman Stores Corp.*, 195 B.R. 1019, 1024 (Bankr. S.D. Ohio 1996) ("[W]hile parties may otherwise be permitted to terminate an agreement under state contract law, in bankruptcy such a termination would be in violation of the stay . . .").

2. ***The Ambac Litigation Implicates the Debtors' Interests in the Proceeds of the Extension Transaction, Toll Share Revenues, and Other Property***

8. The Ambac Litigation further violates the automatic stay because, in seeking to unwind the Concession Extension Agreement, it implicates the Debtors' interests in the proceeds thereof, including the Lump Sum Payment, HTA's rights to future toll revenues, and the benefits of Metropistas' investments in bi-directional toll gantries. *Lex Claims, LLC v. Fin. Oversight & Mgmt. Bd.*, 853 F.3d 548, 552 (2017) ("[T]he stay applies to litigation seeking declaratory and injunctive relief at least where, as here, the express purpose of the lawsuit is to preclude the Commonwealth from using its own funds as it sees fit."). Under Puerto Rico law, the effect of a rescission is to void the contract and revert the parties to their prior positions. *See Municipio de*

---

[7] The Complaint seeks to rescind the Concession Extension Agreement. Complaint ¶ 80 (stating the Complaint "seeks an order rescinding the Extension Agreement to the extent necessary to satisfy [Ambac's] claims against PRHTA.").

5

*Ponce v. Vidal Vilaret*, No. 9018, 1945 WL 6003, at *7 (P.R. Nov. 15, 1945); *Casanova Díaz v. Puerto Rican-American Ins. Co.*, No. O-77-287, 1978 WL 48889 (P.R. Jan. 31, 1978).

9. Unwinding the Concession Extension Agreement would require Metropistas to forego its future rights (beginning in 2051) to operate the Toll Roads and to give up its enhanced share of BRT/DTL Toll Revenues. At the same time, HTA could be required to disgorge the $115 million in proceeds to Metropistas, and HTA would forego future toll share revenues derived from new bi-directional tolling gantries. The Debtors could also have to remove the new tolling points that were funded by Metropistas' investments under the Concession Extension Agreement. Complaint ¶ 50 n.3. Furthermore, the Commonwealth could have to return the portion of the $115 million it received from the Concession Extension Agreement. Accordingly, the Ambac Litigation seeks to exercise control over the Debtors' property in a direct violation of the automatic stay. *See, e.g.*, *Kaiser Group Int'l, Inc. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp.)*, 315 B.R. 655, 658-59 (D. Del. 2004) (creditor action against debtor's insurer that implicated the use of funds debtor "had asserted an entitlement to" barred by automatic stay even though it did not name debtor as "[t]he protection of the automatic stay extends to any action or proceeding against an interest of the debtor. The scope of this protection is not determined solely by whom a party chose to name in the proceeding, but rather, by who is the party with a real interest in the litigation."); *see also In re Jefferson County*, 491 B.R. 277, 295 (Bankr. N.D. Ala. 2013) ("§ 362(a)(3) is not limited to actions against the debtor but instead stays 'any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate,' 11 U.S.C. § 362(a)(3), and courts have applied the (a)(3) stay to non-debtor actions that 'have an adverse impact on property of the estate' . . .") (internal cites omitted).[8]

---

[8] *See also, e.g., Kagan v. Saint Vincents Catholic Med. Ctrs. of New York (In re Saint Vincents Catholic Med. Ctrs. of New York)*, 449 B.R. 209, 217-18 (S.D.N.Y. 2011) ("the automatic stay provision is not limited solely to actions

6

### 3. *The Causes of Action Alleged in the Complaint Are Property of HTA, Not Ambac*

10. As the basis for bringing claims against Metropistas, Ambac states in the Complaint:

> [HTA] has not commenced an action to avoid the fraudulent transfers . . . pursuant to section 544(b) of the Bankruptcy Code. Any cause of action in connection therewith is therefore ***deemed abandoned by [HTA] as a matter of law***. ***Such abandoned claims revert to creditors that may bring them under applicable law. Accordingly, the abandoned claims may be brought by Ambac***.

