Contract No. A-588

LEASE CONTRACT

THIS LEASE CONTRACT, made and entered into as of the First day of January, 1982, by and between the Public Buildings Authority as Lessor (hereinafter sometimes called the "Authority"), and The Department of Justice of the Commonwealth of Puerto Rico (hereinafter sometimes called the "Lessee").

WITNESSETH:

WHEREAS, by Act No. 56 of the Legislature of Puerto Rico, approved June 19, 1958, as amended (hereinafter sometimes called the "Enabling Act"), the Public Buildings Authority was created as a body corporate and politic constituting an instrumentality of the Commonwealth of Puerto Rico (herein called the "Commonwealth") exercising public and essential govermental functions, for the purpose, among others, of providing and operating office buildings, quarters, courts, warehouses, shops and related facilities (hereinafter sometimes called "office buildings" or "public office buildings") for lease to any department agency, instrumentality or municipality of the Commonwealth; and

WHEREAS, the Enabling Act authorizes any department, agency, instrumentality or municipality of the Commonwealth to enter into a lease contract or contracts with the Authority for all or any office building or facilities thereof owned or operated by the Authority and to perform and execute, with the approval of the Governor of Puerto Rico or the official designated by him for such purpose, any and all acts or agreements, stipulations, contracts and transactions that may be necessary, convenient or desirable to perform any such lease contract and to provide for the payment or settlement of any obligation of said department agency instrumentality or municipality; and

WHEREAS, the Authority pursuant to the Enablig Act is financing the cost of constructing certain public office buildings and related facilities by bank loans (hereinafter called the "bank loans") under a revolving line of credit with Banco de Ponce and Morgan Guaranty Trust Company of New York; and

WHEREAS, the Authority has completed the remodeling of an office building and related facilities located at Olimpo Street (Miramar Charterhouse) in the Municipality of San Juan Puerto Rico, generally described as Department of Justice Building (said office building and related facilities being hereinafter called "Office Building No. PBA-1460") containing total rentable space of 165,960 square feet, which Office Building No. PBA-1460 and other office buildings and facilities constructed under the Enabling Act by Authority are to be lease to departments, agencies, instrumentalities and municipalities of the Commonwealth (hereinafter collectively called the "Government Lessees"); and

WHEREAS, the Authority desires to lease to the Lessee and the Lessee desires to lease from the Authority 165,960 square feet of space in Office Building No. PBA-1460, which constitutes 100% of the total rentable space in Office Building No. PBA-1460 leased or to be leased to all Government Lessees (such percentage as the same may be changed as hereinafter provided, being hereinafter called the "Lessee's space percentage"); and

WHEREAS, the Authority intends to issue or has issued its bond anticipation notes (hereinafter called "bond anticipation notes") in a principal amount equal to the total amount of such bank loans which were applied to the payment of the cost of remodeling Office Building No. PBA-1460, including the interest on such loans, and to apply the proceeds of such notes to the payment of such bank loans; and

WHEREAS, the interest on the bond anticipation notes will be paid from the rentals to be paid by the Government Lessees and the principal of said notes will be paid either from the proceeds of the bonds (hereinafter called the "bonds") to be issued by the Authority or from the rentals to be paid by Government Lessees, or from both said bond proceeds and rentals, as the Authority shall determine, and the principal of and the interest on such bonds shall be payable from rentals received by the Authority from the leasing of public office buildings and related facilities pursuant to the Enabling Act;

NOW, THEREFORE, for and in consideration of the mutual promises, covenants and agreements and other good and valuable consideration, the Authority and the Lessee agree as follows:

## ARTICLE I

## LEASE TO LESSEE: TERM

Section 1.01. *Space Leased.* The Authority hereby demises, leases and rents to the Lessee, and the Lessee hereby takes, accepts and rents from the Authority upon and subject to the terms, covenants and conditions hereinafter stated, (i) 165,960 square feet of space in Office Building No. PBA-1460, being 100% of the total rentable space thereof, consisting of the areas outlined in red on the architect's floor plans attached hereto and marked "Exhibit A" and made a part hereof and (ii) and equal percentage of all other space, areas, grounds and facilities financed as, and constituting, a part of Office Building No. PBA-1460. All of such space and other property so leased under this Lease Contract shall be occupied and used by the Lessee for offices and all other purposes as specified in the Enabling Act for its officers and employees in the performance of its functions. The lease of such space and other property under this Lease Contract shall be for a term of thirty ( 30 ) years, beginning on the date first above written and ending on December 30, 2012.

Section 1.02. *Additional Space.* The Lessee, at its request, with the approval of the Governor or the officer whom he may delegate, and subject to the terms and from time to time may be available in Office No. PBA-1460 for the authorized use mentioned in Section 1.01 hereof (the total space leased by the Lessee at any time under this Lease Contract being hereinafter called the "Lessee's space").

Section 1.03. <u>Other Occupancy.</u> For the purposes of determining the total rentable space and Lessee's space percentage, there shall be excluded any space in Office Building No. <u>PBA-1460</u> which shall be leased or otherwise made available from time to time for use and occupancy by others than Government Lessees.

Section 1.04. <u>Authority's Right to Rescind Lease Contract.</u> Should the Authority deem it necessary this contract may be rescinded and Lessee requested to negociate a new one, upon giving at least ninety (90) days written notice in advance.

