Hearing Date: April 22, 2020 at 9:30 am (AST)

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**This Urgent Motion relates to PREPA and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 4780-LTS.** |

## PREPA'S URGENT MOTION FOR ENTRY OF AN ORDER AUTHORIZING PREPA TO ASSUME CERTAIN CONTRACTS WITH ECOELÉCTRICA, L.P. AND GAS NATURAL APROVISIONAMIENTOS SDG, S.A.

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as PREPA's representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[1] respectfully submits this urgent motion (the "Urgent Motion"), pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code"), made applicable in this case pursuant to PROMESA section 301(a), and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable in this case pursuant to PROMESA section 310, for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**: (a) authorizing PREPA to assume (i) the Amended and Restated Power Purchase and Operating Agreement, dated as of March 27, 2020 (the "ECO PPOA"), between PREPA and EcoEléctrica, L.P. ("ECO"), relating to the existing 543 MW combined-cycle, cogeneration facility in Peñuelas (the "ECO Generation Facility"), which amends and restates the Power Purchase and Operating Agreement, dated March 10, 1995 (as amended prior to March 27. 2020, the "Pre-Restatement PPOA") between the same parties, and (ii) the Amended and Restated Natural Gas Sale and Purchase Agreement, dated as of March 23, 2020 (the "Naturgy GSPA," and together with the ECO PPOA, the "Contracts"),[2] between PREPA and Gas Natural Aprovisionamientos SDG, S.A.  ("Naturgy"), relating to the supply of natural gas to Units 5 and 6 of PREPA's 820 MW Costa Sur generating facility (the "Costa Sur Generation Facility"), located adjacent to the ECO facility, which amends and restates the Natural Gas Sale and Purchase Agreement dated March 28, 2012 (as amended prior to March 23, 2020, the "Pre-Restatement

---

[1]   PROMESA is codified at 48 U.S.C.  §§ 2101-2241.

[2]   Final versions of the ECO PPOA and the Naturgy GSPA Agreement are attached hereto as Exhibits B-1 and B-2, respectively.

GSPA" and together with the Pre-Restatement PPOA, the "Pre-Restatement Contracts"), between the same parties, and (b) providing any additional relief required to effectuate the foregoing.  In support of this Urgent Motion, PREPA respectfully submits the *Declaration of Fernando M. Padilla in Support of PREPA's Motion for Entry of an Order Authorizing PREPA to Assume Certain Contracts with EcoEléctrica, L.P. and Gas Natural Aprovisionamientos SDG, S.A.,* filed concurrently herewith (the "Padilla Declaration").

As detailed below, the Oversight Board seeks urgent consideration of the Urgent Motion due to the vital nature of the Contracts and the benefits, including cost-savings, that PREPA would realize from the amended terms.  The Oversight Board made diligent efforts to submit this Urgent Motion by March 31, 2020, the date that is 22 calendar days prior to the April 22, 2020 omnibus hearing, pursuant to ¶ III.G of the *Eleventh Amended Case Management Procedures* [Case No. 17-BK-3283-LTS, ECF No. 11885-1].  The Oversight Board is filing this Urgent Motion one day after the deadline because PREPA had not yet received counterparty signatures on both contracts in time to file on March 31.  The Oversight Board does not oppose a corresponding one-day extension of the response deadline, to April 8, 2020.

## JURISDICTION AND VENUE

1.     The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Urgent Motion pursuant to PROMESA section 306(a).

2.     Venue is proper in this district pursuant to PROMESA section 307(a).

3.     The statutory predicates for the relief sought herein are section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, made applicable to this case by PROMESA sections 301(a) and 310, respectively.

## BACKGROUND

4.      On June 29, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206.  On July 2, 2017 (the "Petition Date"), the Oversight Board filed a voluntary petition for relief for PREPA pursuant to section 304(a) of PROMESA, commencing a case under title III thereof (the "Title III Case").

5.      PROMESA section 301 incorporates section 365 of the Bankruptcy Code governing the assumption and rejection of the executory contracts. PROMESA section 204(b)(2) allows that the Oversight Board to put in place a policy to review certain contracts.

6.      On November 7, 2017, the Oversight Board implemented a contract review policy, later amended on July 3, 2018, that requires Oversight Board approval of contracts that in the aggregate have an expected value of more than $10 million (the "Contract Review Policy").[3]  The Contracts that are the subject of this Urgent Motion fall within the preview of the Contract Review Policy.

