Hearing Date and Time: **April 22, 2020 at 9:30 a.m.** (Atlantic Standard Time)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>             Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH OF PUERTO RICO TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013 FOR ENTRY OF AN ORDER RECLASSIFYING CLASS 39A AND CLASS 41 CLAIMS UNDER THE OVERSIGHT BOARD'S PLAN OF ADJUSTMENT DATED FEBRUARY 28, 2020**

---

[1] The Debtors in these jointly-administered PROMESA title III cases (these "**Title III Cases**"), along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric and Power Authority (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

BACKGROUND ...............................................................................................................3

    A.    The Retirees And Their Pensions. ...............................................................3

    B.    PROMESA's Protections For Retirees. .......................................................4

    C.    The Formation Of A Separate Retiree Committee. .....................................4

    D.    The Proposed Plan Of Adjustment. .............................................................5

        1.    The Plan's Proposed Treatment Of Retiree Claims...........................5

        2.    The Plan's Proposed Treatment Of General Unsecured Claims............................6

OBJECTION .....................................................................................................................6

    A.    Retiree Claims Should Be Classified Separately From CW General Unsecured Claims. .................................................................................................7

        1.    The UCC's Authority Does Not Support The Motion...........................7

        2.    Retiree Claims And CW General Unsecured Claims Are Of Different "Legal Character" And Are Not "Substantially Similar." ...................11

        3.    Separate Classification Of Retiree Claims Is Appropriate In A Governmental Restructuring. ...............................................................14

    B.    The Court Should Deny The Motion As Premature. ...................................16

CONCLUSION...................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andalusian Global Designated Activity Co., et al. v. Financial Oversight and Management
Board for Puerto Rico*,
No. 20-1065, 2020 WL 1498403 (1st Cir. Mar. 19, 2020) ..................................................1, 14

*Granada Wines, Inc. v. New England Teamster & Trucking Industry Pension Fund*,
748 F.2d 42 (1st Cir. 1984) ........................................................................................... passim

*In re 500 Fifth Avenue Associates*,
148 B.R. 1010 (Bankr. S.D.N.Y. 1993) ...............................................................................10

*In re Bjolmes Realty Tr.*,
134 B.R. 1000 (Bankr. D. Mass. 1991). ........................................................................10, 11

*In re Brotby*,
303 B.R. 177 (B.A.P. 9th Cir. 2003).....................................................................................12

*In re Charles St. African Methodist Episcopal Church of Bos.*,
499 B.R. 66 (Bankr. D. Mass. 2013) .......................................................................................9

*In re City of Detroit*,
No. 13-53846, Dkt. 279 (Bankr. E.D. Mich. Aug. 2, 2013) ...................................................4

*In re City of Detroit*,
524 B.R. 147 (Bankr. E.D. Mich. 2014) ....................................................................2, 11, 15

*In re City of San Bernardino*,
No. 12-bk-28006, Dkt. 831 (Bankr. C.D. Cal. Oct. 17, 2013).................................................4

*In re City of San Bernardino*,
No. 12-bk-28006, Dkt. 2164 (Bankr. C.D. Cal. Feb. 7, 2017) ......................................2, 11, 15

*In re City of Stockton*,
No. 12-32118, Dkt. 846 (Bankr. E.D. Cal. Apr. 1, 2013)........................................................5

*In re City of Stockton*,
526 B.R. 35 (Bankr. E.D. Cal. 2015)..........................................................................2, 11, 15

*In re City of Vallejo*,
No. 08-26813, Dkt. 286 (Bankr. E.D. Cal. Oct. 7, 2008) ........................................................5

*In re City of Vallejo*,
   No. 08-26813, Dkt. 1113 (Bankr. E.D. Cal. Aug. 4, 2011) ...........................................2, 11, 15

*In re Dow Corning Corp.*,
   280 F.3d 648 (6th Cir. 2002) ..................................................................................................12

*In re Gato Realty Tr. Corp.*,
   183 B.R. 15 (Bankr. D. Mass. 1995) ........................................................................................8

*In re Greystone III Joint Venture*,
   948 F.2d 134 (5th Cir. 1991) ..................................................................................................10

*In re Highlands Group of Brunswick, LLC*,
   No. 11-07628-8-SWH, 2012 WL 5385633 (Bankr. E.D.N.C. Nov. 1, 2012) ........................10

*In re Los Angeles Land and Investments, Ltd.*,
   282 F. Supp. 448 (1968), *aff'd*, 447 F.2d 1366 (9th Cir. 1971) ...............................................9

*In re Mount Carbon Metro. Dist.*,
   242 B.R. 18 (Bankr. D. Colo. 1999) ...................................................................................2, 14

*In re Rexford Properties LLC*,
   558 B.R. 352 (Bankr. C.D. Cal. 2016)....................................................................................16

*In re River Valley Fitness One Ltd. P'ship*,
   Case No. 01-12829, 2003 WL 22298573 (Bankr. D.N.H. Sep. 19, 2003) ...............................8

