**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO,

Debtor.[1]

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

**PARTIAL JOINDER AND STATEMENT IN SUPPORT OF ASSURED GUARANTY
CORP., ASSURED GUARANTY MUNICIPAL CORP., AND INVESCO FUNDS WITH
RESPECT TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013
FOR ENTRY OF AN ORDER RECLASSIFYING CLASS 39A AND
CLASS 41 CLAIMS UNDER OVERSIGHT BOARD'S
PLAN OF ADJUSTMENT DATED FEBRUARY 28, 2020**

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ....................................................................................................................4

ARGUMENT ..........................................................................................................................4

I.        THE AMENDED PLAN FAILS TO CLASSIFY ALL
SUBSTANTIALLY SIMILAR CLAIMS IN THE SAME CLASS, AS
REQUIRED UNDER GRANADA WINES AND PROMESA ............................4

        A.      Granada Wines Requires That All "Substantially Similar" Claims
Be Classified Together...................................................................................4

        B.      Under PROMESA § 301(e), Security And Priority Are The Only
Relevant Considerations In Determining Whether Claims Are
"Substantially Similar" ..................................................................................6

        C.      The Amended Plan's Classification Scheme Is Impermissible
Under Granada Wines And PROMESA § 301(e), Because The
Amended Plan Purports To Place Claims Of The Same Priority In
Separate Classes............................................................................................7

II.       THE AMENDED PLAN IMPERMISSIBLY GERRYMANDERS
CLASSES ...........................................................................................................10

III.     RULE 3013 APPLIES EVEN AFTER A PLAN HAS BEEN FILED.................13

CONCLUSION.....................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Frazier v. Fairhaven Sch. Comm.,
   276 F.3d 52 (1st Cir. 2002) ...................................................................6

Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund,
   748 F.2d 42 (1st Cir. 1984) .................................................................. *passim*

In re Barney & Carey Co.,
   170 B.R. 17 (Bankr. D. Mass. 1994) ...............................................5

In re Cantonwood Assocs.,
   138 B.R. 648 (Bankr. D. Mass. 1992) ..............................................5

In re Combustion Eng'g, Inc.,
   391 F.3d 190 (3d Cir. 2004), as amended (Feb. 23, 2005) .............................10

In re Constitution Plaza Associates Ltd. Partnership,
   161 B.R. 563 (Bankr. D.Ct. 1993) ...........................................14, 15

In re Einstein/Noah Bagel Corp.,
   257 B.R. 499 (Bankr. D.Az. 2000) .................................................14

In re G & C Foundry Company, Ltd.,
   Case No. 06–30601, 2008 WL 4560741, (Bankr. N.D. Oh. 2008) .................................13

In re Hanish,
   70 B.R. 4 (Bankr. D. New Hampshire 2017) ...........................................5, 10

In re Marlow Manor Downtown, LLC,
   BAP No. AK-14-1122-JuKiKu, 2015 WL 667543 (Bankr. 9th Cir. BAP 2015) ............14

In re Midway Investments, Ltd.,
   187 B.R. 382 (Bankr. S.D. Fla. 1995) .............................................13

In re National/Northway Ltd. Partnership,
   279 B.R. 17 (Bankr. D. Mass. 2002) .............................................5, 7

In re Paolini,
   312 B.R. 295 (Bankr. E.D. Va. 2004) ...............................................9

In re Porcelli,
   319 B.R. 8 (Bankr. M.D. Fla. 2004) ...............................................9

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

In re White Grain Horse Co.,
    60 B.R. 16 (Bankr. E.D.Pa. 1986) ...................................................................15

Lamie v. U.S. Trustee,
    540 U.S. 526 (2004) ....................................................................................6

Luehrmann v. Drainage Dist. No. 7 of Poinsett Cnty.,
    104 F.2d 696 (8th Cir. 1939) .........................................................................9

Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.,
    474 U.S. 494 (1986) ....................................................................................7

Northland Cranberries, Inc. v. Ocean Spray Cranberries, Inc.,
    382 F. Supp. 2d 221 (D. Mass. 2004) .............................................................7

Sanitary & Imp. Dist. 65 of Sarpy Cty., Neb. v. First Nat. Bank of Aurora,
    79 B.R. 877 (D. Neb. 1987), aff'd sub nom. Matter of Sanitary & Imp. Dist. 65 of
    Sarpy Cty., Neb., 873 F.2d 209 (8th Cir. 1989) .................................................9

Sasen v. Spencer,
    879 F.3d 354 (1st Cir. 2018) .........................................................................6

Taylor v. Provident Irr. Dist.,
    123 F.2d 965 (9th Cir. 1941) .........................................................................9

