# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>  as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>  Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br>(Jointly Administered) |

**PARTIAL JOINDER OF AMBAC ASSURANCE CORPORATION TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013 FOR ENTRY OF AN ORDER RECLASSIFYING CLASS 39A AND CLASS 41 CLAIMS UNDER OVERSIGHT BOARD'S PLAN OF ADJUSTMENT DATED FEBRUARY 28, 2020**

Ambac Assurance Corporation ("Ambac"), by and through its undersigned attorneys, respectfully files this partial joinder ("Ambac Joinder") to the *Motion Of Official Committee Of Unsecured Creditors Pursuant To Federal Rule Of Bankruptcy Procedure 3013 For Entry Of An Order Reclassifying Class 39a And Class 41 Claims Under Oversight Board's Plan Of Adjustment Dated February 28, 2020*. Herein, Ambac expresses its support for the Motion of *Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Entry of an Order Reclassifying Class 39A and Class 41 Claims Under Oversight Boards Plan of Adjustment Dated February 28, 2020* (Dkt. No. 11989) (the "UCC's Motion" or "Mot.") seeking an order reclassifying Class 39A and Class 41 claims under the *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* dated February 28, 2020 (Dkt. No. 11946) (the "Amended Plan"):[2]

### PRELIMINARY STATEMENT

1. The Amended Plan that the Financial Management and Oversight Board ("Oversight Board") filed on February 28, 2020, flouts binding First Circuit precedent, pursuant to which all unsecured creditors with substantially similar claims against the debtor must be treated equally. The First Circuit follows the "strict" rule of classification, first articulated in *Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund,* 748 F.2d 42, 46 (1st Cir. 1984) ("Granada Wines"). Under this strict rule, all substantially similar claims ***must*** be classified together; the debtor does not have the option of splitting substantially similar claims into different classes and giving them different treatment under a plan.

2. But the Amended Plan here proposes to do just that. As described in the UCC's Motion and Assured's Joinder, the Oversight Board has split retiree claims (Class 39A), among others, from other unsecured claims against the Commonwealth (Class 41), providing significantly different recoveries for these classes. (*See* Mot. at ¶ 11.) The Amended Plan's separate classification of legally indistinguishable general unsecured claims, including its different classification of the claims in Classes 39A and 41, abandons key requirements in the First Circuit.

---

[2] All references to ECF numbers in this Ambac Joinder refer to the docket of Case No. 17-3283-LTS, unless otherwise indicated. Capitalized terms used in this Ambac Joinder and not defined herein have the meanings ascribed to them in the Motion.

3. The Amended Plan's improper classifications extends beyond its failure to afford the same treatment to all general unsecured claims, and suffers from four other critical defects. *First*, the Amended Plan wrongly construes the claims related to special revenue bonds—in particular, bonds issued by HTA (Class 42), CCDA (Class 43), and PRIFA (Class 44)—as ranking equally with general unsecured claims. This classification is clearly improper, because claims related to the HTA, CCDA, and PRIFA bonds (the "Revenue Bonds" which give rise to "Revenue Bond Claims") are secured by the pledges of specific revenues and taxes. *Second*, if, as the Amended Plan presumes, the Revenue Bond Claims were determined to be general unsecured claims and, as the Oversight Board itself strenuously argues, there is no cognizable priority under Title III other than administrative priority, then the Revenue Bond Claims must be classified together with all other general unsecured claims, including GO Bond claims (Classes 11-38), retiree claims (Class 39A), and general unsecured claims (Class 41). *Third,* if this Court were to conclude that Revenue Bond Claims are general unsecured claims, but that Commonwealth law priorities must continue to be respected under Title III, then the Amended Plan fails to respect the priority of the Revenue Bond Claims under Commonwealth law over other unsecured creditors. *Finally*, the Amended Plan's splitting of substantially similar claims into numerous different classes, and the decision to afford those substantially similar claims wildly different treatments, not only violates the First Circuit's standard in *Granada Wines* but is transparently an effort to gerrymander the confirmation process. (*See Partial Joinder And Statement In Support Of Assured Guaranty Corp., Assured Guaranty Municipal Corp., And Invesco Funds With Respect To Motion Of Official Committee Of Unsecured Creditors Pursuant To Federal Rule Of Bankruptcy Procedure 3013 For Entry Of An Order Reclassifying Class 39A And Class 41 Claims Under*

*Oversight Board's Plan Of Adjustment Dated February 28, 2020* (Dkt. 12687) ("Assured Joinder").)

4. Accordingly, for the reasons set forth in the UCC's Motion, Assured's Joinder, and herein, this Court should grant the Motion.

## ARGUMENT

I. **THE AMENDED PLAN IMPROPERLY CLASSIFIES CERTAIN GENERAL UNSECURED CREDITORS IN VIOLATION OF THE FIRST CIRCUIT'S "STRICT" APPROACH TO CLASSIFICATION.**

5. The Amended Plan's classification system is irreconcilable with binding precedent in the First Circuit on classification. In particular, the Amended Plan's decision to place similarly situated general unsecured creditors into separate classes is squarely foreclosed by First Circuit law, which holds that "all creditors of equal rank with claims against the same property should be placed in the same class." *Granada Wines,* 748 F.2d at 46 (quotation omitted).

