# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>Debtors.[1] | PROMESA<br><br>Title III<br><br>Case No. 17 BK 3283 (LTS)<br><br>(Jointly Administered) |

## OBJECTION OF
## FINANCIAL GUARANTY INSURANCE
## COMPANY, ASSURED GUARANTY CORP., ASSURED
## GUARANTY MUNICIPAL CORP., AND AMBAC ASSURANCE
## CORPORATION TO THE MOTION OF THE COMMONWEALTH
## OF PUERTO RICO PURSUANT TO BANKRUPTCY RULE 9019 FOR AN
## ORDER APPROVING STIPULATION AND AGREED ORDER (A) ALLOWING
## PRIFA BANS GUARANTEE CLAIM, (B) AUTHORIZING ESCROW OF PRIFA
## FUNDS AND (C) DIRECTING THE DISMISSAL OF LITIGATION WITH PREJUDICE

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii
SUMMARY OF OBJECTIONS ................................................................................................. 1
BACKGROUND ........................................................................................................................ 2
ARGUMENT .............................................................................................................................. 3
CERTIFICATE OF SERVICE .................................................................................................... 2

# **TABLE OF AUTHORITIES**

**Cases**

*Amer. Fire & Casualty Co. v. Finn*, 341 U.S. 6 (1951) .................................................................. 6
*Bell Helicopter Textron Inc. v. Islamic Republic of Iran*, 892 F. Supp. 2d 219 (D.D.C. 2012) ..... 6
*In Re Combustion Eng'g*, 391 F.3d 190 (3d Cir. 2004) .................................................................. 9
*In re Lexington Jewelers Exch. Inc.*, 2013 WL 2338243, n.12 (Bankr. D. Mass. May 29, 2013) . 8
*In re OptinRealBig.com, LLC*, 345 B.R. 277, n. 16 (Bankr. D. Colo. 2006) .................................. 8
*In re Winstar Commc'ns*, 284 B.R. 40 (Bankr. D. Del. 2002) ....................................................... 8
*Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375 (1994) ............................................. 6
*Law v. Siegel*, 571 U.S. 415 (2014) ............................................................................................... 9
*Matthews v. United States*, 72 Fed. Cl. 274 (2006) ....................................................................... 6
*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ............................................................................... 7
*Stephenson v. United States*, 58 Fed. Cl. 186 (2003) .................................................................... 6

**Rules and Statutes**

48 U.S.C.A. § 2166 ......................................................................................................................... 7

**Other Authorities**

Kevin Meade & John Marino, *Oversight Board Stresses Covid-19 Focus as Carrión Foresees Changes to Plan of Adjustment as 'Currently Structured'*, Reorg Research, March 24, 2019, https://app.reorg.com/v3#/items/intel/1869?item_id=99297 .................................................... 10

Financial Guaranty Insurance Company ("**FGIC**"), Assured Guaranty Corp., Assured Guaranty Municipal Corp. (together, "**Assured**"),[2] and Ambac Assurance Corporation ("**Ambac**" and collectively with FGIC and Assured, the "**Responding Parties**") hereby submit this objection (the "**Objection**") to the *Motion of the Commonwealth of Puerto Rico Pursuant to Bankruptcy Rule 9019 for an Order Approving Stipulation and Agreed Order (A) Allowing PRIFA BANs Guarantee Claims, (B) Authorizing Escrow of PRIFA Funds and (C) Directing the Dismissal of Litigation With Prejudice* (ECF No. 12519, the "**Motion**")[3] as filed on March 24, 2020, and respectfully state as follows:

## SUMMARY OF OBJECTIONS

1. The Board filed the Motion one day after it filed a motion seeking to adjourn the hearing on the disclosure statement for the Commonwealth's plan of adjustment to focus solely on recovery from the COVID-19 pandemic. *See* ECF No. 12485 ¶ 5. Shortly thereafter, the Board also sought to adjourn a separate Rule 9019 motion concerning the PREPA Restructuring Support Agreement, again stating that the Board needed to focus on the recovery from the COVID-19 pandemic. ECF No. 12546 ¶¶ 5, 9. Despite adjourning other these similarly situated motions, the Board now seeks to push forward with the Motion, claiming that the settlement would provide more certainty as to confirmation of the Commonwealth's plan of adjustment. Motion ¶ 3.

