# EXHIBIT A

# Milbank

**JOHN J. HUGHES III**

*Special Counsel*

55 Hudson Yards  |  New York, NY 10001-2163

T: 212.530.5127

Jhughes2@milbank.com  |  milbank.com

March 20, 2020

## VIA EMAIL

Peter Friedman, Esq.                        Margaret A. Dale, Esq.
O'Melveny & Myers LLP                   Proskauer Rose, LLP
7 Times Square                              Eleven Times Square
New York, NY 10036                       New York, NY 10036

> Re:    March 16, 2020 Meet and Confer: Commonwealth Assets and Cash Rule 2004
>         Requests

Counsel:

We write on behalf of Ambac Assurance Corporation ("Ambac") to memorialize and follow up on our telephonic meet-and-confer on March 16, 2020 (the "March 16 Meet and Confer") concerning *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* [ECF No. 9022] (the "Assets Rule 2004 Motion") and *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis* [ECF No. 9023] (the "Cash Rule 2004 Motion," and collectively with the Assets Rule 2004 Motion, the "Rule 2004 Motions").[1]

During the March 16 Meet and Confer, the Parties discussed the items outstanding from the telephonic meet-and-confer held on February 25, 2020 (the "February 25 Meet and Confer"), the status of the proposed protective order pertaining to documents produced pursuant to the Rule 2004 Motions, and the propriety of 30(b)(6) depositions. We address each item of discussion in turn.

Assets Rule 2004 Motion

> **(1) Category No. 1: Assets (current and transferred/encumbered)**
>
> - *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities*
> - *A list of the Commonwealth's current assets.*

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Rule 2004 Motions.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

Peter Friedman, Margaret A. Dale
March 20, 2020

During the February 25 Meet and Confer, AAFAF agreed to look into when the Commonwealth's official inventory of real property assets was created, when it was last updated, and whether any instrumentalities did not contribute to it.  At the March 16 Meet and Confer, AAFAF advised that it is still looking into Ambac's inquiries, but noted that there does not appear to be a single document or centralized knowledge base encompassing all updates made to the inventory.  AAFAF also advised that it appears the inventory was updated in piecemeal fashion, and AAFAF is endeavoring to piece together various documents in an effort to respond to Ambac's request.

During the February 25 Meet and Confer, AAFAF objected to the production of documents related to all of the Commonwealth's and its instrumentalities' assets due to the breadth of the request and the impracticability of collecting such documents.  However, AAFAF stated that it would consider producing documents related to a narrowed list of such assets, which would make it easier and more efficient for AAFAF to produce responsive documents.  Ambac provided such a list following the March 16, 2020 Meet and Confer, reserving all rights to seek documents related to other assets.

Please provide an update regarding AAFAF's position.  Ambac remains willing to meet and confer on these issues.

### (2) Category No. 2: August 2019 Report – 23 Properties

- *A list of, or documents sufficient to identify, the 23 properties that were indicated as sold, or to be sold by December 2019, by HTA in the August 2019 report on the implementation of HTA's certified fiscal plan.*
- *Documents sufficient to show*
  - *how those properties were identified for sale or potential sale; and*
  - *the process and protocol for soliciting and entertaining bids, and evaluating and approving a sale.*

During the March 16 Meet and Confer, Ambac requested an update regarding the timing of AAFAF's production of these materials.  AAFAF advised that it recently received materials from HTA and is in the process of reviewing those materials to determine if they are relevant or privileged.  AAFAF stated that it hopes to produce these documents shortly, but noted that, in light of restrictions in place due to the COVID-19 pandemic, AAFAF may be delayed in responding to any follow up requests with regard to the materials.

Please provide an update regarding the timing of AAFAF's production of these materials.

### (3) Category No. 3: Real Property Valuation and Disposal Committee (the "Committee")

- *Documents sufficient to show (i) AAFAF's (or any other Commonwealth instrumentality's) authority to supervise the work of the Committee; (ii) regulations governing the formalization of disposal of Commonwealth properties, including*

Peter Friedman, Margaret A. Dale
March 20, 2020

> *how the properties will be made available for sale and information will be made available to interested bidders; and (iii) any other strategy by AAFAF or the Committee related to disposal of properties, including establishment of an online data base, as per recent statements of AAFAF Executive Director Omar Marrero.*
>
> - *Documents sufficient to identify any (i) proposals considered (whether ultimately accepted or not), (ii) transactions recently approved, and (iii) transactions currently under evaluation.*

During the February 25 Meet and Confer, AAFAF stated that it would confer internally and provide an update to Ambac regarding whether it will produce documents related to strategies, proposals, and transactions currently under consideration by the Real Property Valuation and Disposal Committee. During March 16 Meet and Confer, AAFAF informed Ambac that it continues to view such documents as irrelevant, but is in the process of determining whether any such documents exist and, if so, whether AAFAF will stand on its objection.

Please provide a response as soon as possible. Ambac maintains that all of these materials are relevant and remains willing to meet and confer on these issues.

### (4) Category No. 4: Municipal Revenue Collection Center ("CRIM")

> - *A list identifying all properties that have been foreclosed upon by the Commonwealth or its instrumentalities from January 1, 2015 to present, and which of those properties were subsequently sold by the Commonwealth (and for how much).*
> - *All guidelines or rules governing CRIM's foreclosure of private property and the process for determining whether to sell any of foreclosed-upon properties.*

During the February 25 Meet and Confer, AAFAF agreed to confer internally and update Ambac regarding whether it will produce these materials. During the March 16 Meet and Confer, AAFAF informed Ambac that it is in the process of determining whether any such materials exist and would update Ambac regarding AAFAF's position.

