Hearing Date: April 22, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico, et al.,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## OBJECTION OF THE LAWFUL CONSTITUTIONAL DEBT COALITION TO THE MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013 FOR ENTRY OF AN ORDER RECLASSIFYING CLASS 39A AND CLASS 41 CLAIMS UNDER OVERSIGHT BOARD'S PLAN OF ADJUSTMENT DATED FEBRUARY 28, 2020

---

[1] The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | PRELIMINARY STATEMENT | | 1 |
| II. | BACKGROUND | | 4 |
| | A. | Initial PSA and Litigation Stay | 4 |
| | B. | The Interim Report and Mediation | 5 |
| | C. | The New PSA and Amended Plan | 6 |
| | D. | Mediation Team's Amended Report and Recommendation | 7 |
| | E. | Final Stay and Mediation Order | 8 |
| | F. | The Committee's 3013 Motion | 8 |
| | G. | Oversight Board Moves to Adjourn Disclosure Statement Hearing | 9 |
| III. | OBJECTION | | 10 |
| IV. | CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Granada Wines, Inc. v. New England Teamsters and Trucking Industry Pension Fund*,
   748 F.2d 42 (1st Cir. 1984) ................................................................................................. 11

*In re Nat'l/Northway Ltd. P'ship*,
   279 B.R. 17 (Bankr. D. Mass. 2002) ................................................................................... 11

*In re Rexford Properties LLC*,
   558 B.R. 352 (Bankr. C.D. Cal. 2016) ................................................................................. 11

**Rules**

Fed. R. Bankr. P. 3013 ............................................................................................................... 11

To the Honorable United States District Judge Laura Taylor Swain:

The Lawful Constitutional Debt Coalition (the "LCDC"),[2] hereby files this objection (this "Objection") to the *Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of an Order Reclassifying Class 39A and Class 41 Claims under Oversight Board's Plan of Adjustment Dated February 28, 2020* (ECF No. 11989) (the "3013 Motion"),[3] and respectfully states as follows:

## I. PRELIMINARY STATEMENT[4]

1. The Committee has made abundantly clear that it does not support the Amended Plan, and is all but certain to object to confirmation of the Amended Plan. Among the Committee's complaints is the differing treatment between the Commonwealth's pensioners and general unsecured creditors under the Amended Plan. Indeed, the Committee's explicit goal is to "ensure that the Class 41 general unsecured claims receive the same percentage on their claims as the Oversight Board will pay the general unsecured claims in Class 39A." 3013 Mot. ¶ 25. The Committee's 3013 Motion is simply a premature objection to the Amended Plan, and should be denied.

---

[2] The members of the LCDC and their respective holdings are set forth in the *Sixth Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure 2019* (ECF No. 12482). The LCDC does not (a) assume any fiduciary or other duties to any other entities in connection with the Title III cases or (b) represent or purport to represent any other entities in connection with the Title III cases.

[3] On April 7, 2020, (i) Assured Guaranty Corp., Assured Guaranty Municipal Corp. (together, "Assured"), and funds managed by Invesco Advisors and funds and/or accounts managed or advised by OFI Global Institutional Inc. (collectively, the "Invesco Funds") filed a partial joinder and statement in support of the 3013 Motion (the "Assured/Invesco Funds Joinder") (ECF No. 12687), and (ii) Ambac Assurance Corporation ("Ambac" and with Assured and the Invesco Funds, the "Joinder Parties") filed a partial joinder to the 3013 Motion (ECF No. 12691) (the "Ambac Joinder" and with the Assured/Invesco Funds Joinder, the "Joinders").

[4] Capitalized terms not defined herein shall have the meanings given to them below or in the 3013 Motion.

