Hearing Date and Time: **April 22, 2020 at 9:30 a.m.** (Atlantic Standard Time)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>           Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES' SUPPLEMENTAL OBJECTION TO (A) THE PARTIAL JOINDER OF AMBAC ASSURANCE CORPORATION TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013 AND (B) THE PARTIAL JOINDER STATEMENT IN SUPPORT OF ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AND INVESCO FUNDS WITH RESPECT TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013**

---

[1] The Debtors in these jointly-administered PROMESA title III cases (these "**Title III Cases**"), along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric and Power Authority (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**") files its Supplemental Objection (the "**Supplemental Objection**") to (a) the *Partial Joinder of Ambac Assurance Corporation to Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of an Order Reclassifying Class 39A and Class 41 Claims Under Oversight Board's Plan of Adjustment Dated February 28, 2020* [Dkt. No. 12691] (the "**Ambac Joinder**" to the "**UCC Motion**"); and (b) the *Partial Joinder and Statement in Support of Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Invesco Funds with Respect to Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of an Order Reclassifying Class 39A and Class 41 Claims Under Oversight Board's Plan of Adjustment dated February 28, 2020* [Dkt. 12687] (the "**Assured Joinder**," and with the Ambac Joinder, the "**Monoline Joinders**" filed by the "**Monolines**").[2] In support of this Supplemental Objection, the Retiree Committee states:

## INTRODUCTION

1. As a preliminary manner, the Monoline Joinders are not "joinders" at all. They are separate Rule 3013 motions that make new and distinct arguments on shortened notice without this Court's permission. That is improper under the Case Management Order and their "Joinders" should be stricken to the extent that they request additional relief. On the merits, the Monoline Joinders also fail. Like the UCC, the Monolines stake their classification arguments on a misreading of *Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 748 F.2d 42, 46 (1st Cir. 1984). (Assured Joiner ¶¶11-19; Ambac Joinder ¶¶5-9.) Tacitly

---

[2] Capitalized terms not defined herein have the meaning provided in the Retiree Committee's Objection to the UCC Motion [Dkt. 12684].

recognizing, however, that the UCC Motion that they purportedly "join" is unavailing, the Monolines attempt to shore up the UCC's arguments by: (1) misconstruing the retirees' claims; (2) improperly relying upon PROMESA Section 301; (3) making an entirely new argument that the Oversight Board's classification of retirees' claims is done to gerrymander votes; and (4) claiming the Court has no discretion to defer a decision on the UCC Motion. Finally, the Monolines ask the Court to make findings about the priority of certain bond claims they insure, which has no bearing on the Rule 3013 motion before the Court. These new arguments, like the UCC's arguments, all fail. Accordingly, for the reasons set forth herein and in the Retiree Committee's Objection to the UCC Motion [Dkt.12684] ("**RC Obj.**"), this Court should deny the UCC Motion and the Monoline Joinders.

## SUPPLEMENTAL OBJECTION

### A. Retiree Claims Should Be Classified Separately From Other Unsecured Claims.

2. The Monoline Joinders substantially restate the UCC's incorrect argument that *Granada Wines* requires Class 39A Retiree Claims to be classified with the CW Unsecured Claims. (*See* Assured Joinder ¶¶11-19; Ambac Joinder ¶¶5-9.) But as *Granada Wines* itself recognizes, separate classification is justified where the "legal character" of the claims is different. 748 F.2d at 46. In an effort to address this point (which the UCC ignored), the Monolines make two additional arguments, both of which fail.

3. *First*, Ambac argues that the Oversight Board "cannot show" that the "legal rights" of the Commonwealth retirees are any different from the creditors classified in the Plan's CW Unsecured Creditor Class because the claims of Puerto Rico's individual retirees are supposedly the same as the pension fund's claim for withdrawal liability under the Multiemployer Pension Plan Amendment Act of 1980 ("**MPPAA**") in *Granada Wines*. (Ambac Joinder ¶9.) This argument

2

is flatly incorrect. For starters, the affected creditor in *Granada Wines* was a pension fund, not a class of individual retirees, and the debtor in *Granada Wines* was not a governmental entity. 748 F.2d at 44. Further, the plan in *Granada Wines* placed the pension fund's claim for withdrawal liability *in the same class* as general unsecured claims, but proposed to pay the fund half of what other unsecured creditors were to receive, in violation of 11 U.S.C. §1123(a)(4). *Id*. at 44-46. Here, the Oversight Board's Plan does *not* propose different treatment for creditors in the same class. The debtor in *Granada Wines* also justified its disparate treatment of the pension fund's claim on an erroneous construction of the MPPAA, which of course has nothing to do with the individual retiree claims at issue here. *Id*. Simply put, there is no comparison between *Granada Wines*' disparate treatment of creditors in the same class in a commercial case with the Oversight Board's separate classification of individual retiree claims for their pensions in a governmental case.

