# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | Re: ECF Nos. 11989 |
| Debtors.[1] | |

*[Caption continued on next page]*

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR THE COMMONWEALTH OF
PUERTO RICO, AMBAC ASSURANCE
CORPORATION, ASSURED GUARANTY
CORP., ASSURED GUARANTY MUNICIPAL
CORP., AND INVESCO FUNDS

     Movants and Joinder Entities,

v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

     Respondent.

**Re: ECF Nos. 11989, 12687, and 12691**

**OPPOSITION OF FINANCIAL OVERSIGHT
AND MANAGEMENT BOARD TO MOTION OF OFFICIAL
COMMITTEE OF UNSECURED CREDITORS PURSUANT
TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013
FOR ENTRY OF ORDER RECLASSIFYING CLASS 39A AND
CLASS 41 CLAIMS UNDER OVERSIGHT BOARD PLAN OF
ADJUSTMENT DATED FEBRUARY 28, 2020 AND JOINDERS THERETO**

# **TABLE OF CONTENTS**

**Page**

**TABLE OF CONTENTS** ............................................................................................... i

**PRELIMINARY STATEMENT** ................................................................................. 2

**BACKGROUND** ......................................................................................................... 8

**ARGUMENT** ............................................................................................................ 11

   I.    THE 3013 MOTION RAISES CONFIRMATION ISSUES PROPERLY CONSIDERED
AT A CONFIRMATION HEARING ................................................................... 11

      A.   The Court has Broad Discretion to Deny the 3013 Motion without Prejudice to
Reinstatement at Confirmation ................................................................. 11

      B.   The 3013 Motion and Partial Joinders are "Unfair Discrimination" Confirmation
Objections Disguised as Objections to Classification .................................... 16

      C.   The Issues Asserted in the 3013 Motion are Neither Obvious Nor Central for
Confirmability .......................................................................................... 18

   II.   THE AMENDED PLAN PROPERLY CLASSIFIES RETIREES AND GENERAL
UNSECURED CLAIMHOLDERS ...................................................................... 19

      A.   Section 1122 Does Not Dictate Which Claims Must be Classified Together ............. 19

      B.   The First Circuit's Purported "Strict Approach" to Classification Does Not Govern the
Application of Section 1122 in PROMESA ......................................................... 24

      C.   Courts in This District Do Not Apply the *Granada Wines* Approach .......................... 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Aetna Cas. Corp. v. Clerk, U.S. Bankr. Court, N.Y. (In re Chateaugay Corp.),*
  89 F.3d 942 (2d Cir. 1996)..............................................................................21, 22

*Andalusian Glob. Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R.*
  *(In re Fin. Oversight & Mgmt. Bd. for P.R.),*
  No. 20-1065, 2020 WL 1498403 (1st Cir. Mar. 19, 2020) ......................................2

*Associated Press v. Nat'l Labor Relations Bd.,*
  301 U.S. 103 (1937).................................................................................................27

*Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight*
  *& Mgmt. Bd. for P.R.),*
  872 F.3d 57 (1st Cir. 2017).....................................................................................25

*Bank of N.Y. Tr. Co. v. Official Unsecured Creditors' Comm. (In re Pacific*
  *Lumber Co.),*
  584 F.3d 229 (5th Cir. 2009) ..................................................................................21

*Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.),*
  280 F.3d 648 (6th Cir. 2002) .......................................................................19, 20, 21

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.,*
  972 F.2d 453 (1st Cir. 1992)....................................................................................27

*Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund,*
  748 F.2d 42 (1st Cir. 1984).......................................................................................8

*In re Bjolmes Realty Trust,*
  134 B.R. 1000 (Bankr. D. Mass. 1991) ..............................................................28, 29

*In re City of Detroit,*
  524 B.R. 147 (Bankr. E.D. Mich. 2014)................................................20, 22, 23, 24

*In re City of Stockton,*
  526 B.R. 35 (Bankr. E.D. Cal. 2015)........................................................................22

*In re FAH Liquidating Corp.,*
  563 B.R. 160 (Bankr. D. Del. 2017) ..........................................................................7

*In re Granada Wines, Inc.,*
  26 B.R. 131 (Bankr. D. Mass. 1983) ........................................................................26

*In re Greate Bay Hotel & Casino, Inc.*,
   251 B.R. 213 (Bankr. D.N.J. 2000) .........................................................20

*In re Holywell Corp.*,
   913 F.2d 873 (11th Cir.1990) ..................................................................21

*In re Jersey City Med. Ctr.*,
   817 F.2d 1055 (3d Cir. 1987)...................................................................21

*In re Johns-Manville Corp.*,
   68 B.R. 618 (Bankr. S.D.N.Y. 1986) ......................................................17

*In re Los Angeles Land & Investments, Ltd.*,
   282 F. Supp. 448 (D. Haw. 1968), *aff'd,* 447 F.2d 1366 (9th Cir.1971) ................................26

*In re Manuel Mediaviavilla, Inc.*,
   No. 13-2800 (MCF), 2015 WL 3780463 (Bankr. D.P.R. June 16, 2015) ..............................28

*In re Nat'l Paper & Type Co. of P.R.*,
   120 B.R. 624 (D.P.R. 1990)......................................................................27

*In re Rexford Props. LLC*,
   558 B.R. 352 (Bankr. C.D. Cal. 2016)......................................................17

*In re U.S. Truck Co., Inc.*,
   800 F.2d 581 (6th Cir. 1986) ...................................................................21

*In re Woodbrook Assocs.*,
   19 F.3d 312 (7th Cir. 1994) .....................................................................21

*Lumber Exch. Bldg. Ltd. P'ship v. Mutual Life Ins. Co. of N.Y. (In re Lumber
   Exch. Bldg. Ltd. P'ship)*,
   968 F.2d 647 (8th Cir. 1992) ...................................................................21

*Minerals Techs., Inc. v. Novinda Corp. (In re Novinda Corp.)*,
   585 B.R. 145 (B.A.P. 10th Cir. 2018)...........................................18, 19, 21

*Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III
   Joint Venture)*,
   995 F.2d 1274 (5th Cir. 1991) .................................................................28

*Travelers Ins. Co. v. Bryson Props, CVIII (In re Bryson Props., XVIII)*,
   961 F.2d 496 (4th Cir. 1992) ...................................................................21

*Villafañe-Colon v. B Open Enterprises, Inc.*,
   932 F. Supp. 2d 274 (D.P.R. 2013).........................................................14

*Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC),*
   465 B.R. 525 (B.A.P. 9th Cir. 2012), *aff'd*, 578 F. App'x 644 (9th Cir. 2014)......................21

**STATUTES**

11 U.S.C. § 597 (repealed 1978)..................................................................................25, 29

11 U.S.C. § 757(1) (repealed 1978)....................................................................................29

11 U.S.C. § 1122 ........................................................................................................ passim

11 U.S.C. § 1122(a) .................................................................................................... passim

11 U.S.C. § 1123(a)(4)......................................................................................................26

11 U.S.C. § 1129 .........................................................................................................26, 28

11 U.S.C. § 1129(a)(1).......................................................................................................15

11 U.S.C. § 1129(a)(8).......................................................................................................17

11 U.S.C. § 1129(b)...................................................................................................7, 17, 18

11 U.S.C. § 1129(b)(1)..........................................................................................11, 17, 20, 26

11 U.S.C. § 1322(b)(1).......................................................................................................11

28 U.S.C. § 2075.................................................................................................................2

48 U.S.C. §§ 2101-2241.......................................................................................................1

PROMESA § 201...................................................................................................................9

PROMESA § 301(e) ..................................................................................................... passim

PROMESA § 312.................................................................................................................19

PROMESA § 312(a) ...................................................................................................2, 12, 20

PROMESA § 313.......................................................................................................2, 12, 19

PROMESA § 314(b)(1)..........................................................................................................5

PROMESA § 315.................................................................................................................12

PROMESA § 315(b)...............................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 3013 ................................................................................................ passim

