# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III |
| as representative of | Case No. 17-BK-3283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | |
| In re: | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III |
| as representative of | Case No. 17-BK-3566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE COMMONWEALTH OF PUERTO RICO, | |
| Debtor. | |

## OBJECTION BY THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH THE MEMBERS OF THE SPECIAL CLAIMS COMMITTEE, TO THE RENEWED MOTION OF UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO FOR RELIEF FROM THE AUTOMATIC STAY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND .................................................................................................................. 4

    I.    The Title III Cases ................................................................................................ 4

    II.   The Proceedings Involving UBS Financial ......................................................... 4

          A.   The ERS Action ......................................................................................... 6

    III.  The *Ultra Vires* Actions ..................................................................................... 7

    IV.  First Lift Stay Motion by UBS Financial ........................................................... 7

    V.   Procedural Status of UBS Financial's Proposed Counterclaims ..................... 10

OBJECTION ...................................................................................................................... 12

    I.    UBS Financial has Failed to Establish That Cause Exists to Lift the Stay ..... 12

          A.   The Interest of Judicial Economy and the Expeditious Economical
               Determination of Litigation for the Parties Favor Continuation of the
               Automatic Stay ......................................................................................... 15

          B.   The Impact of Lifting the Automatic Stay and "Balance of the Hurt" Favors
               ERS ........................................................................................................... 17

          C.   Lifting the Automatic Stay Will Not Result in a Partial or Complete
               Resolution of the Issues ........................................................................... 18

          D.   UBS Financial's Request Would Interfere with the Bankruptcy Proceeding ....... 20

          E.   The Non-Bankruptcy Proceeding Has Progressed Significantly, But Not on
               UBS Financial's Proposed Counterclaims ........................................... 21

CONCLUSION .................................................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 234-6 West 22nd St. Corp.*,
214 B.R. 751 (Bankr. S.D.N.Y. 1997) .....................................................................12

*In re Breitburn Energy Partners LP*,
No. 16-10992, 2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017).....................12

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
217 F. Supp. 3d 508, 525 (D.P.R. 2016).........................................................12, 13, 14

*In re Cummings*,
221 B.R. 814 (Bankr. N.D. Ala. 1998) .....................................................................18

*Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
939 F.3d 340 (1st Cir. 2019)...................................................................13, 18, 19

*In re Jefferson Cty, Ala.*,
491 B.R. 277 (Bankr. N.D. Ala. 2013) .....................................................................12

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*,
474 U.S. 494 (1986)..................................................................................................12

*Montalvo v. Autoridad de Acueducto y Alcantarillados (In re Montalvo)*,
537 B.R.128 (Bankr. D.P.R. 2015) ...........................................................................12

*Soares v. Brockton Credit Union (In re Soares)*,
107 F. 3d 969 (1st Cir. 1997).....................................................................................12

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
907 F.2d 1280 (2d Cir. 1990).............................................................................13, 14

*In re Unanue-Casal*,
159 B.R. 90 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994)................................13

**Statutes**

11 U.S.C. § 362(d)(1) ....................................................................................................12

**Other Authorities**

Alan N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 362.03 (16th ed. 2015)............................................................................................................................12

Executive Orders of the Governor of Puerto Rico 2020-23, 2020-029, and
2020-032 ..........................................................................................................................11

Puerto Rico Supreme Court Resolution, dated April 13, 2020, EM-2020-008 ...........................11

To the Honorable United States District Judge Laura Taylor Swain:

The Special Claims Committee of the Financial Oversight and Management Board for

Puerto Rico (the "**Special Claims Committee**") as the Debtors' representative pursuant to

section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act

("**PROMESA**"),[2] respectfully submits this objection (the "**Objection**") to the Renewed Motion

of UBS Financial Services Incorporated of Puerto Rico for Relief from the Automatic Stay (Dkt.

No. 853) (the "**Second Lift Stay Motion**"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.        UBS Financial Services Incorporated of Puerto Rico's ("**UBS Financial**") Second

Lift Stay Motion is a premature attempt to undermine the Commonwealth Court's authority and

ability to decide the procedural question of whether UBS Financial's proposed Counterclaims are

procedurally proper in the ERS Action in the Commonwealth Court.[3]

2.        The ERS Action was commenced in 2011 by certain individual retirees of ERS.

Thereafter, ERS joined the ERS Action as a co-plaintiff.  Eight years later, for the first time in

the ERS Action, in response to the Fourth Amended Complaint that asserted no new claims

against UBS Financial, UBS Financial informed the Commonwealth Court that it intended to

seek permission from this Court to assert proposed counterclaims against ERS.  Those proposed

Counterclaims were not presented to the Commonwealth Court until February 4, 2020, as

permitted by the agreed-upon limited Lift Stay Order entered by this Court.

3.        On March 4, 2020, counsel for ERS and the individual plaintiffs in the ERS

Action filed an Urgent Motion seeking to strike the proposed Counterclaims as procedurally

improper.  This was also contemplated by the Lift Stay Order, which specifically provided: "*The*

---

[2]        PROMESA is codified at 48 U.S.C. §§ 2101-2241.
[3]        Terms not defined in the introductory paragraph are defined in the Background section, herein.

