**Estimated Hearing Date**: July 29, 2020 at 9:30 a.m. (Atlantic Standard Time)
**Estimated Objection Deadline**: May 5, 2020 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17–BK–3283–LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtor. | PROMESA<br>Title III<br>Case No. 17–BK–4780–LTS<br><br>**This Application relates only to PREPA, and shall be filed in the lead Case No. 17–BK–3283–LTS and PREPA's Title III Case (Case No. 17–BK–4780–LTS)** |

# SUMMARY SHEET TO EIGHTH
# INTERIM FEE APPLICATION OF PROSKAUER
# ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED AND
# REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR THE
# FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,
# AS REPRESENTATIVE OF THE DEBTOR, THE PUERTO RICO ELECTRIC POWER
# AUTHORITY, FOR THE PERIOD OCTOBER 1, 2019 THROUGH JANUARY 31, 2020
# AND NOTICE OF DEFERRAL OF REQUEST FOR PAYMENT OF RATE INCREASE

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

### Schedule 1

**Summary of Fees and Expenses Paid to Date and the Balance of Fees and
Expenses for which Allowance and Payment is Requested for the Compensation Period**

| | |
|---|---|
| Name of Applicant: | Proskauer Rose LLP ("Proskauer") |
| Retained to Provide Professional Services to: | The Financial Oversight and Management Board for Puerto Rico as Representative of the Debtor Pursuant to PROMESA section 315(b) |
| Period for Which Compensation is Sought: | October 1, 2019 through January 31, 2020 (the "Compensation Period") |
| Amount of Fees Sought excluding Gross–Up Amount: | $5,694,120.30 |
| Gross–Up Amount:[2] | $569,412.03 |
| Amount of Expense Reimbursement Sought: | $316,994.84 |
| Total Fees and Expenses Sought for Compensation Period including Gross–Up Amount: | $6,580,527.17 |
| Proskauer's Incremental Fees Not Currently Requested:[3] | $26,970.10 |

This is a(n) _____ Monthly __X__ Interim ___ Final Fee Application

This is the eighth interim fee application filed by Proskauer in the Debtor's Title III Case. The total time expended in connection with the preparation of this interim application is not included herein, as additional time was expended after the Compensation Period.

---

[2]  Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by the Commonwealth legislation (Act 257-2018) starting December 10, 2018 (the "Withholding"). But Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount. As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

[3]  Pursuant to the Engagement Letter dated November 25, 2016 between the Oversight Board and Proskauer (as defined below at footnote 7), Proskauer's rates under the engagement letter increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent." (Engagement Letter at 1-2). Effective January 1, 2020, the rate increase is 4%, yielding a new flat rate for attorneys (partners, senior counsel, associates, and lawyers) of $820 per hour, for e-discovery attorneys of $405 per hour, and for paraprofessionals of $280 per hour. Billed at this rate pursuant to the Engagement Letter, Proskauer's incremental fees for the Compensation Period total $26,970.10, as detailed in the attached **Exhibit E**. The Oversight Board has requested, however, and Proskauer has agreed not to request the current allowance and payment of the incremental fees.

**Eighth Interim Compensation Period**
**October 1, 2019 – January 31, 2020**

| Statement and Date Served | Period Covered | Total Fees Incurred | Fees Requested (90%) | Expenses Requested | Fees Paid (90%) | Expenses Paid |
|---|---|---|---|---|---|---|
| **Twenty–Ninth** 11/25/2019 | 10/1/19 to 10/31/19 | $1,723,300.20 | $1,550,970.18 | $167,948.10 | $1,550,970.18 | $167,948.10 |
| **Thirtieth** 12/23/2019 | 11/1/19 to 11/30/19 | $1,935,724.20 | $1,742,151.78 | $53,862.74 | $1,742,151.78 | $53,862.74 |
| **Thirty-First** 1/25/2020 | 12/1/19 to 12/31/19 | $1,345,362.00 | $1,210,825.80 | $40,553.79 | $1,210,825.80 | $40,553.79 |
| **Thirty-Second** 2/27/2020 | 1/1/20 to 1/31/20 | $689,733.90 | $620,760.51 | $54,630.21 | $620,760.51 | $54,630.21 |
| **Totals:** | | **$5,694,120.30** | **$5,124,708.27** | **$316,994.84** | **$5,124,708.27** | **$316,994.84** |

3

Additional information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee:

| | |
|---|---|
| Blended Rate in This Application for All Attorneys: | $755.97[4] |
| Blended Rate in This Application for All Timekeepers: | $686.58 |
| Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed: | $5,124,708.27 |
| Expenses Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed: | $316,994.84 |
| Number of Professionals Included in this Application:[5] | 85 |
| Number of Professionals in This Application NOT Included in Staffing Plan Approved by Client:[6] | N/A |
| If Applicable, the Difference Between Fees Budgeted and Compensation Sought for This Application Period: | N/A |
| Number of Professionals Billing Fewer than 15 Hours to the Case During This Application Period: | 30 |

---

[4]  This rate excludes non-attorneys (*e.g.*, paralegals) and includes e-discovery attorneys.

[5]  As used herein, the term "professionals" includes all timekeepers.  The term "paraprofessionals," as used in this Application, only includes non–attorneys.

[6]  As noted in the Staffing Plan for the Compensation Period at Exhibit D-2 in the Application, the number of timekeepers expected to work on the matter during the Compensation Period was 92, and thus the actual number of timekeepers was 7 fewer than anticipated.

| | |
|---|---|
| Any Rates Higher than Those Approved or Disclosed when Retained? If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed at retention. | No. Proskauer's Engagement Letter with the Oversight Board provides Proskauer's rates increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent." (Engagement Letter at 1-2). As of January 1, 2020, the rate increase is 4%, yielding a new flat rate for attorneys (partners, senior counsel, associates, and lawyers) of $820 per hour, for e-discovery attorneys of $405 per hour, and for paraprofessionals of $280 per hour. Billed at this rate, as negotiated in the Engagement Letter, Proskauer's incremental fees for the Compensation Period total $26,970.10, as detailed in the attached **Exhibit E**. Pursuant to the Oversight Board's request, Proskauer has not included a request for current payment of the increase in our hourly rates provided for in our Engagement Letter with the Oversight Board. Instead, Proskauer is currently requesting the allowance and payment of the preexisting prevailing rates detailed in the Fifth Interim Application: $789 per hour for attorneys, $390 per hour for e-discovery attorneys, and $270 per hour for paraprofessionals. |

**Schedule 2**

**Summary of Professional Services Rendered by**
**Timekeeper for the Period October 1, 2019 through January 31, 2020**

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| *PARTNERS* | | | | |
| Barak, Ehud | BSGR&B[8] – 2010 | $789 | 554.30 | $437,342.70 |
| Bienenstock, Martin J. | BSGR&B – 1978 | $789 | 172.50 | $136,102.50 |
| Cooper, Scott P. | Litigation – 1981 | $789 | 126.10 | $99,492.90 |
| Dale, Margaret A. | Litigation – 1990 | $789 | 223.90 | $176,657.10 |
| Febus, Chantel L. | Litigation – 2003 | $789 | 1.30 | $1,025.70 |
| Ferrara, Ralph C. | Litigation – 1970 | $789 | 5.20 | $4,102.80 |
| Firestein, Michael A. | Litigation – 1983 | $789 | 11.30 | $8,915.70 |
| Gerkis, James P. | Corporate – 1984 | $789 | 23.60 | $18,620.40 |
| Levitan, Jeffrey W. | BSGR&B – 1983 | $789 | 28.60 | $22,565.40 |
| Mashberg, Gregg M. | Litigation – 1978 | $789 | 347.40 | $274,098.60 |
| Mervis, Michael T. | Litigation – 1990 | $789 | 143.60 | $113,300.40 |

---

[7] In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other conditions and apply to matters in and out of bankruptcy cases. Pursuant to the Appendix B Guidelines, "rate increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion." Appendix B Guidelines ¶ B.2.d, n.2. Annual step increases are awarded by Proskauer in the ordinary course throughout the firm on May 1. Proskauer's November 25, 2016 engagement letter with the Oversight Board (a copy of which is attached hereto as **Exhibit F**) (the "Engagement Letter") provides that Proskauer's rates are increased on January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and four percent.

Furthermore, the Engagement Letter provides Proskauer's rates increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent." (Engagement Letter at 1-2). As of January 1, 2020, the rate increase is 4%, yielding a new flat rate for attorneys (partners, senior counsel, associates, and lawyers) of $820 per hour, for e-discovery attorneys of $405 per hour, and for paraprofessionals of $280 per hour. Billed at this rate as negotiated in the Engagement Letter, Proskauer's incremental fees for the Compensation Period total $26,970.10, as detailed in the attached **Exhibit E**. Pursuant to the Oversight Board's request, however, Proskauer has not included a request for current payment of the increase in our hourly rates provided for in our Engagement Letter with the Oversight Board. Instead, Proskauer is currently requesting the allowance and payment of fees calculated at the preexisting rates detailed in the Fifth Interim Application: $789 per hour for attorneys, $390 per hour for e-discovery attorneys, and $270 per hour for paraprofessionals.

[8] Business Solutions, Governance, Restructuring & Bankruptcy ("BSGR&B").

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Mungovan, Timothy W. | Litigation – 1994 | $789 | 10.90 | $8,600.10 |
| Piccirillo, Antonio N. | Corporate – 1996 | $789 | 36.70 | $28,956.30 |
| Possinger, Paul V. | BSGR&B – 1993 | $789 | 524.50 | $413,830.50 |
| Ramachandran, Seetha | Litigation – 2001 | $789 | 11.40 | $8,994.60 |
| Rappaport, Lary Alan | Litigation – 1979 | $789 | 196.40 | $154,959.60 |
| Ratner, Stephen L. | Litigation – 1975 | $789 | 1.60 | $1,262.40 |
| Richman, Jonathan E. | Litigation – 1984 | $789 | 150.60 | $118,823.40 |
| Roberts, John E. | Litigation – 2009 | $789 | 1.20 | $946.80 |
| Rosenthal, Marc E. | Litigation – 1990 | $789 | 96.40 | $76,059.60 |
| Waxman, Hadassa R. | Litigation – 2001 | $789 | 40.30 | $31,796.70 |
| Zerjal, Maja[9] | BSGR&B – 2012 | $789 | 14.50 | $11,440.50 |
| **Total for Partners:** | | | **2,722.30** | **$2,147,894.70** |
| ***SENIOR COUNSEL*** | | | | |
| Alonzo, Julia D. | Litigation – 2009 | $789 | 0.50 | $394.50 |
| Roche, Jennifer L. | Litigation – 2007 | $789 | 0.70 | $552.30 |
| **Total for Senior Counsel:** | | | **1.20** | **$946.80** |
| ***ASSOCIATES*** | | | | |
| Alonso, Sophia J. | Labor & Employment – 2017 | $789 | 188.50 | $148,726.50 |
| Ansanelli, Julia M. | Litigation – 2017 | $789 | 144.70 | $114,168.30 |
| Blackwell, Brooke H. | BSGR&B – 2018 | $789 | 75.70 | $59,727.30 |
| Carino, Elisa M. | Litigation – 2019 | $789 | 45.30 | $35,741.70 |
| Clark, Brandon C. | Litigation – 2014 | $789 | 147.10 | $116,061.90 |
| Costa, Raphael | Litigation – 2019 | $789 | 3.00 | $2,367.00 |
| Curtis, Kelly | Litigation – 2016 | $789 | 17.80 | $14,044.20 |
| Cushing, Blake R. | Litigation – 2018 | $789 | 0.90 | $710.10 |

[9] Promoted to Proskauer's partnership effective November 1, 2019.

