**Estimated Hearing Date**: July 29, 2020 at 9:30 a.m. (Atlantic Standard Time)
**Estimated Objection Deadline**: May 5, 2020 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO,<br>    Debtor. | PROMESA<br>Title III<br>Case No. 17-BK-3566-LTS<br><br>**This Application relates only to ERS and shall be filed in the lead case No. 17-BK-3283-LTS and ERS's Title III Case (Case No. 17-BK-3566-LTS)** |

## SUMMARY SHEET TO EIGHTH INTERIM FEE APPLICATION OF PROSKAUER ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE DEBTOR, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, FOR THE PERIOD OCTOBER 1, 2019 THROUGH JANUARY 31, 2020 AND NOTICE OF DEFERRAL OF REQUEST FOR PAYMENT OF RATE INCREASE

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**Schedule 1**

**Summary of Fees and Expenses Paid to Date and the Balance of Fees and
Expenses for which Allowance and Payment is Requested for the Compensation Period**

| | |
|---|---|
| Name of Applicant: | Proskauer Rose LLP ("Proskauer") |
| Retained to Provide Professional Services to: | The Financial Oversight and Management Board for Puerto Rico as Representative of the Debtor Pursuant to PROMESA section 315(b) |
| Period for Which Compensation is Sought: | October 1, 2019 through January 31, 2020 (the "Compensation Period") |
| Amount of Fees Sought excluding Gross-Up Amount: | $1,732,608.90 |
| Gross-Up Amount:[2] | $173,260.89 |
| Amount of Expense Reimbursement Sought: | $72,528.81 |
| Total Fees and Expenses Sought for Compensation Period including Gross-Up Amount: | $1,978,398.60 |
| Proskauer's Incremental Fees Not Currently Requested:[3] | $22,172.00 |

This is a(n)  ____ Monthly  _X_ Interim __ Final Fee Application

This is the eighth interim fee application filed by Proskauer in the Debtor's Title III Case.  The
total time expended in connection with the preparation of this interim application is not included
herein, as additional time was expended after the Compensation Period.

---

[2]  Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by the Commonwealth legislation (Act 257-2018) starting December 10, 2018 (the "Withholding").  But Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

[3]  Pursuant to the Engagement Letter dated November 25, 2016 between the Oversight Board and Proskauer (as defined below at footnote 7), Proskauer's rates under the engagement letter increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent."  (Engagement Letter at 1-2). Effective January 1, 2020, the rate increase is 4%, yielding a new flat rate for attorneys (partners, senior counsel, associates, and lawyers) of $820 per hour, for e-discovery attorneys of $405 per hour, and for paraprofessionals of $280 per hour.  Billed at this rate pursuant to the Engagement Letter, Proskauer's incremental fees for the Compensation Period total $22,172.00, as detailed in the attached **Exhibit E**. The Oversight Board has requested, however, and Proskauer has agreed not to request the current allowance and payment of the incremental fees.

**Eighth Interim Compensation Period**
**October 1, 2019 – January 31, 2020**

| Statement and Date Served | Period Covered | Total Fees Incurred | Fees Requested (90%) | Expenses Requested | Fees Paid (90%) | Expenses Paid |
|---|---|---|---|---|---|---|
| **Thirty– First** 11/25/2019 | 10/1/19 to 10/31/19 | $193,913.70 | $174,522.33 | $2,862.47 | $174,522.33 | $2,862.47 |
| **Thirty– Second** 12/23/2019 | 11/1/19 to 11/30/19 | $568,856.10 | $511,970.49 | $44,956.08 | $511,970.49 | $44,956.08 |
| **Thirty– Third** 1/25/2020 | 12/1/19 to 12/31/19 | $403,869.60 | $363,482.64 | $12,917.02 | $363,482.64 | $12,917.02 |
| **Thirty– Fourth** 2/27/2020 | 1/1/20 to 1/31/20 | $565,969.50 | $509,372.55 | $11,793.24 | $509,372.55 | $11,793.24 |
| **Totals:** | | **$1,732,608.90** | **$1,559,348.01** | **$72,528.81** | **$1,559,348.01** | **$72,528.81** |

Additional information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee:

| | |
|---|---|
| Blended Rate in This Application for All Attorneys: | $788.03[4] |
| Blended Rate in This Application for All Timekeepers: | $729.80 |
| Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed: | $1,559,348.01 |
| Expenses Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed: | $72,528.81 |
| Number of Professionals Included in this Application:[5] | 53 |
| Number of Professionals in This Application NOT Included in Staffing Plan Approved by Client:[6] | N/A |
| If Applicable, the Difference Between Fees Budgeted and Compensation Sought for This Application Period: | N/A |
| Number of Professionals Billing Fewer than 15 Hours to the Case During This Application Period: | 35 |

---

[4]  This rate excludes non-attorneys (*e.g.*, paralegals) and includes e-discovery attorneys.

[5]  As used herein, the term "professionals" includes all timekeepers.  The term "paraprofessionals," as used in this Application, only includes non-attorneys.

[6]  As noted in the Staffing Plan for the Compensation Period at Exhibit D-2 in the Application, the number of timekeepers expected to work on the matter during the Compensation Period was 57, and thus the total number of timekeepers was 4 fewer than anticipated.

| | |
|---|---|
| Any Rates Higher than Those Approved or Disclosed when Retained?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed at retention. | No.  Proskauer's Engagement Letter with the Oversight Board provides Proskauer's rates increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent."  (Engagement Letter at 1-2).  As of January 1, 2020, the rate increase is 4%, yielding a new flat rate for attorneys (partners, senior counsel, associates, and lawyers) of $820 per hour, for e-discovery attorneys of $405 per hour, and for paraprofessionals of $280 per hour.  Billed at this rate, as negotiated in the Engagement Letter, Proskauer's incremental fees for the Compensation Period total $22,172.00, as detailed in the attached **Exhibit E**.  Pursuant to the Oversight Board's request, Proskauer has not included a request for current payment of the increase in our hourly rates provided for in our Engagement Letter with the Oversight Board.  Instead, Proskauer is currently requesting the allowance and payment of the preexisting prevailing rates detailed in the Fifth Interim Application: $789 per hour for attorneys, $390 per hour for e-discovery attorneys, and $270 per hour for paraprofessionals. |

**Schedule 2**

**Summary of Professional Services Rendered by
Timekeeper for the Period October 1, 2019 through January 31, 2020**

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| *PARTNERS* | | | | |
| Bienenstock, Martin J. | BSGR&B[8] – 1978 | $789 | 117.10 | $92,391.90 |
| Cacace, Anthony S. | Labor & Employment – 2009 | $789 | 0.40 | $315.60 |
| Dale, Margaret A. | Litigation – 1990 | $789 | 215.30 | $169,871.70 |
| Febus, Chantel L. | Litigation – 2003 | $789 | 9.30 | $7,337.70 |
| Ferrara, Ralph C. | Litigation – 1970 | $789 | 4.80 | $3,787.20 |
| Firestein, Michael A. | Litigation – 1983 | $789 | 9.30 | $7,337.70 |
| Hackett, Michael R. | Litigation – 2009 | $789 | 7.30 | $5,759.70 |
| Hamburger, Paul M. | Labor & Employment – 1985 | $789 | 14.00 | $11,046.00 |
| Harris, Mark | Litigation – 1992 | $789 | 0.30 | $236.70 |
| Levitan, Jeffrey W. | BSGR&B – 1983 | $789 | 200.00 | $157,800.00 |

[7]  In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other conditions and apply to matters in and out of bankruptcy cases.  Pursuant to the Appendix B Guidelines, "rate increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion." Appendix B Guidelines ¶ B.2.d, n.2. Annual step increases are awarded by Proskauer in the ordinary course throughout the firm on May 1.  Proskauer's November 25, 2016 engagement letter with the Oversight Board (a copy of which is attached hereto as **Exhibit F**) (the "Engagement Letter") provides that Proskauer's rates are increased on January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and four percent.

Furthermore, the Engagement Letter provides Proskauer's rates increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent."  (Engagement Letter at 1-2).  As of January 1, 2020, the rate increase is 4%, yielding a new flat rate for attorneys (partners, senior counsel, associates, and lawyers) of $820 per hour, for e-discovery attorneys of $405 per hour, and for paraprofessionals of $280 per hour.  Billed at this rate as negotiated in the Engagement Letter, Proskauer's incremental fees for the Compensation Period total $22,172.00, as detailed in the attached **Exhibit E**. Pursuant to the Oversight Board's request, however, Proskauer has not included a request for current payment of the increase in our hourly rates provided for in our Engagement Letter with the Oversight Board.  Instead, Proskauer is currently requesting the allowance and payment of fees calculated at the preexisting rates detailed in the Fifth Interim Application: $789 per hour for attorneys, $390 per hour for e-discovery attorneys, and $270 per hour for paraprofessionals.

[8]  Business Solutions, Governance, Restructuring & Bankruptcy ("BSGR&B").

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Mungovan, Timothy W. | Litigation – 1994 | $789 | 8.80 | $6,943.20 |
| Perra, Kevin J. | Litigation – 1995 | $789 | 4.90 | $3,866.10 |
| Possinger, Paul V. | BSGR&B – 1993 | $789 | 8.10 | $6,390.90 |
| Rappaport, Lary Alan | Litigation – 1979 | $789 | 7.60 | $5,996.40 |
| Ratner, Stephen L. | Litigation – 1975 | $789 | 3.10 | $2,445.90 |
| Richman, Jonathan E. | Litigation – 1984 | $789 | 9.40 | $7,416.60 |
| Roberts, John E.[9] | Litigation – 2009 | $789 | 59.30 | $46,787.70 |
| Rosen, Brian S. | BSGR&B – 1983 | $789 | 46.90 | $37,004.10 |
| Schelberg, Neal S. | Labor & Employment – 1980 | $789 | 0.70 | $552.30 |
| Weise, Steven O. | Corporate – 1974 | $789 | 188.90 | $149,042.10 |
| Zerjal, Maja | BSGR&B – 2012 | $789 | 6.20 | $4,891.80 |
| **Total for Partners:** | | | **921.70** | **$727,221.30** |
| *SENIOR COUNSEL* | | | | |
| Roberts, John E.[9] | Litigation – 2009 | $789 | 0.10 | $78.90 |
| Roche, Jennifer L. | Litigation – 2007 | $789 | 241.00 | $190,149.00 |
| **Total for Senior Counsel:** | | | **241.10** | **$190,227.90** |
| *ASSOCIATES* | | | | |
| Carino, Elisa M. | Litigation – 2019 | $789 | 78.20 | $61,699.80 |
| Clark, Brandon C. | Litigation – 2014 | $789 | 4.70 | $3,708.30 |
| Dalsen, William D. | Litigation – 2011 | $789 | 360.30 | $284,276.70 |
| Esses, Joshua A. | BSGR&B – 2017 | $789 | 244.70 | $193,068.30 |
| Kim, Mee R. | Litigation – 2016 | $789 | 66.00 | $52,074.00 |
| Mazurek, Carl A. | Litigation – 2018 | $789 | 131.60 | $103,832.40 |
| Morris, Matthew J. | Litigation – 2000 | $789 | 7.60 | $5,996.40 |
| Omorogbe, Philip | BSGR&B – 2019 | $789 | 10.60 | $8,363.40 |
| Skrzynski, Matthew A. | BSGR&B – 2017 | $789 | 12.30 | $9,704.70 |

---

[9]  Promoted to Proskauer's partnership effective November 1, 2019.

