**Hearing Date**: July 29, 2020 at 9:30 a.m. AST
**Objection Deadline**: May 6, 2020 at 4:00 p.m. AST

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

**SUMMARY COVER SHEET FOR FOURTH INTERIM APPLICATION OF
BROWN RUDNICK LLP, CLAIMS COUNSEL TO THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,
ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE,
FOR PROFESSIONAL COMPENSATION AND REIMBURSEMENT
OF EXPENSES FOR THE EIGHTH INTERIM FEE PERIOD
FROM OCTOBER 1, 2019 THROUGH JANUARY 31, 2020**

**ALL FEES AND SERVICES IN THIS INTERIM APPLICATION
WERE INCURRED OUTSIDE OF PUERTO RICO (EXCEPT WITH RESPECT TO IN-
PERSON ATTENDANCE AT DECEMBER OMNIBUS HEARING IN DISTRICT COURT
OF PUERTO RICO)**

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801).  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## Summary Sheet

| | |
|---|---|
| Name of Applicant: | Brown Rudnick LLP ("Brown Rudnick") |
| Authorized to Provide Professional Services as: | Claims Counsel for The Financial Oversight and Management Board, acting through its Special Claims Committee |
| Name of Client: | The Financial Oversight and Management Board, acting through its Special Claims Committee |
| Petition Date: | May 3, 2017[2] |
| Retention Date: | November 28, 2018 |
| Compensation Period: | October 1, 2019 to January 31, 2020 (the "Compensation Period") |
| Total Compensation Sought: | $643,562.50 |
| Expense Reimbursement Sought: | $40,133.81 |
| Total Compensation and Expense Reimbursement Sought: | $683,696.31 |
| Prior Applications Filed: | First Interim Fee Application (ECF No. 5705), Second Interim Fee Application (ECF No. 7756), and Third Interim Fee Application (ECF No. 9316) |

This is an: ___ monthly   _X_ interim   ___ final application

This is Brown Rudnick LLP's fourth interim application in these cases (this "Application").

---

[2]   The petition date for the Commonwealth under Title III was May 3, 2017. The petition date for COFINA under Title III was May 5, 2017. The petition date for ERS and HTA under Title III was May 21, 2017. The petition date for PREPA under Title III was July 2, 2017.

Additional Information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* effective as of November 1, 2013:

| | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | $5,600,118.08 |
| Total Expense Reimbursement Approved by Interim Order to Date: | $265,251.08 |
| Total Allowed Compensation Paid to Date: | $4,914,955.45 |
| Total Allowed Expense Reimbursement Paid to Date: | $265,251.08 |
| Total Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but not yet Allowed: | $215,881.51 |
| Total Expense Reimbursement Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but not yet Allowed: | $17,969.49 |
| Blended Hourly Rate in this Application for all Attorneys: | $790.00 |
| Blended Hourly Rate in this Application for all Timekeepers: | $639.93 |
| Number of Professionals in this Application: | 22 |
| Number of Professionals Billing Fewer than 15 hours in this Application: | 9 |
| Difference Between Fees Budgeted and Compensation Requested for this Period: | 55.5% under budget |
| Rate Increases Since Date of Retention: | None |
| Disclosure of Compensation Sought in this Application Using Rates Disclosed at Retention: | N/A |

**Summary of Prior Monthly Fee Statements**
**for this Compensation Period Only**

| Date | Period Covered | Total Fees | Fees Requested (90%) | Holdback (10%) | Expenses Requested | Fees Paid | Expenses Paid (100%) |
|------|----------------|-----------|----------------------|----------------|--------------------|-----------|----------------------|
| 11/19/2019 | October 1, 2019 through October 31, 2019 | $206,525.50 | $185,872.95 | $20,652.55 | $12,416.02 | $129,326.70 | $12,416.02 |
| 12/20/2019 | November 1, 2019 through November 30, 2019 | $138,377.00 | $124,539.30 | $13,837.70 | $5,553.47 | $86,554.81 | $5,553.47 |
| 1/18/2020 | December 1, 2019 through December 31, 2019 | $152,410.00 | $137,169.00 | $15,241.00 | $4,223.23 | $0.00 | $0.00 |
| 2/20/2020 | January 1, 2020 through January 31, 2020 | $146,250.00 | $131,625.00 | $14,625.00 | $17,941.09 | $0.00 | $0.00 |
| **TOTAL** | | **$643,562.50** | **$579,206.25** | **$64,356.25** | **$40,133.81** | **$215,881.51** | **$17,969.49** |

**Summary of Amounts Requested to be Paid for Compensation Period**

Total Unpaid Fees:                                             $427,680.99

Total Unpaid Expenses                                          $22,164.32

Total 10% Holdback on Fees:                                    $64,356.25

Reimbursement for 29% Tax Withholding:                         $162,907.85[3]

Reimbursement for 1.5% Government Contribution:                $8,688.09

**Total Amount Requested to be Paid:**                         **$449,845.31**

---

[3]    The Debtors withheld a total of $167,969.81 of the fees requested on account of purported tax withholding.  Of this amount, only $5,061.96 was properly withheld on account of services performed in Puerto Rico.  *See* December Monthly Fee Statement.  Accordingly, Brown Rudnick requests the reimbursement of $162,907.85.

