**Hearing Date: April 22, 2020 at 9:30 a.m. (AST)**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 03283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 03566-LTS |

## REPLY IN FURTHER SUPPORT OF RENEWED MOTION OF UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO FOR RELIEF FROM THE AUTOMATIC STAY

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-05523 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

REPLY ............................................................................................................................................5

I. THE OBJECTORS IGNORE OPERATIVE CASE LAW HOLDING THAT FAILURE TO LIFT THE STAY UNDER THESE CIRCUMSTANCES WOULD BE INEQUITABLE. ..........................................................................................................5

II. THE RENEWED MOTION IS NOT PREMATURE BECAUSE THIS COURT'S CURRENT ORDER CREATES IMPEDIMENTS TO THE COMMONWEALTH COURT'S AUTHORITY AND UBS FINANCIAL'S RIGHTS. ........................................6

III. THE OBJECTORS WILL NOT BE PREJUDICED. ..........................................................9

    A. Even If They Were Valid, Most Of The Objectors' Purported Concerns Can Be Addressed By The Commonwealth Court. ...............................................10

        1. The Commonwealth Court Can Decide Whether The Counterclaims Relate To Plaintiffs' Claims In The ERS Action. .............10

        2. The Commonwealth Court Can Decide Whether To Prioritize The Counterclaims Over The Pending Motion For Partial Summary Judgment. ...................................................................................................11

        3. The Objectors' Position Will Force This Court To Oversee Discovery In The ERS Action. ..................................................................12

    B. The Counterclaims Will Not Interfere With Proceedings In This Court. ..............13

# TABLE OF AUTHORITIES

## Cases

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
   217 F. Supp. 3d 508 (D.P.R. 2016) ........................................................................................ 5

*In re 234-6 W. 22nd St. Corp.*,
   214 B.R. 751 (Bankr. S.D.N.Y. 1997) ..................................................................................... 9

*In re Breitburn Energy Partners LP*,
   571 B.R. 59 (Bankr. S.D.N.Y. 2017) .................................................................................. 5, 9

*In re Cummings*,
   221 B.R. 814 (Bankr. N.D. Ala. 1998) .................................................................................... 9

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   939 F.3d 340 (1st Cir. 2019) .................................................................................................... 9

*In re Manown*,
   213 B.R. 411 (Bankr. N.D. Ga. 1997) ..................................................................................... 8

*In re Pro Football Weekly, Inc.*,
   60 B.R. 824 (N.D. Ill. 1986) .................................................................................................... 8

*In re Residential Capital, LLC*,
   No. 12-12020 (MG), 2012 WL 3249641 (Bankr. S.D.N.Y. Aug. 7, 2012) ............................ 15

*In re Saxon Indus., Inc.*,
   43 B.R. 64 (Bankr. S.D.N.Y. 1984) ..................................................................................... 5, 6

*In re Unanue-Casal*,
   159 B.R. 90 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994) ................................................. 6

*In re Wedtech Corp.*,
   87 B.R. 279 (Bankr. S.D.N.Y. 1988) ....................................................................................... 6

*Simon v. Navon*,
   116 F.3d 1 (1st Cir. 1997) ........................................................................................................ 8

## Other Authorities

3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2020) ........................................................................ 8

UBS Financial Services Incorporated of Puerto Rico ("UBS Financial"), by and through the undersigned counsel, submits this reply (the "Reply") in further support of the *Renewed Motion of UBS Financial Services Incorporated of Puerto Rico for Relief From the Automatic Stay* (Dkt. No. 12561, the "Renewed Motion") and in response to the *Opposition to: "Renewed Motion of UBS Financial Services Incorporated of Puerto Rico for Relief From the Automatic Stay"* (Dkt. No. 12577, the "Individual Plaintiffs' Objection") and the *Objection by the Financial Oversight and Management Board for Puerto Rico, Acting By and Through the Members of the Special Claims Committee, to the Renewed Motion of UBS Financial Services Incorporated of Puerto Rico for Relief From the Automatic Stay* (Dkt. No. 12751, the "Oversight Board Objection", and together with the Individual Plaintiffs' Objection, the "Objections"). UBS Financial respectfully states as follows:

