# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br><br><br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>        Debtor. | PROMESA<br>Title III |

### MOTION OF ATLANTIC MEDICAL CENTER, INC., CAMUY HEALTH SERVICES, INC., CENTRO DE SALUD FAMILIAR DR. JULIO PALMIERI FERRI, INC., CIALES PRIMARY HEALTH CARE SERVICES, INC., CORP. DE SERV. MÉDICOS PRIMARIOS Y PREVENCIÓN DE HATILLO, INC., COSTA SALUD, INC., CENTRO DE SALUD DE LARES, INC., CENTRO DE SERVICIOS PRIMARIOS DE SALUD DE PATILLAS, INC., AND HOSPITAL GENERAL CASTAÑER, INC. SEEKING (I) ENFORCEMENT OF THE COURT'S PRIOR ORDER AND (II) RELIEF FROM THE AUTOMATIC STAY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ..........................................................................................................3
      A.     The Prepetition Litigation ...........................................................3
      B.     The Title III Cases ......................................................................5
      C.     The Plan and Disclosure Statement ............................................8

JURISDICTION AND VENUE ...................................................................................10

RELIEF REQUESTED .................................................................................................10

BASIS FOR RELIEF ...................................................................................................11
      I.     The Court Has Authority to Enforce its Orders ..........................11
           A.     Applicable Law ...........................................................11
           B.     The Eleventh Omnibus Order and Stipulation Should be Enforced
               in Accordance with Their Plain Terms ...........................11
      II.    Cause Exists to Lift the Automatic Stay .....................................13
           A.     Applicable Law ...........................................................13
           B.     The Stay Should be Lifted to Allow the Movants to Proceed with
               the Prepetition Litigation ............................................14

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Atlantic Medical Center, Inc., et. al. v. The Commonwealth of Puerto Rico, et. al.*,
    Case No. 06-1291 (March 20, 2006) .......................................................................3

*Back v. AM Gen. Corp. (In re Chateaugay Corp.)*,
    213 B.R. 633 (S.D.N.Y. 1997)...............................................................................10

*Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Hon. Rosa
    Perez-Perdomo, Sec'y, Dep't of Health, Commonwealth of Puerto Rico*,
    Case No. 06-1260 (March 13, 2006) .....................................................................3, 4

*In re Cordova Gonzalez*,
    99 B.R. 188 (Bankr. P.R. 1989)............................................................................10

*Fernos-Lopez v. United States Dist. Court*,
    599 F.2d 1087 (1st Cir. 1979)...............................................................................10

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    Case No. 17-03283 (LTS) (D.P.R. July 7, 2017)..................................................13

*Gurabo Community Health Center, Inc., et. al. v. Hon. Rosa Perez-Perdomo,
    Secretary, Dep't of Health, Commonwealth of Puerto Rico*,
    Case No. 06-1524 (May 26, 2006).........................................................................3

*In re N.Y. Med. Grp., P.C.*,
    265 B.R. 408 (Bankr. S.D.N.Y. 2001) ..................................................................13

*Peerless Ins. Co. v. Rivera*,
    208 B.R. 313 (D.R.I. 1997)....................................................................................13

*Rio Grande Community Health Center, Inc., et al. v. Hon. Ana Rius Aremendariz,
    Sec'y of the Dep't of Health for the Commonwealth of Puerto Rico*,
    Civil Action No. 03-1640 (June 5, 2015) ...............................................................4

*In re Sonnax Indus. Inc.*,
    907 F.2d 1280 (2d Cir. 1990)...........................................................................13, 14

*U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.)*,
    68 B.R. 690 (Bankr. S.D.N.Y. 1986).....................................................................10

*In re Unanue-Casal*,
    159 B.R. 90 (D.P.R. 1993), aff'd, 23 F.3d 395 (1st Cir. 1994) .............................13

**Statutes**

11 U.S.C. § 105 .............................................................................................................................10

11 U.S.C. § 105(a) .....................................................................................................................5, 10

11 U.S.C. § 362 .............................................................................................................................20

11 U.S.C. § 362(a) and § 922(a) .................................................................................................5, 13

11 U.S.C. § 362(d) .........................................................................................................................13

11 U.S.C. § 362(d)(1) ....................................................................................................................13

28 U.S.C. § 1331 .............................................................................................................................9

28 U.S.C. § 1391(b) ........................................................................................................................9

42 U.S.C. § 1396a(a)(10)(A) .........................................................................................................16

42 U.S.C. § 1396(a)(bb) ..................................................................................................................3

42 U.S.C. § 1396(a)(bb)(a) ......................................................................................................10, 17

42 U.S.C. § 254b(j)(3)(E) ..............................................................................................................16

42 U.S.C. § 254b(a)(1) ...................................................................................................................16

42 U.S.C. § 254b(j)(G)(i) ...............................................................................................................16

48 U.S.C. § 2161 .....................................................................................................................1, 5, 13

