# Exhibit B

## The Bacon Declaration[1]

---

[1] The attachments mentioned in the exhibits to the Bacon Declaration are omitted to the extent they are duplicative of attachments to the Bacon Declaration or immaterial.

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br><br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>    Debtor. | PROMESA<br>Title III |

**DECLARATION OF NICOLE M. BACON IN SUPPORT OF MOTION OF ATLANTIC MEDICAL CENTER, INC., CAMUY HEALTH SERVICES, INC., CENTRO DE SALUD FAMILIAR DR. JULIO PALMIERI FERRI, INC., CIALES PRIMARY HEALTH CARE SERVICES, INC., CORP. DE SERV. MÉDICOS PRIMARIOS Y PREVENCIÓN DE HATILLO, INC., COSTA SALUD, INC., CENTRO DE SALUD DE LARES, INC., CENTRO DE SERVICIOS PRIMARIOS DE SALUD DE PATILLAS, INC., AND HOSPITAL GENERAL CASTAÑER, INC. SEEKING (I) ENFORCEMENT OF THE COURT'S PRIOR ORDER AND (II) RELIEF FROM THE AUTOMATIC STAY**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

I, Nicole M. Bacon, under penalty of perjury, declare that the following is true and correct to the best of my knowledge, information and belief:

1. I am an attorney admitted to practice law in Washington, DC, and I am a partner with the law firm of Feldesman Tucker Leiffer Fidell LLP ("Feldesman Tucker"). Feldesman Tucker maintains offices at, among other places, 1129 20th Street NW, Suite 400, Washington, DC 20036. There are no disciplinary proceedings pending against me.

2. I am duly authorized to make this declaration (the "Declaration") on behalf of the Movants in support of the Movants' motion for entry of an order (i) enforcing the Court's Eleventh Omnibus Order and Stipulation and compelling the Commonwealth to make Quarterly Payments pursuant to the Stipulation, including the immediate payment of the Shortfall; (ii) lifting the automatic stay to allow the Prepetition Action to continue; and (iii) enforcing payment of ongoing payments due pursuant to 42 U.S.C. § 1396(a)(bb)(a) (the "Motion").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3. I have represented the Movants since July 2009[3]. Among other things, I negotiated, and entered into, the Stipulation, on behalf of the Movants and have been involved communications with counsel to the Commonwealth and AAFAF with respect to the relief sought in the Motion.

4. In accordance with the Lift Stay Protocol then in place, on April 10, 2019, the Movants sent a lift stay notice to the Oversight Board and AAFAF advising them of the Movants' intent to seek relief from the stay in order to allow the District Court in the Prepetition Action to: (i) continue requiring quarterly estimated wraparound payments at the newly agreed rates and (ii)

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Motion.
[3] (Entered the appearance September 21, 2009).

2

continue to oversee the process of reconciliation of past services and compensation due. *See* Exhibit 1 (the "April 2019 Lift Stay Notice").

5. After months of negotiation, on July 12, 2019, the Commonwealth and the Movants entered into a stipulation (the "Stipulation") resolving the April 2019 Lift Stay Notice. The Stipulation is attached to the Motion as Exhibit F. Pursuant to the Stipulation, the Commonwealth agreed to, among other things, continue to issue the Estimated Wrap Around Payments, pursuant to the Order and Preliminary Injunction, using the parties' previously agreed upon estimated payment formula, adjusted with the newly set rates as set forth in the Stipulation (the "Quarterly Payments"). As with the Order and Preliminary Injunction, the Quarterly Payments (and calculation thereof) were merely meant to serve as a proxy for the actual amount of Wrap Around Payments owed until such calculation is determined by the District Court.

6. The Stipulation was approved by this Court under that certain *Eleventh Omnibus Order Granting Relief from the Automatic Stay*, dated August 19, 2019 (Docket No. 8499) (the "Eleventh Omnibus Order"). The Eleventh Omnibus Order is attached to the Motion as Exhibit G.

7. Subsequently, on or around July 17, 2019, it became clear to me and the Movants that the Commonwealth was not complying with the terms of the Stipulation when the Commonwealth deposited quarterly payments for the second quarter of 2019 to the District Court that were significantly lower than the payments submitted for the prior quarter. I brought this to the attention of counsel for the Commonwealth and began correspondence attempting to resolve the discrepancy. *See* Exhibit 2 (the "2019 Correspondence"). Specifically, the Commonwealth failed to adjust the Quarterly Payments to properly account for the new rates set forth in Exhibit A to the Stipulation. *See* Motion, Exhibit F, ¶ 1(b) (requiring the Commonwealth to make payments

3

pursuant to "the previously agreed upon estimated formula, *adjusted with the newly set rates listed in* <u>*Exhibit A*</u>") (emphasis added). Rather, in calculating the Quarterly Payments, the Commonwealth averaged the calculated amounts with the payments from the fourth quarter of 2018, which are based on the old rates, and the Commonwealth then applied averaging of the two prior quarters for each subsequent payment. This is contrary to the plain language of the Stipulation, which provides that the Commonwealth is to apply the new rates to the agreed upon formula. Further, there is nothing in the Stipulation that authorizes the Commonwealth to use the prior year's rate or use averaging in the calculation of such Quarterly Payments for 2020.[4]

8. On November 18, 2019, in accordance with the Case Management Order and Lift Stay Protocol, I provided notice to counsel to the Oversight Board and AAFAF of the Movants' intent to seek further relief from the automatic stay in order to, among other things, enforce the Stipulation and to collect the shortfall owed to the Movants. *See* <u>Exhibit 3</u> (the "<u>November Lift Stay Notice</u>"). While there were some communications after the November Lift Stay Notice was issued, including a detailed spreadsheet provided by the Commonwealth on January 31, 2020, *see* <u>Exhibit 4</u> (the "<u>Commonwealth's Calculations</u>"), no resolution was reached. As part of these communications, *see* <u>Exhibit 5</u> (the "<u>Lift Stay Communications</u>"), I provided the Commonwealth with a spreadsheet detailing what the Movants were owed pursuant to the terms of the Stipulation, *see* <u>Exhibit 6</u> (the "<u>Movants' Calculations</u>").

