# **Exhibit 3**

**November Lift Stay Notice**

**FELDESMAN + TUCKER + LEIFER + FIDELL**

1129 20th Street, NW
Suite 400
Washington, DC 20036

T. 202.466.8960
F. 202.293.8103
www.ftlf.com

**Nicole M. Bacon**   nbacon@ftlf.com

November 18, 2019

<u>*Via Electronic Mail*</u>
The Financial Oversight and Management Board for Puerto Rico
Attn: Hermann Bauer and Ubaldo M. Fernández Barrera

Puerto Rico Fiscal Agency and Financial Advisory Authority (AAFAF)
Attn: Diana M. Perez, Luis C. Marini-Biaggi, and Carolina Velaz-Rivero

Dear Counsel:

Pursuant to the Title III Court's *Tenth Amended Case Management and Administrative Procedures Order*, please be advised that Atlantic Medical Center, Inc., Camuy Health Services, Inc., Centro de Salud Familiar Dr. Julio Palmieri Ferri, Inc., Ciales Primary Health Care Services, Inc., Corp. de Serv. Médicos Primarios y Prevención de Hatillo, Inc., Costa Salud, Inc., Centro de Salud de Lares, Inc., Centro de Servicios Primarios de Salud de Patillas, Inc., and Hospital General Castañer, Inc. intend to seek further relief from the automatic stay. The requested relief is in addition to the relief under the parties' stipulation that was fully endorsed by all parties on July 15, 2019 and approved by the Title III Court in the *Eleventh Omnibus Order Granting Relief from the Automatic Stay* on August 19, 2019 (*See* Att. 1).

As you may recall, each of the named movants are plaintiffs in litigation styled *Rio Grande Community Health Center, Inc., et al. v. Hon. Rafael Rodriguez Mercado, Secretary, Department of Health Commonwealth of Puerto Rico*, Case No. 03-1640 (Consolidated with Case Nos. 06-1291, 06-1524), United States District Court for the District of Puerto Rico (the "Litigation"). Each of the named movants are federally qualified health centers providing medical services on a continuing basis to a variety of Puerto Rican citizens and residents including but not limited to the indigent and uninsured as well as Medicare and Medicaid recipients. The Litigation concerns the continuing obligation of the Commonwealth to make supplemental payments also known as wrap around payments ("WAPs") pursuant 42 U.S.C. §1396a(bb).

Because of persistent failure and/or refusal of the Commonwealth to make the payments required by federal law, the District Court issued an injunction requiring the payment of estimated WAPs on a quarterly basis (*see* Docket Entry No. 743 in Civil Action No. 06-1260; *see also* Docket No. 674 in Civil Action No. 03-1640) (also provided here as Att. 2)

The Commonwealth has violated paragraph 1(b) of the stipulation which requires it to make payments pursuant to "the previously agreed upon estimated formula, adjusted with the newly set rates listed in Exhibit A" of the stipulation ("Quarterly Payments"). Instead the Commonwealth calculated the amount due under that formula (*See* Att. 4) and issued a

payment based on the average of the amount due under that formula and then averaged it with the fourth quarter of 2018 (which used the old PPS rates). The payment for the second quarter was an average of the payment between the Q4 2018 and Q1 2019, and the payment for the third quarter was an average between Q1 and Q2 2019 payments. (*See* Att. 5) Counsel for movants inquired about the payments deviating from the agreed upon standard with no success (*See* Att. 6). If we are unable to resolve this issue, movants have no choice but to seek court intervention.

The March 21, 2019 decision for the First Circuit states that the stay does not relieve the Commonwealth of its obligation to follow federal law. However, the Commonwealth continues to violate the very statute that gave rise to the Litigation almost 16 years ago. By accepting Medicaid funds, the Commonwealth has an obligation to pay movants pursuant to federal law independent of the Litigation.

Specifically, the Commonwealth must ensure movants receive full payment of the per visit rates set forth in Exhibit A of the stipulation no less frequently than every four months. The Commonwealth has yet to implement a system whereby movants and other entities covered by the statute within the Commonwealth can bill and be paid on that basis. The Quarterly Payments were designed to be merely a temporary solution for the Commonwealth's lack of compliance and serve as only a proxy to the actual payment obligation. Movants are owed much more for past periods, present payments, and future payments. As such, federal court enforcement of this obligation is necessary not only to reconcile past payments but to ensure compliance with federal law on an ongoing basis.

Movants seek further lifting of the stay to (1) enforce the Commonwealth's obligation to make Quarterly Payments pursuant to the stipulation; (2) resume oversight over the reconciliation process for past services and compensation due; and (3) enforce payment of ongoing payments due pursuant to 42 U.S.C. §1396a(bb)(5).

We look forward to discussions at your earliest convenience.

Sincerely

Nicole M. Bacon

Encl.: