# United States Court of Appeals
## For the First Circuit

No. 20-1065

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO SALES TAX FINANCING CORPORATION, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

Debtors.

ANDALUSIAN GLOBAL DESIGNATED ACTIVITY COMPANY; GLENDON OPPORTUNITIES FUND, L.P.; LMA SPC, for and on behalf of Map 98 Segregated Portfolio; CROWN MANAGED ACCOUNTS, for and on behalf of Crown/PW SP; MASON CAPITAL MASTER FUND LP; OAKTREE-FORREST MULTI-STRATEGY, LLC (SERIES B); OAKTREE OPPORTUNITIES FUND IX (PARALLEL 2), L.P.; OAKTREE OPPORTUNITIES FUND IX, L.P.; OAKTREE VALUE OPPORTUNITIES FUND HOLDINGS, L.P.; OAKTREE OPPORTUNITIES FUND IX (PARALLEL), L.P.; OAKTREE HUNTINGTON INVESTMENT FUND II, L.P.; OAKTREE OPPORTUNITIES FUND X, L.P.; OAKTREE OPPORTUNITIES FUND X (PARALLEL), L.P.; OAKTREE OPPORTUNITIES FUND X (PARALLEL 2), L.P.; OCEANA MASTER FUND LTD.; OCHER ROSE, L.L.C.; PENTWATER MERGER ARBITRAGE MASTER FUND LTD.; PUERTO RICO AAA PORTFOLIO BOND FUND II, INC.; PUERTO RICO AAA PORTFOLIO BOND FUND, INC.; PUERTO RICO AAA PORTFOLIO TARGET MATURITY FUND, INC.; PUERTO RICO FIXED INCOME FUND I, INC.; PUERTO RICO FIXED INCOME FUND II, INC.; PUERTO RICO FIXED INCOME FUND III, INC.; PUERTO RICO FIXED INCOME FUND IV, INC.; PUERTO RICO FIXED INCOME FUND V, INC.; PUERTO RICO GNMA AND U.S. GOVERNMENT TARGET MATURITY FUND, INC.; PUERTO RICO INVESTORS BOND FUND I, INC.; PUERTO RICO INVESTORS TAX-FREE FUND II, INC.; PUERTO RICO INVESTORS TAX-FREE

FUND, INC.; PUERTO RICO INVESTORS TAX-FREE FUND III, INC.;
PUERTO RICO INVESTORS TAX-FREE FUND VI, INC.; PUERTO RICO
INVESTORS TAX-FREE FUND V, INC.; PUERTO RICO INVESTORS TAX-FREE
FUND IV, INC.; PUERTO RICO MORTGAGE-BACKED & U.S. GOVERNMENT
SECURITIES FUND, INC.; PWCM MASTER FUND LTD; REDWOOD MASTER
FUND, LTD; TAX-FREE PUERTO RICO FUND II, INC.; TAX-FREE PUERTO
RICO FUND, INC.; TAX-FREE PUERTO RICO TARGET MATURITY FUND,
INC.; SV CREDIT, L.P.,

Movants, Appellants,

v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,

Debtors, Appellees,

THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY;
THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF THE COMMONWEALTH
OF PUERTO RICO,

Interested Parties, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain,* U.S. District Judge]

---

Before

Howard, Chief Judge,
Lynch and Kayatta, Circuit Judges.

---

Benjamin Rosenblum, with whom Bruce Bennett, David R. Fox,
Geoffrey S. Stewart, Beth Heifetz, Sparkle L. Sooknanan, Jones

---

\* Of the Southern District of New York, sitting by designation.

