UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>As representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al<br><br>Debtors | PROMESA<br><br>TITLE III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administrated) |
| In Re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>As representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor | PROMESA<br><br>Title III<br><br>Case No. 17-BK-4780-LTS<br><br>This Motion relates to PREPA, and shall be filed in the lead Case No. 17-BK-3283-LTS and PREPA's Title III case (Case No. 17-BK-4780-LTS) |

RESPONSE TO PREPA'S URGENT MOTION FOR ENTRY OF AN ORDER
AUTHORIZING PREPA TO ASSUME CERTAIN CONTRACTS WITH
ECOELECTRICA, L.P., AND GAS NATURAL APROVISIONAMIENTOS SDG, S.A.

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE LAURA
TAYLOR SWAIN:

NOW COMES, WINDMAR RENEWABLE ENERGY (Windmar) represented by

the undersigned counsel and respectfully alleges and prays:

1

## PRELIMINARY STATEMENT

1.      The Financial and Management Board ("FOMB"), on behalf of the PREPA has submitted an urgent motion to assume Ecoelectrica and Naturgy contracts.

2.      These contracts, which have been negotiated behind closed doors and without the benefit of public scrutiny or competition, have not been supported with convincing data as being beneficial to PREPA's restructuring and operational expenses, much less for the ratepayers or the overall progress of Puerto Rico's economic or energy needs.

## JURISDICTION AND VENUE

3.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction over this Motion pursuant to Section 306(a) of PROMESA. 48 U.S.C. §2166(a).

4.      Venue is proper pursuant to Section 307(a) of PROMESA. 48 U.S.C. §2167(a).

5.      Windmar is a Puerto Rico renewable energy company who has PPOA's with PREPA. It has also participated in all proceedings before the PREB where intervenors were allowed including the current unfinished IRP process; and has participated in the PROMESA case.  Its PPOA's with PREPA, are directly affected by PREPA's economic decision in the Ecoelectrica contracts.

6.      As stated on April 1, 2020 PREPA filed an urgent motion to obtain the Court's approval for the assumption of certain contracts with Ecoelectrica, L.P. and Gas Natural Aprovisionamientos SDG, S.A. (Docket No. 12579).

7.      PREPA request on said motion is:

"(a) Authorizing PREPA to assume (i) the Amended and Restated
Power Purchase and Operating Agreement, dated as of March 27,
2020 (the "ECO PPOA"), between PREPA and EcoElectrica, L.P.
("ËCO"), relating to the existing 543 MW combined-cycle,
cogeneration facility in Peñuelas (the "ECO Generation Facility"),
which amends and restates the Power Purchase and Operating
Agreement, dated as of March 10, 1995 (as amended prior to March
27, 2020, the "Pre-Restatement PPOA") between the same parties,
and (ii) the Amended and Restated Natural Gas Sale and Purchase
Agreement , dated as of March 23, 2020 (the "Naturgy GSPA") and
together with the ECO PPOA , the "Contract"), between PREPA and
Gas Natural Aprovisionamientos SDG, S.A. ("Naturgy"), relating to
the supply of natural gas to Unit 5 and 6 of PREPA's 820 MW Costa
Sur generating facility (the "Costa Sur Generation Facility"), located
adjacent to the ECO facility, which amends and restates the Natural
Gas Sale and Purchase Agreement dated March 28, 2012 (as
amended prior to March 23, 2020, the "Pre-Restatement GSPA" and
together with the Pre –Restatement PPOA, the "Pre-Restatement
Contracts"), between the same parties, and (b) providing any
additional relief required  to effectuate the foregoing."

8.      The description of the existing contracts- supposedly to be assumed is:

"THE ECO PPOA AND NATURGY GSPA
The Pre-Restatement Contracts provided the contractual basis for a
program (the "LNG-to-Power Program") under which (i) Naturgy
imported liquefied natural gas ("LNG") into Puerto Rico at a LNG
terminal facility, owned by ECO and located in Peñuelas (the "ECO LNG
Terminal"), converted the LNG to natural gas and sold such natural gas
to PREPA for supply to Costa Sur Generation Facility under the terms
of the Pre-Restatement GSPA, and (ii) ECO imported LNG into Puerto
Rico, converted in  the LNG into natural gas at the ECO LNG Terminal
for supply to the ECO Generation Facility and sold the power generation
capacity and energy of such facility to PREPA under the terms of the
Pre-Restatement PPOA.  Padilla Decl. ¶5.  PREPA has historically
sourced up to 40% of the baseload power in Puerto Rico through this
LNG –to-Power Program. *Id*. The Pre-Restatement GSPA will expire in
December 2020 and the Pre-Restatement PPOA will expire in March
2022. *Id*."

