UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA Title III |
| The Financial Oversight and Management Board for Puerto Rico, | No. 17 BK 3283 (LTS) |
| As representative of | (Jointly Administered) |
| The Commonwealth of Puerto Rico, *et. al.* | |
| Debtors | |

**RESPONSE TO ONE HUNDRED SEVENTY-FIRST OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO, PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, AND EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERT RICO TO MISCELLANEOUS DEFICIENT AND LATE-FILED CLAIMS**

**TO THE HONORABLE COURT:**

COME NOW, Jorge L. Pérez Valdivieso and the estate of Lucas Pérez Valdivieso, composed of Yesmin Marie, Lucas, María Teresa, and María Cristina Leonor Valdivieso Galib and respectfully state and request:

1. On April 20, 2018, Jorge L. Pérez Valdivieso and the now deceased Lucas Pérez Valdivieso, substituted herein by his children and heirs, who compose his estate as stated above (collectively "Claimants"), jointly filed proof of claim number 29-1 in Case Number 17-03567-LTS for $206,740.00 (**Exhibit A**), amended on February 22, 2019 to claim $329,550.08 by proof of claim number 29-2 (**Exhibit B**), Prime Clerk No. 168187, (the "Claim") against the Puerto Rico Highways and Transportation Authority ("HTA") for repair work to be performed by HTA in reference to seven (7) commercial lots (the "Commercial Lots") part of a project known as Industrial Trapiche at Road 389 km. 0.3, Peñuelas, Puerto Rico due to HTA's expropriation activities of Claimants' properties.

2. Dated March 6, 2020 and received by the undersigned on March 16, 2020, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), representing HTA, objected the Claim averring that it "purports to assert liabilities associated with the" HTA, "but fails to provide any basis or supporting documentation for asserting a claim against" HTA, "such that the Debtors are unable to determine whether claimant has a valid claim against" HTA, or any of the other Title III debtors.

3. Contrary to what is alleged by the Oversight Board in the preceding paragraph, on February 22, 2019, the same date of the filing of the amended claim, Claimants submitted to Prime Clerk, LLC Form AP-HR-1 with evidence in support of the Claim, setting forth the cost of the work agreed to be performed by HTA in reference to the Commercial Lots, consisting of the original proposal of Terraverde, LLC ("Terraverde") dated March 17, 2017 for the work to be performed, as agreed to, Terraverde's twenty five percent (25%) increase in the cost of the work to be performed dated February 21, 2019, resulting from. HTA's failure to do so, and the minutes of May 15, 2013 in Case No. KEF 2002-0814 reflecting the pendency of the construction work to be performed by HTA (**See Exhibit C**).

4. Said agreed repair work by HTA was the result of expropriation proceedings in the case styled *Autoridad de Carreteras y Transportación de Puerto Rico v. Jorge y Lucas Pérez Valdivieso*, Civil Number KEF 2002-0814, before the Court of First Instance of Puerto Rico, Judicial Center of San Juan, Superior Section, for Project ACT-013228 Peñuelas (Bridge over Tallaboa River in Peñuelas).

5. In case KEF 2002-0814, HTA expropriated from Claimants five (5) parcels of land in Cuevas Ward, Peñuelas, Puerto Rico, to wit Parcels 0087-01 for temporary use, 007-02 as eminent domain, 007-03 for temporary use, 008-01 as eminent domain and 020-01 as eminent domain.

6. The expropriation proceedings in Case No. KEF 2002-0814, were undertaken as part of the layout of the Western Exit of Peñuelas and the relocation of the existing bridge over PR-132, including the incorporation by HTA of a marginal street dedicated to public use affecting the Commercial Lots, as a result of which HTA agreed to perform the work set forth in **Exhibit C** hereto, included in the Construction Plan for Project Number 013228, due to the consequential isolation and lack of the previously established infrastructure of the Commercial Lots, destroyed by HTA.

7. The construction work to be performed by HTA was agreed to by the Secretary of HTA during a visit to the site on November 10, 2016.

