**<u>NATBONY REPLY DECLARATION</u>**
**<u>EXHIBIT 4</u>**

Content downloaded/printed from                              *HeinOnline*

Fri Jan 31 15:23:33 2020

Citations:

Bluebook 20th ed.
1965 3 .

ALWD 6th ed.
1965 3 .

Chicago 7th ed.
, "," Puerto Rico - 5th Legislature of the Commonwealth, 1st Regular Session - Acts &
Resolutions : 3-496

OSCOLA 4th ed.
, " 1965 3

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

June 23          GASOLINE EXCISE TAX          Act No. 75 § 1

**Excise Taxes—Gasoline; Increase; Reimbursement**

(Substitute for H. B. 328)

[No. 75]

[*Approved June 23, 1965*]

AN ACT

To amend subsection (b) of section 10, subsection (c) of section 30 and section 83 of Act No. 2, approved January 20, 1956, known as the "Excise Act of Puerto Rico", as amended; and to impose an additional tax of three (3) cents per gallon or fraction thereof of gasoline in stock on the date this act takes effect.

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—Subsection (b) of section 10 of the Excise Act of Puerto Rico, as amended,[73] is hereby amended to read as follows:

"Section 10.—TAXES ON ARTICLES

(b) *Tax Table.*—The table of taxes on articles and merchandise is as follows:

| Section | | Article taxed | Determination of tax |
|---|---|---|---|
| 1 | 15 | Rugs | 20% of "taxable price in Puerto Rico" |
| 2 | 16 | Photographic apparatus | 15% of "taxable price in Puerto Rico" |
| 3 | 17 | Jewelry articles | 20% of "taxable price in Puerto Rico" |
| 4 | 18 | Luggage | 20% of "taxable price in Puerto Rico" |
| 7 | 21 | Pinball machines (Coin- or token-operated amusement devices) | 20% of "taxable price in Puerto Rico" |
| 8 | 22 | Electrical or gas apparatus | 15% of "taxable price in Puerto Rico" |
| 9 | 23 | Candy and chewing gum | 15% of "taxable price in Puerto Rico" |
| 10 | 24 | Junk and scrap | 10% of "taxable price in Puerto Rico" |

---

[73] 13 L.P.R.A. § 4010(b).

173

Act No. 75 § 1        1st REGULAR SESSION        June 23

| Section | Article taxed | Determination of Tax |
|---|---|---|
| 10[12] 27 | Cigarettes—If wholesale market price in Puerto Rico per thousand cigarettes, excluding tax does not exceed $3.00 | $0.85 on each hundred cigarettes or fraction thereof |
| | exceeds $3.00 but does not exceed $4.00 | $0.95 on each hundred cigarettes or fraction thereof |
| | exceeds $4.00 but does not exceed $5.00 | $1.05 on each hundred cigarettes or fraction thereof |
| | exceeds $5.00 | $1.15 on each hundred cigarettes or fraction thereof |
| 13 28 | Cinematographic film | 2 cents per linear foot or fraction thereof |
| 14 29 | Matches—When packed in boxes containing up to 25 matches each | 6 cents a thousand or fraction of a thousand matches |
| | Over 25 matches but not exceeding 50 | 15 cents a gross or fraction of a gross of boxes |
| | Over 50 matches to a box | 6 cents a thousand or fraction of a thousand matches |
| 15 30 | Gasoline | 11 cents a gallon or fraction thereof |
| 16 31 | Tires and tubes, pneumatic and solid tires | 8 cents a pound or fraction thereof, excluding weight of metal rim |
| | Inner tubes | 9 cents a pound or fraction thereof |
| 18 33 | Juke boxes parts and accessories | 20% of "taxable price in Puerto Rico" |
| 19 34 | Vehicles—Automobiles. If the "taxable price in Puerto Rico" be: Not over $2,000 | 20% of the "taxable price in Puerto Rico" |
| | In excess of $2,000 but not in excess of $2,500 | $400 plus 60% on the excess of $2,000 |
| | In excess of $2,500 | $700 plus 80% on the excess of $2,500 |

June 23          GASOLINE EXCISE TAX          Act No. 75 § 3

| Section | | Article taxed | Determination of Tax |
|---|---|---|---|
| | | Truck tractors | 17% of "taxable price in Puerto Rico" |
| | | Buses (*guaguas*) | 20% of "taxable price in Puerto Rico" |
| | | Trucks | 10% of "taxable price in Puerto Rico" |
| | | Parts and accessories for vehicles | 15% of "taxable price in Puerto Rico" |
| 20 | 35 | Hydraulic cement | 3 cents a hundredweight or fraction thereof |
| 21 | 37 | Gas oil or Diesel oil | 4 cents a gallon or fraction thereof |
| 22 | 38 | Flatware | 20% of "taxable price in Puerto Rico" |

Section 2.—Subsection (c) of section 30 of the Excise Act of Puerto Rico, as amended,[74] is hereby amended to read as follows:

"Section 30.—GASOLINE

(c) *Partial refund of tax.* The Secretary shall refund the amount of nine (9) cents for each gallon of gasoline or the products described in subsection (a) of this section,[75] which has been used in sea and air voyages between Puerto Rico and other places, or in air voyages within the territorial limits of Puerto Rico.

The refund of the amount authorized by this subsection shall be made to the person or entity that shows, to the satisfaction of the Secretary, that he or it used the gasoline or products described in subsection (a) of this section, in sea and air voyages between Puerto Rico and other places, or in voyages within the territorial limits of Puerto Rico, as the case may be, and that shows, to the satisfaction of the Secretary, that he or it has borne the financial burden of the tax."

Section 3.—Section 83 of the Excise Act, as amended,[76] is hereby amended to read:

"Section 83.—DISPOSAL OF FUNDS

The proceeds of the taxes collected under this act shall be covered

[74] 13 L.P.R.A. § 4030(c).
[75] 13 L.P.R.A. § 4030(a).
[76] 13 L.P.R.A. § 4083.

into the General Fund of the Treasury of Puerto Rico, except the amount of six elevenths of the tax on gasoline prescribed in item 15 of subsection (b) of section 10 of this act,[77] which shall not be covered into the Treasury of Puerto Rico, but deposited in a Special Fund in the name and for the benefit of the Puerto Rico Highways Authority to be used by the Authority for its corporate purposes. The Secretary shall transfer from time to time and as agreed upon with the Highways Authority the amounts covered into said Special Fund after deducting therefrom the amounts reimbursed under the provisions of subsection (c) of section 30 of this act.[78] Said Authority is hereby authorized to pledge the proceeds of the tax collections thus received to the payment of the principal of and the interest on bonds or other obligations of the Authority or for any other lawful purpose of the Authority, such pledge to be subject to the provisions of Section 8 of Article VI of the Constitution of Puerto Rico;[79] provided, however, that the proceeds of said tax collections shall be used only for the payment of interest and amortization of the public debt, as provided in said section 8, to the extent that the other available revenues referred to in said section are insufficient for such purposes; otherwise, the proceeds of said tax collections, in the necessary amount, shall be used only for the payment of the principal of and the interest on the bonds and other obligations of the Authority and to comply with any other covenants made by the Authority with the holders of said bonds and other obligations.

The Commonwealth Government does hereby pledge to and agree with, any person, firm, or corporation, or any agency of the United States of America, or of any State, or of the Commonwealth of Puerto Rico; subscribing to or acquiring bonds of the Puerto Rico Highways Authority, for which such proceeds of the tax on gasoline are pledged, as authorized by this section, that it will not reduce the tax on gasoline prescribed by item 15 of subsection (b) of section 10 of this act[80] below the six (6) cents a gallon or remove or reduce the tax on gasoline to be covered into the Special Fund in the name and for the benefit of the Puerto Rico Highways Authority as provided in this section, until all of such bonds at any time issued, together with the interest thereon, are fully paid.

---

[77] 13 L.P.R.A. § 4010(b).

[78] 13 L.P.R.A. § 4030(c).

[79] L.P.R.A., vol. 1.

[80] 13 L.P.R.A. § 4010(b).

June 23  GASOLINE EXCISE TAX  Act No. 75 § 4

The taxes on public shows collected in the Municipal Stadium of the Capital and the athletic parks of Ponce, Mayaguez, Caguas, Arecibo and San Juan during a period of five years, reckoning from the date of inauguration of the Municipal Stadium of the Capital, shall be covered into a special account and shall be transferred to the Municipality of San Juan by the Secretary of the Treasury in the manner and at the time he may determine. At the end of this five-year period, only the taxes on public shows collected in the Municipal Stadium of the Capital shall be covered into said special account and shall be transferred to the Municipality of San Juan in the amount and during the time the Secretary of the Treasury may deem it necessary, taking into consideration the revenues and expenses resulting from the operation and construction of the Park and its facilities. The proceeds of the tax on the occupancy rental of hotel rooms, apartment hotels and guest houses shall be covered into the "Special Fund for the Amortization and Redemption of General Obligations Evidenced by Bonds and Promissory Notes" created by Act No. 269 of May 11, 1949,[81] up to that amount which the Secretary of the Treasury may annually determine as sufficient and adequate to cover the payment of principal of and interest on the bonds and other obligations issued by the Commonwealth of Puerto Rico for the benefit of the Puerto Rico Recreational Development Company. In determining this amount, the Secretary of the Treasury shall include a reasonable amount as reserve. Once the aforesaid amount has been thus covered, then the proceeds of this tax shall thereafter be covered during the year involved into the "Puerto Rico Recreational Development Fund" hereby created. At least once a year the moneys in said Fund shall be transferred to the Recreational Development Company to be used by it for the carrying out of its purposes."

Section 4.—(a).—On the date of the approval of this act, all gasoline in possession of distributor-dealers shall be subject to the payment of a tax of three (3) cents per gallon or fraction thereof, in addition to the tax paid or accrued on said gasoline prior to the effectiveness of this act.

(b).—On the date of effectiveness of this act, all gasoline distributor-dealers in Puerto Rico shall make a physical inventory of their stocks of gasoline, which inventory they shall submit to the Secretary within the ten (10) days following the effective date of

---

[81] 13 L.P.R.A. §§ 402 to 404.

Act No. 75 § 4          1st REGULAR SESSION          June 23

this act. Internal-revenue agents shall be authorized to witness the making of such inventories or to make them themselves in the presence of the taxpayer, should they deem it necessary or convenient.

(c).—Gasoline distributor-dealers shall pay the above additional tax on gasoline in stock within the term of 30 days from the effective date of this act.

(d).—The proceeds of the tax collected under the provisions of this section shall be covered into the Special Fund in the name and for the benefit of the Puerto Rico Highways Authority.

Section 5.—This act shall take effect July 1, 1965.

*Approved June 23, 1965.*

---

## Aqueduct and Sewer Authority—Governing Board

(Substitute for S. B. 139)

[No. 76]

[*Approved June 24, 1965*]

### AN ACT

To amend sections 2 and 3 of Act No. 40 of May 1, 1945, as amended, entitled "Aqueduct and Sewer Act of Puerto Rico".

