**NATBONY REPLY DECLARATION**
**EXHIBIT 20**



No *Shepard's* Signal™
As of: February 12, 2020 6:34 PM Z

# [Roig Commer. Bank v. Buscaglia](#)

Supreme Court of Puerto Rico

April 22, 1953, Argued; May 19, 1953, Decided

No. 10834.

**Reporter**
74 D.P.R. 986; 1953 PR Sup. LEXIS 220

ROIG COMMERCIAL BANK, Plaintiff and Appellee, v. RAFAEL A. BUSCAGLIA, Treasurer of Puerto Rico, Defendant and Appellant.

**Notice:** OFFICIAL TRANSLATION

**Prior History:** Appeal from judgment of Luis R. Polo, Judge (San Juan), granting complaint. Reversed.

## Core Terms

gross income, net income, Sections, taxes, obligations, provisions, taxation, taxpayer, income tax, proportion, exempt, legislative intent, foreign country, computed, formula, prevail, double taxation, Regulations, deductions, cases, federal tax, pay tax, Federal Act, inadvertence, literal, incorrect, domestic, manifest, accrued, courts

## Headnotes/Summary

**Headnotes**

1. INTERNAL REVENUE LAW—INCOME TAX—CREDITS—TAXES PAID—FEDERAL TAXES.—In order that a domestic corporation may be allowed the credit pointed out in § 36($a$) of the Income Tax Act with respect to taxes paid to the Government of the United States, it is necessary that said federal taxes refer to income also taxable in Puerto Rico.

2. ID.—ID.—ID.—ID.—ID.—The credit for federal taxes fixed by § 36($a$) of the Income Tax Act does not include taxes levied by the federal government on interests on obligations of said government since the latter do not form part of the net income recognized as such in Puerto Rico for the purposes of local taxation.

3. ID.—ID.—ID.—ID.—ID.—The formula to determine the credit for federal tax fixed by § 36($a$) of the Income Tax Act is limited to income considered and recognized by our law as part of taxpayer's net income and subject to taxation in the absence of the aforesaid credit, that is, to income which by law is not nor may be a part of the taxpayer's gross income.

4. STATUTES—CONSTRUCTION AND OPERATION—GENERAL RULES OF CONSTRUCTION—POWERS AND DUTIES OF COURTS.—When there is a literal

conflict between two Sections of a law or a clearly mistaken reference in one Section to another, the mission of the judge is to impart effectiveness to the legislative intent, even to the point of substituting or judicially eliminating some specific phrase which, incorporated to a statute through inadvertence or error, defeats the legislative intent which appears from the Act as a whole, in order that the manifest intention of the Legislature should prevail over the provision which may be in conflict with that intention.

5. ID.—ID.—ID.—INTENTION OF LEGISLATURE—IN GENERAL.—When in one of the Sections of an Act there is an absolute principle which expressly makes an exclusion, and in another Section of that same Act reference is made, mistakenly, to the first Section as containing a principle of inclusion, the express exclusion must prevail over the mistaken reference.

6. ID.—ID.—ID.—ID.—ID.—The provisions of the Income Tax Act, as it stood prior to its amendment by Act No. 209 of 1949 (Sess. Laws, p. 652), insofar as it excluded, by §§ 15 and 31, the interests on obligations of the federal government from taxpayer's gross income and by § 34 it included said interests in the gross income, are inconsistent, incompatible and mutually antagonistic.

7. ID.—ID.—ID.—ID.—ID.—Courts should avoid any construction of a statute that may lead to an unreasonable and absurd result.

8. ID.—ID.—ID.—EXTRINSIC AID TO CONSTRUCTION—CONTEMPORANEOUS CONSTRUCTION.—Administrative practice is an important and effective aid in the construction of a statute only when one of its provisions is ambiguous. If the statute is clear, no one may take refuge in the administrative interpretation or regulation to the contrary, since an interpretation or regulation in conflict with the explicit terms of a statute cannot stand.

