# **EXHIBIT D**

# **EXHIBIT 38**

April 14, 2020

**VIA E-MAIL**

| | |
|---|---|
| Gaspard Rappoport | John Hughes, III |
| Kelly DiBlasi | Atara Miller |
| Gabriel Morgan | Grant Mainland |
| Gregory Silbert | MILBANK LLP |
| Reed Collins | 55 Hudson Yards |
| WEIL, GOTSHAL & MANGES LLP | New York, New York 10001 |
| 767 Fifth Avenue | |
| New York, New York 10153 | |
| | |
| Howard Hawkins | Jason Callen |
| Mark Ellenberg | Martin Sosland |
| William Natbony | BUTLER SNOW LLP |
| Casey Servais | 5430 Lyndon B. Johnson Freeway, Suite 1200 |
| CADWALADER, WICKERSHAM & TAFT LLP | Dallas, Texas 75240 |
| 200 Liberty Street | 1530 3rd Avenue South, Suite 1600 |
| New York, New York 10281 | Nashville, Tennessee 37201 |

**Re:** *In re Fin. Oversight & Mgmt. Bd., No. 17-BK-3283-LTS – Discovery on Lift Stay Motions – Movants' Letter Dated April 12, 2020*

Counsel:

We write in response to issues raised in your letters dated March 30, 2020 ("March 30, 2020 Letter") and April 12, 2020 ("April 12, 2020 Letter"). The Government Parties have complied with their discovery obligations. No further production is required. Our responses to your specific requests are set forth below.

**I.      General Ledger Requests**

On the evening of Sunday, April 12, 2020 Movants demanded for the first time that AAFAF produce "any transaction, transfer, or transmittal records showing the internal financial reporting of or controls over transactions on the Commonwealth's books and records, including the relevant portions of the chart of accounts for the Commonwealth identifying and describing or defining specific accounts and funds ("Chart of Accounts") (or the data on any internal accounts or funds related to HTA pledged revenues or the Rum Taxes)." *See* April 12, 2020 Letter at 2 (defining these materials as "internal accounting records" or the "general ledger" documents). This request is beyond the scope of permissible discovery, untimely, and entirely inconsistent with the parties' discussions over the past two months.

While Movants suggest that they requested these materials from the beginning, this is demonstrably untrue. As your April 12, 2020 Letter notes, Movants' initial informal requests sought "documents sufficient to show . . .all *transmittal information* associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information" (emphasis added). *See* Dkt. No. 11687-2 (Chart on Lift Stay Motions), CCDA

Request No. 1(g), PRIFA Request No. 1(g), HTA Requests Nos. 1(g) and 2(g))) (the "Transfer Information Requests."). Movants' attempt to recast the Transfer Information Requests as calling for the production of the broad collection of materials Movants have defined as "internal accounting records" or "general ledger" documents does not change the fact that Movants' original requests did not call for the production of "documents describing or defining specific accounts and funds" or "internal financing reporting of or controls over transactions on the Commonwealth's books and records."

But even if the Transfer Information Requests called for the extensive internal accounting materials Movants now seek (and they do not), Judge Dein's March 5, 2020 Order does not compel their production.

As your letter acknowledges, AAFAF objected to producing the Transfer Information Requests from the beginning. *See* April 12, 2020 Letter at 2-3. The March 5, 2020 Order memorialized that the Government Parties "have agreed to produce," among other things, with respect to PRIFA and CCDA "transmittal information concerning transfers of pledged revenues" and "documents showing any sub-accounts or other designation used to track Rum Taxes in the Commonwealth Treasury Single Account," and with respect to HTA "transmittal information, such as payment vouchers and transfer activity reports for the period July 2016 to the present."

Movants' requests at the time did not refer to internal accounting materials or general ledger documents because no such request has been made. The exhibit Movants attached to their motion to compel, which compiled all initial requests and follow up requests as of February 24, 2020, makes no mention of a "Chart of Accounts" or "internal financial reporting of or controls over" the revenues at issue. *See* Dkt. No. 11678-2.

Movants' statements at the March 5, 2020 hearing also show that Movants cannot shoehorn the internal accounting materials, including general ledger documents, into the phrase "transmittal information." At the hearing, in response to a question from Judge Dein to explain the meaning of "transmittal information," Grant Mainland, counsel for Ambac explained:

> Transmittal information is really trying to deal with a situation where you look at an account statement and you see that money went from point A to point B, but often, these are accompanied by transmittal memoranda or what they've been referring to as disbursement detail. That would provide more details as to the nature of the transfer that's occurring.

March 4, 2020 Hrg. Tr. at 244:8-14. Remarks of Bill Natbony, counsel for Assured, also evidence the Movants used "transmittal information" to refer to vouchers and transmittal letters, which AAFAF has produced. Responding to counsel for Ambac's suggestion that production of exemplar transmittal information may be appropriate, counsel for Assured stated "I don't really think it's appropriate to have them pick and choose which one of these transmittal slips they're going to send . . ." *Id.* at 247:17-19. Rob Berezin, counsel for National interjected to explain that "AAFAF has already produced withdrawal vouchers and transfer activity reports for year 2015 and part of 2106 that were very helpful and informative. And if they would just produce *the same types of documents* for the rest of 2016 through present, I think that would go a long way on this issue of transmittal information." *Id.* at 248:7-14 (emphasis added).

