**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF Nos. 12516, 12527, 12676, 12948**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

**OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO
MOTION REQUESTING TO UNPARALYZE FOR BECOME IN KNOWLEDGE
IN THE FILE THAT THE COMMONWEALTH OF PUERTO RICO
WAS NOT SUMMON IN THIS CASE FILED BY ELIEZER SANTANA-BÁEZ**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ……………………………………….  1

OBJECTION …………………………………………………………  5

    I.    MOVANT HAS FAILED TO ESTABLISH THAT CAUSE EXISTS TO MODIFY THE AUTOMATIC STAY ……………………….  5

CONCLUSION ………………………………………………………  15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
    217 F. Supp. 3d 508, 518 (D.P.R. 2016) ........................................................................... 7, 8

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
    369 B.R. 87, 94-95 (D.P.R. 2007) ........................................................................................ 7

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
    28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) .......................................................................... 11

*Delpit v. Commissioner*,
    18 F.3d 768 (9th Cir. 1994) ................................................................................................ 6

*Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. Of PREPA Bondholders (In re Fin. Oversight &
Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ................................................................................ 7

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
    2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006 ........................................ 11

*In re 234-6 West 22nd St. Corp.*,
    214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) ........................................................................ 6

*In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977) ...................................... 8

*In re BFW Liquidation, LLC*, No. 09-00634-BGC-11,
    2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ............................................ 10

*In re City of Stockton*,
    484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) ..................................................................... 12

*In re Cummings*,
    221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) ....................................................................... 9

*In re Gatke Corp.*, 117 B.R. 406, 410
117 B.R. 406, 410 (Bankr. N.D. Ala. 2013)) ............................................................................... 13

*In re Jefferson Cnty.*,
    491 B.R. 277, 285 (Bankr. N.D. Ala. 2013)) ...................................................................... 6

*In re Motors Liquidation Co.*,
    No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) .............................................. 12

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Mu'min*,
    374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) ........................................................................ 8

*In re Murrin*,
    477 B.R. 99, 109 (D. Minn. 2012) .................................................................................... 9

*In re Northwest Airlines Corp.*
    2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ..................................10,11,14

*In re Residential Capital, LLC* 2012 WL 3860586,
    2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) ..................................10,11,14

*In re Taub*,
    413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) .......................................................................... 9

*In re Unanue-Casal*,
    159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ........................... 6, 7

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
    362 B.R. 49, 56 (B.A.P. 1st Cir. 2007 ............................................................................... 6

*Matter of Garofalo's Finer Foods, Inc.*,
    186 B.R. 414, 435 (Bankr. N.D. Ill. 1995) ...................................................................... 10

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
    474 U.S. 494, 503 (1986) .................................................................................................. 5

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
    537 B.R. 128, 140 (Bankr. D.P.R. 2015 ............................................................................ 5

*Peaje Invs. LLC v. Garcia-Padilla*,
    2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016) ......................................... 7

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
    980 F.2d 110, 117 (2d Cir. 1992) ...................................................................................... 9

*Soares v. Brockton Credit Union (In re Soares)*
    107 F. 3d 969, 975 (1st Cir. 1997) .................................................................................... 5

*Sonnax Indus. v. TriComponent Prods. Corp. (In re Sonnax Indus.)*,
    907 F.2d 1280, 1286 (2d Cir. 1990) ........................................................................... 3, 6, 7

*Unisys Corp. v. Dataware Prods., Inc.*,
    848 F.2d 311, 313 (1st Cir. 1988) ..................................................................................... 6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Union Bank v. Wolas,* 502 U.S. 151, 161 (1991) ...............................................................................5

## **STATUTES**

11 U.S.C. § 362(a) ..........................................................................................................................1, 5
11 U.S.C. § 362 (d)(1) .......................................................................................................................4,6
PROMESA § 104 (j) ..........................................................................................................................2
PROMESA § 301(a) ..........................................................................................................................5, 6
PROMESA § 304(a) ..........................................................................................................................2
PROMESA § 315 (b) ..........................................................................................................................1

## **OTHER AUTHORITIES**

H.R. Rep. No. 95-595 (1977)............................................................................................................4

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion Requesting to Unparalyze for Become in Knowledge in the File that the Commonwealth of Puerto Rico Was Not Summon in this Case* [ECF No. 12516] (the "Motion") filed by Eliezer Santana-Báez ("Movant"), plaintiff in the case captioned *Eliezer Santana Báez v. Estado Libre Asociado de Puerto Rico et al,* Case No. D DP2016-0591 (the "Prepetition Action"), pending before the Puerto Rico Court of First Instance of Bayamón (the "Commonwealth Court"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

## PRELIMINARY STATEMENT

1. On September 16, 2016, Movant, as *pro se* litigant, commenced the Prepetition Action against the Commonwealth; Mr. César Miranda Rodríguez, former Secretary of Justice, in its personal and official capacity; the Puerto Rico Department of Correction and Rehabilitation ("DCH");[3] Mr. Einar Ramos López, former secretary of Corrections and Rehabilitation of Puerto Rico, in its personal and official capacity; the Medical Center Hospital (Hospital Centro Médico); Correctional Health Services; Ophthalmological Clinic Dr. Vázquez; and their respective insurance policies, for events that allegedly occurred before the commencement of the Commonwealth's Title III case on May 3, 2017 (the "Petition Date"). In the Prepetition Action, Movant seeks (a) damages stemming from alleged torts following medical treatment for an eye condition received by Movant and (b) compensation in the amount of $1,500,000.00.

