# EXHIBIT F

(S. B. 603)

### (No. 106-2017)

(Approved August 23, 2017)

# AN ACT

To    establish an "Act to Guarantee the Payment of Pension Benefits to our Retirees and to Establish a New Defined Contribution Plan for Public Employees," in order to restructure the Retirement System for Employees of the Government of Puerto Rico and the Teachers' Retirement System in accordance with the economic and fiscal reality of Puerto Rico and the provisions of the Fiscal Plan for Puerto Rico, certified pursuant to the provisions of Public Law 114-187, known as the Puerto Rico Oversight, Management, and Economic Stability Act or PROMESA; provide that the General Fund, through the 'pay as you go' system, assume the payments that the Retirement System for Employees of the Government of Puerto Rico, the Teachers' Retirement System, and the Judiciary Retirement System are unable to make; provide that the three Retirement Systems continue to comply with their obligations towards their beneficiaries and Retirees depositing into the General Fund, any available funds as well as any funds from the liquidation of assets; establish the New Defined Contributions Plan and provide for the administration thereof; create the Retirement Board, delegate powers and duties thereto; amend Section 2 of Act No. 12 of October 19, 1954, as amended, known as the "Judiciary Retirement Act"; amend Sections 1-1.04 and 4-101, repeal subsections 11 and 12, and renumber subsections 13, 14, and 15 as 11, 12, and 13, respectively, of Section 4-103 of Act No. 447 of May 15, 1951, as amended, known as the "Retirement System for Employees of the Government of the Commonwealth of Puerto Rico"; amend Sections 1.1, 2.3, and repeal Sections 2.4, 2.5, and 2.6 of Act No. 160-2013, as amended, known as the "Commonwealth of Puerto Rico Teachers' Retirement System Act"; amend Section 1081.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico"; repeal Act No. 211-2015, as amended, known as the "Voluntary Pre-Retirement Program Act," guarantee benefits to pre-retirees and allow employees who have requested such benefits to finish the process; authorize the Puerto Rico Fiscal Agency and Financial Advisory Authority to design, implement, and oversee an incentivized separation from service program for employees of the Executive Branch; and for other related purposes.

## STATEMENT OF MOTIVES

Puerto Rico is currently undergoing an unprecedented fiscal and social crisis. Said crisis was caused, in part, by a lack of expenditure controls, sustainable development measures, as well as management information systems that promote clarity and transparency in government affairs.

According to data provided by the U.S. Department of the Treasury, Puerto Rico is suffering a 14.6% cumulative economic contraction in the Gross State Product (actual GSP) with a forecast of an additional 3%-contraction in the next two years. Since the beginning of the 21st century, the Government of Puerto Rico has operated with a structural deficit that has been financed with bond issues and loans from the Government Development Bank. However, this serious fiscal situation denied the Government's access to financial markets, thus affecting its capacity to obtain short- and long-term financing. As a result, the Government of Puerto Rico has been lacking liquidity for over a year. The preceding Administration used the funds set aside to pay tax refunds that belonged to the taxpayers and make payments to contractors, as well as the money of retirees, and intra-government loans to replace the sources of liquidity and incur expenditures in excess of the funds available. The Government Development Bank failed to meet its obligations to bondholders since May 1, 2016, and is no longer fulfilling its duty to provide liquidity to the Government. To add insult to injury, the Retirement System for Employees of the Government of Puerto Rico, the Teachers' Retirement System, and the Judiciary Retirement System are insolvent.

Some of the unwise public administration policies that brought us to the current fiscal situation include a 64%-increase in government payroll expenditures from 2001 to 2008; and despite the measures taken to address this issue, after a 33%-decrease between 2009 and 2012, another substantial increase followed between 2013 and 2016. To finance this excessive spending, the public debt

increased by 134% between 2000 and 2008. Furthermore, between 2013 and 2016 measures were implemented under the philosophy of "primero impago, luego impuestos y después recortes" [first default, then taxes, and finally cuts]. This philosophy contributed to prolonging the excessive spending and the rejection of public policies that would have allowed for the efficient administration of the fiscal affairs of the Government of Puerto Rico. Meanwhile, the necessary actions to achieve more efficient Government operations and cutback on government spending were not taken. Furthermore, even while the securities were plummeting and the economic debacle was underway, the Central Government was unable to produce the necessary financial information to analyze and understand the severity of the issue, and to submit accurate information to the United States Congress and other entities concerned with the issue. Consequently, the debt of the Government of Puerto Rico and its instrumentalities experienced several consecutive downgrades in a short time span, which adversely affected all the sectors of the economy.

This crisis has greatly affected Puerto Rican families. The most vulnerable people within our society have been forced to make the greatest sacrifices, thus prompting thousands of Puerto Ricans to abandon the Island and move to other United States jurisdictions in search for better opportunities. The consequent decrease in population has become one of the challenges to overcome in our path toward recovery.

## Puerto Rico's Colonial Status

The colonial status impairs our capacity to face and solve this crisis, since we lack the sovereign powers of a state to regulate local affairs, which powers are conferred under the Tenth Amendment to the Constitution of the United States.

> For the U.S. Supreme Court, the adoption of the Constitution did not represent a change to the fundamental basis of the constitutional relationship between Puerto Rico and the United States. The Supreme Court continued to treat Puerto Rico as a political entity subject to the territory clause of the U.S. Constitution. [Translation supplied].

*See, Pueblo v. Sánchez-Valle, et seq*. 192 D.P.R. 594, 631 (2015).

"There never was a transfer of sovereignty, but rather a delegation of powers." [Translation supplied] *Id*., p. 635.

> This delegation of power does not constitute an irrevocable relinquishment nor a termination of the power of the Congress. The people of the United States granted the Congress vast powers to administrate the territories through the Constitution of United States of America. For such reason, the Congress cannot irrevocably yield a power that was not conferred upon it by the People of United States. [Translation supplied].

*Id*., p. 638.

Hence,

> The Congress may allow the Commonwealth to remain as a political system indefinitely or, on the contrary, has the constitutional power to amend or revoke the internal administration powers exercised by the Government of Puerto Rico. In other words, Puerto Rico's internal government system is subject in its entirety to the political will and legal authority of the Congress. [Translation supplied]

*Id*., p. 641.

The sad truth is that the colonial status leaves us so defenseless that not even the U.S. citizenship that an overwhelming majority of Puerto Ricans treasures and enjoys since 1917 is guaranteed. In that sense, Congress has legislative discretion to grant privileges to citizens born in the territories, including the U.S. citizenship, but said right may be revoked at any time. In fact, the Federal Government has argued before the courts that territories do not have a right to citizenship, but that it is rather an act of legislative grace from the Congress. *See*, for example, *Tuaua v. United States*, 788 F.3d 300, (D.C. Cir. 2015).

Regarding the issue at hand, to illustrate the limitations resulting from the colonial status, it is worth noting that the states can claim the protections of the Federal Bankruptcy Code from which Puerto Rico was excluded and, since we do not have full representation in Congress, there is little to nothing we can do about it. We are also unable to enact our own bankruptcy legislation due to the express preemption provision of said federal law, even when it leaves us unprotected. *See*, *Puerto Rico v. Franklin Cal. Tax-Free Tr.,* 136 S. Ct 1938 (2016) (declaring unconstitutional the "Puerto Rico Public Corporation Debt Enforcement and Recovery Act," Act No. 71-2014, better known as the "Commonwealth Bankruptcy Act.")

## The Direct Result of our Colonial Status: PROMESA

The policies of the past together with our defenselessness as a colony led the United States Congress to promulgate the Puerto Rico Oversight, Management, and Economic Stability Act, known as PROMESA, Public Law 114-187, which delegated vast powers to the Financial Oversight Board (hereinafter the "Oversight Board").

Once again, our lack of representation in Congress resulted in the approval of said Act without the actual involvement of our People. Pursuant to PROMESA, any ongoing fiscal, budget, legislative, or executive actions taken in Puerto Rico, as well as any debt restructuring, whether consensual or not, issuance, guarantee, exchange, modification, repurchase, or redemption is subject to oversight by the entity created for such purposes.

Section 4 of PROMESA clearly provides that, the provisions of this Act shall prevail over any general or specific provisions of territory or state law, or regulations that are inconsistent with this Act. In this manner, the U.S. Congress expressly stated that said Act shall supersede any state legislation that is in conflict with PROMESA. Section 8(2) of PROMESA reasserts this provision by providing that the Government of Puerto Rico may not enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of PROMESA, as determined by the Oversight Board. Hence, we cannot promulgate legislation to defeat or impair PROMESA, its provisions, and its scope.

At this juncture, it is worth noting that, under the Tenth Amendment to the U.S. Constitution, the Federal Government cannot impose on a state what PROMESA allows for territories. For such reason, Congress was able to impose a Board on Washington, D.C., since it is not a state and is therefore under the direct jurisdiction of Congress. Likewise, the Board that operated in the city of New York was created by its own state legislature, not Congress. Detroit, which is a city and not a state, participated in a voluntary bankruptcy process. In sum, we must bear in mind that our current situation as well as the imposition of the Oversight Board are further consequences of our colonial status, which has limited our development for over five hundred years and has remained unchanged upon the adoption of the Constitution of Puerto Rico in 1952, authorized by Congress.

Unfortunately, our colonial status and the lack of political power that is inherent thereto exacerbate the reality that a federal law has been imposed on us, which has supremacy over any local legislation, even our Constitution, and we were not afforded an opportunity to vote either on said law or for the President who approved it. Therefore, it is evident that in order to get out of this financial predicament it is crucial for us to solve the status issue. However, it is also an undeniable fact that we must work within PROMESA's parameters to set in motion the financial and fiscal recovery of Puerto Rico.

On October 30, 2016, the Oversight Board designated the Government of Puerto Rico, the Employees Retirement System, and Judiciary Retirement System, the Teachers' Retirement System, the University of Puerto Rico, and 21 public corporations of Puerto Rico as "covered entities" subject to financial oversight pursuant to PROMESA. Section 405(b) of PROMESA further imposes a temporary stay on lawsuits and claims against the Government of Puerto Rico and its instrumentalities on various matters hoping that the Government of Puerto Rico, on its own behalf and on behalf of its instrumentalities, may initiate voluntary negotiations with its creditors in order to reorganize and settle the repayment of the Government's debt obligations and, simultaneously, begin a responsible restructuring of the Government of Puerto Rico and its instrumentalities geared to readjusting the essential services that the health, safety, and wellbeing of the residents of Puerto Rico warrant with the timely repayment of its debt obligations. The temporary stay expired on May 1, 2017.  After said term expired, the issue was brought before various federal forums, including the U.S. District Court for the District of Puerto Rico.

After investing millions of dollars in specialized consultants, the previous Administration submitted in 2016 a fiscal plan that was faulty and, thus, rejected by the Oversight Board forthwith, given that such plan failed to solve the fiscal issues caused by said administration.

### A New Government: Our Responsibility Before the Oversight Board

Due to the foregoing, when we took the reins of the Government on January 2, 2017, we found a cash deficit of over $7.6 billion as certified by the Federal Treasury and the Oversight Board. The Government had no access to capital markets, had a "junk" credit rating, had no liquidity and no transparency in public finances, public spending was excessive, and the public debt amounted to billions of dollars. Furthermore, Governor Ricardo A. Rosselló-Nevares had the enormous task of restoring the credibility of the Island in the financial markets and before the Oversight Board.

It is our responsibility to guarantee a Government that spends in accordance with the actual revenues generated. For such reason, since the beginning of this Administration, we have been implementing a systematic plan to control government spending, reactivate our economy, and allow for the conditions to create more and better jobs in the private sector. On February 28, 2017, the Governor submitted a Fiscal Plan that is complete, thorough, real, and in turn, sensible to the needs of our People and those who are most vulnerable. On March 13, 2017, the Oversight Board accepted and certified the Fiscal Plan together with a series of contingencies to guarantee that government employees shall not be dismissed, the workweek shall not be affected, the People's access to healthcare services shall be maintained, and the pensions of those who are most vulnerable shall be protected. The Certified Fiscal Plan is the only option available to avoid dismissing government employees and eliminating the right to healthcare, and to meet our obligation to our retirees, while the government continues to

operate as usual and adheres to the parameters in order to avoid the imposition of more stringent measures which are part of the contingencies of the Certified Fiscal Plan as approved by the Oversight Board.

