# **Exhibit E**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

**Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación).**

| | | |
|---|---|---|
| ☒ Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☐ Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☐ Employees Retirement System of the Government of the<br>Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado<br>Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☐ Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

RECEIVED

MAY 24 2018

PRIME CLERK LLC



170328380005987

Modified Official Form 410 / Formulario Oficial 410 Modificado

# Proof of Claim / Evidencia de reclamación

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.

Quienes presenten la documentación deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

Fill in all the information about the claim as of the Petition Date.

Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.

☐ Date Stamped Copy Returned
☐ No Self-Addressed Stamped Envelope
☒ No Copy Provided

| **Part 1 / Parte 1** | Identify the Claim / Identificar la reclamación |
|---|---|

1. **Who is the current creditor?**

   **¿Quién es el acreedor actual?**

   Altair Global Credit Opportunities Fund (A), LLC

   Name of the current creditor (the person or entity to be paid for this claim)
   Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)

   Other names the creditor used with the debtor
   Otros nombres que el acreedor usó con el deudor _____

**Claim Number: 32783**

| 2. Has this claim been acquired from someone else?

¿Esta reclamación se ha adquirido de otra persona? | ☒ No / No
☐ Yes. From whom?
Sí. ¿De quién? _____ | |
|---|---|---|
| 3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

¿A dónde deberían enviarse las notificaciones al acreedor?

Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g | Where should notices to the creditor be sent?
¿A dónde deberían enviarse las notificaciones al acreedor?

**Glendon Capital Management, L.P.**
_____
Name / Nombre

**1620 26th Street, Suite 2000N**
_____
Number / Número    Street / Calle

**Santa Monica, CA 90404**
_____
City / Ciudad    State / Estado    ZIP Code / Código postal

**310-907-0450**
_____
Contact phone / Teléfono de contacto

**office@glendoncap.com**
_____
Contact email / Correo electrónico de contacto | Where should payments to the creditor be sent? (if different)
¿A dónde deberían enviarse los pagos al acreedor? (En caso de que sea diferente)

_____
Name / Nombre

_____
Number / Número    Street / Calle

_____
City / Ciudad    State / Estado    ZIP Code / Código postal

_____
Contact phone / Teléfono de contacto

_____
Contact email / Correo electrónico de contacto |
| 4. Does this claim amend one already filed?

¿Esta reclamación es una enmienda de otra presentada anteriormente? | ☒ No / No
☐ Yes.  Claim number on court claims registry (if known)
Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)_____
Filed on / Presentada el _____ (MM /DD/YYYY ) / (DD/MM/AAAA) | |
| 5. Do you know if anyone else has filed a proof of claim for this claim?

¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación? | ☒ No / No
☐ Yes. Who made the earlier filing?
Sí. ¿Quién hizo la reclamación anterior?_____ | |

| **Part 2 / Parte 2:** | Give Information About the Claim as of the Petition Date
Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso. |
|---|---|

| 6. Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?

¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico? | ☒ No / No
☐ Yes.  Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)
Sí.  Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/).

_____ |
|---|---|
| 7. Do you supply goods and / or services to the government?

¿Proporciona bienes y / o servicios al gobierno? | ☒ No / No
☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:

Vendor / Contract Number | Número de proveedor / contrato: _____

List any amounts due after the Petition Date (listed above) but before June 30, 2017:
Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____ |

| | |
|---|---|
| 8. How much is the claim?<br><br>¿Cuál es el importe de la reclamación? | $ See Addendum                . Does this amount include interest or other charges?<br>¿Este importe incluye intereses u otros cargos?<br>☐ No / No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).<br>Sí. Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A). |
| 9. What is the basis of the claim?<br><br>¿Cuál es el fundamento de la reclamación? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.<br><br>See Addendum |
| 10. Is all or part of the claim secured?<br><br>¿La reclamación está garantizada de manera total o parcial? | ☐ No / No<br>☒ Yes. The claim is secured by a lien on property.<br>Sí. La reclamación está garantizada por un derecho de retención sobre un bien.<br><br>**Nature of property / Naturaleza del bien:**<br>☐ Motor vehicle / Vehículos<br><br>☒ Other. Describe:<br>Otro. Describir:   **See Addendum**<br><br>**Basis for perfection / Fundamento de la realización de pasos adicionales:**  **See Addendum**<br>_____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.<br><br>**Value of property / Valor del bien:**   $ **See Addendum**<br><br>**Amount of the claim that is secured /**<br>**Importe de la reclamación que está garantizado:** $ **See Addendum**<br><br>**Amount of the claim that is unsecured /**<br>**Importe de la reclamación que no está garantizado:** $ **0.00**<br>(The sum of the secured and unsecured amounts should match the amount in line 7.)<br>(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)<br><br>**Amount necessary to cure any default as of the Petition Date /**<br>**Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso :** $_____<br>**See Addendum**<br><br>**Annual Interest Rate** (on the Petition Date)<br>**Tasa de interés anual** (cuando se presentó el caso) **See Addendum**<br>☐ Fixed / Fija<br>☐ Variable / Variable |
| 11. Is this claim based on a lease?<br><br>¿Esta reclamación está basada en un arrendamiento? | ☒ No / No<br><br>☐ Yes. Amount necessary to cure any default as of the Petition Date.<br>Sí. Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso $ _____ |

| | |
|---|---|
| **12. Is this claim subject to a right of setoff?**<br><br>¿La reclamación está sujeta a un derecho de compensación? | ☐ No / No<br><br>☐ Yes. Identify the property /<br>Sí. Identifique el bien: _____ **See Addendum** _____ |
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**<br><br>¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.?** | ☐ No / No<br><br>☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.   $ **See Addendum**<br><br>Sí. Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en los que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación. |

## Part 3 / Parte 3:

### Sign Below / Firmar a continuación

| | |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).**<br><br>Si presenta esta reclamación de manera electrónica, FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma. | *Check the appropriate box / Marque la casilla correspondiente:*<br><br>☐ I am the creditor. / Soy el acreedor.<br>☒ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.<br><br>I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.<br><br>Executed on date / Ejecutado el _____ 05/22/2018 _____ (MM/DD/YYYY) / (DD/MM/AAAA)<br><br>Signature / Firma _____<br><br>Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación: |

| | | | |
|---|---|---|---|
| Name | Eitan | Jacob Simon | Melamed |
| | First name / Primer nombre | Middle name / Segundo nombre | Last name / Apellido |
| Title / Cargo | Partner | | |
| Company / Compañía | Glendon Capital Management, L.P. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer.<br>Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador. | | |
| Address / Dirección | 1620 26th Street, Suite 2000N | | |
| | Number / Número      Street / Calle | | |
| | Santa Monica | CA | 90404 |
| | City / Ciudad | State / Estado | ZIP Code / Código postal |
| Contact phone / Teléfono de contacto | 310-907-0450 | Email / Correo electrónico | office@glendoncap.com |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

------------------------------------------------------------ X

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

PROMESA
Title III

Case No. 3:17-cv-03283 (LTS)

(Jointly Administered)

------------------------------------------------------------ X

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

     as representative of

THE EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF PUERTO RICO

     Debtor.

PROMESA
Title III

Case No. 3:17-cv-03566 (LTS)

------------------------------------------------------------ X

## ADDENDUM TO PROOF OF CLAIM OF ERS BONDHOLDER

---

[1]   The Debtors in these Title III cases, along with each Debtor's Bankruptcy Court case number and last four (4) digits of each Debtor's federal tax identification number are (i) The Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) The Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (iii) Puerto Rico Sales Tax Financing Corporation (Bankr. Case No. 17-bk-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iv) Puerto Rico Highways and Transportation Authority (Bankr. Case. No. 17-bk-3567 (LTS) (Last Four Digits of Federal Tax ID: 3808).

1.      This Proof of Claim is filed by Altair Global Credit Opportunities Fund (A), LLC (the "Claimant") as a secured creditor and holder of secured bonds issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") in 2008, against the Commonwealth of Puerto Rico (the "Commonwealth") and ERS.

### Background

2.      The ERS is a trust created by Act No. 447 of May 15, 1951 of the Legislature of the Commonwealth (the "ERS Enabling Act") to provide pension and other benefits to officers and employees of the Commonwealth, members and employees of the Legislature, and officers and employees of certain public corporations and municipalities of the Commonwealth. 3 L.P.R.A. § 761. The ERS Enabling Act gave ERS's Board of Trustees blanket authorization to incur debt on behalf of ERS and to secure such debt with ERS's assets. *See* 3 L.P.R.A. § 779(d).

3.      ERS is funded by employer contributions, employee contributions, and investment earnings on its undistributed funds. Employer contributions are the largest component of this income stream, and they constitute a legal asset of ERS. ERS has a statutory right to receive these employer contributions, and employers are required by statute to make them. ERS receives employer contributions both from the Commonwealth and from various municipalities within, and public corporations of, the Commonwealth.

4.      For decades, the Commonwealth has failed to make the amount of employer contributions required by law. This, among other things, has resulted in severe underfunding of ERS. In 2008, ERS sought to address its financial problems by issuing secured bonds (the "ERS Bonds"), which infused approximately $3 billion into ERS.

