# **Exhibit C**

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

In Re: )
THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD ) PROMESA TITLE III
FOR PUERTO RICO ) Case No.
     as representative of ) 17-BK-03283 (LTS)
THE COMMONWEALTH OF PUERTO RICO, et. al, )
     Debtors. )
_____)

In Re: )
THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD ) PROMESA Title III
FOR PUERTO RICO ) Case No.
     as representative of ) 17-BK-03566 (LTS)
THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, )
     Debtor. )
_____)

C O N F I D E N T I A L

Videotaped Deposition of Patrick Dowd

Reported by:
LORRAINE B. ABATE, CSR, RPR

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 78

| | |
|---|---|
| 1 | Patrick Dowd |
| 2 | pricing, my understanding, although it's not my area |
| 3 | of responsibility, is that would come from market |
| 4 | quotes received by the people doing it. |
| 5 | Q. Okay. When did Ocher Rose first become |
| 6 | aware of an argument that the ERS bonds were issued |
| 7 | without authority? |
| 8 | A. It's not something we were aware of or |
| 9 | considered until the argument was raised. |
| 10 | You would have to remind me when that |
| 11 | first was by -- I don't recall whether it was in the |
| 12 | Title III case, but whenever that was first raised in |
| 13 | litigation against us would have been the time. |
| 14 | Q. Does -- well, I'm aware of a pleading |
| 15 | that was filed by AAFAF in November 2017 that made |
| 16 | the argument that the bonds were issued ultra vires. |
| 17 | Do you recall that document? |
| 18 | A. I do recall -- I don't recall the |
| 19 | specifics of the document, but I recall that, and |
| 20 | that time frame is consistent with my recollection. |
| 21 | I think that's when -- that's likely |
| 22 | when we would have first been aware. |
| 23 | Q. But just to be clear, so your testimony |
| 24 | is that Ocher Rose did not ever become aware of that |
| 25 | argument prior to it being made in a public court |

```
1                    Patrick Dowd
2      filing?
3          A.    That's my recollection.
4          Q.    Are you excluding from your answer
5      advice that you may have received from counsel?
6               MR. FOX:  Objection.  I'm not sure
7          there's a way for him to answer that question
8          yes or no without revealing something about the
9          substance he's received from counsel.
10              MR. BASSETT:  Let me ask it more
11         directly.
12         Q.    Prior to the point in time in which you
13     learned of the argument based on it being made
14     publicly in the Title III cases, did your counsel
15     ever identify for you the possibility that that
16     argument could be made?
17     (DIR)
18              MR. FOX:  I'm going to object and
19         instruct you not to answer on the grounds of
20         privilege.
21              MR. BASSETT:  You're going to object to
22         the yes or no question as to whether or not
23         counsel ever advised Ocher Rose as to the
24         potential for that argument?
25              MR. FOX:  Yes.  You're asking about the
```

1  Patrick Dowd
2  content of legal advice provided by counsel.
3  MR. BASSETT: We take issue with that
4  assertion of privilege in this context, and
5  given the affirmative defense that you have
6  raised that Ocher Rose did not have notice of
7  the defect in the validity of the bonds prior to
8  purchasing the bonds, we'll take that up with
9  the Court as necessary, and we will reserve the
10 right to continue this deposition on that basis.
11 MR. FOX: I -- obviously, we disagree
12 with just about everything you just said,
13 including the characterization of the notice
14 defense as an affirmative defense.
15 Q. Did anyone other than counsel inform
16 Ocher Rose of the possibility that someone might make
17 the ultra vires argument prior to the time that you
18 saw it disclosed in a public court filing?
19 A. Not that I can recall.
20 (Dowd Exhibit 6, Spanish Version
21 Document, marked for identification, as of this
22 date.)
23 Q. Mr. Dowd, I've handed you a document
24 that's been marked as Dowd Exhibit 6. Take your time
25 to review it and then once you have, please let me

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 97

| | |
|---|---|
| 1 | Patrick Dowd |
| 2 | I think that the set of facts that I |
| 3 | determined we should seek advice on were clear from, |
| 4 | you know, at an early stage from the official |
| 5 | statement and from statements on the sort of parent |
| 6 | government's financial situation. |
| 7 | MR. BASSETT: Counsel, with respect to |
| 8 | the names of the issuers, can you help me |
| 9 | understand why, what's the privilege claim? |
| 10 | MR. FOX: Because the fact that they |
| 11 | sought legal advice as to the validity of bonds |
| 12 | by these particular issuers is a privileged |
| 13 | request for legal advice. It's core |
| 14 | attorney-client privilege. |
| 15 | MR. BASSETT: So if a privilege log were |
| 16 | produced that contained, for example, an e-mail |
| 17 | that had been sent in connection with that other |
| 18 | bond issuance to counsel, what would the subject |
| 19 | matter box say? |
| 20 | MR. FOX: That's a very hypothetical |
| 21 | question, but it would not reveal the content of |
| 22 | the request. So it would not reveal that it was |
| 23 | a request for whether the bonds were valid. |
| 24 | That's the content of the request for legal |
| 25 | advice. |

