# **Exhibit D**

CONFIDENTIAL
Justin Boyer — March 3, 2020

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF PUERTO RICO

 3

 4        _____

 5        In Re:                            )

 6        THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD   )   PROMESA TITLE III

 7        FOR PUERTO RICO                   )   Case No.

 8                  as representative of    )   17-BK-03283 (LTS)

 9        THE COMMONWEALTH OF PUERTO RICO, et. al,   )

10                  Debtors.               )

11        _____)

12        In Re:                            )

13        THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD   )   PROMESA Title III

14        FOR PUERTO RICO                   )   Case No.

15                  as representative of    )   17-BK-03566 (LTS)

16        THE EMPLOYEES RETIREMENT SYSTEM OF THE   )

17        GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, )

18                  Debtor.                )

19        _____)

20

21                         CONFIDENITAL

22                Transcript of JUSTIN BOYER

23

24        Reported by:

25        LORRAINE B. ABATE, CSR, RPR
```

GregoryEdwards, LLC  |  Worldwide Court Reporting
GregoryEdwards.com  |  866-4Team GE

CONFIDENTIAL
Justin Boyer - March 3, 2020

1      CONFIDENTIAL - Boyer - March 3, 2020 - CONFIDENTIAL

2              So we rely on sometimes outside sources,

3      like Reorg Research to keep track of some dockets and

4      such.  You know, if it's something that we're heavily

5      involved in like PG&E, I will check the docket

6      myself, personally.  But generally, we rely on Reorg

7      to flag, you know, filings.

8          Q.      But within a bankruptcy case, if there

9      is a specific litigation related to the security that

10     you're considering investing in, fair to say that you

11     would monitor the pleadings and arguments being made

12     in that litigation?

13             MS. McGONIGLE:  Same objection.  Go

14         ahead.

15         A.      So I don't know if you're getting at

16     that there was an AAFAF challenge to the ERS bonds.

17     I actually was unaware of that, and that's maybe

18     shame on me for not being aware of it as an analyst

19     just in the course of my diligence.  But I was not

20     aware of that when we were purchasing these bonds.

21         Q.      When did you first become aware of

22     anyone having made the argument that the ERS bonds

23     are invalid?

24         A.       It was after we purchased them.  I think

25     it was the FOMB that filed something.  And on the

CONFIDENTIAL
Justin Boyer - March 3, 2020

Page 47

1       CONFIDENTIAL - Boyer - March 3, 2020 - CONFIDENTIAL

2    AAFAF, I actually got -- was made aware of that

3    yesterday.

4               (Boyer Exhibit 1, Committees' and

5               Government Parties' Amended Notice of Rule

6               30(b)(6) Deposition of Redwood Master Fund,

7               Ltd., marked for identification, as of this

8               date.)

9               (Boyer Exhibit 2, Notice of Videotaped

10              Deposition of Justin Charles Boyer, marked for

11              identification, as of this date.)

12              (Boyer Exhibit 3, Redwood Master Fund,

13              Ltd.'s Responses and Objections to the

14              Committee's and Government Parties Amended

15              Notice of Rule 30(b)(6) Deposition of Redwood

16              Master Fund, Ltd., marked for identification, as

17              of this date.)

18       Q.    Mr. Boyer, the court reporter has handed

19    you three documents I actually have identified

20    earlier in the deposition today.

21              But Exhibit 1 is the actual Rule

22    30(b)(6) Deposition Notice that the committee and

23    other parties served on Redwood in connection with

24    this litigation.

25              Exhibit 2 is a Deposition Notice

CONFIDENTIAL
Justin Boyer - March 3, 2020

Page 86

```
 1      CONFIDENTIAL - Boyer - March 3, 2020 - CONFIDENTIAL
 2          Q.      So do you understand that this contains
 3      responses to all of the allegations that plaintiffs
 4      made in the adversary proceeding and that also
 5      includes certain counterclaims that Redwood has made?
 6          A.      Yes.
 7          Q.      I would like to direct your attention to
 8      paragraph 123 of the document.
 9          A.      123.   Yeah.
10          Q.      First of all, feel free to check this,
11      if you want, but I believe counter-claimants is
12      defined to include Redwood.
13              Can you agree with that?
14          A.      That's really something that -- I mean,
15      our counsel would know if we are counter-claimants.
16      I --
17              MS. McGONIGLE:   I can represent to you
18          that you're one of the counter-claimants.
19          A.      Yes, then I'm a counter-claimant.
20          Q.      Thank you.
21              The first sentence of that paragraph
22      says "When counter-claimants acquired their interest
23      in ERS bonds, they believed and understood that the
24      ERS bonds were valid, authorized obligations of ERS."
25              Do you see that?
```

CONFIDENTIAL
Justin Boyer - March 3, 2020

```
  1        CONFIDENTIAL - Boyer - March 3, 2020 - CONFIDENTIAL

  2        A.      Yeah.

  3        Q.      Is that a true statement?

  4        A.      That is true.

  5        Q.      What is the basis for the belief and

  6    understanding that Redwood had as set forth in that

  7    sentence?

