# **Exhibit J**

**Proskauer**   Proskauer Rose LLP   One International Place   Boston, MA 02110-2600

March 13, 2020

<u>Via Email</u>

Matthew Papez
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
mpapez@jonesday.com

William D. Dalsen
Attorney at Law
d 617.526.9429
f 617.526.9899
wdalsen@proskauer.com
www.proskauer.com

Re:   *In Re The Employees Retirement System of the Government of the Commonwealth of Puerto Rico (ERS)* – Bondholders' Improper Assertion of Attorney-Client Privilege and Inadequate Privilege Logs

Dear Matt:

    I write on behalf of the Committees and Government Parties[1] in an attempt to resolve, without court intervention, issues arising out of the improper assertion of the attorney-client privilege and other purported protections by the ERS Bondholders represented by Jones Day (hereinafter, the "Bondholders").

    As discussed below, the Bondholders' privilege assertions are improper in three respects. *First*, as the Bondholders have placed at issue the facts that would give them reason to know the ERS Bond issuance was defective, the Bondholders have improperly instructed their witnesses not to answer questions concerning when they first became aware of the assertion the ERS Bonds were invalid, *ultra vires*, or illegally issued on grounds of the attorney-client privilege. *Second*, for the same reasons, the Bondholders have improperly asserted attorney-client privilege and work-product protection over certain documents and communications with counsel that, based on their timing and their meager and boilerplate descriptions, likely contain a discussion of the validity and legality of ERS Bonds. *Third*, aside from the Bondholders' at-issue waiver of the attorney-client privilege and other protections, dozens of descriptions on the Bondholders' privilege logs are inadequate to sustain a claim of privilege or other protection.

    We request a meet-and-confer on these issues.

---

[1] The Committees and Government Parties are:  the Official Committee of Unsecured Creditors (the "<u>Creditors' Committee</u>"), the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "<u>Retiree Committee</u>" and, together with the Creditors' Committee, the "<u>Committees</u>"), the Financial Oversight and Management Board for Puerto Rico (the "<u>FOMB</u>"), the Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico (the "<u>SCC</u>"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("<u>AAFAF</u>" and, together with the FOMB and the SCC, the "<u>Government Parties</u>").

**Proskauer**

Mr. Matthew Papez, Esq.
March 13, 2020
Page 2

I. **The Bondholders' Assert a "Notice" Argument under UCC § 8-202(b).**

The Bondholders have asserted that their claims pertaining to the ERS Bonds are viable even if the ERS Bonds are invalid because, they contend, Uniform Commercial Code ("UCC") § 8-202(b), codified at 19 L.P.R.A. § 1752(b), applies here. *See, e.g.*, March 4, 2020 Letter from D. Fox to W. Dalsen, at 5; Case No. 17-bk-3566, ECF No. 778 ¶ 7. Section 8-202(b) provides:

> (b) The following rules apply if an issuer asserts that a security is not valid:
>
> (1) A security other than one issued by a government or governmental subdivision, agency, or instrumentality, even though issued with a defect going to its validity, is valid in the hands of a purchaser for value ***and without notice of the particular defect*** unless the defect involves a violation of a constitutional provision. In that case, the security is valid in the hands of a purchaser for value and without notice of the defect, other than one who takes by original issue.
>
> (2) Clause (1) of this subsection applies to an issuer that is a government or governmental subdivision, agency, or instrumentality only if there has been substantial compliance with the legal requirements governing the issue or the issuer has received a substantial consideration for the issue as a whole or for that particular security and a stated purpose of the issue is one for which the issuer has power to borrow money or issue the security.

