# **Exhibit K**

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001.2113

TELEPHONE: +1.202.879.3939 • FACSIMILE: +1.202.626.1700

Direct Number: (202) 879-3881
mpapez@jonesday.com

March 24, 2020

<u>VIA E-MAIL</u>

William D. Dalsen
Proskauer Rose LLP
One International Place
Boston, MA 02110-2600

Re: Your March 13 Letter Regarding Privilege Claims

Dear Will:

I write in response to your March 13 letter regarding certain of the Bondholders' privilege claims in the *ultra vires* and lien scope proceedings relating to the ERS Bonds. Your letter contains numerous misstatements of fact and of law, which I address below. We are nevertheless available to meet and confer concerning these issues.

## I. The Bondholders Are Properly Allowing Discovery of Their Own Knowledge, as Distinct from the Contents of Privileged Communications

Your discussion of the Bondholders' representatives deposition testimony concerning when they first learned of the contention that the ERS Bonds are invalid is misleading. Of the six Bondholders whose representatives have been deposed thus far, five gave clear, direct answers as to when they first learned of the contention that the ERS Bonds were invalid:

- Ocher Rose/Pat Dowd: "Q. Okay. When did Ocher Rose first become aware of an argument that the ERS bonds were issued without authority? A. It's not until the argument was raised. You would have to remind me when that first was by -- I don't recall whether it was in the Title III case, but whenever that was first raised in litigation against us would have been the time." Dowd Dep. Tr. 78:5-13.

- Justin Boyer/Redwood: "Q. When did you first become aware of anyone having made the argument that the ERS bonds are invalid? A. It was after we purchased them. I think it was the FOMB that filed something. And on the AAFAF [filing in November 2017], I actually got -- was made aware of that yesterday." Boyer Dep. Tr. 46:21-47:3.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

William D. Dalsen
March 24, 2020
Page 2

- Jordan Mikes/Oaktree: "[P]rior to making the investment decisions, there was absolutely no discussion of the validity of the bonds, the Enabling Act or anything like that, on the basis that the bonds had been trading for a very long period of time and it's inconsistent with our approach to investing, to invest in that scenario." Mikes Dep. Tr. 81:9-17.

- Luke Corning/Pentwater: "Q. . . . [W]hen did you first become aware that there was a challenge to the validity of the ERS bonds? A. I first heard about it, I suppose, more superficially, at the -- some point when the UCC filed -- I think it was the UCC -- filed a claim." Corning Dep. Tr. 52:2-17.

- James Bolin/Andalusian: "Q. Do you recall when you first became aware of the ultra vires argument? MR. PAPEZ: And I just caution the witness he's asking for a date. You're free to provide the date. A. Vague recollection, sometime in 2018." Bolin Dep. Tr. 84:22-85:3.

As to these five Bondholders, you have your answers about when they first learned of the *ultra vires* contention. The only suggestion that those answers might be withholding privileged information came from the Committees and Government parties' counsel—nothing the witnesses or we said limited their sworn response in that way or any other. There is no need or basis for any further examination.

That leaves Shanshan Cao of SV Credit. Your letter quotes extensively from Ms. Cao's deposition transcript. While we do not agree with your assertions about Ms. Cao's testimony and the objections to it, we are willing to confer with you about a reasonable means of clarifying when SV Credit first learned or heard of the argument that the ERS Bonds were invalid, likely by means of a short, sworn declaration.

**II.    The Existence of a Dispute Concerning Notice Under UCC § 8-202 Does Not Waive Privilege Over the Contents of Attorney-Client Communications**

Your further contention—that the existence of a dispute over notice under UCC § 8-202 somehow waives privilege so that you become entitled to examine the substance of any legal advice the Bondholders may have received concerning the validity of the ERS Bonds—is entirely baseless. The law in the First Circuit is clear that for there to be an at-issue waiver of privileged communications, "the privileged information itself must have 'independent relevance to the claim or defense *because of its privileged status*.'" *Banco Do Brasil, S.A. v. 275 Washington St. Corp.*, No. CIV.A. 09-11343-NMG, 2011 WL 3208027, at *3 (D. Mass. July 27, 2011) (Dein, M.J.) (emphasis added). That requires "something more than that the evidence of what was communicated between the attorney and client is relevant to the subject matter of the

JONES DAY

William D. Dalsen
March 24, 2020
Page 3

action." *Id.* Thus, in the analogous context of a "good faith" defense, courts have repeatedly held that a defendant pleading that it acted in good faith does not thereby waive privilege over its communications with its counsel. *See, e.g.*, *Bacchi v. Mass. Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 275–278 (D. Mass. 2015); *Banco Do Brasil*, 2011 WL 3208027, at *3-4. And courts have specifically rejected the argument that a defendant's assertion of a lack-of-notice defense entitles a plaintiff to see any legal advice the defendant may have received about the issue in question. *See United States v. Ohio Edison Co.*, No. C2-99-1181, 2002 WL 1585597, at *5-6 (S.D. Ohio July 11, 2002). That is because "the test for invading attorney-client privilege communications is not simply relevance but affirmative waiver," so a party waives attorney-client privilege by asserting a defense only if privileged communications "will be relied upon in advancing th[at] defense[]," and not merely when the content of those communications might be relevant to the defense. *Id.* at *6.

