# **Exhibit L**

**Proskauer** Proskauer Rose LLP  One International Place  Boston, MA 02110-2600

April 28, 2020

**Via Email**

Matthew Papez
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
mpapez@jonesday.com

William D. Dalsen
Attorney at Law
d 617.526.9429
f 617.526.9899
wdalsen@proskauer.com
www.proskauer.com

Re: *In Re The Employees Retirement System of the Government of the Commonwealth of Puerto Rico (ERS) – Bondholders' Improper Assertion of Attorney-Client Privilege and Inadequate Privilege Logs*

Dear Matt:

I write on behalf of the Committees and Government Parties[1] in response to your March 24, 2020 Letter (the "Letter").

Your Letter does not alleviate (and largely does not address) our concerns with the Bondholders' improper assertion of attorney-client privilege to block inquiry into when the Bondholders knew—from any source—about the *ultra vires* nature of the ERS Bond issuance and the potential illegality, invalidity, and unenforceability of the ERS Bonds. Likewise, your Letter does not fully address our concerns with the Bondholders' deficient privilege logs and does not commit to supplementing those logs. We request a meet-and-confer on these issues.

*First*, your letter's selective quotation from the Bondholders' testimony omits and ignores our direct questions as to whether the Bondholders were withholding factual information about when they were put on notice of the *ultra-vires* issue on the basis of Jones Day's cautions and instructions. *See, e.g.*, Dowd Tr. 79:4–80:14; Mikes Tr. 215:7–25; Bolin Tr. 85:7–86:13. Claiming that "nothing the witnesses or we said limited their sworn response[s]" (Letter at 2) without reference to your cautions and instructions not to answer is unproductive.

Counsel's objections and the witnesses' refusals to answer strongly suggest that your clients had notice of the *ultra vires* issue earlier than their testimony reflects. If the Bondholders

---

[1] The Committees and Government Parties are: the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retiree Committee" and, together with the Creditors' Committee, the "Committees"), the Financial Oversight and Management Board for Puerto Rico (the "FOMB"), the Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico (the "SCC"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" and, together with the FOMB and the SCC, the "Government Parties").

**Proskauer**

Mr. Matthew Papez, Esq.
April 28, 2020
Page 2

could say they had no notice of the *ultra vires* issue earlier than their testimony indicates, your March 24 letter presumably would have clarified that—but it doesn't. Instead, your Letter omits all references to your cautions and instructions not to answer questions on that specific issue.

The Bondholders' witnesses must state when they first learned of the *ultra vires* issue regardless of the source. If the Bondholders learned of the *ultra vires* issue from counsel—including in connection with receiving advice—prior to the time they testified first hearing of it, they must identify when they first heard of it because it goes directly to the UCC § 8-202(b) notice issue they affirmatively raised. *See* 19 L.P.R.A. §§ 451(25); 1752(b).

*Second*, the Bondholders have failed to explain how the testimony we seek—namely, when they first heard of the *ultra vires* issue from any source—could be privileged. The fact that counsel appears to have put the Bondholders on notice of the *ultra vires* issue concerns at best the subject-matter of a communication, which is not privileged. We have not sought the substance of those communications (e.g., the advice as to whether the bonds actually were issued *ultra vires* and are therefore void), and the Bondholders would be required to provide the subject-matter and date of the communications at issue in a privilege log in any event.

*Third*, the Bondholders cannot evade this issue by defining it in a backwards way. The issue is not whether the Bondholders are "relying on any advice or information they received from counsel as a basis for the argument that they acquired the ERS Bonds 'without notice of the particular defect,'" Letter at 3, but rather whether the Bondholders had notice of this issue at an earlier time than their testimony reflects regardless of the source.

*Fourth*, even assuming the evidence we seek could have been privileged, the cases cited in your March 24 letter do not support the Bondholders' assertion of privilege here.

The *Banco do Brasil* case is inapposite. Your letter cites *Banco do Brasil* but actually quotes without attribution Magistrate Judge Collings's decision in *Sorenson v. H&R Block, Inc.* There, the movant seeking disclosure "rel[ied] almost exclusively on *Greater Newburyport*," a case in which a plaintiff alleged violation of the Sixth Amendment due to a government informant's attendance during a privileged conversation. 197 F.R.D. 206, 207 (D. Mass. 2000). Magistrate Judge Collings found the facts presented to him distinguishable because the communications did not, as in *Greater Newburyport*, have "independent relevance to the claim or defense because of its privileged status" (viz. as in *Greater Newburyport*, for damages arising from violation of the Sixth Amendment).

