**<u>EXHIBIT B</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[4] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY ("HTA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

**SUPPLEMENTAL REPLY DECLARATION OF WILLIAM J. NATBONY IN SUPPORT
OF REPLY IN SUPPORT OF MOTION OF ASSURED GUARANTY CORP., ASSURED
GUARANTY MUNICIPAL CORP., AMBAC ASSURANCE CORPORATION,
NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, AND FINANCIAL
GUARANTY INSURANCE COMPANY FOR RELIEF FROM THE AUTOMATIC
STAY, OR, IN THE ALTERNATIVE, ADEQUATE PROTECTION (ECF NO. 12294)**

---

[4] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

I, WILLIAM J. NATBONY, declare as follows:

1.      I am Counsel at the law firm of Cadwalader, Wickersham & Taft LLP, attorneys for Assured Guaranty Corp. and  Assured Guaranty Municipal Corp., in the above-captioned cases.

2.      I respectfully submit this supplemental reply declaration in connection with the *Reply in Support of Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection*, dated April 30, 2020 (the "HTA Reply") on behalf of the Movants. (17-3283, ECF 12294; 17-3567, ECF 777).

3.      Submitted herewith is a true and correct copy of the Puerto Rico Legislature's Act No. 5 of Oct. 8, 1987, referred to in the HTA Reply as Exhibit 6.

4.      I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge, my review of the public record and based upon information provided to me by the parties to the Motion for which the HTA Reply is submitted.

*[Remainder of Page Intentionally Blank]*

Dated: May __, 2020
   New York, New York

       By: */s/ William J. Natbony*      
        William J. Natbony, Esq.*

       CADWALADER, WICKERSHAM & TAFT
       LLP
       200 Liberty Street
       New York, New York 10281
       Telephone:  (212) 504-6000
       Facsimile:  (212) 504-6666
       Email:  bill.natbony@cwt.com

       * Admitted *pro hac vice*

       *Attorneys for Assured Guaranty Corp. and*
        *Assured Guaranty Municipal Corp.*

**SUPPLMENTAL NATBONY REPLY DECLARATION**
**<u>AMENDED EXHIBIT 6</u>**



DATE DOWNLOADED: Sat Apr  4 16:14:45 2020
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 20th ed.
1987 3 .

ALWD 6th ed.
1987 3 .

Chicago 7th ed.
"," Puerto Rico - 10th Legislature, 3rd Regular & 9th-11th Special Sessions : 3-1015

OSCOLA 4th ed.
" 1987 3

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from  uncorrected OCR text.

Oct. 8                    1987 EXCISE ACT                    Act No. 5

## 1987 Excise Act

(H.B. 1267)
(Conference)

[No. 5]

*[Approved October 8, 1987]*

## AN ACT

To provide revenues for the Commonwealth of Puerto Rico through the imposition of excise taxes on the introduction, use, consumption, sale, acquisition and conveyance in Puerto Rico of certain articles and through certain taxes and license fees on specific public shows, transactions, businesses, occupations and other activities; to allow certain exemptions, establish their scope and provide for the reimbursement procedures for the effectiveness of such exemptions; to empower the Secretary of the Treasury to impose administrative fines, adopt regulations and establish the necessary measures for the application of this act; to establish penalties; to repeal Act No. 2 of January 20, 1956 as amended, known as the "Excise Act of Puerto Rico", and to appropriate funds.

*Be it enacted by the Legislature of Puerto Rico:*

## CHAPTER I

### TITLE, DEFINITIONS AND GENERAL PROVISIONS

Section 1.001.—Title of the Act.—

This act shall be known as the "Excise Act of the Commonwealth of Puerto Rico of 1987".

Section 1.002.—General Definitions.—

For the purposes of this act, the following terms shall have the meaning stated hereinbelow:

(1) "Foodstuff" shall mean and include all solid and liquid substances ingested by man or animals for their sustenance and nutrition. For the purposes of this act, the term "foodstuff" excludes sugar, candies, dietetic candies and soft drinks.

(2) "Article" shall mean any object, device, good or thing for use and consumption, regardless of its form, material or essence and regardless of its name.

857

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

(3) "Cost in Puerto Rico" shall mean and shall be determined in each case, as established hereinafter:

(a) *Importers.*—The cost in Puerto Rico shall be the sum of all costs, excluding freight charges and insurance, that make possible the arrival of an article to the ports, regardless of its name or origin, including all types of royalties and commissions, plus ten percent (10%) of the sum of the related costs in this subsection for freight and insurance. Notwithstanding the above, in the case of automobiles, the cost in Puerto Rico shall be the f.o.b. factory price quoted by the manufacturer of said automobiles to its distributors in Puerto Rico, plus ten percent (10%) over the f.o.b. factory price for freight and insurance. In no case shall the cost in Puerto Rico be reduced by discounts for prompt payment or for discounts granted for volume of purchases, for sales volume or for considerations of a speculative nature, but it may be reduced in a corresponding measure for commercial discounts granted to make the prices stipulated in lists, catalogues, advertisements or other publications comparable to the prevailing market prices, or to convert the consumer price figures to wholesaler or retailer prices, provided the Secretary determines that said reduction is duly justified under the circumstances to determine the cost in Puerto Rico. This definition shall be interpreted by the Secretary of the Treasury in a manner that is analogous to the definition existing in Act No. 2 of January 20, 1956, as amended,[44] repealed by this act.

(b) *Manufacturers.*—The cost in Puerto Rico shall be sixty percent (60%) of the sales price. This cost in Puerto Rico shall not be reduced by any tax paid. The manufacturers sale price shall not be reduced by discounts for prompt payments or by discounts granted for volume of sales or considerations of a speculative nature.

(c) *Repairs.*—The cost in Puerto Rico of an article sent abroad for repairs shall be the amount of the repair plus ten percent (10%) of the cost of the repair for freight and insurance. If no price is paid, the cost in Puerto Rico shall be that determined by the Secretary pursuant to this act and the applicable regulatory standards.

(d) *Leased articles.*—The cost in Puerto Rico of articles leased, rather than sold by a supplier, shall be fifty percent (50%) of all types of bona fide rentals which under the terms of the lease

---

[44] 13 L.P.R.A. §§ 4001–4013.

contract would accrue during five (5) successive years of the lease. If the lease rates have not been definitely agreed upon at the time prescribed for payment of the tax, the taxpayer shall make a provisional payment in accordance with Section 6.014 of Chapter VI of this act.

When the leased article is returned within five (5) years, counting from the date of introduction from abroad, the taxpayer shall be entitled to a reimbursement of twenty percent (20%) of the tax paid for each full year that remains of the five- (5-) year period.

For the purposes of the restriction that an article shall be taxed only once, established in Section 2.001 of Chapter II of this act, any succeeding lease, or any transfer thereof in Puerto Rico after a lease, shall be treated as a new taxable event respecting said article. For the purposes of this subsection and any other applicable provision herein, the term "lease" shall mean the acquisition of the use and enjoyment of an article, through the payment of a rental fee for a five- (5-) year period, regardless of whether the lease period is less or more than the five- (5-) year period. The Secretary may revise the conditions of the lease contract in order to make the necessary adjustments to the tax base.

(e) *Articles acquired from tax exempted persons.*—The cost in Puerto Rico of articles previously exempted from the payment of taxes shall be the price paid by the purchaser for the purpose of any subsequent transfer. When no price is paid by the acquirer, or when the price paid differs considerably from the sales price for similar articles, the Secretary shall determine the cost in Puerto Rico according to the criteria stated in paragraph 14 of this section.

In the cases that the transfer is made as a lease, the cost in Puerto Rico shall be determined in accordance with the terms of subsection (d) of this section.

(4) "Candy" shall mean chewing gum, mixtures and products derived from cocoa, and any bonbon, confection or article commonly or commercially known as "candy", including dietetic candy.

(5) "Manufacturer" shall mean any person engaged in the manufacture of any article, including assemblers or finishers of articles, and persons who further process partially processed articles.

Any person who begins or undertakes the processing or manufacturing of any article shall notify the Secretary thereof and post a bond in favor of the latter in the manner provided by regulations.

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

(6) "Date of introduction" shall mean the day the articles are unloaded at the port. However, when due to applicable customs, military or sanitary regulations or for strikes at the ports or other labor conflicts, or when for any act of God the taxpayer or the person liable for the payment of excise taxes is prevented from taking possession of the articles introduced from abroad within the term of thirty (30) days counting from its arrival in Puerto Rico, the date of introduction shall be deemed as the date on which the customs office or the corresponding authority allows the taxpayer or the person liable for the payment of excise taxes to take possession of the articles introduced, or the date on which the Secretary of Labor and Human Resources officially announces the termination of the strike, or that on which, in the judgment of the Secretary, the circumstances of *force majeure* have ceased.

In the case of the local sale of articles previously introduced into the Foreign Trade Zones in Puerto Rico, the date of introduction shall be the date on which the merchandise is removed from the premises of said zone, which event shall be verified through the presentation of the document known as the "Declaration of Entry for Consumption" of the Customs Service of the United States of America.

(7) "Introduction" shall mean the arrival of articles to the ports of Puerto Rico from abroad that are effectively unloaded and the arrival of articles introduced by passengers or crews of ships or airplanes.

(8) "Introducer" shall mean any person who receives or acquires an article from abroad, either as a consignee or through a bank, shipping agent or any other middleman.

(9) "Medicines" shall mean and include expendable substances and materials used to diagnose, cure, relieve, treat and prevent diseases in human beings and animals.

(10) "Municipality" shall mean all the municipal governments of the Commonwealth of Puerto Rico.

(11) "Parts and accessories" shall mean any articles of a solid nature which, according to normal and predominant use, have been made to be united to, attached physically to, be part of the constitution of, or to be used in a subordinate relation to any article taxed by this act. "Normal and predominant use" shall mean the use given to an article by sixty percent (60%) or more of the consumers or users, as determined by the Secretary. The term "parts and accessories" shall include:

860

Oct. 8                    1987 EXCISE ACT                    Act No. 5

(a) Any article which, even though it could have an independent use, has been made in accordance with the normal and predominant use to be part of the constitution, operation or decoration of the articles taxed.

(b) Any article which, even though propelled or otherwise aided by the main apparatus or article taxed, is also reciprocally subordinate to it to make it operate.

For the purposes of this act, the following articles are excluded from the term "parts and accessories":

(i) Articles which merely brace or support the main article or provide a seat for the operator or player, unless built into the main article.

(ii) Articles used exclusively in the cleaning, maintenance, lubrication, adjustment or repair of the main article, without being built into that article, but not including tool kits included with a vehicle or machine.

(iii) Articles which, by a simple connection, are pulled by self-propelled vehicles to a place where they shall render a mainly agricultural, sanitary or similar function.

(iv) Articles which, without being built into the main article, are used exclusively to eliminate or reduce noise or vibrations in the main article, but not including mufflers for internal combustion motors.

(12) "Person" shall mean any natural or juridical person.

(13) "Tax-exempt person" shall mean any person who, by reason of his status and in accordance with the requirements and provisions of this act, is legally qualified to acquire taxable articles without the need of paying the taxes established in this act.

(14) "Taxable price in Puerto Rico" shall mean the cost in Puerto Rico plus twenty percent (20%) of said cost. Nevertheless, the Secretary may determine the taxable price in Puerto Rico according to the method that reflects the value or price of the articles taxed when, in his judgment, the documents needed to establish the cost in Puerto Rico are not authentic or are insufficient or inadequate for such purpose, or when, on the basis of the documents submitted by the taxpayer to establish the cost in Puerto Rico, it differs considerably from the cost in Puerto Rico of similar articles, or when no rule for determining the cost in Puerto Rico of the articles is prescribed by this act.

(15) "Retail sales price" shall mean the unit price of a jewelry article when sold directly to the consumer.

861

Act No. 5      11th SPECIAL SESSION—10th ASSEMBLY      Oct. 8

(16) "Port" shall mean any pier, dock, wharf, terminal, air or maritime zone or port of entry of persons or articles from abroad, including all warehouses, businesses, stores and structures, facilities and the premises thereof.

(17) "Secretary" shall mean the Secretary of the Treasury.

Section 1.003.—Scope of the Term "Include".—

For the effects of the terms and phrases defined in this act, the words "includes" and "including" shall not be interpreted in the sense of excluding, omitting or eliminating other matters within the meaning of the defined term. Likewise, the specified objects shall only be taken as an illustration or characterization but not as including the entire universe of the objects subject to the provisions of this act.

Section 1.004.—Articles Classified Under More than One Section of this Act.—

Except as provided in this section, when dealing with any article that, due to its nature, could be classified under more than one section of this act, only one excise tax shall be imposed on said article. If the rates of the excise taxes differ as to their amounts, the article shall be subject to the excise tax determined by that section for which the higher tax is levied. The Secretary, however, may classify the article according to its customary use, when said classification is feasible.

Section 1.005.—Limitation to Fix Taxes.—

As of the effective date of this act, no municipality or administrative division of the Government of the Commonwealth of Puerto Rico shall levy or collect any local excise tax on any article subject to the payment of taxes under the provisions of this act. Excluded from this provision is the tax on volume of business authorized by Act No. 113 of July 10, 1974, as amended,[45] known as the "Municipal License Tax Act" whose imposition by the municipalities is hereby expressly authorized, thus including in the mercantile operations on articles taxed by this act in the volume of business. Nevertheless, when the application of the Municipal License Tax Act[46] together with this act, produces an untenable tax situation because it infringes on any constitutional prohibition, if said situation becomes constitutional through the imposition and collection of only one tax, the Commonwealth tax shall prevail.

_____

[45] 21 L.P.R.A. § 651 et seq.
[46] Id.

## CHAPTER II

## TAXES ON ARTICLES

Section 2.001.—General Tax Provisions on Articles.—

An excise tax shall be levied, collected and paid, at the rates prescribed in Sections 2.002 through 2.010 of this chapter, on sugar, cement manufactured locally or introduced in Puerto Rico, cigarettes, gasoline, aviation fuel, gas oil, diesel oil, crude oil, unfinished oils and end products derived from oil, as well as on any other hydrocarbon mixture, motor vehicles and on any other article of use and consumption introduced from abroad or manufactured locally. The excise tax fixed shall govern if the article has been introduced, sold, consumed, used, transferred or acquired in Puerto Rico and, except as provided in subsection (3)(d) of Section 1.002 of Chapter I of this act, shall be paid only once, in the time and manner specified in Chapter III of this act.

Section 2.002.—Sugar.—

A seven- (7-) cent excise tax shall be levied, collected and paid for each pound or fraction thereof on all kinds of sugar, regardless of its state and form, and on substitutes thereof. For the purposes of this act, the term "sugar" shall mean and include sugarcane, beet, corn, sorghum or any other form of natural or artificial saccharose.

Section 2.003.—Cement Manufactured Locally or Introduced into Puerto Rico by Dealers.—

A six- (6-) cent excise tax shall be levied, collected and paid for each hundredweight or fraction thereof of all hydraulic cement, or substitute thereof, manufactured locally or introduced into Puerto Rico by dealers or local manufacturers who hold the license required in Section 5.001 of Chapter V of this act. In the case of cement imported for their own consumption by persons who are not dealers, the excise tax to be paid shall be equal to five percent (5%) on the taxable price in Puerto Rico of the hydraulic cement or substitute thereof that is introduced from abroad.

Section 2.004.—Cigarettes.—

An excise tax of three dollars and fifteen cents ($3.15) shall be levied, collected and paid on each one hundred (100) cigarettes or fraction thereof. For the purposes of this act, the term "cigarette" shall mean any roll of shredded natural or synthetic tobacco, or any shredded natural or synthetic vegetable material, or any mixture

Act No. 5      11th SPECIAL SESSION—10th ASSEMBLY      Oct. 8

thereof, or any other shredded solid substance or material used to manufacture cigarettes, provided the wrapping of the roll of shredded material is not natural tobacco.

The cigarettes that are manufactured, introduced, sold, conveyed, used or consumed in Puerto Rico shall have a label affixed upon the boxes, packages or packs in which they are packed with the information and characteristics determined by regulations. Each cigarette box, package or pack shall have the word "taxable" or "tributable" stamped clearly and legibly in a visible place. These provisions shall not be applicable to exempted cigarettes.

Section 2.005.—Fuels.—

An excise tax as indicated hereinbelow shall be levied, collected and paid on each gallon or fraction thereof on the following fuels:

    (1) Gasoline—.............................................. 16¢
    (2) Aviation Fuel—...................................... 3¢
    (3) Gas Oil or Diesel Oil—......................... 8¢

For the purposes of this act, the term "gasoline" shall include all types of gasoline, all combustible products and every mixture of gasoline with any combustible product for use or consumption in the propelling of airships. Liquid gases such as propane, butane, ethane, ethylene, propylene, butylene and any mixture thereof shall be excluded from the term gasoline for the purposes of this section.

In accordance with Act Number 82, of June 26, 1959, as amended,[47] the levying and collection of excise taxes on gasoline fixed in subsection (2) of this section is hereby suspended in the case of aviation gasoline and any combustible product for use and consumption in propelling air transportation vehicles, destined to be consumed in air trips between Puerto Rico and other places or in air trips within the territorial limits of Puerto Rico, provided, that, in lieu of the said tax fixed in this section, the Ports Authority shall impose a duty on said products of two (2) cents per gallon or fraction thereof and collects it from the suppliers operating in the airports of Puerto Rico.

Section 2.006.—Crude Oil, Unfinished Oils and End Products Derived from Oil and other Hydrocarbons Mixture.—

In addition to the excise taxes fixed in Section 2.005 of this chapter, a tax shall be levied, collected and paid for the use in Puerto Rico of crude oil, unfinished oils or end products derived

───
[47] 13 L.P.R.A. § 4030 nt.

864

**Oct. 8**                    **1987 EXCISE ACT**                    **Act No. 5**

from oil and any other hydrocarbon mixture at the rates fixed in the following table:

### Index Price per Barrel

|  | Up to $14.00 | $14.01 to $18.00 | $18.01 to $22.00 | $22.01 to $24.00 | $24.01 to $26.00 | More than $26.01 |
|---|---|---|---|---|---|---|
| Excise tax per Barrel or fraction | $ 6.00 | $ 5.00 | $ 4.00 | $ 3.00 | $ 2.00 | $   0.00 |

For the purposes of this section, the term "use" shall include the introduction, use, consumption, sale, acquisition and transfer in Puerto Rico of crude oil or oil products taxed in this section.

(a) *Determination of index price.*—For the purposes of this section, "index price" shall mean the monthly arithmetical average of the price of crude oil prevailing in the first of the two (2) months preceding the month for which the price of the product taxed in Puerto Rico is fixed. The Secretary shall fix the index price using as basis the price quoted in two (2) of the following markets, among others: the New York Mercantile Exchange, West Texas Intermediate, Saudi Light and North Sea Brent. The Secretary shall establish the mechanisms to calculate the price index through regulations. In the event that there are no quotations in one (1) or two (2) of these markets, the Secretary shall fix the price taking any other reliable market as a basis.

The index price shall be determined monthly by the Secretary in accordance with the procedure established in this subsection and shall advise the taxpayers of the applicable excise tax one week before the first day of each month.

The exemptions granted in Chapter III of this act shall not be applicable to this section.

(b) *Exclusions from Tax.*—The tax levied in this section shall not be applicable to:

(1) Crude oil, unfinished oils, end products derived from oil or any other hydrocarbon mixture used by the Electric Power Authority to generate electricity.

(2) Crude oil, unfinished oils, end products derived from oil or any other hydrocarbon mixture exported from Puerto Rico.

(3) Crude oil, unfinished oils, end products derived from oil or any other hydrocarbon mixture imported or sold locally to the agencies and instrumentalities of the federal government.

(4) Kerosene.

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

(5) Crude oil, unfinished oils, end products derived from oil or any other hydrocarbon mixture used by local refineries or petrochemical companies in the oil refining process whether for a shrinkage in the raw material used in the production (plant loss) or in refinery fuel expenses. In the case of refineries that use crude oil, this exclusion shall never exceed, individually or jointly, six percent (6%) of the verified total of the oil products used in the refining process. In the case of petrochemical companies, the exclusion may exceed six percent (6%), but for that, the petitioner must submit evidence to the Secretary that justifies a greater exclusion and the Secretary shall determine the amount of the exclusion evaluating the evidence submitted and any other pertinent information.

(c) *Time to pay.*—The tax shall be paid pursuant to Section 6.001 of Chapter VI of this act, except in the case of local manufacturers, which shall be paid on the last day of the month following the date the excise tax is levied.

(d) *Credits and adjustments for exclusions.*—The Secretary shall grant credits for transactions covered by the exclusions established in clauses (1), (2), (3) and (4) of subsection (b) of this section, based on the export experience of the preceding month. Said credits shall be adjusted monthly and the Secretary shall credit or require the payment of the difference in accordance to the level of real exclusions that is determined.

