# EXHIBIT N

**English Translation of *Maeso v. Chase Manhattan Bank*, 133 D.P.R. 196 (1993)**

CERTIFIED TRANSLATION

MAESO *v.* THE CHASE MANHATTAN BANK     133 D.P.R. 196

EFRAÍN, ANA ROSA, LUIS F., ILIA, AND JOSÉ G. MAESO, ETC., Plaintiffs-Appellees, *v.* THE CHASE MANHATTAN BANK (NATIONAL ASSOCIATION), Defendant-Appellant.

*Number:* RE-90-98                     *Decided: April* 29, 1993

1.  OWNERSHIP-PROPERTY IN GENERAL-OWNERSHIP RIGHTS IN GENERAL.

Section. 549 of the Civil Code, 31 L.P.R.A. sec. 1931, provides that ownership is acquired by occupancy and that said right, and other property rights are acquired and transmitted by law, by gift, by testate or intestate succession, and as a consequence of certain purchase agreements through delivery (tradition). To this it must be added that ownership may be acquired through prescription.

2.  WORDS and PHRASES:

*Title.* The legal evidence of acquisition is called title.

3.  Ibid.

*Means. Means* is the transfer of possession of the subject of the acquisition.

4.  OWNERSHIP-PROPERTY IN GENERAL-DELIVERY IN GENERAL.

Deliver [tradition] refers to a physical fact such as the surrender of the thing. The terminology in the civil law transcends this meaning and the term is used to indicate a legal effect: the delivery of possession with the intent to transmit ownership. This delivery may be simultaneous and therefore fall under the concept of payment in the broad sense, as *solutio* of a preexisting obligation or an obligation that is assumed upon the execution of the delivery deed.

5.  Ibid-Ibid-Ibid-Ibid.

Section. 1351 of the Civil Code, 31 L.P.R.A. sec. 3811, indicates two (2) ways of assuming the delivery: by possession or by deed.

6.  Ibid-Ibid-Ibid-Ibid.

In delivery by deed, ·the execution of the deed is equivalent to delivery. The consent to the contract implicitly entails that delivery is performed through the execution of the deed.

7. Ibid.-Ibid.-PROPERTY RIGHTS IN GENERAL.

The principle of *numerus apertus,* which admits the possibility of creating real rights other than those established in the Civil Code, is the governing standard in Puerto Rico in the matter of the creation of real rights.

8. Ibid-Ibid-Ibid:

It has been reiterated in case law that when rights are applied to property of another *(jus in re aliena)* the property is presumed to be free of any encumbrance or limitation, and that a restrictive interpretation should be made in the event of any doubt regarding the existence of such. ·


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

JUDGMENT entered by *Benigno Dapena-Yordan,* J. (Carolina), in which it was ruled that the provisions of the deed recorded in the Property Registry constituted a real right and that the plaintiffs' action was not time barred because it was a real action for thirty (30) years. *Reversed and the complaint is dismissed.* ·

*Roberto Lopez-Garcia,* counsel for appellant; *Melvin Rosario Rodriguez,* counsel for appellee.·

Mr. Associate Justice NEGRÓN-GARCÍA handed down the opinion of the Court.

I

On March 30, 1961, Gerardo Maeso-Birriel and other family members sold to Haydee Llabrés Vda. de Muxworthy their joint ownership shares[1] in certain parcels for $452,900 with their buildings. Since the total of the joint owners and shares of the sellers was 81.66%, their share was $369,838.14. The price was paid as follows: $14,700 upon the execution of the deed; $9,800·on September 30, 1961, and $34,300 on March 30, 1962. The balance of $311,038 14 was deferred to be satisfied in no more than ten (10) years, and a mortgage lien was constituted on the parcels for that sum in favor of the sellers.

> In the tenth clause of the deed it was covenanted:

> "TENTH: As part of the obligations and conditions of this sale the parties appearing herein AMPARO MAESO-BIRRIEL AND GERARDO MAESO-BIRRIEL will each receive a segregated lot measuring approximately Two Thousand Meters (2,000 m.) which will be designated, THAT IS TO SAY, which are not adjacent to each other, and the location of which will be mutually designated by each of them and the Buyer." Appeal, page 2.

> In the twenty-eight clause it was clarified that these parcels would have a surface area of 2,161.50m. The buyer Haydee [Llabrés] undertook that she would take the necessary steps for the segregation at the Planning Board within a month. [She] would make efforts that the parcel for Amparo Maeso-Birriel be the place where her residence is located. As for Gerardo [Birriel], the deed stated that "his parcel would be assigned in a place facing the Trujillo Bajo highway, and as close as possible to a house he owns." Fifteenth clause.

