ESTADO LIBRE ASOCIADO DE PUERTO RICO                    01DE 01
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL SUPREMO

READY MIZ CONCRETE CORP                        -    PETICIONARIO

                    VS.

JAG MAINTENANCE & CONSTRUCION CORP             -    RECURRIDO

CASO: CC-2013-0396 CASO ORI.: G CD2006-0453 COBRO DE DINERO
              CASO CIR.: KLAN201201014 ------------------------------
                                    ACCION CIVIL O DELITO

GONZALEZ MONTANEZ, JAVIER
CITIBANK TOWER SUITE 601
252 PONCE DE LEON AVE
SAN JUAN,PR 00918

              N O T I F I C A C I O N
              -----------------------
CERTIFICO QUE EN RELACION CON EL/LA PETICION DE CERTIORARI
EL TRIBUNAL DICTO EL/LA SENTENCIA
QUE SE ACOMPAÑA :

SALDAÑA EGOZCUE, HECTOR [LIC.]
    EDIF BANCO POPULAR CENTER
    208 AVE PONCE DE LEON SUITE 1420
    SAN JUAN,PR 00918
LUGO FIOL CARLOS [LIC.]
    BANCO POPULAR CENTER
    208 AVE PONCE DE LEON SUITE 1420
    HATO REY,PR 00918
ORTIZ AROCHO, JUAN CARLOS [LIC.]
    122 AVE DOMENECH STE 1
    SAN JUAN,PR 00918
PROCURADOR(A) GENERAL [LIC.]
    DEPARTAMENTO DE JUSTICIA
    PO BOX 9020192
    SAN JUAN, PR 00902-0192

SAN JUAN     , PUERTO RICO A    27 DE OCTUBRE DE 2015

                        HON. AIDA I. OQUENDO GRAULAU
              -----------------------------------------
                    SECRETARIA DEL TRIBUNAL SUPREMO

              ROSALIA PABON RIVERA
              -----------------------------------------
                        SECRETARIO  AUXILIAR

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ready Mix Concrete Corp.<br><br>   Peticionario<br><br>       v.<br><br>JAG Maintenance<br>Construction Corp.<br><br>   Recurrido<br><br>Estado Libre Asociado de<br>Puerto Rico<br><br>   Recurrido | CC-2013-396 |

SENTENCIA

En San Juan, Puerto Rico, a 22 de octubre de 2015.

Nos corresponde resolver si en este caso están presentes los elementos que permiten ejercer la acción directa provista por el Art. 1489 del Código Civil, _infra_. Examinado el derecho pertinente, resolvemos en la afirmativa.

I

El 18 de diciembre de 2003, el Departamento de la Vivienda, por conducto de la Administración de Desarrollo y Mejoras de Vivienda de Puerto Rico (ADMV), y QD Painting, Inc. (QD) otorgaron el Contrato núm. 2004-628

CC-2013-396                                                          2

para la construcción de 375 unidades de vivienda, distribuidas entre los municipios de Arroyo, Salinas, Guayama, Coamo y Santa Isabel por el precio de $23,419,000.00. Se pactó en el contrato, entre otras cosas, que QD debía obtener un *Payment and Performance Bond* que afianzara el cumplimiento con todos los requerimientos del contrato[1] y que la ADMV retendría el diez por ciento (10%) de cada pago parcial realizado a QD para garantizar el cumplimiento del mismo.[2] El Contrato núm. 2004-628 se enmendó posteriormente para disponer que las 50 unidades de vivienda asignadas al Municipio de Arroyo se construirían en la Comunidad Villas de Maunabo.[3] El 9 de septiembre de 2004, QD sometió a la ADMV la primera certificación correspondiente a la construcción en la Comunidad Villas de Maunabo e incluyó una partida de $73,067.42 por concepto del *Payment and Performance Bond*.

