# **EXHIBIT A**

# Milbank

**JOHN J. HUGHES III**

*Special Counsel*

55 Hudson Yards  |  New York, NY 10001-2163

T: 212.530.5127

Jhughes2@milbank.com  |  milbank.com

April 21, 2020

**VIA EMAIL**

| | |
|---|---|
| Elizabeth L. McKeen, Esq. | Margaret A. Dale, Esq. |
| Ashley Pavel, Esq. | Proskauer Rose LLP |
| O'Melveny & Myers LLP | Eleven Times Square |
| 610 Newport Center Drive, 17th Floor | New York, NY 10036 |
| Newport Beach, CA 92660 | |

    Re: <u>April 9, 2020 Meet and Confer: Commonwealth Assets and Cash Rule 2004 Requests</u>

Counsel:

  We write on behalf of Ambac Assurance Corporation ("<u>Ambac</u>") to memorialize and follow up on our telephonic meet-and-confer on April 9, 2020 (the "<u>April 9 Meet and Confer</u>") concerning *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* [ECF No. 9022] (the "<u>Assets Rule 2004 Motion</u>") and *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis* [ECF No. 9023] (the "<u>Cash Rule 2004 Motion</u>," and collectively with the Assets Rule 2004 Motion, the "<u>Rule 2004 Motions</u>").[1]

  During the April 9, 2020 Meet and Confer, the Parties discussed the items outstanding from the telephonic meet-and-confer held on March 16, 2020 (the "<u>March 16 Meet and Confer</u>"), the status of the proposed protective order pertaining to documents produced pursuant to the Rule 2004 Motions, and potential topics for Rule 30(b)(6) depositions. We address each item of discussion in turn.

<u>Assets Rule 2004 Motion</u>

  ***(1) Category No. 1: Assets (current and transferred/encumbered)***

- *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities*
- *A list of the Commonwealth's current assets.*

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Rule 2004 Motions.

**MILBANK LLP**

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale
April 21, 2020

During the telephonic meet-and-confer on February 25, 2020 (the "February 25 Meet and Confer"), AAFAF agreed to investigate when the Commonwealth's official inventory of real property assets was created, when it was last updated, and whether any instrumentalities did not contribute to it. During the March 16 Meet and Confer, AAFAF advised that it was still looking into Ambac's inquiries, that there does not appear to be a single document or centralized knowledge base encompassing all updates made to the inventory, that the inventory appears to have been updated in piecemeal fashion, and that AAFAF is endeavoring to piece together various documents in an effort to respond to Ambac's request. At the April 9 Meet and Confer, AAFAF advised that the status has not changed and AAFAF continues to investigate Ambac's inquiries.

During the March 16 Meet and Confer, AAFAF stated that it would consider producing valuation, alienation, and encumbrance documents related to a narrowed list of Commonwealth and instrumentality assets. Ambac provided such a list on March 16, reserving all rights to seek documents related to other assets. During the April 9 Meet and Confer, AAFAF stated that it had passed along the list of properties to relevant government agencies and is investigating what responsive documents may exist. AAFAF advised that it is not currently objecting to producing documents related to the list of properties Ambac provided, and would update Ambac if AAFAF's position changes.

Please provide an update regarding the status of AAFAF's efforts to respond to Asset Category No. 1. Ambac remains willing to meet and confer on these issues.

### *(2) Category No. 2: August 2019 Report – 23 Properties*

- *A list of, or documents sufficient to identify, the 23 properties that were indicated as sold, or to be sold by December 2019, by HTA in the August 2019 report on the implementation of HTA's certified fiscal plan.*
- *Documents sufficient to show*
  - *how those properties were identified for sale or potential sale; and*
  - *the process and protocol for soliciting and entertaining bids, and evaluating and approving a sale.*

In AAFAF's letter dated February 24, AAFAF agreed to produce non-privileged, readily accessible materials in response to Assets Category No. 2, and agreed during the February 25 Meet and Confer to provide an expected timeline for production. During the March 16 Meet and Confer, Ambac requested an update regarding the timing of AAFAF's production, and AAFAF advised that it had recently received materials from HTA and was in the process of reviewing those materials for relevance and privilege and hoped to produce them shortly. Ambac requested another update at the April 9 Meet and Confer, and AAFAF advised that it expects to begin production shortly. AAFAF further advised that its production would contain redactions of personal identifying information, and is contingent on the entry of a protective order.

