# **EXHIBIT B**

 Proskauer Rose LLP  Eleven Times Square  New York, NY 10036-8299

May 11, 2020

Margaret A. Dale
Member of the Firm
d +1.212.969.3315
f 212.969.2900
mdale@proskauer.com
www.proskauer.com

**VIA E-MAIL**
John J. Hughes III, Esq.
Milbank LLP
55 Hudson Yards
New York, NY 10001-2163

Re: **Commonwealth Cash Rule 2004 Requests**

Counsel:

I write in response to your April 21, 2020 letter and to address the parties' recent meet and confer discussions, including the meet and confer held on May 11, 2020.

> 1. ***Categories 1 and 2 (Documents relied upon in connection with certain October 2, 2019 presentations and in connection with Duff & Phelps' and/or Ernst & Young's investigations).***

The Oversight Board understands that Ambac has requested "dynamic versions of summary tables" included in the Cash Restriction Analysis presentation dated October 2, 2019, and the Duff & Phelps Report dated March 12, 2019. With respect to summary tables in the Duff & Phelps Report, as discussed during the parties' April 9 meet and confer, the Oversight Board has produced a dynamic version of the "Master Database," as defined in the Duff & Phelps Report, in Excel spreadsheet format. Furthermore, as discussed during the May 11 meet and confer, the Oversight Board has also confirmed that the Excel spreadsheet containing the "Master Database," as well as all Excel spreadsheets that have otherwise been produced in connection with the Duff & Phelps report, are not locked for editing, do not contain hidden cells or contents (aside from redacted personal identifying information or bank account numbers), and contain visible formulas and other data. In light of this, the Oversight Board is not clear what additional "dynamic versions of summary tables" Ambac requests with respect to the Duff & Phelps Report. The Oversight Board understands that Ambac is in the process of reviewing the Master Database and other Excel spreadsheets produced in connection with the Duff & Phelps Report and will let the Oversight Board know if it has any follow-up questions regarding these spreadsheets, including whether it still requires "dynamic versions" of any such documents. If it does, the Oversight Board remains willing to meet and confer further with Ambac regarding this request.

As the parties have discussed, many of the remaining factual source materials and raw data underlying the Duff & Phelps Report that the Oversight Board has not yet produced contain redactions. As confirmed on the May 11 meet and confer, Ambac does not require unredacted versions of these documents at this time, and the Oversight Board intends to produce the

**Proskauer**

May 11, 2020
Page 2

remaining factual source materials and raw data underlying the Duff & Phelps Report with such redactions in place in the coming weeks.

With respect to the October 2 presentations, as discussed on the May 11 meet and confer, the Oversight Board is in the process of identifying the factual source materials and raw data that were previously uploaded to the IntraLinks Data Room, and is beginning its review of the additional factual source materials and raw data for the unrestricted and restricted accounts held by the Title III debtors that fell within the scope of the Oversight Board's cash analysis. In connection with that review, the Oversight Board will endeavor to identify and produce any non-privileged dynamic versions of the summary tables in the October 2 presentations that may exist. The Oversight Board expects to be able to commence rolling productions of these materials by the end of the month.

> 2. **Category 3 (Documents related to the Commonwealth's necessary operating expenses).**

The Oversight Board has repeatedly stated that this request is overbroad, unduly burdensome, and inappropriate insofar as it seeks discovery into the Oversight Board's certification determinations. Indeed, Category 3 is identical to Ambac's initial Cash Request for Production No. 3, despite the Court's admonition that Ambac's motions "are sweepingly broad and impose an objectively unreasonable burden," and its expectation that the parties "identify parameters for disclosure that are substantially narrower than the requests set forth in the" Cash and Asset Rule 2004 Motions. *Mem. Order Denying Motion to Strike Certain Rule 2004 Applications* at 9.

Ambac's response in its April 21, 2020 letter simply reiterates that Rule 2004 entitles it to discovery into the financial condition of the Debtors. As the Oversight Board explained on the May 11 meet and confer, Ambac has not addressed the Oversight Board's concerns that this request, as drafted, is overbroad, unduly burdensome, and an improper attempt to seek discovery into the Board's certification determinations, which are not subject to review pursuant to PROMESA § 106(e).

Moreover, as we have explained, the Oversight Board does not perform specific analyses of "whether unrestricted cash exceeds necessary operating expenses." As discussed on the May 11 meet and confer, the "Bank Account Analysis: Status Update – June 30, 2019" presentation, dated October 2, 2019 (the "Bank Account Analysis"), is consistent with that representation, Ambac's assertions to the contrary notwithstanding. The Bank Account Analysis refers to an informative motion filed by AAFAF with the Title III Court in 2017 in which AAFAF (and not the Oversight Board) stated that it was considering developing an independent review process to analyze "whether unrestricted cash exceeds necessary operating expenses." We understand that after the Duff & Phelps investigation was announced, in order to conserve government resources, AAFAF decided not to conduct its own separate investigation. The Oversight Board never represented that it would undertake such an analysis, and it has not done so.

Accordingly, the Oversight Board reiterates that it remains willing to discuss this request if Ambac agrees to narrow it to a proper scope.

Proskauer»

May 11, 2020
Page 3

    3. *Category 4 ("Key" to documents regarding cash restriction analysis).*

As discussed on the May 11 meet and confer, Ambac is still in the process of reviewing the Master Database, and will confirm with the Oversight Board whether that document satisfies Ambac's request for a key to documents regarding the cash restriction analysis performed in the Duff & Phelps Report. Again, however, for clarity, the Oversight Board anticipates the "Master Database" produced on March 20 will assist Ambac in reviewing the documents that underlay the Duff & Phelps Report. The Oversight Board remains willing to meet and confer regarding this request with respect to the Oversight Board's production of materials underlying the October 2 presentations, to the extent Ambac believes such a "key" is necessary following its review of those productions.

    4. *30(b)(6) Depositions.*

Thank you for agreeing to defer further discussion regarding Rule 30(b)(6) deposition topics until the Oversight Board has produced additional documents, and Ambac has had an opportunity to review such productions. As the Oversight Board explained on the May 11 meet and confer, the topics in your April 8, 2020 letter, as drafted, are exceedingly broad and would impose an undue burden on the Oversight Board. The Oversight Board accordingly believes it would be most efficient for Ambac to target its proposed deposition topics to any questions remaining after it has reviewed the Oversight Board's productions. In addition, as counsel for AAFAF mentioned on the May 11 meet and confer, it may be more efficient and productive for the parties to resolve any questions Ambac may have via correspondence, rather than incurring the expense of a Rule 30(b)(6) deposition. The Oversight Board reserves all its rights to object to Ambac's request for Rule 30(b)(6) testimony on any ground whatsoever.

Sincerely,

*Margaret A. Dale*

Margaret A. Dale, Esq.