# **EXHIBIT C**

**O'Melveny**

O'Melveny & Myers LLP
610 Newport Center Drive
17th Floor
Newport Beach, CA 92660-6429

T: +1 949 823 6900
F: +1 949 823 6994
omm.com

May 19, 2020

**VIA E-MAIL**

John Hughes, III
Atara Miller
Grant Mainland
MILBANK LLP
55 Hudson Yards
New York, New York 10001

Re:   *In re Fin. Oversight & Mgmt. Bd., No. 17-BK-3283-LTS –Commonwealth Assets Rule 2004 Requests*

Counsel:

I write in response to John Hughes III's March 11, 2020 letter ("March 11 Letter"), March 16, 2020 supplemental document requests ("March 16 Requests"), April 8, 2020 letter ("April 8 Letter"), and April 21, 2020 letter ("April 21 Letter") (together, the "Letters") written on behalf of Ambac Assurance Corporation ("Ambac") regarding the document requests in Ambac's Commonwealth Assets Rule 2004 Motion [ECF No. 9022] (the "Assets 2004 Motion") as narrowed into four categories by Ambac's February 4, 2020 Letter ("February 4 Letter").

The Letters request updates on outstanding document requests, provide supplemental document requests and deposition topics, and memorialize Ambac and the Government Parties' February 25, 2020 and April 9, 2020 telephonic meet-and-confers.  Our responses are below.

   I.   **Category 1 (Assets)**

   - *"Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities"*

   - *"A list of the Commonwealth's current assets"*

In its February 24, 2020 letter ("February 24 Letter"), AAFAF referred Ambac to the Commonwealth's official inventory of real property assets ("Official Inventory")[1] and noted that efforts to update the Official Inventory are ongoing.  AAFAF continues to object that collecting individual asset lists and documents to evidence every encumbrance or alienation would be unduly burdensome and disruptive to the Government's operations.

Ambac has since made two categories of follow up requests:

---

[1] https://www2.pr.gov/propiedadesinmuebles/Pages/default.aspx#.

- Official Inventory.  Ambac seeks information regarding the Official Inventory, including when it was created, when it was last updated, and whether any instrumentalities did not contribute to it.  *See* March 11 Letter at 2; April 21 Letter at 2.

- March 16 Requests.  Ambac seeks information, from January 1, 2015 to present, regarding (a) the alienation or encumbrance of 43 enumerated assets ("the 43 Assets"), (b) any assessment of the value of those assets, and (c) any proceeds or revenue in connection with Commonwealth or instrumentality assets that are derived from ad valorem taxes.  *See* March 16 Requests at 1-4.

    a. **Official Inventory**

AAFAF is continuing to investigate what information is available in response to Ambac's Official Inventory requests.  In the meantime, AAFAF directs Ambac to the official webpage of the Real Property Reviewing Board ("JPRI") which maintains the Official Inventory pursuant to Act 235-2014.[2]  AAFAF has also produced copies of the statute, regulations and forms hosted on the JPRI website[3]:

- A copy of Act 235-2014

- JPRI Circular Letter 04-2019

- JPRI General Memorandum No. 01-2019

- Real Estate User Manual

AAFAF has also produced a copy of Act 26-2017,[4] which directs the Real Property Evaluation and Disposal Committee ("CEDBI") to coordinate with JPRI the updating of the Official Inventory.  AAFAF has also produced a letter issued to all instrumentalities on behalf of CEDBI directing them to submit updated information to CEDBI.[5]

AAFAF is continuing to work to determine what additional information regarding the Official Inventory is available, and what materials may be accessed remotely in light of COVID-19-related restrictions.

In addition, AAFAF has located a separate publicly available inventory of real property held by PRIDCO.[6]  To the extent any other similar databases are located, we will provide them to you.

    b. **March 16 Requests**

- "*Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any of the [43 Assets], including (without limitation) deeds of sale, details on liens or limitations on such properties (including how such liens or limitations*

---

[2] https://www2.pr.gov/JRPI/Pages/default.aspx.
[3] ASSETS_2004_000602 - ASSETS_2004_000628.
[4] ASSETS_2004_0000291.
[5] ASSETS_2004_0000601.
[6] http://www.pridco.com/real-estate/Pages/Real-Estate-Catalog.aspx.

2

*are registered and to whom), titles, assignment agreements, and/or any other documents effectuating the alienation or encumbrance*"

- "*Documents sufficient to show, from January 1, 2015 to the present, any assessment of the present, future, or contingent value of any of the [43 Assets], interests therein, and the location thereof.*"

- "*Documents sufficient to show, from January 1, 2015 to the present, any proceeds or revenue derived from ad valorem taxes on any of the Commonwealth's or its instrumentalities' assets, including (without limitation) tax receipts and/or any other documents relating to the levy of ad valorem taxes.*"

As an initial matter, AAFAF continues to object to these requests as overbroad, particularly insofar as they seek information regarding assets that are not owned by the Commonwealth. Nevertheless, in the spirit of compromise, AAFAF is working to determine what information is available and accessible.

