# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, AMBAC ASSURANCE CORPORATION, AND FINANCIAL GUARANTY INSURANCE COMPANY,<br><br>    Movants,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as a representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Respondent. | Case No. 17-BK-3283-LTS<br><br>**Re: ECF No. 13163, 13180** |

---

[1]  The Debtors in the jointly-administered Title III cases, along with each Debtor's respective Title III case number (listed as a bankruptcy case number due to software limitations) and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (*i*) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (*ii*) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (*iii*) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (*iv*) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (*v*) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy numbers due to software limitations).

### INFORMATIVE MOTION REGARDING SUBMISSION OF CERTIFIED TRANSLATIONS

**To the Honorable United States District Judge Laura Taylor Swain:**

The Debtor-Movant Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), as sole representative of the Commonwealth pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA")[2], in compliance with the Court's *Order Granting Motion of the Commonwealth of Puerto Rico for Leave to Rely on Spanish Language Case Law and for Extension of Time to File Certified Translation* [ECF No. 13180] (the "Order") resolving the Commonwealth's *Motion of the Commonwealth of Puerto Rico for Leave to Rely on Spanish Language Case Law and for Extension of Time to File Certified Translation* [ECF No. 13163], respectfully submits the following certified translation:

1.    Attached hereto as Exhibit 1 is a certified English-language translation of *Transamerica Occidental Life Ins. Co. v. Gordián*, 160 D.P.R. 804 (P.R. 2007), available on Westlaw and Lexis in its original Spanish language (the "Spanish Language Case Law"), which was cited by the Commonwealth in the *Sur-Reply of Commonwealth of Puerto Rico in Opposition to Amended PRIFA Bondholder Motion to Lift Automatic Stay [ECF No. 10602]* [ECF No. 13159] (the "Sur-Reply").

WHEREFORE, the Commonwealth respectfully requests that this Honorable Court take notice of the filing of certified translations of the Spanish Language Case Law in compliance with the Court's Order.

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101-2241.

Dated: May 21, 2020
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Jeffrey W. Levitan
Ehud Barak
David A. Munkittrick
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
        jlevitan@proskauer.com
        ebarak@proskauer.com
        dmunkittrick@proskauer.com
        ddesatnik@proskauer.com

Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 557-2900
Fax: (310) 557-2193
Email: mfirestein@proskauer.com
        lrappaport@proskauer.com

*Attorneys for the Financial Oversight and
Management Board as representative of the
Commonwealth of Puerto Rico*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
*Co-Attorneys for the Financial Oversight and
Management Board as representative of the
Commonwealth of Puerto Rico*

3

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer

# <u>EXHIBIT 1</u>

170 D.P.R. 804, 2007 WL 1362920 (P.R.), 2007 TSPR 67

TRANSAMERICA OCCIDENTAL LIFE INSURANCE
COMPANY and ORLANDO RODRÍGUEZ ÁLVAREZ, appellees,

v.

VANYA FEBLES GORDIÁN, on behalf of
of her minor son G.R.R.F., appellants.

In the Supreme Court of Puerto Rico.
*Number:* CC-2006-176

**Synopsis**

PETITION FOR *CERTIORARI* to request the reversal of a JUDGMENT of *Héctor Urgell Cuebas, Carlos M. Rodríguez Muñiz* and *José A. Morales Rodríguez*, Judges of the Appellate Court, modifying in part the partial summary judgment issued by the Trial Court and ruled that Transamerica Occidental Life Insurance Company was not obligated to pay interest from the time of the consignment until the judgment. *Judgment is entered confirming the order issued by the Court of Appeals, although on different grounds.*

*Edilbelto Berríos Pérez*, from the law firm of *Berríos & Longo*, attorneys for Vanya Febles Gordián, appellant; *Isabel López Rivera*, attorney for the minor G.R.R.F., appellant; *Jorge Bermúdez Torregrosa*, from the law firm of *Cuevas Kuilam & Bermúdez*, attorney for Transamerica Occidental Life Insurance Company, appellee; *José A. Cuevas Segarra*, attorney for Orlando Rodríguez Álvarez, appellee.

ASSOCIATE JUSTICE REBOLLO LÓPEZ issued the Court's opinion.

