UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |

MEMORANDUM ORDER DENYING COBRA ACQUISITIONS LLC'S URGENT
MOTION TO MODIFY THE STAY ORDER AND ALLOW THE UNDISPUTED TAX CLAIMS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Before the Court is *Cobra Acquisitions LLC's Urgent Motion to Modify the Stay Order and Allow the Undisputed Tax Claims* (Docket Entry No. 12531 in Case No. 17-3283,[2] the "Stay Modification Motion"). Cobra Acquisitions LLC ("Cobra") requests entry of an order partially lifting the ongoing stay of *Cobra Acquisitions LLC's Motion for Allowance and Payment of Administrative Expense Claims* (Docket Entry No. 8789, the "Administrative Expense Motion"), which the Court originally imposed on October 17, 2019, at the request of PREPA, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority (collectively, the "Government Parties"). Cobra seeks an order allowing its administrative expense claim to go forward to a determination of allowance with respect the portion of its overall claim that asserts a right to reimbursement of certain tax payments that Cobra made to the Commonwealth of Puerto Rico (the "Commonwealth") in 2018, characterizing the reimbursement claim as "undisputed."

The Court has subject matter jurisdiction of this contested matter pursuant to 48 U.S.C. § 2166(a). The Court has considered carefully all of the parties' submissions, and, for the following reasons, the Stay Modification Motion is denied.

BACKGROUND[3]

PREPA filed a petition for relief pursuant to Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA")[4] on July 3, 2017. Subsequently, in the aftermath of Hurricanes Irma and Maria, PREPA awarded Cobra two

---

[2] Unless otherwise indicated, all docket entry references herein are to entries in Case No. 17-3283.

[3] The facts set forth herein are drawn from the parties' submissions and are undisputed unless otherwise indicated.

[4] PROMESA is codified at 48 U.S.C. §§ 2101 et seq.

contracts for the performance of certain power grid and infrastructure restoration work in Puerto Rico. (See Admin. Expense Mot. ¶ 3.) PREPA and Cobra entered into the *Emergency Master Service Agreement for PREPA's Electrical Grid Repairs – Hurricane Maria* (the "First Agreement") on October 19, 2017.[5] (Admin. Expense Mot. ¶ 19.) The initial contract amount under the First Agreement was $200 million; the total contract price was subsequently increased, through several amendments, to $945,429,800. (Id.) In addition to obligating PREPA to pay Cobra for services rendered, the First Agreement provides that PREPA is to reimburse Cobra for certain Puerto Rico taxes paid by Cobra:

> In the event that any amounts to be paid to [Cobra] under this Contract are subject to any taxes (including withholding) imposed by any governmental authority of Puerto Rico in excess of 8.5% and [Cobra] has not obtained an exemption from such taxes, the amount to be paid to [Cobra] shall be increased by an amount that, after the payment of such taxes, leaves [Cobra] with the amount that [Cobra] would have received if [Cobra] had been exempt from all such taxes.

(Layton Decl., Ex. 1 at 48.) The First Agreement contemplates that federal financial assistance through FEMA will be used to pay Cobra, but provides, in Article 29 of the contract, that "[a]ny failure to secure approvals or funding from FEMA or some other source (except due to [Cobra]'s sole fault) shall not relieve PREPA of its obligations for payment under this [c]ontract." (Id. at 16.) Under Article 69 of the First Agreement, Cobra's conviction of, or guilty plea to, certain crimes "shall entail . . . the automatic rescission of this [c]ontract." (Id. at 32.) In Article 21 of the First Agreement, Cobra "acknowledges that in executing the services pursuant to [the] [c]ontract it has a duty of complete loyalty towards PREPA which includes not having adverse interests to those of PREPA related to the services." (Id. at 13.) Article 68 of the First

---

[5] A copy of the First Agreement is attached as Exhibit 1 to the *Declaration of Mark Layton* (Docket Entry No. 12531-3, the "Layton Declaration") filed in support of the Stay Modification Motion.

Agreement provides that, if a United States federal agency or the Commonwealth government either imposes a penalty on PREPA or demands repayment of any public assistance disaster relief funds due to an act or omission of Cobra, Cobra shall be responsible for any such penalty or repayment to the extent of its fault. (Id. at 30-31.)

