UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

MEMORANDUM OPINION AND ORDER REGARDING MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO AMEND TENTH AMENDED NOTICE, CASE MANAGEMENT AND ADMINISTRATIVE PROCEDURES REGARDING DISCLOSURE REQUIREMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019 (DOCKET ENTRY NO. 11746) AND AMENDED CROSS-MOTION OF ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AMBAC ASSURANCE CORPORATION, AND FINANCIAL GUARANTY INSURANCE COMPANY (DOCKET ENTRY NO. 12296)

The Court has received and reviewed the *Motion of Official Committee of*

*Unsecured Creditors to Amend Tenth Amended Notice, Case Management and Administrative*

*Procedures Regarding Disclosure Requirements Pursuant to Federal Rule of Bankruptcy*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Procedure 2019* (Docket Entry No. 11746 in Case No. 17-3283,[2] the "Committee Motion"), filed by the Official Committee of Unsecured Creditors (the "Committee"), and the *Amended Cross-Motion and Statement in Support on Behalf of Assured Guaranty Corp, Assured Guaranty Municipal Corp., Ambac Assurance Corporation, and the Financial Guaranty Insurance Company with Respect to Motion of Official Committee of Unsecured Creditors to Amend Tenth Amended Notice, Case Management and Administrative Procedures Regarding Disclosure Requirements Pursuant to Federal Rule of Bankruptcy Procedure 2019* (Docket Entry No. 12296, the "Cross-Motion" and, together with the Committee Motion, the "Motions"), filed by Assured Guaranty Corp, Assured Guaranty Municipal Corp., Ambac Assurance Corporation, and the Financial Guaranty Insurance Company (collectively, the "Monoline Insurers"), as well as the responses and replies thereto. The Court has considered carefully all of the submissions made in connection with the Motions.[3] The Motions request amendment of the Court's case management procedures (the "Case Management Order" or "CMO"[4]) to clarify and expand disclosures by groups and committees participating in the above-captioned Title III cases.

For the reasons explained below, the Motions are granted to the extent set forth herein, and the Motions are otherwise denied.

---

[2] All docket entry references are to entries in Case No. 17-3283, unless otherwise specified.

[3] (See Docket Entry No. 12217 (the "PSA Creditors Response"), Docket Entry No. 12221, Docket Entry No. 12425, Docket Entry No. 12471 (the "LCDC Response"), Docket Entry No. 12475 (the "Committee Reply"), Docket Entry No. 12476 (the "QTCB Response"), Docket Entry No. 12478, Docket Entry No. 12547, Docket Entry No. 12556, Docket Entry No. 12557, and Docket Entry No. 12558 (the "Monolines Reply").)

[4] The operative Case Management Order is annexed as Exhibit 1 to the *Order Further Amending Case Management Procedures* (Docket Entry No. 11885).

DISCUSSION

In 2017, shortly after the Title III filings of the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Electric Power Authority ("PREPA"), the Court amended the Case Management Order in these jointly administered cases to require reporting pursuant to Federal Rule of Bankruptcy Procedure 2019 of the disclosable economic interests (as defined in the Rule) of certain groups and committees of creditors. The Rule 2019 provision of the CMO has since been amended to provide additional specificity as to certain aspects of reporting, and the Court has issued an order governing reporting by the Committee. (*Order Regarding Compliance by the Official Committee of Unsecured Creditors with Federal Rule of Bankruptcy Procedure 2019*, Docket Entry No. 7256.)

The Motions seek to modify the Case Management Order in four additional ways.[5] First, the Motions seek to require enhanced specificity in disclosures from Rule 2019(b) Groups (as defined below). The Motions seek to require each Rule 2019(b) Group to disclose information concerning the specific series of Commonwealth and Puerto Rico Public Buildings Authority ("PBA" and, together with the Commonwealth, COFINA, ERS, HTA and PREPA, the "Title III Debtors") bonds in which each member holds economic interests. (Comm. Proposed Order ¶¶ 1, 5.) The Committee's proposal would require Rule 2019(b) Groups' disclosures to categorize such interests in a manner corresponding to the classification of claims contemplated

---

[5]  Reference is made herein to the proposed orders filed by the Committee in connection with the Committee Motion (Docket Entry No. 11746-1, the "Committee Proposed Order") and by the Monoline Insurers in connection with the Cross-Motion (Docket Entry No. 12296-1, the "Monolines Proposed Order").

by the *Plan Support Agreement* dated February 9, 2020 (the "New PSA"). Second, the Motions seek to clarify and/or expand the temporal scope of Rule 2019(b) disclosures by requiring detailed disclosures retroactively to May 31, 2019, and to the same level of detail going forward therefrom, and by amending the Case Management Order's examples of actions that constitute "tak[ing] a position before the Court" (and therefore trigger Rule 2019 disclosure obligations) to include "executing a plan support agreement or similar restructuring agreement." (Comm. Proposed Order ¶ 3.) Third, the Cross-Motion seeks to further expand the required disclosures to include holdings of bonds issued by COFINA pursuant to its plan of adjustment (which was confirmed by the Court in February 2019), and of bonds issued by the Puerto Rico Infrastructure Financing Authority ("PRIFA") and the Puerto Rico Convention Center District Authority ("CCDA"). (Monolines Proposed Order ¶ 5.) Fourth, the Cross-Motion argues that each Rule 2019(b) Group should be required update its disclosures with respect to all Title III Debtors every time such group takes a position before the Court or solicits votes with respect to a plan with respect to any one or more of the Title III Debtors. (Cross-Mot. ¶ 66.)

The Court will first describe more fully the applicable requirements of the current Case Management Order and Rule 2019 and then address each aspect of the relief sought in the Motions.

Rule 2019, made applicable to the above-captioned Title III cases by 48 U.S.C. § 2170 and section IV of the Case Management Order, provides, in relevant part, that "every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another" (a "Group" or a "Rule 2019(b) Group") is required to file a verified statement, Fed. R. Bankr. P. 2019(b)(1),

setting forth (among other things) the "nature and amount of each disclosable economic interest held in relation to the debtor" with respect to each member of the 2019(b) Group. Fed. R. Bankr. P. 2019(c)(2)(B). The Rule does not specify the timing of the initial report. In these Title III cases, the relevant portion of the Case Management Order ties the initial reporting date to certain activity on the part of a Group in connection with any of the cases after August 9, 2017, providing that any

> Rule 2019(b) Group that first takes a position before the Court or solicits votes regarding the confirmation of a plan on behalf of another after August 9, 2017, must file a verified statement compliant with Federal Rule of Bankruptcy Procedure 2019(c) within five (5) calendar days of taking such position before the Court or soliciting such votes.

(Case Management Order ¶ IV.B.)[6] Rule 2019(d) provides that, after an initial verified statement is filed, a reporting entity must supplement its report if the previously disclosed facts have changed materially at the time the Group takes a position before the Court or solicits votes on confirmation of a plan.[7] The CMO incorporates this requirement, providing that, following the initial disclosures, each Group is required to supplement its disclosures as follows:

---

[6] The quoted language governs Rule 2019(b) Groups that take positions before the Court after August 9, 2017. Paragraph IV.A of the Case Management Order governs Rule 2019(b) Groups that took positions before the Court on or before August 9, 2017, and it similarly required that such Groups "file a verified statement that complies with the disclosure requirements enumerated by Federal Rule of Bankruptcy Procedure 2019 . . . ."

[7] Rule 2019(d) provides as follows:

> Supplemental Statements. If any fact disclosed in its most recently filed statement has changed materially, an entity, group, or committee shall file a verified supplemental statement whenever it takes a position before the court or solicits votes on the confirmation of a plan. The supplemental statement shall set forth the material changes in the facts required by subdivision (c) to be disclosed.

> If any fact disclosed in the Rule 2019(b) Group's most recently filed statement (including, but not limited to, information concerning the composition of the Rule 2019(b) Group) changes materially, the Rule 2019(b) Group must file a supplemental verified statement contemporaneously with or within 48 hours after the next instance in which the Rule 2019(b) Group takes a position before the Court or solicits votes on the confirmation of a plan. Federal Rule of Bankruptcy Procedure 9011 applies to attorneys filing such supplemental statements. The absence of such a supplemental statement shall be deemed a representation that no material changes have occurred.

(Case Management Order ¶ IV.C.)

"The direct antecedent of Rule 2019 was Rule 10–211 under former Chapter X of the Bankruptcy Act," which "was designed to 'provide a routine method of advising the court and all parties in interest of the actual economic interest of all persons participating in the proceedings.'" In re Washington Mut., Inc., 419 B.R. 271, 277-78 (Bankr. D. Del. 2009) (quoting Securities and Exchange Comm'n, Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees (1937)). Courts have recognized that the potential for Groups to use collective action to enhance their bargaining leverage and credibility in an insolvency case heightens the need for members of such Groups to disclose the economic interests underlying their litigation positions. In re Washington Mut., Inc., 419 B.R. at 280; In re Nw. Airlines Corp., 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007). Accordingly, the disclosure requirements of Rule 2019 allow creditors to assess "whether [a particular group] will represent their interests" and provides "all parties a better ability to gauge the credibility of an important group that has chosen to appear in a bankruptcy case and play a major role." In re Nw. Airlines Corp., 363 B.R. 704, 709 (Bankr. S.D.N.Y. 2007).

---

Fed. R. Bankr. P. 2019(d).

In 2011, Rule 2019 was amended "to expand the scope of its coverage and the content of its disclosure requirements." Fed. R. Bankr. P. 2019 advisory committee's note to 2011 amendments. Among other changes, the 2011 amendments require members of Rule 2019(b) Groups to report their "disclosable economic interests," a term intended to "be sufficiently broad to cover any economic interest that could affect the legal and strategic positions a stakeholder takes in a" restructuring case, id., including both direct and derivative financial interests. See Fed. R. Bankr. P. 2019(a)(1) (defining a "disclosable economic interest" as "any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest"); cf. In re Washington Mut., Inc., 419 B.R. at 279 ("The proliferation of short-selling and the advent of myriad derivative products now allow creditors to take multiple stakes in the capital structure of debtors. Such varied holdings have the potential to create complex, conflicting incentives for large creditors.").

The Rule 2019 disclosures filed in these Title III cases have not, until recently, distinguished between credits of which the Commonwealth is a direct issuer and those of which it is a guarantor. Additionally, although certain parties have asserted claims based on holdings of instrumentality debt, and have asserted that those holdings provide them rights in revenues or cash flows to which the Commonwealth asserts ownership, the Rule 2019 verified statements do not appear to have disclosed holdings of bonds issued by such instrumentalities (or rights allegedly derived therefrom) as disclosable economic interests in relation to the Commonwealth.

The Motions come in the wake of a period of approximately sixteen months in which Debtor entities and creditors have initiated contested matters challenging claims tied to subclasses of bond holdings identified by issuance dates, issuers, or other particular

characteristics. The plan of adjustment most recently proposed by the Oversight Board on behalf of the Commonwealth, ERS, and PBA separately classifies and provides different distributions in respect of, among other debts, different series or issuance years of general obligation ("GO") bonds issued by the Commonwealth, PBA bonds, claims against the Commonwealth that are based on the retention of funding streams historically transferred to repay other instrumentality bond issues, and general unsecured debt. (See *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, Docket Entry No. 11946.) An earlier Commonwealth plan support agreement (the "Initial PSA") and related proposed plan of adjustment had provided for substantially greater disparities in distributions with respect to the different classes of GO bond claims. The introduction of the current proposed plan followed, among other things, a period of confidential mediation.

The Committee and other stakeholders have asserted that enhanced disclosures would aid in determining whether bondholder groups supporting the current proposed plan may have made strategic acquisitions or dispositions of GO bonds in anticipation of revised plan provisions that would treat certain issuances more favorably than did the initial proposal and that, in any event, litigation positions taken with respect to the proposal may be driven by economic factors that are obscured by aggregate disclosures of holdings of "Constitutional Debt" or "General Obligation Bonds." (See, e.g., Comm. Mot. ¶¶ 23, 28; Cross-Mot. ¶¶ 2, 3.) Those broad categories do not distinguish among issuance dates, the status of the Commonwealth as guarantor or issuer of the debt, or other factors that may be at issue in pending contested matters and adversary proceedings, or that may be significant under the Oversight Board's proposed plan. Movants also argue that the current plan's provisions for payments in connection with PBA bonds and for the exchange of GO bonds for new junior securities to be issued by COFINA

are economically significant, and they contend that particularized reporting would enable them to assess the economic motivations of plan supporters and other parties in interest. (Cross-Mot. ¶¶ 55, 60.) The Committee has requested detailed disclosures corresponding to the classification of bonds in the current proposed plan of adjustment, as well as disclosure concerning PBA holdings. Cross-Movants seek to require disclosure of holdings of debt issued by non-debtors PRIFA and CCDA as well.[8]

1. <u>Disclosure of Commonwealth and PBA Bonds by Series</u>

The Committee Motion requests that the Court modify the Case Management Order to incorporate language requiring each Group to specifically disclose "without limitation, holdings of bonds categorized" into the following categories: Pre-2011 Commonwealth Bonds, 2011 Commonwealth Bonds (D / E / PIB), 2011 Commonwealth Bonds (C), 2012 Commonwealth Bonds, 2014 Commonwealth Bonds, Pre-2011 PBA Bonds, 2011 PBA Bonds, and 2012 PBA Bonds. (Comm. Proposed Order ¶¶ 2, 5.) The Committee's Motion adopts that categorization scheme from the New PSA (Comm. Mot. ¶ 25), and argues that disclosure of those categories of holdings is "vital to understand . . . why certain groups support the New PSA . . . and what the true economic interests of these groups really are." (Comm. Mot. ¶ 5.) The Committee Motion argues that Rule 2019's purpose is to allow parties to understand the economic interests underlying each Group's "legal and strategic positions" in an insolvency case. (Comm. Mot. ¶ 39.) Pointing to Rule 2019(c)'s requirement that initial reports disclose the nature and amount of "each" disclosable economic interest held in relation to the debtor by each

---

[8] Other objectors and responders to the Motions have made additional suggestions about, or raised issues concerning, the disclosure practices of other parties in interest. Because those issues are not the subjects of pending motion practice, the Court will not address them specifically here.

member of a group, the Committee argues that Rule 2019 requires disclosure at the level of specificity requested by the Committee. (Comm. Mot. ¶¶ 38-39.)

In response, certain Groups that are parties to the New PSA (collectively, the "PSA Creditors") contend that Rule 2019 does not require such particularized disclosure and proffer that they have already complied with the applicable disclosure requirements (see, e.g., PSA Creditors Resp. ¶ 5; LCDC Resp. ¶ 38), and that the relief sought in the Committee Motion would therefore represent an unwarranted "extra-statutory burden[]" on the Groups that are active in the Title III cases. (PSA Creditors Resp. ¶ 4.) As an alternative, the PSA Creditors have submitted a disclosure of their aggregated holdings broken down into the seven categories enumerated in the Committee Motion (attached as Exhibit A to the PSA Creditors Response), and they state that the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") "may" disclose certain "periodic holdings information updates" that the PSA Creditors provide on an aggregate basis to the Oversight Board pursuant to disclosure provisions of the PSA. (PSA Creditors Resp. ¶ 6.) They oppose any further augmentation of their Rule 2019 reporting responsibilities. Certain of the PSA Creditors have also supplemented their disclosures, but on a "voluntary" basis. (See QTCB Resp. ¶ 3; LCDC Resp. ¶ 4.)

The Case Management Order requires each Group to "file a verified statement compliant with Federal Rule of Bankruptcy Procedure 2019(c) . . . ." (Case Management Order ¶ IV.B.)[9] Rule 2019(c) requires, among other things, that each such verified statement "shall

---

[9] This language from the Case Management Order is applicable to initial reporting by Rule 2019(b) Groups that have taken positions before the Court after August 9, 2017. (Case Management Order ¶ IV.B.) Groups that took a position before the Court on or prior to August 9, 2017, were required under the Case Management Order to "file a verified statement that complies with the disclosure requirements enumerated by Federal Rule of Bankruptcy Procedure 2019 by August 24, 2017 at 5:00 p.m. (Atlantic Standard Time)."

include . . . the nature and amount of each disclosable economic interest held in relation to the debtor." Fed. R. Bankr. P. 2019(c)(2)(B). Rule 2019 defines a disclosable economic interest as "any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest." Fed. R. Bankr. P. 2019(a)(1). The Bankruptcy Code defines a "claim" as a

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured . . . .

11 U.S.C.A. § 101 (Westlaw through P.L. 116-140).

The Rule 2019(b) Groups that are the focus of this motion practice have already filed initial disclosures in accordance with their views of the requirements of the current Case Management Order. Most, if not all, of those disclosures aggregated debt issued by the Commonwealth with the debt of other entities to which the Commonwealth stands as guarantor. Those reports did not break down debt by series or other subdivisions that are, in light of various claim objections that have been asserted and the classifications delineated by the current proposed plan, relevant to the discernment of the degree to which particular creditors could benefit from the plan and, Movants argue, to creditors' motivations in supporting or opposing the plan and its predecessor incarnation. Among other things, they seek to be able to map the target

---

(Case Management Order ¶ IV.A.) The difference between the requirements applicable to these two sets of Groups is not material for present purposes.

Groups' changes of position to changes in their ownership of series or issue-date subgroupings of debt of the Commonwealth and its instrumentalities.

The "right[s] to payment" at issue in the Committee Motion are rights under different series of bonds, each of which may have different economically and legally significant characteristics, issued and/or guaranteed by certain Title III Debtors. Rule 2019 requires members of a Group to disclose "each" such interest. Disclosures of only broad categories of claims that aggregate different series of bonds are insufficient to disclose "each" interest as required by the rule. The need for such specificity in these Title III cases to ensure that the Court and parties following the cases are apprised of the economic interests underlying Rule 2019(b) Groups' litigation and plan confirmation-related positions has become apparent with the particularized claim objection practice and plan proposals that have emerged in arguments presented to the Court since the beginning of 2019. (See, e.g., *Omnibus Objection of (I) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds*, Docket Entry No. 4784, the "Initial GO Bond Objection" (seeking disallowance of "all claims based on Commonwealth of Puerto Rico general obligation . . . bonds issued in or after March 2012").) Disclosure of only undifferentiated categories does not provide interested parties with information concerning the "cross-structure holdings of the investors involved in ad hoc groups," In re Washington Mut., Inc., 419 B.R. 271, 280 (Bankr. D. Del. 2009) (quoting James M. Shea, Jr., Note, Who Is at the Table? Interpreting Disclosure Requirements for Ad Hoc Groups of Institutional Investors Under Federal Rule of Bankruptcy Procedure 2019, 76 Fordham L. Rev. 2561, 2622 (2008)), and raises the risk of "a situation

where, although a creditor is nominally a member of a certain class of creditors through ownership of securities in that class, the creditor may in fact have a total economic interest adverse to the class as a whole." Id.

Augmentation of the initial reporting is therefore required to comply with Rule 2019 and serve the purposes of Rule 2019 and the related disclosure provision of the Case Management Order. The Committee's proposal to track the current proposed plan's classification structure is not, however, an appropriate approach, as it ties the extent of disclosure to an artificial structure established by a mere proposal that may change, rather than reflecting the structural features of the instruments constituting or underlying the disclosable economic interests.

Accordingly, the Committee's motion is granted to the extent that more detailed reporting compliant with Rule 2019 will be required, but is denied to the extent that it seeks a mandate to report in a fashion tied to the Oversight Board's current proposed plan of adjustment.

Because the aggregate reporting approach in the Groups' initial and supplemental filings do not provide an appropriate baseline for the analytical opportunities that must be made available to stakeholders and the public in the context of these complex, interrelated Title III cases, some retroactive initial reporting and revision of previously-filed supplemental reports will be necessary. The Court now turns to the Movants' proposal to require reporting retroactive to the execution date of the Initial PSA.

2. The Temporal Scope of Rule 2019 Disclosures

The Motions ask the Court to expand the temporal scope of Rule 2019(b) Groups' disclosure requirements by modifying the Case Management Order in two related ways. First, the Motions would add "executing a plan support agreement or similar restructuring agreement"

to the Case Management Order's list of examples of actions that constitute "tak[ing] a position before the Court." Second, the Motions would have the Case Management Order require that all of the enhanced disclosures requested by the Motions be made retroactive to May 31, 2019, the date of the execution of the Initial PSA. (Monolines Proposed Order ¶ 4.) The Committee argues that "retroactive disclosure is warranted as a result of the execution of the Initial PSA, the positions taken by Rule 2019(b) Groups with respect thereto, and the significant trading activity in the period until the execution of the New PSA." (Comm. Reply ¶ 15.) In response, the PSA Creditors contend that "entering into an agreement with the Oversight Board . . . does not constitute a pleading, proof of claim, informative motion, or any other position before the court in the Title III cases." (PSA Creditors Resp. ¶ 4.)

The Court finds that May 31, 2019—the PSA execution date—is not a proper reference date for retroactive reporting. As previously noted, Rule 2019 does not include a specific reference point for initial reports. Its use of "taking a position before the court" or solicitation of votes in favor of a plan as triggers for supplemental reporting, Fed. R. Bankr. P. 2019(d), and its use of "tak[ing] a position before the court or . . . solicit[ing] votes regarding the confirmation of a plan" in its definition of the term "represent," Fed. R. Bankr. P. 2019(a)(2), strongly indicate, however, that its focus is on the ability to have information sufficient to analyze activity connected with the litigation of a case or the confirmation of a plan in the context of a court proceeding. The advisory committee notes to Rule 2019 offer the following commentary concerning the definition of the term "represent" that similarly focuses on activity in the specific context of a court or confirmation proceeding:

> The definition provides that representation requires active participation in the case or in a proceeding on behalf of another entity--either by taking a position on a matter before the court or by soliciting votes on the confirmation of a plan. Thus, for

> example, an attorney who is retained and consulted by a creditor or equity security holder to monitor the case, but who does not advocate any position before the court or engage in solicitation activities on behalf of that client, does not represent the creditor or equity security holder for purposes of this rule.

Fed. R. Bankr. P. 2019 advisory committee's note to 2011 amendments. This guidance implies that taking a position before a court does not encompass all activities pertaining to a case taken by parties in interest, including activities that occur outside of a court, but rather is limited to activities in court hearings or conferences or in filings on the court's docket. The Case Management Order similarly provides two non-exhaustive lists of actions that constitute taking a position before the Court, and they, consistent with the advisory committee's note, all involve litigation activities or advocacy directed at the Court:

> For the avoidance of doubt, the phrase "takes a position before the Court" includes, but is not limited to, the filing of any Pleading by or on behalf of a Rule 2019 Group in any Title III case or related adversary proceeding, including informative motion practice containing factual or legal representations or arguments.

(Case Management Order ¶ IV.A n.3.)

> For the avoidance of doubt, a Rule 2019 Group takes a position in the case of a Title III Debtor by appearing in such Debtor's Title III case or related adversary proceeding in any capacity, including by, among other things, filing a Pleading, filing an informative motion, executing a court-approved stipulation, filing a proof of claim, appearing at a hearing before the Court, or asserting any legal or factual positions that would in any way impact the property or rights of the Title III Debtor.

(Case Management Order ¶ IV.A n.4.)

Mere entry into an agreement to support a proposal that may ultimately be presented to the Court in the form of a plan of adjustment—and thereafter litigated—is not such activity. Thus, there is no proper legal or factual basis for the request that the Court define entry into a plan support agreement as "taking a position before the Court," and use of that event as a

baseline reporting trigger point is also inconsistent with the general context and tenor of Rule 2019 reporting.

Thus, the Court declines to amend the Case Management Order's non-exhaustive list of conduct that constitutes "tak[ing] a position before the Court," and will not make May 31, 2019, the operative date for any retroactive disclosure requirement.

However, Rule 2019(e) empowers the Court to provide "appropriate relief" when faced with noncompliance with the provisions of Rule 2019. As explained above, many of the reports filed to date are noncompliant insofar as they aggregate holdings in broad categories, do not differentiate between issuers and guarantors, and otherwise fail to make disclosures in a manner consistent with Rule 2019's definition of "disclosable economic interest," which mandates disclosure of derivative interests as well as direct ones. The relationships among the jointly administered Title III Debtors and the legal and economic issues implicated by instrumentality sharing or cross-commitments of revenues, bond guarantees, and myriad other economic interrelationships also render necessary, for proper and consistent understanding of the holdings and potential motivations of reporting entities, disclosure of all such economic interests with respect to each of the jointly administered Title III Debtors in each required report.

Because the differentiation in the context of litigation among and between series and vintages of bond issues commenced in earnest with the Initial GO Bond Objection and procedural disputes in connection therewith, the Court has concluded that the most appropriate remedy for the noncompliant Rule 2019 reporting is to require renewed initial Rule 2019(c)-compliant reporting as of January 14, 2019, and the restatement of all supplemental reports filed since that date, with compliant supplemental and initial (to the extent new Rule 2019(b) Groups take positions or solicit votes) reporting going forward. As provided in the amended blacklined

version of section IV of the CMO that is appended to this Memorandum Opinion and Order as Addendum A and for the reasons explained herein, all such reporting must cover distinct disclosable economic interests in relation to each of the Title III Debtors, whether or not the reporting entity contends that it is taking a position before the Court with respect to fewer than all of the Title III Debtors.

3. <u>Disclosure of Interests with Respect to Bonds Issued by COFINA, PRIFA, and CCDA</u>

The parties also disagree as to whether the Case Management Order should be modified to specifically require the disclosure of holdings of bonds issued by COFINA pursuant to its plan of adjustment, PRIFA, and CCDA. (<u>See, e.g.</u>, Cross-Motion ¶¶ 56-57.)

As with the request to include language in the CMO specifically enumerating the categories of claims that each Rule 2019(b) Group must report, this request is denied. However, to the extent that reporting entities have disclosable economic interests in relation to Title III Debtors that arise out of bonds issued by COFINA pursuant to its plan of adjustment, PRIFA, or CCDA, compliance with Rule 2019(c) may require disclosure of bond holdings with respect to these entities.

Accordingly, the Cross-Motion is denied to the extent it seeks to modify the Case Management Order to specifically require the disclosure of interests in bonds issued by COFINA, PRIFA, and CCDA.

4. <u>Disclosure of Interests with Respect to All Title III Debtors</u>

Finally, the parties disagree as to whether, when a Group takes a position before the Court (or solicits votes on a plan) with respect to one or more Title III Debtors (thereby triggering its obligation to disclose material changes that have occurred with respect to its most recently filed verified statement), that Group is also obligated to file a supplemental verified

statement with respect to all Title III Debtors, even if the position that the Group took (or the plan for which votes were solicited) concerned fewer than all of the Title III Debtors. (See, e.g., Cross-Mot. ¶¶ 58, 66; Monolines Reply ¶ 9; LCDC Resp. ¶ 37.)

As explained above, litigation in the Title III cases has demonstrated that there are significant statutory and contractual relationships among the Title III Debtors. These connections have become more apparent in the past sixteen months in light of plan-related litigation and disputes concerning claims against the Title III Debtors and bonds issued by the Title III Debtors and affiliated instrumentalities.[10]

These disputes have demonstrated that holdings of claims against multiple Debtors may have implications that are not readily apparent from identification of the issuer of a bond or other obligation. Thus, although the Title III Debtors' cases are not substantively consolidated, disclosure of each Group member's disclosable economic interests with respect to all of the jointly administered Title III Debtors is the most properly informative and efficient means to accomplish the purposes of Rule 2019. Consistent with Rule 2019(d), material changes

---

[10] (See, e.g., Initial GO Bond Objection ¶¶ 61, 65 (seeking disallowance of certain GO bond claims on the basis that bonds issued by PBA are, in substance, direct obligations of the Commonwealth and subject to the debt service limit provision of the Commonwealth constitution); *Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of Certain Puerto Rico Public Buildings Authority Bonds*, Docket Entry No. 8141 (alleging that PBA bonds were issued in violation of the debt service limit provision of the Commonwealth constitution); *Renewed Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Appointment as Trustees Under 11 U.S.C. § 926*, Docket Entry No. 9260 (seeking authority to pursue claims against the Commonwealth to recover allegedly unlawfully transferred ERS property); *Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection*, Docket Entry No. 10102 (alleging that the Commonwealth has diverted and misappropriated funds that are the property of HTA and its bondholders).)

in such disclosures must be updated with respect to all Title III Debtors whenever a Group takes a position before the Court or solicits votes on a plan with respect to one or more of the Debtors.

The modifications to the Case Management Order in Addendum A reflect the above requirements.

### CONCLUSION

The Motions are granted to the extent they are consistent with the reporting principles set forth above and are denied in all other respects. The Court will give notice of a proposed amendment to the Case Management Order substantially as set forth in Addendum A hereto, providing seven days for interested parties to offer technical comments. This Order resolves Docket Entry Nos. 11746, 12216, and 12296 in Case No. 17-3283.

SO ORDERED.

Dated: May 26, 2020

      /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge