# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 4780-LTS |

## PREPA'S OBJECTIONS AND RESPONSES TO UTIER'S DISCOVERY REQUEST PURSUANT TO ORDER ON MOTION FOR PROTECTIVE ORDER, DOCKET NO. 1995

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Pursuant to Rules 7026, 7033, and 7034 of the Federal Rules of Bankruptcy Procedure, incorporating by reference Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, made applicable to contested matters through Rule 9014 of the Federal Rules of Bankruptcy Procedure, made applicable to this contested matter under Section 310 of PROMESA (48 U.S.C. § 2170), the Puerto Rico Electric Power Authority ("PREPA") by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as PREPA's representative pursuant to section 315(b) of PROMESA, and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") as PREPA's representative pursuant to Act 2-2017, hereby submit the following Objections and Responses of PREPA to the *Discovery Request Pursuant to Order on Motion for Protective Order, Docket No. 1995* propounded by the Creditor Unión de Trabajadores de la Industria Eléctrica y Riego Inc. ("UTIER") on May 19, 2020 (the "May 19 Requests").

## PRELIMINARY STATEMENT

PREPA's Responses and Objections are based, and will be based, only upon the information that is currently available to and specifically known to PREPA as of the date hereof. PREPA reserves the right to amend or supplement the Responses and Objections at any time in light of future investigation, research, or analysis.  PREPA has made reasonable efforts to respond to the UTIER's May 19 Requests as PREPA understands and interprets them.  If UTIER subsequently asserts an interpretation of the May 19 Requests that differs from PREPA's, PREPA reserves the right to supplement these Responses and Objections.

## GENERAL OBJECTIONS

1.  PREPA objects to the May 19 Requests to the extent that they purport to impose burdens on PREPA that are inconsistent with, or not otherwise authorized by, or seek to impose obligations that exceed those imposed by, the Federal Rules of Civil Procedure, the Federal

Rules of Bankruptcy Procedure, the local rules for the United States Bankruptcy Court for the District of Puerto Rico, the Court's chambers practices and case management orders, and Judge Dein's *Order on Motion for Protective Order* (ECF No. 1995) issued on May 18, 2020 (the "May 18, 2020 Order" and collectively, the "Governing Rules").  PREPA will construe and respond to the May 19 Requests in a manner consistent with its obligations under the Governing Rules.

2.      PREPA objects to the May 19 Requests to the extent that the information sought is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  Nothing in the Responses and Objections is intended to waive, nor shall in any way be deemed a waiver of, any of these privileges, doctrines, or immunities.  Information protected by these privileges, doctrines, or immunities is not subject to disclosure, and PREPA will not provide it.  PREPA intends to and does assert any and all such privileges with respect to all such information.

3.      PREPA objects to the May 19 Requests as unduly burdensome to the extent that they seek information beyond what is permitted by the May 18, 2020 Order and are disproportionate to the needs of the summary proceeding on the Motion to Assume.

4.      PREPA objects to the May 19 Requests to the extent they place an unreasonable burden on PREPA, including without limitation by seeking information that is equally or more readily available from public sources or that is already available to UTIER.

5.      PREPA objects to the May 19 Requests to the extent that they (i) imply the existence of facts or circumstances that do not or did not exist, or (ii) state or assume legal or factual conclusions.  By providing these objections and responses, PREPA does not admit any

3

factual or legal premise in the May 19 Requests.

6.      PREPA objects to the May 19 Requests to the extent they seek information for an undefined or unstated period of time on the grounds that such requests are vague, ambiguous, overbroad, unduly burdensome and oppressive, and seek information not relevant to the issues to be resolved in this summary proceeding on the Motion to Assume nor reasonably calculated to lead to the discovery of admissible evidence.

7.      PREPA objects to the May 19 Requests as vague and ambiguous to the extent the term "Contracts" used therein is undefined.  PREPA will construe the term "Contracts" to refer to (i) the Amended and Restated Power Purchase and Operating Agreement, dated as of March 27, 2020, between PREPA and EcoEléctrica, L.P. ("ECO"), filed as Exhibit B-1 to the Motion to Assume, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 17-04780-LTS, ECF No. 1951-2 (D.P.R. Apr. 1, 2020) (the "ECO PPOA"); and (ii) the Amended and Restated Natural Gas Sale and Purchase Agreement, dated as of March 23, 2020 between PREPA and Gas Natural Aprovisionamientos SDG, S.A. ("Naturgy"), filed as Exhibit B-2 to the Motion to Assume, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 17-04780-LTS, ECF No. 1951-3 (D.P.R. Apr. 1, 2020) (the "Naturgy GSPA").

8.      The above General Objections are incorporated into each of the following specific Responses and Objections.

## **OBJECTIONS TO DEFINITIONS AND RULES OF CONSTRUCTION**

1.      PREPA objects to the "INSTRUCTIONS and DEFINITIONS" "incorporated by reference to this request for discovery" from "the previous set of Interrogatories and Requests for Production of Documents"—as stated in UTIER's May 19 Requests—to the extent they purport to impose any obligation different from or greater than those imposed by the Governing Rules.

In responding to the May 19 Requests, and unless otherwise noted, PREPA will construe all words in accordance with their ordinary English meaning, as informed by the Governing Rules.

2.      PREPA objects to the definition of the term "PREPA" as overbroad, unduly burdensome, vague, ambiguous, not proportional to the needs of the Motion to Assume insofar as it encompasses "the Puerto Rico Fiscal Agency and Financial Advisory Authority and its governing board, and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on PREPA's behalf."  In responding to the May 19 Requests, PREPA will construe "PREPA" to mean only PREPA and its current employees, officials, and known agents reasonably likely to possess personal knowledge of information relevant to the "procedures followed by PREPA in negotiating and deciding whether to assume the Contracts"; "factors considered by PREPA in deciding whether to assume the Contracts"; and "PREPA's analysis of factors it considered in deciding whether to assume the Contracts."  (Protective Order at 2–3.)

## SPECIFIC OBJECTIONS AND RESPONSES

**I.      Documents reflecting the procedures followed by PREPA in negotiating and deciding whether to assume the Contracts.**

### A.      *Interrogatories*

**INTERROGATORY I.A.1:**

Explain why PREPA decided to override the competitive bidding process in favor of assuming or executing the Contracts.

**RESPONSE TO INTERROGATORY I.A.1:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative

5

process privilege, the common interest privilege, or any other applicable privilege.  PREPA
further objects to this interrogatory as beyond the scope of the limited discovery allowed in the
May 18, 2020 Order.  PREPA further objects to this interrogatory as argumentative and improper
on the ground that it incorrectly presumes that PREPA "decided to override the competitive
bidding process."  PREPA further objects to this interrogatory on the ground that it assumes a
competitive bidding process was required by law.  PREPA further objects to this interrogatory to
the extent it calls for legal argument rather than factual information.

Subject to and without waiving its general and specific objections, PREPA responds as
follows: PREPA did not "override" a competitive bidding process because no such process was
required.  Pursuant to Federal Rule of Civil Procedure 33(d), made applicable to this contested
matter by Federal Rules of Bankruptcy Procedure 7033 and 9014, PREPA directs UTIER's
attention to section I of the Justification Memorandum, dated October 29, 2019 prepared by
Fernando Padilla produced at PREPA-00206 (the "Justification Memo") and to the "Request for
Approval of Amended and Restated Power Purchase and Operating Agreement with
EcoEléctrica and Natural Gas Sale and Purchase Agreement with Naturgy; Request for
Confidential Treatment of this Letter and Accompanying Attachments" dated November 4, 2019
filed with the Puerto Rico Energy Bureau in Case No. NEPR-AP-2019-0001 on November 5,
2019 and produced at PREPA-00001 (the "PREB Approval Request") at 16-17.

**INTERROGATORY I.A.2:**

Explain what internal processes PREPA usually has in place for procurements that are
not subject to competitive bidding and whether they were they executed for the Contracts

**RESPONSE TO INTERROGATORY I.A.2:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order, particularly insofar as it seeks information regarding PREPA's general procurement processes beyond the negotiation and review of the Contracts.  PREPA further objects to this interrogatory on the ground that the term "executed" is vague and ambiguous in this context.  PREPA construes this interrogatory to be asking whether PREPA followed its ordinary processes for procurements that are not subject to competitive bidding when it negotiated the Contracts.

Subject to and without waiving its general and specific objections, PREPA responds as follows:  To the extent this interrogatory seeks information specific to PREPA's process for approving the Contracts, PREPA directs UTIER's attention to its response to Interrogatory No. I.A.3.

## INTERROGATORY I.A.3:

Describe the process of negotiation between PREPA, EcoEléctrica and Naturgy for the terms of the Contracts.

## RESPONSE TO INTERROGATORY I.A.3:

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as vague and overbroad.  PREPA further objects to this interrogatory on the ground that it is vague and ambiguous as to whether it seeks information

regarding the overall process to negotiate the Contracts, or the process for negotiating the termination dates for the Contracts.  PREPA construes this interrogatory to be seeking an overview of the process PREPA followed in negotiating the Contracts.

Subject to and without waiving its general and specific objections, PREPA responds as follows:  PREPA commenced preliminary discussions with ECO and Naturgy concerning the potential amendment and extension of the ECO PPOA and the Naturgy GSPA in the fourth quarter of 2018.  These discussions involved representatives of PREPA's Project Management Office, including Fernando Padilla, as well as PREPA's Executive Director, José Ortiz. PREPA's representatives were guided in these preliminary discussions by cost savings targets established in the PREPA Fiscal Plan as well as initial results of Integrated Resource Plan modeling and capacity planning analyses being performed at the time.  These targets and analyses identified goals relating to generating capacity and natural gas pricing, as well as the enhanced dispatch and operating flexibility necessary to accommodate renewable generation additions, which PREPA pursued in proposing agreement terms and evaluating ECO and Naturgy responses.  These considerations are summarized in the PREB Approval Request at 4.

Beginning in June 2019 and through October 2019 PREPA conducted extensive, arms-length negotiations with ECO and Naturgy, building on the parties' preliminary discussions. These negotiations were conducted via conference calls, exchange of documents and in-person meetings within and outside of Puerto Rico.  Fernando Padilla and Francisco Santos of PREPA's Project Management Office led the negotiations for PREPA.  Dennis Zabala, Terry Coyne and Katherine Hernandez of Sargent & Lundy advised PREPA on technical and financial matters for both transactions.  King & Spalding ("K&S") provided negotiation support and legal advice on non-Puerto Rico law matters, through two teams: (i) for the ECO PPOA, Kelly Malone and

Kevin Futch, and (ii) for the Naturgy GSPA, David Lang, Kelly Malone and Evan Korngold. Mara Vázquez, now with Diaz & Vázquez, provided advice on Puerto Rico law matters. Maria DiConza and Joseph Spina of O'Melveny & Myers LLP ("O'Melveny") provided legal advice on matters relating to PREPA's Title III restructuring.

Formal negotiation of transaction-related documents began in July 2019 and continued through October 2019. PREPA conducted these negotiations with each counterparty separately, and did not share details of the negotiations with either counterparty with the other. Carlos Reyes, José Gonzalez, José Cruz and Jorge Ramirez comprised the core team from ECO. A team from Shearman & Sterling, including Fred Sosnick, Christian Rudloff and Kelsey Scribner, represented ECO. The Naturgy team consisted of L. De Adrian Belaustegui, J. Gallego Piñera and M. Suardiaz Domenech; Naturgy was not represented by external counsel.

During the negotiations, PREPA's representatives regularly consulted with its advisors concerning the consistency of proposed terms with PREPA's savings and operational flexibility targets, and those advisors analyzed the impact of the proposed terms under various scenarios on dispatch of the Generation Facilities, energy costs, fuel costs and the operation of the PREPA system as a whole. They also provided PREPA representatives with insights concerning market practice and typical approaches to pricing and delivery terms in international LNG markets. PREPA's representatives took these analyses and insights into account in presenting and responding to proposals regarding ECO and Naturgy contract terms and conditions.

The table appearing below sets out a list of key meetings relating to both transactions.

| | |
|---|---|
| *July 9-12*: | PREPA / ECO meetings in San Juan to discuss ECO PPOA Term Sheet;<br>PREPA / Naturgy meetings in San Juan to discuss Naturgy GSPA Term Sheet; |

| | |
|---|---|
| *July 15-16*: | PREPA / ECO meeting by conference call to discuss ECO PPOA Term Sheet; |
| *July 18*: | PREPA / ECO meeting by conference call to discuss ECO PPOA Term Sheet; |
| *July 23:* | PREPA / ECO meeting by conference call to discuss ECO PPOA Term Sheet; |
| | PREPA / Naturgy meeting by conference call to discuss Naturgy GSPA Term Sheet; |
| *July 24*: | PREPA / Naturgy meeting by conference call to discuss Naturgy GSPA Term Sheet; |
| *July 31*: | PREPA / Naturgy meeting by conference call to discuss Naturgy GSPA Term Sheet; |
| *Aug 2*: | PREPA / ECO meetings by conference call to discuss ECO PPOA; |
| *Aug 7*: | PREPA / ECO meetings by conference call to discuss ECO PPOA; |
| *Aug 26-30:* | PREPA / ECO meeting in NYC to discuss ECO PPOA; |
| *Sep 3:* | PREPA / Naturgy meeting by conference call to discuss Naturgy GSPA; |
| *Sep 10-12*: | PREPA / Naturgy meetings in NYC to discuss Naturgy GSPA; |
| *Sep 17-18:* | PREPA / ECO meetings in San Juan to discuss ECO PPOA; |
| *Sep 23:* | PREPA / ECO meeting by conference call to discuss ECO PPOA; |
| *Sep 25-26:* | PREPA / ECO meeting by conference call to discuss ECO PPOA; |
| *Oct. 3*: | PREPA / ECO meeting by conference call to discuss ECO PPOA; |
| *Oct. 7*: | PREPA / ECO meeting by conference call to discuss ECO PPOA; |
| | PREPA / Naturgy meeting by conference call to discuss Naturgy GSPA; |
| *Oct. 8*: | PREPA / ECO meeting by conference call to discuss ECO PPOA. |

**INTERROGATORY I.A.4:**

Explain why PREPA decided to alter its obligations under the Contract with EcoEléctrica to assume the additional obligation of providing EcoEléctrica with LNG.

**RESPONSE TO INTERROGATORY I.A.4:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: PREPA concluded that the additional obligation of providing ECO with natural gas was not a material change from the previous arrangement with ECO, under which ECO effectively acquired natural gas from Naturgy.  Under the Naturgy GSPA, PREPA has taken on the role of fuel supplier, but under the Naturgy GSPA is effectively subcontracting this additional fuel supply obligation to Naturgy, which will deliver natural gas to the ECO Generation facility on behalf of PREPA.  Moreover, PREPA determined that the removal of the Energy Payment under the ECO PPOA offset PREPA's additional expense of purchasing natural gas from Naturgy.  *See* PREB Approval Request at 4-6.

**INTERROGATORY I.A.5:**

Explain why PREPA agreed to provide LNG directly to EcoEléctrica without indemnity for lost power if Naturgy fails to deliver the LNG.

**RESPONSE TO INTERROGATORY I.A.5:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.   PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.  PREPA further objects to this interrogatory on the ground that it misrepresents the terms of the Contracts.

Subject to and without waiving its general and specific objections, PREPA responds as follows: Under the ECO PPOA, PREPA has agreed to supply natural gas (not LNG) directly to ECO.  PREPA does not agree with the characterization that this agreement is "without indemnity for lost power if Naturgy fails to deliver the natural gas."  Section 9.4 of the Naturgy GSPA fully protects PREPA in this scenario.  *See also* PREB Approval Request at 9-10 & 14-15.

**INTERROGATORY I.A.6:**

Explain why PREPA agreed to the minimum take or pay obligation in Section 8 of the Naturgy GSPA.

**RESPONSE TO INTERROGATORY I.A.6:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA

further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows:  The multiple scenarios under Section 6 of the Naturgy GSPA, which permit PREPA to either permanently or temporarily reduce the minimum quantities of natural gas, protect PREPA against the risk of take-or-pay liability.  *See* PREB Approval Request at 13-14.

**INTERROGATORY I.A.7:**

Explain the reasons for the minimum and maximum contract quantities in Section 6 of the Naturgy GSPA.

**RESPONSE TO INTERROGATORY I.A.7:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: The Minimum Annual Contract Quantity and Maximum Annual Contract Quantity set forth in Section 6, together with the PREPA's reduction rights described in response to Interrogatory I.A.6, above, addressed PREPA's concern with take-or-pay liability risk.  *See* PREB Approval Request at 13-14.

**INTERROGATORY I.A.8:**

Explain why PREPA decided to change the Contract with EcoEléctrica from a power purchase and operation agreement to include a tolling agreement.

**RESPONSE TO INTERROGATORY I.A.8:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: The tolling features of the ECO PPOA did not factor into PREPA's assessment in deciding whether to assume the Contracts.  Naturgy indirectly controls the largest ownership interest in ECO and (through its contract rights under a Terminal Use Agreement) the importation of LNG into Southern Puerto Rico.  *See* Justification Memo, Section I; *see also* PREB Approval Request at 3-4 and 16.   In exchange for agreeing to the annual savings targets for the Pre-Restatement PPOA with ECO, required by the Fiscal Plan, Naturgy negotiated an extension of the supply term under the Pre-Restatement PPOA to 2032 and the right to supply natural gas to the ECO Generation Facility, during the extended supply term.  By taking the gas supply function away from ECO under the ECO PPOA, this negotiated commercial position required a reformulation of the PPOA from the sale and purchase of both capacity and energy to the sale and purchase of capacity only, effectively creating a tolling arrangement.

**INTERROGATORY I.A.9:**

Explain why PREPA agreed to a locked-in LNG price rather than having market-based adjustments, indexes or other mechanisms to ensure that the overall price would be competitive going forward.

**RESPONSE TO INTERROGATORY I.A.9:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.  PREPA further objects to this interrogatory on the ground that it misrepresents the terms of the Contracts.

Subject to and without waiving its general and specific objections, PREPA responds as follows:  The Naturgy GSPA does not incorporate a "locked-in LNG price."  Under the Naturgy GSPA, PREPA does not purchase LNG, it purchases natural gas.  The contract price for natural gas fuel is based upon two components – the market price for natural gas and the transportation and a delivery adder fee.  The GSPA provides for the calculation of a commodity price for each month on the basis of final settlement price for the NYMEX Henry Hub Natural Gas futures contract for the month prior to the month of delivery.  The Naturgy GSPA thus includes a market-based adjustment mechanism linked to one of the world's most widely traded commodity futures contracts.  This mechanism ensures that the overall price of natural gas will remain competitive going forward.

**INTERROGATORY I.A.10**:

Explain what process PREPA performed to seek information on recent LNG contract

pricing trends. What persons or entities were consulted?

**RESPONSE TO INTERROGATORY I.A.10**:

PREPA objects to this interrogatory to the extent it seeks information protected from

disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative

process privilege, the common interest privilege, or any other applicable privilege.   PREPA

further objects to this interrogatory as beyond the scope of the limited discovery allowed in the

May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as

follows: In connection with its negotiation of the Naturgy GSPA, PREPA and its advisors

considered the pricing mechanism set forth in its Pre-Restatement Contract with Naturgy, the

pricing mechanisms proposed in various responses to a Request for Proposals that ultimately

resulted in the selection of NFEnergía as natural gas supplier to PREPA's San Juan Unit Nos. 5

& 6, the pricing mechanism established in the PREPA-NFE Fuel Sale and Purchase Agreement,

publicly-available information concerning the pricing mechanisms included in LNG supply

agreements executed by Cheniere Energy, Inc. affiliates, LNG trade press reports and the

experience of PREPA advisors experienced in the negotiation of LNG sale and purchase

agreements.  As the negotiations proceeded, PREPA and its advisors periodically compared the

pricing mechanism being proposed for the Naturgy GSPA with pricing provisions of which they

were aware.

With respect to the transportation and delivery adder fee, the price negotiated with

Naturgy for the supply of delivered natural gas was significantly lower than the adder which

16

PREPA secured for the pricing of natural gas delivered to San Juan Units 5 & 6 using an RFP process. Advisors PREPA consulted in connection with its negotiation of the Naturgy Contract included Sargent & Lundy, K&S, and O'Melveny.

 **INTERROGATORY I.A.11:**

Explain PREPA's allegation that Naturgy has a *de facto* monopoly on natural gas in Puerto Rico and how this affected PREPA's ability to negotiate.

**RESPONSE TO INTERROGATORY I.A.11:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order. PREPA further objects to this interrogatory to the extent it calls for legal argument rather than factual information.

Subject to and without waiving its general and specific objections, PREPA responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7033 and 9014, PREPA directs UTIER's attention to Section I of the Justification Memo.

**INTERROGATORY I.A.12:**

Explain why PREPA insists on treating the Contracts as one transaction rather than two separate transactions. Did PREPA have the option to delink the Contracts? Do these Contracts depend on each other?

**RESPONSE TO INTERROGATORY I.A.12:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.  PREPA further objects to this interrogatory as argumentative and improper on the ground that it incorrectly presumes the Contracts should be treated as "two separate transactions."

Subject to and without waiving its general and specific objections, PREPA responds as follows: Naturgy indirectly controls the largest ownership interest in ECO and (through its contract rights under the Terminal Use Agreement) the importation of LNG into Southern Puerto Rico.  *See* Justification Memo, Section I; PREB Approval Request at 3-4.  In exchange for agreeing to the annual savings targets for the Pre-Restatement PPOA with ECO, required by the Fiscal Plan, Naturgy negotiated an extension of the supply term under the Pre-Restatement PPOA to 2032 and the right to supply natural gas to the ECO Generation Facility, during the extended supply term, rendering the ECO PPOA co-dependent on the supply of natural gas under the Naturgy GSPA.  PREPA never had the option to "disconnect" the Contracts.

**INTERROGATORY I.A.13:**

Explain why PREPA decided to assume or execute the Contracts until the year 2032, rather than the shorter period it negotiated with New Fortress Energy, for example.

**RESPONSE TO INTERROGATORY I.A.13:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative

18

process privilege, the common interest privilege, or any other applicable privilege. PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: Naturgy would only accept the gas price reductions and other changes required to achieve the cost savings required by the Fiscal Plan if PREPA extended the term of the Contracts until 2032.

**INTERROGATORY I.A.14:**

Explain why PREPA decided to assume or execute the Contracts, rather than explore renewable energy sources or other natural gas providers.

**RESPONSE TO INTERROGATORY I.A.14:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.   PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order. PREPA further objects to this request on the ground that it presumes PREPA cannot simultaneously assume the Contracts and explore renewable energy options.

Subject to and without waiving its general and specific objections, PREPA responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7033 and 9014, PREPA directs UTIER's attention to paragraph (1) of page VI of the report, captioned "EcoElectrica and Naturgy Contract Renegotiations", dated October 2019 and prepared by Sargent & Lundy LLC and

produced at PREPA-00230 (the "<u>S&L Report</u>") and Sections I and VII(3)(a) of the Justification Memo.

**<u>INTERROGATORY I.A.15</u>:**

Explain PREPA's urgency to assume or execute the Contracts.

**<u>RESPONSE TO INTERROGATORY I.A.15</u>:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege. PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: That delay in assuming the Contracts would result in substantial lost savings for ratepayers was one of the factors PREPA considered in negotiating the Contracts. *See* S&L Report, Section 3.4; *see also* PREB Approval Request at 4-5.

      ***B.***    ***Document Production***

**<u>REQUEST FOR PRODUCTION I.B.1</u>:**

All documents and communications concerning the process of negotiations for the Contracts.

**<u>RESPONSE TO REQUEST FOR PRODUCTION I.B.1</u>:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege. PREPA further objects to this Request as overbroad, unduly burdensome, and disproportionate to the needs of

the summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request

as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as

follows: On May 22, 2020, PREPA produced non-privileged documents sufficient to evidence

the procedures followed by PREPA in negotiating and deciding whether to assume the Contracts,

the factors considered by PREPA in deciding whether to assume the Contracts, and PREPA's

analysis of the factors it considered in deciding whether to assume the Contracts.  These

documents consist of the responsive, non-privileged materials PREPA submitted to the PREPA

Governing Board, the Puerto Rico Energy Bureau ("PREB"), the Financial Oversight and

Management Board for Puerto Rico (the "Oversight Board"), and the Puerto Rico Public-Private

Partnerships Authority ("P3A") in connection with PREPA's requests for approval of the

Contracts.

## REQUEST FOR PRODUCTION I.B.2:

All documents and communications concerning the decision to assume, execute and/or

amend the Contracts without the benefit of competitive bidding.

## RESPONSE TO REQUEST FOR PRODUCTION I.B.2:

PREPA objects to this request to the extent it seeks information protected from disclosure

by the attorney-client privilege, attorney work-product doctrine, the deliberative process

privilege, the common interest privilege, or any other applicable privilege.  PREPA further

objects to this Request as overbroad, unduly burdensome, and disproportionate to the needs of

the summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request

as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.  PREPA further

objects to this request on the ground that it assumes a competitive bidding process was required by law.

Subject to and without waiving its general and specific objections, PREPA responds as follows: On May 22, 2020 PREPA produced non-privileged documents sufficient to evidence the procedures followed by PREPA in negotiating and deciding whether to assume the Contracts, the factors considered by PREPA in deciding whether to assume the Contracts, and PREPA's analysis of the factors it considered in deciding whether to assume the Contracts.  These documents consist of the responsive, non-privileged materials PREPA submitted to the PREPA Governing Board, PREB, the Oversight Board, and P3A in connection with PREPA's requests for approval of the Contracts.

**REQUEST FOR PRODUCTION I.B.3:**

All documents and communications concerning PREPA's decision to assume, execute and/or amend the Contracts rather than explore renewable resource alternatives.

**RESPONSE TO REQUEST FOR PRODUCTION I.B.3:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.  PREPA further objects to this request on the ground that the phrase "renewable resource alternatives" is vague and ambiguous.  PREPA further objects to this request on the ground that it presumes PREPA cannot simultaneously assume the Contracts and explore renewable energy options.

Subject to and without waiving its general and specific objections, PREPA responds as follows: On May 22, 2020 PREPA produced non-privileged documents sufficient to evidence the procedures followed by PREPA in negotiating and deciding whether to assume the Contracts, the factors considered by PREPA in deciding whether to assume the Contracts, and PREPA's analysis of the factors it considered in deciding whether to assume the Contracts.  These documents consist of the responsive, non-privileged materials PREPA submitted to the PREPA Governing Board, PREB, the Oversight Board, and P3A in connection with PREPA's requests for approval of the Contracts.

**REQUEST FOR PRODUCTION I.B.4:**

All documents and communications concerning a competitor's interests in replacing Naturgy as PREPA's LNG supplier.

**RESPONSE TO REQUEST FOR PRODUCTION I.B.4:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.   PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order, which did not allow discovery regarding competitor interest in replacing Naturgy as PREPA's LNG supplier.

**REQUEST FOR PRODUCTION I.B.5:**

All duly executed tolling agreements for the EcoEléctrica LNG terminal.

**RESPONSE TO REQUEST FOR PRODUCTION I.B.5:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order, which did not allow discovery regarding any agreement other than the Contracts.

Subject to and without waiving its general and specific objections, PREPA responds as follows: the only "duly executed tolling agreement[]" for the ECO terminal is the ECO PPOA, which PREPA publicly filed as Exhibit B-1 to the Motion to Assume.  *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17-04780-LTS, ECF No. 1951-2 (D.P.R. Apr. 1, 2020).

**REQUEST FOR PRODUCTION I.B.6:**

All documents and communications regarding discussions or decisions to convert the Contract with EcoEléctrica from a power purchase agreement into a tolling agreement.

**RESPONSE TO REQUEST FOR PRODUCTION I.B.6:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: On May 22, 2020 PREPA produced non-privileged documents sufficient to evidence the

procedures followed by PREPA in negotiating and deciding whether to assume the Contracts, the factors considered by PREPA in deciding whether to assume the Contracts, and PREPA's analysis of the factors it considered in deciding whether to assume the Contracts.  These documents consist of the responsive, non-privileged materials PREPA submitted to the PREPA Governing Board, PREB, the Oversight Board, and P3A in connection with PREPA's requests for approval of the Contracts.

**REQUEST FOR PRODUCTION I.B.7:**

All documents and communications regarding the amount of import taxes on fuel that would be owed by Ecoeléctrica, Naturgy or any party, if the LNG was imported by EcoEléctrica or Naturgy rather than structured to appear that it was being imported by PREPA.

**RESPONSE TO REQUEST FOR PRODUCTION I.B.7:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order, which did not allow discovery regarding tax implications for EcoEléctrica or Naturgy under hypothetical contract arrangements.

## II.   Documents reflecting the factors considered by PREPA in deciding whether to assume the Contracts.

### A.   Interrogatories

**INTERROGATORY II.A.1:**

Explain whether PREPA considered the effects on its ratepayers as part of the analysis conducted to assume or execute the Contracts.

**RESPONSE TO INTERROGATORY II.A.1:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.  PREPA further objects to this request on the ground that the phrase "effects on its ratepayers" is vague and ambiguous.  PREPA construes this interrogatory to seek information regarding whether PREPA considered the effect of the Contracts on rates paid by ratepayers.

Subject to and without waiving its general and specific objections, PREPA responds as follows: Annual savings realized by ratepayers was one of the primary reasons supporting PREPA's decision to enter into the Contracts.  *See* S&L Report Section 3.4; Justification Memo Section I; PREB Approval Request at 4-5.

**INTERROGATORY II.A.2:**

Explain whether PREPA considered the earthquake damage to EcoEléctrica's facilities and its effect on that entities ability to execute its duties under the Contracts as part of the analysis conducted to assume or execute the Contracts.

**RESPONSE TO INTERROGATORY II.A.2:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: PREPA performed an assessment of the Contracts prior to October 29, 2019 and the Governing Board of PREPA approved the execution and delivery of the Contracts on such date, approximately 77 days prior to the date on which an earthquake in January 2020 damaged the Costa Sur Generation Facility, causing a prolonged forced outage.  Notwithstanding the foregoing timing, the terms of the Naturgy GSPA permit PREPA to reduce the minimum quantities of natural gas required for nomination as a result of a forced outage.  *See* Naturgy GSPA § 6.2(b).

**INTERROGATORY II.A.3:**

Explain whether PREPA considered the reasonableness of the capacity payments based on EcoEléctrica's costs incurred in providing power and the amounts that it recovered in the past 20 years in capacity payments as part of the analysis conducted to assume or execute the Contracts.

**RESPONSE TO INTERROGATORY II.A.3:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA

further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: PREPA did consider the reasonableness of the capacity payments to EcoEléctrica as among the costs incurred in providing power and the foreseeable costs to be incurred by both PREPA and EcoEléctrica for the duration of the agreement.  This evaluation was conducted as part of the capacity payment liability risk analysis.  *See* Justification Memo, Annex A (Capacity Payment Liability Risk).  Costs incurred and recovered in prior periods are irrelevant to a determination as to whether a renegotiated contract is favorable to PREPA and ratepayers on a going forward basis.

## INTERROGATORY II.A.4:

Explain whether PREPA considered whether Costa Sur will be repaired or retired as part of the analysis conducted to assume or execute the Contracts.

## RESPONSE TO INTERROGATORY II.A.4:

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: PREPA performed an assessment of the Contracts prior to October 29, 2019 and the Governing Board of PREPA approved the execution and delivery of the Contracts on such date, approximately 77 days prior to the date on which an earthquake in January 2020 damaged the

Costa Sur Generation Facility.  PREPA did consider the eventual retirement of the Costa Sur Generation Facility prior to the execution and delivery of the Naturgy GSPA (*see* § 6.2(c)); s*ee also* PREB Approval Request at 13-14.

**INTERROGATORY II.A.5:**

Explain whether PREPA considered the ownership rights of the EcoEléctrica LNG Terminal as part of the analysis conducted to assume or execute the Contracts.

**RESPONSE TO INTERROGATORY II.A.5:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order. PREPA further objects to this interrogatory to the extent it calls for legal argument rather than factual information.

Subject to and without waiving its general and specific objections, PREPA responds as follows: Pursuant to Federal Rule of Civil Procedure 33(d), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7033 and 9014, PREPA directs UTIER's attention to Section I of the Justification Memo and paragraph (1) of page VI of the S&L Report.

**INTERROGATORY II.A.6:**

Explain whether PREPA considered how the Contracts affect its ability to meet the goals of Act No. 17-2019 as part of the analysis conducted to assume or execute the Contracts.

**RESPONSE TO INTERROGATORY II.A.6:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative

process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.  PREPA further objects to this interrogatory to the extent it calls for legal argument rather than factual information.

Subject to and without waiving its general and specific objections, PREPA responds as follows: The revised Contracts provide flexibility for PREPA to support the scale-up of intermittent renewable energy sources in Puerto Rico.  *See* S&L Report, Executive Summary at IV - V and Section 3.2.2.2.  The revised PPOA increases the number of plant starts per year to allow for future cycling operation (*id.*, Executive Summary at V) and obligates ECO to provide a specific menu of ancillary services intended to stabilize the transmission grid.  *See* ECO PPOA at § 7.6 and Appendix K.  The Naturgy GSPA includes take or pay relief through exercisable macro-level options (i.e., generation from renewables exceeding15%).  *See* Naturgy GSPA, § 6.2; see also PREB Approval Request at 13-14.

## INTERROGATORY II.A.7:

Explain whether PREPA considered the impact that the ongoing change in the economic landscape due to the COVID-19 emergency may have on the viability of the Contracts as part of the analysis conducted to assume or execute the Contracts.

## RESPONSE TO INTERROGATORY II.A.7:

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.  PREPA further objects to this interrogatory because the term "viability" is

vague and ambiguous. PREPA construes this interrogatory to seek information regarding whether PREPA considered the impact of the COVID-19 emergency on PREPA's ability to pay the amounts required under the Contracts.

Subject to and without waiving its general and specific objections, PREPA responds as follows: The COVID-19 emergency commenced several months after PREPA completed the negotiation of, and sought approval of, the Contracts.  Its decision to assume the Contracts would not be affected in any event by the impact of the COVID-19 emergency, because the Contracts remain of great value to PREPA and ratepayers.  ECO and Costa Sur are among the lowest cost generators available to PREPA and are currently two of the cleanest and most reliable baseload plants on the island.  Their continued availability under the terms of the Contracts is essential to PREPA's ongoing efforts to minimize the costs of the generation it requires to satisfy load and to maintain and improve system reliability.  Given their relatively low cost, particularly as those costs will be reduced by implementation of the Contracts, PREPA will continue to dispatch the ECO and Costa Sur units at their maximum capacity as much as possible regardless of any negative effects resulting from the COVID-19 pandemic.  PREPA anticipates no difficulty in satisfying its payment obligations under the Contracts even taking into account the impacts of the COVID-19 emergency.

**INTERROGATORY II.A.8:**

Explain whether PREPA considered the effect of the Contracts on its ability to adequately restructure its debts and pay its creditors as part of the analysis conducted to assume or execute the Contracts, other than seeking the FOMB's approval under the Certified Fiscal Plan.

**RESPONSE TO INTERROGATORY II.A.8:**

PREPA objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this interrogatory as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.  PREPA further objects to this interrogatory to the extent it calls for legal argument rather than factual information.

Subject to and without waiving its general and specific objections, PREPA responds as follows: In renegotiating the Contracts, PREPA considered carefully the impact the Contracts, as renegotiated, would have on its ability to restructure its debt and pay its creditors.  PREPA's approach to the renegotiation of the EcoEléctrica and Naturgy agreements was driven fundamentally by its need to achieve savings in the cost of power produced in the EcoEléctrica and Costa Sur plants, which would generate increased net revenues and, accordingly, would enhance its ability to repay creditors.

At the time it concluded the Contract negotiations and submitted the final draft Contracts to the Energy Bureau for its approval, PREPA estimated that, taken together, the Contracts would lower the cost of power from the Eco Generation Facility, already one of Puerto Rico's lowest cost generators, by approximately 1.5 cents per kWh.  *See* S&L Report at Section 3.2.2 and Table 3-1.  This cost reduction is beneficial to PREPA and to Puerto Rico ratepayers.  The aggregate savings this reduction will yield exceed by a substantial margin the savings which FOMB established as targets from the renegotiation of both of the Pre-Restatement PPOA and a PPOA with AES Puerto Rico, the other large independent power supplier to PREPA.  *See* S&L Report at 3-10 – 3-11.  In addition, the increased flexibility PREPA will have under the

Contracts to dispatch the ECO Generation Facility (see S&L Report, Executive Summary at III-IV and 3-11) will give PREPA the ability to reduce the dispatch of its more expensive, inefficient generators, resulting in fuel cost savings that put PREPA in an improved position to stabilize its rates and repay creditors.

III.     **Documents reflecting PREPA's analysis of the factors it considered in deciding whether to assume the Contracts.**

    *A.     Document Production*

**REQUEST FOR PRODUCTION III.A.1:**

All documents and communications concerning the impact of the decision to assume or execute the Contracts on PREPA's ratepayers.

**RESPONSE TO REQUEST FOR PRODUCTION III.A.1:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order, which did not allow discovery into the impact of the Contracts on PREPA's ratepayers.  PREPA further objects to this request on the ground that the phrase "impact . . . on PREPA's ratepayers" is vague and ambiguous.  PREPA construes this request to seek documents regarding the impact of the Contracts on the rates paid by PREPA's ratepayers.

Subject to and without waiving its general and specific objections, PREPA responds as follows: On May 22, 2020 PREPA produced non-privileged documents sufficient to evidence the procedures followed by PREPA in negotiating and deciding whether to assume the Contracts, the

factors considered by PREPA in deciding whether to assume the Contracts, and PREPA's

analysis of the factors it considered in deciding whether to assume the Contracts.  These

documents consist of the responsive, non-privileged materials PREPA submitted to the PREPA

Governing Board, PREB, the Oversight Board, and P3A in connection with PREPA's requests

for approval of the Contracts.

**REQUEST FOR PRODUCTION III.A.2:**

All documents and communications within PREPA related to Ecoeléctrica's operation after

the January 7, 2020 earthquake and its impact on the decision to assume or execute the Contracts.

**RESPONSE TO REQUEST FOR PRODUCTION III.A.2:**

PREPA objects to this request to the extent it seeks information protected from disclosure

by the attorney-client privilege, attorney work-product doctrine, the deliberative process

privilege, the common interest privilege, or any other applicable privilege.  PREPA further

objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the

summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request as

beyond the scope of the limited discovery allowed in the May 18, 2020 Order, which did not

allow discovery into EcoEléctrica's operation after the January 7, 2020 earthquake.

Subject to and without waiving its general and specific objections, PREPA responds as

follows: On May 22, 2020 PREPA produced non-privileged documents sufficient to evidence the

procedures followed by PREPA in negotiating and deciding whether to assume the Contracts, the

factors considered by PREPA in deciding whether to assume the Contracts, and PREPA's

analysis of the factors it considered in deciding whether to assume the Contracts.  These

documents consist of the responsive, non-privileged materials PREPA submitted to the PREPA

Governing Board, PREB, the Oversight Board, and P3A in connection with PREPA's requests for approval of the Contracts.

**REQUEST FOR PRODUCTION III.A.3:**

All documents and communications related to the data set and calculations used to determine the capacity payment in the Contract with EcoEléctrica.

**RESPONSE TO REQUEST FOR PRODUCTION III.A.3:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: On May 22, 2020 PREPA produced non-privileged documents sufficient to evidence the procedures followed by PREPA in negotiating and deciding whether to assume the Contracts, the factors considered by PREPA in deciding whether to assume the Contracts, and PREPA's analysis of the factors it considered in deciding whether to assume the Contracts.  These documents consist of the responsive, non-privileged materials PREPA submitted to the PREPA Governing Board, PREB, the Oversight Board, and P3A in connection with PREPA's requests for approval of the Contracts.

**REQUEST FOR PRODUCTION III.A.4:**

All documents and communications regarding the ownership rights of the EcoEléctrica LNG Terminal.

**RESPONSE TO REQUEST FOR PRODUCTION III.A.4:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege. PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the summary proceeding on PREPA's Motion to Assume. PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order, which did not allow discovery regarding the ownership of the ECO LNG Terminal.

**REQUEST FOR PRODUCTION III.A.5:**

All documents and communications concerning the impact of the decision to assume or execute the Contracts on PREPA's achievement of the goals contained in Act No. 17-2019.

**RESPONSE TO REQUEST FOR PRODUCTION III.A.5:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege. PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the summary proceeding on PREPA's Motion to Assume. PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order, which did not allow discovery regarding the energy policy goals.

**REQUEST FOR PRODUCTION III.A.6:**

All documents and communications concerning PREPA's decision to assume or execute the Contracts despite the ongoing COVID-19 emergency.

**RESPONSE TO REQUEST FOR PRODUCTION III.A.6:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: On May 22, 2020 PREPA produced non-privileged documents sufficient to evidence the procedures followed by PREPA in negotiating and deciding whether to assume the Contracts, the factors considered by PREPA in deciding whether to assume the Contracts, and PREPA's analysis of the factors it considered in deciding whether to assume the Contracts.  These documents consist of the responsive, non-privileged materials PREPA submitted to the PREPA Governing Board, PREB, the Oversight Board, and P3A in connection with PREPA's requests for approval of the Contracts.

**REQUEST FOR PRODUCTION III.A.7:**

All documents and communications concerning the calculation of projected savings of the Contracts.

**RESPONSE TO REQUEST FOR PRODUCTION III.A.7:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the

summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: On May 22, 2020 PREPA produced non-privileged documents sufficient to evidence the procedures followed by PREPA in negotiating and deciding whether to assume the Contracts, the factors considered by PREPA in deciding whether to assume the Contracts, and PREPA's analysis of the factors it considered in deciding whether to assume the Contracts.  These documents consist of the responsive, non-privileged materials PREPA submitted to the PREPA Governing Board, PREB, the Oversight Board, and P3A in connection with PREPA's requests for approval of the Contracts.

**REQUEST FOR PRODUCTION III.A.8:**

All documents reflecting the data set PREPA used in the calculation of projected savings of the Contracts.

**RESPONSE TO REQUEST FOR PRODUCTION III.A.8:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order.

Subject to and without waiving its general and specific objections, PREPA responds as follows: On May 22, 2020 PREPA produced non-privileged documents sufficient to evidence the procedures followed by PREPA in negotiating and deciding whether to assume the Contracts, the

factors considered by PREPA in deciding whether to assume the Contracts, and PREPA's analysis of the factors it considered in deciding whether to assume the Contracts.  These documents consist of the responsive, non-privileged materials PREPA submitted to the PREPA Governing Board, PREB, the Oversight Board, and P3A in connection with PREPA's requests for approval of the Contracts.

**REQUEST FOR PRODUCTION III.A.9:**

All documents and communications concerning PREPA's analysis regarding the economic savings, benefits and operational advantages that PREPA would have based on the decision to assume or execute the Contracts.

**RESPONSE TO REQUEST FOR PRODUCTION III.A.9:**

PREPA objects to this request to the extent it seeks information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, the deliberative process privilege, the common interest privilege, or any other applicable privilege.  PREPA further objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the summary proceeding on PREPA's Motion to Assume.  PREPA further objects to this request as beyond the scope of the limited discovery allowed in the May 18, 2020 Order. PREPA further objects to this request on the ground that the phrase "the economic savings, benefits and operational advantages that PREPA would have based on the decision to assume or execute the Contracts" is vague and ambiguous.  PREPA construes this request to be seeking documents regarding the economic savings, benefits and operational advantages to PREPA under the Contracts.

Subject to and without waiving its general and specific objections, PREPA responds as follows: On May 22, 2020 PREPA produced non-privileged documents sufficient to evidence the procedures followed by PREPA in negotiating and deciding whether to assume the Contracts, the

factors considered by PREPA in deciding whether to assume the Contracts, and PREPA's

analysis of the factors it considered in deciding whether to assume the Contracts.  These

documents consist of the responsive, non-privileged materials PREPA submitted to the PREPA

Governing Board, PREB, the Oversight Board, and P3A in connection with PREPA's requests

for approval of the Contracts.

Dated:  May 23, 2020
     San Juan, Puerto Rico

Respectfully submitted,

**PROSKAUER ROSE LLP**

_/s/ Paul V. Possinger_

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Daniel S. Desatnik *(pro hac vice)*
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
*Attorneys for the Financial Oversight and
Management Board as representative for the
Commonwealth of Puerto Rico and the Puerto
Rico Electric Power Authority*

**LUIS F. DEL VALLE-EMMANUELLI**
By:  _/s/ Luis F. Del Valle-Emmanuelli_
By:  Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
*Co-Attorney for the Financial Oversight and
Management Board as representative of the
Debtor*

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis Marini*
Luis C. Marini-Biaggi
USDC No. 222301
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel:  (787) 705-2171
Fax:  (787) 936-7494

*Co-counsel for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**

*/s/ Katiuska Bolaños*
Katiuska Bolaños
USDC No. 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 1105
San Juan, PR 00918
Tel.:  (787) 395-7133
Fax:  (787) 497-9664

*Counsel for Puerto Rico Electric Power
Authority*

**O'MELVENY & MYERS LLP**

*/s/ Elizabeth L. McKeen*

John J. Rapisardi
Nancy A. Mitchell
7 Times Square
New York, New York 10036
Tel:   (212) 326-2000
Fax:  (212) 326-2061

-and-

Peter Friedman
1625 Eye Street, NW
Washington, D.C. 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

-and-

Elizabeth L. McKeen
Ashley M. Pavel
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel:  (949) 823-6900
Fax:  (949) 823-6994

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority and Puerto
Rico Electric Power Authority*

## **VERIFICATION OF INTERROGATORY RESPONSES**

I, Fernando M. Padilla, on behalf of the Puerto Rico Electric Power Authority ("PREPA"), hereby state that the factual averments set forth in the responses to the interrogatories set forth in *PREPA's Responses and Objections to UTIER's Discovery Request Pursuant to Order on Motion for Protective Order Docket No. 1995* are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 23rd day of May, 2020, in San Juan, Puerto Rico.

_____

Fernando M. Padilla
Administrator
Program Management Office of Restructuring and Fiscal Affairs for
the Puerto Rico Electric Power Authority