**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

---------------------------------------------------------------X
:
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
     as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.*, : (Jointly Administered)
:
     Debtors.[1] : Re: Dkt. No. 13157
---------------------------------------------------------------X

# DRA PARTIES' RESPONSE TO THE FOMB'S SUR-REPLY [DKT. NO. 13157]

**COME NOW** AmeriNational Community Services, LLC (hereafter the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company which serves as the collateral monitor for Wilmington Trust, N.A. in connection with the new bonds issued by the DRA pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018 and the approved Qualifying Modification for the Government Development Bank for Puerto Rico[2] under Title VI of the *Puerto Rico Oversight, Management and Economic Stability Act* (the "Collateral Monitor" and with the Servicer, the "DRA Parties"), by and through the undersigned legal counsel, and respectfully submit this response (the "Response") to the *Sur-Reply*

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

[2] *See* Dkt. No. 270 of Civil Case No. 18-01561 (LTS).

4132-5951-1076.6

*of Financial Oversight and Management Board for Puerto Rico in Opposition to Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection* [Dkt. No. 13157] (the "FOMB's Sur-Reply").

## PRELIMINARY STATEMENT

The DRA has a properly perfected lien on the Act 30-31 Revenues. *See* Opening Brief [Dkt. No. 12396 ¶ 4]. In an effort to illegally circumvent the DRA's property rights, the FOMB asserts that PROMESA can preempt these rights because Acts 30 and 31 are mere "appropriations" laws. *See* FOMB's Sur-Reply ¶¶ 20–21. Starting with its first brief (and before in discussions), the FOMB has provided no support for this argument.[3] The FOMB instead has provided broad rationales that contravene applicable law. *See* FOMB Response ¶ 9.

The DRA Parties and Monolines argued in response that the HTA Allocable Revenues (which include the Act 30-31 Revenues) are not appropriations, relying on precedent and applicable law. *See, e.g.*, DRA Parties' Reply [Dkt. No. 12999 ¶¶ 17–21]; Monolines' Reply [Dkt. No. 12994 ¶¶ 16–17]. As previously noted, the law confirms that Acts 30 and 31 are not appropriation statutes—and, therefore, PROMESA cannot preempt the property rights granted to the DRA through Acts 30 and 31 and the Security Agreement. *See* DRA Parties' Reply ¶¶ 13–21.

This left the FOMB with little choice but to try again. This time, the FOMB relies on new arguments it had not made before based on a non-binding Secretary of Justice Opinion and

---

[3] Notwithstanding the FOMB's assertion that the FOMB's Sur-Reply "does not even mention or address Acts 30 or 31," FOMB Response [Dkt. No. 13185 ¶ 3 n.3], Acts 30 and 31 are among the statutes defined as HTA Allocable Revenue Statutes in the FOMB Opposition [Dkt. No. 10613 ¶¶ 9, 37-38]; *see also* Dkt. No. 12496 ¶ 2. If the FOMB concedes that Acts 30 and 31 are not appropriations statutes by footnote 3, then no further discussion of this issue is necessary.

2

prior rulings from this Court and the First Circuit that are factually inapposite.[4] *See* FOMB's Sur-Reply ¶¶ 20-21. Their arguments again fail to persuade. The FOMB again ignores the law regarding "appropriation" statutes and the budgetary framework for how appropriations work under the Commonwealth Constitution—a framework which simply does not, and cannot, encompass Acts 30 and 31.

## RESPONSE

### I. The FOMB Has Failed to Establish that the Act 30-31 Revenues Should Be Treated as Appropriations.

1. From the outset of these proceedings, the FOMB has relied on the unsupported presumption that revenues collected under what they refer to as the HTA Allocable Revenue Statutes (including Acts 30 and 31) are funds the Commonwealth "appropriates" to HTA. Based on this presumption, the FOMB asserts that PROMESA either (i) grants the FOMB the authority to divert the funds generated by these statutes via certified budgets, or (ii) preempts the application of the HTA Allocable Revenue Statutes altogether. *See* FOMB Opp. ¶¶ 5, 65, 83–88; FOMB Response ¶¶ 10–15; FOMB's Sur-Reply ¶¶ 20–21.

2. The FOMB previously failed to raise any substantive arguments to support its premise that the HTA Allocable Revenue Statutes should be treated as "appropriations." Instead, it made sweeping statements such as: "Any other interpretation of PROMESA would make it impossible for the Oversight Board to restructure the Commonwealth's debts and fulfill its

---

[4] The FOMB also asserts that the Monolines are barred from using extrinsic evidence to interpret the application of the HTA Allocable Revenue Statutes. *See* FOMB's Sur-Reply ¶¶ 9-11. In compliance with the DRA Participation Order [Dkt. No. 12005], the DRA Parties did not participate in the discovery regarding the Monolines' lift stay litigation (beyond observation) and did not present evidence as part of these proceedings. While the FOMB's position runs contrary to established Puerto Rico Supreme Court precedent, *see De Jesús v. Depto. Servicios Sociales*, 23 P.R. Office. Trans. 370, 1989 WL 607317 (P.R. Mar. 8, 1989); *Vázquez v. Arpe*, 128 D.P.R. 513, 524 (1991), having not been permitted to actively engage in the discovery process, the DRA Parties hereby reserve all rights regarding this issue.

3

mandate. . . regarding the HTA Allocable Revenue Statutes [and] other pre-petition statutes appropriating money." FOMB Response ¶ 9.

3. As explained by the DRA Parties, "appropriations" are, by definition, authorizations made by the legislature to withdraw *from the state treasury* for a specified public object or purpose to which such sum is applied. *See* DRA Parties' Reply ¶¶ 19–20 (citing 63C Am. Jur. 2d Public Funds § 34 (2020)) (emphasis added).[5]

4. While the Constitution of the Commonwealth of Puerto Rico does not define "appropriations," it provides a basic framework for understanding how appropriations work as part of the budgetary process. Specifically, Section 7 of Article VI requires that "appropriations made for any fiscal year shall not exceed the total calculated resources . . . estimated for said fiscal year . . . ." P.R. Const. Art. VI § 7. Section 6 of Article VI provides that "if at the end of any fiscal year the appropriations necessary for the ordinary operating expenses of the government and for the payment of interest on an amortization of the public debt for the ensuing fiscal year shall not have been made, the several sums appropriated in the last appropriation act . . . shall continue in effect item by item . . . until corresponding appropriations are made." P.R. Const. Art. VI § 6. These two sections outline a common element for how appropriations are established in the Commonwealth budget: **appropriations are made by the Commonwealth on a fiscal year by fiscal year basis**.[6]

---

[5] This concept has been adopted by states. *See* DRA Parties' Reply ¶¶ 19–20; *Haynes v. District Ct.*, 106 Mont 470, 78 P2d 937 (1938); *Einsfeld v. Murray*, 149 N.Y. 367 (1896). It has also been expressly incorporated as part of the federal budgeting scheme, which defines appropriations as "a statute, under the jurisdiction of the House and Senate Committees on Appropriations, that generally provides legal authority for . . . agencies to incur obligations and to make payments out of the Treasury for specified purposes." *Glossary of Terms Used in the Federal Budget Process*, GAO-05- 734SP, page 13 (Washington, D.C. Sept. 2005).

[6] Thus, the FOMB's assertion that appropriations need not be subject to annual budgetary appropriations is incorrect. *See* FOMB's Sur-Reply ¶ 20.

4132-5951-1076.6

5. Acts 30 and 31 do not fall within the Commonwealth constitutional framework of appropriations because: (i) the Commonwealth never acquires possession of the Act 30-31 Revenues (instead, these are automatically "covered into" a special deposit for HTA's benefit, *see* Act No. 30 at 1, Act No. 31 at 4–5); (ii) the Commonwealth does not obtain budgetary rights over these revenues and does not have the authority to divert them to the General Fund;[7] and (iii) Acts 30 and 31 do not require that the revenues be subject to annual budgetary allocations in the Commonwealth's budget. By the statutes' own terms, the Act 30-31 Revenues are directed to HTA and do not flow into the Commonwealth's General Fund or reach the state treasury. Thus, they cannot be "appropriations."

## II. The FOMB's New Arguments Are Unpersuasive.

6. Having its bluff called by the DRA Parties, the FOMB attempts to cobble together an argument based on inapplicable First Circuit precedent and a Secretary of Justice opinion that has no legal value here. *See* FOMB's Sur Reply ¶¶ 20–21.

7. First off, the FOMB's reliance on the decisions of *Hon. Wanda Vázquez-Garced v. Fin. Oversight & Mgmt. Bd. for Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 945 F.3d 3 (1st Cir. 2019) and *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Andalusian Glob. Designated Activity Co. (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 948 F.3d 457 (1st Cir. 2020) is misguided. Both decisions discuss controversies surrounding particular items in the annual Commonwealth budget that require specific budgetary allocations. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 945 F.3d at 8 (discussing the reprogramming of funds from prior fiscal years); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 948 F.3d at 464

---

[7] The only mechanism by which the Commonwealth can legally divert the Act 30-31 Revenues is through the extraordinary remedy of the claw-back under Article VI, Section 8 of the Puerto Rico Constitution. To date, no forum has resolved whether the Commonwealth's enforcement and execution of the claw-back was and/or continues to be valid, which dispute remains pending and ongoing.

(addressing the annual funding of mandatory contributions to the retirement system). Neither situation is analogous to Acts 30 and 31, which, as discussed above, do not require annual funding by the Commonwealth.

8. When the Puerto Rico legislature provides funding through budgetary appropriations it categorically states so in the language of the act. *See e.g.* P.R. Laws Ann. tit. 5, § 1567 ("The sum of five million five hundred two thousand dollars…is hereby appropriated from unencumbered funds in the Commonwealth Treasury to the Department of Agriculture for the following purposes…"); P.R. Laws Ann. tit. 7, §607b ("The Commonwealth of Puerto Rico shall honor, through budget appropriations made by the Legislature in the operating budgets for each fiscal year for the next thirty (30) years…the payments…allowed in § 607…"); P.R. Laws Ann. tit. 13, § 10410 (g) ("[T]he sum of fifteen million…dollars is hereby appropriated and authorized from appropriations originating from the General Fund, to be allotted annually to the Farming and Animal Husbandry Service and Development Administration…"); P.R. Laws Ann. tit. 23, § 671 ("The sum of one million, two hundred fifty thousand dollars…is hereby appropriated to the Company from any unencumbered funds in the Commonwealth Treasury, in order that it may comply with the provisions of this act this chapter"); P.R. Laws Ann. tit. 23, §2918 ("The sum of three million, seven hundred thousand dollars…is hereby appropriated to the Authority from unencumbered funds in the General Fund…"); P.R. Laws Ann. tit. 27, § 522 ("A special recurring appropriation of one million dollars…a year is hereby established, from unencumbered funds in the Commonwealth Treasury, to be appropriated to the Puerto Rico Public Broadcasting Corporation…"). By contrast, the language of Acts 30 and 31 does not contain any budgetary appropriation requirements.

6

9. Finally, the FOMB's new tack in relying on a 2005 Opinion of the Puerto Rico Secretary of Justice for the proposition that the HTA Allocable Revenue Statutes create a "'standing' appropriation of those revenues," FOMB's Sur-Reply ¶ 20, is unavailing because, as explained by the Puerto Rico Supreme Court, "***the opinions of the Secretary of Justice do not in any way bind the courts and these are free to adjudicate according to law***." *In re Secretary of Justice*, 18 P.R. Offic. Trans. 955, 1987 WL 448317 (P.R. May 11, 1987) (emphasis added). In any event, as detailed above, appropriations must be made on a specified annual basis.

## CONCLUSION

Because the FOMB cannot substantiate why Acts 30 and 31 should be treated as appropriations, Acts 30 and 31 cannot be preempted by an overreaching reading of PROMESA nor modified through the budget certification process. Thus, by diverting these "appropriations" through certified budgets, the FOMB is effectively repealing Acts 30 and 31, which authority the FOMB certainly does not possess. *See Hon. Ricardo Antonio Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 330 F. Supp. 3d 685, 701–02 (D.P.R. 2018), *aff'd and remanded*, 945 F.3d 3 (1st Cir. 2019).

**WHEREFORE**, the DRA Parties respectfully request that the Court (i) take note of the foregoing in consideration of the Monolines' Amended Lift Stay Motion [Dkt. No. 10102], and (ii) grant any such order and further relief as is just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today May 26, 2020.

**CERTIFICATE OF SERVICE**: In accordance with Fed. R. Bankr. P. 9014(b), Fed. R. Bankr. P. 7004(b), and the Court's *Eleventh Amended Notice, Case Management and Administrative Procedures Order* [Dkt. No. 11885-1] (the "CMP Order"), we hereby certify that a true and exact copy of the foregoing was sent by electronic mail upon all the parties listed in the Master Service List and by U.S. mail upon all the Standard Parties listed in the CMP Order.

| | |
|---|---|
| **MCCONNELL VALDÉS LLC**<br>270 Muñoz Rivera Avenue, Suite 7<br>Hato Rey, Puerto Rico 00918<br>PO Box 364225<br>San Juan, Puerto Rico 00936-4225<br>Telephone: 787-250-5632<br>Facsimile: 787-759-9225<br><br>By: /s/*Arturo J. García-Solá*<br>Arturo J. García-Solá<br>USDC No. 201903<br>Email: ajg@mcvpr.com<br><br>By: /s/*Alejandro J. Cepeda-Diaz*<br>Alejandro J. Cepeda-Diaz<br>USDC No. 222110<br>Email: ajc@mcvpr.com<br><br>By: /s/*Nayuan Zouairabani*<br>Nayuan Zouairabani<br>USDC No. 226411<br>Email: nzt@mcvpr.com<br><br>*Attorneys for AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority* | **C. CONDE & ASSOC. LAW OFFICES**<br><br>By: /s/ *Carmen D. Conde Torres*<br><br>Carmen D. Conde Torres<br>(USDC No. 207312)<br>254 San José Street, Suite 5<br>San Juan, PR 00901-1523<br>Tel. 787-729-2900<br>Fax. 787-729-2203<br>E-Mail: condecarmen@condelaw.com<br><br>*-and-*<br><br>**ORRICK, HERRINGTON & SUTCLIFFE LLP**<br><br>By: /s/ *Douglas S. Mintz*<br>Douglas S. Mintz (admitted pro hac vice)<br>Columbia Center<br>1152 15th Street, N.W.<br>Washington, D.C. 20005-1706<br>Telephone: (202) 339-8400<br>Facsimile: (202) 339-8500<br>E-mail: dmintz@orrick.com<br><br>and<br><br>Laura Metzger (admitted pro hac vice)<br>Peter Amend (admitted pro hac vice)<br>David Litterine-Kaufman (pro hac vice pending)<br>Monica Perrigino (admitted pro hac vice)<br>51 West 52nd Street<br>New York, N.Y. 10019<br>Telephone: (212) 506-5000<br>E-mail: lmetzger@orrick.com<br>          pamend@orrick.com<br>          dlitterinekaufman@orrick.com<br>          mperrigino@orrick.com<br><br>*Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for GDB Debt Recovery Authority* |

8

4132-5951-1076.6