# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS<br><br>**Re ECF Nos.: 12569, 12570, 12964** |
| THE COMMONWEALTH OF PUERTO RICO and PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Movants,<br><br>-v-<br><br>AMBAC ASSURANCE CORPORATION,<br><br>Respondent. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## REPLY IN SUPPORT OF MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 362 FOR ORDER DIRECTING AMBAC TO WITHDRAW COMPLAINT

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................ 3

I.      The Ambac Litigation Expressly Seeks Rescission of the Concession Extension
        Agreement, Which Interferes with HTA's Property Rights in Violation of
        Bankruptcy Code Section 362(a)(3). .................................................................. 3

        A.      The Complaint Seeks Rescission of the Concession Extension Agreement,
                Which Under the Facts Alleged, Puerto Rico Law Requires Be Done in Full. ...... 3

        B.      The Opposition's Request for Money Damages in Lieu of Rescission
                Has No Basis in Puerto Rico Law............................................................. 5

II.     The Ambac Litigation Seeks a Declaration it Has a Security Interest in HTA's
        Property in Violation of Bankruptcy Code Section 362(a)(4). ........................... 6

III.    The Ambac Litigation is an Action to Recover on a Claim Against the Debtor and
        Therefore Violates Bankruptcy Code Sections 362(a)(1) and (6). .................... 8

IV.     Ambac Offers No Controlling Legal Basis for Standing to Bring Any of the Claims
        Asserted in the Ambac Litigation—and Ambac Ignores Authority to the Contrary. ......... 9

        A.      The Complaint's Causes of Action Have Not Reverted to Ambac. .................... 11

        B.      Ambac's Theory of Abandonment Is Improper as a Matter of Law..................... 12

        C.      Ambac Is Improperly Taking HTA's Unjust Enrichment Claim.......................... 14

        CONCLUSION.................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*,
    820 F. Supp. 2d 510 (S.D.N.Y. 2011)..........................................................................6

*Artesanias Hacienda Real S.A. de C.V. v. N. Mill Capital LLC*,
    607 B.R. 189 ....................................................................................................................10

*Begier v. IRS*,
    496 U.S. 53 (1990)..........................................................................................................10

*Campana v. Pilavis (In re Pilavis)*,
    233 B.R. 1 (Bankr. D. Mass. 1999) ...............................................................................11

*Delrey Windows, Inc. v. Mars Builders, Inc. (In re Mars Builders, Inc.)*,
    397 B.R. 255 (Bankr. W.D. Pa. 2008) ...........................................................................12

*El Toro Elec. Corp. v. Zayas*,
    6 P.R. Offic. Trans. 133 (P.R. 1977)..............................................................................15

*Empire State Bldg. Co., L.L.C. v. N.Y. Skyline, Inc. (In re N.Y. Skyline, Inc.)*,
    432 B.R. 66 (Bankr. S.D.N.Y. 2010)...............................................................................6

*Fed. Deposit Ins. Corp. v. Martinez Almodovar*,
    671 F. Supp. 851 (D.P.R. 1987).......................................................................................5

*Fin. Oversight & Mgmt. Bd. for P.R. v. Andalusian Global Designated Activity*
    *Co. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
    948 F.3d 457 (1st Cir. 2020)...........................................................................................14

*In re Eagle Enters., Inc.*,
    265 B.R. 671 (E.D. Pa. 2001) ........................................................................................12

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    2020 WL 114518 (D.P.R. Jan. 7, 2020) ........................................................................13

*In re Gronczewski*,
    444 B.R. 526 (Bankr. E.D. Pa. 2011) ............................................................................11

*In re Hickory Ridge, LLC*,
    2010 WL 1727968 (Bankr. N.D.W.V. Apr. 27, 2010) ..................................................12

*In re Pagnini*,
    2010 Bankr. LEXIS 187 (Bankr. D. Mass. Jan. 26, 2010) ......................................10, 11

*In re Tribune Co. Fraudulent Conveyance Litig.*,
   946 F.3d 66 (2d Cir. 2019)........................................................................11

*Loíza Sugar Co. v. Hernaiz*,
   35 D.P.R. 518 (P.R. 1926) ......................................................................4, 5

*Medina-Rodriguez v. Fernandez Bakery, Inc.*,
   255 F. Supp. 3d 334 (D.P.R. 2017)............................................................13

*Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.)*,
   463 B.R. 28 (Bankr. W.D. Mich. 2012)...................................................9, 15

*Merchs. Auto Grp., Inc. v. Advantage Opco, LLC*,
   2015 WL 728494 (D.N.H. Feb. 19, 2015) ....................................................6

*MMM Healthcare, Inc. v. Santiago (In re Santiago)*,
   563 B.R. 457 (D.P.R. 2017)......................................................................12

*Morales v. Arce*,
   18 D.P.R. 545 (P.R. 1912) ..........................................................................5

*Morley v. Ontos, Inc. (In re Ontos Inc.)*,
   478 F.3d 427 (1st Cir. 2007).....................................................................10

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
   564 B.R. 192 (S.D.N.Y. 2016)....................................................................6

*Peer Int'l Corp. v. Latin Am. Music Corp.*,
   161 F. Supp. 2d 38 (D.P.R. 2001)................................................................4

*Polvay v. B.O. Acquisitions, Inc. (In re Betty Owens Sch., Inc.)*,
   1997 WL 188127 (S.D.N.Y. Apr. 17, 1997).................................................12

*Queenie, Ltd. v. Nygard Int'l*,
   321 F.3d 282 (2d Cir. 2003)........................................................................6

*Steyr–Daimler–Puch of Am. Corp. v. Pappas*,
   852 F.2d 132 (4th Cir. 1988) ....................................................................12

*Tese-Milner v. Edidin & Assocs. (In re Operations NY LLC)*,
   490 B.R. 84 (Bankr. S.D.N.Y. 2013)..........................................................14

*Unisys Corp. v. Dataware Products, Inc.*,
   848 F.2d 311 (1st Cir. 1988).................................................................9, 13

*Vanguard Operating, LLC v. Sublette Cty. Treasurer (In re Vanguard Nat. Res.,
LLC)*,
   2020 Bankr. LEXIS 83 (Bankr. S.D. Tex. Jan. 14, 2020) .............................14

*Westernbank Puerto Rico v. Kachkar*,
    2009 WL 6337949 (D.P.R. Dec. 10, 2009) ...............................................................15

*Yu v. GSM Nation, LLC*,
    2017 WL 2889515 (Del. Ch. July 7, 2017)................................................................6

*Yusin Brake Corp. v. Motorcar Parts of Am., Inc.*,
    2014 WL 2560612 (S.D.N.Y. Jun. 6, 2014) ...............................................................6

**STATUTES**

31 L.P.R.A. § 3492 ..................................................................................................................15

31 L.P.R.A. § 3496 ....................................................................................................................5

31 L.P.R.A. § 3499 .................................................................................................................5, 6

11 U.S.C. § 362 ................................................................................................................. passim

11 U.S.C. § 544 ....................................................................................................1, 10, 11, 14

11 U.S.C. § 546 ................................................................................................................. passim

11 U.S.C. § 554 ...............................................................................................................12, 13

11 U.S.C. § 926 ........................................................................................................................13

PROMESA § 4 ...........................................................................................................................12

PROMESA § 301(a) ...................................................................................................................12

PROMESA § 305 .......................................................................................................................13

PROMESA § 315(b) .....................................................................................................................1

**OTHER AUTHORITIES**

Diez-Picazo y Guillón, *Sistema de Derecho Civil*,
    6th ed. rev., Madrid, Ed. Tecnos, 1992, Vol. II, p. 171 ..........................................6

To the Honorable United States District Judge Laura Taylor Swain:

The Debtors,[1] through the Oversight Board, as the Debtors' representative pursuant to PROMESA section 315(b), respectfully submit this reply in support of the motion [ECF No. 12569] (the "Motion") and memorandum of law [ECF No. 12570] (the "MOL"), and in response to Ambac Assurance Corporation's ("Ambac") opposition to the Motion [ECF No. 12964] (the "Opposition" or "Opp."), and state as follows:

## PRELIMINARY STATEMENT

1.      Count 1 of Ambac's Complaint attacks the transfer from HTA to Metropistas of a toll concession in exchange for cash Metropistas paid to HTA, promises of investments in tolling gantries, and contingent cash.  As explained in the MOL, Bankruptcy Code § 546(a) bars Ambac from bringing fraudulent transfer actions after the two-year limitations period because its plain language says "[a]n action or proceeding under section 544 . . . may not be commenced after the earlier of . . . 2 years."[2]  The statute does not limit the bar to the debtor.  Otherwise, a debtor could never determine not to bring such actions because creditors would otherwise bring them after two years.

2.      But, even if Bankruptcy Code § 546(a) is interpreted not to mean what it says, Ambac's Complaint violates the automatic stay because it requests "an order rescinding the Concession Extension Agreement to the extent necessary to satisfy its claims against PRHTA."[3] Rescission is a well-known remedy designed to put parties back in the positions they were in before entering into a contract.  Rescinding the Concession Extension Agreement means Metropistas would transfer back to HTA the toll concession extension HTA granted it, and HTA would have

---

[1] Terms capitalized but not defined herein shall have the same meaning as in the Motion and/or MOL.

[2] Fraudulent transfer actions under Puerto Rico law are brought pursuant to Bankruptcy Code § 544(b).

[3] See Compl. ¶ 80; see also id., Wherefore clause.

to return the money and other rights Metropistas paid, agreed to pay, and provide to HTA for the concession.  Indisputably, rescission impacts HTA's property.  Paragraph 50 of the Complaint admits HTA has a right to $15 million more under certain conditions, the right to have Metropistas make investments in new tolling gantries, and the right to a 30% portion of incremental revenues from them.  Ambac's Opposition is based on Ambac's demand that after determining the Concession Extension Agreement embodied a fraudulent transfer, the Court will fashion a remedy in which it will order Metropistas to pay Ambac (as opposed to HTA and/or its other creditors) an additional amount representing the alleged shortfall between Ambac's alleged original value of the toll concession and the amount Metropistas paid.  While Ambac does not mention it, its Opposition assumes the Court will order Metropistas to pay more money while keeping it to its bargain to pay HTA $15 million more and to invest in tolling gantries.  But, in expressing its demand for the Court to order a money payment from Metropistas, Ambac commits its stay violation under Bankruptcy Code § 362(a)(3), pursuant to which a creditor is enjoined from taking any act to control the debtor's property.

3.     Ambac's demand for a money judgment is meaningless and toothless absent Ambac's avoidance of the Concession Extension Agreement and its implicit taking hostage of the bundle of rights HTA has under the agreement, unless and until Metropistas pays Ambac.  If Ambac does not procure avoidance of the transfers, the Court has no reason to provide Ambac a money judgment.  Indeed, Ambac concedes as much by its articulation of the relief it wants – "an order rescinding the Extension Agreement to the extent necessary to satisfy its claims against PRHTA."   "[T]o the extent necessary" certainly includes rescission of the contractual commitments Metropistas made to HTA to provide the further investment, future revenues, and contingent cash described above.

4.     In addition, Ambac spends nearly five pages arguing against a preemption theory that does not appear in the Motion (or MOL), in a misguided attempt to deflect the Oversight Board's compelling argument disposing of Ambac's improper abandonment claim.

5.     Lastly, notwithstanding Ambac's assertion that it only wants a lien against Metropistas' share of toll revenues, the Complaint violates Bankruptcy Code § 362(a)(4), which prohibits any act to "enforce any lien" against the debtor's property, because it fails to recognize the funds in question remain HTA's property, while attempting to have issues pending in this Court decided by another court.

## ARGUMENT

I.    **The Ambac Litigation Expressly Seeks Rescission of the Concession Extension Agreement, Which Interferes with HTA's Property Rights in Violation of Bankruptcy Code Section 362(a)(3).**

6.     The Complaint expressly seeks to rescind the Concession Extension Agreement, in violation of the automatic stay.  *See* Compl. ¶ 80 ("Ambac seeks an order rescinding the [Concession] Extension Agreement . . . .").  In the Opposition (¶ 28), Ambac claims for the first time it is not seeking rescission, but merely "money damages from Metropistas measured by Metropistas' failure to pay reasonably equivalent value to PRHTA for the concession rights it received."  *Id.*  Ambac's Complaint says what it says and is not altered by its Opposition here. Moreover, Ambac can only attempt to procure the money judgment it wants by taking control of the bundle of rights HTA has under the Concession Extension Agreement and holding them hostage for the money judgment.  That violates the automatic stay.

A.    **The Complaint Seeks Rescission of the Concession Extension Agreement, Which Under the Facts Alleged, Puerto Rico Law Requires Be Done in Full.**

7.     The Complaint unambiguously seeks rescission of the Concession Extension Agreement: in Count 1, Ambac alleges it "seeks an order *rescinding the Extension Agreement* to

the extent necessary to satisfy [Ambac's] claims against [HTA]."  Compl. ¶ 80 (emphasis added).

Nowhere in the Complaint does the term "limited rescission" even show up.  Although the

Opposition emphasizes the "to the extent" clause (Opp. ¶ 28), it only highlights how Ambac is

holding hostage the Concession Extension Agreement in violation of § 362(a)(3).

8.      It was Ambac's exclusive decision to request rescission.  Ambac cites no authority

for its remarkable proposition that a contract can be "rescinded" against one party (here,

Metropistas), while the party can be compelled to adhere to other portions of the contract (*i.e.*,

paying HTA another $15 million, investing in tolling gantries, and paying HTA 30% of the

incremental revenue).  In short, that is not rescission.  That is alchemy.  As the Puerto Rico

Supreme Court held in a rescission case, "a party cannot repudiate a contract or compromise so far

as its terms are unfavorable to him and claim the benefit of the residue."  *Loíza Sugar Co. v.

Hernaiz*, 35 D.P.R. 518 (P.R. 1926).  Rescission eliminates the contract, including HTA's rights

under the Concession Extension Agreement.  Thus, the Complaint seeks to exercise control against

the debtor's property—HTA's contract rights and money received from Metropistas—and violates

the stay.  11 U.S.C. § 362(a)(3) (barring actions "to exercise control over property of the estate").

9.      Despite Ambac's assertion to the contrary (*see* Opp. ¶ 28), rescission of the

Concession Extension Agreement cannot be limited to affecting Metropistas' contract rights, but

not HTA's contract rights.  "Rescission has the effect of voiding a contract from its inception, *i.e.*,

as if it never existed."  *Peer Int'l Corp. v. Latin Am. Music Corp.*, 161 F. Supp. 2d 38, 51 (D.P.R.

2001).  Indeed, as explained above, Ambac can only obtain a money judgment against Metropistas

by avoiding the entire agreement and threatening to enforce its rescission unless it gets a money

judgment for itself.  That alone violates the automatic stay.  Additionally, under Puerto Rico law,

the effect of rescission is a total voiding of the contract, thereby reverting the parties to their prior

positions.  As the Puerto Rico Supreme Court held:  "As a general rule the right to rescind must be exercised *in toto*.  The contract must stand in all its provisions, or fall altogether. . . .  As a partial rescission is not allowed by law, one who has sufficient cause to rescind a contract for fraud must rescind the whole or none."  *Loíza Sugar Co.*, 35 D.P.R. at 518; *see also* MOL ¶ 8.  Accordingly, any rescission of the Concession Extension Agreement would be total, which necessarily infringes on HTA's property and violates the automatic stay.

**B.     The Opposition's Request for Money Damages in Lieu of Rescission Has No Basis in Puerto Rico Law.**

10.     To support its request for money damages, Ambac invokes a tortured application of 31 L.P.R.A. § 3499.  The Complaint seeks relief "[p]ursuto to 31 L.P.R.A. §§ 3491-3500."  Compl. at 20-21, First Claim for Relief.  Those sections, including § 3499, comprise Chapter 261 of Title 31 of the Puerto Rico Code, which is entitled "Rescission of Contracts."  Section 3499 therefore is interpreted in the context of rescission.  *Morales v. Arce*, 18 D.P.R. 545 (P.R. 1912) (referring to damages under § 3499 as damages from "action of rescission").  To this end, § 3499 merely provides "whenever it is *impossible* to return the things . . . acquired" in bad faith, the acquiror "is liable [to the creditor] for the damages caused."  *Fed. Deposit Ins. Corp. v. Martinez Almodovar*, 671 F. Supp. 851, 880 (D.P.R. 1987).  And, in the absence of such impossibility, "[r]escission obliges the return of the things which were the objects of the contract, with their fruits and the price with interest."  31 L.P.R.A. § 3496.  Thus, it is only in the most limited of circumstances where § 3499 applies, and it does not support an interpretation of the Complaint as one for "damages," not rescission.  If Ambac fails to prove impossibility and Metropistas' bad faith, total rescission is mandated.

11.     In any event, the Court need not reach this issue because it is clear the Complaint alleges nothing to suggest "rescission *in toto* is impossible."  Ambac alleges no reason why

unwinding the Concession Extension Agreement is impossible under Puerto Rico law, or why the consequences of such unwinding (*e.g.*, removing tolling gantries or disgorging the upfront payment to Metropistas) are "speculative."[4]  *See* Opp. ¶¶ 28, 31 n.17.  Indeed, it is entirely possible, while prejudicial to HTA, that the Concession Extension Agreement could be completely unwound, with Metropistas returning the funds it received from HTA, and HTA being left without an operator of the subject toll roads post-2050, and without the other rights HTA procured under the agreement.[5]  Simply put, the filing of the Ambac Litigation jeopardizes HTA's contract and all property rights acquired under the Concession Extension Agreement, and thus, violates the stay.[6]

## II.   The Ambac Litigation Seeks a Declaration it Has a Security Interest in HTA's Property in Violation of Bankruptcy Code Section 362(a)(4).

12.   In short, Ambac's claim to a lien against Metropistas' property (present and future toll collections) is based on its having had a lien against the same property before HTA transferred

---

[4] To rescind the Contract Extension Agreement, HTA "could be required to disgorge the $115 million in proceeds to Metropistas" and "remove the new tolling points that were funded by Metropistas' investments."  MOL ¶ 9. Unequivocally, this harms HTA.  The cases Ambac cites involve claims that present no direct harm to the debtor beyond potentially leading to preclusive effects in other litigation.  None of the cases presented a party seeking rescission of the debtor's contract and the potential disgorgement of hundreds of millions and other consideration by the debtor.  *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003) (debtor might be harmed by preclusive effects of litigation depending on its outcome); *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 564 B.R. 192 (S.D.N.Y. 2016) (same); *Merchs. Auto Grp., Inc. v. Advantage Opco, LLC*, 2015 WL 728494 (D.N.H. Feb. 19, 2015) (lawsuit against non-debtor arguing that non-debtor was liable on certain contracts assigned to the non-debtor, which would have no clear effect on debtor's contracts); *Yusin Brake Corp. v. Motorcar Parts of Am., Inc.*, 2014 WL 2560612, at *4 (S.D.N.Y. Jun. 6, 2014) (claims brought by creditor against third party (Motocar) not barred by automatic stay because they were "independent[] of debtor," while Motocar was a co-obligor and was sued directly).

[5] Although "impossible" is not defined in the context of § 3499, the concept is interpreted in the Civil Code "as the loss of the thing, clarifying that it is understood that the thing is lost when it perishes, remains out of trade, or disappears in a way that its existence is ignored, or cannot be recovered."  Diez-Picazo y Guillón, *Sistema de Derecho Civil*, 6th ed. rev., Madrid, Ed. Tecnos, 1992, Vol. II, p. 171.  The Opposition's citation (¶ 28) to two cases involving funds being used for an allegedly fraudulent purpose do not shed light on how Commonwealth courts interpret § 3499's impossibility language when seeking rescission of a transaction.  *See Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 528 (S.D.N.Y. 2011) (applying New York law to dispute over sale of shopping centers); *Yu v. GSM Nation, LLC,* 2017 WL 2889515, at *4 (Del. Ch. July 7, 2017) (applying Delaware law).

[6] Ambac argues that rescission would not deprive HTA of its ability to assume or reject the Concession Extension Agreement pursuant to section 365.  However, assumption and rescission are mutually exclusive—an order rescinding the Concession Extension Agreement would stop HTA from assuming it.  *See Empire State Bldg. Co., L.L.C. v. N.Y. Skyline, Inc. (In re N.Y. Skyline, Inc.)*, 432 B.R. 66, 82 (Bankr. S.D.N.Y. 2010) ("[A] debtor who wishes to pursue a cause of action to rescind a contract should 'obviously not assume it.'  There are no cases because except for Skyline, no debtor would attempt to assume a contract it was seeking to rescind – it would just reject the contract.").

it to Metropistas.  As Ambac well knows, HTA is currently challenging such liens and the tolls
Metropistas collects are jointly owned by HTA (see below).   Ambac cannot prove it has a lien
against Metropistas' property (present and future toll collections) without proving it has a lien
against HTA's property (present and future toll collections).

13.     The Complaint expressly asserts (¶¶ 15, 18) Ambac has a lien on HTA property,
and then seeks a declaratory judgment validating that purported lien (*id.* ¶¶ 91-95) travelled over
to Metropistas' property.  *See* MOL ¶ 17.  According to the Complaint, that lien was granted by
HTA in the HTA Bond Resolutions.  Compl. ¶¶ 14, 15, 17.  The Opposition ignores these
admissions and claims Ambac "does not seek to enforce a lien against PRHTA's property."  Opp.
¶ 34.  Indeed, Ambac tries to justify its allegations by claiming it seeks merely a declaration
regarding "revenues collected by Metropistas for its own account."  *Id.* ¶ 34 (citing Compl. ¶ 95).

14.     The question of whether the HTA Bond Resolutions granted Ambac a lien beyond
the tolls deposited in certain accounts held with the Fiscal Agent is currently being litigated in
adversary proceedings and contested matters before the Title III court.  This includes the pending
lift stay motion brought by Ambac and others [ECF No. 10102] and the summary judgment
motions filed in the revenue bond adversary proceeding against Ambac and other creditors of HTA
[Adv. Proc. No. 20-007].[7]  Without ever seeking permission to do so, the Ambac Litigation
attempts to obtain a declaratory judgment from a different judge validating Ambac's alleged lien
on the same property.  This is at best forum shopping and at worst an unscrupulous attempt to

---

[7] In these other proceedings – as well as this one – Ambac asserts its lien extends beyond the revenues from the Toll
Roads at issue here to certain vehicle fees and other tax revenues.  *See* Compl. ¶ 15 ("[T]he PRHTA Bonds were
secured by a lien on (i) revenues derived from PRHTA's Toll Facilities . . . ; (ii) gasoline, diesel, crude oil, and other
excise taxes levied by the Commonwealth . . . ; and (iii) motor vehicle license fees . . ."); *Motion of Assured Guaranty
Corp., Assured Guaranty Municipal Corp. Ambac Assurance Corporation, National Public Finance Guarantee
Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative,
Adequate Protection* [ECF No. 10102], ¶ 66 (same).  It therefore is essential that the question of the scope of Ambac's
lien, if any, be adjudicated in connection with those filings, rather than only with respect to the toll revenues in the
Ambac Litigation.

avoid the jurisdiction granted to the Title III court by PROMESA.  Either way, the Complaint is
an improper attempt to enforce a lien against HTA's property.

15.    To avoid this conclusion, Ambac claims it is not trying to enforce a lien on HTA's
property, but instead seeks a declaratory judgment affirming its lien on revenues collected by
Metropistas "for its own account" because Ambac's supposed lien on HTA revenues continued
when funds were transferred to Metropistas.  Opp. ¶¶ 34, 36.  This is wrong.  The Escrow
Agreement, dated September 22, 2011 (the "Escrow Agreement"), entered into between
Metropistas and HTA in connection with the Concession Agreement,[8] shows Metropistas deposits
toll revenues into an account it "jointly owns" with HTA.  *See* Escrow Agreement § 2(b) ("Each
of the [accounts] shall be *jointly* owned by, and is for the exclusive benefit of, the Contracting
Parties.") (emphasis added).  Thus, the collected money remained HTA's property; ownership was
not transferred to Metropistas, as Ambac claims.  *See* Opp. ¶ 36.

## III.   The Ambac Litigation is an Action to Recover on a Claim Against the Debtor and Therefore Violates Bankruptcy Code Sections 362(a)(1) and (6).

16.    Even assuming Ambac had standing to file the Complaint (which it does not), it
nevertheless violated Bankruptcy Code sections 362(a)(1) and (6) because it seeks to recover
payment on a claim against a debtor.  *See* MOL ¶ 22.  Ambac admits it filed the Complaint "to
reclaim the hundreds of millions of dollars in value that was fraudulently transferred to Metropistas
*to secure the payment of obligations PRHTA owes to Ambac*."  Compl. ¶ 7 (emphasis added).  By
its plain language, this violates both § 362(a)(1) (barring actions "to recover a claim against the
debtor that arose before the commencement of the case") and § 362(a)(6) (barring actions "to
collect, assess, or recover a claim against the debtor that arose before the commencement of the

---

[8] A copy of the Escrow Agreement is attached as Exhibit A to the accompanying Declaration of Michael A. Firestein, which is being filed contemporaneously herewith.

case"). Numerous cases across circuits have held this violates the stay, even when the action is against a third party to collect property not belonging to the debtor. *See* MOL ¶ 22. The reason this violates the stay is simple: recovering from Metropistas to satisfy a liability of HTA could easily result in Metropistas having claims over against HTA. That would cause HTA to have to expend its own time and financial resources to participate in the litigation. Those burdens on the Title III debtor are not supposed to be imposed absent stay relief.

17.    Ambac's only response is the citation (Opp. ¶ 61) to *Unisys Corp. v. Dataware Products, Inc.*, 848 F.2d 311 (1st Cir. 1988), in which the debtor did not argue the creditor filing the action violated § 362(a)(1) or (6), and thus, the *Unisys* court did not consider them. Moreover, the *Unisys* trustee expressly abandoned the claim brought by the debtor's *sole* creditor (which would be the only creditor affected if the stay did not apply). *Id.* at 313. There is no express abandonment here, and Ambac is not the only creditor of HTA. Thus, *Unisys* does not begin to contradict the numerous authorities cited in the MOL (¶ 22), which demonstrate Ambac's suit to recover on a claim against a debtor is prohibited by § 362(a)(1) and (6). *See, e.g.*, *Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.)*, 463 B.R. 28, 34-35 (Bankr. W.D. Mich. 2012) (§ 362(a)(6) stayed creditor's unjust enrichment claim seeking money from third-party bank alleging fraudulent transfers from debtor).[9]

## IV.    Ambac Offers No Controlling Legal Basis for Standing to Bring Any of the Claims Asserted in the Ambac Litigation—and Ambac Ignores Authority to the Contrary.

18.    In an effort to avoid the plain fact it violated the automatic stay by filing the Complaint, Ambac dedicates 23 paragraphs of its Opposition to arguing Ambac has standing to

---

[9] Ambac claims (Opp. ¶ 61) none of the cases cited by the Oversight Board involve claims abandoned by the debtor. But, as discussed *infra*, the claims asserted in the Complaint also are not abandoned by HTA. And, notwithstanding the fact Ambac styled its relief as seeking funds transferred to Metropistas (*see id.*, citing Compl. ¶¶ 80, 90), the Complaint necessarily involves HTA's property. *See supra* at Section II.

bring the Complaint under Bankruptcy Code sections 544 and 546.  Opp. ¶¶ 37-59.  Ambac's

purported standing is relevant to whether it is violating HTA's right under Bankruptcy Code §

546(a) not to have the fraudulent transfer count prosecuted, but has no bearing on Ambac's other

stay violations.  Even if Ambac has standing under those sections, it does not absolve Ambac's

transgressions in violating the automatic stay for the reasons explained above.  This is because

"standing" is not an exception to the automatic stay, and nothing in Bankruptcy Code § 362

suggests the stay magically lifts after two years to automatically permit creditors to bring actions

(if the creditor has standing) that would otherwise contravene the automatic stay.  In fact, the law

is to the contrary.  *In re Pagnini*, 2010 Bankr. LEXIS 187, at *6-8 (Bankr. D. Mass. Jan. 26, 2010).

19.      Regardless, Ambac does not have standing to assert the causes of action advanced

in the Complaint.  *Morley v. Ontos, Inc. (In re Ontos Inc.)*, 478 F.3d 427, 431 (1st Cir. 2007).  To

escape its obvious lack of standing,  Ambac claims in its Opposition – as it did in the Complaint

(¶¶ 65-68) – that HTA abandoned the relevant claims, leaving Ambac free to unilaterally (and

without court permission) bring them as a creditor solely for its own benefit.[10]  The Opposition

completely ignores that neither the Bankruptcy Code nor PROMESA allow for automatic

reversion of claims to creditors or for abandonment of causes of action from a debtor to creditors

in the circumstances here.  And, as to its alleged unjust enrichment claim, Ambac cannot have

standing because if it exists at all, the claim is (and always has been) HTA's property.

---

[10] Ambac's attempt to bring the Complaint for its sole benefit should prohibit it from having standing in the first
place. *See Artesanias Hacienda Real S.A. de C.V. v. N. Mill Capital LLC*, 607 B.R. 189, 210-11 (E.D. Pa. 2019
("[A] trustee cannot relinquish claims that belong to the estate for the benefit of a single creditor.").  Such an action
contradicts the basic policy of bankruptcy. *See, e.g., Begier v. IRS*, 496 U.S. 53, 58 (1990) ("Equality of distribution
among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority
should receive pro rata shares of the debtor's property.")

### A.    The Complaint's Causes of Action Have Not Reverted to Ambac.

20.    Ambac admits the fraudulent transfer claim it asserts in the Complaint belonged to

HTA.  *See* Opp. ¶ 38 ("[B]y filing its Title III proceeding, PRHTA obtained the rights of Ambac

and other creditors to pursue avoidance actions grounded in state law.").   Where Ambac goes

wrong is in its recitation of a litany of out-of-Circuit cases to support its assertion these claims

miraculously revert to HTA's creditors after the expiration of the two-year limitations period.  *Id.*

¶ 43. In doing so, Ambac wholly disregards the plain language of § 546(a) and the plain law in *this*

Circuit that a creditor must first obtain leave from the court to bring a fraudulent transfer action.[11]

Ambac cites no case within this Circuit holding creditors regain standing after 2 years or allowing

them to avoid the various restrictions placed on creditors seeking to assert avoidance claims.

21.    Not only are the cases cited by Ambac out-of-Circuit, but they have no basis in the

language of sections 544 and 546,[12] which, when read together, provides no action whatsoever can

be brought after two years, *including by creditors*.  Indeed, the phrasing of § 546 – "[a]n action or

proceeding under section 544, 545, 547, 548, or 553 of this title *may not be commenced* after the

earlier of" two years or the closing of the bankruptcy case – broadly contradicts Ambac's position.

11 U.S.C. § 546(a) (emphasis added).   After the end of the two-year period, in this Circuit, no

party may bring a claim under any of the enumerated sections, not just the trustee or the debtor;

---

[11] *See, e.g.*, *In re Pagnini*, 2010 Bankr. LEXIS 187, at *6-8 (bankruptcy court "*may allow* a creditor to bring suit on behalf of the estate") (emphasis added); *Campana v. Pilavis (In re Pilavis)*, 233 B.R. 1, 4 (Bankr. D. Mass. 1999) (explaining factors "courts are to consider, in deciding if the debtor or trustee unjustifiably failed to bring suit" before allowing creditor to assert fraudulent conveyance claim); *see also* MOL ¶ 15 & n.9.

[12] The cases cited by Ambac (Opp. ¶ 43) are inconsistent with First Circuit law, which requires creditors to seek leave of the court and demonstrate benefit to the estate before filing fraudulent transfer claims, without exception.  *See, e.g.*, *In re Gronczewski*, 444 B.R. 526, 534 (Bankr. E.D. Pa. 2011) ("trustee's exclusive right to maintain fraudulent transfer action is not in perpetuity and individual creditor may resume prosecution of actions when the trustee no longer has a viable cause of action").   Indeed, the view expressed by Ambac's cases has been criticized recently by the Second Circuit.  *See In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 89-90 (2d Cir. 2019) ("[N]o provision for the reversion of claims vested in the trustee *et al.* by Section 544 exists. . . . [H]aving to draw an inference of reversion of rights from that provision's statute of limitations might well have appeared as a leap several bridges too far . . . .").

nothing in the Bankruptcy Code suggests such claims revert to creditors on any basis, much less with a new "time period" in which to bring them or the right to file without leave of court.[13]

### B.   Ambac's Theory of Abandonment Is Improper as a Matter of Law.

22.     The Opposition reiterates Ambac's theory that it has standing to assert the Complaint because HTA abandoned its claims against Metropistas.  *See* Opp. ¶¶ 38-44.  However, as explained in the MOL (¶ 15), PROMESA does not provide for such abandonment.

23.     Ambac concedes, as it must, that Bankruptcy Code § 554 is not incorporated into PROMESA, *see* Opp. ¶ 42, yet then makes the unsupported claim that § 554 is not the only avenue for a debtor to abandon avoidance actions.  However, Ambac fails to cite any authority suggesting another method of abandonment exists.  The fact Congress chose to exclude the only provision in the Bankruptcy Code governing abandonment is powerful evidence Congress meant to exclude the concept of abandonment from PROMESA.  Numerous courts have held complying with all of the requirements in § 554 is the only way to demonstrate abandonment of a claim.[14]

24.     To the extent Ambac is attempting to create a constructive abandonment theory based on HTA's failure to bring an action against Metropistas, that tactic has also been considered and rejected by numerous courts.[15]  The failure to incorporate § 554 into PROMESA, along with

---

[13] The Opposition mischaracterizes the Oversight Board's argument against standing as being rooted in preemption. *See* Opp. ¶¶ 45-59.  The Motion and MOL were not predicated on preemption.  Even under a preemption analysis, however, Ambac could not assert the claims in the Complaint pursuant to PROMESA § 4's express preemption of all inconsistent Commonwealth law.  Any provisions that could allow for Ambac to assert fraudulent conveyance claims would be inconsistent with PROMESA section 301(a)'s incorporation of Bankruptcy Code section 546(a).

[14] *See, e.g.*, *Steyr–Daimler–Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988) ("[B]efore the debtor or a creditor may pursue a claim, there must be a judicial determination that the trustee in bankruptcy has abandoned the claim."); *MMM Healthcare, Inc. v. Santiago (In re Santiago)*, 563 B.R. 457, 471 (D.P.R. 2017) (lack of notice of abandonment mandated dismissal of debtor's postpetition counterclaim for lack of standing because counterclaim was property of the estate).

[15] *See, e.g.*, *Delrey Windows, Inc. v. Mars Builders, Inc. (In re Mars Builders, Inc.)*, 397 B.R. 255, 257 (Bankr. W.D. Pa. 2008) (rejecting creditor's fraudulent conveyance claim even though trustee failed to prosecute it because debtor in possession "cannot abandon a legal claim merely by failing to prosecute it, whatever its reason be for not doing so"); *In re Eagle Enters., Inc.*, 265 B.R. 671, 679 (E.D. Pa. 2001) (same); *Polvay v. B.O. Acquisitions, Inc. (In re Betty Owens Sch., Inc.)*, 1997 WL 188127, at *3 (S.D.N.Y. Apr. 17, 1997) (same); *see generally In re Hickory Ridge, LLC*,

the lack of any other provision in PROMESA providing for abandonment of avoidance actions by

other means, is a clear indication Congress did not intend to allow for the abandonment of debtor

property.  *See Medina-Rodriguez v. Fernandez Bakery, Inc.*, 255 F. Supp. 3d 334, 340 (D.P.R.

2017) ("[T]he incorporation of one statutory provision to the exclusion of another must be

presumed intentional.").  This follows given PROMESA's inherent protection of debtor decisions.

*See, e.g.*, PROMESA § 305 (protecting debtor political powers and decisions regarding property

and revenues, except to the extent the Oversight Board disagrees).   The Oversight Board's

discretion regarding whether to assert causes of action should be protected in light of PROMESA's

goal "not merely to maximize creditors' recoveries" but to engage in "a more holistic approach

that focuses on the continuation and future of a government and its instrumentalities."  *In re Fin.*

*Oversight & Mgmt. Bd. for P.R.*, 2020 WL 114518, at \*3 (D.P.R. Jan. 7, 2020).

25.      What this means is that Ambac's exclusive means of bringing these claims (if ever)

was pursuant to Bankruptcy Code § 926 (which, unlike § 554, is incorporated into PROMESA) by

seeking a trustee to bring a cause of action that a debtor refuses to bring.  *See* 11 U.S.C. § 926, *see*

*also* Apr. 24, 2019 Hr'g Tr., 159:18–21 ("[T]he Court finds that Section 926 is the only mechanism

that allows the Court to grant a third party standing to bring a cause of action on behalf of a Title

III debtor.").  However, Ambac did not bring any motion under § 926, when it could have.  Ambac

should not be permitted to create an end run around the restrictions of § 926 by bringing this action

now, especially without the requirement of seeking court approval.[16]

---

2010 WL 1727968, at \*6 (Bankr. N.D.W.V. Apr. 27, 2010) (same).  Ambac's citation to *Unisys* (*see* Opp. ¶¶ 41-42)
further undercuts its attempt at articulating a constructive abandonment theory, as it stands for the proposition that a
creditor can only obtain standing to pursue claims belonging to the debtor once the estate has unequivocally abandoned
them.  *See* 848 F.2d at 314 (creditor's "right of action to sue" only occurred "once abandonment by the trustee took
place" following creditor's motion to abandon property of "inconsequential value").

[16] The cases Ambac cites regarding abandonment (*see* Opp. ¶ 43), in addition to being criticized in the non-PROMESA
context (*see* Section III, *supra*), would undermine PROMESA's goals.  Indeed, Ambac's theory would allow for a

### C.   Ambac Is Improperly Taking HTA's Unjust Enrichment Claim.

26.     In a final attempt to save its Complaint, Ambac asserts the unjust enrichment claim

belongs to Ambac because Metropistas was unjustly enriched at Ambac's expense.  Alternatively,

Ambac argues, even if HTA could have pursued an unjust enrichment claim, it was abandoned

pursuant to Bankruptcy Code § 544.  Opp. ¶¶ 64-65.  These arguments are flawed.

27.     If an unjust enrichment claim lies against Metropistas, such a claim would be

HTA's property, not Ambac's.  Any unjust enrichment claim would be HTA's, as Ambac seeks to

avoid a contract HTA entered into with Metropistas by which HTA transferred certain rights to

Metropistas in exchange for consideration paid to HTA.  In any event, any unjust enrichment claim

would be based on actions primarily affecting HTA and only derivatively HTA's creditors.  Thus,

any cause of action asserted by Ambac to rescind the contract or for unjust enrichment would be

derivative to claims belonging to HTA.  Such an action would be barred by Bankruptcy Code §

362(a)(3)'s prohibition of claims "exercis[ing] control over property of the estate."[17]

28.     Ambac's theory appears to be it had a lien against HTA property transferred to

Metropistas.  As explained above, Ambac requires stay relief before it can prosecute a prepetition

---

creditor to undercut a debtor's decision not to sue a third party by waiting until two years and one day after the debtor's petition was filed to file its own fraudulent transfer suit.

[17] Ambac concedes the revenues at issue were HTA's property before they were allegedly transferred to Metropistas. *Id.* ¶ 36 ("Where, *as here*, a creditor has a lien on *a debtor's property* and that property is transferred to a third party . . . .") (emphasis added).  Further, if Ambac is right in its assertion that its lien (assuming it has one) survived a transfer of property to Metropistas (*see* Opp. ¶ 36), then Metropistas was not enriched at Ambac's expense at all.  The purported survival of the lien would mean Ambac retained all of its purported property rights post-transfer.  Thus, Ambac has no claim against Metropistas as Metropistas was not unjustly enriched at Ambac's expense.  Moreover, Ambac has not shown that an unjust enrichment claim can exist based on the Concession Extension Agreement.  The First Circuit recently held a future, potential right to funds is not property.  *See Fin. Oversight & Mgmt. Bd. for P.R. v. Andalusian Global Designated Activity Co. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 948 F.3d 457, 468 (1st Cir. 2020) ("We conclude that [Debtor's] statutory authority to receive postpetition [e]mployers' [c]ontributions constituted merely an expectancy and not a property "right" as it is clear that the payment and the amounts of the [c]ontributions depended on work occurring on and after the petition date.").  The basis of Ambac's purported unjust enrichment claim is premised on Metropistas' ability to obtain certain revenues after 2051, which have not yet been earned.  Compl. ¶ 83 ("If not for the [Concession] Extension Agreement, the Toll Roads – and the revenue generated from them – would have reverted back to PRHTA in 2051.").  This future stream of revenue is a mere "expectancy," not a property right, so Ambac cannot have a lien on it, and it cannot ground an unjust enrichment claim.

claim for repayment.  That is the plain meaning of Bankruptcy Code § 362(a)(6).  *See Meoli*, 463 B.R. at 34-35 (unjust enrichment claim stayed by § 362(a)(6)); *see also* MOL ¶ 22.  Ambac's claim requires a determination of a lien against HTA's property, and potentially involves Metropistas' cross claims against HTA, thereby necessitating expending HTA's time and financial resources.

29.     The two-year limitations period in Bankruptcy Code § 546 does not impact an unjust enrichment claim.  That section is expressly limited to actions commenced under sections 544, 545, 547, 548 or 553.[18]  Any right to bring an unjust enrichment claim against Metropistas has not expired and remains with HTA.[19]  And, the Complaint would encroach on HTA's right to bring an unjust enrichment claim for the benefit of all creditors, if any such claim existed.

30.     Under Puerto Rico law, unjust enrichment claims may only exist when "the aggrieved person [has] no other action to obtain redress."  *El Toro Elec. Corp. v. Zayas*, 6 P.R. Offic. Trans. 133, 138 (P.R. 1977).  Because any transfer to Metropistas is governed by the Concession Extension Agreement, and rescission pursuant to 31 L.P.R.A. § 3492 is not physically impossible (*see* Section I.A., *supra*), the unjust enrichment claim cannot lie.  *Westernbank Puerto Rico v. Kachkar*, 2009 WL 6337949, at *29 (D.P.R. Dec. 10, 2009) ("Since several statutes are applicable to the case at issue, the doctrine of unjust enrichment is precluded.").

## **CONCLUSION**

31.     The Motion should be granted.

---

[18] *See* 11 U.S.C. §546(a); *see also Vanguard Operating, LLC v. Sublette Cty. Treasurer (In re Vanguard Nat. Res., LLC)*, 2020 Bankr. LEXIS 83, at *76 (Bankr. S.D. Tex. Jan. 14, 2020) ("The . . . unjust enrichment claims asserted . . . are not subject to the statute of limitations contained in § 546(a)(2)."); *Tese-Milner v. Edidin & Assocs. (In re Operations NY LLC)*, 490 B.R. 84, 100 (Bankr. S.D.N.Y. 2013) (unjust enrichment claim "is not subject to the two year bankruptcy statute of limitations that governs avoidance actions under 11 U.S.C. § 546(a).").

[19] The Opposition asserts *HTA* was harmed due to Metropistas' alleged "exploit[ation of] the [Commonwealth's financial] situation for its own gain.  Opp. ¶ 9.  If this is true, HTA would have a direct claim against Metropistas, not a claim through its trustee strong-arm powers.  Accordingly, even if Ambac did have a lien (as is currently being litigated in this Court), the revenues would be HTA's property, and Ambac would have, at most, derivative collateral.

Dated: May 27, 2020

Respectfully submitted,

*/s/ Luis F. del Valle-Emmanuelli*

Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel: 787-647-3503
Email: dvelawoffices@gmail.com

OF COUNSEL FOR
A&S LEGAL STUDIO, PSC
434 Avenida Hostos
San Juan, PR 00918
Tel: 787-751-6764/763-0565
Fax: 787-763-8260

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock
Jeffery W. Levitan
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative of the
Commonwealth of Puerto Rico and the
Puerto Rico Highways and Transportation
Authority*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Luis F. del Valle-Emmanuelli*
Luis F. del Valle-Emmanuelli