**<u>Movants' HTA Exhibit 19</u>**

(4(a))

# CERTIFICATE OF SECRETARY OF THE AUTHORITY
## AS TO RESOLUTION 2003-23

I, Sonia Ramírez, Secretary of Puerto Rico Highways and Transportation Authority (the "Authority") , DO HEREBY CERTIFY that attached hereto is a true and correct copy of Resolution No. 2003-23 fixing the details and covering other matters relating to the issuance of $717,365,000 Puerto Rico Highways and Transportation Authority Highway Revenue Refunding Bonds (Series AA) (the "Series AA Bonds") of the Authority, which was adopted by the Secretary of Transportation and Public Works on April 10, 2003. I DO FURTHER CERTIFY that said Resolution No. 2003-23 and Resolution No. 68-18, adopted by the Secretary of Transportation and Public Works on June 13, 1968, as amended, are the only resolutions of the Secretary of Transportation and Public Works relating to the Series AA Bonds and that said resolutions have not since April 10, 2003 been in any way amended, annulled, rescinded or revoked and the same are still in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the Authority this 29th day of April, 2003.

(SEAL)

_Sonia Ramírez - Sanaguet_
Secretary
Puerto Rico Highways
and Transportation Authority

1

CONFIDENTIAL

RESOLUTION NO. 2003-23

RESOLUTION AUTHORIZING THE ISSUANCE OF $717,365,000 PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY HIGHWAY REVENUE REFUNDING BONDS (SERIES AA), DESCRIBING THE BONDS TO BE REDEEMED WITH THE PROCEEDS OF SAID BONDS, ESTABLISHING REDEMPTION AND TENDER PROVISIONS FOR SAID BONDS, AWARDING SAID BONDS, SPECIFYING THE INTEREST RATES OR THE METHODS FOR DETERMINING THE INTEREST RATES FOR SAID BONDS, FIXING THE INITIAL AMORTIZATION REQUIREMENTS FOR SAID BONDS, AND FIXING THE DETAILS THEREOF, AUTHORIZING THE EXECUTION AND DIRECTING THE AUTHENTICATION AND DELIVERY OF SAID BONDS, APPROVING THE FORM AND RATIFYING THE DISTRIBUTION BY THE UNDERWRITERS OF A PRELIMINARY OFFICIAL STATEMENT, APPROVING THE FORM OF THE OFFICIAL STATEMENT RELATING TO SAID BONDS AND AUTHORIZING THE EXECUTIVE DIRECTOR TO SIGN THE OFFICIAL STATEMENT, DIRECTING THE APPLICATION OF THE PROCEEDS OF SAID BONDS, AUTHORIZING THE EXECUTION AND DELIVERY OF AN ESCROW DEPOSIT LETTER, A CONTINUING DISCLOSURE AGREEMENT, A REMARKETING AGREEMENT AND SEPARATE COMMITMENTS TO ISSUE ONE OR MORE MUNICIPAL BOND INSURANCE POLICIES WITH FINANCIAL GUARANTY INSURANCE COMPANY, MBIA INSURANCE CORPORATION, FINANCIAL SECURITY ASSURANCE INC. AND AMBAC ASSURANCE CORPORATION, APPROVING THE FORM OF A REQUEST FOR BIDS FOR THE INVESTMENT OF A PORTION OF THE PROCEEDS OF SAID BONDS AND AUTHORIZING AND DIRECTING THE EXECUTIVE DIRECTOR TO NEGOTIATE THE AGREEMENTS IN RESPECT THEREOF, MAKING A TAX COVENANT, AUTHORIZING OTHER NECESSARY ACTION AND PROVIDING FOR THE EFFECTIVE DATE OF THIS RESOLUTION.

WHEREAS, Act No. 74 of the Legislature of Puerto Rico, approved June 23, 1965, as amended (hereinafter sometimes called the "Enabling Act"), created Puerto Rico Highways and *Transportation Authority (formerly Puerto Rico Highway Authority and hereinafter sometimes*

NY1 5344087v9

called the "Authority") as a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth") for the purpose of continuing the government program of providing highways to facilitate the movement of vehicular traffic, relieve hazards and handicaps on the congested roads and highways of the Commonwealth and to meet the increasing demand for additional traffic facilities resulting from the continuing economic development of the Commonwealth; and

WHEREAS, by Reorganization Plan No. 6 of 1971 submitted by the Governor to the Legislature of Puerto Rico pursuant to the Reorganization Act of 1968 (Act No. 113 of the Legislature of Puerto Rico, approved June 21, 1968) and approved by the Legislature, the Department of Public Works of the Commonwealth was reorganized as a central organization in charge of the transportation program of the Commonwealth and was redesignated the Department of Transportation and Public Works; and

WHEREAS, by said Reorganization Plan No. 6, the Authority was attached to the Department of Transportation and Public Works effective January 2, 1973, and all of the powers and duties of said Authority were transferred from the Board of Directors of the Authority to the Secretary of Transportation and Public Works; now, therefore,

I, ENG. FERNANDO E. FAGUNDO, Secretary of Transportation and Public Works, DO HEREBY DETERMINE AND RESOLVE, as follows:

Section 1. For the purpose of providing funds for refunding the bonds of the Authority listed in Appendix B hereto (the "Refunded Bonds") and paying certain expenses relating to the issuance thereof, bonds of the Authority in the aggregate principal amount of Seven Hundred Seventeen Million Three Hundred Sixty-five Thousand Dollars ($717,365,000) are hereby authorized to be issued pursuant to the provisions of Section 209 of Resolution No. 68-18,

NY1 5344087v9

CONFIDENTIAL

HTA_STAY0002743

adopted by the Authority on June 13, 1968, as amended (the "1968 Bond Resolution"). Said

bonds shall be designated "Puerto Rico Highways and Transportation Authority Highway

Revenue Refunding Bonds (Series AA)" (hereinafter called the "Series AA Bonds"), shall be

dated their date of delivery, shall be issuable as registered bonds without coupons in

denominations of $5,000 and any multiple thereof (except as provided below), shall be numbered

from RAA-1 upwards, shall be stated to mature (subject to the right of prior redemption and

tender) and shall bear interest from their date until their payment at the rates (except for the

Series AA Variable Rate Bonds hereinafter mentioned), payable semi-annually on January 1 and

July 1 of each year (except as provided below) as follows:

$436,135,000 aggregate principal amount of the Series AA Bonds shall be serial bonds and

shall be stated to mature in annual installments on July 1 in the years and amounts and to bear

interest at the rates, as follows:

| Year of Maturity | Amount | Interest Rate | Year of Maturity | Amount | Interest Rate |
|---|---|---|---|---|---|
| 2005 | $20,000,000 | 5% | 2013* | $ 2,725,000 | 3¾% |
| 2005 | 4,060,000 | 2¼ | 2015* | 1,825,000 | 4 |
| 2006 | 36,975,000 | 5 | 2016* | 31,160,000 | 5½ |
| 2006 | 2,225,000 | 2¼ | 2016* | 9,365,000 | 4 |
| 2007 | 39,975,000 | 5 | 2017** | 41,725,000 | 5½ |
| 2007 | 1,405,000 | 2¾ | 2017** | 520,000 | 4.10 |
| 2008* | 13,590,000 | 5 | 2018** | 43,790,000 | 5½ |
| 2008* | 20,765,000 | 2⅝ | 2018** | 860,000 | 4¹/₈ |
| 2009* | 2,160,000 | 5 | 2019** | 68,360,000 | 5½ |
| 2009* | 8,700,000 | 3 | 2019** | 235,000 | 4¼ |
| 2010* | 23,505,000 | 5 | 2020** | 35,875,000 | 5½ |
| 2010* | 14,675,000 | 3¼ | 2020** | 325,000 | 4.30 |
| 2011* | 2,475,000 | 3½ | 2021** | 1,515,000 | 4½ |
| 2012* | 1,060,000 | 5¼ | 2022** | 1,580,000 | 4.60 |
| 2012* | 3,050,000 | 3⅝ | 2023** | 1,655,000 | 4⅝ |

and the remaining $281,230,000 aggregate principal amount of the Series AA Bonds shall be

term bonds, consisting of $188,395,000 bonds stated to mature on the 1st day of July, 2026,

3

NYI 5344087v9

                                                                                      HTA_STAY0002744

$9,570,000 bonds stated to mature on the 1st day of July, 2028, $17,990,000 bonds stated to mature on the 1st day of July, 2035 and $65,275,000 bonds stated to mature on the first day of July, 2035 bearing interest at the rate of 5% per annum. The Series AA Bonds maturing July 1, 2026 and July 1, 2035 shall be issued as variable rate bonds having the Amortization Requirements, initial interest rates and other provisions set forth in Appendix A hereto and are referred to as the "Series AA Variable Rate Bonds".

The Amortization Requirements for the Series AA Bonds stated to mature on July 1, 2028 shall be as follows:

| Fiscal Year Ending June 30 | Amount |
|---|---|
| 2024 | $1,730,000 |
| 2025 | 1,820,000 |
| 2026 | 1,910,000 |
| 2027 | 2,005,000 |

The Amortization Requirements for the Series AA Bonds ($17,990,000 principal amount) stated to mature on July 1, 2035 shall be as follows:

| Fiscal Year Ending June 30 | Amount |
|---|---|
| 2029 | $2,210,000 |
| 2030 | 2,320,000 |
| 2031 | 2,435,000 |
| 2032 | 2,560,000 |
| 2033 | 2,685,000 |
| 2034 | 2,820,000 |

The Series AA Variable Rate Bonds shall have the Amortization Requirements specified in Appendix A.

The Series AA Bonds maturing on July 1 of the years 2008 through 2016 as indicated by the asterisk in the table above (the "FGIC Insured Bonds") are insured by Financial Guaranty

4

NY1 5344087v9

CONFIDENTIAL

Insurance Company ("FGIC"). The Series AA Bonds maturing on July 1 of the years 2017 through 2023 as indicated by the double asterisk in the table above (the "MBIA Insured Bonds") are insured by MBIA Insurance Corporation ("MBIA"). The Series AA Variable Rate Bonds maturing on July 1, 2026 (the "FSA Insured Bonds") are insured by Financial Security Assurance Inc. ("FSA"). The Series AA Variable Rate Bonds maturing on July 1, 2035 (the "Ambac Insured Bonds", and together with the FGIC Insured Bonds, the MBIA Insured Bonds and the FSA Insured Bonds, the "Series AA Insured Bonds") are insured by Ambac Assurance Corporation ("Ambac").

Section 2. The Series AA Bonds at the time outstanding maturing after July 1, 2028 (other than the Series AA Variable Rate Bonds) may be redeemed prior to their respective maturities on or after July 1, 2013 at the option of the Authority from any available moneys (other than moneys deposited in the Sinking Fund (as defined in the 1968 Bond Resolution) in respect of an Amortization Requirement) on any date either (a) in whole or (b) in part, and if in part, in such order of maturity as the Authority may direct, at the principal amount of the bonds to be redeemed, together with the interest accrued thereon to the date fixed for redemption, without premium; provided, however, than an amount of the term Series AA Bonds (other than the Series AA Variable Rate Bonds) equal to the respective Amortization Requirements therefor set out in Section 1 of this resolution may be redeemed from moneys in the Sinking Fund on July 1, 2024 and on July 1 in each year thereafter at par and accrued interest without premium.

The Series AA Variable Rate Bonds shall have the redemption provisions specified in Appendix A.

Section 3. The Series AA Bonds shall bear the facsimile signatures of the Secretary of Transportation and Public Works and the Executive Director and the Secretary or an Assistant

NY1 5344087v9

CONFIDENTIAL                                                                 HTA_STAY0002746

Secretary of the Authority and a facsimile of the corporate seal of the Authority shall be imprinted on the bonds.  Said bonds and the certificate of authentication to be endorsed on the bonds shall be, respectively, substantially in the following forms:

NY1 5344087v9

CONFIDENTIAL

HTA_STAY0002747

[Form of Series AA Bonds]

No.  RAA-__                                                                      $_____

United States of America
Commonwealth of Puerto Rico

PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY
Highway Revenue Refunding Bond (Series AA)

| Maturity Date | Interest Rate | Cusip No. |
|---|---|---|
| July 1, 20__ | % | 745181 |

PRINCIPAL AMOUNT:

REGISTERED HOLDER:  CEDE & CO.

Puerto Rico Highways and Transportation Authority (hereinafter sometimes called the "Authority"), a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico, for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Holder shown above, or registered assigns or legal representative, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the principal corporate trust office of the Fiscal Agent (hereinafter mentioned), the Principal Amount shown above and premium, if any, and to pay to the Registered Holder hereof, from said special fund, interest on said Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication hereof to which interest shall have been paid, unless such date of authentication is a January 1 or July 1 to which interest shall have been paid, in which case from such date, such interest being payable on January 1 and July 1 in each year, commencing July 1, 2003, at the Interest Rate per annum specified above, until payment of said Principal Amount.  The interest so payable and punctually paid, or duly provided for, on any interest payment date will be paid to the person in whose name this bond (or one or more predecessor bonds, as defined in the Resolution hereinafter mentioned) is registered at the close of business on the fifteenth (15th) day (whether or not a business day) of the calendar month nextpreceding such interest payment date, by check mailed to such person at his address as it appears on the bond registration books of the Authority maintained by the Fiscal Agent.  All such payments shall be made in such coin or currency of the United States as at the time of payment is legal tender for payment of public and private debts.

This bond shall not be deemed to constitute a debt of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any such political subdivision shall be liable thereon, nor shall this bond or the interest thereon be payable out of any funds other than those pledged for the payment thereof pursuant to the Resolution.

7

NY1 5344087v9

CONFIDENTIAL                                                                      HTA_STAY0002748

This bond is one of a duly authorized series of bonds of the Authority designated "Puerto Rico Highways and Transportation Authority Highway Revenue Refunding Bonds (Series AA)" aggregating Seven Hundred Seventeen Million Three Hundred Sixty-five Thousand Dollars ($717,365,000), consisting of $436,135,000 bonds maturing in annual installments on July 1 in each of the years 2005 to 2023, inclusive (herein called the "serial bonds"), and of $281,355,000 bonds maturing on July 1, 2026, July 1, 2028, July 1, 2035 ($65,275,000 principal amount) and July 1, 2035 ($17,990,000 principal amount) (herein called the "term bonds"), issued by the Authority for the purpose of providing funds for refunding certain highway revenue bonds of the Authority. The term bonds maturing July 1, 2036 and July 1, 2035 ($65,275,000 principal amount) are herein called the "Variable Rate Bonds". All of the bonds are issued pursuant to Resolution No. 68-18 adopted by the Authority on June 13, 1968, as amended (said resolution, together with all supplemental resolutions therein permitted, and the resolution of the Authority authorizing the issuance of the bonds of the series of which this is one, being herein called the "Resolution"), reference to which is hereby made for the provisions, among others, with respect to the application of the proceeds of bonds issued under the Resolution, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the rights, duties and obligations of the Authority and of the Fiscal Agent under the Resolution and the rights of the holders of the bonds, and, by the acceptance of this bond, the Registered Holder hereof assents to all of the provisions of the Resolution. A certified copy of the Resolution is on file at the principal corporate trust office of JPMorgan Chase Bank, successor fiscal agent (said fiscal agent and any successor fiscal agent under the Resolution being herein called the "Fiscal Agent"), in the City and State of New York.

The bonds of the series of which this is one at the time outstanding maturing after July 1, 2028 (other than the Variable Rate Bonds) may be redeemed on or after July 1, 2013 at the option of the Authority from any available moneys (other than from moneys deposited in the Sinking Fund (hereinafter mentioned) in respect of an Amortization Requirement) on any date either (a) in whole or (b) in part, and if in part, in such order of maturity as the Authority may direct, at the principal amount of the bonds to be redeemed with interest accrued thereon to the date fixed for redemption without premium. Notwithstanding the foregoing, the term bonds maturing July 1, 2026, July 1, 2028, July 1,2035 ($65,275,000 principal amount) and July 1, 2035 (17,990,000 principal amount), are subject to redemption in part, from moneys in the Sinking Fund, at par plus accrued interest, without premium, beginning July 1, 2020, July 1, 2024, July 1, 2026 and July 2029, respectively, and on each July 1 thereafter to the extent of the principal amount of the respective Amortization Requirements therefor set out in the resolution of the Authority authorizing the issuance of said bonds as such amounts may be adjusted pursuant to the Resolution. The Resolution contains the terms under which the Variable Rate Bonds may be redeemed or tendered for purchase.

The moneys in the Redemption Account (referred to in the Resolution) available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Resolution in the manner provided in the Resolution.

If less than all of the bonds of any one maturity shall be called for redemption, the particular bonds or portions of bonds to be redeemed shall be selected by the Fiscal Agent in such manner as it shall deem fair and appropriate.

8

CONFIDENTIAL

At least thirty (30) days before the redemption date of any bonds to be redeemed, whether such redemption be in whole or in part, the Fiscal Agent shall cause a notice of such redemption to be mailed, by first class mail, postage prepaid, to all registered owners of bonds to be redeemed at their addresses appearing upon the bond registration books of the Authority. The failure to mail such notice to any registered owner of bonds or any defect in any notice so mailed shall not affect the validity of the proceedings for the redemption of bonds of other registered owners. On the date fixed for redemption, notice having been given as aforesaid, the bonds or portions thereof so called for redemption shall become and be due and payable at the redemption price provided for the redemption of such bonds or portions thereof on such date, and, if sufficient moneys, or certain securities or other arrangements permitted under the Resolution, the principal of and interest on which securities or other arrangements when due will provide sufficient moneys, for payment of such redemption price and the accrued interest are held by the Fiscal Agent, as provided in the Resolution, interest on the bonds or the portions thereof so called for redemption shall cease to accrue, such bonds shall cease to be entitled to any lien, benefit or security under the Resolution, and the registered owners thereof shall have no rights in respect of such bonds except to receive payment of the redemption price thereof and the accrued interest so held by the Fiscal Agent. If a portion of this bond shall be called for redemption, a new bond or bonds in an aggregate principal amount equal to the unredeemed portion hereof will be issued to the Registered Holder hereof or his legal representative upon the surrender hereof; said new bond or bonds shall be of any authorized denomination or denominations and shall be of the same series and maturity and shall bear interest at the same rate as the bonds surrendered for partial redemption.

Modifications or alterations of the Resolution or of any resolution supplemental thereto may be made only to the extent and in the circumstances permitted by the Resolution.

The bonds of this series (other than the Variable Rate Bonds) are issuable only as registered bonds without coupons in denominations of $5,000 and any multiple thereof. The Variable Rate Bonds are also issuable as registered bonds without coupons in the denominations and having such terms as are set forth in the Resolution. At the principal corporate trust office of the Fiscal Agent, in the manner and subject to the conditions provided in the Resolution and without cost to the registered owners thereof except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The Fiscal Agent is required to keep at its principal corporate trust office the books of the Authority for the registration of transfers of bonds. The transfer of this bond may be registered only upon such books and as otherwise provided in the Resolution upon the surrender hereof to the Fiscal Agent together with an assignment duly executed by the Registered Holder hereof or his attorney or legal representative in such form as shall be satisfactory to the Fiscal Agent. Upon any registration of transfer, the Authority shall execute and the Fiscal Agent shall authenticate and deliver in exchange for this bond, a new bond or bonds registered in the name of the transferee, of authorized denominations, in an aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

9

NY1 5344087v9

The Fiscal Agent shall not be required to exchange or register any transfer of this bond during the fifteen (15) days immediately preceding the date of mailing of notice of any redemption of bonds, or after this bond has been selected for redemption.

This bond is issued and the Resolution was adopted under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly Act No. 74, approved June 23, 1965, as amended (said Act as amended being herein called the "Enabling Act"). The Resolution provides for the issuance, from time to time, of additional series of bonds under the conditions, limitations and restrictions therein set forth. The Resolution provides for the creation of a special fund designated "Puerto Rico Highways Authority Highway Revenue Bonds Interest and Sinking Fund", which special fund is pledged to and charged with the payment of the principal of and the interest on all bonds issued under the provisions of the Resolution, and also provides for the deposit to the credit of said special fund of a sufficient amount of the moneys received by the Authority (a) from the taxes on gasoline and gas oil and diesel oil heretofore allocated to the Authority by the Excise Act of Puerto Rico (Act No. 5, approved October 8, 1987, as amended), (b) from certain receipts of annual motor vehicle license fees imposed by the Commonwealth and allocated to the Authority by the Vehicle and Traffic Law of Puerto Rico (Act No. 141, approved July 20, 1960, as amended), (c) from any tolls or other charges imposed by the Authority for the use of any traffic facilities to the extent provided in the Resolution and (d) from the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico has allocated or may allocate to the Authority and expressly authorizes the Authority to pledge to the payment of the principal of and interest on bonds or other obligations issued by the Authority and which are pledged by the Authority to the payment of the principal of and interest on bonds or other obligations issued under the provisions of the Resolution to pay such principal and interest as the same shall become due and to create and maintain a reserve therefor. The proceeds of the taxes on gasoline and gas oil and diesel oil so allocated to the Authority by said Excise Act of Puerto Rico, the proceeds of the license fees so allocated to the Authority by said Vehicle and Traffic Law of Puerto Rico and any other taxes, fees or charges which the Legislature of Puerto Rico has allocated or may allocate to the Authority are subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed for such purpose, but only to the extent that other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose.

As declared in the Enabling Act, this bond, notwithstanding the provisions for transfer contained in the Resolution, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including the Enabling Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the adoption of the Resolution have happened, exist and have been performed as so required.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico *shall* govern its construction. This bond shall not be valid or become obligatory for any purpose

10

NY1 5344087v9

or be entitled to any lien, benefit or security under the Resolution herein described until the certificate of authentication endorsed hereon shall have been duly executed by the Fiscal Agent.

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority has caused this bond to bear the facsimile signatures of the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico and of the Executive Director and the Secretary of Puerto Rico Highways and Transportation Authority and a facsimile of its corporate to be imprinted hereon, all as of the 29th day of April, 2003.

<div style="margin-left:40%">

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY


By:_____
    Secretary of Transportation
    and Public Works

</div>

(SEAL)

<div style="margin-left:40%">

By:_____
    Executive Director


By:_____
    Secretary

</div>

11

NY1 5344087v9

CONFIDENTIAL   HTA_STAY0002752

[Form of Certificate of Authentication
To be endorsed on all bonds]

      This is one of the bonds of the series designated therein and issued under and secured by the provisions of the within mentioned Resolution.

JPMorgan Chase Bank, as Fiscal Agent

By:_____
        Authorized Officer

Date of authentication: _____

12

NY1 5344087v9

CONFIDENTIAL

[Form of Assignment]

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto _____

_____
the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ his attorney to register the transfer of the within bond on the books
kept for registration thereof with full power of substitution in the premises.

Dated:_____                    Signature:_____

                                                   _____

                                                   NOTICE:   The signature on this assignment
                                                   must correspond with the name as it appears on
                                                   the face of the within bond in every particular,
                                                   without alteration or enlargement or any change
                                                   whatever.

Social Security Number or
Employer Identification Number
of Transferee:

Signature Guaranteed:

                                                   _____

                                                   NOTICE:   Signatures must be guaranteed by a
                                                   member firm of the New York Stock Exchange
                                                   or a commercial bank or a trust company.

13

NY1 5344087v9

CONFIDENTIAL                                                          HTA_STAY0002754

[Form of Series AA Variable Rate Bonds]

No.  RAA-__                                                                                                    $

United States of America
Commonwealth of Puerto Rico

PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY
Highway Revenue Refunding Bond (Series AA)

| Maturity Date | Initial Term Rate | Interest Term Rate Period Ends | Cusip No. |
|---|---|---|---|
| July 1, 20 | % | July 1, 2010 | 745181 |

PRINCIPAL AMOUNT:  DOLLARS

REGISTERED HOLDER:  CEDE & CO.

Puerto Rico Highways and Transportation Authority (hereinafter sometimes called the "Authority"), a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico, for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Holder shown above, or registered assigns or legal representative, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the principal corporate trust office of the Fiscal Agent (hereinafter mentioned), the Principal Amount shown above and premium, if any, and to pay to the Registered Holder hereof, from said special fund, interest on said Principal Amount from the date of this bond through the Initial Term Rate Period at the Initial Term Rate set forth above and thereafter to pay interest at Rates for one or more Rate Periods until converted to another Rate Period determined in accordance with (and as all such terms are defined in) the Resolution (hereinafter mentioned).  This bond shall bear interest as provided in the Resolution computed on the basis of a 360-day year of twelve 30-day months during the Initial Term Rate Period, a 365 or 366-day year, as appropriate, and actual days elapsed during any Initial Rate Period, any Daily Rate Period, any Commercial Paper Rate Period or any Weekly Rate Period, and a 360-day year of twelve 30-day months during any Term Rate Period and the Fixed Rate Period (as such terms are hereinafter defined).  Interest on this bond in the Auction Rate Mode with an Auction Period of 180 days or less shall be calculated on the basis of a 360 day year for the actual number of days elapsed to the Interest Payment Date.  Interest on this bond with an Auction Period of more than 180 days shall be calculated on the basis of a 360-day year of twelve 30-day months.

Interest on this bond shall be payable on each Interest Payment Date (i) during any Daily Rate Period, any Commercial Paper Rate Period, any Weekly Rate Period or any Auction Period by check mailed to the registered owner of this bond on the Record Date immediately preceding such Interest Payment Date to the address thereof as it appears on the registration books of the

14

NYI 5344087v9

Authority, or, at the request of such registered owner, by wire transfer at the wire transfer address in the United States to which such registered owner has (not later than the Record Date immediately preceding such Interest Payment Date) directed the Fiscal Agent to wire such interest payment, and, (ii) during any Term Rate Period or the Fixed Rate Period, by check mailed to the registered owner of this bond on the Record Date to the address thereof as it appears on the registration books of the Authority. All such payments shall be made in such coin or currency of the United States of America as at the time of payment is legal tender for the payment of public and private debts.

Interest Payment Date means (i) during any Initial Rate Period, Daily Rate Period, or any Weekly Rate Period, the first Business Day of each month, (ii) during any Commercial Paper Rate Period, the next succeeding Reset Date or the Conversion Date, (iii) during the Initial Term Rate Period, any Term Rate Period or the Fixed Rate Period, each June 15 and December 15 and (iv) with respect to Auction Rate Mode means (a) when used with respect to any Auction Period other than a daily Auction Period or a Special Auction Period, the Business Day immediately following such Auction Period; (b) when used with respect to a daily Auction Period, the first Business Day of the month immediately succeeding such Auction Period; and (c) when used with respect to a Special Auction Period of (i) seven (7) or more but fewer than ninety–two (92) days, the Business Day immediately following such Special Auction Period, or (ii) ninety–two (92) or more days, each thirteenth Monday after the first day of such Special Auction Period or the next Business Day if such Monday is not a Business Day and on the Business Day immediately following such Special Auction Period.

Record Date means, with respect to each Interest Payment Date, (i) during any Daily Rate Period, any Commercial Paper Rate Period, any Weekly Rate Period or any Auction Period, the close of business on the Business Day preceding such Interest Payment Date, and (ii) during the Initial Term Rate Period, any Term Rate Period or the Fixed Rate Period, the close of business on the fifteenth day of each June and December, regardless of whether such day is a Business Day.

Unless otherwise defined herein, all terms herein shall have the same meanings given to them in the Resolution.

This bond shall not be deemed to constitute a debt of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any such political subdivision shall be liable thereon, nor shall this bond or the interest thereon be payable out of any funds other than those pledged for the payment thereof pursuant to the Resolution.

This bond is one of a duly authorized series of bonds of the Authority designated "Puerto Rico Highways and Transportation Authority Highway Revenue Refunding Bonds (Series AA)" aggregating Seven Hundred Seventeen Million Three Hundred Sixty-five Thousand Dollars ($717,365,000), consisting of $436,135,000 bonds maturing in annual installments on July 1 in each of the years 2005 to 2023, inclusive (herein called the "serial bonds"), and of $281,355,000 bonds maturing on July 1, 2026, July 1, 2028, July 1, 2035 ($65,275,000 principal amount) and July 1, 2035 ($17,990,000 principal amount) (herein called the "term bonds"), issued by the Authority for the purpose of providing funds for refunding certain highway revenue bonds of the Authority. The term bonds maturing July 1, 2026 and July 1, 2035 ($65,275,000 principal

15

NY1 5344087v9

amount) are herein called the "Variable Rate Bonds". All of the bonds are issued pursuant to Resolution No. 68-18 adopted by the Authority on June 13, 1968, as amended (said resolution, together with all supplemental resolutions therein permitted, and the resolution of the Authority authorizing the issuance of the bonds of the series of which this is one, being herein called the "Resolution"), reference to which is hereby made for the provisions, among others, with respect to the application of the proceeds of bonds issued under the Resolution, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the rights, duties and obligations of the Authority and of the Fiscal Agent under the Resolution and the rights of the holders of the bonds, and, by the acceptance of this bond, the Registered Holder hereof assents to all of the provisions of the Resolution. A certified copy of the Resolution is on file at the principal corporate trust office of JPMorgan Chase Bank, successor fiscal agent (said fiscal agent and any successor fiscal agent under the Resolution being herein called the "Fiscal Agent"), in the City and State of New York.

Prior to either (i) any Conversion Date on which this bond is to be converted to the Daily Rate Mode, Weekly Rate Mode, Commercial Paper Mode or Term Rate Mode where the Term Rate Period following such Conversion will be less than five years or (ii) with respect to this bond in the Term Rate Mode, the establishment on a Reset Date of a Term Rate Period of less than five years, the Authority shall obtain a Liquidity Facility for this bond.

Upon satisfaction of the requirements set forth in the Resolution and in the Liquidity Facility, the Authority may, and, if the long–term ratings of the Provider have been reduced to below the highest category, without regard to qualifications by symbols such as "+" or "–" or numerical notation, by either Moody's Investors Service, Inc. or Standard & Poor's Rating Services, must, replace a Liquidity Facility with a substitute Liquidity Facility.

### Conversions of Rate Modes

The Authority, subject to the limitations and conditions set forth in the Resolution, may, after the Initial Term Rate Period, convert all or a portion of the Variable Rate Bonds from one Rate Mode to a different Rate Mode. The Conversion Date must be a Reset Date or an Interest Payment Date which is at least (i) 15 days after receipt by the Fiscal Agent and the Tender Agent of the Conversion Notice and (ii) at least 3 days after the Fiscal Agent has mailed the notice of Rate Mode change to the registered owner hereof. If this bond immediately before such conversion is in the Auction Rate Mode, no Conversion Date may be on an Interest Payment Date that occurs during a Special Auction Period of 92 days or more, but must be on the Interest Payment Date next succeeding the last day of such Special Auction Period.

If all conditions to a Conversion are met, the Rate Period(s) or the Auction Period for the new Rate Mode shall commence on the Conversion Date and the interest rate(s) (together, in the case of a change to the Commercial Paper Mode, with the Rate Period(s)) shall be determined by the Remarketing Agent in the manner provided in the Resolution.

With respect to a change in the Rate Mode from an Auction Rate Mode to any other Rate Mode, in the event (i) the conditions to the Conversion have not been satisfied by the Conversion Date, (ii) on the Business Day preceding a scheduled Conversion Date, any Variable Rate Bonds

NY1 5344087v9

CONFIDENTIAL

to be converted cannot be remarketed or (iii) on or prior to the Business Day preceding a scheduled Conversion Date, the Authority determines it does not want the Conversion to occur, the Variable Rate Bonds that are subject to the Conversion Notice will continue to bear interest in the Auction Rate Mode and the Auction Rate for the next succeeding Auction Period shall be determined pursuant to the Auction Procedures; **provided, however,** that the Auction Rate for the Auction Period commencing on the failed Conversion Date shall be the Maximum Auction Rate and the Auction Period shall be a seven-day Auction Period.

### Daily Rate

Each Variable Rate Bond in a Daily Rate Mode (other than a Purchased Bond) will bear interest at the Daily Rate. The Remarketing Agent for each Variable Rate Bond in a Daily Rate Mode shall determine a Daily Rate for each Daily Rate Period by 10:00 A.M., New York City time, on each Business Day.  The Daily Rate for any day during the Daily Rate Period which is not a Business Day shall be the Daily Rate established on the immediately preceding Business Day.  The Daily Rate shall be determined by the Remarketing Agent to be the rate of interest that, if borne by Variable Rate Bonds for such Daily Rate Period, in the judgment of the Remarketing Agent, having due regard for the prevailing financial market conditions for bonds or other similar U.S. tax-exempt securities would be the lowest interest rate that would enable such Bonds to be sold on the day of the applicable Daily Rate Period at a price of par, plus accrued interest, if any.

The Remarketing Agent shall make the Daily Rate available to any Holder, the Fiscal Agent, the Tender Agent, the Authority and each applicable Provider requesting such rate, and on the last Business Day of each calendar month, shall give notice to the Fiscal Agent, the Tender Agent and the Authority of the Daily Rates that were in effect for each day of such calendar month via facsimile, telephonic or electronic means or other similar means of communication, acceptable to the Authority.

If for any reason (i) the Daily Rate is not established as aforesaid, (ii) no Remarketing Agent shall then be serving, (iii) the Rate so established is held to be invalid or unenforceable with respect to a Daily Rate Period or (iv) pursuant to the Remarketing Agreement the Remarketing Agent is not then required to establish a Daily Rate, then such Daily Rate shall be the BMA Municipal Index on the date such Rate was to have been determined by the Remarketing Agent.

### Commercial Paper Rate

The Commercial Paper Rate Period for and Commercial Paper Rate on each Variable Rate Bond in a Commercial Paper Mode (other than a Purchased Bond) shall be determined by the Remarketing Agent for such Bond on or before 12:30 P.M., New York City time, on the first day of each Commercial Paper Rate Period, but if the Remarketing Agent fails to specify the next succeeding Commercial Paper Rate Period for such Bond, such Commercial Paper Rate Period shall be the shorter of (i) seven (7) days and (ii) the period remaining to and including the Bond's final maturity date.  The interest rate for each Variable Rate Bond in a Commercial Paper Mode to take effect on such day shall be determined by the Remarketing Agent to be the rate of interest that, if borne by such Bond for its Commercial Paper Rate Period, in the judgment of the Remarketing Agent, having due regard for the prevailing financial market conditions for bonds

17

NY1 5344087\v9

CONFIDENTIAL

or other similar U.S. tax-exempt securities, would be the lowest interest rate that would enable such Bond to be sold on the first day of the applicable Commercial Paper Rate Period at a price of par, plus accrued interest, if any.

Each Variable Rate Bond in a Commercial Paper Mode (other than Purchased Bonds) shall bear interest during a particular Commercial Paper Rate Period at a rate per annum equal to the interest rate determined above corresponding to such Commercial Paper Rate Period. A Variable Rate Bond can have a Commercial Paper Rate Period, and bear interest at a Commercial Paper Rate, different from other Variable Rate Bonds in the Commercial Paper Mode. The Remarketing Agent shall notify the Fiscal Agent, the Tender Agent, the Authority and the applicable Provider by electronic means (confirmed in writing) of the term or terms of and the interest rate or rates borne by the Variable Rate Bonds in the Commercial Paper Mode on the first day of each Commercial Paper Rate Period.

If for any reason (i) the Commercial Paper Rate is not established as aforesaid, (ii) no Remarketing Agent shall then be serving, (iii) the Rate so established is held to be invalid or unenforceable or (iv) pursuant to the Remarketing Agreement the Remarketing Agent is not then required to establish a Commercial Paper Rate, then such Commercial Paper Rate shall be the BMA Municipal Index on the date such was to have been determined by the Remarketing Agent.

### Weekly Rate

Each Variable Rate Bond in a Weekly Rate Mode (other than a Purchased Bond) will bear interest at the Weekly Rate. The Remarketing Agent for each Variable Rate Bond in a Weekly Rate Mode shall determine a Weekly Rate for each Weekly Rate Period by 4:00 p.m., New York City time, on the Business Day preceding the first day of such Weekly Rate Period. The Weekly Rate so determined shall be the rate of interest that, if borne by such Bond for such Weekly Rate Period, in the judgment of the Remarketing Agent, having due regard for the prevailing financial market conditions for bonds or other similar U.S. tax-exempt securities, would be the lowest interest rate that would enable such Bond to be sold on the first day of the applicable Weekly Rate Period at a price of par, plus accrued interest, if any.

On the last Business Day of each calendar month, the Remarketing Agent shall notify the Fiscal Agent, the Tender Agent, the Authority and the applicable Provider, by electronic means (confirmed in writing) of the Weekly Rates borne by the Variable Rate Bonds on each day of that calendar month.

If for any reason (i) such Weekly Rate is not established as aforesaid, (ii) no Remarketing Agent shall then be serving, (iii) the Rate so established is held to be invalid or unenforceable or (iv) pursuant to the Remarketing Agreement the Remarketing Agent is not then required to establish a Weekly Rate, then such Weekly Rate shall be the BMA Municipal Index on the date such Rate was to have been determined by the Remarketing Agent.

### Term Rate

Each Variable Rate Bond in a Term Rate Mode (other than a Purchased Bond) will bear interest at the Term Rate. No less than twenty (20) Business Days prior to the end of each Term Rate Period, the Authority shall deliver to the Fiscal Agent and the Remarketing Agent for such

CONFIDENTIAL

Variable Rate Bond written notice of the Authority's determination of the next succeeding Term Rate Period, which Term Rate Period shall end on a Business Day and shall not be the maturity date of such Bond. If the Authority fails, however, to specify the next succeeding Term Rate Period, such Term Rate Period shall be the shorter of (i) the same period as the immediately preceding Term Rate Period, and (ii) the period remaining to and including the final maturity date of such Bond.

The Term Rate shall be the interest rate determined by the Remarketing Agent not later than two (2) Business Days prior to the Conversion Date or the next Reset Date. The interest rate applicable to a Variable Rate Bond in the Term Rate Mode shall be the lowest rate which, in the judgment of the Remarketing Agent for such Bond, having due regard for the prevailing financial market conditions for bonds or other similar U.S. tax-exempt securities, would be the lowest interest rate that would enable such Bond to be sold on the Conversion Date or the Reset Date at a price of par, plus accrued interest, if any.

The interest rate on the Variable Rate Bonds in the Term Rate Mode will not be reset on any Reset Date unless at least five (5) Business Days prior to such Reset Date and again on such Reset Date, the Fiscal Agent, the Authority and the applicable Provider and Remarketing Agent, receive an Opinion of Bond Counsel, but such Opinion of Bond Counsel shall not be required if the duration of the new Term Rate Period is the same as that of the immediately preceding Term Rate Period.

If for any reason, the interest rate for a Variable Rate Bond in the Term Rate Mode is not or cannot be determined by the Remarketing Agent in the manner specified above, the interest rate will instead be equal to the Municipal Market Data General Obligation Yield for the most recent period for which such information is available on the date the interest rate is to be determined on similar bonds. If such index or its equivalent is no longer published, the interest rate on such Bond shall be the interest rate then in effect on such Bond.

### Fixed Rate

Each Variable Rate Bond in the Fixed Rate Mode (other than Purchased Bonds) will bear interest at a Fixed Rate. The Fixed Rate for each such Bond shall be determined by the applicable Remarketing Agent or other investment banking firm or firms with which the Authority has entered into an agreement for the purchase, as underwriters (collectively, the "rate setter"), of such Bond to be so converted on the Conversion Date as agreed to by the Authority. The Fixed Rate shall be either (i) the lowest rate which, in the judgment of the rate setter, having due regard for prevailing financial market conditions for bonds or other similar U.S. tax-exempt securities, would be the lowest interest rate that would enable such Variable Rate Bond to be sold on the Conversion Date at a price of par, plus accrued interest, if any, or (ii) if the Authority and the Remarketing Agent shall have received an Opinion of Bond Counsel, such other rate of interest as the Authority shall determine. If for any reason the Fixed Rate is not determined as aforesaid, then the Rate Mode shall on the Conversion Date convert to a Weekly Rate Mode.

NY1 5344087v9

CONFIDENTIAL

HTA_STAY0002760

### Auction Rate

During the Auction Rate Mode, a Variable Rate Bond shall bear interest at the Auction Rate for each Auction Period determined as set forth in the Resolution. The initial Auction Period immediately after any change in the Rate Mode to an Auction Rate Mode, shall commence from and include the Conversion Date and shall expire on the date determined and certified to the Fiscal Agent (with a copy to the Broker–Dealer and each affected Insurer) by the Authority on or before the Conversion Date. The initial Auction Date immediately after any change in the Mode to an Auction Rate Mode, shall be the date determined and certified to the Fiscal Agent (with a copy to the Broker–Dealer, the Auction Agent and each affected Insurer and Provider) by the Authority on or before the Conversion Date. The Auction Rate for any initial Auction Period immediately after any change in the Rate Mode to an Auction Rate Mode, shall be the rate of interest per annum determined and certified to the Fiscal Agent (with a copy to the Authority and each affected Insurer) by the Remarketing Agent on a date not later than the Conversion Date as the minimum rate of interest which, in the opinion of the Remarketing Agent, would be necessary as of such date to market such Variable Rate Bond in a secondary market transaction at a price equal to the principal amount thereof. The length of first Auction Period following the initial Auction Period shall be determined and certified by the Authority to the Fiscal Agent, the Broker–Dealer, the Auction Agent and each affected Insurer. Each Auction Period thereafter shall be of the same duration, unless such Auction Period is changed to another Auction Period in accordance with the provisions of the Resolution. For any other Auction Period that is not an initial Auction Period, the Auction Rate shall be the rate of interest determined in accordance with provisions of the Resolution.

### Purchased Bond Rate

Purchased Bonds will bear interest at the Purchased Bond Rate payable at the time and in the manner provided in the Liquidity Facility for such Purchased Bonds or the related Reimbursement Agreement.

### Optional Tender

For so long as a Variable Rate Bond bears interest in a Daily Rate Mode or a Weekly Rate Mode during which such Bond is a Book Entry Bond and DTC is the Depository therefor, a DTC Participant, acting on behalf of a Beneficial Owner, shall have the right to tender all or any portion, in Authorized Denominations, of the principal amount of such Beneficial Owner's interest in such Variable Rate Bond for purchase on any Optional Tender Date, by giving or delivering to the Remarketing Agent and the Tender Agent at their respective principal offices a Tender Notice which states (i) the aggregate principal amount in Authorized Denominations of each Variable Rate Bond or portion thereof to be purchased and (ii) that such principal amount shall be purchased on such Optional Tender Date pursuant to the Resolution.

Any Tender Notice given or delivered in accordance with the preceding paragraph shall be irrevocable and shall be binding on the DTC Participant, the Beneficial Owner on whose behalf such notice was given and any transferee of such Beneficial Owner and the principal amount of the Variable Rate Bonds for which a Tender Notice has been given or delivered shall be deemed tendered on the Optional Tender Date without presentation or surrender thereof to the Tender

NY1 5344087v9

CONFIDENTIAL

HTA_STAY0002761

Agent. If there shall be on deposit with the Tender Agent on the Optional Tender Date an amount sufficient to pay the Purchase Price of the aggregate principal amount of Variable Rate Bonds to be tendered on such Optional Tender Date pursuant to a Tender Notice given pursuant to the preceding paragraph, the Fiscal Agent shall request that ownership of such aggregate principal amount of Variable Rate Bonds be recorded in the records of DTC as transferred to the Remarketing Agent.

For so long as a Variable Rate Bond bears interest in a Daily Rate Mode or a Weekly Rate Mode during which such Bond is not a Book Entry Bond or DTC is not the Depository therefor, the Holders thereof shall have the right to tender their Variable Rate Bond (or portion thereof in Authorized Denominations) to the Tender Agent for purchase on any Optional Tender Date pursuant to the Resolution.

### Mandatory Tender

The Variable Rate Bonds are subject to mandatory tender and purchase at the Purchase Price on the following dates: (i) on July 1, 2010, (ii) on each Conversion Date for Variable Rate Bonds being converted to a different Rate Mode, other than a Conversion from the Daily Rate Mode to the Weekly Rate Mode or from the Weekly Rate Mode to the Daily Rate Mode; (iii) on each Reset Date for the Variable Rate Bonds in the Commercial Paper Mode or the Term Rate Mode; (iv) on a date that is not less than three (3) Business Days prior to the Expiration Date of any Liquidity Facility then in effect with respect to a Variable Rate Bond, which will be drawn upon to pay the Purchase Price of tendered Variable Rate Bonds (or if such day is not a Business Day, on the immediately preceding Business Day), unless such Liquidity Facility has been extended at least 90 days prior to such expiration date; (v) on the effective date of either (A) a Liquidity Facility if immediately prior thereto no Liquidity Facility was then in effect or (B) a substitute Liquidity Facility delivered pursuant to the Resolution with respect to a Variable Rate Bond (or if such day is not a Business Day, on the immediately preceding Business Day); **provided, however,** the Purchase Price of such tendered Bonds in connection with which a substitute Liquidity Facility is being delivered shall be paid with money drawn under the then existing Liquidity Facility; (vi) on a date that is not less than one Business Day prior to the Termination Date of a Liquidity Facility relating to a Variable Rate Bond specified in the Default Notice delivered by the Provider or its agent in accordance with the provisions of the Liquidity Facility (or if such date is not a Business Day, the immediately preceding Business Day) and (vii) on a Business Day that is not less than 3 Business Days prior to the expiration of a Credit Facility in a form other than a Financial Guaranty Insurance Policy unless such Credit Facility has been extended at least 90 days prior to the stated Expiration Date; **provided, however,** that the Purchase Price of such tendered Variable Rate Bonds shall be paid with money drawn under such Credit Facility prior to its stated Expiration Date.

Whenever Variable Rate Bonds are to be tendered for purchase or upon Conversion to a new Rate Mode, the Tender Agent shall give the notices required by the Resolution. Whenever Variable Rate Bonds are to be tendered for purchase upon expiration of a Liquidity Facility, the Tender Agent shall, not less than 30 days prior to the Expiration Date of the Liquidity Facility, give notice by first-class mail to the Holders of the Variable Rate Bonds to be tendered that they are subject to mandatory tender for purchase on the date specified in such notice. Whenever Variable Rate Bonds are to be tendered for purchase upon the initial delivery of a Liquidity

NY1 5344087v9

CONFIDENTIAL

HTA_STAY0002762

Facility, the delivery of a substitute Liquidity Facility or the termination of a Liquidity Facility, the Tender Agent shall, not less than 5 days prior to the Termination Date of the Liquidity Facility then in effect or prior to the delivery date of the initial Liquidity Facility or a substitute Liquidity Facility to be delivered on or prior to the date specified in the No Remarketing Notice or the Default Notice, give notice by first-class mail to the Holders of the Variable Rate Bonds to be tendered that such Bonds are subject to mandatory tender for purchase on the date specified in such notice.

If a Bondholder fails to deliver to the Tender Agent, on or before the applicable Tender Date, all or any portion of a Variable Rate Bond subject to mandatory tender for purchase or any Variable Rate Bond, other than a Book Entry Bond, for which an election to tender has been duly made, such Bond (or portion thereof in an Authorized Denomination) shall be deemed to have been properly tendered to the Tender Agent. To the extent that there shall be on deposit with the Tender Agent on the purchase date thereof an amount sufficient to pay the Purchase Price of the Tendered Bonds, such Tendered Bonds shall cease to constitute or represent a right to payment of principal or interest thereon and shall constitute and represent only the right to the payment of the Purchase Price payable on such date. The foregoing shall not limit the right of any person who on a Record Date is the Holder of a Variable Rate Bond to receipt of interest, if any, due thereon on the date such Bond is required to be purchased.

If the conversion of the Variable Rate Bonds from the Initial Term Rate Mode does not occur on July 1, 2010 for the reasons set forth in the Resolution, the Authority has covenanted to cause such Bonds to be converted to another Rate Mode or Modes on the earliest Business Day after July 1, 2010 at which time all of such Bonds may be remarketed in accordance with the provisions of the Resolution, and pending such remarketing, the Variable Rate Bonds will bear interest from July 1, 2010 to but excluding the date said Bonds are so remarketed at the rate of 8% per annum.

### Optional Redemption

The Variable Rate Bonds are subject to redemption prior to maturity at the option of the Authority, in whole or in part (and if in part, in such order of maturities as the Authority shall direct), from any available moneys (other than moneys deposited in the Puerto Rico Highways and Transportation Authority Highway Revenue Bonds Interest and Sinking Fund (the "Sinking Fund") in respect of an Amortization Requirement) on the last day of the Initial Term Rate Period at the principal amount of the Variable Rate Bonds to be redeemed, together with the interest accrued thereon to the date fixed for redemption, without premium.

The Variable Rate Bonds in the Daily Rate Mode, Commercial Paper Rate Mode or Weekly Rate Mode are subject to redemption prior to maturity at the option of the Authority, in whole or in part (and if in part, in such order of maturities as the Authority shall direct), on any Business Day in the case of Variable Rate Bonds in the Daily Rate Mode or the Weekly Rate Mode or on any Interest Payment Date that is a Reset Date in the case of Variable Rate Bonds in the Commercial Paper Mode, from any available moneys (other than moneys deposited in the Sinking Fund in respect of an Amortization Requirement) at a redemption price equal to the principal amount of the Variable Rate Bonds to be redeemed, together with the interest accrued thereon to the date fixed for redemption, without premium.

NYI 5344087v9

CONFIDENTIAL

HTA_STAY0002763

Unless, at the time Variable Rate Bonds are converted to the Term Rate Mode or the Fixed Rate Mode, the Authority establishes other dates and Redemption Prices at which such Bonds may be redeemed at the option of the Authority, the Variable Rate Bonds in the Term Rate Mode or the Fixed Rate Mode shall be subject to redemption prior to maturity at the option of the Authority from any available moneys (other than moneys deposited in the Sinking Fund in respect of an Amortization Requirement): (A) in whole or in part (and if in part, in such order of maturities as the Authority shall direct), on any Reset Date in the case of Variable Rate Bonds in the Term Rate Mode, at a redemption price equal to the principal amount of the Variable Rate Bonds to be redeemed, together with the interest accrued thereon to the date fixed for redemption, without premium or (B) in whole or in part (and if in part, in such order of maturities as the Authority shall direct), at any time, at a redemption price equal to the percentages of the principal amount of each Variable Rate Bond or portion thereof to be redeemed set forth below plus accrued interest, if any, to the date fixed for redemption.

| Number of Years Remaining to Maturity at the Date of Conversion | Number of Years following the Conversion to the Term Rate Period or the Fixed Rate Period when Variable Rate Bonds may be Redeemed and Redemption Prices | |
| --- | --- | --- |
| | More than 10 But less than 11 years | More than 11 years |
| 11 years or more | 101% | 100% |
| 10 but less than 11 years | 100% | Not Applicable |
| Less than 10 years | Not Subject to Redemption | |

The Variable Rate Bonds in the Auction Rate Mode shall be subject to redemption prior to maturity at the option of the Authority, in whole or in part (and if in part, in such order of maturities as the Authority shall direct), on any Interest Payment Date immediately following an Auction Period, from any available moneys (other than moneys deposited in the Sinking Fund in respect of an Amortization Requirement) at a redemption price equal to the principal amount of the Variable Rate Bonds to be redeemed, together with the interest accrued thereon to the date fixed for redemption, without premium.

The Variable Rate Bonds are also subject to redemption in part, from moneys in the Sinking Fund, at par plus accrued interest, without premium, beginning July 1, 2014 and on each July 1 thereafter to the extent of the principal amount of the respective Amortization Requirements therefor set out in the Resolution as such amounts may be adjusted pursuant to the Resolution.

As nearly as practicable the Variable Rate Bonds of a maturity to be redeemed in accordance with the Amortization Requirements therefor as aforesaid shall, if prior thereto the Variable Rate Bonds have been grouped in to two or more Sub–Series, be allocated to each Sub–Series pro rata based upon the principal amount of Variable Rate Bonds of such Sub–Series and maturity

NY1 5344087v9

23

                                                                                                    HTA_STAY0002764

Outstanding on the date on which such Bonds shall be called for redemption in accordance with their Amortization Requirements after giving effect to any consolidation or separation of Variable Rate Bonds among Sub–Series.

Notwithstanding the foregoing, the date on which Variable Rate Bonds in the Daily Rate Mode, the Commercial Paper Mode, the Weekly Rate Mode or the Auction Rate Mode shall be called for redemption in accordance with their Amortization Requirements shall be either the date set forth above or, if any such date is not an Interest Payment Date, the first Interest Payment Date next succeeding such date.

At least thirty (30) days (at least 15 and not more than 30 days in the case of Variable Rate Bonds in the Commercial Paper, Daily, Weekly or Auction Rate Mode) before the redemption date of any Variable Rate Bonds to be redeemed, whether such redemption be in whole or in part, the Fiscal Agent shall cause a notice of such redemption to be mailed, by first class mail, postage prepaid, to all registered owners of such Variable Rate Bonds to be redeemed at their addresses appearing upon the bond registration books of the Authority.  The failure to mail such notice to any registered owner of bonds or any defect in any notice so mailed shall not affect the validity of the proceedings for the redemption of bonds of other registered owners.  On the date fixed for redemption, notice having been given as aforesaid, the bonds or portions thereof so called for redemption shall become and be due and payable at the redemption price provided for the redemption of such bonds or portions thereof on such date, and, if sufficient moneys, or certain securities or other arrangements permitted under the Resolution, the principal of and interest on which securities or other arrangements when due will provide sufficient moneys, for payment of such redemption price and the accrued interest are held by the Fiscal Agent, as provided in the Resolution, interest on the bonds or the portions thereof so called for redemption shall cease to accrue, such bonds shall cease to be entitled to any lien, benefit or security under the Resolution, and the registered owners thereof shall have no rights in respect of such bonds except to receive payment of the redemption price thereof and the accrued interest so held by the Fiscal Agent.  If a portion of this bond shall be called for redemption, a new bond or bonds in an aggregate principal amount equal to the unredeemed portion hereof will be issued to the Registered Holder hereof or his legal representative upon the surrender hereof; said new bond or bonds shall be of any authorized denomination or denominations and shall be of the same series and maturity and shall bear interest at the same rate as the bonds surrendered for partial redemption.

Each notice of redemption of Variable Rate Bonds in any Rate Mode to be redeemed at the option of the Authority shall state, in addition to any other condition, that the redemption is conditioned upon the availability on the redemption date of moneys sufficient to pay the Redemption Price of the Variable Rate Bonds to be redeemed.

If less than all of the Outstanding Variable Rate Bonds of like Sub-Series and maturity and bearing interest in the same Rate Mode and for the same Rate Period are to be redeemed, the Fiscal Agent shall select for redemption, using such method of selection as it deems proper in its discretion, the Purchased Bonds of such Sub-Series, maturity, Rate Mode and Rate Period before selecting any other Variable Rate Bonds of such Sub-Series, maturity, Rate Mode and Rate Period for redemption.  Variable Rate Bonds of such Sub-Series, maturity, Rate Mode and Rate

24

CONFIDENTIAL

Period which are not Purchased Bonds shall be selected by the Fiscal Agent in accordance with the Resolution.

The moneys in the Redemption Account (referred to in the Resolution) available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Resolution in the manner provided in the Resolution.

Modifications or alterations of the Resolution or of any resolution supplemental thereto may be made only to the extent and in the circumstances permitted by the Resolution.

The Variable Rate Bonds are issuable only as fully registered bonds in the determinations set forth in the Resolution. At the principal corporate trust office of the Fiscal Agent, in the manner and subject to the conditions provided in the Resolution and without cost to the registered owners thereof except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The Fiscal Agent is required to keep at its principal corporate trust office the books of the Authority for the registration of transfers of bonds. The transfer of this bond may be registered only upon such books and as otherwise provided in the Resolution upon the surrender hereof to the Fiscal Agent together with an assignment duly executed by the Registered Holder hereof or his attorney or legal representative in such form as shall be satisfactory to the Fiscal Agent. Upon any registration of transfer, the Authority shall execute and the Fiscal Agent shall authenticate and deliver in exchange for this bond, a new bond or bonds registered in the name of the transferee, of authorized denominations, in an aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

Except as otherwise may be provided in the Resolution, the Fiscal Agent shall not be required to exchange or register any transfer of this bond during the fifteen (15) days immediately preceding the date of mailing of notice of any redemption of bonds, or after this bond has been selected for redemption.

This bond is issued and the Resolution was adopted under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly Act No. 74, approved June 23, 1965, as amended (said Act as amended being herein called the "Enabling Act"). The Resolution provides for the issuance, from time to time, of additional series of bonds under the conditions, limitations and restrictions therein set forth. The Resolution provides for the creation of a special fund designated "Puerto Rico Highways Authority Highway Revenue Bonds Interest and Sinking Fund", which special fund is pledged to and charged with the payment of the principal of and the interest on all bonds issued under the provisions of the Resolution, and also provides for the deposit to the credit of said special fund of a sufficient amount of the moneys received by the Authority (a) from the taxes on gasoline and gas oil and diesel oil heretofore allocated to the Authority by the Excise Act of Puerto Rico (Act No. 5, approved October 8, 1987, as amended), (b) from certain receipts of annual motor vehicle license fees imposed by the Commonwealth and allocated to the Authority by the Vehicle and Traffic Law of Puerto Rico (Act No. 141, approved July 20, 1960, as amended), (c) from any

25

NY1 5344087v9

tolls or other charges imposed by the Authority for the use of any traffic facilities to the extent provided in the Resolution and (d) from the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico has allocated or may allocate to the Authority and expressly authorizes the Authority to pledge to the payment of the principal of and interest on bonds or other obligations issued by the Authority and which are pledged by the Authority to the payment of the principal of and interest on bonds or other obligations issued under the provisions of the Resolution to pay such principal and interest as the same shall become due and to create and maintain a reserve therefor.  The proceeds of the taxes on gasoline and gas oil and diesel oil so allocated to the Authority by said Excise Act of Puerto Rico, the proceeds of the license fees so allocated to the Authority by said Vehicle and Traffic Law of Puerto Rico and any other taxes, fees or charges which the Legislature of Puerto Rico has allocated or may allocate to the Authority are subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed for such purpose, but only to the extent that other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose.

As declared in the Enabling Act, this bond, notwithstanding the provisions for transfer contained in the Resolution, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including the Enabling Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the adoption of the Resolution have happened, exist and have been performed as so required.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.  This bond shall not be valid or become obligatory for any purpose or be entitled to any lien, benefit or security under the Resolution herein described until the certificate of authentication endorsed hereon shall have been duly executed by the Fiscal Agent.

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority has caused this bond to bear the facsimile signatures of the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico and of the Executive Director and the Secretary of Puerto Rico Highways and Transportation Authority and a facsimile of its corporate to be imprinted hereon, all as of the 29th day of April, 2003.

<div style="margin-left:40%">

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY


By:_____
    Secretary of Transportation
    and Public Works

</div>

(SEAL)

26

NY1 5344087v9

CONFIDENTIAL

By:_____
    Executive Director

By:_____
    Secretary

27

NY1 5344087v9

CONFIDENTIAL

HTA STAY0002768

[Form of Certificate of Authentication
To be endorsed on all bonds]

    This is one of the bonds of the series designated therein and issued under and secured by the provisions of the within mentioned Resolution.

JPMorgan Chase Bank, as Fiscal Agent

By:_____
          Authorized Officer

Date of authentication: _____

28

CONFIDENTIAL

[Form of Assignment]

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto _____

_____

the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints _____ his attorney to register the transfer of the within bond on the books kept for registration thereof with full power of substitution in the premises.

Dated:_____            Signature:_____

                                   _____

                                   NOTICE:  The signature on this assignment must correspond with the name as it appears on the face of the within bond in every particular, without alteration or enlargement or any change whatever.

Social Security Number or
Employer Identification Number
of Transferee:

Signature Guaranteed:

                                   _____

                                   NOTICE:  Signatures must be guaranteed by a member firm of the New York Stock Exchange or a commercial bank or a trust company.

29

NYI 5344087v9

CONFIDENTIAL

Section 4.  The Preliminary Official Statement of the Authority, dated April 1, 2003, relating to the Series AA Bonds is hereby approved in the form presented to me this day and filed in the records of the Authority, and the distribution of said Preliminary Official Statement to the prospective purchasers and other investors in connection with the offering of the Series AA Bonds is hereby in all respects ratified, confirmed and approved.

Section 5.  The Official Statement of the Authority, dated April 10, 2003, relating to the Series AA Bonds is hereby approved in the form presented to me this day and filed in the records of the Authority, with such appropriate changes, insertions, and omissions as may be approved by the Executive Director of the Authority, his signing of said Official Statement to be conclusive evidence of his approval of any such changes, and the purchasers to which the Series AA Bonds are awarded are hereby authorized to use said Official Statement in connection with the offering and sale of the Series AA Bonds.

Section 6.  The offer to purchase the Series AA Bonds at the aggregate purchase price of $777,558,285.70, representing, as to each maturity, a purchase price equal to the public offering price set forth or derived from the information set forth on the inside cover of the Official Statement (hereinafter mentioned) less an underwriters' discount (expressed as a percentage of the principal amount of such Bonds) of .56395% for the Series AA Bonds maturing before July 1, 2035 and .68295% for the remainder of such Bonds, without accrued interest, submitted by Citigroup Global Markets Inc. and the other underwriters (collectively, the "Underwriters") mentioned in the Contract of Purchase, dated April 10, 2003 (the "Contract of Purchase"), by and between the Authority and the Underwriters, is hereby accepted, and the Series AA Bonds are hereby awarded to the Underwriters at said price upon the terms and conditions set forth in the Contract of Purchase.

30

NY1 5344087v10

CONFIDENTIAL

HTA_STAY0002771

The Secretary of Transportation and Public Works or any Vice President of the Government Development Bank for Puerto Rico (the "Bank"), as agent for the Authority, is hereby authorized and directed, in the name of and on behalf of the Authority, to execute and deliver the Contract of Purchase in the form presented to me this day with such minor changes, insertions and omissions as may be approved by me or such Vice President of the Bank, such signing of the Contract of Purchase to be conclusive evidence of the approval of such changes, insertions or omissions.

Section 7.  Citigroup Global Markets Inc., is hereby named as the principal underwriters under the provisions of the 1968 Bond Resolution.

Section 8.  The Secretary of Transportation and Public Works, the Executive Director of the Authority and the Secretary of the Authority are hereby authorized and directed to cause the Series AA Bonds to bear their facsimile signatures.   A facsimile of the corporate seal of the Authority shall be imprinted on each of the Series AA Bonds.  The Executive Director of the Authority is hereby authorized and directed, upon the execution of the Series AA Bonds in the form and manner set forth in the 1968 Bond Resolution and in this resolution, to deposit the Series AA Bonds with the Fiscal Agent for authentication, and the Fiscal Agent is hereby authorized and directed to authenticate and deliver the Series AA Bonds to or upon the order of the principal underwriters named in Section 7 of this resolution upon payment of said purchase price.

Section 9.  The proceeds of the Series AA Bonds (including any premium) shall be applied by the Fiscal Agent as follows:

(1)    The amount specified in the Escrow Deposit Letter (hereinafter mentioned) shall be delivered to the Fiscal Agent for deposit to the credit of a special redemption

31

CONFIDENTIAL

fund hereby established and designated "Escrow Deposit Trust Fund" for the sole and exclusive purpose of paying the principal of and redemption premium and interest on the Refunded Bonds.

(2)      Such sum as is specified in a certificate signed by the Executive Director of the Authority and filed with the Fiscal Agent shall be paid to the Bank to be used for the payment of expenses incident to the financing as shall be approved by said Executive Director.

(3)      The balance, if any, of said proceeds shall be deposited to the credit of the Reserve Account in the Sinking Fund.

Section 10.  The Fiscal Agent is hereby authorized and directed to withdraw from (a) the Bond Service Account and the Redemption Account in the Sinking Fund and transfer to the Escrow Deposit Trust Fund the amounts specified in the first paragraph of the Escrow Deposit Letter and (b) the Reserve Account in the Sinking Fund and transfer to the Construction Fund established under the Resolution No. 98-06, adopted by the Authority in February 26, 1998, as amended, the amount specified in a certificate signed by the Executive Director of the Authority and filed with the Fiscal Agent.

Section 11.  The letter, to be dated the date of delivery of and payment for the Series AA Bonds, from the Authority to the Fiscal Agent under the 1968 Bond Resolution relating to the escrow deposit for the Refunded Bonds (the "Escrow Deposit Letter") is hereby approved in the form presented to me this day and filed in the records of the Authority, with such appropriate changes, insertion and omissions as may be approved by the Executive Director of the Authority, and said Executive Director is hereby authorized and directed to execute and deliver the Escrow Deposit Letter, his execution to be conclusive evidence of his approval of any such changes, insertions and omissions.

NY1 5344087v9

CONFIDENTIAL

HTA_STAY0002773

Section 12. The municipal bond insurance commitments, dated April 7, 2003, April 10, 2003, April 8, 2003 and April 7, 2003, from, respectively, FGIC, MBIA, FSA and Ambac to the Authority, relating to, respectively, the FGIC Insured Bonds, the MBIA Insured Bonds, the FSA Insured Bonds and the Ambac Insured Bonds (collectively, the Insurance Commitments"), the continuing disclosure agreement, dated the date of delivery of and payment for the Series AA Bonds (the "CD Agreement"), between the Authority and the Commonwealth of Puerto Rico acting through the Secretary of the Treasury, and the request for bids (the "Investments RFP") for the investment of a portion of the proceeds of the Series AA Bonds, are hereby approved in the respective forms presented to me this day and filed in the records of the Authority, and the Executive Director of the Authority is hereby authorized and directed, in the name and on behalf of the Authority, to negotiate the terms of any agreements regarding the investment of such proceeds with the winning providers under the Investments RFP (the "Investment Agreements"), with in all cases such appropriate changes, insertions and omissions as may be approved by the Executive Director of the Authority, and said Executive Director is hereby authorized and directed to execute and deliver the Insurance Commitments, the CD Agreement, and, if the Authority is a party thereto, the Investment Agreements, his execution to be conclusive evidence of his approval of any such changes, insertions and omissions.  The Fiscal Agent is hereby authorized and directed to execute and deliver any Investment Agreements as negotiated.

Section 13. If the Series AA Bonds are issued as other than book-entry only bonds through DTC or the book-entry-only system is terminated as to the Series AA Bonds and definitive bonds are issued, there may be included on each of said definitive bonds the legal opinion of Sidley Austin Brown & Wood LLP respecting the validity of said bonds and,

33

NYI 5344087v9

CONFIDENTIAL                                                                                          HTA_STAY0002774

immediately following such legal opinion, a certificate executed with the facsimile signature of

the Executive Director of the Authority, said certificate to be in substantially the following form:

> "I HEREBY CERTIFY that the foregoing is true and correct copy of the legal opinion upon the bonds therein described which was manually signed by Sidley Austin Brown & Wood LLP, New York, New York, and was dated the date of delivery of and payment of the bonds therein described.

>             [Facsimile Signature]
>             Executive Director, Puerto Rico
>             Highway and Transportation Authority".

Section 14. (a) In accordance with the requirements of Rule 15c2-12, as amended (the

"Rule"), promulgated by the United States Securities and Exchange Commission (the

"Commission"), the Authority hereby covenants for the benefit of the persons who from time to

time are the owners of the Bonds for federal income tax purposes (the "beneficial owners"):

(A) to file, within 305 days after the end of each fiscal year, commencing the

fiscal year ending June 30, 2003, with each nationally recognized municipal securities

information repository ("NRMSIR") and with any Commonwealth information depository

("SID") core financial information and operating data for the prior fiscal year, including (i) the

Authority's audited financial statements, prepared in accordance with generally accepted

accounting principles in effect from time to time, and (ii) material historic quantitative data

(including financial information and operating data) on the Authority and its revenues,

expenditures, financial operations and indebtedness generally found in the Official Statement;

and

(B) to file, in a timely manner, with each NRMSIR or with the Municipal

Securities Rulemaking Board (the "MSRB") and with any Commonwealth SID, notice of any

34

CONFIDENTIAL

failure by the Authority to comply with paragraph (A) above and notice of the occurrence of any of the following events with respect to the Bonds, if material:

    (1)    principal and interest payment delinquencies;

    (2)    non-payment related defaults;

    (3)    unscheduled draws on debt service reserves reflecting financial difficulties;

    (4)    unscheduled draws on credit enhancements reflecting financial difficulties;

    (5)    substitution of credit or liquidity providers, or their failure to perform;

    (6)    adverse opinions or events affecting the tax-exempt status of the Bonds;

    (7)    modifications to rights of the holders (including beneficial owners) of the Bonds;

    (8)    Bond calls;

    (9)    defeasances;

    (10)    release, substitution, or sale of property securing repayment of the Bonds; and

    (11)    rating changes.

The Authority does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Bonds, unless the Authority applies for or participates in obtaining the enhancement.

The Authority does not undertake to provide the above-described event notice of a mandatory scheduled redemption, not otherwise contingent upon the occurrence of an event, if the terms, dates and amounts of redemption are set forth in detail in the Official Statement, the only open issue is which Bonds will be redeemed in the case of a redemption of less than all of the Bonds and notice of redemption is given in accordance with the terms of the 1968 Bond Resolution and the Bonds being redeemed.

NY1 5344087v9

CONFIDENTIAL

The Authority may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the Authority, such other events are material with respect to the Bonds, but the Authority does not undertake to provide any such notice of the occurrence of any material event except those events listed above.

(b) No beneficial owner may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of the foregoing covenants (the "Covenants") or for any remedy for breach thereof, unless such beneficial owner shall have filed with the Authority written notice of any request to cure such breach, and the Authority shall have refused to comply within a reasonable time. All Proceedings shall be instituted only in a Commonwealth court located in the Municipality of San Juan for the equal benefit of all beneficial owners of the outstanding Bonds, and no remedy shall be sought or granted other than specific performance of any of the Covenants at issue.

(c) The Covenants may only be amended if:

(A) the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the Authority, or type of business conducted; the Covenants, as amended, would have complied with the requirements of the Rule at the time of award of the Bonds, after taking into account any amendments or change in circumstances; and the amendment does not materially impair the interest of beneficial owners, as determined by parties unaffiliated with the Authority; or

(B) all or any part of the Rule, as interpreted by the staff of the Commission at the date of the authentication and delivery of the Bonds, ceases to be in effect for any reason, and the Authority elects that the Covenants shall be deemed amended accordingly.

36

NY1 5344087v9

CONFIDENTIAL

HTA_STAY0002777

The Authority further agrees in conjunction with any such amendment that the annual financial information containing the amended operating data or financial information will explain, in narrative form, the reasons for the amendment and the impact of the change in the type of operating data or financial information being provided.

(d) Any assertion of beneficial ownership must be filed, with full documentary support, as part of the written request described above.

Section 15.  The Authority hereby covenants and agrees that, to the extent permitted by the Constitution and laws of the Commonwealth, it shall comply with the requirements of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder so that the interest on the Series AA Bonds will remain exempt from existing federal income taxes to which it is not subject on the date of the issuance of the Series AA Bonds.

Section 16.  The Executive Director of the Authority is hereby authorized to negotiate and to execute and deliver one or more insurance agreements with the Fiscal Agent (collectively, the "Insurance Agreements"), each such agreement to be substantially consistent with the terms of the Insurance Commitment to which such Agreement relates, with such appropriate changes, insertions and omissions as may be approved by the Executive Director, his execution of the Insurance Agreements to be conclusive evidence of his approval of any such changes, insertions and omissions.

Section 17.  The Executive Director of the Authority is hereby authorized and directed to cause the Series AA Insured Bonds to include the appropriate Statement of Insurance substantially in the forms attached to the related Insurance Agreement.

Section 18.  The officers and agents of the Authority and the officers and agents of the Fiscal Agent are hereby authorized and directed to do all acts and things required of them by the

37

CONFIDENTIAL                                                    HTA_STAY0002778

provisions of the Series AA Bonds, the 1968 Bond Resolution, the Escrow Deposit Letter, the Insurance Commitments, the CD Agreement, the Investment Agreements, said Contract of Purchase and the Insurance Agreements and to do all acts and things, including the execution and delivery of such other documents which may be necessary or advisable, for the full, punctual and complete performance of all the terms, covenants, provisions and agreements under the Series AA Bonds, the 1968 Bond Resolution, the Escrow Deposit Letter, the Insurance Commitments, the CD Agreement, the Investment Agreements, said Contract of Purchase and the Insurance Agreements and also to do all acts and things required of them by the provisions of this resolution (including Appendix A).

NY1 5344087v9

CONFIDENTIAL

HTA_STAY0002779

Case:17-03283-LTS   Doc#:13314-7   Filed:06/01/20   Entered:06/01/20 22:56:50   Desc:
Exhibit 19   Page 41 of 106

Section 19.  The provisions of this resolution shall become effective immediately upon its adoption.

PASSED AND ADOPTED:  April 10, 2003

Secretary of
Transportation and Public Works

39

CONFIDENTIAL

HTA_STAY0002780

**Appendix A to Series AA Bond Resolution**
**(Series AA Variable Rate Bonds)**

Section 1.  Definitions.  Capitalized words and terms defined in this Section, unless a different meaning clearly appears from the context, for all purposes of this Appendix and any appendix supplemental hereto, shall have the respective meanings specified in this Section. Words and terms used in this Appendix and not otherwise defined in this Section shall have the meanings specified in the Purchase Contract or the Resolution, unless a different meaning clearly appears from the context.

"Auction Agent" has the meaning set forth in Exhibit A hereto.

"Auction Agreement" has the meaning set forth in Exhibit A hereto.

"Auction Date" has the meaning set forth in Exhibit A hereto.

"Auction Period" has the meaning set forth in Exhibit A hereto.

"Auction Procedures" has the meaning set forth in Exhibit A hereto.

"Auction Rate" has the meaning set forth in Exhibit A hereto.

"Auction Rate Mode" means the mode during which the duration of the Auction Period and the interest rate is determined in accordance with Section 3(f) hereof and Exhibit A hereto.

"Authorized Denominations" means (i) during any Daily Rate Period, Commercial Paper Rate Period, or Weekly Rate Period, $100,000 or any multiple thereof, (ii) during any Term Rate Period or the Fixed Rate Period, $5,000 or any multiple thereof and (iii) during the Auction Rate Mode, except as otherwise may be provided herein, $25,000 and any multiple thereof.

"Available Moneys" means, (a) whenever a Liquidity Facility is required by Section 28 hereof to be maintained for Series AA Variable Rate Bonds (i) moneys obtained by the Fiscal Agent or the Tender Agent from the Provider thereof pursuant to such Liquidity Facility and held by the Tender Agent for payment of the Purchase Price of such Series AA Variable Rate Bonds, (ii) moneys derived from the remarketing of Series AA Variable Rate Bonds which are directly paid to and held by the Tender Agent for the payment of the Purchase Price of such Series AA Variable Rate Bonds in accordance with Section 20 hereof, (iii) moneys which have been on deposit with the Fiscal Agent or the Tender Agent, as applicable, for at least one hundred twenty-four (124) days prior to and during which no petition by the Authority, under the United States Bankruptcy Code of 1978, as amended, 11 U.S.C. Sec. 101 et seq. (the "Bankruptcy Code"), shall have been filed or any bankruptcy or similar proceeding shall have been commenced by the Authority, unless such petition or proceeding shall have been dismissed and such dismissal shall be final and not subject to appeal, (iv) any other moneys the application of which to the payment of the Purchase Price of such Series AA Variable Rate Bonds would not, in the opinion of Bond

CONFIDENTIAL

Counsel, constitute a voidable preference in the case of a filing for protection of the Authority under the Bankruptcy Code and (v) the proceeds from the investment of moneys described in clauses (i) through (iv) above; and (b) at any other time, any moneys.

"BMA Municipal Index" means the BMA Municipal Swap Index disseminated by Municipal Market Data, a Thomson Financial Services Company or its successor; or, if at the time a Rate is to be determined Municipal Market Data has not provided the relevant information on the BMA Municipal Index for the most recent Wednesday, then the rate determined by Municipal Market Data on the Tuesday before the beginning of the Rate Period for which such Rate is to be determined.

"Bond Payment Date" means an Interest Payment Date and any date on which the principal of a Series AA Variable Rate Bond is due and payable upon its maturity or its redemption in satisfaction of an Amortization Requirement, but the principal does not include the Purchase Price of Tendered Bonds or the Redemption Price of a Series AA Variable Rate Bond called for redemption pursuant to Section 5 hereof.

"Bondholder", "Holder" or "Holder of Bonds" or any similar term, when used with reference to a Series AA Variable Rate Bond, means any person who shall be the registered owner thereof.

"Book Entry Bond" means any Series AA Variable Rate Bond issued to and registered in the name of, a Depository directly or indirectly for the beneficial owners thereof.

"Broker-Dealer" has the meaning set forth in Exhibit A hereto.

"Business Day" when used in connection with any particular Series AA Variable Rate Bond means a day other than (i) a Saturday and Sunday or a (ii) a day on which any of the following are authorized or required to remain closed: (A) banks or trust companies in New York, New York, (B) the Fiscal Agent, (C) the New York Stock Exchange, (D) if such Series AA Variable Rate Bond is in the Commercial Paper Mode, the Daily Rate Mode, the Weekly Rate Mode or the Term Rate Mode, the Tender Agent, the Remarketing Agent or the Provider of a Liquidity Facility for such Series AA Variable Rate Bond, or (E) if such Series AA Variable Rate Bond is in the Auction Rate Mode, the Auction Agent or a Broker-Dealer for such Series AA Variable Rate Bond.

"Certificate of Determination" means a certificate of the Authority executed by its Executive Director upon the Conversion of Series AA Variable Rate Bonds to a new Rate Mode (other than a Daily Rate Mode, a Weekly Rate Mode, a Commercial Paper Mode or an Auction Rate Mode) setting forth the Initial Rate, the Initial Rate Period, the first Interest Payment Date if other than a date on which interest would otherwise be payable hereunder, and the matters required by Section 28(a) hereof relating to a Liquidity Facility.

"Commercial Paper Mode" means a Rate Mode in which a Series AA Variable Rate Bond for its respective Commercial Paper Rate Period bears interest at a Commercial Paper Rate.

2

CONFIDENTIAL

"Commercial Paper Rate" means, with respect to any Series AA Variable Rate Bond in the Commercial Paper Mode, the rate at which each such Series AA Variable Rate Bond bears interest during the Commercial Paper Rate Period applicable thereto, as established in accordance with Section 3(b) hereof.

"Commercial Paper Rate Period" means, with respect to a particular Series AA Variable Rate Bond, a period commencing on a Conversion Date or a Reset Date and extending for a period of one to two hundred seventy days (1 to 270 days) during which such Series AA Variable Rate Bond bears interest at a Commercial Paper Rate. The first day immediately following the last day of each Commercial Paper Rate Period shall in all events be a Business Day.

"Conversion" means a change in the Rate Mode made in accordance with the provisions of this Appendix and, when a Series AA Variable Rate Bond is in the Auction Rate Mode, a change from one Auction Period to another Auction Period for such Bond.

"Conversion Date" means the day (including the earliest Business Day referred in Section 8(e)) on which a Series AA Variable Rate Bond is converted from one Rate Mode to a different Rate Mode or was proposed to be converted from one Rate Mode to another Rate Mode, which date must be a Reset Date or an Interest Payment Date for such Series AA Variable Rate Bond. If the Series AA Variable Rate Bonds to be converted are in the Auction Rate Mode, no Conversion Date may be on an Interest Payment Date that occurs during a Special Auction Period of ninety-two or more days, but must be on the Interest Payment Date next succeeding the last day of such Special Auction Period.

"Conversion Notice" means a notice given pursuant to Section 12(a) hereof.

"Credit Facility" means an irrevocable letter of credit, surety bond, loan agreement, financial guaranty insurance policy, or other agreement, facility or insurance or guaranty arrangement issued or extended by any of (i) a bank, (ii) a trust company, (iii) a national banking association, (iv) an organization subject to registration with the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956 or any successor provisions of law, (v) a federal branch pursuant to the International Banking Act of 1978 or any successor provisions of law, (vi) a savings bank, (vii) a savings and loan association, (viii) an insurance company or association chartered or organized under the laws of any state of the United States of America, (ix) the Government National Mortgage Association or any successor thereto, (x) the Federal National Mortgage Association or any successor thereto, or (xi) any other federal agency or instrumentality approved by the Authority, in each case pursuant to which the Authority is entitled to obtain moneys to pay the principal or Redemption Price of outstanding Series AA Variable Rate Bonds due either at maturity or upon redemption in satisfaction of the Amortization Requirements therefor, plus accrued interest thereon to the date of payment or redemption thereof in accordance herewith and with the Resolution..

"Daily Rate" means the rate at which a Series AA Variable Rate Bond in the Daily Rate Mode bears interest, as established in accordance with Section 3(a) hereof.

3

CONFIDENTIAL

"Daily Rate Mode" means a Rate Mode in which a Series AA Variable Rate Bond bears interest at a Daily Rate.

"Daily Rate Period" means a period commencing on a Conversion Date or on a Business Day and extending to, but not including, the next succeeding Business Day, during which Series AA Variable Rate Bonds in the Daily Rate Mode bear interest at the Daily Rate.

"Default Notice" means a notice given by a Provider pursuant to the Liquidity Facility provided by it or the applicable Reimbursement Agreement to the effect that an event described in Section 30(a)(v) has occurred and that such Liquidity Facility will terminate on the date specified in such notice.

"Depository" means DTC, or its nominee, or any other person, firm, association or corporation designated by the Authority to serve as securities depository for the Series AA Variable Rate Bonds.

"Direct Participant" means a participant in the book-entry system of recording ownership interests in the Series AA Variable Rate Bonds.

"DTC" means The Depository Trust Company, New York, New York, a limited purpose trust company organized under the laws of the State of New York, in its capacity as securities repository for the Series AA Variable Rate Bonds, or any successor repository for any Series AA Variable Rate Bonds.

"Expiration Date" when used in connection with a particular Liquidity Facility or Credit Facility (other than a Credit Facility in the form of a Financial Guaranty Insurance Policy) means the date other than a Termination Date on which such Facility will expire by its terms, as such date may be extended from time to time, or any earlier date on which such Facility shall terminate, expire or be canceled upon delivery of a substitute Liquidity Facility in accordance with Sections 29 and 30 hereof or a substitute Credit Facility therefor, as applicable.

"Financial Guaranty Insurance Policy" means the financial guaranty insurance or similar policy issued by an Insurer insuring the payment when due of the principal of and interest on Series AA Variable Rate Bonds as provided therein.

"Fiscal Agent" means JPMorgan Chase Bank or any successor fiscal agent serving as Fiscal Agent under the 1968 Bond Resolution.

"Fixed Rate" means the rate at which a Series AA Variable Rate Bond bears interest to its maturity during the Fixed Rate Period, as established in accordance with Section 3(e) hereof.

"Fixed Rate Mode" means a Rate Mode in which a Series AA Variable Rate Bond bears interest at a Fixed Rate.

"Fixed Rate Period" means the period from and including the Conversion Date and extending to and including the date of maturity of a Series AA Variable Rate Bonds in the Fixed Rate Mode.

4

CONFIDENTIAL

HTA_STAY0002784

"Initial Rate" means the rate per annum at which a Series AA Variable Rate Bond will bear interest during the Initial Rate Period, as set forth in Section 3 hereof or, when used in connection with a Conversion, as set forth in a Certificate of Determination.

"Initial Rate Period" means the period commencing on the Conversion Date and extending to and including the date set forth in a Certificate of Determination as the last day of such period.

"Initial Term Rate" means 5% per annum.

"Initial Term Rate Mode" means the Rate Mode applicable to the Series AA Variable Rate Bonds during the Initial Term Rate Period.

"Initial Term Rate Period" means the Term Rate Period beginning on the Issue Date and continuing to and including June 30, 2010 or such later date as set forth in Section 8(e) hereof.

"Insurer" means (i) Financial Security Assurance Inc., and/or (ii) Ambac Assurance Corporation, or their respective successors.

"Interest Payment Date" means (i) during any Initial Rate Period, Daily Rate Period, or Weekly Rate Period, the first Business Day of each month, (ii) during any Commercial Paper Rate Period, the next succeeding Reset Date or Conversion Date, (iii) during any Term Rate Period or the Fixed Rate Period, each January 1 and July 1 and (iv) with respect to the Auction Rate Mode, each date that is specified as an "Interest Payment Date" in Exhibit A hereto.  If so provided in a Certificate of Determination the first Interest Payment Date may be a date that is different from the date on which interest would otherwise be payable.  Interest on Purchased Bonds shall be payable at the times required by the Reimbursement Agreement.  If any such date is not a Business Day, the Interest Payment Date shall be the succeeding Business Day.

"Issue Date" means April 29, 2003.

"Liquidity Facility" means an irrevocable letter of credit, surety bond, loan agreement, Standby Purchase Agreement, line of credit or other agreement or arrangement issued or extended by any of (i) a bank, (ii) a trust company, (iii) a national banking association, (iv) an organization subject to registration with the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956 or any successor provisions of law, (v) a federal branch pursuant to the International Banking Act of 1978 or any successor provisions of law, (vi) a savings bank, (vii) a domestic branch or agency of a foreign bank, which branch or agency is duly licensed or authorized under the laws of any state of the United States of America, (viii) a savings and loan association, (ix) an insurance company or association chartered or organized under the laws of any state or territory of the United States of America, (x) the Government National Mortgage Association or any successor thereto, (xi) the Federal National Mortgage Association or any successor thereto, or (xii) any other federal agency or instrumentality approved by the Secretary, in each case pursuant to which the Fiscal Agent is entitled to obtain moneys upon the terms and conditions contained therein for the purchase or redemption of Series AA Variable Rate Bonds tendered for purchase in accordance with the terms hereof and that meets the requirements of Sections 28, 29 and 30 hereof, as applicable.

NY1 5344276v10

CONFIDENTIAL                                                                                            HTA_STAY0002785

"Mandatory Tender Date" means any date on which a Series AA Variable Rate Bond is required to be purchased in accordance with Section 14 hereof.

"Maximum Auction Rate" has the meaning set forth in Exhibit A hereto.

"Maximum Rate" has the meaning set forth in Section 3(h) hereof.

"No Remarketing Notice" means, as of any date of determination, a notice given by a Provider of a Liquidity Facility to the effect that an event of default under the Liquidity Facility or the related Reimbursement Agreement has occurred and that from and after the date specified therein no Tendered Bonds to which the Liquidity Facility relates are to be remarketed.

"Opinion of Bond Counsel" means an opinion of Sidley Austin Brown & Wood LLP to the effect that the action proposed to be taken will not cause interest on the Series AA Variable Rate Bonds to be includable in the gross income of the owners of such Series AA Variable Rate Bonds for purposes of federal income taxation and such action is authorized or permitted by this Appendix.

"Optional Tender Date" means any Business Day during a Daily Rate Period or a Weekly Rate Period.

"Other Available Moneys Account" means the account so designated and established within the Purchase and Remarketing Fund pursuant to Section 20 hereof.

"Provider" when used in connection with any particular Series AA Variable Rate Bond means any provider of a Liquidity Facility for such Series AA Variable Rate Bond delivered in accordance with Section 28 or 29 hereof.

"Provider Default" means, with respect to a Provider, any of the following:

(i) there shall occur a failure of the Provider to make payment under its Credit Facility or Liquidity Facility;

(ii) the applicable Credit Facility or Liquidity Facility shall have been declared null and void or unenforceable in a final determination by a court of law;

(iii) a proceeding shall have been instituted in a court having jurisdiction seeking a decree or order for relief in respect of an applicable Provider in an involuntary case under the applicable bankruptcy, insolvency or other similar law now or hereafter in effect or for the appointment of a receiver, liquidator, assignee, custodian, trustee or sequestrator (or other similar official) of an applicable Provider or for any substantial part of its property or for the windingup or liquidation of its affairs and such proceeding shall remain undismissed or unstayed and in effect for a period of thirty (30) consecutive days or such court shall enter a decree or order granting the relief sought in such proceeding; or

(iv) an applicable Provider shall consent to the entry of an order for relief in an involuntary case under any such law or shall consent to the appointment of

6

CONFIDENTIAL

or taking possession by a receiver, liquidator, assignee, trustee, custodian or sequestrator (or other similar official) of the applicable Provider or for any substantial part of its property, or shall make a general assignment for the benefit of creditors.

"Purchase Account" means the account so designated and established within the Purchase and Remarketing Fund pursuant to Section 20 hereof.

"Purchase and Remarketing Fund" means the fund established pursuant to Section 20 hereof.

"Purchased Bond" means any Series AA Variable Rate Bond during the period from and including the date it is purchased or paid for by a Provider pursuant to a Liquidity Facility to, but excluding, the earliest of (i) the date on which the principal, Redemption Price or Purchase Price of such Series AA Variable Rate Bond, together with all interest accrued thereon, is paid with amounts other than amounts drawn under the Liquidity Facility, (ii) the date on which the registered owner of a Series AA Variable Rate Bond has given written notice of its determination not to sell such Series AA Variable Rate Bond following receipt of a purchase notice from the Remarketing Agent with respect to such Series AA Variable Rate Bond, or, if notice of such determination is not given on or before the Business Day next succeeding the day such purchase notice is received, the second Business Day succeeding receipt of such purchase notice or (iii) the date on which such Series AA Variable Rate Bond is to be purchased pursuant to an agreement by the registered owner of such Series AA Variable Rate Bond to sell such Series AA Variable Rate Bond following receipt of a purchase notice from the Remarketing Agent with respect to such Series AA Variable Rate Bond, if the Fiscal Agent then holds, in trust for the benefit of such registered owner, sufficient moneys to pay the Purchase Price of such Series AA Variable Rate Bond, together with the interest accrued thereon to the date of purchase.

"Purchased Bond Rate" means the rate at which a Purchased Bond bears interest in accordance with a Liquidity Facility or its related Reimbursement Agreement.

"Purchase Price" means:

(i)  when used in relation to Tendered Bonds, other than Series AA Variable Rate Bonds tendered upon a Conversion from the Fixed Rate Mode or Term Rate Mode, an amount equal to (a) one hundred percent (100%) of the principal amount of any Series AA Variable Rate Bond tendered or deemed tendered to the Tender Agent for purchase pursuant to Section 13 or 14 hereof or (b) the amount payable to the registered owner of a Purchased Bond following receipt by such owner of a purchase notice from the Remarketing Agent; and

(ii)  when used in relation to Tendered Bonds mandatorily tendered pursuant to Section 14(ii) hereof upon Conversion from the Fixed Rate Mode or a Term Rate Mode on a date other than a Reset Date, an amount equal to the Redemption Price that would be payable if such Series AA Variable Rate Bonds had been called for redemption on the Conversion Date;

7

NY1 5344276v10

HTA_STAY0002787

plus in each case accrued and unpaid interest thereon to the date of purchase.  If the date of purchase is an Interest Payment Date, then the Purchase Price shall not include accrued and unpaid interest, which shall be paid to the Holder of record on the applicable Record Date.

"Qualified Purchaser" means a person in whose name a Purchased Bond may, as provided in the applicable Liquidity Facility or the Reimbursement Agreement with the Provider, be registered or to whom a Purchased Bond may be transferred by or upon the order of such Provider without affecting the character of the such Series AA Variable Rate Bond as a Purchased Bond.

"Rate" means the Initial Term Rate, Initial Rate, Daily Rate, Commercial Paper Rate, Weekly Rate, Term Rate, Purchased Bond Rate, Fixed Rate or Auction Rate.

"Rate Mode" means the Initial Rate Mode, Daily Rate Mode, Commercial Paper Mode, Weekly Rate Mode, Term Rate Mode, Fixed Rate Mode or Auction Rate Mode.

"Rate Period" means the Initial Term Rate Period, any Daily Rate Period, Commercial Paper Rate Period, Weekly Rate Period, Term Rate Period, or Auction Period, or the Fixed Rate Period.

"Rating Service" means Moody's Investors Service, Inc., Standard & Poor's Ratings Services and any other nationally recognized securities rating service, in any case which has assigned a rating to the Series AA Variable Rate Bonds at the request of the Authority, or their respective successors and assigns.

"Record Date" means, with respect to each Interest Payment Date, (i) during any Daily Rate Period, Commercial Paper Rate Period, Weekly Rate Period or Auction Period, the close of business on the Business Day preceding such Interest Payment Date, and (ii) during any Term Rate Period or the Fixed Rate Period, the close of business on the fifteenth day of the calendar month immediately preceding any calendar month in which there occurs an Interest Payment Date, regardless of whether such day is a Business Day.

"Reimbursement Agreement" means the agreement by and between the Authority and the Provider of a Liquidity Facility pursuant to which the Provider has provided the Liquidity Facility and the Authority has agreed to reimburse the Provider for money advanced by the provider for payment of the Purchase Price of Series AA Variable Rate Bonds tendered or deemed tendered for purchase in accordance herewith.

"Remarketing Agent" means a person or persons appointed pursuant to a Remarketing Agreement to serve as the Authority's agent in connection with the remarketing of Series AA Variable Rate Bonds on July 1, 2010 in the Commercial Paper Mode, Daily Rate Mode, Term Rate Mode or Weekly Rate Mode and to perform the duties of a Remarketing Agent hereunder, or any successor remarketing agent.

"Remarketing Agreement" means each agreement by and between the Authority and a Remarketing Agent relating to the remarketing of particular Series AA Variable Rate Bonds in the Commercial Paper Mode, Daily Rate Mode, Term Rate Mode or Weekly Rate Mode, as the

8

CONFIDENTIAL

same may be amended or supplemented from time to time in accordance with the provisions thereof, or any subsequent agreement relating to the powers, duties and obligations of a successor remarketing agent.

"Remarketing Proceeds Account" means the account so designated and established within the Purchase and Remarketing Fund pursuant to Section 20 hereof.

"Representative" means Citigroup Global Markets Inc., as the representative of the Underwriters.

"Reset Date" means, with respect to a Series AA Variable Rate Bond in the Commercial Paper Mode, the Daily Rate Mode, Term Rate Mode or Weekly Rate Mode, the date on which the interest rate borne by such Series AA Variable Rate Bond is to be determined in accordance with the provisions of Section 3 hereof.

"Resolution" means Resolution No. 2003-23 authorizing the Series AA Bonds.

"Standby Purchase Agreement" means an agreement by and between the Authority, acting through its Executive Director, and another person pursuant to which such person is obligated to purchase Series AA Variable Rate Bonds tendered for purchase.

"Sub-Series" means any grouping of Series AA Variable Rate Bonds established by the Authority, including upon consolidation or division of two or more Sub-Series, pursuant to Section 2 hereof.

"Tender Agent" means the Fiscal Agent, who is appointed as Tender Agent pursuant to Section 33 hereof and having the duties, responsibilities and rights provided herein, and its successor or successors and any successor Fiscal Agent which may at any time be substituted in its place pursuant hereto.

"Tender Date" means each Optional Tender Date or Mandatory Tender Date.

"Tender Notice" means the notice delivered by the Holder of a Series AA Variable Rate Bond subject to Optional Tender pursuant to Section 13 hereof.

"Tendered Bond" means a Series AA Variable Rate Bond or portion thereof in an Authorized Denomination tendered for purchase in accordance with Section 13 or 14 hereof, including a Series AA Variable Rate Bond or portion thereof deemed tendered, but not surrendered, on the applicable Tender Date.

"Term Rate" means the rate at which a Series AA Variable Rate Bond bears interest during a Term Rate Period, as established in accordance with Section 3(d) hereof.

"Term Rate Mode" means a Rate Mode designated as such in a Conversion Notice in which a Series AA Variable Rate Bond bears interest at a Term Rate.

"Term Rate Period" means a period commencing on the Conversion Date or a Reset Date and extending to and including the next succeeding Reset Date, which Reset Date, must be a

9

CONFIDENTIAL

Business Day at least three hundred sixty-five (365) days from such Conversion Date or Reset Date.

"Termination Date" when used in connection with a particular Liquidity Facility means the date on which such Liquidity Facility will terminate prior to its stated Expiration Date, as set forth in a Default Notice or a Termination Notice delivered by the Provider thereof in accordance with such Liquidity Facility or the applicable Reimbursement Agreement.

"Termination Notice" means a notice given by a Provider pursuant to the Liquidity Facility provided by it or the applicable Reimbursement Agreement to the effect that such Liquidity Facility will terminate on the date specified in such notice other than as a result of the occurrence of an event described in Section 30(a)(v) hereof.

"Unscheduled Non-Business Day" means any day that is not a Business Day because of (i) the closure of the principal office of the Provider, the Remarketing Agent, the Auction Agent, the Tender Agent or the Fiscal Agent or (ii) the closing of the New York Stock Exchange, due to any calamity or crisis or declaration by federal or state authorities.

"Weekly Rate" means the rate at which a Series AA Variable Rate Bond bears interest during a Weekly Rate Period, as established in accordance with Section 3(c) hereof.

"Weekly Rate Mode" means a Rate Mode in which a Series AA Variable Rate Bond bears interest at a Weekly Rate.

"Weekly Rate Period" means a period commencing on a Conversion Date or any Thursday and extending to and including the next succeeding Wednesday.

Section 2.  Details of the Series AA Variable Rate Bonds.

The Series AA Variable Rate Bonds shall initially bear interest at the Initial Term Rate during the Initial Term Rate Period.  If the Series AA Variable Rate Bonds are not remarketed on July 1, 2010 for the reasons set forth in Section 8(c), the Series AA Variable Rate Bonds shall bear interest from July 1, 2010 at the rate of 8% per annum until (but not including) the date such bonds are remarketed in a new Rate Mode.  Thereafter, the interest rate on the Series AA Variable Rate Bonds shall, unless the Authority by written notice given to the Fiscal Agent and Tender Agent at least thirty (30) days prior to the end of the Initial Term Rate Period elects to convert the Series AA Variable Rate Bonds to one or more other Rate Modes as herein permitted, convert to the Weekly Rate determined in accordance with Section 3(c) hereof.  The interest to the payment of the Series AA Variable Rate Bonds shall be payable on each Interest Payment Date.  The Series AA Variable Rate Bonds shall bear interest from the Interest Payment Date next preceding the date on which it is authenticated, unless authenticated on an Interest Payment Date, in which case it shall bear interest from such Interest Payment Date, or unless authenticated prior to the first Interest Payment Date, in which case it shall bear interest from its date; provided, however, that if at the time of authentication of any Series AA Variable Rate Bond interest is in default, such Bond shall bear interest from the date to which interest shall have been paid or duly provided for.

NY1 5344276v10

CONFIDENTIAL                                                      HTA_STAY0002790

The Amortization Requirements for the Series AA Variable Rate Bonds stated to mature on July 1, 2026 shall be as follows:

| Fiscal Year Ending June 30 | Amortization Requirement |
|---|---|
| 2020 | $35,000,000 |
| 2021 | 53,705,000 |
| 2023 | 31,795,000 |
| 2024 | 32,860,000 |
| 2025 | 33,960,000 |

The Amortization Requirements for the Series AA Variable Rate Bonds stated to mature on July 1, 2035 shall be as follows:

| Fiscal Year Ending June 30 | Amortization Requirement |
|---|---|
| 2026 | $34,035,000 |
| 2027 | 3,030,000 |
| 2028 | 3,135,000 |
| 2029 | 3,240,000 |
| 2030 | 3,345,000 |
| 2031 | 3,460,000 |
| 2032 | 3,575,000 |
| 2033 | 3,695,000 |
| 2034 | 3,815,000 |

At any time after the delivery of the Series AA Variable Rate Bonds, the Authority, by a certificate of its Executive Director delivered to the Fiscal Agent, the Tender Agent and each affected Remarketing Agent, Insurer and Provider and with the written consent of each affected Insurer if any such consolidation or division would affect the Amortization Requirements of such Bonds, may establish one or more Sub-Series and thereafter may consolidate into one Sub-Series all or any portion of two or more Sub-Series of the Series AA Variable Rate Bonds or divide all or a portion of a Sub-Series so created or created upon a prior consolidation into two or more Sub-Series. Series AA Variable Rate Bonds that mature on different dates shall not be consolidated into the same Sub-Series, and Series AA Variable Rate Bonds that are insured by an Insurer shall not be consolidated into a Sub-Series containing any Series AA Variable Rate Bonds not so insured.

The Series AA Variable Rate Bonds to be redeemed in accordance with their respective Amortization Requirements shall, if prior thereto such Series AA Variable Rate Bonds have been consolidated into two or more Sub-Series (as defined in Appendix A), be allocated to each Sub-Series pro rata as nearly as practicable based upon the principal amount of Series AA Variable Rate Bonds of such Sub-Series and maturity outstanding on the date on which such Bonds are still subject to redemption after giving effect to any consolidation or division of Series AA Variable Rate Bonds of or among Sub-Series.

11

NY1 5344276v10

HTA_STAY0002791

Prior to any such creation, consolidation or division, the Authority shall deliver to the Fiscal Agent, the Tender Agent and each affected Remarketing Agent, Insurer and Provider, if any, a certificate of its Executive Director setting forth for each Series AA Variable Rate Bond of a Sub-Series, the CUSIP number, the aggregate principal amount thereof and the name of the Broker-Dealer, if any, therefor. If, as a consequence of any consolidation or division, there is a change in the Liquidity Facility for the Series AA Variable Rate Bonds of the Sub-Series related thereto, such change shall be considered to be a substitution of a Liquidity Facility with respect to such Series AA Variable Rate Bonds for purposes of the mandatory tender provisions of Section 14 hereof. Upon any such consolidation, the Series AA Variable Rate Bonds of the Sub-Series so consolidated shall constitute a single Sub-Series for all purposes of this Appendix.

Section 3. (a) <u>Daily Rate</u>. Each Series AA Variable Rate Bond in a Daily Rate Mode (other than a Purchased Bond) will bear interest at the Daily Rate. The Remarketing Agent for each Series AA Variable Rate Bond in a Daily Rate Mode shall determine a Daily Rate for each Daily Rate Period by 10:00 A.M., New York City time, on each Business Day. The Daily Rate for any day during the Daily Rate Period which is not a Business Day shall be the Daily Rate established on the immediately preceding Business Day. The Daily Rate for a Series AA Variable Rate Bond shall be the interest rate determined by the Remarketing Agent to be the lowest rate of interest that, if borne by such Series AA Variable Rate Bonds for such Daily Rate Period, in the judgment of the Remarketing Agent, having due regard for the prevailing financial market conditions for bonds or other securities the interest on which is excludable from gross income for federal income tax purposes of the same general nature as such Series AA Variable Rate Bond and which bonds or other securities are comparable as to credit and maturity or tender dates with the credit and maturity or tender dates of such Series AA Variable Rate Bond, would be the lowest interest rate that would enable such Series AA Variable Rate Bond to be sold on the day of the applicable Daily Rate Period at a price of par, plus accrued interest, if any.

The Remarketing Agent shall make the Daily Rate available to any Holder, the Fiscal Agent, the Tender Agent, the Authority and each affected Insurer and Provider requesting such rate, and on the last Business Day of each calendar month, shall give notice to the Fiscal Agent, the Tender Agent and the Authority of the Daily Rates that were in effect for each day of such calendar month via facsimile, telephonic or electronic means or other similar means of communication acceptable to the Authority.

If for any reason (i) the Daily Rate is not established as aforesaid, (ii) no Remarketing Agent shall be serving hereunder, (iii) the Daily Rate so established is held to be invalid or unenforceable, (iv) pursuant to the applicable Remarketing Agreement, the Remarketing Agent is not then required to establish a Daily Rate, or Liquidity Facility Provider fails to purchse tendered bonds or (v) the applicable Provider fails to provide funds to purchase Tendered Bonds in the Daily Rate Mode, then the Daily Rate for such Daily Rate Period shall be the BMA Municipal Index on the date such Daily Rate was to have been determined by the Remarketing Agent.

(b) <u>Commercial Paper Rate</u>. The Commercial Paper Rate Period for and Commercial Paper Rate on each Series AA Variable Rate Bond in a Commercial Paper Mode (other than a Purchased Bond) shall be determined by the Remarketing Agent for such Series AA Variable Rate Bond on or before 12:30 P.M., New York City time, on the first day of each

12

Commercial Paper Rate Period. The Commercial Paper Rate for each Series AA Variable Rate Bond in a Commercial Paper Mode to take effect on such day shall be the interest rate determined by the Remarketing Agent to be the lowest rate of interest that, if borne by such Series AA Variable Rate Bond for its Commercial Paper Rate Period, in the judgment of the Remarketing Agent, having due regard for the prevailing financial market conditions for bonds or other securities the interest on which is excludable from gross income for federal income tax purposes of the same general nature as such Series AA Variable Rate Bond and which bonds or other securities are comparable as to credit and maturity or tender dates with the credit and maturity or tender dates of such Series AA Variable Rate Bond, would be the lowest interest rate that would enable such Series AA Variable Rate Bond to be sold on the first day of the applicable Commercial Paper Rate Period at a price of par, plus accrued interest, if any.

Each Series AA Variable Rate Bond in a Commercial Paper Mode (other than Purchased Bonds) shall bear interest during a particular Commercial Paper Rate Period at a rate per annum equal to the interest rate determined above corresponding to its then current Commercial Paper Rate Period. A Series AA Variable Rate Bond may have a Commercial Paper Rate Period, and bear interest at a Commercial Paper Rate, different from other Series AA Variable Rate Bonds in the Commercial Paper Mode. The Remarketing Agent shall notify the Fiscal Agent, the Tender Agent, the Authority and each affected Insurer and Provider by facsimile or by telephonic or electronic means of the term or terms of and the interest rate or rates borne by the Series AA Variable Rate Bonds in the Commercial Paper Mode on the first day of each Commercial Paper Rate Period.

If for any reason the Remarketing Agent fails to specify the next succeeding Commercial Paper Rate Period for a Series AA Variable Rate Bond, such Commercial Paper Rate Period for such Series AA Variable Rate Bond shall be the shorter of (i) seven (7) days and (ii) the period remaining to and including the final maturity date of the Series AA Variable Rate Bond.

If for any reason (i) a Commercial Paper Rate for any Series AA Variable Rate Bond is not established as aforesaid, (ii) no Remarketing Agent shall be serving hereunder, (iii) the Rate so established is held to be invalid or unenforceable with respect to a Commercial Paper Rate Period or (iv) pursuant to the applicable Remarketing Agreement, the Remarketing Agent is not then required to establish a Commercial Paper Rate, then the Commercial Paper Rate for such Commercial Paper Rate Period shall be the BMA Municipal Index on the date such Commercial Paper Rate was to have been determined by the Remarketing Agent.

(c)    Weekly Rate. Each Series AA Variable Rate Bond in a Weekly Rate Mode (other than a Purchased Bond) will bear interest at the Weekly Rate. The Remarketing Agent for each Series AA Variable Rate Bond in the Weekly Rate Mode shall determine the Weekly Rate for each Weekly Rate Period by 4:00 p.m., New York City time, on the Business Day preceding the first day of such Weekly Rate Period. The Weekly Rate for each Series AA Variable Rate Bond in a Weekly Rate Mode shall be the interest rate determined by the Remarketing Agent for such Series AA Variable Rate Bond to be the lowest rate of interest that, if borne by such Series AA Variable Rate Bond for such Weekly Rate Period, in the judgment of the Remarketing Agent, having due regard for the prevailing financial market conditions for bonds or other securities the interest on which is excludable from gross income for federal

NY1 5344276v10

CONFIDENTIAL

income tax purposes of the same general nature as such Series AA Variable Rate Bond and which bonds or other securities are comparable as to credit and maturity or tender dates with the credit and maturity or tender dates of such Series AA Variable Rate Bond, would be the lowest interest rate that would enable such Series AA Variable Rate Bond to be sold on the first day of the applicable Weekly Rate Period at a price of par, plus accrued interest, if any.

The Remarketing Agent shall make the Weekly Rate available to any Holder, the Fiscal Agent, the Tender Agent, the Authority and each affected Insurer and Provider requesting such Rate, and on the last Business Day of each calendar month, the Remarketing Agent shall notify the Fiscal Agent, the Tender Agent, the Authority and each affected Insurer and Provider, by facsimile or by telephonic or electronic means of the interest rate borne by the Series AA Variable Rate Bonds on each day of that calendar month.

If for any reason (i) the Weekly Rate is not established as aforesaid, (ii) no Remarketing Agent shall be serving hereunder, (iii) the Weekly Rate so established is held to be invalid or unenforceable or (iv) pursuant to the applicable Remarketing Agreement, the Remarketing Agent is not then required to establish a Weekly Rate, or Liquidity Facility Provider fails to purchse tendered bonds or (v) the applicable Provider fails to provide funds to purchase Tendered Bonds in the Weekly Rate Mode ,then the Weekly Rate for such Weekly Rate Period shall be the BMA Municipal Index on the date such Weekly Rate was to have been determined by the Remarketing Agent.

(d)   Term Rate.   During each Term Rate Period other than the Initial Term Rate Period, each Series AA Variable Rate Bond in a Term Rate Mode (other than a Purchased Bond) will bear interest at the Term Rate.   No less than twenty (20) Business Days prior to the end of each Term Rate Period for a Series AA Variable Rate Bond, the Executive Director shall deliver to the Fiscal Agent and the Remarketing Agent for such Series AA Variable Rate Bond written notice of the Authority's determination of the next succeeding Term Rate Period, which Term Rate Period shall end on a Business Day and shall not be the maturity date of such Series AA Variable Rate Bonds.

The Remarketing Agent for each Series AA Variable Rate Bond in the Term Rate Mode shall determine the Term Rate for each Term Rate Period by 2:00 p.m., New York City time, on the Second Business Day prior to the applicable Conversion Date or Reset Date.   The Term Rate for each Series AA Variable Rate Bond in the Term Rate Mode shall be the interest rate determined by the Remarketing Agent for such Series AA Variable Rate Bond as the lowest rate which, in the judgment of that Remarketing Agent, having due regard for the prevailing financial market conditions for bonds or other securities the interest on which is excludable from gross income for federal income tax purposes of the same general nature as such Series AA Variable Rate Bonds and which bonds or other securities are comparable as to credit and maturity or tender dates with the credit and maturity or tender dates of such Series AA Variable Rate Bond, would be the lowest interest rate that would enable such Series AA Variable Rate Bond to be sold on the Conversion Date or the Reset Date, as the case may be, at a price of par, plus accrued interest, if any.

The interest rate on the Series AA Variable Rate Bonds in the Term Rate Mode will not be reset on any Reset Date if the duration of the new Term Rate Period is not the same

14

CONFIDENTIAL

as the immediately preceding Term Rate Period unless at least five (5) Business Days prior to such Reset Date and again on such Reset Date, there shall have been delivered to the Fiscal Agent, the Authority and each affected Insurer, Provider and Remarketing Agent, an Opinion of Bond Counsel.

If for any reason the Authority fails to specify the next succeeding Term Rate Period for any Series AA Variable Rate Bond, such Term Rate Period shall be the shorter of (i) a period ending on a January 1 or July 1 that as nearly as practicable will result in a Term Rate Period that is the same as the immediately preceding Term Rate Period, and (ii) the period remaining to and including the final maturity date of such Series AA Variable Rate Bond.

If for any reason, the interest rate for a Series AA Variable Rate Bond in the Term Rate Mode is not or cannot be determined by the Remarketing Agent in the manner specified above, the interest rate on such Series AA Variable Rate Bond will be equal to the Municipal Market Data General Obligation Yield on bonds with the same long term ratings as the Series AA Variable Rate Bond (taking into account any Financial Guaranty Insurance Policy that may be outstanding with respect thereto) that mature on a date that is as nearly as practical the same date as the date on which the new Term Rate Period for such Series AA Variable Rate Bond will end. Such interest rate shall be based upon the Municipal Market Data General Obligation Yield for the most recent period for which such information is available on the date the interest rate is to be determined. If such index or its equivalent is no longer published, the interest rate on such Series AA Variable Rate Bonds shall be the interest rate then in effect on such Series AA Variable Rate Bond.

(e)   Fixed Rate.  Each Series AA Variable Rate Bond in the Fixed Rate Mode (other than a Purchased Bond) will bear interest at a Fixed Rate. The Fixed Rate for each Fixed Rate Bond shall be determined as provided in this paragraph by the dates specified in Section 9 hereof. The Fixed Rate for each such Series AA Variable Rate Bond shall be determined by the Remarketing Agent for such Series AA Variable Rate Bond or by such other investment banking firm or firms (collectively with the Remarketing Agent, the "rate setter") with which the Authority has entered into an agreement for the purchase, as underwriters, of such Series AA Variable Rate Bond to be converted to the Fixed Rate Mode on the Conversion Date as agreed to by the Authority. The Fixed Rate shall be either (i) the lowest rate which, in the judgment of the rate setter, having due regard for prevailing financial market conditions for bonds or other securities the interest on which is excludable from gross income for federal income tax purposes of the same general nature as such Series AA Variable Rate Bonds and which are comparable as to credit and maturity with the credit and maturity of such Series AA Variable Rate Bond, would be the lowest interest rate that would enable such Series AA Variable Rate Bond to be sold on the Conversion Date at a price of par, plus accrued interest, if any, or (ii) if the Authority, the Fiscal Agent and each affected Insurer and the Remarketing Agent shall have received an Opinion of Bond Counsel, such other rate of interest as the Authority shall determine.

If for any reason the Fixed Rate for a Series AA Variable Rate Bond is not determined as aforesaid, then the Rate Mode for such Bond shall on the Conversion Date convert to a Weekly Rate Mode unless (i) the Authority elects another Rate Mode for such Series AA Variable Rate Bond, by filing a certificate to such effect with the Fiscal Agent and each affected Insurer and Provider no later than the close of business on the Business Day preceeding the

15

NY1 5344276v10

CONFIDENTIAL

Conversion Date, and (ii) on or prior to the Conversion Date an Opinion of Bond Counsel is delivered to the Fiscal Agent and each affected Insurer and Provider, whereupon the Rate to be borne by such Series AA Variable Rate Bond shall be the Rate applicable to such other Rate Mode determined as provided in this Section.

(f)     Auction Rate. Each Series AA Variable Rate Bond in an Auction Rate Mode shall bear interest at the Auction Rate for each Auction Period determined as set forth in this paragraph (f) and Exhibit A hereto, the provisions of which are hereby incorporated into this paragraph. The initial Auction Period and Auction Date immediately after any change in the Rate Mode of a Series AA Variable Rate Bond to the Auction Rate Mode shall commence from and include the Conversion Date and shall expire on the date determined by the Executive Director on or before the Conversion Date. The Executive Director shall notify the Fiscal Agent and each Broker-Dealer, Insurer and Provider of such Initial Period Conversion and Date promptly after their determination. The Auction Rate for the initial Auction Period immediately after any such change in the Rate Mode shall be the rate of interest per annum determined by the Remarketing Agent on a date not later than 10:00 A.M., New York City time, on the Conversion Date as the lowest rate which, in the judgment of the Remarketing Agent, having due regard for the prevailing financial market conditions for bonds or other securities the interest on which is excludable from gross income for federal income tax purposes of the same general nature as such Series AA Variable Rate Bonds and which bonds or other securities are comparable as to credit and maturity or tender dates with the credit and maturity or tender dates of such Series AA Variable Rate Bond, would be the lowest interest rate that would enable such Series AA Variable Rate Bond to be sold on the Conversion Date, at a price of par, plus accrued interest, if any. Also, the first Auction Period following the initial Auction Period shall be an Auction Period determined and certified by the Executive Director to the Fiscal Agent, each Broker-Dealer, the Auction Agent and each affected Insurer. Thereafter, each Auction Period shall be an Auction Period of the same duration as such second Auction Period, unless such Auction Period is changed to another Auction Period in accordance with Exhibit A hereto. For any other Auction Period that is not an initial Auction Period, the Auction Rate shall be the rate of interest determined in accordance with Exhibit A.

(g)     Purchased Bond Rate. Purchased Bonds will bear interest at the Purchased Bond Rate payable at the time and in the manner provided in the Liquidity Facility for such Purchased Bonds or the related Reimbursement Agreement. Purchased Bonds shall not bear interest at the Purchased Bond Rate after such Bonds have been remarketed unless such Bonds shall again become Purchased Bonds.

(h)     Limitations on Rates. No Series AA Variable Rate Bond shall bear interest at a rate which causes the yield thereon (calculated in accordance with Act No. 3 of the Legislature of Puerto Rico, approved October 10, 1985, as the same may be amended from time to time, or any successor legislation) to exceed the highest rate permitted by said Act (the "Maximum Rate").

(i)     Limitation on Rate Periods. No Rate Period shall extend beyond the scheduled Expiration Date of the Liquidity Facility then in effect, if any (or if such day is not a Business Day, the immediately preceding Business Day).

CONFIDENTIAL                                                          HTA_STAY0002796

(j)    No Liability.  In determining the Rate, the Authority, the Auction Agent, a Broker-Dealer and the Remarketing Agent shall have no liability to any Holder of a Series AA Variable Rate Bond, the Fiscal Agent, the Tender Agent or any Insurer or Provider, except for its respective willful misconduct or gross negligence.

Section 4.  Deferred Interest on Purchased Bonds.  If on any date the Purchased Bond Rate would, but for this sentence, exceed the Maximum Rate, then each Purchased Bond shall bear interest at the Maximum Rate applicable thereto, and if thereafter the Purchased Bond Rate would, but for this sentence, be less than such Maximum Rate, each Purchased Bond shall, to the extent permitted by law, continue to bear interest at the Maximum Rate until such time as the total interest paid and accrued in respect of said Purchased Bond is equal to the total interest that the Provider thereof would have received (together with, to the extent permitted by law, interest, at the rate therefor set forth in the applicable Liquidity Facility or in the related Reimbursement Agreement, on any amounts the payment of which was deferred by reason of the limitation contained in the first clause of this sentence) if such Purchased Bond had borne interest without regard to the limitation contained in this Section.

Section 5.  Redemption of Series AA Variable Rate Bonds.

(i)    The outstanding Series AA Variable Rate Bonds shall be subject to redemption prior to their maturity, at the option of the Authority, at any time, from any moneys that may be available for that purpose (other than moneys set aside in respect of an Amortization Requirement), on the last day of the Initial Term Rate Period, in whole at a Redemption Price equal to the principal amount of the Series AA Variable Rate Bonds to be redeemed, together with accrued interest to the date fixed for redemption, without premium.

(ii)   During such time as the Series AA Variable Rate Bonds are in the Daily Rate Mode, Commercial Paper Rate Mode, Auction Rate Mode or Weekly Rate Mode the outstanding Series AA Variable Rate Bonds shall be subject to redemption prior to their maturity, at the option of the Authority, on any Business Day from any moneys that may be available for that purpose (other than such moneys set aside in respect of an Amortization Requirement), in whole or in part, in the case of outstanding Series AA Variable Rate Bonds in the Daily Rate Mode or the Weekly Rate Mode, on any Interest Payment Date that is a Reset Date, in the case of outstanding Series AA Variable Rate Bonds in the Commercial Paper Mode or in the case of outstanding Series AA Variable Rate Bonds in the Auction Rate Mode, on any Interest Payment Date immediately following an Auction Period, in all cases at a Redemption Price equal to the principal amount of each Series AA Variable Rate Bond to be redeemed, together with accrued interest to the date fixed for redemption, without premium.

(iii)  Unless at the time Series AA Variable Rate Bonds are converted from another Rate Mode to the Term Rate Mode or the Fixed Rate Mode the Authority establishes other dates and Redemption Prices at which such Series AA Variable Rate Bonds may be redeemed at the option of the Authority, the outstanding Series AA Variable Rate Bonds in the Term Rate Mode or the Fixed

17

CONFIDENTIAL

Rate Mode shall be subject to redemption prior to their maturity, at the option of the Authority:

(A)     in whole or in part on any Reset Date in the case of Series AA Variable Rate Bonds in the Term Rate Mode, from any moneys that may be available for that purpose (other than moneys set aside in respect of an Amortization Requirement), at a Redemption Price equal to the principal amount of each Series AA Variable Rate Bond to be redeemed, together with accrued interest to the date fixed for redemption, without premium; or

(B)     in whole or in part at any time, from any moneys that may be available for that purpose (other than moneys set aside in respect of an Amortization Requirement), at a Redemption Price equal to the percentages of the principal amount of each Series AA Variable Rate Bond to be redeemed set forth below, together with accrued interest, to the date fixed for redemption:

| Number of Years Remaining to Maturity at Conversion Date | Number of Years the Term Rate Period will be in effect following the Conversion Date or of the Fixed Rate Period when Series AA Variable Rate Bonds may be Redeemed and Redemption Prices | |
|---|---|---|
| | More than 10 But less than 11 years | More than 11 years |
| 11 years or more | 101% | 100% |
| 10 but less than 11 years | 100% | Not Applicable |
| Less than 10 years | Not Subject to Redemption | |

The Series AA Variable Rate Bonds to be redeemed in accordance with their respective Amortization Requirements shall, if prior thereto the Series AA Variable Rate Bonds have been consolidated into two or more Sub-Series, be allocated to each Sub-Series pro rata as nearly as practicable based upon the principal amount of Series AA Variable Rate Bonds of such Sub-Series and maturity outstanding on the date on which such Bond is still subject to redemption after giving effect to any consolidation or division of Series AA Variable Rate Bonds of or among Sub-Series.

(iv)     Series AA Variable Rate Bonds that are Purchased Bonds shall be subject to redemption prior to their maturity from any moneys that may be available for that purpose (other than moneys set aside in respect of an

18

CONFIDENTIAL

Amortization Requirement), in part at a Redemption Price equal to the principal amount of the Purchased Bonds to be redeemed, together with accrued interest to the date fixed for redemption, without premium, at the times and in the principal amounts required by the applicable Liquidity Facility or the related Reimbursement Agreement

(v)     Subject to the limitations set forth in Section 30 hereof, if so provided in the applicable Liquidity Facility or the related Reimbursement Agreement, the Series AA Variable Rate Bonds of a Sub-Series that are Purchased Bonds shall be subject to redemption prior to their maturity from any moneys that may be available for that purpose (other than moneys set aside in respect of an Amortization Requirement), in whole as soon as practicable upon receipt by the Authority of a Default Notice given by the Provider of the Liquidity Facility for such Purchased Bonds, which Default Notice expressly states that the Purchased Bonds are to be redeemed in whole at a Redemption Price equal to the principal amount of the Purchased Bonds to be redeemed, together with accrued interest to the date fixed for redemption, without premium.

Section 6.  Notice of Redemption.  Each notice of redemption of Series AA Variable Rate Bonds in any Rate Mode to be redeemed at the option of the Authority pursuant to Section 5 hereof shall state, in addition to any other condition, that the redemption is conditioned upon the availability on the redemption date of Available Moneys sufficient to pay the Redemption Price of the Series AA Variable Rate Bonds to be redeemed.  In addition, the Fiscal Agent shall send a copy of the above notice of redemption to the persons specified in Sections B and D of the Redemption Release at least two Business Days before notice is given in the preceding sentence. Any failure to comply with the requirements of the Redemption Release or any failure to send such notice to the persons specified in said Sections B and D shall not affect the validity of the proceedings for the redemption of any Series AA Variable Rate Bonds.

Section 7.  Partial Redemption.  If less than all of the outstanding Series AA Variable Rate Bonds of a Sub-Series and maturity and bearing interest in the same Rate Mode and for the same Rate Period shall be called for redemption, the Fiscal Agent shall select for redemption, using such method of selection as it deems proper in its discretion, the Purchased Bonds of such Sub-Series, maturity, Rate Mode and Rate Period before selecting any other Series AA Variable Rate Bonds of such Sub-Series, maturity, Rate Mode and Rate Period for redemption.  Series AA Variable Rate Bonds of such Sub-Series, maturity, Rate Mode and Rate Period which are not Purchased Bonds shall be selected by the Fiscal Agent by such method as it shall deem fair and appropriate; provided, however, that the portion of any Series AA Variable Rate Bond to be redeemed shall be in Authorized Denomination, and that, in selecting Series AA Variable Rate Bonds of any particular Mode for redemption, the Fiscal Agent shall treat each Series AA Variable Rate Bond as representing that number of Series AA Variable Rate Bonds which is obtained by dividing the principal amount of such Bond by the minimum Authorized Denomination for such Mode

Section 8.  Conversion of Rate Modes.  (a) The Authority is hereby authorized to elect to convert the Series AA Variable Rate Bonds to one or more Rate Modes after the Initial Term Rate Period.  In order to designate a new Rate Mode for any Series AA Variable Rate Bond, the

NY1 5344276v10

CONFIDENTIAL

Authority shall deliver a Conversion Notice in accordance with the provisions of Section 12(a) hereof. No Conversion into a new Rate Mode shall occur unless:

(i)      the Conversion Date is after June 30, 2010;

(ii)     on or prior to 11:00 a.m., New York City time, on the day that the Authority delivers a Conversion Notice in accordance with Section 12(a) hereof, the Authority shall receive a letter from Bond Counsel stating that, based on the then current law, it knows of no reason why the Opinion of Bond Counsel required by clause (iii) below could not be rendered on the Conversion Date;

(iii)    on or prior to 11:00 a.m., New York City time, on the Conversion Date, the Authority shall deliver to the Fiscal Agent, the Tender Agent and each affected Insurer, Provider, Remarketing Agent and Broker-Dealer, an Opinion of Bond Counsel with respect to such proposed Conversion;

(iv)     if the Conversion is to the Fixed Rate Mode or the Term Rate Mode, the Conversion Date is an Interest Payment Date on which such Series AA Variable Rate Bond could be redeemed at the option of the Authority as provided in Section 5 of this Appendix;

(v)      if the Conversion is to the Auction Rate Mode, on or prior to the Conversion Date an Auction Agent and one or more Broker-Dealers have been appointed; and

(vi)     if the Conversion is from the Auction Rate Mode, the Term Rate Mode with a Term Rate Period of less than five years or the Fixed Rate Mode, to the Daily Rate Mode, the Commercial Paper Mode or the Weekly Rate Mode, on or prior to the Conversion Date a Remarketing Agent shall have been appointed for the Series AA Variable Rate Bonds to be converted and the Authority shall have delivered to the Fiscal Agent, the Tender Agent and each applicable the Remarketing Agent (1) rating confirmations of the Rating Services and (2) the Liquidity Facility, if any, to be provided and the related Reimbursement Agreement in accordance with Section 28 hereof.

(b)      If all conditions set forth in this Section to the Conversion are met, the Rate Period(s) or the Auction Period for the new Rate Mode shall commence on the Conversion Date and the interest rate(s) (together, in the case of a change to the Commercial Paper Mode, with the Rate Period(s)) shall be determined by the Remarketing Agent in the manner provided in Section 3.

(c)      Subject to the additional provisions of Section 9 in the event that:

(i)      the requirements of paragraph (a) of this Section have not been met on a scheduled Conversion Date; or

(ii)     on the Business Day preceding a scheduled Conversion Date the applicable Remarketing Agent notifies the Fiscal Agent, the Authority and each

20

CONFIDENTIAL

affected Insurer and Provider that the Series AA Variable Rate Bonds to be converted cannot be remarketed; or

(iii)    on or prior to the Business Day preceding a Conversion Date, the Authority gives written notice to the Fiscal Agent, the applicable Remarketing Agent, and each affected Insurer and Provider of its election not to convert such Series AA Variable Rate Bonds to the new Rate Mode; or

(iv)    a Conversion Date is an Unscheduled Non-Business Day;

then, in each such case, the Series AA Variable Rate Bonds shall remain in the then existing Rate Mode.

(d)    The provisions of paragraph (c) shall not apply to a proposed Conversion from an Auction Rate Mode to any other Rate Mode. With respect to any such Conversion, if (i) the requirements of the Conversion have not been satisfied by the Conversion Date, (ii) on the Business Day preceding a scheduled Conversion Date, any Series AA Variable Rate Bonds to be converted cannot be remarketed, (iii) on or prior to the Business Day preceding a scheduled Conversion Date, the Authority determines it does not want the Conversion to occur, or (iv) the Conversion Date is an Unscheduled Non-Business Day, the Series AA Variable Rate Bonds will continue to bear interest in the Auction Rate Mode and the Auction Rate for the next succeeding Auction Period shall be determined pursuant to the Auction Procedures; provided, however, that the Auction Rate for the Auction Period commencing on the failed Conversion Date shall be the Maximum Auction Rate and the Auction Period shall be a seven-day Auction Period.

(e)    If the conversion from the Initial Term Rate Mode does not occur for the reasons set forth in subsection (c) of this Section 8, the Authority covenants to cause the Series AA Variable Rate Bonds to be converted to another Rate Mode or Rate Modes on the earliest Business Day after July 1, 2010 at which all of such Bonds may be remarketed in accordance with the provisions of this resolution.

Section 9.  <u>Additional Provisions Regarding Conversion to the Fixed Rate Mode or Term Rate Mode</u>.  (a)  No Series AA Variable Rate Bond shall be converted to bear interest at the Fixed Rate or the Term Rate unless:

(i)    the proposed Conversion Date is (A) at least fifteen (15) days after receipt by the Fiscal Agent and the Tender Agent of the Conversion Notice (or such shorter period as may be agreed to by them) and (B) at least three (3) days after the Fiscal Agent has mailed the notice referred to in Section 12(b) hereof; and

(ii)    at least three (3) days prior to the proposed Conversion Date, the Fiscal Agent has received a certificate of the Executive Director stating that a written agreement has been entered into by the Authority and a firm or firms of investment bankers providing for the purchase as underwriters and resale to the public of the Series AA Variable Rate Bonds to be converted on the Conversion Date at a price equal to the principal amount thereof (or such other price as the Authority may determine if the sale of such Series AA Variable Rate Bonds at

21

CONFIDENTIAL

such other price would not prevent the Opinion of Bond Counsel required by Section 8(a)(iii) hereof from being delivered upon such sale), which written agreement (Y) may be subject to reasonable terms and conditions which, in the judgment of the Authority, reflect current market standards and (Z) must include a provision requiring payment of the purchase price for the Series AA Variable Rate Bonds to be converted to be made in immediately available funds.

(b)    If on the proposed Conversion Date a remarketing has been arranged for less than all the Series AA Variable Rate Bonds to have been converted to the Term Rate Mode or the Fixed Rate Mode, only the Series AA Variable Rate Bonds for which a remarketing has been arranged shall be converted to bear interest at the Term Rate or the Fixed Rate, and the remaining Series AA Variable Rate Bonds shall continue in the Rate Mode in effect prior to the proposed Conversion Date.

(c)    The Authority may, by notice given to the Fiscal Agent at the same time and in the same manner as a Conversion Notice of the Conversion to the Fixed Rate Mode or the Term Rate Mode is given (which notice may be contained in such Conversion Notice), elect that after the Conversion Date (A) one or more of any Series AA Variable Rate Bonds to be converted that is a term bond may be converted to serial bonds maturing on the dates on which and in the principal amounts that the corresponding Series AA Variable Rate Bond was subject to redemption in satisfaction of an Amortization Requirement, (B) two or more serial bonds to be converted that mature sequentially in consecutive years may be combined and converted to a term bond maturing on the latest date on which any such serial bond matures and establish the date on which each such serial bond matured to be a date on which such Bond will be subject to redemption in accordance with an Amortization Requirement therefor in the amount of the serial bond otherwise maturing on said date or (C) any Series AA Variable Rate Bond to be converted that matures in any year and is not subject to redemption in accordance with an Amortization Requirement may be converted either to serial bonds maturing in consecutive years in an aggregate principal amount equal to the aggregate principal amount of such Series AA Variable Rate Bond or to a term bond subject to redemption in accordance with one or more Amortization Requirements in consecutive years in an aggregate principal amount equal to the aggregate principal amount of such Series AA Variable Rate Bond. The principal amount of each serial bond or Amortization Requirement shall be in an Authorized Denomination, and the Authority shall obtain an Opinion of Bond Counsel prior to electing (A), (B) or (C) above. In the event the Outstanding aggregate principal amount of Series AA Variable Rate Bonds that are term bonds and are to be converted on the Conversion Date is less than the aggregate of the Amortization Requirements established for such term bond pursuant to Section 2 hereof and the Authority has made an election pursuant to this Section 9(c), the principal amount of Series AA Variable Rate Bonds to mature in any one or more years may be reduced by the Authority in any manner the Authority shall determine.

Section 10.  Mandatory Conversion to Fixed Rate Mode.  Series AA Variable Rate Bonds shall be converted to the Fixed Rate Mode in accordance with the provisions of this Appendix upon the happening of any of the events described below in this Section, and the Authority shall take all actions required to effect such Conversion.

NY1 5344276v10

CONFIDENTIAL

(i)    <u>Failure to Obtain Liquidity</u>.  If, at least ninety (90) days prior to (A) July 1, 2010 or (B) any other date on which in either case the Authority is required by the provisions of this Appendix to have a Liquidity Facility in effect for Series AA Variable Rate Bonds, the Authority has not obtained a Liquidity Facility in accordance with the provisions of this Appendix, then in each case, the Series AA Variable Rate Bonds for which a Liquidity Facility was required to be obtained shall be converted to the Fixed Rate Mode.

(ii)    <u>Expiration of a Liquidity Facility</u>.  If, at least ninety (90) days prior to the Expiration Date of a Liquidity Facility, such Expiration Date has not been extended and the Authority has not obtained a substitute Liquidity Facility that complies with Sections 29 and 30 hereof, the Series AA Variable Rate Bonds to which the expiring Liquidity Facility relates shall be converted to the Fixed Rate Mode.

(iii)    <u>Termination of a Liquidity Facility</u>.   As soon as practicable after receipt of a Default Notice or a Termination Notice from the Provider of a Liquidity Facility, the Series AA Variable Rate Bonds to which such Liquidity Facility relates shall be converted to the Fixed Rate Mode on a Conversion Date that is at least one Business Day prior to the Termination Date set forth in either such Notice.

(iv)    <u>Provider Holds Purchased Bonds for More than 44 Days in a Fiscal Year</u>.  If a Provider holds Purchased Bonds for more than 44 days in any fiscal year of the Authority, or any Purchased Bonds bear interest at the Maximum Rate, any such Purchased Bonds shall be converted to the Fixed Rate Mode.

(v)    <u>Two Failed Remarketings in a Fiscal Year</u>.   If a Remarketing Agent is unable to remarket all of the Series AA Variable Rate Bonds covered by its Remarketing Agreement twice in any fiscal year of the Authority, such Bonds shall be converted to the Fixed Rate Mode.

(vi)    <u>Auction Procedures Results in Series AA Variable Rate Bonds Having Maximum Auction Rate for 2 Consecutive Auctions or 60 Days</u>.   If the implementation of the Auction Procedures results in the applicable Series AA Variable Rate Bonds to bear interest at the Maximum Auction Rate for (A) two consecutive Auctions or (B) 60 consecutive days.

Section 11.  <u>Selection of Series AA Variable Rate Bonds to be Converted</u>.  If less than all of the Series AA Variable Rate Bonds of a Sub-Series are to be converted to a new Rate Mode or Rate Modes, the particular Series AA Variable Rate Bonds of such Sub-Series that are to be converted to a new Rate Mode or Rate Modes shall be selected by the Fiscal Agent in such manner as the Fiscal Agent deems appropriate, subject to the provisions hereof regarding Authorized Denominations of Series AA Variable Rate Bonds subject to such Rate Mode.

Section 12.  <u>Notices of Change in Rate Modes</u>.  (a)  <u>Conversion Notice</u>.  Not less than twenty (20) days prior to any proposed Conversion Date or, if the Series AA Variable Rate

NY1 5344276v10

CONFIDENTIAL

Bonds to be converted are Book Entry Bonds, such shorter period as the Depository will permit, the Authority shall deliver to the Fiscal Agent, the Tender Agent, the Depository and each affected Remarketing Agent, Auction Agent and Broker-Dealer a written notice of its Executive Director (a "**Conversion Notice**"), which notice shall be deemed received upon telephone confirmation of receipt thereof by the affected Remarketing Agent and by the Fiscal Agent, specifying (i) the Series AA Variable Rate Bonds to be converted, (ii) the Conversion Date or Conversion Dates, and (iii) the Rate Mode or Rate Modes that will be effective upon such Conversion.

(b)     Notice to Bondholders.   As soon as practicable after receipt of a Conversion Notice, but in any event not more than three (3) days after the date such Conversion Notice is received, the Tender Agent shall give notice by first-class mail to the Holders of the Series AA Variable Rate Bonds to be converted, which notice shall state in substance:

(i)     the Conversion Date;

(ii)     the Rate Mode or Rate Modes that will be effective after the proposed Conversion;

(iii)     if advised of them by the Authority, the ratings expected to be effective after such Conversion on the Series AA Variable Rate Bonds to be converted;

(iv)     that the applicable Series AA Variable Rate Bonds will not be so converted unless the Fiscal Agent receives on the Conversion Date an Opinion of Bond Counsel;

(v)     the name and address of the principal corporate trust offices of the Fiscal Agent and Tender Agent;

(vi)     that, the Series AA Variable Rate Bonds to be converted shall be subject to mandatory tender for purchase on the Conversion Date pursuant to Section 14 hereof at the Purchase Price;

(vii)     that, upon the Conversion, if and to the extent that there shall be on deposit with the Tender Agent on the Conversion Date an amount of Available Moneys sufficient to pay the Purchase Price of the Series AA Variable Rate Bonds so converted, such Series AA Variable Rate Bonds (or portions thereof in Authorized Denominations) not delivered to the Tender Agent on the Conversion Date shall be deemed to have been properly tendered for purchase and shall cease to constitute or represent a right on behalf of the Holder thereof to the payment of principal of or interest thereon and shall represent and constitute only the right to payment of the Purchase Price on deposit with the Tender Agent, without interest accruing thereon from and after the Conversion Date; and

(viii)     that, upon the Conversion to the Commercial Paper Mode, the Term Rate Mode, Fixed Rate Mode or the Auction Rate Mode, from and after the Conversion the Series AA Variable Rate Bonds so converted will no longer be

24

CONFIDENTIAL

subject to tender for purchase as provided in Section 13 or 14 hereof other than upon Conversion to another Rate Mode or on the Reset Date for Series AA Variable Rate Bonds in the Commercial Paper Mode or the Term Rate Mode.

Neither the failure to mail the foregoing notice to any Holders of the Series AA Variable Rate Bonds to be converted nor any defect therein shall affect the validity of any Rate, the change in the Rate Mode or Rate Modes, the mandatory tender of Series AA Variable Rate Bonds to be converted, or extend the period for tendering any Series AA Variable Rate Bonds for purchase. The Tender Agent shall not be liable to any Holder of a Series AA Variable Rate Bond by reason of its failure to mail such notice or any defect therein.

(c)     Additional Notice Parties. Each notice required by paragraph (a) or (b) of this Section shall also be given to each affected Insurer and Provider and to each Rating Service, but the giving of any such notice to such persons shall not be a condition precedent to any Conversion to a new Rate Mode or Rate Modes, to the effectiveness of any election made pursuant to Section 8(a) hereof or to the rescission of a Conversion Notice, and failure to give any such notice to such persons shall not affect the validity of the proceedings for any Conversion, continuance or rescission.

Section 13. Optional Tender for Purchase.

(a)     Book Entry Bonds. For so long as a Series AA Variable Rate Bond that is a Book Entry Bond and DTC is the Depository therefor bears interest at a Daily Rate or a Weekly Rate, a DTC Participant, acting on behalf of a Beneficial Owner, shall have the right to tender all or any portion, in an Authorized Denomination, of the principal amount of such Beneficial Owner's interest in such Series AA Variable Rate Bond for purchase on any Optional Tender Date, by the giving or delivering to the applicable Remarketing Agent and to the Tender Agent at their respective principal offices a Tender Notice which states (i) the aggregate principal amount in an Authorized Denomination of each Series AA Variable Rate Bond or portion thereof to be purchased and (ii) that such principal amount of the Series AA Variable Rate Bond (in an Authorized Denomination) shall be purchased on such Optional Tender Date pursuant to this Appendix.

Such Tender Notice shall be delivered, in the case of Series AA Variable Rate Bonds bearing interest at a Daily Rate, not later that 11:00 A.M., New York City time, on, and in the case of Series AA Variable Rate Bonds bearing interest at a Weekly Rate, not later than 5:00 P.M., New York City time, on the seventh calendar day prior to, the Optional Tender Date.

Any Tender Notice given or delivered in accordance with this paragraph (a) shall be irrevocable and shall be binding on the DTC Participant, the Beneficial Owner on whose behalf such notice was given and any transferee of such Beneficial Owner. The principal amount of the Series AA Variable Rate Bonds for which a Tender Notice has been given or delivered shall be deemed tendered on the Optional Tender Date without presentation or surrender of the Series AA Variable Rate Bonds to the Tender Agent. If there shall be on deposit with the Tender Agent on the Optional Tender Date Available Moneys sufficient to pay the Purchase Price of the Series AA Variable Rate Bonds or portion thereof to be tendered on such Optional Tender Date pursuant to a Tender Notice given pursuant to this paragraph (a), the Fiscal Agent shall request

25

CONFIDENTIAL                                                                                   HTA_STAY0002805

that ownership of such Series AA Variable Rate Bonds or portions thereof be recorded in the records of DTC as transferred to the applicable Remarketing Agent.

(b)     Other Bonds.  For so long as a Series AA Variable Rate Bond that is not a Book Entry Bond or DTC is not the Depository therefor bears interest at a Daily Rate or a Weekly Rate, the Holder of such Series AA Variable Rate Bond shall have the right to tender it (or a portion thereof in an Authorized Denomination) to the Tender Agent for purchase on any Optional Tender Date, but only upon:

(i)     giving or delivering to the applicable Remarketing Agent and to the Tender Agent at their respective principal offices, not later than 11:00 A.M., New York City time, on the Optional Tender Date in the case of Series AA Variable Rate Bonds bearing interest at a Daily Rate and not later than 5:00 P.M., New York City time, on the seventh calendar day prior to the Optional Tender Date in the case of Series AA Variable Rate Bonds bearing interest at a Weekly Rate, an irrevocable telephonic Tender Notice subsequently confirmed in writing on the same day, which Tender Notice states (A) the aggregate principal amount in an Authorized Denomination of the Series AA Variable Rate Bond to be purchased and (B) that such Series AA Variable Rate Bond (or portion thereof) shall be purchased on such Optional Tender Date pursuant to this Appendix; and

(ii)     delivery of such Series AA Variable Rate Bond (with an appropriate instrument of transfer duly executed in blank) to the Tender Agent at its principal office at or prior to 1:00 P.M., New York City time, on such Optional Tender Date, but no Series AA Variable Rate Bond (or portion thereof) shall be purchased unless the Series AA Variable Rate Bond so delivered to the Tender Agent shall conform in all respects to the description thereof in the aforesaid notice.

Any Tender Notice given or delivered in accordance with this paragraph (b) shall be irrevocable and shall be binding on the Bondholder giving or delivering such Tender Notice and on any transferee of such Bondholder.

Section 14. Mandatory Tender.   The Series AA Variable Rate Bonds are subject to mandatory tender for purchase at the Purchase Price on the following dates:

(i)     on July 1, 2010 (or such later date as provided in Section 8(e));

(ii)     on the applicable Conversion Date in the case of Series AA Variable Rate Bonds to be converted to a different Rate Mode, but a Series AA Variable Rate Bond being converted from one Auction Period to another Auction Period shall not be subject to tender;

(iii)     on each Reset Date in the case of Series AA Variable Rate Bonds in the Commercial Paper Mode or the Term Rate Mode;

(iv)     on a Business Day that is not less than three (3) Business Days prior to the Expiration Date of the applicable Liquidity Facility or Credit Facility

NY1 5344276v10

CONFIDENTIAL

in a form other than a Financial Guaranty Insurance Policy, unless the Expiration Date of the applicable Liquidity Facility or Credit Facility, as the case may be, has been extended at least ninety (90) days prior to such Expiration Date, in the case of Series AA Variable Rate Bonds to which such Facility relates;

(v) on the effective date of either (A) a Liquidity Facility for such Series AA Variable Rate Bonds if immediately prior thereto no Liquidity Facility was then in effect or (B) a substitute Liquidity Facility delivered pursuant to Section 29 hereof with respect to such Series AA Variable Rate Bonds (or if such date is not a Business Day, on the immediately preceding Business Day), in the case of Series AA Variable Rate Bonds for which such Liquidity Facility or substitute Liquidity Facility is being delivered; and

(vi) on a Business Day that is not less than one Business Day prior to the Termination Date of the Liquidity Facility specified in a Default Notice or Termination Notice delivered by the Provider or its agent in accordance with the provisions of the Liquidity Facility or the applicable Reimbursement Agreement, in the case of Series AA Variable Rate Bonds to which such Liquidity Facility relates.

Section 15. Notice of Mandatory Tender. Whenever Series AA Variable Rate Bonds are to be tendered for purchase upon Conversion to a new Rate Mode, the Tender Agent shall give the notices required by Section 12(b) hereof. Whenever Series AA Variable Rate Bonds are to be tendered for purchase upon expiration of a Liquidity Facility in accordance with Section 14(iv) hereof, the Tender Agent shall, not less than thirty (30) days prior to the stated Expiration Date of the Liquidity Facility, give notice by first-class mail to the Holders of the Series AA Variable Rate Bonds to be tendered that such Series AA Variable Rate Bonds are subject to mandatory tender for purchase on the date specified in Section 14(iv). Whenever Series AA Variable Rate Bonds are to be tendered for purchase upon the initial delivery of a Liquidity Facility, the delivery of a substitute Liquidity Facility or the termination of a Liquidity Facility in accordance with Section 14(v) or (vi) hereof, the Tender Agent shall, not less than five (5) days prior to the Termination Date of the Liquidity Facility then in effect or prior to the effective date of the delivery of the initial Liquidity Facility or of a substitute Liquidity Facility or prior to the date specified in the No Remarketing Notice or the Default Notice, give notice by first-class mail to the Holders of the Series AA Variable Rate Bonds to be tendered that such Series AA Variable Rate Bonds are subject to mandatory tender for purchase on the date specified in Section 14(v) or (vi).

Section 16. Tendered and Deemed Tendered Bonds. (a) If a Bondholder fails to deliver to the Tender Agent, on or before the applicable Tender Date, all or any portion of a Series AA Variable Rate Bond subject to mandatory tender for purchase or any Series AA Variable Rate Bond, other than a Book Entry Bond, for which an election to tender has been duly made, such Series AA Variable Rate Bond (or portion thereof) shall be deemed to have been properly tendered to the Tender Agent and the former Holder or Holders of such Bonds shall have no claim under this resolution or otherwise for any amount other than the Purchase Price thereof (and in the same manner and to the same extent provided in Section 303 of the 1968 Bond Resolution, to receive Series AA Variable Rate Bonds for any unpurchased portion thereof), and

27

CONFIDENTIAL

such Bonds or portions thereof shall cease to be entitled to any lien, benefit or security under the Bond Resolution or this resolution. To the extent that there shall be on deposit with the Tender Agent on the purchase date thereof Available Moneys sufficient to pay the Purchase Price of the Tendered Bonds, such Tendered Bonds shall cease to constitute or represent a right to payment of principal or interest thereon and shall constitute and represent only the right to the payment of the Purchase Price payable on such date. The foregoing shall not limit the right of any person who on a Record Date is the Holder of a Series AA Variable Rate Bond to receipt of interest, if any, due thereon on the date such Series AA Variable Rate Bond is required to be purchased.

(b) With respect to any Series AA Variable Rate Bonds or portions thereof required to be purchased pursuant to Sections 13 and 14 above as to which sufficient funds to accomplish such purchase are available to the Tender Agent at the respective times at which payment of the Purchase Price was to be made as provided herein:

(i) In the event that any Series AA Variable Rate Bonds or portions thereof required to be purchased pursuant to Sections 13 and 14 shall not be presented to the Fiscal Agent, the Tender Agent shall segregate in the Remarketing Proceeds Account and the Purchase Account, as appropriate, and, subject to Section 20 of this Appendix A, hold the moneys for the Purchase Price of such Bonds or portions thereof in trust, uninvested and without liability for interest thereon, for the benefit of the former Holders of such Bonds, who shall, except as provided below, thereafter be restricted exclusively to such moneys for the satisfaction of any claim for the Purchase Price of such Bonds or portions thereof.

(ii) The Tender Agent shall maintain a record of the Series AA Variable Rate Bonds or portions thereof tendered for purchase pursuant to Section 13 but not properly presented and any Series AA Variable Rate Bonds or portions thereof required to be tendered for purchase in accordance with Section 14 together with the names and addresses of the former Holders thereof.

(iii) The Tender Agent agrees to accept delivery of all Series AA Variable Rate Bonds surrendered to it in accordance with Sections 13 and 14 of this Appendix A, and to hold such Bonds in trust for the benefit of the respective Holders that shall have so surrendered such Bonds, until the Purchase Price of such Bonds shall have been delivered to or for the account of or to the order of such Holders or otherwise held by the Tender Agent pursuant to Section 19 and Section 20.

In purchasing Series AA Variable Rate Bonds hereunder, the Tender Agent shall be acting as a conduit and shall not be purchasing bonds for its own account and in the absence of written notice from the Authority shall be entitled to assume that any Series AA Variable Rate Bond tendered to it or deemed tendered to it for purchase is entitled under this resolution to be so purchased.

Section 17. <u>Purchase of Tendered Bonds</u>. On each Tender Date the Tendered Bonds shall be purchased (but only from Available Moneys) at the applicable Purchase Price, which

28

CONFIDENTIAL

shall be paid on the Tender Date. The Purchase Price for the Tendered Bonds shall be paid by the Tender Agent solely from Available Moneys in the Purchase and Remarketing Fund as provided in Section 20 hereof. Tendered Bonds so purchased shall be delivered as provided in Section 19 hereof. No Tendered Bond so purchased by or for the account of a Provider or with moneys made available by a Provider shall cease to be Outstanding solely by reason of such purchase.

Section 18. <u>Remarketing of Series AA Variable Rate Bonds</u>.

(a) <u>Duty to Remarket</u>. Except as otherwise provided in this Section, the applicable Remarketing Agent shall use its best efforts to remarket each Tendered Bond on its Tender Date at a price equal to the Purchase Price or, if such Series AA Variable Rate Bond is being remarketed upon its Conversion from the Term Rate Mode or the Fixed Rate Mode, such Series AA Variable Rate Bonds will be remarketed at a price equal to par or, if the Authority, the Fiscal Agent and each affected Insurer and Remarketing Agent shall have received an Opinion of Bond Counsel, such other price as the Secretary shall determine. By 12:00 P.M., New York City time, on each Tender Date, such Remarketing Agent shall give notice to the Fiscal Agent, the Tender Agent, the Authority and each affected Provider by telephonic or electronic means of the principal amount of Tendered Bonds for which it has arranged a remarketing (and such other particulars with respect thereto as the Authority or the Remarketing Agent deems necessary), along with the principal amount of Tendered Bonds, if any, for which it has not arranged a remarketing. Such Remarketing Agent shall transfer to the Tender Agent by 1:00 P.M., New York City time, on a Tender Date the proceeds of the remarketing of Tendered Bonds. By (x) 1:00 P.M., New York City time, on each Optional Tender Date and on each Mandatory Tender Date, and (y) 3:30 P.M., New York City time, on the Business Day prior to the Conversion Date, the Tender Agent shall notify the Authority and each affected Provider of the amount of the Purchase Price of Tendered Bonds not covered by remarketing proceeds. The failure to give the notice required by the preceding sentence shall not affect the right of the Tender Agent to obtain moneys under the applicable Liquidity Facility to pay such balance of the Purchase Price. By 1:30 P.M., New York City time, on each Tender Date, the Tender Agent shall take such actions as may be required under a Liquidity Facility to obtain moneys thereunder in an amount equal to the full Purchase Price of all Tendered Bonds to which such Liquidity Facility relates, less the proceeds of the remarketing of such Tendered Bonds theretofore transferred to the Tender Agent by the applicable Remarketing Agent. The Tender Agent shall notify the Authority of the amounts so obtained.

(b) <u>Deposit of Remarketing Proceeds</u>. All moneys received by the Tender Agent as proceeds of the remarketing of Tendered Bonds that have been transferred to the Tender Agent pursuant to this Section shall be deposited to the credit of and held by the Tender Agent in the Remarketing Proceeds Account. Additional amounts, if any, received by the Tender Agent from the Authority or a Provider shall be deposited with and held by the Tender Agent as provided in Section 20 hereof.

(c) <u>Limitation on Remarketings</u>. The applicable Remarketing Agent shall not, during any period in which a Liquidity Facility is in effect, remarket Tendered Bonds (A) if upon such remarketing the amount available to be drawn under the Liquidity Facility for the payment of the principal or Purchase Price of the outstanding Series AA Variable Rate Bonds to which

NY1 5344276v10

CONFIDENTIAL

HTA_STAY0002809

such Liquidity Facility relates is less than the principal of such Series AA Variable Rate Bonds that are not Purchased Bonds and the amount available to be drawn under such Liquidity Facility for payment of the interest on such Outstanding Series AA Variable Rate Bonds is less than the amount determined in accordance with Section 28(a) hereof, (B) if the Liquidity Facility then in effect with respect to such Tendered Bonds will expire or terminate within twenty (20) days after the Tender Date of the Tendered Bonds, unless and until such Liquidity Facility has been extended or a substitute Liquidity Facility shall have been delivered to the Tender Agent in accordance with Section 29 hereof and (C) if the Provider has delivered a Default Notice or a No Remarketing Notice and such Default Notice or No Remarketing Notice remains in effect and has not been annulled or rescinded.

(d) <u>Subsequent Remarketings</u>. In the event that the Remarketing Agent is able to remarket any Series AA Variable Rate Bonds (or portions thereof) required to be purchased pursuant to Section 13 and 14 above after the time on which the Remarketing Agent is required to provide notice to the Fiscal Agent as specified in Section 18(a), or in the event the Remarketing Agent is able to remarket any Purchased Bonds (or portions thereof), the Remarketing Agent shall give to the Fiscal Agent notice by the means, in the manner and containing the details set forth in Section 18(a) (assuming with respect to any remarketing of Purchased Bonds (or portions thereof) for purposes of such notice that such Bonds bear interest at the rate at which the Series AA Variable Rate Bonds (other than Purchased Bonds) bore interest during the period that such Purchased Bonds were held by the Provider or its nominee).

(e) <u>No Reissuance Intended</u>. It is the express intention of the Authority that any purchase, sale or transfer of Series AA Variable Rate Bonds, as provided in this Appendix A, shall not constitute or be construed to be the extinguishment of any Series AA Variable Rate Bonds or other indebtedness represented thereby or the reissuance of any Series AA Variable Rate Bonds.

(f) <u>Treatment of Owners of Series AA Variable Rate Bonds by Remarketing Agent</u>. The Remarketing Agent may treat the owner of a Series AA Variable Rate Bond as the absolute owner thereof for all purposes and to the same extent as the Authority and the Fiscal Agent may by virtue of Section 205 of the 1968 Bond Resolution.

Section 19. <u>Delivery of Purchased Series AA Variable Rate Bonds</u>. Series AA Variable Rate Bonds purchased pursuant to Section 13 or Section 14 hereof shall be delivered as follows:

(i) Series AA Variable Rate Bonds (or portions thereof) purchased with Available Moneys described in paragraph "first" of Section 20(d) hereof, upon receipt of payment therefor, shall be authenticated and delivered by the Fiscal Agent to the respective purchasers thereof or, in the case of Book Entry Bonds, be recorded in the records of DTC as a transfer of ownership of such Bonds to the accounts of the DTC Participants purchasing such Bonds;

(ii) Purchased Bonds purchased with Available Moneys described in paragraph "second" of Section 20(d) hereof, upon receipt of payment therefor, shall be registered in the name or for the account of the appropriate Provider or, at the Provider's direction, in the name of a Qualified Purchaser, or, in the case of

30

CONFIDENTIAL

Book Entry Bonds, be recorded in the records of DTC as a transfer of ownership of such Bonds to the account of the Provider or, at the direction of the Provider, to the account of a Qualified Purchaser. Series AA Variable Rate Bonds issued in respect of Purchased Bonds that are not Book Entry Bonds shall be (a) delivered to and held by the Fiscal Agent on behalf of the Provider or (b) if requested by the Provider, delivered to and held by the Provider, a Qualified Purchaser or a designee thereof. The Fiscal Agent shall not deliver a Purchased Bond to the purchaser thereof upon a remarketing unless the Provider has released such Purchased Bond for such purpose whereupon, pursuant to the Liquidity Facility, the amount available to be paid under any Liquidity Facility then in effect shall have been reinstated in the amount equal to the Purchase Price of such released Purchased Bonds, plus accrued interest thereon, if any; and

(iii)     Series AA Variable Rate Bonds purchased with Available Moneys described in paragraph "third" of Section 20(d) hereof shall be cancelled by the Fiscal Agent.

Section 20.   <u>Purchase and Remarketing Fund</u>.

(a)     <u>Establishment of and Deposits to Fund</u>.  A special fund is hereby created to be held by the Tender Agent and designated "Puerto Rico Highways and Transportation Authority Series AA Variable Rate Bonds, Purchase and Remarketing Fund."  The following Accounts shall be established within the Purchase and Remarketing Fund: (i) the Purchase Account, (ii) the Remarketing Proceeds Account and (iii) the Other Available Moneys Account. Neither the Purchase Account nor the Remarketing Proceeds Account nor the moneys derived from the remarketing of Tendered Bonds or from the Liquidity Facility from time to time on deposit therein is pledged to or charged with payment of the interest on or principal, Redemption Price or, except as expressly provided herein, purchase price of any Series AA Variable Rate Bond. The Purchase Account, the Remarketing Proceeds Account and the moneys on deposit therein are hereby pledged by the Authority to secure payment of the Purchase Price of Tendered Bonds. Amounts in the Purchase Account and the Remarketing Proceeds Account shall be held separate and apart from and not be commingled with any other amounts held under this Appendix or with any other moneys of the Authority, the Tender Agent or the Fiscal Agent. The moneys in the Purchase and Remarketing Fund shall not be invested.

(b)     All amounts received by the Tender Agent representing the proceeds from the remarketing of Tendered Bonds shall be deposited to the credit of the Remarketing Proceeds Account and shall be used only for the payment of the Purchase Price of Tendered Bonds so remarketed as provided in Section 18 hereof or for the payment of Purchased Bonds purchased by a Provider and subsequently remarketed. All amounts drawn on a Liquidity Facility to pay the Purchase Price of Tendered Bonds shall be deposited to the credit of the Purchase Account and used only for the payment of the Purchase Price of Tendered Bonds as provided in Section 18 hereof. All other Available Moneys to be applied to the payment of the Purchase Price of Tendered Bonds shall be deposited in the Other Available Moneys Account and used only for the payment of the Purchase Price of Tendered Bonds in the manner specified in Section 18 hereof or for the payment of the Provider for Tendered Bonds purchased by it.

31

CONFIDENTIAL

(c)     No moneys provided by the Authority shall be accepted for deposit to the credit of the Purchase Account or the Remarketing Proceeds Account, nor shall any such moneys, if deposited by mistake or otherwise, be used to pay the Purchase Price of Tendered Bonds.

(d)     The Purchase Price of Tendered Bonds shall be paid solely with Available Moneys on deposit in the Accounts within the Purchase and Remarketing Fund in the following order of priority:

first: from Available Moneys in the Remarketing Proceeds Account;

second: from Available Moneys in the Purchase Account; and

third: from Available Moneys in the Other Available Moneys Account.

Section 21. <u>Payment of Series AA Variable Rate Bonds</u>.  Interest shall be payable (i) during any Daily Rate Period, Commercial Paper Rate Period, Weekly Rate Period or Auction Period, in immediately available funds payable by check mailed to each registered owner of a Series AA Variable Rate Bond on the Record Date immediately preceding such Interest Payment Date to the address thereof as it appears on the registration books of the Authority, or, at the request of a registered owner, by wire transfer to such registered owner at the wire transfer address in the United States to which such registered owner has (not later than the Record Date immediately preceding such Interest Payment Date) directed the Fiscal Agent to wire such interest payment, and, (ii) during any Term Rate Period or the Fixed Rate Period, in immediately available funds by check mailed to each registered owner of a Series AA Variable Rate Bond on the Record Date to the address thereof as it appears on such registration books; provided, however, that (x) interest payable on any Interest Payment Date during which the Series AA Variable Rate Bonds are Book Entry Bonds shall be paid by wire transfer to the Depository for the Series AA Variable Rate Bonds or its nominee, at the wire transfer address therefor, and (y) interest on Purchased Bonds shall be paid by wire transfer to the registered owner of such Purchased Bonds at the wire transfer address in the United States to which such registered owner has (not less than five (5) days prior to the applicable Record Date) directed the Fiscal Agent to wire such interest payment.  Interest payable on each Interest Payment Date shall be the interest accrued and unpaid to and including the day preceding such Interest Payment Date.

The Series AA Variable Rate Bonds shall bear interest as provided herein from, and including, the Issue Date to, but excluding, the date on which the Series AA Variable Rate Bonds mature computed on the basis of a three hundred sixty-five-(365-) or three hundred sixty-six-(366-) day year, as appropriate, and actual days elapsed during any Initial Rate Period, any Daily Rate Period, any Commercial Paper Rate Period or any Weekly Rate Period, and a three hundred sixty (360) day year of twelve 30-day months during any Term Rate Period and the Fixed Rate Period.  Interest on Series AA Variable Rate Bonds in the Auction Rate Mode with an Auction Period of one hundred eighty (180) days or less shall be calculated on the basis of a three hundred sixty-(360-) day year for the actual number of days elapsed.  Interest on Series AA Variable Rate Bonds in the Auction Rate Mode with an Auction Period of more than one hundred eighty (180) days shall be calculated on the basis of a three hundred sixty- (360-) day

32

NY1 5344276v10

year of twelve 30-day months.  Interest on Purchased Bonds shall be calculated based upon a 360 day year for the actual number of days elapsed.

Absent manifest error, the interest rates contained in the records of Fiscal Agent shall be conclusive and binding upon the Authority, the applicable Remarketing Agent, each Broker-Dealer, the Fiscal Agent, the applicable Provider and the Holders.

Section 22.  Appointment of Remarketing Agent.  The Authority shall, prior to the Conversion of any Series AA Variable Rate Bonds to the Daily Rate Mode, the Commercial Paper Mode, the Weekly Rate Mode or the Term Rate Mode (but only if a Term Rate Period is less than five years), appoint and employ the services of one or more Remarketing Agents for such Series AA Variable Rate Bonds.  The Authority shall also appoint one or more Remarketing Agents in connection with the mandatory tender of the Series AA Variable Rate Bonds on July 1, 2010 in accordance with Section 14(i) hereof.

Section 23.  Powers and Duties of Remarketing Agent.  Each Remarketing Agent shall be authorized by law to perform all the duties imposed upon it hereby, the Remarketing Agreement and the Liquidity Facility (or its related Reimbursement Agreement).  Acceptance of the duties and obligations of each Remarketing Agent hereunder and under its Remarketing Agreement and the Liquidity Facility (or its related Reimbursement Agreement) shall be signified and acknowledged by its execution of the Remarketing Agreement.  Each Remarketing Agreement shall provide that the Remarketing Agent will, inter alia:

(a)     determine the Rates and Rate Periods and give notice of such Rates and Rate Periods in accordance with Sections 3 and 4 hereof;

(b)     keep such books and records with respect to its duties as Remarketing Agent as shall be consistent with prudent industry practice; and

(c)     use its best efforts to remarket Tendered Bonds (including Purchased Bonds) in accordance herewith and the terms of its Remarketing Agreement.

The Remarketing Agreement may contain such other provisions as the Authority deems necessary or advisable.

Section 24.  Change of Remarketing Agent.  The Authority may remove a Remarketing Agent with the prior written consent of the applicable Insurer and shall, at the written direction of the Insurer, remove the corresponding Remarketing Agent upon the breach by such Remarketing Agent of its duties, responsibilities and obligations under the Remarketing Agreeement.  Any Remarketing Agent may resign at such times and upon such conditions as provided in its Remarketing Agreement.  Upon such removal or resignation the Authority shall appoint a successor thereto.

Section 25.  Successor Remarketing Agents.

(a)     Any person which succeeds to the business of a Remarketing Agent as a whole or substantially as a whole, whether by sale, merger, consolidation or otherwise, shall,

NY1 5344276v10

CONFIDENTIAL                                                                 HTA_STAY0002813

with the written consent of the applicable Insurer, thereby become vested in all the property, rights and powers of such Remarketing Agent hereunder.

(b)   In the event that a Remarketing Agent shall resign, be removed or be dissolved, or if the property or affairs of a Remarketing Agent shall be taken under control of any state, Commonwealth or federal court or administrative body because of bankruptcy or insolvency, or for any other reason, the Authority shall appoint or cause the appointment of a successor within thirty (30) days of any such action.

(c)   Each successor Remarketing Agent shall at all times be either a member of the National Association of Securities Dealers, Inc. or registered as a dealer of municipal securities under the Securities Exchange Act of 1934, as amended, and have net capital of at least $50,000,000. The Fiscal Agent shall give written notice to the Holders of Series AA Variable Rate Bonds for which the Remarketing Agent is serving, to each affected Provider and to each Rating Service of any resignation, removal or appointment of the Remarketing Agent.

(d)   If, at any time and for any reason, there is no person serving as Remarketing Agent for Series AA Variable Rate Bonds in the Commercial Paper Mode, the Daily Rate Mode, the Term Rate Mode (if a Term Rate Period is less than five years) or the Weekly Rate Mode, the Fiscal Agent shall assume the duties of Remarketing Agent solely for the purpose of accepting notices of tender and shall have no other duties whatsoever as Remarketing Agent hereunder.

Section 26.   Appointment of Auction Agent.   Prior to but in connection with the Conversion of any Series AA Variable Rate Bonds to the Auction Rate Mode, the Authority shall appoint one or more Auction Agents for such Series AA Variable Rate Bonds. The Fiscal Agent shall have the right to remove an Auction Agent at the written direction of the Authority, as provided in the Auction Agreement. The Fiscal Agent shall, upon a written direction of an Insurer, remove an Auction Agent for the Series AA Variable Rate Bonds insured by a Financial Guaranty Insurance Policy issued by such Insurer if such Auction Agent fails to comply with its obligations under the Auction Agreement.

Section 27.   Broker-Dealers.   Prior to but in connection with the Conversion of any Series AA Variable Rate Bonds to the Auction Rate Mode, the Authority shall appoint and employ the services of one or more persons to serve as Broker-Dealer for the Series AA Variable Rate Bonds. The Auction Agent and the Authority shall execute an agreement with each Broker-Dealer appointed by the Authority, which agreement shall contain such terms as shall be acceptable to the Auction Agent and the Authority. Such Agreement shall provide that a Broker-Dealer may be replaced at the direction of the Authority, who thereupon shall appoint a new Broker-Dealer for one or more of the Series AA Variable Rate Bonds. The Authority shall deliver a written notice to the Fiscal Agent, the Auction Agent and the applicable Depository of any such change in Broker-Dealers, which notice shall specify for each Series AA Variable Rate Bond, the existing Broker-Dealer and the new Broker-Dealer. The notice required by this Section shall be delivered to the Fiscal Agent, the Auction Agent and such Depository no later than the Business Day preceding the last Auction Date on which the affected Broker-Dealer will serve as Broker-Dealer.

34

CONFIDENTIAL

Section 28.  Liquidity Facilities.

(a)      Prior to either (i) any Conversion Date on which Series AA Variable Rate Bonds are to be converted to the Daily Rate Mode, Weekly Rate Mode, Commercial Paper Mode or Term Rate Mode where the Term Rate Period following such Conversion will be less than five years or (ii) with respect to Series AA Variable Rate Bonds in the Term Rate Mode, the establishment on a Reset Date of a Term Rate Period of less than five years, the Authority shall obtain a Liquidity Facility for all, but not less than all such Series AA Variable Rate Bonds. Such Liquidity Facility must meet the requirements of Sections 29 and 30 hereof applicable to the substitution of a Liquidity Facility and to the additional requirements, if any, contained in the respective Insurance Agreements (as defined in this resolution), but a Liquidity Facility that does not meet the requirements of such Sections may be delivered with the prior written consent thereto of each Insurer of the Series AA Variable Rate Bonds to which such Liquidity Facility will relate.

The minimum amount of moneys available to be obtained under a Liquidity Facility on any date shall be the sum of (i) the principal amount of Series AA Variable Rate Bonds to which the Liquidity Facility relates that are outstanding on such date (other than Purchased Bonds or Series AA Variable Rate Bonds held by or for the account of the Authority), plus (ii) an amount with respect to interest on such Series AA Variable Rate Bonds equal to interest accruing for such period and at such rate of interest as in the determination of the Authority is necessary in order to maintain the ratings on such Series AA Variable Rate Bonds from each Rating Service. The Authority shall at or prior to the effective date of any Liquidity Facility deliver to the Fiscal Agent a Certificate of Determination setting forth (i) the required amount of the Liquidity Facility and the calculation of the components thereof with respect to the payment of the principal of and interest on the Series AA Variable Rate Bonds to which such Liquidity Facility relates and (ii) the interest rate and the number of days of interest accruing at such rate used to calculate the interest component of the Liquidity Facility.

(b)      The Fiscal Agent and the Tender Agent shall take such actions as may be required by the Liquidity Facility in accordance with its terms to obtain moneys at the times and in the amounts sufficient to pay the Purchase Price of Tendered Bonds to which the Liquidity Facility relates, less the amount available therefor in the Remarketing Proceeds Account, as the same becomes due and payable.

(c)      Notwithstanding anything herein to the contrary, moneys obtained under a Liquidity Facility shall not be deemed the property of the Authority and shall be applied solely in accordance with the terms hereof.  In no event will moneys obtained under a Liquidity Facility be applied to the payment of the principal, Redemption Price or purchase price of or interest on any Bonds other than the Series AA Variable Rate Bonds to which the Liquidity Facility relates.

Tendered Bonds (or portions thereof in Authorized Denominations), any portion of the Purchase Price of which shall have been paid with moneys obtained under a Liquidity Facility, shall remain outstanding and shall not be deemed to be paid by the Authority within the meaning of the 1968 Bond Resolution, and be Purchased Bonds and shall be registered in the name of the applicable Provider or a Qualified Purchaser or a designee of either, at the direction of the Provider, and upon such registration, the Series AA Variable Rate Bonds issued in respect

35

CONFIDENTIAL

thereof shall be (a) delivered to and held by the Fiscal Agent on behalf of the Provider or (b) if requested by the Provider, delivered to and held by the Provider, a Qualified Purchaser or a designee thereof, as owner.

The Fiscal Agent and the Tender Agent shall have no lien on the moneys obtained under a Liquidity Facility or the proceeds of the remarketing of tendered Series AA Variable Rate Bonds in respect of its compensation or other amounts owing to it.  Neither the Tender Agent nor the Fiscal Agent shall seek indemnification prior to obtaining moneys under a Liquidity Facility, making payments to Bondholders or effecting a mandatory tender of the Series AA Variable Rate Bonds.

The Tender Agent shall furnish to each Provider such notices as are required under the terms of the Liquidity Facility, including, without limitation, all notices for obtaining moneys, transfers, cancellations and increases or decreases in the amount available thereunder.

Section 29.  Substitution or Replacement of Liquidity Facility.

(a)   Upon satisfaction of the requirements set forth in Section 30 and in the Liquidity Facility, the Authority may, and, if the long-term ratings of the Provider have been reduced to below the highest category, by any Rating Service, must, replace a Liquidity Facility with a substitute Liquidity Facility.   In no event shall an existing Liquidity Facility be surrendered to the Provider thereof upon delivery of a substitute Liquidity Facility until a drawing to pay the Purchase Price of the Series AA Variable Rate Bonds tendered for purchase pursuant to Section 14(iv) hereof and not remarketed has been honored by such Provider.  No substitute Liquidity Facility that does not comply with the requirements of Section 30 hereof shall be delivered unless each Insurer of any Series AA Variable Rate Bonds to which the substitute Liquidity Facility will relate has given its prior written consent thereto.

Section 30.  Requirements of Liquidity Facilities.

(a)   Requirements.  Any Liquidity Facility or the applicable Reimbursement Agreement, unless each Insurer of any such Series AA Variable Rate Bonds has otherwise given its prior written consent, must:

(i)   Be in the form of an irrevocable letter of credit or Standby Purchase Agreement;

(ii)   Be by or with a Provider whose financial strength will result in the short-term ratings assigned to the such Series AA Variable Rate Bonds to be in the highest rating category of by each of the Rating Services;

(iii)   Provide money at the times and in the amounts specified in Section 28 hereof for the payment of the Purchase Price of such Series AA Variable Rate Bonds;

(iv)   Not expire by its terms less than three years after its effective date;

36

CONFIDENTIAL

(v)     Provide that, if a Financial Guaranty Insurance Policy is in effect for such Series AA Variable Rate Bonds and no Provider Default by the Insurer of any such Series AA Variable Rate Bonds is then continuing, a Default Notice may only be given if the ratings assigned to obligations insured by the Insurer of any such Series AA Variable Rate Bonds has been withdrawn, suspended or reduced to "A" by Standard & Poor's Rating Services and Moody's Investors Service, Inc. or their respective successors or assigns and, if the Series AA Variable Rate Bonds are then so rated by any other Rating Service, to the equivalent rating by any such other Service;

(vi)     Provide that, if a Financial Guaranty Insurance Policy is in effect for any such Series AA Variable Rate Bonds, the Liquidity Facility may be terminated prior to its stated Expiration Date pursuant to a Termination Notice only if a Provider Default by the Insurer of any such Series AA Variable Rate Bonds has occurred and is continuing;

(vii)     Provide that, if a Financial Guaranty Insurance Policy is in effect for any such Series AA Variable Rate Bonds and no Provider Default by the Insurer of any such Series AA Variable Rate Bonds is then continuing, the Provider of the Liquidity Facility may not require the Authority to purchase or redeem Purchased Bonds, or declare due and payable any amount advanced pursuant to the Liquidity Facility for the purchase of Series AA Variable Rate Bonds, prior to the shorter of (i) the tenth anniversary of the date on which such Purchased Bonds became Purchased Bonds or such amount was advanced and (ii) the stated Expiration Date of the Liquidity Facility without regard to its earlier termination, but in no event may the Provider require such purchase or redemption or declare such amount due and payable earlier than one year after such Purchased Bonds became Purchased Bonds or such amount was advanced;

(viii)     Provide that pursuant to the provisions of Section 602 of the 1968 Bond Resolution, the Authority covenants and agrees that all amounts payable to the Provider under the Reimbursement Agreement in excess of the amount payable on any Purchased Bonds shall be payable on parity with the principal of an interest on all bonds outstanding under the 1968 Bond Resolution; provided, however, that until Section 802(c) of the 1968 Bond Resolution is amended as provided in said Section 602, payments of such excess amount shall be subordinate to payments of principal of and interest on said bonds; and

(ix)     Provide that the Provider thereof shall, not less than one hundred twenty (120) days prior to the Expiration Date of the Liquidity Facility, give written notice of its intention not to renew such Liquidity Facility.

Notwithstanding the foregoing provisions of paragraph (a)(vi) of this Section, if a Provider Default has occurred and is continuing by the Insurer of particular Series AA Variable Rate Bonds the Liquidity Facility for such Series AA Variable Rate Bonds or applicable Reimbursement Agreement may provide that the Provider may, at its election, tender any

37

CONFIDENTIAL

Purchased Bonds to the Authority for purchase or redemption prior to maturity upon such terms as the Provider and the Authority may agree.

(b) <u>Documents to be Delivered</u>. Prior to the initial delivery under this Appendix or the substitution of any Liquidity Facility, each applicable Insurer shall have consented to such delivery and there shall have been delivered to the Tender Agent:

(i) an executed copy of the Reimbursement Agreement authorizing such Liquidity Facility, if applicable;

(ii) an opinion of counsel to the Provider acceptable in substance to the Authority and applicable Insurer to the effect that such (A) Liquidity Facility constitutes a legal, valid and binding obligation of such Provider enforceable in accordance with its terms; and (B) either (i) the acceptance by the Fiscal Agent of such Liquidity Facility will not require that the Series AA Variable Rate Bonds or such Liquidity Facility be registered under the Securities Act of 1933, as amended, or the qualification of any indenture under the Trust Indenture Act of 1939, as amended, or (ii) any registration statement required to be filed under the Securities Act of 1933, as amended, with respect to such Bonds or such Liquidity Facility is effective under such Act, and any such indenture has been duly qualified under the Trust Indenture Act of 1939, as amended;

(iii) an Opinion of Bond Counsel with respect to the initial delivery or the substitution of the Liquidity Facility;

(iv) a Rating Confirmation Notice;

(v) written evidence satisfactory to the Fiscal Agent of the purchase of all Purchased Bonds, at a price equal to the principal amount thereof plus accrued and unpaid interest, and payment of all amounts owing to the Provider then being replaced under its Reimbursement Agreement; and

(vi) such other documents and opinions as the Fiscal Agent or the applicable Insurer may reasonably request.

If at any time prior to the expiration or other replacement of the Liquidity Facility there shall have been delivered to the Fiscal Agent a substitute Liquidity Facility and the documents mentioned above, then the Fiscal Agent shall accept such substitute Liquidity Facility and surrender any previously held Liquidity Facility to the appropriate Provider for cancellation in accordance with its terms. If at any time all the Series AA Variable Rate Bonds shall be deemed to have been paid within the meaning and with the effect expressed in this resolution and the Bond Resolution, the Fiscal Agent shall surrender any Liquidity Facility relating thereto to the appropriate Provider for cancellation in accordance with its terms. The Fiscal Agent shall comply with the procedures set forth in any Liquidity Facility relating to the termination thereof.

In the event of a default by the Provider under its Liquidity Facility, the Fiscal Agent is hereby authorized and required to enforce all of its rights in and under the Liquidity Facility, by such actions, at law or in equity, as it deems necessary in order to protect the interest of the

38

CONFIDENTIAL

Holders of the Series AA Variable Rate Bonds. No default by the Provider under the terms of its Liquidity Facility shall relieve or reduce any obligations of the Authority under this resolution or the 1968 Bond Resolution.

(c)     Amendments and Extensions. No Liquidity Facility shall be amended without the consent of the Fiscal Agent, the Tender Agent and each Insurer of any Series AA Variable Rate Bonds to which such Liquidity Facility relates. Neither the Fiscal Agent nor the Tender Agent shall consent to any such amendment of a Liquidity Facility that, in the reasonable judgment of either, would adversely affect the interests of any of the Holders of the Series AA Variable Rate Bonds to which such Liquidity Facility relates, unless such amendment shall not become effective until after the date on which there is a mandatory tender of the Series AA Variable Rate Bonds to which the Liquidity Facility relates. For the purposes of this Section, an "amendment" of the Liquidity Facility shall not include an extension thereof. The Authority shall give notice of the termination, extension or substitution of any Liquidity Facility to each Rating Service. The Fiscal Agent and Tender Agent shall be entitled conclusively to rely upon an opinion of counsel, which counsel shall be satisfactory to the Fiscal Agent and Tender Agent, with respect to whether any amendment adversely affects in any material respect the interests of the Holders of then Outstanding Series AA Variable Rate Bonds to which such Liquidity Facility relates. No Liquidity Facility may be extended or renewed on terms that are materially different from the terms of the Liquidity Facility then in effect, without the prior written consent to such extension of each Insurer of any Series AA Variable Rate Bonds to which such Liquidity Facility relates.

Section 31. Transfer of Liquidity Facility. The Tender Agent shall, on or prior to the effective date of its resignation or removal pursuant to this Appendix, cause the transfer of any and all Liquidity Facilities in accordance with its terms to the successor Fiscal Agent and Tender Agent.

Section 32. Assignment of CUSIP Numbers. On or prior to the effective date of a Liquidity Facility for a Sub-Series of Series AA Variable Rate Bonds, the Authority shall obtain for such Sub-Series ten (10) additional CUSIP numbers that shall be reserved for assignment solely to Purchased Bonds, as and when purchased by the Provider. Thereafter, if useful to facilitate the transfer of Purchased Bonds, the Authority shall obtain additional CUSIP numbers that shall be reserved for assignment solely to Purchased Bonds of such Sub-Series.

Upon the delivery of a Purchased Bond, or the transfer of ownership interests therein if such Purchased Bond is a Book Entry Bond, pursuant to Section 19 hereof, the Fiscal Agent, at the direction of the Authority, shall arrange for such Purchased Bond, or ownership interests therein, to be assigned a CUSIP number identifying such Purchased Bond as bearing interest at the Purchased Bond Rate from the date of purchase thereof. The CUSIP number so assigned to such Purchased Bond shall remain in effect (i) so long as such Series AA Variable Rate Bond is a Purchased Bond and (ii) until interest accrued thereon shall have been paid to the registered owner of such Purchased Bond, whereupon such Series AA Variable Rate Bond shall be assigned a CUSIP number not specifically reserved for Purchased Bonds, identifying such Series AA Variable Rate Bond as bearing interest from the date of such assignment, at the same Rate as Series AA Variable Rate Bonds which are not Purchased Bonds.

39

CONFIDENTIAL

Section 33.  Appointment of Tender Agent.  The Fiscal Agent shall serve as Tender Agent for the Series AA Variable Rate Bonds.  The Tender Agent shall be entitled to all of the protections afforded the Fiscal Agent under this Appendix.

Section 34.  Powers and Duties of Tender Agent.  The Tender Agent shall perform all the duties imposed upon it hereby, and, if reasonably acceptable to the Tender Agent, by any Liquidity Facility (or related Reimbursement Agreement) in effect from time to time and the Remarketing Agreement.

The Tender Agent makes no representations as to the validity or sufficiency hereof, or of the Series AA Variable Rate Bonds, or in respect of the security afforded hereby, and the Tender Agent shall not incur any responsibility in respect thereof.  The Tender Agent shall not be liable in connection with the performance of its duties hereunder except for its own gross negligence or willful misconduct.

The Tender Agent shall not be liable for any action taken or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it hereby.

The duties and obligations of the Tender Agent shall be determined by the express provisions hereof, and the Tender Agent shall not be liable except for the performance of such duties and obligations as are specifically set forth herein.

Section 35.  Property Held in Trust.  All moneys and securities conveyed to or held by the Tender Agent at any time pursuant to the terms hereof shall be and hereby are assigned, transferred and set over unto the Tender Agent in trust for the purposes and under the terms and conditions hereof.

Section 36.  Compensation.  Unless otherwise provided by contract with the Tender Agent, the Authority shall pay to the Tender Agent, from time to time, such compensation as shall be agreed in writing for all services rendered by it hereunder, and also all reasonable expenses, charges, counsel fees and expenses and other disbursements, including those of their attorneys, agents and employees, incurred in and about the performance of its powers and duties hereunder.  The Tender Agent shall have no lien therefor on any funds at any time held by it hereunder.  The Authority shall, to the extent permitted by law, indemnify and save the Tender Agent harmless against any liabilities which it may incur in the acceptance, exercise and performance of its powers and duties hereunder and which are not due to its gross negligence or willful misconduct.  None of the provisions contained herein shall require the Tender Agent to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties or in the exercise of any of its rights or powers, if there is reasonable ground for believing that the repayment of such funds or liability is not reasonably assured to it.  The Tender Agent shall not be required to take any action at the request or direction of a Provider made or given pursuant hereto unless and until such Provider shall have indemnified and saved the Tender Agent harmless against any liabilities and all reasonable expenses, charges, counsel fees and expenses and other disbursements, including those of the Tender Agent's attorneys, agents and employees, incurred in connection with or as a result of taking the action requested or directed by the Provider to be taken.  The provisions of this Section shall survive the resignation or

40

CONFIDENTIAL

removal of the Tender Agent or the Series AA Variable Rate Bond being paid or deemed paid in accordance with this Appendix.

The rights, privileges, protections, immunities and benefits given the Tender Agent, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by the Tender Agent in each of its capacities hereunder, and to each agent, custodian and other person employed by the Tender Agent to act hereunder.

The provisions of this Section shall survive termination of this Appendix.

Section 37. <u>Permitted Acts</u>. The Tender Agent may become the owner of or may deal in Series AA Variable Rate Bonds as fully and with the same rights as if it were not such Tender Agent. The Tender Agent may act as depository for, and permit any of its officers or directors to act as a member of, or in any other capacity with respect to, the Authority or any committee formed to protect the rights of Holders of Series AA Variable Rate Bonds or to effect or aid in any reorganization growing out of the enforcement hereof or of the Series AA Variable Rate Bonds or this Appendix whether or not such committee shall represent the Holders of a majority in principal amount of the outstanding Series AA Variable Rate Bonds in respect of which any such action is taken.

Section 38. <u>Removal or Resignation of Tender Agent</u>. The Tender Agent may not resign or be removed except upon its resignation or removal as Fiscal Agent. No such removal or resignation shall take effect until a successor Fiscal Agent has been appointed.

Section 39. <u>Transfer of Rights and Property to Successor Tender Agent</u>. Any successor Tender Agent appointed under the provisions hereof shall execute, acknowledge and deliver to its predecessor, and also to the Authority, an instrument accepting such appointment, and thereupon such successor, without any further act, deed or conveyance shall become fully vested with all moneys, estates, properties, rights, powers, duties and obligations of its predecessor hereunder, with like effect as if originally appointed as Tender Agent. However, the Tender Agent then ceasing to act shall nevertheless, on request by the Authority or of such successor, and upon payment of all amounts owed to it by the Authority hereunder, execute, acknowledge and deliver such instruments of conveyance and further assurance and do such other things as may reasonably be required for more fully and certainly vesting and confirming in such successor all the right, title and interest of such Tender Agent in and to any property held by it hereunder, and shall pay over, assign and deliver to such successor any moneys or other properties subject to the trusts and conditions set forth herein. Should any deed, conveyance or instrument in writing from the Authority be required by such successor for more fully and certainly vesting in and confirming to it any such moneys, estates, properties, rights, powers, duties or obligations, any and all such deeds, conveyances and instruments in writing shall, on request, and so far as may be authorized by law, be executed, acknowledged and delivered by the Authority.

Section 40. <u>Approval of Other Instruments</u>. The execution and delivery by the Executive Director of the Authority and if a party thereto, the officers and agents of the Fiscal Agent, of one or more of the Remarketing Agreements, the Auction Agent Agreement and one or more agreements with each Broker-Dealer as provided in Section 27 hereof are hereby authorized, and

NY1 5344276v10

CONFIDENTIAL

HTA_STAY0002821

each of said agreements shall be substantially in the respective forms presented to me on the date of this Appendix and attached hereto as Exhibits D and E and shall be executed in the manner therein set forth, subject to such changes, insertions and omissions as may be approved by the person executing the same, his or her execution of the Remarketing Agreement to be conclusive evidence of any such approval.

Section 41.  <u>Series AA Variable Rate Bonds Not to be Defeased Prior to Effectiveness of Fixed Rate</u>.  The Authority agrees that it will not defease any Series AA Variable Rate Bond pursuant to Section 901 of the 1968 Bond Resolution prior to the effectiveness of a change to the Fixed Rate Mode.

Section 42.  <u>Unscheduled Non-Business Day</u>.  Notwithstanding anything to the contrary in this Appendix, if any payment, action or notice required by this Appendix is required or scheduled for an Unscheduled Non-Business Day, such payment, action or notice shall take place on the next Business Day and no default shall exist solely because of the failure to make such payment, take such action or give such notice on the Unscheduled Non-Business Day.

NY1 5344276v10

CONFIDENTIAL

HTA_STAY0002822

EXHIBIT A

TO

Appendix A of the Resolution

Auction Rate Mode Provisions

43

CONFIDENTIAL

HTA_STAY0002823

## AUCTION RATE MODE PROVISIONS

### ARTICLE I
### DEFINITIONS

SECTION 1.01  Definitions ............................................................................................  A-1

### ARTICLE II
### AUCTION PROCEDURES

SECTION 2.01.  Beneficial Interests.....................................................................................  A-7

SECTION 2.02.  Orders by Existing Owners and Potential Owners ...................................  A-7

SECTION 2.03.  Submission of Orders by Broker-Dealers to Auction Agent....................  A-9

SECTION 2.04.  Determination of Auction Rate.................................................................  A-11

SECTION 2.05.  Allocation of Series AA Variable Rate Bonds .........................................  A-11

SECTION 2.06.  Notice of Auction Rate..............................................................................  A-15

SECTION 2.07  Index...........................................................................................................  A-16

SECTION 2.08.  Changes in Auction Period or Auction Date ...........................................  A-17

SECTION 2.09.  Miscellaneous Provisions Regarding Auctions ........................................  A-18

### ARTICLE III
### AUCTION AGENT

SECTION 3.01.  Qualifications of Auction Agent; Resignation; Removal.........................  A-19

### ARTICLE IV

### ADDITIONAL AUCTION RATE MODE PROVISIONS
### AS SET FORTH IN THE INSURANCE AGREEMENTS.

-i-

CONFIDENTIAL

# EXHIBIT A

## AUCTION RATE MODE PROVISIONS

## ARTICLE I

## DEFINITIONS

SECTION 1.01.  **Definitions.**  In addition to the words and terms elsewhere defined herein, or whose defined meanings are incorporated by reference, the following words and terms as used in this Exhibit A and elsewhere in this Appendix have the following meanings with respect to the Series AA Variable Rate Bonds in an Auction Rate Mode unless the context or use indicates another or different meaning or intent:

**Agent Member** means a member of, or participant in, the Securities Depository who shall act on behalf of a Bidder.

**Auction** means each periodic implementation of the Auction Procedures.

**Auction Agent** means the auctioneer appointed in accordance with Section 3.01 of this Exhibit A.

**Auction Agreement** means an agreement by and among the Authority, the Auction Agent and the Fiscal Agent pursuant to which the Auction Agent agrees to follow the procedures specified in this Exhibit A, with respect to the Series AA Variable Rate Bonds in an Auction Rate Mode, as such agreement may from time to time be amended or supplemented.

**Auction Date** means during any period in which the Auction Procedures are not suspended in accordance with the provisions hereof, (i) if the Series AA Variable Rate Bonds are in a daily Auction Period, each Business Day, (ii) if the Series AA Variable Rate Bonds are in a Special Auction Period, the last Business Day of the Special Auction Period, and (iii) if the Series AA Variable Rate Bonds are in any other Auction Period, the Business Day next preceding each Interest Payment Date for such Bonds (whether or not an Auction shall be conducted on such date); *provided, however,* that the last Auction Date with respect to Series AA Variable Rate Bonds in an Auction Period other than a daily Auction Period or Special Auction Period shall be the earlier of (a) the Business Day next preceding the Interest Payment Date next preceding the Conversion Date for such Series AA Variable Rate Bonds and (b) the Business Day next preceding the Interest Payment Date next preceding the Maturity Date for such Series AA Variable Rate Bonds; *provided, further,* that if the Series AA Variable Rate Bonds are in a daily Auction Period, the last Auction Date shall be the earlier of (x) the Business Day next preceding the Conversion Date for such Series AA Variable Rate Bonds and (y) the Business Day next preceding the Maturity Date for the Series AA Variable Rate Bonds.  The last Business Day of a Special Auction Period shall be the Auction Date for the Auction Period which begins on the next succeeding Business Day, if any.  On the Business Day preceding the Conversion

NY1 5344276v10

CONFIDENTIAL

from a daily Auction Period to another Auction Period, there shall be two Auctions, one for the last daily Auction Period and one for the first Auction Period following the Conversion.

**Auction Multiple** means, as of any Auction Date, the percentage of the Index (in effect on such Auction Date) determined as set forth below, based on the Prevailing Rating of the Series AA Variable Rate Bonds in effect at the close of business on the Business Day immediately preceding such Auction Date:

| Prevailing Rating | Percentage of Index |
|---|---|
| AAA/AAA/Aaa | 125% |
| AA/AA/Aa | 150 |
| A/A/A | 175 |
| BBB/BBB/Baa | 200 |
| Below BBB/BBB/Baa | 225 |

**Auction Period** means:

(i) a Special Auction Period;

(ii) with respect to Series AA Variable Rate Bonds in a daily Auction Period, a period beginning on each Business Day and extending to but not including the next succeeding Business Day;

(iii) with respect to Series AA Variable Rate Bonds in a seven-day Auction Period, a period of generally seven (7) days beginning on a weekday and ending on the weekday that is seven days thereafter (unless such weekday is not followed by a Business Day, in which case ending on the first day thereafter that is next succeeded by a Business Day);

(iv) with respect to Series AA Variable Rate Bonds in a 28-day Auction Period, a period of generally twenty-eight (28) days beginning on a Friday and ending on the fourth Thursday thereafter (unless such Thursday is not followed by a Business Day, in which case ending on the first day thereafter that is next succeeded by a Business Day);

(v) with respect to Series AA Variable Rate Bonds in a 35-day Auction Period, a period of generally thirty-five (35) days beginning on a Friday and ending on the fifth Thursday thereafter (unless such Thursday is not followed by a Business Day, in which case ending on the first day thereafter that is next succeeded by a Business Day);

(vi) with respect to Series AA Variable Rate Bonds in a three-month Auction Period, a period of generally three months (or shorter period upon a conversion from another Auction Period) beginning on the day following the last day of the prior Auction Period and ending on the first day of the month that is the third calendar month following the beginning date of such Auction Period (unless such first day of the month is not followed by a Business Day, in which case ending on the first day thereafter that is next succeeded by a Business Day); and

A-2

CONFIDENTIAL

(vii) with respect to Series AA Variable Rate Bonds in a six-month Auction Period, a period of generally six months (or shorter period upon a Conversion from another Auction Period) beginning on the day following the last day of the prior Auction Period and ending on the next succeeding May 15th or November 15th (unless such May 15th or November 15th is not followed by a Business Day, in which case ending on the first day thereafter that is the next succeeded by a Business Day);

*provided, however,* that (a) if there is a Conversion of Series AA Variable Rate Bonds (i) from a daily Auction Period to a seven-day Auction Period, the next Auction Period shall begin on the date of the Conversion (i.e. the Interest Payment Date for the prior Auction Period) and shall end on the weekday next succeeding the weekday on which the seven-day Auction Period is to commence(unless such weekday on which such Auction Period is to end is not followed by a Business Day, in which case ending on the first day thereafter that is next succeeded by a Business Day), (ii) from a daily Auction Period to a 28-day Auction Period, the next Auction Period shall begin on the date of the Conversion (i.e., the Interest Payment Date for the prior Auction Period) and shall end on the Thursday (unless such Thursday is not followed by a Business Day, in which case ending on the first day thereafter that is next succeeded by a Business Day) which is more than twenty-one (21) days but not more than twenty-eight (28) days from such date of Conversion, and (iii) from a daily Auction Period to a 35-day Auction Period, the next Auction Period shall begin on the date of the Conversion (i.e. the Interest Payment Date for the prior Auction Period) and shall end on Thursday (unless such Thursday is not followed by a Business Day, in which case ending on the first day thereafter that is next succeeded by a Business Day) which is more than twenty-eight (28) days but no more than thirty-five (35) days from such date of Conversion.

**Auction Procedures** means the procedures for conducting Auctions for Series AA Variable Rate Bonds in an Auction Rate Mode set forth in this Exhibit A.

**Auction Rate** means for each Series AA Variable Rate Bonds for each Auction Period (other than the initial Auction Period), (i) if Sufficient Clearing Bids exist, the Winning Bid Rate; *provided, however,* if all of such Series AA Variable Rate Bonds are the subject of Submitted Hold Orders, the Minimum Auction Rate with respect to such Series AA Variable Rate Bonds and (ii) if Sufficient Clearing Bids do not exist, the Maximum Auction Rate with respect to such Series AA Variable Rate Bonds.

**Available Bonds** means for Series AA Variable Rate Bonds on each Auction Date, the aggregate principal amount of such Series AA Variable Rate Bonds that are not the subject of Submitted Hold Orders.

**Bid** has the meaning specified in subsection (a) of Section 2.02 of this Exhibit A.

**Bidder** means each Existing Owner and Potential Owner who places an Order.

**Broker-Dealer** means any entity that is permitted by law to perform the function required of a Broker-Dealer described in this Exhibit that is a member of, or a direct participant in, the Securities Depository, that has been selected by the Authority, that is a party to a Broker-Dealer Agreement with the Auction Agent, that is either a member of the National Association of

CONFIDENTIAL

Securities Dealers, Inc. or registered as a dealer of municipal securities under the Securities Exchange Act of 1934, as amended, and that has net capital of at least $125,000,000.

**Broker-Dealer Agreement** means an agreement among the Auction Agent, the Authority and a Broker-Dealer pursuant to which such Broker-Dealer agrees to follow the procedures described in this Exhibit A, as such agreement may from to time be amended or supplemented.

**Default Rate** means, in respect of any Auction Period other than a daily Auction Period, a per annum rate equal to two hundred fifty percent (250%) of the Index determined on the Auction Date next preceding the first day of such Auction Period or in the case of a daily Auction Period, two hundred fifty percent (250%) of the Index determined on the Auction Date which was the first day of such Auction Period; *provided, however,* the Default Rate shall not exceed the Maximum Rate.

**Existing Owner** means a Person who is listed as the beneficial owner of Series AA Variable Rate Bonds in the records of the Auction Agent.

**Hold Order** has the meaning specified in paragraph (a) of Section 2.02 of this Exhibit A.

**Index** shall have the meaning specified in Section 2.07 of this Exhibit A.

**Interest Payment Date** means:

(a)   when used with respect to any Auction Period other than a daily Auction Period or a Special Auction Period, the Business Day immediately following such Auction Period;

(b)   when used with respect to a daily Auction Period, the first Business Day of the month immediately succeeding such Auction Period; and

(c)   when used with respect to a Special Auction Period of (i) seven (7) or more but fewer than ninety-two (92) days, the Business Day immediately following such Special Auction Period, or (ii) ninety-two (92) or more days, each thirteenth Monday after the first day of such Special Auction Period or the next Business Day if such Monday is not a Business Day and on the Business Day immediately following such Special Auction Period.

**Maximum Auction Rate** means as of any Auction Date, the product of the Index multiplied by the Auction Multiple; *provided, however,* that in no event shall the Maximum Auction Rate exceed the Maximum Rate, anything herein to the contrary notwithstanding.

**Minimum Auction Rate** means, as of any Auction Date, forty-five percent (45%) of the Index in effect on such Auction Date; *provided, however,* in no event shall the Minimum Auction Rate exceed the Maximum Auction Rate.

A-4

CONFIDENTIAL

**No Auction Rate** means, as of any Auction Date, the rate determined by multiplying the Percentage of Index set forth below, based on the Prevailing Rating of the such Bonds in effect at the close of business on the Business Day immediately preceding such Auction Date, by the Index:

| Prevailing Rating | Percentage of Index |
|---|---|
| AAA/AAA/Aaa | 65% |
| AA/AA/Aa | 75 |
| A/A/A | 85 |
| BBB/Baa | 100 |
| Below BBB/Baa | 150 |

*provided, however,* that in no event shall the No Auction Rate exceed the Maximum Auction Rate.

**Order** means a Hold Order, Bid or Sell Order.

**Potential Owner** means any person, including any Existing Owner, who may be interested in acquiring a beneficial interest in the Series AA Variable Rate Bonds in addition to the Series AA Variable Rate Bonds currently beneficially owned by such Person, if any.

"**Prevailing Rating** means, (i) when such term is used in the definition of the No Auction Rate, (a) AAA/AAA/Aaa, if the Series AA Variable Rate Bonds shall have a rating of AAA or better by S&P and Fitch and a rating of Aaa or better by Moody's, (b) if not AAA/AAA/Aaa, AA/AA/Aa if the Series AA Variable Rate Bonds shall have a rating of AA- or better by S&P and Fitch and a rating of Aa3 or better by Moody's, (c) if not AAA/AAA/Aaa or AA/AA/Aa, A/A/A if the Series AA Variable Rate Bonds shall have a rating of A- or better by S&P and Fitch and a rating of A3 or better by Moody's, and (d) if not AAA/AAA/Aaa, AA/AA/Aa or A/A/A, then below A/A/A, whether or not the Series AA Variable Rate Bonds are rated by any Rating Service, and (ii) when such term is used in the definition of the Auction Multiple, (a) AAA/AAA/Aaa, if the Series AA Variable Rate Bonds shall have a rating of AAA or better by S&P and Fitch and a rating of Aaa or better by Moody's, (b) if not AAA/AAA/Aaa, AA/AA/Aa if the Series AA Variable Rate Bonds shall have a rating of AA- or better by S&P and Fitch and a rating of Aa3 or better by Moody's, (c) if not AAA/AAA/Aaa or AA/AA/Aa, A/A/A if the Series AA Variable Rate Bonds shall have a rating of A- or better by S&P and Fitch and a rating of A3 or better by Moody's, (d) if not AAA/AAA/Aaa, AA/AA/Aa or A/A/A, BBB/BBB/Baa if the Series AA Variable Rate Bonds shall have a rating of BBB- or better by S&P and Fitch and a rating of Baa3 or better by Moody's, and (e) if not AAA/AAA/Aaa, AA/AA/Aa, A/A/A or BBB/BBB/Baa, then below BBB/BBB/Baa, whether or not the Series AA Variable Rate Bonds are rated by any Rating Service. For purposes of this definition, S&P's and Fitch's rating categories of "AAA," "AA-," "A-" and "BBB-" and Moody's rating categories of "Aaa," "Aa3," "A3" and "Baa3" shall be deemed to refer to and include the respective rating categories correlative thereto in the event that any such Rating Service shall have changed or modified their generic rating categories or if any successor thereto appointed in accordance with the definitions thereof shall use different rating categories. If the Series AA Variable Rate Bonds

NY1 5344276v10

CONFIDENTIAL

are not rated by a Rating Service, the requirement of a rating by such Rating Service shall be disregarded.  If the ratings for the Series AA Variable Rate Bonds are split between two of the foregoing categories, the lower rating shall determine the Prevailing Rating.  If there is no rating, then the Auction Rate shall be the Maximum Auction Rate.

**Principal Office** means, with respect to the Auction Agent, the office thereof designated in the Auction Agreement as the office of the Auction Agent to which notices, requests or communications should be sent.

**Securities Depository** or **Depository** means The Depository Trust Company and its successors and assigns or any other securities depository selected by the Authority which agrees to follow the procedures required to be followed by such securities depository in connection with the Series AA Variable Rate Bonds.

**Sell Order** has the meaning specified in paragraph (a) of Section 2.02 of this Exhibit A.

**Special Auction Period** means any period of not less than seven nor more than three years which is not another Auction Period and which begins on an Interest Payment Date and ends on a Sunday unless such Sunday is not followed by a Business Day, in which case on the next succeeding day which is followed by a Business Day.

**Submission Deadline** means 1:00 p.m., New York City time, on each Auction Date for Series AA Variable Rate Bonds not in a daily Auction Period and 11:00 a.m., New York City time, on each Auction Date for Series AA Variable Rate Bonds in a daily Auction Period, or such other time on such date as shall be specified from time to time by the Auction Agent pursuant to the Auction Agreement as the time by which Broker-Dealers are required to submit Orders to the Auction Agent.

**Submitted Bid** has the meaning specified in paragraph (b) of Section 2.04 of this Exhibit A.

**Submitted Hold Order** has the meaning specified in paragraph (b) of Section 2.04 of this Exhibit A.

**Submitted Order** has the meaning specified in paragraph (b) of Section 2.04 of this Exhibit A.

**Submitted Sell Order** has the meaning specified in paragraph (b) of Section 2.04 of this Exhibit A.

**Sufficient Clearing Bids** means an Auction for which the aggregate principal amount of Series AA Variable Rate Bonds that are the subject of Submitted Bids by Potential Owners specifying one or more rates not higher than the Maximum Auction Rate is not less than the aggregate principal amount of Series AA Variable Rate Bonds that are the subject of Submitted Sell Orders and of Submitted Bids by Existing Owners specifying rates higher than the Maximum Auction Rate.

A-6

CONFIDENTIAL

**Winning Bid Rate** means the lowest rate specified in any Submitted Bid for Series AA Variable Rate Bonds which if selected by the Auction Agent as the Auction Rate would cause the aggregate principal amount of Series AA Variable Rate Bonds that are the subject of Submitted Bids specifying a rate not greater than such rate to be not less than the aggregate principal amount of Available Bonds.

## ARTICLE II

## AUCTION PROCEDURES

**SECTION 2.01. Beneficial Interests**.  Each reference to the purchase, sale or holding of Series AA Variable Rate Bonds shall refer to beneficial interests in such Series AA Variable Rate Bonds, unless the context clearly requires otherwise.

During an Auction Rate Mode, so long as the ownership of the Series AA Variable Rate Bonds is maintained in book-entry form by the Securities Depository, an Existing Owner or a beneficial owner may sell, transfer or otherwise dispose of a Series AA Variable Rate Bond only pursuant to a Bid or Sell Order in accordance with the Auction Procedures or to or through a Broker-Dealer, provided that (i) in the case of all transfers other than pursuant to Auctions such Existing Owner or its Broker-Dealer or its Agent Member advises the Auction Agent of such transfer and (ii) a sale, transfer or other disposition of Series AA Variable Rate Bonds from a customer of a Broker-Dealer who is listed on the records of that Broker-Dealer as the holder of such Series AA Variable Rate Bonds to that Broker-Dealer or another customer of that Broker-Dealer shall not be deemed to be a sale, transfer or other disposition for purposes of this paragraph if such Broker-Dealer remains the Existing Owner of Series AA Variable Rate Bonds so sold, transferred or disposed of immediately after such sale, transfer or disposition.

**SECTION 2.02. Orders by Existing Owners and Potential Owners**.  (a) Prior to the Submission Deadline on each Auction Date:

(i)     each Existing Owner may submit to a Broker-Dealer, in writing or by such other method as shall be reasonably acceptable to such Broker-Dealer, information as to:

(A)     the principal amount of Series AA Variable Rate Bonds, if any, held by such Existing Owner which such Existing Owner irrevocably commits to continue to hold for the next succeeding Auction Period without regard to the rate determined by the Auction Procedures for such Auction Period,

(B)     the principal amount of Series AA Variable Rate Bonds, if any, held by such Existing Owner which such Existing Owner irrevocably commits to continue to hold for the next succeeding Auction Period if the rate determined by the Auction Procedures for such Auction Period shall not be less than the rate per annum then specified by such Existing Owner (and which such Existing Owner irrevocably offers to sell on the next succeeding Interest Payment Date (or the same day in the case of a daily Auction Period) if the rate determined by the Auction Procedures for the next succeeding Auction Period shall be less than the rate per annum then specified by such Existing Owner), and/or

A-7

CONFIDENTIAL

(C)     the principal amount of Series AA Variable Rate Bonds, if any, held by such Existing Owner which such Existing Owner irrevocably offers to sell on the next succeeding Interest Payment Date (or on the same day in the case of a daily Auction Period) without regard to the rate determined by the Auction Procedures for the next succeeding Auction Period; and

(ii)     for the purpose of implementing the Auctions and thereby to achieve the lowest possible interest rate on the Series AA Variable Rate Bonds, the Broker-Dealers shall contact Potential Owners, including Persons that are Existing Owners, to determine the principal amount of Series AA Variable Rate Bonds, if any, which each such Potential Owner irrevocably offers to purchase if the rate determined by the Auction Procedures for the next succeeding Auction Period is not less than the rate per annum then specified by such Potential Owner.

For the purposes hereof, an Order containing the information referred to in clause (i)(A) above is herein referred to as a "**Hold Order**", an Order containing the information referred to in clause (i)(B) or (ii) above is herein referred to as a "**Bid**", and an Order containing the information referred to in clause (i)(C) above is herein referred to as a "**Sell Order**."

(b)(i)     A Bid by an Existing Owner shall constitute an irrevocable offer to sell:

(A)     the principal amount of Series AA Variable Rate Bonds specified in such Bid if the rate determined by the Auction Procedures on such Auction Date shall be less than the rate specified therein; or

(B)     such principal amount or a lesser principal amount of Series AA Variable Rate Bonds to be determined as described in paragraph (a)(v) of Section 2.05 of this Exhibit A if the rate determined by the Auction Procedures on such Auction Date shall be equal to such specified rate; or

(C)     a lesser principal amount of Series AA Variable Rate Bonds to be determined as described in paragraph (b)(iv) of Section 2.05 of this Exhibit A if such specified rate shall be higher than the Maximum Auction Rate and Sufficient Clearing Bids do not exist.

(ii)     A Sell Order by an Existing Owner shall constitute an irrevocable offer to sell:

(A)     the principal amount of Series AA Variable Rate Bonds specified in such Sell Order; or

(B)     such principal amount or a lesser principal amount of Series AA Variable Rate Bonds as described in paragraph (b)(iv) of Section 2.05 of this Exhibit A if Sufficient Clearing Bids do not exist.

(iii)     A Bid by a Potential Owner shall constitute an irrevocable offer to purchase:

NY1 5344276v10

(A)     the principal amount of Series AA Variable Rate Bonds specified in such Bid if the rate determined by the Auction Procedures on such Auction Date shall be higher than the rate specified therein; or

(B)     such principal amount or a lesser principal amount of Series AA Variable Rate Bonds as described in paragraph (a)(vi) of Section 2.05 of this Exhibit A if the rate determined by the Auction Procedures on such Auction Date shall be equal to such specified rate.

(c)     Anything herein to the contrary notwithstanding:

(i)     for purposes of any Auction, any Order which specifies Series AA Variable Rate Bonds to be held, purchased or sold in a principal amount which is not equal to the Authorized Denomination for Series AA Variable Rate Bonds or an integral multiple thereof shall be rounded down to the nearest amount that is equal to the Authorized Denomination for Series AA Variable Rate Bonds, and the Auction Agent shall conduct the Auction Procedures as if such Order had been submitted in such lower amount;

(ii)     for purposes of any Auction other than during a daily Auction Period, any portion of an Order of an Existing Owner which relates to a Series AA Variable Rate Bonds which has been called for redemption on or prior to the Interest Payment Date next succeeding such Auction shall be invalid with respect to such portion and the Auction Agent shall conduct the Auction Procedures as if such portion of such Order had not been submitted; and

(iii)     for purposes of any Auction other than during a daily Auction Period, no portion of a Series AA Variable Rate Bonds which has been called for redemption on or prior to the Interest Payment Date next succeeding such Auction shall be included in the calculation of Available Bonds for such Auction; and

(iv)     the Auction Procedures shall be suspended immediately upon the occurrence (and for so long as the same shall not have been remedied) of (A) a failure to pay principal of or interest on the Series AA Variable Rate Bonds and (B) any failure by the applicable Insurer to honor a duly submitted claim for payment under its Financial Guaranty Insurance Policy.

**SECTION 2.03. Submission of Orders by Broker-Dealers to Auction Agent.** (a) Each Broker-Dealer shall submit to the Auction Agent in writing or by such other method as shall be reasonably acceptable to the Auction Agent, including such electronic communication acceptable to the parties, prior to the Submission Deadline on each Auction Date, all Orders obtained by such Broker-Dealer and, if requested, specifying with respect to each Order:

(i)     the name of the Bidder placing such Order;

(ii)     the aggregate principal amount of Series AA Variable Rate Bonds, if any, that are the subject of such Order;

A-9

CONFIDENTIAL

(iii)    to the extent that such Bidder is an Existing Owner:

(A)    the principal amount of Series AA Variable Rate Bonds, if any, subject to any Hold Order placed by such Existing Owner;

(B)    the principal amount of Series AA Variable Rate Bonds, if any, subject to any Bid placed by such Existing Owner and the rate specified in such Bid; and

(C)    the principal amount of Series AA Variable Rate Bonds, if any, subject to any Sell Order placed by such Existing Owner; and

(iv)    to the extent such Bidder is a Potential Owner, the rate specified in such Bid.

(b)    If any rate specified in any Bid contains more than three figures to the right of the decimal point, the Auction Agent shall round such rate up to the next highest one thousandth of one percent (0.001%).

(c)    If an Order or Orders covering all of the Series AA Variable Rate Bonds held by an Existing Owner is not submitted to the Auction Agent prior to the Submission Deadline, the Auction Agent shall deem a Hold Order to have been submitted on behalf of such Existing Owner covering the principal amount of Series AA Variable Rate Bonds held by such Existing Owner and not subject to Orders submitted to the Auction Agent; *provided, however,* that if there is a conversion from one Auction Period to another Auction Period and Orders have not been submitted to the Auction Agent prior to the Submission Deadline covering the aggregate principal amount of Series AA Variable Rate Bonds to be converted held by such Existing Owner, the Auction Agent shall deem a Sell Order to have been submitted on behalf of such Existing Owner covering the principal amount of Series AA Variable Rate Bonds to be converted held by such Existing Owner not subject to Orders submitted to the Auction Agent.

(d)    If one or more Orders covering in the aggregate more than the principal amount of Outstanding Series AA Variable Rate Bonds held by any Existing Owner are submitted to the Auction Agent, such Orders shall be considered valid as follows:

(i)    all Hold Orders shall be considered Hold Orders, but only up to and including in the aggregate the principal amount of Series AA Variable Rate Bonds held by such Existing Owner;

(ii)    (A) any Bid of an Existing Owner shall be considered valid as a Bid of an Existing Owner up to and including the excess of the principal amount of Series AA Variable Rate Bonds held by such Existing Owner over the principal amount of the Series AA Variable Rate Bonds subject to Hold Orders referred to in subparagraph (i) above;

(B)    subject to clause (A) above, all Bids of an Existing Owner with the same rate shall be aggregated and considered a single Bid of an Existing Owner up to and including the excess of the principal amount of Series AA Variable Rate Bonds held by such Existing

A-10

CONFIDENTIAL

Owner over the principal amount of Series AA Variable Rate Bonds held by such Existing Owner subject to Hold Orders referred to in subparagraph (i) above;

(C)     subject to clause (A) above, if more than one Bid with different rates is submitted on behalf of such Existing Owner, such Bids shall be considered Bids of an Existing Owner in the ascending order of their respective rates up to the amount of the excess of the principal amount of Series AA Variable Rate Bonds held by such Existing Owner over the principal amount of Series AA Variable Rate Bonds held by such Existing Owner subject to Hold Orders referred to in subparagraph (i) above; and

(D)     the principal amount, if any, of such Series AA Variable Rate Bonds subject to Bids not considered to be Bids of an Existing Owner under this subparagraph (ii) shall be treated as the subject of a Bid by a Potential Owner;

(iii)     all Sell Orders shall be considered Sell Orders, but only up to and including a principal amount of Series AA Variable Rate Bonds equal to the excess of the principal amount of Series AA Variable Rate Bonds held by such Existing Owner over the sum of the principal amount of the Series AA Variable Rate Bonds considered to be subject to Hold Orders pursuant to subparagraph (i) above and the principal amount of Series AA Variable Rate Bonds considered to be subject to Bids of such Existing Owner pursuant to subparagraph (ii) above.

(e)     If more than one Bid is submitted on behalf of any Potential Owner, each Bid submitted with the same rate shall be aggregated and considered a single Bid and each Bid submitted with a different rate shall be considered a separate Bid with the rate and the principal amount of Series AA Variable Rate Bonds specified therein.

(f)     None of the Authority, the Fiscal Agent and the Auction Agent shall be responsible for the failure of any Broker-Dealer to submit an Order to the Auction Agent on behalf of any Existing Owner or Potential Owner.

**SECTION 2.04.   Determination of Auction Rate.**  (a) Not later than 9:30 a.m., New York City time, on each Auction Date for Series AA Variable Rate Bonds in an Auction Rate Mode, the Auction Agent shall advise the Broker-Dealers and the Fiscal Agent by telephone or other electronic communication acceptable to the parties of the Minimum Auction Rate, the Maximum Auction Rate and the Index for the Series AA Variable Rate Bonds.

(b)     Promptly after the Submission Deadline on each Auction Date for Series AA Variable Rate Bonds in an Auction Rate Mode, the Auction Agent shall assemble all Orders submitted or deemed submitted to it by the Broker-Dealers (each such Order as submitted or deemed submitted by a Broker-Dealer being hereinafter referred to as a "**Submitted Hold Order**", a "**Submitted Bid**" or a "**Submitted Sell Order**", as the case may be, and collectively as a "**Submitted Order**") and shall determine (i) the Available Bonds, (ii) whether there are Sufficient Clearing Bids, and (iii) the Auction Rate.

(c)     Promptly after the Auction Agent has made the determinations pursuant to paragraph (b) above, the Auction Agent shall advise the Authority, the Fiscal Agent and the Broker-Dealer by telephone (promptly confirmed in writing), or facsimile transmission or other

A-11

NY1 5344276v10

electronic communication acceptable to the parties of the Auction Rate for the next succeeding Auction Period and the Fiscal Agent shall promptly notify the Securities Depository of such Auction Rate.

(d)     In the event the Auction Agent fails to calculate, or for any reason fails to timely provide, the Auction Rate for any Auction Period, the Auction Rate for such Auction Period, with respect to the Series AA Variable Rate Bonds, shall be the No Auction Rate; *provided, however*, that if the Auction Procedures are suspended pursuant to clause (iv) of paragraph (c) of Section 2.02 of this Exhibit A with respect to any Series AA Variable Rate Bonds, the Auction Rate for the next succeeding Auction Period shall be the Default Rate.

(e)     In the event that all of the conditions for a change in the Rate Mode applicable to the Series AA Variable Rate Bonds from an Auction Mode to any other Rate Mode pursuant to Section 3.03 of this Appendix have not been met or in the event of a failure to change the length of the current Auction Period due to the lack of Sufficient Clearing Bids at the Auction on the Auction Date for the first new Auction Period, the Auction Rate for the next Auction Period shall be the Maximum Auction Rate and the Auction Period shall be a seven-day Auction Period.

(f)     If the Series AA Variable Rate Bonds are not rated or if the Series AA Variable Rate Bonds are no longer maintained in book-entry form by the Securities Depository, then the Auction Rate shall be the Maximum Auction Rate.

**SECTION 2.05.  Allocation of Series AA Variable Rate Bonds**.  (a)  In the event of Sufficient Clearing Bids for Series AA Variable Rate Bonds, subject to the further provisions of paragraphs (c) and (d) below, Submitted Orders for such Series AA Variable Rate Bonds shall be accepted or rejected as follows in the following order of priority:

(i)     the Submitted Hold Order of each Existing Owner shall be accepted, thus requiring each such Existing Owner to continue to hold the Series AA Variable Rate Bonds that are the subject of such Submitted Hold Order;

(ii)     the Submitted Sell Order of each Existing Owner shall be accepted and the Submitted Bid of each Existing Owner specifying any rate that is higher than the Winning Bid Rate shall be rejected, thus requiring each such Existing Owner to sell the Series AA Variable Rate Bonds that are the subject of such Submitted Sell Order or Submitted Bid;

(iii)     the Submitted Bid of each Existing Owner specifying any rate that is lower than the Winning Bid Rate shall be accepted, thus requiring each such Existing Owner to continue to hold the Series AA Variable Rate Bonds that are the subject of such Submitted Bid;

(iv)     the Submitted Bid of each Potential Owner specifying any rate that is lower than the Winning Bid Rate shall be accepted, thus requiring each such Potential Owner to purchase the Series AA Variable Rate Bonds that are the subject of such Submitted Bid;

A-12

CONFIDENTIAL

(v)      the Submitted Bid of each Existing Owner specifying a rate that is equal to the Winning Bid Rate shall be accepted, thus requiring each such Existing Owner to continue to hold the Series AA Variable Rate Bonds that are the subject of such Submitted Bid, but only up to and including the principal amount of Series AA Variable Rate Bonds obtained by multiplying (A) the aggregate principal amount of Outstanding Series AA Variable Rate Bonds which are not the subject of Submitted Hold Orders described in subparagraph (i) above or of Submitted Bids described in subparagraphs (iii) or (iv) above by (B) a fraction the numerator of which shall be the principal amount of Outstanding Series AA Variable Rate Bonds held by such Existing Owner subject to such Submitted Bid and the denominator of which shall be the aggregate principal amount of Outstanding Series AA Variable Rate Bonds subject to such Submitted Bids made by all such Existing Owners that specified a rate equal to the Winning Bid Rate, and the remainder, if any, of such Submitted Bid shall be rejected, thus requiring each such Existing Owner to sell any excess amount of Series AA Variable Rate Bonds;

(vi)      the Submitted Bid of each Potential Owner specifying a rate that is equal to the Winning Bid Rate shall be accepted, thus requiring each such Potential Owner to purchase the Series AA Variable Rate Bonds that are the subject of such Submitted Bid, but only in an amount equal to the principal amount of Series AA Variable Rate Bonds obtained by multiplying (A) the aggregate principal amount of Outstanding Series AA Variable Rate Bonds which are not the subject of Submitted Hold Orders described in subparagraph (i) above or of Submitted Bids described in subparagraphs (iii), (iv) or (v) above by (B) a fraction the numerator of which shall be the principal amount of Outstanding Series AA Variable Rate Bonds subject to such Submitted Bid and the denominator of which shall be the sum of the aggregate principal amount of Outstanding Series AA Variable Rate Bonds subject to such Submitted Bids made by all such Potential Owners that specified a rate equal to the Winning Bid Rate, and the remainder of such Submitted Bid shall be rejected; and

(vii)      the Submitted Bid of each Potential Owner specifying any rate that is higher than the Winning Bid Rate shall be rejected.

(b)      In the event there are not Sufficient Clearing Bids for Series AA Variable Rate Bonds, subject to the further provisions of paragraphs (c) and (d) below, Submitted Orders, for each Series AA Variable Rate Bonds shall be accepted or rejected as follows in the following order of priority:

(i)      the Submitted Hold Order of each Existing Owner shall be accepted, thus requiring each such Existing Owner to continue to hold the Series AA Variable Rate Bonds that are the subject of such Submitted Hold Order;

(ii)      the Submitted Bid of each Existing Owner specifying any rate that is not higher than the Maximum Auction Rate with respect to Series AA Variable Rate Bonds, shall be accepted, thus requiring each such Existing Owner to

A-13

CONFIDENTIAL

continue to hold the Series AA Variable Rate Bonds that are the subject of such Submitted Bid;

(iii)    the Submitted Bid of each Potential Owner specifying any rate that is not higher than the Maximum Auction Rate with respect to Series AA Variable Rate Bonds, shall be accepted, thus requiring each such Potential Owner to purchase the Series AA Variable Rate Bonds that are the subject of such Submitted Bid;

(iv)    the Submitted Sell Orders of each Existing Owner shall be accepted as Submitted Sell Orders and the Submitted Bids of each Existing Owner specifying any rate that is higher than the Maximum Auction Rate with respect to Series AA Variable Rate Bonds, shall be deemed to be and shall be accepted as Submitted Sell Orders, in both cases only up to and including the principal amount of Series AA Variable Rate Bonds obtained by multiplying (A) the aggregate principal amount of Series AA Variable Rate Bonds subject to Submitted Bids described in subparagraph (iii) of this paragraph (b) by (B) a fraction the numerator of which shall be the principal amount of Outstanding Series AA Variable Rate Bonds held by such Existing Owner subject to such Submitted Sell Order or such Submitted Bid deemed to be a Submitted Sell Order and the denominator of which shall be the principal amount of Outstanding Series AA Variable Rate Bonds subject to all such Submitted Sell Orders and such Submitted Bids deemed to be Submitted Sell Orders, and the remainder of each such Submitted Sell Order or Submitted Bid shall be deemed to be and shall be accepted as a Hold Order and each such Existing Owner shall be required to continue to hold such excess amount of Series AA Variable Rate Bonds; and

(v)    the Submitted Bid of each Potential Owner specifying any rate that is higher than the Maximum Auction Rate with respect to the Series AA Variable Rate Bonds shall be rejected.

(c)    If, as a result of the procedures described in paragraph (a) or (b) above, any Existing Owner or Potential Owner would be required to purchase or sell an aggregate principal amount of Series AA Variable Rate Bonds which is not an integral multiple of the Authorized Denomination for such Series AA Variable Rate Bonds on any Auction Date, the Auction Agent shall by lot, in such manner as it shall determine in its sole discretion, round up or down the principal amount of Series AA Variable Rate Bonds to be purchased or sold by any Existing Owner or Potential Owner on such Auction Date so that the aggregate principal amount of Series AA Variable Rate Bonds purchased or sold by each Existing Owner or Potential Owner on such Auction Date shall be an integral multiple of the Authorized Denomination for Series AA Variable Rate Bonds, even if such allocation results in one or more of such Existing Owners or Potential Owners not purchasing or selling any Series AA Variable Rate Bonds on such Auction Date.

(d)    If, as a result of the procedures described in paragraph (a) above, any Potential Owner would be required to purchase a principal amount of Series AA Variable Rate Bonds that is less than the Authorized Denomination for Series AA Variable Rate Bonds on any

A-14

CONFIDENTIAL

Auction Date, the Auction Agent shall by lot, in such manner as it shall determine in its sole discretion, allocate such Bonds for purchase among Potential Owners so that the principal amount of Series AA Variable Rate Bonds purchased on such Auction Date by any Potential Owner shall be an integral multiple of the Authorized Denomination for Series AA Variable Rate Bonds, even if such allocation results in one or more of such Potential Owners not purchasing such Series AA Variable Rate Bonds on such Auction Date.

SECTION 2.06. **Notice of Auction Rate**. (a) On each Auction Date, the Auction Agent shall notify by telephone or other telecommunication device or other electronic communication acceptable to the parties or in writing the Authority and each Broker-Dealer that participated in the Auction held on such Auction Date of the following with respect to Series AA Variable Rate Bonds for which an Auction was held on such Auction Date:

(i) the Auction Rate determined on such Auction Date for the succeeding Auction Period;

(ii) whether Sufficient Clearing Bids existed for the determination of the Winning Bid Rate;

(iii) if such Broker-Dealer submitted a Bid or a Sell Order on behalf of an Existing Owner, whether such Bid or Sell Order was accepted or rejected and the principal amount of Series AA Variable Rate Bonds, if any, to be sold by such Existing Owner;

(iv) if such Broker-Dealer submitted a Bid on behalf of a Potential Owner, whether such Bid was accepted or rejected and the principal amount of Series AA Variable Rate Bonds, if any, to be purchased by such Potential Owner;

(v) if the aggregate principal amount of the Series AA Variable Rate Bonds to be sold by all Existing Owners on whose behalf such Broker-Dealer submitted Bids or Sell Orders is different from the aggregate principal amount of Series AA Variable Rate Bonds to be purchased by all Potential Owners on whose behalf such Broker-Dealer submitted a Bid, the name or names of one or more Broker-Dealers (and the Agent Member, if any, of each such other Broker Dealer) and the principal amount of Series AA Variable Rate Bonds to be (A) purchased from one or more Existing Owners on whose behalf such other Broker-Dealers submitted Bids or Sell Orders or (B) sold to one or more Potential Owners on whose behalf such Broker-Dealer submitted Bids; and

(vi) the immediately succeeding Auction Date.

(b) On each Auction Date, with respect to Series AA Variable Rate Bonds for which an Auction was held on such Auction Date, each Broker-Dealer that submitted an Order on behalf of any Existing Owner or Potential Owner shall: (i) advise each Existing Owner and Potential Owner on whose behalf such Broker-Dealer submitted an Order as to (A) the Auction Rate determined on such Auction Date, (B) whether any Bid or Sell Order submitted on behalf of each such Owner was accepted or rejected and (C) the immediately succeeding Auction Date; (ii) instruct each Potential Owner on whose behalf such Broker-Dealer submitted a Bid that was

A-15

CONFIDENTIAL

accepted, in whole or in part, to instruct such Existing Owner's Agent Member to pay to such Broker-Dealer (or its Agent Member) through the Securities Depository the amount necessary to purchase the principal amount of such Series AA Variable Rate Bonds to be purchased pursuant to such Bid (including, with respect to such Series AA Variable Rate Bonds in a daily Auction Period, accrued interest if the purchase date is not an Interest Payment Date for such Bond) against receipt of such Series AA Variable Rate Bonds; and (iii) instruct each Existing Owner on whose behalf such Broker-Dealer submitted a Sell Order that was accepted or a Bid that was rejected, in whole or in part, to instruct such Existing Owner's Agent Member to deliver to such Broker-Dealer (or its Agent Member) through the Securities Depository the principal amount of such Series AA Variable Rate Bonds to be sold pursuant to such Bid or Sell Order against payment therefor.

SECTION 2.07. **Index**. (a) The Index on any Auction Date with respect to Series AA Variable Rate Bonds in any Auction Period of thirty-five (35) days or less shall be the Seven-Day "AA" Composite Non-Financial Commercial Paper Rate on such date. The Index with respect to Series AA Variable Rate Bonds in any Auction Period greater than thirty-five (35) days shall be the rate on United States Treasury Securities having a maturity which most closely approximates the length of the Auction Period, as last published in The Bond Buyer. If either rate is unavailable, the Index shall be an index or rate agreed to by all Broker-Dealers and consented to by the Authority and Insurer.

**"Seven-Day 'AA' Composite Non-Financial Commercial Paper Rate"** on any date of determination non-financial, means the interest equivalent of the seven-day rate on commercial paper placed on behalf of issuers whose corporate bonds are rated AA by S&P, or the equivalent of such rating by S&P, as made available on a discount basis or otherwise by the Federal Reserve Bank of New York for the Business Day immediately preceding such date of determination, or if the Federal Reserve Bank of New York does not make available any such rate, then the arithmetic average of such rates, as quoted on a discount basis or otherwise, by Lehman Commercial Paper Inc. and Morgan Stanley & Co. Incorporated or, in lieu of any thereof, their respective affiliates or successors which are commercial paper dealers (the **"Commercial Paper Dealers"**), to the Auction Agent before the close of business on the Business Day immediately preceding such date of determination.

For purposes of the definitions of Seven-Day "AA" Composite Non-Financial Commercial Paper Rate, the "interest equivalent" means the equivalent yield on a 360-day basis of a discount-basis security to an interest-bearing security. If any Commercial Paper Dealer does not quote a commercial paper rate required to determine the Seven-Day "AA" Composite Non-Financial Commercial Paper Rate, the Seven-Day "AA" Composite Non-Financial Commercial Paper Rate shall be determined on the basis of the quotation or quotations furnished by the remaining Commercial Paper Dealer and any substitute commercial paper dealer not included within the definition of Commercial Paper Dealer above, which may be Citigroup Global Markets Inc., or its affiliates or successors which are commercial paper dealers (a **"Substitute Commercial Paper Dealer"**) selected by the Authority (who shall be under no liability for such selection) to provide such commercial paper rate or rates not being supplied by any Commercial Paper Dealer or Commercial Paper Dealers, as the case may be, or if the Authority does not select any such Substitute Commercial Paper Dealer or Substitute Commercial Paper Dealers, by the remaining Commercial Paper Dealer or Commercial Paper Dealers.

A-16

CONFIDENTIAL

(b)    If for any reason on any Auction Date the Index shall not be determined as hereinabove provided in this Section, the Index shall be the Index for the Auction Period ending on such Auction Date.

(c)    The determination of the Index as provided herein shall be conclusive and binding upon the Authority, the Fiscal Agent, the Broker-Dealers, the Auction Agent and the Owners of the Series AA Variable Rate Bonds.

**SECTION 2.08. Changes in Auction Period or Auction Date.** (a) Changes in Auction Period. (i) During any Auction Rate Mode, the Authority may from time to time on any Interest Payment Date, change the length of the Auction Period with respect to any of the Series AA Variable Rate Bonds specified in the notice described below in an Auction Rate Mode among daily, seven-days, 28-days, 35-days, three months, six months and a Special Auction Period. The Authority shall initiate the change in the length of the Auction Period by giving written notice to each affected Insurer or Provider of a Credit Facility then in effect, the Auction Agent, the Broker-Dealers and the Securities Depository that the Auction Period for the Series AA Variable Rate Bonds specified in such notice shall change if the conditions described herein are satisfied and the proposed effective date of the change, at least ten (10) Business Days prior to the Auction Date for such Auction Period; *provided, however,* that in the case of a change from a Special Auction Period of ninety-two (92) or more days, the date of such change shall be the Interest Payment Date immediately following the last day of such Special Auction Period.

(ii)    The change in the length of the Auction Period for Series AA Variable Rate Bonds shall not be allowed unless Sufficient Clearing Bids existed at both the Auction before the date on which the notice of the proposed change was given as provided in this paragraph (a) and the Auction immediately preceding the proposed change.

(iii)    The change in length of the Auction Period for Series AA Variable Rate Bonds shall take effect only if (A) the Fiscal Agent and the Auction Agent receive, by 11:00 a.m., New York City time, on the Business Day before the Auction Date for the first such Auction Period, a certificate from the Authority consenting to the change in the length of the Auction Period specified in such certificate, (B) on or prior to such Auction Date the Fiscal Agent and the Authority receive an Opinion of Bond Counsel and (C) Sufficient Clearing Bids exist at the Auction on the Auction Date for such first Auction Period. For purposes of the Auction for such first Auction Period only, each Existing Owner shall be deemed to have submitted Sell Orders with respect to all of its Series AA Variable Rate Bonds for which there is to be a change in the length of the Auction Period except to the extent such Existing Owner submits an Order with respect to such Series AA Variable Rate Bonds. If the condition referred to in clause (A) or (B) above is not met, the Auction Rate for the next Auction Period shall be determined pursuant to the Auction Procedures and the Auction Period shall be the Auction Period determined without reference to the proposed change. If the condition referred to in clause (A) above is met but the condition referred to in clause (B) above is not met, the Auction Rate for the next Auction Period shall be the Maximum Auction Rate and the Auction Period shall be the same Auction

A-17

NY1 5344276v10

CONFIDENTIAL                                                        HTA_STAY0002841

Period it was.  If the condition referred to in (C) is not met, the Auction Period will be a seven-day Auction Period and the Auction Rate will be the Maximum Auction Rate.

(iv)   On the conversion date for Series AA Variable Rate Bonds from one Auction Period to another Auction Period, any Series AA Variable Rate Bonds which are not the subject of a specific Hold Order or Bid shall be deemed to be subject to a Sell Order.

(b)   Changes in Auction Date.  During any Auction Rate Mode, the Auction Agent, with the written consent of the Authority, may specify another Auction Date for Series AA Variable Rate Bonds than the Auction Date that would otherwise be determined in accordance with the definition of "**Auction Date**".  The Auction Agent shall provide notice of its determination to specify an earlier Auction Date for an Auction Period by means of a written notice delivered at least forty-five (45) days prior to the proposed changed Auction Date to the Fiscal Agent, the Authority, each affected Insurer or Provider of a Credit Facility then in effect, the Broker-Dealers and the Securities Depository.

### SECTION 2.09.  Miscellaneous Provisions Regarding Auctions.

(a)   In this Exhibit A, each reference to the purchase, sale or holding of the Series AA Variable Rate Bonds shall refer to beneficial interests in the Series AA Variable Rate Bonds, unless the context clearly requires otherwise.

(b)   During an Auction Period with respect to the Series AA Variable Rate Bonds, the provisions of the Resolution, this Appendix and the definitions contained therein, herein and described in this Exhibit A, including without limitation the definitions of Maximum Auction Rate, Minimum Auction Rate, No Auction Rate, Index, Default Rate, Interest Payment Date, Auction Multiple and the Auction Rate, may be amended pursuant to the Resolution, with the applicable Insurer's prior written consent and by obtaining the consent of the owners of all Outstanding Series AA Variable Rate Bonds bearing interest at an Auction Rate as follows.  If on the first Auction Date occurring at least twenty (20) days after the date on which the Fiscal Agent mailed notice of such proposed amendment to the registered owners of the Outstanding Bonds as required by the Resolution, (i) the Auction Rate which is determined on such date is the Winning Bid Rate and (ii) there is delivered to the Authority and the Fiscal Agent an Opinion of Bond Counsel to the effect that such amendment shall not adversely affect the validity of the Bonds or any exemption from federal income tax to which the interest on the Series AA Variable Rate Bonds would otherwise be entitled, the proposed amendment shall be deemed to have been consented to by the owners of all affected Outstanding Series AA Variable Rate Bonds of such Series bearing interest at an Auction Rate.

(c)   If the Securities Depository notifies the Authority that it is unwilling or unable to continue as owner of the Series AA Variable Rate Bonds or if at any time the Securities Depository shall no longer be registered or in good standing under the Securities Exchange Act of 1934, as amended, or other applicable statute or regulation and a successor to the Securities Depository is not appointed by the Authority within ninety (90) days after the Authority receives notice or becomes aware of such condition, as the case may be, the Authority

A-18

NY1 5344276v10

shall execute and the Fiscal Agent shall authenticate and deliver certificates representing the Series AA Variable Rate Bonds. Such Series AA Variable Rate Bonds shall be registered in such names and authorized denominations as the Securities Depository, pursuant to instructions from the Agent Members or otherwise, shall instruct the Authority and the Fiscal Agent. During an Auction Period, so long as the ownership of the Series AA Variable Rate Bonds is maintained in book-entry form by the Securities Depository, an Existing Owner or a beneficial owner may sell, transfer or otherwise dispose of a Series AA Variable Rate Bond only pursuant to a Bid or Sell Order in accordance with the Auction Procedures or to or through a Broker-Dealer, provided that (i) in the case of all transfers other than pursuant to Auctions such Existing Owner or its Broker-Dealer or its Agent Member advises the Auction Agent of such transfer and (ii) a sale, transfer or other disposition of the Bonds to that Broker-Dealer or another customer of that Broker-Dealer shall not be deemed to be a sale, transfer or other disposition for purposes of this paragraph if such Broker-Dealer remains the Existing Owner of the Series AA Variable Rate Bonds so sold, transferred or disposed of immediately after such sale, transfer or disposition.

## ARTICLE III

## AUCTION AGENT

**SECTION 3.01.  Qualifications of Auction Agent; Resignation; Removal.** The Auction Agent shall be (a) a bank or trust company organized under the laws of the United States or any state or territory thereof having a combined capital stock, surplus and undivided profits of at least $30,000,000 (or whose obligations hereunder are guaranteed by a bank or trust company duly authorized to exercise corporate trust powers and subject to examination by federal, Commonwealth of Puerto Rico or state authority, of good standing, and having at the time of the appointment of such Agent, a combined capital and surplus of at least such amount), subject to supervision or examination by federal, Commonwealth of Puerto Rico or state authority, or (b) a member of National Association of Securities Dealers having a capitalization of at least $30,000,000 and, in either case, authorized by law to perform all the duties imposed upon it by this Appendix and a member of or a participant in, the Securities Depository.

The Auction Agent may at any time resign and be discharged of the duties and obligations created by this Appendix by giving at least ninety (90) days notice to the Authority, each affected Insurer or Provider of a Credit Facility, each affected Broker-Dealer and the Fiscal Agent. The Auction Agent may be removed at any time by the Authority upon at least fifteen (15) days' notice, delivered to the Auction Agent, the Authority, each affected Insurer or Provider of a Credit Facility then in effect, each affected Broker-Dealer and the Fiscal Agent. Additional removal provisions are contained in Section 26 of the resolution to which this Exhibit A is attached. Upon any such resignation or removal, the Authority or Fiscal Agent at the written direction of the Authority shall appoint a successor Auction Agent meeting the requirements of this Section. In the event of the resignation or removal of the Auction Agent, the Auction Agent shall pay over, assign and deliver any moneys and Series AA Variable Rate Bonds held by it in such capacity to its successor. The Auction Agent shall continue to perform its duties hereunder until its successor has been appointed by the Fiscal Agent at the direction of the Authority. In the event that the Auction Agent has not been compensated for its services, the

NY1 5344276v10

CONFIDENTIAL

HTA_STAY0002843

Auction Agent may resign by giving thirty (30) days notice to the Authority and the Fiscal Agent even if a successor Auction Agent has not been appointed.

## ARTICLE IV

Additional Auction Rate Mode Provisions are set forth in the Insurance Agreements relating to the Series AA Variable Rate Bonds.

A-20

NY1 5344276v10

CONFIDENTIAL

APPENDIX B

## REFUNDED BONDS

### 1993 Bonds
#### Series W

| Maturity Date | Interest Rate | Par Amount |
|---|---|---|
| 07/01/2006 | (1) | $ 10,500,000 |
| 07/01/2007 | (1) | 11,100,000 |
| 07/01/2008 | (1) | 11,700,000 |
| 07/01/2010 | (1) | 13,450,000 |
| 07/01/2010 | (2) | 46,750,000 |
| 07/01/2017 | 5.500% | 58,135,000 |
| 07/01/2020 | 5.250% | 99,520,000 |

#### Series X

| Maturity Date | Interest Rate | Par Amount |
|---|---|---|
| 07/01/2003 | 5.100% | $  8,325,000 |
| 07/01/2003 | (1) | 12,000,000 |
| 07/01/2004 | (1) | 13,100,000 |
| 07/01/2005 | (1) | 13,950,000 |
| 07/01/2006 | (1) | 7,450,000 |
| 07/01/2007 | (1) | 7,750,000 |
| 07/01/2008 | (1) | 3,750,000 |
| 07/01/2009 | (1) | 3,950,000 |
| 07/01/2010 | (1) | 4,200,000 |
| 07/01/2010 | (2) | 24,095,000 |
| 07/01/2019 | 5.500% | 102,140,000 |
| 07/01/2021 | 5.250 | 106,990,000 |

### 1996 Bonds

| Maturity Date | Interest Rate | Par Amount |
|---|---|---|
| 07/01/2003 | 6.000% | $  8,360,000 |
| 07/01/2004 | 6.250 | 8,865,000 |
| 07/01/2015 | 5.250 | 17,185,000 |
| 07/01/2026 | 5.550 | 121,780,000 |

### 1998 Bonds

| Maturity Date | Interest Rate | Par Amount |
|---|---|---|
| 07/01/2003 | 4.100% | $ 13,525,000 |
| 07/01/2004 | 4.100 | 14,075,000 |

### 2000 Bonds

| Maturity Date | Interest Rate | Par Amount |
|---|---|---|
| 07/01/2003 | 4.875% | $  4,780,000 |
| 07/01/2004 | 4.875 | 5,015,000 |
| 07/01/2035 | 5.875 | 36,000,000 |

### TIFIA Loan

| Maturity Date | Interest Rate | Par Amount |
|---|---|---|
| 07/01/2035 | 5.740% | $300,000,000 |

(1) Residual Interest tax-exempt securities.
(2) Floating rate auction securities.

CONFIDENTIAL