# <u>EXHIBIT 21</u>

**Alston, Monica**

---

| | |
|---|---|
| **From:** | Hughes, John |
| **Sent:** | Thursday, February 20, 2020 9:52 PM |
| **To:** | #PRLitAssociates; #PRLitSupport |
| **Subject:** | FW: Lift Stay Discovery Issues -- Notice of Subpoena to FirstBank Puerto Rico |
| **Attachments:** | Notice of Subpoena to FirstBank Puerto Rico (02.20.2020).pdf |

Notice of subpoena to FirstBank has been served on the government parties.

John J. Hughes, III | Milbank | Special Counsel
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5127 | M: +1 917.520.7190
jhughes2@milbank.com | milbank.com

---

**From:** Hughes, John
**Sent:** Thursday, February 20, 2020 9:50 PM
**To:** 'Friedman, Peter' <pfriedman@omm.com>; 'Uhland, Suzzanne' <suhland@omm.com>; 'Hammack, Scott' <shammack@omm.com>; 'Pavel, Ashley' <apavel@omm.com>; 'Firestein, Michael A.' <MFirestein@proskauer.com>; 'Rappaport, Lary Alan' <LRappaport@proskauer.com>; 'Mungovan, Timothy W.' <tmungovan@proskauer.com>; 'Dale, Margaret A.' <mdale@proskauer.com>; 'Ji, Josh' <jji@omm.com>; 'Munkittrick, David A.' <DMunkittrick@proskauer.com>; 'Mervis, Michael T.' <MMervis@proskauer.com>; 'McKeen, Elizabeth L.' <emckeen@omm.com>; 'Bienenstock, Martin J.' <mbienenstock@proskauer.com>
**Cc:** 'Collins, Reed' <Reed.Collins@weil.com>; 'Rappoport, Gaspard' <Gaspard.Rappoport@weil.com>; 'Berezin, Robert' <robert.berezin@weil.com>; 'DiBlasi, Kelly' <Kelly.DiBlasi@weil.com>; 'Morgan, Gabriel' <gabriel.morgan@weil.com>; 'Silbert, Gregory' <gregory.silbert@weil.com>; 'Hawkins, Howard (Howard.Hawkins@cwt.com)' <Howard.Hawkins@cwt.com>; 'Ellenberg, Mark' <Mark.Ellenberg@cwt.com>; 'Natbony, Bill' <Bill.Natbony@cwt.com>; 'casey.servais@cwt.com' <casey.servais@cwt.com>; 'Sosland, Martin - EXT' <martin.sosland@butlersnow.com>; 'Jason Callen (Jason.Callen@butlersnow.com)' <Jason.Callen@butlersnow.com>; 'Calabrese, Christine' <Christine.Calabrese@weil.com>; Mainland, Grant <GMainland@milbank.com>; Miller, Atara <AMiller@milbank.com>
**Subject:** RE: Lift Stay Discovery Issues -- Notice of Subpoena to FirstBank Puerto Rico

All,

<mark>In advance of our meet-and-confer tomorrow, please see the attached notice of subpoena to FirstBank Puerto Rico.  We will not attempt to serve this until after our meet-and-confer is completed, in case there is any issue you would like to discuss.</mark>

John J. Hughes, III | Milbank | Special Counsel
55 Hudson Yards | New York, NY 10001-2163
T: +1 917.530.5127 | M: +1 917.520.7190
jhughes2@milbank.com | milbank.com

---

**From:** Mainland, Grant
**Sent:** Thursday, February 20, 2020 1:45 PM
**To:** Mervis, Michael T. <MMervis@proskauer.com>; 'McKeen, Elizabeth L.' <emckeen@omm.com>; Collins, Reed <Reed.Collins@weil.com>; Rappoport, Gaspard <Gaspard.Rappoport@weil.com>; Berezin, Robert <robert.berezin@weil.com>; DiBlasi, Kelly <Kelly.DiBlasi@weil.com>; Morgan, Gabriel <gabriel.morgan@weil.com>; Silbert, Gregory <gregory.silbert@weil.com>; Hawkins, Howard (Howard.Hawkins@cwt.com) <Howard.Hawkins@cwt.com>; Ellenberg, Mark <Mark.Ellenberg@cwt.com>; Natbony, Bill <Bill.Natbony@cwt.com>; casey.servais@cwt.com; Miller, Atara <AMiller@milbank.com>; Hughes, John <JHughes2@milbank.com>; Sosland, Martin - EXT <martin.sosland@butlersnow.com>; Jason Callen (Jason.Callen@butlersnow.com)

<Jason.Callen@butlersnow.com>; Calabrese, Christine <Christine.Calabrese@weil.com>
**Cc:** Friedman, Peter <pfriedman@omm.com>; Uhland, Suzzanne <suhland@omm.com>; Hammack, Scott
<shammack@omm.com>; Pavel, Ashley <apavel@omm.com>; Firestein, Michael A. <MFirestein@proskauer.com>;
Rappaport, Lary Alan <LRappaport@proskauer.com>; Mungovan, Timothy W. <tmungovan@proskauer.com>; Dale,
Margaret A. <mdale@proskauer.com>; Ji, Josh <jji@omm.com>; Munkittrick, David A. <DMunkittrick@proskauer.com>
**Subject:** RE: Lift Stay Discovery Issues

==All:  Enclosed please find a discovery-related chart to guide our discussion on tomorrow's 11am meet-and-
confer.  We look forward to discussing these requests as well as scheduling of discovery and Movants' reply briefs.==

Grant R. Mainland | Milbank | Partner
55 Hudson Yards | New York, NY 10001
T: 212.530.5251 | M: 917.971.6310
gmainland@milbank.com | milbank.com

---

**From:** Mervis, Michael T. <MMervis@proskauer.com>
**Sent:** Wednesday, February 19, 2020 10:02 AM
**To:** 'McKeen, Elizabeth L.' <emckeen@omm.com>; Mainland, Grant <GMainland@milbank.com>; Collins, Reed
<Reed.Collins@weil.com>; Rappaport, Gaspard <Gaspard.Rappoport@weil.com>; Berezin, Robert
<robert.berezin@weil.com>; DiBlasi, Kelly <Kelly.DiBlasi@weil.com>; Morgan, Gabriel <gabriel.morgan@weil.com>;
Silbert, Gregory <gregory.silbert@weil.com>; Hawkins, Howard (Howard.Hawkins@cwt.com)
<Howard.Hawkins@cwt.com>; Ellenberg, Mark <Mark.Ellenberg@cwt.com>; Natbony, Bill <Bill.Natbony@cwt.com>;
casey.servais@cwt.com; Miller, Atara <AMiller@milbank.com>; Hughes, John <JHughes2@milbank.com>; Sosland,
Martin - EXT <martin.sosland@butlersnow.com>; Jason Callen <Jason.Callen@butlersnow.com>; Mintz, Douglas S.
(dmintz@orrick.com) <dmintz@orrick.com>; Nayuan Trinidad
(nzt@mcvpr.com) <nzt@mcvpr.com>; Calabrese, Christine <Christine.Calabrese@weil.com>
**Cc:** Friedman, Peter <pfriedman@omm.com>; Uhland, Suzzanne <suhland@omm.com>; Hammack, Scott
<shammack@omm.com>; Pavel, Ashley <apavel@omm.com>; Firestein, Michael A. <MFirestein@proskauer.com>;
Rappaport, Lary Alan <LRappaport@proskauer.com>; Mungovan, Timothy W. <tmungovan@proskauer.com>; Dale,
Margaret A. <mdale@proskauer.com>; Ji, Josh <jji@omm.com>; Munkittrick, David A. <DMunkittrick@proskauer.com>
**Subject:** [EXT] RE: Lift Stay Discovery Issues

That works for us.

**Michael T. Mervis**
**Member of the Firm**

Proskauer
Eleven Times Square
New York, NY 10036-8299
d 212.969.3565
m 917.756.9758
f  212.969.2900

mmervis@proskauer.com

greenspaces
Please consider the environment before printing this email.

**From:** McKeen, Elizabeth L. <emckeen@omm.com>
**Sent:** Tuesday, February 18, 2020 7:15 PM
**To:** Mainland, Grant <GMainland@milbank.com>; Collins, Reed <Reed.Collins@weil.com>; Rappoport, Gaspard <Gaspard.Rappoport@weil.com>; Berezin, Robert <robert.berezin@weil.com>; DiBlasi, Kelly <Kelly.DiBlasi@weil.com>; Morgan, Gabriel <gabriel.morgan@weil.com>; Silbert, Gregory <gregory.silbert@weil.com>; Hawkins, Howard (Howard.Hawkins@cwt.com) <Howard.Hawkins@cwt.com>; Ellenberg, Mark <Mark.Ellenberg@cwt.com>; Natbony, Bill <Bill.Natbony@cwt.com>; casey.servais@cwt.com; Miller, Atara <AMiller@milbank.com>; Hughes, John <JHughes2@milbank.com>; Sosland, Martin - EXT <martin.sosland@butlersnow.com>; Jason Callen (Jason.Callen@butlersnow.com) <Jason.Callen@butlersnow.com>; Mintz, Douglas S. (dmintz@orrick.com) <dmintz@orrick.com>; Nayuan Trinidad (nzt@mcvpr.com) <nzt@mcvpr.com>; Calabrese, Christine <Christine.Calabrese@weil.com>
**Cc:** Friedman, Peter <pfriedman@omm.com>; Uhland, Suzzanne <suhland@omm.com>; Hammack, Scott <shammack@omm.com>; Pavel, Ashley <apavel@omm.com>; Firestein, Michael A. <MFirestein@proskauer.com>; Rappaport, Lary Alan <LRappaport@proskauer.com>; Mungovan, Timothy W. <tmungovan@proskauer.com>; Mervis, Michael T. <MMervis@proskauer.com>; Dale, Margaret A. <mdale@proskauer.com>; Ji, Josh <jji@omm.com>; Munkittrick, David A. <DMunkittrick@proskauer.com>
**Subject:** RE: Lift Stay Discovery Issues

*This email originated from outside the Firm.*

---

Grant, 11am ET on Friday works for O'Melveny as long as it works for Proskauer.

Thanks,
Liz

---

**From:** Mainland, Grant <GMainland@milbank.com>
**Sent:** Tuesday, February 18, 2020 3:55 PM
**To:** McKeen, Elizabeth L. <emckeen@omm.com>; Collins, Reed <Reed.Collins@weil.com>; Rappoport, Gaspard <Gaspard.Rappoport@weil.com>; Berezin, Robert <robert.berezin@weil.com>; DiBlasi, Kelly <Kelly.DiBlasi@weil.com>; Morgan, Gabriel <gabriel.morgan@weil.com>; Silbert, Gregory <gregory.silbert@weil.com>; Hawkins, Howard (Howard.Hawkins@cwt.com) <Howard.Hawkins@cwt.com>; Ellenberg, Mark <Mark.Ellenberg@cwt.com>; Natbony, Bill <Bill.Natbony@cwt.com>; casey.servais@cwt.com; Miller, Atara <AMiller@milbank.com>; Hughes, John <JHughes2@milbank.com>; Sosland, Martin - EXT <martin.sosland@butlersnow.com>; Jason Callen (Jason.Callen@butlersnow.com) <Jason.Callen@butlersnow.com>; Mintz, Douglas S. (dmintz@orrick.com) <dmintz@orrick.com>; Nayuan Trinidad (nzt@mcvpr.com) <nzt@mcvpr.com>; Calabrese, Christine <Christine.Calabrese@weil.com>
**Cc:** Friedman, Peter <pfriedman@omm.com>; Uhland, Suzzanne <suhland@omm.com>; Hammack, Scott <shammack@omm.com>; Pavel, Ashley <apavel@omm.com>; Firestein, Michael A. <MFirestein@proskauer.com>; Rappaport, Lary Alan <LRappaport@proskauer.com>; tmungovan@proskauer.com; Mervis, Michael T. <MMervis@proskauer.com>; Dale, Margaret A. (mdale@proskauer.com) <mdale@proskauer.com>; Ji, Josh <jji@omm.com>; Munkittrick, David A. <DMunkittrick@proskauer.com>
**Subject:** RE: Lift Stay Discovery Issues

[EXTERNAL MESSAGE]

Liz:  We were close to reaching out with a similar proposal.  Please let us know if you are available to discuss at 11am on Friday.  In the meantime, we are preparing a summary of necessary discovery to account for Judge Swain's ruling, as well as a brief issues list to guide the conversation.  We will circulate those well in advance of the call to give the Government Parties time to evaluate them and form a position.

With respect to the motion to compel, we do not intend to withdraw it, but do intend to file an amendment or supplement to the motion in the event there are remaining differences following our meet-and-confer.  We are amenable to the briefing schedule you suggest.

Thanks,
Grant

Grant R. Mainland | Milbank | Partner
55 Hudson Yards | New York, NY 10001
T: 212.530.5251 | M: 917.971.6310
gmainland@milbank.com | milbank.com

---

**From:** McKeen, Elizabeth L. <emckeen@omm.com>
**Sent:** Tuesday, February 18, 2020 4:51 PM
**To:** Collins, Reed <Reed.Collins@weil.com>; Mainland, Grant <GMainland@milbank.com>; Rappoport, Gaspard <Gaspard.Rappoport@weil.com>; Berezin, Robert <robert.berezin@weil.com>; DiBlasi, Kelly <Kelly.DiBlasi@weil.com>; Morgan, Gabriel <gabriel.morgan@weil.com>; Silbert, Gregory <gregory.silbert@weil.com>; Hawkins, Howard (Howard.Hawkins@cwt.com) <Howard.Hawkins@cwt.com>; Ellenberg, Mark <Mark.Ellenberg@cwt.com>; Natbony, Bill <Bill.Natbony@cwt.com>; casey.servais@cwt.com; Miller, Atara <AMiller@milbank.com>; Hughes, John <JHughes2@milbank.com>; Sosland, Martin - EXT <martin.sosland@butlersnow.com>; Jason Callen (Jason.Callen@butlersnow.com) <Jason.Callen@butlersnow.com>; Mintz, Douglas S. (dmintz@orrick.com) <dmintz@orrick.com>; Nayuan Trinidad (nzt@mcvpr.com) <nzt@mcvpr.com>; Calabrese, Christine <Christine.Calabrese@weil.com>
**Cc:** Friedman, Peter <pfriedman@omm.com>; Uhland, Suzzanne <suhland@omm.com>; Hammack, Scott <shammack@omm.com>; Pavel, Ashley <apavel@omm.com>; Firestein, Michael A. <MFirestein@proskauer.com>; Rappaport, Lary Alan <LRappaport@proskauer.com>; tmungovan@proskauer.com; Mervis, Michael T. <MMervis@proskauer.com>; Dale, Margaret A. (mdale@proskauer.com) <mdale@proskauer.com>; Ji, Josh <jji@omm.com>; Munkittrick, David A. <DMunkittrick@proskauer.com>
**Subject:** [EXT] Lift Stay Discovery Issues

Grant & Reed -

We are reaching out to you about today's order from Judge Dein regarding scheduling on motions to compel in connection with the lift stay motions.  In light of our production later that day and Judge Swain's order, in which she clarified the scope of permissible discovery, we ask you to consider withdrawing your motion to compel so that we can meet and confer this week regarding the specific subject matters that the Court identified for discovery, rather than litigating a motion that is not targeted to those issues.

To that end, we suggest that we meet and confer on Thursday or Friday to attempt to reach an agreement regarding the materials that will be produced pursuant to Judge Swain's order.  We would further suggest that, if any issues remain unresolved, that you file an amended/revised motion to compel on February 24, that we oppose on February 28, and that you reply on March 2.

Let us know if you are amenable to this approach or if you would like to discuss telephonically.  Alternatively, if you are not planning to withdraw or otherwise amend your current motion, we suggest that we oppose it by February 26, and that your reply be due March 2.

Please advise.

Best,
Liz

**O'Melveny**

**Elizabeth L. McKeen**
emckeen@omm.com
O: +1-949-823-7150

O'Melveny & Myers LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA  92660
Website | LinkedIn | Twitter | Bio

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message and its attachments are sent from a law firm and may contain information that is confidential and
protected by privilege from disclosure.
If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them.
Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the
sender immediately.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

========================================================
This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s),
or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that
any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message
in error, please immediately notify the sender and delete this e-mail message from your computer.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>               as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>               Debtors. | PROMESA<br>Title III<br><br>Civil Action No.: 17 BK 3283-LTS<br><br>(Jointly Administered) |

## AMBAC ASSURANCE CORPORATION'S NOTICE OF SUBPOENA DUCES TECUM TO FIRSTBANK PUERTO RICO FOR THE PRODUCTION OF DOCUMENTS OR THINGS

PLEASE TAKE NOTICE THAT, pursuant to 48 U.S.C. § 2170, Rules 9014 and 9016 of the Federal Rules of Bankruptcy Procedure, and Rules 26, 34, and 45 of the Federal Rules of Civil Procedure, Ambac Assurance Corporation, by its undersigned attorneys, will serve the enclosed subpoena for documents on FirstBank Puerto Rico on February 21, 2020.

Dated:      February 20, 2020

FERRAIUOLI LLC

By:/s/ *Roberto Cámara-Fuertes*
    ROBERTO CÁMARA-FUERTES
    USDC-PR NO. 219,002
    E-mail:    rcamara@ferraiuoli.com

By:/s/ *Sonia Colón*
    SONIA COLÓN
    USDC-PR NO. 213809
    E-mail:    scolon@ferraiuoli.com
    221 Ponce de Leon Ave., 5th Floor
    San Juan, PR 00917
    Tel.:    (787) 766-7000
    Fax:    (787) 766-7001

*Counsel for Ambac Assurance Corporation*

MILBANK LLP

By:/s/ *Atara Miller*
    DENNIS F. DUNNE*
    ATARA MILLER*
    GRANT R. MAINLAND*
    JOHN J. HUGHES*
    55 Hudson Yards
    New York, New York 10001
    Tel.:    (212) 530-5000
    Fax:    (212) 530-5219
    Email:    ddunne@milbank.com
            amiller@milbank.com
            gmainland@milbank.com
            jhughes2@milbank.com

*admitted *pro hac vice*

*Counsel for Ambac Assurance Corporation*

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Puerto Rico

| | |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA<br>Title III |
| as representative of | Civil Action No.   17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al., | (Jointly Administered) |
| Debtors. | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           FirstBank Puerto Rico
1519 Ponce de León Avenue, Santurce, Puerto Rico 00908
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: Ferraiuoli LLC (c/o Roberto Cámara-Fuertes)<br>221 Ponce de León Avenue, 5th Floor<br>San Juan, PR 00917 | Date and Time:<br><br>03/02/2020 4:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   02/21/2020

| CLERK OF COURT | |
|---|---|
| | OR |
| _____<br>*Signature of Clerk or Deputy Clerk* | _____<br>*Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Ambac Assurance Corporation _____ , who issues or requests this subpoena, are:

John J. Hughes, III, Milbank LLP, 55 Hudson Yards, New York, NY 10001 / 212-530-5000 / jhughes2@milbank.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.    17 BK 3283-LTS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                            *Server's signature*

                                                        _____
                                                            *Printed name and title*

                                                        _____
                                                            *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed  R  Civ  P  45(a) Committee Note (2013).

# EXHIBIT A

## **DEFINITIONS**

1.     "<u>Accounts</u>," or each individually, an "<u>Account</u>," means the accounts held at Your financial institution for the Debtors, including, without limitation, any Related Accounts and further including, without limitation, the accounts bearing account numbers <sup>Redacted</sup>3039 and <sup>Redacted</sup>3961.

2.     "<u>Account Holders</u>," or each individually, an "<u>Account Holder</u>," means the owner of each Account, as well as any person(s) or entity(ies) authorized to perform transactions in each Account.

3.     "<u>Account Statements</u>" means periodic summaries of account activity provided to Account Holders on a periodic basis in the ordinary course of business.

4.     "<u>Communication</u>" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

5.     "<u>Concerning</u>" means relating to, referring to, describing, evidencing, or constituting.

6.     "<u>Debtors</u>" means the Puerto Rico Tourism Company or the Puerto Rico Convention Center District Authority.

7.     "<u>Document</u>" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure.

8.     "<u>Identify</u>" means, with respect to a document, to provide the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

9.     "Related Accounts," or each individually, a "Related Account," means either a sub-account nested under or within another Account, or a master account that subsumes one or more Accounts, including, without limitation, any sweep accounts, cash management accounts, or other accounts, records, or designations used for tracking, recording, or otherwise accounting for funds.

10.     "Requesting Party" means Ambac Assurance Corporation.

11.     "You" and "Your" each means FirstBank Puerto Rico, including any parent companies, subsidiaries, or affiliates of FirstBank Puerto Rico, and any former or present officers, directors, principals, members, partners, shareholders, representatives, agents, attorneys, accountants, or employees of any of the foregoing.

## <u>INSTRUCTIONS</u>

1.     This is an exhibit to a subpoena pursuant to the authority of the United States District Court for the District of Puerto Rico requiring You to produce the Documents that are described below.

2.     The Requests shall be deemed continuing in nature and require prompt supplemental responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure in the event You become aware of, or acquire within Your possession, custody or control, additional responsive Documents at any time hereafter.

3.     The Requests include all Documents within Your possession, custody, or control, and in producing Documents, You are to furnish all such Documents.

4.     The scope of Your search for data that is responsive to any Request shall include all forms of Electronically Stored Information ("<u>ESI</u>").

5.     ESI should be produced in accordance with the following specifications:

   i)   <u>Form of Production</u>. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) or in JPG format for Documents in color.  The Requesting Party reserves the right to request color JPG files for any Document that is unreadable or has limited accessibility in the Group IV TIFF format.  Productions shall be made on encrypted media (e.g., CD/DVD or portable hard drive) or via a secure FTP site with Opticon image load files (.OPT).  TIFF/JPG image naming conventions should be limited to alphanumeric names only, with no spaces, no hyphens, and no special characters in the file name (e.g., ABC00000001.tif).  All fielded database information (including extracted metadata from electronic Documents) should be delivered in a standard Concordance load file format (.DAT).  Group every 1,000 tiff images within incrementally named "IMAGES" directories; do not create a separate folder for each Document.

   ii)  <u>Document Text</u>.  For Documents/records that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate Document-level text files (.txt) named for the beginning Bates number of the associated Document.  Provide OCR text for Documents that do not contain searchable text (e.g., non-searchable PDFs, etc.).  For Documents

that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document.  Clearly label any redacted material to show the redactions on the tiff image.  Group 1,000 Document text files per incrementally named "TEXT" directories, separate from image directories.  A comma delimited list file (.LST) should be provided and include the beginning Bates number and the full file path (including volume) information to the extracted text/OCR files.

iii) <u>Native Production For Certain File Types</u>.  For files created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, audio/visual files or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the Bates number on the first page of the corresponding tiff production of the file/Document.  A comma delimited list file (.LST) should be provided and include the beginning Bates number and the full file path (including volume) information to the native files. Group native files within incrementally named "NATIVE" directories; separate from images and text directories.  The Requesting Party reserves the right to request native files for any Document that is unreadable or has limited accessibility in the Group IV TIFF or JPG format.

iv) <u>Metadata</u>.  Produce extracted metadata for each Document/record in the form of a Concordance load file (.dat), including the following fields (where applicable):  bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject line, file extension, original file path, file name, e-mail sent date, e-mail sent time, received date, received time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, custodian duplicate, source, source folder, MD5 hash value, native file path location, redactions present (yes/no) and confidentiality designation.  Custodian, source or source folder field should contain information that can easily identify the location of the Document and, where applicable, the natural person in whose possession it was found.

6.     If any Document which forms a part of or the entire basis for any response to a Request has been destroyed or lost, identify each such Document, all steps taken to preserve the Document, the date the Document was destroyed or lost, and all steps taken to attempt to retrieve the Document.

7.      If any part of a Request cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to any part.

8.      When an objection is made to any Request, the objection shall state with specificity all grounds for objection.  Any ground not stated in an objection within the time provided by Rule 45(d)(2) of the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed to have been waived.

9.      If any Document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, whether work-product or attorney-client, You shall produce a list specifying each such Document and setting forth the following information:

      i)  the date the Document was created;

      ii)  the number of pages of the Document;

      iii) the name and last known address of each person who prepared or participated in the preparation of the Document;

      iv) the name and last known address of each addressee or other person to whom the Document, or any part thereof, was sent or to whom the Document or its contents, or any part thereof, was disclosed;

      v)  a summary of the general subject matter of the Document (and such other information as is necessary to identify the Document, such as whether the Document is a letter or memorandum); and

      vi) a statement of the legal basis upon which the asserted privilege is claimed.

10.      If a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible.  If a privilege is asserted with regard to part of the material contained in a Document, You must clearly indicate the portions

as to which the privilege is claimed in accordance with the procedure outlined above.

      11.    Documents shall be produced in such fashion as to identify the natural person in whose possession they were found.

      12.    The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

      13.    If no Documents exist which are responsive to a particular Request, Your response to such Request shall so state.

### RELEVANT TIME PERIOD

Unless otherwise specifically indicated, all Requests refer to the period from January 1, 2012 up until the date of Your responses to the Requests.  Documents produced in response to these Requests shall include all Documents that relate in whole or part to such period, or to events during such period, even though dated, prepared, generated or received prior to or after that period. If a Document prepared before the designated period is necessary for a correct or complete understanding of any Document covered by a Request, You must produce the earlier Document as well.  If any Document is undated and the date of its preparation cannot be determined, the Document shall be produced if otherwise responsive to the Request.

## DOCUMENT REQUESTS

### REQUEST FOR PRODUCTION NO. 1

All Account Statements for each Account.

### REQUEST FOR PRODUCTION NO. 2

Documents sufficient to identify each transaction that occurred in each Account.

### REQUEST FOR PRODUCTION NO. 3

Documents concerning the opening of each Account and any subsequent changes to the Account, including, without limitation, (i) the signature cards for the Account, (ii) the name, legal title, and registration of each Account, (iii) any documentation provided to You concerning the Account, and (iv) any changes or updates to any of the foregoing over time.

### REQUEST FOR PRODUCTION NO. 4

Documents sufficient to identify, from January 1, 2015 to present, the signatories of each Account, including but not limited to the name and title of such signatories.

### REQUEST FOR PRODUCTION NO. 5

Documents sufficient to identify the Account Holders for each Account, including, without limitation, any changes to the foregoing over time.

### REQUEST FOR PRODUCTION NO. 6

Any centrally filed Documents concerning each Account, not otherwise covered by the foregoing Requests, including, without limitation, any centrally filed Communications concerning each Account.

# DISCOVERY ON LIFT STAY MOTIONS

| | CCDA | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[1]** | **Status / Follow Up Requests** |
| **Request 1:** Documents sufficient to show each transfer and/or deposit of Hotel Taxes to the Tourism Company or to GDB, including, without limitation, each transfer and/or deposit to the Tourism Company account at First Bank, and each subsequent transfer thereof, from July 1, 2015 to the present, including (a) the date of the transfer, (b) the transferor, (c) the transferee, (d) the amount of the transfer, (e) information sufficient to identify and distinguish particular accounts, (f) all account holders, assignees, or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information. | ¶¶ 39, 40, 41[2] | No responsive documents produced (except a list of Tourism Company accounts).  Movants seek:<br><br>• Confirmation that all responsive documents have been produced; and<br><br>• Confirmation that CCDA_STAY0000001 includes all Tourism Company or GDB accounts that are used to, or have been used to, hold Hotel Taxes.<br><br>In light of what appear to be incomplete records held at the Commonwealth, Movants will serve third-party subpoenas on the banking institutions listed in CCDA_STAY0000001, seeking accounts statements from January 1, 2012 to the present.  With regard to any accounts at GDB, Movants need the following:<br><br>• Account statements prepared in the ordinary course, from January 1, 2012 to present, sufficient to identify each transaction in such account;<br><br>• Opening documents for such account, including but not limited to signature cards for the account, the legal title registration of the account, and any documentation provided by the Tourism Company to GDB (or vice versa) concerning such account; and<br><br>• Documents sufficient to identify the full name or title, account signatories, and account holder(s) of such account. |

---

[1] Identifies paragraphs in *Opposition of Commonwealth of Puerto Rico to Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and the Bank of New York Mellon Concerning Application of Automatic Stay* (ECF No. 10615) containing factual representations that Judge Swain identified as being appropriate for limited discovery in the *Order Granting Urgent Motion to Adjourn Hearing on Motions for Relief from the Automatic Stay and Extend Deadlines for Replies in Support of Motions for Relief from the Automatic Stay* (ECF No. 11057).

[2] ¶ 39 (showing flow of funds operated consistent with agreements through 2015); ¶ 40 (noting that, in late 2015, the Tourism Company ceased depositing funds into the Transfer Account and retained them instead); ¶ 41 (noting Tourism Company ceased putting funds into the Transfer Account but still collects Hotel Taxes).

| CCDA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[1]** | **Status / Follow Up Requests** |
| **Request 2:** Documents sufficient to show the total amount of Hotel Taxes presently held by the Tourism Company, GDB, CCDA, or the Commonwealth or its instrumentalities, including, without limitation, information sufficient to identify the particular account(s) where such funds are retained; each account holder, financial institution, and beneficiary; and the cash balance of the accounts. | ¶¶ 39, 40, 41 | Are Respondents willing to stipulate that the First Bank account identified in CCDA_STAY0000001 reflects the total amount of Pledged Hotel Taxes that are held by the Tourism Company, GDB, CCDA, or the Commonwealth or its instrumentalities, or is there a dispute on this that requires further discovery? |
| **Request 3:** Documents, communications, or Agreements to which the Commonwealth, the Tourism Company, CCDA and/or GDB is a party (including, without limitation, drafts thereof), relating to the Hotel Taxes, the flow of funds for CCDA, the retention of Hotel Taxes, the use of Hotel Taxes, and/or the CCDA Bond Documents. | ¶¶ 39, 40, 41 | Have all responsive agreements been collected and produced?<br><br>Movants request that Respondents collect and produce communications relevant to the paragraphs Judge Swain has identified as appropriate targets for discovery.<br><br>In addition, Movants specifically request any instructions to financial institutions, memoranda, letters, and/or agreements related to the movement, transfer, or retention of Hotel Taxes. |
| **Request 4:** All reports provided by the CCDA to the Legislature and Governor of Puerto Rico pursuant to the CCDA Enabling Act. See 23 L.P.R.A. § 6464. | ¶ 39 | No responsive documents produced.  Are any such reports available? |
| **Request 5:** All appropriation requests made by CCDA for reimbursement of clawed-back Pledged Hotel Taxes. | ¶ 40 | In light of updated guidance from Judge Swain on the scope of discovery, Movants are not pursuing this request further at this time but respectfully reserve all rights with respect to future discovery. |
| **Request 6:** Documents sufficient to show the terms, scope, and effects of purported restrictions placed on CCDA-related funds, including but not limited to those funds described as "restricted" in the Commonwealth's "Summary of Cash Restriction Analysis" dated Oct. 2, 2019. | ¶¶ 39, 40, 41 | No responsive documents produced (except a list of Tourism Company accounts).  Are Respondents willing to stipulate that the Hotel Taxes in the First Bank account are not addressed in and will not be utilized as part of the proposed plan of adjustment, or is there a factual dispute on that necessitating additional discovery? |

| **CCDA** | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[1]** | **Status / Follow Up Requests** |
| **Request 7:** Documents sufficient to show the amount of Hotel Taxes collected in each Fiscal Year from Fiscal Year 2016 to the present, including the amount of Pledged Revenues collected in the current Fiscal Year. | ¶¶ 40, 41 | No responsive documents produced.  Movants anticipate that this information should be readily accessible in central files. |
| **NEW:  Request 8**: Documents and communications, including but not limited to instructions to vendors, memoranda, letters, and/or agreements, discussing how the Tourism Company continues to levy and collect the Hotel Taxes. | ¶ 41 | In light of updated guidance from Judge Swain, Movants are slightly changing the scope of former Request 3.  Although this is related to Request 3, Movants are listing it as a new, separate request for clarity. |
| **CCDA Rule 30(b)(6) testimony on the following topics:**<br><br>• Flow of Funds<br>• Account Balances<br>• Disbursements<br>• Statutory Requirements re: Flow of Funds<br>• Misappropriation / Claw Back<br>• Restrictions on Use of Funds<br>• Revenue Collected | ¶¶ 39, 40, 41 | Movants anticipate that the examination would involve questions on, *inter alia*, the following documents:<br><br>• CDA_STAY0000001;<br>• CW_STAY0000002; and<br>• CW_STAY0000156. |

| PRIFA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[3]** | **Status / Follow Up Requests** |
| **Request 1:** Documents sufficient to show each transfer and/or deposit of the Rum Taxes from the U.S. Treasury to the Commonwealth, the Puerto Rico Infrastructure Fund, or any lockbox account, and each subsequent transfer thereof, from July 1, 2015 to the present, including (a) the date of the transfer, (b) the transferor, (c) the transferee, (d) the amount of the transfer, (e) information sufficient to identify and distinguish particular accounts, (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information. | ¶¶ 29, 38, 69, 103[4] | The documents produced do not identify each transfer and/or deposit of Rum Taxes.  Are Respondents producing additional information?  The produced information should be sufficient to determine, among other things, how the Commonwealth has characterized beneficial ownership and control over the accounts into which the Rum Taxes have been deposited, and over the Rum Taxes, and whether they have been commingled with other funds, and account balances over time to permit a tracing analysis to be undertaken. <br><br> In light of what appear to be incomplete records held at the Commonwealth, Movants will serve third-party subpoenas on Citibank and Banco Popular de Puerto Rico seeking account statements and Disbursement Detail documents. |

[3] Identifies paragraphs in *Opposition of Commonwealth of Puerto Rico to Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and the Bank of New York Mellon Concerning Application of Automatic Stay* (ECF No. 10615) containing factual representations that Judge Swain identified as being appropriate for limited discovery in the *Order Granting Urgent Motion to Adjourn Hearing on Motions for Relief from the Automatic Stay and Extend Deadlines for Replies In Support of Motions for Relief from the Automatic Stay* (ECF No. 11057).

[4] ¶ 29 (describing, generally, the flow of Rum Taxes, pursuant to Lockbox Agreement and the "Disbursement Details" that accompanies the first $117 million in Rum Taxes delivered to the TSA "to the credit of PRIFA,"  and asserting that the Commonwealth commingles the monies with other funds in the TSA); ¶ 38 (interpreting various provisions of Trust Agreement as supporting notion that the Pledged Rum Taxes are only those funds deposited into the Sinking Fund, and attaching chart of purported flow of funds, as interpreted by the Oversight Board); ¶ 69 (describing, generally, the flow of Rum Taxes to counter "mere custodian" theory); ¶ 103 (asserting that the Rum Taxes are commingled with other funds in the TSA).

| PRIFA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[3]** | **Status / Follow Up Requests** |
| **Request 2:** Documents sufficient to show the total amount of Rum Taxes presently held by PRIFA, or the Commonwealth or its instrumentalities, including, without limitation, information sufficient to identify the particular account(s) where such funds are retained; each account holder, financial institution, and beneficiary; and the cash balance of the accounts. | ¶¶ 29, 38, 69, 103 | The produced documents do not adequately show the total amount of Rum Taxes presently held, where such funds are held, or identifying features of the accounts in which such funds are held.  Movants seek:<br><br>• Identification of the specific accounts that hold Rum Taxes (at the Commonwealth or PRIFA), and account statements prepared in the ordinary course of business for such accounts;<br><br>• TSA Cash Flow Reports for 2015-2017 and 2019.  Production of TSA Cash Flow Reports is not comprehensive (complete set only provided for FY2018); and<br><br>• Documents sufficient to show the monthly account balance of any account in which Rum Taxes were deposited, including any in which the Oversight Board claims Rum Taxes were commingled with other monies.  *See* ¶ 103 (asserting that Rum Taxes are commingled with other funds in the FSA). |
| **Request 3:** Documents, communications, or Agreements (including, without limitation, drafts thereof) to which the Commonwealth, the Rum Producers, and/or PRIFA is a party, relating to the Rum Taxes, the flow of funds for PRIFA bonds, and/or the use of Rum Taxes. | ¶¶ 29, 38, 69, 103 | Please confirm whether all responsive agreements, including those to which other Rum Producers are a party (e.g., Bacardi), have been collected and produced.  If not, please provide.<br><br>Movants request that Respondents collect and produce communications among the Rum Producers and the Commonwealth, and/or PRIFA, regarding the Rum Taxes, the flow of funds for PRIFA bonds, and/or the use of Rum Taxes, consistent with the paragraphs Judge Swain has identified as appropriate targets for discovery. |
| **Request 4:** All reports provided by PRIFA to the Legislature and Governor of Puerto Rico pursuant to the Enabling Act. | ¶¶ 124, 125[5] | Received reports only from March 2018, September 2018, and February 2019.  Please confirm whether such reports were prepared pursuant to the Enabling Act, whether additional reports exist and, if so, whether they will be produced. |

---

[5] ¶ 124 (arguing that PRIFA does not maintain a property interest in the Rum Tax Funds as the Funds are only a conditional appropriation that can be modified or eliminated by subsequent legislation); ¶ 125 (arguing that Rum Tax Remittances are a "mere appropriation" from the United States because the Remittances are not derived from either PRIFA's or the Commonwealth's operations).

| PRIFA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[3]** | **Status / Follow Up Requests** |
| **Request 5:** All appropriation requests made by PRIFA for reimbursement of clawed-back Pledged Rum Taxes. | ¶¶ 124, 125 | Produced documents reflect information on the amount of clawed-back funds held by the Commonwealth only as of June 28, June 30, and December 31, 2019.  Movants seek:<br><br>• Requests by PRIFA for reimbursement of clawed-back funds;<br><br>• Communications between and among the Commonwealth and PRIFA regarding clawed-back funds, including communications regarding the preparation of the June 2019 presentation; and<br><br>• All TSA Cash Flow Reports for 2015-2017 and 2019.  Production of TSA Cash Flow Reports is not comprehensive (complete set only provided for FY2018). |
| **Request 6:** Documents sufficient to show the total amount of money held by the Puerto Rico Infrastructure Fund and ownership information, including (a) where the fund is held, (b) information sufficient to identify and distinguish each particular account, (c) all account holders, (d) all account signatories, and (e) any entity or individual with authority over the account. | ¶¶ 29, 38, 69, 103 | Have all responsive documents been produced?<br><br>Are Respondents willing to stipulate that the GDB account identified in PRIFA_STAY0000281 and -284, and/or the Banco Popular account identified in PRIFA_STAY0000285, identify the total amount of money held by PRIFA and/or in the Infrastructure Fund?  If not, explain why. |
| **Request 7:** Direction letters or other documents to or from any bank and/or the Secretary of the Treasury regarding the flow of funds and/or use of the Rum Taxes. | ¶¶ 29, 38, 69, 103, 125 | Received letters only from 2019 and one from 2017.  Please confirm whether additional letters exist and, if so, that they will be produced. |
| **Request 8:** Documents sufficient to show the terms, scope, and effects of purported restrictions placed on PRIFA-related funds, including but not limited to those funds described as "restricted" in the Commonwealth's "Summary of Cash Restriction Analysis" dated Oct. 2, 2019. | ¶¶ 69, 103 | No responsive documents produced.  Are Respondents willing to stipulate that these funds are not addressed in and will not be utilized as part of the proposed plan of adjustment, or is there a factual dispute necessitating additional discovery? |

| PRIFA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[3]** | **Status / Follow Up Requests** |
| **Request 9:** Documents sufficient to show the amount of Rum Taxes collected in each Fiscal Year from Fiscal Year 2016 to the present, including the amount of Rum Taxes collected in the current Fiscal Year. | ¶¶ 29, 38, 69, 103, 125 | One letter from the U.S. Treasury re: net excise tax collections due to the Commonwealth (as of 7/31/2019) was produced.  Movants anticipate that additional responsive information should be readily accessible in central files and request that such information be produced. In addition, Respondents' production of TSA Cash Flow Reports is not comprehensive (complete set only provided for FY2018).  Movants seek all TSA Cash Flow Reports for 2015-2017 and 2019. |
| **PRIFA Rule 30(b)(6) testimony on the following topics:** <br>• Flow of Funds <br>• Disbursement Details / Lockbox Agreement / Communications with Rum Producers <br>• Account Balances / Commingling <br>• Statutorily Required Reports <br>• Misappropriation / Claw Back <br>• *Flores Galarza* / Trust *res* / Restrictions on Use of Funds | ¶¶ 29, 38, 69, 103, 124-25 | Movants anticipate that the examination would involve questions on, *inter alia*, the following documents: <br>• PRIFA_STAY0000001; <br>• PRIFA_STAY0000295; <br>• PRIFA_STAY0000472; <br>• CW_STAY0000002; <br>• CW_STAY0000156; <br>• PRIFA_STAY0000153; and <br>• CW_STAY0000002. |

| HTA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[6]** | **Status / Follow Up Requests** |
| **Request 1:** Documents sufficient to show each transfer and/or deposit of the Pledged Revenues to the Commonwealth or HTA, and each subsequent Transfer thereof, from January 1, 2015 to the present, including (a) the date of the Transfer, (b) the transferor, (c) the transferee, (d) the amount of the Transfer, (e) the account number and (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information. | ¶¶ 81, 92, & Exhibit A[7] | Documents showing the transfers and/or deposits of Pledged Revenues have not be produced. Movants seek identification of the specific accounts that have held or that hold Pledged Revenues (at the Commonwealth or HTA), and account statements of such accounts that were prepared in the ordinary course of business. The requested information should be sufficient to determine, among other things, how the Commonwealth has characterized beneficial ownership and control over the accounts into which the Pledged Revenues have been deposited, and over the Pledged Revenues, and whether they have been commingled with other funds, and account balances over time to permit a tracing analysis to be undertaken. |
| **Request 2:** Documents sufficient to show each transfer and/or deposit of funds from the Commonwealth to HTA, and each subsequent Transfer thereof, from January 1, 2015 to the present, including (a) the date of the Transfer, (b) the transferor, (c) the transferee, (d) the amount of the Transfer, (e) the account number and (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including, without limitation, all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information. | ¶¶ 81, 92, & Exhibit A | Same. |

---

[6] Identifies paragraphs in *Opposition of Financial Oversight and Management Board for Puerto Rico to Motion of Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from Automatic Stay or, in the Alternative, Adequate Protection (ECF No. 10618)* containing factual representations that Judge Swain identified as being appropriate for limited discovery in the *Order Granting Urgent Motion to Adjourn Hearing on Motions for Relief from the Automatic Stay and Extend Deadlines for Replies In Support of Motions for Relief from the Automatic Stay* (ECF No. 11057).

[7] ¶ 81 (noting HTA Allocable Revenues have not been "made available" to HTA because they are only conditionally allocated to HTA and the Commonwealth has not appropriated the HTA Allocable Revenues to HTA); ¶ 92 (explaining that Commonwealth collects HTA Allocable Revenues from taxpayers, deposits them in the TSA, and is then required by statute—subject to certain conditions—to transfer those funds to HTA for HTA's "corporate purposes;" also asserts that the Commonwealth always reserved the right to retain those funds and use them for its own purposes); Exhibit A (HTA Flow of Funds Chart).

| HTA | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[6]** | **Status / Follow Up Requests** |
| **Request 3:**  Documents sufficient to show the total amount of Pledged Revenues presently held by HTA, or the Commonwealth or its instrumentalities, including, without limitation, information sufficient to identify the particular account(s) where such funds are retained; each account holder, financial institution, and beneficiary; and the cash balance of the accounts. | ¶¶ 81, 92 | No account records clearly show the total amount held and in which account.  Movants request the relevant portions of the cash analysis for HTA, account statements prepared in the ordinary course of business for such account, and other account records for such account. |
| **Request 4:**  Documents, communications, or Agreements (including, without limitation, drafts thereof) to which the Commonwealth and/or HTA is a party relating to the Pledged Revenues, the flow of funds for HTA bonds, and/or the use of Pledged Revenues.<br><br>**Follow-Up Request (Feb. 7, 2020, 7:40 PM Email):** Documents and communications—covering mostly internal agency rules and official memoranda—concerning, among other things, (1) the budgeting treatment of the Excise Taxes, (2) implementation of the Unlawful Executive Orders, (3) flow of funds of the Excise Taxes, (4) definition or scope of "recursos propios" or "ingresos propios," and (5) proposed budgets.  The request also asked for all HTA bond closing transcripts, resolutions (beyond the 1968 and 1998 bond resolutions), and supplemental resolutions. | ¶¶ 77, 81, 92, Ex. A | Have all responsive agreements been collected and produced?<br><br>Movants request that Respondents collect and produce:<br><br>• Communications relevant to the paragraphs Judge Swain has identified as appropriate targets for discovery, including any authenticated documents (this includes, without limitation, legislative documents, legislation, agreements, and/or any notarized documents) related to the accounts previously or currently holding HTA taxes, tolls, and fees and any other agreements related to such taxes, tolls, and fees.<br><br>• For and during fiscal years 2015 and 2016 (July 2014 - June 2016), all documents referring to Pledged Revenues as "appropriations" and official memoranda sent by HTA or Commonwealth senior officials, and internal regulations or rules of OMB and Treasury, relating to the budgeting treatment of the Excise Taxes (e.g., characterizing the Pledged Revenues as appropriations to HTA or its property); and<br><br>• Resolutions, bond closing transcripts, and supplemental resolutions. |
| **Request 5:** All reports provided by HTA to the Legislature and Governor of Puerto Rico pursuant to the Enabling Act. | ¶ 92 | Received reports only FY2017 – FY2020.  Please confirm whether such reports were prepared pursuant to the Enabling Act, whether additional reports exist and, if so, whether they will be produced. |

9

| **HTA** | | |
|---|---|---|
| **Informal Request** | **Relevant Opposition Paragraph(s)[6]** | **Status / Follow Up Requests** |
| **Request 6:**  Documents sufficient to show the total amount of money held by HTA, including (a) where the fund is held, (b) information sufficient to identify and distinguish each particular account, (c) all account holders, (d) all account signatories, and (e) and any entity or individual with authority over the account. | ¶ 81 | No account records clearly show the total amount held and in which account.  Movants request account statements prepared in the ordinary course of business and other records for such account. |
| **Request 7:**  Direction letters or other documents to or from any bank and/or the Secretary of the Treasury regarding the flow of funds and/or use of the Pledged Revenues. | ¶ 81 & Exhibit A | No responsive documents produced.  Are there any such direction letters addressing flow of funds and/or use of the Pledged Revenues? |
| **Request 8:** Documents sufficient to show the terms, scope, and effects of purported restrictions placed on HTA-related funds, including but not limited to those funds described as "restricted" in the Commonwealth's "Summary of Cash Restriction Analysis" dated Oct. 2, 2019. | ¶ 92 | No responsive documents produced.  Are Respondents willing to stipulate that these funds are not addressed in and will not be utilized as part of the proposed plan of adjustment, or is there a factual dispute on that necessitating additional discovery? |
| **Request 9:** Documents sufficient to show the amount of Pledged Revenues collected in each Fiscal Year from Fiscal Year 2016 to the present, including the amount of Pledged Revenues collected to date in the current Fiscal Year. | ¶ 77 | Respondents' production of TSA Cash Flow Reports is not comprehensive (complete set only provided for FY2018).  Movants seek all TSA Cash Flow Reports for 2015-2017 and 2019. |
| **HTA Rule 30(b)(6) testimony on the following topics:** <br> • Flow of Funds <br> • Deposit Account Control Agreements <br> • Perfection <br> • Appropriation / HTA Funds "Made Available" <br> • *Flores Galarza* / Transfer | ¶¶ 77, 81, 92, & Exhibit A | Movants anticipate that the examination would involve questions on, *inter alia*, the following documents: <br> • HTA_STAY0000001; <br> • HTA_STAY0000032; and <br> • HTA_STAY0000098. |