Compl. ¶¶ 68-69 (emphasis added).

11. Ambac is misguided in this assertion for many reasons. First, allowing a creditor to proceed with such a cause of action in this instance would deprive HTA of the ability to assume the contract pursuant to section 365 of the Bankruptcy Code. That is another property right of HTA that Ambac is attempting to control in violation of the automatic stay.

12. Second, Ambac's prosecution of any avoidance action of HTA is counter to the statute in several respects. Bankruptcy Code section 546(a) provides an "action or proceeding under section 544 . . . of this title may not be commenced after the earlier of (1) the later of—(A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee." It is undisputed that Ambac is prosecuting a fraudulent transfer action under section

---

against the debtor, but rather bars actions against even against third-parties that would have an adverse impact on the property of the estate"). Notably, in its response to the motion to transfer the Ambac Litigation to the Title III Court, Ambac asserts that the Ambac Litigation is not subject to the automatic stay "because the [Ambac] Complaint is not against a debtor and does not seek to enforce a lien against property of a bankruptcy estate." *See* Case No. 3:20-cv-01094 [ECF No. 20], at 2. However, the cases it cites for that proposition address the automatic stay in the corporation-versus-shareholder context and are wholly irrelevant here. *Slabicki v. Gleason (In re Gleason)*, 466 B.R. 572, 581 (B.A.P. 1st Cir. 2012) (determining whether individual debtor who served as officer of corporation could enforce automatic stay to prohibit actions taken against him in corporate context); *In re Furlong*, 660 F.3d 81, 90 (1st Cir. 2011) (in context of chapter 7 debtors, automatic stay does not extend to the assets of a corporation in which individual debtors have an interest, even if the interest is 100% of the corporate stock). Moreover, these cases recognize the automatic stay can enforce actions against non-debtors if they would have an adverse impact on a debtor's ability to accomplish its reorganization. *Gleason*, 466 B.R. at 580 (citing *In re R & G Fin. Corp.*, 441 B.R. 401, 409 (Bankr. D.P.R. 2010)).

7

544(b)(1) and two years have passed. The statute says "[a]n action or proceeding under section 544 . . . may not be commenced" after two years. It does not say the action can no longer be prosecuted by the debtor, but can be prosecuted by a creditor. Additionally, PROMESA does not incorporate Bankruptcy Code section 554 which allows the debtor to abandon property. Thus, Ambac's assertion that HTA abandoned the cause of action is legally impossible.

13. Ambac's remedy was, pursuant to Bankruptcy Code section 926 (made applicable by PROMESA § 301(a)), to request the appointment of a trustee to bring the avoidance action before two years passed. After the two years, the action "may not be commenced." Section 926 would serve no purpose if creditors can simply wait for two years to pass and then bring avoidance actions for themselves without requesting the Court to appoint a trustee to bring them.

14. Indeed, by filing the Complaint, Ambac is doing exactly what Congress intended to prevent—it is second-guessing the Oversight Board's decision-making authority regarding the use of the Debtors' property. Following Ambac's logic, any creditor would be able to do so by merely waiting for the two-year statute of limitations to bring avoidance actions under section 544(b) to lapse. This would lead to consequences clearly not aligned with Congress' intent. In addition, this could lead to the absurd result that a debtor must bring a cause of action even it thinks it is not beneficial to the estate, just to prevent the cause of action from being prosecuted by a creditor.

15. Moreover, Ambac's contentions, even if applicable to a case under Title III, are inconsistent with First Circuit jurisprudence, which makes clear creditors do not have standing to bring avoidance actions on behalf of the estate (or debtor) unless (i) "a trustee or debtor in possession unjustifiably fails to pursue the claim," *see In re Ontos Inc.*, 478 F.3d 427, 431 (1st Cir. 2007), (ii) the creditor asks leave of the Court, and (iii) the creditor demonstrates a colorable claim

8

for relief and that prosecution of the fraudulent transfer action would be beneficial to the estate. *See, e.g.*, *In re Pagnini*, No. 09-17144-WCH, 2010 Bankr. LEXIS 187, *6-8 (Bankr. D. Mass. Jan. 26, 2010) ("where a trustee or debtor in possession unjustifiably refuses to act, *the bankruptcy court may allow a creditor to bring suit* on behalf of the estate" but to obtain bankruptcy court permission, a creditor must show that "the suit present[s] a colorable claim or claims for relief that on appropriate proof would support a recovery … [and] whether the action is likely to benefit the estate.") (emphasis added); *Gray v. Tacason (In re Tacason)*, No. 12-11879-BAH, 2014 Bankr. LEXIS 5189, *15-16 (Bankr. D.N.H. Dec. 31, 2014) ("Generally, creditors lack standing to bring fraudulent transfer claims . . . creditors have no ability or standing to prosecute such an action in their own right and for their own benefit, even if they would have had standing to do so outside of bankruptcy."). Therefore, to have standing to bring the Ambac Litigation, Ambac must first seek leave of the court and demonstrate how the Ambac Litigation would benefit the estate (here, the debtor).[9] As Ambac has not done this, Ambac lacks standing to bring the Ambac Litigation and has violated the stay by filing the Complaint.

---

[9] Some out-of-Circuit chapter 11 cases suggest creditors regain standing to bring fraudulent transfer actions following the expiry of the section 546(a) statute of limitations. *See, e.g., In re Rosenblum*, 545 B.R. 846, 857 (Bankr. E.D. Pa. 2016) ("Thus, during the period that a trustee retains exclusive standing, creditors may not raise fraudulent transfer claims, even in state court, until after the trustee's standing expires."); *In re Gronczewski*, 444 B.R. 526, 534 (Bankr. E.D. Pa. 2011) ("trustee's exclusive right to maintain fraudulent transfer action is not in perpetuity and individual creditor may resume prosecution of actions when the trustee no longer has a viable cause of action"). As discussed below, *infra* ¶ 15, this case law is inconsistent with First Circuit jurisprudence, which requires creditors to seek leave of the court and demonstrate benefit to the estate before filing fraudulent transfer claims, without exception. Regardless, it also has no applicability to this PROMESA Title III case: Title III provides only one way for creditors to obtain standing to bring fraudulent transfer claims (Bankruptcy Code section 926), and otherwise safeguards the property and decision-making authority of the debtor from court or creditor interference. *See* PROMESA §§ 303, 305. The potential reversion of standing to creditors after two years would empty section 926 of its content and contravene PROMESA's policy of deferring to the decisions of the debtor regarding the use of its property. Moreover, the reversion of standing to creditors lacks any basis in the language of the Bankruptcy Code, even in the chapter 11 context, as recently noted by the Second Circuit. In *In re Tribune Co. Fraudulent Conveyance Litigation*, 946 F.3d 66 (2d Cir. 2019), the Second Circuit Court of Appeals considered whether rights transferred to a trustee under section 544(b) of the Code, which rights were subject to a safe harbor protecting recipients of constructively fraudulent transfers, are capable of reverting to creditors not subject to the safe harbor defense after the passage of the statute of limitations. It observed that:

> "A contemporaneous reader would . . . notice . . . that no provision for the reversion of claims vested in the trustee et al. by Section 544 exists. . . . [H]aving to draw an inference of reversion of rights

9

16. Ambac may claim the foregoing law does not apply to it because it is not bringing the avoidance action on behalf of the debtor.[10] It is bringing it only for itself. But, that defense cannot hold up because neither the Court nor the other creditors would let Ambac get away with hijacking an avoidance action for itself when all creditors could otherwise bring it.

### B. Seeking a Declaratory Judgment With Respect to Ambac's Lien Violates Bankruptcy Code Section 362(a)(4)

17. The Complaint seeks a declaratory judgment that Ambac has a valid, continuing lien on the toll revenues collected by Metropistas generated by (i) the Toll Roads from 2051 through 2061, and (ii) the Toll Share Increase. *See* Compl., ¶¶ 91-95. Ambac can only have a lien against property of HTA. HTA is the only entity that granted bondholders a lien. Unquestionably, therefore, Ambac seeks a declaration that it holds a lien on property in which HTA has an interest. This violates the stay.

18. The automatic stay encompasses a large universe of creditor actions that might affect the debtor. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 927 F.3d 597, 604 (1st Cir. 2019). Bankruptcy Code section 362(a)(4) specifically stays all actions to "create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4).

19. For purposes of section 362(a)(4), a creditor "enforces" a lien by taking affirmative action, such as filing a lawsuit, foreclosing, or filing a notice of *lis pendens*. *See Kocurek v. Arnold (In re Thurman)*, 163 B.R. 95, 100 (Bankr.W.D. Tex. 1994) ("A lien is . . . enforced by affirmative

---

from that provision's statute of limitations might well have appeared as a leap several bridges too far to such a reader. *Indeed, the vesting of avoidance claims in the trustee . . . and the lack of a statutory basis for reversion might well have suggested to such a reader that Section 544's vesting of avoidance proceedings in the trustee cut off creditors from any avoidance rights other than a share of the proceeds in bankruptcy.*"

*Id.* at 89-90 (emphasis added).

[10] Notably, Ambac purports to bring the Complaint solely for Ambac's benefit (*see* Complaint ¶¶ 89-90), so, by definition, they cannot meet the First Circuit's standard.

action such as filing lawsuits, foreclosing, and filing a notice of *lis pendens*. This type of enforcement action would clearly be stayed by § 362(a)(4)."). Indeed, courts have held an action seeking declaratory relief with respect to a creditor's liens violates the automatic stay pursuant to Bankruptcy Code section 362(a)(4). *See Houston Pipeline Co. LP v. Bank of Am., N.A.*, 213 S.W. 3d 418, 428 (Tex. App. 2006) (declaratory judgment regarding creditors' security interest issued by trial court violated the automatic stay); *In re Clayton*, No. 08-37108, 2010 WL 4482810 (Bankr. S.D. Tex. Oct. 29, 2010) (acceleration of promissory note against debtor violated automatic stay); *see also In re Enron Corp.*, 306 B.R. 465, 471 (Bankr. S.D.N.Y. 2004) (action against debtor seeking declaratory relief violated automatic stay). Accordingly, the declaratory judgment action itself is a violation of the automatic stay.

20. Indeed, Ambac's behavior in filing the Complaint is particularly egregious. The declaratory judgment action alleged in the Complaint is currently the subject of an adversary proceeding filed by the Oversight Board before this Court, where the Oversight Board challenges Ambac's and certain other insurer's purported liens on HTA toll revenues and other revenues "streams." *See* Adv. Proc. No. 20-00007, ECF No. 1; *see also* Adv. Proc. No. 19-363, ECF No. 1. Accordingly, not only is the declaratory judgment action a violation of the stay, but it is also likely a case of forum shopping by Ambac.

### C. The Ambac Litigation Violates the Stay as it Seeks to Recover on a Claim Against the Debtor in Violation of Bankruptcy Code Section 362(a)(1) and (a)(6)

21. Ambac's filing of the Complaint also independently violates Bankruptcy Code section 362(a)(1) as the commencement of an action to recover on a claim against the debtor. Bankruptcy Code section 362(a)(1) stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding . . . to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(1). Similarly, Bankruptcy Code

11

section 362(a)(6) stays "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case."

22. A creditor's filing of a fraudulent transfer claim against a non-debtor third party constitutes an action "to recover a claim against the debtor" and is barred by Bankruptcy Code section 362(a)(1) even if the debtor is not named in the lawsuit. *See, e.g., In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992) ("Upon analysis, a third-party action to recover fraudulently transferred property is properly regarded as undertaken 'to recover a claim against the debtor' and subject to the automatic stay pursuant to § 362(a)(1)."); *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 76 (2d Cir. 2019) ("Although fraudulent conveyance actions are against third parties rather than a debtor, there is case law . . . stating that the automatic stay applies to such actions."); *In re Saunders*, 101 B.R. 303, 305-06 (Bankr. N.D. Fla. 1989) ("While a fraudulent transfer action may be an action against a third party, it is also an action 'to recover a claim against the debtor.' Absent a claim against the debtor, there is no independent basis for the action against the transferee. Moreover, the creditor can only recover property or value thereof received from the debtor sufficient to satisfy the creditor's claim against the debtor. This interpretation is consistent with the legislative history of § 362(a)(1)."). For the same reasons, other cases hold the filing of fraudulent transfer and unjust enrichment actions by creditors against third parties violates Bankruptcy Code section 362(a)(6). *See Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.)*, 463 B.R. 28, 34-35 (Bankr. W.D. Mich. 2012) (holding section 362(a)(6) stayed a creditor's unjust enrichment claim seeking money from third-party bank that had received fraudulent transfers from the debtor, which were traceable to the creditor).

23. Ambac has explicitly stated it filed the Complaint to recover on its claims against HTA. *See, e.g.*, Compl. ¶ 7 ("This action is brought to reclaim the hundreds of millions of dollars

12

in value that was fraudulently transferred to Metropistas to secure the payment of obligations PRHTA owes to Ambac."). As a result, Ambac's filing of the Complaint constituted an action to "recover on a claim against the debtor" and violated the automatic stay under Bankruptcy Code section 362(a)(1) and (a)(6).

### D. The Complaint Should Be Deemed Void and Without Legal Effect

24. Under prevailing First Circuit case law, actions taken in violation of the automatic stay are deemed void and without legal effect. *See In re Soares*, 107 F.3d 969, 976 (1st Cir. 1997) (adopting majority view that violations of the automatic stay are void); *I.C.C. v. Holmes Transp., Inc.*, 931 F.2d 984, 987 (1st Cir. 1991) ("Judicial actions and proceedings, as well as extrajudicial acts, in violation of the automatic stay, are generally void and without legal effect."). Accordingly, the Complaint should be deemed void as the filing thereof is a violation of the automatic stay for the reasons set forth herein.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Debtors respectfully request the Court enter the Proposed Order granting the Motion and such other relief as is just and proper.

Dated: March 31, 2020　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Luis F. del Valle-Emmanuelli*
　　　　　　　　　　　　　　　　　　　　　　　Luis F. del Valle-Emmanuelli
　　　　　　　　　　　　　　　　　　　　　　　USDC-PR No. 209514
　　　　　　　　　　　　　　　　　　　　　　　P.O. Box 79897
　　　　　　　　　　　　　　　　　　　　　　　Carolina, Puerto Rico 00984-9897
　　　　　　　　　　　　　　　　　　　　　　　Tel: 787-647-3503
　　　　　　　　　　　　　　　　　　　　　　　Email: dvelawoffices@gmail.com

　　　　　　　　　　　　　　　　　　　　　　　OF COUNSEL FOR
　　　　　　　　　　　　　　　　　　　　　　　A&S LEGAL STUDIO, PSC
　　　　　　　　　　　　　　　　　　　　　　　434 Avenida Hostos
　　　　　　　　　　　　　　　　　　　　　　　San Juan, PR 00918
　　　　　　　　　　　　　　　　　　　　　　　Tel: 787-751-6764/763-0565
　　　　　　　　　　　　　　　　　　　　　　　Fax: 787-763-8260

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Martin J. Bienenstock*

　　　　　　　　　　　　　　　　　　　　　　　Martin J. Bienenstock
　　　　　　　　　　　　　　　　　　　　　　　Jeffery W. Levitan
　　　　　　　　　　　　　　　　　　　　　　　Ehud Barak
　　　　　　　　　　　　　　　　　　　　　　　(Admitted *Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　　　　**PROSKAUER ROSE LLP**
　　　　　　　　　　　　　　　　　　　　　　　Eleven Times Square
　　　　　　　　　　　　　　　　　　　　　　　New York, NY 10036
　　　　　　　　　　　　　　　　　　　　　　　Tel: (212) 969-3000
　　　　　　　　　　　　　　　　　　　　　　　Fax: (212) 969-2900

　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for the Financial Oversight and Management Board as representative of the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority*

14