ARTICLE II

RENTALS PAYABLE

Section 2.01. <u>Annual Rental.</u> The Lessee covenants and agrees to pay not later than the dates hereinbelow specified, to the Authority as rent for the Lessee's space during the term of this Lease Contract a total rental (herein called the "Rental") which in each year of such term shall be the sum of the following:

(a) the amount (in each year) of $\underline{\$1,039,451}$ (herein called the "Debt Service Rental") for the proportionate portion, under the Enabling Act, of the total interest, principal and amortization requirements of the bonds payable in such year allocated to the Lessee hereunder, and

(b) an amount (in each year) equal to the Lessee's share of the expenses of operation and maintenance for such year of Office Building No. <u>PBA-1460</u> (herein called the "Operating Rental"), which amount has been reasonable estimated to be and shall, for the purposes hereof, be a minimum of $\underline{\$2.992925}$ per square foot for each square foot of Lessee's space in such year, subject to such adjustments as are provided in this Lease Contract, including the succeeding Section hereof.

Section 2.02. <u>Adjustments of Operating Rental.</u> The Lessee shall also pay as Operating Rental in each year during the term hereof such additional amount, if any, equal to a percentage, corresponding to the Lessee's space percentage, of the actual expenses incurred by the Authority for the operation and maintenance of Office Building No. <u>PBA-1460</u> in such year in excess of the estimated amount equal to <u>one dollar ($1.00)</u> per square foot of rentable space in said Buidling. Such additional amount shall be payable only after the Authority shall have given the Lessee at least thirty days written notice thereof.

Section 2.03. <u>Rental Instalments.</u> The Rental for each year shall be paid to the Authority by the Lessee in monthly instalments of <u>one hundred twenty eight thousand thirteen and 08/100 dollars ($128,013.08)</u> payable on the last day of <u>January, 1982</u> and on the last day of each month thereafter until and including <u>December 30, 2012</u>, subject to any increase hereunder.

Section 2.04. <u>Adjustments of Rentals.</u> In the event that additional Notes are issued by the Authority to finance temporarily any additional costs of the Lease Facilities, the Note Service Rental shall be increased by such amount as the Authority determines is required to pay the interest thereon and to amortize an amount equal to the principal of such additional Notes over a period of 25 years. Upon the retirement of any Notes from the proceeds of the Loan or otherwise, the Note Service Rental (from thereon the "Loan Service Rental") shall be adjusted by such amount as the Authority determines was included in the computation of such rental on account of the principal of and interest on that principal amount of Notes which is so retired. Increases in the construction cost and/or if the construction costs exceed the estimated financing, adjustments of rentals will be necessary.

Section 2.05. <u>Deposit of Debt Service Rental.</u> The amount received as Debt Service Rental shall be deposited by the Authority in its name to the credit of appropriate accounts in a sinking fund in a bank located in New York, N.Y. selected by the Authority (such bank being hereinafter called the "New York Bank") and shall be held in trust and applied for the sole purpose of paying the interest on and the principal, including any redemption premium, of bond anticipation notes and bonds issued by the Authority under and secured by a bond resolution (hereinafter called the "Bond Resolution"), for the financing of Office Building No. <u>PBA-1460</u> and such other public office buildings and related facilities as the Authority shall combine for financing purposes (all such buildings, including Office Building No. <u>PBA-1460</u>, and facilities being herein called the "Project") and any additional public office buildings hereafter financed, and to pay any outstanding bank loans incurred by the Authority for such purposes.

The Bond Resolution shall in any event be subject to approval as to form and substance by the Government Development Bank for Puerto Rico.

Section 2.06. <u>Deposit of Operating Rental.</u> The amount received as Operating Rental shall be deposited by the Authority in its name to the credit of an operating fund in a bank located in Puerto Rico selected by the Authority (such bank being hereinafter called the "Puerto Rican Bank") and shall be used for the purpose of paying the expenses of operation and maintenance of Office Building No. <u>PBA-1460</u>, including the replacement of equipment therein, and for maintaining reserves for such purpose.

Section 2.07. <u>Bonds for Project.</u> When the bonds of the Authority issued to pay the cost of remodeling the Project, including Office Building No. <u>PBA-1460</u>, have been sold and delivered, the Authority shall promptly compute.

    (a) the amount of all costs incurred by the Authority including the expenses in connection with the issuance of such bonds, for the remodeling and equipment of each of the buildings in the Project and the percentage which the cost of remodeling Office Building No. <u>PBA-1460</u> bears to the total cost of the entire Project (such percentage being hereinafter called the "Office Building No. <u>PBA-1460</u> cost percentage"),

(b) the maximum amount which the Authority is required to provide in any year pursuant to the provisions of the Bond Resolution on account of the payment of the interest on and principal, including redemption premiums, of the bonds issued to pay the cost of the Project (such amount being hereinafter called the "maximum debt service requirements"), and

(c) the amount equal to the Office Building No. PBA-1460 cost percentage of the maximum debt service requirements (such amount being hereinafter called the "Office Building No. PBA-1460 debt service").

Section 2.08. Adjustments of Debt Service Rental. The Debt Service Rental for each year set forth in clause (a) of Section 2.01 of this Article shall, following the making of the computations in the preceding Section, be adjusted by the Authority so that the amount of the Debt Service Rental to be payable by the Lessee thereafter shall be equal, as near as practicable, to the Lessee's space percentage of Office Building No. PBA-1460 debt service.

Section 2.09. Additional Space. In the event that the Lessee or any other Government Lessee shall at any time lease additional space in Office Building No. PBA-1460 as permitted by Article I hereof, the Lessee's space percentage shall be recomputed on the basis which the total amount of space then leased by the Lessee hereunder bears to the total amount of space in said Building leased to all Government Lessees, and the amount of the Debt Service Rental for each year shall then be adjusted by the Authority so that the amount of the Debt Service Rental to be payable by the Lessee thereafter is equal, as nearly as practicable, to the Lessee's space percentage of Office Building No. PBA-1460 debt service.

Section 2.10. Surplus Debt Service Rentals. If the Debt Service Rentals received by the Authority from the Lessee and all other Government Lessees of Office Building No. PBA-1460 on the last day of any month, together with any Debt Service Rentals theretofore deposited in the New York Bank and available for the purpose, exceeds the amount needed to pay the next maturing instalment of interest on such portion of any outstanding bank loans or bond anticipation notes issued to finance the cost of remodeling Office Building No. PBA-1460 or the amount which the Authority is required by the Bond Resolution to provide on the next January 1 or July 1, whichever is earlier, on account of the debt service of the principal amount of bonds issued by the Authority to pay such loans or bond anticipation notes and any remaining costs of Office Building No. PBA-1460, as the case may be, such excess shall be deposited to the credit of the reserve account mentioned in Article III of this Lease Contract and applied as provided in the Bond Resolution, or shall be applied to the payment of outstanding notes of the Authority or deposited in the construction fund for payment of the costs of the Project or deposited to the credit of the Bond Service Account established by the Bond Resolution, as determined by the Authority.

Section 2.11. Lease to Private Persons. The Authority may, pursuant to the provisions of said Act No. 56, lease space in Office Building No. PBA-1460 or make space available therein to private persons, firms, corporations or entities other than Government Lessees.

Case:17-03283-LTS Doc#:12572-1 Filed:03/31/20 Entered:03/31/20 19:47:35 Desc: Exhibit B Page 6 of 20

-6-

Section 2.12. <u>Parking.</u> The Authority reserves the right to fix, charge and collect reasonable parking fees for the use of any parking facilities that may be provided as part of Office Building No. PBA-1460.

Section 2.13. <u>Other Revenues.</u> Revenues (other than Rentals) derived by the Authority from the leasing of space to private persons, firms, corporations or entities other than the Government Lessees and from the fixing, charging and collecting of parking fees and any other revenues derived by the Authority from its ownership or operation of Office Building No. PBA-1460 shall be deposited as received to the credit of an appropriate account which shall be established under the Bond Resolution for use as a reserve for the operation, maintenance and repair of public office buildings of the Authority, including the replacement of equipment therein, or for other proper corporate purposes of the Authority.

## ARTICLE III

## DEBT SERVICE RESERVE ACCOUNT

Section 3.01. <u>Reserve Account.</u> In order to establish a reserve for the payment of the principal of and the interest on all bonds issued under the Bond Resolution (including redemption premium) the Authority will deposit from the proceeds of the bonds or from other available funds to the credit of a reserve account (hereinafter called the "reserve account") in the New York Bank an amount equal to 50% of the sum of the maximum Debt Service Rentals on account of the Project, including Office Building No. PBA-1460, in any year.

Section 3.02. <u>Reserve Account Excess.</u> If the money in the reserve account shall at any time exceed the maximum requirements therefor as fixed by the Bond Resolution, such excess may be applied by the Authority to the retirement of notes or bonds issued by the Authority or may be applied to the construction of office buildings. The surplus, if any, remaining to the credit of such or other account when all bonds and other obligations under the Bond Resolution have been paid shall be applied to the reduction of the final instalments of Rental payable by the Lessee under this Lease Contract.

## ARTICLE IV

## MAINTENANCE AND OPERATION OF OFFICE BUILDING

Section 4.01. <u>Regulations of Authority.</u> The Lessee shall comply with all rules and regulations that may be adopted from time to time by the Authority, after giving the Lessee an opportunity to be heard in connection therewith, respecting the use and occupancy of Office Building No. PBA-1460.

Section 4.02. <u>Lessee's Services.</u> The Authority shall operate Office Building No. PBA-1460 in an efficient and economical manner and shall maintain it in a good state of repair. The Lessee shall be responsible for providing at its own expense adequate cleaning, janitorial and caretaker services on account

of the areas outlined in red in Exhibit A, which services shall be performed under the general supervision of the Authority; provided, however, that upon the written request of the Lessee, the Authority with the approval of the Governor or the officer whom he may delegate, may provide such services and the expense thereof incurred by the Authority will be added to the Operating Rental payable by the Lessee hereunder.

Section 4.03. <u>Authority's Services.</u> All other expenses of operating, maintaining and repairing Office Building No. <u>PBA-1460</u> shall be paid by the Authority from the Operating Rentals received by the Authority for the payment of such expenses and expenses of the Project allocable to Office Building No. <u>PBA-1460</u> shall be allocated upon a fair and reasonable basis. Such expenses (herein sometimes called "operating and maintenance expenses") shall include, but shall not be limited to, expenses of providing air conditioning, elevator services, trash disposal, expense of caretaker services not required to be provided by the Government Lessees, repairs to Office Building No. <u>PBA-1460</u> and the equipment of the Authority therein, replacement of such equipment, reserves for expenses not annually recurring for items of general maintenance, repair and replacement administrative expenses of the Authority, insurance premiums, fees and expenses of the bond trustees and paying agents and other expenses in connection with the payment of the principal of and interest on such bonds issued by the Authority, including redemption premiums, and the administration of the trust created in connection with such bonds, legal and auditing expenses, and any other expenses which the Authority may be required to pay by law in connection with its ownership of Office Building No. <u>PBA-1460</u>, but shall not include the expense of providing telephone and other communication facilities.

Section 4.04. <u>Limitation as to Expenses.</u> The Authority agrees that the operating and maintenance expenses in any fiscal year will not exceed the reasonable and necessary amount thereof.

Section 4.05. <u>Records and Accounts.</u> The books, accounts and records of the Authority pertaining to the Project shall be open at all times for inspection by the Lessee and shall be subject to periodic audit by appropriate officials of the Commonwealth.

ARTICLE V

OBLIGATION TO PAY RENTALS

Section 5.01. <u>Unconditional Obligation.</u> The Lessee agrees that its obligation to pay Rentals for the full term of the lease under this Lease Contract at the times and in the amounts specified in this Lease Contract shall be absolute and unconditional and shall continue whether or not Office Building No. <u>PBA-1460</u>, or any part thereof, be damaged or destroyed from any cause whatsoever or otherwise becomes unusable by the Lessee for any period of time and regardless of any other cause of any nature, including but not limited to any default by the Authority under this Lease Contract.

Section 5.02. <u>Rental Insurance.</u> The Authority shall, however, at the request and expense of the Lessee, obtain insurance to cover the Rentals during periods when, as the result of damage or destruction, said Building or portions thereof become unusable by the Lessee. Such insurance, to the extent commercially obtainable, shall be in such amounts and for such periods of time as the Lessee shall specify and any proceeds received by the Authority from such insurance shall be credited against the Rentals otherwise payable by the Lessee under this Lease Contract.

## ARTICLE VI

### INSURANCE

Section 6.01. <u>Insurance Against Loss or Damage.</u> The Authority shall keep Office Building No. <u>PBA-1460</u>, including all equipment of the Authority therein, insured with a responsible insurance company or companies qualified under the laws of the Commonwealth of Puerto Rico to assume the risks thereof against physical loss or damage, howsoever caused, with such exceptions as are ordinarily required by insurers of buildings of a similar type, to the full insurable value thereof.

Section 6.02. <u>Application of Proceeds.</u> The proceeds of all such insurance shall be applied to the repair, reconstruction or replacement on the same or on a different site of the damage or destroyed property or to the purchase or redemption of bonds, as the Authority shall determine.

Section 6.03. <u>Comprehensive Liability Insurance.</u> The Authority shall also maintain such comprehensive public liability insurance on Office Building No. <u>PBA-1460</u> with a responsible and qualified insurance company or companies in such amounts as the Authority shall determine is necessary to protect it against loss on account of liability for injury or damage to persons or property resulting from its ownership or operation of Office Building No. <u>PBA-1460</u>.

Section 6.04. <u>Insurance Cost.</u> All costs incurred by the Authority for insurance under this Article shall be deemed to be operating and maintenance expenses.

## ARTICLE VII

### MISCELLANEOUS

Section 7.01. <u>Alterations and Improvements.</u> The Authority will upon the request and at the expense of the Lessee make such alterations, modifications or improvements to the Lessee's space in Office Building No. <u>PBA-1460</u> as are so requested by the Lessee and approved by the Authority; it being agreed and understood by the parties hereto, that all such alterations, modifications and improvements made by the Authority at the request and expense of the Lessee shall be and become the property of the Authority; it being further agreed and understood that all alterations, modifications and improvements to the rented space must be done as aforesaid and with the prior written consent of the Authority.

Section 7.02. Records. The Authority shall keep the accounts relating to Office Building No. PBA-1460 separate from all other accounts of the Authority and shall keep accurate records and accounts of all items of cost relating to Office Building No. PBA-1460 and of the Rentals, Reserve Amounts and any other revenues on account of Office Building No. PBA-1460 collected and the application thereof.

Section 7.03. Covenant Against Assignment. This Lease Contract may not be assigned or otherwise transferred in whole or in part by the Lessee except to a department, agency or instrumentality of the Commonwealth of Puerto Rico and subject in each case to the prior approval of the Authority and of the Governor or the Officer whom he may delegate.

Section 7.04. Settlement of Disputes. In the event of any dispute between the Authority and the Lessee as to any of the provisions of this Lease Contract the matter shall be submitted to the Governor of the Commonwealth of Puerto Rico or the officer whom he may delegate, for his determination. When such dispute shall be decided by the Governor or the officer whom he may delegate, the Authority and the Lessee shall be bound by such determination.

Section 7.05. Benefits. This Lease Contract shall inure to the benefit of and be binding upon the parties hereto, their successors and assigns, and shall also inure to the benefit of the holders of bonds issued by the Authority under the provisions of the Bond Resolution for the financing of Office Building No. PBA1460 and other public office buildings, as their respective interests may appear.

Section 7.06. Conflict with Bond Resolution. Notwithstanding any of the foregoing provisions of this Lease Contract it is expressly understood that in the event of any conflict between the provisions contained in this Lease Contract and in the Bond Resolution, the provisions contained in the Bond Resolution shall be controlling.

IN WITNESS WHEREOF, Public Buildings Authority has caused this Lease Contract to be executed in its name and behalf by Mr. Manuel Iglesias Rodríguez its Executive Director and its corporate seal to be hereunto affixed and attested by Mr. Angel A. Colón Vázquez its Secretary, and the Department of Justice of the Commonwealth of Puerto Rico has caused this Lease Contract to be executed in its name and behalf by Mr. Héctor Reichard, Jr., its Secretary, thereunto duly authorized, as of the day and year first above written.

The attached Rider No. 1 consisting of seven (7) pages entitled "General Dispositions Not Provided in Standard Form of Lease Contract of Office Building No. PBA-1460 But Forming a Part Hereof" is part of this Contract.

PUBLIC BUILDINGS AUTHORITY

LESSEE

BY _____
Héctor Reichard, Jr.
Secretary

BY _____
Manuel Iglesias Rodríguez
Executive Director

(Seal)

Attest:

_____
Angel A. Colón Vázquez
Secretary

APPROVED
AS TO
LEGAL FORM
DATE 11/2/81

The foregoing Lease Contract Number A-588, is hereby approved this 16th day of November, 1981.

AUTHORIZED REPRESENTATIVE OF THE
COMMONWEALTH OF PUERTO RICO

_____
Leopoldo Mercado Santini
GENERAL SERVICES ADMINISTRATION

RIDER NO. 1

GENERAL DISPOSITIONS NOT PROVIDED IN STANDARD FORM OF LEASE CONTRACT OF OFFICE BUILDING NO. _BH-160_ BUT FORMING A PART HEREOF

1. The Authority shall provide <u>exterminating service</u> for all public areas of building. Tenant shall at Tenant's expenses provide exterminating service for the demised premises from time to time to the satisfaction of the Authority.

2. Tenant shall permit the Authority to erect, use and maintain, pipes and conduits in and through the demised premises. The Authority or the Authority's agents shall have the right to enter the demised premises at all reasonable times to examine the same, and to show them to prospective purchasers or lessees of the building, and to make such decorations, repairs, alterations, improvements or additions as the Authority may deem necessary or desirable, and the Authority shall be allowed to take all material into and upon said premises that may be required therefor without the same constituting an eviction of Tenant in whole or in part and the rent reserved shall in no wise abate while said decorations, repairs, alterations, improvements, or additions are being made, by reason of loss or interruption of business of Tenant, or otherwise. During the six months prior to the expiration of the term of this lease, or any renewal term, the Authority may exhibit the premises to prospective tenants or purchasers. If during the last month of the term, Tenant shall have removed all or substantially all of Tenant's property therefrom, the Authority may immediately enter and alter, renovate and redecorate the demised premises, without elimination or abatement of rent, or incurring liability to Tenant for any compensation, and such acts shall have no effect upon this lease. If Tenant shall not be personally present to open and permit an entry into said premises, at any time, when for any reason an entry therein shall be necessary or permissible, the Authority or the Authority's agents may enter the same by a master key, or may forcibly enter the same, without rendering the Authority or such agents liable therefor (if during such entry the Authority or the Authority's agents shall accord reasonable care to Tenant's property) and without in any manner effecting the obligations and covenants of this lease. Nothing herein contained, however, shall be deemed or construed to impose upon the Authority any obligation, responsibility or liability whatsoever, for the care, supervision or repair of the building or any part thereof, other than as herein provided. The Authority shall also have the right at any time, without the same constituting an actual or constructive eviction and without incurring any liability to Tenant therefor, to change the arrangement and/or location of entrances or passageways, doors and doorways, and corridors, elevators, stairs, toilets, or other public parts of the building and to change the name, number or designation by which the building is commonly know.

3. The Authority covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenants part to be observed and performed, Tenant may peaseably and quietly enjoy the premises hereby demised, subject nevertheless, to the term and conditions of this lease and to the ground leases, underlying leases and mortages hereinbefore mentioned.

-2-

4. If Tenant requires, uses or consumes water for any purpose in addition to water coolers and ordinary lavatory purposes (of which fact Tenant constitutes the Authority to be the sole judge) the Authority may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay the Authority for the cost of the meter and the cost of the installation thereof and throughout the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered, and on default in making such payment the Authority may pay the charges and collect the same from Tenant.

5. Tenant shall not use the electrical system other than for lighting or operation of usual small business machines such as typewriters, adding machines, postage meters, duplicators and the like, without the express written approval of the Authority. Tenant shall pay for any Authority's approved modifications, changes, alterations or additions required to be made to the electrical system so that the same may be used as a source of power.

6. The Authority reserves the privilege of stopping the service of the air conditioning, elevator, plumbing and electric system at such times as may be necessary by reason of accident, repairs, alterations or improvements to be made, or whenever the Authority, exercising due diligence, is unable to supply such services by order of any civil authority of for any reason beyond the power of the Authority to control, without liability in damages therefor.

7. The Rules and Regulations in regard to the building, annexed to this lease, shall be taken and considered as a part of this instrument, together with such other and further reasonable Rules and Regulations and/or modifications or amplifications of the annexed Rules and Regulations as the Authority in its judgment may make from time to time for the safety, care and cleanliness of the building and demised premises and the comfort of the Tenants, and as such shall during the said term, be in all respects observed and performed by Tenant, and by the officers, employees, agents, servants, licensees and visitors of Tenant.

8. The entrances, vestibules, passages, corridors, halls, elevators and stairways shall not be encumbered nor obstructed by any Tenant, Tenant's agents, servants, employees, licensees or visitors, or be used by them for any purpose other than for ingress and egress to and from the demised premises. The Authority reserves the right to restrict and regulate the use of aforementioned public areas of the building by Tenant, Tenan's agents, employees, servants, licensees and visitors and by persons making deliveries to Tenant, including but not limited to the right to allocate certain elevator or elevators and the hours of use thereof for delivery service, and the right to designate which building entrance or entrances shall be used by persons making deliveries in the building.

9. No awnings or other projections shall be attached to the outside walls of the building. No curtains, blinds, shades or screens other than those furnished by the Authority shall be attached to or hung in, or used in connection with, any window or door of the demised premises, without the prior written consent of the Authority. Such curtains, blinds, shades, screens or other fixtures must be attached in the manner approved by the Authority.

10. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Tenant on any window or part of the outside or inside of the demised premises or building without the prior written consent of the Authority. In the event of the violation of the foregoing by any Tenant, the Authority may remove same without any liability, and may charge the expense incurred by such removal to the Tenant or Tenants violating this rule, Interior signs on doors can be incribed, painted or affixed by each Tenant, at the expense of such Tenant, and shall be of a size, color and style acceptable to the Authority.

11. Building directory tablet will be furnished and installed at the expense of the Authority and the number of listings thereon for each Tenant shall be at the Discretion of the Authority.

12. The sashes, cash doors, skylights, window, and doors that reflect or admit light and air into the hall, passageways or other public placed in the building shall not be covered or obstructed by any Tenant, nor shall any bottles, parcels, or other articles be placed on the windowsills.

13. No showcases or other articles shall be put in front of or affixed to any part of the exterior of the building, nor placed, in the halls, corridors or vestibules without the prior written consent of the Authority.

14. The water and wash closets and other plumbing fixtures shall not be used for any purposes other than those for which they were constructed, and no sweepings, rubbish, rags, or other substances shall be thrown therein. All damages resulting from any misuse of the fixtures shall be borne by the Tenant who, or whose servants, employees, agents, visitors or licesnsees, shall have caused the same.

15. No Tenant shall mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted except with the prior written consent of the Authority and as the Authority may direct. Only contractors approved in writing by the Authority may be employed by Tenant for making repairs, changes or any improvements to demised premises. No Tenant shall lay floor covering other than rugs, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used and such use is approved by the Authority, an interlining of builders deadening felt shall be first affixed to the floor, by apaste or other material soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

-4-

16. No bicycles, vehicles or animals of any kind shall be brought into or kept in or about the Building.

17. No space in the building shall be used for manufacturing, for the storage of merchandise, for the sale of merchandise, goods or property of any kind at auction, or for lodging, sleeping or any inmoral or illegal purposes.

18. No Tenant shall make, or permit to be made, any unseemly or disturbing noises or disturb or interfere with occupants of this or neighboring buildings or premises or those having business with them whether by the use of any musical instrument, radio, talking machine, unmusical noise, whistling, singing, or in any other way. No Tenant shall throw anything out of the doors, windows or skylights or down the passageways or elevator shafts nor sweep anything into the corridors, hallways or stairs of the building.

19. No additional locks or bolts of any kind shall be placed upon any of the doors or windows by any Tenant, nor shall any changes be made in existing locks or the mechanism thereof without the prior written consent of the Authority. Each Tenant must, upon the termination of his tenancy, restore to the Authority all keys of stores, shops, booths, stands, offices and toilet rooms, either furnished to, or otherwise procured by, such Tenant, and in the event of the loss of any keys so furnished, such Tenant shall pay to the Authority the cost thereof.

20. All removals, or the carrying in or out of any safes, freight, furniture or bulky matter of any description must take place during the hours which the Authority or its Agent may determine from time to time.

21. The Authority shall have the right to prohibit any advertising by any Tenant which, in the Authority's opinion, tends to impair the reputation of the building or its desirability as a building for offices, and upon written notice from the Authority, Tenant shall refrain from or discontinue such advertising.

22. No Tenant shall install or permit the installation or use of any machines dispensing goods for sale, including without limitation foods, beverages, cigarettes or cigars; or permit the delivery of any food or beverages to the demised premises, except by persons approved by the Authority and only under regulations fixed by the Authority. No food or beverages shall be carried in the public halls and elevators of the building except in closed containers.

23. Each Tenant shall, at his expense, provide artificial light for the employees of the Authority while doing janitor service or other cleaning, and in making repairs or alterations in said demised premises.

24. Canvassing, soliciting and peddling in the building is prohibited and each Tenant shall cooperate to prevent the same.

25. There shall not be used in any space, or in the public halls of the building, either by any Tenant or by jobbers or others, in the delivery or receipt of merchandise, any hand trucks, except those equipped with rubber tires and side guards.

26. Without first obtaining the Authority's written permission, no Tenant shall install, attach or bring into the demised premises any equipment, other than normal office equipment such as electric typewriters, calculators and the like, or any instrument, duct, refrigerator, air conditioner, water cooler or any other appliance requiring the use of gas, electric current or water. Any breach of this covenant will authorize the Authority to enter the demised premises, remove whatever Tenant may have so installed, attached or brought in, and charge the cost of such removal, and any damage that may be sustained thereby, as additional rent, payable at the option of the Authority, immediately or with the next month's rent accruing under this lease.

27. The Authority reserves the right to exclude from the building during non-business, such as before 8:00 AM and after 6:00PM on weekdays, before 8:00 AM and after 1:00 PM on Saturdays and half holidays and during all hours on Sundays and full holidays - all persons not authorized by Tenant in writing, by pass or otherwise, to have access to the building and demised premises. The Authority, from time to time shall provide Tenants with a schedule of such non-business hours. Each Tenant shall be responsible for all persons authorized to have access to the building and shall be liable to the Authority for all of their acts while in the building. The Authority may require all persons given access to the building during non-business hours to sign a register on entering and leaving the building.

28. The Authority shall, through the air conditioning equipment of said building, furnish to demised premises air conditioning throughout the year from Monday to Friday from 8:00 AM to 6:00 PM.

Tenant agrees to keep and cause to be kept closed all windows in the demised premises and to lower and close the blinds when necessary because of the suns position, and Tenant agrees at all times to cooperate fully with the Authority and to abide by all the regulations and requirements which the Authority may prescribe for the proper functioning and protection of said air conditioning system. In addition to any and all other rights and remedies which the Authority may invoke for a violation or breach by Tenant of any of the agreements contained in the preceding paragraph, the Authority may discontinue said air conditioning service without any diminution or abatement of rent or other compensation to Tenant whatsoever. The Authority, throughout the term of this lease, shall have free and unrestricted access to any and all air conditioning facilities in the demised premises. The Authority reserves the right to interrupt, curtail, stop or suspend such air conditioning when necessary by reason of accident, or of repairs, alterations or improvements in the judgment of the Authority desirable or necessary to be made, or of difficulty or inability in securing supplies or labor, or of strikes, or of any other cause beyond the reasonable control of the Authority, whether such other cause be similar or dissimilar to those herinbefore specifically mentioned. No diminution or abatement of rent or other compensation shall or will be claimed by Tenant, nor shall this lease or any of the obligations of Tenant be affected or reduced, by reason of interruption or curtailment of such air conditioning, when such interruption or curtailment or stoppage or suspension shall be due to failure of electric power or accident, or to repairs, alterations or improvements in the judgment of the Authority desirable or necessary to be made, or

-6-

to difficulty or inability in securing supplies or labor, or to strikes, or to any other cause beyond the reasonable control of the Authority, whether such other cause be similar or dissimilar to those hereinbefore specifically mentioned. The Authority shall not be required to furnish, and Tenant shall not be entitled to receive, any air conditioning service during any period wherein Tenant shall be in default in the payment of rent as specified in this lease.

Tenant agrees that in the event its occupancy or elctrical load or both of them shall exceed such design capacity, the cost to the Authority of providing the necessary additional air conditioning capacity, including but not limited to any necessary equipment, duct work or the like together with the cost of operation thereof, shall be for the account of Tenant and shall be payable by Tenant to the Authority, based upon the capacity of such additional equipment or the cost of otherwise providing such additional capacity. The Authority shall furnish Tenant in writing with an estimate of the cost of any such additional air conditioning equipment together with the additional monthly amount for operating and additional equipment or providing such additional capacity, and shall receive Tenant's written approval thereof prior to providing such additional air conditioning capacity.

29. The Authority shall provide water in the building of which the demised premises are a part for normal lavatory and toilet purposes and for water coolers.

30. The Authority shall supply necessary elevator facilities from 7:00 AM to 6:00 P.M. from Monday to Friday and shall have an elevator subject to call at all other times.

31. The Authority shall provide window cleaning service for all office areas demised hereby. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside, except as shall be done by the Authority, and except for such windows as may be cleaned while standing at ground level, which if done by Tenant shall be at Tenant's risk.

32. If the Authority furnishes additional electric current to Tenant then and in that event Tenant agrees to compensate the Authority for furnishing such electric current as an additional service as hereinafter provided, and such furnishing of electric current by the Authority to Tenant shall be through the existing electrical system of the building for Tenant's reasonable use of such lighting fixtures and electrical appliances and equipment as the Authority may permit to be installed in the demised premises. Tenant agrees that an electrical consultant, selected by the Authority, may make a survey of the lighting and power load to determine the average monthly consumption of electric current in the demised premises; and Tenant further agrees that the findings of the electrical consultant as to the cost of providing electrical current to be paid by Tenant to the Authority based upon such average monthly electric current consumption shall be conslusive and binding upon the parties and Tenant shall pay such amount monthly in advance on the same day of each and every month as the rent reserved herein shall be paid for each month from the commencement of the term of this lease. If the electric current rates or charges payable by the Authority shall be increased or decreased, then and in such event the cost of providing electrical current to Tenant shall be correspondingly increase or decreased.

-7-

Tenant agrees to make no alterations or additions to its lighting fixtures, electrical appliances or equipment without first obtaining the written consent of the Authority in each instance in order to prevent overloading of the building's electrical system. Tenant agrees that the Authority, its agent or consultant may make surveys from time to time in the demised premises respecting lighting fixtures, electrical appliances and equipment and use of electrical current. Tenant covenants and agrees that at all times its use of electric current shall never exceed the capacity of existing feeders to the building or of the risers, wiring installation or electrical system of the building.

33. The initial painting (consisting of a prime coat and two finish coats) and subsequent repainting (consisting of touch up and one coat) every five (5) years will be provided by the Authority.

A credit of five (5) cents per square foot shall be given by the Authority to Tenant for substitution of durable wall coverings, such as vinyl, flexwood, grass cloth, or other material similar in quality or cost. Where this credit is granted, the Authority shall not be required to perform any of the repainting specified above on those areas for which a credit is granted.

-----------------------------0-----------------------------

Contract No. A-588
Addendum No. 2
Project No. 1460

## ADDENDUM TO THE LEASE CONTRACT MADE AND ENTERED AS OF THE FIRST DAY OF JANUARY 1982, BY AND BETWEEN THE PUBLIC BUILDINGS AUTHORITY, AS LESSOR, AND THE DEPARTMENT OF JUSTICE, AS LESSEE

In consideration of the mutual promises, covenants and agreements and other good and valuable consideration, as stated in the Contract first above mentioned, The Public Buildings Authority and the Department of Justice, hereby agree to amend said contract as herein below specified.

1. The last sentence of the first paragraph of Section 1.01 is hereby amended to read as follows.

    "The lease of such space and other property under this lease contract shall be for a term beginning on the date first above written and ending on July 1, 2039.

2. The portion of Section 2.03 after the words "on the last day of each month thereafter" is hereby amended to read as follows: "until and including July 1, 2039, subject to any increase hereunder".

3. All other dispositions contained in the above-mentioned Lease Contract A-588, shall remain unaltered.

This Addendum is made part of the Lease Contract first above written. Executed by the Public Buildings Authority and the Department of Justice on August 05 2010, and caused to be effective on September 1, 2010.

**LESSEE:**

BY_____
Guillermo A. Somoza
Secretary

(SEAL)

ATTEST:

**PUBLIC BUILDINGS AUTHORITY**

BY_____
Jesús F. Méndez Rodríguez
Executive Director

_____
Joel M. Eliza Rivera, Esq.
Secretary
Board of Directors

The foregoing Addendum Number 2, to the Lease Contract Number A-588 is hereby approved this 05 day of August 2010.

Contract No. A-588
Addendum No. 01
Project No. 1460

## ADDENDUM TO THE LEASE CONTRACT MADE AND ENTERED BY AND BETWEEN THE PUBLIC BUILDINGS AUTHORITY, AS LESSOR, AND THE DEPARTMENT OF JUSTICE AS LESSEE

In consideration of the mutual promises, covenants and agreements and other good and valuable consideration as stated in the contract above mentioned, <u>The Public Buildings Authority</u> and <u>The Department of Justice</u> hereby agree to amend said contract as herein below specified:

1. The portion of Section 1.01 after the words "ending on is hereby amended to read as follows until and including July 1, 2022, subject to any increase hereunder".

2. The portion of Section 2.03 after the words "on the last day of each month thereafter" is hereby amended to read as follows; until and including July 1, 2022, subject to any increase hereunder".

3. All other dispositions contained in the above-mentioned Lease Contract shall remain unaltered.

This Addendum is made part of the "Contract" above written.

Executed by Public Buildings Authority and The Department of Justice on May 2006, and caused to be effective on May 1, 2006.

**DEPARTMENT OF JUSTICE**

BY: _____
Hon. Roberto Sánchez Ramos
Secretary

(SEAL)

ATTEST:

**PUBLIC BUILDINGS AUTHORITY**

BY: _____
Leila Hernández Umpierre, Esq.
Acting Executive Director

_____
Marta Elisa González Y.
Secretary
Board of Directors

The foregoing Addendum Number <u>01</u> to the Lease Contract Number A-<u>588</u> is hereby approved this _____ day of _____.

AUTHORIZED REPRESENTATIVE OF THE
COMMONWEALTH OF PUERTO RICO

_____
Evelyn Meliá Muñiz
Acting Administrator
General Services Administration

APPROVED AS TO
LEGAL FORM
DATE: 2-11-1-06

## AUTORIDAD DE EDIFICIOS PUBLICOS
**CONTRATOS DE ARRENDAMIENTOS VIGENTES**
### ENMIENDAS EXTENSION DE FECHAS DE VENCIMIENTO

| CONTR | Proy | AGENCIA | DESCRIPCION | FECHA DE VENCIMIENTO |
|---|---|---|---|---|
| A121 | 02480 | DEPARTAMENTO DE JUSTICIA | CENTRO GUB. DE MAYAGUEZ | 7/1/2022 |
| A207 | 04130 | DEPARTAMENTO DE JUSTICIA | CENTRO JUD. DE CAGUAS | 7/1/2021 |
| A334 | 01070 | DEPARTAMENTO DE JUSTICIA | CENTRO JUD. DE HATO REY | 7/1/2022 |
| A375 | 02620 | DEPARTAMENTO DE JUSTICIA | CENTRO GUB. DE SAN GERMAN | 7/1/2022 |
| A486 | 02300 | DEPARTAMENTO DE JUSTICIA | CENTRO GUB. DE GUAYNABO | 7/1/2022 |
| A503 | 04110 | DEPARTAMENTO DE JUSTICIA | CENTRO JUD. DE BAYAMON | 7/1/2022 |
| A566 | 02450 | DEPARTAMENTO DE JUSTICIA | CENTRO GUB. DE MANATI | 7/1/2022 |
| A588 | 01460 | DEPARTAMENTO DE JUSTICIA | EDIF. DEPARTAMENTO DE JUSTICIA | 7/1/2022 |
| A59 | 02070 | DEPARTAMENTO DE JUSTICIA | CENTRO GUB. DE ARECIBO | 7/1/2022 |
| A695 | 02485 | DEPARTAMENTO DE JUSTICIA | OFICINA DE FISCALIA - MAYAGUEZ | 7/1/2021 |
| A864 | 02110 | DEPARTAMENTO DE JUSTICIA | CENTRO GUB. BAYAMON | 7/1/2027 |