## THE ECO PPOA AND NATURGY GSPA

7.      The Pre-Restatement Contracts provided the contractual basis for a program (the "LNG-to-Power Program") under which (i) Naturgy imported liquefied natural gas ("LNG") into Puerto Rico at a LNG terminal facility, owned by ECO and located in Peñuelas (the "ECO LNG Terminal"), converted the LNG to natural gas and sold such natural gas to PREPA for supply to Costa Sur Generation Facility under the terms of the Pre-Restatement GSPA, and (ii) ECO imported LNG into Puerto Rico, converted the LNG into natural gas at the ECO LNG Terminal for supply to the ECO Generation Facility and sold the power generation capacity and energy of

---

[3]   Contract Review, THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, https://oversightboard.pr.gov/contract-review/ (last visited Mar 29, 2020).

such facility to PREPA under the terms of the Pre-Restatement PPOA. Padilla Decl. ¶ 5. PREPA has historically sourced up to 40% of the baseload power in Puerto Rico through this LNG-to-Power Program. *Id.* The Pre-Restatement GSPA will expire in December 2020 and the Pre-Restatement PPOA will expire in March 2022. *Id.*

8.      The Oversight Board certified a 2018 Fiscal Plan on August 1, 2018 and a 2019 Fiscal Plan on June 27, 2019 for PREPA (collectively, the "Fiscal Plans"). Both Fiscal Plans contemplated, *inter alia*, a renegotiation of the Pre-Restatement Contracts to achieve cost savings for PREPA.[4] Naturgy controls (through a Tolling Services Agreement with ECO) the entire existing capacity of the ECO LNG Terminal to receive and vaporize LNG for the delivery of natural gas to the ECO Generation Facility and Costa Sur Generation Facility (collectively, the "Generation Facilities"). Padilla Decl. ¶ 6. As third parties do not have access to the ECO LNG Terminal, PREPA entered into separate renegotiations of the Pre-Restatement Contracts with Naturgy and ECO on a bilateral basis to extend the term and realize cost savings. *Id.*. PREPA signed the Naturgy GSPA and ECO PPOA on March 23rd and March 27th of this year, respectively.

9.      The Contracts (i) extend the LNG-to-Power Program until September 2032, (ii) restructure the fuel supply arrangements such that (a) Naturgy imports LNG, converts such LNG into natural gas through the ECO LNG Terminal and sells this natural gas to PREPA for delivery to each of the Generation Facilities, and (b) PREPA supplies (but does not sell) natural gas to the ECO Generation Facility, (iii) restructure the Pre-Restatement PPOA such that ECO makes available power generation capacity from the ECO Generation Facility for dispatch, utilizing the natural gas supplied by PREPA, in exchange for a monthly payment by PREPA (as further defined in the ECO PPOA, the "Capacity Payment"), and (iv) will reduce PREPA's purchase costs of

---

[4] *See* PREPA Certified Fiscal Plan, dated August 1, 2018; *see also* PREPA Certified Fiscal Plan, dated June 27, 2019.

power and fuel on a net basis by approximately $100 million annually through September 2032.[5]

Performance by the parties of one Contract depends on the performance by the parties of the other

Contract.[6]  Padilla Decl. ¶ 7.

      10.     The key terms of each of the Contracts follow (and how these terms differ from the

original terms of the Pre-Restatement Contracts):

---

[5]    An earthquake on January 7, 2020 damaged both of the generation units at the Costa Sur Generation Facility.  PREPA has initiated a program to assess whether it should repair the Costa Sur Generation Facility or retire and replace it with new combined-cycle generation facility.  Regardless of whether PREPA retires the existing Costa Sur Generation Facility or recommences the operation of one or both of the units of such facility, the assumption by PREPA of the Contracts will still materially benefit PREPA because a substantial part of the annual savings achieved through the Contracts arises from the supply by PREPA of natural gas to, and PREPA's ongoing ability to dispatch power generation capacity at, the ECO Generation Facility, up to September 2032.  Moreover, the Naturgy GSPA provides PREPA with nomination flexibility to permanently or temporarily reduce the minimum contract quantities that fix PREPA's take-or-pay liability under a wide range circumstances, including the retirement of the Costa Sur Generation Facility and the occurrence of Force Majeure or a forced outage that affects the operations of such facility.

[6]    Although the ECO PPOA falls within the assumption procedures approved last year, the Naturgy GSPA does not.  Because of the interdependency of the Contracts, PREPA seeks an assumption of both Contracts through this Motion.

| | Pre-Restatement PPOA | ECO PPOA |
|---|---|---|
| **Expiration of Supply Term** | March 2022 | September 2032 |
| **Dependable Capacity** | 507 MW | 530 MW |
| **Responsibility for Fuel Procurement** | ECO | PREPA |
| **Commercial Model** | Capacity Payment + Energy Payment (inclusive of fuel pass-through) | Capacity Payment only, intended to cover operating expenses, capital expenditures, and other related items |
| **Capacity Payment** | Approximately $230 M per year at 507 MW (corresponding to $241M per year at 530 MW) | Approximately $128 M per year at 530 MW (subject to an upward or downward adjustment depending on the availability of the ECO Facility)[7] |
| **Energy Payment** | Average of 5.6 cents/kWh per year; increase to 10+ cents/kWh >76% capacity factor | N/A (equivalent payment under GSPA estimated at 7.1 cents/kWh) |
| **Availability Adjustment** | Penalty and bonus for low and high availability | Equivalent structure, with a higher bonus potential. Bonus is 0% at 93% EAF* and 29% at 95% EAF or above. Bonus increases linearly between 93% and 95% EAF |
| **Dispatch Limits** | Between 54 %-76 % of Dependable Capacity | The Parties determine Minimum Dispatch Level based on testing. Maximum Dispatch Level set at 100% of Dependable Capacity with the possibility of dispatching above 100 % with pre-approval by ECO. |
| **Maximum Start-Ups** | Limit of 50 per unit per year | Limit of 100 per unit per year |
| **Conditions Precedent** | N/A | PREPA assumes the contract in Title III |

| | Pre-Restatement GSPA | Naturgy GSPA |
|---|---|---|
| **Term** | December 2020 | September 2032 |
| **Facilities Covered** | Costa Sur | Costa Sur and ECO (and potentially others) |

---

[7] For any period in which the ECO Facility's Equivalent Availability Factor (EAF) exceeds 93%, ECO will obtain a bonus payment, which will be based off a percentage of the fixed capacity payment.

| | Pre-Restatement GSPA | Naturgy GSPA |
|---|---|---|
| **Pricing Hedge** | Hedge to No. 6 fuel oil | Market based price pegged to the New York Mercantile Exchange's Henry Hub natural gas futures contracts price ("**HH**"), with a fixed, but declining premium. |
| **Pricing Formula** | <u>Price per MMBtu</u><br><br>The lesser of:<br><br>• 0.97 * (No. 6 Fuel Oil Price + $1.29), and<br><br>• 0.97 * [50% * (No. 6 Fuel Oil Price + $1.125) + 50% * (115% HH + $5.95)],<br><br>where the No. 6 Fuel Oil Price is converted from $/bbl to $/MMBtu by dividing by 6.03 | <u>Price per MMBtu</u><br><br>• Conditions precedent date until Dec. 31, 2020:   115% x HH + $5.80<br><br>• January 1, 2021 until Dec. 31, 2021: 115% x HH + $5.70<br><br>• January 1, 2022 until Dec. 31, 2022: 115% x HH + $5.60<br><br>• January 1, 2023 until Sept. 2032: 115% x HH + $5.50<br><br>• If the Jones Act is repealed , or amended such that it does not apply to shipping LNG from the US mainland to Puerto Rico, or a waiver of the Jones Act is granted that permits shipping LNG from the US mainland to Puerto Rico without complying with the Jones Act: 115% x HH + $4.80<br><br>Resulting in a unit price reduction of 8 %. |
| **Minimum Annual Contract Quantity** | 45 TBtu (Costa Sur Generation Facility only) | 55 TBtu (both Generation Facilities), subject to further reductions [8] |
| **Maximum Annual Contract Quantity** | 72 TBtu | 106 TBtu (unless a reduction of the minimum annual contract quantity occurs, in which case the maximum will be 120% of the new minimum annual contract quantity) |
| **Take-or-Pay** | 75% of the monthly minimum quantity, 90% of the quarterly minimum quantity, and an overall take-or-pay ("**TOP**") contract quantity. | 75% of the monthly adjusted required quantity and 90% of the quarterly adjusted required quantity, but no overall contract quantity.<br><br>TOP amounts payable at 90% of the relevant contract price |

---

[8]   One such reduction to the Minimum ACQ includes the retirement of Costs Sur.

|  | Pre-Restatement GSPA | Naturgy GSPA |
|---|---|---|
|  | TOP amounts payable at 90% of the relevant contract price |  |
| **Conditions Precedent** | N/A | PREPA assumes both of the Contracts in Title III |

11.     As of the date hereof, PREPA has not defaulted on any provision of either of the Contracts, and thus the assumption of the Contracts does not give rise to any cure costs.  Padilla Decl. ¶ 15.  Certain costs under the ECO PPOA, arising both pre-and post-petition remain subject to reconciliation and payment in the ordinary course.  *Id.*

12.     Additionally, valid execution of both contracts depends on certain requisite approvals. Specifically, both Contracts require approval from the Oversight Board and PREB. On March 11, 2020, PREB issued a resolution and order (the "PREB Resolution and Order") approving both Contracts.[9]  The approval came after a reconsideration process pursued by PREPA after the PREB's Nov. 27, 2019 order denying the agreements pending its evaluation of PREPA's long-term integrated resource plan ("IRP").

13.     In its PREB Resolution and Order, PREB stated that PREPA's responses during the reconsideration process "represent a robust analysis" of the contracts' terms across different scenarios and, because such scenarios are described in the proposed IRP proceeding, PREB was able to reconsider its initial determination and agree with PREPA regarding the contracts.[10]

14.     Prior to the PREB reconsideration and approval process, the PREPA Governing Board approved the execution of the Contracts pursuant to Resolution 4745, dated October 2, 2019.

---

[9] *See* Government of Puerto Rico Public Regulatory Board, Puerto Rico Energy Bureau, *In re Request for Approval of Amended and Restated Power Purchase and Operating Agreements with EcoElectrica and Natural Gas Sale and Purchase Agreement with Naturgy*, Case No. NEPR-AP-2019-0001, dated March 11, 2020.

[10] *See id.*

15.     Further, on December 26, 2019, the Oversight Board approved both of the Contracts under the Contract Review Policy, confirming PREPA's compliance with the Fiscal Plan.  Padilla Decl. ¶ 9.

16.     The assumption by PREPA of the Contracts will benefit PREPA due to (1) the economic benefits of the Contracts to PREPA, particularly as compared to the prior terms, (*see* Padilla Decl. ¶¶ 11-18) and (2) the lack of reasonably available alternatives for replacement of the power and fuel provided under the Contracts (*see id.* ¶ 10).

## RELIEF REQUESTED

17.     By this Urgent Motion, PREPA, through the Oversight Board, seeks entry of an order authorizing PREPA to assume the Contracts and granting such other relief as is just and proper.

## BASIS FOR RELIEF

18.     Section 365 of the Bankruptcy Code, made applicable in this Title III Case pursuant to PROMESA section 301(a), provides that a debtor-in-possession, "subject to the court's approval, may assume or reject an executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor in possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc.  (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir.  1993) (quoting 2 Collier on Bankruptcy ¶ 365.01[1] (15th ed.  1993)).

19.     The assumption or rejection of an executory contract or unexpired lease is subject to review under the business judgment rule.  Under such standard, "a debtor must simply put forth a showing that assumption or rejection of the executory contract or unexpired lease will benefit

the [d]ebtor's estate." *In re Vent Alarm Corp.*, Case No.  15-09316-MCF11, 2016 WL 1599599,

at \*3 (Bankr.  D.P.R.  Apr.  18, 2016).  If a debtor has exercised "reasonable" business judgment,

the court should approve the proposed contract assumption.  *See In re Maiden Brooks Farm LLC*,

435 B.R.  81, 83 (Bankr.  D.  Mass.  2010) (noting that courts afford deference to debtors under

the business judgement rule); *see also Comput.  Sales Int'l, Inc.  v.  Fed.  Mogul (In re Fed.  Mogul*

*Global, Inc.)*, 293 B.R.  124, 126 (Bankr.  D.  Del.  2003)(explaining that under the business

judgment standard, a court should defer to a debtor's decision with respect to contract assumption

or rejection, "unless that decision is the product of bad faith or a gross abuse of discretion").

20.     Under PROMESA, the Oversight Board's discretion is afforded even greater

deference. *See Memorandum Opinion and Order Denying Renewed Motion of Certain Secured*

*Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto*

*Rico for Appointment as Trustees under 11 U.S.C. § 926*, dated January 7, 2020 [Case No. 17-BK-

3566-LTS, Docket No.763].  As the Court noted:

> The Oversight Board is designated, in the first instance, as the entity that makes
> important strategic and tactical judgments in managing these restructuring proceedings,
> and it necessarily does so in a holistic manner. While pursuing returns for creditors of
> each debtor is an important element of those judgments, it is not the exclusive end point
> of the Oversight Board's task. The needs, concerns and future of a political entity that
> is the home of millions of American citizens, as well as the needs, concerns and rights
> of a broad range of parties in interest and the ability to propose confirmable plans of
> adjustment, are all implicated here. The Oversight Board has been given the
> responsibility of balancing and prioritizing the relevant issues and concerns in
> developing fiscal arrangements and plans of adjustment, and it is entitled to a measure
> of deference in carrying out this responsibility.

> *Id*.

21.     The Court has authority to approve assumption of executory, prepetition contracts

as amended post-petition pursuant to section 365(a).  *See Chira v. Saal (In re Chira)*, 367 B.R.

888, 897-900 (Bankr. S.D. Fla. 2007) (holding that "section 365 applies to pre-bankruptcy

executory contracts modified post-bankruptcy" and could be relied on to approve assumption of modified contract); *In re Carter Hawley Hale Stores*, 1991 Bankr. LEXIS 2185 at \*15 (Bankr. C.D. Cal. Oct. 24, 1991) ("Debtors and other parties to prepetition executory contracts and leases may agree to modify provisions thereof as part of a negotiated assumption so long as the contract, as modified, is approved by the Court and meets the business judgment standard."); *Compton v. InOcean AS (In re MPF Holding US LLC)*, 2013 Bankr. LEXIS 2534, \*36-37 (Bankr. S.D. Tex. Jun. 21, 2013) (approving assumption of amended contract under section 365 because "InOcean voluntarily agreed to any alleged modifications of the Contract contained in the Novation Agreement. This does not, in turn, mean that section 365 no longer applies. Rather, it means that the Novation Agreement represents a consensual assumption and assignment under section 365. This Court finds that there is nothing inconsistent about InOcean agreeing to these modifications and assumption under section 365."). Indeed, this Court has previously approved the assumption of a PREPA fuel supply contract as amended post-petition. *See Order Approving Amendment to Fuel Supply Contract with Freepoint Commodities, LLC* [ECF No. 1624].

22.    PREPA's decision to assume the Contracts represents a sound exercise of its judgment and facilitates PREPA's compliance with its Fiscal Plans. The Contracts are vital to PREPA's operations and PREPA's ability to comply with the energy public policy of Puerto Rico. Padilla Decl. ¶ 10.  If PREPA fails to assume the Contracts, PREPA will have no other cost-effective options to dispatch natural gas, generation sources in the southern part of Puerto Rico following the expiration of the Pre-Restatement Contracts. *Id.* Naturgy controls the entire existing capacity of ECO's import terminal to receive and vaporize LNG for the delivery of natural gas for generation, on which the Costa Sur Facility relies for the conversion of LNG and supply of natural gas. *Id.* Third party LNG suppliers have no access rights to this terminal. *Id.* ECO's low marginal

costs in Puerto Rico's electricity sector and Naturgy's *de facto* monopoly over the supply of gas into the southern part of the island limit PREPA's alternatives for a supplier of natural gas and power. *Id.*

23.     Ultimately, PREPA cannot afford to risk any disruption in its power or natural gas supply provided under the Contracts, as any such disruption could have a detrimental impact on the operation of the Generation Facilities; which in turn will adversely affect the ratepayers of Puerto Rico. Padilla Decl. ¶ 18.

24.     Additionally, the Contracts will benefit PREPA, delivering flexibility, reliability, and resilience for the grid system. *Id. ¶* 11. The Contracts offer current market rates significantly below the rates set forth in the Pre-Restatement Contracts, provide ratepayers with immediate savings of approximately $100 million per year. *Id.*. Approximately 70% of the estimated savings derives from operations at the ECO Generation Facility and the remaining 30% derives from operations at the Costa Sur Generation Facility. *Id.*.

> a.  Under the ECO PPOA, PREPA negotiated a reduction in the Capacity Payment equal to $108 million annually. While these Capacity Payment savings are partially offset by increased fuel costs, the net reduction still corresponds to approximately $35 million annually in savings, which will be passed along to ratepayers.[11] Given the expectation for increased dispatch of the units as a result of improved contract terms, load requirements, and current available system capacity, PREPA estimates a total savings of $71 million per year through operations at the ECO Facility. PREPA has historically paid 12.4 cents/kWh for generation from the ECO Facility (fixed plus variable costs), but will likely pay an average of 10.7 cents/kWh under the renegotiated Contracts.  Such a reduction in generation costs will result in substantial savings to Puerto Rico's ratepayers. Padilla Decl. ¶ 12-13.
>
> b.  Further, the renegotiated Naturgy GSPA removed a mechanism that acted as a built-in pricing hedge to oil.  PREPA projects that removing the hedge to oil and reducing the adder fee will result in average savings for PREPA of approximately $29.1 million per year for the Costa Sur Facility. These savings are based upon fuel

---

[11] These estimated savings assume that PREPA continues to dispatch the ECO Facility under at historical levels.

commodity price forecasts, which predict that natural gas prices will remain much lower than oil prices over the next decade.[12] Padilla Decl. ¶ 14.

25.     The Contracts thus provide PREPA with significant cost savings, which will facilitate its ability to meet its debt service obligations, during the Title III process, ensuring the utility a reliable and continuous source of power and natural gas on reasonable terms that are significantly more favorable than any alternative reasonably available to PREPA.

26.     Moreover, PREPA's inability to extend the terms of the Contracts with ECO and Naturgy, respectively, will undermine the security of power supply in Puerto Rico and negatively impact ratepayers in Puerto Rico.  Padilla Decl. ¶ 18.  Accordingly, PREPA is exercising sound judgment by assuming the Contracts and therefore should be authorized pursuant to section 365 of the Bankruptcy Code, made applicable in this Title III Case pursuant to PROMESA section 301(a).

## NO PRIOR REQUEST

27.     No prior request for the relief sought in this Urgent Motion has been made to this or any other court.

## LOCAL RULE 9013-1 CERTIFICATION

28.     Pursuant to Local Rule 9013-1 and ¶ I.H of the *Eleventh Amended Case Management Procedures* [Case No. 17-BK-3283-LTS, ECF No. 11885-1] (the "Case Management Procedures"), Movants hereby certify that they have (a) carefully examined the matter and concluded that there is a true need for an urgent motion, (b) not created the urgency through a lack of due diligence, and (c) made reasonable, good faith communications in an effort to resolve or narrow the issues being brought to the Court.

---

[12] Fuel commodity forecasts for oil and natural gas expect the difference between the cost of oil and natural gas to increase over the contract period.

## NOTICE

29.     PREPA has provided notice of this Urgent Motion to (collectively, the "Notice Parties"): (i) the counterparties to the ECO PPOA and Naturgy GSPA; (ii) the Office of the United States Trustee for the District of Puerto Rico; (iii) the indenture trustees and/or agents, as applicable, for PREPA's bonds; (iv) the administrative agent(s) for lenders under that certain Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank de Puerto Rico, and the lenders party thereto, as amended, and that certain the Trade Finance Facility Agreement, dated as July 20, 2012; (v) the statutory unsecured claimholders' committee appointed in this Title III Case; (vi) the Office of the United States Attorney for the District of Puerto Rico; (vii) counsel to AAFAF; and (viii) the Puerto Rico Department of Justice.

*[Remainder of Page Intentionally Left Blank]*

15

WHEREFORE, PREPA respectfully requests the Court enter the Proposed Order (a) granting the Urgent Motion, (b) authorizing PREPA to assume the Contracts, and (c) granting PREPA such other relief as is just and proper.

Dated: April 1, 2020
    San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J.  Bienenstock (*pro hac vice*)
Paul V.  Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Daniel S.  Desatnik (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority*

**LUIS F.  DEL VALLE-EMMANUELLI**

By: */s/  Luis F.  Del Valle-Emmanuelli*
By: Luis F.  del Valle-Emmanuelli
USDC-PR No.  209514
P.O.  Box 79897
Carolina, Puerto Rico 00984-9897

*Co-Attorney for the Financial Oversight and Management Board as representative of the Debtor*