*In re Woodbrook Assocs*,
   19 F.3d 312 (7th Cir. 1994) ...............................................................................................10, 11

## STATUTES & RULES

11 U.S.C. § 597 (repealed 1978)...................................................................................................9

11 U.S.C. § 1122(a) ............................................................................................................. passim

11 U.S.C. §1123(a)(4).................................................................................................................9, 12

11 U.S.C. § 1129(b)(1) .........................................................................................................3, 6, 16

48 U.S.C. § 2141(b)(1)(B) ..........................................................................................................13

48 U.S.C. § 2141(b)(1)(C) ...................................................................................................1, 4, 11

48 U.S.C. § 2161(a) ........................................................................................................................1

48 U.S.C. § 2174(b)(7) .........................................................................................................1, 4, 12

Bankruptcy Act, § 197 ...................................................................................................................9

Federal Rule Of Bankruptcy Procedure 3013 ........................................................................1, 3, 7

**OTHER AUTHORITIES**

Puerto Rico Constitution Article II, section 18 ..............................................................13

Section 211 Report on the Puerto Rico Retirement Systems ........................................................4

The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**") objects (the "**Objection**") to the *Motion Of Official Committee Of Unsecured Creditors Pursuant To Federal Rule Of Bankruptcy Procedure 3013 For Entry Of An Order Reclassifying Class 39A And Class 41 Claims Under Oversight Board's Plan Of Adjustment Dated February 28, 2020* [Dkt. 11989] (the "**Motion**") filed by the Official Committee of Unsecured Creditors (the "**UCC**"). In support of this Objection, the Retiree Committee states:

## INTRODUCTION

The starting point for any plan classification analysis is Bankruptcy Code Section 1122, incorporated into PROMESA, which provides: "a plan may place a claim or an interest in a particular class *only if such claim or interest is substantially similar to the other claims or interests of such class*." 48 U.S.C. § 2161(a), incorporating 11 U.S.C. § 1122(a) (emphasis supplied). Tellingly, the UCC's "classification" Motion fails to even recite, much less analyze, Section 1122's command. The reason for this omission is obvious: the pension claims of Puerto Rico's 167,000 government retirees—claims that PROMESA mandates the Plan of Adjustment "adequately fund[]" (*see* 48 U.S.C. § 2141(b)(1)(C); 48 U.S.C. § 2174(b)(7))—bear no similarity to the general unsecured claims of the Commonwealth's trade creditors and there are valid business reasons to classify pension claims separately from other unsecured claims.

The UCC also ignores what the First Circuit has described as "obvious differences between governmental bankruptcies and commercial private party bankruptcies." *Andalusian Global Designated Activity Co., et al. v. Financial Oversight & Management Board for Puerto Rico*, No. 20-1065, 2020 WL 1498403, at *3 (1st Cir. Mar. 19, 2020) (citing *In re Richmond Unified School Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991)). Unlike a commercial restructuring, the aim of a public-sector restructuring involving a general-purpose public entity like a city or territory is to restore the public entity to fiscal health so that it may continue to provide public services for

the benefit of its citizens, and the retiree community is obviously a significant part of that citizenry and its financial health is an integral part of the public entity's fiscal health. *See, e.g.*, *In re City of Detroit*, 524 B.R. 147, 250-51 (Bankr. E.D. Mich. 2014); *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 41 (Bankr. D. Colo. 1999). This is why the overwhelming majority of municipal Chapter 9 cases (none of which the UCC cites) routinely confirm plans that separately classify, and disparately treat, retiree and general unsecured claims. *See, e.g.*, *City of Detroit*, 524 B.R. at 257; *In re City of San Bernardino*, No. 12-bk-28006, Dkt. 2164 (Bankr. C.D. Cal. Feb. 7, 2017); *In re City of Stockton*, 526 B.R. 35 (Bankr. E.D. Cal. 2015); *In re City of Vallejo*, No. 08-26813, Dkt. 1113 (Bankr. E.D. Cal. Aug. 4, 2011).

Turning a blind eye to the unique facts and circumstances of this case and applicable Chapter 9 precedent, the UCC instead relies on inapposite commercial cases and overstates the First Circuit's holding in *Granada Wines, Inc. v. New England Teamster & Trucking Industry Pension Fund*, 748 F.2d 42, 46-47 (1st Cir. 1984), to argue that the trade claims of general unsecured creditors and the billions of dollars in pension benefits owed to retirees must be placed in the same class. (Motion ¶¶ 3, 19-25.) But, if anything, the UCC's authority *supports* the separate classification of retiree claims from general unsecured claims. As *Granada Wines* instructs, separate classification is appropriate where the "legal character" of claims "accord[s] them a status different from the other unsecured creditors." 748 F.2d at 46 (internal quotations omitted). And here, where PROMESA instructs that a plan of adjustment adequately fund pensions, where retiree claims are paid over time as part of the Commonwealth's newly implemented PayGo system and not in pro rata shares of bonds and cash as is the case with general unsecured claims, where retirees' pensions were significantly cut in the years leading up to the Title III cases, and where the retiree population is not only the largest class of creditors, but also a significant portion of the "public"

2

that Puerto Rico's restructuring is intended to benefit, there can be no question that the "legal
character" of retirees' pension claims is materially different from the claims of other unsecured
creditors.

Finally, the Motion is procedurally improper. Although couched as a classification dispute
under Rule 3013, the UCC's transparent purpose in bringing the Motion is to complain that retirees
will receive a greater percentage distribution than general unsecured creditors under the proposed
plan of adjustment. This is an unfair discrimination argument under Bankruptcy Code Section
1129(b)(1) that must await plan confirmation and cannot be brought under Rule 3013. As such,
the Motion is premature and this Court should not consider the Motion at this time.

Accordingly, the Retiree Committee respectfully requests that this Court deny the Motion.

## BACKGROUND

### A.       The Retirees And Their Pensions.

The Retiree Committee's constituents are the approximately 167,000 government retirees
of the Commonwealth of Puerto Rico and their surviving beneficiaries. Retirees differ significantly
from other creditors of the Commonwealth. They are not "voluntary" creditors who transacted
business with the Commonwealth in a commercial sense. Puerto Rico is where they lived, labored,
and paid taxes over the course of their working years, all with the expectation that the pension
benefits that were part of their compensation as government employees would be available to help
them provide for themselves and their families in their retirement. Unlike the Commonwealth's
commercial suppliers, retirees did not contract with the Commonwealth to receive a lump sum on
a date certain; instead, each individual retiree's agreement was for a stream of deferred
compensation lasting over their retirement years until they (or any surviving beneficiary) passed.

Puerto Rico's retirees also differ from other creditors in that they were forced to make
tremendous sacrifices in the form of pension reductions in the years leading up to the filing of the

Title III cases, bearing the brunt of the Commonwealth's financial distress and failure to properly fund the pension systems, while other creditors continued to be paid in full. These historical cuts amounted to a 23% reduction in benefits in aggregate for participants under the Employees Retirement System and a 7% reduction for participants under the Teachers Retirement System and Judiciary Retirement System. Presently, the average public pension benefit paid in Puerto Rico is just $13,400 (*see* PROMESA Section 211 Report on the Puerto Rico Retirement Systems, Dkt, 11947-7, Ex. 1, at pg. 2), only about half of the average public pension in the remainder of the United States. *See* U.S. Census Bureau, Annual Survey of Public Pensions: State- and Locally-Administered Defined Benefit Data Summary Report: 2014, at Fig. 6 (July 28, 2015).

### B.   PROMESA's Protections For Retirees.

Legally, the claims of the Commonwealth's retirees also are different. Recognizing the unique attributes of retirees and the importance of their financial well-being to the rehabilitation of the Commonwealth and its economy, PROMESA provides protections for retirees that it does not provide for other creditors. Specifically, it requires that a certified fiscal plan "provide adequate funding for public pension systems," 48 U.S.C. § 2141(b)(1)(C), and that a plan of adjustment be consistent with the certified fiscal plan, 48 U.S.C. § 2174(b)(7). Thus, the Commonwealth cannot confirm a plan of adjustment unless that plan provides for the payment of retirees' claims in a way that reflects "adequate funding" of the pension systems.

### C.   The Formation Of A Separate Retiree Committee.

The United States Trustee recognized these critical differences between retirees and other unsecured creditors by appointing a separate committee to represent the Commonwealth's retirees. [Dkt. 340.] This is consistent with what has occurred in municipal bankruptcy cases, where retiree committees are typically formed. *See, e.g.*, *In re City of San Bernardino*, No. 12-bk-28006, Dkt. 831 (Bankr. C.D. Cal. Oct. 17, 2013); *In re City of Detroit*, No. 13-53846, Dkt. 279 (Bankr.

E.D. Mich. Aug. 2, 2013); *In re City of Stockton*, No. 12-32118, Dkt. 846 (Bankr. E.D. Cal. Apr. 1, 2013); *In re City of Vallejo*, No. 08-26813, Dkt. 286 (Bankr. E.D. Cal. Oct. 7, 2008).

### D.  The Proposed Plan Of Adjustment.

The Financial Oversight and Management Board (the "**FOMB**") filed the *Amended Title III Joint Plan Of Adjustment Of The Commonwealth of Puerto Rico, Et Al.* [Dkt. 11946] (the "**Plan**") and the *Disclosure Statement For The Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico Et Al.* [Dkt. 11947] (the "**Disclosure Statement**") on February 28, 2020.[2] This Court initially entered a scheduling order setting a hearing on the Disclosure Statement for June 3, 2020. [Dkt. 12187.] In light of the recent COVID-19 crisis, however, the Court indefinitely adjourned the hearing on the Disclosure Statement. [Dkt. 12549.] No date has been set for the Plan confirmation hearing.

### 1.  The Plan's Proposed Treatment Of Retiree Claims.

The Plan defines "Retirees" as persons who, as of July 1, 2019, received a pension or annuity as a participant in ERS, TRS, or JRS (excepting certain post-2000 participants in ERS). (Plan § 1.292.) The Plan places Allowed Retiree Claims in Class 39A and proposes to modify them pursuant to the "Monthly Benefit Modification" set forth in the term sheet attached as Exhibit E to the Plan (the "**Retiree Term Sheet**"). (*Id.* § 43.1.) For Retirees earning a pension of more than $1,200 per month, the Monthly Benefit Modification reduces their pensions by up to 8.5%. (*Id.*; *see also id.* § 1.270.) To be clear, Retirees in Class 39A will not receive an immediate payment for a percentage of the total pension benefits they have accrued. Instead, the Plan proposes that Retirees will receive their reduced pension benefits on a monthly basis, pursuant to the

---

[2] Capitalized terms used herein and not defined shall have the meaning given to them in the Plan.

Commonwealth's recently enacted PayGo legislation. *See, e.g.,* Joint Resolution for Other Allocations for Fiscal Year 2017-2018; 2017 P.R. Senate Bill 603 (Act 106).

### 2.     The Plan's Proposed Treatment Of General Unsecured Claims.

The Plan defines general unsecured claims against the Commonwealth as "CW General Unsecured Claims" and places them in Class 41. (Plan §§ 1.124, 45.1.) CW General Unsecured Claims have the option of receiving a Pro Rata Share of the CW GUC Recovery or electing to have their claim designated as an Allowed Convenience Claim and receive a cash payout. (*Id.* §§ 45.1, 56.1.) The CW GUC Recovery consists of $263,364,746.43 in New GO Bonds, $263,380,545.46 in COFINA Junior Lien Bonds, and the net recoveries of certain avoidance actions, with an estimated recovery of 3.9%. (*Id.* § 1.126; Disclosure Statement at 17.)

### OBJECTION

This Court should deny the UCC's Motion because applicable law supports—and indeed compels—the Plan's classification of Retiree Claims separate from CW General Unsecured Claims. Section 1122 plainly states that claims may be classified only with "substantially similar" claims. 11 U.S.C. § 1122(a). Far from "substantially similar," Retiree Claims and CW General Unsecured Claims differ in material respects that would render their joint classification inappropriate under Bankruptcy Code Section 1122(a) and this Circuit's precedent.

The UCC's Motion also should be denied because it is premature. The thrust of the UCC's complaint is that general unsecured creditors will receive a smaller percentage distribution under the Plan of Adjustment than retirees. This is an unfair discrimination objection under Bankruptcy Code Section 1129(b)(1), which is more properly heard when the Court decides whether to confirm the Plan. There is no basis for the Court to consider this objection as this stage in the case, when there is no set hearing on the Disclosure Statement, and Plan confirmation is many months away.

A.     **Retiree Claims Should Be Classified Separately From CW General Unsecured
       Claims.**

Bankruptcy Rule 3013 provides that a court "may" "on motion [] determine classes of
creditors and equity security holders pursuant to []§ 1122." Fed. R. Bankr. P. 3013. Section 1122
instructs that "a plan may place a claim . . . in a particular class *only if such claim . . . is substantially
similar to the other claims or interests of such class.*" 11 U.S.C. § 1122(a) (emphasis supplied).
Importantly, Section 1122 only bars the joint classification of claims that are *not* "substantially
similar"—it does not require that a plan place claims that are similar or of equal priority in a single
class. *Id.*

Tacitly recognizing that retiree claims and other unsecured claims are not substantially
similar, the UCC ignores Section 1122 altogether, failing even to allege that Retiree Claims and
CW Unsecured Claims are "substantially similar." (*See generally* Motion.)  To read the UCC's
Motion, one would think the Bankruptcy Code prescribes that all unsecured claims be classified
together. It does not, and neither does the First Circuit.

1.     **The UCC's Authority Does Not Support The Motion.**

The UCC stakes its entire argument on its incorrect reading of the First Circuit's 1984
opinion in *Granada Wines*. 748 F.2d 42. The issue in *Granada Wines* was whether a Chapter 11
debtor correctly reduced a pension fund's claim for withdrawal liability by 50 percent under an
ERISA provision that reduces an employer's withdrawal liability when the employer is insolvent
and undergoing a liquidation or dissolution. *Id.* at 44. The bankruptcy and district courts held that
the ERISA provision at issue was not applicable because the debtor was reorganizing, not
liquidating, and the First Circuit affirmed. *Id.* at 44-46.

The issue of classification only arose because the debtor also argued that Section
1129(b)(2)(B)(ii)—the Bankruptcy Code's "cram down" provision—authorized a 50 percent

7

reduction of the claim. *Id.* at 46. The debtor argued that the reduction was appropriate because the standard for unfair discrimination is whether the dissenting class received more than it would have received in a Chapter 7 case, and in a dissolution, the pension claim would be reduced pursuant to ERISA. *Id.* And even though the debtor's plan did not separately classify the pension fund's claim from other general unsecured creditors, the debtor argued that the court should treat the pension fund's claim as though it were in a separate class. *Id.* The First Circuit rejected this argument, explaining that as a "general rule" "all creditors of equal rank" should be placed in the same class, and that "[s]eparate classifications for unsecured creditors are only justified 'where the legal character of their claims is such to accord them a status different from the other unsecured creditors.'" *Id.* (*quoting In re Los Angeles Land & Investments, Ltd.*, 282 F. Supp. 448, 454 (1968), *aff'd*, 447 F.2d 1366 (9th Cir. 1971)).

Thus, *Granada Wines* did not hold, as the UCC seems to suggest, that the Bankruptcy Code absolutely requires in all cases that all unsecured claims be classified together. As more recent cases have noted "[w]hile *Granada Wines* has often been cited for the proposition that any separate classification of unsecured creditors is impermissible, the First Circuit actually held that separate classification for unsecured creditors is justified" where the legal character of the claims is different. *In re River Valley Fitness One Ltd. P'ship*, Case No. 01-12829, 2003 WL 22298573 at *8 (Bankr. D.N.H. Sep. 19, 2003). Stated differently, "*Granada Wines* explicitly provides that based on differences in 'rank', 'status' and 'character', there can be separate classification of unsecured claims." *In re Gato Realty Tr. Corp.,* 183 B.R. 15, 21 (Bankr. D. Mass. 1995).

Moreover, importantly, the debtor in *Granada Wines* "did ***not*** place the Pension Fund claim in a separate class; it was listed with other general unsecured claims. . . ." 746 F.2d at 46 (emphasis supplied). Instead the debtor there argued that "the withdrawal liability claim should nevertheless

be treated as if it were in a separate class because the plan treated it differently. . . ."  As such, the case arguably stands only for the proposition that—under Section 1123(a)(4)—claims within the same class cannot be treated differently, and any discussion in the opinion regarding separate classification is mere *dicta*.

To the extent the discussion in *Granada Wines* about the classification of claims could be viewed as more than *dicta* and as prescribing a strict classification rule, it was incorrectly decided. That any discussion of a strict classification rule in *Granada Wines* is at most *dicta* is underscored by the fact that the First Circuit did not even cite Section 1122. *See generally* 748 F.2d at 46. Instead, it relied upon *Los Angeles Land and Investments*, which was decided under Chapter X of the Bankruptcy Act. *Id*. (*quoting Los Angeles Land and Investments,* 282 F. Supp. at 453). But the classification rules under Chapter X of the Bankruptcy Act differed substantially from those in Section 1122. Chapter X required that "[a] creditor of equal rank with claims against the same property [] be placed in the same class." Bankruptcy Act, § 197; 11 U.S.C. § 597 (repealed 1978).

As the Sixth Circuit recognized *In re United States Truck Company, Inc*., the omission of a similar requirement from Section 1122 was a significant change in the law. 800 F.2d 581, 585-86 (6th Cir. 1986). "Congress' switch to less restrictive language in Section 1122 of the Code seems to warrant a conclusion that Congress no longer intended to impose the now-omitted requirement that similar claims be classified together." *Id*. at 585. Thus, to the extent that *Granada Wines* could be read to impose a requirement that Section 1122 (which the First Circuit never even cited) requires all unsecured creditors to be classified in the same class, it was incorrectly decided.

The better reading of *Granada Wine*s, which is consistent with its text and more recent case law, is that it does not impose an absolute requirement that all unsecured claims must be classified together. *See In re Charles St. African Methodist Episcopal Church of Bos.*, 499 B.R.

9

66, 96 (Bankr. D. Mass. 2013) (noting that *Granada Wines* did not cite Section 1122). Instead, unsecured claims may be placed in different classes, consistent with Section 1122, provided that there is an independent reason for doing so and the separate classification is not simply to gerrymander the plan vote. *See, e.g., In re Woodbrook Assocs*, 19 F.3d 312, 317-19 (7th Cir. 1994); *In re Greystone III Joint Venture*, 994 F.2d 1274, 1279-81 (5th Cir. 1991).

Indeed, one of the cases from a bankruptcy court in the First Circuit that the UCC cites is consistent with this rule: *In re Bjolmes Realty Tr.*, 134 B.R. 1000, 1003 (Bankr. D. Mass. 1991). (Motion ¶ 23.) Although the UCC cites it for the proposition that all unsecured claims must be classified together (*id.*), in fact the bankruptcy court found that a secured creditor's right to make an election under Section 1111(b) created a basis for separate classification of that unsecured deficiency claim from other unsecured claims under *Granada Wines* because the two claims had a different "legal nature." *Bjolmes Realty*, 134 B.R. at 1003. Two other cases the UCC cites—*In re 500 Fifth Avenue Associates,* 148 B.R. 1010, 1019 (Bankr. S.D.N.Y. 1993) and *In re Highlands Group of Brunswick, LLC*, No. 11-07628-8-SWH, 2012 WL 5385633, at *6-7 (Bankr. E.D.N.C. Nov. 1, 2012)—also hold that a debtor may separately classify unsecured claims provided that it is not doing so only for purposes of gerrymandering the plan vote. (Motion ¶¶ 14, 15.)

Importantly, the other single-asset real estate cases that the UCC cites to support its contrary reading of *Granada Wines* are not to the contrary; in all of these cases the courts found the only basis for separately classifying the deficiency claim of the under-secured creditor from other unsecured claims was to gerrymander the vote. (*See* Motion ¶¶ 21-22 (*citing In re Bos. Post Rd. Ltd. P'ship*, 21 F.3d 477, 481-83 (2d Cir. 1994); *In re Hanish, LLC*, 570 B.R. 4, 15-16 (Bankr. D.N.H. 2017); *In re Barney & Carey Co.*, 170 B.R. 17, 23-24 (Bankr. D. Mass. 1994); *In re Nat'l/Northway Ltd. P'ship*, 279 B.R. 17, 27-29 (D. Mass. 2002).) Thus, at most, these cases can

10

only be read to reaffirm the rule that if the only basis for separate classification of unsecured claims

is to gerrymander voting, that is improper. They do not stand for the strict classification rule the

UCC advances in its Motion. Moreover, each of these courts based their holding on specific

findings in those cases that the unsecured deficiency claims were not substantially different from

other general unsecured claims. (*Id.*) Since, as discussed below, the claims at issue here are of a

different nature, these fact-specific decisions have no bearing on the issue here, or whether the

Plan appropriately placed Retiree Claims and CW General Unsecured Claims in separate classes.[3]

Thus, the appropriate question here is whether there is an independent basis to separately

classify the claims of Retirees and other CW General Unsecured Claims because the legal character

of the claims, as well as the type of treatment, differ.  As the case law developed under Chapter 9

demonstrates, the answer is clearly "yes." *See, e.g.*, *In re City of San Bernardino*, No. 12-bk-28006

(Bankr. C.D. Cal. Feb. 7, 2017), Dkt. 2164 (separately classifying retiree claims); *In re City of*

*Stockton*, 526 B.R. 35 (Bankr. E.D. Cal. 2015) (same); *In re City of Detroit*, 524 B.R. at 257

(same); *In re City of Vallejo*, No. 08-26813 (Bankr. E.D. Cal. Aug. 4, 2011), Dkt. 1113 (same).

### 2.    Retiree Claims And CW General Unsecured Claims Are Of Different "Legal Character" And Are Not "Substantially Similar."

Retiree Claims and CW General Unsecured Claims differ in several material respects, each

of which provides a basis for the Plan to place them in separate classes.

*First*, Congress distinguished pension obligations from all other Commonwealth claims in

PROMESA Section 201(b)(1)(C). PROMESA requires that a certified fiscal plan "provide

adequate funding for public pension systems," 48 U.S.C. § 2141(b)(1)(C), and any plan of

---

[3] It also is important to note that there is substantial debate in the case law, even within the First Circuit,
about whether the unsecured deficiency claim of an under-secured creditor should be separately classified
because of the different legal character of such a claim as compared to general unsecured claims. *See*
*Bjolmes Realty*, 134 B.R. at 1003 (holding separate classification permitted); *accord Woodbrook Assocs*,
19 F.3d at 317-19 (holding separate classification required).

adjustment must, in turn, comply with the certified fiscal plan 48 U.S.C. § 2174(b)(7). The plain

text of PROMESA thus reflects that pension obligations are of a different "legal character" than

other types of general unsecured debt.

*Second*, unlike the CW Unsecured Claims of commercial creditors, who contracted to be

paid a fixed sum at a fixed time, retirees agreed to defer their compensation with the expectation

that the deferred compensation, *i.e.*, their pension, would be paid in periodic payments over the

balance of their life (and that of any surviving spouse), based on formulas established when they

worked for the Commonwealth or other governmental entities. Accordingly, the Plan proposes to

make payments to retirees over the life of the retiree and any eligible spouse through the PayGo

system pursuant to the Retiree Term Sheet and specified statutory rules established before the

Commonwealth's Title III case began.[4]

The treatment of Retiree Claims is fundamentally different from the allocation of bonds

and cash the Plan proposes to make to holders of CW General Unsecured Claims. The

fundamentally different nature of pension claims relative to other types of claims not only justifies

separate classification, it *compels* separate classification for the Plan to be confirmable under 11

U.S.C. §1123(a)(4). *See, e.g.*, 11 U.S.C. § 1123(a)(4) ("a plan shall . . . provide the same treatment

for each claim or interest of a particular class"); *In re Dow Corning Corp.*, 280 F.3d 648, 660 (6th

Cir. 2002) (difference in procedural protections violated Section 1123(a)(4) because some

claimants obtained "far more effective recovery rights" than others within the same class); *In re

Brotby*, 303 B.R. 177, 186 (B.A.P. 9th Cir. 2003) (Section 1123(a)(4) violated where one set of

---

[4] This legislation includes but is not limited to 1951 P.R. Laws 218 (Act 218); 1951 P.R. Laws 441 (Act 441); 1954
P.R. Laws 12 (Act 12); 1990 P.R. Laws 1 (Act 1); 1999 P.R. Laws 305 (Act 305); 2004 P.R. Laws 91 (Act 91); 2010
P.R. House Bill 2031 (Act 70); 2011 P.R. House Bill 2874 (Act 114); 2011 P.R. House Bill 2855 (Act 116); 2013 P.R.
House Bill 888 (Act 3); 2013 P.R. House Bill 1045 (Act 32); 2013 P.R. Senate Bill 1589 (Act 160); 2013 P.R. House
Bill 1595 (Act 162); 2015 P.R. House Bill 2717 (Act 211); 2017 P.R. Senate Bill 603 (Act 106).

creditors within the same class would receive immediate payment while another set would receive payment at an undetermined future date).

*Third*, Retiree Claims are claims for "essential public services" under Article II, section 18 of the Puerto Rico Constitution and Section 201(b)(1)(B) of PROMESA, 48 U.S.C. § 2141(b)(1)(B), and are therefore different from CW General Unsecured Claims. Pensions are deferred compensation for the essential services that retirees, who served as police officers, firemen, teachers, judges, and government employees of all categories, provided to the Commonwealth.

*Fourth*, the inability of Retirees to protect themselves from loss while they were working for the Commonwealth and earning their pensions provides further legal justification for the separate classification and treatment of these claims. Courts have recognized that separate classification of unsecured claims based on the ability of creditors to protect themselves is justified. *See, e.g., In re 11,111, Inc.,* 117 B.R. 471, 478 (Bankr. D. Minn. 1990) (finding that separate classification and disparate treatment were proper where the disadvantaged creditors "knew they were putting their money at risk" and the favored creditors were "without any real opportunity to protect themselves") (*citing Brinkley v. Chase Manhattan Mortg. & Realty Trust (In re LeBlanc)*, 622 F.2d 872, 879 (5th Cir. 1980)); Bruce A. Markell, *A New Perspective on Unfair Discrimination in Chapter 11*, 72 Am. Bankr. L.J. 227, 248-49 (1998) (noting that the parties' expectations should factor into the unfair discrimination analysis).

Here, unlike the holders of CW General Unsecured Claims who could decide whether to do business with the Commonwealth or to buy its bonds based on whatever due diligence those creditors decided to conduct, the Retirees had no similar ability. Teachers, police officers, firemen, and other similar Commonwealth workers necessarily worked for the Commonwealth; and in fact

13

the Commonwealth needed their labor to make the Commonwealth a viable territory in which to live. That basic difference between Retiree Claims and CW General Unsecured Claims justifies the separate classification of those claims.

In light of these differences and the unique nature of Retiree Claims, the Plan correctly— and consistently with this Circuit's precedent— places Retiree Claims in a different class than claims of other creditors.

### 3. Separate Classification Of Retiree Claims Is Appropriate In A Governmental Restructuring.

Finally, the UCC's Motion and reliance on commercial cases also disregards "the obvious differences between governmental bankruptcies and commercial private party bankruptcies" which the First Circuit recognized in its March 19, 2020 decision: *Andalusian Global Designated Activity Co., et al. v. Financial Oversight & Management Board for Puerto Rico*, No. 20-1065, 2020 WL 1498403, at *3 (1st Cir. Mar. 19, 2020). As the First Circuit explained, "[u]nlike a commercial bankruptcy," the "'principle purpose of chapter 9,' and by analogy PROMESA, 'is to allow municipal debtors the opportunity to continue operations while adjusting or refinancing their creditor obligations.'" *Id.* (*quoting In re New York City Off-Track Betting Corp.*, No. 09-17121 MG, 2011 WL 309594, at *5 (Bankr. S.D.N.Y. Jan. 25, 2011)); *see also In re Mount Carbon Metro Dist.*, 242 B.R. at 41 (the legislative purpose underlying Chapter 9 "is to allow an insolvent municipality to restructure its debts in order to continue to provide public services").

Paramount among a government's "operations" is ensuring the well-being of its citizenry. As the bankruptcy court explained in Detroit's Chapter 9 case:

> The City is a municipal service enterprise. Viewed broadly, its mission is to provide municipal services to its residents and visitors to promote their health, welfare and safety. Its employees and retirees are and were the backbone of the structures by which the City fulfills its mission. The City, therefore, has a strong interest in preserving its relationships with its employees, in enhancing their motivation, and in attracting skilled new employees, consistent with its financial resources. The City

14

has reasonably and properly concluded that the discrimination in favor of the
pension claims in its plan is necessary to its mission.

524 B.R. at 257.

For this reason, plans of adjustment in Chapter 9 cases routinely classify—and treat—
pension obligations separately from other unsecured claims. *See, e.g.*, *In re City of San Bernardino*,
No. 12-bk-28006, Dkt. 2164 (Bankr. C.D. Cal. Feb. 7, 2017); *In re City of Stockton*, 526 B.R. 35,
60 (Bankr. E.D. Cal. 2015); *In re City of Detroit*, 524 B.R. at 257; *In re City of Vallejo*, No. 08-
26813, Dkt. 1113 (Bankr. E.D. Cal. Aug. 4, 2011). For example, in *Stockton*, in approving the
separate classification and treatment of pension claims vis-à-vis general unsecured claims, the
court considered "the effect of the effort to reduce municipal costs during the several years before
the case," including pre-filing modification of CBA's in exchange for the city's agreement not to
modify pensions, ultimately concluding that "the reality is that the value of what employees and
retirees lose under the plan is greater than what capital markets creditors lose." *Stockton*, 526 B.R.
at 60-61. Here, too, Retirees have made tremendous sacrifices in the years leading up to the Title
III cases, providing yet another basis for their separate classification and treatment under the Plan.

***

For each of these reasons, the Court should deny the UCC's request to classify CW General
Unsecured Claims together with Retiree Claims.

15

### B.      The Court Should Deny The Motion As Premature.

The Court should also deny the Motion because it is premature. Rule 3013 allows the Court to consider and approve a plan's proposed class structure in advance of the plan confirmation process, but it is reserved for "occasions when classification issues may be so obvious and their resolution so central to the confirmability of the plan" that they require advance consideration. COLLIER ON BANKRUPTCY ¶ 3013.01 (Richard Levin & Henry J. Sommer, eds., 16th ed. 2020). Rule 3013 does *not* permit the Court to determine other confirmation issues. *In re Rexford Properties LLC*, 558 B.R. 352, 355 (Bankr. C.D. Cal. 2016).

Here, the UCC makes no effort to explain why classes 39A and 41 are similarly situated or otherwise belong in a single class. Instead, the UCC makes what amounts to an unfair discrimination argument under Section 1129(b)(1) (and a poor one at that). (*See* Motion ¶ 2 ("[T]he Committee asks . . . this Court ensure that the general unsecured claims . . . receive no less than the Oversight Board proposes to pay to Retirees"); *id.* ¶ 25 ("[T]he Committee is obligated, and will continue, to work to obtain the highest possible recovery for its constituents. . . .").) This is improper. As *Rexford Properties* explained:

> Although Rule 3013 contemplates the consideration and approval of a proposed classification scheme in advance of the plan confirmation process, it does not contemplate the Court making advance determinations of other confirmation issues such as unfair discrimination. The question of unfair discrimination does not arise until and unless a debtor seeks confirmation of a plan notwithstanding its failure to satisfy Bankruptcy Code section 1129(a)(8).

558 B.R. at 355. The UCC's attempt to preemptively argue unfair discrimination is procedurally improper and provides another basis to deny the Motion.

Finally, even if the Motion were procedurally or substantively sound, it does not need to be considered at this time. The Court has adjourned the hearing on the adequacy of information contained in the Disclosure Statement and related deadlines indefinitely in light of the effects of

COVID-19 on the Commonwealth and the measures being undertaken in the Commonwealth to address the pandemic. [Dkt. 12549.] The FOMB will provide a status report to the Court on May 1, 2020, but it remains unclear when the Court will consider the Disclosure Statement. As such, there is no need for this Court to consider the Motion on an expedited basis. (Motion ¶¶ 5-6.)[5]

## CONCLUSION

For all of the foregoing reasons, the Retiree Committee respectfully requests that the Court enter an Order denying the Motion in its entirety and granting such other relief as may be just.

Dated: April 7, 2020

JENNER & BLOCK LLP

By:
*/s/ Robert Gordon*
Robert Gordon (admitted *pro hac vice*)
Richard Levin (admitted *pro hac vice*)
Carl Wedoff (admitted *pro hac vice*)
919 Third Ave
New York, NY 10022-3908
rgordon@jenner.com
rlevin@jenner.com
cwedoff@jenner.com
212-891-1600 (telephone)
212-891-1699 (facsimile)

Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
Landon Raiford (admitted *pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
csteege@jenner.com
mroot@jenner.com
lraiford@jenner.com
312-222-9350 (telephone)
312-239-5199 (facsimile)

Respectfully submitted,

BENNAZAR, GARCÍA & MILIÁN, C.S.P.

By:
*/s/ A.J. Bennazar-Zequeira*
A.J. Bennazar-Zequeira
Héctor M. Mayol Kauffmann
Edificio Union Plaza
1701 Avenida Ponce de León #416
Hato Rey, San Juan, PR 00918
ajb@bennazar.org
hector.mayol@bennazar.org
787-754-9191 (telephone)
787-764-3101 (facsimile)

*Counsel for The Official Committee of Retired
Employees of Puerto Rico*

---

[5] The Retiree Committee reserves the right to address, pursuant to further briefing at the appropriate time, any issues regarding whether the Plan unfairly discriminates in favor of Retiree Claims vis-à-vis the CW General Unsecured Claims or any other class of claims, and reserves all arguments in that regard, and does not waive any such argument by virtue of not setting forth the same here.