W. Coast Life Ins. Co. v. Merced Irr. Dist.,
    114 F.2d 654 (9th Cir. 1940) .........................................................................9

Williamson v. U.S.,
    512 U.S. 594 (1994) ...................................................................................14

**Statutes and Other Authorities:**

11 U.S.C.

    § 1122     ........................................................................................5
    § 1123(a)(4)     ..................................................................................2, 3, 7
    § 1129(a)(10)     .................................................................................10

    48 U.S.C. § 2161(e) ......................................................................................6

Case:17-03283-LTS   Doc#:12687   Filed:04/07/20   Entered:04/07/20 15:25:00   Desc: Main
Document     Page 5 of 23

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**<u>Page(s)</u>**

23 L.P.R.A. § 104(c) ................................................................................................. 2

Fed. R. Bankr. Proc. 3013 ......................................................................................... 14

7 <u>Collier on Bankruptcy</u> ¶ 1122.03[3] n.24 ............................................................. 9

Assured Guaranty Corp., Assured Guaranty Municipal Corp. (together, "Assured"), and funds managed by Invesco Advisers, Inc., that are successors in interest to funds managed by OppenheimerFunds, Inc., and funds and/or accounts managed or advised by OFI Global Institutional Inc. (the "Invesco Funds", and together with Assured, the "Supporting Parties") hereby submit this partial joinder and statement in support (the "Partial Joinder and Statement in Support")[2] to the *Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of an Order Reclassifying Class 39A and Class 41 Claims under Oversight Board's Plan of Adjustment dated February 28, 2020* (ECF No. 11989) (the "Motion" or "Mot."), and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      As much as the Supporting Parties may disagree with some of the Committee's rhetoric and factual assertions,[3] the Committee is correct on the core legal issue presented in its Motion.  The classification scheme set forth in the Amended Plan is clearly illegal under the "strict" approach to classification adopted by the First Circuit in Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund, 748 F.2d 42, 46 (1st Cir. 1984). Granada Wines holds that "all creditors of **equal rank** with claims against the **same property** should be placed in the same class" (emphasis added).  Under this controlling precedent, the claims in Class 39A (Retiree Claims) and in Class 41 (Commonwealth General Unsecured Claims) must (i) be placed in the same class and (ii) receive the same treatment, because the claims in both

---

[2] All references to ECF numbers in this Partial Joinder and Statement in Support refer to the docket of Case No. 17-3283-LTS, unless otherwise indicated.  Capitalized terms used in this Partial Joinder and Statement in Support and not defined herein have the meanings ascribed to them in the Motion.

[3] The filing of this Partial Joinder and Statement in Support should not be construed as an endorsement of any factual assertions in the Motion that are not expressly adopted herein, and the Supporting Parties reserve the right to contest any such factual assertions, including, without limitation, the assertion that any of the Commonwealth's existing financial obligations resulted from "hasty and imprudent decision making."  See Mot. ¶ 1.

1

classes are non-priority unsecured claims of the same rank and without any particular claim to any property.  Id.; see also 11 U.S.C. § 1123(a)(4) ("a plan shall . . . provide the same treatment for each claim . . . of a particular class").[4]

2.     The Amended Plan's classification scheme, however, is even more problematic than the Committee indicates. For example, the Amended Plan proposes to treat (i) claims arising from the Commonwealth's diversion of the excise tax revenues securing revenue bonds issued by HTA (Class 42), CCDA (Class 43), and PRIFA (Class 44) as equivalent to (ii) general unsecured claims.  The Amended Plan constructs this purported equivalence by according the revenue-bond-related claims in Classes 42-44 the same 3.9% recovery as the "Commonwealth General Unsecured Claims" in Class 41.  See ECF No. 11947 (the "Disclosure Statement") at pp. 17-18.  This proposed 3.9% recovery level for the revenue-bond-related claims is inappropriate for several reasons, including that the revenue-bond-related claims include (i) secured claims and (ii) non-dischargeable claims under the Takings Clause of the U.S. Constitution.  Moreover, even if the revenue-bond-related claims in Classes 42-44 were found to include unsecured claims, those unsecured claims would be entitled to priority over general unsecured claims under (i) Article VI, Section 8 of the Puerto Rico Constitution, which incorporates "priorities established by law," and (ii) the Commonwealth's Management and Budget Office Organic Act (Act No. 147-1980), which accords to "commitments entered into by virtue of legal contracts in force" a priority second only to the "public debt," and senior to the "regular expenses" of government, including specifically "[p]ayment of employer contributions to retirement systems and payment of pensions to individuals granted under special statutes."  23 L.P.R.A. § 104(c).

---

[4] For the same reason, all other non-priority unsecured claims must likewise be placed in the same class with—and receive the same treatment as—the claims in Classes 39A and 41 (except to the extent that a holder of any of those other non-priority unsecured claims agrees to a treatment "less favorable" than that of the class as a whole).  11 U.S.C. § 1123(a)(4).

2

3.        Leaving aside the inappropriateness of the plan's mischaracterization of these secured, non-dischargeable, and priority claims as the equivalent of general unsecured claims, the classification scheme is defective even on its own terms.  Granada Wines prohibits the classification of any general unsecured claims separately from other general unsecured claims, like those in Classes 39A and 41.  Moreover, once placed in the same class, these claims would all need to receive the "same treatment."  11 U.S.C. § 1123(a)(4).  As a result, under the plan's assumptions, none of the claims in Classes 39A, 41, or 42-44 could receive anything less than the most favorable treatment afforded to any of those claims, namely the 92.5-100% recovery currently proposed for claims in Class 39A under the Amended Plan.  See Mot. ¶¶ 1, 11.

4.        Similarly, as the Committee alludes to in footnote 12 of its Motion, the Amended Plan illegally purports to classify separately various series of general obligation bond ("GO Bond") claims based on the date of issuance of the relevant GO Bonds.  The Amended Plan correctly, if only implicitly, recognizes that GO Bond claims have a different "rank" (i.e. priority) than general unsecured claims due to the first-priority status of GO Bond claims under Article VI, Section 8 of the Puerto Rico Constitution.  Under Granada Wines, it is permissible to classify GO Bond claims separately from general unsecured claims based on this different "rank" or priority.  See Granada Wines, 748 F.2d at 46.  However, it is clearly impermissible under Granada Wines to separate the GO Bond claims into nineteen different classes and to provide each class a different treatment.  These claims all have the same "rank" (i.e. priority) as each other and are otherwise indistinguishable.  Under Granada Wines, these nineteen classes of substantively identical claims have to constitute a single class and receive the same treatment.  See 11 U.S.C. § 1123(a)(4).

5.        Furthermore, the Amended Plan's classification scheme also (i) violates Section 301(e) of PROMESA, which identifies security and priority as the only relevant considerations when classifying claims, and (ii) violates the universal prohibition, recognized by

3

all bankruptcy courts, on classifying substantially similar claims differently in order to gerrymander an affirmative vote on a plan.

6.     Finally, FOMB is wrong when it asserts that Rule 3013 does not apply once a plan has been filed.  The plain text of Rule 3013 sets no deadline by which a party in interest must file a motion seeking to classify claims, and, as a practical matter, it makes sense to remedy the fatal classification-related defects in the Amended Plan *before* resources are expended on solicitation and confirmation.

7.     For these reasons as well as those already stated in the Committee's Motion, the Court should grant the Motion.

## **BACKGROUND**

8.     The Supporting Parties are creditors of the Commonwealth of Puerto Rico, with billions of dollars of claims arising from their ownership or insurance of securities, including: (i) GO Bonds issued by the Commonwealth of Puerto Rico and (ii) secured revenue bonds issued by (a) HTA, (b) PBA, (c) the Puerto Rico Convention Center District Authority ("CCDA"), and (d) the Puerto Rico Infrastructure Financing Authority ("PRIFA").

9.     On February 28, 2020, the Financial Oversight and Management Board for Puerto Rico ("FOMB") filed the Amended Plan and the Disclosure Statement.

10.    On March 3, 2020, the Official Committee of Unsecured Creditors (the "Committee") filed the Motion.  The Supporting Parties now file this Partial Joinder and Statement in Support in support of the Motion.

## **ARGUMENT**

**I.**     **The Amended Plan Fails To Classify All Substantially Similar Claims In The Same Class, As Required Under *Granada Wines* And PROMESA**

**A.**     ***Granada Wines* Requires That All "Substantially Similar" Claims Be Classified Together**

11.     Under Section 1122 of the Bankruptcy Code, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122.  Moreover, under binding First Circuit precedent, all substantially similar claims *must* be classified together.  See Granada Wines, Inc. v. New England Teamsters and Trucking Indus. Pension Fund, 748 F.2d 42, 46 (1st Cir. 1984); see also, e.g., In re Hanish, 570 B.R. 4, 15 (Bankr. D. New Hampshire 2017) ("The First Circuit follows what is known as the 'strict approach' to classification"); In re National/Northway Ltd. Partnership, 279 B.R. 17, 25 (Bankr. D. Mass. 2002) ("In this circuit, . . . the answer is that [claims that are substantially similar must be classified together] . . . Therefore if LaSalle's and C & W's unsecured claims are of the same legal character as the other unsecured claims, they must be placed in [the same class]").

12.     Specifically, creditors can be placed in different classes only "where the legal character of their claims is such as to accord them a status different from other . . . creditors . . . ."  See Granada Wines, Inc., 748 F.2d at 46.  In assessing the "legal character" of claims for purposes of determining whether they must be classified together, the relevant characteristics are limited to (i) the priority of the claim and (ii) the property, such as security, against which such claim can be asserted.  As the First Circuit stated in Granada Wines, "the general rule regarding classification is that all creditors of **equal rank** with claims against the **same property** should be placed in the same class." Id. (emphasis added); see also In re Barney & Carey Co., 170 B.R. 17, 22, 24 (Bankr. D. Mass. 1994) ("[T]he First Circuit has adopted a strict approach, namely, that **all claims of equal legal priority must be placed in the same class** . . . The Court recognizes . . . that Granada Wines requires that the Debtor establish that the legal nature of the separately classified claims differ") (emphasis added); In re Cantonwood Assocs., 138 B.R. 648, 657 (Bankr.

D. Mass. 1992) ("[T]he Debtor's classification scheme is improper, as creditors of equal rank have

not been placed in the same class.").

>   **B.   Under PROMESA § 301(e), Security And Priority Are The Only
>   Relevant Considerations In Determining Whether Claims Are
>   "Substantially Similar"**

13.    PROMESA § 301(e) accords with <u>Granada Wines</u> in identifying (i) priority

and (ii) security as the only characteristics relevant to determining whether claims are

"substantially similar," such that they must be classified together.  Section 301(e) states:

> Substantially Similar.—In determining whether claims are
> **'substantially similar'** for the purpose of section 1122 of [the
> Bankruptcy Code], the Oversight Board **shall consider whether
> such claims are secured** and **whether such claims have priority
> over other claims**.

48 U.S.C. § 2161(e) (emphasis added).  Under the doctrine of *inclusio unius est exclusio alterius*,

Congress's inclusion of security and priority as the relevant considerations in determining whether

claims are "substantially similar" excludes consideration of other factors not identified in the

statute.  <u>See</u> <u>Sasen v. Spencer</u>, 879 F.3d 354, 362, (1st Cir. 2018) ("[T]he venerable canon of

statutory construction *inclusio unius est exclusio alterius* . . . teaches that if one of a category is

expressly included within the ambit of a statute, others of that category are implicitly excluded")

(<u>citing</u> <u>Frazier v. Fairhaven Sch. Comm.</u>, 276 F.3d 52, 68 (1st Cir. 2002)); <u>see also</u> <u>Lamie v. U.S.</u>

<u>Trustee</u>, 540 U.S. 526, 534-35 (2004) (section 330(a)(1) of the Bankruptcy Code, which provides

for compensation to certain enumerated categories of "officers," excludes compensation to officers

not identified in the statute).

14.    Moreover, Section 301(e) is unique to PROMESA and has no counterpart

in the Bankruptcy Code, which does not define the term "substantially similar."  Therefore, in

view of Congress's express definition of what considerations are relevant to determining whether

claims are "substantially similar" under PROMESA, any alternative definitions of "substantial

6

similarity" that may exist in cases interpreting the Bankruptcy Code are inapplicable. <u>See</u>, <u>e.g.</u>, <u>Northland Cranberries, Inc. v. Ocean Spray Cranberries, Inc.</u>, 382 F. Supp. 2d 221, 227 (D. Mass. 2004) ("When one statute contains limiting language and a related statute does not, the court should presume that the difference was intentional."); <u>see also</u> <u>Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.</u>, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."). Under PROMESA and <u>Granada Wines</u>, if claims have the same priority—and, in the case of secured claims, the same security—they are "substantially similar" and must be classified together.

      C.    **<u>The Amended Plan's Classification Scheme Is Impermissible Under <i>Granada Wines</i> And PROMESA § 301(e), Because The Amended Plan Purports To Place Claims Of The Same Priority In Separate Classes</u>**

      15.    The Amended Plan's classification scheme plainly fails to comply with PROMESA § 301(e) and <u>Granada Wines</u>. As an initial matter, the Amended Plan purports to classify various classes of what it considers to be unsecured claims separately, including Classes 39A, 41, and 42-44. Under FOMB's apparent assumption that these classes all contain unsecured, non-priority claims, all such claims would need to be classified together in a single class and receive the same treatment. <u>See</u>, <u>e.g.</u>, <u>In re National/Northway Ltd. Partnership</u>, 279 B.R. 17, 27 (Bankr. D. Mass. 2002) ("The fact that (unsecured) claims may take various forms—as for example, notes, accounts, written contracts, torts or the like—would not ordinarily compel separate classification since an unsecured indebtedness or liability is the common denominator of all."); <u>see also</u> 11 U.S.C. § 1123(a)(4) ("a plan shall . . . provide the same treatment for each claim . . . of

7

a particular class"). Similarly, because all "CW Bond Claims" arising from GO Bonds have the same priority (and, to the extent secured, the same security),[5] they must be classified together.

16.     FOMB's apparent rationale for purporting to separately classify different series of "CW Bond Claims" by issuance date is that different series of GO Bonds in FOMB's view supposedly face different levels of "litigation risk" with respect to the claim objections[6] filed by FOMB and the Committee based on the constitutional debt limit in the Puerto Rico Constitution, with later-dated bonds supposedly facing greater risk of disallowance than earlier-dated bonds.[7]   However, those claim objections provide no basis for separate classification, because those objections go to the allowance or disallowance of the relevant claims, and the First Circuit held in <u>Granada Wines</u> that a difference in the "**allowable amount**" as opposed to "**legal nature**" of a claim does not justify separate classification.   <u>Granada Wines</u>, 748 F.2d at 47 (emphasis added); <u>see also</u> Mot. ¶ 20.   Indeed, it makes no sense to separately classify *allowed* claims based on a purported risk of disallowance; if the claims are allowed, then there is no disallowance risk, and if the claims are disallowed, then there is no need to classify them.   If individual claimholders are concerned about disallowance risk, then they can enter into settlements agreeing to allowance of their claims in a reduced amount, but such settlements would only impact the allowed amount of the settled claims, not their legal nature as secured, unsecured, priority, or non-priority claims.   Separate classification based on the purported risk that the "CW Bond

---

[5] As indicated in previous court filings, the GO Bonds are secured by a special property tax under Act 83 of 1991.   <u>See</u> *Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corp. to Dismiss Adversary Complaint*, Adv. Proc. No. 19-291-LTS, ECF No. 53 ¶¶ 27-30.

[6] <u>See</u> ECF Nos. 4784 and 7057.

[7] <u>See</u>, <u>e.g.</u>, Disclosure Statement, ECF No. 11947, at p. 22 ("The Oversight Board has assessed the litigation risk related to the above actions and has determined that the proposed recoveries reasonably reflect the litigation risk related to the disputes in connection with the GO Bonds, PBA Bonds, and PRIFA BANs. The Oversight Board submits that the resolution of the challenges to GO Bonds, PBA Bonds, and PRIFA BANs embodied in the Plan is reasonable and fair, and should be approved.").

Claims" may not be allowable in their full amount is therefore impermissible under <u>Granada</u> <u>Wines</u>.

17.     Notably, even in jurisdictions that take an approach to classification less strict than the First Circuit's, separate classification of bonds by issuance date is generally understood to be improper.  <u>See</u>, <u>e.g.</u>, <u>Luehrmann v. Drainage Dist. No. 7 of Poinsett Cnty.</u>, 104 F.2d 696, 701–02 (8th Cir. 1939) (separate classification of bonds by issuance date is improper); <u>see also</u>, <u>e.g.</u>, <u>Taylor v. Provident Irr. Dist.</u>, 123 F.2d 965, 966–67 (9th Cir. 1941) (holding that bonds of whatever maturity were on parity); <u>W. Coast Life Ins. Co. v. Merced Irr. Dist.</u>, 114 F.2d 654, 672 (9th Cir. 1940) ("Of course every bond of different maturing date and every interest coupon is in a sense in a class of itself, but no one would conten[d] that this difference is within the meaning of the bankruptcy law a mark for classification."); <u>Sanitary & Imp. Dist. 65 of Sarpy Cty., Neb. v. First Nat. Bank of Aurora</u>, 79 B.R. 877, 878 (D. Neb. 1987), <u>aff'd sub nom.</u> <u>Matter of Sanitary & Imp. Dist. 65 of Sarpy Cty., Neb.</u>, 873 F.2d 209 (8th Cir. 1989) ("separate classification [is] improper where based solely on date of issue of bonds").

18.     Similarly, even jurisdictions more lenient that the First Circuit have recognized that the existence of a claim objection is generally not a valid basis for separate classification, and that "claims may not be separately classified where the only rationale offered for such separate classification is that the claims are disputed."  7 <u>Collier on Bankruptcy</u> ¶ 1122.03[3] n.24. <u>See</u>, <u>e.g.</u>, <u>In re Porcelli</u>, 319 B.R. 8, 10–11 (Bankr. M.D. Fla. 2004) ("Since the legal status of the claim and not its disputed status is the appropriate focus of classification, the segregation of unsecured claims that are disputed is improper"); <u>In re Paolini</u>, 312 B.R. 295, 315 (Bankr. E.D. Va. 2004) ("There is no cognizable basis to permit separate classification of the claim of [the creditor]; the existence of the dispute over the validity of the [creditor's] claim is not sufficient to distinguish it from the other unsecured pre-petition claims").

19.     In the First Circuit, the strict classification standard of Granada Wines is controlling.  Nonetheless, these cases from other jurisdictions serve to illustrate how truly aberrant and egregious the classification scheme proposed in the Amended Plan is under any standard.

## II.      The Amended Plan Impermissibly Gerrymanders Classes

20.     The classification scheme in the Amended Plan is also impermissible in that it almost certainly represents an effort to gerrymander accepting classes and thereby manipulate a vote in favor of confirmation.  In order for a plan of adjustment to be confirmed, Section 1129(a)(10) of the Bankruptcy Code—incorporated by PROMESA § 301(a)—requires that "at least one class of claims that is impaired under the plan has accepted the plan."  11 U.S.C. § 1129(a)(10).[8]  Moreover, even in jurisdictions that do not follow the First Circuit's strict approach to claims classification under Granada Wines, "all courts agree . . . that 'artificial classification' may not be used to 'gerrymander', that is, for the purpose of creating one accepting impaired class to improperly manipulate the voting requirements of section 1129(a)(10)."  In re Barney & Carey Co., 170 B.R. 17, 24 (Bankr. D. Mass. 1994); see also, e.g., In re Hanish, 570 B.R. 4, 15 (Bankr. D.N.H. 2017) ("Whatever uncertainty exists in the caselaw, there is 'one clear rule' to which all courts adhere—"*thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan*") (emphasis in original).  The burden is on the debtor to show "a legitimate non-gerrymandering reason for the separate classification."  In re Barney & Carey Co., 170 B.R. 17, 24 (Bankr. D. Mass. 1994); see also In re Combustion Eng'g, Inc., 391 F.3d 190, 247 (3d Cir. 2004), as amended (Feb. 23, 2005).

21.     The splitting of substantively identical claims into separate classes is a textbook example of gerrymandering.  FOMB and its fellow plan proponents apparently intend to

---

[8] The determination of whether at least one impaired class of claims has accepted the plan is made "without including any acceptance of the plan by any insider."  See 11 U.S.C. § 1129(a)(10).

represent to the Court that multiple impaired "classes" of claims have voted to accept the Amended

Plan, whereas in reality, in a fair vote not skewed by gerrymandering, it is unclear that the

Amended Plan would have sufficient support to secure an acceptance from even a single

legitimately constituted class.[9]

          22.     In the case of Classes 39A, 41, and 42-43, FOMB has made it difficult for

the Court and the parties to fully assess the impact of its gerrymandering efforts, because FOMB

has failed even to list estimated claim amounts for Classes 39A and 41 in the Disclosure Statement.

See Disclosure Statement, ECF No. 11947 at p. 17.  Notably, however, even though the Official

Committee of Retirees (the "Retiree Committee") has entered into an agreement to support the

treatment provided to Class 39A, the Retiree Committee does not appear to have the power to bind

any actual creditors entitled to vote in that class,[10] and so FOMB is likely uncertain of its ability

to obtain an acceptance from that "class."  The Amended Plan therefore seems designed to increase

FOMB's odds of obtaining an acceptance from Class 39A by (i) providing a vastly more favorable

treatment to claims in Class 39A than to other, substantially similar claims, and (ii) artificially

---

[9] Evidence of this strategy can be seen, for example, in a recent statement by the Lawful Constitutional Debt Coalition ("LCDC"), one of the primary hedge fund groups with which FOMB negotiated the Amended Plan.  LCDC cited the number of "classes" likely to accept the Amended Plan as supposed evidence of the level of support for the plan, stating "assuming that 80% of bondholders vote on the Proposed Plan, the claims held solely by the PSA Creditors would translate into more than 2/3 support in dollar amount from bondholders in **four out of the six anticipated classes** of uninsured bonds, with significant support from the PSA Creditors in the other two classes of uninsured bonds."  ECF No. 12471 ¶ 24 n.20 (emphasis added).  While LCDC's statement appears to mistakenly reference the six basic types of uninsured bond claims set forth in the *Initial Plan* (PBA Bond Claims, Vintage CW Bond Claims, Vintage CW Guarantee Bond Claims, 2012 CW Bond Claims, 2012 CW Guarantee Bond Claims, and 2014 CW Bond Claims) (ECF No. 8765) rather than the classes of claims in the Amended Plan, one can expect similar statements from LCDC and others extolling the number of "classes" that are likely to accept the Amended Plan.  Such statements have no value or credibility when classifications have been improperly manipulated to obtain such skewed results.

[10] See, e.g., ECF No. 11947-3 § 3.02(b)(i) (plan support agreement between FOMB and Retiree Committee requiring Retiree Committee to "actively encourage support by its constituency" for a plan consistent with the plan support agreement, but without any indication that Retiree Committee can actually bind its constituency).

isolating holders of substantially similar claims into separate classes, thereby disenfranchising disfavored creditors from voting in the same class as the claims in Class 39A.  Of course, it isn't much of an accomplishment to obtain an accepting "class" if the debtor is permitted to (i) provide an oversized recovery to one subset of what would naturally be a single larger class, and then (ii) pit that favored subset against what would normally be the other members of the same class. Permitting a debtor to artificially split classes in this manner effectively renders the Bankruptcy Code's entire voting process meaningless, which is exactly why this type of gerrymandering is forbidden in all jurisdictions.

23.     The intent of FOMB and its fellow plan proponents to gerrymander is even more evident in the case of the "CW Bond Claims," if only from the fact that FOMB and its co-proponents increased the number of classes of "CW Bond Claims" between the Initial Plan proposed by FOMB in September 2019 (ECF No. 8765) and the Amended Plan.  Specifically, while the Initial Plan featured "only" ten putative classes of "CW Bond Claims," the Amended Plan now features nineteen such classes.  By further fragmenting the "CW Bond Claims" into even smaller classes, FOMB and its co-proponents appear to be trying to increase the appearance of support for the plan by artificially increasing the number of accepting classes.

24.     More generally, FOMB's (i) objection to certain GO Bond claims, followed by (ii) its attempt to use that objection as a purported basis to separately classify the challenged claims and disenfranchise their holders, are classic but obvious gerrymandering techniques that have long been seen through and rejected by the courts.  As the court in In re Congoleum Corp., 362 B.R. 198, 203 (Bankr. D.N.J. 2007) stated in words that precisely describe (and reject) FOMB's strategy here, "if disputed claims could be classified separately on that basis alone, debtors would always put difficult creditors in a separate class to obtain the consent of the class of undisputed creditors and seek confirmation under 1129(b).  The claims objection process in

12

bankruptcy is something entirely separate from plan classification." Similarly, in In re Midway

Investments, Ltd., 187 B.R. 382, 392 (Bankr. S.D. Fla. 1995), the court held that the debtor had

"misclassified" claims where it classified a claim separately from other claims on the grounds that

its allowance was disputed. The Midway court recognized that "separate classification of disputed

. . . claims" was "an attempt to gerrymander the voting process" and "further evidence of the non-

confirmability" of the debtor's plan.

        25.     The Amended Plan's separate classification of substantially similar claims

is an obvious and prohibited effort to gerrymander that should be rejected by this Court.

**III.**     **Rule 3013 Applies Even After A Plan Has Been Filed.**

        26.     Finally, the Court can and should consider the Committee's Motion now,

prior to a hearing on the Disclosure Statement or Plan. In the recent reply (ECF No. 12544) FOMB

filed in support of its motion to adjourn a hearing on the Disclosure Statement, FOMB suggested

that the timing of the Motion was inappropriate because Rule 3013 applies only before a plan is

proposed. See ECF No. 12544 ¶ 3. Specifically, FOMB asserted, based on a contorted reading of

an Advisory Committee Note to Rule 3013, that Rule 3013 applies only "before a plan is proposed

when necessary to facilitate the formulation of a plan." Id. However, no such limitation on the

application of Rule 3013 exists. See In re G & C Foundry Company, Ltd., Case No. 06–30601,

2008 WL 4560741, at *3 (Bankr. N.D. Oh. 2008) ("Rule 3013 does not specify a time for filing a

motion for determination of classes of claims pursuant to § 1122"). FOMB is merely playing with

semantics. Classification is unquestionably a disclosure statement issue and confirmation issue.

So FOMB's position comes down to the argument that once a plan is filed, classification objections

can be heard at the disclosure statement and confirmation hearing, but not separately by way of

Rule 3013. If there exists a rationale for such a policy, it is not obvious. Potential showstopper

issues should be addressed before the show proceeds.  Otherwise, substantial expense and
resources will be spent on an ultimately futile effort.

27.     The plain language of Rule 3013 contains no time constraints at all.  Rule
3013 states "[f]or the purposes of **the plan and its acceptance**, the court may, on motion after
hearing on notice as the court may direct, determine classes of creditors and equity security holders
pursuant to . . . § 1122 . . . of the Code."  Fed. R. Bankr. Proc. 3013 (emphasis added).  Because
Rule 3013 refers to "the plan" rather than "a plan," and refers to the plan's "acceptance", the Rule
on its face contemplates a scenario in which a particular plan has already been filed and approval
is being sought.

28.     At minimum,  Rule 3013 establishes a policy that parties in interest should
be permitted to file motions seeking determinations as to the classification of claims.  In contrast,
the Advisory Committee Note relied upon by FOMB is ambiguous at best.  The Note merely ". . .
recognizes that it may be desirable or necessary to establish proper classification before a plan can
be formulated" without stating that there are any particular temporal limitations on when a motion
under Rule 3013 can be brought.  The Supreme Court has held that where, as here, the policy in a
federal rule's text is clear, it "outweighs whatever force lies in ambiguous statements contained in
the Advisory Committee Notes to the Rule."  Williamson v. U.S., 512 U.S. 594, 594 (1994).

29.     Consistent with the text of Rule 3013, courts routinely consider motions
under Rule 3013 *after* a plan and disclosure statement have already been filed.  See, e.g., In re
Marlow  Manor  Downtown,  LLC, BAP No. AK-14-1122-JuKiKu, 2015 WL 667543, at *10
(Bankr. 9th Cir. BAP 2015) (affirming bankruptcy court decision granting a 3013 motion and
finding proposed classification in an already filed plan improper); In re Einstein/Noah Bagel Corp.,
257 B.R. 499, 511 (Bankr. D.Az. 2000) (granting 3013 motion seeking approval of proposed
classification of an equity interest in an already filed plan); In re Constitution Plaza Associates

14

<u>Ltd. Partnership</u>, 161 B.R. 563, 567 (Bankr. D.Ct. 1993) (granting a 3013 motion after a plan was

filed); <u>In re White Grain Horse Co.</u>, 60 B.R. 16, 18 (Bankr. E.D.Pa. 1986) (granting 3013 motion

seeking approval for the classification scheme set forth in an already filed plan).

## **<u>CONCLUSION</u>**

       30.     For the reasons stated above and in the Motion, the Court should grant the

Motion.

Dated:  New York, New York
        April 7, 2020

CASELLAS ALCOVER & BURGOS P.S.C.    CADWALADER, WICKERSHAM & TAFT LLP


By: */s/ Heriberto Burgos Pérez*        By: */s/ Mark C. Ellenberg*
    Heriberto Burgos Pérez                   Mark C. Ellenberg*
    USDC-PR 204809                           Howard R. Hawkins, Jr.*
    Ricardo F. Casellas-Sánchez             William J. Natbony*
    USDC-PR 203114                           Ellen M. Halstead*
    Diana Pérez-Seda                         Thomas J. Curtin*
    USDC-PR 232014                           Casey J. Servais*
    P.O. Box 364924                          200 Liberty Street
    San Juan, PR 00936-4924                  New York, NY 10281
    Telephone:  (787) 756-1400               Telephone:  (212) 504-6000
    Facsimile:  (787) 756-1401               Facsimile:  (212) 504-6666
    Email:  hburgos@cabprlaw.com             Email:
            rcasellas@cabprlaw.com               mark.ellenberg@cwt.com
            dperez@cabprlaw.com                  howard.hawkins@cwt.com
                                                 bill.natbony@cwt.com
*Attorneys for Assured Guaranty Corp. and*           ellen.halstead@cwt.com
*Assured Guaranty Municipal Corp.*                   thomas.curtin@cwt.com
                                                 casey.servais@cwt.com

                                        * Admitted *pro hac vice*

                                        *Attorneys for Assured Guaranty Corp. and Assured
                                        Guaranty Municipal Corp.*

**TORO COLÓN MULLET P.S.C.**

*/s/ Manuel Fernández-Bared*
MANUEL FERNÁNDEZ-BARED
USDC-PR No. 204,204
Email: mfb@tcm.law

*/s/ Linette Figueroa-Torres*
LINETTE FIGUEROA-TORRES
USDC-PR No. 227,104
Email: lft@tcm.law

*/s/ Jane Patricia Van Kirk*
JANE PATRICIA VAN KIRK
USDC–PR No. 220,510
Email: jvankirk@tcm.law
P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

*s/ Thomas Moers Mayer*
THOMAS MOERS MAYER*
AMY CATON*
DOUGLAS BUCKLEY*
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000
Email: tmayer@kramerlevin.com
        acaton@kramerlevin.com
        dbuckley@kramerlevin.com
* (admitted *pro hac vice*)

*Counsel to the Invesco Funds*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, the 7th day of April, 2020.

By:   /s/ *Howard R. Hawkins, Jr.*
Howard R. Hawkins, Jr.*
*admitted pro hac vice