6. *Granada Wines* precludes any argument that retiree claims are different from those raised by other general unsecured creditors. Specifically, the claim at issue at *Granada Wines* was a pension withdrawal liability claim against the debtor arising under the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments. *Granada Wines*, 748 F.2d at 43-44. The *Granada Wines* debtor proposed a class of general unsecured claims that included the pension withdrawal claim, and proposed paying members of that class 30% on their claims. *Id.* at 44. The debtor also proposed further reducing the amount of the pension claims to 15%, citing to withdrawal liability limitations contained in ERISA. *Id.* The debtor argued that, among other things, the pension claim was different in legal character, and thus rightly subject to separate classification under its reorganization plan, because it was required to be reduced by statute. *Id.* at 46-47. The First Circuit rejected this analysis, holding that the statutory reduction on liability impacted "only the allowable amount of the withdrawal claim, not its legal nature." *Id*. at 47.

7. The *Granada Wines* decision determined what is required of the Court under 11 U.S.C. § 1122. As a bankruptcy court explaining the decision subsequently noted:

> Except for the approval of convenience classes, section 1122 provides little guidance as to how claims are to be classified. It mandates that only "substantially similar" claims or interests may be grouped together. It does not indicate whether claims that are substantially similar must be classified together. ***In this circuit, however, the answer is that they must.***

*In re Nat'l/Northway Ltd. P'ship*, 279 B.R. 17, 25 (Bankr. D. Mass. 2002). The First Circuit's strict approach to classification—indeed, the "strictest" approach—means that courts in the First Circuit will often reject justifications for classifications which courts in other circuits may find sufficient. *See In re Hanish, LLC*, 570 B.R. 4, 15 (Bankr. D.N.H. 2017).

8. The Amended Plan's classification scheme clearly violates this standard. There is no relevant distinction between the claims within Class 39A and other general unsecured claims against the Commonwealth: they are all general, non-priority, unsecured claims tethered solely to pre-bankruptcy promises to pay. (*See* Mot. at ¶ 24.) Because claims held by the members of Class 39A and Class 41, and any other general unsecured claims, are self-evidently "substantially similar" in the First Circuit they must be placed in the "same class." *Granada Wines*, 748 F.2d at 46. But the Amended Plan classifies (and proposed to compensate) retiree claims differently from other general unsecured claims in direct contravention of this rule.

9. Further, the Oversight Board has not shown, and cannot show, that the legal rights Commonwealth pensioners hold here are any different than the legal rights pensioners held in *Granada Wines*. To the contrary, the First Circuit's reasoning in *Granada Wines* demonstrates the irredeemable error of the Oversight Board's separate classification of claims held by the members of Class 39A from other general unsecured creditors. Members of Class 39A are identically situated to the pension fund claimant in *Granada Wines*—both are holders of general unsecured

- 5 -

claims. And so, like the pension claimants in *Granada Wines*, members of Class 39A should be treated no differently than all other general unsecured creditors of the Commonwealth. Quite simply, this case is on all fours with *Granada Wines*, and this Court is therefore bound to follow the First Circuit's holding in that case.

**II.     THE AMENDED PLAN IMPROPERLY CLASSIFIES REVENUE BOND CLAIMS AS GENERAL UNSECURED CLAIMS, OR, IN THE ALTERNATIVE FAILS TO PROPERLY CLASSIFY THEM WITH OTHER GENERAL UNSECURED CLAIMS**

10.     The Amended Plan's obvious failure to respect the strict classification rules of the First Circuit is laid bare by its nonsensical treatment of Revenue Bond Claims. In addition to fundamentally misconstruing these claims as unsecured, the Amended Plan adopts a deeply illogical classification system for the treatment of Revenue Bond Claims in relation to GO Bond claims and retiree claims.

11.     *First*, the Amended Plan improperly classifies Revenue Bond Claims as general unsecured claims. This classification is wholly inconsistent with the fact that the Revenue Bond Claims are secured by specific pledges of dedicated taxes, fees, and other revenues—pledges which afford Revenue Bond holders pre- and post-petition liens on those revenue streams.[3]

12.     *Second*, the Amended Plan fails to adhere to the strict standards of *Granada Wines* because it fails, under the Oversight Board's own interpretation of PROMESA, to join similarly situated claims in the same class. The Oversight Board has strenuously argued that "PROMESA

---

[3] *See generally Motion Of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, And Financial Guaranty Insurance Company For Relief From The Automatic Stay, Or, In The Alternative, Adequate Protection,* Dkt. No. 10102; *Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., And The Bank Of New York Mellon's Motion Concerning Application Of The Automatic Stay To The Revenues Securing The CCDA Bonds*, Dkt. No. 10104; *Amended Motion Of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., And U.S. Bank Trust National Association, Concerning Application Of The Automatic Stay To The Revenues Securing Prifa Rum Tax Bonds*, Dkt. No. 10602.

Title III recognizes no priority claims other than administrative claims provided by Bankruptcy Code section 507(a)(2)." (*See e.g.* Supplemental Opposition of Commonwealth of Puerto Rico to Amended PRIFA Bondholder Motion to Lift Automatic Stay (Dkt. 10611) at ¶ 75.) As such, the purported "priority" that would otherwise warrant separately classifying general obligation claims, is irrelevant and cannot act as a basis for separate classification of general obligation bonds under Title III of PROMESA. Assuming the Oversight Board is correct that administrative priority is the only recognized priority under PROMESA, there is no basis for classifying general obligation bond claims or retiree claims separately from other general unsecured claims against the Commonwealth. Accordingly, if Revenue Bond Claims are found to be unsecured, under the First Circuit's strict approach to classification, Revenue Bond Claims, GO Bond claims, and retiree claims all must be classified together as general unsecured claims of equal rank. Simply put, either Commonwealth law priorities are recognized in PROMESA or they are not. And if the Oversight Board's claim that the "PROMESA Title III recognizes **no priority claims** other than administrative claims" is to be taken seriously, the Oversight Board has violated the classification requirements of *Granada Wines*. *Id*.

13. *Third*, if, however, the Court determines that Revenue Bond Claims are general unsecured claims, but also finds that Commonwealth law priorities must continue to be respected under PROMESA Title III, the Amended Plan improperly classifies revenue bond claims as general unsecured claims. As a threshold matter, GO Bonds, which the Amended Plan separately classifies, do not have any claim priority under Commonwealth law, rather they have a budgetary priority only in years where there is a revenue shortfall. The Amended Plan treats GO Bonds as having priority over other general unsecured claims, and over the Revenue Bond Claims. If the Court finds those priorities relevant under Title III, then Revenue Bond Claims are entitled to

priority in payment ahead of both retirees and other general unsecured claims. Commonwealth law unambiguously provides that "commitments entered into by virtue of legal contracts in force"—like the commitments made by the Commonwealth and her instrumentalities to pay, in full, the Revenue Bonds from pledged taxes, fees, and other revenues—are to be paid before the Commonwealth's "regular expenses[,]" including payments to the pension system. 23 L.P.R.A. § 104(c). The Oversight Board's attempt to capriciously pick winners and losers by recognizing a Commonwealth law priority for GO Bond claims, while disregarding Commonwealth law priorities for Revenue Bond Claims must be rejected. The Amended Plan, and the classification of claims therein must be consistent and in line with the classification rule set forth in *Granada Wines*.

14. *Finally*, for the reasons stated in Assured's Joinder (¶ 20-25) the Oversight Board's impermissible division of substantially similar unsecured claims is plainly an effort to gerrymander and should be rejected.

### III. THE UCC'S MOTION MUST BE DECIDED ON THE MERITS NOW, AS A MATTER OF LAW.

15. Ambac agrees with the UCC's Motion, and Assured's Joinder, in that this issue is ripe for adjudication, and that deciding it will help narrow the scope of issues before the Court in connection with objections to the Oversight Board's disclosure statement and Amended Plan. Additionally, Ambac believes that under the circumstances presented here, this Court lacks discretion to defer ruling on this issue until later proceedings. Under *Granada Wines*, a debtor **must** put substantially similar claims within the same class. *See In re Nat'l/Northway Ltd. P'ship*, 279 B.R. at 25. Where, as here, a plan fails to comply with this requirement, and that failure is evident on the face of the proposed classification scheme, that plan is unconfirmable as a matter of law, and the Court lacks discretion to defer the classification question in order to permit that

- 8 -

plan to be advanced through disclosure, voting, and confirmation proceedings.

16. In sum, the Oversight Board must reclassify the retiree claims (Class 39A) and all other general unsecured claims to ensure that, consistent with binding precedent, substantially similar claims are classified together and treated equally under the Commonwealth's plan of adjustment.

Dated: April 7, 2020
  San Juan, Puerto Rico

| **FERRAIUOLI LLC** | **MILBANK LLP** |
|---|---|
| By: */s/ Roberto Cámara-Fuertes*<br> Roberto Cámara-Fuertes (USDC-PR No. 219002)<br> Sonia Colón (USDC-PR No. 213809)<br> 221 Ponce de León Avenue, 5th Floor<br> San Juan, PR 00917<br> Telephone: (787) 766-7000<br> Facsimile: (787) 766-7001<br> Email: rcamara@ferraiuoli.com<br>   scolon@ferraiuoli.com | By: */s/ Atara Miller*<br> Dennis F. Dunne (admitted *pro hac vice*)<br> Atara Miller (admitted *pro hac vice*)<br> Grant R. Mainland (admitted *pro hac vice*)<br> John J. Hughes, III (admitted *pro hac vice*)<br> 55 Hudson Yards<br> New York, NY 10001<br> Telephone: (212) 530-5000<br> Facsimile:  (212) 530-5219<br> Email: ddunne@milbank.com<br>   amiller@milbank.com<br>   gmainland@milbank.com<br>   jhughes2@milbank.com<br><br>***Attorneys for Ambac Assurance Corporation*** |