2. The Motion should be denied. The Motion constitutes an improper piecemeal approach to litigation of the Commonwealth plan of adjustment, contrary to orders recently entered by the Court with the Board's support. In addition, the Motion is founded on faulty jurisdictional assertions that not only have no basis in law, but also contradict positions

---

[2] Assured joins only in Sections A and B of this Objection.
[3] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

1

previously asserted by the Board and AAFAF in these Title III cases. Finally, as the Board acknowledges in the Motion, there is no urgency requiring the Court to hear the Motion now, particularly given the adjournments that have effectively, at least temporarily, put the Commonwealth's plan of adjustment on hold.

## BACKGROUND

3. At paragraphs 12-26 of the Motion, the Board describes numerous events and filings, beginning with the passage of PROMESA. The Board neglects, however, to reference certain recent pleadings, orders, and events of relevance to the relief sought in the Motion.

4. On February 20, 2020, the Mediation Team filed the *Amended Report and Recommendation of the Mediation Team* (ECF No. 10756) (the "**Mediators' Report**").

5. On February 21, 2020, the Board filed its *Response of Financial Oversight and Management Board for Puerto Rico to Amended Report and Recommendation of Mediation Team* [11492] (the "**Board Support**").

6. On March 10, 2020, following a contested hearing to consider the Mediators' Report, the Court entered the *Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* [12189] (the "**Stay Order**").

7. On March 17, 2020, the Court entered the *Order Denying Motion of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. for (I) Relief from the Stay Imposed by the Final Order (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto (ECF No. 12189), or, in the Alternative, (II) Reconsideration, Pursuant to Fed. R. Civ. P. 59, of the Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto (ECF No. 12189)and Urgent Motion for Scheduling of Briefing of Same* [12428] (the "**Reconsideration Denial Order**").

2

8. On March 23, 2020, the Board filed the *Urgent Motion to Adjourn Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement and Related Deadlines* [12485] (the "**Motion to Adjourn Disclosure Statement Deadlines**").

9. The five preceding docket entries were all filed or entered before the Board filed the Motion on March 24, 2020. On March 27, 2020, the Court entered the *Order Granting Motion to Adjourn Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement and Related Deadlines* [12549] (the "**Order Adjourning Deadlines**").

## ARGUMENT

**A. The Motion is Incompatible with this Court's Prior Orders and Premature**

10. In the Motion, the Board asks the Court to approve a settlement of litigation, which litigation the Mediators' Report recommended, the Board urged, and the Court ordered remain stayed pending the hearing on confirmation of the proposed plan of adjustment for the Commonwealth. Indeed, inclusion of the proposed settlement in the PSA was the lynchpin for the Mediation Team's recommendation that the Title III BANs Litigation remain stayed, and that the settlements contained therein would be considered at confirmation. *See* Mediators' Report at 8-9 ("The Amended Plan will effect a global settlement of any such dispute . . . The FOMB should be given the opportunity to attempt to confirm the plan before any party is required to expend further funds in litigation of the disputes being settled.").

11. Similarly, in the Board Support, the Board argued that the Title III BANs Litigation (as a component of the GO/PBA/BANs Litigation) should remain stayed until confirmation of the proposed plan including the settlements contained therein. *See* Board Support ¶¶ 3-10. The confirmation hearing, the Board argued, was the time to address settlement of the Title III BANs Litigation and similar disputes. As the Board stated, the "Amended Plan . . . would settle those very litigations." *See id.* ¶ 6.

3

12. The Court largely adopted the recommendation contained in the Mediators' Report and supported by the Board when it entered the Stay Order and stayed, among other things, the Title III BANs Litigation. In entering the Stay Order, the Court contemplated that the issues in dispute in the Title III BANs Litigation would be considered in conjunction with confirmation of the proposed plan. The Court confirmed this in its bench ruling on March 4, 2020: "The parties to the stay have not demonstrated a countervailing risk of prejudice. ***They retain their rights to object to the Amended Plan of Adjustment*** . . . ." Hearing Transcript (March 4, 2020) at p. 216 (emphasis added). This was precisely why various other docket items were also stayed, because the Court found that proceeding "in the context of plan related litigation" was "the most efficient use of the parties' resources." *Id.* at 226.

13. This Court later reinforced that notion when it entered the Reconsideration Denial Order, where the Court elaborated on its prior reasoning:

> In connection with entry of the Stay Order, the Court determined, in the exercise of its reasoned discretion, that litigation of those matters would be an inefficient and unnecessary use of resources in light of the proposed resolution of those issues via the proposed *Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.* (citations omitted). **Moreover, judicial resolution of those issues prior to confirmation of the Plan would likely undercut and disrupt the proposed settlement of those issues proposed by the Plan** (emphasis added).

14. Further, the Court found support for its decision in the Board's own description from the Disclosure Statement, which the Court quoted as follows: "In exchange for the consideration to be provided in the Plan, the following disputes in connection with the GO Bonds, the PBA Bonds, and PRIFA BANs will be compromised and settled *pursuant to confirmation of the Plan* . . ." (citations omitted) (emphasis added).

15. Thus, the Motion is incompatible with this Court's prior orders (which were ignored in the Motion), which expressly contemplated that the relevant litigation and claims

4

would be settled under the Commonwealth's plan of adjustment, not through other motion practice. If the Board had truly intended for the PRIFA BANs to be settled outside of the context of the plan of adjustment, then it should have articulated that to the Court. Instead, the Board argued that the *Amended Plan* would settle these claims, not a separate Rule 9019 motion. *See* Board Support ¶ 3 ("The Oversight Board fully supports the Amended Plan's recommendation that the Court stay litigation *the proposed plan settles*.").

16. While the Court has already found that the issues presented by the Motion should be considered at confirmation, it is also clear from the terms of the proposed settlement that any consideration of the Motion prior to confirmation would be premature. Pursuant to the terms of the settlement, none of the actions required by the settlement, other than PRIFA's (a non-Title III debtor) escrow of unencumbered funds, will occur prior to confirmation. The movants seek allowance of the Trustee PRIFA/CW Claim in the amount of $83,589,101.67, **but only upon the effective date of the Plan**. Absent confirmation of the Plan and the occurrence of the effective date, the amount of Trustee PRIFA/CW Claim remains in dispute. Treatment of the Trustee PRIFA/CW Claim will not be considered by the Court until the Court conducts a confirmation hearing. In exchange for the proposed allowance and treatment of the Trustee PRIFA/CW Claim **under the Plan**, the PRIFA BANs Bondholders have agreed to dismiss, with prejudice, all of their claims related to the PRIFA BANS **on the effective date of the Plan** and will receive payment from the escrowed funds **on the effective date of the Plan**. *See* Motion ¶ 28. Eliminating those portions of the settlement that are dependent upon confirmation of the Plan, the only stated reason the Movants are requesting that the Court approve the settlement at this early date is to ensure that PRIFA, a non-Title III debtor, "will have funds set aside for the partial payment of the PRIFA BANs pursuant to the terms of the Stipulation and Agreed Order to

5

resolve a claim that otherwise will be asserted against the Commonwealth in full." *Id*. at 3. Such a request is not proper before this Court.

**B. There is No Statutory Authority to Authorize Certain Components of the Settlement**

17. The Board argues that the Motion should be heard now, primarily to authorize PRIFA to set aside monies in an escrow for the PRIFA BANs. Motion ¶¶ 3, 28. Though the movants espouse that the settlement requires Court approval now to "reduce uncertainty as the Commonwealth moves toward confirmation of the Plan," the only actions that will occur prior to confirmation are actions by a non-Title III debtor over which the Court does not have jurisdiction.

18. Jurisdiction is a fundamental and foundational question, and a jurisdictional basis cannot be invented from whole cloth when the underlying statutes provide specific jurisdictional parameters. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Amer.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction[,]" possessing "only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree") (citing *Amer. Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 (1951)); *see also Matthews v. United States*, 72 Fed. Cl. 274, 282 (2006) (declining to exercise jurisdiction over claims brought by plaintiff against defendants other than the United States because under the applicable statute, "'the *only* proper defendant for any matter before this court is the United States, not its officers, nor any other individual.'") (quoting *Stephenson v. United States*, 58 Fed. Cl. 186, 190 (2003) (emphasis in original)); *Bell Helicopter Textron Inc. v. Islamic Republic of Iran*, 892 F. Supp. 2d 219, 225 (D.D.C. 2012), *aff'd*, 734 F.3d 1175 (D.C. Cir. 2013) (granting a motion to vacate for lack of subject matter jurisdiction where the underlying statute provided that "a foreign state is presumptively immune from the jurisdiction of the United States courts . . . unless a specified

6

exception applies" and plaintiff failed to demonstrate the existence of any such exception) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)).

19. PROMESA sets forth two statutory regimes for the restructuring of debt: Title III (non-consensual restructurings) and Title VI (consensual restructurings effectuated through qualifying modifications). Here, no Title III petition was filed on behalf of PRIFA, nor has a qualifying modification been submitted pursuant to Title VI on behalf of PRIFA. In fact, the proposed agreed order that was attached to the Motion expressly recognizes that PRIFA may file a Title III petition in the future—a right that it clearly has not yet exercised. *See* Motion, Ex. A ¶ 6. Moreover, this Court only has exclusive jurisdiction over "all property, wherever located, ***of the debtor*** as of the commencement of the case." Here, PRIFA is not a debtor under Title III, nor is it alleged that the escrowed property was the Commonwealth's property as of the commencement of the case.[4] In other words, there is no *in rem* jurisdictional basis for the relief sought in the Motion, which implicates property of PRIFA and not of the Commonwealth.[5]

20. Moreover, there is no statutory basis for this Court to either order or authorize an escrow for property held by a non-Title III debtor. Movants cite sections 303, 305, and 306(b) of PROMESA, sections 105(a), 502, and 503 of the Bankruptcy Code, and Bankruptcy Rule 9019, as the statutory predicates for the Motion. Motion ¶ 7. However, none of the aforementioned sections purport to give the Court jurisdiction over the property of a non-debtor. For example, section 306(b) of PROMESA expressly limits the Court's jurisdiction to property of the debtor, wherever located, as of the commencement of the case. 48 U.S.C.A. § 2166(b). This definition is limited both in time, occurring only upon the commencement of a

---

[4] In fact, the Motion concedes that the escrowed property consists of allegedly unencumbered cash currently held at PRIFA. Motion ¶ 28.
[5] The Motion cites section 306(a), but that provision applies only to cases arising under Title III. While the Commonwealth is a Title III debtor, PRIFA is not. Moreover, the Motion is not a "civil proceeding" for purposes of section 306(a)(2) of PROMESA.

7

case, and in subject matter, applying only to a debtor's property. It cannot and should not be expanded to include property of a non-debtor.

21. Movants confine their argument in the body of the Motion to the argument that sections 105(a) and Bankruptcy Rule 9019 give the Court authority to approve the settlement.[6] That argument has no basis.

22. First, although the Motion purports to settle certain guarantee claims against the Commonwealth, that does not provide a statutory basis for the authorization of an escrow established with the *res* of a non-debtor, that is at all times held by a non-debtor, and that is distributed by a non-debtor. Rather, the effect and purpose of Rule 9019 is to bind *the debtor* and *the bankruptcy estate* to a particular settlement. *See In re Lexington Jewelers Exch. Inc.*, 2013 WL 2338243, at *5 n.12 (Bankr. D. Mass. May 29, 2013) (explaining that "'the purpose and effect of seeking court approval of a compromise under Rule 9019 is to bind the *bankruptcy estate* to the terms of any bargain struck by a . . . *debtor-in-possession* that affects the bankruptcy estate.'") (emphasis added)); *In re OptinRealBig.com, LLC*, 345 B.R. 277, n. 16 (Bankr. D. Colo. 2006) (same); *In re Winstar Commc'ns*, 284 B.R. 40 (Bankr. D. Del. 2002) ("[T]he Trustee cannot ignore WBC's corporate structure or the fact that it is not in a Bankruptcy proceeding. She can exercise her rights as the sole shareholder, but she cannot deal with the assets of WBC as she wishes. The corporate formalities must be observed."). Here, while the Commonwealth may bind itself and its estate to components of a settlement under Rule 9019, there is nothing in Rule 9019 that permits entry of an order directing *a non-debtor* to escrow monies to pay its own claims. The Board cannot ignore that PRIFA "is not in bankruptcy proceeding." *In re Winstar Commc'ns*, 284 B.R. at 51 ( observing in the context of a stipulation concerning non-debtor

---

[6] The substantive portions of the Motion contain no analysis as to how any of the other cited sections provide a statutory basis for the relief sought therein.

8

affiliates that if "the court were to find that this action was under the jurisdiction of the Bankruptcy Court, the decision would have the result of bringing every wholly owned subsidiary into every Bankruptcy case regardless of the circumstances and without the safeguards afforded by schedules, statements of financial affairs, notices to creditors, or meetings of creditors. Further, such a decision could result in debtors and others abusing the system by withholding from Bankruptcy or bringing into Bankruptcy subsidiaries in a revolving door fashion.").

23. Second, section 105(a) of the Bankruptcy Code provides no basis for the relief sought in the Motion. Though section 105(a) does give the Court extensive equitable powers to carry out the powers of the Bankruptcy Code, such powers must be exercised within the confines of the Bankruptcy Code. *See Law v. Siegel*, 571 U.S. 415, 421 (2014) ("It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.' . . . We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.'" (citations omitted)); *In Re Combustion Eng'g*, 391 F.3d 190, 236 (3d Cir. 2004) (the "general grant of equitable power contained in section 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself.").

24. This Court does not have jurisdiction over PRIFA's property and it should not reach out to take such jurisdiction in the guise of approving the settlement. The portions of the proposed order that purport to direct or authorize PRIFA to escrow funds to pay the PRIFA BANs should be stricken from the proposed order, because there is no statutory basis for that relief.

9

C.  **There Is No Basis to Consider the Motion at This Time.**

25. Leaving aside the serious substantive and procedural infirmities with the Motion, no justification exists for the Court to consider the Motion at this time. As stated by the Board in the Motion to Adjourn Disclosure Statement Deadlines, the Board is (properly) focused on the physical and economic well-being of the people of Puerto Rico at a time when the economic effects of the spread of COVID-19 "cannot be calculated." Motion to Adjourn Disclosure Deadlines at 7. In response, the Court entered the Order Adjourning Deadlines, and adjourned all deadlines associated with the process of approval of the disclosure statement. The Court also directed the Board to file a status report by May 1, 2020. The impact of COVID-19 and its economic effects on the direction of the Title III cases remain unknown. On the one hand, the Board has advised of its desire to obtain approval of a disclosure statement by the August 31, 2020 deadline contained in the PSA. On the other hand, the chairman of the Oversight Board has stated that Puerto Rico "is facing a situation of such magnitude that everything has to be re-evaluated, and that also implies that you have to re-evaluate the amount of debt we pay and the entire plan of adjustment." Kevin Meade & John Marino, *Oversight Board Stresses Covid-19 Focus as Carrión Foresees Changes to Plan of Adjustment as 'Currently Structured'*, Reorg Research, March 24, 2019, https://app.reorg.com/v3#/items/intel/1869?item_id=99297. Even if it were proper for the Court to entertain piecemeal approval of a component of the proposed plan settlement, now would not be the time, when the proponent of the plan is revisiting its viability.[7]

---

[7] In the event that the Court decides to go forward prior to confirmation, notwithstanding this Objection, the Responding Parties respectfully reserve the right to submit additional substantive objections to the approval of the settlement, either in supplemental briefing or at any hearing held on the settlement.

10

Dated: New York, New York
April 8, 2020

| REXACH & PICÓ, CSP | BUTLER SNOW LLP |
|---|---|
| By:/s/ *María E. Picó*<br>María E. Picó<br>USDC-PR 123214<br>802 Ave. Fernández Juncos<br>San Juan PR 00907-4315<br>Telephone: (787) 723-8520<br>Facsimile: (787) 724-7844<br>E-mail: mpico@rexachpico.com<br><br>*Attorney for Financial Guaranty Insurance Company* | By:/s/ *Martin A. Sosland*<br>Martin A. Sosland (*pro hac vice*)<br>5430 LBJ Freeway, Suite 1200<br>Dallas, TX 75240<br>Telephone: (469) 680-5502<br>Facsimile: (469) 680-5501<br>E-mail: martin.sosland@butlersnow.com<br><br>*\*Admitted pro hac vice in Case No. 17-BK-03283-LTS and Case No. 17-BK-03567-LTS*<br><br>Jason W. Callen<br>150 3rd Ave., S., Suite 1600<br>Nashville, TN 37201<br>Telephone: 615-651-6774<br>Facsimile: 615-651-6701<br>Email: jason.callen@butlersnow.com<br><br>*\*Admitted pro hac vice in Case No. 17-BK-03283-LTS and Case No. 17-BK-03567-LTS*<br><br>*Attorneys for Financial Guaranty Insurance Company* |

| CASELLAS ALCOVER & BURGOS P.S.C. | CADWALADER, WICKERSHAM & TAFT LLP |
|---|---|
| By: /s/ *Heriberto Burgos Pérez*<br>Heriberto Burgos Pérez<br>USDC-PR 204809<br>Ricardo F. Casellas-Sánchez<br>USDC-PR 203114<br>Diana Pérez-Seda<br>USDC-PR 232014<br>P.O. Box 364924<br>San Juan, PR 00936-4924<br>Telephone: (787) 756-1400<br>Facsimile: (787) 756-1401<br>Email: hburgos@cabprlaw.com<br>rcasellas@cabprlaw.com<br>dperez@cabprlaw.com<br><br>*Attorneys for Assured Guaranty Corp.*<br>*and Assured Guaranty Municipal Corp.* | By: /s/ *Mark C. Ellenberg*<br>Howard R. Hawkins, Jr.*<br>Mark C. Ellenberg*<br>William J. Natbony*<br>Ellen M. Halstead*<br>Thomas J. Curtin*<br>Casey J. Servais*<br>200 Liberty Street<br>New York, NY 10281<br>Telephone: (212) 504-6000<br>Facsimile: (212) 504-6666<br>Email: howard.hawkins@cwt.com<br>mark.ellenberg@cwt.com<br>bill.natbony@cwt.com<br>ellen.halstead@cwt.com<br>thomas.curtin@cwt.com<br>casey.servais@cwt.com<br><br>* Admitted *pro hac vice*<br><br>*Attorneys for Assured Guaranty Corp. and*<br>*Assured Guaranty Municipal Corp.* |

| | |
|---|---|
| FERRAIUOLI LLC | MILBANK LLP |
| By: /s/ *Roberto Cámara-Fuertes* | By: */s/ Atara Miller* |
| Roberto Cámara-Fuertes (USDC-PR No. 219002) | Dennis F. Dunne (admitted *pro hac vice*) |
| Sonia Colón (USDC-PR No. 213809) | Atara Miller (admitted *pro hac vice*) |
| 221 Ponce de León Avenue, 5th Floor | Grant R. Mainland (admitted *pro hac vice*) |
| San Juan, PR 00917 | John J. Hughes, III (admitted *pro hac vice*) |
| Telephone: (787) 766-7000 | 55 Hudson Yards |
| Facsimile: (787) 766-7001 | New York, NY 10001 |
| Email: rcamara@ferraiuoli.com | Telephone: (212) 530-5000 |
| scolon@ferraiuoli.com | Facsimile: (212) 530-5219 |
| | Email: ddunne@milbank.com |
| | amiller@milbank.com |
| | gmainland@milbank.com |
| | jhughes2@milbank.com |
| *Attorneys for Ambac Assurance Corporation* | |
| | *Attorneys for Ambac Assurance Corporation* |

1

2

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, the 8$^h$ day of April, 2020.

By: */s/ Martin A. Sosland*
  Martin A. Sosland
\* admitted *pro hac vice*