Please provide a response as soon as possible. Ambac remains willing to meet and confer on these issues.

Cash Rule 2004 Motion

### (1) Category Nos. 1 and 2: Presentation and Investigation Documents

> - *All documents relied upon in connection with the 'Summary of Cash Restriction Analysis' presentation, dated October 2, 2019 and the 'Bank Account Analysis: Status Update – June 30, 2019 Balances' presentation, dated as of October 2, 2019, including documents sufficient to identify the processes and assumptions*

Peter Friedman, Margaret A. Dale
March 20, 2020

> *underlying the Cash Restriction Analysis and any iterative changes in the analysis over time.*
> - *All documents relied upon in connection with Duff & Phelps' and/or Ernst & Young's investigation into the cash at government and fiscal plan entities, certain other Title III debtors, and UPR, including but not limited to instructions provided to Duff & Phelps and/or Ernst & Young regarding categorization and restrictions.*

During the February 25 Meet and Confer, the Oversight Board agreed to produce source materials and other documents relied upon in connection with the report prepared by Duff & Phelps. During the March 16 Meet and Confer, the Oversight Board advised that it intends to produce such materials by March 20 if there is a protective order in place, and the production will consist of approximately 11,000 documents. Additionally, the Oversight Board agreed to produce the "master database," as defined in the Duff & Phelps report, in which Duff & Phelps recorded their work.

The Oversight Board noted that approximately one third of the materials it intends to produce contain redactions of account numbers and personal identifying information. Ambac advised that being able to track account numbers is crucial to Ambac's ability to trace the flow of funds, but Ambac would be willing to consider production of a separate document that discloses the redacted information. The Oversight Board advised that it will produce these materials in their current form and would determine how best to provide Ambac access to the redacted information. The Oversight Board further agreed to reproduce these materials without redactions if necessary.

Additionally, the Oversight Board advised that it is still investigating what materials relied on in connection with the Summary of Cash Restriction Analysis presentation, dated October 2, 2019, exist, and would follow up with Ambac when it has more information. Please provide an update on the Oversight Board's investigation as soon as possible.

### (2) Category No. 3: Commonwealth's Necessary Operating Expenses

> - *All documents related to the assessment of the Commonwealth's necessary operating expenses, including any analyses of whether unrestricted cash exceeds necessary operating expenses.*

In its March 11 correspondence, Ambac requested that the Government Parties confer internally and provide a proposal for meeting the demands of these requests. Ambac also advised that the Government Parties are in the best position to identify the "buckets" of information that fall within and without the category of necessary operating expenses. During the March 16 Meet and Confer, Ambac clarified that it seeks to avoid a situation in which the Government Parties take a position that certain moneys constitute necessary operating expenses and Ambac lacks sufficient information to verify that assertion. Ambac also requested an update as to whether the Government Parties had identified the "buckets" of information that it believes fall within the ambit of Cash Category No. 3.

Peter Friedman, Margaret A. Dale
March 20, 2020

The Oversight Board advised that it continues to view Ambac's request as overly broad, but that it needs to confer internally and with its advisors to determine what categories of discovery, if any, would be appropriate in relation to this request. The Oversight Board advised that it is unsure of what materials beyond the fiscal plan and budget would support Ambac's request for documents regarding the Commonwealth's necessary operating expenses. Ambac clarified that it is seeking information relating to any materials the Oversight Board may rely on in arguing that certain expenses constitute necessary operating expenses to which bondholders' claims would be subordinate. The Oversight Board agreed to discuss these issues internally and provide Ambac with an update.

Please provide an update as soon as possible. Ambac remains willing to meet and confer on these issues.

### (3) Category No. 4: Document Key

- *A "key" to the documents produced that would allow parties to replicate the cash restriction analysis performed in connection with the presentations described above, including the relevant identifying information for each document (*i.e.*, Bates numbers).*

During the March 16 Meet and Confer, the Oversight Board advised that it believes the "master database" it intends to produce in response to Cash Category Nos. 1 and 2 would enable Ambac to reproduce any analysis that the Oversight Board produces. The Oversight Board agreed to further confer with Ambac if Ambac is unable to utilize the "master database" in this way.

<u>Protective Order</u>

During the March 16 Meet and Confer, Ambac requested an update regarding the Government Parties' review of the current draft of the proposed protective order. The Government Parties advised that it largely agrees with Ambac's proposed revisions, and intends to add language stating that, prior to any trial or hearing where a party would reasonably present confidential information to the Court, that party will inform all other parties that they intend to use such material, and the parties would then meet and confer about appropriate procedures. Ambac advised that it does not object to the Government Parties' proposed language. Subsequently, the parties have exchanged additional drafts addressing disclosures to regulators. Ambac will follow up separately with comments on the Government Parties' most recent proposal.

<u>Rule 30(b)(6) Depositions</u>

During the March 16 Meet and Confer, Ambac reiterated its request for 30(b)(6) depositions, and the Government Parties advised that they would confer internally and provide Ambac with an update.

Please provide an update regarding the Government Parties' position as soon as possible. Ambac remains willing to meet and confer on the need for 30(b)(6) depositions.

Peter Friedman, Margaret A. Dale
March 20, 2020


Very truly yours,


/s/ *John J. Hughes III*
John J. Hughes III


cc:    Grant Mainland
       Atara Miller
       Elizabeth L. McKeen
       Laura Stafford
       Martin A. Sosland
       Robert S. Berezin
       William Natbony
       Nicholas A. Bassett
       John E. Mudd