1

2. Similarly, it is no secret that the Joinder Parties plan to vehemently object to confirmation of the Amended Plan, and they have once again latched on to a Committee motion as an excuse for making entirely improper filings. Like Assured's and Ambac's previous "cross-motion" relating to the Committee's motion to amend the case management procedures,[5] the pleadings styled as "partial joinders" are nothing more than premature plan objections, violating the spirit, if not the terms, of the Final Stay and Mediation Order (as defined below). The Joinder Parties are unabashed in revealing their true purpose, focusing not on the separate classification of the pension claims and general unsecured claims that was the subject of the 3013 Motion that they are purportedly joining, but rather focusing on the Amended Plan's treatment of bonds issued by HTA, CCDA, and PRIFA—the very bonds that the Joinder Parties own or were paid a premium to insure.[6]

3. Even if the 3013 Motion and Joinders were not thinly-veiled plan objections, challenges to the classification of claims in the Amended Plan should be heard at confirmation, as recommended by the Mediation Team. *See Amended Report and Recommendation of the Mediation Team* (ECF No. 10756) (the "Amended Mediation Report") at 25. Nearly three years into the Commonwealth's Title III case, Court-ordered mediation has resulted in the New PSA that now has the support of holders of approximately $10.7 billion—or 58%—of Constitutional

---

[5] *See Amended Cross-Motion and Statement in Support on Behalf of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, and Financial Guaranty Insurance Company with Respect to Motion of Official Committee of Unsecured Creditors to Amend Tenth Amended Notice, Case Management and Administrative Procedures Regarding Disclosure Requirements Pursuant to Federal Rule of Bankruptcy Procedure 2019* (ECF No. 12296).

[6] *See, e.g.*, Assured/Invesco Funds Joinder ¶ 2 (taking issue with the Amended Plan's treatment of "claims arising from the Commonwealth's diversion of the excise tax revenues securing revenue bonds issued by HTA (Class 32), CCDA (Class 43), and PRIFA (Class 44) as equivalent to … general unsecured claims"); Ambac Joinder ¶ 3 ("[T]he Amended Plan wrongly construes the claims related to special revenue bonds—in particular, bonds issued by HTA (Class 42), CCDA (Class 43), and PRIFA (Class 44)—as ranking equally with general unsecured claims".).

2

Debt claims[7] and has provided the framework for a Commonwealth plan of adjustment that, even despite delays caused by the current coronavirus pandemic, could see the Commonwealth exit Title III by the end of the year. Indeed, the Court has balanced the prospect of the Commonwealth's emergence from these proceedings with parties' rights to be fairly heard and, to that end, has stayed litigation that can be decided at confirmation, with the stated goal of "channel[ing] issues related to the Amended Plan and Amended Disclosure Statement into coordinated litigation pathways" so as to "avoid[] the inefficiency of uncoordinated parallel litigation." *See Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* (ECF No. 12189) (the "Final Stay and Mediation Order") ¶ 4. Consideration of the 3013 Motion at this time would undermine that goal and entail premature litigation of issues that, as the Mediation Team correctly suggested, should be decided at confirmation. In point of fact, the Joinders filed by the Joinder Parties, and their request for leave to file replies (ECF No. 12699), evinces the litigation free-for-all that would ensue if the Court considers the merits of the 3013 Motion at this time.

4. Simply put, approval of the Amended Plan, including the classification of claims thereunder, is not yet before the Court, and the Oversight Board, along with the other supporters of the Amended Plan, including the LCDC, will make the affirmative showing required to confirm the Amended Plan at the confirmation hearing. The Committee's ill-timed (and meritless) confirmation objection in the guise of a 3013 Motion should be denied, without prejudice to the Committee's ability to raise confirmation objections at the proper time. Similarly, the Joinder

---

[7] *See Notice of Second Amendment to Plan Support Agreement and Support for Plan Support Agreement (April 3, 2020), available at* https://emma.msrb.org/ES1369614-ES1066891-ES1473465.pdf.

3

Parties will have the opportunity to raise their own plan objections in a proper pleading. But now is not that time.

## II. BACKGROUND

### A. INITIAL PSA AND LITIGATION STAY

5. On May 31, 2019, the Oversight Board executed an initial plan support agreement with, among others, the LCDC (the "Initial PSA"). *See* ECF No. 7814 at Ex. B. The Initial PSA set forth a proposed settlement of the relative entitlements of various issuances general obligation bonds and certain bonds guaranteed by the Commonwealth ("Constitutional Debt") as well as other Commonwealth debts, and provided for a post-confirmation mechanism for resolving the omnibus objections to the validity of Constitutional Debt issued in and after 2012.

6. Shortly after the announcement of the Initial PSA, the Oversight Board requested a comprehensive stay on matters that were subject either to proposed settlements or the contemplated post-confirmation litigation.[8]

7. On July 24, 2019, the Court entered the *Order Regarding Stay Period and Mandatory Mediation* (ECF No. 8244) (the "Stay and Mediation Order"), which stayed, among other things, all litigation concerning bonds issued by the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), the Puerto Rico Convention Center District Authority ("CCDA") (collectively, the

---

[8] *See Financial Oversight and Management Board for Puerto Rico's Motion to Stay Contested Mattes Pending Confirmation of Commonwealth Plan of Adjustment* (ECF No. 7640); *Plaintiff Financial Oversight and Management Board for Puerto Rico's Motion to Stay PBA Adversary Proceeding Pending Confirmation of Commonwealth Plan of Adjustment* (ECF No. 99, Adv. Pro. No. 18-149); *Urgent Motion for Stay of Adversary Proceeding Supplemental to Pending Motion to Stay GO Bond Proceedings Pending Confirmation of Commonwealth Plan of Adjustment* (ECF No. 7882).

"Revenue Bonds") and Constitutional Debt through November 30, 2019. *See* Stay and Mediation Order at 1.[9]

8. The Stay and Mediation Order also tasked the Mediation Team with: (i) addressing the scheduling and sequencing of issues identified in the Stay and Mediation Order or identified by the parties as issues relevant to the confirmation of plan(s) of adjustment for one or more of the Title III debtors; and (ii) engaging parties in mandatory substantive mediation sessions.

### B. THE INTERIM REPORT AND MEDIATION

9. On November 27, 2019, the Mediation Team filed its *Interim Report and Recommendation of the Mediation Team* (ECF No. 9365) (the "Interim Report"). In it, the Mediation Team explained that it was appropriate at the time to address the scheduling and sequencing of only certain disputed issues, and that the Mediation Team would file a more extensive amended report at a later date. *See* Interim Report at 4, 7.

10. After the filing of the Interim Report, the Mediation Team facilitated continued negotiations among the Oversight Board and holders of substantial amounts of Constitutional Debt. Months of hard-fought negotiations conducted in the context of this Court-ordered mediation resulted in an agreement-in-principle that was reached in mid-January among those bondholders and the Oversight Board (collectively, the "PSA Parties"). The parties worked to document this agreement, and, on February 9, 2020 the Oversight Board announced that it had reached a new agreement (the "New PSA") with holders of $8 billion of Constitutional Debt, on repayment terms more favorable to the Commonwealth than was provided under the Initial PSA.

---

[9] The stay under the Stay and Mediation Order was extended until December 31, 2019 pursuant to the *Order Granting Joint Motion of Oversight Board and AAFAF for Order Extending (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* (ECF No. 9016).

5

*See Oversight Board Reaches New, More Favorable Agreement to Restructure $35 Billion of Liabilities.*[10]

### C. THE NEW PSA AND AMENDED PLAN

11. The terms of the global settlement, as embodied in the New PSA, include a resolution of the various contested matters and adversary proceedings concerning the Constitutional Debt, as well as an agreement by the PSA Parties to accept the Oversight Board's proposed treatment of different vintages of Constitutional Debt. The New PSA achieves this settlement with the same cash flows determined by the Oversight Board to be available for creditors in the Initial PSA, except that such cash flows would only be for 20 years (not 30 years as the Initial PSA provided).

12. Among other benefits, the settlement embodied in the New PSA also avoids the enormous litigation expense associated with the various disputes related to Constitutional Debt. Particularly given the broad creditor support from holders of the highest-priority claims under the Puerto Rico Constitution, the LCDC believes that the New PSA will form the basis of a confirmable plan of adjustment, allowing the Commonwealth to exit Title III by the end of the end of this year.[11]

13. On February 28, 2020, the Oversight Board filed the *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. (ECF No. 11946) (the "Amended Plan"), incorporating key terms of the New PSA. The Oversight Board also filed the *Disclosure Statement*

---

[10] *Available at https://oversightboard.pr.gov/oversight-board-reaches-new-more-favorable-agreement-to-restructure-35-billion-of-liabilities/.*

[11] For example, assuming that 80% of bondholders vote on the Amended Plan, the claims held solely by the PSA Creditors would translate into more than 2/3 support in dollar amount from bondholders in four out of the six anticipated classes of uninsured bonds, with significant support from the PSA Creditors in the other two classes of uninsured bonds.

6

*for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. (ECF No. 11947) (the "Amended Disclosure Statement").

        **D.**      **MEDIATION TEAM'S AMENDED REPORT AND RECOMMENDATION**

14. The Mediation Team filed its Amended Mediation Report on February 10, 2020. In the Amended Mediation Report, the Mediation Team recommended that litigation relating to GO/PBA bond claims that would be settled pursuant to the Amended Plan should be stayed pending the Court's consideration of the Amended Plan, and that "any other pending and not yet filed adversary proceedings and contested matters relating to the validity, priority, and secured status of the GO/PBA/PRIFA BANs claims be stayed pending a decision on confirmation of the Amended Plan." Amended Mediation Report at 9-10.

15. The Mediation Team also identified certain key issues raised in the Lift Stay Motions and Revenue Bond Adversary Proceedings (as those terms are defined in the Amended Mediation Report) that would "be of assistance in the plan mediation process, and (ii) streamline the anticipated confirmation hearing on the Amended Plan." *Id.* At 11-12. Specifically, the Mediation Team observed that a final determination on the issues concerning "standing to sue and security or other property interests in the relevant revenues" that are raised in the Lift Stay Motions would be "invaluable to both the mediation and plan confirmation process." *Id.* at 12.

16. The Mediation Team also identified certain Revenue Bond issues "on which merits rulings in advance of the approval of the Amended Disclosure Statement may facilitate the mediation process and streamline the hearing to consider confirmation of the Amended Plan." *Id.* These issues are: (i) whether, in the event that the holders of Revenue Bonds have no security interest, such bondholders have any allowed unsecured claim against the Commonwealth, such that their claims would need to be addressed in the Amended Plan; and (ii) whether the Oversight Board and/or the Government of Puerto Rico are operating under a conflict of interest in acting for

7

both the Commonwealth and HTA that could affect how claims of HTA against the Commonwealth may be settled or voted in connection with the Amended Plan, because such conflict would need to be addressed prior to the hearing on the approval of the Amended Disclosure Statement (the "Disclosure Statement Hearing"). *See id.* at 12-13.

17. Finally, the Mediation Team listed a number of issues that "will have to be decided at confirmation[,]" including, among other things, "[a]ny challenges to the classification of claims in the Amended Plan." *Id.* at 25.

### E. FINAL STAY AND MEDIATION ORDER

18. On March 10, 2020, the Court entered the Final Stay and Mediation Order. Pursuant to the Final Stay and Mediation Order, "[c]ontested matters or adversary proceedings—other than contested matters initiated via timely objections to the Amended Plan or Amended Disclosure Statement—commenced after the date of this Order that address issues (i) being settled under the Amended Plan, or (ii) already joined in litigation that is being stayed pending a decision on confirmation, shall also be stayed pending such decision…." Final Stay and Mediation Order ¶ 4. According to the Court, this relief "appropriately channels issues related to the Amended Plan and Amended Disclosure Statement into coordinated litigation pathways and avoids the inefficiency of uncoordinated parallel litigation." *Id.*

### F. THE COMMITTEE'S 3013 MOTION

19. On March 3, 2020—one day before the hearing on the Amended Mediation Report (the "March 4 Hearing")—the Committee filed the 3013 Motion seeking entry of an order reclassifying together all claims classified under the Amended Plan in Class 39A (Retiree Claims) and Class 41 (General Unsecured Claims). 3013 Mot. ¶ 13. According to the Committee, "[a]s fiduciary for all general unsecured creditors, it is obligated "to work to obtain the highest possible recovery" for its constituents, and therefore seeks to "ensure that the Class 41 general unsecured

8

claims receive the same percentage on their claims as the Oversight Board will pay the general unsecured claims in Class 39A." *Id.* ¶ 25.

20. At the conclusion of the March 4 Hearing, the Court noted that the ordered stay would not apply to the already-filed 3013 Motion, and stated the following:

> What I expected was that there may be argumentation in response to that motion, that it should be considered more contemporaneously with other confirmation matters than considered prior to the Disclosure Statement Hearing.
>
> I thought it would be only fair to give [the Committee] an opportunity to reply to such argumentation. And at the April Omni I'll decide, at a minimum, when it will be decided, and we'll see where we are.

March 4 Hr'g Tr. at 229:5-13.

21. On April 7, 2020, Assured and the Invesco Funds filed the Assured/Invesco Funds Joinder to the 3013 Motion (ECF No. 12687) and Ambac filed the Ambac Joinder to the 3013 Motion (ECF No. 12691). While ostensibly "joinders" to the 3013 Motion, the pleadings are primarily focused on the Joinder Parties' parochial objections to the Plan's proposed treatment of Revenue Bonds.

       **G.**    **OVERSIGHT BOARD MOVES TO ADJOURN DISCLOSURE STATEMENT HEARING**

22. In light of the "drastic impacts of COVID-19," on March 21, 2020, the Oversight Board issued a press release announcing, among other things, that it would be filing a motion to adjourn the Disclosure Statement Hearing, which was scheduled to commence on June 3, 2020. *See* Press Release, Financial Oversight and Management Board for Puerto Rico, *Oversight Board Statement on COVID-19 and the Commonwealth of Puerto Rico's Debt Restructuring Proceedings* (Mar. 21, 2020), *available at* https://oversightboard.pr.gov/documents/.

23. On March 23, 2020, the Oversight Board filed the *Urgent Motion to Adjourn Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement and Related Deadlines* (ECF No. 12485) (the "Motion to Adjourn"), requesting that the Disclosure

9

Statement Hearing and related deadlines be adjourned. The Oversight Board proposed to submit a status report on or before May 15, 2020, summarizing the effects of COVID-19 on the Commonwealth and the measures being undertaken in the Commonwealth to address the pandemic, and proposing a schedule for the Disclosure Statement Hearing and related deadlines. Mot. to Adjourn ¶ 12.[12] On March 27, the Court entered an Order granting the Motion to Adjourn and directing the Oversight Board to file its status report by May 1, 2020 (ECF No. 12549).

### III. OBJECTION

24. Rule 3013 provides: "[f]or the purposes of the plan and its acceptance, the court may, on motion after hearing on notice as the court may direct, determine classes of creditors and equity security holders pursuant to §§ 1122, 1222(b)(1), and 1322(b)(1) of the Code." Fed. R. Bankr. P. 3013. Rule 3013 provides a procedural means for establishing a classification scheme in order to facilitate the formulation of a plan. *See* Fed. R. Bankr. P. 3013, Advisory Committee Note (noting that the rule "recognizes that it may be desirable or necessary to establish proper classification before a plan can be formulated"). It is not, however, the proper vehicle to raise confirmation-related issues, such as whether a proposed plan unfairly discriminates between creditors. *See In re Rexford Properties LLC*, 558 B.R. 352, 355 (Bankr. C.D. Cal. 2016) ("Although Rule 3013 contemplates the consideration and approval of a proposed classification scheme in advance of the plan confirmation process, it does not contemplate the Court making advance determinations of other confirmation issues such as unfair discrimination."). Yet that is exactly what the Committee is attempting to do by filing its 3013 Motion based upon its contention general unsecured creditors are "entitled to the same treatment as their retired bretheren." 3013

---

[12] In the Motion to Adjourn, the Oversight Board noted that the Amended Plan enjoyed widespread creditor support, as demonstrated by the amount of GO/PBA bond claims held by the creditor signatories to the New PSA, and the Oversight Board did not wish to lose such support.

10

Mot. ¶ 2. Similarly, the Joinders are blatant objections to the treatment of Revenue Bond claims under the Amended Plan.

25. Even if the 3013 Motion were a proper motion under Rule 3013, it is exactly the type of contested matter that was stayed under the Court's Final Stay and Mediation Order. Indeed, reserving consideration of the propriety of the classification of claims under the Amended Plan until confirmation is what was recommended by the Mediation Team, and would further the Court's stated goal of channeling issues related to the Amended Plan into "coordinated litigation pathways" and would "avoid[] the inefficiency of uncoordinated parallel litigation." Final Stay and Mediation Order ¶ 4; Amended Mediation Report at 25. The Committee has demonstrated no compelling reason for the Court to deviate from the Mediation Team's recommended schedule and the Final Stay and Mediation Order. In fact, the pleadings filed by the Joinder Parties purportedly in support of the Committee's 3013 Motion, and their request for leave to file replies, make it clear that litigation of the 3013 Motion would amount to an "uncoordinated and parallel" confirmation proceeding—exactly the litigation barrage that the Court sought to avoid.

26. Finally, Ambac's argument that "the Court lacks discretion to defer ruling on this issue until later proceedings" is entirely unsupported. *See* Ambac Joinder ¶ 15. Ambac cites to two cases—*Granada Wines* and *National/Northway Limited Partnership*—both of which were decided in the context of determining the confirmability of a plan. *See Granada Wines, Inc. v. New England Teamsters and Trucking Industry Pension Fund*, 748 F.2d 42 (1st Cir. 1984) (affirming bankruptcy court's decision regarding the treatment of pension fund's claim compared to other general unsecured claims in the context of the pension fund's plan confirmation objection); *In re Nat'l/Northway Ltd. P'ship*, 279 B.R. 17 (Bankr. D. Mass. 2002) (considering creditor's motion to dismiss chapter 11 case of single-asset debtor on the basis that the debtor's proposed

11

plan was unconfirmable). The Court undoubtedly will consider whether the classification of claims in the Amended Plan is appropriate under applicable law, but it is not required to do so on the Committee's and Joinder Parties' improperly imposed timeline.[13]

*[Remainder of Page Intentionally Left Blank]*

---

[13] While the LCDC submits that the Amended Plan's classification of claims, including its separate classification of retiree claims and general unsecured claims, is appropriate and complies with the Bankruptcy Code, Bankruptcy Rules, and applicable case law, the LCDC will address the Committee's and Joinder Parties' objections to classification at the appropriate time.

## IV. CONCLUSION

WHEREFORE, the LCDC respectfully requests that the Court enter an Order denying the 3013 Motion and grant any other and further relief as is just and proper.

DATED: April 13, 2020

Respectfully submitted,

| **REICHARD & ESCALERA** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
|---|---|
| By : */s/ Rafael Escalera*<br>**Rafael Escalera**<br>USDC No. 122609<br>escalera@reichardescalera.com | **Susheel Kirpalani** (*pro hac vice*)<br>susheelkirpalani@quinnemanuel.com |
| **Sylvia M. Arizmendi**<br>USDC-PR 210714<br>arizmendis@reichardescalera.com | **K. John Shaffer** (*pro hac vice*)<br>johnshaffer@quinnemanuel.com |
| **Carlos R. Rivera-Ortiz**<br>USDC-PR 303409<br>riverac@reichardescalera.com | **Daniel Salinas**<br>USDC-PR 224006<br>danielsalinas@quinnemanuel.com |
| 255 Ponce de León Avenue<br>MCS Plaza, 10th Floor<br>San Juan, Puerto Rico 00917-1913 | **Eric Kay** (*pro hac vice*)<br>erickay@quinnemanuel.com |
| | **Kate Scherling** (*pro hac vice*)<br>katescherling@quinnemanuel.com |
| | **Zachary Russell** (*pro hac vice*)<br>zacharyrussell@quinnemanuel.com |
| | 51 Madison Avenue, 22nd Floor<br>New York, New York 10010-1603 |

*Co-Counsel for the Lawful Constitutional Debt Coalition*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

*/s/Carlos R. Rivera-Ortiz*
USDC-PR 303409