4.     *Second*, Assured claims that another provision of PROMESA—Section 301(e)—requires classification of retiree claims with all other general unsecured claims under Section 1122 of the Bankruptcy Code. (Assured Joinder ¶¶13-14.) But nothing in Section 301(e) does so. That section provides in full:

> In determining whether claims are "substantially similar" for the purpose of section 1122 of Title 11, made applicable in a case under this subchapter by subsection (a), the Oversight Board shall consider whether such claims are secured and whether such claims have priority over other claims.

48 U.S.C. § 2161(e).

5.     Relying on the *inclusio unius est exclusio alterius* canon of statutory construction, Assured argues that secured status and priority are the *only* factors that the Oversight Board may consider in classifying claims under Section 1122. (Assured Joinder ¶¶13-14.) But Assured's argument (like the UCC's) misapprehends what Section 1122 does. Section 1122 *prevents* joint classification of claims that are *not* substantially similar; it does not mandate that all unsecured

3

claims be placed in the same class. Properly read together, all that PROMESA Section 301(e) does is instruct that when deciding whether claims are "substantially similar" under Section 1122(a) such that they may be placed in the same class, the Title III court should consider whether the claims are secured or have some priority.

6. Put another way, Assured's and the UCC's argument conflates the issues of (a) whether claims are substantially similar in terms of security and priority, with (b) whether substantially similar claims may nonetheless be separately classified because they have meaningfully different legal characteristics. Neither Section 1122 nor PROMESA Section 301(e) (nor *Granada*) prohibits separate classification of "substantially similar" claims that bear materially different legal characteristics.

7. Indeed, had Congress intended the construction that Assured places on PROMESA Section 301(e), Congress would not have included Section 1122 in PROMESA and instead would have drafted Section 301(e) to provide that all unsecured claims must be placed in the same class. Since Congress is presumed to know the case law that has developed under Section 1122, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988), and "[t]his presumption is particularly appropriate when the new legislation invokes and builds off an existing statutory framework," *Internal Revenue Serv. v. Murphy*, 892 F.3d 29, 35 (1st Cir. 2018), the fact that Congress did not modify the text of Section 1122 demonstrates that it did not intend to alter the long-standing practice in governmental bankruptcies of separately classifying individual retiree claims. *See, e.g.*, *In re City of San Bernardino*, No. 12-bk-28006, Dkt. 2164 (Bankr. C.D. Cal. Feb. 7, 2017); *In re City of Stockton*, 526 B.R. 35, 60 (Bankr. E.D. Cal. 2015); *In re City of Detroit*, 524 B.R. at 257; *In re City of Vallejo*, No. 08-26813, Dkt. 1113 (Bankr. E.D. Cal. Aug. 4, 2011).

4

### B. The Plan Does Not Gerrymander Classes To Obtain An Impaired Consenting Class.

8. The Monolines contend that the Plan "represents an effort to gerrymander accepting classes." (Assured Joinder ¶20-25; Ambac Joinder ¶14.) As the Monolines' authority recognizes, gerrymandering means "classification ... *solely* to create an impaired assenting class ... to improperly manipulate the voting requirements of section 1129(a)(10)." *In re Barney & Carey Co.*, 170 B.R. 17, 22-24 (Bankr. D. Mass. 1994) (emphasis added). Gerrymandering is present only where "[t]here is *no* legal distinction between the claims that would justify separate classification," *In re Tucson Self-Storage, Inc.*, 166 B.R. 892, 898 (B.A.P. 9th Cir. 1994) (emphasis added), and requires an "unlawful purpose," *In re Gato Realty Tr. Corp.*, 183 B.R. 15, 23 (Bankr. D. Mass. 1995) (citing Black's Law Dictionary 687 (6th ed. 1990))). The Monolines have not shown that Class 39A exists for the "sole" purpose of creating an impaired consenting class, and as set forth in the Retiree Committee's Objection to the UCC Motion, separate classification of the Class 39A Retiree Claims is warranted on multiple grounds, any of which are sufficient to defeat a gerrymandering argument. (RC Obj. 7-15.)

9. Leaving aside the valid justifications for separately classifying Retiree Claims, Assured's gerrymandering argument is logically flawed. Assured notes that the Oversight Board anticipates a number of other impaired accepting classes. (*See* Assured Joinder ¶21 n.9). This concession destroys the argument that the Oversight Board's "sole" or "unlawful" purpose in classifying retiree claims separately is to obtain a consenting impaired class for plan confirmation purposes. *Barney & Carey*, 170 B.R. at 22. Also instructive is *In re River Valley Fitness One Ltd. P'ship*, No. 01-12829-JMD, 2003 WL 22298573 (Bankr. D.N.H. Sept. 19, 2003). There, the district court rejected a gerrymandering challenge, where, as here, the debtor believed that other

5

classes in addition to the allegedly gerrymandered class might accept the plan, noting that there can be no "improper manipulation" if other classes may also accept the plan. *Id.* at *9.

10. Assured's gerrymandering argument also overlooks the sheer number of retirees holding Retiree Claims—approximately 167,000 individuals. Indeed, one could imagine a group of creditors who hold claims legally distinct from the Retiree Claims and who do not wish to vote the same way as the Retirees complaining that their voice is being drowned out by having their claims placed in the same class with the legally-distinct Retiree Claims. Thus, the size of Class 39A reinforces the separate classification of Retiree Claims—otherwise, jointly classified creditors would be overwhelmed by the retirees' votes.

### C. The UCC Motion Is Not Ripe For Adjudication.

11. Like the UCC, the Monolines transparently seek to improve their recoveries relative to other creditor constituencies through Bankruptcy Rule 3013. (*See* Assured Joinder ¶2 ("proposed 3.9% recovery level for the revenue-bond-related claims is inappropriate"); *id.* ¶3 (arguing Class 42-44 revenue bond claims should receive no less than "the 92.5-100% recovery currently proposed for claims in Class 39A").) As set forth in the Objection to the UCC Motion, these arguments are premature. (*See* RC Obj. 16-17.) Rule 3013 concerns classification only, and does not provide for "advance determinations" of other confirmation issues like unfair discrimination, best interests of creditors, or good faith. (*See* RC Obj. 16 (citing *In re Rexford Properties LLC*, 558 B.R. 352, 355 (Bankr. C.D. Cal. 2016)).)[3]

12. Ambac raises a new argument, claiming "this Court *lacks discretion* to defer ruling on this issue until later proceedings." (Ambac Joinder ¶15 (emphasis added).) Ambac provides no authority for this proposition, nor can it. Rule 3013 provides that: "the court *may* ... determine

---

[3] The Retiree Committee reserves its right to address these issues at the proper time.

6

classes of creditors and equity security holders." Fed. R. Bankr. P. 3013 (emphasis added). The use of the word "may" implies the Court has "discretion" and makes the Court's consideration of the issue permissive, not mandatory. *See Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016). Moreover, Ambac's contention that the Court lacks discretion to defer consideration of the UCC Motion flies in the face of the Court's "substantial inherent power to manage and control [its] calendar[]." *In re Atl. Pipe Corp.*, 304 F.3d 135, 143 (1st Cir. 2002). The Court has discretion to determine when to decide the UCC Motion, and to the extent it does not deny the Motion at the April 22, 2020 hearing, it should adjourn the Motion.

7

**CONCLUSION**

13. For all of the foregoing reasons, and for the reasons set forth in its Objection to the UCC Motion, the Retiree Committee respectfully requests that the Court enter an Order denying the UCC Motion and the Monoline Joinders in their entirety and granting such other relief as may be just.

Dated: April 13, 2020

JENNER & BLOCK LLP

By:
*/s/ Robert Gordon*
Robert Gordon (admitted *pro hac vice*)
Richard Levin (admitted *pro hac vice*)
Carl Wedoff (admitted *pro hac vice*)
919 Third Ave
New York, NY 10022-3908
rgordon@jenner.com
rlevin@jenner.com
cwedoff@jenner.com
212-891-1600 (telephone)
212-891-1699 (facsimile)

Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
Landon Raiford (admitted *pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
csteege@jenner.com
mroot@jenner.com
lraiford@jenner.com
312-222-9350 (telephone)
312-239-5199 (facsimile)

Respectfully submitted,

BENNAZAR, GARCÍA & MILIÁN, C.S.P.

By:
*/s/ A.J. Bennazar-Zequeira*
A.J. Bennazar-Zequeira
Héctor M. Mayol Kauffmann
Edificio Union Plaza
1701 Avenida Ponce de León #416
Hato Rey, San Juan, PR 00918
ajb@bennazar.org
hector.mayol@bennazar.org
787-754-9191 (telephone)
787-764-3101 (facsimile)

*Counsel for The Official Committee of Retired Employees of Puerto Rico*

8