To The Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA"), pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") [2] (the Oversight Board, in its capacity as representative of the Commonwealth, ERS, and PBA, is referred to as the "Debtors"), respectfully submits this opposition (the "Opposition") to:

1. *Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of an Order Reclassifying Class 39A and Class 41 Claims Under Oversight Board's Plan of Adjustment Dated February 28, 2020* [ECF No. 11989] (the "3013 Motion");

2. *Partial Joinder and Statement in Support of Assured Guaranty Corp., Assured Guaranty Municipal Corp.,* [together, "Assured"] *and Invesco Funds With Respect to Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of an Order Reclassifying Class 39a and Class 41 Claims Under Oversight Board's Plan of Adjustment Dated February 28, 2020* [ECF No. 12687] (the "Assured Partial Joinder"); and

3. *Partial Joinder of Ambac Assurance Corporation* ["Ambac" and together with Assured and Invesco Funds, the "Supporting Parties"] *to Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of an Order Reclassifying Class 39a and Class 41 Claims Under Oversight Board's Plan of Adjustment Dated February 28, 2020* [ECF No. 12691] (the "Ambac Partial Joinder" and, together with the Assured Partial Joinder, the "Partial Joinders")

and represents as follows:

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

## PRELIMINARY STATEMENT[3]

1.     **It's the Money**.  The Oversight Board proposed a plan of adjustment providing for payment of at least 91.5% of governmental retiree pension claims.  That barely gets most retirees above the federal poverty level.  General Obligation priority claims are settled, and other commercial unsecured claims are paid far less.  But, according to Ambac, Assured, Invesco, and the Official Committee of Unsecured Creditors ("UCC", and together with the Supporting Parties, "Movants"), their commercial claims must be paid the same as the retirees, and if that means retirees must receive far less, so be it.  Fortunately for Puerto Rico's retirees and humanity, Movants' position has no validity.  They misapply Bankruptcy Rule 3013, and their argument fails on the merits.  Indeed, the United States Court of Appeals for the First Circuit just recently reminded commercial holders of Puerto Rico bonds that there are "obvious differences between governmental bankruptcies and commercial private party bankruptcies."[4]

2.     **Movants Improperly Invoke Bankruptcy Rule 3013**. Through the 3013 Motion, the UCC attempts to take control of and redo the plan of adjustment formulation process to compel the Oversight Board to amend its Plan to lump together public pension claims and general unsecured claims ("GUCs").  The Supporting Parties take it even further, piggybacking onto the 3013 Motion to assert myriad rights and expand the UCC's requested relief such that, if the Court finds certain Revenue Bond Claims[5] are unsecured, the Supporting Parties' claims should also be combined with the pension claims in one class.  In doing so, Movants seek to impose a creditors'

---

[3]   All capitalized terms not otherwise defined shall have the meaning given to them in the section entitled, "Background."

[4]   *Andalusian Glob. Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.),* No. 20-1065, 2020 WL 1498403, at *3 (1st Cir. Mar. 19, 2020) (citing *In re Richmond Unified School Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991)).

[5]   The Supporting Parties define the "Revenue Bond Claims" as those claims placed in Class 42 (HTA), Class 43 (CCDA), and Class 44 (PRIFA).

preferred classification scheme on the Oversight Board.

3.      It is clear the federal bankruptcy rules of procedure cannot alter any substantive right. 28 U.S.C. § 2075. Accordingly, Rule 3013 should not be interpreted to alter the Oversight Board's exclusive right in PROMESA § 312(a) to propose a plan of adjustment. Similarly, pursuant to PROMESA § 313, no one other than the Oversight Board should amend a proposed plan of adjustment. And, for purposes of applying Bankruptcy Code section 1122(a) which provides substantially similar claims "may" be placed in the same class, PROMESA § 301(e) provides the Oversight Board shall consider whether the claims are secured or have priority. So, while at the confirmation hearing the Court can deny confirmation on any valid ground including classification, nothing in the statute allows the Court to tell the Oversight Board what classification to propose, as all Movants are urging the Court to do.

4.      Movants also wrongly invoke Rule 3013 by ignoring its wording and purpose as set forth in its Advisory Committee Note – "it recognizes that it may be desirable or necessary to establish proper classification before a plan can be formulated." Fed. R. Bankr. P. 3013, Advisory Committee Note. Here, the Oversight Board already proposed the Plan. Accordingly, there is no basis for the Court to put itself in the mix to determine what classification should be used, unless there is only one classification that could possibly be confirmable. If there are two or more, what is the Court supposed to do? Would it be the Court's job to identify every possible classification and to select one? Of course not, Rule 3013 is certainly not intended to displace the statute requiring the Oversight Board to consider classification and to propose and amend its own proposed Plan.

5.      **Ambac and Assured's Partial Joinders Make Obvious Why the Court Cannot Determine Classification Before the Confirmation Hearing**. Ambac contends the Plan "is

transparently an effort to gerrymander the confirmation process."  Ambac Partial Joinder ¶ 3; Assured Partial Joinder ¶ 20.  Prior to voting on the Plan, it is impossible for the Court to know whether the classification the Supporting Parties object to is due to gerrymandering.  If other classes accept the Plan as they are likely to do based on the restructuring support agreement, acceptance by the pension class(es) would not be required to satisfy the requirement for an impaired accepting class.  Thus, gerrymandering cannot be determined until all the other votes are in, and that does not occur until days before the confirmation hearing.

6.  **The 3013 Motion Should be Denied Without Prejudice to Reinstatement as a Confirmation Objection.**  As the UCC's motion is premised entirely on the differing treatment between two purportedly equally ranking classes, the 3013 Motion is nothing more than a thinly disguised confirmation-based objection asserting "unfair discrimination".  Regardless, Bankruptcy Rule 3013 cannot be invoked to litigate an unfair discrimination objection before the confirmation hearing.

7.  The Supporting Parties make no attempt to disguise that their Partial Joinders have nothing to do with separate classification and everything to do with the treatment they are receiving.  They argue (incorrectly) that the Revenue Bond Claims have a host of priority and security interests that make them different from GUCs (Assured Partial Joinder ¶ 2; Ambac Partial Joinder ¶¶ 3, 10-12)—which, ironically, supports the Plan's separate classification of these claims.  They complain, however, that their Revenue Bond Claims only receive the same recovery under the Plan as GUCs.  Their argument, however, goes far beyond the scope of the 3013 Motion, which only seeks to combine Classes 39A and 41, in asking the Court to find that Classes 11-38 and 42-44 should also be placed in the same class as the Retiree Claims, and thus should not even be considered joinders but rather separate motions.  More importantly, the Supporting Parties'

argument is plainly an unfair discrimination objection to the Plan not contemplated in any respect by Bankruptcy Rule 3013 and not appropriate to consider prior to the confirmation hearing (and, moreover, is not even ripe for consideration because the underlying claims are actively being litigated).

8.      Even if the 3013 Motion were properly lodged, the Court should deny it without prejudice to reinstatement at confirmation for the same reasons the Court stayed consideration of the UCC Priority Objection.  First, compliance with section 1122 is a confirmation requirement under PROMESA § 314(b)(1), and should thus be heard in conjunction with other confirmation issues at the confirmation hearing when all the facts are available.  Second, allowing motions relating to confirmation objections to proceed would result in a litigation overload for the Court from numerous one-off litigations prior to confirmation, as evidenced by the Supporting Parties' attempt to introduce a host of new issues.

9.      Further, even if early adjudication of these arguments were properly accommodated by Bankruptcy Rule 3013, the rule provides the Court with full discretion ("the court may") over whether to hear them in advance of confirmation. Because Movants' motivation is, at best, an attempt to raise "unjust discrimination" confirmation objections, and, at worst, an attempt to leverage the Oversight Board to increase recoveries to their respective classes at the retirees' expense, their confirmation objections should be deferred until the confirmation hearing.  Indeed, at the March 4, 2020 omnibus hearing, the Court indicated that, when this matter is considered, it would presumably be to set a timetable for future determination.[6]

---

[6]   "What I expected was that there may be argumentation in response to that motion, that it should be considered more contemporaneously with other confirmation matters than considered prior to the Disclosure Statement hearing. I thought it would be only fair to give you an opportunity to reply to such argumentation. And at the April Omni I'll decide, at a minimum, when it will be decided, and we'll see where we are."  Mar. 4, 2020 Hr'g Tr. 229:5-13.

10.     Finally, Puerto Rico is in a lockdown along with the rest of the United States while the Oversight Board and Government work to respond to the COVID-19 pandemic and determine its effects on fiscal plans and plans of adjustment—all of which may have to be significantly altered.  Indeed, on April 8, 2020 the Puerto Rico Treasury Secretary announced "[a]fter the earthquakes and this world pandemic, we understand we are probably going to lose $1.5 billion to $1.6 billion in collections."[7]  The Oversight Board will submit a status report on these issues on May 1, 2020, but, until that time, and due to the evolving nature of the situation, it is an inefficient use of judicial resources for the 3013 Motion and Partial Joinders to go forward.

11.     **The Partial Joinders Should be Stricken**.  Although the 3013 Motion was filed on March 3, 2020, the Supporting Parties waited until the last minutes before the April 7, 2020 *objection* deadline to file purported "partial joinders" to the 3013 Motion.  But the "Partial Joinders" are not "joinders" to the relief the UCC is seeking—the placement of Class 39A claims and Class 41 claims in the same class.  Instead, they are independent motions that go far beyond the scope of the 3013 Motion and Bankruptcy Rule 3013 itself, introduce a host of creditor-specific arguments currently being litigated in different matters, and ask the Court to reclassify classes 11-38 and 42-44 with Class 39A—none of which was raised in the 3013 Motion. Indeed, the Partial Joinders are separate legal briefs over twice as long as the motion they purport to join.  This transparent attempt by the Supporting Parties to game the system by inhibiting the Oversight Board's ability to respond (and preventing the Retiree Committee and AMPR, whose objections were already filed, from responding at all)[8] should not be allowed.  Accordingly, if the Court does

---

[7]     *Puerto Rico Treasury Secretary Anticipates Fiscal 2020 Tax Revenue Missing Projections by at Least $1.5B Due to Covid-19, Earthquakes; Says New Target Tops Out at $9.4B*, Reorg Research, April 8, 2020 (https://app.reorg.com/v3#/items/intel/1869?item_id=100845) (subscription required).

[8]     The Court has since granted the Retiree Committee's motion to file a supplemental objection to the Partial Joinders. [ECF No. 12708].

not deny without prejudice the 3013 Motion, it should, at a minimum, strike the Partial Joinders and require they be refiled as standalone motions and placed on their own briefing schedule. *See In re FAH Liquidating Corp.*, 563 B.R. 160, 163 (Bankr. D. Del. 2017) (holding a separate motion is required to obtain relief under Rule 3013; it was not sufficient to ask for a court ruling on classification in a footnote of a plan of liquidation).

12. <u>**The Plan Properly Classifies Pension Claims and General Unsecured Claims in Different Classes**</u>. Even if this Court were to take the 3013 Motion and the Partial Joinders on the merits, they fail on multiple grounds. Bankruptcy Code section 1122 only provides that claims "may" be in the *same* class if they are "substantially similar." Not only is there no requirement that substantially similar claims be in the same class, but Bankruptcy Code section 1129(b) shows separate classes are clearly authorized. It imposes the requirement that if a separate class rejects the plan, its treatment cannot be an unfair discrimination. Unfair discrimination has no meaning or application when the claims in the accepting and rejecting classes are not similar. PROMESA embellishes on section 1122 of the Bankruptcy Code — under PROMESA section 301(e), the determination of whether claims are "substantially similar" for purposes of proposing a plan is left to the Oversight Board, which "shall consider whether such claims are secured and whether such claims have priority over other claims." PROMESA § 301(e). There are no limitations, in section 1122 or otherwise, on the Oversight Board's ability to place claims in *separate* classes.[9]

13. The UCC, however, attempts to portray the classification issue as "obvious" (3013 Motion ¶ 4) by arguing a straightforward application of the purported "strict approach" to

---

[9]   Assured argues that PROMESA section 301(e) only permits the Oversight Board to consider the security and priority of a claim for purposes of determining whether it is substantially similar. Assured Partial Joinder ¶¶ 13-14. What Assured fails to consider is that, if its theory were correct, it would provide the Oversight Board with less flexibility to place claims *in the same class*, as section 1122 only provides that substantially similar claims "may" be placed in the same class. The more difficult it is for the Oversight Board to place claims in the same class, the easier it is for the Oversight Board to justify placing claims *in separate classes*.

classification espoused in the First Circuit's decision in *Granada Wines*[10] requires claims of equal rank to be in the same class.  One would never know from the 3013 Motion or its partial joinders that the plan in *Granada Wines* did not attempt separate classification of unsecured claims.  Rather, it had one class of unsecured claims and attempted to limit the allowability of the unsecured claim for withdrawing from a multiemployer pension plan.  To support its ability to cap artificially the amount of the pension plan withdrawal liability, the plan proponent posited a hypothetical under which it would propose a plan separately classifying the pension withdrawal claim and paying it less.  The First Circuit opined that would not work because the unsecured claims should be classified together.  Thus, the entire 3013 Motion and its partial joinders are based on that *dicta*.  For reasons explained below, we submit the First Circuit would insist it had no intent to impose its *dicta* on all chapter 11 cases, let alone the instant Title III case.  Indeed, the First Circuit's *dicta* invoked Chapter X decisions under the Bankruptcy Act of 1898, as amended, without discussing the difference between the statutory classification language in Chapter X and in Bankruptcy Code section 1122(a).

## **BACKGROUND**

14.    On February 28, 2020, the Oversight Board, pursuant to its powers under PROMESA section 312, proposed the *Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.* (the "Plan") [ECF No. 11946].  The Plan provides for a global compromise and integrated settlement of litigation surrounding certain debt issued or guarantees made by the Commonwealth.

15.    On February 3, 2020, the UCC filed its *Omnibus Objection of the Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy*

---

[10]    *Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 748 F.2d 42 (1st Cir. 1984).

*Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of General Obligation Bonds Asserting Priority Over Other Commonwealth Unsecured Creditor* (the "UCC Priority Objection") [ECF No. 10638], in which it objected to the asserted priority of GO bondholders on the grounds that the asserted priority conflicts with PROMESA, the asserted priority undermines the purpose and specific provisions of the Bankruptcy Code, and improper application of section 201 of PROMESA. In fact, the Plan settles the asserted priorities.

16.     On March 3, 2020, the UCC filed its 3013 Motion. In accordance with the Eleventh Case Management Procedures [ECF No. 11885-1], the objection deadline was set for April 7, 2020 at 4:00 p.m. (ADT).

17.     At the March 4, 2020 omnibus hearing, the Court stayed the UCC Priority Objection until confirmation, holding, among other things, that the stay promotes conservation of resources and judicial efficiency. Mar. 4, 2020 Hr'g Tr. 105:21-107:25; 215:1-4; *Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* [ECF No. 12189], ¶ 1.

18.     Following the Court's decision to stay the UCC Priority Objection, and likely recognizing the overlapping issues, counsel for the UCC asked the Court for clarification whether the 3013 Motion—filed the day before the hearing—would be similarly stayed. Mar. 4, 2020 Hr'g Tr. 228:24-229:4. The Court indicated it expects the Oversight Board to argue that issues raised in the 3013 Motion should be heard at confirmation, and that the question of when the 3013 Motion would be heard and decided will be addressed at the April 22 omnibus hearing.[11]

19.     On March 23, 2020, the Oversight Board filed its *Urgent Motion to Adjourn Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement and*

---

[11]   *See supra* n.6.

*Related Deadlines* [ECF No. 12485] seeking to adjourn consideration of the proposed Plan's disclosure hearing so that the Government and the Oversight Board's main focus could be on getting Puerto Rico through the COVID-19 crisis.

20.    On March 25, 2020, the UCC filed a response [ECF No. 12529] requesting to adjourn all deadlines and accusing the Oversight Board of trying to "weaponize" the COVID-19 crisis by proceeding with certain pending litigation.  Ironically, while claiming that all matters must be placed on hold, the UCC refused to adjourn consideration of the 3013 Motion.

21.    On March 27, 2020, the Court overruled the UCC's request and granted the Oversight Board's motion to adjourn.  *See Order Granting Motion to Adjourn Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement and Related Deadlines* [ECF No. 12549].  Pursuant to the order, the Debtors will file a status report on May 1, 2020 regarding the effects of COVID-19 on the Commonwealth and the measures being undertaken in the Commonwealth to address the pandemic, and will propose a schedule for the Disclosure Statement Hearing and related deadlines.

22.    On April 6, 2020, the Supporting Parties first informed the Oversight Board of their intent to file a "joinder and statement in support" of the 3013 Motion and requested its consent to a reply deadline of April 17, 2020 at 4:00 p.m. (ADT).  The Oversight Board responded that it could not evaluate the request without seeing the proposed joinders and the extent to which they exceed the scope of the 3013 Motion.  The Supporting Holders did not provide any copies or drafts of the Partial Joinders to further their request to the Oversight Board.

23.    On April 7, 2020, with minutes remaining on the objection deadline, and after the Official Committee of Retired Employees had already filed its objection to the 3013 Motion [ECF

No. 12684], the Supporting Parties filed their Partial Joinders, both of which seek relief far beyond what the UCC seeks in the 3013 Motion.

24.     Concurrently with the filing of the Partial Joinders, the Supporting Parties filed an urgent motion seeking to file a reply to objections on April 17, 2020 [ECF No. 12688].  Section I.H of the Eleventh Case Management Procedures requires that "the anticipation of an objection shall be prominently disclosed in the Urgent Motion."  Despite the Oversight Board's clear indication it would oppose any such extension with respect to a joinder that materially exceeded the scope of the 3013 Motion, as the Partial Joinders very obviously do, no such disclosure was made.  Perhaps due to the Supporting Parties' failure to make such a disclosure, the Court granted the urgent motion the next day [ECF No. 12696], thus putting the Supporting Holders' new and broad confirmation objections on a ten-day briefing schedule.

## **ARGUMENT**

### I.   **THE 3013 MOTION RAISES CONFIRMATION ISSUES PROPERLY CONSIDERED AT A CONFIRMATION HEARING**

### A.   **The Court has Broad Discretion to Deny the 3013 Motion without Prejudice to Reinstatement at Confirmation**

25.     Even if Rule 3013 applied here (which it does not), the plain language of Bankruptcy Rule 3013 makes the Court's discretion abundantly clear, providing "*[f]or the purposes of the plan* and its acceptance, **the court may**, on motion after hearing on notice as the court *may* direct, determine classes of creditors and equity security holders pursuant to §§ 1122, 1222(b)(1), and 1322(b)(1) of the Code." (emphasis added).  Accordingly, the determination of *if* and *when* to consider a Bankruptcy Rule 3013 motion is left to Court, who may exercise its inherent powers to determine its schedule and hear motions whenever is most efficient for the case.

26.     Movants attempt to violate PROMESA by improperly deploying Bankruptcy Rule 3013 to impose classifications on the Oversight Board, and, consequently, amend an already-filed

Plan.  Under PROMESA sections 312(a), 313, and 315 the Oversight Board is the only party who can propose or modify a proposed plan of adjustment.  Under PROMESA section 301(e), the Oversight Board alone, for purposes of a plan proposal, has the discretion to determine whether claims are "substantially similar" for purposes of Bankruptcy Code section 1122.  While the Court has the ultimate determination, at confirmation, as to whether the Plan's classification system complies with Bankruptcy Code section 1122, Congress appointed the Oversight Board as the sole architect of the Plan.  Any interpretation of Bankruptcy Rule 3013 as permitting a party to impose classifications on the Oversight Board conflicts with PROMESA and must be rejected.

27.     The Advisory Committee's note to Bankruptcy Rule 3013 demonstrates the purpose behind the rule.  It states the purpose of the Bankruptcy Rule 3013 is to give the Court authority to determine classification before a plan is proposed when necessary to facilitate the *formulation* of a plan.  *See* Fed. R. Bankr. P. 3013, Advisory Committee Note.  Here, the Oversight Board did not require advance determination of classification of claims to formulate its Plan, as the Plan has already been proposed.  While Movants cite numerous chapter 11 cases purporting to allow any party-in-interest to seek classification determinations, they do not cite a single chapter 9 case.  Unlike chapter 11, where parties other than the debtor or trustee may file a plan if the debtor's exclusivity is terminated, debtors in chapter 9 and Title III cases have exclusivity to propose a plan for the duration of the case.  It follows that only the Oversight Board may invoke Bankruptcy Rule 3013 in Title III (or the debtor in chapter 9) to seek guidance as to the formulation of a plan of adjustment.

28.     Even if the Court were to interpret Rule 3013 as permitting it to make classification determinations binding on the Oversight Board, it would face an impossible and inappropriate task here. For instance, Ambac and Assured claim their Revenue Bond Claims against the

Commonwealth are secured or consist of other ownership or trust interests.[12]   Ambac's partial joinder virtually trips over itself in its requests of the Court, and in the process asks the Court to do the impossible.  In Section II of its partial joinder, Ambac claims in the alternative that its claim is not unsecured, but is misclassified if it is unsecured.  Then, in paragraph 16, Ambac requests the Court to reclassify the retiree claims and all unsecured claims so all "substantially similar claims are classified together."   The Plan has fifty-two classes, most of which are unsecured. Neither Ambac nor Assured has alerted claimholders in the other classes that it is trying to undermine the restructuring support agreement.  Even if they do, is the Court supposed to analyze now whether all the unsecured claims must be combined?  And, if the Court finds there is more than one permissible classification system, must the Court conjure up how many there are, list each, and decide which one to order?  To ask these questions is to make clear Movants are misusing Rule 3013.

29.     Moreover, to say Ambac is requesting an impermissible advisory ruling is an understatement.  It knows its Revenue Bond Claims are being separately litigated in the contexts of stay relief motions and adversary proceedings objecting to its claims.  Thus, it is not asking for rulings here to determine what types of allowable claims it has, if any.  Rather, Ambac and Assured ask the Court to issue a ruling that all unsecured claims, including the ones they might end up with of currently unknowable character, would have to be classified with the retirees' claims.  If they are not asking for that, then they lack standing to make their instant partial joinders.

30.     Second, the Court has already determined that issues going to the confirmability of the Plan should be addressed at confirmation.  Movants' asserted rationales for immediate hearing

---

[12]   *See Amended Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank Trust National Association, Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* [ECF No. 10602] ¶¶ 2, 58-60.

of the 3013 Motion are identical to the rationales the Court rejected[13] in rendering its determination

to stay the UCC Priority Objection.[14]

31.     At the omnibus hearing held on March 4, 2020, counsel for the UCC argued (as

they do now, 3013 Motion ¶ 17) that resolution of this supposed gating issue would spare parties

the time and expense of soliciting and analyzing a Plan that is not confirmable.  Mar. 4 Hr'g Tr.

161:12-23.   The Court rejected this argument and stayed the UCC Priority Objection to

confirmation.  Relying on *Villafañe-Colon v. B Open Enterprises, Inc.*, 932 F. Supp. 2d 274, 280

(D.P.R. 2013), the Court analyzed the appropriateness of staying the objection based on "the

economical use of party and judicial resources, the hardship resulting from not staying a

proceeding, and the potential prejudice to parties if the stay is granted."  Mar. 4, 2020 Hr'g Tr.

215:6-9 (citing *id*).  The Court recognized "the proposed stay represents the most economical use

of resources" because the Oversight Board is the only party that can propose a plan, many parties

have objections to the plan, and it is not prudent to litigate issues that will be resolved if the plan

is confirmed.  Mar. 4, 2020 Hr'g Tr. 215:13-14; *see also Villafañe-Colon*, 932 F. Supp. 2d at 281

("judicial resources and the resources of the parties will be conserved if this case proceeds as a

whole, not piece meal.").  Finally, the Court recognized there was no prejudice because parties

"retain their rights to object to the Amended Plan of Adjustment, and they also have the

opportunity to accept the proposed settlement, and if the Plan is confirmed, receive the

distributions contemplated thereunder."  Mar. 4, 2020 Hr'g Tr. 216:16-19.

32.     The same reasoning is equally applicable here. The Oversight Board has the burden

of showing compliance with section 1122 at the confirmation hearing, per section 1129(a)(1) and

---

[13]   *Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto*,
    [ECF No. 12189] ¶ 1.

[14]   UCC Priority Objection ¶ 10.

relevant case law.   A contested confirmation process is the appropriate vehicle to deal with all confirmation objections by multiple parties (on similar issues) and, as such, is the most economical use of judicial resources.   A different result could open the floodgates to piecemeal litigation by enabling parties across the myriad other classes in the Plan to bring 3013 motions with respect to their own claims and classification.[15]   The Supporting Parties' attempt to piggyback onto the 3013 Motion to marshal their own grievances regarding the Plan's treatment of Revenue Bond Claims proves this point.   Indeed, were the Court to permit the 3013 Motion to proceed, for example, the UCC could follow this script by attempting to repackage its UCC Priority Objection as a Rule 3013 motion on the theory that GO claims do not have priority and therefore should be classified the same as GUCs.

33.    The Oversight Board should be afforded the opportunity to present the Plan and stakeholders should have the opportunity to assess and vote on the Plan before the Oversight Board is required to, if necessary, defend confirmation objections. Delaying consideration of the objections in the 3013 Motion causes no prejudice to Movants as their rights to object to classification and treatment as set forth in the 3013 Motion and Partial Joinders at confirmation are preserved.

34.    Finally, the Oversight Board has already sought to "hit the 'pause' button" on the disclosure statement hearing and related deadlines as the Oversight Board works in tandem with the government to combat the effects of the COVID-19 pandemic on the people and economy of Puerto Rico.  The Oversight Board will submit a status report on these issues on May 1, 2020, but, until that time, and due to the evolving nature of the situation (and the determination of whether

---

[15]  *See Objection to "Title III Joint Amended Plan of Adjustment of the Commonwealth of Puerto Rico, et. al." by Sucesión Pastor Mandry Mercado, Excepting Javier Mandry Mercado* [ECF No. 12701] (objecting to the Plan on the basis, among other things, that a claim under the Takings Clause of the Fifth Amendment of the U.S. Constitution cannot be classified with GUCs).

the Plan needs to be amended), it is an inefficient use of judicial resources for the confirmation

issues in the 3013 Motion to go forward.

### B.   The 3013 Motion and Partial Joinders are "Unfair Discrimination" Confirmation Objections Disguised as Objections to Classification

35.     Movants' true complaint in the 3013 Motion and Partial Joinders is not with the

separate *classification* of Retirees and Movants' claims, but the different *treatment* of these claims

under the Plan.  3013 Motion ¶ 2.  The UCC does not hide this fact, making it clear it requests that

GUCs "receive no less than the Oversight Board proposes to pay to Retirees."  *Id.*  Put simply, the

UCC would not be pursuing their 3013 Motion based on separate classification if the GUC class

were receiving the same or better treatment than the Retirees' class.

36.     The Supporting Parties double down on this tactic.  On the one hand they assert the

Revenue Bond Claims are correctly classified in separate classes under the Plan because, they

assert, they have security and priority interests (even though such rights are the subject of ongoing

litigation).  Assured Partial Joinder ¶ 2; Ambac Partial Joinder ¶ 3.  On the other hand, they claim

that because these classes of claims are provided the same *treatment* as GUCs, they should be

classified the same as GUCs (if it turns out they are unsecured), and, in turn, should be classified

the same as Retiree Claims and provided the same recoveries.  Assured Partial Joinder ¶ 3; Ambac

Partial Joinder ¶ 3.

37.     Such objections to the Plan based on unequal *treatment* of equally ranking or

situated classes of claims are poorly-disguised "unfair discrimination" objections under

Bankruptcy Code section 1129(b).[16]  Unfair discrimination is a quintessential confirmation

objection because it would only come to fruition if the Oversight Board needs to rely on the

---

[16]   *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) ("Generally speaking, this standard ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated classes.").

cramdown provisions of section 1129(b)—an outcome not knowable at this time.  *See, e.g.*, *In re Rexford Props. LLC*, 558 B.R. 352, 365–66 (Bankr. C.D. Cal. 2016) (determining an unfair discrimination claim does not arise "until and unless a debtor seeks confirmation of a plan notwithstanding its failure to satisfy Bankruptcy Code section 1129(a)(8) (every class either accepts the plan or is not impaired).").  Moreover, whether a plan discriminates unfairly is one of a myriad of issues the Court would need to asses under 1129(b), and thus consideration of this issue should be done in conjunction with all confirmation issues.

38.     Each Movant ignores the obvious.  Namely, the unfair discrimination provision in Bankruptcy Code section 1129(b)(1)[17] would have no application or meaning if the plan proponent were not allowed to classify substantially similar claims separately.  Thus, their entire argument is dead on arrival.

39.     Moreover, section 1122, the only operative Bankruptcy Code section in Bankruptcy Rule 3013 that is also incorporated into PROMESA, is not even implicated by the 3013 Motion or the Partial Joinders.  As explained by the Tenth Circuit in *Minerals Technologies, Inc. v. Novinda Corp. (In re Novinda Corp.)*, "§ 1122 deals with the creation of classes of claims, while § 1129(b) deals with the treatment of those classes."  585 B.R. 145, 154 (B.A.P. 10th Cir. 2018).  The Tenth Circuit observed that, pursuant to section 1122, "a plan proponent cannot place dissimilar claims together in the same class . . . [b]ut § 1122(a) does not require the converse—that similar claims be placed in the same class.  Accordingly, courts generally permit separate classification of similar

---

[17] Bankruptcy Code section 1129(b)(1) provides:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan

claims, subject to certain caveats, the most prominent of which is the axiom that separate classification may not be used to gerrymander the vote on plan confirmation. Bankruptcy courts have consistently adhered to this 'one clear rule' . . . ." *Id.* Here, Movants' arguments do not even implicate section 1122 as they do not allege any class includes claims not "substantially similar" to each other (and thus Bankruptcy Rule 3013 is not even properly invoked under its plain language). Similarly, the UCC does not advance an argument that the separate classification of the Retirees' claims and GUCs' claims was done for the purpose of gerrymandering the vote on a plan—nor could it because any allegation as to how parties may vote on the Plan at this time is mere conjecture.[18] Accordingly, the Court should deny the 3013 Motion and partial joinders without prejudice to reinstatement at confirmation.[19]

### C.  The Issues Asserted in the 3013 Motion are Neither Obvious Nor Central for Confirmability

40.    The UCC argues, citing *Colliers*, "there are occasions when classification issues may be so obvious and their resolution so central to the confirmability of the plan that the question of proper classification is best addressed prior to consideration of a plan at a confirmation hearing." 3013 Motion ¶ 4 (citing Alan N. Resnick & Henry J. Sommer, 9 *Collier on Bankruptcy* ¶ 3013.01 (16th ed.)). As a threshold response, neither *Colliers* nor Rule 3013 can require the Court to overrule PROMESA sections 301(e), 312 and 313 and tell the Oversight Board what plan to propose if the Oversight Board does not request such a ruling. Neither can *Colliers* nor Rule 3013

---

[18]  The Assured Partial Joinder argues at length the Plan's creation of numerous GO Bond classes is an attempt to gerrymander the vote. Assured Partial Joinder ¶ 23. This argument has no relevance to, and is outside the scope of, the 3013 Motion because there is no allegation that the two classes at issue, Retiree Claims and GUCs, were separately classified for the purpose of gerrymandering. The Oversight Board reserves all rights to respond to such arguments on the merits when raised in an appropriate posture and when ripe for consideration, including that the separate classification is justified based on the different litigation risks associated with each series of bonds.

[19]  Regardless, the PSA signed by the Oversight Board and certain holders of GO Bonds and PBA Bonds (60% of such outstanding bonds) would provide the Oversight Board with at least one impaired accepting class and it would have no need to separately classify the Retirees.

overrule the Constitution and empower this Article III Court to issue an advisory ruling.  Even if

the UCC's motion were based on separate classification and not unfair discrimination, this is not

such an "occasion." As set forth below, this is not a chapter 11 case and there are novel issues

relating to separate classification under PROMESA that may affect all parties, not just Retirees

and Movants.  The interpretation of PROMESA and applicability of First Circuit law is far from

"obvious," and certainly does not warrant piecemeal litigation in advance of the confirmation

hearing.

## II.    THE AMENDED PLAN PROPERLY CLASSIFIES RETIREES AND GENERAL UNSECURED CLAIMHOLDERS[20]

### A.    Section 1122 Does Not Dictate Which Claims Must be Classified Together

41.    The clear language of section 1122 only provides substantially similar claims may

be classified together.  It does not dictate which claims, if any, must be classified together (nor

does any other section of the Bankruptcy Code or PROMESA).  *See Novinda,* 585 B.R. at 153-54;

*Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 661

(6th Cir. 2002) (citing *In re U.S. Truck Co., Inc.*, 800 F.2d 581, 585 (6th Cir. 1986)).

42.    Given the absence of direction from the Bankruptcy Code on *separate*

classification, courts recognize a plan proponent has wide latitude in determining whether to

classify together similar claims.  *See In re Dow Corning Corp.,* 280 F.3d at 661 ("Congress

incorporated into section 1122 . . . broad discretion to determine proper classification according to

the factual circumstances of each individual case."); *In re Greate Bay Hotel & Casino, Inc.,* 251

B.R. 213, 224 (Bankr. D.N.J. 2000) (citing *In re Holywell Corp.,* 913 F.2d 873, 880 (11th

---

[20]   Because the Partial Joinders are standalone motions, if they are not denied without prejudice to reinstatement at confirmation, they should be set for an independent briefing schedule.  This objection does not address the substantive arguments they make beyond the scope of the 3013 Motion.  The Oversight Board reserves all rights to contest the merits of the Partial Joinders.

Cir.1990)) ("most courts agree that a proponent has 'considerable discretion to classify claims and interests according to the facts and circumstances of the case.'"); 7 *Collier on Bankruptcy* ¶ 1122.03 ("Since Congress obviously intended that the proponent of a plan have the flexibility to separately classify certain general unsecured claims, and thereby leave such claims unimpaired if such treatment was advantageous to the debtor, the argument that all claims of the same legal nature *must* be included within one class is not persuasive."). Under PROMESA section 312(a), that discretionary latitude is granted solely to the Oversight Board, who is the exclusive party authorized to propose a plan. PROMESA § 312(a).

43.    As explained above, the unfair discrimination test in Bankruptcy Code section 1129(b)(1) would serve no purpose and have no application if similar claims could not be classified separately. It is effectively a statutory grant of permission to classify substantially similar claims separately as long as there is no unfair discrimination against the class that rejects. Moreover, it shows the plan proponent can discriminate between treatments of substantially similar claims as long as the discrimination is not unfair.[21] In chapter 11 cases, the standard for allowing separate classification is whether there is a business justification. *See infra* n.22. In PROMESA Title III cases, there may be a requirement to show a governmental justification. Here, it is self-evident – governmental retirees cannot and should not be compelled to starve or lack roofs over their heads.

---

[21] By its terms, section 1129(b)(1) "prohibits only unfair discrimination, not all discrimination." *In re Aztec Co.*, 107 B.R. 585, 588-89 (Bankr. M.D. Tenn. 1989). Indeed, it is "necessarily inherent in the term 'unfair discrimination' . . . that there may be 'fair' discrimination in the treatment of classes of creditors." *In re Simmons*, 288 B.R. 737, 747-48 (Bankr. N.D. Tex. 2003) (citing 7 Collier on Bankruptcy ¶ 1129.04[3] (15th ed. 2002)); *see also In re Crosscreek Apartments, Ltd.*, 213 B.R. 521, 537 (Bankr. E.D. Tenn. 1997) ("[D]iscrimination in the treatment of classes is permissible so long as it is not 'unfair.'"). In the context of settlements under chapter 9, "if each of the settlements in the plan is reasonable, then the resulting discrimination in the plan must be fair." *In re City of Detroit*, 524 B.R. 147, 257 (Bankr. E.D. Mich. 2014).

44.     Virtually every circuit that has considered whether there is some limiting principle on a debtor's ability to separately classify claims has adopted a permissive approach.[22]   For example, in *In re U.S. Truck Co.,* 800 F.2d at 587 the Sixth Circuit, after delving into the legislative history of section 1122 and distinguishing it from its counterpart provisions in the Bankruptcy Act, permitted the separate classification of union claims from other unsecured claims.   Noting that in pre-Code cases "courts were given broad discretion to determine proper classification according to the factual circumstances of each individual case," the Sixth Circuit found that the union's "different stake in the future viability of the reorganized company" warranted separate classification.   *Id.* at 586-87.   Similarly, the Second Circuit in *In re Chateaugay Corp.*, 89 F.3d at 949 noted "classification is constrained by two straight-forward rules: Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason." The Second Circuit found that "promoting harmonious labor relations" was a legitimate business reason to categorize separately the claims of unpaid workers (who were given priority status) and

---

[22]  *See Aetna Cas. Corp. v. Clerk, U.S. Bankr. Court, N.Y. (In re Chateaugay Corp.)*, 89 F.3d 942 (2d Cir. 1996) (for purposes of Chapter 11 reorganization plan, similar claims may be classified separately for legitimate reasons); *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) (agreeing "with the general view which permits the grouping of similar claims in different classes" so long as the classification of claims or interests is reasonable); *Travelers Ins. Co. v. Bryson Props, CVIII (In re Bryson Props., XVIII)*, 961 F.2d 496, 502 (4th Cir. 1992) (separate classification "may only be undertaken for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims" and explaining that § 1122 "grants some flexibility in classification of unsecured claims"); *Bank of N.Y. Tr. Co. v. Official Unsecured Creditors' Comm. (In re Pacific Lumber Co.),* 584 F.3d 229, 251 (5th Cir. 2009) ("Under the Bankruptcy Code, classes must contain 'substantially similar' claims, but similar claims can be separated into different classes for 'good business reasons.'"); *In re Dow Corning Corp.,* 280 F.3d at 662 (finding that "section 1122(a) should not be viewed as prohibiting a plan proponent from placing substantially similar claims in different classes regardless of whether it has proven a 'legitimate reason' for doing so."); *In re Woodbrook Assocs.,* 19 F.3d 312, 317 (7th Cir. 1994) (noting a debtor "possesses considerable, but not complete, discretion to classify claims" and citing favorably the "one clear rule" against affirmative gerrymandering); *Lumber Exch. Bldg. Ltd. P'ship v. Mutual Life Ins. Co. of N.Y. (In re Lumber Exch. Bldg. Ltd. P'ship),* 968 F.2d 647, 649 (8th Cir. 1992) (adopting the test that "a plan may classify trade creditors separately from, and treat them more generously than, other creditors if doing so is necessary to a debtor's ongoing business."); *Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC),* 465 B.R. 525, 536 (B.A.P. 9th Cir. 2012), *aff'd,* 578 F. App'x 644 (9th Cir. 2014) ("if the claims are substantially similar, the plan may place such claims in different classes if the debtor can show a business or economic justification for doing so."); *In re Novinda Corp.*, 585 B.R. at 153-54 (permitting separate classification where debtor has shown a "reasonable basis"); *In re Holywell Corp.,* 913 F.2d at 880 (adopting the Sixth Circuit's rule from *U.S. Truck*).

those of paid workers (who received payment from surety on pre-petition worker's compensation claims and were treated as unsecured creditors under the plan).  *Id.* at 951.

45.     Chapter 9 courts that have addressed the issue have uniformly permitted separate classification of pensioners and general unsecured claimholders.[23]  Further, in many municipal bankruptcies retirees were not even classified in plans of adjustment and "rode through" the cases unimpaired.[24]   *Detroit* illustrates that a more deferential standard to debtor classification determinations is warranted due to the overarching purpose of municipal bankruptcy.  There, the debtor classified the police and fire pension claimants in one class, other general pension claimants in a different class, and other unsecured claimholders (of equal priority with pension claimants) in separate classes.  *See In re City of Detroit*, 524 B.R. at 246.  The plan of adjustment, however, yielded far lower recoveries to certain other unsecured claimholder classes, including two that rejected the plan and asserted unfair discrimination in favor of the pension classes.  Addressing the issue of separate classification, the chapter 9 court followed the Sixth Circuit's flexible approach and observed "Congress incorporated into section 1122 . . . broad discretion to determine proper classification according to the factual circumstances of each individual case.   A classification scheme satisfies section 1122(a) of the Bankruptcy Code when a reasonable basis exists for the classification scheme, and the claims or interests within each particular class are

---

[23]   *See, e.g., In re City of Detroit*, 524 B.R. 147 (approving classification and different treatment of pension claims, at approximately 60% recoveries, and GUCs, at approximately 13% recoveries); *see also*, *In re City of Stockton*, 526 B.R. 35 (Bankr. E.D. Cal. 2015) (confirming plan providing nearly 100% recovery to pensions and 1% recovery to GUCs because the elimination of certain post-employment benefits showed pensioners were "sharing the pain"); *In re Cty. of Orange*, ORDER CONFIRMING [288-1] PLAN [CHAPTER 9] BY COUNTY OF ORANGE, Case No. 9:94-BK-22272, ECF No. 3418 (May 16, 1996) (confirming plan with no impairment of pension claims); *In re City of San Bernardino*, ORDER CONFIRMING THIRD AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF SAN BERNARDINO, CALIFORNIA, Case No. 6:12-BK-28006, ECF NO. 2164 (FEB. 7, 2017) (same); *In re City of Vallejo*, ORDER CONFIRMING SECOND AMENDED CHAPTER 9 PLAN, Case No. 2:08-BK-26813, ECF No. 1113 (Aug. 4, 2011) (same);

[24]   *See, e.g.*, *In re Jefferson County*, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE CHAPTER 9 PLAN OF ADJUSTMENT FOR JEFFERSON COUNTY, ALABAMA, Case No. 2:11-BK-05736, ECF No. 2248 (Nov. 22, 2013) (pensioners not even listed as creditors for plan purposes).

substantially similar." *Id.* at 245-46 (internal quotation and citation omitted).  In holding that the

plan's different treatment of pension claims and general unsecured claims was confirmable, the

court found that "the City has demonstrated a substantial mission-related justification to propose

a higher recovery to its pension creditors." *Id.* at 257.  It reasoned:

> The City is a municipal service enterprise. Viewed broadly, its mission is to provide
> municipal services to its residents and visitors to promote their health, welfare and
> safety. Its employees and retirees are and were the backbone of the structures by which
> the City fulfills its mission. The City, therefore, has a strong interest in preserving its
> relationships with its employees, in enhancing their motivation, and in attracting
> skilled new employees, consistent with its financial resources. The City has reasonably
> and properly concluded that the discrimination in favor of the pension claims in its
> plan is necessary to its mission. In contrast, the City has no similar mission-related
> investment in its relationships with its other unsecured creditors.

*Id.*  In addition, many if not most of the Retirees in Class 39A under the Plan are among the lowest

income residents of Puerto Rico.  If the Plan were to provide them lesser treatment, it would

nonetheless have to supplement their restructured pension benefits with welfare payments to

ensure their survival.  Their preferred treatment under the Plan accounts for this inescapable reality.

46.     Indeed, the flexible approach that chapter 9 cases have adopted is consistent not

only with the similarities between the goals of chapter 9 and those of PROMESA, but also with

PROMESA's language.  Bankruptcy Code section 1122 only dictates that claims may be classified

in the *same* class only if they are "substantially similar."  PROMESA section 301(e) embellishes

on section 1122 of the Bankruptcy Code and adds that in determining whether claims are

"substantially similar" the Oversight Board "shall consider whether such claims are secured and

whether such claims have priority over other claims."  PROMESA § 301(e).  The Oversight Board

is tasked with making this determination and there are no other limitations under PROMESA on

its ability to *separately* classify claims. PROMESA section 301(e) provides the Oversight Board

with the flexibility—subject only to *considering* the priority and security status of the claims

PROMESA mandates it should take into account—to determine what claims are "substantially similar" for purpose of classification. If security and priority were the only acceptable parameters for determining whether claims are "substantially similar" for classification purposes, PROMESA would have made that clear. In any case, the UCC is not complaining about classification of dissimilar claims in a single class in violation of section 1122, it is complaining about disparate treatment between separate classes that it asserts have equal rights. As explained in this response, the Oversight Board has reasonably determined the claims of Retirees and GUCs merit both separate classification and treatment.

47.    Applying the widely adopted rule on separate classification demonstrates the separate classification of Retirees from GUCs and Revenue Bond Claims is justifiable. First, the existence of other impaired accepting classes will show separate classification of these classes was done for the purpose of gerrymandering votes on the Plan. Second, as this Court has recognized in the ERS context,[25] the Commonwealth has "a substantial mission-related justification to propose a higher recovery to its pension creditors." The rationale in *Detroit* that the Commonwealth's "retirees are and were the backbone of the structures by which the City fulfills its mission" is similarly applicable here. *Detroit*, 524 B.R. at 257.

**B.    The First Circuit's Purported "Strict Approach" to Classification Does Not Govern the Application of Section 1122 in PROMESA**

48.    The UCC and Supporting Parties predicate their argument on the First Circuit's opinion in *Granada Wines,* hailing it as the supposed "seminal case . . . regarding the appropriate classification of claims." 3013 Motion ¶ 19. According to Movants, unlike the flexible classification rules espoused in other circuits, the First Circuit "adopted a strict approach, namely,

---

[25]    *See Memorandum Opinion and Order Denying Renewed Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Appointment as Trustees under 11 U.S.C. § 926*, dated January 7, 2020 [Case No. 17-BK-3566-LTS, ECF No.763] (quoting *Detroit* favorably).

that all claims of equal legal priority must be placed in the same class, subject to the administrative convenience exception." *Id.* ¶ 21 (citing *In re Barney & Carey Co.*, 170 B.R. 17, 22 (Bankr. D. Mass. 1994)). Movants' reliance on *Granada Wines* is misplaced. As explained above, *Granada Wines* did not involve a plan having separate classification. It involved the artificial cap on the multi-employer plan withdrawal liability claim. Separate classification was a hypothetical appellant raised. The First Circuit does not once mention Bankruptcy Code section 1122, which makes sense as section 1122 deals only with what can be classified in the same class, not whether similar claims may be classified in different classes. *Granada Wines* derives its *dicta* from pre-Bankruptcy Code case law without examination of the differences between section 1122 and the counterpart provisions in Chapter X of the Bankruptcy Act of 1898, as amended. Notably, in these Title III cases, the First Circuit has already announced it is not bound by its *dicta*. *Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 872 F.3d 57, 62 (1st Cir. 2017). Moreover, this *dicta* was not even on point as it occurred within the context of chapter 11, not chapter 9 and certainly not PROMESA Title III.

49.   The different statutory language is clear. Section 197 of the Bankruptcy Act, 11 U.S.C. § 597 (repealed 1978), in pertinent part provided:

> "For the purposes of the plan and its acceptance, the judge shall fix the division of creditors and stockholders into classes according to the nature of their respective claims and stock."

11 U.S.C. § 597 (repealed 1978).

In contrast. Bankruptcy Code section 1122 provides:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

50.     In addition to the statute having changed, Chapter X did not include the equivalent of Bankruptcy Code section 1129(b)(1) imposing the unfair discrimination test for separate classifications, implicitly showing separate classification of substantially similar claims is allowed.

51.     Moreover, *Granada Wines* quotes a very odd passage from a Chapter X decision. It cites *In re Los Angeles Land & Investments, Ltd.,* 282 F. Supp. 448, 453 (D. Haw. 1968), *aff'd,* 447 F.2d 1366 (9th Cir.1971) (quoting *In re Scherk v. Newton,* 152 F.2d 747, 751 (10th Cir. 1945)), for the proposition that: "all creditors of equal rank with claims against the same property should be placed in the same class."

52.     The foregoing passage is odd because it refers to classifying together creditors having "claims against the same property."  In other words, *Scherk* provided the rule for classifying secured claims.  Thus, *Granada Wines* not only took its classification *dicta* from Bankruptcy Act Chapter X, it took it from a decision providing the rule for classifying secured claims.  Needless to say, Bankruptcy Code sections 1122 and 1129(b)(1), together with PROMESA render the *dicta* completely inapplicable.

53.     Significantly, the First Circuit made clear in *Granada Wines* (at 46) it was dealing with a plan that did not have separate classification.[26]  As a result, its opinion relating to separate classification is not binding on this Court because it is *dicta* going beyond the scope of what was

---

[26]  In the lower court case, *In re Granada Wines, Inc.*, 26 B.R. 131 (Bankr. D. Mass. 1983), the bankruptcy court never once dealt with the issue of separate classification (because the subject claims were not separately classified).  Nor did it opine on or mention Bankruptcy Code section 1122.  Instead, the bankruptcy court correctly held that, under Bankruptcy Code section 1123(a)(4), claims within the *same* class must be given the same treatment.  *Id.* at 134.

essential to the resolution of the case.[27]  *See Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 972 F.2d 453, 459 (1st Cir. 1992) (defining *dicta* as "observations relevant, but not essential, to the determination of the legal questions then before the court."); *Associated Press v. Nat'l Labor Relations Bd.*, 301 U.S. 103, 132 (1937) ("[c]ourts deal with cases upon the basis of the facts disclosed, never with nonexistent and assumed circumstances.").

### C.     Courts in This District Do Not Apply the *Granada Wines* Approach

54.     Perhaps in recognition of the non-binding nature of *Granada Wines*, at least one court in this district has adopted the same approach to section 1122(a) applied in other circuits.  In *National Paper*, unsecured claimholders were placed in distinct classes depending on the size of their claims.  *In re Nat'l Paper & Type Co. of P.R.*, 120 B.R. 624, 626 (D.P.R. 1990).  Classes with smaller claims were to be paid at more rapid rates than creditors with larger claims.  The debtor argued that the classifications were reasonable because they were based on the size of the claim and were not aimed primarily to manipulate class voting.  *Id.* at 626.  The District Court of Puerto Rico agreed and adopted the Third Circuit's approach in finding that "classifications in this case are justified because they foster the continued success of this business."  *Id.* (citing *In re Jersey City Med. Ctr.*, 817 F.2d at 1061).  In doing so, the District of Puerto Rico expressly adopted the interpretation of section 1122(a) that "does not require that similar claims must be grouped together, but merely that any group created must be homogenous."  *Id.* (citing *Barnes v. Whelah*, 689 F.2d 193, 201 (D. Cir. 1982)).  Curiously, although the *Granada Wines* case was cited by the court, its proposition that claims of the same legal character must be placed in the same class was never examined.  Indeed, by allowing unsecured claims of the same legal character

---

[27]If the Court determines that *Granada Wines* is binding regarding classification under section 1122, the Oversight Board reserves its rights to demonstrate at confirmation that separate classification of Retiree Claims and GUCs nevertheless meets this test.

to be placed in distinct classes based on the size of such claim, the District of Puerto Rico appears to have determined *Granada Wines alleged* strict classification standard is not binding and rejected it in favor of the "business justification" standard utilized by other circuits.

55.     More recently, the U.S. District Court for Puerto Rico permitted separate classification so long as it was not done for the purpose of gerrymandering.  *In re Manuel Mediaviavilla, Inc*., No. 13-2800 (MCF), 2015 WL 3780463, at *6 (Bankr. D.P.R. June 16, 2015). There, a creditor alleged the debtor had classified government unsecured claims and GUCs separately for the sole purpose of remaining in the "good graces" of the GUCs because confirmation was dependent on their support.  *Id.*  The court relied exclusively on the statutory language of § 1122 and § 1129 and not on *Granada Wines*.  Ultimately, the court observed that the debtor had already obtained a different impaired accepting class and therefore did not need to gerrymander the classes at issue to cramdown the plan.  *Id.*  Because the separate classification of the claims was not done for the purpose of gerrymandering, the court permitted the classification scheme.  *Id.*  This decision is in line with "one clear rule" observed by the Tenth Circuit in *Novinda* that separate classification is generally permitted if not done for the purposes of gerrymandering. *See also Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture),* 995 F.2d 1274, 1279 (5th Cir. 1991) (holding that one clear rule has emerged from § 1122(a) case law: "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan").

56.     The UCC relies heavily on *In re Bjolmes Realty Trust*, 134 B.R. 1000 (Bankr. D. Mass. 1991), to support application of the *Granada Wines'* approach.  But, the UCC fails to mention the *Bjolmes* court *permitted* separate classification of a deficiency claim and general unsecured claims—even where the debtor acknowledged that the separate classification enabled it

to obtain an impaired accepted class.[28]  Although the court did not consider whether the *Granada Wines'* decision may have been *dicta*, it did note that *Granada Wines'* reliance on pre-code cases was "confusing" because the Bankruptcy Act had different rules regarding classification in Chapter X and XI.  *Id.* at 1003.  It further observed that, while the House and Senate Reports indicate that section 1122 codifies "current law," the legislative history fails to note that classification rules depended on whether the case was a case under Chapter X, XI or XII of the Bankruptcy Act.[29]  Ultimately, the court did not need to determine whether *Granada Wines* was correctly decided because it was persuaded that the deficiency claimant's right to make an 1111(b) election constituted a "difference in rank" that permitted separate classification (*id.*) and meant that the gerrymandering was not in "bad faith."  *Id.* at 1004.

57.  Accordingly, even lower courts in the First Circuit have either found *Granada Wines* inapplicable, declined to follow it, or expressed concerns as to its reasoning and did not apply its "strict" approach to permit the debtor's classification scheme.

[*Remainder of this page intentionally left blank*]

---

[28]  *Id.* at 1002 ("In light of the size of the FDIC claim and its opposition to the plan, the need to obtain the acceptance by one class is the obvious reason that the Debtor seeks to separate trade claims into their own class. The Debtor is sanguine concerning acceptance of the plan by the trade but not by the FDIC.").

[29]  For secured claims, Chapter X, required that "[a] creditor of equal rank with claims against the same property should be placed in the same class." Bankruptcy Act § 197; 11 U.S.C. § 597 (repealed 1978).  Chapter XI, on the other hand, permitted the plan to "include provisions for treatment of unsecured creditors on a parity with each other, or for the division of such debts into classes and the treatment thereof in different ways."  Bankruptcy Act § 357(1), 11 U.S.C. § 757(1) (repealed 1978).

WHEREFORE the Debtors respectfully request the Court deny the 3013 Motion without prejudice to reinstatement at confirmation, and grant the Oversight Board such other and further relief as is just.

Dated: April 13, 2020
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Brian S. Rosen
Paul V. Possinger
Ehud Barak
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
as representative for the Debtors*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial
Oversight and Management Board
as Representative for the Debtors*