*Commonwealth Court shall have the sole discretion as to any procedural requirements for presenting the counterclaims* and as to any litigation of the counterclaims in that court." *See* Lift Stay Order, ¶ 2 [Dkt. No. 9592]. The Counterclaim Opposition Motion makes clear that UBS Financial's proposed Counterclaims are untimely because: (1) they were not filed in response to the Third Amended Complaint in the ERS Action, filed *prior* to any of the Title III bankruptcy cases and (2) they are improperly conditioned on a determination by either this Court or the Commonwealth Court as to whether the ERS Bonds were validly issued, which is currently the subject of the ongoing *Ultra Vires* Actions, but not the matter currently before the Commonwealth Court.

4.      The Counterclaim Opposition Motion has not yet been decided by the Commonwealth Court. Because of the national emergency declared with respect to COVID-19 in the United States and Puerto Rico, it is our understanding that the Commonwealth Court is effectively closed for non-essential matters. *See, e.g.* Individual ERS Action Plaintiff's Opposition to the Second Lift Stay Motion, at 1 [Dkt. No. 12577].

5.      Notwithstanding this emergency, and as an end-run around the Commonwealth Court's authority to determine the propriety of the proposed Counterclaims in the ERS Action, UBS Financial now seeks affirmative permission from this Court, in the form of relief from the automatic stay, to permit UBS Financial to prosecute the, not yet accepted by the Commonwealth Court, proposed Counterclaims. Undoubtedly, if this Court grants UBS Financial relief from stay, UBS Financial will proceed to serve discovery on plaintiffs in the ERS Action or take other steps in that action that are not permitted until the Commonwealth Court

decides the Counterclaim Opposition Motion and ultimately determines whether to accept the
proposed Counterclaims.[4]

6.      At best, UBS Financial's Second Lift Stay Motion is premature.  Until the
Commonwealth Court determines whether UBS Financial is entitled to prosecute the proposed
Counterclaims and if so, which issues UBS Financial can proceed on, there is no viable reason
for the "extraordinary" relief UBS Financial seeks: relief from the automatic stay.

7.      Even if UBS Financial's Motion was not premature, application of the factors
identified in *Sonnax Industries*, and applied by Courts in this Circuit, compels the conclusion that
relief from stay should not be granted: (i) the relief requested by UBS Financial would not result
in complete or partial resolution of any of the issues in these Title III cases; (ii) UBS Financial's
proposed Counterclaims, if permitted, could very well interfere with the *Ultra Vires* Actions by
raising the *ultra vires* issue for the first time in the ERS Action, resulting in duplicative litigation
and risking the inherent danger of inconsistent rulings; (iii) the interest of judicial economy and
the expeditious and economical determination of litigations favors permitting the ERS Action to
proceed to conclusion and not subjecting the *Ultra Vires* Actions to multiple unknowns by
allowing UBS Financial to newly raise to the Commonwealth Court issues not previously before
it; (iv) the non-bankruptcy proceeding on UBS Financial's proposed Counterclaims has not even
begun, let alone progressed towards trial; and, lastly, (v) the harm identified by UBS Financial's
Second Lift Stay Motion has been mooted by the Lift Stay Order, which allowed UBS Financial
to file its proposed Counterclaims and avoid UBS Financial's time limitations concerns.

8.      In an effort to obfuscate UBS Financial's own gamesmanship, UBS Financial's
Second Lift Stay Motion is rife with incomplete and misleading summaries of the ongoing Title

---

[4]      If UBS Financial has no intention of taking such steps, then there was no reason for it to file the instant
Second Lift Stay Motion *before* the Commonwealth Court ruled on the Counterclaim Opposition Motion.

III Cases to try to establish conflict or overlap, and accusations against the Special Claims

Committee's counsel in the *negotiations* of the Lift Stay Order.  Both of these diversionary

arguments are easily dismissed in favor of the facts:  the parties negotiated the Lift Stay Order

and *all parties* reserved their rights to proceed in light of a number of factors; the

Commonwealth Court has not yet determined whether UBS Financial can prosecute its proposed

Counterclaims in the ERS Action; and, there is no overlap between the ongoing actions except as

*created* by UBS Financial's unclear proposed Counterclaims, which have an assumption of fact

as a threshold to determination.

        9.      As established herein, the automatic stay should not be lifted to permit UBS

Financial to prosecute its proposed Counterclaims in the ERS Action, particularly not before the

Commonwealth Court decides to what extent, if any, it will permit UBS Financial to prosecute

the proposed Counterclaims.

**<u>BACKGROUND</u>**

**I.**      **<u>The Title III Cases</u>**

        10.      On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico

(the "**<u>Oversight Board</u>**") filed a petition in this Court commencing a case under Title III of

PROMESA on behalf of the Commonwealth (the "**<u>Commonwealth Title III Case</u>**"). On May

21, 2017, the Oversight Board filed a petition commencing a case under Title III of PROMESA

on behalf of the Employment Retirement System (the "**<u>ERS</u>**") (the "**<u>ERS Title III Case</u>**," and

together with the Commonwealth Title III Case, the "**<u>Title III Cases</u>**").

**II.**     **<u>The Proceedings Involving UBS Financial</u>**

        11.      In 2008, ERS purportedly issued $3 billion in pension obligations bonds (the

"**<u>ERS Bonds</u>**"). UBS Financial served in numerous roles with respect to the issuance of the ERS

Bonds, including but not limited to: (i) UBS Financial provided consultancy services to design

and facilitate the issuance of an "initial tranche of bonds exclusively in the Puerto Rico market;"[5]

(ii) UBS Financial served as an underwriter of the ERS Bonds; and (iii) UBS Financial and/or its

affiliates sold the ERS Bonds to its investment management clientele.

    12.    Based on UBS Financial's multiple roles with respect to the ERS Bonds, the

following litigations were commenced against UBS Financial:

- Predating any of the Title III Cases, certain individuals and, by an amended complaint, ERS as co-plaintiffs have alleged that UBS Financial and its affiliates committed professional negligence in designing and facilitating issuance of the bonds (i.e., prior to the issuance itself). *See Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico v. UBS Fin. Servs. Inc. of Puerto Rico*, Civ. No. KAC-2011-1067 (803), currently pending in the Commonwealth of Puerto Rico Court of First Instance, San Juan Part (the "**ERS Action**" in the "**Commonwealth Court**").

- The Special Claims Committee commenced an adversary proceeding, alleging that in its capacity as an underwriter of the ERS Bonds, UBS Financial (i) received avoidable transfers and was unjustly enriched by fees it received, and (ii) breached its bond purchase agreement contract. *See Special Claims Committee, et al. v. Barclays Capital, et al.*, Adv. Pro. No. 19-280 (the "**Underwriter Litigation**").[6] The Court stayed the Underwriter Litigation in its entirety. *See* Dkt. No. 8244

- According to the K&K Report, certain third-party investment client "closed-end funds" of UBS Financial and its affiliates brought claims against UBS Financial and those affiliates alleging, among other things, fraud and breach of contract relating to the UBS companies' advice to purchase the ERS Bonds they knew to carry extraordinary risk. At 358-61, 390. These allegations have been lodged through the Financial Industry Regulatory Authority (FINRA) arbitration process. *Id.*

    13.    On this Second Lift Stay Motion, UBS Financial requests that the Court lift the

automatic stay to permit UBS Financial to prosecute newly filed proposed Counterclaims in the

ERS Action in the Commonwealth Court.

---

[5]        *See* Final Investigative Report, Kobre & Kim (Aug. 20, 2018) (the "K&K Report"), p. 209. Documents provided to ERS in discovery confirm UBS Financial's consultancy role.
[6]        All citations herein are to documents and adversary proceedings filed within Case No. 17-03283 (LTS) unless otherwise noted.

A. **The ERS Action**

14.     More than eight years ago, the retirees of ERS filed the ERS Action in the

Commonwealth Court.  Thereafter, ERS joined as co-plaintiff.

15.     The ERS Action seeks damages as a result of, among other things, UBS

Financial's grossly negligent conduct and breach of its fiduciary duties in connection with the

advice provided by UBS Financial to ERS in connection with the issuance of the ERS Bonds.

*See* Counterclaim Opposition Motion (defined herein), ¶ 1 [Dkt. No. 12561-3].

16.     On March 6, 2019, the plaintiffs in the ERS Action filed a Fourth Amended

Complaint. *Id.* ¶ 13. Prior to the filing of the Fourth Amended Complaint, UBS Financial had

answered the operative complaints, participated fully in the action and discovery, and never

asserted or indicated that it would assert counterclaims in the ERS Action.  *Id.* ¶¶ 3-12.

17.     In response to the Fourth Amended Complaint, on March 11, 2019, UBS

Financial filed a Motion in Compliance of Order Filing Motion for Authorization to File Fourth

Amended Complaint, certifying that the Fourth Amended Complaint asserted *no new causes of

action* against UBS Financial. *Id.* ¶ 14. On April 29, 2019, UBS Financial filed its Answer to the

Fourth Amended Complaint. *Id.* ¶ 15. The same day, UBS Financial announced for the first time

that it intended to file counterclaims if it obtained permission from this Court to lift the automatic

stay. *Id.*

18.     After UBS Financial filed its answer to the Fourth Amended Complaint, the

plaintiffs in the ERS Action filed a Motion for Partial Summary Judgment, which has been fully

briefed and submitted to the Commonwealth Court. *Id.* ¶ 19. UBS Financial opposed the motion.

19.     At a status conference in the ERS Action on November 26, 2019, the

Commonwealth Court addressed the scope of the ERS Action, explaining that the ERS Action

concerned issues "as to what representations, if any, UBS made to [ERS] when it sold, marketed,

envisioned or did not envision, the sale of these bonds." *Id.* ¶ 54 (quoting 11/26/19 Hr'g Tr.

35:10-36:1 (Commonwealth Court)). The Court also stated, "There is no mention here that [the

ERS] bonds are wrongly issued, are illegal, whatever. I'm not going to resolve that, the validity

of the bonds. They've already been issued." *Id.* ¶ 55 (quoting 11/26/19 Hr'g Tr. 60:14-63:17

(Commonwealth Court)). Discovery remains ongoing in the ERS Action.

III.   **The *Ultra Vires* Actions**

20.     In adversary proceedings pending before this Court, the Special Claims

Committee and other parties in interest in the Title III Cases allege that the ERS Bonds are *ultra*

*vires*, and seek related relief from holders of the ERS Bonds, among others (collectively, the

"***Ultra Vires* Actions**").[7] UBS Financial is not a party to the *Ultra Vires* Actions.

21.     In these actions, the parties in interest have argued that ERS lacked statutory

authority to issue the ERS Bonds, and thus that the ERS Bonds are null and void under the *ultra*

*vires* doctrine.

22.     Discovery in the ERS *Ultra Vires* Actions is ongoing; and, based on the

scheduling orders recently submitted to the Court, the parties are concluding fact discovery and

proceeding to expert discovery.

IV.   **First Lift Stay Motion by UBS Financial**

23.     On October 8, 2019, UBS Financial filed the *Motion of UBS Financial Services*

*Incorporated of Puerto Rico for Relief from the Automatic Stay* (the "**First Lift Stay Motion**").

*See* Dkt. No. 8823. In the First Lift Stay Motion, UBS Financial sought relief from the

---

[7]      The Ultra Vires Actions include the ERS Bond Objection, Retirees Objection, and ERS Avoidance Actions, as defined at page 6 of the Motion.

automatic stay to file and prosecute counterclaims in the ERS Action.  The Court set the matter

to be heard at its omnibus hearing on December 11, 2019.

24.    The Special Claims Committee represented the Debtors for purposes of UBS

Financial's First Lift Stay Motion.  The Special Claims Committee communicated actively with

UBS Financial in advance of the hearing, ultimately negotiating a form of proposed order.

25.    Despite UBS Financial's transparent attempt to reframe the discussions as

something more than negotiations, counsel to the Special Claims Committee discussed with

counsel to UBS Financial all potential options, including a potential stay of the ERS Action,

potential consolidation of the litigation, or other potential forms of coordination of the various

litigation.  At no time during these non-binding negotiations[8] did the Special Claims Committee

promise UBS Financial that it would move to impose a general stay of the ERS Action, nor did it

promise to take any action with respect to removal of any litigation or treatment of any asset in

the ERS Title III Case.  Rather, the negotiations resulted in a draft stipulation presented to the

Court pursuant to which the Special Claims Committee consented to limited relief from the

automatic stay for UBS Financial to file its proposed Counterclaims in the ERS Action.  *See* Dkt.

No. 12561-6.

26.    On November 26, 2019, counsel to the individual co-plaintiffs in the ERS Action

submitted an objection to the First Stay Relief Motion.  Dkt. No. 9341.  Among other things, the

objectors argued that UBS Financial lacked a procedural right to file counterclaims in the ERS

Action.

---

[8]    It should not need to be stated that ongoing negotiations between multiple parties regarding options for how to address  litigation matters are not binding and are not indications of affirmative promises between the parties. Nevertheless, because UBS Financial has decided to rely on such negotiations as purported evidence of wrongdoing, to be clear, the Special Claims Committee agreed to *consider* the option of staying the ERS Action and discuss such an option with other parties in interest.  At no time did the Special Claims Committee commit to staying the ERS Action and UBS Financial's counsel was fully aware that the Special Claims Committee could not do so without the consent of other parties and input from the Commonwealth Court.

27.     On November 27, 2019, the Special Claims Committee filed a reservation of
rights regarding the First Lift Stay Motion, explaining that it had reached an agreement in
principle with UBS Financial but that in light of the filing of the individual plaintiffs' opposition
it would "work constructively towards a consensual resolution" of the motion, while reserving
"all rights, defenses, and remedies with respect to the Motion."  Dkt. No. 9367.

28.     At the hearing on UBS Financial's First Lift Stay Motion on December 11, 2019,
UBS Financial, the Special Claims Committee, and the objectors conferred and reached an
agreement to a form of proposed order.  The Court entered the *Order Granting Limited Relief
from the Automatic Stay to File Counterclaims* (the "**Lift Stay Order**") on December 16, 2019.
Dkt. No. 9592.  The Lift Stay Order provides in part:

> "[T]he automatic stay is hereby lifted solely to allow [UBS Financial] to
> present its proposed counterclaims in [the ERS Action] without waiver of,
> and subject to, any and all defenses.  *The Commonwealth Court shall have
> the sole discretion as to any procedural requirements for presenting the
> counterclaims* and as to any litigation of the counterclaims in that court . . ."

Emphasis added.

29.     The Special Claims Committee understood the agreed-upon language, and related
statements on and off the record on December 11, 2019, to provide that (i) UBS Financial would
present its proposed counterclaims to the Commonwealth Court in the ERS Action, and (ii) the
ERS Action plaintiffs would file an objection and/or motion to strike the filing, which would be
briefed and disposed by the Commonwealth Court.  The Special Claims Committee did not at
that time agree to any further stay relief pending resolution of the individual plaintiffs' objection,
and indeed anticipated that it would review relevant briefings prior to consenting to further relief
from stay, if any.

## V.      Procedural Status of UBS Financial's Proposed Counterclaims

30.      On February 4, 2020, UBS Financial filed its proposed counterclaims in the ERS

Action in the Commonwealth Court (the "**Counterclaims**"), together with an informative motion

arguing that the Counterclaims were properly filed.  *See* Counterclaim Opposition Motion, at pp.

1-2 [Dkt. No. 12561-3].

31.      On March 2, 2020, the plaintiffs in the ERS Action filed an Urgent Motion

Opposing the Filing of Counterclaim and Requesting Its Withdrawal from the Court's Record

(the "**Counterclaim Opposition Motion**").  [Dkt. No. 12561-3].  In the Counterclaim

Opposition Motion, the plaintiffs assert that UBS Financial's proposed Counterclaims are

procedurally improper because: (1) they were untimely filed; and (2) the proposed Counterclaims

incorporate a question of fact that has not yet been determined and is not the subject of the ERS

Action in the Commonwealth Court (*i.e.*, the *ultra vires* issue).  *Id.*

32.      As detailed in the Counterclaim Opposition Motion, in all of UBS Financial's

responses to the Complaints, particularly the Third Amended Complaint, it did not raise any

Counterclaims.  *Id.* ¶ 11.  After certifying that the Fourth Amended Complaint did not assert any

new causes of action against UBS Financial, on April 29, 2019, UBS Financial informed the

parties and the Commonwealth Court for the first time that it intended to assert counterclaims.

*Id.* ¶¶ 14-15.  The Counterclaim Opposition Motion describes, among other things, that this type

of gamesmanship designed to take advantage of the ERS bankruptcy filing in the ERS Action, is

not permitted under Commonwealth procedural law.

33.      The Counterclaim Opposition Motion also explains that UBS Financial's

proposed Counterclaims are all premised on an assumption of fact—that the issuance of the ERS

Bonds was illegal, invalid, or improper, i.e. the *ultra vires* issue—that is not at issue in the ERS

Action in the Commonwealth Court. *Id.* ¶¶ 48-50. As the Commonwealth Court stated at the

November 26, 2019 status conference, the validity of the ERS Bonds is not at issue in the ERS

Action. *See* ¶ 20, *supra*.

34. After the Counterclaim Opposition Motion was filed, it is our understanding that

due to COVID-19, the Commonwealth Court effectively closed for non-essential matters until

May 3, 2020. *See* Executive Orders of the Governor of Puerto Rico 2020-23, 2020-029, and

2020-032 and Puerto Rico Supreme Court Resolution, dated April 13, 2020, EM-2020-008.

35. The Commonwealth Court has not yet decided the Counterclaim Opposition

Motion, determined whether UBS Financial's Counterclaims are procedurally proper, or

provided which issues raised by the Counterclaims, if any, are permitted to proceed. The Lift

Stay Order contemplated the Commonwealth Court determining the procedural propriety of UBS

Financial's Counterclaims. *See* Lift Stay Order, ¶ 2 [Dkt. No. 9592] ("The Commonwealth

Court shall have the sole discretion as to any procedural requirements for presenting the

counterclaims . . . ."); *see also* 12/11/19 Hr'g Tr., at 116-123 (discussion of the Commonwealth

Court retaining discretion to determine the procedural propriety of the proposed Counterclaims).

Thus, the procedural determination can be made by the Commonwealth Court without violating

the automatic stay.

36. Until the Commonwealth Court makes such a determination, it is unclear whether

UBS Financial will even need the automatic stay to be lifted or to what extent it will have claims

to prosecute.

## OBJECTION

### I.    UBS Financial has Failed to Establish That Cause Exists to Lift the Stay

37.    "The automatic stay is among the most basic of debtor protections under

bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)*, 107 F. 3d 969, 975 (1st Cir.

1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503

(1986).  The stay "is extremely broad in scope and, 'aside from the limited exceptions of

subsection (b), applies to almost any type of formal or informal action taken against the debtor or

the property of the estate.'" *Montalvo v. Autoridad de Acueducto y Alcantarillados (In re

Montalvo)*, 537 B.R.128, 140 (Bankr. D.P.R. 2015) (quoting Alan N. Resnick & Henry J.

Sommer, 3 *Collier on Bankruptcy* ¶ 362.03 (16th ed. 2015)); *cf. In re Jefferson Cty, Ala.*, 491

B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is

"the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be

lifted routinely to allow claimants to assert their claims in state court, a municipality will not

have the time, opportunity or ability to confirm a plan").

38.    An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West

22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).  Movants bear the initial burden of

establishing that cause exists for such extraordinary relief (*Brigade Leveraged Capital Structures

Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 525 (D.P.R. 2016)) and when the movants are

not a secured claimholder asserting a lack of adequate protection, that burden is a high one (*See

In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y.

Apr. 14, 2017)).

39.    Bankruptcy Code section 362(d)(1), made applicable by PROMESA section

301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C.

§ 362(d)(1).  "Cause" is not defined in the Bankruptcy Code.  *See In re Unanue-Casal*, 159 B.R. 90, 95-96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994).  Courts in this Circuit consider the factors outlined by the Second Circuit in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990), to determine whether "cause" exists to grant relief from stay. *See Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 939 F.3d 340, 347 (1st Cir. 2019) ("[T]he factors the Second Circuit laid out in [*Sonnax*] provide a helpful framework for determining whether stay relief should otherwise be granted for cause." (internal citations omitted));  *Brigade*, 217 F. Supp. 3d at 518 ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors."); *In re Unanue-Casal*, 159 B.R. at 95–96.

40.    The factors identified by the Second Circuit in *Sonnax Industries* are:

(1)  whether relief would result in partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending [the litigation];

(6) whether the action primarily involves third parties [rather than the debtor];

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether [any] judgment claim arising from the other action is subject to equitable subordination;

(9) whether movants' success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus.*, 907 F.2d at 1286.  No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 518, 529 n.12.

41.     The application of the *Sonnax Industries* factors and consideration of the totality of the circumstances compels the conclusion that UBS Financial failed to meet its high burden to establish that it is entitled to any relief from the automatic stay.  At this stage, as permitted by the Lift Stay Order, UBS Financial has filed its proposed Counterclaims, and adjudication of the procedural propriety of these claims is currently pending in the Commonwealth Court.  None of the *Sonnax Industries* factors support lifting a stay where there is a procedural hurdle to a party's ability to prosecute its claims that is *sub judice* in another court.[9]  Accordingly, UBS Financial's request to lift the stay is, at best, premature.

42.     In this Second Lift Stay Motion, UBS Financial addresses only *Sonnax Industries* factors 1-2 and 10-12, thereby conceding that the remaining factors do not support lifting the stay.  We respond to the factors that UBS Financial highlights in its Motion.

---

[9]     As the Commonwealth Court has not yet determined whether UBS Financial can procedurally prosecute its claims in the Commonwealth Court, it is premature for UBS Financial to seek relief from stay to prosecute such claims.  The Special Claims Committee reserves all rights, arguments, and objections with respect to any application UBS Financial may make for relief from stay once the Commonwealth Court determines whether to permit UBS Financial to proceed with its proposed Counterclaims, and if so, under what conditions.

**A.  The Interest of Judicial Economy and the Expeditious Economical
Determination of Litigation for the Parties Favor Continuation of the Automatic
Stay**

**1.   UBS Financial's Request is Premature**

43.      As UBS Financial concedes in its Motion, its proposed Counterclaims were not

filed in the ERS Action until February 4, 2020 and the Counterclaim Opposition Motion remains

pending before the Commonwealth Court.  Before UBS Financial is entitled to take any steps in

the ERS Action, the Commonwealth Court must determine whether UBS Financial is permitted

to prosecute its Counterclaims and, if so, which Counterclaims and issues are permitted to

proceed.  It is premature—and a waste of this Court's resources—for UBS Financial to seek any

relief from the automatic stay until the Commonwealth Court decides whether UBS Financial's

proposed Counterclaims are procedurally proper or whether any of the proposed Counterclaims

can proceed.  UBS Financial is asking this Court to presumptively lift the automatic stay;

however, it is impossible for the parties to fully address whether that would be proper until the

scope of what UBS Financial will be permitted to prosecute, if anything, is decided by the

Commonwealth Court.  It is in the interest of judicial economy for this Court to wait for the

procedural determination to be made by the Commonwealth Court before determining whether it

would be proper to lift the automatic stay.

**2.   The Interests of Judicial Economy Do Not Support Lifting the Stay**

44.      Even if the Commonwealth Court permits UBS Financial to prosecute some or all

of its proposed Counterclaims, the automatic stay should not be lifted.  The threshold issue for

each of UBS Financial's counterclaims, is whether the issuance of the ERS Bonds was invalid.[10]

UBS Financial's proposed Counterclaims are unclear as to whether UBS Financial is requesting

_____

[10]        In each count of its proposed Counterclaims, UBS Financial asserts "in the event that the Bonds are
determined to be illegal or issued in an invalid manner" then its Counterclaims are triggered. *See UBS Financial
Counterclaims* ¶¶ 33-35, 37, 39, 44-49.

the Commonwealth Court to make that determination or intends to rely on any determination of invalidity in the *Ultra Vires* Actions.[11]  But, in either scenario, the interests of judicial economy and the expeditious determination of litigation do not support lifting the stay.

45.     If UBS Financial intends to rely on the determination of invalidity made in the *Ultra Vires* Actions, then it is not in the interest of expeditiously resolving litigations to lift the automatic stay to permit UBS Financial to prosecute its proposed Counterclaims.  The prosecution of those proposed Counterclaims would not be able to proceed until *after* a determination of the *Ultra Vires* Actions.  Accordingly, lifting the stay would have the effect of *prolonging* the ERS Action rather than paving the way for expeditious resolution.  Moreover, the ERS Action has been ongoing for eight years without counterclaims, significant discovery has been completed, and a partial summary judgment motion has already been filed.  Lifting the automatic stay would require a re-start of the ERS Action (after awaiting a decision in the *Ultra Vires* Action) on certain issues, which is certainly not in the interest of the parties to the ERS Action or the Commonwealth Court.

46.     If UBS Financial intends for the Commonwealth Court to address the *ultra vires* issue it raises for the first time in its proposed Counterclaims, that is also not judicially economical because the *ultra vires* issue was not previously before the Commonwealth Court and raises the potential for duplicative litigation with the *Ultra Vires* Actions.  The Commonwealth Court has been clear that it is not deciding the *ultra vires* issue (*see* ¶¶ 20, 33-34, *supra*); so, lifting the stay to permit UBS Financial to prosecute its Counterclaims including the *ultra vires* issue would require a re-start of discovery on at least that issue.  Moreover, the *ultra vires* issue is already pending and the subject of discovery that is well-underway in the *Ultra*

---

[11]     The proposed Counterclaims argue that the ERS Bonds were issued validly, but assert that UBS Financial alleges certain counterclaims against ERS "to the extent the US District Court (or this Court) determines that the Bonds were not duly authorized." *See UBS Financial Counterclaims* ¶ 29.

*Vires* Actions. Lifting the stay will subject the parties in the *Ultra Vires* Actions to significant

uncertainty because of the possibility of conflicting rulings regarding the validity or invalidity of

the issuance of the Bonds and duplication of resources to litigate the same issue. This lack of

certainty and interruption to ongoing litigation does not support lifting the automatic stay, even if

UBS Financial's request was not premature.

47.      The *ultra vires* issue should continue to be prosecuted in the *Ultra Vires* Actions,

and UBS Financial should not be granted relief from stay to be permitted to duplicate that issue.

**B.  The Impact of Lifting the Automatic Stay and "Balance of the Hurt" Favors
ERS**

48.      UBS Financial will not be harmed if the automatic stay remains in place. UBS

Financial's argument that it would be "harmed" if the stay is not lifted is based, in part, on its

argument that its proposed Counterclaims are compulsory and thus need to be brought now or

waived. This risk of harm is entirely moot as the parties have already resolved this issue.

Pursuant to the Lift Stay Order, UBS Financial was permitted to assert its proposed

Counterclaims in the ERS Action and the Commonwealth Court will determine whether those

Counterclaims are permitted to proceed. Thus, any potential harm to UBS Financial has already

been alleviated.

49.      It is premature for UBS Financial to seek relief from the automatic stay prior to a

determination by the Commonwealth Court as to whether UBS Financial's proposed

Counterclaims were procedurally proper. It is difficult to fully evaluate the harm to ERS without

understanding what, if anything, the Commonwealth Court will permit UBS Financial to

prosecute in the ERS Action, including any issues the Commonwealth Court may permit to

proceed; however, assuming the Commonwealth Court *denies* the ERS Action plaintiffs'

Counterclaim Opposition Motion, ERS will suffer significant harm by being forced to litigate the

*ultra vires* issue in two different venues and jurisdictions, which will require duplicating
resources and risking inconsistent opinions.  ERS will also be harmed by being forced to revisit
discovery in a case that is almost nine (9) years old and where a partial summary judgment
motion is pending.

50.      The cases UBS Financial relies on that lifted the automatic stay to permit the
assertion of compulsory counterclaims are inapposite.  *See* Mot. ¶¶ 45-46 (citing multiple cases).
UBS Financial does not cite to a single case where the Court lifted the automatic stay *before* a
determination of whether the assertion of counterclaims was procedurally proper, as is required
in the ERS Action.  Moreover, UBS Financial does not cite to a single case where the stay was
lifted to permit prosecution of *new issues* in counterclaims where the non-bankruptcy case was
already significantly underway and filed substantially prior to the filing of the bankruptcy cases.

### C.  Lifting the Automatic Stay Will Not Result in a Partial or Complete Resolution of the Issues

51.      In support of its argument on this factor, UBS Financial states that "relief from
the stay will allow complete resolution of the issues in the ERS Action."  Mot. ¶ 39.  However,
the focus of this factor is not on whether relief from stay will permit complete resolution of the
issues in the *non-bankruptcy proceeding*, but whether lifting the stay would "efficiently" resolve
"significant open issues in the [debtors'] bankruptcy case."  *In re Fin Oversight & Mgmt. Bd. for
Puerto Rico*, 939 F.3d at 362; *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998)
(characterizing this factor as whether the non-bankruptcy proceeding would result in "the
resolution of preliminary bankruptcy issues").[12]  UBS Financial does not make any showing that
permitting UBS Financial to prosecute its proposed Counterclaims will resolve (partially *or*

---

[12]      If UBS Financial's interpretation of this factor was correct, then it would always favor granting relief from
the automatic stay because it would permit all non-bankruptcy cases to resolve the issues in those cases.

completely) any significant open issues in the bankruptcy case, let alone doing so efficiently. Accordingly, UBS fails to meet its burden to demonstrate this factor favors lifting the stay.

### 1. UBS Financial Has Not Established That Lifting the Stay Will Fully or Partially Resolve any Issues in the Bankruptcy Proceeding

52.     On this Second Lift Stay Motion, UBS Financial does not identify any issue in the *bankruptcy proceeding* that will be resolved by lifting the stay.  To the extent UBS Financial is relying on the ambiguity in its own proposed Counterclaims as to which court will decide the *ultra vires* issue, under either circumstance this factor does not support lifting a stay: (1) if UBS Financial is *not* asking the Commonwealth Court to determine the *ultra vires* issue, then UBS Financial's prosecution of its proposed Counterclaims will not fully or partially resolve any open issues in the bankruptcy proceeding; however (2) if UBS Financial *is* asking the Commonwealth Court to determine the *ultra vires* issue, there will be limited finality to the issue because it is also being litigated in the *Ultra Vires* Actions (to which there are multiple defendants not parties to the ERS Action).  Lifting the stay would not relieve the Courts in the *Ultra Vires* Actions of the necessity to decide the *ultra vires* issue as applicable to the bondholders and would simply result in duplicate efforts and potentially conflicting outcomes.  That is not the purpose of lifting the automatic stay and counsels in favor of leaving the stay in place.

### 2. Lifting the Stay Will Not *Efficiently* Resolve Any Issues

53.     For this factor to weigh in favor of lifting the stay, it must also be more efficient to resolve the issue in the non-bankruptcy proceeding. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 939 F.3d at 362. It is not. The *Ultra Vires* Actions have been litigating the *ultra vires* issue for more than a year and are nearing the end of fact discovery, whereas this issue would be entirely new to the Commonwealth Court.  Assuming *arguendo* that UBS Financial's proposed Counterclaims can overcome the procedural hurdles, requesting that the

Commonwealth Court make a determination on the validity of the bonds would introduce

uncertainty to the *ultra vires* issue by unavoidably risking duplicative proceedings involving the

same or similar issues between different courts and give rise to the inherent danger of potentially

inconsistent rulings. Accordingly, this factor does not support lifting the automatic stay.

### D.  UBS Financial's Request Would Interfere with the Bankruptcy Proceeding

54.    The procedural status and substantive claims in the cases highlighted by UBS

Financial in this Second Lift Stay Motion show that there is no significant overlap between the

ongoing cases.  Most specifically:

- **ERS Action in the Commonwealth Court:** Breach of Fiduciary Duty claim against
  UBS Financial.  The Commonwealth Court has stated on the record that there is no
  overlap ("This case, the controversy I have to resolve is not the same as the one in the
  Federal Court.") and will not decide the *ultra vires* issues ("COURT:  . . . There's no
  mention here that those bonds are wrongly issued, are illegal, whatever. I'm not going to
  resolve that, the validity of the bonds. They've already been issued.").   ¶¶ 20, 33-34,
  *supra*.

- ***Ultra Vires* Actions:** These clawback actions center on the *ultra vires* issue regarding the
  invalidity of the bonds.

- **Underwriter Action:** This action is currently stayed; so, to the extent there is overlap
  with the ERS Action in the Commonwealth Court it is does not impact the analysis.

UBS Financial concedes that its proposed Counterclaims create a connection and interference

between the ERS Action in the Commonwealth Court and the *Ultra Vires* Actions because UBS

Financial's proposed Counterclaims incorporate the *ultra vires* issue.  Without those

Counterclaims, the Commonwealth Court has already confirmed that there is no duplication

between the proceedings.  UBS Financial, however, is attempting to use the existence of the Title

III Cases, to slow the progress and avoid a summary judgment ruling in the ERS Action.  To do

so, they are now seeking to assert in the ERS Action the proposed Counterclaims which could

introduce overlap.  As is clear from UBS Financial's Motion, its goal here *is not* to prosecute its

Counterclaims in the ERS Action, but to stay the ERS Action *entirely* despite the years of

litigation progress that has been made, by asserting proposed Counterclaims at this late stage.

UBS Financial's *creation of overlap* for the purpose of obtaining relief from stay (or removal

and a stay of the underlying proceeding), is an attempt to weaponize the bankruptcy proceedings

and procedures to avoid adverse rulings.  Such actions do not support lifting the automatic stay.

### E.  The Non-Bankruptcy Proceeding Has Progressed Significantly, But Not on UBS Financial's Proposed Counterclaims

55.     The eleventh factor outlined in *Sonnax Industries* considers whether the non-

bankruptcy proceeding has progressed to the point where the parties are prepared for trial.  UBS

Financial misleadingly points to the progress of the ERS Action to explain why UBS Financial

should be granted relief from stay.  However, UBS Financial ignores that the Commonwealth

Court has not yet determined that UBS Financial's proposed Counterclaims are proper in the

ERS Action.  As explained herein, the ERS Action was commenced in 2011 and there is a partial

summary judgment motion *sub judice*.  However, there has been no discovery on UBS

Financial's purported Counterclaims and the plaintiffs have not substantively responded to those

Counterclaims, as they are awaiting further direction from the Commonwealth Court.  This

factor does not favor granting UBS Financial relief from stay as the non-bankruptcy proceeding

has not progressed significantly on the issues for which UBS Financial is seeking relief from

stay.

56.     To the contrary, this factor favors permitting the *ultra vires* issue, which

underpins *each* of UBS Financial's counterclaims, to continue to proceed in the *Ultra Vires*

Actions.  The parties in the *Ultra Vires* Actions have completed substantial fact discovery,

including numerous depositions prior to the onset of COVID-19.  The parties continue to move

forward with fact discovery and will be proceeding to expert discovery in short order under the

new schedules proposed to the Court.  The substantial progress of the *Ultra Vires* Actions as

compared to the lack of progress on the issues for which UBS Financial is seeking relief from stay in the ERS Action supports maintaining the automatic stay.

* * * * *

UBS Financial's second attempt to lift the automatic stay is nothing more than gamesmanship.  UBS Financial is well-aware that the Commonwealth Court is not fully operational because of COVID-19; therefore, instead of waiting for the order by the Commonwealth Court as to whether UBS Financial's proposed Counterclaims are procedurally proper and which proposed Counterclaims, if any, may proceed, it is seeking to bypass that determination by prematurely obtaining relief from stay.  No doubt, if this Court grants relief from the stay at this stage, UBS Financial will attempt to obtain discovery and take other actions with respect to the proposed Counterclaims, and plaintiffs will have no recourse because the Commonwealth Court is not currently operational.  UBS Financial's request to lift the automatic stay is premature and the *Sonnax Industries* factors do not support lifting the stay, particularly while the procedural question before the Commonwealth Court remains open.

## **CONCLUSION**

For the reasons set forth above, the Special Claims Committee respectfully requests the Court deny the Motion; and grant the Special Claims Committee such other and further relief as the Court deems just and proper.

-22-

Dated: April 14, 2020
Respectfully submitted,

/s/ Sunni P. Beville                    /s/ Kenneth C. Suria

BROWN RUDNICK LLP                       ESTRELLA, LLC
Edward S. Weisfelner, Esq. (Pro Hac Vice)  Alberto Estrella (USDC-PR 209804)
Seven Times Square                      Kenneth C. Suria (USDC-PR 213302)
New York, NY 10036                      P.O. Box 9023596
Tel: (212) 209-4800                     San Juan, Puerto Rico 00902-3596
eweisfelner@brownrudnick.com            Tel: (787) 977-5050
                                        Fax: (787) 977-5090
Sunni P. Beville, Esq. (Pro Hac Vice)
One Financial Center                    *Local Counsel to the Special Claims Committee*
Boston, MA 02111                        *of the Financial Oversight and Management*
Tel: (617) 856-8200                     *Board, acting by and through its members*
sbeville@prownrudnick.com

*Counsel to the Special Claims Committee of*
*the Financial Oversight and Management*
*Board, acting by and through its members*