7

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Deming, Adam L. | Litigation – 2018 | $789 | 48.30 | $38,108.70 |
| Desatnik, Daniel S. | BSGR&B – 2016 | $789 | 555.40 | $438,210.60 |
| Esses, Joshua A. | BSGR&B – 2017 | $789 | 36.70 | $28,956.30 |
| Fier, Seth D. | Litigation – 2006 | $789 | 54.20 | $42,763.80 |
| Hughes, Sarah E. | Corporate – 2019 | $789 | 30.50 | $24,064.50 |
| Jones, Jennifer L. | Litigation – 2005 | $789 | 501.20 | $395,446.80 |
| Kim, Mee R. | Litigation – 2016 | $789 | 89.70 | $70,773.30 |
| Ma, Steve | BSGR&B – 2014 | $789 | 7.90 | $6,233.10 |
| Mazurek, Carl A. | Litigation – 2018 | $789 | 149.00 | $117,561.00 |
| Morris, Matthew J. | Litigation – 2000 | $789 | 132.20 | $104,305.80 |
| Omorogbe, Philip | BSGR&B – 2019 | $789 | 6.60 | $5,207.40 |
| Presant, Bradley M. | Litigation – 2019 | $789 | 255.20 | $201,352.80 |
| Rainwater, Shiloh A. | Litigation – 2017 | $789 | 4.80 | $3,787.20 |
| Rochman, Matthew I. | Litigation – 2010 | $789 | 7.50 | $5,917.50 |
| Ruben, Jillian L | Corporate – 2019 | $789 | 25.50 | $20,119.50 |
| Skrzynski, Matthew A. | BSGR&B – 2017 | $789 | 57.10 | $45,051.90 |
| Sosa, Javier F.[10] | Litigation – 2019 | $789 | 94.50 | $74,560.50 |
| Stafford, Laura | Litigation – 2012 | $789 | 354.90 | $280,016.10 |
| Stevens, Elliot R. | BSGR&B – 2018 | $789 | 264.30 | $208,532.70 |
| Theodoridis, Chris | BSGR&B – 2011 | $789 | 101.30 | $79,925.70 |
| Wheat, Michael K. | Litigation – 2019 | $789 | 21.30 | $16,805.70 |
| Wolf, Lucy C. | Litigation – 2017 | $789 | 79.60 | $62,804.40 |
| **Total for Associates:** | | | **3,500.70** | **$2,762,052.30** |
| ***LAWYERS***[11] | | | | |

---

[10]  Admitted to the bar during the Compensation Period.

[11] Partners, senior counsel, and all associates, including first year associates, are billed at the attorney rate.  Lawyers consist of incoming first year associates who have not yet been admitted into their respective state bars, the timing of which varies on an individual and jurisdictional basis.  In previous interim fee applications, timekeepers in this category were classified as "law clerks" and billed at the same rate as paralegals.  The Engagement Letter permits

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Fassuliotis, William G. | Litigation – N/A | $789 | 13.70 | $10,809.30 |
| Shalev, Yafit | BSGR&B – N/A | $789 | 70.40 | $55,545.60 |
| Sosa, Javier F.[12] | Litigation – N/A | $789 | 143.50 | $113,221.50 |
| Volin, Megan R. | BSGR&B – N/A | $789 | 68.90 | $54,362.10 |
| **Total for Lawyers:** | | | **296.50** | **$233,938.50** |
| ***E–DISCOVERY ATTORNEYS*** | | | | |
| Clarke, Michael R. | Professional Resources – 2010 | $390 | 0.30 | $117.00 |
| Friedman, Olga | Professional Resources – 2008 | $390 | 126.70 | $49,413.00 |
| Ike, Yvonne O. | Professional Resources – 2009 | $390 | 44.50 | $17,355.00 |
| Kay, James | Professional Resources – 1978 | $390 | 417.10 | $162,669.00 |
| **Total for e–Discovery Attorneys:** | | | **588.60** | **$229,554.00** |
| ***PARAPROFESSIONALS*** | | | | |
| Adejobi, Olaide M. | Litigation Paralegal – N/A | $270 | 18.90 | $5,103.00 |
| Antoon, Isaac | Professional Resources – N/A | $270 | 3.60 | $972.00 |
| Chernus, Eric R. | Professional Resources – N/A | $270 | 153.90 | $41,553.00 |
| Cordova-Pedroza, Christian | Labor & Employment Paralegal – N/A | $270 | 50.10 | $13,527.00 |
| Elsner, Rebecca R. | Litigation Paralegal – N/A | $270 | 13.60 | $3,672.00 |

---

Proskauer to bill all incoming attorneys (i.e. first year associates) from the day they join the firm, in accordance with Proskauer's usual practice in non-Puerto Rico matters. Thus, Proskauer considers all timekeepers in this category to be attorneys, billed at the same rate as other associates. Proskauer reserves the right to seek payment of the full associate rate charged for all time billed by these lawyers, including time previously billed by these lawyers under the designation of "law clerk," through either amended or supplemental interim fee applications or Proskauer's final fee application in this Title III case.

[12] Admitted to the bar during the Compensation Period.

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Forman, Samuel H. | Litigation Paralegal – N/A | $270 | 1.50 | $405.00 |
| Fox, Rachel L. | Professional Resources – N/A | $270 | 1.60 | $432.00 |
| Geary, Laura M. | Litigation Paralegal – N/A | $270 | 65.00 | $17,550.00 |
| Hoffman, Joan K. | Litigation Paralegal – N/A | $270 | 5.70 | $1,539.00 |
| King, Charles H. | Litigation Paralegal – N/A | $270 | 19.30 | $5,211.00 |
| Klevan, Victoria L. | Litigation Paralegal – N/A | $270 | 2.30 | $621.00 |
| Lerner, Lela | Litigation Paralegal – N/A | $270 | 1.50 | $405.00 |
| Maloney, Alexandra R. | Labor & Employment Paralegal – N/A | $270 | 34.10 | $9,207.00 |
| McPeck, Dennis T. | Litigation Paralegal – N/A | $270 | 3.50 | $945.00 |
| Monforte, Angelo | Litigation Paralegal – N/A | $270 | 36.80 | $9,936.00 |
| Pantoja, Karina | Labor & Employment Paralegal – N/A | $270 | 13.30 | $3,591.00 |
| Petrov, Natasha | BSGR&B Paralegal – N/A | $270 | 57.40 | $15,498.00 |
| Schaefer, Shealeen E. | Labor & Employment Paralegal – N/A | $270 | 414.40 | $111,888.00 |
| Silvestro, Lawrence T. | Litigation Paralegal – N/A | $270 | 196.80 | $53,136.00 |
| Singer, Tal J. | BSGR&B Paralegal – N/A | $270 | 2.50 | $675.00 |
| Supronik, Lucasz | Professional Resources – N/A | $270 | 0.30 | $81.00 |
| Sutherland, Julia L. | Litigation Paralegal – N/A | $270 | 49.10 | $13,257.00 |

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Tarrant, Christopher M. | BSGR&B Paralegal – N/A | $270 | 38.70 | $10,449.00 |
| Zurzolo, Salvatore | Professional Resources – N/A | $270 | 0.30 | $81.00 |
| **Total for Paraprofessionals:** | | | **1,184.20** | **$319,734.00** |

| PROFESSIONALS | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|
| **Attorneys and Paraprofessionals Total:** | **8,293.50** | **$5,694,120.30** |

11

**Schedule 3**

**Summary of Professional Services Rendered by Project
Category for the Period October 1, 2019 through January 31, 2020**

| PROJECT CATEGORY | DESCRIPTION | HOURS | FEES SOUGHT |
|---|---|---|---|
| 201 | Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants | 44.70 | $35,268.30 |
| 202 | Legal Research | 259.90 | $196,549.50 |
| 203 | Hearings and Other Non-Filed Communications with the Court | 11.40 | $8,994.60 |
| 204 | Communications with Claimholders | 66.80 | $52,705.20 |
| 205 | Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities | 104.80 | $82,687.20 |
| 206 | Documents Filed on Behalf of the Board | 1,933.20 | $1,523,063.10 |
| 207 | Non-Board Court Filings | 131.50 | $103,753.50 |
| 208 | Stay Matters | 5.30 | $4,181.70 |
| 210 | Analysis and Strategy | 4,166.50 | $3,121,783.50 |
| 211 | Non-Working Travel Time | 86.10 | $67,932.90 |
| 212 | General Administration | 1,278.50 | $364,911.00 |
| 213 | Labor, Pension Matters | 1.90 | $1,499.10 |
| 215 | Plan of Adjustment and Disclosure Statement | 125.50 | $99,019.50 |
| 218 | Employment and Fee Applications | 55.00 | $18,275.40 |
| 219 | Appeal | 17.90 | $10,412.40 |
| 220 | Fee Applications for Other Parties | 4.50 | $3,083.40 |
| | **Total for All Project Categories:** | **8,293.50** | **$5,694,120.30** |

12

**Schedule 4**

**Summary of Actual and Necessary Expenses Incurred
for the Period October 1, 2019 through January 31, 2020**

| EXPENSE CATEGORY | AMOUNTS |
|---|---|
| Airplane | $16,783.06 |
| Food Service/Conference Dining | $2,184.24 |
| Highq Licensing | $1,290.00 |
| Highq Support | $2,000.00 |
| Lexis/Westlaw | $61,990.00 |
| Lodging | $12,456.74 |
| Messenger/Delivery | $1,089.12 |
| Other Database Research | $144.30 |
| Out Of Town Meals | $1,282.84 |
| Out Of Town Transportation | $2,011.34 |
| Practice Support Vendors | $57,175.93 |
| Reproduction | $10,977.40 |
| Taxi, Carfare, Mileage And Parking | $1,485.59 |
| Taxicab/Car Svc. | $1,581.53 |
| Transcripts & Depositions | $40,314.23 |
| Translation Service | $104,228.52 |
| **Total:** | **$316,994.84** |

13

**Schedule 5**

**Blended Rate Chart**

| CATEGORY OF TIMEKEEPER | BLENDED HOURLY RATE | |
|---|---|---|
| | BILLED<br><br>Domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the application period, for preceding year, *excluding bankruptcy* | BILLED<br><br>In this fee application[13] |
| Partners | $1,193 | $789 |
| Senior Counsel | $1,020 | $789 |
| Associates (7 or more years since first admission) | $924 | $789 |
| Associates (4–6 years since first admission) | $870 | $789 |
| Associates (1–3 years since first admission) & Lawyers | $703 | $789 |
| e–Discovery Attorneys | $692 | $390 |
| Paraprofessionals | $330 | $270 |
| **All Timekeepers Aggregated:** | **$894** | **$686.58** |

---

[13] *See supra* note 7.

**Estimated Hearing Date**: July 29, 2020 at 9:30 a.m. (Atlantic Standard Time)
**Estimated Objection Deadline**: May 5, 2020 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17–BK–3283–LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br>Case No. 17–BK–4780–LTS<br><br>**This Application relates only to PREPA, and shall be filed in the lead Case No. 17–BK–3283–LTS, and PREPA's Title III Case (Case No. 17–BK–4780–LTS)** |

## EIGHTH INTERIM FEE APPLICATION OF PROSKAUER ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE DEBTOR, PUERTO RICO ELECTRIC POWER AUTHORITY, FOR THE PERIOD OCTOBER 1, 2019 THROUGH JANUARY 31, 2020 AND NOTICE OF DEFERRAL OF REQUEST FOR PAYMENT OF RATE INCREASE

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Proskauer Rose LLP ("Proskauer"), attorneys for the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "FOMB") as representative of the Puerto Rico Electric Power Authority (the "Debtor" or "PREPA") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] hereby submits this eighth interim application (the "Application"),[3] pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4] Rule 2016–1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee, 28 CFR Part 58, Appendix B (the "Guidelines"), and in accordance with this Court's *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Case No. 17-BK-3283–LTS, ECF No. 3269][5] (the "Interim Compensation Order"), for (a) allowance of interim compensation for professional services performed by Proskauer for the period commencing October 1, 2019 through and including January 31, 2020 (the "Compensation Period") in the amount of **$6,263,532.33**, which is comprised of (i) fees for professional services rendered in the amount of $5,694,120.30, and (ii) the Gross–Up Amount in the amount of $569,412.03;[6] and (b) reimbursement of its actual and

---

[2]   PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

[3]   The Application solely pertains to fees and expenses incurred with respect to the Debtor's Title III Case and does not address fees or expenses incurred with respect to other services performed for the Oversight Board (a) on behalf of other Title III debtors, or (b) outside the Title III process.

[4]   The Bankruptcy Rules are made applicable to the Debtor's Title III Case by PROMESA section 310.

[5]   Unless otherwise expressly indicated, ECF Numbers refer to the docket of the Commonwealth's Title III Case, Case No. 17-BK-3283-LTS.

[6]   Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by the Commonwealth legislation (Act 257-2018) starting December 10, 2018 (the "Withholding").  But Proskauer will only request payment of the Gross-Up Amount from the

necessary expenses in the amount of **$316,994.84** incurred during the Compensation Period.  In support of the Application, Proskauer respectfully avers as follows:

### Jurisdiction

1.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Application pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

3.      The statutory predicates for the relief requested herein are PROMESA sections 316 and 317.

### Background

4.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this subchapter is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including filing a petition under section [304] of [PROMESA] . . . or otherwise generally submitting filings in relation to the case with the court." PROMESA § 315(a), (b).

6.      On September 30, 2016, the Oversight Board designated the Debtor as a "covered entity" under PROMESA section 101(d).

7.      On November 25, 2016, the Oversight Board retained Proskauer at substantial discounts to its normal hourly rates, as shown by the Engagement Letter and by **Schedule 5** above.

---

Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross–Up Amount.  As of the date of hereof, Proskauer

8.      On July 2, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for PREPA pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Debtor's Title III Case").  Pursuant to PROMESA section 315(b), the Oversight Board is the Debtor's representative in the Debtor's Title III Case.

9.      On December 15, 2017, Proskauer filed the *First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Electric Power Authority, for the Period July 2, 2017 through September 30, 2017* [Case No. 17-BK-3283–LTS, ECF No. 2053] (the "First Interim Application").

10.      On April 9, 2018, Proskauer filed the *Second First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Electric Power Authority, for the Period October 1, 2017 through January 31, 2018* [Case No. 17-BK-3283–LTS, ECF No. 2876] (the "Second Interim Application").

11.      On July 16, 2018, Proskauer filed the *Third Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Electric Power Authority, for the Period February 1, 2018 through May 31, 2018* [Case No. 17-BK-3283–LTS, ECF No. 3582] (the "Third Interim Application").

---

has not yet requested payment of the Gross–Up Amount.

12.     On November 16, 2018, Proskauer filed the *Fourth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Electric Power Authority, for the Period June 1, 2018 through September 30, 2018* [Case No. 17-BK-3283–LTS, ECF No. 4287] (the "Fourth Interim Application").

13.     On May 21, 2019, Proskauer filed the *Fifth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Electric Power Authority, for the Period October 1, 2018 through January 31, 2019* [Case No. 17-BK-3283–LTS, ECF No. 7052] (the "Fifth Interim Application").

14.     On September 20, 2019, Proskauer filed the *Sixth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Electric Power Authority, for the Period February 1, 2019 through May 31, 2019* [Case No. 17-BK-3283–LTS, ECF No. 8743] (the "Sixth Interim Application").

15.     On December 20, 2019, Proskauer filed the *Seventh Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Electric Power Authority, for the Period June 1, 2019 through September 30, 2019* [Case No. 17-BK-3283–LTS, ECF No. 9626] (the "Seventh Interim Application").

5

16.     On November 25, 2019, Proskauer served on the Notice Parties (as defined in the Interim Compensation Order) its twenty-ninth monthly fee statement for the period October 1, 2019 through October 31, 2019.  On December 23, 2019, Proskauer served on the Notice Parties its thirtieth monthly fee statement for the period November 1, 2019 through November 30, 2019. On January 25, 2020, Proskauer served on the Notice Parties its thirty-first monthly fee statement for the period December 1, 2019 through December 31, 2019.  On February 27, 2020, Proskauer served on the Notice Parties its thirty-second monthly fee statement for the period January 1, 2020 through January 31, 2020.

17.     In accordance with the Interim Compensation Order and as reflected in the foregoing summary, Proskauer has requested an aggregate payment of **$5,441,703.11** (payment of ninety percent (90%) of the compensation sought and reimbursement of one–hundred percent (100%) of expenses incurred) and has received **$5,441,703.11** with respect to fee statements filed during the Compensation Period.

### Summary of Services Rendered by Proskauer During the Compensation Period

18.     The instant Application is Proskauer's eighth application for interim compensation in the Debtor's Title III Case.  To make the review of Proskauer's fee applications in all the pending Title III cases more efficient for the Court and other readers, paragraphs 19 through 23 of the instant Application, and the corresponding paragraphs in each of Proskauer's eighth interim fee applications in the other pending Title III cases, are identical and cover the principal activities in all the Title III cases.

19.     Since the commencement of these Title III cases, Proskauer has achieved significant progress on the behalf of the Oversight Board.[7]  This Compensation Period, Proskauer

---

[7] The Seventh Interim Application contains an overview of Proskauer's progress on behalf of the Oversight Board from the commencement of the case until the time period covered by the Seventh Interim Application.

furthered this progress, servicing many new Oversight Board projects, while maintaining momentum gained from the preceding periods. Among its numerous roles, Proskauer provided legal and strategic advice to the Oversight Board as it certified new fiscal plans and budgets for the Commonwealth and its covered instrumentalities. Concurrently, Proskauer negotiated amendments to the initial joint Title III plan of adjustment for the Commonwealth, ERS and PBA (the "Initial Joint Plan"), filed on September 27, 2019. Moreover, Proskauer litigated and vigorously defended the Oversight Board and the Debtors' interests in numerous contested matters, adversary proceedings and appeals involving statutory committees, monoline insurers, bondholders, creditors and other interested parties. In so doing, Proskauer's efforts were instrumental in retaining billions of dollars within the estates of the Title III Debtors. Of particular note, Proskauer secured landmark judgments before the United States Court of Appeals for the First Circuit (the "First Circuit"), including the First Circuit's affirmation of this Title III Court's ruling that under Bankruptcy Code section 552 any security interest resulting from liens granted to the ERS bondholders prior to the commencement of the ERS Title III case do not attach to employer contributions received by ERS during the postpetition period. As a consequence, the Commonwealth is relieved of up to approximately $3.5 billion of principal and interest. Proskauer also formulated and prosecuted a motion for summary judgment sustaining the Oversight Board's complaint that sought to nullify Law 29 and enjoin its implementation and enforcement.

20.    Throughout the Compensation Period, Proskauer continued to object to defective claims against the Debtors, provide ongoing legal assistance to the Oversight Board, and negotiate with various creditors, statutory committees, government parties and other parties in interest in furtherance of each of the Debtors' respective restructurings, and, ultimately, to propel the

7

Oversight Board closer to its PROMESA-prescribed mandate of returning the Commonwealth

and its instrumentalities to fiscal responsibility and access to capital markets.  A summary of

Proskauer's notable achievements, including Proskauer's advocacy on behalf of the Oversight

Board before the First Circuit and Title III Court, follows:

- <u>New Fiscal Plans and Budgets</u>.  Proskauer counseled the Oversight Board as it, along with its financial and strategic advisors, analyzed data and assessed the economic and structural impact of proposed fiscal plans and budgets for the Commonwealth and its covered instrumentalities.  Proskauer provided ongoing assistance with emergent legal issues, and drafted key portions of the new fiscal plans and budgets to achieve PROMESA's mandate to restore Puerto Rico to fiscal responsibility and access to capital markets.

- <u>Claim Objections</u>. In connection with proofs of claim filed against the Debtors,[8] Proskauer filed a total of 82 omnibus objections between October 1, 2019 and January 31, 2020.  Proskauer committed a significant amount of time and effort to reviewing the proofs of claim and preparing and filing objections, as well as reviewing responses to various objections, negotiating resolutions to the objections with creditors, preparing and filing replies in support of their objections, and attending several related hearings.  As a result of Proskauer's efforts, between October 1, 2019, and January 31, 2020, thousands of claims have been fully or partially expunged, or will be fully or partially expunged upon the entry of final orders.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.[9]

- <u>PBA Title III Case</u>.  Proskauer provided ongoing assistance related to the Puerto Rico Public Buildings Authority ("<u>PBA</u>") Title III case, which commenced on September 27, 2019.  Proskauer counseled the Oversight Board in extensive discussions with the Puerto Rico Fiscal Agency and Financial Advisory Authority ("<u>AAFAF</u>") and PBA, their respective advisors, constituents of PBA creditors, and other key stakeholders, regarding PBA's Title III restructuring.

- <u>Development of the Amended Joint Plan and Disclosure Statement</u>.  Throughout this Compensation Period, Proskauer advised the Oversight Board in its continued development of an amended proposed plan of adjustment for the Commonwealth, PBA and ERS, and in negotiations with key stakeholders related to such plan.  Through efforts of Proskauer and its professionals, the Oversight Board filed the

---

[8] Pursuant to the Bar Date Orders [ECF Nos. 2521 and 3160], approximately 177,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.

[9] Of the proofs of claim filed, over 3,000 claims were filed in relation to COFINA, totaling approximately $10.1 trillion in asserted claims; approximately 55,000 claims were filed in relation to, or reclassified to be asserted against, ERS, totaling approximately $10.2 trillion in asserted claims; over 2,240 claims were filed in relation to HTA, totaling approximately $83.1 billion in asserted claims; and approximately 110,600 claims were filed against the Commonwealth, totaling approximately $33.2 trillion in asserted claims.

proposed *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 11946] and the *Disclosure Statement for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 11947] on February 28, 2020, bringing the Commonwealth and its instrumentalities closer to the resolution of their Title III cases.

- Mandatory Mediation, Stayed Proceedings, and Stay Relief Defense. Proskauer hosted and actively participated in mandatory mediation sessions ordered by this Court involving the Oversight Board, AAFAF, the Official Committee of Unsecured Creditors (the "UCC"), and other key stakeholders in these Title III Cases.[10] Among other things, this order and subsequent orders[11] stayed over twenty contested matters and other adversary proceedings of significant consequence for Puerto Rico's fiscal and economic revival.[12] In preparation for the multitude of litigation associated with these stayed proceedings, Proskauer had conducted extensive and rigorous briefing of the complex issues raised, the vast majority of which were of first impression. At the same time that Proskauer represented the Oversight Board in the continued mediations, Proskauer's litigators, bankruptcy experts and other specialists prepared the Oversight Board's legal positions and defenses including oppositions to non-stayed stay relief motions filed in connection with bonds issued by the Puerto Rico Convention Center District Authority ("CCDA"),[13] HTA,[14] and the Puerto Rico Infrastructure Financing Authority ("PRIFA").[15] Proskauer's efforts advocating for the Debtors' best interests in these

---

[10] *See Order Regarding Stay Period and Mandatory Mediation* [ECF No. 8244].

[11] *See, e.g., Order Addressing the Filing of an Amended Report by the Mediation Team and Extending (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* [ECF No. 9618].

[12] For a complete listing of the stayed contested matters and adversary proceedings *see* ECF No. 8244, Appendix I and ECF No. 9618, n. 3.

[13] On January 16, 2020, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation ("Ambac"), the Financial Guaranty Insurance Company ("FGIC"), and The Bank of New York Mellon, as the fiscal agent, filed a motion [ECF No. 10104] for (i) an order that the automatic stay does not apply to their proposed action to enforce CCDA bondholders' purported rights to revenues from hotel taxes, or, in the alternative, (ii) relief from the automatic stay to pursue the proposed action, or, in the further alternative, (iii) adequate protection. Movants allege they insure bonds issued by CCDA, which are secured by tax revenues generated under the Hotel Occupancy Tax Act. Movants also allege the automatic stay does not apply to their proposed action because the Commonwealth has no property interest in the revenues, which are the property of CCDA bondholders. Movants further argue that if the automatic stay does apply, it should be lifted because (i) the Commonwealth has no equity in the Hotel Taxes and they are unnecessary to an effective reorganization under Bankruptcy Code section 362(d)(2); (ii) Movants lack adequate protection under Bankruptcy Code section 362(d)(1); and (iii) the Commonwealth has violated PROMESA, Commonwealth law and the Constitution by taking bondholders' property (the "CCDA Lift Stay Motion").

[14] On January 16, 2020, Assured, National, Ambac, and FGIC filed an amended lift stay motion [ECF Nos. 10102 and 10107], which further alleges that the Court should lift the automatic stay because otherwise Movants' due process rights will be violated (the "HTA Lift Stay Motion").

[15] On May 30, 2019, Ambac filed a motion requesting an order that the Title III automatic stay does not apply to certain anticipated lawsuits relating to bonds issued by PRIFA. In the alternative, Ambac sought (i) relief from the stay to allow Ambac to pursue those lawsuits in different courts, or (ii) an order compelling the Commonwealth to provide adequate protection for Ambac's purported collateral. Ambac holds and insures bonds issued by PRIFA. On June 6, 2019, Proskauer, on behalf of the Oversight Board, filed, among other things, a motion to dismiss Ambac's motion for lack of standing. On June 7, 2019, the Court denied the motion to dismiss without prejudice to the Oversight

proceedings remain ongoing.

21.    <u>First Circuit Appeals</u>. Proskauer defended and litigated several matters before the

First Circuit, and obtained pivotal judgments resulting, among other things, in the insulation of

postpetition employer contributions from being encumbered by liens.    (Although the

Commonwealth enacted legislation terminating employer contributions in connection with the

establishment of PayGo, the Commonwealth is still facing litigation claiming, among other

things, PayGo should be considered employer contributions.)

- <u>Ongoing First Circuit Appeals include</u>:

    (1)    <u>Rene Pinto-Lugo et al. and Manuel Natal-Albelo v. Commonwealth</u>, Case No.
    19-1181; <u>Elliott, Hein and Dvores v. Commonwealth</u>, Case No. 19-1182; and
    <u>Cooperativas v. COFINA</u>, Case No. 19-1391:[16] During this Compensation Period,
    Proskauer, on behalf of the Oversight Board, filed its responsive brief.    The
    appeals remain ongoing and Proskauer continues to review pleadings filed by the
    various parties and research the issues in order to prepare for oral argument.

---

Board raising the same arguments in its response to Ambac's motion.  On July 3, 2019, the Oversight Board and
AAFAF filed oppositions to Ambac's motion for relief, inclusive of the arguments raised in the Oversight Board's
motion to dismiss.  Ambac and FGIC filed a joint reply on July 16, 2019.  On July 17, 2019, the Court issued an order
directing the Oversight Board to file a sur-reply to Ambac and FGIC's reply by July 19, 2019.  On July 19, 2019, the
Oversight Board filed its sur-reply together with an objection to a joinder motion filed by monoline insurers Assured
Guaranty Corp. and Assured Guaranty Municipal Corp.  On July 24, 2019, the Court issued an order staying the
matter through November 30, 2019.  On October 28, 2019, the Court issued an order further staying the matter
through December 31, 2019.  On December 19, 2019, the Court entered an interim case management order regarding
certain issues related to revenue bonds, which required that any motion for leave to amend the lift stay motion be
filed by January 16, 2020.  On January 16, 2020, Ambac, FGIC, Assured Guaranty Corp., Assured Guaranty
Municipal Corp. and U.S. Bank Trust National Association filed a motion for leave to amend, which proposed adding
(i) the trustee as a moving party, (ii) discussion of the First Circuit's decision in *Gracia-Gracia v. Financial
Oversight & Management Board*, 939 F.3d 340 (1st Cir. 2019), and (iii) discussion of factual developments regarding
the pledged rum taxes.  In the proposed amended motion, Movants removed the argument that the automatic stay
does not apply, but included the arguments that the stay should be lifted because (i) the Commonwealth lacks equity
in the rum tax remittances deposited in the Commonwealth's Treasury Single Account, and (ii) the rum taxes are
unnecessary to an effective reorganization because the Commonwealth lacks a property interest in them.   During the
Compensation Period, Proskauer researched and drafted its response to Movants motion for leave to amend, and on
January 22, 2020, the Commonwealth filed its opposition to the motion to amend.  On January 25, 2020, Movants
filed a reply in support of their motion to amend.  On January 31, 2020, the Court granted Ambac's motion for leave
to amend.

[16] On February 22, 2019, three sets of appellants filed appeals of the order confirming the COFINA Plan of Adjustment
including: (i) Rene Pinto-Lugo and Manuel Natal-Albelo (<u>Rene Pinto-Lugo et al. and Manuel Natal-Albelo v.
Commonwealth</u>, Case No. 19-1181 (1st Cir.)) ("<u>Pinto-Lugo</u>"), (ii) Mark Elliott, Lawrence B. Dvores, and Peter C.
Hein (<u>Elliott, Hein and Dvores v. Commonwealth</u>, Case No. 19-1182 (1st Cir.)) ("<u>Elliott</u>"), and (iii) Cooperativa de
Ahorro y Credito Dr. Manuel Zeno Gandia, Cooperativa de Ahorro y Credito de Juana Diaz, and Cooperativa de
Ahorro y Credito de Rincon (Cooperativas v. COFINA, Case No. 19-1391 (1st Cir.) (the "<u>Cooperativas</u>").

     (2)    <u>Centro de Salud Familiar J.P.F., et al., v. Commonwealth of Puerto Rico</u>, Case No. 19-1189:[17]  Plaintiffs filed their brief on appeal on October 7, 2019, and Proskauer, on behalf of the Oversight Board, researched and drafted its answering brief which was subsequently filed on December 13, 2019.  Appellants' reply brief and oral argument will follow.

     (3)    <u>Andalusian Global Designated v. FOMB, et al</u>, Case No. 20-1065: Plaintiffs filed their opening brief on appeal on January 15, 2020, and Proskauer, on behalf of the Oversight Board, researched and drafted its answering brief which was subsequently filed on February 7, 2020.

- Significant Judgments issued by the First Circuit:

  - <u>Vazquez-Garced, et al v. FOMB, et al</u>, Case No. 18-2154:  On November 20, 2018, the First Circuit certified for review certain issues concerning Adv. Proc. No. 18-00080;[18] oral arguments were held on July 24, 2019.  On December 18, 2019, the First Circuit affirmed the District Court decision, confirming there is nothing in PROMESA section 205 "suggesting that, by first seeking the Governor's agreement on a matter, the Board somehow loses whatever ability it otherwise had to act unilaterally on the matter," and the Oversight Board has the power to adopt "a rejected recommendation if it otherwise has the power to adopt the recommended action on its own."  The First Circuit further affirmed the District Court's ruling on reprogramming, noting "PROMESA prohibits the Governor from spending any funds that are not budgeted regardless of whether the recommendation had been adopted" and "regardless of what any territorial laws say."

  - <u>Employees Retirement System, et al v. Andalusian Global Designated, et al.</u>, Case No. 19-1699 and <u>Employees Retirement System, et al v. PR AAA Portfolio Target, et al.</u>, Case No. 19-1700: On January 30, 2020, the First Circuit affirmed the Title

---

[17] On April 2, 2018, Magistrate Judge Dein, at ECF No. 55 in Adv. Proc. No. 17-00227, issued a report and recommendation on a motion by the Commonwealth for abstention and remand of the matter.  Magistrate Judge Dein recommended the motion be granted, the case be remanded back to the Commonwealth Court, and the stay be lifted to allow Plaintiffs to proceed to judgment in the Commonwealth Court.  Plaintiffs objected to the recommendation and report.  On July 10, 2018, the Title III Court entered a memorandum order overruling objections to and adopting the April 2, 2018 report and recommendation, and granting the Commonwealth's motion for abstention, and directed the case to be remanded.  On August 8, 2018, plaintiffs appealed the Title III Court's order to the First Circuit, which was docketed on February 25, 2019.

[18] This appeal stems from <u>Rosselló Nevares v. The Financial Oversight and Management Board for Puerto Rico</u>, Adv. Proc. No. 18-00080.  On July 12, 2018, the Oversight Board filed a motion to dismiss the complaint.  On July 17, 2018, Plaintiffs filed an opposition to the motion to dismiss, and on July 20, 2018, the Oversight Board filed a reply in support of its motion to dismiss.  On August 7, 2018, the Title III Court entered an order granting in part and denying in part the motion to dismiss.  On September 10, 2018, Plaintiffs filed an urgent motion requesting certification of the Title III Court's August 7, 2018 opinion and order for immediate appeal under PROMESA sections 306(e)(3)–(4).  On October 9, 2018, the Title III Court entered a memorandum order certifying certain aspects of the August 27, 2018 opinion and order for interlocutory appeal.  The appeal was docketed as Case No. 18-8021.  The Oversight Board answered the complaint's remaining claims on November 2, 2018.

III Court's decision[19] that under section 552, any security interest resulting from liens granted to the ERS bondholders prior to the commencement of the ERS Title III case do not attach to revenue received by ERS during the postpetition period.

- PREPA 9019 Motion.[20] During the Compensation Period, Proskauer divided its efforts among three areas: (i) discovery related motions, including motions to strike and motions to compel filed by various "objectors," (ii) preparation for and attendance at a hearing in connection with the discovery motions; and (iii) supplemental research and drafting supplemental briefs in support of the PREPA 9019 motion. Additionally, Proskauer also communicated with the various Supporting Parties and negotiated extended briefing and

---

[19] On April 2, 2019, ERS filed the Motion of Debtor for Leave to File an Amended and Supplemented Adversary Complaint (the "Motion to Amend") [Adv. Proc. No. 17-00213, ECF No. 236], requesting the Title III Court grant ERS leave to file an amended complaint to raise issues concerning the nature and extent of the security interests alleged and the proper method of perfection of any security interest, and determine whether Bankruptcy Code section 552(a) operates to prevent the ERS bondholders' asserted lien from attaching to Employers' Contributions generated and received post-petition. On June 27, 2019, the Title III Court issued an order, (the "Section 552 Order"), granting summary judgment in favor of ERS, holding that Bankruptcy Code section 552 prevents any security interest resulting from liens granted in ERS bondholders' favor prior to the ERS Petition Date from attaching to revenues generated and received by ERS during the post-petition period. That order also held that Employers' Contributions were not special revenues as defined by Bankruptcy Code section 902(a) and (d), and that Bankruptcy Code section 552 should not be construed as applying only to security interests granted after PROMESA's enactment. On July 8, 2019, the Court issued an order and judgment closing the case. On July 9, 2019, ERS bondholders filed notices of appeals of the order by the Title III Court regarding the application of Section 552 to certain ERS funds. The appeals were consolidated on July 26, 2019. On July 29, 2019, appellants filed their opening brief. On August 28, 2019, Proskauer, on behalf of the Oversight Board and ERS, filed their answering briefs, while the UCC filed its answering brief on August 29, 2019. On September 11, 2019 Appellants filed their reply briefs. The First Circuit held oral arguments on December 4, 2019. On January 30, 2020, the First Circuit affirmed the Section 552 Order.

[20] A brief overview of Proskauer's progress on the PREPA 9019 Motion in the prior interim compensation period follows: On May 10, 2019, Proskauer filed the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, And 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Case No. 17-4780, ECF No. 1235] (the "PREPA 9019 Motion"). The PREPA 9019 Motion seeks approval of certain settlements embodied in the Definitive Restructuring Support Agreement dated as of May 3, 2019 (the "RSA" or "PREPA RSA," by and among (1) PREPA, (2) the Oversight Board, (3) AAFAF (PREPA, the Oversight Board, and AAFAF are sometimes collectively referred to herein as the "Government Parties"), (4) the members of the Ad Hoc Group of PREPA Bondholders, (5) any other persons who beneficially own or control Uninsured Bonds that are party to the RSA or execute a joinder to the RSA (the "Uninsured Supporting Holders"), and (5) Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively "Assured," Assured and the Uninsured Supporting Holders are collectively referred to herein as the "Supporting Holders," and the Supporting Holders collectively with Government Parties, the "RSA Parties"). Such settlements resolve, as and to the extent set forth in the RSA and the proposed order granting the PREPA 9019 Motion, (a) the claims asserted by the Supporting Holders and objections of the Government Parties thereto, (b) certain bondholder litigation against PREPA by all Supporting Holders, (c) the Supporting Holders' ability to exercise rights under the Trust Agreement or other applicable law, and (d) the Supporting Holders' right to receive any current payments on certain PREPA bonds. Pursuant to the RSA, the creditors (absent future defaults) settle their alleged secured claims and rights asserted thereunder, including requests for stay relief, in exchange for PREPA agreeing to allow their claims in less than their full face amounts. In addition, the creditors agree to support, and PREPA agrees to propose, a plan under which Supporting Holders will exchange their bonds for securitization bonds that are secured by a fixed and predictable transition charge. In an amendment to the RSA dated as of September 9, 2019, National Public Finance Guarantee Corporation ("National") and Syncora Guarantee Inc. ("Syncora") joined the PREPA RSA.

discovery related deadlines which culminated in the filing of several motions to extend the deadlines.

- UTIER v. PREPA. In connection with Adversary Case No. 17-229 (UTIER v. P.R. Elec. Power Auth., et al., Adv. Proc. No. 17-0229), Proskauer continued to conduct extensive discovery with Unión de Trabajadores de la Industria Eléctrica y Riego ("UTIER"), the Puerto Rico Department of Justice, and the Puerto Rico Electric Power Authority. The matter required additional efforts to gather and analyze documents from multiple sources to evaluate UTIER's claims and the Commonwealth's and PREPA's defenses. Over the period covered by the application, Proskauer also continued to analyze factual and expert discovery that may be needed to defend the case.

22. In addition to the above, Proskauer has defended against numerous litigations against the Title III Debtors. The following is a summary of major litigation matters in which Proskauer served as lead counsel for the Title III Debtors during this Compensation Period:

- *PREPA v. Vitol Inc., et al.*, Adv. Proc. No. 19-453: This action arises from two consolidated cases, *Autoridad de Energía Eléctrica de Puerto Rico v. Vitol, Inc., et al.*, Civil No. K AC2009-1376 (901) and *Autoridad de Energía Eléctrica de Puerto Rico v. Vitol, Inc., et al.*, Civil No. 2012-1174 (905). On November 14, 2019, Defendants Vitol S.A. and Vitol, Inc. (together, "Vitol") filed a notice of removal of the action from the Commonwealth of Puerto Rico Court of First Instance to the United States District Court for the District of Puerto Rico. Plaintiff PREPA asserts that PREPA's fuel supply contracts with Vitol's parent company are null, void, and without legal effect because they violate a Commonwealth statute that prohibits the Commonwealth government (and thus, PREPA) from contracting with parties convicted of certain crimes including grand larceny. PREPA alleges Vitol was convicted of grand larceny in 2007 and failed to disclose this conviction. On December 13, 2019, PREPA filed motion to remand. Vitol filed an opposition to PREPA's motion to remand on January 14, 2020, PREPA filed a reply on February 5, 2020, and Vitol filed a sur-reply on February 20, 2020. Ultimately, the Court denied remand.

- *Financial Oversight and Management Board for Puerto Rico v. Ambac Assurance Corp., et al.*, Adv. Proc. Nos. 20-0003, 20-0004, 20-0005, 20-0007: On January 16, 2020, Plaintiff, the Oversight Board, acting in its capacity as representative of the Commonwealth and HTA, filed four actions in connection with bonds respectively issued by CCDA, PRIFA and HTA. In Adv. Proc. No. 20-0003, the Oversight Board, as representative of the Commonwealth, brought an action against Ambac, Assured, FGIC, and U.S. Bank Trust National Association ("U.S. Bank"), as trustee (collectively, the "PRIFA Defendants") challenging the proofs of claim filed against the Commonwealth and other lien claims asserted by the PRIFA Defendants as holders and/or insurers of certain bonds issued by PRIFA. In Adv. Proc. No. 20-0004, the Oversight Board, as representative of the Commonwealth, brought an action against Ambac, Assured, FGIC, and Bank of New York Mellon ("BNYM"), as fiscal agent (collectively, the "CCDA Defendants") challenging the proofs of claim filed against the Commonwealth and other lien claims asserted by the CCDA Defendants as holders and/or insurers of certain bonds

issued by CCDA.  In Adv. Proc. No. 20-0005, the Oversight Board, as representative of the Commonwealth, brought action against the HTA Defendants (as defined below) challenging the proofs of claim filed against the Commonwealth and other lien claims asserted by the HTA Defendants as insurers and/or holders of HTA Bonds.  In Adv. Proc. No. 20-0007, the Oversight Board, as representative of HTA, and the UCC[21] filed an action against Ambac, Assured, National, FGIC, Peaje, and BNYM, as fiscal agent (collectively, the "HTA Defendants"), challenging the proofs of claim filed against HTA and other lien claims asserted by the HTA Defendants as insurers and/or holders of certain bonds issued by HTA.  All these complaints were designed to enable critical issues to any proposed plan of adjustment to be litigated promptly, to eliminate the uncertainty among the debtors and creditors.

Proskauer continues to litigate these and other contested matters and adversary proceedings beyond this Compensation Period.

23.     As part of Proskauer's involvement in the above matters, Proskauer (a) prepared and filed numerous pleadings and briefs in litigation matters; (b) participated in and prepared for hearings; (c) researched jurisprudence regarding legal and factual issues, including bankruptcy and U.S. Constitutional issues; and (d) performed a myriad of other professional services as described in this Application and reflected in **Schedule 3** and **Exhibit B**.

24.     By this Application, Proskauer seeks an allowance, pursuant to the Interim Compensation Order, of (a) **$6,263,532.33**, as (i) compensation for professional services rendered in the amount of $5,694,120.30, and (ii) the Gross–Up Amount in the amount of $569,412.03;[22] and (b) **$316,994.84** as reimbursement for actual and necessary expenses incurred during the Compensation Period in connection with such professional services.  Notably, the Application reflects aggregate voluntary reductions made during the Compensation Period to Proskauer's requests for compensation and for reimbursement of expenses in the amount of $80,898.00 and

---

[21] The UCC is co-plaintiff with respect to certain claims asserted in this adversary proceeding that are substantially similar to the counts asserted in the prior pending HTA lien challenge adversary proceedings filed on May 20, 2019 [Adv. Proc. Nos. 19-362, 19-363, 19-364, and 19-365].

[22] Proskauer will only request payment of the Gross–Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax

$23,816.51, respectively, on top of the sizeable discount embedded in its engagement letter with
the Oversight Board, in which it fixed hourly rates at levels providing up to 45% discounts on the
hourly rates of its most senior partners.

25.      Proskauer maintains computerized records of the time spent by all Proskauer
attorneys and paraprofessionals in connection with the firm's representation of the Oversight
Board as representative of the Debtor.   Subject to redaction where necessary to preserve
mediation confidentiality, copies of the computerized records for the Compensation Period are
attached hereto as **Exhibit B**.

26.      Proskauer's budget and staffing plan for the Compensation Period are attached
hereto as **Exhibit D**.

27.      Proskauer's summary of itemized time records for professionals and
paraprofessionals performing services for the Oversight Board with respect to the Debtor during
the Compensation Period is set forth on **Schedule 2**.   The professional services performed by
Proskauer on behalf of the Oversight Board as representative of the Debtor during the
Compensation Period required an aggregate expenditure of 2,723.50 recorded hours by
Proskauer's partners and senior counsel; 3,500.70 recorded hours by associates; 588.60 recorded
hours by e–discovery attorneys; 296.50 recorded hours by lawyers;[23] and 1,184.20 recorded hours
by paraprofessionals.   As required by the Guidelines, **Exhibit C** to this Application shows, for

---

credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the
Gross-Up Amount.

[23] Partners, senior counsel, and all associates, including first year associates, are billed at the attorney rate.  Lawyers
consist of incoming first year associates who have not yet been admitted into their respective state bars, the timing of
which varies on an individual and jurisdictional basis.  In previous interim fee applications, timekeepers in this
category were classified as "law clerks" and billed at the same rate as paralegals.  The Engagement Letter permits
Proskauer to bill all incoming attorneys (i.e. first year associates) from the day they join the firm, in accordance with
Proskauer's usual practice in non-Puerto Rico matters.  Thus, Proskauer considers all timekeepers in this category to
be attorneys, billed at the same rate as other associates.  Proskauer reserves the right to seek payment of the full
associate rate charged for all time billed by these lawyers, including time previously billed by these lawyers under the

each Project Category (as defined below), a list of professionals who performed services in each

Project Category and the aggregate recorded hours each professional incurred.   In accordance

with Guidelines paragraph C.3, Proskauer's blended hourly rates are disclosed in **Schedules 1** and

**5**.   The fees charged by Proskauer, as set forth in **Schedule 2**, are in accordance with the firm's

existing billing rates and procedures in effect during the Compensation Period, as revised to

reflect Proskauer's arrangement with the Oversight Board.   The standard rates Proskauer charges

for the services rendered by its professionals and paraprofessionals in these Title III cases have

been reduced to reflect the unique circumstances of PROMESA and the position of the

Commonwealth of Puerto Rico, its instrumentalities, and its residents.   **Schedules 2** and **5** show

the rates Proskauer charges on an hourly basis are below the competitive market rates for

bankruptcy and non-bankruptcy matters charged by the other professionals representing the

Commonwealth and statutory committees.   No Proskauer rates are increased as a result of the

geographic location of a bankruptcy case.

28.     All entries itemized in Proskauer's time records comply with the requirements set

forth in the Guidelines, including, without limitation, (a) the utilization of project categories (each

a "Project Category"), (b) a description of each activity or service that each individual performed,

and (c) the number of hours (in increments of one-tenth of an hour) spent by each individual

providing the services.   Each Project Category is organized in accordance with Guidelines

paragraph C.8.b.  If a Project Category does not appear in a particular application, Proskauer did

not bill time or expenses for that Project Category during the Compensation Period, but may bill

time for that Project Category in the future.   In addition, only Project Categories for which

Proskauer billed more than 10 hours during the Compensation Period are summarized in the

---

designation of "law clerk," through either amended or supplemental interim fee applications or Proskauer's final fee
application in this Title III case.

Application.   Project Categories for which Proskauer billed less than 10 hours are included in

**Exhibit B**.

**Applicant Statement In Compliance with Appendix B Guidelines Paragraph C.5**

29.   The following answers are provided in response to the questions set forth in

Guidelines paragraph C.5:

> **Question**:   Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?   If so, please explain.
>
> Response:   As explained on page 5 and in footnotes 3 and 7 of the Summary above, Proskauer agreed not to request currently the allowance and payment of the 4% rate increase as of January 1, 2020 provided in its Engagement Letter.
>
> **Question**:   If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?
>
> Response:   Although the total fees sought in this Application did not exceed the total budgeted fees for the Compensation Period (the fees sought in this Application are 5.1% below budgeted fees), the fees sought for November exceeded the budgeted fees $80,724.20 or 4.4% for that month. The higher than budgeted fee amounts were due to the efforts expended by Proskauer attorneys and paraprofessionals in connection with drafting the Oversight Board's reply brief in support of the PREPA 9019 motion and in opposition to objections to the 9019 motion filed by multiple parties, drafting the Oversight Board's urgent motion for leave to intervene in the *Fuel Line Lenders'* Adversary Proceeding, and the ongoing discovery in the *UTIER CBA* Adversary Proceeding.
>
> **Question**:   Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?
>
> Response:   No.
>
> **Question**:   Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices?   (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).   If so, please quantify by hours and fees.
>
> Response:   No, the Application does not include time or fees related to reviewing time records or preparing, reviewing or revising invoices in connection with the

17

preparation of monthly fee statements.

**Question**:  Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

Response:  No time was spent redacting time records on account of privilege concerns.  However, the Application does include time related to reviewing time records to redact certain time entries pursuant to Court-ordered mediation confidentiality.  Proskauer paraprofessionals expended 3.80 hours and billed $1,026.00 for redacting mediation related entries in Proskauer's monthly fee statements related to Proskauer's seventh and eighth interim fee applications.

**Question**:  If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11–458?

Response:  <u>Yes.  Notice of Deferral of Request for Allowance and Payment of 4% Rate Increase for 2020</u>.  Proskauer's Engagement Letter with the Oversight Board provides Proskauer's rates increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent." (Engagement Letter at 1-2).  As of January 1, 2020, the rate increase is 4%, yielding a new flat rate for attorneys (partners, senior counsel, associates, and lawyers) of $820 per hour, for e-discovery attorneys of $405 per hour, and for paraprofessionals of $280 per hour.  Billed at this rate, as negotiated in the Engagement Letter, Proskauer's incremental fees for the Compensation Period total $26,970.10, as detailed in the attached **Exhibit E**.  Proskauer, however, has agreed to a request of the Oversight Board not to request the current allowance and payment of the incremental fees based on the new rates.  Instead, Proskauer is currently requesting fee rates detailed in the Fifth Interim Application: $789 per hour for attorneys, $390 per hour for e-discovery attorneys, and $270 per hour for paraprofessionals.  The Engagement Letter is not otherwise amended.

### Gross–Up Amount

30.    Prior to December 10, 2018, Puerto Rico taxed Proskauer's fees differently depending on whether Proskauer's timekeepers performed work while physically present in Puerto Rico or off-island.  Specifically, a 7% withholding tax was assessed (at time of payment) on fees derived from work performed while the timekeeper was physically present in Puerto Rico, but not on fees derived from work performed outside of Puerto Rico.

31.     On December 10, 2018, Puerto Rico enacted Act 257–2018, amending the Puerto Rico tax code and eliminating the differences in tax treatment based on where work was performed.  Under Act 257–2018, all Proskauer fees incurred on or after December 10, 2018—regardless of the timekeepers' physical location—are assessed with a 10% withholding tax at the time of payment.

32.     Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross–Up Amount") introduced by Act 257–2018 starting December 10, 2018 (the "Withholding"), in the amount of **$569,412.03.**  But Proskauer will only request payment of the Gross–Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross–Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross–Up Amount.

### Professionals Billing Fewer Than Five Hours per Month

33.     The following chart indicates, solely with respect to the Debtor's Title III Case, (a) professionals who billed fewer than five hours per month, (b) the months for which fewer than five hours were billed by the professional, and (c) an explanation of why the use of such professional was reasonable and necessary.  As a general matter, because of the size and complexity of the Debtor's Title III Case, it was reasonable and necessary to consult with professionals with specific practice area expertise to assist Proskauer's core restructuring professionals in providing the Debtor with necessary and beneficial professional services.  Moreover, it was often necessary to consult with professionals more familiar with other aspects of the restructuring of Puerto Rico and with specific adversary proceedings to deal with global strategic issues and ensure that positions taken by the Oversight Board are consistent across all

the Title III cases.  Furthermore, occasionally the urgency of certain briefing schedules required

pulling in professionals from different work streams to assist on time-sensitive matters.[24]

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Adejobi, Olaide M. | November, January | Ms. Adejobi is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Alonso, Sophia J. | January | Ms. Alonso is an associate in Proskauer's labor & employment department who assisted with developing the Debtor's discovery strategy and protocols in the *UTIER CBA* Adversary Proceeding. |
| Alonzo, Julia D. | November | Ms. Alonzo is a senior counsel in Proskauer's litigation department who advised on further developing the Debtor's litigation strategy in connection with the defendants' petition for removal of the *Vitol* Adversary Proceeding. |
| Antoon, Isaac L. | December | Mr. Antoon is an e-discovery project manager at Proskauer who assisted with various document review and production related issues. |
| Blackwell, Brooke H. | October | Ms. Blackwell is an associate in Proskauer's BSGR&B group who assisted with further developing the Debtor's litigation and claims objections strategy. |
| Carino, Elisa | November | Ms. Carino is an associate in Proskauer's litigation department who assisted with factual research in the *UTIER CBA* Adversary Proceeding. |
| Clark, Brandon C. | January | Mr. Clark is an associate in Proskauer's litigation department who assisted with further developing the Debtor's litigation strategy in connection with the PREPA 9019 Motion. |
| Clarke, Michael R. | December | Mr. Clarke is an e-discovery staff attorney at Proskauer who assisted with document review. |
| Costa, Raphael | January | Mr. Costa is an associate in Proskauer's litigation department who assisted with legal research and analysis in connection with the PREPA 9019 Motion. |

---

[24] Many of the professionals listed below have billed substantially more time on other matters related to Proskauer's representation of the Oversight Board, including matters within and outside of PROMESA Title III.

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Curtis, Kelly M. | October – December | Ms. Curtis is an associate in Proskauer's litigation department who assisted with various meet-and-confer related issues and with further developing the Debtor's litigation strategy in the *Rivera-Rivera*, *Vitol*, and *SREAEE* Adversary Proceedings. |
| Cushing, Blake | October | Mr. Cushing is an associate in Proskauer's litigation department who assisted with analysis of stay related issues in connection with the *Cobra* Administrative Expense Motion. |
| Deming, Adam L. | January | Mr. Deming is an associate in Proskauer's litigation department who assisted with further developing the Debtor's litigation strategy in connection with the PREPA 9019 Motion. |
| Elsner, Rebecca R. | January | Ms. Elsner is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Febus, Chantel L. | October, January | Ms. Febus is a partner in Proskauer's litigation department who advised on further developing the Debtor's litigation strategy in connection with the PREPA 9019 Motion and in the *UTIER CBA* Adversary Proceeding. |
| Ferrara, Ralph C. | October – December | Mr. Ferrara is a partner in Proskauer's litigation department who advised on further developing the Debtor's litigation strategy in connection with the PREPA 9019 Motion and in the *Fuel Line Lenders'* Adversary Proceeding. |
| Firestein, Michael A. | October – January | Mr. Firestein is a partner in Proskauer's litigation department who advised on further developing the Debtor's litigation and appellate strategy in connection with the PREPA 9019 Motion and in adversary proceedings. |
| Forman, Samuel H. | October | Mr. Forman is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Fox, Rachel L. | October, December | Ms. Fox is an e-discovery project manager at Proskauer who assisted with various document review and production related issues. |

21

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Friedman, Olga | November | Ms. Friedman is an e-discovery staff attorney at Proskauer who assisted with various document review related issues. |
| Geary, Laura M. | November | Ms. Geary is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Gerkis, James P. | January | Mr. Gerkis is a partner in Proskauer's corporate department who advised on further developing the Debtor's litigation strategy in connection with the PREPA 9019 Motion. |
| Hughes, Sarah E. | January | Ms. Hughes is an associate in Proskauer's corporate department who assisted with legal research and analysis in connection with the PREPA 9019 Motion. |
| Ike, Yvonne O. | November, December | Ms. Ike is an e-discovery staff attorney at Proskauer who advised on a variety of document review and production related issues. |
| Kim, Mee R. | January | Ms. Kim is an associate in Proskauer's litigation department who assisted with legal research and analysis in connection with the PREPA 9019 Motion. |
| King, Charles H. | October, November, January | Mr. King is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Klevan, Victoria L. | October, December | Ms. Klevan is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Lerner, Lela | December | Ms. Lerner is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Levitan, Jeffrey W. | October | Mr. Levitan is a partner in Proskauer's BSGR&B group who advised on further developing the Debtor's litigation strategy in the *Fuel Line Lenders'* Adversary Proceeding. |
| Ma, Steve | October – January | Mr. Ma is an associate in Proskauer's BSGR&B group who advised on stay and removal related issues in the Debtor's adversary proceedings. |

22

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Mashberg, Gregg M. | January | Mr. Mashberg is a partner in Proskauer's litigation department who advised on further developing the Debtor's litigation strategy in connection with the PREPA 9019 Motion. |
| McPeck, Dennis T. | October | Mr. McPeck is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Mervis, Michael T. | January | Mr. Mervis is a partner in Proskauer's litigation department who advised on further developing the Debtor's litigation strategy in connection with the PREPA 9019 Motion. |
| Monforte, Angelo | November | Mr. Monforte is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Mungovan, Timothy W. | October – January | Mr. Mungovan is a partner in Proskauer's litigation who advised on further developing the Debtor's litigation strategy in connection with the PREPA 9019 Motion and in multiple adversary proceedings. |
| Omorogbe, Philip | November, December | Mr. Omorogbe is an associate in Proskauer's BSGR&B group who assisted with drafting Proskauer seventh interim fee application. |
| Pantoja, Karina | November | Ms. Pantoja is a paralegal in Proskauer's labor & employment department who assisted with various case management related tasks. |
| Petrov, Natasha | January | Ms. Petrov is a paralegal in Proskauer's BSGR&B group who assisted with drafting Proskauer's eighth interim fee application. |
| Presant, Bradley M. | January | Mr. Presant is an associate in Proskauer's litigation department who assisted with legal research and analysis in connection with the PREPA 9019 Motion. |
| Rainwater, Shiloh A. | January | Mr. Rainwater is an associate in Proskauer's litigation department who assisted with legal research and analysis in connection with the UCC appeal of the Court's order on its objection to the U.S. Bank, N.A.'s Master Proof of Claim. |

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Ramachandran, Seetha | October – January | Ms. Ramachandran is a partner in Proskauer's litigation department who advised on further developing the Debtor's litigation and discovery strategy in the *UTIER CBA* Adversary Proceeding. |
| Ratner, Stephen L. | October, November, January | Mr. Ratner is a partner in Proskauer's litigation department who advised on further developing the Debtor's litigation strategy in the *UTIER CBA* and *Fuel Line Lenders'* Adversary Proceedings. |
| Roberts, John E. | January | Mr. Roberts is a partner in Proskauer's litigation department who advised on developing the Debtor's appellate strategy in connection with the UCC appeal of the Court's order terminating its objection to the U.S. Bank, N.A. Master Proof of Claim. |
| Roche, Jennifer L. | January | Ms. Roche is a senior counsel in Proskauer's litigation department who advised on a variety of issues developing the Debtor's litigation strategy in *Irizarry v. Vazquez,* Adv. Proc. No. 19-412. |
| Rochman, Matthew I. | October – January | Mr. Rochman is an associate in Proskauer's litigation department who assisted with further developing the Debtor's litigation strategy in connection with the PREPA 9019 Motion and omnibus objections to claims filed against the Debtor. |
| Ruben, Jillian | January | Ms. Ruben is an associate in Proskauer's corporate department who assisted with legal research for the PREPA RSA. |
| Singer, Tal J. | November, January | Mr. Singer is a paralegal in Proskauer's BSGR&B group who assisted with various case management related tasks. |
| Supronik, Lukasz | December | Mr. Supronik is an e-discovery project coordinator at Proskauer who assisted with various document production and review related issues. |
| Sutherland, Julia L. | October, January | Ms. Sutherland is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Theodoridis, Chris | January | Mr. Theodoridis is an associate in the BSGR&B group who assisted with analysis and assessment of proofs of claim filed against the Debtor in connection with the Debtor's omnibus objections to claims. |

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Volin, Megan | December, January | Ms. Volin is a lawyer in Proskauer's BSGR&B group who assisted with drafting the Debtor's reply in support of the PREPA 9019 Motion and with analysis and assessment of proofs of claim filed against the Debtor in connection with the Debtor's omnibus objections to claims. |
| Waxman, Hadassa R. | November, December | Ms. Waxman is a partner in Proskauer's litigation department who advised on further developing the Debtor's litigation strategy in connection with the *Cobra* Administrative Expense Motion. |
| Wolf, Lucy C. | January | Ms. Wolf is an associate in Proskauer's litigation department who assisted with further developing the Debtor's litigation strategy in connection with the *Cobra* Administrative Expense Motion. |
| Zerjal, Maja | December, January | Ms. Zerjal is a partner in Proskauer's BSGR&B group who advised on the PREPA best interest test analysis in preparation for the PREPA 9019 hearing. |
| Zurzolo, Salvatore | December | Mr. Zurzolo is an e-discovery project manager at Proskauer who assisted with various document production and review related issues. |

## Summary Description of Professional Services

34.     The following is a brief narrative summary, listed by Project Category, of the professional services rendered by Proskauer during the Compensation Period. Only Project Categories for which Proskauer billed more than 10 hours during the Compensation Period are summarized below.

## I.     Matter No. 33260.0022 (PROMESA Title III: PREPA)

35.     This matter number covers  time spent relating to the core PREPA Title III case, including, for example, time spent relating to mediation, fiscal plan issues, and working on disclosure statements or plans of adjustment.

25

(a)   <u>Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants</u>
<u>(Project Category 201)</u>
(Fees: $<u>32,980.20</u>; Hours: <u>41.80</u>)

36.   This Project Category includes time spent communicating with the Oversight

Board, the Debtor, and their respective representatives, agents, and consultants. Specifically,

Proskauer attorneys spent time:

- Conferring with the Oversight Board and its other advisors regarding the Debtor's Title III Case status and strategy, the PREPA 9019 Motion and the Oversight Board's reply to objections thereto, the PREPA RSA, and related best interest analysis and labor and benefits related issues; and

- Updating the Oversight Board on litigation developments and ongoing discovery.

(b)   <u>Legal Research (Project Category 202)</u>
(Fees: $<u>139,803.60</u>; Hours: <u>186.40</u>)

37.   This Project Category includes time spent researching and analyzing legal issues

and drafting internal memoranda analyzing legal issues and/or briefs showing the legal issues

researched and analyzed, to the extent not expressly covered by another Project Category.

Specifically, Proskauer attorneys and paraprofessionals spent time researching and analyzing a

wide variety of issues related to the Debtor's proposed restructuring and transformation, the

PREPA 9019 Motion, and objections thereto filed by various parties, standards for approving

settlements, and numerous discovery related issues.

(c)   <u>Communications with Claimholders (Project Category 204)</u>
(Fees: $<u>23,670.00</u>; Hours: <u>30.00</u>)

38.   This category includes time spent communicating with the Debtor's various

claimholders. Specifically, Proskauer attorneys spent time preparing for and participating in

negotiations and meet-and-confer sessions with creditors, bondholders, statutory committees, and

their advisors regarding the PREPA 9019 Motion, the PREPA RSA, and related ongoing

discovery, and addressing multiple procedural and scheduling issues.

26

(d) <u>Communications with the Commonwealth, its Instrumentalities or Representatives of
the Commonwealth or its Instrumentalities (Project Category 205)</u>
(Fees:  $<u>28,956.30</u>; Hours: <u>36.70</u>)

39.     This Project Category includes time spent communicating with the Debtor's
representatives in various Title III related matters, to the extent not expressly covered by another
Project Category.  Specifically, Proskauer attorneys spent time communicating with counsel and
other advisors to AAFAF regarding the Debtor's litigation strategy and a wide variety of issues in
connection with the PREPA 9019 Motion and reply in support thereof, the PREPA RSA, and
related ongoing discovery.

(e) <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
(Fees: $<u>1,018,318.80</u>; Hours:  <u>1,291.50</u>)

40.     This Project Category includes time spent drafting various pleadings filed on
behalf of the Debtor, to the extent not expressly covered by another Project Category.
Specifically, Proskauer attorneys and paraprofessionals spent time:

- Analyzing objections to the PREPA 9019 Motion filed by various parties,
conferring with the Oversight Board's other advisors, conducting further legal and
factual research, and drafting a reply in support of the 9019 Motion;

- Conferring with the Oversight Board's other advisors, conducting research, and
drafting the Government Parties' opposition to the motion of the U.S. House
Natural Resources Committee for leave to participate in the Debtor's Title III Case
as *amici curiae* "plus" in connection with the PREPA 9019 Motion and to the
UCC objection to the proof of claim filed by U.S. Bank N.A., as Trustee for non-
recourse PREPA bonds;

- Conducting research and analysis and drafting the Debtor's motions in limine and
objections to other parties' motions in limine concerning expert and lay opinion
testimony, in preparation for the hearing on the PREPA 9019 Motion;

- Conducting research and analysis and drafting the Debtor's response in opposition
to Cobra Acquisition LLC's omnibus objection to fee applications filed by
professionals;

- Conducting research and analysis and drafting multiple pleadings related to
ongoing discovery; and

- Drafting multiple informative motions and pleadings related to scheduling and the
extension of deadlines.

27

(f)    Non-Board Court Filings (Project Category 207)
        (Fees:  $65,881.50; Hours:  83.50)

41.    This Project Category includes time spent reviewing and commenting on Court

orders and filings made by other parties in the Debtor's Title III Case, to the extent not expressly

covered by another Project Category.   Specifically, Proskauer attorneys and paraprofessionals

spent time reviewing and analyzing objections to the PREPA 9019 Motion filed by various

parties, the motion by the U.S. House Natural Resources Committee for leave to participate in the

Debtor's Title III Case as *amici curiae* "plus" in connection with the PREPA 9019 Motion, the

UCC objection to the proof of claim filed by U.S. Bank N.A, as Trustee for non-recourse PREPA

bonds, other parties' motions in limine and objections to the Debtor's motions in limine

concerning expert and lay opinion testimony in preparation for the hearing on the PREPA 9019

Motion, Cobra Acquisition LLC's omnibus objection to fee applications filed by professionals,

and related briefs and court orders.

(g)    Analysis and Strategy (Project Category 210)
        (Fees:  $2,047,455.00; Hours:  2,595.00)

42.    This Project Category includes time spent related to legal analysis on, and strategic

approach to, the Debtor's Title III Case, including (a) meetings to discuss strategic case

considerations, the status of various work streams, and next steps, and (b) all Proskauer internal

meetings, except those specifically dealing with an issue covered by another Project Category.

Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing a

wide variety of reports, memoranda, financial analyses, press releases, pleadings, and court

orders, drafting and updating tasks and issues lists, preparing for and participating in Proskauer

internal meetings on further developing litigation, appellate, and discovery strategy, and

researching litigation and appellate issues pending in these complex and time sensitive Title III

cases, preparing for and participating in Proskauer internal meetings on PREPA 9019 Motion and

PREPA RSA related issues, and drafting internal analyses and memoranda to Proskauer litigation and restructuring teams.

(h)   Non-Working Travel Time (Project Category 211)
       (Fees: $62,015.40; Hours: 78.60)

43.   This Project Category includes time spent traveling on behalf of the Oversight Board and the Debtor, during which no billable work is performed. Fees in this Project Category are billed at fifty percent (50%).

(i)   General Administration (Project Category 212)
       (Fees:  $161,529.00; Hours:  569.50)

44.   This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast, and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

(j)   Plan of Adjustment and Disclosure Statement (Project Category 215)
       (Fees: $99,019.50; Hours: 125.50)

45.   This Project Category includes time spent on issues related to the terms of the proposed Title III plan.  Specifically, Proskauer attorneys and paraprofessionals spent time conferring with the Oversight Board and its other advisors, researching and analyzing a wide variety of issues related to the proposed restructuring and transformation of the Debtor, participating in strategy meetings with the Oversight Board's advisors, experts, and consultants, and drafting memoranda on the PREPA RSA status and developments, best interest analysis, the Debtor's litigation strategy in preparation for the 9019 hearing, and proposed plan confirmation procedures.

(k)   Employment and Fee Applications (Project Category 218)
      (Fees: $18,275.40; Hours: 55.00)

46.    This Project Category includes time spent on issues related to the compensation of

Proskauer, and the retention and compensation of other Oversight Board professionals, including

the preparation of monthly fee applications. Specifically, Proskauer attorneys and

paraprofessionals spent time analyzing monthly statements and drafting Proskauer's seventh and

eighth interim fee applications.

**II.    Matter No. 33260.0055 PREPA Title III: Vitol)**

47.    This matter number covers time spent working on adversary proceedings involving

Vitol S.A., including *PREPA v. Vitol S.A.*, Adv. Proc. No. 17-00218, *PREPA v. Vitol S.A.*, Adv.

Proc. No. 17-00221, *Autoridad de Energia Electrica de P.R. v. Vitol Inc.*, Adv. Proc. No. 19-

00453, and any appeals thereto.

(a)   Documents Filed on Behalf of the Board (Project Category 206)
      (Fees: $33,138.00; Hours: 42.00)

48.    This Project Category includes time spent drafting various pleadings filed on

behalf of the Debtor, to the extent not expressly covered by another Project Category.

Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing the

third notice of removal filed by Vitol, conducting legal research, and drafting the Debtor's motion

to remand the most recent *Vitol* adversary proceeding to the Commonwealth court and the reply in

support thereof.

(b)   Analysis and Strategy (Project Category 210)
      (Fees: $41,817.00; Hours: 53.00)

49.    This Project Category includes time spent related to legal analysis on, and strategic

approach to, the Debtor's Title III Case and varied issues relating thereto, including (a) meetings

to discuss strategic case considerations, the status of various work streams, and next steps, and (b)

all Proskauer internal meetings, except those specifically dealing with an issue covered by another

Project Category.

### III.   Matter No. 33260.0056 (PREPA Title III – UTIER CBA)

50.     This matter number covers time spent relating to the challenge brought by the

Union de Trabajadores de la Industria Electrica y Riego, Inc. ("UTIER") to the PREPA and

Commonwealth fiscal plans and budgets related to the alleged impairment caused by certain

government legislative acts to the UTIER collective bargaining agreement ("CBA"), including

*UTIER v. PREPA*, Adv. Proc. No. 17-00229 (the "*UTIER CBA* Adversary Proceeding") and any

appeals thereto.

(a)   Communications with the Commonwealth, its Instrumentalities or Representatives of
the Commonwealth or its Instrumentalities (Project Category 205)
(Fees: $19,646.10; Hours: 24.90)

51.     This Project Category includes time spent communicating with the Debtor's

representatives in various Title III related matters, to the extent not expressly covered by another

Project Category.  Specifically, Proskauer attorneys spent time communicating with defense co-

counsel regarding ongoing discovery and document review related issues in response to UTIER's

most recent discovery requests.

(b)   Analysis and Strategy (Project Category 210)
(Fees: $907,691.70; Hours: 1,360.30)

52.     This Project Category includes time spent related to legal analysis on, and strategic

approach to, the Debtor's Title III Case and varied issues relating thereto, including (a) meetings

to discuss strategic case considerations, the status of various work streams, and next steps, and (b)

all Proskauer internal meetings, except those specifically dealing with an issue covered by another

Project Category.

(c)   General Administration (Project Category 212)
(Fees: $200,439.00; Hours: 698.10)

53.     This Project Category includes time spent on general administration of the
Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to
the filing of documents in court, including affidavits of service and service mailings; and (c)
internal filing and organization of case documents to ensure easy, fast and free accessibility by the
Proskauer team, the Debtor, and other parties in interest.

      (d)     Appeal (Project Category 219)
           (Fees: $5,205.00; Hours: 11.30)

54.     This Project Category includes time spent preparing appeals and participating in
appellate proceedings on behalf of the Oversight Board as representative of the Debtor, to the
extent not expressly covered by another Project Category.

**IV.     Matter No. 33260.0059 (PREPA Title III: Miscellaneous)**

55.     This matter number covers time spent working on miscellaneous motions and
adversary proceedings, including, for example, motions for relief from the Title III stay, and any
appeals thereto.

      (a)   Documents Filed on Behalf of the Board (Project Category 206)
          (Fees:  $7,890.00; Hours:  10.00)

56.     This Project Category includes time spent drafting various pleadings filed on
behalf of the Debtor, to the extent not expressly covered by another Project Category.
Specifically, Proskauer attorneys and paraprofessionals spent time reviewing the *Sistema de
Retiro de Los Empleados de la Autoridad de Energia Electrica*'s ("SREAEE") motion for
summary judgment filed in the *Rivera-Rivera v. Commonwealth,* Adv. Proc. No. 18-00047 (the
"*Rivera-Rivera* Adversary Proceeding") and joinders thereto by various parties, conducting
research and analysis, and developing the Debtor's litigation strategy for an opposition to the
second amended complaint.

32

(b)   Analysis and Strategy (Project Category 210)
(Fees: $9,389.10; Hours: 11.90)

57.   This Project Category includes time spent related to legal analysis on, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including (a) meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

**V.   Matter No. 33260.0075 (PREPA Title III: Costa Sur Insurance Recovery)**

58.   This matter number covers time spent relating to the declaratory judgment action brought by Sciemus Limited, Markel Europe, certain Lloyd's Syndicates, Indiana Harbor Insurance Company, PartnerRe Ireland Insurance, and Swiss National Insurance Co. Ltd (the "Insurers") against the Oversight Board requesting approval of the insurance payment in the amount calculated by the Insurers for the damage sustained in a roof collapse incident, *Sciemus Limited v. FOMB*, Adv. Proc. No. 19-00369, and any appeals thereto.

(a)   Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities (Project Category 205)
(Fees:  $17,831.40; Hours: 22.60)

59.   This Project Category includes time spent communicating with the Debtor's representatives in various Title III related matters, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys spent time communicating with the Debtor's advisors regarding issues related to loss estimates and partial payment, developing the Debtor's litigation strategy, and preparing for Court-ordered mediation.

(b)   Documents Filed on Behalf of the Board (Project Category 206)
(Fees:  $69,531.90; Hours:  90.10)

60.   This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.

Specifically, Proskauer attorneys and paraprofessionals spent time conducting research and analysis and drafting the Debtor's motion for undisputed payment and release of the insurance proceeds, related renewed motion, and informative motion regarding the same.

    (c)   Analysis and Strategy (Project Category 210)
           (Fees: $33,295.80; Hours: 42.20)

61.    This Project Category includes time spent related to legal analysis on, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including (a) meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

**VI.    Matter No. 33260.0079 (PREPA Title III – Fuel Line Lenders' Action)**

62.    This matter number covers time spent relating to the declaratory judgment action brought by Cortland Capital Market Services LLC, SOLA LTD, Ultra Master LTD, Solus Opportunities Fund 5 LP, and Ultra NB LLC (the "Fuel Line Lenders") against the Oversight Board and PREPA demanding protection of their priority rights over the rights of the PREPA bondholders, including *Cortland v. FOMB*, Adv. Proc. No. 19-00396 (the "*Fuel Line Lenders' Adversary Proceeding*"), and any appeals thereto.

    (a)   Legal Research (Project Category 202)
           (Fees:  $21,381.90; Hours: 27.10)

63.    This Project Category includes time spent researching and analyzing legal issues and drafting internal memoranda analyzing legal issues and/or briefs showing the legal issues researched and analyzed, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time conducting research and analysis related to a variety of legal issues for the Oversight Board's urgent motion for leave to intervene and for the motion to dismiss the Fuel Line Lenders' amended complaint.

(b)   Documents Filed on Behalf of the Board (Project Category 206)
(Fees: $204,903.30; Hours: 259.70)

64.    This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time conducting research and analysis and drafting the Oversight Board's urgent motion for leave to intervene in certain of the amended complaint's claims for relief, a motion to dismiss the Fuel Line Lenders' amended complaint, and a reply in support of the motion to dismiss.

(c)   Non-Board Court Filings (Project Category 207)
(Fees:  $12,860.70; Hours:  16.30)

65.    This Project Category includes time spent reviewing and commenting on Court orders and filings made by other parties in the Debtor's Title III Case, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing the Fuel Line Lenders' amended complaint, responses and objections to the Oversight Board's urgent motion for leave to intervene and motion to dismiss the Fuel Line Lenders' amended complaint, and related court orders.

(d)   Analysis and Strategy (Project Category 210)
(Fees: $17,989.20; Hours: 22.80)

66.    This Project Category includes time spent related to legal analysis on, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including (a) meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

35

## VII.   Matter No. 33260.0085 (PREPA Title III – Cobra Acquisition LLC)

67.     This matter number covers time spent relating to Cobra Acquisition LLC's *Motion for Allowance and Payment of Administrative Expense Claims* seeking a Court order allowing payment of expenses incurred pursuant to two post-petition contracts with the Debtor for the restoration of Puerto Rico's power grid devastated by hurricanes Irma and Maria [Case No. 17-BK-3283–LTS, ECF No. 8789] (the "*Cobra* Administrative Expense Motion"), Cobra Acquisition LLC's *Omnibus Objection to Fee Applications Filed by Professionals and Request to Increase Holdback Amount* [Case No. 17-BK-3283–LTS, ECF No 9419] (the "*Cobra* Omnibus Fee Applications Objection"), and any appeals related thereto.

(a)   Legal Research (Project Category 202)
      (Fees:  $15,086.70; Hours: 20.70)

68.     This Project Category includes time spent researching and analyzing legal issues, as well as time spent drafting internal memoranda and/or draft briefs related to such research and analysis, to the extent that such is not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time researching and analyzing a variety of legal issues, including, among others, treatment of administrative claims and the application of the automatic stay for the joint urgent motion to extend deadlines and stay litigation in connection with *Cobra* Administrative Expense Motion, the Oversight Board's response to the *Cobra* Omnibus Fee Applications Objection, and the joint status report pursuant to the Court's stay order.

(b)   Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities (Project Category 205)
      (Fees:  $10,335.90; Hours: 13.10)

69.     This Project Category includes time spent communicating with the Debtor's representatives in various Title III related matters, to the extent not expressly covered by another

36

Project Category.  Specifically, Proskauer attorneys spent time communicating with counsel and other advisors to the Debtor and AAFAF regarding a potential stay of the *Cobra* Administrative Expense Motion.

    (c)  <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
          (Fees:  <u>$78,111.00</u>; Hours:  <u>99.00</u>)

70.    This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time conferring with counsel to the Debtor and AAFAF, conducting research and analysis, and drafting the joint urgent motion to extend deadlines and stay litigation in connection with *Cobra* Administrative Expense Motion, the Oversight Board's response to the *Cobra* Omnibus Fee Applications Objection, and the joint status report pursuant to the Court's stay order.

    (d)  <u>Non-Board Court Filings (Project Category 207)</u>
          (Fees:  <u>$8,915.70</u>; Hours:  <u>11.30</u>)

71.    This Project Category includes time spent reviewing and commenting on Court orders and filings made by other parties in the Debtor's Title III Case, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing the *Cobra* Administrative Expense Motion, *Cobra* Omnibus Fee Applications Objection, Cobra Acquisition LLC's opposition to the stay motion, and related Court orders.

    (e)  <u>Analysis and Strategy (Project Category 210)</u>
          (Fees: <u>$35,583.90</u>; Hours: <u>45.10</u>)

72.    This Project Category includes time spent related to legal analysis on, and brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto, including engaging in (a) meetings to discuss strategic case considerations, the status of

various work streams, and next steps, and (b) all Proskauer internal meetings, to the extent not expressly covered by another Project Category.

**VIII.   Matter No. 33260.0086 (PREPA Title III – SREAEE v. FOMB)**

73.    This matter number covers time spent relating to the action brought by the Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica ("SREAEE") seeking a Court order declaring that SREAEE is entitled to payments as a priority expense and subordinating the PREPA bondholders' claims to SREAEE's, including *Sistema de Retiro de Los Empleados de la Autoridad de Energia Electrica v. FOMB*, Adv. Proc. No. 19-00405 (the "SREAEE Adversary Proceeding"), and on any appeals related thereto.

(a)   Documents Filed on Behalf of the Board (Project Category 206)
(Fees:  $104,226.90; Hours:  132.10)

74.    This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing the SREAEE amended complaint, conducting research and analysis, developing the litigation strategy, and drafting the Oversight Board's motion to dismiss the amended complaint and reply in support of the motion.

(b)   Analysis and Strategy (Project Category 210)
(Fees: $25,248.00; Hours: 32.00)

75.    This Project Category includes time spent related to legal analysis on, and brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto, including engaging in (a) meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, to the extent not expressly covered by another Project Category.

*       *       *       *

38

76.     The foregoing professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period were reasonable, necessary, appropriate, and beneficial when rendered, facilitated the effective administration of the Debtor's Title III Case, and were in the best interests of the Oversight Board and the Debtor's creditors, residents, and other stakeholders.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and time-sensitive nature of the problems, issues, and tasks involved.  The professional services were performed with expedition and in an efficient manner.

77.     In accordance with the factors enumerated in the Bankruptcy Code, the amount of fees requested is fair and reasonable given: (a) the complexity of the Debtor's Title III Case; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; (e) Proskauer's established expertise in the bankruptcy field; and (f) the costs of comparable services other than in a case under the Bankruptcy Code.

**Actual and Necessary Expenses of Proskauer**

78.     Pursuant to the Guidelines, **Schedule 4** is Proskauer's summary of actual and necessary expenses incurred on behalf of the Oversight Board as representative of the Debtor during the Compensation Period.

79.     In accordance with paragraph C.13 of the Appendix B Guidelines and as more fully itemized in **Schedule 4**, Proskauer seeks reimbursement for its necessary and reasonable expenses, including: (a) reproduction, (b) online research, (c) local travel to and from airports, (d) out-of-town travel and lodging, (e) out-of-town meals, (f) transcription and translation services, (g) litigation support, and (h) professional services.  All expense entries detailed in **Exhibit B** comply with the requirements set forth in the Guidelines, including an itemization of the expenses

39

by category, the date the expense was incurred, and the individual incurring the expense, where available.  The reasons for the expenses are self-explanatory.  In compliance with Appendix B Guidelines paragraph C.13, the requested expenses are of the kind customarily charged to Proskauer's non-bankruptcy clients and by other comparable professionals.

80.     Proskauer generally charges from $0.10 (black and white) to $0.30 (color) per page for photocopying expenses. The rates charged by the firm for Westlaw and Lexis computerized research vary according to the type of research conducted and the specific files researched, but, in any event, Proskauer does not profit from the use of computer assisted legal research, as set forth in **Schedule 4**.  As per the Appendix B Guidelines, Proskauer has not requested reimbursement of expenses related to overhead charges, such as secretarial services and proofreading.  The expenditures Proskauer is seeking reimbursement for and which are reflected on **Schedule 4** are all of the type customarily billed to clients.

81.     During the Compensation Period, Proskauer has disbursed **$316,994.84** as necessary and reasonable expenses. These charges cover Proskauer's direct operating costs, which costs are not incorporated into the firm's hourly billing rates (because to do so would impose that cost upon clients who do not benefit from extensive photocopying and other facilities and services).  Proskauer has made every effort to minimize its expenses in the Debtor's Title III Case.   The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to effectively serve the needs of the Debtor in its Title III case.

## Compensation Paid and Its Source

82.     All services for which Proskauer seeks compensation, and expenses for which it seeks reimbursement, were performed on behalf of the Oversight Board as representative of the

Debtor.  In connection with the matters covered by this Application, Proskauer received no payment and no promises of payment for services rendered, or to be rendered, from any source other than the Debtor.  There is no agreement or understanding between Proskauer and any other person, other than members of the firm, for the sharing of compensation received for services rendered in this Title III case.

83.    PROMESA sections 316 and 317 provide for interim compensation of professionals and govern the Court's award of such compensation.  PROMESA section 316 provides that a court may award a professional person employed by the Debtor or the Oversight Board under PROMESA "(1) reasonable compensation for actual, necessary services rendered by the professional person, or attorney and by any paraprofessional person employed by any such person; and (2) reimbursement for actual, necessary expenses."  PROMESA § 316(a).  Section 316 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1) the time spent on such services;
>
> (2) the rates charged for such services;
>
> (3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this subchapter or title 11.

41

PROMESA § 316(c).

84.     As noted above, the professional services and expenditures for which Proskauer seeks compensation and reimbursement in this Application were necessary and beneficial to the Oversight Board as representative of the Debtor, and included, among other things, anticipating or responding to the Oversight Board's needs and assisting in the Oversight Board's navigation of the Debtor's very complex Title III case.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Oversight Board.  The Oversight Board has reviewed and approved this Application.

## Reservations

85.     To the extent time or disbursement charges for services rendered or expenses incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, or Proskauer has for any other reason not yet sought compensation or reimbursement of expenses herein with respect to any services rendered or expenses incurred during the Compensation Period, Proskauer reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

## Notice

86.     Pursuant to the Interim Compensation Order and the *Eleventh Amended Case Management Procedures* [ECF No. 11885-1], notice of this Application has been filed in the Debtor's Title III Case and the lead Commonwealth of Puerto Rico's Title III Case and served upon:

> (a) the Financial Oversight and Management Board, 40 Washington Square South, Office 314A, New York, NY 10012, Attn: Professor Arthur J. Gonzalez, Oversight Board Member;

> (b) attorneys for the Financial Oversight and Management Board as representative of The Commonwealth of Puerto Rico, O'Neill & Borges LLC,  250 Muñoz Rivera

42

Ave., Suite 800, San Juan, PR 00918-1813, Attn: Hermann D. Bauer, Esq. (hermann.bauer@oneillborges.com);

(c) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq. (jrapisardi@omm.com), Suzzanne Uhland, Esq. (suhland@omm.com), Peter Friedman, Esq. (pfriedman@omm.com), Nancy A. Mitchell, Esq. (mitchelln@omm.com), and Maria J. DiConza, Esq. (mdiconza@omm.com);

(d) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, Marini Pietrantoni Muñiz LLC, 250 Ponce de León Ave., Suite 900, San Juan, PR 00918, Attn.: Luis C. Marini-Biaggi, Esq. (lmarini@mpmlawpr.com), Carolina Velaz-Rivero, Esq. (cvelaz@mpmlawpr.com), and Iván Garau-González, Esq. (igarau@mpmlawpr.com);

(e) the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Commonwealth of Puerto Rico*);

(f) attorneys for the Official Committee of Unsecured Creditors, Paul Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc A. Despins, Esq. (lucdespins@paulhastings.com), James Bliss, Esq. (jamesbliss@paulhastings.com), James Worthington, Esq. (jamesworthington@paulhastings.com), and G. Alexander Bongartz, Esq. (alexbongartz@paulhastings.com);

(g) attorneys for the Official Committee of Unsecured Creditors, Casillas, Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street, Suite 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala, Esq. (jcasillas@cstlawpr.com), Diana M. Batlle-Barasorda, Esq. (dbatlle@cstlawpr.com), Alberto J.E. Añeses Negrón, Esq. (aaneses@cstlawpr.com), and Ericka C. Montull-Novoa, Esq. (emontull@cstlawpr.com);

(h) attorneys for the Official Committee of Retired Employees, Jenner & Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert Gordon, Esq. (rgordon@jenner.com) and Richard Levin, Esq. (rlevin @jenner.com); and Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654, Attn: Catherine L. Steege, Esq. (csteege@jenner.com);

(i) attorneys for the Official Committee of Retired Employees, Bennazar, García & Milián, C.S.P., Edificio Union Plaza, PH-A piso 18, Ave. Ponce de León #416, Hato Rey, San Juan, PR 00918, Attn: A.J. Bennazar-Zequeira, Esq. (ajb@bennazar.org);

(j) the Puerto Rico Department of Treasury, PO Box 9024140, San Juan, PR 00902-4140, Attn: Reylam Guerra Goderich, Deputy Assistant of Central Accounting (Reylam.Guerra@hacienda.pr.gov); Omar E. Rodríguez Pérez, CPA, Assistant Secretary of Central Accounting (Rodriguez.Omar@hacienda.pr.gov); Angel L.

Pantoja Rodríguez, Deputy Assistant Secretary of Internal Revenue and Tax Policy (angel.pantoja@hacienda.pr.gov); Francisco Parés Alicea, Assistant Secretary of Internal Revenue and Tax Policy (francisco.pares@ hacienda.pr.gov); and Francisco Peña Montañez, CPA, Assistant Secretary of the Treasury (Francisco.Pena@hacienda.pr.gov);

(k) attorneys for the Fee Examiner, EDGE Legal Strategies, PSC, 252 Ponce de León Avenue, Citibank Tower, 12th Floor, San Juan, PR 00918, Attn: Eyck O. Lugo, Esq.  (elugo@edgelegalpr.com); and

(l) attorneys for the Fee Examiner, Godfrey & Kahn, S.C., One East Main Street, Suite 500, Madison, WI 53703, Attn: Katherine Stadler, Esq. (KStadler@gklaw.com).

Proskauer submits that, in light of the foregoing, no other or further notice need be provided.

WHEREFORE Proskauer respectfully requests that the Court issue an order (a) allowing interim compensation for professional services rendered during the Compensation Period in the amount of **$6,263,532.33**, which is comprised of (i) fees for professional services rendered in the amount of $5,694,120.30, and (ii) the Gross-Up Amount in the amount of $569,412.03,[25] and allowing reimbursement for actual and necessary expenses Proskauer incurred in connection with such services during the Compensation Period in the amount of **$316,994.84**; (b) authorizing and directing the Debtor to pay promptly to Proskauer the difference between (*i*) the amount of interim compensation for professional services rendered and reimbursement of expenses incurred during the Compensation Period allowed hereunder, and (*ii*) the amounts for such compensation and expenses previously paid to Proskauer, consistent with the provisions of the Interim Compensation Order; (c) allowing such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred without prejudice to Proskauer's right to seek additional compensation for services performed and expenses incurred during the

---

[25] Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

Compensation Period, which were not processed at the time of this Application; and (d) granting

Proskauer such other and further relief as is just and proper.

Dated: April 15, 2020
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Maja Zerjal (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
       ppossinger@proskauer.com
       ebarak@proskauer.com
       mzerjal@proskauer.com

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205

*/s/ Ubaldo M.  Fernández*
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and*
*Management Board as Representative of the*
*Debtor*