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Sosa, Javier F. | Litigation – 2019 | $789 | 12.40 | $9,783.60 |
| Stach, Alyse F. | Litigation – 2011 | $789 | 1.00 | $789.00 |
| Stafford, Laura | Litigation – 2012 | $789 | 4.50 | $3,550.50 |
| Stevens, Elliot R. | BSGR&B – 2018 | $789 | 0.90 | $710.10 |
| Vora, Hena M. | Litigation – 2018 | $789 | 4.50 | $3,550.50 |
| **Total for Associates:** | | | **939.30** | **$741,107.70** |
| *E–DISCOVERY ATTORNEYS* | | | | |
| Friedman, Olga | Professional Resources – 2008 | $390 | 3.00 | $1,170.00 |
| Ike, Yvonne O. | Professional Resources – 2009 | $390 | 2.10 | $819.00 |
| **Total for e–Discovery Attorneys:** | | | **5.10** | **$1,989.00** |
| *PARAPROFESSIONALS* | | | | |
| Adejobi, Olaide M. | Litigation Paralegal – N/A | $270 | 30.50 | $8,235.00 |
| Chernus, Eric R. | Professional Resources – N/A | $270 | 8.40 | $2,268.00 |
| Geary, Laura | Litigation Paralegal – N/A | $270 | 10.10 | $2,727.00 |
| Henderson, Laurie A. | Professional Resources – N/A | $270 | 2.00 | $540.00 |
| King, Charles H. | Litigation Paralegal – N/A | $270 | 10.00 | $2,700.00 |
| McPeck, Dennis T. | Litigation Paralegal – N/A | $270 | 2.00 | $540.00 |
| Monforte, Angelo | Litigation Paralegal – N/A | $270 | 21.70 | $5,859.00 |
| Neuberger, Scarlett A. | BSGR&B Paralegal – N/A | $270 | 0.60 | $162.00 |
| Pantoja, Karina | Labor & Employment Paralegal – N/A | $270 | 1.10 | $297.00 |

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Petrov, Natasha | BSGR&B Paralegal – N/A | $270 | 32.50 | $8,775.00 |
| Schaefer, Shealeen E. | Labor & Employment Paralegal – N/A | $270 | 64.70 | $17,469.00 |
| Silvestro, Lawrence T. | Litigation Paralegal – N/A | $270 | 23.20 | $6,264.00 |
| Singer, Tal J. | BSGR&B Paralegal – N/A | $270 | 10.40 | $2,808.00 |
| Sutherland, Julia L. | Litigation Paralegal – N/A | $270 | 1.30 | $351.00 |
| Tarrant, Christopher M. | BSGR&B Paralegal – N/A | $270 | 48.40 | $13,068.00 |
| **Total for Paraprofessionals:** | | | **266.90** | **$72,063.00** |

| PROFESSIONALS | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|
| **Attorneys and Paraprofessionals Total:** | **2,374.10** | **$1,732,608.90** |

**Schedule 3**

**Summary of Professional Services Rendered by Project
Category for the Period October 1, 2019 through January 31, 2020**

| PROJECT CATEGORY | DESCRIPTION | HOURS | FEES SOUGHT |
|---|---|---|---|
| 201 | Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants | 9.00 | $7,101.00 |
| 202 | Legal Research | 35.50 | $27,386.70 |
| 203 | Hearings and Other Non–Filed Communications with the Court | 7.40 | $5,838.60 |
| 204 | Communications with Claimholders | 32.10 | $25,326.90 |
| 205 | Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities | 14.70 | $11,598.30 |
| 206 | Documents Filed on Behalf of the Board | 237.40 | $187,308.60 |
| 207 | Non-Board Court Filings | 21.40 | $16,884.60 |
| 208 | Stay Matters | 14.30 | $9,310.50 |
| 210 | Analysis and Strategy | 868.50 | $684,847.50 |
| 211 | Non-Working Travel Time | 25.40 | $20,040.60 |
| 212 | General Administration | 230.00 | $62,592.00 |
| 215 | Plan of Adjustment and Disclosure Statement | 1.30 | $1,025.70 |
| 218 | Employment and Fee Applications | 43.30 | $15,479.70 |
| 219 | Appeal | 833.80 | $657,868.20 |
| | **Total for All Project Categories:** | **2,374.10** | **$1,732,608.90** |

**Schedule 4**

**Summary of Actual and Necessary Expenses Incurred
for the Period October 1, 2019 through January 31, 2020**

| EXPENSE CATEGORY | AMOUNTS |
|---|---:|
| Airplane | $3,964.93 |
| Filing And Court Costs | $2,248.50 |
| Food Service/Conference Dining | $642.36 |
| Lexis/Westlaw | $26,788.00 |
| Lodging | $3,715.31 |
| Messenger/Delivery | $121.61 |
| Other Database Research | $3.70 |
| Out Of Town Meals | $272.20 |
| Out Of Town Transportation | $1,165.52 |
| Printing, Binding, etc. | $9,013.38 |
| Reproduction | $1,646.60 |
| Subpoena Service | $80.00 |
| Taxi, Carfare, Mileage and Parking | $99.40 |
| Transcripts & Depositions | $22,812.10 |
| Trial Transcriptions | $115.20 |
| **Total:** | **$72,528.81** |

**Schedule 5**

**Blended Rate Chart**

| CATEGORY OF TIMEKEEPER | BLENDED HOURLY RATE | |
|---|---|---|
| | **BILLED**<br><br>**Domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the application period, for preceding year, *excluding bankruptcy*** | **BILLED**<br><br>**In this fee application[10]** |
| Partners | $1,197 | $789 |
| Senior Counsel | $1,020 | $789 |
| Associates (7 or more years since first admission) | $927 | $789 |
| Associates (4-6 years since first admission) | $870 | $789 |
| Associates (1-3 years since first admission) & Lawyers[11] | $704 | $789 |
| e-Discovery Attorneys | $692 | $390 |
| Paraprofessionals | $330 | $270 |
| **All Timekeepers Aggregated:** | **$895** | **$729.80** |

---

[10] *See supra* note 7.

[11] Partners, senior counsel, and all associates, including first year associates, are billed at the attorney rate. Lawyers consist of incoming first year associates who have not yet been admitted into their respective state bars, the timing of which varies on an individual and jurisdictional basis. In previous interim fee applications, timekeepers in this category were classified as "law clerks" and billed at the same rate as paralegals. The Engagement Letter permits Proskauer to bill all incoming attorneys (i.e. first year associates) from the day they join the firm, in accordance with Proskauer's usual practice in non-Puerto Rico matters. Thus, Proskauer considers all timekeepers in this category to be attorneys, billed at the same rate as other associates. Proskauer reserves the right to seek payment of the full associate rate charged for all time billed by these lawyers, including time previously billed by these lawyers under the designation of "law clerk," through either amended or supplemental interim fee applications or Proskauer's final fee application in this Title III case.

**Estimated Hearing Date**: July 29, 2020 at 9:30 a.m. (Atlantic Standard Time)
**Estimated Objection Deadline**: May 5, 2020 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO,<br>    Debtor. | PROMESA<br>Title III<br>Case No. 17-BK-3566-LTS<br><br>**This Application relates only to ERS and shall be filed in the lead Case No. 17-BK-3283-LTS and ERS's Title III Case (Case No. 17-BK-3566-LTS)** |

## EIGHTH INTERIM FEE APPLICATION
## OF PROSKAUER ROSE LLP FOR COMPENSATION
## FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES
## INCURRED AS ATTORNEYS FOR THE FINANCIAL OVERSIGHT AND
## MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE
## DEBTOR, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF
## PUERTO RICO, FOR THE PERIOD OCTOBER 1, 2019 THROUGH JANUARY 31, 2020
## AND NOTICE OF DEFERRAL OF REQUEST FOR PAYMENT OF RATE INCREASE

Proskauer Rose LLP ("Proskauer"), attorneys for the Financial Oversight and Management

Board for Puerto Rico (the "Oversight Board" or "FOMB") as representative of the Employees

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case

Retirement System of the Government of Puerto Rico (the "Debtor" or "ERS") pursuant to section

315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2]

hereby submits this eighth interim application (the "Application"),[3] pursuant to PROMESA

sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"),[4] Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for

the District of Puerto Rico (the "Local Rules"), and the *United States Trustee Guidelines for*

*Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C.*

*§ 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United

States Trustee, 28 CFR Part 58, Appendix B (the "Guidelines"), and in accordance with this

Court's *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement*

*of Expenses of Professionals* [Case No. 17-BK-3283-LTS, ECF No. 3269][5] (the "Interim

Compensation Order"), for (a) allowance of interim compensation for professional services

performed by Proskauer for the period commencing October 1, 2019 through and including

January 31, 2020 (the "Compensation Period") in the amount of **$1,905,869.79**, which is

comprised of (i) fees for professional services rendered in the amount of $1,732,608.90, and (ii)

the Gross-Up Amount in the amount of $173,260.89;[6] and (b) reimbursement of its actual and

---

No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy
Case numbers due to software limitations).

[2]  PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]  The Application solely pertains to fees and expenses incurred with respect to the Debtor's Title III Case and does
not address fees or expenses incurred with respect to other services performed for the Oversight Board (a) on behalf
of other Title III debtors, or (b) outside the Title III process.

[4]  The Bankruptcy Rules are made applicable to the Debtor's Title III Case by PROMESA section 310.

[5]  Unless otherwise expressly indicated, ECF Numbers refer to the docket of the Commonwealth's Title III Case, Case
No. 17-BK-3283-LTS.

[6]  Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional
tax withholding (the "Gross-Up Amount") introduced by the Commonwealth legislation (Act 257-2018) starting
December 10, 2018 (the "Withholding").  But Proskauer will only request payment of the Gross-Up Amount from
the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service

necessary expenses in the amount of **$72,528.81** incurred during the Compensation Period.  In support of the Application, Proskauer respectfully avers as follows:

### Jurisdiction

1.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Application pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

3.      The statutory predicates for the relief requested herein are PROMESA sections 316 and 317.

### Background

4.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this subchapter is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including filing a petition under section [304] of [PROMESA] . . . or otherwise generally submitting filings in relation to the case with the court." PROMESA § 315(a), (b).

6.      On September 30, 2016, the Oversight Board designated the Debtor as a "covered entity" under PROMESA section 101(d).

7.      On November 25, 2016, the Oversight Board retained Proskauer at substantial discounts to its normal hourly rates, as shown by the Engagement Letter and by **Schedule 5** above.

---

that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

8.      On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Debtor's Title III Case").  Pursuant to PROMESA section 315(b), the Oversight Board is the Debtor's representative in the Debtor's Title III Case.

9.      On December 15, 2017, Proskauer filed the *First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Employees Retirement System of the Government of Puerto Rico, for the Period May 21, 2017 through September 30, 2017* [Case No. 17-BK-3283-LTS, ECF No. 2045] (the "First Interim Application").

10.     On April 9, 2018, Proskauer filed the *Second Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Employees Retirement System of the Government of Puerto Rico, for the Period October 1, 2017 through January 31, 2018* [Case No. 17-BK-3283-LTS, ECF No. 2872] (the "Second Interim Application").

11.     On July 17, 2018, Proskauer filed the *Third Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Employees Retirement System of the Government of Puerto Rico, for the Period February 1, 2018 through May 31, 2018* [Case No. 17-BK-3283-LTS, ECF No. 3590] (the "Third Interim Application").

12.     On November 16, 2018, Proskauer filed the *Fourth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Employees Retirement System of the Government of Puerto Rico, for the Period June 1, 2018 through September 30, 2018* [Case No. 17-BK-3283-LTS, ECF No. 4292] (the "Fourth Interim Application").

13.     On May 21, 2019, Proskauer filed the *Fifth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Employees Retirement System of the Government of Puerto Rico, for the Period October 1, 2018 through January 31, 2019* [Case No. 17-BK-3283-LTS, ECF No. 7049] (the "Fifth Interim Application").

14.     On September 20, 2019, Proskauer filed the *Sixth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Employees Retirement System of the Government of Puerto Rico, for the Period February 1, 2019 through May 31, 2019* [Case No. 17-BK-3283-LTS, ECF No. 8737] (the "Sixth Interim Application").

15.     On December 20, 2019, Proskauer filed the *Seventh Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Employees Retirement System of the Government of Puerto*

*Rico, for the Period June 1, 2019 through September 30, 2019* [Case No. 17-BK-3283-LTS, ECF No. 9630] (the "Seventh Interim Application").

16.     On November 25, 2019, Proskauer served on the Notice Parties (as defined in the Interim Compensation Order) its thirty-first monthly fee statement for the period October 1, 2019 through October 31, 2019.  On December 23, 2019, Proskauer served on the Notice Parties its thirty-second monthly fee statement for the period November 1, 2019 through November 30, 2019.  On January 25, 2020, Proskauer served on the Notice Parties its thirty-third monthly fee statement for the period December 1, 2019 through December 31, 2019.  On February 27, 2020, Proskauer served on the Notice Parties its thirty-fourth monthly fee statement for the period January 1, 2020 through January 31, 2020.

17.     In accordance with the Interim Compensation Order and as reflected in the foregoing summary, Proskauer has requested an aggregate payment of **$1,631,876.82** (payment of ninety percent (90%) of the compensation sought and reimbursement of one-hundred percent (100%) of expenses incurred) and has received **$1,631,876.82** with respect to fee statements filed during the Compensation Period.

**Summary of Services Rendered by Proskauer During the Compensation Period**

18.     The instant Application is Proskauer's eighth application for interim compensation in the Debtor's Title III Case.  To make the review of Proskauer's fee applications in all the pending Title III cases more efficient for the Court and other readers, paragraphs 19 through 23 of the instant Application, and the corresponding paragraphs in each of Proskauer's eighth interim fee applications in the other pending Title III cases, are identical and cover the principal activities in all the Title III cases.

6

19.     Since the commencement of these Title III cases, Proskauer has achieved significant progress on the behalf of the Oversight Board.[7] This Compensation Period, Proskauer furthered this progress, servicing many new Oversight Board projects, while maintaining momentum gained from the preceding periods.   Among its numerous roles, Proskauer provided legal and strategic advice to the Oversight Board as it certified new fiscal plans and budgets for the Commonwealth and its covered instrumentalities.   Concurrently, Proskauer negotiated amendments to the initial joint Title III plan of adjustment for the Commonwealth, ERS and PBA (the "Initial Joint Plan"), filed on September 27, 2019. Moreover, Proskauer litigated and vigorously defended the Oversight Board and the Debtors' interests in numerous contested matters, adversary proceedings and appeals involving statutory committees, monoline insurers, bondholders, creditors and other interested parties.   In so doing, Proskauer's efforts were instrumental in retaining billions of dollars within the estates of the Title III Debtors.   Of particular note, Proskauer secured landmark judgments before the United States Court of Appeals for the First Circuit (the "First Circuit"), including the First Circuit's affirmation of this Title III Court's ruling that under Bankruptcy Code section 552 any security interest resulting from liens granted to the ERS bondholders prior to the commencement of the ERS Title III case do not attach to employer contributions received by ERS during the postpetition period.   As a consequence, the Commonwealth is relieved of up to approximately $3.5 billion of principal and interest.   Proskauer also formulated and prosecuted a motion for summary judgment sustaining the Oversight Board's complaint that sought to nullify Law 29 and enjoin its implementation and enforcement.

---

[7] The Seventh Interim Application contains an overview of Proskauer's progress on behalf of the Oversight Board from the commencement of the case until the time period covered by the Seventh Interim Application.

20. Throughout the Compensation Period, Proskauer continued to object to defective claims against the Debtors, provide ongoing legal assistance to the Oversight Board, and negotiate with various creditors, statutory committees, government parties and other parties in interest in furtherance of each of the Debtors' respective restructurings, and, ultimately, to propel the Oversight Board closer to its PROMESA-prescribed mandate of returning the Commonwealth and its instrumentalities to fiscal responsibility and access to capital markets. A summary of Proskauer's notable achievements, including Proskauer's advocacy on behalf of the Oversight Board before the First Circuit and Title III Court, follows:

- <u>New Fiscal Plans and Budgets</u>. Proskauer counseled the Oversight Board as it, along with its financial and strategic advisors, analyzed data and assessed the economic and structural impact of proposed fiscal plans and budgets for the Commonwealth and its covered instrumentalities. Proskauer provided ongoing assistance with emergent legal issues, and drafted key portions of the new fiscal plans and budgets to achieve PROMESA's mandate to restore Puerto Rico to fiscal responsibility and access to capital markets.

- <u>Claim Objections</u>. In connection with proofs of claim filed against the Debtors,[8] Proskauer filed a total of 82 omnibus objections between October 1, 2019 and January 31, 2020. Proskauer committed a significant amount of time and effort to reviewing the proofs of claim and preparing and filing objections, as well as reviewing responses to various objections, negotiating resolutions to the objections with creditors, preparing and filing replies in support of their objections, and attending several related hearings. As a result of Proskauer's efforts, between October 1, 2019, and January 31, 2020, thousands of claims have been fully or partially expunged, or will be fully or partially expunged upon the entry of final orders. Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.[9]

- <u>PBA Title III Case</u>. Proskauer provided ongoing assistance related to the Puerto Rico Public Buildings Authority ("<u>PBA</u>") Title III case, which commenced on September 27, 2019. Proskauer counseled the Oversight Board in extensive

---

[8] Pursuant to the Bar Date Orders [ECF Nos. 2521 and 3160], approximately 177,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.

[9] Of the proofs of claim filed, over 3,000 claims were filed in relation to COFINA, totaling approximately $10.1 trillion in asserted claims; approximately 55,000 claims were filed in relation to, or reclassified to be asserted against, ERS, totaling approximately $10.2 trillion in asserted claims; over 2,240 claims were filed in relation to HTA, totaling approximately $83.1 billion in asserted claims; and approximately 110,600 claims were filed against the Commonwealth, totaling approximately $33.2 trillion in asserted claims.

discussions with the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and PBA, their respective advisors, constituents of PBA creditors, and other key stakeholders, regarding PBA's Title III restructuring.

- Development of the Amended Joint Plan and Disclosure Statement. Throughout this Compensation Period, Proskauer advised the Oversight Board in its continued development of an amended proposed plan of adjustment for the Commonwealth, PBA and ERS, and in negotiations with key stakeholders related to such plan. Through efforts of Proskauer and its professionals, the Oversight Board filed the *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 11946] and proposed *Disclosure Statement for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 11947] on February 28, 2020, bringing the Commonwealth and its instrumentalities closer to the resolution of their Title III cases.

- Mandatory Mediation, Stayed Proceedings, and Stay Relief Defense. Proskauer hosted and actively participated in mandatory mediation sessions ordered by this Court involving the Oversight Board, AAFAF, the Official Committee of Unsecured Creditors (the "UCC"), and other key stakeholders in these Title III Cases.[10] Among other things, this order and subsequent orders[11] stayed over twenty contested matters and other adversary proceedings of significant consequence for Puerto Rico's fiscal and economic revival.[12] In preparation for the multitude of litigation associated with these stayed proceedings, Proskauer had conducted extensive and rigorous briefing of the complex issues raised, the vast majority of which were of first impression. At the same time that Proskauer represented the Oversight Board in the continued mediations, Proskauer's litigators, bankruptcy experts and other specialists prepared the Oversight Board's legal positions and defenses including oppositions to non-stayed stay relief motions filed in connection with bonds issued by the Puerto Rico Convention Center District Authority ("CCDA"),[13] HTA,[14] and the Puerto Rico Infrastructure

---

[10] *See Order Regarding Stay Period and Mandatory Mediation* [ECF No. 8244].

[11] *See e.g. Order Addressing the Filing of an Amended Report by the Mediation Team and Extending (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* [ECF No. 9618].

[12] For a complete listing of the stayed contested matters and adversary proceedings *see* ECF No. 8244, Appendix I and ECF No. 9618, n. 3.

[13] On January 16, 2020, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation ("Ambac"), the Financial Guaranty Insurance Company ("FGIC"), and The Bank of New York Mellon, as the fiscal agent, filed a motion [ECF No. 10104] for (i) an order that the automatic stay does not apply to their proposed action to enforce CCDA bondholders' purported rights to revenues from hotel taxes, or, in the alternative, (ii) relief from the automatic stay to pursue the proposed action, or, in the further alternative, (iii) adequate protection. Movants allege they insure bonds issued by CCDA, which are secured by tax revenues generated under the Hotel Occupancy Tax Act. Movants also allege the automatic stay does not apply to their proposed action because the Commonwealth has no property interest in the revenues, which are the property of CCDA bondholders. Movants further argue that if the automatic stay does apply, it should be lifted because (i) the Commonwealth has no equity in the Hotel Taxes and they are unnecessary to an effective reorganization under Bankruptcy Code section 362(d)(2); (ii) Movants lack adequate protection under Bankruptcy Code section 362(d)(1); and (iii) the Commonwealth has violated PROMESA, Commonwealth law and the Constitution by taking bondholders' property (the "CCDA Lift Stay Motion").

Financing Authority ("PRIFA").[15]  Proskauer's efforts advocating for the Debtors' best interests in these proceedings remain ongoing.

21.     First Circuit Appeals. Proskauer defended and litigated several matters before the First Circuit, and obtained pivotal judgments resulting, among other things, in the insulation of postpetition employer contributions from being encumbered by liens.   (Although the Commonwealth enacted legislation terminating employer contributions in connection with the establishment of PayGo, the Commonwealth is still facing litigation claiming, among other things, PayGo should be considered employer contributions.)

- Ongoing First Circuit Appeals include:

(1) Rene Pinto-Lugo et al. and Manuel Natal-Albelo v. Commonwealth, Case No. 19-1181; Elliott, Hein and Dvores v. Commonwealth, Case No. 19-1182; and

---

[14] On January 16, 2020, Assured, National, Ambac, and FGIC filed an amended lift stay motion [Case No. 17-3823, ECF Nos. 10102 and 10107], which further alleges that the Court should lift the automatic stay because otherwise Movants' due process rights will be violated (the "HTA Lift Stay Motion").

[15] On May 30, 2019, Ambac filed a motion requesting an order that the Title III automatic stay does not apply to certain anticipated lawsuits relating to bonds issued by PRIFA.  In the alternative, Ambac sought (i) relief from the stay to allow Ambac to pursue those lawsuits in different courts, or (ii) an order compelling the Commonwealth to provide adequate protection for Ambac's purported collateral.  Ambac holds and insures bonds issued by PRIFA. On June 6, 2019, Proskauer, on behalf of the Oversight Board, filed, among other things, a motion to dismiss Ambac's motion for lack of standing.  On June 7, 2019, the Court denied the motion to dismiss without prejudice to the Oversight Board raising the same arguments in its response to Ambac's motion.  On July 3, 2019, the Oversight Board and AAFAF filed oppositions to Ambac's motion for relief, inclusive of the arguments raised in the Oversight Board's motion to dismiss.  Ambac and FGIC filed a joint reply on July 16, 2019.  On July 17, 2019, the Court issued an order directing the Oversight Board to file a sur-reply to Ambac and FGIC's reply by July 19, 2019.  On July 19, 2019, the Oversight Board filed its sur-reply together with an objection to a joinder motion filed by monoline insurers Assured Guaranty Corp. and Assured Guaranty Municipal Corp.  On July 24, 2019, the Court issued an order staying the matter through November 30, 2019.  On October 28, 2019, the Court issued an order further staying the matter through December 31, 2019.  On December 19, 2019, the Court entered an interim case management order regarding certain issues related to revenue bonds, which required that any motion for leave to amend the lift stay motion be filed by January 16, 2020.  On January 16, 2020, Ambac, FGIC, Assured Guaranty Corp., Assured Guaranty Municipal Corp. and U.S. Bank Trust National Association filed a motion for leave to amend, which proposed adding (i) the trustee as a moving party, (ii) discussion of the First Circuit's decision in *Gracia-Gracia v. Financial Oversight & Management Board*, 939 F.3d 340 (1st Cir. 2019), and (iii) discussion of factual developments regarding the pledged rum taxes.  In the proposed amended motion, Movants removed the argument that the automatic stay does not apply, but included the arguments that the stay should be lifted because (i) the Commonwealth lacks equity in the rum tax remittances deposited in the Commonwealth's Treasury Single Account, and (ii) the rum taxes are unnecessary to an effective reorganization because the Commonwealth lacks a property interest in them.   During the Compensation Period, Proskauer researched and drafted its response to Movants motion for leave to amend, and on January 22, 2020, the Commonwealth filed its opposition to the motion to amend.  On January 25, 2020, Movants filed a reply in support of their motion to amend.  On January 31, 2020, the Court granted Ambac's motion for leave to amend.

10

<u>Cooperativas v. COFINA</u>, Case No. 19-1391:[16] During this Compensation Period, Proskauer, on behalf of the Oversight Board, filed its responsive brief. The appeals remain ongoing and Proskauer continues to review pleadings filed by the various parties and research the issues in order to prepare for oral argument.

(2) <u>Centro de Salud Familiar J.P.F., et al., v. Commonwealth of Puerto Rico</u>, Case No. 19-1189:[17] Plaintiffs filed their brief on appeal on October 7, 2019, and Proskauer, on behalf of the Oversight Board, researched and drafted its answering brief which was subsequently filed on December 13, 2019. Appellants' reply brief and oral argument will follow.

(3) <u>Andalusian Global Designated v. FOMB, et al</u>, Case No. 20-1065: Plaintiffs filed their opening brief on appeal on January 15, 2020, and Proskauer, on behalf of the Oversight Board, researched and drafted its answering brief which was subsequently filed on February 7, 2020.

- <u>Significant Judgments issued by the First Circuit</u>:

  o <u>Vazquez-Garced, et al v. FOMB, et al</u>, Case No. 18-2154:  On November 20, 2018, the First Circuit certified for review certain issues concerning Adv. Proc. No. 18-00080;[18] oral arguments were held on July 24, 2019.  On December 18, 2019, the First Circuit affirmed the District Court decision, confirming there is nothing in PROMESA section 205 "suggesting that, by first seeking the Governor's agreement on a matter, the Board somehow loses whatever ability it

---

[16] On February 22, 2019, three sets of appellants filed appeals of the order confirming the COFINA Plan of Adjustment including: (i) Rene Pinto-Lugo and Manuel Natal-Albelo (<u>Rene Pinto-Lugo et al. and Manuel Natal-Albelo v. Commonwealth</u>, Case No. 19-1181 (1st Cir.)) ("<u>Pinto-Lugo</u>"), (ii) Mark Elliott, Lawrence B. Dvores, and Peter C. Hein (<u>Elliott, Hein and Dvores v. Commonwealth</u>, Case No. 19-1182 (1st Cir.)) ("<u>Elliott</u>"), and (iii) Cooperativa de Ahorro y Credito Dr. Manuel Zeno Gandia, Cooperativa de Ahorro y Credito de Juana Diaz, and Cooperativa de Ahorro y Credito de Rincon (<u>Cooperativas v. COFINA</u>, Case No. 19-1391 (1st Cir.) (the "<u>Cooperativas</u>").

[17] On April 2, 2018, Magistrate Judge Dein, at ECF No. 55 in Adv. Proc. No. 17-00227, issued a report and recommendation on a motion by the Commonwealth for abstention and remand of the matter.  Magistrate Judge Dein recommended the motion be granted, the case be remanded back to the Commonwealth Court, and the stay be lifted to allow Plaintiffs to proceed to judgment in the Commonwealth Court.  Plaintiffs objected to the recommendation and report.   On July 10, 2018, the Title III Court entered a memorandum order overruling objections to and adopting the April 2, 2018 report and recommendation, and granting the Commonwealth's motion for abstention, and directed the case to be remanded.  On August 8, 2018, plaintiffs appealed the Title III Court's order to the First Circuit, which was docketed on February 25, 2019.

[18] This appeal stems from <u>Rosselló Nevares v. The Financial Oversight and Management Board for Puerto Rico</u>, Adv. Proc. No. 18-00080.  On July 12, 2018, the Oversight Board filed a motion to dismiss the complaint.  On July 17, 2018, Plaintiffs filed an opposition to the motion to dismiss, and on July 20, 2018, the Oversight Board filed a reply in support of its motion to dismiss.  On August 7, 2018, the Title III Court entered an order granting in part and denying in part the motion to dismiss.  On September 10, 2018, Plaintiffs filed an urgent motion requesting certification of the Title III Court's August 7, 2018 opinion and order for immediate appeal under PROMESA sections 306(e)(3)–(4).  On October 9, 2018, the Title III Court entered a memorandum order certifying certain aspects of the August 27, 2018 opinion and order for interlocutory appeal.  The appeal was docketed as Case No. 18-8021.  The Oversight Board answered the complaint's remaining claims on November 2, 2018.

otherwise had to act unilaterally on the matter," and the Oversight Board has the power to adopt "a rejected recommendation if it otherwise has the power to adopt the recommended action on its own." The First Circuit further affirmed the District Court's ruling on reprogramming, noting "PROMESA prohibits the Governor from spending any funds that are not budgeted regardless of whether the recommendation had been adopted" and "regardless of what any territorial laws say."

o   Employees Retirement System, et al v. Andalusian Global Designated, et al., Case No. 19-1699 and Employees Retirement System, et al v. PR AAA Portfolio Target, et al., Case No. 19-1700: On January 30, 2020, the First Circuit affirmed the Title III Court's decision[19] that under section 552, any security interest resulting from liens granted to the ERS bondholders prior to the commencement of the ERS Title III case do not attach to revenue received by ERS during the postpetition period.

• PREPA 9019 Motion.[20] During the Compensation Period, Proskauer divided its efforts

---

[19] On April 2, 2019, ERS filed the Motion of Debtor for Leave to File an Amended and Supplemented Adversary Complaint (the "Motion to Amend") [Adv. Proc. No. 17-00213, ECF No. 236], requesting the Title III Court grant ERS leave to file an amended complaint to raise issues concerning the nature and extent of the security interests alleged and the proper method of perfection of any security interest, and determine whether Bankruptcy Code section 552(a) operates to prevent the ERS bondholders' asserted lien from attaching to Employers' Contributions generated and received post-petition. On June 27, 2019, the Title III Court issued an order, (the "Section 552 Order"), granting summary judgment in favor of ERS, holding that Bankruptcy Code section 552 prevents any security interest resulting from liens granted in ERS bondholders' favor prior to the ERS Petition Date from attaching to revenues generated and received by ERS during the post-petition period. That order also held that Employers' Contributions were not special revenues as defined by Bankruptcy Code section 902(a) and (d), and that Bankruptcy Code section 552 should not be construed as applying only to security interests granted after PROMESA's enactment. On July 8, 2019, the Court issued an order and judgment closing the case. On July 9, 2019, ERS bondholders filed notices of appeals of the order by the Title III Court regarding the application of Section 552 of the Bankruptcy Code to certain ERS funds. The appeals were consolidated on July 26, 2019. On July 29, 2019, appellants filed their opening brief. On August 28, 2019, Proskauer, on behalf of the Oversight Board and ERS, filed their answering briefs, while the UCC filed its answering brief on August 29, 2019. On September 11, 2019 Appellants filed their reply briefs. The First Circuit held oral arguments on December 4, 2019. On January 30, 2020, the First Circuit affirmed the Section 552 Order.

[20] A brief overview of Proskauer's progress on the PREPA 9019 Motion in the prior interim compensation period follows: On May 10, 2019, Proskauer filed the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, And 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Case No. 17-4780, ECF No. 1235] (the "PREPA 9019 Motion"). The PREPA 9019 Motion seeks approval of certain settlements embodied in the Definitive Restructuring Support Agreement dated as of May 3, 2019 (the "RSA" or "PREPA RSA," by and among (1) PREPA, (2) the Oversight Board, (3) AAFAF (PREPA, the Oversight Board, and AAFAF are sometimes collectively referred to herein as the "Government Parties"), (4) the members of the Ad Hoc Group of PREPA Bondholders, (5) any other persons who beneficially own or control Uninsured Bonds that are party to the RSA or execute a joinder to the RSA (the "Uninsured Supporting Holders"), and (5) Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively "Assured," Assured and the Uninsured Supporting Holders are collectively referred to herein as the "Supporting Holders," and the Supporting Holders collectively with Government Parties, the "RSA Parties"). Such settlements resolve, as and to the extent set forth in the RSA and the proposed order granting the PREPA 9019 Motion, (a) the claims asserted by the Supporting Holders and objections of the Government Parties thereto, (b) certain bondholder litigation against PREPA by all Supporting Holders, (c) the Supporting Holders' ability to exercise rights under the Trust Agreement or other

among three areas: (i) discovery related motions, including motions to strike and motions to compel filed by various "objectors," (ii) preparation for and attendance at a hearing in connection with the discovery motions; and (iii) supplemental research and drafting supplemental briefs in support of the PREPA 9019 motion. Additionally, Proskauer also communicated with the various Supporting Parties and negotiated extended briefing and discovery related deadlines which culminated in the filing of several motions to extend the deadlines.

- <u>UTIER v. PREPA</u>. In connection with Adversary Case No. 17-229 (<u>UTIER v. P.R. Elec. Power Auth., et al.</u>, Adv. Proc. No. 17-0229), Proskauer continued to conduct extensive discovery with Unión de Trabajadores de la Industria Eléctrica y Riego ("<u>UTIER</u>"), the Puerto Rico Department of Justice, and the Puerto Rico Electric Power Authority. The matter required additional efforts to gather and analyze documents from multiple sources to evaluate UTIER's claims and the Commonwealth's and PREPA's defenses. Over the period covered by the application, Proskauer also continued to analyze factual and expert discovery that may be needed to defend the case.

22.    In addition to the above, Proskauer has defended against numerous litigations against the Title III Debtors. The following is a summary of major litigation matters in which Proskauer served as lead counsel for the Title III Debtors during this Compensation Period:

- <u>*PREPA v. Vitol Inc., et al.*</u>, Adv. Proc. No. 19-453: This action arises from two consolidated cases, *Autoridad de Energía Eléctrica de Puerto Rico v. Vitol, Inc., et al*., Civil No. K AC2009-1376 (901) and *Autoridad de Energía Eléctrica de Puerto Rico v. Vitol, Inc., et al.*, Civil No. 2012-1174 (905). On November 14, 2019, Defendants Vitol S.A. and Vitol, Inc. (together, "<u>Vitol</u>") filed a notice of removal of the action from the Commonwealth of Puerto Rico Court of First Instance to the United States District Court for the District of Puerto Rico. Plaintiff PREPA asserts that PREPA's fuel supply contracts with Vitol's parent company are null, void, and without legal effect because they violate a Commonwealth statute that prohibits the Commonwealth government (and thus, PREPA) from contracting with parties convicted of certain crimes including grand larceny. PREPA alleges Vitol was convicted of grand larceny in 2007 and failed to disclose this conviction. On December 13, 2019, PREPA filed motion to remand. Vitol filed an opposition to PREPA's motion to remand on January 14, 2020, PREPA filed a reply on February 5, 2020, and Vitol filed a sur-reply on February 20, 2020. Ultimately, the Court denied remand.

---

applicable law, and (d) the Supporting Holders' right to receive any current payments on certain PREPA bonds. Pursuant to the RSA, the creditors (absent future defaults) settle their alleged secured claims and rights asserted thereunder, including requests for stay relief, in exchange for PREPA agreeing to allow their claims in less than their full face amounts. In addition, the creditors agree to support, and PREPA agrees to propose, a plan under which Supporting Holders will exchange their bonds for securitization bonds that are secured by a fixed and predictable transition charge. In an amendment to the RSA dated as of September 9, 2019, National Public Finance Guarantee Corporation ("<u>National</u>") and Syncora Guarantee Inc. ("<u>Syncora</u>") joined the PREPA RSA.

- *Financial Oversight and Management Board for Puerto Rico v. Ambac Assurance Corp., et al.*, Adv. Proc. Nos. 20-0003, 20-0004, 20-0005, 20-0007: On January 16, 2020, Plaintiff, the Oversight Board, acting in its capacity as representative of the Commonwealth and HTA, filed four actions in connection with bonds respectively issued by CCDA, PRIFA and HTA.  In Adv. Proc. No. 20-0003, the Oversight Board, as representative of the Commonwealth, brought an action against Ambac, Assured, FGIC, and U.S. Bank Trust National Association ("U.S. Bank"), as trustee (collectively, the "PRIFA Defendants") challenging the proofs of claim filed against the Commonwealth and other lien claims asserted by the PRIFA Defendants as holders and/or insurers of certain bonds issued by PRIFA.  In Adv. Proc. No. 20-0004, the Oversight Board, as representative of the Commonwealth, brought an action against Ambac, Assured, FGIC, and Bank of New York Mellon ("BNYM"), as fiscal agent (collectively, the "CCDA Defendants"), challenging the proofs of claim filed against the Commonwealth and other lien claims asserted by the CCDA Defendants as holders and/or insurers of certain bonds issued by CCDA. In Adv. Proc. No. 20-0005, the Oversight Board, as representative of the Commonwealth, brought action against the HTA Defendants (as defined below) challenging the proofs of claim filed against the Commonwealth and other lien claims asserted by the HTA Defendants as insurers and/or holders of HTA Bonds. In Adv. Proc. No. 20-0007, the Oversight Board, as representative of HTA, and the UCC[21] filed an action against Ambac, Assured, National, FGIC, Peaje, and BNYM, as fiscal agent (collectively, the "HTA Defendants"), challenging the proofs of claim filed against HTA and other lien claims asserted by the HTA Defendants as insurers and/or holders of certain bonds issued by HTA.  All these complaints were designed to enable critical issues to any proposed plan of adjustment to be litigated promptly, to eliminate the uncertainty among the debtors and creditors.

Proskauer continues to litigate these and other contested matters and adversary proceedings beyond this Compensation Period.

23.     As part of Proskauer's involvement in the above matters, Proskauer (a) prepared and filed numerous pleadings and briefs in litigation matters; (b) participated in and prepared for hearings; (c) researched jurisprudence regarding legal and factual issues, including bankruptcy and U.S. Constitutional issues; and (d) performed a myriad of other professional services as described in this Application and reflected in **Schedule 3** and **Exhibit B**.

---

[21] The UCC is co-plaintiff with respect to certain claims asserted in this adversary proceeding that are substantially similar to the counts asserted in the prior pending HTA lien challenge adversary proceedings filed on May 20, 2019 [Adv. Proc. Nos. 19-362, 19-363, 19-364, and 19-365].

24.     By this Application, Proskauer seeks an allowance, pursuant to the Interim Compensation Order, of (a) **$1,905,869.79** as (i) compensation for professional services rendered in the amount of $1,732,608.90, and (ii) the Gross-Up Amount in the amount of $173,260.89;[22] and (b) **$72,528.81** as reimbursement for actual and necessary expenses incurred during the Compensation Period in connection with such professional services.  Notably, the Application reflects aggregate voluntary reductions made during the Compensation Period to Proskauer's requests for compensation and for reimbursement of expenses in the amount of $21,575.70 and $5,735.89, respectively, on top of the sizeable discount embedded in its engagement letter with the Oversight Board, in which it fixed hourly rates at levels providing up to 45% discounts on the hourly rates of its most senior partners.

25.     Proskauer maintains computerized records of the time spent by all Proskauer attorneys and paraprofessionals in connection with the firm's representation of the Oversight Board as representative of the Debtor.  Subject to redaction where necessary to preserve mediation confidentiality, copies of the computerized records for the Compensation Period are attached hereto as **Exhibit B**.

26.     Proskauer's budget and staffing plan for the Compensation Period are attached hereto as **Exhibit D**.

27.     Proskauer's summary of itemized time records for professionals and paraprofessionals performing services for the Oversight Board with respect to the Debtor during the Compensation Period is set forth on **Schedule 2**.  The professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the

---

[22] Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

Compensation Period required an aggregate expenditure of 1,162.80 recorded hours by Proskauer's partners and senior counsel; 939.30 recorded hours by associates; 5.10 recorded hours by e-discovery attorneys; and 266.90 recorded hours by paraprofessionals. As required by the Guidelines, **Exhibit C** to this Application shows, for each Project Category (as defined below), a list of professionals who performed services in each Project Category and the aggregate recorded hours each professional incurred.   In accordance with Guidelines paragraph C.3, Proskauer's blended hourly rates are disclosed in **Schedules 1** and **5**.   The fees charged by Proskauer, as set forth in **Schedule 2**, are in accordance with the firm's existing billing rates and procedures in effect during the Compensation Period, as revised to reflect Proskauer's arrangement with the Oversight Board.   The standard rates Proskauer charges for the services rendered by its professionals and paraprofessionals in these Title III cases have been reduced to reflect the unique circumstances of PROMESA and the position of the Commonwealth of Puerto Rico, its instrumentalities, and its residents.   **Schedules 2** and **5** show the rates Proskauer charges on an hourly basis are below the competitive market rates for bankruptcy and non-bankruptcy matters charged by the other professionals representing the Commonwealth and statutory committees.   No Proskauer rates are increased as a result of the geographic location of a bankruptcy case.

28.   All entries itemized in Proskauer's time records comply with the requirements set forth in the Guidelines, including, without limitation, (a) the utilization of project categories (each a "Project Category"), (b) a description of each activity or service that each individual performed, and (c) the number of hours (in increments of one-tenth of an hour) spent by each individual providing the services.   Each Project Category is organized in accordance with Guidelines paragraph C.8.b.  If a Project Category does not appear in a particular application, Proskauer did not bill time or expenses for that Project Category during the Compensation Period, but may bill

time for that Project Category in the future.  In addition, only Project Categories for which Proskauer billed more than 10 hours during the Compensation Period are summarized in the Application.  Project Categories for which Proskauer billed less than 10 hours are listed in **Exhibit B**.

### Applicant Statement In Compliance with Appendix B Guidelines Paragraph C.5

29.     The following answers are provided in response to the questions set forth in Guidelines paragraph C.5:

> **Question**:   Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.
>
> Response:   As explained on page 5 and in footnotes 3 and 7 of the Summary above, Proskauer agreed not to request currently the allowance and payment of the 4% rate increase as of January 1, 2020 provided in its Engagement Letter.
>
> **Question**:   If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?
>
> Response:   Although the total fees sought in this Application did not exceed the total budgeted fees for the Compensation Period (the fees sought in this Application are 2.4% below budgeted fees), the fees sought for October exceeded the budgeted fees by $32,913.70 or 20.4%, and the fees sought for December exceeded the budgeted fees by $18,869.60 or 4.9%. The efforts expended by Proskauer attorneys and paraprofessionals in connection with Court-ordered mediation and related discovery and in connection with opposing the bondholders' renewed motion for appointment of a trustee pursuant to Bankruptcy Code § 926 required more hours than anticipated and are the reason for the higher than budgeted fees in those months.
>
> **Question**:   Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?
>
> Response:   No.
>
> **Question**:   Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices?  (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by

hours and fees.

Response:      No, the Application does not include time or fees related to reviewing time
records or preparing, reviewing or revising invoices in connection with the
preparation of monthly fee statements.

**Question**:   Does this fee application include time or fees for reviewing time records to
redact any privileged or other confidential information?  If so, please
quantify by hours and fees.

Response:      No time was spent redacting time records on account of privilege concerns.
However, the Application does include time related to reviewing time
records to redact certain time entries pursuant to Court-ordered mediation
confidentiality.  Proskauer paraprofessionals expended 8.30 hours and
billed $2,241.00 for redacting mediation related entries in Proskauer's
monthly fee statements related to Proskauer's seventh and eighth interim
fee applications.

**Question**:   If the fee application includes any rate increases since retention: (i) Did
your client review and approve those rate increases in advance? (ii) Did
your client agree when retaining the law firm to accept all future rate
increases?  If not, did you inform your client that they need not agree to
modified rates or terms in order to have you continue the representation,
consistent with ABA Formal Ethics Opinion 11–458?

Response:      Yes.  Notice of Deferral of Request for Allowance and Payment of 4%
Rate Increase for 2020.  Proskauer's Engagement Letter with the Oversight
Board provides Proskauer's rates increase each year "on January 1 by the
lower of the percentage rate increase we announce, and four percent."
(Engagement Letter at 1-2).  As of January 1, 2020, the rate increase is 4%,
yielding a new flat rate for attorneys (partners, senior counsel, associates,
and lawyers) of $820 per hour, for e-discovery attorneys of $405 per hour,
and for paraprofessionals of $280 per hour.  Billed at this rate, as
negotiated in the Engagement Letter, Proskauer's incremental fees for the
Compensation Period total $22,172.00, as detailed in the attached **Exhibit
E**.  Proskauer, however, has agreed to a request of the Oversight Board not
to request the current allowance and payment of the incremental fees based
on the new rates.  Instead, Proskauer is currently requesting fee rates
detailed in the Fifth Interim Application: $789 per hour for attorneys, $390
per hour for e-discovery attorneys, and $270 per hour for
paraprofessionals.  The Engagement Letter is not otherwise amended.

**Gross–Up Amount**

30.    Prior to December 10, 2018, Puerto Rico taxed Proskauer's fees differently

depending on whether Proskauer's timekeepers performed work while physically present in Puerto

Rico or off-island.  Specifically, a 7% withholding tax was assessed (at time of payment) on fees

18

derived from work performed while the timekeeper was physically present in Puerto Rico, but not on fees derived from work performed outside of Puerto Rico.

31.     On December 10, 2018, Puerto Rico enacted Act 257-2018, amending the Puerto Rico tax code and eliminating the differences in tax treatment based on where work was performed.  Under Act 257-2018, all Proskauer fees incurred on or after December 10, 2018— regardless of the timekeepers' physical location—are assessed with a 10% withholding tax at the time of payment.

32.     Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by Act 257-2018 starting December 10, 2018 (the "Withholding"), in the amount of **$173,260.89**.  But Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

**Professionals Billing Fewer Than Five Hours per Month**

33.     The following chart indicates, solely with respect to the Debtor's Title III Case, (a) professionals who billed fewer than five hours per month, (b) the months for which fewer than five hours were billed by the professional, and (c) an explanation of why the use of such professional was reasonable and necessary.  As a general matter, because of the size and complexity of the Debtor's Title III Case, it was reasonable and necessary to consult with professionals with specific practice area expertise to assist Proskauer's core restructuring professionals in providing the Debtor with necessary and beneficial professional services. Moreover, it was often necessary to consult with professionals more familiar with other aspects of the restructuring of Puerto Rico and

with specific adversary proceedings to deal with global strategic issues and ensure that positions taken by the Oversight Board are consistent across all the Title III cases.   Furthermore, occasionally the urgency of certain briefing schedules required pulling in professionals from different work streams to assist on time-sensitive matters.[23]

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Adejobi, Olaide M. | January | Ms. Adejobi is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Cacace, Anthony | November | Mr. Cacace is a partner in Proskauer's labor & employment department who advised on pension liability related issues in the ERS *Altair* matter. |
| Chernus, Eric R. | November | Mr. Chernus is an e-discovery project manager at Proskauer who assisted with various document review and production issues. |
| Clark, Joseph | November | Mr. Clark is an associate in Proskauer's labor & employment department who assisted with legal research on pension liability related issues in the ERS *Altair* matter. |
| Febus, Chantel L. | November, December | Ms. Febus is a partner in Proskauer's litigation department who advised on further developing the Debtor's litigation and appellate strategy in the ERS *Altair* matter and in connection with the Debtor's proposed plan of adjustment. |
| Ferrara, Ralph C. | October, January | Mr. Ferrara is a partner in Proskauer's litigation department who advised on further developing the Debtor's litigation strategy in connection with the urgent joint motion to modify stay and the appellate strategy in the ERS *Altair* matter. |
| Firestein, Michael A. | January | Mr. Firestein is a partner in Proskauer's litigation department who advised on developing the Debtor's appellate strategy in the ERS *Andalusian* Appeal. |

---

[23] Many of the professionals listed below have billed substantially more time on other matters related to Proskauer's representation of the Oversight Board, including matters within and outside of PROMESA Title III.

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Friedman, Olga | January | Ms. Friedman is an e-discovery staff attorney at Proskauer who advised on various document review related issues. |
| Geary, Laura M. | November | Ms. Geary is a paralegal in Proskauer's litigation department who assisted with case management related tasks. |
| Hackett, Michael R. | November, January | Mr. Hackett is a partner in Proskauer's litigation department who advised on further developing the Debtor's appellate strategy in the ERS *Altair* and *Andalusian* Appeals. |
| Harris, Mark | January | Mr. Harris is a partner in Proskauer's litigation department who advised on developing the Debtor's appellate strategy in the ERS *Andalusian* Appeal. |
| Henderson, Laurie A. | November, January | Ms. Henderson is a docketing administrator in Proskauer's litigation department who assisted with docket research and electronic filing. |
| Ike, Yvonne O. | January | Ms. Ike is an e-discovery staff attorney at Proskauer who advised on various document review related issues. |
| Kim, Mee R. | October | Ms. Kim is an associate in Proskauer's litigation department who assisted with the ERS funds tracing analysis. |
| McPeck, Dennis T. | January | Mr. McPeck is a paralegal in Proskauer's litigation department who assisted with case management related tasks. |
| Mungovan, Timothy W. | October, November | Mr. Mungovan is a partner in Proskauer's litigation department who advised on further developing the Debtor's litigation strategy in connection with the bondholders' renewed motion for appointment of a trustee pursuant to Bankruptcy Code § 926 and the appellate strategy in the ERS *Altair* matter. |
| Neuberger, Scarlett A. | October | Ms. Neuberger is a paralegal in Proskauer's BSGR&B group who assisted with case management related tasks. |

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Omorogbe, Philip | October, November | Mr. Omorogbe is an associate in Proskauer's BSGR&B group who assisted with reviewing and analyzing proofs of claim filed against the Debtor and with drafting Proskauer's seventh interim fee application. |
| Pantoja, Karina | January | Ms. Pantoja is a paralegal in Proskauer's labor & employment department who assisted with various case management related tasks. |
| Petrov, Natasha | January | Ms. Petrov is a paralegal in Proskauer's BSGR&B group who assisted with drafting Proskauer's eighth interim fee application. |
| Perra, Kevin J. | October, November, January | Mr. Perra is a partner in Proskauer's litigation department who advised on further developing the Debtor's litigation strategy in connection with the renewed bondholders' motion for appointment of a trustee pursuant to Bankruptcy Code § 926 and appellate strategy in the ERS *Altair* matter. |
| Possinger, Paul V. | October, January | Mr. Possinger is a partner in Proskauer's BSGR&B group who advised on further developing the Debtor's litigation strategy in connection with the Debtor's avoidance actions and appellate strategy in the ERS *Andalusian* Appeal. |
| Ratner, Stephen L. | November, January | Mr. Ratner is a partner in Proskauer's litigation department who advised on further developing the Debtor's appellate strategy in the ERS *Altair* and *Andalusian* Appeals. |
| Richman, Jonathan E. | November, January | Mr. Richman is a partner in Proskauer's litigation department who advised on further developing the Debtor's appellate strategy and preparation for oral argument in the ERS *Altair* matter. |
| Roberts, John E.[24] | October | Mr. Roberts is a partner in Proskauer's litigation department who advised on further developing the Debtor's appellate strategy in the ERS *Altair* matter. |

---

[24]  Promoted to Proskauer's partnership effective November 1, 2019.

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Rosen, Brian S. | October | Mr. Rosen is a partner in Proskauer's BSGR&B group who advised on further developing the Debtor's litigation strategy in connection with the Debtor's avoidance actions. |
| Schaefer, Shealeen E. | November | Ms. Schaefer is a paralegal in Proskauer's labor & employment department who assisted with various case management related tasks. |
| Schelberg, Neal S. | November | Mr. Schelberg is a partner in Proskauer's labor & employment department who advised on pension liability related issues in the ERS *Altair* matter. |
| Silvestro, Lawrence T. | October | Mr. Silvestro is a paralegal in Proskauer's litigation department who assisted with case management related tasks. |
| Singer, Tal J. | January | Mr. Singer is a paralegal in Proskauer's BSGR&B group who assisted with case management related tasks. |
| Skrzynski, Matthew A. | November | Mr. Skrzynski is an associate in Proskauer's BSGR&B group who assisted with legal research and analysis in connection with the ERS bondholders' administrative expense motions. |
| Stafford, Laura | November, January | Ms. Stafford is an associate in Proskauer's litigation department who assisted with further developing the Debtor's litigation strategy in the *Cooperativa* Adversary Proceeding and with drafting objections to proofs of claim filed against the Debtor. |
| Stevens, Elliot R. | October, January | Mr. Stevens is an associate in Proskauer's BSGR&B group who assisted with further developing the Debtor's litigation strategy in connection with the Debtor's avoidance actions and the appellate strategy in the *Andalusian* Appeal. |
| Sutherland, Julia L. | November, January | Ms. Sutherland is a paralegal in Proskauer's litigation department who assisted with case management related tasks. |
| Vora, Hena | November | Ms. Vora is an associate in Proskauer's litigation department who assisted with legal research and drafting of the Oversight Board's sur-reply brief in the ERS *Altair* matter. |

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Zerjal, Maja | November | Ms. Zerjal is a partner in Proskauer's BSGR&B group who advised on further developing the Debtor's litigation strategy in connection with the renewed bondholders' motion for appointment of a trustee pursuant to Bankruptcy Code § 926. |

**Summary Description of Professional Services**

34.     The following is a brief narrative summary, listed by Project Category, of the professional services rendered by Proskauer during the Compensation Period.   Only Project Categories for which Proskauer billed more than 10 hours during the Compensation Period are summarized below.

**I.     Matter No. 33260.0007 (PROMESA Title III: ERS)**

35.     This matter number covers time spent relating to the core ERS Title III case, including, for example, time spent regarding mediation, fiscal plan issues, and working on disclosure statements or plans of adjustment.

  (a)   Legal Research (Project Category 202)
        (Fees:  $26,834.40; Hours: 34.80)

36.     This Project Category includes time spent researching and analyzing legal issues and drafting internal memoranda analyzing legal issues and/or briefs showing the legal issues researched and analyzed, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time researching and analyzing a variety of issues in connection with assessment of and objections to proofs of claims filed against the Debtor, the ERS bondholders' renewed motion for appointment of a trustee pursuant to Bankruptcy Code § 926, the ERS bondholders' motions for allowance and payment of post-petition and administrative expense claims, and various discovery related issues.

(b)    Communications with Claimholders (Project Category 204)
        (Fees: $25,090.20; Hours: 31.80)

37.    This Project Category includes time spent communicating with the Debtor's

various claimholders.    Specifically, Proskauer attorneys and paraprofessionals spent time

communicating with the counsel to bondholders on a variety of procedural and scheduling issues

and preparing for and participating in meet-and-confer sessions related to discovery.

(c)    Communications with the Commonwealth, its Instrumentalities or Representatives of
        the Commonwealth or its Instrumentalities (Project Category 205)
        (Fees:  $11,440.50; Hours:  14.50)

38.    This Project Category includes time spent communicating with the Debtor's

representatives in various Title III related matters, to the extent not expressly covered by another

Project Category.    Specifically, Proskauer attorneys spent time communicating with counsel and

other advisors to AAFAF on a variety of issues related to ongoing discovery in the Debtor's Title

III Case and on various scheduling issues.

(d)    Documents Filed on Behalf of the Board (Project Category 206)
        (Fees: $180,128.70; Hours:  228.30)

39.    This Project Category includes time spent drafting various pleadings filed on behalf

of the Debtor, to the extent not expressly covered by another Project Category. Specifically,

Proskauer attorneys and paraprofessionals spent time:

- Conducting research and analysis and drafting the Oversight Board's opposition to
  the ERS bondholders' renewed motion for appointment of a trustee pursuant to
  Bankruptcy Code § 926;

- Conducting research and analysis and drafting additional objections to proofs of
  claim filed against the Debtor, including the Oversight Board's request to disallow
  the proof of claim filed by The Bank of New York Mellon, as Fiscal Agent, on
  behalf of the ERS bondholders;

- Drafting multiple pleadings related to discovery disputes, including motions to
  compel answers to interrogatories and document production from the ERS
  bondholders and oppositions to the bondholders' motions to compel; and

25

- Drafting multiple informative motions and pleadings related to extension and tolling of deadlines.

(e) Non-Board Court Filings (Project Category 207)
(Fees: $15,937.80; Hours: 20.20)

40.    This Project Category includes time spent reviewing and commenting on Court orders and filings by other parties, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing the ERS bondholders' renewed motion for appointment of a trustee pursuant to Bankruptcy Code § 926, bondholders' motions for allowance and payment of their post-petition and administrative expense claims, multiple pleadings related to discovery, including motions to compel, and related court orders.

(f) Analysis and Strategy (Project Category 210)
(Fees: $669,698.70; Hours: 849.30)

41.    This Project Category includes time spent related to legal analysis on, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including (a) meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing a wide variety of reports, memoranda, financial analyses, press releases, pleadings, and court orders; drafting and updating tasks and issues lists; preparing for and participating in weekly Proskauer internal litigation calls on further developing litigation, appellate and discovery strategy, and litigation and appellate issues pending in this complex and time sensitive Title III Case; preparing for and participating in weekly Proskauer internal restructuring calls on further development of the Debtor's plan of adjustment; and drafting internal memoranda to Proskauer litigation and restructuring teams.

26

(g)   Non-Working Travel Time (Project Category 211)
(Fees: $13,255.20; Hours: 16.80)

42.    This Project Category includes time spent traveling on behalf of the Oversight

Board and the Debtor, during which no billable work is performed.  Fees in this Project Category

are billed at fifty percent (50%).

(h)   General Administration (Project Category 212)
(Fees:  $46.500.00; Hours:  170.40)

43.    This Project Category includes time spent on general administration of the Debtor's

Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of

documents in court, including affidavits of service and service mailings; and (c) internal filing and

organization of case documents to ensure easy, fast, and free accessibility by the Proskauer team,

the Debtor, and other parties in interest.  Specifically, Proskauer paraprofessionals and e-discovery

attorneys spent time reviewing and analyzing a wide variety of pleadings and court orders,

reviewing litigation and appellate dockets, drafting and updating charts of litigation and discovery

deadlines, reviewing, analyzing, and compiling materials for court hearings and Proskauer internal

meetings, analyzing written discovery materials and maintaining document production indexes,

and communicating with e–discovery vendors on a wide variety of document collection,

processing, and review related issues.

(i)   Employment and Fee Applications (Project Category 218)
(Fees: $15,479.70; Hours: 43.30)

44.    This Project Category includes time spent on issues related to the compensation of

Proskauer, and the retention and compensation of other Oversight Board professionals, including

the preparation of monthly fee applications.  Specifically, Proskauer attorneys and

paraprofessionals spent time analyzing monthly statements and drafting Proskauer's seventh and

eighth interim fee applications.

## II.    **Matter No. 33260.0045 (ERS Title III: Altair)**

45.    This matter number covers  time spent working on adversary proceedings and civil cases involving Altair, including *Altair v. Commonwealth*, Adv. Proc. No. 17-00219, *Altair v. Commonwealth*, Adv. Proc. No. 17-00220, *Altair v. USA*, Case No. 17-C-00970 (U.S. Court of Federal Claims), and *ERS v. Altair*, Adv. Proc. No. 17-00213, and any appeals relating thereto.

(a)    General Administration (Project Category 212)
(Fees: $12,042.00; Hours: 44.60)

46.    This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast, and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

(b)    Appeal (Project Category 219)
(Fees: $422,430.60; Hours: 535.40)

47.    This Project Category includes time spent preparing appeals and participating in appellate proceedings on behalf of the Oversight Board as representative of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing appellate briefs and underlying pleadings, conducting legal research, and drafting the Debtor's supplemental sur-reply brief at the request of the First Circuit;
- Developing the oral argument strategy and otherwise preparing for and participating in the oral argument in the First Circuit on Bankruptcy Code section 552 issues; and
- Reviewing the First Circuit opinion affirming the Section 552 Order and evaluating its impact on the Debtor's Title II case.

**III.**     **Matter No. 33260.0048 (ERS Title III – Miscellaneous)**

48.     This matter number covers time spent working on miscellaneous motions and adversary proceedings, including, for example, motions for relief from the Title III stay, and any appeals related thereto.  In this Compensation Period, items billed to this matter included, among other things, work on *Andalusian Global Designated Activity Co. v. FOMB*, Case No. 20-1065 (1st Cir.) (the "ERS *Andalusian* Appeal").

(a)     General Administration (Project Category 212)
       (Fees: $4,050.00; Hours: 15.00)

49.     This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast, and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

(b)     Appeal (Project Category 219)
       (Fees: $235,122.00; Hours: 298.00)

50.     This Project Category includes time spent preparing appeals and participating in appellate proceedings on behalf of the Oversight Board as representative of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time reviewing the certain ERS bondholders' appeal to the First Circuit of the Title III Court's order denying their renewed motion for appointment of a trustee pursuant to Bankruptcy Code § 926 and the related bondholders' motion requesting the expedited briefing schedule, conducting research and analysis, and drafting the Oversight Board's responsive appellate brief.

## IV.    Matter No. 33260.0068 (ERS Title III – Cooperativa de Ahoro y Creditor Vegabajena)

51.    This matter number covers time spent working on the Oversight Board's opposition to a complaint for declaratory relief filed by secured creditor Cooperativa de Ahorro y Credito Vegabajena (the "Cooperativa") requesting the Court's affirmation of its security interests, including *Cooperativa de Ahorro y Credito Vegabajena v. FOMB*, Adv. Proc. No. 19-0028 (the "Cooperativa Adversary Proceeding"), and any appeals thereto.

(a)    Analysis and Strategy (Project Category 210)
(Fees: $10,730.40; Hours: 13.60)

52.    This Project Category includes time spent related to legal analysis on, and brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto, including engaging in (a) meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

\*         \*         \*

53.    The foregoing professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period were reasonable, necessary, appropriate, and beneficial when rendered, facilitated the effective administration of the Debtor's Title III Case, and were in the best interests of the Oversight Board and the Debtor's creditors, residents, and other stakeholders.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and time-sensitive nature of the problems, issues, and tasks involved.  The professional services were performed with expedition and in an efficient manner.

54.    In accordance with the factors enumerated in the Bankruptcy Code, the amount of fees requested is fair and reasonable given: (a) the complexity of the Debtor's Title III Case; (b)

the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; (e) Proskauer's established expertise in the bankruptcy field; and (f) the costs of comparable services other than in a case under the Bankruptcy Code.

### Actual and Necessary Expenses of Proskauer

55.    Pursuant to the Guidelines, **Schedule 4** is Proskauer's summary of actual and necessary expenses incurred on behalf of the Oversight Board as representative of the Debtor during the Compensation Period.

56.    In accordance with paragraph C.13 of the Appendix B Guidelines, and as more fully itemized in **Schedule 4**, Proskauer seeks reimbursement for its necessary and reasonable expenses, including: (a) reproduction, (b) online research, (c) local travel to and from airports, (d) out-of-town travel and lodging, (e) out-of-town meals, (f) transcription services, (g) litigation support, and (h) professional services.  All expense entries detailed in **Exhibit B** comply with the requirements set forth in the Guidelines, including an itemization of the expenses by category, the date the expense was incurred, and the individual incurring the expense, where available.  The reasons for the expenses are self-explanatory.  In compliance with Appendix B Guidelines paragraph C.13, the requested expenses are of the kind customarily charged to Proskauer's non-bankruptcy clients and by other comparable professionals.

57.    Proskauer generally charges from $0.10 (black and white) to $0.30 (color) per page for photocopying expenses. The rates charged by the firm for Westlaw and Lexis computerized research vary according to the type of research conducted and the specific files researched, but, in any event, Proskauer does not profit from the use of computer assisted legal research, as set forth in **Schedule 4**.  As per the Appendix B Guidelines, Proskauer has not requested reimbursement of expenses related to overhead charges, such as secretarial services and proofreading.    The

expenditures Proskauer is seeking reimbursement for and which are reflected on **Schedule 4** are all
of the type customarily billed to clients.

58.     During the Compensation Period, Proskauer has disbursed **$72,528.81** as necessary
and reasonable expenses.  These charges cover Proskauer's direct operating costs, which costs are
not incorporated into the firm's hourly billing rates (because to do so would impose that cost upon
clients who do not require extensive photocopying and other facilities and services).  Proskauer has
made every effort to minimize its expenses in the Debtor's Title III Case.  The actual expenses
incurred in providing professional services were necessary, reasonable, and justified under the
circumstances to effectively serve the needs of the Debtor in its Title III case.

## Compensation Paid and Its Source

59.     All services for which Proskauer seeks compensation, and expenses for which it
seeks reimbursement, were performed on behalf of the Oversight Board as representative of the
Debtor.  In connection with the matters covered by this Application, Proskauer received no
payment and no promises of payment for services rendered, or to be rendered, from any source
other than the Debtor.  There is no agreement or understanding between Proskauer and any other
person, other than members of the firm, for the sharing of compensation received for services
rendered in this Title III case.

60.     PROMESA sections 316 and 317 provide for interim compensation of professionals
and govern the Court's award of such compensation.  PROMESA section 316 provides that a court
may award a professional person employed by the Debtor or the Oversight Board under
PROMESA "(1) reasonable compensation for actual, necessary services rendered by the
professional person, or attorney and by any paraprofessional person employed by any such person;

32

and (2) reimbursement for actual, necessary expenses." PROMESA § 316(a). Section 316 also

sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1) the time spent on such services;
>
> (2) the rates charged for such services;
>
> (3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this subchapter or title 11.

PROMESA § 316(c).

61.    As noted above, the professional services and expenditures for which Proskauer

seeks compensation and reimbursement in this Application were necessary and beneficial to the

Oversight Board as representative of the Debtor, and included, among other things, anticipating or

responding to the Oversight Board's needs and assisting in the Oversight Board's navigation of the

Debtor's very complex Title III case. The compensation requested herein is reasonable in light of

the nature, extent, and value of such services to the Oversight Board. The Oversight Board has

reviewed and approved this Application.

**Reservations**

62.      To the extent time or disbursement charges for services rendered or expenses incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, or Proskauer has for any other reason not yet sought compensation or reimbursement of expenses herein with respect to any services rendered or expenses incurred during the Compensation Period, Proskauer reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

**Notice**

63.      Pursuant to the Interim Compensation Order and the *Eleventh Amended Case Management Procedures* [ECF No. 11885-1], notice of this Application has been filed in the Debtor's Title III Case and the lead Commonwealth of Puerto Rico's Title III Case and served upon:

   (a) the Financial Oversight and Management Board, 40 Washington Square South, Office 314A, New York, NY 10012, Attn: Professor Arthur J. Gonzalez, Oversight Board Member;

   (b) attorneys for the Financial Oversight and Management Board as representative of The Commonwealth of Puerto Rico, O'Neill & Borges LLC,  250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, Attn: Hermann D. Bauer, Esq. (hermann.bauer@oneillborges.com);

   (c) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq. (jrapisardi@omm.com), Suzzanne Uhland, Esq. (suhland@omm.com), Peter Friedman, Esq. (pfriedman@omm.com), Nancy A. Mitchell, Esq. (mitchelln@omm.com), and Maria J. DiConza, Esq. (mdiconza@omm.com);

   (d) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, Marini Pietrantoni Muñiz LLC, 250 Ponce de León Ave., Suite 900, San Juan, PR 00918, Attn.: Luis C. Marini-Biaggi, Esq. (lmarini@mpmlawpr.com), Carolina Velaz-Rivero, Esq. (cvelaz@mpmlawpr.com), and Iván Garau-González, Esq. (igarau@mpmlawpr.com);

34

(e) the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Commonwealth of Puerto Rico*);

(f) attorneys for the Official Committee of Unsecured Creditors, Paul Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc A. Despins, Esq. (lucdespins@paulhastings.com), James Bliss, Esq. (jamesbliss@paulhastings.com), James Worthington, Esq. (jamesworthington@paulhastings.com), and G. Alexander Bongartz, Esq. (alexbongartz@paulhastings.com);

(g) attorneys for the Official Committee of Unsecured Creditors, Casillas, Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street, Suite 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala, Esq. (jcasillas@cstlawpr.com), Diana M. Batlle-Barasorda, Esq. (dbatlle@cstlawpr.com), Alberto J.E. Añeses Negrón, Esq. (aaneses@cstlawpr.com), and Ericka C. Montull-Novoa, Esq. (emontull@cstlawpr.com);

(h) attorneys for the Official Committee of Retired Employees, Jenner & Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert Gordon, Esq. (rgordon@jenner.com) and Richard Levin, Esq. (rlevin@jenner.com); and Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654, Attn: Catherine L. Steege, Esq. (csteege@jenner.com);

(i) attorneys for the Official Committee of Retired Employees, Bennazar, García & Milián, C.S.P., Edificio Union Plaza, PH-A piso 18, Ave. Ponce de León #416, Hato Rey, San Juan, PR 00918, Attn: A.J. Bennazar-Zequeira, Esq. (ajb@bennazar.org);

(j) the Puerto Rico Department of Treasury, PO Box 9024140, San Juan, PR 00902-4140, Attn: Reylam Guerra Goderich, Deputy Assistant of Central Accounting (Reylam.Guerra@hacienda.pr.gov); Omar E. Rodríguez Pérez, CPA, Assistant Secretary of Central Accounting (Rodriguez.Omar@hacienda.pr.gov); Angel L. Pantoja Rodríguez, Deputy Assistant Secretary of Internal Revenue and Tax Policy (angel.pantoja@hacienda.pr.gov); Francisco Parés Alicea, Assistant Secretary of Internal Revenue and Tax Policy (francisco.pares@hacienda.pr.gov); and Francisco Peña Montañez, CPA, Assistant Secretary of the Treasury (Francisco.Pena@ hacienda.pr.gov);

(k) attorneys for the Fee Examiner, EDGE Legal Strategies, PSC, 252 Ponce de León Avenue, Citibank Tower, 12th Floor, San Juan, PR 00918, Attn: Eyck O. Lugo, Esq. (elugo@edgelegalpr.com); and

(l) attorneys for the Fee Examiner, Godfrey & Kahn, S.C., One East Main Street, Suite 500, Madison, WI 53703, Attn: Katherine Stadler, Esq. (KStadler@gklaw.com).

Proskauer submits that, in light of the foregoing, no other or further notice need be provided.

WHEREFORE Proskauer respectfully requests that the Court issue an order (a) allowing interim compensation for professional services rendered during the Compensation Period in the amount of **$1,905,869.79**, which is comprised of (i) fees for professional services rendered in the amount of $1,732,608.90, and (ii) the Gross-Up Amount in the amount of $173,260.89;[25] and allowing reimbursement for actual and necessary expenses Proskauer incurred in connection with such services during the Compensation Period in the amount of **$72,528.81**; (b) authorizing and directing the Debtor to pay promptly to Proskauer the difference between (i) the amount of interim compensation for professional services rendered, and reimbursement of expenses incurred during the Compensation Period allowed hereunder, and (ii) the amounts for such compensation and expenses previously paid to Proskauer, consistent with the provisions of the Interim Compensation Order; (c) allowing such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred without prejudice to Proskauer's right to seek additional compensation for services performed and expenses incurred during the Compensation Period, which were not processed at the time of this Application; and (d) granting Proskauer such other and further relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

---

[25] Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount. As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

Dated:  April 15, 2020
        San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Maja Zerjal (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
        ppossinger@proskauer.com
        ebarak@proskauer.com
        mzerjal@proskauer.com

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205

*/s/ Ubaldo M.  Fernández*
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and
Management Board as Representative of the
Debtor*