4

**Hearing Date**: July 29, 2020 at 9:30 a.m. AST
**Objection Deadline**: May 6, 2020 at 4:00 p.m. AST

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

### FOURTH INTERIM APPLICATION OF
### BROWN RUDNICK LLP, CLAIMS COUNSEL TO THE
### FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,
### ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE,
### FOR PROFESSIONAL COMPENSATION AND REIMBURSEMENT
### OF EXPENSES FOR THE EIGHTH INTERIM FEE PERIOD
### FROM OCTOBER 1, 2019 THROUGH JANUARY 31, 2020

TO THE HONORABLE LAURA TAYLOR SWAIN
UNITED STATES DISTRICT COURT JUDGE:

Brown Rudnick LLP ("Brown Rudnick"), special counsel to the Financial Oversight and Management Board, acting through its Special Claims Committee (the "Oversight Board") as representative of the Commonwealth of Puerto Rico, the Puerto Rico Sales Tax Financing Corporation, the Puerto Rico Highways and Transportation Authority, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, the Puerto Rico Electric Power

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801.  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Authority, and the Puerto Rico Public Buildings Authority (collectively, the "Debtors") in the above-captioned title III cases (the "Title III Cases") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] hereby submits this fourth interim fee application (the "Fourth Interim Application" or "Application"),[3] pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4] Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Bankruptcy Rules"), Appendix B of the United States Trustee *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases* effective as of November 1, 2013 (the "U.S. Trustee Guidelines," and together with the aforementioned statutes, rules and guidelines, the "Guidelines"), and in accordance with the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* entered by this Court on June 6, 2018 [Docket No. 3269] (the "Interim Compensation Order"), seeking entry of an order granting (a) the allowance of interim compensation in the aggregate amount of $643,562.50 in fees for reasonable and necessary professional services rendered and (b) reimbursement of actual and necessary expenses in the aggregate amount of $40,133.81 incurred during the period commencing October 1, 2019 through and including January 31, 2020 (the "Compensation Period"). In support of this Application, Brown Rudnick respectfully states the following:

**Jurisdiction and Venue**

1.      The Court has subject matter jurisdiction to consider and determine this Fourth Interim Application pursuant to PROMESA section 306(a).  Venue is proper before this Court

---

[2]      PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]      The Application solely pertains to fees and expenses incurred with respect to the Debtors' Title III Cases and does not address fees or expenses incurred with respect to other services performed for the Oversight Board outside the Title III process.

[4]      The Bankruptcy Rules are made applicable to the Debtors' Title III Cases pursuant to PROMESA section 310.

pursuant to PROMESA section 307(a).  The statutory predicates for the relief requested herein are

PROMESA sections 316 and 317, Bankruptcy Rule 2016 and Local Rule 2016-1.

2.      This Application has been prepared in accordance with the Guidelines and the

Interim Compensation Order.  Attached hereto as **Exhibit A** is a certification regarding compliance

with the Local Guidelines.

### Background and Case Status

A.      **The Debtors' Title III Cases**

3.      On June 30, 2016, the Oversight Board was established under PROMESA section

101(b).

4.      On August 31, 2016, President Obama appointed the Oversight Board's seven

voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title

is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s]

to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of

[PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the court."

6.      On September 30, 2016, the Oversight Board designated the Debtors as "covered

entit[ies]" under PROMESA section 101(d).

7.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to

PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth

of Puerto Rico (the "Commonwealth") pursuant to section 304(a) of PROMESA, commencing a

case under title III thereof.

8.      On May 5, 2017, the Oversight Board filed a voluntary petition for relief for the

Puerto Rico Sales Tax Financing Corporation ("COFINA") pursuant to section 304(a) of

PROMESA, commencing a case under title III thereof.

9.      On May 21, 2017, the Oversight Board filed a voluntary petition for relief for each of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and the Puerto Rico Highways and Transportation Authority ("HTA") pursuant to section 304(a) of PROMESA, commencing cases under title III thereof.

10.     On July 2, 2017, the Oversight Board filed a voluntary petition for the Puerto Rico Electric Power Authority ("PREPA") pursuant to section 304(a) of PROMESA, commencing a case under title III thereof.

11.     Through orders issued on June 1, June 29 and October 6, 2017, the Court ordered the joint administration of the Title III Cases for the Debtors, for procedural purposes only [Docket Nos. 242, 537 and 1417].

12.     Background information regarding the Commonwealth and its instrumentalities, and the commencement of the instant Title III Cases, is contained in the *Notice of Statement of Oversight Board in Connection with PROMESA Title III Petition* [Docket No. 1] attached to the Commonwealth's Title III petition.

**B.      Retention of Brown Rudnick**

13.     Brown Rudnick is an international law firm with its offices located in New York and Boston, among other locations.  Brown Rudnick has significant experience representing parties in bankruptcy actions and litigations in many large, complex cases.   Brown Rudnick has represented principal parties in interest, including official and *ad hoc* committees and debtors, in both in and out-of-court proceedings in some of the largest and most complex restructurings of all time.

14.     As set forth in the Independent Contract Services Agreement dated November 28, 2018 (the "Services Agreement"),[5] Brown Rudnick was retained by and authorized to represent the

---

[5]   A copy of the Services Agreement is available on the Oversight Board's website at http://oversightboard.pr.gov/documents/.

8

Oversight Board, acting through its Special Claims Committee, to assist the Special Claims Committee regarding investigation and pursuit of potential claims.

### C.    Interim Compensation and Fee Examiner Orders

15.    On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 1150].

16.    On October 6, 2017, the Court appointed a Fee Examiner in these Title III Cases (the "Fee Examiner") pursuant to the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and Related Relief* [Docket No. 1416] (the "Fee Examiner Order").

17.    On November 10, 2017, the Fee Examiner issued a memorandum, and on January 3, 2018, the Fee Examiner issued a supplemental memorandum (together, the "Fee Examiner Guidelines") to all retained professionals in these Title III Cases providing additional guidelines in connection with the Interim Compensation Order.

18.    On May 8, 2018, the Fee Examiner filed the *Motion of the Fee Examiner to Amend the Fee Examiner Order with Respect to the Scope of the Fee Examiner's Authority in the Interest of Administrative Efficiency* [Docket No. 3032] (the "Motion to Amend the Fee Examiner Order").

19.    On May 23, 2018, the Oversight Board and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") filed a *Joint Motion for Entry of an Order Further Amending the Interim Compensation Order* [Docket No. 3133].

20.    On June 6, 2018, the Court entered the Interim Compensation Order, and in accordance therewith, Brown Rudnick and other professionals retained in these Title III Cases were authorized to serve upon the parties identified therein (the "Notice Parties") monthly fee statements (the "Monthly Fee Statements").

21.    Pursuant to the Interim Compensation Order, the Notice Parties have ten days from the date of service of the Monthly Fee Statement to object to the amounts requested. If no objection

is filed prior to expiration of the objection period, the Commonwealth is authorized to pay the respective professionals 90% of the fees and 100% of the expenses sought in each Monthly Fee Statement.

22.     On June 20, 2018, the Court entered the *First Amended Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(A) Appointing a Fee Examiner and Related Relief* [Docket No. 3324] (the "Amended Fee Examiner Order").

### D.     Applications for Interim Compensation

23.     In addition to the Monthly Fee Statements, the Interim Compensation Order directed professionals to seek interim allowance and payment of compensation (including the 10% held back from Monthly Fee Statements) and expense reimbursement at 120-day intervals (each an "Interim Fee Period") by filing with the Court and serving on the Notice Parties an application for approval and allowance of all compensation and reimbursement of expenses relating to services rendered and expenses incurred during the preceding Interim Fee Period (*see* Interim Compensation Order at ¶2(f)).

24.     This is Brown Rudnick's fourth interim fee application and covers the period from October 1, 2019 through and including January 31, 2020.

### Relief Requested

25.     By this Application, Brown Rudnick seeks an order authorizing (a) allowance of interim compensation for the professional services rendered during the Compensation Period in the aggregate amount of $643,562.50, (b) allowance of reimbursement of actual and necessary expenses incurred by Brown Rudnick in the aggregate amount of $40,133.81, and (c) payment of the outstanding fees and expense reimbursement in the aggregate amount of $449,845.31, inclusive of any amounts previously held back, including certain purported tax withholding and government contribution amounts.

26.     During the Compensation Period, Brown Rudnick attorneys and paraprofessionals expended a total of 1,004.20 hours for which compensation is requested.  All services rendered and expenses incurred for which compensation or reimbursement is requested were performed or incurred for or on behalf of the Oversight Board.

27.     Except with respect to attendance at the December omnibus hearing in the District Court of Puerto Rico, Brown Rudnick performed all services during the Compensation Period outside of Puerto Rico.  As a result, fees relating to such services are not subject to withholding tax at source pursuant to Section 1062.03(b)(14) of the Puerto Rico Internal Revenue Code, as amended.   Accordingly, Brown Rudnick respectfully requests reimbursement of the withheld amounts relating to services performed outside of Puerto Rico.

28.     During the Compensation Period, Brown Rudnick submitted four Monthly Fee Statements (the eleventh, twelfth, thirteenth and fourteenth such statements submitted by Brown Rudnick).

29.     On November 19, 2019, Brown Rudnick served its eleventh monthly fee statement covering the period from October 1, 2019 through October 31, 2019 (the "Eleventh Monthly Fee Statement"), a copy of which is attached hereto as **Exhibit G-1**.  Brown Rudnick received no objection to the Eleventh Monthly Fee Statement.  On January 17, 2020, Brown Rudnick submitted a statement of no objection to AAFAF with respect to the Eleventh Monthly Fee Statement.  On January 23, 2020, the Debtors paid Brown Rudnick $129,326.70 on account of fees requested and $12,416.02 on account of expense reimbursement requested.  The Debtors withheld (i) $53,903.16, or twenty-nine percent (29%) of the fees requested, on account of purported tax withholding, (ii) $20,652.55, the amount of the 10% holdback, plus (iii) $2,788.09, representing a 1.5% government contribution that is deducted from all fees that exceed $50,000.[6]

---

[6]   All services reflected in this fee statement were performed outside of Puerto Rico.

30.     On December 20, 2019, Brown Rudnick served its twelfth monthly fee statement covering the period from November 1, 2019 through November 30, 2019 (the "Twelfth Monthly Fee Statement"), a copy of which is attached hereto as **Exhibit G-2**.  Brown Rudnick received no objection to the Twelfth Monthly Fee Statement.  On January 17, 2020, Brown Rudnick submitted a statement of no objection to AAFAF with respect to the Twelfth Monthly Fee Statement.  On January 27, 2020, the Debtors paid Brown Rudnick $86,554.81 on account of fees requested and $5,553.47 on account of expense reimbursement requested.  The Debtors withheld (i) $26,116.40 or twenty-nine percent (29%) of the fees requested, on account of purported tax withholding, (ii) $13,837.70, the amount of the 10% holdback, plus (iii) $1,868.09, representing a 1.5% government contribution that is deducted from all fees that exceed $50,000.[7]

31.     On January 18, 2020, Brown Rudnick served its thirteenth monthly fee statement covering the period from December 1, 2019 through December 31, 2019 (the "Thirteenth Monthly Fee Statement"), a copy of which is attached hereto as **Exhibit G-3**.  Brown Rudnick received no objection to the Thirteenth Monthly Fee Statement.  On February 14, 2020, Brown Rudnick submitted a statement of no objection to AAFAF with respect to the Thirteenth Monthly Fee Statement.  As of the date of this filing Brown Rudnick has not received any payment for its Thirteenth Monthly Fee Statement.[8]

32.     On February 20, 2020, Brown Rudnick served its fourteenth monthly fee statement covering the period from January 1, 2020 through January 31, 2020 (the "Fourteenth Monthly Fee Statement"), a copy of which is attached hereto as **Exhibit G-4**.  Brown Rudnick received no objection to the Fourteenth Monthly Fee Statement.  On March 3, 2020, Brown Rudnick submitted a statement of no objection to AAFAF with respect to the Fourteenth Monthly Fee Statement.  As

---

7   All services reflected in this fee statement were performed outside of Puerto Rico.

8   Except with respect to attendance at the omnibus hearing, all services reflected in this fee statement were performed outside of Puerto Rico.  A total of $19,394.50 of fees during this time period relate to services provided in Puerto Rico.

of the date of this filing Brown Rudnick has not received any payment for its Fourteenth Monthly Fee Statement.[9]

33.     Other than with respect to those Monthly Fee Statements, no payments have been made to Brown Rudnick, and Brown Rudnick has received no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered during the Compensation Period and addressed by this Fourth Interim Application. There is no agreement or understanding between Brown Rudnick and any other person, other than the members of Brown Rudnick, for the sharing of compensation to be received for services rendered in these cases.

34.     In accordance with the Services Agreement, Brown Rudnick's hourly rate for all attorneys is $790, $270 for all paralegals and other non-lawyer staff, and $90 for litigation analysts.

35.     Brown Rudnick maintains computerized records of all time spent by Brown Rudnick attorneys and paraprofessionals in connection with its representation of the Oversight Board.  Brown Rudnick has provided itemized time records for professionals and paraprofessionals performing services during the Compensation Period to this Court, the Debtors, the Fee Examiner, all notice parties pursuant to the Interim Compensation Order and the U.S. Trustee.  All entries itemized in Brown Rudnick's time records comply with the requirements set forth in the Guidelines, including the use of separate matter numbers for different project types, as described in this Application.  Brown Rudnick's itemized time records also detail expenses incurred during the Compensation Period.  All entries itemized in Brown Rudnick's expense records comply with the requirements set forth in the Guidelines.

36.     Pursuant to, and consistent with, the relevant requirements of the Guidelines, as applicable, the following exhibits are attached hereto and incorporated herein by reference:

---

[9]     All services reflected in this fee statement were performed outside of Puerto Rico.

i.   **Exhibit A** contains a certification by Sunni P. Beville regarding Brown Rudnick's compliance with the Local Guidelines.

ii.   **Exhibit B** contains a summary of hours and fees billed by each Brown Rudnick attorney and paraprofessional in services rendered to the Oversight Board during the Compensation Period, including respective titles, hourly rates, year of bar admission for attorneys and any applicable rate increases.

iii.   **Exhibit C** contains a summary of compensation requested by matter during the Compensation Period.

iv.   **Exhibit D** contains a summary and comparison of the aggregate blended hourly rates.

v.   **Exhibit E** contains a summary of reimbursable expenses incurred during the Compensation Period.

vi.   **Exhibit F** contains a budget plan with a comparative analysis of budgeted and actual fees during the Compensation Period.

vii.   **Exhibits G-1, G-2, G-3 and G-4** contain copies of Brown Rudnick's Monthly Fee Statements during the Compensation Period, which include detailed time records and out-of-pocket expense details.

## Summary of Services Performed by Brown Rudnick During the Compensation Period

37.   Set forth below is a description of significant professional services, broken down by project category, rendered by Brown Rudnick during the Compensation Period.  The following services described are not intended to be a comprehensive summary of the work performed by Brown Rudnick.  Detailed descriptions of all services rendered by Brown Rudnick can be found in the detailed time records reflecting the services performed by Brown Rudnick's professionals, the time expended by each professional, and the hourly rate of each professional, annexed to the Monthly Fee Statements attached hereto as **Exhibits G-1, G-2, G-3 and G-4** and such descriptions are incorporated herein by reference.

### A.   Case Administration

### Fees: $10,155.00; Hours: 30.10

38.   During the Compensation Period, Brown Rudnick reviewed the case docket to identify pleadings relevant to its activities, including as to relevant hearing dates and objection deadlines for pleadings filed in connection with the various issues being monitored in this

14

proceeding.  Brown Rudnick additionally prepared and arranged filing of a pro hac vice application for one of its attorneys and reallocated tasks among paraprofessionals following the retirement of its lead paralegal.

### B.    Meetings and Communications with Client

### Fees: $45,425.00; Hours: 57.50

39.    During the Compensation Period, Brown Rudnick drafted agendas for weekly calls with the Oversight Board to provide status reports and recommendations for specific actions, including as to the prosecution, tolling, and/or settlement of avoidance actions against (a) contract counterparties ("Vendors"), (b) recipients of purported principal and interest payments in respect of allegedly unlawful and invalid bonds, and (c) third-party professionals that, among other things, facilitated the issuance of allegedly unlawful and invalid bonds.  In addition, Brown Rudnick engaged in periodic follow-up discussions with various members of the Oversight Board regarding specific case issues.  Brown Rudnick also worked with the client's communications team to develop public communications materials relating to litigation commenced by the Special Claims Committee, including materials for the Oversight Board's representatives for presentation before the United States Congress.

### C.    Fee Applications

### Fees: $24,326.00; Hours: 56.20

40.    During the Compensation Period, Brown Rudnick prepared its Second Interim Fee Application and its monthly fee statements and budgets.  In addition, Brown Rudnick assisted the Special Claims Committee's professionals with their interim fee applications and monthly fee statements and objection submissions as necessary and appropriate.

### D.   Hearings

**Fees: $27,302.00; Hours: 36.60**

41.     During the Compensation Period, Brown Rudnick attorneys prepared for and attended (a) an omnibus hearing on October 30, 2019 regarding, among other things, the status and activities of the Oversight Board and the fee applications of its professionals; an omnibus hearing on December 11, 2019 regarding, among other things, the status of mediation efforts and sufficiency of notice and participation rights provided to small bondholders, as well as litigation concerns of the Special Claims Committee in the PREPA and ERS Title III cases; and an omnibus hearing on January 29, 2020 regarding, among other things, the status and activities of the Oversight Board and mediation efforts.  Brown Rudnick attorneys made telephonic appearances at the October 30, 2019 and January 29, 2020 hearings.

### E.   Non-Working Travel

**Fees: $27,215.50; Hours: 68.90**

42.     On October 2, 3 and 4, 2019, Sunni Beville and Tristan Axelrod traveled to New York for mediation sessions.  On October 16, 2019, Tristan Axelrod traveled to New York for meditation and scheduling meetings.  On October 23 and 24, 2019, Tristan Axelrod traveled from California on short notice to a mediation meeting in New York and then returned to Boston.  On November 4-5, 2019 Sunni Beville and Tristan Axelrod traveled from Boston to New York to attend mediation meetings.  On December 10-12, 2019 Sunni Beville and Tristan Axelrod traveled from Boston to Puerto Rico for the December 11, 2019 omnibus hearing.  Brown Rudnick has discounted all time attributable to travel during which no work was performed by 50%.

### F.   GO Bonds / Debt Limit

**Fees: $116,003.00; Hours: 147.30**

43.     During the Compensation Period, Brown Rudnick worked with the Oversight Board and related professionals to reach a mediated plan support agreement resolving the Oversight

Board's objection and clawback litigation, and generally its allegations that Puerto Rico breached its constitutional debt limit and thus lacked authority to issue certain general obligation (GO) and PBA bonds.  Brown Rudnick worked with the Oversight Board's professionals to incorporate its legal positions into appropriate treatment provisions for bondholders and other stakeholders in a plan of adjustment.  Brown Rudnick worked with the Oversight Board and other parties to prepare proposals, status reports and pleadings concerning the appropriate timing of litigation surrounding the validity of GO and PBA bonds.  In so doing, Brown Rudnick worked to incorporate the parties' efforts into schedules that would be compatible with ongoing litigation scheduled with respect to HTA and ERS, among others.

44.     Brown Rudnick undertook various tasks at the request of the Mediation Team, including research and drafting documents as proposed resolutions to certain legal and procedural disputes.  Brown Rudnick reviewed new objections to GO and PBA bondholder claims and began revising its research and preparing for Rule 12(b) litigation concerning its objection.

### G.     Avoidance Actions

### Fees: $327,092.00; Hours: 483.00

45.     During the Compensation Period, Brown Rudnick variously prosecuted, negotiated, mediated, and/or resolved hundreds of avoidance actions against over a thousand defendants. These avoidance actions fell into several categories: (a) the "Vendor Avoidance Actions" filed and/or tolled against several hundred Vendors that received billions of dollars in aggregate payments from Puerto Rico without sufficient evidence of compliance with Puerto Rico law regarding government contracting; (b) the "Challenged Bonds Avoidance Actions" against the beneficial holders of Commonwealth, PBA, and ERS bonds at relevant pre-petition periods, who received allegedly unlawful payments of principal and interest on the bonds; and (c) the "Underwriter Litigation" relating to misconduct of third-party professionals in connection with the allegedly unlawful bond issuances.

46.     With respect to the Vendor Avoidance Actions, during the Compensation Period Brown Rudnick proceeded in accordance with litigation and mediation procedures previously approved by the Court, which established methods and timelines for resolution of the litigation mostly if not completely out of court and at minimal expense to the parties and the Court. Brown Rudnick coordinated with its professionals and the Official Committee of Unsecured Creditors' ("Creditors' Committee") counsel and professionals to implement the procedures by soliciting and reviewing information supplied by hundreds of defendants to assess liability.  Based on its review of information and/or pleadings, Brown Rudnick negotiated with defendants and drafted recommendations to its client and to the Creditors' Committee regarding potential litigation outcomes and/or proposed resolutions.  Brown Rudnick then in various cases as directed by its client and pursuant to recommendations variously dismissed defendants, advised tolled parties of its intent not to pursue litigation, and/or commenced negotiations to settle litigation in exchange for payments from the defendants.  Brown Rudnick additionally prepared and prosecuted a motion for re-issuance of summons to establish service by first class mail upon certain defendants whose service mailings were returned as undeliverable.

47.     With respect to the Challenged Bonds Avoidance Actions, during the Compensation Period, Brown Rudnick continued to obtain and review confidential information concerning many thousands of principal and interest payments from the Commonwealth, PBA and ERS to bondholders via the disclosing "Participant" financial institutions pursuant to a discovery order entered by the Court.  Based on the information provided, Brown Rudnick prepared and filed amended complaints in the Challenged Bonds Avoidance Actions that added the newly identified beneficial holders.  Following the submission of certain exculpatory information by the Participants, Brown Rudnick dismissed certain parties from litigation and destroyed confidential information in accordance with the discovery order.  Brown Rudnick worked with the clerk of court and the Special Claims Committee's notice and service agent to serve appropriate

documentation on each defendant consistent with the Court's orders concerning confidentiality of defendant information. Brown Rudnick participated in mediation concerning, among other things, establishment of a litigation schedule and procedures governing the Challenged Bonds Avoidance Actions. During the entirety of the Compensation Period, Brown Rudnick responded to numerous requests for clarification, identifying information, payment records, and status updates from counsel to the Participants and defendants in the Challenged Bonds Avoidance Actions. In some cases in which defendants to the actions were able to demonstrate complete defenses, Brown Rudnick recommended and filed dismissals of such defendants. During the Compensation Period, Brown Rudnick investigated the costs and logistics of service of process of the Challenged Bonds Avoidance Actions upon defendants in foreign jurisdictions and discussed its views of the costs and logistics with the Special Claims Committee.

48.     With respect to the Underwriter Litigation, during the Compensation Period Brown Rudnick negotiated with defendants concerning the scope of tolling agreements and releases and requested stay of litigation in conjunction with bond validity litigation in advance of the anticipated filing and confirmation of plans of adjustment for the Commonwealth, PBA, and ERS. Brown Rudnick then participated in mediation concerning, among other things, establishment of a litigation schedule. (These activities are further addressed in the category below, "Third Party Claims," due to substantial overlap.)

49.     In addition to the foregoing, Brown Rudnick reviewed research and filings concerning, among other things, government investigations and natural disasters evidencing affected parties' liability to the Debtors and/or ability to respond to litigation demands and inquiries. Brown Rudnick discussed additional potential avoidance claims with the Special Claims Committee and its professionals and in some cases included recently uncovered bases for liability into ongoing negotiations with defendants.

### H.   Third Party Claims

**Fees: $53,799.00; Hours: 68.10**

50.     During the Compensation Period, Brown Rudnick reviewed, amended, and renewed tolling agreements with parties facing potential liability for, among other things professional misconduct in conjunction with bond issuances.  Brown Rudnick engaged in negotiations with tolling parties and with the defendants to the aforementioned Underwriter Litigation.  Brown Rudnick continued to review documents and research legal theories in support of the Special Claims Committee's legal claims and potential resolutions.

### I.   Adversary Proceedings

**Fees: $5,056.00; Hours: 47.40**

51.     During the Compensation Period, Brown Rudnick analyzed responses from Challenged Bonds Avoidance Action defendants, drafted reissued summonses for avoidance actions, and drafted notices of voluntary dismissal.

### J.   Plan and Disclosure Statement

**Fees: $7,189.00; Hours: 9.10**

52.     During the Compensation Period, Brown Rudnick continued to revise and update portions of a disclosure statement to accompany the Commonwealth's plan of adjustment, regarding the activities of the Special Claims Committee and related investigations and litigation commenced in the Title III cases.  Brown Rudnick reviewed the new draft Plan Support Agreement negotiated and drafted by the Oversight Board's bankruptcy counsel, and the working and as-filed drafts of the Plan and Disclosure Statement as pertinent to the Special Claims Committee's litigation activities.

### **Presumptive Standards**

53.     In accordance with the presumptions set forth in the *Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee*

*Applications* [Docket No. 3932]  (the "Presumptive Standards Order"), Brown Rudnick provides

the following summary regarding the attendance of Brown Rudnick professionals at Court hearings

and meetings:

- October 2-4 meetings: Tristan Axelrod and Edward Weisfelner attended an in-person meeting in New York with mediation parties to discuss proposed financial settlement terms regarding the PBA and GO bonds on October 2. Sunni Beville attended the October 2 meeting telephonically.  Edward Weisfelner and Sunni Beville attended follow-up calls with the Oversight Board and AAFAF and related professionals on October 3.  Tristan Axelrod and Sunni Beville attended further mediation meetings regarding coordination of HTA and GO/PBA bond validity litigation on October 4.

- October 11 meeting: Sunni Beville attended telephonic mediation regarding scheduling of HTA and GO/PBA bond validity litigation.

- October 16 meeting: Tristan Axelrod attended in-person mediation regarding scheduling of HTA and GO/PBA bond validity litigation.  Sunni Beville attended a portion of the meeting telephonically.

- October 23-24 meetings: Tristan Axelrod attended a telephonic mediation meeting on October 23 regarding scheduling of HTA and GO/PBA bond validity litigation.  Tristan Axelrod attended an in-person mediation meeting on October 24 regarding proposed financial terms of a resolution of GO/PBA bond validity litigation.  Sunni Beville attended a portion of the October 24 meeting telephonically.

- October 30 hearing: Sunni Beville attended telephonically the October 30 omnibus hearing regarding, among other things, the status and activities of the Oversight Board and the fee applications of its professionals.

- November 4-5 meetings: Edward Weisfelner, Sunni Beville and Tristan Axelrod attended in-person meetings with the Oversight Board, AAFAF and related professionals on November 4 to coordinate materials development and messaging in advance of the following day's planned mediation regarding potential GO/PBA bond validity settlement terms.  Weisfelner, Beville, and Axelrod then attended the November 5 mediation meeting.

- December 10-11 meetings and hearing: Sunni Beville and Tristan Axelrod attended an in-person meeting with the Mediation Team and Proskauer regarding the Mediation Team's report and requests regarding notice procedures in GO/PBA bond validity litigation in advance of the December 11 omnibus hearing.  Beville and Axelrod then attended the December 11 hearing regarding, among other things, the schedule for upcoming bond validity litigation proceedings.

- January 29, 2020 hearing: Tristan Axelrod and Rosa Sierra attended the January 29, 2020 omnibus hearing regarding, among other things, the status of

21

mediation and developments pertinent to the Special Claims Committee's avoidance actions.

- <u>Weekly Client Calls</u>:  Brown Rudnick conducted weekly calls with the Special Claims Committee members to provide periodic status reports and to make recommendations as to certain courses of action.  These calls were primarily conducted by a combination of Edward Weisfelner and Sunni Beville, the primary leaders of the Brown Rudnick team.  Other attorneys attended only the portions of a call that required their input on specific topics.

## **Actual and Necessary Disbursements**

54.     As set forth in the Summary Cover Sheet filed contemporaneously with this Application, Brown Rudnick disbursed $40,133.81 as expenses incurred in providing professional services during the Compensation Period.   Brown Rudnick passes through all out-of-pocket expenses at actual cost.  Other reimbursable expenses (whether the service is performed by Brown Rudnick in-house or through a third-party vendor) include, but are not limited to, deliveries, court costs, transcript fees, travel, teleconferencing, and clerk fees, and are passed through at cost. Brown Rudnick does not bill for secretarial overtime or other administrative costs.

55.     Brown Rudnick submits that the actual expenses incurred for which reimbursement is sought in this Application were necessary, reasonable, and justified under the circumstances to serve the needs of the Oversight Board at the time such expenses were incurred.

## **The Application Should be Granted**

56.     Section 317 of PROMESA provides for interim compensation of professionals and incorporates the substantive standards of Section 316 of PROMESA to govern the Court's award of such compensation.  48 U.S.C. § 2177.  Section 316 provides that a court may award a professional employed under section 1103 of title 11 of the United States Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." *Id*. § 2176(a)(1) and (2).  Section 316(c) sets forth criteria for the award of such compensation and reimbursement:

In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(1)    the time spent on such services;

(2)    the rates charged for such services;

(3)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;

(4)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(5)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and

(6)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

*Id.* § 2176(c).

57.    Brown Rudnick respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Fourth Interim Application were necessary and beneficial to the Oversight Board.  In light of the nature, extent and value of such services, Brown Rudnick submits that the compensation requested herein is reasonable.

58.    The compensation for Brown Rudnick's services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.  The professional services were performed with expedition and in an efficient manner.

59.    In sum, the services rendered by Brown Rudnick were necessary and beneficial to the Oversight Board, were reasonable in light of the value of such services to the Oversight Board and were performed with skill and expertise.  Accordingly, Brown Rudnick submits that approval

of the compensation for professional services and reimbursement of expenses requested in this Fourth Interim Fee Application is warranted.

## **Location of Services Provided**

60.     Except with respect to in-person attendance at the December omnibus hearing held in the District Court of Puerto Rico, all fees and services during this Compensation Period were rendered and incurred outside of Puerto Rico.

## **Statements Pursuant to Appendix B of the U.S. Trustee Guidelines**

61.     The following statements address information pursuant to Section C.5 of the U.S. Trustee Guidelines:

a.      **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

**Answer**:  Yes, in accordance with the Services Agreement, Brown Rudnick's standard hourly rates in these cases have been reduced so that the hourly rate for all attorneys is $790, and $270 for all paralegals and non-lawyer staff.  In addition, after discussion with the client, we charged our standard hourly rate of $90 for litigation analysts.

b.      **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

**Answer**: No. The client was aware and involved in the myriad of case issues and directed Brown Rudnick as to the services provided. In addition, the client reviewed and approved each of our monthly fee invoices, which reflected the volume of work reflected herein.

c.      **Question**: Have any of the professionals included in this fee application varied their hourly rate based on geographic location of the bankruptcy case?

**Answer**: No.

d.      **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by hours and fees.

24

**Answer**: No.

e.   **Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

**Answer**: No.

f.   **Question**: If the fee application includes any rate increases in retention: (i) did your client review and approve those rate increases in advance?  and (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**Answer**: The Application does not include any additional rate increases.

## Notice

62.   Notice of this Application has been provided to: (a) the United States Trustee for the District of Puerto Rico, (b) the Oversight Board and its counsel, (c) counsel to AAFAF, (d) counsel to the Fee Examiner, (e) counsel to the Official Committee of Unsecured Creditors, (f) counsel to the Official Committee of Retirees, and (g) the Puerto Rico Department of Treasury.  Brown Rudnick respectfully submits that no further notice of this Application should be required.

## No Prior Request

63.   No prior interim fee application for the relief requested herein has been made to this or any other Court.

## Conclusion

WHEREFORE, Brown Rudnick respectfully requests that the Court enter an order; (a) approving the interim allowance of $643,562.50 for compensation for professional services rendered during the Compensation Period, (b) approving the reimbursement of Brown Rudnick's out-of- pocket expenses incurred in connection with the rendering of such services during the Compensation Period in the amount of $40,133.81, (c) authorizing payment of the outstanding fees and expense reimbursement in the aggregate amount of $449,845.31, and (d) granting such other and further relief as the Court deems just and proper.

25

New York, New York
Dated: April 16, 2020

*/s/ Sunni P. Beville*
BROWN RUDNICK LLP
Edward S. Weisfelner, Esq. (admitted *pro hac vice*)
Angela M. Papalaskaris, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
eweisfelner@brownrudnick.com
apapalaskaris@brownrudnick.com

Stephen A. Best, Esq. (admitted *pro hac vice*)
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
sbest@brownrudnick.com

Sunni P. Beville, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and Management Board,
acting through the Special Claims Committee*

and

*/s/ Alberto Estrella*
*/s/ Kenneth C. Suria*
ESTRELLA, LLC
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090
agestrella@estrellallc.com
kcsuria@estrellallc.com

*Local Counsel to the Financial Oversight and Management
Board, acting through the Special Claims Committee*