## PRELIMINARY STATEMENT[2]

1.  In their Objections, both the Oversight Board and the Individual Plaintiffs falsely contend that UBS Financial seeks to "undermine" the Commonwealth Court's consideration of UBS Financial's Counterclaims. This argument turns the parties' actual positions upside down. The Oversight Board seeks to drag this Court into the ERS Action in order to undermine the Commonwealth Court's ability to make unfettered decisions about the Counterclaims. In contrast, UBS Financial seeks to free the parties and the Commonwealth Court from further federal interference. The Objections are filled with arguments about matters that should be left to the Commonwealth Court, such as the timeliness of the Counterclaims under Puerto Rico law, a motion for summary judgment in that case, and the scope of the issues being litigated in the

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Renewed Motion.

local court. By lifting the automatic stay, this Court can leave those matters to the Commonwealth Court and not have to continually oversee that lawsuit. In contrast, the Oversight Board and the Individual Plaintiffs want this Court to lift the stay in tiny increments, with a thumb on the scale that keeps the litigation in the Commonwealth Court tilted in the ERS's favor.

2. This is simply unfair. The Oversight Board and the ERS want to litigate the ERS Action, so they should have to litigate all of it. Back in December 2019, UBS Financial was negotiating with the Oversight Board to stay the entire ERS Action; however, the Oversight Board ultimately chose to support the ERS's continued prosecution of its claims in the Commonwealth Court. Having made that choice, they cannot now weaponize the automatic stay to preclude UBS Financial from pursuing counterclaims based on the same contracts as the ERS's claims. UBS Financial cited extensive case law precluding such inequitable tactics. The Objectors do not distinguish those cases and cite no contrary authority.

3. Under the Objectors' preferred framework, the parties will have to return to this Court for incremental permission at every stage of the case. For example, under the plain terms of the First Lift Stay Order, the ERS already violated the automatic stay by filing a motion to strike the Counterclaims. The First Lift Stay Order merely allowed the presentment of the Counterclaims, not a motion to strike. In addition, because the stay bans discovery relating to the Counterclaims, UBS Financial risks violating the stay in merely serving discovery directed to the underwriting contracts between UBS Financial and the ERS, even though, in UBS Financial's view, such discovery would also be relevant to the defense of the claims being pursued by the ERS. Thus, to enforce this one-sided stay of the ERS Action, this Court will be forced to micromanage discovery in another court. Moreover, if the Commonwealth Court

2

grants the ERS's motion to strike, UBS Financial cannot appeal without permission from this Court. There is no reason why this Court needs to be so deeply enmeshed in that lawsuit. That case should either be stayed entirely or should go forward under Puerto Rico procedure without federal interference.

4. The Objectors have no answer to the case law supporting the lifting of the stay for compulsory counterclaims. They also fail to offer a countervailing reason to keep the stay in place. All of the issues they raise belong in the Commonwealth Court, not this Court.

5. *First*, the Objectors argue that UBS Financial is using the Counterclaims to manufacture an overlap between the ERS Action and the proceedings in this Court. That overlap exists regardless of the Counterclaims because the Oversight Board brought an adversary proceeding in this Court based on the very same contracts being litigated in the ERS Action.[3] More importantly, the extent of overlap between the Title III Cases and the ERS Action does not matter for purposes of lifting the automatic stay. If the Objectors believe the Counterclaims were improperly filed in the ERS Action because they are unrelated to the claims being asserted there, they can raise that argument with the Commonwealth Court.

6. *Second*, the Objectors assert that UBS Financial brought its Counterclaims in order to derail the ERS's pending summary judgment motion in the ERS Action. That assertion makes no sense. UBS Financial gave notice of its intent to file the Counterclaims on April 29, 2019, nearly a month before the Plaintiffs filed their summary judgment motion. In any case, the interplay between the Counterclaims and a summary judgment motion is for the Commonwealth Court to consider, not this Court.

---

[3] UBS Financial submits that the Oversight Board and the ERS have wrongfully split the ERS's claims. UBS Financial strenuously objects to that claim splitting, but will present that concern to the Court by separate motion at the appropriate time.

3

7. *Third*, the Objectors assert that lifting the stay will expose the ERS to burdensome discovery in the ERS Action. If the Oversight Board wanted to avoid discovery on these issues, it should have stayed the claims in the Commonwealth Court. The discovery that they now bemoan will go forward in the Commonwealth Court regardless of the outcome of this motion because the Counterclaims arise out of the same facts as the ERS's claims. In any event, the Commonwealth Court is more than capable of managing discovery in that action. The ERS should bring its concerns about the scope of discovery to that court.

8. *Finally*, the Objectors are simply wrong that allowing the Counterclaims to proceed will interfere with the Ultra Vires Proceedings in this Court. Given the posture of proceedings in the ERS Action (depositions have yet to be scheduled), and in light of the closing of Puerto Rico courts in response to the COVID-19 crisis, there is no chance that the issue of the validity of the ERS Bonds will be heard by the Commonwealth Court before this Court decides that issue. Thus, there will be no interference with this Court's consideration of the *ultra vires* issue at all. Whether this Court's first-in-time decision on the *ultra vires* issue will serve as collateral estoppel or res judicata in the ERS Action must be left to the Commonwealth Court.

9. In short, the Oversight Board and the ERS want the ERS Action to proceed, so they must also accept the consequences of that decision. They cannot use the automatic stay as a sword and a shield that would only allow the Commonwealth Court to consider the clauses of the contracts in dispute in that case that are preferred by the ERS and the Individual Plaintiffs, but bar that court from considering the entirety of the contracts.

**REPLY**

**I.     THE OBJECTORS IGNORE OPERATIVE CASE LAW HOLDING THAT FAILURE TO LIFT THE STAY UNDER THESE CIRCUMSTANCES WOULD BE INEQUITABLE.[4]**

10.     The Objections uniformly contend that this Court should refuse to lift the stay, purportedly because the Counterclaims have not yet been accepted by the Commonwealth Court. (*See* Individual Plaintiffs' Objection ¶ 7; Oversight Board Objection ¶ 6)  In doing so, the Objectors selectively seek to prohibit UBS Financial from advancing its position in the ERS Action, while simultaneously allowing the Plaintiffs to litigate their claims in earnest.  However, as the case law outlined in the Renewed Motion makes clear, courts do not countenance using the automatic stay in this manner.  *See, e.g.*, *In re Saxon Indus., Inc.*, 43 B.R. 64, 67 (Bankr. S.D.N.Y. 1984) ("In light of the litigation initiated by [the debtor], it would clearly be inequitable to allow [the debtor] to use § 362 to prevent [the non-debtor] from pressing counterclaims.").  The Objectors have no response to this well-settled authority.

11.     The Oversight Board's selective use of the automatic stay betrays the purpose of the stay, which is to afford the debtor protection from burdensome litigation.  *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 515 (D.P.R. 2016) (explaining that the automatic stay provision of PROMESA was designed to afford the government "a limited period of time during which it can focus its resources on negotiating a

---

[4]     The Oversight Board suggests that UBS Financial has conceded the *Sonnax* factors that are not expressly addressed in the Renewed Motion, without acknowledging, as its own authorities do, that "[n]ot all of the factors are relevant in every case … and the Court need not assign equal weight to each factor."  *In re Breitburn Energy Partners LP*, 571 B.R. 59, 64 (Bankr. S.D.N.Y. 2017) (citation omitted).  The Renewed Motion addressed only the relevant factors.  Moreover, neither Objector sets forth any additional *Sonnax* factors that countenance against the requested relief.

voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits" and "allows the Oversight Board time 'to determine whether to appear or intervene on behalf of the Government of Puerto Rico in any litigation'" (citations omitted)); *In re Unanue-Casal*, 159 B.R. 90, 95 (D.P.R. 1993) ("The policy propelling the law of the automatic stay is 'to give the debtor a breathing spell from his creditors.'" (citations omitted)), *aff'd*, 23 F.3d 395 (1st Cir. 1994).

12. The policy reasons for the automatic stay are not served here because the ERS, with the support of the Oversight Board, is aggressively pursuing claims in the ERS Action. *See In re Saxon*, 43 B.R. at 67 ("The purpose of the (automatic stay) is the protection of the debtor, but when the debtor is in the position of assailant rather than victim, the potential for abuse of that purpose is manifest." (citation omitted)). *See also In re Unanue-Casal*, 159 B.R. at 100-01 ("We understand it would be expensive for the Debtor to litigate in New Jersey, and Puerto Rico. Nevertheless, it was the Debtor who challenged the trust, and thus initiated this series of litigations in the Puerto Rico Superior court, the Puerto Rico bankruptcy court and the New Jersey Superior court. He has demonstrated no problems hiring numerous lawyers and law firms for all of his suits. Any prejudice from these circumstances is self-inflicted."); *In re Wedtech Corp.*, 87 B.R. 279, 290 (Bankr. S.D.N.Y. 1988) ("[W]here the debtor is the initiator of costly litigation … the automatic stay should not be invoked to spare the debtor the expense of defending itself."). This Court should not permit the Objectors to invoke federal law as a means of stymying the full and fair litigation of *all* of the claims in that action.

**II. THE RENEWED MOTION IS NOT PREMATURE BECAUSE THIS COURT'S CURRENT ORDER CREATES IMPEDIMENTS TO THE COMMONWEALTH COURT'S AUTHORITY AND UBS FINANCIAL'S RIGHTS.**

13. The Oversight Board argues that the Renewed Motion is premature and an "attempt to undermine the Commonwealth Court's authority and ability to decide the procedural

6

question of whether UBS Financial's proposed Counterclaims are procedurally proper in the ERS Action in the Commonwealth Court." (*See* Oversight Board Objection ¶ 1) The exact opposite is true. UBS Financial seeks to lift the stay to permit the Commonwealth Court to oversee the *full and fair litigation of all issues and claims*, unburdened by the automatic stay. That relief is not premature.

14. Indeed, as it now stands, this Court's stay order – which was only intended as a temporary compromise – creates significant confusion as to what actions the Commonwealth Court and the parties may take regarding the Counterclaims. The December 11 order states that: "The automatic stay will, as a matter of law, stay further prosecution and defense of the proposed counterclaims upon their filing in the ERS Action." (First Lift Stay Order ¶ 3) Thus, according to basic principles of bankruptcy law, the automatic stay continues to bar the prosecution of the Counterclaims following their <u>presentation</u> to the Commonwealth Court. UBS Financial submits that this order, by its plain terms, bars the ERS from moving to strike the Counterclaims.

15. The stay creates many other complications in the ERS Action. If the stay remains in place, the ERS and the Individual Plaintiffs will be able to use it as a weapon to disrupt the depositions in the ERS Action. UBS Financial risks violating the automatic stay by merely asking questions about the contracts underlying the ERS's claims because discovery regarding certain clauses (those supporting the Counterclaims) is arguably blocked by the automatic stay. Thus, this Court, not the Commonwealth Court, will be left to call balls and strikes on the bounds of discovery.

16. There is no benefit in waiting for a ruling from Commonwealth Court on the ERS's motion to strike. If the Commonwealth Court denies the ERS's Counterclaims Objection, then UBS Financial will have to return to this Court to litigate (for the third time) the lifting of

7

the stay. While UBS Financial litigates that motion again, the ERS will be freely pursuing its claims. On the other hand, if the Commonwealth Court grants the Counterclaims Objection, UBS Financial cannot appeal that decision without permission from this Court. No matter how the Commonwealth Court rules, the parties will be back here again to relitigate the stay.[5]

17. Thus, the Oversight Board's approach will force this Court to micromanage the ERS Action. Such piecemeal litigation of the stay is both wasteful and prejudicial to UBS Financial. *See In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826 (N.D. Ill. 1986) (explaining that non-debtor "will be prejudiced by a refusal to lift the stay because it will be unable to fully defend its position against" the debtor in state court).

18. The Oversight Board asserts that the Commonwealth Court must first decide whether to accept the Counterclaims because the *Sonnax* factors prevent relief from the stay "where there is a procedural hurdle to a party's ability to prosecute its claims that is *sub judice* in another court." (Oversight Board Objection ¶ 41) This *ipse dixit* is unaccompanied by citation to any authority. Instead, the Oversight Board baldly argues that "it is impossible for the parties to fully address whether [lifting the stay] would be proper until the scope of what UBS Financial will be permitted to prosecute, if anything, is decided by the Commonwealth Court." (*Id.* at ¶ 43) But nothing prevents the Objectors from analyzing the *Sonnax* factors based on the full scope of the proposed Counterclaims. Their "inability" to raise arguments against the Renewed Motion signals that they have none, not that the motion is premature.

---

[5] *See* 3 Collier on Bankruptcy ¶ 362.03[3] (16th ed. 2020) (explaining that section 362(a)(1) bars "appeals in actions against the debtor as well as initial lawsuits"); *Simon v. Navon*, 116 F.3d 1, 4 (1st Cir. 1997) (holding that appeal *by the debtor* still subject to automatic stay so long as it relates to a claim *against the debtor*). *See also In re Manown*, 213 B.R. 411, 412 (Bankr. N.D. Ga. 1997) ("Discovery is considered part of the 'continuation' of a proceeding and is, therefore, subject to the automatic stay.").

8

19. The prematurity argument is an extension of the stalling tactics the Oversight Board has used over the last year to prevent UBS Financial from pursuing its Counterclaims. UBS Financial initially sought relief from the automatic stay *in April 2019* but the Oversight Board and the AAFAF delayed negotiations of that request for months and then convinced UBS Financial to delay its initial motion another few months by suggesting that they might agree to stay the entire ERS Action. In the meantime, the ERS continued aggressively to litigate the merits of its claims in the ERS Action, repeatedly pushing for a ruling on its motion for partial summary judgment. The Court should not allow the Oversight Board to continue to use the stay to advantage the ERS in that manner.

### III. THE OBJECTORS WILL NOT BE PREJUDICED.

20. As discussed at length above, UBS Financial has, at the very least, made a *prima facie* showing of "cause" to lift the stay here. As a result, now the "ultimate burden of persuasion rests with the debtor to show an absence of 'cause.'" *In re Breitburn*, 571 B.R. at 64; *In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997) ("The party opposing relief has the burden of proof to show that it is entitled to continuation of the stay."). They have failed to meet their burden.[6] The "balance of the hurt" favors lifting the stay because the stay serves no purpose other than preventing UBS Financial from pursuing its claims.

---

[6] The Oversight Board argues that the "resolution of the issues" *Sonnax* factor requires relief from the stay to resolve issues within the bankruptcy court. (*See* Oversight Board Objection ¶¶ 51-54 (citing *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 939 F.3d 340 (1st Cir. 2019)). The cited authority, however, does not stand for that proposition. The Oversight Board's reliance on *In re Cummings*, 221 B.R. 814 (Bankr. N.D. Ala. 1998) is also misplaced. The Oversight Board's quoted language – whether lifting the stay would "efficiently" resolve "significant open issues in the [debtors'] bankruptcy case" (*see* Oversight Board Objection ¶ 51) – does not exist in that case. Moreover, in *Cummings,* the movant sought to pursue claims underlying a non-dischargeability action in a separate forum. Here UBS Financial just wants to pursue defensive compulsory Counterclaims in the ERS's chosen forum.

9

**A.   Even If They Were Valid, Most Of The Objectors' Purported Concerns Can Be Addressed By The Commonwealth Court.**

   1.   <u>The Commonwealth Court Can Decide Whether The Counterclaims Relate To Plaintiffs' Claims In The ERS Action.</u>

21.   The Objectors raise purported concerns with UBS Financial's motive in pursuing the Counterclaims, arguing that the Counterclaims injected new issues into the ERS Action in order to manufacture overlap with the bankruptcy proceedings in this Court. (*See* Individual Plaintiffs' Objection ¶¶ 2, 11-16; Oversight Board Objection ¶¶ 8, 54)  That is demonstrably untrue.  UBS Financial's Counterclaims assert breach of contract and indemnification claims against the ERS arising out the same contracts on which the ERS bases its claims.  For instance,

- The ERS asserts that:

    o  "***Pursuant to said UBS contract with the System***, during the first half of 2008, ***UBS acted as lead underwriter*** in the following three issuances, distributions and sales in the local market of System bonds…." (Fourth Amended Compl. ¶ 4.13)[7]; and that

    o  "By not only endorsing, but also ***participating as the lead underwriter*** in the illicit and grossly negligent issuance of the Bonds, ***UBS violated its contractual,*** non-contractual and fiduciary obligations towards the System…." (*id.* ¶ 6.11).

- UBS Financial asserts that:

    o  "*[T]he ERS …entered into three purchase contracts with UBS Financial* and other investment banks that had agreed to act *as underwriters* of the bonds."  (Counterclaims ¶ 11)[8]; and that

    o  "In the event that the Bonds are determined to be illegal or issued in an invalid manner, ***the ERS will have materially breached its contractual obligations under the Purchase Contracts***…." (*id.* ¶ 33).

---

[7]  A Certified English Translation of the Fourth Amended Complaint is attached as Exhibit B to the First Lift Stay Motion.  (*See* Dkt. No. 8823-2)

[8]  A Certified English Translation of the Counterclaims, along with the Answer to the Fourth Amended Complaint, is attached as Exhibit B to the Renewed Motion.

10

The ERS's claims and the Counterclaims, which arise under the same contract, unquestionably relate to each other.[9]

22. In any event, this argument is entirely beside the point. If the Commonwealth Court believes UBS Financial's Counterclaims are not sufficiently related to the ERS's claims in that action, it can reject them. The automatic stay is not necessary to enforce the Commonwealth Court's procedural rules.

### 2. The Commonwealth Court Can Decide Whether To Prioritize The Counterclaims Over The Pending Motion For Partial Summary Judgment.

23. The Objectors also complain that UBS Financial is attempting to use the Counterclaims to derail a pending summary judgment motion in the ERS Action. (*See* Individual Plaintiffs' Objection ¶ 2; Oversight Board Objection ¶ 54) This is also demonstrably false. UBS Financial first submitted its proposed Counterclaims to the Commonwealth Court on April 29, 2019, nearly a month before the Plaintiffs had even filed their summary judgment motion. UBS Financial was not anticipating an imminent summary judgment motion. The ERS shockingly moved for summary judgment before it even produced documents in response to the defendants' document requests. If anything, the summary judgment motion was a tactical effort to make the ERS Action appear more advanced in the hopes of blocking the Counterclaims.

---

[9] Notably, the ERS's motion to strike the Counterclaims is premised on the argument that the Counterclaims are compulsory and therefore should have been raised earlier in the ERS Action. (*See* Counterclaims Objection ¶¶ 35, 46) (A Certified English Translation of the Counterclaims Objection is attached as Exhibit C to the Renewed Motion.) UBS Financial disagrees that the Puerto Rico rules, which largely track the federal rules, preclude filing new compulsory counterclaims in response to an amended complaint. However *all parties* agree that these Counterclaims are compulsory.

11

24. But, again, the Objectors' argument here misses the point. If the Commonwealth Court believes that it should rule on the summary judgment motion before considering the Counterclaims, it can do so. The automatic stay is not necessary to address that concern.

### 3. The Objectors' Position Will Force This Court To Oversee Discovery In The ERS Action.

25. The Objectors also raise the concern that lifting the stay will suddenly subject the ERS to burdensome new discovery. This argument is disingenuous because the Counterclaims hardly change the scope of discovery in the ERS Action -- they arise out of the same core facts as the ERS's claims. Even though discovery related specifically to the Counterclaims has not yet begun, there is already heavy overlap between discovery in the ERS Action and discovery in the *ultra vires* proceeding in this Court. Both the Vicente Group and the Special Claims Committee have produced documents to UBS Financial related to the underwriting contracts and the validity of the bonds. (*See, e.g.*, Ex. A (Feb. 18, 2020 Letter from Tristan Axelrod to Paul Lockwood, granting permission to use productions from the *ultra vires* proceedings in the ERS Action))[10] Indeed, because the Counterclaims arise out of the same set of facts as the Plaintiffs' claims, the Objectors should have no concern that they will suddenly be subject to significantly more burdensome discovery obligations than the burdens they are already facing.

26. But, just as with the Objectors' other concerns, the automatic stay is not necessary to protect them from overly burdensome discovery. The Commonwealth Court can enforce its own discovery rules, and this Court does not need to police them.

---

[10] The discovery that has been produced by the AAFAF and the Oversight Board through the *ultra vires* proceedings is a small portion of the discovery that has properly been served against the ERS and the Individual Plaintiffs in the ERS Action. UBS Financial reserves all rights to continue to pursue all discovery in the ERS Action that has not been produced.

12

**B.      The Counterclaims Will Not Interfere With Proceedings In This Court.**

27.     The Oversight Board's professed concern that UBS Financial's prosecution of its Counterclaims will interfere with the *ultra vires* proceedings pending in this Court is a makeweight argument. (Oversight Board Objection ¶ 54)  There is no chance that the Commonwealth Court will address the validity of the ERS Bonds before this Court.  There is no imminent motion that would put that issue to the Commonwealth Court.  To the contrary, summary judgment briefing on the *ultra vires* issue in this Court closes on September 8, 2020, with a decision expected thereafter.  Whether this Court's *ultra vires* ruling will serve as collateral estoppel in a future trial or motion practice in the ERS Action should be left to the Commonwealth Court.

28.     In contrast, the continued imposition of the automatic stay creates real costs to UBS Financial.  Depositions will soon be scheduled in the ERS Action, and UBS Financial should not fall behind on its own claims while the ERS is able to prosecute its claims.

29.     Moreover, the Objectors' argument that the Counterclaims will inject the validity issue into the ERS Action for the first time is flatly contradicted by the ERS's complaint, which repeatedly raises the issue. (*See, e.g.*, Fourth Amended Compl. ¶ 1.6 ("the issuance and sale of the Bonds were illicit"), ¶ 4.23 ("Through the Bonds issuance and said alienation or pledge . . . . Said alienation or pledge of the System's employer contributions violates the provisions of Sections 2-116 and 3-105 of the Retirement Act"), ¶ 4.26 ("In order for the Bonds to be issued by the Government, the approval of the Legislative Assembly was required.  This approval was requested from the Legislative Assembly and denied by it.  Despite this denial by the Legislative Assembly and the public policy that such denial established, the System . . . violated said public policy and . . . proceeded with the issuance and sale of the Bonds."), ¶ 6.22 ("UBS . . . illegally charged substantial commissions . . . related to the reckless, illicit and grossly negligent

13

issuance.""))

30.　　The Individual Plaintiffs and the Oversight Board assert – incorrectly – that the Commonwealth Court has already decided that the validity issue is not part of the ERS Action, citing to a November 26, 2019 transcript from the initial conference on discovery in the ERS Action. There was no motion presented to the Commonwealth Court at that initial discovery conference regarding the bond validity issue. Rather, during a wide-ranging 90 minute discussion of discovery issues, the Commonwealth Court made an off-hand statement regarding whether the legality of the bonds was before that court. As the automatic stay was still fully in place at that time, the Counterclaims were not then in the case; and no party had otherwise raised the bond validity issue in a motion in any other context. An off-hand aside made by a judge during an initial discovery conference – the lowest form of dicta – cannot be proffered by the ERS or the Oversight Board as a determination by the Commonwealth Court that the validity issue is not part of the case.

31.　　Furthermore, the many gyrations of the ERS and its counsel regarding the scope of the ERS Action leave no comfort that they will be bound by their current position on this motion. Only recently, in response to the Counterclaims, have the Individual Plaintiffs and the ERS taken the position that validity of the bonds is not part of their case. But the Vicente Group has never explained the many express statements in the pleadings that they drafted, nor have they withdrawn or stricken those written judicial admissions. Ultimately, the Commonwealth Court will have to pin them down on the scope of their claims. But again, what issues need to be decided in the ERS Action should be left to the Commonwealth Court.

32.　　Finally, if this Court believes that the ERS Action somehow threatens this Court's adjudication of the *ultra vires* issue, then fairness compels a ***complete stay*** of the ERS Action,

14

not just the Counterclaims. *See, e.g.*, *In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 WL 3249641, at *1 (Bankr. S.D.N.Y. Aug. 7, 2012) ("Aurora's Motion to lift the stay is denied. At the same time, however, the Debtors may not proceed with their claim for declaratory relief against Aurora, asserted in one of the California Actions, while the stay remains in effect barring Aurora from prosecuting its claims or counterclaims against the Debtors. In other words, the Court will not permit the automatic stay to be used as both a sword and a shield.").

WHEREFORE, UBS Financial respectfully requests that the Honorable Court (A) enter an order, substantially in the form attached to the Renewed Motion, and (B) grant UBS Financial such further relief as is just and proper.

Respectfully Submitted:

In San Juan, Puerto Rico, this 18th day of April, 2020.

| | |
|---|---|
| OF COUNSEL: | McCONNELL VALDÉS LLC |
| | 270 Muñoz Rivera Ave. |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | Hato Rey, Puerto Rico 00918 |
| | Tel.: (787) 250-2631 |
| Paul J. Lockwood (*admitted pro hac vice*) | Fax: (787) 759-9225 |
| One Rodney Square | |
| P.O. Box 636 | By: */s/ Roberto C. Quiñones-Rivera* |
| Wilmington, Delaware 19899 | Roberto C. Quiñones-Rivera, Esq. |
| Tel.: (302) 651-3000 | USDC-PR Bar No. 211512 |
| Fax: (302) 651-3001 | rcq@mcvpr.com |
| | |
| | *Counsel for UBS Financial Services Incorporated of Puerto Rico* |

15