48 U.S.C. § 2166(a) .........................................................................................................................9

48 U.S.C. § 2167(a) .........................................................................................................................9

Atlantic Medical Center, Inc., Camuy Health Services, Inc., Centro de Salud Familiar Dr. Julio Palmieri Ferri, Inc., Ciales Primary Health Care Services, Inc., Corp. de Serv. Médicos Primarios y Prevención de Hatillo, Inc., Costa Salud, Inc., Centro de Salud de Lares, Inc., Centro de Servicios Primarios de Salud de Patillas, Inc., and Hospital General Castañer, Inc. (collectively, the "Movants"), by and through the undersigned counsel, move this Court for entry of an order pursuant to sections 105 and 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to the above-captioned cases by section 301 of the Puerto Rico Oversight Management, and Economic Stability Act of 2016 ("PROMESA"), 48 U.S.C. § 2161, seeking enforcement of the Court's prior order and relief from the automatic stay.   In support of this Motion, the Movants submit the Declaration of Nicole Bacon (the "Bacon Declaration"), attached hereto as Exhibit B, and further state as follows:

## PRELIMINARY STATEMENT[2]

Before the commencement of these Title III Cases, the Commonwealth of Puerto Rico had underpaid Movants—not-for-profit, Federally-qualified health centers providing quality and affordable health services to the Commonwealth's underserved population—*by more than $172 million*, as of March 31, 2018, for essential medical services.   This amount has continued to increase since the filing of the Title III Cases.   Federal law requires that the Commonwealth compensate the Movants for the services they provide according to specific and clear guidelines. The statute has two components: (1) the calculation of the amount owed and (2) the timing for when payments must be made.   The U.S. Court of Appeals for the First Circuit recognized that Movants' payment rights are enforceable pursuant to 42 U.S.C. § 1983 and has acknowledged that

---

[2]   Capitalized terms used but not defined in the Preliminary Statements shall have the meaning given to them elsewhere in this Motion.

the Commonwealth is obliged to continue compliance with federal laws like the Medicaid statute. *See Municipality of San Juan et al. v. Migrant Health Ctr. Inc. et al.*, 919 F. 3d 565, 577 (1st Cir. 2019). Despite this requirement, the Commonwealth has failed to put in place a mechanism that enables the Commonwealth to calculate and pay on a current basis the actual amounts owed to the Movants under the Medicaid statute. This issue is not new and should be of no surprise to the Commonwealth. Litigation brought by the Movants against the Commonwealth on this very issue has been pending before the federal court since 2006 *for almost 15 years*[3].

Despite an injunction issued by the District Court requiring the Commonwealth to pay the Movants *estimated* amounts of what the Movants are owed (amounts which the Movants believe severely underestimate the *actual* amounts owed to them), and a Stipulation entered into in these Title III Cases, the Commonwealth has failed to adhere to such payment terms, underpaying the Movants by more than $7 million for the year 2019 alone. The Commonwealth now seeks to move forward toward plan confirmation without any blueprint for how the Commonwealth will become compliant with its obligations under the Medicaid statute after being noncompliant for more than two decades. Moreover, the Movants' claims ultimately will have to be crystalized in order to be treated under any plan, and the Commonwealth should be required to demonstrate its ability to fully and fairly compensate the Movants, as required by federal law, for past, present and go-forward services. Given the posture of the Title III Cases, *now* is the time for the Prepetition Litigation to move forward.

As such, the Movants respectfully submit, for the reasons set forth below, that the automatic stay should be lifted to allow the Prepetition Litigation to move forward. In addition, the Movants

---

[3] The lead case, *Rio Grande Community Health Center, Inc., et al. v. Hon. Johnny Rullan, Sec'y of the Dep't of Health for the Commonwealth of Puerto Rico*, Civ. Action No. 03-1640, was brought by other Puerto Rico health centers in 2003.

request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, requiring the Commonwealth to comply with the terms of the Stipulation, and immediately pay the Movants the more than $7 million that is owed to them for 2019 services.

## BACKGROUND

1.      The background set forth in that certain adversary complaint (AP 17-00278) (the "<u>Complaint</u>") (Docket No. 1) filed by the Movants against the Commonwealth incorporated by reference herein.[4]   Certain portions of the background continued in the Complaint, as well as additional relevant background, are set forth herein.

### A.      *The Prepetition Litigation*

2.      In March 2006, each of the Movants, along with other  Federally-qualified health centers, filed a lawsuit in federal district court alleging, among other things, that the Commonwealth had failed to comply with the payment rights under the Medicaid statute, 42 U.S.C. § 1396(a)(bb), and seeking injunctive relief requiring the Commonwealth to comply with federal law including the continuing obligations of the Commonwealth to make supplemental payments, known as wrap around payments (the "<u>Wrap Around Payments</u>"), pursuant to 42 U.S.C. § 1396(a)(bb).  *See Atlantic Medical Center, Inc., et. al. v. The Commonwealth of Puerto Rico, et. al.*, Case No. 06-1291 (March 20, 2006).  Movants alleged that the Commonwealth failed to pay the proper amounts pursuant to the statutory formula and that it had also failed to make payments within the timeframe dictated by the statute: no less frequently than every four months.[5]  In addition, two other federal lawsuits seeking the same relief were filed by other health centers.  *See Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Hon. Rosa Perez-Perdomo, Sec'y, Dep't of Health, Commonwealth of Puerto Rico*, Case No. 06-1260 (March 13, 2006) and *Gurabo*

---

[4]   Capitalized terms used but not defined herein shall have the meaning given to them in the Complaint.

[5]   The current injunction requires the Commonwealth to make interim payments to Movants on a quarterly basis.

*Community Health Center, Inc., et. al. v. Hon. Rosa Perez-Perdomo, Secretary, Dep't of Health, Commonwealth of Puerto Rico*, Case No. 06-1524 (May 26, 2006).

3.      Ultimately, the District Court consolidated these three federal lawsuits, along with another lawsuit that had been previously filed in 2003, and issued an order that, among other things: (i) notified the parties that the District Court intended to appoint a Special Master to calculate the Medicaid payments owed to the health centers and (ii) determined that the health centers were entitled to a preliminary injunction.  *See Rio Grande Community Health Center, Inc., et al. v. Hon. Johnny Rullan, Sec'y of the Dep't of Health for the Commonwealth of Puerto Rico*, Civ. Action No. 03-1640 (Docket No. 48) (March 31, 2004).  This order is attached hereto as Exhibit C (the "2004 Order").

4.      The District Court entered the Order and Preliminary Injunction, dated as of November 8, 2010, requiring the Commonwealth to make the payment of *estimated* Wrap Around Payments (the "Estimated Wrap Around Payments") on a quarterly basis to such health centers from the date of the Order and Preliminary Injunction onward, and such Order and Preliminary Injunction was supplemented by a further order entered on June 5, 2015 (collectively, the "Order and Preliminary Injunction")[6].  *See Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. Hon. Rosa Perez-Perdomo, Sec'y, Dep't of Health, Commonwealth of Puerto Rico*, Civil Action No. 06-1260 (March 13, 2006) (Docket No. 743); *Rio Grande Community Health Center, Inc., et al. v. Hon. Ana Rius Aremendariz, Sec'y of the Dep't of Health for the Commonwealth of Puerto Rico*, Civil Action No. 03-1640 (June 5, 2015) (Docket No. 674).  The District Court ordered the Commonwealth to make estimated Wrap Around Payments because the Commonwealth failed, and has continued to fail, to implement a payment system compliant with the Medicaid statute and lacked the capacity to provide necessary information for the statutory formula.

---

[6]     The Order and Preliminary Injunction are attached hereto as Exhibit D.

5.      The District Court has been clear that the Commonwealth must comply with the Order and Preliminary Injunction.  As the District Court pointed out in its 2015 order granting the Plaintiffs a preliminary injunction:

> The Commonwealth voluntarily agreed to participate in the Medicare and Medicaid Program.  It received millions of federal dollars, and in turn, it has to comply with its federal obligations. . . . [Plaintiffs] simply ask for what federal law mandates they receive, not a penny more nor a penny less.  And, the Court has an unflagging obligation under Article III of the United States Constitution to enforce federal law even it [sic] understands the dire financial crisis that the Commonwealth has faced for many years in previous administrations. . . . This is not a new obligation the Commonwealth faces.  It has known for a very long time and must prospectively budget several million dollars a year to comply.

*Rio Grande Community Health Center, Inc., et al. v. Hon. Ana Rius Aremendariz, Sec'y of the Dep't of Health for the Commonwealth of Puerto Rico*, Civil Action No. 03-1640 (June 5, 2015) (Docket No. 674).  This order is attached hereto as Exhibit E (the "2015 Order").  The Order and Preliminary Injunction, and the Estimated Wrap Around Payments that were ordered thereunder, was designed merely to be a temporary solution for the Commonwealth's noncompliance and serve only as a proxy to the Commonwealth's actual payment obligations.

**B.      *The Title III Cases***

6.      On May 3, 2017, the Commonwealth, by and through the Oversight Board as the Commonwealth's representative pursuant to PROMESA section 315(b), filed a petition with the District Court under Title III of PROMESA (the "Title III Cases").

7.      Under PROMESA, this Court has broad powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a), incorporated by reference at 48 U.S.C. § 301.

8.      On August 17, 2017, the District Court entered an *Order Amending Case Management Procedures* (as amended from time to time, the "Case Management Order"), which implemented a protocol (the "Lift Stay Protocol") for filing motions for relief from the automatic

stay set forth in Bankruptcy Code sections 362(a) and 922(a), as made applicable to the Title III Case by PROMESA section 301(a). As of the date hereof, the *Eleventh Amended Case Management Order* (Docket No. 11885-1) sets out the current Lift Stay Protocol.

9.    In accordance with the Lift Stay Protocol then in place, on April 10, 2019, the Movants sent a lift stay notice to the Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") advising them of the Movants' intent to seek relief from the stay in order to allow the District Court in the Prepetition Action to: (i) continue requiring quarterly estimated wraparound payments at the newly agreed rates and (ii) continue to oversee the process of reconciliation of past services and compensation due. *See* Exhibit B-1 (the "April 2019 Lift Stay Notice").

10.    After months of negotiation, on July 12, 2019, the Commonwealth and the Movants entered into a stipulation (the "Stipulation") resolving the April 2019 Lift Stay Notice. The Stipulation is attached hereto as Exhibit F. Pursuant to the Stipulation, the Commonwealth agreed to, among other things, continue to issue the Estimated Wrap Around Payments, in accordance with the Order and Preliminary Injunction, using the parties' previously agreed upon estimate payment formula, adjusted with the newly set rates as set forth in the Stipulation (the "Quarterly Payments"). As with the Order and Preliminary Injunction, the Quarterly Payments (and calculation thereof) were merely meant to serve as a proxy for the actual amount of Wrap Around Payments owed, until such calculation is determined by the District Court.

11.    The Stipulation was approved by this Court under that certain *Eleventh Omnibus Order Granting Relief from the Automatic Stay*, dated August 19, 2019 (Docket No. 8499) (the "Eleventh Omnibus Order"). The Eleventh Omnibus Order is attached hereto as Exhibit G.

12.     Subsequently, on or around July 17, 2019, it became clear to the Movants that the Commonwealth was not complying with the terms of the Stipulation when the Commonwealth deposited quarterly payments for the second quarter of 2019 to the District Court that were significantly lower than the payments submitted for the prior quarter.  *See* Exhibit B (the Bacon Declaration) at ¶7.  Specifically, the Commonwealth failed to adjust the Quarterly Payments to properly account for the new rates set forth in Exhibit A of the Stipulation.  *See* Exhibit F (the Stipulation) at ¶ 1(b) (requiring the Commonwealth to make payments pursuant to "the previously agreed upon estimated formula, ***adjusted with the newly set rates listed in Exhibit A***") (emphasis added).  Rather, in calculating the Quarterly Payments, the Commonwealth averaged the calculated amounts with the payments from the fourth quarter of 2018, which are based on the old rates, and the Commonwealth then applied averaging of the two prior quarters for each subsequent payment. This is contrary to the plain language of the Stipulation, which provides that the Commonwealth is to apply the new rates to the agreed upon formula.  Further, there is nothing in the Stipulation that authorizes the Commonwealth to use the prior year's rate or use averaging in the calculation of such Quarterly Payments for 2020[7].

13.     On November 18, 2019, in accordance with the Case Management Order and Lift Stay Protocol, co-counsel to the Movants provided notice to the Oversight Board and AAFAF of the Movant's intention to seek further relief from the automatic stay in order to, among other things, enforce the Stipulation and to collect the shortfall owed to the Movants (the "November Lift Stay Notice").  *See* Exhibit B (the Bacon Declaration) at ¶ 7; Exhibit B-3.  While there were

---

[7]     The same issue would apply to payments  corresponding to the year 2020, i.e. that the Commonwealth should not use 2019 rates to calculate amounts due for 2020 and should not use averaging in the calculation.   The Movants note, however, that the Commonwealth submitted its payment for the first quarter of 2020 on April 17, 2020.   The payment amount appears to more closely match the amount that would be due pursuant to the parties' previously agreed upon interim payment formula, adjusted with the newly set rates as set forth in the Stipulation.

some communications after the November Lift Stay Notice was issued, including a detailed spreadsheet provided by the Commonwealth on January 31, 2020 (the "Commonwealth's Calculations"), no resolution was reached.  *See* Exhibit B at ¶ 8; Exhibit B-4.

14.    On February 11, 2020, co-counsel to the Movants followed up with a letter (the "February 2020 Letter") to AAFAF, reiterating Movants' position that the Commonwealth has failed to perform its obligations under the Stipulation with respect to each of the 2019 Quarterly Payments owed to the Movants (*see* Exhibit B at ¶ 9; Exhibit B-7) ***equating to a shortfall payment of $7,664,073.10 that is owed to the Movants under the terms of the Stipulation*** (the "Shortfall" and such payment, the "Shortfall Payment").  In the February 2020 Letter, the Movants also underscored that (i) the Commonwealth had not been complying with its obligations under Medicaid and other applicable federal laws with respect to the Movants and (ii) the Commonwealth had failed to implement a system whereby the Movants and other entities covered could bill and be paid on that basis.  The Movants again warned that the Commonwealth's failure to make the Shortfall Payment would leave the Movants with no option but to file a motion seeking to lift the automatic stay.

### C.    *The Plan and Disclosure Statement*

15.    Prior to the bar date set by the Court for filing proofs of claims,[8] the Movants filed proofs of claims totaling $172,739,182.30 in the aggregate.  Specifically, the Movants filed the following proofs of claim[9]:

(i)    Atlantic Medical Center, Inc.: Claim Number 1847 in the unsecured amount of $13,545,954.88, filed May 27, 2018;

---

[8]    On February 15,018, the Court entered the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* (Docket No. 2521) setting the bar date for filing proofs of claims on or before May 29, 2018 (the "Bar Date").  Subsequently, the Court amended the Bar Date to June 29, 2018.

[9]    The Movants reserved the right to further amend, modify or supplement each Proof of Claim.

(ii)     Camuy Health Services, Inc.: Claim Number 1859 in the unsecured amount of $31,556,036.69, filed May 28, 2018;

(iii)    Centro de Salud de Lares, Inc.: Claim Number 26928 in the unsecured amount of $38,014,669.19, filed May 26, 2018;

(iv)     Centro de Servicios Primarios de Sauld de Patillas, Inc.: Claim Number 26207 in the unsecured amount of $20,189,760.36 filed May 27, 2018;

(v)      Ciales Primary Health Care Services, Inc.: Claim Number 1860 in the unsecured amount of $7,139,396.19 filed May 28, 2018;

(vi)     Hospital General Castañer, Inc.: Claim Number 32164 in the unsecured amount of $21,747,370.30 filed May 26, 2018;

(vii)    Centro de Salud Familiar Dr. Julio Palmieri Ferri, Inc.: Claim Number 1840 in the unsecured amount of $13,227,866.88 filed May 27, 2019;

(viii)   Corporacion de Servicios Medicos de Hatillo: Claim Number 1861 in the unsecured amount of $13,231,531.40 filed May 28, 2018; and

(ix)     Costa Salud Community Health Center: Claim Number 1844 in the unsecured amount of $14,076, 596.41 filed May 27, 2018, (collectively, the "Proofs of Claim").

16.     On February 28, 2020, the Debtors filed *the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "Plan") (Docket No. 11946) and related disclosure statement (the "Disclosure Statement") (Docket No. 11947).  The Disclosure Statement provides only cursory information related to the Movants and the pending Prepetition Litigation.  *See* Disclosure Statement at 200.  Ostensibly, the Plan appears to treat the Movants' prepetition claims as unsecured claims which can be discharged under the Plan (a position which the Movants strongly disagree) but neither the Plan nor Disclosure Statement address that issue, how such claims will be calculated or how and when the Commonwealth intends to come into compliance with the Medicaid statute for calculating amounts payable to Federally-qualified health centers.  Additionally, the Disclosure Statement does not disclose that the Wrap Around Payments

will be a continuing obligations of the Commonwealth even after it exits Title III (at least until the Commonwealth comes into compliance with the Medicaid statute).[10]

17.     The filing of the Plan and Disclosure Statement is particularly relevant here because it demonstrates that, given the posture of the case, the time is ripe to have the District Court determine the correct methodology for the calculation of all of such payments owed to the Movants and other similarly situated Federally-qualified health centers—amounts which date back to the fourth calendar quarter of 2014, including amounts accrued during the Tittle III proceeding, and go-forward amounts.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction to grant the relief sought in this Motion pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 48 U.S.C. § 2167(a).

## RELIEF REQUESTED

19.     As of the date hereof, the Commonwealth has been unable to produce any compelling evidence that the Shortfall Payment is not due and owing.  Rather, the Commonwealth's own calculations support the Movant's position that the Shortfall Payment is owed to the Movants.  In addition, the calculation of the Quarterly Payments was merely meant to be a stop-gap measure until the District Court was able to fully and finally determine the appropriate methodology for calculation the *actual* Wrap Around Payments owed to the Movants and other similarly situated parties.  As such, pursuant to this Motion, the Movants request that the District Court enter an order substantially in the form of Exhibit A hereto: (i) enforcing the Court's Eleventh Omnibus Order and Stipulation and compel the Commonwealth to make Quarterly

---

[10]    The Movants intend to file a multi-prong objection to approval of the Disclosure Statement, addressing each of these points, among others, in more detail.

Payments pursuant to the Stipulation, including the immediate payment of the Shortfall; (ii) lifting

the automatic stay to allow the Prepetition Action to continue; and (iii) enforcing payment of

ongoing payments due pursuant to 42 U.S.C. § 1396a(a)(bb)(a).

## BASIS FOR RELIEF

**I.    The Court Has Authority to Enforce its Orders**

**A.    *Applicable Law***

20.    A court has the inherent authority to enforce its own orders.  *See Fernos-Lopez v.
United States Dist. Court*, 599 F.2d 1087, 1091 (1st Cir. 1979); *In re Cordova Gonzalez*, 99 B.R.
188, 191 (Bankr. P.R. 1989); *U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus.,
Inc.)*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) (citations omitted).  This fundamental premise is
codified in Bankruptcy Code section 105.[11]  *See also Back v. AM Gen. Corp. (In re Chateaugay
Corp.)*, 213 B.R. 633, 640 (S.D.N.Y. 1997) (discussing Bankruptcy Code Section 105 and noting
the bankruptcy court's inherent power to enforce its own orders).

21.    Pursuant to paragraph 6 of the Eleventh Omnibus Order, this Court retained
exclusive jurisdiction:

> [T]o hear and determine all matters (a) arising from or related to the
> implementation, enforcement, or interpretation or this Order and (b) concerning the
> execution or enforcement of the Title III cases of any judgment entered in a
> prepetition ordinary course civil action where the Debtors agreed to modify or lift
> the Title III Stay to allow the action to proceed to judgment by the underlying court.

(Docket No. 8499.)  Accordingly, this Court has the authority to grant the relief requested herein.

**B.    *The Eleventh Omnibus Order and Stipulation Should be Enforced in
Accordance with Their Plain Terms***

22.    As detailed above, the Commonwealth and the Movants engaged in months-long

negotiations regarding the Quarterly Payments that resulted in the entry of the Stipulation and the

---

[11]    PROMESA incorporates Bankruptcy Code section 105(a).  *See* 48 U.S.C. § 2161(a).

Eleventh Omnibus Order approving the Stipulation.  The terms of the Stipulation are clear.  The Commonwealth agreed to make payments pursuant to "the previously agreed upon estimated formula, *adjusted with the newly set rates listed in Exhibit A*".  Exhibit F (the Stipulation) at ¶ 1(b) (emphasis added).  The Commonwealth also agreed that "the [Movants'] rates . . . shall be amended on an annual basis to reflect agreed-upon adjustments in accordance with the Medicare Economic Index."  *Id.* at ¶3, n.4.  Despite this clear language, the Commonwealth has failed to adhere to the terms of the Stipulation in calculating the Quarterly Payments and, as such, has underpaid the Movants by *$7,664,073.10*.  In fact, calculations done by both the Movants and the Commonwealth support this very conclusion.  *See* Exhibits B-4 (the Commonwealth's Calculations) and B-6 (the Movants' Calculations).

23.  The only discrepancy that exists between the Movants' Calculations and the Commonwealth's Calculations is in how the Commonwealth then goes on to use the lower 2018 rates to *average* the Quarterly Payments owed to the Movants for the 2019 period.  *See* Exhibit B (the Bacon Declaration) at ¶ 7.  In the first instance, the Commonwealth correctly calculates the amounts of the Quarterly Payments using the agreed-upon formula, as reflected in "Column C" of the Commonwealth's Calculations.  *See id.*; Exhibit B-4.  However, the Commonwealth then went on to *average* those calculated amounts with payments from the fourth quarter of 2018, which are based on old rates, for the first 2019 Quarterly Payment and applied averaging of the two prior quarters for each subsequent payment, thus resulting in an underpayment for each 2019 quarter.  The Stipulation, however, *does not* provide for the use of the 2018 rate for 2019 payments nor does it provide for averaging and there has never been an agreement otherwise.  This method employed by the Commonwealth results in the Movants being severely underpaid for the 2019 time frame in the amount of *$7,664,073.10*.

12

24.     Despite various communications with counsel to the Commonwealth and AAFAF regarding this discrepancy, the only explanation is that this averaging is consistent with past practice and in the ordinary course.  However, repeated requests to both the Commonwealth and AAFAF to provide evidence of these past practices have yielded no results.  Further, even if the Commonwealth or AAFAF can produce such evidence, the fact remains that, under the Stipulation, the Commonwealth agreed to make the Quarterly Payments, as calculated pursuant to an agreed upon formula—a formula that provides for the use of the current rate and does not provide for averaging with prior year rates.

25.     Accordingly, the Movants request that the Court enter an order substantially in the form of Exhibit A hereto: (i) enforcing the Eleventh Omnibus Order and Stipulation; (ii) ordering the Commonwealth to immediately make the Shortfall Payment to the Movants; and (iii) requiring the Commonwealth to make such go-forward Quarterly Payments to the Movants timely and in accordance with the Eleventh Omnibus Order, the Stipulation and the order approving this Motion.

## II.     Cause Exists to Lift the Automatic Stay

### A.     *Applicable Law*

26.     Bankruptcy Code section 362(d), incorporated into PROMESA by 48 U.S.C. § 2161, provides that, at the request of a party in interest and after notice and a hearing, a court shall grant relief from the stay imposed under Section 362(a) "for cause."  11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code.  *See, e.g., In re Unanue-Casal*, 159 B.R. 90, 95-96 (D.P.R. 1993), aff'd, 23 F.3d 395 (1st Cir. 1994).  However, "'cause' is said to exist when the harm that would result from a continuation of the stay would outweigh any harm that might be

suffered by the debtor or the debtor's estate if the stay is lifted." *Peerless Ins. Co. v. Rivera*, 208 B.R. 313, 315 (D.R.I. 1997).

27.     As this Court has recognized, the factors used in the District of Puerto Rico to determine whether cause exists for lifting the stay are those enumerated in *In re Sonnax Indus. Inc.*, 907 F.2d 1280 (2d Cir. 1990).  *See* Memorandum Order at 2, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 17-03283 (LTS) (D.P.R. July 7, 2017) (Docket No. 600); *see also Unanue-Casal*, 159 B.R. at 95-96 (analyzing the *Curtis* factors, which were adopted in *Sonnax*).  "Not all of the [*Sonnax*] factors are relevant in every case and the court need not assign equal weight to each factor." *In re N.Y. Med. Grp., P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) (citations omitted).  "Generally, courts have relied on only a few factors . . . to determine that sufficient cause existed to lift the stay." *Unanue-Casal*, 159 B.R. at 96.

**B.**     ***The Stay Should be Lifted to Allow the Movants to Proceed with the Prepetition Litigation***

28.     Cause exists to lift the automatic stay to permit the Prepetition Litigation to proceed.  Only a few *Sonnax* factors must be demonstrated in order to lift the stay.  The *Sonnax* factors applicable here are:  (i) whether relief would result in a partial or complete resolution of the issues; (ii) whether the parties are ready for trial in the other proceeding; (iii) the interests of judicial economy and the expeditious and economical resolution of litigation; and (iv) the impact of the stay on the parties and the balance of harms.  *See Sonnax*, 907 F.2d at 1286.  As set forth below, these factors weigh heavily in favor of lifting the stay to allow the Prepetition Litigation to continue.  Proceeding with the Prepetition Litigation would allow the Movants to, among other things, liquidate their claims and put in place the correct methodology for calculating the actual Wrap Around Payments owed to the Movants, both under the Plan and for the go-forward services that Movants will provide.

29.     As set forth above, in November 2010, the District Court issued the Order and Preliminary Injunction establishing a formula for calculating the Wrap Around Payments that were subject to the litigation.  This formula, however, was merely meant to serve as a proxy until the District Court ultimately could determine the correct methodology for determining the amounts owed to the Federally-qualified health centers under the Medicaid Act and other federal statutes.  Now, almost 10 years later, this final determination still has not been made, largely owing to the Title III Cases which stayed the Prepetition Litigation.

30.     The Movants believe that these "proxy" calculations, established by the District Court, *underestimate* the true and correct amounts owed to the Movants and other similarly situated health care centers.  *See* Exhibit B (the Bacon Declaration) at ¶ 13.  As set forth in the Proofs of Claim filed by the Movants, the Movants believe that they are owed in excess of $172 million as of the date that the Title III proceedings were commenced.  And such amounts have continued to increase during the Title III proceedings.  *Now* is the time to resolve this issue and, as demonstrated below, the *Sonnax* factors support lifting the stay.

31.     First, lifting the stay would result in a partial or complete resolution of the issues.  The main issue in the Prepetition Litigation is how to correctly calculate the Wrap Around Payments owed to the Movants and other similarly situated health care centers under the Medicaid Statute and other federal statutes.  This issue has been paused for almost ten years.  Now, however, is the time to move forward.  The Debtors seek to confirm the Plan and, in connection therewith, the Movants' claims ultimately will need to be crystalized.  Allowing the Prepetition Litigation to proceed will provide all parties with a process to liquidate the Movants' claims [12]  *See* Exhibit B at ¶¶ 12, 13.

---

[12]   The Movants are willing to participate in mediation regarding their claims and what steps the Commonwealth will take to be able to comply with the Medicaid statute and other federal statutes but only if persons that have

32.     Second, the Prepetition Litigation has been pending since 2006 and other similar litigation dates back to 2003.  Since 2010, the Movants have been operating under a temporary solution fashioned by the District Court, receiving Estimated Wrap Around Payments, until a final resolution of the matter could be decided.  While the Movants recognize that formulating a final calculation and resolution will require significant input from experts and other parties, no reasonable basis exists for the Commonwealth to argue that they are not "trial ready" in light of the fact that this litigation has been pending for so long.  *See id.* at ¶ 13.

33.     Third, the interests of judicial economy support the lifting of the stay.  As noted above, the amount of the Movants' claims must be determined in order to treat these claims under the proposed Plan.  In addition, the go-forward payments owed to the Movants must be properly determined and accounted for.  *See id.*

34.     Lastly, the impact of the stay on the parties and the balance of harms support the relief requested herein.  The automatic stay has halted litigation that would clarify the proper calculation of the Wrap Around Payments.  The staying of this litigation has resulted in substantial underpayment to the Movants of amounts owed for *more than a decade*.  The amount at stake here is significant.  The Movants contend, as set forth in their Proofs of Claim, that, as of the filing of the Title III Cases, they are owed in excess of $172 million in the aggregate.  Because of the Commonwealth's continued failure to properly compensate the Movants for their services, this amount has grown significantly in the ensuing years.  *See id.* ¶¶ at 13, 14.

35.     The Movants are deserving of full, fair and prompt payment for such services.  The Movants are not-for-profit organizations and are not ordinary contactors providing isolated optional services.  Instead, based on their status as Federally-qualified health centers, Movants are

---

decision making authority on behalf of the Commonwealth and AAFAF are required to, and do, participate in such mediation.

required to provide comprehensive healthcare services to the Commonwealth's most underserved population, including Puerto Rico Medicaid enrollees, and any other individual that walks in the door, regardless of the individual's ability to pay. *See* 42 U.S.C. § 254b(j)(3)(E); §§ 254b(a)(1); and 254b(j)(3)(G)(i). The Commonwealth has a corresponding obligation under the Medicaid statute to (i) make Movants' services available to enrollees of Puerto Rico's Medicaid program and (ii) pay Movants in a manner consistent with the Medicaid statute as a condition of receiving Medicaid funds. 42 U.S.C. § 1396a(a)(10)(A). Access to these services are even more critical now, as the Movants assist in the Commonwealth's response to the COVID-19 pandemic. Meanwhile, the Commonwealth, under the protection of the automatic stay, continues to enjoy the benefit of the Movants' services at a discount. Further, because the Movants are not receiving proper compensation, the Movants necessarily are constrained from providing the full-range of services to the citizens of the Commonwealth that they otherwise might be able to provide if the Movants were compensated for the full and fair amount of the Wrap Around Payments owed. As such, this underpayment impacts not just the Movants, but the underserved citizens of the Commonwealth.

36. Permitting the Prepetition Litigation to proceed will not harm the Debtors, as the amount of the Movants' claims will ultimately need to be crystalized to treat the Movants' claims under the Plan, as will the amounts owed to the Movants' for their go-forward services. This necessarily requires resolving the on-going dispute over the proper calculation of Wrap Around Payments. Thus, the harm done to the Debtors by lifting the automatic stay to the extent requested herein is far outweighed by the harm suffered by the Movants under the automatic stay by continuing to delay the clarification of the proper method to calculate the Wrap Around Payments.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Movants respectfully request that the honorable Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>: (i) enforcing the Court's Eleventh Omnibus Order and Stipulation and compel the Commonwealth to make Quarterly Payments pursuant to the Stipulation, including the immediate payment of the Shortfall; (ii) lifting the automatic stay to allow the Prepetition Action to continue; and (iii) enforcing payment of ongoing payments due pursuant to 42 U.S.C. § 1396a(bb)(a).

Respectfully submitted:

In San Juan, Puerto Rico, this 20th day of April, 2020.

OF COUNSEL:

**FELDSMAN TUCKER LEIFER FIDELL**
By: /s/ *Nicole M. Bacon*
Nicole M. Bacon (*pro hac vice* admission pending)
James L. Feldesman (*admitted pro hac vice*)
Khatereh S. Ghiladi (*pro hac vice* admission pending)
1129 20th Street, NW
Suite 400
Washington, DC 20036
Telephone: (202) 466-8960

**RODRÍGUEZ MARXUACH, PSC**
By: : /s/ *Miguel Rodríguez Marxuach*
Miguel Rodríguez Marxuach (USDC No. 206011)
María Celeste Colberg-Guerra (USDC No. 227314)
P.O. Box 16636
San Juan, PR 00908-6636
Tel 787-754-9898

**AKIN GUMP STRAUSS HAUER & FELD LLP**
By: /s/ *Lisa G. Beckerman*
Lisa G. Beckerman (*pro hac vice* admission pending)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000

Joanna F. Newdeck (*pro hac vice* admission pending)
2001 K Street N.W.
Washington, DC 20006
Telephone: (202) 887-4000

## <u>CERTIFICATION OF COMPLIANCE WITH CASE MANAGEMENT PROCEDURES</u>

I HEREBY CERTIFY THAT: that this Motion is in full compliance with the Lift Stay Protocol in paragraph III(R) of the Case Management Order entered in these Title III Cases.

Specifically, on November 18, 2019, the Movants provided notice to counsel for the Oversight Board and AAFAF of its intention to seek relief from the automatic stay to file.

Thereafter, the parties met and conferred and attempted to resolve the Movants' request for relief from the automatic stay. As demonstrated in the exhibits attached hereto, these communications were reasonable and were made in good faith.

Despite the Movants' attempts to resolve the dispute through discussions with the Commonwealth, the parties were unable to reach a resolution.

Respectfully submitted

In Washington, DC, this 20th day of April, 2020.

s/ *Nicole M. Bacon*
Nicole M. Bacon (*pro hac vice* admission pending)