9. On February 11, 2020, our co-counsel followed up with a letter to counsel to AAFAF, reiterating Movants' position that the Commonwealth has failed to perform its obligations

---

[4] The same issue would apply to payments corresponding to the year 2020, i.e. that the Commonwealth should not use 2019 rates to calculate amounts due for 2020 and should not use averaging in the calculation. The Movants note, however, that the Commonwealth submitted its payment for the first quarter of 2020 on April 17, 2020. The payment amount appears to more closely match the amount that would be due pursuant to the parties' previously agreed upon interim payment formula, adjusted with the newly set rates as set forth in the Stipulation.

4

under the Stipulation with respect to each of the 2019 Quarterly Payments owed to the Movants, *see* Exhibit 7 (the "February 2020 Letter"), **equating to a shortfall payment of $7,664,073.10 that is owed to the Movants under the terms of the Stipulation** (the "Shortfall" and such payment, the "Shortfall Payment"). In the February 2020 Letter, she also underscored that (i) the Commonwealth has not been complying with its obligations under Medicaid and other applicable federal laws with respect to the Movants and (ii) the Commonwealth has failed to implement a system whereby the Movants and other entities covered can bill and be paid on that basis. Counsel warned that the Commonwealth's failure to make the Shortfall Payment would leave the Movants with no option but to file a motion seeking to lift the automatic stay.

10. The parties discussed the discrepancy in payments but have been unable to reach a resolution. Among other communications, there was a call on February 24, 2020, between Diana M. Perez, attorney for AAFAF, counsel from the Commonwealth's Department of Justice, me and other representatives of the Movants to discuss the underpayments. Following that call, I exchanged correspondence with Ms. Perez regarding the Shortfall. In this correspondence, representatives for the Commonwealth indicated, and have continued to indicate, that their method of calculating the amounts owed is consistent with practice in the ordinary course. *See* Exhibit 8 (the "2020 Correspondence"). However, repeated requests to provide evidence of these past practices have yielded no results.

11. I have reviewed the *Sonnax* factors that are set forth in the Motion, and believe that sufficient cause exists to lift the stay and to grant the relief requested in the Motion.

12. I believe that lifting the stay would allow for the resolution of the main issue at hand: how to correctly calculate the Wrap Around Payments owed to the Movants and other similarly situated health care centers under the Medicaid Statute and other federal statutes. This

5

issue is not just relevant in the currently stayed Prepetition Litigation, but also in the Title III Cases. The Debtors have filed a plan and will seek confirm such plan. In connection therewith, the Movants' claims ultimately will need to be crystalized. In addition, the go-forward payments owed to the Movants under the Medicaid Statute and other federal statutes must be properly determined and accounted for.

13. I also believe that the parties should be ready to proceed with the Prepetition Litigation and that judicial economy supports lifting the stay to proceed with the Prepetition Litigation. The Prepetition Litigation has been pending since 2006 and other similar litigation dates back to 2003. The first version of the law that Movants seek to enforce went into effect in 1997 and the Commonwealth has never complied with its requirements. Since 2010, the Movants have been operating under what was intended to be a temporary solution fashioned by the District Court, receiving Estimated Wrap Around Payments, until a final resolution of the matter could be decided. Further, as noted above, this issue will need to be resolved in connection with the Title III Cases. The staying of the Prepetition Litigation has resulted in a continuation of the substantial underpayment to the Movants of amounts owed for more than a decade. The amount at stake here is significant. The Movants have filed proofs of claim in these Title III Cases in excess of $172 million in the aggregate. Because of the Commonwealth's continued failure to properly compensate the Movants for their services, this amount has grown significantly in the ensuing years.

14. Moreover, the Movants are not-for-profit organizations, not ordinary contactors providing isolated optional services. Instead, based on their status as Federally-qualified health centers, Movants are required to provide comprehensive healthcare services to the Commonwealth's most underserved population, including Puerto Rico Medicaid enrollees, and

any other individual that walks in the door, regardless of the individual's ability to pay. 42 U.S.C. § 254b(j)(3)(E); and §§ 254b(a)(1) and 254b(j)(3)(G)(i). Access to these services are even more critical now, as the Movants assist in the Commonwealth's response to the COVID-19 pandemic. Meanwhile, the Commonwealth, under the protection of the automatic stay, continues to enjoy the benefit of the Movants' services at a discount, in violation of federal law. Further, because the Movants are not receiving proper compensation, the Movants necessarily are constrained from providing the full range of services to the citizens of the Commonwealth that they otherwise might be able to provide if the Movants were compensated for the full and fair amount of the Wrap Around Payments owed. As such, in my view, this underpayment impacts not just the Movants, but the underserved citizens of the Commonwealth.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on April 20th, 2020

/s/ Nicole M. Bacon

Nicole M. Bacon