Day, Alfredo Fernández-Martínez, Delgado & Fernández, LLC, José C. Sánchez-Castro, Alicia I. Lavergne-Ramírez, Sánchez Pirillo LLC, John K. Cunningham, Jason N. Zakia, and White & Case LLP, were on brief, for Andalusian Global Designated Activity Company; Glendon Opportunities Fund, L.P.; LMA SPC, for an on behalf of Map 98 Segregated Portfolio; Crown Managed Accounts, for and on behalf of Crown/PW SP; Mason Capital Master Fund LP; Oaktree-Forrest Multi-Strategy, LLC (Series B); Oaktree Opportunities Fund IX (Parallel 2), L.P.; Oaktree Opportunities Fund IX, L.P.; Oaktree Value Opportunities Fund Holdings, L.P.; Oaktree Opportunities Fund IX (Parallel), L.P.; Oaktree Huntington Investment Fund II, L.P.; Oaktree Opportunities Fund X, L.P.; Oaktree Opportunities Fund X (Parallel), L.P.; Oaktree Opportunities Fund X (Parallel 2), L.P.; Oceana Master Fund Ltd.; Ocher Rose, L.L.C.; Pentwater Merger Arbitrage Master Fund Ltd.; Puerto Rico AAA Portfolio Bond Fund II, Inc.; Puerto Rico AAA Portfolio Bond Fund, Inc.; Puerto Rico AAA Portfolio Target Maturity Fund, Inc.; Puerto Rico Fixed Income Fund I, Inc.; Puerto Rico Fixed Income Fund II, Inc.; Puerto Rico Fixed Income Fund III, Inc.; Puerto Rico Fixed Income Fund IV, Inc.; Puerto Rico Fixed Income Fund V, Inc.; Puerto Rico GNMA And U.S. Government Target Maturity Fund, Inc.; Puerto Rico Investors Bond Fund I, Inc.; Puerto Rico Investors Tax-Free Fund II, Inc.; Puerto Rico Investors Tax-Free Fund, Inc.; Puerto Rico Investors Tax-Free Fund III, Inc.; Puerto Rico Investors Tax-Free Fund VI, Inc.; Puerto Rico Investors Tax-Free Fund V, Inc.; Puerto Rico Investors Tax-Free Fund IV, Inc.; Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.; PWCM Master Fund Ltd; Redwood Master Fund, Ltd; Tax-Free Puerto Rico Fund II, Inc,; Tax-Free Puerto Rico Fund, Inc.; Tax-Free Puerto Rico Target Maturity Fund, Inc.; and SV Credit, L.P.

Martin J. Bienenstock, with whom Timothy W. Mungovan, John E. Roberts, William D. Dalsen, Stephen L. Ratner, Jeffrey W. Levitan, Mark D. Harris, Margaret A. Dale, and Proskauer Rose LLP were on brief, for The Financial Oversight and Management Board for Puerto Rico, as representative for the Commonwealth of Puerto Rico and The Financial Oversight and Management Board for Puerto Rico, as representative for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico.

Peter M. Friedman, with whom John J. Rapisardi, Yaira Dubin, Ashley M. Pavel, and O'Melveny & Myers LLP were on brief, for the Puerto Rico Fiscal Agency and Financial Advisory Authority.

Catherine Steege, with whom Melissa Root, Robert Gordon, Jenner & Block LLP, A. J. Bennazar-Zequeira, Bennazar, García & Milián, C.S.P. were on brief, for the Official Committee of Retired Employees of the Commonwealth of Puerto Rico.

March 19, 2020

**LYNCH**, **Circuit Judge**. The appellant Bondholders own bonds issued in 2008 by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"). The Bondholders seek to reverse the denial of their motion that they be appointed as trustees of the System to bring avoidance actions against the Government of Puerto Rico.

The motion was brought and denied under 11 U.S.C. § 926, which provides "[i]f the debtor refuses to pursue a cause of action under section 544 . . . [or] 549(a) . . . of this title, then on request of a creditor, the court may appoint a trustee to pursue such cause of action." 11 U.S.C. § 926(a) (emphasis added). In denying the Bondholders' motion, the Title III court clearly did not abuse its discretion, and so we affirm.

I.

We sketch the relevant background and facts.[1] In 1951, the Commonwealth enacted the Enabling Act, which created the System "as both a trust and government agency." See Emps. Ret. Sys. v. Andalusian Glob. Designated Activity Co. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 948 F.3d 457, 463 (1st Cir. 2020); see also

---

[1] For more, see this Court's earlier opinions resolving claims between these parties about these bonds. See Emps. Ret. Sys. v. Andalusian Glob. Designated Activity Co. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 948 F.3d 457, 462-66 (1st Cir. 2020); Altair Glob. Opportunities Credit Fund (A), LLC v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 914 F.3d 694, 702-09 (1st Cir.), cert. denied, 140 S. Ct. 47 (2019).

Law No. 447 of May 15, 1951, 1951 P.R. Laws 1298 (codified as amended at P.R. Laws Ann. tit. 3, §§ 761-788).  Before the 2017 Amendment, "[t]he System provide[d] pensions and retirement benefits to [various government and public corporation employees in Puerto Rico]."  Andalusian, 948 F.3d at 463-64.  The System was "'independent and separate' from other Commonwealth agencies" and was funded by contributions from employers and employees, investment income, and a 2008 bond issuance.  Id. at 464 (quoting Altair Glob. Opportunities Credit Fund (A), LLC v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 914 F.3d 694, 704 (1st Cir.), cert. denied, 140 S. Ct. 47 (2019)).  The Bondholders own some of these 2008 bonds, and claim a security interest in various assets of the System.  Id.

The financial crisis in Puerto Rico led Congress in June 2016 to enact the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), which incorporated, and made applicable to Puerto Rico, certain provisions of the Bankruptcy Code.  48 U.S.C. §§ 2161-2162.  These provisions include 11 U.S.C. §§ 362, 544, 549(a), (c), (d), and 926.  Id. § 2161(a).  PROMESA "created the Financial Oversight and Management Board for Puerto Rico (the 'Board') and authorizes that Board to restructure the debt of the Commonwealth of Puerto Rico through quasi-bankruptcy proceedings." Andalusian, 948 F.3d at 463 (internal quotation marks omitted) (quoting Autonomous Municipality of Ponce (AMP) v. Fin. Oversight

- 6 -

& Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 939 F.3d 356, 359 (1st Cir. 2019)).  Under Title III of PROMESA, a specially designated Title III court was established, see 48 U.S.C. § 2168(a), and it is the decision of that court which we review.

In 2017, the Commonwealth passed Joint Resolution 188 and enacted 2017 P.R. Laws 106 (together, "2017 Amendment"), which amended the Enabling Act.  Andalusian, 948 F.3d at 465.  The 2017 Amendment required the System to liquidate its assets and transfer the proceeds to the Commonwealth General Fund, "eliminated the employers' obligation to contribute to the System[,] and required the Commonwealth General Fund to pay individual pensions."  Id.; 2017 P.R. Laws 106, § 2.1(a), (b).[2]

On October 30, 2019, the Bondholders demanded that the Board bring two avoidance actions to have the 2017 Amendment invalidated.[3]  The assets to be returned, we are told, are estimated

---

[2] For claims of the Bondholders also attacking the 2017 Amendment, see Complaint, Altair Glob. Credit Opportunities Fund (A), LLC v. Commonwealth of Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.), Case No. 17-3283-LTS (Jointly Administered), Adv. No. 17-00219-LTS (D.P.R. filed July 27, 2017), ECF No. 1; Altair Glob. Credit Opportunities Fund (A), LLC v. United States, 138 Fed. Cl. 742, 754 (Fed. Cl. 2018).

[3] On January 28, 2019, the Bondholders first demanded that the Board pursue avoidance actions under §§ 544 and 549 on behalf of the System and against the Commonwealth to return assets transferred under the 2017 Amendment.  The Board declined to bring such actions.  In response, the Bondholders moved the Title III court to appoint them as trustees of the System to bring the

to have a value of at least $190.48 million plus some other forms of property.[4] The Board declined. On November 19, 2019, the Bondholders renewed their motion to be appointed trustees, or have another so appointed with all costs of an independent trustee to be borne by the System.[5] The Title III court denied this motion. In re Fin. Oversight & Mgmt. Bd. for P.R., Nos. 17 BK 3283-LTS (Jointly Administered), 17 BK 3566-LTS, 2020 WL 114518, at *1 (D.P.R. Jan. 7, 2020). We refer the reader to that opinion for the full statement of the court's reasons. This appeal, which we expedited, followed.

II.

We review for abuse of discretion the denial of a § 926 motion to appoint a trustee. See United Surety & Indem. Co. v.

---

actions. On February 28, 2019, the Commonwealth and System stipulated to toll the statute of limitations for the avoidance actions for 270 days.

[4] Our January 30 decision determined that the Bondholders did not have a prepetition property interest in postpetition Employers' Contributions and thus limited the Bondholders' liens on Employers' Contributions to only those Contributions already paid, or "calculated and owed" as of the petition date. Andalusian, 948 F.3d at 468-70, 472 & n.13. The Bondholders have failed to make any argument as to why our January 30 decision would not also limit their proposed claims as to postpetition Employers' Contributions. The decision did not, however, "decide the issues pending before the Title III court concerning liens on prepetition Additional Uniform Contributions." Id. at 467 n. 7 (emphasis added).

[5] On appeal, the Bondholders represented that, if they are appointed as trustees, they would bear the costs of the avoidance litigation.

- 8 -

Pedro López-Muñoz (In re Pedro López-Muñoz), 866 F.3d 487, 497 (1st Cir. 2017) (reviewing the bankruptcy court's decision not to appoint a trustee under 11 U.S.C. § 1104(a)).  A court has abused its discretion when it leaves us "with a 'definite and firm conviction that the court . . . committed a clear error of judgment,'" Paolino v. JF Realty, LLC, 830 F.3d 8, 13 (1st Cir. 2016) (quoting Schubert v. Nissan Motor Corp. in U.S.A., 148 F.3d 25, 30 (1st Cir. 1998)), or has committed an error of law, Top Entm't, Inc. v. Torrejon, 351 F.3d 531, 533 (1st Cir. 2003).

It is clear from the text of § 926 -- "the court may appoint" -- that Congress intended to provide the Title III court with substantial discretion in this decision.  See Haig v. Agee, 453 U.S. 280, 294 n.26 (1981) ("'[M]ay' expressly recognizes substantial discretion.").  A court may appoint a trustee under § 926 in response to a debtor's reluctance to bring avoidance actions.  Further,

> [t]his reluctance may arise from the fact that the transfer sought to be avoided would have been made by the debtor, such that the debtor actually favors the transfer rather than opposes it, or it may arise from the unwillingness of the debtor, while it is attempting to negotiate a plan, to antagonize its creditors by bringing causes of action against them for recovery of prepetition transfers.

In re N.Y. City Off-Track Betting Corp., No. 09-17121(MG), 2011 WL 309594, at *4 (Bankr. S.D.N.Y. Jan. 25, 2011) (unpublished) (quoting 6 Collier on Bankruptcy ¶ 926.02 (Alan N. Resnick & Henry

J. Sommer eds., 16th ed. rev. 2010)). But "courts should be very hesitant to appoint a trustee." Collier on Bankruptcy ¶ 926.02 (Richard Levin & Henry J. Sommer eds., 16th ed.).

Here, the Bondholders bear the burden of showing that the Board unjustifiably refused to bring an avoidance action against the Commonwealth on behalf of the System. See PW Enters., Inc. v. N.D. Racing Comm'n (In re Racing Servs., Inc.), 540 F.3d 892, 900 (8th Cir. 2008).

The Bondholders' primary argument is that the Title III court erred as a matter of law in not confining its analysis to the two factors commonly used for evaluating motions for derivative creditor standing in the context of commercial reorganization bankruptcies. They say those two factors are (1) the costs and benefits to the individual debtor, here the System, and (2) whether the avoidance claims are colorable. In fact, the Title III court acknowledged the relevance of the commercial bankruptcy approach and its goals, said it considered the goals of this approach, but that it also recognized this was a governmental bankruptcy proceeding, which required a "more holistic approach." The error, the Bondholders say, came in the court's taking into account that the System is a governmental, not a commercial, entity. The Bondholders are flatly wrong that the court's choice to consider all of the facts and so to approach differently the appointment of a trustee in a governmental insolvency than in a commercial one

was legal error. Nothing in the text of § 926 limits or even discusses the factors a court may take into consideration. That textual reading alone refutes the Bondholders' argument.

Further, the Bondholders' argument is refuted by the obvious differences between governmental bankruptcies and commercial private party bankruptcies. That distinction has been recognized by case law from courts addressing municipal bankruptcy issues under chapter 9 of the Bankruptcy Code. Cf. Newhouse v. Corcoran Irrigation Dist., 114 F.2d 690, 690-91 (9th Cir. 1940) ("The bankruptcy of a public entity, however, is very different from that of a private person or concern."). Unlike a commercial bankruptcy, which attempts to "balanc[e] the rights of creditors and debtors," the "principle purpose of chapter 9," and by analogy PROMESA, "is to allow municipal debtors the opportunity to continue operations while adjusting or refinancing their creditor obligations."[6] In re N.Y. City Off-Track Betting, 2011 WL 309594, at *5 (citing H.R. Rep. 95-595, at 263 (1977), as reprinted in 1987 U.S.C.C.A.N. 5787, 6221); see also In re Richmond Unified School Dist., 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991) ("[M]any of the principles that apply in the other chapters of the

---

[6] For instance, in In re Richmond Unified School Dist., the court held that a school district could dismiss its chapter 9 case, even assuming that the dismissal would harm the creditors and a conflict of interest existed. 133 B.R. 221, 224-26 (Bankr. N.D. Cal. 1991).

Bankruptcy Code are of limited assistance in construing of Chapter 9.").

The Bondholders argue that allowing the consideration of governmental interests in deciding whether to appoint a trustee under § 926 contravenes PROMESA's instruction not to "substantive[ly] consolidat[e]" separate debtors. See 48 U.S.C. § 2164(f) ("[N]othing in [Title III] shall be construed as authorizing substantive consolidation of the cases of affiliated debtors."). But the Title III court's consideration of the governance interests of the public debtors does not amount to "substantive consolidation." Even if we limit our focus to the interests of the System itself, governance of the Commonwealth remains relevant: the Enabling Act that created the System specified that "[t]he funds of the System . . . shall be used and applied . . . for the payment of retirement and disability annuities, death benefits and annuities, and other benefits . . . in order to achieve economy and efficiency in the administration of the Government of the Commonwealth of Puerto Rico." P.R. Laws Ann. tit. 3, § 761 (emphasis added). PROMESA's prohibition of "substantive consolidation" does not rewrite the text of § 926 or cause us to ignore the clear differences between governmental and commercial bankruptcies. The Title III court's consideration of governance interests in deciding whether to appoint a trustee under § 926 was proper.

- 12 -

The Bondholders' next claim of legal error is that the Title III court improperly gave special deference to the Board's decision not to sue the Commonwealth on behalf of the System. This is not accurate, as is evidenced by a reading of the court's opinion. See In re Fin. Oversight & Mgmt. Bd. for P.R., 2020 WL 114518, at *2-4.

The next set of Bondholder arguments, in our view, are not claims of legal error but are rather claims that the court abused its discretion in its weighing of the various considerations.

The Title III court did not abuse its discretion in considering sections 303 and 305 of PROMESA as relevant[7] to the trusteeship question. See 48 U.S.C. § 2163 (stating, as PROMESA section 303, that Title III "does not limit or impair . . . the exercise of the political or governmental powers of the territory or territorial instrumentality."); id. § 2165(2) (prohibiting, as PROMESA section 305, the Title III court from interfering with "any of the property or revenues of the [Title III] debtor").

---

[7] We also reject the Bondholders' mischaracterization of the Title III court rulings. The Title III court did not, as the Bondholders seem to argue, create a per se rule that sections 303 and 305, codified at 48 U.S.C. §§ 2163, 2165, eliminate, or limit, its discretion to appoint a trustee. Rather, the Title III court correctly interpreted these provisions as supporting a consideration of the unique interests and needs of the government debtor.

There was no abuse of discretion in considering these special governmental concerns as informing the § 926 decision. This is so for several reasons, including because "the appointment by the court of a trustee to undo [a transfer in the exercise of the debtor's political or governmental functions, or in control of its income or property] may constitute an interference with those powers or with that property, contrary to the mandatory dictates of section 904" (a section which mirrors PROMESA section 305). In re N.Y. City Off-Track Betting, 2011 WL 309594, at *4 (quoting 6 Collier on Bankruptcy, supra, ¶ 926.02).

That the 2017 transfer was made pursuant to the Legislature's enactment of a Puerto Rico joint resolution and statute further supports that the Title III court did not abuse its discretion. Id. ("Given that the transfers at issue were made pursuant to [state] law, it appears that appointing a trustee to avoid these transfers may engender the very concerns alluded to in Collier [on Bankruptcy ¶ 926.02]."). It follows that the Title III court did not abuse its discretion when it considered the role of sections 303 and 305 of PROMESA, the powers granted to the Board, and that the Board is "an entity within the territorial government [of the Commonwealth]." 48 U.S.C. § 2121(c)(1).

We also cannot say the Title III court abused its discretion when it considered the Commonwealth's potential defenses to the requested trustee avoidance actions. The

Bondholders are wrong, to start, that the "colorab[ility]" standard is an exclusive standard. See In re Racing Servs., Inc., 540 F.3d at 901 ("While by no means exhaustive, among the factors the court should consider in conducting this analysis are: (1) '[the] probabilities of legal success and financial recovery in event of success'; (2) the creditor's proposed fee arrangement; and (3) 'the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce.'" (alteration in original) (quoting Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.), 779 F.2d 901, 905-06 (2d Cir. 1985))).

We turn to the Title III court's assessment of the potential defenses under Bankruptcy Code §§ 544(b) and 549(a) to any trustee action under § 926.[8] Under § 544 (and except as to certain charitable contributions not at issue here):

> the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

---

[8] We neither address nor take a view on the appellees' substantive arguments that §§ 544 and 549 do not apply to the purported transfers at issue here, including the argument that § 544 applies only to transfers that took place before the bankruptcy petition was filed.

11 U.S.C. § 544(b)(1). Subject to a few exceptions not at issue here, § 549 states that:

> the trustee may avoid a transfer of property of the estate . . . (1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court.

Id. § 549(a).

The Bondholders argue that the Title III court abused its discretion by analyzing the strength of the defenses to the proposed claims, instead of merely whether the claims were colorable. Not so. Claims may be colorable but not strong, and that is surely relevant at least where, as here, the Bondholders have other actions pending seeking the same relief as would be sought if the motion had been granted.[9]

The Title III court recognized that the Bondholders have brought other Title III court actions, which the Bondholders concede seek the same relief as would be sought in the proposed

---

[9] The out-of-circuit cases to which the Bondholders cite do not support the proposition that the Title III court must restrict its analysis to whether claims are colorable in the governmental bankruptcy context before denying a § 926 motion. These cases concern the commercial debtor context, and, for the most part, impose requirements on finding derivative creditor standing, not restrictions on denying it. See In re Racing Servs., Inc., 540 F.3d at 899; In re STN Enters., 779 F.2d at 905. We have already reached the primary contention -- that commercial bankruptcy rules bind here -- on which this argument rests, and the secondary argument fails.

avoidance actions.[10]  See In re N.Y. City Off-Track Betting, 2011 WL 309594, at *4 (denying a § 926 motion to appoint a trustee to pursue fraudulent conveyance action, when such action could also be brought in state court).

---

[10] In Altair, Adv. No. 17-00219-LTS, the Bondholders argue in the Title III court that the 2017 Amendment violated the automatic stay and its prohibition on "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). There, the Bondholders seek to have declared void the transfer of assets and diversion of contributions from the System to the Commonwealth or, in the alternative, that their security interest "follow[ed] [their] collateral" or that the 2017 Amendment "violated the Takings and Contracts Clauses of the United States and Puerto Rico Constitutions." Complaint at 5, Altair, Adv. No. 17-00219-LTS, ECF No. 1.

In Altair v. United States, the Bondholders argued in the Court of Federal Claims that "Congress authorized the Oversight Board to design, approve, and direct the Legislature to enact Joint Resolution 188 and Act 106-2017, resulting in the appropriation of [the Bondholders'] property, without just compensation," and so violated the Takings Clause of the Fifth Amendment. 138 Fed. Cl. at 754. There, the Bondholders seek compensation for the 2008 bonds as well as attorney's fees and costs. Id.

We are mindful that the Board argues that we should decline to appoint a trustee to pursue claims on behalf of the System because the Bondholders can fully pursue their claims in other actions, while simultaneously arguing in those actions that the Bondholders cannot pursue some of those claims because only the System has the right to pursue those claims. See Defendant's Motion to Dismiss at 15-16, 28-31, Altair, Adv. No. 17-00219-LTS, ECF No. 41. But those standing arguments may not prevail, and the Bondholders have additional theories of relief that are not subject to the standing claims. Compare id. at 28-31 (asserting a standing defense to the Bondholders' unjust enrichment claims), with id. at 23-28 (asserting no standing defense to the Bondholders' "takings" claims). In consequence, it was not an abuse of discretion for the Title III court to consider the existence of the Bondholders' other actions pursuing the same ultimate relief as a factor that supported its decision not to appoint a trustee under § 926.

There is an additional fact which supports the Title III court's decision not to appoint a trustee. The Board has represented to this Court and to the Title III court that, if the other Title III proceeding determines that the Bondholders have a valid lien on the $190.48 million the Board agrees was transferred from the System to the Commonwealth, the Board will recognize that lien and distribute to the Bondholders the value of that amount. The Board further represented that it would waive any arguments it has under UCC § 9-332(b) as to the Bondholders' liens. Any prospect that the Bondholders would show that the Commonwealth improperly transferred assets from the System, fail to show that they have a lien on such assets, but still establish that they would benefit as unsecured creditors does not outweigh the other considerations the Title III court detailed when denying appointment of a trustee, such that the court abused its discretion. Even acknowledging the Bondholders' claim that the assets transferred out of the System amounted to some uncertain amount more than $190.48 million,[11] it was not an abuse of

---

[11] While the Bondholders' briefs allude in passing to unspecified assets in addition to the $190.48 million that the Board has set aside for possible distribution if deemed in another suit to be subject to the Bondholders' security interest, the briefs never develop any argument that the values of those unspecified assets is so substantial as to warrant a different balancing of interests by the Title III court in this action -- much less that those assets amounted to $2 billion, as contended for the first time at oral argument. Any such argument is

discretion for the Title III court to seek to avoid a proliferation of actions seeking essentially the same remedy. Each such proceeding potentially drains assets which could be put to other uses.

III.

Nothing in this opinion purports to address any issues in the other cases regarding the 2017 Amendment or the Bondholders' liens or claims.

Affirmed. Costs are awarded to the Board.

---

therefore waived. See Pignons S.A. Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. 1983).