9.      PREPA recognizes in its motion that the new contracts, which is requesting the Court to authorize its assumption, are totally different from the existing contracts.

10.     The new contracts should not be authorized by this Honorable Court for several reasons:

First Reason:  This is not an assumption. What PREPA is requesting is not for the Court to authorize the assumption of existing contracts.  What it is requesting is to approve, totally new different contracts which is not what assumption of contracts under the Bankruptcy Code, Title II, Section 365 (a) provide for. These new contracts are not the same existing contracts. Under Puerto Rico Civil Code 31 LPRA 3151 and 3241 to 3246, when there is a novation, the old contract ceases to exist and new contracts are created.

Under Section 3241 of Puerto Rico's Civil Code, Title 31, novation extinguishes a contract when the clauses of the "new one" alter the basic elements of the first contract.  Such is the case in this alleged mere assumption of an existing contract.

Under a novation applicable law, PREPA is not "assuming" an existing contract, it is approving a new contract subject to different administrative and legal proceedings.

If they are new contracts this Court does not have to approve them.

Thus, an executory contract for Section 365 is a contract that was entered into pre-petition, where the parties have yet to complete performance post-petition.

Evidently, "[c]ontracts that do not exist at the time the petition is filed cannot be executory contracts." In re Gen. Homes Corp., 199 B.R. 148, 150 (S.D. Tex. 1996).

4

As stated, the contracts that PREPA offers up for court approval are not the same contracts that were entered into pre-petition.

Under Puerto Rico contract law, some amendments may result in extinctive novation, even if it is not expressed. See Web Serv. Group, Ltd. v. Ramallo Bros. Printing, Inc., 336 F. Supp. 2d 179, 182 (D.P.R. 2004):

> [E]xtinctive novation *extinguishes the old obligation and creates a new one* . . .  In the absence of an express declaration, novation is appropriate only when the two obligations are absolutely incompatible. *In other words, there must be a radical change in the nature between the new and old obligation so as to make them mutually exclusive.*  (citations and quotation marks omitted)(emphasis added). See, also, Enact Services, LLC v. Rimco, Inc., 526 F. Supp. 2d 213, 222–23 (D.P.R. 2007).

Under this concept, "[o]ne of the criteria utilized to determine whether there is incompatibility is to determine whether the alterations to the object of the contract are qualitative or quantitative. An alteration is deemed qualitative *when the obligation is substituted by another of a different nature*." Las Brisas, S.E. v. Dept. of Agric. Farmer's Home Admin. (U.S.), 8 F. Supp. 2d 141, 146 (D.P.R. 1998)(emphasis added).

PREPA's motion dated December 12, 2019 to PREB includes the November 4, 2019 CONFIDENTIAL letter from PREPA's executive directors, Mr. Jose Ortiz, requesting approval of the Amended and Restated Power Purchase and Operating Agreement with EcoElectrica and natural Gas Sale and Purchase Agreement with Naturgy: and PREPA's Board Resolution dated October 30, 2019.

In his letter Ortiz describes the execution of the existing contracts as a "restructure" which "converts the ECO PPOA into a tolling arrangement" [2]and

enables the Eco facility "to transition from base load production" into a facility that will provide "cycling and ancillary services…to stabilize and balance the grid".

Ortiz goes on to describe the new relationship as "Naturgy will become **a new supplier of natural gas to PREPA** with respect to the Eco facility, and given this the Naturgy GSPA can be considered a **new contractual obligation** for PREPA." (emphasis added).

Second Reason: PREB has not yet render a final decision regarding the acceptance of these new contracts, nor did it review the assumption of the amended and restated contracts as required by Law and Regulation.

These new contracts its terms, prices, etc. are not part of PREPA's Integrated Resource Plan (IRP) filed and pending at the Puerto Rico Energy Bureau; they were not even mentioned in PREPA's final brief in the IRP process dated March 6, 2020;Only on the Reply Brief filed by PREPA on April 20, 2020 the new contracts are mentioned.[1]

The PREB is currently evaluating the IRP which would be in place for the duration on the new Ecoelectrica contract.  As of today, there is no final PREB determination, which is legally necessary for PREB to determine with finality if the new contract is consistent with the IRP, and the public interest, in particular Law 17 of 2019.

It is not factually possible that a determination be made on the contract compliance with IRP when:

A.   Neither PREB nor PREPA knows the current state of the Costa Sur plant;

---

[1] are not mentioned in the Grid Modernization Plan of Puerto Rico's Government dated November of 2019; nor are mentioned in the Report submitted by PREPA to the PREB on February 2, 2020 concerning Earthquake Damages which include Costa Sur and Ecoelectrica.

B.  Neither PREPA nor PREB, much less this Court, knows when the Costa Sur plant will restart nor whether Costa Sur will operate fully or partially.

C.  PREPA has not notified PREB the alternatives considered to substitute Costa Sur including whether it considered renewable energy with battery support, as Law 17 would require.

D.  PREB did not permit the intervenors in the IRP process to participate, have access or do discovery concerning the Ecoelectrica contract, maintaining confidentially of the process which impacted the IRP process which by law is open to intervenors.

E.  PREB and PREPA admitted having ex-parte communications about the contracts when the IRP process was ongoing, when the contracts have to be analyzed in the context of such IRP analysis. The parties in the IRP process were left out of the ex-parte communications between PREPA and PREB.

PREB acted in the contract analysis under PREB Regulation 8815 which is not the applicable regulation.  The Regulation 8815 is for Request for Proposal and Request for Qualification of new projects which the submitted amended and restated contracts are not.

If PREB considered them to be new contracts subject to Regulation 8815, then they cannot be considered an assumption of an existing contract. You cannot have it both ways, a new contract at PREB and the assumption of an existing contract at Court.

7

As such the Regulation 8815 presupposes a competitive open process, which is totally lacking in the current contractual process.  There is no evidence in the record of PREB, much less in this Court, of compliance with the detailed proceedings of Regulation 8815 if it applies as PREB and PREPA claim.

So, either PREB and PREPA used the wrong regulation, or if it is the correct regulation, neither PREPA nor PREB complied with it.

Third Reason: Two basic premises on which PREPA's request for approval of the contracts is based are either false or lack legal basis.

The "new" contracts eliminate the "oil price hedge" and PREPA alleges that the new contracts will reduce the overall price of the capacity payment of the contract. Contrary to their savings claim, without the hedge to oil the energy payments of PREPA will end up much higher during the next two years. By eliminating a hedge to oil, and by increasing the LNG adder above market prices  PREPA will not end up not saving $80 million a year as claimed, but rather end up overpaying $150 million a year.

The other premise is the "sole provider" exception to soliciting proposals for capacity to replace Ecoelectrica when that contract expires in 2022 because Ecoelectrica supposedly has a "natural monopoly" as the sole owner of the LNG terminal. The LNG Terminal leases a dock from the Puerto Rico Ports Authority, dated April 1, 1996.

The idea that PREPA has to pay  a 2 billion dollar premium for an extension because, as PREPA's motion and Mr. Fernando Padilla sworn statement "explain" Ecoelectrica has a monopoly is intolerable.  Especially since its monopoly grow in part out of a government contract for a dock, and the dock is public property.

PREPA has not submitted the Port's Authority contract to this Court.   It was not submitted to PREB.

There is no evidence or legal claim that Ecoelectrica/Naturgy has a valid monopoly for the terminal.  Even if it did, there is an issue of, not just having the monopoly, but whether it is been used to further entrench the monopoly.  This is "monopolizing" which would be a violation of both the Sherman Antitrust Act and of Puerto Rico's Antitrust, Act 77 of June 25, 1964, 10 LPRA, Sec. 260.

There is also an issue of whether Ecoelectrica/Naturgy is covered by the open access- pre Hackberry FERC decision, being a contract of 1995 and not post Hackberry see 2002 FERC 2567 Hackberry LNG Terminal.

The FERC on 2002 decided the Hackberry LNG terminal case 2002 FERC Lexis 2567.  The case eliminated the "open access" rule which required from LNG terminals owners to operate the terminals permitting access of gas from any client. This decision was based on increasing prospectively LNG terminals new investment in the US.  It certainly does not apply to a pre Hackberry terminals like Ecoelectrica. Concerning the application to new terminals see: Talus, Access to gas markets: a comparative study on access to LGN terminals in the European Union and the US 2009 Houston Journal of Intl. Laws pages 371 et seq.; see also 164 FERC 61, 107 Domino Cove Port LNG, LP, pages 2 et seq. (2018)).

This interpretation reinforces that the so called monopoly of Ecoelectrica needed at least careful legal analysis, when it is totally lacking.

PREPA has admitted that it operated in this negotiations under the premise that  Ecoelectrica/Naturgy monopoly results in a "sole provider" exemption to the RFP

mandate, but did not even investigated whether there is in fact such a monopoly, whether it is legal or whether it was been utilized to further monopolize.

There is not, in PREB, no in this Court, record any analysis or legal opinion on the monopoly issue or the sole provider exemption to the RFP process.

Ortiz informs the PREB that attorneys from Diaz and Vazquez have "confirmed that **if** Naturgy holds the exclusive rights to the regasification facility, **then** the negotiation of the ECO PPOA and the Naturgy GSPA **could** fit within an exception to the competitive bidding process under the "one supply source" exception found in PREPA's Organic Act." (Emphasis supplied). If, then and could is the extend of a legal opinion from Diaz and Vazquez that result in an overpayment of billions of dollars.

According to PREPA the Naturgy GSPA falls within the "sole source" exception of PREPA's enabling act, Act No. 83 of May 2, 1942 Section 15(2)(d) because "such circumstances ('there is only one supply source") exist in the case of Naturgy.

Before the CEPR and PREB were created, PREPA as a "government owned self-regulated monopoly" had the power to determine when the sole source exception to a competitive bidding applied. PREPA can no longer self-regulate.

Furthermore, the reason PREPA uses to justify its determination for the "sole source" exception is that "Naturgy has a *de facto* monopoly over the supply of gas into the southern part of the island."

FERC rejected imposing a non-discriminatory, open access service provision on EcoElectrica because such a provision is for service rendered by natural gas pipeline companies over facilities used to transport gas in interstate commerce. They reason the "facilities will be used to engage in commerce between Puerto Rico and

foreign nations. The FERC's jurisdiction under section 7 does not attach to such foreign commerce; our jurisdiction over foreign commerce is limited to the delegated authority under section 3," (Commission Opinions, Orders and Notices, Issued May 15, 1996, 761 5-30-96 61,515).

The new contracts put an adder that would be used in the contracted LNG price if the LNG is from a domestic source, interstate trade.

On July 6, 2005 the Federal Energy Regulatory Commission issued an ORDER GRANTING AUTHORIZATION to the Golden Pass LNG Terminal LP.[1]

As with the EcoElectrica the Golden Pass LNG terminal facilities will be used to import gas from foreign countries. In Golden Pass, FERC using its Hackberry doctrine "found it appropriate to exercise a less intrusive degree of regulation for new LNG import terminals, and does not require the applicant to offer open-access service or to maintain a tariff or rate schedules for its terminalling service. However, the **Commission reserves the authority** under section 3 to take any necessary and appropriate action **if it receives complaints of undue discrimination or anticompetitive behavior."**

There is no legal controversy that the contracts have to comply with antitrust laws, including state antitrust laws. See ONEOK vs. Lear Jet 575 US ___ (2015)). The minimum PREPA's Board, PREB and FOMB could do, and obviously didn't do was to ask whether the antitrust aspects were considered due to PREPA's management own admission that it was short handed in the negotiation due to the "monopoly power of Ecoelectrica/Naturgy".

Forth Reason: Assumption of existing contracts:

PREPA can "assume" the current contracts.  One has two year to negotiate a new agreement based on the new reality of the oil world prices, the floating power plant options[2], the increase in PV+ storage.  The other to supply LNG to Costa Sur runs until December of 2020. Yet, Costa Sur is shutdown.

No one knows today when if at all Costa Sur will come back in services and needs the LNG.

Fifth Reason: FOMB should POSTPONE:

FOMB  has asked this Court to postpone the RSA 9019 Motion consideration, it has requested to postpone the consideration of the Commonwealth of Puerto Rico Fiscal Plan, it has ask PREPA for a new Fiscal Plan that takes into consideration  the effects of the Covid-19 Pandemic on the economy and PREPA revenue and expenses.

FOMB should be consistent. If we are recognizing that reality forces the postponement of the RSA and the Commonwealth Fiscal Plan, the same should apply to this request for "assumption" of the "new"  Ecoelectrica and Naturgy contracts.

Sixth Reason: Business Judgement RULE:

The contracts approval do not comply with the business judgment rule, nor with the public interest standard.

What is the evidence of PREPA"s Board of Directors and FOMB business judgement?

The meeting, where it was "approved" was held on September 26, 2019.  These new complicated contracts which change dramatically the risks, obligations and

---

[2] The recent RFP for 500MW of emergency generation, was done in 30 days and according to Jose Ortiz, PREPA's executive director received 16 proposals.

payments by PREPA, were "discussed" for nine minutes, without any substantive analysis of any kind. (See PREPA's website AEEpr.com.  Board of Directors web site, September 26, 2019, last 10 minutes of the recording).

At the public meeting held at Mayaguez on October 30, 2019 (minute 1:20 of the third section) Board Member David Clark informed that at a close meeting of the Board held the day before a Resolution was approved authorizing the completion of the transaction for the Ecoelectrica PPOA and the contract for the supply of LNG to Costa Sur[3]. The presentation lasted 2 minutes. Prior to Mr. Padilla's presentation, Mr. Lopez from PREPA informed the Board and the public that the Resolution had been approved the day before and that the record of the deliberation was on the Board RECORD. Yet, this deliberative Record has not been included in the request for approval to FOMB, PREB or this Court.

---

[3] Fernando Padilla two minute presentation from 1:24:30 to 1:25:46. This is the extend of his comments. Fernando Padilla for the record. Yesterday a resolution was moved to try to get authorization to finalize the transactions with the Ecoelectrica POPOA and with the LNG supply contract with Costa Sur. They will be in compliance with the Fiscal plan and with the Integrated Resource Plan. What we are looking for with this contracts is basically to guarantee the operation of the assets, and also, to be in compliance with the infrastructure vision and PREPA operating costs. Basically, the contracts deal with searching for flexibility in consumption. Also, the potential integration of renewable energy; therefore we will search in Ecoelectrica the flexibilities and the appropriate levels of consumption at Costa Sur.
Chairman of the Board: We understand this was taken care of Yesterday and we wait for PREB and FOMB. (VLG translation)
"*Fernando Padilla para record, en el día de ayer se movió una resolución para poder buscar las autorizaciones para completar las transacciones con el PPOA de Ecoelectrica y el contrato de suministro de gas natural a Costa Sur los mismos estarían en cumplimiento con el Plan Fiscal y con el Plan Integrado de Recursos. Lo que estamos buscando con estos contratos es básicamente asegurar las operaciones de los activos y también estar en cumplimiento con la visión de infraestructura y los costos operacionales de la Autoridad.  Básicamente los contratos lo que envuelven es buscar las flexibilidad dentro del consumo. También, la potencial integración de la energía renovable; así que estaremos buscando en Ecoelectrica las flexibilidades y los niveles de consumo apropiadas también en la planta de Costa Sur.*"
*Chairman of the Board: Entendemos que eso ya procedió como fue en el día de ayer, y estamos en espera del Negociado y FOMB.*"

More, at the time PREPA's Board "considered" the contracts there was no analysis of the impact if the cost to the consumers.  The analysis was promised for October, but there is no record of it ever been submitted. The study was requested by Consumer Representative Tomas Torres.

In addition, the Sargent and Lundy report which supposedly supports the contracts, was not yet final, nor appears submitted to the Board.  The Resolution of the Board, dated October 29, 2019 does not even mention the Sargent & Lundy study. The record of the Board deliberations were also not included.  As such the Sargent & Lundy report is not and cannot be the basis for business judgment standard compliance.

Neither the 9 minutes of deliberations of the September Board meeting nor the two minutes of the October board meeting, satisfies the business judgment standard.

Even the soft test of business judgment rule application, would require intelligent, competent knowledgeable conversation, questioning of the "contract". None of it was done by the Board as the public record shows.

The FOMB  on the other hand, in its letter to PREPA dated December 26, 2019 signed by Atty. Jaime El Koury specifically stated that it was not evaluating the merits of the contracts.  The letter states:

> "Please note that our review is solely limited to the compliance of the proposed contract with the applicable fiscal plan and no other matters… <u>The review performed by the FOMB does not cover a legal review of the contractual documentation… (ii) compliance with applicable laws, rules and regulations governing procurement activities, both federal and local</u>.".

PREB didn't stamp approval on the Business Judgement and didn't verify the compliance with the public interest:

The PREB ran the process confidentially, without the benefit of intervenors.

Seventh Reason: **The statutory standard that should have been approved by PREB is lowest reasonable cost, not "lower cost than the status quo" and lack our competition project.**

1. PREB used in **Wrong standard:**  PREPA moved PREB to error by substituting the wrong standard for the right standard.   Much learning from the field of behavior economics demonstrates that using status quo as the decisional reference point is classic mental error. And ignoring opportunity cost (the difference between the price PREPA got and the price it could have been) is classic economic error.

2. **No competitive process:** Besides violating the least-cost standard (by not seeking competitive bids), PREPA"s failure to use a competitive process will create long-term discouragement of independent bidders--thereby perpetuating PR's monopolistic market structure.  PREPA has managed to compound its own monopoly by helping to entrench Naturgy's monopoly. Maybe monopoly is all that PREPA knows.

Eight Reason:  The sole source provider PREPA alleged limitation.

1.  The argument is an admission that PREPA is the victim of anticompetitive behavior. The problem is that PREPA did nothing to counteract that behavior. Its sole-source argument depends on its failure to insist that untie the *supply* of gas (which should be a competitive service) from the *service of converting the LNG to gas*.

2. That is, only if Naturgy had untied those two services would PREPA's sole-service argument be wrong.  PREPA should have insisted that Naturgy untie the services; then when Naturgy refused, PREPA could claim anticompetitive behavior. Any company in Naturgy's position would be glad to profit-maximize by tying the services. The antitrust violation occurs only if Naturgy actually refuses to untie.  It had no obligation to untie affirmatively. So if PREPA never asked, Naturgy got lucky.

3. That is why it is essential for PREB to analyze and disapprove the arrangement. The arrangement is imprudent because PREPA accepted a monopolistic tying arrangement (thereby making it lawful under antitrust law) when PREPA should have refused the tying arrangement and insisted on an untied arrangement.  PREPA should have put Ecoelectrica and Naturgy in the uncomfortable position of refusing to untie--thereby risking a treble damages antitrust suit, led by PREPA and supported by FOMB (whose only concern it

15

seems is to slightly reduce cost—thereby giving PREPA cover with the bankruptcy court and the public).

4. Because PREPA is Ecoelectrica's and Naturgy's only buyer, the PREB should be analyze and establishing upfront the maximum price PREPA may pay—or a required competitive bidding process. That is the simplest way to prevent Naturgy and Ecoelectrica from exploiting their alleged monopoly power. This case is a textbook example of a regulator's passivity accommodating anticompetitive activity. This is not even "leading from behind"; it's just staying behind, then saying "we had no choice." Textbook case of regulatory abdication. PREB did not analyze any of these issues.

There is no PREB analysis of any of these issues.

**PREB's misuse of the IRP:** PREB's March 11, 2020 Resolution says (at 12) that the agreements "can be considered consistent with the Approved IRP." But this sentence conflates power supply source with contract terms. The IRP says nothing about prices or other specific terms; it likely just talks about mix of sources. So the PREB's sentence puts square peg into round hole. The mere fact the type of power and the length of the contracts might align with the IRP says nothing about whether the price and terms are appropriate. An IRP does not deal with price terms. PREB is trying to hide its helplessness and PREPA's weakness behind the IRP. This is another example of issues to be raised at PREB.

Ninth Reason: PREB determination is not legally final. PREB approval was dated March 11, 2020. Government operations are on hold until May 18th 2020, so no appeal term is running. Additionally, the PREB decision did not include a notice of the right of interested parties to ask for reconsideration. The reconsideration term is also in abeyance and is a formal requirement of the Puerto Rico Administrative Procedure Act. The Supreme Court of Puerto Rico has estate in Punta de Arena v. Junta de Subastas, 153 DPR 733 (2001); Comisión de Ciudadanos al Rescate de Caimito v. G.P. Real Property S.E. y otros, 173 DPR 998 (2008); Román v. OGP,

2020 TSPR 18, that the incorrect notice, (lacking the notice of right to file reconsideration) makes the notice null and void requiring a new notice.

The PREB states in its March 11, 2020 Resolution:

"Any party adversely affected by this Resolution and Order may file a petition for review before the Court of Appeals within a term of thirty (30) days from the date a copy of the notice of this Resolution and Order was notified and copy of such notice was filed by the Energy Bureau's Clerk. Filing and notice of a petition for review before the Court of Appeals shall be made pursuant to the applicable provisions of Regulation 85432, Act 38-2017 and the Rules of the Puerto Rico Court of Appeals."

This notice, as stated does not comply with Puerto Rico's Administrative Procedure Act, Sections 3.14; 3.15, Law 38 of  2017 which requires the notice to include the availability or reconsideration on appeal as the case may be.  The appeal term is on hold so it has not run yet.

The Reconsideration is available even when a prior reconsideration motion has been filed, as was the case with the PREPA requests for reconsideration.  See, Colón Borges v. Marrero Rodríguez, Puerto Rico Supreme Court 2018 TSPR 178.

What happens is that PREB  and PREPA decided, once again, to ignore Puerto Rico's Law 17 Mandate for transparency and jointly decided, without any public participation to decide the Ecoelectrica case in the tradition of "closed rooms".  This does not mean that there are no legitimate interested parties, like Windmar that have the right to ask for reconsideration on the public interest issue and appeal if so decides.

After all, PREB determination is a determination (wrong and incomplete as we claim) on the public interest and compliance with Law 57 and Law 17 mandates, which

is a very legitimate concern of Windmar, and a legitimate issue for reconsideration and appeal.

So Windmar has a right to file for reconsideration, the term is held until May 18, 2020 per Puerto Rico Supreme Court determination and a right to appeal to the Puerto Rico Court of appeals, term also in abeyance.

As such there is no final, valid contract approval by PREB.

PREB has to honor the responsibilities delegated by Law 17 and profoundly analyze the Ecoelectrica contract, confront PREPA with alternative solutions, alternative economic analysis and alternative legal analysis on the monopoly issue.

There are enough issues legal, commercial, economic, impact of the pandemic among others that have not been taken into account nor analyzed by PREB.

Appearing party is a interest party in the PREB case and will file for reconsideration and/or appeal under the Puerto Rico Administrative Procedure Act. Law 38 of June 30, 2017 3 LPRA 9655§9672.

In summary, this Court does not have for its consideration a contract based on business judgement and protecting the public interest. PREB's approval is not final FOMB didn't carry a business judgement and PREPA Board of Directors total of 11 minutes of discussion  is against all rules of what a business judgement requires.

Tenth Reason: Even if the "new" contracts had been correctly approved, which they have not, since the approval we have had the earthquake which directly impacted Costa Sur, served by Ecoelectrica and the Covid Pandemia. Isn't it proper and correct to reconsider the alleged approvals in light of the new facts, just as it is been done with the Commonwealth Fiscal Plan and the RSA?

Eleventh Reason: There is no legal doubt of the need for PREB to make a final legal, validly notified determination of public interest before the contract are assumed or rejection. Although Bankruptcy Courts have debated whether there is a legal requirement of prior government regulatory action concerning assumption or rejection of contracts, such issue is none existing here for the order for acceptance of PPOA's filed by PREPA on February 2, 2019, docket no. 1162 specifically requires FOMB and PREB prior approval. PREB approval is not yet final and legally binding.

PREB has ample power to guarantee the compliance and implementation of the Public Policy of the Commonwealth. The PREB, specifically incorporated in the PROMESA law and specifically supported by the FOMB/PREPA Fiscal Plan, must not behave as a mere adjunct to PREPA. Law 17, April 2019, Art. 1.5-3.

In particular under paragraph 5 a, b, c, and d, PREB has the responsibility of contracts for energy and contract for fuel. All these contract evaluations must be performed with transparency and with public participation. See 1.5 (10). Neither public participation nor transparency are present on PREB's non final endorsement of the contracts.

What should be clear is that the Board of Director of PREPA noncompliance with the slightest "business judgment" standard, then even more stringent and forceful PREB's participation must be. When the contract are admitted by PREPA to be the subject of monopoly pressures on Ecoelectrica's part, even more forceful must PREB act to protect the public interest. Concerning the contracts for energy Article 1.11 of Law 17 state:

> "(b) Power Purchase Agreements. Any power purchase agreement, or
> any amendment to or extension of a power purchase agreement

awarded prior to the approval of Act No. 57-2014, between the Authority, or the transmission and distribution network Contractor and any independent power producer shall be executed pursuant to the provisions of Section 6.32 of Act No. 57-2014 and the regulations adopted thereunder by the Bureau. However, when a power purchase agreement is part of a PREPA Transaction, the Energy Compliance Certificate issued pursuant to Act No. 120-2018 shall suffice.

The Bureau shall set clear parameters for the pricing, adjustments, price escalators, and profit margins of power purchase agreements. Such parameters shall be consistent with price escalators or adjustments normally used by the industry for such purposes, as well as any other parameter or method used to regulate gains attributable to power purchase agreements in order to ensure that such agreements have an appropriate and reasonable price. No Electric Power Company shall realize gains attributable to fuel. The profit margin of independent generators under power purchase agreements shall be consistent with the parameters established by the Bureau.

No contract for the establishment of new electric power plants may preclude compliance with the renewable portfolio standard and the integration of distributed generation, microgrids, or energy cooperatives. Power Purchase Agreements shall be awarded taking into account the goals and mandates established in the Renewable Portfolio Standards which compel the transition from energy generation from fossil fuels to an aggressive integration of renewable energy as provided in Act No. 82-2010..″

Where in the PREB's approval is the analysis required by Law 17?

More important under this section sellers of energy- Ecoelectrica- cannot earn a profit on the price of fuel.  What if not a profit is the toll to be paid to Naturgy for letting the fuel into Puerto Rico, although it is to be obtained by PREPA and to be used by PREPA.

Yogi Berra once stated:

 **"It's tough to make predictions, especially about the future."**

Two hurricanes, an earthquake and now a pandemic show how uncertain the future can be.

PREPA is asking the Court too much:

20

a.      To pass judgement on the new contracts as if they are under the assumption procedure.

b.      To step in and substitute the PREB in validating a long-term energy purchase agreement and doing so with no public participation.

There is no need for any natural gas for Costa Sur at the moment; and should Costa Sur be back in operation, burning Bunker fuel until its IRP schedule shut down in 2021 will lower the energy costs.

**The GSPA contract doesn't need to be address by this court.**

Neither the  GSPA nor the NEW-GSPA  were the result of a competitive bidding process. This was possible because PREPA determined that Naturgy was the "only supply source".  When the contract was signed EcoElectrica (Naturgy) owned the only active LNG import terminal and LNG storage facility in Puerto Rico and through a tolling Agreement with EcoElectrica, L.P. (Bermuda) controlled the entire capacity of this LNG import terminal to receive and vaporize LNG for delivery of natural gas for power generation.

Sargent and Lundy Report goes on to claim that PREPA *"has leverage in the negotiations with Naturgy. Given that Naturgy is the majority shareholder of EcoElectrica, the closure of EcoElectrica would result in a substantial loss of capacity revenue for Naturgy."* This ignores the fact that the current PPOA goes until 2022 and that EcoElectrica if its existing contract is assumed, and there is absolutely no economic justification to reject it, will continue to be pay as it has been for the last 20 years.

PREPA doesn't question the legitimacy or validity of Naturgy "ownership of the terminal" leverage value. Rather PREPA puts out their own claim of leverage over Naturgy the rejection of the existing EcoElectrica PPOA, something that only someone who still believes in the tooth fairy finds credible.  There is no economic justification to reject this PPOA or any other of the existing operating PPOAs.

The PPOA with EcoElectrica expires in March 2022.

The PPOA with EcoElectrica has two more years to go and has a cost structure that provides greater savings than eliminating the oil to hedge.

They justify their submittal on their claim that *"As third parties do not have access to the ECO LNG Terminal, PREPA entered into separate renegotiations of the Pre-Restatement Contracts with Naturgy and ECO on a bilateral basis to extend the term and realize cost savings."*

The PPOA with Ecoelectrica that PREPA submitted for the Court approval will require PREPA to pay two billion dollars to Ecoelectrica to run, from September 2020 to March 2032, a 22-year old cogeneration single-fuel facility that has already been fully amortized and depreciated. The payment per MW of capacity is $4,000,000 when the current cost of a dual-fuel combined cycle lower heat rate facility is less than$1,000,000 for zero-hour equipment with a 25-year life span.

EcoElectrica and Naturgy have a right to do business and to have a fair return for their endeavors.

No one has a right to profit from a "marine terminal monopoly" to force Puerto Rican ratepayers to pay $2 billion dollars to EcoElectrica for a 22-year fully amortized

power plant and be saddle with a new fuel price structure that today is more expensive than the existing arrangement.

If there is a case where those powers should be exerted to benefit the common good is to do away with this "maritime terminal monopoly".

Energy efficiency, demand response, Photovoltaic with Battery Support and utility scale renewables with Battery Support do provide zero emission long term low-cost resilient and reliable electricity. Why spend $2 billion dollars and tie yourself for 12 years for something that offers less.

*The Oversight Board certified a 2018 Fiscal Plan on August 1, 2018 and a 2019. Fiscal Plan on June 27, 2019 for PREPA (collectively, the "Fiscal Plans"). Both Fiscal Plans contemplated, inter alia, a renegotiation of the Pre-Restatement Contracts to achieve cost savings for PREPA.*

Neither the NEW-GSPA nor the ECO PPOA get us there.

WHEREFORE it is respectfully requested from this Honorable Court to hold the consideration of the Ecoelectrica contracts and return the consideration of the contracts to PREB  so its fulfill its legal obligations and render a final determination including reconsideration and appeals, particularly since being a new contracts do not require Court intervention.

CERTIFICATE OF SERVICE I hereby certify that, on this same date, I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record and CM/ECF participants in this case.

RESPECTFULLY SUBMITTED this 27th, day of April, 2020, in San Juan, Puerto Rico.

s/FERNANDO E. AGRAIT
USDC-PR127212
T.S. NÚM. 3772
701 AVENIDA PONCE DE LEÓN
OFICINA 414
SAN JUAN, PUERTO RICO  00907
TELS 787-725-3390/3391
FAX 787-724-0353
EMAIL:  agraitfe@agraitlawpr.com