8. The Claim is founded on the expropriation in Case No. KEF 2002-0814, as part of the taking of Claimants' properties in said case and is not subject to impairment or reduction because it is a constitutionally protected claim by the Fifth Amendment of the Constitution of the United States of America prohibiting the taking of property without just compensation, and therefore can't

be affected by the bankruptcy powers of Congress pursuant to which Congress enacted PROMESA[1].

9. Since *Louisville Joint Stock Land Bank vs. Radford*, 295 US 555 (1935), the United States Supreme Court (the "Supreme Court") reaffirmed at the time of a national emergency created by the economic crisis of the Great Depression, that Congress may not pass laws under its bankruptcy powers that would effect a taking of private property without just compensation. In *U.S. vs. Security Industrial Bank*, 459 US 70, 75 (1982), the Court, citing *Radford*, held:

> The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation. [Citation to Radford omitted.] Thus, however "rational" the exercise of the bankruptcy power may be, that inquiry is quite separate from the question whether the enactment takes property within the prohibition of the Fifth Amendment[2].

10. In *Radford*, the Frazier-Lemke Act (the "Act"), which added Section 75 to the then Bankruptcy Act, was challenged as unconstitutional as it prevented banks from exercising rights over foreclosed properties which they enjoyed before the challenged provisions of the Act were passed. After predicating that "[t]he bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment" , 295 US at 589, and facing the question whether the Act as applied "has taken from the [petitioner] bank without just compensation, and given to [respondent] *Radford*, rights in specific [foreclosed] property which are of substantial value". 295 US at 601. In *Radford*, the Supreme Court held at page 602:

> [...] we must hold [the Act] void; for the Fifth Amendment commands that, however great the nation's need, private property shall not be thus taken for a wholly public use without just compensation. If the public interest requires and permits the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public.

11. Therefore, although Congress may authorize the Commonwealth under PROMESA to impair contractual and other claims pursuant to its bankruptcy powers, it may not authorize the

---

[1] See Amended Disclosure Statement for the Plan at pages 1-2: "Titles III and VI of PROMESA provide for debt restructurings, similar to bankruptcy cases and out of court restructurings,  respectively for Puerto Rico and its instrumentalities."  It does so by "incorporating many provisions of Title 11 of the United States Code (the 'Bankruptcy Code') into Title III of PROMESA, which provides for restructurings similar to those under chapters 9 and 11 of the Bankruptcy Code […]".

[2] As the Fifth Amendment Article II, Section 9 of the Constitution of the Commonwealth provides that "private property shall not be taken or damaged for public use except upon payment of just compensation in the manner provided by law".

taking of private property without just compensation in violation of the Fifth Amendment. See *U.S. vs. Security Industrial Bank*, 459 US at 80.

12. After *Radford*[3], other constitutional challenges to legislation approved under the bankruptcy powers of Congress, as contrary to the Takings Clause, have reached the Supreme Court, who in each case has reaffirmed *Radford*, while avoiding to reach the constitutional questions raised therein.

13. *Blanchette vs. Connecticut General Insurance Corp.*, 419 U.S. 102 (1974), involved several consolidated challenges to the Regional Rail Reorganization Act of 1973, enacted to supplement Section 77 of the Bankruptcy Act. The statute required several railroads in reorganization to transfer their assets to Conrail, a newly created private corporation, in exchange for securities to be issued thereby and federally guaranteed obligations to be issued by the United States Railway Association, a governmental entity. Because the value of these securities could not be established, at the time of the reorganization, in order to be equivalent to that of the railroad assets to be transferred to Conrail, certain creditors claimed that any deficiency would amount to a taking under the Fifth Amendment.

14. The Supreme Court concluded that "any deficiency of constitutional magnitude in the compensation provided under the Rail Reorganization] Act will indeed be a taking of private property for public use", 419 US at 155, declining to hold the statute unconstitutional by reasoning that the Rail Reorganization Act was not meant by Congress to preclude an action under the Tucker Act for a cash award "to cover any constitutional shortfall" in the compensation required by the Takings Clause. *Id.*

15. *U.S. vs. Security Industrial Bank*, supra, involved several consolidated challenges to Section 522(f)(2) of the Bankruptcy Reform Act of 1978, 11 USC 522(f)(2), which allowed debtors to avoid nonpossessory, nonpurchase-money liens on household furnishings and appliances. Creditors who had loaned the debtors money with perfected nonpossessory, no purchase-money lien on the household goods prior to the enactment of Section 522(f)(2) sustained that it operated as a taking of property, as to their liens, without just compensation under the Takings Clause. The Supreme Court, after reaffirming *Radford* and other cases, recognized that "there is substantial doubt whether the retroactive destruction of the [creditor's] liens in this case comports with the

---

[3] Shortly after Radford, Congress amended the Frazier-Lemke Act to conform it thereto. In Wright vs. Vinton Branch of Mountain Trust Bank, 300 US 440 (1937), the Supreme Court found the Act as amended constitutional.

4

Fifth Amendment", but went on to consider "whether, as a matter of statutory construction, [Sec.] 522(f)(2) must necessarily be applied in that manner [...] because of the cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided." 459 US at 78 (citations omitted). With this in mind, the Supreme Court interpreted the statute and decided that it had not been Congress' intention to retroactively "apply [Sec.] 522(f)(2) to property rights established before the enactment date ..." 459 US at 82 (footnote omitted), and it "decline[d] to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the Takings Clause." *Id.* (citations omitted).

16. The rule established by the Supreme Court in *Radford*, supra, and the other cases discussed above, that Congress under its bankruptcy powers may not pass laws effecting a taking of property without just compensation in violation of the Takings Clause, has been applied in a situation in tandem to the one at bench. In *In re City of Detroit*, 524 B.R. 147 (Bankr. E.D. Michigan 2014), decided by the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, where several creditors, relying on the above cited decisions, claimed that the Plan of Adjustment filed by the City of Detroit in its Chapter 9 bankruptcy proceedings was unconstitutional under the Takings Clause by treating their claims for takings of property without just compensation as impaired general unsecured claims. In its *Supplemental Opinion Regarding Plan Confirmation, Approving Settlements and Approving Exit Financing* entered on December 31, 2014, the Court, through the Hon. Steven W. Rhodes agreed. After discussing Radford and Blanchette, and citing *U.S. vs. Security Industrial Bank*, supra, the Bankruptcy Court acknowledged at page 304, that both "*Blanchette* and *Radford* establish that bankruptcy proceedings are subject to the Fifth Amendment's prohibition on public takings of private property without just compensation." Furthermore, rejecting the city of Detroit's submission that in the Supreme Court cases it was the statute itself that effected the taking, not the plan of adjustment, the Bankruptcy Court insisted, at page 306 that " [] all that matters under the Fifth Amendment is that the owner of private property must be justly compensated if that property was taken for public use, whenever and however that taking occurred", and the City of Detroit's plan of adjustment, "[i]f confirmed, [] would deny that just compensation. The plan would allow the City to impair the property owners'

5

constitutional claim for just compensation after the City took their private property. That violates the Fifth Amendment."[4]

17. The Court in *City of Detroit*, in applying the maximum that courts should avoid "interpreting [a statute] [Chapter 9] in a manner that would render it clearly unconstitutional… if there is another reasonable interpretation available" while considering the constitutional requirement of the Takings Clause, decided to exercise its discretion under Section 944(c)(1) of the Bankruptcy Code, 11 USC 944(c)(1), and provided in the confirmation order that the valid claims of the Takings Clause creditors' were excepted from discharge stating "[t]his result harmonizes chapter 9 with the Fifth Amendment while giving full effect to the principle that the Court should avoid interpreting chapter 9 in such a way that renders it unconstitutional." *City of Detroit at 307*

18. It can't be questioned that the Takings Clauses of the Fifth Amendment mandates that private property shall not be taken for public use without just compensation and that the Fifth Amendment is applicable to the states and to Puerto Rico, through the Fourteenth Amendment. *In re city of Detroit*, supra, citing *Dolan v. City of Tigard*, 512 U.S. 374, 383 (1994); *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978)

19. As recent as June 21, 2019, the Supreme Court in *Knick v. Township of Scott*, Pennsylvania, 588 U.S.; 139. S. Ct. 2162; 204 L. Ed. 558 (2019), Case No. 17--647 recognizing the applicability of the Fifth Amendment to inverse condemnation proceedings categorically stated that a property owner has an actionable Fifth Amendment takings claim when the government, be it federal or state, takes his property without paying for it, the Fifth Amendment right to full compensation arising at the time of the taking, regardless of post taking remedies that may be available to the property owner.

20. *City of Detroit* decided prior to *Knick v. Township of Scott*, supra, must now be read in light of the unequivocal mandate of Knick, as discussed above, particularly when its reliance on

---

[4] In *In re City of Stockton*, 909 F.3d 1256 (2018), the Court of Appeals for the Ninth Circuit, over a strong dissent by Judge Friedland, let stand a plan of adjustment that had been challenged because it impaired a claim for just compensation under the Fifth Amendment. The Bankruptcy Court had rejected the challenge and the creditor succeeded in having his appeal heard directly by the Court of Appeals. However, he did not however, seek a stay of plan confirmation before the Bankruptcy Court or the Court of Appeals and the plan was confirmed, became effective and was implemented while the appeal was pending. Since the plan had long been consummated the Court of Appeals dismissed the appeal, invoking the doctrine of equitable mootness. *City of Stockton* at 1266. Nevertheless, it went on to discuss the merits of the appeal and ultimately concluded, in what is quite clearly an advisory opinion founded on obiter dicta, that the creditor's claim could be adjusted. Judge Friedland, in his well reasoned dissent, rejected the majority's views basing his opinion on the Takings Clause, the Supreme Court's decisions in *Radford, Blanchette and Security Industrial Bank*, and the Bankruptcy Court's decision in *City of Detroit. City of Stockton* at 1271-1273 and n.7.

6

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), is no longer good law as overruled by *Knick*.

21. Consequently, the alternative utilized in *City of Detroit* determining the Takings Clause claims as non-dischargeable is not present here, since *Knick* categorically holds that "[C]ontrary to Williamson County", on which Judge Steven Rhodes relied, "a property owner has a claim for a violation of the Takings Clause as soon as the government takes his property for public use without paying for it. The Clause provides '[N]or shall private property be taken for public use, without just compensation'. It does not say 'Nor shall private property be taken for public use, without an available procedure that will result in compensation'. If a local government takes private property without paying for it, that government has violated the Fifth Amendment---just as the Takings Clause says---without regard to subsequent state court proceedings." …. *Knick* at page 3.

22. In consonance with the aforesaid the Supreme Court in *Knick* also stated "[T]he Fifth Amendment right to **full compensation** arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner. That principle was confirmed in *Jacobs v. United States*, 290 U.S. 13 (1933), where we held that a property owner found to have a valid takings claim is estimated to compensation as it had 'been paid contemporaneously with the taking'--- that is, the compensation must generally consist of the total value of the property, when taken, plus interest form that time (citation omitted)" *Id.*

**WHEREFORE**, the Oversight Board's objection to claim number 16817 be denied and the same be allowed.

**CERTIFICATE OF SERVICE:** I hereby certify that on this date, I electronically filed the foregoing motion with the Clerk of the Court using the EM/ECF system, which will send a notification to all attorneys of record.

San Juan, Puerto Rico, this 28th day of April 2020.

s/CHARLES A. CUPRILL-HERNÁNDEZ
**USDC-PR 114312**
Charles A. Cuprill, P.S.C. Law Offices
356 Fortaleza Street, Second Floor
San Juan, PR 00901
Tel.: 787-977-0515
Fax: 787-977-0518
E-mail: ccuprill@cuprill.com