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—Sections 2 and 3 of Act No. 40 of May 1, 1945, as amended,[81.1] are hereby amended to read as follows:

"Section 2.—Creation and Composition of the Authority.—There is hereby created a public corporation and an autonomous government instrumentality of the Commonwealth of Puerto Rico by the name of 'Puerto Rico Aqueduct and Sewer Authority', said corporation being referred to herein as the 'Authority'.

The exercise by the Authority of the powers conferred by this act[81.2] shall be deemed and held to be an essential government function.

Section 3.—Governing Board, Officers.—The powers  of the Authority shall be exercised and its general policies shall be determined by the Governing Board, hereinafter called the 'Board'.

---

[81.1] 22 L.P.R.A. §§ 142 and 143.
[81.2] 22 L.P.R.A. § 141 et seq.

The Governor of Puerto Rico shall appoint five members who shall compose the Board, one of whom shall be appointed for the term of two years, two for three years and two for four years. As the terms of office of the members of the Board expire, the Governor shall appoint the successors for a term of four years. All vacancies in the office of members of the Board shall be filled by appointment made by the Governor; provided, however, that any vacancy occurring between one and another such appointment shall be filled by the Governor within a period of sixty (60) days for the unexpired term. Members of the Board who are officers of the Commonwealth Government shall receive no compensation for their services.

The Board shall appoint its Chairman and Vice-chairman. Three members of the Board shall constitute a quorum to conduct the businesses thereof and for all other purposes and all action taken by the Board shall be taken by at least three members.

The Board shall select, appoint and fix the compensation of, and may remove from office, an executive director, a secretary, a treasurer, and a controller; provided, that the Board may delegate all or part of its faculties to the Executive Director who shall be the senior officer of the Authority, responsible to the Board for carrying out its general policies and for the general supervision of the operating phases of the Authority.

The Executive Director shall have general administrative control of all the other officers and of all the other employees and agents of the Authority; he shall have the power to appoint and remove all employees and agents; and he shall have the power to suspend other officers pending action by the Board relative to his recommendations for removal.

The Executive Director shall render monthly and annual reports to the Board relative to the operating and financial status and activities of the Authority, and he shall discharge such other duties and responsibilities, in addition to those herein recited, as may be determined from time to time by the Board.

The other officers of the Authority shall discharge the duties and responsibilities usually inherent in their offices and in addition such other specific duties and responsibilities as may be determined from time to time by the Board.

Unless the Board shall otherwise provide, the officers appointed by the Board shall have power to delegate to other persons authority to act in their stead during any period of necessary absence or inability to act."

Act No. 76 § 2          1st REGULAR SESSION                    June 24

Section 2.—Transitory Provision.—The present members of the governing board shall continue to hold office until the Governor shall appoint the five members authorized by this act.

Section 3.—This act shall take effect immediately after its approval.

*Approved June 24, 1965.*

---

## Labor—Unemployment; Training and Retraining

(H. B. 146)

### [No. 77]

### [*Approved June 24, 1965*]

### AN ACT

To authorize the Department of Education and of Labor to continue participating in the training and retraining programs for unemployed workers provided in Congressional Act No. 87–415 entitled "Manpower Development and Training Act of 1962" (42 U.S.C. 2571–2620) ; to make the necessary disbursements, to pay bonuses for training, and to enter into the necessary agreements to such effects.

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—The Department of Education and the Department of Labor of the Commonwealth of Puerto Rico are hereby authorized to continue participating in the training and retraining programs for unemployed workers under congressional act 87–415 entitled "Manpower Development and Training Act of 1962" (42 U.S.C. 2571–2620) ; to administer programs for the development and training of human resources and to pay bonuses to persons covered by said programs ; to enter, in behalf of the Commonwealth, into agreements or contracts with the pertinent federal agencies, containing such provisions as may be necessary or desirable so that the Commonwealth of Puerto Rico may participate in said programs ; to expend all funds that may be appropriated for these programs by the Commonwealth or its agencies or political subdivisions or by the federal government, to supervise the expenditure of said funds and the conducting of such programs carried out by other public and private agencies of the Commonwealth of Puerto Rico ; to make such

180

June 24          EMPLOYMENT SECURITY          Act No. 78 § 1

reports and certifications as may be required, and to cooperate with the federal government and its different departments and agencies in the administration of said programs.

Section 2.—This act shall take effect July 1, 1965.

*Approved June 24, 1965.*

------

### Labor—Employment Security; Sugar Workers

(S. B. 187)

[No. 78]

*[Approved June 24, 1965]*

AN ACT

To amend paragraph 2 of subsection (c) of section 22 of Act No. 74 of June 21, 1956, as amended, known as "Puerto Rico Employment Security Act".

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—Paragraph 2 of subsection (c) of section 22 of Act No. 74 of June 21, 1956, as amended,[82] is hereby amended to read as follows:

"Section 22.—Extension of the Duration of Benefits in a Special Unemployment Situation in the Sugar Industry.

a) .    .    .    .    .    .    .    .    .    .    .
b) .    .    .    .    .    .    .    .    .    .    .

c) Eligibility for Benefits.—Any permanently displaced agricultural worker of the sugar industry, as determined under subsection (b) of this section, shall be eligible for the benefits referred to in subsection (b) of this section, if such worker complies with the requirements of section 4(a) of this act[83] and:

(1) .    .    .    .    .    .    .    .    .    .

(2) Has reported to the Employment Service Office during the sugar grinding season for such period of time as the Secretary of Labor, in the exercise of his sound and fair discretion, may require, unless there is just cause, satisfactory to the Secretary, for not reporting at any time during such period."

------

[82] 29 L.P.R.A. § 716b(c)(2).
[83] 29 L.P.R.A. § 704(a).

Act No. 78 § 2            1st REGULAR SESSION            June 24

Section 2.—This act shall take effect immediately after its approval.

*Approved June 24, 1965.*

---

### Health—Ionizing Radiation; Regulation

(H. B. 3)

[No. 79]

[*Approved June 24, 1965*]

### AN ACT

To protect the public health and safety against the hazards of ionizing radiation through the regulation of ionizing radiation sources; and to authorize the Governor of the Commonwealth of Puerto Rico to enter into agreements with the Federal Government on the regulation of the materials referred to by congressional Public Law No. 86–373, approved September 23, 1959.[84]

STATEMENT OF MOTIVES

It is the purpose of this act, in accord with the responsibility of the Commonwealth of Puerto Rico to protect the public health and safety:

(1) to institute and maintain a program of control of sources of ionizing radiation which provides:

a) compatability with the present and future policies and programs of the federal government that regulate sources of ionizing radiation, and

b) an integrated and effective regulatory system consonant, insofar as possible, with those of the States of the Union, and that facilitates intergovernmental cooperation with respect to the use and control of ionizing radiation, so as to reduce to a minimum overlapping in such control;

(2) to institute and maintain a program which permits the development and maximum utilization of sources of ionizing radiation for peaceful purposes consistent with the health and safety of the people;

(3) to provide the necessary means by which the Commonwealth of Puerto Rico may assume and carry out certain responsibilities

---

[84] 42 U.S.C. §§ 2021, 2138.

182

June 24     IONIZING RADIATION     Act No. 79 § 1

related with the control of by-product material, source material and special nuclear material.

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—The following terms as used in this act shall have the meanings set forth below:

1. By-product Material—Means any radioactive material, except special nuclear material, derived from the process of producing or utilizing special nuclear material or material made radioactive, through exposure to radiation incident to this process.

2. Ionizing Radiation—Means X rays, gamma rays, alpha and beta particles, high-speed electrons, neutrons, protons, and other nuclear particles; but does not mean sound or radio waves, nor visible light, infrared or ultraviolet.

3. Licenses—General and Specific

(a) General license—Means a license effective pursuant to regulations promulgated by the Commission, without the requirement of an application, for transferring, acquiring, possessing, or using quantities of by-product material, source material, special nuclear material or other naturally occurring or artificially produced radioactive material, or for transferring, acquiring, possessing, or using devices or equipment utilizing by-product material, source material or special nuclear material or other naturally occurring or artificially produced radioactive material.

(b) Specific license—Means a license issued upon application to the Commission, for using, manufacturing, producing, transferring, receiving, acquiring or possessing quantities of by-product material, source material, special nuclear material or other naturally occurring or artificially produced radioactive material; or for using, manufacturing, producing, transferring, receiving, acquiring or possessing devices or equipment utilizing by-product material, source material, special nuclear material, or other naturally occurring or artificially produced radioactive material.

4. Person—Includes any individual, corporation, partnership, firm, association, trust, estate, public or private institution, group, agency, department, instrumentality, public corporation, organization, or political subdivision of the Commonwealth of Puerto Rico, any state of the Union, its agencies or political subdivisions, or the legal successor, representative or agent thereof, but not the Atomic Energy Commission of the United States or its successor, nor any agency of the Federal Government licensed by the Atomic Energy Commission of the United States, or its successor.

Act No. 79 § 1          1st REGULAR SESSION                June 24

5. Commission—Means the Commission for the control of radiation.

6. Source Material—Means uranium, thorium, or any other material declared source material by order of the Governor of the Commonwealth of Puerto Rico after the Atomic Energy Commission of the United States or its successor has determined that said material is source material; or minerals containing one or more of the foregoing materials in the concentrations that the Governor of the Commonwealth of Puerto Rico declares by order source material after the Atomic Energy Commission of the United States or its successor has determined that said material in such concentration is "source material".

7. Special Nuclear Material—Means (1) plutonium, uranium 233, uranium enriched in the isotope 233 or in the isotope 235, and any other material declared special nuclear material by the Governor of the Commonwealth of Puerto Rico after the Atomic Energy Commission of the United States or its successor has determined that said material is special nuclear material, but does not include source material; or (2) any material artificially enriched by plutonium, uranium 233, uranium enriched in the isotope 233, or in the isotope 235, or by any other material declared special nuclear material by the Governor of the Commonwealth of Puerto Rico, as aforesaid.

Section 2.—The Commission for the control of radiation is hereby created.

The Commission shall consist of the Secretary of Health and the Secretary of Labor, or their representatives, and a third person conversant with the matter, to be appointed by the Governor of the Commonwealth of Puerto Rico and who shall not belong in any of the departments above mentioned.

The Commission shall hold at least four regular meetings a year and such special meetings as it may deem necessary.

If the Commission does not reach an agreement concerning any matter related with this act, it shall so inform the Governor, who shall name a third person to act in respect to said matter as a third member of the Commission so that the matter be decided by a majority.

Section 3.—The Commission shall have power to:

(a) Promulgate, amend and repeal rules and regulations for the control of sources of ionizing radiation.

(b) Provide, and it shall provide, through rules or regulations, everything concerning the granting of general or specific licenses

184

in relation with by-product material, source material and special nuclear material, or devices or equipment using such materials. Such rules or regulations shall contain provisions on the causes and procedure for amending, suspending or revoking such licenses.

(c) Require, through rules or regulations, the registration of or the licensing for other sources of ionizing radiation.

(d) Exempt certain sources of ionizing radiation, or certain uses, or certain classes of persons using certain classes of sources of ionizing radiation, from the registration or the licensing requirements referred to by this section, whenever the Commission shall find that the exemption of such sources of ionizing radiation, or of such uses, or of such persons using such sources, does not constitute a significant risk to public health and safety.

(e) Recognize, through rules or regulations, state or federal licenses, subject to such requirements as the Commission may establish through such rules or regulations.

(f) Maintain, and it shall maintain, a register of all licenses granted by the Commission and of all sources of ionizing radiation registered with the Commission.

(g) Vest in the Department of Health and the Department of Labor the responsibility of determining compliance with or violation of the provisions of this act or of the rules or regulations hereunder, subject to the following conditions:

(1) The Department of Health shall be responsible for the regulatory control of sources of ionizing radiation used in the healing arts (medicine, dentistry, veterinary medicine, chiropractic, osteopathy, and podiatry, among others), commercial establishments, educational institutions, and/or in any place or situation in which the public health and safety may be substantially affected.

(2) The Department of Labor shall be responsible for the regulatory control of sources of ionizing radiation used in industry and industrial research or testing laboratories, or in any place or situation where occupational health and safety are primarily affected.

(3) Overlapping in the work of the Department of Health and the Department of Labor related with the control of sources of ionizing radiation shall be reduced to a minimum.

Section 4.—The Commission shall render an annual report of its work and activities to the Governor of the Commonwealth of Puerto Rico.

Section 5.—A Radiation Advisory Board is hereby created.

The Radiation Advisory Board shall consist of five members who

Act No. 79 § 5          1st REGULAR SESSION          June 24

shall be appointed by, and shall hold office at the will of, the Commission.

The members of the board must possess scientific training and experience in radiology, nuclear medicine, atomic energy, radiation or radiation physics or related sciences, with specialization in ionizing radiation; but there shall be not more than two specialists in any one field.

The board shall hold at least four regular meetings a year and such special meetings as it may deem necessary.

Section 6.—The board shall:

(a) Review and evaluate the policies and programs of the Commonwealth of Puerto Rico related to the control of ionizing radiation and make recommendations thereon to the Commission.

(b) Provide the Commission with such technical advice as it may require on matters relating to licensing and the regulation of sources of ionizing radiation.

Section 7.—The members of the Radiation Advisory Board shall receive a compensation of $20.00 for each meeting they attend or for each day or fraction thereof they devote to affairs entrusted to them by the Commission, and shall be entitled to reimbursement for the necessary expenses actually incurred by them in the performance of their official duties hereunder.

Section 8.—Before adopting, amending or repealing any rule or regulation, the Commission shall publish notice to that effect in two newspapers of general circulation and shall hold public hearings to afford interested persons opportunity to submit data or views on the matter involved.

Rules and regulations approved by the Commission shall become effective 30 days after approval, provided copies thereof have been filed in the office of the Secretary of State of Puerto Rico as required by Act No. 112 of June 30, 1957, as amended,[85] and without need of complying with the other provisions of said act.

Section 9.—The duly authorized personnel of the Department of Health is hereby empowered to enter any building, house, store or premise at any time of day, to examine the conditions thereof and to report thereon, or to cause to be removed or corrected, urgently, any conditions of ionizing radiation in the manner and way prescribed by the regulations. Said investigations or inspections of private dwellings shall be conducted only upon previous permission

---

[85] 3 L.P.R.A. § 1041 et seq.

of the tenant of the dwelling the object of inspection. If the tenant refuses to give permission for said inspection any district judge or justice of the peace may, upon receipt of a sworn statement to the effect that there is probable cause therefor, issue an order authorizing said official to enter upon such private dwelling or room for the purpose of conducting such investigation or inspection; provided, that nothing herein contained shall be construed in the sense of restricting the right of the aforesaid officials of the Department of Health to enter upon buildings, houses, shops, stores, factories, restaurants, cafes and other premises, excepting private rooms, without previously obtaining permission from the owner or tenant, provided the entrance is effected in good faith by the officials for the purpose of conducting investigations or inspections in furtherance of the public safety.

Entry and inspection in areas under federal jurisdiction shall require the authorization of the Federal Government or its duly authorized representatives.

Section 10.—Every person who has obtained a license from the Commission, or who has registered with the Commission any source of ionizing radiation in accordance with this act, shall be informed by the Commission as to the agency which shall determine whether he is complying with the provisions of this act and of the rules and regulations hereunder.

Section 11.—(a) The Commission shall require each person who possesses or uses a source of ionizing radiation to maintain record of its receipt, storage, transfer or disposal, and any other records that the Commission may require, subject to such exemption as the Commission may by regulation provide.

(b) The Commission shall require each person who possesses or uses a source of ionizing radiation to maintain appropriate records showing the radiation exposure of all individuals for whom rules or regulations promulgated by the Commission require a continuous or periodic measurement of the individuals' radiation exposure (personnel monitoring). Copies of these records and of all those required by this section to be kept shall be submitted to the Commission on request. Every person who possesses or uses a source of ionizing radiation shall provide to every employee for whom is required a continuous or periodic measurement of the radiation exposure (personnel monitoring), a copy of such employee's record, annually, at any time such employee has received an excessive exposure, and at the termination of his employment.

Act No. 79 § 12          1st REGULAR SESSION              June 24

Section 12.—The Governor of Puerto Rico is hereby authorized, in behalf and in representation of the Commonwealth of Puerto Rico, to enter into such agreements with the Federal Government as may be necessary for discontinuance by the Federal Government of certain responsibilities with respect to sources of ionizing radiation and the assumption thereof by the Commonwealth of Puerto Rico, pursuant to the provisions of congressional Public Law No. 86–373, approved September 23, 1959.[86]

Any license issued by the Federal Government prior to the effective date of any such agreement under this section shall be considered valid and shall expire on the expiration date specified in such license, or ninety (90) days after the effective date of the agreement, whichever occurs later.

Section 13.—The Department of Health and the Department of Labor are hereby authorized, with the approval of the Governor, to enter into agreements with the Federal Government, states, interstate agencies, territories or possessions of the United States, the District of Columbia and the Panama Canal Zone whereby the Commonwealth of Puerto Rico may perform, in cooperation with any of them, inspections or other functions related with the control of sources of ionizing radiation.

Section 14.—In any proceeding under this act for granting, suspending, revoking or amending any license, or for determining compliance with the rules or regulations of the Commission, or for granting exceptions from said rules or regulations, the Commission shall hear, on request, any person whose interests may be affected by the proceeding, and shall consider said person a party of such proceeding.

Section 15.—Whenever the Department of Health or the Department of Labor, or a duly authorized representative of either, determines that an emergency exists requiring immediate action for the protection of the public's health and safety, said department or representative may issue orders, or make rules, without subjection to the requirements of publication and public hearings, and operative immediately, giving details of the existence of the emergency and the action to be taken.

Any person to whom such order or rule is addressed shall forthwith comply with it but shall, upon petition to the Commission, be granted a hearing within thirty days (30) after said petition.

---

[86] 42 U.S.C. §§ 2021, 2138.

June 24          IONIZING RADIATION          Act No. 79 § 20

The Commission shall confirm, modify or revoke such order or rule within the thirty (30) days following the hearing.

Section 16.—Any finding of the Commission in any proceeding under sections 14 and 15 of this act shall be reviewable by the Superior Court, through the proper petition for review filed by the aggrieved party within ten days after notice of the Commission's decision.

Section 17.—Whenever in the judgment of the Department of Health or the Department of Labor, any person has engaged or intends to engage in any act or practice that might constitute a violation of the provisions of this act or of any rule, regulation or order issued hereunder, the Secretary of Justice, at the request of the Commission, may petition the Superior Court for an order enjoining such acts or practices, or an order requiring compliance with the law, or the rules, regulations or orders issued hereunder. Upon proof by the Commission that such person has engaged or intends to engage in such acts or practices, the court shall issue a temporary or permanent injunction or other directive enjoining said person from engaging in such acts, or any other order that the court may deem pertinent.

Section 18.—It shall be unlawful for any person to use, manufacture, produce, transport, transfer, receive, acquire, or possess any source of ionizing radiation without obtaining a license from the Commission in accordance with the provisions of this act for using, manufacturing, producing, transporting, transferring, receiving, acquiring or possessing such source of ionizing radiation or unless such person has registered such source of ionizing radiation with the Commission in accordance with the provisions of this act.

Section 19.—The Department of Health and the Department of Labor shall have authority, in cases of emergency, to impound or order the impounding of sources of ionizing radiation in the possession of any person unable to comply with the provisions of this act or of any rules or regulations hereunder, or in possession of any person who violates any provision of this act or of any rule or regulation hereunder.

Section 20.—Nothing in this act or in the rules or regulations hereunder shall be construed as repealing or in any way affecting, impairing or limiting any power conferred by any other act, rule or regulation on the Secretary of Health or the Secretary of Labor of Puerto Rico.

Section 21.—Any person violating any provision of this act or of the rules, regulations or orders issued by the Commission, the Department of Health or the Department of Labor shall be guilty of a misdemeanor and upon conviction punished by a fine of not less than one hundred (100) nor more than one thousand (1,000) dollars, or by imprisonment for a term of not less than three (3) nor more than six (6) months, or both, in the discretion of the court.

Section 22.—If any provision of this act, or the application of said provision to any person or circumstances is held invalid, the remainder of this act and the application of said provision to persons or circumstances other than those as to which same was held invalid shall not be affected by said declaration of nullity.

Section 23.—This act shall take effect, as to control of by-product material, source material and special nuclear material, on the effective date of the agreement between the Federal Government and the Commonwealth of Puerto Rico, in accordance with section 12 hereof. As to everything concerning control of other sources of ionizing radiation, it shall take effect July 1, 1965.

*Approved June 24, 1965.*

---

### Government Personnel—Employees' Association; Personnel of Agencies, Instrumentalities and Public Corporations

(H. B. 143)

### [No. 80]

### [*Approved June 24, 1965*]

### AN ACT

To amend sections 1 and 27 and add section 27A to Act No. 52 of July 11, 1921, as amended, so as to include the officers and employees of any agency, instrumentality or public corporation of the Government of Puerto Rico in the Puerto Rico Government Employees Association; to authorize the executive heads of said agencies, instrumentalities or public corporations to make the necessary payroll deductions for these purposes; and to validate the payroll deductions made prior to the approval of this act.

June 24  EMPLOYEES' ASSOCIATION  Act No. 80 § 1

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—Section 1 of Act No. 52, approved July 11, 1921, as amended,[87] is hereby amended to read as follows:

"Section 1.—There is hereby created a public institution, compulsory upon all permanent public employees and officials of the Commonwealth Government of Puerto Rico and of any of its agencies, instrumentalities or public corporations, rendering services in Puerto Rico, including public-school teachers, except as provided in sections 16 and 17 of Act No. 218 of May 6, 1951,[88] the professors, officials and employees of the University of Puerto Rico, and the members, officers and chiefs of the Police of Puerto Rico and upon the permanent employees of the Association hereby created; provided, that the permanent officers and employees of the Commonwealth Government of Puerto Rico who are performing their duties in continental United States may become members of said Association, if they so desire, upon application filed in the manner and subject to the procedure prescribed in section 25 of Act No. 52, approved July 11, 1921, as subsequently amended,[89] and which institution shall be known as the Puerto Rico Government Employees Association, the purposes of which shall be to stimulate saving among its members and to insure them against physical disability or death, to make loans, to provide them with homes and clinics for medical treatment for themselves and their families, and any other activity which the Board of Directors may, after study, deem beneficial and adequate for the purposes hereof, subject to the laws which govern said Association; and to promote by any available means and resources the betterment and individual and collective progress of the members thereof in the economic, moral and physical orders, for which purpose the directing body of said Association is hereby granted the necessary powers and authority to prescribe regulations and to adopt the resolutions indispensable therefor, including the fixing and collection of uniform quotas for medical services.

If any employee who is performing his duties in continental United States should decide to cease as a member of said Savings and Loan Fund, he shall be reimbursed his contributions to the fund in conformity with the provisions of this act[90] governing such cases."

[87] 3 L.P.R.A. § 831.
[88] 18 L.P.R.A. §§ 335 and 336.
[89] 3 L.P.R.A. § 856.
[90] 3 L.P.R.A. § 831 et seq.

Act No. 80 § 2          1st REGULAR SESSION          .          June 24

Section 2.—Section 27 of Act No. 52, approved July 11, 1921, as amended,[91] is hereby amended to read as follows:

"Section 27.—The word 'employee', for the purposes of this act, means every public official or employee receiving a permanent salary as such from the government or from any of its agencies, instrumentalities or public corporations, or as a school teacher or professor of the University of Puerto Rico, or as a member of the Police of Puerto Rico."

Section 3.—Section 27A is hereby added to Act No. 52, approved July 11, 1921, as amended,[92] to read as follows:

"Section 27A.—All officials or employees of the agencies, instrumentalities and public corporations of the Government of the Commonwealth of Puerto Rico, except provisional employees and those officials and employees of agencies, instrumentalities or public corporations who because of collective agreements with their employers do not wish to become members of the Association, shall be bound to pay the percentage from their monthly salary to the Savings and Loan Fund of the Puerto Rico Government Employees Association. The president, general manager, head and executive director of any agency, instrumentality or public corporation of the Commonwealth of Puerto Rico are hereby authorized to make all the necessary deductions from the payrolls for these purposes. All payroll deductions made prior to the approval of this act are hereby validated."

Section 4.—This act shall take effect immediately after its approval.

*Approved June 24, 1965.*

---

[91] 3 L.P.R.A. § 859.
[92] 3 L.P.R.A. § 859a.

June 25                    PROPERTY REGISTRY                    Act No. 82 § 1

## University—Self-Renewable Appropriation

(H. B. 177)

### [No. 81]

*[Approved June 24, 1965]*

### AN ACT

To amend section 22a of the University Law, Act No. 135 of
May 7, 1942, as amended.

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—Section 22a of the University Law, Act No. 135 of
May 7, 1942, as amended,[93] is hereby amended to read as follows:

"Section 22a.—The Secretary of the Treasury shall annually
place at the disposal of the Superior Educational Council, in install-
ments as required by the needs of the University, in addition to
any other funds appropriated by this or other acts, the sum of
fifteen million nine hundred seventy-nine thousand nine hundred
and fifty (15,979,950) dollars, as a self-renewing appropriation,
chargeable to unencumbered general funds of the Commonwealth
Treasury."

Section 2.—This act shall take effect July 1, 1965.

*Approved June 24, 1965.*

---

## Property Registry—Sections; Seat; Demarcation

(Substitute for
  H. B. 27, 39, 40, 51 and 70)

### [No. 82]

*[Approved June 25, 1965]*

### AN ACT

To amend section 2A of Act No. 3, approved September 2, 1955,
  as amended, known as the "Puerto Rico Property Registry Act".

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—Section 2A of Act No. 3, approved September 2,
1955, as amended,[94] is hereby amended to read as follows:

---

[93] 18 L.P.R.A. § 653(a).
[94] 30 L.P.R.A. § 1749a.

193

Act No. 82 § 1          1st REGULAR SESSION          June 25

"Section 2A.—Notwithstanding the provisions of section 2[95] hereof, and whenever the public service so requires, the Secretary of Justice, through such rules and regulations as he may deem necessary and after their approval by the Governor, is hereby empowered to fix a new seat or alter the territorial demarcation of any or all of the sections of the Property Registry, establishing the additional sections that may be pertinent. Whenever under any rule or regulation adopted by the Secretary of Justice and approved by the Governor, a new seat is fixed and/or a new territorial demarcation is established for any or all of the sections of the Property Registry above mentioned, the rule or regulation adopted for such purpose shall take effect 30 days after its publication in two newspapers of general circulation in Puerto Rico."

Section 2.—The sum of seventy thousand (70,000) dollars is hereby appropriated from unencumbered funds to the Secretary of Justice to carry out the purposes of this act.

Section 3.—The Secretary of Justice shall request annually from the Legislature the appropriation of the necessary funds to carry out the purposes of this act.

Section 4.—This act shall take effect July 1, 1965.

*Approved June 25, 1965.*

———

### Education—Ramón Emeterio Betances Day

(H. B. 187)

[No. 83]

[*Approved June 25, 1965*]

## AN ACT

To set aside April 8 each year as the day to commemorate the birthday of Ramón Emeterio Betances.

### STATEMENT OF MOTIVES

On April 8, 1827, was born in the municipality of Cabo Rojo one of the most illustrious men, one of the keenest and most brilliant minds our fatherland ever had: Ramón Emeterio Betances.

---

[95] 30 L.P.R.A. § 1749.

**June 25**          **RAMON EMETERIO BETANCES**          Act No. 83 § 2

Physician, prose writer and poet, he consecrated his life to the finest ideals of his country. A steadfast opposer of the colonial regime then prevalent in Puerto Rico, Betances devoted all his efforts to abolishing that despiteful condition.

His political teachings did not meet with the success that would have been desired; so he had to emigrate abroad to escape from the political persecution of the government. Many countries saw him pass by, on his bitter peregrination as a proscript, always fighting, with all means at his command, for his country.

In love with liberty as he was, his profound love of country was instilled in and inspired his whole work as a writer.

His political activities did not prevent him from performing philanthropic work as a physician and scientist. In France he engaged in an intensive research work in medicine.

It does honor to a country to fulfill its duty to pay a tribute of gratitude and recordation to those worthy who have given luster to its history and solidity to its culture; so it is in order to set aside April 8 in Puerto Rico as the day to commemorate, and for us and all future generations to remember, the birthday of the illustrious Ramón Emeterio Betances.

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—April 8 of each year shall be commemorated as "Ramón Emeterio Betances Day" in all public schools of the Commonwealth of Puerto Rico.

The Department of Education shall take the necessary measures for the effectuation of the purpose of this act through the organization of acts and ceremonies as a tribute in memory of this eminent public man, orator and physician.

Section 2.—This act shall take effect immediately after its approval.

*Approved June 25, 1965.*

195

Act No. 84 § 1         1st REGULAR SESSION              June 25

**Health—Plastic Cement; Sale and Distribution; Regulation**

(Substitute for H. B. 274)

[No. 84]

*[Approved June 25, 1965]*

AN ACT

To regulate and/or prohibit the sale, distribution and delivery of plastic cement or of products containing certain volatile substances to persons under 18 years of age, to provide that a registry of the sales of such products be kept, to fix penalties for the violation of this act, and for other purposes.

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—No person shall sell, offer for sale, deliver or give away to another person under 18 years of age, any glue, cement or paste, known as plastic cement, or any other similar substance, if such glue, cement, paste, or plastic cement contains one or more of the following volatile solvents:

1. Toluol
2. Hexane
3. Trichlorethylene
4. Acetone
5. Toluene
6. Ethyl Acetate
7. Methyl Ethyl Ketone
8. Trichloroethane
9. Isopropanol
10. Methyl Isobutyl Ketone
11. Methyl Cellosolve Acetate
12. Cyclohexanone

13. Any other substance which the Secretary of Health from time to time determines to be similar to such volatile solvents.

Provided, however, that this provision shall not apply:

(a) To any glue, paste or plastic cement which has been certified by the Department of Health as containing a substance which makes such glue, paste or plastic cement malodorous, or causes such glue, paste or plastic cement to induce sneezing if inhaled, or

(b) Where the glue, paste or plastic cement is sold, delivered or given away simultaneously with and as part of a kit used for

196

the construction of model airplanes, model boats, model automobiles, model trains or other similar models, or

(c) Where the person to whom the glue, paste or plastic cement is sold, delivered or given is a member of a hobby association for the amateur construction of model airplanes, model boats, model automobiles, model trains or similar models, and who properly identifies himself as such by an official membership card or other means of identification issued by his organization. For the purposes of this section, the term hobby association for the amateur construction of model airplanes, model boats, model automobiles, model trains, or other similar models, means "a group of persons whose principal function in organizing as such is the construction of the above-mentioned models, which is composed of twenty-five or more members, and which is registered in the State Department of the Commonwealth of Puerto Rico." The Department of State shall from time to time cause to be published a list of the juvenile hobby associations which engage in the amateur construction of model airplanes, model boats, model automobiles, model trains, or other similar models, which require the use of glue, paste or plastic cement, and which are required to be registered in the Department of State, and these must have been expressly authorized by the Child Commission of the Department of Health to engage in such activities. The identification cards of its members must be duly signed by the Executive Director of the Child Commission, jointly with the chairman of the club or association to which the member belongs.

Section 2.—Sales Registry

Every owner, manager, administrator or representative of commercial establishments, business concerns, department stores, toy shops, hardware stores, magazine or souvenir stands, drugstores, pharmacies, or any other business enterprise selling or distributing to the public, at retail or wholesale, any glue, cement or paste known as plastic cement, or any other similar substance containing one or more of the volatile solvents mentioned in the first paragraph of this section, shall keep a registry of sales of such products, which registry shall contain information that shall include the purchaser's name, address, age, sex, civil status, occupation, and if a student, the school and grade, affiliation to a hobby club, and any other information that may facilitate the identification of every purchaser of the product or products to which this section refers; and said registry shall likewise include the date and place

Act No. 84 § 2          1st REGULAR SESSION          June 25

of each sale and distribution and the quantity sold to each cus-
tomer in each sale. It shall be the duty of said persons to keep
an inventory, daily posted and maintained up to date, of the above-
mentioned products they may have in stock. This registry shall
be open to inspection by the officers of the Health, Education,
Justice, and Treasury departments, duly authorized by their respec-
tive agencies to make such inspection.

Section 3.—When, in the judgment of the Secretary of Health,
such action is necessary or convenient to attain the purposes of
this act or to insure compliance with its provisions, the Secretary
of Health may require the obtainment of a license, to be issued by
him, as an indispensable prerequisite for the sale or transfer of
any glue, cement or paste, or other similar substance, referred to
in section 1 of this act, by commercial establishments, business
concerns, department stores, toy shops, hardware stores, magazine
or souvenir stands, drugstores, pharmacies, or any other business
enterprise selling or distributing to the public, at retail or whole-
sale, such products. Once the Secretary of Health has required the
obtainment of such license, in the manner and for the purposes
herein provided, it shall be unlawful for said business enterprises
to sell or otherwise transfer the said products without previously
obtaining such license, and any violation of this provision shall
be punished by the penalty prescribed in the first paragraph of
section 4 of this act.

The Secretary of Health shall have power to reject the applica-
tion for license, or to suspend any license already issued, where
any owner, manager, administrator, representative, agent, or em-
ployee of the business enterprise applying for or holding the
license has been convicted of violating the provisions of this act.
The refusal or suspension of a license shall be reviewable by the
San Juan Part of the Superior Court of Puerto Rico upon petition
for review filed by the aggrieved party within the ten (10) days
next following such refusal or suspension.

Section 4.—Penal Clause

Any violation of this act shall be punished by a minimum fine of
fifty (50) dollars and a maximum fine of five hundred (500) dol-
lars, but subsequent violations shall be punished by a minimum
fine of two hundred (200) dollars and a maximum fine of one
thousand (1,000) dollars, or by confinement in jail for thirty (30)
days, or both, in the discretion of the court.

In cases where the sale or distribution of the products whose

sale or distribution to persons under eighteen years of age is regulated by this act is not made through an established and duly registered commercial organization or business concern, or is made clandestinely or in the black market, the seller or distributor shall be punished by a minimum fine of two hundred (200) dollars and a maximum fine of one thousand (1,000) dollars, or by confinement in jail for a minimum term of thirty (30) days and a maximum term of one (1) year, or both, in the discretion of the court.

Section 5.—This act shall take effect thirty days after its approval.

*Approved June 25, 1965.*

---

### Excise Taxes—Public Shows; Exemptions

(H. B. 333)

[No. 85]

[*Approved June 25, 1965*]

### AN ACT

To amend subsection (c) of section 41 of Act No. 2, approved January 20, 1956, as amended, known as the Excise Act of Puerto Rico.

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—Subsection (c) of section 41 of Act No. 2, approved January 20, 1956, as amended, known as the Excise Act,[96] is hereby amended to read as follows:

"Section 41.—PUBLIC SHOWS.

(a) .   .   .   .   .   .   .   .   .   .   .   .

(b) .   .   .   .   .   .   .   .   .   .   .   .

(c) *Shows Not Taxed.* The tax on shows shall not apply to:

    (1) public shows of the University of Puerto Rico and the other university-level institutions recognized under the laws of Puerto Rico;

    (2) public shows held by the Institute of Puerto Rican Culture and affiliated cultural centers;

    (3) theatrical or artistic shows consisting only of the per-

---

[96] 13 L.P.R.A. § 4041(c).

Act No. 85 § 1          1st REGULAR SESSION          June 25

formance of artists in person;

(4) dances; and

(5) public shows held by bona fide nonprofit organizations registered as such in the Department of State of Puerto Rico and whose activities are for the promotion of the general welfare of the community, provided the admission fee does not exceed two (2) dollars. The exemption granted by this paragraph shall be subject to the following conditions:

(a) It shall be the duty of the impresario to notify the Excise District Office with sufficient time prior to the holding of the show, the date and place where the show is to be held; and to submit to said office for inspection and authentication the total issue of the tickets to be used in the activity.

(b) The organizations enjoying the exemption herein granted shall be bound to comply with the provisions of section 65 of this act."[97]

Section 2.—This act shall take effect immediately after its approval.

*Approved June 25, 1965.*

———

**Insurance—Cooperatives; Amendments**

(S. B. 138)

[No. 86]

[*Approved June 25, 1965*]

AN ACT

To amend subsections (3), (6) and (8) of section 34.020; subsections (5) and (6) of section 34.050; paragraphs (e) and (g) of subsection (1) of section 34.070; the title, paragraph (b) of subsection (1), paragraph (b) of subsection (2), subsection (3) and paragraphs (a) and (b) thereof, subsections (4) and (5) of section 34.080; section 34.090 by adding thereto subsections (1) and (2); subsection (1) of section 34.100; subsection (3) of section 34.110; subsection (1) paragraph (c), the title of column (g)

———
[97] 13 L.P.R.A. § 4065.

of the table, and subsection (2) of, and to add subsection (3) to, section 34.190; to add sections 34.192 and 34.193; to amend section 34.220; subsection (2) of section 2.170; subsection (3) of section 3.080; subsection (3) of section 3.120; subsection (1) of section 5.060; subsection (1), and paragraph (d) of subsection (2) of section 29.240; subsections (1) and (2) of section 29.360; to add clause (i) to paragraph (c), and to amend clause (ii) of paragraph (f) and subsection (1) of section 29.460; to amend subsection (1), and paragraphs (a) and (b) of subsection (2) of section 29.480; subsections (4) and (6) of section 29.490; subsection (1), and paragraphs (c) and (d) of subsection (2) of section 29.520, of Act No. 77 of June 19, 1957, known as the Insurance Code of Puerto Rico, as amended by Act No. 84 of June 26, 1959.

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—Subsections (3), (6) and (8) of section 34.020 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[98] are hereby amended to read as follows:

Section 34.020.—Insurance Cooperatives, General Requirements:

*          *          *

(3) Availability, at the time of organization, of a minimum surplus fund accumulated through member contributions. The members shall receive a fund contribution certificate as evidence of their contribution.

*          *          *

(6) Not to pay more than five per cent per annum as interest on the fund contribution certificates issued and outstanding.

*          *          *

(8) Not to be for pecuniary profit, inasmuch as their returns and savings shall be distributed on the basis of sponsorship among the policyholders, after establishing such voluntary reserves as may be deemed necessary for the sound operation of the organization. It being understood by distribution on the basis of sponsorship what there may result by applying an actuarial formula for the distribution of surpluses. Provided, that the directors of a cooperative insurer may from time to time pay or accredit to the policyholders entitled thereto, the sponsorship owing to them after accrediting the

---

[98] 26 L.P.R.A. § 3402(3), (6) and (8).

201

members with the corresponding interest. Provided, also, that such payments shall be made from such portions of the surplus funds as represent net savings made and net profits earned from their businesses, if the same do not reduce the surplus of the cooperative insurer to a sum lower than five per cent of all its liabilities.

Section 2.—Subsections (5) and (6) of section 34.050 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[99] are hereby amended as follows:

Section 34.050.—Articles of Incorporation, Contents.

The articles of incorporation of an Insurance Cooperative shall state:

*          *          *

(5) There shall be indicated the authorized total number of fund contribution certificates and the amount of the contribution represented by each certificate, and if more than one kind of certificate of contribution is authorized, the description of each kind; the number of certificates making up each kind, and the rights, preferences and restrictions granted to or imposed on each kind.

(6) The names and postal addresses of the incorporators and the number of fund contribution certificates subscribed by each one.

*          *          *

Section 3.—Paragraphs (e) and (g) of subsection (1) of section 34.070 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[1] are hereby amended to read as follows:

Section 34.070.—Bylaws, Contents.

(1) The members shall have power, by a majority vote in an assembly lawfully constituted for that purpose, to adopt the bylaws regulating the procedures of the insurance cooperative and governing the conduct of its affairs. Such bylaws, if consistent with law and the articles of incorporation, shall govern:

*          *          *

(e) Issuance and transfer of contribution certificates of the cooperative.

*          *          *

(g) The removal, resignation or substitution of directors, officers and members, as well as the manner of determining the value of the interest of a member and payment thereof by the

---

[99] 26 L.P.R.A. § 3405(5) and (6).
[1] 26 L.P.R.A. § 3407(1)(e) and (g).

cooperative upon his death or retirement, or upon being ejected or losing his status of member. Provided, that in the latter cases the Board shall, within one year after the retirement, ejection or cessation of the member, pay to him or to his authorized representative or his heirs, the amount of money set forth on the documents accrediting his participation in the properties of the cooperative. Provided, further, that when payment of said interest as above indicated is, in the judgment of the Board, prejudicial to the economic development of the cooperative, said payment may be made as follows:

Within a year after the retirement, ejection, cessation or death of the member, there would be paid to him or to his authorized representative or his heirs, a sum equivalent to the total amount originally contributed by him and represented by fund contribution certificates. The rest of the member's interest in the cooperative will be paid to him annually in a revolving manner and in the order of dates said amounts were yearly accrued. The amountts so accumulated shall commence to be paid not later than on and after the year of retirement, ejection or cessation of the member and the same shall be paid over a period of not more than five years. However, if these payments affect the economic condition of the cooperative, the same may be continued to be effected as aforesaid within an additional period of not more than five years, if the cooperative obtains the previous approval of the Commissioner. At any date of the aforesaid periods the Board may order the payment of the unpaid balance up to that date.

If the total assets of the member could not be liquidated in a revolving manner within the period stated above, the Board shall be under obligation to liquidate the excess of said accumulation pro rata or in a lump sum on any date within the indicated period.

Notwithstanding the foregoing, if, pursuant to the above provisions, any cooperative issues certificates with a redemption date accrediting the participation of the member therein, said cooperative shall not be under obligation to liquidate the assets of the retired member as provided above, since the liquidation of said certificate shall be made on or before the date of their redemption. Provided, that in cases of death the cooperative shall be under obligation to pay the member's assets either to his heirs or to his authorized representatives, as stipulated in subsection (1) (g) of this section.

Section 4.—The title, paragraph (b) of subsection (1), para-

Act No. 86 § 4            1st REGULAR SESSION            June 25

graph (b) of subsection (2), subsection (3) and paragraphs (a) and (b), subsection (4) and subsection (5) of section 34.080 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[2] are hereby amended to read as follows:

Section 34.080.—Members, Admission, Resignation and Involuntary Separation, Fund Contribution Certificate, Liability, and Voting Right.

(1) Admission:

*            *            *

(b) The corporations, societies or associations organized for nonprofit purposes and whose activities are for charitable purposes, and/or which are based on cooperative principles, as well as cooperatives incorporated under Act No. 291 of April 9, 1946,[3] and Act No. 10, of July 1, 1947,[4] may, with the previous approval of the Commissioner, be admitted as members by the Board of Directors of the Insurance Cooperative, and shall have the same rights and obligations hereby granted to and imposed on natural persons who are members of a cooperative of this kind.

Every corporation, society, association, or member cooperative shall have in its board of shareholders or of directors, the power to exercise in an insurance cooperative, by delegation, all the rights granted by law to natural persons, and all official relations of the insurance cooperative with such entities shall be maintained with the boards of directors thereof and as provided in the bylaws of the insurance cooperative.

(2) Resignation and Involuntary Separation:

*            *            *

(b) Involuntary Separation.—When the Board considers that a member is acting against the interests of the cooperative or of the obligations contracted with the cooperative, said Board may separate the member and deprive him of his rights and benefits in the cooperative, counting from the date of his removal, after written notice of charges is served on the member affected, who shall be given a reasonable opportunity to defend himself at a hearing before the Board. The member so separated may, within the ten days following the date on which notice of his separation was served on him, appeal from the decision of the Board to the next assembly of

_____
[2] 26 L.P.R.A. § 3408(1)(b), (2)(b), (3)(a) and (b), (4) and (5).
[3] 5 L.P.R.A. § 881 et seq.
[4] 7 L.P.R.A. § 651 et seq.

June 25            INSURANCE—COOPERATIVES            Act No. 86 § 5

members held subsequent to the decision of the Board.

The assembly may, by a majority of the members present, after the proper hearing, ratify the decision of the Board or order the reinstatement of the member, including restoration of his rights and privileges.

Upon the death of a member, his heirs or successors in interest shall select the person who will be entitled to form part of the insurance cooperative, if such person meets the requirements established by the cooperative association for the admission of new members, and the fund contribution certificates and other assets the deceased may have had in the cooperative shall be registered to the name of said person. In the event of the death of the member, his interest in the property of the cooperative shall be delivered to the person or persons he may have named through a written order duly acknowledged and filed in the secretariat of the cooperative.

(3) Fund Contribution Certificate:

(a) Every member shall be under obligation to pay the admission quota which the bylaws of the cooperative shall prescribe and shall subscribe to and pay for at least one fund contribution certificate.

(b) The fund contribution certificates of an insurance cooperative may be transferred only with the consent of the Board and to persons eligible as members according to the articles of incorporation. This restriction shall be printed on every fund contribution certificate.

(4) Liability.—A member of an insurance cooperative shall be liable for the debts and obligations of the cooperative only up to the unpaid amount, if any, on the fund contribution certificates subscribed to by him.

(5) Voting Right—Member: Every member shall have the right to cast only one vote, irrespective of his interest or participation or of his fund contribution certificates in the cooperative; provided, that this right is personal and unassignable, and may only be exercised at the assemblies of the cooperative.

Section 5.—Section 34.090 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[5] is hereby amended to read as follows:

Section 34.090.—First Annual Assembly of Members.

(1) As soon as fund contribution certificates in the amount of

---

[5] 26 L.P.R.A. § 3409.

Act No. 86 § 5          1st REGULAR SESSION          June 25

three-fourths of the minimum surplus funds required have been paid for, and as soon as three-fourths of the total number of applications of members required as qualifications for the original certificate of authority have been accepted, the Directors of a Cooperative Insurer being formed shall call the first annual meeting of members. The assembly shall be held in the city or town of the Cooperative's principal place of business as stated in its articles of incorporation, and written notice of the date, time, place, and purposes of the assembly shall be sent by registered mail to each such member, addressed to the member at his last address of record with the Cooperative, or delivered to him personally, not less than thirty days prior to the date of the meeting.

(2)  The assembly shall consider and adopt cooperative bylaws, elect directors, and transact such other business as may properly come before it.

Section 6.—Subsection (1) of section 34.100 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[6] is hereby amended as follows:

Section 34.100.—Regular and Special Assemblies of Members.

(1)  The Insurance Cooperative shall be governed by the provisions of section 29.140 of this Code.[7]

Provided, that whenever such section is applied, the term member shall substitute for the term stockholder or members.

Section 7.—Clause (3) of section 34.110 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[8] is hereby amended as follows :

Section 34.110.—Qualifications of Directors.

*          *          *

(3)  At least three-fourths must be American citizens.

Section 8.—Amended hereby are clause (1) of paragraph (c), the title of column (g) of the table, and clause (2) of, and clause (3) is hereby added to, section 34.190 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[9] as follows:

Section 34.190.—Qualifications of Cooperative Insurer.

(1)  When newly organized, a cooperative insurer may be authorized to contract any kind of insurance. When applying for an

---

[6] 26 L.P.R.A. § 3410(1).
[7] 26 L.P.R.A. § 2914.
[8] 26 L.P.R.A. § 3411(3).
[9] 26 L.P.R.A. § 3419(1)(c), "g" (title), (2) and (3).

June 25 INSURANCE—COOPERATIVES Act No. 86 § 8

original certificate of authority as an insurer, for only one kind of insurance, a cooperative insurer must be otherwise qualified therefor under this Code and must:

(a) have received and accepted bone fide applications with respect to substantial insurable objects for the kind of insurance proposed to be transacted;

(b) have collected in full and in cash the proper premium therefor at a rate not less than the net premium estimated in accordance with the mortality table and the interest rate as approved by the Commissioner in the case of a life insurance and not less than 85% of the commercial premium collected by stock insurers for comparable coverages in hazards other than life hazards;

(c) have minimum surplus funds as of completion of issuance of all such policies so applied for. The provisions in clauses a, b and c shall be in accordance with that portion of the following table which applies to the one kind of insurance the insurer then proposes to transact:

| (a) Kind of Insurance | (b) Minimum number of policies requested | (c) Minimum number of objects covered | (d) Minimum premium collected | (e) Minimum amount of insurance for each object | (f) Maximum amount of insurance for each object | (g) Minimum capital (required) minimum SURPLUS FUND | (h) Minimum number of Members |
|---|---|---|---|---|---|---|---|
| Life* ............ | 200 | 200 | Annual | $500 | $2,000 | $10,000 | 100 |
| Disability** . | 200 | 200 | Quarterly | 10 weekly indemnity | 25 weekly indemnity | 10,000 | 100 |
| Property*** . | 100 | 200 | Annual | $500 | $2,000 | 10,000 | 50 |
| Agricultural | 100 | 100 | Annual | 500 | 1,000 | 5,000 | 50 |
| Marine and Transportation ........ | 100 | 100 | Annual | 1,000 | 10,000 | 50,000 | 50 |
| Casualty ....... | 200 | 200 | Annual | 1,000 | 10,000 | 100,000 | 100 |
| Vehicles ........ | 100 | 200 | Annual | 1,000 | 10,000 | 75,000 | 50 |
| Surety and fidelity ...... | 50 | 200 | Annual | 1,000 | 10,000 | 75,000 | 25 |
| Title ............. | 25 | 50 | Single | — | — | 25,000 | 25 |

207

Act No. 86 § 8          1st REGULAR SESSION          June 25

   * No provisional insurance for terms of less than ten years shall be included. In the case of group insurance the maximum amount of insurance for each object shall not be applied; and the minimum premium collected required shall be monthly.

   ** In lieu of weekly indemnity, a like premium value in medical, surgical and hospital benefits may be provided. Any accidental death or dismemberment benefit provided shall not exceed one thousand (1,000) dollars.

  *** Only insurance of the owner's interest in real property may be included, and all such coverages must be in compliance with the provisions of section 4.140, subsection (2) (properties reasonably subject to loss from the same fire may not be insured by the same insurer).

(2) A cooperative insurer, after being authorized to transact one kind of insurance, may be authorized by the Commissioner to transact additional kinds of insurance upon qualifying therefor and possessing and thereafter maintaining unimpaired surplus funds in amount not less than seventy-five (75) per cent of the capital required of a domestic stock insurer transacting like kinds of insurance, and subject further to the additional surplus requirements of section 3.120.[10]

A cooperative insurer may be initially authorized to transact more than one kind of insurance if he qualifies for the original certificate of authority stipulated by clause (1) of this section regarding one of the kinds of insurance he intends to transact, and if he also meets the requirement of surplus funds stipulated in clause (3) hereof for all the kinds of insurance he intends to transact.

(3) A cooperative insurer, after being authorized to transact more than one kind of insurance may be authorized by the Commissioner to transact other additional kinds of insurance if he possesses and thereafter maintains unimpaired surplus funds in amount not less than seventy-five (75) per cent of the capital required of a domestic stock insurer transacting like kinds of insurance and subject further to the additional surplus requirements of section 3.120.

Section 9.—Section 34.192 is hereby added to Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[11] to read as follows:

Section 34.192.—Impaired Assets.

(1) If the assets of a cooperative insurer suffer impairment, the Commissioner shall immediately determine the amount of the deficiency and so notify the cooperative to cover it whether by requiring its members to make an additional contribution or in any other way, within ninety (90) days after notified.

---

[10] 26 L.P.R.A. § 312.
[11] 26 L.P.R.A. § 3419b.

(2) The deficiency shall be made up with cash or eligible assets pursuant to this Code regarding investment of cooperative funds.

(3) For the purposes of this section, a cooperative insurer shall be considered as having impaired assets to the extent that his liabilities exceed his assets, both to be determined as provided in Chapter V, but including as liability any minimum surplus fund required to be maintained as authorization to transact the kinds of insurance underwritten.

(4) If the deficiency is not covered, offering proof thereof to the Commissioner, within such ninety-day term, the insurer shall be considered insolvent and proceeded against pursuant to the provisions of this Code.

(5) If the deficiency is not made up, the insurer shall not issue or deliver any policy after the expiration of such ninety-day term. Any official or director violating this provision or knowingly permitting the same to be violated shall incur a fine of not more than one thousand (1,000) dollars for each violation.

Section 10.—Section 34.193 is hereby added to Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[12] to read as follows:

Section 34.193.—Assigning Quotas to Members to Cover Impairment of Assets.

(1) If authorized by the vote of not less than two-thirds of the members of an insurance cooperative present at a special assembly called to said effect, the Board of Directors may assess pro rata a special quota on all contribution certificates issued by the cooperative insurer, to guarantee totally or partially the necessary funds to cover the impairment of assets, in accordance with the notification and requirement of the Commissioner, as provided in section 34.193.

(2) Written notice of such assessment shall be transmitted by registered mail to each one of such members to the latest address registered in the cooperative, requiring payment of such assessment before the expiration of the term of 85 days.

Upon resolution of the Board of Directors and with the consent of the Commissioner, such notice may provide that if the member fails to pay the assessment when due his fund contribution certificates, or such part thereof as may be necessary to said effect, shall, on a date within the period of 5 days after expiration of the term

---

[12] 26 L.P.R.A. § 3419c.

specified in the preceding paragraph, become property of the cooperative. In no case may the cooperative insurer appropriate for itself contribution certificates of members whose contribution exceeds the quota corresponding to them. The appropriation of fund contribution certificates by the cooperative insurer in the prescribed manner shall be recorded upon the books of the cooperative and shall be fully binding and operative upon all parties. Provided, that, as soon as the financial condition of the cooperative insurer so permits, the Board of Directors may proceed to accredit to members fund contribution certificates whose value shall in no case exceed the sums appropriated in the aforesaid manner. The cooperative insurer, or his creditors, shall have no further remedy against the member failing to pay the quota so assessed.

Section 11.—Section 34.220 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[13] is hereby amended to read as follows:

Section 34.220.—Chapter XXVIII[14] shall not apply, except section 28.030.[15] Chapter XXIX[16] shall not apply, except sections 29.050, 29.140, 29.240, 29.260, 29.300, 29.310, 29.320, 29.360, 29.460 through 29.530 inclusive.[17]

Section 12.—Subsection (2) of section 2.170 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[18] is hereby amended to read as follows:

Section 2.170.—Examiners and Expenses of Examination.

*        *        *

(2) Each insurer or other person being so examined shall reimburse the reasonable and proper charges and actual expenses incurred in the examination upon presentation by the Commissioner of an itemized account of such charges and expenses. The Commissioner may waive payment of such charges and expenses with respect to domestic insurers and agents, brokers, solicitors, and adjusters, and with respect to examination of a minor character, to the extent that such examinations are made by regular salaried

---

[13] 26 L.P.R.A. § 3422.
[14] 26 L.P.R.A. §§ 2801 to 2820.
[15] 26 L.P.R.A. § 2803.
[16] 26 L.P.R.A. §§ 2901 to 2954.
[17] 26 L.P.R.A. §§ 2905, 2914, 2924, 2926, 2930, 2931, 2932, 2936, 2946 to 2953.
[18] 26 L.P.R.A. § 217(2).

June 25          INSURANCE—COOPERATIVES          Act No. 86 § 15

members of the Commissioner's staff. Provided, that in the case of cooperative insurers the examinations shall be made free of charge.

Section 13.—Subsection (3) of section 3.080 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[19] is hereby amended to read as follows:

Section 3.080.—Kinds of Insurance.—An Insurer.

An insurer which otherwise qualifies therefor may be authorized to transact any one kind or combination of kinds of insurance as defined in chapter IV of this Code, Except:

*          *          *

(3) A title insurer shall be a stock or cooperative insurer.

Section 14.—Subsection (3) of section 3.120 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[20] is hereby amended to read as follows:

Section 3.120.—New Insurer, Additional Surplus Required.

*          *          *

(3) This section shall not apply to cooperative insurers initially authorized to transact only one kind of insurance as provided in section 34.190,[21] and which do not, within such five-year period, transact any kind of insurance in addition to that for which they were initially authorized.

Section 15.—Subsection (1) of section 5.060 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[22] is hereby amended to read as follows:

Section 5.060.—Reduced Unearned Premium Reserve—New Domestic Insurers.

(1) A domestic property, casualty or security insurer may, during the first five full calendar years of its operations, maintain unearned premium reserves in the following percentages of the reserves otherwise required under section 5.040,[23] subject to subsections (2) and (3) of this section:

First full calendar year . . . . . . . . 50%
Second full calendar year . . . . . . . . 60%

---

[19] 26 L.P.R.A. § 308(3).
[20] 26 L.P.R.A. § 312(3).
[21] 26 L.P.R.A. § 3419.
[22] 26 L.P.R.A. § 506(1).
[23] 26 L.P.R.A. § 504.

211

Third full calendar year . . . . . . . . 70%

Fourth full calendar year . . . . . . . 80%

Fifth full calendar year . . . . . . . . 90%

Section 16.—Subsection (1), and paragraph (d) of subsection (2), of section 29.240, of Act No. 77 of June 19, 1957, as amended by Act 84 of June 26, 1959,[24] are hereby amended as follows:

Section 29.240.—Management and Exclusive Agency Contracts.

(1) No cooperative or mutual cooperative stock insurer shall make any contract whereby any person is granted or is to enjoy in fact the management of the insurer or the controlling or preemptive right to produce substantially all insurance business for the insurer, unless such contract is filed with the Commissioner and be subject to his disapproval. The contract shall be deemed effective unless disapproved by the Commissioner within thirty days after date of filing, subject to such reasonable extension of time as the Commissioner may require by notice given within such thirty days. Each disapproval shall be delivered to the insurer in writing, stating the grounds therefor.

*          *          *

(d) Contains other inequitable provisions or provisions which jeopardize the proper interests of stockholders, partners, or members of the insurer.

Section 17.—Subsections (1) and (2) of section 29.360 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[25] are hereby amended as follows:

Section 29.360.—Illegal Dividends, Penalty.

(1) Any director of a cooperative or mutual stock insurer who votes for or concurs in declaration or payment of dividend prohibited by this Code shall be guilty of a misdemeanor, punishable by a fine of up to five hundred (500) dollars or imprisonment for not more than three months, or by both penalties.

(2) The stockholders, partners, or members receiving such an illegal dividend shall be liable in the amount thereof to the insurer.

Section 18.—Hereby amended are clause (1) and subparagraph (ii) of paragraph (f), and subparagraph (i) is hereby added to paragraph (c) of section 29.460 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[26] as follows:

---

[24] 26 L.P.R.A. § 2924(1) and (2)(d).

[25] 26 L.P.R.A. § 2936(1) and (2).

[26] 26 L.P.R.A. § 2946(1), (c)(i) and (f)(ii).

212

Section 29.460.—Merger or Consolidation.

(1) Two or more mutual insurers, or two or more cooperative insurers, or two or more stock insurers, may merge or consolidate subject to the following conditions:

\*          \*          \*

(i) If cooperative insurers, the merger or consolidation must have been authorized by resolution approved by each of the respective boards of directors and by the vote of not less than two-thirds of all the members at special assemblies of the members of each of the respective insurers, called for the purpose.

\*          \*          \*

(f) The merger or consolidation shall be deemed effectuated, and the nonsurviving domestic corporation or corporations shall cease to exist upon completion of matters preliminary thereto as provided herein and in the agreement of merger or consolidation, and upon the filing with the Secretary of State and with the Commissioner of the following:

\*          \*          \*

(ii) Certificates by the respective corporate secretaries under oath, certifying to the adoption of resolutions authorizing the merger or consolidation by the insurer's stockholders, partners, or members, and by the respective boards of directors and setting forth a copy of each such resolution and the votes thereon.

Section 19.—Subsection (1), and paragraphs (a) and (b) of subsection (2) of section 29.480 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[27] are hereby amended as follows:

Section 29.480.—Voluntary Liquidation and Dissolution—Preliminary Steps.

(1) A cooperative or mutual domestic stock insurer, while fully solvent and if not subject to action by the Commissioner pursuant to chapter XL, may accomplish its own voluntary liquidation and dissolution by proceeding as provided in sections 29.480 to 29.530, inclusive.[28]

(2) The insurer shall first notify the Commissioner of its intent

---

[27] 26 L.P.R.A. § 2948(1) and (2)(a), (b).
[28] 26 L.P.R.A. §§ 2948 to 2953.

Act No. 86 § 19          1st REGULAR SESSION          June 25

to so liquidate and dissolve. The Commissioner shall thereupon make such examination of the insurer as he deems necessary to determine whether the insurer is solvent or whether it is subject to his action pursuant to chapter XL. The Commissioner shall promptly notify the insurer of the findings of the examination, and if such findings are to the effect that the insurer is solvent and is not then subject to action by the Commissioner under chapter XL, the insurer may proceed by complying with the following further preliminary requirements:

(a) Adoption of a resolution authorizing liquidation and dissolution by a vote of not less than three-fourths of all of the members of the insurer's board of directors at a special meeting of the board called for the purpose, and directing the calling of a special assembly of the insurer's stockholders, partners, or members for the purpose of considering and taking action upon a similar resolution.

(b) Adoption of the resolution authorizing liquidation and dissolution by the insurer's stockholders, partners or members, at a special meeting thereof called for the purpose. If a stock insurer, the resolution must have been adopted by the affirmative vote of not less than two-thirds of all voting stock outstanding. If a mutual insurer, the resolution must have been adopted by the affirmative vote of not less than two-thirds of all members voting thereon pursuant to such reasonable notice, presentation of facts, and procedure as may have been approved by the Commissioner. If a cooperative insurer, the resolution must have been adopted by the affirmative vote of not less than two-thirds of all members.

Section 20.—Subsections (4) and (6) of section 29.490 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[29] are hereby amended as follows:

Section 29.490.—Voluntary  Liquidation—Administration  and Further Procedure.

\*          \*          \*

(4) After payment and discharge of all its obligations to its creditors, and with respect to its policyholders as such, the insurer shall distribute its assets remaining, after setting aside such funds as may reasonably be required to cover the costs of further necessary administration and procedures, to its stockholders as entitled thereto pursuant to its articles of incorporation, if a stock insurer,

---

[29] 26 L.P.R.A. § 2949(4) and (6).

214

or to its members as determined and in amounts as required pursuant to section 29.540,[30] if a mutual insurer. If a cooperative insurer, such remaining assets shall be distributed among its partners entitled thereto, in the proportion that the amount of the fund contribution certificates of each partner bears to the total value of all fund contribution certificates. The total amount distributed shall in no case exceed the total par value of all fund contribution certificates acquired by the partners of the cooperative. Prior to or at the time of receiving such distribution, each such shareholder or member shall surrender each one of his stock certificates or fund contribution certificates to the insurer for cancellation. Any remaining funds of a cooperative insurer shall be distributed among members and policyholders on the basis of sponsorship, pursuant to the provisions of section 34.020 (8).[31]

\* \* \*

(6) Any funds remaining in the insurer's possession at the end of ninety days after the distribution thereof to shareholders, partners or policyholders, or members in general, on account of inability to deliver such funds to particular shareholders or members, partners or policyholders, entitled thereto, shall be deposited in trust for such unpaid shareholders or members, partners or policyholders in such institution and under such reasonable terms as may be approved by the Commissioner, and shall be subject to diminution pro rata for payment of current costs, if any, of such trusteeship. Any funds so remaining in trust at the expiration of five years from date first deposited therein shall escheat to the Commonwealth of Puerto Rico and become part of its general funds, and without further right therein by or on behalf of any other person.

Section 21.—Subsection (1), and paragraphs (c) and (d) of subsection (2) of section 29.520 of Act No. 77 of June 19, 1957, as amended by Act No. 84 of June 26, 1959,[32] are hereby amended as follows:

Section 29.520.—Voluntary Liquidation—Certificate of Dissolution.

(1) After the liquidation of the insurer has been completed, its obligations discharged, its remaining assets have been distributed

---

[30] 26 L.P.R.A. § 2954.
[31] 26 L.P.R.A. § 3402(8).
[32] 26 L.P.R.A. § 2952(1) and (2)(c), (d).

to its stockholders, partners, or policyholders, and deposit in trust of undelivered funds, if any, has been made as provided in section 29.490(6),[33] the Commissioner shall make such examination of the insurer's affairs as he may then deem necessary. When the report of such examination shows that such things have been properly accomplished, the insurer shall be so notified.

(2)  Upon receiving such notice as to such examination, a majority of the insurer's directors and its president and secretary shall execute in triplicate a certificate under oath setting:

\*          \*          \*

(c)  That all its assets remaining after discharge of its other obligations have been distributed to its shareholders, members, partners or policyholders as entitled thereto.

(d)  That as to any such shareholders, members, partners or policyholders to whom delivery of their respective portions of such assets could not be made within the ninety-day period provided therefor by law, the funds representing such undelivered assets have been deposited in trust for the benefit of, and to be delivered upon demand of and to, such shareholders, members, partners or policyholders, in a named financial institution, subject to escheat to the Commonwealth of Puerto Rico if not so demanded by the date, stated therein, as required by law.

Section 22.—This act shall take effect immediately after its approval.

*Approved June 25, 1965.*

---

### Housing Bank—Debenture Bonds

(Substitute for S. B. 214)

#### [No. 87]

*[Approved June 25, 1965]*

### AN ACT

To authorize the Puerto Rico Housing Bank to pledge the good faith and credit of the Commonwealth of Puerto Rico up to a sum of $10,000,000 through debenture bonds to secure the mortgages

---

[33] 26 L.P.R.A. § 2949(6).

**DEBENTURE BONDS**

insured by said bank and to empower the Puerto Rico Housing
Bank to adopt requlations for the insurance of said mortgages
by it.

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—For the purpose of meeting the obligations assumed
by the Puerto Rico Housing Bank in the insurance of mortgages
on low-cost dwellings, as provided by subsections (j) and (k) of
section 10 of Act No. 146 of June 30, 1961,[34] the Puerto Rico
Housing Bank shall create an Insured Mortgages Reserve Fund,
which shall be fed by the premiums and any other income deriving
from the insurance of mortgages and from which shall be paid all
obligations incurred by the insurance, operation expenses and any
other expenses incident to the mortgage insurance, as provided in
the Mortgage Security Insurance Regulation below established by
this act.

Section 2.—The Board of Directors of the Puerto Rico Housing
Bank shall adopt a Mortgage Security Insurance Regulation pro-
viding for the establishment and maintenance of those actuarial
reserves deemed by it necessary and adequate to insure the solvency
of the Insured Mortgages Reserve Fund created hereunder. The
Regulation on the Mortgage Security Insurance shall be exempt
from the provisions of Act No. 112, approved June 30, 1957,[35] but
the Puerto Rico Housing Bank shall properly diffuse and publicize
same for public knowledge. This regulation shall also provide the
rules and conditions for insurance against any losses that through
mortgage secured obligations, either by reason of loans, credit
advances, or the purchase of obligations evidenced by promissory
notes, may be sustained by the Bank; or other financial entities
such as banks, trust companies, insurance companies, retirement
systems, personal loan companies, mortgage investment companies,
housing construction and loan associations, installment-loan com-
panies, housing cooperatives, or any other institutions which the
Board of Directors may determine that qualify through their ex-
perience, resources and facilities as eligible for such insurance. The
maximum insurable amount shall not exceed the amount of the
maximum loan that the Bank may grant. The Housing Bank may
insure loans in excess of said limit in those cases where such action
will be in the public interest or will contribute to facilitate any other

---

[34] 7 L.P.R.A. § 910 (j) and (k).
[35] 3 L.P.R.A. § 1041 et seq.

housing program financed or sponsored by any agency, public corporation, municipality or instrumentality of the Commonwealth of Puerto Rico.

Section 3.—In those cases in which the Bank must discharge its liability assumed as Mortgage Insurer, it shall make the corresponding payment in debenture bonds, as below provided.

Section 4.—The Puerto Rico Housing Bank shall issue debenture bonds against Insured Mortgages Reserve Fund in multiple denominations of fifty (50) dollars. The payments shall be made through these bonds. Any difference resulting between the amount of the claim and the largest amount that may be covered with the value of the bonds shall be paid in cash, against the Insured Mortgages Reserve Fund.

Section 5.—In the event of foreclosure by the mortgagee of a mortgage insured by the Housing Bank in which the highest offer made for the property is less than the amount of the insured debt, including interest and other insured credits, as determined in the Mortgage Security Insurance Regulation, in order to obtain the insurance benefits the mortgagee shall maintain an offer equal to the amount of the insured debt, so that he may be awarded title to the property. Once the mortgagee has acquired the title, he shall transfer said title to the Puerto Rico Housing Bank, as a condition precedent to receiving payment as provided by this act.

Section 6.—The debenture bonds mentioned in section 3 of this act shall be issued by the Puerto Rico Housing Bank against the Insured Mortgages Reserve Fund. These bonds shall be negotiable and shall be signed by the President of the Board of Directors of the Puerto Rico Housing Bank and by the President of the Puerto Rico Housing Bank. The debenture bonds shall specify the date of issuance, and the date of maturity, which shall not be later than the maturity date of the insured mortgage. The rate of interest drawn by these obligations shall be fixed every six months by the Puerto Rico Housing Bank, and said interest shall be paid semiannually in cash against the Insured Mortgages Reserve Fund.

Section 7.—The debenture bonds issued by the Puerto Rico Housing Bank for the discharge of its liability on a mortgage insured by the Housing Bank shall recite that they are redeemable upon a ninety-day notice. The offer to redeem shall be for the par value plus accrued interest on the date of notice, plus interest

June 25        **DEBENTURE BONDS**        Act No. 87 § 11

accrued from the date of notice to the date of their purchase, the latter in no case to exceed 90 days.

Section 8.—In case the proceeds of the sale of a foreclosed property exceed the liability covered by the Housing Bank, through payment of the insurance, said excess shall be refunded by the Housing Bank to the mortgagee affected by the foreclosure.

Section 9.—In case of the sale of mortgages insured by the Puerto Rico Housing Bank, granted under the provisions of Act No. 97, approved June 26, 1964,[36] on which foreclosure is necessary, the Puerto Rico Housing Bank shall reacquire said mortgages and shall follow the procedure therein established for its foreclosure.

Section 10.—The Commonwealth of Puerto Rico guarantees payment of principal of and interest on debenture bonds issued by the Housing Bank for the purposes authorized by this act up to a sum not exceeding $10,000,000.00. The debenture bonds to which this guaranty is applicable shall be those specified by the Housing Bank and a statement of such guaranty shall be given on the face of such debenture bonds. If at any time the income of the Insured Mortgages Reserve Fund pledged for the payment of principal of and interest on such debenture bonds are insufficient for the payment of such principal and interest when they fall due, the Housing Bank shall withdraw from any of its unencumbered funds the necessary sums for the payment of such principal and interest overdue and shall direct that said sums be covered into the Insured Mortgages Reserve Fund, and should said sums be insufficient for the payment of principal and interest when they fall due, the Secretary of the Treasury shall withdraw from any unencumbered funds in the Treasury of Puerto Rico such sums as may be necessary to cover the deficiency in the amount required for the payment of such principal and interest, and shall direct that the sums so withdrawn be applied to such payments. The good faith and credit of the Commonwealth of Puerto Rico is hereby pledged to such payments.

Section 11.—This act shall take effect immediately after its approval.

*Approved June 25, 1965.*

---

[36] 28 L.P.R.A. § 553a.

219

Act No. 88            1st REGULAR SESSION            June 25

## Internal Security—Arms; Prohibition; Delivery; Confiscation

(Substitute for S. B. 235)

[No. 88]

*[Approved June 25, 1965]*

## AN ACT

To prohibit the sale, bearing, carrying, transportation and posses-
sion of any instrument or device whose general configuration con-
forms to that of a revolver or pistol and which is capable of
detonating blank shells, blank cartridges or any other unit not
provided with a missile, that could produce explosion through
combustion; to except from the prohibitive provision of this act
revolvers especially manufactured for sportive events and theat-
rical shows; to provide for the surrender of such weapons,
instruments or devices to the police of Puerto Rico upon adequate
compensation; to provide for the confiscation of the said weapons,
instruments or devices not surrendered to the police within the
time set herein, and to fix penalties for violations of this act.

*Be it enacted by the Legislature of Puerto Rico:*

Section 1.—It shall be a misdemeanor, punishable as provided
in section 6 hereof, to bear, carry, transport, possess or sell any
weapon, instrument or device whose general configuration conforms
to that of a revolver or pistol and which is capable of detonating
blank shells, blank cartridges or any other unit not provided with
a missile, that could produce explosion through combustion, in-
cluding among such weapons, instruments or devices, those revolv-
ers, pistols, instruments and devices known by the name of starter's
pistol, blank cartridge pistols, blank cartridge revolvers, blank start-
er's pistols, blank pistols, blank revolvers, blank starter's revolvers,
or any others whose general configuration conforms to those of a
revolver or pistol and which fires blank cartridges, blank capsules, or
blank shells. By blank capsule, blank shell or blank cartridge shall
be understood any hollow unit, cylindric or cubic in form, not pro-
vided with a missile, containing in its interior any chemical agent
or compound capable of producing explosion by combustion, and
provided with a percussion-sensitive detonator.

Section 2.—Excepted from the provisions of section 1 above are
revolvers especially manufactured for sportive events and theatrical
shows and used for such purposes, provided the barrel thereof is

220

a solid cylinder with no orifice whatsoever and ending in a cone.

Section 3.—(a) Within fifteen (15) days after this act is approved by the Governor of Puerto Rico, the Secretary of State shall publish in two newspapers of general circulation in Puerto Rico a notice containing the text thereof. Said notice shall point out to the citizenry the obligation to surrender, within sixty (60) days following the date of publication of the notice, any weapons, instruments or devices of those mentioned in section 1 of this act which they may have in their possession.

(b) Before expiration of the said term of sixty (60) days any person having in his possession any of the weapons, instruments or devices mentioned in section 1 of this act shall surrender same to the District Commander of the Police of Puerto Rico of the municipality where such person resides.

(c) Any person surrendering any such weapon, instrument or device within the term specified in subsection (a) above, shall be entitled to receive the amount of the value thereof according to appraisal made by the official designated therefor by the Superintendent of the Police of Puerto Rico, and if not satisfied with the appraisal made of the weapon, instrument or device so surrendered, said person may claim payment of any difference through action brought in the part of the District Court of Puerto Rico corresponding to his place of residence, and the decision of the court shall be final and conclusive.

(d) Payment of the price of any weapon, instrument or device surrendered as set forth in this section shall be made by the Secretary of the Treasury upon warrant against the funds appropriated for the acquisition of police equipment, and the good faith of the Commonwealth of Puerto Rico is hereby expressly pledged to the payment of all differences arising from the appraisal of weapons, instruments or devices so surrendered.

Section 4.—When the weapons, instruments or devices referred to in this act are not surrendered to the Police of Puerto Rico within the term of sixty (60) days prescribed in section 3(a), or when, after said term has expired, any police agent or peace officer of Puerto Rico shall catch any person in the act of bearing, carrying, transporting or possessing any such weapon, instrument or device, it shall be the duty of said agent or officer to seize the said weapon, instrument or device and to arrest such person so caught in the act of bearing, carrying, transporting or possessing same in violation of this act and hold him to answer for the offense incurred.

Act No. 88 § 4          1st REGULAR SESSION          June 25

It shall be the duty of the District Court of Puerto Rico, which is hereby vested with jurisdiction to take cognizance of violations of this act, to order the confiscation of such weapons, instruments or devices so occupied by the said police agents or peace officers as soon as the judgments rendered by said court against the violators of this act become final and conclusive. Such weapons, instruments or devices shall be confiscated by the police.

Section 5.—All weapons, instruments or devices referred to in this act which are acquired by purchase, or surrendered or occupied, shall be deposited in the general headquarters of the Police of Puerto Rico for their confiscation.

Section 6.—Any person violating the provisions of sections 1 and 4 of this act shall be guilty of a misdemeanor and upon conviction punished by a fine of not less than fifty (50) nor more than one hundred (100) dollars, or in default thereof, to confinement in jail for one (1) day for each dollar he fails to pay.

Section 7.—Nothing herein contained shall be construed as in any wise repealing or modifying the provisions of act No. 17 of January 19, 1951, as amended,[37] except such provisions of said act as are in conflict herewith.

Section 8.—This act shall take effect immediately after its approval, but its penal provisions shall become legally effective upon expiration of the term of sixty (60) days established in section 3 hereof.

*Approved June 25, 1965.*

---

### Traffic—Provisional Licenses

(S. B. 248)

### [No. 89]

*[Approved June 25, 1965]*

### AN ACT

To add subsection (c) to section 2-201 of Article II, and to amend subsection 22 of section 2-801 of Article VIII of Act No. 141 of July 20, 1960, known as the Vehicle and Traffic Law of Puerto Rico, as amended.

---

[37] 25 L.P.R.A. § 411 et seq.