9. ID.—ID.—ID.—ID.—ID.—The government is not precluded from invoking a legal principle, if it is the one that should prevail, merely because an officer has given an interpretation contrary to that principle, and even if an individual has acted on the basis of that interpretation.

10. ID.—ID.—ID.—ID.—ID.—When the legislature inadvertently approves conflicting provisions and this inadvertence and conflict are reproduced in a legislation by the officer authorized to do so, if said provisions are ineffective, the administrative actions must also be ineffective.

11. ID.—ID.—ID.—STATUTES AS A WHOLE—CONFLICTING PROVISIONS.—When two parts or Sections of a statute are in conflict, the provision which is last in order of position should not prevail, if it defeats true legislative intent.

**Counsel:** For appellant: J. B. Fernández Badillo, Assistant Secretary of Justice, and Arnaldo P. Cabrera, Assistant Attorney General.

For appellee: James R. Beverly, R. Castro Fernández and Francisco Castro Amy.

**Judges:** MR. JUSTICE ORTIZ delivered the opinion of the Court. Mr. Justice Sifre did not take part in the decision of this case.

**Opinion by:** ORTIZ

## Opinion

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The Superior Court of Puerto Rico, San Juan Part,

sustained a complaint filed by the Roig Commercial Bank against the then Treasurer of Puerto Rico, holding that said corporation, with respect to the income tax which it paid in the years 1943, 1944 and 1945, is entitled to a credit, against the tax to be paid, which credit shall be computed by the amount of income tax paid to the Government of the United States on interest received from United States bonds, all of it by virtue of § 36(*a*) of our Income Tax Act. The Secretary of the Treasury has appealed from said judgment to this Court, assigning, as a sole error, that the aforesaid court erred in holding that plaintiff is entitled to that credit.

[1-3] The afore-mentioned § 36(*a*) grants a credit for income tax paid by domestic corporations to the United States or to a foreign country and provides that said credit shall in no case exceed the proportion which the net income from sources without Puerto Rico and the taxpayer's entire net income bear to the tax to be paid in Puerto Rico.[1]

---

[1] "Section 36.—(*a*) In the case of a domestic corporation the tax imposed by this title shall be credited with the amount of any income and excess-profits taxes paid or accrued during the same taxable year to the United States, any possession thereof other than Porto Rico, or to any foreign country, *Provided*, That the amount of such credit shall in no case exceed the same proportion of the tax (computed on the basis of the taxpayer's net income without the deduction of any income or excess-profits taxes imposed by the United States, any possession of the United States other than Porto Rico, or any foreign country), against which such credit is taken, which the taxpayer's net income, (computed without the deduction of any such income or excess-profits tax) from sources without Porto Rico bears to its entire net income (computed without such deduction) for the same taxable year. In the case of domestic insurance companies subject to the tax imposed by sections 41 or 44, the term 'net income' as used in this subdivisions means net income as defined in sections 43 and 44, respectively."

The same credit provided by § 36(*a*) for corporations, is granted by § 23(*a*) to the individuals. We shall give an example of how said proportion or formula is established, (*Arabía, Manual de Contributión sobre Ingresos*, p. 292, § 23.2; Prentice-Hall, Federal Tax Service, Col. 1. § 5853; § 220 of the Treasurer's Regulations) by analogy, as though it were the case of an unmarried person.

Go to table1

Actually, the court *a quo* erred. In order that a corporation may be allowed the credit pointed out in § 36 with respect to taxes paid to the Government of the United States it is necessary that said federal taxes refer to income also taxable in Puerto Rico. The primary design of provisions permitting taxpayers to credit taxes was to prevent a double taxation on the same income. *Hubbard v. United States*, 17 F. Supp. 93, certiorari denied in 300 U. S. 666; *American Chicle Co. v. U. S.* 316 U. S. 450, 451; *Burnet v. Chicago Portrait Co.*, 285 U. S. 1. Section 36 should be construed jointly with other Sections of the Income Tax Law. *Cf. People v. Heirs of Junghanns*, 73 P.R.R. 600; *People v. de*

---

| | |
|---|---|
| Net income of sources within Puerto Rico . . | $10,000.00 |
| Net income of sources without Puerto Rico . . | 5,000.00 |
| Total net income . . . . | $15,000.00 |
| Less: personal exemption . . . . | 800.00 |
| Net taxable income . . . . | $14,200.00 |
| Tax in Puerto Rico over $14,200 . . . . | $3,212.00 |
| Tax paid in United States over $5,000 . . . . | $1,600.00 |
| Credit allowed for: 5,000/15,000 = (1/3) of $3,212.00 = . . . . | $1,070.67 |

Thus, we see that from the $1,600 paid to the United States the taxpayer may take as credit in Puerto Rico the amount of $1,070.67.

Go to table2

| | |
|---|---|
| Tax . . . . | $3,212.00 |
| Less credit paid to the United States . . . . | 1,070.67 |
| Total Tax . . . . | $2,141.33 |

*Jesús*, 70 P.R.R. 37; *People v. Mantilla*, 71 P.R.R. 35. Section 15(*b*) (4) of that same Act provides that the term "gross income" does not include interest upon the obligations of the United States, "which shall be exempt from taxation." Section 30 states that in the case of a corporation or partnership subject to the tax imposed by § 28 the term "net income" means the gross income as defined in § 31 less the deductions allowed by §§ 32 and 9. Section 31 states that in the case of a corporation or partnership subject to the tax imposed by § 28 the term "gross income" means the gross income as defined in §§ 15 and 19.

Independently of § 34, which we shall hereinafter consider, the interest in question herein could not be part of the gross income and were exempt from taxation, under § 15, applicable to corporations as to the determination of their gross income. Therefore, appellee's net income (gross income less the deductions allowed by §§ 32 and 9) did not include those interests. However, § 36 which serves as the primary basis for the taxpayer's theory, establishes a credit chargeable to the tax paid in Puerto Rico, said credit being computed in part, by the income tax paid to the United States. But that § 36 is not applicable to the Federal tax on interests upon obligations of the Government of the United States, that is, the credit of federal taxes does not include that part of those taxes levied by the federal government on said interests since the latter do not form part of the net income recognized as such in Puerto Rico for the purposes of local taxation. As we have seen, § 36 limits the credit to the result in a formula or proportion which is the following, applying the resulting proportion to the tax which would have been paid herein in the absence of credit:

Net Income of Sources without Puerto Rico

Total Net Income of Sources within and without Puerto Rico

If the proportion of the foreign net income to the total net income would be of a third part, then the credit would be limited to a third part of the tax computed in the absence of credit. However, the formula of § 36 is limited to income considered and recognized by our law as part of taxpayer's net income which would have been subject to taxation in the absence of credit, that is, the income which is not nor may be a part of the gross income, by a provision of law, under §§ 31 and 15, can not be part of the net income to which § 30 refers (gross income pursuant to § 15 less the corresponding deduction). In other words, the amounts which constitute the net income used in the formula of § 36 on which the credit in question was computed, are the amounts which constitute "net income" as defined in §§ 30 and 31. The interest upon obligations of the Government of the United States are not part of the net income thus defined (gross income of § 31 less deductions), since they are not part of the gross income, as indicated in § 15 and as defined in § 31, upon this Section adopting the definition of gross income established by § 15. This opinion is buttressed by the following reasons:

(1) The purpose of the credit allowed for in § 36 is to avoid a double taxation, that is, to prevent the Government from imposing a tax on this income which has been already taxed by the Government of the United States. If by virtue of the afore-mentioned Sections of our Act the interests in question are not subject to taxation in Puerto Rico because they are not part of the gross income recognized by the law, then the federal tax on such interests should not be part of the credit established by § 36.

(2) Section 30 provides that in the case of a corporation the term "net income" means the gross income as defined in § 31 (that is, in § 15) less the deductions allowed for in §§ 32 and 9. Section 32, in its paragraph A-3, admits, in part, as deductions, "Taxes paid or accrued within the taxable year except: . . . so much of the income and excess-profits taxes imposed by the authority of the United States, any possession of the United States other than Porto Rico, or any foreign country as is allowed as a credit under section 36." The taxes which constitute the credit allowed by § 36 are

excluded from the taxes which constitute the deductions recognized in § 32. Had § 36 not existed, said taxes would have been deductible. The tax on the interest in question is not part of the gross income and, therefore, it did not have to be deducted from the gross income. Consequently, the deduction of taxes allowed by § 32 does not include the specific tax on interests upon obligations of the United States, therefore, said specific tax can not serve as an exception to said deduction nor as part of the credit allowed by § 36. The exception is synonymous with credit, and an item can not be an exception of the total sum if that exception is not part of the total sum. Section 36 refers to other federal taxes different from the taxes on the interests in issue.

The case law supports the points of view which we have set forth. The *Hubbard v. United States* case *supra*, certiorari denied in 81 L. Ed. 873, dealt with §§ 213(*b*) and 222(*a*) of the Federal Income Tax Act of 1926, equivalent to our §§ 15 and 36, (although § 222(*a*) is applicable to individuals, but establishing the same proportional formula.) Section 213(*b*) excluded certain items from the gross income. The taxpayer received income from sources without the United States which was taxable in foreign country but not in the United States because it was excluded from the gross income by § 213(*b*) 14. However, he alleged that he should be allowed a credit for said tax paid outside the United States, under § 222(*a*), which established the same formula as our § 36. The Court of Claims of the United States set aside the taxpayer's allegation and held the following:

"The primary design of the provisions carried in the various revenue acts permitting taxpayers to credit taxes paid or accrued to foreign countries during the taxable year against their domestic taxes was to mitigate the evils of double taxation. [Burnet v. Chicago Portrait Company, 285 U. S. 1, 52 S. Ct. 275, 76 L. Ed. 587](). Double taxation exists only when the same income is taxed both in the foreign country and in the United States. Plaintiff's salary in Great Britain on which a tax of $71,460.06 accrued to that country was exempt from taxation in the United States and constituted no part of the net income upon which his taxes in this country were computed. He paid taxes upon the salary in Great Britain alone; hence there is no case of double taxation presented. The Plaintiff, as we have seen has already been given the full credit he is entitled to receive in the way of credit against his domestic taxes of foreign taxes paid or accrued to Great Britain on all income arising in that country upon which taxes were also imposed in this country . . . . The plaintiff is not entitled to recover . . ."[2]

The same opinion above copied is substantially followed in [Carstairs v. United States, 75 F. Supp. 683](). In [United States v. Rogers, 122 F. 2d 485](), it is held that if there has been no income without the United States, the proportion established in an analogous Section to our Section 36 is not applicable, inasmuch as in the absence of any numerator to be used in determining the formula of the proportion, the numerator would be "zero" and the result would also be "zero." See also, to that effect, [Hugh C. Wallace, 17 B.T.A. 406](). The same "ratio-decidendi" is applicable if the numerator does not include any item of foreign income because said income is not net income since it is not part of the gross income.

In [L. Helena Wilson, 7 Tax Court 1469](), petitioner paid income tax in Canada on $20,000. Said income was not taxable under the Federal Act. It was held that she was not entitled to a credit for the tax paid in Canada against the tax to be paid in the United States, not being entitled to the credit allowed by § 131(*a*), analogous to our § 36. It was stated that a construction of the Canadian government in the sense that the tax was payable under the Federal Act, was not binding on the Courts of the United States and [Biddle v. Commissioner, 302 U. S. 573]() is cited where it was

---

[2] Despite subsequent amendments in the federal act, the *Hubbard* case is still accepted as a precedent by the Federal Income Tax Office. (Mertens, Federal Income Taxation, Vol. 5, 1952 Supp., § 33.07, p. 415.)

held that the tax imposed by the foreign country must be a tax on incomes as that term is used and understood in the federal statutes. In the afore-cited case of *L. Helena Wilson* the following is stated at p. 1472:

"In the case at bar the tax paid by the petitioner on the $20,000, although called an 'income tax' in the Dominion of Canada, was not such a tax in the United States. The petitioner has not brought herself within the statutory provision on which she relies and the strict construction thereof. Consequently, no credit here may be allowed to her under the provisions of § 131 (*a*) (3). *New Colonial Ice Co. v. Helvering,* 292 U. S. 435; *United States v. Stewart,* 311 U. S. 60; *United States Trust Co. of New York v. Helvering,* 307 U. S. 57.

"It is almost superfluous for us to add that § 131 was enacted to prevent the double taxation of the same income in a foreign country and in the United States. *Hubbard v. United States,* 17 Fed. Supp. 93; certiorari denied, 300 U. S. 666. In the very nature of the facts before us, there is no double taxation. The contrary appears. There was only a single taxation on the item in controversy, and that was imposed by the Dominion of Canada. If the petitioner should prevail and credit be allowed, she would escape the full taxation to which she is subject in this country upon that portion of her income which is taxable in both countries.[3] Certainly that result is not contemplated by the statute."

In *American Chicle Co. v. U. S., supra*, discussed in 29 Va.L.Rev. 120, it is held by the Supreme Court of the United States that only that part of the foreign tax which refers to taxable income under the Federal Government may be credited under § 131, which is analogous to our § 36, inasmuch as only that portion thus taxable in both countries is the one which gives rise to a double taxation.

[4-7] The taxpayer's essential allegation is to the effect that, notwithstanding the provisions in the Sections which we have discussed, during the period of time relevant herein, there were other Sections of the Act (18 and 34) which allowed the taxpayer to include the tax upon the interests involved herein in its gross income and, therefore, in its net income, the taxpayer having the option of including or not including, in its income tax return, such income as interest in its gross or net income, and that, should said option be exercised in the sense of including the income, then the formula established by § 36 was applicable since such interests would be part of the net income. Let us see.

As we have already stated, § 15 states that the term "gross income" does not include income with respect to interests upon the obligation of the United States. Section 31, applicable to corporations, adopts the definition of "gross income" fixed by § 15. Section 18 invoked by the taxpayer as it read before being amended by Act No. 209 of 1949, provided, in part, the following:

"Section 18.—For the purpose of the normal tax only there shall be allowed the following credits:

. . . .

"(*b*) The amount received as interest upon obligations of the United States, the obligations of The People of Porto Rico or of any political subdivision thereof, *which is included in gross income under section 15*." (Italics ours.)

Section 34, applicable to corporations and especially invoked by the taxpayer, provided, in part, before being amended by Act 208 of 1949, the following:

"Section 34.—For the purpose only of the tax imposed by § 28 there shall be allowed the following credits:

"(*a*) The amount received as interest upon

---

[3] This means, evidently, that if in the formula set forth in § 36, to the income clearly taxable in both countries is added in the numerator pertaining to the income of foreign sources, the income not subject to taxation in Puerto Rico, the credit would be greater, and the total tax over the taxable income would be lesser.

obligations of the United States, any political subdivision thereof, upon the obligations of The People of Porto Rico, or any political subdivision thereof, *which is included in gross income under section 31*." (Italics ours. It implies the gross income defined in § 15.)

There is an obvious conflict between § 34, as it previously read, and §§ 15 and 31. Section 34 is literally wrong, since it recognizes as credit the tax upon such interest which, according to § 34 are included in the gross income by virtue of § 31 (that is, § 15). As a matter of fact, those interests are not only not included in the gross income under §§ 15 and 31, but they are expressly and categorically excluded from the gross income by those Sections. Section 34 grants the credit on the basis of the express provision that those interests be included in the gross income under §§15 and 31. Said provision is false and nonexistent and, therefore, the basis of the credit disappears.

The problem which may cause anxiety in the judicial conscience refers to the question of which should be the function of a court in a situation as the one presented herein, in which there is, either a literal conflict between two Sections, or a clearly equivocal reference in one Section to another. The mission of a judge is not, nor should it be, that of substituting his personal will for that of the legislator. As stated by Justice John Marshall in one of his opinions classified as "magisterial or imperative, [with] organ tones . . . . meant to fill cathedrals" (Cardozo, "Law and Literature" cited in 52 Harv. L. Rev. 475):

"Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the legislature; or in other words, to the will of the law."

But Justice Marshall himself stated in *Marbury v. Madison,* 5 U. S. 137, that when two laws are in conflict the courts should determine which of the conflicting rules should prevail, this being "of the very essence of judicial duty." Our fundamental obligation, in those cases, is that of imparting effectiveness to the legislative intent, even up to the point of substituting or judicially eliminating some specific statutory phrase which, with meridian clarity has been incorporated in a statute through inadvertence or error, up to the point that said phrase obviously defeats the legislative intent which appears from the Act, as a whole, since, in those cases, the manifest intention of the legislator should prevail over the literal provision of the statute which may be in conflict with that intention. Sutherland, Statutory Construction, Vol. 2, § 4926, p. 462, 3d ed. As stated in said text at p. 463:

"As in all other cases, words may be eliminated only when such action is consistent with the legislative intent. Courts permit the elimination of words for one or more of the following reasons: where the word is found in the statute due to the inadvertence of the legislature or reviser, or where it is necessary to give the act meaning, effect or intelligibility, or where it is apparent from the context of the act that the word is surplusage, or where the maintenance of the world would lead to an absurdity or irrationality, or where the use of the word was a mere inaccuracy, or clearly apparent mishap, or was obviously erroneously inserted, or where the use of the word is the result of a typographical or clerical error, or where it is necessary to avoid inconsistencies and to make the provisions of the act harmonize, or where the words of the statute fail to have any useful purpose or are entirely foreign to the subject matter of the enactment, . . ."

In 50 Am. Jur. 369 the following is stated:

"Although the courts cannot add to, take from, or change the language of a statute to give effect to any supposed intention of the legislature, words and phrases may be altered and supplied when that is necessary to obviate repugnancy and inconsistency and to give effect to the manifest intention of the legislature. The legislative intention will prevail over the literal import of particular terms, and will control the strict letter of the statute, where an adherence to such strict letter would lead to

contradictory provisions. It is where a contradiction or inconsistency does not arise that the general rules against a departure from the literal meaning of a statute, . . . . are applicable.

". . . Moreover, particular statutes or sections may present such an inconsistency as cannot be reconciled or harmonized.

". . . . *It is obvious that effect cannot be given to all the provisions of a statute where some of them are inconsistent and irreconcilable*. In such case, as in other cases, a construction is sought which would give effect to the purpose of the statute and the intention of the legislature." (Italics ours.)

The part which we have cited of §§ 15 and 31, on the one hand, and of § 34, on the other hand, can not coexist. They are inconsistent, incompatible and mutually antagonistic. Sections 15 and 31 expressly and specifically exclude the interests in question from the gross income. Section 34 states, actually, that §§ 15 and 31 include said interest in the gross income. In this case we must adopt the legal postulate that when in one of the Sections of an Act there is an absolute principle which expressly makes an exclusion, and in another Section of that same Act reference is made mistakenly to the first Section as containing a principle of inclusion, the express exclusion must prevail over the incorrect reference. As a whole, the manifest legislative intent in the case at bar was that of providing that the interests upon obligations of the United States are not part of the gross income. This is implicitly proved by the fact that our Legislative Assembly, under Acts 208 and 209 of 1949, amended §§ 34 and 18 eliminating the credit as to taxes upon such interests, eliminating also the mistaken references to §§ 15 and 31. The argument to the effect that said repeal implied an acknowledgment of the previous legal effectiveness of the repealed provisions is not in order herein, from the point of view that the legislature considered it necessary to repeal them. Contrariwise, it is a better argument to say that it was the legislative intent, upon repealing the provisions, to amend or eliminate a provision which was legally unnecessary, superfluous and ineffective.

It could be alleged that the judicial function should be limited to striking from § 34 the reference made of the gross income included in § 31, and therefore, in § 15, leaving the credit extant. The courts should avoid any construction of a statute that may lead to an unreasonable and absurd result. *Lozada v. Antonio Roig, Sucrs.*, 73 P.R.R. 255; *Orta v. Registrar*, 60 P.R.R. 768, 772, 773; *People v. Mantilla*, 71 P.R.R. 35. It would be unreasonable and absurd to leave extant a provision which recognizes a credit based on certain income, and at the same time to hold that said income may not be a part of the gross or net income. If a certain item does not form part of the net or gross income, that is, if it can not be computed for the purposes of fixing the tax, it is unnecessary to establish a credit on the basis of that same item.

The provisions of §§ 34 and 18 whose legal ineffectiveness we have pointed out were approved by virtue of a legislative inadvertence, manifested through a mistaken transplantation of the Federal Income Tax Act. Let us pass on to examine the federal legislative history of the Sections involved herein. Seidman, *Legislative History of Federal Income Tax Laws*.

Section 4 of the Federal Act of 1916, just like our § 15, provided for the exemption of the gross income, in an absolute way, from the interest upon obligations of the United States. But said Act did not establish the credit which now appears in our §§ 18 and 34, obviously for the same reasons which we have set forth in this opinion. However, in the Act of 1917 § 1200 had already been approved, wherein said interests were exempted, but not absolutely, since it was provided that as to obligations upon the United States issued or created after September 1, 1917 such interests were exempted only if the specific law authorizing the creation or issuance of some of those obligations expressly established the exemptions. That is, there were certain types of interests included in the gross income and others that were not, according to the provisions of each particular act which had referred

to any specific type of obligation. With slight variations, said § 1200 was incorporated into the Federal Acts of 1918, 1921, 1924 and 1926. However, the Act of 1918 approved §§ 216(*b*) and 236(*a*) which correspond to our §§ 18 and 34, and which granted a credit for "the amount received as interests upon obligations of the United States which are included in the gross income under §§ 213."

The same provision was reproduced in the Acts of 1921, 1924 and 1926.

When our Income Tax Act was approved (No. 74 of 1925), following, considerably, the language of its prototype, the Federal Income Tax Act of 1924 (*Rubert v. Tax Court and Treas., ante*, p. 48; *Behn v. Domenech, Treas.*, 49 P.R.R. 790, 792), §§ 15 and 31 established the absolute exemption of said interests, but §§ 216(*b*) and 236(*a*) of the Federal Act were also added to §§ 18 and 34, notwithstanding the fact that said Sections of the Federal Act were congruent with § 213(*b*) of the same Act, since under this last Section some types of interests were included in the gross income, but were not congruent or compatible with our §§ 15 and 31, which do not include any type of interest in the gross income. In other words, §§ 216(*b*) and 236(*a*) of the Federal Act referred to those interests which were included in the gross income under any particular federal act which created any kind of obligation of the federal government, under the general authority vested by § 213(*b*) (4). But said situation is not possible under our §§ 15 and 31, which exempt all kinds of interests upon said obligations, independently of the provisions of any special federal act.

[8-10] The taxpayer alleges that the refusal of the credit requested is contrary to Regulation No. 1 of the Income Tax and to the administrative practice established by the Treasurer of Puerto Rico as to this particular. Section 279 of the Regulations was approved for the purpose of applying § 34 specifically, and, practically repeats what § 34 sets forth. Section 280 points out the proportional formula which we have already set forth.

This Court has decided that in case that a provision of law is ambiguous, the administrative practice is important, serving as an effective aid in the construction of a statute. *Pyramid Products v. Buscaglia, Treas.*, 64 P.R.R. 788; *Puerto Rico Ilustrado v. Buscaglia, Treas.*, 64 P.R.R. 914. But when a statute is clear no interested party can take refuge in the administrative interpretation or regulation to the contrary, and an administrative interpretation or regulation which is in conflict with the explicit terms of a statute, cannot stand. *Chabrán v. Bull Insular Line*, 69 P.R.R. 250, 256; *Colón v. Tugwell, Governor*, 65 P.R.R. 869, 872. The Supreme Court of the United States has held that if an interpretation, in a specific case, of an administrative officer or government agent is contrary to the law or to a statute, it is not binding for the government nor may it be invoked by an individual or a taxpayer, even if he has acted and has changed his position on the basis of the officer's interpretation. *Federal Crop. Ins. Corp. v. Merrill, 332 U. S. 380*. In cases of taxes, the doctrine of estoppel against the government is not generally applicable, that is, if a legal principle is the one which should prevail, the government is not necessarily prevented from invoking it because of the fact that an officer has given an interpretation which is contrary to that principle, even if an individual has acted on the basis of that interpretation. 7 Tax Law Review 71,0 79: "*The Doctrine of Estoppel in Tax Cases*", and cases cited therein. Justice Holmes' aphorism to the effect that, men must turn square corners when they deal with the government, has been followed. *Rock Island, Arkansas & Louisiana Railroad Co. v. United States, 254 U. S. 141, 143*. The principle which states that the government cannot be estopped by the acts of its agents has been criticized. 53 Col. L. Rev. 374, issue of March 1953: "*Should Official Advice be Reliable?—Proposals as to Estoppel and Related Doctrines in Administrative Law*." It has been stated that the government should also be held to a like standard of rectangular rectitude (48 Harv. L. Rev. 1281, 1299, "*Hobson's Choice, and Similar Practices in Federal Taxation*"), and that square corners should not constitute a one-way street.

(Dissenting opinion of Mr. Justice Jackson in *Federal Crop Ins. Co. v. Merrill, supra,* p. 387, 388). But it is not the case of private relationships between two persons, which are the only ones affected by the application of the estoppel doctrine. The actions of an administrative official may affect the entire community, and said actions should not, generally, bind the government, if a law or a clear legal principle is violated. The contrary would turn the official into a legislator and a judge.

The case at bar is not the case of ambiguity in the statutes. A former Treasurer took measures, in the Regulations, to apply Sections which form a literal part of the law. The legislature's inadvertence in approving conflicting provisions led to the Treasurer's inadvertence to reproduce in the Regulations that inadvertence and that conflict. The incorrect administrative action was a sequel of the incorrect legislative action. To add an incorrect administrative provision to a legislative provision also incorrect should not produce a correct result. If the Sections in issue were legally ineffective, the administrative actions must also be ineffective.

In *Buscaglia v. Liggett & Myers Tobacco Co.,* 149 F. 2d 493, 496, it is stated, that under certain circumstances, a Treasurer would have no power to revoke a regulation retroactively or an administrative practice established by him. However, said opinion is not applicable to the attendant circumstances, as already set forth.

Incidentally this Court has determined that when there is an irreconcilable conflict between two parts or Sections of a law, the provision which is last in order of position will prevail. *Domenech, Treas. v. District Court*, 48 P.R.R. 527; *People v. Padilla*, 56 P.R.R. 138. Said principle must not be considered as absolute inasmuch as, even if a Section of a statute is last in the order of position it should not prevail, if it defeats true legislative intent. If the Section which precedes conforms to the intent, policy or manifest purpose of the lawmakers said Section must prevail over inconsistent provisions in a later Section which do not conform to this policy and intention. 50 Am. Jur. 370; *Smith v. Board of Trustees,* 198 Cal. 301.

This Court should render judgment reversing the decision of the Supreme Court and dismissing the complaint filed by the taxpayer appellee.

Mr. Justice Sifre did not take part in the decision of this case.

**Table1** ([Return to related document text](#))

**Table1** ([Return to related document text](#))

**Table2** ([Return to related document text](#))

**Table2** ([Return to related document text](#))

**End of Document**