Liz McKeen, counsel for AAFAF, explained that "AAFAF has agreed to produce direction letters, wiring instructions, and other similar content that exists in the files associated with the transfers.

The only thing we have refused to do is investigate the details of every single transfer reflected in five years' worth of statements. We're not going to go behind each transfer and accumulate more information. But to the extent we're finding documents like the ones Mr. Berezin just described, we're producing them." *Id.* 248:20-25. Counsel for AAFAF further noted "I want to make clear we're not doing what request number two asks of us" to investigate and compile additional information on a per-transaction basis. *Id.* 251:12-13.

Judge Dein's March 5, 2020 Order memorializing the Parties' agreement does not compel AAFAF to produce the broad collection of materials Movants requested for the first time on April 12, 2020. This is particularly evident given Judge Dein specifically warned at the hearing on Movants' motions that "I think you are entitled to discovery on understanding the flow in general, but that's not a specific -- you don't have time, nor do I think it's efficient, to be questioning each and every transaction over the last four years." *Id.* 245:6-10.

AAFAF has produced the direction letters, wiring instructions, and other similar content that exists in the files associated with the transfers at issue, just as it agreed to. It has also produced account opening materials and account statements that held the revenues at issue from 2015 onward for CCDA and HTA, and from 2014 onward for PRIFA. It has also prepared an analysis that illustrates the general flow of funds to aid the Monolines' understanding of those documents. These documents are more than sufficient given the scope of the issues for the May 13, 2020 hearing and in light of the discovery ordered by the Court, which was limited in nature.

## II.     Other Document Requests

### A.     Flow of Funds for Act 30 and Act 31 revenues

Movants have requested a flow of funds and accounting records for Act 30 and 31 revenues. This is beyond the scope of permissible discovery because revenues transferred to HTA under Act 30 and Act 31 were not allocated to pay debt service on the HTA Bonds. These revenues, allocated to HTA for the first time in 2013, post-date HTA's bond issuances and were never subsequently allocated to pay debt service on 1968 and 1998 Bonds. In fact, the Assignment and Security Agreement dated August 28, 2013 between the Puerto Rico Highways and Transportation Authority and the Government Development Bank for Puerto Rico states that HTA "absolutely, irrevocably and unconditionally assigns, conveys and transfers without recourse, to [GDB], and [GDB] hereby accepts and assumes without recourse all of [HTA's] rights, title, obligations and interest in the revenues allocated in favor of [HTA] by Acts No. 30-2013 & 31-2013 approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013. *See* ECF No. 7643-23 ¶ 1.1.[1] Moreover, Act 30 and 31 revenues were not used for repayment of the HTA Bonds. *See* HTA_STAY0007983 (listing motor vehicle license fees, additional petroleum tax and cigarette taxes allocated under Act 30 and Act 31 as "Other Non Pledge Revenues", distinct from "1968 Resolution Revenues" and "1998 Resolution Revenues").

Accordingly, the flow of funds for these revenues is beyond the scope of permissible discovery

---

[1] Nothing in this letter should be construed as an admission with respect to the scope, validity, or perfection of the security interested granted to the GDB, if any.

in litigation concerning the 1968 and 1998 Bonds. Notwithstanding, in the spirit of compromise, at Movants' request, AAFAF produced the account statements and opening materials for the accounts Movants identified as holding those revenues. That was not, however, a concession of relevance.

AAFAF has provided a flow of funds analysis for the revenues that were used for repayment of the 1968 and 1998 Bonds. AAFAF will not undertake the task of preparing a flow of funds analysis for revenues that are beyond the scope of the issues before the Court.

### B. PRIFA Disbursement Detail Memoranda

AAFAF produced all disbursement detail memoranda that were located in the Government's files following a reasonably diligent search. AAFAF also requested that Citibank provide all of the following information regarding account no. ████9028 (the "Lockbox Account"): (i) all account opening documents; (ii) all account statements from January 2014 to the present; (iii) all transfer memoranda, wiring instructions, disbursement detail, directional letters, or other documents from any government entity which includes any instruction or makes reference to transfers to or from the Citibank account; and (iv) any other document that may be related to the aforementioned. AAFAF has produced all materials it received from Citibank in response to this request.

### C. Additional TSA Cash Flow Reporting

As an accommodation to Movants, on February 25, 2020, AAFAF reproduced the historical TSA cash flow reports it had already produced to Movants in 2018 in response to Rule 2004 requests. Prior to that production, we advised in a telephonic meet and confer that these reports did not date back to 2015. (In connection with Rule 2004 discovery requests, we advised on November 30, 2018 that the weekly TSA cash flow reports only go back to March 31, 2017. *See* Nov. 30, 2018 Letter at 4, at n. 15). Movants' latest requests for additional cash flow documents that may exist in Treasury's files is untimely and beyond the scope of discovery, particularly given that AAFAF has produced account statements for the TSA operational account.

In the spirit of compromise, AAFAF will reproduce what was produced in connection with Rule 2004 requests — an excel workbook with the TSA year-to-date historic balances for fiscal years 2013 through 2018, which was produced on June 21, 2018 in connection with certain Monolines' Rule 2004 proceeding (*see* CW_RJM2004_0006665 - CW_RJM2004_0006765).

### D. CCDA Request No. 1

Additional BNYM Statements

We have reviewed our transmittal records and confirmed that we produced all account statements that were provided to us by BNYM.

4

Firstbank Account Number ▬▬3039.

As evidenced by the relevant account opening documents produced on March 16, 2020, the Puerto Rico Tourism Company opened its FirstBank account number ▬▬3039 on December 30, 2015. See CCDA_STAY0006787 - CCDA_STAY0006798, CCDA_STAY0006800 - CCDA_STAY0006805.

All account statements from January 2016 to February 2020 for FirstBank account number ▬▬3039 were produced on March 15, 2020. See CCDA_STAY0004045 - CCDA_STAY0004146.

FirstBank Account number ▬▬3961.

The Government Parties' April 7 Letter identified only one account at FirstBank entitled "Debt Service Reserve," — account number ▬▬3961. Notwithstanding that FirstBank's records sometimes reflect 0* or 1* prior to the account number, it is the same account. We urge you to review the relevant account statements (see CCDA_STAY0013926 - CCDA_STAY0014039), which demonstrate a month by month reconciliation of beginning and ending balances regardless of whether the statement contains a 0* or 1*.

Additional Materials Relating to a Transfer from the GDB Room Tax Concentration Account

Movants requested additional information as to the transfer details of a transaction involving the GDB Room Tax-Concentration (A/C No. ▬▬9758) that was identified as "▬▬2083 TRF FROM IBA." After conducting a diligent search and consulting with the Puerto Rico Tourism Company, AAFAF has not located information pertaining to the transaction identified as "▬▬2083 TRF FROM IBA." AAFAF used reasonable efforts to locate information related to this transaction and it was not able to locate such information.

Citibank Account Used for Transfers to US Bank

In your March 30, 2020 Letter, you requested account opening materials and monthly statements "for the Citibank account that was used to transfer debt service payments between GDB Account No. ▬▬1891 and U.S. Bank Account No. ▬▬0-002."

As you are aware, the account statements for GDB -1891 show funds transferred directly to U.S. Bank. Conversely, the U.S. Bank statements AAFAF produced show receipt of the corresponding funds on the same day. Based on our investigation, the note in the U.S. Bank statements that the funds were "Rec'd From Citibank" does not reflect an additional deposit account in the flow of funds for the first $117 million of Rum Taxes.

In the ordinary course of its banking operations, GDB used third-party banks, including Citibank, to effectuate transfers directed by GDB's accountholders. These transfers include, but are not limited to, the transfers reflected in the flow of funds summaries we provided. It is our understanding that U.S. Bank made the determination to reflect the funds in its records as having been received from Citibank.

5

Discovery into the cash management procedures and operations of GDB and the private banks at which the accounts into which the relevant funds flowed were kept is beyond the scope of the Lift Stay Motions.

### III. CCDA Flow of Funds

Finally, we are providing a revised CCDA flow of funds presentation concurrently with this letter. This document is not intended to replace sworn deposition testimony and reflects our understanding of the documents our clients have produced in these proceedings; the documents themselves control. This version adds a commingled designation to GDB account nos. -0006, -6048 on slide 2 and BPPR account no -9458 on slide 8, which is consistent with the PRIFA and HTA flow of funds presentations. We reserve the right to modify or amend these documents to the extent necessary.

* * *

The Government Parties are available to meet and confer regarding the above matters.

Sincerely,

/s/ *Elizabeth L. McKeen*  /s/ *Michael Mervis*

Elizabeth L. McKeen  Michael Mervis

6

Attachment

# Puerto Rico Tourism Company ("Tourism")
*Room Taxes Flow of Funds*

This presentation is intended to illustrate the flow of room tax revenues from January 2015 to present. In doing so, the illustrations do not show all inflows and outflows from each account presented in cases where retained revenues are comingled with other funds in the same bank account.

4/14/2020

## January 2015 – November 2015



**Footnotes:**

⭐ Account contains comingled funds (room taxes and others).

4/14/2020

## December 2015 – March 2016



**Footnotes:**

✦ Account contains comingled funds (room taxes and others).

1 Transfers from GDB -0006 to fund GO debt service payment in Jan. 2016 included comingled room tax receipts with proceeds from other retained revenues.

4/14/2020

# April 2016



4/14/2020

# May 2016 – July 2016



**Footnotes:**

✦ Account contains comingled funds (room taxes and others).

4/14/2020

## August 2016 – February 2017



**Footnotes:**

✦ Account contains comingled funds (room taxes and others).

4/14/2020

## March 2017 – January 2018



**Footnotes:**

✦ Account contains comingled funds (room taxes and others).

4/14/2020

## February 2018 – Present



**Footnotes:**

⭐ Account contains comingled funds (room taxes and others).

▶ Denotes a discrete, one-time transfer

4/14/2020