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3] The DHC is an agency of the Commonwealth protected under Bankruptcy Code section 362(a), made applicable to this Title III case by PROMESA section 301(a).

1

2. On February 15, 2017, the Commonwealth filed a special appearance in the Prepetition Action requesting a copy of the complaint, without submitting itself to the jurisdiction of the Commonwealth Court.

3. On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof.

4. On June 6, 2017, the Commonwealth filed in the Prepetition Action a *Notice of Automatic Stay of Proceedings Pursuant to Commencement of Case Under Title III of PROMESA* requesting the Commonwealth Court to take notice of the automatic stay pursuant to the Commonwealth's Title III case applicable to the Prepetition Action. On July 17, 2017, the Commonwealth Court entered an order staying the Prepetition Action. As of today, the Commonwealth has not submitted itself to the jurisdiction of the Commonwealth Court with regards to the Prepetition Action.

5. On March 23, 2020, Movant filed the Motion seeking to lift the automatic stay to pursue his asserted claim in the Prepetition Action. *See* Motion ¶ 3.

6. On April 6, 2020, the Court entered the *Order Granting Urgent Motion of the Commonwealth of Puerto Rico for Order Adjourning Deadlines and Setting Preliminary hearing in Connection with Santana-Baez Lift Stay Motion* [ECF No. 12676] setting a preliminary hearing on the motion for April 22, 2020 to consider a briefing schedule for the Motion in light of the government lock-down during the COVID-19 pandemic and the Commonwealth's limited access to the case files for the Prepetition Action. *See Urgent Motion of the Commonwealth of Puerto*

2

*Rico for Order Adjourning Deadlines and Setting Preliminary Hearing in Connection with Santana-Baez Lift Stay Motion* [ECF No. 12675].

7. On April 22, 2020, a preliminary hearing was held in connection with the Motion during which, the deadline for the Commonwealth to respond the Motion was set for May 6, 2020 and Movant's reply deadline was set for May 27, 2020. *Order Scheduling Briefing of Santana-Baez Lift Stay Motion* [ECF No. 12948].

8. This is not Movant's first request before this Court to modify this exact same Prepetition Action. On May 29, 2019, Movant filed a *Motion in Request that Paralyzation be Lifted in the Case DDP2014-0673 and Others* [ECF No. 7140] where he sought relief from the stay from various actions, including the Prepetition Action. On June 27, 2019, this Court denied Movant's request through its *Memorandum Order Denying Eliezer Santana Baez's Motion for Relief from Automatic Stay (Docket Entry No. 7140)* (the "Denial Order") [ECF No. 7696]. In the Denial Order, this Court stated that Movant had:

> . . . failed to demonstrate that the Sonnax criteria weigh in his favor with respect to the continuation of the Litigation or the Additional Actions [including the Prepetition Action]. Modification of the automatic stay would compel the Commonwealth to divert its limited resources to litigate Movant's numerous civil and appellate proceedings currently pending in the Commonwealth courts, put the Commonwealth in the position of having to make potentially disproportionate payments to an unsecured creditor, and disrupt the claims resolution process established by the Bankruptcy Code and incorporated into PROMESA by incentivizing other creditors to seek relief from the stay to obtain early, potentially disproportionate, payments. Movant's unsecured claims for monetary relief can instead be addressed through the centralized claims resolution process. Indeed, the preferential treatment of Movants' claims, even if smaller in amount than others filed in these proceedings, would prejudice the interests of other creditors by prioritizing Movant's claims and diverting the Commonwealth's resources at this stage of its restructuring proceedings. Although Movant contends that the Litigation is ready for trial, the Commonwealth has informed the Court that discovery has not yet commenced in seven of the

3

> Additional Actions [including the Prepetition Action] and further proffers that, in any event, necessary defense efforts in anticipation of trial preparation would be costly. Finally, Movant has not demonstrated that the harm from resolution of his claims through the claims process would outweigh the burden that would accrue to the Commonwealth or to its creditors by the continuation of the Litigation or the Additional Actions.
>
> Accordingly, the Court concludes that Movant has failed to sustain his burden of demonstrating that cause exists for relief from the automatic stay.

*See* Denial Order at 5. The Prepetition Action has remained stayed since that first request and should continue to remain stayed. Indeed, the same reasons included by this Court in the Denial Order to deny Movant's request to modify the Prepetition Action are present here, and Movant failed to show any change in circumstances that would warrant a different outcome.

9. As further explained below, the Motion should be denied once again, as Movant has failed to show that "cause" exists to lift or modify the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"). As a potential prepetition, unsecured litigation claimant, Movant has failed to demonstrate the extraordinary circumstances necessary to show why his potential claim should not be resolved through the claims resolution process undertaken in the Commonwealth's Title III case. Lifting the automatic stay to allow Movant to continue the prosecution of the Prepetition Action would cause the Commonwealth to expend resources to defend against such claim at a time when it is focusing on developing a path to emerge from its Title III case. Not only would significant resources be expended because the Prepetition Action is only at the initial stages, but lifting the automatic stay here could also incentivize other claimants with litigation in very early stages to flood the Debtors with requests to lift the stay. Furthermore, if the automatic stay were entirely lifted, Movant would receive unjustified preferential treatment of his potential prepetition, unsecured claim against the Commonwealth if

4

judgment in the Prepetition Action is entered in his favor, while the Commonwealth's other unsecured claims would be treated under the plan of adjustment.

## OBJECTION

### I. MOVANT HAS FAILED TO ESTABLISH THAT CAUSE EXISTS TO MODIFY THE AUTOMATIC STAY

10. Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by section 301(a) of PROMESA, provides for an automatic stay of certain actions by non-debtor third parties including, among other things, "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." 11 U.S.C. § 362(a). The application of Bankruptcy Code section 362(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543].

11. "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves one of the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's

5

ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)); *In re Jefferson Cnty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'"); *Delpit v. Commissioner*, 18 F.3d 768 (9th Cir. 1994) ("Congress intended to give debtors a breathing spell from their creditors and *to stop all collection efforts*, all harassment, and all foreclosure actions.") (internal quotes and citations omitted) (emphasis added).

12. An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

6

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.*, 907 F.2d at 1286.

13. Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in Sonnax and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

7

14. No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

15. Movant has not established that cause exists to lift the automatic stay. Indeed, since Movant does not even attempt to apply the *Sonnax* factors in the Motion, Movant's Motion fails to satisfy its heavy burden to establish cause. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause). Instead, Movant is merely seeking preferential treatment on his potential claim by seeking prosecution of the Prepetition Action, which would undermine the purpose of the automatic stay "to prevent interference with, or diminution of, the debtor's property." *In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977); *see also In re Mu'min*, 374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) (allowing creditors to get a "head start on collection [is] precisely what the Bankruptcy Code was designed to prevent so that creditors could share equally in the distribution of available assets."). The *Sonnax* factors point squarely toward maintaining the automatic stay and against the relief Movant seeks.

16. ***Sonnax* Factor 1:*** The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—weighs against modifying the automatic stay. The first *Sonnax* factor does not focus on the issues in the stayed litigation. If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the

8

separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"). Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See*, *e.g.*, *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

17. Here, Movant does not identify any bankruptcy issue related to the Title III case that would be resolved by allowing Movant to continue the prosecution of the Prepetition Action. Therefore, the first *Sonnax* factor supports denying the Motion.

18. **<u>*Sonnax* Factor 2</u>**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support modifying the stay. The Commonwealth would be required to devote resources to fully litigate the Prepetition Action and, in the event that the Movant prevailed therein, it would have to disburse funds to fulfill its obligations under any judgment, which would interfere with its Title III case and overall restructuring by diverting critical funds from its recovery efforts and payment of all similarly situated creditors pursuant to the plan of adjustment.

19. As a potential, prepetition, unsecured creditor of the Commonwealth, Movant's claim, like many other similar claims, is subject to the claims resolution process undertaken in the Title III case. Thus, requiring the Commonwealth to defend Movant's claims separately would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted);

9

*see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

20. Should every plaintiff with an asserted prepetition claim be given *carte blanche* to litigate and/or execute their claims, the combined result could have a substantial and negative impact on the Commonwealth's fiscal plan and budget. This would impede the restructuring process, and thus, should be avoided. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."). Thus, *Sonnax* factor 2 weighs in favor of denying the Motion.

21. ***Sonnax* Factor 4**: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. No specialized tribunal has been established to hear the Prepetition Action, which is pending before the Commonwealth Court. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

22. ***Sonnax* Factor 5**: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. While the Movant has asserted claims against the defendants' insurance policies in the Prepetition Action, no insurer of the Commonwealth has assumed any financial responsibility in connection with the Prepetition Action nor any eventual judgment therein, and Movant does not allege any facts to the contrary. Thus, *Sonnax* factor 5 does not support granting the Motion.

23. ***Sonnax* Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the prepetition action primarily involves third parties *rather than* the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

24. Here, the Prepetition Action does not involve primarily third parties. In addition to the Commonwealth[4] and DHC, an agency of the Commonwealth, the former Secretary of Justice and the former Secretary of Corrections and Rehabilitation of Puerto Rico are also defendants in the Prepetition Action. Movant fails to show how any non-debtor parties in the Prepetition Action are the *primary parties* to the action. In fact, the Commonwealth will be required to expend its own funds to defend and indemnify the officials Movant seeks to enforce his claims against. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate]."). Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion.

---

[4] Here, the Movant alleges that the Commonwealth is not a defendant in the Prepetition Action because it has not been summoned. *See* Motion ¶ 2. Nevertheless, the Commonwealth is a named defendant in the Prepetition Action and Movant's complaint asserts allegations and claims against the Commonwealth.

11

25. ***Sonnax* Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. The Commonwealth would have to expend considerable time and expense to litigate the Prepetition Action by appearing in the Prepetition Action, filing an answer to complaint or dispositive motions, conducting and finalizing discovery, attending pretrial hearings, preparing and filing the pretrial report, and litigating the ensuing trial. Furthermore, if Movant is also permitted to enforce any judgment, Movant would receive an unfair and undue advantage over other similarly situated creditors of the Commonwealth.

26. Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"); *see also In re City of Stockton*, 484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of the City treasury").

27. Here, the depletion of the Commonwealth's resources to defend against the Prepetition Action (and other potential actions, if similar claimants were incentivized to seek relief from the automatic stay if such relief were granted here), and the diversion of the Commonwealth's attention to proceed expeditiously through its Title III case would inure to the detriment of the

12

Commonwealth's other creditors. *See* *In re Gatke Corp.,* 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)). Accordingly, *Sonnax* factor 7 does not support granting the Motion.

28. ***Sonnax* Factors 10 and 11:** The interest of judicial economy and the expeditious and economical determination of the Prepetition Action, and whether the Prepetition Action has progressed to the point where parties are prepared for trial, also weigh against stay relief. As discussed above, the Prepetition Action is still in a preliminary stage. The Commonwealth has not even appeared in the Prepetition Action. As a result, nor had it filed an answer to the complaint or dispositive motion by the time the Prepetition Action was stayed. A myriad of proceedings necessary for the Prepetition Action to even be trial ready remain pending, such as the Commonwealth appearing in the case and submitting its response to the complaint, finalizing discovery, attending the pretrial hearing, and the preparation and filing of the pretrial report, all of which will require the Commonwealth to expend considerable time and expense. As such, the parties are far from ready for trial in the Prepetition Action, and granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues.

29. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.,* 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re Residential Capital, LLC*, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

30. ***Sonnax* Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. The procedural status of the Prepetition Action, the large number of pending lawsuits against the Commonwealth, the diversion of the Commonwealth's resources to defend Movant's claims, and the prejudice to the interests of other similarly situated creditors all weigh in favor of continuing the automatic stay. Lifting the stay here will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that should be addressed in the claims administration process.

31. On the other hand, postponing liquidation of the Movant's claims is a hardship that is shared with other creditors so the Commonwealth can focus on its restructuring and recovery efforts for the benefit of all creditors and would promote judicial economy. This Court denied Movant's requested relief to lift the automatic stay with respect to the Prepetition Action nearly a year ago, and Movant has failed to show any changed circumstances or additional hardship that would warrant a different outcome. *See* Denial Order. As is still the case, any claim Movant may

have can and should be dealt with during the Title III claims process, as any other creditor's claims. Given the stage of the Prepetition Action and this Title III case, there is no guaranty that the resolution of the Prepetition Action would come any sooner than the resolution of Movant's purported claims in the Title III case. Thus, on balance, *Sonnax* factor 12 weighs in favor of denying the Motion.[5]

## CONCLUSION

32. Movant has failed to establish cause to justify modifying the automatic stay in the Commonwealth's Title III case to allow the Prepetition Action to proceed. Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: May 6, 2020
      San Juan, Puerto Rico

Respectfully submitted,

**DENISSE N. LONGO-QUINONES**
Secretary of Justice

**WANDYMAR BURGOS VARGAS**
Deputy Secretary in Charge of
Litigation
Department of Justice

*s/Susana I. Peñagarícano-Brown*
**SUSANA PEÑAGARÍCANO BROWN**
Director of Legal Affairs
Federal Litigation and Bankruptcy Division
USDC NO. 219907
Puerto Rico Department of Justice
Federal Litigation Division
PO Box 9020192
San Juan, PR, 00902-0192
Tel. (787) 721-2900 Ext 1404
*Attorneys for the Commonwealth of Puerto Rico*

---

[5] The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

15