The validation of the Fiscal Plan represents the recognition of the credibility of the new Government administration. The changes we are implementing are not easy and will take time, but they will also yield results within the first two years of the implementation thereof. Now is the time for the Government to execute the contingencies required under the Fiscal Plan. Access to liquidity must be ensured in order to avoid any impact on government payroll, the health of the People, and the income of retirees.

This Act seeks to safeguard the welfare of our retirees and public employees while we fully comply with the Fiscal Plan Certified by the Oversight Board. This Act is promulgated in order to modify the legal framework and the case law to meet the requirements that the Oversight Board made in connection with the Fiscal Plan approved by virtue of PROMESA. To achieve this, and in view of the serious economic and fiscal emergency situation of Puerto Rico, it is necessary to approve this Act by virtue of the power of Police Power and in accordance with Sections 18 and 19 of Article II and Sections 7 and 8 of Article VI of the Constitution of Puerto Rico, in order to provide the Government with the sufficient liquidity to pay the pension benefits of public employees who already retired or who will do so in the future. We exercise this Police Power to take the necessary measures in order to comply with the Fiscal Plan and to set Puerto Rico into a path of financial recovery. Complying with this Plan constitutes a compelling interest of the Commonwealth in order to maintain its operations and protect those who are most vulnerable.

As defined by the Supreme Court of Puerto Rico, the Police Power is,

That power inherent to the State which is used by the Legislature to prohibit or regulate certain activities for the purpose of furthering or protecting the public peace, morals, health, and general welfare of the community, which may be delegated to municipalities. [Translation supplied]

*Domínguez Castro v. E.L.A.*, 178, D.P.R. 1, 36 (2010).

Our Highest Court held that the measures taken to address an emergency are valid insofar as these are necessary and reasonable to further a profound government interest. *See, Trinidad v. E.L.A.*, 188 D.P.R. 828 (2013) and *Domínguez Castro v. E.L.A., supra*, pp. 88-89. Likewise, the Supreme Court recognized "the precariousness of the economy as a reality that actually matters in the definition of the scope of government action under the Police Power" and that, in the exercise of said power, "the Legislature has a broad authority to approve economic regulation geared to promoting the welfare of the community." [Translation supplied]. *Domínguez Castro v. E.L.A.*, *supra*, p. 37. Associate Justice Kolthoff-Caraballo, on behalf of the Supreme Court, stressed that both our jurisdiction and the rest of the world "are living times that are very convoluted financially and economically. It would seem as if the economy of countries around the world are intertwined and tangled with the tail of a kite that is unable to finally take off." [Translation supplied]. *Domínguez Castro et al. v. E.L.A.* I, 178, D.P.R. 1, 415 (2010), certiorari denied, *Domínguez Castro v. Puerto Rico*, 131 S. Ct. 152 (2010). In this manner, the Court recognized that it must be aware that there was a reality which it described as "hard and unpleasant." [Translation supplied]. In view of this historic reality, the Court deemed it necessary to try and aim for an altruistic interest in the pursuit of the "collective economic wellbeing at the expense of the individual wellbeing." [Translation supplied]. Furthermore, in *Herrero y otros v.*

*E.L.A.*, 179 D.P.R. 277 (2010), the Court reasserted its recognition of the economic crisis in our jurisdiction and stated that, in the context of providing a remedy that entailed the disbursement of public funds in order to redress taxpayers, it was not "unaware of the difficult condition of the public finances of the Island." [Translation supplied]. *Id.* in p. 309.

In *Trinidad Hernandez v. E.L.A.*, *supra*, the Supreme Court validated Act No. 3-2013, as amended, on the Retirement System for Employees of the Government of Puerto Rico, for understanding that the Legislative Assembly had exercised its Police Power to stop the insolvency of the Retirement System for Employees of the Government of Puerto Rico. The Supreme Court held that "from the statement of motives […] it can be ascertained that the measures adopted are necessary and reasonable to properly address the financial crisis that threatens the actuarial solvency of this system." [Translation supplied]. The Court added that "this certainly constitutes a serious public interest since, guaranteeing the economic solvency of the system benefits all of the participants therein and partially addresses the fiscal crisis of the Island, thus protecting the welfare of all Puerto Ricans." [Translation supplied]. *Trinidad Hernandez v. E.L.A., supra,* p. 837. It concluded that the provisions of said Act are constitutional "since, notwithstanding the substantial impairment to the contractual obligations in question, the measures implemented are reasonable and necessary to safeguard the actuarial solvency of the Retirement System, and there are no less burdensome measures to achieve this purpose." [Translation supplied]. *Id.*, p. 839.

Likewise, in *Asociación de Maestros de Puerto Rico v. Sistema de Retiro de Maestros de Puerto Rico*, 190 D.P.R. 854 (2014), the Supreme Court recently passed judgment on the measures approved under Act No. 160-2013 to solve the crisis of the Teachers' Retirement System, and determined that the law did not further a serious state interest as required in our Constitution in the case of

retirement system reforms, that is, to guarantee the solvency of the system itself. For such reason, the Court held that Act No. 160-2013, in what pertains to the impairment of contractual obligations, was unreasonable and therefore unconstitutional. *Id*, p. 12. At that time, the Court was emphatic in stressing that, should those measures be reasonable and necessary to "further the actuarial solvency, and should there be no less burdensome measures to achieve these purposes," then the measures approved would be held to be constitutional. [Translation supplied]. *Id*., p. 8.

Based on the aforementioned legal framework, this Legislative Assembly believes that the measures taken in this Act are necessary and reasonable to properly address the fiscal crisis and the actuarial insolvency of the Retirement System for Employees of the Government of Puerto Rico as well as the Judiciary and Teachers' Retirement Systems. Furthermore, it provides the legal framework that would allow us to comply with the provisions and achieve the goals set for the Retirement Systems under the Fiscal Plan Certified by the Oversight Board in accordance with PROMESA. Said Plan establishes fiscal adjustments to stabilize Government finances at a time where there is no access to the financial market. If these measures are not implemented, the social and economic welfare of Puerto Rico shall suffer irreparable damages. Hence, the implementation of this reform as part of the Fiscal Plan constitutes a compelling interest of the State in order to guarantee the public interest.

### **Government Restructuring**

The Plan for Puerto Rico promoted by this Administration, and which was supported by the People of Puerto Rico in the last general election through the democratic exercise of their right to vote, proposes the implementation of a new government structure that reduces public spending significantly and substantially improves the duties thereof. To achieve this, it is necessary to carefully evaluate

the services rendered by the government in order to determine which of these services may be consolidated, delegated to the private sector, or eliminated because they are no longer necessary. To achieve this, the dismissal of government employees shall not be necessary, but rather a mobilization of said employees in accordance with the needs for service of our people.

Consistent with the foregoing, and as part of the first measures taken by this Administration in order to address the fiscal crisis through a government restructuring, Act No. 8-2017, as amended, known as the "Government of Puerto Rico Human Resources Administration and Transformation Act," was approved. Said Act transforms the Government into a Sole Employer in order for public officials to become Government employees rather than employees of the different entities, thus allowing for a better use of the human resources, wherever there is a pressing need, through the mobility mechanism without requiring the employee to resign from the office he currently holds in order to start all over again at a new government instrumentality. The mobility mechanism seeks to reinforce the notion of what it means to strike a balance between the workforce and the rendering of public services. In doing so, the Government's human resources are distributed efficiently and a swift government structure is thus created, based on an ongoing evaluation of the needs. Moreover, we shall assist government employees in making the required adjustments and modifications to face the current fiscal crisis as well as any future challenges.

## **PROMESA and the Supremacy Clause**

Furthermore, it is important to stress the application and the mandate that the Congress of the United States of America, by virtue of its plenary powers over the Territory of Puerto Rico, imposed on the Island upon the enactment of PROMESA.

Said Federal Act created the Oversight Board which was entrusted with the task of approving and supervising the execution of a Fiscal Plan for the economic stabilization of Puerto Rico, among a series of other tasks.

Said statute was approved on May 4, 2016, and includes a supremacy clause that states:

SECTION 1. […]

This Act may be cited as the "Puerto Rico Oversight, Management, and Economic Stability Act" or "PROMESA." […]

SEC. 4. SUPREMACY.

**The provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act.** [Emphasis added]

Pursuant to Section 101 of PROMESA, an Oversight Board, in its sole discretion at such time as the Oversight Board determines to be appropriate, may designate any territorial instrumentality as a covered territorial instrumentality that is subject to the requirements of said Act. At this time, the Oversight Board has designated all of the public corporations as covered entities. Moreover, pursuant to Section 205 of PROMESA, the Oversight Board may at any time submit recommendations to the Governor or the Legislature on actions the territorial government may take to ensure compliance with the Fiscal Plan, or to otherwise promote the financial stability, economic growth, management responsibility, and service delivery efficiency. In the case of any recommendations submitted, the Governor shall submit a statement that provides notice as to whether the territorial government will adopt the recommendations. If the recommendation is not adopted, the Governor shall submit a statement to the President and Congress of the United States explaining the reasons therefor.

We must bear in mind that PROMESA has supremacy over any legislation of the territory of Puerto Rico that is inconsistent with the motives, responsibilities, tasks, and objectives provided for in the federal statute, and the Oversight Board is the entity in charge of the execution thereof.

Taking this legal framework as a basis, this Legislative Assembly believes that the measures taken in this Act are necessary and reasonable to properly address the fiscal crisis and actuarial solvency of the Retirement Systems, and constitute a valid legislative exercise. Furthermore, this Legislative Assembly is committed to fully comply with the Fiscal Plan Certified by the Financial Oversight Board last March 13, 2017. Specifically, this legislation is consistent with the provisions on pension reforms included in the Fiscal Plan, as stated below:



## **Retirement Systems**

The Retirement System for the Employees of the Government of Puerto Rico, the Puerto Rico Judiciary Retirement System, and the Government of Puerto Rico Teachers' Retirement System (jointly, the "Retirement Systems") are facing a

serious fiscal emergency because their liquid assets are soon to be depleted and shall not have the necessary resources to meet its obligations to retirees.

This crisis began decades ago and has worsened over the years, until reaching the present emergency. Attempting to resolve said crisis, the Government has reformed the Retirement System on several occasions. For instance, in 2000, Dr. Pedro Rosselló's Administration reformed the Retirement System for Employees of the Government and established a defined contribution plan, better known as the "Reform 2000," for public employees enrolling after January 1, 2000. In addition to this reform, which proved beneficial for our public employees, the Administration of Dr. Pedro Rosselló injected hundreds of millions of dollars to the Retirement System for the Employees of the Government of Puerto Rico to help reduce the actuarial deficit.

During the Administrations of governors Sila María Calderón and Aníbal Acevedo-Vilá, the fiscal health of the Retirement Systems continued to worsen. For instance, it is worth noting that the 2008 bond issues proved detrimental to the Retirement System for the Employees of the Government of Puerto Rico.

Employer contributions to the Retirement Systems were increased under the mandate of Governor Luis G. Fortuño-Burset, in order to fund the systems. Later, in 2013, another comprehensive reform was implemented in an attempt to save the Retirement Systems. Said reform was detrimental to public employees, because it significantly reduced their benefits, increased the retirement age, and altered the conditions under which they could retire. On top of that, the Administration of Alejandro García-Padilla committed to make additional contributions to the Retirement Systems by establishing an Additional Uniform Contribution to public corporations, among others, but failed to do so; as a result, the fiscal health of the Retirement Systems continued to worsen. In order words, the preceding

administration reduced the benefits of our public employees and failed to meet the Government's obligations to said Systems.

For many reasons, namely, inadequate contributions, the approval of special laws, early retirement programs, changes in the Participants' life expectancy, failed investments, unwise management, bond issues that yielded no benefits,[1] different reforms that did not work and fell short of saving the Retirement Systems. Consequently, the Retirement Systems are currently on the verge of insolvency; this means that the pensions of our retirees would be at stake if we do not act quickly. It should be mentioned that both the Central Government and the Retirement System for Employees of the Government of Puerto Rico are currently undergoing a restructuring process under PROMESA Title III.

Although the reforms implemented have not been effective, failure to act is not an option. The wellbeing of public employees and our retirees is a priority for this Administration. However, the options available to the Government must be evaluated and considered within the Island's historical context at present. As stated above, Puerto Rico is undergoing the worse and most serious crisis in its modern history, which led the Federal Government to adopt PROMESA and establish an Oversight Board for the Island. In accordance with PROMESA, a Fiscal Plan was certified for the Government of Puerto Rico, which establishes the parameters to be followed to achieve fiscal responsibility. From here on, approved budgets must align with the certified Fiscal Plan; otherwise, the Oversight Board is empowered and has authority to take corrective action. Our goal has always been for the elected local Government to make the decisions regarding Puerto Rico, even if

---

[1] For a detailed discussion about this issue, see the three (3) reports presented by the Committee on the Public Service Retirement Systems of the House of Representatives of Puerto Rico in relation to House Resolution 417 of 2009.

such decisions are difficult. Relinquishing decision making to an entity that was not elected by the People is not an option.

In view of the foregoing, we have carefully analyzed feasible alternatives that are available to deal with the current crisis of the Retirement Systems. Firstly, given the imminent insolvency faced by the Retirement Systems, this Legislative Assembly deems it reasonable and necessary for the General Fund to assume responsibility and make any payments that the Retirement Systems are unable to make in order to pay pension benefits to our retirees. For this Fiscal Year 2017-2018, the General Fund shall be disbursing approximately $2 billion to pay our public servants' Accumulated Pension Benefits (this constitutes a significant increase, since, prior to July 1, 2017, the Government barely made annual employer contributions of approximately $600 million). This shows this Administration's commitment with our retirees. If our pensioners are deprived of their pension benefits, not only they, but also the Government and the society in general would be facing serious consequences.

Thus, the "pay-as-you-go" system is hereby established, whereby disbursements shall continue to be made for all current pensions of the Retirement Systems by using the resources of the General Fund, as provided in the certified Fiscal Plan. The Retirement Systems shall continue to make transfers from their own available funds as well as from the proceeds from the liquidation of their assets. Secondly, given the heavy impact and burden that the foregoing shall impose on the funds available in the General Fund, this Legislative Assembly deems it necessary and reasonable to eliminate the employer contributions that the Government currently makes to the Retirement Systems. Thirdly, it is necessary and reasonable to establish a prospective New Defined Contribution Plan, which shall be funded by the contributions made by public servants, thus safeguarding their retirement contributions. In this manner, they shall be able to enjoy a decent

retirement without impairing the Central Government's capacity to provide the people with essential services or requiring the implementation of measures that affect the most vulnerable. House Joint Resolutions No. 186, 187, and 188 of 2017 laid the groundwork for this new defined contribution system.

Aware of the state of emergency in the Retirement System for Employees of the Government of Puerto Rico, which affects public servants not only in the agencies of the Central Government, but also in the municipalities, public corporations, as well as teachers and judges, this Legislative Assembly in the exercise of the State's police power, adopts this reform for the purpose of protecting the pension benefits of the public servants who contributed to the development of the Puerto Rican society while also protecting the Government's capacity to provide the people with essential services.

In brief, this Act shall ensure that Puerto Rico's pensioners receive the pension benefits that they earned with great effort and sacrifice by devoting the best years of their lives to serve the People of Puerto Rico. The General Fund of Puerto Rico shall assume the total payment of such pension benefits, after liquidating the assets of the Retirement Systems, by setting aside over $2 billion for such commendable effort. In the spirit of solidarity and appreciation, Puerto Rico's present workforce shall not allow our pensioners to be deprived of their basic needs and a better quality of life. This legislation is an example of placing collective interests before individual interests and shows a commitment to greater and nobler causes than our own. Selflessly and with great sacrifices, the Government of Puerto Rico shall spare no effort to guarantee the pension of our pensioners. Our debt to them is an unavoidable commitment.

Furthermore, through this legislation, we have set parameters and controls for the administrators of the retirement funds of current Participants and public servants. We cannot allow Participants to fall prey to inexperienced retirement

fund administrators without limits set by law that may jeopardize the investments of our valuable public servants. In addition, we have established stringent penalties and sanctions against heads of agencies and public officials who fail to comply with their ministerial duty to timely remit the Participants' contributions to their accounts. Today more than ever, we cannot allow a deficient discharge of ministerial duties to endanger the retirement of thousands of public servants and other employees under the three Retirement Systems. Moreover, no natural or juridical person shall be held harmless for any willful or negligent act that endangers the future income of thousands of public servants.

For all of the foregoing, we recognize and assume the great challenges faced by our retirement systems through a public policy that will guarantee and defend the pension benefits they currently receive, at all costs. In addition, a new defined contribution system is created to provide Participants with grounds to bring a cause of action to defend their contributions and which shall require the administrators of our public servants' investments to have vast experience and competence.

***BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:***

## CHAPTER 1.- GENERAL PROVISIONS

**Section 1.1.-** This Act shall be known as an "Act to Guarantee the Payment of Pension Benefits to our Retirees, and to Establish a New Defined Contribution Plan for Public Employees."

**Section 1.2.-** Supremacy of this Act.

This Act is hereby enacted by virtue of the State's police power and the constitutional authority conferred on the Legislative Assembly under Article II, Sections 18 and 19 of the Constitution of Puerto Rico to enact laws for the protection of the life, health, and general welfare of the people, as well as to deal with grave emergencies that clearly imperil the public health, safety, or essential

public services; and by virtue of Sections 7 and 8 of Article VI of the Constitution of Puerto Rico. Therefore, this Act shall have supremacy over any other state law.

**Section 1.3.-** Declaration of State of Emergency in the Retirement Systems.

It is hereby determined and declared that the Retirement System for Employees of the Government of Puerto Rico, the Judiciary Retirement System, and the Teachers' Retirement System are in a state of fiscal emergency. As a result of said state of fiscal emergency, it is estimated that by August 2017, the Retirement System for Employees of the Government of Puerto Rico shall have no liquid assets to meet its obligations. Likewise, the liquid assets of the Teachers' Retirement System shall be depleted by September 2017, and the Judiciary Retirement System shall not have sufficient liquid assets by February 2018.

The financial situation of these three Government Retirement Systems in Puerto Rico was one of the reasons that prompted the Federal Government to adopt the "Puerto Rico Oversight, Management, and Economic Stability Act," Pub. L. 114-187 (PROMESA). Said Act provides measures for the Government of Puerto Rico and its instrumentalities to achieve fiscal responsibility and access to the capital markets, among others. On March 13, 2017, the Financial Oversight Board created under PROMESA approved and certified the Fiscal Plan for the Government of Puerto Rico.

On May 21, 2017, the Financial Oversight Board, on behalf of the Government of Puerto Rico, filed a petition seeking to allow the Retirement System for Employees of the Government of Puerto to avail itself of the protections of Title III of PROMESA. The filing of said petition under Title III of PROMESA began a restructuring process of said system's obligations under the supervision of the United States District Court for the District of Puerto Rico.

In view of this situation, reasonable and necessary measures shall be taken promptly to ensure that our pensioners continue to receive their pension benefits, and that the individual contributions of our public servants and their future are protected.

Several attempts have been made in the past seeking to reform these three Retirement Systems. The measures taken did not work out and were insufficient; consequently, the retirement systems have become practically insolvent. In addition, given the serious fiscal crisis that Puerto Rico is currently undergoing, the Government is unable to fund the three Retirement Systems. Therefore, it is necessary and reasonable that the Accumulated Pension Benefits Payment Account, which shall be funded to a great extent from the General Fund through the pay-as-you-go system, assumes the payments that the three Retirement Systems are unable to make. The three Retirement Systems shall continue to meet their obligations to their beneficiaries, and make contributions to the General Fund from their available funds and from the proceeds from the liquidation of their assets, except for the building that serves as the headquarters of the Teachers' Retirement System, known as the Capital Center Building, North Tower, located in Hato Rey, Puerto Rico, which shall not be liquidated. Likewise, employer and similar contributions made to the three Retirement Systems shall be eliminated, given the burden that paying our retirees their pension benefits and simultaneously disbursing such contributions pursuant to House Joint Resolutions No. 186, 187, and 188 of 2017, shall impose on the General Fund. Moreover, as a corrective measure, we must segregate and protect public servants' contributions and establish a New Defined Contribution Plan to ensure the future of our public servants. The measures thus taken shall be consistent with our current fiscal reality and shall not affect the Government's capacity to provide essential services to the people.

**Section 1.4.-** Public Policy

It is hereby declared as the public policy of the Government of Puerto Rico the protection of the pension benefits of all government retirees who were Participants of the aforementioned three Retirement Systems. Therefore, beginning July 1st, 2017, pursuant to House Joint Resolution No. 188 of 2017, as certified by the Financial Oversight Board on July 13, 2017, the Government of Puerto Rico became the direct payer of our retirees' pension benefits.  Employer contributions made heretofore to the three Retirement Systems as well as the Additional Uniform Contribution provided in House Joint Resolutions No. 186, 187, and 188 of 2017 are hereby eliminated, given the burden this shall impose on the General Fund, which is estimated in billions of dollars annually. The Retirement Systems shall contribute their available funds as well as the net proceeds from the liquidation of their assets to the General Fund to help cover the payment of Accumulated Pension Benefits, except for the building that serves as the headquarters of the Teachers' Retirement System, known as the Capital Center Building, North Tower, located in Hato Rey, Puerto Rico, which shall not be liquidated. Once the assets of the Retirement Systems are depleted, the Accumulated Pension Benefits Payment Account, which shall be mostly funded from the General Fund, as provided in this Act, shall assume and guarantee the payment of the Accumulated Pension Benefits in accordance with this Act. However, the Municipalities, the Legislative Branch, the Public Corporations, the Government, and the Court Administration shall be required to pay their respective Pay-Go Fee to fund the Accumulated Pension Benefits Payment Account.

Furthermore, the protection of the future of our public servants is hereby declared as public policy. Through this Act, we shall ensure that they have a decent retirement free from uncertainties, by setting aside and guaranteeing their personal contributions and establishing a new defined contribution plan, in a trust or similar instrument that shall allow them to protect and guarantee their contributions in separate accounts.

**Section 1.5.-** Applicability of this Act to the Retirement Systems

This Act shall apply to the Retirement System for Employees of the Government of Puerto Rico and the Teachers' Retirement System. However, only the provisions of Chapter 2 shall apply to the Judiciary Retirement System, except for the provisions of Section 2.6 of this Act, which establishes the Pay-as-you-Go system, as provided below. Furthermore, the Judiciary Retirement System shall comply with all the provisions of said Chapter regarding the Retirement Systems.

**Section 1.6.-** Definitions.

The following words and terms, when used or referred to in this Act, shall have the meaning indicated hereinbelow unless another meaning clearly arises from the context. The present tense also includes the future and the male gender includes the female, except in those cases in which said interpretation would be absurd. The singular number includes the plural and the plural includes the singular.

(a)     **FAFAA:** the Puerto Rico Fiscal Agency and Financial Advisory Authority created under Act No. 2-2017.

(b)     **Retirement Systems Administrators:** the Administrators of the Retirement System for Employees of the Government of Puerto Rico, created under Act No. 447 of May 15, 1951, as amended, and the Executive Director of the Teachers' Retirement System, as established in Act No. 160-2013.

(c)      **Contributions Owed:** amounts that the Government, Municipalities, Public Corporations, and other entities deemed as employers under any of the Retirement Systems covered under this Act, owe to the Retirement Systems, the Accumulated Pension Benefits Payment Account, and/or the New Defined Contribution Plan.

(d)      **Individual Contributions:** those amounts that have been deducted or are to be deducted from the Participant's base compensation to be credited to his Defined Contributions Account, as defined in Section 1.6(u).

(e)      **Beneficiary:** any person who receives any pension, annuity, or benefit, as provided in this Act.

(f)      **Administrative Fee:** a fee that the Retirement Board or its designee may establish and collect, and that shall be paid by the Government, Judicial Branch, Legislative Branch, Public Corporations, and such other entities deemed as employers under the Retirement System for Employees of the Government of Puerto Rico and the Teachers' Retirement System in accordance with this Act, to fund the operations of the New Defined Contribution Plan and/or the Accumulated Pension Benefits Payment Account; except for Municipalities.

(g)      **Pay-Go Fee:** a fee to be established and imposed by FAFAA and that shall be paid by the Government, Municipalities, Judicial Branch, Legislative Branch, Public Corporations, and such other entities deemed as employers under the Retirement System for Employees of the Government of Puerto Rico and the Teachers' Retirement System in accordance with Chapter 2 of this Act. This fee shall be collected by the Secretary of the Treasury or his designee, as provided in this Act.

(h)      **Code:** Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico."

(i)  **Defined Contribution Account:** a trust account, separate from the general assets and accounts of the Government to be created as of July 1, 2017, in the name of each Participant, as provided in Chapter 3 of this Act.

(j)  **Accumulated Pension Benefits Payment Account:** a trust account, separate from the general assets and accounts of the Government for the payment of Pension Benefits Accumulated by the Retirement System for Employees of the Government of Puerto Rico, the Teachers' Retirement System, and the Judiciary Retirement System under the pay-as-you-go system established in Chapter 2 of this Act. This trust account shall be centralized and segregated from the general assets and accounts of the Government, administered by the Department of the Treasury, and devoted solely and exclusively to achieve the purposes set forth in this Act, and subject to the terms and conditions established herein.

(k)  **Public Enterprise or Corporation:** any government instrumentality of the Government of Puerto Rico heretofore or hereafter created. It shall not include, however, those subsidiary enterprises of government instrumentalities whose employees, in the judgment of the Retirement Board, do not have a clear employee-employer relationship with the Government of Puerto Rico. Any official or employee who is a Participant of the Retirement Systems and becomes or has become an official or employee of a subsidiary enterprise of any public enterprise or corporation without interruption in service shall continue to have the same rights and privileges as System participants, even if said subsidiary enterprise is not covered by the three Retirement Systems;

(l)  **Managing Entity:** juridical person or entity selected by the Retirement Board to manage the Accumulated Pension Benefits Payment Account and/or the New Defined Contribution Plan. The Managing Entity shall be a recognized entity with at least ten (10) years of experience in retirement plan management and good standing in the financial industry, and that guarantees the

Government, under a Contract, that it shall reduce the current operating expenses of the Retirement Systems by at least twenty-five percent (25%). The foregoing shall not preclude the Government or any of the instrumentalities thereof from assuming and performing the duties of the Managing Entity, if deemed necessary and appropriate, always safeguarding the best interests of Participants, Retirees, and Beneficiaries as well as protecting and guaranteeing the balance of their Individual Contributions.

(m)   **Government of Puerto Rico or Government:** the Government of Puerto Rico, and all of its departments, divisions, bureaus, offices, agencies, and instrumentalities; the Department of Education of Puerto Rico is included for purposes of this definition. For purposes of this Act, this term includes other governmental and nongovernmental entities whose employees are currently enrolled in the Retirement Systems.

(n)   **Retirement Board:** board created by virtue of the provisions of Chapter 4 of this Act.

(o)   **Teacher:** professionals who teach in the classrooms, School Principals and Vice Principals, and other teacher classifications and categories that exist or may exist within the nomenclature of the Department of Education of the Government of Puerto Rico, the Secretary of Education and alternate officials, and other employees or officials who avail themselves of the benefits of Act No. 160-2013, pursuant to the provisions thereof, provided they hold a valid certificate to work as teachers.

(p)   **New Defined Contribution Plan:** a new defined contribution plan in which Participants shall enroll, as provided in Chapter 3 of this Act.

(q)   **Participants:** active employees of the Government of Puerto Rico, Teachers, members of the Teachers' Retirement System, and employees of the Municipalities and Public Corporations, except for the employees of the University

of Puerto Rico and the Electric Power Authority. It also includes employees who become or have become employees of a Public-Private Partnership and any member of the Retirement System for Employees of the Government of Puerto Rico who have made contributions to said System and have not had such contributions refunded. This term includes former employees of the Government of Puerto Rico who separated from public service, but whose contributions and/or any benefit accumulated until their separation date were not refunded.

(r)  **Accumulated Pension Benefit:** an annuity, a benefit, or a defined benefit to which Participants would be entitled upon retirement from service according to the contributions and rules applicable to their respective Retirement Systems, computed until the effective date of this Act.

(s)  **Retiree:** any person who receives a pension or annuity in accordance with the provisions of this Act or the laws that created the various Retirement Systems.

(t)  **Pre-retiree:** any person enrolled in the Voluntary Pre-Retirement Program, created under Act No. 211-2015, as amended, known as the "Voluntary Pre-Retirement Program Act."

(u)  **Compensation:** the gross and cash remuneration earned by an employee. In computing the compensation, any bonus granted in addition to the salary, as well as any overtime pay shall be excluded.

(v)  **Retirement System:** the Retirement System for Employees of the Government of Puerto Rico, as established in Act No. 447 of May 15, 1951, as amended, and the Teachers' Retirement System, as established under Act No. 160-2013.

(w)  **Judiciary Retirement System:** the Judiciary Retirement System created under Act No. 12 of October 19, 1954, as amended, known as the "Judiciary Retirement Act."

## CHAPTER 2.- ACCOUNT FOR THE PAYMENT OF PENSION BENEFITS ACCUMULATED IN THE RETIREMENT SYSTEMS

**Section 2.1.-** Accumulated Pension Benefit Payment Account.-

The Accumulated Pension Benefit Payment Account is hereby created under the custody of the Department of the Treasury, to be maintained in a trust fund separate from the Government's general assets and accounts, which shall operate under the pay-as-you-go system to pay the Pension Benefits Accumulated in the Retirement Systems, including the Judiciary Retirement System, upon the effective date of this Act. As of July 1, 2017, the payment of Accumulated Pension Benefits under the three Retirement Systems shall be disbursed from the funds deposited in said account, which shall be funded from the following sources:

(a)    The net proceeds from the liquidation of the Retirement Systems' assets, including the Judiciary Retirement System, as provided in House Joint Resolution 188-2017, approved pursuant to PROMESA, except for the set aside funds of the Defined Contribution Program of the Teachers' Retirement System established under Act No. 160-2013, as amended, and the building that serves as the headquarters of the Teachers' Retirement System, known as the Capital Center Building, North Tower, located in Hato Rey, Puerto Rico, which shall not be liquidated, in accordance with the current obligations of the Retirement Systems;

(b)    The Pay-Go fee established and imposed by FAFAA on the Government, the Municipalities, the Legislative Branch, the Court Administration, Public Corporations, and other covered entities. This fee shall be equal to the amount paid to Retirees and Beneficiaries of each covered entity. The Secretary of the Treasury or the entity or person designated by him shall be authorized to collect the Pay-Go fee. In the case of Municipalities, the administrative fees of the pay-as-you-go system shall not be included in the computation of the Pay-Go fee. The payment of the Pay-go fee by employers, notwithstanding, the disbursement of

all the benefits of Retirees and Beneficiaries are guaranteed by the General Fund through the pay-as-you-go system, all entities shall be responsible for remitting the payment of said Fee thus fulfilling their obligations under this Act;

(c)     Appropriations in the expense budget of the Government of Puerto Rico, special appropriations to fund any deficiencies in the payment of pension benefits and special laws approved for such purposes;

(d)     Gifts, bequests, and any other contribution from any public or private entity made to this account by virtue of any other law;

(e)     Funds from the twenty-five percent (25%) of the initial payment or periodical payments under Partnership Contracts, as provided in subsection (e) of Section 17 of Act No. 29-2009, as amended, known as the "Public-Private Partnership Act," as provided from time to time; and

(f)     Other funds or revenues earmarked for such purposes by the Legislative Assembly.

The Office of Management and Budget may withhold from the appropriations made to the agencies of the Government of Puerto Rico, the necessary amounts for the payment of the Pay-go fee, if it determines that such withholding is necessary to ensure that covered entities fulfill their obligation. Moreover, every government entity shall earmark the funds needed for the payment of the Pay-Go fee in their annual general budgets.

Pension benefits of Participants, Beneficiaries, or Retirees whose employers have ceased to exist, or those who have been transferred to a Public-Private Partnership, and those whose employer, for any reason, fails to pay the Pay-Go fee, as well as of all Retirees of the Retirement Systems, shall be guaranteed by the Government through the pay as you go system.

**Section 2.2.-** Register of Accumulated Pension Benefits

(a)     A Register of each Participant, Beneficiary, and Retiree of the Retirement Systems shall be created and maintained showing in detail the Accumulated Pension Benefit amount corresponding to each one of them according to their respective Retirement Systems as of the effective date of this Act. It shall state in detail, without it being construed as a limitation, the accumulated benefit to which the Participant is entitled, his employment history, and the contributions made, in accordance with each retirement law, as applicable, under which the Participant, Beneficiary, and Retiree enrolled, The corresponding payment of Accumulated Pension Benefits to which each Participant, Beneficiary, and Retiree is entitled shall be made pursuant to the information contained in the Registry, under the applicable payment terms until the effective date of this Act and in accordance with the Retirement System in which each Participant, Beneficiary, and Retiree is enrolled. However, in the case of judges who make contributions under the Judiciary Retirement System as well as teachers and members of the Teachers' Retirement System who are making contributions pursuant to Act No. 91-2004, a register shall be created for information purposes, since they shall continue to make contributions under their respective systems just as they did prior to the approval of this Act.

(b)     The Retirement Systems Administrators, including the Judiciary Retirement System, in conjunction with FAFAA, shall be required to create the register stated in subsection (a) of this Section, as follows:

1.     Within sixty (60) days after the approval of this Act, a list of all Beneficiaries and Retirees of the three Retirement Systems shall be produced; and

2.     Within a term not to exceed one hundred eighty (180) days after the approval of this Act, a register of all Participants shall be produced, including the Accumulated Pensions Benefits of each of the three Retirement Systems on the

effective date of this Act and the payment terms thereof. The three Retirement Systems shall take the necessary measures to ensure that the information of each Participant, Beneficiary, and Retiree contained in the register is true and correct.

3.      Once the register is produced, each Participant, Beneficiary, and Retiree shall be notified of the contents thereof using an accurate, efficient, and suitable method (including a notice by mail, access to the information through FAFAA's website, or a website created by the Retirement Board for such purposes, the publication of a notice in a newspaper of general circulation, and a personal notification to active Participants, when appropriate), who, in turn, shall have forty-five (45) days after the date of the notice to present to the Retirement Systems Administrators indisputable proof showing that the information contained in the register is incorrect or inaccurate. Indisputable proof includes, but shall not be limited to, a copy of the personnel file, a copy of the retirement record, pay stubs, W-2 Forms, a copy of tax returns, employer certifications or any combination thereof, among other official documents. The Government, Municipalities, the Judicial Branch, the Legislative Branch, the Public Corporations, and the Retirement Systems shall, as part of their ministerial duties, timely produce any document requested by a Participant, Beneficiary, or Retiree in order to provide proof of any inaccuracy in the Register. If any of the documents requested is not available, a certification stating such fact shall be issued. FAFAA may serve as facilitator to obtain such documents and establish mechanisms to receive and timely process the request filed for such purposes. An entity's delay in producing any information requested shall not adversely affect the Participant or the aforementioned term of forty-five (45) days. It shall be understood that the forty-five (45)-day term shall not run while a request for indisputable proof is pending before a government entity and such proof has not been produced or until it is certified that said proof does not exist or is not available. The Retirement

Systems Administrators shall analyze the indisputable proof presented and notify the Participant in writing of their decision regarding said matter. If a Participant, Beneficiary, or Retiree fails to present to the Retirement Systems Administrators indisputable proof showing that the information contained in the register is incorrect within the term provided in this subsection, it shall be understood that said information is true and correct, and, therefore, the correctness of the register shall not be reviewable.

4.      If a Participant, Beneficiary, or Retiree is dissatisfied with the determination made by the Retirement Systems Administrators under the previous paragraph, he shall file a request for reconsideration within twenty (20) days after the notice of the decision of the Retirement Systems Administrators. If the request for reconsideration is not filed, the determination shall become final and binding.

5.      If a Participant, Beneficiary, or Retiree does not agree with a final decision of the Retirement Systems Administrators, or if the Retirement Systems Administrators fail to issue a determination within ninety (90) days after receiving the request for reconsideration, the Participant, Beneficiary, or Retiree may file an appeal with the Retirement Board within thirty (30) days after the notice or from the expiration of the aforementioned ninety (90)-day term. If no appeal is filed, the determination shall become final and binding.

6.      The Retirement Board shall have ninety (90) days to issue a determination on any appeal filed by a Participant, Beneficiary, or Retiree. If the Board fails to act within said term, or if a Participant, Beneficiary, or Retiree is dissatisfied with the final determination of the Retirement Board, he may file a petition for judicial review with the Court of Appeals in accordance with the Regulations of the Court of Appeals for reviewing administrative decisions.

(c)     None of the provisions of this Section shall be understood as interfering in any manner with any procedure or claim under the Puerto Rico Oversight, Management, and Economic Stability Act" (PROMESA), Public Law 114-187.

**Section 2.3.-** Terms to Pay Accumulated Pension Benefits.

The terms to pay the Accumulated Pension Benefits of each Participant, Beneficiary, or Retiree shall be computed as provided in the statutes of their respective Retirement Systems as of the effective date of this Act. The terms to pay disability benefits, death benefits, payments to beneficiaries, or refunds of contributions, and any amount owed or similar benefit shall also be computed as provided in the statutes of the respective Retirement Systems on the effective date of this Act. Those employees who, as of the approval of this Act, have filed an application for disability or any other benefits, may complete such transaction as provided in the applicable law at the time of the filing of the application.

**Section 2.4.-** Accumulated Pension Benefits.

(a)     As of the effective date of this Act, the Accumulated Pension Benefits of the Retirement Systems' Participants who began to work prior to the effective date of this Act shall be preserved and guaranteed by the Government.

(b)     Those Participants who, as of the effective date of this Act, are eligible to retire and receive pension benefits and/or annuity under the applicable provisions of their respective Retirement Systems, may retire on any later date and be entitled to receive their corresponding accumulated pension benefit, computed under the applicable provisions of their respective Retirement Systems as of the effective date of this Act and the terms contained therein.

(c)      As of the effective date of this Act, Participants shall not accumulate additional benefits, either for years of service, compensation, or any other reason, in the Retirement Systems. For purposes of computing their pension or retirement benefits in their corresponding Retirement Plans, Participants shall not: earn credit for non-creditable service as of the approval of this Act, transfer contributions or repay contributions for periods worked on or before the effective date of this Act. Employees who have earned or are actively earning creditable service under a retirement system not covered under this Act, may request the transfer of contributions to their retirement system of origin or that to which they are entitled at the time of their retirement, provided that fiscal resources allow, in accordance with the Certified Fiscal Plan.

(d)      Beginning July 1, 2017, Participants shall make no individual contributions or payments to the Accumulated Pension Benefits Payment Account or additional contributions to their respective Retirement Systems.

(e)      Beginning July 1, 2017, the Government of Puerto Rico, Public Corporations, Municipalities, the Legislative Branch, the Judicial Branch, and other non-covered entities shall not be required to make employer contributions, including the Additional Uniform Contribution and the Teachers' Justice Uniform Contribution, to the Accumulated Pension Benefits Payment Account or the Retirement Systems, but shall be required to pay their applicable Pay-Go fee based on the parameters established in this Act.

**Section 2.5.-** Compensation for Contributions Owed.

Payments made to the Accumulated Pension Benefits Payment Account shall be deducted from the Contributions Owed and any other debt that, as of the effective date of this Act, government entities and other covered entities may have with the Retirement Systems, including the Government, Municipalities, Public

Corporations, the Legislative Assembly, and the Courts Administration, respectively.

**Section 2.6.-** Special Provisions.

Notwithstanding the provisions of this Act, it is hereby provided as an exception, that the teachers and members of the Teachers' Retirement System who are making contributions to the Teachers' Retirement System under Act No. 91-2004, as amended, known as the "Commonwealth of Puerto Rico Teachers' Retirement System Act," shall continue to make such contributions in accordance with the provisions of said statute. The Accumulated Pension Benefits of said teachers and members of the Teachers' Retirement System shall be those computed based on the terms and conditions of said Act. Likewise, it is hereby provided that the Accumulated Pension Benefits of Judges who are making contributions and those newly enrolled in the Judiciary Retirement System who are appointed after the approval of this Act shall continue to be computed as provided in Act No. 12 of October 19, 1954, as amended, known as the "Judiciary Retirement Act," applicable to every judge. It is hereby expressly provided that such Accumulated Pension Benefits as well as the terms to pay them shall not be affected or modified in any manner whatsoever by the provisions of this Act. However, the individual contributions of said teachers, members of the Teachers' Retirement System, and judges shall remain just as they were prior to the approval of this Act and be deposited in the Accumulated Pension Benefits Payment Account, as established by the Retirement Board.

Teachers, members of the Teachers' Retirement System, and judges who wish to enroll in the New Defined Contribution Plan may do so voluntarily, as determined by the Retirement Board. To do so, they must make the contribution provided in Section 3.4 of this Act in addition to their current individual contribution.

## CHAPTER 3.- DEFINED CONTRIBUTION PROGRAM

**Section 3.1.-** New Defined Contribution Plan.

(a)    A New Defined Contribution Plan is hereby created that shall consist in the establishment of a trust fund, which shall not be subject to the provisions of Act No. 219-2012, as amended, known as the "Trust Act," and which shall contain an individual account for every Participant of the Retirement Systems who enrolls in said program as provided in this Chapter. Each Participant's contributions to the New Defined Contribution Plan as well as the return on investment pursuant to Section 3.6 of this Act shall be credited to individual accounts. These contributions' benefits to be provided to each Participant upon separation from service, whether upon retirement or otherwise, shall depend on the total contributions made to the New Defined Contribution Plan as well as the return on investment thereof accumulated in the participant's account after the effective date of this Act, or on the date in which the Participant enrolled in the New Defined Contribution Plan.

(b)    The following individuals may participate in the New Defined Contribution Plan:

(1)    Every active Retirement System Participant, on the effective date of this Act; except for teachers, members of the Teachers' Retirement System making contributions to the Teachers' Retirement System under Act No. 91-2004, and judges making contributions under the Judiciary Retirement System, who did not enroll in the New Defined Contribution Plan and continue contributing to their Retirement Systems as they have done thus far, except as provided in Section 2.6.

(2)    Every Participant who enters public service for the first time on or after the approval of this Act.

(3)     Participation in the New Defined Contribution Plan shall be optional for the Governor of Puerto Rico, Members of the Cabinet, Heads of Agencies and Public instrumentalities, advisors and aids to the Governor, members of Commissions and Boards appointed by the Governor, members of the Legislative Assembly, employees and officials of the Legislative Assembly, the Office of Legislative Services, and the Capitol Superintendence, and the Comptroller of Puerto Rico.

(4)     Participation in the New Defined Contribution Plan shall be optional for the employees of the departments, divisions, bureaus, offices, entities, public corporations, and instrumentalities of the Government of Puerto Rico who work and reside outside of the territorial limits of Puerto Rico.

(5)     Any company or public corporation whose employees are not enrolled in the Retirement Systems as of the approval of this Act may, through a resolution adopted by its Board of Directors or highest governing body, as the case may be, join the New Defined Contribution Plan created under this Act. The Retirement Board shall establish the requirements and the process to enroll in the New Defined Contribution Plan.

**Section 3.2.-** Transfer to the Plan.

After the effective date of this Act, all active Participants who are part of the membership of the Retirement Systems, regardless of the date on which they were first appointed to the Government shall become participants of the New Defined Contribution Program, except as otherwise provided in Section 3.1(b)(1).

**Section 3.3.-** Establishment of Contribution Accounts for the New Defined Contribution Plan.

(a)     The Participants' individual contributions shall be directed to a New Defined Contribution Plan, in which a Defined Contribution Account shall be established and held in trust, separate from the general assets and accounts of the

Government, individually for each Participant, which shall be credited and debited in accordance with this Chapter. The individual contributions and funds in each Defined Contribution Account shall belong exclusively to the corresponding Participant, shall not be subject to any type of taxation or attachment, and shall be exempt from any individual or class action from the creditors of the Participant, except for the Participants' debt with the Retirement Systems, the employer, and the Government.

(b)     The accounts of the Participants of the Defined Contribution Program of the Teachers' Retirement System that as of the approval of this Act have a balance therein, shall be immediately transferred to their respective Defined Contribution Accounts.

(c)     During the period between the approval of this Act and the time in which the Retirement Board hires the services of a Managing Entity to manage the New Defined Contribution Plan, and such entity begins to discharge its duties in accordance with the contract executed for such purposes, the Secretary of the Treasury shall have authority and power to collect and deposit the Participant's Individual Contributions in a trust fund, which shall not be subject to the provisions of Act No. 219-2012, as amended, known as the "Trust Act," and which shall be separate from the general assets and accounts of the Government under his custody. Once the Managing Entity begins operations, the Secretary of the Treasury shall transfer thereto the funds of the Individual Contributions to be deposited in the Defined Contribution Accounts of each Participant. The Managing entity shall establish, for such purposes, a trust that shall not be subject to the provisions of Act No. 219-2012, as amended, known as the "Trust Act." Any amount set aside after July 1, 2017 shall be treated in the manner provided in this subsection.

(d)     The income and earnings generated by each Defined Contribution Account shall be exempt from any type of taxes, duties, excises. or liens while they are maintained in Defined Contribution Accounts. Distributions from Defined Contribution Accounts shall be subject to taxation by the Participant or Beneficiary in accordance with the provisions of Section 1081.01(b) of the Code as a distribution from an exempt trust under the provisions of Section 1081.01(a) of the Code, and said distributions shall be subject to the tax exemptions, withholdings, and the filing of the required information statements provided in said Section 1081.01(b) of the Code.

**Section 3.4.-** Contributions by Participants of the New Defined Contribution Plan.

After the effective date of this Act, every Retirement Systems Participant shall mandatorily make contributions to his Defined Contribution Account at a minimum rate of eight point five percent (8.5%) of his monthly compensation, up to the limit established in the Code. In addition, Participants may voluntarily contribute additional amounts as allowed under the Code. Upon the approval of this Act, the Participants of the New Defined Contribution Plan shall be entitled to adjust their current contribution to the Retirement Systems to the minimum rate authorized in this Section. The Participants of the New Defined Contribution Plan may adjust the percentage they wish to contribute to such Plan from time to time, but it shall never be less than the minimum rate required by this Act.

**Section 3.5.-** Employer Duties; Sanctions.

Every employer of a Participant of the New Defined Contribution Plan shall have the following duties:

(1)     **Duty to Deduct and Transfer Contributions** – The employer of a Participant of the New Defined Contribution Plan shall deduct from the Participant's salary the contributions provided in Section 3.4 of this Act and

transfer them forthwith to the New Defined Contribution Plan to be deposited in the Defined Contribution Account. The Secretary of the Treasury or any payroll officer of the employer is hereby authorized to make the deductions, even if the salary to be paid to the Participant as a result of said deductions is reduced to less than any minimum prescribed by law. The Retirement Board shall prescribe the form and manner in which the contributions shall be remitted.

(2)   **Penalty and Special Measures on Contributions Owed** – Any employer who fails to remit the Individual Contributions of the Participants of the New Defined Contribution Plan and/or the Pay-Go Fee, as provided in this Act, within the term provided therefor, as well as any other remittance related to the Participants, shall be subject to the following corrective actions:

a.   The Retirement Board, its designee, or the Managing Entity shall request in writing, accompanied by an official certification of debt:

i.   To delinquent employers, the transfer of the Contributions Owed.

ii.   To the Secretary of the Treasury, to make any compensation and/or adjustment in the accounts, obligations, and advances that the Department of the Treasury must remit to the delinquent employer, and transfer the amounts of Contributions Owed to the New Defined Contribution Plan and/or Accumulated Pension Benefits Payment Account, as appropriate.

iii.   To the Municipal Revenue Collection Center (CRIM, Spanish Acronym), to remit within seven (7) days after the written notice, to the New Defined Contribution Plan and/or Accumulated Pension Benefits Payment Account, the amounts of the Contributions Owed by the Municipal employer, of the unencumbered balance of the property tax and other revenues that the Municipalities are entitled to receive in accordance with Act No. 80-1991, as amended, known as the "Municipal Revenue Collection Center Act."   After the

effective date of this Act, a preferred statutory lien is hereby automatically and permanently constituted on said unencumbered balance in favor of the Retirement Board and/or Managing Entity to collect the Contributions Owed, without the need for any other act, possession, or control thereon.

iv.     The Office of Management and Budget may withhold from any of the appropriations made to the agencies of the Government of Puerto Rico, the necessary amounts for the payment of the Pay-Go Fee, if it determines that such withholding is necessary to ensure that the agencies concerned meet their obligations.

b.     The Retirement Board or Managing Entity shall notify in writing every Chief Officer or Head of an Agency, Public Corporation, Municipality or any other covered entity that fails to withhold their employees' contributions and/or to remit to the New Defined Contribution Plan and/or Accumulated Pension Benefits Payment Account the amounts corresponding to each item. The notified deficiency shall be paid within a term not to exceed ten (10) business days. If a Chief Officer, Head, or any official with authority of an Agency, Public Corporation, Municipality or any other covered entity, who knowingly and without just cause, fails to remit the corresponding payments to the New Defined Contribution Plan and/or Accumulated Pension Benefits Payment Account, shall be guilty of a misdemeanor and be punished by imprisonment for a term of six (6) months or by a fine of five thousand dollars ($5,000), or both penalties at the discretion of the Court. Said fine shall be paid by the Chief Officer, Head, or any official with authority of an Agency, Public Corporation, Municipality or any other covered entity from his own private funds. The Government of Puerto Rico and its instrumentalities shall not provide legal representation to said officer in a legal action to enforce this provision.

c.     Each Beneficiary, Participant, or Retiree may bring an action against each Chief Officer, Head of Agency, Budget or Finance Director, or any official with authority of an Agency, Public Corporation, or Municipality in their individual capacity to claim the contributions owed after the effective date of this Act and demand payment thereof as appropriate. The Government shall ensure that said contributions are made, and should the need to disburse funds for the payment of contributions owed after the effective date of this Act arise, it shall bring, without leaving room for discretion, an action seeking collection or refund against the Chief Officer, Head of Agency, Budget or Finance Director, or any official with authority who has failed to remit such payments. The Government of Puerto Rico and its instrumentalities shall not provide legal representation to said officer in said actions. This provision shall have supremacy over any other statute. The provisions of this subsection shall not be construed as to exclude or release the Government, Public Corporations, Municipalities or other covered entities from their liability and ministerial duty to timely pay the contributions owed, as provided in this Act. Participants may opt to bring the corresponding collection lawsuit against the Government in accordance with the regulations adopted by the Board for such purposes.

**Section 3.6.-** Credits to the Defined Contribution Account, Return on Investment, and Rights over the Defined Contribution Account.

(a)     Credits.- The following items shall be credited to the Defined Contribution Account of each Participant of the New Defined Contribution Plan:

(1)     Participant's Individual Contribution – The individual contributions made by a Participant of the New Defined Contribution Plan, as required in this Act, shall be credited once they are remitted by the employer.

(2)     Return on Investment – The return on investment shall be subject to the Participant's investment option, according to his preference and risk profile. Participants shall be provided with several diversified investment options, as determined by the Retirement Board. Among said alternatives, at least one of the options shall guarantee the total amount of the individual contributions made by the Participant, thus preserving the principal thereof. Said option shall be automatically selected if the employee does not select a preferred option. Participants may choose another option from those offered from time to time. Basic and reasonable management fees shall be covered by the Government of Puerto Rico. However, the return on investment shall be credited to the account of each Participant and net from add-on or special management fees, as determined by the Retirement Board, ensuring that such fees are reasonable. Participants shall be provided, periodically and at least annually, with reports on the activity of their Defined Contribution Accounts, whether on a printed or electronic format readily accessible through a Government website.

(3)     Transfers of the Teachers' Retirement System Defined Contribution Account balances accumulated since August 1, 2014, as applicable.

(4)     Balances set aside after July 1, 2017, as provided in House Joint Resolutions No. 186, 187, and 188 of 2017.

(b)     Rights over Defined Contribution Accounts – The Participants of the New Defined Contribution Plan shall be entitled to *erga omnes* ownership rights over the balance of their Defined Contribution Accounts.

**Section 3.7.-** Debits from Defined Contribution Accounts.

Any amounts used to pay benefits or make a lump sum distribution to the corresponding Participant shall be debited from the Defined Contribution Account established for each Participant of the New Defined Contribution Plan, as provided by the Retirement Board. Once the total balance of a Defined Contribution Account is distributed, such account shall cease to exist.

**Section 3.8.-** Benefits upon Separation from Service.

If a Participant separates from public service, his Defined Contribution Account may remain in the New Defined Contribution Plan, be transferred to an exempt qualified defined contribution plan under Section 1081.01(a) of the Code, or the Participant may request a refund, subject to the applicable taxes payable upon disbursement of the funds as provided in the Code and the regulation adopted by the Retirement Board for such purposes.

**Section 3.9-** Death Benefits.

(a)     Death of Participant in Active Service.- Upon the death of a Participant who was rendering services and had an available balance in his Defined Contribution Account, such balance shall be paid to the Beneficiaries designated by the Participant by a written order duly recognized and filed, or to his heirs if said designation had not been made, subject to the requirements set forth in subsection (b) below.

(b)     Death of a Retiree.- In the event a retiree dies without having exhausted the balance of the Defined Contribution Account, his designated Beneficiaries, or his heirs if no Beneficiary was designated, may request in writing, upon filing of a declaration of heirship or will and any other document required by the Board, the payment of such balance in a lump sum, subject to any applicable deduction or tax required by law or the Code.

## CHAPTER 4- RETIREMENT BOARD AND MANAGING ENTITY

**Section 4.1-** Government of Puerto Rico Retirement Board

(a)    The Government of Puerto Rico Retirement Board is hereby created as a new body of the Government of Puerto Rico, independent and separate from others, which shall be appointed within a term of sixty (60) days after the approval of this Act and be composed of thirteen (13) members as stated below:

1.    The Executive Director of FAFAA who shall also serve as its Chair. In his absence, he may be represented by a FAFAA official designated by him;

2.    The Secretary of the Treasury or his representative;

3.    The Director of the Office of Management and Budget or his representative;

4.    The Director of the Government of Puerto Rico Human Resources Administration and Transformation Office or his representative;

5.    One (1) representative of the teachers of the Department of Education, who shall be an active teacher of the Department of Education, to be designated by the Governor for a term of five (5) years and who shall discharge his duties until his successor is appointed and takes office;

6.    One (1) representative of the public corporations, to be designated by the Governor for a term of five (5) years and who shall discharge his duties until his successor is appointed and takes office;

7.    One (1) representative of the Judicial Branch to be designated by the whole Supreme Court of Puerto Rico *en banc* and who shall serve at the discretion thereof.

8. The President of the Mayors Federation or his representative;

9. The President of the Puerto Rico Mayors Association or his representative; and

10.     Four (4) representatives of the public interest, to be designated by the Governor for a term of five (5) years and who shall discharge their duties until their successors are appointed and take office. One (1) of the representatives of the public interest shall be a teacher Retiree of the Teachers' Retirement System, one (1) shall be a Retiree of the Retirement System for Employees of the Government of Puerto Rico, one (1) shall be a representative of the members of the Puerto Rico Police to be appointed by the Governor in consultation with the *bona fide* organizations that represent this sector and are duly authorized by law, and one (1) to be freely appointed by the Governor.

The persons designated pursuant to paragraphs (5) and (6) shall serve for an initial term of two (2) years. The persons designated pursuant to paragraph (10) shall serve for an initial term of three (3) years. After the initial term of each of the members expires, their successors shall be appointed in accordance with the provisions of this Section. The members of the Retirement Board shall serve *ad honorem*.

(b)     The persons selected to hold the offices designated by the Governor of Puerto Rico and the whole Supreme Court of Puerto Rico *en banc* shall be knowledgeable and have experience in the administration and operations of financial systems or in the administration human resources and must be persons of good moral character.

(c)     Seven (7) members of the Retirement Board shall constitute a quorum to address any matter before its consideration and any resolution adopted by the Retirement Board must be approved by a majority of the members present. Board members may participate in such meetings via video conferencing, telephone calls, or similar methods.

(d)     The Retirement Board shall establish bylaws as are necessary for its operations and to comply with this Act, which includes the functions and duties of its members.

(e)     The Retirement Board may appoint an Executive Director, and also set his salary and establish his powers, authorities, and duties as well as hire personnel as is necessary to discharge its duties in accordance with this Act.

(f)     Act No. 1-2012, as amended, known as the "Puerto Rico Government Ethics Act of 2011," shall apply to all the members of the Retirement Board, except for Chapter V of said Act.

**Section 4.2-** Powers, Authorities, and Duties of the Retirement Board.

For the purpose of discharging the duties established herein, the Retirement Board shall have the following powers, duties, and authorities:

(a)     To act as the highest governing body of the Retirement Systems. For such purposes, the Board shall have and exercise all the powers, duties, and authorities conferred to the Boards of Trustees of the Retirement Systems. These powers and authorities shall be automatically and permanently transferred to the Retirement Board upon the approval of this Act. As a result, the Boards of Trustees of the Retirement Systems shall be dissolved upon the approval of this Act. Any reference to the Boards of Trustees of the Retirement Systems shall be construed to refer to the Retirement Board. Any provisions and bylaws adopted by the Boards of Trustees of the Retirement Systems shall remain in effect after the approval of this Act until they are amended or modified by the Retirement Board and any reference to the Boards of Trustees of the Retirement Systems in such bylaws shall be construed to refer to the Retirement Board. The foregoing shall be subject to the provisions of Chapter 7 of this Act. Moreover, the Retirement Board shall have and exercise all the powers, duties, and authorities necessary to administer and manage the New Defined Contribution Plan and to oversee any Managing Entity, which

includes the authority to establish the rules and requirements to receive benefits under the New Defined Contribution Plan.

(b)     To hire, through a competitive process, the services of one or various Managing Entities for the purpose of administering the Accumulated Pension Benefits Payment Account and/or the New Defined Contribution Plan. The request for proposals mechanism shall be used in the process of selecting such entity and/or entities in accordance with the rules established by the Retirement Board, safeguarding the best interests of the Government and the Participants and consistently with the best practices of the industry. Any reference to the Retirement Systems Administrators shall be construed to refer to the Managing Entities. All the provisions and bylaws adopted by the Retirement Systems Administrators shall remain in effect after the approval of this Act until they are amended or modified by the Managing Entities or the Retirement Board. All of the foregoing shall be subject to the provisions of Chapter 7 of this Act.

(c)     To adopt rules, regulations, bylaws, and procedures for its organization and operations and for the implementation of this Act.

(d)     To charge any deductions in addition to the Participants' Individual Contributions up to a maximum of 0.25% which is what is currently deducted according to their respective Retirement Systems to defray other benefits, such as disability insurance.

(e)     To establish and collect an Administrative Fee which shall be computed based on the expenses incurred in the operations and administration of the Accumulated Pension Benefits Payment Account and the New Defined Contribution Plan.

(f)     To establish, implement, and oversee the best practices related to discretion, loyalty, diligence, and the rules applicable to the New Defined Contribution Plan regarding the operation thereof, the rights of Participants, the

responsibilities of administrators, fiduciary duties, and any other rules applicable under the "Employee Retirement Income Security Act," Public Law 93-406, of September 2, 1974, or any other pertinent or similar statute.

(g) To enter into agreements as are reasonable and appropriate, memoranda of understanding, and documents, including trust deeds, as are necessary and convenient to implement the provisions of this Act, taking into account the Government of Puerto Rico's current economic and fiscal situation.

(h) To appoint those commissions, boards, and committees it deems necessary to better achieve the objectives of this Act.

(i) To sue and be sued, including on behalf of the Retirement Systems.

(j) To exercise all the powers necessary to comply with this Act and the regulations adopted thereunder.

## CHAPTER 5- TRANSITORY PROVISIONS

**Section 5.1-** Transition Period.

(a) As long as the Retirement Board is not duly constituted pursuant to the quorum required by this Act, the Executive Director of FAFAA shall have and exercise all the powers of the Retirement Board, which includes making decisions related to the creation of the New Defined Contribution Plan and the structuring of the pay as you go program, as provided in this Act or in any other applicable statute.

(b) The Retirement Systems Administrators shall continue performing their functions and discharging their duties, and shall be required to provide all the support necessary to the Retirement Board and FAFAA during the implementation of this Act until the date in which FAFAA certifies, through a Resolution issued by its Board of Directors, that the transition herein directed has been completed. Said transition must be completed on or before December 31, 2017. However, this date may be extended for a reasonable term, if necessary, through a Resolution issued

by FAFAA. As of the aforementioned date, all of the powers, duties, and authorities of the Retirement System Administrators shall be permanently transferred to the Managing Entities, the Executive Director of the Retirement Board, or the person designated by the Retirement Board.

(c)    The Retirement System Administrators shall take any necessary steps to liquidate their assets and transfer them to the General Fund and/or the Accumulated Pension Benefits Payment Account, as applicable, except for the building that serves as the headquarters of the Teachers' Retirement System, known as the Capital Center Building North Tower, located in Hato Rey, Puerto Rico, which shall not be liquidated; to transfer the records of the Participants and retirees, including their balances, to the Retirement Board; and to coordinate the mobility of its employees pursuant to Act No. 8-2017, as amended, known as the "Government of Puerto Rico Human Resources Administration and Transformation Act," and any other applicable provisions. Upon the approval of this Act, FAFAA shall have all of the authorities and powers necessary to take the necessary steps, in conjunction with Retirement Systems Administrators, to adjust the operations of the Retirement Systems to the provisions of this Act and the Certified Fiscal Plan, in order to comply with the transition directed hereunder. The employees of the Retirement Systems as well as those career employees of the Boards of Trustees of such Systems shall be notified of the details of the mobility, new headquarters, and any other pertinent information within a period of thirty (30) days before the transition term elapses to prevent any uncertainty in view of the proposed changes.

(d)    The Retirement Board shall organize and conduct an education campaign on the provisions of this Act, in coordination with the Retirement Systems Administrators and with the assistance and resources thereof, directed at the Participants, Retirees, and Beneficiaries.

(e)     The Retirement Systems Administrators, as well as the employees of the Retirement Systems, shall continue to discharge their duties during the transition period.

**Section 5.2-** Employees of the Retirement Systems

The Government of Puerto Rico Human Resources Administration and Transformation Office, the Office of Management and Budget, and FAFAA shall establish a plan to implement employee mobility in the Retirement Systems for the purpose of moving the employees thereof to other agencies and instrumentalities of the Government of Puerto Rico pursuant to the provisions of Act No. 8-2017, as amended, known as the "Government of Puerto Rico Human Resources Administration and Transformation Act," or the procedures to be established for such purposes through regulations, procedures, circular letters, among others. Nevertheless, the employees shall continue to discharge their duties during the transition period established herein, as determined by the Board.

Transferred employees shall keep their salaries and all vested rights in accordance with the applicable laws, rules, and regulations that are consistent with the provisions of Act No. 26-2017, known as the "Fiscal Plan Compliance Act."

**Section 5.3-** Transfer of Equipment and Property.

The Retirement Board shall have the power to administer and dispose of all the equipment and property of the Retirement Systems.

## CHAPTER 6.- AMENDMENT CLAUSES.

**Section 6.1.-** Section 2 of Act No. 12 of October 19, 1954, as amended, known as the "Judiciary Retirement Act," is hereby amended to read as follows:

"Section 2.- Definitions.

The following terms or phrases as used in this Act shall have the meaning stated hereinbelow, except when the context clearly indicates otherwise:

(1)     Administrator.- Shall mean the person or entity designated by the Retirement Board created through the 'Act to Guarantee the Payment of Pension Benefits to our Retirees, and to Establish a New Defined Contribution Plan for Public Employees,' to discharge the duties of the Administrator of the System.

...

(9)     Board.- Means the Retirement Board created through the 'Act to Guarantee the Payment of Pension Benefits to our Retirees, and to Establish a New Defined Contribution Plan for Public Employees."

..."

**Section 6.2.-** Section 1-104 of Act No. 447 of May 15, 1951, as amended, is hereby amended to read as follows:

"Section 1-104.- Definitions.

The following words or phrases as used in this Act shall have the meaning stated hereinbelow, except when the context clearly indicates otherwise:

(1)     Board.- Means the Retirement Board created through the 'Act to Guarantee the Payment of Pension Benefits to our Retirees, and to Establish a New Defined Contribution Plan for Public Employees.'

(2)     Administrator.- Shall mean the person or entity designated by the Retirement Board created through the 'Act to Guarantee the Payment of Pension Benefits to our Retirees, and to Establish a New Defined Contribution Plan for Public Employees,' to discharge the duties of the Administrator of the System.

…"

**Section 6.3.-** Section 4-101 of Act No. 447 of May 15, 1951, as amended, is hereby amended to read as follows:

"Section 4-101.- Administration.

The System created by this Act shall be considered a trust. Any change in the benefit structure of the trust, which results in an increase in the amount of annuities

or other benefits, shall be supported with prior actuarial studies to determine its cost, and the corresponding legislation shall provide for its financing.

The System hereby created shall be organized as an agency of the Government of Puerto Rico, independent and separate from others. The Retirement Board shall not be subject to the provisions of Plan No. 3-2011, as amended, known as the 'Reorganization Plan of the General Services Administration of 2011,' nor to the 'Management and Budget Office Organic Act,' and shall be governed by Act No. 8-2017, as amended, known as the 'Government of Puerto Rico Human Resources Administration and Transformation Act.'

The Retirement Board created through the 'Act to Guarantee the Payment of Pension Benefits to our Retirees, and to Establish a New Defined Contribution Plan for Public Employees' shall be responsible for ensuring compliance with the provisions of this Act."

**Section 6.4.-** Subsections 11 and 12 of Section 4-103 of Act No. 447 of May 15, 1951, as amended, are hereby repealed and subsections 13, 14, and 15 are hereby renumbered as 11, 12, and 13, respectively.

**Section 6.5.-** Section 1.1 of Act No. 160-2013, as amended, known as the "Commonwealth of Puerto Rico Teachers' Retirement System Act," is hereby amended to read as follows:

"Article 1.1.- Definitions.

The following words and terms, when used or referred to in this Act, shall have the meaning indicated hereinbelow unless another meaning clearly arises from the context. Words in the present tense shall also include the future; and words importing the masculine gender shall include the feminine gender, except when said interpretation would be absurd. Words importing the singular number shall include the plural and vice versa.

(a)     ...

...

(f)     Executive Director. – Means the person or entity designated by the Retirement Board, created through the 'Act to Guarantee the Payment of Pension Benefits to our Retirees, and to Establish a New Defined Contribution Plan for Public Employees to discharge the duties of the Administrator of the System.

...

(k)     Board of Trustees. – Means the Retirement Board, created through the 'Act to Guarantee the Payment of Pension Benefits to our Retirees, and to Establish a New Defined Contribution Plan for Public Employees.'

..."

**Section 6.6.-** Section 2.3 of Act No. 160-2013, as amended, known as the "Commonwealth of Puerto Rico Teachers' Retirement System Act," is hereby amended to read as follows:

"Article 2.3.- System's Board of Trustees.

The powers and authorities of the System and the responsibility to establish the general administration and adequate operation thereof shall be assumed by the Retirement Board created through the 'Act to Guarantee the Payment of Pension Benefits to our Retirees, and to Establish a New Defined Contribution Plan for Public Employees.'"

**Section 6.7.-** Sections 2.4, 2.5, and 2.6 of Act No. 160-2013, as amended, known as the "Commonwealth of Puerto Rico Teachers' Retirement System Act," as amended, are hereby repealed and Sections 2.7 and 2.8 are hereby renumbered as Sections 2.4 and 2.5, respectively.

**Section 6.8.-** Paragraphs (3), (8), (9), (11), and (14) of subsection (a), and subsections (b) and (d) of Section 1081.01 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico," are hereby amended to read as follows:

"Section 1081.01.- Employee Trusts.

(a)     Exemption.- A trust organized under the laws of Puerto Rico and forming part of a retirement, stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of its employees residents of Puerto Rico or who perform services primarily in Puerto Rico, and their beneficiaries; or a trust organized under the laws of Puerto Rico, or considered a domestic trust under the United States Internal Revenue Code of 1986, as amended, or any successor legal provision, forming part of a retirement, stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of its employees residents of Puerto Rico or employees resident of Puerto Rico and the United States and their beneficiaries and meeting, with respect to its participants and beneficiaries of the United States, the requirements for qualification of Section 401 (a) of the United States Internal Revenue Code, as amended (hereinafter, for purposes of this Section, the 'Federal Code') shall not be taxable under this Subchapter and no other provision of this Subchapter shall apply with regard to said trust or its beneficiaries, provided that its terms and operation satisfy the following qualification requirements.-

(1)     ...

(2)     ...

`        (3)     if the trust, or two (2) or more trusts, or the trust or trusts and the annuity plan or plans are designated by the employer as constituting part of a plan intended to meet the minimum coverage requirements provided in this paragraph.

(A)     ...

(B)     ...

(C)     ...

(D)     ...

(E)    Special Rule for Qualified Plans in the United States.- If the trust is organized in the United States and, with respect to all its participants, including those who are residents of Puerto Rico, for a year of the plan, the retirement plan satisfies the coverage requirements of Section 410(b) of the Federal Code, it shall be understood that for that same year of the plan, said plan satisfies the requirements of this Section 1081.01(a)(3), provided that the plan has been duly certified by the Secretary as a qualified plan under this section.

(F)    Exclusion of Government Plans.- The coverage requirements of Section 1081.01(a)(3) shall not apply to such retirement plans established by the Government of Puerto Rico, the Government of the United States, and their respective municipalities, agencies, instrumentalities, and public corporations.

(4)    ...

(5)    ...

(6)    ...

(7)    ...

(8)    In the case of any plan that provides contributions or benefits to employees, all or any of which are owner-employees (as defined in subsection (e)), a trust forming part of such plan shall constitute a qualified trust under this Section only if it meets the requirements of subsection (f). For the loss of exemption under certain circumstances in the case of employee trusts, see Sections 1102.06 and 1102.07.

(9)    The plan shall also comply with the applicable provisions of the Employee Retirement Income Security Act of 1974, known as ERISA.

(10)    ...

(11)   For taxable years beginning after January 1, 2012, a trust shall not constitute an exempt trust under subsection (a) of this Section, if the plan of which the trust is a part provides for the payment of benefits or contributions with respect to a participant in excess of the following limitations:

(A)   ...

(B)   In the case of a defined contribution plan, the annual contributions of the employer and the participant and other additions with respect to a participant, without including contributions rolled over from another qualified retirement plan, shall not exceed the lesser of:

(i)   the applicable limitation for a specific taxable year under Section 415(c) of the Federal Code, as adjusted by the United States Internal Revenue Service, or

(ii)   one hundred percent (100%) of the participant's compensation paid by the employer during the calendar or plan year, as elected by the employer. The participant's compensation includes the contributions made by the participant to a qualified plan under a cash or deferred contribution arrangement for said year.

(C)   ...

(12)   ...

(13)   ...

(14)   Groups of Employers.-

(A)   ...

(B)   ...

(C)   Exclusion of Government Plans.- The requirements of Section 1081.01(a)(13) for groups of employers shall not apply to retirement plans established by the Government of Puerto Rico, the Government of the United

States, and their respective municipalities, agencies, instrumentalities, and public corporations.

(15)   ...

(b)   Taxability of Beneficiary.-

(1)   In general.- The amount actually distributed or made available to any participant or beneficiary by an exempt employee trust under Section 1081.01(a) shall be taxable to such participant or beneficiary in the year in which it is so distributed or made available, and the rules of Section 1031.01(b)(11)(A) shall apply thereto, as if it were an annuity whose price or consideration is the amount of the voluntary contributions made by the participant, excluding investment gains attributable thereto, and those amounts for which the taxpayer previously paid income taxes in Puerto Rico.

(A)   Total Distributions paid before January 1, 2018.- If the total benefits under the trust with respect to any participant are paid or made available to the participant or beneficiary within a single taxable year of the latter due to the participant's separation from service for any reason, or the termination of the plan (hereinafter for purposes of this subsection, 'total distribution'), the amount of such distribution, in the amount which exceeds the amount contributed by the participant, for which he has already paid taxes, shall be deemed to be long-term capital gains subject to a twenty percent (20%)-rate. The foregoing notwithstanding, in the case of total distributions made by a trust forming part of a stock bonus, pension, or profit-sharing plan, or of the acquisition of stock for employees, if:

(i)   The trust is organized under the laws of the Government of Puerto Rico or has a trustee resident of Puerto Rico and uses said trustee as paying agent; and

(ii)     At least ten percent (10%) of the total assets of the trust attributable to participants residents of Puerto Rico, computed on the basis of the average balance of the trust investments during the year of the plan in which the distribution is made and during each of the two years preceding the distribution date, have been invested in registered investment companies organized under the laws of Puerto Rico and subject to taxation under Section 1112.01 of the Code, in fixed or variable annuities issued by a domestic or foreign insurance company that during the three calendar years preceding the distribution date derived more than eighty percent (80%) of its gross income from sources in Puerto Rico, deposits in interest-bearing accounts in commercial and mutual banks, cooperatives, savings associations authorized by the Federal Government or the Government of Puerto Rico, or in any other banking institution located in Puerto Rico including, but not limited to certificates of deposit or any other property qualified by the Secretary as property located in Puerto Rico through regulations or circular letter, then the amount of such distribution in excess of the amount contributed by the participant for which he has already paid taxes, shall be deemed to be long-term capital gains subject to a ten percent (10%) rate. In the case of defined contribution plans whereby a separate account is maintained for each participant or beneficiary, the requirement for investing in 'property located in Puerto Rico' may be met in relation to the assets accredited to the account of the participant or beneficiary. In the case of the transfer of a qualified plan under subsection (a) of this Section (the transferor plan) to another qualified plan under subsection (a) of this Section, the requirement for investing in 'property located in Puerto Rico' of this subparagraph (B) shall be met with respect to the transferor plan taking into account the period of time during which the transferor plan or the account of the participant in the transferor plan met the investment requirement of this subparagraph (B). The Secretary may, through regulations, circular letter, administrative determination or

final agreement, provide the manner in which the requirement of investing in Puerto Rico shall be met.

(B)    Total Distributions paid after December 31, 2017.- If the total benefits under this trust with respect to any participant are paid or made available to the participant or beneficiary within a single taxable year of the latter due to the participant's separation from service for any reason, or the termination of the plan (hereinafter 'total distribution' for purposes of this subsection) the amount of such distribution, in the amount which exceeds the amount contributed by the participant, for which he has already paid taxes, shall be deemed to be regular income subject to the tax rates provided in Section 1021.01. However, in the case of total distributions with respect to which the requirement of withholding at the source under Section 1081.01(b)(3)(A) and of deposit under Section 1081.01(b)(4), have been met in lieu of the tax rates provided under Section 1021.01, the twenty percent (20%)-rate shall apply. However, if the requirements provided in clauses (i) and (ii) of subparagraph (A) of this paragraph are met, the ten percent (10%)-rate shall apply.

(C)    Other Distributions.-  If any part of the trust's benefits with respect to a participant are paid or made available to the participant or beneficiary through an option, form of payment, or distribution other than a total distribution or a non-taxable loan, the amount of such payment or distribution in excess of the amount contributed by the participant for which he has already paid taxes and, if applicable, the exemption for income under Section 1031.02(a)(13), shall be deemed to be regular income subject to the tax rates provided in Section 1021.01.

(2)     Exception and Special Rule.-

(A)     At the option of the participant or beneficiary, the provisions of paragraph (1) of this subsection shall not apply to that portion or to the entire total distribution that the plan of which the exempt trust is part transfers directly or that the participant contributes to an individual retirement account or annuity under the provisions of Section 1081.02, to a nondeductible individual retirement account under the provisions of Section 1081.03, or to a qualified retirement plan under the provisions of subsection (a) of this Section for the benefit of said participant or beneficiary not later than sixty (60) days after the payment or distribution was received. In the case of a transfer to a nondeductible individual retirement account, the exception to which this paragraph refers shall only apply to those distributions described in Section 1081.03(d)(5)(A). The foregoing notwithstanding, contributions by transfers to nondeductible individual retirement accounts shall be subject to taxation as provided in Section 1081.03(d)(5) and, for purposes of this paragraph, it shall be considered that the requirements of such section have been met if a contribution is made to the nondeductible individual retirement account in an amount equal to the total amount received from the qualified trust by the participant or beneficiary minus the contribution provided in said Section 1081.03(d)(5) that has been withheld as provided therein.

(B)     ...

(3)     Duty to Deduct and Withhold.-

(A)     Total Distributions.- Any person, acting in any capacity, who makes total distributions payable with respect to any participant or beneficiary shall deduct and withhold from said distributions made before January 1, 2018, an amount equal to twenty percent (20%) of the amount thereof in excess of the amounts contributed by the participant to the plan for which he has already paid taxes. This deduction and withholding shall be ten percent (10%) if the trust meets

the requirements provided in subparagraphs (A) and (B) of paragraph (1) of this subsection. Provided that, for total distributions made after December 31, 2017, ten percent (10%) of the contribution shall be withheld. For distributions made before January 1, 2018, the employer whose employees participate in the plan or the administrator of the plan shall certify to the person making the distributions of the trust that the requirement of investment in 'property located in Puerto Rico' has been met. Once the certification issued by the employer is received, the person making the distributions of the trust shall not be liable for the payment of taxes, interest, or penalties if this requirement has not been met, but shall be liable for deducting and withholding the ten percent (10%).

     (B)   ...

     (C)   ...

     (D)   ...

     (E)   ...

         (i)   ...

         (ii)   ...

     (4)   Duty to Pay or Deposit Deducted or Withheld Taxes.- Any person required to deduct and withhold any tax pursuant to the provisions of paragraph (3) and to pay over said tax to the Secretary shall pay the amount of the tax thus deducted and withheld to the Puerto Rico Internal Revenue Collection Offices of the Department of the Treasury, deposit it in any of the banking institutions designated as depositaries of public funds, which have been authorized by the Secretary to receive said tax, or deposit it electronically as established by the Secretary through regulations, administrative determination, circular letter, or general information bulletin. The tax shall be paid or deposited not later than the fifteenth (15th) day of the month following the date on which the distribution was made.

(5)    ...

(6)    ...

(7)    ...

(8)    Penalty.- In the event that any person fails to deposit the taxes deducted and withheld pursuant to paragraph (3), within the term prescribed by paragraph (4) of this subsection (b), a penalty of two percent (2%) of the amount of the insufficiency shall be imposed on said person if the omission is for thirty (30) days or less, and two percent (2%) for each period or fraction of the additional thirty (30)-day period while the omission continues, without exceeding a total of twenty-four percent (24%). For purposes of this paragraph, the term 'insufficiency' means the amount in excess of the tax that should have been deposited in addition to the amount thereof, if any, that was deposited on or before the date prescribed therefor. For purposes of this paragraph, the omission shall not be deemed to continue after the date on which the tax is paid.

(9)    ...

(10)    ...

(c)    ...

(d)    Cash or Deferred Contributor Arrangement.-

(1)    ...

(2)    ...

(3)    Application for Participation and Discrimination Standards.-

(A)    ...

...

(F)    Exclusion of Government Plans.- The discrimination standards of Section 1081.01(d)(3), including the tax imposed in Section 1081.01(d)(6)(D), shall not apply to such retirement plans established by the

Government of Puerto Rico, the Government of the United States, and their respective municipalities, agencies, instrumentalities, and public corporations.

(4)     Other Requirements.-

(A)     Benefits Other Than Matching Contributions Shall Not Be Considered Under the Conditions for the Election to Defer.- A cash or deferred contribution arrangement of any employer shall not be treated as a qualified cash or deferred contribution arrangement, if any other benefit provided by such employer is conditioned, directly or indirectly, on the employee electing to have the employer make or not make contributions under the arrangement, in lieu of receiving cash. The preceding sentence shall not apply to any matching contribution made by reason of such an election.

(5)     ...

(6)     ...

(7)     ...

...

(e)     ...

..."

## CHAPTER 7.- FINAL PROVISIONS.

**Section 7.1.-** Voluntary Pre-Retirement Program.

(a)     Act No. 211-2015, as amended, known as the "Voluntary Pre-Retirement Program Act," is hereby repealed. However, all the rights and obligations created thereunder shall be guaranteed.

(b)     Pre-retirees who are participating in the Voluntary Pre-Retirement Program upon the approval of this Act shall continue to participate therein in accordance with the provisions of Act No. 211-2015, as amended.

(c)     Pre-retirement requests, under the Voluntary Pre-Retirement Program, duly submitted by Participants as of the date of approval of this Act shall be

processed as per usual. The review mechanisms provided in Act No. 211-2015, as amended, and in any other applicable statute shall be guaranteed.

(d)    Participants whose Pre-pension benefits have been previously approved by the Office of Management and Budget, in accordance with the provisions of Act No. 211-2015, as amended, shall be guaranteed the option to avail themselves of the benefits of such Program.

**Section 7.2.-** Preservation of Benefits.

Except as expressly provided in this Act, the right to receive the Accumulated Pension Benefits as well as the retirement age, and other benefits provided under special laws shall not be impaired by this statute, but are rather guaranteed by the Government.

**Section 7.3.-** Incentives, Opportunities, and Retraining Program for Public Officials.

FAFAA is hereby empowered to devise, implement, and oversee public service voluntary separation incentive programs, and voluntary programs for opportunities outside the public service for the employees of the Executive Branch, available to any employee who so requests it and meets the requirements established in the bylaws not subject to Act No. 38-2017, known as the "Government of Puerto Rico Uniform Administrative Procedure Act." Such programs shall include, among other incentives, retraining programs, tax benefits up to the tax liability of the employee for a specific period and/or tax benefits for private sector entities or persons that recruit and/or offer benefits to such public employees. These tax benefit programs shall be established and implemented by the Department of the Treasury. When devising and implementing such program, compliance with the Fiscal Plan certified in accordance with PROMESA shall be ensured. The authority delegated to FAFAA hereunder shall not include establishing early retirement programs or windows.

**Section 7.4.-** Rulemaking Authority.

All regulations, orders, resolutions, circular letters, and other administrative documents that govern the operation of the Retirement Systems in effect upon the effectiveness of this Act shall continue to be in effect, provided that they are consistent with this Act, insofar as these are not expressly altered, modified, amended, repealed, or substituted.

FAFAA and the Department of the Treasury are hereby empowered to establish regulations and procedures as are necessary to exercise the powers granted by virtue of this Act so as to safeguard the best interests of the Participants, Beneficiaries, and Retirees. The powers granted by this Section include the power to take measures as are necessary to guarantee an orderly transition, pursuant to the provisions of this Act.

**Section 7.5.-** Applicability of the Uniform Securities Act.

The interest of any Participant in the New Defined Contributions Plan shall not constitute a security for purposes of Act No. 60 of June 18, 1963, as amended, known as the "Uniform Securities Act."

**Section 7.6.-** Loan Programs.

All loan programs of the Retirement System, regardless of their purposes, are hereby suspended upon the effectiveness of this Act. Loans already granted shall be governed by the provisions of the laws by virtue of which they were granted, provided that the Retirement Board and FAFAA shall be empowered to outsource these programs as well as all that pertains to their services.

**Section 7.7.-** Defined Contributions Account Matching.

Upon determining that the fiscal situation of the Government has stabilized and that the status of the treasury so allows it, FAFAA is hereby empowered to make a recommendation to the Governor, in conjunction with the Retirement Board, to include in the budget an amount to match the contributions made by

Participants to the Defined Contribution Accounts. This determination shall be made in accordance with the certified Fiscal Plan and PROMESA.

**Section 7.8.-** Liability.

No natural or juridical person, including officials of the Government of Puerto Rico, Public Corporations, and the Municipalities who discharge functions by virtue of or under this Act shall be held harmless from personal liability as a result of noncompliance with the duties imposed herein. This provision shall prevail over any other provision of a special or general law.

**Section 7.9.-** Municipalities.

In the case of municipalities, the additional uniform contribution shall not be included in the computation of the amount to be paid.

**Section 7.10.-** Supremacy.

The provisions of this Act and the regulations or rules adopted thereunder shall prevail over any other provision of a law, regulation, or rule that is inconsistent therewith.

**Section 7.11.-** Severability.

If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the ruling, holding, or judgment to such effect shall not affect, impair, or invalidate the remainder of this Act. The effect of said holding shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act thus held to be null or unconstitutional. If the application to a person or a circumstance of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the ruling, holding, or judgment to such effect shall not affect or

invalidate the application of the remainder of this Act to such persons or circumstances where it may be validly applied. It is the express and unequivocal will of this Legislative Assembly that the courts enforce the provisions and application thereof to the greatest extent possible, even if it renders ineffective, nullifies, invalidates, impairs, or holds to be unconstitutional any part thereof, or even if it renders ineffective, invalidates, or holds to be unconstitutional the application thereof to any person or circumstance.

**Section 7.12.-** Effectiveness.

This Act shall take effect immediately after its approval; however, the provisions of this Act that so state it shall take effect retroactively.

# CERTIFICATION

I hereby certify to the Secretary of State that the following **Act No. 106-2017 (S. B. 603)**

of the **1st Regular Session** of the **18th Legislative Assembly of Puerto Rico:**

**AN ACT**    to establish an "Act to Guarantee the Payment of Pension Benefits to our
Retirees and to Establish a New Defined Contribution Plan for Public
Employees," in order to restructure the Retirement System for Employees
of the Government of Puerto Rico and the Teachers' Retirement System in
accordance with the economic and fiscal reality of Puerto Rico and the
provisions of the Fiscal Plan for Puerto Rico, certified pursuant to the
provisions of Public Law 114-187, known as the Puerto Rico Oversight,
Management, and Economic Stability Act or PROMESA; […]

has been translated from Spanish to English and that the English version is correct.

In San Juan, Puerto Rico, on this 11th day of January, 2019.

Orlando Pagán-Ramírez
Director