5.     The Claimant holds $764,000 in principal amount of term ERS Bonds (the "Principal Amount").

6.     ERS issued the ERS Bonds pursuant to the authority of a resolution (as thereafter supplemented, the "ERS Bond Resolution"). It is the ERS Bond Resolution and the related security agreement that govern the contractual relationship between ERS and the holders of the ERS Bonds (the "ERS Bondholders") with respect to the ERS Bonds, specify the times and amounts of payment of interest and repayment of principal, and set forth the collateral ERS provided as security for payment. Specifically, the collateral underlying the security package was called "Pledged Property," as that term is defined in the ERS Bond Resolution, and included, among other things, employer contributions and ERS's right to receive employer contributions. ERS Bond Resolution § 501 & Exh. B, VI-33, VI-36, VI-37. ERS was required to use the Pledged Property to make timely principal and interest payments on the ERS Bonds before it spent or used any of the funds for any other purpose. *Id.* §§ 501, 701, & Exh. B, VI-36. To assure that the Pledged Property would remain available to secure the ERS Bonds, the ERS Bond Resolution explicitly required ERS to pursue all available legal remedies to collect employer contributions that were delinquent or inadequate. *Id.* §§ 701, 709.

7.     As the Financial Oversight and Management Board of the Commonwealth of Puerto Rico (the "Oversight Board"), ERS, and the Commonwealth have previously acknowledged, the ERS Bonds are oversecured.[2]

---

[2] *See, e.g.*, Brief of Amicus Curiae Fin. Oversight and Mgmt. Bd. for Puerto Rico in Support of Respondents-Appellees Urging Affirmance of the District Court Order in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-2433, ECF No. 65, at 18 (1st Cir. Dec. 23, 2016) ("The [ERS Bondholders] have a substantial equity cushion as a result of the reserve accounts and the perpetual revenue streams."); Respondent Employees Retirement System of the Government of the Commonwealth of Puerto Rico's Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay in *Altair*

8.      On May 3, 2017, the Oversight Board approved and certified the filing of a petition for the Commonwealth to restructure the Commonwealth's debts pursuant Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").

9.      On May 21, 2017, the Oversight Board approved and certified the filing of a separate PROMESA Title III petition for ERS.  PROMESA incorporates the automatic stay provisions of § 362 of title 11 of the United States Code (the "Bankruptcy Code").  Pursuant to these provisions, the filing of the ERS Title III case on May 21, 2017, operated as a stay against all efforts by any person (including the Commonwealth) to obtain or exercise control over property of ERS.

10.      On June 25, 2017, the Puerto Rico Legislature passed Joint Resolution for Other Allocations for Fiscal Year 2017-2018 ("Joint Resolution 188") and the Oversight Board adopted it on behalf of the Governor on June 30, 2017.  Joint Resolution 188 ordered ERS to sell its assets and to transfer the net cash proceeds, in addition to any available funds, into an account as part of the General Fund for fiscal year 2017-2018 to make benefit payments to pensioners.  Joint Resolution 188 §§ 1, 2, 3.  Joint Resolution 188 also provided, in relevant part, that the Commonwealth, its public corporation, and its municipalities would stop making employer contributions to ERS and, instead, would make employer contributions to the Commonwealth.

---

(continued...)

*Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-cv-2696, ECF No. 52, at 10-11 (Oct. 26, 2016) ("[T]he security interests held by the ERS Bondholders provide them with future protection more than sufficient to address any concern, real or imagined."); Respondents' Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro García Padilla, et al.*, No. 16-cv-2696, ECF No. 53, at 18 ("Given its size and indefinite duration, the security interest provides Movants with the adequate protection they purport is required to ensure payment on their bonds, certainly through the expiration of the PROMESA stay and, indeed, for as long as the bonds remain outstanding.").

No consideration was provided to ERS or the ERS Bondholders in exchange for the collateral transferred to the Commonwealth's General Fund.

11.     On August 18, 2017, the Puerto Rico legislature passed Act 106-2017 ("Act 106") and the Governor signed it into law on August 23, 2017. Act 106 provided that, in accordance with Joint Resolution 188, on July 13, 2017 the Commonwealth became the "direct payer of our retirees' pensions." Act 106, § 1.4. Act 106 also reiterated that, in accordance with Joint Resolution 188, ERS would contribute its assets to the Commonwealth and that the Commonwealth, its public corporations, and its municipalities would stop making employer contributions to ERS. *Id.*, §§ 1.3, 1.4.

### Basis for Proof of Claim

12.     This Proof of Claim by the Claimant against ERS and the Commonwealth is predicated upon secured claims arising under, relating to, or in connection with (a) ERS's breach of its obligation to pay principal and interest on the ERS Bonds; (b) ERS's numerous breaches of its obligations under the ERS Bonds, the ERS Bond Resolution and the security agreement, including, without limitation, (i) ERS's failure to promptly collect and remit employer contributions to the Fiscal Agent, (ii) ERS's failure to pursue all available legal remedies to collect employer contributions that are delinquent or inadequate, (iii) ERS's failure to transfer employer contributions to the respective collateral accounts on a monthly basis, (iv) ERS's breach of its obligation to oppose the enactment of Joint Resolution 188 and Act 106 (collectively, the "Post-Petition Legislation"), and (v) ERS's failure to defend, preserve, and protect the assignment of the Pledged Property and the rights of the ERS Bondholders; (c) the unjust enrichment of ERS at the ERS Bondholders' expense; (d) the Commonwealth's enactment of the Post-Petition Legislation and/or receipt of the Pledged Property from ERS, including,

without limitation, (i) the Commonwealth's violation of the automatic stay in ERS's Title III case when it enacted the Post-Petition Legislation diverting employer contributions from ERS to the Commonwealth and requiring ERS to liquidate its assets and transfer the proceeds to the Commonwealth, (ii) the Commonwealth's acquisition of the Pledged Property that remains subject to the Claimant's liens under the UCC, (iii) the Commonwealth's violation of the Fifth Amendment to the United States Constitution and Article II, Section 9 of the Puerto Rico Constitution when it enacted the Post-Petition Legislation; (iv) the Commonwealth's violation of Article I, § 10 of the United States Constitution and Article II, § 7 of the Puerto Rico Constitution when it enacted the Post-Petition Legislation; (v) the unjust enrichment of the Commonwealth at the ERS Bondholders' expense resulting from the transfer of the Pledged Property under the Post-Petition Legislation; and (vi) the Commonwealth's violation of PROMESA, including, without limitation, the Commonwealth's violation of Section 407 of PROMESA when it enacted the Post-Petition Legislation; (e) the Commonwealth's failure to pay prepetition employer contributions; (f) the Commonwealth's and ERS's breach of the *Order Approving Stipulation, Setting Aside Hearing and Dismissing Case* entered by Judge Besosa on January 17, 2017, in Case No. 16-cv-02696 [Dkt. No. 83]; and (g) any other claims the Claimant may have against ERS or the Commonwealth in connection with the Post-Petition Legislation, the ERS Bonds, the ERS Bond Resolution, the passage of various unlawful acts and/or executive orders, and/or any other unlawful actions.

13.     ***Claims Asserted in Adversary Case***.   Attached hereto as <u>Exhibit A</u> is the ERS Bondholders' *Amended and Supplemented Adversary Complaint* filed in *Altair Global Credit Opportunities Fund (A), LLC, et al. v. The Commonwealth of Puerto Rico, et al.*, Adv. Proc. Nos. 17-219 and 17-220 (D.P.R.) [Dkt. No. 39], which sets forth certain claims by the ERS

Bondholders against ERS and the Commonwealth (the "Adversary Complaint Claims," and together with the claims identified in ¶ 12, the "Claims"). The Claimant hereby incorporates the Adversary Complaint Claims into this Proof of Claim and asserts them against ERS and the Commonwealth.

14.     ***ERS's Breach of Its Obligation to Pay Principal and Interest on the ERS Bonds.*** ERS is obligated to pay principal and interest on the ERS Bonds pursuant to the ERS Bond Resolution. ERS Bond Resolution § 701. ERS breached this obligation at various times, including, without limitation, after the enactment of the Post-Petition Legislation.

15.     ***ERS's Breach of Its Obligation to Promptly Collect and Remit Employer Contributions to the Fiscal Agent.*** ERS is obligated to "promptly collect and remit" all employer contributions to the Fiscal Agent in accordance with its statutory obligations. *Id.* § 701. ERS breached this obligation at various times, including, without limitation, after the enactment of the Post-Petition Legislation.

16.     ***ERS's Breach of Its Obligation to Pursue All Available Legal Remedies to Collect Employer Contributions That Are Delinquent or Inadequate.*** ERS is obligated to perform all acts and enforce all its powers . . . in order to promptly collect and remit the Employers' Contributions" for payment of the ERS Bonds. *Id.*; *see also* § 709(1). ERS breached this obligation at various times, including, without limitation, after the enactment of the Post-Petition Legislation.

17.     ***ERS's Breach of Its Obligation to Transfer Employer Contributions to the Respective Collateral Accounts on a Monthly Basis.*** ERS is obligated to transfer employer contributions to the Fiscal Agent in accordance with certain provisions of the ERS Bond

Resolution. *Id.* §§ 504, 505, 506. ERS breached this obligation at various times, including, without limitation, after the enactment of the Post-Petition Legislation.

18. ***ERS's Breach of Its Obligation to Oppose the Enactment of the Post-Petition Legislation.*** ERS is obligated to "oppose any attempt by the Legislature of the Commonwealth . . . to make any other change in the [ERS Enabling Act] or any other relevant legislation that would have a material adverse effect on [the ERS] Bondholders." *Id.* § 709(2). ERS breached this obligation at various times, including, without limitation, after the enactment of the Post-Petition Legislation.

19. ***ERS's Failure to Defend, Preserve, and Protect the Assignment of the Pledged Property and the Rights of the ERS Bondholders.*** ERS is obligated, "at all times, to the extent permitted by law, [to] defend, preserve and protect the assignment of the Pledged Property and all the rights of the Fiscal Agent, the Beneficiaries and the [ERS Bondholders] under [the ERS Bond] Resolution against all claims and demands of all persons whomsoever." *Id.* § 705. ERS breached this obligation at various times, including, without limitation, after the enactment of the Post-Petition Legislation.

20. ***Unjust Enrichment of ERS.*** The ERS Bondholders provided approximately $3 billion to ERS to help pay pension and other benefits. In exchange, ERS promised to pay principal and interest on the ERS Bonds and granted the ERS Bondholders liens on the Pledged Property. To the extent ERS is permitted to evade all of the responsibilities it voluntarily assumed in issuing the ERS Bonds, while also retaining the $3 billion it obtained, this results in an unjust enrichment of ERS at the ERS Bondholders' expense.

21. ***The Commonwealth's Violation of the ERS Automatic Stay.*** The Commonwealth enacted the Post-Petition Legislation after the commencement of ERS's Title III

case. The Post-Petition Legislation required ERS to (1) liquidate its assets and transfer the proceeds to the Commonwealth, and (2) divert employer contributions to which ERS has a statutory right away from ERS to the Commonwealth. The Commonwealth is an entity separate from ERS that owed payment obligations to ERS. Accordingly, the enactment of the Post-Petition Legislation was action by the Commonwealth to obtain possession of property of ERS and from ERS, and to exercise control over property of ERS, in violation of the ERS automatic stay. The Commonwealth's violation of the ERS automatic stay caused ERS to be unable to fulfill its obligation to pay principal and interest on the ERS Bonds and deprived the ERS Bondholders of their property interests in the Pledged Property.

22. ***The Pledged Property Remains Subject to the Claimant's Liens Under the UCC.*** The Puerto Rico Uniform Commercial Code (both in 2008 and today) provides that "[a] security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien," and also that "a security interest attaches to any identifiable proceeds of collateral." 19 L.P.R.A. § 2265(a); *see also* 19 L.P.R.A. § 2106(2) (2008) ("[A] security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."). Nothing in PROMESA alters, amends, or preempts these laws. The Post-Petition Legislation transfers the Pledged Property from ERS to the Commonwealth. The Claimant has secured claims in the Pledged Property acquired by the Commonwealth and therefore holds secured claims against the Commonwealth with respect to any Pledged Property in the Commonwealth's possession.

23.     ***The Commonwealth's Taking of the ERS Bondholders' Property Without Just Compensation.***  The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V. (the "<u>U.S. Takings Clause</u>").   Article II, Section 9 of the Puerto Rico Constitution provides that "[p]rivate property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law."  P.R. Const. art. II, § 9 (the "<u>P.R. Takings Clause</u>").  The ERS Bondholders possess a constitutionally protected property interest in the form of valid, perfected security interests in and liens on the Pledged Property as well as the contractual right to timely payment of principal and interest.  The Post-Petition Legislation ordered ERS to sell its assets and to transfer its funds to the Commonwealth.  The Post-Petition Legislation also ordered the Commonwealth and non-Commonwealth public employers (such as municipalities and public corporations) to cease paying employer contributions to ERS and instead make these payments to the Commonwealth's General Fund. The Post-Petition Legislation provided no compensation of any kind for the transfer of the ERS Bondholders' property to the Commonwealth and therefore constitutes an unconstitutional taking of the Pledged Property.  At all relevant times, the ERS Bondholders have been oversecured. Accordingly, the amount of just compensation required for the taking of the ERS Bondholders' collateral is no less than the principal amount of the ERS Bonds and any and all interest accruing thereon until the date compensation is paid.  In addition, as explained above, impairing the ERS Bondholders' just compensation claims in a Title III plan would violate the Fifth and Fourteenth Amendments to the United States Constitution.

24.     ***The Commonwealth's Violation of the United States and Puerto Rico Contracts Clauses.***  Article I, § 10 of the United States Constitution provides that "[n]o State

shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1.

Article II, § 7 of the Puerto Rico Constitution provides that "[n]o laws impairing the obligation of contracts shall be enacted." P.R. Const. art. II, § 7. The ERS Bond Resolution created a contractual relationship between ERS and the ERS Bondholders. The ERS Bondholders have a contractual right to timely payment of principal and interest by ERS. ERS Bond Resolution § 701. Moreover, the ERS Bondholders have a contractual right and security interest in the Pledged Property. *Id.* § 501. The Post-Petition Legislation required ERS to liquidate its assets and pay the proceeds to the Commonwealth's General Fund, and divert the stream of employer contributions from ERS to the Commonwealth. Accordingly, the Post-Petition Legislation substantially impairs contractual obligations of ERS. This substantial impairment is neither reasonable nor necessary to an important purpose of the Commonwealth government.

25. ***Unjust Enrichment of the Commonwealth.*** The Post-Petition Legislation required ERS to transfer the Pledged Property, the ERS Bondholders' collateral, to the Commonwealth without providing any consideration, without the ERS Bondholders' consent, and in violation of United States and Puerto Rico law. To the extent the Commonwealth possesses the Pledged Property pursuant to the Post-Petition Legislation, the Commonwealth is intentionally and wrongfully holding the ERS Bondholders' property without their consent, which results in an unjust enrichment of the Commonwealth at the ERS Bondholders' expense.

26. ***The Commonwealth's Violation of Section 407 of PROMESA.*** Section 407 of PROMESA provides:

> While an Oversight Board for Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial

instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property.

48 U.S.C. § 2195(a). ERS has a statutory right to receive employer contributions from the Commonwealth and non-Commonwealth public employers. The ERS Bondholders possess valid, perfected security interests in and liens on the Pledged Property, which includes, among other things, employer contributions and the right to receive employer contributions. The Post-Petition Legislation required ERS to sell and transfer its assets and funds, all of which are subject to the ERS Bondholders' liens on the Pledged Property. The Post-Petition Legislation also required the Commonwealth and non-Commonwealth public employers to cease paying employer contributions to ERS and instead to make these payments to the Commonwealth's General Fund. Employer contributions and the right to receive employer contributions are subject to the ERS Bondholders' liens on the Pledged Property. The Commonwealth has provided no compensation of any kind for these transfers, in violation of United States and Puerto Rico law. As transferee of the property, the Commonwealth is liable for the value of the property.

27. **_The Commonwealth's Failure to Pay Prepetition Employer Contributions._** ERS has a statutory right to receive employer contributions, and employers, including the Commonwealth, are required by statute to make them. These contributions are used to make timely payment of principal and interest on the ERS Bonds and the ERS Bondholders have liens on, among other things, all employer contributions and the right to receive them. Historically, the Commonwealth has been responsible for approximately 59 percent of the employer contributions to which ERS is entitled. Despite the importance of employer contributions, the Commonwealth has never paid enough to satisfy its contribution requirements. As a result, as of the filing of the Commonwealth's Title III case, the

Commonwealth owed ERS hundreds of millions of dollars in past due unpaid employer contributions. *See, e.g.*, Employees Retirement System of the Government of the Commonwealth of Puerto Rico, Annual Financial Information Fiscal Year 2016, at 13, n 1, *available at* https://emma.msrb.org/ER1050099-ER822796-ER1223828.pdf. The Claimant has standing to assert this claim under the ERS Bond Resolution and applicable law. *See, e.g.,* ERS Bond Resolution § 1102(1)(i) (authorizing a "suit, action or proceeding to enforce all rights of the Bondowners, including the right to collect or require [ERS] to collect Revenues adequate to carry out the covenants, agreements and assignments with respect thereto contained in this Resolution").

28.   *The Commonwealth's and ERS's Breach of the Order Approving Stipulation, Setting Aside Hearing and Dismissing Case Entered by Judge Besosa on January 17, 2017.* On January 17, 2017, Judge Besosa entered an order approving a stipulation entered into by the Claimant, ERS, the Commonwealth, and the Oversight Board (the "Order"). *See* Order Approving Stipulation, Setting Aside Hearing and Dismissing Case, No. 16-cv-02696, Dkt. No. 83. The Order required ERS to transfer any employer contributions received from the Commonwealth to a specified bank account. *See id.* at 2-3 ("To the extent that ERS receives any Commonwealth central government Employers' Contributions, unless otherwise agreed in writing by the undersigned parties, such contributions shall be retained in the Segregated Account pending further order of the Court, provided, however, the undersigned parties agree that such matter may be heard by the Court upon motion and at an expedited hearing."). ERS later admitted that it received employer contributions from the Commonwealth and did not transfer those amounts to the specified account, in violation of the Order. *See* DiPompeo Decl., D.I. 96 in Adv. Proc. No. 17-213, Ex. A at 307:2-310:6.

29.     ***Additional Claims.***   ERS and the Commonwealth also damaged the Claimant through the Post-Petition Legislation, the passage of various unlawful acts and executive orders, including, without limitation, the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act or Act No. 21-2016, Executive Order 2016-31, and the Fiscal Responsibility Act or Act. No. 5-2017, and other unlawful actions, that violated (a) Puerto Rico law, including, without limitation, the law of fraudulent transfer, conversion, tortious interference, alter ego, subrogation, avoidance, breach of fiduciary duty, promissory estoppel, breach of express and implied warranty, negligent misrepresentation or omission, and fraudulent misrepresentation or omission, (b) the United States Bankruptcy Code, (c) PROMESA, (d) various securities laws, and (e) the United States and Puerto Rico Constitutions.

### Supporting Documentation

30.     Copies of following supporting documents are attached hereto: (1) the ERS Bond Resolution as Exhibit B; (2) the Security Agreement, dated June 2, 2008, as Exhibit C; and (3) the Uniform Commercial Code filings made in connection with the ERS Bonds as Exhibit D. The Claimant reserves the right to supplement these documents.

### Nature of Claims

31.     The Claimant is owed the Principal Amount, plus accrued interest and attorney's fees and expenses, plus unliquidated and contingent amounts to be determined. The Claims are fully secured and entitled to administrative expense priority. In addition, the claims for just compensation on account of the Commonwealth's unconstitutional taking of the Claimant's property cannot be impaired or discharged pursuant to a Title III plan of adjustment.

## Secured Claims

32.     The Claims are all secured under 11 U.S.C. § 506(a)(1) of the Bankruptcy Code.  Pursuant to the ERS Bond Resolution, the security agreement, and appropriately-filed financing statements, the Claimant is a secured creditor with valid, perfected liens on the Pledged Property.

33.     The Claims are all secured against the Commonwealth pursuant to 19 L.P.R.A. § 2106(2) and 19 L.P.R.A. § 2265(a).  Because the Commonwealth acquired property subject to the Claimant's valid, perfected liens on the Pledged Property, the Claimant is a secured creditor to the full extent of its claims against the Commonwealth.

## Administrative Expense Claims

34.     The Post-Legislation was enacted after the commencement of the ERS Title III case and the Commonwealth Title III case.  The Claims arising from the post-petition conduct of ERS and the Commonwealth are entitled to administrative expense status under 11 U.S.C. § 503, as incorporated into PROMESA by Section 301.

35.     The filing of this Proof of Claim in no respect waives, alters or otherwise affects any rights that the Claimant may have with regard to any other claims created or otherwise arising on or subsequent to the date on which ERS or the Commonwealth commenced these Title III cases.  The Claimant reserve all rights to argue that any right to payment is a post-petition claim.

## Non-Dischargeable Claims

36.     The claims under the Fifth Amendment to the United States Constitution and Article II, Section 9 of the Puerto Rico Constitution resulting from the Commonwealth's unconstitutional taking of the Claimant's property cannot be impaired by a PROMESA plan of

adjustment. PROMESA cannot be construed to violate the United States Constitution. *See Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935) ("The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment."). Accordingly, as the United States has previously explained, this Court cannot confirm a plan that would "impair [a] constitutional claim for just compensation." *In re City of Detroit*, 524 B.R. 147, 270 (Bankr. E.D. Mich. 2014).[3] Unsurprisingly, PROMESA's framework is consistent with this view. First, 11 U.S.C § 1129(b)(2)(A), incorporated by Section 301(a) of PROMESA, 48 U.S.C. § 2161(a), provides constitutionally rooted property protections for secured claims. Second, Section 314 of PROMESA prohibits the Court from confirming a plan if the debtor is "prohibited by law"—such as the Constitution—"from taking any action necessary to carry out the plan." 48 U.S.C. § 2174 (b)(3). Finally, 11 U.S.C. § 944(c)(1), also incorporated by PROMESA, permits the Court to order a takings claim nondischargeable. *See Detroit*, 524 B.R. at 270.

### Reservation of Rights

37.     The Claimant does not waive, and expressly reserves, all rights and remedies at law or in equity that it has or may have against ERS and the Commonwealth and/or any other person or entity. The Claimant reserves the right to amend or supplement this Proof of Claim at any time and in any respect, including, without limitation, as necessary or appropriate to amend, quantify or correct amounts, to provide additional detail regarding the claims set forth in this Proof of Claim or the basis therefor, to fix the amount of any contingent or unliquidated

---

[3] *Accord* Br. for the United States at 6-7, *Detroit*, 524 B.R. 147 (No. 13-53846), Dkt. No. 6664 ("To the extent that the Plan proposes . . . to pay less than the full amount of a claim based on a just compensation award, regardless of when that award or the facts giving rise to it occur, i.e., prepetition or postpetition, such treatment would raise substantial constitutional questions. The Just Compensation Clause would appear to require these claims to be treated as nondischargeable.").

claim and/or to assert that all or any part of the claim(s) set forth in this Proof of Claim are entitled to be treated as an administrative expense or other priority. The Claimant further reserves the right to file and assert any additional claims or requests for payment of administrative expense of whatever kind or nature that may be or later become due from ERS and the Commonwealth under any other agreement or otherwise, including, without limitation, any secured, priority, administrative expense or general unsecured claims under the Bankruptcy Code or otherwise, whether known or unknown, liquidated or unliquidated, choate or inchoate, disputed or undisputed or contingent or fixed.

38.     The filing of this Proof of Claim is not and shall not be deemed or construed as:  (a) a waiver or release of the Claimant's rights against any person, entity or property, including any of the other debtors in these Title III cases, that may be liable for all or part of the claims set forth in this Proof of Claim; (b) an election of remedies; (c) an acknowledgment that the Claimant received adequate notice of any bar date fixed in these cases; (d) a waiver of the Claimant's right to assert additional administrative expense claims or an acknowledgment that all or any part of the claim(s) set forth in any Claim or herein or any other claim are not entitled to administrative or other priority; or (e) an admission that any valid claims or causes of action exist against the Claimant. The filing of this Proof of Claim is not and shall not be deemed or construed as a waiver of any such setoff or recoupment rights, and any such right of setoff or recoupment shall survive the closing of the Title III cases.

39.     The Claimant does not waive any right to any security held by or for it or any right with respect to any specific assets or any right or rights of action that it has or may have against the Commonwealth and ERS or any other person or persons who may be liable for all or any part of the claim(s) set forth in any Claim or herein.

## Notices

40.     Copies of all notices and communications concerning this Proof of Claim

should be sent to:

> Altair Global Credit Opportunities Fund (A), LLC
> c/o Glendon Capital Management, L.P.
> 1620 26th Street, Suite 2000N
> Santa Monica, CA 90404
> Tel. 310.907.0450

With a copy to:

> Jones Day
> 250 Vesey Street
> New York, NY 10281
> Tel. 212.326.8312
> Attention: Benjamin Rosenblum, Esq.

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------X

|  |  |
|---|---|
| In re: | PROMESA |
|  | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, |  |
|  | Case No. 3:17-bk-03283 (LTS) |
| as representative of |  |
|  | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, |  |
|  |  |
| Debtors.[1] |  |

---------------------------------------------------------------------X

|  |  |
|---|---|
| In re: |  |
|  | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III |
|  |  |
| as representative of | Case No. 3:17-bk-03566 (LTS) |
|  |  |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, |  |
|  |  |
| Debtor. |  |

---------------------------------------------------------------------X

|  |  |
|---|---|
|  | Adv. Proc. No. 17-00219 (LTS) |
| ALTAIR GLOBAL CREDIT OPPORTUNITIES FUND | Adv. Proc. No. 17-00220 (LTS) |
| (A), LLC, ANDALUSIAN GLOBAL DESIGNATED |  |
| ACTIVITY COMPANY, GLENDON OPPORTUNITIES | **AMENDED AND** |
| FUND, L.P., MASON CAPITAL MASTER FUND LP, | **SUPPLEMENTED** |
| NOKOTA CAPITAL MASTER FUND, L.P., OAKTREE- | **ADVERSARY COMPLAINT** |
| FORREST MULTI-STRATEGY, LLC (SERIES B), |  |

---

[1] The Debtors in these Title III cases, along with each Debtor's Bankruptcy Court case number and last four (4) digits of each Debtor's federal tax identification number are (i) The Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) The Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (iii) Puerto Rico Sales Tax Financing Corporation (Bankr. Case No. 17-bk-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iv) Puerto Rico Highways and Transportation Authority (Bankr. Case No. 17-bk-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808).

OAKTREE OPPORTUNITIES FUND IX, L.P., OAKTREE )
OPPORTUNITIES FUND IX (PARALLEL 2), L.P., )
OAKTREE VALUE OPPORTUNITIES FUND, L.P., )
OCHER ROSE, L.L.C., PUERTO RICO AAA )
PORTFOLIO BOND FUND, INC., PUERTO RICO AAA )
PORTFOLIO BOND FUND II, INC., PUERTO RICO )
AAA PORTFOLIO TARGET MATURITY FUND, INC., )
PUERTO RICO FIXED INCOME FUND, INC., PUERTO )
RICO FIXED INCOME FUND II, INC., PUERTO RICO )
FIXED INCOME FUND III, INC., PUERTO RICO FIXED )
INCOME FUND IV, INC., PUERTO RICO FIXED )
INCOME FUND V, INC., PUERTO RICO GNMA & U.S. )
GOVERNMENT TARGET MATURITY FUND, INC., )
PUERTO RICO INVESTORS BOND FUND I, PUERTO )
RICO INVESTORS TAX-FREE FUND, INC., PUERTO )
RICO INVESTORS TAX-FREE FUND, INC. II, PUERTO )
RICO INVESTORS TAX-FREE FUND III, INC., PUERTO )
RICO INVESTORS TAX-FREE FUND IV, INC., PUERTO )
RICO INVESTORS TAX-FREE FUND V, INC., PUERTO )
RICO INVESTORS TAX-FREE FUND VI, INC., PUERTO )
RICO MORTGAGE-BACKED & U.S. GOVERNMENT )
SECURITIES FUND, INC., SV CREDIT, L.P., TAX-FREE )
PUERTO RICO FUND, INC., TAX-FREE PUERTO RICO )
FUND II, INC., AND TAX-FREE PUERTO RICO )
TARGET MATURITY FUND, INC., )
                                                         )
        Plaintiffs, )
                                                         )
        -against- )
                                                         )
THE COMMONWEALTH OF PUERTO RICO, THE )
FINANCIAL OVERSIGHT AND MANAGEMENT )
BOARD OF THE COMMONWEALTH OF PUERTO )
RICO, THE PUERTO RICO FISCAL AGENCY AND )
FINANCIAL ADVISORY AUTHORITY, THE )
EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF THE COMMONWEALTH OF )
PUERTO RICO, GOVERNOR RICARDO ROSSELLÓ )
NEVARES in his official capacity as the Governor of the )
Commonwealth of Puerto Rico, RAÚL MALDONADO in )
his official capacity as the Secretary of Treasury of the )
Commonwealth of Puerto Rico, )
                                                         )
                                                         )
        Defendants. )
                                                         )
-------------------------------------------------------------------------X

- 2 -

**AMENDED AND SUPPLEMENTED ADVERSARY COMPLAINT**

TO THE HONORABLE COURT:

NOW COMES Plaintiffs Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund LP, Nokota Capital Master Fund, L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc., by and through their attorneys, and respectfully state, allege and pray as follows:

**PRELIMINARY STATEMENT**

1. This is an action for declaratory judgment and equitable relief brought pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105(a), and Federal Rule of Civil Procedure 57 for the purpose of determining a substantial and actual controversy between the parties.

2. Plaintiffs are owners of secured bonds issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "ERS") in 2008. The

- 3 -

proceeds of these bonds (the "ERS Bonds" or the "Bonds") were used to pay benefits to retirees and to reduce the ERS's unfunded accrued actuarial liabilities. The ERS Bonds were granted liens on, among other things, all employer contributions from Puerto Rico government employers (including municipal employers, public corporations and the central government of Puerto Rico) and the ERS's legal right to receive those contributions. The collateral pledged to support the ERS Bonds was sufficient to service the interest on the Bonds for the life of the bond issue and to repay the principal amount of the Bonds in full at maturity. The ERS Bond Resolution gave plaintiffs the contractual right to guaranteed timely payment of principal and interest by the ERS. Indeed, just months ago, in prior litigation, the ERS, the Commonwealth, and the Financial Oversight and Management Board of the Commonwealth of Puerto Rico ("Oversight Board" or the "Board") asserted that the Bonds are oversecured.

3.  In June 2017, the Puerto Rico legislature passed, and the Oversight Board adopted, Joint Resolution 188. Joint Resolution 188 required the ERS to liquidate its assets for distribution to the Commonwealth General Fund, and directs participating employers to make future employer contributions to the Commonwealth General Fund, rather than the ERS. On August 23, 2017, Puerto Rico enacted Act 106 to establish procedures for increasing employer contributions to make payments equal to the obligations to employees as mandated by the Fiscal Plan for Puerto Rico and established in Joint Resolution 188. Although the ostensible purpose of Joint Resolution 188 as supplemented by Act 106 (together, the "Post-Petition Legislation") was to address the pension system's lack of liquidity, this could have been accomplished more directly by simply increasing employer contributions to the ERS within the existing statutory framework. The purpose and effect of such Post-Petition Legislation was to strip the ERS of its assets and to attempt to divert the ERS's employer contributions away from the reach of

- 4 -

plaintiffs, all of which was pursued with the purpose of evading the ERS's obligations to plaintiffs.

4.      In this action, plaintiffs seek a determination that they remain secured creditors of the ERS and/or the Commonwealth notwithstanding Joint Resolution 188 and Act 106, or, in the alternative, a declaration that the diversion of plaintiffs' collateral violated several provisions of the United States and Puerto Rico Constitutions. In particular, because the enactment of Joint Resolution 188 and the further supplementation by Act 106 violated the ERS Title III automatic stay, such laws were void ab initio. But even if such post-petition efforts were not void ab initio, the Puerto Rico Uniform Commercial Code provides that a lien follows collateral transferred without the consent of the secured creditor, and thus continues in any property received by the Commonwealth pursuant to such laws. For these reasons, plaintiffs remain secured creditors of the ERS and/or the Commonwealth notwithstanding Joint Resolution 188 and Act 106.

5.      In the alternative, if the Post-Petition Legislation was effective in stripping the ERS of its assets and diverting the ERS's employer contributions away from the reach of plaintiffs without compensation, then such actions violated the Takings and Contracts Clauses of the United States and Puerto Rico Constitutions. The Post-Petition Legislation effected the taking of the collateral and of the contractual right to timely payment of principal and interest by the ERS and impaired contractual rights. As a result of defendants' actions, plaintiffs are entitled to, among other things, a claim for just compensation that cannot be impaired in any Title III plan of adjustment or order confirming a Title III plan of adjustment. And because plaintiffs were oversecured at all relevant times, their unimpairable claim equals the full principal amount of the ERS Bonds, together with all interest accrued to the date of payment.

- 5 -

## THE PARTIES

6.     Plaintiff Altair Global Credit Opportunities Fund (A), LLC is a limited liability company organized and existing under the laws of Delaware with its principal place of business located at 1888 Century Park East, Los Angeles, CA 90067-1702.

7.     Plaintiff Andalusian Global Designated Activity Company is a designated activity company limited by its shares incorporated under the laws of Ireland located at 70 Sir John Rogerson's Quay, Dublin 2, Ireland.

8.     Plaintiff Glendon Opportunities Fund, L.P. is a limited partnership organized and existing under the laws of the Cayman Islands located at Ugland House, South Church Street, Grand Cayman, Cayman Islands, KY1-1104.

9.     Plaintiff Mason Capital Master Fund, LP is a limited partnership organized and existing under the laws of the Cayman Islands located at PO Box 309, Ugland House, George Town KY1-1104.

10.    Plaintiff Nokota Capital Master Fund, L.P. is a limited partnership organized and existing under the laws of Cayman Islands with its principal place of business at 1330 Avenue of the Americas, 26th Floor, New York, NY 10019.

11.    Plaintiff Oaktree-Forrest Multi-Strategy, LLC (Series B) is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

12.    Plaintiff Oaktree Opportunities Fund IX, L.P. is a limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business located at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

13.    Plaintiff Oaktree Opportunities Fund IX (Parallel 2), L.P. is a limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

14.    Plaintiff Oaktree Value Opportunities Fund, L.P. is a limited partnership organized and existing under the laws of the Cayman Islands with its principal place of business at 333 South Grand Avenue, 28th Floor, Los Angeles, CA 90071.

15.    Plaintiff Ocher Rose, L.L.C. is a Delaware limited liability company located at P.O. Box 1226, New York, NY 10150.

16.    Plaintiff Puerto Rico AAA Portfolio Bond Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

17.    Plaintiff Puerto Rico AAA Portfolio Bond Fund II, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

18.    Plaintiff Puerto Rico AAA Portfolio Target Maturity Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

19.    Plaintiff Puerto Rico Fixed Income Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

20.     Plaintiff Puerto Rico Fixed Income Fund II, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

21.     Plaintiff Puerto Rico Fixed Income Fund III, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

22.     Plaintiff Puerto Rico Fixed Income Fund IV, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

23.     Plaintiff Puerto Rico Fixed Income Fund V, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

24.     Plaintiff Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

25.     Plaintiff Puerto Rico Investors Bond Fund I is an investment trust organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

26.     Plaintiff Puerto Rico Investors Tax-Free Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

27.     Plaintiff Puerto Rico Investors Tax-Free Fund, Inc. II is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

28.     Plaintiff Puerto Rico Investors Tax-Free Fund III, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

29.     Plaintiff Puerto Rico Investors Tax-Free Fund IV, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

30.     Plaintiff Puerto Rico Investors Tax-Free Fund V, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

31.     Plaintiff Puerto Rico Investors Tax-Free Fund VI, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at Banco Popular Center, Suite 1112, 209 Munoz Rivera Avenue, Hato Rey, Puerto Rico 00918.

32.     Plaintiff Puerto Rico Mortgage-Backed & U.S. Government Securities is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza, 10th Floor, 250 Munoz Rivera Ave., San Juan, Puerto Rico 00918.

33.     Plaintiff SV Credit, L.P. is a limited partnership organized and existing under the laws of Delaware located at 1209 Orange Street, Wilmington, New Castle County, Delaware 19801.

34.     Plaintiff Tax-Free Puerto Rico Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza Building, 10th Floor, 250 Munoz Rivera Avenue, San Juan, Puerto Rico 00918.

35.     Plaintiff Tax-Free Puerto Rico Fund II, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza Building, 10th Floor, 250 Munoz Rivera Avenue, San Juan, Puerto Rico 00918.

36.     Plaintiff Tax-Free Puerto Rico Target Maturity Fund, Inc. is a corporation organized and existing under the laws of Puerto Rico with its principal place of business at American International Plaza Building, 10th Floor, 250 Munoz Rivera Avenue, San Juan, Puerto Rico 00918.

37.     Defendant The Commonwealth of Puerto Rico is a United States territory subject to the laws of the United States and the plenary jurisdiction of Congress.

38.     Defendant Oversight Board is an entity created pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") to assist the Commonwealth, including certain of its instrumentalities, in managing their public finances, and for other purposes.

39.     Defendant The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") is an entity created pursuant to the Puerto Rico Fiscal Agency and Financial Advisory Authority Act, P.R. Act No. 2-2017, for the purpose of acting as fiscal agent, financial advisor, and reporting agent of the Commonwealth, its agencies, instrumentalities, subdivisions, public corporations, and municipalities.

40.     Defendant the ERS is a trust created by the Legislature of the Commonwealth of
Puerto Rico to provide pension and other benefits to employees of the government of the
Commonwealth, members and employees of the Legislature, and employees of certain
municipalities and public corporations in Puerto Rico.

41.     Defendant Ricardo Rosselló Nevares is the Governor of the Commonwealth of
Puerto Rico and is being sued in his official capacity.

42.     Defendant Raúl Maldonado is the Secretary of Treasury of the Commonwealth of
Puerto Rico and is being sued in his official capacity.

### JURISDICTION AND VENUE

43.     This action arises under the United States Constitution, the Puerto Rico
Constitution, 42 U.S.C. § 1983, and 48 U.S.C. § 2126.  This Court has federal subject matter
jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States
Constitution and federal statutes.  This Court has supplemental jurisdiction pursuant to 28 U.S.C.
§ 1367 over claims arising under the Puerto Rico Constitution because they are so related to the
claims in the action within the Court's original jurisdiction that they form part of the same case
or controversy under Article III of the United States Constitution.

44.     This Court also has jurisdiction over all claims and causes of action in this
adversary proceeding pursuant to 48 U.S.C. § 2166(a)(2) because they are "related to" the above-
captioned Title III cases.

45.     This action is an actual controversy within the jurisdiction of this Court under 28
U.S.C. § 2201.

46.     This Court has personal jurisdiction over all of the Defendants pursuant to 48
U.S.C. § 2166(c).

- 11 -

47.     Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b) because it is the judicial district in which a substantial part of the events giving rise to the claims herein occurred.  Venue is also proper under 48 U.S.C. § 2167 because this adversary proceeding is brought in a Title III case.

48.     This Court may provide declaratory relief, injunctive relief, and damages pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105(a), and Federal Rule of Civil Procedure 57.

## FACTUAL ALLEGATIONS

### I.     THE ERS

A.     The ERS Enabling Act

49.     The ERS is a trust created by Act No. 447 of May 15, 1951 of the Legislature of the Commonwealth (the "ERS Enabling Act") to provide pension and other benefits to officers and employees of the Commonwealth, members and employees of the Legislature, and officers and employees of certain public corporations and municipalities of the Commonwealth. 3 L.P.R.A. § 761.  The ERS was established as an independent, self-governing entity separate from the Commonwealth and from the Commonwealth's agencies and instrumentalities. 3 L.P.R.A. § 775.  The ERS Enabling Act provided that the ERS is to be governed by an eleven-member Board of Trustees, which is responsible for setting policy for, and overseeing the operations of, the ERS.  *Id.*

50.     The ERS Enabling Act gave the Board of Trustees blanket authorization to incur debt on behalf of the ERS and to secure such debt with the ERS's assets.  Specifically, it authorized the Board of Trustees to "seek a loan from any financial institution of the Government of the Commonwealth of Puerto Rico or the Federal Government of the United States of America or through the direct placement of debts, securing said debt with the assets of the [ERS]."  3 L.P.R.A. § 779(d).

- 12 -

B.    Employer Contributions

51.    The ERS is funded by employer contributions, employee contributions, and investment earnings on its undistributed funds.    Employer contributions are the largest component of this income stream, and they constitute a legal asset of the ERS. The ERS has a statutory right to receive these employer contributions, and employers are required by statute to make them.

52.    The ERS receives employer contributions both from the Commonwealth and from various municipalities within, and public corporations of, the Commonwealth.    The Commonwealth is responsible for approximately 59 percent of the employer contributions the ERS receives, while municipalities and public corporations account for the rest. As of the commencement of the ERS Title III case, the Commonwealth did not hold or own any interest in employer contributions owed by municipalities or public corporations to ERS.

53.    By statute, employer contributions must be sufficient to maintain the actuarial integrity of the ERS—*i.e.*, they must cover the difference between the total cost of benefits provided by the ERS and administrative costs, reduced by contributions made by employees themselves. One type of employer contribution is calculated based on a percentage of payroll. Prior to July 1, 2017, each employer was obligated to contribute a minimum of 15.525 percent of the compensation regularly received by eligible employees on a monthly basis.  3 L.P.R.A. § 787f. These amounts were scheduled to increase annually. *Id.* The employer contributions by the Commonwealth, municipalities, and public corporations now required to be paid on account of retirement obligations to retirees covered by ERS are greater than they were prior to the commencement of the ERS Title III case.

- 13 -

54.     The critical importance of employer contributions to the ERS, and the ERS's authority to enforce its rights, are reflected in a series of provisions in the ERS Enabling Act. For example, an employer's failure to pay timely its contributions to the ERS may be punishable as a misdemeanor. 3 L.P.R.A. § 781a(e), (f). If an employer's contributions to the ERS are in arrears for more than 30 days, the ERS's claim to those contributions has priority over any other outstanding debt of that employer. *Id.* § 781a(h). If a municipality does not make its employer contributions to the ERS, the ERS has the power to intercept or garnish the municipality's property tax revenues. *Id.* § 781a(g). If agencies, public corporations, and instrumentalities of the Commonwealth fail to make employer contributions, the ERS is authorized to issue a certificate of debt for immediate payment of the arrearages from the Department of Treasury. *Id.* § 781a(h). The ERS also is entitled to receive interest on these delinquent contributions. *Id.*

## II.     THE COMMONWEALTH'S FAILURE TO FUND THE ERS

55.     The underfunding facing the ERS is nothing new. To the contrary, it is the result of the Commonwealth's decades of underfunding, its enactment of politically opportunistic benefit increases without allocating the funds to pay for them, and its repeated failure to address the growing pension problems despite many warnings. The Commonwealth's failure to make even the payments required by law has forced the ERS to exhaust its assets, including the proceeds of the 2008 bond issuance, in order to make pension payments to retirees.

56.     The ERS's funding problems result in part from the original design of the ERS. As originally designed, the pension benefit payments owed by the ERS were fixed by the ERS Enabling Act and did not depend on the amount of contributions made by employers/employees or actuarial/economic changes that affected the ERS's funding level. Although the law contemplated that additional contributions might be necessary to maintain a proper funding level, for decades the Commonwealth has not made the employer contributions required by law.

- 14 -

57.    The Commonwealth compounded these problems when it passed a series of "special laws" between 1960 and 2013 that increased pension benefits without providing for mandatory increased contributions to pay for them. These "special laws" included a summer bonus, a medication bonus, a Christmas bonus, contributions to health insurance plans, certain other minimum pension benefits, certain other minimum death benefits, cost of living allowances, and certain additional death and disabilities benefits. The cost of the benefits granted by these special laws was at least $212 million per year in 2013.[2]

58.    Facing a significant underfunding and lacking the necessary support from the Commonwealth, the ERS in 2008 sought to address its financial problems by issuing pension funding bonds (discussed more fully below). This financing led to an infusion of $3 billion in much-needed cash into the ERS, in exchange for the ERS's promise to make principal and interest payments to the bondholders. These obligations, in turn, were secured by liens on, among other things, the employer contributions the ERS was entitled to receive.

59.    Even this amount proved insufficient to solve the ERS's funding problems. By 2011, the ERS's actuaries were issuing warnings to the Commonwealth about the ERS's lack of funds. Rather than taking responsible steps to address the ERS's dire situation, the Commonwealth enacted politically expedient, superficial remedies. For example, through Act No. 116-2011, the Commonwealth enacted a staggered increase of employer contributions from 10.275% in 2011 to 21% by 2021. But according to the ERS's actuaries, this staggered increase in employer contributions was not sufficient to meet the ERS's cash flow needs, let alone reduce the ERS's actuarial deficit.[3] Then, in 2013, the Commonwealth enacted Act No. 3-2013, which, among other things, sought to freeze certain pension benefits and to require the Commonwealth

---

[2] *See* Act of Apr. 4, 2013, No. 3-2013 (Statement of Motives).

[3] *See id.*

to make additional contributions to reduce the ERS's actuarial deficit. Once again, however, the Commonwealth failed to make the payments required of it by law. As a result of this chronic underfunding, the ERS has never built a surplus of assets and instead has continued to use employer contributions to pay current benefits.

## III. PENSION FUNDING BONDS ISSUED BY THE ERS

### A. The ERS Bond Resolution

60. The ERS issued bonds pursuant to the authority of a resolution (the "ERS Bond Resolution") of its Board. *See* Pension Funding Bond Resolution (Jan. 24, 2008) (attached as Exhibit A). It is the ERS Bond Resolution that governs the contractual relationship between the ERS and plaintiffs with respect to the ERS Bonds, specifies the times and amounts of payment of interest and repayment of principal, and sets forth the collateral the ERS provided as security for payment.

61. The ERS Bond Resolution constitutes a valid, binding contract between the ERS and holders of ERS Bonds. ERS Bond Resolution § 102. It affirms that the ERS Bonds are valid, legally binding obligations of the ERS, *id.* §§ 201, 705.

### B. Issuance of the ERS Bonds

62. The ERS issued bonds on the following dates:

    a. "Series A" Bonds totaling $1,588,810,799.60 on January 31, 2008.

    b. "Series B" Bonds totaling $1,058,634,613.05 on June 2, 2008.

    c. "Series C" Bonds totaling $300,202,930 on June 30, 2008.

63. Most of the ERS Bonds were sold to individual residents of the Commonwealth and to local businesses.

64. All of the bond issues' net proceeds (after costs of issuance and required reserves) were used to pay benefits to retirees or invested to provide for future benefit payments.

- 16 -

65.     As of February 2017, the aggregate principal amount of the interest-bearing ERS Bonds plus the accreted[4] value of the zero coupon or capital appreciation ERS Bonds totaled approximately $3,156,000,000.[5]

66.     Plaintiffs together are beneficial holders of approximately $2 billion of these Bonds.

C.      The "Pledged Property"

67.     The foundation of the ERS bond transaction was an extensive security package necessary to protect the investment made by holders of ERS Bonds.  Without this security package, it would have been impossible for the ERS to sell the Bonds in the first place.

68.     The collateral underlying the security package was called "Pledged Property." The ERS Bond Resolution defined Pledged Property to include:

>   a.   all "Revenues," including, among other things, all employer contributions paid from and after the date of the ERS Bond Resolution received by the ERS or the Fiscal Agent "and any assets in lieu thereof or derived thereunder which are payable to [the ERS] pursuant to [the ERS Enabling Act]";
>
>   b.   all "right, title, and interest of [the ERS] in and to" the "Revenues" and "all rights to receive the same";
>
>   c.   the funds, accounts, and subaccounts held for the benefit of bondholders;

---

[4] The accreted value of the capital appreciation ERS Bonds refers to the accrued portion of the face amount.

[5] Government of Puerto Rico: Puerto Rico Fiscal Agency and Financial Advisory Authority, Fiscal Plan for Puerto Rico, at 26 (March 13, 2017), https://junta.pr.gov/wp-content/uploads/wpfd/50/58c71815e9d43.pdf.

- 17 -

      d.   any and all other rights and personal property of every kind pledged and assigned by the ERS for additional security; and

      e.   "any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property," including, "without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of" such property.

ERS Bond Resolution § 501 & Exh. B, VI-33, VI-36, VI-37.

69.     The security interests in and liens on the Pledged Property are "valid and binding as against all parties having claims of any kind in tort, contract or otherwise against the [ERS], irrespective of whether such parties have notice thereof." *Id.* § 501.

70.     The Pledged Property was required to be and, as of the commencement of the PROMESA Title III case for the ERS on May 21, 2017 was, free and clear of any other pledge, lien, charge, or encumbrance. *Id.* § 705.

71.     The ERS was required to use the Pledged Property to make timely principal and interest payments on the ERS Bonds before it spent or used any of the funds for any other purpose. *Id.* §§ 501, 701, & Exh. B, VI-36.

72.     To assure that the Pledged Property would remain available to secure the Bonds, the Bond Resolution explicitly required the ERS to pursue all available legal remedies to collect employer contributions that were delinquent or inadequate. *Id.* §§ 701, 709.

73.     The Oversight Board, the ERS, and the Commonwealth have previously asserted that the ERS Bonds are oversecured.[6]

---

[6] *See, e.g.*, Brief of Amicus Curiae Fin. Oversight and Mgmt. Bd. for Puerto Rico in Support of Respondents-Appellees Urging Affirmance of the District Court Order in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-2433, ECF No. 65, at 18 (1st Cir. Dec. 23, 2016) ("The [ERS Bondholders] have a

D.     Transfer of Contributions to Fiscal Agent

74.     The ERS Bond Resolution established the mechanism by which the employer contributions were to be accounted for, deposited, and distributed.  The ERS Bond Resolution provided that a "Fiscal Agent" would be responsible for administering these matters.  At all relevant times, the Bank of New York Mellon has served as the Fiscal Agent.

75.     The ERS Bond Resolution requires the ERS to transfer employer contributions to the Fiscal Agent on the last business day of each month.  *Id.* § 504.  By the next business day, the Fiscal Agent must deposit the employer contributions into the "Revenue Account," except in limited circumstances not relevant here.  *Id.*  Monies in the Revenue Account are to be applied, in order of priority, (a) to an account to make debt service on senior bonds, (b) to a reserve account for senior bonds, (c) to an account to make debt service on subordinated bonds, (d) to a reserve account for subordinated bonds, (e) to pay operating expenses, and (f) to a general reserve account.  *Id.*  The Fiscal Agent is then responsible for making timely interest and principal payments to ERS Bondholders from these accounts.  *Id.* § 505(4), (5).

---

(continued…)

substantial equity cushion as a result of the reserve accounts and the perpetual revenue streams."); Respondent Employees Retirement System of the Government of the Commonwealth of Puerto Rico's Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-cv-2696, ECF No. 52, at 10-11 (Oct. 26, 2016) ("[T]he security interests held by the ERS Bondholders provide them with future protection more than sufficient to address any concern, real or imagined."); Respondents' Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro García Padilla, et al.*, No. 16-cv-2696, ECF No. 53, at 18 ("Given its size and indefinite duration, the security interest provides Movants with the adequate protection they purport is required to ensure payment on their bonds, certainly through the expiration of the PROMESA stay and, indeed, for as long as the bonds remain outstanding.").

## IV. THE PUERTO RICO OVERSIGHT, MANAGEMENT, AND ECONOMIC STABILITY ACT ("PROMESA")

76.     On June 30, 2016, Congress passed PROMESA.     The stated purpose of PROMESA was to "establish an Oversight Board to assist the Government of Puerto Rico, including instrumentalities, in managing its public finances, and for other purposes." H.R. 5278, 114th Cong. (2016) (preamble).

77.     The enactment of PROMESA automatically triggered an initial stay of creditor remedies against the Commonwealth and its instrumentalities, modeled on the Bankruptcy Code's automatic stay. 48 U.S.C. § 2194. The stay began on June 30, 2016, and initially lasted until February 15, 2017, but the Oversight Board extended the stay until May 1, 2017, at the Commonwealth's request. *Id.* § 2194(d),

78.     On August 3, 2016, plaintiffs requested that the ERS provide adequate protection of their security interests in and liens on the Pledged Property while the initial automatic stay was in effect.  By letter dated August 16, 2016, the ERS denied that request.  In response, plaintiffs filed a motion before this Court to lift the initial PROMESA stay on the ground that plaintiffs' liens were not adequately protected.  The ERS and the Commonwealth opposed the motion, arguing, among other things, that plaintiffs were adequately protected because of their "valid and enforceable liens over hundreds of millions of dollars of ERS revenue, which [would] continue to grow."[7]  This Court agreed that plaintiffs were entitled to adequate protection but concluded that plaintiffs were adequately protected by the stream of employer contributions to

---

[7] Respondent Employees Retirement System of the Government of the Commonwealth of Puerto Rico's Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-cv-2696, ECF No. 52, at 10 (Oct. 26, 2016); *see also* Respondents' Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay in *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-cv-2696, ECF No. 53, at 5 (Oct. 26, 2016) (Commonwealth's brief making similar statements).

the ERS. On appeal, the United States Court of Appeals for the First Circuit ruled that plaintiffs were entitled to a hearing on whether their interests were adequately protected during the initial PROMESA stay, expressing doubts about the constitutionality of any action by the Commonwealth or the ERS that would eliminate the employer contributions or take the ERS's assets without compensating plaintiffs.

## V.    TITLE III CASES

79.    Title III of PROMESA authorized the Oversight Board to file a petition to restructure the debts of a government instrumentality in a court-supervised adjustment process similar to Chapter 9 of the Bankruptcy Code.

80.    On May 3, 2017, the Oversight Board approved and certified the filing of a PROMESA Title III petition for the Commonwealth.[8]

81.    On May 21, 2017, the Oversight Board approved and certified the filing of a separate PROMESA Title III petition for the ERS.[9]

82.    PROMESA incorporates the automatic stay provisions of § 362 of the Bankruptcy Code. Pursuant to these provisions, the filing of the ERS Title III case on May 21, 2017, operated as a stay against all efforts by any person (including the Commonwealth) to obtain or exercise control over property of the ERS. That automatic stay has remained in effect during all times relevant to this action.

---

[8] Financial Oversight and Management Board, Oversight Board Certifies Title III Filings (May 3, 2017), https://juntasupervision.pr.gov/wp-content/uploads/wpfd/49/590a09096cd13.pdf.

[9] Financial Oversight and Management Board for Puerto Rico, Oversight Board Certifies Title III Filings (May 22, 2017), https://juntasupervision.pr.gov/wp-content/uploads/wpfd/49/5923379dd9dfc.pdf.

## VI. "JOINT RESOLUTION FOR OTHER ALLOCATIONS FOR FISCAL YEAR 2017-2018" ("JOINT RESOLUTION 188").

83. The Puerto Rico legislature passed Joint Resolution 188[10] on June 25, 2017, and the Oversight Board adopted it on behalf of the Governor on June 30, 2017.[11]

84. The ostensible purpose of Joint Resolution 188 was to address the pension system's lack of liquidity and insolvency and the need for increased funding to pay benefits owed by the ERS to retirees. To accomplish this ostensible purpose, the Oversight Board required the Commonwealth to draft Joint Resolution 188 to bypass the ERS entirely and required employers to make increased employer contributions directly to the Commonwealth General Fund. Yet, the means to accomplish this goal were neither reasonable nor necessary as there were more narrowly tailored and appropriate moderate alternatives: it could have been accomplished by increasing employer contributions to the ERS within the existing statutory scheme. The actual purpose appears to be and indeed the effect of Joint Resolution 188 was, then, to confiscate plaintiffs' constitutionally-protected property interests in Pledged Property, in which they had legally protected reliance interest.

85. In addition, Joint Resolution 188 ordered the ERS to sell its assets and to transfer the net cash proceeds, in addition to any available funds, into the Puerto Rico Treasury

---

[10] An unofficial English translation of Joint Resolution 188 is attached as Exhibit B. The official Spanish version is available at https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/59591daabd5eb.pdf.

[11] The Oversight Board adopted House Resolution 186, House Resolution 187, and House Resolution 188 as part of the Commonwealth's budget pursuant to §§ 202(d)(2) and 202(e)(3) of PROMESA. The Board "deemed" the budget, along with the various resolutions, "to be approved by the Governor and the Legislature" and "in full force and effect beginning on July 1, 2017." Exhibit A to Letter from Financial Oversight and Management Board to Governor Rosselló, at 2 (June 30, 2017), https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/59591daabd5eb.pdf. House Resolution 186 and House Resolution 187 address other matters related to the Commonwealth's budget, but they also include the full text of House Resolution 188. To avoid repetition, the Complaint refers to House Resolution 188 only.

- 22 -

Secretary's account as part of the General Fund for fiscal year 2017-2018 to make benefit payments to pensioners. Joint Resolution 188 §§ 1, 2, 3.

      86.     Joint Resolution 188 also provided in relevant part that:

         a.  the Commonwealth would assume any payments that Puerto Rico's retirement systems, including the ERS, could not make;

         b.  the ERS would continue to meet its obligations to beneficiaries and pensioners by contributing its available funds and any funds arising from its asset sales to the Commonwealth's General Fund;

         c.  the Commonwealth, its public corporations, and its municipalities would stop making employer contributions to the ERS;

         d.  AAFAF would establish procedures so that the Commonwealth, its public corporations, and its municipalities would make employer contributions to the Commonwealth.

*Id.* § 4.

      87.     No consideration was provided to the ERS or the ERS Bondholders in exchange for the collateral transferred to the Commonwealth's General Fund.

      88.     Joint Resolution 188 was approved by the Puerto Rico legislature pursuant to the Fiscal Plan for Puerto Rico approved and certified by the Oversight Board. *Id.* § 4.

VII.  **"LAW TO GUARANTEE PAYMENT TO OUR PENSIONERS AND ESTABLISH A NEW PLAN FOR DEFINED CONTRIBUTIONS FOR PUBLIC SERVANTS" ("ACT 106").**

89.     The Puerto Rico legislature passed Act 106-2017[12] on August 18, 2017, and the Governor signed it into law on August 23, 2017.

90.     Act 106 established procedures for increasing employer contributions to make payments equal to the obligations to employees as mandated by the Fiscal Plan for Puerto Rico and established in Joint Resolution 188. The law declares that "as of July 1, 2017, in accordance with House Joint Resolution 188 of 2017, as certified by the Fiscal Oversight Board, on July 13, 2017 the Government of Puerto Rico became the direct payer of our retirees' pensions." Act 106, § 1.4.

91.     Act 106 contains provisions that specify the mechanisms by which the Commonwealth will pay all of the benefits due to employees each year. For example, it provides for the treatment and the payment terms of accumulated pensions and associated accounts. *id.* at ch. 2; establishes a defined contribution program, *id.* at ch. 3; creates a retirement board to replace the existing boards of the retirement systems, *id.* at ch. 4; provides transition rules, *id.* at ch. 5, and makes changes to existing laws, *id.* at ch. 6. The Act also reiterates that in accordance with Joint Resolution 188 the Commonwealth would assume any payments that the ERS could not make, *see* Act 106, §§ 1.3, 1.4, that the ERS would contribute its assets to the Commonwealth, *id.*, and that the Commonwealth, its public corporations, and its municipalities would stop making employer contributions to the ERS, *id.*

92.     Act 106 also states that unless an extension is granted the Board of Trustees for the ERS is to be dissolved by December 31, 2017, *id.* § 5.1(b), that the new retirement board will

---

[12] A certified copy of an unofficial English translation of Act 106 is attached as Exhibit C.  The official Spanish version is available at http://www.oslpr.org/2017-2020/leyes/doc/ley-106-23-Ago-2017.doc.

- 24 -

have the authority to dispose of all of ERS's property and equipment, *id.*, §§ 4.1 and 5.3, and that all of ERS's employees will be terminated and transferred to other posts, *id.* § 5.2.

## VIII.  IMPROPRIETY OF JOINT RESOLUTION 188 AND ACT 106.

93.     There was no emergency to justify the stripping of the ERS's assets.  The ERS's inability to pay beneficiaries was both foreseeable and avoidable.  It was caused by the Commonwealth's chronic underfunding of the ERS and its failure to establish and pay sufficient employer contributions to ensure the ERS's ability to make payments to pension beneficiaries over a period of many years.

94.     Moreover, the ERS had or could have appropriately obtained sufficient resources to comply with its debt service obligations as originally scheduled.  Employer contributions include not only those of the central government, but those of public corporations and municipalities.  Public corporations and municipalities are responsible for approximately 41 percent of employer contributions, and those contributions alone are sufficient to fully service the ERS Bonds.

95.     Even if the Commonwealth's past failures to address the ERS's funding level required it to make changes, less drastic and lawful measures were available.  For example, a more moderate and reasonable course of action would have been for the Commonwealth to raise employer contributions through the existing statutory structure and to continue to direct employer contributions to the ERS for payment to beneficiaries.  Instead, the Commonwealth and the Oversight Board appear to have enacted the confiscatory legislation of Joint Resolution 188 and later Act 106 solely to evade the ERS's obligation to make payments on the ERS Bonds and to deprive plaintiffs of their constitutionally protected property interests.

96.     Moreover, this Post-Petition Legislation was not appropriately tailored to the resolution of the problem it purported to solve:  stripping the ERS of its assets certainly will not

- 25 -

The supporting documents for this claim are too voluminous to include in the proof of claim PDF.  They are available upon request by emailing (**puertoricoinfo@PrimeClerk.com**) or by calling **844-822-9231**.

# Prime Clerk 

## **Brooklyn**

### CLAIM/BALLOT HAND DELIVERY CONFIRMATION SHEET

DATE RECEIVED: _5-24-18_

CASE: _Puerto Rico_

NO. OF CLAIMS: _30_

NO. OF BALLOTS: _0_

COPIES: _0_

RECEIVED BY: _Brandon_