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 98

1  Patrick Dowd
2  MR. BASSETT: In asking for whether or
3  not advice occurred regarding the validity of
4  the bonds, I am asking for the topic of the
5  legal advice, not the content of the legal
6  advice. Are you still instructing the witness
7  not to answer?
8  MR. FOX: It's the -- it is the content
9  of the advice that was requested. It's -- the
10  privilege covers both the request and the advice
11  that's been rendered.
12  MR. BASSETT: I disagree and reserve
13  rights on that issue.
14  MR. PAPEZ: Also I'll note for the
15  record that we're talking about not even ERS
16  bonds here. I mean, you're asking us to waive
17  privilege over something that we're claiming
18  privilege on for different bonds, not held by
19  the actual party here, which is Ocher Rose.
20  So I mean, we're getting pretty far
21  afield. It's five o'clock. I think it's time
22  to move off from this subject.
23  MR. BASSETT: It is relevant. I'm not
24  asking for any privilege waiver. I'm only
25  asking for the topic of the advice sought from

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 99

```
 1                    Patrick Dowd
 2        counsel.  And obviously, we don't agree.  We'll
 3        reserve our rights and take it up with the Court
 4        if we deem necessary.
 5               MR. PAPEZ:  Fair enough.
 6   BY MR. BASSETT:
 7        Q.     Can I go back to -- sorry, Dowd
 8   Exhibit 4.  If you could please take another look at
 9   that.
10               The first date that is referred to here
11   is ▓▓▓▓▓▓▓▓  Is that the first date on which
12   Ocher Rose ever acquired ERS bonds?
13               MR. FOX:  Objection to form.
14        Q.     Let me help you.  Let me help you maybe
15   understand where I'm going with this.
16        A.     Okay.
17        Q.     If you go to page 5 of the document,
18   which is part of the preliminary --
19        A.     Page 5 of this?
20        Q.     It's labelled page 5 at the bottom.  I
21   believe I gave it to you.
22        A.     Of which document?
23        Q.     I'm sorry, of Dowd Exhibit 4.
24        A.     I don't know that I -- this.  Okay.
25        Q.     The second full paragraph on that page
```

GregoryEdwards, LLC | Worldwide Court Reporting
GregoryEdwards.com | 866-4Team GE

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 132

|    | Patrick Dowd |
|----|---|
| 1  | |
| 2  | been -- my best guess is between a month and two ago. |
| 3  | Q. And that was the same time at which you |
| 4  | learned that Mr. Daniels would be designated for the |
| 5  | other topics? |
| 6  | A. Correct. |
| 7  | Q. That includes 16 and 17 for Mr. Daniels? |
| 8  | A. Yes. |
| 9  | MR. BASSETT: No further questions at |
| 10 | this time. |
| 11 | There were a number of issues that came |
| 12 | up during the course of today's deposition that |
| 13 | have led us to believe we are not getting the |
| 14 | testimony that we are entitled to receive, but |
| 15 | because we take issue with several of the |
| 16 | objections that were made on the grounds of the |
| 17 | attorney-client privilege and instructions not |
| 18 | to answer, including with respect to the other |
| 19 | investments on which Mr. Dowd sought advice and |
| 20 | the instruction not to reveal the names of those |
| 21 | investments. |
| 22 | We also take issue with the instruction |
| 23 | not to answer whether or not Jones Day or other |
| 24 | counsel has ever raised or otherwise identified |
| 25 | the ultra vires issue to Ocher Rose. |

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 133

|   | Patrick Dowd |
|---|---|
| 1 | |
| 2 | And additionally, we take issue with the |
| 3 | preparedness of the deponents today on a variety |
| 4 | of topics including -- and we also take issue |
| 5 | with the timeliness of the disclosure to the |
| 6 | committee and the other parties as to which |
| 7 | witnesses would be designated on each topics. |
| 8 | For all those reasons, we reserve our |
| 9 | rights to go to the Court. We reserve the right |
| 10 | to keep the deposition open. As far as we are |
| 11 | concerned, the deposition remains open. |
| 12 | MR. FOX: So we object to all of that. |
| 13 | We think you're asking questions that go to the |
| 14 | core of the attorney-client privilege, including |
| 15 | the substance of legal advice requested and the |
| 16 | substance of legal advice received. |
| 17 | We think -- we identified to you that |
| 18 | Mr. Dowd and Mr. Daniels would be splitting the |
| 19 | topics as designees quite some time ago. We |
| 20 | received no question from you, no indication of |
| 21 | any confusion as to which topics were which. We |
| 22 | identified to you this morning, before we |
| 23 | started, specifically which topics each would |
| 24 | handle. There was no objection from anyone at |
| 25 | that time. |