  8        A.      I would say the key documents being the

  9    bond resolution, the offering statement, the enabling

 10    act, is kind of the key documents.

 11        Q.      What about the bond resolution -- well,

 12    strike that.

 13                Are there any other documents that form

 14    the basis for that understanding and belief?

 15        A.      So I said the bond resolution, the

 16    official statement, and the enabling act.

 17        Q.      Anything else?

 18        A.      No.   Those are the -- the key documents.

 19        Q.      What about the bond resolution led you

 20    to have this understanding and belief?

 21        A.      I would say specifically, the language

 22    in the bond resolution is stronger and that is the

 23    actual contract that governs the bonds.

 24                In particular, it states that our

 25    collateral is any proceeds of our security interest
```

GregoryEdwards, LLC  |  Worldwide Court Reporting
GregoryEdwards.com  |  866-4Team GE

CONFIDENTIAL
Justin Boyer - March 3, 2020

Page 89

```
1          CONFIDENTIAL - Boyer - March 3, 2020 - CONFIDENTIAL

2                    MS. McGONIGLE:  Objection.

3          A.      Can you repeat that.

4          Q.      Do you understand that the offering

5     statement can be used to determine whether the ERS

6     bonds were valid, authorized obligations of ERS?

7                    MS. McGONIGLE:  Objection.

8          A.      These are technical, legal points.  My

9     understanding is the bond resolution is the governing

10    document, but you cannot make knowing material

11    misstatements in the official statement.

12         Q.      So you mentioned that these are

13    technical, legal points in your view.

14                 In forming the belief and understanding

15    that the ERS bonds were valid, authorized obligations

16    of ERS, Redwood did not consult with counsel?

17    (DIR)

18                    MS. McGONIGLE:  Objection.  That calls

19              for the substance of a request for legal advice,

20              so I'm going to instruct you not to answer.

21                    MR. BASSETT:  We take issue with that

22              instruction.  We also discussed that type of

23              objection at length during the record on past --

24              during past depositions.

25                 We disagree that revealing the subject
```

CONFIDENTIAL
Justin Boyer - March 3, 2020

Page 90

```
 1       CONFIDENTIAL - Boyer - March 3, 2020 - CONFIDENTIAL

 2           matter of a request for advice from counsel is

 3           privileged.  We believe the witness should

 4           answer the question and reserve our rights.

 5           Q.     Are you going to follow your counsel's

 6       instruction not to answer?

 7           A.     Of course.

 8           Q.     I think I asked you a question similar

 9       to this previously, but I don't think you gave me a

10       specific answer.

11               But what can you tell me about when

12       exactly Redwood first became aware of the argument

13       that the ERS bonds were issued invalidly?

14           A.     Again, I don't know the exact dates.  It

15       was after the discussion document was written.

16           Q.     When did you write the discussion

17       document?

18           A.     It's the dated -- on the discussion

19       document itself.

20           Q.     Okay.  So I'll show it to you in a

21       minute, but I believe it's dated August 2018.

22               Does that sound roughly correct?

23           A.     That sounds roughly correct.

24           Q.     I won't hold you to it.

25               So you are aware -- are you aware of the
```

CONFIDENTIAL
Justin Boyer - March 3, 2020

1      CONFIDENTIAL - Boyer - March 3, 2020 - CONFIDENTIAL

2    fact now that AAFAF made the argument that the bonds

3    were issued invalidly on two separate occasions, at

4    least one in November of 2017, and then again in

5    January 2018?

6          A.      I was made aware of that yesterday.

7          Q.      But you did not at any time between then

8    and preparing your discussion document in August of

9    2018, become aware of that fact?

10         A.      Correct.

11         Q.      Do you know -- do you recall how you

12   became aware of the argument for the first time?

13         A.      It was in a privileged conversation.

14                 (Boyer Exhibit 7, Instant Bloomberg

15                 Chat, marked for identification, as of this

16                 date.)

17         Q.      Mr. Boyer, the court reporter has handed

18   you what has been marked Boyer Exhibit 7.  Please

19   take your time to review the document.  Let me know

20   when you're finished and then I'll ask you a few

21   questions about it.

22         A.      Yeah.  I looked through it.

23         Q.      Do you recognize this document?

24         A.      Yeah.  I've seen this before.

25         Q.      Can you tell me what it is, please.