19 L.P.R.A. § 1752(b) (emphasis added).

As the emphasized language indicates, and assuming UCC § 8-202(b) applies here,[2] its application turns, in part, on whether the Bondholders were "without notice" of the defects that render the ERS Bonds invalid. The UCC as enacted in Puerto Rico, in turn, defines "notice":

> (25) Notice. A person has 'notice' of a fact when:
>
> (a) He has actual knowledge of it; or
>
> (b) he has received a notice or notification of it, or

---

[2] For the avoidance of doubt, the Committees and Government Parties do not concede UCC § 8-202(b) applies or that it can be a "defense" for the Bondholders. Instead, we seek discovery on issues pertaining to it because the Bondholders continue to assert UCC § 8-202(b) arguments.

**Proskauer**

Mr. Matthew Papez, Esq.
March 13, 2020
Page 3

>  (c) from all the facts and circumstances known to him at the
>  time in question he has reason to know that it exists. ….

19 L.P.R.A. § 451(25). Whether the Bondholders were "without notice" as to whether the ERS Bonds were defective under UCC § 8-202(b) therefore turns, in part, on whether they had "reason to know" of the defect based on "all the facts and circumstances known to [them]" at the time of purchase.

### II. The Bondholders Refuse to Disclose When They Learned Facts and Contentions Concerning the Validity of ERS Bonds.

Despite affirmatively raising the "notice" argument under UCC § 8-202(b), the Bondholders are withholding information about when they first learned of the contention the ERS Bonds were invalid on the grounds that information is "privileged." Specifically, the Bondholders have offered testimony as to when they first became aware of *public* documents contending the ERS Bonds are invalid, but they will not say, one way or the other, whether they learned about that contention or facts related to it through counsel at an earlier time.

It is plain the Bondholders are preparing their witnesses to disclose selected information that makes it *appear* they were "without notice" the ERS Bonds were issued *ultra vires*, while refusing to say when they *actually first learned* of the defect with the ERS Bonds by asserting privilege over earlier communications with counsel in which they learned of that argument.

For example, below are excerpts from the deposition of SV Credit (Shanshan Cao). Ms. Cao was warned not to disclose communications with counsel that would reveal when SV Credit first learned of the contention the ERS Bonds were invalid. She testified as to SV Credit's awareness based on public pleadings—and then said she had "nothing to add" after receiving additional cautions from counsel, and was instructed not to answer whether she was withholding information on the basis of those cautions and instructions:

> Q. Do you recall when SV Credit first learned or heard of the argument that the ERS bonds were not validly issued?
>> MS. McGONIGLE: And I'll just caution you not to disclose privileged communications in your response.
>> THE WITNESS: So public pleadings are okay?
>
> A. Public pleadings are okay?
> \*\*\*
>> MR. BASSETT: I'm sorry to interrupt, but I just want to note an objection for the record to the instruction on privilege grounds to the extent the witness is excluding from her answer any communications from counsel that made SV Credit aware of any issue concerning the validity of the ERS bonds. We think that is an inappropriate instruction and reserve all rights.

**Proskauer**

**Proskauer»**

Mr. Matthew Papez, Esq.
March 13, 2020
Page 4

> MR. DALSEN: Okay. Well, I will join the objection, but I'll also just continue the questions. We can get there.

\*\*\*

Q. Putting aside publicly-available information, when did SV Credit first hear the argument that the ERS bonds may be invalidly issued?
> MS. McGONIGLE: And I will repeat my caution to the witness not to disclose privileged information.

A. I have nothing to add other than what I just said in response to your earlier question.

Q. And when you say that you have nothing to add, are you excluding from your answer information that you believe to be privileged?
> MS. McGONIGLE: I'm going to object to that as well. You know, answering that question would require the witness to indicate whether -- to indicate whether she -- the substance of a request for advice from counsel. And therefore, it is privileged.

\*\*\*

Q. So Ms. Cao, I'm going to ask you when you say that you have nothing to add to your response, are you excluding from your answer to me information that you believe to be privileged, yes or no?
> MS. McGONIGLE: And again, I will instruct the witness not to answer because the question is essentially, whether or not SV Credit sought or received advice from counsel concerning the validity of the bonds, and that answering that question would require disclosure of the substance of a request or advice from counsel.
> MR. DALSEN: And Ms. --

Q. First of all, will you follow your counsel's instruction?
A. Yes.

\*\*\*

Q. Okay. Ms. Cao, did SV Credit hear the argument that the ERS bonds may be illegally issued or invalid prior to any of its purchases of ERS bonds?
> MS. McGONIGLE: And same caution that I have given before, I caution you not to disclose privileged communications.

A. I have nothing to add.

Q. And Ms. Cao, are you withholding information in response to my question on the basis of your counsel's instruction?
> MS. McGONIGLE: Same instruction as I've given. I instruct the witness not to answer because it would require disclosing substance of a request for advice from counsel, if there was such a request.

**Proskauer**

Mr. Matthew Papez, Esq.
March 13, 2020
Page 5

> Q. And are you going to follow your counsel's instruction?
> A. Yes.

SV Credit Depo. Tr. (Shanshan Cao) 60:25-67:17 (excerpts).

This pattern of withholding information about *when* the Bondholders first learned of the contention the ERS Bonds were invalid—and specifically, whether the Bondholders learned of that contention from their lawyers at an earlier date than when they learned of it from publicly available documents—has repeated itself in each deposition we have taken to date. *E.g.*, Ocher Rose Depo Tr. (Patrick Dowd): 78:23–80:14; Redwood Depo. Tr. (Justin Boyer): 89:14–90:7; Oaktree Depo. Tr. (Jordan Mikes): 215:7–218:11; Crown/Pentwater (Luke Corning): 43:11–45:12; Andalusian Depo. Tr. (James Bolin): 85:7–86:13.

The Bondholders have also asserted blanket privilege claims over documents that may have included notice they received from counsel concerning defects with the ERS Bond issuance. *See* Exhibit 1. It is not clear from the meager descriptions provided for these documents whether those documents contain such information, even though that information bears directly on the Bondholders' UCC § 8-202(b) arguments.

### III. The Bondholders' Privilege Assertions Are Improper, and The Bondholders' Notice Argument Waives Attorney-Client Privilege in Any Event.

The above shows the Bondholders are blocking inquiry into facts and contentions they first learned from counsel on the grounds they are "privileged," and only permitting a limited inquiry into facts and contentions they learned apart from counsel (viz. from public documents). That limitation is not only improper, but obstructs our inquiry into core facts the Bondholders chose to inject into this case by placing their own knowledge at issue.

As a threshold issue, when the Bondholders first learned of facts and contentions relating to the validity of the ERS Bonds is not "privileged," even if the source of those facts or contentions was counsel. The Bondholders appear to agree that when they learned of certain facts or contentions is not privileged information,[3] yet they have blocked inquiry into when counsel gave them notice about facts and contentions relating to the validity of the ERS Bonds. Nor can the Bondholders claim the *subjects* of the advice rendered are "privileged" such that the requested information may be withheld.

Even if such information could be privileged, the Bondholders waived privilege by affirmatively placing their own knowledge at issue by asserting UCC § 8-202(b) arguments. The

---

[3] As Mr. Fox put it in his letter of March 4, 2020 (at 6): "I explained that our interrogatories were 'asking for a fact, which is when they learned about a particular contention or when they came to a particular conclusion. We're not asking about the communications that led them to that. We're not asking about the content of the communications.' Tr. of Jan. 15, 2020 Hr'g at 22:9-13."

**Proskauer**

Mr. Matthew Papez, Esq.
March 13, 2020
Page 6

attorney-client privilege "'was intended as a shield, not a sword,'" and "[t]he great weight of authority holds that the attorney-client privilege is waived when a litigant 'place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege against disclosure of such information would be manifestly unfair to the opposing party.'" *Sax v. Sax*, 136 F.R.D. 542, 543 (D. Mass. 1991) (quoting *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (citations omitted)).

Here, there can be no question the Bondholders placed their knowledge of facts and contentions relating to the validity of the ERS Bonds at issue by claiming they were "without notice" of defects in the ERS Bond issuance. In fact, the Bondholders' communications with counsel may be exceptionally probative of whether they had "notice" within the meaning of 19 L.P.R.A. § 451(25), particularly in view of witness testimony suggesting there would be more to add but for the instructions to exclude counsel as a source of knowledge, facts, and notice.

There can also be no question it would be manifestly unfair for the Bondholders to later rely on their own incomplete testimony about their "lack of notice" of defects should the Court find UCC § 8-202(b) applies in these matters. It would be particularly unfair here, where the Bondholders are responsible for making that testimony incomplete by making improper privilege assertions.

Put simply, the Bondholders do not get to pick and choose what they heard about the validity of the ERS Bonds based on the *source* of that information when they chose to place their own knowledge, from any source, at issue in these matters by asserting UCC § 8-202(b) arguments. As such, the Bondholders must do the following:

1. The witnesses who have already been deposed must be made available for an additional 2 hours of testimony on their notice of defects with the ERS Bond issuance—including, specifically, the arguments, contentions, and facts they learned from counsel concerning the validity of the ERS Bonds, and when they learned of the same.

2. To avoid the need for additional testimony from upcoming witnesses (Mason Capital, Altair/Glendon), the Bondholders must not instruct the witnesses not to answer questions pertaining to the subjects in No. 1 above.

3. The documents identified in Exhibit 1 that contain arguments, contentions, and facts the Bondholders learned from counsel concerning the validity of the ERS Bonds must be produced to the Committees and Government Parties promptly and, in particular, ahead of the additional testimony from previously deposed witnesses and the upcoming depositions of Mason Capital and Altair/Glendon. As one example, a memorandum from Jones Day to members of the ERS Bondholder Group from August 2015 appears likely to contain some discussion concerning the validity and



Mr. Matthew Papez, Esq.
March 13, 2020
Page 7

> enforceability of the ERS Bonds prior to many of the Bondholders' purchases. If those documents do not contain such arguments, contentions, and facts, the privilege logs should be updated with adequate descriptions for those documents. *See also infra* Point IV.

As the Bondholders alone are responsible for the obstruction of our inquiry into these matters, the Bondholders must either take the actions outlined above promptly, or confirm in writing that they are abandoning any arguments based on UCC § 8-202(b) or otherwise based on the contention they were "without notice" of the defect in the ERS Bonds when purchased.

## IV.   The Bondholders' Privilege Logs Are Deficient Independently of Their At-Issue Waiver of Privileges and Protections.

Aside from the improper assertion of privileges and protections the Bondholders have waived in any event, the Bondholders' privilege logs contain numerous deficiencies with their descriptions that prevent us from determining how the withheld documents or information concern the rendering of legal advice. Those documents are listed in Exhibit 2. For example:

- Ocher Rose withheld multiple documents characterized as containing "confidential internal ERS talking points drafted in consultation with counsel." *E.g.*, BH-ERS-6-PRIV-183; BH-ERS-6-PRIV-184; BH-ERS-6-PRIV-185. It is not clear what "talking points" are, or why drafting them with counsel necessarily relates to the rendition of legal advice.

- Ocher Rose also withheld several documents exchanged with its investor relations team described as "discussing and attaching internal confidential ERS talking points drafted in consultation with counsel." *E.g.*, BH-ERS-6-PRIV-33; BH-ERS-6-PRIV-34. It is unclear why discussions with the external-facing investor-relations team would be privileged, or why "talking points" for that external-facing team would be privileged.

- Mason Capital and Ocher Rose use a boilerplate description for their privilege redactions: "legal advice from counsel on ERS Bonds." *E.g.*, BH-ERS-6-020718; BH-ERS-3-028278. That description is so generic even in comparison to other descriptions the Bondholders have provided that we cannot determine whether the privilege claim is valid, particularly in view of the waiver issues described above.

- Mason Capital withheld multiple documents described as "concerning confidential mediation notes prepared for discussions with counsel." *E.g.*, BH-ERS-3-PRIV-052. It is not clear why the entirety of such notes would be privileged. It is likewise unclear whether the notes contain legal advice, or contain facts and contentions that could have been privileged but for the Bondholders' at-issue waiver described above.

**Proskauer**

Mr. Matthew Papez, Esq.
March 13, 2020
Page 8

      Please provide revised privilege logs in view of the above prior to the deposition of Mason Capital presently scheduled for March 25, 2020.

\*   \*   \*   \*   \*

      Please advise of your availability for a meet-and-confer this coming **Tuesday, March 17, 2020** in the afternoon Eastern Time.

      The Committees and Government Parties reserve all rights.

Very truly yours,<br><br>*[signature]*<br><br>William D. Dalsen

Copies:

Margaret A. Dale, Esq. (via email) (mdale@proskauer.com)
Jennifer Roche, Esq. (via email) (jroche@proskauer.com)
Cathy Steege, Esq. (via email) (csteege@jenner.com)
Madhu Pocha, Esq. (via email) (mpocha@omm.com)
Tristan Axelrod, Esq. (via email) (taxelrod@brownrudnick.com)
Danielle D'Aquila, Esq. (via email) (dd'aquila@brownrudnick.com)
Nicholas Bassett, Esq. (via email) (nicholasbassett@paulhastings.com)

**Proskauer**



Mr. Matthew Papez, Esq.
March 13, 2020
Page 9

## Exhibit 1

- **SV Credit**: BH-ERS-7-PRIV-195; BH-ERS-7-PRIV-196; BH-ERS-7-PRIV-197; BH-ERS-7-PRIV-198; BH-ERS-7-PRIV-199; BH-ERS-7-PRIV-200; BH-ERS-7-015043; BH-ERS-7-015093; BH-ERS-7-015239; BH-ERS-7-015289; BH-ERS-7-015435; BH-ERS-7-015486; BH-ERS-7-015636; BH-ERS-7-015686; BH-ERS-7-017030; BH-ERS-7-017080; BH-ERS-7-017393; BH-ERS-7-017433; BH-ERS-7-017583; BH-ERS-7-017633; BH-ERS-7-023488; BH-ERS-7-023509; BH-ERS-7-023571; BH-ERS-7-023583; BH-ERS-7-023596; BH-ERS-7-023609; BH-ERS-7-017376; BH-ERS-7-017379; BH-ERS-7-017383; BH-ERS-7-017386; BH-ERS-7-023468; BH-ERS-7-023472; BH-ERS-7-023480; BH-ERS-7-023522; BH-ERS-7-023525; BH-ERS-7-023529; BH-ERS-7-023532; BH-ERS-7-023536; BH-ERS-7-023539; BH-ERS-7-023543; BH-ERS-7-023547; BH-ERS-7-023551; BH-ERS-7-023555; BH-ERS-7-023559; BH-ERS-7-023619; BH-ERS-7-023484; BH-ERS-7-023485; BH-ERS-7-023486; BH-ERS-7-023487
- **Mason Capital**: BH-ERS-3-PRIV-071; BH-ERS-3-PRIV-072; BH-ERS-3-PRIV-073; BH-ERS-3-PRIV-074; BH-ERS-3-PRIV-075; BH-ERS-3-PRIV-076; BH-ERS-3-PRIV-077; BH-ERS-3-PRIV-078; BH-ERS-3-PRIV-079; BH-ERS-3-PRIV-080; BH-ERS-3-PRIV-081; BH-ERS-3-PRIV-082; BH-ERS-3-PRIV-093; BH-ERS-3-PRIV-096; BH-ERS-3-PRIV-097; BH-ERS-3-PRIV-161; BH-ERS-3-PRIV-162; BH-ERS-3-PRIV-163; BH-ERS-3-PRIV-164; BH-ERS-3-PRIV-165; BH-ERS-3-PRIV-166; BH-ERS-3-012003; BH-ERS-3-012029; BH-ERS-3-012080; BH-ERS-3-012106; BH-ERS-3-012132; BH-ERS-3-012158; BH-ERS-3-013229; BH-ERS-3-013253; BH-ERS-3-027236; BH-ERS-3-027880; BH-ERS-3-028040; BH-ERS-3-028098; BH-ERS-3-028100; BH-ERS-3-028158; BH-ERS-3-028216; BH-ERS-3-028225; BH-ERS-3-028234; BH-ERS-3-028242; BH-ERS-3-028251; BH-ERS-3-028260; BH-ERS-3-028269; BH-ERS-3-028278; BH-ERS-3-028286; BH-ERS-3-028295; BH-ERS-3-028304; BH-ERS-3-028313; BH-ERS-3-028322; BH-ERS-3-028331; BH-ERS-3-028340; BH-ERS-3-028349; BH-ERS-3-028357; BH-ERS-3-028365; BH-ERS-3-028373; BH-ERS-3-028381; BH-ERS-3-028390; BH-ERS-3-028399; BH-ERS-3-028408; BH-ERS-3-028417
- **Crown**: BH-ERS-8-002234; BH-ERS-8-001678
- **Oaktree**: BH-ERS-5-004512; BH-ERS-5-004520; BH-ERS-5-004528; BH-ERS-5-004536; BH-ERS-5-004544; BH-ERS-5-PRIV-07
- **Ocher Rose**: BH-ERS-6-PRIV-23; BH-ERS-6-PRIV-24; BH-ERS-6-PRIV-25; BH-ERS-6-PRIV-26; BH-ERS-6-PRIV-27; BH-ERS-6-PRIV-33; BH-ERS-6-PRIV-34; BH-ERS-6-PRIV-35; BH-ERS-6-PRIV-36; BH-ERS-6-PRIV-37; BH-ERS-6-PRIV-38; BH-ERS-6-PRIV-39; BH-ERS-6-PRIV-40; BH-ERS-6-PRIV-41; BH-ERS-6-PRIV-42; BH-ERS-6-PRIV-43; BH-ERS-6-PRIV-147; BH-ERS-6-PRIV-148; BH-ERS-6-PRIV-149; BH-ERS-6-PRIV-150; BH-ERS-6-PRIV-151; BH-ERS-6-PRIV-152; BH-ERS-6-PRIV-153; BH-ERS-6-PRIV-154; BH-ERS-6-PRIV-155; BH-ERS-6-PRIV-156; BH-ERS-6-PRIV-157; BH-ERS-6-PRIV-158; BH-ERS-6-PRIV-159; BH-ERS-6-PRIV-160; BH-ERS-6-PRIV-161; BH-ERS-6-PRIV-162; BH-ERS-6-PRIV-163; BH-ERS-6-PRIV-164; BH-

**Proskauer**

Mr. Matthew Papez, Esq.
March 13, 2020
Page 10

    ERS-6-PRIV-165; BH-ERS-6-PRIV-166; BH-ERS-6-PRIV-167; BH-ERS-6-PRIV-168; BH-ERS-6-PRIV-169; BH-ERS-6-PRIV-170; BH-ERS-6-PRIV-171; BH-ERS-6-PRIV-172; BH-ERS-6-PRIV-173; BH-ERS-6-PRIV-174; BH-ERS-6-PRIV-175; BH-ERS-6-PRIV-176; BH-ERS-6-PRIV-177; BH-ERS-6-PRIV-178; BH-ERS-6-PRIV-179; BH-ERS-6-PRIV-180; BH-ERS-6-PRIV-181; BH-ERS-6-PRIV-182; BH-ERS-6-PRIV-183; BH-ERS-6-PRIV-184; BH-ERS-6-PRIV-185; BH-ERS-6-PRIV-186; BH-ERS-6-PRIV-187; BH-ERS-6-PRIV-188; BH-ERS-6-PRIV-189; BH-ERS-6-PRIV-190; BH-ERS-6-PRIV-191; BH-ERS-6-PRIV-192; BH-ERS-6-PRIV-193; BH-ERS-6-PRIV-194; BH-ERS-6-PRIV-195; BH-ERS-6-PRIV-196; BH-ERS-6-PRIV-197; BH-ERS-6-PRIV-198; BH-ERS-6-PRIV-199; BH-ERS-6-PRIV-200; BH-ERS-6-PRIV-201; BH-ERS-6-PRIV-202; BH-ERS-6-PRIV-203; BH-ERS-6-PRIV-204; BH-ERS-6-PRIV-205; BH-ERS-6-PRIV-206; BH-ERS-6-PRIV-207; BH-ERS-6-PRIV-208; BH-ERS-6-012786; BH-ERS-6-012789; BH-ERS-6-013191; BH-ERS-6-013193; BH-ERS-6-013195; BH-ERS-6-013197; BH-ERS-6-020701; BH-ERS-6-020702; BH-ERS-6-020703; BH-ERS-6-020704; BH-ERS-6-020705; BH-ERS-6-020706; BH-ERS-6-020707; BH-ERS-6-020708; BH-ERS-6-020709; BH-ERS-6-020710; BH-ERS-6-020711; BH-ERS-6-020712; BH-ERS-6-020713; BH-ERS-6-020714; BH-ERS-6-020715; BH-ERS-6-020716; BH-ERS-6-020717; BH-ERS-6-020718; BH-ERS-6-020719; BH-ERS-6-020720; BH-ERS-6-020721; BH-ERS-6-020722; BH-ERS-6-020723; BH-ERS-6-020724; BH-ERS-6-020725; BH-ERS-6-020726; BH-ERS-6-020727; BH-ERS-6-020728; BH-ERS-6-020729; BH-ERS-6-020730; BH-ERS-6-020731; BH-ERS-6-020732

**Proskauer**



Mr. Matthew Papez, Esq.
March 13, 2020
Page 11

## Exhibit 2

- **Mason Capital**: BH-ERS-3-PRIV-050; BH-ERS-3-PRIV-051; BH-ERS-3-PRIV-052; BH-ERS-3-PRIV-053; BH-ERS-3-PRIV-054; BH-ERS-3-PRIV-055; BH-ERS-3-PRIV-056; BH-ERS-3-PRIV-057; BH-ERS-3-PRIV-058; BH-ERS-3-PRIV-059; BH-ERS-3-PRIV-060; BH-ERS-3-PRIV-061; BH-ERS-3-PRIV-062; BH-ERS-3-PRIV-063; BH-ERS-3-PRIV-064; BH-ERS-3-PRIV-065; BH-ERS-3-PRIV-066; BH-ERS-3-PRIV-067; BH-ERS-3-PRIV-071; BH-ERS-3-028216; BH-ERS-3-028225; BH-ERS-3-028234; BH-ERS-3-028242; BH-ERS-3-028251; BH-ERS-3-028260; BH-ERS-3-028269; BH-ERS-3-028278; BH-ERS-3-028286; BH-ERS-3-028295; BH-ERS-3-028304; BH-ERS-3-028313; BH-ERS-3-028322; BH-ERS-3-028331; BH-ERS-3-028340; BH-ERS-3-028349; BH-ERS-3-028357; BH-ERS-3-028365; BH-ERS-3-028373; BH-ERS-3-028381; BH-ERS-3-028390; BH-ERS-3-028399; BH-ERS-3-028408; BH-ERS-3-028417
- **Oaktree**: BH-ERS-5-PRIV-07
- **Ocher Rose**: BH-ERS-6-PRIV-02; BH-ERS-6-PRIV-23; BH-ERS-6-PRIV-24; BH-ERS-6-PRIV-25; BH-ERS-6-PRIV-26; BH-ERS-6-PRIV-27; BH-ERS-6-PRIV-33; BH-ERS-6-PRIV-34; BH-ERS-6-PRIV-35; BH-ERS-6-PRIV-36; BH-ERS-6-PRIV-37; BH-ERS-6-PRIV-39; BH-ERS-6-PRIV-43; BH-ERS-6-PRIV-147; BH-ERS-6-PRIV-148; BH-ERS-6-PRIV-154; BH-ERS-6-PRIV-155; BH-ERS-6-PRIV-156; BH-ERS-6-PRIV-157; BH-ERS-6-PRIV-158; BH-ERS-6-PRIV-159; BH-ERS-6-PRIV-160; BH-ERS-6-PRIV-161; BH-ERS-6-PRIV-162; BH-ERS-6-PRIV-163; BH-ERS-6-PRIV-164; BH-ERS-6-PRIV-165; BH-ERS-6-PRIV-166; BH-ERS-6-PRIV-167; BH-ERS-6-PRIV-168; BH-ERS-6-PRIV-169; BH-ERS-6-PRIV-170; BH-ERS-6-PRIV-171; BH-ERS-6-PRIV-172; BH-ERS-6-PRIV-173; BH-ERS-6-PRIV-174; BH-ERS-6-PRIV-175; BH-ERS-6-PRIV-176; BH-ERS-6-PRIV-177; BH-ERS-6-PRIV-179; BH-ERS-6-PRIV-180; BH-ERS-6-PRIV-181; BH-ERS-6-PRIV-182; BH-ERS-6-PRIV-183; BH-ERS-6-PRIV-184; BH-ERS-6-PRIV-185; BH-ERS-6-PRIV-186; BH-ERS-6-PRIV-187; BH-ERS-6-PRIV-188; BH-ERS-6-PRIV-189; BH-ERS-6-PRIV-190; BH-ERS-6-PRIV-191; BH-ERS-6-PRIV-192; BH-ERS-6-PRIV-193; BH-ERS-6-PRIV-194; BH-ERS-6-PRIV-195; BH-ERS-6-PRIV-196; BH-ERS-6-PRIV-197; BH-ERS-6-PRIV-198; BH-ERS-6-PRIV-199; BH-ERS-6-PRIV-200; BH-ERS-6-PRIV-201; BH-ERS-6-PRIV-202; BH-ERS-6-PRIV-203; BH-ERS-6-PRIV-204; BH-ERS-6-PRIV-205; BH-ERS-6-PRIV-206; BH-ERS-6-PRIV-207; BH-ERS-6-PRIV-208; BH-ERS-6-013191; BH-ERS-6-013193; BH-ERS-6-013195; BH-ERS-6-013197; BH-ERS-6-020701; BH-ERS-6-020702; BH-ERS-6-020703; BH-ERS-6-020704; BH-ERS-6-020705; BH-ERS-6-020706; BH-ERS-6-020707; BH-ERS-6-020708; BH-ERS-6-020709; BH-ERS-6-020710; BH-ERS-6-020711; BH-ERS-6-020712; BH-ERS-6-020713; BH-ERS-6-020714; BH-ERS-6-020715; BH-ERS-6-020716; BH-ERS-6-020717; BH-ERS-6-020718; BH-ERS-6-020719; BH-ERS-6-020720; BH-ERS-6-020721; BH-ERS-6-020722; BH-ERS-6-020723; BH-ERS-6-020724; BH-ERS-6-020725; BH-ERS-6-020726; BH-ERS-6-020727; BH-ERS-6-020728; BH-ERS-6-020729; BH-ERS-6-020730; BH-ERS-6-020731; BH-ERS-6-020732.