The Bondholders are not relying on any advice or information they received from counsel as a basis for their argument that they acquired the ERS Bonds "without notice of the particular defect" that the Committees and Government Parties now say rendered the bonds invalid. UCC § 8-202(b). Rather, they are relying on their own lack of notice, from any source. Thus, the content of privileged communications does not have "independent relevance to the claim or defense *because of its privileged status*." *Banco do Brasil*, 2011 WL 3208027, at *3 (emphasis added). The issues of notice under UCC § 8-202(b) therefore do not constitute a waiver of privilege under the governing law. Your contentions about waiver of privilege are therefore misplaced.

Because there has been no wavier of privilege, your demand for production of the documents in Exhibit 1 to your letter is also misplaced. But in any event, none of the withheld portions of the documents listed in your Exhibit 1 address the contention or possibility that the ERS Bonds are invalid or *ultra vires*.[1] The 2015 memorandum to which you refer, for example, discusses the legal recourse available to the Bondholders if ERS breached its contractual obligations or the Commonwealth attempted to impair the bonds. And the other documents listed in Exhibit 1 similarly address issues other than the validity or invalidity of the bonds, such as the scope of the Bondholders' liens.

### III. The Bondholders' Privilege Logs Are Complete and Sufficient

Your letter also raises issues with the Bondholders' privilege logs. As an initial matter, your questions about a handful of entries on the Bondholders' logs stand in stark contrast to

---

[1] The redacted portion of BH-ERS-3-027880 briefly summarizes (in one sentence) the attached, unredacted filing (the UCC's 2019 claim objection, which addresses *ultra vires* issues), but the redacted portion contains no substantive discussion of the *ultra vires* issue.

JONES DAY

William D. Dalsen
March 24, 2020
Page 4

ERS's complete failure to provide any privilege log whatsoever in these proceedings. Please advise when ERS will provide its privilege log.

Regardless, the issues you raise with the Bondholders' logs have no merit. In your first two bullets, you complain about Ocher Rose's withholding of documents that contain "confidential internal ERS talking points drafted in consultation with counsel," (your first bullet) and about documents "exchanged with [Ocher Rose's] investor relations team" (your second bullet). These are, in fact, different versions of the same document. They contain information about pending litigation that was developed in consultation with counsel and that reflects legal advice provided by Ocher Rose's in-house and outside counsel, including information that was provided as background for the investor relations team but that they were instructed not to share publicly. These documents were properly withheld as privileged. They are also largely irrelevant—they are responsive only because of a few words describing the collateral securing the bonds—and they contain no responsive substantive information that was not produced in other forms.

In your third bullet, you complain about descriptions in Mason Capital and Ocher Rose's logs of certain documents as containing "legal advice from counsel on ERS Bonds." The Ocher Rose documents for which the privilege log entries contain that description alone are all different versions of the same large spreadsheet, each of which contains a privilege redaction of only a single cell. That cell contains a very brief description of legal advice from counsel on the scope of the pledged property supporting the ERS Bonds. The Mason Capital documents for which the privilege log entries contain that description alone are also multiple versions of a single document. The redacted portions of that document describe legal advice relating to the then-pending First Circuit appeal on the perfection of the Bondholders' liens, and other potential legal claims that the Bondholders could assert.

In your fourth bullet, you complain about Mason Capital documents "concerning confidential mediation notes prepared for discussions with counsel." These, too, are all versions of a single document. It is almost entirely irrelevant and non-responsive, as it concerns a mediation session that addressed only HTA bonds, and not ERS Bonds. The only potentially responsive portions are one or two references in the notes to the author's questions regarding the effects of certain arguments on ERS Bonds, which were made for the purpose of consulting with counsel on those issues, and which reflect legal advice that was then sought. Those portions are properly withheld as privileged, and without them, the document is entirely nonresponsive and was properly withheld.

I trust that this resolves your concerns, but we are available to meet and confer over any remaining issues you may have.

JONES DAY

William D. Dalsen
March 24, 2020
Page 5

                                  Very truly yours,

                                  */s/ Matthew E. Papez*
                                  Matthew E. Papez

cc:     All Counsel of Record