Here, we do not rely exclusively on *Greater Newburyport*, and do not argue the testimony we seek is independently relevant to a separate issue because of its privileged status as was the case there and in *Sorenson*. Instead, the testimony we seek is directly relevant because (1) the Bondholders injected their alleged lack of notice from any source into this case, and (2) their refusal to testify about when they received notice regardless of source prevents us from taking discovery concerning their alleged lack of notice.

**Proskauer**

Mr. Matthew Papez, Esq.
April 28, 2020
Page 3

In any event, *Banco do Brasil* is distinguishable on its facts. The defendant landlord in *Banco do Brasil* sought discovery of attorney-client privileged communications between the plaintiff tenant and its attorney to prove that the plaintiff failed to use good-faith efforts to secure certain regulatory approvals as required by a contract. *Banco Do Brasil, S.A. v. 275 Washington St. Corp.*, No. CIV.A. 09-11343-NMG, 2011 WL 3208027, at *3 (D. Mass. July 27, 2011). The court denied the discovery, recognizing that the defendant had the ability, by other means, "to explore the steps the [plaintiff] and its attorney took" to obtain the requisite approvals. *Id.* Here, by contrast, the Committees and Government Parties have no means of determining the date on which the Bondholders first learned of the *ultra vires* issue (from any source) unless the Bondholders reveal whether and when they learned of the issue from counsel.

The *Bacchi* case supports the Committees and Government Parties on this point as it makes clear waiver has occurred where a party "relies on certain facts that can only be tested or rebutted if the adversary is given access to the privileged material," which, if the topics of the Bondholders conversations with counsel are somehow "privileged" (which they are not), is the situation presented here. *See Bacchi v. Mass. Mut. Life Ins. Co.*, 110 F. Supp. 3d 270, 276 (D. Mass. 2015). The Bondholders cannot "pick and choose," *id.* at 277, the sources of information from which they received notice of the *ultra vires* issue after injecting notice into this case—and they cannot do so silently by refusing even to state whether they have withheld information as privileged.

As for *Ohio Edison* (an unreported, out-of-circuit case from the Southern District of Ohio), it stands for the unremarkable proposition that relevance alone does not justify invasion of the attorney-client privilege without affirmative waiver. *United States v. Ohio Edison Co.*, No. C2-99-1181, 2002 WL 1585597, at *5 (S.D. Ohio July 11, 2002). Here, the Bondholders affirmatively waived whatever privilege might have existed by injecting "notice" under UCC § 8-202(b) into these proceedings.

*Fifth*, aside from the improper privilege assertions at deposition, your Letter does not fully address our concerns with the Bondholders' privilege logs. For example, the Letter states that certain withheld documents from Mason Capital and Ocher Rose pertain to "other potential legal claims that the Bondholders could assert," but you do not state whether those "claims" include "notice" arguments under UCC § 8-202(b). Your letter also says certain withheld documents from Mason Capital contain statements "regarding the effects of certain arguments on ERS Bonds," Letter at 4, but you do not state whether those documents discuss the *ultra vires* issue.

We are entitled to revised privilege logs that provide these more detailed supplemental descriptions where they are applicable, and that indicate clearly whether the withheld or redacted documents on the logs refer or relate to the *ultra vires* issue. Please advise when the Bondholders will provide revised supplemental logs.

\* \* \* \* \*

**Proskauer**

**Proskauer**

Mr. Matthew Papez, Esq.
April 28, 2020
Page 4

  Please advise of your availability for a meet-and-confer this coming **Thursday, April 30, 2020** at or after 2:30 p.m. Eastern Time to discuss these issues and a briefing schedule for a motion to compel on these issues if they cannot be resolved.

  The Committees and Government Parties reserve all rights.

        Very truly yours,

        William D. Dalsen

Copies:

Margaret A. Dale, Esq. (via email) (mdale@proskauer.com)
Jennifer Roche, Esq. (via email) (jroche@proskauer.com)
Cathy Steege, Esq. (via email) (csteege@jenner.com)
Madhu Pocha, Esq. (via email) (mpocha@omm.com)
Tristan Axelrod, Esq. (via email) (taxelrod@brownrudnick.com)
Danielle D'Aquila, Esq. (via email) (dd'aquila@brownrudnick.com)
Nicholas Bassett, Esq. (via email) (nicholasbassett@paulhastings.com)

**Proskauer**