(e) *Amount of the bond.*—The bond or endorsement to an existing bond, if any, shall be equal to the average of the taxes paid during thirty (30) days in favor of the Secretary to assure the faithful compliance of the provisions of this section.

Section 2.007.—Special Tax on Introduction and Production of Gasoline.—

In addition to any other tax fixed by this act, a special tax shall be levied, collected and paid on the introduction and production of gasoline, which shall be equal to the specific rates or amounts levied by the Government of the United States through a presidential proclamation during the periods in which said proclamation is applicable. For the purposes of this section, "presidential proclamation" shall mean any one thereof which the President of the United States, in the exercise of his powers and prerogatives, issues to regulate the importing and production of gasoline.

(a) *Gasoline subject to tax.*—The following shall be subject to tax:

Oct. 8                    1987 EXCISE ACT                    Act No. 5

(1) gasoline produced in Puerto Rico or in any other place in the United S···tes of America that is sold for use in Puerto Rico and whose production would create an obligation under the Entitlements Program of the Department of Energy of the United States, as established in the presidential proclamation and subject to any exception provided therein; and

(2) gasoline that is introduced in Puerto Rico in the measure that the payment of the tax fixed in said section may release the introducer of any obligation that he would otherwise incur in accordance with said presidential proclamation. Any gasoline introduced in Puerto Rico shall be subject to the payment of tax, provided, that the presidential proclamation allows the excise tax levied on gasoline in Puerto Rico in Section 2.005 of this chapter to be taken as credit against the tax or duty payable to the United States.

(b) *Credits.*—The Secretary is hereby empowered to reimburse the tax established by this section to the taxpayer, in the measure that it is subsequently determined that the fact of having paid such taxes locally had the effect of releasing said taxpayer from paying any fee established in the presidential proclamation to the United States. Notwithstanding any provision to the contrary in this act, the Secretary shall not grant any additional credits to those granted in said presidential proclamation.

(c) *Time for payment.*—The special tax fixed in this section shall be paid on the date and under the conditions provided in the presidential proclamation. In such case, the provisions of Chapter VI of this act regarding the payment of said tax shall not be applicable.

Section 2.008.—Duty on Importing of Oil—Crude, Unfinished Oils, End Products and Hydrocarbon Mixtures.—

A duty shall hereby be levied, collected and paid, in addition to any other tax levied by this act, on crude oil, unfinished oils, and all end products derived from oil and any other hydrocarbon mixtures that are imported to Puerto Rico, which shall be equal to the rates specified through any presidential proclamation issued by the President of the United States cf America. For the purposes of this section, "presidential proclamation" shall mean any of these which the President of the United States may issue in accordance with his powers and prerogatives, to regulate the duties on the importing and production of crude oil, unfinished oil, end products and any other hydrocarbons mixture.

867

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

The duties specified in said proclamation for crude oil shall be levied on end products imported into Puerto Rico, with the exception of residual oil.

The Secretary of the Treasury is hereby authorized to vary the duties established in this section. The Secretary shall make the changes that he determines are necessary in view of the events in foreign countries or in the United States of America that affect the cost of crude oil, unfinished oils or end products or those derived from oil in foreign countries, in the United States or in Puerto Rico, and further, subject to his determination that it is necessary to modify said duties to: (a) promote the optimum yield of energy resources in the Commonwealth of Puerto Rico; or (b) maintain the relative energy cost differentials between the United States and Puerto Rico to facilitate the cooperation of Puerto Rico with the United States' energy programs; or (c) protect the economic well-being of Puerto Rico from imminent threats.

The import duties established in this section shall not be applicable to:

(1) Asphalt, ethane, propane and butane.

(2) Unfinished oils or end products refined from a product on which duties have already been paid pursuant to the provisions of this act.

(3) Crude oil, unfinished oil or end products that are shipped from Puerto Rico to the Continental United States and on which the duties levied in accordance with said presidential proclamation are imposed and collected by the United States.

The Secretary shall grant reimbursements or credits and make reductions and exclusions with respect to any duties fixed by this section and to which the taxpayer would be entitled pursuant to said presidential proclamation, after demonstrating his rights under said proclamation to the satisfaction of the Secretary.

If the presidential proclamation or any of its parts are rendered ineffective, the Secretary may grant credits on exports destined to any place outside of Puerto Rico up to the total amount of the duties that are in effect pursuant to the provisions of this section.

Section 2.009.—Vehicles.—

An excise tax shall be levied, collected and paid on every vehicle that is introduced from abroad or manufactured in Puerto Rico, as established subsequently following the description of said vehicle:

868

Oct. 8                    1987 EXCISE ACT                    Act No. 5

(1) Automobiles    the percent on the taxable price corre-
sponding to the horsepower and weight of the
automobile according to the following table.
The minimum tax shall be $250.

WEIGHT OF THE AUTOMOBILE

| Horsepower | | Up to 2300 | 2301 to 2800 | 2801 to 3500 | 3501 to 4000 | 4001 to 4500 | More than 4500 |
|---|---|---|---|---|---|---|---|
| Up to | 110 | 14% | 19% | 27% | 30% | 35% | 40% |
| 111 | — 130 | 19% | 27% | 30% | 35% | 37% | 48% |
| 131 | — 160 | 27% | 30% | 33% | 37% | 48% | 60% |
| 161 | — 190 | 30% | 35% | 40% | 52% | 60% | 70% |
| 191 on | | 40% | 45% | 50% | 60% | 70% | 85% |

This table shall be applicable to all automobiles and, in the cases
of used automobiles, this table shall be applied on the taxable price
determined by the accelerated depreciation method established by
regulations.

For the purposes of the application of the preceding table, the
terms or phrases "horsepower" and "weight of the automobile" shall
be defined by regulations.

| (2) Truck tractors | 17% on the taxable price in Puerto Rico |
| (3) Buses | 20% on the taxable price in Puerto Rico |
| (4) Trucks | 10% on the taxable price in Puerto Rico. |

(a) *Definitions.*—For the purposes of this section and of any other
applicable provisions of this act, the following terms shall have the
meaning stated hereinbelow:

(1) "Automobile" shall mean any vehicle provided with any
self-propelled means designed to transport persons, including
hearses, and wreath coaches, but excluding buses, ambulances and
motorcycles.

(2) "Bus" shall mean and include any passenger motor vehicle,
commonly known as *autobuses or guaguas* with a capacity of fifteen
(15) passengers or more, including the driver, ambulances, as well
as the chassis and bodies and the passenger buses constructed on
truck chassis.

869

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY        Oct. 8

(3) "Truck tractor" shall mean and include all trucks especially designed to haul trailers as well as the chassis and bodies therefor.

(4) "Trucks" shall mean and include:

(A) Trucks, light trucks, tow trucks, and similar self-propelled vehicles by whatever name they are known, designed for the transportation of freight, and the chassis and bodies therefor.

(B) Motor vehicles provided with any number of wheels, horizontal or vertical platform, scoop or bucket, or crane geared to the motor power of the vehicle, designed expressly for the transportation, hauling, towing, lifting, stowing or storing of freight, materials or bundles, regardless of the distance traveled nor said vehicle's area of activity.

(C) Any apparatus or hoisting unit designed or constructed for adaptation to, installation on, or coupling to any vehicle mentioned in paragraphs (A) and (B) of this subsection, thereby extending, specializing or otherwise modifying the usefulness of said vehicle.

(b) No person shall be granted a license or license plate for a vehicle taxed by this act, nor shall the Secretary of Transportation and Public Works issue any such license or license plate, unless the person shows evidence that attests to the payment of the excise tax fixed in this section or of the exemption granted, if any, as the case may be.

(c) The Secretary shall furnish information, free of charge, to any person that requests it on the cost in Puerto Rico and the taxable price of any motor vehicle introduced into, or manufactured in Puerto Rico.

Section 2.010.—All Articles of Use and Consumption Otherwise Untaxed by this Act.—

An excise tax of five percent (5%) of the taxable price in Puerto Rico shall be levied, collected and paid on every article of use and consumption otherwise untaxed by this act, including the parts and accessories therefor.

(a) *Exclusion from tax.*—The tax levied by this section shall not be applicable to:

(1) Articles used by nonprofit religious institutions or organizations exclusively for religious purposes, excluding those articles of personal use.

(2) Eyeglass frames or mountings.

870

Oct. 8                    1987 EXCISE ACT                    Act No. 5

(3) Articles carried on their persons by the deaf, the blind or maimed, to compensate their physical deficiencies.

(4) Articles expressly designed to offset physical or physiological deficiencies of persons who are invalids, blind, disabled, cardiacs, deaf, mutes, deaf-mutes and maimed.

(5) Articles expressly designed to expedite the apprenticeship of the mentally retarded.

(6) Children's clothing and shoes.

(7) Fruit jellies and products that contain more than fifty percent (50%) of fruit, vegetable or natural foodstuffs as a main ingredient.

(8) Pastry products processed mainly with wheat or corn flour, or other cereals.

(9) Table chocolate.

(10) Homemade candies in small quantities.

(11) Cotton candy, maize, *crispé* and popcorn.

(12) Ice cream and sherberts.

(13) Foodstuffs.

(14) Soft drinks.

(15) Medicines.

(16) Books, magazines, newspapers and publications for commercial, religious and political promotion.

(17) Fuels, crude oils and oil products or hydrocarbon mixtures excluded from taxes in this act.

(18) Works of art when acquired by nonprofit museums and galleries with the sole purpose of permanent exhibition.

(19) The following school supplies and materials: crayons, erasers, pencils, notebooks, drawing books, paste and rulers to be used in the teaching-learning process.

(20) Toilet soap.

(21) Toothpaste, including all dentrifices, and toothbrushes.

(22) Sanitary napkins, toilet paper and diapers for children.

(23) Detergents.

(24) Brooms and buckets for cleaning.

(25) Used merchandise that is, in effect, part of a change in domicile. The term "change of domicile" shall mean the sum total of all the articles or goods that normally are part of the furniture of a household, excluding rugs, photographic, electric or fluid gas equipment or devices, and jewelry.

(26) The markers that are to be placed on the gravestones of soldiers who died in active duty and veterans, which are sent to their relatives by the Government of the United States of America.

871

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

(27) Work shoes.

(28) Pneumatic tools and equipment.

(29) All coal used as an energy source.

(30) Herbicides, pesticides, insecticides, fumigants and fertilizers acquired by persons other than farmers.

(31) The machinery and equipment used to transform coal into energy and also used to control environmental pollution.

(32) Any article that is taxed by any other act of the Commonwealth of Puerto Rico.

Section 2.011.—Internal Revenue Statement.—

Every dealer, importer or manufacturer must make an excise tax statement on all articles or raw materials introduced from abroad prior to or at the time of taking possession of said articles, except in the case of dealers bonded to introduce vehicles, who shall make said statement on or before ten (10) days have elapsed the date on which they take possession of the vehicles. In the case of a local manufacturer, the excise tax statement on the articles sold locally or abroad shall be concurrent with the date of payment of the corresponding excise tax.

The obligation to make and file the above-mentioned excise tax statement shall be mandatory even in the cases of bonded importers or manufacturers and that the articles or raw material introduced are taxed or exempted by this act. This statement shall be made under oath on the form provided for such purposes by the Secretary, and shall include such information as provided by regulations and shall be filed in the Office of the Bureau of Excise Taxes corresponding to the taxable event.

Section 2.012.—Articles Introduced in Vans.—

Any person that introduces articles into Puerto Rico using the system of vans to transfer the same from the port to their warehouses shall submit to the Secretary the bill of lading that corresponds to the articles introduced prior to removing the van from the custody of the carrier. When the taxpayer does not have the bill of lading available at that time, he shall submit the corresponding commercial invoices to the Secretary. If he does not have either of the said invoices available, or refuses to submit them, he shall be prevented from taking possession of the articles. These provisions shall not relieve the introducer from complying with the provisions of this act regarding the determination of the taxpayer

Oct. 8          **1987 EXCISE ACT**          **Act No. 5**

and the term of payment, nor his obligation to submit the commercial invoices to the Secretary at the time the tax is paid.

In the case of perishable articles introduced from abroad using the van system, the Secretary shall establish adequate administrative mechanisms so that the introducer can promptly take possession thereof.

Once the taxpayer, consignee or carrier has been authorized to move the van from the premises of the carrier company, whether directly or through his authorized representative, he shall be liable and shall be guilty of a felony, as of that moment, for any rupture to the binding, latch, padlock or seal of the van, if said rupture was not made in the presence of a treasury official of the Department of the Treasury.

Section 2.013.—Obligations of Port Owners, Lessees and Administrators.—

No owner, lessee or administrator of any port who has articles subject to the payment of excise taxes pursuant to this act in his custody shall deliver them to the consignee, nor to the person that properly claims them unless they present a certification issued by the Secretary authorizing the delivery.

When, pursuant to Act No. 15 [1] of May 9, 1941, as amended,[48] and to its regulations, the owner, lessee or administrator of any port conveys the cargo to any depot or warehouse, the owner of the warehouse depot shall have the obligation of not delivering the taxable articles unless the corresponding certification issued by the Secretary therefor has been previously obtained. If such owner, lessee or administrator sells the articles because they have not been claimed, he shall pay the Secretary such excise taxes plus the surcharges and interest that encumber said articles up to the date of payment.

## CHAPTER III

## EXEMPTIONS TO TAXES ON ARTICLES

Section 3.001.—Powers of the Secretary to Administer Exemptions.—

The Secretary is hereby empowered to establish, through regulations, the conditions regarding the enjoyment of any exemption granted in this act in order to ensure the due compliance

---

[48] 23 L.P.R.A. § 396.

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

of the terms, provisions and purposes by virtue of which the exemption is granted.

The Secretary shall impose the following requirements and conditions among any others that he may deem pertinent:

(1) Require the taxpayer to file returns and reports, and keep accounting books and records, as well as to present any document or evidence that is deemed pertinent to the exemption claimed or granted, as the case may be.

(2) Require the posting of a bond for the amount of the exemption requested and of any administrative fine, surcharge or interest that may be imposed pursuant to this act.

(3) Require that he be authorized to conduct periodic inspections, or any others, in connection with the exempted articles and that the contracts, orders or other information regarding permits to transfer or sell exempted articles be filed beforehand.

(4) Establish a time limit during which the article on which the exemption is claimed may be used for the purpose which entitles it to the exemption, unless otherwise provided in this act.

The Secretary may deny any petition for exemption, or prospectively revoke the acknowledgment of any previously granted exemption, when he determines that the exempted person has not complied with some provision of this act or of its regulations by virtue of which the exemption had been granted.

Section 3.002.—Refund of Taxes Paid in the Case of Exemptions.—

In order to achieve the due supervision of the exemptions granted by this act, the Secretary is hereby empowered to collect the excise tax, upon recognition of the exemption, except with respect to:

(1) The exemption granted to a manufacturing plant when it acquires the raw material, equipment and machinery directly from abroad.

(2) The exemption granted to a manufacturing plant when it acquires raw material, equipment and machinery deposited in bonded warehouses belonging to importer-dealers.

(3) The exemption granted to importer-dealers on articles introduced to Puerto Rico and deposited in bonded warehouses with the purpose of selling them abroad.

(4) The exemption granted to nonprofit institutions in Section 3.018 of this chapter.

(5) The exemption granted to tourists and to residents of Puerto Rico who travel abroad.

874

Oct. 8          **1987 EXCISE ACT**          **Act No. 5**

Likewise, the excise taxes paid to the public treasury may be refunded, provided the exempted person proves to the satisfaction of the Secretary that he is entitled to enjoy one or more of the exemptions established in this chapter. In such cases, the refunds shall be limited to:

(1) The exempted person when he has paid the tax directly.

(2) The exempted person, upon prior consent by the person who paid the tax.

(3) The person who, after paying the tax, has not transferred it, in whole or in part, in the sales price billed to the exempted person.

Section 3.003.—Term of Prescription to Request Refunds.—

Any person interested in being refunded all or part of the excise tax paid on any article exempted under this act shall file a petition for refund accompanied by the documents requested by the Secretary within one hundred and eighty (180) days following the date of delivery of said articles to the exempted person. In the case of the exemptions established in Section 3.013 of this chapter, said term shall be counted from and after the date the articles that give rise to the claim leave Puerto Rico. When the exempted person has already made the payment, he shall file his petition for refund and the documents required by the Secretary within one hundred and eighty (180) days following the date on which he paid the tax.

Section 3.004.—Conditional Exemptions for Articles In Transit, for Export or Returns.—

No conditional exemption shall be recognized in the cases indicated in Sections 3.013 and 3.014 of this chapter, unless the article to which the exemption is granted is once again exported, returned to the manufacturer, destroyed or otherwise disposed of, as required by the provisions of said sections.

Subject to the provisions of Section 8.001 of Chapter XIII of this act, the Secretary may extend or broaden the time limit so that a taxpayer can once again export, return to the manufacturer, destroy or otherwise dispose of the articles subject to conditional exemptions for any of the reasons or causes established in the above-mentioned Sections 3.013 and 3.014.

Section 3.005.—Exemption to Public Health Organizations.—

The projectors and movie screens used exclusively and permanently for the diffusion of educational public health propaganda that are acquired by the following organizations shall be exempted from the excise tax established in Section 2.010 of Chapter II of this act:

875

Act No. 5      11th SPECIAL SESSION—10th ASSEMBLY      Oct. 8

(1) Antituberculosis, cardiological, antivenereal and oncological organizations.

(2) Organizations for the prevention of poliomyelitis and the acquired immune deficiency syndrome.

The health organizations that wish to avail themselves of this exemption shall file a petition to such effects before the Secretary, accompanied by a sworn statement attesting that the petitioner is a nonprofit, bona fide organization, registered in the corresponding government agency and that it shall use the equipment exempted from the payment of taxes for the diffusion of educational public health propaganda.

Said sworn statement shall be in the original and duplicate and the Secretary shall send the duplicate to the Secre ary of Health to determine the veracity and accuracy of the facts stated therein. If it is determined, from the investigation conducted by the Secretary of Health or otherwise, that the facts stated in the petition are false, the Secretary shall deny the exemption requested. Furthermore, the person who signed the sworn statement shall be subject to the penalties for perjury established in Article 225 of Act No. 115 of July 22, 1974, as amended,[49] known as the "Penal Code of the Commonwealth of Puerto Rico".

Section 3.006.—Vehicles owned by Public Carriers.—

The following vehicles and radiotelephone systems shall be exempted from the excise tax fixed in Section 2.009 of Chapter II of this act, provided they are acquired to be devoted to the transportation of passengers for pay.

(1) Any motor vehicle initially registered in the Department of Transportation and Public Works by a person who, immediately after its acquisition, devotes it to the transportation of passengers for pay, and which is considered as the owner's working tool under the provisions of Section 1-109 of Act No. 141 of July 20, 1960, as amended,[50] known as the "Vehicle and Traffic Law of Puerto Rico". Said motor vehicle shall continue to enjoy the exemption granted herein in case of its sale, alienation or transfer, provided the original acquirer has devoted it to the transportation of passengers for pay for a minimum period of two (2) years.

---

[49] 33 L.P.R.A. § 4421.
[50] 9 L.P.R.A. § 309.

(2) Any new motor vehicle acquired by a person who devotes it immediately after its acquisition to the transportation of passengers for pay, and which is not considered as a working tool of its owner under Section 1-109 of Act No. 141 of July 20, 1960, as amended,[51] known as the "Vehicle and Traffic Law of Puerto Rico", shall be subject, in lieu of the excise tax imposed under Section 2.009 of Chapter II of this act, to a tax of two hundred and fifty dollars ($250) if its taxable price in Puerto Rico does not exceed two thousand five hundred dollars ($2,500), plus twenty-five percent (25%) on the excess of two thousand five hundred dollars ($2,500), if its taxable price in Puerto Rico exceeds two thousand five hundred dollars ($2,500).

(3) Any heavy motor vehicle initially registered in the Department of Transportation and Public Works of Puerto Rico by a person who, in his character as public carrier, devotes it immediately after its acquisition to the transportation of freight for pay, and is considered as a working tool of its owner under the provisions of Sections 1-109 and 1-165 of Act No. 141 of July 20, 1960, as amended,[52] and in Article 2(d) of Act No. 109 of June 29, 1962, as amended,[53] known as the "Puerto Rico Public Service Act".

(4) Radiotelephone systems installed in motor vehicles exempted from excise taxes in the preceding subsections (1) and (2).

When the owner of a motor vehicle subject to any of the exemptions established in subsections (1) and (3), or to the partial payment of the excise taxes fixed in subsection (2) of this section, sells, alienates or otherwise conveys it to another person who does not devote it immediately after its acquisition to the uses and under the conditions established in said subsections, the new acquirer, prior to taking possession of the vehicle shall be under the obligation to pay the difference between the partial excise taxes or the total exemption provided above, and the amount that he would have had to pay according to this act. Said difference shall be computed by taking into consideration the taxable price of said vehicle in Puerto Rico on the basis on which the excise tax was paid or the exemption granted, as the case may be, and the depreciation sustained, or in the case of vehicles covered by subsection (2), fifty percent (50%) of the excise tax resulting from the table included in Section 2.009 of Chapter II of this act, at the time of the appraisal,

---

[51] Id.

[52] 9 L.P.R.A. §§ 309, 365.

[53] 27 L.P.R.A. § 1002(d).

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

when these vehicles have been used for more than two (2) years and have travelled more than twenty-four thousand (24,000) miles whichever is less, all in accordance with the applicable regulations. Any owner of a vehicle subject to the above-prescribed excise taxes who later decides to operate it other than as his working tool, shall have to pay the difference between the partial excise taxes and the amount he would have had to pay, had he not been benefited by said tax relief.

When an importer or dealer pays the excise tax on a motor vehicle and subsequently sells it for the purposes established in subsections (1), (2), and (3) of this section, the Secretary shall return to such importer or dealer any difference between the tax paid and the partial tax or applicable exemption according to said subsections, provided said difference has not been passed on to the purchaser and, if so, the difference shall be returned to the latter.

Section 3.007.--Exemptions to Disabled Veterans.—

Motor vehicles provided to disabled veterans for their personal use, by or with the assistance of the Veteran's Administration shall be exempted from the excise tax established in Section 2.009 of Chapter II of this act and up to the sum of five thousand dollars ($5,000). When the motor vehicle so acquired is replaced by another, it shall also be entitled to said exemption provided the motor vehicle to be replaced has been owned by the veteran for his personal use for a period of not less than four (4) years. Notwithstanding the above provisions, when the motor vehicle to be replaced has lost its usefulness due to fortuitous causes not attributable to the negligence of the owner, the replacement shall be subject to the exemption granted herein.

When the owner of a vehicle who has availed himself of the exemption provided herein sells, transfers or otherwise conveys the motor vehicle, the new acquirer must pay the excise tax that results from applying the table contained in Section 2.009 of Chapter II of this act, taking as a basis the taxable price on which the partial exemption was granted minus depreciation prior to taking possession thereof. It shall be the duty of the exempted person to require evidence from the acquirer of the payment of the excise tax prior to delivering the motor vehicle to him.

Section 3.008.—Exemptions to Career Consuls.—

Vehicles acquired or introduced in Puerto Rico for the personal use of career consuls of foreign countries in Puerto Rico shall be exempted from the excise tax fixed in Section 2.009 of Chapter II of

878

Oct. 8        1987 EXCISE ACT        Act No. 5

this act, provided said countries extend a like privilege to representatives of the United States of America in accordance with the 1961 Vienna Convention on Consular Relationships Treaty. When the consul who owns a vehicle that is enjoying the exemption granted in this section sells, transfers or otherwise conveys it, the new acquirer shall be bound to pay the excise tax that results from applying the table contained in Section 2.009 of Chapter II of this act, taking as basis the taxable price on which the exemption was granted minus depreciation, prior to taking possession thereof. It shall be the duty of the exempted person to require evidence from the new acquirer of the payment of the excise tax prior to delivering the motor vehicle to him.

Section 3.009.—Exemptions to Disabled Persons.—

The persons indicated hereinbelow may acquire one (1) motor vehicle especially prepared and equipped for their personal use, free of the payment of excise taxes, pursuant to the regulations adopted to such effects.

(a) Persons whose hands have been amputated and who have the corresponding authorization to drive motor vehicles.

(b) Persons who are permanent paraplegics, or persons having a permanent disability of a similar nature who are duly authorized to drive motor vehicles.

(c) Persons who are blind or whose permanent physical disability does not allow them to drive a vehicle, but who use the services of an authorized driver to drive them to the place where they engage in remunerated work.

The exemption established in this section shall also apply to replacements for the motor vehicles acquired by the above-described persons, provided that the motor vehicle to be replaced has been owned by the disabled person for his personal use for a period of not less than four (4) years. Notwithstanding the above provisions, when the motor vehicle to be replaced has lost its usefulness due to fortuitous causes not attributable to the negligence of the owner, the exemption shall be applicable to the replacement vehicle. When the owner of a motor vehicle enjoying this exemption sells, transfers or otherwise conveys the motor vehicle, the new acquirer, prior to taking possession thereof, shall pay the excise tax that results from applying the table contained in Section 2.009 of Chapater II of this act, taking as a basis the taxable price on which the exemption was granted minus depreciation. It shall be the duty of the exempted person to require evidence from

**Act No. 5**    11th SPECIAL SESSION—10th ASSEMBLY    **Oct. 8**

the new acquirer of the payment of the excise tax, prior to delivering the motor vehicle to him.

If the new acquirer is a person with any of the disabilities described in this section, he may avail himself of the benefits of the exemption granted herein for the remainder of the four- (4-) year term of the exemption originally granted.

Section 3.010.—Exemptions to Churches.—

Vehicles which hold twelve (12) or more passengers, excluding the driver, which are registered for the first time in Puerto Rico, that are acquired and used exclusively by churches for the transportation of their parishioners to the religious services, shall be exempted from the payment of the excise taxes established in Section 2.009 of Chapter II of this act. The churches that wish to avail themselves of this exemption shall meet the following requirements:

(a) To be registered as a nonprofit institution for religious or sectarian purposes in the Department of State of Puerto Rico.

(b) The exempted vehicle must remain in the possession of the institution which acquires it for a minimum term of four (4) years.

(c) To obtain an express authorization from the Secretary recognizing the exemption, and justify in the petition to such effects, the necessity and convenience of acquiring of the vehicle.

The Secretary may revoke the exemption provided herein in those cases in which the church devotes the vehicle to a use other than that established in this section. When the church sells, transfers or conveys the vehicle enjoying the exemption provided herein, the new acquirer shall pay the excise tax that results from applying the table contained in Section 2.009 of Chapter II of this act, taking as a basis the taxable price on which the exemption was granted minus depreciation prior to taking possession thereof. It shall be the obligation of the exempted church to require evidence from the new acquirer of the payment of the excise taxes prior to delivering the vehicle to him.

Section 3.011.—Exemptions to Bona Fide Farmers, Native Thoroughbred Race Horse Breeders, Cattle Farmers and Poultry Farmers.—

The bona fide farmers, native thoroughbred race horse breeders, cattle farmers and poultry farmers that meet the requirements established in this act and in the regulations adopted by virtue thereof may acquire the following articles of use and consumption free from the payment of excise taxes:

Oct. 8        1987 EXCISE ACT        Act No. 5

(1) Incubators and chicken brooders.

(2) Milking machines, silo loaders and tanks to be used by cattle farmers in the conservation of milk in their cattle farms or ranches.

(3) Electric power generating plants.

(4) Equipment, devices and objects whose operation depends solely on solar, aeolian, hydraulic or any other kind of energy, excluding the energy produced by oil and its byproducts.

(5) Equipment used by coffeegrowers to process the bean once it has been cultivated until it is ready to be roasted.

(6) Equipment used to mix feed in the farms and the animal feed distribution systems in the farms.

(7) Equipment and devices used for brooding chickens and in the production of eggs on a commercial scale.

(8) The parts and accessories for any of the articles described in subsections (1) to (7) of this section.

(9) Syrup and molasses that constitute cattle feed.

(10) Used airplane tires and inner tubes.

(11) Any type of vehicle that is not an automobile.

The exemption established in this section shall also be applicable to the replacements of the vehicle thus acquired, provided the motor vehicle to be replaced has been owned and used in the agricultural business, in the breeding of native thoroughbred race horses, or cattle or poultry farming, for a period of not less than four (4) years. Notwithstanding the above provisions, when the vehicle to be replaced has lost its usefulness for fortuitous causes not attributable to the negligence of the owner, the exemption shall be applicable to the replacement. When the owner of a vehicle that is enjoying this exemption sells, transfers or otherwise conveys it, the new acquirer shall pay, prior to taking possession thereof, the excise tax that results from applying the table contained in Section 2.009 of Chapter II of this act, taking as a basis the taxable price on which the exemption was granted minus depreciation. It shall be the duty of the exempted person to require evidence from the new acquirer of the payment of the excise tax prior to delivering the vehicle. When the new acquirer is also a bona fide farmer, native thoroughbred race horse breeder, cattle farmer or poultry farmer, the person may avail himself of the benefits of this subsection for the remainder of the four- (4-) year term of the exemption originally granted.

(12) Gas oil or diesel oil used exclusively in the operation of machinery and vehicles for agriculture, cattle or poultry farming or by native thoroughbred race horse breeding purposes.

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

(13) Tractors, plows, rakers, grass cutters, sowers, and any other accessory equipment to a tractor, including parts therefor which are not interchangeable in use with other vehicles taxed by this act.

(14) Herbicides, insecticides, pesticides, fumigants and fertilizers, including the equipment for the application thereof.

For the purposes of this section and the applicable provisions of this act, "bona fide farmer" shall mean any person who is engaged in exploiting or operating an agricultural, cattle or poultry farming business, or in breeding native thoroughbred race horses, and who is certified as such by the Secretary of Agriculture pursuant to the regulating provisions that are jointly adopted to such effects by the Secretaries of the Treasury and of Agriculture.

Any person who wishes to avail himself of the exemptions listed in this section must file a petition to such effects before the Secretary, accompanied by a sworn statement attesting that he is engaged in exploiting or operating an agricultural, cattle or poultry farming business and that he shall use the article for which he is claiming the exemption in the operation and development of said business. He shall also include the corresponding certification from the Secretary of Agriculture attesting that he is a bona fide farmer.

The sworn statement shall be made on the form provided to such effects by the Secretary and it shall also include, in addition to any other information deemed pertinent by the Secretary, the exact address of the business, the personal information of the petitioner and the main item of production or harvesting the business is engaged in. The statement shall be made in the original and duplicate and the Secretary shall send the duplicate to the Secretary of Agriculture so that he may determine the veracity and exactness of the facts stated therein. When it is determined from the investigation carried out by the Secretary of Agriculture or otherwise that the facts stated in the petition are false, the Secretary shall deny the exemption requested. Furthermore, the person who furnished the false information shall be subject to the penalties for perjury established in Section 225 of Act No. 115 of July 22, 1974, as amended,[54] known as the "Penal Code of the Commonwealth of Puerto Rico".

Section 3.012.—Exemptions on Articles for Manufacturing.—

There shall be exempted from the payment of the excise taxes established in this act any raw material to be used in Puerto Rico

---

[54] 33 L.P.R.A. § 4421.

Oct. 8          1987 EXCISE ACT          Act No. 5

for the manufacture of finished products, excluding hydraulic cement, crude oil, unfinished oils and oil end products and any other hydrocarbon mixture. For the purposes of this section and the applicable provisions of law, the term "raw material" shall include:

(1) Any product in its natural state derived from agriculture or the extractive industries.

(2) Any subproduct, byproduct, unfinished or finished product.

(3) Sugar sold in bulk or in units of one hundred (100) pounds or more acquired by manufacturers to manufacture products.

There shall also be exempted from the payment of the excise taxes established in this act, the machinery and equipment as well as the parts and accessories thereof to be used in manufacturing plants and shipyards and any other machinery and equipment used exclusively for the manufacturing process or in the construction or repair of ships outside of the premises of said plants and shipyards. For the purposes of this exemption, the term "manufacturing plant" includes all plants engaged in assembling or incorporating taxable articles referred to in Chapter II of this act or engaged in the conversion of raw material into finished products which differ from their original condition. Likewise, any factory that has availed itself of the Industrial Incentives Acts of Puerto Rico[55] shall be deemed as a manufacturing plant for the purposes of the exemption established in this section.

Experimental laboratories, including the preliminary exploration phase of regions with a view to the mineralogical development of Puerto Rico, drydocks and shipyards for the construction or repair of vessels shall also be deemed a manufacturing plant.

The term "manufacturing plant" shall not include service plants such as laundries, lumber yards, pasteurizing plants, nor shall it include commercial establishments in which a manufacturing process of a relatively minor economic importance is carried out as a collateral activity.

The following articles of use and consumption used by manufacturing plants, regardless of the area or place where they are located shall not be considered raw material, machinery or equipment, and therefore, shall be subject to the payment of the excise taxes fixed in this act:

(1) All construction material and prefabricated buildings.

---

[55] 13 L.P.R.A. §§ 231 et seq., 241 et seq., 252 et seq., 255 et seq., 256 et seq.

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

(2) All electrical material and water pipes fixed into the buildings.

(3) All lubricants, oils, waxes and paints not related to the manufacturing process.

(4) Lamp posts and lights installed in parking areas.

Section 3.013.—Exemptions on Articles in Transit and for Export.—

The articles comprised in the cases indicated hereinbelow shall be exempted from the payment of excise taxes established in this act, provided the provisions of Section 3.004 of Chapter II of this act are complied with.

(a) Articles in transit in Puerto Rico consigned to persons outside of Puerto Rico, as stated in the shipping documents while they remain in the custody of the carrier or customs authorities, or deposited in a bonded warehouse, or in the warehouses of the shipping company, which is the intermediary consignee in Puerto Rico, and that are exported from Puerto Rico within one hundred and twenty (120) days from the date of the introduction.

(b) Articles introduced into Puerto Rico consigned to dealer-importers with the intent of exporting them, while they remain in the custody of the customs authorities or deposited in a bonded warehouse or in the Foreign Trade Zone in Puerto Rico.

(c) Articles introduced in Puerto Rico or acquired from local manufacturers that, without having been subject to sale, use or transfer in Puerto Rico, are in the custody of dealer-importers or dealers who have acquired them from manufacturers in Puerto Rico and that are sold for use and consumption abroad. The articles thus sold must be reshipped abroad before they are subject to internal commerce or use or consumption in Puerto Rico in order to be exempted from the payment of taxes.

For the purposes of this subsection, the term "internal commerce" does not include a sale or transfer transaction that initiates the completion of the reshipping of the articles outside of Puerto Rico.

(d) Articles which, at the expiration of the lease period, are transferred by exempt entities to the lessor and which are reshipped outside of Puerto Rico by him within two (2) months following the date of transfer.

Section 3.014.—Exemptions on Returned Articles.—

The articles in the cases described hereinbelow shall be exempted from the payment of the excise taxes fixed by this act, provided the provisions of this section are complied with.

Oct. 8            1987 EXCISE ACT            Act No. 5

(a) Articles returned by the introducer to persons abroad, or by the dealer or local manufacturer, without having been commercially exhibited or used in Puerto Rico, provided said return is made within sixty (60) days from the date of its introduction in Puerto Rico, when dealing with articles brought from abroad. In the case of articles manufactured locally, the above-mentioned term for their return abroad shall be counted from the date of sale. Also included in this exemption are articles introduced into or manufactured in Puerto Rico with the sole and exclusive purpose of being exhibited, demonstrated or used in fundraising, charitable, cultural, educational, scientific or pedagogical activities or for experimental, or of industrial or commercial propaganda purposes, or under any other similar activities or purposes, provided they are returned abroad within the above-mentioned term, after the activity or event for which they were manufactured or introduced into Puerto Rico has concluded.

(b) Articles found upon receipt to be damaged, spoiled, broken or which have evaporated or lost because of breakage, if returned or destroyed within a term of sixty (60) days counted from the date of introduction in Puerto Rico, if dealing with articles brought from abroad. In the case of articles manufactured locally, the sixty-(60-) day term for their return abroad shall be counted from the date of the sale.

(c) Articles whose concealed flaws or intrinsic defects are not readily noticed by the importer-dealer or acquirer at the time of taking possession thereof when there has been no negligence or intent of tax evasion on the part of the importer, dealer or acquirer, and if said articles are returned or destroyed within one hundred and twenty (120) days from the date of introduction into Puerto Rico, when dealing with articles brought from abroad. In the case of articles manufactured locally, the above-established term for its return or destruction shall be counted from the date of the sale. The Secretary shall have discretion to grant this exemption and the same shall not exceed eighty percent (80%) of the applicable tax.

(d) Articles manufactured in Puerto Rico and subsequently exported to markets abroad which are rejected or returned to the manufacturer or to his distributor in Puerto Rico for reprocessing, reconditioning or repacking. This exemption may only be granted when the manufacturer, upon prior notice to the Secretary, has reshipped the repaired, reconditioned or repacked articles outside of Puerto Rico, no later than the last day of the third month following the month of introduction, or has destroyed the same

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

within the same period of time, or used them as raw material in the processing of other products within the same period.

Section 3.015.—Exemption for Tourists and Residents Traveling Abroad.—

Articles that constitute the normal travel equipment of tourists or visitors arriving in Puerto Rico shall be exempted from the payment of the excise taxes fixed in this act. In determining what constitutes the normal equipment of a tourist or visitor, the special circumstances in each case shall be appraised in the light of the traveler's profession or business, the propaganda preceding him and his need for equipment, garments and clothing to maintain his normal way of life or of work as well as the extent of his stay in Puerto Rico. The Secretary may restrict this exemption to two (2) trips during the same year, if he believes that the restriction is necessary for the proper enforcement of this act. The Secretary shall condition this exemption on the tourist or visitor carrying the unexpendable articles with him when he leaves Puerto Rico, in which case this shall be a conditional exemption subject to the provisions of Section 3.001 of Chapter III of this act.

The Puerto Rican residents arriving on the Island from abroad shall be entitled to bring taxable articles in an amount not to exceed six hundred (600) dollars, in their luggage, free from the payment of excise taxes, subject to the following limitations:

(1) The enjoyment of this exemption is hereby limited to once every thirty-one (31) days.

(2) The introduction of two hundred (200) cigarettes is allowed within this exemption. Any excess of two hundred (200) cigarettes shall be subject to the payment of excise taxes. The cost of the exempted cigarettes shall be understood as included within the amount of the exemption.

(3) Articles subject to this exemption shall not be traded in Puerto Rico.

Section 3.016.—Articles of Theater Companies on Artistic Tours.—

There shall be exempted from the payment of the excise taxes fixed in this act such articles introduced into Puerto Rico by any theatrical company or similar company, on artistic tour, that are destined exclusively for the presentation or advertisement of the public spectacle. This exemption shall be a conditional one that shall be granted for not more than six (6) months counting from the date of introduction of the articles to Puerto Rico.

Oct. 8                    1987 EXCISE ACT                    Act No. 5

Section 3.017.—Exemption for Articles Sold in Air or Maritime Terminal Stores to Persons Leaving Puerto Rico.—

There shall be exempted from the payment of excise taxes the articles introduced or manufactured in Puerto Rico to be sold in stores established in air or maritime terminals that are duly authorized to sell tax-free articles to persons leaving the jurisdictional limits of Puerto Rico. This exemption shall be granted if the store that sells them:

(1) Has the license required by this act to operate this type of business.

(2) Meets the requirements established to such effects by the Secretary for the sale of tax-free articles and the regulations adopted for the granting of said exemption.

(3) Delivers the tax-free articles on board the plane or vessel in which the acquirer is to travel, or in the area or immediate boarding concourse of the air or maritime vessel.

Section 3.018.—Nonprofit Charitable Institutions.—

The nonprofit charitable institutions registered as such in the Department of State of Puerto Rico which, after an investigation to such effects, demonstrate that they are engaged in social service work in Puerto Rico, such as hospitals, dispensaries or asylums, or are engaged in the teaching of educational material that appears in the general curriculum of the Education System of Puerto Rico, including vocational training, shall be exempted from the payment of the excise taxes fixed in this act with respect to:

(1) Articles acquired for the exclusive use of the institution in the operation and rendering of the services it is engaged in.

(2) Chocolate bars and plastic bags acquired to be sold directly to the public to collect funds, provided such funds are used to render social and charitable services to the community.

(3) The first five thousand (5,000) dollars of the excise tax on any automobile and the total amount of the excise taxes on trucks and buses which, in accordance with the rules adopted by the Secretary, are necessary for the operation of the institution.

Nonprofit charitable institutions that render free emergency services to the people of Puerto Rico shall not be entitled to the exemptions established in subsections (1) and (2) of this act [section]. They will, however, be entitled to a total exemption on any vehicle that is donated to them under the condition that they use it to render said emergency services.

887

Act No. 5   11th SPECIAL SESSION—10th ASSEMBLY   Oct. 8

Any institution that wishes to avail itself of the exemption of the payment of excise taxes on vehicles established in this section shall:

(a) Be registered in the Department of State of Puerto Rico as a nonprofit charitable institution engaged in rendering social or emergency services free of charge.

(b) The exempt vehicle must remain in the possession of the nonprofit charitable institution in question for a term of four (4) years.

(c) In the case of institutions that render emergency services, it shall be necessary for the donor to obtain express authorization from the Secretary acknowledging the exemption prior to donating the vehicle.

If at any time after its acquisition, the nonprofit charitable institution sells, transfers or otherwise conveys the vehicle exempted from the partial payment of the excise tax, the new acquirer shall be bound to pay the tax that results from the application of the table contained in Section 2.009 of Chapter II of this act, taking as basis the taxable price over which the partial exemption was granted minus depreciation, prior to taking possession thereof. It shall be the obligation of the exempt nonprofit charitable institution to demand evidence of the payment of the excise tax from the new acquirer prior to delivering the vehicle to him. Likewise, a notice and payment of excise taxes shall be required in any case in which any other exempted article is sold, transferred or conveyed.

The exemptions granted in this section shall not be applicable to fuel, buildings, construction material, nor to replacement parts or accessories for the tax-free articles and equipment they acquire.

Any charitable nonprofit institution that wishes to acquire any article or vehicle for the exclusive use of the institution, free from the payment of the excise taxes fixed in this act, must request it in advance from the Secretary. The equipment it wishes to acquire shall be described in the petition as well as the necessity and convenience of its acquisition.

For the purposes of this section and of the other applicable provisions of this act, "social services" shall mean any systematic and effective program to improve living conditions in the rural zones or slums in Puerto Rico, also including the hospitalization of insolvent or needy persons, the maintenance of outpatient clinics, the teaching of educational material comprised in the Education System of Puerto Rico, vocational training, reeducation or reorientation of persons with deficiencies in their physical or

888

Oct. 8               1987 EXCISE ACT               Act No. 5

mental development, the maintenance of prevention centers, sanatoriums, reformatories and orphanages.

In the case of religious institutions engaged in diverse activities, the exemption shall be applicable to those programs or units of the institution that are exclusively engaged in social service work. With regard to teaching, the fact that religious doctrine is taught shall not be an impediment tor the granting of this exemption if, in the judgment of the Secretary, the teaching of the courses in the general curriculum of the Education System of Puerto Rico and vocational training predominate.

"Nonprofit charitable institution" shall mean that partnership, association, organization or entity that renders social services free of charge, at cost or at less than cost, or if at more than cost, the total amount of the profits is invested in extending the physical structure or the social services, including the American Red Cross. The Secretary may, at any time, prospectively revoke his recognition to these institutions as an exempt person, when he determines that the institution does not qualify as a nonprofit charitable institution, based on the following considerations, among others:

(1) That it pays its directors, officers, officials or employees salaries, per diems, perquisites or other emoluments higher than those that prevail for similar institutions of the Government of the Commonwealth of Puerto Rico.

(2) Incurs extravagant expenses or its expenditures are not clearly related to the objectives of social services as established in this section.

(3) Refuses, as required by the Secretary, to furnish any reports on its operations and the services rendered or its accounting books.

Section 3.019.—Puerto Rico Olympic Committee.—

Articles acquired by the Olympic Committee chargeable to public funds that are appropriated thereto and that are used for the following purposes shall be exempted from the payment of excise taxes:

(1) Training of athletes in or outside of Puerto Rico.

(2) Organizing and holding sports competitions or events.

(3) The purchase of sports equipment or material.

(4) Acquisition of uniforms and clothes for sports competitions.

(5) Organizing courses, clinics and seminars for technical sports improvement and the purchase of books, educational material and equipment in general, for such purposes.

889

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

(6) Maintenance and conservation of the Olympic Shelter (*Albergue Olímpico*).

The first five thousand (5,000) dollars of taxes on any vehicle it acquires shall also be exempted whether or not it is purchased with public funds.

The exemption granted in this section shall not apply to fuel, buildings, construction material, replacement parts or accessories for tax-free articles.

In order to avail itself of the exemption provided herein, the Puerto Rico Olympic Committee shall request the same in advance from the Secretary. It shall describe in the request the articles it wishes to acquire, the purposes for which they shall be used, the need for its acquisition and the funds the same shall be paid with.

If, at any time after its acquisition, the Puerto Rico Olympic Committee sells, transfers or otherwise conveys the vehicle exempted from the partial payment of excise taxes, it shall notify the Secretary thereof and the new acquirer shall be bound to pay the excise tax that results from applying the table contained in Section 2.009 Chapter II of this act, taking as a basis the taxable price on which the partial exemption was granted minus depreciation, prior to taking possession thereof. It shall be the obligation of the Olympic Committee to require evidence from the acquirer of the payment of excise taxes prior to delivering the motor vehicle in question.

Section 3.020.—Exemptions to Radio and Television Stations.—

Articles acquired by radio and television stations authorized to operate in Puerto Rico by the Federal Communications Commission shall be exempted from the payment of excise taxes fixed in this act, provided said articles constitute necessary technical equipment to comply with the electronic press mission.

If at any time from its acquisition, the radio or television station sells, transfers or otherwise alienates any exempted article, it shall so notify the Secretary, and the new acquirer shall be bound to pay the excise taxes on said article prior to taking possession thereof. In such cases, the excise tax shall be computed on the basis of the sale price of the article in question. It shall be the obligation of the exempted radio and television station to require evidence from the new acquirer as to the payment of the excise tax prior to delivering the article.

Oct. 8           1987 EXCISE ACT          Act No. 5

Section 3.021.—Exemption on Articles Acquired by Government Agencies.—

Any article acquired for official use by the agencies and instrumentalities of the Government of the United States of America shall be exempted from the payment of the excise taxes fixed in this act.

Those vehicles and heavy construction equipment acquired for official use by the departments, agencies, administrations, bureaus, boards, committees, offices, public corporations, public instrumentalities and municipalities of the Commonwealth of Puerto Rico, including the Legislative Branch and the Judiciary Branch shall, likewise, be exempted from the payment of the excise taxes fixed in Section 2.009 of Chapter II of this act.

Those articles acquired by the stores denominated "Post Exchanges" located in military establishments of the United States of America in Puerto Rico to be resold to active members of the Armed Forces assigned to or in transit in Puerto Rico, and those acquired by "Post Exchanges" located in military establishments of the Puerto Rico National Guard to be resold to the members of the National Guard and to the members of the Puerto Rico Police, pursuant to the provisions of Act No. 26 of August 22, 1974, as amended,[56] known as the "Puerto Rico Police Act", shall also be exempted from the payment of excise taxes.

The exemption established in this section includes the articles ordered abroad through local distributors or representatives, articles whose taxable event is the sale, and those that a dealer has available in his establishment at the time the purchase order is received and on which the corresponding taxes have been paid. It does not include, however, the acquisition or sale of vehicles by or through the Post Exchanges.

Any automobile owned by the Government of the United States of America and of the Commonwealth of Puerto Rico, that is acquired at public auction and whose taxable price at the time of the transfer does not exceed two thousand (2,000) dollars, shall pay an excise tax of two hundred and fifty (250) dollars or twenty percent (20%) of said taxable price, whichever is less. The agency that auctions the vehicle shall require evidence of the payment of the excise tax from the acquirer prior to delivering it to him.

---

[56] 25 L.P.R.A. § 1001 et seq.

Act No. 5      11th SPECIAL SESSION—10th ASSEMBLY      Oct. 8

Section 3.022.—Exemption on Articles Belonging to Persons in Government Service.—

Persons in the service of the Government of the United States of America or of the Government of the Commonwealth of Puerto Rico who are officially transferred to render services in Puerto Rico shall be entitled to introduce to the island the following articles, exempt from taxes, provided such introduction is as a result of and contemporaneous with the transfer order:

(a) Personal use articles belonging to the person transferred and the other members of his family that accompany him.

(b) Household goods.

(c) One (1) motor vehicle.

Servicemen in the Armed Forces of the United States of America that are transferred to Puerto Rico or to any foreign country shall also be entitled to said exemption. In such cases, the exemption shall be extended to the spouse and dependents of the serviceman domiciled in Puerto Rico who is transferred from the United States or other foreign country to serve in a place where he is not allowed to take his family and that for said reason is forced to introduce to Puerto Rico the above articles.

For the purposes of the exemption provided in this section, the term "dependent" shall mean the father, mother or any other relative that lives in the immediate custody of the serviceman and that must return to Puerto Rico because said serviceman has been assigned to serve in a place where he cannot take them.

Servicemen who live abroad alone, without their spouse or any dependent through which the person may introduce the above-mentioned articles to Puerto Rico, may send them to the spouse or closest relative, accompanied by a certified copy of the transfer order.

The exemption granted in this section shall cease as soon as the transferred person or the spouse or dependent of the serviceman, when he is the introducer, sells or transfers the articles so introduced or remitted. The new acquirer shall be bound to pay the corresponding excise taxes on said articles computed on the basis of the market value thereof at the time of the sale or transfer.

Section 3.023.—Tax-exempt Cigarettes.—

Cigarettes sold or transferred to foreign flag ships and those of United States registration, and to those sold to foreign warships and to ships of a foreign country on courtesy visits to Puerto Rico,

892

Oct. 8                    1987 EXCISE ACT                    Act No. 5

shall be exempted from the tax levied in Section 2.004 of Chapter II of this act. This exemption shall only be granted when the cigarettes are delivered in accordance with the rules and procedures established by the Secretary and the violation thereof shall entail the obligation of the importer or the distributor, as the case may be, to pay the corresponding excise taxes. The importer or distributor who wishes to avail himself of this exemption shall post a bond to answer for the payment of said taxes.

Cigarettes which have been withdrawn from the factories, or ports are removed from the market because they are unsuitable for normal consumption, shall likewise be exempted from the payment of excise taxes, provided they are destroyed under the supervision of the Secretary. In such case, the Secretary shall refund or credit the tax to the person who paid it.

Section 3.024.—Exemption on Contaminated Gasoline or Diesel Oil or for Marine Use.—

Gasoline and diesel oil, which, before or when being pumped from a ship or from the refineries into tanks or plants in Puerto Rico, has become contaminated with water or other products and thereby rendered commercially unsaleable or unusable shall be exempted from the excise tax levied in this act. This exemption shall be granted only if the contamination was accidental, does not involve any negligence on the part of the importer, manufacturer or wholesale distributor or his agents or employees and when the facts can be subject to visual verification or technical analysis by the Commonwealth fiscal officials or Customs Service Officials of the United States of America.

Diesel oil or gas oil distributed for use outside of Puerto Rico, including the supply of gas oil or diesel oil to ships to be used by them in trips by sea between Puerto Rico and other places shall likewise be exempted from the excise taxes levied in this act. For the purposes of this act, the term "trips by sea" does not include trips or voyages for recreational or sports purposes.

Section 3.025.—Partial Exemption on Gasoline for Air or Marine Use.—

The Secretary shall refund the amount of eleven (11) cents for each gallon of gasoline which has been used in sea and air trips between Puerto Rico and other places outside of the territorial limits of Puerto Rico. For the purposes of the section, the term

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

"trips by sea or air" does not include flights or air trips, nor recreational or sports sea trips or voyages.

## CHAPTER IV

### TAX ON CERTAIN TRANSACTIONS

Section 4.001.—General Tax Provision on Certain Transactions.—

A tax shall be levied, collected and paid at the rates prescribed in Sections 4.002 through 4.006 of this chapter, on the retail sale of jewelry articles, occupancy of hotel rooms, motels, apartment hotels and guesthouses, on admission fees to public shows, on winnings in racing pools, pari-mutuels, daily doubles, subscription funds and any other wager in the racetracks of Puerto Rico and on the winnings obtained from horseraces by their owners.

The tax levied on said transactions shall be paid at the time and in the manner established in Chapter VI of this act and shall be subject to the exemptions granted in said chapter.

Section 4.002.—Tax on Retail Sales of Jewelry Articles.—

A five percent (5%) tax on the retail sale price of any jewelry article shall be levied, collected and paid. The tax shall apply to the retail sale of the following articles, including the parts and accessories thereof:

(1) Any article commonly or commercially known as jewelry, regardless of the material used for its manufacture.

(2) Pearls, precious or semiprecious stones and imitations thereof.

(3) Articles made of, ornamented, embedded, set, covered or mounted with or attached to precious metals or imitations thereof, pearls, precious or semiprecious stones, ivory, ebony, amber, jet or alabaster.

(4) Articles gilded by fire with precious metals or alloys thereof.

(5) Timepieces of all kinds.

(6) Small boxes, compacts, vanities or makeup cases and similar articles made of or plated with the precious metals or imitation precious metals for makeup, shaving or manicure.

(7) Gold, gold-plating, silver, silver-plating, sterling silver, platinum or platinum-plating.

(8) Any case for jewelry.

For the purposes of this section and any other applicable provisions of this act, the following terms shall have the meaning stated hereinbelow:

894

Oct. 8          **1987 EXCISE ACT**          **Act No. 5**

(1) "Precious metals" shall mean and include gold, silver, sterling silver, platinum, rhodium and palladium of any grade or purity.

(2) "Imitation precious metals" shall mean and include:

(a) Inferior metals gilded, silver-plated or platinized with precious metals;

(b) Alloys or mixtures of precious metals and common metals of inferior quality, in any proportion.

(c) Any other metal or alloy used in the manufacture of an article sold in Puerto Rico to the consumer at a price equal to or higher than that of similar or analogous articles gilded or otherwise alloyed in any proportion with precious metals or imitation precious metals.

In the case of clauses (b) and (c) of this subsection, if the article does not contain any amount of gold, silver or platinum, it shall not be subject to any retail sales tax unless, according to the Secretary's determination, it is an essentially ornamental article or an article commonly or commercially known as jewelry.

The retail sales tax on jewelry articles shall not be applicable to:

(1) Jewelry articles sold to religious nonprofit institutions or organizations to be used solely for religious purposes.

(2) Wrist or pocket watches especially designed for use by the blind.

Section 4.003.—Occupancy of Hotel, Apartment Hotel, Guesthouse and Motel Rooms.—

A six percent (6%) tax on the rental rates of hotel, apartment hotel, guesthouse and motel rooms shall be levied, collected and paid when said rates exceed five (5) dollars a day.

For the purposes of this section and other applicable provisions of this act, the following terms shall have the meaning stated hereinbelow:

(1) "Hotelier" shall mean any person who operates a hotel, motel, apartment hotel or guesthouse in Puerto Rico, including, but not limited to, the owner or proprietor thereof, the lessees, the mortgagor sublessee, the holder of a hotel, apartment hotel, guesthouse or motel.

(2) "Occupant" shall mean any person who for a price and by virtue of any lease, concession, permit, right of access, license or under any other agreement or in any other form, uses, possesses, has the right to use or to possess any room or rooms in hotels.

895

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

(3) "Occupancy" shall mean the use or possession or the right to use or possess any room or rooms in a hotel, apartment hotel, guesthouse or motel, or the right to use or possess the services and facilities inherent to the use or possession of any room or rooms.

(4) "Hotels" shall mean any building commonly used and kept open to lodge guests through the payment of a rental rate and which derives its income from the rental of rooms. The term "hotels" shall also include motels, guesthouses, furnished or unfurnished apartments, rented for a given period of time.

(5) "Guesthouse" shall mean a building or part of a building, other than a hotel or apartment hotel, where persons are lodged for pay, with or without meals. The term guesthouse shall include, but shall not be limited to, a residential club, a boarding house, a furnished boarding house, a lodging (*pension*) or a private club.

(6) "Room" shall mean any bedroom, chamber, room or rooms of any kind in any part or section of a hotel, apartment hotel, guesthouse or motel offered or available for use or possession for any purpose.

(7) "Rates" shall mean the price for occupancy of any room in a hotel, motel, guesthouse or for occupancy in a hotel apartment, valued in terms of money, be it in legal currency or otherwise, and including all cash, receipts, credit or delivery of property, or rendering of services of any kind or nature, as well as any amount without any deductions for which the occupant is credited by the hotelier.

When meals or other services not subject to the payment of taxes are included in the price for occupancy, the Secretary may take as basis the total charged by the hotelier to determine the tax to be paid. In the case the hotelier fails to furnish a creditable breakdown of the reasonable cost of all and each of the services so rendered, the Secretary shall determine the deduction of the cost of such services, taking as basis the experience in the industry.

Section 4.004.—Tax on Admission Fees to Public Shows.—

A ten percent (10%) tax shall be levied, collected and paid on the admission fees to any public show that is held in Puerto Rico.

(a) *Definitions.*—For the purposes of this section and of any other applicable provisions of this act, the following terms shall have the meaning stated hereinbelow:

(1) "Public show" shall mean any function, activity or entertainment that is held with the purpose of attracting attention or intellectual contemplation to instil enjoyment, admiration,

Oct. 8      1987 EXCISE ACT      Act No. 5

astonishment or other emotional effect on the viewer, and on which a tax or an admission fee is collected.

(2) "Admission fee" shall mean the price fixed by the promoter for the public so that they may have access to the show, prior to adding the corresponding tax.

(b) *Determination of tax.*—In determining the amount of the tax to be paid, the following rules shall apply:

(1) When in the determination of the ten percent (10%) tax on the admission ticket fee there is a remainder of a fraction of a cent, the fraction shall be disregarded for all purposes and only the whole number in cents shall be collected as taxes.

(2) In the case of persons admitted to the show through a courtesy ticket, free of charge or at a price lower than is charged to the general public, the tax shall be determined on the basis of the admission fee currently charged to all other persons.

(c) *Total or partial exemption.*—The following public shows shall be exempted, in whole or in part, from the tax levied in this section:

(1) Those held by the University of Puerto Rico and by other institutions of higher education organized and recognized under the laws of Puerto Rico, when the same are the promoters.

(2) Those held by the Institute of Puerto Rican Culture and affiliated Cultural Centers, when they are the promoters.

(3) Dances.

(4) The first two (2) dollars of the admission fee to public shows held by bona fide, nonprofit organizations, associations or groups, registered as such in the Department of State, whose activities are directed to promote the general welfare of the community. This exemption shall be subject to compliance by the organizations, associations and groups which enjoy it, of the regulations to be adopted.

(5) The first fifty (50) cents of public shows in which the admission fee is one (1) dollar or less. This exemption shall not apply when the admission fee to be charged to children under fourteen (14) years of age is more than fifty (50) cents.

(6) The games of the Professional Baseball League of Puerto Rico, when the admission fee for preferential tickets does not exceed two dollars and fifty cents ($2.50) and the first two dollars and fifty cents ($2.50) of box tickets whose admission fees do not exceed three dollars and fifty cents ($3.50). Any preferential ticket whose admission fee exceeds two dollars and fifty cents ($2.50), and any other ticket, regardless of its category, of three dollars and fifty cents ($3.50) or more shall be subject to the payment of the taxes

897

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

fixed in this section. For the purposes of this clause, the term "preferential" shall be a synonym or equivalent to the term "general admission".

(7) Baseball games held among the major league teams of the United States of America, or between them and Puerto Rican teams, provided the total profits are donated to the "Ciudad Deportiva Roberto Clemente" nonprofit organization.

(8) The admission fees to the Caribbean Series baseball games held in Puerto Rico.

(9) Boxing match programs that include at least one (1) world championship fight of the corresponding category, or at least one (1) fight in which a world champion participates and that is broadcasted simultaneously by radio.

(10) Theatrical or artistic shows consisting solely of the performance of the performers in person.

(11) Circuses.

Any impresario of a public show shall notify the District Office of the Tax Bureau of the area where the same shall be held, of the date, time and place thereof no less than ten (10) days in advance of the event in question. He is likewise required to submit to said Office the total issue of tickets to be used in the public show in question for inspection and authentication. The obligation to notify and present tickets shall be mandatory with respect to the public shows subject to the payment of the tax fixed in this section as well as those exempted in subsection (d) thereof.

The Secretary may release any public show impresario from his obligation to collect the entire tax on admission fees, or the proportion thereof corresponding to any reduction of the same, when said promoter does not cover all or part of the admission fees to groups of inmates of public or private nonprofit institutions, to disabled veterans, foreign visitors, to children or women, collectively or whenever he reduces admission fees to a certain group for civic purposes or for the promotion of sports.

Section 4.005.—Tax on Winnings from Racetrack Wagers.—

A ten percent (10%) tax on all the winnings in the pari-mutuels, and a seventeen percent (17%) tax on all the winnings in pools, *quinielas*, daily doubles, subscription funds or obtained in any other legally-authorized wager in the racetracks of Puerto Rico shall be levied, collected and paid.

Oct. 8                    1987 EXCISE ACT                    Act No. 5

Section 4.006.—Tax on Betting Forms for Horse Races.—

A five- (5-) cent tax shall be levied, collected and paid on each stamped, printed form and a ten- (10-) cent tax on each daily double and *exacta* printed form stamped at a horse racing agency established pursuant to Act No. 83 of July 2, 1987,[57] known as the "Puerto Rico Horse Racing Sport and Industry Act".

Section 4.007.—Tax on Prizes Obtained by Horse Owners in Horse Races.—

A six (6) percent tax shall be levied, collected and paid on the amount of each cash prize obtained by horse owners in races held at the racetracks in Puerto Rico.

Prizes obtained by horse owners for the first five (5) positions in the Caribbean International Classic Races shall be exempted from the tax fixed in this section.

## CHAPTER V

## LICENSE FEES FOR RETAIL SALE AND WHOLESALE OF CERTAIN GOODS AND FOR OTHER BUSINESSES OR ACTIVITIES

Section 5.001.—License Fees for Wholesale or Retail Dealers of Certain Goods.—

Any wholesale or retail sales dealer of any of the goods listed hereinafter, in a fixed place or itinerant shall pay an annual tax as license fee at the rate established in the following table:

---

[57] 15 L.P.R.A. § 198 et seq.

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

CATEGORIES

| DEALERS IN: | 1st | 2nd | 3rd | 4th | 5th | 6th | 7th | 8th | 9th |
|---|---|---|---|---|---|---|---|---|---|
| Cigarettes: | | | | | | | | | |
| Wholesales: | | | | | | | | | |
| Fixed location | $ 400 | $ 200 | $ 100 | | | | | | |
| From a vehicle—each vehicle | 60 | | | | | | | | |
| Retailers—Fixed location: | 100 | 60 | 40 | $ 20 | $ 12 | $ 7 | | | |
| Retailers—Itinerant | 12 | 6 | | | | | | | |
| Gasoline: | | | | | | | | | |
| Wholesalers | 6,000 | 4,000 | 3,000 | 2,000 | | | | | |
| Retailers | 1,000 | 900 | 700 | 500 | 300 | 200 | $ 60 | $ 40 | |
| Vehicles | 2,000 | 1,200 | 600 | 320 | 100 | | | | |
| Vehicle parts and accessories wholesale or retail | 2,000 | 1,200 | 600 | 320 | 100 | | | | |
| Articles subject to jewelry taxes: | | | | | | | | | |
| Wholesalers and Retailers | 4,000 | 3,000 | 2,000 | 1,600 | 1,200 | 600 | 300 | 100 | |
| Itinerant Retailers | 1,200 | 400 | 200 | 100 | 40 | | | | |
| Locally manufactured cement or introduced to Puerto Rico by wholesale dealers | 250,000 | 240,000 | 200,000 | 160,000 | 120,000 | 80,000 | 40,000 | | |
| Arms and Munitions Dealers | 300 | 140 | 100 | 40 | | | | | |

900

Oct. 8                    1987 EXCISE ACT                    Act No. 5

(a) For purposes of this section and the other provisions applicable to this act, the following terms shall have the meaning expressed hereinbelow:

(1) "Dealer" shall mean any person who is engaged in the business of selling or exchanging goods, whether at a fixed place or as an itinerant or who displays the goods to the public in showcases or displays, unless these goods, in a strictly indispensable number, fullfil no other conceivable purpose than that of exhibiting the goods; or who acquires goods in commercial amounts in excess of his normal consumption needs.

(2) "Wholesaler dealer" or "wholesaler" shall mean any person who sells to a dealer and maintains a stock of goods on his business premises or in relation to such sale.

(3) "Retail dealer" or "retailer" shall mean any dealer who sells exclusively for individual use and consumption without an intermediary.

(4) "Itinerant dealer" means any person engaged in the business of selling or exchanging articles and whose characteristic is that said business does not have a fixed place from where to operate.

For the purposes of this section, a manufacturer who sells or disposes of goods at wholesale in and from his own plant, or exhibits them there without selling or disposing of them at retail prices shall not be deemed to be a dealer, except hydraulic cement manufacturers who shall be deemed to be dealers for purposes of this act.

(b) The fees fixed in the preceding table shall apply separately for each good dealt in and for each establishment that is kept. The Secretary shall determine the license category which must be obtained by every dealer according to the goods dealt in, the form, manner and volume of sales. The license must be displayed in a place that is visible to the general public at the fixed or moving location in which the dealer sells the goods for which it is issued.

(c) In the case of itinerant dealers, each vehicle used in the sale or distribution of taxable goods is deemed to be a separate establishment. Every itinerant dealer who maintains a stock of goods in any place other than where he usually deposits the goods during inactive periods shall have the obligation of obtaining a fixed place dealers license for each place where he maintains a stock of taxable goods, in addition to the itinerant dealer license.

901

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

Section 5.002.—License Fees for Coin-Operated Machines.—

Any person who operates coin- or token-operated amusement machines or devices, pool tables or cigarette-vending machines shall pay an annual tax in the amount established herein:

| | |
|---|---|
| (A) For each jukebox | $ 60 |
| (B) For each coin- or token-operated amusement machine or device which is: | |
|     Mechanical | 25 |
|     Electronic | 50 |
|     Video-type | 125 |
| (C) For each pool table | 50 |
| (D) For each cigarette-vending machine | 25 |

The license fees established above shall be applied separately to each coin amusement machine or device coin- or token-operated, for each pool table and for each cigarette-vending machine that is imported or distributed. The corresponding license must be displayed visibly to the public on each machine or device.

(a) No later than March 30 and September 30 of each year, every operator of amusement machines or devices operated with coins or tokens, billiard tables and cigarette-vending machines must file a biannual report with the Secretary regarding all the machines or devices he operates or rents, specifying the name and address of the operator or lessor, the brand and serial number of said machines or devices and the place or exact address where he is operating each machine or device.

The "Retailer—Fixed Location" license fees established by Section 5.001 of this chapter for the sale of cigarettes shall not apply to cigarette-vending machines.

(b) *Exclusions from the tax.*—The following shall not be bound to pay license fees established in this section:

(1) Persons who keep or have pool tables or any other coin- or token-operated amusement machine or device that are not for profit or gain and nothing is charged or collected for their use.

(2) Persons operating coin-operated machines or devices such as public telephones, coin-changing machines, postage-stamp vending machines and amusement machines for the exclusive use of children.

Oct. 8        1987 EXCISE ACT        Act No. 5

(3) Persons operating slot machines in the gaming rooms of tourist hotels pursuant to Act No. 221 of May 15, 1948, as amended.[58]

Section 5.003.—License Fees for Free-Port Stores and Sea, Air and Land Carrier Businesses.—

Any person who operates one of the businesses described below shall pay an annual tax on account of license fees for the following amount:

(A) For each store in the Free-Port Zones of air and
     sea ports                              $1,000
(B) For each air, sea or land carrier business      2,000

The license must be displayed in a place that is visible to the general public in the establishment or business for which it is granted.

For purposes of this section and the applicable provisions of this act, the following terms shall have the meaning expressed below:

(1) "Free-port zone store" shall mean any store or business established in air or sea ports engaged in the retail sale of articles exempted from the payment of excise taxes fixed by this act, to persons leaving Puerto Rico's jurisdictional limits.

(2) "Air, land or sea carrier" shall mean any person engaged in providing transportation services for pay of articles introduced from abroad. These services may include, among others, the grouping or consolidation of shipments, their distribution as well as the responsibility of transporting them from the point of entry to their final destination.

Section 5.004.—Requirements for Granting Licenses.—

Any person who wishes to obtain a license under the provisions of this chapter shall present the following, in addition to other requirements of this act or its regulations:

(1) Evidence of payment of the municipal license tax required by Act No. 113 of July 10, 1974, as amended,[59] known as the "Municipal License Tax Act."

(2) The use permit for the site where the business is to be established, duly certified by the corresponding government agency.

---

[58] 15 L.P.R.A. § 71 et seq.
[59] 21 L.P.R.A. § 651 et seq.

Act No. 5      11th SPECIAL SESSION—10th ASSEMBLY      Oct. 8

(3) The Federal Social Security account number.

(4) A certified copy of the income tax return for the taxable year prior to the one in which the petition for a license is made. In the case of partnerships or corporations, a copy of the tax return of each one of their officers shall be presented.

(5) A certificate of the criminal record of the person requesting the license. In the case of partnerships or corporations, a certificate of the criminal record of each one of their officers shall be presented.

(6) A negative tax debts certification.

The petition for a license shall be made under oath on the form provided by the Department of the Treasury for such purpose and shall be filed at the Excise Tax Bureau's District Office corresponding to the place where the business will operate. In the case of the coin-operated machines or devices referred to in Section 5.002 of this chapter, the petition for a license may be filed at the District Office corresponding to the office or main place of business of the petitioner.

Section 5.005.—Denial, Suspension or Revocation of a License.—

The Secretary may deny, suspend or revoke any license requested or issued pursuant to the provisions of this chapter of any person who does not meet the requirements of this act and of any person convicted of a felony for illegal trafficking of drugs or controlled substances, or of arms or munitions, or for having been convicted of a felony for violations of this act. Also, in the case of motor vehicle dealer's licenses or dealers vehicle parts and accessories, the Secretary may deny, suspend or revoke a license when the person has been convicted of a crime that is a violation of Act No. 8 of August 5, 1987,[60] known as the "Vehicular Property Protection Act".

Section 5.006.—License Requirements and Restrictions for Arms and Munitions Dealers—

The Secretary shall not issue a license to deal in arms and munitions to establishments located in any person's home or residence, or in any type of vehicle or mobile establishment. Nor shall he issue licenses to establishments located in the rural zone, unless there is a commercial area with the proper sites for such purposes in that zone. Furthermore, the Secretary shall not issue any license to deal in arms and munitions when the building where

---

[60] 9 L.P.R.A. § 3201 et seq.

the establishment is located does not meet the safety standards required by regulations for the protection of said arms and munitions against theft, fire, improper use or any other risk to life and property.

(a) *Inspection.*—At least once a year, the Police of Puerto Rico shall inspect the establishments engaged in dealing in arms and munitions to determine if they meet with the safety standards required by regulations. The Superintendent of the Police of Puerto Rico shall issue a certificate to the Secretary approving or disapproving the security measures taken by the dealer within ten (10) days following the date of said inspection. He shall also send a copy of the certificate to the dealer.

(b) *Arms and Munitions Depot.*—The safety measure requirements established by subsection (a) of this section shall not apply to firearm dealers who have deposited all the arms and munitions they possess for sale in the Arms and Munitions Depot established by Section 30 of Act No. 17 of January 19, 1951, as amended.[61] These merchants shall present a certificate from the Police of Puerto Rico to the Secretary certifying that all the arms they possess for sale have been turned into the Depot, in lieu of the certificate on safety measures.

(c) *Negative certificate.*—A negative safety certificate, as required by subsection (a) of this section, as well as noncompliance of any one of the safety measures by a dealer who has not deposited all the arms and munitions for sale at the Police Arms and Munitions Depot, or in his case, the lack of a Police certificate that the dealer has turned in his arms for sale at the Depot shall be sufficient cause to deny issuance or renewal of the license.

Section 5.007.—Restriction and Requirement for a Store License in Puerto Rico.—

The Secretary shall not grant any license whatsoever for a free-port business or store at airports or marine ports unless, in addition to complying with the applicable requirements of Section 5.004 of this chapter, the applicant presents a certified copy of the authorization granted by the Tourist Company to establish that type of business or store.

The authorization to open and exploit this type of business shall be granted through public bidding. Once the authorization has been granted and the exemption recognized, the concessionaire shall

---

[61] 25 L.P.R.A. § 440.

operate the business subject to the regulations adopted to such effects by the Puerto Rico Tourism Company.

Noncompliance with any provision of this section or of the applicable regulations shall be sufficient cause to revoke or deny the required license.

Section 5.008.—Restriction and Requirement for Air, Sea or Land Carrier Business.—

No license whatsoever shall be granted to operate an air, sea, or land carrier business unless, in addition to complying with the applicable requirements of Section 5.004 of this chapter, the applicant presents a copy of the rates filed at the Federal Maritime Commission to the Secretary and posts a bond to secure payment of the taxes, and any surcharges, interest or penalties that may be imposed under this act.

Section 5.009.—Transfer of License.—

No person may sell, cede, transfer or in any way transfer to another, any license obtained in accordance with the provisions of this chapter, unless such transfer is duly authorized by the Secretary, after meeting the requirements established in this chapter and the regulations adopted to administer it.

Section 5.010.—The Secretary's Authorization for Carriers for Delivery of Merchandise.—

No sea, air or land carrier who has taxable items in custody may deliver them to the consignee or person properly claiming them, unless the person presents a certificate from the Secretary authorizing its delivery. Any carrier who violates this provision shall be subject to the imposition of an administrative fine and the payment of the tax corresponding to said articles, including surcharges and interest computed from the date of introduction of the article, when the taxpayer does not make such payment. The license issued, likewise, may be suspended.

When the sea, air or land carrier is bound to deposit shipments of articles from abroad under the custody of the Federal Customs Service pursuant to applicable customs regulations, the obligation of not authorizing delivery through the Carrier's Certificate and Release Order shall rest on the carrier unless he has obtained the Secretary's certificate crediting the payment of such taxes. The sea,

Oct. 8                    **1987 EXCISE ACT**                    Act No. 5

air or land carrier that authorizes delivery of such articles through the Carrier's Certificate and Release Order without the Secretary's certificate shall be subject to the imposition of an administrative fine and payment of the corresponding taxes thereon, including surcharges and interest computed from the date of introduction of the articles.

Section 5.011.—Manufacturer's License Exemption.—

Manufacturers of articles subject to taxes fixed by this act shall be exempted from the payment of license fees required in this chapter provided their manufacturing activities are developed completely isolated from the manufacturer's premise or site in which any business, occupation or activity subject to the license fees established by this act is performed. The exemption established by this section shall not apply to manufacturers of hydraulic cement who must obtain the license required in Section 5.001 of this act.

## CHAPTER VI

## TIME, FORM OF PAYMENT AND WITHHOLDING OF TAXES

Section 6.001.—Payment of Tax on Articles Introduced from Abroad.—

In the case of articles taxed by this act that are introduced from abroad in any way, the person responsible for the payment of taxes or taxpayer shall be:

(1) The consignee, if the article is directly consigned to a consignee.

(2) The person determined by the Secretary pursuant to the transaction's economic reality when the article is sent to the order of a shipper or to an intermediary, or when the consignee is not defined. If the article is not claimed within thirty (30) days counting from the date of introduction, the taxpayer shall be the shipper.

(3) The person or member of the crew who introduces the article, when it is introduced by a person coming from abroad.

The tax on articles introduced from abroad shall be paid as established below, as the case may be:

(1) In the case of an article introduced to Puerto Rico by any means other than the mails or personally, the tax shall be paid before the taxpayer claims the article.

(2) In the case of articles introduced by mail by any person, the tax shall be paid no later than the second working day following the day the taxpayer claims the article.

(3) In the case of articles introduced by any person who arrives from abroad, the tax shall be paid no later than the second workday following the day that person arrives in Puerto Rico.

Section 6.002.—Payment of Tax On Locally Manufactured Articles.—

In the case of articles taxed by this act that are manufactured in Puerto Rico, the person responsible for payment of the tax or taxpayer shall be the manufacturer. Notwithstanding the above, when dealing with sugar or oil products manufactured in Puerto Rico and there is a mutual agreement or accord, approved by the Secretary, between the manufacturer and the bonded dealer-distributor for the latter to distribute the manufactured product, the dealer-distributor shall be the taxpayer. An unbonded sugar distributor must present a certificate that the tax was paid to receive the sugar from the manufacturer.

The tax on articles manufactured in Puerto Rico shall be paid no later than the tenth day of the month following the month in which the taxable event occurs. When dealing with sugar or oil products manufactured in Puerto Rico and there is a mutual accord or agreement between the manufacturer and the bonded dealer-distributor for the latter to distribute the manufactured product, the tax shall be paid no later than fifteen (15) days following the date the product is sold, or the date on which the manufacturer-distributor's tanks commence to move.

Section 6.003.—Payment of Tax over the Retail Sale of Jewelry.—

The person responsible for payment or taxpayer of the tax on the retail sale of jewelry articles fixed in Section 4.002 of Chapter IV of this act shall be the buyer and the tax shall be paid at the moment the purchase-sale transaction takes place.

Section 6.004.—Payment of Tax on Occupancy Rates of Hotel Rooms.—

The tax fixed by Section 4.003 of Chapter IV of this act on occupancy rates of rooms at hotels, apartment hotels, motels and boarding houses shall be paid by their occupant upon payment of the room's occupancy rate.

Section 6.005.—Payment of Tax On Public Shows.—

The taxpayer or person responsible for paying the tax on admission fees to public shows fixed in Section 4.004 of Chapter IV of this act shall be the person who attends the show in question and said person shall pay it regardless of whether the entrance fees

908

Oct. 8          1987 EXCISE ACT          Act No. 5

are truly paid, or he attends said public show through a free or courtesy ticket.

Section 6.006.—Payment of Tax on Prizes from Wagers at Racetracks.—

The tax fixed in Section 4.005 of Chapter IV of this act on prizes obtained in pools, pari-mutuels, daily doubles, subscription funds or any other wager at racetracks shall be paid personally by the winner of any prize and the total tax shall be deducted and withheld from the winnings at the time the amount corresponding to such prize is paid to him.

Section 6.007.—Payment of Tax on Printed Betting Forms for Horse Race Wagers.—

In the case of the taxes fixed in Section 4.006 of Chapter IV of this act on the official printed forms for stamping bets at racing agencies, the person responsible for their payment or taxpayer shall be the person who uses the forms. This tax shall be paid at the time the racing agent stamps the corresponding printed form.

Section 6.008.—Payment of Tax on Prizes to Horse Owners.—

The tax fixed in Section 4.007 of Chapter IV of this act on prizes obtained by horse owners in races held at racetracks in Puerto Rico shall be paid by the owner of the winning horse and the total amount of that tax shall be deducted and withheld at the time he is paid the amount corresponding to the prize.

Section 6.009.—Responsibility for Withholding Taxes.—

Every person who operates a retail jewelry business, hotel, apartment hotel, motel or guest house, and every public show impresario, as well as every person who operates a racetrack or racing agency shall have the obligation to collect, withhold and deliver the taxes fixed by Sections 4.002, 4.003, 4.004, 4.005, 4.006 and 4.007 of Chapter IV of this act to the Secretary.

These persons shall post a bond in the amount fixed by the Secretary through regulations, in order to secure the timely payment of all taxes that must be collected pursuant to this act as well as to answer for any surcharge, interest or administrative fine imposed in the event of a violation to the provisions of this act and its regulations.

Section 6.010.—Payment of Taxes by Freight Carriers.—

The Secretary may authorize air and sea freight carriers to pay the taxes on articles introduced into Puerto Rico by their clients

909

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

and to take possession of them, taking into consideration the volume
or frequency of the carrier's imports, as well as his record of
payment of excise and other taxes.

Any carrier who wishes to be authorized to pay excise taxes in
representation of his clients shall request it in writing, on the form
provided for such purposes by the Secretary, and if such authori-
zation is granted, he shall post a bond satisfactory to the Secretary
to secure the payment of all the corresponding taxes and any
surcharges, interest or administrative fines imposed for this
concept under this act. Said bond shall be posted before the
Secretary in cash, letter of credit or through a bonding company
duly authorized to post bonds under the laws of Puerto Rico.

Section 6.011.—Term to Remit the Withheld Taxes to the
Secretary.—

Any person who pursuant to Section 6.009 of this chapter is
obligated to collect and withhold taxes on the retail sale of jewelry
or on room occupancy rates in hotels, apartment hotels, motels or
guest houses shall remit the total amount of the taxes collected
during the period comprised between the first and last day of each
month to the Secretary each month. This remittance shall be
delivered no later than the tenth (10th) day of the month following
the month in which the taxes were collected.

Those persons bound to withhold and collect taxes on admission
fees to public shows shall deliver to the Secretary the total sum of
taxes collected during all shows presented from Monday through
Sunday of the preceding week no later than Tuesday of every week.
In the case of shows that are not presented regularly, the taxes
must be remitted no later than the second working day following
the date on which the show was presented.

Those persons responsible for collecting and withholding taxes on
prizes obtained from race track wagers, the official forms for
stamping bets and prizes obtained by horse owners shall remit the
total amount of the taxes collected to the Secretary no later than
the second working day following the day on which the races with
regard to which they were collected were held.

Section 6.012.—Time of Payment of License Fees.—

The license fees required in Sections 5.001, 5.002 and 5.003 of
Chapter V of this act shall be paid for the whole year to which they
correspond, not later than the first (1st) day of October of each year,
and when the taxpayer chooses to pay them in two (2) installments,

910

Oct. 8                    1987 EXCISE ACT                    Act No. 5

he shall pay them on the first (1st) day of the months of October and April of each year.

In cases of renewals, the license fees shall be paid no later than the thirty-first (31st) day of the month of October of each year, and when the taxpayer chooses to pay them in two (2) equal installments, he shall pay them no later than the thirty-first (31st) day of the months of October and April of each year.

Every person who starts any business, occupation or activity subject to payment of the license fees required by this act on or before the first (1st) day of October of any year shall pay those fees on or before the date he begins to engage in said business, occupation or activity, but only for those unexpired complete months of the year or semester as the case may be, for which the license is to be issued, including the initial month of the business, occupation or activity in question.

When the holder of a license advises the Secretary that he has ceased to operate the business, or is not engaged in the occupation or activity for which the license was issued, and the fact is confirmed by the Secretary, the proportional part of the license fees paid for the complete unexpired months shall be refunded after making the corresponding adjustments.

Section 6.013.—Discount for Payment of License Before Expiration.—

The Secretary shall grant a discount or reduction equal to ten percent (10%) of the amount of the taxes established in Sections 5.001, 5.002 and 5.003 of Chapter V of this act to every person who pays the total amount corresponding thereto, in one single payment, no later than the seventeenth (17th) day of the month of October of any year.

Section 6.014.—Manner of Paying Taxes.—

The excises, taxes or license fees fixed by this act shall be paid by check, postal or bank money order, legal tender, credit card and any other instrument of exchange, although the latter shall be subject to express acceptance by the Secretary.

When the due date for the payment of an excise, tax or any license fee is not a working day, or when the taxpayer is unable to make the payment because the Internal Revenue Collector's Offices are closed to the public during business hours, the payment shall be made on the next day said offices are open.

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

Section 6.015—Provisional Tax Payment.—

Every taxpayer who has been unable to obtain sufficient or adequate information to determine the taxable price in Puerto Rico at the moment prescribed by this act for the payment of the excise tax shall make a provisional payment thereof. The amount of this provisional payment shall be based on approximate costs in accordance with similar and recent imports or according to any other reasonable criteria which is applicable in the Secretary's judgment. In every case, the taxpayer must show, to the Secretary's full satisfaction, that he has been unable to obtain the information needed to determine the taxable price, by presenting evidence verifying the steps taken to obtain it.

The taxpayer shall be bound to make the supplementary tax payment, up to its total amount, within a period of thirty (30) days from and after the date on which he makes the provisional payment. If he does not make such supplementary payment within the term established above, the Secretary may determine the taxable price in Puerto Rico pursuant to Item (14) of Section 1.002 of Chapter I of this act.

The taxpayer shall pay surcharges and interest on the deficiency determined by the Secretary, in the form and manner provided by regulations, as the case might be. However, he shall not be bound to pay surcharges, although he will have to pay interest, when the provisional payment has been eighty percent (80%) or more of the tax owed. The Secretary shall refund any excess that results when the amount originally paid is greater than what is finally determined.

Section 6.016.—Extension for Payment of Taxes.—

The Secretary may extend the term for the payment of excise taxes on articles introduced into Puerto Rico established in this act, and authorize the introducer to take possession thereof, taking into consideration the volume or frequency of the introducer's imports, as well as his history of excise tax payments.

Every taxpayer interested in being granted an extension to pay excise taxes shall request it in writing on the form provided by the Secretary for such purposes, and if such extension is granted he must post a bond to the satisfaction of the Secretary to secure the full payment of the corresponding excise taxes and of any surcharges, interest or administrative fines imposed for not paying them within the term fixed in this act. The bond must be posted with the Secretary by means of a cash deposit, letter of credit or

912

through a company duly authorized to post bonds pursuant to the laws of Puerto Rico.

No extension for payment of excise taxes may exceed fifteen (15) days, counted from the date the introducer takes possession of the articles, if he does so before thirty (30) days have elapsed from their date of introduction. Notwithstanding what has been provided above, every duly bonded dealer-importer of vehicles shall be bound to pay excise taxes on the vehicles he introduces in Puerto Rico no later than six (6) months following their date of introduction, or within fifteen (15) days following the date of sale, or within fifteen (15) days following the date that the dealer has allowed the vehicles to be used on the public highways, whichever comes first.

Subject to prior authorization by the Secretary, any bonded dealer-importer may sell motor vehicles in his inventory to another bonded dealer without this event being considered as a taxable sale. In such case, the importing bonded dealer as well as the acquiring bonded dealer shall be bound to inform the Secretary of such transaction within the term established by Section 2.011 of Chapter II of this act. The payment of excise taxes shall be the responsibility of the bonded dealer who acquires the vehicles from the bonded importer. The sales transaction described herein shall not extend the previously provided term for payment of excise taxes on said vehicles, which shall continue to be counted from their date of introduction.

## CHAPTER VII

### CREDITS, REFUNDS, AND NOTICE OF DEFICIENCIES

Section 7.001.—Refunds of Taxes Paid in Excess or Improperly.—

When a taxpayer believes that he has paid any tax fixed by this act, or that it has been collected improperly or in excess of the amount due, he may request the Secretary for its refund in writing, within the term and pursuant to the procedure established by this act. Act No. 232 of May 10, 1949, as amended,[62] shall be used supplementarily in the procedure to claim refunds established by this act.

Any freight carrier, by air as well as by sea, authorized to pay excise taxes in advance in representation of his clients and consignees, who has posted a bond to the satisfaction of the

---

[62] 13 L.P.R.A. §§ 261, 262.

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

Secretary as security for the full payment of the taxes to such effect, may take a credit for taxes paid on returned articles, or improper or excess payments, against any tax fixed by this act then payable on demand by the carrier, and the remainder will be immediately refunded to the carrier. The Secretary may implement the granting of such credits through regulations to such effects.

In the same manner, and pursuant to the procedure established by Act 232 of May 10, 1949 as amended,[63] any taxpayer who sells a tax-exempt article to a person may request the Secretary, in writing, to refund of the amount paid no later than one hundred twenty (120) days following the sale or delivery of the article, whichever comes first.

The Secretary, motu propio, after a prior determination that the taxpayer has borne the burden of the tax payment, may grant a taxpayer the refund of any amount that in his judgment was paid illegally or improperly, or in excess of the amount owed.

No reimbursement whatsoever shall be granted unless the person shows to the satisfaction of the Secretary that he suffered the financial burden of the tax payment. Nor shall a refund be granted after four (4) years have elapsed from the date of payment of the tax, nor shall its total exceed any part that shall have been paid during the four (4) years immediately preceding the granting of the refund.

When the Secretary allows a request for a refund, or when he determines, motu propio, that the taxpayer has made an excessive or improper payment, he must investigate whether the taxpayer owes any tax debt payable under any other statutes that impose taxes and will credit the corresponding amount of the refund to said debt. Any resulting remainder, or the total tax paid in excess or improperly in cases where the taxpayer has no tax debt, shall be refunded immediately to the taxpayer.

The Secretary shall notify the taxpayer by certified mail in those cases in which he totally or partially denies a request for refund.

When the Secretary concludes that a refund has been made erroneously, he may reconsider the case and reliquidate the tax, rejecting the refund and notifying the taxpayer of a deficiency in the manner and pursuant to the procedure established in Section 7.005 of this chapter.

---

[63] Id.

914

Oct. 8        **1987 EXCISE ACT**        **Act No. 5**

Section 7.002.—Judicial Review of the Refund Denial.—

(a) *General rule.*—Any taxpayer affected by a decision of the Secretary totally or partially denying a request for a refund, or a request for credit in the cases provided in by Sections 2.005, 3.023, and 7.001, may appeal the Secretary's decision by filing a petition before the Superior Court, in the manner provided by law, within the term of thirty (30) days counted from the date the notification was deposited in the mail. Only the person who has suffered the burden of the tax payment, or his heirs, will be able to appeal before the Superior Court against a refund denial. Failure to file the petition within the term prescribed herein shall deprive the Superior Court of the faculty to consider the matter.

(b) *Limitation.*—The Superior Court shall not consider any appeal for credit or refund of any tax levied by this act unless there is a denial by the Secretary of such credit or refund, notified as provided in subsection (a) of this section. Notwithstanding what is provided in the preceding sentence, the taxpayer may file a refund or credit petition during any time after six (6) months have elapsed after filing the request for refund or credit as long as said petition has not been denied by the Secretary.

Section 7.003.—Interest on Improper or Excess Payments.—

Refunds granted administratively or judicially pursuant to this act shall accrue interest at a rate of six percent (6%) per annum on the total amount refunded computed from the date that the tax subject to refund is paid, up to a date that precedes the refund check's date for not more than thirty (30) days. The refunds granted for taxes properly paid in transactions with or by exempted persons shall not accrue interest.

The total amount of such refund with the interest plus the court costs, if any, shall be paid by the Secretary charged to the fund into which the product of such taxes was originally covered, and in the event of an insufficiency of the fund in question, or when it is not practical to prorate the refund against several funds, they shall be paid chargeable to the General Fund of the Commonwealth of Puerto Rico.

Section 7.004.—Notice of Deficiency in the Payment of Taxes.—

When the Secretary determines that there is a deficiency with regard to the payment of any of the taxes fixed by this act, he shall notify the taxpayer of the deficiency by certified mail.

Act No. 5      11th SPECIAL SESSION—10th ASSEMBLY      Oct. 8

The notice of the deficiency made in accordance with the provisions of this section and sent to the taxpayer at his last known address shall suffice for purposes of this act, regardless of whether the taxpayer is deceased, is legally disabled or it is a nonexisting partnership or corporation. Any taxpayer who is adversely affected by a deficiency determination may request a reconsideration and administrative hearing on the determination from the Secretary, in writing, within thirty (30) days following the date said notification was deposited in the mail. It shall be filed with the Department's Excise Tax Bureau. The Secretary may extend the term to request an administrative reconsideration for just cause and after a request by the taxpayer involved up to a maximum of sixty (60) days.

In the event that the reconsideration is denied, such final resolution shall be notified by certified mail. The Secretary shall inform the taxpayer in such notification of his right to appeal to the Superior Court and of the obligation to post a bond in order to exercise that right.

The Secretary shall issue a decision on the reconsideration no later than thirty (30) days after the date on which the administrative hearing is held and, if it is adverse to the taxpayer, he shall notify his final resolution of a deficiency determination by certified mail. In the notification, the Secretary shall inform the taxpayer of his right to appeal before the Superior Court and the obligation to post a bond in order to exercise such right.

Section 7.005.—Judicial Proceeding on a Deficiency Determination.—

Every taxpayer who is adversely affected by a resolution in reconsideration of a deficiency determination shall proceed against said determination by filing an appeal before the Superior Court Part corresponding to the taxpayer's residence in the manner prescribed by law, within thirty (30) days following the date of notification of the Secretary's decision. In such case, the taxpayer shall post a bond with the Secretary, together with the filing of the notice of his petition for judicial review, to secure the total of the determined deficiency plus the administrative fine, surcharges and interest that may be imposed, computed up to one (1) year after the date said deficiency is notified.

The taxpayer may choose to pay any part of the deficiency with which he is in agreement and litigate the rest. In the latter case, the bond shall not exceed the total deficiency that is litigated, plus the administrative fine, the interest and surcharges on the taxes that

Oct. 8            1987 EXCISE ACT            Act No. 5

may be imposed, computed up to one (1) year after the date on which the uncontested sum was paid.

When a taxpayer dies on or before the date that the notice of the Secretary's final determination is deposited in the mail, but before the expiration of the term to initiate the judicial appeal remedy, his heirs or legal representatives shall have a term of sixty (60) days, from the date the notification of the final deficiency determination is deposited in the mail, to appeal before the Superior Court.

Except as otherwise provided in Section 7.007 of this chapter, the final posting of bond for the sum stated by the Secretary in the final notification of determination, as well as the filing of an appeal for review within the previously established term, shall be jurisdictional requirements for the Superior Court to deal with the matter.

Section 7.006.—Procedure for the Approval of a Bond in Judicial Review.—

When the taxpayer posts bond in the amount required by this act, the Secretary must approve or reject it within ten (10) days following the date it was posted and notify the court and taxpayer of his decision thereon. The bond shall be deemed to be approved by the Secretary when he does not act on it within the term previously established or within any extension requested of the court for such purposes and granted by it.

When the Secretary rejects a bond he shall notify the court and taxpayer stating his objections to it. In such case, if the taxpayer accepts the Secretary's rejection determination, he must post a new bond within five (5) days following notification. This new bond shall also be subject to approval or rejection by the Secretary within the term previously established.

Otherwise, if the taxpayer does not agree with the Secretary's disapproval determination, he shall have a term of ten (10) days to file a writ before the court answering the Secretary's objections. Once this procedure is complied with, the court shall hold a hearing on the objections to the bond, hear the parties without passing on the merits of the deficiency and issue the resolution or order that is legally proper no later than ten (10) days following the date the hearing ended.

Section 7.007—Request for Exoneration or Bond Reduction in Judicial Review.—

In those cases in which a taxpayer is unable to post bond for the total amount required in Section 7.005 of this chapter, or is unable to post any bond whatsoever, he shall include in his petition for

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

appeal or review, a request to the court for the amount of the bond to be reduced or that he be relieved from posting it, explaining the reasons therefor. He shall simultaneously notify the Secretary of such request.

The Secretary shall file whatever objections he may have, if any, to the taxpayer's request with the court within ten (10) days from the date he is notified of the taxpayer's request for a reduction of the amount or relief from posting the bond, or within any extension requested for such purposes and granted by the court. Once these objections are filed, the court shall hold a hearing and hear the parties without passing on the merits of the deficiency notified and shall issue its resolution within ten (10) days following the date the hearing was held.

Section 7.008.—Term to Post Bond by Order of the Court; Certiorari.—

When the court determines that a taxpayer must post a bond, it shall be submitted to the Secretary within a reasonable term fixed by the court, which shall not exceed sixty (60) days counted from the date of the court's resolution. In such cases, if the court's terms, conditions and order have been met, the Secretary shall accept the bond without any further procedure.

The Superior Court's decisions as to the merits of any bond incident, as well as decisions to hear, or refusing to hear a matter because of a taxpayer's alleged failure to comply with the requirements established in this chapter so that the court may hear the matter, may be reviewed by the Supreme Court through a writ of certiorari within ten (10) days counted from the date he is notified of the decision.

Section 7.009.—Reason for Dismissal.—

When the taxpayer does not appear at any bond hearing or does not post the required bond within the prescribed term, the court may dismiss any request for revision or appeal with prejudice to the taxpayer, except those cases in which it has relieved the taxpayer from posting bond. It may also dismiss it when the taxpayer does not file his request for review or appeal within the term established in Section 7.005 or fails to comply with any of the jurisdictional requirements so that the court may intervene in the matter. In those cases in which the verdict of dismissal is issued on the basis that the taxpayer failed to post any bond required by the court by virtue of the resolution for whose revision the writ of certiorari is hereby granted, such decision to dismiss shall be final and binding.

918

Oct. 8        1987 EXCISE ACT        Act No. 5

Section 7.010.—The Superior Court's Jurisdiction to Increase Deficiency, Additional Amounts or Additions to the Tax and on Other Tax Matters.—

The Superior Court shall have the faculty to redetermine the correct amount of the deficiency even though the amount thus redetermined is greater than the total deficiency and to determine if any additional amounts should be imposed on the tax, provided the Secretary, or his representative, establishes a claim to such effects at any time before a judgment is issued.

In considering a deficiency with respect to any taxable event or a series of taxable events, the Superior Court shall consider those facts related to taxes for said other taxable event or events that are necessary to properly determine the amount of the deficiency, but, in so doing, it shall not have the power to decide whether the taxes for any other taxable event or events were overpaid or underpaid.

Section 7.011.—Appeal to the Supreme Court.—

The Superior Court's final judgments on the merits of the deficiency may be appealed to the Supreme Court, in the manner and within the term established by law to appeal or request review from the Supreme Court, also subject to the additional requirements established in this section. In those cases in which the Superior Court determines that there is a deficiency, the filing of a computation of the tax shall be ordered, and said judgment shall not be deemed final, and the term to appeal to the Supreme Court shall not begin to count for the parties until after the date of filing in the record of the notice to the taxpayer and the Secretary of the Superior Court resolution approving the computation of the determined tax.

Every taxpayer who appeals the Superior Court judgment determining a deficiency shall be bound to pay the total deficiency thus determined, within the term to appeal to the Supreme Court, and failure to comply with such payment requirement, except as provided below in this section, shall deprive the Supreme Court of the jurisdiction to consider the appeal on its merits. When the Supreme Court resolves that the deficiency determined by Superior Court or any part thereof does not exist, and it has been paid in full or in part before filing the writ of certiorari, the Secretary shall immediately refund the corresponding amount, pursuant to the Supreme Court's judgment, plus interest on the total to be refunded at a rate of six percent (6%) per annum, computed from the date of payment. This refund shall be charged to any available funds in the

919

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

Treasury. If the Secretary appeals the Superior Court judgment, or if the taxpayer, having appealed, had not paid the total tax and the Supreme Court's judgment is favorable to the Secretary, the determined deficiency, or the unpaid part thereof, shall be appraised and shall be paid upon notice and demand by the Secretary.

When a taxpayer who appeals the Superior Court judgment to the Supreme Court cannot meet the requirement to pay the deficiency, or can only pay part of it, the court may order the remedy of appeal or review to continue its normal course until its final resolution on its merits without payment of said deficiency, provided the remedy involves a substantial legal question. In such a case the taxpayer shall file, along with his appeal or review, a petition explaining the reasons for not being able to pay the total or part of the deficiency and the reasons upon which he bases his contention that the remedy involves a substantial issue at law.

When the court determines that the taxpayer cannot pay the deficiency or can only pay part of it and that the remedy involves a substantial issue at law, it may order in lieu of the total payment and according to the case:

(a) that the remedy of review or appeal continue its course under the original bond posted to appeal to the Superior Court, if it deems it is sufficient to answer for the deficiency plus the administrative fines, surcharges and interest that may be determined in due course; or

(b) that the taxpayer posts a new bond to the satisfaction of the court, to answer for the deficiency, and interest for a reasonable term; or

(c) that the taxpayer pays part of the deficiency and posts a bond for the unpaid part in any of the ways established in subsections (a) and (b) above.

When a taxpayer has been exonerated from posting bond to litigate the deficiency before the Superior Court and has shown that he cannot pay the tax nor post bond, the court may provide that the appeal shall follow its course until its final resolution on its merits without requiring any bond or payment whatsoever, if the remedy before the Supreme Court involves a substantial issue at law.

If the court determines that the taxpayer can pay all or part of the deficiency or must post a bond, he shall pay the deficiency or the determined part thereof or post the bond, whichever the case may

920

DLTS Doc#:13125-1 Filed:05/15/20 Entered:05/15/20 17:43:51 D

be, within a term of thirty (30) days counted from the date on which
he was notified of the court's resolution to such effects. Payment
of the deficiency or of the determined part thereof or the posting
of the bond within said term shall perfect the remedy of review
or appeal for all legal purposes. When the taxpayer does not meet
the payment within the term of thirty (30) days, or does not post
the required bond, or if, having posted a bond that was disallowed,
does not post another within the term granted by the Superior
Court, the Supreme Court shall not have jurisdiction to hear the
appeal on its merits.

Section 7.012.—Limited Additional Deficiencies.—

If the Secretary sends a notice of deficiency to the taxpayer and
he appears before the Superior Court within the term and in the
manner provided by this chapter, the Secretary shall not have the
power to determine any additional deficiency with respect to the
same taxable event, except in case of fraud or a deficiency
redetermination of the Superior Court made in accordance with
Section 7.010 of this chapter, or of a jeopardy assessment of the tax
under Section 7.016 of this chapter.

When the taxpayer is notified that, due to a mathematical error
in the tax return, he owes an amount in excess of what he has
declared and that an assessment of the tax has been or will be made
based on what should have been the correct total thereof, such
notification shall not be deemed as a notice of deficiency for the
purposes of this section or of Section 7.004 of this chapter. In such
case the taxpayer shall not be entitled to file an appeal against said
notice before the Superior Court and said assessment or collection
shall not be construed as prohibited by the provisions of Section
7.013 of this chapter.

Section 7.013.—Restriction to Initiate Legal Collection Proceed-
ings.—

No assessment of a deficiency shall be made with respect to the
tax levied by this act, nor shall any distraint or legal proceeding
for its collection be initiated or processed before the taxpayer is
notified of the determination referred to in Section 7.004 of this
chapter, nor until the term established by this act to appeal the
final determination before the Superior Court has expired, nor until
the court's judgment is final, if an appeal has been brought before
the Superior Court. The assessment or beginning of said distraint
or legal collection proceeding during the period which is prohibited
herein may be stayed or annulled through court action.

Act No. 5   11th SPECIAL SESSION—10th ASSEMBLY   Oct. 8

The taxpayer may waive the restrictions on the assessment and collection of all, or any part of the deficiency, at any moment through written notice to the Secretary.

Section 7.014.—Collection of the Deficiency after an Appeal to the Court.—

If the taxpayer appeals before the Superior Court against the Secretary's final determination on a deficiency, and the court holds that it has no jurisdiction or determines that a deficiency exists, the final deficiency determined by the Secretary or the one determined by the court, as the case may be, shall be assessed once the judgment is final and shall be payable upon notice and demand by the Secretary. No portion whatsoever of the sum determined by the Secretary as a deficiency that is rejected by a final judgment of the Superior Court may be assessed and collected by distraint or legal proceeding in court with or without assessment.

Section 7.015.—Extension for the Payment of Deficiencies.—

When a taxpayer shows to the Secretary's satisfaction that payment of a deficiency on the date prescribed therefor shall result in an undue setback for the taxpayer, the Secretary may grant an extension for said payment for a term that shall not exceed eighteen (18) months and, in exceptional cases, for an additional term that shall not exceed twelve (12) months. If an extension is granted, the Secretary may require the taxpayer to post a bond for a sum no greater than double the amount of the deficiency and with such collateral that is judged to be necessary to secure payment of the deficiency within the term of the extension. No extension whatsoever shall be granted if the deficiency is due to negligence, intentional disregard of the rules and regulations or fraud with the intent to evade the payment of taxes.

Section 7.016.—Jeopardy Assessment.—

When the Secretary deems that the assessment or collection of a deficiency is jeopardized by a delay in payment, he shall immediately assess said deficiency together with all the interest and amounts added to the tax provided by law, and shall make due notice and demand for payment thereof, notwithstanding what is provided by Section 7.013 of this chapter.

If the Secretary makes such assessment without notifying the taxpayer of it as required in Section 7.004 of this chapter, he shall notify him of such deficiency in the form and subject to the

Oct. 8           **1987 EXCISE ACT**           Act No. 5

provisions of said section within thirty (30) days following the date said assessment was made.

An assessment made in accordance with this section and after having notified the taxpayer of the deficiency subject to such assessment shall in no way affect the procedure established in Sections 7.004 through 7.011 of this chapter, nor shall it deprive the taxpayer of his right to file for the remedies provided therein with respect to such deficiency. When the assessment is made after an administrative hearing has been held on the deficiency subject to such assessment, but before the Secretary notifies his final determination, he shall notify the taxpayer of said final determination within thirty (30) days following the date of said assessment.

When an assessment is made under this section after the Superior Court issues a judgment on its merits, the assessment may only be made with respect to the amount of the deficiency determined by the court's judgment.

Section 7.017.—Assessable Amount Prior to Decision of the Superior Court.—

The appraisal mentioned by Section 7.016 of this chapter may be made with respect to a deficiency greater or less than that notified to the taxpayer without considering the provisions of Section 7.012 of this chapter, which prohibit the determination of additional deficiencies, and whether or not a remedy related to the notified deficiency has been filed in the Superior Court. At any time before the court's decision is issued, the Secretary may abate such assessment or any unpaid portion thereof to the extent he considers to be correct. The Secretary shall notify the court of the amount of said assessment or abatement, if the judicial appeal is filed . before the assessment is made or after it is filed, and the court shall have jurisdiction to redetermine the total sum of the deficiency and other assessed sums related to it at the same time.

Section 7.018—Bond to Stay Collection.—

When a deficiency is assessed pursuant to Section 7.016 of this chapter, the taxpayer may request a stay of the collection of the total or a portion of the sum thus assessed within ten (10) days after the Secretary's notice and demand, subject to a prior posting of a bond for an amount no greater than the sum with respect to which a stay of collection is desired, plus interest at annual rate of ten percent (10%) on said sum, computed for a term of one (1) additional year and with the collateral that the Secretary deems necessary. Such a bond will secure payment of the amount with respect to

which stay of payment is requested. This bond shall be subject to the Secretary's approval within the term established by Section 7.006 of this chapter.

The taxpayer who, pursuant to Section 7.005 of this chapter appeals to the Superior Court from the final determination of the Secretary on an assessed deficiency, shall not have to post the bond required by this act, provided that if the bond posted pursuant to the first paragraph of this section secures the total payment of the litigated tax, in the judgment of the Secretary or the court as the case may be.

When an appeal has been filed before the Superior Court from the Secretary's final determination regarding a deficiency assessed under Section 7.017 of this chapter, the unpaid sum whose collection was stayed by the bond will be collected as soon as the court determines the sum that should have been assessed by a final judgment, and any remainder of the assessment shall be cancelled. If the sum already collected exceeds the sum determined as that which should have been assessed, such excess shall be credited or reimbursed to the taxpayer pursuant to Section 7.001 of this chapter, without having to file any claim whatsoever for such excess.

The applicable provisions of Section 7.014 of this act shall rule in the event that the taxpayer appeals the Superior Court to the Supreme Court judgment on merits of a deficiency assessed pursuant to Section 7.016 of this chapter.

If the taxpayer does not appeal the Secretary's final determination on a deficiency assessed pursuant to Section 7.016 before the Superior Court, any unpaid sum whose collection was stayed by the bond shall be paid upon notice and demand of the Secretary with interest at ten percent (10%) per year computed from the date of the assessment until the date of the Secretary's notice and demand.

## CHAPTER VIII

### ADMINISTRATIVE PROVISIONS

Section 8.001.—Powers of the Secretary.—

For the purposes of the application and administration of this act and in addition to any other duties and powers established herein, the Secretary is empowered to:

(1) Examine records, documents, assets, sites, premises, inventories or any other material related to articles, transactions, businesses, occupations or activities subject to the taxes and fees

Oct. 8        **1987 EXCISE ACT**        Act No. 5

established by this act. Any person in charge of any establishment, site, premises or objects subject to examination and investigation shall facilitate any examination required by the Secretary. The fact that the owner or principal of an establishment is not present shall not be cause nor justification to prevent such examination from being carried out.

(2) Inspect baggage and articles introduced into Puerto Rico by travelers coming from abroad when there is reason to believe that they are introducing articles subject to the payment of taxes fixed by this act. This inspection or examination may be verified at any moment without the consent of the traveler, consignee of the person claiming ownership of the articles, or their carrier.

(3) Require any person to take and render an inventory as to all or certain stock of articles subject to the payment of taxes fixed by this act that are in his possession or are related to businesses or occupations subject to payment of license fees.

(4) Review the bonds posted by taxpayers pursuant to the provisions of this act from time to time, and require an increase in their total, or the posting of a new bond, when, in his judgment the bond is no longer sufficient to secure the payment of taxes plus interest, surcharges and administrative fines that may be imposed upon the bonded taxpayer.

(5) Attach the properties of any person who has not paid the taxes, surcharges, interest or administrative fines fixed pursuant to this act, in accordance with the procedures in the Political Code of Puerto Rico of 1903 [1902], as amended, for the collection of property taxes,[64] and sell them at a public auction. He may also attach and sell articles introduced in Puerto Rico that are not claimed within thirty (30) days from their date of introduction for the purpose of collecting unpaid taxes, surcharges or interest and administrative fines. Any sum collected in excess of the amount due shall be reimbursed to the taxpayer.

(6) Revoke the license of any person who fails to comply with the provision of this act or its regulations. After revocation, the Secretary may refuse to issue a new license during such period that, in his judgment, he deems necessary. This action shall not bar any other judicial or administrative procedure authorized by law.

(7) Seize and sell at public auction or destroy:

    (a) Any box or package of cigarettes or individual cigarette that lacks the identification label.

---

[64] 13 L.P.R.A. § 502 et seq.

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

(b) Any article not packaged pursuant to this act.

(c) Any vehicle, sea vessel or airship engaged in the transportation of goods on which the corresponding taxes have not been paid.

(d) Any article of use and consumption from which the serial number has been removed, altered, defaced or destroyed in any manner.

(e) Any article placed on sale at a fixed location or through itinerant sale without the seller having the corresponding internal revenue license or without being able to prove the payment of the tax established by this act.

(f) Any article introduced in Puerto Rico by any means, that is not duly described in the shipping documents, or not declared, in violation of the Secretary's requirement, prior to its removal from the point of arrival or from the custody of the carrier, whichever the case might be.

(8) Inspect the contents of any van that arrives in Puerto Rico at any time he considers it necessary and convenient, and he may at any time close, seal or bind with straps any van in order to examine the articles for use and consumption that are introduced.

(9) Place under arrest any person who is surprised in the act of violating any provision of this act or its regulations, and question and bring said person before a competent magistrate for the corresponding judicial action.

(10) Retain any document obtained or supplied pursuant to this act for as long as necessary in order to use the documents in the investigations and procedures established by this act or to be filed at the Treasury Department.

(11) Administer oaths and certify statements, income tax returns or other documents.

(12) Approve and adopt the rules and regulations that are necessary for the administration and application of this act, which shall be effective after notice to the Governor of the Commonwealth of Puerto Rico, and through the publication of a notice of their adoption in two (2) newspapers of general circulation without having to comply with the provisions of Act No. 112 of June 30, 1957, as amended, known as the "Rules and Regulations Act of 1958".[65]

---

[65] 3 L.P.R.A. §§ 1041–1059.

926

Oct. 8                    1987 EXCISE ACT                    Act No. 5

(13) Delegate such powers and duties that he deems necessary and convenient to carry out any function or authority granted him by this act, upon any officer, official or employee of the Department of the Treasury, except that of approving regulations.

(14) Limit the effect of his administrative decisions to taxable transactions after taking that action in imminently contentious cases with regard to the scope and nature of the tax or to the rate applicable to a particular article, or to other factors that affect the amount of the tax. This shall not apply to cases in which the taxpayer has passed on the tax in the sales price.

(15) Reasonably extend the term fixed by this act to carry out any duty or obligation or to take action under a conditional exemption or in another way, if, in his judgment, the imposition of the restricted term would imply a penalty or undue burden within the circumstances of each case and when the granting of the extension does not compromise the best interests of the Commonwealth of Puerto Rico, nor when there is an indication of negligence on the part of the taxpayer. The Secretary shall not exercise this discretion with regard to the terms of payment except as provided by Sections 3.018 of Chapter III and 9.011 of Chapter IX of this act. The Secretary may impose whatever conditions he considers appropriate in granting an extension of the term.

(16) Establish and authorize bonded warehouses, in those cases he considers it necessary, which shall be governed by the regulations jointly adopted by the Public Service Commission of Puerto Rico and the Department of the Treasury, and require every person who operates a bonded warehouse to post a bond for the amount he deems adequate so that he may continue in custody of taxable articles on which taxes have not been paid. This bond shall be posted in the form and term established by regulations.

(17) Contract with any taxpayer for the officers and fiscal officials of the Department to carry out the work of inspecting and supervising taxable transactions outside of working hours, and the sum collected for such services shall be covered into the funds for the operation and functioning of the Department.

(18) Appoint examiners to attend administrative hearings who will render their reports and recommendations to the Secretary. The functions and procedures of these examiners shall be established by regulations.

(19) Deny authorization to take possession of articles introduced from abroad, except when it pertains to articles excluded from assessment or exempted, in those cases in which a notice and

927

demand to pay any of the excise taxes fixed by this act has been made to the introducing taxpayer.

Section 8.002.—Confidentiality of Excise Tax Statements and Other Documents.—

The excise tax statements filed by virtue of the provisions of this act on which the Secretary has determined the imposition of taxes shall be deemed public documents and, except as established by this section, shall only be inspected in accordance to the rules and regulations adopted by the Secretary. When an excise tax statement is free for inspection by anyone, a certified copy thereof shall be issued upon request and the Secretary may charge such fees that are established by regulations for it.

No official or employee of the Department of the Treasury shall divulge or reveal the information contained in the statements, books, records or other documents examined by or furnished to the Secretary, nor shall he allow their examination or inspection by persons not legally authorized to do so under any circumstances, except according to law.

Notwithstanding what has been previously provided, the Secretary and any official or employee of the Department of the Treasury, upon a request by the Committees on Finance of the House of Representatives or the Senate of Puerto Rico, or by a Senate or House Special Committee authorized by a resolution to investigate excise tax statements, or by a Joint Committee so authorized by a joint resolution, shall furnish any information of any nature contained or expressed in any statement to said Committee in executive session. These Committees, acting directly as a Committee or through the examiners or agents it designates or appoints, shall have the power to inspect any or all statements during the time and in the manner it determines. Any information thus obtained by such a Committee shall be submitted to the Senate or the House or both Bodies jointly.

Section 8.003.—Requirement to Keep and Deliver Documents.—

There shall be an obligation to obtain those invoices or documents, keep records and deliver or transmit those documents and reports as provided by regulations, by those persons who:

(a) Are subject to payment of taxes fixed by this act or are under the obligation to withhold them.

(b) Introduce, purchase, sell, transfer, use or manufacture any article in Puerto Rico, subject to payment of excise taxes and fees established by this act.

928

(c) Operate an enterprise whose nature is that of banking, financing, insurance or credit which involves money orders, policies, invoices or other documents with regard to any article taxed by this act.

(d) Act as shipping agents, commission agents, brokers, representatives, forwarders or intermediaries or in any other capacity with respect to any article taxed by this act.

(e) Bring any article taxed by this act to Puerto Rico as sea, air, land or other type of carrier on account of shippers or on account of any consignee residing in Puerto Rico.

(f) Are subject to the payment of the license fees established by this act.

Every document, report, register, invoice, record, statement or any other one related to articles taxed by this act or to any business, occupation, transaction or activity subject to the payment of fees pursuant to it shall be kept for a term of not less than five (5) years counted from the date on which said documents are obtained or prepared.

When such documents are being audited or examined by the Secretary at the moment the five- (5-) year term expires, the taxpayer must ensure their safekeeping for the additional time necessary to finalize the Secretary's examination or audit.

The regulations to establish the norms related to the preservation of registers, invoices, statements, records and any other document shall state the type of documents, records and reports to be conserved.

Section 8.004.—Period of Limitation for the Collection of the Taxes.—

Except as provided in subsections (b) and (c) below, the amount of any of the taxes fixed by this act shall be determined by the Secretary within four (4) years following the date on which the taxpayer reports the occurrence of the taxable event through an Excise Tax Statement.

(a) The Secretary may determine the taxes at any moment when a taxpayer furnishes false or fraudulent information with the intention of evading the total or partial payment of taxes, or when he fails to report the occurrence of a taxable event.

(b) When before the expiration of the four- (4-) year term previously established, the Secretary and the taxpayer agree in writing that, once it has expired, they shall reach a determination of the amount of the taxes after such term. In that case, the tax

929

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

shall be determined at any time prior to the expiration of the additional term agreed upon. The term thus agreed upon may be extended by successive written agreements reached before the expiration of the previously agreed period.

(c) When the determination of any one of the taxes fixed by this act is made within the prescription time period which properly applies to it, the taxes may be collected through an attachment procedure or a court process provided it commences:

(1) within seven (7) years after the tax determination; or,

(2) prior to the expiration of any additional determination period agreed to in writing by the Secretary and the taxpayer before the completion of the seven- (7-) year period. The period thus agreed upon may be extended by successive agreements made before the expiration of the period previously agreed to.

Section 8.005.—Disposition of Funds.—

The product from taxes and license fees collected by virtue of this act shall be covered into the General Fund of the Treasury of Puerto Rico except as provided below:

(a) The total gasoline tax collected and four cents (4¢) of the gas oil or diesel oil tax fixed by Section 2.005 of Chapter II of this act, which shall be covered into a Special Deposit in favor of the Highways Authority for its corporate purposes. The Secretary shall transfer the sums covered into the Special Deposit from time to time and in accordance with what is agreed to with the Highways Authority, deducting from them the amounts reimbursed pursuant to the provisions of Sections 3.023 and 3.024 of Chapter III.

The Highways Authority is hereby authorized to commit or pignorate the product of the collection thus received to pay the principal and interest of bonds and other obligations, or for any other legal purposes of the Authority. Such a commitment or pignoration shall be subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico. The product of the collection shall be used solely for the payment of interest and the amortization of the public debt as provided by said Section 8 of Article VI, until the other available resources mentioned in said section become insufficient for such purposes. Otherwise, the product of such collection in the amount needed shall only be used for the payment of the principal and interest of the bonds and other obligations of the Authority and to comply with any other stipulations agreed to by it, with the holders of said bonds or other obligations.

930

Oct. 8          **1987 EXCISE ACT**          Act No. 5

The Commonwealth of Puerto Rico hereby agrees and makes a commitment with any person, firm or corporation or with any agency of the United States of America, or of any State, or of the Government of the Commonwealth of Puerto Rico, who underwrite bonds of the Highways Authority of Puerto Rico for the payment of which the product of the tax on gasoline and gas oil or diesel oil is thus pledged as authorized by this section, not to reduce the tax on gas or gas oil or diesel oil fixed by Section 2.005 of Chapter II of this act to an amount less than sixteen cents (16¢) per gallon of gasoline or four cents (4¢) per gallon of gas oil or diesel oil, respectively. Likewise, it agrees and makes a commitment not to eliminate or reduce the tax to an amount less than sixteen cents (16¢) per gallon of gasoline or four cents (4¢) per gallon of gas oil or diesel oil. It also agrees and makes a commitment that the total product of that tax shall be covered into a Special Deposit in the name and for the benefit of the Puerto Rico Highways Authority, as provided in this section, until said bonds issued at any time have been totally paid, including their interest.

In the event that the product of the gasoline or gas oil or diesel oil tax appropriated at present or in the future to the Authority pursuant to this act is at any moment insufficient to pay the principal and interest of the bonds or other obligations on money borrowed or issued by said Authority to pay the cost of traffic facilities and for whose payment the product of said tax on gasoline or gas oil or diesel oil has been pignorated, and the Authority's reserve funds for the payment of the debt requirements are applied to cover the deficiency in the sums needed to make such payments, the reserve fund amounts used to cover said deficiency shall be reimbursed to the Authority from the first product received during the next fiscal year or subsequent fiscal years by the Commonwealth of Puerto Rico arising from: (1) any other taxes in effect on any other fuel or means of propulsion used for propelling highway vehicles among other purposes; and (2) any remainder of the tax on gasoline and gas oil and diesel oil in effect.

The product from said other taxes and the remainder of the gasoline and gas oil and diesel oil tax to be used under this section's provisions to reimburse the reserve funds for the debt requirements shall not be covered into the General Fund of the Government of the Commonwealth of Puerto Rico, when collected; instead, they shall be covered into the above-mentioned Special Deposit in behalf of the Puerto Rico Highways Authority and, subject to the provisions of Section 8 of Article VI of the Constitution of the

Act No. 5   1 .h SPECIAL SESSION—10th ASSEMBLY   Oct. 8

Commonwealth of Puerto Rico,[66] shall be used to reimburse said
reserve fund for payments of the debt requirements.

(b) Those taxes on public shows fixed by Section 4.004 of Chapter
IV of this act which are collected at the Capital city's municipal
stadium shall be covered into a special account and transferred to
the municipality of San Juan by the Secretary in the term and form
he determines and for the time deemed necessary by the Secretary,
taking into account the income and expenses resulting from the
construction and operation of the park and its facilities.

(c) The taxes on public shows collected in the stadiums of the
municipalities of Ponce, Mayagüez, Caguas or Arecibo shall be
covered into a special account and transferred to the corresponding
municipality until the total of any debt or obligation incurred by
them in order to defray the cost of improvements or expansion of
these stadiums is paid. This provision shall take effect as of the date
on which the expansion or improvement works are begun. The
Sports and Recreation Secretary shall supervise and approve the
works and notify the Secretary of their starting date. For purposes
of this subsection the improvement and expansion works shall be
understood to have started once the municipal assembly of the town
in question authorizes a loan to finance the works. Such funds shall
revert to the General Fund of the Commonwealth of Puerto Rico
when the improvements and extensions are not physically begun
within a period of two (2) years counted from the date the municipal
loan is authorized.

(d) Ten percent (10%) of the product of the taxes collected on
public shows, except taxes on public shows mentioned in subsec-
tions (b) and (c) of this section and those corresponding to public
spectacles held at the "Coliseo Pachín Vicéns" in Ponce and at the
"Coliseo Roberto Clemente" in San Juan, shall be covered into a
special fund for the operating expenses of the Festival Casals Inc.,
the Puerto Rico Symphonic Orchestra Corporation, the Children's
Strings Program and the Puerto Rico Conservatory of Music
Corporation.

From time to time, the Secretary shall transfer the amounts
covered into the fund to the Musical Arts Corporation, created by
Act No. 4 of July 31, 1985, as amended,[67] to place them at the
disposal of these entities according to the applicable laws, for their

---

[66] L.P.R.A. prec. T. 1.
[67] 18 L.P.R.A. § 1165 et seq.

Oct. 8                    1987 EXCISE ACT                    Act No. 5

purposes and in the form, manner and term determined by the Secretary.

(e) Thirty percent (30%) of five-sixths (5/6) of the product of the room occupancy tax at hotels, apartment hotels, guest houses and motels fixed by Section 4.003 of Chapter IV of this act shall be covered into the General Fund of the Commonwealth of Puerto Rico. The remaining seventy percent (70%) of the five-sixths (5/6) shall be covered into the "Special Fund for Amortization and Redemption of General Obligations Evidenced by Bonds and Promissory Notes" created by Act No. 269 of May 11, 1949, as amended,[68] up to such sum which is determined annually by the Secretary as adequate and sufficient to meet the payments of the principal and interest of bonds or other obligations issued by the Recreational Development Company of Puerto Rico. When determining this sum the Secretary shall include a reasonable reserve amount. Once the above-mentioned amount is covered, from then on the product of the tax shall be covered into the "Fund for the Recreational Development of Puerto Rico" during any year in question. At least once a year, the monies in the fund shall be transferred to the Recreational Development Company to be used by it in developing its objectives. If seventy percent (70%) of the five-sixths (5/6) of this tax is less than three million dollars ($3,000,000), the Secretary shall transfer whatever sum is necessary to cover the difference between what was covered into the latter Fund and the above-mentioned amounts from the thirty percent (30%) of the five-sixths (5/6) covered into the General Fund up to where the thirty percent (30%) suffices during the year in question.

The total of the remaining sixth part of the room occupancy tax for hotels, apartment hotels, guest houses and motels shall be covered into the Puerto Rico Tourist Company funds to cover the Convention Bureau expenses in accordance with the budget previously approved by the Puerto Rico Tourist Company for the operation of the Bureau. Any income in excess of the budget approved for the Convention Bureau shall become a part of the Puerto Rico Tourist Company's general funds. Within the thirty (30) days following the receipt of the amount collected by the hosteliers, the Secretary shall remit the sum corresponding to one percent (1%) of said taxes collected to the Puerto Rico Tourist Company.

---

[68] 13 L.P.R.A. § 402 et seq.

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

(f) Five-seventeenth (5/17) parts of the tax collected on the prizes obtained from pools, quinielas, daily doubles, subscription funds and any other wager at places where races are held, other than wagers at horse tracks, as established by Section 4.005 of Chapter IV of this act, shall be covered into the Educational Fund.

(g) One-fifth (1/5) part of the product from the tax on prizes obtained by race horse owners established in Section 4.007 of Chapter IV shall be destined to the Racing Vocational School for trainers and jockeys created by Act No. 129 of July 23, 1974, as amended.[69]

(h) The funds collected by virtue of the provisions of Section 2.008 of Chapter II of this act shall be covered into a special fund by the Secretary that shall only be used to cover special appropriations by the Legislature.

## CHAPTER IX

### INTEREST, SURCHARGES AND ADMINISTRATIVE FINES

Section 9.001.—Surcharges, and Interest for Not Filing an Excise Tax Statement.—

When a taxpayer fails to file any excise tax statement required by this act within the prescribed term, a progressive surcharge shall be added to the tax, unless he demonstrates that such an omission was due to just cause and not to a voluntary neglect, equal to five percent (5%) of the total excise taxes declared if the omission is for more than thirty (30) days, and an additional five percent (5%) for each additional thirty- (30-) day period or fraction thereof for as long as the failure to pay is prolonged, without the total surcharge exceeding twenty-five percent (25%).

The sum added on as a surcharge sum shall be collected at the same time, in the same manner and as part of the tax, unless it has been paid prior to the discovery of the omission, in which case, the sum thus added shall be collected in the same manner as the tax.

Section 9.002.—Surcharges and Interest for Late Payment of Taxes.—

When a taxpayer fails to pay any excise tax or tax within the term fixed by this act, he shall pay a progressive surcharge in

---

[69] 15 L.P.R.A. § 187(9).

934

addition to such tax and as a part thereof, equal to five percent (5%) of the total tax when payment is made after thirty (30) days have elapsed from the date on which it should have been paid without exceeding sixty (60) days, or ten percent (10%) of the total tax when payment is made sixty (60) days after the date on which it should have been paid. He shall also be bound to pay interest on the total tax computed at an annual rate of ten percent (10%) on and after the date fixed for payment.

Section 9.003.—Surcharges and Interest for Late Payment of License Fees.—

When a taxpayer fails to pay license renewal fees within the term prescribed by this act, an administrative fine equal to one third of the sum owed for the year or semester shall be imposed on him and a progressive surcharge equal to five percent (5%) of the total license fees when payment is made after thirty (30) days have elapsed from the date on which they should have been paid, without exceeding sixty (60) days, or ten percent (10%) of that total when payment is made after sixty (60) days from the date on which payment should have been made. He shall also be bound to pay interest over the license fees at an annual rate of ten percent (10%) from the fixed payment date.

In cases of recidivism with regards to failure to pay license fees, or when any person has not secured a license on or before the date on which he started his business or occupation subject to it, the administrative fine shall be fifty percent (50%) of the sum owed plus interest and surcharges computed or determined in the manner previously established. This provision shall not be construed as limiting the Secretary's power to revoke the license of any person who does not pay the fees therefor, and in which case, in addition to the administrative fine for operating without a license established in Chapter V of this act, the surcharges and interest established herein shall be imposed for the period he has operated without a license.

Section 9.004.—Administrative Fine for Special Oil Tax.—

Any person who violates the provisions of Section 2.006 of Chapter II of this act related to the crude oil tax, unfinished oils or finished petroleum derived products and any other hydrocarbon mixture shall be subject to the imposition of an administrative fine of five thousand (5,000) dollars and the surcharges and interest established in Section 9.002 of this chapter.

**Act No. 5**    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

Section 9.005.—Administrative Fine for Collusion between Shipper and Consignee.—

When the Secretary has clear and convincing proof against any shipper or sender of merchandise which is taxable in Puerto Rico, which demonstrates collusion between a consignee or other person in Puerto Rico to conceal taxable items, or to mark down, or alter, deface or distort the nature of the articles introduced, or to exaggerate the real scope of the discounts, or to interpret their scope to their advantage, he shall proceed administratively against the persons who connived directly in either or both of the following ways:

(1) The person in Puerto Rico shall be required to pay the taxes, surcharges and interest and an administrative fine for a sum equal to four (4) times the taxes owed.

(2) The person outside of Puerto Rico will be required to pay the taxes, surcharges and interest and an administrative fine for a sum equal to four (4) times the taxes owed.

Section 9.006.—General Administrative Fine.—

In addition to the surcharges and interest provided in Sections 9.001, 9.002, and 9.003, the Secretary may administratively impose and collect an administrative fine, which shall not be greater than ten thousand (10,000) dollars for each infraction, from all those persons who violate any of the provisions of this act or its regulations. The amount of this fine shall be determined pursuant to the extent of the violation and no amount in excess of one thousand (1,000) dollars shall be imposed except in cases in which fraud, deceit, systematic evasion or when the commission of the forbidden act or the omission of the prescribed act could seriously compromise the effective administration of this act, all according to regulations adopted by the Secretary.

Section 9.007.—Special Administrative Fine.—

The Secretary may impose a special administrative fine for a sum of not less than fifty percent (50%) nor greater than a hundred percent (100%) of the taxes owed in lieu of the established general administrative fine prescribed in Section 9.006 of this chapter, in cases of a recividist in the violation of the provisions of this act declares a lesser quantity of articles than those introduced, transferred, sold, used, acquired or consumed; or declares a taxable price in Puerto Rico which is not in accord with the provisions of this act; or presents commercial invoices that are not authentic or

936

indicate the quantity of the articles incorrectly; or distorts the scope or nature of the discounts quoted; or systematically fails to declare any article or merchandise in which he deals and sells at a market price comparable to that of his competitors, who, in fact, pay taxes, and does not prove to the Secretary's satisfaction that his acts were due to an error in good faith or an oversight on his part.

In the cases indicated in this section, if the person voluntarily discloses the violation to the Secretary by supplying information with regard to the true amount of taxes owed, or lends his cooperation to the Department in any other way to determine the deficiency, the Secretary may treat the debt as a regular debt without imposing a special administrative fine. This voluntary disclosure benefit shall not be granted to any taxpayer who intends to avail himself of it after the investigation has been initiated and evidence pointing to fraud has been found, nor in cases in which there has been an attempt to coerce public officials, nor in cases of collusion with these officials.

Section 9.008.—Administrative Fine for Fraudulent Claim for Credit.—

Any taxpayer who knowingly presents false documents, does not conserve the required documents for the term of five (5) years, or submits any false or incorrect information for the purpose of fraudulently claiming a credit to which he is not entitled shall be subject to the imposition of an administrative fine for twice the credit claimed illegally plus the corresponding interest and surcharges. The Secretary shall not authorize this type of credit in favor of a taxpayer to whom such a fine has been imposed during a period of five (5) years.

Section 9.009.—Delivery of Articles Without the Secretary's Authorization.—

Every owner, lessee or port administrator who delivers articles introduced from abroad in contravention of the provisions of Section 2.013 of Chapter II of this act shall be bound to pay the corresponding taxes for the articles, including surcharges and interest prescribed in this act, when such payment is not made by the taxpayer. He shall also be subject to the imposition of an administrative fine pursuant to Section 9.006 of this chapter.

Section 9.010.—Administrative Fine for Presenting False Documents.—

Every person who submits any documents to the Secretary that

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

are not authentic or include amounts of articles or assets that are not exact or truthful with relation to the articles received shall be subject to the imposition of an administrative fine equal to fifty percent (50%) of the value of the merchandise introduced, in addition to the payment of the corresponding tax plus interest and surcharges. Also, and subject to the Secretary's discretion, the person shall not open any van he receives thereafter, unless he does so in the presence of a fiscal officer, who shall examine its contents together with the taxpayer, and if he does so in the absence of a fiscal officer he shall be guilty of a felony.

Section 9.011.—Relief from Interest and Surcharges.—

The Secretary, in his judgment and discretion, may relieve a taxpayer from the penalties established by Section 9.002 of this chapter and fix a new payment date under the following circumstances:

(1) When the external or internal regulations adopted by the Secretary on a specific statute have clearly misled the taxpayer with respect to the taxable condition or scope of the merchandise, product or other articles.

(2) When within two (2) years of the effectiveness of a new legal or regulatory provision, a taxpayer consults the Secretary in writing as to an interpretation of said legal or regulatory provision due to the complexity of the matter involved and the Secretary delays his answer for more than sixty (60) days from the date the consultation was received in his office.

(3) When a taxpayer proves that the effectiveness of a new legal provision or the promulgation of new regulations has altered the terms of payment in such a way that it creates a transitory confusion. This concession may only be made with regard to payments made during the first sixty (60) days of the effectiveness of the new legal provision or the regulations.

(4) When it concerns new articles on the Puerto Rican market that present reasonable doubts as to their condition, classification or taxable scope pursuant to the laws in effect, provided the taxpayer acts with due diligence and submits the information needed to determine their taxable condition, if any, to the Secretary.

(5) When the taxpayer alleges his duly grounded tax exempted status, in writing, and the Secretary delays in making a determination for more than sixty (60) days from the date that the

938

Oct. 8                    1987 EXCISE ACT                    Act No. 5

consultation was received in his office, due to the difficulty or legal complexity of the matter.

(6) When the taxpayer, because of the existence of a judicial decision favorable to his position which was subsequently revoked by the Supreme Court, did not pay the taxes based on the original decision.

(7) When the taxpayer proves that a firm and final judicial decision has extended the scope of the tax beyond former administrative practices.

(8) When the Secretary clearly and definitely induces a taxpayer to error when he consults about a contested matter that which has not been clarified up to that moment by regulations or a statement by the Secretary. In such a case, said taxpayer shall be bound to prove beyond any reasonable doubt that he acted diligently by consulting the Secretary.

## CHAPTER X

### OFFENSES AND PENALTIES

Section 10.001.—Offense for General Violations of the Act.—

Any person who does not obey any provision of this act or the regulations promulgated by virtue thereof, or any other Puerto Rican law or regulations related to internal revenue taxes, or who knowingly aids, abets or otherwise helps a person to violate these laws and regulations, shall be guilty of a misdemeanor and, upon conviction, shall be punished with the penalty established by Section 10.010 of this chapter, unless another penalty is specifically provided herein.

Section 10.002.—Offenses Related to Cigarettes.—

A person shall be guilty of a misdemeanor and, upon conviction, shall be sanctioned with imprisonment for a maximum term of six (6) months or a maximum fine of five hundred (500) dollars or both, in the discretion of the court, if said person:

(1) Boxes or packages more or less cigarettes than what the law or its regulations provide for each box or package; or,

(2) fails to affix, print or otherwise fix the label required by this act and its regulations, or deceptively affixes, prints or otherwise affixes another label, or affixes, prints or otherwise affixes to any box, package or pack containing cigarettes a label that does not include all the information nor have all the characteristics required by regulations; or,

939

Act No. 5    11th SPECIAL SESSION—10th ASSEMBLY    Oct. 8

(3) has any cigarettes in his possession or in any site or premises under his knowledge and control, and at his disposal, that have not been identified, or packaged, or on which the corresponding taxes have not been paid as required by this act; or,

(4) with the intent to commit fraud, gives, sells, buys, accepts or otherwise uses any pack of cigarettes on which the label, required by the law or the regulations promulgated by the Secretary, is not affixed.

Section 10.003.—Offense for the Destruction of the Manufacturer's Serial Number.—

Any person who knowingly purchases, sells, receives, disposes of, conceals or has in his possession any article taxed by the provisions of this act, from which the manufacturer's serial number or any other identification number, if any, has been removed, altered, covered, defaced or destroyed shall be guilty of a felony, and upon conviction, shall be sanctioned with the penalty established in Section 10.011 of this chapter.

Section 10.004.—Impersonation of Internal Revenue Agents.—

Any person who, under false pretenses, impersonates an internal revenue official, employee or agent, and as such attempts to collect, or collects taxes or license fees under this act or attempts to obtain or obtains information that taxpayers are only bound to furnish to internal revenue agents or to duly authorized fiscal officers shall be guilty of a felony and, upon conviction, shall be sanctioned with imprisonment for a fixed term of three (3) years. If there were aggravating circumstances, the established fixed term may be increased to a maximum of five (5) years; if there were extenuating circumstances it may be reduced to a minimum of two (2) years. The court may impose the established fixed term of imprisonment or a fine that shall not exceed five thousand (5,000) dollars or both penalties, at its discretion.

Section 10.005.—Offense of Forcing or Handling Locks or Straps.—

Any person who is not a duly authorized internal revenue official, employee or agent who destroys, breaks, damages or attempts to destroy; breaks or damages any lock, padlock, seal or strap placed by an internal revenue official or agent on any warehouse, van, depot, wagon, container, apparatus, room or building, or who opens the lock or door, or enters any of the places described above, shall be guilty of a felony and, upon conviction thereof, shall be

940

Oct. 8               **1987 EXCISE ACT**               Act No. 5

sanctioned with imprisonment for a fixed term of three (3) years. If there were aggravating circumstances, the established fixed penalty may be increased to a maximum of five (5) years; if there were extenuating circumstances, it may be reduced to a minimum of two (2) years. The court may impose the established fixed term of imprisonment or a fine that shall not exceed five thousand (5,000) dollars, or both penalties, at its discretion.

Section 10.006.—Offense Related to Tax Withholders.—

Any person who is bound by this act to collect, withhold, account for and pay a tax to the Secretary, who willfully fails to collect, withhold, give an exact account of and pay said tax, or who wilfully attempts to evade or defeat any tax fixed by this act or payment thereof in some way shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for a fixed term of three (3) years. If there were aggravating circumstances, the fixed penalty may be increased to a maximum of five (5) years; if there were extenuating circumstances, it may be reduced to a minimum of two (2) years. The court may impose the established fixed term of imprisonment or a fine that shall not exceed ten thousand (10,000) dollars, or both penalties, at its discretion.

Section 10.007.—Offense of Conspiracy between Shipper and Consignee.—

Every person, shipper or consignor who ships taxable merchandise to Puerto Rico and conspires with a consignee or other person in Puerto Rico to conceal taxable articles, or to reduce the quantity, alter or deface them, or to distort the nature of the articles introduced, or who conspires to exaggerate the true scope of the discounts or interpret their scope to his advantage shall be guilty of a felony and, upon conviction, shall be sanctioned with the penalty established in Section 10.011 of this chapter.

Section 10.008.—Offense Related to Articles Introduced in Vans.—

Any person who introduces articles into Puerto Rico using the van system to transport them from the dock to his warehouses, and does not submit the packing list corresponding to the articles introduced to the Secretary before removing the van from the custody of the shipping company, as required by Section 2.012 of Chapter II of this act, shall be guilty of a felony and, upon conviction, shall be sanctioned with the penalty established in Section 10.011 of this chapter.

941

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

Section 10.009.—Offenses Related to Owners, Lessees and Port Administrators.—

Any owner, lessee or port administrator who has in his custody articles taxable hereunder, who delivers them to the consignee or the person properly claiming them, without an existing authorization of the Secretary to do so, as required in Section 2.013 of Chapter II hereof, shall be guilty of a felony and, upon conviction therefor, shall be sanctioned with 'he penalty established in Section 10.011 of this chapter.

Section 10.010.—Penalties for Misdemeanors.—

In all cases of misdemeanors indicated by this act and for which no other specific penalty has been provided shall be punished with a fine of not less than five hundred (500) dollars or imprisonment for a maximum term of six (6) months, or both penalties, at the discretion of the court.

Section 10.011.—Penalties for Felonies.—

In every case of a conviction for a felony established in this act and for which no other penalty has been provided, the person convicted thereof shall be sanctioned with imprisonment for a fixed term of three (3) years. If there were aggravating circumstances, the established fixed penalty may be increased to a maximum of five (5) years; if there were extenuating circumstances, it may be reduced to a minimum of two (2) years. The court, at its discretion, may impose the established fixed penalty of imprisonment or a fine that shall not exceed one thousand (1,000) dollars.

Section 10.012.—Administrative Fine or Complaint Option.—

When a person fails to comply with the provisions of this act or its regulations, the Secretary has the option of imposing an administrative fine or filing a complaint against the infractor for the first infraction. In the event of a second infraction, the Secretary may impose an administrative fine equal to twice the amount of the fine originally imposed, or may file a complaint. If the taxpayer repeats the offense for a third time, the Secretary of the Treasury shall file a complaint against the infractor. The Secretary shall be estopped from filing a complaint for any violation when he has imposed an administrative fine and it has been met within a term of ten (10) days as of the date on which

942

Oct. 8               1987 EXCISE ACT               Act No. 5

the person is notified of the imposition. However, if the complaint is filed prior to payment of the administrative fine, the Secretary may not desist from the process, unless, in the case of a general administrative fine, the person pays a sum equal to one hundred and fifty percent (150%) of the amount of the original fine imposed, or two thousand (2,000) dollars, whichever is less. In the case of the special administrative fine established in Section 9.007 and that established in Section 9.005 of this chapter, the Secretary shall not desist from the process unless the person pays the special administrative fine in its entirety.

Section 10.013.—Felonies and Misdemeanors of Officials and Employees; Disciplinary Sanctions.—

Officials and employees of the Department of the Treasury who, while performing their duties by authority of this act, commit acts which constitute a crime as typified by the Penal Code of the Commonwealth of Puerto Rico[70] shall also be subject to the disciplinary sanctions provided by the Secretary through regulations.

## CHAPTER XI

### TRANSITORY AND FINAL PROVISIONS

Section 11.001.—Covenants, Agreements, Contracts and Regulations in Effect Prior to the Approval of this Act.—

No provision of this act shall be construed as modifying, altering, or invalidating any agreement, covenant, claim or contract, granted under Act No. 2 of January 20, 1956, as amended,[71] which is hereby repealed, and that are in effect on the effective date of this act.

All regulations adopted by virtue of said act shall continue in full force and effect until amended or repealed unless they are in conflict herewith.

Section 11.002.—Procedures Initiated Prior to the Approval of this Act.—

Any procedure, action or claim pending before the Department or any Court on the date of approval of this act, and which have been initiated pursuant to the provisions of Act No. 2 of January 20, 1956, as amended,[72] shall continue to be processed until a final

---

[70] 33 L.P.R.A. § 3001 et seq.

[71] 13 L.P.R.A. §§ 4001–4102.

[72] Id.

943

Act No. 5     11th SPECIAL SESSION—10th ASSEMBLY     Oct. 8

determination is handed down in accordance with the laws and regulations in force on the date that such procedures, actions or claims were presented or initiated.

Section 11.003.—Appropriation of Funds.—

The sum of two million (2,000,000) dollars is hereby appropriated to the Department of the Treasury from unencumbered funds in the Commonwealth Treasury to adopt the regulations and establish the systems needed to implement this act.

Section 11.004.—Repeal.—

Act No. 2 of January 20, 1956, as amended,[73] known as "The Excise Tax Act of Puerto Rico" is hereby repealed.

Section 11.005.—Effectiveness.—

This act shall take effect immediately after its approval, except for the provisions regarding the payment of license fees, which shall take effect ninety (90) days after the date of approval of this act.

*Approved October 9, 1987.*

---

Tax Amnesty

(H.B. 1270)
(Conference)

[No. 6]

[*Approved October 9, 1987*]

AN ACT

To grant to every person the option to declare and pay the taxes on income, inheritances, estates and gifts, personal property or excises that have been introduced, earned, possessed, or withheld at the source, as the case may be, and that have not been declared, without being subject to civil and criminal penalties provided in the tax laws; to allow the release from the payment of interest, surcharges, penalties and other additions to the taxes when the taxes owed are paid before February 29, 1988; to empower the Secretary of the Treasury to adopt the regulations that are necessary and convenient, and to create a special fund.

---

[73] Id.

944