---

[1] According to Deed No. 3 executed in San Juan before the notary public [attorney] Elmer Toro-Lucchetti, two (2) of the joint owners were legally incapacitated to execute the deed. In the deed the sellers undertook that they would take all "action that might be necessary of any kind to assist the Buyer to legally and by purchase obtain the additional shares of the incapacitated [parties]…"

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

It was also covenanted that the buyer, Haydee [Llabrés], at her discretion could *cancel* the purchase and lose the money she had paid, if within two (2) years she had not obtained the reclassification of the land. As a special condition it was specified that the purchase was $2,500 per cuerda, so that it was a sale at a rate per unit of measurement. It was covenanted that the obligation of the deferred price would be solely guaranteed by the mortgage.

Finally, the twenty-third clause of the deed states:

> "The rights and obligations contained in this instrument will continue to exist with regard to any assign or successor in interest of any of the parties appearing herein."

The deed was recorded at the Property Registry. The buyer Haydee [Llabrés] fulfilled her obligation to Amparo[Birriel], but not her obligation to Gerardo [Birriel].   ·

Then, on July l, 1963 Haydee [Llabrés] joined the parcels she had acquired to another (No. 305) and sold them to James T. Barnes de Puerto Rico, Inc. In turn, this corporation sold it to Lomas de Carolina Corporation on November 23, 1968. Subsequently, on July 14, 1980. the Chase Manhattan Bank became the owner of the remainder of the parcel which was awarded to it as the result of a foreclosure of a mortgage.

On November 9, 1984, the heirs of Gerardo [Birriel] requested before the Superior Court, Carolina Division, the specific performance of the obligation that Haydee [Llabrés] had undertaken with the decedent. The complaint was brought against the Chase Manhattan Bank (Chase), owner of the parcel, on the ground that the covenanted right was a real right.

In due course, the trial court (Hon. Benigno Dapena-Yordan, Judge) ruled that the covenants of the deed that was recorded at the Property Registry constituted a real right with regard to the property in question. [The Court] found that this right entitled the plaintiffs Maeso to bring a real action for thirty (30) years, which was not time barred. [The Court] ruled in favor of the complaint and ordered Chase to deliver the parcel of land being claimed. We agreed to review this ruling.[2]

---

[2] The Chase Manhattan Bank (Chase) assigns as errors: (1) finding that a mention in the Property Registry has an effect for third parties; (2) that the obligation of constituting a real right is a real right [sic] and not a personal right; (3) imposing on it the obligation to fulfilling the personal obligation covenanted by a predecessor in title; (4) that the action was not time barred; (5) that the owners of the portions of land that were segregated from the parcel for which the personal obligation was constituted were not indispensable parties to the litigation; (6) that the defendant-appellant was more responsible than the other owners for fulfilling a personal obligation covenanted by a predecessor owner, and (7) that the fact that the decedent of the plaintiffs might have selected the land that he wanted did not mean that the complaint lacked any merit.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

## II

To determine with precision the nature of a real right is a complex task, the conclusion of which continues to elude scientific principles.[3] At first sight, the decision on this appeal would seem to require that the Court should rule on the nature of the right acquired by the decedent Gerardo [Birriel], that is to say, the legal nature of a real right as distinguishable from a personal or credit right. This is not necessary. We can define the nature of the right involved in this case without entering into this interesting debate.

As we have said, the trial court ruled that the right of Gerardo [Birriel] to receive the lot, according to the deed, was a real right. [The Court] added that it was possible to determine with precision the amount of land entailed in that obligation and the manner in which it could be fulfilled. [The Court] erred.

Basically there are two (2) possibilities for Gerardo [Birriel], the decedent in plaintiffs Maesos' case, to have acquired a real right. The first is that the deed would have conveyed the real right in respect to the lot, and the second, that the parties might have had the intention of establishing a *new* kind of real right.

In that regard, it was argued that the source of the real right would be the tenth clause. In its relevant part, it was provided that as part of the *obligations* and conditions *of this* sale that each of the parties appearing therein would each receive a segregated lot which would not be adjacent to each other and the location of which would be mutually designated by each of them and the buyer, Haydee [Llabrés].

[1] First of all, it is evident that the mere covenant between Gerardo and the buyer Haydee [Llabrés] regarding the possible location of the lot, absent its segregation, did not convey title. To acquire ownership, it was not sufficient to have the purchase agreement, it was necessary to have delivery. Section. 549 of our Civil Code provides:

> Ownership is acquired by occupancy.
> Ownership and other property rights are acquired and transmitted by law, by gift, by testate or intestate succession, and, in consequence of certain contracts, by delivery [tradition].
> It may also be acquired by prescription. 31 L.P.R.A. sec. 1931.

---

( 3 ) In the words of Professor Vazquez-Bote:

"Just as many legal institutions invoke the principle of unanimity to determine meaning, variations of opinion and tendencies of circumstances being of a secondary nature, or in more or less relevant consequences, but always of a subsequent nature, there are others that on the contrary create a lack of precision among legal scholars that even includes the criteria for finding a definition, thereby arousing serious doubts and hesitation on basic questions. This is the case with real rights, the primary problem of which is to determine their legal nature, to establish what they are, not only for systematic purposes, to distinguish a real right from other legal forms, but to first of all know what a real right actually is (Puig-Peña)." E. Vazquez-Bote, *Tratado teórico práctico y crítico de derecho privado puertorriqueño,* New Hampshire, Ed. Equity, 1991, T. VII, p. 101.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**[2-3]** This precept incorporates in our legal system the theory that the requirements of title and means must concur for there to be acquisition of ownership through a purchase agreement. Vazquez-Bote, *op. cit.,* pp. 119-120; J. Castan-Tobeñas, *Derecho civil español, común y foral,* 13th Ed., Madrid, Ed. Reus, 1987, B. 2, Vol. I, pp. 287 291; L. Diez-Picazo and A. Gullón, *Sistema de Derecho Civil,* 4th Ed. Rev., Madrid, Ed. Tecnos, 1989, Vol. III, pp. 69-70; J. Santos-Briz, *Derecho Civil: Teoria y Práctica,* Madrid, Rev. Ed.·Der. Privado, 1973, T. II, pp. 175-177. The legal evidence of acquisition is called "title," while "means" refers to "the transfer of possession" of the thing being acquired. Castan-Tobeñas, *op. cit.,* p. 289.· This transfer is simply delivery [tradition].

**[4]** In the common sense of the word, delivery refers to the physical event such as the delivery of a thing. Civil terminology transcends this meaning and the term is used to refer to a legal effect: the delivery of possession *with the intent of transferring ownership.* This delivery may be simultaneous and therefore fall under the concept of payment in the broad sense, as *solutio* of a preexisting obligation or an obligation that is assumed upon the execution of the delivery deed. J; Puig-Brutau; *Fundamentos de Derecho Civil,* 2nd Ed., Barcelona, Ed. Bosch, 1971, T. III, Vol. i, pp. 339-340.

**[5-6]** Section 135a of the Civil Code, Section 1351, alludes to the two means for (2) delivery: by possession and by deed.[4] The latter is the means we have before our consideration. In the delivery by deed, the execution of the deed is equivalent to delivery. The consent to the contract implicitly entails that delivery is performed through the execution of the deed. Of course, this equivalence between the deed and delivery is not present when "the deed itself shows that there has not been delivery." (Emphasis suppressed). Diez-Picazo and Gullón, *op. cit.,* p. 73.

According to the theory of title and means, if there is only title, there would be a personal obligation. If there is only delivery, not based on title, there would be a transfer of possession but not of the real right. Diez-Picazo and Gullón, *op. cit.,* p. 68. See Vazquez-Bote, *op. cit.,* pp. 355-356.

As has been said, the tenth clause of the deed provides that *they will receive* a lot, the location of *which would be designated.* Thus, the deed itself shows that there was no consent for the purchase agreement to be equivalent to delivery. There was no delivery, and therefore, the agreement only produces a personal obligation, a title, and not a real right. This clause definitely was *not made for the purpose of transferring a real right for the lots.* The buyer Haydee [Llabrés] simply undertook that she would deliver the lots, and act that she would perform later through an effective

---

[4] This section, equivalent to Section 1462 of the Spanish Civil Code, provides:

"A thing sold shall be considered as delivered, when it is placed in the hands and possession of the buyer. When the sale should be made by means of a public instrument, the execution thereof shall be equivalent to the delivery of the thing which is the object of the contract, if in said instrument the contrary does not appear or may be clearly inferred."

31 L.P.R.A. sec. 3811.                                                                    .

The first paragraph alludes to actual delivery, the second to delivery by deed. Vazquez-Bote, *op. cit.,* pp. 361-362; J. Castan-Tobeñas, *Derecho civil español, común y foral,* 13th Ed., Madrid, Ed. Reus, 1987, V. 2, pp. 337-338; L. Diez-Picazo and A. Gullón, *Sistema de Derecho Civil,* 4th Ed. Rev., Madrid, Ed. Tecnos, 1989, Vol. III, pp. 71-72;·J. Santos-Briz, *Derecho Civil: Teoría y Práctica,* Madrid, Ed. Rev. Der. Privado, 1973, V. II, p. 200.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

delivery with the intention of conveying ownership. There was no delivery by means of the deed.

### III

[7] It is common knowledge that in Puerto Rico with regard to real rights the governing principle is the principle of *numerus apertus* which admits the possibility of creating real rights other than those that are provided in the Civil Code. *Borges v. Registrador,* 91 D.P.R. 112, 132 (1964); *Colon v. San Patricio Corporation,* 81 D.P.R. 242, 260 (1959). Unlike the creation of credit rights, our legal system does not contain a precept that is analogous to Section 1207 of the Civil Code, L.P.R.A. Section 3372, which defines the autonomy of the will to create real rights not foreseen in the Code.

[8] Diez-Picazo and Gullón set forth the difficulties of the problem, to wit, determining whether in a specific case the parties wanted or not to constitute a real right, and they provide the following criterion to make the decision:

> So then, having recognized that there should be an autonomy of will for the creation of areal right, it is clear that there must be limits that are equivalent to those provided by law in the matter of obligation rights (Section 1.255). It is a different question to decide in a given circumstance whether the parties have wanted or not to constitute a real right. We consider that if the parties have expressly stated such a wish, what is to be seen is whether the limits of the autonomy of will have been respected. *But if the only thing that they have done is to state an empiric purpose and effect the appropriate legal instrument*, *without specifying whether the right should or should not be a real right, the interpretation to be made should restrictive with regard to real rights and favor that such are merely personal or obligational.* It is a reiterated jurisprudential principle, applicable in the sphere of the *jus in re aliena,* that a property is presumed to be free of encumbrance or limitation, and that the interpretation should be restrictive in the event of a doubt regarding the existence of such. (Emphasis supplied.) Diez-Picazo and Gullón, *op. cit.,* p. 54.

Therefore, we should examine the contract entered into by the decedent in the plaintiffs Maesos' case and the buyer Haydee [Llabrés] from this perspective.

Contrary to the conclusion of the trial court to the effect that the twenty-third clause meant that the obligation contracted by the buyer in the tenth clause was elevated to the category of a real right, there is nothing in the terms of the purchase agreement to support that that was the intention of the parties. That clause *only* provides that the rights and the obligations in the deed would continue to exist with regard to any assign or successor in interest of the parties. It is a generic clause that *refers to the purchase agreement in its entirety.* It can hardly be used to define exactly which of the rights or obligations covenanted by the parties would have the effect of a real right. In this regard, to elevate the right to the category of a real right, we must insist on clear language that is unambiguous and not susceptible to a variety of interpretations. There is no express and clear statement in the deed that the right claimed by the plaintiffs Maeso, by virtue of the tenth clause, was to have the effect of a real right.

In the full context of the entire the purchase agreement, the scope of the twenty-third clause was to advise any assign or successor in interest of the contracting parties that the *assignor had a personal obligation with regard to Mr. Maeso,* which was a part of the purchase agreement between



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

the original buyer Haydee [Llabrés] and any of her assigns or successors in interest. Whoever acquired the interests of the buyer Haydee [Llabrés] *in the purchase agreement* would do so in view of that clause, so that they could not oppose it for as long as it was in effect.[5]

In short, the situation is that the lots that the co-sellers were to receive were part of the purchase price. The payment of the price is a ·personal obligation incurred by the buyer at the time of the sales transaction.                                                               .

IV

Finally, we note that the debt of the buyer Haydee [Llabrés] was due and payable from the month of the execution of the deed. Since this is a personal action, it had a prescriptive term of fifteen·(15) years.[6] Excessive time having elapsed, the action was time barred.[7]

Judgment to reverse will be entered on the above grounds.

Mr. Associate Justice Alonso-Alonso concurred without a written opinion. Mr. Associate Justice Fuster-Berlingeri dissented without a written opinion.

TN: A cuerda is approximately 3,900 square meters.

---

[5] Public notice by the registry does not extend to the obligation set forth in the tenth clause. It should be remembered that Section. 101 of the Mortgage and Property Registry Act, 30 L.P.R.A. sec. 2351, provides:

> "Public notice by the Registry shall not extend to the mention of rights subject to separate and special registration, and said rights as well as personal rights which lack special warranty shall not be classified as liens, except for their effect on the recorded suspensive and resolutory conditions and the true transcendence of the causes that appear explicitly from the Registry on the nature and extent of the rights recorded.
> Personal rights which lack special warranty and mentions of rights subject to separate and special recording shall be cancelled by the Registrar or at the request of an interested party."

[6] We would arrive at the same decision if we found that the Chase "is not an assignee or successor in interest" of the buyer Haydee [Llabrés].

[7] This finding makes it unnecessary to consider the other assignments of error.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.