Ese mismo mes, QD subcontrató a JAG Maintenance & Construction Corp. (JAG) para la construcción de las 50 unidades en la Comunidad Villas de Maunabo por $1,500,000.00 y ésta última contrató a Ready Mix Concrete Corp. (Ready Mix) para que supliera el hormigón premezclado. El 14 de noviembre de 2005, la ADMV canceló

---

[1] Contrato núm. 2004-628. Apéndice, págs. 97-98.
[2] Contrato núm. 2004-628. Apéndice, pág. 94.
[3] Esta enmienda tiene fecha de 18 de junio de 2004. Apéndice, págs. 106-107.

el Contrato núm. 2004-628 con QD por el alegado incumplimiento de esta última con sus obligaciones.

El 12 de septiembre de 2006, Ready Mix presentó una demanda en cobro de dinero contra la ADMV, QD, JAG, Newport Bonding and Surety Company (Newport) y otros.[4] Reclamó la cantidad de $45,175.30 por el hormigón suplido al proyecto Villas de Maunabo.[5] El tribunal autorizó que Ready Mix enmendara la demanda para añadir al Estado Libre Asociado (ELA) como parte demandada, debido a que la ADMV es una instrumentalidad del mismo. QD contestó la demanda enmendada y alegó, en esencia, que no tenía ninguna relación contractual con Ready Mix y que no le adeudaba cantidad alguna a JAG. Luego de varios trámites procesales, el tribunal dictó una sentencia sumaria parcial desestimando la demanda en cuanto a Newport, ya que se demostró que ésta no expidió una fianza para el proyecto Villas de Maunabo.

El 21 de abril de 2009, QD le solicitó al tribunal que le ordenara al ELA consignar la suma que retuvo con relación al proyecto Villas de Maunabo, la cual ascendía a $64,787.48.[6] El tribunal declaró con lugar lo solicitado. Por su parte, el ELA, en representación del Departamento de la Vivienda y de la ADMV, contestó la

---

[4] El 12 de junio de 2007, el Tribunal de Primera Instancia le anotó la rebeldía al codemandado JAG por no comparecer. Apéndice, pág. 83.
[5] También le reclamó a JAG la cantidad de $486.00 por el hormigón premezclado suplido en el proyecto Cristo Redentor, el cual no está relacionado con la ADMV.
[6] La cantidad retenida con relación al proyecto Villas de Maunabo correspondía al diez por ciento de cada pago efectuado por el ELA, según pactado en el Contrato núm. 2004-628.

demanda enmendada y negó la existencia de una relación
contractual con Ready Mix. Ese mismo día, también
presentó una moción de reconsideración en cuanto a la
consignación ordenada por el tribunal y solicitó que se
dictara sentencia sumaria a su favor. El ELA explicó que,
según el Contrato núm. 2004-628, QD tenía la obligación
de gestionar un *Payment and Performance Bond* para
asegurar el cumplimiento del proyecto Villas de Maunabo.
No obstante lo anterior, QD no gestionó la fianza, a
pesar de que se la facturó a la ADMV en la certificación
sometida el 9 de septiembre de 2004 y ésta pagó por la
misma. En consecuencia, indicó que QD le debía
$73,067.42, menos el diez porciento retenido, para un
total de $65,760.58 por la fianza que facturó, pero no
gestionó. Debido a que dicha cantidad es mayor que la
reclamada por Ready Mix concluyó que no era responsable
al amparo del Art. 1489 del Código Civil, 31 LPRA sec.
4130.

QD se opuso a lo solicitado por el ELA y pidió que
se dictara sentencia sumaria a su favor debido a que
nunca contrató con Ready Mix. Además, solicitó que el
tribunal tomara conocimiento judicial del caso
Departamento de la Vivienda v. QD Painting, Inc. y otros,
civil núm. KAC 2006-3451 (en adelante Departamento de la
Vivienda v. QD Painting), en el cual se estaban
dilucidando ciertos asuntos relacionados a la cancelación
del Contrato núm. 2004-628. Ready Mix se opuso a que se

dictara sentencia sumaria por entender que existían controversias de hecho que se debían dilucidar en un juicio plenario. También alegó por primera vez la aplicación de la doctrina de enriquecimiento injusto.

El 12 de abril de 2012, el Tribunal de Primera Instancia dictó una sentencia y determinó que no existía controversia sobre los siguientes hechos: (1) la existencia del Contrato núm. 2004-628 y del Contrato Enmendado entre la ADMV y QD para la construcción de las unidades de vivienda en la Comunidad Villas de Maunabo y en los otros municipios; (2) la existencia de un subcontrato entre QD y JAG para el proyecto Villas de Maunabo; (3) que QD le facturó y cobró a la ADMV en la primera certificación del 9 de septiembre de 2004 una partida de $73,067.42 por concepto de la fianza que nunca gestionó para garantizar la construcción en la Comunidad Villas de Maunabo, a pesar de que era un requisito contractual; (4) que JAG le requirió directamente a Ready Mix el hormigón premezclado para utilizarlo en la Comunidad Villas de Maunabo, y que Ready Mix lo suplió entre noviembre de 2004 y marzo de 2005 por la cantidad de $45,175.30; (5) que entre los meses de agosto y septiembre de 2005 Ready Mix realizó gestiones extrajudiciales ante la ADMV, el Departamento de la Vivienda, JAG y QD para el cobro del hormigón premezclado que había entregado; (6) que el 14 de noviembre de 2005 la ADMV canceló el contrato con QD y que dicha fecha

marcó el comienzo extrajudicial de las controversias y reclamaciones entre ambas partes en cuanto a la liquidación de la cantidad retenida por la ADMV.

Establecidos los hechos incontrovertidos, el tribunal aplicó el Art. 1489 del Código Civil, *supra*. Concluyó que Ready Mix suplió el hormigón premezclado para proyectos en beneficio de JAG, QD, la ADMV y del Departamento de la Vivienda y no se le había pagado por el material. Además, determinó que Ready Mix reclamó extrajudicialmente a JAG, QD, ADMV y al Departamento de la Vivienda antes de que se instaran las reclamaciones judiciales entre las codemandadas, por lo cual la demanda presentada por Ready Mix las precedía en tiempo. Asimismo, expresó que al momento de la reclamación extrajudicial de Ready Mix, la ADMV tenía una cantidad retenida que QD alega se le adeuda, por lo cual la ADMV era responsable de pagarle a Ready Mix al amparo del Art. 1489 del Código Civil, *supra*. En fin, declaró no ha lugar las mociones de sentencia sumaria presentadas por el ELA y QD y con lugar la demanda presentada por Ready Mix. Ordenó la consignación del dinero retenido por la ADMV ($64,787.48) y designó $45,175.30 de dicha cantidad para el pago a Ready Mix.[7]

Cabe mencionar que en su sentencia el foro inferior tomó conocimiento judicial del caso Departamento de la

---

[7] Asimismo, el Tribunal de Primera Instancia ordenó a JAG a pagarle $486.00 a Ready Mix por concepto de una deuda relacionada con otro proyecto entre ellos. Ese asunto no está ante nuestra consideración.

<u>Vivienda v. QD Painting, Inc.</u> sobre incumplimiento de contrato y fianza radicado el 15 de junio de 2006. En éste, el Departamento de la Vivienda demandó a QD, Newport y otros por incumplir con el Contrato núm. 2004-628 objeto de este pleito y QD reconvino.[8]

Inconforme, el ELA presentó un recurso ante el Tribunal de Apelaciones. Argumentó que el tribunal inferior erró al ordenarle a consignar el retenido del proyecto Villas de Maunabo y pagarle de esa cantidad a Ready Mix ya que no es responsable de la deuda en controversia. Ello porque cuando Ready Mix le reclamó extrajudicialmente al ELA, ya QD le debía al ELA una cantidad mayor a la retenida por concepto de la fianza que QD cobró pero nunca gestionó para la construcción en dicha comunidad.[9]

Ready Mix se opuso a la expedición del recurso y argumentó que procedía confirmar la sentencia del foro inferior ya que cuando hizo su reclamación extrajudicial, ADMV le adeudaba al contratista, QD, el retenido de $67,787.48 y no le había reclamado lo referente a la fianza. A su vez, expresó que, de no aplicar el Art. 1489

---

[8] El foro inferior también tomó conocimiento judicial del caso <u>JAG Maintenance & Construction, Corp. v. QD Painting, Inc. y otros</u>, civil núm. JAC 2006-0384, sobre incumplimiento de contrato, cobro de dinero y daños y perjuicios, radicado el 17 de marzo de 2006. En el mismo, JAG demandó a QD, Newport y otros por incumplir con dos contratos de ejecución de obras. Uno de estos contratos era el otorgado para el proyecto Villas de Maunabo. En cuanto a estos dos casos, el tribunal indicó que, a pesar de que tratan sobre hechos relacionados al caso de autos, no existe total coincidencia de partes y reclamaciones, por lo cual no deben afectar la reclamación de Ready Mix.
[9] En particular, la cantidad retenida era $64,787.48 y el ELA pagó por la fianza $65,760.67.

del Código Civil, _supra_, era de aplicación la doctrina de enriquecimiento injusto.

El 30 de noviembre de 2012, el Tribunal de Apelaciones emitió una sentencia en la que revocó la determinación del Tribunal de Primera Instancia y devolvió el caso para la continuación de los procedimientos. Destacó que de la sentencia del foro inferior no surge alguna determinación en cuanto a si la cantidad retenida por el ELA en efecto se le adeuda a QD, por lo cual existe una controversia de hecho al respecto. Debido a lo anterior, concluyó que no procede en esta etapa de los procedimientos la aplicación del Art. 1489 del Código Civil, _supra_, ya que al amparo de dicho artículo Ready Mix no puede cobrar del ELA más de lo que tendría derecho a cobrar QD y se desconoce si este último tiene derecho a cobrar algo. Al igual que el foro de instancia, el Tribunal de Apelaciones hizo referencia al caso <u>Departamento de la Vivienda v. QD Painting, Inc.</u> y señaló que si confirmaba la sentencia apelada y el ELA prevalecía en sus reclamos contra QD -en cuanto a que el dinero del retenido no se le adeudaba- estaría "adjudicando a favor de Ready Mix más derechos de los que podía oponer QD en contra del ELA".[10]

Oportunamente, Ready Mix solicitó reconsideración al Tribunal de Apelaciones. Indicó que ya no existía controversia entre el ELA y QD porque en el caso

---

[10] Sentencia del Tribunal de Apelaciones. Apéndice, pág. 13.

Departamento de la Vivienda v. QD Painting, Inc. se dictó sentencia el 2 de abril de 2012 y se decretó el archivo con perjuicio de la demanda presentada por el Departamento de la Vivienda y de la reconvención de QD.[11] En dicha sentencia se indica que las partes presentaron una moción informando una transacción mediante la cual el ELA desistiría con perjuicio de su demanda contra QD y Newport, sin imposición de costas, ni honorarios de abogado.[12] Por otro lado, el ELA le pagaría a QD $2,098,439.10 para que esta última desistiera con perjuicio de su reconvención.[13] Ready Mix argumentó que, luego del acuerdo de transacción, ya no existen reclamaciones recíprocas de dinero entre el ELA y QD en cuanto al Contrato núm. 2004-628.

El ELA ripostó y arguyó que por medio del acuerdo de transacción en el caso Departamento de la Vivienda v. QD Painting, Inc. pagó una suma global y no se indicó si parte de la misma correspondía al proyecto en la Comunidad Villas de Maunabo. Según el ELA, para que proceda la reclamación de Ready Mix se tiene que demostrar que le adeuda dinero a QD por la construcción en la Comunidad Villas de Maunabo, ya que fue para ese proyecto que Ready Mix suplió los materiales. El Tribunal

---

[11] Apéndice, págs. 21-22. Esta sentencia advino final y firme.
[12] Íd.
[13] Íd. En la sentencia se indica que ya se hizo el pago correspondiente.

de Apelaciones declaró sin lugar la moción de reconsideración.

Insatisfecho, Ready Mix presentó un recurso de *certiorari* ante este Tribunal. Alega que erró el Tribunal de Apelaciones al revocar al foro inferior bajo la premisa equivocada de que no se determinó si el ELA le adeudaba a QD, cuando esa controversia se resolvió en el caso Departamento de la Vivienda v. QD Painting, Inc. En esencia, reiteró los argumentos que presentó ante el Tribunal de Apelaciones cuando solicitó la reconsideración de la sentencia. A saber, que luego del acuerdo de transacción no existen reclamaciones recíprocas ni liquidaciones pendientes entre el ELA y QD por motivo del Contrato núm. 2004-628.

Por su parte, el ELA reconoce que la demanda presentada por el Departamento de Vivienda en el caso Departamento de la Vivienda v. QD Painting, Inc. estaba basada en el contrato otorgado entre QD y la agencia para la construcción de las unidades de vivienda. No obstante, argumenta que la sentencia que se emitió en dicho caso no tiene efecto alguno en el de autos, debido a que en la misma no se especificó qué cantidad, si alguna, de la suma pagada por el ELA correspondía al proyecto Villas de Maunabo. Por tanto, reitera que la controversia de hechos requiere, de umbral, que se determine si el ELA le debía a QD por el proyecto en el cual Ready Mix proveyó los materiales.

Expuesto lo anterior, procederemos a discutir el derecho aplicable.

## II

## A

El Art. 1489 del Código Civil, _supra_, le concede a los que ponen su trabajo y materiales en una obra realizada a precio alzado una acción directa contra el dueño de la misma. _P.R. Wire Prod. v. C. Crespo & Assoc._, 175 DPR 139, 147 (2008); _Goss, Inc. v. Dycrex Const. & Co., S.E._, 141 DPR 342, 350-351 (1996). Sin embargo, los obreros y materialistas sólo le pueden reclamar al dueño hasta la cantidad que éste adeude al contratista cuando se hace la reclamación para evitar que tenga que pagar dos veces. Art. 1489 del Código Civil, _supra_; _C. Armstrong e Hijos v. Díaz_, 95 DPR 819, 824 (1968). Este artículo proviene del Código Civil francés y es similar al Art. 1597 del Código Civil español. _R. Román & Cía v. J. Negrón Crespo, Inc._, 109 DPR 26, 29 (1979).

La acción directa que permite el referido artículo constituye una excepción a la norma de que los contratos sólo surten efecto entre los otorgantes y sus causahabientes. Art. 1209 del Código Civil, 31 LPRA sec. 3374; _P.R. Wire Prod. v. C. Crespo & Assoc._, _supra_, pág. 148; _Junco Steel Corp. v. C.E. Design Dev._, 148 DPR 272, 277 (1999); _Goss, Inc. v. Dycrex Const. & Co., S.E._, _supra_, pág. 351. Ello porque trae al contrato original entre el dueño y el contratista a un tercero que no

figuró como parte en el mismo: los obreros y materialistas que reclaman. C. Armstrong e Hijos v. Díaz, supra, pág. 824. Véase Goss, Inc. v. Dycrex Const. & Co., S.E., supra, pág. 351. La concesión de dicha acción está cimentada en consideraciones de orden público y busca propiciar el pago oportuno a los obreros y materialistas, al igual que evitar el enriquecimiento injusto del dueño por medio del fraude y la confabulación. P.R. Wire Prod. v. C. Crespo & Assoc., supra, pág. 148.

Debido a que el privilegio que concede el Art. 1489 del Código Civil, supra, no modifica la situación sustantiva que existe entre el dueño y el contratista con relación al contrato de obra, la acción está sujeta a dos limitaciones. Junco Steel Corp. v. C.E. Design Dev., supra, pág. 278; Goss, Inc. v. Dycrex Const. & Co., S.E., supra, pág. 353; R. Román & Cía v. J. Negrón Crespo, Inc., supra, págs. 31-34. La primera es que el derecho del obrero o materialista a recobrar del dueño está limitado a la cantidad que adeude el dueño al contratista bajo el contrato de construcción, al momento de hacerse la reclamación, sea ésta judicial o extrajudicial. P.R. Wire Prod. v. C. Crespo & Assoc., supra, pág. 149; Junco Steel Corp. v. C.E. Design Dev., supra, págs. 277-278; Goss, Inc. v. Dycrex Const. & Co., S.E., supra, pág. 353. La segunda limitación es que el obrero o materialista "no adquiere ante el dueño de la obra más derechos que los que tenía el contratista". Junco Steel Corp. v. C.E.

CC-2013-396                                                    13

Design Dev., *supra*, pág. 278; Goss, Inc. v. Dycrex Const.
& Co., S.E., *supra*, pág. 353. Como consecuencia,

> la cantidad adeudada está sujeta necesariamente
> a liquidación por razón de reajustes o posibles
> reclamaciones recíprocas que surjan en relación
> con la obra contratada entre el contratista
> empresario y el dueño de la misma. Sin embargo,
> tales reajustes no incluyen la variación del
> precio del contrato de construcción por
> convenio privado entre el contratista y el
> dueño de la obra en perjuicio de los que
> suministran materiales. Goss, Inc. v. Dycrex
> Const. & Co., S.E., *supra*, pág. 353.

A pesar de que la cantidad está sujeta a liquidación, el
dueño de la obra no puede oponer frente a los
materialistas una reclamación que tenga contra el
contratista por trabajos distintos, no relacionados, al
contrato de obra que dio margen a la acreencia. Goss,
Inc. v. Dycrex Const. & Co., S.E., *supra*, pág. 352.

En esencia, una reclamación al amparo de este
artículo tiene el efecto "de sustraer el importe de lo
reclamado por el obrero o materialista de las
reclamaciones de otras [sic] acreedores del contratista,
pues desde el instante en que se hace la reclamación al
dueño, éste se convierte en deudor de los obreros y
materialistas del empresario". American Surety Co. v.
Tribunal Superior, 97 DPR 452, 456 (1969). Por tanto, si
luego de que el materialista insta su reclamación contra
el dueño, éste le paga al contratista en perjuicio del
primero, comoquiera el dueño tendrá que pagarle al
materialista la cantidad requerida por el Art. 1489 del

CC-2013-396                                                                14

Código Civil, _supra_. Ello porque, como la reclamación del materialista lo convirtió en acreedor directo del dueño con prelación al contratista, no se le puede oponer dicho pago realizado posteriormente. A fines ilustrativos, este Tribunal ha expresado que

> [e]n aquellos casos, [...] en los que, al momento de realizarse la reclamación, se [sic] surgiere una disputa entre el obrero o materialista y el contratista respecto de la cantidad que este último adeudase a aquél, el dueño podrá presentar una acción de consignación, a tenor con el Art. 1130 del Código Civil, 31 L.P.R.A. sec. 3180, y la Regla 19 de Procedimiento Civil, 32 L.P.R.A. Ap. III, con notificación al contratista y al obrero o materialista. A modo de ejemplo, el dueño de una obra podrá consignar en el tribunal la cantidad extrajudicialmente reclamada, en aquellas instancias en que, mediante comunicación con el contratista, advenga en conocimiento de que este último entiende que la cuantía adeudada al obrero o materialista es menor que la cantidad reclamada por ellos. La consignación, así realizada, tendrá el efecto de evitar que el dueño de la obra, por desconocer la cantidad que adeuda el contratista al obrero o materialista, se vea obligado a pagar dos veces, esto es, al contratista y al obrero o materialista. Goss, Inc. v. Dycrex Const. & Co., S.E., _supra_, pág. 360.

Expuesto el derecho aplicable, pasemos a resolver la controversia ante nuestra consideración.

### III

Ready Mix alega que el foro apelativo intermedio erró al determinar que existía controversia en cuanto a si el ELA le debía alguna cantidad a QD al amparo del contrato. Esto porque en un pleito aparte en el cual el Departamento de Vivienda y QD estaban dilucidando sus

respectivas deudas con relación al contrato objeto de este pleito, el ELA le pagó a QD la cantidad de $2,098,439.10. Consecuentemente, no hay controversia en cuanto a que el ELA le debía dinero a QD bajo el contrato de obra para la cual Ready Mix suplió los materiales.

En particular, en el caso Departamento de la Vivienda v. QD Painting, Inc. del cual tomamos conocimiento judicial, el Departamento de Vivienda demandó a QD, Newport y otros por incumplir con los términos del Contrato núm. 2004-628. Esta demanda se presentó después de que Ready Mix reclamó extrajudicialmente el pago por los materiales. QD presentó una reconvención y argumentó que el ELA le impidió construir las unidades de vivienda para las cuales fue contratado. Solicitó una compensación en daños por $7,204,314.10, la cantidad de $2,161,294.00 por concepto de honorarios de abogado, más las costas y gastos del litigio. Tal y como se ha expresado, ese pleito culminó con una sentencia que decretó el archivo de la demanda, así como de la reconvención, con perjuicio. Surge de la sentencia que las partes llegaron a un acuerdo: el ELA desistiría con perjuicio de su demanda y le pagaría a QD $2,098,439.10, en consideración de lo cual este último desistiría con perjuicio de su reconvención. Sobre lo anterior, el ELA destaca que pagó una suma global y no se desglosó qué cantidad correspondía a cada proyecto, por lo cual todavía hay

CC-2013-396                                                                16

controversia en cuanto a si el ELA le debía a QD por el
proyecto de Villas de Maunabo. Con dicho argumento el ELA
intima que, a pesar de existir un solo contrato de obra
entre el contratista y el dueño, si la obra se divide
entre varios proyectos, cada proyecto se considera un
contrato aparte. No nos convence su planteamiento.

Según expresado anteriormente, el Art. 1489 del
Código Civil, supra, trae a los obreros y materialistas
al contrato de obra original entre el dueño y el
contratista, a pesar de no ser parte en el mismo. C.
Armstrong e Hijos v. Díaz, supra, pág. 824. Ello al
permitirle reclamarle al dueño, a pesar de no haber
contratado con éste. No obstante, la responsabilidad del
dueño está limitada a lo que le adeude al contratista,
según el contrato de construcción entre ambos. Es decir,
la parte del precio de la obra que resta por pagar la
cual, a su vez, está sujeta a liquidación por razón de
reajustes o posibles reclamaciones recíprocas. P.R. Wire
Prod. v. C. Crespo & Assoc., supra, pág. 149; Junco Steel
Corp. v. C.E. Design Dev., supra, págs. 277-278; Goss,
Inc. v. Dycrex Const. & Co., S.E., supra, pág. 353.

En consideración a lo anterior, al determinar qué
cantidad el dueño le adeuda al contratista, si alguna,
procede tomar en consideración la obra según pactada por
las partes. "[S]olamente puede actuarse en base al art.
1.597 [art. 1489 de nuestro Código Civil] cuando exista
un crédito del contratista contra el comitente [dueño]

nacido precisamente a consecuencia del contrato de ejecución de una obra para la cual aportaron su trabajo o materiales los que accionan". J. Puig Brutau, _Fundamentos de Derecho Civil_, 2da ed. rev., Barcelona, Ed. Bosch, 1982, Tomo II, Vol. II, pág. 476 citando a R. de Ángel Yagüez, _Los créditos derivados del contrato de obra: su protección legal en la legislación civil_, Madrid, Ed. Tecnos, 1969, págs. 88 y 90.

Lo determinante es el contrato original entre el dueño y el contratista. En este caso la obra pactada en el Contrato entre el ELA y QD fue la construcción de 375 unidades de vivienda distribuidas en 5 municipios.[14] Por tanto, para efectos del Art. 1489 del Código Civil, _supra_, Ready Mix aportó los materiales para la ejecución de dicha obra, acordada en un solo contrato. Siendo esto así y contrario al razonamiento del ELA, resulta innecesario desglosar la cantidad pagada por el ELA a QD en el caso _Departamento de la Vivienda v. QD Painting, Inc._ para determinar si le pagó alguna cantidad por las unidades que se iban a construir en la Comunidad Villas de Maunabo.

Atendido lo anterior, pasemos a dilucidar si el ELA tiene la obligación de pagarle a Ready Mix la cantidad reclamada por este último. En lo pertinente, si el materialista le reclama al dueño luego de que este último

---

[14] Los 5 municipios eran Maunabo, Salinas, Guayama, Coamo y Santa Isabel.

CC-2013-396

y el contratista liquidaron el contrato de obra, no tiene disponible la causa de acción que provee el Art. 1489 del Código Civil, _supra_. En este caso, el ELA y QD saldaron las contraprestaciones relacionadas al contrato de obra para el cual Ready Mix aportó sus materiales en el caso _Departamento de la Vivienda v. QD Painting, Inc._ y renunciaron a todas las reclamaciones presentes y futuras que pudieran tener entre ellas con relación a esos hechos. El pago de $2,098,439.10 realizado por el ELA por virtud del acuerdo en dicho caso nos permite concluir razonablemente que el ELA le adeudaba a QD por el Contrato núm. 2004-628.

Debido a que Ready Mix le reclamó extrajudicialmente al ELA _antes_ de que se dictara sentencia en el caso _Departamento de la Vivienda v. QD Painting, Inc._ -y por ende _antes_ de que el ELA liquidara y saldara sus contraprestaciones con QD- la cantidad que el ELA le pagó a QD con relación al contrato de obra fue en perjuicio del materialista quien reclamó oportunamente el pago por su aportación.[15] En esencia, la reclamación extrajudicial de Ready Mix tuvo el efecto de convertirlo en acreedor directo del ELA con prelación a QD. En vista de ello, no se le puede oponer a Ready Mix el pago realizado por el

---

[15] En síntesis, según la sentencia del Tribunal de Primera Instancia Ready Mix reclamó extrajudicialmente entre agosto y septiembre de 2005 y la transacción entre el ELA y QD fue en abril de 2012. Asimismo el Departamento de la Vivienda demandó a QD y a otros el 15 de junio de 2006. Se desprende que Ready Mix ejerció oportunamente la acción directa que le provee el Art. 1489 del Código Civil, _supra_.

CC-2013-396

ELA a QD y, como consecuencia, procede que el ELA le pague a Ready Mix la totalidad de lo reclamado.[16]

IV

Por lo antes expresado, se revoca la sentencia del Tribunal de Apelaciones. Se modifica la Sentencia del Tribunal de Primera Instancia y se ordena al ELA a pagarle a Ready Mix la cantidad de $45,175.30, más los intereses correspondientes. Así modificada, se reinstala la sentencia del foro inferior y se devuelve el caso para la continuación de los procedimientos conforme a lo aquí dispuesto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera García concurre con el resultado sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.



Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

---

[16] Ello también en consideración a que la cantidad pagada en ese pleito sobrepasó la cantidad reclamada por Ready Mix.



016H26502839

Hasler

$02.300

10/27/2015

Mailed From 00901

US POSTAGE

...ez Montañez, Javier

...k Tower

...01

...ce de león Ave

...n, PR 00918