The protective order was so-ordered by the Court today. Please advise when AAFAF expects to make its production.

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale
April 21, 2020

> *(3) Category No. 3: Real Property Valuation and Disposal Committee (the "__Committee__")*
>
> - *Documents sufficient to show (i) AAFAF's (or any other Commonwealth instrumentality's) authority to supervise the work of the Committee; (ii) regulations governing the formalization of disposal of Commonwealth properties, including how the properties will be made available for sale and information will be made available to interested bidders; and (iii) any other strategy by AAFAF or the Committee related to disposal of properties, including establishment of an online data base, as per recent statements of AAFAF Executive Director Omar Marrero.*
> - *Documents sufficient to identify any (i) proposals considered (whether ultimately accepted or not), (ii) transactions recently approved, and (iii) transactions currently under evaluation.*

During the February 25 Meet and Confer, AAFAF agreed to produce a list of transactions approved by the Real Property Valuation and Disposal Committee (the "__Committee__"), and advised during the April 9 Meet and Confer that its production is contingent on the entry of a protective order.

Additionally, at the February 25 Meet and Confer, AAFAF advised that it would confer internally and provide an update regarding its production of documents related to strategies, proposals, and transactions currently under consideration by the Committee, as well as documents related to Committee deliberations. During the March 16 Meet and Confer, AAFAF informed Ambac that it continued to view such documents as irrelevant but was in the process of determining whether any such documents exist and, if so, whether AAFAF would stand on its objection. At the April 9 Meet and Confer, AAFAF advised that the status has not changed and AAFAF is still ascertaining whether any potentially responsive documents exists.

Ambac looks forward to AAFAF's production of the list of transactions approved by the Committee, and requests an update regarding AAFAF's investigation of documents related to strategies, proposals, and transactions currently under consideration by the Committee and documents related to Committee deliberations.

> *(4) Category No. 4: Municipal Revenue Collection Center ("CRIM")*
>
> - *A list identifying all properties that have been foreclosed upon by the Commonwealth or its instrumentalities from January 1, 2015 to present, and which of those properties were subsequently sold by the Commonwealth (and for how much).*
> - *All guidelines or rules governing CRIM's foreclosure of private property and the process for determining whether to sell any of foreclosed-upon properties.*

During the February 25 Meet and Confer, AAFAF agreed to confer internally and update Ambac regarding whether it will produce these materials. During the March 16 Meet and Confer and April 9 Meet and Confer, AAFAF advised that the status has not changed and AAFAF continues to confer internally regarding the production of these materials.

-3-

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale
April 21, 2020

Please provide an update as to whether AAFAF will produce materials in response to Assets Category No. 4 as soon as possible. Ambac remains willing to meet and confer on these issues.

Cash Rule 2004 Motion

**(1) Category Nos. 1 and 2: Presentation and Investigation Documents**

- *All documents relied upon in connection with the 'Summary of Cash Restriction Analysis' presentation, dated October 2, 2019 and the 'Bank Account Analysis: Status Update – June 30, 2019 Balances' presentation, dated as of October 2, 2019, including documents sufficient to identify the processes and assumptions underlying the Cash Restriction Analysis and any iterative changes in the analysis over time.*
- *All documents relied upon in connection with Duff & Phelps' and/or Ernst & Young's investigation into the cash at government and fiscal plan entities, certain other Title III debtors, and UPR, including but not limited to instructions provided to Duff & Phelps and/or Ernst & Young regarding categorization and restrictions.*

On March 20, 2020, the Oversight Board began producing non-privileged factual source materials and raw data underlying the report prepared by Duff & Phelps, and made additional productions of such materials on March 27 and April 3, 2020. Ambac's review and analysis of these documents is ongoing. Ambac followed up on these productions by letter dated April 8, 2020 (the "April 8 Letter") and requested dynamic versions of summary tables included in the Cash Restriction Analysis presentation dated October 2, 2019 and the Duff & Phelps Report dated March 12, 2019, such as Excel spreadsheets or other file formats that were used to construct the summary tables. During the April 9 Meet and Confer, the Oversight Board advised that it is conferring internally regarding its response to Ambac's follow-up request, and noted that it did produce a dynamic version of the "Master Database," as defined in the Duff & Phelps report, on March 20, 2020.

During the March 16 Meet and Confer, the Oversight Board advised that some of the materials it would produce in response to Cash Category Nos. 1 and 2 contain redactions of account numbers, and agreed to provide unredacted versions of such materials if Ambac determines it needs them. During the April 9 Meet and Confer, the Oversight Board informed Ambac that the production it made on April 3, 2020 contained documents with such redactions, and reiterated its agreement to reproduce unredacted versions of these documents. The Oversight Board further advised that redactions would need to be removed manually and may delay the production process. With the understanding that removing redactions may delay the production process, Ambac does not believe it requires unredacted versions of these documents at this time. However, Ambac respectfully reserves its right to seek unredacted versions of these documents if it determines that they are necessary to facilitate Ambac's analysis of the produced documents.

In a letter to Ambac dated April 7, 2020 (the "April 7 Letter"), the Oversight Board agreed to re-produce the factual source materials and raw data underlying the October 2, 2019 presentations that were previously uploaded to the IntraLinks Data Room, and produce additional

factual source materials and raw data for the unrestricted and restricted accounts held by the Title III debtors that fell within the scope of the Oversight Board's cash analysis. During the April 9 Meet and Confer, the Oversight Board reiterated this agreement.

Ambac looks forward to receiving the Oversight Board's forthcoming productions, and requests an update regarding the Oversight Board's position on Ambac's follow-up request for dynamic versions of the summary tables contained in the Cash Restriction Analysis and Duff & Phelps Report as soon as possible. Ambac remains willing to meet and confer on these issues.

### *(2) Category No. 3: Commonwealth's Necessary Operating Expenses*

- *All documents related to the assessment of the Commonwealth's necessary operating expenses, including any analyses of whether unrestricted cash exceeds necessary operating expenses.*

In the April 7 Letter, the Oversight Board reiterated its objections to Cash Category No. 3 and advised that the Commonwealth does not perform specific analyses as to whether unrestricted cash exceeds necessary operating expenses and every item in the Commonwealth's budget is a necessary operating expense. During the April 9 Meet and Confer, Ambac explained, as it did during the March 16 Meet and Confer, that it is seeking information relating to any materials the Oversight Board may rely on in arguing that certain expenses constitute necessary operating expenses to which bondholders' claims would be subordinate. Such information would enable Ambac to assess whether it has any potential objections to plan confirmation. The Oversight Board objected to this request as plan discovery that is premature and not within the scope of Rule 2004.

Ambac disagrees with the Oversight Board's position—which appears to rehash arguments that have already been considered and rejected by the Court. As Judge Swain previously held in rejecting the Oversight Board's attempt to delay Rule 2004 discovery, Rule 2004 can be used to "gain general information regarding the debtor's financial condition (including information that may assist a creditor in evaluating a pending or anticipated plan proposal, or in formulating a negotiation or litigation strategy) while particular substantive litigation to which the Rule 2004 discovery may also be relevant is pending." *Mem. Order Denying Mot. to Strike Certain Rule 2004 Applications* at 8 (ECF No. 10332). "[T]he mere pendency of a plan proposal [does not] constitute[] initiation of a contested matter precluding the use of Rule 2004." *Id.* Therefore, "Rule 2004 discovery is the appropriate mechanism for use by creditors to obtain information concerning the financial health of the debtor at this stage of the Title III proceedings." *Id.* at 8-9; *see also In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d 66, 72 (D.P.R. 2018) (Dein, M.J.) ("Rule 2004 allows for the discovery of information regarding 'the liabilities and financial condition of the debtor.'" (quoting Fed. R. Bank. P. 2004(b)), *remanded on other grounds*, No. 17 BK 3283-LTS, 2018 WL 9708897 (D.P.R. Apr. 24, 2018). Ambac's request for information that will allow it to assess potential objections to plan confirmation is consistent with the use of Rule 2004 in the First Circuit. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d at 69, 73 (ordering production, pursuant to Rule 2004, of nonprivileged "information related to the prior and ongoing development of fiscal plans" because such information is "important for [movants] to have so that they can assess the financial condition of the debtor and participate in a plan confirmation process.").

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale
April 21, 2020

  The Oversight Board also asserted that the Commonwealth does not perform specific analyses as to whether unrestricted cash exceeds necessary operating expenses. Ambac questioned that representation, noting that the "Bank Account Analysis: Status Update – June 30, 2019 Balances" presentation, dated as of October 2, 2019 (the "Bank Account Analysis") specifically contemplated that the Oversight Board would be analyzing that issue. In particular, the Bank Account Analysis discussed "the steps necessary to conduct an Independent Review Process in relation to the Government's cash position[,]" including, *inter alia*, a review of whether "excess unrestricted cash exists in bank accounts of the major component units" and, if so, a "determin[ation] if such unrestricted cash exceeds necessary operating expenses[.]" *See* Bank Account Analysis at 6; *see also Informative Motion Regarding the Disclosure of Cash Balances of Puerto Rico Government Entities* at 2 (ECF No. 2120) (laying out a "five-step independent accounting process . . . . to achieve a comprehensive model of the Government's cash position[,]" including a determination of whether "unrestricted cash exceeds necessary operating expenses.").

  Please provide an update regarding the Government Parties' position with regard to Cash Category No. 3. Ambac remains willing to meet and confer on these issues.

### (3) Category No. 4: Document Key

- *A "key" to the documents produced that would allow parties to replicate the cash restriction analysis performed in connection with the presentations described above, including the relevant identifying information for each document (i.e., Bates numbers).*

  During the March 16 Meet and Confer, the Oversight Board advised that it believes the "Master Database," as defined in the Duff & Phelps Report, would enable Ambac to reproduce any analysis that the Oversight Board produces, and agreed to further confer with Ambac if Ambac is unable to use the "Master Database" in this way. The "Master Database" was produced on March 20, and Ambac's review and analysis is ongoing. Ambac will provide an update regarding its position with regard to whether the "Master Database" is sufficient to satisfy Cash Category No. 4.

Rule 30(b)(6) Depositions

  In its April 7 Letter, the Government Parties requested that Ambac provide a list of topics as to which it seeks Rule 30(b)(6) testimony. In the interest of advancing the Parties' negotiations regarding the propriety and scope of Rule 30(b)(6) depositions, Ambac provided a preliminary list of deposition topics in its April 8 Letter. During the April 9 Meet and Confer, Ambac provided additional context regarding this list. The Government Parties advised that they have not yet had an opportunity to review Ambac's preliminary list of deposition topics and would consider the proposed topics further.

  Please provide an update regarding the Government Parties' position on the list of preliminary topics Ambac provided in its April 8 Letter as soon as possible. Ambac remains willing to meet and confer on these issues.

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale
April 21, 2020

Very truly yours,


/s/ *John J. Hughes, III*
John J. Hughes, III


cc:    Grant Mainland
       Atara Miller
       Elizabeth L. McKeen
       Laura Stafford
       Martin A. Sosland
       Robert S. Berezin
       William Natbony
       Nicholas A. Bassett
       John E. Mudd