With respect to the request for ad valorem tax information, the Puerto Rico Treasury Department publishes statistics showing monthly tax collections, including property taxes.[7]

## II. Category 2 (23 Properties in August 2019 HTA Report)

- "*A list of, or documents sufficient to identify, the 23 properties that were indicated as sold, or to be sold by December 2019, by HTA in the August 2019 report on the implementation of HTA's certified fiscal plan.*"

- "*Documents sufficient to show*:
    o *how those properties were identified for sale or potential sale; and*
    o *the process and protocol for soliciting and entertaining bids, and evaluating and approving a sale.*"

AAFAF has produced responsive information regarding the 23 properties that it has received from HTA.[8]

## III. Category 3 (Real Property Valuation and Disposal Committee)

- "*Documents sufficient to show (i) AAFAF's (or any other Commonwealth instrumentality's) authority to supervise the work of the Committee; (ii) regulations governing the formalization of disposal of Commonwealth properties, including how the properties will be made available for sale and information will be made available to interested bidders; and (iii) any other strategy by AAFAF or the Committee related to disposal of properties, including establishment of an online data base, as per recent statements of AAFAF Executive Director Omar Marrero.*"

---

[7] http://www.hacienda.gobierno.pr/inversionistas/estadisticas-y-recaudos-statistics-and-revenues/ingresos-netos-al-fondo-general-general-fund-net-revenues.
[8] ASSETS_2004_0000011 - ASSETS_2004_0000290.

- "*Documents sufficient to identify any (i) proposals considered (whether ultimately accepted or not), (ii) transactions recently approved, and (iii) transactions currently under evaluation.*"

With respect to approved transactions, AAFAF has produced the list of real property disposal transactions that CEDBI has approved.[9]  AAFAF has further produced relevant CEDBI resolutions,[10] and AAFAF has also produced the statute and regulation that govern CEDBI's responsibilities.[11]

With respect to Ambac's request for strategies related to the disposal of properties and transactions under evaluation, we continue to believe that these requests are beyond the scope of permissible discovery.  However, in order to potentially avoid a privilege dispute, AAFAF is continuing to work to identify what responsive written materials may exist.

## IV.   Category 4 (CRIM)

- "*A list identifying all properties that have been foreclosed upon by the Commonwealth or its instrumentalities from January 1, 2015 to present, and which of those properties were subsequently sold by the Commonwealth (and for how much).*"

- "*All guidelines or rules governing CRIM's foreclosure of private property and the process for determining whether to sell any of foreclosed-upon properties.*"

AAFAF has produced the statute and regulation relating to CRIM foreclosures.[12]  AAFAF continues to object to these requests as irrelevant and beyond the scope of permissible 2004 discovery.  Nevertheless, in the spirit of compromise, AAFAF is working with CRIM to determine what other documents may exist and the extent to which they are currently accessible.

## V.   30(b)(6) Deposition

Thank you for agreeing to defer discussion regarding the 30(b)(6) topics pending production of additional documents.  While AAFAF is not categorically opposed to a 30(b)(6) deposition, the Assets 2004 Motion deposition topics listed in the April 8 Letter are too broad to be addressed efficiently through deposition testimony.  These topics are too general to allow AAFAF to prepare a witness to answer whatever questions Ambac may have.

For instance, Assets 2004 Motion topics 5 and 6 merely name governmental entities and properties without any clarification as to what information is sought.  The remaining topics seek identification of a wide variety of properties and valuation and alienation information that would be much better addressed through the production of documents—it is simply not practicable to prepare a witness to testify to this level of encyclopedic knowledge.  *See, e.g.*, *Costa v. County of Burlington*, 254 F.R.D. 187, 190 (D.N.J. 2008); *Alexander v. F.B.I.*, 186 F.R.D. 137, 143

---

[9] ASSETS_2004_0000001 - ASSETS_2004_0000010.
[10] ASSETS_2004_0000403 - ASSETS_2004_0000540.
[11] ASSETS_2004_0000291 - ASSETS_2004_0000402.
[12] ASSETS_2004_0000541 - ASSETS_2004_0000600.

O'Melveny

(D.D.C. 1998) ("Deponents under Rule 30(b)(6) must be prepared and knowledgeable, but they need not be subjected to a 'memory contest.'").

During our May 11, 2020 meet-and-confer, John Hughes explained that Ambac would like a deposition to allow it to craft more targeted discovery requests. While AAFAF shares Ambac's desire to streamline discovery, given the multiple government entities implicated by these topics, and the scope of the topics, AAFAF does not share Ambac's view that any efficiency is to be gained at this point in the process by proceeding with a deposition. AAFAF has repeatedly demonstrated its willingness and ability to answer questions in writing. We ask that you proceed with any efforts to obtain information to allow crafting of more tailored discovery requests through correspondence, so that we may work to identify and confer with government officials who have the precise information Ambac seeks.

We are available to meet and confer further at a mutually agreeable time.

Sincerely,

/s/ *Elizabeth L. McKeen*

Elizabeth L. McKeen