In 1998, Fernando Rodriguez signed an insurance contract with Transamerica Occidental Life Insurance Company (TOLIC) to purchase a $1 million life insurance policy. In the aforementioned policy, Rodriguez designated, among other beneficiaries, his son G. Rodriguez as beneficiary for thirty-eight percent of the total amount of the aforementioned policy. The policy included a provision that the amounts corresponding to minor beneficiaries would be kept in a trust to be administered by Mr. Orlando Rodriguez Alvarez, brother of the insured, until the minor reached the age of twenty-five. [1] The note specifically provides: **\*808** "Children's Benefit in trust with Orlando Rodríguez Álvarez, brother of the insured, until beneficiaries age 25." Appendix to the Application for *certiorari*, p. 239.

[1] The trust is discussed below.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*19/MAY/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

TOLIC v. Rodriguez Febles, 170 D.P.R. 804 (2007)

2007 TSPR 67

Before his death, Fernando Rodriguez made a *holographic will* in which he reiterated his desire that the benefits of the policy be held in a trust to be administered by Ms. Neyda Pumarejo or, failing that, by the same trustee, i.e. Orlando Rodriguez Alvarez, whom he named in the above-mentioned note. In that document he stipulated, in the relevant part:

> There are four beneficiaries to my life insurance with their specific percentages of the total of the benefits. The first, Neyda Pumarejo Cintron, will receive her portion all at once. The other three beneficiaries, my children [G.R.R.F.], Mayra Luz Rodriguez Lugo and Fernando Roberto Rodriguez Lugo, will receive their portions of the insurance as follows: The money will be deposited in FDIC-guaranteed savings certificates, from an issuing institution chosen by the trustees designated below. Of the interest generated by each beneficiary's portion[,] he/she will be paid as follows, on a monthly basis: Until the age of 10: One thousand dollars

> Until the age of 15: One thousand three hundred dollars

> Until the age of 20: One thousand five hundred dollars

> Until the age of 25: One thousand eight hundred dollars

> If the interest is not sufficient, the remainder will be paid from the available principal of his or her portion. If there is a surplus of interest, it will be reinvested in the name of the person who had the surplus. The administration of the insurance money, its investment and distribution, would be managed by Neyda Pumarejo Cintron. In the event of her incapacitation, withdrawal from representation, or death, the administration would then pass to Orlando Rodriguez Alvarez. ... Any balance on the account received from the insurance of any of my children will be given to them for use at their sole discretion upon reaching the age of 25. The word insurance in this will means any insurance policy that pays benefits for my death, the portions of which in each policy will be equal in terms of percentage to the same beneficiaries, as designated in the million dollar policy that I maintain to this date and whose producer agent was Adriano Valle Poza, even though in any other insurance policy there is no designation of beneficiaries or percentages. ... It is clarified that the word administrator, as used on pages one, two and three of this document, also means a trustee, who shall have, among others, the obligation **\*809** of ensuring that the monies under his control are not used as collateral for any loan or for any other use other than that which is herein designated.

Fernando Rodríguez died four years later. As a result, both Orlando Rodriguez and the minor's mother, Ms. Vanya Febles Gordián, claimed the benefits of the life insurance policy on behalf of the child, G.R.R.F. On September 13, 2002 TOLIC filed an interpleader claim under Rule 19 of Civil Procedure,[2] before the Trial Court, Superior Court of San Juan, requesting that the two parties be ordered to litigate the right to receive the benefit on behalf of the child and filed with the court the

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*19/MAY/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Case:17-03283-LTS Doc#:13204 Filed:05/21/20 Entered:05/21/20 12:37:24 Desc: Main
Document Page 8 of 16

sum of $388,043.51, which includes thirty-eight percent corresponding to the minor and the interest accumulated up to that time.

[2] "All those persons who have claims against the plaintiff may be joined as defendants and required to litigate those claims against each other, where the claims are of such a nature that the plaintiff would be or could be exposed to double or multiple liability. It shall not be a ground for objection to consolidation if the claims of the various claimants to the securities on which their claims rest do not have a common origin or are not identical but are adverse to and independent of each other, or if the plaintiff asserts that he is not liable in whole or in part for the claims of any of the claimants. A defendant who is exposed to similar liability may obtain the same remedy through a cross-complaint or counterclaim. The provisions of this rule supplement and do not limit the accumulation of parties permitted under Rule 17." 32 L.P.R.A. Ap. III.

The litigation involved a complicated series of incidents that included an earlier appearance before the Court of Appeals. Once the case was remanded to the Superior Court of San Juan, said Court issued a partial summary judgment in which it determined that the trust constituted by Rodriguez was valid, since it was not governed by the Civil Code but by the regulations concerning the area of insurance. Therefore, the court held that the instructions given there were binding on the insurance company. Thus, it indicated that the validity of the instructions of the insured, relative to the trust, do not depend on trust rules in the **\*810** Civil Code. Similarly, this court declared that the consignment of TOLIC was well done but imposed on it the payment of legal interest from the time of the consignment until the date of the judgment.

Dissatisfied with the decision, Vanya Febles Gordián, in her own name and on behalf of her minor son, turned to the Court of Appeals. In her appeal, she pointed out, in summary, that the trust designating Orlando Rodriguez Alvarez as trustee is invalid because it was not established by public instrument. In turn, TOLIC went to the Court of Appeals and challenged the imposition of interest payments computed from the time of the consignment to the date of the judgment. The Court of Appeals *consolidated* the appeals.

The intermediate appellate court partly modified the partial summary judgment delivered by the Trial Court. It resolved, in summary, that TOLIC was not obligated to pay interest from the time of the consignment until the judgment and affirmed the contested judgment on the remaining points.

Not agreeing with the previous opinion, Febles Gordián, representing the minor G.R.R.F., resorted—by means of an application for *certiorari*—to this Court alleging that the intermediate court had erred

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*19/MAY/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

... in determining that the trust in the life insurance was confirmed in the holographic will and that the will was timely and duly notarized to establish that the trust is already recorded in a public instrument.

... in establishing that the policy and the holographic were complementary to each other and establishing that such a complement created the trust, calling the will a "testamentary complement to the insurance."

... in determining that the will could dispose of the benefit of the insurance policy since such that benefit is an asset like any other.

... in determining that the consignment of TOLIC was well done since the time of the deposit of the funds. Application for *certiorari*, p. 13.

On May 5, 2006, *we issued* the appeal. Having **\*811** the parties in attendance and being in a position to resolve the appeal that had been filed, we proceed to do so.

## I

**[1-3]** A. The Civil Code establishes that "[t]he trust is an irrevocable mandate [by] virtue of which certain assets are transferred to a person, called the trustee, so that he may dispose of them as ordered by the person who transfers them, called the trustor, for the benefit of the latter or of a third party called the beneficiary." 31 L.P.R.A. sec. 2541. This mandate may be established for any purpose that does not contravene the law or public morality. 31 L.P.R.A. sec. 2547. A trust can be set up over all kinds of movable and immovable property, tangible and intangible, present or future. 31 L.P.R.A. sec. 2544. The Trustor may create the Trust for any purpose and under any terms or conditions that do not violate the law or public morality or are not specifically prohibited by law. 31 L.P.R.A. sec. 2562. "The trust *may* be set up by will, to take effect after the death of the **trustor**, or by an inter vivos act." (Emphasis added). 31 L.P.R.A. sec. 2542. Contrary to the above, the Civil Code specifies that "[t]he inter vivos trust *must* be constituted by public instrument." (Emphasis supplied.) 31 L.P.R.A. sec. 2543.

**[4]** The contours of the trust mechanism are clearly defined. The difficulty with this mechanism lies in the fact that the Puerto Rican trust is a very particular institution that incorporates the principles of the Anglo-Saxon *trust* and tries to harmonize them with our civil law tradition. *Alvarez v. Srio. de Hacienda,* 78 D.P.R. 412 (1955), under review *Alvarez v. Srio. de Hacienda,* 80 D.P.R. 16 (1957). However, the gaps inherent in the adoption of this mechanism of mixed origin in our jurisdiction, as recognized by this Court in *Dávila v. Agrait*, 116 D.P.R. 549, 565 (1985), allows us to **\*812** enrich ourselves with its cultural and legal heritage, since "[i]ts harmonization[,] in accordance with the precepts of [C]ivil Law[,]

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*19/MAY/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

TOLIC v. Rodriguez Febles, 170 D.P.R. 804 (2007)
2007 TSPR 67

cannot constrain the institution that was intended to be integrated." We must therefore nourish it with the *flexibility* that characterizes the Anglo-Saxon *trust*, abandoning the criteria of rigidity and immobility of the Roman trust. *Dávila v. Agrait*, ante.

[5] B. Having clarified these aspects concerning the concept in dispute, we must highlight some general principles of insurance law. A life insurance contract or policy is a contract between a person and an insurer that provides for the payment of a specified amount of money to the beneficiary designated in the policy upon the death of the insured party. The insurable interest is the life of the insured. M. Jasper, *Insurance* Law, Oceana Publications, 1988, Ch. 2. See also Art. 4.020 of the Insurance Code of Puerto Rico (Código de Seguros), 26 L.P.R.A. sec. 402.

[6-7] It should be noted that an insurance contract, like any other contract, establishes a law between the parties, provided that the essential elements for its validity are in place. *Gen. Accid. Ins. Co. P.R. v. Ramos*, 148 D.P.R. 523 (1999). Article 11,250 of the Insurance Code, 26 L.P.R.A. Sec. 1125, provides that insurance contracts or policies must be interpreted as a whole, on the basis of all the terms and conditions. *González v. Universal Solar*, 167 D.P.R. 82 (2006); *Molina v. Plaza Acuática,* 166 D.P.R. 260 (2005); *López v. Atlantic Southern Ins. Co.*, 158 D.P.R. 562 (2003); *Soc. de Gananciales v. Serrano*, 145 D.P.R. 394 (1998); *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 D.P.R. 521 (1991). Thus, when the terms of the policy are clear, specific and free from ambiguity, the parties must abide by the provisions therein and an interpretation that violates the clear purpose and will of the parties will not be admitted. *Molina v. Plaza Acuática*, ante.

[8] To address the controversies raised in the **\*813** case before us, a brief analysis of how similar situations have been addressed in Anglo-axon law is relevant. In *Broga v. Rome Trust Co. of Rome*, 272 N.Y.S. 101 (1934), a trust over money from a life insurance policy was considered testamentary even though it was created by an instrument other than a will. This means that in common law a testamentary trust can be created when its purpose is not to transfer the property of the trust during one's lifetime, but rather is to take effect at death, regardless of the instrument used for its creation. *Roberts v. Taylor*, 300 F. 257, 260-261 (9th Cir. 1924). See also, *Vigil v. Sandoval,* 741 P.2d 836 (App. 1987). Provisions in trusts considered testamentary are those that are not intended to make a transfer while living. *Williams v. Thrasher*, 62 F.2d 944 (5th Cir. 1933). [3]

[3]

    See also: A.W. Scott, *Trusts and the Statute of Wills*, 43 (No. 4) Harv. L. Rev. 521 (1930); O.L. Browder, *Giving or Leaving-What is a Will?*, 75 (Nos. 5 & 6) Mich. L. Rev. 845 (1977); H.W. Ballantine, *When are Deeds Testamentary?*, 18 (No. 6) Mich. L. Rev. 470 (1920).

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*19/MAY/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

## II

A. With the above doctrinal framework in mind, we move on to address the controversy at hand. In essence, we must resolve whether the trust established by Rodriguez in favor of the minor Gabriel Rodriguez is valid.

Through the first three allegations of error, Febles Gordián—representing her minor son Gabriel Rodriguez—alleges that the trust constituted by Rodriguez is invalid. She claims that the appellate court erred in determining that the holographic will confirmed the validity of the trust because the lack of a public instrument had been corrected by the notarization of the document. She further argues that its validity cannot be based on an **\*814** alleged supplementation between the life insurance policy and the will. She also argues that it is not correct in law to point out that the amount of life insurance is an asset that Rodriguez could dispose of through a will.

Specifically, the appellant Febles Gordián claims that the trust established by the father of her son G.R.R.F. is invalid because it is an inter vivos trust that would have required the form of a public deed. She points out that, in any case, if it were a mortis causa trust, it would not be valid either since Rodriguez could not dispose of the amount of the life insurance policy in the will, since it is not part of the inheritance.

It should be noted, first of all, that the Insurance Code makes no provision regarding the validity of a trust established in an insurance contract. Consequently, we must resort, in a supplementary manner, to the provisions of the Civil Code that regulate the matter. As we saw before, this legal body requires that inter vivos trusts be constituted by way of public instrument. The Civil Code also regulates mortis causa trusts. In this regard, the Civil Code states that "[*a trust*] *may be set up by will* [*or t*]*o take effect after death ... .*" (Emphasis added). 31 L.P.R.A. sec. 2542.

In the matter at hand, *even though the trust was initially constituted on the life insurance policy, the truth is that Rodriguez reiterated his will in this respect through a valid holographic will*. The will issued contains all the elements for the trust to be understood as set up: (1) a trustor (Rodríguez); (2) who transmits certain assets (amount of the policy); (3) to a trustee (Orlando Rodriguez, in the absence of Mrs. Neyda Pumarejo); (4) to administer them in accordance with the instructions therein for the benefit of a beneficiary (his children, including G.R.R.F.).

[9]  Contrary to what the appellant Febles Gordián claims, the fact that the amount of the policy does not form **\*815** part of the estate,[4] does not prevent a testator from disposing of it in a valid will. In many instances, the validity of testamentary dispositions unrelated to the deceased person's estate has been recognized. Thus, for example, Puig Brutau recognizes that the usual definition of the term "will"—the act by which a person disposes of all or part of his property after his

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*19/MAY/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

death (Art. 616 of the Civil Code, 31 L.P.R.A. Sec. 2121)—is only an elementary approximation of the concept. J. Puig Brutau, *Fundamentos de Derecho Civil* [Fundamentals of Civil Law], 2nd ed., Barcelona, Ed. Bosch, 1977, T. V, Vol. II, page 5. For the aforementioned writer, the will "is ... Predominant [ly,] but not exclusive[ly], an act of distribution of assets; ... [h]owever, it may also contain declarations of a non-patrimonial nature, even exclusively." (Emphasis removed.) Idem., page 10. Puig Brutau even acknowledges that the will may contain a provision to change the designation of a beneficiary of a life insurance policy. Idem., page 11.

[4]

> As is well known, the product of a policy is not part of the remnant estate. *Vélez et al. v. Bristol-Myers*, 158 D.P.R. 130 (2002).

Prof. Efraín González Tejera agrees with this position when he states that "[a] will may refer not only to patrimonial dispositions, but also to relations of a non-property nature, such as the appointment of guardians, executors, estate partitioners, recognition of natural children, instructions regarding funerals and burials, etc." E. González Tejera, *Derecho de Sucesiones* [Inheritance Law], San Juan, Ed. U.P.R., 2002, V. II, page 9.

**[10]**  The trust can be set up "by will, without prescribing that it be open—the only one granted by public instrument—it is clearly implied that the trust can be set up by any other kind of will ... even when the particular kind of trust does not call for a public instrument." L.F. Sánchez **\*816** Vilella, *El Fideicomiso Puertorriqueño* [The Puerto Rican Trust] *III*, 37 (No. 3) Rev. C. Abo. P.R. 417, 427 (1976). See also *García v. Rexach*, 65 D.P.R. 526 (1945). In accordance with the above, it must be concluded that the trust in dispute, as constituted in the holographic will, is valid in our legal system.

**[11]**  B. However, the appeal before us requires us to rule on the validity of the trust as constituted on the life insurance policy. At this point, we must clarify that—contrary to the conclusion of the appellate court—if the trust is understood to be inter vivos, there is no way that the absence of the requirement for a public deed could have been remedied by the mere notarization of the holographic will. The certificate of notarization is not the correct vehicle for elevating a private document signed in Puerto Rico to the status of public instrument. *Ponce Real Estate Corp. v. Registrador*, 87 D.P.R. 215 (1963). For this, compliance with Rule 26 of the Puerto Rico Notary Regulations,[5] is required, which states that when a private document is elevated to public status, one must go before a notary public and rewrite the private contract in which the prior existence of the document is stated, which has not occurred in this case. Consequently, if the trust is understood to be inter vivos, it would not be valid under our law.

[5] "The notary may elevate a private document whose content is the subject matter of a contract to the status of public instrument.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*19/MAY/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Case:17-03283-LTS Doc#:13204 Filed:05/21/20 Entered:05/21/20 12:37:24 Desc: Main
Document Page 13 of 16

"In such case, the notary may choose to rewrite the private contract, but shall record in the instrument the prior existence of the private document.

"The notary may also choose to attach the private contract to the instrument being authorized without rewriting it. In this case, the notary will refer to the private contract, attest to having read it, to having accepted its wording, to the number of pages it consists of, and to the fact that its text is incorporated as if it were transcribed, all of which the parties appearing in his presence ratify and sign the original of the instrument.

"In both cases, it is essential that all the parties involved in the private document or, failing that, their heirs, legal representatives or volunteers, be present to give their consent.

"The notary shall also comply with all the formalities and solemnities required for the authorization of a public instrument." 4 L.P.R.A. Ap. XXIV, R. 26.

Nonetheless, the mandate expressed by Fernando Rodriguez **\*817** in the insurance policy cannot be considered an inter vivos trust, but rather a trust mortis causa, since it would have effect upon his death. In view of this, we must apply the provisions applicable to mortis causa trusts.

As noted above, the Civil Code provides that a trust *may be created by will to take effect after death.* (Emphasis added). 31 L.P.R.A. sec. 2542. From the permissive nature of this wording, we can infer that this provision does not represent a limitation on the possibility of this being carried out validly in any form other than a will, especially if we take into account that the Code then establishes the requirement of a public instrument for inter vivos trusts. 31 L.P.R.A. sec. 2543.

**[12]** There is nothing in our law that prevents a mortis causa trust, which is made to take effect after the death of the trustor, from being made through a legal mechanism distinct from a will. In fact, in accordance with the expressions of the doctrine, we understand that the framework of application of the mechanism should not be restricted when it has been accepted precisely because of its recognized *valuable flexibility*.

**[13-14]** Moreover, it is not difficult to find scholars on the matter who have anticipated the possibility that trust provisions may be included in a life insurance contract. A trust may be set up "when a person who takes out a life insurance policy and has reserved the right to change [the] beneficiary instructs the person already designated to keep the policy and compensation in trust for a third party." (Emphasis in the original.) R. Batiza, *El Fideicomiso: teoría y práctica* [The Trust: Theory and Practice], 4th ed. rev., México, Ed. Porrúa, 1980, page 181. In fact, Batiza states that "[t]he trust constituted in an act that is not precisely a will, but whose effects are to be produced after the death of the **\*818** constituent must also be considered as testamentary." Batiza, ante. This illustrates the flexibility that the doctrine is capable of giving to the concept of the trust.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*19/MAY/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

TOLIC v. Rodriguez Febles, 170 D.P.R. 804 (2007)
2007 TSPR 67

**[15]** In accordance with the above, the nature of the life insurance policy makes it feasible to admit the validity of a trust constituted therein if it complies with the applicable legal provisions. It is known that this type of insurance policy constitutes an agreement in which the insurance company is obligated to pay a certain amount of money to the person(s) named as beneficiary(ies) at the time of the insured person's death. See: 26 L.P.R.A. sec. 402 y 26 L.P.R.A. sec. 102. This being the case, there is no doubt that the life insurance contract represents the type of business that acquires life upon the death of the interested party. Therefore, and given that the provision on mortis causa trusts does not appear to be restrictive, we hold that the trust constituted in the life insurance policy in the present case is legally valid.

C. Finally, we address the last allegation of error. Appellant Febles Gordián argues that it was improper to exempt TOLIC from the payment of interest from the date the minor's money was deposited until the date the judgment was entered. Her argument is based on the provision of the Civil Code which states that the obligation subsists as long as the creditor has not accepted the consignment or a judicial finding that it is well done has not been given. Art. 1134 of the Civil Code, 31 L.P.R.A. sec. 3184. *The appellant is not in the right.*

**[16]** The consignment is "the custodial bond ... of the obligation. The obligation is placed under the power of the judicial authority, which will retain it and make it available to the creditor." (Emphasis removed.) J. Vélez Torres, *Derecho de Obligaciones* [Law of Obligations], 2nd ed. rev., San Juan, Continuing Education Program, Inter-American University, 1997, page. 186. This concept "results in the termination of the obligation; and it is a form of payment of the obligation when the creditor's will is not present." R. Bercovitz y Rodríguez Cano, and **\*819** E. Valladares Rascón (commentators), in M. Albaladejo, *Comentarios al Código Civil y compilaciones forales* [Comments on the Civil Code and the Compilations of the Laws of the State], Madrid, Ed. Edersa, 1991, Art. 1.181, T. XVI, Vol. 1, page 297.

This concept is regulated by Articles 1130 through 1135 of the Civil Code, 31 L.P.R.A. sections 3185 to 3189. While Article 1130 provides that the consignment releases the debtor from liability "when several persons intend to have the right to collect," Article 1134 of the Civil Code provides that

> [t]he consignment having been properly done, the debtor may request the court or judge to order the cancellation of the obligation.

> As long as the creditor has not accepted the consignment, or has not received a judicial declaration that it is well done, the debtor may withdraw the thing or amount consigned, leaving the obligation remaining. 31 L.P.R.A. sec. 3184.

**[17]** Although this legal provision states that the debtor is not released from an obligation until the judicial finding of correctness, this does *not* imply that the debtor is obligated to pay interest

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*19/MAY/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

WESTLAW  © 2020 Thomson Reuters. No claim to original U.S. Government Works.                    9

from the time of consignment until such declaration is made. A formal release of the obligation, which arises as a consequence of the contract, is one thing, but the requirement for the payment of interest is another. "[T]he Spanish doctrine *agrees that the retroactive effectiveness of a properly made consignment extends to the moment when the act of the deposit took place.*" (Emphasis in the original.) Vélez Torres, ante, page 189.

[18]  The fact that the lower court has delayed in declaring the consignment correct should not be a cause for imposing on a debtor the payment of interest on a sum that the debtor delivered as required by our law. If, under those circumstances, interest were imposed from the date of consignment, we would defeat the very purpose of Rule 19 of Civil Procedure, 34 L.P.R.A. Ap. III, which allows for the litigation of adverse parties and which represents one of the most useful instances of the consignment concept. See Article 1130 of the Civil Code, 31 L.P.R.A. sec. 3180.

[19]  The judicial determination "is to declare **\*820** that the consignment is well done, recognizing the liberating effects that the debtor was pursuing since the deposit of the item, therefore it should take effect from [that] moment." Vélez Torres, ante, page 189. We conclude, therefore, that although the formal release of the debtor depends on the court's determination that the consignment is well done, the payment of interest from the consignment is not appropriate if, in fact, it is declared as correct. We resolve that in cases such as the present one, where the consignment is declared correct, the effects of the payment are "retroactive to the time of deposit of the item...". Bercovitz y Rodríguez Cano, and Valladares Rascón, ante, page 299.

### III

In accordance with the foregoing, *the Court of Appeal's Judgment in the present case should be upheld, even if on different grounds.*

*Judgment will be entered accordingly.*

Associate Justice Rodriguez Rodriguez concurred with the result without a written opinion.

---

**End of Document**                                           © 2020 Thomson Reuters. No claim to original U.S. Government Works.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*19/MAY/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*



T   718.384.8040

W   TargemTranslations.com

E   projects@targemtranslations.com

A   185 Clymer St. Brooklyn, NY 11211

**TRANSLATOR'S CERTIFICATE OF TRANSLATION**

Translation from: Spanish (Puerto Rico) into English (US)
TARGEM Translations Inc.

I, Andreea I. Boscor, ATA-certified Spanish-English #525556, acting as translator at TARGEM Translations Inc., a NEW YORK City corporation, with its principal office at 185 Clymer Street, Brooklyn, NY, 11211, USA, certify that:

the English translated document is a true and accurate translation of the original Spanish and has been translated to the best of my knowledge.

Original Document Name: TOLIC v. Rodriguez Febles

Signed this 19th day of May 2020



_____

Andreea I. Boscor

Verify at www.atanet.org/verify