On May 26, 2018, PREPA and Cobra entered into a second agreement, the *Master Service Contract for PREPA's Electrical Grid Repairs Hurricane Maria* (the "Second Agreement" and, together with the First Agreement, the "Agreements"),[6] for further grid repairs for a total contract price of $900 million. (Admin. Expense Mot. ¶ 28.) Cobra asserts that, despite its completion of the work required under the Agreements, over $74 million, including interest, due under the First Agreement and over $181 million, including interest, due under the Second Agreement remain unpaid. (Id. ¶¶ 27, 36.)

Cobra filed its Administrative Expense Motion on September 30, 2019, seeking an order allowing administrative expense claims pursuant to section 503(b)(1)(A) of the Bankruptcy Code[7] against PREPA in the total amount of $216,116,471.93,[8] and directing PREPA to pay such amounts in full, plus additional accrued interest, immediately. In the Administrative Expense Motion, Cobra claims that PREPA has improperly withheld payments (i) for invoices to which PREPA has raised no substantive objection; (ii) based upon unsubstantiated "headcount" questions; (iii) for completed work erroneously claimed to be

---

[6] A copy of the Second Agreement is attached as Exhibit 2 to the Layton Declaration.
[7] The sections of the Bankruptcy Code cited in this Memorandum Order are made applicable in the above-captioned Title III cases by Section 301(a) of PROMESA, 48 U.S.C. § 2161(a).
[8] The amount sought by Cobra in the Administrative Expense Motion does not include "approximately $40 million for unpaid demobilization expenses and work associated with Roosevelt Roads restoration and associated interest" that, at the time the Administrative Expense Motion was filed, Cobra had been "continuing to pursue from PREPA[.]" (Admin. Expense Mot. ¶ 16.)

outside the scope of the Agreements; (iv) for costs and work completed at PREPA's direction in preparation for Hurricane Beryl; (v) for extra mapping work completed at PREPA's direction; (vi) to reimburse Cobra's tax payments in excess of 8.5% (the "Tax Gross-Up Payments"); and (vii) for interested owed on late payments. (See Admin. Expense Mot. ¶¶ 42-62.) All such outstanding amounts, Cobra contends, qualify for administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code. (See id. ¶ 65.) In the instant motion, Cobra seeks an order allowing the Tax Gross-Up Payments element of the Administrative Expense Motion.

On October 10, 2019, the Government Parties filed the *Joint Urgent Motion of the Oversight Board, PREPA, and AAFAF to Extend All Applicable Deadlines to Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims* (Docket Entry No. 8838, the "Stay Motion"). Through the Stay Motion, the Government Parties urged the Court to temporarily stay all litigation in connection with the Administrative Expense Motion in light of (i) the arrest and indictment of Cobra's former president, Donald Keith Ellison, and two FEMA officials for conspiracy to commit bribery in connection with Cobra's work for PREPA under the Agreements (see Stay Mot., Ex. A (the "Indictment")), and (ii) a report (the "OIG Report") of U.S. Department of Homeland Security Office of Inspector General (the "OIG") calling into question a December 2017 determination by FEMA that Cobra's contract rates and costs under the First Agreement were reasonable, as well as an ongoing analysis of the cost reasonableness of the First Agreement being conducted by FEMA and the Department of Homeland Security Operational Analysis Center (the "FEMA Investigation") at the recommendation of the OIG.[9] (Stay Mot. ¶¶ 2-3.)

---

[9] At the time the Government Parties filed the Stay Motion, a trial date in the criminal case was set for December 9, 2019, and the estimated completion date for the FEMA Investigation was May 29, 2020.

The Indictment alleges, in relevant part, that Ellison provided things of value to a senior FEMA official who in exchange (i) performed official acts to advance Cobra's interests; (ii) secured favorable treatment for Cobra; (iii) exerted pressure on PREPA executives so that PREPA would accelerate payments to Cobra, assign tasks to Cobra instead of using PREPA employees, and use Cobra to the exclusion of other contractors; and (iv) exerted pressure on FEMA employees with respect to the approval of reimbursement assistance for Cobra work under the Agreements. (Indictment ¶¶ 43-45.)

The OIG Report was completed as part of an ongoing audit to determine whether FEMA's Public Assistance ("PA") grants to PREPA and PREPA's contracts with Cobra complied with federal laws and regulations as well as PA program guidelines. (Layton Decl., Ex. 16 at 2.) The OIG Report finds, among other things, that FEMA's determination that Cobra's rates under the First Agreement were reasonable and eligible for the PA program "was not sound because it did not evaluate the actual time and materials costs for reasonableness and because its analyses of contract rates for labor, equipment and other costs were not always logical, complete, and supported." (Id.) The OIG Report recommends that FEMA "conduct a comprehensive analysis of Cobra contract costs in accordance with PA grant guidelines and disallow any costs that are not reasonable." (Id. at 8.)

The trial of the criminal case is currently scheduled to commence in January 2021 and, to the Court's knowledge, the estimated completion date for the FEMA Investigation remains May 29, 2020.

On October 17, 2019, the Court entered the *Order Granting Joint Urgent Motion of the Oversight Board, PREPA, and AAFAF to Extend All Applicable Deadlines to Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims*

(Docket Entry No. 8886, the "Initial Stay Order"), thereby staying litigation of the Administrative Expense Motion through at least January 29, 2020. The Court reasoned that factual and legal questions that could affect the outcome of the Administrative Expense Motion would likely be addressed in connection with the criminal proceedings, and that the pendency of the FEMA Investigation weighed in favor of granting the Stay Motion for similar reasons. (Stay Ord. at 2.) The Court also found that Cobra was unlikely to be prejudiced by a temporary stay given the Court's inability to require payment during PREPA's Title III case absent the Oversight Board's consent. (Id.)

Following a status conference on January 29, 2020, the Court entered the *Order Scheduling Further Status Conference in Connection with Cobra Acquisitions LLC's Motion for Allowance and Payment of Administrative Expense Claims* (Docket Entry No. 10607, the "Second Stay Order" and, together with the Initial Stay Order, the "Stay Orders"), which memorialized the Court's ruling on the record that the stay of the Administrative Expense Motion would remain in effect, and set a further status conference for June 3, 2020. (Second Stay Ord. at 2.)

Cobra filed the Stay Modification Motion on March 25, 2020. Cobra moves for entry of an order lifting the stay applicable to the Administrative Expense Motion solely with respect to its $61,668,083.34 claim for the Tax Gross-Up Payments (the "Tax Claim"), and finding the Tax Claim to be allowed as an administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code.[10] The Stay Modification Motion does not seek immediate

---

[10] Cobra also sought an expedited briefing schedule and hearing in connection with the Stay Modification Motion. On March 26, 2020, the Court entered its *Order Scheduling Briefing of Cobra Acquisitions LLC's Urgent Motion to Modify the Stay Order and Allow the Undisputed Tax Claims* (Docket Entry No. 12538), and took the motion on submission.

payment of the Tax Claim but, rather, approval and allowance of the Tax Claim as an administrative expense that must be paid in connection with confirmation of a plan of adjustment for PREPA. Cobra, which asserts that it is in financial distress, represents that the allowance of the Tax Claim would assist it in dealing with its own creditors. The Government Parties filed the *Opposition of the Oversight Board, AAFAF, and PREPA to Cobra Acquisition LLC's Urgent Motion to Modify the Stay Order and Allow the Undisputed Tax Claims* (Docket Entry No. 12690, the "Opposition") on April 7, 2020. On April 14, 2020, Cobra filed *Cobra Acquisitions LLC's Reply in Support of Its Urgent Motion to Modify the Stay Order and Allow the Undisputed Tax Claims* (Docket Entry No. 12752).

## DISCUSSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936). As the Court has observed previously in this matter, "[f]ederal courts possess the inherent power to stay proceedings for prudential reasons." (Stay Ord. at 2 (quoting Microfinancial, Inc. v. Premier Holidays Int'l, Inc., 385 F.3d 72, 77 (1st Cir. 2004)).) It follows from these principles that, after imposition of a stay for prudential reasons, "the court retains the ability to modify or dissolve the stay . . . ." Green v. Cosby, 177 F. Supp. 3d 673, 681 (D. Mass. 2016); see Parker v. Dawson, No. 06-CV-6191 JFB WDW, 2007 WL 2462677, at *5 n.10 (E.D.N.Y. Aug. 27, 2007) ("Of course, the parties in the civil actions are 'free to petition this Court to lift or modify the stay should there be [a] change in circumstances that would warrant such action.'" (alteration in original) (quoting Brock v. Tolkow, 109 F.R.D. 116, 121 (E.D.N.Y. 1985))); see also Arden Way Assocs. v. Boesky, 660 F. Supp. 1494, 1500 (S.D.N.Y. 1987) ("The

Court may re-evaluate the situation if and when the balance of burdens, and private and public interests so requires.").

Cobra contends that limited relief from the stay of the Administrative Expense Motion is warranted because circumstances have changed significantly since the Court entered the Stay Orders. Specifically, Cobra points out that, at the time the Court entered the Initial Stay Order, a trial date in the criminal matter had been set for December 9, 2019, and when the Court entered the Second Stay Order, the trial date had been adjourned sine die and a status conference had been scheduled for February 13, 2020. In addition, Cobra maintains that Cobra and its parent company, Mammoth Energy Services Inc. (together with Cobra, the "Company"), are facing substantial hardship as a result of the ongoing stay. Cobra asserts that "PREPA's non-payment has already required the Company to renegotiate and amend its credit facility to avoid breaching covenants to its lenders[,]" thereby further constraining its liquidity. (Stay Mod. Mot. ¶ 6.) Moreover, Cobra contends that the Company's financial difficulties have been exacerbated by the global spread of COVID-19 and by volatility in the oil markets. Cobra argues that, due to the "urgency of these circumstances," the Court should partially lift the stay of the Administrative Expense Motion and permit Cobra to seek allowance of the Tax Claim. (Id. ¶ 7.)

As an initial matter, the Court acknowledges that the adjournment of the criminal trial until January 2021, at the earliest, constitutes a significant change in circumstances since the Court entered the Stay Orders. In imposing, and thereafter maintaining, a stay of the Administrative Expense Motion, the Court took into account all relevant considerations, including the anticipated timing of the criminal trial and the ongoing FEMA Investigation. (See, e.g., *January 29, 2020, Omnibus Hearing Transcript* (Docket Entry No. 10594), 61:12-20 ("Given that there is at least one conference and further developments in the criminal case to be

expected in the near term, and there is a target date for a report from FEMA . . . , the current stay on this administrative expense claim is continued.").) Because developments in the criminal matter are no longer imminent, it is appropriate for the Court to revisit its analysis regarding the propriety of the stay. The adjournment of the criminal trial alone, however, does not justify modification of the Stay Orders to permit litigation of the Tax Claim. Rather, in considering Cobra's request, the Court must evaluate all aspects of the current factual and procedural landscape.

According to Cobra, the likelihood that it will continue to be harmed increases as the delay in adjudication of the Administrative Expense Motion continues. With respect to the Tax Claim in particular, Cobra argues that PREPA's liability arises from a payment that Cobra made in 2018 under Puerto Rico law and that PREPA has a fixed contractual obligation to reimburse Cobra for the amount paid in 2018, notwithstanding any possible post-hoc adjustment of PREPA's liability for the underlying fee and expense payments that were taxed. Cobra further asserts that, because Cobra itself has not been indicted and PREPA previously approved the work underlying the tax payment, PREPA's arguments that it may be able to avoid contractual liability for the full reimbursement are speculative at best. PREPA maintains that the outcome of the criminal prosecutions, FEMA's ongoing review of PREPA's payment practices, or both, could affect its contract liability or, even if PREPA remains liable as a contractual matter, the degree to which the liability is one that warrants administrative priority treatment in the Title III proceeding.

Although PREPA's contractual arguments may well be strained, PREPA is entitled to make them, and to seek to make a case that any or all of its liability to Cobra is not the result of "actual [and] necessary costs and expenses of preserving" PREPA during the Title III

case, subject to the constraints of Federal Rule of Bankruptcy Procedure 9011 and the Court's case management authority. The liability and administrative expense eligibility inquiries are related but not necessarily co-extensive, and it is not inconceivable that, were PREPA to develop a factual case that some of the expenses are ones that were not reasonable or necessary, the Court could be persuaded that the related liability should be denied administrative expense priority and thus not fall into the category of expenses that must be paid in full as a condition of plan confirmation. The only urgency in respect of the Tax Claim is the product of Cobra's financial situation; Cobra has not identified any interest of PREPA that is served by undergoing the transaction costs of discovery and litigation of aspects of the dispute prior to resolution of the criminal case and the FEMA Investigation. Therefore, although the timeline of the criminal prosecution and Cobra's circumstances have changed, Cobra has not demonstrated that there has been a material change warranting modification of the stay of litigation in connection with any aspect of the Administrative Expense Motion, and the Stay Modification Motion is denied.

## CONCLUSION

For the foregoing reasons, the Stay Modification Motion is denied. The status report deadline of May 27, 2020, at 5:00 p.m., set forth in the Second Stay Order remains in effect, and the June 3, 2020, status conference will proceed as scheduled.

This Memorandum Order resolves Docket Entry No. 12531.

SO ORDERED.

Dated: May 21, 2020

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge